Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1 317-237-0300
Facsimile: +1 317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
Telephone: +1 303-607-3500
Facsimile:  +1 303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA  94303-2279
Telephone: +1 650-324-6700
Facsimile: +1 650-324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Specially Appearing Defendant,*
*Thomson SA*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | No. 07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Sharp Electronics Corp., et al. v. Hitachi, Ltd., et al., No. 13-cv-01173.* | **THOMSON SA'S NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S FIRST AMENDED COMPLAINT**<br><br>Date: February 7, 2013<br>Time: 10:00 A.M<br>Place: Courtroom 1, 17th Floor<br>Judge: Hon. Samuel Conti |

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2          PLEASE TAKE NOTICE that on February 7, 2013 at 10:00 a.m. or as soon thereafter as

3    this matter may be heard before the Honorable Samuel P. Conti, Senior U.S. District Court Judge,

4    U.S. District Court for the Northern District of California, Courtroom No. 1, 17th Floor, 450

5    Golden Gate Avenue, San Francisco, California 94102, the moving Defendant listed on the

6    signature page below will and hereby does move this Court, in accord with Federal Rules of Civil

7    Procedure 12(b)(2) and 12(b)(6), for an Order dismissing with prejudice the claims alleged by

8    Plaintiffs Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of

9    America, Inc. ("Sharp") against the moving Defendant in Sharp's First Amended Complaint.

10         This Motion is based on this Notice of Motion and Motion, the accompanying

11   Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on

12   file with the Court, and such arguments and authorities as may be presented at or before the

13   hearing.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

ISSUES TO BE DECIDED ........................................................................................................... 1

INTRODUCTION ......................................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 2

ARGUMENT ................................................................................................................................. 4

I.  SHARP'S CLAIMS AGAINST THOMSON SA SHOULD BE
    DISMISSED BECAUSE THIS COURT LACKS PERSONAL
    JURISDICTION OVER IT. ........................................................................................ 4

    A.  The Court Does Not Have General Jurisdiction Over Thomson SA
        Based on Thomson SA's Own Contacts, Because It Did Not Have
        Continuous and Systematic General Business Contacts With the
        United States That Approximated Physical Presence in the Forum. ........... 5

    B.  Thomson Consumer Was Not Thomson SA's Agent Because
        Thomson SA Was a Holding Company That Did Not Control
        Thomson Consumer's Operations. ............................................................... 6

    C.  Sharp Has Failed to Plead That Thomson SA Committed
        Intentional Acts Expressly Aimed at the U.S. That Were a But-For
        Cause of Sharp's Claims. .......................................................................... 11

        1.  Sharp Has Failed to Plead Facts That Establish Thomson
            SA Purposefully Directed Activities Toward the United
            States. ........................................................................................ 12

        2.  Sharp Has Not Presented Evidence That Thomson SA's
            Forum-Related Activities Were a But-For Cause of Its
            Claims. ....................................................................................... 14

        3.  The Exercise of Jurisdiction Over Thomson SA Would Not
            Be Reasonable. ........................................................................... 14

    D.  The Court Should Not Grant Sharp Jurisdictional Discovery ................... 17

II. SHARP'S CLAIMS AGAINST THOMSON SA SHOULD BE
    DISMISSED BECAUSE SHARP FAILS TO PLEAD VIABLE CLAIMS
    AGAINST IT. ........................................................................................................... 17

A.    Sharp's Late Claims Against Thomson SA are Barred by the Doctrine of Laches. ................................................................. 18

B.    Sharp's Claims are Time-Barred and It Has Not Plead Specific Facts that Establish a Plausible Basis for Tolling the Statutes of Limitations. ........................................................................... 20

C.    Sharp Otherwise Fails to Plead Viable Claims. ......................................... 24

CONCLUSION ......................................................................................................... 26

1

2

**TABLE OF AUTHORITIES**

3

**Page(s)**

**FEDERAL CASES**

4

*Amoco Egypt Oil Co. v. Leonis Nav., Co.*,
    1 F.3d 848 (1993) ........................................................................................... 5

6

*Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*,
    596 F. Supp. 2d 842 (D.N.J. 2008) ............................................................... 25

7

8

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
    223 F.3d 1082 (9th Cir. 2000) ...................................... 4, 12, 13, 14, 15

9

10

*Bauman v. DaimlerChrysler Corp.*,
    644 F.3d 909 (9th Cir. 2011) ....................................................... 8, 9, 10

11

*Bullen v. De Bretteville*,
    239 F.2d 824 (9th Cir. Cal. 1956) ................................................................. 23

12

13

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................................ 5, 15

14

15

*Cannon Mfg. Co. v. Cudahy Packing Co.*,
    267 U.S. 333 (1925) .......................................................................................... 6

16

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
    230 F.3d 934 (7th Cir. 2000) .......................................................................... 7

17

18

*Conmar Corp. v. Mitsui & Co. (USA) Inc.*,
    858 F.2d 499 (9th Cir. 1988) ......................................................................... 22

19

20

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977) ......................................................................... 2

21

*Dee-K Enters. Inc. v. Heveafil Sdn. Bhd*,
    299 F.3d 281 (4th Cir. 2002) ......................................................................... 25

22

23

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ........................................... 4, 6, 7, 8, 9, 10, 11

24

25

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003) .......................................................................................... 7

26

*Efaw v. Williams*,
    473 F.3d 1038 (9th Cir. 2007) ....................................................................... 20

27

28

*Fields v. Sedgwick Associated Risks, Ltd.*,
    796 F.2d 299 (9th Cir. 1986) ........................................................................... 4

*Flynt Distrib. Co., Inc. v. Harvey,*
    734 F.2d 1389 (9th Cir. 1984) ................................................................. 4

*Ganz v. Chunghwa Picture Tubes, Ltd., et al.,*
    No. 08-01721 (N.D. Cal., filed March 31, 2008) .................................. 18

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,*
    284 F.3d 1114 (9th Cir. 2002) ......................................................... 12, 16

*Goodyear Dunlop Tires Operations v. Brown,*
    131 S. Ct. 2846 (2011) ............................................................................ 5

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,*
    328 F.3d 1122 (9th Cir. 2003) ................................................................. 4

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.,*
    485 F.3d 450 (9th Cir. 2007) ................................................................. 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    No. C 02-1486, 2005 WL 2988715 (N.D. Cal. Nov. 7. 2005) ........................ 13, 16

*In re Genetically Modified Rice Litigation,*
    576 F. Supp. 2d 1063 (E.D. Mo. 2008) ............................................... 9, 10

*In re High Fructose Corn Syrup Antitrust Litig.,*
    293 F. Supp. 2d 854 (N.D. Ill. 2003)..................................................... 21

*In re Intel Microprocessor Antitrust Litig.,*
    452 F. Supp. 2d 555 (D. Del. 2006) ...................................................... 25

*In re Intel Microprocessor Antitrust Litig.,*
    476 F. Supp. 2d 452 (D. Del. 2007) ...................................................... 25

*In re Perrier Bottled Water Litig.,*
    138 F.R.D. 348 (D. Conn. 1991) ........................................................... 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    586 F. Supp. 2d 1109 (N.D. Cal. 2008).................................................. 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    No. 07-md-1827, MDL Dkt. No. 4867 (N.D. Cal. Feb. 23, 2012) ........................ 22

*In re: W. States Wholesale Natural Gas Antitrust Litig.,*
    605 F. Supp. 2d 1118 (D. Nev. 2009) .................................................... 11

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ...................................................................... 4, 6, 9

*Jackson v. Axton,*
    25 F.3d 884 (9th Cir. 1994) .................................................................. 18

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ........................................................................... 18

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
    628 F.2d 1175 (9th Cir. 1980) ......................................................................... 12

*Linder Dividend Fund, Inc. v. Ernst & Young*,
    880 F. Supp. 49 (D. Mass. 1995)...................................................................... 23

*Mavrix Photo, Inc. v. Brand Techs., Inc*.,
    647 F.3d 1218 (9th Cir. 2001) ........................................................................... 4

*McCune v. Alioto Fish Company*,
    597 F.2d 1244 (9th Cir. 1979) ......................................................................... 20

*Menken* v. *Emm*,
    503 F.3d 1050 (9th Cir. 2007) ......................................................................... 15

*Milliken* v. *Meyer*,
    311 U.S. 457 (1940) ........................................................................................... 4

*Morton's Market, Inc. v. Gustafson's Dairy, Inc*.,
    198 F.3d 823 (11th Cir. 1999) ......................................................................... 21

*N. Am. Lubricants Co. v. Terry*,
    No. 11-1284, 2012 WL 1108918 (E.D. Cal. Apr. 2, 2012) ................................ 5

*Novell, Inc. v. Microsoft Corp*.,
    505 F.3d 302 (4th Cir. 2007) ...................................................................... 23, 24

*Parker v. Shaw & Lines, LLC*,
    2010 WL 1640963 (D. Ariz. Apr. 20, 2010)................................................... 20

*Radio & TV Equip., Inc. v. Chunghwa Picture Tubes, Ltd., et al.*,
    No. 08-00542 (D.N.J., filed Jan. 28, 2008)..................................................... 18

*Santa Maria v. Pac. Bell*,
    202 F.3d 1170 (9th Cir. 2000) ......................................................................... 22

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ........................................................................ 4, 5

*Sinatra* v. *Nat'l Enquirer, Inc.*,
    854 F.2d 1191 (9th Cir. 1988) ......................................................................... 15

*Sound Invs. Corp. v. Chunghwa Picture Tubes, Ltd., et al*.,
    No. 08-00543 (D.N.J., filed Jan. 28, 2008)..................................................... 18

*Stack, et al. v. Chunghwa Picture Tubes, Ltd., et al.*,
    No. 08-01319 (N.D. Cal., filed March 7, 2008)............................................... 18

*Terracom* v. *Valley Nat'l Bank*,
  49 F.3d 555 (9th Cir. 1995) ............................................................. 15, 16, 17

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) ...................................................................... 5

*United States v. Bestfoods*,
  524 U.S. 51 (1998) ................................................................................. 6, 7

*United States v. First Nat'l City Bank*,
  379 U.S. 378 (U.S. 1965) ............................................................................ 16

*Vaughn v. Teledyne, Inc.*,
  628 F.2d 1214 (9th Cir. 1980) ..................................................................... 21

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) ...................................................................... 20

*Wilkins-Jones v. City of Alameda*,
  2012 WL 3116025 (N.D. Cal. July 31, 2012) ............................................... 20

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006) ..................................................................... 12

**FEDERAL STATUTES**

15 U.S.C. § 6(a) ............................................................................................ 24

15 U.S.C. § 16(i) ........................................................................................... 24

**STATE STATUTES**

N.Y. Gen. Bus. Law § 349 ............................................................................ 24

**RULES**

Fed. R. Civ. P. 9(b) ...................................................................................... 22

Fed. R. Civ. P. 12(b)(2) ............................................................................ 1, 17

Fed. R. Civ. P. 12(b)(6) ........................................................................ 1, 17, 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

In accord with Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Thomson SA appears for the purpose of respectfully moving to dismiss the claims asserted against it by Sharp Electronics Corp. and Sharp Electronics Manufacturing Co. of America, Inc. (collectively, "Sharp") for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.

**ISSUES TO BE DECIDED**

1.      Whether Sharp's claims against Thomson SA should be dismissed pursuant to Rule 12(b)(2) on the ground that this Court lacks personal jurisdiction over Thomson SA, a holding company headquartered and incorporated in France, because Thomson SA lacks the requisite minimum contacts with the United States, does not possess an agency relationship with its United States subsidiary, Thomson Consumer, Inc. ("Thomson Consumer"), and has not purposefully directed activities related to Plaintiffs' claims towards the United States?

2.      Whether Sharp's claims against Thomson SA should be dismissed because they are barred by the doctrine of laches?

3.      Whether Sharp's claims against Thomson SA are time-barred under the applicable statutes of limitations and whether Sharp has failed to plead any basis for tolling the statutes of limitations applicable to its claims?

4.      Whether Sharp's claims against Thomson SA should be dismissed for failure to state cognizable claims?

**INTRODUCTION**

Sharp asks this Court to exercise personal jurisdiction over Thomson SA, a French holding company with its principal place of business in Issy-les-Moulineaux, France that has never maintained offices in the United States and has never manufactured or distributed CRTs or CRT products in the United States.  Although Sharp has complete access to the voluminous discovery record in this case, in its First Amended Complaint ("FAC"), Sharp has failed, once again, to plead facts that establish Thomson SA is subject to the personal jurisdiction of this Court.  Specifically, it has failed to plead facts that establish:  (1) Thomson SA had continuous and systematic contacts with the United States such that it is subject to general jurisdiction in this

forum; (2) Thomson SA actually exerted control over the day-to-day operations of Thomson Consumer in the United States so that it possessed an agency relationship with its United States subsidiary; and (3) Thomson SA took any intentional acts purposefully directed at the United States.  In fact, as established by affidavits attached to this Motion, Thomson SA is not subject to personal jurisdiction in this forum because it never manufactured or sold CRTs or CRT products in the United States and it never directed Thomson Consumer to set particular prices for the CRTs that entity manufactured and sold in the United States.  Because these critically important facts directly controvert the vague and unsubstantiated jurisdictional allegations in Sharp's FAC, the Court should not accept as true Sharp's conclusory allegations here.  *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).  Simply stated, Sharp has failed to plead facts that establish a prima facie case that Thomson SA is subject to general or specific jurisdiction.  Accordingly, Sharp's claims against Thomson SA should be dismissed for lack of personal jurisdiction.

In addition, even if Thomson SA is subject to this Court's personal jurisdiction, Sharp's claims against it should be dismissed for the same reasons expressed in the Motion to Dismiss filed concurrently herewith by Thomson SA's wholly-owned subsidiary, Thomson Consumer.  (*See generally*, Thomson Consumer's Notice of Motion and Motion to Dismiss Sharp's FAC.)  Sharp's claims against Thomson SA:  (1) are inexcusably late and barred by the doctrine of laches; (2) are time-barred under the applicable statutes of limitations and Sharp has failed to plead a basis for tolling its claims; and (3) otherwise fail to state cognizable claims.  Sharp's claims against Thomson SA should be dismissed with prejudice.

## FACTUAL BACKGROUND

At all times relevant to Sharp's claims, Thomson SA was a holding company headquartered and incorporated in France.  As it stated in a 13D filing it made with the Securities and Exchange Commission ("SEC") on February 7, 2000, "Thomson SA principally acts as a holding company for the French government.  All of the outstanding shares of Thomson SA are owned by the French Government."  (Feb. 7, 2000 13D Filing at 4, attached as **Ex. 1**.)  Although the French Government has since sold its shares, during all relevant periods, Thomson SA

1  remained a French holding company.  (See 2009 Declaration of Frederic Rose at ¶ 3, **Ex. 2**

2  ("Thomson is the holding company for a group of approximately 200 direct and indirect

3  subsidiaries in approximately 30 countries.  Thomson's principal office is located at 1-5, rue

4  Jeanne d' Arc, 92130 Issy-les-Moulineaux, France."); (Cadieux Decl. at ¶ 5, attached as **Ex. 3**.)

5      It also is uncontroverted that, at all relevant times, Thomson SA was not a manufacturer.

6  "Thomson SA has never manufactured cathode ray tubes ("CRTs") or finished products

7  containing CRTs in the United States or elsewhere."  (*Id.* at ¶ 14.)  In addition, "Thomson SA has

8  never marketed, sold, or distributed CRTs or finished products containing CRTs in the United

9  States or elsewhere."  (*Id.* at ¶ 15.)  Instead, because it is and was merely a holding company,

10  Thomson SA's "principal assets are the stock of its subsidiaries."  (**Ex. 2** at ¶ 4.)  Thomson SA

11  performed the activities of a traditional holding company − it "principally perform[ed] corporate

12  activities (such as finance, communications, legal, human resources)" and obtained "external

13  financing" and "advance[d] the funds obtained to its subsidiaries through loans and current

14  account contracts."  (Thomson Group 2008 Form 20-F, **Ex. 4** at 152.)

15      Thomson SA did not control the day-to-day activities or involve itself in the management

16  of its United States subsidiary, Thomson Consumer.  (**Ex**. 3 at ¶ 21.)  Instead, "Thomson

17  [Consumer] control[ed] its day-to-day activities," maintained "separate" finances, and was

18  "responsible for the sales and marketing of products in the United States."  (Sept. 28, 2005

19  Declaration of Thomson Consumer President Michael O'Hara at ¶¶ 5-7, **Ex. 5** (attached to

20  Thomson SA's Reply in Support of Mot. to Dismiss, A*udio MPEG, Inc. v. Thomson Inc., et al.*,

21  Case No. 1:05 cv 565 (E.D. Va.)).)   "Thomson SA d[id] not direct or advise Thomson

22  [Consumer] on how to sell or distribute any Thomson [Consumer] product in the United States."

23  (Sept. 2, 2005 Declaration of Thomson SA General Secretary Marie-Agne Debon at ¶ 6, **Ex. 6**

24  (attached to Thomson SA's Mot. to Dismiss, *Audio MPEG, Inc. v. Thomson Inc., et al.*, Case No.

25  1:05 cv 565 (E.D. Va.)).)  Moreover, "Thomson SA and Thomson [Consumer] maintain[ed]

26  separate corporate structures, including separate boards, separate management, . . . separate

27  employees," and separate finances.  (*Id.* at ¶¶ 4-5.)

28

Thomson SA was a traditional holding company organized to hold the stock of its subsidiaries.  It did not manufacture CRTs, control the day-to-day operations of Thomson Consumer, involve itself in its U.S. subsidiary's management, or otherwise take acts directed at the United States related to Sharp's allegations.  Accordingly, consistent with fundamental principles of due process, it is not subject to the general or specific jurisdiction of this Court.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 930 (9th Cir. 2001); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806-7 (9th Cir. 2004).

## ARGUMENT

**I.   SHARP'S CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER IT.**

Sharp "has the burden of establishing that jurisdiction exists." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984); *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1128-29 (9th Cir. 2003).  Sharp's FAC should be dismissed if it fails to make a prima facie showing of personal jurisdiction. *See Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986).  And, Sharp's allegations are not accepted as true if they are contradicted by a sworn declaration. *See Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1223 (9th Cir. 2001).

The Court can exercise personal jurisdiction over a non-resident defendant only where doing so is consistent with the Due Process Clause, which requires that the defendant have such minimum contacts with the forum that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940)).  In order to satisfy the Due Process Clause, Sharp must demonstrate that either: (a) Thomson SA has such substantial contacts with the United States that it is effectively "physical[ly] presen[t]" and therefore subject to general jurisdiction here; or (b) Thomson SA has a sufficient connection to the alleged misconduct through acts *in* or *purposefully directed at* the forum to establish specific jurisdiction for the purposes of this litigation. *See Bancroft & Masters, Inc.* v. *Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  Sharp has not met its burden.

**A.**   **The Court Does Not Have General Jurisdiction Over Thomson SA Based on Thomson SA's Own Contacts, Because It Did Not Have Continuous and Systematic General Business Contacts With the United States That Approximated Physical Presence in the Forum.**

For general jurisdiction to exist over a foreign corporation like Thomson SA, it must "engage in continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801 (internal quotations and citations omitted); *see also Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011). In other words, the plaintiff must show that the defendant's "continuous corporate operations within [the] state are . . . so substantial and of such a nature as to justify suit against the defendant on causes of action arising from dealings entirely distinct from those activities." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006); *see also N. Am. Lubricants Co. v. Terry*, No. 11-1284, 2012 WL 1108918, at *5 (E.D. Cal. Apr. 2, 2012) (stating that general jurisdiction may only be established by "a showing of substantial operations in the [United States], marked by longevity, continuity, volume, economic impact, physical presence, and integration into the [nation's] markets."). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. Thus, the Ninth Circuit has "regularly . . . declined to find general jurisdiction even where the contacts [have been] quite extensive." *Amoco Egypt Oil Co. v. Leonis Nav., Co*., 1 F.3d 848, 851 n. 3 (1993). Indeed, as the Supreme Court has emphasized, this test must be stringently and predictably applied because the Due Process Clause mandates that defendants be permitted "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

Sharp's FAC must be dismissed because it does not allege that Thomson SA had any meaningful contacts with the United States, let alone allege substantial, continuous, and systematic contacts that approximated physical presence in the forum. Thomson SA is a French corporation headquartered in France that: (1) has no operations; (2) has no employees; (3) has no bank accounts; (4) has no mailing address; (5) does not own, lease, or rent real property; and (6)

is not registered to do business in the United States.  (*See* Cadieux Decl. at ¶¶ 6-11, 13.)  The FAC does not plead otherwise.  Sharp does not even attempt to allege that Thomson SA ever had business operations, offices, employees, books and records, or a bank account in the United States, because Thomson SA did not.  (*See generally* FAC.)  In addition, the 2005 affidavits from Mr. O'Hara and Ms. Debon confirm that Thomson SA did not control Thomson Consumer's operations during the relevant time period, so its contacts may not be imputed to Thomson SA.  (*See* **Exs. 5, 6**.)  Because Sharp has failed to make a prima facie case that Thomson SA's contacts with the United States are of such a substantial nature and of such continuous duration that this Court's exercise of general jurisdiction over it would comport with "traditional notions of fair play and substantial justice," Sharp's claims against Thomson SA should be dismissed with prejudice.  *Int'l Shoe*, 326 U.S. at 316.

> **B.     Thomson Consumer Was Not Thomson SA's Agent Because Thomson SA Was a Holding Company That Did Not Control Thomson Consumer's Operations.**

Unable to plead facts that establish Thomson SA itself had sufficient minimum contacts with this forum, Sharp will undoubtedly argue that Thomson SA so controlled the day-to-day activities and operations of its U.S. subsidiary, Thomson Consumer, that Thomson Consumer was its agent for personal jurisdiction purposes.  Sharp is incorrect.  During all relevant periods, Thomson SA was a traditional French holding company – not a "super corporation" that dominated Thomson Consumer.  The facts specifically plead in the FAC do not establish a prima facie claim that Thomson Consumer was Thomson SA's agent.

The Supreme Court has long recognized that general jurisdiction may not be imposed on a foreign corporation merely because the corporation owns a subsidiary present in the forum.  *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 337 (1925).  Accordingly, the Ninth Circuit has held that "[t]he existence of a relationship between a parent and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum."  *Unocal Corp.*, 248 F.3d at 925.  This holding is derived from the principle of corporate separateness, a "principle of corporate law deeply ingrained in our economic and legal systems."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  It is "a basic

1    tenet of American Corporate law . . . that the corporation and its shareholders are distinct

2    entities," over which jurisdiction must be established individually.  *Dole Food Co. v. Patrickson*,

3    538 U.S. 468, 474 (2003).  Therefore, "[w]here two corporations are in fact separate, permitting

4    the activities of the subsidiary to be used as a basis for personal jurisdiction over the parent

5    violates this principle and thus due process."  *Cent. States, Se. & Sw. Areas Pension Fund v.*

6    *Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000).

7        Instead, a subsidiary's contacts with the forum may only be imputed to the parent "if the

8    parent and the subsidiary are not really separate entities" because the parent controls the

9    "subsidiary's internal affairs or daily operations."  *Unocal Corp.*, 248 F.3d at 926.  For example,

10   in *Unocal*, the plaintiffs argued that the French holding company, Total SA, was subject to

11   general jurisdiction in California because its subsidiaries in the United States acted as its agents

12   and had substantial contacts with the forum.   The Ninth Circuit Court of Appeals rejected

13   plaintiffs' argument.  It emphasized the principle of corporate separateness and explained that the

14   contacts of a local subsidiary may not be imputed to a foreign holding company simply because

15   the foreign parent exercises supervision over the activities of its local subsidiary.   The court

16   explained that a foreign parent's supervision of its subsidiary's activities or its performance of

17   other traditional functions of a holding company do not constitute the type of control necessary to

18   subject the parent to personal jurisdiction.   Thus, "it is entirely appropriate for directors of a

19   parent corporation to serve as directors of its subsidiary" or to be "directly involved in financing

20   and macro-management of its subsidiaries."  *Id.* at 926-27.   Other "[a]ppropriate parental

21   involvement includes monitoring of the subsidiary's performance, supervision of the subsidiary's

22   finance and capital budget decisions, and articulation of general policies and procedures."  *Id.* at

23   926 (quoting *Best Foods*, 524 U.S. at 71).  Likewise, a parent describing a subsidiary as a division

24   of it or "consolidating the activities of a subsidiary into the parent's [annual] reports is a common

25   business practice" that does not establish the type of control necessary to subject the parent to

26   general jurisdiction.  *Id.* at 928-29.

27        The *Unocal* court recognized that there is a fundamental distinction between an "active

28   parent corporation involved directly in the decision-making about its subsidiaries' holdings" and

a "super-corporation" that exerts such substantial control over its subsidiaries day-to-day operations in the forum that "the subsidiaries' presence substitutes for the presence of the parent." *Id*. at 929-30.  Although plaintiffs presented evidence that Total SA was involved in its local subsidiaries' "acquisitions" and "expenditures," "the formulation of general business policies and strategies applicable to its subsidiaries," "the provision of loans and other types of financing to subsidiaries," and maintained "overlapping directors and officers with its subsidiaries," the court found that this evidence did not make out a prima facie case that Total SA had an agency relationship with its local subsidiaries.  *Id*. at 927.  In other words, this type of evidence did not establish that Total SA was not a traditional investment holding company.  Because plaintiffs' evidence did not constitute prima facie proof that Total SA had an agency relationship with its subsidiaries, the court granted Total SA's motion to dismiss for lack of personal jurisdiction.  *Id*. at 931.

By contrast, in *Bauman v. DaimlerChrysler Corp*., the Ninth Circuit Court of Appeals found that the German manufacturing company, DaimlerChrysler A.G. ("DCAG"), possessed an agency relationship with its wholly-owned U.S. subsidiary, Mercedes-Benz USA ("MBUSA"), an entity that sold and distributed in the United States the cars the parent manufactured in Germany. 644 F.3d 909, 914-15 (9th Cir. 2011) *petition for cert. granted by* 133 S. Ct. 1995 (April 22, 2013).   Critically, unlike the circumstances here, DCAG's relationship with MBUSA was governed by a General Distributor Agreement that gave DCAG almost plenary control over MBUSA's day-to-day operations in the United States.  Pursuant to that agreement, "DCAG had the right to control nearly all aspects of MBUSA's operations," including:

> the number of vehicles that MBUSA must sell; the approval of MBUSA's Authorized Resellers, as well as the location of each retail sales outlet, showroom and service facility; the dealership standards that MBUSA must comply with; the business systems that MBUSA uses; the type of customer information that MBUSA must collect; which management personnel are appointed to run MBUSA; . . . the standards and requirements MBUSA must meet for vehicle servicing; whether MBUSA is required to establish a Service Coordination Center, and if so, what tasks that Center will perform; the warranty terms applicable to MBUSA's customers; whether MBUSA can alter or modify any vehicle; what technical service publications MBUSA shall have in its library; the content and scope of MBUSA's advertising and marketing strategy; the type, design and size of MBUSA's signs; the prices that MBUSA must pay to DCAG; the prices that MBUSA may charge to its Authorized Resellers; . . . whether

MBUSA must assist in vehicle homologation; and the sales numbers of various Authorized Resellers.

(*Id.* at 924.)  Moreover, "[i]f that exhaustive list were not enough, DCAG also ha[d] the right to require MBUSA to execute '*any agreement relating to . . . any other matter related to this Agreement*' . . . as long as those new Agreements are not an 'unreasonable burden' on MBUSA." (emphasis in original).  In short, DCAG exercised complete control over the day-to-day operations of its local subsidiary.  Therefore, the court held that DCAG exerted such substantial control over MBUSA and the distribution services it performed were of such importance to the manufacturer that "the actions of the subsidiary c[ould] be understood as a manifestation of the parent's presence" in the forum so DCAG was subject to general jurisdiction.  *Id.* at 921 (*citing Int'l Shoe Co.*, 326 U.S. at 318); *see also In re Genetically Modified Rice Litigation*, 576 F. Supp. 2d 1063, 1068-75 (E.D. Mo. 2008) (finding parent possessed agency relationship with local subsidiary where contract gave parent authority to substantially control day-to-day operations of subsidiary).

Judge O'Scannlain, joined by seven other judges, filed a stinging dissent to the Ninth Circuit's denial of the petition to rehear *Bauman* en banc, arguing that the decision extended "the reach of general personal jurisdiction beyond its breaking point" and was "inconsistent with the law of at least six of our sister circuits."  *Bauman*, 676 F.3d 674-5 (9th Cir. 2011).  Subsequently, the Supreme Court granted a petition for writ of certiorari to review *Bauman* that is currently pending.  *See* 133 S. Ct. 1995 (April 22, 2013).

Regardless of the Supreme Court's ultimate decision in *Bauman*, the circumstances here are easily distinguishable from those present in that case and provide no basis for the exercise of jurisdiction over Thomson SA.  In its FAC, Sharp does not allege the existence of any agreement that gave Thomson SA control over Thomson Consumer's day-to-day operations because no such agreement has ever existed.  Instead, Sharp pleads exactly the type of facts the *Unocal* Court held were insufficient to establish a prima facie case of agency.  Sharp alleges that Thomson SA executives "also served as directors and/or board members of Thomson Consumer," were "involved in planning and purchasing discussions with U.S. CRT customers," and "had

1    operational responsibilities in the United States."  (FAC at ¶ 73.)  Such facts, even if true, do not

2    establish a prima facie case that a parent has an agency relationship with its subsidiary because "it

3    is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary"

4    or to be "directly involved in financing and macro-management of its subsidiaries."  *Unocal*, 248

5    F.3d at 926-7; *see also In re Genetically Modified Rice Litigation*, 576 F. Supp. 2d at 1073 (fact

6    that parent supervised operations of subsidiary inadequate to establish agency relationship).

7    Simply stated, Sharp has failed to plead facts that establish Thomson SA exerted the degree of

8    control over Thomson Consumer's day-to-day activities that is necessary to establish a prima

9    facie case that Thomson Consumer was Thomson SA's agent.

10          Instead, Sharp relies on conclusory allegations of control and domination.  ("Thomson SA

11   had a controlling role in the operation of its subsidiaries . . . ." FAC at ¶ 73.)  Its unsupported

12   allegations are directly controverted by the Cadieux Declaration (*id.* at ¶¶ 19-21, **Ex. 3**) and by

13   the 2005 affidavits of then Thomson Consumer President Michael O'Hara and Thomson SA

14   General Secretary Marie-Ange Debon.  (O'Hara Affidavit at ¶¶ 4-7, **Ex. 5**; Debon Affidavit at ¶¶

15   4-6, **Ex. 6**.)  Mr. O'Hara stated in no uncertain terms "Thomson Inc. controls its day-to-day

16   activities."  (**Ex. 5**, at ¶ 6.)  The 2005 O'Hara and Debon affidavits were attached to the briefing

17   submitted by Thomson SA in *Audio MPEG, Inc. v. Thomson SA*, 05-cv-565 (E.D. Va. Oct 17,

18   2005) and relied on by the district court in that case in its 2005 ruling that Thomson Consumer

19   was not the agent of Thomson SA.  (Oct. 17, 2005 Order at 5-6 (finding "Thomson SA and

20   Thomson, Inc. are separate corporations in form and fact.") attached as **Ex. 7**.)  Significantly,

21   these affidavits cover the very same time frame at issue in the claims asserted by Sharp and a

22   federal district court accepted them as sufficient evidence to overcome claims made during this

23   period that Thomson Consumer was Thomson SA's agent.  Now, eight years later, Sharp pleads

24   no facts that warrant a different finding.

25          Attempting to analogize to *Bauman*, Sharp will argue that Thomson SA's realization of

26   substantial revenue from Thomson Consumer's operations in the United States (before it exited

27   the CRT market in 2005) shows that Thomson Consumer was so important to its parent that, were

28   it not for Thomson Consumer, Thomson SA itself would have needed to undertake sales and

1   marketing in the United States.  *Bauman*, 644 F.3d at 921; FAC at ¶ 73 (alleging that Thomson

2   SA derived "between 40-50%" of its revenue from the U.S.); [Dkt. No. 1835 at 16].  Sharp's

3   argument should be rejected.  In *Bauman*, the court determined that MBUSA sold such a large

4   percentage of the cars *manufactured* by DCAG in Germany that but for MBUSA, DCAG would

5   have had to perform those distribution services itself (which it effectively already did) or engage

6   another entity to do so.  *Bauman*, 644 F.3d at 921-22.  By contrast, Thomson SA is a mere

7   holding company – it did not manufacture products that were then distributed by its subsidiary in

8   the United States.  (Cadieux Decl. at ¶ 14.)  During the relevant period, Thomson SA held

9   Thomson Consumer as an investment, not as a conduit to distribute products it manufactured.

10  Moreover, unlike DCAG, which needed its subsidiary to distribute the products it manufactured,

11  as a holding company, Thomson SA "could simply hold another type of subsidiary, in which case

12  imputing the subsidiary's jurisdictional contacts to the parent would be improper."  *Unocal*, 248

13  F.3d at 929.  Finally, that Thomson Consumer's CRT manufacturing business was not sufficiently

14  important to Thomson SA that, but for its existence, Thomson SA would have performed these

15  activities itself is conclusively established by the fact that Thomson Consumer closed its United

16  States-based CRT plants in 2004 and sold its CRT business in 2005.  (FAC at ¶ 72.)  Thomson

17  SA did <u>not</u> subsequently perform these activities itself or engage another party to do so, thereby

18  establishing that Thomson Consumer's CRT business was not sufficiently important to Thomson

19  SA that it would carry on that business itself in Thomson Consumer's absence.  *See In re: W.*

20  *States Wholesale Natural Gas Antitrust Litig.*, 605 F. Supp. 2d 1118, 1136 (D. Nev. 2009).

21      Because Sharp has failed to plead facts that establish Thomson SA controlled the day-to-

22  day operations of Thomson Consumer and that Thomson Consumer was sufficiently important to

23  it that Thomson SA would have carried on Thomson Consumer's operations in its absence, Sharp

24  has failed to make a prima facie case that Thomson Consumer was Thomson SA's agent.

25      **C.**      **Sharp Has Failed to Plead That Thomson SA Committed Intentional Acts**
            **Expressly Aimed at the U.S. That Were a But-For Cause of Sharp's Claims.**
26

27      Sharp also fails to allege facts sufficient to support this Court's exercise of specific

28  jurisdiction over Thomson SA.  Specific jurisdiction exists when the "cause of action arises out of

1  or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain*

2  *Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1124 (9th Cir. 2002).   To

3  establish specific jurisdiction over Thomson SA, Sharp must present evidence showing: (1)

4  Thomson SA purposefully directed its activities at this forum; and (2) Sharp's claims against it

5  arise out of or result from Thomson SA's forum related activities.  *See Bancroft & Masters, Inc.*

6  *v. Augusta National Inc.,* 223 F.3d 1082, 1086-7 (9th Cir. 2000).  Sharp cannot, and has not,

7  satisfied these two elements.

8          **1.**      **Sharp Has Failed to Plead Facts That Establish Thomson SA**

9                  **Purposefully Directed Activities Toward the United States.**

10       Purposeful direction is evaluated using the three-part "*Calder*-effects" test under which

11  the plaintiff must show:  (1) the defendant committed an intentional act; (2) expressly aimed at

12  the forum state; (3) causing harm the defendant knows is likely to be suffered in the forum state.

13  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.

14  2006).  The Ninth Circuit has warned that "the foreign-acts-with-forum-effects jurisdictional

15  principle 'must be applied with caution, particularly in an international context.'"  *Kramer*

16  *Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1178 (9th Cir. 1980).

17       Here, Sharp has failed to allege specific facts in the FAC that establish Thomson SA took

18  any relevant intentional acts expressly aimed at the United States.  The FAC lobs numerous

19  legally insufficient allegations against "defendants" or a non-existent combined "Thomson" entity

20  without identifying the particular Thomson company that participated in the alleged

21  anticompetitive conduct aimed at the United States.  (*See* FAC at ¶¶ 7, 74, 148, 156, 158, 175); *In*

22  *re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (holding

23  "general allegations as to all defendants" or "to a single corporate entity such as 'Hitachi'"

24  insufficient as a matter of law).  In addition, Sharp alleges that "Thomson participated in and/or

25  was a party to more than 15 bilateral meetings and more than 25 group meetings, including Green

26  Meetings in the United States." (FAC at ¶ 196.)  While Sharp attempts to plead additional details

27  regarding these alleged meetings, these allegations do not show that Thomson SA took intentional

28  acts expressly aimed at the United States.   (*Id*.)  ██████████████████

1

2

3

4                                                                                        At all

5   relevant times, Thomson SA was a holding company whose subsidiaries had extensive CRT

6   operations throughout Europe.  Because it is equally, if not more, plausible that these alleged

7   meetings related to the European CRT operations of these subsidiaries, these allegations do not

8   establish that Thomson SA took intentional acts expressly aimed at the United States.

9          Indeed, the *Calder*-effects test does not "stand for the broad proposition that a foreign act

10  with foreseeable effects in the forum state always gives rise to personal jurisdiction." *Bancroft &*

11  *Masters, Inc.,* 223 F.3d at 1087.  Express aiming requires "something more" – it requires foreign

12  acts targeted at the plaintiff in the forum "performed for the very purpose of having their

13  consequences felt in the forum state."  *Id.* at 1088.  Applying these principles, courts in this

14  district have found that a defendant's alleged participation in a foreign price-fixing conspiracy

15  that had foreseeable effects on the U.S. market does not satisfy this test if the plaintiff cannot

16  show that the defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant

17  knows to be a resident of the forum."  *In re Dynamic Random Access Memory (DRAM) Antitrust*

18  *Litig.,* No. C 02-1486, 2005 WL 2988715, at *5-6 (N.D. Cal. Nov. 7. 2005) (holding plaintiffs

19  could not establish express aiming where the defendant alleged to have participated in

20  international conspiracy had never manufactured or sold DRAM in forum states or maintained

21  business or corporate formalities there).

22         Sharp has not and cannot show that Thomson SA engaged in anticompetitive activity

23  individually targeted at Sharp in the United States because Thomson SA has never manufactured

24  or sold CRTs or conducted any CRT business in the United States.  Instead, Sharp alleges that

25  Thomson SA participated in foreign meetings with competitors where information regarding CRT

26  products was allegedly exchanged and that "the North America market was the largest market for

27  CRT Products" so *ipso facto*, Thomson SA individually targeted Sharp in the United States.

28

1   *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (holding

2   "unsubstantiated and vague statement[s] do not establish a prima facie case for jurisdiction.").

3   However, Thomson SA did not manufacture, market, sell, or distribute CRTs or CRT

4   products in the United States and did not set prices for CRTs or CRT products sold by Thomson

5   Consumer in the United States.  (Cadieux Decl. at ¶¶ 14-15, 2; Debon Aff. at ¶ 6 ("Thomson SA

6   does not direct or advise Thomson Inc. on how to sell or distribute any Thomson Inc. product in

7   the United States"); O'Hara Decl. at ¶ 7 ("Thomson Inc. is responsible for the sales and

8   marketing of products in the United States.").)  Accordingly, Sharp has failed to make a prima

9   facie case that Thomson SA took any intentional act expressly aimed at causing Sharp harm in the

10  United States.

11                    **2.    Sharp Has Not Presented Evidence That Thomson SA's Forum-
                             Related Activities Were a But-For Cause of Its Claims.**

12

13  To satisfy the second element of the *Calder*-effects test, Sharp must show that Thomson

14  SA's contacts with the United States were a "but for" cause of its claims.  *Bancroft & Masters,*

15  *Inc.,* 223 F.3d at 1088.  Sharp has failed to allege facts establishing that Thomson SA took any

16  intentional acts expressly aimed at the United States.  As such, it has failed to allege any specific

17  acts by Thomson SA that could have been a but-for cause of its claims, let alone establish that

18  these non-existent acts did actually cause it such harm.  (*See supra* at 2-3.)  Having failed to

19  allege that Thomson SA took intentional acts expressly aimed at Sharp in the United States, Sharp

20  cannot bootstrap that Thomson SA was a but-for cause of its claims in the United States by

21  merely alleging it was harmed by a global price-fixing conspiracy involving multiple defendants.

22                    **3.    The Exercise of Jurisdiction Over Thomson SA Would Not Be
                             Reasonable.**

23

24  Because Sharp has failed to satisfy either of the first two elements of the *Calder*-effects

25  test, it is not necessary to evaluate whether this Court's exercise of jurisdiction over Thomson SA

26  would be would reasonable.  But, even if Sharp had satisfied the effects test, the exercise of

27  jurisdiction over Thomson SA would not be reasonable.  Courts consider seven factors to evaluate

28  reasonableness:

"(1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum."

*Bancroft & Masters*, 223 F.3d at 1088 (citing *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 476-77 (1985)).

The burden imposed on Thomson SA is the most important factor. *Terracom* v. *Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995) ("[T]he law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden."); *see also Menken* v. *Emm*, 503 F.3d 1050, 1061 (9th Cir. 2007) ("[I]n this circuit, the plaintiff's convenience is not of paramount importance.") (citation omitted).  And the burden on Thomson SA in litigating this complex case would be significant.  To the extent evidence still exists concerning the CRT business that Thomson SA sold eight years ago, any documents are located in France; the same is true for any personnel who might have knowledge concerning the CRT business.  Not only would obtaining relevant information located in France be costly and burdensome, it would also potentially subject Thomson SA to criminal sanctions under the French "blocking statute,"[1] which prohibits the communication or disclosure of documents or information of an economic, commercial, industrial, financial, or technical nature for use as evidence in foreign judicial proceedings.  *See In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 356 (D. Conn. 1991) (discussing effect of "blocking statute" and requiring plaintiffs to comply with procedures under the Hague Convention in pursuing any discovery from defendant).[2]

---

[1] Loi 80-538 du 16 juillet 1980 relative à la communication de documents et renseignements d'ordre économique, commercial ou technique à des personnes physiques ou morales étrangères [Law 80-538 of July 16, 1980 relating to the disclosure of documents and information of an economic, commercial or technical nature to foreign natural and legal persons], JOURNAL OFFICIEL DE LA RÉPUBLIQUE FRANÇAISE [J.O.] [OFFICIAL GAZETTE OF FRANCE], July 17, 1980, p. 1799 (Imposing criminal sanctions including imprisonment and a fine on parties who export certain categories of documents or respond to discovery requests).

[2] For the same reason, the exercise of personal jurisdiction over Thomson SA would therefore raise substantial concerns regarding French sovereignty.  *See, e.g.*, *Sinatra* v. *Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199-1200 (9th Cir. 1988); *see also Asahi*, 480 U.S. at 115 (recommending a

The exercise of personal jurisdiction over Thomson SA would also be unreasonable because: (1) Thomson SA has not purposefully interjected its activities into the United States; (2) until 1999, all stock in Thomson SA was owned by the French government so Sharp's claim against it raise substantial sovereignty concerns; and (3) exercising jurisdiction over Thomson SA in the United States would be inefficient and would not further Sharp's interest in convenient and effective relief because Thomson Consumer is the entity in the Thomson group of companies that manufactured and/or sold CRTs in the United States and it has not contested this Court's jurisdiction over it.  *United States v. First Nat'l City Bank*, 379 U.S. 378, 403-404 (U.S. 1965) (stating that "modern notions of personal jurisdiction were developed within a framework of States whose various processes are governed by the Due Process Clause and whose judgments must be given full faith and credit by the other States within the federal structure. Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2005 WL 2988715, at *9 (exercise of jurisdiction over foreign corporations unreasonable given hardship conducting litigation in United States would impose on them and existence of continuing litigation against other related defendants).  Thus, even if Sharp had established a sufficient connection between Thomson SA's forum-related activities and Sharp's claims in this case – it has not – this Court's exercise of jurisdiction over Thomson SA would not be reasonable.  *See Terracom v. Valley Nat'l Bank.*, 49 F.3d 555, 561 (9th Cir. 1995) (explaining that the law of personal jurisdiction is "asymmetrical and is primarily concerned with the defendant's burden."). Because Thomson SA is not subject to personal jurisdiction in this forum, Sharp's claims against it should be dismissed.

---

"careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State"); *Glencore*, 284 F.3d at 1125 (holding that burden on foreign defendant with no minimum contacts and having witnesses and evidence abroad would be great and that where "the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction" (citation omitted)).

**D.    The Court Should Not Grant Sharp Jurisdictional Discovery.**

Recognizing that it has failed to make a prima facie case that Thomson SA is subject to personal jurisdiction, Sharp will undoubtedly request that it be permitted to conduct jurisdictional discovery.  Sharp's request should be denied.  "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery."  *Id*. at 562.  That is the case here.  Sharp's arguments that Thomson SA is subject to this Court's jurisdiction are premised upon its factually unsupported allegations that:    (1) Thomson SA controlled Thomson Consumer's operations in the United States; and (2) Thomson SA took acts aimed at causing Sharp harm in the United States.  Thomson SA has submitted affidavits that directly controvert these allegations.  (*See* **Exs. 3, 5-6**.)  These affidavits establish that Thomson Consumer was not Thomson SA's agent and that Thomson SA never manufactured or sold CRT products in the United States or told Thomson Consumer how to set the prices of the CRTs that entity sold in the United States.  (*Id*.)  Although Sharp has had complete access to the discovery provided by the other defendants in this action, in its FAC, Sharp is unable to plead specific facts that prove otherwise.  Accordingly, there is no reason to believe that allowing Sharp to conduct additional jurisdictional discovery against Thomson SA will remedy these fundamental deficiencies.  The Court should grant Thomson SA's Motion and dismiss Sharp's claims against it with prejudice.

**II.    SHARP'S CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED BECAUSE SHARP FAILS TO PLEAD VIABLE CLAIMS AGAINST IT.**

Not only should Sharp's claims be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, like Sharp's claims against Thomson Consumer,[3] its claims against Thomson SA should be dismissed pursuant to Rule 12(b)(6) because they:  (1) are inexcusably late and barred by the doctrine of laches; (2) are time-barred under the applicable statutes of

---

[3] The additional arguments and legal authority discussed in greater detail in Thomson Consumer's Motion to Dismiss Sharp's FAC also apply to Sharp's claims against Thomson SA and are incorporated by reference herein.  (*See generally* Thomson Consumer's Notice of Motion and Motion to Dismiss Sharp's First Amended Complaint.)

limitations and Sharp has failed to plead a basis for tolling its claims; and (3) otherwise fail to state cognizable claims.

**A.      Sharp's Late Claims Against Thomson SA are Barred by the Doctrine of Laches.**

The doctrine of laches operates to bar a plaintiff's claims when the plaintiff has (1) unreasonably delayed pressing its rights and (2) thereby caused prejudice to the defendant. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 838 (9th Cir. 2002) (explaining that "laches penalizes inexcusable dilatory behavior" by the plaintiff); *Jackson v. Axton*, 25 F.3d 884, 886 (9th Cir. 1994) ("Laches is based on the plaintiff's delay in beginning litigation . . . .") "A determination of whether a party exercised unreasonable delay in filing suit consists of two steps. First, we assess the length of delay, which is measured from the time the plaintiff knew or should have known about its potential cause of action.  Second, we decide whether the plaintiff's delay was reasonable." *Jarrow Formulas,* 304 F.3d at 838 (internal citations omitted).

Here, Sharp has admitted that it had actual knowledge of its potential claims by November of 2007.  (FAC at ¶ 232.)  As early as January of 2008, Thomson SA was named as a defendant in four of the original complaints filed by other plaintiffs in this matter.[4]  Each of those original complaints alleged that Thomson SA manufactured, sold, and distributed CRTs and/or CRT products throughout the U.S. and was involved in a global conspiracy with other named defendants. *See Radio & TV Equip., Inc.* at ¶¶ 27, 69-79; *Sound Invs. Corp.* at ¶¶ 27, 69-79; *Ganz* at ¶¶ 22, 48-72; *Stack, et al.* at ¶¶ 33, 62-86.  Despite the fact that it possessed knowledge of its potential claims, Sharp slept on its rights.  It waited until March 15, 2013 – over five years after the first claims were filed in this action and over 16 months after the other Direct Action Plaintiffs ("DAPs") filed their complaints – to first assert claims against Thomson SA and Thomson Consumer.  Sharp pleads no facts in the FAC that justify this inexcusable delay.

---

[4] *See Radio & TV Equip., Inc. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-00542 (D.N.J., filed Jan. 28, 2008); *Sound Invs. Corp. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-00543 (D.N.J., filed Jan. 28, 2008); *Stack, et al. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-01319 (N.D. Cal., filed March 7, 2008); *Ganz v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-01721 (N.D. Cal., filed March 31, 2008).

Thomson SA has been seriously prejudiced by this delay.  Since this action began, over five million pages of documents have been produced and the parties have conducted over 90 depositions.  As the Court stated in its September 26, 2013 Order denying the DAPs' Motion to Amend to add the Thomson Defendants as parties to the case, "[d]iscovery in this case has proceeded apace" and requiring the Thomson Defendants to enter the litigation now would put them at an unfair, prejudicial disadvantage.  (*See* Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].) "[T]he DAPs had ample time to add Thomson to their complaints without delay or prejudice, but they did not" and "to reward delay with amendment in this case is not justifiable." (*Id*. at 5-6.)

The same reasoning applies to Sharp's claims against Thomson SA.  While Sharp slept on its rights, evidence degraded, memories faded, and information and personnel involved in Thomson SA CRT operations – an industry which it exited in 2005 – became even more difficult, if not impossible, to locate.  At the same time, discovery in this action "proceeded apace" for years.  By waiting until March of 2013 to first assert its claims, Sharp has put Thomson SA at a severe disadvantage.  Because Thomson SA has not participated in this litigation to date, to "catch up" it would need to:  (1) identify, locate, contact, and interview former Thomson personnel who may have knowledge regarding Sharp's claims; (3) collect, review, and produce documents responsive to Sharp's discovery requests; (4) obtain, search, review, analyze, and possibly translate the millions of pages of documents previously produced in the class actions and direct actions for documents that related to the Thomson Defendants; (5) serve additional document requests, interrogatories, and requests for admission on Sharp; (6) meet and confer regarding Sharp's discovery responses and file any necessary motions to compel; (7) purchase and review the transcripts of the over 90 depositions that have already been conducted in this matter; (8) identify witnesses and notice depositions, including depositions of some of the dozens of witnesses who were deposed before Sharp attempted to add the Thomson Defendants as parties; and (9) engage experts and prepare expert reports.

Mounting a proper defense would be particularly onerous for Thomson SA because, as Sharp has admitted, Thomson SA sold its CRT business in 2005, so nearly all, if not all, relevant personnel have long since left the Thompson Defendants.  (*See* FAC at ¶ 72.)  In similar

1   circumstances, courts have found that such difficulties would severely prejudice a defendant.  *See*

2   *Wilkins-Jones v. City of Alameda*, 2012 WL 3116025 at *8-9 (N.D. Cal. July 31, 2012) (denying

3   motion for leave to amend the complaint where, because of passage of years, much of the

4   evidence required to mount a defense would be difficult to obtain); *see also Parker v. Shaw &*

5   *Lines, LLC*, 2010 WL 1640963, at *2 (D. Ariz. Apr. 20, 2010) ("It is axiomatic that, as time

6   passes, it becomes harder for Defendants to defend the action as witnesses become unavailable

7   and memories fade."); *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007).  Moreover, even if

8   Thomson SA was able to take all of the steps necessary to "catch up" and prepare a proper

9   defense, requiring it to do so in a period of months, as opposed to the years that have been

10  afforded to the DAPs and the existing defendants, would be fundamentally unfair and severely

11  prejudicial.  Thomson SA has been severely prejudiced by Sharp's failure to assert it claims

12  nearly six years after Sharp has admitted it had knowledge of those claims.  Accordingly, Sharp's

13  tardy claims are barred by laches and should be dismissed with prejudice.  *See McCune v. Alioto*

14  *Fish Company*, 597 F.2d 1244, 1250 (9th Cir. 1979) (affirming trial court's dismissal of

15  complaint on basis of laches where plaintiff's three-year delay in bringing claims made it difficult

16  for defendant to obtain evidence needed to defend claims).

17       **B.      Sharp's Claims are Time-Barred and It Has Not Plead Specific Facts that**
              **Establish a Plausible Basis for Tolling the Statutes of Limitations.**
18

19       Where it is apparent on the face of the complaint that the applicable statutes of limitations

20  have expired, the Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  *Von*

21  *Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).  Here, the

22  statutes of limitations on Sharp's claims against Thomson SA began to run no later than July

23  2005, when Thomson SA sold its CRT business to Videocon.  (FAC at ¶ 72).  Indeed, in briefing

24  previously submitted to the Court, Sharp admitted that in 2005 "Thomson SA exited the CRT

25  business on a *global basis* . . . ."  (*See* Sharp's Opp. to Thomson SA's Mot. to Dismiss for Lack

26  of Personal Jurisdiction [Dkt. No. 1835 at 16 n.15] (emphasis in original).)  Now, in an effort to

27  delay the accrual date of its claims, Sharp tries, but fails, to allege that Thomson SA took overt

28  acts in furtherance of the alleged antitrust conspiracy after July of 2005 when its CRT-related

assets and employees were transferred to Videocon.  Specifically, Sharp alleges that "[a]t the same time that Videocon purchased Thomson's CRT business, Thomson SA invested a total of €240 million in Videocon . . . and acquired 13.1% of [the shares] of Videocon Industries, Ltd." (FAC at ¶ 71.)   As part of its investment, "Thomson SA also received at least one seat on Videocon Industries, Ltd.'s board of directors" and "Thomson's agreement with Videocon Industries, Ltd. provided that Thomson management would help Videocon Industries, Ltd. run the CRT business during the transition." (*Id.*)  In other words, Sharp alleges that after it transferred all of its CRT-related assets and personnel to Videocon in 2005, Thomson SA held an equity investment as a minority shareholder in Videocon.  However, Sharp does not allege any facts that suggest that after the July 2005 sale Thomson SA:  (1) retained CRT-related assets or personnel; or (2) actually actively participated in the manufacturing, sale, or distribution of CRTs anywhere in the world.  This is because Thomson SA did not do so.  Like any shareholder of a publicly-traded company, the fact that Thomson SA was a minority shareholder in Videocon after 2005 does mean that it participated in the CRT industry.  Because Thomson SA exited the CRT industry in July of 2005, the statutes of limitations on Sharp's claims began to run, at the latest, at that time.  *See Morton's Market, Inc. v. Gustafson's Dairy, Inc*., 198 F.3d 823, 839 (11th Cir. 1999) (holding plaintiff's antitrust claims time-barred because statute of limitations began to run when defendant sold dairy business and thereby withdrew from alleged conspiracy); *see also In re High Fructose Corn Syrup Antitrust Litig*., 293 F. Supp. 2d 854, 860 (N.D. Ill. 2003) (finding claims barred because statute of limitations began to run against individuals upon their resignation of employment from company).  Accordingly, the three and four-year statutes of limitations that apply to Sharp's claims expired several years before Sharp filed its Complaint on March 15, 2013.

Sharp has also failed to allege a plausible basis for tolling the statutes of limitations that apply to its claims against Thomson SA.  Where, as here, the applicable statutes of limitations have clearly expired, "the plaintiff has the burden of proving facts that would toll the statute[s]." *Vaughn v. Teledyne, Inc.,* 628 F.2d 1214, 1218 (9th Cir. 1980).  To survive a motion to dismiss, the complaint must "specifically identify every basis [the plaintiff] intends to rely on to establish

1  the tolling of statute of limitations." *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 07-md-
2  1827, MDL Dkt. No. 4867 at 3 (N.D. Cal. Feb. 23, 2012) (granting motion to dismiss where
3  plaintiff failed to plead specific facts that established statute of limitations was tolled).

4      To adequately plead that a statute of limitations was tolled by fraudulent concealment, a
5  plaintiff must satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b).  *Conmar Corp. v.*
6  *Mitsui & Co. (USA) Inc.,* 858 F.2d 499, 502 (9th Cir. 1988).  Sharp "must do more than show that
7  it was ignorant of its cause of action . . . it must plead facts showing that [Thomson SA]
8  affirmatively misled it."  *Id.*  In other words, Sharp must plead affirmative conduct by Thomson
9  SA to mislead Sharp "above and beyond the wrongdoing upon which [Sharp's] claim is filed."
10  *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000).  "Conclusory statements are not
11  enough.  [Sharp] must plead with particularity the circumstances of the concealment and the facts
12  supporting its due diligence."  *Conmar Corp.,* 858 F.2d at 502.

13      Sharp has failed to satisfy these standards.  Sharp does not allege *any* specific acts by
14  Thomson SA after July of 2005 that could plausibly suggest it affirmatively concealed its alleged
15  participation in the conspiracy after this date.

16      Sharp has also failed to plead specific facts that suggest it diligently attempted to discover
17  the facts underlying its claims.  Instead, Sharp conclusorily asserts that it "could not have
18  discovered the alleged conspiracy at an earlier date by the exercise of reasonable diligence" (FAC
19  at ¶ 237) and that it "had neither actual nor constructive knowledge of the facts constituting their
20  claim for relief before November 2007."  (*Id.* at ¶ 232.)  Courts have uniformly held that such
21  conclusory allegations are inadequate and do not toll the applicable statutes of limitations.  (*See*
22  Thomson Consumer's Mot. to Dismiss FAC at 10) (collecting cases).  Therefore, Sharp has failed
23  to plead fraudulent concealment by Thomson SA with the particularity required by Rule 9(b) and
24  Ninth Circuit precedent, and its claims are barred by the applicable statutes of limitations.  *See*
25  *Conmar Corp.,* 858 F.2d at 502.

26      *American Pipe* tolling does not save Sharp's claims against Thomson SA.  As noted
27  above, Thomson SA was named as a defendant in four of the original complaints filed by Indirect
28  Purchaser Plaintiffs ("IPPs") and Direct Purchaser Plaintiffs ("DPPs") in early 2008.  (*See supra*

1   at 18 n. 4.)  However, on March 16, 2009, both the IPPs and DPPs filed amended consolidated

2   class action complaints that did not name Thomson SA as a defendant.  (*See* DPP's Amended

3   Consolidated Compl. [Dkt. No. 436]; IPP's Amended Consolidated Compl. [Dkt. No. 437].  "It is

4   hornbook law that an amended pleading supersedes the original, the latter being treated thereafter

5   as non-existent."  *Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir. Cal. 1956).  Therefore, "at

6   the time when a defendant is dropped from the class action, that defendant is no longer notified of

7   any claims against it, and a potential plaintiff is then required to act upon any claims it hopes to

8   assert."  *Linder Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 54 (D. Mass. 1995)

9   (holding that a consolidated amended complaint supersedes any earlier complaint so after it is

10  filed there is no *American Pipe* tolling against a defendant not named in the superseding

11  complaint).  Sharp did not act after Thomson SA was dropped from the DPP and IPP actions in

12  2009 − it slept on its rights.  Thus, *American Pipe* tolling does not save its claims.

13      As explained in Thomson Consumer's Motion to Dismiss, government action tolling also

14  does not apply to Sharp's claims.  (*See* Thomson Consumer's Mot. to Dismiss Sharp's FAC at

15  13-17.)  The Cheng, Yeh, and Lee, *et al*. Indictments only allege that these defendants

16  participated in an anticompetitive conspiracy involving "CDTs . . . for use in computer monitors

17  and other products with similar technological requirements."  They do not make *any* allegations

18  regarding the separate and distinct CPT market – the market for CRTs used in televisions.  (*See*

19  *id*.)  By contrast, in its Amended Complaint, Sharp alleges that Thomson SA manufactured CRTs

20  for use in color televisions.  (FAC at ¶ 71.)  Therefore, because the face of the Cheng, Yeh, and

21  Lee, *et al*. Indictments establish that they relate to an entirely different product market than the

22  one in which Thomson SA is alleged to have participated, the filing of these indictments did not

23  toll the statutes of limitations for Sharp's claims against Thomson SA.  *Novell, Inc. v. Microsoft*

24  *Corp*., 505 F.3d 302, 320-22 (4th Cir. 2007) (holding that government action tolling does not

25  apply when government action and private suit relate to different markets).  While the Lin

26  Indictment does allege that the defendant conspired to fix the price of CPTs used in televisions, it

27  makes clear that all of Mr. Lin's alleged anticompetitive activities occurred in Asia.  (*See*

28  Thomson Consumer's Mot. to Dismiss at 16.)  By contrast, Sharp alleges that Thomson SA

1   operated in Europe, so comparison of the two complaints on their faced does not establish a

2   significant overlap between the two actions. *Novell, Inc.*, 505 F.3d at 320-22. Moreover, the

3   purpose of government tolling – to assist private litigants in utilizing any benefits they might cull

4   from government antitrust actions – has no application here because there is no reason to believe

5   that Sharp has utilized or relied on the Lin Indictment in any way to prepare its claims. Instead,

6   any alleged reliance on the Lin Indictment is a "mere sham" designed to allow it to indefinitely

7   toll the statute of limitations for its inexcusably late claims. (*See* Thomson Consumer's Mot. to

8   Dismiss at 17.) Finally, none of Sharp's state law claims are not preserved by 15 U.S.C. § 16(i).

9   (*Id.*)

10      In sum, the statutes of limitations on all of Sharp's claims expired several years before

11   it filed its inexcusably late claims and it does not plead specific facts that establish a plausible

12   basis for tolling the statutes of limitations. Therefore, all of Sharp's claims against Thomson SA

13   are time-barred and should be dismissed with prejudice.

14      **C.    Sharp Otherwise Fails to Plead Viable Claims.**

15      As detailed in Thomson Consumer's Motion to Dismiss the FAC, Sharp fails to state

16   viable claims because: (1) Sharp lacks standing to bring its federal and certain state law claims

17   under *Associated General Contractors* and *Illinois Brick;* (2) Sharp fails to state a claim under

18   N.Y. Gen. Bus. Law § 349; and (3) Sharp's New York and New Jersey state law claims offend

19   due process and do not satisfy constitutional standing requirements. The arguments and legal

20   authority that support dismissing Sharp's claims on these grounds are set forth in Thomson

21   Consumer's Motion to Dismiss and incorporated by reference herein. (*See* Thomson Consumer's

22   Mot. to Dismiss at 17-25.)

23      Finally, this Court lacks subject matter jurisdiction over Sharp's claims against Thomson

24   SA because it alleges Thomson S.A participated in a foreign conspiracy, but does not allege

25   sufficient facts to show that Thomson SA's alleged  foreign conduct caused "a direct, substantial,

26   and reasonably foreseeable effect" on U.S. commerce. Foreign Trade Antitrust Improvements

27   Act of 1982, 15 U.S.C. § 6(a) ("FTAIA").

28

The FAC alleges that Thomson SA participated in an alleged foreign conspiracy involving foreign meetings attended by residents of foreign countries and indicates "Defendants' allegedly illegal combination activities . . . took place [in] locales other than the United States" and "targeted and affected Defendants' entire world trade . . . rather than aiming primarily at the United States market." *Animal Sci. Prods.*, *Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.,* 596 F. Supp. 2d 842, 869 (D.N.J. 2008).  The named defendants and co-conspirators are overwhelmingly residents of foreign countries, including Japan, South Korea, China, Taiwan, Malaysia, Indonesia, Hong Kong, the Netherlands, France, India, and elsewhere.  Sharp alleges that these entities were represented at hundreds of meetings, most of which took place in Asia or occasionally in Europe or South America (FAC at ¶¶ 7, 136, 146, 148, 156, 158) and that the foreign conduct had an indirect and attenuated effect in the United States in that "[t]he overall CRT conspiracy set and/or affected worldwide prices (including prices in the United States)." (*Id*. at ¶ 153.)  However, a trickle-down effect in the United States is insufficient to ground jurisdiction under the FTAIA.  *See Dee-K Enters. Inc. v. Heveafil Sdn. Bhd*, 299 F.3d 281, 295 (4th Cir. 2002).  The FAC does not plead facts that plausibly suggest Thomson SA's alleged participation in foreign meetings regarding global CRT-markets had anything "more than what courts have termed a 'ripple effect' on the United States domestic market" – and effect that is insufficient under the FTAIA.  *See In re Intel Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 559-60 (D. Del. 2006) (dismissing antitrust claims based primarily on foreign conduct). Sharp cannot save its claims against Thomson SA with boilerplate allegations that the alleged conspiracy "had a direct, substantial, and reasonably foreseeable effect on United States domestic commerce" (FAC ¶ 12) or "affected billions of dollars of commerce throughout the United States" (FAC ¶ 8).  *See, e.g.*, *Animal Sci. Prods., Inc.*, 596 F. Supp. 2d at 876-77.  Sharp's claims against Thomson SA should therefore be dismissed for lack of subject matter jurisdiction.[5]

---

[5] Because this Court lacks subject matter jurisdiction over Sharp's claim under federal law, its claims under state law should also be dismissed since the application of state law to foreign conduct would infringe upon the federal government's supreme power to regulate foreign commerce.  *See In re Intel Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457 (D. Del. 2007) (holding that, where the jurisdictional prerequisites of the FTAIA are not fulfilled,

1

**CONCLUSION**

2       Thomson SA is a French corporation that has never manufactured, sold, or distributed

3  CRTs or CRT products in the United States.  It has not owned any entities that manufacture CRTs

4  or CRT products since 2005.  Because Thomson SA is not subject to personal jurisdiction in this

5  forum and Sharp's claims against it are inexcusably late, Sharp's claims against it should be

6  dismissed with prejudice.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  "Congress' intent would be subverted if state antitrust laws were interpreted to reach conduct
    which the federal law could not.").

28

1    Dated: November 25, 2013               Respectfully submitted,

2

3                             */s/ Kathy L. Osborn*
                            Kathy L. Osborn (*pro hac vice*)

4                             Ryan M. Hurley (*pro hac vice*)
                            Faegre Baker Daniels LLP

5                             300 N. Meridian Street, Suite 2700
                            Indianapolis, IN  46204

6                             Telephone: +1 317-237-0300
                            Facsimile: +1 317-237-1000

7                             kathy.osborn@FaegreBD.com
                            ryan.hurley@FaegreBD.com

8                             Jeffrey S. Roberts (*pro hac vice*)

9                             Faegre Baker Daniels LLP
                            3200 Wells Fargo Center

10                            1700 Lincoln Street
                           Denver, CO  80203

11                            Telephone: +1 303-607-3500
                           Facsimile:  +1 303-607-3600

12                            jeff.roberts@FaegreBD.com

13                            Calvin L. Litsey (SBN 289659)
                           Faegre Baker Daniels LLP

14                            1950 University Avenue, Suite 450
                           East Palo Alto, CA  94303-2279

15                            Telephone: +1 650-324-6700
                           Facsimile: +1 650-324-6701

16                            calvin.litsey@FaegreBD.com

17                            ***Attorneys for Specially Appearing Defendant, Thomson SA***

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

RE CATHODE RAY TUBE (CRT)

ANTITRUST LITIGATION,

_____

This Document Relates to:

*Sharp Electronics Corp, et al. v. Hitachi, Ltd., et al., No. 13-cv-001173*

No. 07-cv-5944-SC
MDL No. 1917

**[PROPOSED] ORDER GRANTING THOMSON SA'S MOTION TO DISMISS SHARP'S FIRST AMENDED COMPLAINT**

Upon consideration of the Thomson SA's Notice of Motion and Motion to Dismiss Sharp's First Amended Complaint and supporting Memorandum of Authorities, it is hereby

ORDERED that the Thomson SA's Motion to Dismiss Sharp's First Amended Complaint is GRANTED, and the claims against Thomson SA in Sharp's First Amended Complaint are dismissed WITH PREJUDICE.

IT IS SO ORDERED.


DATED: _____     _____

Hon. Samuel Conti
United States District Judge