Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: +1-303-607-3500
Facsimile: +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Defendant, Thomson Consumer Electronics, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION,<br><br>This Document Relates to:<br><br>*Sharp Electronics Corp, et al. v. Hitachi, Ltd., et al., No. 13-cv-001173* | No. 07-cv-5944-SC<br>MDL No. 1917<br><br>**THOMSON CONSUMER ELECTRONICS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S FIRST AMENDED COMPLAINT**<br><br>Date: February 7, 2013<br>Time: 10:00 A.M.<br>Place: Courtroom 1, 17th Floor<br>Judge: Hon. Samuel Conti<br>[[Proposed] Order Filed Concurrently Herewith] |

1

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3            PLEASE TAKE NOTICE that on February 7, 2013 at 10:00 a.m. or as soon thereafter as

4    this matter may be heard before the Honorable Samuel P. Conti, Senior U.S. District Court Judge,

5    U.S. District Court for the Northern District of California, Courtroom No. 1, 17th Floor, 450 Golden

6    Gate Avenue, San Francisco, California 94102, the moving Defendant listed on the signature page

7    below will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6),

8    for an Order dismissing with prejudice the claims alleged by Plaintiffs Sharp Electronics

9    Corporation and Sharp Electronics Manufacturing Company of America, Inc. ("Sharp") against the

10   moving Defendant in Sharp's First Amended Complaint.

11           This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum

12   of Points and Authorities in support thereof, the pleadings and correspondence on file with the

13   Court, and such arguments and authorities as may be presented at or before the hearing.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

ISSUES TO BE DECIDED ............................................................................................... 1

INTRODUCTION ............................................................................................................. 2

BACKGROUND ............................................................................................................... 2

ARGUMENT ..................................................................................................................... 4

    I.    Sharp's Claims Against Thomson Consumer Are Barred by the Doctrine of Laches.............. 4

    II.   Sharp's Claims Are Barred by the Applicable Statutes of Limitations. ................................ 7

        A.    The Statutes of Limitations on Sharp's Claims Against Thomson Consumer Began to Run No Later Than July of 2005 When Thomson SA Sold Thomson Consumer's CRT Business to Videocon...................................................... 8

        B.    Sharp Does Not Plead Specific Facts That Establish a Plausible Basis for Tolling the Statutes of Limitations for Its Claims Against Thomson Consumer. ........................................................................................................... 9

            1.    Fraudulent Concealment Does Not Apply. .................................................. 9

            2.    American Pipe Tolling Does Not Apply. .................................................... 11

            3.    Government Action Tolling Does Not Apply. ............................................. 13

    III.   Sharp Fails to Plead Federal or State Claims. ................................................................... 17

        A.    Sharp Lacks Antitrust Standing and Cannot Assert Claims Under Federal and California, New York, and New Jersey Antitrust Laws. ....................................... 18

        B.    Sharp Has Failed to Plead Facts That State a Plausible N.Y. Gen. Bus. Law § 349 Claim Against Thomson Consumer. ...................................................... 21

        C.    Sharp's New York and New Jersey Antitrust and Unfair Competition Law Claims Offend Due Process and Constitutional Standing Requirements. .................... 21

CONCLUSION ............................................................................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Allstate Ins. Co. v. Hague*,
  449 U.S. 302 (1981) ........................................................................ 22

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
  190 F.3d 1051 (9th Cir. 1999) ..................................................... 18, 19

*Am. Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974) ..................................................................... 11, 12

*Amarel v. Connell*,
  102 F.3d 1494 (9th Cir. 1996) ........................................................... 18

*Arneil v. Ramsey*,
  550 F.2d 774 (2d Cir. 1977) ............................................................. 11

*Associated Gen. Contractors v. California State Council of Carpenters*,
  459 U.S. 519 (1983) ................................................................ 1, 17, 18

*AT&T Mobility LLC v. AU Optronics Corp.*,
  707 F.3d 1106 (9th Cir. 2013) ........................................................... 22

*Barker v. Am Mobil Power Corp.*,
  64 F.3d 1397 (9th Cir. 1995) ............................................................... 9

*Bhan v. NME Hosps., Inc.*,
  772 F.2d 1467 (9th Cir. 1985) ........................................................... 18

*Boone v. Citigroup, Inc.*,
  416 F.3d 382 (5th Cir. 2005) ............................................................. 11

*Charley's Tour and Trans., Inc. v. Interisland Resorts, Ltd.*,
  618 F. Supp. 84 (D. Haw. 1985) ....................................................... 14

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ........................................................... 12

*Conerly v. Westinghouse Elec. Corp.*,
  623 F.2d 117 (9th Cir. 1980) ............................................................. 10

*Conmar Corp. v. Mitsui & Co. (USA) Inc.*,
  858 F.2d 499 (9th Cir. 1988) ......................................................... 9, 11

*Crago, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*,
  No. 7-cv-05944 (N.D. Cal., filed Nov. 26, 2007) .................................. 2

*Credit Information Systems, Inc. v. Employers Reinsurance Corp.*,
  1987 WL 2824 (N.D. Ill. March 9, 1987) ............................................. 5

*Crown, Cork & Seal Co., Inc. v. Parker*,
    462 U.S. 345 (1983) ................................................................................ 11, 12

*Cutting v. Woodward*,
    255 F. 633 (9th Cir. 1918) ............................................................................ 5

*Danjaq LLC v. Sony Corp.*,
    263 F.3d 942 (9th Cir. 2001) ................................................................ 4, 5, 7

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
    523 F.2d 389 (6th Cir. 1975) ...................................................................... 10

*Dungan v. Morgan Drive-Away, Inc.*,
    570 F.2d 867 (9th Cir. 1978) ...................................................................... 13

*Ganz v. Chunghwa Picture Tubes, Ltd., et al.*,
    No. 08-01721 (N.D. Cal., filed March 31, 2008) ......................................... 3

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*,
    711 F.3d 68 (2d Cir. 2013) (New York) ...................................................... 18

*Global Services v. Ikon Office Solutions*,
    2001 WL 6182425 (N.D. Dec. 12, 2013) .................................................... 10

*Greyhound Corp. v. Mt. Hood Stages, Inc.*,
    437 U.S. 322, 335 (1979) ......................................................... 13, 14, 16, 17

*In re Auto. Refinishing Paint Antitrust Litig.*,
    515 F. Supp. 2d 544 (E.D. Pa. 2007) ......................................................... 21

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
    782 F. Supp. 481 (C.D. Cal. 1991) ............................................................. 14

*In re Ditropan XP Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ...................................................... 20

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ...................................................... 18

*In re Fosamax Prods. Liab. Litig.*,
    694 F. Supp. 2d 253 (S.D.N.Y. 2010) ........................................................ 12

*In re GPU Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ...................................................... 23

*In re High Fructose Corn Syrup Antitrust Litig.*,
    293 F. Supp. 2d 854 (N.D. Ill. 2003) ........................................................... 8

*In re Optical Disk Drive Antitrust Litig.*,
    No. 3:10-md-2143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ............... 20

*In re Semrau D.D.S., Ltd.*,
    356 B.R. 677 (N.D. Ill. 2006) ................................................................................. 5

*In re Terazosin Hydrochloride Antitrust Litig.*,
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) .................................................................. 23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-01827, MDL Dkt. No. 484 ................................................................... 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, MDL Dkt. No. 4867 (N.D. Cal. Feb. 23, 2012) ..................... 9, 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, 2010 WL 2609434 (N.D. Cal. June 28, 2010) ........................... 22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, 2012 WL 149528 (N.D. Cal. Jan. 18, 2012) .............................. 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) ........................... 22

*In re Vertrue Mktg. & Sales Practices Litig.*,
    712 F. Supp. 2d 703 (N.D. Ohio 2010) ................................................................ 12

*International Tel. & Tel. Corp. v. General Tel. & Elecs. Corp.*,
    518 F.2d 913 (9th Cir. 1975) .................................................................................. 5

*Jackson v. Axton*,
    25 F.3d 884 (9th Cir. 1994) .................................................................................... 4

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ............................................................................. 4, 6

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .............................................................................. 20

*Kindt v. Matsushita Electric Indus. Co.*,
    No. 07-cv-10322 (S.D.N.Y., filed Nov. 13, 2007) ................................................. 2

*Leh v. General Petroleum Group*,
    382 U.S. 54 (1965) .......................................................................................... 13, 16

*Lindner Dividend Fund, Inc. v. Ernst & Young*,
    880 F. Supp. 49 (D. Mass. 1995) .................................................................... 11, 12

*Madison Square Garden, L.P. v. NHL*,
    2008 U.S. LEXIS 80475 (S.D.N.Y. 2008) ............................................................. 5

*McCune v. Alioto Fish Co.*,
    597 F.2d 1244 (9th Cir. 1979) ............................................................................ 5, 7

*Metz v. Unizan Bank*,
    416 F. Supp. 2d 568 (N.D. Ohio 2006) ................................................................ 9

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999) .......................................................................... 8

*Nashville Milk Co. v. Carnation Co.*,
    355 U.S. 373 (1958) ........................................................................................ 17

*New York Jets LLC v. Cablevision Sys. Corp.*,
    No. 05 Civ. 2875, 2005 WL 2649330 (S.D.N.Y. Oct. 17, 2005) .......................... 21

*Novell, Inc. v. Microsoft Corp.*,
    505 F.3d 302 (4th Cir. 2007) ............................................................... 14, 15, 16

*Pecover v. Elec. Arts Inc.*,
    633 F. Supp. 2d 976 (N.D. Cal. 2009) ................................................................ 23

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ........................................................................................ 22

*Pool Water Prods. v. Olin Corp.*,
    258 F.3d 1024 (9th Cir. 2001) .......................................................................... 17

*Radio & TV Equip., Inc. v. Chunghwa Picture Tubes, Ltd., et al.*,
    No. 08-00542 (D.N.J., filed Jan. 28, 2008) .......................................................... 3

*Royal Printing Co. v. Kimberly-Clark Corp.*,
    621 F.2d 323 (9th Cir. 1980) ............................................................................ 20

*Russell v. Thomas*,
    129 F. 605 (S.D. Cal. 1955) ............................................................................... 4

*Rutledge v. Boston Woven Hose & Rubber Co.*,
    576 F.2d 248 (9th Cir. 1978) ............................................................................ 10

*Santa Maria v. Pac. Bell*,
    202 F.3d 1170 (9th Cir. 2000) ............................................................................ 9

*Shriners Hosps. for Children v. Qwest Commc'ns Int'l Inc.*,
    No. 04-cv-00781, 2007 WL 2801494 (D. Colo. Sept. 24, 2007) ......................... 11

*Solow Building Co., LLC v. Nine West Group, Inc.*,
    2001 WL 736794 (S.D.N.Y. June 29, 2001) ......................................................... 5

*Sound Invs. Corp. v. Chunghwa Picture Tubes, Ltd., et al.*,
    No. 08-00543 (D.N.J., filed Jan. 28, 2008) .......................................................... 3

*Soward v. Deutsche Bank AG*,
    814 F. Supp. 2d 272 (S.D.N.Y. 2011) ................................................................. 13

*Stack, et al. v. Chunghwa Picture Tubes, Ltd., et al.,*
  No. 08-01319 (N.D. Cal., filed March 7, 2008).................................................... 3

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.,*
  782 F. Supp. 2d 1059 (E.D. Cal. 2011) .................................................... 20

*Tech Data Corp. v. AU Optronics Corp.,*
  No. 07-md-1827, 2012 WL 3236065 (N.D. Cal. Aug. 6, 2012) ..................... 11

*United States v. Antar,*
  53 F.3d 568 (3rd 1995) .................................................................... 8

*United States v. Cheng Yuan Lin,*
  No. 09-cr-00131 (N.D. Cal. Feb. 10, 2009) ........................................ 15

*United States v. Chung Cheng Yeh,*
  No. 10-cr-00231 (N.D. Cal. March 30, 2010) ...................................... 15

*United States v. Seung-Kyu Lee,*
  No. 10-cr-00817 (N.D. Cal. Nov. 9, 2010)........................................... 15

*United States v. Wen Jun Cheng,*
  No. 09-cr-00836 (N.D. Cal. Aug. 18, 2009) ........................................ 15

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,*
  454 U.S. 464 (1982) ........................................................................ 23

*Vaughn v. Teledyne, Inc.,*
  628 F.2d 1214 (9th Cir. 1980) ........................................................... 9

*Vincent v. Money Store,*
  No. 11 Civ. 7685, 2013 WL 57794 (S.D.N.Y. Jan. 4, 2013) .................. 12

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
  592 F.3d 954 (9th Cir. 2010) ............................................................ 7

*Williams v. Boeing Co.,*
  517 F.3d 1120 (9th Cir. 2008) ........................................................ 12

*Wyser-Pratte Mgt. Co. v. Telxon Corp.,*
  413 F.3d 553 (6th Cir. 2005) .......................................................... 11

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
  401 U.S. 321 (1971) ................................................................... 8, 17

**STATE CASES**

*27001 P'ships v. BT Sec. Corp.,*
  No. CV 2004-7487, 2010 WL 5553364 (Ala. Cir. Ct. Feb. 8, 2010) ..................... 11

*Jolly v. Eli Lilly & Co.,*
  751 P.2d 923 (Cal. 1988)............................................................. 12

*Maestas v. Sofamor Danek Grp., Inc.*,
    33 S.W.3d 805 (Tenn. 2000) ................................................................. 12

*Sickles v. Cabot Corp.*,
    877 A.2d 267 (N.J. Super. App. Div. 2005) ........................................ 20

*Van Natta Mech. Corp. v. Di Staulo*,
    649 A.2d 399 (N.J. Super. Ct. App. Div. 1994)................................... 18

FEDERAL STATUTES

15 U.S.C. § 12 ................................................................................................. 17

15 U.S.C. § 15(b) .......................................................................................... 7, 8

15 U.S.C. § 16 ................................................................................................. 13

15 U.S.C. § 16(i) ....................................................................... 13, 14, 15, 16, 17

STATE STATUTES

CAL. BUS. & PROF. CODE § 16750.1 ................................................................ 7

CAL. BUS. & PROF. CODE § 17208 .................................................................. 7

N.J. STAT. ANN. § 56:9-3 ................................................................................ 23

N.J. STAT. ANN. § 56:9-14 ............................................................................... 7

N.J. STAT. ANN. § 56:9-18 .............................................................................. 20

N.Y. C.P.L.R. 214(2) ........................................................................................ 7

N.Y. GEN. BUS. LAW § 340 ............................................................................ 23

N.Y. GEN. BUS. LAW § 340(5) ......................................................................... 7

N.Y. GEN. BUS. LAW § 349 ...................................................................... 1, 17, 21, 23

TENN. CODE ANN. § 28-3-105 ......................................................................... 7

RULES

Federal Rules of Civil Procedure 9(b) ......................................................... 9, 11

Federal Rules of Civil Procedure 12(b)(6).................................................... 1, 7

OTHER AUTHORITIES

1998 Sess. Law News of N.Y. ........................................................................ 20

## MEMORANDUM OF POINTS AND AUTHORITIES

In accordance with the Federal Rules of Civil Procedure 12(b)(6), Defendant Thomson Consumer Electronics, Inc. ("Thomson Consumer") respectfully moves to dismiss with prejudice the claims asserted against it by Sharp Electronics Corporation and Sharp Manufacturing Company of America, Inc. (collectively, "Sharp") in the First Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted.

## ISSUES TO BE DECIDED

1.      Whether Sharp's claims against Thomson Consumer are barred by the doctrine of laches?

2.      Whether Sharp's claims against Thomson Consumer are time-barred under the applicable statutes of limitations and whether Sharp has failed to plead any basis for tolling its claims?

3.      Whether Sharp's claims against Thomson Consumer under the Sherman Act and the laws of California, New York, and New Jersey should be dismissed because Sharp lacks antitrust standing under *Associated General Contractors*?

4.      Whether Sharp's claims against Thomson Consumer under the Sherman Act and the laws of New York and New Jersey are barred under *Illinois Brick* to the extent that those claims rely on indirect purchases of CRTs or purchases of CRT products?

5.      Whether Sharp fails to state a claim under  N.Y. GEN. BUS. LAW § 349 against Thomson Consumer?

6.      Whether Sharp's claims against Thomson Consumer under the laws of New York and New Jersey should be dismissed because Sharp does not allege facts sufficient to establish those states' interests in this action consistent with the Due Process Clause and prudential standing requirements?

7.      Whether Sharp's claims should be dismissed for lack of subject matter jurisdiction to the extent that they relate to wholly foreign sales of CRTs or CRT products?

1

## INTRODUCTION

Nine years after Thomson Consumer closed its U.S.-based CRT manufacturing plants, eight years after the Thomson Defendants exited the CRT business, and almost six years after these actions began, Sharp is attempting to state claims against Thomson Consumer.  Sharp's claims are inexcusably late and as this Court ruled two months ago, forcing Thomson Consumer to enter this long-running MDL proceeding now would place it at an unfair, prejudicial disadvantage.  (*See* Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].)  Sharp's unreasonable delay in pressing its rights has seriously prejudiced Thomson Consumer.  Its claims are barred by laches and under the applicable statutes of limitations.  Moreover, even if Sharp's claims are timely – they are not – Sharp fails to plead viable claims for several additional and independent reasons.  Accordingly, Sharp's claims against Thomson Consumer should be dismissed with prejudice.

## BACKGROUND

Thomson Consumer (n/k/a Technicolor USA, Inc.) is a U.S. corporation with its principal place of business in Indianapolis, Indiana.  (First Amended Compl. ("FAC") [Dkt. No. 2030] at ¶ 72.)  Thomson Consumer is a wholly owned subsidiary of Thomson SA, a French corporation with its principal place of business in Issy-Les-Moulineaux, France.  (*Id.* at ¶ 71.)  In 2004, all of Thomson Consumer's CRT manufacturing operations in the United States were closed.  (Compl. [Dkt. No. 1604-2] at ¶ 73.)  In July 2005, Thomson SA sold its CRT business, including that of Thomson Consumer, to Videocon Industries, Ltd. ("Videocon").  (FAC at ¶¶ 71-72.)  As such, Thomson Consumer exited the CRT industry over eight years ago.  (*Id.*)

On November 13, 2007, the first in a series of putative class action lawsuits concerning an alleged antitrust conspiracy in the CRT market was filed.  *See Kindt v. Matsushita Electric Indus. Co.*, No. 07-cv-10322 (S.D.N.Y., filed Nov. 13, 2007).  Less than two weeks later, a second putative class action was filed.  *See Crago, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 7-cv-05944 (N.D. Cal., filed Nov. 26, 2007).  These complaints were prompted by the announcement and reporting of "international investigations of alleged price-fixing" of CRTs by government authorities around the world, including the U.S. Department of Justice and European, Japanese, and South Korean competition commissions.  (*See* FAC at ¶¶ 128-30) (describing public

1   announcements by global competition authorities regarding their investigations into alleged price-

2   fixing in CRT industry).  The commencement of these investigations and the attendant litigation

3   resulted in the termination of any alleged conspiracy by the end of November 2007.  As early as

4   January 2008, Thomson SA was named as a defendant in four of the original complaints.  *See Radio*

5   *& TV Equip., Inc. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-00542 (D.N.J., filed Jan. 28,

6   2008); *Sound Invs. Corp. v. Chunghwa Picture Tubes, Ltd., et al*., No. 08-00543 (D.N.J., filed Jan.

7   28, 2008); *Stack, et al. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-01319 (N.D. Cal., filed

8   March 7, 2008); *Ganz v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-01721 (N.D. Cal., filed

9   March 31, 2008).  Each of those original complaints alleged that Thomson SA manufactured, sold,

10  and distributed CRTs and/or CRT products throughout the U.S. and was involved in a global

11  conspiracy with other named defendants.  *See Radio & TV Equip., Inc.* at ¶¶ 27, 69-79; *Sound Invs.*

12  *Corp.* at ¶¶ 27, 69-79; *Ganz* at ¶¶ 22, 48-72; *Stack, et al.* at ¶¶ 33, 62-86.

13          The statutes of limitations on Sharp's claims against Thomson Consumer began to run no

14  later than July 2005 when Thomson Consumer exited the CRT industry.  Moreover, *Sharp has*

15  *admitted that it had actual knowledge of its potential claims by November 2007*.  (FAC at ¶ 232.)

16  Despite the fact that it possessed this knowledge, Sharp slept on its rights.  It waited until March 15,

17  2013 – over five years after the first claims were filed in this action and over 16 months after the

18  other Direct Action Plaintiffs ("DAPs") filed their complaints – to first assert claims against

19  Thomson Consumer.  Before Sharp filed its Complaint in 2013, Thomson Consumer had never been

20  named as a defendant in any CRT-related action.

21          On March 27, 2013, other Direct Action Plaintiffs ("DAPs") (not including Sharp) filed a

22  Motion for Leave to File Amended Complaints ("DAPs' Motion to Amend") [Dkt. No. 1609] in

23  which they sought, *inter alia*, to add Thomson Consumer and Thomson SA (collectively the

24  "Thomson Defendants") to their complaints and include certain other factual allegations.  On

25  September 26, 2013, the Court entered an Order denying the DAPs' request to add the Thomson

26  Defendants as parties to the case.  (*See* Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].)  The Court

27  explained that "[d]iscovery in this case has proceeded apace," and requiring the Thomson

28  Defendants to enter the litigation now would put them at an unfair, prejudicial disadvantage.  (*Id.* at

5.)  "[T]he DAPs had ample time to add Thomson to their complaints without delay or prejudice, but they did not" and "to reward delay with amendment in this case is not justifiable."  (*Id*. at 5-6.)[1]

## ARGUMENT

### I.    Sharp's Claims Against Thomson Consumer Are Barred by the Doctrine of Laches.

Laches precludes Sharp from bringing Thomson Consumer into this action more than five years after Sharp has admitted it had knowledge of the facts giving rise to its claims.  The doctrine of laches operates to bar a plaintiff's claims when the plaintiff has (1) unreasonably delayed pressing its rights and (2) thereby caused prejudice to the defendant.  *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 838 (9th Cir. 2002) (explaining that "laches penalizes inexcusable dilatory behavior" by the plaintiff); *Jackson v. Axton*, 25 F.3d 884, 886 (9th Cir. 1994) ("Laches is based on the plaintiff's delay in beginning litigation . . .") "A determination of whether a party exercised unreasonable delay in filing suit consists of two steps.  First, we assess the length of delay, which is measured from the time the plaintiff knew or should have known about its potential cause of action.  Second, we decide whether the plaintiff's delay was reasonable."  *Jarrow Formulas,* 304 F.3d at 838 (internal citations omitted).  "In determining reasonableness, courts look to the cause of the delay."  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001).  Laches applies to bar a plaintiff's claims where the plaintiff offers "no viable justification for the delay."  (*Id*.) (holding plaintiff's delay in instituting claims was unjustified so laches barred claims).

While a court's determination of whether laches applies is necessarily a context-specific inquiry, "where the elements of laches are apparent on the face of the complaint, it may be asserted on a motion to dismiss for failure to state a claim upon which relief can be granted."  *Russell v. Thomas*, 129 F. 605, 606 (S.D. Cal. 1955) (granting motion to dismiss complaint on ground of

---

[1]  In a transparent attempt to circumvent the Court's Sept. 26, 2013 Order denying them leave to amend their complaints to add claims against the Thomson Defendants, on or about November 11, 12 and 13, 2013, several of the DAPs, including Best Buy, Costco, Sears, Kmart, the Circuit City bankruptcy trustee, Office Depot, Tweeter, Electrograph Systems, and P.C. Richard & Son filed new actions in this and other federal courts across the country that attempt to state the same CRT-related claims against the Thomson Defendants.  These inexcusably late, repeat tag-along actions and Sharp's claims here will cause the Thomson Defendants the same prejudice that the DAPs' proposed amended complaints would have caused the Thomson Defendants, had the Court not entered its Sept. 26, 2013 Order.

1   laches); *see also McCune*, 597 F.2d at 1250 (stating that complaint may be dismissed on its face

2   where "undisputed facts" establish claims are barred by laches).  Accordingly, courts across the

3   country have dismissed complaints on the basis of laches where the applicability of the doctrine is

4   apparent on the face of the complaint.  *See In re Semrau D.D.S., Ltd.*, 356 B.R. 677, 696-97 (N.D.

5   Ill. 2006) (dismissing claims where four-year delay caused evidentiary prejudice and needlessly

6   increased difficulty and costs of defense); *Madison Square Garden, L.P. v. NHL*, 2008 U.S. LEXIS

7   80475 *31-35 (S.D.N.Y. 2008) (finding claim for injunction based on alleged antitrust violations

8   barred by laches on face of complaint); *Solow Building Co., LLC v. Nine West Group, Inc.,* 2001

9   WL 736794 *3, 6 (S.D.N.Y. June 29, 2001), *aff'd* 48 Fed. App'x 15 (2d Cir. 2002) (granting motion

10  to dismiss and noting that "there is no reason the court should permit plaintiff to sleep on its rights

11  to sue under any of its claims."); *Credit Information Systems, Inc. v. Employers Reinsurance Corp*.,

12  1987 WL 2824 (N.D. Ill. March 9, 1987) (dismissing claim following three-year delay in bringing

13  claim).

14          Courts have recognized that various forms of prejudice are sufficient to establish laches.

15  "The reason for this is clear and, in some sense, definitional: The very purpose of laches as an

16  equitable doctrine – and the reason that it differs from a statute of limitations – is that the *claim is*

17  *barred because the plaintiff's delay occasioned the defendant's prejudice*."  *Id*. (emphasis added).

18  In other words, "[u]nlike a limitations period, which bars an action strictly by time lapse, laches

19  bars a claim if unreasonable delay causes prejudice to the defendant." *International Tel. & Tel.*

20  *Corp. v. General Tel. & Elecs. Corp.,* 518 F.2d 913, 926 (9th Cir. 1975); *see also Cutting v.*

21  *Woodward*, 255 F. 633, 637 (9th Cir. 1918).  One form of prejudice often found to bar a plaintiff's

22  claims is evidentiary prejudice – when a plaintiff's unreasonable delay has caused evidence needed

23  to defend the action to become "lost, stale, or degraded" and difficult or impossible to obtain

24  because of the passage of time.  *Danjaq*, 263 F.3d at 954; *see also McCune v. Alioto Fish Co.*, 597

25  F.2d 1244, 1250 (9th Cir. 1979) (affirming trial court's dismissal of complaint on basis of laches

26  where plaintiff's three-year delay in bringing claims made it difficult for defendant to obtain

27  evidence needed to defend claims).

28

1    Here, Sharp's allegations establish that its claims against Thomson Consumer are barred by

2  laches.  In the FAC, Sharp admits: (1) its claims "concern[] substantially the same Defendants, co-

3  conspirators, transactions and events that are involved in Case No. 3:07-cv-5944-SC" (FAC at ¶

4  21); (2) in November of 2007, international competition authorities announced that they believed

5  they had uncovered evidence of price-fixing in the CRT industry (FAC at ¶¶ 128-34); and (3) Sharp

6  "discovered" or "had actual or constructive knowledge of the facts" giving rise to its claims in

7  "November 2007, when the government investigations described above became public."  (FAC at ¶

8  232).  In other words, it is undisputed that Sharp "knew or should have known about its potential

9  cause of action" no later than November of 2007, but delayed asserting its claims against Thomson

10  Consumer until March 2013 – five years and five months after other plaintiffs initiated their claims.

11  *Jarrow Formulas,* 304 F.3d at 838; *supra* at 3.  Sharp pleads no facts that justify this unreasonable

12  delay and no such facts exist.

13    There is also no doubt that Sharp's unjustified delay has seriously prejudiced Thomson

14  Consumer.  Since this action began, over five million pages of documents have been produced and

15  the parties have conducted over 90 depositions.  "Discovery in this case has proceeded apace," and

16  requiring the Thomson Defendants to enter the litigation now would put them at an unfair,

17  prejudicial disadvantage.  (*See* Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].)  The Court has ruled

18  that "the DAPs had ample time to add Thomson to their complaints without delay or prejudice, but

19  they did not" and "to reward delay with amendment in this case is not justifiable."  (*Id*. at 5-6.)

20    The same reasoning applies to Sharp's claims against Thomson Consumer.  Sharp had

21  ample opportunity to assert claims against Thomson Consumer, but inexplicably failed to do so

22  until March 2013.  While it slept on its rights, evidence degraded, memories faded, and information

23  and personnel involved in Thomson Consumer's U.S.-based CRT operations – operations which

24  shut down in 2004 – became even more difficult, if not impossible, to locate.  Indeed, the prejudice

25  caused to Thomson Consumer by Sharp's delay is apparent from the face of its pleadings.  As noted

26  above, Sharp has admitted that Thomson Consumer shut down its U.S.-based CRT operations in

27  2004 and entirely exited the CRT business in 2005 when its assets and personnel were transferred to

28  Videocon Industries, Ltd.  (*See* Compl. at ¶ 73; FAC at ¶¶ 71-72.)  By waiting until 2013 to first

assert its claims, Sharp has put Thomson Consumer at a severe disadvantage.  Thomson Consumer will be forced to defend itself by attempting to locate documents and former employees regarding a business that ceased operations over eight years ago.  As such, much of the evidence and many of the witnesses it needs to prepare its defense will be difficult, if not impossible to obtain.  And, even if it is able to recover this evidence, most of the former Thomson Consumer personnel needed to explain and interpret it have long since left the company.  Thomson Consumer's ability to prepare its defense will be severely prejudiced by the unavailability of this "lost, stale, or degraded" evidence.  *Danjaq*, 263 F.3d at 954; *see also McCune*, 597 F.2d at 1250.

Like the other DAPs, Sharp should not be rewarded for its unjustified delay and it claims against Thomson Consumer should be dismissed with prejudice.

## II.   Sharp's Claims Are Barred by the Applicable Statutes of Limitations.

Sharp's foot dragging also means that its claims are barred by the applicable statutes of limitations.  Where it is apparent on the face of the complaint that the applicable statutes of limitations have expired, the plaintiff's claims should be dismissed in accordance with Fed.R.Civ.P. 12(b)(6).  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).  Here, the statutes of limitations on all of Sharp's claims against Thomson Consumer began to run no later than July 2005, when Thomson Consumer exited the CRT industry upon the sale of its CRT business to Videocon.  (FAC at ¶ 72).  Accordingly, the three and four-year statutes of limitations that apply to its claims expired in July 2008 and July 2009 – nearly four and five years before Sharp filed its Complaint on March 15, 2013.[2]  And Sharp has failed, once again, to plead any facts that would allow the Court to plausibly infer Thomson Consumer took acts after July 2005 that would toll the statutes of limitations.

---

[2]   Sharp's federal antitrust claim is subject to a four-year statute of limitations.  *See* 15 U.S.C. § 15(b). Similarly, its claims under the California Cartwright Act, the California Unfair Competition Law, the New York Donnelly Act, and the New Jersey Antitrust Act are subject to a four-year limitations period.  *See* CAL. BUS. & PROF. CODE § 16750.1; CAL. BUS. & PROF. CODE § 17208; N.Y. GEN. BUS. LAW § 340(5); N.J. STAT. ANN. § 56:9-14.  Sharp's claims under the New York Unfair Competition Law and Tennessee antitrust statute are subject to a three-year limitations period.  *See* N.Y. C.P.L.R. 214(2); TENN. CODE ANN. § 28-3-105.

**A.      The Statutes of Limitations on Sharp's Claims Against Thomson Consumer Began to Run No Later Than July of 2005 When Thomson SA Sold Thomson Consumer's CRT Business to Videocon.**

Under the antitrust laws, "a cause of action begins to accrue and the statute [of limitations] begins to run when a defendant commits an act that injures the plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).  A plaintiff must file its claim within four years following the defendant's last overt act in furtherance of the antitrust conspiracy.  *Id.*; 15 U.S.C. § 15(b); *see also United States v. Antar*, 53 F.3d 568, 584 (3rd 1995) (statute of limitations begins to run upon alleged conspirator's withdrawal from conspiracy).  Moreover, the sale of or "[r]esignation from the conspiring business has frequently been held to constitute effective withdrawal" from the alleged conspiracy and to commence the statute of limitations.  *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999) (holding plaintiff's antitrust claims time-barred because statute of limitations began to run when defendant sold dairy business and thereby withdrew from alleged conspiracy); *see also In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854, 860 (N.D. Ill. 2003) (finding claims barred because statute of limitations began to run against individuals upon their resignation of employment from company).

Here, Sharp does not allege that Thomson Consumer took *any* overt act in furtherance of the alleged antitrust conspiracy after July 2005 when its CRT-related assets and employees were transferred to Videocon.  Indeed, it is undisputed that Sharp could not make such an allegation because following the 2005 sale of its CRT business, Thomson Consumer no longer possessed the assets or employees needed to participate in the industry.  Moreover, Sharp's allegations that Thomson Consumer's parent, Thomson SA, held an equity stake in Videocon following the 2005 sale does not allow the Court to plausibly infer that Thomson Consumer continued to participate in the alleged conspiracy after July 2005.  Sharp has not alleged that any individual employed by Thomson Consumer took any overt act in furtherance of the alleged conspiracy after it withdrew from the CRT industry in July 2005.  Thus, the statutes of limitations began to run over eight years ago and clearly expired before Sharp filed its claims in March 2013.

**B.  Sharp Does Not Plead Specific Facts That Establish a Plausible Basis for Tolling the Statutes of Limitations for Its Claims Against Thomson Consumer.**

Sharp has not plead any facts that establish a plausible basis for tolling the statutes of limitations.  Where, as here, the applicable statutes of limitations have clearly expired, "the plaintiff has the burden of proving facts that would toll the statute[s]."  *Vaughn v. Teledyne, Inc.,* 628 F.2d 1214, 1218 (9th Cir. 1980).  To survive a motion to dismiss, the complaint must "specifically identify every basis [the plaintiff] intends to rely on to establish the tolling of statute of limitations."  *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 07-md-1827, MDL Dkt. No. 4867 at 3 (N.D. Cal. Feb. 23, 2012) (granting motion to dismiss where plaintiff failed to plead specific facts that established statute of limitations was tolled).  Sharp's FAC attempts to plead fraudulent concealment, class action tolling, and government action tolling, but none of those tolling doctrines apply here.

### 1.  *Fraudulent Concealment Does Not Apply.*

Fraudulent concealment does not apply because Sharp has not plead that Thomson Consumer took *any* acts after July 2005, let alone any affirmative acts that concealed its alleged participation in the conspiracy.  A plaintiff relying upon fraudulent concealment must satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b).  *Conmar Corp. v. Mitsui & Co. (USA) Inc.,* 858 F.2d 499, 502 (9th Cir. 1988).  Sharp "must do more than show that it was ignorant of its cause of action . . . it must plead facts showing that [Thomson Consumer] affirmatively misled it."  *Id.*  In other words, Sharp must plead affirmative conduct by Thomson Consumer to mislead Sharp "above and beyond the wrongdoing upon which [Sharp's] claim is filed."  *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000).  "Conclusory statements are not enough.  [Sharp] must plead with particularity the circumstances of the concealment and the facts supporting its due diligence."  *Conmar Corp.,* 858 F.2d at 502.  Sharp cannot "use the fraudulent concealment by one defendant as a means to toll the statute of limitations against other defendants."  *Barker v. Am Mobil Power Corp.,* 64 F.3d 1397, 1402 (9th Cir. 1995); *see also Metz v. Unizan Bank*, 416 F. Supp. 2d 568, 579 (N.D. Ohio 2006) ("The Plaintiff must affirmatively plead facts supporting a claim for fraudulent concealment against each specific Defendant who allegedly participated in the concealment in order to state a claim against that Defendant.").

1    The allegations in the Amended Complaint fall well short of these standards.  Sharp admits

2    that Thomson Consumer exited the CRT industry in July 2005 when Thomson SA sold its CRT

3    assets and transferred its related personnel to Videocon.  (FAC at ¶ 72.)  Sharp does not allege *any*

4    specific acts by Thomson Consumer after July 2005, let alone acts that could plausibly suggest it

5    affirmatively concealed its alleged participation in the conspiracy after this date.

6    Sharp has also failed to plead facts showing that it diligently attempted to discover its

7    claims.  Instead, Sharp conclusorily asserts that it "could not have discovered the alleged conspiracy

8    at an earlier date by the exercise of reasonable diligence" (FAC at ¶ 237) and that it "had neither

9    actual nor constructive knowledge of the facts constituting their claim for relief before November

10   2007."  (*Id.* at ¶ 232.)  Courts have uniformly held that such conclusory allegations are inadequate

11   and do not toll the applicable statutes of limitations.  *See Conerly v. Westinghouse Elec. Corp.*, 623

12   F.2d 117, 120 (9th Cir. 1980) (rejecting fraudulent concealment where plaintiff failed to "allege any

13   facts . . . tending to excuse his failure to discover [defendant's] misconduct"); *Rutledge v. Boston*

14   *Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (rejecting fraudulent concealment

15   where plaintiff failed to "state facts showing his due diligence in trying to uncover the facts"); *see*

16   *also Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) (rejecting

17   fraudulent concealment argument and noting "mere allegation of due diligence without asserting

18   what steps were taken is insufficient").[3]

19   Sharp has inexplicably delayed attempting to state a claim against Thomson Consumer.  In

20   the face of this inexcusable delay and despite the fact that is has a voluminous discovery record and

21   case docket to draw upon, Sharp has failed to plead with particularity that: (1) Thomson Consumer

22   took any affirmative acts after July 2005 that fraudulently concealed its alleged participation in the

23   conspiracy; and (2) Sharp diligently attempted to discover the facts underlying its claims, but

24   despite it diligence, was unable to discover the necessary facts.  Therefore, Sharp has failed to plead

---

25   [3]  Sharp's bare allegation that "[b]y its very nature, Defendants' price-fixing conspiracy was

26   inherently self-concealing" also fails to plead fraudulent concealment by Thomson Consumer under
     clearly-established Ninth Circuit law.  *See Global Services v. Ikon Office Solutions*, 2001 WL

27   6182425 (N.D. Dec. 12, 2013) (granting motion to dismiss antitrust claims because allegation that
     alleged conspiracy was "self-concealing" does not plead fraudulent concealment of statute of

28   limitations as a matter of law and collecting cases).

1    fraudulent concealment by Thomson Consumer with the particularity required by Rule 9(b) and

2    Ninth Circuit precedent. *See Conmar Corp.,* 858 F.2d at 502.

3            **2.      American Pipe Tolling Does Not Apply.**

4            Sharp alleges that its claims are tolled by virtue of the Direct Purchaser Plaintiffs ("DPPs")

5    consolidated amended complaint (FAC at ¶ 230).[4]  (*See* Dkt. No. 436.)  Sharp is incorrect because

6    *Thomson Consumer was not and has never been a party to the DPP class action proceedings.*

7    While the filing of a class action may toll the statute of limitations for claims by putative class

8    members against defendants *named* in the class action, *Am. Pipe & Constr. Co. v. Utah*, 414 U.S.

9    538, 554 (1974), it does not toll the statute of limitations as to claims against a party who is not

10   named as a defendant. *See, e.g., Boone v. Citigroup, Inc.*, 416 F.3d 382, 392 (5th Cir. 2005) (noting

11   that "it is facially obvious" that the pendency of a class action does not toll the statute of limitations

12   as to defendants not named in the class action); *Wyser-Pratte Mgt. Co. v. Telxon Corp.*, 413 F.3d

13   553, 567-68 (6th Cir. 2005) (holding that class action tolling does not apply against a defendant

14   who was not named in the class action); *Arneil v. Ramsey*, 550 F.2d 774, 782 n.10 (2d Cir. 1977)

15   (same), *rev'd on other grounds by Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983).

16           Here, Thomson Consumer was not and has never been a party to the DPP class action

17   proceedings.  Accordingly, *American Pipe* tolling does not save Sharp's time-barred claims against

18   Thomson Consumer.[5]

19   ────────────────────

20   [4]  The DPPs' complaint asserts claims under federal law only.  Sharp does not purport to be a
     member of the Indirect Purchaser Plaintiffs ("IPP") class, which encompasses only those who

21   purchased CRTs for their own use and not for resale, and is not entitled to any tolling by virtue of
     that class action.  Thomson Consumer was never a defendant in the IPP class either.

22   [5]  That Thomson Consumer's parent, Thomson SA, was named in two of the indirect and two of the

23   direct complaints does not toll Sharp's claims against Thomson Consumer. *Tech Data Corp. v. AU
     Optronics Corp.*, No. 07-md-1827, 2012 WL 3236065, at *5 (N.D. Cal. Aug. 6, 2012) (refusing to

24   apply *American Pipe* tolling to claims against affiliates who were not named in class action); *In re
     TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2012 WL 149528, at *4 (N.D. Cal. Jan.

25   18, 2012); *Shriners Hosps. for Children v. Qwest Commc'ns Int'l Inc.*, No. 04-cv-00781, 2007 WL
     2801494, at *4 (D. Colo. Sept. 24, 2007); *see also 27001 P'ships v. BT Sec. Corp.*, No. CV 2004-

26   7487, 2010 WL 5553364 (Ala. Cir. Ct. Feb. 8, 2010) (rejecting authorities allowing *American Pipe*
     tolling of claims against unnamed affiliates as based on inapposite Rule 15(c) standards).  In any

27   event, even claims as to Thomson SA could be tolled only from the filing of the original complaints
     until March 16, 2009, when both the IPPs and DPPs decided not to name Thomson SA as a

28   defendant in their consolidated amended class action complaints. *See Lindner Dividend Fund, Inc.*

─────────────────────────────────────────────

NOTICE OF MOTION AND MOTION TO DISMISS          11          No. 07-5944-SC; MDL No. 1917
SHARP'S  FIRST AMENDED COMPLAINT

Sharp also cannot rely on *American Pipe* to toll its expired state law claims because the DPP complaints only asserted claims under federal law.  (Dkt. No. 436 at ¶ 214.)  By contrast, Sharp asserts claims under the laws of four different states – California, New York, New Jersey, and Tennessee. (FAC at ¶¶ 257-302.)  *American Pipe* tolling does not apply to claims that are "different [from] or peripheral [to]" those claims asserted in the class action.  *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983).  "[O]nly the claims expressly alleged in a previous federal lawsuit are subject to tolling."  *In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d 703, 718-19 (N.D. Ohio 2010); *see also Williams v. Boeing Co.*, 517 F.3d 1120, 1135-36 (9th Cir. 2008) (holding that, since "neither the Original nor the First Amended Complaint stated a claim for compensation discrimination[,] . . . the statute of limitations was not tolled for that claim").  Moreover, *American Pipe* tolling would only apply to Sharp's state law claims if the states at issue specifically permit cross-jurisdictional tolling.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) ("[F]ederal courts have declined to import the doctrine into state law where it did not previously exist."); *In re Fosamax Prods. Liab. Litig.*, 694 F. Supp. 2d 253, 258 (S.D.N.Y. 2010) (same).  Sharp does not plead that any of those states whose laws it invokes recognize cross-jurisdictional tolling, which itself precludes the application of *American Pipe* tolling to its state law claims.  *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL Dkt. No. 4867 at 2-3 (dismissing claims as untimely where plaintiff failed to plead specific facts that entitled it to class action tolling).  In fact, cross-jurisdictional tolling has been explicitly rejected by courts interpreting California,[6] Tennessee,[7] and New York[8] law.  (*See* Defs.' Reply In Support of Mot. to Dismiss

---

*v. Ernst & Young*, 880 F. Supp. 49, 54 (D. Mass. 1995) (holding that a consolidated amended complaint supersedes any earlier complaint and no tolling is available against a defendant not named in that superseding complaint).

[6] *Clemens*, 534 F.3d at 1025 (holding that "the weight of authority and California's interest in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional tolling into California law"); *see also Vincent v. Money Store*, No. 11 Civ. 7685, 2013 WL 57794, at *14 (S.D.N.Y. Jan. 4, 2013) ("California has not adopted cross-jurisdictional *American Pipe* tolling and there is no basis to do so in this case."); *see also Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 935-36 (Cal. 1988) (declining to apply class action tolling under *American Pipe*).

[7] *Maestas v. Sofamor Danek Grp., Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000) ("[W]e decline to adopt the doctrine of cross-jurisdictional tolling in Tennessee.").

Certain DAPs' Claims [Dkt. No. 2231] at 5-10.) For these additional reasons, the limitation periods applicable to Sharp's state law claims were not tolled by the DPP class action, and Sharp's state law claims are untimely.

### 3.    Government Action Tolling Does Not Apply.

Finally, Sharp incorrectly alleges that the limitations periods have been tolled pursuant to 15 U.S.C. § 16 by "criminal proceedings and investigations against several Defendants and co-conspirators commencing on at least November 2007 through the present." (FAC at ¶ 230).  This statute states in relevant part that "[w]henever *any civil or criminal proceeding is instituted* by the United States to prevent, restrain, or punish violations of any of the antitrust laws, . . . the running of the statute of limitations in respect to every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter . . . ."  15 U.S.C. § 16(i) (emphasis added). The statute only applies once an indictment is filed − any pre-indictment investigation conducted by the DOJ does not toll the applicable statute of limitation.  *See Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 869-71 (9th Cir. 1978).

For the statute to apply, the private plaintiff must prove, by a "comparison of the two complaints on their face[s]," a significant overlap between the two actions – "that the matters complained of in the government suit bear a real relation to the private plaintiff's claim for relief." *Leh v. General Petroleum Group*, 382 U.S. 54, 59 (1965).  This represents a balance struck by Congress between two competing policy objectives: (1) the desire to facilitate antitrust enforcement by making evidence uncovered by government antitrust enforcement actions available to private antitrust litigants; and (2) "congressional emphasis on certainty and predictability in the application" of the tolling provision so as to avoid "undue prolongation of antitrust proceedings." *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 335 (1979) (citing S. Rep. No. 619, 84th Cong., 1st Sess., 6 (1955)).  Therefore, "care must be exercised to insure that reliance upon the

---

[8] *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 282 (S.D.N.Y. 2011) ("In the face of these overwhelming precedents, I cannot say that New York would adopt cross-jurisdictional tolling and decline to import the doctrine into New York's law.").

government proceeding is not a mere sham," or else the statute may be improperly invoked by a private plaintiff.  *Id*.  Consistent with these principles, courts have held that "limitations are not tolled when government and subsequent private suits arose in distinct markets."  *Novell, Inc. v. Microsoft Corp*., 505 F.3d 302, 320 (4th Cir. 2007) (quoting 2 Philip E. Areeda & Herbert Hovenkamp, Antitrust Law P 321a, at 241 (2d ed. 2000)) (internal quotations omitted); *see also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 481, 486 (C.D. Cal. 1991) (rejecting government action tolling because government and private actions related to different geographic markets); *Charley's Tour and Trans., Inc. v. Interisland Resorts, Ltd.*, 618 F. Supp. 84, 86 (D. Haw. 1985) (rejecting tolling because government and private actions involved different product markets and "different means of proof").

For example, in *Novell*, the plaintiff, Novell, the maker of the word processing software WordPerfect, alleged that Microsoft's anticompetitive conduct in the software market violated Sections 1 and 2 of the Sherman Act.  Like Sharp here, Novell did not bring its claims for more than eight years after they arose, thus its claims were time-barred unless the statute of limitations was tolled.  *Novell*, 505 F.3d at 320.  Novell argued that the statute of limitations had been tolled pursuant to 15 U.S.C. § 16(i) by a DOJ complaint filed against Microsoft that alleged its anticompetitive conduct in the software market violated the Sherman Act.  *Id*.

The Fourth Circuit rejected Novell's arguments and affirmed the trial court's dismissal of the claims as untimely.  It explained that, while the DOJ complaint was "peppered with references to other software markets" and alleged that Microsoft attempted to extend its PC-operating system monopoly to "*other related markets*," the DOJ complaint "only expressly alleges harm to the markets for PC operating systems and for internet browsers."  *Id*. at 321 (emphasis in original).  By contrast, Novell's claims were based on alleged anticompetitive conduct in a closely related, but distinct product market – the "office-productivity-applications" software market.  *Id*.  Further, the Fourth Circuit observed that "the Supreme Court has accepted tolling only where the private plaintiffs make claims in markets identical to, or completely encompassed by, those at issue in the earlier government suit.  Because the office-productivity market . . . is neither identical to nor completely encompassed by the PC operating system market at issue in the government action,

1    these cases are of little service to Novell." *Id*. at 321-22 (collecting cases).  Therefore, because the

2    statute "should not be construed to permit plaintiffs to sit on their rights and to assert, years after the

3    traditional statute of limitations has run, claims so much broader than those asserted by the

4    government," Novell's claims were dismissed as untimely on their face.  *Id.* (internal quotations

5    omitted).

6            Application of these principles here mandates finding that Sharp's allegations are inadequate

7    to toll the statutes of limitations under 15 U.S.C. § 16(i)  for its claims against Thomson Consumer.

8    First, Sharp does not allege that there was a "significant overlap" between its claims against

9    Thomson Consumer and the government indictments.  Instead, Sharp merely identifies four separate

10   indictments: (1) the February 10, 2009 indictment of a resident of Taiwan named Cheng Yuan Lin

11   ("Lin Indictment"); (2) the August 18, 2009 indictment of a resident of Taiwan named Wen Jun

12   Cheng ("Cheng Indictment"); (3) the March 30, 2010 indictment of a resident of Taiwan named

13   Cheng Cheng Yeh ("Yeh Indictment"); and (4) the November 9, 2010 indictment of residents of

14   South Korea named Seung-Kyu Lee, Yeong-UG Yang, and Jae-Sik Kim ("Lee *et al*. Indictment").

15   (*See* FAC at ¶¶ 136-137, 139-140;) *see also United States v. Cheng Yuan Lin*, No. 09-cr-00131

16   (N.D. Cal. Feb. 10, 2009) (attached as **Ex. A**); *United States v. Wen Jun Cheng*, No. 09-cr-00836

17   (N.D. Cal. Aug. 18, 2009) (attached as **Ex. B**); *United States v. Chung Cheng Yeh*, No. 10-cr-00231

18   (N.D. Cal. March 30, 2010) (attached as **Ex. C**); *United States v. Seung-Kyu Lee*, No. 10-cr-00817

19   (N.D. Cal. Nov. 9, 2010) (attached as **Ex. D**).  The Cheng, Yeh, and Lee *et al*. Indictments only

20   allege that these defendants participated in an anticompetitive conspiracy involving "CDTs . . . for

21   use in computer monitors and other products with similar technological requirements."  (*See* Ex. B

22   at ¶ 4, Ex. C. at ¶ 4, and Ex. D. at ¶ 6.)  They do not make *any* allegations regarding the separate

23   and distinct CPT market – the market for CRTs used in televisions.  (*See generally id*.)  By contrast,

24   in its Amended Complaint, Sharp alleges that Thomson Consumer manufactured CRTs for use in

25   color televisions.  (FAC at ¶ 72.)  Therefore, because the face of the Cheng, Yeh, and Lee *et al*.

26   Indictments establish that they relate to an entirely different product market than the one in which

27   Thomson Consumer is alleged to have participated, the filing of these indictments did not toll the

28

1    statutes of limitations for Sharp's claims against Thomson Consumer.  *Novell, Inc.*, 505 F.3d at 320-

2    22.

3            While the Lin Indictment does allege that the defendant conspired to fix the price of CPTs

4    used in televisions, it makes clear that all of Mr. Lin's alleged anticompetitive activities occurred in

5    Asia in his capacity as Chairman and CEO of Chunghwa, a company that manufactured CRTs in

6    Asia.  (*See* Ex. A, ¶¶ 15-16.)  The Lin Indictment alleges that he "attended meetings . . . in Taiwan,

7    Korea, Malaysia, China, Thailand, Indonesia, and elsewhere to discuss the prices of CPTs."  (*Id.* at

8    ¶ 15(a).)  By contrast, "Thomson Consumer was a major manufacturer of CRTs for the United

9    States market, with plants located in Scranton, Pennsylvania; Marion, Indiana; and Mexicali,

10   Mexico."  (FAC at ¶ 72.)  Sharp alleges that Thomson Consumer representatives participated in

11   anticompetitive meetings in the United States and Europe, but does not allege that anyone from

12   Thomson Consumer (1) ever had any contact with Mr. Lin or Chungwa or (2) participated in any

13   anticompetitive activities in Taiwan, Korea, Malaysia, China, Thailand, or Indonesia.

14           On its face, the Lin Indictment only makes allegations regarding anticompetitive conduct in

15   Asia, while Thomson Consumer is alleged to have participated in anticompetitive activities in the

16   U.S. and Europe and no specific facts are pleaded in either pleading that expressly connect the

17   activities of Mr. Lin and Chungwa to Thomson Consumer.  As such, Sharp fails to plead facts that

18   establish a significant overlap between the two actions based on a "[c]omparison of the two

19   complaints on their face[s]".  *Leh*, 382 U.S. at 59; *Novell, Inc.*, 505 F.3d at 320-22.  A substantial

20   relationship between the two actions may only be established by *assuming* that Mr. Lin participated

21   in a global conspiracy that also involved anticompetitive conduct in Europe and the United States,

22   even though no facts alleging the existence of a conspiracy outside of Asia are actually alleged in

23   the Lin Indictment.  Because 15 U.S.C. § 16(i) reflects a "congressional emphasis on certainty and

24   predictability in the application" of the tolling provision so as to avoid "undue prolongation of

25   antitrust proceedings,"  Supreme Court case law does not allow for the statute of limitations to be

26   tolled based on such a speculative application of 15 U.S.C. § 16(i).  *Greyhound Corp.*, 437 U.S. at

27   335.

28

Moreover, the purpose of government tolling – to "assist private litigants in utilizing any benefits they might cull from government antitrust actions" – has no application here. *Zenith Radio*, 401 U.S. at 336. Because he remains outside the United States, the government's case against Mr. Lin has not progressed, and no substantive entries have been made on the docket in the four and a half years since his indictment was filed. There is absolutely no reason to believe that Sharp has utilized or relied on the Lin Indictment in any way to prepare its claims. Instead, any alleged reliance on the Lin Indictment is a "mere sham" designed to allow it to indefinitely toll the statute of limitations for its inexcusably late claims. *See Greyhound Corp.*, 437 U.S. at 335. Because on the face of the complaints there is not substantial overlap between the Lin Indictment and Sharp's claims against Thomson Consumer and tolling the statute of limitations would not serve the purposes of 15 U.S.C. § 16(i), the statute does not toll the statute of limitations against Thomson Consumer.

Finally, Sharp's state law claims are not preserved by 15 U.S.C. § 16(i), which only tolls the statute of limitations as to rights of action "arising under" "the antitrust laws." Section 1 of the Clayton Act sets forth the exclusive list of "antitrust laws," *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 376 (1958), *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1031 n.4 (9th Cir. 2001) (same), and none of the state laws relied upon by Sharp are on that list. *See* 15 U.S.C. § 12. Accordingly, Sharp's state law claims are not tolled by virtue of 15 U.S.C. § 16(i). Those claims are therefore time-barred and should be dismissed with prejudice.

## III.     Sharp Fails to Plead Federal or State Claims.

In addition to being barred by laches and the applicable statutes of limitations, Sharp's federal and/or state claims fail for four other reasons: (1) Sharp lacks standing to bring its federal and certain state law claims under *Associated General Contractors* and *Illinois Brick;* (2) Sharp fails to state a claim under N.Y. Gen. Bus. Law § 349; and (3) Sharp's New York and New Jersey state law claims offend due process and do not satisfy constitutional standing requirements.

**A.      Sharp Lacks Antitrust Standing and Cannot Assert Claims Under Federal and California, New York, and New Jersey Antitrust Laws.**

Sharp's Sherman Act claims and California, New York, and New Jersey antitrust law claims should be dismissed because Sharp has failed to allege that it suffered any antitrust injury.   In *Associated General Contractors*, the Supreme Court articulated a balancing test to determine whether the plaintiff is the proper party to assert antitrust claims.   *Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 537-44 (1983);   *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1085 (N.D. Cal. 2007). Although the Supreme Court was interpreting the Sherman Act, the test set forth in *Associated General Contractors* has been adopted in California, New York, and New Jersey.   *See In re DRAM Antitrust Litig.*, 516 F. Supp. 2d at 1088-89 (California); *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 81 (2d Cir. 2013) (New York); *Van Natta Mech. Corp. v. Di Staulo*, 649 A.2d 399, 407 (N.J. Super. Ct. App. Div. 1994).   Under the *Associated General Contractors* test, a court must consider "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1996).   "The requirement that the alleged injury be related to anti-competitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors."   *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985); *see also Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Antitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained.   Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury.").

Here, the relevant market for the purposes of determining antitrust injury is the CRT market, not the CRT Products market.   Sharp has not suffered any antitrust injury by virtue of its purchases of CRT Products, which are not part of the "market where competition is being restrained."[9]   *See*

---

[9] Moreover, none of the other *AGC* factors support a finding of antitrust standing.   The injury that Sharp allegedly suffered stems from charges that were allegedly passed onto it by the parties who actually were participants in the CRT market.   (*See, e.g.*, FAC at ¶¶ 256, 250, 265, 270, 279 ("Plaintiffs have been injured in their business and property in that they have paid more for CRT

*Am. Ad Mgmt.*, 190 F.3d at 1057.  Therefore, to the extent its claims are based on its purchases of CRT Products, Sharp has not suffered injury of the type the antitrust laws were intended to forestall, and it does not have antitrust standing to bring such claims.  *Am. Ad Mgmt.*, 190 F.3d at 1057.  Indeed, Sharp itself has made this exact same argument in another antitrust action where it is a defendant.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827, MDL Dkt. No. 484 at 1 ("The Direct Plaintiffs that purchased finished products fail to meet their burden of pleading antitrust standing [under Associated General Contractors] because they do not allege participation in the only market that is alleged to have been restrained, namely the market for TFT-LCD panels."; *see also id.*, Dkt. No. 536 at 17-19 (arguing that incorporation of allegedly price-fixed TFT-LCD panels into LCD televisions and monitors did not mean that purchasers of those products participated in the allegedly restrained market).  Because it lacks antitrust standing, Sharp's claims based on its purchases of CRT products should be dismissed with prejudice.

The Court should also dismiss Sharp's claims under the Sherman Act and New Jersey law to the extent it is an indirect purchaser of CRTs because the Amended Complaint does not plead facts showing that Sharp falls within any recognized exception to *Illinois Brick*.  As in the other complaints before this Court, the FAC alleges a conspiracy with respect to CRTs, not CRT products.  (*E.g.*, FAC at ¶¶ 1-2, 4-7, 224-227 (alleging a conspiracy to "coordinate and fix the price of CRTs").)  The FAC, however, alleges that Sharp purchased both CRTs (*e.g.*, *id.* at ¶¶ 27-29, 31) and CRT products (*e.g.*, *id.* at ¶¶ 30) from defendants, both directly and indirectly (*e.g.*, *id.* at ¶ 303).  As this Court has already ruled, under *Illinois Brick*, a plaintiff can only recover for direct purchases of CRTs and indirect purchases of CRTs or direct purchases of CRT products "from an

---

Products. . . .").)  As a consequence, its injury is indirect and its harm speculative.  Furthermore, allowing it to assert claims regarding CRT Products would create a significant risk of duplicative recovery and complexity in apportioning damages.  As Sharp is undoubtedly aware, the CRT is but one of several components used in the manufacture of CRT Products, and the cost of the components is but one of several costs associated with getting CRT Products into the hands of end users.  All of these charges will vary across manufacturers of CRT Products.  Therefore, the amount of any overcharge that was allegedly paid by Sharp will be largely speculative and nearly impossible to apportion.  Furthermore, this is not a case where there are no direct purchasers of CRTs who can assert antitrust claims.  After all, Sharp itself allegedly purchased CRTs from defendants.  Duplicative recovery might therefore occur if the Court allows Sharp's CRT Products claims to proceed.

entity owned or controlled by any allegedly conspiring defendant."  MDL Dkt. No. 1470 at 16 (citing *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 325-26 (9th Cir. 1980)). Therefore, to the extent Sharp asserts claims under the Sherman Act outside these categories, those claims are barred.  *See* MDL Dkt. No. 1470 at 2, 16.  For the same reasons, these claims would be barred under the New Jersey Antitrust Act, which is interpreted consistently with federal precedent and does not permit suits by indirect purchasers.[10]  *See Sickles v. Cabot Corp.*, 877 A.2d 267, 274-75 (N.J. Super. App. Div. 2005) ("[I]t is clear New Jersey courts are directed to follow the *Illinois Brick* holding."); *see also*  N.J. STAT. ANN. § 56:9-18 ("This act shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes . . . .").

The Amended Complaint should be dismissed because Sharp fails to plead facts establishing that Sharp's alleged purchases fall within the "ownership and control" exception to *Illinois Brick*. *See, e.g.*, *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1068 n.5 (E.D. Cal. 2011); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143, 2011 WL 3894376, at *6 (N.D. Cal. Aug. 3, 2011); *see also In re Ditropan XP Antitrust Litig.*, 529 F. Supp. 2d 1098, 1101 n.2 (N.D. Cal. 2007).  Sharp has not done so.  Although Sharp claims to have purchased CRTs and CRT Products from defendants, it provides only the vaguest allegations concerning its purchases. (*See, e.g.*, FAC at ¶ 11 ("Plaintiffs purchased CRT products . . . directly and indirectly from Defendants and their co-conspirators, and/or Defendants' and their co-conspirators' subsidiaries and affiliates controlled . . . .").)  In fact, Sharp does not identify even one defendant from whom it allegedly purchased CRTs and CRT Products.  Sharp must do more than plead these types of generalities and conclusions.  *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008) (affirming dismissal of complaint alleging co-conspirator exception applied where plaintiff failed to plead "evidentiary facts . . . to support such conclusion").  As the Court ruled in its September 26, 2013 Order dismissing Sharp's original Complaint, "[s]o many years after this MDL's inception, Plaintiffs should be able to provide something more than boilerplate allegations."  (Sept. 26, 2013

---

[10] These claims would likewise be barred under New York law to the extent they relate to purchases made prior to the passage of New York's *Illinois Brick* repealer statute.  MDL Dkt. No. 665 at 23-24 (dismissing claims related to indirect purchases pre-dating the enactment of applicable *Illinois Brick* repealer statutes); *see also* 1998 Sess. Law News of N.Y. Ch. 653 (amending Donnelly Act).

Order at 5, [Dkt. No. 1960].)  Similarly, years after these actions began, Sharp should be required to plead specific facts that allow the Court to plausibly infer its purchases qualify for the ownership and control exception.  Despite the fact that evidence regarding this topic, if it exists, would be exclusively within its control, Sharp has failed to plead any such facts.  Accordingly, Sharp's indirect purchaser claims should be dismissed with prejudice.

**B.     Sharp Has Failed to Plead Facts That State a Plausible N.Y. Gen. Bus. Law § 349 Claim Against Thomson Consumer.**

To state a claim for violation of  N.Y. GEN. BUS. LAW § 349, a plaintiff must allege "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  *New York Jets LLC v. Cablevision Sys. Corp.*, No. 05 Civ. 2875, 2005 WL 2649330 *11 (S.D.N.Y. Oct. 17, 2005).  Sharp has alleged only that unspecified defendants "[coordinated] public statements" (FAC at ¶ 152) and that representatives of LG Electronics issued press releases that gave false and misleading justifications for price increases (*id.* at ¶¶ 245-46).  Sharp does not plead facts that plausibly suggest that any representative of Thomson Consumer made any false or misleading public statement.  Furthermore, Sharp's conclusory allegation that the alleged conspiracy "was inherently self-concealing" is insufficient and does not show deceptive conduct by Thomson Consumer.  *See In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 554 (E.D. Pa. 2007) (dismissing claims under § 349 based on a price-fixing conspiracy, holding that "anticompetitive conduct alone does not constitute deceptive conduct under § 349 . . . to come within the scope of the statute, the Complaint must allege some additional deception or misrepresentation").  Sharp has failed to plead specific facts that could state a claim against Thomson Consumer for violation of  N.Y. GEN. BUS. LAW § 349.  Therefore, Sharp's fifth claim against Thomson Consumer should be dismissed with prejudice.

**C.     Sharp's New York and New Jersey Antitrust and Unfair Competition Law Claims Offend Due Process and Constitutional Standing Requirements.**

The Court should also dismiss Sharp's claims under New York and New Jersey law because Sharp does not allege that it purchased any CRTs or CRT products in either of those states.  This Court cannot apply the law of another state where its application would be inconsistent with the

1   Due Process Clause.  *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981) ("[F]or a State's

2   substantive law to be selected in a constitutionally permissible manner, that State must have a

3   significant contact or significant aggregation of contacts, creating state interests, such that choice of

4   its law is neither arbitrary nor fundamentally unfair."); *see also Phillips Petroleum Co. v. Shutts*,

5   472 U.S. 797, 821-22 (1985) (same).  "[T]he requirements of the Due Process Clause must be

6   satisfied individually with respect to each defendant in a case."  *AT&T Mobility LLC v. AU*

7   *Optronics Corp.*, 707 F.3d 1106, 1113 n.15 (9th Cir. 2013).  In price-fixing cases, courts should

8   consider "all of the Defendants' conduct within [the state] leading to the sale of price-fixed goods

9   outside the state when determining whether [that state's] law could be applied without offending

10  Defendants' due process rights."  *Id.* at 1112.

11          Sharp ignores this fundamental constitutional limitation.  Although Sharp purports to assert

12  price-fixing allegations under the laws of New York and New Jersey, it does not allege that it

13  purchased CRTs or CRT products in either state.  (*Compare* FAC at ¶¶ 258, 268, 299 (alleging

14  Sharp purchased CRTs and CRT products in California and Tennessee) *with id.* at ¶¶ 277, 291

15  (alleging only that Sharp "conducted a substantial volume of business" in New York and New

16  Jersey, "warehoused" CRT products in New York and "oversaw . . . CRT procurement activities" in

17  New Jersey).)  Nor does Sharp allege that any of the alleged conspiratorial acts occurred in New

18  York or New Jersey.  Moreover, Sharp does not allege that Thomson Consumer took any acts

19  directed at or connected with New York or New Jersey.  Simply stated, the FAC does not establish

20  "a significant aggregation of contacts" with New York and New Jersey and therefore, in accordance

21  with the Due Process Clause, Sharp's New York and New Jersey state law claims against Thomson

22  Consumer must be dismissed.  *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-

23  1827, 2013 WL 1164897, at *4 (N.D. Cal. Mar. 20, 2013) (applying *AT&T Mobility* standard and

24  dismissing Cartwright Act cause of action where plaintiff failed to "allege conspiratorial conduct of

25  each Defendant in California"); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-

26  1827, 2010 WL 2609434 (N.D. Cal. June 28, 2010), at *2-3 (dismissing antitrust claims where

1    plaintiff failed to plead "significant contacts"); *In re GPU Antitrust Litig.*, 527 F. Supp. 2d 1011,

2    1028 (N.D. Cal. 2007) (same).[11]

3                                    **CONCLUSION**

4          For the foregoing reasons, Sharp has failed to state viable claims against Thomson

5    Consumer and its Amended Complaint should be dismissed with prejudice.

6

7

8

9

10

11

12

13

14

15

16   [11] For similar reasons, Sharp's New York and New Jersey claims should be dismissed as a matter of
     prudential constitutional standing.  *See Valley Forge Christian Coll. v. Ams. United for Separation*
17   *of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982) (requiring plaintiffs' claims fall within the
     "zone of interests to be protected or regulated by the statute . . . in question"); *see also In re*
18   *Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1370-71 (S.D. Fla. 2001)
     (dismissing various state antitrust claims where plaintiff failed to allege injury within the state).
19   The New York and New Jersey antitrust and unfair competition statutes are intended to address
     injuries that occur *within the state*.  *See, e.g.*, N.Y. GEN. BUS. LAW § 340 ("Every contract,
20   agreement, arrangement or combination whereby . . . [c]ompetition or the free exercise of any
     activity in the conduct of any business, *trade or commerce* or in the furnishing of any service *in this*
21   *state* is or may be restrained . . . is hereby declared to be against public policy, illegal and void.")
     (emphases added); N.Y. GEN. BUS. LAW § 349 ("Deceptive acts or practices in the conduct of any
22   *business, trade or commerce* or in the furnishing of any service *in this state* are hereby declared
23   unlawful.") (emphases added); N.J. STAT. ANN. § 56:9-3 ("Every contract, combination in the form
     of trust or otherwise, or conspiracy *in restraint of trade or commerce, in this State*, shall be
24   unlawful.") (emphases added).  However, Sharp has not suffered any antitrust injury in New York
     or New Jersey because it did not purchase any CRTs or CRT products in those states.  *See, e.g.*, *In*
25   *re GPU Antitrust Litig.*, 527 F. Supp. 2d at 1028; *see also Pecover v. Elec. Arts Inc.*, 633 F. Supp.
     2d 976, 984 (N.D. Cal. 2009); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d at
26   1370-71.  Moreover, it would not independently advance any remedial or deterrent purposes of the
     New York and New Jersey statutes by allowing Sharp to recover for its out-of-state purchases since
27   Sharp already has a cause of action for those purchases.

28

1

Dated:  November 25, 2013

2

Respectfully submitted,

3

*/s/ Kathy L. Osborn*
Kathy L. Osborn (*pro hac vice*)

4

Ryan M. Hurley (pro hac vice)
Faegre Baker Daniels LLP

5

300 N. Meridian Street, Suite 2700

6

Indianapolis, IN  46204
Telephone: +1-317-237-0300

7

Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com

8

ryan.hurley@FaegreBD.com

9

Jeffrey S. Roberts (*pro hac vice*)

10

Faegre Baker Daniels LLP
3200 Wells Fargo Center

11

1700 Lincoln Street

12

Denver, CO  80203
Telephone: +1-303-607-3500

13

Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

14

Calvin L. Litsey (SBN 289659)

15

Faegre Baker Daniels LLP
1950 University Avenue, Suite 450

16

East Palo Alto, CA  94303-2279

17

Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701

18

calvin.litsey@FaegreBD.com

19

**Attorneys for Defendant, Thomson Consumer Electronics, Inc.**

20

21

22

23

24

25

26

27

28