William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131
Email:  wisaacson@bsfllp.com

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665
Email: piovieno@bsfllp.com
Email: anardacci@bsfllp.com

*Counsel for Schultze Agency Services, LLC, on
behalf of Tweeter Opco, LLC and Tweeter Newco,
LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION**<br><br>This document relates to:<br><br>*Schultze Agency Services, LLC, on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC v. Hitachi, Ltd., et al.*, No. 12-cv-02649-SC | Master File No. 07-5944 SC<br><br>MDL No. 1917<br><br>**SCHULTZE AGENCY SERVICES, LLC'S (TWEETER'S) OPPOSITION TO THE TOSHIBA DEFENDANTS' MOTION TO DISMISS TWEETER'S FIRST AMENDED COMPLAINT**<br><br>**Judge:  Hon. Samuel P. Conti**<br>**Court:  Courtroom 1, 17th Floor**<br>**Date:   December 20, 2013**<br>**Time:   10:00 a.m.** |

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS' MOTION TO DISMISS
TWEETER'SFIRST AMENDED COMPLAINT

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

1

2

## <u>TABLE OF CONTENTS</u>

3     Introduction .................................................................................................................. 1

4     Factual and Procedural Background ............................................................................ 3

5     Standard of Review ...................................................................................................... 5

6     Argument ...................................................................................................................... 5

7     I.       Toshiba's Successive Motion to Dismiss is Precluded by the Federal Rules .................... 5

8     II.      Tweeter Has Standing Under the Ownership or Control Exception to *Illinois Brick* ......... 6

9              A.  This Court Has Already Ruled That Tweeter Has Standing Under the
                      Ownership or Control Exception ........................................................................ 6
10

11             B.  Tweeter's Allegations Are Sufficient to Support Standing Under the
                      Ownership or Control Exception ........................................................................ 7
12

13             C.  If the Court Grants Toshiba's Motion, Tweeter Should Be Given Leave
                      to Amend ............................................................................................................ 12

14    III.     Tweeter Has Stated Claims Under Massachusetts Law ........................................... 12

15             A.  Tweeter Has Standing to Pursue its Massachusetts Claims ............................... 13

16             B.  Tweeter Has Satisfied the Demand Requirement Under Massachusetts Law ...... 17

17    Conclusion .................................................................................................................. 19

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 5

*Barker v. Riverside Cnty. Office of Educ.*,
    584 F.3d 821 (9th Cir. 2009) .................................................................................. 5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 5

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) .................................................................................. 5

*Bridas S.A.P.I.C. v. Gov't of Turkm.*,
    345 F.3d 347 (5th Cir. 2003) ................................................................................ 17

*Burns ex rel. Office of Public Guardian v. Hale & Dorr LLP*,
    445 F. Supp. 2d 94 (D. Mass. 2006) ..................................................................... 18

*Butler v. Deutsche Bank Trust Co. Americas*,
    2012 WL 3518560 (D. Mass. Aug. 14, 2012) ...................................................... 17

*Ciardi v. F.Hoffmann-La Roche, Ltd.*,
    436 Mass. 53 (2002) .................................................................................. 13, 15, 16

*City of Moundridge v. Exxon Mobil Corp.*,
    471 F. Supp. 2d 20 (D.D.C. 2007) ......................................................................... 9

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ............................................................................................. 5, 7

*F.T.C. v. Wellness Support Network, Inc.*,
    No. C-10-04879 JCS, 2011 WL 4026867  (N.D. Cal. Sept 12, 2011) ..................... 6

*FRA S. p. A. v. Surg-O-Flex of Am., Inc.*,
    415 F. Supp. 421 (S.D.N.Y. 1976) ......................................................................... 6

*Harmon v. Gordon*,
    712 F.3d 1044 (7th Cir. 2013) .............................................................................. 17

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) .................................................................................................. 1

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    911 F. Supp. 2d 857 (N.D. Cal. 2012) .................................................................... 1

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    MDL No. 1917, C-07-5944, 2013 WL 4505701 (N.D. Cal. Aug. 21, 2013) ....................... 1, 3

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    738 F. Supp. 2d. 1011 (N.D. Cal. 2010) .............................................................. 5, 7

*In re G-Fees Antitrust Litig.*,
    584 F. Supp. 2d 26 (D.D.C. 2008) ......................................................................... 9

*In re Mercedes-Benz Antitrust Litig.*,
    157 F. Supp. 2d 355 (D.N.J. 2001) ......................................................................... 9

*In re Mitchell*,
    476 B.R. 33 (Bankr. D. Mass. 2012) .................................................................... 17

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS'MOTION TO DISMISS TWEETER'S
FIRST AMENDED COMPLAINT

ii

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

*In re Mushroom Direct Purchaser Antitrust Litig.*,
No. 06-cv-0620, 2008 WL 583906 (E.D. Pa. Mar. 3, 2008)......................................... 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
820 F.Supp.2d 1055 (N.D. Cal. 2011) ......................................................................... 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
MDL No. 1827, 2012 WL 5869588 (N.D. Cal. Nov. 19, 2012)..................................... 11

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Best Buy)*,
No. 07-1827, 2013 WL 254873 (N.D. Cal. Jan. 23, 2013)........................................ 2, 8, 9

*In re: TFT-LCD (Flat Panel) Antitrust Litig. (Proview)*,
No. 07-1827, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013).......................................... 10

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*,
No. 07-1827, 2012 WL 5949585 (N.D. Cal. Nov. 28, 2012) .................................. 2, 8, 9, 11

*Kanamaru v. Holyoke Mut. Ins. Co.*,
72 Mass. App. Ct. 396 (2008) ...................................................................................... 18

*Long v. Teachers' Ret. Sys. of Illinois*,
585 F.3d 344 (7th Cir. 2009).......................................................................................... 17

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000)........................................................................................ 12

*McKensi v. Bank of Am., N.A.*,
No. 09-cv-11940, 2010 WL 3781841 (D. Mass. Sept. 22, 2010) .................................. 18

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
281 F.3d 629 (7th Cir. 2002)......................................................................................... 11

*Parker v. Franklin Cnty. Cmty. Sch. Corp.*,
667 F.3d 910 (7th Cir. 2012).......................................................................................... 17

*Powell v. Ocwen Loan Servicing, LLC*,
No. 2010-2069-D, 2012 WL 345665 (Mass. Super. Ct. Jan. 4, 2012)........................... 17

*Prince Heaton Enters. v Buffalo's Franchise Concepts, Inc.*,
117 F. Supp. 2d 1357 (N.D. Ga. 2000) ........................................................................ 9

*Reisman v. KPMG Peat Marwick LLP*,
965 F. Supp. 165 (D. Mass. 1997) ..................................................................... 13, 14, 15

*Rescuecom Corp. v. Google, Inc.*,
562 F.3d 123 (2d Cir. 2009)............................................................................................ 5

*Royal Printing Co.v. Kimberly Clark Corp.*,
621 F.2d 323 (9th Cir. 1980).......................................................................................... 11

*Slaney v. Westwood Auto, Inc.*,
366 Mass. 688 (Mass. 1975) .......................................................................................... 15

*Tex. Indus. Inc. v. Radcliff Materials, Inc.*,
451 U.S. 630 (1981) ....................................................................................................... 11

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
561 F.3d 1004 (9th Cir. 2009).......................................................................................... 5

*Williams v. Perrault*,
82 Mass. App. Ct. 1117, 976 N.E.2d 214  (2012)........................................................... 17

**STATUTES**

Mass. G.L. c. 4, § 7(23)..................................................................................................... 13

Mass. G.L. c. 93A ..................................................................................................... passim

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS'MOTION TO DISMISS TWEETER'S
FIRST AMENDED COMPLAINT
iii
Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

**<u>RULES</u>**

Fed. R. Civ. P. 8 ........................................................................................................... 5, 7, 8, 11

Fed. R. Civ. P. 12 ................................................................................................................ 5, 6

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS'MOTION TO DISMISS TWEETER'S
FIRST AMENDED COMPLAINT

iv

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

Schultze Agency Services, LLC, on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC ("Tweeter" or "Plaintiff") respectfully submits this Memorandum of Law in opposition to the Motion to Dismiss Tweeter's First Amended Complaint [Dkt. No. 2108] (the "Motion") submitted by Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Consumer Products, LLC, Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc. ("Toshiba" or "Toshiba Defendants") and joined by Defendants Koninklijke Philips N.V. and Philips Electronics North America Corporation ("Philips" or "the Philips Defendants") (together with Toshiba, "Defendants") [Dkt. No. 2187] (the "Philips Joinder").

**INTRODUCTION**

Toshiba has ignored this Court's ruling on Defendants' previous joint motion to dismiss Tweeter's claims, and now brings *another* motion to dismiss against Tweeter. Toshiba's current motion merely rehashes arguments made in Defendants' previous motion or makes arguments that could have—and should have—been made in that motion. This current motion is not only procedurally improper; substantively, it is completely without merit.

This Court has ruled that Tweeter, along with other direct action plaintiffs ("DAPs"), has standing to proceed with its federal claims under the "ownership or control" exception to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, C-07-5944, 2013 WL 4505701 (N.D. Cal. Aug. 21, 2013) [Dkt. No. 1856] ("DAP MTD Order") (denying Defendants' Joint Motion to Dismiss DAP Complaints under *Illinois Brick*); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857 (N.D. Cal. 2012) [Dkt. No. 1470] ("Summary Judgment Order") (holding that Plaintiffs that purchased finished CRT Products from companies in an ownership or control relationship with Defendants and co-conspirators have standing under *Illinois Brick*).

Despite this clear ruling, Toshiba (notably joined by just one other Defendant, Philips) again challenges Tweeter's standing under the ownership or control exception. Toshiba tellingly does not challenge the standing of any other DAP that was subject to the Court's DAP MTD Order and has answered those DAP complaints, despite the fact that the standing allegations of

each of those DAPs are indistinguishable from Tweeter's standing allegations.  Toshiba's new argument is that Tweeter has not pled with sufficient specificity the identity of its CRT Product suppliers and their ownership or control relationships with Defendants and co-conspirators.  Motion at 7.  It is well-established, however, that such specificity is not required by Rule 8, as Judge Illston has twice ruled when Toshiba made this very same argument in the *TFT-LCD Antitrust Litigation*.  *In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*, No. 07-1827, 2012 WL 5949585, at *3 (N.D. Cal. Nov. 28, 2012) (rejecting Toshiba's argument that plaintiffs were required at the pleading stage to "identify with specificity who [they] purchased finished LCD products from"); *In re TFT-LCD (Flat Panel) Antitrust Litig. (Best Buy)*, No. 07-1827, 2013 WL 254873, at *3-4 (N.D. Cal. Jan. 23, 2013) ("Toshiba acknowledges that this Court has previously determined that a plaintiff is not required to plead that a conspiring seller owns or controls a direct purchaser to qualify for the ownership or control exception").  Other courts throughout the country have also routinely rejected this argument.  Toshiba cannot credibly argue that it does not have notice of Tweeter's claim, after six years in this MDL with access to voluminous discovery, including Defendants' own records, which specifically detail the sales Defendants made to Tweeter.

Defendants further move to dismiss Tweeter's indirect-purchaser claims, which are asserted under Chapter 93A of Massachusetts law.  Toshiba asserts for the first time that Tweeter lacks standing to sue under Section 9 of that chapter because Tweeter instead has standing to sue under Section 11, and Toshiba argues that Section 9 and Section 11 are mutually exclusive.  Yet, at the same time, Toshiba argues that Tweeter lacks standing to sue under Section 11 because indirect-purchaser claims are permitted only under Section 9.  Toshiba's incoherent argument is foreclosed by the unambiguous statutory text and the governing case law.  Tweeter's claims under Massachusetts law should therefore be sustained.

Philips also moves to dismiss Tweeter's Massachusetts claims—in an argument Toshiba declines to join—on the basis that Tweeter failed to comply with the demand requirement of Chapter 93A.  The *only* Massachusetts cases that have ever addressed Philips' argument—cases

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS'MOTION TO DISMISS TWEETER'S
FIRST AMENDED COMPLAINT

- 2 -

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

1   that Philips fails to bring to the Court's attention—have specifically rejected Philips' position.

2   This settled law must be followed, and Philips' argument must be rejected.

3        For all of these reasons, the motion to dismiss should be denied.

4   ## FACTUAL AND PROCEDURAL BACKGROUND

5        Tweeter filed its original Complaint on November 14, 2011, bringing claims under both

6   the Sherman Act and the Massachusetts Consumer Protection Act ("MCPA").  *See* No. 12-cv-

7   02649 (N.D. Cal.), Dkt. No. 1.  Defendants moved to dismiss ten DAPs' federal and state claims,

8   including Tweeter's federal and state claims, on August 17, 2012.[1]  Defendants' Joint Motion to

9   Dismiss Certain Direct Action Plaintiffs' Claims (Aug. 17, 2012) [Dkt. 1317] ("Joint Motion to

10  Dismiss").  Following extensive briefing on numerous and wide ranging grounds, the Court,

11  *inter alia*, denied Defendants' motion to dismiss the DAPs' federal claims, including Tweeter's

12  federal claim, and dismissed Tweeter's Massachusetts claim with leave to replead.  *See* DAP

13  MTD Order, 2013 WL 4505701.

14       In its Order, the Court held that the DAPs could proceed with their federal claims under

15  the ownership or control exception to *Illinois Brick*.  *Id*. at *3 ("Defendants' motion is . . . denied

16  to the extent that it challenges the DAPs' right to proceed under the ownership or control

17  exception.").[2]  With respect to Tweeter's Massachusetts claim, the Court found that Tweeter had

18  not pled in its complaint that it had served a written demand for relief on Defendants, which

19  demand is required by the MCPA, and thus found that Tweeter "should have leave to amend [its]

20  Massachusetts claim[] to show that [it] followed the law."  *Id*. at *12.

21       Tweeter subsequently informed Toshiba that it intended to replead its Massachusetts

22  claim and counsel negotiated a stipulation regarding the schedule for answering or moving to

23  dismiss Tweeter's Amended Complaint.  *See* Stipulation and Order Enlarging Tweeter's Time to

24

---

25  [1] Defendants also filed a motion for judgment on the pleadings against DAP Electrograph.

26  [2] In so doing, the Court affirmed its prior order denying Defendants' Joint Motion for Summary Judgment against the DPPs on the ownership or control exception.  In that order, the Court

27  specifically "conclude[d] that the ownership-and-control exception of *Royal Printing* does apply" and that "the Named DPPs have standing to sue for alleged overcharges passed on to

28  them when they purchased [a Finished Product] containing an allegedly price-fixed CRT from an entity allegedly owned or controlled by any allegedly conspiring Defendant."  Summary Judgment Order at 23.

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS' MOTION TO DISMISS TWEETER'S          - 3 -
FIRST AMENDED COMPLAINT

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

File Amended Complaints, and Setting Schedule for Defendants to Answer or Otherwise Respond to Certain Direct Action Plaintiff Complaints   [Dkt. No. 1947]   (Sept. 20, 2013) ("Stipulation").   This Stipulation provided that Tweeter "intends to amend its Massachusetts claim and the undersigned Defendants have agreed to Tweeter's request for an additional fourteen (14) days to file its amended complaint." *Id*. at 1.

Pursuant to this stipulation, Tweeter filed its First Amended Complaint ("Tweeter FAC") on October 4, 2013.   In its FAC, Tweeter amended its Massachusetts claim to include detailed allegations concerning the written demands for relief Tweeter has made on the defendants. *See* Tweeter FAC at ¶ 249 [Dkt. No. 1980] (stating that "prior to filing its complaint, Plaintiff sent a written demand for relief for violations of Massachusetts Gen. Laws ch. 93A §§ 2, *et seq*. to all Defendants").

Tweeter did not in any way amend its federal claim in the FAC.   Given that the Court had denied Defendants' motion to dismiss that claim in its DAP MTD Order, Tweeter did not seek to amend it, nor did the Court grant leave to amend it, as there was no need to do so.   As in its original Complaint, Tweeter alleges in its FAC that, during the Relevant Period, it "purchased CRT Products directly from the Defendants, and/or the Defendants' subsidiaries and affiliates and/or any agents the Defendants or Defendants' subsidiaries and affiliates controlled."   Tweeter FAC at ¶ 21. *See also id*. at ¶ 9; and *compare* Tweeter Compl. at ¶¶ 9, 21 (identical allegations). These allegations put all Defendants, including Toshiba, on notice that Tweeter is pursuing claims under the ownership or control exception to *Illinois Brick*.

Notwithstanding the foregoing, on November 4, 2013, Toshiba inexplicably moved to dismiss not only Tweeter's Massachusetts claim, but also moved to dismiss, now for a second time, Tweeter's federal claim.   Moreover, Toshiba relies on entirely new grounds to support its motion to dismiss Tweeter's Massachusetts claim, which are wholly unrelated to whether Tweeter has adequately pled that it served written demands for relief.   Indeed, nothing about Toshiba's motion to dismiss Tweeter's FAC flows from the Court's DAP MTD Order or the amendments that Tweeter made to its Complaint pursuant to that Order (nor was it contemplated by the parties' stipulation).   Instead, Toshiba has ignored the Court's Order and seeks to dismiss

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS' MOTION TO DISMISS TWEETER'S
FIRST AMENDED COMPLAINT

- 4 -

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

Tweeter's FAC on grounds that either were raised or could have been raised—and should have been raised—in the Defendants' Joint Motion to Dismiss that was denied months ago.

### STANDARD OF REVIEW

"To successfully state a claim under §1 of the Sherman Act, a plaintiff need only meet the notice pleading standard articulated in Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 561 F.3d 1004, 1009 (9th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, as this Court has recognized, "[s]pecific facts are not necessary . . . ." *In re CRT Antitrust Litig.,* 738 F. Supp. 2d 1011, 1017 (N.D. Cal. 2010) [Dkt. No. 665] ("Class MTD Order") (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotation omitted)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (Rule 8 does not require detailed factual allegations). Under *Twombly's* construction of Rule 8, a plaintiff merely has to "nudge[] [its] claims…'across the line from conceivable to plausible.'" *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570).

Subject to the requirement that the complaint show a "plausible" claim for relief, the court must accept as true all material factual allegations in the complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally. *See Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009); *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

### ARGUMENT

### I.   TOSHIBA'S SUCCESSIVE MOTION TO DISMISS IS PRECLUDED BY THE FEDERAL RULES.

It is hornbook law that successive motions to dismiss are improper under the Federal Rules. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1385 (3d ed.); Fed. R. Civ. P. 12(g)(2). Yet, as described in detail above, Toshiba's current motion to dismiss is exactly such a successive motion—it seeks only to rehash arguments that it already

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS'MOTION TO DISMISS TWEETER'S
FIRST AMENDED COMPLAINT
- 5 -
Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

made (and lost) in Defendants' Joint Motion to Dismiss or which it should have made in that motion but chose not to do so.  Specifically, despite the fact that Tweeter has not amended its standing allegations, and that this Court has already denied Defendants' initial motion to dismiss arguing that Tweeter does not have standing to pursue its federal claims, Toshiba now moves for a second time to dismiss Tweeter's federal claim on standing grounds.  In addition, Toshiba moves to dismiss Tweeter's Massachusetts claim on grounds that it could have raised, but did not, in the Joint Motion to Dismiss.

In short, Toshiba's attempt at a second bite at the apple with respect to both Tweeter's federal claim and its Massachusetts claim is an unwarranted violation of the Federal Rules, which forbid multiple motions to dismiss on the same grounds, and Toshiba's motion should be denied on that basis alone.  *F.T.C. v. Wellness Support Network, Inc.*, No. C-10-04879 JCS, 2011 WL 4026867 at * 3 (N.D. Cal. Sept 12, 2011) (refusing to consider a motion to dismiss an amended complaint pursuant to Rule 12(b)(6) when "all of Defendants' arguments are addressed to allegations and claims that were included in the original complaint and therefore could have been raised in Defendants' previous motion to dismiss" and relief based on a motion for judgment on the pleadings was not otherwise available); *see also FRA S. p. A. v. Surg-O-Flex of Am., Inc.*, 415 F. Supp. 421, 428 (S.D.N.Y. 1976) (refusing to consider a successive motion to dismiss when the "grounds raised in defendants' motion under Rule 12(b) are ones that were available to them earlier and could have been raised at the time they submitted" an earlier motion to dismiss).

## II.   **TWEETER HAS STANDING UNDER THE OWNERSHIP OR CONTROL EXCEPTION TO *ILLINOIS BRICK*.**

### A.   *This Court Has Already Ruled That Tweeter Has Standing Under the Ownership Or Control Exception.*

As an initial matter, this Court has already ruled that finished product purchasers, including Tweeter, have standing to proceed with their federal claims under the ownership or control exception to *Illinois Brick*.  Indeed, in this case the Court has twice rejected Defendants' arguments to the contrary.  DAP MTD Order at 5 (denying Defendants' Joint Motion to Dismiss

based upon standing "to the extent that [the MTD] challenges the DAPs' right to proceed under the ownership or control exception"); Summary Judgment Order at 16 ("The named DPPs are indirect purchasers, but, under *Royal Printing*, they have standing to sue insofar as they purchased [finished products] incorporating the allegedly price-fixed CRTs from an entity owned or controlled by any allegedly conspiring defendant.").

Toshiba seeks to use Tweeter's Amended Complaint as a vehicle to relitigate issues it has already lost on multiple occasions.  Indeed, Toshiba's current motion does not relate to the new allegations contained in Tweeter's FAC in any way, and seeks dismissal on the same grounds that this Court has already denied on multiple prior occasions.   It is telling that Toshiba chose not to make this argument against any of the other DAPs that were the subject of Defendants' prior motion to dismiss on standing grounds, despite the fact that the factual allegations in their complaints relating to ownership or control are indistinguishable from the factual allegations in the Tweeter complaint.[3]  Toshiba now argues that Tweeter has not pled its ownership or control allegations with sufficient specificity.  As described in detail below, this argument flies in the face of Rule 8 and rulings by courts throughout the country, most notably by Judge Illston in the *TFT-LCD Antitrust Litigation* on motions by Toshiba raising this very same issue.  Likely for this very reason, only one other Defendant, Philips, has joined in Toshiba's current motion.

### B. Tweeter's Allegations Are Sufficient to Support Standing Under the Ownership or Control Exception.

Toshiba's motion should be denied because Tweeter's allegations are sufficient under Rule 8's notice pleading requirements.  Though Toshiba attempts to unilaterally rewrite the rules, Rule 8 does not require pleading of specific facts, including the identity and corporate relationships of each of Tweeter's many suppliers.  *See* Class MTD Order, 738 F. Supp. 2d at 1017 ("Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests.") (*quoting Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

---

[3] Indeed, Toshiba chose to answer those DAPs' complaints, rather than again challenge the adequacy of the ownership or control allegations in them.  *See* MDL Dkt. Nos. 2042-2091 (Toshiba's answers to those DAP complaints).

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS' MOTION TO DISMISS TWEETER'S                    - 7 -
FIRST AMENDED COMPLAINT

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

Tweeter's standing allegations meet the Rule 8 standard. Tweeter has pled that it "purchased CRT Products directly from the Defendants, and/or the Defendants' subsidiaries and affiliates and/or any agents the Defendants or Defendants' subsidiaries and affiliates controlled" and that it was injured when it paid prices for these and other purchases that were higher than they would have been absent the conspiracy. Tweeter FAC at ¶ 21; *see also id.* at ¶ 9. These allegations are more than sufficient to put Toshiba on notice that Tweeter is seeking damages for its purchases of CRT Products from Defendants, as well as from Defendants' subsidiaries, affiliates and agents thereof. Thus, these allegations, and specifically their inclusion of the terms "subsidiaries," "affiliates," "agents" and "controlled," are adequate to put Toshiba on notice that Tweeter is making claims based upon the ownership or control exception to *Illinois Brick*.

Nevertheless, and without citation to any relevant case law, Toshiba attempts to rewrite Rule 8 to require Tweeter to specifically name "which alleged Defendants or co-conspirators were initial 'sellers' of CRTs and name which Defendants, co-conspirators, OEMs or 'other suppliers' were the 'direct purchasers' that ultimately sold finished CRT Products to Tweeter" and further to specifically allege that "the entities that sold CRT Products to it were owned and controlled by itself, the Defendants or other named co-conspirators." Motion at 7. This is not the law. Indeed, Toshiba argued this very same point in the *TFT-LCD Antitrust Litigation* on two occasions and Judge Illston denied both of Toshiba's motions. *In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*, No. 07-1827, 2012 WL 5949585, at *3 (N.D. Cal. Nov. 28, 2012); *In re TFT-LCD (Flat Panel) Antitrust Litig. (Best Buy)*, No. 07-1827, 2013 WL 254873, at *3-4 (N.D. Cal. Jan. 23, 2013).

In the *Viewsonic* case, Judge Illston stating the following in rejecting Toshiba's argument:

> . . . . ViewSonic's allegations —that it purchased LCD products from defendants and coconspirators, SAC ¶¶ 2, 17—are sufficient to state a claim under the exception at this juncture. **The Court also rejects defendants' argument that ViewSonic is required to identify with specificity who it purchased finished LCD products from.** In this case, where significant evidence of the alleged conspiracy is in the public record, there is no reason to require ViewSonic to provide this information at the pleading stage.

*Viewsonic*, 2012 WL 5949585 at *3 (emphasis added).

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS'MOTION TO DISMISS TWEETER'S
FIRST AMENDED COMPLAINT

- 8 -

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

When Toshiba again raised this argument in the *Best Buy* case, Judge Illston again rejected it, stating:

> Toshiba argues that . . . Best Buy must, 'at a minimum, *identify* the initial sellers of the LCD Panels and allege that those sellers owned or controlled the entities from whom Best Buy purchased LCD products.' . . . . Toshiba continues to rely on an interpretation of *ATM Fee* that this Court already specifically rejected . . . . **Toshiba acknowledges that this Court has previously determined that a plaintiff is not required to plead that a conspiring seller owns or controls a direct purchaser to qualify for the ownership or control exception.** As such, Best Buy's allegations—that it purchased LCD products from defendants, including TAIS, and TSB, the parent company of TAIS, owned or controlled panel manufacturer TMD, FAC ¶¶ 27–34—are sufficient to state a claim under the exception at this stage.

*Best Buy*, 2013 WL 254873 at *3 (emphasis added) (internal citations omitted).

Thus, as Toshiba by now well knows, there is no requirement that plaintiffs identify the initial sellers of CRTs and allege that those sellers have an ownership or control relationship with the entities from which Tweeter bought CRT Products. *Viewsonic*, 2012 WL 5949585 at *3; *Best Buy*, 2013 WL 254873 at *3. Rather, a plaintiff must plead that it purchased CRT Products from defendants and co-conspirators, or an entity with an ownership or control relationship with a defendant or co-conspirator, in order to state a claim for relief under the Sherman Act. *Id.* That is exactly what Tweeter has done here. Tweeter FAC at ¶¶ 9, 21.[4]

---

[4] Judge Illston's decisions are in line with decisions from federal courts around the country rejecting this argument. *See* Dell Inc. and Dell Products L.P.'s Brief in Opposition to the Toshiba Defendants' Motion to Dismiss Dell's First Amended Complaint (Nov. 6, 2013) [Dkt No. 2193] at 7-8 (citing *Prince Heaton Enters. v Buffalo's Franchise Concepts, Inc.*, 117 F. Supp. 2d 1357, 1364 (N.D. Ga. 2000) (denying motion to dismiss under *Illinois Brick* where plaintiffs did not make an explicit allegation of ownership or control, because "some degree of control may be implied" and noting that this issue is more appropriate for a motion for summary judgment); *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 35 (D.D.C. 2008) (denying a motion to dismiss on the grounds that ownership or control exception to *Illinois Brick* was sufficiently pleaded); *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-cv-0620, 2008 WL 583906, at *3 (E.D. Pa. Mar. 3, 2008) (denying motion to dismiss for failure to allege ownership or control exception "[because] plaintiffs' amended complaint sufficiently alleges that Topco acted as [plaintiffs'] agent in purchasing mushrooms from defendants and that there existed economic unity among Topco and its 'owner-members.'"); *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 31-32 (D.D.C. 2007) (denying motion to dismiss when plaintiffs generally alleged that "[d]efendants own or control a number of transmission lines, as well as natural gas marketing entities for the sale and transportation of natural gas produced by them"); *In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d 355, 367 (D.N.J. 2001) (denying

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS' MOTION TO DISMISS TWEETER'S
FIRST AMENDED COMPLAINT
- 9 -
Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

1    Toshiba relies on another decision from the *TFT-LCD Antitrust Litigation* in an attempt

2    to support its argument that Tweeter has failed to adequately allege standing under the ownership

3    or control exception, Motion at 9-10 (citing *In re: TFT-LCD (Flat Panel) Antitrust Litig.*

4    *(Proview),* No. 07-1827, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013)), but that decision is

5    entirely inapposite.  In the *Proview* case, the plaintiff, Proview, sought to recover for purchases it

6    made from OEMs that *Proview itself* owned and controlled.  *Id.* at *3.  The OEMs in turn had

7    purchased the price-fixed goods from conspirators.  *Id.*  Therefore, in order to satisfy *Illinois*

8    *Brick*, Judge Illston ruled that Proview had to plead that it did in fact own or control the OEMs.

9    *Id.*

10    The distinction between the *Proview* decision and the present case is obvious: In

11   Proview's situation, the plaintiff allegedly owned and controlled the OEMs, and thus the plaintiff

12   was in possession of information that would demonstrate that it had sufficient ownership or

13   control of the OEMs to satisfy *Illinois Brick*.  *Id.* at *3.  The court thus correctly found that a

14   conclusory allegation that Plaintiff owned or controlled the OEMs was insufficient and granted

15   leave to amend the complaint to rectify the shortcoming.  *Id.* at *3.

16    Here, it is Defendants, including Toshiba, that have the ownership or control

17   relationships with entities from which Tweeter made purchases, and thus it is Defendants that are

18   in possession of information to prove or disprove the ownership or control relationships of these

19   entities.  Notably, Toshiba does not, because it cannot, deny that it had ownership or control

20   relationships with entities from which Tweeter directly purchased CRT Products; instead, it tries

21   to impose a new burden on the Tweeter to plead detailed facts concerning ownership or control,

22   which facts are in Defendants' possession.

23    Tweeter, on the other hand, was not privy to the facts that Toshiba insists that Tweeter

24   plead regarding ownership or control.  Although Tweeter had knowledge of the companies from

25   which it purchased CRT Products, it did not have access to detailed facts regarding the

26   relationship between all of those entities and the Defendants and their co-conspirators prior to

27

28   motion to dismiss for failure to allege facts to support ownership or control exception and noting
     that Defendants may renew their argument after a factual record has been developed)).

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS'MOTION TO DISMISS TWEETER'S                - 10 -
FIRST AMENDED COMPLAINT

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

1   joining the MDL. Tweeter had sufficient information to allege that at least some of the

2   companies from which it purchased CRT Products were subsidiaries or affiliates of Defendants,

3   but it could not have asserted detailed factual allegations without the benefit of discovery.

4   Indeed, Rule 8 does not require Tweeter to list its dozens of suppliers and the facts of the

5   ownership or control relationships of each of those suppliers. As Judge Illston held, "where

6   significant evidence of the alleged conspiracy is in the public record, there is no reason to require

7   [plaintiff] to provide this information [regarding the identity of its suppliers] at the pleading

8   stage." *Viewsonic*, 2012 WL 5949585, at *3.

9          Instead, Tweeter and the other DAPs that purchased CRT Products are diligently

10  pursuing discovery of Defendants concerning ownership and control and liability issues. Data

11  and documents already produced by Defendants in this litigation show that Tweeter purchased

12  CRT Products from Defendants and entities with ownership or control relationships with certain

13  Defendants. And likewise, Defendants have served contention interrogatories on the DAPs

14  seeking to know their ownership or control contentions. These discovery requests are the proper

15  way to address ownership or control issues, not through successive motions to dismiss.

16         Finally, Toshiba also appears to argue that Tweeter only has standing against Toshiba if

17  Tweeter alleges and ultimately proves that it purchased CRT Products from a Toshiba entity or

18  that it purchased CRT Products containing a CRT manufactured by Toshiba. Motion at 3. This

19  argument is wrong as a matter of law. First, Rule 8 does not require such specificity in a

20  complaint. Second, as a member of a price-fixing conspiracy, Toshiba is jointly and severally

21  liable for any action taken by a co-conspirator in furtherance of the conspiracy. *See In re TFT-*

22  *LCD (Flat Panel) Antitrust Litig.*, 820 F.Supp.2d 1055, 1059 (N.D. Cal. 2011) (citing *Tex. Indus.*

23  *Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981); *Paper Sys. Inc. v. Nippon Paper Indus.*

24  *Co.*, 281 F.3d 629, 633 (7th Cir. 2002)). The Ninth Circuit has held that under the ownership

25  and control exception to *Illinois Brick*, a plaintiff can sue the manufacturer of the products it

26  purchased, along with that manufacturer's co-conspirators in the price-fixing scheme, under a

27  joint and several liability theory. *Royal Printing Co.v. Kimberly Clark Corp.*, 621 F.2d 323, 327

28  (9th Cir. 1980); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2012 WL

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS'MOTION TO DISMISS TWEETER'S
FIRST AMENDED COMPLAINT

- 11 -

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

1    5869588, at *3-4 (N.D. Cal. Nov. 19, 2012).  Therefore, Tweeter has standing to sue Toshiba, a

2    price-fixing co-conspirator, for purchases made from other Defendants or from companies

3    owned or controlled by other affiliates, subsidiaries and agents of Defendants.  Tweeter FAC at ¶

4    21.

5             Accordingly, Toshiba's motion should be denied.

6        **C. If the Court Grants Toshiba's Motion, Tweeter Should Be Given Leave to
             Amend.**

7        The Ninth Circuit has "repeatedly held that a district court should grant leave to amend

8    even if no request to amend the pleading was made, unless it determines that the pleading could

9    not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

10   Cir. 2000) (internal citations omitted).

11       Here, if the Court determines that additional details are required concerning Tweeter's

12   purchases of CRT Products, Tweeter should be given leave to amend its FAC to add factual

13   allegations regarding the identities of its suppliers and the facts, as known to Tweeter, of the

14   relationship between those suppliers, Defendants and their co-conspirators.

15   **III.   TWEETER HAS STATED CLAIMS UNDER MASSACHUSETTS LAW.**

16       Defendants have moved to dismiss Tweeter's Massachusetts claims on two grounds:  (1)

17   Tweeter lacks standing to pursue its Massachusetts claims under Section 9 of Mass. G.L. c. 93A,

18   because it is a commercial entity engaged in trade or commerce; and (2) Tweeter failed to

19   properly notify Defendants of its claims before filing suit.  Defendants are wrong.

20       First, as explained below, Tweeter has standing to assert claims under Section 9, and

21   Defendants' argument to the contrary contradicts Massachusetts law.  It is therefore no surprise

22   that Defendants *never* raised this argument before—not even in their prior motion to dismiss.

23       Second, Tweeter sent demand letters to each Defendant, and it has specifically pled

24   compliance with the demand requirement.  Tweeter FAC at ¶¶ 244-53.  Toshiba does not and

25   cannot challenge these allegations.  And Philips devotes a mere footnote—which itself is devoid

26   of a single legal authority—to the meritless argument that Tweeter failed to comply with the

27   demand requirement.  Massachusetts law is clear, and Tweeter followed it.

28

The motion to dismiss Tweeter's claims under Massachusetts law should be denied.

### A.      *Tweeter Has Standing to Pursue its Massachusetts Claims*

Section 9 of Mass. G.L. c. 93A provides a cause of action for "*[a]ny person*, other than a person *entitled* to bring action under section eleven of this chapter, who has been *injured* by another person's use or employment of any method, act or practice declared to be unlawful by section two."  Mass. G.L. c. 93A, § 9 (emphasis added).  Tweeter easily satisfies each of these elements:

- it is a "person" under this section, Mass. G.L. c. 93A, § 1(a) ("'Person' *shall* include . . . corporations") (emphasis added); Mass. G.L. c. 4, § 7(23) ("[i]n construing statutes . . . [the word] 'Person' . . . shall include corporations"); *see also Ciardi v. F.Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 58 (2002) (noting the "broad language" of Section 9);

- who is not "entitled" to bring indirect purchaser claims under Section 11 of Mass. G.L. c. 93A because, as Defendants note, Section 11 claims are reserved exclusively for direct-purchaser claims;

- who has been injured by another person's use or employment of any method, act, or practice declared to be unlawful by section two, *Ciardi*, 436 Mass. at 55 (holding that indirect purchasers can bring claims under Section 9 based upon allegations of price-fixing).[5]

Despite this clear statutory language, Defendants argue that Tweeter lacks standing to pursue its claim under Section 9 of Mass. G.L c. 93A because this provision is reserved exclusively for "individual consumer plaintiffs," not plaintiffs engaged in trade or commerce. Motion at 10.  This argument is not supported by the statutory text or the cases that have interpreted it.  Section 9 itself provides a cause of action for "[a]ny person," which includes corporations, and Massachusetts law is clear that "[t]he fact that the plaintiffs are not consumers does not bar them from recovering pursuant to Section 9 of Chapter 93A, as this provision no longer limits relief to consumers . . . ."  *Reisman v. KPMG Peat Marwick LLP*, 965 F. Supp. 165, 175 n.14 (D. Mass. 1997).  Thus, Defendants' assertion that Section 9 is limited to consumer claims must be rejected.

Defendants further argue that Tweeter is entitled to bring an action under Section 11 of Mass. G.L. c. 93A, and therefore cannot assert claims under Section 9, because Section 11 permits claims by businesses that have been harmed by unfair trade practices.  Motion at 11-12.

---

[5] Defendants do not contest that a plaintiff can bring an indirect-purchaser claim under Section 9.

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS' MOTION TO DISMISS TWEETER'S
FIRST AMENDED COMPLAINT

- 13 -

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

In virtually the same breath, however, Defendants argue that Tweeter is *not* entitled to bring a claim under Section 11 because, as an indirect purchaser, it lacks standing to do so.  Motion at 12-13.  *Compare* Motion at 12, line 3 ("[Tweeter] therefore has standing to pursue a consumer protection claim under Section 11.") *with* Motion at 12, lines 16-17 ("If Tweeter, without so stating, also seeks to bring a claim under Section 11, then its state law claim must be dismissed for lack of standing as an indirect purchaser.").  Defendants cannot have it both ways:  Either Tweeter *is* entitled to bring a Section 11 claim (and therefore such a claim must survive) or it isn't (and therefore Tweeter's Section 9 claim must survive).[6]  Any other result would make nonsense rather than sense out of these sections and Chapter 93A.

Specifically, the statute itself is clear.  A plaintiff is "entitled" to bring an action under Section 11 only if it *actually* has a cause of action under that section—not simply because, as Defendants implicitly assert, a plaintiff can file a frivolous claim under that section.  *Reisman*, 965 F. Supp. at 175 n.14 (permitting individual owners of a corporation engaged in trade or commerce to bring a 93A claim under § 9 when they were barred from doing so under § 11); Michael C. Gilleran, 52 Mass. Prac., Law of Chapter 93A § 7.5 ("There is possibly another type of plaintiff who might qualify to bring an action under § 9, even though that plaintiff was a business or an individual engaged in business. The language of § 9(1) states that § 9 applies to '[a]ny person, other than a person entitled to bring an action under section eleven . . .' If a business or individual engaged in business is for some reason not entitled to bring an action under § 11, because, for example, they fail to meet § 11's stiffer jurisdictional requirement, or because they are barred by § 11's requirement of first resort to an administrative remedy, they, under the language of § 9 permitting § 9 actions by persons not entitled to bring an action under § 11, might be able to bring an action under § 11. Although such a result clearly was not intended, under the statutory language of § 9 it would appear to be permitted.").  *Accord*

---

[6] Tweeter's Massachusetts claim primarily rests upon Section 9, as Defendants correctly note. Motion at 10, 12.  In the alternative, however, Tweeter also asserts a Section 11 claim because, as explained herein, either indirect-purchaser claims are allowed under Section 11, and therefore Tweeter's Section 11 claim should survive Defendants' motion to dismiss, or Tweeter is entitled to bring an indirect-purchaser claim under Section 9.  *See* Tweeter FAC at ¶¶ 238-43 (alleging that Defendants' conduct violated "Mass. Gen. Laws ch. 93A, §§ 2 *et seq*.").

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS'MOTION TO DISMISS TWEETER'S              - 14 -
FIRST AMENDED COMPLAINT

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

1    "entitled": "to give a right to," Merriam-Webster Online Dictionary, http://www.merriam-

2    webster.com/dictionary/entitled (retrieved December 5, 2013).  If Defendants' interpretation of

3    the statute prevails, no one could ever bring an action under Section 9 because everyone is

4    always "entitled," in this frivolous way, to sue under Section 11.  Thus, the only reasonable

5    interpretation of Section 9 is as follows:  if a plaintiff lacks standing under Section 11, it is

6    permitted to bring an action under Section 9.  *Id.  See also Ciardi*, 436 Mass. at 60-61 ("Where,

7    as here, the language of a statute is clear and unambiguous, it is conclusive as to the intent of the

8    Legislature.").  That is precisely the case here, as Defendants' concede, because Section 11 does

9    not encompass Tweeter's indirect-purchaser claims.  Motion at 12-13.

10          Moreover, allowing Tweeter's claims under Section 9 is consistent with the principles

11    animating Chapter 93A.  Chapter 93A broadly regulates trade and commerce "directly or

12    indirectly affecting the people of the commonwealth," Mass. G.L. c. 93A, § 1, and it must be

13    interpreted liberally to remedy such harm.  *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 693

14    (Mass. 1975) (describing Mass. G.L. c. 93A as a statute of "broad impact" with "far-reaching

15    effects"); *Reisman*, 965 F. Supp. at 175 (noting that "[t]he Supreme Judicial Court has

16    interpreted the scope of Chapter 93A Section 9 extremely broadly") (citation and quotation

17    marks omitted). Yet a decision allowing consumer claims under Section 9, but not claims by

18    entities such as Tweeter, would automatically eliminate lawsuits seeking to recover a potentially

19    significant portion of the damages caused to the "people of the commonwealth," Mass. G.L. c.

20    93A, § 1.  This is so for two distinct reasons, neither of which is supported by Massachusetts

21    law.

22          *First*, Massachusetts law recognizes a pass-through defense concerning indirect-

23    purchaser claims.  *See Ciardi*, 436 Mass. at 65-67.  Thus, in a case filed by individual end-users,

24    Defendants will attempt to show that virtually every penny of their unlawfully inflated prices

25    was retained by corporations such as Tweeter and not passed on to the end-user.  This tactic, if

26    successful, would simultaneously eliminate damages for the entire consumer class and preclude

27    the upstream purchaser from asserting any indirect claims under Massachusetts law.  Thus, *no*

28

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS' MOTION TO DISMISS TWEETER'S
FIRST AMENDED COMPLAINT

- 15 -

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

1   relief would be available for a significant portion of the harm Defendants caused—a result not

2   supported by the text or principles of the statute.

3       *Second*, Defendants' position would eliminate claims for all indirect damages suffered by

4   corporations, even when they are victimized by unlawful trade practices, while granting living

5   human beings the right to assert claims in identical circumstances.  Yet no basis exists under

6   Massachusetts law, or its supporting public policy, to treat companies and individuals differently,

7   particularly when doing so would singularly benefit the wrongdoer.  Not only is the statutory text

8   on this issue clear—as explained above, "all persons" can assert claims under Section 9—but

9   Defendants' sole authority for the proposition that Chapter 93A discriminates against

10  Massachusetts corporations, *Ciardi v. Hoffmann-LaRoche, LTD*, supports exactly the opposite

11  result.  *Ciardi* did not hold that only "individual consumer plaintiffs" have claims under Section

12  9, as Defendants contend.  *See* Motion at 13-14.  Rather, it held that "*indirect purchasers* can

13  assert claims for price-fixing or other anticompetitive conduct under G.L. c. 93A, § 9," a class

14  that plainly includes Tweeter.  *Ciardi*, 436 Mass. at 55 (citation omitted) (emphasis added).  The

15  expansive reach of this holding was further illustrated only a few pages later, where the court

16  observed that the Massachusetts legislature "intended to protect" the plaintiff in *Ciardi* simply

17  because she qualified as "any person" who was injured indirectly by the defendant's unlawful

18  conduct (*i.e.*, not because she was a natural person).  *Ciardi*, 436 Mass. at 60 ("[B]ecause the

19  language of G.L. c. 93A, §§ 1, 9(1), allows *any* person who has been injured by trade or

20  commerce *indirectly* affecting the people of this Commonwealth to bring a cause of action, the

21  plaintiff is the type of consumer the Legislature intended to protect.") (emphasis in original).  No

22  evidence exists that Massachusetts intended to treat corporations as legal "persons" in every

23  respect but this one.

24      In sum, Defendants' arguments are contrary to the statutory text, basic principles of

25  statutory interpretation, the governing Massachusetts precedents, the policies underpinning

26  Chapter 93A, and common sense.  The motion to dismiss Tweeter's Chapter 93A claims for lack

27  of standing should therefore be denied.

28

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS' MOTION TO DISMISS TWEETER'S
FIRST AMENDED COMPLAINT

- 16 -

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

1

**B.     *Tweeter Has Satisfied the Demand Requirement Under Massachusetts Law***

2

In one footnote, joined by no other Defendant and devoid of a single supporting

3

authority, Philips argues that Tweeter has failed to meet the demand requirements of Section 9,

4

Mass. G.L. ch. 93A.  Philips Joinder at 2 n.3.  This argument is baseless and should be rejected.[7]

5

As a threshold matter, no demand letter is required under Massachusetts law if "the

6

prospective respondent does not maintain a place of business or does not keep assets within the

7

commonwealth."  Mass. G.L. c. 93A § 9(3).  *Accord Williams v. Perrault*, 82 Mass. App. Ct.

8

1117, 976 N.E.2d 214 (Table) (2012) (holding that plaintiff was not required to make pre-

9

litigation demand of company that did not maintain a place of business or keep assets in

10

Massachusetts); *In re Mitchell*, 476 B.R. 33 (Bankr. D. Mass. 2012) (same).  Although it is not

11

Tweeter's burden to plead these facts, it has specifically pled that all but one of the Philips

12

defendants, including one of the Philips entities that moves here (Koninklijke Philips N.V.

13

("Koninklijke")), does not maintain a place of business or keep assets within the commonwealth.

14

Tweeter FAC at ¶¶ 245-248.  *See Butler v. Deutsche Bank Trust Co. Americas*, 2012 WL

15

3518560, at 12-13 (D. Mass. Aug. 14, 2012) (refusing to dismiss claim "for failure to satisfy the

16

demand letter requirement" because the *defendant* could not show at the motion to dismiss stage

17

that it held assets in Massachusetts); *Powell v. Ocwen Loan Servicing, LLC*, No. 2010-2069-D,

18

2012 WL 345665, at *4 (Mass. Super. Ct. Jan. 4, 2012) (denying motion to dismiss 93A claim

19

for failure to send a demand letter when defendant failed to rebut contention that it did not

20

maintain a place of business in Massachusetts).[8]  Koninklijke does not dispute this allegation.

21

---

22

[7] The fact that Philips has made this argument in a footnote, without any supporting legal

23

authority, itself requires the Court to reject the argument.  *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013) ("We have often said that a party can waive an argument by presenting it only in an undeveloped footnote, *see, e.g.*, *Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910, 924 (7th Cir. 2012) (finding waiver); *Long v. Teachers' Ret. Sys. of Illinois*, 585 F.3d 344,

24

349 (7th Cir. 2009) (same), and we therefore conclude that Harmon waived his argument for damages for any premature termination of the Agreement."); *Bridas S.A.P.I.C. v. Gov't of*

25

*Turkm.*, 345 F.3d 347, 356 n.7 (5th Cir. 2003) (same).

26

[8] Not a *single* decision in Massachusetts has *ever* required a plaintiff to carry the burden of showing that a defendant lacks a place of business and assets in the commonwealth.  The reason

27

for this is obvious:  the assertion of these facts is a defense under the statutory text (*i.e.*, not an element of the demand requirement, but an exception to it), and therefore must be asserted and proved by the defendant.  Moreover, this type of information generally is peculiarly within a

28

defendant's knowledge, and a plaintiff should therefore not bear the initial burden to discover and prove it.

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS' MOTION TO DISMISS TWEETER'S                                    - 17 -
FIRST AMENDED COMPLAINT

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

1    Because Tweeter has pled that the demand requirement did not apply to Koninklijke, at a

2    minimum, and because Koninklijke fails to argue otherwise, the motion to dismiss should be

3    denied.[9]

4         Philips' arguments that Tweeter failed to comply with the demand requirement are not

5    only moot, given the above, they are also frivolous.

6         *First*, Philips argues that Tweeter's demand letters were untimely because the letters were

7    sent fewer than 30 days before Tweeter filed its initial complaint—even though Tweeter's letters

8    preceded Philips' answer and Tweeter's amended complaint.  Philips Joinder at 2, n.3; Tweeter

9    FAC at ¶ 249.  The United States District Court in Massachusetts has twice rejected exactly the

10   same argument Philips makes here, and Philips has failed to cite a single contrary authority:

> While it would have been more appropriate to commence the action, wait the 30
> days and then move to amend to add the ch. 93A claim, [defendant] has cited no
> cases and none have been found where the premature filing of a complaint
> constitutes a waiver of a plaintiff's right to assert a 93A action.  Since the
> demand letter was served, the Bank has had ample opportunity to asset the merits
> of the plaintiff's claim and make a settlement offer if appropriate.  The timing of
> the suit is not a basis to dismiss the 93A claim.

15   *McKensi v. Bank of Am., N.A.*, No. 09-cv-11940, 2010 WL 3781841, at *3 (D. Mass. Sept. 22,

16   2010).  *Accord Burns ex rel. Office of Public Guardian v. Hale & Dorr LLP*, 445 F. Supp. 2d 94,

17   96-97 (D. Mass. 2006) (concluding that plaintiff's demand letter "was adequate and satisfied the

18   purpose of the demand requirement" where plaintiff "did not send a demand letter to defendants

19   prior to filing her initial complaint," but did "send a letter . . . which preceded the filing of

20   defendants' answer . . . as well as her amended complaint").[10]

---

[9]  This analysis applies equally to the remaining Philips entity, Philips Electronics North American Corporation ("PENAC"), because PENAC does not in any way carry its burden of demonstrating that it maintains a place of business or holds assets in Massachusetts.

[10]  The only authority ever relied upon to challenge Tweeter's position is *Kanamaru v. Holyoke Mut. Ins. Co.*, 72 Mass. App. Ct. 396, 407-08 (2008).  But *Kanamaru* is distinguishable because, while the plaintiff there sent a demand letter for a 93A claim, the letter he sent to the defendants before the suit specifically stated that he was *not* going to file a 93A claim.  *Kanamaru*, 72 Mass. App. Ct. at 407-08.  When the objective of the demand statute is fair notice, at least in part, reliance here on a case involving a plaintiff who informed the defendants he was *not* bringing a 93A claim is improper, especially because Tweeter *did* send demand letters outlining the nature of its 93A claims.

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS' MOTION TO DISMISS TWEETER'S                    - 18 -
FIRST AMENDED COMPLAINT

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

*Second*, Philips argues that Tweeter's demand letter to Philips Electronics North America Corporation ("PENAC") was deficient because it contained an "undeliverable address" (*i.e.,* an incomplete zip code).  Philips Joinder at 2 n.3.  This is false.  On November 14, 2011, Tweeter sent PENAC a demand letter with a complete and accurate address, including a complete zip code.  Declaration of Philip J. Iovieno, Exs. A (letter to PENAC) and B (letter to Koninklijke).[11] Moreover, PENAC does not dispute that the letter was in fact received.  The letter was therefore sufficient to comply with Massachusetts law.[12]

In any event, as Tweeter alleges, any purported defect in the letter was cured on August 23, 2013, when Tweeter sent supplemental demand letters to the Defendants.  Tweeter FAC at ¶ 251.  These letters were sent before Philips' answer and before the amended complaint was filed.  Thus, as explained above, they were timely.

For each of these reasons, Tweeter has complied with the demand requirement under Massachusetts law, and Philips' motion to dismiss on this ground should be denied.

## CONCLUSION

For the foregoing reasons, Tweeter respectfully requests that this Court deny the Motion to Dismiss.

---

[11]  The copy of the demand letter to PENAC that was previously submitted with Tweeter's opposition brief was regenerated from the final Microsoft Word version of the document sent to PENAC.  When that document was printed and attached to the opposition brief, the mail merge feature of the document malfunctioned and eliminated portions of the zip code.  The letter that was actually sent to PENAC, however, contained the complete address, including the zip code.

[12]  Philips' inaccurate and formalistic approach to Massachusetts procedure is also inconsistent with nearly a century of critical thinking about the proper place of procedural rules in our system of justice.  *E.g.,* Benjamin N. Cardozo, The Nature of the Judicial Process 95-96 (Dover Publications 2005) (1921) ("The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal.  Perhaps it is in the field of procedure that we have witnessed the chief changes; though greater ones must yet be wrought.") (citations omitted).

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS' MOTION TO DISMISS TWEETER'S                    - 19 -
FIRST AMENDED COMPLAINT

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC

1

2
                                    Respectfully submitted,

3
DATED:  Dec. 6, 2013          /s/      Philip J. Iovieno

4
                                      Philip J. Iovieno
Anne M. Nardacci

5
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor

6
Albany, NY  12207
Telephone:  (518) 434-0600

7
Facsimile:   (518) 434-0665
Email:  piovieno@bsfllp.com

8
Email:  anardacci@bsfllp.com

9
William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP

10
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015

11
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131

12
Email:  wisaacson@bsfllp.com

13
*Counsel for Plaintiff Schultze Agency Services LLC
on Behalf of Tweeter Opco, LLC and Tweeter Newco, LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TWEETER'S OPPOSITION TO THE TOSHIBA
DEFENDANTS'MOTION TO DISMISS TWEETER'S     - 20 -
FIRST AMENDED COMPLAINT

Master File No. 3:07-5944-SC
MDL No. 1917
Case No. 12-cv-02649-SC