Guido Saveri (22349)
    guido@saveri.com
R. Alexander Saveri (173102)
    rick@saveri.com
Geoffrey C. Rushing (126910)
    grushing@saveri.com
Travis L. Manfredi (281779)
    travis@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Interim Lead Counsel for the
Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV- 07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| | **DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR:** |
| DIRECT PURCHASER CLASS ACTIONS | |
| | **1) CERTIFICATION OF A SETTLEMENT CLASS;** |
| | **2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH THE HITACHI DEFENDANTS;** |
| | **3) DIRECTING NOTICE TO THE SETTLEMENT CLASS; AND** |
| | **4) MEMORANDUM IN SUPPORT THEREOF** |
| | Date:      January 10, 2014 |
| | Time:      10:00 a.m. |
| | Judge:     Honorable Samuel Conti |
| | Courtroom: 1 |

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES........................................................................................... iii

NOTICE OF MOTION AND MOTION....................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 2

I.      INTRODUCTION ................................................................................ 2

II.     FACTUAL AND PROCEDURAL HISTORY ..................................... 3

        A.     Initial Filings and Motion Practice ......................................... 3

        B.     Discovery .................................................................................. 5

        C.     Prior Settlements ..................................................................... 6

III.    THE TERMS OF THE SETTLEMENT ............................................. 7

IV.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT................. 8

        A.     Class Action Settlement Procedure. ....................................... 8

        B.     Standard for Settlement Approval. ......................................... 9

        C.     The Proposed Settlement Is Within The Range Of Reasonableness. ...................... 10

V.      THE COURT SHOULD PROVISIONALLY CERTIFY THE HITACHI SETTLEMENT CLASS................ 12

        A.     The Requirements of Rule 23 in the Context of the Settlement Class .................... 13

        B.     The Requirements of Rule 23(a) Are Satisfied in This Case. ................................. 14

               1.     The Class Is So Numerous That Joinder of All Members Is Impracticable . 14

               2.     This Case Involves Questions of Law and Fact Common to the Class........ 15

               3.     The Claims of the Representative Parties are Typical of the Claims of the Class ................................................ 16

               4.     The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class................................ 17

        C.     The Proposed Class Satisfies The Requirements Of Rule 23(b)(3) ........................ 18

               1.     Common Questions of Law and Fact Predominate Over Individual Questions ................................................ 19

               2.     A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Case. ........................................... 20

        D.     The Court Should Appoint Saveri & Saveri, Inc. as Settlement Class Counsel. ..... 21

VI.     PROPOSED PLAN OF NOTICE .................................................... 22

VII.    PROPOSED PLAN OF ALLOCATION ......................................... 23

i

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITH THE HITACHI DEFENDANTS; Master File No. CV-07-5944-SC

VIII.    THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE............... 24

IX.      CONCLUSION ............................................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**CASES**

*Agretti v. ANR Freight System, Inc.,*
    982 F.2d 242 (7th Cir. 1992) ................................................................... 12

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997) .............................................................. 14, 19, 22

*Bellows v. NCO Financial System,*
    No. 3:07-cv-01413-W-AJB, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ....................... 11

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ................................................................... 15

*Carnegie v. Household International, Inc.,*
    376 F.3d 656 (7th Cir. 2004) ................................................................... 14

*Churchill Village, L.L.C. v. General Electric,*
    361 F.3d 566 (9th Cir. 2004) ................................................................... 9

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ............................................................... 9, 10

*Estate of Jim Garrison v. Warner Bros., Inc.,*
    Civ. No. CV 95–8328 RMT, 1996 WL 407849 (C.D. Cal. June 25, 2006) ....................... 16

*Fisher Bros. v. Mueller Brass Co.,*
    630 F. Supp. 493 (E.D. Pa. 1985) ............................................................... 11

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1988) ........................................................... *passim*

*Harrington v. City of Albuquerque,*
    222 F.R.D. 505 (D.N.M. 2004) ................................................................... 21

*In re AOL Time Warner ERISA Litigation,*
    No. 02 Civ. 8853 SWK, 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) ....................... 23

*In re Cardizem CD Antitrust Litigation,*
    200 F.R.D. 326 (E.D. Mich. 2001) ............................................................... 19

*In re Cement and Concrete Antitrust Litigation,*
    MDL Dkt. No. 296, 1979 WL 1595 (D. Ariz. March 9, 1979) ....................... 19

*In re Chlorine & Caustic Soda Antitrust Litigation,*
    116 F.R.D. 622 (E.D. Pa. 1987) ............................................................... 17

*In re Citric Acid Antitrust Litigation,*
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) ....................................................... 24

*In re Citric Acid Antitrust Litigation,*
    No. 95–1092, C–95–2963 FMS, 1996 WL 655791 (N.D. Cal. Oct. 2 1996) ............... *passim*

*In re Corrugated Container Antitrust Litigation,*
    Case No. M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ....................... 12

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    No. M-02-1486 PJH, Dkt. No. 2093 (Oct. 27, 2010) (Order Approving Pro Rata
    Distribution) ............................................................................... 24

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,*
    2006 WL 1530166 (N.D. Cal. June 5, 2006) ............................................... 12, 16

iii

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITH THE HITACHI DEFENDANTS; Master File No. CV-07-5944-SC

*In re Flat Glass Antitrust Litigation,*
191 F.R.D. 472 (W.D. Pa. 1999) ................................................... 15, 16, 17

*In re Initial Public Offering Securities Litigation,*
226 F.R.D. 186 (S.D.N.Y. 2005) .............................................................. 14

*In re Linerboard Antitrust Litigation,*
292 F. Supp. 2d 631 (E.D. Pa. 2003) ...................................................... 12

*In re Lloyds' American Trust Fund Litigation,*
No. 96 Civ.1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................... 24

*In re Lorazepam & Clorazeopate Antitrust Litigation,*
202 F.R.D. 12 (D.D.C. 2001) .................................................................. 19

*In re Methionine Antitrust Litigation,*
Master File No. C-99-3491-CRB (N.D. Cal. Dec. 21, 2000 (Order Granting Motion for
Class Certification (Breyer, J.)) .......................................................... 13

*In re Mid-Atlantic Toyota Antitrust Litigation,*
564 F. Supp. 1379 (D. Md. 1983) ............................................................. 12

*In re NASDAQ Market-Makers Antitrust Litigation,*
169 F.R.D. 493 (S.D.N.Y. 1996) .............................................................. 19

*In re NASDAQ Market-Makers Antitrust Litigation,*
176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................ 9

*In re Pacific Enterprise Security Litigation,*
47 F.3d 373 (9th Cir. 1995) ................................................................... 9

*In re Potash Antitrust Litigation,*
159 F.R.D. 682 (D. Minn. 1995) ............................................................. 19

*In re Relafen Antitrust Litigation,*
231 F.R.D. 52 (D. Mass. 2005) ............................................................... 14

*In re Rubber Chemicals Antitrust Litigation,*
232 F.R.D. 346 (N.D. Cal. 2005) ...................................................... *passim*

*In re Shopping Carts Antitrust Litigation,*
MDL No. 451-CLB, M-21-29, 1983 WL 1950 (S.D.N.Y. Nov. 18, 1983) ........................... 9

*In re Sorbates Direct Purchaser Antitrust Litigation,*
No. C 98-4886 MMC (N.D. Cal. Mar. 11, 2002) (Order Granting Plaintiffs' Motion for
Class Certification; Vacating Hearing (Chesney, J.)) ...................................... 12

*In re Static Random Access Memory (SRAM) Antitrust Litigation,*
No. C 07-01819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ............................. 12

*In re Sugar Industry Antitrust Litig.,*
MDL Dkt. No. 201, 1976 WL 1374 (N.D. Cal. May 21, 1976) ................................ 14, 19

*In re Tableware Antitrust Litigation,*
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................... 3, 10, 22

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
267 F.R.D. 291 (N.D. Cal. 2010) ................................................... 12, 15, 16, 19

*In re Vitamins Antitrust Litigation,*
No. 99–197 TFH, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) ................................... 24

*In re Vitamins Antitrust Litigation,*
Nos. MISC. 99–197(TFH), 2001 WL 856292 (D.D.C. July 25, 2001) ............................ 11

iv

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITH THE HITACHI DEFENDANTS; Master File No. CV-07-5944-SC

*In re Warfarin Sodium Antitrust Litigation,*
    391 F.3d 516 (3d Cir. 2004) ................................................................................. 19

*In Re: Sodium Gluconate Antitrust Litigation,*
    Master File No. C 97-4142 CW (N.D. Cal. Sept. 24, 1998) (Order Granting Class
    Certification) (Wilken, J.)) .................................................................................. 13

*Lerwill v. Inflight Motion Pictures, Inc.,*
    582 F.2d 507 (9th Cir. 1978) ........................................................................... 18, 21

*Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas,*
    244 F.3d 1152 (9th Cir. 2001) ......................................................................... 19, 21

*Mularkey v. Holsum Bakery, Inc.,*
    120 F.R.D. 118 (D. Ariz. 1988) ............................................................................ 20

*National Rural Telcoms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................... 11

*Officers for Justice v. Civil Service Commission,*
    688 F.2d 615 (9th Cir. 1982) ............................................................................. 9, 11

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.,*
    188 F.R.D. 365 (D. Ore. 1998) ......................................................................... 15, 19

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
    314 F.3d 1180 (10th Cir. 2002) ............................................................................ 11

*Torrisi v. Tucson Electric Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) .................................................................................. 23

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) .................................................................................. 9

*Vasquez v. Coast Valley Roofing, Inc.,*
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ............................................................... 3, 10

*Wellman v. Dickinson,*
    497 F. Supp. 824 (S.D.N.Y. 1980) ......................................................................... 9

*West Virginia v. Chas. Pfizer & Co.,*
    314 F. Supp. 710 (S.D.N.Y. 1970) ......................................................................... 9

*Wilkerson v. Martin Marietta Corp.,*
    171 F.R.D. 273 (D. Colo. 1997) ............................................................................ 11

## STATUTES

Clayton Act, 15 U.S.C. § 15 ....................................................................................... 3, 4

Sherman Act, 15 U.S.C. § 1 ............................................................................................ 3

## OTHER AUTHORITIES

4 Newberg on Class Actions (4th ed. 2002) ................................................. 8, 10, 15, 23

*Manual for Complex Litigation,* Fourth, (2004) (200 .......................................... 3, 10, 23

*Moore's Federal Practice* (3d ed. 2003) ......................................................................... 22

v

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITH THE HITACHI DEFENDANTS; Master File No. CV-07-5944-SC

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 10, 2014, at 10:00 a.m. or as soon thereafter as this matter may be heard, before the Honorable Samuel Conti, Senior United States District Judge of the Northern District of California, located at Courtroom 1, 450 Golden Gate Ave., San Francisco, California, the Direct Purchaser Plaintiffs ("Plaintiffs") will move this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), for entry of an Order:

(i)     granting preliminary approval of the settlement agreement ("Settlement") Plaintiffs have executed with defendants (1) Hitachi, Ltd.; (2) Hitachi Displays, Ltd. (n/k/a Japan Display Inc.) ("Hitachi Displays"); (3) Hitachi America, Ltd.; (4) Hitachi Asia, Ltd.; and (5) Hitachi Electronic Devices (USA) Inc. (collectively, "Hitachi");

(ii)    certifying a Settlement Class;

(iii)   appointing Plaintiffs' Interim Lead Counsel as Settlement Class Counsel;

(iv)    approving the manner and form of giving notice of the Settlement to Settlement Class members and approving the plan of allocation; and

(v)     establishing a timetable for publishing class notice, lodging objections to the terms of the Settlement, if any, and holding a hearing regarding final approval of the Settlement.

The grounds for this motion are that: (a) the Settlement is in the range of possible final approval to justify issuing notice of the Settlement to Settlement Class members and to schedule final approval proceedings; and (b) that the form and manner of providing notice regarding the matters set forth above satisfy the requirements of FRCP 23 and due process.

This motion is based upon this Notice of Motion and Motion, the following Memorandum of Law, the Declaration of R. Alexander Saveri ("Saveri Declaration") and the Proposed Order Preliminarily Approving Class Action Settlement with Hitachi, the complete files and records in this action, and such other written or oral arguments that may be presented to the Court.

The settlement agreement is attached as Exhibit 1, to the Saveri Declaration. The proposed form of Long Form Notice is attached to the Saveri Declaration as Exhibit 2. The proposed form of Summary Notice (*Wall Street Journal*) is attached to the Saveri Declaration as Exhibit 3.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs move this court for an order preliminarily approving the class settlement reached with Hitachi, Ltd.; Hitachi Displays, Ltd. (n/k/a Japan Displays Inc.); Hitachi America, Ltd.; Hitachi Asia, Ltd.; and Hitachi Electronic Devices (USA) Inc. (collectively "Hitachi" or "Settling Defendants").

The Settlement provides for payment by Hitachi of $13,450,000 for a complete release of all class members' antitrust claims against Hitachi and related entities defined in the Settlement Agreement between Plaintiffs and Hitachi, executed on November 29, 2013 ("Settlement Agreement") as "Hitachi Releasees." Declaration of R. Alexander Saveri ("Saveri Decl."), Ex. 1, ¶¶ 13, 16. Hitachi Displays has also agreed to cooperate with Plaintiffs in providing certain information regarding the allegations of the Consolidated Amended Complaint ("CAC"). *Id.*, Ex. 1, ¶ 24. In addition, Hitachi's sales remain in the case for the purpose of computing damages against the remaining non-settling Defendant. *Id.*, Ex. 1, ¶ 13. The Settlement was achieved only after extensive arms-length negotiations and represents an outstanding recovery for the class. *Id.* ¶ 22.

At this time, the Court is not being asked to determine whether the Settlement and related plan of allocation are fair, reasonable, and adequate. Rather, the question is simply whether the Settlement and the related plan of allocation are sufficiently within the range of possible approval to justify sending and publishing notice to class members and to schedule a final approval hearing.

Plaintiffs hereby seek provisional certification of a settlement class that the Settlement is contingent upon. The Settlement Class (a nationwide class of direct purchasers of CRTs and CRT Finished Products (collectively, "CRT Products") from March 1, 1995 through November 25, 2007) is identical to the settlement classes previously certified by the Court in connection with its preliminary and final approval of settlements with the Chunghwa, Philips, Panasonic, LG, and Toshiba defendants. CRTs are defined to mean Cathode Ray Tubes of any type (*e.g.*, color display tubes and color picture tubes). CRT Finished Products are those products that contain Cathode Ray Tubes—televisions and computer monitors. *Id.* ¶ 20. The Settlement is based on the sales of CRT Products (*i.e.*, both CRTs and CRT Finished Products). *Id.* ¶ 21.

2

Through this motion, Plaintiffs seek preliminary approval of the Settlement. The Court should grant preliminary approval of the Settlement because it easily satisfies the standard for preliminary approval—that is, it is within the range of possible approval to justify sending and publishing notice of the Settlement to Settlement Class members and scheduling final approval proceedings. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009); *Manual for Complex Litigation*, Fourth, § 13.14 (2004) ("*Manual*") ("First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing."). Accordingly, Plaintiffs seek an order: (i) granting preliminary approval of the Settlement; (ii) certifying the Settlement Class; (iii) appointing Saveri & Saveri, Inc. as Settlement Class Counsel; (iv) approving the manner and forms of giving notice to the Settlement Class and approving the plan of allocation; and (v) establishing a timetable for final approval of the Settlement.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Initial Filings and Motion Practice

This multidistrict litigation arises from an alleged conspiracy to fix prices of Cathode Ray Tubes ("CRTs"). In November of 2007, the first direct purchaser plaintiff filed a class action complaint on behalf of itself and all others similarly situated alleging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15. Thereafter, additional actions were filed in other jurisdictions. The JPML transferred all related actions to this Court on February 15, 2008. (Dkt. No. 122). On May 9, 2008, Saveri & Saveri, Inc. was appointed Interim Lead Class Counsel for the nationwide class of direct purchasers. (Dkt. No. 282).

On March 16, 2009, Plaintiffs filed the CAC alleging an over-arching horizontal conspiracy among the Defendants and their co-conspirators to fix prices for CRTs and to allocate markets and customers for the sale of CRTs in the United States from March 1, 1995 through November 25, 2007 (the "Class Period"). The CAC alleges that Plaintiffs and members of the Class are direct purchasers of CRTs and/or CRT Finished Products from Defendants and/or their subsidiaries and were injured because they paid more for CRTs and/or CRT Finished Products than they would

3

1   have absent defendants' illegal conspiracy. (CAC ¶¶ 213–221). Plaintiffs seek, *inter alia*, treble

2   damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. §§ 15 and 22. (CAC at p. 47).

3         Defendants filed several motions to dismiss the CAC on May 18, 2009. (*See* Dkt. Nos.

4   463–493). On March 30, 2010, this Court entered his Order approving and adopting Judge Legge's

5   previous ruling and recommendation granting in part and denying in part Defendants' Motions to

6   Dismiss. (Dkt. No. 665). On April 29, 2010, Defendants answered the CAC.

7         On March 21, 2011, pursuant to FRCP 11, certain Defendants moved to strike allegations

8   of a finished product conspiracy from the CAC. (Dkt. No. 880). After a hearing, the Special Master

9   recommended that the motion be granted and that Plaintiffs' allegations of a finished products

10  conspiracy be stricken from the complaint. (Dkt. No. 947). The Special Master also recommended

11  that "the issue of the possible impact or effect of the alleged fixing of prices of the CRTs on the

12  prices of Finished Products shall remain in the case, and is a proper subject of discovery." *Id.* at 14.

13        On June 29, 2011, Defendants moved the Court to adopt the Special Master's Report and

14  Recommendation (Dkt. No. 953) and Plaintiffs filed an objection (Dkt. No. 957). The Court set the

15  matter for hearing on September 2, 2011. (Dkt. No. 968). Prior to the hearing, on August 26, 2011,

16  the parties entered into a stipulation providing, among other things: 1) that the Special Master's

17  recommended finding that Plaintiffs violated Rule 11 be vacated; 2) that certain other aspects of

18  the Special Master's recommendations be adopted; and 3) that Plaintiffs' "allegations of the Direct

19  CAC purporting to allege a conspiracy encompassing Finished Products are Stricken from the

20  Direct CAC, provided, however, that the issue of the possible impact or effect of the alleged fixing

21  of prices of CRTs on the prices of Finished Products shall remain in the case." Plaintiffs agreed to

22  withdraw discovery requests regarding the CRT Finished Product Conspiracy claims. Defendants

23  agreed that the issue of the impact of the CRT conspiracy on the prices of the Finished Products

24  would remain in the case. (Dkt. No. 996).

25        On December 12, 2011 Defendants moved for Summary Judgment against Plaintiffs who

26  purchased CRT Finished Products only. (Dkt. No. 1013). Plaintiffs and the Direct Action Plaintiffs

27  ("DAPs") opposed the motion. On March 20, 2012, Judge Legge heard argument from all parties.

28  On May 31, 2012, the Special Master issued his Report and Recommendation that the Court grant

1    Defendants' motion for summary judgment and that judgment be entered against certain plaintiffs

2    that purchased CRT Finished Products from defendants ("R&R"). (Dkt. No. 1221).

3         The parties filed briefs in support and in opposition to adoption of the R&R. On November

4    29, 2012, the Court entered the Order Granting in Part and Denying in Part Defendants' Joint

5    Motion for Summary Judgment (Dkt. No. 1470) ("Order"). The Court found that Plaintiffs that

6    purchased a Finished Product, were "in fact indirect purchasers for purposes of antitrust standing."

7    Order at 6. The Court further found that one of the three exceptions that permit indirect purchasers

8    to pursue private treble-damages claims, outlined by the Ninth Circuit Court of Appeals in *In re*

9    *ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012), could apply to Plaintiffs. The Court ruled

10   that the "Ownership and Control Exception" created in *Royal Printing Co. v. Kimberly-Clark*

11   *Corp.*, 621 F.2d 323 (9th Cir. 1980), conferred standing on Plaintiffs to sue "insofar as they

12   purchased [Finished Products] incorporating the allegedly price-fixed CRTs from an entity owned

13   or controlled by any allegedly conspiring defendant." Order at 16. Certain defendants filed a

14   motion under 28 U.S.C. section 1292(b) requesting that the Court certify the Order for

15   interlocutory appeal. (Dkt. No. 1499). The Court denied defendants' request. (Dkt. No. 1569).

16        On May 14, 2013, Plaintiffs moved for class certification. Defendants filed their opposition

17   on September 11, 2013. On November 11, 2013, Plaintiffs filed their reply. The matter is now fully

18   briefed. A hearing on Plaintiffs' Motion for Class Certification has not yet been scheduled.

19        **B.      Discovery**

20        In September of 2008, the first of several stays prohibiting Plaintiffs from obtaining merits

21   discovery was entered by this Court. (Dkt. Nos. 379, 425, and 590). On June 4, 2008, Plaintiffs'

22   propounded their First Set of Limited Document Requests.

23        On March 12, 2010, after the partial stay of discovery was lifted, Plaintiffs propounded

24   their Second Set of Document Requests and First Set of Interrogatories. On October 27, 2011, after

25   extensive meet and confers and several motions to compel, the Court issued its Report Regarding

26   Case Management Conference No. 4 in which it set the middle of December, 2011 as the deadline

27   for the completion of substantial discovery by all parties. (Dkt. Nos. 1007, 1008). Plaintiffs have

28   now received over 5 million pages of documents produced by Defendants.

5

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITH THE HITACHI DEFENDANTS; Master File No. CV-07-5944-SC

1   On April 3, 2013, the Court entered the Special Master's Scheduling Order and Order Re

2   Discovery and Case Management Protocol. (Dkt. Nos. 1127, 1128). The Scheduling Order set

3   August 30, 2013 as the date for completion of all fact and expert discovery. Beginning in June of

4   2012, after meeting and conferring with defendants regarding the scope and topics of 30(b)(6)

5   witnesses, Plaintiffs began taking 30(b)(6) depositions of the various defendants. To date, in

6   coordination with the indirect purchasers, the Attorneys General, and the opt-out plaintiffs,

7   Plaintiffs have deposed over 25 corporate representatives. Beginning in December of 2012,

8   Plaintiffs began taking merits depositions. Over 20 merits depositions have been completed to date.

9   **C.     Prior Settlements**

10  On October 19, 2012, the Court granted final approval of the first two settlements reached

11  in this case with: (1) Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn.

12  Bhd. ("CPT"), and (2) Koninklijke Philips Electronics N.V., Philips Electronics North America

13  Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria

14  Electronica Ltda. ("Philips").

15  On December 27, 2012, the Court granted final approval of the third settlement reached in

16  this case with Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic

17  Corporation of North America, and MT Picture Display Co., Ltd., ("Panasonic").

18  On April 1, 2013, the Court granted final approval of the fourth settlement reached in this

19  case with defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan

20  Taipei Co., Ltd. ("LG").

21  On July 23, 2013, the Court granted final approval of the fifth settlement reached in this case

22  with defendants Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America

23  Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. ("Toshiba").

24  In each of the prior settlements—CPT, Philips, Panasonic, LG, and Toshiba, the Court

25  certified a Settlement Class for the settlements, appointed Saveri & Saveri, Inc. as Settlement Class

26  Counsel, and found that the manner and form of providing notice of the settlements to class

27  members was the best notice practicable under the circumstances (*See* Dkt. Nos. 1412, 1508, 1621,

28  1791), and the Court entered final judgments of dismissal with respect to the settling (and released)

6

1    defendants (*See* Dkt. Nos. 1413, 1414, 1509, 1510, 1622, 1792).

2        The Hitachi Settlement is the sixth settlement reached in this action.

3    **III.    THE TERMS OF THE SETTLEMENT**

4        Plaintiffs have executed the Settlement Agreement with Hitachi. As explained below, the

5    Settlement provides for a release of class members' claims in exchange for a substantial cash

6    payment and cooperation with Plaintiffs regarding the price-fixing claims asserted in the CAC. The

7    Settlement requests certification of a settlement class of direct purchasers of CRTs and/or CRT

8    Finished Products from Defendants and their co-conspirators from March 1, 1995 through

9    November 25, 2007. Hitachi and Plaintiffs have stipulated to a class as it is defined in Plaintiffs'

10   operative complaint. Saveri Decl., Ex. 1, ¶ 1.

11       **A.    The Settlement.**

12       In exchange for dismissal with prejudice and a release of all claims as defined in paragraph

13   13 of the Settlement Agreement, Hitachi has agreed to pay $13,450,000 in cash, to be deposited

14   into a guaranteed escrow account within 30 days of execution of the Agreement. *Id.*, Ex. 1, ¶ 16.

15       Hitachi Displays has agreed to cooperate with Plaintiffs in the prosecution of this action by:

16   (1) providing copies of all discovery (including, *inter alia*, all documents, interrogatories, requests

17   for admission, etc.) Hitachi produces to any other party in the Action; (2) providing a declaration

18   and/or custodian establishing the authenticity of Hitachi's transactional data, and foundation of any

19   Hitachi document or data needed at summary judgment or trial; (3) allowing Counsel to question

20   percipient witnesses noticed for deposition by any other party in the Action with whom Hitachi has

21   not settled; and 4) using its best efforts to make available three persons for trial testimony, each of

22   whom is, at the time of trial, a director, officer, and/or employee of Hitachi Displays whom Lead

23   Counsel reasonably believes to have knowledge regarding Plaintiffs' claims. *Id.*, Ex. 1, ¶ 24.

24       Hitachi's sales shall remain in the case for purposes of computing damages against the non-

25   settling defendants. *Id.*, Ex. 1, ¶ 13. However, Hitachi has the right to withdraw from the

26   Settlement if class members who purchased, in total, 80% or more of Hitachi's sales of CRT

27   Products in the United States opt out of the Settlement Class. *Id.*, Ex. 1, ¶ 18(a).

28       Upon the Settlement becoming final, Plaintiff and Settlement Class members will relinquish

7

1    any claims against "Hitachi Releasees" (defined at *Id.*, Ex. 1, ¶ 3). *Id.*, Ex. 1, ¶ 13. The release,

2    however, excludes claims for product defects or personal injury. *Id.* The Settlement becomes final

3    upon: (i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of a final

4    judgment of dismissal with prejudice as to Hitachi; and (ii) the expiration of the time for appeal or, if

5    an appeal is taken, affirmance of the judgment with no further possibility of appeal. *Id.*, Ex. 1, ¶ 11.

6         Subject to the approval and direction of the Court, the Settlement payment, plus interest,

7    will be used to: (i) make a distribution to Settlement Class members in accordance with a proposed

8    plan of allocation to be approved by the Court (*Id.*, Ex. 1, ¶ 21); (ii) pay Class Counsel's attorneys'

9    fees, costs, and expenses as may be awarded by the Court (*Id.*, Ex. 1, ¶ 22–23.); and (iii) pay all

10   taxes associated with any interest earned on the escrow account. (*Id.*, Ex. 1, ¶ 17(f)). In addition,

11   the Settlement provides that $300,000 may be used to pay for Notice costs and future costs

12   incurred in the administration and distribution of the Settlement payments (*Id.*, Ex. 1, ¶ 19(a)).

13   **IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT**

14        **A.    Class Action Settlement Procedure.**

15        A class action may not be dismissed, compromised, or settled without the approval of the

16   Court. Judicial proceedings under Rule 23 have led to a defined procedure and specific criteria for

17   class action settlement approval. The Rule 23(e) settlement approval procedure includes three

18   distinct steps: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of

19   the proposed settlement to all affected class members; and (3) a formal fairness hearing, at which

20   class members may be heard regarding the proposed settlement, and at which counsel may

21   introduce evidence and present argument concerning its fairness, adequacy, and reasonableness.

22   This procedure safeguards class members' due process rights and enables the Court to fulfill its

23   role as the guardian of class interests. *See Newberg* §§ 11.22, *et seq*.

24        By way of this motion, Plaintiffs respectfully request that the Court take the first steps in

25   the settlement approval process, namely to preliminarily approve the Hitachi Settlement,

26   provisionally certify the proposed Settlement Class, appoint Saveri & Saveri, Inc. as Class Counsel

27   for the Settlement Class, schedule a final approval hearing, and approve notice to the class.

28

1

    **B.      Standard for Settlement Approval.**

2          Rule 23(e) requires court approval of any settlement of claims brought on a class basis.

3    "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in

4    class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). *See also*

5    *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pac. Enter. Sec.*

6    *Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th

7    Cir. 1992). "Voluntary out of court settlement of disputes is 'highly favored in the law' and

8    approval of class action settlements will be generally left to the sound discretion of the trial judge."

9    *Wellman v. Dickinson*, 497 F. Supp. 824, 830 (S.D.N.Y. 1980) (citations omitted). Courts have

10   particularly recognized that compromise is favored for antitrust litigation—which is notoriously

11   difficult and unpredictable. *See In re Shopping Carts Antitrust Litig.*, MDL No. 451-CLB, M-21-

12   29, 1983 WL 1950, at *5 (S.D.N.Y. Nov. 18, 1983); *West Virginia v. Chas. Pfizer & Co.*, 314 F.

13   Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971).

14         The purpose of the Court's preliminary evaluation of the proposed settlement is to

15   determine whether it is within "the range of reasonableness," and, thus whether notice to the Class

16   of the settlement's terms and conditions, and scheduling of a formal fairness hearing, is warranted.

17   Preliminary approval should be granted "[w]here the proposed settlement appears to be the product

18   of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly

19   grant preferential treatment to class representatives or segments of the class and falls within the

20   range of possible approval." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102

21   (S.D.N.Y. 1997). Application of these factors supports granting preliminary approval.

22         The approval of a proposed settlement of a class action is a matter of discretion for the trial

23   court. *Churchill Vill.*, 361 F.3d at 575. In exercising that discretion, however, courts recognize that

24   a settlement approval hearing should not "be turned into a trial or rehearsal for trial on the merits."

25   *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Furthermore, courts

26   must give "proper deference" to the settlement agreement, because "the court's intrusion upon

27   what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must

28   be limited to the extent necessary to reach a reasoned judgment that the agreement is not the

9

product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (quotations omitted).

To grant preliminary approval of the settlement, the Court need only find that it falls within "the range of reasonableness." *Newberg* § 11.25. The *Manual* characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual* § 21.632. The *Manual* summarizes the preliminary approval criteria as follows:

> Fairness calls for a comparative analysis of the treatment of the class members vis-à-vis each other and vis-à-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted to what class members might have obtained without using the class action process.

*Manual* § 21.62. A proposed settlement may be finally approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at 1276. Preliminary approval requires only that the terms of the proposed settlement fall within the "range of possible approval." *See In re Tableware Antitrust Litigation*, 484 F. Supp. 2d at 1079; *Vasquez*, 670 F. Supp. 2d at 1125. It amounts to a determination that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. *Manual* § 13.14. While consideration of the requirements for *final* approval is unnecessary at this stage, all of the relevant factors weigh in favor of the settlement proposed here. As shown below, the proposed Settlement is fair, adequate, and reasonable. Therefore, the Court should allow notice of the Settlement to be disseminated to the Settlement Class.

**C.      The Proposed Settlement Is Within The Range Of Reasonableness.**

The proposed Settlement meets the standards for preliminary approval. The Settlement is entitled to "an initial presumption of fairness" because it is the result of arm's length negotiations among experienced counsel. *Newberg* § 11.41. Because it is provisional, courts grant preliminary approval where the proposed settlement lacks "obvious deficiencies" that raise doubts about the fairness of the settlement. *See, e.g.*, *In re Vitamins Antitrust Litig.*, Nos. MISC. 99–197(TFH), 2001

10

1   WL 856292, at *4 (D.D.C. July 25, 2001).

2          First, the settlement was a reached as a result of several mediation sessions conducted by

3   Judge Vaughn Walker (Ret.). The parties exchanged mediation briefs and attended a one-day

4   mediation session on March 26, 2013. On May 14, 2012, the parties again exchanged briefs and

5   attended another one-day mediation session. While no settlement was reached at the mediation

6   sessions, the parties continued their discussions with the assistance of Judge Walker and reached an

7   agreement in principle on several material terms on or about September 12, 2013. The negotiations

8   were thorough and hard fought.  They were contested and conducted at arms-length in the utmost

9   good faith. Saveri Decl. ¶ 22. Counsel's judgment that the Settlement is fair and reasonable is

10  entitled to great weight. *Nat'l Rural Telcoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D.

11  Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely

12  acquainted with the facts of the underlying litigation."); *accord Bellows v. NCO Fin. Sys.*, No. 3:07-

13  cv-01413-W-AJB, 2008 WL 5458986, at *6–7 (S.D. Cal. Dec. 10, 2008); *Rutter & Wilbanks Corp.*

14  *v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Wilkerson v. Martin Marietta Corp.*, 171

15  F.R.D. 273, 288-89 (D. Colo. 1997); *Officers for Justice*, 688 F.2d at 625. In fact, "the trial judge,

16  absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of

17  counsel." *Nat'l Rural Telcoms.*, 221 F.R.D. at 528 (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1330

18  (5th Cir. 1977)).

19         Second, the consideration for the Settlement is substantial. The Settlement provides for a

20  payment of $13,450,000. Saveri Decl. ¶ 23. The Settlement compares favorably to settlements

21  finally approved in other price-fixing cases. *See, e.g.*, *Fisher Bros. v. Mueller Brass Co.*, 630 F.

22  Supp. 493, 499 (E.D. Pa. 1985). It is also comparable to the settlements already previously

23  approved by the Court (CPT $10,000,000; Philips $15,000,000 (after opt-out reduction); Panasonic

24  $17,500,000; LG $25,000,000; and Toshiba $13,500,000).

25         Third, the Settlement calls for Hitachi Displays to cooperate with Plaintiffs. Saveri Decl. ¶

26  25. This is a valuable benefit because it will save time, reduce costs, and provide access to

27  information, witnesses, and documents regarding the CRT conspiracy that might otherwise not be

28  available to Plaintiffs. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D.

11

1   Md. 1983) (a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a

2   court to consider in approving a settlement"). "The provision of such assistance is a substantial

3   benefit to the classes and strongly militates toward approval of the Settlement Agreement." *In re*

4   *Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). *See also In re Corrugated*

5   *Container Antitrust Litig.*, Case No. M.D.L. 310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981)

6   ("The cooperation clauses constituted a substantial benefit to the class."). In addition, "[i]n

7   complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class

8   actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (quoting *Manual*,

9   Second, § 30.46 (1986)).

10          Finally, the settlement preserves Plaintiffs' right to litigate against the non-settling

11  Defendants for the entire amount of Plaintiffs' damages based on joint and several liability. Saveri

12  Decl. ¶ 24. *See also Corrugated Container*, 1981 WL 2093, at *17.

13          For all the aforementioned reasons, the Settlement is within the range of final approval as

14  fair, reasonable, and adequate.

15  **V.      THE COURT SHOULD PROVISIONALLY CERTIFY THE HITACHI
            SETTLEMENT CLASS**
16

17          The Court should provisionally certify the settlement class contemplated by the Settlement

18  Agreement. It is well-established that price-fixing actions like this one are appropriate for class

19  certification and many courts have so held. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*,

20  267 F.R.D. 291 (N.D. Cal. 2010) (Illston J.) ("*LCD*"); *In re Static Random Access Memory (SRAM)*

21  *Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) (Wilken J.); *In*

22  *re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166 (N.D. Cal. June

23  5, 2006) (Hamilton J.) ("*DRAM*"); *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D.

24  Cal. 2005) (Jenkins J.) ("*Rubber Chems.*"); *In re Citric Acid Antitrust Litig.*, No. 95-1092, C-95-

25  2963 FMS, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996) (Smith J.) ("*Citric Acid"*); *In re Sorbates*

26  *Direct Purchaser Antitrust Litig.*, No. C 98-4886 MMC (N.D. Cal. Mar. 11, 2002) (Order Granting

27  Plaintiffs' Motion for Class Certification; Vacating Hearing (Chesney, J.)); *In re Methionine*

28  *Antitrust Litig.*, Master File No. C-99-3491-CRB (N.D. Cal. Dec. 21, 2000 (Order Granting Motion

12

1    for Class Certification (Breyer, J.)); *In Re: Sodium Gluconate Antitrust Litig.*, Master File No. C

2    97-4142 CW (N.D. Cal. Sept. 24, 1998) (Order Granting Class Certification) (Wilken, J.)).

3          The Settlement Class stipulated by the parties and contemplated by the Settlement

4    Agreement is the following:

> All persons and entities who, between March 1, 1995 and November 25, 2007,
> directly purchased a CRT Product in the United States from any defendant or
> subsidiary or affiliate thereof, or any co-conspirator. Excluded from the Class are
> defendants, their parent companies, subsidiaries and affiliates, any co-conspirator,
> all governmental entities, and any judges or justices assigned to hear any aspect of
> this action.

9          The term CRT Products refers to all forms of Cathode Ray Tubes (CRTs), as well

10   as to devices that contain CRTs. Thus, CRT Products include color picture tubes (CPTs),

11   color display tubes (CDTs), monochrome display tubes, and also the finished products

12   that contain them – televisions and monitors.

13         This Settlement Class is identical to the classes already provisionally certified by

14   the Court in connection with the preliminary approval of the CPT, Philips, Panasonic,

15   LG, and Toshiba settlements.[1]

16         **A.      The Requirements of Rule 23 in the Context of the Settlement Class**

17         Rule 23 provides that a court must certify an action as a class action where, as here,

18   plaintiffs satisfy the four prerequisites of Rule 23(a), and one of the three criteria set forth in Rule

19   23(b). Rule 23(a) provides that a class may be certified if: (1) the class is so numerous that joinder

20   of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

21   claims or defenses of the representative parties are typical of the claims or defenses of the class;

22   and (4) the representative parties will fairly and adequately protect the interests of the class.

23         Rule 23(b)(3) provides that "an action may be maintained as a class action" if:

24   _____

25   [1] *See* Order Granting Settlement Class Certification And Preliminary Approval of Class Action
     Settlements with CPT And Philips (Dkt. No. 1179) (May 3, 2012); Order Granting Class

26   Certification And Preliminary Approval of Class Action Settlements with Panasonic (Dkt. No.
     1280) (July 30, 2012); Order Granting Class Certification And Preliminary Approval of Class

27   Action Settlements with LG Defendants (Dkt. No. 1441) (Nov. 13, 2012); Order Granting Class
     Certification And Preliminary Approval of Class Action Settlements with Toshiba Defendants

28   (Dkt. No. 1603) (March 18, 2013).

1
2

the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

3
4
5
6
7
8
9
10
11
12
13

The Rule 23(b)(3) "manageability" requirements, however, need not be satisfied in order to certify a class in the settlement context: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). *See also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005). As Judge Posner has explained, manageability concerns that might preclude certification of a litigated class may be disregarded with a settlement class "because the settlement might eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004). *See also In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186, 190, 195 (S.D.N.Y. 2005) (settlement class may be broader than litigated class because settlement resolves manageability/predominance concerns).

14
15
16
17
18

A Rule 23 determination is procedural and does not concern whether a plaintiffs will ultimately prevail on the substantive merits of their claims. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177–78 (1974); *Tchoboian v. Parking Concepts*, 2009 WL 2169883, *3–4 (C.D. Cal. July 16, 2009); *Gabriella v. Wells Fargo Fin., Inc.*, 2008 WL 3200190, *2 (N.D. Cal. Aug. 4, 2008).

19          **B.      The Requirements of Rule 23(a) Are Satisfied in This Case.**

20              **1.   The Class Is So Numerous That Joinder of All Members Is Impracticable**

21
22
23
24
25
26
27
28

The first requirement for maintaining a class action under Rule 23 is that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). To satisfy this prerequisite, Plaintiff need not allege the precise number or identity of class members. *Rubber Chems.*, 232 F.R.D. at 350 ("Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity."); *In re Sugar Industry Antitrust Litig.*, MDL Dkt. No. 201, 1976 WL 1374, at *12 (N.D. Cal. May 21, 1976) ("*Sugar*") (same). Rather, a finding of numerosity may be supported by common sense assumptions. *Rubber Chems.*, 232 F.R.D. at 350; *Citric Acid*, 1996 WL 655791, at *3.

14

1   Courts have not defined the exact number of putative class members that is required for

2   class certification but have generally found that the numerosity requirement is satisfied when class

3   members exceed forty. *Newberg* § 18:4. *See also Or. Laborers-Emps. Health & Welfare Trust

4   *Fund v. Philip Morris, Inc.*, 188 F.R.D. 365, 372–73 (D. Or. 1998). Geographic dispersal of

5   plaintiffs may also support a finding that joinder is "impracticable." *Rubber Chems.*, 232 F.R.D. at

6   350–51; *LCD*, 267 F.R.D. at 300 (given the nature of the LCD market, "common sense dictates

7   that joinder would be impracticable.").

8   In this case, the transactional data produced so far indicates that the Settlement Class

9   contains thousands of members dispersed across the country who directly purchased CRT Products

10   from the Settling Defendants and their co-conspirators from March 1, 1995 through November 25,

11   2007. Saveri Decl. ¶ 27. Thus, the proposed Settlement Class readily satisfies the numerosity

12   requirement of Rule 23, as the Court has already ruled in its previous settlement approval orders.

13   **2. This Case Involves Questions of Law and Fact Common to the Class**

14   The second requirement for class certification under Rule 23 is that "there are questions of

15   law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has ruled that the

16   commonality requirement is to be "construed permissively." *Hanlon*, 150 F.3d at 1019. A court

17   must assess if "the class is united by a common interest in determining whether a defendant's

18   course of conduct is in its broad outlines actionable." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th

19   Cir. 1975). This requirement is easily met: it is satisfied by the existence of a single common issue.

20   *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa. 1999) ("*Flat Glass*").

21   The commonality requirement is readily satisfied here. "Courts consistently have held that

22   the very nature of a conspiracy antitrust action compels a finding that common questions of law

23   and fact exist." *Rubber Chems.*, 232 F.R.D. at 351 (quoting *Sugar*, 1976 WL 1374, at *13) (internal

24   quotation marks omitted). Here, there are numerous questions of law and fact common to the

25   Settlement Class that are at the heart of this case. These common questions of law and fact include

26   the seminal issue of whether the Defendants engaged in a price-fixing agreement which injured the

27   class when they paid more for CRTs and/or CRT Finished Products than they would have, absent

28   the alleged price-fixing conspiracy. The overarching and unifying common questions of law and

15

fact predominate in this case and include:

(1)    whether Settling Defendants and their Co-Conspirators conspired to raise, fix, stabilize or maintain the prices of CRTs;

(2)    whether the alleged conspiracy violated Section 1 of the Sherman Act;

(3)    the duration and extent of the conspiracy;

(4)    whether Settling Defendants' conduct caused prices of CRTs and/or CRT Finished Products to be set at artificially high and non-competitive levels; and

(5)    whether Settling Defendants' conduct injured Plaintiffs and other members of the Class and, if so, the appropriate class-wide measure of damages.

These issues constitute a common core of questions focusing on the central issue of the existence and effect of the alleged conspiracy and plainly satisfy the commonality requirement of Rule 23(a)(2), as the Court has already ruled in its previous preliminary approval orders. *See Estate of Jim Garrison v. Warner Bros., Inc.*, Civ. No. CV 95–8328 RMT, 1996 WL 407849, at *2 (C.D. Cal. June 25, 2006) (Plaintiffs' allegations "which constitute the classic hallmark of antitrust class actions under Rule 23 . . . are more than sufficient to satisfy the commonality requirement"); *Flat Glass*, 191 F.R.D. at 479 ("Given plaintiffs' allegation of a § 1 conspiracy, the existence, scope and efficacy of the alleged conspiracy are certainly questions that are common to all class members."). Similar common questions have been found to satisfy the commonality requirement in other antitrust class actions in the Northern District of California. *DRAM*, 2006 WL 1530166, at *3 ("the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist."); *Rubber Chems.*, 232 F.R.D. at 351 (same); *LCD*, 267 F.R.D. at 300 (same).

    **3.  The Claims of the Representative Parties are Typical of the Claims of the Class**

The third requirement for maintaining a class action under Rule 23(a) is that "'the claims or defenses of the representative parties [be] typical of the claims or defenses of the class.' . . . [R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020 (quoting Fed R. Civ. P. 23(a)(3)). "Generally, the class representatives 'must be part of the class and possess the same interest and suffer the same injury as the class members.'" *LCD*, 267 F.R.D. at 300 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

1

> The overarching scheme is the linchpin of plaintiffs' . . . complaint, regardless of the product purchased, the market involved or the price ultimately paid. Furthermore, the various products purchased and the different amount of damage sustained by individual plaintiffs do not negate a finding of typicality, provided the cause of those injuries arises from a common wrong.

2

3

4

*Flat Glass*, 191 F.R.D. at 480.

5

Courts have generally found the typicality requirement to be satisfied in horizontal price-

6

fixing cases. As explained in *In re Chlorine & Caustic Soda Antitrust Litig.*:

7

8

> Plaintiffs seek to recover treble damages from defendants measured by the alleged overcharge resulting from defendants' conspiracy to fix prices. In order to prevail on the merits in this case the plaintiffs will have to prove the same major elements that the absent members of the class would have to prove. Those elements are a conspiracy, its effectuation and resulting damages. As such, the claims of the plaintiffs are not antagonistic to and are typical of the claims of the other putative class members.

9

10

11

12

116 F.R.D. 622, 626 (E.D. Pa. 1987). *See also Rubber Chems.*, 232 F.R.D. at 351; *Citric Acid*,

13

1996 WL 655791, at *3 ("The alleged underlying course of conduct in this case is defendants'

14

conspiracy to fix the price of citric acid and to allocate customers among themselves . . . . The legal

15

theory that plaintiffs rely on is antitrust liability. Because plaintiffs and all class members share

16

these claims and this theory, the representatives' claims are typical of all.").

17

Plaintiffs here allege a conspiracy to fix, raise, maintain, and stabilize the price of CRTs

18

and/or CRTs contained in CRT Finished Products sold in the United States. Settlement Class

19

members' claims are based on the same legal theories. Plaintiffs would have to prove the same

20

elements that absent members would have to prove: the existence, scope, and efficacy of the

21

conspiracy. Again, as the Court has already ruled in its previous preliminary and final approval

22

orders, the typicality requirement of Rule 23(a)(3) is plainly satisfied.

23

> **4.   The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class**

24

25

The fourth requirement of Rule 23 mandates that the representative plaintiffs fairly and

26

adequately represent the class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement consists of two

27

separate inquiries. First, the representative plaintiffs must not possess interests which are

28

antagonistic to the interests of the class. Second, plaintiffs must be represented by counsel of

17

1   sufficient diligence and competence to fully litigate the claim. *Hanlon*, 150 F.3d at 1020; *Lerwill v.*

2   *Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

3          The representative plaintiffs here meet both aspects of the adequacy test. There are no

4   actual or potential conflicts of interest between the representative plaintiffs and the members of the

5   class. Plaintiffs, as well as each member of the class, were overcharged for CRTs and/or CRT

6   Finished Products and have a mutual interest in establishing liability and recovering damages. The

7   basis of the claims against Defendants is a price-fixing conspiracy that artificially raised the prices

8   charged to every Class member, each of whom directly purchased CRTs and/or CRT Finished

9   Products from one or more of the Defendants (or their subsidiaries or affiliates) during the Class

10  Period. Defendants, therefore, allegedly injured Plaintiffs and the Settlement Class members in the

11  same manner. Plaintiffs seek relief substantially identical to that sought by every other Settlement

12  Class member. Accordingly, the interests of the representative plaintiffs and the putative class

13  members in recovering the overcharges are the same.

14         Moreover, Plaintiffs have retained highly capable and well-recognized counsel with

15  extensive experience in antitrust cases. Plaintiffs' counsel, Saveri & Saveri, Inc., was appointed by

16  the Court as Interim Lead Counsel on May 9, 2010. It has undertaken the responsibilities assigned

17  to it by the Court and has directed the efforts of other Plaintiffs' counsel in vigorously prosecuting

18  this action. Plaintiffs' counsel has successfully prosecuted numerous antitrust class actions on

19  behalf of injured purchasers throughout the United States. Plaintiffs' counsel is capable of, and

20  committed to, prosecuting this action vigorously on behalf of the Class. Therefore, as the Court has

21  already ruled in its previous preliminary and final approval orders, the named plaintiffs satisfy the

22  requirements of Rule 23(a)(4).

23         **C.      The Proposed Class Satisfies The Requirements Of Rule 23(b)(3)**

24         Once it is determined that the proposed class satisfies the requirements of Rule 23(a), a

25  class must be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact

26  common to class members predominate over any questions affecting only individual members, and

27  that a class action is superior to other available methods for fairly and efficiently adjudicating the

28  controversy." Fed. R. Civ. P. 23(b)(3). "Judicial economy and fairness are the focus of the

predominance and superiority requirements." *Or. Laborers-Emps.*, 188 F.R.D. at 375. As the Court ruled in its previous preliminary approval orders, Plaintiffs' claims meet these requirements.

### 1.   Common Questions of Law and Fact Predominate Over Individual Questions

As the United States Supreme Court has noted, predominance is a test that is "readily met" in antitrust cases. *Amchem Prods.*, 521 U.S. at 625; *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004). The overwhelming weight of authority holds that in horizontal price-fixing cases, the predominance requirement is readily satisfied. *LCD*, 267 F.R.D. at 310 ("Courts have frequently found that whether a price-fixing conspiracy exists is a common question that predominates over other issues because proof of an alleged conspiracy will focus on defendants' conduct and not on the conduct of individual class members.")

In determining whether common questions predominate in a price fixing case, "the focus of this court should be principally on issues of liability." *Sugar*, 1976 WL 1374, at \*22; *Citric Acid*, 1996 WL 655791, at \*6; *see also Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("*Culinary/Bartender*"); *Hanlon*, 150 F.3d at 1022 ("A common nucleus of facts and potential legal remedies dominates this litigation").

Common questions need only predominate; they need not be dispositive of the litigation as a whole. *In re Lorazepam & Clorazeopate Antitrust Litig.*, 202 F.R.D. 12, 29 (D.D.C. 2001); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 339 (E.D. Mich. 2001); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995). The predominance standard is met "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996) ("*NASDAQ*").

In Section 1 Sherman Act class cases, the existence of a conspiracy has been recognized as the overriding issue common to all plaintiffs. As the court acknowledged in *Rubber Chems.*: "the great weight of authority suggests that the dominant issues in cases like this are whether the charged conspiracy existed and whether price-fixing occurred." 232 F.R.D. at 353. *See also In re Cement and Concrete Antitrust Litig.*, MDL Dkt. No. 296, 1979 WL 1595, at \*2 (D. Ariz. March 9, 1979) ("[T]he asserted nationwide price fixing conspiracy presents questions of law and fact common to the class members which predominate over any questions affecting only individual

19

members."); *Sugar*, 1976 WL 1374, at *23 ("It is the allegedly unlawful horizontal price-fixing arrangement among defendants that, in its broad outlines, comprises the predominating, unifying common interest as to these purported plaintiff representatives and all potential class members."); *Mularkey v. Holsum Bakery, Inc.*, 120 F.R.D. 118, 122 (D. Ariz. 1988). Courts in this district and elsewhere have held that this issue alone is sufficient to satisfy the Rule 23(b)(3) predominance requirement. *See, e.g.*, *Rubber Chems*, 232 F.R.D. at 353; *Citric Acid*, 1996 WL 655791, at *8.

Furthermore, courts have uniformly found predominant common questions of law or fact with respect to the existence, scope, and effect of the alleged conspiracy. *See Citric Acid*, 1996 WL 655791, at *6 (common questions include whether there was a conspiracy, whether prices were fixed pursuant to the conspiracy, and whether the prices plaintiffs' paid were higher than they should have been); *Estate of Jim Garrison*, 1996 WL 407849, at *3 ("Antitrust price fixing conspiracy cases by their nature deal with common legal and factual questions of the existence, scope and effect of the alleged conspiracy." (citation omitted)); *NASDAQ*, 169 F.R.D. at 518.

In the current litigation, common issues relating to the existence of the CRT conspiracy and Defendants' acts in furtherance of the conspiracy predominate over any questions arguably affecting only individual Settlement Class members because they are the central issue in the case and proof is identical for every member of the Settlement Class. If separate actions were filed by each Settlement Class member, each would have to establish the existence of the same conspiracy and would depend on identical evidence, and each would prove damages using identical economic models. The evidence needed to prove how Defendants implemented and enforced their conspiracy to set prices of CRTs at supra-competitive levels will be common for all class members. These issues pose predominant common questions of law and fact.

### 2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Case.

Rule 23(b)(3) provides that certification of a case is appropriate if class treatment "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). It sets forth four factors to be considered: (1) the interest of members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of any

1   litigation concerning the controversy already commenced by members of the class; (3) the

2   desirability of concentrating the litigation of the claims in a particular forum; and (4) the

3   difficulties likely to be encountered in the management of a class action. *Id.* Prosecuting this action

4   as a class action is clearly superior to other methods of adjudicating this matter.

5   The alternative to a class action—many duplicative individual actions—would be

6   inefficient and unfair. "Numerous individual actions would be expensive and time-consuming and

7   would create the danger of conflicting decisions as to persons similarly situated." *Lerwill*, 582 F.2d

8   at 512. Further, it would deprive many class members of any practical means of redress. Because

9   prosecution of an antitrust conspiracy case against economically powerful defendants is difficult

10  and expensive, class members with all but the largest claims would likely choose not to pursue

11  their claims. *See  Culinary/Bartender*, 244 F.3d at 1163. Most class members would be effectively

12  foreclosed from pursuing their claims absent class certification. *Hanlon*, 150 F.3d at 1023 ("Many

13  claims [that] could not be successfully asserted individually . . . would not only unnecessarily

14  burden the judiciary, but would prove uneconomic for potential plaintiffs."). The proposed

15  Settlement Class satisfies the requirements of Rule 23(b)(3).

16  **D.      The Court Should Appoint Saveri & Saveri, Inc. as Settlement Class Counsel.**

17  Fed. R. Civ. P. 23(c)(1)(B) states that "[a]n order that certifies a class action . . . must

18  appoint class counsel under Rule 23(g)." Rule 23(g)(1)(A) states that "[i]n appointing class

19  counsel, the court (i) must consider: [1] the work counsel has done in identifying or investigating

20  potential claims in the action; [2] counsel's experience in handling class actions, other complex

21  litigation, and the types of claims asserted in the action; [3] counsel's knowledge of the applicable

22  law; and [4] the resources counsel will commit to representing the class."

23  The law firm of Saveri & Saveri, Inc. seeks to be appointed as Settlement Class Counsel.

24  The firm is willing and able to vigorously prosecute this action and to devote all necessary

25  resources to obtain the best possible result. The work done to date supports the conclusion that they

26  should be appointed as Settlement Class Counsel. *See, e.g.*, *Harrington v. City of Albuquerque*, 222

27  F.R.D. 505, 520 (D.N.M. 2004). The firm meets the criteria of Rule 23(g)(1)(C)(i). *Cf. Farley v.*

28

1    *Baird, Patrick & Co., Inc.* 1992 WL 321632, at *5 (S.D.N.Y. 1992) ("Class counsel's competency

2    is presumed absent specific proof to the contrary by defendants.").

3    **VI.    PROPOSED PLAN OF NOTICE**

4         Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class

5    members who would be bound by" a proposed settlement, voluntary dismissal, or compromise.

6         Class members are entitled to the "best notice that is practicable under the circumstances"

7    of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B).

8    The notice must state in plain, easily understood language:

9         •    the nature of the action,
          •    the definition of the class certified,
10        •    the class claims, issues, or defenses,
          •    that a class member may enter an appearance through an attorney if the member so
11             desires,
          •    that the court will exclude from the class any member who requests exclusion,
12             stating when and how members may elect to be excluded, and
          •    the binding effect of a class judgment on class members under Rule 23(c)(3).
13   *Id.*

14        Notice to the class must be "the best notice practicable under the circumstances, including

15   individual notice to all members who can be identified through reasonable effort." *Amchem Prods.*,

16   521 U.S. at 617. Plaintiffs propose that the Long Form Notice in the form attached as Exhibit 2 to

17   the Saveri Decl. ("Notice") be given by mail or email to each Settlement Class Member who may,

18   by reasonable efforts, be identified. Plaintiffs propose to use the electronic lists of class members

19   with their mail and e-mail addresses that Defendants produced after the Preliminary Approval of

20   the Chunghwa Picture Tubes and Philips' settlements.

21        In addition, Plaintiffs propose that a Summary Notice in the form attached as Exhibit 3 to

22   the Saveri Decl. be published in the national edition of the *Wall Street Journal*, and that both

23   notices, along with the settlement agreement, be posted on a website accessible to Settlement Class

24   members. Publication notice is an acceptable method of providing notice where the identity of

25   specific class members is not reasonably available. *See Tableware*, 484 F. Supp. 2d at 1080.

26        Such notice plans are commonly used in class actions like this one and constitute valid, due

27   and sufficient notice to class members, and constitute the best notice practicable under the

28   circumstances. *See Moore's Federal Practice* § 23.63[8][a], § 23.63[8][b] (3d ed. 2003).

22

1    The notice program is the same as the notice programs approved by the Court with regard

2    to the settlements with Chunghwa and Philips, Panasonic, LG, and Toshiba. Saveri Decl. ¶ 29.

3    The content of the proposed notices complies with the requirements of Rule 23(c)(2)(B).

4    The form of notice is "adequate if it may be understood by the average class member." *Newberg* §

5    11.53. The Notice clearly and concisely explains the nature of the action and the terms of the

6    Settlement. It provides a clear description of who is a member of the Settlement Class and the

7    binding effects of class membership. It explains how to exclude oneself from the Settlement Class,

8    how to object to the Settlement, how to obtain copies of papers filed in the case and how to contact

9    Class counsel. It explains that Plaintiffs are deferring their request for attorneys' fees but that any

10   future request will not exceed one-third as stipulated in the Settlement

11   The Summary Notice also identifies class members and explains the basic terms of the

12   Settlement and the consequences of class membership. It also explains how to obtain more

13   information about the Settlement. The Summary Notice will be published after the Notice is mailed

14   and e-mailed to class members.

15   The notice program will consist of both mailed and published notice, as well as posting of

16   the Notice on the Internet. This notice program will be similar to that employed by other direct

17   purchaser antitrust cases, and fulfills all the requirements of Rule 23 and due process. *See, e.g.*,

18   *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374–75 (9th Cir. 1993); *In re AOL Time Warner*

19   *ERISA Litig.*, No. 02 Civ. 8853 SWK, 2006 WL 2789862, at *9–10 (S.D.N.Y. Sept. 27, 2006).

20   Accordingly, the Court should preliminarily approve both.

21   **VII.    PROPOSED PLAN OF ALLOCATION**

22   Plaintiffs propose that distribution of settlement funds be deferred until the termination of

23   the case, when there might be additional settlement funds from other settling defendants to

24   distribute, and because piecemeal distribution of each settlement would be expensive, time-

25   consuming, and likely to cause confusion to class members. Deferring allocation of settlement

26   funds is a common practice in cases where claims against other defendants remain. *See Manual* §

27   21.651. This is also the same procedure the Court approved in connection with the CPT, Philips,

28   Panasonic, LG, and Toshiba settlements. Saveri Decl. ¶ 30.

23

1    Although Plaintiffs propose deferring the distribution of funds until a later date, Plaintiffs

2    propose informing the class that any distribution will be made on a *pro rata* basis. A plan of

3    allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that

4    applies to approval of class settlements. *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152,

5    1154 (N.D. Cal. 2001). A plan of allocation that compensates class members based on the type and

6    extent of their injuries is generally considered reasonable. Here the proposed distribution will be on

7    a *pro rata* basis, with no class member being favored over others. This type of distribution has

8    frequently been determined to be fair, adequate, and reasonable. *See In re Dynamic Random Access*

9    *Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, at 2 (Oct. 27, 2010) (Order

10   Approving Pro Rata Distribution); *In re Vitamins Antitrust Litig.*, No. 99–197 TFH, 2000 WL

11   1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions

12   funds according to the relative amount of damages suffered by class members, have repeatedly

13   been deemed fair and reasonable."); *In re Lloyds' Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS,

14   2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the

15   Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating

16   the settlement benefits.").

17   Each Settlement Class member's *pro rata* share of the Settlement Fund is determined by

18   computing each valid claimant's total CRT purchases divided by the total valid CRT purchases

19   claimed. This percentage is multiplied against the Net Settlement Fund (total settlements minus all

20   costs, attorneys' fees, and expenses) to determine each claimant's *pro rata* share of the Settlement

21   Fund. To determine each class member's CRT purchases, CRT tubes (CPTs/CDTs) are calculated

22   at full value while televisions are valued at 50% and computer monitors are valued at 75%.

23   **VIII.   THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE**

24   The last step in the settlement approval process is the final approval hearing, at which the

25   Court may hear all evidence and argument necessary to evaluate the proposed settlements. At that

26   hearing, proponents of the settlements may explain and describe their terms and conditions and

27   offer argument in support of settlement approval. Members of the Settlement Class, or their

28   counsel, may be heard in support of or in opposition to the Settlement. Plaintiffs propose the

24

following schedule for final approval of the Settlement. If preliminary approval is granted, the proposed Settlement Class members will be notified of the terms of the Settlement and informed of their rights in connection therewith, including their right to appear and be heard at the final approval hearing. The following is a proposed schedule:

| Date | Event |
|---|---|
| 14 Days[2] | Mailed notice sent to Settlement Class members and publication of website; |
| 18 Days | Summary notice published in (*Wall Street Journal*); |
| 59 Days | Deadlines re opting out of the Hitachi class, objecting to the Settlements; |
| 73 Days | Deadline for filing list of any opt-outs with Court; |
| 99 Days | Deadline for filing briefing in support of Settlement, and; |
| 120 Days | Hearing on final approval of Settlement. |

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should enter an order granting the relief requested by this motion: (i) granting preliminary approval of the Settlement and the related plan of allocation; (ii) approving the manner and form of giving notice to Settlement Class members of the settlement and final approval proceedings, and (iii) establishing a timetable for issuing such notice, filing objections and briefs, and conducting a hearing on final approval of the Settlement.

Dated: December 6, 2013

Respectfully submitted,

/s/ *Guido Saveri*
Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Travis L. Manfredi (281779)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel for*
*Direct Purchaser Plaintiffs*

---

[2] "___ Days" refers to the number of days after the Court enters the [Proposed] Order Granting Class Certification And Preliminary Approval Of Class Action Settlements With the Hitachi Defendants.

25

1

2          Joseph W. Cotchett
           Steven N. Williams
3          Adam J. Zapala
           COTCHETT, PITRE & McCARTHY, LLP
4          840 Malcolm Road
           Burlingame, CA 94010
5          Telephone: (650) 697-6000
           Facsimile: (650_ 697-0577
6
           Bruce L. Simon
7          Aaron M. Sheanin
           PEARSON, SIMON, WARSHAW & PENNY
8          LLP
           44 Montgomery Street, Suite 2450
9          San Francisco, CA 94104
           Telephone:  (415) 433-9000
10         Facsimile:  (415) 433-9008

11         H. Laddie Montague, Jr.
           Ruthanne Gordon
12         Charles P. Goodwin
           Candice Enders
13         BERGER & MONTAGUE, P.C.
           1622 Locust Street
14         Philadelphia, PA 19103
           Telephone: (800) 424-6690
15         Facsimile: (215) 875-4604

16         Michael P. Lehmann
           HAUSFELD LLP
17         44 Montgomery Street, Suite 3400
           San Francisco, CA 94104
18         Telephone:  (415) 633-1908
           Facsimile:  (415) 358-4980
19
           Gary Specks
20         KAPLAN FOX
           423 Sumac Road
21         Highland Park, IL 60035
           Telephone: (847) 831-1585
22         Facsimile: (847) 831-1580

23         Douglas A. Millen
           William H. London
24         FREED KANNER LONDON & MILLEN
           2201 Waukegan Road
25         Suite 130
           Bannockburn, IL 60015
26         Telephone: (224) 632-4500
           Facsimile: (224) 632-4519
27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITH THE HITACHI DEFENDANTS; Master File No. CV-07-5944-SC

1

2
3
4
5

Eric B. Fastiff
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

6
7
8
9
10

W. Joseph Bruckner
Elizabeth R. Odette
LOCKRIDGE GRINDAL NAUEN P.L.L.P
100 Washington Avenue S
Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile: (612) 339-0981

11

*Attorneys for Direct Purchaser Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITH THE HITACHI DEFENDANTS; Master File No. CV-07-5944-SC