**United States District Court**
For the Northern District of California

1

2

3

4

5

6                  IN THE UNITED STATES DISTRICT COURT

7              FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   IN RE: CATHODE RAY TUBE (CRT)    )   MDL No. 1917
    ANTITRUST LITIGATION            )
                                    )   Case No. C-07-5944-SC
10  _____ )
                                    )   ORDER DENYING MOTION TO
11  This Order Relates To:          )   DISMISS FOR LACK OF
                                    )   PERSONAL JURISDICTION AND
12    Case No. C-13-1173 SC         )   GRANTING MOTION FOR
                                    )   JURISDICTIONAL DISCOVERY
13    SHARP ELECTRONICS CORP. and   )
      SHARP ELECTRONICS MANUFACTURING )
14    COMPANY OF AMERICA, INC.,     )
                                    )
15                   Plaintiffs,    )
                                    )
16         v.                       )
                                    )
17    HITACHI LTD., et al,          )
                                    )
18                   Defendants.    )
                                    )
19  _____ )

20

21

22

23  I.   **INTRODUCTION**

24       Now before the Court is Defendant Thomson S.A.'s ("Defendant")

25  motion to dismiss the above-captioned Sharp Plaintiffs'

26  ("Plaintiffs") complaint for lack of personal jurisdiction.  Case

27  No. 13-1173 ECF No. 1 ("Compl."), Case No. 07-5944 ECF No. 1765

28  ("MTD").  The motion is fully briefed.  Case No. 07-5944 ECF Nos.

**United States District Court**
For the Northern District of California

1835 ("Opp'n") (filed under seal), 1875 ("Reply").[1]  Finding this
matter suitable for disposition without oral argument, Civ. L.R. 7-
1(b), the Court DENIES WITHOUT PREJUDICE Defendant's motion to
dismiss Plaintiffs' complaint and GRANTS Plaintiffs' motion for
jurisdictional discovery for the reasons explained below.

**II.   <u>BACKGROUND</u>**

Defendant is a French holding company with its principal place
of business is in Issy-les-Moulineaux, France.  Compl. ¶ 72.
Thomson Consumer Electronics Corporation ("Thomson Consumer")[2] is a
wholly owned subsidiary of Defendant, through which Plaintiffs
allege Defendant manufactured cathode ray tubes ("CRTs"), the goods
at issue in this antitrust MDL.  <u>Id.</u>  Plaintiffs contend that
"[Defendant] dominated and/or controlled the finances, policies,
and/or affairs of [Thomson Consumer] relating to the antitrust
violations alleged in [Plaintiffs' Complaint]."  <u>Id.</u> ¶ 73.  Thomson
Consumer is based in Indiana, but its United States CRT plants
closed in 2004.  <u>Id.</u>

According to Plaintiffs, Defendant "sold its CRTs internally
to its television-manufacturing division, which had plants in the

---

[1] In its reply brief, Defendant provides two new declarations, to
which Plaintiffs object on the grounds that Defendant cannot
present new evidence on reply, per Civil Local Rule 7-3(d)(1).  ECF
No. 1890.  The Court SUSTAINS Plaintiffs' objections.  Defendant
knew that its reply evidence was pertinent to this dispute and
should have presented it earlier, providing Plaintiffs with an
opportunity to respond.  In any event, the Court does not find the
declarations at issue dispositive of the parties' dispute.

[2] Plaintiffs' Complaint refers to Defendant and Thomson Consumer
collectively as "Thomson," but since resolution of this motion
requires the Court to evaluate the two entities' relationships and
connections to this jurisdiction, the Court refers to them
separately.

United States and Mexico, and to other television manufacturers in the United States and elsewhere." Id. ¶ 72. Defendant sold its CRT business in 2005, but Plaintiffs allege that between March 1, 1995, and December 2007, Defendant "manufactured, marketed, sold and/or distributed [products containing CRTs ("CRT Products")] either directly or through its subsidiaries or affiliates throughout the United States." Id.

Plaintiffs sued Defendant under federal and state antitrust laws. Defendant now moves to dismiss for lack of personal jurisdiction. Defendant filed a declaration from its current General Secretary with its motion. ECF No. 1765-1 ("Cadieux Decl."). That declaration states (among other things) that Defendant is purely a holding company, with no operations, offices, employees, property, books, records, bank accounts, agents, registrations, or business activities in the United States. Id. at 2-3. It also asserts that Defendant has never manufactured CRTs or CRT Products in the United States or elsewhere, and that Defendant and Thomson Consumer maintain separate corporate structures, offices, finances, and business activities. Id. According the the declaration, Thomson Consumer -- over which the Court undisputedly has jurisdiction -- was solely responsible for CRT sales, marketing, and pricing in the United States. Id. at 3.

## III.  LEGAL STANDARD

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, defendants may move to dismiss for lack of personal jurisdiction. The Court may consider evidence presented in affidavits and declarations determining personal jurisdiction. Doe v. Unocal

Corp., 248 F.3d 915, 922 (9th Cir. 2001).  Plaintiff bears the burden of showing that the Court has personal jurisdiction over Defendants.  See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  "[T]his demonstration requires that the plaintiff make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  Id. (quotations omitted). "[T]he court resolves all disputed facts in favor of the plaintiff . . . ."  Id. (quotations omitted).  "The plaintiff cannot simply rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true."  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (quotations and citations omitted).  The Court may not assume the truth of allegations that are contradicted by affidavit.  Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977).

Courts may exercise personal jurisdiction over a defendant only if (1) a statute confers jurisdiction and (2) exercising jurisdiction would comport with constitutional due process.  See Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1177 (9th Cir. 2004).  Since the federal Clayton Act, 15 U.S.C. § 22,[3] fulfills the statutory requirement for jurisdiction

---

[3] The statute reads in relevant part: "Any suit, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."  Under the Clayton Act, the basis for minimum contacts inquiry is the United States -- not an individual state -- because that statute provides for nationwide service of process.  The Court finds on this point that exercise of pendent jurisdiction over Plaintiffs' state law claims is appropriate.  See Action Embroidery, 368 F.3d at 1180-81; see also Oetiker v. Jurid Werke, G.m.b.H., 556 F.2d 1, 4-5 (D.C.

4

in this case, the question on this motion is whether exercising jurisdiction would comport with due process. For a court to exercise personal jurisdiction over a non-resident defendant consistent with due process, the defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)). If a defendant has sufficient minimum contacts, personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction. <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1316, 1320 (9th Cir. 1998).

**IV.** **DISCUSSION**

    **A.** **General Jurisdiction**

General jurisdiction applies where a defendant's activities in the state are "substantial" or "continuous and systematic," even if the cause of action is unrelated to those activities. <u>Data Disc</u>, 557 F.2d at 1287.

> For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in "continuous and systematic general business contacts," . . . that "approximate physical presence" in the forum state . . . . This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.

---

Cir. 1977). Those claims arise out of the same nucleus of operative facts as Plaintiffs' federal claims, <u>see</u> <u>id.</u>, and the Court finds that judicial economy, fairness, and convenience counsel in favor of retaining jurisdiction over all claims.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th

2  Cir. 2004) (citations omitted).  This is a high standard.  The

3  Ninth Circuit has regularly declined to find general jurisdiction

4  even where the contacts were quite extensive.  See, e.g., Amoco

5  Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 n.3 (9th

6  Cir. 1993) (citing cases).  "Factors to be taken into consideration

7  are whether the defendant makes sales, solicits or engages in

8  business in the state, serves the state's markets, designates an

9  agent for service of process, holds a license, or is incorporated

10 there."  Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d

11 1082, 1086 (9th Cir. 2000).

12      Generally, the existence of a parent-subsidiary relationship

13 "is not sufficient to establish personal jurisdiction over the

14 parent on the basis of the subsidiaries' minimum contacts with the

15 forum."  Unocal, 248 F.3d at 925.  However, "if the parent and

16 subsidiary are not really separate entities [i.e., alter egos], or

17 one acts as an agent of the other, the local subsidiary's contacts

18 with the forum may be imputed to the foreign parent corporation."

19 Id. at 926 (quotations omitted).

20      Plaintiffs argue that the Court should exercise general

21 jurisdiction over Defendant because Thomson Consumer is Defendant's

22 agent, and Thomson Consumer is within the Court's general

23 jurisdiction.  See Opp'n at 12-18.  Plaintiffs do not argue that

24 Defendant is subject to general jurisdiction in its own right,

25 though they reserve the right to make that argument pending

26 jurisdictional discovery.  Id. at 18 n.17.

27      In support of their agency argument, Plaintiffs contend that

28 Defendant is not a mere holding company, since Defendant's

6

United States District Court
For the Northern District of California

executive officers during the conspiracy period had titles reflecting operational responsibilities, and several of Defendant's executives served on Thomson Consumer's board, suggesting that Defendant performed direct operational and oversight functions for Thomson Consumer.  Id. at 14-15.  Plaintiffs also claim that Defendant had control over Thomson Consumer because Plaintiffs alleged that Defendant "dominated or controlled Thomson Consumer's finances, policies, and/or affairs."  Compl. ¶ 73.  Here, Plaintiffs cite facts from their exhibits, stating that there was overlap between Defendant and Thomson Consumer's executive officers and board; that the United States CRT market was so important to Defendant that it would have been directly involved in it if not for Thomson Consumer; and that some of Defendant's executive officers worked from Thomson Consumer's United States office.  Id. at 15-16.

Defendant argues that the declaration of its General Secretary controverts all of Plaintiffs' allegations.  Specifically, Defendant claims that it is located in France and has no operations, employees, bank accounts, registered agents for process, or offices in the United States.  MTD at 5-6 (citing Cadieux Decl. ¶¶ 4, 6-7, 8, 10-11, 13).  Defendant also points to a declaration and SEC filing -- filed as exhibits to Plaintiff's opposition -- stating that Defendant is and has always been a mere holding company, with its principal assets being "the stock of its subsidiaries," and that the holding company's principal function was to perform corporate activities and secure financing for its subsidiaries.  Reply at 2 (citing Opp'n Exs. T ¶ 4, HH at 152).  Defendant concludes that Thomson Consumer was merely an investment,

**United States District Court**
For the Northern District of California

1   and that in any event, Defendant lacked control over Thomson

2   Consumer.

3       Much of Defendant's argument concerns the import of two Ninth

4   Circuit cases concerning foreign defendants' agents and general

5   jurisdiction.  In Doe v. Unocal Corp., the Ninth Circuit held, "The

6   existence of a relationship between a parent and its subsidiaries

7   is not sufficient to establish personal jurisdiction over the

8   parent on the basis of the subsidiaries' minimum contacts with the

9   forum."  248 F.3d at 925.  Relying on the fundamental principle of

10  corporate separateness, by which corporations are distinct entities

11  from their shareholders over which jurisdiction must be established

12  individually, the Unocal Court found a distinction between active

13  parent corporations, involved directly in decision-making about

14  their subsidiaries' holdings, and "super-corporations," which exert

15  so much control over their subsidiaries that the subsidiaries'

16  presence substitutes for the parent's.  Id. at 928-30.

17      The Unocal Court relied on a body of Ninth Circuit law holding

18  that a subsidiary functions as a parent corporation's

19  representative if it performs services that are "sufficiently

20  important to the foreign corporation that if it did not have a

21  representative to perform them, the corporation's own officials

22  would undertake to perform substantially similar services."  See

23  id. at 929-30 (citing Chan v. Society Expeditions, Inc., 39 F.3d

24  1398, 1405 (9th Cir. 1994)); see also Wells Fargo & Co. v. Wells

25  Fargo Exp. Co., 556 F.2d 406, 423 (9th Cir. 1977).  The Ninth

26  Circuit did not find that the plaintiffs in its case had alleged

27  that the defendant would have conducted and controlled operations

28  in America absent a subsidiary.  Id.  The court found insufficient

**United States District Court**
For the Northern District of California

the plaintiff's allegations that the defendant held stock, directly
or indirectly, in an American subsidiary, and that the defendant
stated in an annual report that its "US unit" would expand the
defendant's marketing network and produce more valuable products in
the United States.

In a more recent case, Bauman v. DaimlerChrysler Corp., 644
F.3d 909, 914-15 (9th Cir. 2011), cert granted, 133 S. Ct. 1995
(Apr. 22, 2013), the Ninth Circuit found general jurisdiction
because the foreign defendant had a complex "General Distributor
Agreement" with its American subsidiary.  That Agreement gave the
defendant almost complete control over its subsidiary's activities.
Id. at 914-15, 920-21.  The Bauman Court also found that since the
United States market was 19 percent of defendant's worldwide sales,
the defendant "could not afford to be without a U.S. distribution
system," the activities of its United States subsidiary were so
important that the defendant would have found a way to have those
activities performed if its subsidiary did not exist.  Id. at 922.
Under those circumstances, any United States affiliate of the
defendant -- whether it was a subsidiary or a non-subsidiary --
would have been a representative of the defendant for purposes of
the agency test.  Id.

Defendant accordingly argues that Plaintiffs' allegations are
directly controverted by the Cadieux Declaration, and that
Plaintiffs' pleadings are too vague and general to establish a
prima facie case that Thomson Consumer was Defendant's agent.
Reply at 9-10.  Defendant then argues that Plaintiffs are wrong
that Thomson Consumer was so important to Defendant that Defendant
would have undertaken CRT sales and marketing in the United States

**United States District Court**
For the Northern District of California

absent its relationship with Thomson Consumer.  Id. at 10.
According to Defendant, its status as a holding company -- as
opposed to a manufacturer, like the defendant in Bauman -- means
that it could simply hold a different type of company as an
investment, contradicting any argument that Thomson Consumer was so
important to Defendant that Defendant would have done Thomson
Consumer's work itself if Thomson Consumer were not Defendant's
subsidiary.  Reply at 10 (citing Unocal, 248 F.3d at 929
(suggesting that imputing a subsidiary's jurisdictional conducts to
the parent would be improper where a holding company could simply
hold another type of subsidiary)).  Finally, Defendant claims that
Thomson Consumer's CRT manufacturing business was not sufficiently
important to Defendant since Thomson Consumer sold its United
States-based CRT plants and its CRT business in 2005.  Id. (citing
Compl. ¶ 73).

Plaintiffs' facts and allegations about Defendant's
relationship with Thomson Consumer are inconclusive under both
Unocal and Bauman.

First, the Court finds that the fact that some of Defendant's
executives served on Thomson Consumer's board or even shared office
space with Thomson Consumer, without more, does not establish
enough involvement in Thomson Consumer to treat that entity as
Defendant's agent.  The Ninth Circuit has found that the latter
activities do not necessarily lead to a finding of agency, and
Plaintiffs' facts do not push Defendant's relationship with Thomson
Consumer over the line into an agency relationship.  See Unocal,
248 F.3d at 926-27.

Further, the Court does not find Plaintiffs' allegations

**United States District Court**
For the Northern District of California

regarding job titles to be sufficient in this case.  Even resolving this factual dispute in Plaintiffs' favor, the Court finds that the job titles given -- e.g., "Senior Executive Vice President[s] of Operations Coordination" -- do not, without more, suggest actual involvement in Thomson Consumer's activities.  They are too vague.

Finally, the Court finds that the remaining facts Plaintiffs cite in support of their contention that Defendant is not only a holding company and that Thomson Consumer is Defendant's agent do not support the conclusion that Plaintiffs have made a prima facie case for general jurisdiction.  The facts Plaintiffs cite are mostly references to Defendant's work either in general or with other parties.  In any event, they do not directly controvert Defendant's declaration that -- at least as to Thomson Consumer -- Defendant was merely a majority shareholder, not a controlling corporation.  Even if the Court considers the significance of the United States CRT market to Defendant, the Court cannot find from the facts on record that Thomson Consumer is Defendant's agent, or that they have the kind of synergistic relationship that would warrant linking the two companies for jurisdictional purposes.  See Chan, 39 F.3d at 1406.  The fact that some of Defendant's executive officers appear to have worked in Thomson Consumer's office during the relevant period cuts closer, but on balance and resolving disputes in Plaintiffs' favor, the Court does not find that these connections are close enough to warrant finding that Thomson Consumer is Defendant's agent.

The Court therefore finds that Plaintiffs have failed to meet their burden of showing that general jurisdiction is appropriate.  However, as explained below, the Court finds that jurisdictional

1  discovery is appropriate on this issue and the matter of specific

2  jurisdiction.

3      **B.**   <u>**Specific Jurisdiction**</u>

4      If a finding of general jurisdiction is inappropriate, a court

5  may still exercise specific personal jurisdiction depending on "the

6  nature and quality of the defendant's contacts in relation to the

7  cause of action." <u>Data Disc</u>, 557 F.2d at 1287.  The Ninth Circuit

8  applies a three-prong test when analyzing a claim of specific

9  jurisdiction:

> (1) The non-resident defendant must purposefully
> direct his activities or consummate some transaction
> with the forum or resident thereof; or perform some
> act by which he purposefully avails himself of the
> privilege of conducting activities in the forum,
> thereby invoking the benefits and protections of its
> laws;
>
> (2) the claim must be one which arises out of or
> relates to the defendant's forum-related activities;
> and
>
> (3) the exercise of jurisdiction must comport with
> fair play and substantial justice, i.e. it must be
> reasonable.

19  <u>Schwarzenegger</u>, 374 F.3d at 802.  The plaintiff bears the burden of

20  satisfying the first two prongs, and if he or she fails to satisfy

21  either, specific jurisdiction is not established.  <u>Sher v. Johnson</u>,

22  911 F.2d 1357, 1361 (9th Cir. 1990).  If the plaintiff satisfies

23  these prongs, the burden shifts to the defendant "to present a

24  compelling case" that the exercise of jurisdiction would not be

25  reasonable.  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477

26  (1985).

27      Plaintiffs argue that the Court has specific jurisdiction over

28  Defendant because (1) Defendant purposefully directed its CRT

*United States District Court*
For the Northern District of California

12

conspiracy activity at the United States and (2) Plaintiffs' claims arise out of Defendant's conspiracy activity in the United States. Plaintiffs also contend that exercising personal jurisdiction over Defendant would be reasonable.  Defendant opposes all of these points.

The Ninth Circuit applies a three-part test for purposeful direction: "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  Id.

When considering the first prong, "something more than mere foreseeability" of an effect in the forum state is necessary. Schwarzenegger, 374 F.3d at 805 (internal citation and quotation omitted).  And as the Ninth Circuit has warned, "the foreign-acts-with-forum-effects jurisdictional principle must be applied with caution, particularly in an international context."  Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175, 1178 (9th Cir. 1980) (internal quotations and citations omitted).

Defendant argues that Plaintiffs' complaint is too vague to allege specific conduct on Defendant's part.  See Reply at 11-12. Defendant contends that Plaintiffs' references to "defendants" or a combined "Thomson" entity are insufficiently vague, and that the exhibits Plaintiffs attached to its opposition brief are similarly inconclusive as to which entity is at issue when, for example, other defendants refer to allegedly conspiratorial meetings involving "Thomson" generally.  See id. at 12 (citing Opp'n Exs. C-I).  Further, Defendant claims that Plaintiffs' allegations and evidence do not demonstrate that Defendant aimed any act at the

**United States District Court**
For the Northern District of California

1   United States, since Defendant has never manufactured or sold CRTs,

2   or conducted any CRT business at all, in the United States.

3   However, Plaintiffs maintain that Defendant participated in

4   meetings concerning pricing and production information related to

5   CRTs and CRT Products' market in the United States, and that

6   Defendant's actions had a "direct, substantial, and reasonably

7   foreseeable effect on U.S. Commerce." See Opp'n at 18-19 (citing

8   Compl. ¶¶ 14-15, 136, 169, 199); see also Opp'n at 3-4 nn. 2-4

9   (citing exhibits concerning other defendants' discovery materials

10  that reference "Thomson").

11      Failure to satisfy this first prong would be enough to show

12  that Plaintiffs fail to meet the Ninth Circuit's standard for

13  specific jurisdiction.  However, Defendant also argues that

14  Plaintiffs fail to allege facts or submit evidence establishing

15  that any of Defendant's acts were a but-for cause of Plaintiffs'

16  antitrust claims. See Reply at 13-14.  Defendant contends that

17  Plaintiffs' argument on this point is attenuated.  Plaintiffs

18  alleged that their claims would not have arisen absent all of the

19  defendants' global price-fixing conspiracy and that Defendant

20  participated in the conspiracy, so Defendant's forum-related

21  activities were necessarily a but-for cause of Plaintiffs'

22  antitrust injuries. See Opp'n at 20 (citing Compl. ¶¶ 11, 27-29,

23  72-73, 169, 287).

24      An antitrust defendant "expressly aims" an intentional act at

25  a forum state when its allegedly anticompetitive behavior is

26  targeted at a resident of the forum, or at the forum itself. See

27  In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d

28  716, 743 (9th Cir. 2013).  On Plaintiffs' allegations and evidence,

United States District Court
For the Northern District of California

1   the Court cannot find that Defendant engaged in any intentional

2   acts directed at the United States.  The Court finds Plaintiffs'

3   allegations as to Defendant in particular are unacceptably bare and

4   conclusory, and Plaintiffs' evidence, which often references

5   "Thomson" generally, is similarly inconclusive.  Under these

6   circumstances, the Court cannot find that Defendant intentionally

7   aimed any action toward the United States, that Defendant's actions

8   were the but-for cause of Plaintiffs' claims, and especially that

9   exercising jurisdiction would be reasonable.

10      Accordingly, the Court declines to exercise specific

11  jurisdiction over Defendant.  However, the Court finds

12  jurisdictional discovery appropriate.

13      **C.   <u>Jurisdictional Discovery</u>**

14      The district court has discretion to allow a plaintiff to

15  conduct jurisdictional discovery.  <u>Wells Fargo & Co. v. Wells Fargo</u>

16  <u>Exp. Co.</u>, 556 F.2d 406, 430 n.24 (9th Cir. 1977).  Requests for

17  such discovery should ordinarily be granted "where pertinent facts

18  bearing on the question of jurisdiction are controverted . . . or

19  where a more satisfactory showing of the facts is necessary."  <u>Id.</u>

20  (quotations omitted).  However, a district court need not permit

21  discovery "[w]here a plaintiff's claim of personal jurisdiction

22  appears to be both attenuated and based on bare allegations in the

23  face of specific denials made by the defendants . . . ."  <u>Pebble</u>

24  <u>Beach</u>, 453 F.3d at 1160 (quotations omitted).  Plaintiffs argue

25  that since the record is not fully developed on this issue, and

26  central facts are contested, jurisdictional discovery is warranted.

27  <u>See</u> Opp'n at 23-24.  They also argue that they have shown "some

28  evidence" of jurisdiction, and that their allegations are not so

**United States District Court**
For the Northern District of California

1  bare as to warrant denying limited jurisdictional discovery.
2  Defendant argues otherwise.

3      The Court finds that jurisdictional discovery is appropriate
4  here.  Defendant argues that Thomson Consumer is not its agent, but
5  jurisdictional discovery could discover the truth of that matter.
6  Jurisdictional discovery could also reveal whether the "Thomson" of
7  Plaintiffs' vague allegations and evidence is Defendant or Thomson
8  Consumer.  Even though Plaintiffs have not made a prima facie
9  showing of jurisdiction, their allegations and evidence are not
10 entirely bare, and they have made a sufficient case for conducting
11 limited jurisdictional discovery to collect evidence related to
12 their agency argument and Defendant's intentional conduct toward
13 the United States.  After discovery has been completed, Defendant
14 may again move to dismiss for lack of personal jurisdiction.
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

<div style="text-align: left; font-weight: bold;">United States District Court<br>For the Northern District of California</div>

1  V.  **CONCLUSION**

2      As explained above, the Court DENIES Defendant's motion to

3  dismiss for lack of personal jurisdiction WITHOUT PREJUDICE and

4  GRANTS Plaintiffs leave to conduct jurisdictional discovery to

5  collect evidence related to their agency argument and Defendant's

6  intentional conduct toward the United States.  Plaintiffs are to

7  complete discovery within sixty (60) days of this Order's signature

8  date.

9

10

11      IT IS SO ORDERED.

12

13      Dated: December 11, 2013

14                                          UNITED STATES DISTRICT JUDGE