WHITE & CASE

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005-3807

Tel  + 1 202 626 3600
Fax  + 1 202 639 9355
whitecase.com

Direct Dial + 202-626-3696     alau@whitecase.com

December 17, 2013

VIA ECF

Honorable Samuel Conti
Senior District Judge
United States District Court
Northern District of California
Courtroom 1, 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94123

Re:  *In Re: Cathode Ray Tubes (CRT) Antitrust Litigation*, Case No. 07-5944 SC, MDL No. 1917 (N.D. Cal.):  Toshiba Corporation and Toshiba America Electronic Components, Inc.'s Response To Sharp's December 3, 2013 Letter Seeking An Order Compelling Discovery Responses

Dear Judge Conti:

On behalf of the Toshiba Defendants, we oppose Sharp's December 3, 2013 letter as both procedurally and substantively deficient.  Most notable among the substantive deficiencies, Sharp ignores the discovery protocol in this case by failing to establish good cause as to why the information it seeks is not contained in documents that have been previously produced to the Direct Purchaser Plaintiffs.  Indeed, Sharp does even not contest the fact that the discovery it seeks is contained in the discovery already produced by the Toshiba Defendants.  Rather, Sharp takes the position that it is entitled to propound "narrow, tailored" interrogatories that seek information "uniquely relevant" to its claims.  Sharp Letter at 1.  In reality, the discovery that Sharp seeks would require the Toshiba Defendants to replicate the countless hours they spent on responding to the DPPs' discovery requests.  This needless duplication of effort is precisely what the discovery protocol in this case seeks to avoid.  Thus, the Court should deny Sharp's request for relief.

I.     **Sharp's Letter Is Procedurally Deficient**

As an initial matter, this Court should deny the relief sought by Sharp because (1) Sharp failed to satisfy this Court's meet-and-confer requirement; and (2) by filing a letter instead of a

motion, Sharp failed to comply with Rule 7 of the Federal Rules of Civil Procedure and Rules 7-2 or 37-2 of the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California.

Sharp did not complete the meet-and-confer process with the Toshiba Defendants, as is required by Rule 37(a)(1) of the Federal Rules. Although the parties exchanged letters with each other (Sharp Letter Exs. L, M, N) and participated in a single telephone conference, there was never an indication that the parties had reached an impasse. As the correspondence make clear, counsel for the Toshiba Defendants was still waiting for Sharp to (1) demonstrate good cause that the information it sought was not included in previously produced discovery; and (2) provide the legal authority allegedly underpinning its purported right to wholly duplicate discovery. Sharp Letter Ex. M. As opposed to addressing these issues in the meet-and-confer process, Sharp abruptly filed its December 3, 2013 letter with the Court. Sharp's decision to truncate the meet-and-confer process is particularly disturbing in light of the Court's most recent statement on November 4, 2013 that all parties "are strongly encouraged to resolve their disputes on their own." Order on Discovery Disputes (Dkt. No. 2095). For this reason alone, this Court should deny the relief sought by Sharp.

Sharp's letter also does not comply with Rule 7 of the Federal Rules (requiring parties to submit all requests for a court order by motion) or Rule 7-2 of the Local Rules (describing the form of each motion). In footnote 3 of its letter, Sharp asserts that it filed a "letter brief" in lieu of a motion "pursuant to this Court's instruction to follow the same procedures in place for discovery disputes utilized before Judge Legge." The Court, however, gave no such instruction. In its order discharging Special Master Legge, the Court ordered the parties to file all further documents and pleadings with the Court. Order (Dkt. No. 1880). In its November 4, 2013 Order on Discovery Disputes (at page 2), this Court directed the parties to file motions "pursuant to the Local Rules." Order on Discovery Disputes (Dkt. No. 2095). Sharp ignored these orders. For this additional reason, this Court should deny the relief requested in Sharp's letter.

## II. Sharp Has Failed To Comply With The Procedures Contained In The April 3, 2012 Discovery Protocol

On the merits, the Court should deny Sharp's request for relief because Sharp has disregarded the Court's order governing discovery in this case. On April 3, 2012, the Court issued a detailed order specifying certain rules for discovery in this case. Order re Discovery and Case Management Protocol (Dkt. No. 1128) (the "Discovery Protocol"). At that time, discovery had been ongoing in this case for several years. Recognizing the extensive discovery already conducted by the class plaintiffs, the Court took care to ensure that any future discovery was "coordinated" among the parties "efficiently and without duplication." *Id*. ¶¶ XV.C and XV.D.

To promote coordination among the parties, the Court ordered all plaintiffs to "consult in good faith in an effort to propound joint written discovery requests . . . ." *Id.* ¶ XV.E. To the extent separate written discovery was served, this Court mandated that the plaintiffs "shall not duplicate interrogatories, requests for admission, and requests for documents." *Id.* To safeguard against duplicate discovery requests, this Court placed the burden on the individual action

Honorable Samuel Conti

December 17, 2013

plaintiffs who sought to propound any new written discovery to demonstrate why such additional discovery was needed:

> The Individual Action Plaintiffs may propound additional discovery on the Defendants provided that the Individual Action Plaintiffs (1) *demonstrate good cause as to why the information they seek is not contained in the documents previously produced in MDL No. 1917*; and (2) identify the information they seek as specifically as possible. In propounding any additional discovery requests, *the Individual Action Plaintiffs (not the undersigned Defendants) bear the burden of determining what was previously produced in MDL No. 1917*.

*Id.* ¶ XV.F (emphasis added).

Finally, this Court explicitly departed from the general rule that a party may not refer to previous discovery in response to new discovery requests: "*Defendants may refer to their previously produced discovery in response to any discovery propounded by the Individual Action Plaintiffs* or State Attorneys General if, and to the extent that, the previously-produced materials are responsive to the Individual Action Plaintiffs' or State Attorney General's discovery requests." *Id.* ¶ XV.G (emphasis added). It is under these guiding principles that Sharp's letter should be decided.

     **A.**    **Sharp Has Not Demonstrated Good Cause As To Why The Information It Seeks Is Not Contained In Previously Produced Documents**

Although the Discovery Protocol is the touchstone authority concerning discovery in this case, Sharp does not discuss it in its letter. During the truncated meet-and-confer process, the Toshiba Defendants specifically brought the protocol to Sharp's attention in their letter of November 5, 2013. Sharp Letter Ex. M. Although Sharp responded to the Toshiba Defendants' letter (Sharp Letter Ex. N), Sharp blithely ignored the protocol, as it does now.

Both in its discovery requests and its letter, Sharp fails to demonstrate good cause as to why the information it seeks is not contained in the Toshiba Defendants' previously produced discovery. Nor could it. The information that Sharp seeks is a subset of the information sought by, and provided to, the DPPs in response to Interrogatory No. 5 of their First Set of Interrogatories ("DPP Interrogatory No. 5").

On March 12, 2010, the DPPs served its First Set of Interrogatories on the defendants. Sharp Letter Ex. B. By their Interrogatory No. 5, the DPPs sought "any meeting or communication between You and other producers of CRT and/or CRT Products during the Relevant Time Period, including the named Defendants in this coordinated proceeding, regarding CRT and/or CRT Product pricing, price increase announcements, terms or conditions of sales, profit margins or market share, production levels, inventory, customers, auctions, reverse auctions, dynamic bidding events, or sales . . . ." On February 10, 2012, the Toshiba Defendants

Honorable Samuel Conti

December 17, 2013

served their Supplemental Objections and Responses to Interrogatory Nos. Four and Five of Direct Purchaser Plaintiffs' First Set of Interrogatories. Sharp. Letter Exs. C, D. By their supplemental response to Interrogatory No. 5, the Toshiba Defendants provided the list of "meetings or communications" requested by the DPPs. Given the broad scope of the DPPs' request, this list contained several hundred entries.

On September 19, 2013, Sharp served a set of interrogatories on several defendants, including the Toshiba Defendants. Sharp Letter Ex. F. By its Interrogatory No. 2, Sharp sought "all Communications and/or Meetings with CRT Manufacturers regarding the sales, production, and/or prices of CPTs in and/or for the United States, Mexico, and/or Brazil during the Relevant Time Period, excluding any Communications and/or Meetings occurring solely in the context of a Customer-supplier relationship between You and a Customer . . . ." By its Interrogatory No. 3, Sharp sought (to the extent not previously identified in response to Sharp's Interrogatory No. 2), "all Communications and/or Meetings regarding the sales, production, and/or prices of CPTs during the Relevant Time Period, where at least one party to the Communication was employed in and/or based out of the U.S., Mexico, and/or Brazil at the time of the Communication, excluding any Communications and/or Meetings conducted solely in the context of a Customer-supplier relationship between You and a Customer . . . ." With respect to both of these interrogatories, the Toshiba Defendants responded by directing Sharp to their Supplemental Objections and Responses to Interrogatory Nos. Four and Five of Direct Purchaser Plaintiffs' First Set of Interrogatories. Sharp Letter Ex. G at 7-8; Sharp Letter Ex. H at 7-8.

By its interrogatories, Sharp seeks a subset of the information sought by (and produced to) the DPPs. This fact was acknowledged by Sharp's counsel during the abbreviated meet-and-confer process. *See* Sharp Letter Ex. M at 1 ("In fact, you acknowledged that the information that Sharp seeks is within the previous responses."). By its letter to the Court, Sharp again recognizes this fact. *See* Sharp Letter at 2-3 (noting that its requests are "narrower" than the "less refined" and "broader" DPP Interrogatory No. 5). Because Sharp has not demonstrated good cause as to why the information it seeks is not within the discovery Toshiba previously produced in response to DPP Interrogatory No. 5, this Court should deny the relief sought in the letter.

Sharp has also failed to comply with the Discovery Protocol in another way. Sharp has not identified the information it seeks as specifically as possible. *See* Discovery Protocol ¶ XV.F (requiring Individual Action Plaintiffs to "identify the information they seek as specifically as possible"). Sharp asks for "***all Communications and/or Meetings*** with CRT Manufacturers regarding the sales, production, and/or prices of CPTs in and/or for the United States, Mexico, and/or Brazil during the Relevant Time Period . . . ." Sharp defines "Communication" to mean "***without limitation, oral or written communications of any kind***, such as electronic communications, e-mails, facsimiles, telephone communications, correspondence, exchange of written or recorded information, or face-to-face meetings." Sharp defines "Meeting" to mean "without limitation, ***any assembly, convocation, encounter, or contemporaneous presence of two or more persons for any purpose***, whether planned or arranged, scheduled or not." And Sharp defines "Relevant Time Period" to mean March 1, 1995 through December 31, 2007. In

short, Sharp asks for every communication over a twelve-and-a-half-year period. Because Sharp asks for "all communications and/or meetings *with a CRT Manufacturer*," its requests call for communications within defendant families. In light of the actual language of its interrogatories, Sharp's assertion that its discovery requests are "narrow" and "tailored" does not withstand scrutiny.

> B. **The Toshiba Defendants Satisfied Their Discovery Obligations By Referring To Their Previous Responses To DPP Interrogatory No. 5**

Based on the Discovery Protocol, the Toshiba Defendants have satisfied their discovery obligations. As explained to Sharp during the truncated meet-and-confer process, the Toshiba Defendants' responses to Interrogatory No. 5 of the DPPs' First Set of Interrogatories include detailed information — dates, participant names, entity names, locations, and subject matter — to enable Sharp to identify the information sought by its duplicate interrogatories. *See* Discovery Protocol ¶ XV.G (allowing a defendant to refer to previous discovery); *McConnell v. Pacificorp, Inc.*, No. C 07-2382 WHA(JL), 2008 WL 3843003, at *3 (N.D. Cal. Aug. 15, 2008) (holding that the citation to previous discovery is only improper "where the referral does not lead to enlightening information"); *Equal Rights Ctr. v. Post Properties, Inc.*, 246 F.R.D. 29, 33 (D.D.C. 2007) (finding that to the extent that the information sought by one interrogatory "is a sub-set of the information" sought by another interrogatory, "it was proper for Plaintiff[] to answer this question by referring to its earlier answers").

By referring to the discovery response they provided to the Direct Purchaser Plaintiffs, the Toshiba Defendants pointed Sharp to highly detailed information about communications and meetings among CRT product manufacturers, information that undoubtedly assists Sharp in identifying the information it seeks. Sharp complains that the previous responses contain **additional** information not sought by Sharp. This complaint is unavailing. For example, Sharp criticizes the Toshiba Defendants for including "customer-supplier discussions." Sharp Letter at 2. In some instances, this information can be readily discerned from the supplemental interrogatory responses relied upon by the Toshiba Defendants. For example, those responses reveal communications and/or meetings with several customers, including Sharp itself. *E.g.*, Sharp Letter Ex. C at 21, 36, 47. Even in those instances where the previous responses do not contain the exact information sought by Sharp (for example, whether one of the participants was employed in, or based out of, the United States, Mexico, or Brazil), that information can be gleaned from the other discovery produced by the Toshiba Defendants. *Accord McConnell*, 2008 WL 384300, at *3.

Sharp complains that it might "have to review the entire discovery record" in order to find the information it seeks. Sharp Letter at 6. But such a possibility is entirely reasonable and contemplated by the Discovery Protocol. By the time that Sharp entered the case, discovery had been ongoing for several years. During that time, the Toshiba Defendants dutifully responded to all of the discovery requests issued by the class plaintiffs. Those class plaintiffs made certain strategic decisions in terms of how they would formulate their discovery requests. By placing the burden on individual action plaintiffs such as Sharp to demonstrate good cause as to why the

information they seek is not contained in pre-existing discovery responses, the Court promoted the laudable goal of avoiding wasteful, duplicate discovery while at the same time preserving the ability of individual action plaintiffs to serve focused discovery needed for their own individual cases.

In a declaration filed by its counsel, Sharp asserts that it "contacted the Direct Purchaser Plaintiffs in attempts to obtain materials from that plaintiff class that would be helpful in evaluating the Toshiba and Panasonic defendants' responses, but the Direct Purchaser Plaintiffs have not provided any such materials or information to Sharp." Declaration of Craig A. Benson in Support of Sharp's Motion to Compel, dated Dec. 3, 2013, ¶ 3. This declarant, however, does not provide the date upon which he made this request to the DPPs. Given that Sharp's counsel did not mention their efforts to contact the DPPs during the abbreviated meet-and-confer process with the Toshiba Defendants, this effort to seek assistance from the DPPs apparently occurred in just the last month. Before seeking the Court's assistance, it was incumbent upon Sharp to engage in a *bona fide* discussion with the Direct Purchaser Plaintiffs, not merely an empty gesture.

In its letter, Sharp suggests that the Toshiba Defendants identified their supplemental responses to the DPPs' Interrogatory No. 4 (actual or proposed agreements) as responsive to Sharp's interrogatories. During the meet-and-confer process, the Toshiba Defendants informed Sharp that information responsive to Sharp's interrogatories would be found in the Toshiba Defendants' supplemental responses to the DPPs' Interrogatory No. 5 (meetings and communications), not their supplemental responses to the DPPs' Interrogatory No. 4 (actual or proposed agreements). *See* Sharp Letter Ex. M at 2 ("Your focus on Toshiba Corp.'s response to Interrogatory No. 4 of the Direct Purchaser Plaintiffs' First Set of Interrogatories is even more confusing because Sharp's interrogatories do not request any information regarding agreements."). If Sharp had any remaining confusion about this issue, it should have continued the meet-and-confer process with the Toshiba Defendants.

If the Court were to grant Sharp the relief it seeks, the Toshiba Defendants would have to replicate the efforts they undertook when they responded to the DPPs' Interrogatory No. 5. Once again, the Toshiba Defendants will need to devote numerous hours to scour the documents produced in this case in order to prepare a chart in the form and manner desired by Sharp. Every meeting and communication will have to be re-examined to determine whether it was made in a supplier-customer context. Every meeting and communication will also have to be re-examined to determine whether a party to the communication was based in the United States, Mexico, or Brazil. In effect, the Toshiba Defendants will have to re-do the extensive analysis they undertook when they responded to the DPPs' Interrogatory No. 5 in the first instance. Such a result would render the Discovery Protocol an empty letter.

### C. None Of Sharp's Cases Involve A Court Order That Permits Parties To Rely On Previously Produced Discovery

The cases relied upon by Sharp are inapposite for several reasons, not least of which is that none of them involved an order from the presiding court (1) explicitly allowing parties to

rely on previously produced discovery; and (2) requiring a party to "demonstrate good cause as to why the information they seek is not contained in the documents previously produced . . . ." Discovery Protocol ¶ XV.F.4.

Sharp cites Moore's Federal Practice for the general principle that, in responding to interrogatories, a party may not refer to other discovery. *See* Sharp Letter at 4-5 (citing Moore's Fed. Practice § 33.103). Sharp ignores the portion of that section that reads:

> However, the incorporation of outside material by reference in responses to interrogatories is evaluated on a case-by-case basis, and, as one district court has held, ***the judge has discretion to find such a response acceptable***. Thus, it may be acceptable for a response to an interrogatory to refer to answers of other interrogatories or other discovery in order to avoid unnecessary repetition, but the referral must be clear and precise.

*Id.* (emphasis added) (citations omitted). Here, the Court departed from the general rule by explicitly allowing such references to previous discovery. *See* Discovery Protocol ¶ XV.G; *see also Stoltenberg v. Unum Life Ins. Co. of Am.*, No. 8:04CV288, 2005 WL 6934456, at *5 (D. Nev. Dec. 12, 2005) (holding that "the focus is whether the answer is responsive to the question. The mere fact that an answer refers to other discovery is not, on that basis alone, non-responsive."). Moreover, the Toshiba Defendants' previous discovery responses included "clear and precise" information enabling Sharp to identify the information it sought in its duplicative discovery responses. *See McConnell*, 2008 WL 3843003, at *3.

Sharp asserts that "there is no question that the burden to identify responsive communications would be greater for Sharp than it would be for Panasonic or Toshiba." Sharp Letter at 6. Sharp cites no authority for this statement which, in any event, is irrelevant. Remarkably, Sharp identifies its burden as simply to "review . . . each of the thousands of meetings the Defendants identified . . . ." *Id.* First, both the DPPs and Sharp requested Toshiba Corp. and TAEC each identify ***every communication*** involving CRTs over a ***twelve-plus-year period***. With such broad discovery requests, Sharp should not be heard to complain about reviewing "thousands of meetings." But perhaps more importantly, Sharp should have already reviewed these meetings. The Discovery Protocol mandates that it is ***Sharp's burden*** to determine what was previously produced and then to decide whether it needed additional discovery. The fact that Sharp has not yet reviewed the discovery produced in this case reveals that Sharp has failed to satisfy its obligations under the Discovery Protocol.

None of the other decisions cited by Sharp involves a case in which the Court explicitly allowed references to previous discovery and placed the burden on the requesting party to show good cause why its additional discovery is not included in previously produced documents. Rather, those cases involve principles of law that are simply not applicable here. *See, e.g.*, *DCFS USA, LLC v. District of Columbia*, 803 F. Supp. 2d 29, 35-37 (D.D.C. 2011) (determining, after close of discovery and at the summary judgment stage, whether sanctions under Rule 37 would be appropriate given the defendant's introduction of an affidavit, which contains information the

defendant did not disclose in discovery and which contradicts the defendant's prior admission that had been judicially established by the court as fact). Sharp cites *Mulero-Abreu v. Puerto Rico Police Dept.*, 675 F.3d 88 (1st Cir. 2012), for the proposition that a responding party may not require a requesting party to "rummage" through other discovery materials (Sharp Letter at 5), but that case involved plaintiffs repeatedly failing to answer long overdue interrogatories and providing such broad responses that required "the defendants [to] find the needle in the haystack." *Id*. at 93; *see also Harlem River Consumers Coop., Inc. v. Assoc. Grocers of Harlem, Inc.*, 64 F.R.D. 459, 461-62 (S.D.N.Y. 1974) (finding that the plaintiff's citation to "all its documents" amounted "to nothing more than a gigantic 'do it yourself' kit"). This case is different because the Toshiba Defendants pointed Sharp to detailed information wholly responsive to Sharp's discovery requests.

In its letter, Sharp appears to request attorney work product from the Toshiba Defendants. *See* Sharp Letter at 4 (requesting "indices of, coding for, or translations of, documents based on their prior review"). Sharp provides no basis for requesting attorney work product, and none of the cases it cites even mentions attorney work product. Because the information Sharp seeks in its discovery requests can be found in the Toshiba Defendants' previous discovery responses, Sharp cannot show that it is entitled to Toshiba Corp.'s and TAEC's protected materials.

Finally, we note that a large group of DAPs seeks to join Sharp's letter. Dkt. No. 2266. This joinder, filed only yesterday, suffers from the exact same deficiencies evident in Sharp's request. None of these DAPs sought to coordinate their discovery with the DPPs and none demonstrates good cause as to why the information they seek is not contained in the discovery previously produced in this case.

\* \* \*

For all these reasons, this Court should deny the relief requested in Sharp's letter.

Respectfully submitted,

Lucius B. Lau
*Counsel for Toshiba Corporation and*
*Toshiba America Electronic Components, Inc.*

cc: All counsel via ECF