**Weil, Gotshal & Manges LLP**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Adam C. Hemlock**
+1 (212) 310-8281
adam.hemlock @weil.com

VIA ECF

December 17, 2013

The Honorable Samuel Conti
United States District Court
Northern District of California
Courtroom No. 1, 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *In re Cathode Ray Tube (CRT) Antitrust Litigation, MDL No. 1917, No. 3:07-cv-05944, No. 3:13-cv-1173*

Dear Judge Conti:

Panasonic Defendants[1] respectfully submit this letter brief in opposition to Sharp's[2] Motion to Compel Discovery Responses filed on December 3, 2013 [Dkt. No. 2242].

I.   **Introduction and Background**

Less than a month after this Court's "Order on Discovery Disputes" strongly encouraged all parties to resolve their disputes on their own,[3] and following only one discussion with Panasonic, Sharp filed this motion to compel responses to two essentially duplicative and burdensome interrogatories which seek information that is concededly *already in Sharp's possession* as a result of Panasonic's efforts in responding to prior discovery responses in this case. In its zeal to rush headlong into motion practice, Sharp rejected compromise proposals, provided no potential modifications, and failed to address Panasonic's objections in any meaningful way.[4] Panasonic had not represented that it was

---

[1] Defendants Panasonic Corporation ("Panasonic Corp."), Panasonic Corporation of North America ("PNA"), and MT Picture Display Co., Ltd. ("MTPD") (collectively, "Panasonic" or the "Panasonic Defendants").

[2] Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. (collectively, "Sharp" or the "Sharp Plaintiffs"). On December 16, 2013, Direct Action Plaintiffs joined Sharp's Motion to Compel Discovery Responses, Dkt. No. 2266.

[3] Order on Discovery Disputes, entered Nov. 4, 2013, Dkt. No. 2095.

[4] Sharp and Panasonic held exactly one meet and confer, on November 6, 2013, during which Panasonic sought to discuss potential modifications or compromise solutions. For example, Panasonic raised the possibility of running search terms related to geographic scope (to be run both in English and in any relevant foreign language) among the documents previously identified to Plaintiffs in prior discovery

Weil, Gotshal & Manges LLP

December 17, 2013
Page 2

unwilling to make any compromises in connection with the Interrogatories, and the parties were *not* at impasse.  Because Sharp's efforts to resolve this dispute without judicial intervention fell far short of the meet and confer requirements imposed by Rule 37 of the Federal Rules of Civil Procedure and Rule 37 of the Local Rules, its motion should be denied on this basis alone.  *See*, *e.g.*, *Choudhuri v. Wells Fargo Bank, N.A.*, C 11-00518 SBA, 2011 U.S. Dist. LEXIS 78278, at *2-3 (N.D. Cal. July 18, 2011) (holding that judicial intervention should only occur where "either informal negotiations have reached an impasse on the substantive issues in dispute, or one party has acted in bad faith by either refusing to negotiate or provide specific support for its claims").[5]

Beyond its procedural defects, which even include its manner of filing,[6] Sharp's motion is meritless because it concerns burdensome and duplicative discovery, through which Sharp has improperly sought to shift to Panasonic the burden of analyzing information already in Sharp's possession.  Specifically, Sharp asked Panasonic to identify over 12 years of broadly-defined communications and meetings between CRT manufacturers regarding the sales, production, and/or prices of color picture tubes ("CPTs"):

- "in and/or for the United States, Mexico, and/or Brazil" but excluding "any Communications and/or Meetings occurring solely in the context of a Customer-supplier relationship," (Sharp Interrogatory No. 2, Benson Decl. Ex. F); or

---

responses.  Sharp was unwilling to discuss any such proposal.  Panasonic also recommended that Sharp communicate with other Plaintiffs in an effort to facilitate Sharp's obtaining the specific information sought without unnecessary duplication and burden.  Sharp has conceded that it did not do so prior to serving the Interrogatories.  While Sharp appears to have contacted the DPPs very recently, *see* Benson Decl. at ¶ 3, it was its burden under the Discovery Protocol entered in this case to have done so prior to serving its interrogatories.  *See* Order Re: Discovery and Case Management, April 3, 2012, Dkt. No. 1128 (the "Discovery Protocol), at ¶ XV.F.

[5] *See also Sierra Equity Grp. v. White Oak Equity Partners, LLC*, 672 F. Supp. 2d 1369 (S.D. Fla. 2009) (if a party fails to confer with opposing counsel in good faith effort to resolve the issue without court intervention, the motion may be denied); *Taylor v. Aria Resort & Casino, LLC*, No. 2:11-cv-01360-KJD, 2013 WL 2355462, at *2 (D. Nev. May 29, 2013) (denying motion to compel where "counsel acknowledges a preliminary discussion with opposing counsel regarding the alleged deficiencies, but was not aware an impasse had been reached until the motion was filed").

[6] Specifically, Sharp filed a "letter," rather than a motion, which is inconsistent with both Rule 7 of the Federal Rules of Civil Procedure (which requires all requests for a court order to be accompanied by a motion) and Rule 7-2 of the Local Rules (which describes the form of such a motion).  Notably, this Court's Order on Discovery Disputes, dated Nov. 1, 2013, Dkt. No. 2095, directed parties to file motions before the Court and "pursuant to the Local Rules."

Weil, Gotshal & Manges LLP

December 17, 2013
Page 3

- "where at least one party to the Communication was employed in and/or based out of the U.S., Mexico, and/or Brazil." (Sharp Interrogatory No. 3, Benson Decl. Ex. F)

This information, however, was *already included* in prior interrogatory answers served and documents produced by Panasonic. Accordingly, Panasonic timely served objections and responses to the Interrogatories, and averred, among other things, that Sharp's interrogatories were duplicative of Interrogatories served by Direct Purchaser Plaintiffs ("DPPs"), who had previously also sought information about communications and meetings between CRT manufacturers, without geographic limitation.[7] *See* Benson Decl. Ex. K. (Interrogatories Nos. 4 and 5 in DPP's First Set of Interrogatories) (requesting essentially identical information as Sharp on a worldwide basis).

In response to the DPPs' discovery, Panasonic Defendants conducted an extensive search for potentially relevant information within over 1.6 million pages of documents derived from the files of more than 45 Panasonic entity custodians worldwide. A staggering amount of time, effort, and client and attorney resources were spent gathering and identifying potentially responsive information and preparing initial objections and responses as well as three separate supplemental responses to DPPs' discovery (the "Prior Responses"). The Prior Responses provided Plaintiffs with more than 200 pages of information about communications by and among CRT manufacturers—*i.e.*, the very type of information now sought again by Sharp on a geographic-specific basis. Where practical and unambiguous, Panasonic included information related to geography in the Prior Responses. Panasonic's objections and responses to Sharp incorporated this information, as expressly allowed by the Discovery Protocol,[8] and Panasonic also provided Sharp with a copy of the Prior Responses.

Sharp, however, demands more. It wants a specific subset of communications relating to the United States, Mexico, and Brazil, and a separate specific subset of communications where at least one of the parties to the communication (whether or not they work for Panasonic) "was employed in and/or based out of the U.S., Mexico, and/or Brazil." Panasonic has consistently explained that it would be terribly burdensome, time-consuming, and wasteful to sift through many thousands of ambiguous communications and attempt to detail the specific geographic information that Sharp claims to be interested in. Indeed, doing so would require Panasonic to undertake the enormous burden of *reexamining* every meeting and communication already provided to Plaintiffs in order to determine, for example, whether a party to the communication was based in the United States, Mexico, or Brazil. For its part, Sharp tellingly does not dispute that it currently has everything it needs in order to determine the geographic-specific information it purports to seek. For the avoidance of any doubt on this point, Panasonic specifically referred Sharp in its responses to Interrogatory No. 3 to organizational charts that provide further information as to whether a party to a communication may have been employed or based

---

[7] *See* Benson Decl. Ex. E at 9-10.

[8] *See* Discovery Protocol, at ¶ XV.G (providing that defendants may refer to responsive previously produced discovery in response to any discovery requests propounded by opt-out plaintiffs).

Weil, Gotshal & Manges LLP

December 17, 2013
Page 4

out of the three countries that Sharp is interested in.  *See* Benson Decl. Ex. K at 13-14.  And, as explained more fully below, the burden is equal as between Sharp and Panasonic in this regard.

Additionally, in propounding its discovery, Sharp has not complied with the directives of the Discovery Protocol entered in this case, which specifically sought to avoid the needless duplication of efforts required by Sharp's discovery.  The Discovery Protocol precludes Plaintiffs from serving duplicative interrogatories, and imposes a burden on Individual Action Plaintiffs, such as Sharp, to "demonstrate good cause as to why the information they seek is not contained in the documents previously produced in the MDL."  Discovery Protocol ¶ XV.F.  Sharp's motion, though, does not adequately explain why the Interrogatories at issue are not cumulative of other discovery already propounded by Plaintiffs in the MDL, or why Sharp failed to coordinate with other Plaintiffs in this action prior to serving its discovery.

II.     **Argument**

   A.     **Sharp's Interrogatories are Duplicative and/or Cumulative to the DPP's Discovery**

Sharp's Interrogatories are wholly duplicative of discovery sought by DPPs in their Interrogatories Nos. 4 and 5, as Sharp merely seeks a subset of communications already sought and provided.[9]  While Sharp takes pains to characterize its interrogatories as "narrow" and "tailored" in an effort to distinguish them from DPPs' Interrogatories, *see* Mot. at 1, 3, Sharp's Interrogatories in fact seek the *same* information as the DPPs.  The only difference is that Sharp has purported to impose certain "limitations" that the DPPs did not—*i.e.*, communications about CPTs rather than CRTs, and communications, if any, implicating certain geographic locations.  These "limitations," however, drastically heighten Panasonic's discovery burdens, as it requires Panasonic to re-answer the same question from a "subset of documents already produced."  This is improper.  *See Johnson v. Mission Support*, No. 2:08-CV-00877-DN-EJF, 2013 WL 174433, at *3 (D. Utah Jan. 16, 2013) (denying motion to compel with respect to discovery request "that would require identification of a subset of documents already produced . . . [t]he Court will not order identification under these circumstances . . ."); *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 33 (D.D.C. 2007) (finding that where information sought by one interrogatory "is a sub-set of the information" sought by another interrogatory, "it was proper . . . to answer this question by referring to . . . earlier answers"); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) §11.464 (2004) ("If interrogatories have already been served by one party, other parties should be prohibited from asking the same questions, because any party may use answers to interrogatories served by another regardless of who propounded the interrogatory").

Moreover, Sharp's position turns the position long held by Plaintiffs – that Defendants should produce documents and information on a *worldwide* basis – on its head.  In contrast to Plaintiffs' prior

---

[9] *Compare* Benson Decl. Ex. K at 10-11 *with* Benson Decl. Ex. E at 9-10.

Weil, Gotshal & Manges LLP

December 17, 2013
Page 5

discovery position, which was the predicate underlying Panasonic's prior need to provide information about communications without regard to geographic limitation, Sharp now seeks to force Panasonic to replicate its prior efforts in order to specifically identify a new subset of communications: only those that allegedly pertain to the United States, Mexico and Brazil.  Because Sharp can just as easily ascertain this subset of communications from the Prior Responses, its Interrogatories are cumulative and should be rejected under Fed. R. Civ. P. 26(b)(2) and the Discovery Protocol.  *See Johnson*, 2013 WL 174433, at *3 (rejecting request to identify a subset of information previously produced as an improper "attempt[] to have a second bite at the apple"); *Robbins v. Camden City Bd. Of Educ.*, 105 F.R.D. 49. 55 (D.N.J. 1985) (allowing reference to response to previous interrogatories where subsequently propounded interrogatories were duplicative); *Richlin v. Sigma Design W., Ltd.*, 88 F.R.D. 634, 640 (E.D. Cal. 1980) (upholding objection to interrogatories as oppressive because they sought voluminous and substantially duplicative materials already within the moving party's possession); *see also* Discovery Protocol, at ¶ XV.E-G.

> **B.     Panasonic's Prior Discovery Responses Already Provide Sharp with Responsive Documents and Information**

Sharp's motion also fails because Panasonic's Prior Responses, and the documents referenced therein, contain all of the information that Sharp has requested.  While Sharp avers that a party may not refer to other discovery in responding to interrogatories, *see* Mot. at 4-5, it ignores that this Court has expressly allowed such references to prior discovery responses in the Discovery Protocol entered in this case.  As set forth therein, "Defendants may refer to their previously produced discovery in response to any discovery propounded by the Individual Action Plaintiffs or State Attorneys General if, and to the extent that, the previously-produced materials are responsive to the Individual Action Plaintiffs' or State Attorney General's discovery requests."  *Id*. at ¶ XV.G.  Instead, Sharp merely relies on a mischaracterization of Moore's Federal Practice, omitting the portion of the cited section that states that "the incorporation of outside material by reference in responses to interrogatories is evaluated on a case-by-case basis, and, as one district court has held, the judge has discretion to find such a response acceptable."  *See* 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 33.103 (3d ed. 2013), *citing Guruwaya v. Montgomery Ward, Inc.*, 119 F.R.D. 36, 40 (N.D. Cal. 1988).[10]

Sharp is further mistaken in its claim that the Prior Responses "contain only the date and counterparty and no information at all on the location of the meeting, the topics of discussion, or

---

[10] The other cases relied on by Sharp, *see* Mot. at 4-5, are all similarly inapposite for one fundamental reason:  none concern a case in which the Court has expressly allowed the parties to refer to previous discovery responses, or otherwise required a showing of good cause on the requesting party as to why its additional discovery is not included in previously produced documents.  *See*, *e.g.*, *DCFS USA, LLC v. District of Columbia*, 803 F. Supp. 2d 29, 35-37 (D.D.C. 2011) (concerning sanctions under Rule 37 where a party relied on newly introduced evidence in a summary judgment affidavit).

**Weil, Gotshal & Manges LLP**

December 17, 2013
Page 6

whether the counter-party was a customer or supplier" (Mot. at 3).  In fact, the Prior Responses do contain meaningful geographic details where such information was reasonably ascertainable.  *See*, *e.g.*, Benson Decl. Ex. E to the Mot. at p. 208 (referencing a "meeting in Pennsylvania" and a "meeting in Ohio").  As Panasonic averred in its responses to Sharp's interrogatories, the Prior Responses "include information related to relevant geography where practicable and unambiguous."  *See* Benson Decl. Ex. K to the Mot. at 11.

Nor is Sharp correct in its idle speculation that Panasonic may already have completed the onerous review work that would be necessary to identify the particularized geographic information that Sharp seeks.  Panasonic has explained to Sharp that it does not have a set of documents organized by country that would allow it to complete the review work more quickly or more efficiently than Sharp can itself.[11]  In any event, it is certainly not Panasonic's burden to provide Sharp with the fruits of its own privileged case analysis or work product.  If the information sought by Sharp is truly material to its case, it should conduct its own review of the fulsome discovery record, including Panasonic's Prior Responses, for information relevant to its claims.[12]

Moreover, the burden of culling through the vast amount of documents and information in order to ascertain whether meetings concerned specific geographic locations is the same as between Panasonic and Sharp.  Sharp complains that a meaningful number of the relevant documents are in Japanese.  Sharp, however, is itself a Japanese company.  Furthermore, as Panasonic noted in the November 6, 2013 telephonic discussion with Sharp on this matter, Panasonic's Prior Responses were drafted and compiled years ago, when Panasonic had at its disposal a team of Japanese speaking review attorneys that were familiar with this action and helped facilitate Panasonic's review and production of documents.  This is no longer the case.  By contrast, Sharp only joined this action this year and is currently in the midst of reviewing and producing documents to Defendants.  Accordingly, Sharp is, if anything, in a *better* position than Panasonic to review the documents referenced in the Prior Responses for potentially relevant information.

---

[11] *See* Ex P (Nov. 13, 2013 Letter from Lara Veblen to Blaise Warren).

[12] Sharp's reliance on *Sadofsky v. Fiesta Products, LLC*, 252 F.R.D. 143, 147-148 (E.D.N.Y. 2008), is misplaced.  In fact, *Sadofsky* only undercuts Sharp's position, as it denied a motion to compel where the movant failed to establish that the burden of ascertaining the answers to his interrogatories from materials previously produced and identified would be greater for him than for the producing party.  As the court noted, one party's "familiarity with the documents does not necessarily create a disparity in the ease of discovery" (citation omitted).

Weil, Gotshal & Manges LLP

December 17, 2013
Page 7

### C. Under the Discovery Protocol, It Is Sharp's Burden to Establish the Propriety of Further Discovery

Furthermore, Sharp, as an Individual Action Plaintiff, has not demonstrated the requisite good cause for its Interrogatories under the Discovery Protocol in this case. The Discovery Protocol, among other things, proscribes Plaintiffs from serving "duplicate interrogatories," *see* ¶ XV.E, and states that "[d]uplication is a proper objection to written discovery requests." *Id.*[13] It further requires the coordination of discovery, and explicitly places the burden in this regard on Sharp:

> Individual Action Plaintiffs may propound additional discovery on the Defendants provided that [they] demonstrate good cause as to why the information they seek is not contained in the documents previously produced in the MDL No. 1917. *Id.* at ¶ XV.F.

Moreover, under the Discovery Protocol, the Individual Action Plaintiffs, *not* the Defendants, bear the burden of determining what was previously produced, and to this end they must "consult in good faith in an effort to propound joint written discovery requests." *Id.* at ¶ XV.E. While the Discovery Protocol states that "[t]his paragraph in no way prejudices or diminishes any plaintiffs' right to serve their own written discovery requests *regarding issues that are not common to any other plaintiffs . . .*," *id.*, the information requested in Sharp's Interrogatories is in no way unique to Sharp. Because Sharp has not complied with its duties under the Discovery Protocol in serving the Interrogatories, its motion should be denied accordingly.

### III.   Conclusion

For all of the foregoing reasons, Sharp's motion to compel should be denied in its entirety.

Very truly yours,

*/s/   Adam C. Hemlock*

Adam C. Hemlock

cc:     All Counsel via ECF

---

[13] Panasonic expressly objected to Sharp's additional Interrogatories on that basis. *See* Benson Decl. Ex. K at 9, ¶14.