Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc.,*
*Toshiba America Consumer Products, L.L.C.,*
*Toshiba America Information Systems, Inc.,*
*and Toshiba America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to<br>Case No. 12-cv-02649-SC<br><br>SCHULTZE AGENCY SERVICES, LLC, on behalf of TWEETER OPCO, LLC and TWEETER NEWCO, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>HITACHI, LTD., *et al.*,<br><br>Defendants. | **THE TOSHIBA DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SCHULTZE AGENCY SERVICES, LLC'S FIRST AMENDED COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:    December 20, 2013<br>Time:   10:00 a.m.<br>Before:  Hon. Samuel Conti |

## TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................2

I. The First Claim Of Tweeter's Complaint Should Be Dismissed With Respect To The Toshiba Defendants Because Tweeter Has Failed To Allege Facts Sufficient To Confer Standing Under The "Ownership Or Control" Exception To *Illinois Brick*.............................................................................................2

    A. The Court's August 21, 2013 Ruling Did Not Hold That Tweeter Has Standing Under *Illinois Brick* ...................................................................2

    B. Tweeter Has Failed To Establish Standing Under The Ownership Or Control Exception To *Illinois Brick* ................................................................3

        1. Tweeter's Allegations Of Conspiracy By "Group Pleading" Fail To Adequately Establish Standing .......................................................3

        2. Tweeter Also Fails To Sufficiently Plead Facts To Confer Standing On Its CRT Product Purchases From OEMs And "Other Suppliers" ............................................................................................5

II. The Second Claim Of Tweeter's Complaint Should Be Dismissed With Respect To The Toshiba Defendants Because Tweeter Does Not Have Standing Under The Massachusetts Consumer Protection Act .....................................7

    A. Entities Engaged In Trade Or Commerce May Raise Claims, If At All, Only Under Section 11 Of The Massachusetts Consumer Protection Act ...........................................................................................8

    B. Sections 9 And 11 Of The Massachusetts Consumer Protection Act Are Mutually Exclusive ..............................................................................9

    C. Tweeter's Policy Arguments Are Not Properly Addressed To This Court .............................................................................................................11

III. Toshiba's Motion to Dismiss Is Permitted By The Federal Rules Of Civil Procedure ................................................................................................................12

CONCLUSION ..............................................................................................................................14

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

THE TOSHIBA DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS SCHULTZE AGENCY SERVICES, LLC'S FIRST AMENDED COMPLAINT
Case No. 07-5944 SC
MDL No. 1917

**TABLE OF AUTHORITIES**
Cases                                                                                                    Page

*Aetna Life Ins. Co. v. Alla Medical Serv., Inc.*,
    855 F.2d 1470 (9th Cir. 1988) ...............................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................3

*Buzayan v. City of Davis*,
    No. 2:06-cv-1576-MCE-DAD, 2009 WL 514201 (E.D. Cal. Feb. 26, 2009) ................12

*Chao v. Aurora Loan Services, LLC*,
    No. C 10-3118 SBA, 2013 WL 5487420 (N.D. Cal. Sept. 30, 2013) ...........................12

*Charter Oak Fire Ins. Co. v. Sodexho Marriott*,
    478 F. Supp. 2d 1151 (N.D. Cal. 2011)..........................................................................11

*Conley v. Gibson*,
    355 U.S. 41 (1957)..........................................................................................3

*Cont'l Ins. Co. v. Bahnan*,
    216 F.3d 150 (1st Cir. 2000)..........................................................................9, 10

*Davidson v. Countrywide Home Loans, Inc.*,
    No. 09-CV-2694-IEG (JMA), 2011 WL 1157569 (S.D. Cal. Mar. 29, 2011) ...............13

*FRA S.p.A. v. Surg-O-Flex of Am.*,
    415 F. Supp. 421 (S.D.N.Y. 1976) ..............................................................................13

*Frullo v. Landenberger*,
    814 N.E.2d 1105 (2004) ..........................................................................................9

*F.T.C. v. Wellness Support Network, Inc.*,
    No. C-10-04879 JCS, 2011 WL 4026867 (N.D. Cal. Sept. 12, 2011) ..........................13

*Gundy v. California Dep't of Corr. & Rehab.*,
    No. 1:12-CV-01020-LJO, 2013 WL 522789 (E.D. Cal. Feb. 11, 2013) .................. 12-13

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*Hemmings v. Tidyman's Inc.*,
 285 F.3d 1174 (9th Cir. 2002) ................................................................................ 11-12

*In re: ATM Fee Antitrust Litig.*,
 686 F.3d 741 (9th Cir. 2012) ....................................................................................... 4

*In re: CRT Antitrust Litig.*,
 MDL No. 07-5944 (N.D. Cal. Aug. 21, 2013) ......................................................... 2-3

*In re: CRT Antitrust Litig.*,
 MDL No. 07-5944 (N.D. Cal. Sept. 26, 2013) ............................................................ 5

*In re Ditropan XL Antitrust Litig.*,
 529 F. Supp. 2d 1098 (N.D. Cal. 2007) ....................................................................... 5

*In re: TFT-LCD (Flat Panel) Antitrust Litig.*,
 Nos. 3:07-md-01827, 3:12-cv-03802, 2013 WL 1164897 (N.D. Cal.
 Mar. 20, 2013) ........................................................................................................ 4-5, 6

*Ins. Rating Bd. v. Commissioner of Ins.*,
 248 N.E.2d 500 (Mass. 1969) ...................................................................................... 11

*Kendall v. Visa U.S.A., Inc.*,
 518 F.3d 1042 (9th Cir. 2008) ............................................................................... 3, 4, 7

*Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*,
 781 N.E.2d 787 (Mass. 2003) ...................................................................................... 10

*Lantner v. Carson*,
 373 N.E. 2d 973 (Mass. 1978) ............................................................................ 8, 11, 12

*Optical Coating Laboratory, Inc. v. Applied Vision, Ltd.*,
 No. C-92-4689 MHP, 1995 WL 150513 (N.D. Cal. Mar. 20, 1995) ............................ 7

*Polaroid Corp. v. Travelers Indem. Co.*,
 610 N.E.2d 912 (Mass 1993) ....................................................................................... 10

*Reisman v. KPMG Peat Marwick LLP*,
 965 F. Supp. 165 (D. Mass. 1997) ................................................................................. 9

*RLI Ins. Co. v. General Star Indemnity Co.*,
 997 F. Supp. 140 (D. Mass. 1998) ............................................................................... 10

*Slaney v. Westwood Auto, Inc.*,
    322 N.E.2d 768 (Mass. 1975) ........................................................................................9

*Sullivan v. DB Investments*,
    667 F.3d 273 (3d Cir. 2011) ........................................................................................11

**Statutes**

Mass. Gen. Laws ch. 93A (Consumer Protection Act)........................................................9, 10

**Other**

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and*
    *Procedure* § 1385 (3d ed.) ...........................................................................................13

Fed. R. Civ. P. 1...........................................................................................................................14

Fed. R. Civ. P. 11(b) .......................................................................................................................6

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## INTRODUCTION

1. In its opposition, Tweeter admits that it had "knowledge of the companies from which it purchased CRT Products" (Tweeter Opp. at 10) and that it "had sufficient information to allege that at least some of the companies from which it purchased CRT Products were subsidiaries or affiliates of Defendants" (Tweeter Opp. at 11). Tweeter, however, neglected to allege any of these facts in its FAC. In order for Tweeter to overcome *Illinois Brick's* bar on indirect claims, Tweeter must allege facts to establish that it has standing under a recognized exception to *Illinois Brick*. When a plaintiff *alleges* "the companies from which it purchased CRT Products," that plaintiff gives defendants fair notice of the claims brought against them. Engaging in "group pleading" (as Tweeter does in its FAC) does not. When a plaintiff *alleges* evidentiary facts indicating that the companies from which it purchased CRT Products were owned or controlled by specific defendants, that plaintiff makes at least a minimum showing that it is entitled to proceed under the "ownership or control" exception to *Illinois Brick*. Deferring such issues to discovery (as suggested by Tweeter in its brief) simply reveals that a plaintiff is using discovery as a "fishing expedition" in the hopes of finding facts to support its claims. Rule 11 bars such an approach. Thus, the first claim of Tweeter's FAC should be dismissed with respect to the Toshiba Defendants.

2. In its brief, Tweeter states that it has standing to assert claims under section 9 of the Massachusetts Consumer Protection Act (Tweeter Opp. at 12), but ignores the fact that the Massachusetts courts have long held that businesses (such as Tweeter) are limited to section 11 of that Act, which covers "[a]ny person who engages in the conduct of any trade or commerce." The distinction between section 9 and section 11 of the Act is crucial because indirect purchaser plaintiffs do not have standing under section 11, a fact conceded by Tweeter. Thus, the second claim of Tweeter's FAC should be dismissed with respect to the Toshiba Defendants.

3. Tweeter asserts that we have filed a "successive" motion to dismiss and that, as a result, our arguments are somehow barred. But that is not an accurate description given

THE TOSHIBA DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS SCHULTZE AGENCY SERVICES, LLC'S FIRST AMENDED COMPLAINT
Case No. 07-5944 SC
MDL No. 1917

that Tweeter amended its complaint — this motion to dismiss is our first motion to dismiss the FAC. Even if our motion to dismiss can be fairly described as "successive," courts in the Ninth Circuit routinely permit successive motions to dismiss so long as (1) the motion is not filed for purposes of delay; and (2) resolution of the motion will expedite resolution of the case. Resolution of our motion does nothing to delay the proceeding — all other aspects of the case, including discovery, are ongoing. The Court should decide the motion because, if successful, the motion will reduce the number of defendants and/or claims in this case, thus expediting the proceeding.

## ARGUMENT

**I. The First Claim Of Tweeter's Complaint Should Be Dismissed With Respect To The Toshiba Defendants Because Tweeter Has Failed To Allege Facts Sufficient To Confer Standing Under The "Ownership Or Control" Exception To *Illinois Brick***

**A. The Court's August 21, 2013 Ruling Did Not Hold That Tweeter Has Standing Under *Illinois Brick***

Tweeter asserts repeatedly in its opposition that the Court has already ruled that Tweeter and other Direct Action Plaintiffs have standing to pursue indirect-purchaser claims under the ownership or control exception to *Illinois Brick*. Tweeter Opp. at 1, 3, 6. In fact, this conclusion is found nowhere in the Court's August 21, 2013 Order. Order Adopting in Part and Modifying in Part Special Master's Report and Recommendation on Defs.' Mot. to Dismiss the Direct Action Pls.' Complaints, *In re: CRT Antitrust Litig.*, MDL No. 07-5944, slip op. (N.D. Cal. Aug. 21, 2013), ECF No. 1856 ("August 21, 2013 Order"). The Court actually held that, consistent with its order on the Defendants' motion for summary judgment against the Direct Purchaser Plaintiffs, "indirect purchasers *may have* federal antitrust standing under the 'ownership or control' exception by establishing that they were harmed by a price-fixing conspiracy between a manufacturer and an entity it owns or controls." August 21, 2013 Order at 4-5 (emphasis added). After stating this general rule, the Court expressly reserved judgment on whether the DAPs, including Tweeter, had adequately *alleged* ownership or control. *See* August 21, 2013 Order at 5 ("The Court also makes no ruling on

the adequacy of the DAPs' *allegations* of ownership and control.") (emphasis added). Because the Court has never ruled on the sufficiency of the DAPs' allegations of ownership and control, the issue is properly before the Court.

### B. Tweeter Has Failed To Establish Standing Under The Ownership Or Control Exception To *Illinois Brick*

As we established in our motion to dismiss, Tweeter must allege facts sufficient to demonstrate that it has standing to pursue its claims for damages under federal law, which requires the identification of the entities from whom it allegedly purchased CRT Products. This result is compelled by *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049-50 (9th Cir. 2008), where the Ninth Circuit affirmed the dismissal of a case where the plaintiffs did not allege facts to support standing under *Illinois Brick*. Tweeter's complaint fails in two regards: (1) Tweeter engaged in "group pleading" by not making any defendant-specific allegations; and (2) Tweeter failed to sufficiently plead facts to confer standing on its CRT Product purchases from OEMs and "other suppliers." By its response, Tweeter only highlights these deficiencies.

#### 1. Tweeter's Allegations Of Conspiracy By "Group Pleading" Fail To Adequately Establish Standing

Tweeter admits that it "had knowledge of the companies from which it purchased CRT Products" (Tweeter Opp. at 10), yet includes no such information anywhere in its FAC. As a result, Tweeter has not alleged facts sufficient to put the Toshiba Defendants on notice of the basis on which its claims rest. *Accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that Rule 8 requires that a complaint provide "fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rather than making defendant-specific allegations, Tweeter's complaint inappropriately treats all defendants as a group: Tweeter alleges that it purchased CRT Products from "Defendants, and/or Defendants' subsidiaries and affiliates and/or any agents Defendants or Defendants' subsidiaries and affiliates controlled." FAC ¶ 9. These are exactly the sort of "labels and conclusions" that *Twombly* found insufficient. *Twombly*, 550 U.S. at 555.

In support of its position, Tweeter relies on decisions issued by Judge Illston in the *LCD* case that accepted the "group pleading" approach. Tweeter Opp. at 8-9. We recognized this adverse authority in our motion to dismiss (Toshiba Mot. at 7-8) and explained why the Court should not reach the same result in this case. First and foremost, we relied upon the Ninth Circuit's decision in *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 755, 755 n.7 (9th Cir. 2012), where the Ninth Circuit noted that a purchaser of finished products cannot establish standing solely on the basis that it "purchase[d] directly from the alleged violator." Tweeter makes no attempt to address its failure to meet the *In re ATM Fee* standard. Its argument only highlights the problem of group pleading. Making general allegations that a plaintiff purchased CRT Products from "subsidiaries, affiliates, and agents" of defendants does not answer the key questions that every complaint must address: "who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048. In its FAC, Tweeter does not allege that it purchased CRT Products from any of the Toshiba Defendants or that it purchased CRT Products containing an allegedly price-fixed CRT manufactured by any of the Toshiba Defendants. Tweeter, as an experienced and sophisticated corporation, should know the answer to these questions. Mere use of the words "subsidiaries," "affiliates," and "agents" does not give the Toshiba Defendants sufficient notice of Tweeter's claims. *Accord Kendall*, 518 F.3d at 1047 ("A bare allegation of a conspiracy is almost impossible to defend against, particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily.").

Tweeter cites to this Court's Order on Defendants' Motion to Dismiss the DPP and IPP complaints for the proposition that Rule 8 does not require pleading of specific facts, "including the identity and corporate relationships of each of Tweeter's many suppliers." Tweeter Opp. at. 7. But the Court's order said nothing about an indirect-purchaser plaintiff's burden to plead facts sufficient to show an ownership or control relationship between the parties and a direct purchaser. Courts in this district that have confronted this specific pleading standard, including the most recent *LCD* decision on the issue, require at least some facts to support an exception to *Illinois Brick*. *See In re TFT-LCD (Flat Panel) Antitrust*

1  *Litig.*, Nos. M 07-1827, C 12-3802, 2013 WL 1164897, at \*3 (N.D. Cal. Mar. 20, 2013) ("*LCD*") ("The Court finds that Plaintiffs' [second amended complaint] fails to adequately allege that its claims fall within the control exception to *Illinois Brick*."); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1100-1101, 1101 n.2 (N.D. Cal. 2007) (dismissing antitrust complaint without prejudice and cautioning plaintiff to "be careful to plead facts that demonstrate a basis to maintain a direct purchaser action" under the ownership or control exception).

### 2. Tweeter Also Fails To Sufficiently Plead Facts To Confer Standing On Its CRT Product Purchases From OEMs And "Other Suppliers"

In its FAC, Tweeter alleges that it "purchased CRT Products from original equipment manufacturers ('OEMs'), as well as other suppliers, which contained CRT panels that had been purchased from Defendants and their co-conspirators." FAC ¶ 21. We demonstrated in our motion to dismiss that Tweeter lacks standing with respect to these purchases for two separate reasons. First, Tweeter does not allege that it owned or controlled either the OEMs or the "other suppliers" from whom it purchased CRT Products. Second, Tweeter does not allege that the Toshiba Defendants owned or controlled these OEMs "or other suppliers."

Tweeter concedes that it "had sufficient information to allege that at least some of the companies from which it purchased CRT Products were subsidiaries or affiliates of Defendants" (Tweeter Opp. at 11), but chose not to include these facts in its complaint, even after given the chance to amend. Tweeter also asserts that "[d]ata and documents already produced by Defendants in this litigation show that Tweeter purchased CRT Products from Defendants and entities with ownership or control relationships with certain Defendants." Tweeter Opp. at 11. Tweeter should not be rewarded for withholding relevant factual information from its FAC. As the Court held in dismissing Sharp's Complaint against Thomson Electronics, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet the Rule 8 pleading standards. Order Granting Mot. to Dismiss at 3, *In re: CRT Antitrust Litig.*, MDL No. 07-5944, slip op. (N.D. Cal. Sept. 26, 2013), ECF No. 1960 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

1   This is especially so when a plaintiff, after admitting lengthy access to discovery and
2   claiming knowledge of necessary facts, persists in asserting threadbare allegations and legal
3   conclusions regarding vital elements of its claims.

4   Tweeter attempts to distinguish *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, Nos.
5   3:07-md-01827, 3:12-cv-03802, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) ("*LCD*"), by
6   stating that the plaintiff in that case (Proview) possessed information about ownership or
7   control because it owned and controlled the OEMs at issue. Tweeter Opp. at 10. Tweeter
8   misses the point. *LCD* stands for the proposition that a court should grant a motion to
9   dismiss where a complaint fails to make adequate allegations of ownership or control. *See*
10  *LCD*, 2013 WL 1164897, at *3 ("The Court finds that Plaintiffs' SAC fails to adequately
11  allege that its claims fall within the control exception to *Illinois Brick*."). By its complaint,
12  Tweeter makes **no** allegations that the OEMs and "other suppliers" from whom it purchased
13  CRT Products were owned or controlled by **any** entity. *See* FAC ¶ 21 ("Tweeter also
14  purchased CRT Products from original equipment manufacturers ('OEMs'), as well as other
15  suppliers, which contained CRT panels that had been purchased from Defendants and their
16  co-conspirators.").

17  Tweeter argues that the information that will support its theory of ownership or
18  control will only be revealed after it conducts discovery in this case. Tweeter Opp. at 11.
19  That position, however, does not support its deficient complaint. If Tweeter believed that the
20  OEMs and "other suppliers" were owned or controlled by the Toshiba Defendants, but that
21  the facts supporting such an allegation would likely have evidentiary support only after a
22  reasonable opportunity for discovery, it was incumbent upon Tweeter to make such an
23  allegation in its complaint. *See* Fed. R. Civ. P. 11(b) (by filing a pleading with the Court, an
24  attorney certifies "that to the best of the person's knowledge, information, and belief, formed
25  after an inquiry reasonable under the circumstances . . . (3) the factual contentions have
26  evidentiary support or, ***if specifically so identified***, will likely have evidentiary support after
27  a reasonable opportunity for further investigation or discovery . . . .") (emphasis added). At
28  no point in its complaint did Tweeter allege that, after a reasonable opportunity for discovery,

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

it would have evidentiary support for the fact that the OEMs and "other suppliers" from whom it made purchases were owned or controlled by any Defendant, much less the Toshiba Defendants. Tweeter should not be allowed to conduct a fishing expedition into ownership or control relationships without making the requisite allegations in its complaint. *Accord Optical Coating Laboratory, Inc. v. Applied Vision, Ltd.*, No. C-92-4689 MHP, 1995 WL 150513, at *4 (N.D. Cal. Mar. 20, 1995) ("Discovery cannot, however, serve as a substitute for an adequate pleading, and cannot be used to launch a fishing expedition that may or may not subsequently substantiate an allegation of fraud that lacks any basis at the time it is plead.").

Finally, Tweeter asserts that the concept of joint-and-several liability somehow justifies the conclusory allegations of the FAC. Tweeter Opp. at 11-12. Whether the Toshiba Defendants may be liable for the acts of other defendants has no bearing on whether Tweeter has adequately pled the "ownership or control" exception to the *Illinois Brick* rule barring indirect purchaser claims. Tweeter's argument is also easily dismissed by the *Kendall* decision. The court in *Kendall* specifically stated that a plaintiff must plead "evidentiary facts" in order to state a Sherman Act claim. 518 F.3d at 1047. The plaintiffs in *Kendall* attempted to assert an *Illinois Brick* exception but "simply allege[d] the Consortiums are coconspirators, without providing any facts to support such an allegation, despite having deposed executives from both MasterCard and Visa." *Id.* at 1050. Like the plaintiffs in *Kendall*, counsel for Tweeter has attended numerous depositions in this case, including depositions of Toshiba employees, after Tweeter's original complaint was filed. Even after access to discovery, Tweeter did not amend its allegations of ownership or control as more information was disclosed. These allegations remain deficient and dismissal is appropriate, regardless of Tweeter's theory of liability.

## II. The Second Claim Of Tweeter's Complaint Should Be Dismissed With Respect To The Toshiba Defendants Because Tweeter Does Not Have Standing Under The Massachusetts Consumer Protection Act

Tweeter insists that it has standing under section 9 of the Massachusetts Consumer Protection Act even though that section only provides claims for individuals or classes of

non-business plaintiffs. As we explained in our motion, business plaintiffs may proceed under the Massachusetts Consumer Protection Act only if they satisfy all of the requirements of section 11, including the rule against indirect purchaser suits. Because Tweeter cannot satisfy the section 11 requirements, it does not have standing under the Consumer Protection Act and its state-law claim should be dismissed.

### A. Entities Engaged In Trade Or Commerce May Raise Claims, If At All, Only Under Section 11 Of The Massachusetts Consumer Protection Act

Tweeter does not dispute that it was engaged in trade or commerce. Instead, Tweeter argues that the use of the term "any person" in section 9 applies to Tweeter, but the use of the term "any person engaged in trade or commerce" in section 11 does not. Tweeter Opp. at 13. Tweeter is correct that the definition of "persons" under Massachusetts law includes "corporations," but this unremarkable fact in no way supports its argument. The Supreme Judicial Court of Massachusetts has recognized that the text of the Consumer Protection Act "creates a sharp distinction between a business person and an individual who participates in commercial transactions on a private, nonprofessional basis. For example, where § 9 affords a private remedy to the individual consumer . . . an entirely different section, § 11, extends the same remedy to '(a)ny person who engages in the conduct of any trade or commerce.'" *Lantner v. Carson*, 373 N.E. 2d 973, 976 (Mass. 1978). The Supreme Judicial Court of Massachusetts has firmly rejected proposed interpretations of the Consumer Protection Act, like Tweeter's, under which "the 'persons' covered by §§ 9 and 11 would be identical" because "[s]ection 11 would thus be superfluous merely a repetition of § 9." *Id.*

The reference in section 9 to "any person" operates to confer standing on individuals and those corporate entities such as charities or schools that are harmed by anticompetitive conduct but are not themselves engaged in trade or commerce. *See In re Pharm. Industry Average Wholesale Price Litig.*, 582 F.3d 156 (1st Cir. 2009) (affirming district court's grant of section 9 standing to nonprofit institutions). Tweeter is not in either category of permitted section 9 plaintiffs. The Massachusetts state courts have similarly held that, "a plaintiff who acts in a business context has a cause of action *exclusively* under [section] 11. ***Thus, any***

THE TOSHIBA DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS SCHULTZE AGENCY SERVICES, LLC'S FIRST AMENDED COMPLAINT
Case No. 07-5944 SC
MDL No. 1917
8

*transaction in which the plaintiff is motivated by business considerations gives rise to claims only under the statute's business section*." *Frullo v. Landenberger*, 814 N.E.2d 1105, 1112 (Mass. App. Ct. 2004) (emphasis added). In the face of this overwhelming authority, Tweeter relies on a single case, *Reisman v. KPMG Peat Marwick LLP*, 965 F. Supp. 165 (D. Mass. 1997), in which a district court dismissed the section 9 Consumer Protection Act claims of individual business owners for lack of subject-matter jurisdiction. This result hardly alters the long-standing practice of confining claims by business plaintiffs and non-business plaintiffs to separate statutory sections. *See, e.g.*, *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 774-77 (Mass. 1975) (discussing legislative history of Consumer Protection Act and the distinction between "consumers" and "businessman" under the statute).

### B. Sections 9 And 11 Of The Massachusetts Consumer Protection Act Are Mutually Exclusive

Tweeter admits that it does not have standing as an indirect purchaser under section 11 of the Consumer Protection Act (Tweeter Opp. at 13, 15) and claims that this lack of section 11 standing therefore confers standing under section 9. Tweeter Opp. at 14. This position conflicts with both the text of the statute and Massachusetts case law applying the statute. "By their terms . . . the two sections of chapter 93A that create private rights of action are mutually exclusive . . . section 11 affords no relief to consumers and, conversely, section 9 affords no relief to persons engaged in trade or commerce." *Cont'l Ins. Co. v. Bahnan*, 216 F.3d 150, 156 (1st Cir. 2000).

Section 9 and Section 11 differ in other respects beyond the rule against indirect-purchaser suits contained only in section 11 and courts have always enforced these differences. For example, only section 11 requires that the "actions and transactions constituting the alleged unfair method of competition . . . occurred primarily and substantially within the commonwealth." Mass. Gen. Laws ch. 93A § 11. Under Tweeter's reading of the statute, any business plaintiff failing this requirement may merely file a section 9 action instead because that plaintiff would not be "entitled" to sue under section 11. Not

surprisingly, this position has been consistently rejected by courts. In *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787 (Mass. 2003), the Supreme Judicial Court of Massachusetts reversed a lower court's judgment against a defendant because the conduct alleged by the business-entity plaintiff under section 11 did not occur primarily and substantially within the commonwealth. *Id.* at 790-91. Because the plaintiff did not satisfy the requirements of section 11, the defendant was entitled to judgment on the section 11 claim. *Id.* at 800. Nothing in this decision suggests that a plaintiff who fails a section 11 requirement is thereby entitled to recast his claim under section 9. The rule under Massachusetts law is clear: once a party is determined to be engaged in trade or commerce, any section 9 claims must be dismissed. *See Cont'l Ins.*, 216 F.3d at 156 (holding that, because defendant was engaged in trade or commerce, "it follows inexorably that the district court appropriately closed the door on [defendant's] section 9 counterclaims").

Another difference between sections 9 and 11 is the availability of private actions for insurance claims under Massachusetts General Laws Chapter 176D. Section 9, but not section 11, states that "any person whose rights are affected by another person violating the provisions of . . . [Chapter 176D] may bring an action" in state court. Mass. Gen. Laws ch. 93A, § 9. This distinction has created a long line of cases affirming the separate rights available to business plaintiffs under section 11 and all other plaintiffs under section 9. *See*, *e.g.*, *Polaroid Corp. v. Travelers Indemnity Co.*, 610 N.E.2d 912, 917 (Mass. 1993) (denying Polaroid's Chapter 176D insurance claim brought under section 11 because section 11, unlike section 9, does not grant an independent right to recover for violations of Chapter 176D); *RLI Ins. Co. v. General Star Indemnity Co.*, 997 F. Supp. 140, 151 (D. Mass. 1998) ("Parties engaged in 'trade or commerce', therefore, must sue under Section 11 of Chapter 93A and satisfy the elements of a claim based on an alleged unfair and deceptive practice under . . . Chapter 93A . . . . [A]s a matter of law, RLI may sue only under Section 11 of Chapter 93A . . . and not under Section 9 of that chapter for a violation of Chapter 176D . . ."). Tweeter's unsubstantiated reading of the Consumer Protection Act to allow plaintiffs to ignore specific statutory requirements effectively renders section 11 superfluous

to the rest of the statute, and thus its position must be rejected on basic principles of statutory interpretation. *See Lantner*, 373 N.E.2d at 976 ("We have stated that '(a)n intention to enact a barren and ineffective provision is not lightly to be imputed to the Legislature.'") (quoting *Ins. Rating Bd. v. Commissioner of Ins.*, 248 N.E.2d 500, 504 (Mass. 1969)).

### C. Tweeter's Policy Arguments Are Not Properly Addressed To This Court

As demonstrated above and in our motion to dismiss, neither the Massachusetts legislature nor any court has permitted a business plaintiff to pursue an action under section 9 of the Massachusetts Consumer Protection Act. Nonetheless, Tweeter asks this Court to be the first court in the Nation to allow such a result. Despite the wealth of case law stating exactly the opposite, Tweeter argues that "allowing Tweeter's claims under Section 9 is consistent with the principles animating Chapter 93A." Tweeter Opp. at 15. Tweeter argues that not permitting indirect purchaser claims by businesses is unfair because some indirect purchasers might be precluded from recovering damages. But Massachusetts is hardly unique in barring indirect purchaser claims; numerous states have adopted the *Illinois Brick* rule and enforce a bar against ***all*** indirect purchaser suits. *See Sullivan v. DB Investments*, 667 F.3d 273, 293 (3d Cir. 2011) ("[S]ome states follow [*Illinois Brick*] and prohibit monetary recovery for indirect purchasers, while other states have enacted statutes known as 'Illinois Brick repealers,' which extend antitrust standing to indirect purchasers and consumers."). In any event, Tweeter's arguments regarding the fairness of Massachusetts' policy decision to preclude indirect-purchaser suits by business plaintiffs are appropriately directed to the Massachusetts legislature, not to this Court. *See Charter Oak Fire Ins. Co. v. Sodexho Marriott*, 478 F. Supp. 2d 1151, 1155 (N.D. Cal. 2007) (refusing to decide a "policy debate" over statutory interpretation when state supreme court had "already squarely addressed that issue"). Tweeter would have this Court stretch Massachusetts law to new lengths to encompass its statutorily-barred claims. But, "[i]n interpreting state law, federal courts are bound by the pronouncements of the state's highest court." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002) (denying extension of double damages

to plaintiffs under Washington law because neither the legislature nor decisions of the Washington Supreme Court provided for such relief). As such, this Court should follow the Massachusetts Supreme Judicial Court's long line of cases enforcing the Consumer Protection Act's "sharp distinction" between business plaintiffs and non-business plaintiffs (*Lantner*, 373 N.E.2d at 976) and dismiss Tweeters' state law claim.

### III. Toshiba's Motion to Dismiss Is Permitted By The Federal Rules Of Civil Procedure

Tweeter inaccurately characterizes the Toshiba Defendants' motion to dismiss as a "successive" motion to dismiss. Tweeter Opp. at 5. In so doing, Tweeter ignores the fact that the Toshiba Defendants' prior motion to dismiss was part of a joint effort pertaining to Tweeter's original complaint and the Toshiba Defendants' current motion to dismiss pertains to Tweeter's FAC. This is the Toshiba Defendants' first motion to dismiss the FAC. Because the original complaint no longer has any legal effect, "courts within this Circuit have permitted defendants to bring motions to dismiss in response to an amended pleading based on arguments previously made in a prior motion to dismiss and to raise new arguments that were not previously made." *Chao v. Aurora Loan Services, LLC*, No. C 10-3118 SBA, 2013 WL 5487420, at *4 (N.D. Cal. Sept. 30, 2013).

Even if this motion can fairly be characterized as a "successive" motion to dismiss, courts in the Ninth Circuit routinely recognize that successive motions to dismiss are permissible so long as the moving party does not do so to delay the proceeding and the successive motion is likely to expedite resolution of the case. *See*, *e.g.*, *Buzayan v. City of Davis*, No. 2:06-cv-1576-MCE-DAD, 2009 WL 514201, at *3 (E.D. Cal. Feb. 26, 2009) (entertaining second motion to dismiss because "courts have discretion to hear a second motion under Rule 12(b)(6) if the motion is not interposed for delay and the final disposition of the case will thereby be expedited") (quoting *Aetna Life Ins. Co. v. Alla Medical Serv., Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir. 1988)); *Gundy v. California Dep't of Corr. & Rehab.*, No. 1:12-CV-01020-LJO-MJS, 2013 WL 522789, at *6 (E.D. Cal. Feb. 11, 2013) ("Courts in this Circuit therefore have permitted defendants moving to dismiss an amended complaint to

make arguments previously made and to raise new arguments that were previously available."); *Davidson v. Countrywide Home Loans, Inc.*, No. 09-CV-2694-IEG (JMA), 2011 WL 1157569, at *4 (S.D. Cal. Mar. 29, 2011) (granting second Rule 12(b)(6) motion when second motion was in response to amended complaint, and acknowledging discretion to hear multiple 12(b)(6) motions "to expedite a final disposition on the issue"). Even the same section of the treatise that Tweeter cites as support for prohibiting the Toshiba Defendants' motion acknowledges that district courts have discretion to allow a second pre-answer motion to dismiss on Rule 12(b)(6) grounds. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1385 (3d ed.).

As support for its position, Tweeter cites to Magistrate Judge Spero's order denying a motion to dismiss in *F.T.C. v. Wellness Support Network, Inc.*, No. C-10-04879 JCS, 2011 WL 4026867 (N.D. Cal. Sept. 12, 2011). This citation is misguided. Magistrate Judge Spero's order actually recognized that successive motions to dismiss grounded on legal issues *are* permissible in the interests of judicial economy. *Id.* at *3. Magistrate Judge Spero denied the motion to dismiss at issue in *Wellness Support Network* because the motion was based on "fact questions that are properly addressed at the summary judgment stage of the case and *not* on the pleadings." *Id.* (emphasis in original).

Tweeter's reliance on *FRA S.p.A. v. Surg-O-Flex of Am.*, 415 F. Supp. 421 (S.D.N.Y. 1976), is equally misplaced. That decision rested on a discernable pattern of "dilatory conduct" involving motions to strike and for a more definite statement. *Id*. at 427-28. The procedural background in *FRA* also differed substantially from that in this case because there, the plaintiff did not file an amended complaint necessitating another round of responses. Because of these differences, the outcome in *FRA* has no bearing on the appropriateness of the Toshiba Defendants' motion.

The Toshiba Defendants' motion to dismiss raises issues that could be brought later on a motion for judgment on the pleadings or a motion for summary judgment. Bringing these issues now will thus expedite resolution of this proceeding. Accordingly, the Court

should consider and address this motion now in order to promote the "just, speedy and inexpensive determination" of this action.  Fed. R. Civ. P. 1.

## CONCLUSION

For these reasons and the reasons contained in the motion to dismiss, the Toshiba Defendants' motion to dismiss should be granted and Tweeter's FAC should be dismissed with respect to the Toshiba Defendants.

Respectfully submitted,

Dated:  December 20, 2013                    **WHITE & CASE** LLP

By: */s/ Lucius B. Lau*
Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
701 Thirteenth Street, N.W.
Washington, DC  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Consumer Products, L.L.C., Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

THE TOSHIBA DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS SCHULTZE AGENCY SERVICES, LLC'S FIRST AMENDED COMPLAINT
Case No. 07-5944 SC
MDL No. 1917
14

**CERTIFICATE OF SERVICE**

On December 20, 2013, I caused a copy of "THE TOSHIBA DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SCHULTZE AGENCY SERVICES, LLC'S FIRST AMENDED COMPLAINT" to be served via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

 */s/ Lucius B. Lau*
Lucius B. Lau