Brent Caslin (Cal. Bar. No. 198682)
JENNER & BLOCK LLP
633 West Fifth Street
Suite 3600
Los Angeles, California  90071
Telephone:  213 239-5100
Facsimile:  213 239-5199
bcaslin@jenner.com

Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:   312 222-9350
Facsimile:    312 527-0484
ttruax@jenner.com
mbrody@jenner.com

*Attorneys for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc. and Mitsubishi Electric Visual Solutions America, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re: Cathode Ray Tube (CRT) Antitrust Litigation | Case No. 3:07-cv-5944 SC |
| | MDL No. 1917 |
| This Document Relates To: | |
| *Electrograph Systems, Inc. et al. v. Technicolor SA, et al., No. 13-cv-05724;* | **NOTICE OF MOTION AND MOTION BY DEFENDANTS MITSUBISHI ELECTRIC CORPORATION, MITSUBISHI ELECTRIC US, INC., AND MITSUBISHI ELECTRIC VISUAL SOLUTIONS AMERICA, INC. TO DISMISS LATE-FILED COMPLAINTS ON TIMING GROUNDS** |
| *Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Technicolor SA, et al., No. 13-cv-00141;* | |
| *Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264;* | Date:    February 7, 2014 |
| *Interbond Corporation of America v. Technicolor SA, et al., No. 13-cv-05727;* | Time:   10 a.m.<br>Judge:  Honorable Samuel Conti |

*Office Depot, Inc. v. Technicolor SA, et al., No. 13-cv-05726;*

*Costco Wholesale Corporation v. Technicolor SA, et al., No. 13-cv-05723;*

*P.C. Richard & Son Long Island Corporation, et al. v. Technicolor SA, et al., No. 31:cv-05725;*

*Schultze Agency Services, LLC, o/b/o Tweeter Opco, LLC, et al. v. Technicolor SA, Ltd., et al., No. 13-cv-05668;*

*Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA, No. 3:13-cv-05262;*

*Target Corp. v. Technicolor SA, et al., No. 13-cv-05686*

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 7, 2014 at 10:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Samuel Conti, Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc., and Mitsubishi Electric Visual Solutions America, Inc. (collectively, "Mitsubishi Electric"), by their attorneys, hereby move to (1) dismiss each of the above-captioned complaints as untimely and barred by the doctrine of laches and by the statute of limitations; (2) consider Mitsubishi Electric's motion in connection with Thomson Consumer Electronics Inc.'s motion to dismiss the first amended complaint filed by Sharp against Thomson, dkt.2236; and (3) address other defects with the complaints at a later time.

This motion is based upon this Notice of Motion, Motion, and the accompanying Memorandum of Points and Authorities.  Additionally, Mitsubishi Electric requests that its motion to dismiss on timing grounds be considered in conjunction with similar arguments raised by Thomson.

1

## **TABLE OF CONTENTS**

BACKGROUND ..................................................................................................................1

ARGUMENT ....................................................................................................................3

I.  Laches Bars Plaintiffs' Complaints. ........................................................................4

     A.     Plaintiffs Unreasonably Delayed The Filing Of Their Complaints. ...........................5

     B.     Plaintiffs' Unreasonable Delay Prejudices Mitsubishi Electric...............................7

II.  The Statute Of Limitations Bars Plaintiffs' Complaints.............................................12

     A.     The Statute Of Limitations Began To Run For Mitsubishi Electric No Later Than 2005. ......................................................................................................13

     B.     Plaintiffs' Tolling Doctrines Do Not Toll The Statute Of Limitations....................14

          1.     *American Pipe* Does Not Toll The Statute Of Limitations..........................14

          2.     Fraudulent Concealment Does Not Toll The Statute Of Limitations. ..........15

          3.     Government Action Does Not Rescue Plaintiffs' Untimely Claim. ..............19

III. Mitsubishi Electric Reserves Other Arguments Regarding Legal Defects In The Complaint..................................................................................................................24

CONCLUSION..................................................................................................................24

1

## TABLE OF AUTHORITIES

2

**Page(s)**

CASES

3

4

*American Pipe & Constr. Co. v. Utah,*
   414 U.S. 538 (1974)...........................................................................................14, 15

5

*Ariz. State Bd. for Charter Schools v. U.S. Dep't of Educ.,*
   464 F.3d 1003 (9th Cir. 2006) ...........................................................................23, 24

6

7

*Arneil v. Ramsey,*
   550 F.2d 774 (2d Cir. 1977)......................................................................................15

8

*Ashley v. Boyle's Famous Corned Beef Co.,*
   66 F.3d 164 (8th Cir. 1995) (en banc) .......................................................................5

9

10

*ATM Exp., Inc. v. ATM Exp., Inc.,*
   No. 07-cv-01293, 2009 WL 2973034 (S.D. Cal. Sept. 11, 2009)..............................8

11

*Boone v. Citigroup, Inc.,*
   416 F.3d 382 (5th Cir. 2005) ...................................................................................15

12

13

*Cada v. Baxter Healthcare Corp.,*
   920 F.2d 446 (7th Cir. 1991) .....................................................................................5

14

*Conmar Corp. v. Mitsui & Co.,*
   858 F.2d 499 (9th Cir. 1988) ...................................................................................16

15

16

*Credit Suisse Secs. (USA) LLC v. Simmonds,*
   132 S.Ct. 1414 (2012)...........................................................................................22, 23

17

*Crown, Cork & Seal Co. v. Parker,*
   462 U.S. 345 (1983)...................................................................................................15

18

19

*Danjaq LCC v. Sony Corp.,*
   263 F.3d 942 (9th Cir. 2001) ...........................................................................5, 7, 12

20

*Ellis v. City of San Diego,*
   176 F.3d 1183 (9th Cir. 1999) .................................................................................15

21

22

*Evergreen Safety Council v. RSA Network, Inc.,*
   697 F.3d 1221 (9th Cir. 2012) ...................................................................................4

23

24

*Grassi v. Moody's Investors Servs.,*
   No. 11-17455, 2013 WL 5434024 (9th Cir. Oct. 1, 2013) ......................................16

25

26

*Greyhound Corp. v. Mt. Hood Stages, Inc.*,
   437 U.S. 322 (1978)..................................................................................22

*In re Cathode Ray Tube (CRT) Antitrust Litigation*
   738 F.Supp.2d 1011 (2010) .....................................................................16

*In re High Fructose Corn Syrup Antitrust Litig.*,
   293 F. Supp. 2d 854 (N.D. Ill. 2003) ......................................................13

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
   No. 07-c-05634, 2011 U.S. Dist. LEXIS 49853 (N.D. Cal. May 9, 2011).................16, 17, 18

*Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*,
   518 F.2d 913 (9th Cir. 1975) .....................................................................5

*J.M. Dungan v. Morgan Drive-Away, Inc.*,
   570 F.2d 867 (9th Cir. 1987) ...................................................................23

*Kindt v. Matsushita Elec. Indus. Co.*,
   No. 07-cv-10322 (S.D.N.Y., Nov. 13, 2007) ............................................6

*Kirby v. Illinois*,
   406 U.S. 682 (1972)..................................................................................21

*Kling v. Hallmark Card, Inc.*,
   225 F.3d 1030 (9th Cir. 2000) ...................................................................5

*Madison Square Garden, L.P. v. NHL*,
   No. 07 CV 08455, 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008).............4

*Madison v. IBP, Inc.*,
   330 F.3d 1051 (8th Cir. 2003) ...................................................................5

*McCune v. F. Alioto Fish Co.*,
   597 F.2d 1244 (9th Cir. 1979) ...................................................................4

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999), *amended*, 211 F.3d 1224 (2000) ...........13

*New York v. Hendrickson Bros., Inc.*,
   840 F.2d 1065 (2d Cir. 1988)...................................................................17

*Santa Maria v. Pac. Bell*,
   202 F.3d 1170 (9th Cir. 2000) .................................................................16

*United States v. Antar*,
   53 F.3d 568 (3d Cir. 1995)......................................................................13

iii

*United States v. Cheng Yuan Lin*,
    No. 09-cr-00131 (Feb. 10, 2009 N.D. Cal.) ...................................................20

*United States v. Chung Cheng Yeh*,
    No. 10-cr-00231 (March 30, 2010 N.D. Cal.) ...................................20, 21, 22

*United States v. Northrop Corp.*,
    91 F.3d 1211 (9th Cir. Cal. 1996) ...........................................................12

*United States v. Read*,
    658 F.2d 1225 (7th Cir. 1981) ...............................................................13

*United States v. Samsung SDI Company, Ltd.*,
    No. 3:11-cr-00162 ...................................................................................20

*United States v. Seung-Kyu Lee et al.*,
    No. 10-cr-00817 (November 9, 2010 N.D. Cal.) ....................................20

*United States v. Wen Jun Cheng*,
    No. 09-cr-00836 (Aug. 18, 2009 N.D. Cal.) ..........................................20

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
    413 F.3d 553 (6th Cir. 2005) ................................................................15

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971)...........................................................................5, 13

**STATUTES**

740 Ill. Comp. Stat. § 10/7(2) .........................................................................13

15 U.S.C. § 15b .................................................................................................13

15 U.S.C. § 16(i) ..........................................................................19, 20, 22, 23

15 U.S.C. § 78p(b) ............................................................................................23

Ariz. Rev. Stat. § 44-1410(B) ..........................................................................13

N.Y. C.P.L.R. § 214(2) .....................................................................................13

Cal. Bus. & Prof. Code § 16750.1 ...................................................................13

Cal. Bus. & Prof. Code § 17208 ......................................................................13

Fla. Stat. Ann. § 95.11(3)(f)..............................................................................13

Iowa Code Ann. § 553.16(2) ............................................................................................13

Kan. Stat. Ann. § 60-512(2) ...........................................................................................13

Mass. Gen. Laws Ann. Chapter 260, § 5A ....................................................................13

Mich. Comp. Laws Ann. § 445.781 ................................................................................13

Minn. Stat. Ann. § 325D.64 ...........................................................................................13

Miss. Code Ann. § 15-1-49 .............................................................................................13

N.C. Gen. Stat. § 75-16.2 ...............................................................................................13

N.M. Stat. Ann. § 57-1-12 ..............................................................................................13

N.Y. Gen. Bus. Law § 340(5) .........................................................................................13

Neb. Rev. Stat. § 25-206 .................................................................................................13

Nev. Rev. Stat. § 598A.220 ............................................................................................13

Wash. Rev. Code § 19.86.120 ........................................................................................13

Wis. Stat. Ann. § 133.18(2) ............................................................................................13

**OTHER AUTHORITIES**

ABA Antitrust Section, Monograph No. 11, *Contribution And Claim Reduction In Antitrust Litigation* 19 (1986) ................................................................................................11

Korean Extradition Treaty, art.(2)(1), entered into force Dec. 20, 1999, S. Treaty Doc. 106-2, TIAS 12962 ........................................................................................................21

Fed. R. App. P. 4(b)(1)(A) ..............................................................................................20

Fed. R. Civ. P. 9(b) ...................................................................................................16, 18

Hee-Eun Kim, *Developments in Criminal Enforcement of Competition Law in Korea* ...............21

**STATEMENT OF THE ISSUES**

1.      Whether the plaintiffs' complaints are barred by the doctrine of laches.

2.      Whether the plaintiffs' complaints are barred by the statute of limitations.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc., f/k/a Mitsubishi Electric & Electronics USA, Inc.,[1] and Mitsubishi Electric Visual Solutions America, Inc. (collectively, "Mitsubishi Electric") submit this memorandum in support of their motion to dismiss the new round of complaints filed against them in this matter by the Direct Action Purchasers ("plaintiffs").[2]

**BACKGROUND**

As this Court is well aware, numerous antitrust lawsuits were filed following the announcement in 2007 of a federal criminal antitrust investigation into the Cathode Ray Tube ("CRT") industry.  In November 2013, six years after the first CRT complaint was filed, two years after the plaintiffs opted out of the class cases, and eight months after these same plaintiffs attempted to add Mitsubishi Electric to their pending cases, plaintiffs filed ten new lawsuits against Mitsubishi Electric, which have been transferred to this Court.  As the Court is aware, all of these

---

[1] Plaintiffs have filed complaints naming Mitsubishi Electric & Electronics, USA, Inc. as a defendant.  As of October 1, 2012, the company changed its name to Mitsubishi Electric US, Inc.

[2] Mitsubishi Electric moves to dismiss the following complaints: *Best Buy Co, Inc. v. Technicolor SA,* No. 13-cv-05264; *Siegel v. Technicolor SA*, No. 13-cv-00141; *Costco Wholesale Corp. v. Technicolor SA (f/k/a Thomson SA) et al.*, No. 13-cv-05723; *Electrograph Systems, Inc. v. Technicolor SA*, No. 2:13-cv-05724; *Interbond Corp. of Am. v. Technicolor SA*, No. 13-cv-05727; *Office Depot, Inc. v. Technicolor SA*, No. 13-cv-05726; *P.C. Richard & Son Long Island Corp. v. Technicolor SA*, No. 13-cv-05725; *Sears, Roebuck & Co. v. Technicolor SA*, No. 13-cv-05262; *Schultze Agency Services, LLC v. Technicolor SA*, No. 13-cv-05668; and *Target Corp. v. Technicolor SA,* No. 13-cv-05686.  While these plaintiffs refer to themselves as "direct purchasers," none of these plaintiffs are direct purchasers of CRTs, the allegedly price-fixed good.  Instead, they purchased products containing CRT tubes, and claim to sue under an exception to the *Illinois Brick* doctrine which Mitsubishi Electric will contest if this motion is not granted.

plaintiffs sought leave in March 2013 to amend their initial opt-out complaints to include Mitsubishi Electric.  Dkts. 1609-10.  The Court denied that motion on September 26, 2013.  Dkt. 1959.[3]

Plaintiffs should not be allowed to circumvent the Court's September 26, 2013 Order denying leave to amend (the "Order") through the filing of new complaints.  The rationale of the Order was that Mitsubishi Electric was a stranger to the CRT litigation.  That rationale applies equally to plaintiffs' newest complaints.  Throughout the last six years of litigation, "Mitsubishi [Electric] has never been connected with this case in any substantial way."  Dkt. 1959 at 5. Mitsubishi Electric never received a grand jury subpoena in the federal investigation.  Mitsubishi Electric has never been the subject of any government investigation here or abroad into the pricing of CRTs or CRT Products.  No Mitsubishi Electric employees have been subpoenaed or indicted in any CRT investigation.  And, prior to plaintiffs' recent complaints, no Mitsubishi Electric entity has been named a defendant in any lawsuit in this proceeding.

Mitsubishi Electric's complete absence from the CRT litigation and the government investigation is no accident.  Mitsubishi Electric was, at best, a minor participant in the CRT market, particularly during the time period at issue in this litigation.  The last act alleged in any complaint against Mitsubishi Electric was in 2004.  *E.g.*, Sears Compl. ¶ 151.  Mitsubishi Electric exited the market in CPTs (CRTs for TVs) in 1998.  This was only shortly after the beginning of the conspiracy alleged in the complaint, which plaintiffs claim ran from 1995 to 2007. *E.g.*, *id.* ¶ 1.  As for CDTs (CRTs used in monitors), Mitsubishi Electric did not ship any such CDTs to the United

---

[3] In addition to the above complaints subject to this motion, Tech Data Corp. and Dell Inc. filed amended complaints purporting to name Mitsubishi Electric entities as defendants.  *Tech Data Corp.  et al. v. Hitachi, Ltd. et al.*, No. 13-cv-00157 (Sept. 9, 2013), Dkt. 1911; *Dell Inc. et al. v. Hitachi, Ltd. et al.*, No. 3:13-cv-02171, (Jun. 10, 2013), Dkt. 1726.  Neither Dell nor Tech Data sought leave from this Court to amend their complaints, nor have either served their purported amended complaints upon any Mitsubishi Electric entity.

States after September 2003. Even when Mitsubishi Electric was a participant in the CRT market, Mitsubishi Electric's sales volumes a very small portion of the total market. *Id*. ¶ 106. Finally, plaintiffs allege that Mitsubishi Electric conspired with other defendants to raise the price of CRTs while at the same time being a *purchaser* of CRT tubes. *Id*. ¶ 30-31. Thus, if plaintiffs are to be believed, Mitsubishi Electric was conspiring to set higher prices for the very goods it was purchasing and was therefore an apparent victim of the conspiracy.

## ARGUMENT

Plaintiffs' complaints do not challenge the fundamental facts that Mitsubishi Electric was at most a small participant in the market, it exited the market long ago, and it was a purchaser of CRTs. Given Mitsubishi Electric's tenuous connection to this litigation, it is not surprising that plaintiffs only recently, and belatedly, attempted to drag Mitsubishi Electric into this lawsuit. This is true even though the very evidence upon which plaintiffs' complaints are based has been in plaintiffs' possession, and that of other plaintiffs in this MDL proceeding, for years. Plaintiffs have waited too long to make these stale allegations, and their complaints should be dismissed.

As shown in Section I below, plaintiffs' complaints are barred by the doctrine of laches. Plaintiffs unreasonably delayed filing their complaints for up to six years. If these cases proceed, this delay will prejudice the Court and Mitsubishi Electric. Either (1) the Court could delay the pretrial proceedings so that Mitsubishi Electric could defend itself along with the other defendants (a step this Court has already stated it would like to avoid); or (2) Mitsubishi Electric would be required to race to catch up with the schedule and be saddled with the discovery that has already taken place; or (3) Mitsubishi Electric would be required to "go it alone" in a separate, later action. Neither of these options avoids the prejudice to Mitsubishi Electric or the Court caused by plaintiffs' unreasonable delay. If Mitsubishi Electric is included in the pending actions, either the Court will be prejudiced if the schedule is delayed, or Mitsubishi Electric will be prejudiced if the

schedule is not delayed.  If the suit against Mitsubishi Electric proceeds on its own schedule, Mitsubishi Electric will be severely prejudiced, as it will face the threat of heightened damage or settlement demands as the only defendant remaining in the case after the claims against other, larger parties, have been resolved.  The Court previously acknowledged "[d]iscovery in this case has proceeded apace, and forcing Mitsubishi to enter litigation now would put it at an unfair, prejudicial disadvantage." Dkt. 1959 at 5.  Plaintiffs' new complaints do not avoid this unfair prejudice.

Independent of the equitable arguments, plaintiffs' tardiness in asserting their claims has pushed their claims outside any fair drawing of the applicable statute of limitations, as shown in Section II.  Mitsubishi Electric last shipped a CRT to the United States more than a decade ago, which is clearly outside of the four-year statute of limitations.  To avoid the limitations period, plaintiffs rely on various tolling doctrines, notably *American Pipe* tolling, fraudulent concealment, and the government action doctrine.  None of these theories rescue plaintiffs' time-barred claims.

## I.      Laches Bars Plaintiffs' Complaints.

"Laches is an equitable defense that prevents a plaintiff who, 'with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Evergreen Safety Council v. RSA Network, Inc*., 697 F.3d 1221, 1226 (9th Cir. 2012).  To demonstrate laches, the defendant must show (a) an unreasonable delay by the plaintiff; and (b) resulting prejudice.  *Id*.  Laches can be raised in a motion to dismiss.  *McCune v. F. Alioto Fish Co*., 597 F.2d 1244, 1249-50 (9th Cir. 1979) (affirming trial court's dismissal based on laches).  An antitrust claim may be dismissed for laches "if unreasonable delay and prejudice are clear on the face of the complaint." *Madison Square Garden, L.P. v. NHL*, No. 07 CV 08455, 2008 WL 4547518, at *10 (S.D.N.Y. Oct. 10, 2008).

Laches is a defense to an antitrust claim where the timeliness of the claim depends on tolling doctrines.  While a defendant in a Clayton Act case ordinarily may not raise laches as a defense to a

damages claim brought within the Act's limitations period, laches may be raised where (as here) plaintiff relies upon equitable tolling doctrines. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1991) (rejecting tolling of limitations where plaintiff failed to bring suit within a reasonable time); *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*, 518 F.2d 913, 926 (9th Cir. 1975). The Eighth Circuit made this point explicitly, "if plaintiff asserts that a federal statute of limitations should be extended by applying an equitable principle such as fraudulent concealment or tolling, plaintiff's unreasonable delay—whether or not it is called laches—becomes relevant." *Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 170 (8th Cir. 1995) (en banc), *abrogation on other grounds recognized in Madison v. IBP, Inc.*, 330 F.3d 1051, 1056 (8th Cir. 2003).

### A.   Plaintiffs Unreasonably Delayed The Filing Of Their Complaints.

Even accepting the allegations in the complaints as true, the alleged CRT price-fixing conspiracy ended no later than November 25, 2007. *E.g.*, Best Buy Compl. ¶ 125. Plaintiffs allege Mitsubishi Electric's participation in the CRT business ended in 2005. *Id.* ¶ 161. The last conspiratorial act alleged in the complaints concerning Mitsubishi Electric took place in July, 2004. *Id.* Thus, absent some type of tolling, each plaintiff's complaint is barred by the statute of limitations. Dkt. 1856 at 6; *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) (statute begins to run as of the last overt act in furtherance of the conspiracy). Plaintiffs are not entitled to tolling because they unreasonably delayed filing their complaints.

The reasonableness of plaintiffs' delay is measured from the time the plaintiff *knew or should have known* of the potential claim. *Kling v. Hallmark Card, Inc.*, 225 F.3d 1030, 1036 (9th Cir. 2000). Courts also consider the cause of delay in determining whether it was reasonable. *Danjaq LCC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001). Here, plaintiffs waited years after they first knew or should have known of their claims against Mitsubishi Electric before even attempting to file suit against Mitsubishi Electric in March 2013.

Beginning on November 8, 2007, news stories around the world reported that European, Japanese, and United States antitrust authorities were investigating the CRT industry. On November 13, 2007, the first putative class action lawsuit alleging a CRT price-fixing conspiracy was filed. *Kindt v. Matsushita Elec. Indus. Co*., No. 07-cv-10322 (S.D.N.Y., Nov. 13, 2007). Plaintiffs admit these events in 2007 put parties "on notice of the facts" alleged in the complaints. Dkt. 1609 at 12. Plaintiffs knew that they had purchased products containing CRTs and they knew from whom they purchased those products. Yet, plaintiffs took no action until almost six years later when they belatedly took action. Plaintiffs first sought leave to add Mitsubishi Electric to their existing complaints on March 26, 2013. Dkt. 1609. In so doing, they admitted that their actions were prompted by the indirect purchaser plaintiffs ("IPPs") class's effort to add Mitsubishi Electric to the class action. *Id*. at 5. Plaintiffs' continued delay, especially where plaintiffs knew from whom they purchased CRTs and CRT Products, reflects an inexcusable lack of diligence.

Plaintiffs' failure to investigate the possibility of claims against Mitsubishi Electric is unreasonable given that they chose to opt out of the class action lawsuit in response to notice identifying the lawsuits and describing their options. Dkt. 844-1. That notice advised plaintiffs to consult counsel and that by opting out, they would be responsible for their own claims. *Id*. at 3, 8. At the moment plaintiffs opted out of the class, and likely well before, plaintiffs were represented by sophisticated counsel who obtained access to the discovery in the case. Upon opting out, plaintiffs were responsible for identifying potential defendants not already named and otherwise investigating the merits of their claims. On August 22, 2012, the IPPs moved for leave to amend their complaint to add Mitsubishi Electric.[4] Although the IPPs did not ultimately amend their

---

[4] The special master recommended that the IPPs should be granted leave to add Mitsubishi Electric to their complaint. Dkt. 1453. Mitsubishi Electric informed IPPs of its intention to object to the

complaints, that motion put plaintiffs on further notice of the possibility of claims against Mitsubishi Electric. Nonetheless, plaintiffs waited another seven months before taking action. Plaintiffs have previously claimed that they had to look through the "voluminous document productions" before they could verify that the IPP motion presented an adequate basis to add Mitsubishi Electric. Dkt. 1609 at 5. This excuse fails. Plaintiffs had access to those "voluminous document productions" for nearly a year and plaintiffs did not include any new allegations against Mitsubishi Electric that the IPPs had not already made. *Compare* IPP Proposed Fourth Am. Compl. ¶¶ 106-109, 188 *with* Costco Am. Compl. ¶¶ 63-65, 148.

Courts ruling on the laches defense routinely consider the cause of the plaintiffs delay, but the plaintiffs have never explained why it took them so long to file this suit. Whether measured from November 2007, when the CRT investigations came to light and other lawsuits were filed; or November 2011, when plaintiffs opted out of the class action; or August 2012, when the IPPs attempted to add Mitsubishi Electric; plaintiffs' delay in filing this suit is unreasonable and plaintiffs provide no legitimate explanation for their delay.

### B.      Plaintiffs' Unreasonable Delay Prejudices Mitsubishi Electric.

For purposes of the laches inquiry, prejudice takes two forms: evidentiary prejudice and expectations-based prejudice. "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded, or who have died." *Danjaq LCC*, 263 F.3d at 955. Expectations-based prejudice occurs when a defendant "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *Id*. Mitsubishi Electric has suffered evidentiary and expectations-based prejudice.

---

special master's report and recommendation and the parties stipulated that the IPPs would name Mitsubishi Electric as a co-conspirator, not a defendant. Dkt. 1496.

Mitsubishi Electric has suffered evidentiary prejudice because critical information necessary to prepare its defense has become exponentially harder to retrieve as each month – and year – of delay by plaintiffs rolled by.  Evidence went stale.  Memories faded.  What might have been possible to preserve, however narrowly and partially, even 15 months ago, cannot be preserved today.  This is particularly true given that Mitsubishi Electric stopped shipping CDTs to the United States in September 2003 and completely wound down CDT operations globally in 2005.  Mitsubishi Electric ceased its CPT business even earlier, in 1998.  Mitsubishi Electric did not receive any governmental investigative demands in the CRT investigation, and thus did not collect documents or identify witnesses to defend itself.  As a result of plaintiffs' delay, an evidence collection task that would have been challenging two years ago now borders on impossible.  *See ATM Exp., Inc. v. ATM Exp., Inc*., No. 07-cv-01293, 2009 WL 2973034, at *9 (S.D. Cal. Sept. 11, 2009) (laches applies where "memories have faded" and "material facts" no longer available).

Nor does it suffice for plaintiffs to claim that Mitsubishi Electric should have previously investigated and preserved information that *may* have become relevant to a claim that *might* have been filed at some unknown point in the future by some unidentified plaintiffs.  Setting aside the impracticability of conducting a global investigation of a business where the company has not been sued and there are valid reasons to believe it never will be sued, Mitsubishi Electric had no notice of the allegations plaintiffs would make against them, much less the identity of those plaintiffs.  Moreover, without being a party (until quite recently at least), Mitsubishi Electric lacked access to the voluminous discovery materials produced by the parties in the case.  Mitsubishi Electric was not obligated to preserve faded and fleeting evidence, for no valid reason, while searching almost completely in the dark.

In similar fashion, Mitsubishi Electric has suffered expectations-based prejudice from plaintiffs' delay and Mitsubishi Electric cannot plausibly "catch up."  Full discovery commenced on

March 8, 2010, Dkt. 1609 at 2, and Mitsubishi Electric has, until only a few days ago, not been part of it.  The Court has previously observed that Mitsubishi Electric has been a "stranger" to the pending CRT litigation.  Mitsubishi Electric will have to master the discovery in record time to have any chance to meet the current schedule.  Here is snapshot of what has occurred without Mitsubishi Electric's participation and to which Mitsubishi Electric is only beginning to gain access:

- Document Discovery.  Mitsubishi Electric understands document discovery is essentially completed and the parties have produced over *four million pages of documents*, many of which are in foreign languages.  Dkt. 1325 at 8 n.5.  Mitsubishi Electric has not participated in any document discovery, nor has it had access to any of the documents until recently.

- Other Written Discovery.  Mitsubishi Electric understands that substantial written discovery has already taken place.  Mitsubishi Electric has not participated this written discovery, nor has it had any access to the discovery until recently.

- Deposition Discovery.  As of the date of this filing, Mitsubishi Electric is informed that 98 depositions have taken place.  Mitsubishi Electric has not participated in any of these depositions, nor has it had any access to the transcripts until recently.

- Expert Discovery.  Plaintiffs' expert reports on the merits are due January 21, 2014 and Defendants' oppositions to plaintiffs' expert reports are due April 22, 2014.  Mitsubishi Electric has not participated in this expert discovery, nor has it had any access until recently.

- Trial Schedule.  The case has been set for trials to begin on March 9, 2015.[5]

Not only is the volume of discovery that has already been conducted enormous, but all fact and expert discovery must be completed by September 5, 2014—only ten months from now.  (Dkt.

---

[5] Mitsubishi Electric has also been deprived the opportunity to participate in motion practice in this case, including motions regarding discovery.  As of the date of this filing, there are over 2,200 docket entries – motions, pleadings, and other documents – in the MDL's electronic case file.

1991.)   In short, unless Mitsubishi Electric will proceed on its own schedule, it will need to complete all discovery in approximately ten months, notwithstanding that the other parties in the case have had more than three years to conduct such discovery.  Ironically, this is only three months longer than the time it took plaintiffs to perform "targeted reviews" of the "voluminous documents" produced in the case to determine whether they could make out a claim against Mitsubishi Electric. Plaintiffs also expect Mitsubishi Electric to prepare a defense at trial in this massive antitrust case in just sixteen months, a herculean task particularly when considering that Mitsubishi Electric must gather and review its own documents, analyze the millions of pages of documents the plaintiffs and other defendants have produced, identify, locate, and interview fact witnesses (a difficult task in any case, but particularly so where the conduct at issue is decades old), identify and prepare expert witnesses, conduct depositions and review the thousands of pages of transcripts of depositions already conducted at which it was not represented, and file motions and other pleadings relevant to its defenses.

Plaintiffs are likely to argue that safeguards mitigate the prejudice they seek to impose upon Mitsubishi Electric, such as the existence of a joint defense group and/or the presence of defense counsel representing other defendants.  None of these safeguards cure the prejudice to Mitsubishi Electric.  The fact that counsel representing other defendants have worked on this case for years is of no help to Mitsubishi Electric.  Those lawyers are not Mitsubishi Electric's lawyers; they represent their own clients' interests.  Those lawyers have neither the obligation nor the expectation of representing an unknown party's interests when conducting discovery or filing motions, and they cannot simply transfer their deep factual knowledge of the discovery materials to Mitsubishi Electric's lawyers as if by osmosis.  The existence of a joint defense group may avoid some logistical pitfalls inherent in complex discovery, but it neither transfers the knowledge or work

product of other defendants to Mitsubishi Electric nor identifies for Mitsubishi Electric the unique inquiries that will allow Mitsubishi Electric to defeat liability.

In denying plaintiffs' earlier motions to amend, this Court recognized that adding Mitsubishi Electric to the case at this late date would prejudice Mitsubishi Electric.  Dkt. 1959 at 5.  Plaintiffs' effort to circumvent the Court's Order is not remedied by asking the Court to permit the case against Mitsubishi Electric to proceed on a separate discovery and trial schedule.  If allowed, that "solution" would greatly prejudice the Court.  Moreover, even if this Court were willing to entertain the vast inefficiency and duplication of such a dual-track approach, such a proposal has no impact upon evidentiary prejudice.  A new schedule cannot restore the faded memories of witnesses or retrieve evidence lost in the due course of time through no fault of Mitsubishi Electric.

Placing Mitsubishi Electric on a later, separate schedule will intensify the prejudice to Mitsubishi Electric.  In a complex, multi-party case, such as an antitrust action, no defendant can afford the risk of being left "holding the bag" after other defendants settle.  Antitrust damage actions do not permit contribution among defendants.  "[T]he absence of a contribution remedy has raised the price of settlement for smaller, possibly less culpable defendants."  ABA Antitrust Section, Monograph No. 11, *Contribution And Claim Reduction In Antitrust Litigation* 19 (1986).  A defendant left to the end of the case faces the risk of overwhelming exposure – either in a verdict or settlement – simply by virtue of being last.  Indeed, the ABA Antitrust Section's task force on contribution concluded that the effect of the "whipsaw" in large national class action litigation "has been overwhelming" and that coerced settlement "is a very real problem faced by many companies."  *Id*.  Here, the whipsaw effect would be all but assured if Mitsubishi Electric were put on a later track behind the other cases.  Each plaintiff could turn to Mitsubishi Electric for any damage claims left unsatisfied by prior settlements or judgments.  Thus, if this case is allowed to go

forward, plaintiffs' delay will unfairly prejudice Mitsubishi Electric and benefit plaintiffs.  In no case should plaintiffs benefit from their delay in filing suit.

In sum, laches bars all the plaintiffs' suits for the same reasons this Court denied leave to amend the complaints to add Mitsubishi Electric:  "Mitsubishi has never been connected with this case in any substantial way" and because "[d]iscovery in this case has proceeded apace, [] forcing Mitsubishi to enter litigation now would put it at an unfair, prejudicial disadvantage."  Dkt. 1959 at 5.  Dismissal of these late-filed actions is not a harsh result.  The facts underlying these cases were known in 2007.  Notwithstanding having knowledge of the relevant facts, plaintiffs chose to take no action to add Mitsubishi Electric to their lawsuits until March 26, 2013, a move this Court correctly rejected as too late.  Laches reflects the policy that claims must be timely filed.  Otherwise, the Court and defendants are unfairly burdened by the resulting delay.  *Danjaq LCC*, 263 F.3d at 955 (addressing prejudice to defendants).  In light of plaintiffs' unilateral delay, it serves the interests of equity and the purposes of the statute of limitations to reject plaintiffs' claims as untimely.  *United States v. Northrop Corp.*, 91 F.3d 1211, 1217 (9th Cir. Cal. 1996) ("Statutory limitation periods are 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.") (internal citation omitted).  Exposing Mitsubishi Electric to liability for belated claims related to an ancient product where plaintiffs have knowingly slept on their rights, serves no legitimate purpose.

## II.    The Statute Of Limitations Bars Plaintiffs' Complaints.

Plaintiffs' claims, which are subject to three and four-year statutes of limitations, were brought more than four years after the claims accrued and are barred unless a tolling doctrine applies.  As shown above, plaintiffs' inequitable conduct precludes their reliance on any tolling doctrine.  Even if this Court were to consider tolling, plaintiffs' claims are untimely.  Neither

fraudulent concealment nor *American Pipe* tolling apply to Mitsubishi Electric.  Government action tolling only tolls the statute only from March 18, 2011, to August 30, 2012.  As a result, the statute of limitations for claims against Mitsubishi Electric had long expired when these suits were filed.

### A.  The Statute Of Limitations Began To Run For Mitsubishi Electric No Later Than 2005.

The Clayton Act requires plaintiffs to bring their antitrust claims "within four years after the cause of action accrued."  15 U.S.C. § 15b.[6]  The statute of limitations begins to run as of the defendant's last overt act in furtherance of the conspiracy.  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971). Withdrawal from a conspiracy is, by definition, a party's last overt act in furtherance of a conspiracy.  *United States v. Read*, 658 F.2d 1225, 1232 (7th Cir. 1981).  When a co-conspirator withdraws from a conspiracy, the statute of limitations as to that co-conspirator begins to run from the date of the withdrawal.  *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999); *United States v. Antar*, 53 F.3d 568, 584 (3d Cir. 1995).  Although withdrawal can be a complex fact question, where a party has sold or transferred the business entity involved in a conspiracy, that party has conclusively withdrawn from the conspiracy.  *Morton's Market, Inc.*, 198 F.3d at 839 ("With the sale of its dairy, [defendant] certainly 'retired' and totally severed its ties to the milk price-fixing conspiracy."), *amended*, 211 F.3d 1224 (2000) (clarifying that tolling may still apply to withdrawal); *see In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854, 860 (N.D. Ill. 2003) (termination of employment

---

[6] Most state law claims are governed by a four-year statute of limitations.  Ariz. Rev. Stat. § 44-1410(B); Cal. Bus. & Prof. Code § 16750.1; Cal. Bus. & Prof. Code § 17208; Fla. Stat. Ann. § 95.11(3)(f); 740 Ill. Comp. Stat. § 10/7(2); Iowa Code Ann. § 553.16(2); Mass. Gen. Laws Ann. ch. 260, § 5A; Mich. Comp. Laws Ann. § 445.781; Minn. Stat. Ann. § 325D.64; Neb. Rev. Stat. § 25-206; Nev. Rev. Stat. § 598A.220; N.M. Stat. Ann. § 57-1-12; N.Y. Gen. Bus. Law § 340(5); N.C. Gen. Stat. § 75-16.2; Wash. Rev. Code § 19.86.120.  Some are subject to a three-year statute of limitations.  Kan. Stat. Ann. § 60-512(2); Miss. Code Ann. § 15-1-49; N.Y. C.P.L.R. § 214(2).  One has a six-year statute of limitations.  Wis. Stat. Ann. § 133.18(2).

1   from conspiring company "gives rise to a rebuttable presumption that [defendants] effectively

2   withdrew from any conspiracy").

3          While Mitsubishi Electric denies it participated in any CRT conspiracy, Mitsubishi Electric

4   indisputably withdrew from any alleged price-fixing conspiracy no later than 2005, when it

5   completely divested from the CRT business.  This is reflected in plaintiffs' complaints, which allege

6   that Mitsubishi Electric was involved in the conspiracy until 2005 (*e.g.*, Best Buy Compl. ¶ 161),

7   although the last conspiratorial act alleged concerning Mitsubishi Electric took place in July, 2004

8   (*e.g.*, Circuit City Compl. ¶ 153).  Mitsubishi Electric withdrew from the CDT Finished Products

9   market even earlier.  On April 1, 2000,  Mitsubishi Electric conveyed "its worldwide display

10  monitor business operations" to a joint venture with NEC Corp.  Plaintiffs allege the entire

11  conspiracy ended on or before November 25, 2007.  *E.g.*, Best Buy Compl. ¶ 125.

12         Under any of these dates, the complaints are untimely.  The eight year delay between 2005

13  and the filing of these complaints in November 2013 or the six year delay between November 2007

14  and the filing of the complaints, exceeds the limitations period.  Unless the limitations period was

15  tolled, plaintiffs' claims are untimely.

16         **B.**     **Plaintiffs' Tolling Doctrines Do Not Toll The Statute Of Limitations.**

17            **1.**     ***American Pipe* Does Not Toll The Statute Of Limitations.**

18         Plaintiffs assert, pursuant to *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554

19  (1974), that their claims are tolled as a result of the filing of putative class actions in November

20  2007.  *E.g.*, Costco Compl. ¶ 239.   In *American Pipe*, the Supreme Court held that "the

21  commencement of a class action suspends the applicable statute of limitations as to all asserted

22  members of the class who would have been parties had the suit been permitted to continue as a class

23  action."  *American Pipe*, 414 U.S. at 554.  In a subsequent statement of the doctrine, the Court

24  emphasized the prior class action must concern a defendant against whom tolling is asserted.

25

26

Tolling is premised on the notion that there will be "no potential for unfair surprise" to a defendant because the existence of the class suit will prompt the defendant to "preserve evidence and witnesses respecting the claims of all the members of the class."  *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353 (1983).  Class action tolling is an equitable tolling doctrine.  *Ellis v. City of San Diego*, 176 F.3d 1183, 1189 n.3 (9th Cir. 1999).

*American Pipe* tolling does not apply to a party that was not a defendant in the putative class action.  As the Fifth Circuit held in *Boone v. Citigroup, Inc*., 416 F.3d 382, 392 (5th Cir. 2005), it is "facially obvious" that *American Pipe* tolling does not apply to defendants not sued by the class.  *See Wyser-Pratte Mgmt. Co. v. Telxon Corp*., 413 F.3d 553, 567 (6th Cir. 2005) ("class action tolling does not apply to a defendant not named in the class action complaint"); *Arneil v. Ramsey*, 550 F.2d 774, 782 n.10 (2d Cir. 1977) (tolling the limitations period as to a person not named as a defendant in the class suit "would not comport with reason.").

Mitsubishi Electric is not – and has never been – a defendant in any putative class action regarding CRTs.  The class action complaints did not allege any involvement of Mitsubishi Electric in any alleged wrongdoing, let alone sufficient information to put Mitsubishi Electric on notice of claims that later opt-out plaintiffs may make against it.  Thus, *American Pipe* tolling is inapplicable.

### 2.    Fraudulent Concealment Does Not Toll The Statute Of Limitations.

Plaintiffs rely upon the equitable doctrine of fraudulent concealment to toll the statute of limitations.  *E.g*., Costco Compl. ¶¶ 224-38.  That doctrine permits a plaintiff to toll the limitations period if plaintiff can prove that (1) it was affirmatively misled; (2) it had neither actual nor constructive knowledge of the facts giving rise to its claim; and (3) it exercised due diligence in attempting to discover the facts.  *Conmar Corp. v. Mitsui & Co*., 858 F.2d 499, 502 (9th Cir. 1988).

Plaintiffs carry the burden of pleading, and ultimately proving, fraudulent concealment.  *Id*.  An allegation of fraudulent concealment must meet the heightened pleading standards of Fed. R.

Civ. P. 9(b).  *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 07-c-05634, 2011 U.S. Dist. LEXIS 49853, *69  (N.D. Cal. May 9, 2011).  "Conclusory statements are not enough. [Defendants] must plead with particularity the circumstances of the concealment and the facts supporting its due diligence."  *Conmar Corp.*, 858 F.2d at 502.  To comply with Rule 9(b), a complaint must allege with particularity the circumstances constituting fraud "including the who, what, when, where, and how of the misconduct charged."  *Grassi v. Moody's Investors Servs.*, No. 11-17455, 2013 WL 5434024, at *1 (9th Cir. Oct. 1, 2013).  Applied to this case, plaintiffs must plead affirmative conduct by Mitsubishi Electric to mislead the plaintiffs which goes "above and beyond the wrongdoing upon which" plaintiffs' claims are based.  *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000).[7]

Plaintiffs' fraudulent concealment allegations must state with particularity either (a) how Mitsubishi Electric affirmatively misled plaintiffs or (b) identify those specific actions of other defendants to affirmatively mislead plaintiffs that should be imputed to Mitsubishi Electric.  *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2011 U.S. Dist. LEXIS 49853 at *69.  The complaints fail to allege either requirement.  The complaints contain no specific allegation that *Mitsubishi Electric* misled any plaintiff.  *E.g.*, Circuit City Compl. ¶¶ 224-38.  Thus, plaintiffs must rely on imputed conduct.  Regarding the conduct of others, the actions of a co-conspirator may only be imputed to a defendant during the time that it participated in the conspiracy.  *See New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1084-85 (2d Cir. 1988).  In that vein, plaintiffs' allegations fall into a few categories, none of which are sufficient to sustain plaintiffs' pleading obligation:

---

[7] While the Court has addressed other limitations issues, the Court has not considered the sufficiency of plaintiffs' pleadings regarding Mitsubishi Electric, and therefore the fraudulent concealment issue raised in this motion has not been previously decided in this case.  *See, e.g.,* 738 F. Supp. 2d 1011, 1024-25 (N.D. Ca. Mar. 30, 2010), Dkt. 665.

- Conduct that is not affirmatively misleading to plaintiffs.  Plaintiffs rely upon certain internal documents:  "[A] February 1999 document reports on Samsung SDI's visit to North American CPT companies . . . and reflects that the co-conspirators discussed future prices despite the fact that 'according to the North American antitrust laws, the companies in the same industry are not supposed to talk,'" Circuit City Compl. ¶ 230; "An MTPD document cautions that 'we are best to not share the sales data that might be violation of anti-trust rules,'" ¶ 230.  These documents were entirely internal to defendants, and could not have misled plaintiffs;

- Standard boilerplate allegations, usually without dates.  Plaintiffs allege: "Defendants engaged in a secret conspiracy that did not give rise to facts that would put Circuit City . . . on inquiry notice," ¶ 224; "Defendants' agreement, understanding and conspiracy were kept secret," ¶ 225; "Defendants and their co-conspirators organized glass meetings to avoid detection, conducted bilateral meetings in secret and agreed at glass meetings to orchestrate the giving of pretextual reasons for their pricing," ¶ 226; "conspiracy was inherently self-concealing," ¶ 227; "Defendants and their co-conspirators agreed not to publicly discuss the existence or nature of the conspiracy," ¶ 229.  These allegations, which are devoid of specificity required by Rule 9(b), fail to plead acts of concealment;

- Actions not in furtherance of the conspiracy.  Plaintiffs allege: "A March 1999 document summarizes a bilateral meeting between Thomson and Samsung SDI, and notes that '[t]his concerns conversations between working-level people in the same industry which is strictly forbidden," ¶ 230.  This allegation does not involve Mitsubishi Electric or describe any effort to continue to conceal conspiratorial acts.

At this point in the litigation – more than three years into discovery and six years after the government's investigation became public – plaintiffs should be able to identify highly specific

facts that support their fraudulent concealment claim.  They fail to do so.  Instead, they rely upon recycled boilerplate allegations and generic undated documents to shoehorn Mitsubishi Electric into the case.  And they make no effort to explain which conduct, if any, should be imputed to Mitsubishi Electric and why.  "So many years after this MDL's inception, Plaintiffs should be able to provide something more than boilerplate allegations about alleged conspirators."  Order at *2, Sept. 26, 2013, Dkt. 1960.

Plaintiffs' allegations amount to nothing more than the fact that there was an antitrust conspiracy.  If the existence of a conspiracy is sufficient to toll the statute of limitations, the statute of limitations will be tolled in every antitrust conspiracy case.  That is inconsistent with Congressional intent – Congress did not enact a four-year statute of limitations for individual antitrust cases and fail to enact a statute of limitations for conspiracy cases.  To the contrary, Congress enacted a uniform four-year statute of limitations applicable to all antitrust cases.  To plead fraudulent concealment, plaintiffs must demonstrate precisely that – fraudulent concealment by the defendants of their conduct.  The complaint alleges no such conduct by Mitsubishi Electric, or attributable to Mitsubishi Electric.  *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2011 U.S. Dist. LEXIS 49853, *69 (holding lack of particularity with regard to specific defendants warranted dismissal).

Plaintiffs have likewise failed to allege the other elements of fraudulent concealment.  They fail to allege that they did not have actual or constructive knowledge of the facts giving rise to their claim, and they fail to allege that they exercised due diligence in attempting to discover the facts.  Whatever can be said prior to November 2007, plaintiffs cannot make these claims once it was publicly known that the government was investigating CRT manufacturers and other suits had been filed.  Plaintiffs have already advised this Court that the facts underlying their claim were well known in November 2007.  Thus, even if Mitsubishi Electric, or a co-conspirator whose action

could be imputed to Mitsubishi Electric, had affirmatively misled a plaintiff, plaintiffs' actual knowledge of facts underlying this case in November 2007 brings the fraudulent concealment period to a close.  Plaintiffs took more than six years after that date to file their claims against Mitsubishi Electric.  As a result, their claims are time barred even if plaintiffs were misled at some earlier time.

Likewise, the complaints do not allege plaintiffs exercised due diligence in attempting to discover the facts underlying their claims.  Despite being aware of the alleged conspiracy no later than 2007, plaintiffs took no action to bring these lawsuits for more than six years.  Their conduct demonstrates neglect, not diligence.  Plaintiffs have thus failed to establish any of the three requirements for fraudulent concealment tolling.

### 3.   Government Action Does Not Rescue Plaintiffs' Untimely Claim.

***Government Action Can Toll Limitations***.  Plaintiffs assert their antitrust claims are tolled pursuant to 15 U.S.C. § 16(i), the so-called "government action" tolling.  *E.g.*, Costco Compl. ¶ 238.  That statute provides that where the United States has "instituted" a criminal proceeding, the proceeding tolls "the running of the statute of limitations in respect to every private right of action for the pendency of the action brought by the United States and for one year thereafter.  15 U.S.C. § 16(i).

***The SDI Indictment Tolls The Limitations Period From March 18, 2011 to August 30, 2012.***  On March 18, 2011, the United States filed a one-count information against SDI alleging that it engaged in conspiracy "to suppress and eliminate competition" concerning color display tubes. *United States v. Samsung SDI Company, Ltd.*, No. 3:11-cr-00162, Dkt. 1.  SDI plead guilty and on August 16, 2011, was sentenced to a fine of $32 million, to be paid by August 18, 2011, *id.*, Dkt. 49, and SDI's time to appeal expired on August 30, 2011.  Fed. R. App. P. 4(b)(1)(A).  The SDI

prosecution tolled the statute of limitations from the filing of the information on March 18, 2011 through one year after SDI's conviction.  The statute of limitations was tolled from March 18, 2011 until August 30, 2012.  Despite tolling based on the SDI indictment, the complaints remain untimely.  Mitsubishi Electric exited the CRT industry in 2005.  Even excluding March 18, 2011 to August 30, 2012, the period when the SDI proceedings were pending, the claims against Mitsubishi Electric were brought more than four years after they accrued.

   ***The Indictments Of Asian Fugitives Do Not Toll The Limitations Period.***  The only other government proceedings regarding CRT concerned six individuals who were indicted, but who remain fugitives.  These individual cases do not toll the proceedings against Mitsubishi Electric. Between February 2009 and November 2010, the United States filed four antitrust indictments against six Taiwanese and Korean nationals.[8]  None of these six individuals ever appeared in court. The attorney for one indicted individual made clear his client has no intention of subjecting himself to the U.S. courts for arraignment.  *U.S. v. Yeh*, No. 3:10-cr-00231, Hr'g Tr. 4, May 17, 2013, Dkt. 21.  Because there is no extradition treaty with Taiwan, there is little prospect that any of the Taiwanese defendants will appear.  *U.S. v. Yeh*, No. 3:10-cr-00231, Order at 2, Dkt. 20.  Although Korea has an extradition treaty with the United States, Koreans may not be extradited for conduct that is not a crime in Korea. *See* Korean Extradition Treaty, art.(2)(1), entered into force Dec. 20, 1999, S. Treaty Doc. 106-2, TIAS 12962 (extraditable offense requires an act punishable in both countries by incarceration of more than 1 year); Hee-Eun Kim, *Developments in Criminal*

---

[8] *See United States v. Cheng Yuan Lin*, No. 09-cr-00131 (Feb. 10, 2009 N.D. Cal.) (Taiwanese resident); *United States v. Wen Jun Cheng*, No. 09-cr-00836 (Aug. 18, 2009 N.D. Cal.) (Taiwanese resident); *United States v. Chung Cheng Yeh*, No. 10-cr-00231 (March 30, 2010 N.D. Cal.) (Taiwanese resident); *United States v. Seung-Kyu Lee et al.*, No. 10-cr-00817 (November 9, 2010 N.D. Cal.) (three Korean residents).

*Enforcement of Competition Law in Korea*, Competition Policy International (2012) (noting no person has ever served prison time for antitrust crimes in Korea).

The fugitive indictments do not trigger government action tolling. ***First***, an indictment with neither an arraignment nor the reasonable expectation of an arraignment does not "institute" a criminal proceeding.  The Supreme Court has noted, "[t]he initiation of judicial criminal proceedings is not a mere formalism.  It is the starting point of our whole system of adversary criminal justice.  For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant has solidified.  It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law."  *Kirby v. Illinois*, 406 U.S. 682, 690 (1972).  In these cases, the formality of an indictment, without an arraignment or expectation of defendants' appearance at court, did not "solidify" adverse positions or "immerse" the defendants in the intricacies of criminal law and, thus, did not "institute" a criminal proceeding.  Indeed, the recognition that any  action in these cases would constitute an advisory opinion reflects there is not even a current case or controversy.

***Second***, even if filing an indictment constitutes having "instituted" a criminal proceeding, there is no "pendency" of any "criminal proceeding" at this point.  Two years after the first indictment, the United States recognized the futility of the cases.  On January 4, 2011, the district court entered an order in each case, stating, "The U.S. Attorney has advised the court that all of the defendants in the related cases are currently fugitives."  *United States v. Yeh*, No. 3:10-cr-00231, Dkt. 8.  The cases were then reassigned to the court's assignment committee, *id*, and a search of the Court's docket reveals that five of the six cases are still not assigned and have had no proceedings.  In the lone reassigned case, the Court refused even to consider the defendant's motion to dismiss because under the "fugitive disentitlement doctrine," where the defendant has not submitted to the

court's jurisdiction or agreed to be arraigned, the court's decision "would essentially be to give defendant an advisory opinion." *Id.*, Order at 4, Dkt. 20.  Thus, the cases now rest in a state of suspended animation.

**Third**, if these indictments toll the statute of limitations, the limitations period will never end, which is contrary to the Congressional purpose of government action tolling.  Congress's "most obvious purpose" in creating § 16(i) was "to ensure that private litigants would have the benefit of prior Government antitrust enforcement efforts."  *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 334 (1978).  Congress' purpose would be frustrated, not served, by tolling the limitations period while the claims against fugitive foreign nationals lie dormant.  There are no government enforcement efforts from which the civil plaintiffs may benefit.  Congress did not wish tolling to create "undue prolongation" of claims but believed the statute would "shorten the period over which price treble-damages actions will extend."  *Id.* at 335.  In contravention of this goal, applying government action tolling in this case would prolong the limitations period indefinitely.

Allowing the fugitive indictments to toll the limitations period would also be inconsistent with the purposes of statutes of limitations.  In *Credit Suisse Secs. (USA) LLC v. Simmonds*, 132 S.Ct. 1414, 1420 (2012), the Supreme Court confirmed that tolling doctrines should not extend limitations periods indefinitely.  That case addressed the limitations period under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b).  The plaintiff argued that the two-year limitations period had not been triggered because defendants had failed to file the form that gives rise to a claim.  The Supreme Court rejected plaintiff's argument.  The Court sought to avoid the "potential for such endless tolling" that would result if the accrual of the claim could turn on future, uncertain events.  *Id.*  While *Credit Suisse* arises under a different statute, the ruling reinforces the concept that statutes of limitations must bring closure to claims, particularly where a reasonably diligent plaintiff would be aware of the need to file a claim.  Here, plaintiffs have been aware of

their claim since 2007. The fact that the government indicted, but never prosecuted, foreign nationals who have no connection to Mitsubishi Electric provides no reason to toll the statute.

The Ninth Circuit's decision in *J.M. Dungan v. Morgan Drive-Away, Inc*., 570 F.2d 867 (9th Cir. 1987), directs this Court to interpret Section 16(i) consistent with its purpose, and the purpose of limitations periods. In *Dungan*, plaintiff argued that empanelling a grand jury qualified as "instituting" a criminal proceeding under § 16(i). *Id*. at 868. Plaintiff pointed to Congress's intent that plaintiffs benefit from the evidence gathered by government prosecution. *Id*. at 868-70. The Ninth Circuit held that plaintiff's argument "ignores the statute-of-repose purpose of section 16(i)," which sought to create a predictable cutoff for lawsuits. *Id*. at 870. "Mere empanelling 'institutes' nothing." *Id*. While the indictment in that case was "the operative 'institution' of proceedings," the court recognized that courts must consider the facts in individual cases "to strike the exquisite balance" inherent in Section 16(i). *Id*. at 872. In the case at bar, allowing the fugitive indictments to toll the limitations period indefinitely would not serve the purposes of the government action tolling – there are no government proceedings – and would ill-serve the finality accomplished by limitations periods. It would be an absurd result, which this Court should eschew. *See Ariz. State Bd. for Charter Schools v. U.S. Dep't of Educ*., 464 F.3d 1003, 1008 (9th Cir. 2006) ("'statutory interpretations which would produce absurd results are to be avoided.'"). To "strike the balance" that fulfills the statute's twin goals of letting plaintiffs benefit from government prosecutions and ensuring repose for defendants, the Court should conclude that indictments against fugitive foreign nationals who have never been arraigned in a United States court does not trigger indefinite government action tolling.

In sum, only the SDI indictment constitutes government action, and it only tolls the limitations period from March 18, 2011 until August 30, 2012. As a result, the claims against Mitsubishi Electric are time-barred.

1

2

### III. Mitsubishi Electric Reserves Other Arguments Regarding Legal Defects In The Complaint.

3

In this motion, Mitsubishi Electric has addressed the timing defects with the newly-filed

4

complaints.   While Mitsubishi Electric believes that there are other legal defects with the

5

complaints, it does not intend to raise arguments that this Court has already rejected.  If the Court

6

grants this motion, the Court will not need to address other defects in the complaint.  If the Court

7

denies Mitsubishi Electric's motion, Mitsubishi Electric will raise other legal defects in the

8

complaints in an appropriate manner – including in motions for judgment on the pleadings and

9

motions for summary judgment – to permit the Court to address these issues without needlessly

10

delaying the case.  In addition, Mitsubishi Electric will attempt to reach agreement with plaintiffs

11

and seek approval from the Court to preserve its positions regarding issues that have already been

12

the subject of prior rulings so that the parties do not need to re-litigate issues the Court has decided.

13

### CONCLUSION

14

For the foregoing reasons, Mitsubishi Electric respectfully asks this Court to dismiss the

15

Direct Action Plaintiffs' new complaints.

16

Dated: December 30, 2013                              Respectfully Submitted,

17

By: /s/ Terrence J. Truax
                                                              Terrence J. Truax

18

Brent Caslin (Cal. Bar. No. 198682)          Terrence J. Truax  (*pro hac vice*)
JENNER & BLOCK LLP                           Michael T. Brody  (*pro hac vice*)

19

633 West Fifth Street, Suite 3600             JENNER & BLOCK LLP
Los Angeles, California  90071                353 North Clark Street

20

Telephone:  213 239-5100                     Chicago, Illinois 60654-3456
Facsimile:  213 239-5199                      Telephone: (312) 222-9350

21

bcaslin@jenner.com                            Facsimile: (312) 527-0484
                                                              ttruax@jenner.com

22

mbrody@jenner.com

23

*Attorneys for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc. and*
*Mitsubishi Electric Visual Solutions America, Inc*

24

25

26