Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: +1-303-607-3500
Facsimile: +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Defendant, Thomson
Consumer Electronics, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | No. 07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Sharp Electronics Corp, et al. v. Hitachi, Ltd., et al., No. 13-cv-001173* | **THOMSON CONSUMER ELECTRONICS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SHARP'S FIRST AMENDED COMPLAINT**<br><br>Date: February 7, 2013<br>Time: 10:00 A.M.<br>Place: Courtroom 1, 17th Floor<br>Judge: Hon. Samuel Conti |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 1

I.     Sharp's Claims Against Thomson Consumer Are Barred by the Doctrine of Laches.... 1

    A.   Thomson Consumer Has Been Seriously Prejudiced by Sharp's Unjustified Delay in Filing Suit. ................................................................................ 2

II.    Sharp's Claims Are Barred by the Applicable Statutes of Limitation. ......................... 5

    A.   Sharp Does Not Plead Any Facts That Establish Thomson Consumer Took Affirmative Acts to Conceal Its Alleged Participation in the Conspiracy and That Sharp Diligently Attempted to Discover Its Claims. ............................... 5

    B.   Thomson Consumer Has Never Previously Been Sued in Any CRT-Related Action So *American Pipe* Tolling Does Not Apply to Any Claims Against It. .................................................................................................... 8

    C.   Government Action Tolling Does Not Save Sharp's Time-Barred Claims. ................ 11

III.   Sharp Fails to Plead Federal or State Claims. .................................................. 14

    A.   Sharp Fails to Plead Facts That Plausibly Suggest It Satisfies the Ownership and Control Exception to *Illinois Brick*. ................................................ 14

    B.   Sharp Has Failed to Plead Facts That State a Plausible N.Y. GEN. BUS. LAW § 349 Claim Against Thomson Consumer. ............................................. 14

    C.   Sharp's New York and New Jersey Antitrust and Unfair Competition Law Claims Should Be Dismissed Because They Offend Due Process. ....................... 15

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Allstate Ins. Co. v. Hague,*
    449 U.S. 302 (1981) ........................................................................................ 15

*Ariz. State Bd. for Charter Schools v. U.S. Dept. of Ed.,*
    464 F.3d 1003 (9th Cir. 2006) ......................................................................... 13

*Arneil v. Ramsey,*
    550 F.2d 774 (2d Cir. 1977) .............................................................................. 9

*Ashley v. Boyle's Famous Corned Beef Co.,*
    66 F.3d 164 (8th Cir. 1995) .............................................................................. 1

*AT&T Mobility LLC v. AU Optronics Corp.,*
    707 F.3d 1106 (9th Cir. 2013) ......................................................................... 15

*Barker v. Am Mobil Power Corp.,*
    64 F.3d 1397 (9th Cir. 1995) ............................................................................. 6

*Becks v. Emery-Richardson,*
    1990 WL 303548 (S.D. Fla. Dec. 21., 1990) .................................................. 10

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .......................................................................................... 3

*Boone v. Citigroup, Inc.,*
    416 F.3d 382 (5th Cir. 2005) ............................................................................. 9

*Cada v. Baxter Healthcare Corp.,*
    920 F.2d 447 (7th Cir. 1991) ............................................................................. 1

*Chardon v. Fumero Soto,*
    462 U.S. 650 (1983) ........................................................................................ 10

*Chippano v. Champion International Corp.,*
    702 F.2d 827 (9th Cir. 1983) ..................................................................... 13, 14

*Conmar Corp. v. Mitsui & Co. (USA) Inc.,*
    858 F.2d 499 (9th Cir. 1988) ......................................................................... 5, 6

*Credit Suisse Secs. (USA) LLC v. Simmonds,*
    132 S.Ct. 1414 (2012) ..................................................................................... 13

*Crown, Cork & Seal Co. v. Parker,*
    462 U.S. 345 (1983) ................................................................................ 8, 9, 10

*Danjaq LLC v. Sony Corp.,*
    263 F.3d 942 (9th Cir. 2001) ............................................................................. 2

*Duggan v. Morgan Drive-Away, Inc.*,
    570 F.2d 867 (9th Cir. 1987) ................................................................. 12, 13

*Dupont v. Phillips Petroleum Co.*,
    621 F. Supp. 310 (D. Del. 1985) ....................................................... 10

*Greyhound Corp. v. Mt. Hood Stages*, Inc.,
    437 U.S. 322 (1979) .......................................................................... 13

*Grimmett v. Brown*,
    75 F.3d 506 (9th Cir. 1996) ................................................................ 6

*In re Linerboard Antitrust Litig.*,
    223 F.R.D. 335 (E.D. Pa. 2004) ........................................................ 11

*In re Processed Egg Prods. Antitrust Litig.*,
    851 F. Supp. 2d 867 (E.D. Pa. 2012) ................................................ 14

*In re Processed Egg Prods. Antitrust Litig.*,
    2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013) .......... 6, 7, 8, 10

*In re TFT-LCD Antitrust Litig.*,
    No. 7-md-1827, 2013 U.S. Dist. LEXIS 39606 (N.D. Cal. Mar. 20, 2013) ...... 14, 16

*In re TFT-LCD Antitrust Litig.*,
    No. 11-cv-3763 SI, 2012 U.S. Dist. LEXIS 6394 (N.D. Jan. 18, 2012) .............. 9

*In re TFT-LCD Antitrust Litig.*,
    No. 12-cv-4114 SI, 2013 U.S. Dist. LEXIS 9903 (N.D. Cal. Jan. 23, 2013)........ 11

*In re Transpacific Passenger Air Trans. Antitrust Litig.*,
    No. 07-cv-5634 CRB, 2011 U.S. Dist. Lexis 49853 (N.D. Cal. May 9, 2011)........ 6

*In re Vertrue Mktg. & Sales Practices Litig.*,
    712 F. Supp. 2d 703 (N.D. Ohio 2010) ............................................. 9

*In re Urethane Antitrust Litig.*,
    663 F. Supp. 2d 1067 (D. Kan. 2009) .......................................... 7, 11

*Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*,
    518 F.2d 913 (9th Cir. 1975) ............................................................ 1

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ............................................................ 2

*Madison v. IBP, Inc.*,
    330 F.3d 1051 (8th Cir. 2003) .......................................................... 1

*McCune v. Alioto Fish Co.*,
    597 F.2d 1244 (9th Cir. 1979) .......................................................... 2

*Metz v. Unizan Bank*,
    416 F. Supp. 2d 568 (N.D. Ohio 2006) ................................................................. 6

*Novell, Inc. v. Microsoft Corp.*,
    505 F.3d 302 (4th Cir. 2007) ............................................................................. 13

*Rutledge v. Boston Woven Hose & Rubber Co.*,
    576 F.2d 248 (9th Cir. 1978) ........................................................................... 7, 8

*Shriners Hosps. for Children v. Qwest Commc'ns Int'l Inc.*,
    No. 04-cv-00781, 2007 WL 2801494 (D. Colo. Sept. 24, 2007) ........................... 9

*Sun Microsystems, Inc. v. Hynix Semiconductor Inc.*,
    608 F. Supp. 2d 1166 (N.D. Cal. 2009) ............................................................ 14

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .............................................................................. 5

*Tech Data Corp. v. AU Optronics Corp.*,
    No. 07-md-1827, 2012 WL 3236065 (N.D. Cal. Aug. 6, 2012) ............................ 9

*United States v. Yeh*,
    No. 10-cr-00231 (N.D. Cal. 2010) .................................................................... 12

*Volk v. D.A. Davidson & Co.*,
    816 F.2d 1406 (9th Cir. 1987) ............................................................................ 5

*Williams v. Boeing Co.*,
    517 F.3d 1120 (9th Cir. 2008) ........................................................................ 9, 11

*Wyser-Pratte Mgt. Co. v. Telxon Corp.*,
    413 F.3d 553 (6th Cir. 2005) ......................................................................... 9, 10

**STATE CASES**

*27001 P'ships v. BT Sec. Corp.*,
    No. CV 2004-7487, 2010 WL 5553364 (Ala. Cir. Ct. Feb. 8, 2010) ..................... 9

*Goshen v. Mutual Life Ins. Co. of New York*,
    774 N.E.2d 1190 (N.Y. 2002) .......................................................................... 15

*Merrill Lynch Capital Mkts. Ag. v. Controladora Comercial Mexicana SAB DE C.V.*,
    2010 N.Y. Misc. LEXIS 6743 (N.Y. Sup. Ct. 2010) ........................................ 15

**FEDERAL STATUTES**

15 U.S.C. § 16(i) .......................................................................... 11, 12, 13, 14

**STATE STATUTES**

N.Y. GEN. BUS. LAW § 349 ................................................................................................... 14, 15

**RULES**

Federal Rule of Civil Procedure 9(b) ................................................................................. 5, 6, 7, 8

Federal Rule of Civil Procedure 15(c) ................................................................................. 9, 10

**INTRODUCTION**

Sharp's claims are inexcusably late and, as this Court has already ruled, forcing Thomson Consumer to enter this long-running MDL proceeding now would place it at an unfair, prejudicial disadvantage. (*See* Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].)  There is no dispute that Sharp's unreasonable delay in pressing its rights has seriously prejudiced Thomson Consumer, but in its Opposition, Sharp does not even attempt to explain why it waited nearly six years after it admittedly knew of its potential claims against Thomson Consumer to file suit.  This is because there is no excuse.  The irreparable prejudice that Sharp's unreasonable delay has caused Thomson Consumer is solely the result of Sharp's own lack of diligence.  This is precisely the situation in which case precedent holds that Sharp's claims are barred by laches and tolling doctrines do not save its untimely claims.   Thomson Consumer respectfully requests that the Court dismiss the claims asserted against it in Sharp's First Amended Complaint ("FAC") with prejudice.

**ARGUMENT**

**I.      Sharp's Claims Against Thomson Consumer Are Barred by the Doctrine of Laches.**

Where, as here, a plaintiff's antitrust claims are only timely if the statutes of limitations are tolled, the plaintiff's reliance on tolling may be barred by laches.  *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 447, 453 (7th Cir. 1991) (rejecting tolling where plaintiff failed to file suit within a reasonable time).  As the Eighth Circuit explained, "if plaintiff asserts a federal statute of limitations should be extended by applying an equitable principle such as fraudulent concealment or tolling, plaintiff's unreasonable delay – whether or not it is called laches – becomes relevant."  *Ashley v. Boyle's Famous Corned Beef Co.,* 66 F.3d 164, 170 (8th Cir. 1995) (en banc), *abrogation on other grounds recognized in Madison v. IBP, Inc.,* 330 F.3d 1051, 1056 (8th Cir. 2003); *see also Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*, 518 F.2d 913, 926-27 (9th Cir. 1975) (holding that plaintiff's ability to obtain equitable relief in context of Clayton Act is "circumscribed" by the doctrine of laches because Congress did not intend "to permit potential plaintiffs to sleep through their competitors' antitrust violations and then sue many years later.").  Because its unjustified delay in filing suit has caused Thomson Consumer severe and irreparable prejudice, Sharp's reliance on tolling doctrines is barred by laches.

### A.      Thomson Consumer Has Been Seriously Prejudiced by Sharp's Unjustified Delay in Filing Suit.

Laches bars a plaintiff's claims when it (1) has unreasonably delayed pressing its rights and thereby (2) caused prejudice to the defendant. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 838 (9th Cir. 2002). The first element is established where the plaintiff offers "no viable justification for the delay." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001). Sharp's Opposition does not even attempt to explain or provide a valid excuse for why it delayed filing suit against Thomson Consumer for *six years* after November 2007, when it admits it learned of the alleged antitrust conspiracy that is the subject of the FAC. (*See* FAC at ¶ 232) (admitting Sharp discovered its potential claims in November 2007). Sharp does not argue that since 2007, it has not known that Thomson Consumer supplied it CRTs – Sharp knew who its CRT suppliers were in November 2007. Sharp cannot argue that it failed to file claims against Thomson Consumer until 2013 because it believed any claims it might have against Thomson Consumer were adequately addressed by the numerous CRT-related class actions filed in late 2007. Sharp has known since those actions were filed that Thomson Consumer was *never* named as a defendant in any of the class action complaints filed by the DPPs or IPPs. Accordingly, Sharp knew that if it wanted to assert claims against Thomson Consumer, it needed to act then. Sharp, however, did nothing. It slept on its rights and allowed these sprawling, highly complex CRT actions to proceed for six years before attempting to drag Thomson Consumer into them. There is no justification for Sharp's delay in filing its claims. Accordingly, Sharp has unreasonably delayed pressing its rights as a matter of law. *See McCune v. Alioto Fish Co.,* 597 F.2d 1244, 1250 (9th Cir. 1979).

Sharp also does not credibly refute that Thomson Consumer has been severely prejudiced by Sharp' unjustified six-year delay. Discovery in these actions began nearly four years ago, on March 8, 2010. ([Dkt. No. 1609] at 2.) Since that time, the parties have produced nearly 5 million documents (many in foreign languages) and conducted almost 100 depositions of witnesses from around the world. Thomson Consumer has had no involvement in discovery. It has not had access to, nor reviewed nearly all of these documents and has not participated in any depositions. It has not had the opportunity to question any of these witnesses, and it is unclear, if not unlikely, it would ever have an opportunity to go back and do so if it is added to these proceedings now. Plaintiffs'

expert reports are due on March 24, 2014, and Defendants' opposition reports are due June 24, 2014. ([Dkt. No. 2304].) Thomson Consumer has not retained an expert or participated in any expert discovery to date.

As such, Sharp's inexcusable delay will cause Thomson Consumer at least one of two forms of severe prejudice: (1) Thomson Consumer will be required to attempt to "catch up" by conducting discovery, noticing depositions of witnesses who have previously been deposed, engaging experts, drafting summary judgment motions, and preparing for trial within a matter of months and without the benefit of having participated in discovery over the past four years as it unfolded; or (2) Thomson Consumer will be forced to go it alone and complete these tasks and conduct trials on a schedule that is separate from the other defendants and that deprives Thomson Consumer of the cost efficiencies that have resulted from the joint defense group's sharing of discovery and trial preparation activities to date. These cost efficiencies are vital for any defendant attempting to survive the costs and burdens of defending a massive antitrust MDL such as this one. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558-59 (2007) (recognizing prohibitive cost of modern antitrust discovery). Both approaches would severely and irreparably prejudice Thomson Consumer and make it nearly impossible for it to fully and fairly defend itself.

The first approach would impose an extraordinary burden on Thomson Consumer and put it at an unfair disadvantage. Given the size, complexity, and volume of the factual and legal issues raised by this case, Thomson Consumer cannot simultaneously: (1) gather and review its own documents; (2) review, analyze, and, as necessary, translate the millions of documents produced by other parties in this case; (3) identify, locate, and interview its own fact witnesses (if any can be located) regarding events that occurred 10-15 years in an industry that it has not participated in since 2005; (4) review thousands of pages of deposition transcripts; (5) conduct supplemental depositions of many of the nearly 100 witnesses that have already been deposed in this case, most of whom will undoubtedly resist being re-deposed; (6) synthesize all of this information and prepare summary judgment motions; and (7) engage experts to prepare factually and economically complex expert reports in just a few months. To require Thomson Consumer to complete such a monumental task in less than one-fifth the time the other parties in this case have had to do so would be

1    fundamentally unfair and unduly burdensome.  Because of Sharp's delay, Thomson Consumer,

2    through no fault of its own, would be deprived of the opportunity to fully defend itself.  The Court

3    should not allow Sharp to prejudice Thomson Consumer and benefit itself as a result of Sharp's

4    inexcusable delay.

5            The alternative approach would also cause Thomson Consumer to suffer serious prejudice.

6    Thomson Consumer would be required to complete all the tasks identified above without the

7    benefits of full participation in the joint defense group.  The resulting duplication of efforts would

8    cause massive inefficiencies and force Thomson Consumer to bears costs and burdens that

9    previously have been shared among the other defendants.  It will require the Court to continue to

10   devote enormous resources to adjudicating these matters – matters that have been pending since

11   2007 – for several more years to come.

12           Most critically, Thomson Consumer will be placed at an irremediable strategic disadvantage.

13   As the Court knows, antitrust damage actions provide for joint and several liability – they do not

14   permit contribution among defendants.  Regardless of its lack of culpability, because it will be the

15   last defendant, Thomson Consumer will almost certainly be subject to the risk of enormous

16   financial exposure as Sharp will attempt to recover from Thomson Consumer amounts left

17   unsatisfied by settlements or judgments involving the other defendants.  Thus, if Sharp's claims

18   against Thomson Consumer are placed on a later, separate schedule, Sharp will benefit from its

19   delay by being able to place Thomson Consumer at a severe strategic disadvantage – a posture it

20   will undoubtedly seek to exploit by demanding an exorbitant settlement or judgment.

21           Moreover, with either approach, Sharp's delay will cause Thomson Consumer substantial

22   evidentiary prejudice.  Sharp has admitted it knew Thomson Consumer shut down its U.S.-based

23   CRT operations in 2004 and entirely exited the industry in 2005.  (*See* Compl. at ¶ 73; FAC at ¶¶

24   71-72.)  Sharp knew or should have known that it had to bring its claims in a timely manner because

25   it would be increasingly difficult, if not impossible, for Thomson Consumer to defend itself against

26   claims involving employees who no longer work for the company and in an industry in which it no

27   longer participated in as time passed.  Sharp, however, did nothing.  Sharp should not be permitted

28   to benefit from the evidentiary prejudice its unnecessary delay has caused.

Sharp's unjustified and unreasonable six-year delay has caused Thomson Consumer prejudice and put it at a severe strategic disadvantage. As such, laches bars Sharp from tolling the relevant statutes of limitation, all of Sharp's claims are untimely, and Thomson Consumer is entitled to dismissal of Sharp's claims against it with prejudice.

## II.     Sharp's Claims Are Barred by the Applicable Statutes of Limitation.

### A.     Sharp Does Not Plead Any Facts That Establish Thomson Consumer Took Affirmative Acts to Conceal Its Alleged Participation in the Conspiracy and That Sharp Diligently Attempted to Discover Its Claims.

As this Court stated when it dismissed Sharp's Original Complaint, "[s]o many years after this MDL's inception, Plaintiffs should be able to provide something more than boilerplate allegations." (Order [Dkt. No. 1960] at 5.) Although the Court granted Sharp leave to amend, the FAC does not remedy these deficiencies. It makes conclusory, boilerplate allegations of fraudulent concealment against Thomson Consumer. At this stage in these proceedings, however, these allegations are not plausible because Sharp's fails to allege any specific facts that: (1) suggest Thomson Consumer took affirmative acts to conceal its alleged participation in the conspiracy and (2) Sharp diligently attempted to discover its claims. Accordingly, the statutes of limitation on Sharp's claims against Thomson Consumer began to run in July 2005 when Thomson Consumer exited the CRT industry.

To survive a motion to dismiss, a plaintiff attempting to allege fraudulent concealment must satisfy the heightened pleading standards of Fed. R. Civ. 9(b) and plead specific facts that identify the time, place, specific content, and identity of the speaker who made the false representations. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The plaintiff "must do more than show that it was ignorant of its cause of action . . . it must plead facts showing that [Thomson Consumer] affirmatively misled it." *Conmar Corp. v. Mitsui & Co. (USA) Inc.,* 858 F.2d 499, 502 (9th Cir. 1988). A defendant's silence or failure to "own up" to misconduct does not constitute fraudulent concealment. *Volk v. D.A. Davidson & Co*., 816 F.2d 1406, 1415 (9th Cir. 1987); Likewise, a plaintiff's mere ignorance of its cause of action does not toll the statute of limitations. *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). A plaintiff also fails to adequately plead fraudulent concealment if it fails to plead the specific acts of diligence it undertook to uncover its

claims. *Conmar,* 858 F.2d at 502; *In re Processed Egg Prods. Antitrust Litig.,* 2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013). While in certain circumstances, it may be inappropriate to resolve fact-intensive claims of fraudulent concealment at the motion to dismiss stage, this principle does not apply when, as here, the plaintiff fails to plead *any* specific facts that suggest (1) the moving defendant took affirmative acts to fraudulently conceal its alleged wrongdoing or (2) the plaintiff took any acts to discover its claims. *See In re Transpacific Passenger Air Trans. Antitrust Litig.,* No. 07-cv-5634 CRB, 2011 U.S. Dist. Lexis 49853 *69 (N.D. Cal. May 9, 2011) (dismissing vague, conclusory allegations of fraudulent concealment for failure to satisfy Rule 9(b)); *In re Processed Egg Prods. Antitrust Litig.,* 2013 U.S. Dist. LEXIS 119936 *9-13 (E.D. Pa. Aug. 23, 2013) (granting motion to dismiss with prejudice as a result of plaintiffs' failure to plead specific facts supporting fraudulent concealment). Finally, the Ninth Circuit has held that a plaintiff cannot "use the fraudulent concealment by one defendant as a means to toll the statute of limitations against other defendants." *Barker v. Am Mobil Power Corp.,* 64 F.3d 1397, 1402 (9th Cir. 1995).[1] Thus, to plead a viable fraudulent concealment claim, a plaintiff must plead specific facts establishing *that* defendant affirmatively concealed its alleged misconduct. *Id.; see also Metz v. Unizan Bank*, 416 F. Supp. 2d 568, 579 (N.D. Ohio 2006) (citing *Barker* and evaluating adequacy of allegations of fraudulent concealment on motion to dismiss).

Application of these principles mandates finding that Sharp has failed to plead fraudulent concealment by Thomson Consumer. The FAC does not plead that an employee of Thomson Consumer took *any* acts of any kind whatsoever after July 2005, let alone any affirmative acts that concealed its alleged participation in the conspiracy. In its Opposition, Sharp is unable to direct the Court to any specific facts in the FAC that allege any Thomson Consumer employee affirmatively

---

[1] Sharp's criticism of Thomson Consumer's reliance on *Barker* because that case resolved a summary judgment motion, not a motion to dismiss, misses the mark. (*See* Opp'n. at 9, n.8.) Thomson Consumer cited *Barker* in its Motion to establish a legal principal expressly recognized by the Ninth Circuit – a plaintiff may not establish fraudulent concealment against one defendant by relying on allegations of fraudulent concealment against other defendants. It logically follows that a plaintiff does not plead fraudulent concealment consistent with its obligations under Rule 9(b) and Ninth Circuit law if, like Sharp here, the plaintiff attempts to plead fraudulent concealment against one defendant armed only with factual allegations against other defendants. To hold otherwise would ignore the Ninth Circuit's clear dictate in *Barker* and the pleading requirements of Rule 9(b).

concealed Thomson Consumer's alleged participation in the conspiracy. Sharp instead cites to allegations in the FAC about *other* defendants' alleged fraudulent concealment. (Opp'n. at 8 (citing FAC at ¶¶ 232-237).) These paragraphs of the FAC do not allege the time, place, specific content, and identity of the speaker regarding any alleged misrepresentation by an employee of Thomson Consumer. (*See* FAC at ¶¶ 232-237.) Moreover, these allegations do not plead facts with particularity that make it plausible that any defendant fraudulently concealed the conspiracy from Sharp during the relevant time period here – after Thomson Consumer exited the CRT industry in July 2005. Instead, the last act of fraudulent concealment by other defendants pled in the FAC occurred in 2004. (*See id.* at ¶ 239.)[2] As such, Sharp has failed to satisfy the heightened pleading standards of Rule 9(b) by failing to allege any specific facts that plausibly suggest Thomson Consumer or other defendants fraudulently concealed the alleged conspiracy after 2004. *See In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 178-9 (D. Kan. 2009) (granting motion to dismiss and limiting time periods for which plaintiffs could rely on theory of fraudulent concealment to only those periods corresponding with dated acts of concealment pled with particularity in complaint).

Sharp also has failed to plead any facts that plausibly suggest it diligently attempted to discover its claims. Where a plaintiff fails to plead "any specific acts of diligence [it] undertook to discover [its] claims" courts consistently hold that the plaintiff "does not adequately plead the due diligence element of fraudulent concealment." *In re Processed Egg Prods. Antitrust Litig.*, 2013 U.S. Dist. LEXIS 119936 *9-13 (E.D. Pa. Aug. 23, 2013) (dismissing fraudulent concealment claims with prejudice and collecting cases); *see also Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (rejecting fraudulent concealment where plaintiff failed to "state facts showing his due diligence in trying to uncover the facts"). Sharp pleads absolutely no *facts* showing that it exercised diligence and does not argue otherwise in its Opposition.[3] Sharp's failure to plead any such facts mandates dismissal as a matter of law. (*Id.*)

---

[2] The other dated allegations in the FAC in support of Sharp's fraudulent concealment theory are also inadequate. They describe acts that allegedly occurred in 1999 and thus do not plausibly plead fraudulent concealment by defendants after Thomson Consumer exited the CRT industry in 2005. (FAC at ¶ 239.) In addition, these allegations cite only to internal documents of individual defendants that could not have affirmatively misled Sharp.

While this Court has previously expressed that it is reluctant to resolve fact-intensive issues regarding fraudulent concealment on motions to dismiss, Thomson Consumer respectfully submits that the circumstances here are different and uniquely subject Sharp's FAC to dismissal as to Thomson Consumer.  Because Sharp has failed to plead any facts that suggest Thomson Consumer fraudulently concealed its alleged participation in the conspiracy or that Sharp diligently attempted to discover its claims, unlike prior motions in this case, Thomson Consumer's Motion does not require the Court to resolve disputed issues of fact.  Moreover, at this stage in the proceedings – after nearly 100 depositions have been conducted, millions of pages of documents have been produced and but a few months until the close of discovery – Sharp should be able to plead highly specific facts in support of its fraudulent concealment theory.  The FAC does not.  Sharp fails to plead with particularity *any* facts that plausibly suggest: (1) Thomson Consumer took any affirmative acts that fraudulently concealed its alleged participation in the conspiracy; (2) any other defendant took an act after 2004 that could have fraudulently concealed the alleged conspiracy; and (3) Sharp diligently attempted to discover the facts underlying its claims, but despite its diligence, was unable to do so until it filed its complaint.  Because, after multiple opportunities to do so, Sharp has failed to satisfy the pleading standards of Rule 9(b), Sharp's theory that fraudulent concealment prevented it from discovering its claims after Thomson Consumer exited the industry in 2005 should be dismissed with prejudice.  *In re Processed Egg Prods. Antitrust Litig.*, 2013 U.S. Dist. LEXIS 119936 *9-13 (E.D. Pa. Aug. 23, 2013).

**B.     Thomson Consumer Has Never Previously Been Sued in Any CRT-Related Action So *American Pipe* Tolling Does Not Apply to Any Claims Against It.**

Sharp admits, as it must, that before Sharp filed its complaint, Thomson Consumer had never previously been named as a defendant in any CRT-related action.  (Opp'n. at 10.)  In *Crown, Cork & Seal Co. v. Parker*, the Supreme Court warned that to ensure essential fairness to defendants and to prevent stale claims "[i]t is important to make certain . . . that *American Pipe* [tolling] is not abused by the assertion of claims that differ from those raised in the original class suit."  462 U.S. 345, 355 (1983).  Consistent with this principle, courts across the country have rejected the argument asserted by Sharp that *American Pipe* may be applied to toll the statutes of limitations that apply to claims: (1) different than those contained in the class complaint or (2) against parties who

were not named as defendants in the original class action. *See, e.g., Boone v. Citigroup, Inc.*, 416 F.3d 382, 392 (5th Cir. 2005) (noting that "it is facially obvious" that the pendency of a class action does not toll the statute of limitations as to defendants not named in the class action); *Wyser-Pratte Mgt. Co. v. Telxon Corp.*, 413 F.3d 553, 567-68 (6th Cir. 2005) (holding that class action tolling does not apply against a defendant who was not named in the class action); *Arneil v. Ramsey*, 550 F.2d 774, 782 n.10 (2d Cir. 1977) (same), *rev'd on other grounds by Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983); *Williams v. Boeing Co.*, 517 F.3d 1120 (9th Cir. 2008) (no class action tolling for claims different than those contained in class complaints); *In re TFT-LCD Antitrust Litig.*, No. 11-cv-3763 SI, 2012 U.S. Dist. LEXIS 6394 (N.D. Jan. 18, 2012) (dismissing state law claim because class action complaint cannot toll "claims it did not assert"); *Tech Data Corp. v. AU Optronics Corp.*, No. 07-md-1827, 2012 WL 3236065, at *5 (N.D. Cal. Aug. 6, 2012) (refusing to apply *American Pipe* tolling to claims against affiliates who were not named in class action); *In re Vertrue Mktg. & Sales Practices Litig.*, 712 F. Supp. 2d 703, 718-19 (N.D. Ohio 2010) ("Since *Crown, Cork & Seal*, courts interpreting Justice Powell's concurrence have held that only the claims expressly alleged in a previous federal lawsuit are subject to tolling."); *Shriners Hosps. for Children v. Qwest Commc'ns Int'l Inc.*, No. 04-cv-00781, 2007 WL 2801494, at *4 (D. Colo. Sept. 24, 2007) (dismissing claims against affiliated company not named as defendant in class complaint); *see also 27001 P'ships v. BT Sec. Corp.*, No. CV 2004-7487, 2010 WL 5553364 (Ala. Cir. Ct. Feb. 8, 2010) (rejecting authorities allowing *American Pipe* tolling of claims against unnamed affiliates as based on inapposite Rule 15(c) standards).

Against this weight of authority and clear direction from the Supreme Court, Sharp asserts that *American Pipe* tolling should still apply to toll the statute of limitations against Thomson Consumer. Sharp argues that, because of its involvement in the CRT industry and the fact that its parent, Thomson SA, was initially named as a defendant in some DPP class complaints, Thomson Consumer must have known of lawsuits against other defendants and been aware of its own "risk of exposure" so *American Pipe* tolling should apply to it. (Opp'n. at 11). Sharp cites no cases that have applied its proposed rule, because this is not the law.[4] (*See supra* (collecting cases).) Indeed,

---

[4] The cases cited by *Sharp* in support of its proposed rule are easily distinguished and unpersuasive. In *Becks v. Emery-Richardson*, 1990 WL 303548 at *12 (S.D. Fla. Dec. 21., 1990), an unpublished

1   consistent with the dictates of *Crown*, the argument that *American Pipe* tolling applies to parties

2   who were not previously sued, but *should have known* they might be, has been expressly rejected by

3   other courts.  *See In re Processed Egg Prods. Antitrust Litig*., 2013 U.S. Dist. LEXIS 119936 *23-4

4   n. 8 (E.D. Pa. Aug. 23, 2013) (dismissing claims against previously unnamed defendant); *Wyser-*

5   *Pratte Mgt. Co.,* 413 F.3d 553, 567-68 (6th Cir. 2005) (rejecting argument that class action tolling

6   applied against defendant who was not named in the class but who "knew or should have known it

7   was *subject to* suit for claims arising as the same operative facts as the class claims") (emphasis in

8   original).  Here, it is undisputed that Thomson Consumer was not and has never been named as a

9   defendant in any CRT-related class action complaints.  And all courts that have addressed this issue

10  have held that the fact that Thomson SA was a named defendant in early CRT-related class action

11  suits cannot be imputed to Thomson Consumer for purposes of *American Pipe* tolling.

12  Accordingly, *American Pipe* tolling does not apply to Sharp's claims against Thomson Consumer.

13      Sharp also cannot rely on *American Pipe* to toll its expired state law claims because the DPP

14  class action complaints only asserted claims under federal law and as a reseller, Sharp was never a

15  member of the IPP class.  (*See* [Dkt. No. 1992] at 14.)  The Supreme Court has held that where state

16  law supplies the applicable statute of limitations, a federal court must solely apply the tolling law of

17  that state to determine whether to apply *American Pipe* tolling.  *See Chardon v. Fumero Soto*, 462

18  U.S. 650, 654-57, 662 (1983).  As explained in Thomson Consumer's Motion, cross-jurisdictional

19  tolling has been rejected by courts interpreting California, Tennessee, and New York law.  (Mot.

20  [2236] at 12-13.)  Sharp continues to argue that this Court should ignore this weight of authority

21  and instead, applying the test set forth in *In re Linerboard Antitrust Litig*., 223 F.R.D. 335 (E.D. Pa.

22  2004), find that cross-jurisdictional tolling applies to its state claims.  *Linerboard* is not persuasive,

report and recommendation from a magistrate judge that has never been cited for the proposition Sharp suggests it stands for, the court determined that the parent company of an insurance provider "had constructive if not actual notice" of a previously filed complaint, so it was "not unreasonably included in this action under Rule 15(c) criteria." *Id.* at *12.  In other words, the court ruled that the plaintiff could maintain its action against the parent company under the standards set forth in Fed. R. Civ. P. 15(c) – it did not rule (or cite any authority in support of the proposition) that *American Pipe* tolling may be applied to parties who have never previously been sued.  The other case cited by Sharp, *Dupont v. Phillips Petroleum Co.*, 621 F. Supp. 310, 313-14 (D. Del. 1985), is also a Rule 15(c) case and is thus inapplicable.  Simply stated, no persuasive authority exits that applies Sharp's proposed rule.

1    however, because it improperly weighed factors other than whether the relevant states' highest

2    courts had adopted cross-jurisdictional *American Pipe* tolling.  *See In re Urethane Antitrust Litig.*,

3    663 F. Supp. 2d 1067, 181-82 (D. Kan. 2009) (rejecting *Linerboard* factors and holding that "state

4    law alone must govern application of a tolling principle to a state's statute of limitations"); *In re*

5    *TFT-LCD Antitrust Litig.,* No. 12-cv-4114 SI, 2013 U.S. Dist. LEXIS 9903 at *49-50 (N.D. Cal.

6    Jan. 23, 2013) (rejecting *Linerboard* because it "conflict[s] with the Ninth Circuit's view on the

7    issue" and finding that "only those claims expressly asserted in the prior class action" are tolled)

8    (citing *Williams*, 517 F.3d at 1136).  *American Pipe* tolling does not apply to Thomson Consumer,

9    so Sharp's claims against it are time-barred and should be dismissed.

10           **C.     Government Action Tolling Does Not Save Sharp's Time-Barred Claims.**

11           Sharp argues that the Court should find that the statute of limitations on its Sherman Act

12   claim has been tolled under 15 U.S.C. § 16(i) from February 10, 2009 to the present by the filing of

13   antitrust indictments against six Taiwanese and Korean nationals.  Each of these individuals are

14   fugitives and have never been arraigned or appeared in a United States court.  Thus, these cases

15   remain in a state of suspended inaction and no meaningful proceedings have occurred or are ever

16   likely to occur.  In other words, if the Court finds that these indictments tolled the statute of

17   limitations against Thomson Consumer, the limitations period will never end.  Accordingly, dilatory

18   plaintiffs like Sharp, who have unreasonably delayed filing claims against the defendants, will be

19   able to initiate their stale claims indefinitely.  Although Sharp's theory of government action tolling

20   would lead to such an absurd result, in its Opposition, Sharp argues that the Court must toll the

21   statute of limitations on these grounds because even if Sharp has not relied on or utilized the Lin,

22   Cheng, Yeh, and Lee *et al*. Indictments in any way to prepare it claims against Thomson Consumer

23   – a fact it does not dispute – the Court may not consider the purposes of 15 U.S.C. § 16(i) when

24   determining if it applies here.  The Court must "solely" compare the face of the "private complaint

25   and government action" to find tolling began "when the first indictment issued, and Sharp's claims

26   will remain tolled through the pendency of the government actions."  (Opp'n. at 14, 17.)  Sharp's

27   argument is inconsistent with Ninth Circuit precedent and common sense and should be rejected.

28

1    The Ninth Circuit has explained that 15 U.S.C. § 16(i) should be applied in a manner that

2    balances its two purposes:  (1) to strengthen private civil antitrust enforcement by enabling private

3    litigants to benefit from evidence uncovered during prior government antitrust actions; and (2) to

4    provide a statute of repose.  *Duggan v. Morgan Drive-Away, Inc*., 570 F.2d 867, 868-72 (9th Cir.

5    1987).  When applying 15 U.S.C. § 16(i), courts must "strike an exquisite balance" between these

6    goals to ensure that the application of government action tolling in a particular case serves both

7    purposes.  (*Id*. at 852).  Interpretations that would aid the private litigant by extending the period

8    within which a private suit can be brought, but would also "frustrate" and "ignore the statute-of

9    repose purpose of section 16(i)" must be avoided.  (*Id*. at 871-2.)

10   Here, applying 15 U.S.C. § 16(i), to toll the statute of limitations based on the mere filing of

11   the fugitive indictments would not serve either purpose of the statute.  First, as Thomson Consumer

12   explained in its Motion, a search of the Court's docket reveals that effectively there are no pending

13   criminal proceedings against these fugitive defendants.  Indeed, the Court in *United States v. Yeh*,

14   No. 10-cr-00231 (N.D. Cal. 2010), has even refused to consider the defendant's motion to dismiss

15   since the defendant has never been arraigned.  Since no meaningful criminal proceedings are

16   currently pending against these fugitives, there is no evidence or other fruit of the government

17   indictments from which Sharp may benefit.  Tolling the statute of limitations would not serve the

18   first purpose of 15 U.S.C. § 16(i).

19   Second, finding that the fugitive indictments tolled the statute of limitations "would frustrate

20   the statute-of-limitations purpose of section 16(i)" by effectively eliminating the statute of

21   limitations.  *Duggan*, 570 F.2d at 871.  In circumstances such as this one, where the government

22   files an indictment, but the defendant is never arraigned and no government action is actually

23   prosecuted, the statute of limitations would never expire.  In accordance with fundamental

24   principles of statutory construction, an interpretation of 15 U.S.C. § 16(i) that would produce such

25   an absurd result must be avoided.  *See Ariz. State Bd. for Charter Schools v. U.S. Dept. of Ed*., 464

26   F.3d 1003, 1008 (9th Cir. 2006); *see also, Credit Suisse Secs. (USA) LLC v. Simmonds*, 132 S.Ct.

27   1414, 1420 (2012) (rejecting interpretation of a statute that would lead to potentially "endless

28

tolling).  Consistent with the Ninth Circuit's direction in *Duggan* and the purposes of 15 U.S.C. § 16(i), the Court should find that statute of limitations has not been tolled by these indictments.

Moreover, Sharp fails to plead allegations against Thomson Consumer that establish the necessary overlap between its claims against Thomson Consumer and the fugitive indictments.  For example, the Lin Indictment alleges that all of Mr. Lin's alleged anticompetitive activities occurred in Asia in his capacity as Chairman and CEO of Chunghwa, while Sharp alleges that Thomson Consumer representatives participated in anticompetitive meetings in the United States and Europe. Sharp does not allege that anyone from Thomson Consumer:  (1) ever had any contact with Mr. Lin or Chungwa or (2) participated in any anticompetitive activities in Taiwan, Korea, Malaysia, China, Thailand, or Indonesia.  A substantial relationship between the two actions may only be established by *assuming* that Mr. Lin participated in a global conspiracy that also involved anticompetitive conduct in Europe and the United States, *even though no facts alleging the existence of a conspiracy outside of Asia are actually alleged in the Lin Indictment.*  (*See* **Ex. A** attached to Mot.)  Because 15 U.S.C. § 16(i) reflects a "congressional emphasis on certainty and predictability in the application" of the tolling provision so as to avoid "undue prolongation of antitrust proceedings," Supreme Court case law does not allow for the statute of limitations to be tolled based on such a speculative application of 15 U.S.C. § 16(i).  *Greyhound Corp. v. Mt. Hood Stages*, Inc., 437 U.S. 322, 335 (1979); *see also Novell, Inc. v. Microsoft Corp.,* 505 F.3d 302, 320 (4th Cir. 2007) (explaining that "the Supreme Court has accepted tolling only where the private plaintiffs make claims identical to, or completely encompassed by, those at issue in the earlier government suit.").  Sharp has failed to plead facts that establish the necessary overlap between the fugitive indictments and its claims against Thomson Consumer.  These indictments do not toll the statutes of limitation.[5]

---

[5] Sharp's reliance on *Chipanno* is misplaced.  In that case, the court determined that there was necessary overlap between private antitrust claims regarding the sale of timber on private lands in Oregon and a prior government antitrust action regarding timber sales on public lands in Oregon. Critical to the court's holding was the fact that tolling the statute of limitations would further the "purpose" of 15 U.S.C. §16(i).  *Chippano v. Champion International Corp.*, 702 F.2d 827, 832-33 (9th Cir. 1983).  Because both suits had the same "geographic scope . . . evidence adduced *in the trial of the government suit* would be of practical assistance to plaintiffs in proving their own complaint."  (*Id.*) (emphasis added).  Here, the purposes of the statute would not be served because there are no government proceedings from which Sharp may benefit and the suits relate to different geographic markets.  Moreover, the fact that the Ninth Circuit determined that there was sufficient

III.    **Sharp Fails to Plead Federal or State Claims.**

      A.    **Sharp Fails to Plead Facts That Plausibly Suggest It Satisfies the Ownership and Control Exception to *Illinois Brick*.**

The ownership and control exception to *Illinois Brick* encompasses relationships involving "such functional economic or other unity between the direct purchaser and either the defendant or the indirect purchaser, that there effectively has been only one sale."  *Sun Microsystems, Inc. v. Hynix Semiconductor Inc.,* 608 F. Supp. 2d 1166, 1180 (N.D. Cal. 2009).  The FAC lodges only conclusory allegations of "domination and control."  It does not plead specific facts that allow the Court to plausibly infer Sharp's purchases qualify for the ownership and control exception.  At this stage in the litigation, with the close of discovery a few months away, Sharp must do more than plead these types of generalities and conclusions.  Because, after having been provided leave to amend, Sharp still fails to plead facts that demonstrate ownership and control sufficient to meet this exception, Sharp's indirect purchaser claims should be dismissed with prejudice.  *In re TFT-LCD Antitrust Litig.*, No. 7-md-1827, 2013 U.S. Dist. LEXIS 39606 *50-51 (N.D. Cal. Mar. 20, 2013).

      B.    **Sharp Has Failed to Plead Facts That State a Plausible  N.Y. GEN. BUS. LAW § 349 Claim Against Thomson Consumer.**

Sharp's  N.Y. GEN. BUS. LAW § 349 claim should be dismissed because it does not plead specific facts that plausibly suggest any representative of Thomson Consumer made any false or misleading public statement that injured consumers in New York.  *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 908 (E.D. Pa. 2012) (dismissing N.Y. GEN. BUS. LAW § 349 claim for failure to plead facts that rendered claim plausible).  Sharp has alleged only that unspecified defendants "[coordinated] public statements" (FAC at ¶ 152) and that representatives of LG Electronics issued press releases that gave false and misleading justifications for price increases (*id*. at ¶¶ 245-46).  While Sharp argues in its Opposition that ¶ 239 of the FAC alleges facts that support its claim, that allegation is actually based on a 1999 SDI document and does not specifically identify any Thomson Consumer employee alleged to have made a misrepresentation that could have deceived a consumer in New York.  *Goshen v. Mutual Life Ins. Co. of New York*, 774 N.E.2d

overlap between suits regarding timber sales in Oregon does not require this Court to assume an overlap between alleged anticompetitive conduct regarding unrelated parties on different continents.

1190, 1195 (N.Y. 2002) (stating that to qualify at a "prohibited act under the statute, the deception of a consumer must occur in New York."); *see also Merrill Lynch Capital Mkts. Ag. v. Controladora Comercial Mexicana SAB DE C.V.*, 2010 N.Y. Misc. LEXIS 6743 (N.Y. Sup. Ct. 2010) ("GBL §349 was not intended to cover big-dollar financial transactions between private and sophisticated parties.") (internal citations omitted).  Because Sharp has failed to plead specific facts that could state a claim against Thomson Consumer for violation of N.Y. Gen. Bus. Law § 349, Sharp's fifth claim against it should be dismissed with prejudice.

### C.  Sharp's New York and New Jersey Antitrust and Unfair Competition Law Claims Should Be Dismissed Because They Offend Due Process.

This Court cannot apply the law of another state where its application would be inconsistent with the Due Process Clause.  *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981) ("[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.").   When evaluating whether the Due Process Clause is satisfied in the antitrust context, the Ninth Circuit has stated that two factors should be examined:  (1) where the allegedly price fixed products were purchased and (2) where the allegedly anticompetitive conduct giving rise to the conspiracy occurred.  *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1112-13 (9th Cir. 2013).  Sharp admits in its Opposition that the FAC does not allege that it purchased any CRTs or CRT Products in either New York or New Jersey.  Instead, it merely alleges that Sharp "warehoused" CRT Products purchased in another state in New York and "oversaw . . . CRT procurement activities" in New Jersey.  (FAC at ¶¶ 277, 291.) Sharp does not allege that any Thomson Consumer representative took any acts within or directed at New York or New Jersey, let alone took any anticompetitive acts in these states.  Accordingly, Sharp's antitrust claims under the laws of these states must be dismissed.  *In re TFT-LCD Antitrust Litig.*, No. 7-md-1827, 2013 U.S. Dist. LEXIS 39606 *56 (N.D. Cal. Mar. 20, 2013).

### CONCLUSION

For the foregoing reasons, Thomson Consumer respectfully requests that the Court dismiss all claims alleged against it in Sharp's FAC with prejudice.

Dated:  January 10, 2014

Respectfully submitted,

*/s/ Kathy L. Osborn*

Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA  94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

***Attorneys for Defendant, Thomson Consumer
Electronics, Inc.***