Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: +1-303-607-3500
Facsimile: +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Defendant, Thomson SA*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | No. 07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Sharp Electronics Corp, et al. v. Hitachi, Ltd., et al., No. 13-cv-001173* | **THOMSON SA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SHARP'S FIRST AMENDED COMPLAINT**<br><br>Date: February 7, 2013<br>Time: 10:00 A.M.<br>Place: Courtroom 1, 17th Floor<br>Judge: Hon. Samuel Conti |

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

I.      SHARP'S CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED
        BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER
        THOMSON SA ............................................................................................... 1

        A.      Sharp Has Failed to Establish a Prima Facie Case That Thomson Consumer
                Was an Agent of Thomson SA, So Thomson SA Is Not Subject to This
                Court's General Jurisdiction ....................................................................... 1

        B.      Sharp Has Failed to Plead Facts Establishing That Thomson SA Committed
                Intentional Acts Expressly Aimed at the U.S. That Were a But-For Cause of
                Sharp's Claims ............................................................................................. 4

        C.      The Court Should Decline to Grant Sharp Jurisdictional Discovery ........................... 5

II.     SHARP'S CLAIMS AGAINST THOMSON SA ARE BARRED BY LACHES ................. 5

        A.      Thomson SA Has Been Seriously Prejudiced by Sharp's Unjustified Delay in
                Filing Suit ..................................................................................................... 6

III.    SHARP'S CLAIMS AGAINST THOMSON SA ARE TIME-BARRED AND IT
        HAS NOT PLEAD SPECIFIC FACTS THAT ESTABLISH A PLAUSIBLE BASIS
        FOR TOLLING THE STATUTES OF LIMITATION ........................................... 8

        A.      Sharp's Fraudulent Concealment Theory Should Be Dismissed Because It
                Does Not Plead Any Facts That Establish Thomson SA Took Affirmative
                Acts to Conceal Its Alleged Participation in the Conspiracy and That Sharp
                Diligently Attempted to Discover Its Claims ............................................... 8

        B.      *American Pipe* Tolling Only Tolled the Statute of Limitation on Sharp's
                Federal Claim Against Thomson SA from January 28, 2008 Until March 16,
                2009 ............................................................................................................... 12

        C.      Government Action Tolling Does Not Save Sharp's Claims .................................. 13

IV.     SHARP OTHERWISE FAILS TO PLEAD VIABLE CLAIMS ................................. 14

CONCLUSION ......................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ariz. State Bd. for Charter Schools v. U.S. Dept. of Ed.*,
464 F.3d 1003 (9th Cir. 2006) .................................................................................. 14

*Ashley v. Boyle's Famous Corned Beef Co.*,
66 F.3d 164 (8th Cir. 1995) (en banc) ....................................................................... 5

*Barker v. Am. Mobil Power Corp.*,
64 F.3d 1397 (9th Cir. 1995) ..................................................................................... 9

*Bullen v. De Brettville*,
239 F.2d 824 (9th Cir. 1956) ............................................................................... 12, 13

*Cada v. Baxter Healthcare Corp.*,
920 F.2d 447 (7th Cir. 1991) ..................................................................................... 5

*Conmar Corp. v. Mitsui & Co. (USA) Inc.*,
858 F.2d 499 (9th Cir. 1988) ..................................................................................... 9

*Credit Suisse Secs. (USA) LLC v. Simmonds*,
132 S.Ct. 1414 (2012) .............................................................................................. 14

*Danjaq LLC v. Sony Corp.*,
263 F.3d 942 (9th Cir. 2001) ..................................................................................... 6

*Den Norske Stats Oljeselskap AS v. Heeremac VOF*,
241 F.3d 420 (5th Cir. 2001) ................................................................................... 16

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) .............................................................................. 1, 2, 3

*Madison v. IBP, Inc.*,
330 F.3d 1051 (8th Cir. 2003) ................................................................................... 5

*In re Intel Corp. Microprocessor Antitrust Litig.*,
452 F. Supp. 2d 555 (D. Del. 2006) ........................................................................ 15

*In re Processed Egg Prods. Antitrust Litig.*,
2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013) ................................... 9, 11

*In re Rubber Chemicals Antitrust Litig.*,
504 F. Supp. 2d 777 (N.D. Cal. 2007) .................................................................... 11

*In re Transpacific Passenger Air Trans. Antitrust Litig.*,
No. 07-cv-5634 CRB, 2011 U.S. Dist. Lexis 49853 (N.D. Cal. May 9, 2011) ......... 9

*In re Urethane Antitrust Litig.*,
663 F. Supp. 2d 1067 (D. Kan. 2009) ................................................................. 10, 11

*Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*,
    518 F.2d 913 (9th Cir. 1975) ........................................................................ 5

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ........................................................................ 6

*Linder Dividend Fund, Inc. v. Ernst & Young*,
    880 F. Supp. 49 (D. Mass 1995).......................................................... 6, 12, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ..................................................................................... 16

*McCune v. Alioto Fish Co.*,
    597 F.2d 1244 (9th Cir. 1979) ...................................................................... 6

*Rutledge v. Boston Woven Hose & Rubber Co.*,
    576 F.2d 248 (9th Cir. 1978) ...................................................................... 11

*Schur v. Friedman, & Shaftan, P.C.*,
    123 F.R.D. 611 (N.D. Cal. 1988) ............................................................... 13

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ........................................................................ 9

*Terracom v. Valley Nat'l Bank*,
    49 F.3d 555 (9th Cir 1995) ........................................................................... 5

*Volk v. D.A. Davidson & Co.*,
    816 F.2d 1406 (9th Cir. 1987) ...................................................................... 9

**FEDERAL STATUTES**

15 U.S.C. § 16(i) .................................................................................... 13, 14

**STATE STATUTES**

N.Y. GEN. BUS. LAW § 349 ............................................................................ 15

**RULES**

Federal Rule of Civil Procedure 9(b) ....................................................... 9, 10, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## INTRODUCTION

Although it has access to the voluminous discovery record in this case and this Court granted it leave to amend its Complaint, Sharp still fails to present facts that establish Thomson SA, a French holding company, is subject to personal jurisdiction in this Court. Sharp's claims are also inexcusably late and, as this Court has already ruled, forcing Thomson SA to enter this long-running MDL proceeding now would place it at an unfair, prejudicial disadvantage. (*See* Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].) There is no dispute that Sharp's unreasonable delay in pressing its rights has seriously prejudiced Thomson SA, but Sharp does not even attempt to explain why it waited nearly six years after it admittedly knew of its potential claims to file suit. This is because there is no excuse. The prejudice that Sharp's foot-dragging has caused Thomson SA is solely the result of Sharp's own lack of diligence. Therefore, Sharp's claims are barred by laches and tolling doctrines do not save its untimely claims. Thomson SA respectfully requests that the Court dismiss the claims asserted against it in Sharp's First Amended Complaint ("FAC") with prejudice.

## ARGUMENT

I.    **SHARP'S CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER THOMSON SA.**

      A.    **Sharp Has Failed to Establish a Prima Facie Case That Thomson Consumer Was an Agent of Thomson SA, So Thomson SA Is Not Subject to This Court's General Jurisdiction.**

In its now withdrawn December 11, 2013 Order, the Court found that Sharp had failed to establish a prima facie case that Thomson Consumer was Thomson SA's agent, such that Thomson Consumer's presence in this forum could be imputed to Thomson SA. (Dec. 11, 2013 Order [2252] at 10-11.) Because Sharp's "facts and allegations about [Thomson SA's] relationship with Thomson Consumer are inconclusive under *Unocal* and *Bauman*," the Court held Sharp had failed to meets its "burden of showing general jurisdiction is appropriate." (*Id*.) Neither the FAC, nor Sharp's Opposition to Thomson SA's Motion to Dismiss for Lack of Personal Jurisdiction ("Opposition") provide a basis for the Court to reach a different conclusion now. Instead, in its Opposition, Sharp makes the same arguments and relies on the same alleged facts[1] contained in its

---

[1] In support of these "facts," Sharp cites the same exact exhibits in its Opposition that it attached to its response to Thomson SA's prior motion to dismiss, except that now Sharp also attaches as

1    prior briefing.  Sharp argues once again that Thomson SA "dominated and controlled" Thomson

2    Consumer's daily affairs so that it was Thomson SA's agent because:  (1) several Thomson SA

3    executives served on Thomson Consumer's board; (2) some Thomson SA executives allegedly

4    worked at times in Thomson Consumer's U.S. offices; (3) Thomson SA representatives were

5    involved in negotiations regarding CRTs allegedly sold by an unspecified Thomson affiliate in the

6    U.S.; and (4) Thomson SA realized substantial revenues from its subsidiaries' business activities in

7    the U.S.  (*See* Opposition at 4-10; *compare* Dec. 11, 2013 Order at 6-7 (summarizing Sharp's

8    arguments and evidence in support of finding Thomson Consumer was Thomson SA's agent for

9    purposes of general jurisdiction).)

10         For the reasons expressed in Thomson SA's Motion and the Court's withdrawn Dec. 11,

11   2013 Order, the Court should find that Sharp has failed to establish that Thomson Consumer was

12   Thomson SA's agent.  First, under Ninth Circuit law, the fact that some of Thomson SA's

13   executives allegedly "served on Thomson Consumer's board or even shared office space with

14   Thomson Consumer, without more, does not establish enough involvement in Thomson Consumer

15   to treat that entity as [Thomson SA's] agent."  (Dec. 11, 2013 Order at 10); *see also Doe v. Unocal*

16   *Corp.,* 248 F.3d 915, 926-27 (9th Cir. 2001) (stating that it "is entirely appropriate for directors of a

17   parent corporation to serve as directors of its subsidiary" or to be "directly involved in financing

18   and macro-management of its subsidiaries.").  Second, that some Thomson SA executives allegedly

19   possessed job titles that Sharp asserts suggest these executives exerted substantial operational

20   control over Thomson Consumer's daily operations "do not, without more, suggest actual

---

Exhibit 1 a June 10, 2003 email between "Thomson" employees.  Sharp claims that this exhibit
establishes that Thomson SA "approved the prices at which CRTs were sold to customers in the
United States."  (Opposition at 1).  While the document does show that throughout 2002 and early
2003 "Thomson" attempted to meet the demands for CRT price cuts requested by its customer,
Samsung, it does not indicate (1) what Thomson entity around the world manufactured these tubes
and (2) into which geographic market these tubes were sold.  Therefore, contrary to Sharp's
representations, Exhibit 1 does not establish that Thomson SA set the prices at which tubes
manufactured by Thomson Consumer were sold, nor does it refute the Cadieux Affidavit which
states "Thomson Consumer was responsible for the sales and marketing of CRTs in the United
States and set the prices for CRTs in the United States."  (Cadieux Affidavit at ¶ 21, **Ex. 3** to
Motion).

involvement in Thomson Consumer's activities.  They are too vague."  (Dec. 11, 2013 Order at 11.)

Third, the remaining facts and allegations cited by Sharp:

> are mostly references to [Thomson SA's] work either in general or with other parties.  In any event, they do not directly controvert Defendant's declaration that – at least as to Thomson Consumer – [Thomson SA] was merely a majority shareholder, not a controlling corporation.  Even if the Court considers the significance of the United States CRT market to [Thomson SA] the Court cannot find from the facts on the record that Thomson Consumer is Defendant's agent, or that they have the kind of synergistic relationship that would warrant linking the two companies for jurisdictional purposes.

(*Id.*); *see also Unocal Corp.*, 248 F.3d at 926 (stating that a subsidiary's contacts with the forum may only be imputed to the parent "if the parent and the subsidiary are not really separate entities" because the parent controls the "subsidiary's internal affairs or daily operations."); *id*. at 929-30 (noting that there is a fundamental distinction between an "active parent corporation involved directly in the decision-making about its subsidiaries' holdings" and a "super corporation" that exerts such substantial control over its subsidiaries' day-to-day operations in the forum that "the subsidiaries' presence substitutes for the presence of the parent."); O'Hara Affidavit at ¶¶ 4-7, **Ex. 5** to Motion (stating in 2005 that "Thomson Inc. controls its day-to-day activities" and was "responsible for the sales and marketing of products in the United States."); Debon Affidavit at ¶ 6, **Ex. 6** (stating in 2005 that "Thomson SA d[id] not direct or advise Thomson [Consumer] on how to sell or distribute any Thomson [Consumer] product in the United States."); Motion at 11 (explaining that the fact that Thomson Consumer's CRT manufacturing business was not sufficiently important to Thomson SA that, but for existence, Thomson SA would not have performed these activities itself, was conclusively established by the fact that Thomson Consumer closed its United States-based CRT plants in 2004 and sold its CRT business in 2005).

In short, in the FAC and in its Opposition, Sharp still fails to present facts that establish Thomson SA controlled the day-to-day operations of Thomson Consumer and that Thomson Consumer was sufficiently important to Thomson SA that it would have carried on Thomson Consumer's operations in its absence.  Therefore, the Court should find that Sharp has failed to make a prima facie case that Thomson Consumer was Thomson SA's agent.

1

2

**B.      Sharp Has Failed to Plead Facts Establishing That Thomson SA Committed Intentional Acts Expressly Aimed at the U.S. That Were a But-For Cause of Sharp's Claims.**

3      Citing to essentially the same allegations and facts this Court previously found

4   "inconclusive," Sharp's Opposition doubles down on the attenuated theory of specific jurisdiction it

5   advanced in prior briefing.  Sharp asserts that Thomson SA participated in the alleged global

6   conspiracy to fix the price of CRTs and representatives of some generic "Thomson" entity attended

7   foreign meetings with other defendants where information concerning pricing and production

8   information related to CRTs and CRT Products sold in the United States was discussed, therefore

9   Thomson SA must have purposely directed anticompetitive activity at the United States.  (Opp'n. at

10   11-12.)  Sharp also argues that its federal and state claims would not have arisen absent this alleged

11   global price fixing conspiracy and alleges that Thomson SA participated in this global conspiracy,

12   so Thomson SA must have been a but-for cause of Sharp's alleged antitrust injuries.  (*Id*. at 13-14.)

13      Sharp's recycled arguments and evidence do not establish a prima facie case that Thomson

14   SA committed intentional acts directly aimed at the United States that were a but-for cause of

15   Sharp's alleged domestic antitrust injuries.  As the Court found in its December 11, 2013 Order, the

16   evidence Sharp relies on in support of these arguments "often references 'Thomson' generally" and

17   is "inclusive."  (Dec. 11, 2013 Order at 15.)  "Under these circumstances, the Court cannot find that

18   [Thomson SA] intentionally aimed any action toward the United States, that [Thomson SA's]

19   actions were the but-for cause of Plaintiffs' claims, and especially that exercising jurisdiction would

20   be reasonable.  (*Id*.)

21      Although nearly 100 depositions have been conducted in this case, nearly 5 million pages of

22   documents have been produced by the parties, and the discovery cut-off is just months away, Sharp

23   attaches no new exhibits or evidence to its Opposition that would warrant a different finding here.

24   Even with complete access to the voluminous discovery record in this case, Sharp has not shown or

25   even sufficiently alleged that Thomson SA engaged in anticompetitive activity individually targeted

26   at Sharp in the United States.  The reason for this failure is simple – Thomson SA has never

27   manufactured or sold CRTs or conducted any CRT business in the United States.  Sharp has failed

28   to establish a prima facie case that Thomson SA is subject to this Court's jurisdiction.

C.     **The Court Should Decline to Grant Sharp Jurisdictional Discovery.**

"[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir 1995).   In its December 11, 2013 Order, the Court found that "[e]ven though Plaintiffs have not made a prima facie showing of jurisdiction, their allegations and evidence are not entirely bare" so that the Court would grant Sharp "limited jurisdictional discovery to collect evidence related to their agency argument and the Defendant's intentional conduct toward the United States." (Dec. 11, 2013 Order at 16.)  Thomson SA respectfully requests that the Court reconsider this finding in light of the fact that discovery in this matter has already gone on for nearly four years.  Despite the fact that it has had access to the voluminous discovery record and has been granted leave to amend its deficient Original Complaint, Sharp is still unable to plead specific facts or cite to evidence that controverts Thomson SA's declarations showing that Thomson Consumer was not its agent and that it did not set the price of CRTs or CRT Products sold in the United States.  In light of Sharp's repeated failure to present evidence from this massive discovery record sufficient to establish that Thomson SA is subject to jurisdiction, there is simply no reasonable basis to believe that Sharp will obtain evidence that justifies the costs and burdens that allowing it to conduct additional far ranging discovery now will impose on Thomson SA.  And, for the reasons stated in Section II below, subjecting Thomson SA to such extensive discovery at this juncture would be unduly prejudicial and burdensome. Accordingly, Thomson SA respectfully requests that the Court deny Sharp jurisdictional discovery.

## II.     SHARP'S CLAIMS AGAINST THOMSON SA ARE BARRED BY LACHES.

Where, as here, a plaintiff's antitrust claims are only timely if the statutes of limitations are tolled, the plaintiff's reliance on tolling may be barred by laches.  *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 447, 453 (7th Cir. 1991) (rejecting tolling where plaintiff failed to file suit within a reasonable time); *Ashley v. Boyle's Famous Corned Beef Co.,* 66 F.3d 164, 170 (8th Cir. 1995) (en banc), *abrogation on other grounds recognized in Madison v. IBP, Inc.,* 330 F.3d 1051, 1056 (8th Cir. 2003); *see also Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*, 518 F.2d 913, 926-27 (9th Cir. 1975) (holding that plaintiff's ability to obtain equitable relief in context of Clayton Act is

"circumscribed" by the doctrine of laches because Congress did not intend "to permit potential plaintiffs to sleep through their competitors' antitrust violations and then sue many years later."). Because its unjustified delay in filing suit has caused Thomson SA irreparable prejudice, Sharp's reliance on tolling doctrines is barred by laches.

> **A.     Thomson SA Has Been Seriously Prejudiced by Sharp's Unjustified Delay in Filing Suit.**

Laches bars a plaintiff's claims when it (1) has unreasonably delayed pressing its rights and thereby (2) caused prejudice to the defendant. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 838 (9th Cir. 2002). The first element is established where the plaintiff offers "no viable justification for the delay." *Danjaq LLC v. Sony Corp*., 263 F.3d 942, 954 (9th Cir. 2001). Sharp does not even attempt to explain or provide a valid excuse for why it delayed filing suit against Thomson SA until March 2013, nearly six years after these actions began, and it has admitted it knew of its claims and four years after Thomson SA was dropped as a party from both the IPP and DPP amended consolidated complaints. (*See* FAC at ¶ 232; *infra* at 10.) However, "at the time when a defendant is dropped from the class action, that defendant is no longer notified of any claims against it, and *a potential plaintiff is then required to act upon any claims it hopes to assert*." *Linder Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 54 (D. Mass 1995) (emphasis added.) Sharp knew that if it wanted to assert claims against Thomson SA, it needed to act, at the latest, when Thomson SA was dropped as a defendant from the class action complaints. Sharp, however, did nothing. It slept on its rights and allowed these sprawling, highly-complex CRT actions to proceed for four years before attempting to drag Thomson SA into them. There is no justification for Sharp's delay in filing its claims. Sharp has unreasonably delayed pressing its rights as a matter of law. *See McCune v. Alioto Fish Co.,* 597 F.2d 1244, 1250 (9th Cir. 1979).

Sharp does not credibly refute that Thomson SA has been severely prejudiced by Sharp's unjustified multi-year delay. As explained in greater detail in Thomson Consumer's Reply, which Thomson SA restates and incorporates by reference as if fully set forth herein, discovery in these actions began nearly four years ago, on March 8, 2010, a year *after* Thomson SA was dropped as a

1    defendant from the class complaints.  ([Dkt. No. 1609] at 2.)  Since that time, the parties have

2    produced nearly 5 million documents (many in foreign languages) and conducted almost 100

3    depositions of witnesses from around the world.  Thomson SA has not had access to, nor reviewed

4    nearly all of these documents and has not participated in any depositions.  It has not had the

5    opportunity to question any of these witnesses, and it is unclear, if not unlikely, it would ever have

6    an opportunity to go back and do so if it is added to these proceedings now.  Thomson SA has not

7    retained an expert or participated in any expert discovery to date.

8         As such, Sharp's inexcusable delay will cause Thomson SA at least one of two forms of

9    severe prejudice:  (1) Thomson SA will be required to attempt to "catch up" by conducting

10   discovery, noticing depositions of parties who will inevitably object to the notices if they have

11   already been deposed, engaging experts, drafting summary judgment motions, and preparing for

12   trial within a matter of months and without the benefit of having participated in discovery over the

13   past four years as it unfolded; or (2) Thomson SA will be forced to go it alone and complete these

14   tasks and conduct trials on a schedule that is separate from the other defendants and that deprives

15   Thomson SA of the cost efficiencies that have resulted from the joint defense group's sharing of

16   discovery and trial preparation activities to date.   Both approaches would severely prejudice

17   Thomson SA and make it nearly impossible for it to fully and fairly defend itself.

18        The first approach would impose an extraordinary burden on Thomson SA and put it at an

19   unfair, insurmountable disadvantage.  Given the size, complexity, and volume of the factual and

20   legal issues raised by this case, Thomson SA cannot conduct an enormous amount of discovery,

21   synthesize all of this information, draft summary judgment motions, and engage experts to prepare

22   factually and economically complex expert reports in just a few months.  To require Thomson SA to

23   complete such a monumental task in less than one-fifth the time the other parties in this case have

24   had to do so would be fundamentally unfair and unduly burdensome.  Because of Sharp's delay,

25   Thomson SA, through no fault of its own, would be deprived of the opportunity to fully defend

26   itself.  The Court should not allow Sharp to prejudice Thomson SA and benefit itself as a result of

27   Sharp's inexcusable delay.

28

1    The second approach would also cause Thomson SA to suffer serious, irreparable prejudice

2    because it would be required to complete all the tasks identified above without the benefits of full

3    participation in the joint defense group.  The resulting duplication of efforts would cause massive

4    inefficiencies and force Thomson SA to bear costs and burdens that previously have been shared

5    among the other defendants.  Most critically, Thomson SA would be placed at a significant and

6    irremediable strategic disadvantage.  As the Court knows, antitrust damage actions provide for joint

7    and several liability – they do not permit contribution among defendants.  Regardless of its lack of

8    culpability, because it would be the last defendant, Thomson SA would almost certainly be subject

9    to the risk of enormous financial exposure as Sharp will attempt to recover from it amounts left

10   unsatisfied by settlements or judgments involving the other defendants.  Thus, Sharp will benefit

11   from its delay by being able to place Thomson SA at a severe strategic disadvantage – a posture it

12   will undoubtedly seek to exploit by demanding an exorbitant settlement or judgment.

13   Moreover, with either approach, Sharp's delay has caused Thomson SA irreparable

14   evidentiary prejudice.  Sharp has admitted it knew Thomson SA exited the industry in 2005.  (FAC

15   at ¶¶ 71-72.)  Sharp knew or should have known that it had to bring its claims in a timely manner

16   because it would be increasingly difficult, if not impossible, for Thomson SA to defend itself

17   against claims involving employees who no longer work for the company and in an industry in

18   which it no longer participated in as time passed.  Sharp, however, did nothing.

19   It did not have to be this way.  Sharp could have sued Thomson SA in March 2009 – a year

20   before discovery in these actions commenced.  Sharp, however, did nothing and its unjustified and

21   unreasonable delay has caused Thomson SA prejudice and put it at a severe strategic disadvantage.

22   As such, laches bars Sharp from tolling the relevant statutes of limitation, all of Sharp's claims are

23   untimely, and Thomson SA is entitled to dismissal of Sharp's claims against it with prejudice.

III.   **SHARP'S CLAIMS AGAINST THOMSON SA ARE TIME-BARRED AND IT HAS NOT PLEAD SPECIFIC FACTS THAT ESTABLISH A PLAUSIBLE BASIS FOR TOLLING THE STATUTES OF LIMITATION.**

A.   **Sharp's Fraudulent Concealment Theory Should Be Dismissed Because It Does Not Plead Any Facts That Establish Thomson SA Took Affirmative Acts to Conceal Its Alleged Participation in the Conspiracy and That Sharp Diligently Attempted to Discover Its Claims.**

1    Although Sharp was granted leave to amend, the FAC still makes conclusory allegations of

2    fraudulent concealment against Thomson SA.  At this stage in the proceedings, however, these

3    allegations are not sufficient.  Sharp fails to allege any specific facts that: (1) suggest Thomson SA

4    took affirmative acts to conceal its alleged participation in the conspiracy and (2) Sharp diligently

5    attempted to discover its claims.  Accordingly, the statutes of limitation on Sharp's claims against

6    Thomson SA began to run in July 2005 when Thomson SA exited the CRT industry.

7         To survive a motion to dismiss, a plaintiff attempting to allege fraudulent concealment must

8    satisfy the heightened pleading standards of Fed. R. Civ. 9(b) and plead specific facts that identify

9    the time, place, specific content, and identity of the speaker who made the false representations.

10   *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  The plaintiff "must do more than

11   show that it was ignorant of its cause of action . . . it must plead facts showing that [Thomson SA]

12   affirmatively misled it."  *Conmar Corp. v. Mitsui & Co. (USA) Inc.,* 858 F.2d 499, 502 (9th Cir.

13   1988).  A defendant's silence or failure to "own up" to or voluntarily admit to misconduct does not

14   constitute fraudulent concealment.  *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir.

15   1987).  A plaintiff also fails to adequately plead fraudulent concealment if it fails to plead the

16   specific acts of diligence it undertook to uncover its claims.  *Conmar,* 858 F.2d at 502; *In re*

17   *Processed Egg Prods. Antitrust Litig.*, 2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013).

18   While in certain circumstances, it may be inappropriate to resolve fact-intensive claims of

19   fraudulent concealment at the motion to dismiss stage, this principle does not apply when, as here,

20   the plaintiff fails to plead *any* specific facts that suggest (1) the moving defendant took affirmative

21   acts to fraudulently conceal its alleged wrongdoing or (2) the plaintiff took any acts to discover its

22   claims.  *See In re Transpacific Passenger Air Trans. Antitrust Litig.,* No. 07-cv-5634 CRB, 2011

23   U.S. Dist. Lexis 49853 *69 (N.D. Cal. May 9, 2011) (dismissing vague, conclusory allegations of

24   fraudulent concealment for failure to satisfy Rule 9(b)); *In re Processed Egg Prods. Antitrust Litig.*,

25   2013 U.S. Dist. LEXIS 119936 *9-13 (E.D. Pa. Aug. 23, 2013) (granting motion to dismiss with

26   prejudice as a result of plaintiffs' failure to plead specific facts supporting fraudulent concealment

27   with particularity).  In addition, the Ninth Circuit has held that a plaintiff cannot "use the fraudulent

28   concealment by one defendant as a means to toll the statute of limitations against other defendants."

1    *Barker v. Am. Mobil Power Corp.,* 64 F.3d 1397, 1402 (9th Cir. 1995).  Finally, a plaintiff's

2    reliance on a fraudulent concealment theory is properly limited to only those time periods for which

3    the plaintiff pleads specific acts of alleged concealment with the particularity required by Rule 9(b).

4    *See In re Urethane Antitrust Litig.,* 663 F. Supp. 2d 1067, 1078-9 (D. Kan. 2009) (granting motion

5    to dismiss and limiting time periods for which plaintiffs could rely on theory of fraudulent

6    concealment to only those periods corresponding with dated acts of concealment pled with

7    particularity in complaint).  Thus, a plaintiff does not plead a viable fraudulent concealment theory

8    if the plaintiff does not plead specific facts showing the defendants affirmatively concealed their

9    alleged misconduct during the time period the plaintiff seeks to rely on fraudulent concealment to

10   toll the applicable statutes of limitation.  *Id.*

11          Sharp has failed to plead fraudulent concealment by Thomson SA.  Sharp is unable to direct

12   the Court to any specific facts in the FAC that allege any Thomson SA employee affirmatively

13   concealed Thomson SA's alleged participation in the conspiracy.  Sharp instead cites to allegations

14   in the FAC about other Defendants' alleged fraudulent concealment.   (Opp'n. to Thomson

15   Consumer Mot.[2] at 8 (citing FAC at ¶¶ 232-237).)  These paragraphs of the FAC, however, only

16   make specific allegations against other defendants – they do not allege the time, place, specific

17   content, and identity of the speaker regarding any alleged misrepresentation by an employee of

18   Thomson SA.  (*See* FAC at ¶¶ 232-237.)  Moreover, these allegations do not plead facts with

19   particularity that make it plausible that any defendant fraudulently concealed the conspiracy from

20   Sharp during the relevant time period here – after Thomson SA exited the CRT industry in July

21   2005.  Instead, the last act of fraudulent concealment by other defendants pled in the FAC occurred

22   in 2004.  (*See id.* at ¶ 239.)[3]  As such, Sharp has failed to satisfy the heightened pleading standards

23

24   [2] To obscure the distinctions between Thomson Consumer and Thomson SA, Sharp responds to
     Thomson SA's arguments that Sharp has failed to plead facts that state viable claims for fraudulent
25   concealment and tolling of the statutes of limitation in Sharp's Opposition to *Thomson Consumer's*
     Motion to Dismiss [2286].
26
     [3] The other dated allegations in the FAC in support of Sharp's fraudulent concealment theory are
27   also inadequate.  They describe acts that allegedly occurred in 1999 and thus do not plausibly plead
     fraudulent concealment by defendants after Thomson SA exited the CRT industry in 2005.  (FAC at
28   ¶ 239.)  In addition, these allegations cite only to other defendant's internal company documents
     that could not possibly have affirmatively misled Sharp.

of Rule 9(b) by failing to allege any specific facts that plausibly suggest Thomson SA or other defendants fraudulently concealed the alleged conspiracy after 2004.[4]  *See In re Urethane Antitrust Litig.*, 663 F. Supp. 2d at 1078-9 (D. Kan. 2009).

Sharp also has failed to plead any facts that plausibly suggest it diligently attempted to discover its claims.  Where a plaintiff fails to plead "any specific acts of diligence [it] undertook to discover [its] claims," courts consistently hold that the plaintiff "does not adequately plead the due diligence element of fraudulent concealment."  *In re Processed Egg Prods. Antitrust Litig.*, 2013 U.S. Dist. LEXIS 119936 *9-13 (E.D. Pa. Aug. 23, 2013) (dismissing fraudulent concealment claims with prejudice and collecting cases); *see also Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978).  Sharp pleads absolutely no *facts* showing that it exercised diligence and does not argue otherwise in its Opposition.[5]  Sharp's failure to plead any facts in support of this fundamental element of fraudulent concealment mandates dismissal.  (*Id.*)

In its Opposition, Sharp argues that even if it has failed to adequately plead fraudulent concealment by Thomson SA, the statutes of limitation did not begin to run on its claim against it until November 2007 because it has alleged facts in the FAC that plausibly suggest Thomson SA continued to participate in the alleged antitrust conspiracy after Thomson SA sold all of its CRT assets and transferred its CRT-related employees to Videocon in July 2005.  (Opp'n. to Thomson Consumer Mot. at 10.)  Sharp is incorrect.  Sharp pleads that, in July 2005, Thomson SA transferred all of its CRT assets and personnel to Videocon and thereafter, Thomson SA held an equity investment as a minority shareholder in Videocon.  (FAC at ¶ 75) (stating that in 2005 Videocon

---

[4] *In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777 (N.D. Cal. 2007), does not help Sharp because, in that case, the court found that the plaintiffs had plead detailed, specific facts showing that the withdrawing defendants themselves fraudulently concealed their participation in the alleged conspiracy so even after they resigned from their employer, these defendants' acts of fraudulent concealment tolled the statute of limitations.  (*Id.* at 788) (finding that complaint plead facts with particularity showing that "individual Defendants played a role in the affirmative acts of concealment, including the offering of false and pretextual reasons for the price-fixing meetings that these individual Defendants allegedly attended.").  By contrast, Sharp has not plead facts with particularity that suggest any Defendant, let alone Thomson SA, fraudulently concealed the alleged conspiracy after 2004.

[5] Apparently conceding Thomson SA's argument that it has failed to adequately plead its due diligence, Sharp's Opposition does not even address the subject of Sharp's diligence.  (Opp'n. to Thomson Consumer Mot. at 8-10).

acquired "Thomson's CRT business . . . which included facilities and personnel in the United States, Poland, Italy, Mexico and China.")  Sharp does not plead any facts that plausibly suggest, however, that after July of 2005, Thomson SA actively participated in the manufacturing, sale, distribution, or pricing of CRTs anywhere in the world.  Instead, the last act a Thomson SA employee is alleged to have taken relating to the marketing of CRTs is alleged to have occurred in Europe in November 2004.  (*See* FAC at ¶ 196).  In other words, just months before the close of discovery, Sharp is unable to plead any specific facts that plausibly suggest Thomson SA continued to participate in the alleged conspiracy after it exited the CRT in July 2005.  Accordingly, the statutes of limitations on Sharp's claims against Thomson SA began to run at the latest, at that time and have long since expired.

**B.**     ***American Pipe* Tolling Only Tolled the Statute of Limitation on Sharp's Federal Claim Against Thomson SA from January 28, 2008 Until March 16, 2009.**

While Thomson SA[6] was named as a defendant in four of the original class action complaints, the first of which was filed on January 28, 2008, *American Pipe* tolling does not save Sharp's untimely claims against it.  On March 16, 2009, both the IPPs and DPPs filed amended consolidated complaints that did not name Thomson SA as a defendant in the class actions.  Therefore, *American Pipe* tolling ceased with respect to Thomson SA on the day it was dropped from the class actions.  *See Linder Dividend Fund*, 880 F. Supp. at 54 (holding that a consolidated amended complaint supersedes the original so after it is filed *American Pipe* tolling stops against a defendant not named in the superseding complaint).

Sharp's position on this point is unclear.  Citing *Schur v. Friedman, & Shaftan, P.C.*, 123 F.R.D. 611 (N.D. Cal. 1988), Sharp concedes that *American Pipe* tolling ceased with respect to

---

[6] Thomson Consumer was never named as a defendant in any class action so *American Pipe* tolling never tolled the statutes of limitation for any claim against it.  (*See* Thomson Consumer's Reply at 8.)  Sharp attempts to obscure this, and other important distinctions between Thomson Consumer and Thomson SA, by referring generically to "Thomson" in its Opposition to Thomson Consumer's Motion.  This improperly glosses over the fact that:  (1) Sharp has made different allegations about each in the FAC; (2) the statute of limitations analysis is different for each of them because Thomson Consumer has never previously been sued in this action; and (3) they have each independently moved to dismiss Sharp's FAC.  Accordingly, the viability of Sharp's claims against each of them must also be evaluated independently.

1   Thomson SA on March 16, 2009.  (Opp'n. to Thomson Consumer Mot. at 12).  But then in the next

2   paragraph, Sharp argues that even after Thomson SA was dropped as a party from the class actions,

3   Sharp was still "on notice of its liability for the CRT conspiracy."  (*Id*.)  Sharp's argument that

4   *American Pipe* tolling continued to toll the statutes of limitation on its claims against Thomson SA

5   after it was dropped from the class actions should be rejected.  "[A]t the time when a defendant is

6   dropped from the class action, that defendant is no longer notified of any claims against it, and a

7   potential plaintiff is then required to act upon any claims it hopes to assert."  *Linder Dividend Fund*,

8   880 F. Supp. at 54.  Indeed, any other rule would allow for the broad and unbounded *American Pipe*

9   tolling *Crown, Cork & Seal Co.* and cases interpreting it have prohibited.  (*See* Thomson

10  Consumer's Reply at 9-10.)  The Court should reject Sharp's invitation to apply *American Pipe*

11  tolling in a manner that would provide for the unbounded tolling of the statutes of limitation.

12          Finally, *American Pipe* tolling does not toll the statutes of limitation that apply to Sharp's

13  state law claims because the class action complaints only asserted federal claims.  Accordingly, for

14  the reasons explained in and based on the authority cited in Thomson Consumer's Reply, all of

15  Sharp's state law claims are untimely and subject to dismissal with prejudice.  (*See id.* at 9, 11; *see*

16  *also* [Dkt. No. 1992] at 15-17; [Dkt. No. 2231] at 4-11 (explaining, *inter alia*, why *American Pipe*

17  tolling does not apply to Sharp's state law claims).

18          **C.      Government Action Tolling Does Not Save Sharp's Claims.**

19          Sharp argues that the Court should find that the statute of limitations on its Sherman Act

20  claim against Thomson SA has been tolled under 15 U.S.C. § 16(i) from February 10, 2009 to the

21  present by the filing of antitrust indictments against six Taiwanese and Korean nationals.  Each of

22  these individuals are fugitives and have never been arraigned or appeared in a United States court.

23  Thus, these cases remain in a state of suspended inaction and no meaningful proceedings have

24  occurred or are ever likely to occur.  In other words, if the Court finds that these indictments tolled

25  the statute of limitations against Thomson SA, the limitations period will never end.  The result of

26  such a decision would be that dilatory plaintiffs like Sharp, who have unreasonably delayed filing

27  claims against the defendants, will be able to initiate their stale claims indefinitely and purposefully

28  prejudice those defendants.  Although Sharp's theory of government action tolling would lead to

such an absurd result, in its Opposition, Sharp argues that the Court must toll the statute of limitations on these grounds because even if Sharp has not relied on or utilized the Lin, Cheng, Yeh, and Lee *et al*. Indictments in any way to prepare it claims against Thomson SA – a fact it does not dispute – the Court may not consider the purposes of 15 U.S.C. § 16(i) when determining if it applies here.  (Opp'n. to Thomson Consumer Mot. at 14, 17.)

Sharp's argument is inconsistent with Ninth Circuit precedent and common sense and should be rejected for the reasons set forth in Thomson Consumer's Reply.  (*See* Thomson Consumer's Reply at 11-14, restated and incorporated by reference as if fully set forth herein.)  In circumstances such as this one, where the government files an indictment, but the defendant is never arraigned and no government action is actually prosecuted, the statute of limitations would never expire.  An interpretation of 15 U.S.C. § 16(i) that would produce such an absurd result must be avoided.  *See Ariz. State Bd. for Charter Schools v. U.S. Dept. of Ed*., 464 F.3d 1003, 1008 (9th Cir. 2006); *see also, Credit Suisse Secs. (USA) LLC v. Simmonds*, 132 S.Ct. 1414, 1420 (2012) (rejecting interpretation of a statute that would lead to potentially "endless tolling).  Consistent with the Ninth Circuit's direction in *Duggan* and the purposes of 15 U.S.C. § 16(i), the Court should find that statute of limitations that applies to Sharp's claims against Thomson SA has not been tolled by the Lin, Cheng, Yeh, and Lee *et al*. Indictments.

## IV. SHARP OTHERWISE FAILS TO PLEAD VIABLE CLAIMS

As explained in greater detail in Thomson Consumer's Reply, Sharp otherwise fails to plead viable claims because just months before the close of discovery Sharp: (1) fails to plead facts that plausibly suggest it satisfies the ownership and control exception to *Illinois Brick*; (2) fails to plead facts that state a claim against Thomson SA for violation of N.Y. GEN. BUS. LAW § 349; and (3) fails to plead facts that establish Thomson SA possessed a significant aggregation of contacts with New York and New Jersey. (Thomson Consumer's Reply at 14-15, restated and incorporated by reference as if fully set forth herein). Accordingly, for the reasons expressed in Thomson Consumer's Reply, Sharp's indirect purchaser, N.Y. GEN. BUS. LAW § 349, and New York and New Jersey state law claims should be dismissed with prejudice.

Finally, this Court lacks subject matter jurisdiction over Sharp's claims against Thomson SA because the FAC does not plead facts that plausibly suggest Thomson SA's alleged foreign conduct caused a "direct, substantial, and reasonably foreseeable effect" on domestic commerce under the FTAIA. Instead, at most, Sharp's allegations suggest Thomson SA, a French corporation, participated in meetings in foreign jurisdictions regarding foreign commerce. (*See* FAC at ¶ 196). It does not plead *facts* that plausibly suggest Thomson SA set the prices of or engaged in anticompetitive conduct regarding CRTs imported into the U.S. market. Unable to plead such facts, Sharp attempts to bootstrap Thomson SA's alleged effect on the price of CRTs sold in the United States by arguing that because Thomson SA participated in a global conspiracy and that conspiracy had a trickle-down effect on the price of CRTs sold in the domestic market, Sharp may pursue Sherman Act claims against Thomson SA. Sharp's theory is not the law. *See In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 562 (D. Del. 2006) (dismissing claims based on foreign conduct and foreign harm and rejecting argument that "foreign conduct with a direct foreign effect should be combined with domestic conduct in an attempt to confer jurisdiction over foreign conduct under the rubric of a single claim.").

Stated differently, while Sharp asserts that it is only seeking damages for CRTs purchased in or imported into the United States, it attempts to state claims against Thomson SA based on Thomson SA's alleged participation in foreign meetings regarding foreign commerce. United States antitrust laws "do not regulate the competitive conditions of other nations' economies."

1 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582, (1986); *see also Den Norske*

2 *Stats Oljeselskap AS v. Heeremac VOF*, 241 F.3d 420, 425 (5th Cir. 2001) (rejecting allegation of

3 worldwide conspiracy as sufficient to satisfy jurisdictional requirements of FTAIA and stating that

4 "[t]he assumed existence of a single, unified, global conspiracy does not relieve [plaintiff] of its

5 burden" of alleging facts that show direct domestic effects of anticompetitive foreign conduct).

6 Because Sharp has failed to allege facts that plausibly suggest Thomson SA engaged in foreign

7 conduct that proximately caused any injury to Sharp in the United States, Sharp's antitrust claims

8 against it should be dismissed.

9 <u>**CONCLUSION**</u>

10 For the foregoing reasons, Sharp has failed to state viable claims against Thomson SA and

11 the FAC should be dismissed with prejudice.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  January 10, 2014

Respectfully submitted,

*/s/ Kathy L. Osborn*
Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA  94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

***Attorneys for Defendant, Thomson SA***