Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo
1700 Lincoln Street
Denver, CO 80203
Telephone: +1-303-607-3500
Facsimile: +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

***Attorneys for Defendant Thomson Consumer***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | No. 07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to: | **THOMSON CONSUMER'S NOTICE OF MOTION AND MOTION TO STRIKE WITH PREJUDICE TECH DATA'S FIRST AMENDED COMPLAINT** |
| *Tech Data Corp., et al. v. Hitachi, Ltd., et al., No. 13-cv-00157* | |
| | Date: March 7, 2014<br>Time: 10:00 a.m.<br>Judge: Hon. Samuel Conti<br>[[Proposed] Order Filed Concurrently Herewith] |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO STRIKE ...................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

ISSUES TO BE DECIDED ...........................................................................................................1

INTRODUCTION ...........................................................................................................................2

BACKGROUND .............................................................................................................................2

ARGUMENT ...................................................................................................................................5

I.      The Claims Against Thomson Consumer Should Be Stricken Because Fed. R. Civ. P. 15(a) Requires Tech Data to Obtain Leave of Court Before It May Amend Its Complaint to Add Claims Against Thomson Consumer..........................................................5

II.     Fed. R. Civ. P. 21 Requires Tech Data to Obtain Leave of Court Before It May Amend Its Complaint to Add Parties to This Action. ................................................7

III.    Because the Court Has Already Determined That It Would Be Unduly Prejudicial to Allow the DAPs to Amend Their Complaints to Plead Claims Against Thomson Consumer, Tech Data's Claims Against Thomson Consumer Should Be Stricken With Prejudice...........................................................................................................10

IV.     Even if the Court Does Not Strike the Unauthorized Claims Alleged in the FAC, Tech Data's Claims Against Thomson Consumer Should Be Dismissed for Failure to State Viable Claims in Accordance With Fed. R. Civ. P. 12(b)(6)....................................11

        A.      Tech Data's Claims Should Be Dismissed Because They Are Barred by Laches. ..............................................................................................................11

        B.      Tech Data's Claims Are Time-Barred and It Does Not Plead a Plausible Basis for Tolling the Statute of Limitations..................................................................13

                1.      Tech Data Has Failed to Plead Fraudulent Concealment..............................13

                2.      American Pipe Tolling Does Not Apply.......................................................14

                3.      Government Action Tolling Does Not Apply.................................................15

        C.      Tech Data Fails to Plead Plausible Claims Against the Thomson Defendants..........16

        D.      Tech Data's Claims Should Be Dismissed Because It Lacks Antitrust Standing. ............................................................................................................17

CONCLUSION ..............................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
  190 F.3d 1051 (9th Cir. 1999) ................................................................................ 18

*Am. Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974) ................................................................................ 14, 15

*Amarel v. Connell*,
  102 F.3d 1494 (9th Cir. 1996) ................................................................................ 17

*Ariz. State Bd. for Charter Schools v. U.S. Dept. of Ed.*,
  464 F.3d 1003 (9th Cir. 2006) ................................................................................ 15, 16

*Arneil v. Ramsey*,
  550 F.2d 774 (2d Cir. 1977) ................................................................................ 15

*Ashley v. Boyle's Famous Corned Beef Co.*,
  66 F.3d 164 (8th Cir. 1995) ................................................................................ 11

*Associated Gen. Contractors v. California State Council of Carpenters*,
  459 U.S. 519 (1983) ................................................................................ 17

*Atchison, Topeka & Santa Fe Ry. v. Hercules Inc.*,
  146 F.3d 1071 (9th Cir.1998) ................................................................................ 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................ 17

*Bhan v. NME Hosps., Inc.*,
  772 F.2d 1467 (9th Cir. 1985) ................................................................................ 18

*Boone v. Citigroup, Inc.*,
  416 F.3d 382 (5th Cir. 2005) ................................................................................ 15

*Cada v. Baxter Healthcare Corp.*,
  920 F.2d 447 (7th Cir. 1991) ................................................................................ 11

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ................................................................................ 19

*Conerly v. Westinghouse Elec. Corp.*,
  623 F.2d 117 (9th Cir. 1980) ................................................................................ 14

*Conmar Corp. v. Mitsui & Co. (USA) Inc.*,
  858 F.2d 499 (9th Cir. 1988) ................................................................................ 13, 14

*Crago, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*,
    No. 7-cv-05944 (N.D. Cal., filed Nov. 26, 2007) ................................................... 3

*Credit Suisse Secs. (USA) LLC v. Simmonds*,
    132 S.Ct. 1414 (2012) ........................................................................................... 16

*Crown, Cork & Seal Co., Inc. v. Parker*,
    462 U.S. 345 (1983) .............................................................................................. 15

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
    523 F.2d 389 (6th Cir. 1975) ................................................................................ 14

*Efaw v. Williams*,
    473 F.3d 1038 (9th Cir. 2007) ................................................................................ 9

*Ganz v. Chunghwa Picture Tubes, Ltd., et al.*,
    No. 08-01721 (N.D. Cal., filed March 31, 2008) ................................................... 3

*Hard Drive Productions v. John Doe*,
    11-cv-03826, 2012 U.S. Dist. LEXIS 130351 (N.D. Cal. Sept. 13, 2012) .......... 5, 6

*In re Cal. Title. Ins. Antitrust Litig.*,
    No. C 08-01341, 2009 WL 1458025 ..................................................................... 16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 07-5944-SC (M.D.Fla. Nov. 6, 2009) .............................................................. 3

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    738 F. Supp. 2d 1011 (N.D. Cal. 2010) ................................................................ 16

*In re Ditropan XP Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ................................................................ 18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) ................................................................ 17

*In re High Fructose Corn Syrup Antitrust Litig.*,
    293 F. Supp. 2d 854 (N.D. Ill. 2003) .................................................................... 13

*In re Optical Disk Drive Antitrust Litig.*,
    No. 3:10-md-2143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ......................... 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, MDL Dkt. No. 4867 (N.D. Cal. Feb. 23, 2012) ........................ 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................................ 16

*Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*,
    518 F.2d 913 (9th Cir. 1975) ................................................................................ 11

*International Brotherhood of Teamsters v. American Fed. of Labor*,
    32 F.R.D. 441 (E.D. Mich. 1963) ................................................................................... 7, 8

*Jackson v. Axton*,
    25 F.3d 884 (9th Cir. 1994) ................................................................................................ 11

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ........................................................................................ 11, 12

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 ............................................................................................................... 16, 18

*Kindt v. Matsushita Electric Indus. Co.*,
    No. 07-cv-10322 (S.D.N.Y., filed Nov. 13, 2007) ............................................................. 3

*Madery v. International Sound Technicians*,
    79 F.R.D. 154 (C.D. Cal. 1978) .......................................................................................... 7

*Madison v. IBP, Inc.*,
    330 F.3d 1051 (8th Cir. 2003) ........................................................................................... 11

*Matthews Metals Products, Inc. v. RBM Precision Metal Products, Inc.*,
    186 F.R.D. 581 (N.D. Cal. 1999) ......................................................................................... 8

*McCune v. Alioto Fish Company*,
    597 F.2d 1244 (9th Cir. 1979) ........................................................................................... 12

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999) ........................................................................................... 13

*Murray v. Archambo*,
    132 F.3d 609 (10th Cir. 1998) ............................................................................................. 6

*Pacific Gas & Electric Co. v. Fireboard Products, Inc.*,
    116 F. Supp. 377 (N.D. Cal. 1953) ............................................................................ 7, 8, 10

*Parker v. Shaw & Lines, LLC*,
    2010 WL 1640963 (D. Ariz. Apr. 20, 2010) ...................................................................... 9

*Radio & TV Equip., Inc. v. Chunghwa Picture Tubes, Ltd., et al.*,
    No. 08-00542 (D.N.J., filed Jan. 28, 2008) ........................................................................ 3

*Rutledge v. Boston Woven Hose & Rubber Co.*,
    576 F.2d 248 (9th Cir. 1978) ............................................................................................. 14

*Santa Maria v. Pac. Bell*,
    202 F.3d 1170 (9th Cir. 2000) ........................................................................................... 14

*Sapiro v. Encompass Ins.*,
    221 F.R.D. 513 (N.D. Cal. 2004) ..................................................................................... 6, 7

*Scognamillo v. Credit Suisse First Boston, LLC*,
  587 F. Supp. 2d 1149 (N.D. Cal. 2008) ............................................................ 10

*Sound Invs. Corp. v. Chunghwa Picture Tubes, Ltd., et al.*,
  No. 08-00543 (D.N.J., filed Jan. 28, 2008) .......................................................... 3

*Stack, et al. v. Chunghwa Picture Tubes, Ltd., et al.*,
  No. 08-01319 (N.D. Cal., filed March 7, 2008) .................................................... 3

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
  782 F. Supp. 2d 1059 (E.D. Cal. 2011) .............................................................. 18

*Taa v. Chase Home Finance LLC*,
  11-cv-0554, 2011 WL 4985379 (N.D. Cal. Oct. 19, 2011) ......................... 6, 7, 19

*U.S. for Use and Benefit of Tucker v. Thomas Howell Kiewit (USA) Inc.*,
  149 F.R.D. 125 (E.D. Va. 1993) ............................................................................ 7

*Vaughn v. Teledyne, Inc.*,
  628 F.2d 1214 (9th Cir. 1980) ............................................................................ 13

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) .............................................................................. 13

*Wilkins-Jones v. City of Alameda*,
  2012 WL 3116025 (N.D. Cal. July 31, 2012) ...................................................... 9

*Wyser-Pratte Mgt. Co. v. Telxon Corp.*,
  413 F.3d 553 (6th Cir. 2005) .............................................................................. 15

**FEDERAL STATUTES**

15 U.S.C. § 16(i) ........................................................................................................ 15

**RULES**

Fed. R. Civ. P. 9(b) .............................................................................................. 13, 14

Fed. R. Civ. P. 12(b)(6) .................................................................................... passim

Fed. R. Civ. P. 15(a) ........................................................................................ passim

Fed. R. Civ. P. 21 ................................................................... 1, 2, 7, 8, 10, 19

**OTHER AUTHORITIES**

6 Wright & Miller, *Federal Prac. & Proc.* § 1479 ...................................................... 8

## NOTICE OF MOTION AND MOTION TO STRIKE

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 7, 2014 at 10:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Samuel P. Conti, U.S. District Court Judge, U.S. District Court for the Northern District of California, Courtroom No. 1, 17th Fl., 450 Golden Gate Avenue, San Francisco, California 94102, the moving Defendant listed on the signature pages below will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 15(a)(1), for an Order striking with prejudice the claims alleged by Plaintiffs Tech Data Corporation and Tech Data Product Management, Inc. ("Tech Data") against the moving Defendant in Tech Data's First Amended Complaint.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rules of Civil Procedure 15(a) and 21, Defendant Thomson Consumer Electronics, Inc. ("Thomson Consumer") respectfully moves to strike with prejudice the claims asserted against it by Tech Data in the First Amended Complaint ("FAC") because Tech Data failed to seek leave of Court to join Thomson Consumer as a party and add claims against it before filing the FAC and granting Tech Data such leave would cause Thomson Consumer undue prejudice.  In the alternative, Thomson Consumer moves to dismiss the FAC in accordance with Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## ISSUES TO BE DECIDED

1.      Whether the claims against Thomson Consumer alleged by Tech Data in its FAC should be stricken because, under Fed. R. Civ. P. 15(a), Tech Data was required to obtain leave of court before it could add Thomson Consumer as a party and assert claims against it?

2.      Whether the claims against Thomson Consumer alleged by Tech Data in its FAC should be stricken because, under Fed. R. Civ. P. 21, Tech Data was required to obtain leave of court before it could join Thomson Consumer as a party and add claims against it?

3.　　　Whether, in light of the Court's September 26, 2013 Order denying the DAPs' Motion for Leave to Amend because such relief would cause Thomson Consumer undue prejudice, the claims asserted against Thomson Consumer in Tech Data's FAC should be stricken with prejudice?

4.　　　Whether, in the event the Court is not inclined to strike the claims against Thomson Consumer in Tech Data's FAC, those claims should be dismissed in accordance with Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted?

## INTRODUCTION

Many of the cases in this matter have been pending since 2007. Since this action began, millions of pages of documents have been produced and the parties have conducted nearly 100 depositions. Now, almost six years later, Tech Data has filed, without seeking leave of court, an amended complaint that attempts to add Thomson Consumer as a party. Tech Data's failure to seek leave of court before filing its FAC violates Federal Rules of Civil Procedure 15(a) and 21. Moreover, Tech Data's undue delay in attempting to bring Thomson Consumer into this litigation has put it at an unfair, prejudicial disadvantage. Accordingly, Thomson Consumer respectfully requests that the Court strike with prejudice the allegations and claims asserted by Tech Data against Thomson Consumer in the FAC.

## BACKGROUND

Thomson Consumer (n/k/a Technicolor USA, Inc.) is a U.S. corporation with its principal place of business in Indianapolis, Indiana. (FAC [Dkt. No. 1911] at ¶ 63.) Thomson Consumer is a wholly owned subsidiary of Thomson SA,[1] a French corporation with its principal place of business in Issy-Les-Moulineaux, France. (*Id.* at ¶¶ 62-63.) Until 2004, Thomson Consumer manufactured CRTs for sale in the United States and abroad and for incorporation into CRT televisions manufactured by Thomson Consumer and other Thomson entities. (*Id.*) In 2004, all of Thomson Consumer's CRT manufacturing operations in the United States were closed. (*Id.* at ¶ 63.) In June

---

[1] Thomson Consumer and Thomson SA are referred to collectively herein as the "Thomson Defendants."

1    of 2005, Thomson SA sold its CRT business, including that of Thomson Consumer, to Videocon

2    Industries, Ltd. ("Videocon").  (*Id.* at ¶¶ 62-63.)

3         On November 13, 2007, the first in a series of putative class action lawsuits concerning an

4    alleged antitrust conspiracy in the CRT market was filed.  *See Kindt v. Matsushita Electric Indus.*

5    *Co.*, No. 07-cv-10322 (S.D.N.Y., filed Nov. 13, 2007).  Less than two weeks later, a second

6    putative class action was filed.  *See Crago, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 7-cv-

7    05944 (N.D. Cal., filed Nov. 26, 2007).  As Tech Data alleges, these complaints were prompted by

8    the announcement and reporting of "investigations into illegal price-fixing of CRTs" by government

9    authorities around the world, including the U.S. Department of Justice and European, Japanese, and

10   South Korean competition commissions.  (*See* FAC at ¶¶ 176-184, 187) (describing public

11   announcements by global competition authorities regarding their investigations into alleged price-

12   fixing in CRT industry).  The commencement of these investigations and the attendant litigation

13   resulted in the termination of any alleged conspiracy no later than November 2007.  In early 2008,

14   four separate plaintiffs filed putative class actions against Thomson SA.[2]  No lawsuits were filed

15   against Thomson Consumer.  On November 6, 2009, the IPPs in this action served a subpoena on

16   Tech Data that sought the production of documents in Tech Data's possession that were relevant to

17   the alleged CRT price-fixing conspiracy.  (*See* Subpoena to Produce Documents, Information, or

18   Objects or to Permit Inspection of Premises in a Civil Action, *In re Cathode Ray Tube (CRT)*

19   *Antitrust Litig.*, No. 07-5944-SC (M.D.Fla. Nov. 6, 2009, attached hereto as **Ex. A**.)

20        Over five years after the first complaint was filed, on December 11, 2012, Tech Data filed a

21   Complaint ("Original Complaint") in the Middle District of Florida, *Tech Data Corporation, et al.*

22   *v. Hitachi, Ltd., et al.*, Case No. 8:12-cv-02795, which alleged causes of action similar to those

23

---

24   [2]  As early as January 2008, Thomson SA was named as a defendant in four of the original
     complaints.  *See Radio & TV Equip., Inc. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-00542
25   (D.N.J., filed Jan. 28, 2008); *Sound Invs. Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 08-
     00543 (D.N.J., filed Jan. 28, 2008); *Stack, et al. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-
26   01319 (N.D. Cal., filed March 7, 2008); *Ganz v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-
     01721 (N.D. Cal., filed March 31, 2008).  Each of those original complaints alleged that Thomson
27   SA manufactured, sold, and distributed CRTs and/or CRT Products throughout the U.S. and was
     involved in a global conspiracy with other named defendants.  *See Radio & TV Equip., Inc.* at ¶¶ 27,
     69-79; *Sound Invs. Corp.* at ¶¶ 27, 69-79; *Ganz* at ¶¶ 22, 48-72; *Stack, et al.* at ¶¶ 33, 62-86.

28

1    alleged by the other Direct Action Plaintiffs in this action against numerous Defendants.  Critically,

2    however, Tech Data's Original Complaint did not plead claims against the Thomson Defendants.

3    (*See id.*)  On January 4, 2013, the United States Judicial Panel on Multidistrict Litigation transferred

4    Tech Data's Original Complaint to this Court for consolidated pretrial proceedings.  (*See* Jan. 4,

5    2013 Order [Dkt. No. 1518].)   On February 13, 2013, Tech Data entered into a Stipulation and

6    Order Regarding the Complaint in the Tech Data Action [Dkt. No. 1568] with the Defendants it had

7    sued in its Original Complaint.  The Thomson Defendants were not parties to that agreement

8    because they had not been named in the Original Complaint.  Under its terms, Tech Data and those

9    Defendants agreed that:  (1) the Defendants were deemed served with the Original Complaint as of

10   February 13, 2013; (2) the Defendants would not be required to answer or otherwise respond to

11   Tech Data's Original Complaint until the Court ruled on motions to dismiss the Defendants filed on

12   August 17, 2012 against complaints filed by numerous Direct Action Plaintiffs ("DAPs") other than

13   Tech Data; and (3) pending resolution of the motions to dismiss, Tech Data and the Defendants

14   would set a reasonable deadline for Defendants to answer or otherwise respond to Tech Data's

15   Original Complaint.  (Stip. Regarding Tech Data Complaint [Dkt. No. 1568] at ¶¶ 1-6.)   The

16   Special Master entered an Order approving the Stipulation on February 14, 2013 [Dkt. No. 1570].

17   On August 21, 2013, the Court issued an Order Granting in Part and Denying in Part Defendants'

18   Motion to Dismiss the DAPs' Complaints ("Aug. 21, 2013 Order") [Dkt. No. 1856].  The August

19   21, 2013 Order also granted these DAPs leave to amend their complaints with respect to those

20   claims the August 21, 2013 Order dismissed without prejudice.  (*Id*. at 36-37.)   However, the

21   August 21, 2013 Order did not grant any of the DAPs leave to amend to assert claims against any

22   new defendants.  (*Id*.)

23         On March 27, 2013, these same DAPs (not including Tech Data) filed a Motion for Leave to

24   File Amended Complaints ("DAPs' Motion to Amend") [Dkt. No. 1609] in which they sought, *inter*

25   *alia*, to add the Thomson Defendants to their complaints and include certain other factual

26   allegations.  On September 26, 2013, the Court entered an Order denying the DAPs' Motion to

27   Amend to the extent it sought leave to add the Thomson Defendants as parties to the case.  (*See*

28   Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].)  The Court explained that "[d]iscovery in this case has

THOMSON CONSUMER'S NOTICE OF MOTION
AND MOTION TO STRIKE WITH PREJUDICE                    4                    No. 07-5944-SC; MDL No. 1917
TECH DATA'S FIRST AMENDED COMPLAINT

1    proceeded apace," and requiring the Thomson Defendants to enter the litigation now would put

2    them at an unfair, prejudicial disadvantage.  (*Id.* at 5.)  "[T]he DAPs had ample time to add

3    Thomson to their complaints without delay or prejudice, but they did not" and "to reward delay with

4    amendment in this case is not justifiable."  (*Id.* at 5-6.)

5        On September 9, 2013, *without first seeking leave of this Court*, Tech Data filed its FAC

6    [Dkt. 1911] which, *inter alia*, attempts to add numerous claims against the Thomson Defendants

7    under Section 1 of the Sherman Act and state laws.  As such, now, almost six years after this action

8    began and over eight years after Thomson Consumer exited the CRT business, Tech Data is

9    attempting to join Thomson Consumer to this lawsuit and bring claims against it.  The Court should

10   strike the allegations and claims asserted by Tech Data against Thomson Consumer in the FAC

11   because, pursuant to Fed. R. Civ. P. 15(a), Tech Data may not amend its Original Complaint to join

12   Thomson Consumer and add claims against it without first obtaining leave of court.  Therefore,

13   Tech Data's amended pleading filed without leave of court "is a nullity and without legal effect."

14   *Hard Drive Productions v. John Doe*, 11-cv-03826, 2012 U.S. Dist. LEXIS 130351 *8 (N.D. Cal.

15   Sept. 13, 2012).

16       In the alternative, in accordance with Rule 12(b)(6), the Court should dismiss the claims

17   against Thomson Consumer alleged in the FAC because:  (1) Tech Data fails to plead plausible

18   claims against Thomson Consumer; (2) Tech Data's claims are time-barred; (3) Tech Data has

19   failed to plead facts that establish it is entitled to toll the statutes of limitation and its reliance on any

20   tolling doctrines is barred by laches; and (4) it lacks standing to pursue its indirect-purchaser claims

21   because it has failed to plead facts that establish it qualifies for the ownership and control exception

22   to *Illinois Brick*.  Accordingly, Tech Data also fails to state viable claims against Thomson

23   Consumer.

24                                    **ARGUMENT**

25   **I.    The Claims Against Thomson Consumer Should Be Stricken Because Fed. R. Civ. P.**
     **      15(a) Requires Tech Data to Obtain Leave of Court Before It May Amend Its**
26   **      Complaint to Add Claims Against Thomson Consumer.**

27       Federal Rule of Civil Procedure 15(a) provides in relevant part:

28

(1) A party may amend its pleading once as a matter of course within:

    (A)    21 days after serving it, or

    (B)    if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. . . .

Fed. R. Civ. P. 15(a)(1) & (2).  "Only an amended complaint that is properly filed pursuant to the requirements of Rule 15 can supersede the original."  *Taa v. Chase Home Finance LLC,* 11-cv-0554, 2011 WL 4985379 *1 (N.D. Cal. Oct. 19, 2011) (citing *Murray v. Archambo*, 132 F.3d 609, 612 (10th Cir. 1998)).  "If a party cannot amend a pleading as of right, and files it without leave of court or consent of the opposing party, the amended pleading is a nullity and without legal effect." *Hard Drive Productions,* 2012 U.S. Dist. LEXIS 130351 *8.  Accordingly, "a party's failure to comply with the requirements of Rule 15(a) will prompt courts to strike amended pleadings – or to ignore them outright."  *Sapiro v. Encompass Ins.*, 221 F.R.D. 513, 517 (N.D. Cal. 2004); *see also Taa,* 2011 WL 4985379 *5 (striking allegations in amended complaints filed in violation of Rule 15 without leave of court).

      Application of these principles here mandates finding that Tech Data was required to obtain leave of court before it could file an amended complaint adding claims against Thomson Consumer. Tech Data did not obtain consent from Thomson Consumer before it filed the FAC, so it was not entitled to amend its Original Complaint pursuant to Fed. R. Civ. P. 15(a)(2).  In addition, Tech Data could not amend its Original Complaint as a matter of course because the FAC was not filed within the time periods specified in Fed. R. Civ. P. 15(a)(1).  First, as noted above, pursuant to the Stipulation and Order Regarding the Complaint in the Tech Data Action [Dkt. No. 1570], the Original Complaint was served on the Defendants on February 13, 2013, but Tech Data did not file the FAC until September 9, 2013 [Dkt. No. 1911].  Thus, Tech Data filed the FAC more than 21 days after the Original Complaint was deemed served and was not entitled to file the FAC as a matter of course pursuant to Rule 15(a)(1)(A).  *See* Fed. R. Civ. P. 15(a)(1)(A).  Second, Tech Data was not entitled to file the FAC as a matter of course pursuant to Rule 15(a)(1)(B) because when it

was filed, no Defendant had filed a responsive pleading or motion under Rule 12(b), (e), or (f) directed at the Original Complaint.  Because the FAC was not filed within 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), Tech Data was not entitled to file it as a matter of course.  *See* Fed. R. Civ. P. 15(a)(1)(A).

In accord with the plain terms of Rule 15(a)(1), Tech Data was not entitled to file the FAC against Thomson Consumer on September 9, 2013.  Instead, before it may attempt to amend its Original Complaint to add claims against Thomson Consumer six years after this action began, Tech Data must first obtain leave of court.  Tech Data violated Rule 15(a) and the Court should strike the allegations and claims against Thomson Consumer contained in the FAC. *Sapiro v. Encompass Ins.,* 221 F.R.D. 513, 517 (N.D. Cal. 2004); *Taa*, 2011 WL 4985379 *5 (striking allegations in amended complaints filed in violation of Rule 15 without leave of court).

## II.     Fed. R. Civ. P. 21 Requires Tech Data to Obtain Leave of Court Before It May Amend Its Complaint to Add Parties to This Action.

Even if Tech Data had filed the FAC within the time periods for amending as of course specified in Rule 15(a) – it did not – under Fed. R. Civ. P. 21, Tech Data would still have been required to obtain leave of court before it could add Thomson Consumer as a new party.  Federal Rule of Civil Procedure 21 provides in relevant part that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  Numerous courts, including those in this district, have held that any attempt to amend the pleadings to add or drop a party is governed by Rule 21.  Thus, a party who seeks to file an amended complaint altering the parties must first obtain leave of court as prescribed in Rule 21, even if the amended pleading is filed within the time period allowed for an amendment as a matter of course under Rule 15(a).  *See Pacific Gas & Electric Co. v. Fireboard Products, Inc.,* 116 F. Supp. 377, 382-3 (N.D. Cal. 1953); *Madery v. International Sound Technicians*, 79 F.R.D. 154, 156 (C.D. Cal. 1978); *U.S. for Use and Benefit of Tucker v. Thomas Howell Kiewit (USA) Inc*., 149 F.R.D. 125 (E.D. Va. 1993); *International Brotherhood of Teamsters v. American Fed. of Labor*, 32 F.R.D. 441, 442 (E.D. Mich. 1963).  As the *Pacific Gas & Electric* court explained when analyzing the relationship between Rule 21 and a prior version of Rule 15(a):

> An amendment to a complaint which adds or drops a party requires an order of the court as specified in Rule 21, F.R.C.P., regardless of whether it precedes or follows the first responsive pleading of any defendant.  Rule 15(a), F.R.C.P., refers, in general terms, to the broad subject of changes in the pleadings by amendment.  Rule 21, F.R.C.P., refers, in specific terms, to changes in the parties to the action, by adding or dropping some of such parties.  Any conflict or ambiguity which results from a comparison of the two rules must be resolved in favor of the specific and against the general.  Thus, when a proposed amendment to a complaint seeks to effect a change in the parties to the action, Rule 21, F.R.C.P., controls and, to that extent, limits Rule 15(a), F.R.C.P.

*Pacific Gas & Electric,* 116 F. Supp. at 382-3; *International Brotherhood of Teamsters*, 32 F.R.D. at 442.

Some courts and commentators argue, however, that Rule 15(a) should control over Rule 21. S*ee Matthews Metals Products, Inc. v. RBM Precision Metal Products, Inc.,* 186 F.R.D. 581, 583 (N.D. Cal. 1999) (finding a prior version of Rule 15(a) controls over Rule 21); 6 Wright & Miller, *Federal Prac. & Proc.* § 1479.  They assert that when a party files an amended complaint that adds other parties within the time period set forth in Rule 15(a)(1), courts "should not be bothered with passing on amendments to the pleadings" since at such an early stage in the proceedings, "the other parties will probably not be prejudiced by any modification."  6 Wright & Miller, *Federal Prac. & Proc.* § 1479.

While this reasoning may apply in certain, limited circumstances, it has no application here.  As the Court found in its September 26, 2013 Order denying the DAPs' Motion to Amend, Thomson Consumer would be substantially prejudiced if it was forced to join this action nearly six years after it commenced and four years after discovery began.  (*See* Sept. 26, 2013 Order at 5-6.)  Tech Data's attempt to add Thomson Consumer to this action would cause it to suffer the same severe prejudice.  Because Thomson Consumer has not participated in this litigation to date, to "catch up" Thomson Consumer would need to:  (1) identify, locate, contact, and interview former Thomson Consumer personnel who may have knowledge regarding Tech Data's claims; (2) collect, review, and produce documents responsive to Tech Data's discovery requests; (3) obtain, search, review, analyze, and possibly translate the millions of pages of documents previously produced in these actions for documents related to Thomson Consumer; (4) serve additional document requests, interrogatories, and requests for admission on Tech Data; (5) meet and confer regarding Tech

1    Data's discovery responses and file any necessary motions to compel; (6) obtain and review the

2    transcripts of the nearly 100 depositions that have already been conducted in this matter; (7) identify

3    witnesses and notice depositions, including depositions of some of the dozens of witnesses who

4    were deposed before Tech Data attempted to add Thomson Consumer as a party; and (8) engage

5    experts and prepare expert reports.

6          Mounting a proper defense would be particularly onerous for Thomson Consumer because,

7    as Tech Data has admitted, the Thomson Defendants sold their CRT business in 2005, so nearly all,

8    if not all, relevant personnel have long since left Thompson Consumer.  (*See* FAC at ¶ 62.)  In

9    similar circumstances, courts have found that such difficulties would so prejudice a defendant that

10   leave to amend should be denied.  *See Wilkins-Jones v. City of Alameda*, 2012 WL 3116025 at *8-9

11   (N.D. Cal. July 31, 2012) (denying motion for leave to amend the complaint where, because of

12   passage of years, much of the evidence required to mount a defense would be difficult to obtain);

13   *see also Parker v. Shaw & Lines, LLC*, 2010 WL 1640963, at *2 (D. Ariz. Apr. 20, 2010) ("It is

14   axiomatic that, as time passes, it becomes harder for Defendants to defend the action as witnesses

15   become unavailable and memories fade."); *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007).

16   Moreover, even if Thomson Consumer were able to take all of the steps necessary to "catch up" and

17   prepare a proper defense, requiring it to do so in a period of months, as opposed to the years that

18   have been afforded to the DAPs and the existing Defendants would be fundamentally unfair and

19   severely prejudicial.  Accordingly, Thomson Consumer would be unduly prejudiced if the Court

20   permitted Tech Data to amend its complaint to attempt to state claims against Thomson Consumer.

21         And just like the other DAPs, there is no excuse for Tech Data's failure to attempt to add the

22   Thomson Defendants until September 9, 2013 – Tech Data "had ample time to add Thomson to

23   their complaint without delay or prejudice, but they did not."  (Sept. 26, 2013 Order at 5.)  As

24   explained above, the alleged conspiracy among CRT manufacturers has been extensively reported

25   in the press and otherwise since November 2007.  By November 2007, Tech Data had ample

26   knowledge of the facts giving rise to its claims such that it should have diligently investigated

27   whether Thomson Consumer may have been involved in the alleged conspiracy. Inexplicably,

28   however, Tech Data waited almost six more years before filing claims against Thomson Consumer.

1    Thus, it is beyond dispute that Tech Data should have known of its alleged claims against Thomson

2    Consumer years before it filed the FAC.   Tech Data's amended complaint is inexcusably late.  *See*

3    *Scognamillo v. Credit Suisse First Boston, LLC*, 587 F. Supp. 2d 1149, 1157 (N.D. Cal. 2008).

4    Therefore, even if Tech Data had filed its amended complaint within the time period set forth in

5    Rule 15(a) – it did not – the Court should find that pursuant to Rule 21, Tech Data was required to

6    obtain leave of court before it could amend its complaint to add additional parties.  *See Pacific Gas*

7    *& Electric,* 116 F. Supp. at 382-3.

8    **III.    Because the Court Has Already Determined That It Would Be Unduly Prejudicial to
         Allow the DAPs to Amend Their Complaints to Plead Claims Against Thomson**

9         **Consumer, Tech Data's Claims Against Thomson Consumer Should Be Stricken With
          Prejudice.**

10

11        As explained above, on March 27, 2013, numerous DAPs (not including Tech Data) filed

12   the DAPs' Motion to Amend in which they sought leave to file amended complaints that, *inter alia*,

13   would have added claims against the Thomson Defendants.  On September 26, 2013, the Court

14   entered an Order denying the DAPs' Motion to Amend to the extent it sought leave to add the

15   Thomson Defendants as parties to the case.  (*See* Sept. 26, 2013 Order at 4-6.)  The Court explained

16   that "[d]iscovery in this case has proceeded apace," and requiring the Thomson Defendants to enter

17   the litigation now would put it at an unfair, prejudicial disadvantage.  (*Id*. at 5.)

18        Any attempt by Tech Data to now file a motion seeking leave to file an amended complaint

19   that adds claims against Thomson Consumer would fail for the same reasons.  As explained above,

20   allowing Tech Data to add claims against Thomson Consumer would cause it to suffer the same

21   severe, undue prejudice that the other DAPs would have imposed on Thomson Consumer had they

22   been permitted to proceed with their inexcusably delayed claims.  (*See supra*, at 9-10; Sept. 26,

23   2013 Order at 5-6.)  Indeed, because any Tech Data motion for leave to amend would be filed

24   nearly a year later than the DAPs' Motion to Amend was filed, it would be even more inexcusably

25   late and granting Tech Data leave to amend would cause Thomson Consumer to suffer even greater

26   prejudice.  In short, because the Court has already determined that Thomson Consumer would be

27   severely prejudiced by attempts to add it to this litigation, it is unnecessary for the Court to entertain

28

an even more tardy motion for leave to amend from Tech Data now.  Accordingly, Thomson Consumer respectfully requests that the Court enter an Order striking the allegations in the FAC against Thomson Consumer with prejudice.

**IV.   Even if the Court Does Not Strike the Unauthorized Claims Alleged in the FAC, Tech Data's Claims Against Thomson Consumer Should Be Dismissed for Failure to State Viable Claims in Accordance With Fed. R. Civ. P. 12(b)(6).**

Not only are Tech Data's claims against Thomson Consumer in the FAC unauthorized and inexcusably late, Tech Data fails to plead viable claims.  Thus, if the Court is not inclined to strike the claims against Thomson Consumer in the FAC, it should dismiss them for failure to state a claim in accordance with Fed. R. Civ. P. 12(b)(6).

**A.     Tech Data's Claims Should Be Dismissed Because They Are Barred by Laches.**

Where, as here, a plaintiff's antitrust claims are only timely if the statutes of limitation are tolled, the plaintiff's reliance on tolling may be barred by laches.  *See Cada v. Baxter Healthcare Corp.,* 920 F.2d 447, 453 (7th Cir. 1991) (rejecting tolling where plaintiff failed to file suit within a reasonable time); *Ashley v. Boyle's Famous Corned Beef Co.,* 66 F.3d 164, 170 (8th Cir. 1995) (en banc), *abrogation on other grounds recognized in Madison v. IBP, Inc.,* 330 F.3d 1051, 1056 (8th Cir. 2003); *see also Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.,* 518 F.2d 913, 926-27 (9th Cir. 1975) (holding that plaintiff's ability to obtain equitable relief in context of Clayton Act is "circumscribed" by the doctrine of laches because Congress did not intend "to permit potential plaintiffs to sleep through their competitors' antitrust violations and then sue many years later.").  Because its unjustified delay in filing suit has caused Thomson Consumer irreparable prejudice, Tech Data's reliance on tolling doctrines is barred by laches.

The doctrine of laches operates to bar a plaintiff's claims when the plaintiff has (1) unreasonably delayed pressing its rights and (2) thereby caused prejudice to the defendant.  *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 838 (9th Cir. 2002) (explaining that "laches penalizes inexcusable dilatory behavior" by the plaintiff); *Jackson v. Axton,* 25 F.3d 884, 886 (9th Cir. 1994) ("Laches is based on the plaintiff's delay in beginning litigation . . . .")  "A determination of whether a party exercised unreasonable delay in filing suit consists of two steps.

1
2
3

First, we assess the length of delay, which is measured from the time the plaintiff knew or should have known about its potential cause of action.  Second, we decide whether the plaintiff's delay was reasonable."  *Jarrow Formulas,* 304 F.3d at 838 (internal citations omitted).

4
5
6
7
8

Despite the fact that it possessed knowledge of its potential claims by no later than November 2007 when the first actions in these proceedings were filed, Tech Data slept on its rights.  It waited until September 9, 2013 – nearly six years after the first claims were filed in this action – to first assert (without obtaining leave of this Court) its claims against Thomson Consumer.  Tech Data pleads no facts in the FAC that justify this inexcusable delay.

9
10
11
12
13
14
15

Thomson Consumer has been seriously prejudiced by this delay.  As the Court stated in its September 26, 2013 Order denying the DAPs' Motion to Amend to add the Thomson Defendants as parties to the case, "[d]iscovery in this case has proceeded apace" and requiring the Thomson Defendants to enter the litigation now would put them at an unfair, prejudicial disadvantage.  (*See* Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].)  "[T]he DAPs had ample time to add Thomson to their complaints without delay or prejudice, but they did not" and "to reward delay with amendment in this case is not justifiable."  (*Id*. at 5-6.)

16
17
18
19
20
21
22

The same reasoning applies to Tech Data's claims against Thomson Consumer.  While Tech Data slept on its rights, evidence degraded, memories faded, and information and personnel involved in Thomson Consumer's CRT operations – an industry which it exited in 2005 – became even more difficult, if not impossible, to locate.  At the same time, discovery in this action "proceeded apace" for years.  By waiting until September of 2013 to first assert its claims, Tech Data has put Thomson Consumer at a severe disadvantage.  (*See supra* at 9-11 (describing severe prejudice to Thomson Defendants caused by Tech Data's unjustified delay).)

23
24
25
26

Accordingly, Tech Data's tardy claims are barred by laches and should be dismissed with prejudice.  *See McCune v. Alioto Fish Company*, 597 F.2d 1244, 1250 (9th Cir. 1979) (affirming trial court's dismissal of complaint on basis of laches where plaintiff's three-year delay in bringing claims made it difficult for defendant to obtain evidence needed to defend claims).

27
28

**B.     Tech Data's Claims Are Time-Barred and It Does Not Plead a Plausible Basis for Tolling the Statute of Limitations.**

Where it is apparent on the face of the complaint that the applicable statutes of limitations have expired, claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).   Here, the statutes of limitation on Tech Data's claims against Thomson Consumer began to run no later than July 2005, when Thomson SA sold its CRT business to Videocon.   (FAC at ¶ 62-63).   Because Thomson Consumer exited the CRT industry in July 2005, the statutes of limitation on Tech Data's claims began to run, at the latest, at that time.  *See Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999) (holding plaintiff's antitrust claims time-barred because statute of limitations began to run when defendant sold dairy business and thereby withdrew from alleged conspiracy); *see also In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854, 860 (N.D. Ill. 2003) (finding claims barred because statute of limitation began to run against individuals upon their resignation of employment from company).   Accordingly, the statutes of limitation that apply to Tech Data's claims expired several years before Tech Data filed its unauthorized FAC on September 9, 2013.

Tech Data has also failed to allege a plausible basis for tolling the statutes of limitation that apply to its claims against Thomson Consumer.  Where, as here, the applicable statutes of limitation have clearly expired, "the plaintiff has the burden of proving facts that would toll the statute[s]."  *Vaughn v. Teledyne, Inc.,* 628 F.2d 1214, 1218 (9th Cir. 1980).   To survive a motion to dismiss, the complaint must "specifically identify every basis [the plaintiff] intends to rely on to establish the tolling of statute of limitations."  *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 07-md-1827, MDL Dkt. No. 4867 at 3 (N.D. Cal. Feb. 23, 2012) (granting motion to dismiss where plaintiff failed to plead specific facts that established statute of limitations was tolled).

*1.     Tech Data Has Failed to Plead Fraudulent Concealment.*

To adequately plead that a statute of limitations was tolled by fraudulent concealment, a plaintiff must satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b).  *Conmar Corp. v. Mitsui & Co. (USA) Inc.,* 858 F.2d 499, 502 (9th Cir. 1988).  Tech Data "must do more than show

1    that it was ignorant of its cause of action . . . it must plead facts showing that [Thomson SA]

2    affirmatively misled it." *Id.* In other words, Tech Data must plead affirmative conduct by Thomson

3    Consumer to mislead Tech Data "above and beyond the wrongdoing upon which [Tech Data's]

4    claim is filed." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000). "Conclusory

5    statements are not enough. [Tech Data] must plead with particularity the circumstances of the

6    concealment and the facts supporting its due diligence." *Conmar Corp.,* 858 F.2d at 502.

7         Tech Data has failed to satisfy these standards. Tech Data does not allege *any* specific acts

8    by Thomson Consumer after July 2005 that could plausibly suggest it affirmatively concealed its

9    alleged participation in the conspiracy after this date. Tech Data has also failed to plead specific

10   facts that suggest it diligently attempted to discover the facts underlying its claims. Instead, Tech

11   Data conclusorily asserts that it "could not have discovered the alleged contract, conspiracy, or

12   combination at an earlier date by the exercise of reasonable diligence". (FAC at ¶ 228.)  Courts

13   have uniformly held that such conclusory allegations are inadequate and do not toll the applicable

14   statutes of limitation. *See Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980)

15   (rejecting fraudulent concealment where plaintiff failed to "allege any facts . . . tending to excuse

16   his failure to discover [defendant's] misconduct"); *Rutledge v. Boston Woven Hose & Rubber Co.*,

17   576 F.2d 248, 250 (9th Cir. 1978) (rejecting fraudulent concealment where plaintiff failed to "state

18   facts showing his due diligence in trying to uncover the facts"); *see also Dayco Corp. v. Goodyear*

19   *Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) (rejecting fraudulent concealment argument

20   and noting "mere allegation of due diligence without asserting what steps were taken is

21   insufficient").  Therefore, Tech Data has failed to plead fraudulent concealment by Thomson

22   Consumer with the particularity required by Rule 9(b) and Ninth Circuit precedent, and its claims

23   are barred by the applicable statutes of limitation. *See Conmar Corp.,* 858 F.2d at 502.

24              **2.        *American Pipe* Tolling Does Not Apply.**

25        *American Pipe* tolling does not save Tech Data's claims against Thomson Consumer. First,

26   Thomson Consumer was not and has never been a party to any class action. While the filing of a

27   class action may toll the statute of limitations for claims by putative class members against

28   defendants *named* in the class action, *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974), it

does not toll the statute of limitations as to claims against a party who is not named as a defendant. *See, e.g., Boone v. Citigroup, Inc.*, 416 F.3d 382, 392 (5th Cir. 2005) (noting that "it is facially obvious" that the pendency of a class action does not toll the statute of limitations as to defendants not named in the class action); *Wyser-Pratte Mgt. Co. v. Telxon Corp.*, 413 F.3d 553, 567-68 (6th Cir. 2005) (holding that class action tolling does not apply against a defendant who was not named in the class action); *Arneil v. Ramsey*, 550 F.2d 774, 782 n.10 (2d Cir. 1977) (same), *rev'd on other grounds by Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983). Here, Thomson Consumer was not and has never been a party to the class action proceedings. Accordingly, *American Pipe* tolling does not save Sharp's time-barred claims against Thomson Consumer.[3]

### 3. Government Action Tolling Does Not Apply.

As explained in greater detail in Thomson Consumer's previously filed Motion to Dismiss the Sharp Defendants' First Amended Complaint, government action tolling also does not apply to claims against Thomson Consumer for the Lin, Cheng, Yeh, and Lee et al. Indictments. (*See* Thomson Consumer's Mot. to Dismiss Sharp's FAC [Doc. No. 2236] at 13-17; Thomson Consumer's Reply [Dkt. No. 2317] at 11-13, restated and reincorporated by reference herein.) These individuals are fugitives and have never been arraigned or appeared in a United States court. Thus, these cases remain in a state of suspended inaction and no meaningful proceedings have occurred or are ever likely to occur. In other words, if the Court finds that these indictments tolled the statute of limitations against Thomson Consumer, the limitations period will never end. In circumstances such as this one, where the government files an indictment, but the defendant is never arraigned and no government action is actually prosecuted, the statute of limitations would never expire. The result of such a decision would be that dilatory plaintiffs like Tech Data, who have unreasonably delayed filing claims against the defendants, will be able to initiate their stale claims indefinitely and purposefully prejudice those defendants. In accordance with fundamental principles of statutory construction, an interpretation of 15 U.S.C. § 16(i) that would produce such

---

[3] *American Pipe* tolling does not apply to Tech Data's state claims because the DPP class action complaints contained only federal claims and, as a reseller, Tech Data was never a member of the IPP class. (*See* Thomson Consumer's Reply in Support of Mot. to Dis. Sharp's FAC [Dkt. No. 2317] at 10-11.)

1    an absurd result must be avoided. *See Ariz. State Bd. for Charter Schools v. U.S. Dept. of Ed.*, 464

2    F.3d 1003, 1008 (9th Cir. 2006); *see also, Credit Suisse Secs. (USA) LLC v. Simmonds,* 132 S.Ct.

3    1414, 1420 (2012) (rejecting interpretation of a statute that would lead to potentially "endless

4    tolling).

5           In sum, the statutes of limitation on all of Tech Data's claims expired several years before it

6    filed its inexcusably late claims and it does not plead specific facts that establish a plausible basis

7    for tolling the statutes of limitation.   Therefore, all of Tech Data's claims against Thomson

8    Consumer are time-barred and should be dismissed with prejudice.

9           **C.     Tech Data Fails to Plead Plausible Claims Against the Thomson Defendants.**

10          Tech Data does not plead factual allegations that plausibly suggest Thomson Consumer

11   participated in the alleged conspiracy as this Court has required.  *In re Cathode Ray Tube (CRT)*

12   *Antitrust Litig.*, 738 F. Supp. 2d 1011, 1019 (N.D. Cal. 2010); *see also In re TFT-LCD (Flat Panel)*

13   *Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (stating plaintiff "must allege that

14   *each individual defendant* joined the conspiracy and played some role in it") (emphasis added).

15   Although discovery in these actions has been ongoing for years, in the eighty paragraphs of the

16   FAC that detail both the alleged collusion between the Defendants over the course of approximately

17   twelve years and the worldwide government investigations of that conduct, Tech Data does not

18   advance a single, well-pleaded allegation regarding Thomson Consumer's alleged involvement.

19   (*See* FAC at ¶¶ 116-95.)   Instead, Tech Data simply asserts that a generic "Thomson" entity

20   "participated in dozens of meetings with its competitors" from "1996 and 2005" at which CRT

21   related topics were allegedly discussed.  (FAC at ¶ 159.)  This amounts to nothing more than "a

22   bare allegation of a conspiracy [which] is almost impossible to defend against" and is insufficient to

23   state a claim against Thomson Consumer.  *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047

24   (9th Cir. 2008; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d at 1117 (holding

25   "general allegations as to all defendants, to 'Japanese defendants,' or to a single corporate entity

26   such as 'Hitachi'" were insufficient to state a claim); *see also In re Cal. Title. Ins. Antitrust Litig.*,

27   No. C 08-01341, 2009 WL 1458025, at *8. Simply stated, the FAC pleads no specific facts that

28   plausibly suggest Thomson Consumer participated in the alleged conspiracy.

1      This Court has not hesitated to dismiss complaints, like the FAC, that fail to plead sufficient

2  facts to render claims against Thomson Consumer plausible.  Citing *Bell Atl. Corp. v. Twombly*, 550

3  U.S. 544 (2007), and related authority, on September 26, 2013, the Court issued an Order granting

4  Thomson Consumer's motion to dismiss the Sharp Defendants' Complaint. (*See* Order Granting

5  Motion to Dismiss [No. 1960] at 4-5.)  (*Id.*)  The Court held that at this advanced stage in the case,

6  Sharp was required to plead more than "threadbare allegations and legal conclusions". (*Id.* at 6.)

7  Sharp's Complaint, however, "provide[d] only the barest possible pleadings that Defendant

8  participated in the conspiracy to some extent . . ." and thereby failed "to elucidate why and how

9  Defendant should be part of this case." (*See* Order Granting Motion to Dismiss [No. 1960] at 4-5.)

10      The allegations against Thomson Consumer in Tech Data's FAC are nearly identical to and

11  thus equally bare as those contained in Sharp's deficient Complaint.  Accordingly, Tech Data's

12  claims against Thomson Consumer should be dismissed for the same reasons expressed in the

13  Court's Sept. 26, 2013 Order.

14      **D.      Tech Data's Claims Should Be Dismissed Because It Lacks Antitrust Standing.**

15      Tech Data's Sherman Act claims and California antitrust law claims should be dismissed

16  because Tech Data has failed to allege that it suffered any antitrust injury.  In *Associated General*

17  *Contractors*, the Supreme Court articulated a balancing test to determine whether the plaintiff is the

18  proper party to assert antitrust claims.  *Associated Gen. Contractors v. California State Council of*

19  *Carpenters*, 459 U.S. 519, 537-44 (1983); *see also In re Dynamic Random Access Memory (DRAM)*

20  *Antitrust Litig.*, 516 F. Supp. 2d 1072, 1085 (N.D. Cal. 2007).  Although the Supreme Court was

21  interpreting the Sherman Act, the test set forth in *Associated General Contractors* also has been

22  adopted in California.  *See In re DRAM Antitrust Litig.*, 516 F. Supp. 2d at 1088-89.  Under the

23  *Associated General Contractors* test, a court must consider:  "(1) the nature of the plaintiff's alleged

24  injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness

25  of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5)

26  the complexity in apportioning damages."  *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1996).

27  "The requirement that the alleged injury be related to anti-competitive behavior requires, as a

28  corollary, that the injured party be a participant in the same market as the alleged malefactors."

1 *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985); *see also Am. Ad Mgmt., Inc. v.*

2 *Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Antitrust injury requires the plaintiff to

3 have suffered its injury in the market where competition is being restrained.  Parties whose injuries,

4 though flowing from that which makes the defendant's conduct unlawful, are experienced in another

5 market do not suffer antitrust injury.").

6      Here, the relevant market for the purposes of determining antitrust injury is the CRT market,

7 not the CRT Products market.  Tech Data, a self-described "wholesale distributor of information

8 technology products" (FAC at ¶18), has not suffered any antitrust injury by virtue of its purchases

9 of CRT Products, which are not part of the "market where competition is being restrained."  *See*

10 *Am. Ad Mgmt.*, 190 F.3d at 1057.  Therefore, to the extent its claims are based on its purchases of

11 CRT Products, Tech Data has not suffered injury of the type the antitrust laws were intended to

12 forestall, and it does not have antitrust standing to bring such claims.  *Am. Ad Mgmt.*, 190 F.3d at

13 1057.  Because it lacks antitrust standing, Tech Data's claims based on its purchases of CRT

14 Products should be dismissed with prejudice.

15      The Court should also dismiss Tech Data's claims under the Sherman Act and California

16 law to the extent it is an indirect purchaser of CRTs because the FAC does not plead facts showing

17 that Tech Data's alleged purchases fall within the "ownership and control" exception to *Illinois*

18 *Brick*.  *See, e.g.*, *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1068 n.5

19 (E.D. Cal. 2011); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143, 2011 WL 3894376,

20 at *6 (N.D. Cal. Aug. 3, 2011); *see also In re Ditropan XP Antitrust Litig.*, 529 F. Supp. 2d 1098,

21 1101 n.2 (N.D. Cal. 2007).  Although Tech Data claims to have purchased CRT Products from

22 defendants, it provides only the vaguest allegations concerning its purchases.  (*See, e.g.*, FAC at ¶ 9

23 ("Plaintiffs purchased CRT Products . . . directly and indirectly from Defendants, and/or

24 Defendants' subsidiaries and affiliates and/or entities owned or controlled by Defendants").)  In

25 fact, Tech Data does not identify even one Defendant from whom it allegedly purchased CRT

26 Products.  Tech Data must do more than plead these types of generalities and conclusions.  *See*

27 *Kendall*, 518 F.3d at 1050 (affirming dismissal of complaint alleging co-conspirator exception

28 applied where plaintiff failed to plead "evidentiary facts . . . to support such conclusion").  As the

1    Court ruled in its September 26, 2013 Order "[s]o many years after this MDL's inception, Plaintiffs

2    should be able to provide something more than boilerplate allegations."  (Sept. 26, 2013 Order at 5,

3    [Dkt. No. 1960].)  Similarly, years after these actions began, Tech Data should be required to plead

4    specific facts that allow the Court to plausibly infer its purchases qualify for the ownership and

5    control exception.  Despite the fact that evidence regarding this topic, if it exists, would be

6    exclusively within its control, Tech Data has failed to plead any such facts.  Accordingly, Tech

7    Data's indirect purchaser claims should be dismissed with prejudice.

8                                          **CONCLUSION**

9            A court has inherent authority to manage its docket.  *Chambers v. NASCO, Inc*., 501 U.S.

10   32, 43 (1991).  "These powers are governed not by rule or statute but by the control necessarily

11   vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition

12   of cases." *Id.*; *see also Atchison, Topeka & Santa Fe Ry. v. Hercules Inc., 146 F.3d 1071, 1074 (9th

13   Cir.1998) (recognizing that a district court has broad inherent powers to control its docket as long

14   as it does not nullify the parties' procedural choices under the federal rules).  Here, pursuant to Fed.

15   R. Civ. P. 15(a) and 21, Tech Data was required to obtain leave of court before it filed the FAC.

16   Tech Data's failure to do so renders the allegations in the FAC against Thomson Consumer a nullity

17   and without legal effect.  *Taa*, 2011 WL 4985379 *5 (striking allegations in amended complaints

18   filed in violation of Rule 15 without leave of court).  Moreover, any motion for leave to amend filed

19   by Tech Data now would necessarily fail because the Court already has correctly determined that

20   granting Plaintiffs leave to amend their Complaints to add claims against Thomson Consumer at

21   this late stage in the case would cause Thomson Consumer to suffer undue prejudice.  Therefore,

22   the Court should enter an Order striking the allegations against Thomson Consumer contained in

23   the FAC with prejudice.

24

25

26

27

28

Dated:  January 16, 2014

Respectfully submitted,

/s/ Kathy L. Osborn
Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo
1700 Lincoln Street
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Ave, Suite 450
East Palo Alto, CA  94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

***Attorneys for Defendant Thomson Consumer***