*Counsel Listed on Signature Block*

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Mater Case No.: 3:07-cv-05944-SC<br>MDL No. 1917<br>Individual Case Nos. 3:11-cv-05513-SC;<br>3:11-cv-06396-SC |
| This document relates to:<br><br>*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.,*<br>*No. 11-cv-05513-SC*<br><br>*Target Corp. v. Chunghwa, et al.,*<br>*No. 11-cv-05514-SC*<br><br>*Tech Data v. Hitachi, Ltd., et al.*<br>*No. 13-cv-00157-SC* | **PLAINTIFFS BEST BUY, TARGET, AND TECH DATA'S CONSOLIDATED OPPOSITION TO DEFENDANT BEIJING MATSUSHITA COLOR CRT CO., LTD.'S MOTION TO DISMISS CERTAIN DIRECT ACTION PURCHASER COMPLAINTS**<br><br>Date:      January 24, 2014<br>Time:      10:00 a.m.<br>Before the Honorable Samuel Conti |

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

60736574.1

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF ISSUES TO BE DECIDED ........................................................ 1

II.  INTRODUCTION .................................................................................................. 1

    A.   Personal Jurisdiction ................................................................................. 1

    B.   Service of Process ...................................................................................... 2

III. FACTUAL BACKGROUND ................................................................................ 3

    A.   BMCC Has Actively Litigated this Action for More Than Five Years ..................... 3

        1.   BMCC stated its intent to raise personal jurisdiction as a defense in October 2008 ..................... 3

        2.   Despite stating its intent to raise personal jurisdiction as a defense, BMCC subsequently omitted the defense in multiple Rule 12(b)(6) motions ..................... 3

        3.   The Best Buy, Target, and Tech Data actions, and BMCC's failed opposition to Plaintiffs' service motion under Rule 4(f)(3) ..................... 4

    B.   BMCC's Corporate Relationship with Other Defendants and Co-Conspirators ..................... 4

    C.   Plaintiffs Allege, and the Evidence Shows, that BMCC Participated in the CRT Conspiracy and Targeted the United States ..................... 6

        1.   BMCC participated in the glass meetings to raise the price of CRTs and CRT Products sold throughout the United States ..................... 6

        2.   BMCC, by and through its Panasonic affiliates, directed its anticompetitive conduct at the United States ..................... 7

        3.   BMCC participated in the conspiracy in order to realize massive profits ........ 10

IV.  STANDARD OF REVIEW ................................................................................. 10

V.   BMCC HAS WAIVED ITS PERSONAL JURISDICTION DEFENSE ............................. 10

    A.   BMCC Has Waived Personal Jurisdiction By Omitting the Defense From Its Previous 12(b)(6) Motions ..................... 10

    B.   BMCC Has Waived Personal Jurisdiction by Participating In the Litigation .......... 12

VI.  THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER BMCC ................. 13

    A.   BMCC Purposefully Directed Its Activities at the United States ........................... 14

    B.   Jurisdiction also exists based on BMCC's purposeful availment ........................... 18

    C.   This Action Arises Out Of and Relates to BMCC's Conduct ................................ 19

D.  BMCC Fails to Prove That the Exercise of Jurisdiction Over It Is Unreasonable ................................................................................................ 20

VII.  THE COURT SHOULD PERMIT PLAINTIFFS TO CONDUCT JURISDICTIONAL DISCOVERY IF IT FINDS INSUFFICIENT EVIDENCE OF BMCC'S MINIMUM CONTACTS WITH THE UNITED STATES ................................ 22

VIII.  BMCC HAS WAIVED ITS SERVICE OF PROCESS DEFENSE .................................... 22

IX.  THIS COURT HAS ALREADY RULED THAT PLAINTIFFS' SERVICE ON BMCC'S COUNSEL WAS PROPER ......................................................................... 22

X.  CONCLUSION ........................................................................................................... 24

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Aetna Life Ins. Co. v. Alla Med. Services, Inc.,*
    855 F. 2d 1470 (9th Cir. 1988) .......................................................................... 11

*Ballard v. Savage,*
    65 F.3d 1495 (9th Cir. 1995) ................................................................... 10, 19, 20

*Bauman v. DaimlerChrysler Corp.,*
    644 F.3d 909 (9th Cir. 2011) ........................................................................... 21

*Brayton Purcell LLP v. Recordon & Recordon,*
    606 F.3d 1124 (9th Cir. 2008) .................................................................... 10, 15

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ..................................................................................... 14, 21

*Butcher's Union Local No. 498 v. SDC Inv., Inc.,*
    788 F.2d 535 (9th Cir. 1986) ........................................................................... 22

*Church of Scientology v. Linberg,*
    529 F. Supp. 945 (C.D. Cal. 1981) ................................................................. 12

*CollegeSource, Inc. v. AcademyOne, Inc.,*
    653 F.3d 1066 (9th Cir. 2011) ......................................................................... 14

*Continental Bank, N.A. v. Meyer,*
    10 F.3d 1293 (7th Cir. 1993) ........................................................................... 13

*DFSB Kollective Co., Ltd. v. Bing Yang,*
    2013 U.S. Dist. LEXIS 46096 (N.D. Cal. Mar. 28, 2013) ............................. 21

*Dias v. Bogin,*
    1994 U.S. Dist. LEXIS 7447 (E.D. Pa. June 7, 1994) ................................... 20

*Electrograph Sys., Inc. v. Epson Imaging Devices Corp. (In re TFT-LCD (Flat Panel)
    Antitrust Litig.),*
    2012 U.S. Dist. LEXIS 12063 (N.D. Cal. Feb. 1, 2012) ................................. 16

*Fiore v. Walden,*
    688 F.3d 558 (9th Cir. 2012) ........................................................................... 20

*Fireman's Fund Ins. Co. v. National Bank of Coops.,*
    103 F.3d 888 (9th Cir. 1996) ........................................................................... 19

*Gates Learjet Corp. v. Jensen,*
    743 F.2d 1325 (9th Cir. 1984) ......................................................................... 21

*Go-Video, Inc. v. Akai Elec. Co., Ltd.,*
    885 F.2d 1406 (9th Cir. 1989) ......................................................................... 14

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

iii

*Hamilton v. Atlas Turner, Inc.*,
    197 F.3d 58 (2nd Cir. 1999) ................................................................... 13

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007) ................................................................... 18

*In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*,
    2004 U.S. Dist. LEXIS 29586 (D.N.J. Oct. 26, 2004) ............................ 17

*In re Chocolate Confectionary Antitrust Litig.*,
    674 F. Supp. 2d 580 (M.D. Pa. 2009) ..................................................... 18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*,
    2005 U.S. Dist. LEXIS 30299 (N.D. Cal. Nov. 7, 2005) .................... 17, 18, 19

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
    764 F. Supp. 2d 991 (N.D. Ill. 2011) ..................................................... 16

*In re Polyester Staple Antitrust Litig.*,
    2008 U.S. Dist. LEXIS 43865 (W.D.N.C. Apr. 1, 2008) ............... 11, 12, 13, 22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2011 U.S. Dist. LEXIS 131809 (N.D. Cal. Nov. 9, 2011) ............... 4, 14, 16, 19

*In re World War II Era Japanese Forced Labor Litig.*,
    164 F. Supp. 2d 1160 (N.D. Cal. 2001) ................................................... 21

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) .............................................................................. 13

*J. McIntyre Machinery, Ltd. v. Nicastro*,
    131 S. Ct. 2780 (2011) .......................................................................... 18

*Laub v. U.S. Dep't of Interior*,
    342 F.3d 1080 (9th Cir. 2003) ................................................................ 22

*Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Natural Gas Antitrust Litig.)*,
    715 F.3d 716 (9th Cir. 2013) ............................................................. 16, 19

*Marcial Ucin, S.A. v. SS Galicia*,
    723 F.2d 994 (1st Cir. 1983) ................................................................. 11

*Markel Am. Ins. Co. v. Pac Asian Enters.*,
    2008 U.S. Dist. LEXIS 60536 (N.D. Cal. Jul. 28, 2008) ........................ 12

*Marks v. United States*,
    430 U.S. 188 (1977) (internal quotation marks omitted) ........................ 18

*Menken v. Emm*,
    503 F.3d 1050, 1057 (9th Cir. 2007) ..................................................... 20

*Monje v. Spin Master Inc.*,
    2013 U.S. Dist. LEXIS 75330 (D. Ariz. May 29, 2013) ......................... 18

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

*Ochoa v. J.B. Martin & Sons Farms,*
    287 F.3d 1182 (9th Cir. 2002)........................................................... 14

*Olenicoff v. UBS AG,*
    2010 U.S. Dist. LEXIS 144474 (C.D. Cal. Mar. 16, 2010) ............................... 17

*Parker v. United States,*
    110 F.3d 678 (9th Cir. 1997).......................................................... 11

*Patent Incentives, Inc. v. Seiko Epson Corp.,*
    1988 U.S. Dist. LEXIS 9933 (D.N.J. Sept. 6, 1988) ................................ 18

*Rio Props, Inc. v. Rio Int'l Interlink,*
    284 F.3d 1007 (9th Cir. 2002)................................................. 10, 15, 23

*Schnabel v. Lui,*
    302 F.3d 1023 (9th Cir. 2002)................................................... 12, 22

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2003).......................................................... 14

*Simpkins v. District of Columbia Government,*
    108 F.3d 366 (D.C. Cir. 1997)........................................................ 11

*Vehimax Int'l, LLC v. Jui Li Enter. Co.,*
    2010 U.S. Dist. LEXIS 42801 (C.D. Cal. Mar. 16, 2010) ............................. 17

*Washington v. Baker Petrolite Corp.,*
    2010 U.S. Dist. LEXIS 97037 (E.D. La. Aug. 23, 2010) .............................. 20

*Williamson v. Am. Mastiff Breeders Council,*
    2009 U.S. Dist. LEXIS 53974 (D. Nev. Mar. 6, 2009)................................. 17

*Yahoo Inc. v. La Ligue Contre le Racisme,*
    433 F.3d 1199 (9th Cir. 2006)........................................................ 14

**Rules**

Fed. R. Civ. P. 12 ................................................................. passim

Fed. R. Civ. P. 4 .......................................................... 4, 22, 23, 24

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

v

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs Best Buy Co., Inc., Best Buy Purchasing, LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, LLC, and Magnolia Hi-Fi, LLC, Plaintiff Target Corp., and Plaintiffs Tech Data Corporation and Tech Data Product Management, Inc. (collectively, "Plaintiffs"), submit this Memorandum of Law in Opposition to Defendant Beijing Matsushita Color CRT Co., Ltd.'s ("BMCC") Motion to Dismiss Certain Direct Action Purchaser Complaints as follows:

## I.    STATEMENT OF ISSUES TO BE DECIDED

1.   Whether BMCC waived lack of personal jurisdiction as a defense;

2.   Whether this Court has personal jurisdiction over BMCC;

3.   Whether BMCC waived insufficient service of process as a defense; and

4.   Whether service of process on BMCC was effective.

## II.    INTRODUCTION

### A.    Personal Jurisdiction

After litigating in this MDL for five years and in this case for two years, BMCC now moves to dismiss claiming that the Court lacks jurisdiction over it.  BMCC's Motion is baseless and the Court should deny it for multiple reasons.

<u>Waiver</u>

BMCC has waived its personal jurisdiction argument by failing to include it in multiple prior Rule 12 motions and by actively participating in this MDL and action for years.  By way of example only, BMCC has accepted service of process, served initial disclosures, objected to discovery requests, entered into stipulations, answered complaints, filed motions to dismiss and status conference statements, produced documents, attended a deposition, responded to written discovery, and supplemented written discovery.  For this reason alone, BMCC's Motion should be denied.

<u>Minimum Contacts</u>

The exercise of jurisdiction is proper based on both purposeful direction and purposeful availment.  BMCC purposefully directed its misconduct at the United States by participating in a conspiracy, the purpose and effect of which was to raise and fix the prices of cathode ray tubes

(CRTs) and CRT products sold here.  BMCC participated in numerous meetings with its co-conspirators, submitted to the decision-making and instructions of its co-conspirators, and exchanged information with its affiliates regarding the United States CRT market, █████████████████████████████████████████████████████████████████████████████.  These facts independently establish jurisdiction.

Further, BMCC knew and expected that a substantial amount of its CRTs and resulting CRT products would be sold in the United States.  BMCC was the second largest manufacturer of CRTs in China during the conspiracy period, and it knew that the United States was the largest market for CRT products.  As one expert has opined, approximately 160,275 CRT Products containing BMCC's CRTs, worth approximately $10.7 million, were sold to natural persons between 1995 and 2007 in California alone.  BMCC participated in the conspiracy, monitored the United States CRT market, and exchanged information with others to ensure that products containing its CRTs would remain competitive in the United States, thereby ensuring its profitability then and for years to come.

For all these reasons, the Court should find that BMCC has minimum contacts with the United States under either a purposeful direction or purposeful availment analysis, and should exercise jurisdiction over it.  Moreover, having litigated in this forum for over five years through Freshfields Bruckhaus Deringer US LLP ("Freshfields") – one of the largest law firms in the world – BMCC can hardly complain now that the exercise of jurisdiction would be unreasonable.  It certainly has not and cannot establish the "compelling case" it is required to make.

**B.    Service of Process**

As with its personal jurisdiction defense, BMCC has waived its insufficient service of process defense by omitting it from previous Rule 12(b) motions and by actively litigating in this MDL and action for years.

In addition, BMCC's arguments regarding the propriety of service merely regurgitate arguments considered and rejected by this Court numerous times.  The Court has already granted Plaintiff's Rule 4 motion over BMCC's objection.  There is no reason to entertain BMCC's arguments again, and this Court should summarily reject them.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

2

1    For all these reasons, the Court should deny BMCC's Motion in its entirety.

2    **III.   FACTUAL BACKGROUND**

3        **A.   BMCC Has Actively Litigated this Action for More Than Five Years**

4    BMCC first appeared in this MDL through Freshfields on July 17, 2008.  *See* Dkt. No. 332.

5    Since then, BMCC has accepted service of process, served initial disclosures, objected to

6    discovery requests, answered complaints, entered into stipulations, filed motions to dismiss and

7    status conference statements, produced documents, attended a deposition, responded to written

8    discovery, and supplemented written discovery.  *See* Loh Decl. ¶ 32, Exs. A, B, and C.[1]

9            **1.   BMCC stated its intent to raise personal jurisdiction as a defense in
                October 2008**

10   The personal jurisdiction defense was available to BMCC as early as October 15, 2008.  On

11   that date, BMCC filed its Objections to certain discovery requests.  In them, BMCC stated as

12   follows: "BMCC objects to Paragraph 4 of the Discovery Stipulation to the extent that it seeks to

13   prematurely compel information that is untimely and inappropriate given BMCC's intent to raise

14   the issue of a lack of personal jurisdiction if BMCC is named in plaintiffs consolidated amended

15   complaint.  BMCC has served plaintiffs with a statement of its intent to assert a personal

16   jurisdiction defense as required by Paragraph 4(g) of the Discovery Stipulation."  *See* Dkt. 400.

17
18          **2.   Despite stating its intent to raise personal jurisdiction as a defense, BMCC
                subsequently omitted the defense in multiple Rule 12(b)(6) motions**

19   On May 18, 2009, BMCC filed a Rule 12(b)(6) motion to Dismiss Direct Purchaser

20   Plaintiffs' ("DPPs") Consolidated Amended Complaint and Indirect Purchaser Plaintiffs' ("IPPs")

21   Consolidated Amended Complaint, and joined Rule 12(b)(6) motions filed by various defendants.

22   None of these motions contained any argument that the Court lacked personal jurisdiction over

23   BMCC. *See* Dkt. Nos. 463, 479, 485, 546, 551, and 555.

24   Nearly one year later, on April 29, 2010, BMCC raised personal jurisdiction as a defense in

25   its Answer to the DPPs' Consolidated Amended Complaint.  *See* Dkt. 677.

26

27   _____

28   [1] *See also* Dkt. Nos. 372, 400, 463, 479, 485, 546, 551, 555, 614, 619, 667, 677, 678, 780, 813, 858, 936, 975, and 1043.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

### 3.   The Best Buy, Target, and Tech Data actions, and BMCC's failed opposition to Plaintiffs' service motion under Rule 4(f)(3)

Best Buy and Target filed their complaints against BMCC and others on November 14, 2011.  Thereafter, on April 10, 2012, the Best Buy and Target Plaintiffs filed a Motion to Serve BMCC through its United States Counsel pursuant to Rule 4(f)(3).  *See* Dkt. 1147.  On June 27, 2012, over BMCC's objection, this Court ordered that service be effected on BMCC through its United States counsel.  *Id.*  In so holding, the Court noted that the requested method of service had already been used in the CRT cases and that, on September 3, 2008, the Court had granted a Motion by the IPPs to serve process on two foreign corporations under Rule 4(f)(3). [2] *Id.*  The Court also noted that BMCC was represented by the same counsel – Freshfields – in the CRT litigation, and had previously accepted service in the IPP action.  *Id.*

After losing its service of process challenge, BMCC responded to the Best Buy and Target Plaintiffs' complaints by filing answers on August 24 and September 14, 2012, respectively.  *See* Dkt. Nos. 1328 and 1346.  Both answers raise personal jurisdiction as an affirmative defense.  *Id.*

Tech Data filed its complaint on December 11, 2012.  BMCC did not file an answer in response to the complaint.

### B.   BMCC's Corporate Relationship with Other Defendants and Co-Conspirators

BMCC was a joint venture company.  From 2002 through 2009, Defendant Matsushita Toshiba Picture Display Co., Ltd. ("MTPD"), a subsidiary of Defendant Matsushita Electric Industrial Co., Ltd. ("Matsushita" or "Panasonic"), owned 50 percent of BMCC.[3]  *See Best Buy* FAC ¶¶ 43, 44; Tech Data FAC ¶¶ 45, 46; Target SAC ¶¶ 37, 38; *see also* Kinoshita Decl. ¶ 6.

███████████████████████████████████████████████████████████████████

---

[2] Similarly, in the *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, No. M:07-1827-SI ("LCD Litigation"), Judge Illston invariably issued orders granting motions to serve defendants through their United States counsel pursuant to Rule 4 on <u>twenty-one</u> occasions.  *See* Dkt Nos. 725, 1309, 1657, 1779, 2109, 2532, 2539, 2584, 2747, 2748, 2825, 3079, 3217, 3345, 3394, 3443, 3654, 3655, 4785, 4797, and 4798.

[3] Three Chinese companies -  Beijing Orient Electronics (Group) Co., Ltd., China National Electronics Import & Export Beijing Company (a China state-owned enterprise), and Beijing Yayunchun Brach of the Industrial and Commercial Bank of China (a China state-owned enterprise) – owned the other 50 percent of BMCC.  *See Best Buy* FAC ¶ 44; Tech Data FAC ¶ 46; Target SAC ¶ 38

4

1

2 ████████████. *See* Loh Decl. Ex. D at pgs. 6, 11, 12, 17, 18, 27, 37, and 38.

3     MTPD was formed in 2002 as a joint venture between Panasonic and Defendant Toshiba.

4 *See* Best Buy FAC ¶ 43; Tech Data FAC ¶ 45; Target SAC ¶ 37.  Panasonic was the majority

5 owner, owning 64.5 percent of MTPD.  *Id.*  Toshiba owned the other 35.5 percent.  *Id.*

6     On March 30, 2007, Panasonic purchased Toshiba's 35.5 percent stake in MTPD, making

7 MTPD Panasonic's wholly-owned subsidiary.  *Id.*  The relationship between Panasonic, MTPD

8 (later renamed to MT Picture Display Co., Ltd.), and BMCC is illustrated as follows:



21     Notably, Panasonic personnel moved interchangeably throughout MTPD, BMCC, and the

22 other Panasonic affiliated entities.  The Declaration of Ayumu Kinoshita, submitted by BMCC in

23 support of its motion, for example, shows that he worked at MTPD from October 2004 to May

24 2006, and was stationed at BMCC from April 2005 to May 2006.  *See* Kinoshita Decl. ¶ 2.  After

25 becoming a BMCC employee in May 2006, he became an employee of a Panasonic division in

26 March 2008 and, in January 2013, became a Panasonic employee where he still works today.  *Id.*

27     But Panasonic, MTPD, and BMCC shared more than just common employees.  As set forth

28 below, these entities and other Panasonic affiliates routinely shared information with each other

R<small>OBINS</small>, K<small>APLAN</small>, M<small>ILLER</small> & C<small>IRESI</small> L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

     BEST BUY, TARGET, AND TECH DATA'S
CONSOLIDATED OPPOSITION TO BMCC'S
MOTION TO DISMISS

and worked together to artificially inflate the prices of CRTs and CRT Products in the United States.

**C.     Plaintiffs Allege, and the Evidence Shows, that BMCC Participated in the CRT Conspiracy and Targeted the United States**

Between at least 1998 and 2007, BMCC participated in a conspiracy to fix, maintain, and/or stabilize the prices of CRTs sold in the United States.  *See* Best Buy FAC ¶¶ 1, 4, 14, 44; Tech Data FAC ¶¶ 1, 4, 15, 46; Target SAC ¶¶ 1, 3, 14, 38.  The conspiracy was extremely successful, affecting "billions of dollars of commerce throughout the United States."  *See* Best Buy FAC ¶ 7; Tech Data FAC ¶ 7; Target SAC ¶ 6.

**1.     BMCC participated in the glass meetings to raise the price of CRTs and CRT Products sold throughout the United States**

BMCC and its co-conspirators participated in a series of meetings called "glass meetings" in which they agreed on the prices at which they sold CRTs to their own corporate affiliates.  In turn, the corporate affiliates manufactured finished CRT products such as televisions and computer monitors.  *See* Best Buy FAC ¶¶ 116-130, 146; Tech Data FAC ¶¶ 121-134, 152; Target SAC ¶¶ 109-124, 140.  By keeping the internal pricing to their affiliated OEMs at a high enough level to support the CRT pricing in the market to other OEMs, BMCC and its co-conspirators ensured that all OEMs paid supracompetitive prices for CRTs, including those in the United States.  *See* Best Buy FAC ¶¶ 14, 127; Tech Data FAC ¶¶ 15, 132; Target SAC ¶¶ 14, 120.

The Chinese glass meetings began in 1998 and generally occurred on a monthly basis.  *See* Best Buy FAC ¶ 120; Tech Data FAC ¶ 125; Target SAC ¶ 113.  These meetings had the principal purpose of reporting what had been decided at the most recent glass meetings to the Chinese manufacturers.  *Id.*  Participants at the Chinese meetings included the manufacturers located in China, such as IRICO and BMCC, as well as the China-based branches of the other defendants and co-conspirators.  *Id.*

BMCC participated in no less than ████████ glass meetings between 1998 and 2007.  *See* Best Buy FAC ¶ 146; Tech Data FAC ¶ 152; Target SAC ¶ 140; *see also* Loh Decl. Ex. E at pgs. 29, 38, 42, 44, 45, 47, 54, 66, 68, 70, 72, 75, 76, 78, 80, 81, 82, 83, 84, 85 (████████ ████████████████████████████); Loh Decl. Exs. F at 407:3-22, and G at 238:2-23 (████████

6

); Loh Decl. Ex. O (

). High-level sales managers from BMCC attended these meetings.  *See* Best Buy FAC ¶ 146; Tech Data FAC ¶ 152; Target SAC ¶ 140.  BMCC also engaged in multiple bilateral discussions with other defendants, particularly the other Chinese CRT manufacturers.  *Id.*  Through these discussions, BMCC agreed on prices and supply levels for CRTs.  *Id.*  At all times, BMCC acted to further its own private interests.  *Id.*

Aside from participating in the glass meetings, the evidence also demonstrates that BMCC abided by the directives of its co-conspirators.

*See* Loh Decl. Ex. H at CHU00029193E.

*Id.* at CHU00029194E.

The evidence reveals that BMCC complied with directives like these.

### 2.   BMCC, by and through its Panasonic affiliates, directed its anticompetitive conduct at the United States

Like BMCC, Panasonic and its affiliates, including MTPD, participated in bilateral and glass meetings.  *See* Best Buy FAC ¶¶ 112, 136, 143, 145; Tech Data FAC ¶¶ 117, 141, 149, 151; Target SAC ¶¶ 105, 137, 139; Loh Decl. Exs. J (

); Ex. CC at 294:1-298:10, 312:22-317:1 (

---

[4] CRTs can be subdivided into CDTs and CPTs.  CPTs are used primarily in televisions and related devices and CDTs are primarily used in computer monitors and similar devices.  *See* Best Buy FAC ¶¶ 2, 86; Tech Data FAC ¶¶ 2, 91; Target SAC ¶¶ 1, 79.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES



); Ex. B at 121:18-123:21 (

).  BMCC used and

worked with those entities to target its anticompetitive conduct at the United States.

Deposition testimony reveals, for example, that

*See* Loh Decl. Ex. K at 423:17-424:11 (

).  This testimony

squarely refutes BMCC's assertion that

.

Numerous documents also demonstrate that BMCC and Panasonic exchanged information

relating to the United States CRT market.

*See* Loh Decl. at Ex. L.

*Id.*

*Id.*; *see also* Loh Decl. at Ex. M (

).

E-mail correspondence dated                 also shows how BMCC and MTPD worked

together to implement price increases in the United States.  *See* Loh Decl. Ex. N.

---

[5] During the conspiracy, Orion was a major manufacturer of CRT Products.  In 1995, approximately 85% of Orion's $1 billion in sales was attributed to CRT Products.  Orion was involved in CRT Products sales and manufacturing joint ventures and had subsidiaries all over the world, including the United States.  *See* Best Buy FAC ¶ 73; Tech Data FAC ¶ 76; Target SAC ¶ 66.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

60736574.1

8

BEST BUY, TARGET, AND TECH DATA'S
CONSOLIDATED OPPOSITION TO BMCC'S
MOTION TO DISMISS

[redacted]

[redacted]

[redacted]

[redacted]

*Id.* at MTPD-0335676E_Translation.

BMCC responded by [redacted] *Id.* at MTPD-0335675E_Translation. As such, BMCC [redacted] *Id.* [redacted] *Id.*; *see also* Loh Decl. Ex. B at 344:4-345:23 ([redacted]); Exs. P and Q ([redacted]).

Similarly, BMCC's documents [redacted]. *See* Loh Decl. Exs. R-Z.

[6] Kazuto Ueda was [redacted]. *See* Loh Decl. Ex. B at 154:15-20, 344:4-11.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P. ATTORNEYS AT LAW LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

3. **BMCC participated in the conspiracy in order to realize massive profits**

BMCC profited handsomely by participating in the conspiracy. BMCC was the second largest manufacturer of CRTs in China (*see* Best Buy FAC ¶ 44; Tech Data FAC ¶ 46; Target SAC ¶ 38), and the CRTs it manufactured were sold, marketed, and distributed throughout the United States, the world's largest market for CRT televisions and computer monitors at the time. *See* Best Buy FAC ¶¶ 14, 146, 160; Tech Data FAC ¶¶ 15, 152, 167; Target SAC ¶¶ 14, 140, 154; Loh Decl. Ex. K at 420:8-421:10 ( ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ ). By participating in the conspiracy, BMCC ensured that the CRTs it manufactured for the billion-dollar United States CRT market were sold at artificially high prices, significantly increasing its profit margins. *See* Best Buy FAC ¶¶ 14, 44, 116-130, 146; Tech Data FAC ¶¶ 15, 46, 121-134, 152; Target SAC ¶¶ 14, 38, 109-124, 140. At least one expert has opined that, between 1995 and 2007, an estimated $10.7 million dollars' worth of CRTs manufactured by BMCC was sold in California alone. *See* Loh Decl. Ex. AA at pg. 6-7.

## IV.   STANDARD OF REVIEW

"When a district Court acts on a defendant's motion to dismiss under Rule 12(b)(2), without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations committed). Moreover, "uncontroverted allegations in plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in plaintiff's favor." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2008) (citing *Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)).

## V.   BMCC HAS WAIVED ITS PERSONAL JURISDICTION DEFENSE

### A.   BMCC Has Waived Personal Jurisdiction By Omitting the Defense From Its Previous 12(b)(6) Motions

With limited exceptions, parties who file Rule 12 Motions are required to assert every objection or defense available to them at the time. Parties who fail to do so waive such objections

BEST BUY, TARGET, AND TECH DATA'S
CONSOLIDATED OPPOSITION TO BMCC'S
MOTION TO DISMISS

and defenses by omission, including with respect to personal jurisdiction.  Fed. R. Civ. Proc. 12

(g) and (h); *Parker v. United States*, 110 F.3d 678, 682 (9th Cir. 1997) (noting that all defenses

then available to a party and which may be brought by a Rule 12 Motion must be raised in the

Motion or be lost); *Simpkins v. District of Columbia Government*, 108 F.3d 366, 368 (D.C. Cir.

1997) ("If the party only raises a Rule 12(b)(6) objection, then the party has waived insufficiency

of service of process and lack of personal jurisdiction.").  The purpose of this rule is to ensure the

diligent prosecution of Rule 12 challenges at the earliest possible time, and to deter the dilatory

tactic of filing serial Rule 12(b) Motions.  *See Aetna Life Ins. Co. v. Alla Med. Services, Inc.*, 855

F. 2d 1470, 1475, fn. 2 (9th Cir. 1988) (noting that "a series of motions should not be permitted

because that results in delay and encourages dilatory tactics."); *Marcial Ucin, S.A. v. SS Galicia*,

723 F.2d 994, 997 (1st Cir. 1983) ("The objective of Rule 12 is to eliminate unnecessary delay at

the pleading stage by requiring the presentation of an omnibus pre-answer motion in which

defendant advances every available Rule 12 defense.").

Here, BMCC waived its personal jurisdiction defense by failing to raise it in its prior Rule

12(b)(6) motions.  On October 15, 2008, BMCC expressed its intent to raise personal jurisdiction

as a defense.  *See* Dkt. 400.  However, when BMCC filed its Rule 12(b)(6) motion on May 18,

2009 (and joined other defendants in filing similar Rule 12(b)(6) motions that same date), it failed

to do so.  *See* Loh Decl. Dkt. Nos. 463, 479, 485, 546, 551, 555.  BMCC's omission is fatal

because, although Plaintiffs filed their complaints thereafter, its allegations are the same now as

they were then – i.e., BMCC allegedly has no offices in the United States, allegedly did not

advertise in the United States, and allegedly did not sell CRTs to companies in the United States.

Moreover, BMCC is represented by the same counsel and, therefore, had every opportunity to

raise the defense but simply chose not to.

BMCC may argue that it has not waived personal jurisdiction because its prior Rule

12(b)(6) motions were against different plaintiffs.  This argument is meritless, however, given the

consolidation of all actions in this MDL.  *See In re Polyester Staple Antitrust Litig.*, 2008 U.S.

Dist. LEXIS 43865 at *77-78 (W.D.N.C. Apr. 1, 2008) (rejecting argument that party had waived

the defense with respect to only one defendant, noting that all cases within the MDL had been

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

consolidated and, therefore, were treated and managed as one.). As a matter of policy, BMCC's argument that it can preserve an objection it should have raised earlier would circumvent and run afoul of the purpose of Rule 12's waiver provisions.

On these facts, BMCC has waived its personal jurisdiction defense by failing to raise it in prior Rule 12 Motions. *See, e.g. Schnabel v. Lui*, 302 F.3d 1023, 1033 (9th Cir. 2002) (finding that, under Rule 12(h)(1), defendant waived its lack of personal jurisdiction and insufficiency of service of process defenses by failing to raise them in its first motion under Rule 12(b)); *Church of Scientology v. Linberg*, 529 F. Supp. 945, 966-967 (C.D. Cal. 1981) (same) (overruled on other grounds in *Schnabel*, 302 F.3d at 1034); *Markel Am. Ins. Co. v. Pac Asian Enters.*, 2008 U.S. Dist. LEXIS 60536 at *7 (N.D. Cal. Jul. 28, 2008) (noting that defendants, "each having brought a Rule 12 motion without challenging personal jurisdiction, have waived that defense.").

## B. BMCC Has Waived Personal Jurisdiction by Participating In the Litigation

BMCC's active participation in this litigation for over five years has also resulted in a waiver. Although a party may technically preserve its objections under Rule 12, waiver may still "be implied by conduct and inaction, such as entering an appearance, filing motions and requesting relief, or participating in hearings or discovery." *In re Polyester Staple Antitrust Litig.*, 2008 U.S. Dist. LEXIS 43865 at *65 (quotations omitted).

In *In re Polyester Staple Antitrust Litig.*, for example, two separate plaintiffs – Avondale Mills and Burlington – filed suit against defendant Celanese AG. 2008 U.S. Dist. LEXIS 43865 at *12. Avondale Mills filed suit first. *Id.* at *66. In response, Celanese AG filed an answer that asserted lack of personal jurisdiction as an affirmative defense, but did not separately move for dismissal thereafter. *Id.* Burlington filed suit two years after Avondale Mills. *Id.* at *71. In response to Burlington's action, however, rather than file an answer as it did with Avondale Mills, Celanese AG moved for dismissal on personal jurisdiction grounds. *Id.* Burlington opposed the motion, arguing that Celanese AG waived its personal jurisdiction defense by participating in the action over a two-year period. *Id.* at *71-72.

The Court agreed, holding that, although Celanese AG did not formally waive its personal jurisdiction defense under Rule 12, its actions and inactions constituted waiver. The Court found

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

12

that Celanese AG's failure to act over a two-year period was "more than a sufficient lapse of time to support a finding of waiver" as a "litigant's decision to sit on its rights indefinitely is entirely inconsistent with a Rule 12(b)(2) threshold challenge claiming lack of personal jurisdiction." *Id.* at *74, 78.  The Court noted that had Celanese AG participated in discovery individually (as opposed to collectively with its subsidiary entities), that would have further established waiver. *Id.* at *76-78.  The Court also rejected Celanese AG's argument that it had only waived the defense with respect to Avondale Mills, noting that all of the cases within the MDL had been consolidated and, therefore, were treated and managed as one.  *Id.* at *77-78; *see also Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60-62 (2nd Cir. 1999) (while defendant raised personal jurisdiction as an affirmative defense in its answer, defendant forfeited the defense by participating in pretrial proceedings for four years before moving to dismiss on personal jurisdiction grounds); *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993) (affirming district court's finding that defendants' active participation in the litigation for two-and-a-half years did not comply with the spirit of Rule 12(h) and, therefore, constituted waiver of their personal jurisdiction defense).

The facts here establish waiver even more so than these cases.  As set forth above, BMCC expressed its intent to raise personal jurisdiction as a defense as early as October 2008 and formally raised it as a defense in its April 29, 2010 answers to the DPPs' and IPPs' Consolidated Complaints.  *See* Dkt. Nos. 677 and 678.  Even if the Court were to use the April 29, 2010 date, three-and-a-half years elapsed before BMCC's current motion.  In addition, BMCC has actively participated in this litigation for over five years.  Under these facts, BMCC has waived its personal jurisdiction defense and the Court should deny its motion accordingly.

## VI.    THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER BMCC

A Court may exercise specific personal jurisdiction over a nonresident defendant if the defendant has minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and quotations omitted).  In performing this analysis, the Ninth Circuit applies a three-part test: "(1) The non-resident defendant must purposefully direct his

13

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  activities or consummate some transaction with the forum or resident thereof; or perform some

2  act by which he purposefully avails himself of the privilege of conducting activities in the forum,

3  thereby invoking the benefits and protections of its laws; (2) the claim must be one with arises out

4  of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must

5  comport with fair play and substantial justice, i.e., it must be reasonable." *CollegeSource, Inc. v.*

6  *AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011); *see also Schwarzenegger v. Fred Martin*

7  *Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2003).

8       Once Plaintiffs satisfy the first two prongs, the burden shifts to BMCC to set forth a

9  "compelling case" that the exercise of jurisdiction would not be reasonable. *Id; see also Burger*

10  *King Corp. v. Rudzewicz*, 471 U.S. 462, 476-478 (1985).  Moreover, the Ninth Circuit has

11  adopted a flexible approach that allows Plaintiffs to make a "lesser showing of minimum contacts

12  'if considerations of reasonableness dictate.'"  *Ochoa v. J.B. Martin & Sons Farms*, 287 F.3d

13  1182, 1188, fn. 2 (9th Cir. 2002).

14       Here, the relevant forum for the Court's minimum contacts analysis is the United States.

15  *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1415-1416 (9th Cir. 1989) (where statute

16  authorizes nationwide service of process, national contacts analysis is appropriate).

17      **A.**    **BMCC Purposefully Directed Its Activities at the United States**

18       Although the first prong refers to both purposeful availment and purposeful direction, in

19  cases involving tortious conduct the Ninth Circuit most often employs a purposeful direction

20  analysis.  *CollegeSource*, 653 F.3d at 1076; *Schwarzenegger*, 374 F.3d at 802.  Also known as the

21  "effects test", the Court's analysis focuses "on the forum in which the defendant's actions were

22  felt, whether or not the actions themselves occurred within the forum." *Yahoo Inc. v. La Ligue*

23  *Contre le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc).  Thus, Courts will find

24  jurisdiction if the defendant allegedly "(1) committed an intentional act, (2) expressly aimed at

25  the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

26  state."  *CollegeSource*, 653 F.3d at 1077 (citation and quotations omitted).

27      *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 U.S. Dist. LEXIS 131809 (N.D. Cal.

28  Nov. 9, 2011), which involved an alleged conspiracy to price-fix TFT-LCD panels sold within the

United States, is illustrative.  Like BMCC, Mitsui Taiwan moved to dismiss for lack of personal jurisdiction and submitted evidence that it was headquartered in and organized under the laws of Taiwan, had no presence in the United States, never sold or distributed TFT-LCD panels in the United States, never billed or invoiced, negotiated, received revenue, shipped, or otherwise entered into any agreements for the sale or distribution of TFT-LCD panels or products in the United States, and never had any meetings or discussions with any other defendant or alleged coconspirator in the United States.  *Id.* at *8-9.

Despite this evidence, the court held that jurisdiction existed over Mitsui Taiwan.  Citing various documents submitted by the plaintiff, the Court found that Mitsui Taiwan had worked with other affiliated Mitsui entities – i.e., Mitsui USA – to fix the price of TFT-LCD panels sold within the United States.  Because Mitsui Taiwan's conspiratorial activities were expressly targeted at the United States, its activities were sufficient to satisfy the "purposeful direction" prong of the specific jurisdiction analysis.  *Id.* at *11-15.

The Court should find the same here based on the uncontroverted allegations of the complaints alone.  *See Brayton Purcell*, 606 F.3d at 1127 (noting that uncontroverted allegations in a plaintiff's complaint must be taken as true on a motion to dismiss); *Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (same).  While BMCC argues that Panasonic was ultimately responsible for selling CPTs to the United States, BMCC's artful declaration does not deny that BMCC participated in glass meetings, conspired with Panasonic and its affiliates to fix the price of CRTs, and did so to benefit from their inclusion in CRT Products sold within the United States.  *See* Best Buy FAC ¶¶ 14, 44, 116-130, 146, 160; Tech Data FAC ¶¶ 15, 46, 121-134, 152, 167; Target SAC ¶¶ 14, 38, 109-124, 140, 154.

Furthermore, the evidence and all reasonable inferences drawn from it support these allegations.  The evidence demonstrates that products containing BMCC's CRTs were sold throughout the United States and that these sales were purposeful.  Thus, BMCC participated in a global conspiracy to fix the prices of CRTs aimed at the United States.  Among other things, the evidence shows that:

- ████████████████████████████████████

60736574.1

BEST BUY, TARGET, AND TECH DATA'S
CONSOLIDATED OPPOSITION TO BMCC'S
MOTION TO DISMISS

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    ███████████████████████████████████████ (*see* Loh

2    Decl. Exs. E[7]-G, H, I, K, O, L, M, N, O, P, Q, R-Z, BB);

3    •   ████████████████████████████████████

4    ███████ (*Id.*, Exs. H, I, L, M, N, O, BB);

5    •   ███████████████████████████████████████

6    ████████████

7    ████████ (*Id.*, Exs. B, L, M, N, O, BB);

8    •   ████████████████████████████████████████

9    ███████████ (*Id.*, Exs. B, L, M, N, O, P, Q, BB);

10   ████████████████████████████████████████

11   •   ███████████████████████████████████████

12   █████ (*Id.*, Exs. R-Z);

13   •   ██████████████████████████████████████

14   ██████████████████████

15   ████████ (*Id.*, Exs. J, K, AA); and

16   •   █████████████████████████████████ (*Id.*, Exs. B at

17   232:25-233:14, Ex. M, BB; *see also* Kinoshita Decl. ¶ 23).

18   In short, BMCC directed its activities at the United States and intended to impact the

19   market for CRT products within it.  These facts establish purposeful direction.  *In re TFT-LCD*

20   *(Flat Panel) Antitrust Litig.*, 2011 U.S. Dist. LEXIS 131809 at *13-15; *see also Learjet, Inc. v.*

21   *Oneok, Inc. (In re W. States Wholesale Natural Gas Antitrust Litig.)*, 715 F.3d 716, 742-745 (9th

22   Cir. 2013) (finding allegations of anticompetitive behavior directed at forum sufficient on their

23   own to satisfy purposeful direction); *Electrograph Sys., Inc. v. Epson Imaging Devices Corp. (In*

24   *re TFT-LCD (Flat Panel) Antitrust Litig.)*, 2012 U.S. Dist. LEXIS 12063 at *39-41 (N.D. Cal.

25   Feb. 1, 2012) (finding evidence plaintiff directed anticompetitive conduct at American company

26   sufficient to establish personal jurisdiction); *In re Plasma-Derivative Protein Therapies Antitrust*

27   _____

28   [7] For Exhibit E, see pages 29, 38, 42, 44, 45, 47, 54, 66, 68, 70, 72, 75, 76, 78, 80, 81, 82, 83, 84, 85.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

*Litig.*, 764 F. Supp. 2d 991, 1004 (N.D. Ill. 2011) (denying motion to dismiss for lack of person

jurisdiction where evidence did not contradict allegations in complaint that defendant participated

in antitrust conspiracy directed at controlling the supply of plasma therapies in the United States);

*Olenicoff v. UBS AG*, 2010 U.S. Dist. LEXIS 144474 at \*30 (C.D. Cal. Mar. 16, 2010) (finding

personal jurisdiction where defendants did not provide declarations disproving all activities

related to directing the conspiracy at Plaintiffs in the United States); *Vehimax Int'l, LLC v. Jui Li

Enter. Co.*, 2010 U.S. Dist. LEXIS 42801 at \*12-13 (C.D. Cal. Mar. 16, 2010) (noting alleged

anticompetitive conduct directed at persons residing or doing business throughout the United

States was sufficient to find personal jurisdiction); *Williamson v. Am. Mastiff Breeders Council*,

2009 U.S. Dist. LEXIS 53974 at \*19 (D. Nev. Mar. 6, 2009) ("Exercising personal jurisdiction

over [defendants] seems appropriate here because they purposefully directed their conspiracy

toward the forum state."); *In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*, 2004 U.S. Dist.

LEXIS 29586 at \*25 (D.N.J. Oct. 26, 2004) ("Plaintiffs' allegation that [defendant] intentionally

participated in an international conspiracy that directed its wrongful activity at residents of the

United States is sufficient to confer specific personal jurisdiction over [defendant].").

Nothing in BMCC's motion changes this result.  BMCC's reliance on *In re Dynamic

Random Access Memory (DRAM) Antitrust Litigation*, for example, is misplaced.  *See* Mot. at

15:20-16:11.  There, the *DRAM* plaintiffs failed to "offer any evidence that defendants knew that

DRAM products related to them would reach the forum states …."  *See* 2005 U.S. Dist. LEXIS

30299 at \*21 (N.D. Cal. Nov. 7, 2005).  Also, the *DRAM* plaintiffs failed to allege defendants'

conspiratorial acts were targeted towards plaintiffs whom defendants knew to be residents of the

forum.  *Id.* at \*20.

In stark contrast to *DRAM*, Plaintiffs here expressly allege that BMCC participated in the

conspiracy; that the conspiracy's purpose and effect was to fix, raise, stabilize, and maintain the

prices for CRTs; and that the conspiracy was aimed at the United States.  *See* Best Buy FAC ¶¶ 1,

4, 7, 13, 14, 44, 120, 146; Tech Data FAC ¶¶ 1, 4, 7, 14, 15, 46, 125, 152; Target SAC ¶¶ 1, 3, 6,

13, 14, 38, 113, 140.  Moreover, and as discussed above, the evidence demonstrates that BMCC

purposefully directed its anticompetitive conduct at the United States market.  *DRAM* is thus

17

inapposite. *See, e.g., Electrograph*, 2012 U.S. Dist. LEXIS 12063 at *40 (declining to follow *DRAM* due to lack of evidence on purposeful direction).

BMCC's other cited cases - *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580 (M.D. Pa. 2009) and *Patent Incentives, Inc. v. Seiko Epson Corp.*, 1988 U.S. Dist. LEXIS 9933 (D.N.J. Sept. 6, 1988) – are also inapposite. *See* Mot. at 15:13-16. From the outset, the Court should disregard *Chocolate* because, unlike here, the *Chocolate* court did not employ either the effects test or stream of commerce theory to analyze whether personal jurisdiction existed.[8] 674 F. Supp. 2d at 596 fn. 23 (noting "plaintiffs no longer advocate for jurisdiction under stream-of-commerce and Calder principles"). Moreover, both *Chocolate* and *Patent Incentives* are inapposite because, in those cases, there was no evidence that the defendants directed their anticompetitive conduct at consumers in the United States. *Id.* at 604 fn. 34; *Patent Incentives*, 1988 U.S. Dist. LEXIS at *21-22.

## B.    Jurisdiction also exists based on BMCC's purposeful availment

As an alternative method of analyzing purposeful availment, "where a foreign defendant has designed or manufactured a product that is then sold by another in the domestic market, Courts have employed a 'stream of commerce' metaphor to determine whether exercise of jurisdiction is proper." *Monje v. Spin Master Inc.*, 2013 U.S. Dist. LEXIS 75330 at *12 (D. Ariz. May 29, 2013). In the Ninth Circuit, "[t]he placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Id.* (citing *Holland Am. Line Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450, 459 (9th Cir. 2007)). As to what that something more is, the Supreme Court's concurring opinion[9] in *J. McIntyre Machinery, Ltd. v. Nicastro* suggests that taking specific steps to deliver goods in the stream of commerce "with the expectation that they will be purchased" by residents of the forum is sufficient, so long as the goods are part of the "regular course" of sales. 131 S. Ct. 2780, 2792 (2011).

---

[8] The *Chocolate* court employed a quid-pro-quo analysis to determine personal jurisdiction. 674 F. Supp. 2d at 604, fn. 64.

[9] "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation marks omitted).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   Here, the stream of commerce theory applies because BMCC admits that CRTs it

2   manufactured made their way to the United States.  *See* Kinoshita Decl. ¶ 23; *see also DRAM.*,

3   2005 U.S. Dist. LEXIS 30299 at *20-21 (observing that stream of commerce theory applies to

4   antitrust case where defendant knows that its product will reach the forum state).  The question

5   becomes then, whether BMCC has taken additional steps to subject it to jurisdiction in the United

6   States.  It has.

7   As set forth above, the evidence and uncontroverted allegations of the Complaints

8   demonstrate that BMCC worked with Panasonic and its affiliates to specifically fix the price of

9   CRTS sold in the United States and, therefore, BMCC expected and intended for its CRTs to be

10  sold in the United States as part of its regular course of business.  *See* Loh Decl. Exs. A-CC.

11  Also, given that BMCC was the second largest manufacturer of CRTs in China at the time of the

12  conspiracy, and that the United States was the largest market for CRT televisions and computer

13  monitors in the world, the reasonable inference is that hundreds of thousands of CRTs

14  manufactured by BMCC were sold throughout the United States during the conspiracy period.

15  Indeed, one expert has opined that millions of dollars' worth of CRT products containing

16  BMCC's CRTs were sold in California alone during the conspiracy period.  *See* Loh Decl Ex.

17  AA.  Based on these facts, the Court should also find that BMCC purposefully availed itself to the

18  United States under a stream of commerce theory.

19  **C.     This Action Arises Out Of and Relates to BMCC's Conduct**

20  In determining whether Plaintiffs' action arises out of and relates to BMCC's contacts with

21  the forum, the Ninth Circuit relies on a "but for" test.  *See Ballard*, 65 F.3d at 1500; *Learjet*, 715

22  F.3d at 742 ("This court has referred to the second prong of the specific jurisdiction test as a 'but

23  for' test."); *Fireman's Fund Ins. Co. v. National Bank of Coops.*, 103 F.3d 888, 894 (9th Cir.

24  1996) (equating "arising out of" requirement with "but for" test).

25  Here, Plaintiffs easily satisfy the second prong.  But for BMCC's anticompetitive conduct,

26  Plaintiffs would not have sustained any damage.  As such, the Court should find that Plaintiffs

27  meet the second prong.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 U.S. Dist. LEXIS

28  131809 at *15 (finding plaintiff's injury directly related to defendant's conspiratorial activities).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**D.    BMCC Fails to Prove That the Exercise of Jurisdiction Over It Is Unreasonable**

BMCC fails to present a "compelling case that the exercise of jurisdiction would not be reasonable." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).  In determining whether it would be reasonable to exercise jurisdiction, Courts generally look to seven factors: (1) the extent of the defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Fiore v. Walden*, 688 F.3d 558, 582-583 (9th Cir. 2012).  As set forth below, all of these factors favor a finding that it would be reasonable to exercise personal jurisdiction over BMCC.

As to the first factor, BMCC argues that the extent of its interjection is minimal because the allegations set forth in Plaintiffs' complaints are general and the Kinoshita declaration shows that BMCC did not have minimum contacts with the United States.  *See* Mot. at 20:1-3.  Because the allegations and evidence show otherwise as set forth above, the first factor weighs heavily in favor of jurisdiction.

Second, the burden on BMCC is small.  The Ninth Circuit has explained that "the advent of modern transportation certainly has made the burden of defending in a foreign forum more palatable." *Ballard v. Savage*, 65 F.3d 1495, 1501 (9th Cir. 1995) (citation and quotation omitted).  Moreover, BMCC's counsel has already litigated this action for more than five years, appearing numerous times on behalf of BMCC, accepting service of process, filing motions to dismiss, and answering complaints, further weighing in favor of reasonableness.  *See* Dkt. Nos. 332, 372, 400, 463, 479, 485, 546, 551, 555, 614, 618, 667, 677, 678, 780, 813, 858, 936, 975, and 1043; *see also Dias v. Bogin*, 1994 U.S. Dist. LEXIS 7447 at *4 (E.D. Pa. June 7, 1994) ("Once a defendant appears, he must proceed with reasonable dispatch to contest *in personam* jurisdiction."); *Washington v. Baker Petrolite Corp.*, 2010 U.S. Dist. LEXIS 97037 at *10 (E.D. La. Aug. 23, 2010) (fact that defendant had participated in litigation in the state weighed in favor of finding that forum was reasonable).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Third, the effect of conflict with the sovereignty of China weighs in favor of jurisdiction. As the Ninth Circuit has observed, conflict with the sovereignty of the defendant's state "is not dispositive because, if given controlling weight, it would always prevent suit against a foreign national in a United States court." *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 926 (9th Cir. 2011) (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984). Courts applying this factor analyze "the presence or absence of connections to the United States …." *Id*; *DFSB Kollective Co., Ltd. v. Bing Yang*, 2013 U.S. Dist. LEXIS 46096 at *25 (N.D. Cal. Mar. 28, 2013) (same). Given the evidence presented above, including BMCC's targeting of the United States because it was the largest CRT market in the world, BMCC "manifested an intent to serve and to benefit from the United States market." *Bauman*, 644 F.3d at 926. As such, this Court will not violate China's sovereignty by exercising jurisdiction here. *Id.* at 926-927.

Fourth, the United States has a significant interest in adjudicating the dispute. BMCC's conduct was directed at the United States and harmed corporations within it, including Plaintiffs. As such, the United States has a "manifest interest" in providing Plaintiffs with an effective means of redress. *Rudzewicz*, 471 U.S. at 473.

Fifth and sixth, the Northern District of California will be the most efficient forum and is critical to affording Plaintiffs convenient and efficient relief. This Court has already presided over this litigation for several years and is intimately familiar with the facts and issues that will need to be addressed. In addition, most of the evidence and witnesses are located in the United States as compared to China. *Bauman*, 644 F.3d at 927-928 (noting that courts analyze this factor by comparing alternative forums and that, among other things, courts look to where the witnesses and evidence are located).

Seventh, the existence of an alternative forum weighs in favor of exercising jurisdiction. An adequate alternative forum does not exist if the statute of limitations bars the bringing of a case in that forum. *Bauman,* 644 F.3d at 928-929. In China, the longest applicable statute of limitations for civil suits is two years. *In re World War II Era Japanese Forced Labor Litig.*, 164 F. Supp. 2d 1160, 1182 (N.D. Cal. 2001). Because the relevant period for this action ends in 2007, the statute of limitations would bar suit in China and, therefore, China is not an adequate

1  forum. *See* Best Buy FAC ¶ 1; Tech Data FAC ¶ 1; Target SAC ¶ 1.

2      In short, BMCC has not and cannot establish a "compelling case" that the exercise of

3  jurisdiction over it would be unreasonable.

4  **VII.  THE COURT SHOULD PERMIT PLAINTIFFS TO CONDUCT JURISDICTIONAL
       DISCOVERY IF IT FINDS INSUFFICIENT EVIDENCE OF BMCC'S MINIMUM
5       CONTACTS WITH THE UNITED STATES**

6      Plaintiffs submit that BMCC's motion can and should be denied based upon the record

7  before the Court.  Should the Court not agree that jurisdiction is appropriate as a matter of law,

8  Plaintiffs respectfully request that they be permitted to conduct jurisdictional discovery. Indeed,

9  "discovery should ordinarily be granted where pertinent facts bearing on the question of

10  jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."

11  *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (citing *Butcher's Union Local*

12  *No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986).

13  **VIII. BMCC HAS WAIVED ITS SERVICE OF PROCESS DEFENSE**

14      Like personal jurisdiction, insufficient service of process may be waived by omitting it in a

15  Rule 12(b) motion or by actively participating in litigation.  *See, e.g., Schnabel v. Lui*, 302 F.3d at

16  1033 (finding that, under Rule 12(h)(1), defendant waived its lack of personal jurisdiction and

17  insufficiency of service of process defenses by failing to raise them in its first motion under Rule

18  12(b)); *In re Polyester Staple Antitrust Litig.*, 2008 U.S. Dist. LEXIS 43865 at *77-78 (finding

19  waivable Rule 12 defense waived where defendants participated in other actions within the

20  MDL); *see also* Fed. R. Civ. Proc. 12(h) (insufficient service of process is waivable defense).

21      Here, BMCC filed multiple Rule 12(b) motions in this MDL, but none of them contained

22  any argument that service of process was ineffective.  *See* Dkt. Nos. 463, 479, 485, 546, 551, and

23  555.  In fact, BMCC previously stipulated to accepting service of process.  *See* Dkt. 936.  Also, as

24  set forth above, BMCC has actively litigated this action for more than five years.  Accordingly,

25  BMCC has waived an insufficient service of process defense.

26  **IX.  THIS COURT HAS ALREADY RULED THAT PLAINTIFFS' SERVICE ON
       BMCC'S COUNSEL WAS PROPER**
27

28      This Court has repeatedly granted Rule 4 motions in this MDL, including Plaintiffs' April

*Left margin:* ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

22

BEST BUY, TARGET, AND TECH DATA'S
CONSOLIDATED OPPOSITION TO BMCC'S
MOTION TO DISMISS

1   10, 2012 Rule 4 motion to effectuate service on BMCC through its United States counsel,

2   Freshfields (the same counsel that has been representing BMCC in this litigation for over five

3   years).  *See* Dkt. Nos. 1147, 1241.  Prior to granting Plaintiffs' Rule 4 motion, on September 3,

4   2008, this Court granted a similar Rule 4 motion brought by the IPPs.  *See* Dkt. Nos. 344, 374.

5          BMCC's motion repeats arguments already considered and rejected by the Court across this

6   MDL and in similar cases.  *See* Dkt. Nos. 1241, 374.  In the LCD litigation, for instance, Judge

7   Illston issued orders granting motions to serve defendants through their United States counsel

8   pursuant to Rule 4 on twenty-one occasions.  *See* Dkt Nos. 725, 1309, 1657, 1779, 2109, 2532,

9   2539, 2584, 2747, 2748, 2825, 3079, 3217, 3345, 3394, 3443, 3654, 3655, 4785, 4797, and 4798.

10         The Court should summarily reject BMCC's arguments here.  As the Court correctly noted

11  in granting Plaintiffs' Rule 4 motion in these opt-out cases:

12              "Rule 4(f) of the Federal Rules of Civil Procedure sets forth the
               means for the service of process on a defendant in a foreign
13              country.  Subsection 4(f)(3) provides for services 'by other means
               not prohibited by international agreement as the Court orders.'
14              That procedure does not require exhaustion of the other alternatives
               set forth in Rule 4(f), but is itself an independent means for service
15              of process.

16              That method of service has already been used in the CRT cases.  On
               September 3, 2008, this Court granted a motion by the indirect
17              purchaser plaintiffs to serve process on two foreign corporations
               under rule 4(f)(3).  [Citation omitted].  The only difference between
18              that order and the present motions is that the defendants in the prior
               motions had United States subsidiaries where process could be
19              served.  However, that distinction is not material here, because Rule
               4(f)(3) does not <u>require</u> service on a subsidiary, but only 'by …
20              means not prohibited by international agreement.'

21              The objective of the rule is to require a process by which the
               defendant gets actual notice of the claim against it, and the
22              opportunity to be heard.  *Rio Properties*, 284 F.3d 1007 at 1016
               (9th Cir. 2002).  Numerous cases have authorized the service of
23              process on foreign defendants by serving their domestic counsel;
               see cases cited in the motion of the State of Florida, pp. 5 and 6.
24
                The only response to the motion by BMCC is a letter dated May 1,
25              2012 from the law firm of Freshfields, Bruckhaus, Deringer U.S.
               LLP of Washington D.C.  Counsel advises that they have 'not been
26              instructed to represent BMCC in the direct action cases or in the
               actions brought by the state attorneys general,' and that BMCC
27              does not have U.S. subsidiaries.  However, it is apparent from the
               record of these CRT cases that the law firm has appeared for
28              BMCC in the CRT litigation, even though not in the actions

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

brought by the <u>direct</u> action plaintiffs or the state attorneys general. But BMCC has already appeared in this <u>group</u> of cases and has been represented by the Freshfields firm.  It therefore appears certain that if process is now served on Freshfields, Freshfields will notify BMCC of that fact, and BMCC will then have actual knowledge of the claims brought against it by these additional plaintiffs.  It should also be noted that BMCC has previously accepted service of the action by the <u>indirect</u> plaintiffs in this case.

***

The Special Master therefore recommends that the Court issue an order authorizing the direct action plaintiffs to serve … Beijing Matsushita Color CRT Company, Ltd. through their local counsel … pursuant to Federal Rule of Civil Procedure 4(f)(3)."

*See* Dkt. 1241 (original emphasis).[10]

Likewise, this Court has already considered and rejected BMCC's argument that because China is a signatory to the Hague Convention, service under Rule 4 is preempted.  As this Court previously explained, the "Hague Convention applies only when transmittal abroad is required." *See* Dkt. 374.  Because BMCC has "domestic counsel, transmittal abroad for service is not required.  The Hague Convention therefore does not prohibit service on [BMCC] under Rule 4(f)(3)."  *Id.*

For these reasons, BMCC's motion pertaining to the propriety of service should be denied.

## X.    CONCLUSION

For all the foregoing reasons, BMCC's motion to dismiss should be denied.

Dated:  January 17, 2014

Respectfully submitted,

By:   */s/ David Martinez*

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
David Martinez, Bar No. 193183
dmartinez@rkmc.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone: (310) 552-0130
Facsimile:  (310) 229-5800

*Attorneys for Plaintiffs Best Buy Co., Inc.; Best Buy Purchasing LLC; Best Buy Enterprise Services, Inc.; Best Buy Stores, L.P.; Bestbuy.com,  L.L.C.; and Magnolia Hi-Fi, LLC*

---

[10] The Court adopted the Special Master's Report and Recommendations as an Order of the Court.  *See* Dkt. 1241.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:   */s/ Astor Heaven*

**CROWELL & MORING LLP**
Astor Heaven (Admitted *Pro Hac Vice*)
aheaven@crowell.com
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile:  (202) 628-5116

*Attorneys for Plaintiff Target Corp.*

By:   */s/ Scott N. Wagner*

**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
Scott N. Wagner (Admitted *Pro Hac Vice*)
swagner@bilzin.com
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone: (305) 374-7580
Facsimile:  (305) 374-7593

*Attorneys for Plaintiffs Tech Data Corporation and Tech Data Product Management, Inc.*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

60736574.1

BEST BUY, TARGET, AND TECH DATA'S
CONSOLIDATED OPPOSITION TO BMCC'S
MOTION TO DISMISS