# EXHIBIT 7

1

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7             FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   IN RE: CATHODE RAY TUBE (CRT)      )  MDL No. 1917
    ANTITRUST LITIGATION               )
10                                      )  Case No. C-07-5944-SC
    _____)
11                                      )  ORDER ADOPTING IN PART AND
    This Order Relates To:             )  MODIFYING IN PART SPECIAL
12                                      )  MASTER'S REPORT AND
    ALL DIRECT PURCHASER ACTIONS       )  RECOMMENDATION ON
13                                      )  DEFENDANTS' MOTION TO
                                        )  DISMISS THE DIRECT ACTION
14                                      )  PLAINTIFFS' COMPLAINTS
                                        )
15                                      )
    _____)
16

17

18  **I.   INTRODUCTION**

19       Now before the Court are the Direct Action Plaintiffs'

20  ("DAPs") and Defendants'[1] competing objections to and motions to

21  adopt the Special Master's May 2, 2013 Report and Recommendation on

22  Defendants' Motion to Dismiss the DAP Complaints.[2]  The matter is

23  _____

24  [1] The full list of DAPs and Defendants in this case is excessively
    long.  Where necessary in this Order, the Court will address the
25  arguments of particular groups of Defendants by name.

26  [2] The complaints at issue are: Stoebner v. LG Electronics, Inc.,
    No. 11-cv-05381 (N.D. Cal.) [ECF No. 1](Nov. 7, 2011) ("Polaroid
27  Compl."); Target Corp. v. Chunghwa Picture Tubes, Ltd., No. 11-cv-
    05514 (N.D. Cal.) [ECF No. 9] (Jan. 6, 2012) ("Target Am. Compl.");
28  P.C. Richard & Son Long Island Corp. v. Hitachi, Ltd., No. 12-cv-
    02648 (N.D. Cal.) [ECF No. 1] (Nov. 14, 2011) ("P.C.
    Richard Compl."); Schultze Agency Servs., LLC v. Hitachi, Ltd., No.

fully briefed,[3] and the Court finds it appropriate for decision without oral argument. Civ. L.R. 7-1(b). As explained below, the Court ADOPTS in part and MODIFIES in part the Special Master's Report and Recommendation, and accordingly GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss the DAP Complaints.

## II.   BACKGROUND

The DAPs allege that Defendants, each a manufacturer of cathode-ray tubes ("CRTs"), conspired to fix prices for CRTs. The DAPs do not allege that Defendants conspired to fix the prices of products containing CRTs ("CRT Products").

Each DAP alleges that it bought at least one CRT product from a Defendant or an entity owned or operated by a Defendant. The DAPs, despite their moniker, are classified as indirect purchasers under antitrust law -- not direct purchasers.

---

12-cv-02649 (N.D. Cal.) [ECF No. 1] (Nov. 14, 2011) ("Tweeter Compl."); CompuCom Systems, Inc. v. Hitachi, Ltd., No. 11-cv-06396 (N.D. Cal.) [ECF No. 1] (Nov. 14, 2011) ("CompuCom Compl."); Interbond Corp. of Am. v. Hitachi, Ltd., No. 11-cv-06275 (N.D. Cal.) [ECF No. 1] (Nov. 14, 2011) ("Interbond Compl."); Costco Wholesale Corp. v. Hitachi, Ltd., No. 11-cv-06397 (N.D. Cal.) [ECF No. 1] (Nov. 14, 2011) ("Costco Compl."); Siegel v. Hitachi, Ltd., No. 11-cv-05502 (N.D. Cal.) [ECF No. 1] (Nov. 14, 2011) ("Circuit City Compl."); Office Depot, Inc. v. Hitachi, Ltd., No. 11-cv-06276 (N.D. Cal.) [ECF No. 1] (Nov. 14, 2011) ("Office Depot Compl."); Best Buy Co., Inc. v. Hitachi, Ltd., No. 11-cv-05513 (N.D. Cal.) [ECF No. 1] (Nov. 14, 2011) ("Best Buy Compl."); and Electrograph Systems, Inc. v. Hitachi, Ltd., No. 11-cv-01656 (N.D. Cal.) [ECF No. 5] (Mar. 10, 2011) ("Electrograph Am. Compl.").

[3] ECF Nos. 1676 ("Defs.' Statement"), 1704 ("DAP Obj'ns: Philips & LG"), 1706 ("Defs.' Joint Obj'ns"), 1708 ("DAP Obj'ns: Joint"), 1749 ("DAP Mot. to Adopt"), 1750 ("LG Joinder"), 1752 ("Defs.' Joint Mot. to Adopt"), 1755 ("Philips Mot. to Adopt"), 1799 ("Defs.' Joint Reply"), 1800 ("DAP Reply: Philips & LG"), 1801 ("DAP Reply: Joint"). The underlying motions are, of course, fully briefed as well. ECF Nos. 1317 ("Defs.' MTD"), 1319 ("Philips MTD"), 1320 ("LG MTD Joinder"), 1384 ("Opp'n to Defs. MTD"), 1387 ("Opp'n to Philips MTD"), 1419 ("Reply ISO Philips MTD"), 1420 ("LG Joinder Re: Philips Reply"), 1422 ("Joint Reply ISO Defs.' MTD").

In August 2012, Defendants jointly filed a motion to dismiss and a motion for judgment on the pleadings as to some of the DAP complaints. Separately, Koninklijke Philips Electronics N.V. and Philips Electronics North America Corp. (collectively "Philips ") filed a similar motion, joined by LG Electronics, Inc. and LG Electronics USA, Inc. (collectively ("LG").

On February 15, 2013, the motions to dismiss came before this case's Special Master for oral argument. See ECF No. 1707 ("J.A.") Ex. 14 ("Tr."). The Special Master issued his Report and Recommendation in this matter on May 2, which makes numerous conclusions and recommendations that are summarized below. ECF No. 1664 ("R&R"). The parties then filed lengthy objections and motions to adopt parts of the R&R.[4] Now they ask the Court to rule on those requests.

## III. LEGAL STANDARD

### A. The Court's Review of the Special Master's Conclusions

The Court reviews the Special Master's conclusions of law de novo. ECF No. 302 ("Order Appointing Special Master").

### B. Motions to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

---

[4] The Court commends the parties' and the Special Master's cooperation and coordination on what all can agree has been a lengthy, complicated matter.

3

1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV. **DISCUSSION**

### A. **Federal Claims**

Each DAP asserts causes of action under the federal antitrust laws. Federal antitrust plaintiffs normally have standing only if they are direct purchasers of the allegedly price-fixed goods. <u>Illinois Brick Co. v. Illinois</u>, 431 U.S. 720 (1977). Indirect purchasers generally do not have federal antitrust standing. <u>See</u> <u>Arizona v. Shamrock Foods Co.</u>, 729 F.2d 1208, 1211-12 (9th Cir. 1984). However, the Court held in Defendants' motion for summary judgment against the Direct Purchaser Plaintiffs ("DPP") class that indirect purchasers may have federal antitrust standing under the "ownership or control" exception by establishing that they were

4

harmed by a price-fixing conspiracy between a manufacturer and an entity it owns or controls.  See In re CRT Antitrust Litig., 911 F. Supp. 2d 857, 868-69 (N.D. Cal. 2012) (citing Royal Printing Co. v. Kimberly Clark Corp., 621 F.2d 323 (9th Cir. 1980)).

The parties do not dispute that the Court's holding on the ownership or control exception remains law of the case, thereby compelling denial of Defendants' motion to dismiss the DAPs' federal claims.  Defendants seek to preserve their objections to that holding for appeal, and to apply the Court's holdings denying application of two other exceptions to the Illinois Brick rule, the "co-conspirator" and "cost-plus" exceptions.  The Special Master accordingly recommended that the Court grant Defendants' motion to the extent that it challenges the application of those two exceptions, and deny the motion to the extent that it challenges the DAPs' right to proceed under the ownership or control exception.  R&R at 5.  The Court finds the Special Master's conclusions on this matter appropriate and ADOPTS the Special Master's recommendations.  Id.  Defendants' motion is GRANTED to the extent that it challenges the DAPs' right to proceed under the cost-plus or co-conspirator exceptions to Illinois Brick, and DENIED to the extent that it challenges the DAPs' right to proceed under the ownership or control exception.

This Order expresses no view as to whether the DAPs will be able to prove what is needed to establish the ownership or control exception.  The Court also makes no ruling on the adequacy of the DAPs' allegations of ownership and control.

///

///

**United States District Court**
For the Northern District of California

**B.**   **State Law Claims**

   **i.**   **Joint Motion to Dismiss Based on Statutes of**
            **Limitation**

Nine of the twelve DAP Complaints were filed on approximately November 14, 2011.  R&R at 6.  They allege violations of seventeen states' laws.  Id.  Fourteen of those states have four-year statutes of limitations on the DAPs' claims, and two have three-year statutes of limitations.  Id.  Accordingly, as the Special Master found, any claim based on Defendants' actions before November 14, 2007, is prima facie barred by those states' statutes of limitations.  Id.  The parties disputed whether those statutes of limitations should be tolled because of the tolling doctrines of either fraudulent concealment or so-called "American Pipe" or cross-jurisdictional tolling.  Id.  Defendants assert that fraudulent concealment could not apply to toll the statutes of limitation, because the DAPs had actual notice (or at least inquiry notice) of the factual basis for their claims by November 8, 2007 at the earliest and November 14, 2007 at the latest.  Id.  The Special Master found that Defendants' notice argument turned on disputed issues of fact, not law.  Id.  He therefore recommended that the Court deny Defendants' motion on this point as inappropriate under Rule 12(b)(6).  Id.  The Special Master did not reach the issue of American Pipe tolling.  Id.

Defendants object to the Special Master's recommendation, arguing that as a matter of law, the DAPs had a duty as of November 8, 2007, to inquire into whether they had claims against Defendants.  Defs.' Joint Obj'ns at 19-21.  On that day, as the European Commission issued a press release about certain Defendants

being raided in connection with a worldwide antitrust investigation of CRT pricing. Id. at 19. According to Defendants, these raids would have raised red flags impelling any reasonably diligent person to investigate and act on possible antitrust claims. Id. Indeed, more than thirty complaints were filed within six months of those 2007 raids, and many specifically identify the raids as triggering notice. Id. DAPs argue that the November 8, 2007 press release was insufficient to put them on notice, because it did not (1) "identify which category of illegal conduct it was investigating"; (2) establish that there was a violation; (3) identify the companies investigated; (4) indicate whether the investigation related to products the DAPs purchased; or (5) indicate whether United States commerce was affected. DAP Mot. to Adopt at 14-15.

Defendants challenge all of these assertions, arguing that (1) the press release indicated that the investigation was part of a "cartel inquiry"; (2) the press release's language on cartels and restrictive business practices should have raised an antitrust flag; (3) DAPs themselves note that the CRT industry was dominated by just a few companies, and other plaintiffs managed to figure out who had been subject to investigation; (4) the press release clearly referred to CRTs, and DAPs were some of the world's largest CRT purchasers; and (5) DAPs alleged a global CRT market conspiracy, which would necessarily include both the European and United States markets. Defs.' Joint Reply at 10-11.

Defendants also argue that the R&R applies a higher notice standard than is necessary in the Ninth Circuit. Defs.' Joint Mot. at 20. They claim that the Ninth Circuit requires only that

1   "[w]here a plaintiff's suspicions have been or should have been

2   excited, there can be no fraudulent concealment where he could have

3   then confirmed his earlier suspicion by diligent pursuit of further

4   information," not that tolling continues until plaintiffs have

5   constructive notice and enough time to file a complaint. Id.

6   (quoting Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc., 858 F.2d 499,

7   502 (9th Cir. 1988)).

8        The Court does not find Defendants' arguments persuasive.

9   They remain reliant on disputed facts. The Court therefore finds

10  the Special Master's conclusions correct and ADOPTS them. "[I]t is

11  generally inappropriate to resolve the fact-intensive allegations

12  of fraudulent concealment at the motion to dismiss stage,

13  particularly where the proof relating to the extent of the

14  fraudulent concealment is alleged to be largely in the hands of the

15  alleged conspirators." In re Rubber Chemicals Antitrust Litig.,

16  504 F. Supp. 2d 777, 789 (N.D. Cal. 2007); see also Conmar, 858

17  F.2d at 504-05.

18       Further, the Special Master's discussion of constructive

19  notice had nothing to do with the standard of review he applied,

20  which ultimately looked to the difference between matters of fact

21  and matters of law under a Rule 12(b)(6) motion.

22       Finally, the Court finds that it need not address the issue of

23  American Pipe tolling, also called cross-jurisdictional tolling.

24  American Pipe & Construction Co. v. Utah, 414 U.S. 538, 554 (1974),

25  established that in some instances, filing a federal class action

26  tolls statutes of limitation on the individual claims of putative

27  class members, pending a decision on class certification. The

28  Special Master recommended in the R&R that it would be unnecessary

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  to consider American Pipe if the Court adopted the recommendation

2  on fraudulent concealment, since the cross-jurisdictional tolling

3  question is not dispositive and would require the Court to rule on

4  a messy array of non-binding, extra-jurisdictional case law and

5  policy arguments.  R&R at 7.  The Court agrees.  There is no reason

6  to decide as a matter of law that cross-jurisdictional tolling

7  applies in this case.

8      **ii.**        **Joint Motion to Dismiss Based on Due Process**

9      Defendants argue that subjecting them to state antitrust laws

10  would violate their right to due process, which demands significant

11  contacts between the parties or occurrences and the state whose law

12  is to be applied.  See Defs.' Joint Reply at 2-5.  The DAPs move to

13  adopt the Special Master's R&R denying Defendants' motion on this

14  point.  DAP Mot. to Adopt at 3-6.

15      At the hearing before the Special Master, the parties both

16  argued that they were applying the legal standard from Allstate

17  Insurance Co. v. Hague, 449 U.S. 302 (1981), though on the day of

18  the hearing, the Ninth Circuit was to issue an opinion on the due

19  process applicability of California antitrust law to out-of-state

20  plaintiffs.  See R&R at 9.  The Ninth Circuit did so in AT&T

21  Mobility LLC v. AU Optronics Corp., 707 F.3d 1106 (9th Cir. 2013),

22  and the Special Master ordered supplemental briefing on that case's

23  applicability to the parties' arguments.  After reviewing those

24  briefs and the record, the Special Master concluded that AT&T

25  broadened Allstate and compelled the denial of Defendants' motion

26  because application of a state's law would only violate due process

27  if the state has "no significant contact or significant aggregation

28  of contacts, creating state interests, with the parties and the

**United States District Court**
For the Northern District of California

1   occurrence or transaction."  R&R at 9 (citing AT&T, 707 F.3d at

2   1110).  Since the due process theories Defendants had articulated

3   did not rely on that relatively broad standard -- instead,

4   Defendants would have limited territorial application of state law

5   to states where the DAPs purchased CRT Products or negotiated their

6   purchase -- the Special Master recommended that Defendants' motion,

7   as framed, should be denied.  Id.

8       Defendants object to the Special Master's recommendations on

9   three grounds: (1) the R&R erroneously applied the AT&T standard to

10  the DAPs' California claims under the Cartwright Act, since the

11  DAPs provide only conclusory allegations about Defendants'

12  California-related conduct; (2) AT&T does not apply to the DAPs'

13  claims for other states' laws, since that case was limited to

14  discussion of California's Cartwright Act alone; and (3) even if

15  AT&T applied to other states' laws, the DAPs' non-California claims

16  would not satisfy the requirements of due process.  Defs.' Joint

17  Obj'ns at 9-10.  The DAPs ask the Court to adopt the R&R on this

18  point.  DAP Mot. to Adopt at 3-5.

19      AT&T addressed what factual allegations district courts should

20  consider in determining whether due process limits the application

21  of a given state's law.  The specific question before the Ninth

22  Circuit in AT&T was whether a district court was correct to

23  consider the "relevant occurrence or transaction," for due process

24  purposes in an antitrust case under California law, as being

25  limited to the price-fixed good's place of purchase.  AT&T, 707

26  F.3d at 1109.  The district court had held that because an

27  antitrust plaintiff's purchase of the allegedly price-fixed good

28  occurred outside California, due process prevented the application

United States District Court
For the Northern District of California

1    of California law to the defendants even though some conspiratorial

2    activity had occurred in California.  Id.  The Ninth Circuit held

3    that such a narrow consideration was improper, based partly on the

4    fact that Allstate set a permissive standard for due process

5    considerations compared to the former standard that tied state

6    laws' applicability to the place of purchase.  Id. at 1113.  The

7    Ninth Circuit concluded that "anticompetitive conduct by a

8    defendant within a state that is related to a plaintiff's alleged

9    injuries and is not 'slight and casual' establishes a 'significant

10   aggregation of contacts, creating state interests, such that choice

11   of its law is neither arbitrary nor fundamentally unfair.'"  Id. at

12   1113.

13       Defendants argue that AT&T's reasoning was narrowly restricted

14   to Cartwright Act claims, based on the Ninth Circuit's specific

15   holding about the case below, but they ignore the case's broader

16   affirmation of the Allstate standard and the guidance it provides

17   to district courts.  Nothing in AT&T or Judge Illston's

18   consideration of it on remand limits AT&T's application to

19   California or the Cartwright Act.  Defendants' argument that AT&T's

20   reasoning does not apply outside California is an inaccurate

21   reading of the case, and an inaccurate statement of the law, since

22   AT&T effectively reaffirms the decades-old rule from Allstate.

23       There remains, however, the threshold question of whether

24   Defendants properly raise the theories on which they base their

25   objections to the Special Master's R&R.  Their arguments before him

26   were, again, premised on their theory that some states' antitrust

27   and consumer protection laws cannot apply to Defendants if the DAPs

28   do not allege purchases or negotiations in those particular states.

11

See R&R at 8-9.  The Special Master denied Defendants' motion on
those grounds because it relied on a theory the Ninth Circuit
expressly overruled in AT&T.  Defendants' arguments in this round
of briefing are newly raised, because Defendants did not make the
same arguments in their motion to dismiss or before the Special
Master.  However, Defendants maintain in their reply brief that the
core of their arguments before the Special Master and in these
papers is the same: "certain of the DAPs' claims must be dismissed
because they do not sufficiently allege the appropriate contacts
with the relevant states at issue."  Defs.' Joint Reply at 3.

The Court finds, in this particular case, that there is no
good reason to ignore a fully briefed argument on procedural
grounds.  Moreover, the parties' briefs before the Special Master
discuss essentially these same issues in detail.  The DAPs have
always contended that Allstate's contacts analysis has been the
right one,[5] as the Ninth Circuit affirmed in AT&T, and while
Defendants' argument has changed during this briefing round, both
sides adequately addressed the issues.  See DAP Opp'n to Defs.' MTD
at 24-25 & nn.26-28 (arguing that all of the DAPs' complaints meet
Allstate's standard).  Essentially, AT&T affirms that the Court's
due process analysis in cases like this one should proceed as it
has since Allstate's decision in 1982.  As noted above, the Court
has found that AT&T is applicable to the parties' arguments, so the
question is whether the DAPs' pleadings survive a due process
challenge.
///

[5] See, e.g., DAP Opp'n to Defs.' Mot. at 24 n.23 (confirming the
DAPs' consistent position that plaintiffs' purchasing activities
are not the only relevant contacts for due process purposes).

12

1    Accordingly, the central question in this case is whether the

2    DAPs have alleged anticompetitive conduct by Defendants within a

3    state that is related to the DAPs' alleged injuries and is not

4    "slight and casual," thereby establishing a "significant

5    aggregation of contracts, creating state interests, such that

6    choice of its law is neither arbitrary nor fundamentally unfair."

7    See AT&T, 707 F.3d at 1113 (quoting Allstate, 449 U.S. at 312-13).

8    In undertaking this analysis, the Court is to consider more than

9    just the place where an allegedly price-fixed product was

10   purchased.  See id. at 1111-12.  Defendants argue that the DAPs'

11   claims under all state laws fail to allege facts tying Defendants'

12   alleged anticompetitive conduct to any of the states under whose

13   laws the DAPs seek relief.  See Defs.' Joint Reply at 3.  According

14   to Defendants, this Court has found such pleading defects to

15   warrant dismissal in cases like this one.  Id. (citing In re TFT-

16   LCD, Nos. M 07-1827 SI, C 10-4945 SI, 2013 WL 1891367, at *4 (N.D.

17   Cal. May 6, 2013)).

18   Defendants are wrong on this point as well.  They rely on In

19   re TFT-LCD, 2013 WL 1891367, in part, to argue that the DAPs'

20   pleadings of state-specific purchases and general conspiratorial

21   activities are insufficient to tie Defendants to the states at

22   issue in this case, but that decision is factually inapposite here.

23   As noted above, the question in that case was whether plaintiffs

24   could, within the bounds of due process, bring state antitrust

25   claims against defendants who had not sold goods within a state but

26   had allegedly conducted some conspiracy-related business there.

27   See id. at *1-2.  On remand after AT&T, Judge Illston found that

28   the place of purchase alone was not dispositive: if there was no

13

United States District Court
For the Northern District of California

1  purchase within a state, other activities related to the

2  plaintiffs' injury could warrant application of that state's laws

3  so long as it would not be arbitrary or unfair.  Id. at *3-4.

4      That conclusion does not mean, however, that a purchase alone

5  is insufficient to merit application of a state's laws despite a

6  due process challenge.  Defendants' arguments on this point muddle

7  the issue.  Defendants seem to suggest that if the DAPs allege a

8  sale within a state, but do not include detailed, defendant-by-

9  defendant allegations of anticompetitive conduct in those states,

10 due process would deny claims under those states' laws.  Defs.'

11 Joint Obj'ns at 9-10.  This misses the point of AT&T, which held

12 that absence of a sale within a state did not preclude the

13 application of that state's antitrust laws if other facts

14 sufficiently tied the defendants' activities to that state.  AT&T

15 did not hold that an in-state sale alone could not satisfy due

16 process, especially when, in context, it would be proper under due

17 process to subject a defendant to the rules of that state.

18     Defendants also argue that AT&T does not apply to state laws

19 that address only the sale of price-fixed goods, but not agreements

20 or conspiracies involving those goods.  Defs.' Joint Obj'ns at 9-10

21 & n.5.  This argument fails.  Defendants provide no support for

22 their restrictive interpretations of those states' laws.  Moreover,

23 their argument relies on the proposition that AT&T only applies to

24 the Cartwright Act, which is wrong.

25     In this case, the Court finds that Defendants' direction of

26 price-fixed goods into certain states renders Defendants subject to

27 those states' antitrust and consumer protection laws.  The DAPs'

28 pleadings on this issue are somewhat bare, but not unacceptably so

Case 3:07-cv-05944-SC Document 1856 Filed 03/24/14 Page 15 of 37

1   in context.[6]  The DAPs make it clear enough, for Rule 12(b)(6)

2   purposes, that Defendants are alleged to have conspired to fix

3   prices on CRT Products and then sold those goods to businesses and

4   consumers in the various states alleged in the DAPs' complaints.

5   This is not a slight and casual connection, nor is the application

6   of those states' laws to Defendants' conduct arbitrary or unfair.

7   See Allstate, 449 U.S. at 312-13; AT&T, 703 F.3d at 1113.

8      The Court ADOPTS the Special Master's recommendation on this

9   point, as modified above, and DENIES Defendants' motion to dismiss

10   the DAPs' state law claims on due process grounds.  This does not

11   mean that future due process challenges are foreclosed, pending the

12   discovery of additional facts.

13      **iii.**     **Joint Motion to Dismiss Based on Prudential Standing**

14      Defendants argued that DAPs' state law claims failed to meet

15   the requirements of prudential standing: (1) plaintiffs must assert

16   their own legal rights and interests, not those of others'; (2)

17   courts will not adjudicate generalized grievances; and (3)

18   plaintiffs' claims must "fall within the zone of interests to be

19   protected or regulated by the statute or constitutional guarantee

20

21   [6] The DAPs' pleadings alleging sufficient contacts with the various
  states at issue in this matter, including Defendants' alleged sales

22   of products and conspiratorial activities, appear in the following
  complaints: CompuCom Compl. ¶¶ 11, 16, 18, 21, 31, 42, 47, 49, 59,

23   61-62, 67, 79, 173-76, 178, 187, 237-39, 242, 254, 256-67; Costco
  Compl. ¶¶ 12-14, 47-48, 53, 142-46; Electrograph FAC ¶¶ 16, 18-20,

24   27, 29, 36, 56, 61, 63, 73, 75, 77, 89, 189-92, 200, 251-53, 256,
  260, 266, 269, 271-72, 276-77, 280; Office Depot Compl. ¶¶ 11, 18,

25   19, 49, 61-62, 66, 78, 172-75, 177, 186, 244-46, 249; Polaroid
  Compl. ¶¶ 4, 8, 9, 11, 18, 21, 189-91, 36, 46, 47, 60, 64, 166,

26   168, 194; Target Compl. ¶¶ 14, 16-19, 21, 22, 27, 29, 32-33, 37,
  42, 49, 60, 65, 67, 77, 79-80, 85, 191-195, 203; Tweeter Compl. ¶¶

27   11, 13, 16, 22, 25, 27, 35, 40, 45, 50, 52, 62-65, 69, 79, 171,
  175-78, 180, 189; Best Buy Compl. ¶¶ 11, 13-16, 20-21, 27, 29, 37,

28   42, 47, 54-57, 61, 81, 176, 180-185, 194, 238; P.C. Richard Compl.
  ¶¶ 11, 14-15, 17-18, 21, 24, 27, 29, 37, 42, 47, 52, 54, 64-67, 71,
  81, 173, 177-80, 182, 191, 238, 246, 247, 248, 249.

**United States District Court**
For the Northern District of California

1  in question." Defs.' Joint Mot. at 21 (citing <u>Valley Forge</u>

2  <u>Christian Coll. v. Americans United for Separation of Church &</u>

3  <u>State, Inc.</u>, 454 U.S. 464, 474-75 (1982)). While the Special

4  Master found that the DAPs asserted their own legal rights and did

5  not bring generalized grievances, he made no finding as to the

6  "zone of interests" factor. R&R at 7-8. Rather, he concluded that

7  Defendants' request for dismissal was too broad and general because

8  it did not demonstrate which of the DAPs' claims, and under the

9  laws of which states, were allegedly deficient. <u>Id.</u> at 8. He

10  recommended that the Court deny Defendants' motion on this point,

11  because it would not be supported by the record and could sweep too

12  broadly.

13      Defendants object to the R&R's recommendations, arguing that

14  they specifically identified the DAPs' state law claims in Appendix

15  C to their original motion to dismiss and that those claims are

16  insufficient to establish that the DAPs purchased CRT Products in

17  the relevant states. Defs.' Joint Obj'ns at 11; Defs.' Joint MTD

18  App'x C. Specifically, Defendants argue that one group of DAPs did

19  not allege purchases of CRT Products in states where they filed

20  claims, and another asserted only conclusory or insufficient

21  allegations that they purchased CRT Products in the relevant

22  states. <u>Id.</u> at 12-16.

23      The DAPs ask the Court to adopt the R&R, arguing that

24  Defendants' arguments about the "zone of interests" are the same as

25  their due process arguments and should be dismissed for the same

26  reasons. DAP Mot. to Adopt at 7.

27      The DAPs are right. Defendants' arguments repeat their due

28  process arguments. Those arguments fail both here and there. <u>See</u>

16

1  Section IV.B.iii <u>supra</u>.  The Court finds that the DAPs' pleadings

2  satisfy the prudential standing requirements.  Defendants' motion

3  is DENIED on these grounds, and the Court ADOPTS the Special

4  Master's R&R on this point, though the Court MODIFIES the Special

5  Master's recommendation on the zone of interest.

6        **iv.**     **Joint Motion to Dismiss Based on Associated General**

7                    **Contractors**

8      Defendants move to dismiss the DAPs' claims for lack of

9  standing under California, Washington, Arizona, Illinois, and

10  Michigan law, arguing that dismissal is required under <u>Associated</u>

11  <u>General Contractors v. California State Counsel of Carpenters</u>

12  ("<u>AGC</u>"), 459 U.S. 519 (1983).  Defs.' MTD at 23-25.  The DAPs

13  concede that <u>AGC</u> applies to their California and Washington claims,

14  but they argue that <u>AGC</u> does not apply to their Arizona, Michigan,

15  and Illinois claims.  DAP Opp'n at 26.

16      <u>AGC</u> established a multi-factor test for determining whether a

17  given plaintiff is a proper party to bring a private antitrust

18  action.  459 U.S. at 535, 537-44 & n.1.  The factors are: "(1) the

19  nature of the plaintiff's alleged injury; that is, whether it was

20  the type the antitrust laws were intended to forestall; (2) the

21  directness of the injury; (3) the speculative measure of the harm;

22  (4) the risk of duplicative recovery; and (5) the complexity in

23  apportioning damages."  <u>Id.</u> at 535; <u>see also</u> <u>Lucas Auto. Eng'g,</u>

24  <u>Inc. v. Bridgestone/Firestone, Inc.</u>, 140 F.3d 1228, 1232 (9th Cir.

25  1998) (citing <u>AGC</u>).

26      Defendants contend that <u>AGC</u> applies to the DAPs' claims under

27  Arizona, Illinois, and Michigan law, and that the DAPs have not

28  satisfied the <u>AGC</u> factors for those states' claims.  Defs.' Joint

**United States District Court**
For the Northern District of California

1   Mot. to Adopt at 4-15.  The DAPs respond that AGC should not apply

2   to any of those claims.  The Special Master concluded on this point

3   that the DAPs do not participate in the market that they allege was

4   restrained, since they only pled that the CRTs themselves were

5   price-fixed, and they participated only in the CRT Products market.

6   R&R at 10.  For this reason, he found that the DAPs do not meet the

7   "antitrust injury" factor of the AGC analysis.  Id.  He therefore

8   recommended that the DAPs' allegations under the antitrust laws of

9   California, Illinois, Michigan, Arizona, and Washington be

10  dismissed with leave to amend so that the DAPs can file an amended

11  complaint adequately alleging standing under AGC.  Id. at 11.

12  Defendants now move to adopt the Special Master's recommendation,

13  and the DAPs object.

14       In their objections to the Special Master's conclusion, the

15  DAPs assert that under Ninth Circuit law, AGC is only applicable to

16  state antitrust claims when there is "clear directive" from the

17  state legislature or high court adopting AGC.  DAP Reply: Joint at

18  3 (citing In re TFT-LCD, 586 F. Supp. 2d 1109, 1120-24 (N.D. Cal.

19  2008)).  The DAPs claim that the Special Master erred in finding

20  only that "existing state law, whether it is by the highest court

21  or by an intermediate court, is the applicable authority."  Id.

22  (quoting R&R at 11) (emphasis in original).  The DAPs therefore

23  object to the Special Master's and Defendants' citations of

24  intermediate appellate and other court decisions in support of

25  AGC's application in this case -- they claim that absent a

26  statement from a state's highest authority, the Court should

27  abstain from applying AGC.  Id.  Defendants maintain that the

28  Special Master's recommendation is correct, because the five states

**United States District Court**
For the Northern District of California

at issue here have all either applied <u>AGC</u> in intermediate appellate
decisions on antitrust standing, or adopted harmonization
provisions stating that their antitrust laws were to be construed
in accordance with federal law.  Defs.' Joint Mot. to Adopt at 4-5
& nn. 1-2.

The DAPs' argument that Ninth Circuit law requires more than
an intermediate appellate case to apply <u>AGC</u> to a state claim is
based partly on the Court's decision in <u>In re CRT</u>, 738 F. Supp. 2d
at 1023.  That opinion did not stand for that proposition, and did
not analyze the same arguments the parties raise here.  The Ninth
Circuit sets forth clear guidance on this matter: on questions of
state law, federal courts are bound by that state's highest court's
decision, but if that court has not decided an issue, the federal
court is to follow relevant intermediate appellate precedent unless
the federal court finds convincing evidence that the state's
supreme court would not follow it.  <u>Id.</u> (citing <u>United Broth. of
Carpenters & Joiners of Am. Local 586 v. NLRB</u>, 540 F.3d 957, 963
(9th Cir. 2008); <u>Ryman v. Sears, Roebuck & Co.</u>, 505 F.3d 993, 994
(9th Cir. 2007); <u>Dimidowich v. Bell & Howell</u>, 803 F.2d 1473, 1483
(9th Cir. 1986)).

The DAPs alternatively claim that Defendants fail to show that
<u>AGC</u> would be applied in the state courts of Michigan, Arizona, or
Illinois.  First, they argue that the Michigan cases Defendants
cite are not published or precedentially binding.  DAP Reply: Joint
at 4-5 (citing Michigan Court Rule 7.215(C)).  Second, they contend
that Arizona's Supreme Court has held that <u>AGC</u> is not necessary to
determine indirect purchasers' standing in state antitrust law
claims, and also that Arizona's harmonization provision is

19

permissive, not mandatory.  Id. at 5-6 (citing Bunker's Glass Co. v. Pilkington PLC, 75 P.3d 99, 102, 133 (Ariz. 2003)).  Finally, they claim that the Illinois cases Defendants cite did not involve AGC at all, and that an Illinois federal district court held AGC inapplicable under Illinois law.  Id. at 6 (citing In re Aftermarket Filters Antitrust Litig., No. 08 C 4883, 2009 WL 3754041, at *7 (N.D. Ill. Nov. 5, 2009)).

The Court is not convinced by all of the DAPs' arguments. First, while under Michigan's Court Rules an unpublished decision is not necessarily binding under the principle of stare decisis, such a decision is not worthless, especially if a higher court has not spoken.  The DAPs argue that the Court should ignore those unpublished opinions based on People v. Reid, 233 Mich. App. 457, 474 (Mich. Ct. App. 1999).  But that case states only that it is inappropriate for another Michigan court to consider an unpublished opinion (which was later overruled) substantively binding.  Id. The Court does not find this sufficient to ignore Ninth Circuit law on how the Court is to address these issues.  The Court has no conclusive evidence that the Michigan Supreme Court would overrule an intermediate appellate court's adoption of AGC, so the lower court decisions Defendants cite are the Court's best guidance now. Since that court adopted AGC, the Court sees no reason to hold that Michigan law forbids doing so.

Second, the Court finds that the Arizona Supreme Court would not apply AGC.  Bunker's Glass indicates that Arizona has chosen to provide broader protection to its citizens by allowing indirect purchasers to bring antitrust suits under Arizona state law.  75 P.3d at 110.  Further, even though the Arizona Supreme Court held

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

that while Arizona courts are free to follow more restrictive federal laws on standing, that court itself declined to do so, based largely on its understanding that the Arizona Constitution and Arizona antitrust laws were designed to allow for more standing than federal law. Id. at 102-03, 110. Therefore, even though an intermediate appellate court in Arizona opted to apply AGC standing, the Court finds that the Arizona Supreme Court would not likely follow the same course. The sparse reasoning from the trial court in Luscher v. Bayer AG, No. CV-2004-014835 (Ariz. Super. Ct. Sept. 14, 2005), is not persuasive when compared to the higher authority of Bunker's Glass. Accordingly, the DAPs who rely on Arizona law are not required to meet AGC standing requirements.

Finally, the Court finds the DAPs' arguments about Illinois law unconvincing. For example, the DAPs cite In re Aftermarket Filters as having found AGC inapplicable to claims brought under Illinois law, but that conclusion was based on the court's rejection of the defendants' argument that the two classes of purchasers participated in markets separate from the direct and indirect purchasers. 2009 WL 3754041, at *7. The court did not reject AGC because some aspect of Illinois law required doing so. And while the DAPs are right that neither of Defendants' other two cases directly apply the AGC factors, neither states that AGC is inapplicable, and both suggest that it could apply in some cases. County of Cook v. Philip Morris, Inc., 817 N.E. 2d 1039, 1045 (Ill. App. Ct. 2004), cites AGC approvingly, and O'Regan v. Arbitration Forums, Inc., 121 F.3d 1060, 1066 (7th Cir. 1997), states clearly that federal antitrust standing rules apply under the Illinois Antitrust Act. In this setting, the Court finds no convincing

1  evidence that the Illinois Supreme Court would not apply <u>AGC</u>.

2  Therefore the Special Master was correct in finding that <u>AGC</u>

3  applies to the DAPs' Illinois claims.

4      The question remains whether the DAPs meet <u>AGC</u>'s requirements.

5  The Special Master found that they failed to do so because, as

6  purchasers of CRT Products but not CRTs themselves, they were not

7  participants in the same allegedly restrained market and therefore

8  could not demonstrate injury appropriate for antitrust standing

9  under <u>AGC</u>. R&R at 10-11. The Special Master concluded that, since

10 antitrust injury is essential to <u>AGC</u>'s multi-factor analysis, the

11 DAPs fail to show standing based on the absence of that single,

12 significant factor. <u>Id.</u> at 11 (citing <u>Bhan v. NME Hosp., Inc.</u>, 772

13 F.2d 1467, 1370 n.3 (9th Cir. 1985) ("[T]he inquiry whether the

14 plaintiff has suffered an injury of the type which the antitrust

15 statute was intended to forestall is a factor of tremendous

16 significance.")). The DAPs disagree, arguing that in the Ninth

17 Circuit, courts have "embraced antitrust standing in cases

18 involving component parts and their corresponding finished

19 products." DAPs' Reply: Joint at 7.

20     The DAPs cite to the Court's earlier order in this case

21 finding that the Direct Purchasers and Indirect Purchasers had

22 adequately pled antitrust standing. <u>In re CRT</u>, 738 F. Supp. 2d at

23 1023-25. The Special Master considered the DAPs' arguments and

24 found a distinction: in that case, the alleged conspiracy involved

25 both CRTs themselves and CRT Products, while the DAPs' complaints

26 concern only the CRTs themselves. R&R at 10 (citing Tr. 18-19).

27 The Special Master found that "[t]here is a real market

28 distinction, and hence a real legal distinction, between the

1  finished products and just the CRTs," and concluded that a

2  complaint that embraces only one of the two allegedly intertwined

3  products fails to show that an antitrust injury occurred within the

4  same allegedly restrained market.   Id.

5      Defendants argue that the Special Master correctly found that

6  the DAPs' pleadings foreclosed the possibility of an antitrust

7  injury, and that the DAPs "have not alleged that the cost or price

8  of standalone CRT tubes are components that 'can easily be traced'

9  through relevant distribution channels, or that standalone CRT[s]

10 account for a specific percentage of the cost of manufacturing the

11 finished product."  Defs.' Joint Mot. to Adopt at 11-12.  The DAPs

12 respond, however, that regardless of what the pleadings say, the

13 market for CRTs themselves and CRT Products remain inextricably

14 intertwined.  DAP Reply: Joint at 7-9.  Further, the DAPs note that

15 their complaint alleges that CRTs are discrete, identifiable parts

16 of the CRT Product's supply chain, such that any CRT-related prices

17 and overcharges can be traced along with the physical CRT down a

18 chain of causation from allegedly anticompetitive conduct to

19 antitrust injury.  Id. at 9 & n. 7 (citing relevant complaints).

20     The Court finds that, for purposes of the present motion, the

21 DAPs have sufficiently pled an antitrust injury, and that this

22 factor slightly favors standing.  The Court finds that where a

23 product like a CRT itself is virtually valueless on its own, and

24 the markets for CRTs themselves and CRT products are plausibly pled

25 to be inextricably intertwined, a plaintiff adequately pleads an

26 antitrust injury when the alleged anticompetitive activity

27 surrounding a component affects the market for the finished product

28 in a traceable way.  See, e.g., In re Flash Memory Antitrust

23

**United States District Court**
For the Northern District of California

1 Litig., 643 F. Supp. 2d 1133, 1154 (N.D. Cal. 2009); In re GPU

2 Antitrust Litig., 540 F. Supp. 2d 1085, 1098 (N.D. Cal. 2007).

3 Accordingly, the Court respectfully declines to adopt the R&R on

4 this point.

5     The next step is to evaluate the other factors of AGC and

6 balance them.  The first factor, discussed above, is very

7 significant but not dispositive.  The second factor of AGC concerns

8 the directness of the DAPs' alleged injury.  Defendants argue that

9 the DAPs' allegations fail to support a causal connection between

10 the allegedly anticompetitive and the claimed harm.  See Defs.'

11 Joint Mot. to Adopt at 14.  Their argument on this point, like

12 their argument for the remaining factors, is essentially a rehash

13 of their arguments about the differences between the markets for

14 CRTs themselves and for CRT Products.  See id. at 14-15.  The Court

15 has already found that the link between the two markets is enough,

16 at least at this stage, to make an allegation of antitrust harm

17 plausible.  The Court finds that the DAPs' allegations of traceable

18 overcharges, given the severability of CRTs from CRT Products, are

19 sufficient to favor standing under this factor.  Whether or not the

20 DAPs can actually prove that an overcharge would be passed down the

21 chain is a factual question for a later motion.

22     The third factor considers the speculative nature of the

23 alleged harm.  As above, Defendants claim that the DAPs'

24 allegations of injury are "inherently speculative," since there is

25 no secondary market for CRTs themselves and mere allegations of

26 pass-on damages are insufficient to show non-speculative damages.

27 Defs.' Joint Mot. to Adopt at 15 (citing In re DRAM Antitrust

28 Litig., 516 F. Supp. 2d 1072, 1092 (N.D. Cal. 2007)).  In In re

United States District Court
For the Northern District of California

1  DRAM, this Court found that plaintiffs alleging injury related to

2  purportedly price-fixed Dynamic Random Access Memory ("DRAM")

3  lacked standing as to their purchases of DRAM in the form of a

4  component product, since tracing the price-fixed DRAM through the

5  component products would have been too attenuated in that case.

6  516 F. Supp. 2d at 1092-93.  In this case, as a pleading matter,

7  the Court finds that the DAPs sufficiently allege that overcharges

8  are passed on to CRT Product purchasers in a traceable way, since

9  the market and physical distribution chain for CRTs are both

10  limited.  Moreover, absent a more developed factual record, the

11  Court finds it inappropriate to determine "complex and intensely

12  factual" damages issues without "a more fully developed factual

13  record."  See In re GPU, 540 F. Supp. 2d at 1098.  The Court makes

14  the same findings as to traceability and apportionability under the

15  fourth and fifth factors, which can be condensed and considered

16  alongside each other.  See, e.g., AGC, 459 U.S. at 544.

17      Accordingly, the Court finds that the DAPs meet AGC's standing

18  requirements.  As noted above, the DAPs have conceded that the

19  principles of AGC apply in California and Washington, and the Court

20  has found that Arizona does not apply AGC but allows for suits of

21  the DAPs' type.  Therefore, the Court respectfully declines to

22  adopt the Special Master's recommendations on this point, and

23  DENIES Defendants' motion on this issue.

24  ///

25  ///

26  ///

27  ///

28  ///

United States District Court
For the Northern District of California

v.      **Other Joint Motions Asserted**

a.      **Massachusetts and Washington Consumer**

**Protection Statutes**

Defendants move to dismiss the DAPs' claims under

Massachusetts's and Washington's consumer protection statutes.

1.      **Massachusetts**

To bring a claim under the Massachusetts Consumer Protection

Act ("MCPA"), a plaintiff must first have served a written demand

for relief on a defendant at least thirty days before filing the

action if that defendant has a place of business or keeps assets in

Massachusetts.  Mass. Gen. Laws ch. 93A §§ 2, 9.  The Special

Master, noting that the Court has dismissed earlier claims under

Massachusetts law for failing to provide notice, found that the

DAPs' case was similarly deficient.  R&R at 12.  He recommended

that the Court dismiss the Massachusetts claims without leave to

amend, because the DAPs do not plead or provide evidence showing

that they provided the requisite statutory notice to any

Massachusetts-linked Defendants.  Id.  Defendants ask the Court to

adopt that recommendation.  Defs.' Joint Mot. to Adopt at 17-19.

The DAPs claim that the Court should reject the Special Master's

recommendation, arguing that thirty-seven of the thirty-nine

Defendants are located outside Massachusetts and are not subject to

the MCPA's notice requirement.  DAP Reply: Joint at 12-13.

A review of the transcript, the parties' briefs, and the

relevant case law reveals a serious factual question as to whether

any of the DAPs ever sent notice (and whether, if sent, it was

proper notice under the law).  The complaints do not plead that any

DAP bringing an MCPA claim sent notice, and the DAPs do not claim

United States District Court
For the Northern District of California

that they did.  <u>See</u> DAP Reply: Joint at 12-13.  The DAPs
essentially put the burden on Defendants to show that they
maintained a place of business or kept assets in Massachusetts.
<u>Id.</u>  To support this argument they cite a memorandum decision from
a Massachusetts trial court.  The Court is not convinced by this
argument: the DAPs should have done their research and provided the
requisite notice.  However, to the extent that the DAPs claim that
they can cure their pleading defect, the Court finds that the DAPs
should have leave to amend their Massachusetts claims to show that
they followed the law.  The Court therefore ADOPTS the R&R on this
point, as modified.

### 2. <u>Washington</u>

Washington forbids indirect purchasers from bringing their own
actions under the Washington consumer protection statute.  R&R at
12.  The DAPs claim, however, that Washington's harmonization
provision, Wash. Rev. Code § 19.86.920, requires the Court to
evaluate claims under Washington law by applying <u>Illinois Brick</u> and
finding that an exception to it applies here.  DAP Reply: Joint at
14.  Defendants argue that no case law or legislation supports the
argument that <u>Illinois Brick</u> exceptions are applicable to claims
under the Washington Consumer Protection Act.  Neither party cites
case law to support their position, and the Court declines to make
law, especially since the R&R is sound and Washington law's
prohibition of indirect actions would seem to override any
suggestion of an <u>Illinois Brick</u> loophole being read into the
state's harmonization provision.  The Court ADOPTS the Special
Master's recommendation and DISMISSES the DAPs' Washington law
claims without leave to amend.

**United States District Court**
For the Northern District of California

b.   <u>Common Laws of Unjust Enrichment</u>

Some of the DAPs pled claims for unjust enrichment under the common law, not the unjust enrichment laws of particular states. The Special Master found, correctly, that the common law of unjust enrichment is not uniform and is subject to definition by the states.  R&R at 13.  He accordingly recommended that the Court dismiss these complaints with leave to amend, so that the DAPs have the opportunity to identify which states' laws support their unjust enrichment claims.  The DAPs object to this recommendation, arguing that at least the Polaroid DAPs' unjust enrichment claims are specifically based on the laws of Minnesota and California.  DAP Obj'ns: Joint at 19-20.  Defendants move to adopt the recommendation of dismissal, arguing that the Polaroid DAPs never indicate under which state's law their claims arise, even though they were able to point to specific laws for other claims.  Defs.' Joint Mot. to Adopt at 21.  Defendants claim that if the Court accepted the DAPs' argument, the DAPs would essentially be allowed to sidestep Rule 8's requirement that plaintiffs make short, plain statements of their claims.  <u>Id.</u> at 21-22.

The Court agrees with Defendants and the Special Master.  If any of the DAPs wanted to state claims for unjust enrichment under a particular state's law, they should have done so.  The Court cannot infer what DAPs intended.  The Court ADOPTS the Special Master's recommendation on this point and dismisses the Polaroid DAPs' unjust enrichment claims with leave to amend.  Contrary to what the DAPs claim, requiring adherence to the rules of procedure is not unnecessary "make work."  The DAPs need not file an amended complaint if they find it too onerous a task.  The DAPs should,

1  however, read the following section carefully in considering

2  whether to amend their complaints for unjust enrichment claims.

3        **c.**    **California Restitution and Unjust Enrichment**

4          **Laws**

5      DAP Circuit City alleges that Defendants violated California's

6  laws for restitution and unjust enrichment.  Defendants moved to

7  dismiss these claims because California law does not provide for

8  standalone restitution or unjust enrichment claims.  The Special

9  Master noted correctly that California courts are divided on this

10  issue, but recommended that these claims be dismissed without leave

11  to amend, since California law provides specific and adequate

12  remedies for these claims via the Cartwright Act.  R&R at 13.  The

13  DAPs urge that the Court follow the line of cases allowing unjust

14  enrichment and restitution to be pled as independent causes of

15  action, arguing that the difference is merely semantic and that the

16  Court should not determine the adequacy of alternative remedies at

17  this stage of litigation.  DAP Obj'ns: Joint at 20-21; DAP Reply:

18  Joint at 14-17.  Defendants move to adopt the Special Master's

19  recommendation.  Defs.' Joint Mot. to Adopt at 23-26.

20      The Court agrees with Defendants and the Special Master that

21  these equitable remedies are duplicative where the DAPs' statutory

22  claims provide adequate relief at law.  The Court ADOPTS the

23  Special Master's recommendation and DISMISSES Circuit City's

24  restitution and unjust enrichment claims without leave to amend.

25        **d.**  **California's UCL**

26      Defendants move to dismiss the Circuit City, CompuCom, and

27  Polaroid DAPs' claims for alleged violations of California's

28  statutory Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§

17200 <u>et seq</u>.  The Special Master recommended that this motion be
dismissed because the DAPs' complaints allege antitrust violations
(even if they are subject to exceptions or special applications),
such that the Special Master could not conclude that no DAP alleged
any valid antitrust claims on which they could predicate a UCL
claim.  R&R at 13.  Neither party addresses this recommendation.
The Court, having considered the briefs and the Special Master's
R&R, ADOPTS the Special Master's recommendation and DENIES
Defendants' motion to dismiss on these grounds.

     **e.**   **State Laws Repealing Illinois Brick**

   Defendants move to dismiss the DAPs' state law claims under
Nebraska, Nevada, and New York law, arguing that the DAPs cannot
sue for purchases prior to the date that those states passed
statutes repealing <u>Illinois Brick</u>.  The DAPs concede that they lack
standing under New York law based on purchases prior to December 3,
1998, so the Special Master recommended that the Court dismiss
those claims with prejudice.  R&R at 14.  The Court ADOPTS that
recommendation and DISMISSES the DAPs' New York claims based on
pre-December 3, 1998 purchases with prejudice.

   As to Nebraska and Nevada, the Special Master noted that the
Court has already held that indirect purchasers lack standing under
those states' laws for purchases predating Nebraska's and Nevada's
respective <u>Illinois Brick</u> repeal statutes.  <u>Id.</u> (citing <u>In re CRT</u>,
738 F. Supp. 2d at 1025).  Since the DAPs cited no new reasons why
the Court should not apply the same analysis in this case, the
Special Master recommended that the Court dismiss with prejudice
the DAPs' claims based on purchases predating Nebraska's and
Nevada's repeal statutes.  The DAPs dispute this recommendation,

1   arguing that recent cases offer new interpretations of the DAPs'

2   arguments.  See DAP Obj'ns: Joint at 22-23.

3       First, the DAPs argue that the Court is bound by Arthur v.

4   Microsoft Corp., 676 N.W.2d 29 (Neb. 2004), in which the Nebraska

5   Supreme Court reversed dismissal of claims predating Nebraska's

6   2002 repealer statute.  DAP Reply: Joint at 18-20.  On this point,

7   the DAPs contend that the Court should follow Judge Illston's

8   decision from In re TFT-LCD Antitrust Litigation, No. M 07-1827 SI,

9   C 10-4945 SI, 2011 WL 3738985, at *3 (N.D. Cal. Aug. 24, 2011),

10  which held that even though Arthur considered claims brought under

11  Nebraska's Consumer Protection Act, its reasoning extends to

12  Nebraska antitrust claims, since Arthur indicated that Nebraska law

13  was never meant to be harmonized with Illinois Brick.  Defendants

14  cite several cases and a section of judicial history, which to them

15  suggests that Nebraska's 2002 amendment of its antitrust law to

16  provide indirect-purchaser standing meant that no such standing

17  existed before 2002.  Defs.' Joint Mot. to Adopt at 27-28.  The

18  Court disagrees, based on the clear language from Arthur and Judge

19  Illston's reasoning in In re TFT-LCD.  The Court's prior ruling on

20  this issue is not law of the case, since the Indirect Purchaser

21  Plaintiffs ("IPPs") did not object to the Special Master's

22  recommendation of a dismissal of the pre-2002 Nebraska claims, and

23  so the issue was neither briefed nor fully discussed by the Special

24  Master or the Court.  There was, essentially, no controversy before

25  the Court at that time.  The Court therefore respectfully declines

26  to adopt the R&R on this point, and DENIES Defendants' motion to

27  dismiss the DAPs' Nebraska claims based on pre-2002 purchases.

28      Second, the DAPs argue that the Court should read Nevada's

1    1999 amendment as merely clarifying who may bring suit under the

2    Nevada Unfair Trade Practices Act, not as changing the standing

3    requirements to require indirect purchasers to sue for their

4    antitrust injuries.  DAP Reply: Joint at 20-21.  Defendants claim

5    that legislative history supports the interpretation that the

6    statute meant to cut off claims for purchases made before 1999, and

7    that Nevada's high court presumes that statutes apply prospectively

8    and that the legislature intends to change (not just clarify) law

9    when it amends statutes.  Defs.' Joint Mot. to Adopt at 30-31

10   (citing In re Estate of Thomas, 998 P.2d 560, 562 (Nev. 2000);

11   McKay v. Bd. of Supervisors, 730 P.2d 438, 442 (Nev. 1986)).

12       The Court agrees with Defendants.  As Judge Illston held in In

13   re TFT-LCD, the Nevada Unfair Trade Practices Act ("UTPA") has a

14   harmonization provision, Nev. Rev. Stat. § 598A.050, and the Nevada

15   Supreme Court would likely interpret the UTPA "in harmony" with

16   Illinois Brick.  In re TFT-LCD, 2011 WL 3738985, at *3.  The Court

17   finds no convincing high court evidence to the contrary, and is not

18   persuaded by the lower court cases that the DAPs cite.  The Court

19   ADOPTS the R&R on this point and GRANTS Defendants' motion to

20   dismiss the DAPs' Nevada claims based on purchases that occurred

21   before October 1, 1999.

22       **C.   Philips and LG's Separate Joint Motion to Dismiss**

23       The Philips and LG Defendants filed a separate joint motion to

24   dismiss the DAPs' complaints.  See Philips MTD at 5-14; LG Joinder

25   at 1-2.  The critical differences in this motion concern Philips

26   and LG's joint venture, LGDP (a.k.a. "LP Displays" or "LPD").

27   According to the DAPs' complaints, Philips transferred its entire

28   CRT business to LGDP in the form of a 50/50 joint venture with LG.

1   E.g., Best Buy Compl. ¶ 46.[7]  At this point, Philips's only

2   connection to the alleged cartel was through LGDP.  Id. ¶ 150.  In

3   January 2006, LGDP went bankrupt.  R&R at 15.  In March or April

4   2007, it "became an independent company," and its shares were

5   "owned by financial institutions and private equity firms," not by

6   Philips or LG.  Best Buy Compl. ¶¶ 36, 40; R&R at 15.

7       The Special Master found that the January 2006 bankruptcy and

8   March 2007 divestment amounted to Philips and LG's withdrawal from

9   the alleged conspiracy.  R&R at 14-15.  Further, the Special Master

10  found that the DAPs had failed to show that the relevant state and

11  federal statutes of limitations should be tolled, because they had

12  failed to sufficiently allege fraudulent concealment.  Id. at 15.

13  According to the Special Master, the DAPs have had the benefit of

14  four years of pleadings, motions, and discovery in this case, and

15  so a conclusory pleading of fraudulent concealment, addressed to

16  all Defendants generally but not the unusual circumstances of

17  Philips and LG particularly, was insufficient.  Id.  Accordingly,

18  the Special Master recommended that the Court dismiss the DAPs'

19  state and federal claims against Philips and LG.

20      Philips and LG ask the Court to adopt that recommendation, but

21  they claim that they actually withdrew from the conspiracy by June

22  2001, when they ceased participating directly in the CRT market and

23  formed LGPD.  See Philips Mot. to Adopt at 1-3.  According to

24  Philips and LG, this would bar all of the DAPs' state and federal

25  claims on statute of limitations grounds.  Id. at 17-33.

26  Specifically, Philips and LG contend that even if the Court found

27  _____

28  [7] Obviously, there are multiple complaints in this particular
    matter, but the Special Master used Best Buy's complaint as an
    exemplar and the parties do the same.  So will the Court.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

cross-jurisdictional tolling applicable based on the DPP Class's November 2007 filing -- which they argue the Court should not do -- the June 2001 date is still outside any applicable limitations period. Id. at 23-24. Philips and LG also state that since the DAPs fail to plead fraudulent concealment as to Philips and LG in particular, no possible tolling argument can save any of the DAPs' claims. Id. at 18-22, 29-33.

The DAPs claim that the Special Master erred in finding that Philips and LG withdrew from the conspiracy and by finding that the DAPs failed to allege fraudulent concealment. DAP Obj'ns: Philips & LG at 6-14. The DAPs also argue that their federal claims and state law claims were tolled as of November 26, 2007, and that cross-jurisdictional tolling would extend the DAPs' claims back to November 2003. Id. at 14-17.

The Court finds that the parties' withdrawal and fraudulent concealment arguments raise factual questions inappropriate for decision at this stage. Too many of the parties' arguments depend on the resolution of factual disputes about Philips and LG's stakes in LPD, the actual involvement of Philips and LG in LPD and the conspiracy, and so forth. The Court finds that the DAPs' allegations of fraudulent concealment, in context, are sufficient under Rule 9(b). Indeed, in a highly complex, long-running antitrust conspiracy case like this one, it is likely that further information about the extent of two parties' involvement is in those parties' hands, awaiting discovery (or potentially not). "[I]t is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly when the proof relating to the extent of the

**United States District Court**
For the Northern District of California

1    fraudulent concealment is alleged to be largely in the hands of the

2    alleged conspirators." <u>In re Rubber Chems. Antitrust Litig.</u>, 504

3    F. Supp. 2d 777, 789 (N.D. Cal. 2007).  Similarly, the withdrawal

4    dispute hinges on facts about Philips and LG's involvement in their

5    joint venture, and the Court cannot resolve such a dispute at this

6    point.  <u>Id.</u> at 1025.  Accordingly, the Court respectfully declines

7    to adopt the R&R on this point, and denies Defendants' motion.  The

8    Court also declines to address <u>American Pipe</u> tolling at this time.

9    <u>See</u> <u>supra</u> Section IV.b.i.

10

11   **V.   <u>CONCLUSION</u>**

12        For the reasons explained above, the Court approves and adopts

13   the Special Master's recommendation in part, and modifies it in

14   part.  As to the above-captioned Defendants' motions to dismiss the

15   Direct Action Plaintiffs' complaints, the Court ORDERS as follows:

16        • Defendants' motion to dismiss the DAPs' Complaints is

17          GRANTED to the extent that it challenges the DAPs'

18          alleged right to proceed under the "cost-plus" and "co-

19          conspirator" exceptions to <u>Illinois Brick</u>.

20        • Defendants' motion to dismiss the DAPs' Complaints is

21          DENIED to the extent that it challenges the DAPs' right

22          to proceed under the "ownership or control" exception to

23          <u>Illinois Brick</u>, but this Order expresses no view as to

24          whether the DAPs will be able to prove what is needed to

25          establish that exception with respect to their purchases

26          of finished products containing CRTs.  Defendants' joint

27          motion to dismiss does not presently challenge the

28          adequacy of the DAPs' allegations of ownership or

                                      35

Case 3:07-cv-05944-SC Document 1356 Filed 09/24/12 Page 36 of 37

control, and the Court makes no ruling on that issue. Defendants' joint motion does not presently raise the issue of the application of the statute of limitations to the federal claims.

- Defendants' joint motion to dismiss the DAPs' claims based on state statutes of limitation is DENIED.

- Defendants' joint motion to dismiss the DAPs' claims based on prudential standing is DENIED.

- Defendants' joint motion to dismiss the DAPs' claims based on due process is DENIED.

- Defendants' joint motion to dismiss the DAPs' state law claims based on <u>Associated General Contractors</u> is DENIED.

- The DAPs' Massachusetts claims under the state consumer protection statute are DISMISSED with leave to amend.

- The DAPs' claims brought under Washington law are DISMISSED with prejudice.

- The DAPs' claims for common law unjust enrichment are DISMISSED with leave to amend, with the limitations described above.

- The DAPs' claims for restitution and unjust enrichment under California law are DISMISSED with prejudice.

- Defendants' motion to dismiss the DAPs' UCL claims is DENIED.

- The DAPs' New York claims based on pre-December 3, 1998 purchases are DISMISSED with prejudice.

- Defendants' motion to dismiss the DAPs' claims under Nebraska law based on pre-2002 purchases is DENIED.

- The DAPs' Nevada law claims that are premised on

United States District Court
For the Northern District of California

1          purchases predating October 1, 1999, are DISMISSED with

2          prejudice.

3      • Philips and LG's motion to dismiss the DAPs' claims as to

4          them is DENIED.

5      • Per the Special Master's recommendation, given the

6          profusion of underlying motions and arguments regarding

7          these Defendants' motions to dismiss the DAP Complaints,

8          any motions from these parties' briefs that were not

9          discussed in this Order or the R&R are DENIED without

10         prejudice.

11

12   If the DAPs choose to file amended complaints for any of the claims

13   noted above, they must do so within thirty (30) days of this

14   Order's signature date.  Failure to do so may result in the

15   deficient claims' dismissal with prejudice.

16

17      IT IS SO ORDERED.

18

19      Dated: August __21__, 2013

20                                       _____
                                         UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28