Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA  94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Defendant Thomson Consumer Electronics, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | No. 07-cv-5944-SC MDL No. 1917 |
| This Document Relates to: | **THOMSON CONSUMER ELECTRONICS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS NEWLY FILED DIRECT ACTION PLAINTIFFS' COMPLAINTS** |
| *Electrograph Systems, Inc., et al. v. Technicolor SA, et al., No. 13-cv-05724;* | |
| *Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Technicolor SA, et al., No. 13-cv-00141;* | Date:  March 7, 2014 Time: 10:00 A.M. Place: Courtroom 1, 17th Floor Judge: Hon. Samuel Conti [[Proposed] Order Filed Concurrently Herewith] |
| *Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264;* | |

1  *Interbond Corporation of America v. Technicolor SA, et al., No. 13-cv-05727;*

2  *Office Depot, Inc. v. Technicolor SA, et al.,*
3  *No. 13-cv-05726;*

4  *Costco Wholesale Corporation v. Technicolor SA, et al., No. 13-cv-05723;*
5

6  *P.C. Richard & Son Long Island Corporation, et al. v. Technicolor SA, et al.,*
7  *No. 31:cv-05725;*

8  *Schultze Agency Services, LLC, o/b/o Tweeter Opco, LLC, et al. v. Technicolor SA,*
9  *Ltd., et al., No. 13-cv-05668;*

10  *Sears, Roebuck and Co. and Kmart Corp. v.*
11  *Technicolor SA, No. 3:13-cv-05262;*

12  *Target Corp. v. Technicolor SA, et al., No. 13-cv-05686*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 7, 2014 at 10:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Samuel P. Conti, U.S. District Court Judge, U.S. District Court for the Northern District of California, Courtroom No. 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, the moving Defendant listed on the signature page below will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an Order dismissing with prejudice the claims alleged against the moving Defendant in the Direct Action Plaintiffs' various Complaints and Amended Complaints.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

ISSUES TO BE DECIDED ..........................................................................................1

INTRODUCTION .......................................................................................................1

BACKGROUND .........................................................................................................2

ARGUMENT ..............................................................................................................4

I.    The DAPs' Claims Against Thomson Consumer Are Barred by the Doctrine of Laches. ..............................................................................................................4

      A.    The DAPs Have Unreasonably Delayed Pressing Their Rights. ...............................4

      B.    The DAPs' Delay Has Caused Thomson Consumer Serious Prejudice. ....................6

II.   The DAPs' Claims Are Barred by the Applicable Statutes of Limitation. ............................9

      A.    The Statutes of Limitation on Claims Against Thomson Consumer Began to Run No Later Than July 2005 When Thomson Consumer Exited the CRT Industry. ...................................................................................................10

      B.    The DAPs Do Not Plead Specific Facts That Establish a Plausible Basis for Tolling the Statutes of Limitation for Its Claims Against Thomson Consumer. .......11

            1.    Fraudulent Concealment Does Not Apply. ....................................................11

            2.    American Pipe Tolling Does Not Apply. .......................................................14

            3.    Government Action Tolling Does Not Apply. ...............................................16

III.  The DAPs' Claims Against Thomson Consumer Should Be Dismissed Because They Have Failed to Allege Facts That Plausibly Establish the DAPs Qualify for the Ownership or Control Exception to *Illinois Brick*. .................................................19

IV.   Thomson Consumer Reserves Other Challenges to the Legal Adequacy of the DAPs' Claims. ..............................................................................................................21

CONCLUSION ...........................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974)...................................................................14

*Ariz. State Bd. for Charter Schools v. U.S. Dept. of Ed.*,
    464 F.3d 1003 (9th Cir. 2006) ....................................................17

*Arneil v. Ramsey*,
    550 F.2d 774 (2d Cir. 1977) ........................................................14

*Ashley v. Boyle's Famous Corned Beef Co.*,
    66 F.3d 164 (8th Cir. 1995) ...........................................................4

*Barela v. Showa Denko K.K.*,
    1996 WL 316544 (D.N.M. Feb. 28, 1996).....................................16

*Barker v. Am. Mobil Power Corp.*,
    64 F.3d 1397 (9th Cir. 1995) ........................................................12

*Becnel v. Deutsche Bank, AG*,
    507 Fed. Appx. 71 (2d Cir. 2013) .................................................15

*Boone v. Citigroup, Inc.*,
    416 F.3d 382 (5th Cir. 2005) ........................................................14

*Cada v. Baxter Healthcare Corp.*,
    920 F.2d 447 (7th Cir. 1991) ..........................................................4

*Champion v. Homa*,
    2008 WL 900967 (M.D. Ala. March 31, 2008)...............................16

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ...............................................15, 16

*Conerly v. Westinghouse Elec. Corp.*,
    623 F.2d 117 (9th Cir. 1980) ........................................................13

*Conmar Corp. v. Mitsui & Co. (USA) Inc.*,
    858 F.2d 499 (9th Cir. 1988) ..................................................11, 12

*Crago, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*,
    No. 7-cv-05944 (N.D. Cal. Nov. 26, 2007)......................................2

*Credit Suisse Secs. (USA) LLC v. Simmonds*,
    132 S.Ct. 1414 (2012) ..................................................................17

*Crown, Cork & Seal Co., Inc. v. Parker*,
    462 U.S. 345 (1983) ................................................................................ 14, 15

*Cutting v. Woodward*,
    255 F. 633 (9th Cir. 1918) ................................................................................ 6

*Danjaq LLC v. Sony Corp.*,
    263 F.3d 942 (9th Cir. 2001) ........................................................ 4, 5, 6, 8, 9

*Duggan v. Morgan Drive-Away, Inc.*,
    570 F.2d 867 (9th Cir. 1978) ................................................................. 16, 17

*Global Services v. Ikon Office Solutions*,
    No. 10-cv-05974, 2011 WL 6182425 (N.D. Dec. 12, 2013)................... 13

*Greyhound Corp. v. Mt. Hood Stages, Inc.*,
    437 U.S. 322 (1979) ................................................................................ 17

*Grimmett v. Brown*,
    75 F.3d 506 (9th Cir. 1996) ................................................................... 11

*In re ATM Fee Antitrust Litig.*,
    686 F.3d 741 (9th Cir. 2012) ................................................................. 20

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
    782 F. Supp. 481 (C.D. Cal. 1991) ....................................................... 18

*In re Optical Disk Drive Antitrust Litig.*,
    No. 3:10-md-2143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011)........... 20

*In re Processed Egg Prods. Antitrust Litig.*,
    2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013) ..................... 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2012 WL 3155693 (N.D. Cal. Aug. 2, 2012) ...................................... 15, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, MDL Dkt. No. 4867 at 3 (N.D. Cal. Feb. 23, 2012)................. 11

*In re TFT-LCD Antitrust Litig.*,
    No. M 07-1827 SI, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) ......... 20

*In re Transpacific Passenger Air Trans. Antitrust Litig.*,
    No. 07-cv-5634 CRB, 2011 U.S. Dist. Lexis 49853 (N.D. Cal. May 9, 2011)..................... 12

*In re Urethane Antitrust Litig.*,
    663 F. Supp. 2d 1067 (D. Kan. 2009) ......................................... 11, 12, 13

*International Tel. & Tel. Corp. v. General Tel. & Elecs. Corp.*,
    518 F.2d 913 (9th Cir. 1975) ................................................................... 6

*Jackson v. Axton*,
  25 F.3d 884 (9th Cir. 1994) ................................................................................. 4

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ............................................................................... 4

*Kendall v. VISA U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ........................................................... 8, 19, 20, 21

*Kindt v. Matsushita Electric Indus. Co.*,
  No. 07-cv-10322 (S.D.N.Y. Nov. 13, 2007) ........................................................ 2

*Leh v. General Petroleum Group*,
  382 U.S. 54 (1965) ....................................................................................... 18, 19

*Lindner Dividend Fund, Inc. v. Ernst & Young*,
  880 F. Supp. 49 (D. Mass. 1995) ................................................................... 14, 15

*Madison v. IBP, Inc.*,
  330 F.3d 1051 (8th Cir. 2003) ............................................................................. 4

*McCune v. Alioto Fish Co.*,
  597 F.2d 1244 (9th Cir. 1979) ................................................................... 4, 6, 8, 9

*Metz v. Unizan Bank*,
  416 F. Supp. 2d 568 (N.D. Ohio 2006) ............................................................. 12

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
  198 F.3d 823 (11th Cir. 1999) ........................................................................... 10

*Nashville Milk Co. v. Carnation Co.*,
  355 U.S. 373 (1958) ........................................................................................... 19

*Newport v. Dell, Inc.*,
  No. CV-08-0096, 2008 WL 4347311 (D. Ariz. Aug. 21, 2008) ......................... 15

*Novell, Inc. v. Microsoft Corp.*,
  505 F.3d 302 (4th Cir. 2007) ....................................................................... 18, 19

*Pool Water Prods. v. Olin Corp.*,
  258 F.3d 1024 (9th Cir. 2001) ........................................................................... 19

*Radio & TV Equip., Inc. v. Chunghwa Picture Tubes, Ltd., et al.*,
  No. 08-00542 (D.N.J. Jan. 28, 2008) .................................................................. 2

*Russell v. Thomas*,
  129 F. 605 (S.D. Cal. 1955) ................................................................................. 4

*Rutledge v. Boston Woven Hose & Rubber Co.*,
  576 F.2d 248 (9th Cir. 1978) ............................................................................. 13

*Senger Brothers Nursery, Inc. v. E.I. Dupont de Nemours & Co.*,
    184 F.R.D. 674 (M.D. Fla. 1999) ................................................................ 15

*Soward v. Deutsche Bank AG*,
    814 F. Supp. 2d 272 (S.D.N.Y. 2011) ......................................................... 16

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
    782 F. Supp. 2d 1059 (E.D. Cal. 2011) ....................................................... 20

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ........................................................................ 11

*Tech Data Corp. v. AU Optronics Corp.*,
    No. 07-md-1827, 2012 WL 3236065 (N.D. Cal. Aug. 6, 2012) .................. 14

*United States v. Antar*,
    53 F.3d 568 (3rd Cir. 1995) ......................................................................... 10

*Vincent v. Money Store*,
    No. 11 Civ. 7685, 2013 WL 57794 (S.D.N.Y. Jan. 4, 2013) ..................... 15

*Volk v. D.A. Davidson & Co.*,
    816 F.2d 1406 (9th Cir. 1987) ..................................................................... 11

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ........................................................................ 10

*Williams v. Boeing Co.*,
    517 F.3d 1120 (9th Cir. 2008) ..................................................................... 15

*Wyser-Pratte Mgt. Co. v. Telxon Corp.*,
    413 F.3d 553 (6th Cir. 2005) ........................................................................ 14

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971) ..................................................................................... 10

**STATE CASES**

*Lee v. Grand Rapids Board of Education*,
    384 N.W.2d 165 (Mich. App. 1986) ............................................................ 15

*Portwood v. Ford Motor Co.*,
    695 N.E.2d 941 (Ill. App. Ct. 1997) ........................................................... 15

*Seaboard Corp. v. Marsh, Inc.*,
    284 P.3d 314 (Kan. 2012) ............................................................................ 16

THOMSON CONSUMER'S NOTICE OF MOTION
AND MOTION TO DISMISS NEWLY FILED DAP
COMPLAINTS
     v
         No. 07-5944-SC; MDL No. 1917

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FEDERAL STATUTES**

15 U.S.C. § 12 ........................................................................................................ 19

15 U.S.C. § 15(b) .................................................................................................... 9

15 U.S.C. § 16(i) ................................................................................ 16, 17, 18, 19

**STATE STATUTES**

740 Ill. Comp. Stat. § 10/7(2) ............................................................................... 9

Ariz. Rev. Stat. § 44-1410(B) ............................................................................... 9

Cal. Bus. & Prof. Code § 16750.1 ........................................................................ 9

Cal. Bus. & Prof. Code § 17208 ........................................................................... 9

Fla. Stat. Ann. § 95.11(3)(f) ................................................................................. 9

Iowa Code Ann. § 553.16(2) ................................................................................. 9

Kan. Stat. Ann. § 60-512(2) ............................................................................... 10

Mass. Gen. Laws Ann. Chapter 260, § 5A .......................................................... 9

Mich. Comp. Laws Ann. § 445.781 ...................................................................... 9

Minn. Stat. Ann. § 325D.64 .................................................................................. 9

Miss. Code Ann. § 15-1-49 ................................................................................. 10

N.C. Gen. Stat. § 75-16.2 ...................................................................................... 9

N.M. Stat. Ann. § 57-1-12 ..................................................................................... 9

N.Y. C.P.L.R. § 214(2) ........................................................................................ 10

N.Y. Gen. Bus. Law § 340(5) ............................................................................... 9

Neb. Rev. Stat. § 25-206 ....................................................................................... 9

Nev. Rev. Stat. § 598A.220 ................................................................................... 9

Wash. Rev. Code § 19.86.120 ............................................................................... 9

Wis. Stat. Ann. § 133.18(2) ................................................................................ 10

1

**RULES**

Federal Rule of Civil Procedure 9(b) ............................................................. 11, 12, 13

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 1, 10

**OTHER AUTHORITIES**

2 Philip E. Areeda & Herbert Hovenkamp, Antitrust Law p. 321a................................................. 18

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2        In accordance with the Federal Rules of Civil Procedure 12(b)(6), Defendant Technicolor

3  USA, Inc. (formerly known as Thomson Consumer Electronics, Inc. and referenced herein as

4  "Thomson Consumer") respectfully moves to dismiss with prejudice the new claims asserted

5  against it by the Direct Action Plaintiffs ("DAPs") for failure to state a claim upon which relief can

6  be granted.[1]

7

## ISSUES TO BE DECIDED

8        1.        Are the DAPs' claims against Thomson Consumer barred by the doctrine of laches?

9        2.        Are the DAPs' claims against Thomson Consumer time-barred under the applicable

10  statutes of limitation and have the DAPs failed to plead any basis for tolling the applicable statutes

11  of limitation?

12        3.        Should the DAPs' claims against Thomson Consumer be dismissed because the

13  DAPs have failed to plead evidentiary facts that plausibly establish they possess standing under the

14  "ownership or control" exception to *Illinois Brick*?

15

## INTRODUCTION

16        Four months ago, this Court refused to allow these same Plaintiffs to amend their complaints

17  to join Thomson Consumer to this action.  The Court ruled that forcing Thomson Consumer "to

18  enter litigation now would put it at an unfair, prejudicial disadvantage" and that "the DAPs had

19  ample time to add Thomson to their complaints without delay or prejudice, but they did not."  (*See*

20  Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].)  In a transparent attempt to circumvent the Court's

21  September 26, 2013 Order, the DAPs have simply filed new complaints that attempt, once again, to

22

23  [1] Thomson Consumer moves to dismiss the following complaints:  *Siegel v. Technicolor SA*, No.
13-cv-05261 ("Circuit City Compl."); *Sears, Roebuck & Co. v. Technicolor SA*, No. 13-cv-05262

24  ("Sears Compl."); *Best Buy Co., Inc. v. Technicolor SA,* No. 13-cv-05264 ("Best Buy Compl.");
*Target Corp. v. Technicolor SA,* No. 13-cv-05686 ("Target Compl."); and *Costco Wholesale Corp.*

25  *v. Technicolor SA (f/k/a Thomson SA), et al*., No. 13-cv-05723 ("Costco Compl."); and the
following first amended complaints:  *Electrograph Systems, Inc. v. Technicolor SA*, No. 2:13-cv-

26  05724 ("Electrograph FAC"); *P.C. Richard & Son Long Island Corp. v. Technicolor SA*, No. 13-cv-
05725 ("P.C. Richard FAC"); *Office Depot, Inc. v. Technicolor SA*, No. 13-cv-05726 ("Office

27  Depot FAC"); *Interbond Corp. of Am. v. Technicolor SA*, No. 13-cv-05727 ("Interbond FAC"); and
*Schultze Agency Services, LLC v. Technicolor SA*, No. 13-cv-05668 ("Tweeter FAC").

28

1   drag Thomson Consumer into this litigation six years after it began and over eight years after

2   Thomson Consumer exited the CRT industry.

3   Nothing has changed, however, since the Court entered its September 26, 2013 Order.  The

4   DAPs' inexcusable delay in pressing their rights has caused Thomson Consumer severe, irreparable

5   prejudice − prejudice that has not been remedied by the DAPs filing even later, new complaints.

6   Moreover, the DAPs' claims are time-barred under the applicable statutes of limitation and laches

7   bars them from relying on tolling doctrines.  Finally, the DAPs are indirect purchasers and do not

8   plead any evidentiary facts that plausibly establish they qualify for the ownership or control

9   exception to *Illinois Brick*.  Consistent with the Court's findings in its September 26, 2013 Order,

10   the DAPs' claims against Thomson Consumer should be dismissed with prejudice.

11   **BACKGROUND**

12   The Court is well aware of the background of this present action and Thomson Consumer's

13   prior lack of involvement in it.  Very briefly, Thomson Consumer is a wholly-owned U.S.

14   subsidiary of the French holding company Thomson SA (n/k/a Technicolor SA) (collectively, the

15   "Thomson Defendants").  Thomson Consumer exited the CRT industry more than eight years ago,

16   in July 2005, when Thomson SA sold its CRT business, including that of Thomson Consumer, to

17   Videocon Industries, Ltd. ("Videocon").  (*See, e.g.,* Best Buy Compl. at ¶¶ 27-28.)

18   In November 2007, a series of putative class action lawsuits alleging a conspiracy in the

19   CRT market were filed resulting in the current MDL.  *See Kindt v. Matsushita Electric Indus. Co.*,

20   No. 07-cv-10322 (S.D.N.Y. Nov. 13, 2007); *Crago, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*,

21   No. 7-cv-05944 (N.D. Cal. Nov. 26, 2007).  Although in January 2008 some DPP class complaints

22   named Thomson SA as a defendant, Thomson Consumer has *never* been named as a defendant in

23   any CRT-related action.  *See, e.g., Radio & TV Equip., Inc. v. Chunghwa Picture Tubes, Ltd., et al.*,

24   No. 08-00542 (D.N.J. Jan. 28, 2008) (Compl. at ¶¶ 27, 69-79).

25   The DAPs filed their own complaints in November 2011, but named neither Thomson SA

26   nor Thomson Consumer as defendants.  It was not until March 2013 − eight years after Thomson

27   Consumer exited the industry, five-and-a-half years after the litigation began, and two years after

28

the opt-out complaints were filed − that the DAPs moved to amend their complaints to assert claims against Thomson Consumer.  (*See* Motion for Leave to File Amended Complaints ("DAPs' Motion to Amend") [Dkt. No. 1609]).  Holding that the DAPs' unjustified delay in bringing their claims would cause the Thomson Defendants serious prejudice, the Court denied the DAPs' Motion to Amend on September 26, 2013.  (*See* Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].)  The Court explained that "[d]iscovery in this case has proceeded apace" and requiring the Thomson Defendants to enter the litigation now would put them at an unfair, prejudicial disadvantage.  (*Id*. at 5.)  "[T]he DAPs had ample time to add Thomson to their complaints without delay or prejudice, but they did not" and "to reward delay with amendment in this case is not justifiable." (*Id*. at 5-6.)

Apparently viewing the Court's Order as a mere procedural speed bump, in November and December 2013, the DAPs filed new actions against the Thomson Defendants in various states across the nation asserting the very same claims the Court rejected in its September 26, 2013 Order. These newly filed cases are now all pending before this Court.  As such, Thomson Consumer and the Court are back where they started before the Court issued its September 26, 2013 Order.

The Court should not countenance the DAPs' gamesmanship.  Following the DAPs' procedural maneuverings, Thomson Consumer now faces the same severe and irremediable prejudice that would have been caused by allowing the DAPs to amend their complaints to add Thomson Consumer as a party to these proceedings.  Allowing the DAPs to assert claims against Thomson Consumer now would still cause Thomson Consumer irreparable prejudice, put it at a strategic disadvantage, and make it nearly impossible for it to fully and fairly defend itself.  The DAPs should not be permitted to impose such prejudice on Thomson Consumer, especially when, as here, it has been solely caused by the DAPs' own dilatory conduct.  (September 26, 2013 Order at 5-6 (finding that DAPs had ample time to add the Thomson Defendants but did not because of their own, unjustified lack of diligence).)  Accordingly, the Court should dismiss the DAPs' untimely claims with prejudice.

**ARGUMENT**

I.    **The DAPs' Claims Against Thomson Consumer Are Barred by the Doctrine of Laches.**

Where, as here, a plaintiff's antitrust claims are only timely if the statutes of limitation are tolled, a plaintiff's reliance on tolling may be barred by laches.  *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 447, 453 (7th Cir. 1991) (rejecting tolling where plaintiff failed to file suit within a reasonable time).  As the Eighth Circuit explained, "if plaintiff asserts a federal statute of limitations should be extended by applying an equitable principle such as fraudulent concealment or tolling, plaintiff's unreasonable delay − whether or not it is called laches − becomes relevant."  *Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 170 (8th Cir. 1995) (en banc), *abrogation on other grounds recognized in Madison v. IBP, Inc.*, 330 F.3d 1051, 1056 (8th Cir. 2003).  The doctrine of laches operates to bar a plaintiff's claims when the plaintiff has (1) unreasonably delayed pressing its rights and (2) thereby caused prejudice to the defendant.  *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002) (explaining that "laches penalizes inexcusable dilatory behavior" by the plaintiff); *Jackson v. Axton*, 25 F.3d 884, 886 (9th Cir. 1994) ("Laches is based on the plaintiff's delay in beginning litigation . . .").  While a court's determination of whether laches applies is necessarily a context-specific inquiry, "where the elements of laches are apparent on the face of the complaint, it may be asserted on a motion to dismiss for failure to state a claim upon which relief can be granted."  *Russell v. Thomas*, 129 F. 605, 606 (S.D. Cal. 1955); *see also McCune v. Alioto Fish Co.*, 597 F.2d 1244, 1249-50 (9th Cir. 1979) (stating that complaint may be dismissed on its face where "undisputed facts" establish claims are barred by laches).

A.    **The DAPs Have Unreasonably Delayed Pressing Their Rights.**

"A determination of whether a party exercised unreasonable delay in filing suit consists of two steps.  First, we assess the length of delay, which is measured from the time the plaintiff knew or should have known about its potential cause of action.  Second, we decide whether the plaintiff's delay was reasonable."  *Jarrow Formulas*, 304 F.3d at 838 (internal citations omitted).   "In determining reasonableness, courts look to the cause of the delay."  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001).  Laches applies to bar a plaintiff's claims where the plaintiff offers

"no viable justification for the delay."  *Id*. (holding plaintiff's delay in instituting claims was unjustified so laches barred claims).

Here, the DAPs' allegations establish that their claims against Thomson Consumer are barred by laches.  In their complaints, the DAPs do not attempt to explain or provide a valid excuse for why they delayed filing suit against Thomson Consumer for *six years* after November 2007, when they admit they learned of the alleged antitrust conspiracy that is the subject of their complaints.  The DAPs cannot argue that they failed to file claims against Thomson Consumer until November and December 2013 because they believed any claims they might have against Thomson Consumer were adequately addressed by the numerous CRT-related class actions filed in late 2007. The DAPs have known since those actions were filed that Thomson Consumer was *never* named as a defendant in any of the class action complaints filed by the DPPs or IPPs.  Accordingly, the DAPs knew that if they wanted to join Thomson Consumer as a defendant and assert claims against it, they needed to act *then*.  The DAPs, however, did nothing.  They slept on their rights and allowed these sprawling, highly complex CRT actions to proceed for six years before attempting to drag Thomson Consumer into them.

There is no dispute that the DAPs' delay was unreasonable.  This Court has already found that "[t]he DAPs had ample time to add Thomson to their complaints without delay or prejudice, but they did not" and that their delay was "not justifiable." (*Id*. at 5-6.)  In their subsequently filed complaints, the DAPs plead no facts that justify this unreasonable delay because no such facts exist. Moreover, the DAPs dilatory conduct is also established by their own admissions.  The DAPs have previously admitted that "the Defendants produced the majority of their documents in late 2011." ([Dkt. 1609] at 8.)  Although they had access to these documents when they filed their opt-out complaints in November 2011 − and for years before − the DAPs chose not to name Thomson Consumer as a defendant.  Indeed, by their own admission, it was not until almost a year later, when the Indirect Purchaser Plaintiffs sought leave to add the Thomson Defendants (with Mitsubishi Electric and Videocon) that the DAPs even began considering naming the Thomson Defendants.  (*Id*. at 4.)  Yet, the DAPs delayed over six more months − while discovery that was

1  "proceeding apace" − before they sought leave to assert their own claims against Thomson

2  Consumer.

3  　　　In short, it is undisputed that the DAPs knew or should have known about their potential

4  claims against Thomson Consumer since November 2007, but solely because of the DAPs' own

5  lack of diligence, they delayed seeking leave to attempt to join Thomson Consumer as a defendant

6  and assert claims against it until March 2013. Accordingly, the DAPs have unreasonably delayed

7  pressing their rights as a matter of law. *See McCune,* 597 F.2d at 1250.

8  　　　**B.　　The DAPs' Delay Has Caused Thomson Consumer Serious Prejudice.**

9  　　　Courts have recognized that various forms of prejudice are sufficient to establish laches.

10  "The reason for this is clear and, in some sense, definitional: The very purpose of laches as an

11  equitable doctrine − and the reason that it differs from a statute of limitations − is that the *claim is*

12  *barred because the plaintiff's delay occasioned the defendant's prejudice*." *Danjaq,* 263 F.3d at

13  954 (emphasis added). In other words, "[u]nlike a limitations period, which bars an action strictly

14  by time lapse, laches bars a claim if unreasonable delay causes prejudice to the defendant."

15  *International Tel. & Tel. Corp. v. General Tel. & Elecs. Corp.,* 518 F.2d 913, 926 (9th Cir. 1975);

16  *see also Cutting v. Woodward*, 255 F. 633, 637 (9th Cir. 1918).

17  　　　The DAPs' delay has caused Thomson Consumer several forms of irreparable prejudice.

18  First, as the Court has previously recognized, the DAPs' delay has severely prejudiced the Thomson

19  Defendants' ability to defend themselves. Discovery in these actions began nearly four years ago,

20  on March 8, 2010. ([Dkt. No. 1609] at 2.) Since that time, the parties have produced nearly 5

21  million pages of documents (many in foreign languages) and conducted almost 100 depositions of

22  witnesses from around the world. Thomson Consumer has not had access to or reviewed virtually

23  any of these documents and has not participated in any depositions. It has not had the opportunity

24  to question any of these witnesses, and it is unclear, if not unlikely, it would ever have an

25  opportunity to go back and do so if it is added to these proceedings now. Plaintiffs' expert reports

26  are due on March 24, 2014, and Defendants' opposition reports are due June 24, 2014. ([Dkt. No.

27

28

2304].)  Thomson Consumer has not retained an expert or participated in any expert discovery to date.

As such, the DAPs' inexcusable delay will cause Thomson Consumer at least one of two forms of severe prejudice.  Under one approach, the Court would require Thomson Consumer to play "catch up" by forcing it to meet existing deadlines despite its late entry.  This approach would impose an extraordinary burden on Thomson Consumer and put it at an unfair disadvantage.  Given the size, complexity, and volume of the factual and legal issues raised by this case, Thomson Consumer cannot simultaneously:  (1) gather and review its own documents; (2) review, analyze, and, as necessary, translate the millions of pages of documents produced by other parties in this case; (3) identify, locate, and interview its own fact witnesses (if any can be located) regarding events that occurred 10-15 years ago in an industry that it has not participated in since 2005; (4) review thousands of pages of deposition transcripts; (5) conduct supplemental depositions of many of the nearly 100 witnesses that have already been deposed in this case, most of whom will undoubtedly resist being re-deposed; (6) synthesize all of this information and prepare summary judgment motions; and (7) engage experts to prepare factually and economically complex expert reports in just a few months.  To require Thomson Consumer to complete such a monumental task in less than one-fifth the time the other parties in this case have had would be fundamentally unfair and unduly burdensome.  Because of the DAPs' delay, Thomson Consumer, through no fault of its own, would be deprived of the opportunity to fully defend itself.  Indeed, the Court has already recognized as much when it found in its September 26, 2013 Order that "discovery in this case has proceeded apace" and requiring the Thomson Defendants to enter the litigation now would put them at an unfair, prejudicial disadvantage.  (*See* Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].)  The DAPs' subsequent procedural maneuvers − merely filing new complaints − has not remedied this prejudice.  Accordingly, the Court should dismiss the DAPs' newly filed complaints with prejudice, so as to not to not allow the DAPs to prejudice Thomson Consumer and benefit themselves as a result of their inexcusable delay.

1    The alternative approach would force Thomson Consumer to go it alone on its own later

2    discovery and trial schedule.  This would also cause Thomson Consumer to suffer severe prejudice

3    by depriving it of the cost efficiencies that have resulted from the joint defense group − cost

4    efficiencies that are vital for any defendant attempting to survive the costs and burdens of defending

5    a massive antitrust MDL such as this one.  *See Kendall v. VISA U.S.A., Inc.,* 518 F.3d 1042, 1047

6    (9th Cir. 2008) (stating that "discovery in antitrust cases frequently causes substantial expenditures

7    and gives the plaintiff the opportunity to extort large settlements even where he does not have much

8    of a case.").  It would require Thomson Consumer to duplicate the efforts of the joint defense group

9    entirely at its own expense and the Court to continue to devote enormous resources to adjudicating

10   these matters − matters that have been pending since 2007 − for several more years to come.

11   Most critically, as Thomson Consumer argues in its briefing on its motion to dismiss Sharp's

12   claims, and as the Mitsubishi Electric defendants point out in their motion to dismiss these same

13   DAPs' complaints, late-added defendants like Thomson Consumer will be placed at a significant

14   strategic disadvantage.  As the Court knows, antitrust damage actions provide for joint and several

15   liability − they do not permit contribution among defendants.  Regardless of its lack of culpability,

16   because it will be the last defendant, Thomson Consumer will almost certainly be subject to the risk

17   of enormous financial exposure as the DAPs will attempt to recover from Thomson Consumer

18   amounts left unsatisfied by settlements or judgments involving other defendants.  Thus, if the

19   DAPs' claims against Thomson Consumer are placed on a later, separate schedule, the DAPs will

20   benefit from their delay by being able to place Thomson Consumer at a severe strategic

21   disadvantage − a posture they will undoubtedly seek to exploit by demanding an exorbitant

22   settlement or judgment.

23   The DAPs' foot-dragging has also caused Thomson Consumer evidentiary prejudice, which

24   courts recognize as barring claims when a plaintiff's unreasonable delay has caused evidence

25   needed to defend the action to become "lost, stale, or degraded" and difficult or impossible to obtain

26   because of the passage of time.  *Danjaq*, 263 F.3d at 954; *see also McCune*, 597 F.2d at 1250

27   (affirming trial court's dismissal of complaint on basis of laches where plaintiff's three-year delay

28

in bringing claims made it difficult for defendant to obtain evidence needed to defend claims). Here, the evidentiary prejudice suffered by Thomson Consumer is apparent from the face of the pleadings.  For example, the DAPs have admitted that Thomson Consumer shut down its U.S.-based CRT operations in 2004 and that the Thomson Defendants entirely exited the CRT business in 2005 when their CRT-related assets and personnel were transferred to Videocon Industries, Ltd. (*See, e.g.*, Interbond FAC at ¶¶ 22-26).  By waiting until 2013 to first assert their claims, the DAPs have put Thomson Consumer at a severe disadvantage.  Thomson Consumer will be forced to defend itself by attempting to locate documents and former employees regarding a business that ceased operations over eight years ago.  As such, much of the evidence and many of the witnesses needed to prepare its defense will be difficult, if not impossible to obtain.  And, even if Thomson Consumer is able to obtain this evidence, most of the former Thomson Consumer personnel needed to explain and interpret it have long since left the company.  Thomson Consumer's ability to prepare its defense will be severely prejudiced by the unavailability of this "lost, stale, or degraded" evidence.  *Danjaq*, 263 F.3d at 954.

In sum, the DAPs' unjustified and unreasonable six-year delay has caused Thomson Consumer irreparable prejudice and put it at a severe strategic disadvantage.  As the Court found in its September 26, 2013 Order, there is no justification for the DAPs' delay – it is solely the result of their own lack of diligence.  As such, laches bars the DAPs from tolling the relevant statutes of limitation, all of their claims against Thomson Consumer are untimely, and Thomson Consumer is entitled to dismissal of the DAPs' claims against it with prejudice.

## II.     The DAPs' Claims Are Barred by the Applicable Statutes of Limitation.

The DAPs' foot-dragging also means that the applicable statutes of limitation on their claims, which arose no later than July 2005, expired years ago.[2]  Where, as here, it is apparent on

---

[2] The federal antitrust claim is subject to a four-year statute of limitations.  *See* 15 U.S.C. § 15(b). Most of the state law claims are also subject to a four-year statute of limitations.  *See* Ariz. Rev. Stat. § 44-1410(B); Cal. Bus. & Prof. Code § 16750.1; Cal. Bus. & Prof. Code § 17208; Fla. Stat. Ann. §95.11(3)(f); 740 Ill. Comp. Stat. § 10/7(2); Iowa Code Ann. § 553.16(2); Mass. Gen. Laws Ann. ch. 260, § 5A; Mich. Comp. Laws Ann. § 445.781; Minn. Stat. Ann. § 325D.64; Neb. Rev. Stat. § 25-206; Nev. Rev. Stat. § 598A.220; N.M. Stat. Ann. § 57-1-12; N.Y. Gen. Bus. Law § 340(5); N.C. Gen. Stat. § 75-16.2; Wash. Rev. Code § 19.86.120.  Some have a shorter three-year

1   the face of the complaint that the applicable statutes of limitation have expired, the plaintiff's claims

2   should be dismissed in accordance with Fed.R.Civ.P. 12(b)(6).   *Von Saher v. Norton Simon*

3   *Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).   As most of these arguments have

4   been well covered in the briefing on other pending motions, Thomson Consumer here offers a

5   condensed overview of the DAPs' failures to plead adequate facts to support any of the tolling

6   theories that they seek to rely on.   (*See* Thomson Consumer's Motion to Dismiss Sharp's First

7   Amended Complaint [Dkt. No. 2236 at 7-17] and its Reply in support of the same [Dkt. No. 2317 at

8   5-13], which are incorporated by reference as if fully stated herein.)

9         **A.**    **The Statutes of Limitation on Claims Against Thomson Consumer Began to
10                Run No Later Than July 2005 When Thomson Consumer Exited the CRT
                  Industry.**

11        Under the antitrust laws, "a cause of action begins to accrue and the statute [of limitations]

12  begins to run when a defendant commits an act that injures the plaintiff's business."   *Zenith Radio*

13  *Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).   A plaintiff must file its claim within

14  four years following the defendant's last overt act in furtherance of the antitrust conspiracy.   *Id.*

15  Moreover, the sale of or "[r]esignation from the conspiring business has frequently been held to

16  constitute effective withdrawal" from the alleged conspiracy and to commence the statute of

17  limitations.   *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999),

18  *clarified in* 211 F.3d 1224 (clarifying that although statute of limitations commences at withdrawal,

19  equitable tolling may still apply); *United States v. Antar*, 53 F.3d 568, 584 (3rd Cir. 1995).

20        Here, the DAPs do not plausibly allege that Thomson Consumer took *any* overt act in

21  furtherance of the alleged antitrust conspiracy after July 2005 when its CRT-related assets and

22  employees were transferred to Videocon.   Moreover, the allegations that Thomson Consumer's

23  parent, Thomson SA, held a minority equity stake in Videocon following the 2005 sale does not

24  allow the Court to plausibly infer that Thomson Consumer continued to participate in the alleged

25  conspiracy after July 2005.   The DAPs have not plausibly alleged that any individual employed by

26  Thomson Consumer took any overt act in furtherance of the alleged conspiracy after it withdrew

27  _____

28  statute of limitations.   *See* Kan. Stat. Ann. § 60-512(2); Miss. Code Ann. § 15-1-49; N.Y. C.P.L.R.
    § 214(2).   Only one has a longer period of six years.   *See* Wis. Stat. Ann. § 133.18(2).

          10              

from the CRT industry in July 2005.  Thus, the statutes of limitation began to run over eight years ago and clearly expired before the DAPs filed their claims in November and December 2013.

**B.     The DAPs Do Not Plead Specific Facts That Establish a Plausible Basis for Tolling the Statutes of Limitation for Its Claims Against Thomson Consumer.**

To survive a motion to dismiss, the complaint must "specifically identify every basis [the plaintiff] intends to rely on to establish the tolling of the statute of limitations." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, MDL Dkt. No. 4867 at 3 (N.D. Cal. Feb. 23, 2012) (granting motion to dismiss where plaintiff failed to plead specific facts that established statute of limitations was tolled).  The DAPs attempt to plead fraudulent concealment, class action tolling, and government action tolling, but they have not pleaded any facts that establish a sufficient basis for applying these tolling doctrines here.  Thus, in addition to being barred by laches, just a few months before the close of discovery, the DAPs fail to plead facts that plausibly establish any tolling theory applies to save their untimely claims.

**1.     Fraudulent Concealment Does Not Apply.**

To survive a motion to dismiss, a plaintiff attempting to allege fraudulent concealment must satisfy the heightened pleading standards of Fed. R. Civ. 9(b) and plead specific facts that identify the time, place, specific content, and identity of the speaker who made the false representations. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  The plaintiff "must do more than show that it was ignorant of its cause of action . . . it must plead facts showing that [Thomson Consumer] affirmatively misled it."  *Conmar Corp. v. Mitsui & Co. (USA) Inc.*, 858 F.2d 499, 502 (9th Cir. 1988).  A defendant's silence or failure to "own up" to misconduct does not constitute fraudulent concealment.  *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir. 1987).  Likewise, a plaintiff's mere ignorance of its cause of action does not toll the statute of limitations. *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).  Moreover, a plaintiff may only rely on a fraudulent concealment theory during time periods for which it pleads with particularity in its complaint specific, dated acts of alleged concealment.  *See In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1078-9 (D. Kan. 2009) (granting motion to dismiss and limiting time periods for

1    which plaintiffs could rely on theory of fraudulent concealment to only those periods corresponding

2    with dated acts of concealment pleaded with particularity in antitrust plaintiffs' complaint).   A

3    plaintiff also fails to adequately plead fraudulent concealment if it fails to plead the specific acts of

4    diligence it undertook to uncover its claims.  *Conmar,* 858 F.2d at 502; *In re Processed Egg Prods.*

5    *Antitrust Litig.*, 2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013).

6           While in certain circumstances it may be inappropriate to resolve fact-intensive claims of

7    fraudulent concealment at the motion to dismiss stage, this principle does not apply when, as here,

8    the plaintiff fails to plead *any* specific facts that suggest:  (1) the moving defendant took affirmative

9    acts to fraudulently conceal its alleged wrongdoing or (2) the plaintiff took any acts to discover its

10   claims.  *See In re Transpacific Passenger Air Trans. Antitrust Litig.,* No. 07-cv-5634 CRB, 2011

11   U.S. Dist. Lexis 49853 *69 (N.D. Cal. May 9, 2011) (dismissing vague, conclusory allegations of

12   fraudulent concealment for failure to satisfy Rule 9(b)); *In re Processed Egg Prods. Antitrust Litig.*,

13   2013 U.S. Dist. LEXIS 119936 *9-13 (E.D. Pa. Aug. 23, 2013) (granting motion to dismiss with

14   prejudice as a result of plaintiffs' failure to plead specific facts supporting fraudulent concealment).

15   Finally, the Ninth Circuit has held that a plaintiff cannot "use the fraudulent concealment by one

16   defendant as a means to toll the statute of limitations against other defendants."  *Barker v. Am.*

17   *Mobil Power Corp.,* 64 F.3d 1397, 1402 (9th Cir. 1995).   Thus, to plead a viable fraudulent

18   concealment claim, a plaintiff must plead specific facts establishing *that* defendant affirmatively

19   concealed its alleged misconduct.  *Id.*; *see also Metz v. Unizan Bank*, 416 F. Supp. 2d 568, 579

20   (N.D. Ohio 2006) (citing *Barker* and evaluating adequacy of allegations of fraudulent concealment

21   on motion to dismiss).

22          The allegations in the DAP complaints fall well short of these standards.  First, the DAPs

23   simply do not allege *any* specific acts by Thomson Consumer after July 2005 that could plausibly

24   suggest it affirmatively concealed its alleged participation in the conspiracy after that date.  As such,

25   the DAPs do not allege the time, place, specific content, and identity of the speaker regarding any

26   alleged misrepresentation by an employee of Thomson Consumer.   Moreover, the DAPs do not

27   plead facts with particularity that make it plausible that any defendant fraudulently concealed the

28

conspiracy from them during the only relevant time period here – after Thomson Consumer exited the CRT industry in July 2005.  Instead, the last act of purported fraudulent concealment by other defendants pled by the DAPs is alleged to have occurred in 2004.  (*See* Target Compl. at ¶ 226.)[3]  Therefore, by failing to allege any specific facts that plausibly suggest Thomson Consumer or other Defendants fraudulently concealed the alleged conspiracy after 2004, the DAPs have failed to satisfy the heightened pleading standards of Rule 9(b).  *See In re Urethane Antitrust Litig.*, 663 F. Supp. 2d at 1078-9.

Second, the DAPs have failed to plead facts demonstrating they made diligent attempts to discover their claims.  Instead, the DAPs merely make the bald, conclusory assertion that they "could not have discovered through the exercise of reasonable diligence the existence of the conspiracy alleged herein" and that they did not have "actual or constructive knowledge of the facts supporting its claims for relief despite diligence in trying to discover the pertinent facts." (*See, e.g.*, Circuit City Compl. at ¶ 224).  Courts have uniformly held that such conclusory allegations are inadequate and do not toll the applicable statutes of limitation.  *See Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980) (rejecting fraudulent concealment where plaintiff failed to "allege any facts . . . tending to excuse his failure to discover [defendant's] misconduct"); *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (rejecting fraudulent concealment where plaintiff failed to "state facts showing his due diligence in trying to uncover the facts").[4]  Thus, despite years of litigation and voluminous discovery from other Defendants involved in the alleged conspiracy, the DAPs have failed to allege any specific acts of fraudulent

---

[3] The other dated allegations in the DAP complaints in support of their fraudulent concealment theory are also inadequate.  They describe acts that allegedly occurred in 1999 and thus do not plausibly plead fraudulent concealment by defendants after Thomson Consumer exited the CRT industry in 2005.  (Target Compl. at ¶ 226.)  In addition, these allegations cite only to internal documents of individual defendants that could not have affirmatively misled the DAPs.

[4] The bare allegation that "[b]y its very nature, Defendants' price-fixing conspiracy was inherently self-concealing" also fails to plead fraudulent concealment by Thomson Consumer.  *See Global Services v. Ikon Office Solutions*, No. 10-cv-05974, 2011 WL 6182425 at *4 (N.D. Dec. 12, 2013) (granting motion to dismiss antitrust claims because allegation that alleged conspiracy was "self-concealing" does not plead fraudulent concealment of statute of limitations as a matter of law and collecting cases).

concealment by Thomson Consumer after it withdrew from the CRT industry in July 2005 or what specific due diligence the DAPs undertook to uncover facts related to Thomson Consumer's alleged participation in the conspiracy.  The DAPs have failed to plead fraudulent concealment, so their claims are time-barred.

## 2. *American Pipe* Tolling Does Not Apply.

The DAPs stale claims against Thomson Consumer are not tolled under *American Pipe* by virtue of the Direct Purchaser Plaintiffs ("DPPs") consolidated amended complaint.  (*See* Dkt. No. 436.)  While the filing of a class action may toll the statute of limitations for claims by putative class members against defendants *named* in the class action, *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974), it does not toll the statute of limitations as to claims against a party who is not named as a defendant.  *See, e.g., Boone v. Citigroup, Inc.*, 416 F.3d 382, 392 (5th Cir. 2005) (noting that "it is facially obvious" that the pendency of a class action does not toll the statute of limitations as to defendants not named in the class action); *Wyser-Pratte Mgt. Co. v. Telxon Corp.*, 413 F.3d 553, 567-68 (6th Cir. 2005) (holding that class action tolling does not apply against a defendant who was not named in the class action); *Arneil v. Ramsey*, 550 F.2d 774, 782 n.10 (2d Cir. 1977) (same), *rev'd on other grounds by Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983).  Moreover, this is true even where an affiliate of a defendant was named in a prior class action proceeding.  *Tech Data Corp. v. AU Optronics Corp.*, No. 07-md-1827, 2012 WL 3236065, at *5 (N.D. Cal. Aug. 6, 2012).[5]  Here, Thomson Consumer was not and has never been a party to any class action proceedings.  Accordingly, *American Pipe* tolling does not save the DAPs' otherwise time-barred claims against Thomson Consumer.[6]

---

[5] Thus, the fact that Thomson SA was named in two of the indirect and two of the direct complaints does not toll the DAPs' claims against Thomson Consumer.  For a more extensive discussion of case law from across the country applying this rule, Thomson Consumer directs the Court to its Motion to Dismiss Sharp's First Amended Complaint [Dkt. No. 2236 at 11] and its Reply in support of the same [Dkt. No. 2317 at 8-10], which are incorporated by reference as if fully stated herein.

[6] In any event, even claims as to Thomson SA could be tolled only from the filing of the original complaints until March 16, 2009, when both the IPPs and DPPs decided not to name Thomson SA as a defendant in their consolidated amended class action complaints, which means that *American Pipe* tolling does not do enough to save claims filed over eight years after they accrued.  *See Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 54 (D. Mass. 1995) (holding that a

1        *American Pipe* also does not apply to the DAPs' *state* law claims for two reasons.  First,

2   *American Pipe* tolling does not apply to claims that are "different [from] or peripheral [to]" those

3   claims asserted in the class action.  *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983).

4   Here, the DPP complaints only asserted claims under federal law (Dkt. No. 436 at ¶ 214), while the

5   various DAPs assert claims under distinct antitrust and unfair competition laws of seventeen

6   different states.  *See Williams v. Boeing Co.*, 517 F.3d 1120, 1135-36 (9th Cir. 2008) (denying

7   tolling on claims not alleged in earlier complaint).  Second, *American Pipe* tolling would only apply

8   to the DAPs' state law claims if the states at issue specifically permit cross-jurisdictional tolling.

9   *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) ("[F]ederal courts

10  have declined to import the doctrine into state law where it did not previously exist.").  The DAPs

11  do not plead that any of those states whose laws it invokes recognize cross-jurisdictional tolling.  In

12  fact, of the seventeen states listed in the various complaints, it appears that only two have

13  specifically addressed cross-jurisdictional tolling:  Michigan has adopted cross-jurisdictional

14  tolling,[7] *see Lee v. Grand Rapids Board of Education*, 384 N.W.2d 165 (Mich. App. 1986), and

15  Illinois has explicitly rejected it, *see Portwood v. Ford Motor Co.,* 695 N.E.2d 941 (Ill. App. Ct.

16  1997).  Moreover, numerous federal courts have held that many of the states at issue here would

17  refuse to recognize cross-jurisdictional tolling if they considered the issue.[8]  The Court should

18  consolidated amended complaint supersedes any earlier complaint and no tolling is available against
19  a defendant not named in that superseding complaint).

20  [7] That Michigan has adopted cross-jurisdiction tolling is irrelevant, however, because, as noted
    above, Thomson Consumer has never previously been named as a defendant in any prior CRT class
21  action.

22  [8] *See, e.g., Newport v. Dell, Inc.*, No. CV-08-0096, 2008 WL 4347311 at *5 (D. Ariz. Aug. 21,
    2008) ("[I]it is unlikely that Arizona courts would recognized the tolling effect of a related class
23  action filed in another jurisdiction."); *Clemens*, 534 F.3d at 1025 (holding that "the weight of
    authority and California's interest in managing its own judicial system counsel us not to import the
24  doctrine of cross-jurisdictional tolling into California law"); *Vincent v. Money Store*, No. 11 Civ.
    7685, 2013 WL 57794, at *14 (S.D.N.Y. Jan. 4, 2013) ("California has not adopted cross-
25  jurisdictional *American Pipe* tolling and there is no basis to do so in this case."); *Becnel v. Deutsche
    Bank, AG*, 507 Fed. Appx. 71, 73 n.2 (2d Cir. 2013) (unpublished) (holding that Florida would
26  almost certainly reject cross-jurisdictional class action tolling); *Senger Brothers Nursery, Inc. v. E.I.
    Dupont de Nemours & Co.*, 184 F.R.D. 674, 682-83 (M.D. Fla. 1999) (predicting that Florida would
27  not recognize cross-jurisdictional class action tolling); *In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2012 WL 3155693 at *4 (N.D. Cal. Aug. 2, 2012) (refusing to predict that Massachusetts would
28

1    follow the cautious approach of the Court of Appeals in *Clemens* and many other courts and refuse

2    to permit cross-jurisdictional tolling unless and until a state has expressly adopted the doctrine.  *See*

3    *Clemens*, 534 F.3d at 1025.

         **3.      Government Action Tolling Does Not Apply.**

5            Finally, the DAPs are incorrect that the limitations periods have been tolled pursuant to 15

6    U.S.C. § 16 by "criminal proceedings and investigations against several Defendants and co-

7    conspirators commencing on at least February 10, 2009."  (*See, e.g.*, Target Compl. at ¶ 245).  This

8    statute states that "[w]henever any civil or criminal proceeding is instituted by the United States to

9    prevent, restrain, or punish violations of any of the antitrust laws," the statute of limitations is tolled

10   for certain actions "arising under said laws and based in whole or in part on any matter complained

11   of in said proceeding" during the proceeding and for one year following its completion.  15 U.S.C.

12   § 16(i).  The Ninth Circuit has explained that 15 U.S.C. § 16(i) should be applied in a manner that

13   balances its two purposes:  (1) to strengthen private civil antitrust enforcement by enabling private

14   litigants to benefit from evidence uncovered during prior government antitrust actions; and (2) to

15   provide a statute of repose.  *Duggan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 868-72 (9th Cir.

16   1978).  Courts must "strike an exquisite balance" between these goals to ensure that the application

17   of government action tolling in a particular case serves *both* purposes.  *Id.* at 852.  Interpretations

18   that would aid the private litigant by extending the period within which a private suit can be

19   brought, but would also "frustrate" and "ignore the statute-of repose purpose of section 16(i)" must

21   adopt cross-jurisdictional class action tolling); *Barela v. Showa Denko K.K.*, 1996 WL 316544 at *4
     (D.N.M. Feb. 28, 1996) (predicting that New Mexico would not recognize cross-jurisdictional class
22   action tolling); *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 282 (S.D.N.Y. 2011) ("In the
     face of these overwhelming precedents, I cannot say that New York would adopt cross-
23   jurisdictional tolling and decline to import the doctrine into New York's law."); *Champion v. Homa*,
     2008 WL 900967 at *11 (M.D. Ala. March 31, 2008) (refusing to apply cross-jurisdictional tolling
24   to claims under the laws of Alabama, California, Colorado, Florida, Iowa, Kansas, Kentucky,
     Michigan, Nebraska, Ohio, and Washington).  Kansas does not have any tolling provision that
25   applies during the pendency of an action, but rather a saving statute that saves a second action filed
26   within six months of a non-merits-based dismissal of a pending action.  *See Seaboard Corp. v.
     Marsh, Inc.*, 284 P.3d 314, 396-97 (Kan. 2012) (citations omitted).  Thomson Consumer has never
27   previously been named as a defendant in any CRT-related action, so the DAPs' Kansas claims
     against it are not preserved.

1    be avoided.  *Id*. at 871-72.  Therefore, "care must be exercised to insure that reliance upon the

2    government proceeding is not a mere sham" or else the statute may be improperly invoked by a

3    private plaintiff.  *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 335 (1979).

4         Here, applying 15 U.S.C. § 16(i) to toll the statute of limitations based on the mere filing of

5    the fugitive indictments would not serve either purpose of the statute.  A search of the Court's

6    docket reveals that effectively there are no pending criminal proceedings against the individuals that

7    are the subject of the Lin, Cheng, Yeh, and Lee *et al*. Indictments.  Indeed, the Court in *United*

8    *States v. Yeh*, No. 10-cv-00231, has even refused to consider the defendant's motion to dismiss

9    since the defendant has never been arraigned.  Since no meaningful criminal proceedings are

10   currently pending against these fugitives, there is no evidence or other fruit of the government

11   indictments from which the DAPs may benefit.  Therefore, tolling the statute of limitations would

12   not serve the first purpose of § 16(i).[9]

13        Second, finding that the fugitive indictments tolled the statute of limitations "would frustrate

14   the statute-of-limitations purpose of section 16(i)" by effectively eliminating the statute of

15   limitations.  *Duggan*, 570 F.2d at 871.  In circumstances such as this one, where the government

16   files an indictment, but the defendant is never arraigned and no government action is actually

17   prosecuted, the statute of limitations would *never* expire.   In accordance with fundamental

18   principles of statutory construction, an interpretation of 15 U.S.C. § 16(i) that would produce such

19   an absurd result must be avoided.  *See Ariz. State Bd. for Charter Schools v. U.S. Dept. of Ed.*, 464

20   F.3d 1003, 1008 (9th Cir. 2006); *see also Credit Suisse Secs. (USA) LLC v. Simmonds,* 132 S.Ct.

21   1414, 1420 (2012) (rejecting interpretation of a statute that would lead to potentially "endless

22   tolling).  Consistent with the Ninth Circuit's direction in *Duggan* and the purposes of 15 U.S.C.

23   § 16(i), the Court should find that the statute of limitations has not been tolled by the Lin, Cheng,

24   Yeh, and Lee *et al*. Indictments.

---

26   [9] While the government did proceed against SDI Samsung, that information involved a separate
     market in which Thomson Consumer was not involved, as explained below.  And to the extent that
27   the SDI Samsung prosecution did toll the statute of limitations for the five months it was pending,
     that limited tolling does not save the DAPs' claims.

28

1    Moreover, the DAPs have not pleaded allegations that establish the necessary overlap

2    between its claims against Thomson Consumer and the fugitive indictments.  For the statute to

3    apply, the private plaintiff must prove, by a "comparison of the two complaints on their face[s]," a

4    significant overlap between the two actions − "that the matters complained of in the government

5    suit bear a real relation to the private plaintiff's claim for relief."  *Leh v. General Petroleum Group*,

6    382 U.S. 54, 59 (1965).  Accordingly, courts have held that "limitations are not tolled when

7    government and subsequent private suits arose in distinct markets."  *Novell, Inc. v. Microsoft Corp.*,

8    505 F.3d 302, 320 (4th Cir. 2007) (quoting 2 Philip E. Areeda & Herbert Hovenkamp, Antitrust

9    Law P 321a, at 241 (2d ed. 2000)) (internal quotations omitted);[10] *see also In re Coordinated*

10   *Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 481, 486 (C.D. Cal. 1991)

11   (rejecting government action tolling because government and private actions related to different

12   geographic markets).

13   Here, the DAPs' allegations are inadequate to toll the statutes of limitations under 15 U.S.C.

14   § 16(i) for its claims against Thomson Consumer.  The DAPs do not allege that there was a

15   "significant overlap" between its claims against Thomson Consumer and most of the government

16   indictments because they involve distinct markets.  To wit, the SDI Information and the Cheng,

17   Yeh, and Lee *et al*. Indictments only allege that these defendants participated in an anticompetitive

18   conspiracy involving "CDTs . . . for use in computer monitors and other products with similar

19   technological requirements."  (*See* Ex. B at ¶ 4, Ex. C. at ¶ 4, Ex. D. at ¶ 6 attached to Thomson

20   Consumer's Mot. to Dismiss Sharp's FAC [Dkt. No. 2236]; Ex. 1 at ¶ 8, attached hereto.)  They do

21   not make *any* allegations regarding the separate and distinct CPT market − the market for CRTs

22   used in televisions and the only market in which the DAP complaints allege that Thomson

23   Consumer participated.  (*See* Best Buy Compl. at ¶ 28).  These indictments relate to an entirely

24   different product market than the one in which Thomson Consumer is alleged to have participated

25

26

27   ───────────────

[10] For an extended discussion of the Fourth Circuit's decision in *Novell*, see Thomson Consumer's

28   Mot. to Dismiss Sharp's FAC [Dkt. No. 2236 at 14-15].

1   and did not toll the statutes of limitations for the DAPs' claims against Thomson Consumer.  *See*

2   *Novell, Inc.*, 505 F.3d at 320-22.

3      Second, although the Lin Indictment does allege that the defendant conspired to fix the price

4   of CRTs used in televisions, it makes clear that all of Mr. Lin's alleged anticompetitive activities

5   occurred entirely in Asia in his capacity as Chairman and CEO of Chunghwa, a company that

6   manufactured CRTs in Asia.  (*See* Ex. A, ¶¶ 15-16, attached to [Dkt. No. 2236].)  By contrast,

7   Thomson Consumer was a "manufacturer of CRTs for the United States market, with plants located

8   in Scranton, Pennsylvania; Marion, Indiana; and Mexicali, Mexico." (*See, e.g.,* Circuit City Compl.

9   at ¶ 27.)  The DAPs do not allege that anyone from Thomson Consumer (1) ever had any contact

10  with Mr. Lin or Chungwa or (2) participated in any anticompetitive activities in Taiwan, Korea,

11  Malaysia, China, Thailand, or Indonesia.  As such, the DAPs fail to plead facts that establish a

12  significant overlap between the two actions based on a "[c]omparison of the two complaints on their

13  face[s]." *Leh*, 382 U.S. at 59.

14     Finally, the DAPs' state law claims are not preserved by 15 U.S.C. § 16(i), which only tolls

15  the statute of limitations as to rights of action "arising under" "the antitrust laws."  Section 1 of the

16  Clayton Act sets forth the exclusive list of "antitrust laws," *Nashville Milk Co. v. Carnation Co.*,

17  355 U.S. 373, 376 (1958), *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1031 n.4 (9th Cir.

18  2001) (same), and none of the state laws relied upon by the DAPs are on that list.  *See* 15 U.S.C.

19  § 12.  Accordingly, the DAPs' state law claims are not tolled by virtue of 15 U.S.C. § 16(i).  Those

20  claims are therefore time-barred and should be dismissed with prejudice.

21  **III.**  **The DAPs' Claims Against Thomson Consumer Should Be Dismissed Because They**
       **Have Failed to Allege Facts That Plausibly Establish the DAPs Qualify for the**
22     **Ownership or Control Exception to *Illinois Brick*.**

23     The DAPs have alleged a conspiracy to fix the prices of CRTs − products they never

24  directly purchased from Thomson Consumer or other Defendants.  Therefore, as indirect purchasers

25  of the allegedly price-fixed product, to state viable claims, they must allege facts that make it

26  plausible that they possess standing under a recognized exception to *Illinois Brick*.  *Kendall*, 518

27  F.3d at 1050 (affirming dismissal of complaint that did not plead "evidentiary facts" that plausibly

28

1   established indirect purchasers qualified for *Illinois Brick* exception).  The Court has previously

2   determined that the ownership or control exception is the only exception potentially available to the

3   DAPs.  [Dkt. No. 1856 at 5].

4        The Ninth Circuit has held that the ownership or control exception is applicable only where

5   the initial seller of the price-fixed good owns or controls the direct purchasers.  *See In re ATM Fee*

6   *Antitrust Litig.,* 686 F.3d 741, 756 (9th Cir. 2012).  Therefore, to adequately plead that they satisfy

7   an exception to *Illinois Brick*, the DAPs must plead "evidentiary facts which, if true, will prove"

8   that the initial seller of the price-fixed good here owned or controlled the direct purchaser.  *Id.*;

9   *Kendall,* 518 F.3d at 1047.  The DAPs do not satisfy their burden if, as they do in their complaints,

10  they just plead "ultimate facts" or legal conclusions regarding ownership or control.  (*Id.*)

11       The Court should dismiss the DAPs' claims against Thomson Consumer because the DAPs

12  do not plead *any* evidentiary facts showing that their alleged purchases satisfy the ownership or

13  control exception.  *See In re TFT-LCD Antitrust Litig.,* No. M 07-1827 SI, 2013 WL 1164897 (N.D.

14  Cal. Mar. 20, 2013) (granting motion to dismiss complaint that contained only conclusory

15  allegations of control); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059,

16  1068 n.5 (E.D. Cal. 2011); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143, 2011 WL

17  3894376, at *6 (N.D. Cal. Aug. 3, 2011).  Although the DAPs claim to have purchased CRT

18  Products from Defendants, they plead only conclusory allegations concerning their purchases.  (*See,*

19  *e.g.*, Costco Compl. at ¶ 11 ("Costco purchased CRT Products . . . directly and indirectly from

20  Defendants and their co-conspirators and/or Defendants' and their co-conspirators' subsidiaries and

21  affiliates and/or any agents Defendants or Defendants' subsidiaries and affiliates controlled.").)

22  None of the DAP complaints allege that the DAPs purchased CRT Products from the Thomson

23  Defendants or that the DAPs purchased CRT Products from the Thomson Defendants containing an

24  allegedly price-fixed CRT manufactured by the Thomson Defendants.  In fact, the DAPs do not

25  plead evidentiary facts:  (1) identifying which alleged Defendants or co-conspirators were initial

26  sellers of CRTs; (2) identifying which Defendants or other suppliers were the direct purchasers of

27  CRTs that ultimately sold finished CRT Products to even one individual DAP; or (3) that would

28

allow the Court to plausibly infer that the entities that sold CRT Products to the DAPs were owned or controlled by a DAP, the Defendants, or other named co-conspirators.  Under Ninth Circuit precedent, the DAPs' complete failure to plead any facts regarding these required elements mandates dismissal of their claims.  *See Kendall*, 518 F.3d at 1050 (affirming dismissal of complaint alleging co-conspirator exception applied where plaintiff failed to plead "evidentiary facts . . . to support such conclusion").

As the Court ruled in its September 26, 2013 Order "[s]o many years after this MDL's inception, Plaintiffs should be able to provide something more than boilerplate allegations."  (Sept. 26, 2013 Order at 5, [Dkt. No. 1960].)  Similarly, years after these actions began and before Thomson Consumer is subjected to the enormous costs and burdens of conducting discovery regarding the DAPs' untimely claims, the DAPs should be required to plead specific facts that allow the Court to plausibly infer their purchases of CRT Products qualify for the ownership or control exception.  Despite the fact that evidence regarding this topic, if it exists, would be exclusively within their control, the DAPs have failed to plead any such facts.  Accordingly, the DAPs' claims against Thomson Consumer should be dismissed with prejudice.

## IV.   Thomson Consumer Reserves Other Challenges to the Legal Adequacy of the DAPs' Claims.

Though Thomson Consumer's motion addresses only equitable and legal bars to the newly-filing complaints based on the DAPs delay in bringing their claims, it believes there are other legal defects with the complaints.  If the Court grants this motion and refuses to allow the DAPs to circumvent its September 26, 2013 Order denying leave to amend, it will have no need to reach these other arguments.  If, however, the DAP complaints survive this motion, Thomson Consumer will present its other arguments to the Court in appropriate dispositive motions prior to trial − or, in the case of arguments that the Court has already rejected, Thomson Consumer will seek to preserve its positions for appeal without needlessly re-litigating the issues before this Court.

## CONCLUSION

For the foregoing reasons, the DAPs have failed to state viable claims against Thomson Consumer, and their new complaints should be dismissed with prejudice.

Dated:  January 24, 2014

Respectfully submitted,

*/s/ Kathy L. Osborn*
Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA  94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

**Attorneys for Defendant Thomson Consumer
Electronics, Inc.**