Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: +1-303-607-3500
Facsimile: +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Specially Appearing Defendant,*
*Thomson SA*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | No. 07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Electrograph Systems, Inc. et al. v. Technicolor SA, et al., No. 13-cv-05724;*<br><br>*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Technicolor SA, et al., No. 13-cv-00141;*<br><br>*Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264;* | **THOMSON SA'S NOTICE OF MOTION AND MOTION TO DISMISS NEWLY FILED DIRECT ACTION PLAINTIFF COMPLAINTS**<br><br>Date: March 7, 2014<br>Time: 10:00 a.m.<br>Place: Courtroom 1, 17th Floor<br>Judge: Hon. Samuel Conti<br>[[Proposed] Order Filed Concurrently Herewith] |

1   *Interbond Corporation of America v.
    Technicolor SA, et al., No. 13-cv-05727;*
2

3   *Office Depot, Inc. v. Technicolor SA, et al.,
    No. 13-cv-05726;*
4

5   *Costco Wholesale Corporation v.
    Technicolor SA, et al., No. 13-cv-05723;*

6   *P.C. Richard & Son Long Island
    Corporation, et al. v. Technicolor SA, et al.,*
7   *No. 31:cv-05725;*

8   *Schultze Agency Services, LLC, o/b/o
    Tweeter Opco, LLC, et al. v. Technicolor SA,*
9   *Ltd., et al., No. 13-cv-05668;*

10

11  *Sears, Roebuck and Co. and Kmart Corp. v.
    Technicolor SA, No. 3:13-cv-05262;*

12

13  *Target Corp. v. Technicolor SA, et al., No.
    13-cv-05686*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THOMSON SA'S NOTICE OF MOTION AND                    No. 07-5944-SC; MDL No. 1917
MOTION TO DISMISS NEWLY FILED DAP
COMPLAINTS

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2 TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3   PLEASE TAKE NOTICE that on March 7, 2014 at 10:00 a.m. or as soon thereafter as

4 this matter may be heard before the Honorable Samuel P. Conti, U.S. District Court Judge, U.S.

5 District Court for the Northern District of California, Courtroom No. 1, 17th Floor, 450 Golden

6 Gate Avenue, San Francisco, California 94102, the moving Defendant listed on the signature

7 page below will and hereby does move this Court, in accord with Federal Rules of Civil

8 Procedure 12(b)(2) and 12(b)(6), for an Order dismissing with prejudice the claims alleged

9 against the moving Defendant in the Direct Action Plaintiffs' various Complaints and Amended

10 Complaints.

11   This Motion is based on this Notice of Motion and Motion, the accompanying

12 Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on

13 file with the Court, and such arguments and authorities as may be presented at or before the

14 hearing.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

ISSUES TO BE DECIDED ................................................................................. 1

INTRODUCTION ............................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 3

ARGUMENT ................................................................................................... 5

I.   THE DAPS' CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED
     BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER IT. ................ 5

     A.   The Court Does Not Have General Jurisdiction Over Thomson SA
          Because Thomson SA Did Not Have Continuous and Systematic General
          Business Contacts With the United States That Render It "At Home" in
          the Forum. ........................................................................................ 5

     B.   The DAPs Have Failed to Plead That They Have Been Harmed by
          Activities Thomson SA Purposefully Directed at This Forum. ................. 8

          1.   The DAPs Have Failed to Plead Facts That Establish Thomson SA
               Purposefully Directed Activities Toward the United States. .............. 8

          2.   The Exercise of Jurisdiction Over Thomson SA Would Not Be
               Reasonable. ................................................................................. 11

     C.   The Court Should Not Grant the DAPs Jurisdictional Discovery ............ 12

II.  THE NEW DAP CLAIMS AGAINST THOMSON SA SHOULD BE
     DISMISSED BECAUSE THEY FAIL TO PLEAD VIABLE CLAIMS. .................... 13

     A.   The DAPs' Tardy Claims Against Thomson SA Are Barred by the
          Doctrine of Laches. ........................................................................... 14

     B.   The DAPs Claims Are Time-Barred and They Have Not Pleaded Specific
          Facts That Establish a Plausible Basis for Tolling the Statutes of
          Limitation. ...................................................................................... 17

          1.   Fraudulent Concealment Does Not Apply. .................................... 18

          2.   *American Pipe* Tolling Does Not Save the DAPs' Claims. .............. 20

          3.   Government Action Tolling Does Not Apply to the DAPs' Claims ...... 21

     C.   The DAPs' Claims Against Thomson SA Should Be Dismissed Because
          They Have Failed to Allege Facts That Plausibly Establish the DAPs
          Qualify for the Ownership or Control Exception to *Illinois Brick* .......... 24

III. Thomson SA Reserves Other Challenges to the Legal Adequacy of the DAPs'
     Claims. ................................................................................................. 25

CONCLUSION .............................................................................................. 25

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*Ariz. State Bd. for Charter Schools v. U.S. Dept. of Ed.*,
    464 F.3d 1003 (9th Cir. 2006) ................................................................... 22

5

*Asahi Metal Ind. Co. v. Superior Court*,
    480 U.S. 102 (1987) ................................................................................... 12

6

7

*Ashley v. Boyle's Famous Corned Beef Co.*,
    66 F.3d 164 (8th Cir. 1995) ...................................................................... 14

8

9

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
    223 F.3d 1082 (9th Cir. 2000) ........................................................ 5, 8, 9, 11

10

*Barker v. Am Mobil Power Corp.*,
    64 F.3d 1397 (9th Cir. 1995) .................................................................... 19

11

12

*Bauman v. DaimlerChrysler Corp.*,
    644 F.3d 909 (9th Cir. 2011) ................................................................... 6, 7

13

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................................... 11

14

15

*Conerly v. Westinghouse Elec. Corp.*,
    623 F.2d 117 (9th Cir. 1980) .................................................................... 20

16

*Conmar Corp. v. Mitsui & Co. (USA) Inc.*,
    858 F.2d 499 (9th Cir. 1988) .................................................................... 19

17

18

*Credit Suisse Secs. (USA) LLC v. Simmonds*,
    132 S.Ct. 1414 (2012) ................................................................................ 22

19

20

*Danjaq LLC v. Sony Corp.*,
    263 F.3d 954 (9th Cir. 2001) ............................................................... 16, 17

21

22

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977) .................................................................... 2

23

*Duggan v. Morgan Drive-Away, Inc.*,
    570 F.2d 867 (9th Cir. 1978) ............................................................... 21, 22

24

25

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002) ................................................................ 8, 12

26

27

*Goodyear Dunlop Tires Operations v. Brown*,
    131 S. Ct. 2846 (2011) ............................................................................. 5, 7

28

*Greyhound Corp. v. Mt. Hood Stages, Inc.*,
    437 U.S. 322 (1979) ............................................................................................. 21

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007) ............................................................................... 10

*In re ATM Fee Antirust Litig.*,
    686 F.3d 741 (9th Cir. 2012) ............................................................................... 24

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. C 02-1486, 2005 WL 2988715 (N.D. Cal. Nov. 7, 2005) .............................. 10

*In re Perrier Bottled Water Litig.*,
    138 F.R.D. 348 (D. Conn. 1991) .......................................................................... 12

*In re Processed Egg Products Antitrust Litig.*,
    2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013) .................................... 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) .................................................................. 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, MDL Dkt. No. 4867 at 3 (N.D. Cal. Feb. 23, 2012).................. 18

*In re Urethane Antitrust Litig.*,
    663 F. Supp. 2d 1067 (D. Kan. 2009) ............................................................. 19, 20

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ........................................................................................... 5, 6

*Jackson v. Axton*,
    25 F.3d 884 (9th Cir. 1994) .................................................................................. 14

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ............................................................................... 14

*Kendall v. VISA U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ................................................................... 16, 24, 25

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
    628 F.2d 1175 (9th Cir. 1980) ................................................................................ 9

*Leh v. General Petroleum Group*,
    382 U.S. 54 (1965) .......................................................................................... 22, 23

*Linder Dividend Fund, Inc. v. Ernst & Young*,
    880 F. Supp. 49 (D. Mass. 1995) ......................................................................... 20

*Madison v. IBP, Inc.*,
    330 F.3d 1051 (8th Cir. 2003) .............................................................................. 14

*McCune v. Alioto Fish Co.*,
   597 F.2d 1244 (9th Cir. 1979) ........................................................................ 15, 16

*Menken* v. *Emm*,
   503 F.3d 1050 (9th Cir. 2007) .............................................................................. 11

*Metz v. Unizan Bank*,
   416 F. Supp. 2d 568 (N.D. Ohio 2006) ................................................................ 19

*Milliken* v. *Meyer*,
   311 U.S. 457 (1940) ................................................................................................ 5

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999) .............................................................................. 18

*Nashville Milk Co. v. Carnation Co.*,
   355 U.S. 373 (1958) .......................................................................................... 23, 24

*Novell, Inc. v. Microsoft Corp.*,
   505 F.3d 302 (4th Cir. 2007) ............................................................................ 22, 23

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .................................................................... 4, 5, 6, 8

*Sinatra* v. *Nat'l Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988) .............................................................................. 12

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ................................................................................ 19

*Terracom* v. *Valley Nat'l Bank*,
   49 F.3d 555 (9th Cir. 1995) ...................................................................... 11, 12, 13

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) ................................................................................ 5

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) ................................................................................ 17

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006) ................................................................................ 8

**FEDERAL STATUTES**

15 U.S.C. § 12 ...................................................................................................... 24

15 U.S.C. § 16 ...................................................................................................... 21

15 U.S.C. § 16(i) ...................................................................................... 21, 22, 23

**RULES**

Fed. R. Civ. P. 9(b) ........................................................................................ 18, 19, 20

Fed. R. Civ. P. 12(b)(2) ............................................................................................ 1

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1, 13, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

In accord with Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Thomson SA appears for the purpose of respectfully moving to dismiss the new claims asserted against it by the Direct Action Plaintiffs ("DAPs") for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.[1]

## ISSUES TO BE DECIDED

1. Whether the DAPs' claims against Thomson SA should be dismissed pursuant to Rule 12(b)(2) because this Court lacks personal jurisdiction over Thomson SA, a holding company headquartered and incorporated in France?

2. Whether the DAPs' claims against Thomson SA should be dismissed because they are barred by the doctrine of laches?

3. Whether the DAPs' claims against Thomson SA are time-barred under the applicable statutes of limitation and whether the DAPs have failed to plead any basis for tolling the statutes of limitation applicable to their claims?

4. Whether the DAPs' claims against Thomson SA should be dismissed because the DAPs have failed to plead evidentiary facts that plausibly establish they possess standing under the "ownership or control" exception to *Illinois Brick*?

## INTRODUCTION

Although the DAPs have had access to the voluminous discovery record in this case for years, they have each failed to plead facts that establish Thomson SA is subject to the personal jurisdiction of this Court.  Specifically, they have failed to plead facts that establish:   (1)

---

[1] Thomson SA moves to dismiss the following DAP complaints:  *Siegel v. Technicolor SA*, No. 13-cv-05261 ("Circuit City Compl."); *Sears, Roebuck & Co. v. Technicolor SA*, No. 13-cv-05262 ("Sears Compl."); *Best Buy Co., Inc. v. Technicolor SA,* No. 13-cv-05264 ("Best Buy Compl."); *Target Corp. v. Technicolor SA,* No. 13-cv-05686 ("Target Compl."); and *Costco Wholesale Corp. v. Technicolor SA (f/k/a Thomson SA), et al.*, No. 13-cv-05723 ("Costco Compl."); and the following first amended complaints:   *Electrograph Systems, Inc. v. Technicolor SA*, No. 2:13-cv-05724 ("Electrograph FAC"); *P.C. Richard & Son Long Island Corp. v. Technicolor SA*, No. 13-cv-05725 ("P.C. Richard FAC"); *Office Depot, Inc. v. Technicolor SA*, No. 13-cv-05726 ("Office Depot FAC"); *Interbond Corp. of Am. v. Technicolor SA*, No. 13-cv-05727 ("Interbond FAC"); and *Schultze Agency Services, LLC v. Technicolor SA*, No. 13-cv-05668 ("Tweeter FAC").

1   Thomson SA had continuous and systematic contacts with the United States such that it can

2   fairly be considered "at home" in this forum; or (2) Thomson SA took any intentional acts

3   purposefully directed at causing injury to the DAPs in the United States related to the antitrust

4   claims that are the subject of the DAP Complaints.

5         The DAPs' failure to plead such facts is not surprising.  As established by affidavits

6   attached to this Motion, Thomson SA never manufactured or sold CRTs or CRT Products in the

7   United States and its United States subsidiary, Thomson Consumer, set the prices for the CRTs

8   Thomson Consumer manufactured and sold in the United States.  These critically important facts

9   directly controvert the vague and unsubstantiated jurisdictional allegations in the DAPs'

10  Complaints, so the Court should not accept as true the conclusory allegations contained in them.

11  *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).  Because the

12  DAPs have failed to plead facts that establish a prima facie case that Thomson SA is subject to

13  general or specific jurisdiction, the DAPs' claims against Thomson SA should be dismissed with

14  prejudice for lack of personal jurisdiction.

15        In addition, the DAPs' claims fail because they are time-barred.  As explained in

16  Thomson Consumer's Motion to Dismiss the DAPs' Complaints filed concurrently herewith,

17  four months ago, this Court refused to allow these same Plaintiffs to amend their complaints to

18  join Thomson SA to this action.  The Court ruled that forcing Thomson SA "to enter litigation

19  now would put it at an unfair, prejudicial disadvantage" and that "the DAPs had ample time to

20  add Thomson to their complaints without delay or prejudice, but they did not."  (*See* Sept. 26,

21  2013 Order at 4-6 [Dkt. No. 1959].)   In a transparent attempt to circumvent the Court's

22  September 26, 2013 Order, the DAPs have simply filed new complaints that attempt, once again,

23  to drag Thomson SA into this litigation six years after it began and over eight years after

24  Thomson SA exited the CRT industry.

25        Nothing has changed, however, since the Court entered its September 26, 2013 Order.

26  The DAPs' inexcusable delay in pressing their rights has caused Thomson SA severe, irreparable

27  prejudice − prejudice that has not been remedied by the DAPs filing even later, new complaints.

28  Moreover, the DAPs' claims are time-barred under the applicable statutes of limitation and

1  laches bars them from relying on tolling doctrines.  Finally, the DAPs are indirect purchasers and

2  do not plead any evidentiary facts that plausibly establish they qualify for the ownership or

3  control exception to *Illinois Brick*.  Therefore, consistent with the Court's findings in its

4  September 26, 2013 Order, the DAPs' claims against Thomson SA should be dismissed with

5  prejudice.

6  ## **FACTUAL BACKGROUND**

7  At all times relevant to the DAPs' claims, Thomson SA was a holding company

8  headquartered and incorporated in France.  As it stated in a 13D filing it made with the

9  Securities and Exchange Commission ("SEC") on February 7, 2000, "Thomson SA principally

10  acts as a holding company for the French government.  All of the outstanding shares of Thomson

11  SA are owned by the French Government."  (Feb. 7, 2000 13D Filing at 4, attached as **Ex. 1**.)

12  Although the French Government has since sold its shares, during all relevant periods, Thomson

13  SA remained a French holding company.  (*See* 2009 Declaration of Frederic Rose at ¶ 3, **Ex. 2**

14  ("Thomson is the holding company for a group of approximately 200 direct and indirect

15  subsidiaries in approximately 30 countries.  Thomson's principal office is located at 1-5, rue

16  Jeanne d' Arc, 92130 Issy-les-Moulineaux, France.")); (Cadieux Decl. at ¶ 5, attached as **Ex. 3**.)

17  It also is uncontroverted that, at all relevant times, Thomson SA did not manufacture

18  CRTs.  "Thomson SA has never manufactured cathode ray tubes ("CRTs") or finished products

19  containing CRTs in the United States or elsewhere."  (*Id.* at ¶ 14.)  In addition, "Thomson SA

20  has never marketed, sold, or distributed CRTs or finished products containing CRTs in the

21  United States or elsewhere."  (*Id.* at ¶ 15.)  Instead, because it is and was merely a holding

22  company, Thomson SA's "principal assets are the stock of its subsidiaries."  (**Ex. 2** at ¶ 4.)

23  Thomson SA performed the activities of a traditional holding company − it "principally

24  perform[ed] corporate activities (such as finance, communications, legal, human resources)" and

25  obtained "external financing" and "advance[d] the funds obtained to its subsidiaries through

26  loans and current account contracts."  (Thomson Group 2008 Form 20-F, **Ex. 4** at 152.)

27  Thomson SA did not control the day-to-day activities or involve itself in the management

28  of its United States subsidiary, Thomson Consumer.  (**Ex. 3** at ¶ 21.)  Instead, "Thomson

[Consumer] control[ed] its day-to-day activities," maintained "separate" finances, and was "responsible for the sales and marketing of products in the United States." (Sept. 28, 2005 Declaration of Thomson Consumer President Michael O'Hara at ¶¶ 5-7, **Ex. 5** (attached to Thomson SA's Reply in Support of Mot. to Dismiss, A*udio MPEG, Inc. v. Thomson Inc., et al.*, Case No. 1:05 cv 565 (E.D. Va.)).) "Thomson SA d[id] not direct or advise Thomson [Consumer] on how to sell or distribute any Thomson [Consumer] product in the United States." (Sept. 2, 2005 Declaration of Thomson SA General Secretary Marie-Agne Debon at ¶ 6, **Ex. 6** (attached to Thomson SA's Mot. to Dismiss, *Audio MPEG, Inc. v. Thomson Inc., et al.*, Case No. 1:05 cv 565 (E.D. Va.)).)[2] Moreover, "Thomson SA and Thomson [Consumer] maintain[ed] separate corporate structures, including separate boards, separate management, . . . separate employees," and separate finances. (*Id.* at ¶¶ 4-5.)

In other words, contrary to the allegations in the DAP Complaints, Thomson SA was a traditional holding company organized to hold the stock of its subsidiaries. Other than its ownership of a U.S. subsidiary, Thomson SA had virtually no direct contacts with the United States and certainly did not have affiliations with the United States that were "so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, No. 11-965 (Jan. 14, 2014) Slip Opinion at 20 (rejecting Ninth Circuit's agency theory of general jurisdiction). Further, Thomson SA did not expressly aim acts at the United States that were a but-for cause of the DAPs' alleged antitrust injuries. Accordingly, consistent with fundamental principles of due process, it is not subject to the general or specific jurisdiction of this Court. *See Daimler AG v. Bauman*, No. 11-965 (Jan. 14, 2014); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806-7 (9th Cir. 2004).

---

[2] Both the O'Hara and Debon Declarations were drafted in September 2005 and thus were created during time periods contemporaneous with the alleged conspiracy that is the subject of the DAPs' Complaints.

## ARGUMENT

I.     **THE DAPS' CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER IT.**

The Court can exercise personal jurisdiction over a non-resident defendant only where doing so is consistent with the Due Process Clause, which requires that the defendant have minimum contacts with the forum such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940)).  In order to satisfy the Due Process Clause, the DAPs must demonstrate that either:  (a) Thomson SA has had such substantial contacts with the United States that it is effectively "at home" and therefore subject to general jurisdiction here; or (b) Thomson SA has had a sufficient connection to the alleged misconduct through acts *in* or *purposefully directed at* the forum to establish specific jurisdiction for the purposes of this litigation.  *See Daimler AG v. Bauman*, No. 11-965 (Jan. 14, 2014) at 19-20; *Bancroft & Masters, Inc.* v. *Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  The DAPs' Complaints do not plead facts that demonstrate either, so they should be dismissed.

A.     **The Court Does Not Have General Jurisdiction Over Thomson SA Because Thomson SA Did Not Have Continuous and Systematic General Business Contacts With the United States That Render It "At Home" in the Forum.**

General jurisdiction exists over foreign corporations like Thomson SA only when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Bauman,* slip op. at 19-20 (quoting *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011)); *see also Schwarzenegger*, 374 F.3d at 801 (requiring that foreign corporation "engage in continuous and systematic general business contacts that approximate physical presence in the forum state." (internal quotations and citations omitted)).  In other words, the plaintiff must show that the defendant's "continuous corporate operations within [the] state are . . . so substantial and of such a nature as to justify suit against the defendant on causes of action arising from dealings entirely distinct from those activities." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006).  "This is

1    an exacting standard, as it should be, because a finding of general jurisdiction permits a

2    defendant to be haled into court in the forum state to answer for any of its activities anywhere in

3    the world." *Schwarzenegger*, 374 F.3d at 801.

4         The DAPs' Complaints must be dismissed because they do not allege that Thomson SA

5    had any meaningful contacts with the United States, let alone allege substantial, continuous, and

6    systematic contacts that approximated physical presence or rendered Thomson SA "at home" in

7    this forum.   Thomson SA is a French corporation headquartered in France that:   (1) has no

8    operations; (2) has no employees; (3) has no bank accounts; (4) has no mailing address; (5) does

9    not own, lease, or rent real property; and (6) is not registered to do business in the United States.

10   (*See* Cadieux Decl. at ¶¶ 6-11, 13.)  The DAPs do not plead otherwise.  In addition, the 2005

11   Declarations from Mr. O'Hara and Ms. Debon confirm that Thomson SA did not control

12   Thomson Consumer's operations during the relevant time period, so its contacts may not be

13   imputed to Thomson SA.   (*See* **Exs. 5, 6**.)   Given these facts, the DAPs simply have not

14   demonstrated that this Court's exercise of general jurisdiction over Thomson SA would comport

15   with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

16        And as the Supreme Court recently held in *Daimler AG v. Bauman*, regardless of the

17   nature of a foreign corporation's relationship with its U.S. subsidiary, a court may not exercise

18   general jurisdiction over the foreign corporation unless the foreign corporation itself has such

19   direct affiliations with the forum that it is "essentially at home in the forum State." *Bauman*, slip

20   op. at 20-21.   In reaching this holding, the Supreme Court expressly overruled the Ninth

21   Circuit's agency theory of general jurisdiction, set forth in *Bauman v. DaimlerChrysler Corp.*,

22   644 F.3d 909 (9th Cir. 2011), which provided that in certain circumstances, general jurisdiction

23   may be established over a foreign corporation by imputing the contacts of the foreign

24   corporation's U.S. subsidiary to it.  The Supreme Court explained that the "Ninth Circuit's

25   agency analysis derived from Circuit precedent considering principally whether the subsidiary

26   performs services that are sufficiently important to the foreign corporation that if it did not have

27   a representative perform them, the corporation's own officials would undertake to perform

28

substantially similar services." *Id.* at 15-16 (internal quotations omitted). The Supreme Court forcefully rejected the Ninth Circuit's agency theory of general jurisdiction:

> Formulated this way, the inquiry into importance stacks the deck, for it will always yield a pro-jurisdiction answer: Anything a corporation does through an independent contractor, subsidiary, or distributor is presumably something the corporation would do my other means if the independent contractor, subsidiary, or distributor did not exist. The Ninth Circuit's agency theory thus appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the sprawling view of general jurisdiction we rejected in *Goodyear*.

*Id.* at 17 (internal citations and quotations omitted).

The Court then emphasized that its precedent makes clear "that only a limited set of affiliations with a forum will render a defendant amendable to all-purpose [general] jurisdiction there. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for *a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home*." (emphasis added) *Id.* at 18. For a corporation, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction. Those affiliations have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable." *Id.* at 18-19 (internal citations and quotations omitted). While the Court stated that it was not holding that a corporation may only be subject to general jurisdiction in the forum where it is incorporated or has its principal place of business, it emphasized that "those places [are] paradigm all-purpose forums." *Id.* at 19. Therefore, using these "exemplar bases" as a guide, the proper inquiry "is whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Id.* at 19-20.

*Bauman* unequivocally dictates that the DAPs do not have a viable argument that Thomson SA is subject to general jurisdiction in the United States. Even assuming *arguendo* that Thomson Consumer's contacts with the United States were imputable to Thomson SA based on some sort of agency relationship – a conclusion Thomson SA vigorously denies – general jurisdiction would still be lacking under *Bauman* because Thomson SA itself has not had any

1  direct contacts with this forum that render it "at home" in United States. *Bauman*, slip op. at 20-

2  21. Thomson SA has never been incorporated or headquartered in the United States – its

3  principal place of business has always been in France. Furthermore, the DAPs plead no facts in

4  their complaints which plausibly suggest that Thomson SA has ever possessed any other type of

5  continuous and systematic affiliations with the United States that would render it at home here.

6  Accordingly, because Thomson SA has never had the type of continuous and systematic general

7  contacts with this forum "that approximate physical presence" or render it "at home" in this

8  forum, Thomson SA is not subject to the general jurisdiction of this Court. *Bauman*, slip op. at

9  19-21; *Schwarzenegger*, 374 F.3d at 801.

10       **B.      The DAPs Have Failed to Plead That They Have Been Harmed by Activities
                   Thomson SA Purposefully Directed at This Forum.**

11

12       The DAPs also fail to allege facts sufficient to support this Court's exercise of specific

13  jurisdiction over Thomson SA. Specific jurisdiction exists when the "cause of action arises out

14  of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain*

15  *Rotterdam B.V. v. Shivnath Rai Harnarain Co*., 284 F.3d 1114, 1124 (9th Cir. 2002). To

16  establish specific jurisdiction over Thomson SA, the DAPs must show that: (1) Thomson SA

17  purposefully directed its activities at this forum; (2) the DAPs' claims against it arise out of or

18  result from Thomson SA's forum related activities; and (3) the exercise of jurisdiction is

19  reasonable. *See Bancroft & Masters,* 223 F.3d at 1086-7. The DAPs have not, and cannot,

20  satisfy these elements.

21       **1.      The DAPs Have Failed to Plead Facts That Establish Thomson SA
                   Purposefully Directed Activities Toward the United States.**

22

23       Purposeful direction is evaluated using the three-part "*Calder*-effects" test under which

24  the plaintiff must show: (1) the defendant committed an intentional act; (2) expressly aimed at

25  the forum state; (3) causing harm the defendant knows is likely to be suffered in the forum state.

26  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.

27  2006). The Ninth Circuit has warned that "the foreign-acts-with-forum-effects jurisdictional

28

1    principle 'must be applied with caution, particularly in an international context.'" *Kramer*
2    *Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1178 (9th Cir. 1980).

3         Here, the DAPs have failed to allege specific facts in their complaints that establish
4    Thomson SA took any relevant intentional acts expressly aimed at the United States.  They lob
5    numerous legally insufficient allegations against "defendants" or a combined "Thomson" entity
6    without   identifying   the   particular   Thomson   company   that   allegedly   participated   in
7    anticompetitive conduct aimed at the United States.  (*See, e.g.*, Target Compl. at ¶¶ 27-28, 139-
8    142, 226); *see In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D.
9    Cal. 2008) (holding "general allegations as to all defendants" or "to a single corporate entity
10   such as 'Hitachi'" insufficient as a matter of law).  For example, the DAPs allege that "Thomson
11   participated in and/or was a party to more than 15 bilateral meetings and more than 25 group
12   meetings, including Green Meetings in the United States."  (*See, e.g.,* Office Depot FAC at ¶
13   138.)  While the DAPs attempt to plead additional details regarding these alleged meetings, these
14   allegations do not show that Thomson SA took intentional acts expressly aimed at the United
15   States. (*Id.*) ████████████████████████████████████████
16   ████████████████████████████████████████████████████
17   ████████████████████████████████████████████████████
18   ████████████████████████████████████████████████████
19   ████████████████████████████████         At all relevant times, Thomson SA was a
20   holding  company  whose  subsidiaries  had  extensive  CRT  operations  throughout  Europe.
21   Because it is equally, if not more, plausible that these alleged meetings related to the European
22   CRT operations of these subsidiaries, these allegations do not establish that Thomson SA took
23   intentional acts expressly aimed at the United States.

24         Indeed, the *Calder*-effects test does not "stand for the broad proposition that a foreign act
25   with foreseeable effects in the forum state always gives rise to personal jurisdiction." *Bancroft*
26   *& Masters, Inc.,* 223 F.3d at 1087.  Express aiming requires "something more" − it requires
27   foreign acts targeted at the plaintiff in the forum "performed for the very purpose of having their
28   consequences felt in the forum state." *Id.* at 1088.  Applying these principles, courts in this

1  district have found that a defendant's alleged participation in a foreign price-fixing conspiracy
2  that had foreseeable effects on the U.S. market does not satisfy this test if the plaintiff cannot
3  show that the defendant "engaged in wrongful conduct targeted at a plaintiff whom the
4  defendant knows to be a resident of the forum."  *In re Dynamic Random Access Memory*
5  *(DRAM) Antitrust Litig.,* No. C 02-1486, 2005 WL 2988715, at *5-6 (N.D. Cal. Nov. 7. 2005)
6  (holding plaintiffs could not establish express aiming where the defendant alleged to have
7  participated in international conspiracy had never manufactured or sold DRAM in forum states
8  or maintained business or corporate formalities there).

9          The DAPs have not and cannot show that Thomson SA engaged in anticompetitive
10  activity individually targeted at them in the United States because Thomson SA has never
11  manufactured or sold CRTs or conducted any CRT business in the United States and did not set
12  prices for CRTs or CRT Products sold by Thomson Consumer in the United States.  (Cadieux
13  Decl. at ¶¶ 14-15, 2; Debon Decl. at ¶ 6 ("Thomson SA does not direct or advise Thomson Inc.
14  on how to sell or distribute any Thomson Inc. product in the United States").)  Instead, the DAPs
15  allege that Thomson SA participated in foreign meetings with competitors where information
16  regarding CRT Products was allegedly exchanged and that the North American market was the
17  largest market for CRT Products so *ipso facto,* Thomson SA individually targeted them in the
18  United States.  The DAPs may not bootstrap specific jurisdiction based on such allegations.
19  *Holland Am. Line, Inc. v. Wartsila N. Am., Inc*., 485 F.3d 450, 458 (9th Cir. 2007) (holding
20  "unsubstantiated and vague statement[s] do not establish a prima facie case for jurisdiction").
21  The DAPs have failed to plead specific facts establishing a prima facie case that Thomson SA
22  took intentional acts expressly aimed at causing the DAPs harm in the United States that was a
23  but-for cause of any antitrust injury they allegedly suffered in the United States.  Accordingly,
24  the Court lacks specific jurisdiction over Thomson SA, and the claims asserted against it by the
25  DAPs should be dismissed with prejudice.

26

27

28

1
2

**2.      The Exercise of Jurisdiction Over Thomson SA Would Not Be Reasonable.**

3        Because the DAPs have failed to satisfy either of the first two requirements of specific

4   jurisdiction, it is not necessary to evaluate whether this Court's exercise of jurisdiction over

5   Thomson SA would be reasonable.  But, even if the DAPs had pleaded facts that satisfied these

6   elements, Thomson SA would not be subject to specific jurisdiction because the exercise of

7   jurisdiction over Thomson SA would not be reasonable.   Courts consider seven factors to

8   evaluate reasonableness:

9
10
11
12

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

13   *Bancroft & Masters*, 223 F.3d at 1088 (citing *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462,

14   476-77 (1985)).

15        The burden imposed on Thomson SA is the most important factor.  *Terracom* v. *Valley*

16   *Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995) ("[T]he law of personal jurisdiction is asymmetrical

17   and is primarily concerned with the defendant's burden."); *see also Menken* v. *Emm*, 503 F.3d

18   1050, 1061 (9th Cir. 2007) ("[I]n this circuit, the plaintiff's convenience is not of paramount

19   importance.") (citation omitted).  Litigating this complex case in the United States would impose

20   a significant burden on Thomson SA.  To the extent evidence still exists concerning the CRT

21   business that Thomson SA sold eight years ago, any documents are located in France; the same

22   is true for any personnel who might have knowledge concerning the CRT business.  Not only

23   would obtaining relevant information located in France be costly and burdensome, it would also

24   potentially subject Thomson SA to criminal sanctions under the French "blocking statute,"[3]

25
_____

26   [3] Loi 80-538 du 16 juillet 1980 relative à la communication de documents et renseignements

27   d'ordre économique, commercial ou technique à des personnes physiques ou morales étrangères
     [Law 80-538 of July 16, 1980 relating to the disclosure of documents and information of an

28   economic, commercial or technical nature to foreign natural and legal persons], JOURNAL
     OFFICIEL DE LA REPUBLIQUE FRANÇAISE [J.O.] [OFFICIAL GAZETTE OF FRANCE], July 17, 1980,

1   which prohibits the communication or disclosure of documents or information of an economic,

2   commercial, industrial, financial, or technical nature for use as evidence in foreign judicial

3   proceedings.  *See In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 356 (D. Conn. 1991)

4   (discussing effect of "blocking statute" and requiring plaintiffs to comply with procedures under

5   the Hague Convention in pursuing any discovery from defendant).[4]

6        The exercise of personal jurisdiction over Thomson SA would also be unreasonable

7   because:  (1) Thomson SA has not purposefully interjected its activities into the United States;

8   (2) until 1999, all stock in Thomson SA was owned by the French government so the DAP

9   claims against it raise substantial sovereignty concerns; and (3) exercising jurisdiction over

10  Thomson SA in the United States would be inefficient and would not further the DAPs' interest

11  in convenient and effective relief because Thomson Consumer is the entity in the Thomson

12  group of companies that manufactured and/or sold CRTs in the United States and it has not

13  contested this Court's jurisdiction over it.  Thus, even if the DAPs had established a sufficient

14  connection between Thomson SA's forum-related activities and the DAPs' claims in this case −

15  they have not − this Court's exercise of jurisdiction over Thomson SA would not be reasonable.

16  *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).  Because Thomson SA is

17  not subject to personal jurisdiction in this forum, the claims against it should be dismissed.

18        **C.      The Court Should Not Grant the DAPs Jurisdictional Discovery.**

19

20        "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and

21  based on bare allegations in the face of specific denials made by the defendants, the Court need

22  p. 1799 (Imposing criminal sanctions including imprisonment and a fine on parties who export
    certain categories of documents or respond to discovery requests).

23  [4] For the same reason, the exercise of personal jurisdiction over Thomson SA would raise
    substantial concerns regarding French sovereignty.  *See, e.g.*, *Sinatra* v. *Nat'l Enquirer, Inc.*, 854

24  F.2d 1191, 1199-1200 (9th Cir. 1988); *see also Asahi Metal Ind. Co. v. Superior Court*, 480 U.S.
    102, 115 (1987) (recommending a "careful inquiry into the reasonableness of the assertion of

25  jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien
    defendant outweighed by minimal interests on the part of the plaintiff or the forum State");

26  *Glencore*, 284 F.3d at 1125 (holding that burden on foreign defendant with no minimum
    contacts and having witnesses and evidence abroad would be great and that where "the

27  defendant is from a foreign nation rather than another state, the sovereignty barrier is high and
    undermines the reasonableness of personal jurisdiction" (citation omitted)).

28

not permit even limited discovery." (*Id.*)  In light of the Supreme Court's decision in *Bauman*, the DAPs have no tenable argument that Thomson SA is subject to the Court's general jurisdiction, so there is no reason that the DAPs should be permitted to conduct discovery on this topic.  With respect to the DAPs' theory of specific jurisdiction, despite the fact that they have had access to the voluminous discovery record compiled during the last four years, including extensive document productions from Thomson SA's alleged co-conspirators, the DAPs are still unable to plead specific facts or cite to evidence that controverts Thomson SA's declarations showing that it did not set the price of CRTs or CRT Products sold in the United States.  Given that the DAPs' allegations fall well-short of establishing specific personal jurisdiction, there is simply no reasonable basis to believe that they will obtain evidence that justifies the costs and burdens that allowing it to conduct additional far ranging jurisdictional discovery now will impose on Thomson SA.  And for the reasons stated in Section II below, subjecting Thomson SA to such extensive discovery at this juncture would be unduly prejudicial and burdensome.  Accordingly, Thomson SA respectfully requests that the Court deny the DAPs jurisdictional discovery.

## II.    THE NEW DAP CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED BECAUSE THEY FAIL TO PLEAD VIABLE CLAIMS.

Not only is Thomson SA not subject to personal jurisdiction, the Court should dismiss the DAPs' claims against Thomson SA pursuant to Rule 12(b)(6) because the DAPs fail to plead viable claims.  The DAPs claims are (1) inexcusably late and their reliance on tolling doctrines is barred by laches and (2) time-barred under the applicable statutes of limitation and the DAPs have not plead facts that establish a plausible basis for tolling the limitations periods.   In addition, the DAPs fail to plead facts that plausibly establish they qualify for the ownership or control exception to *Illinois Brick*.  Accordingly, the DAPs' claims should be dismissed with prejudice.

### A.    The DAPs' Tardy Claims Against Thomson SA Are Barred by the Doctrine of Laches.

The doctrine of laches operates to bar a plaintiff's claims when the plaintiff has (1) unreasonably delayed pressing its rights and (2) thereby caused prejudice to the defendant.  *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 838 (9th Cir. 2002) (explaining that "laches penalizes inexcusable dilatory behavior" by the plaintiff); *Jackson v. Axton,* 25 F.3d 884, 886 (9th Cir. 1994) ("Laches is based on the plaintiff's delay in beginning litigation . . . .")  "A determination of whether a party exercised unreasonable delay in filing suit consists of two steps.  First, we assess the length of delay, which is measured from the time the plaintiff knew or should have known about its potential cause of action.  Second, we decide whether the plaintiff's delay was reasonable."  *Jarrow Formulas,* 304 F.3d at 838 (internal citations omitted).  As the Eighth Circuit explained, "if plaintiff asserts a federal statute of limitations should be extended by applying an equitable principle such as fraudulent concealment or tolling, plaintiff's unreasonable delay − whether or not it is called laches − becomes relevant."  *Ashley v. Boyle's Famous Corned Beef Co.,* 66 F.3d 164, 170 (8th Cir. 1995) (en banc), *abrogation on other grounds recognized in Madison v. IBP, Inc.,* 330 F.3d 1051, 1056 (8th Cir. 2003).

The DAPs claims against Thomson SA should be barred by laches for precisely the same reasons set forth in Thomson Consumer's Motion to Dismiss the DAPs' Complaints, which are incorporated by reference and restated as if set forth fully herein.  (*See* Thomson Consumer Motion to Dismiss at 4-9.)  The DAPs knew or should have known about their potential claims against Thomson SA in November 2007 when the first lawsuits in this action were filed, or at the very latest in January 2008, when Thomson SA was named as a defendant in four of the original complaints filed by other plaintiffs in this matter.[5]  Inexplicably, however, the DAPs waited until March 2013 − over five years after the first claims were filed in this action and over 16 months

---

[5] *See Radio & TV Equip., Inc. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-00542 (D.N.J., filed Jan. 28, 2008); *Sound Invs. Corp. v. Chunghwa Picture Tubes, Ltd., et al*., No. 08-00543 (D.N.J., filed Jan. 28, 2008); *Stack, et al. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-01319 (N.D. Cal., filed March 7, 2008); *Ganz v. Chunghwa Picture Tubes, Ltd., et al.,* No. 08-01721 (N.D. Cal., filed March 31, 2008).

1    after filing their complaints against other defendants − to first assert claims against Thomson SA.

2    The DAPs plead no facts that justify this inexcusable delay.

3           There is no dispute that the DAPs' delay was unreasonable.  This Court has already

4    found that "[t]he DAPs had ample time to add Thomson to their complaints without delay or

5    prejudice, but they did not" and that their delay was "not justifiable."  (*Id*. at 5-6.)  Moreover, the

6    DAPs dilatory conduct is also established by their own admissions.  The DAPs have previously

7    admitted that "the Defendants produced the majority of their documents in late 2011."  ([Dkt.

8    No. 1609] at 8.)  Although they had access to these documents when they filed their opt out

9    complaints in November 2011 − and for years before − the DAPs chose not to name Thomson

10   SA as a defendant.  Indeed, by their own admission, it was not until almost a year later, when the

11   Indirect Purchaser Plaintiffs sought leave to add the Thomson Defendants (with Mitsubishi

12   Electric and Videocon) that the DAPs even began considering naming the Thomson Defendants.

13   (*Id*. at 4.)  Yet, the DAPs delayed over six more months − while discovery that was "proceeding

14   apace" − before they sought leave to assert their own claims against Thomson SA.  Accordingly,

15   the DAPs have unreasonably delayed pressing their rights as a matter of law.

16          There is also no dispute that Thomson SA has been seriously prejudiced by this delay.

17   First, while the DAPs slept on their rights, evidence degraded, memories faded, and information

18   and personnel involved in Thomson SA CRT operations − an industry which it exited in 2005 −

19   became even more difficult, if not impossible, to locate.  *See McCune v. Alioto Fish Co.*, 597

20   F.2d 1244, 1250 (9th Cir. 1979) (affirming trial court's dismissal of complaint on basis of laches

21   where plaintiff's three-year delay in bringing claims made it difficult for defendant to obtain

22   evidence needed to defend claims).  Second, forcing Thomson SA into this sprawling litigation

23   at this point would require one of two unfair alternatives.  Under one option, Thomson SA would

24   have to play "catch up" and complete discovery − which has certainly "proceeded apace" with

25   over five million pages of documents and nearly 100 depositions − and trial preparation in a

26   fraction of the time allowed to other parties.  As this Court has previously ruled, this would put

27   Thomson SA at an unfair, prejudicial disadvantage.  (*See* Sept. 26, 2013 Order at 4-6 [Dkt. No.

28   1959].)

THOMSON SA'S NOTICE OF MOTION AND
MOTION TO DISMISS NEWLY FILED DAP
COMPLAINTS

15

No. 07-5944-SC; MDL No. 1917

1    Under the other option, Thomson SA would be forced to go it alone.  This would cause

2 Thomson SA to suffer severe prejudice by depriving it of the cost efficiencies that have resulted

3 from the joint defense group − cost efficiencies that are vital for any defendant attempting to

4 survive the costs and burdens of defending a massive antitrust MDL such as this one.  *See*

5 *Kendall v. VISA U.S.A., Inc.,* 518 F.3d 1042, 1047 (9th Cir. 2008) (stating that "discovery in

6 antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity

7 to extort large settlements even where he does not have much of a case.").  It would require

8 Thomson SA to duplicate the efforts of the joint defense group entirely at its own expense and

9 the Court to continue to devote enormous resources to adjudicating these matters − matters that

10 have been pending since 2007 − for several more years to come.

11    Most critically, Thomson SA will be placed at a significant strategic disadvantage.  As

12 the Court knows, antitrust damage actions provide for joint and several liability − they do not

13 permit contribution among defendants.  Regardless of its lack of culpability, because it will be

14 the last defendant, Thomson SA will almost certainly be subject to the risk of enormous financial

15 exposure as the DAPs will attempt to recover from it amounts left unsatisfied by settlements or

16 judgments involving other defendants.  Thus, if the DAPs' claims against Thomson SA are

17 placed on a later, separate schedule, the DAPs will benefit from their delay by being able to

18 place Thomson SA at a severe strategic disadvantage − a posture they will undoubtedly seek to

19 exploit by demanding an exorbitant settlement or judgment.

20    The DAPs' foot-dragging also has caused Thomson SA evidentiary prejudice, which

21 courts recognize as barring claims when a plaintiff's unreasonable delay has caused evidence

22 needed to defend the action to become "lost, stale, or degraded" and difficult or impossible to

23 obtain because of the passage of time.  *Danjaq LLC v. Sony Corp*., 263 F.3d 954 (9th Cir. 2001);

24 *see also McCune*, 597 F.2d at 1250.  The DAPs have admitted that Thomson SA exited the CRT

25 business in 2005 when its CRT-related assets and personnel were transferred to Videocon

26 Industries, Ltd.  (*See, e.g.*, Interbond FAC at ¶¶ 22-26).  By waiting until 2013 to first assert their

27 claims, the DAPs have put Thomson SA at a severe disadvantage.  Not only will any attempts to

28 obtain discovery be complicated by the French blocking statute, Thomson SA will be forced to

1  defend itself by attempting to locate documents and former employees regarding a business that

2  ceased operations over eight years ago.  Many of the witnesses Thomson SA needs to prepare its

3  defense no longer work for the company and many CRT-related documents were transferred to

4  Videocon when Thomson SA exited the CRT industry in 2005.  Thus, it will be difficult, if not

5  impossible, to obtain needed evidence.  And, even if Thomson SA is able to obtain these

6  documents, most of the former Thomson SA personnel needed to explain and interpret it have

7  long since left the company.  Thomson SA's ability to prepare its defense will be severely

8  prejudiced by the unavailability of this "lost, stale, or degraded" evidence.  *Danjaq*, 263 F.3d at

9  954.

10  In sum, the DAP's unjustified and unreasonable six-year delay has caused Thomson SA

11  irreparable prejudice and put it at a severe strategic disadvantage.  As the Court found in its

12  September 26, 2013 Order, there is no justification for the DAPs' delay – it is solely the result of

13  their own lack of diligence.  As such, laches bars the DAPs from tolling the relevant statutes of

14  limitation, all of their claims against Thomson SA are untimely, and Thomson SA is entitled to

15  dismissal of the DAPs' claims against it with prejudice.

### B. The DAPs Claims Are Time-Barred and They Have Not Pleaded Specific Facts That Establish a Plausible Basis for Tolling the Statutes of Limitation.

18  Where it is apparent on the face of the complaint that the applicable statutes of limitation

19  have expired, the Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

20  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

21  Here, as discussed at greater length in Thomson Consumer's Motion, the statutes of limitation on

22  the DAPs' claims against the Thomson Defendants began to run no later than July 2005, when

23  Thomson SA sold its CRT business to Videocon.  (*See* Thomson Consumer's Mot. to Dismiss at

24  10-11, incorporated by reference and restated as if set forth fully herein.)  The DAPs' allegation

25  that Thomson SA held a minority equity stake in Videocon following the 2005 sale does not

26  allow the Court to plausibly infer that Thomson SA continued to participate in the alleged

27  conspiracy after July 2005.  (*See, e.g.*, Sears Compl. at ¶ 144) (alleging that Thomson SA

28

1  participated in conspiracy after 2005 through its ownership of a minority equity stake in

2  Videocon).)   The DAPs do not plead any *facts* that plausibly suggest Thomson SA actively

3  participated in the manufacturing, sale, distribution, or pricing of CRTs sold in the U.S. market

4  after July 2005.   In other words, just months before the close of discovery, the DAPs are unable

5  to plead any specific facts that plausibly suggest Thomson SA continued to participate in the

6  alleged conspiracy after it exited the CRT industry in July 2005.   Accordingly, the statutes of

7  limitation on the DAPs' claims against Thomson SA began to run at the latest, at that time and

8  have long since expired.  *See Morton's Market, Inc. v. Gustafson's Dairy, Inc*., 198 F.3d 823,

9  839 (11th Cir. 1999) (holding plaintiff's antitrust claims time-barred because statute of

10  limitations began to run when defendant sold dairy business and thereby withdrew from alleged

11  conspiracy).

12        The DAPs also have failed to plead facts that establish a plausible basis for tolling the

13  statutes of limitation.   To survive a motion to dismiss, the complaint must "specifically identify

14  every basis [the plaintiff] intends to rely on to establish the tolling of the statute of limitations."

15  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, MDL Dkt. No. 4867 at 3 (N.D.

16  Cal. Feb. 23, 2012) (granting motion to dismiss where plaintiff failed to plead specific facts that

17  established statute of limitations was tolled).   The DAPs attempt to plead fraudulent

18  concealment, class action tolling, and government action tolling, but they have not pleaded any

19  facts that establish a sufficient basis for applying these tolling doctrines here.   Thus, in addition

20  to being barred by laches, just a few months before the close of discovery, the DAPs fail to plead

21  facts that plausibly establish any tolling theory applies to save their untimely claims.

22              **1.      Fraudulent Concealment Does Not Apply.**

23

24        The DAPs' conclusory allegations that Thomson SA fraudulently concealed its alleged

25  participation in the conspiracy fail for the same reasons the DAPs' fraudulent concealment

26  theory against Thomson Consumer fails – the DAPs do not plead facts that meet the heightened

27  pleading standards of Fed. R. Civ. P. 9(b).   (*See* Thomson Consumer's Mot. at 11-14,

28  incorporated by reference and restated as if set forth fully herein.)   To survive a motion to

1   dismiss, a plaintiff attempting to allege fraudulent concealment must satisfy the heightened

2   pleading standards of Fed. R. Civ. P. 9(b) by pleading specific facts that identify the time, place,

3   specific content, and identity of the speaker who made the false representations. *See Swartz v.

4   KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The plaintiff "must do more than show that it

5   was ignorant of its cause of action . . . it must plead facts showing that [Thomson SA]

6   affirmatively misled it." *Conmar Corp. v. Mitsui & Co. (USA) Inc.*, 858 F.2d 499, 502 (9th Cir.

7   1988). Moreover, a plaintiff may only rely on a fraudulent concealment theory during time

8   periods for which it pleads with particularity specific, dated acts of alleged concealment. *See In

9   re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 178-9 (D. Kan. 2009) (granting motion to

10  dismiss and limiting time periods for which plaintiffs could rely on theory of fraudulent

11  concealment to only those periods corresponding with dated acts of concealment pleaded with

12  particularity in antitrust complaint). A plaintiff also fails to adequately plead fraudulent

13  concealment if it fails to plead the specific acts of diligence it undertook to uncover its claims.

14  *Conmar,* 858 F.2d at 502; *In re Processed Egg Prods. Antitrust Litig.*, 2013 U.S. Dist. LEXIS

15  119936 (E.D. Pa. Aug. 23, 2013). Finally, the Ninth Circuit has held that a plaintiff cannot "use

16  the fraudulent concealment by one defendant as a means to toll the statute of limitations against

17  other defendants." *Barker v. Am Mobil Power Corp.,* 64 F.3d 1397, 1402 (9th Cir. 1995). Thus,

18  to plead a viable fraudulent concealment claim, a plaintiff must plead specific facts establishing

19  *that* defendant affirmatively concealed its alleged misconduct. *Id.*; *see also Metz v. Unizan

20  Bank*, 416 F. Supp. 2d 568, 579 (N.D. Ohio 2006) (citing *Barker* and evaluating adequacy of

21  allegations of fraudulent concealment on motion to dismiss).

22      The allegations in the DAP complaints do not satisfy these standards. First, the DAPs

23  simply do not allege *any* specific acts by Thomson SA after July 2005 that could plausibly

24  suggest it affirmatively concealed its alleged participation in the conspiracy after that date. The

25  DAPs do not allege the time, place, specific content, and identity of the speaker regarding any

26  alleged misrepresentation by an employee of Thomson SA. Moreover, the DAPs do not plead

27  facts with particularity that make it plausible that any defendant fraudulently concealed the

28  conspiracy from them during the only relevant time period here − after Thomson SA exited the

CRT industry in July 2005.  Instead, the last act of purported fraudulent concealment by other defendants pled by the DAPs is alleged to have occurred in 2004.  (*See* Target Compl. at ¶ 226.)  Therefore, by failing to allege any specific facts that plausibly suggest Thomson SA or other Defendants fraudulently concealed the alleged conspiracy after 2004, the DAPs have failed to satisfy the heightened pleading standards of Rule 9(b).  *See In re Urethane Antitrust Litig*., 663 F. Supp. 2d at 178-9.

Second, the DAPs have failed to plead facts demonstrating they made diligent attempts to discover their claims.  Instead, the DAPs merely make the bald, conclusory assertion that they "could not have discovered through the exercise of reasonable diligence the existence of the conspiracy alleged herein" and that they did not have "actual or constructive knowledge of the facts supporting its claims for relief despite diligence in trying to discover the pertinent facts." (*See, e.g.*, Circuit City Compl. at ¶ 224).  Courts have uniformly held that such conclusory allegations are inadequate and do not toll the applicable statutes of limitation.  *See Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980) (rejecting fraudulent concealment where plaintiff failed to "allege any facts . . . tending to excuse his failure to discover [defendant's] misconduct").  As such, the DAPs have failed to plead fraudulent concealment, so their claims are time-barred.

### 2. *American Pipe* Tolling Does Not Save the DAPs' Claims.

Second, *American Pipe* tolling does not save the DAPs' claims against Thomson SA.  As noted above, Thomson SA was named as a defendant in four of the original class action complaints filed in early 2008.  (*See supra* at 14.)  However, on March 16, 2009, these complaints were superseded by amended consolidated class action complaints that did not name Thomson SA as a defendant.  (*See* DPP's Amended Consolidated Compl. [Dkt. No. 436]; IPP's Amended Consolidated Compl. [Dkt. No. 437].)  "[A]t the time when a defendant is dropped from the class action, that defendant is no longer notified of any claims against it, and a potential plaintiff is then required to act upon any claims it hopes to assert." *Linder Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 54 (D. Mass. 1995).  Thus, even if the statute of limitations

on the DAPs' claims against Thomson SA was tolled from January 2008 until March 2009, the limitations period began to run again on March 16, 2009 and expired well before November and December 2013 when the DAPs filed their instant claims.

Finally, *American Pipe* tolling does not toll the statutes of limitation that apply to the DAPs' state law claims because the class action complaints only asserted federal claims. Accordingly, for the reasons explained in and based on the authority cited in Thomson Consumer's Motion, all of the DAPs' state law claims are untimely and subject to dismissal with prejudice. (*See* Thomson Consumer's Mot. at 15-16, incorporated by reference and restated as if set forth fully herein.)

### 3. Government Action Tolling Does Not Apply to the DAPs' Claims.

Third, government action tolling under 15 U.S.C. § 16 also does not apply to save the DAPs' claims. The Ninth Circuit has explained that 15 U.S.C. § 16(i) must be applied in a manner that balances its two purposes: (1) to strengthen private civil antitrust enforcement by enabling private litigants to benefit from evidence uncovered during prior government antitrust actions; and (2) to provide a statute of repose. *Duggan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 868-72 (9th Cir. 1978). Courts must "strike an exquisite balance" between these goals to ensure that the application of government action tolling in a particular case serves *both* purposes. *Id.* at 852. Interpretations that would aid the private litigant by extending the period within which a private suit can be brought, but would also "frustrate" and "ignore the statute-of repose purpose of section 16(i)" must be avoided. *Id.* at 871-72. Therefore, "care must be exercised to insure that reliance upon the government proceeding is not a mere sham," or else the statute may be improperly invoked by a private plaintiff. *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 335 (1979).

Here, applying 15 U.S.C. § 16(i) to toll the statute of limitations based on the mere filing of the Lin, Cheng, Yeh, and Lee *et al*. Indictments would not serve either purpose of the statute. A search of the Court's docket reveals that effectively there are no pending criminal proceedings against the individuals that are the subject of these indictments. Indeed, the Court in *United*

1    *States v. Yeh*, No. 10-cv-00231, has even refused to consider the defendant's motion to dismiss

2    since the defendant has never been arraigned.  Since no meaningful criminal proceedings are

3    currently pending against these fugitives, there is no evidence or other fruit of the government

4    indictments from which the DAPs may benefit.  Therefore, tolling the statute of limitations

5    would not serve the first purpose of § 16(i).[6]

6          Second, finding that the fugitive indictments tolled the statute of limitations "would

7    frustrate the statute-of-limitations purpose of section 16(i)" by effectively eliminating the statute

8    of limitations.  *Duggan*, 570 F.2d at 871.  In circumstances such as this one, where the

9    government files an indictment, but the defendant is never arraigned and no government action is

10   actually prosecuted, the statute of limitations would *never* expire.  Consistent with fundamental

11   principles of statutory construction, an interpretation of 15 U.S.C. § 16(i) that would produce

12   such an absurd result must be avoided.  *See Ariz. State Bd. for Charter Schools v. U.S. Dept. of

13   Ed.*, 464 F.3d 1003, 1008 (9th Cir. 2006); *see also Credit Suisse Secs. (USA) LLC v. Simmonds*,

14   132 S.Ct. 1414, 1420 (2012) (rejecting interpretation of a statute that would lead to potentially

15   "endless tolling).  *Duggan* and the purposes of 15 U.S.C. § 16(i) provide that the Court should

16   find that the statute of limitations has not been tolled by the Lin, Cheng, Yeh, and Lee *et al*.

17   Indictments.

18         Moreover, the DAPs have not pleaded allegations that establish the necessary overlap

19   between its claims against Thomson SA and the fugitive indictments.  For the statute to apply,

20   the private plaintiff must prove, by a "comparison of the two complaints on their face[s]," a

21   significant overlap between the two actions − "that the matters complained of in the government

22   suit bear a real relation to the private plaintiff's claim for relief."  *Leh v. General Petroleum

23   Group*, 382 U.S. 54, 59 (1965).  Accordingly, courts have held that "limitations are not tolled

24   when government and subsequent private suits arose in distinct markets."  *Novell, Inc. v.

25   Microsoft Corp.*, 505 F.3d 302, 320 (4th Cir. 2007).

26   _____

27   [6] While the government did proceed against SDI Samsung, that information involved a separate
     market in which Thomson SA was not involved.  And to the extent that the SDI Samsung
28   prosecution did toll the statute of limitations for the five months it was pending, that limited
     tolling does not save the DAPs' claims against Thomson SA.

1    Here, the DAPs' allegations are inadequate to toll the statutes of limitation under 15

2    U.S.C. § 16(i) for their claims against Thomson SA.  The DAPs do not allege that there was a

3    "significant overlap" between their claims against Thomson SA and most of the government

4    indictments because they involve distinct markets.  The SDI Information and the Cheng, Yeh,

5    and Lee *et al*. Indictments only allege that these defendants participated in an anticompetitive

6    conspiracy involving "CDTs . . . for use in computer monitors and other products with similar

7    technological requirements."  (*See* Ex. B at ¶ 4, Ex. C at ¶ 4, Ex. D at ¶ 6, attached to Thomson

8    Consumer's Mot. to Dismiss Sharp's FAC [Dkt. No. 2236]; Ex. 1 at ¶ 8, attached to Thomson

9    Consumer's Mot.)  They do not make *any* allegations regarding the separate and distinct CPT

10   market − the market for CRTs used in televisions and the only market in which the DAP

11   Complaints allege that Thomson SA participated.  (*See, e.g.,* Best Buy Compl. at ¶ 27).  These

12   indictments relate to an entirely different product market than the one in which Thomson SA is

13   alleged to have participated and did not toll the statutes of limitation for the DAPs' claims

14   against Thomson SA.  *See Novell, Inc.*, 505 F.3d at 320-22.

15   Second, although the Lin Indictment does allege that the defendant conspired to fix the

16   price of CPTs used in televisions, it makes clear that all of Mr. Lin's alleged anticompetitive

17   activities occurred entirely in Asia in his capacity as Chairman and CEO of Chunghwa, a

18   company that manufactured CRTs in Asia.  (*See* Ex. A at ¶¶ 15-16 [Dkt. No. 2236].)  By

19   contrast, Thomson SA is alleged to have operated in Europe.  The DAPs do not allege that

20   anyone from Thomson SA:  (1) ever had any contact with Mr. Lin or Chungwa or (2)

21   participated in any anticompetitive activities in Taiwan, Korea, Malaysia, China, Thailand, or

22   Indonesia.  As such, the DAPs fail to plead facts that establish a significant overlap between the

23   two actions based on a "[c]omparison of the two complaints on their face[s]."  *Leh*, 382 U.S. at

24   59.

25   Finally, the DAPs' state law claims are not preserved by 15 U.S.C. § 16(i), which only

26   tolls the statute of limitations as to actions "arising under" the federal "antitrust laws."  Section 1

27   of the Clayton Act sets forth the exclusive list of "antitrust laws," *Nashville Milk Co. v.*

28

THOMSON SA'S NOTICE OF MOTION AND                           23                           No. 07-5944-SC; MDL No. 1917
MOTION TO DISMISS NEWLY FILED DAP
COMPLAINTS

1  *Carnation Co.*, 355 U.S. 373, 376 (1958), and the state laws relied upon by the DAPs are not on

2  that list.  *See* 15 U.S.C. § 12.

3      In sum, the statutes of limitation on all of the DAPs' claims expired several years before

4  they filed their inexcusably late claims and they do not plead specific facts that establish a

5  plausible basis for adequately tolling the statutes of limitation.  Therefore, all of the DAPs'

6  claims against Thomson SA are time-barred and should be dismissed with prejudice.

7      **C.   The DAPs' Claims Against Thomson SA Should Be Dismissed Because They
             Have Failed to Allege Facts That Plausibly Establish the DAPs Qualify for**

8  **the Ownership or Control Exception to *Illinois Brick*.**

9      The DAPs have alleged a conspiracy to fix the prices of CRTs − products they never

10 directly purchased from Thomson SA or other Defendants.  Therefore, as indirect purchasers of

11 the allegedly price-fixed product, to state viable claims they must allege facts that make it

12 plausible that they possess standing under a recognized exception to *Illinois Brick*.  *Kendall,*

13 518 F.3d at 1050.  The ownership or control exception is applicable only where the initial seller of

14 the price-fixed good owns or controls the direct purchasers.  *See In re ATM Fee Antirust Litig.,*

15 686 F.3d 741, 756 (9th Cir. 2012).  Therefore, to adequately plead that they satisfy an exception

16 to *Illinois Brick*, the DAPs must plead "evidentiary facts which, if true, will prove" that the

17 initial seller of the price-fixed good here owned or controlled the direct purchaser.  *Id.*; *Kendall,*

18 518 F.3d at 1047.  The DAPs do not satisfy their burden if, as they do in their complaints, they

19 just plead "ultimate facts" or legal conclusions regarding ownership or control.  (*Id.*)

20     As explained in Thomson Consumer's Motion, the Court should dismiss the DAPs'

21 claims because the DAPs do not plead *any* evidentiary facts showing that their alleged purchases

22 satisfy the ownership or control exception.  (*See* Thomson Consumer's Mot. at 19-21,

23 incorporated by reference and restated as if set forth fully herein.)  Although the DAPs claim to

24 have purchased CRT Products from Defendants, they plead only conclusory allegations

25 concerning their purchases.  (*See, e.g.*, Costco Compl. at ¶ 11.)  None of the DAP Complaints

26 allege that the DAPs purchased CRT Products from the Thomson Defendants or that the DAPs

27 purchased CRT Products from the Thomson Defendants containing an allegedly price-fixed CRT

28 manufactured by the Thomson Defendants.  In fact, the DAPs do not plead evidentiary facts:  (1)

identifying which alleged Defendants or co-conspirators were initial sellers of CRTs; (2) identifying which Defendants or other suppliers were the direct purchasers of CRTs that ultimately sold finished CRT Products to even one individual DAP; or (3) that would allow the Court to plausibly infer that the entities that sold CRT Products to the DAPs were owned or controlled by a DAP, the Defendants, or other named co-conspirators.  Under Ninth Circuit precedent, the DAPs' complete failure to plead any facts regarding these required elements mandates dismissal of their claims.  *See Kendall*, 518 F.3d at 1050.

### III.     Thomson SA Reserves Other Challenges to the Legal Adequacy of the DAPs' Claims.

Like Thomson Consumer, Thomson SA believes there are other legal defects with the DAP Complaints.  If the Court grants this motion and dismisses the newly filed DAP Complaints, it will have no need to reach these other arguments.  If, however, the DAP Complaints survive this motion, Thomson SA will present its other arguments to the Court in appropriate dispositive motions prior to trial − or, in the case of arguments that the Court has already rejected, Thomson SA will seek to preserve its positions for appeal without needlessly re-litigating the issues before this Court.

### CONCLUSION

Thomson SA is a French corporation that has never manufactured, sold, or distributed CRTs or CRT Products in the United States and that sold its global CRT assets in 2005.  Because Thomson SA is not subject to personal jurisdiction in this forum and the DAPs' claims against it are inexcusably late, the DAPs' claims against Thomson SA should be dismissed with prejudice.

1    Dated:  January 27, 2014                    Respectfully submitted,

2

3                                               */s/ Kathy L. Osborn*
                                                Kathy L. Osborn (*pro hac vice*)
4                                               Ryan M. Hurley (*pro hac vice*)
                                                Faegre Baker Daniels LLP
5                                               300 N. Meridian Street, Suite 2700
                                                Indianapolis, IN  46204
6                                               Telephone: +1-317-237-0300
                                                Facsimile: +1-317-237-1000
7                                               kathy.osborn@FaegreBD.com
                                                ryan.hurley@FaegreBD.com
8
                                                Jeffrey S. Roberts (*pro hac vice*)
9                                               Faegre Baker Daniels LLP
                                                3200 Wells Fargo Center
10                                              1700 Lincoln Street
                                                Denver, CO  80203
11                                              Telephone: +1-303-607-3500
                                                Facsimile:  +1-303-607-3600
12                                              jeff.roberts@FaegreBD.com

13                                              Calvin L. Litsey (SBN 289659)
                                                Faegre Baker Daniels LLP
14                                              1950 University Avenue, Suite 450
                                                East Palo Alto, CA  94303-2279
15                                              Telephone: +1-650-324-6700
                                                Facsimile: +1-650-324-6701
16                                              calvin.litsey@FaegreBD.com

17                                              ***Attorneys for Specially Appearing Defendant
                                                Thomson SA***

18

19

20

21

22

23

24

25

26

27

28

THOMSON SA'S NOTICE OF MOTION AND           26                    No. 07-5944-SC; MDL No. 1917
MOTION TO DISMISS NEWLY FILED DAP
COMPLAINTS

1

2

3

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

4

5

IN RE CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION,

No. 07-cv-5944-SC
MDL No. 1917

6

This Document Relates to:

7

8

*Electrograph Systems, Inc., et al. v.
Technicolor SA, et al., No. 13-cv-05724;*

9

10

*Alfred H. Siegel, as Trustee of the Circuit
City Stores, Inc. Liquidating Trust v.
Technicolor SA, et al., No. 13-cv-00141;*

11

12

*Best Buy Co., Inc., et al. v. Technicolor SA,
et al., No. 13-cv-05264;*

13

14

*Interbond Corporation of America v.
Technicolor SA, et al., No. 13-cv-05727;*

15

*Office Depot, Inc. v. Technicolor SA, et al.,
No. 13-cv-05726;*

16

17

*Costco Wholesale Corporation v.
Technicolor SA, et al., No. 13-cv-05723;*

18

19

*P.C. Richard & Son Long Island
Corporation, et al. v. Technicolor SA, et al.,
No. 31:cv-05725;*

20

21

22

*Schultze Agency Services, LLC, o/b/o
Tweeter Opco, LLC, et al. v. Technicolor SA,
Ltd., et al., No. 13-cv-05668;*

23

*Sears, Roebuck and Co. and Kmart Corp. v.
Technicolor SA, No. 3:13-cv-05262;*

24

25

*Target Corp. v. Technicolor SA, et al., No.
13-cv-05686*

**[PROPOSED] ORDER GRANTING
THOMSON SA'S MOTION TO DISMISS
NEWLY FILED DIRECT ACTION
PLAINTIFFS' COMPLAINTS**

26

27

28

[PROPOSED] ORDER GRANTING THOMSON
SA'S MOTION TO DISMISS NEWLY FILED DAP
COMPLAINTS

No. 07-5944-SC; MDL No. 1917

1      Upon consideration of the Thomson SA's Notice of Motion and Motion to Dismiss Newly

2  Filed Direct Action Plaintiffs' Complaints and supporting Memorandum of Authorities, it is hereby

3      ORDERED that Thomson SA's Motion to Dismiss Newly Filed Direct Action Plaintiff

4  Complaints is GRANTED, and the claims against Thomson SA in *Best Buy Co., Inc. v. Technicolor*

5  *SA,* No. 13-cv-05264; *Siegel v. Technicolor SA*, No. 13-cv-00141; *Costco Wholesale Corp. v.*

6  *Technicolor SA (f/k/a Thomson SA), et al.*, No. 13-cv-05723; *Electrograph Systems, Inc. v.*

7  *Technicolor SA*, No. 2:13-cv-05724; *Interbond Corp. of Am. v. Technicolor SA*, No. 13-cv-05727;

8  *Office Depot, Inc. v. Technicolor SA*, No. 13-cv-05726; *P.C. Richard & Son Long Island Corp. v.*

9  *Technicolor SA*, No. 13-cv-05725; *Sears, Roebuck & Co. v. Technicolor SA*, No. 13-cv-05262;

10  *Schultze Agency Services, LLC v. Technicolor SA*, No. 13-cv-05668; and *Target Corp. v.*

11  *Technicolor SA,* No. 13-cv-05686 are dismissed WITH PREJUDICE.

12      IT IS SO ORDERED.

13

14  DATED: _____    _____

15                       Hon. Samuel Conti
                          United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28