1  Terry Calvani (53260)
   terry.calvani@freshfields.com
2  Richard Snyder (*pro hac vice*)
   rich.snyder@freshfields.com
3  FRESHFIELDS BRUCKHAUS DERINGER US LLP
   701 Pennsylvania Avenue, NW, Suite 600
4  Washington, DC  20004
   Tel:  (202) 777-4500
5  Fax:  (202) 777-4555

6  ***Counsel for Defendant Beijing Matsushita***
   ***Color CRT Co., Ltd.***

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11 IN RE: CATHODE RAY TUBE (CRT)          ) Case No.: 3:07-cv-5944 SC
   ANTITRUST LITIGATION                   ) MDL NO. 1917
12 ──────────────────────────────────     )
                                          ) **DEFENDANT BEIJING MATSUSHITA**
13 This document relates to:              ) **COLOR CRT CO., LTD.'S REPLY TO**
                                          ) **CERTAIN DIRECT ACTION**
14                                         ) **PURCHASERS' OPPOSITION TO**
                                          ) **MOTION TO DISMISS**
15 BEST BUY CO., INC. V. HITACHI, LTD.,   )
      Case No. 3:11-cv-05513-SC           )
16 TARGET CORP. V. CHUNGHWA,              )
      Case No. 3:11-cv-05514-SC           )
17 TECH DATA V. HITACHI, LTD.,            )
      Case No. 3:13-cv-00157-SC           )
18                                         )
                                          )
19                                         ) Date:     February 21, 2014
                                          ) Time:    10:00 a.m.
20                                         ) Before the Honorable Samuel Conti
   ──────────────────────────────────     )
21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................ ii

Preliminary Statement ..................................................................................................... 1

Factual Background .......................................................................................................... 2

Legal Standards ................................................................................................................ 5

Argument .......................................................................................................................... 5

    I.      DAPs Fail to Establish That This Court has Specific Personal Jurisdiction

            Over BMCC ...................................................................................................... 5

            A.      DAPs Fail to Establish BMCC Purposefully Directed Conduct at the

                   U.S. ...................................................................................................... 6

            B.      DAPs Fail to Establish Purposeful Availment .......................................... 7

            C.      The Exercise of Jurisdiction Over BMCC Would be Unreasonable .......... 9

    II.     Jurisdictional Discovery Request Should be Denied .......................................... 11

    III.    Service of Process Within the United States Pursuant to Rule 4(f) is

          Facially Deficient. ............................................................................................ 11

    IV.    BMCC Did Not Waive its Personal Jurisdiction and Insufficient Service of

          Process Defenses ............................................................................................. 12

Conclusion ...................................................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Asahi Metal Indus. Co. v. Super. Court*, 480 U.S. 102 (1987) ...................................................... 9

*Calder v. Jones*, 465 U.S. 783 (1984) .............................................................................................. 6

*Daimler AG v. Bauman*, 187 L. Ed. 2d 624 (2014)................................................................. 5, 10

*Dow Chem. Co. v. Calderon*, 422 F.3d 827 (9th. Cir. 2005) ...................................................... 12

*In Re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2013 WL 2456611

    (E.D. Mich. June 6, 2013) .......................................................................................................... 8

*In re Auto. Refinishing Paint Antitrust Litigation*, 358 F.3d 288 (3d Cir. 2004) ......................... 13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,

    No. C-02-1486, 2005 U.S. Dist. LEXIS 30299 (N.D. Cal. Nov. 7, 2005) ................................ 7

*J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011) ...................................................... 7

*Jason v. UNITE HERE,* No. C-05-820 JLR, 2005 WL 3278004 (W.D. Wash. Dec. 2, 2005)....... 6

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F. 3d 1218 (9th Cir. 2011) ................................... 8

*Ochoa v. J.B. Martin & Sons Farms*, 287 F. 3d 1182 (9th Cir. 2002) ......................................... 5

*Rubicon Global Ventures, Inc. v. Chongquing Zongshen Group Import/Export Corp.*,

    No. 09-818-HA, 2010 U.S. Dist. LEXIS 123801, at *9 (D. Or. 2010),

    *aff'd in part and rev'd in part on other grounds*, 494 F. App'x 736 (9th Cir. 2012),

    *cert. denied*, 2013 U.S. LEXIS 3046 (U.S. Apr. 15, 2013) ................................................... 12

*Terracom v. Valley Nat'l Bank*, 49 F.3d 555 (9th Cir. 1995) ....................................................... 9

**Rules**

Fed. R. Civ. P. 12(b) .................................................................................................................... 12

Fed. R. Civ. P. 12(b)(2) ................................................................................................................. 5

Fed. R. Civ. P. 12(b)(5) ................................................................................................................. 5

Fed. R. Civ. P. 4(f) .................................................................................................................. 5, 11

Beijing Matsushita Color CRT Co., Ltd. ("BMCC") respectfully submits this Reply to the Consolidated Opposition ("Opposition") of Certain Direct Action Plaintiffs ("DAPs") to BMCC's Motion To Dismiss ("MTD") their Complaints listed in the caption, *infra*.[1]

## PRELIMINARY STATEMENT

BMCC's MTD establishes that the Complaints should be dismissed for lack of personal jurisdiction and deficient service of process. DAPs' Opposition also fails to meet their burden and their Complaints must therefore be dismissed.

- The Opposition does not argue that this Court has general jurisdiction over BMCC, nor does it dispute the fact that BMCC had no indicia of physical presence in the United States. The Opposition argues only that this Court has specific personal jurisdiction over BMCC because DAPs allege (1) BMCC participated in a conspiracy, the purpose and effect of which was to raise and fix the prices of cathode ray tubes ("CRTs") and CRT Products sold in the United States, and (2) BMCC knew and expected that a substantial amount of its CRTs and resulting CRT Products would be sold in the United States. The first point is insufficient because it fails to address the fact that BMCC did not actually sell any CRTs in or into the United States and therefore could not raise or fix the price of CRTs sold there. The second point relies on the rejected stream of commerce theory for establishing personal jurisdiction and ignores the intervening decision by a third party that purchased CRTs from BMCC in China and decided to ship them to the U.S., and is therefore an inadequate basis for personal jurisdiction as a matter of law.

- The Opposition argues that BMCC waived its personal jurisdiction and ineffective service of process defenses. BMCC has not waived these defenses with respect to these complaints because in this Circuit, waiver with respect to one action does not constitute waiver with respect to all actions, regardless of whether the actions are

---

1 Specifically, the Complaints are in the following actions: Best Buy Co., Inc. v. Hitachi, Ltd., Case No. 3:11-cv-05513-SC; Target Corp. v. Chunghwa, Case No. 3:11-cv-05514-SC; and Tech Data v. Hitachi, Ltd., Case No. 3:13-cv-00157-SC.

closely related.  Therefore, the Court need only consider whether BMCC has waived these defenses with respect to the instant Complaints.  DAPs concede that BMCC has not.

- Furthermore, the Opposition does not address BMCC's argument that the manner of service of process of the DAPs' Complaints is contrary to the plain text of Rule 4(f) of the Federal Rules of Civil Procedure.  BMCC respectfully requests that the Court address this argument.

## FACTUAL BACKGROUND

BMCC's MTD shows that the factual allegations cited to support this Court's personal jurisdiction over BMCC are nothing more than unsupported legal conclusions that are contradicted by sworn testimony.  Although the Opposition cites to additional evidence produced in discovery in this case, neither the Complaints nor the cited evidence meet DAPs' burden to prove that this Court has specific personal jurisdiction over BMCC under either a purposeful direction or purposeful availment theory.  Furthermore, BMCC has offered sworn testimony that contradicts the cited evidence as discussed below.

| DAPs Allegation | BMCC Response |
|---|---|
| BMCC sold 14-inch CPTs directly to a Panasonic subsidiary in the United States.  Opp. at 8:4-5, citing Loh Exh. K (excerpt of Chunghwa Picture Tubes ("Chunghwa") deposition testimony about a document Chunghwa produced). | The cited deposition testimony of a third party, Chunghwa, provides no foundation for Chunghwa's assertion that BMCC sold directly to a Panasonic subsidiary in the United States and cannot overcome sworn testimony by a former BMCC employee that BMCC never sold any CRTs in the United States.  Declaration of Ayumu Kinoshita, attached as Exhibit 1 to BMCC's MTD, at ¶¶ 22-23 (Kinoshita Decl.). |
| Given that BMCC was the second largest manufacturer of CRTs in China at the time of the conspiracy, and that the United States was the largest market for CRT televisions and computer monitors in the world, the "reasonable inference" is that hundreds of thousands of CRTs manufactured by BMCC were sold throughout the United States during the conspiracy period.  Opp. at 19:11-15, citing nothing. | The requested inference is unsupported and contradicted by sworn testimony that, regardless of whether the United States was the largest market for CRT Products in the world, the majority of CRTs manufactured by BMCC were sold and shipped to customers in China, and that BMCC never sold any CRTs in the United States.  Kinoshita Decl. ¶¶ 21-23. |
| CRTs manufactured by BMCC were sold in California as one expert has | The cited expert merely opines on the likelihood that CRTs sold by BMCC in China were sold in televisions in California |

| DAPs Allegation | BMCC Response |
|---|---|
| opined. Opp. at 10:11-13, citing Loh Ex. AA (Comaner Declaration). | without providing any support for the proposition that BMCC, rather than a third party, sold such CRTs in the United States and another third party sold the televisions containing those CRTs. *See* Loh Exh. AA at 4:15-22 and 5:21-23 (description of MTPD sales database cited as proof that BMCC sold CRTs into the United States provides no indication about terms of sales such as FOB China). |
| BMCC profited handsomely by participating in the conspiracy. Opp. at 10:2, citing nothing. By participating in the conspiracy, BMCC ensured that the CRTs it manufactured for the billion-dollar United States CRT market were sold at artificially high prices, significantly increasing its profit margins. Opp. at 10:8-10, citing conclusory statements in Complaints that do not relate to BMCC's profit margins. | Neither the Opposition nor the Complaints provide any evidence whatsoever of BMCC's profit margins at any time. |
| BMCC participated in meetings in China and complied with conspiracy "directives." Opp. 6:9-7:18, citing Loh Exhs. E, F, G, H, I, and O. | Although the heading on this section asserts that BMCC participated in glass meetings to raise the price of CRTs and CRT Products sold throughout the United States, the cited meetings allegedly attended by BMCC were in China, and none of the cited evidence shows that BMCC entered into any agreement with respect to CRTs sold in the United States.[2] It is not surprising that there is no such cited evidence, given uncontroverted sworn testimony that BMCC had no control over the volume or price at which CRTs purchased from BMCC in China were sold in the United States. Kinoshita Decl. ¶ 3.[3] |

[2] One cited meeting that took place in Japan at which North America allegedly was discussed confirms that BMCC supplied CRT to Chinese domestic customers, including to the Matsushita TV operation in China, and that only 15% of its production was exported, mainly to Asia and Panasonic TV factories. Thus, DAPs' own cited evidence confirms sworn testimony that the majority of CRTs manufactured by BMCC were sold and shipped to customers in China. Kinoshita Decl. ¶ 21. The cited meeting took place between Philips and Matsushita in 2001, the same year that Philips sold its CRT business. Best Buy FAC ¶ 45. Read in the context of Philips' exit in 2001 from the manufacture of CRT, but not televisions containing CRT, the most plausible reading of the document is that it relates to opportunities to supply CRT to Philips after its exit.

[3] The closest the Opposition comes to even making an allegation, let alone offering requisite evidence, of coordination on U.S. sales by BMCC is the nearly incomprehensible allegation that "[b]y keeping the internal pricing to their affiliated OEMs at a high enough level to support the CRT pricing in the market to other OEMs, BMCC and its co-conspirators ensured that all OEMs paid supra-competitive prices for CRTs, including those in the United States." Opp. at 6:15-18. The contorted nature of this unsupported allegation is indicative of the strength of the Opposition.

| DAPs Allegation | BMCC Response |
|---|---|
| BMCC, by and through its Panasonic affiliates, "directed its anticompetitive conduct" at the United States. Opp. at 7:19-26-8:1-2.[4] | As the Kinoshita Declaration (¶ 24) and the Opposition make clear (Opp. 4:21), BMCC did not control Panasonic or MTPD, nor were Panasonic or MTPD agents of BMCC in the United States. Therefore, BMCC did not have the ability to direct any activity via Panasonic. |
| BMCC exchanged information with Panasonic regarding the United States CRT market. Opp. at 8:9-15, citing Loh Exhs. L and M. | The cited evidence on information exchange[5] shows that a Panasonic entity sought information about TV, not CRT, exports to the United States from certain of its MTPD subsidiaries as well as from BMCC, which was indirectly 50% owned by Matsushita. BMCC never manufactured or sold TVs or any other CRT Products (Kinoshita Decl. ¶ 9), but apparently provided Panasonic with some Chinese customs data on TV exports. The exchange of publicly available customs information about a product not manufactured by BMCC nor alleged to have been price fixed does not constitute purposeful direction that harmed the forum state. |
| BMCC and Panasonic "worked together" to implement price increases in the United States. Opp. at 8:19-9:28, citing Loh Exh. N. | This translation of a document produced by MTPD refers to a price increase to Orion, but nowhere does the document indicate that the referenced price increase was for sales in or into the United States. DAPs also disregard the clear import of the document, that BMCC was not conspiring, but competing, with defendant Samsung on pricing. The Opposition notes that Orion had subsidiaries all over the world, including the United States, but offers no support for the inference that the discussed price increase was to Orion in the United States. The document discusses whether MTPDT (i.e., MTPD's Thailand subsidiary) might supply the relevant Orion factory, as well as business travel in Asia. The more plausible inference, therefore, is that the document relates to sales to Orion in Thailand. Furthermore, the Opposition's artful assertion that BMCC and Panasonic "worked together" does not refute uncontroverted sworn testimony that establishes that after Panasonic purchased CRTs from BMCC in China, Panasonic determined where those CRTs were shipped and the price at which any of those CRTs were sold in the United States. Kinoshita Decl. ¶ 23. |

---

[4]    No explanation is provided for why cited evidence of meetings that allegedly took place between Panasonic and other third parties is relevant to this proposition.

[5]    Additionally, Loh Exh. B is cited for the proposition that Kinoshita admitted that he talked to BMCC about information exchanges he had with competitors. Opp. at 9:18-19. The cited testimony refers to market information and company trends, not to any communications with competitors, and it provides no details of the information supposedly relayed to BMCC. Furthermore, Loh Exhibits P and Q are cited for the proposition that Kinoshita kept BMCC apprised of his business meetings with CRT manufacturers in the United States. Opp. at 9:19-20. The cited exhibits merely indicate meetings Kinoshita apparently had scheduled, but do not report the proposed or actual subject matter of such meetings, nor do they confirm that such meetings took place.

1    As discussed in the next section, the cited evidence in the Complaints and Opposition are

2    insufficient to support a finding that this Court has specific personal jurisdiction over BMCC

3    under the relevant case law.

4                                        **LEGAL STANDARDS**

5    Rule 12(b)(2) requires dismissal of complaints for lack of personal jurisdiction if personal

6    jurisdiction may not be exercised consistent with due process.

7    Rule 12(b)(5) requires dismissal of complaints for insufficient service of process of a

8    complaint.

9    Rule 4(f)(3)  permits service at a place *not within a judicial district of the United States*

10   by other means *not prohibited by international agreement* (emphasis added).

11                                          **ARGUMENT**

12   **I.    DAPs Fail to Establish That This Court has Specific Personal Jurisdiction Over**

13          **BMCC**

14         The Opposition argues only that this Court has specific, not general, personal jurisdiction

15   over BMCC, thereby conceding that BMCC is not subject to general jurisdiction in the United

16   States.[6]  Having given up any claim that the United States courts have general jurisdiction over

17   BMCC, the Opposition tries to characterize its cited facts to make out an attenuated claim that

18   the United States courts have specific personal jurisdiction over BMCC, a company that never

19   manufactured, marketed or sold CRTs in the United States.  Under the applicable legal standards,

20   the facts relied upon are insufficient.[7]

21

22   _____

23   [6]    Indeed, the Supreme Court just ruled that "only a limited set of affiliations with a forum will render a
       defendant amenable to all-purpose jurisdiction there."  *Daimler AG v. Bauman*, 187 L. Ed. 2d 624, 639 (2014).

24   With respect to a corporation in particular, the place of incorporation and principal place of business are the
       paradigm bases for general jurisdiction, and exercising general jurisdiction merely on the basis of substantial,
       continuous and systemic course of business in a forum is "unacceptably grasping."  *Daimler*, 187 L. Ed. 2d at

25   640 (citing *Goodyear Dunlop Tires Operations S.A. v. Brown*, 131 S. Ct. 2846 (2011)).  As established in the
       Complaints and the Kinoshita Declaration, BMCC's place of incorporation and principal place of business are
       in China, and there is no other indication that BMCC is "at home" in the United States as required to find

26   general jurisdiction under *Daimler* and *Goodyear*.  Best Buy FAC ¶ 44, Tech Data FAC ¶ 46, Target SAC
       ¶ 48; Kinoshita Decl. ¶¶ 7-20.

27   [7]    DAPs refer to dicta in a footnote in *Ochoa v. J.B. Martin & Sons Farms*, 287 F. 3d 1182, 1188 n.2 (9th Cir.
       2002) to support a more "flexible" approach to specific personal jurisdiction; however, DAPs cite no authority
       in which the "flexible" approach rescued an otherwise deficient demonstration of the first two elements of

28   specific personal jurisdiction.  *See Jason v. UNITE HERE*, No. C-05-820 JLR, 2005 WL 3278004, at *3 (W.D.

## A.    DAPs Fail to Establish BMCC Purposefully Directed Conduct at the U.S.

To satisfy the purposeful direction standard, DAPs must show that BMCC intentionally directed injurious conduct at the United States, such that the United States is "*the* focal point" of the tort and that the United States bore the "brunt of the harm." *Calder v. Jones*, 465 U.S. 783, 789 (1984) (emphasis added).

The Opposition suggests that uncontroverted statements in the Complaints alone are sufficient to establish that BMCC purposefully directed tortious conduct at the United States. Specifically, the Opposition argues that the following allegations in the Complaints are sufficient to establish specific personal jurisdiction: (1) BMCC participated in glass meetings, (2) BMCC conspired with Panasonic and its affiliates to fix the price of CRTs, and (3) BMCC did so to benefit from the inclusion of those CRTs in CRT Products sold within the United States. Opp. at 15:18-21. These unsupported allegations are in fact contradicted by sworn testimony that BMCC did not have any control over the price or volume of any CRTs sold in the United States. Kinoshita Decl. ¶ 23. That a third party purchased CRTs in China from BMCC and that third party determined whether it would sell those CRTs into the United States at a price it determined, is insufficient to show that BMCC, rather than the third party, directed any conduct, let alone tortious conduct, at the United States. Evidence that BMCC did anything other than sell CRTs outside the United States is entirely rebutted by the Kinoshita Declaration.

The *DRAM* case makes the legal insufficiency of these allegations clear. The Opposition asserts that the reason the court granted the motion to dismiss in *DRAM* is that the plaintiffs there failed to offer any evidence that defendants knew that DRAM products manufactured by them would reach the forum states. Opp. at 17:16-18:2. While it is true that the *DRAM* court noted this deficiency, the court went on to say that the *DRAM* plaintiffs could not allege that defendants' acts were targeted towards such plaintiffs because of the "uncontroverted testimony offered by defendants demonstrating that they have never manufactured nor sold any DRAM in any of the forum states, nor do they maintain any business or corporate formalities in the forum

---

Wash. Dec. 2, 2005) (rejecting plaintiffs' suggestion that the "flexible" approach should cure a defect to the requirement that the claims arise out of defendant's contacts with the forum).

states, nor do they receive any substantial revenue from the sale of DRAM (or any other products) in the forum states.  In short, nothing exists here that ***can*** establish the wrongful targeting of a known forum resident as required by Ninth Circuit law."  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C-02-1486, 2005 U.S. Dist. LEXIS 30299, at *19 (N.D. Cal. Nov. 7, 2005) (emphasis added).  Here, BMCC has offered the same uncontroverted evidence via the Kinoshita Declaration that the *DRAM* court cited as making it impossible for the plaintiffs to satisfy the purposeful direction standard.

Furthermore, the Opposition's reliance on *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 U.S. Dist. LEXIS 131809 (N.D. Cal. Nov. 9, 2011), is inapposite.  In denying Mitsui Taiwan's motion to dismiss for lack of specific personal jurisdiction in that case, the court cited to numerous emails between Mitsui USA and Mitsui Taiwan that referred to prices of the allegedly price-fixed product being charged by Mitsui USA and its competitors to U.S. customers.  The Opposition cites to no evidence of any discussion between BMCC and any other party regarding CRT prices being charged to U.S. customers.  In contrast, the cited information exchanges between BMCC and Panasonic entities in the United States in this case discuss export volumes (not pricing) with respect to televisions, a product not manufactured by BMCC nor alleged to be subject to a price-fixing conspiracy among the defendants in this case.  The two references to meetings a Panasonic employee apparently was scheduled to have with companies that also made CRTs (as well as televisions and other products) in emails from Panasonic to BMCC provide no information about what was intended to be or actually was discussed at those meetings (if they took place).

### B.    DAPs Fail to Establish Purposeful Availment

The Opposition recognizes that under the "stream of commerce" theory, as interpreted by the Supreme Court in *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), placing a product into the stream of commerce without more is not a purposeful act directed toward the forum state.  However, the Opposition argues that the "something more" required by *Nicastro* is nothing more than "taking specific steps to deliver goods in the stream of commerce 'with the

expectation that they will be purchased' by residents of the forum … so long as the goods are part of the 'regular course' of sales." Opp. at 18:22-24 (citing *Nicastro*, 131 at 2792). The Opposition's reading and application of *Nicastro* is incorrect.

The Ninth Circuit adopted the *Nicastro* plurality's view that "the exercise of judicial power is not lawful unless the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'" and that "the so-called 'stream-of-commerce' doctrine cannot displace it." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Nicastro*, 131 S. Ct. at 2785 (plurality op. of Kennedy, J.)). The only court to have considered *Nicastro*'s personal jurisdiction ruling in an antitrust case also followed the *Nicastro* plurality, finding that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *In Re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2013 WL 2456611, at *5 (E.D. Mich. June 6, 2013) (dismissing on the basis that there is no inference that foreign defendant "targeted the United States or that [foreign defendant] sought the protection of the forum's laws or benefitted from them.")

Although the Opposition alleges "evidence and uncontroverted allegations that BMCC fixed the prices of CRTs sold in the United States," Opp. at 19:7-8, citing to all exhibits and all of the Complaints, it fails to identify a single instance in which BMCC manufactured, marketed or sold CRTs in the United States, or otherwise purposefully availed itself of the benefits and protections of the laws of the United States. Similarly, notwithstanding DAPs' access to BMCC's production of more than a half million pages in this case, DAPs' Opposition asks the Court to infer that "hundreds of thousands of CRTs manufactured by BMCC were sold throughout the United States during the conspiracy period," when BMCC presents uncontroverted sworn testimony that BMCC never sold CRTs in the United States. Kinoshita Decl. ¶¶ 18-23.

over a defendant from neighboring Texas, which hardly poses a similar burden to that of a Chinese defendant defending itself in a California court.

- With respect to the extent of conflict with the sovereignty of the defendant's state (factor 3), the Opposition relies on statements made by the Ninth Circuit in *Bauman v. DaimlerChrysler Corp.*, 644 F. 3d 909, 926 (9th Cir. 2011) (quoting *Gates Learjet Corp. v. Jensen*, 743 F. 2d 1325, 1333 (9th Cir. 1984)) to the effect that such conflicts are "not dispositive, because if given controlling weight, it would always prevent suit against a foreign national in a United States court." In overruling that decision, the Supreme Court specifically admonished the Ninth Circuit for failing sufficiently to heed "the risks to international comity that its expansive view of general jurisdiction posed." *Daimler AG v. Bauman*, 187 L. Ed. 2d 624, 642 (2014). Therefore, even if sovereignty conflicts are not dispositive, they are not to be swept under the rug.

- With respect to efficiency and convenience, the Opposition claims that "most of the evidence and witnesses in this case are located in the United States" as compared to China. That simply is not true, specifically with respect to BMCC, and with respect to the defendants more generally. First, the complaint alleges that the anticompetitive conduct at issue largely took place abroad.[9] Best Buy FAC ¶¶ 116-157; Target SAC ¶¶ 109-151; Tech Data FAC ¶¶ 121-164. Second, BMCC has no offices, assets or employees in the United States. *See* Kinoshita Decl. ¶ 11-20. Third, approximately two-thirds of the defendants in these cases are companies incorporated in and having their principal places of business in foreign jurisdictions, principally throughout Asia. Best Buy FAC ¶¶ 25-78; Target SAC ¶¶ 19-62; Tech Data FAC ¶¶ 22-72.

- With respect to the existence of an alternative forum (factor 7), the Opposition merely states that the statute of limitations in China is no longer than two years and therefore would bar suit in China. However, the Opposition provides no reason why the DAPs did

---

[9] The Complaints allege in one paragraph that glass meetings took place in, among other places, the United States, but provide no information about the date, time, place or participants in any such alleged meeting. Best Buy FAC ¶ 123, Tech Data FAC ¶ 123, Target ¶¶ 116, 126

not bring suit in China within the statute of limitations period, assuming it indeed has run. The DAPs have had notice of the claims in this action since at least November 2007 when the class action complaints were filed, and they claim that the anticompetitive conduct at issue occurred at least until November 2007. Best Buy FAC ¶ 1; Target SAC ¶ 1; Tech Data FAC ¶ 1.

## II. Jurisdictional Discovery Request Should be Denied

As evidenced by the exhibits attached to the Opposition, DAPs have had access to the full evidentiary record in this case, pending since 2007, including the documents and data produced by BMCC in 2010-2011. Furthermore, in 2009, MTPD sold its BMCC shares, BMCC shut down its CRT operations, and BMCC disposed of its CRT manufacturing assets. Thus, BMCC has not been involved in the CRT (or any other electronics business) in over four years. Kinoshita Decl. ¶ 6, 10. If DAPs cannot successfully allege facts required to meet their burden of pleading on that available record, there is no reasonable basis to permit further discovery from BMCC.

## III. Service of Process Within the United States Pursuant to Rule 4(f) is Facially Deficient.

The Opposition fails to address the complete contradiction between the DAPs' service of process in a judicial district of the United States pursuant to an order under Rule 4(f)(3) (Dkt. 1241) and the plain text of Rule 4(f), which only empowers a court to authorize service of process "not within a judicial district of the United States." Fed. R. Civ. P. 4(f). This Court's order instructs the moving parties to serve their complaints on BMCC's "US Local Counsel," Freshfields Bruckhaus Deringer US LLP, a law firm whose only offices are in New York and Washington, DC. (Dkt. 1241) Not only does the Opposition fail to address this point, neither this Court, nor any other court, has resolved the facial contradiction between a Rule 4(f) order to effect service in a judicial district of the United States under a rule that only authorizes service of process outside the United States.

**IV.    BMCC Did Not Waive its Personal Jurisdiction and Insufficient Service of Process**

**Defenses**

BMCC raised both personal jurisdiction and service of process as defenses in its first responsive pleading to each of the DAP Complaints.  MTD at 7, n.12.  There is, therefore, no waiver of those defenses with respect to the DAP Complaints.  The wording of Rule 12(b) itself precludes waiver of a defense in one action based on the defenses asserted in a previous action. Fed. R. Civ. P. 12(b) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.")  DAPs concede that BMCC has not waived these defenses in the DAP actions, and instead argue that BMCC's conduct in other CRT actions constitutes waiver of defenses in these DAP actions.  This request is contrary to established precedent in this Circuit.

It is well-established in this Circuit that defendants sued in multiple actions, even closely related actions in the same court, do not waive their personal jurisdiction defense in the second action by defending the first action on the merits.  *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 835-36 (9th. Cir. 2005).  *See also Rubicon Global Ventures, Inc. v. Chongquing Zongshen Group Import/Export Corp.*, No. 09-818-HA, 2010 U.S. Dist. LEXIS 123801, at *9 (D. Or. 2010), (finding that decision of defendant to "defend on non-jurisdictional grounds in *Rubicon I* does not constitute a waiver of personal jurisdiction in *Rubicon IV*"), *aff'd in part and rev'd in part on other grounds*, 494 F. App'x 736 (9th Cir. 2012), *cert. denied*, 2013 U.S. LEXIS 3046 (U.S. Apr. 15, 2013).

Indeed, in its *Calderon* decision, the Ninth Circuit explicitly considered and rejected the *Calderon* plaintiffs' assertion that out-of-circuit precedent required the same waiver that DAPs call for here.  *Calderon*, 422 at 834-35 (rejecting plaintiffs' assertion that out-of-circuit precedent allowed a finding of waiver where a party has only defended claims before the court in question). The DAPs' asserted position would also abrogate clearly established choice of law rules that require separate personal jurisdiction inquiries for each action consolidated in an MDL based on the rule that the "transferee court can exercise personal jurisdiction to the same extent that the

transferor court could." *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 297 n.11 (3d Cir. 2004). There is, therefore, no waiver of personal jurisdiction defenses in relation to the DAP actions.

DAPs' assertion that BMCC waived its service of process arguments before the DAP Complaints were filed is similarly without merit. Axiomatically, service of process is a defense that can only be made with respect to how service of process of a particular complaint was effected, after that service was effected. The Opposition (22:21-25) identifies three actions it argues constitute waiver: (i) BMCC filed multiple Rule 12(b) motions in this MDL, (ii) BMCC previously stipulated to accepting service, and (iii) BMCC has actively litigated this action for more than five years. To be clear, BMCC filed Rule 12(b) motions and "actively litigated" in actions where (i) the complaint was served pursuant to the Hague Convention, or (ii) BMCC accepted service of process. In actions where BMCC was served under the Hague Convention or accepted service of process, it had no 12(b)(5) defense to assert and therefore had no 12(b)(5) defense to waive.

## CONCLUSION

For the foregoing reasons, all Complaints should be dismissed pursuant to Rule 12(b)(2) because the Court lacks personal jurisdiction over BMCC; and the Best Buy, Sears, and Target Complaints should be dismissed under Rule 12(b)(5) as contrary to Rule 4(f)(3).

Dated: January 31, 2014     Respectfully submitted,

Freshfields Bruckhaus Deringer US LLP

By: /s/ Richard Snyder
  Terry Calvani (53260)
  Richard Snyder (*pro hac vice*)
  701 Pennsylvania Avenue, NW, Ste 600
  Washington, DC 20004
  Tel: (202) 777-4500
  Fax: (202) 777-4555

*Counsel to Defendant Beijing Matsushita Color CRT Co., Ltd.*

1

# CERTIFICATE OF SERVICE

2

I, Richard Snyder, declare that I am over the age of eighteen (18) and not a party to the

3

within action. I am Counsel with the law firm of Freshfields Bruckhaus Deringer US LLP, 701

4

Pennsylvania Avenue, NW, Suite 600, Washington, DC 20004.

5

On January 31, 2014, I caused a copy of the foregoing **DEFENDANT BEIJING**

6

**MATSUSHITA COLOR CRT CO., LTD.'S REPLY TO CERTAIN DIRECT ACTION**

7

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** to be electronically filed and

8

served via the Official Court Electronic Document Filing System, which served copies on all

9

parties registered for electronic filing.

10

11    Dated: January 31, 2014            Freshfields Bruckhaus Deringer US LLP

12                                       By: /s/ Richard Snyder
                                            Richard Snyder (*pro hac vice*)
13                                          Freshfields Bruckhaus Deringer US LLP
                                            Email: rich.snyder@freshfields.com
14                                          701 Pennsylvania Avenue NW, Suite 600
                                            Washington, DC 20004
15                                          Tel: (202) 777-4565
                                            Fax: (202) 777-4555
16
                                            ***Counsel to Defendant Beijing***
17                                          ***Matsushita Color CRT Co., Ltd.***

18

19

20

21

22

23

24

25

26

27

28