Terry Calvani (53260)
terry.calvani@freshfields.com
Richard Snyder (*pro hac vice*)
rich.snyder@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
701 Pennsylvania Avenue, NW, Suite 600
Washington, DC  20004
Tel:  (202) 777-4500
Fax:  (202) 777-4555

*Counsel for Defendant Beijing Matsushita Color CRT Co., Ltd.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No.: 3:07-cv-5944 SC<br>MDL NO. 1917 |
| This document relates to:<br><br>BEST BUY CO., INC. V. HITACHI, LTD.,<br>   Case No. 3:11-cv-05513-SC<br>TARGET CORP. V. CHUNGHWA,<br>   Case No. 3:11-cv-05514-SC<br>TECH DATA V. HITACHI, LTD.,<br>   Case No. 3:13-cv-00157-SC | **DECLARATION OF RICHARD S. SNYDER IN SUPPORT OF BEIJING MATSUSHITA COLOR CRT CO., LTD'S REQUEST FOR JUDICIAL NOTICE**<br><br>Date:  February 21, 2014<br>Time:  10:00 a.m.<br>Before the Honorable Samuel Conti |

DECLARATION OF RICHARD S. SNYDER IN SUPPORT OF BMCC'S REQUEST FOR JUDICIAL NOTICE
(Case No. 07-cv-5944-SC, MDL No. 1917)

I, Richard S. Snyder, do declare and state as follows:

1. I am Counsel with the law firm of Freshfields Bruckhaus Deringer US LLP, counsel of record for defendant Beijing Matsushita Color CRT Co., Ltd (**"BMCC"**) in these actions. I am a member of the bars of the State of Virginia and the District of Columbia and am admitted to practice before this Court *pro hac vice*. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify thereto.

2. Attached hereto as Exhibit A is a true and correct copy of the February 4, 2014, February 4, 2014, Order Granting Motion to Quash Service of Summons entered in Case No. CGC – 11-515784 in the Superior Court of California, County of San Francisco.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 7th day of February, 2014, at Washington, DC.

By: /s/ Richard S. Snyder
Richard S. Snyder (*pro hac vice*)
Freshfields Bruckhaus Deringer US LLP
701 Pennsylvania Avenue, NW, Ste 600
Washington, DC  20004
Tel:  (202) 777-4564
Fax:  (202) 777-4555

*Counsel to Defendant Beijing Matsushita Color CRT Co., Ltd.*

# EXHIBIT A



SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ET AL., <br><br> Plaintiff, <br><br> vs. <br><br> SAMSUNG SDI CO., LTD., ET AL., <br><br> Defendants. | Case No. CGC – 11-515784 <br><br><br> ORDER GRANTING MOTION TO QUASH SERVICE OF SUMMONS |

**Introduction**

Plaintiff (the People of the State of California as *parens patriae*), brought this indirect purchaser antitrust action against defendants who make, market and supply cathode ray tubes ("CRTs"). Defendants allegedly engaged in a global conspiracy to fix the price of CRTs, and that this conspiracy resulted in both supracompetitive CRT prices and higher prices for finished products that included CRTs.

In September 2013, the People added Beijing Matsushita Color CRT Co., LTD ("BMCC") to this case. BMCC manufactured, marketed, sold and distributed CRT tubes in China until 2009. Complaint ¶ 41. BMCC is a Chinese company, with its principal place of

business in China, and allegedly participated in meetings in China at which the Chinese manufacturers China exchanged information and discussed pricing. Id. at ¶ 105 and 138.

BMCC now specially appears to contest personal jurisdiction. I heard argument February 4, 2014.

The People's request for judicial notice are granted.[1]

**Discussion**

Plaintiff has the burden of proving that a court has jurisdiction over the defendants.[2] Generally speaking, either general or specific jurisdiction may be available.[3] Only specific jurisdiction is at issue here. The People argue that this court has specific jurisdiction over BMCC because BMCC "purposefully availed itself" of the California marketplace.

Specific jurisdiction may exist when the cause of action is related to or arose out of the defendant's contacts with the state. Specific jurisdiction can be established if Plaintiff can show that: (1) the defendant purposefully availed himself of the forum benefits; (2) the controversy is related to or arises out of the defendants contacts with the forum; and (3) the assertion of jurisdiction would comport with "fair play and substantial justice."[4]

Plaintiffs may establish specific jurisdiction through the "effects" test, e.g., that a defendant "purposefully availed" itself of the benefits of the state of California because its actions had effects upon residents in California. Under *Pavlovich*, plaintiffs must show that the defendant "expressly aimed at or targeted" California and knew that its conduct would cause harm in California.

---

[1] These are Samsung's federal guilty plea filed in a federal antitrust case, and the business registration on file with the California Secretary of State for BOE Technology (BMCC's current majority owner).
[2] *Vons Companies v. Seabest Foods*, 14 Cal. 4th 434, 449 (1996).
[3] *Daimler v. Bauman*, __ U.S.__, 134 S.Ct.746 (January 14, 2014); *Sonora Diamond v. Superior Court*, 83 Cal.App.4th 523, 536 (2000).
[4] *Pavlovich v. Superior Court*, 29 Cal.4th 262, 269 (2002).

**Evidence**

*Kinoshita Meetings in California*

Plaintiff suggests that a BMCC officer, Mr. Ayumu Kinoshita, met with employees of Samsung SDI in San Diego, California. (Samsung SDI has pleaded guilty to antitrust violations in a parallel federal antitrust litigation.) The People note four documents in this connection.

The first document[5] is an email from Kinoshita to a variety of email addresses that are not identified, but contain the name "BMCC" (e.g., "BMCC Sales.") Kinoshita's email signature suggests that he is working for Panasonic Industrial Company out of San Diego (Kinoshita's Declaration, however, states that he was working for MTPD at the time; there is no explanation for why his signature refers to Panasonic). The email attaches a monthly market report for the US TV Market for June of 2002.

The second document[6] is correspondence from a Peng Yu to Kinoshita and Kinoshita's response. Peng Yu appears to work in the "Oversees Marketing Dept." of Beijing Matsushita Color CRT, Co., Ltd. In Peng Yu's email/letter, Peng Yu states that Kinoshita should proceed with 4Q export sales according to the business plan, and should negotiate a price increase that goes "above the break-even point. If they won't accept it, please consider limiting supply." The response from Mr. Kinoshita refers to BMCC's export sales and discusses the pricing of CRT tubes, including "agreements" regarding price increases.

The third document[7] is Kinoshita's trip itinerary for February and March of 2003, which notes a "Meeting w/SDI" on March 10, 2003.

---

[5] Exhibit 9 to the Jorgensen Declaration.
[6] Exhibit 10 to the Jorgensen Declaration.
[7] Exhibit 11 to the Jorgensen Declaration.

The last document[8] contains an email to Kinoshita from a "Senior Manager" of the Marketing Team at Samsung SDI that reiterates a willingness to "exchange market views with Panasonic on a regular basis," and a response (or perhaps a forwarding email) from Kinoshita that refers to SDI presentation materials.

But Kinoshita did not work for BMCC during the time these documents were created. He did not work for BMCC until May of 2006. This evidence does not suggest BMCC was engaging in any activity in California.

*BMCC Exports to the US*

Plaintiff argues that BMCC placed goods into the "stream of commerce" with the expectation that they would be purchased by California consumers. Sending a substantial number of products directly to this state may well be enough under this theory:

> a manufacturer's placement of goods in the stream of commerce with the expectation that they will be purchased or used by consumers in California indicates an intention to serve the California market 'directly or indirectly' and constitutes purposeful availment if the income earned by the manufacturer from the sale or use of its product in California is substantial.[9]

Nevertheless, "mere foreseeability, at least where products are not sold in a state as part of the regular and anticipated flow of commerce into that state, is not enough to establish minimum contacts with the forum state."[10]

Plaintiff suggests there is evidence that some of BMCC's CRTs were imported to Long Beach.[11] Plaintiff's expert uses these papers to suppose that perhaps 160,275 CRTs

---

[8] Exhibit 12 to the Jorgensen Declaration.
[9] *Bridgestone Corp. v. Superior Court*, 99 Cal.App.4th 767, 777 (2002).
[10] *Bombardier Recreational Products, Inc. v. Dow Chem. Canada ULC*, 216 Cal. App. 4th 591, 598, 602 (2013).
[11] Jorgenson Decl. Ex. 5, pp. 423-24; Jorgenson Decl. Ex. 24, see pages MTPD-0261544 and MTPD-0259409.

- 4 -

manufactured by BMCC (worth approximately $10.7 million) were sold to Californians.[12] But BMCC's evidence shows that these items were actually shipped via Long Beach to Mexico;[13] there is no substantial evidence that BMCC foresaw that the items would actually end up in California—or indeed that they did. And the transportation was undertaken not by BMCC, but a different company, Diamond Electronics.[14] Even if we assume these items were destined after final manufacture and incorporation into television sets to be destined for California, this might suggest deliberate targeting of the state by Diamond- but not by BMCC.

I also reject the reasoning of the People's expert on this issue, William Comanor. He was faced with evidence that only showed sales to the United States.[15] To get California sales, he reasoned that more CRT TVs are bought by people with "higher" incomes (undefined) than those with "lower" incomes; then he compared the state's gross product with the nation's gross product to conclude that Californians account for 13.2% of US income. He then concludes that about that percentage of CRT were sold to Californians. There is no apparent link between the first set of assumptions regarding higher v. lower incomes, and the second set having to do with gross national product. There is no discussion of the possibility that people in different regions buy TVs at different rates; Comanor appears to assume that Americans buy what he calls "normal goods"[16] (not explained) at the same rate- perhaps so, but this is not explained. He in effect assumes that,

---

[12] Comanor Decl. at 5-7.
[13] BMCC provides an invoice for a sale from BMCC to Diamond Electronics dated June of 2004 (see Exhibit 1 to the Declaration of Richard Synder in Support of BMCC's Reply). The invoice states that the product will be shipped by sea to Tijuana Mexico via Long Beach. BMCC's assertion is supported by the last page of Exhibit 24 of the Jorgenson Declaration (page MTPD-0259409).
[14] Declaration of Richard Snyder in Support of BMCC's Reply, Ex.1
[15] Comanor Decl., op. cit.
[16] Id. at 6.

based on information that a product is sold in the United States, we can conclude that sales in a given state are about proportional to the state's share of the gross domestic product. I find that assumption wholly unsupported. While he may be right that *some* of these CRTs ultimately found their way to this state,[17] that doesn't' show a "substantial" volume[18] found their way here and isn't enough to support a finding of personal jurisdiction.[19]

The documents which point to a Mexican destination, coupled with what is little more than a guess from an expert, is insufficient to meet the People's burden.

*BMCC Participation in US CRT Price Fixing Conspiracy*

The People argue that because BMCC participated in the greater conspiracy, this court should exercise jurisdiction even if there were no direct sales to California. They cite *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013). The case discusses the due process implication of using California law to govern activities which took place in great part outside the state.[20] It does not discuss personal jurisdiction.

*BMCC Controlled and Owned by Companies Subject to Jurisdiction*

The People claim BMCC was controlled by entities that *are* subject to jurisdiction, and therefore BMCC too should be subject to personal jurisdiction.[21] But the record shows

---

[17] Id. at 8.
[18] See *Bridgestone Corp*, above n.9
[19] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296-97 (1980); see also *Bombardier Recreational Products*, above, n.10
[20] 707 F.3d at 1113.
[21] BMCC's parent, BOE Technology Group Co., Ltd., was a minority shareholder at the time of the conspiracy; Matsushita Toshiba Picture Display Co., Ltd (MTPD) held 50% of BMCC. The People claim that MTPD controlled the business operations of its subsidiaries, including BMCC, and that MTPD conferred with BMCC regarding its pricing. Jorgenson Decl., Ex. 3 (an organization chart showing BMCC under a line designated as "MTPD") and Ex. 4 (the series of emails between BMCC and MTPD personnel that discuss setting BMCC's

no more than close interactions, not that BMCC was completely controlled by these corporate parents.

Anyway, it doesn't matter. Even if Matsushita or MTPD controlled BMCC, that would not establish personal jurisdiction over BMCC. Principles of corporate liability are not rules for personal jurisdiction. While jurisdiction over a parent company *might* be established by proof that it controlled its subsidiary to engage in substantial contacts with California,[22] the reverse is not usually true: a state's power over a parent does not translate into power over all of its international subsidiaries. To be sure, one might imagine evidence that a subsidiary and parent are so intertwined that they are essentially a single entity such that all corporate demarcations ought to be ignored, perhaps on alter ego theory,[23] but the People do not present that evidence.

**Additional Discovery**

A court has discretion to continue the hearing challenging personal jurisdiction to allow plaintiff time to conduct jurisdictional discovery.[24] On their last page, the People seek that discovery. The People provide no description of what they want nor the theory under which the discovery might establish personal jurisdiction, nor any explanation of

---

export price). Additionally, the People state that personnel "moved fluidly" in and out of MTPD, BMCC and other Matsushita entities. The only evidence of this "fluidity" is the Declaration of Mr. Kinoshita, in which he states that he first worked for MTPD as the resident sales engineer for BMCC and later became part of the sales and marketing team for BMCC. Last, the People point out that in the federal antitrust litigation, Matsushita and Panasonic settled with the direct purchasers on behalf of both MTPD and BMCC, in a combined settlement, indicating that BMCC was controlled by Matsushita. Jorgenson Decl. Ex. 6.
[22] *Sonora Diamond Corp. v. Superior Court,* 83 Cal.App.4th 523, 541 (2000).
[23] *Ibid.*
[24] *Beckman v. Thompson,* 4 Cal.App.4th 481, 487 (1992).

what they might learn given the considerable access to evidentiary material they already enjoy and presumably have perused.[25] The request is denied.

**Conclusion**

The motion to quash is granted.

Dated: February 4, 2014

_____
Curtis E.A. Karnow
Judge Of The Superior Court

---

[25] This is summarized at BMC's Reply, at 10 lines 19 *et seq.*

- 8 -

**CERTIFICATE OF SERVICE**

I, Richard Snyder, declare that I am over the age of eighteen (18) and not a party to the within action.  I am Counsel with the law firm of Freshfields Bruckhaus Deringer US LLP, 701 Pennsylvania Avenue, NW, Suite 600, Washington, DC 20004.

On February 7, 2014, I caused a copy of the foregoing **DECLARATION OF RICHARD S. SNYDER IN SUPPORT OF BEIJING MATSUSHITA COLOR CRT CO., LTD.'S REQUEST FOR JUDICIAL NOTICE** to be electronically filed and served via the Official Court Electronic Document Filing System, which served copies on all parties registered for electronic filing.

Dated:  February 7, 2014

Freshfields Bruckhaus Deringer US LLP

By: /s/ Richard Snyder
Richard Snyder (*pro hac vice*)
Freshfields Bruckhaus Deringer US LLP
Email: rich.snyder@freshfields.com
701 Pennsylvania Avenue NW, Suite 600
Washington, DC  20004
Tel: (202) 777-4565
Fax: (202) 777-4555

*Counsel to Defendant Beijing Matsushita Color CRT Co., Ltd.*