Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo
1700 Lincoln Street
Denver, CO 80203
Telephone: +1-303-607-3500
Facsimile: +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Defendant Thomson SA*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | No. 07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Tech Data Corp., et al. v. Hitachi, Ltd., et al., No. 13-cv-00157* | **THOMSON SA'S NOTICE OF MOTION AND MOTION TO STRIKE WITH PREJUDICE TECH DATA'S FIRST AMENDED COMPLAINT**<br><br>Date: March 21, 2014<br>Time: 10:00 a.m.<br>Judge: Hon. Samuel Conti<br>[[Proposed] Order Filed Concurrently Herewith] |

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2         PLEASE TAKE NOTICE that on March 21, 2014 at 10:00 a.m. or as soon thereafter as this

3    matter may be heard before the Honorable Samuel P. Conti, U.S. District Court Judge, U.S. District

4    Court for the Northern District of California, Courtroom No. 1, 17th Floor, 450 Golden Gate

5    Avenue, San Francisco, California 94102, the moving Defendant listed on the signature pages

6    below will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 15(a), for

7    an Order striking with prejudice the claims alleged by Plaintiffs Tech Data Corporation and Tech

8    Data Product Management, Inc. ("Tech Data") against the moving Defendant in Tech Data's First

9    Amended Complaint.

         This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum

10   of Points and Authorities in support thereof, the pleadings and correspondence on file with the

11   Court, and such arguments and authorities as may be presented at or before the hearing.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

ISSUES TO BE DECIDED ................................................................................................... 1

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 4

I.     The Claims Against Thomson SA Should Be Stricken Because Fed. R. Civ. P. 15(a) Requires Tech Data to Obtain Leave of Court Before It May Amend Its Complaint to Add Claims Against Thomson SA. .................................................... 4

II.    Fed. R. Civ. P. 21 Requires Tech Data to Obtain Leave of Court Before It May Amend Its Complaint to Add Parties to This Action. .......................................... 4

III.   Even if the Court Does Not Strike the Unauthorized Claims Alleged in the FAC, Tech Data's Claims Against Thomson SA Should Be Dismissed for Lack of Personal Jurisdiction in Accordance With Fed. R. Civ. P. 12(b)(2). ..................... 5

       A.     The Court Does Not Have General Jurisdiction Over Thomson SA Because Thomson SA Did Not Have Continuous and Systematic General Business Contacts With the United States That Render It "At Home" in the Forum. ........................................................................................ 6

       B.     Thomson SA Is Not Subject to Specific Jurisdiction Because Tech Data Has Failed to Plead Any Facts That Plausibly Establish It Has Been Harmed by Activities Thomson SA Purposefully Directed at This Forum. ............................................................................................................ 9

              1.     Tech Data Has Failed to Plead Any Facts That Establish Thomson SA Purposefully Directed Activities Toward the United States. ........................... 9

              2.     Tech Data Has Failed to Plead Any Facts That Establish Thomson SA Was a But-For Cause of Any Antitrust Injury Tech Data Suffered in the United States. ................................................................................................ 10

              3.     The Exercise of Jurisdiction Over Thomson SA Would Not Be Reasonable. ........................................................................................................ 10

       C.     Tech Data Is Not Entitled to Jurisdictional Discovery .................................... 12

IV.    Tech Data's Claims Against Thomson SA Should Be Dismissed for Failure to State a Claim in Accordance With Fed. R. Civ. P. 12(b)(6). ................................. 13

       A.     Tech Data's Claims Should Be Dismissed Because They Are Barred by Laches. ........................................................................................................... 13

       B.     Tech Data's Claims Are Time-Barred and It Does Not Plead a Plausible Basis for Tolling the Statutes of Limitation. ................................... 15

              1.     Tech Data Has Failed to Plead Fraudulent Concealment. ............................... 15

2.    American Pipe Tolling Does Not Apply..........................................17

3.    Government Action Tolling Does Not Apply.............................................19

C.    Tech Data Fails to Plead Plausible Claims Against the Thomson Defendants. ................................................................................................19

D.    Tech Data's Claims Should Be Dismissed Because It Lacks Antitrust Standing. .................................................................................................21

CONCLUSION.................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ........................................................................ 21, 22

*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1996) ............................................................................... 21

*Asahi Metal Ind. Co. v. Superior Court*,
480 U.S. 102 (1987) .............................................................................................. 12

*Ashley v. Boyle's Famous Corned Beef Co.*,
66 F.3d 164 (8th Cir. 1995) .................................................................................. 13

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983) .............................................................................................. 21

*Atchison, Topeka & Santa Fe Ry. v. Hercules Inc.*,
146 F.3d 1071 (9th Cir.1998) ............................................................................... 23

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
223 F.3d 1082 (9th Cir. 2000) ................................................................. 6, 9, 10, 11

*Barker v. Am Mobil Power Corp.*,
64 F.3d 1397 (9th Cir. 1995) ............................................................................... 16

*Bauman v. DaimlerChrysler Corp.*,
644 F.3d 909 (9th Cir. 2011) ............................................................................... 7, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................. 20

*Bhan v. NME Hosps., Inc.*,
772 F.2d 1467 (9th Cir. 1985) ............................................................................. 21

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .............................................................................................. 11

*Cada v. Baxter Healthcare Corp.*,
920 F.2d 447 (7th Cir. 1991) ............................................................................... 13

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ................................................................................................ 23

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ............................................................................. 18

*Conerly v. Westinghouse Elec. Corp.*,
 623 F.2d 117 (9th Cir. 1980) ............................................................................... 17

*Conmar Corp. v. Mitsui & Co. (USA) Inc.*,
 858 F.2d 499 (9th Cir. 1988) ......................................................................... 16, 17

*Crown, Cork & Seal Co., Inc. v. Parker*,
 462 U.S. 345 (1983) ............................................................................................ 17

*Daimler AG v. Bauman*,
 134 S. Ct. 746 (2014) ..................................................................... 3, 4, 6, 7, 12

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
 284 F.3d 1114 (9th Cir. 2002) ........................................................................ 9, 12

*Goodyear Dunlop Tires Operations v. Brown*,
 131 S. Ct. 2846 (2011) ......................................................................................... 6

*In re ATM Fee Antirust Litig.*,
 686 F.3d 741 (9th Cir. 2012) .............................................................................. 22

*In re Cal. Title. Ins. Antitrust Litig.*,
 No. C 08-01341, 2009 WL 1458025 (N.D. Cal. May 21, 2009)......................... 20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 738 F. Supp. 2d 1011 (N.D. Cal. 2010) .............................................................. 20

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
 516 F. Supp. 2d 1072 (N.D. Cal. 2007)............................................................... 21

*In re High Fructose Corn Syrup Antitrust Litig.*,
 293 F. Supp. 2d 854 (N.D. Ill. 2003)................................................................... 15

*In re Optical Disk Drive Antitrust Litig.*,
 No. 3:10-md-2143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) ...................... 22

*In re Perrier Bottled Water Litig.*,
 138 F.R.D. 348 (D. Conn. 1991) .................................................................... 11, 12

*In re Processed Egg Products Antitrust Litig.*,
 2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013) ................................. 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
 586 F. Supp. 2d 1109 (N.D. Cal. 2008).......................................................... 9, 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
 No. 07-md-1827, MDL Dkt. No. 4867 at 3 (N.D. Cal. Feb. 23, 2012).............. 15

*In re TFT-LCD Antitrust Litig.*,
 No. M 07-1827 SI, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) ..................... 22

*In re Urethane Antitrust Litig.*,
  663 F. Supp. 2d 1067 (D. Kan. 2009) ............................................................ 16, 17

*In re Vitamins Antitrust Litig.*,
  No. MISC. 99-197(TFH), MDL 1285, 2000 WL 33975412 (D.D.C. Oct. 26, 2000)............. 19

*Int'l Shoe Co.* v. *Washington*,
  326 U.S. 310 (1945) ...................................................................................... 6, 7

*Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*,
  518 F.2d 913 (9th Cir. 1975) .......................................................................... 13

*Jackson v. Axton*,
  25 F.3d 884 (9th Cir. 1994) ........................................................................ 13, 14

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ...................................................................... 13, 14

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ............................................................. 20, 22, 23

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
  628 F.2d 1175 (9th Cir. 1980) ........................................................................ 9

*Linder Dividend Fund, Inc. v. Ernst & Young*,
  880 F. Supp. 49 (D. Mass. 1995)..................................................................... 17

*Madison v. IBP, Inc.*,
  330 F.3d 1051 (8th Cir. 2003) ....................................................................... 13

*McCune v. Alioto Fish Company*,
  597 F.2d 1244 (9th Cir. 1979) ................................................................... 14, 15

*Menken* v. *Emm*,
  503 F.3d 1050 (9th Cir. 2007) ....................................................................... 11

*Milliken* v. *Meyer*,
  311 U.S. 457 (1940) ...................................................................................... 6

*Metz v. Unizan Bank*,
  416 F. Supp. 2d 568 (N.D. Ohio 2006) ............................................................ 16

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
  198 F.3d 823 (11th Cir. 1999) ....................................................................... 15

*Nashville Milk Co. v. Carnation Co.*,
  355 U.S. 373 (1958).................................................................................... 19

*Pool Water Prods. v. Olin Corp.*,
  258 F.3d 1024 (9th Cir. 2001) ....................................................................... 19

*Raie v. Chimenova*,
    336 F.3d 1278 (11th Cir. 2003) ................................................................... 18

*Sapiro v. Encompass Ins.*,
    221 F.R.D. 513 (N.D. Cal. 2004) ................................................................... 4

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ........................................................... 4, 6, 8, 10

*Sinatra* v. *Nat'l Enquirer, Inc.*,
    854 F.2d 1191 (9th Cir. 1988) ..................................................................... 12

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
    782 F. Supp. 2d 1059 (E.D. Cal. 2011) ....................................................... 22

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ....................................................................... 16

*Taa v. Chase Home Finance LLC*,
    11-cv-0554, 2011 WL 4985379 (N.D. Cal. Oct. 19, 2011) ..................... 4, 24

*Terracom* v. *Valley Nat'l Bank*,
    49 F.3d 555 (9th Cir. 1995) ................................................................... 11, 12

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163 (9th Cir. 2006) ....................................................................... 6

*Vaughn v. Teledyne, Inc.*,
    628 F.2d 1214 (9th Cir. 1980) ..................................................................... 15

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010) ....................................................................... 15

*Williams v. Boeing Co.*,
    517 F.3d 1120 (9th Cir. 2008) ..................................................................... 18

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) ....................................................................... 9

STATE CASES

*Fla. Dep't of Health & Rehab. Servs. v. S.A.P.*,
    835 So. 2d 1091 (Fla. 2003) ......................................................................... 18

*HCA Health Servs. of Fla., Inc. v. Hillman*,
    906 So. 2d 1094 (Fla. Dist. Ct. App. 2004) ........................................... 18, 19

*Hromyak v. Tyco Int'l Ltd.*,
    942 So. 2d 1022 (Fla. Dist. Ct. App. 2006) ................................................. 18

*Jolly v. Eli Lilly & Co*,
    751 P.2d 923 (Cal. 1988) .............................................................................. 18

**FEDERAL STATUTES**

15 U.S.C. § 12 .................................................................................................... 19

15 U.S.C. § 16(i) ................................................................................................. 19

**STATE STATUTES**

Florida Statute § 95.051(1) ........................................................................... 18, 19

**RULES**

Fed. R. Civ. P. 9(b) ...................................................................................... 15, 17

Fed. R. Civ. P. 12(b)(2) ................................................................................. 1, 2, 5

Fed. R. Civ. P. 12(b)(6) ......................................................................... 1, 2, 13, 15

Fed. R. Civ. P. 15(a) ............................................................................................. 4

Fed. R. Civ. P. 15(a)(1) ........................................................................... 1, 4, 5, 23

Fed. R. Civ. P. 21 .................................................................................... 1, 4, 5, 23

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Federal Rules of Civil Procedure 15(a)(1) and 21, Defendant Thomson SA respectfully moves to strike with prejudice the claims asserted against it by Tech Data in the First Amended Complaint ("FAC") because Tech Data failed to obtain leave of Court to join Thomson SA as a party and add claims against it before filing the FAC and granting Tech Data such leave would cause Thomson SA undue prejudice.  In the alternative, Thomson SA moves to dismiss the FAC in accordance with Fed. R. Civ. P. 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.

**ISSUES TO BE DECIDED**

1.      Whether the claims against Thomson SA alleged by Tech Data in its FAC should be stricken because, under Fed. R. Civ. P. 15(a)(1), Tech Data was required to obtain leave of court before it could add Thomson SA as a party and assert claims against it?

2.      Whether the claims against Thomson SA alleged by Tech Data in its FAC should be stricken because, under Fed. R. Civ. P. 21, Tech Data was required to obtain leave of court before it could join Thomson SA as a party and add claims against it?

3.      Whether, in light of the Court's September 26, 2013 Order denying the DAPs' Motion for Leave to Amend because such relief would cause Thomson SA undue prejudice, the claims asserted against Thomson SA in Tech Data's FAC should be stricken with prejudice?

4.      Whether, in the event the Court is not inclined to strike the claims against Thomson SA in Tech Data's FAC, those claims should be dismissed in accordance with Fed. R. Civ. P. 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a claim upon which relief can be granted?

**INTRODUCTION**

Almost six years after these proceedings began, Tech Data has filed, without seeking leave of court, an amended complaint that attempts to join Thomson SA as a party.  As explained in Thomson Consumer Electronics, Inc.'s ("Thomson Consumer's") previously filed Motion to Strike Tech Data's FAC [Dkt. No. 2329], Tech Data's failure to seek leave of court before filing its FAC violates Federal Rules of Civil Procedure 15(a)(1) and 21.  Moreover, Tech Data's undue delay in

1   attempting to bring Thomson Consumer and Thomson SA (collectively the "Thomson Defendants")

2   into this litigation has put them at an unfair, prejudicial disadvantage.  Accordingly, like Thomson

3   Consumer, Thomson SA respectfully requests that the Court strike with prejudice the unauthorized

4   allegations and claims asserted by Tech Data against Thomson SA in the FAC.

5        In the alternative, in accordance with Rules 12(b)(2) and 12(b)(6), the Court should dismiss

6   the claims against Thomson SA alleged in the FAC because:  (1) Thomson SA is not subject to the

7   personal jurisdiction of this Court; (2) Tech Data fails to plead plausible claims against Thomson

8   SA; (3) Tech Data's claims are time-barred; (4) Tech Data has failed to plead facts that establish it

9   is entitled to toll the statutes of limitation and its reliance on any tolling doctrines is barred by

10  laches; and (5) Tech Data lacks standing to pursue its indirect-purchaser claims because it has failed

11  to plead facts that establish it qualifies for the "ownership or control" exception to *Illinois Brick*.

## BACKGROUND

13       The procedural history regarding Tech Data's unauthorized FAC is described in Thomson

14  Consumer's Motion to Strike.  (*See* [Dkt. No. 2329] at 2-5.)  To avoid unnecessary repetition,

15  Thomson SA incorporates that history by reference as if set forth fully herein.  (*Id.*)

16       At all times relevant to Tech Data's claims, Thomson SA was a holding company

17  headquartered and incorporated in France.  As it stated in a 13D filing it made with the Securities

18  and Exchange Commission ("SEC") on February 7, 2000, "Thomson SA principally acts as a

19  holding company for the French government.  All of the outstanding shares of Thomson SA are

20  owned by the French government."  (Feb. 7, 2000 13D Filing at 4, attached as **Ex. 1**.)  Although the

21  French government has since sold its shares, during all relevant periods, Thomson SA remained a

22  French holding company.  (*See* 2009 Declaration of Frederic Rose at ¶ 3, **Ex. 2** ("Thomson is the

23  holding company for a group of approximately 200 direct and indirect subsidiaries in approximately

24  30 countries.  Thomson's principal office is located at 1-5, rue Jeanne d' Arc, 92130 Issy-les-

25  Moulineaux, France.")); (Cadieux Decl. at ¶ 5, attached as **Ex. 3**.)

26       It also is uncontroverted that, at all relevant times, Thomson SA did not manufacture CRTs.

27  "Thomson SA has never manufactured cathode ray tubes ("CRTs") or finished products containing

28  CRTs in the United States or elsewhere."  (*Id.* at ¶ 14.)  In addition, "Thomson SA has never

1   marketed, sold, or distributed CRTs or finished products containing CRTs in the United States or

2   elsewhere." (*Id.* at ¶ 15.) Instead, because it is and was merely a holding company, Thomson SA's

3   "principal assets are the stock of its subsidiaries." (**Ex. 2** at ¶ 4.) Thomson SA performed the

4   activities of a traditional holding company − it "principally perform[ed] corporate activities (such as

5   finance, communications, legal, human resources)" and obtained "external financing" and

6   "advance[d] the funds obtained to its subsidiaries through loans and current account contracts."

7   (Thomson Group 2008 Form 20-F, **Ex. 4** at 152.)

8       Thomson SA did not control the day-to-day activities or involve itself in the management of

9   its United States subsidiary, Thomson Consumer. (**Ex. 3** at ¶ 21.) Instead, "Thomson [Consumer]

10  control[ed] its day-to-day activities," maintained "separate" finances, and was "responsible for the

11  sales and marketing of products in the United States." (Sept. 28, 2005 Declaration of Thomson

12  Consumer President Michael O'Hara at ¶¶ 5-7, **Ex. 5** (attached to Thomson SA's Reply in Support

13  of Mot. to Dismiss, A*udio MPEG, Inc. v. Thomson Inc., et al.*, Case No. 1:05 cv 565 (E.D. Va.)).)

14  "Thomson SA d[id] not direct or advise Thomson [Consumer] on how to sell or distribute any

15  Thomson [Consumer] product in the United States." (Sept. 2, 2005 Declaration of Thomson SA

16  General Secretary Marie-Agne Debon at ¶ 6, **Ex. 6** (attached to Thomson SA's Mot. to Dismiss,

17  *Audio MPEG, Inc. v. Thomson Inc., et al.*, Case No. 1:05 cv 565 (E.D. Va.)).)[1]  Moreover,

18  "Thomson SA and Thomson [Consumer] maintain[ed] separate corporate structures, including

19  separate boards, separate management, . . . separate employees," and separate finances. (*Id.* at ¶¶ 4-

20  5.)

21      In other words, Thomson SA was a traditional holding company organized to hold the stock

22  of its subsidiaries. Other than its ownership of a United States subsidiary, Thomson SA had

23  virtually no direct contacts with the United States and certainly did not have affiliations with the

24  United States that were "so continuous and systematic as to render it essentially at home in the

25  forum State." *Daimler AG v. Bauman*, No. 11-965 (Jan. 14, 2014), Slip Opinion at 20 (rejecting

26  Ninth Circuit's agency theory of general jurisdiction). Further, Thomson SA did not expressly aim

27  _____

28  [1] Both the O'Hara and Debon Declarations were executed in September 2005 and thus were created
during time periods contemporaneous with the alleged conspiracy that is the subject of the Tech
Data's FAC.

1   acts at the United States that were a but-for cause of Tech Data's alleged antitrust injuries.

2   Accordingly, consistent with fundamental principles of due process, it is not subject to the general

3   or specific jurisdiction of this Court.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014);

4   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806-7 (9th Cir. 2004).

5   **ARGUMENT**

6   **I.      The Claims Against Thomson SA Should Be Stricken Because Fed. R. Civ. P. 15(a)**
         **Requires Tech Data to Obtain Leave of Court Before It May Amend Its Complaint to**
7        **Add Claims Against Thomson SA.**

8              For the same reasons set forth in Thomson Consumer's Motion to Strike, in accord with the

9   plain terms of Rule 15(a)(1), Tech Data was not entitled to file the FAC against Thomson SA on

10  September 9, 2013.  (*See* [Dkt. No. 2329] at 5-7, incorporated by reference as if set forth fully

11  herein.)  Instead, before it may attempt to amend its Original Complaint to join Thomson SA to this

12  action, Tech Data must first obtain leave of court.  Because Tech Data did not obtain leave of court

13  before filing its FAC, Tech Data violated Rule 15(a)(1), and the Court should strike the allegations

14  and claims against Thomson SA contained in the FAC.  *Sapiro v. Encompass Ins.*, 221 F.R.D. 513,

15  517 (N.D. Cal. 2004); *Taa v. Chase Home Finance LLC,* 11-cv-0554, 2011 WL 4985379, at *5

16  (N.D. Cal. Oct. 19, 2011) (striking allegations in amended complaints filed in violation of Rule 15

17  without leave of court).

18  **II.     Fed. R. Civ. P. 21 Requires Tech Data to Obtain Leave of Court Before It May Amend**
         **Its Complaint to Add Parties to This Action.**
19

20             Even if Tech Data had filed the FAC within the time periods for amending as of course

21  specified in Rule 15(a) – it did not – under Fed. R. Civ. P. 21, Tech Data would still have been

22  required to obtain leave of court before it could add Thomson SA as a new party.  (*See* [Dkt. No.

23  2329] at 7-10, incorporated by reference as if set forth fully herein.)   As the Court found in its

24  September 26, 2013 Order denying the DAPs' Motion to Amend and as described in Thomson

25  Consumer's Motion to Strike (*id.* at 8-10), the Thomson Defendants would be substantially

26  prejudiced if they were forced to join this action nearly six years after it commenced and four years

27  after discovery began.  (*See* Sept. 26, 2013 Order at 5-6.)  Tech Data's attempt to add Thomson SA

28  to this action would cause Thomson SA to suffer severe prejudice.  And just like the other DAPs,

1    there is no excuse for Tech Data's failure to attempt to add the Thomson Defendants until

2    September 9, 2013 – Tech Data "had ample time to add Thomson to their complaint without delay

3    or prejudice, but they did not." (*Id*. at 5.)  Accordingly, for the same reasons stated in Thomson

4    Consumer's Motion to Strike, even if Tech Data had filed its amended complaint within the time

5    period set forth in Rule 15(a)(1), the Court should find that, under Rule 21, Tech Data was required

6    to obtain leave of court before it could amend its complaint to join additional parties.

7         Moreover, any attempt by Tech Data to now file a motion seeking leave to file an amended

8    complaint that adds claims against Thomson SA would fail for the same reasons that this Court

9    found the DAPs' Motion to Amend failed.  As the Court explained, "[d]iscovery in this case has

10   proceeded apace," and requiring the Thomson Defendants to enter the litigation now would put

11   them at an unfair, prejudicial disadvantage. (*Id*. at 5.)  Indeed, because any Tech Data motion for

12   leave to amend would be filed nearly a year later than the DAPs' Motion to Amend was filed, it

13   would be even more inexcusably late and granting Tech Data leave to amend would cause Thomson

14   SA to suffer even greater prejudice.  In short, because the Court has already determined that the

15   Thomson Defendants would be severely prejudiced by attempts to add them to this litigation, it is

16   unnecessary for the Court to entertain an even more tardy motion for leave to amend from Tech

17   Data now.  Thomson SA respectfully requests that the Court enter an Order striking the allegations

18   in the FAC against Thomson SA with prejudice.

19   **III.    Even if the Court Does Not Strike the Unauthorized Claims Alleged in the FAC, Tech
            Data's Claims Against Thomson SA Should Be Dismissed for Lack of Personal
20          Jurisdiction in Accordance With Fed. R. Civ. P. 12(b)(2).**

21        Not only are Tech Data's claims against Thomson SA in the FAC unauthorized and

22   inexcusably late, but Tech Data also fails to plead facts establishing that Thomson SA is subject to

23   the personal jurisdiction of this Court.  Thus, if the Court is not inclined to strike the claims against

24   Thomson SA in the FAC, it should dismiss them for lack of personal jurisdiction in accordance with

25   Fed. R. Civ. P. 12(b)(2).

26        The Court can exercise personal jurisdiction over a non-resident defendant like Thomson SA

27   only where doing so is consistent with the Due Process Clause, which requires that the defendant

28   have minimum contacts with the forum such that "the maintenance of the suit does not offend

1    'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S.

2    310, 316 (1945) (quoting *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940)).In order to satisfy the Due

3    Process Clause, Tech Data must demonstrate that either:  (a) Thomson SA has had such substantial

4    contacts with the United States that it is effectively "at home" and therefore subject to general

5    jurisdiction here; or (b) Thomson SA has had a sufficient connection to the alleged misconduct

6    through acts *in* or *purposefully directed at* the forum to establish specific jurisdiction for the

7    purposes of this litigation.  *See Bauman*, 134 S. Ct. at 760-61; *Bancroft & Masters, Inc.* v. *Augusta

8    Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  Tech Data's FAC does not plead facts that

9    demonstrate either, so Tech Data's claims against Thomson SA should be dismissed.

10       A.    **The Court Does Not Have General Jurisdiction Over Thomson SA Because
             Thomson SA Did Not Have Continuous and Systematic General Business
11            Contacts With the United States That Render It "At Home" in the Forum.**

12       General jurisdiction exists over foreign corporations like Thomson SA only when their

13    "affiliations with the State are so 'continuous and systematic' as to render them essentially at home

14    in the forum State."  *Bauman*, 134 S. Ct. at 761 (quoting *Goodyear Dunlop Tires Operations v.

15    Brown*, 131 S. Ct. 2846, 2851 (2011)); *see also Schwarzenegger*, 374 F.3d at 801 (requiring that

16    foreign corporation "engage in continuous and systematic general business contacts that

17    approximate physical presence in the forum state." (internal quotations and citations omitted)).  In

18    other words, the plaintiff must show that the defendant's "continuous corporate operations within

19    [the] state are . . . so substantial and of such a nature as to justify suit against the defendant on

20    causes of action arising from dealings entirely distinct from those activities."  *Tuazon v. R.J.

21    Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006).  "This is an exacting standard, as it

22    should be, because a finding of general jurisdiction permits a defendant to be haled into court in the

23    forum state to answer for any of its activities anywhere in the world."  *Schwarzenegger*, 374 F.3d at

24    801.

25       Tech Data's FAC should be dismissed because it does not allege that Thomson SA had *any*

26    meaningful contacts with the United States, let alone allege substantial, continuous, and systematic

27    contacts that approximated physical presence or rendered Thomson SA "at home" in this forum.

28    Thomson SA is a French corporation headquartered in France that:  (1) has no operations; (2) has no

---

THOMSON SA'S NOTICE OF MOTION AND          6          No. 07-5944-SC; MDL No. 1917
MOTION TO STRIKE WITH PREJUDICE TECH
DATA'S FIRST AMENDED COMPLAINT

1    employees; (3) has no bank accounts; (4) has no mailing address; (5) does not own, lease, or rent

2    real property; and (6) is not registered to do business in the United States.  (*See* Cadieux Decl. at ¶¶

3    6-11, 13.)  Tech Data does not plead otherwise.  In addition, the 2005 Declarations from Mr.

4    O'Hara and Ms. Debon confirm that Thomson SA did not control Thomson Consumer's operations

5    during the relevant time period, so its contacts may not be imputed to Thomson SA.  (*See* **Exs. 5, 6**.)

6    Given these facts, Tech Data cannot demonstrate that this Court's exercise of general jurisdiction

7    over Thomson SA would comport with "traditional notions of fair play and substantial justice."

8    *Int'l Shoe*, 326 U.S. at 316.

9           And, as the Supreme Court recently held in *Daimler AG v. Bauman*, regardless of the nature

10   of a foreign corporation's relationship with its United States subsidiary, a court may not exercise

11   general jurisdiction over the foreign corporation unless the foreign corporation itself has such direct

12   affiliations with the forum that it is "essentially at home in the forum State."  *Bauman*, 134 S. Ct. at

13   761.  In reaching this holding, the Supreme Court expressly overruled the Ninth Circuit's agency

14   theory of general jurisdiction, set forth in *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909 (9th Cir.

15   2011), which provided that in certain circumstances, general jurisdiction may be established over a

16   foreign corporation by imputing the contacts of the foreign corporation's United States subsidiary to

17   it.  The Supreme Court explained that the "Ninth Circuit's agency analysis derived from Circuit

18   precedent considering principally whether the subsidiary performs services that are sufficiently

19   important to the foreign corporation that if it did not have a representative perform them, the

20   corporation's own officials would undertake to perform substantially similar services."  *Id.* at 759

21   (internal quotations omitted).  The Supreme Court forcefully rejected the Ninth Circuit's agency

22   theory of general jurisdiction:

23            Formulated this way, the inquiry into importance stacks the deck, for it will always
              yield a pro-jurisdiction answer:  Anything a corporation does through an independent
24            contractor, subsidiary, or distributor is presumably something the corporation would
              do by other means if the independent contractor, subsidiary, or distributor did not
25            exist.  The Ninth Circuit's agency theory thus appears to subject foreign corporations
              to general jurisdiction whenever they have an in-state subsidiary or affiliate, an
26            outcome that would sweep beyond even the sprawling view of general jurisdiction we
              rejected in *Goodyear*.
27

28   *Id.* at 759-60 (internal citations and quotations omitted).

The Court then emphasized that its precedent makes clear "that only a limited set of affiliations with a forum will render a defendant amendable to all-purpose [general] jurisdiction there.  For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for *a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home*." (emphasis added).  *Id.* at 760.  For a corporation, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction.  Those affiliations have the virtue of being unique – that is, each ordinarily indicates only one place – as well as easily ascertainable." *Id.* (internal citations and quotations omitted).  While the Court stated that it was not holding that a corporation may only be subject to general jurisdiction in the forum where it is incorporated or has its principal place of business, it emphasized that "those places [are] paradigm all-purpose forums." *Id.*  Therefore, using these "exemplar bases" as a guide, the proper inquiry "is whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Id.* at 760-61.

*Bauman* unequivocally dictates that Tech Data does not have a viable argument that Thomson SA is subject to general jurisdiction in the United States.  Even assuming *arguendo* that Thomson Consumer's contacts with the United States were imputable to Thomson SA based on some sort of agency relationship – a conclusion Thomson SA vigorously denies – general jurisdiction would still be lacking under *Bauman* because Thomson SA itself has not had any direct contacts with this forum that render it "at home" in United States.  *Id.* at 761.  Thomson SA has never been incorporated or headquartered in the United States – its principal place of business has always been in France.  Furthermore, Tech Data pleads *no facts* in its FAC which plausibly suggest that Thomson SA has ever possessed any other type of continuous and systematic affiliations with the United States that would render it at home here.  Accordingly, because Thomson SA has never had the type of continuous and systematic general contacts with this forum "that approximate physical presence" or render it "at home" in this forum, Thomson SA is not subject to the general jurisdiction of this Court. *Id.*; *Schwarzenegger*, 374 F.3d at 801.

**B.      Thomson SA Is Not Subject to Specific Jurisdiction Because Tech Data Has Failed to Plead Any Facts That Plausibly Establish It Has Been Harmed by Activities Thomson SA Purposefully Directed at This Forum.**

Tech Data also fails to allege facts sufficient to support this Court's exercise of specific jurisdiction over Thomson SA.  Specific jurisdiction exists when the "cause of action arises out of or has a substantial connection to the defendant's contacts with the forum."  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co*., 284 F.3d 1114, 1124 (9th Cir. 2002).  To establish specific jurisdiction over Thomson SA, Tech Data must show that:  (1) Thomson SA purposefully directed its activities at this forum; (2) Tech Data's claims against it arise out of or result from Thomson SA's forum related activities; and (3) the exercise of jurisdiction is reasonable.  *See Bancroft & Masters*, 223 F.3d at 1086-7.  Tech Data has not, and cannot, satisfy these elements.

**1.      Tech Data Has Failed to Plead Any Facts That Establish Thomson SA Purposefully Directed Activities Toward the United States.**

Purposeful direction is evaluated using the three-part "*Calder*-effects" test under which the plaintiff must show:  (1) the defendant committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm the defendant knows is likely to be suffered in the forum state. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).  The Ninth Circuit has warned that "the foreign-acts-with-forum-effects jurisdictional principle 'must be applied with caution, particularly in an international context.'"  *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1178 (9th Cir. 1980).

Here, Tech Data has failed to allege specific facts in its FAC that establish Thomson SA took any relevant intentional acts expressly aimed at the United States.  Tech Data's 64-page FAC contains only a single paragraph regarding the Thomson Defendants' alleged participation in the conspiracy.  In it, Tech Data merely alleges that a combined "Thomson" entity – it does not identify any particular Thomson company – "participated in dozens of meetings with its competitors, including Glass Meetings and multiple bilateral meetings."  (FAC at ¶ 159); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (holding "general allegations as to all defendants" or "to a single corporate entity such as 'Hitachi'" insufficient as a matter of law).

As this Court has previously held, at this stage in the proceedings, "[s]o many years after this MDL's inception, Plaintiffs should be able to provide something more than boilerplate allegations about alleged conspirators." (Sept. 26, 2013 Order [Dkt. No. 1960] at 5.)  Tech Data's FAC, however, pleads no facts that plausibly suggest Thomson SA participated in the alleged global conspiracy, let alone that Thomson SA engaged in wrongful conduct directed at causing Tech Data harm in the United States.  *Bancroft & Masters, Inc.,* 223 F.3d at 1088.  Tech Data has not and cannot show that Thomson SA engaged in anticompetitive activity individually targeted at Tech Data in the United States because Thomson SA has never manufactured or sold CRTs or conducted any CRT business in the United States and did not set prices for CRTs or CRT Products sold by Thomson Consumer in the United States.  (Cadieux Decl. at ¶¶ 14-15, 2; Debon Decl. at ¶ 6 ("Thomson SA does not direct or advise Thomson Inc. on how to sell or distribute any Thomson Inc. product in the United States").)  Simply stated, Tech Data has failed to plead specific facts establishing a prima facie case that Thomson SA took intentional acts expressly aimed at causing Tech Data harm in the United States.  Accordingly, Thomson SA is not subject to the specific jurisdiction of this Court, and Tech Data's claims against it should be dismissed.

> **2.      Tech Data Has Failed to Plead Any Facts That Establish Thomson SA Was a But-For Cause of Any Antitrust Injury Tech Data Suffered in the United States.**

Having failed to plead any facts that establish Thomson SA purposefully directed any activities related to Tech Data's claims at it in this forum, Tech Data necessarily fails to establish that Thomson SA was a but-for cause of any antitrust injury Tech Data allegedly suffered in the United States.  *See Schwarzenegger*, 374 F.3d at 807 n. 1 (finding that, where plaintiff fails to plead facts establishing defendant purposefully directed activities at plaintiff in the forum, it is unnecessary to evaluate other factors of Ninth Circuit's specific jurisdiction test).  Accordingly, the Court lacks specific jurisdiction over Thomson SA.

> **3.      The Exercise of Jurisdiction Over Thomson SA Would Not Be Reasonable.**

Because Tech Data has failed to satisfy either of the first two requirements of specific jurisdiction, it is not necessary to evaluate whether this Court's exercise of jurisdiction over

Thomson SA would be reasonable.  But, even if Tech Data had pleaded facts that satisfied these elements, Thomson SA would not be subject to specific jurisdiction because the exercise of jurisdiction over Thomson SA would not be reasonable.  Courts consider seven factors to evaluate reasonableness:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

*Bancroft & Masters*, 223 F.3d at 1088 (citing *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 476-77 (1985)).

The burden imposed on Thomson SA is the most important factor.  *Terracom* v. *Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995) ("[T]he law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden."); *see also Menken* v. *Emm*, 503 F.3d 1050, 1061 (9th Cir. 2007) ("[I]n this circuit, the plaintiff's convenience is not of paramount importance.") (citation omitted).  Litigating this complex case in the United States would impose a significant burden on Thomson SA.  To the extent evidence still exists concerning the CRT business that Thomson SA sold eight years ago, most, if not all, such documents are located in France; the same is true for any personnel who might have knowledge concerning the CRT business.  Not only would obtaining relevant information located in France be costly and burdensome, it would also potentially subject Thomson SA to criminal sanctions under the French "blocking statute," which prohibits the communication or disclosure of documents or information of an economic, commercial, industrial, financial, or technical nature for use as evidence in foreign judicial proceedings.  *See In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 356 (D. Conn. 1991)

1   (discussing effect of "blocking statute" and requiring plaintiffs to comply with procedures under the

2   Hague Convention in pursuing any discovery from defendant).[2]

3        The exercise of personal jurisdiction over Thomson SA would also be unreasonable

4   because:  (1) Thomson SA has not purposefully interjected its activities into the United States; (2)

5   until 1999, all stock in Thomson SA was owned by the French government so Tech Data's claims

6   against it raise substantial sovereignty concerns; and (3) exercising jurisdiction over Thomson SA in

7   the United States would be inefficient and would not further Tech Data's interest in convenient and

8   effective relief because Thomson Consumer is the entity in the Thomson group of companies that

9   manufactured and/or sold CRTs in the United States and it has not contested this Court's

10  jurisdiction over it.  Thus, even if Tech Data had established a sufficient connection between

11  Thomson SA's forum-related activities and Tech Data's claims in this case − it has not − this

12  Court's exercise of jurisdiction over Thomson SA would not be reasonable.  *See Terracom v. Valley*

13  *Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).  Because Thomson SA is not subject to personal

14  jurisdiction in this forum, Tech Data's claims against it should be dismissed.

15       **C.**     **Tech Data Is Not Entitled to Jurisdictional Discovery.**

16       "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based

17  on bare allegations in the face of specific denials made by the defendants, the Court need not permit

18  even limited discovery." (*Id.*)  In light of the Supreme Court's decision in *Bauman*, Tech Data has

19  no tenable argument that Thomson SA is subject to the Court's general jurisdiction, so there is no

20  reason that Tech Data should be permitted to conduct discovery on this topic.  With respect to Tech

21  Data's theory of specific jurisdiction, despite the fact that it has had access to the voluminous

22  discovery record compiled during the last four years, including extensive document productions

23

24  [2]  For the same reason, the exercise of personal jurisdiction over Thomson SA would raise
substantial concerns regarding French sovereignty.  *See*, *e.g.*, *Sinatra* v. *Nat'l Enquirer, Inc.*, 854

25  F.2d 1191, 1199-1200 (9th Cir. 1988); *see also Asahi Metal Ind. Co. v. Superior Court*, 480 U.S.
102, 115 (1987) (recommending a "careful inquiry into the reasonableness of the assertion of

26  jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien
defendant outweighed by minimal interests on the part of the plaintiff or the forum State");

27  *Glencore*, 284 F.3d at 1125 (holding that burden on foreign defendant with no minimum contacts
and having witnesses and evidence abroad would be great and that where "the defendant is from a

28  foreign nation rather than another state, the sovereignty barrier is high and undermines the
reasonableness of personal jurisdiction" (citation omitted)).

1    from Thomson SA's alleged co-conspirators, Tech Data does not plead *any* specific facts that

2    controvert Thomson SA's declarations showing that it did not set the price of CRTs or CRT

3    Products sold in the United States.  Given that Tech Data's bare allegations fall well-short of

4    establishing specific personal jurisdiction, there is simply no reasonable basis to believe that it will

5    obtain evidence that justifies the costs and burdens that allowing it to conduct additional far ranging

6    jurisdictional discovery now will impose on Thomson SA.  Accordingly, Thomson SA respectfully

7    requests that the Court deny Tech Data jurisdictional discovery.

8    **IV.**    **Tech Data's Claims Against Thomson SA Should Be Dismissed for Failure to State a Claim in Accordance With Fed. R. Civ. P. 12(b)(6).**

9

10         Not only does this Court lack personal jurisdiction over Thomson SA, but Tech Data also

11    fails to plead viable claims against Thomson SA.  Therefore, the FAC should be dismissed for

12    failure to state a claim in accordance with Rule 12(b)(6).

13         **A.**    **Tech Data's Claims Should Be Dismissed Because They Are Barred by Laches.**

14         Where, as here, a plaintiff's antitrust claims are only timely if the statutes of limitation are

15    tolled, the plaintiff's reliance on tolling may be barred by laches.  *See Cada v. Baxter Healthcare*

16    *Corp.*, 920 F.2d 447, 453 (7th Cir. 1991) (rejecting tolling where plaintiff failed to file suit within a

17    reasonable time); *Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 170 (8th Cir. 1995) (en

18    banc), *abrogation on other grounds recognized in Madison v. IBP, Inc.,* 330 F.3d 1051, 1056 (8th

19    Cir. 2003); *see also Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elec. Corp.*, 518 F.2d 913, 926-27 (9th

20    Cir. 1975) (holding that plaintiff's ability to obtain equitable relief in context of Clayton Act is

21    "circumscribed" by the doctrine of laches because Congress did not intend "to permit potential

22    plaintiffs to sleep through their competitors' antitrust violations and then sue many years later").

23    Because its unjustified delay in filing suit has caused Thomson SA irreparable prejudice, Tech

24    Data's reliance on tolling doctrines is barred by laches.

25         The doctrine of laches operates to bar a plaintiff's claims when the plaintiff has (1)

26    unreasonably delayed pressing its rights and (2) thereby caused prejudice to the defendant.  *See*

27    *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002) (explaining that

28    "laches penalizes inexcusable dilatory behavior" by the plaintiff); *Jackson v. Axton*, 25 F.3d 884,

886 (9th Cir. 1994) ("Laches is based on the plaintiff's delay in beginning litigation . . . .")  "A

determination of whether a party exercised unreasonable delay in filing suit consists of two steps.

First, we assess the length of delay, which is measured from the time the plaintiff knew or should

have known about its potential cause of action.  Second, we decide whether the plaintiff's delay was

reasonable."  *Jarrow Formulas*, 304 F.3d at 838 (internal citations omitted).

Despite the fact that it possessed knowledge of its potential claims by no later than

November 2007 when the first actions in these proceedings were filed, Tech Data slept on its rights.

It waited until September 9, 2013 – nearly six years after the first claims were filed in this action –

to first assert (without obtaining leave of this Court) its claims against Thomson SA.  Tech Data

pleads no facts in the FAC that justify this inexcusable delay.

Thomson SA has been seriously prejudiced by this delay.  As the Court stated in its

September 26, 2013 Order denying the DAPs' Motion to Amend to add the Thomson Defendants as

parties to the case, "[d]iscovery in this case has proceeded apace" and requiring the Thomson

Defendants to enter the litigation now would put them at an unfair, prejudicial disadvantage.  (*See*

Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].)  "[T]he DAPs had ample time to add Thomson to

their complaints without delay or prejudice, but they did not" and "to reward delay with amendment

in this case is not justifiable."  (*Id*. at 5-6.)

The same reasoning applies to Tech Data's claims against Thomson SA.  While Tech Data

slept on its rights, evidence degraded, memories faded, and information and personnel involved in

Thomson SA's CRT operations – an industry which it exited in 2005 – became even more difficult,

if not impossible, to locate.  At the same time, discovery in this action "proceeded apace" for years.

By waiting until September of 2013 to first assert its claims, Tech Data has put the Thomson

Defendants at a severe disadvantage.  (*See* Thomson Consumer Mot. to Strike at 9-11, incorporated

by reference as if stated fully herein (describing severe prejudice to Thomson Defendants caused by

Tech Data's unjustified delay).)  Accordingly, Tech Data's tardy claims are barred by laches and

should be dismissed with prejudice.  *See McCune v. Alioto Fish Company*, 597 F.2d 1244, 1250

(9th Cir. 1979) (affirming trial court's dismissal of complaint on basis of laches where plaintiff's

1   three-year delay in bringing claims made it difficult for defendant to obtain evidence needed to

2   defend claims).

3          **B.**      **Tech Data's Claims Are Time-Barred and It Does Not Plead a Plausible Basis for Tolling the Statutes of Limitation.**

4

5          Where it is apparent on the face of the complaint that the applicable statutes of limitation

6   have expired, claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *Von Saher v. Norton*

7   *Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). Here, the statutes of

8   limitation on Tech Data's claims against Thomson SA began to run no later than July 2005, when

9   Thomson SA sold its CRT business to Videocon. (FAC at ¶¶ 62-63). Because Thomson SA exited

10   the CRT industry in July 2005, the statutes of limitation on Tech Data's claims began to run, at the

11   latest, at that time. *See Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th

12   Cir. 1999) (holding plaintiff's antitrust claims time-barred because statute of limitations began to

13   run when defendant sold dairy business and thereby withdrew from alleged conspiracy); *see also In*

14   *re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854, 860 (N.D. Ill. 2003) (finding

15   claims barred because statute of limitation began to run against individuals upon their resignation of

16   employment from company). The statutes of limitation that apply to Tech Data's claims expired

17   several years before Tech Data filed its unauthorized FAC on September 9, 2013.

18          Tech Data has also failed to allege a plausible basis for tolling the statutes of limitation.

19   Where, as here, the statutes of limitation have clearly expired, "the plaintiff has the burden of

20   proving facts that would toll the statute[s]." *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1218 (9th

21   Cir. 1980). To survive a motion to dismiss, the complaint must "specifically identify every basis

22   [the plaintiff] intends to rely on to establish the tolling of statute of limitations." *In re TFT-LCD*

23   *(Flat Panel) Antitrust Litig.*, No. 07-md-1827, MDL Dkt. No. 4867 at 3 (N.D. Cal. Feb. 23, 2012)

24   (granting motion to dismiss where plaintiff failed to plead specific facts that established statute of

25   limitations was tolled).

26          **1.**      **Tech Data Has Failed to Plead Fraudulent Concealment.**

27          To survive a motion to dismiss, a plaintiff attempting to allege fraudulent concealment must

28   satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b) by pleading specific facts that

1   identify the time, place, specific content, and identity of the speaker who made the false

2   representations. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The plaintiff "must

3   do more than show that it was ignorant of its cause of action . . . it must plead facts showing that

4   [Thomson SA] affirmatively misled it." *Conmar Corp. v. Mitsui & Co. (USA) Inc.*, 858 F.2d 499,

5   502 (9th Cir. 1988). Moreover, a plaintiff may only rely on a fraudulent concealment theory during

6   time periods for which it pleads with particularity specific, dated acts of alleged concealment. *See*

7   *In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1078-9 (D. Kan. 2009) (granting motion to

8   dismiss and limiting time periods for which plaintiffs could rely on theory of fraudulent

9   concealment to only those periods corresponding with dated acts of concealment pleaded with

10  particularity in antitrust complaint). A plaintiff also fails to adequately plead fraudulent

11  concealment if it fails to plead the specific acts of diligence it undertook to uncover its claims.

12  *Conmar*, 858 F.2d at 502; *In re Processed Egg Prods. Antitrust Litig.*, Case No. 2:08-md-02002-

13  GP, MDL 2002, 2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013). Finally, the Ninth

14  Circuit has held that a plaintiff cannot "use the fraudulent concealment by one defendant as a means

15  to toll the statute of limitations against other defendants." *Barker v. Am Mobil Power Corp.,* 64

16  F.3d 1397, 1402 (9th Cir. 1995). Thus, to plead a viable fraudulent concealment claim, a plaintiff

17  must plead specific facts establishing that particular defendant affirmatively concealed its alleged

18  misconduct. *Id.*; *see also Metz v. Unizan Bank*, 416 F. Supp. 2d 568, 579 (N.D. Ohio 2006) (citing

19  *Barker* and evaluating adequacy of allegations of fraudulent concealment on motion to dismiss).

20         The allegations in Tech Data's FAC do not satisfy these standards. First, Tech Data simply

21  does not allege *any* specific acts by Thomson SA after July 2005 that could plausibly suggest it

22  affirmatively concealed its alleged participation in the conspiracy after that date. Tech Data does

23  not allege the time, place, specific content, and identity of the speaker regarding any alleged

24  misrepresentation by an employee of Thomson SA. Moreover, Tech Data does not plead facts with

25  particularity that make it plausible that *any* defendant fraudulently concealed the conspiracy from

26  Tech Data during the only relevant time period here − after Thomson SA exited the CRT industry in

27  July 2005. Therefore, by failing to allege any specific facts that plausibly suggest Thomson SA or

28  other Defendants fraudulently concealed the alleged conspiracy after 2005, Tech Data has failed to

satisfy the heightened pleading standards of Rule 9(b).  *See In re Urethane Antitrust Litig.*, 663 F.

Supp. 2d at 1078-9.

Second, Tech Data has failed to plead facts demonstrating it made diligent attempts to

discover its claims.  Instead, Tech Data merely makes the bald, conclusory assertion that it could

not have discovered the factual basis of its claims "at an earlier date by the exercise of reasonable

diligence because of the deceptive practices and techniques of secrecy employed by Defendants."

(*See* FAC at ¶ 228.)  Courts have uniformly held that such conclusory allegations are inadequate

and do not toll the applicable statutes of limitation.  *See Conerly v. Westinghouse Elec. Corp.*, 623

F.2d 117, 120 (9th Cir. 1980) (rejecting fraudulent concealment where plaintiff failed to "allege any

facts . . . tending to excuse his failure to discover [defendant's] misconduct").  As such, Tech Data

has failed to plead fraudulent concealment.  *See Conmar*, 858 F.2d at 502.

### 2. *American Pipe* Tolling Does Not Apply.

*American Pipe* tolling does not save Tech Data's claims against Thomson SA.  Thomson SA

was named as a defendant in four of the original class action complaints filed in early 2008.

However, on March 16, 2009, these complaints were superseded by amended consolidated class

action complaints that did not name Thomson SA as a defendant.  (*See* [Dkt. No. 436]; [Dkt. No.

437].)  "[A]t the time when a defendant is dropped from the class action, that defendant is no longer

notified of any claims against it, and a potential plaintiff is then required to act upon any claims it

hopes to assert."  *Linder Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 54 (D. Mass.

1995).  Thus, even if the statute of limitations on Tech Data's claims against Thomson SA was

tolled from January 2008 until March 2009, the limitations period began to run again on March 16,

2009 and expired well before September 2013 when Tech Data filed its unauthorized FAC against

Thomson SA.

Moreover, *American Pipe* tolling does not toll the statutes of limitation that apply to Tech

Data's state law claims.  *American Pipe* tolling does not apply to claims that are "different [from] or

peripheral [to]" those claims asserted in the class action.  *Crown, Cork & Seal Co., Inc. v. Parker*,

462 U.S. 345 (1983).  Here, Tech Data asserts claims under antitrust and unfair competition laws of

California and Florida, while the DPP complaints only asserted claims under federal law.[3]  [Dkt. No. 436 at ¶ 214].  Therefore, *American Pipe* tolling does not apply to its state law claims.  *See Williams v. Boeing Co.*, 517 F.3d 1120, 1135-36 (9th Cir. 2008) (denying tolling on claims not alleged in earlier complaint).

In addition, *American Pipe* tolling would only apply to Tech Data's state law claims if Florida and California had specifically adopted cross-jurisdictional tolling.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) ("[F]ederal courts have declined to import the doctrine into state law where it did not previously exist.").  Those states have not.  In fact, as explained in detail in Defendants' Joint Motion to Dismiss Certain Direct Action Plaintiffs' Claims and Reply in support of same, cross-jurisdictional tolling has been explicitly rejected by courts interpreting California[4] and Florida[5] law.  (*See* [Dkt. No. 1992] at 16; [Dkt. No. 2231] at 7-9.)

Finally, the complaint filed by the State of Florida on December 9, 2011 and dismissed 367 days later did not toll the statute of limitations on Tech Data's FDUTPA claim.  (*See* Dec. 11, 2012 Stip. and Order Dismissing the Claims of Pl. State of Florida [Dkt. No. 1483].)  Florida Statute § 95.051(1) identifies an exclusive list of eight tolling doctrines permitted under Florida law.  Contrary to Tech Data's theory of tolling, the Supreme Court of Florida has held that Florida Statute § 95.051(1) provides "the exclusive list of conditions that can 'toll' the running of the statute of limitations" and, under Florida law, "no other condition can toll the statute of limitations."  *Fla. Dep't of Health & Rehab. Servs. v. S.A.P.*, 835 So. 2d 1091, 1096 n.7 (Fla. 2003); *see also, HCA Health Servs. of Fla., Inc. v. Hillman*, 906 So. 2d 1094, 1098 (Fla. Dist. Ct. App. 2004) ("the

---

[3] As a reseller, Tech Data was never a member of the IPP class.  (*See* Thomson Consumer's Reply in Support of Mot. to Dis. Sharp's FAC [Dkt. No. 2317] at 10-11.)

[4] **California**:  *Jolly v. Eli Lilly & Co*, 751 P.2d 923, 935-36 (Cal. 1988) (declining to apply class action tolling); *Clemens*, 534 F.3d at 1025 (holding that "the weight of authority and California's interest in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional tolling into California law.").

[5] **Florida**:  *Raie v. Chimenova*, 336 F.3d 1278, 1283 (11th Cir. 2003) (finding *American Pipe* does not apply where, as here, the plaintiff asserts a different claim than those asserted in the earlier class action); *Hromyak v. Tyco Int'l Ltd.*, 942 So. 2d 1022, 1023 (Fla. Dist. Ct. App. 2006) ("agree[ing] that the American Pipe holding requires that the claims in the later action be the same as those alleged in the earlier action.").

legislature has made clear its intent to exclude all tolling exceptions not listed in the statute"); Report and Recommendation Regarding Defs.' Mot. to Dismiss the Compl. of the State of Fla. [Dkt. No. 1451] at 6 ("There is substantial authority that those states types of tolling are exclusive, and [] no other tolling doctrine may be applied.").  Tolling based on a representative claim brought by the State of Florida is not included in the list of tolling doctrines found in § 95.051(1). Therefore, it does not apply to toll the limitations period that applies Tech Data's Florida state law claim.  Accordingly, all of Tech Data's state law claims are untimely and subject to dismissal with prejudice.[6]

### 3.    Government Action Tolling Does Not Apply.

For the same reasons expressed in Thomson Consumer's previously filed Motion to Strike Tech Data's FAC, government action tolling also does not save Tech Data's untimely claims.  (*See* Thomson Consumer's Mot. to Strike at 15-16, incorporated by reference as if fully set forth herein.) Moreover, Tech Data's state law claims are not preserved by 15 U.S.C. § 16(i), which only tolls the statute of limitations as to rights of action "arising under" "the antitrust laws."  Section 1 of the Clayton Act sets forth the exclusive list of "antitrust laws," *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 376 (1958), *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1031 n.4 (9th Cir. 2001) (same), and none of the state laws relied upon by Tech Data are on that list.  *See* 15 U.S.C. § 12.

In sum, the statutes of limitation on all of Tech Data's claims expired several years before it filed its inexcusably late claims, and it does not plead specific facts that establish a plausible basis for tolling the statutes of limitation.  Therefore, all of Tech Data's claims against Thomson SA are time-barred and should be dismissed with prejudice.

### C.    Tech Data Fails to Plead Plausible Claims Against the Thomson Defendants.

The FAC also fails to satisfy fundamental pleading standards because Tech Data does not plead factual allegations that plausibly suggest Thomson SA participated in the alleged conspiracy

---

[6] Critically, fraudulent concealment is also not a grounds for tolling listed in § 95.051(1), so it may not apply to toll the limitations period applicable to Tech Data's FDUTPA claim.  *See In re Vitamins Antitrust Litig.*, No. MISC. 99-197(TFH), MDL 1285, 2000 WL 33975412, at *5 (D.D.C. Oct. 26, 2000).

1    as this Court has required.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011,

2    1019 (N.D. Cal. 2010); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109,

3    1117 (N.D. Cal. 2008) (stating plaintiff "must allege that *each individual defendant* joined the

4    conspiracy and played some role in it") (emphasis added).  Although discovery in these actions has

5    been ongoing for years, in the eighty paragraphs of the FAC that detail both the alleged collusion

6    between the Defendants over the course of approximately twelve years and the worldwide

7    government investigations of that conduct, Tech Data does not advance a single, well-pleaded

8    allegation regarding Thomson SA's alleged involvement.  (*See* FAC at ¶¶ 116-95.)  Instead, Tech

9    Data simply asserts that a generic "Thomson" entity "participated in dozens of meetings with its

10   competitors" from "1996 and 2005" at which CRT related topics were allegedly discussed.  (FAC at

11   ¶ 159.)  This amounts to nothing more than "a bare allegation of a conspiracy [which] is almost

12   impossible to defend against" and is insufficient to state a claim against Thomson SA.  *See Kendall*

13   *v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008); *In re TFT-LCD (Flat Panel) Antitrust*

14   *Litig.*, 586 F. Supp. 2d at 1117 (holding "general allegations as to all defendants, to 'Japanese

15   defendants,' or to a single corporate entity such as 'Hitachi'" were insufficient to state a claim); *see*

16   *also In re Cal. Title. Ins. Antitrust Litig.*, No. C 08-01341, 2009 WL 1458025, at *8 (N.D. Cal. May

17   21, 2009).  Simply stated, the FAC pleads no specific facts that plausibly suggest Thomson SA

18   participated in the alleged conspiracy.

19         This Court has not hesitated to dismiss complaints, like the FAC, that fail to plead sufficient

20   facts to render claims against Thomson SA plausible.  Citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

21   544 (2007), and related authority, on September 26, 2013, the Court issued an Order granting

22   Thomson Consumer's motion to dismiss the Sharp Defendants' Complaint.  (*See* Order Granting

23   Motion to Dismiss [Dkt. No. 1960] at 4-5.)  (*Id.*)  The Court held that at this advanced stage in the

24   case, Sharp was required to plead more than "threadbare allegations and legal conclusions."  (*Id.* at

25   6.)  Sharp's Complaint, however, "provide[d] only the barest possible pleadings that Defendant

26   participated in the conspiracy to some extent . . ." and thereby failed "to elucidate why and how

27   Defendant should be part of this case."  (*Id.* at 4-5.)

28

1    The allegations against Thomson SA in Tech Data's FAC are nearly identical to and thus

2    equally bare as those contained in Sharp's deficient Complaint.  Accordingly, Tech Data's claims

3    against Thomson SA should be dismissed for the same reasons expressed in the Court's Sept. 26,

4    2013 Order.

5         **D.       Tech Data's Claims Should Be Dismissed Because It Lacks Antitrust Standing.**

6         Tech Data's Sherman Act claims and California antitrust law claims should be dismissed

7    because Tech Data has failed to allege that it suffered any antitrust injury.  In *Associated General*

8    *Contractors*, the Supreme Court articulated a balancing test to determine whether the plaintiff is the

9    proper party to assert antitrust claims.  *Associated Gen. Contractors v. Cal. State Council of*

10   *Carpenters*, 459 U.S. 519, 537-44 (1983); *see also In re Dynamic Random Access Memory (DRAM)*

11   *Antitrust Litig.*, 516 F. Supp. 2d 1072, 1085 (N.D. Cal. 2007).  Although the Supreme Court was

12   interpreting the Sherman Act, the test set forth in *Associated General Contractors* also has been

13   adopted in California.  *See In re DRAM Antitrust Litig.*, 516 F. Supp. 2d at 1088-89.  Under the

14   *Associated General Contractors* test, a court must consider:  "(1) the nature of the plaintiff's alleged

15   injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness

16   of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5)

17   the complexity in apportioning damages."  *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1996).

18   "The requirement that the alleged injury be related to anti-competitive behavior requires, as a

19   corollary, that the injured party be a participant in the same market as the alleged malefactors."

20   *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985); *see also Am. Ad Mgmt., Inc. v.*

21   *Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Antitrust injury requires the plaintiff to

22   have suffered its injury in the market where competition is being restrained.  Parties whose injuries,

23   though flowing from that which makes the defendant's conduct unlawful, are experienced in another

24   market do not suffer antitrust injury.").

25        Here, the relevant market for the purposes of determining antitrust injury is the CRT market,

26   not the CRT Products market.  Tech Data, a self-described "wholesale distributor of information

27   technology products," (FAC at ¶18), has not suffered any antitrust injury by virtue of its purchases

28   of CRT Products, which are not part of the "market where competition is being restrained."  *See*

1   *Am. Ad Mgmt.*, 190 F.3d at 1057.  Therefore, to the extent its claims are based on its purchases of

2   CRT Products, Tech Data has not suffered injury of the type the antitrust laws were intended to

3   forestall, and it does not have antitrust standing to bring such claims.  *Am. Ad Mgmt.*, 190 F.3d at

4   1057.  Because it lacks antitrust standing, Tech Data's claims based on its purchases of CRT

5   Products should be dismissed with prejudice.

6        The Court should also dismiss Tech Data's claims under the Sherman Act and California

7   law to the extent it is an indirect purchaser of CRTs because the FAC does not plead facts showing

8   that Tech Data's alleged purchases fall within the "ownership or control" exception to *Illinois Brick*.

9   To survive a motion to dismiss, Tech Data must allege *facts* that make it plausible that it possesses

10  standing under a recognized exception to *Illinois Brick*.  *Kendall,* 518 F.3d at 1050 (affirming

11  dismissal of complaint that did not plead "evidentiary facts" that plausibly established indirect

12  purchasers qualified for *Illinois Brick* exception).  The Ninth Circuit has held that the ownership or

13  control exception is applicable only where the initial seller of the price-fixed good owns or controls

14  the direct purchasers.  *See In re ATM Fee Antirust Litig.,* 686 F.3d 741, 756 (9th Cir. 2012).

15  Therefore, to adequately plead that they satisfy an exception to *Illinois Brick*, Tech Data must plead

16  "evidentiary facts which, if true, will prove" that the initial seller of the price-fixed good here

17  owned or controlled the direct purchaser.  *Id.*; *Kendall,* 518 F.3d at 1047.  Tech Data does not

18  satisfy its burden if, as it does in the FAC, it just pleads "ultimate facts" or legal conclusions

19  regarding ownership or control.  (*Id.*)

20       The Court should dismiss the Tech Data's claims against Thomson SA because it does not

21  plead *any* evidentiary facts showing that its alleged purchases satisfy the ownership or control

22  exception.  *See In re TFT-LCD Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1164897 (N.D. Cal.

23  Mar. 20, 2013) (granting motion to dismiss complaint that contained only conclusory allegations of

24  control); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1068 n.5 (E.D.

25  Cal. 2011); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143, 2011 WL 3894376, at *6

26  (N.D. Cal. Aug. 3, 2011).  Although Tech Data claims to have purchased CRT Products from

27  Defendants, it provides only the vaguest allegations concerning its purchases.  (*See, e.g.*, FAC at ¶ 9

28  ("Plaintiffs purchased CRT Products . . . directly and indirectly from Defendants, and/or

1    Defendants' subsidiaries and affiliates and/or entities owned or controlled by Defendants").)  Tech

2    Data does not allege that it purchased CRT Products from the Thomson Defendants or that it

3    purchased CRT Products from the Thomson Defendants containing an allegedly price-fixed CRT

4    manufactured by the Thomson Defendants.  In fact, Tech Data does not plead evidentiary facts:  (1)

5    identifying which alleged Defendants or co-conspirators were initial sellers of CRTs; (2) identifying

6    which Defendants or other suppliers were the direct purchasers of CRTs that ultimately sold

7    finished CRT Products to Tech Data; or (3) that would allow the Court to plausibly infer that the

8    entities that sold CRT Products to Tech Data were owned or controlled by it, the Defendants, or

9    other named co-conspirators.  Under Ninth Circuit precedent, Tech Data's complete failure to plead

10   any facts regarding these required elements mandates dismissal of its claims.  *See Kendall*, 518 F.3d

11   at 1050 (affirming dismissal of complaint alleging co-conspirator exception applied where plaintiff

12   failed to plead "evidentiary facts . . . to support such conclusion").

13          As the Court ruled in its September 26, 2013 Order "[s]o many years after this MDL's

14   inception, Plaintiffs should be able to provide something more than boilerplate allegations."  (Sept.

15   26, 2013 Order at 5 [Dkt. No. 1960].)  Similarly, years after these actions began, Tech Data should

16   be required to plead specific facts that allow the Court to plausibly infer its purchases qualify for the

17   ownership or control exception.  Despite the fact that evidence regarding this topic, if it exists,

18   would be exclusively within its control, Tech Data has failed to plead any such facts.  Accordingly,

19   Tech Data's indirect purchaser claims should be dismissed with prejudice.

20                                              **CONCLUSION**

21          A court has inherent authority to manage its docket.  *Chambers v. NASCO, Inc.*, 501 U.S.

22   32, 43 (1991).  "These powers are governed not by rule or statute but by the control necessarily

23   vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition

24   of cases." *Id.*; *see also Atchison, Topeka & Santa Fe Ry. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th

25   Cir.1998) (recognizing that a district court has broad inherent powers to control its docket as long

26   as it does not nullify the parties' procedural choices under the federal rules).  Here, pursuant to Fed.

27   R. Civ. P. 15(a)(1) and 21, Tech Data was required to obtain leave of court before it filed the FAC.

28   Tech Data's failure to do so renders the allegations in the FAC against Thomson SA a nullity and

without legal effect. *Taa*, 2011 WL 4985379, at *5 (striking allegations in amended complaints filed in violation of Rule 15 without leave of court). Moreover, any motion for leave to amend filed by Tech Data now would necessarily fail because the Court already has correctly determined that granting Plaintiffs leave to amend their Complaints to add claims against Thomson SA at this late stage in the case would cause Thomson SA to suffer undue prejudice. Finally, even if the Court were inclined to allow Tech Data to amend its complaint despite this prejudice, amendment would be futile because the Court lacks personal jurisdiction over Thomson SA and Tech Data has not plead viable claims against Thomson SA. Therefore, the Court should enter an Order striking the allegations against Thomson SA contained in the FAC with prejudice.

Dated:  February 7, 2014

Respectfully submitted,

*/s/ Kathy L. Osborn*

Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo
1700 Lincoln Street
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Ave, Suite 450
East Palo Alto, CA  94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-
6701calvin.litsey@FaegreBD.com

***Attorneys for Defendant Thomson SA***