Brent Caslin (Cal. Bar. No. 198682)
JENNER & BLOCK LLP
633 West Fifth Street
Suite 3600
Los Angeles, California  90071
Telephone:  213 239-5100
Facsimile:  213 239-5199
bcaslin@jenner.com

Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:   312 222-9350
Facsimile:    312 527-0484
ttruax@jenner.com
mbrody@jenner.com

*Attorneys for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc. and Mitsubishi Electric Visual Solutions America, Inc.*

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re: Cathode Ray Tube (CRT) Antitrust Litigation | Case No. 3:07-cv-5944 SC |
| | MDL No. 1917 |
| This Document Relates To: | |
| *Electrograph Systems, Inc. et al. v. Technicolor SA, et al., No. 13-cv-05724;* | **REPLY IN SUPPORT OF DEFENDANTS MITSUBISHI ELECTRIC CORPORATION, MITSUBISHI ELECTRIC US, INC., AND MITSUBISHI ELECTRIC VISUAL SOLUTIONS AMERICA, INC. TO DISMISS LATE-FILED COMPLAINTS ON TIMING GROUNDS** |
| *Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Technicolor SA, et al., No. 13-cv-05261;* | |
| *Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264;* | Date:    February 7, 2014 |
| *Interbond Corporation of America v. Technicolor SA, et al., No. 13-cv-05727;* | Time:    10 a.m. |
| | Judge:   Honorable Samuel Conti |

1    *Office Depot, Inc. v. Technicolor SA, et al., No.*
2    *13-cv-05726;*

3    *Costco  Wholesale Corporation v. Technicolor*
     *SA, et al., No. 13-cv-05723;*

4    *P.C. Richard & Son Long Island Corporation, et*
5    *al. v. Technicolor SA, et al., No. 31:cv-05725;*

6    *Schultze Agency Services, LLC, o/b/o Tweeter*
     *Opco, LLC, et al. v. Technicolor SA, Ltd., et al.,*
7    *No. 13-cv-05668;*

8    *Sears, Roebuck and Co. and Kmart Corp. v.*
     *Technicolor SA, No. 3:13-cv-05262;*
9
10   *Target Corp. v. Technicolor SA, et al., No. 13-cv-*
     *05686*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   REPLY IN SUPPORT OF MITSUBISHI ELECTRIC'S MOTION TO DISMISS LATE-FILED COMPLAINTS
     Case No. 3:07-cv-5944 SC
     2

# TABLE OF CONTENTS

ARGUMENT ............................................................................................................................1

I.   Laches Bars Plaintiffs' Complaints. ...............................................................................1

    A.   Laches Can Be Decided On A Motion To Dismiss. .....................................................1

    B.   Plaintiffs Unreasonably Delayed The Filing Of Their Complaints. ............................2

    C.   Mitsubishi Electric Has Been Prejudiced By Plaintiffs' Unreasonable Delay. ..........3

        1.   Mitsubishi Electric Has Suffered Evidentiary Prejudice. ...............................3

        2.   Mitsubishi Electric Has Suffered Expectations-Based Prejudice. ..................5

II.   The Statute Of Limitations Bars Plaintiffs' Complaints.................................................6

    A.   Plaintiffs' Claims Accrued No Later Than 2005. ........................................................7

    B.   The Statute Of Limitations Has Not Been Tolled........................................................8

        1.   *American Pipe* Does Not Toll The Statute Of Limitations.............................8

        2.   Fraudulent Concealment Does Not Toll The Limitations Period Beyond 2005. .....................................................................................................10

        3.   Government Action Does Not Rescue Plaintiffs' Untimely Claim..............12

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

CASES

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.,*
  988 F.2d 1157 (Fed. Cir. 1993) ..................................................................................6

*Arneil v. Ramsey,*
  550 F.2d 774 (2d Cir. 1977) .....................................................................................9

*Boone v. Citigroup, Inc.,*
  416 F.3d 382 (5th Cir. 2005) ....................................................................................9

*Cada v. Baxter Healthcare Corp.,*
  920 F.2d 446 (7th Cir. 1991) ....................................................................................3

*Card v. Duker,*
  122 Fed. Appx. 347 (9th Cir. 2005) ........................................................................10

*Credit Suisse Secs. (USA) LLC v. Simmonds,*
  132 S. Ct. 1414 (2012) ............................................................................................14

*Crown, Cork & Seal Co. v. Parker,*
  462 U.S. 345 (1983) ...................................................................................................9

*Evergreen Safety Council v. RSA Network Inc.,*
  697 F.3d 1221 (9th Cir. 2012) ..................................................................................3

*Greyhound Corp. v. Mt. Hood Stages, Inc.,*
  437 U.S. 322 (1978) .................................................................................................13

*In re High Fructose Corn Syrup Antitrust Litig.,*
  293 F. Supp. 2d 854 (C.D. Ill. 2003) .......................................................................8

*In re Rubber Chemicals Antitrust Litig.,*
  504 F. Supp. 2d 777 (N.D. Cal. 2007) ....................................................................11

*In re Transpacific Passenger Air Transp. Antitrust Litig.,*
  No. C 07-05634, 2011 WL 1753738 (N.D. Cal. May 9, 2011) ...............................12

*J.M. Dungan v. Morgan Drive-Away, Inc.,*
  570 F.2d 867 (1978) ...........................................................................................13, 14

*Kirby v. Illinois,*
  406 U.S. 682 (1972) .................................................................................................14

*Madison Square Garden, L.P. v. NHL,*
  No. 07 CV 08455, 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008)................................................1

*Miller v. La Rosa,*
  No. C-87-1906-VRW,1990 U.S. Dist. LEXIS 7803 (N.D. Cal. May 18, 1990) ..............1, 2, 4

*Morton's Mkt. Inc. v. Gustafson's Dairy, Inc.,*
  198 F.3d 823 (11th Cir. 1999) ..................................................................................7, 8, 11

*Nartron Corp. v. STMicroelectronics, Inc.,*
  305 F.3d 397 (6th Cir. 2001) ..................................................................................................5

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
  695 F.3d 946 (9th Cir. 2012) ..................................................................................................5

*Sensible Foods, LLC v. World Gourmet, Inc.,*
  No. 11-2819, 2011 WL 5244716 (N.D. Cal., Nov. 3, 2011) ....................................................2

*Smith v. United States,*
  133 S. Ct. 714 (2013)..............................................................................................................11

*Solow Bldg. Co. LLC v. Nine West Grp., Inc.,* No. 00 Civ. 7685, 2001 WL 736794
  (S.D.N.Y. June 28, 2001)..........................................................................................................1

*State of New York v. Hendrickson Bros., Inc.,*
  840 F.2d 1065 (2d Cir. 1988)..................................................................................................11

*Sun Theatre Corp. v. RKO Radio Pictures, Inc.,*
  213 F.2d 284 (7th Cir. 1954) ..................................................................................................15

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.,*
  413 F.3d 553 (6th Cir. 2005) ..................................................................................................9

STATUTES

15 U.S.C. § 16(i).........................................................................................................................13

OTHER AUTHORITY

C. Leslie, *Judgment-Sharing Agreements,* 58 Duke L.J. 747, 758-59 (2009) ................................5

Plaintiffs' suit against Mitsubishi Electric is too late.  In response to Mitsubishi Electric's laches defense, plaintiffs assert laches is not normally decided on a motion to dismiss.  We agree, but where all of the facts relevant to laches are known, laches is proper for a motion to dismiss.  As for the statute of limitations, plaintiffs respond by asserting three tolling doctrines.  None of these doctrines rescues plaintiffs' tardy allegations.  First, *American Pipe* is inapplicable because no class action was filed against Mitsubishi Electric within the relevant time period.  Second, fraudulent concealment is insufficiently pleaded and cannot cure the unjustified delay and resulting prejudice to Mitsubishi Electric.  And third, plaintiffs' assertion that long-dormant criminal indictments brought against foreign fugitives toll the statute of limitations indefinitely is contrary to the government action tolling statute's text and purpose.  Plaintiffs' claims are time-barred.

## ARGUMENT

### I.    Laches Bars Plaintiffs' Complaints.

#### A.    Laches Can Be Decided On A Motion To Dismiss.

Laches is a total bar to liability where plaintiffs unreasonably delayed bringing suit and defendants were prejudiced as a result.  Plaintiffs argue that laches is improper for a motion to dismiss.  Opp. at 19-25.  While that may be true in other cases, laches can be decided on Mitsubishi Electric's motion to dismiss because "unreasonable delay and prejudice are clear on the face of the complaint." *Madison Square Garden, L.P. v. NHL*, No. 07 CV 08455, 2008 WL 4547518, at *34 (S.D.N.Y. Oct. 10, 2008); *see also Solow Bldg. Co. LLC v.  Nine West Grp., Inc.*, No. 00 Civ. 7685, 2001 WL 736794, at *3 (S.D.N.Y. June 28, 2001).  For example, in *Miller v. La Rosa*, the court granted a motion to dismiss an employment claim due to laches.  No. C-87-1906-VRW, 1990 U.S. Dist. LEXIS 7803 (N.D. Cal. May 18, 1990).  The undisputed facts demonstrated that the plaintiff had unreasonably delayed, waiting four years to sue.  Plaintiff's tardiness prejudiced the defendant because he was unaware that he would be named a defendant, no longer worked for the company,

and had no "opportunity to assemble and maintain the materials necessary to defend this action." *Id.* at *22.

Unwilling to accept the clear teachings of these cases, plaintiffs instead rely on this Court's decision in *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819, 2011 WL 5244716 at *4-5 (N.D. Cal., Nov. 3, 2011). In that case, this Court was unable to decide laches on the face of the complaint. This Court recognized that "at the motion-to-dismiss phase, the obstacle to asserting a successful laches defense is greater because the defendant must rely exclusively upon the factual allegations set forth in the complaint." *Id.* Because the motion to dismiss required this Court "to make factual determinations" not discernable from the complaint, the Court could not decide laches as a matter of law. *Id.* at *13. Here, unlike *Sensible Foods*, the Court does not need to make any factual determinations. The facts relevant to laches are found in the complaints and the record.[1]

**B.    Plaintiffs Unreasonably Delayed The Filing Of Their Complaints.**

Plaintiffs' unreasonable delay is apparent on the face of the complaints. Plaintiffs allege the CRT conspiracy became public in November 2007. *E.g.*, Electrograph Compl. ¶ 76; Dkt. 1609 at 12 (all parties "on notice of the facts" in November 2007). Plaintiffs possessed the necessary information to file suit at that time because plaintiffs knew from whom they purchased CRT products. Indeed, the Indirect Purchaser Plaintiffs ("IPPs") sought to amend their complaint to add Mitsubishi Electric on August 22, 2012, yet plaintiffs delayed another seven months before filing suit. Plaintiffs' claim that they had to review the "voluminous document productions" before they could file suit rings hollow – their complaints are nearly verbatim copies of the IPPs' allegations.

---

[1] Plaintiffs distinguish *Madison Square Garden, L.P.* by arguing that an alternative holding that the claim was released undermines the court's laches holding. Opp. at 21 n.11. But an "alternative holding is no less binding than if it were the exclusive basis" of a decision. *Hamdan v. Rumsfeld*, 548 U.S. 557, 716 (2006). Plaintiffs' distinction of *McCune v. F. Alioto Fish Co.* is also incorrect because the defendant's knowledge is not an element of laches and therefore has no bearing on the holding.

Plaintiffs argue that "Mitsubishi provides no basis for the factual determinations necessary to find unreasonable delay." Opp. at 22.  Plaintiffs are mistaken.  Since Mitsubishi Electric relies on plaintiffs' own allegations and the chronology of this case, the facts on which Mitsubishi Electric relies are uncontested.  Moreover, plaintiffs failed to act with diligence after the IPPs sought leave to amend on August 22, 2012, and therefore unreasonably delayed as a matter of law.  *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012) (finding unreasonable delay where plaintiff proffered no "legitimate justification" for delay).

Plaintiffs contend that they are presumed to have acted in a timely manner as long as they act within the statute of limitations.  Yet plaintiffs did not file their complaints within the statute of limitations.  Rather, plaintiffs rely upon tolling doctrines to extend the statute of limitations, which deprives them of the benefit of any presumption.  *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1991).

### C.    Mitsubishi Electric Has Been Prejudiced By Plaintiffs' Unreasonable Delay.

This Court has already found plaintiffs' delay prejudiced Mitsubishi Electric:  "Discovery in this case has proceeded apace, and forcing Mitsubishi to enter litigation now would put it at an unfair, prejudicial disadvantage."  Dkt. 1959 at 5.  Instead of accepting this Court's ruling, plaintiffs filed 11 new lawsuits against Mitsubishi Electric.  Plaintiffs make no effort to explain how filing new suits lessens the prejudice to Mitsubishi Electric, which this Court has already found resulted from plaintiffs' delay.

### 1.    Mitsubishi Electric Has Suffered Evidentiary Prejudice.

Plaintiffs argue Mitsubishi Electric's proof of evidentiary prejudice is not specific and its claims of evidence degradation are merely "bald assertions." Opp. at 23.  But the law does not require Mitsubishi Electric to prove each aspect of its prejudice.  The exact nature of the defendant's prejudice is often difficult to assess.  As a result, courts (including at the motion to

dismiss stage) presume prejudice is the natural consequence of plaintiffs' unreasonable delay, recognizing that a defendant will have a much harder time mustering a defense. *E.g.*, *Miller v. La Rosa*, 1990 U.S. Dist. LEXIS 7803 (N.D. Cal. May 18, 1990). Plaintiffs ignore this principle and urge the Court to excuse their delay, even though it is plaintiffs' delay that makes it difficult to prove the particular instances of prejudice that Mitsubishi Electric will suffer if forced to defend these tardy allegations.

In addition to the prejudice that can be reasonably presumed, Mitsubishi Electric has identified specific instances of prejudice flowing from plaintiffs' unreasonable delay. For example, due to Mitsubishi Electric's exit from the CPT business in 1998 and its complete exit from the CDT business in 2005, Mot. at 8, plaintiffs' delay compounds the problem of obtaining information and records because these businesses are no longer part of Mitsubishi Electric. Had plaintiffs timely filed their complaints, Mitsubishi Electric may have been able to preserve documents and testimony necessary to its defense.

Plaintiffs assert there is no prejudice because Mitsubishi Electric "has been on notice" since the IPP tolling agreement in November 2011. Opp. at 23. Plaintiffs misinterpret the 2011 "notice" and ignore the numerous practical problems of investigation and information preservation. The paucity of the IPPs' evidence against Mitsubishi Electric, and the IPPs' ultimate decision not to pursue Mitsubishi Electric, had the opposite effect than what plaintiffs now claim. Far from alerting Mitsubishi Electric to the likelihood of other actions, the IPPs' action confirmed that a significant link did not exist between the conspiracy and Mitsubishi Electric. Despite this clear signal of non-liability, plaintiffs assert Mitsubishi Electric should have spent considerable resources acting as if it were a party to the litigation. Even assuming Mitsubishi Electric could now be faulted for failing to take such extraordinary prophylactic measures (which it should not), Mitsubishi Electric did not know the nature of any claims against it and did not have access to discovery in the case.

Mitsubishi Electric could not have reasonably assessed the claims it needed to refute and thus could not have avoided the prejudice it now faces.

### 2.   Mitsubishi Electric Has Suffered Expectations-Based Prejudice.

Expectations-based prejudice arises where a defendant "suffered consequences that it would not have, had the plaintiff brought the suit promptly, including that a defendant has suffered "an increase in potential damages." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946, 953 (9th Cir. 2012); *see also Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 411 (6th Cir. 2001). Due to plaintiffs' delay, Mitsubishi Electric has remained on the sidelines of the CRT litigation. Whether sued separately, or with other defendants, thrusting Mitsubishi Electric into the late stages of litigation will cause great prejudice. Plaintiffs ignore this Court's prior holding that Mitsubishi Electric will be prejudiced. Dkt. 1959 at 5. As Mitsubishi Electric has shown, it faces a much greater risk of damages due to plaintiffs' delay, which constitutes expectations-based prejudice. Entering this case at the eleventh hour, there is no clear path for Mitsubishi Electric to plow through the voluminous discovery in the case. How would Mitsubishi Electric assess the more than 100 depositions already conducted and ask those deponents questions relevant to Mitsubishi Electric that other parties did not ask? Mitsubishi Electric faces duplication of effort and expense. And, as the last party standing, Mitsubishi Electric faces a heightened risk of being exposed to ruinous liability, despite not being involved in the unlawful conduct, because plaintiffs' settlements with defendants sued earlier shift a disproportionate risk of liability onto Mitsubishi Electric. This well-known "whipsaw" phenomenon has not diminished since the ABA's 1986 study. C. Leslie, *Judgment-Sharing Agreements*, 58 Duke L.J. 747, 758-59 (2009). Although plaintiffs "hypothesize" that it is better to be a later settling defendant, Opp. at 25, they cite no authority for this view. Mitsubishi Electric is not arguing for a change in the antitrust contribution remedy; rather, in this case, plaintiffs' delay has created a unique prejudice to Mitsubishi Electric because it

will not have the same opportunity as other defendants to resolve the dispute early and avoid the shift of disproportionate liability.  Plaintiffs should not be rewarded for such delay.

Plaintiffs next assert that expectations-based prejudice can only arise from actions that a defendant is induced to take outside of litigation.  Opp. at 24.  Plaintiffs' argument is without merit and none of plaintiffs' cases so hold.  Plaintiffs cite *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157 (Fed. Cir. 1993), which states that "principles of equity ignore no form of prejudice" and concludes that the mere delay of another lawsuit does not justify laches.  As shown above, Mitsubishi Electric is exposed to far more than mere delay of another lawsuit; Mitsubishi Electric faces heightened risk simply due to the timing of its involvement in this case.  None of the cases plaintiffs cite arise in a similar context. *Id.*

Plaintiffs' suggestion that Mitsubishi Electric should seek a delay of the entire CRT case, Opp. at 25, is even more prejudicial and impractical than the dual-track plaintiffs seek.  Plaintiffs have already failed to act diligently with respect to Mitsubishi Electric.  They should not receive a windfall from such delay by being granted more time to litigate their case against all defendants.  This proposal is unfair to the Court and the other parties, and unfairly rewards plaintiffs' dilatory behavior.  Nor does it address the prejudice to Mitsubishi Electric, which still must "catch up" to the other parties in the case at added cost and on a much faster pace.  And, it does nothing to resolve the unfair risk to Mitsubishi Electric as other defendants settle.

## II.   The Statute Of Limitations Bars Plaintiffs' Complaints.

Plaintiffs admit that, absent tolling, the limitations period has expired.  Opp. at 7.  Aside from March 18, 2011 to August 30, 2012, when SDI's indictment tolled the statute of limitations, the limitations period has run unabated since 2005, if not earlier.  We have updated plaintiffs' chart to show the tolling arguments:

| Basis for Tolling | Plaintiffs: Proposed Tolling | Defendant: Actual Tolling |
|---|---|---|
| Fraudulent Concealment | Through November 2007 | Through December 2005 (at the latest, if applicable at all) |
| *American Pipe* | November 2007-November 2011 | Not applicable: Mitsubishi Electric was not sued |
| Government Action | February 2009 to Present | March 18, 2011 to August 30, 2012 (SDI proceeding) |

Even accepting plaintiffs' fraudulent concealment argument, the statute of limitations has expired:

| Scenario | Un-tolled Time Period |
|---|---|
| If fraudulent concealment ends in December 2005 | December 31, 2005 to March 18, 2011 (5 years, 2 months, 18 days); and August 30, 2012 to November 2013 (1 year, 4 months). Total un-tolled period:  *6 years, 6 months, 18 days* |
| If fraudulent concealment ends in November 2007 | November 2007 to March 18, 2011 (3 years, 4 months, 18 days) and August 30, 2012 to November 2013 (1 year, 4 months). Total un-tolled period:  *4 years, 8 months, 18 days* |

### A.     Plaintiffs' Claims Accrued No Later Than 2005.

Plaintiffs do not contest that Mitsubishi Electric exited the CRT business no later than 2005. Opp. at 13; Mot. at 13.  Where it is evident from the record that a defendant divested a business unit accused of participating in a conspiracy, withdrawal can be addressed on a motion to dismiss.

In response, plaintiffs argue that the sale of a business does not constitute withdrawal as a matter of law.   Opp. at 13.   Plaintiffs mischaracterize the holding in *Morton's Mkt. Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999), by stating that the "court there only concluded that the defendant had withdrawn after determining, from the factual record, that it 'certainly retired and totally severed its ties' to the conspiracy." Opp. at 13.  In *Morton's Market*, the court held that defendant's sale of its dairy farm constituted, as a matter of law, its withdrawal from the conspiracy.  The court's decision was based on the fact that defendant sold its relevant business, and the defendant "did nothing more to assist or participate in the price-fixing conspiracy" after the sale.  *Id.* at 839.  The court did not review any factual record.  In this case, there is no

dispute that Mitsubishi Electric sold its CRT businesses by 2005, and plaintiffs do not allege any participation by Mitsubishi Electric after 2005.

Plaintiffs' insistence that this Court must wait to assess the impact of an uncontested and uncontestable matter, such as Mitsubishi Electric's exit from the CRT business, is incorrect. Plaintiffs ignore the holding of *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854 (C.D. Ill. 2003), in which the court concluded on a motion to compel, that an executive's resignation from the allegedly price-fixing company constituted withdrawal from the conspiracy for statute of limitations purposes. Although *In re Fructose* deals with an executive's resignation as opposed to the sale of a business, the events are analogous. Indeed, the holding in *Morton's Mkt.* is based upon the same body of conspiracy case law. *Morton's Mkt., Inc.*, 198 F.3d at 838.[2]

**B.     The Statute Of Limitations Has Not Been Tolled.**

**1.     *American Pipe* Does Not Toll The Statute Of Limitations.**

Plaintiffs argue *American Pipe* tolling extends the statute of limitations, despite the fact that Mitsubishi Electric was never a defendant in any of the class actions that plaintiffs assert provides the basis for tolling. There is no precedent extending *American Pipe* tolling to a defendant that was not sued in the class action lawsuits, yet plaintiffs urge this Court to ignore the unanimous view – adopted by other circuits based on the principles underlying *American Pipe* – that claims against unnamed parties are not tolled. Opp. at 13-14. Plaintiffs' argument fails.

---

[2] Plaintiffs rely upon this Court's prior ruling adopting Special Master Legge's Report regarding different withdrawal arguments made by other defendants. 738 F. Supp. 2d 1011, 1025 (Mar. 30, 2010). Some defendants argued they had withdrawn by selling their CRT businesses to joint ventures in which they continued to own an interest. 2010 WL 9543295, at *12-*13. Special Master Legge rejected that argument – the nature of the retained joint venture interests raised factual questions. *Id*. at *13. Unlike Special Master Legge's prior ruling, Mitsubishi Electric's motion addresses its total exit from the industry in 2005, not its 2000 sale to a joint venture. Special Master Legge recognized that LG's similar exit from the CRT industry would constitute withdrawal but because – at that time – CRT products were still alleged to be part of the conspiracy, and LG continued to sell CRT products, Special Master Legge could not recommend dismissal. *Id*.

First, the unanimous authority is consistent with the reasoning of *American Pipe*.   The Supreme Court's *American Pipe* decision is based on two principles: it avoids unnecessary individual suits while class proceedings are pending, and provides notice to those defendants against whom claims are tolled.   414 U.S. at 553-54.   Applying these principles, in *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553 (6th Cir. 2005), the Sixth Circuit refused to apply *American Pipe* to a claim against a party that was not named as a defendant in the class action.   The plaintiff, WPMC, sought to rescue its fraud claim against PwC, which was otherwise barred by the statute of limitations.   WPMC asserted its claim against PwC arose "out of the same operative facts" as a prior class suit.   WPMC stated that because the "class plaintiffs could have asserted claims against PwC in the first case and sought to lift the stay of discovery in order to obtain discovery from PwC . . . PwC had adequate notice" and should be subject to tolling.   Plaintiffs make the same argument in this case.   The Sixth Circuit held *American Pipe* does not toll claims against parties not sued in the class action.   The decisions of the Second and Fifth Circuits are equally emphatic. *Boone v. Citigroup, Inc.*, 416 F.3d 382, 392 (5th Cir. 2005) (it is "facially obvious" that *American Pipe* does not apply to defendants not sued by the class); *Arneil v. Ramsey*, 550 F.2d 774, 782 n.10 (2d Cir. 1977) (a contrary conclusion "would not comport with reason").

Plaintiffs ignore that the Court in *American Pipe* also sought to "ensure essential fairness to defendants and bar[] a plaintiff who 'has slept on his rights.'"  414 U.S. at 554-55; *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 355 (1983).   That is the case here.   Plaintiffs unreasonably delayed bringing suit, and Mitsubishi Electric was not alerted to plaintiffs' claims. Mitsubishi Electric had little or no involvement in the alleged CRT litigation despite a thorough global investigation and extensive discovery by class action plaintiffs.

Second, applying tolling only to claims against actual defendants serves *American Pipe's* underlying rationale that class members should not be required to bring duplicative suits.   In this

case, plaintiffs were aware of the conspiracy when indictments were announced in 2007. They knew at that time whether they had purchased CRTs from Mitsubishi Electric. Yet, they took more than 6 years to sue Mitsubishi Electric. Had they sued at any earlier time, their suits would not have been duplicative of the class actions, as Mitsubishi Electric was never a defendant in any class action. This does not work a harsh result or "punish" plaintiffs. Like any other party, they had ample time to investigate a suit.

Third, while it has not addressed this precise issue, Ninth Circuit decisions limit *American Pipe* tolling. The Ninth Circuit has emphasized that *American Pipe* tolling is a "narrow" doctrine and should be extended only sparingly beyond cases involving "identical causes of action." *Card v. Duker*, 122 Fed. Appx. 347, 348 (9th Cir. 2005). The Ninth Circuit has not interpreted *American Pipe* expansively to rescue stale claims.

### 2.     Fraudulent Concealment Does Not Toll The Limitations Period Beyond 2005.

Plaintiffs contend fraudulent concealment tolled the limitations period until November 2007. Opp. at 8. Mitsubishi Electric denies it participated in any fraudulent concealment, and plaintiffs have failed to allege otherwise. Nonetheless, unless plaintiffs also prevail on *American Pipe* or government action tolling, concealment to November 2007 does not rescue plaintiffs' late-filed claims. *See above* at 7.

Plaintiffs claim Mitsubishi Electric's argument has been rejected "multiple times" by this Court. Opp. at 8. While Mitsubishi Electric recognizes this Court has held similar allegations were sufficient to allege fraudulent concealment with respect to other defendants during the time they were alleged to have participated in the CRT conspiracy, Mitsubishi Electric stands in a different position. Mitsubishi Electric exited the CRT business, and thus withdrew from any supposed CRT conspiracy, by 2005, if not years sooner. Thus, allegations of post-2005 conduct are irrelevant to Mitsubishi Electric.

Plaintiffs next argue that acts of fraudulent concealment can be imputed across co-conspirators. Opp. at 11. Mitsubishi Electric does not contest this principle, but it is limited to those acts of fraudulent concealment that occurred during the time period Mitsubishi Electric is alleged to have been a participant in the conspiracy (1995-2005). It is a fundamental principle of conspiracy law that "[w]ithdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators." *Smith v. United States*, 133 S. Ct. 714, 719 (2013). Plaintiffs attempt to distinguish *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065 (2d Cir. 1988) by arguing the case dealt with the termination of a conspiracy instead of a withdrawal. Opp. at 12. Plaintiffs are correct about the facts of that case – it was a termination – but the same principle applies where a co-conspirator withdraws from the conspiracy. *See Smith*, 133 S. Ct. at 719.

None of plaintiffs' cases are to the contrary. Neither *In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777 (N.D. Cal. 2007), nor *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823 (11th Cir. 1999), address which acts of fraudulent concealment – before or after withdrawal – can be imputed to the withdrawing defendant. In *In re Rubber Chemicals*, the defendant did not even assert that the acts of fraudulent concealment pre-dated his withdrawal. In the amended decision of *Morton's Market* – which Mitsubishi Electric cited in its Motion (despite plaintiffs' claim that Mitsubishi Electric relied on a superseded version of the case) – the Eleventh Circuit did not reach this issue, noting that whether fraudulent concealment applied to the withdrawing dairy farmer would need to be considered upon remand. 211 F.3d 1224. If anything, the amended decision in *Morton's Market* supports the argument that fraudulent concealment as to a withdrawing co-conspirator deserves separate attention.

Even in the period before Mitsubishi Electric's withdrawal from the CRT industry, plaintiffs failed to allege acts of fraudulent concealment – either directly by Mitsubishi Electric or by other defendants and imputed to Mitsubishi Electric. Instead, plaintiffs repeat allegations from

their prior complaints. Opp. at 8-10. After nearly six years of investigation, such boilerplate is insufficient to allege fraudulent concealment. *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634, 2011 WL 1753738, at *21 (N.D. Cal. May 9, 2011).[3] ██████████

████████████████████████    ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████    ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████    It provides no basis to

extend the limitations period to 2007. This Court has found fraudulent concealment in allegations that other defendants – not Mitsubishi Electric – participated in numerous secret "glass meetings" where they sought to hide their price-fixing agreements by not taking meeting minutes and agreeing to stay quiet. *E.g.*, Sears Compl. ¶ 227. The assertions of fraudulent concealment as to Mitsubishi Electric do not come close to this level and are insufficient to rescue plaintiffs' claims.

### 3.    Government Action Does Not Rescue Plaintiffs' Untimely Claim.

The Parties agree SDI's guilty plea tolled the statute of limitations against Mitsubishi Electric from March 18, 2011 to August 30, 2012. The Parties disagree, however, as to whether indictments brought against six foreign nationals trigger government action tolling. Plaintiffs concede no proceedings have taken place or are anticipated in those cases, the defendants have been determined to be fugitives, and the court which was assigned the cases has stated there is not a case

---

[3] Plaintiffs argue that Mitsubishi Electric made a "blatant mischaracterization" of the holding in *In re Transpacific Passenger Air Transp. Antitrust Litigation.* Opp. at 12 n.5. This accusation is incorrect. Mitsubishi Electric made it clear from the outset, as plaintiffs concede in the same footnote, that it was not challenging the general conspiracy concept that acts of fraudulent concealment may be imputed. Mitsubishi Electric challenges whether acts of fraudulent concealment after a party's withdrawal can be imputed.

or controversy.  Under plaintiffs' view, the mere filing of those indictments tolls the statute of limitations forever, even if no other action will ever occur in the cases.  Plaintiffs' argument is inconsistent with the text and purpose of the statute.  The filing of indictments against foreign nationals does not trigger government action tolling unless there is a reasonable expectation that criminal proceedings will occur.  Otherwise, proceedings have not been "initiated" and are not "pending."

Plaintiffs ignore the language and purpose of the statute, which tolls a claim only if a case has been initiated and remains pending.  15 U.S.C. § 16(i); Opp. at 17.  Plaintiffs argue criminal cases were initiated with the indictments.  In a normal case, an indictment is not all that happens – it is followed by arraignment, discovery, proceedings, a plea or trial, and judgment.  An indictment can be part of the initiation process, and for that reason the Ninth Circuit has held nothing that happens before an indictment constitutes initiation.  *J.M. Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 871 (1978).  In this case, however, no criminal case was ever initiated, as the criminal process never occurred.  Even if a case was initiated, the cases against the fugitive Asian executives are not pending in any meaningful sense.  The cases are not on any judge's docket, and the only ruling in any of the cases consists of a conclusion by a trial judge that he could take no action because there was no live case or controversy pending in the court.

The statute's language should be interpreted to advance its underlying purpose.  Plaintiffs do not dispute that the two goals of the government action tolling provision are:  (1) "to ensure that private litigants would have the benefit of prior Government antitrust enforcement efforts," and (2) to "shorten the period over which treble-damages actions will extend."  *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 334 (1978).  Plaintiffs' interpretation of "initiated" and "pendency" ignores these statutory purposes.  Plaintiffs can derive no benefit from the fugitive

cases because nothing has happened, nor will anything realistically happen in the cases.[4]   The barebones indictments filed by the government relate to Taiwanese and Korean nationals and provide nothing remotely relevant to plaintiffs' cases against Mitsubishi Electric.   Plaintiffs' interpretation of "pendency" contradicts the Congressional goal that the statute bring repose to defendants.   The effect of plaintiffs' interpretation is to permit indefinite tolling of price-fixing cases.   Plaintiffs do not respond to this point, nor do they address the fact that  the Supreme Court has rejected indefinite tolling in other circumstances.   *See Credit Suisse Secs. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1420 (2012) (avoiding interpretation of tolling statute that would permit indefinite tolling).

Second, plaintiffs read *J.M. Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867 (9th Cir. 1978), too broadly.   In *Dungan*, the court held that actions taken by prosecutors before filing an indictment – namely, empanelling a grand jury – did not "institute" proceedings.   The court did not decide whether an indictment, without more, triggers the "instituted" proceedings requirement.   *Id.* at 868.   Indeed, despite plaintiffs' attempts to excise the key sentence of the court's decision, the court stated its holding would "not eliminate all necessity to strike the exquisite balance."   *Id.* at 872.   The court made the situation more "manageable" by eliminating pre-indictment actions as sufficient to trigger tolling.   It did not, as plaintiffs contend, set the indictment date as the trigger. Such an inflexible interpretation would be inadvisable since the statute did not identify "indictment" as the trigger, would have been *dicta* since that issue was not presented to the court in *Dungan*, and would contradict Supreme Court decisions which apply a more factual assessment of the institution of criminal proceedings.   *Kirby v. Illinois*, 406 U.S. 682, 690 (1972).

---

[4] Plaintiffs state it is theoretically possible that the government will seek extradition of the Korean fugitives – although they have not done so in the years since indictment.  Even plaintiffs concede that extradition of the Taiwanese fugitives is not even theoretically possible and therefore there is no realistic expectation of cases proceeding against those three defendants.

Courts face a similar issue at the other end of a criminal proceeding.  Often, a criminal case is resolved with a ruling that vests continuing jurisdiction in the district court.  For example, courts enter Clayton Act consent decrees under which the district court reserves jurisdiction to make future rulings.  Courts universally hold that nothing is "pending" in those circumstances, despite the possibility – if not likelihood – of later action. *Sun Theatre Corp. v. RKO Radio Pictures, Inc.*, 213 F.2d 284, 292 (7th Cir. 1954).  Otherwise, the limitations period would never end, which is inconsistent with the purpose of the statute.  The same reasoning applies here.  The remote possibility of future proceedings against the Asian fugitives does not make the action "pending."

Third, reading the statute consistent with its language and purpose creates little or no risk of harm to plaintiffs.  Mitsubishi Electric's interpretation requires that there be binding legal action, arraignment, or a reasonable expectation of either following the indictment of a foreign national for proceedings to be "instituted" and "pending."  This interpretation would create little uncertainty for plaintiffs in antitrust cases.  Plaintiffs would simply ascertain whether the case is proceeding or not.  Unless and until the plaintiffs have some certainty in that process (*i.e.,* arraignment or strong facts to suggest arraignment is in the works), there is no government action tolling.  In most cases, this will have little practical effect because of other tolling doctrines or other pending indictments.  Plaintiffs' parade of horribles is purely theoretical.  It is hard to conceive of cases where a diligent plaintiff must rely upon fugitive tolling to rescue its late-filed antitrust claims.

## CONCLUSION

For the foregoing reasons, Mitsubishi Electric respectfully asks this Court to dismiss the plaintiffs' tardy complaints.

Dated: February 7, 2014

Respectfully Submitted,


By: /s/ Terrence J. Truax
Terrence J. Truax

Brent Caslin (Cal. Bar. No. 198682)
JENNER & BLOCK LLP
633 West Fifth Street, Suite 3600
Los Angeles, California  90071
Telephone:  213 239-5100
Facsimile:   213 239-5199
bcaslin@jenner.com

Terrence J. Truax  (*pro hac vice*)
Michael T. Brody  (*pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
ttruax@jenner.com
mbrody@jenner.com

*Attorneys for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc. and Mitsubishi Electric Visual Solutions America, Inc.*