*Counsel Listed on Signature Block*

<div style="writing-mode: vertical">ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS</div>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Mater Case No.: 3:07-cv-05944-SC MDL No. 1917 Individual Case Nos. 3:11-cv-05513-SC; 3:11-cv-06396-SC |
| This document relates to:<br><br>*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al., No. 11-cv-05513-SC*<br><br>*Target Corp. v. Chunghwa, et al., No. 11-cv-05514-SC*<br><br>*Tech Data v. Hitachi, Ltd., et al. No. 13-cv-00157-SC* | **PLAINTIFFS BEST BUY, TARGET, AND TECH DATA'S OPPOSITION TO DEFENDANT BEIJING MATSUSHITA COLOR CRT CO., LTD.'S REQUEST FOR JUDICIAL NOTICE** |

Plaintiffs Best Buy Co., Inc., Best Buy Purchasing, LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, LLC, and Magnolia Hi-Fi, LLC, Plaintiff Target Corp., and Plaintiffs Tech Data Corporation and Tech Data Product Management, Inc. (collectively, "Plaintiffs") respectfully oppose Defendant Beijing Matsushita Color CRT Co., Ltd.'s ("BMCC") Request for Judicial Notice (Dkt No. 2372), as follows:

/ / /

60740212.2

BMCC's request for judicial notice is improper and should be denied.  At heart, BMCC is implicitly asking this Court to give precedential value to an unpublished, state trial court order premised on a different record and different legal arguments.  *See* Dkt No. 372.  California trial court orders are plainly not citable.  *See, e.g.*, Cal. R. Court 8.1115(a); *Credit Suisse First Boston Corp. v. Grunwald* (9th Cir. 2005) 400 F.3d 1119, 1126 (following Rule 8.1115(a) and refusing to consider unpublished California appellate court decision); *Rennick v. O.P.T.I.O.N. Care, Inc.* (9th Cir. 1996) 77 F.3d 309, 317 (same). [1]

Moreover, the state trial court decision was premised on a different record and arguments than are at issue here.  *Cf.,* Plaintiffs' Opposition (Dkt. No. 2339-4) *with* Ex. A (State of California's Opposition to BMCC's Motion to Quash Service of Summons) attached hereto.  Thus, Plaintiffs here rely on substantial additional evidence establishing that the exercise of jurisdiction is proper, including the deposition transcript of Ayumo Kinoshita, BMCC's Initial Disclosure Statement, BMCC's Supplemental Responses and Objections to Direct Purchaser Plaintiffs' First Set of Interrogatories, the substantial record reflecting BMCC's long-standing participation in this MDL, and numerous BMCC documents showing that it was actively tracking U.S. street prices for CRT products and participating in a conspiracy targeting the United States. [2]

Plaintiffs also assert several dispositive legal arguments not raised or considered in the state court action, including BMCC's waiver of its personal jurisdiction defense by failing to include it in its prior Rule 12 motions and by actively participating in the federal CRT litigation for five years.  More fundamentally, Plaintiffs argue that this Court has personal jurisdiction over BMCC because BMCC participated in conspiratorial meetings that specifically targeted the United States (not just California).

---

[1] Indeed, the citations on which BMCC relies hold that the Court may take judicial notice of published, appellate state court decisions.  In *White v. Gittens*, 121 F.3d 803 (1st Cir. 1997), the First Circuit stated, "[W]e may take judicial notice of published state court dispositions of cases." *Id.* at 805 (emphasis added).  And in *Weiswasser v. Hartley*, 2009 U.S. Dist. LEXIS 58902 (E.D. Cal. June 24, 2009), the Court took judicial notice of a decision of the California Supreme Court, noting in any event that it was not binding precedent. *Id.* at *1.

[2] *See, e.g.*, Dkt. No. 2339-34 (Exhibits M, O, R, S, T, U, V, W, X. Y, and BB to the Declaration of Vincent S. Loh in Support of Plaintiffs' Consolidated Opposition to BMCC's Motion to Dismiss Certain Direct Action Purchaser Complaints).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

In contrast, the state trial court limited its analysis to BMCC's contacts with California, and it did not consider BMCC's contacts with the United States to establish personal jurisdiction.[3] The distinction between federal and California contacts is significant because, for purposes of this federal MDL, the relevant minimum contacts are BMCC's contacts with the United States. *See Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1416 (9th Cir. 1989) (where a statute authorizes nationwide service of process – i.e., suit brought under Section 12 of the Clayton Act – national contacts analysis is appropriate). Thus, "so long as a defendant has minimum contacts with the United States," the Clayton Act "confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1414 (citations omitted); *see also id.*, at 1414-1416 (collecting cases).

For these reasons, the Court should deny BMCC's request for judicial notice.

Dated:  February 10, 2014                    Respectfully submitted,

By:    */s/ David Martinez*
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
David Martinez, Bar No. 193183
dmartinez@rkmc.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone: (310) 552-0130
Facsimile:  (310) 229-5800

*Attorneys for Plaintiffs Best Buy Co., Inc.; Best Buy Purchasing LLC; Best Buy Enterprise Services, Inc.; Best Buy Stores, L.P.; Bestbuy.com, L.L.C.; and Magnolia Hi-Fi, LLC*

---

[3] *See* Dkt. No. 2372-1, at Ex. A (State Trial Court's Order) at 2:8-12, 2:19-24, 4:6-8, 5:6-8, 6:3-6; *see also id.*, at 3:3-6 and 4:7-8 (rejecting argument that Kinoshita's meeting with Samsung SDI employees in San Diego conferred jurisdiction since the "evidence [did] not suggest BMCC was engaging in any activity in California"); 4:11-14 and 5:3-5 (rejecting stream of commerce argument because "there [was] no substantial evidence that BMCC foresaw that the items would actually end up in California—or indeed that they did"); and 6:19-21 and 7:3-13 (rejecting control argument as there was insufficient evidence that BMCC had "substantial contacts with California …" through an alter ego relationship with Matsushita).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

By:   /s/ Astor Heaven
**CROWELL & MORING LLP**
Astor Heaven (Admitted *Pro Hac Vice*)
aheaven@crowell.com
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile:  (202) 628-5116

*Attorneys for Plaintiff Target Corp.*


By:   /s/ Scott N. Wagner
**BILZIN SUMBERG BAENA PRICE & AXELROD LLP**
Scott N. Wagner (Admitted *Pro Hac Vice*)
swagner@bilzin.com
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone: (305) 374-7580
Facsimile:  (305) 374-7593

*Attorneys for Plaintiffs Tech Data Corporation and Tech Data Product Management, Inc.*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

PLAINTIFFS' OPPOSITION TO BMCC'S REQUEST FOR JUDICIAL NOTICE

**DECLARATION OF VINCENT S. LOH**

I, VINCENT S. LOH, declare as follows:

1.     I am a duly licensed attorney admitted to practice in the State of California and before this Court.  I am an associate in the law firm of Robins, Kaplan, Miller & Ciresi L.L.P. in Los Angeles, California, counsel for Plaintiffs Best Buy Co., Inc., Best Buy Purchasing, LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com and Magnolia Hi-Fi, LLC (collectively, "Best Buy") in this action.  Each of the facts stated herein is true and correct within my personal knowledge, and if called as a witness, I would competently testify thereto.

2.     On or about December 4, 2013, the People of the State of California filed their Opposition to BMCC's Motion to Quash Service of Summons ("Opposition"), a true and correct copy of which is attached hereto as Exhibit A.  The People of the State of California filed their Opposition in the case entitled *People of the State of California, et al. v. Samsung SDI Co., Ltd., et al.* (San Francisco Superior Court Case No. CGC-11-515784).  The Court may take judicial notice of this document for purposes of establishing the record upon which the State Trial Court rendered the Order upon which BMCC relies.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this 10th day of February, 2014, at Los Angeles, California.

_____
Vincent S. Loh

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

# EXHIBIT A

KAMALA D. HARRIS
Attorney General of California
MARK BRECKLER
Chief Assistant Attorney General
KATHLEEN FOOTE
Senior Assistant Attorney General
PAUL A. MOORE (SBN 241157)
PAMELA PHAM (SBN 235493)
NICOLE S. GORDON (SBN 224138)
MICHAEL JORGENSON (SBN 201145)
EMILIO E. VARANINI (SBN 163952)
Deputy Attorneys General
State Bar No. 201145
  455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone: (415) 703-5629
Fax: (415) 703-5840
E-mail: michael.jorgenson@doj.ca.gov
*Attorneys for Plaintiffs*
State of California, et al.

ELECTRONICALLY
F I L E D
Superior Court of California,
County of San Francisco
**DEC 04 2013**
Clerk of the Court
BY: JUDITH NUNEZ
                    Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

|  |  |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA, et al.,**<br><br>                                         Plaintiffs,<br><br>            **v.**<br><br>**SAMSUNG SDI, CO., LTD., et al.,**<br><br>                                         Defendants. | Case No. CGC-11-515784<br><br>**PLAINTIFFS' OPPOSITION TO BMCC'S MOTION TO QUASH SERVICE OF SUMMONS**<br><br>Date:             December 17, 2013<br>Time:            9 a.m.<br>Dept:            304<br>Judge:          Hon. Curtis E.A. Karnow<br>Trial Date:<br>Action Filed:  November 8, 2011 |

**REDACTED VERSION**

SF2011203501

1

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

I.    Statement of Facts ...................................................................................... 2

    A.    BMCC has been controlled and owned by companies subject to California jurisdiction throughout its history ...................................... 2

    B.    At the time of the conspiracy, Matsushita controlled BMCC ................... 3

    C.    Matsushita-controlled BMCC fixed prices with competitors based on competitor information acquired at least in part in California .............. 4

    D.    A key BMCC executive participated in CRT conspiracy meetings in California .............................................................................................. 5

    E.    The CRT competitor Kinoshita met with, Samsung SDI, has already pleaded guilty to violating antitrust law, including in the Northern District .......................................................................................... 5

    F.    BMCC participated in cartel meetings that fixed prices for exports to the U.S. Based on U.S. Downstream prices and monitored U.S. Downstream prices applicable to California stores................................... 6

    G.    A substantial volume of BMCC CRTS ended up in the state of California but also BMCC shipped at least some of its CRTS through Long Beach........................................................................................ 7

        1.    Legal Standard ............................................................................ 8

        2.    Argument—The Court Should Exercise Specific Jurisdiction Over BMCC...................................................................... 8

            a.    BMCC Purposefully Availed Itself Of The California Marketplace........................................................ 9

        1.    BMCC Sent and Received Competitor Information to and from California Sources in Furtherance of the Conspiracy ........... 9

        2.    BMCC Exported Tubes to the U.S. and Mexico at the Behest of Matsushita, Which Then Incorporated Those Tubes into Televisions for Distribution Across the United States, Including California......................................................... 10

        3.    The CRT Litigation, in Which BMCC Was an Important Participant, Has a Substantial Connection to California.............. 12

            a.    Exercising Jurisdiction Over BMCC is Fair and Reasonable ...................................................................... 13

            b.    Jurisdictional Discovery Should Be Conducted If the Current Record Is Deemed to be Insufficient ................... 15

Conclusion ...................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page**

CASES

Asahi Metal Industry Co., Ltd. v. Superior Court
  (1987) 480 U.S. 102 ................................................................................. 10, 11

AT&T v. AU Optronics
  (9th Cir. 2013) 707 F.3d 1106 ................................................................... 12, 15

Bancroft & Masters, Inc. v. Augusta Nat'l Inc.
  (9th Cir. 2000) 223 F.3d 1082 ........................................................................ 13

Bridgestone Corp. v. Superior Court
  (2002) 99 Cal.App.4th 767 ................................................................. 8, 10, 11

Burger King Corp. v. Rudzewicz
  (1985) 471 U.S. 462 .......................................................................................... 9

Elecs. for Imaging v. Coyle
  (Fed. Cir. 2003) 340 F.3d 1344 ......................................................................... 8

Fujitsu Ltd. v. Belkin Int'l
  (N.D. Cal. 2011) 782 F.Supp.2d 868 ............................................................... 14

Gates Learjet Corp. v. Jensen
  (9th Cir. 1984) 743 F.2d 1325 ......................................................................... 14

In re CRT Antitrust Litig.
  (N.D. Cal., Feb. 14, 2013, No. C–07–5944–SC) 2013 WL 4505701 ............... 12, 14

In Re: Cathode Ray Tube (CRT) Antitrust Litigation
  MDL No, 1917 ................................................................................................... 4

Laker Airways Ltd. v. Pan Am. World Airways
  (D.D.C. 1983) 559 F.Supp. 1124, aff'd, 731 F.2d 909 ...................................... 15

Laub v. U.S. Dep't of Interior
  (9th Cir. 2003) 342 F.3d 1080 ......................................................................... 15

Mihlon v. Superior Court
  (1985) 169 Cal.App.3d 703 .............................................................................. 15

Panavision Int'l, L.P. v. Toeppen
  (9th Cir. 1998) 141 F.3d 1316 ................................................................... 13, 14

Rowe v. Dorrough
  (1984) 150 Cal.App.3d 901) ............................................................................ 10

ii

**TABLE OF AUTHORITIES**
(continued)

                                                                      **Page**

*Sinatra v. Nat'l Enquirer, Inc.*
  (9th Cir. 1988) 854 F.2d 1191 .................................................................. 14

*Vons Companies, Inc. v. Seabest Foods, Inc.*
  (1996) 14 Cal.4th 446 ...................................................................... 8, 15

*Vons Cos., Inc. v. Seabest Foods, Inc.*
  (1996) 14 Cal.4th 434 .......................................................................... 15

*World-Wide Volkswagen Corp. v. Woodson*
  (1980) 444 U.S. 286 ...................................................................... 10, 11

*Younger v. Jensen*
  (1980) 26 Cal.3d 397 ..................................................................... 1, 14

**STATUTES**

Cal. Bus. & Prof. Code §§ 16702, 16750(a), 16753 ...................................... 1

Cal. Bus. & Prof. Code § 16760, subd. (a)(1) ........................................... 15

Cal. Bus. & Prof. Code § 16720 ........................................................... 12

Cal. Code Civ. Proc. § 410.10 ............................................................. 8

iii

## INTRODUCTION

The California Legislature deems the application of competition laws to be of such importance to the markets and values of our State that they have expressly provided for their extraterritorial enforcement against out-of-state or foreign defendants. (Cal. Bus. & Prof. Code §§ 16702, 16750(a), 16753.) The California Attorney General, the chief law enforcement officer, has acted to effectuate this policy; the legitimacy of that interest has, in turn, been affirmed by the California Supreme Court as a historical matter. (*See Younger v. Jensen* (1980) 26 Cal.3d 397 [finding that the California Attorney General is fully entitled to investigate illegal activity in other jurisdictions that affect Californians]).

Faced with this strong policy imperative, the Due Process Clause of the Federal Constitution, the only applicable gateway here as to the exercise of specific jurisdiction, poses no bar to the exercise of specific jurisdiction over Defendant Beijing Matsushita Color CRT Company, Ltd. (BMCC) based on the following facts elicited in discovery: (a) BMCC's high-level executive at the time of the conspiracy, the same one that declared on behalf of its Motion to Quash, directly furthered the objectives of the international Cathode Ray Tube ("CRT") price-fixing cartel by engaging in confidential information-exchanges with a competitor of BMCC (and of BMCC's parent Matsushita/Panasonic) in San Diego, California, and that competitor later pled guilty to committing acts in furtherance of the conspiracy in the Northern District of California; (b) at the time of the conspiracy BMCC was an integral part of the Matsushita/Panasonic conglomerate, a direct, high-level participant in the conspiracy, and as part of this conglomerate BMCC exported  CRTs to Matsushita's U.S. operations for distribution across the United States, including California; (c) BMCC was a direct participant in this world-wide conspiracy that fixed prices with reference to U.S. downstream retail prices, including retail prices in California; and (d) not only were a substantial amount of BMCC's price-fixed CRTs sold in California, as measured by volume of commerce, but also, in fact, it shipped at least some CRTs through Long Beach to a customer in San Diego. BOE Technologies, BMCC's current parent and at the time of the conspiracy a minority shareholder, has an office in Santa Clara. Through all of these contacts, BMCC is no stranger to California.  Therefore, BMCC's motion to quash should be denied.

1

1  | **I.   STATEMENT OF FACTS**

2  |    **A.   BMCC Has Been Controlled and Owned by Companies Subject to California Jurisdiction Throughout Its History**

3  |

4  | BMCC was controlled by the global conglomerate Matsushita Electric Industrial Co., Ltd.

5  | (Matsushita[1]), ████████████████████████████████████

6  | (Jorgenson Decl. Ex. 1) even while its current parent, BOE Technology Group Co., Ltd.[2], was

7  | only a minority shareholder at the time.  During the time period of the conspiracy,  BMCC was a

8  | joint venture company of which 50% was held by Matsushita Toshiba Picture Display Co., Ltd.

9  | (MTPD), a key defendant in this case and the main Matsushita entity in this conglomerate

10 | responsible for CRT production worldwide while  the other 50% share was held by three different

11 | Chinese entities: Beijing Orient Electronics (Group) Co., Ltd. (now BOE Technology), China

12 | National Electronics Import & Export Beijing Company, and the Beijing Yayunchin Branch of

13 | the Industrial and Commercial Bank of China, Ltd. (Compl. at ¶ 41.)

14 | MTPD  in turn was formed in 2002 when Matsushita entered into a CRT joint venture with

15 | Toshiba forming MTPD. (*Ibid.*)  MTPD manufactured, marketed, sold and/or distributed CRTs

16 | incorporated into, or affecting the price of, CRT-containing products purchased by Plaintiffs.

17 | (*Ibid.*) Matsushita and Toshiba dominated and controlled the finances, policies, and affairs of

18 | MTPD relating to the antitrust violations.  (Compl. ¶ 40.) In April 2007, MTPD became a wholly-

19 | owned subsidiary of Matsushita and was renamed MP Picture Display Co., Ltd. (MPPD).  (*Ibid.*)

20 | Matsushita and MTPD are clearly under the jurisdiction of this court.  (Docket Nos. 13,

21 | 137, 138, 143.)  Matsushita portrayed itself to news sources as running BMCC during the relevant

22 | period. *(See, e.g.*, The Economist, *Matsushita's Chinese Burn* (Sept. 18, 1997), available at

23 | http://www.economist.com/node/157363.)  And, as discussed below, Matsushita and MTPD

24 | executives controlled the operation of BMCC.

---

[1] Matsushita did business in North America primarily as "Panasonic." On October 1, 2008, Matsushita changed its name globally to Panasonic Corporation, but during all times of the relevant period, was Matsushita.  (Compl. ¶ 36.)

[2] BOE Technology was formerly known as Beijing Orient Electronics (Group) Co., Ltd. According to BOE's website, Beijing Orient Electronics changed its name to BOE Technology in August 2001. (http://www.boe.com.cn/en/Technology/Entering/djs.asp)

2

1    BMCC is now majority owned by BOE Technology, headquartered in Beijing. (Jorgenson

2  Decl. Ex. 2.)  That has not, however, changed the fact that BMCC is owned and controlled by a

3  company with ties to California: BOE Technology's subsidiary in Santa Clara, California, BOE

4  Technology America, Inc., is registered with the secretary of state to do business in California

5  and has an agent for service of process in California.  (*Ibid.*; Req. for Judicial Notice Exs. 1 & 2.)

6    **B.    At the Time of the Conspiracy, Matsushita Controlled BMCC**

7    BMCC was, at the time of the conspiracy, controlled by Matsushita, a key participant in the

8  CRTs price-fixing conspiracy. Through that relationship, BMCC exported Color Picture Tubes to

9  the United States for incorporation into Matsushita televisions that were then marketed and sold

10  throughout the country including California.  (Jorgenson Decl. Ex.24.)

11    First, Matsushita's internal organization chart indicates that MTPD controlled the

12  business operations of its subsidiaries, including BMCC, who all reported to the same people

13  within MTPD management regardless of whether the business was operated by MTPD in the

14  United States or BMCC in China.  (Jorgenson Decl. Exs. 3 & 24.)  Second, Matsushita emails

15  ████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████  (*Id.*

17  Ex. 4.)  Third, Matsushita personnel moved fluidly in and out of MTPD, BMCC, and other

18  Matsushita-controlled entities. For example, according to the declaration of Ayumu Kinoshita

19  filed with BMCC's motion to quash, he first worked for MTPD, from 2003-2006. From 2005-

20  2006 he was MTPD's resident sales engineer at BMCC in China. Then from 2006-2008 he

21  became Assistant General Manager of Sales and Marketing at BMCC. After 2008 Kinoshita

22  returned to Matsushita in Japan, which then changed its name to Panasonic, at where Kinoshita is

23  still employed. (Kinoshita Decl. ¶¶ 2-4).  Furthermore, witness testimony indicates that BMCC

24  exported to the United States ████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████ "

26  (Jorgenson Decl. Ex. 5.)  Finally, in the related federal case, *In Re: Cathode Ray Tube (CRT)*

27  *Antitrust Litigation*, MDL No, 1917, Matsushita/Panasonic settled with the Direct Purchaser

28  Plaintiffs on behalf of both MTPD and BMCC in a combined settlement agreement, which

3

supports the inference that BMCC was controlled by, and acting on behalf of Matsushita.

(Jorgenson Decl. Ex. 6.)

**C.    Matsushita-controlled BMCC Fixed Prices with Competitors based on Competitor Information Acquired at Least in Part in California**

In addition to being under the control of Matsushita, which had extensive contacts with California,

**D.    A Key BMCC Executive Participated in CRT Conspiracy Meetings in California**

Documents uncovered in discovery show BMCC personnel—



**E.    The CRT Competitor Kinoshita Met With, Samsung SDI, Has Already Pleaded Guilty to Violating Antitrust Law, Including in the Northern District**

5

1   (Jorgenson Dec. Ex. 13 [SDI supplemental interrogatory responses Nos. 4 and 5].) SDI pleaded

2   guilty to violating antitrust laws in the United States and was assessed a $32 million criminal fine

3   for its role in the global conspiracy to fix prices, reduce output, and allocate market shares of

4   CDTs. (Compl. ¶ 160.)  Specifically, the Samsung SDI plea agreement states that "[a]cts in

5   furtherance of this conspiracy were carried out within the Northern District of California. CDTs

6   that were the subject of this conspiracy were transported by one or more of the conspirators

7   through this District." (Request for Judicial Notice (*US v Samsung SDI*, CR 11-0162, Plea

8   Agreement at ¶ 4(e) (N.D. Cal May 17, 2011).)

**F.  BMCC Participated in Cartel Meetings That Fixed Prices for Exports to the U.S. Based on U.S. Downstream Prices and Monitored U.S. Downstream Prices Applicable to California Stores**

These communications between competitors created and enforced price-fixing agreements among the CPT producers, resulting in increased prices for consumers worldwide.

6

1 ████████████████████████████████████████ (Jorgenson

2 Decl. Ex. 22.) ███████████████████████████████████████

3 ███████████████████████████████████████████

4 ███████████████████████████

5

6 **G.    A Substantial Volume of BMCC CRTs Ended Up in the State of California But Also BMCC Shipped At Least Some of Its CRTs Through Long Beach**

7 Based on an analysis of data provided by Matsushita █████████████████

8 ████████████████████████████████████████████████████

9 ███████████████████████████████████████████████

10 ██████████████████████████████████████████████

11 ██████████████████████████

12 Of the BMCC price-fixed CRTs sold directly in the United States, █████████████

13 ████████████████████████████████████████

14 ████████████████████████████████████████████

15 ████████████████████████████████████████████

16 ██████████████████████████████████████████████

17 ███████████████████████████████████████████████

18 █████████████████████████████████████████████

19 ████████████████████████████████████████████████

20 ███████████████████████████

21   ███████████████████████████████████████████

22 █████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ███████████████████████████████████████████

25 ███████████████████████████████████████████

26 ████████████████████████████████████████████████

27 ████████████████████

28

7

In fact, in shipping CRTs to the United States and to Mexico for sale in California and elsewhere, BMCC purposefully availed itself of California as a forum: ████████████
█████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████

### 1.   Legal Standard

California has the broadest form of long-arm statute for jurisdiction over non-residents. California courts are authorized to exercise jurisdiction over parties on any basis consistent with the California or U.S. Constitution.  (Cal. Code Civ. Proc. § 410.10.)  Because California's long-arm statute is thus co-extensive with the outer limits of due process, only constitutional issues needs to be addressed in determining whether this court has jurisdiction over a non-resident party.

### 2.   Argument—The Court Should Exercise Specific Jurisdiction Over BMCC

Under California law, a nonresident defendant may be subject to the forum's specific jurisdiction if the following factors are satisfied:

> (1) the defendant *purposefully availed* itself of the benefits of conducting activities in the forum state by purposefully directing its activities toward the state, thereby obtaining the benefits and protections of the state's laws; (2) the dispute arises out of or has a substantial connection with the defendant's contacts with the state; and (3) the exercise of jurisdiction would be fair and reasonable.

(*Bridgestone Corp. v. Superior Court* (2002) 99 Cal.App.4th 767, 773-74 (emphasis in original), citing *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 475-78; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 446, 452.)

A plaintiff bears the burden of proving that minimum contacts exist through the first two requirements, while a defendant bears the burden of proving that the exercise of jurisdiction would be unreasonable, corresponding to the third requirement.  (*Elecs. for Imaging v. Coyle* (Fed. Cir. 2003) 340 F.3d 1344, 1350; *Bridgestone Corp. v. Superior Court, supra*, 99 Cal.App.4th at p. 774.)  As explained more fully below, the State of California satisfies each of these factors, and BMCC therefore is properly before the California courts.

8

a.   **BMCC Purposefully Availed Itself Of The California Marketplace**

1.   **BMCC Sent and Received Competitor Information to and from California Sources in Furtherance of the Conspiracy**

The "purposeful availment" requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. (*Burger King Corp.*, *supra*, 471 U.S. at p. 475.)  Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant that create a "substantial connection" with the forum State. (*Ibid*. [citations omitted]).  So long as it creates a "substantial connection" with the forum, even a single act can support jurisdiction.  (*Ibid.*, citing *McGee v. International Life Insurance Co.* (1957) 355 U.S. at 223.)

As an initial matter that resolves by itself the purposeful availment inquiry, BMCC— through its key officer Mr. Kinoshita of Matsushita— ████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ (Jorgenson Decl. Exs. 9- 12.) ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ Agreement at ¶ 4(e) (N.D. Cal May 17, 2011).) Where the defendant "deliberately" has engaged in significant activities within a State or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. (*Burger King Corp.*, *supra*, 471 U.S. at p. 475).

2.   **BMCC Exported Tubes to the U.S. and Mexico at the Behest of Matsushita, Which Then Incorporated Those Tubes into Televisions for Distribution Across the United States, Including California.**

The United States Supreme Court has declared that "placing goods in the stream of commerce with the expectation that they will be purchased by consumers in the forum state

9

1   indicates an intention to serve that market and constitutes purposeful availment as long as the

2   conduct creates a 'substantial connection' with the forum state." (*Bridgestone*, *supra*, 99 Cal.

3   App. 4th at 774-75 (citations omitted).)  Plaintiffs meet the availment standard because BMCC

4   manufactured, marketed, sold and/or distributed a substantial volume of price-fixed CRTs to the

5   United States and Mexico as an integral part of Matsushita, a key participant in the cartel, where

6   at least some of those CRTs transited through the Port of Long Beach and where, more

7   importantly, a substantial volume of those price-fixed CRTs made their way into the hands of

8   Californians. "[I]f the sale of a product of a manufacturer or distributor ... is not simply an

9   isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly

10  or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in

11  one of those States if its allegedly defective merchandise has there been the source of injury to its

12  owner or to others." (*Id.* at 775. See *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S.

13  286, 297-98*; Rowe v. Dorrough* (1984) 150 Cal.App.3d  901, 906-07) [a manufacturer's

14  "amenability to jurisdiction" does not depend "upon whether it deals *directly or indirectly* with

15  residents of the state."] [emphasis in original].)

16          According to a plurality of the United States Supreme Court, while "[t]he placement of a

17  product into the stream of commerce, without more, is not an act of the defendant purposefully

18  directed toward the forum State" (*Asahi Metal Industry Co., Ltd. v. Superior Court*(1987) 480

19  U.S. 102, 112), additional conduct by the nonresident manufacturer will establish the requisite

20  intent to serve the forum's market, such as (i) "marketing the product through a distributor who

21  has agreed to serve as the sales agent in the forum State," or (ii) "designing the product for the

22  market in the forum State[.]" *Id.*

23          These and related principles were applied in *Bridgestone*. Although the defendant did not

24  have any physical presence in the state and did not directly sell tires to California consumers, it

25  regularly sold a large volume of tires in Japan to its wholly-owned American subsidiary,

26  Firestone (an Ohio corporation based in Tennessee), with the expectation that Firestone would

27  then sell the tires to California consumers. That was sufficient to constitute purposeful availment

28  on the part of the manufacturer:  "We conclude that a manufacturer's placement of goods in the

<center>10</center>

1  stream of commerce with the expectation that they will be purchased or used by consumers in

2  California indicates an intention to serve the California market 'directly or indirectly' and

3  constitutes purposeful availment if the income earned by the manufacturer from sale or use of its

4  product in California is substantial." (*Bridgestone, supra,* 99 Cal. App. 4th at p. 777, citing

5  *Secrest Machine Corp. v. Superior Court* (1983) 33 Cal.3d 664, 669-70 (1983), and *World-Wide*

6  *Volkswagen Corp. v. Woodson, supra,* 444 U.S. 286 at p. 297.)

7       Here, testimony ███████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████

10 ██████████████████████████████████  Moreover, as Plaintiffs' expert, Dr.

11 Comanor, points out, a substantial volume of BMCC's price-fixed CRTs as measured in dollars

12 and in number of tubes made their way into the hands of Californians from elsewhere in the U.S.

13 or from Mexico.  (Decl. of Dr. Comanor at 5-8.)  BMCC's placement of price-fixed CRTs in the

14 stream of commerce, some of which transited through the Port of Long Beach, of which a

15 substantial number ended up in the United States and Mexico, and from which a substantial

16 number in turn ended up in the hands of Californians, indicates an intention on the part of BMCC

17 to avail itself directly of the California market.

18       California courts recognize that the heightened availment standards advanced by the

19 plurality's decision in *Asahi* do not overrule California's articulation of the stream of commerce

20 test. (*See Bridgestone, supra,* 99 Cal. App. 4th at p. 776-77 ["*Asahi* did not overrule prior United

21 States Supreme Court opinions articulating the stream of commerce doctrine and did not affect

22 California's 'commercial actuality' standard ..."].)  Regardless, Plaintiffs meet the heightened

23 availment standard advanced by the *Asahi* plurality not only because a substantial volume of

24 price-fixed BMCC CRTs were sold in California through the auspices of Matsushita, with its own

25 substantial ties with California, but also because BMCC's contacts included sending and

26 receiving information from meetings in California in furtherance of the antitrust conspiracy.

27

28

11

3. **The CRT Litigation, in Which BMCC Was an Important Participant, Has a Substantial Connection to California**

All of the Defendants' conduct within California leading to the sale of price-fixed goods outside the state should be considered in a due-process challenge to jurisdiction. (*AT&T v. AU Optronics* (9th Cir. 2013) 707 F.3d 1106, 1112.) The perpetration of anticompetitive activities within California creates state interests in applying California law to that conduct. (*Ibid.*) Following the *AT&T Mobility* case, the district court in the related federal CRT case already concluded that the perpetration of anticompetitive activities within California creates state interests in applying California law to that conduct. (*In re CRT Antitrust Litig.* (N.D. Cal., Feb. 14, 2013, No. C–07–5944–SC) 2013 WL 4505701, at *7.) Here the record shows that BMCC obtained information from meetings in ██████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ ((Jorgenson Decl. Exs. 9, 11 & 12.) Of course, ████████████████████████████████ ████████ (Dr. Comanor Decl. at 5-8; Jorgenson Decl. Ex. 24); ████████████████████ ████████████████████████████████ The district court in the CRT federal case rejected the argument that in-state sales are necessary for jurisdiction: *AT&T Mobility* "held that absence of a sale within a state did not preclude the application of that state's antitrust laws if other facts sufficiently tied the defendants' activities to that state." (*In re CRT Antitrust Litig.*, at *6.) The place of purchase is not focus of the inquiry: even if there were no purchases within a state, other activities related to the plaintiffs' injury could warrant application of that state's laws so long as it would not be arbitrary or unfair. (*AT&T Mobility LLC v. AU Optronics Corp., supra,* 707 F.3d at 1112.) Rightly understood then, the "transaction or occurrence" proscribed by the Cartwright Act includes not only the sale of price-fixed goods, but the full extent of incipient conspiratorial conduct described in section 16720 of the Act. (*Id.* at p. 1110, citing Cal. Bus. and Prof. Code § 16720.)

████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

1

2

3 ██████ (Jorgenson Decl. Exs. 18 & 19.) ████████████████████████████

4

5 (*Id.* Ex. 20

6

7

8

9

10

11

12 ████████████████████████████ (*Id.* Exs. 7 & 8.)

### a.   Exercising Jurisdiction Over BMCC is Fair and Reasonable

BMCC argues the Court should nevertheless not exercise jurisdiction because it would be

unreasonable. The reasonableness test involves seven factors: (1) purposeful interjection; (2) the

Defendant's burden; (3) conflict with sovereignty of the Defendant's state; (4) the forum's

interest; (5) the most efficient forum for resolution; (6) Plaintiff's interest in convenient and

effective relief; and (7) the existence of an alternative forum. (*Panavision Int'l, L.P. v. Toeppen*

(9th Cir. 1998) 141 F.3d 1316, 1323.)  The defendant bears "the burden of demonstrating

unreasonableness [which] requires the defendant to put on a compelling case." (*Bancroft &*

*Masters, Inc. v. Augusta Nat'l Inc.* (9th Cir. 2000) 223 F.3d 1082, 1088 (internal quotations

omitted).)  BMCC cannot meet its burden here, and the factors favor exercising jurisdiction.

**Purposeful interjection.** The degree to which the Defendant aimed its activities at the

forum determines the extent of a Defendant's purposeful interjection. (*Panavision,* 141 F.3d at

1323.)  BMCC has significant contacts with the U.S., independently and through Matsushita and

BOE.  BMCC's operations took into account North American sales and pricing that directly

impacted California retail prices. ████████████████████████████████

████████████████████████████████████████████

13

1    ████████████████████████  Additionally, BOE—the current majority owner of

2    BMCC and a former minority shareholder of BMCC at the time of the conspiracy—has an office

3    and agent for service of process in California. (Req. Judicial Notice.)

4        **Burden.**  All litigation entails a burden, but the burden on BMCC from litigating in

5    California is not significant enough to deny personal jurisdiction. (*Panavision, supra,* 141 F.3d at

6    p. 1323 (requiring "inconvenience is so great as to constitute a deprivation of due process."

7    (internal quotation marks omitted).)  "Progress in communications and transportation has made

8    the defense of a lawsuit in a freeing tribunal less burdensome." (*Fujitsu Ltd. v. Belkin Int'l* (N.D.

9    Cal. 2011) 782 F.Supp.2d 868, 885.)  As shown above, ████████████████████████

10   ███████████████████████████████████  (Jorgenson Decl. Ex. 6.),

11   ████████████████████████████████████████████████

12   ████████████████████████

13       **Conflicts.**  If conflicts with foreign sovereignty were dispositive, they would always

14   preclude suit against a foreign national in a U.S. court. (*Gates Learjet Corp. v. Jensen* (9th Cir.

15   1984) 743 F.2d 1325, 1333.)  Sovereignty considerations "weigh less heavily" in a personal

16   jurisdiction inquiry when the Defendant, as BMCC does here, manifests an intent to serve and

17   benefit from the California market and maintains a continuing business relationship with an agent

18   in California. (*See Sinatra v. Nat'l Enquirer, Inc.* (9th Cir. 1988) 854 F.2d 1191, 1200.)

19       **U.S. interest/efficiency/plaintiffs' choice.**  The district court in the related federal CRT

20   case already concluded that that the perpetration of anticompetitive activities within California

21   creates state interests in applying California law to that conduct. (*In re CRT Antitrust Litig.*

22   (N.D. Cal., Feb. 14, 2013, No. C–07–5944–SC) 2013 WL 4505701, at *7.)  If California's

23   interest in enforcing its antitrust laws for its consumers is to be effectively advanced, the state

24   must be able to assert adjudicatory authority over the entities that participate in conspiratorial

25   activity. (*See Younger,* 26 Cal.3d at 397.)

26       **Alternative forum.**  The Attorney General has a strong interest in enforcing California law

27   in California courts even if extraterritoriality is involved. (*AT&T v. AU Optronics,* supra, 707

28   F.3d at p. 1109-12; see also *Vons Cos., Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 477.)

<div align="center">14</div>

1   Moreover, considerations of judicial efficiency overwhelmingly favor litigation of all claims in a

2   single forum as opposed to trying claims against different defendants in different forums.  (See

3   *Vons Cos.,* 14 Cal.4th at p. 477.)  And, "[b]ecause California already has invested judicial

4   resources in this litigation apart from its substantive interest in the claims, the additional interest

5   of efficiency favors this state's exercise of jurisdiction." (*Ibid.*)  Finally, it is unlikely the

6   Plaintiffs' claims, including the Attorney General's *parens patrie* claim on behalf of California

7   natural persons (see Cal. Bus. & Prof. Code § 16760, subd. (a)(1)), can be pursued abroad and the

8   mere possible availability of a foreign forum does not substitute California's strong interest in

9   enforcing its antitrust laws here.  (See *Laker Airways Ltd. v. Pan Am. World Airways* (D.D.C.

10  1983) 559 F.Supp. 1124, 1138, *aff'd*, 731 F.2d 909.)

11                    **b.    Jurisdictional Discovery Should Be Conducted If the Current
                             Record Is Deemed to be Insufficient**

12

13       If BMCC's contacts with the State of California are found to be insufficient on the current

14  record, Plaintiffs would then request leave to conduct jurisdictional discovery against BMCC.

15  Jurisdictional discovery is to be granted when the jurisdictional facts are contested or more facts

16  are needed, and denied only where the record is already sufficiently developed or discovery

17  would be unhelpful. (*Laub v. U.S. Dep't of Interior* (9th Cir. 2003) 342 F.3d 1080, 1093.)  In

18  order to meet its burden of proof, a plaintiff is entitled to conduct discovery with regard to the

19  issue of jurisdiction. (*Mihlon v. Superior Court* (1985) 169 Cal.App.3d 703, 711.)

20

21

22

23

24

25

26

27

28

1

**CONCLUSION**

2     In light of the foregoing, BMCC's motion to quash should be denied as BMCC both

3 purposefully availed itself of California and had a substantial connection to California throughout

4 the course of this conspiracy and beyond.

5

6 Dated: December 2, 2013                   Respectfully Submitted,

7                                        KAMALA D. HARRIS
                                       Attorney General of California

8

9

10                                        /s/ Michael W. Jorgenson
                                       MICHAEL W. JORGENSON
11                                        Deputy Attorney General
                                       *Attorneys for Plaintiffs*

12

SF2011203501

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

State of California's Opp. to BMCC's Mot. Quash (CGC-11-515784)