1
2
3
4

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:  (202) 237-6131
Email:  wisaacson@bsfllp.com

5
6
7
8
9

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665
Email: piovieno@bsfllp.com
Email: anardacci@bsfllp.com

10

*Liaison Counsel for Direct Action Plaintiffs*
*[Additional Counsel Listed on Signature Page]*

11
12
13

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

14
15

IN RE CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION

16
17

This document relates to:

18

*Best Buy Co, Inc. v. Technicolor
SA*, No. 13-cv-05264;

19

*Siegel v. Technicolor SA*, No. 13-cv-00141;

20
21

*Costco Wholesale Corp. v. Technicolor SA
(f/k/a Thomson SA) et al.*, No. 13-cv-05723;

22
23

*Electrograph Systems, Inc. v. Technicolor SA*,
No. 2:13-cv-05724;

24

*Interbond Corp. of Am. v. Technicolor SA*, No.
13-cv-05727;

25
26

*Office Depot, Inc. v. Technicolor SA*, No. 13-cv-05726;

27
28

*P.C. Richard & Son Long Island Corp. v.
Technicolor SA*, No. 13-cv-05725

Master File No. 07-5944 SC

MDL No. 1917

**DIRECT ACTION PLAINTIFFS'
OPPOSITION TO THOMSON
CONSUMER'S MOTION TO
DISMISS COMPLAINTS**

**Judge:  Hon. Samuel P. Conti**
**Court:  Courtroom 1, 17th Floor**
**Date:    March 7, 2014**
**Time:   10 a.m.**

<u>**REDACTED VERSION OF
DOCUMENT SOUGHT TO BE
PARTIALLY SEALED**</u>

1

2

3

4

5

*Sears, Roebuck & Co. v. Technicolor SA*, No. 13-cv-05262;

*Schultze Agency Services, LLC v. Technicolor SA*, No. 13-cv-05668; and

*Target Corp. v. Technicolor SA,* No. 13-cv-05686.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Introduction ........................................................................................................................... 1

Factual Background .............................................................................................................. 2

Argument .............................................................................................................................. 5

    I.      The DAPs' Claims are Timely Because the Limitations Period Has Been Tolled ....... 5

        A.    Thomson Consumer and its Co-Conspirators Fraudulently Concealed the
            Conspiracy ................................................................................................... 6

        B.    The DAPs Fraudulent Concealment Allegations Are More than Adequate ........... 7

            i.    The DAPs' complaints allege that Thomson Consumer directly
               participated in concealing the conspiracy ..................................... 8

            ii.    The fraudulent concealment conduct of Thomson Consumer's co-
               conspirators is attributable to Thomson Consumer for tolling purposes,
               regardless of Thomson Consumer's purported withdrawal from the
               conspiracy ................................................................................... 8

            iii.  In light of Thomson Consumer's active concealment of the conspiracy,
               DAPs have adequately alleged their diligence ........................... 11

        C.    *American Pipe* Tolled the DAPs' Claims from November 2007 until November
            2011 ........................................................................................................... 13

        D.    Government Action Tolled the DAPs' Claims from February 2009 until
            Today .......................................................................................................... 15

II.    The Doctrine of Laches Does Not Bar the DAPs' Claims ................................................. 19

        A.    The DAPs did not unreasonably delay bringing suit against Thomson
            Consumer ................................................................................................... 20

        B.    Thomson Consumer makes no showing of evidentiary or expectations-based
            prejudice ..................................................................................................... 21

            1.    Thomson Consumer's conclusory allegations are insufficient to
               prove evidentiary prejudice ....................................................... 21

            2.    Thomson Consumer has not suffered expectations-based prejudice ........ 22

III.    The DAPs Have Adequately Alleged Antitrust Standing ................................................. 23

Conclusion ........................................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>CASES</u>

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
   988 F.2d 1157(Fed. Cir. 1993)................................................................................. 22

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974) ................................................................................... 1, 6, 13

*Arivella v. Lucent Techs., Inc.*,
   623 F. Supp. 2d 164 (D. Mass. 2009) ...................................................................... 15

*Aurora Enters v. Nat'l Broad Co.*,
   688 F.2d 689 (9th Cir. 1982)................................................................................... 20

*Barker v. Am. Mobil Power Corp.*,
   64 F.3d 1397 (9th Cir. 1995)..................................................................................... 9

*Barneby v. E.F. Hutton & Co.*,
   715 F. Supp. 1512 (M.D. Fla. 1989) ....................................................................... 15

*Bartlett v. Miller and Schroder Municipals, Inc.*,
   355 N.W.2d 435 (Minn. Ct. App. 1984) ................................................................. 15

*Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*
   620 F.2d 1360 (9th Cir. 1980).................................................................................... 9

*Boone v. Citigroup, Inc.*,
   416 F.3d 382 (5th Cir. 2005).................................................................................... 13

*Bratton v. Bethlehem Steel Corp.*,
   649 F.2d 658 (9th Cir. Cal. 1980) ........................................................................... 20

*Carson v. Independent School Dist. No. 623*,
   392 N.W.2d 216 (Minn. 1986)................................................................................. 15

*Chipanno v. Champion Int'l. Corp.*,
   702 F.2d 827 (9th Cir. 1983)........................................................................ 14, 17, 18

*Conerly v. Westinghouse Elec. Corp.*,
   623 F.2d 117 (9th Cir. 1980)................................................................................... 12

*Conmar Corp. v. Mitsui & Co., Inc.*,
   858 F.2d 499 (9th Cir. 1988)......................................................................... 6, 7, 12

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001)................................................................................... 21

*Dungan v. Morgan Drive-Away, Inc.*,
   570 F.2d 867 (9th Cir. 1978)................................................................................... 16

*Evergreen Safety Council v. RSA Network Inc.*,
   697 F.3d 1221 (9th Cir. 2012).................................................................................. 21

*Hatfield v. Halifax PLC*,
   564 F.3d 1177 (9th Cir. 2009).................................................................................. 15

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
   885 F. Supp. 2d 617 (S.D.N.Y. 2012)...................................................................... 17

*Hospital Bldg. Co. v. Trustees of the Rex Hosp.*,
   425 U.S. 738 (1976) ................................................................................................. 11

*In re Antibiotic Antitrust Actions*,
   333 F. Supp. 317 (S.D.N.Y. 1971) ..................................................................... 18, 19

*In re Ariz. Dairy Prods. Litig.*,
   No. 74-cv-594, 736, 1984 WL 21984 (D. Ariz. Nov. 5, 1984) ............................. 19

*In re Beaty*,
   306 F.3d 914 (9th Cir. 2002) ................................................................................. 22

*In re Catfish Antitrust Litig.*,
   826 F. Supp. 1019 (N.D. Miss. 1993) .................................................................... 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   738 F. Supp. 2d 1011 (N.D. Cal. 2010) .......................................................... passim

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 07-5944, 2013 WL 4505701 (N.D. Cal. Aug. 31, 2013) ........................ 1, 2, 6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 07-5944, 2010 WL 9543295 (N.D. Cal. Feb. 5, 2010) ...................................... 9

*In re Elec. Carbon Prods. Antitrust Litig.*,
   333 F. Supp. 2d 303 (D.N.J. 2004) ........................................................................ 11

*In re Evanston Nw. Healthcare*,
   No. 07-cv-4446, 2008 WL 2229488 (N.D. Ill. May 29, 2008) .............................. 19

*In re Katz Interactive Call Processing Patent Litig.*,
   882 F. Supp. 2d 1123 (C.D. Cal. 2010) .................................................................. 20

*In re Linerboard Antitrust Litig.*,
   223 F.R.D. 335 (E.D. Pa. 2004) ............................................................................. 14

*In re Rubber Chem. Antitrust Litig.*,
   504 F. Supp. 2d 777 (N.D. Cal. 2007) ......................................................... 6, 9, 12

*In re Scrap Metal Antitrust Litig.*,
   527 F.3d 517 (6th Cir. 2008) .................................................................................... 9

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Best Buy)*,
   No. 07-1827, 2013 WL 254873 (N.D. Cal. Jan. 23, 2013) ............................... 2, 24

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Proview)*,
   No. 07-1827, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) .................................. 24

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*,
   No. 07-1827, 2012 WL 5949585 (N.D. Cal. Nov. 28, 2012)…………….......................2, 24

*In re Urethane Antitrust Litig.*,
   663 F. Supp. 2d 1067 (D. Kan. 2009) .............................................................. 10, 11

*IXYS Corp. v. Advanced Power Tech., Inc.*,
   321 F. Supp. 2d 1156 (N.D. Cal. 2004) ................................................................. 22

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002)............................................................................. 19, 20

*Lee v. Grand Rapids Board of Education*,
   148 Mich. App. 364, 384 N.W.2d 165 (Mich. 1986 ............................................. 15

*Leh v. Gen. Petroleum Corp.*,
   382 U.S. 54 (1965) ..................................................................................... 15, 16, 17

*Lum v. Bank of Am.*,
   361 F.3d 217 (3d Cir. 2004).................................................................................... 11

*McCune v. F. Alito Fish Co.*,
  597 F.2d 1244, 1250 (9th Cir. 1979) ........................................................... 21

*Minnesota: See Jenson v. Allison-Williams Co.*,
  1999 U.S. Dist. LEXIS 22170 (S.D. Cal. Aug. 23, 1999) ..................................... 15

*Mishewal Wappo Tribe of Alexander Valley v. Salazar*,
  No. 5:09-cv-02502, 2011 WL 5038356  (N.D. Cal. Oct. 24, 2011) ......................... 20

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
  198 F.3d 823 (11th Cir. 1999) ................................................................... 10

*Mt. Hood Stages, Inc. v. Greyhound Corp.*,
  555 F.2d 687(9th Cir. 1977) (tolling doctrines may be .......................................... 6

*Riddell v. Riddell Wash. Corp.*,
  866 F.2d 1480 (D.C. Cir. 1989) ................................................................. 8, 9

*Rutledge v. Boston Woven Hose & Rubber Co.*,
  576 F.2d 248 (9th Cir. 1978) ...................................................................... 12

*Sandvik v. Alaska Packers Ass'n*,
  609 F.2d 969 (9th Cir. 1979) ...................................................................... 20

*Seaboard Corp. v. Marsh Inc.*,
  284 P.3d 314 (Kan. 2012) .......................................................................... 15

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,
  621 F.3d 981 (9th Cir. 2010) ...................................................................... 22

*Sensible Foods, LLC v. World Gourmet, Inc.*,
  No. 11-2819, 2011 WL 5244716  (N.D. Cal., Nov. 3, 2011) ....................... 2, 19, 20

*State of New York v. Hendrickson Bros., Inc.*,
  840 F.2d 1065 (2d. Cir. 1988) ...................................................................... 9

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
  875 F.2d 1369 (9th Cir. 1989) ..................................................................... 18

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
  465 F.3d 1102 (9th Cir 2006) ...................................................................... 21

*Tosti v. City of Los Angeles*,
  754 F.2d 1485 (9th Cir. 1985) ..................................................................... 14

*Univ. of Pittsburgh v. Champion Prods. Inc.*,
  686 F.2d 1040 (3d Cir. 1982) ...................................................................... 22

*Williams v. Dow Chem. Co.*,
  No. 01-cv-4307, 2004 WL 1348932 (S.D.N.Y. June 16, 2004) ........................... 15

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  401 U.S. 321 (1971) ................................................................................. 14

STATUTES

15 U.S.C. § 16(i) ............................................................................. passim

1    The Direct Actions Plaintiffs (the "DAPs") subject to Thomson Consumer's Motion to

2    Dismiss (the "Motion") [Dkt. No. 2353] hereby submit their Opposition to the Motion.

3                                   **INTRODUCTION**

4         In its Motion, Thomson Consumer retreads the same arguments that it has already made

5    in its motion to dismiss Sharp's case and that Mitsubishi has already made in its motion to

6    dismiss the DAP cases at issue here.[1]  As with these past motions, Thomson Consumer's Motion

7    is without merit and should be denied.

8         First, Thomson Consumer argues that the DAPs' claims are barred by the statute of

9    limitations.  The DAPs' claims are timely because the limitations period has been tolled by a

10   combination of tolling doctrines.  First, fraudulent concealment tolled the statute of limitations

11   on the DAPs' claims until November 2007, when governmental investigations into the CRT

12   industry became public.  This Court has already ruled that nearly identical fraudulent

13   concealment allegations made by Plaintiffs in this litigation (including the DAPs) are sufficient

14   to survive a motion to dismiss.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944,

15   2013 WL 4505701, at *4 (N.D. Cal. Aug. 31, 2013) [Dkt. No. 1856]; *see also In re Cathode Ray

16   Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024 (N.D. Cal. 2010) [Dkt No. 665].

17        In addition, the limitations period for the DAPs' claims was tolled from November 2007

18   to November 2011 pursuant to the class action tolling doctrine set forth in *American Pipe &*

19   *Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).  The first putative class action complaints were

20   filed in November 2007 and the DAPs filed their initial complaints in November 2011, and thus

21   *American Pipe* applied in the interim.  Moreover, the limitations period for the DAPs' claims

22   was tolled beginning in February 2009 and continuing through the present because of criminal

23   actions instituted by the United States Department of Justice ("DOJ").  All of the DOJ's criminal

24   actions remain pending.  Pursuant to the terms of 15 U.S.C. § 16(i), governmental tolling

25   remains in effect during the pendency of these actions and for one year thereafter.  Thomson

26   Consumer's arguments to the contrary have no basis in law or fact.

---

27   [1]  *See* Dkt. Nos 2236, 2286, 2317 (Thomson briefing) and Dkt Nos. 2299; 2358-4; 2374-4
28   (Mitsubishi briefing).

Second, Thomson Consumer argues that the DAPs' claims are barred by laches. As this Court has recognized, it is exceptionally difficult to meet the standard for a laches defense in a motion to dismiss. *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819, 2011 WL 5244716 at *4-5 (N.D. Cal., Nov. 3, 2011) (Conti, J.) (denying motion to dismiss on laches grounds). Moreover, Thomson Consumer has made no showing that the DAPs unreasonably delayed in bringing suit against it or that it has been prejudiced as a result. Rather, Thomson Consumer makes unsupported conclusory statements about the unreasonableness of the timing of the DAPs' complaints and the nature of the prejudice they purport to have suffered. Thomson Consumer's assertions, however, do not provide support for the specific legal determinations necessary to find either the delay or prejudice elements of laches.

Third, Thomson Consumer argues that the DAPs have not pled with sufficient specificity the identity of their CRT Product suppliers and those suppliers' ownership or control relationships with Defendants and co-conspirators. This Court has already ruled that the DAPs have standing to pursue their federal claims under the *Illinois Brick* ownership or control exception. *In re Cathode Ray Tube (CRT) Antitrust Litig* No. 07-5944, 2013 WL 4505701 (N.D. Cal. Aug. 21, 2013) [Dkt. No. 1856]. Moreover, it is well-established that the specificity Thomson Consumer seeks is not required by Rule 8, as Judge Illston has twice ruled when this very same argument was made in the *TFT-LCD Antitrust Litigation*. *In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*, No. 07-1827, 2012 WL 5949585, at *3 (N.D. Cal. Nov. 28, 2012); *In re TFT-LCD (Flat Panel) Antitrust Litig. (Best Buy)*, No. 07-1827, 2013 WL 254873, at *3-4 (N.D. Cal. Jan. 23, 2013).

## FACTUAL BACKGROUND

**The DAPs' allegations.** In each of the complaints Thomson Consumer seeks to dismiss, the DAPs allege in significant detail the existence of a long-running, global conspiracy to fix the prices of CRTs. Electrograph FAC ¶ 1. Each of these complaints details in over 50 paragraphs how the "CRT conspiracy was effectuated through a combination of group and bilateral meetings." *Id.* ¶ 126; ¶¶ 125-181.

**Thomson Consumer participated in the CRT conspiracy.** The DAPs further detail in

1   their complaints actions taken by Thomson Consumer in furtherance of the conspiracy, alleging

2   that "[b]etween at least 1995 and 2005, Thomson [Consumer and/or Thomson SA] participated

3   in and/or was a party to over 15 bilateral meetings, including 'green meetings in the United

4   States, with the Defendants and co-conspirators in which unlawful agreements as to, *inter alia*,

5   price, output restrictions, and/or customer and market allocation of CRTs occurred."   *Id.* ¶ 152.

6   Moreover, the DAPs allege that from at least 1995 through 2005, "Thomson Consumer directly

7   participated in the conspiracy in the United States," *id.* ¶ 153, and "participated thereafter

8   through Videocon."   *Id.* ¶ 155.

9       The DAPs then set forth at least nine specific examples spanning the conspiracy period in

10  which Thomson Consumer met with its competitors for the purpose of carrying out the

11  conspiracy.  *Id.* ¶¶ 152-54.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26      Moreover, in a 2011 Annual Report (released in late March 2012), Thomson Consumer's

27  parent company admitted that "it played a minor role in the alleged [CRT price-fixing

28  conspiracy]."   *Id.* ¶ 149.   While the DAPs dispute that Thomson's role was minor, what cannot

be contested is that Thomson *by its own admission* was one of the conspirators.

**Thomson Consumer and its co-conspirators fraudulently concealed the conspiracy.** The DAPs also allege that the conspirators went to great lengths to hide their coordination. *Id.* ¶ 232-246. For example, meetings were held in secret and Defendants attempted to prevent the creation of written records by meeting in person and discouraging participants from taking minutes. *Id.* ¶ 237. Meeting attendees "were instructed on more than [one] occasion not to disclose the fact of these meetings to outsiders." *Id.* Defendants "coordinate[d] and exchange[d] in advance the texts of the proposed communications with customers" containing "pretextual reasons for their pricing actions and output restrictions." *Id.* ¶ 234. Thomson Consumer took an active role in the concealment. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The DAPs, therefore, "could not have discovered the alleged conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, conspiracy or combination," *e.g.*, BrandsMart FAC ¶ 221, until governmental antitrust bodies' investigations of price-fixing in the CRT industry became public in November 2007.

**Procedural posture.** On November 26, 2007, the first putative class action complaint was filed on behalf of direct purchasers of CRTs and CRT Products.[2] Likewise, on November 13, 2007, the first putative class-action complaint was filed on behalf of indirect purchasers of CRTs and CRT Products.[3] Thomson Consumer entered into a tolling agreement with the indirect purchaser plaintiff ("IPP") class first in November 2011, and again in October 2012.[4]

---

[2] *Crago, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, Case No. 07-5944 SC (N.D. Cal) [Dkt. No. 1].

[3] *Kindt v. Matsushita Electric Industrial Co., Ltd. et al*, Case No. 1:07-cv-10322-GBD (S.D.N.Y.) [Dkt. No. 1].

[4] IPPs' Motion to Amend Complaint [Dkt. No. 1325] at 10. In August 2012, the IPP class sought to amend their complaint to add Thomson SA and Thomson Consumer as defendants. On

On February 10, 2009, a federal grand jury indicted Cheng Yuan Lin, a/k/a C.Y. Lin, a Taiwanese CRT executive, for his role in conspiracies to fix the prices of color display tubes ("CDTs") and color picture tubes ("CPTs"). Office Depot FAC ¶ 187. Grand juries subsequently indicted five more CRT executives for their roles in the conspiracy. *Id.* ¶¶ 188-90. These indictments remain open.

In November 2011, the DAPs filed complaints against certain CRT conspirators, not including Thomson Consumer. On August 22, 2012, the IPPs filed a motion for leave to amend their complaint to add claims against the Thomson entities, Mitsubishi, and Videocon. Dkt. No. 1325. Following the IPPs' motion, the DAPs identified the documents on which the IPPs relied, confirmed their substance, and located additional evidence implicating Thomson Consumer. The DAPs then moved to amend their complaints on March 26, 2013. On September 26, 2013, the Court declined to allow the DAPs to add claims against Thomson Consumer. Dkt. No. 1959.

On November 11-13, 2013, the DAPs filed the instant complaints against the Thomson entities, Mitsubishi, and Videocon. On December 20, 2013, certain of the DAPs amended their complaints. Dkt. No. 2279. On January 27, 2014, Thomson Consumer moved to dismiss the operative DAP complaints.

## ARGUMENT

## I.   THE DAPS' CLAIMS ARE TIMELY BECAUSE THE LIMITATIONS PERIOD HAS BEEN TOLLED.

The DAPs' claims are timely because the limitations period has been tolled by a combination of three tolling doctrines. The DAPs allege in their complaints that Thomson Consumer fraudulently concealed the conspiracy, thus tolling the statute of limitations until the DAPs became aware of the conspiracy when it became public at the end of 2007. *Conmar Corp. v. Mitsui & Co., Inc.*, 858 F.2d 499, 502 (9th Cir. 1988). Additionally, the DAPs' claims were tolled pursuant to the class-action tolling doctrine set forth in *American Pipe & Constr. Co. v.*

December 27, 2012, this Court granted the parties' joint stipulation whereby the class agreed to withdraw its motion, but maintains its "right to file a separate class action against Thomson at a later date asserting similar claims as those contained in the Complaint." Dkt. No. 1505; Dkt. No. 1423.

*Utah*, 414 U.S. 538, 554 (1974).   The *American Pipe* doctrine tolled the limitations period starting from the filing of the initial class-action complaints in November 2007, until November 14, 2011, when the DAPs brought their first set of claims.   Furthermore, in February 2009, the limitations period was again tolled pursuant to 15 U.S.C. § 16(i), when federal grand juries began returning indictments against individuals for participating in the conspiracy.  BrandsMart FAC ¶ 9.   Government actions relating to the CRT conspiracy remain ongoing, and so the limitations period remains tolled.  15 U.S.C. § 16(i).

Accordingly, through a combination of these tolling doctrines, the limitations period has not run and the DAPs' claims remain timely.  *See Mt. Hood Stages, Inc. v. Greyhound Corp.*, 555 F.2d 687, 698 n.26 (9th Cir. 1977) (tolling doctrines may be "tacked" together), *vacated on other grounds*, 437 U.S. 322, 337 (1978).

### A. Thomson Consumer and its Co-Conspirators Fraudulently Concealed the Conspiracy.

First, as this Court has previously concluded multiple times in this litigation, "it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly when the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 4505701, at *4 (N.D. Cal. Aug. 31, 2013) (quoting *In re Rubber Chem. Antitrust Litig.*, 504 F. Supp. 2d 777, 789 (N.D. Cal. 2007)) (and denying motion to dismiss on statute of limitations grounds); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024 (N.D. Cal. 2010) (same).  There is no reason for a different result here.

The DAPs have more than adequately alleged that the statute of limitations on the DAPs' claims was tolled until November 2007 by Thomson Consumer and its co-conspirators' fraudulent concealment of the price-fixing conspiracy.  In order to toll the limitations period based on fraudulent concealment, a plaintiff must show that defendants actively concealed the conspiracy, and that plaintiff had neither actual nor constructive knowledge of the facts giving rise to its claim, despite its diligence in trying to uncover those facts.  *Conmar*, 858 F.2d at 502.

The DAPs' complaints allege in detail how Defendants affirmatively misled their

1    customers and the public into believing that CRT prices were governed by market forces, rather

2    than Defendants' collusion.  The complaints explain how Defendants carried out the conspiracy

3    through "secret meetings [and] surreptitious communications . . . in order to prevent the

4    existence of written records."  *E.g.*, BrandsMart FAC ¶¶ 221.  Defendants agreed to "give

5    pretextual reasons for price increases and output reductions to the customers," *id.* ¶ 225 by, for

6    instance, blaming a 2004 price increase "on a shortage of glass shells use[d] for manufacturing

7    CRT monitors."  *Id. ¶* 228.  In addition, when Defendants' top executives attended conspiracy

8    meetings, they "agreed to stagger their arrivals and departures at such meetings to avoid being

9    seen in public with each other and with the express purpose and effect of keeping them secret."

10   *Id.* ¶ 222.  Further, Defendants and their co-conspirators instructed meeting attendees "not to

11   take minutes" and "not to disclose the fact of these meetings to outsiders."  *Id.* ¶ 222.

12        The Court has already analyzed fraudulent-concealment allegations that are essentially

13   identical to those the DAPs have made here, and concluded that they "are sufficient to deny" this

14   type of motion.  *In re CRT*, 738 F. Supp. 2d at 1025.  The Court pointed to allegations that

15   "Defendants gave pretextual reasons for price increases," "coordinated their misleading

16   announcements," and "took steps to keep their meetings secret."  *Id.* at 1024.  The DAPs allege

17   the same here.  These allegations are more than sufficient, particularly in light of the fact that the

18   DAPs have not yet had access to discovery from Thomson Consumer.

19        **B.  The DAPs' Fraudulent Concealment Allegations Are More than Adequate.**

20        Thomson Consumer also contends that the DAPs' fraudulent-concealment allegations are

21   insufficient because they do not state with particularity (1) Thomson Consumer's direct

22   involvement in the concealment of the conspiracy, (2) concealment conduct that may be imputed

23   to Thomson Consumer, or (3) the DAPs' specific acts of diligence in attempting to uncover their

24   claims.  This argument fails on all counts.

25        i.    The DAPs' complaints allege that Thomson Consumer directly participated in
                concealing the conspiracy.

26

27        While not required for a finding of fraudulent concealment, the DAPs' complaints do

28   contain specific allegations as to Thomson Consumer's involvement in the cover-up of the

1   conspiracy. █████████████████████████████████████

2   ████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████

4   ███████████████████████████████   *See, e.g.,* Electrograph FAC ¶¶ 152, 238.   The

5   complaints further state that Thomson Consumer attended numerous bilateral and multilateral

6   meetings, including green meetings. *See, e.g.*, Electrograph FAC ¶ 153.  The complaints then

7   allege in depth how the conspirators used these meetings to carry out and conceal the conspiracy.

8   *See, e.g., id.* ¶¶ 125-81, 238-39.   Thus, contrary to Thomson Consumer's assertion, the

9   complaints set forth detailed examples of Thomson Consumer's direct participation in

10  Defendants' fraudulent concealment.

11          ii.     The fraudulent-concealment conduct of Thomson Consumer's co-conspirators is
                    attributable to Thomson Consumer for tolling purposes, regardless of Thomson
12                  Consumer's purported withdrawal from the conspiracy.

13          Thomson Consumer contends that the Court should rule on a motion to dismiss that it

14  withdrew from the conspiracy.   This Court has already rejected similar arguments as to

15  withdrawal, stating that self-serving suggestions that defendants "withdrew from the alleged

16  conspiracy . . .  raise[] factual questions inappropriate for resolution at the motion-to-dismiss

17  stage."  In re CRT, 738 F. Supp. 2d at 1025.

18          In addition to having alleged Thomson Consumer's direct participation in Defendants'

19  fraudulent concealment, the DAPs also set forth detailed allegations of fraudulent concealment

20  by other conspirators that can be imputed to Thomson Consumer.  Electrograph FAC ¶¶ 236-43.

21  The law is clear that steps taken by Thomson Consumer's co-conspirators to conceal the price-

22  fixing conspiracy can be imputed to Thomson Consumer.  *Riddell v. Riddell Wash. Corp.*, 866

23  F.2d 1480, 1493 (D.C. Cir. 1989).  In pleading fraudulent concealment of a global conspiracy

24  involving numerous defendants, detailed defendant-by-defendant allegations are not required.

25  As the former Special Master in this action previously held:

26          Defendants' motions emphasize[] that plaintiffs have not alleged fraudulent
            concealment on a defendant-by-defendant basis. . . .
27
            It is one thing to compel the plaintiffs to plead that each defendant is a part of the
28          conspiracy. It is another to require the plaintiffs to plead facts as to what each

defendant did within the conspiracy, including concealment. And indeed, such a requirement would be contrary to a general principle of conspiracy law that once a party becomes a member of a conspiracy he is bound by all of the acts of the other conspirators. . . .  [A]pplication of the pleading requirements for fraudulent concealment must recognize that by their very nature the acts of fraudulent concealment would not be readily apparent to even a diligent investigation by plaintiffs, and particularly not in the details of which defendants did what in order to conceal.

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2010 WL 9543295, at *10 (N.D. Cal. Feb. 5, 2010), *R&R adopted by* 738 F. Supp. 2d 1011.

Other courts agree.  "Where the original conspiracy contemplates concealment, or where the concealment is in furtherance of that conspiracy, affirmative acts of concealment by one or more of the conspirators can be imputed to their co-conspirators for purposes of tolling the statute of limitations." *Riddell*, 866 F.2d at 1493 (citing, *e.g.*, *State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1085 (2d. Cir. 1988)); *see also Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980) ( "Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability"); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 538 (6th Cir. 2008) ( "Fraudulent concealment . . . may be established through the acts of co-conspirators," and noting that the defendant could cite no authority to the contrary).  And in fact, the only case that Thomson Consumer cites to the contrary did not involve a conspiracy or co-conspirator imputation.  Mot. at 12 (citing *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995) (finding no imputation of fraudulent concealment allegations between a trustee and his predecessor)).

So long as the conspiracy remains concealed, the limitations period remains tolled as to all conspirators, regardless of when their individual participation in the conspiracy terminated. *See Rubber Chem.*, 504 F. Supp. 2d at 789-90 (holding that the statute of limitations began to run for claims against a defendant as of the date the conspiracy was actually disclosed, not the date of the defendant's withdrawal from the conspiracy).  Thomson Consumer cannot escape liability for a conspiracy in which it participated and which it fraudulently concealed merely by withdrawing before it was made public.  To hold otherwise would allow Thomson Consumer to benefit from its co-conspirators' continued fraudulent concealment.[5]

---

[5] Thomson Consumer relies on a superseded version of *Morton's Market, Inc. v. Gustafson's*

1    Further, mere exiting from an industry does not meet a Defendant's burden in

2    establishing withdrawal from a conspiracy. *United States v. Smith*, 623 F.2d 627, 631 (9th Cir.

3    1980) ("Withdrawal from a conspiracy requires a disavowal of the conspiracy or an affirmative

4    action that would have defeated the purpose of the conspiracy, or 'definite, decisive and positive'

5    steps to show that the conspirator's disassociation from the conspiracy is sufficient") (citation

6    omitted); *see also United States v. Loya*, 807 F.2d 1483, 1493 (9th Cir. 1987) (same).

7    Finally, Thomson Consumer asserts that the DAPs cannot toll the statute of limitations

8    beyond 2004 because the last dated act of fraudulent concealment alleged in the complaints

9    occurred in 2004. Mot. at 11 (citing *In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1078-

10   79 (D. Kan. 2009)). This argument not only ignores numerous post-2004 allegations in the

11   complaints, but is also a fundamental misstatement of the law. <u>First</u>, the DAPs specifically

12   allege that Thomson Consumer itself continued to fraudulently conceal the conspiracy from 2005

13   through 2007. The complaints allege that Thomson Consumer participated in the conspiracy

14   between 2005 and 2007 through Videocon and its subsidiary, TDA. *E.g.,* Electrograph FAC ¶¶

15   155-58. From 2005 through 2007, "Videocon participated in several glass meetings and multiple

16   bilateral meetings with its competitors," *id.* ¶ 156, ███████████████████████████

17   ████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████

21   ██████ Such meetings were "organized . . . to avoid detection," were held "in secret" and were

22   used in part to "orchestrate the giving of pretextual reasons for their pricing actions and output

23

24   *Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999), for its argument that the sale of a business
     constitutes withdrawal from a conspiracy, and marks the beginning of the limitations period for

25   claims against the withdrawing party. However, in the amended version of that opinion, the
     court made clear that withdrawal from a conspiracy is not relevant to the running of the

26   limitations period, so long as the conspiracy remains undisclosed. 211 F.3d 1224 (11th Cir.
     2000) ("As to Pet, we hold that it effectively withdrew from the conspiracy in 1985 and, as to it,

27   these actions are not timely-filed *unless the statute was equitably tolled by fraudulent
     concealment. If so, Pet would be liable for any price-fixing activity prior to its withdrawal.*")

28   (emphasis in original).

1    restrictions." *Id.* ¶ 234.

2         Second, contrary to Thomson Consumer's assertion, there is no requirement that

3    plaintiffs allege the dates of each act of concealment to mark the beginning and end of the

4    concealment period.  Rather, to satisfy the pleading standard of Rule 9(b), a plaintiff need only

5    use some "means [which] inject[s] precision and some measure of substantiation into their

6    allegations of fraud."  *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 315

7    (D.N.J. 2004) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)); s*ee also In re*

8    *Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1028 (N.D. Miss. 1993) (rejecting defendants'

9    contention that the dates and locations of each act of fraudulent concealment must be pleaded,

10   particularly in light of the fact that "the proof is largely in the hands of the alleged conspirators")

11   (quoting *Hospital Bldg. Co. v. Trustees of the Rex Hosp.*, 425 U.S. 738, 746 (1976)).  Here, the

12   DAPs have alleged with particularity the means of concealment, the parties involved, the

13   contents of numerous documents describing and encouraging the concealment, and the dates of

14   several such documents.  Electrograph FAC ¶¶ 125-81, 234-43.  These allegations are more than

15   sufficient to inject particularity into the DAPs' fraudulent-concealment pleadings.

16        In arguing otherwise, Thomson Consumer relies on *In re Urethane*, which is not

17   persuasive here for two reasons.  First, not only is it a case from a district court outside of the

18   Ninth Circuit, but it has apparently never been cited for the point for which Thomson Consumer

19   cites it.  Second, the issue in that case was when the defendants' fraudulent concealment began,

20   not when it ended.  663 F. Supp. 2d at 1078.  Here, Thomson Consumer concedes that DAPs

21   have alleged fraudulent concealment up through 2004, and there is no dispute that the conspiracy

22   was made public in 2007.  Even assuming that the DAPs only alleged concealment activities

23   through 2004, such activities were clearly enough to keep the conspiracy hidden up through

24   2007, especially since Thomson Consumer took no steps to disclose it.

25        iii.    In light of Thomson Consumer's active concealment of the conspiracy, DAPs
             have adequately alleged their diligence.

26

27        Thomson Consumer erroneously asserts that the DAPs' allegations are insufficient

28   because they do not specifically plead the DAPs' attempts to uncover their claims.  To the

contrary, a party has an obligation to plead specific acts of diligence only where there are publicly available facts "that would excite the inquiry of a reasonable person." *Conmar*, 858 F.2d at 504.[6]  Here, Thomson Consumer and its co-conspirators actively and successfully prevented such facts from being disclosed to the public until government investigations began in November 2007.

In a comparable case, *In re Rubber Chem. Antitrust Litig.*, this Court held similar allegations as to diligence as those made by DAPs to be sufficient at the pleading stage.  In that case, as in the present one, the plaintiffs "alleged, with specificity, numerous affirmative acts of concealment in furtherance of the conspiracy . . . including secret meetings to set prices, agreement not to publicly discuss the nature of the scheme, destruction of documents that might evidence their actions, and pretextual justifications for the inflated prices."  504 F. Supp. 2d at 788.  The Court determined that "[s]uch facts, if true, would not give rise to any information that would excite the inquiry of a reasonable person and thereby require Plaintiffs to engage in affirmative steps to attempt to discover the conspiracy."  *Id.*  Therefore, the Court held that the plaintiffs' allegations that "they could not have discovered the alleged conspiracy at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their Co–Conspirators" were sufficient, noting that "Plaintiffs are not under a duty continually to scout around to uncover claims which they have no reason to suspect they might have."  *Id.*  The same logic applies here, where the DAPs alleged that, as a result of Defendants' fraudulent concealment, the DAPs had "neither

---

[6] Thomson Consumer cites two cases for its proposition that a plaintiff must plead specific acts of diligence.  Mot. at 13 (citing *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980); *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978)).  Neither case supports Thomson Consumer's contention.  In both cases, the court found that the plaintiff failed to plead *any* facts supporting fraudulent concealment.  *See Conerly*, 623 F.2d at 121 ("[The complaint] does not allege any facts, however, tending to excuse his failure to discover Westinghouse's misconduct for a period of twenty-four years."); *Rutledge*, 576 F.2d at 250 (plaintiff did not plead defendant's affirmatively misleading conduct).  Moreover, in *Conerly*, the plaintiff brought a § 1981 action for employment discrimination.  The suit was brought twenty-seven years after the plaintiff was laid off and rehired by the defendant.  623 F.2d at 118-19.  The court found a failure to plead diligence because, "[u]pon his return to work, Conerly could have observed whites with less seniority who had remained on the job."  *Id.* at 121.  Thus, as in *Conmar*, the issue in *Conerly* was whether there was information available to the plaintiff that should have put him on notice of his claim.

actual nor constructive knowledge of the facts supporting [their] claim for relief despite their diligence in trying to discover the facts," until the investigations became public in November 2007. Electrograph FAC ¶ 232. The DAPs were not under a duty to search for the claims that Defendants were actively concealing, as specifically alleged in the amended complaints. Accordingly, the DAPs have adequately pleaded fraudulent concealment.

## C. American Pipe *Tolled the DAPs' Claims from November 2007 until November 2011.*

Thomson Consumer contends that *American Pipe* tolling does not apply to the DAPs' claims because Thomson Consumer was not named in any class action complaint relating to the CRT conspiracy. Mot. at 14 (citing *Boone v. Citigroup, Inc.*, 416 F.3d 382, 392 (5th Cir. 2005)). But Thomson Consumer's contention is based largely on out-of-circuit precedent that does not properly account for the purpose of the tolling doctrine as it is applied by the Supreme Court and the Ninth Circuit.

As the Supreme Court held in *American Pipe*, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. This rule exists to disincentivize members of the prospective class from rushing to the courthouse to intervene and proceed on an individual basis:

> A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable. . . . [A] rule requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions.

*Id.* at 553-54 (footnotes omitted).

In this case, the interests that *American Pipe* serves to protect are furthered by the application of the equitable tolling doctrine as to all members of the CRT conspiracy, regardless of whether they were named as defendants in the initial complaint. Here, the statute of limitations was tolled between November 2007 (when the first putative class-action complaints were filed) and November 14, 2011 (the date on which the DAPs filed their complaints). During this period, as passive members of a putative class, the DAPs had no access to discovery

1   materials or non-public information relating to the conspiracy.   But upon intervening and

2   investigating the scope of the conspiracy, the DAPs determined that they had claims relating to

3   the CRT conspiracy that had not been asserted by the class.

4       Under Thomson Consumer's application of *American Pipe*, the DAPs would be punished

5   for exercising the very course of conduct that Rule 23 and the Supreme Court urge and allow

6   parties to take—*i.e.*, wait until the first opt-out date in the case to examine their Rule 23 right to

7   proceed individually with their claims.   Not only would such a narrow tolling rule defeat the

8   remedial purpose of *American Pipe*, it would also conflict with other applications of tolling

9   provisions that extend broadly to suspend the statute of limitations for subsequent individual

10  claims that differ from the prior action, such as the government action tolling provision,

11  discussed at Section I(D).   *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 335

12  (1971) (holding that government tolling applies "even if the defendant named in the private suit

13  was named neither as a defendant nor as a coconspirator by the Government"); *see also*

14  *Chipanno v. Champion Int'l. Corp.*, 702 F.2d 827, 833 (9th Cir. 1983) ("section 16(i) must be

15  broadly construed to accomplish its remedial purpose").

16      Similarly, the Ninth Circuit permits *American Pipe* tolling of individual claims that differ

17  from those asserted by a prior class, provided that the class action "alerted [the defendant] to

18  make appropriate investigations." *See Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir.

19  1985) ("We find no persuasive authority for a rule which would require that the individual suit

20  must be identical in every respect to the class suit for the statute to be tolled").

21      Moreover, *American Pipe* tolling also applies to the DAPs' state-law claims where the

22  states at issue have adopted cross-jurisdictional tolling.[7] *See In re Linerboard Antitrust Litig.*,

23  223 F.R.D. 335 (E.D. Pa. 2004).   There is an interest in cross-jurisdictional tolling "[i]n the

24  antitrust context, [because] declining to adopt cross-jurisdictional class action tolling will invite

25  the filing of numerous protective, duplicative and in many cases, unnecessary, suits by class

26  _____

27  [7] The DAPs also direct the Court to their more comprehensive discussion of the application of cross-jurisdictional tolling to their state law claims in their Opposition to Defendants' Joint Motion to Dismiss [Dkt. No. 1384] at 18-20; *see also* DAPs' Motion to Adopt Rulings from

28  R&R Regarding Defendants' Motion to Dismiss [Dkt. No. 1749] at 16-18; DAPs' Objections to R&R Regarding Philips' and LG's Motion to Dismiss [Dkt. No. 1704] at 15-17.

members that want to consider filing claims under state antitrust law not included in a federal class action complaint." *Id.* at 346 (citation omitted).  In any event, independent of the federal interest involved, several of the states under whose laws the DAPs have brought claims would apply cross-jurisdictional tolling here.[8]

### D. Government Action Tolled the DAPs' Claims from February 2009 until Today.

The limitations period for the DAPs' claims was tolled again starting in February 2009 because of actions instituted by the United States Department of Justice relating to the CRT conspiracy.  By statute,

> [w]henever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws . . . the running of the statute of limitations in respect to every private or public right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter . . . ."

15 U.S.C. § 16(i).  The Supreme Court has instructed that "effect must be given to the broad terms of the statute itself – based in whole or in part on any matter complained of – in light of Congress' belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws."  *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59 (1965) (quotation and citation omitted).

---

[8] **California**: *See Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009) (applying California doctrine of equitable tolling based on class action filed in other jurisdiction); **Florida**: *See Barneby v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1528-29 (M.D. Fla. 1989) ("*American Pipe* tolling is properly extended" where Florida state law claims "involve the same 'evidence, memories, and witnesses' as are involved in the putative class action [in Indiana federal court]"); **Kansas**: *See Seaboard Corp. v. Marsh Inc.*, 284 P.3d 314, 327-28 (Kan. 2012) (applying Kansas savings statute on a cross-jurisdictional basis and holding that plaintiff's claim was timely filed because it was a putative plaintiff in a federal class action based on claims arising out of the same conduct, transaction, or occurrence); **Massachusetts**: *See Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 180 (D. Mass. 2009) (class action tolling should be interpreted with the goal of reducing multiplicity of actions, even if the individual plaintiff's claims are not identical to those asserted in the class complaint); **Michigan**: *See Lee v. Grand Rapids Board of Education,* 148 Mich. App. 364, 384 N.W.2d 165 (Mich. 1986) ("We conclude … that the federal district court action tolled the operation of the statute of limitations as to plaintiffs' claims pursuant to the Elliott-Larsen Civil Rights Act and the Michigan State Fair Employment Practices Act"); **Minnesota**: *See Jenson v. Allison-Williams Co.*, 1999 U.S. Dist. LEXIS 22170, *18-19 (S.D. Cal. Aug. 23, 1999) (federal class action tolled state law claim under Minnesota Securities Act, and citing to *Carson v. Independent School Dist. No. 623*, 392 N.W.2d 216, 223 (Minn. 1986) and *Bartlett v. Miller and Schroder Municipals, Inc.*, 355 N.W.2d 435, 439-440 (Minn. Ct. App. 1984)); **New York**: *Williams v. Dow Chem. Co.*, No. 01-cv-4307, 2004 WL 1348932, at *12 (S.D.N.Y. June 16, 2004) ("New York would likely apply *American Pipe* in a cross-jurisdictional context).

As such, the DAPs' four-year limitations period against Thomson Consumer was tolled on February 10, 2009, and remains tolled today.  On February 10, 2009, a federal grand jury indicted C.Y. Lin of Chunghwa for his involvement in conspiracies fixing the prices of CDTs and CPTs.  BrandsMart FAC ¶ 185.  The indictment, as described in a DOJ press release, charges that C.Y. Lin conspired with others "to fix the prices of two types of CRTs used in computer monitors and televisions."  *Id.*  The DOJ subsequently indicted five other Korean and Taiwanese executives who participated in the conspiracy.  *Id.* ¶¶ 186-89.[9]  <u>All of these actions remain pending.</u>

Tolling pursuant to Section 16(i) commenced when the first indictment issued, and the DAPs' claims will remain tolled throughout the pendency of the government actions.  *Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 868 (9th Cir. 1978).  In *Dungan*, the Ninth Circuit determined that "[t]he date of the return of the indictment fits comfortably within the statutory language" of § 16(i) requiring that proceedings be 'instituted.'  In discussing *Dungan*, Thomson Consumer asserts that courts must 'strike the exquisite balance' in applying § 16(i).  Mot. at 16.  In fact, the court reached the exact opposite conclusion.  The court specifically did not want to leave the question of what qualifies as 'instituting' proceedings to a case-by-case determination, noting that "considerable judicial time would be consumed in *striking the exquisite balance* between serving the objects of grand jury secrecy on the one hand and those of section 16(i) . . . on the other."  570 F.2d at 871 (emphasis added).  The court concluded that, by adopting the date of indictment as the date where proceedings are 'instituted,' it "confine[d] the [judge's] task to substantially more manageable proportions than would otherwise be the case."  *Id.* at 872.  Accordingly, because grand juries indicted C.Y. Lin and other CRT executives for their roles in the CRT conspiracy in 2009 and 2010, the limitations period for the DAPs' claims against Thomson Consumer has been tolled since that time.

Thomson Consumer first argues that tolling would not serve the purposes of 15 U.S.C. § 16(i) because the government's case against the criminal defendants has not progressed.  Mot. at

---

[9] *See United States v. Cheng,* No. 09-cr-00836 (N.D. Cal. Aug. 18, 2009); *United States v. Yeh,* No. 10-cr-00231 (N.D. Cal. Mar. 30, 2010); *United States v. Lee*, No. 10-cr-00817 (N.D. Cal. Nov. 9, 2010).

17.  Tellingly, Thomson Consumer cites no legal authority to support its contention that § 16(i) does not apply until some point after indictment or requires a court to assess the progress of a criminal proceeding.  The law is clear that application of § 16(i) does not depend on the success of the government's case or on the government's prosecutorial decisions. "Obviously suspension of the running of the statute of limitations pending resolution of the government action may not be made to turn on whether the United States is successful in proving the allegations of its complaint." *Leh*, 382 U.S. at 65; *see also Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, 832 (9th Cir. 1983) ( "a private litigant's right to his day in court [should not] depend upon the government's success in its litigation"); *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 885 F. Supp. 2d 617, 628-29 (S.D.N.Y. 2012) (in applying § 16(i), the court should not "speculate as to an array of conceivable conclusions implicit in prosecutorial decisions").  By asserting that the Court should draw the line at arraignment or at a certain number of years of fugitive status, Thomson Consumer is asking the Court to engage in the case-by-case process that *Dungan* rightly rejected.

Next, Thomson Consumer asserts that the DAPs' allegations do not sufficiently overlap with the allegations in the criminal indictments.  To the contrary, DAPs' claims overlap directly with the subject matter of the indictments, and are plainly "based in whole or in part on any matter complained of in [a government proceeding]."  15 U.S.C. § 16(i).  This Circuit has been clear that section 16(i) "must be broadly construed to accomplish its remedial purpose." *Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, 833 (9th Cir. 1983) (citing *Leh*, 328 U.S. at 59).  "[C]onsideration of whether a later private suit is 'based in whole or in part on any matter complained of' in a prior government action . . . must be limited to a comparison of the two complaints on their face." *Id.* at 832.  "If the necessary overlap is present, the purpose of the statute is served though there are differences in the allegations of the two complaints as to the means used, the defendants named, and the time period and geographic area involved." *Id.* at 832-33.

For example, the DAPs' complaints and the indictment against Mr. Lin each describe a conspiracy that includes both CDTs and CPTs. *Compare* BrandsMart FAC ¶ 3 ( "CPT Products

and CDT Products shall be referred to collectively as 'CRT Products'") *with United States v. Lin*, No. 09-cr-00131, at 1, 4-5 (N.D. Cal. Feb. 10, 2009) (Dkt. No. 1) (indicting C.Y. Lin for conspiracies involving both CDTs and CPTs). Both describe similar methods used in furtherance of the conspiracy. *Compare* BrandsMart FAC ¶¶ 111, 122 (describing secret meetings in "Taiwan, South Korea, Thailand, Japan, Malaysia, Indonesia and Singapore" where agreements were made to set "target prices") *with Lin*, at 5 (meetings were held in "Taiwan, Korea, Malaysia, China, Thailand, Indonesia, and elsewhere" where conspirators agreed to "charge prices of CPTs at certain target levels"). Both allege that the conspiracy affected the prices of CRTs sold in the United States. *Compare* BrandsMart FAC ¶ 209 (prices for CRTs were "raised, fixed, maintained and stabilized at artificially high and noncompetitive levels throughout the United States") *with Lin*, at 4 (conspirators fixed "the prices of [CPTs] to be sold in the United States and elsewhere").

With respect to the Lin indictment, Thomson Consumer argues that its geographic scope distinguishes it from the DAPs' complaints, and it claims that no allegations expressly connect the activities of Mr. Lin and Chunghwa to Thomson Consumer. Mot. at 19. However, even if the geographic scope of the complaint differed from the indictment, the overlap between the two would still be sufficient. *See Chipanno*, 702 F.2d at 829, 832-33 (tolling subsequent private claims which involved a timber market covering a broader geographic area than the government's case); *see also In re Antibiotic Antitrust Actions*, 333 F. Supp. 317, 321 (S.D.N.Y. 1971) (where a government action in the domestic market tolled a private action even though the action involved both domestic and foreign markets). But the Court need not reach that question, because there is no gap in relevant geographies: the DAPs' allegations and the Lin indictment both state that the global conspiracy directly impacted the U.S. market. *Compare* BrandsMart FAC ¶ 209, *with Lin*, at 4.

Thomson Consumer also argues that the overlap with respect to the indictments is insufficient because they do not cover CPTs. Mot. at 18. This argument is puzzling because Mr. Lin's indictment specifically covers CPTs. *Lin*, at 1, 4-5. And, whether, as Thomson Consumer argues, the CPT and CDT markets are entirely separate is a question of fact that cannot be

1   resolved on a motion to dismiss. *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369,

2   1374 (9th Cir. 1989) (defining a product market is a "factual inquiry for the jury").

3          Moreover, even the indictments alleging actions only with respect to CDTs provide the

4   overlap necessary to toll the statute of limitations.  There is no requirement that the markets at

5   issue be "identical."   For instance, in *In re Antibiotic Antitrust Actions*, 333 F. Supp. 317

6   (S.D.N.Y. 1971), plaintiffs alleged a conspiracy affecting "both the farm and human markets"

7   with "both domestic and international implications," as compared to the government's action in

8   only the "domestic human consumption market."  *Id.* at 321.  The court concluded that "there is

9   no logical reason why tolling should not also follow where the plaintiff incorporates the entire

10  Government case and alleges more in addition."  *Id.*; *see also In re Evanston Nw. Healthcare*,

11  No. 07-cv-4446, 2008 WL 2229488, at *5-6 (N.D. Ill. May 29, 2008); *In re Ariz. Dairy Prods.*

12  *Litig.*, No. 74-cv-594, 736, 1984 WL 21984, at *2-3 (D. Ariz. Nov. 5, 1984).   The DAPs'

13  complaints are broader than certain of the indictments, but their allegations, by definition, relate

14  "in part" to those in the government proceeding.

15  **II.      THE DOCTRINE OF LACHES DOES NOT BAR THE DAPS' CLAIMS.**

16          Thomson Consumer's argument that laches bars the DAPs' claims is also meritless.

17  "Laches is an equitable time limitation on a party's right to bring suit."  *Jarrow Formulas, Inc. v.*

18  *Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (quotation omitted).   To prevail on a

19  laches defense, a defendant must show (1) the plaintiff unreasonably delayed filing suit, (2)

20  which caused prejudice to the defendant.  *Id.*  Thomson Consumer is unable to establish either

21  element.

22          As a threshold matter, meeting the standard for a laches defense in a motion to dismiss is

23  a virtually insurmountable task.  This Court recognized this high barrier in *Sensible Foods, LLC*

24  *v. World Gourmet, Inc.*, 2011 WL 5244716 at *4-5 (N.D. Cal., Nov. 3, 2011) (J. Conti):

25          In their Motion, Defendants ask the Court to make factual determinations
           concerning when Plaintiff knew or should have known about the alleged
26          infringement, Plaintiff's diligence in enforcing its rights, and the prejudice to
           Defendants caused by Plaintiff's alleged delay…. [E]ven if the Court were to take
27          notice of the facts set forth in the parties' requests for judicial notice, it is premature
           to determine whether such evidence is sufficient to raise a genuine issue of material
28          fact, let alone weigh that evidence.

Accordingly, the Court finds that a determination on the adequacy of Defendants' laches defense … requires findings of fact and is inappropriate for resolution on a motion to dismiss.

*Sensible Foods*, 2011 WL 5244716 at *4-5 (internal citations and quotations omitted). Numerous other courts have also held that a laches defense cannot be resolved in a motion to dismiss, and is rarely susceptible to resolution even by summary judgment.[10]  Such factual determinations are inappropriate on a motion to dismiss in this case, and even more so in light of Thomson Consumer's failure to provide <u>any</u> evidence of the DAPs' lack of diligence.  Moreover, as discussed below, Thomson Consumer can establish neither unreasonable delay nor prejudice.

### A. The DAPs did not unreasonably delay bringing suit against Thomson Consumer.

Where, as here, the DAPs filed their respective actions within the tolled statute of limitations period, there is a "strong presumption" that the timing is reasonable and laches is inapplicable.  *Jarrow*, 304 F.3d at 835-36; *see also Aurora Enters v. Nat'l Broad Co.*, 688 F.2d 689, 694 (9th Cir. 1982).  Importantly, where the presumption against laches applies, the party asserting laches bears the burden of proof.  *In re Katz Interactive Call Processing Patent Litig.*, 882 F. Supp. 2d 1123, 1146 (C.D. Cal. 2010).

Without any factual support, Thomson Consumer asserts that the DAPs should have identified their claims against Thomson Consumer either in 2007 or in 2011.  First, Thomson Consumer contends that because the existence of a CRT conspiracy became public in 2007, the DAPs should have known at the time that Thomson Consumer was a party to the conspiracy.  Thomson Consumer does not explain how the DAPs would have gained this information, especially because, as it acknowledges, "Thomson Consumer was *never* named as a defendant in any of the class action complaints filed by the DPPs or IPPs" in late 2007.  Mot. at 5.  Second, Thomson Consumer argues that the DAPs should have identified their claims in 2011 because

---

[10] *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666-67 (9th Cir. Cal. 1980) ("Laches questions are seldom susceptible of resolution by summary judgment, because 'where laches is raised as a defense 'the factual issues involved … can rarely be resolved without some preliminary inquiry'"") (quoting *Sandvik v. Alaska Packers Ass'n*, 609 F.2d 969, 974 (9th Cir. 1979)); *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, No. 5:09-cv-02502, 2011 WL 5038356 at * 7 (N.D. Cal. Oct. 24, 2011) ("laches is analyzed under 12(b)(6). Since that rule generally precludes consideration of evidence outside the complaint and resolves all doubt in favor of plaintiff, it poses a nearly insurmountable obstacle to the facts-sensitive inquiry associated with laches").

*other* Defendants produced most of their documents in late 2011.  *Id.*  But Thomson Consumer does not provide any factual basis to support a finding that the sixteen-month period between obtaining discovery from *other* Defendants and filing against Thomson Consumer constituted an unreasonable delay.

Finally, contrary to Thomson Consumer's contention, the DAPs have more than adequately explained the timing of filing claims against Thomson Consumer: the DAPs became aware of their potential claims against Thomson Consumer with the filing of the IPP motion, but then had to conduct an investigation through voluminous document productions to confirm an adequate basis for bringing the claims.  *See, e.g.*, Dkt. No. 1609 at 5.

### B. Thomson Consumer makes no showing of evidentiary or expectations-based prejudice.

Similarly, Thomson Consumer makes only conclusory allegations of prejudice.  For laches purposes, the Ninth Circuit recognizes two forms of prejudice: evidentiary and expectations-based prejudice.  *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012).  "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded, or who have died."  *Id.* (quoting *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001)).  A defendant suffers expectations-based prejudice where it "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly."  *Id.*

### 1. Thomson Consumer's conclusory allegations are insufficient to prove evidentiary prejudice.

Thomson Consumer cites to *Danjaq*, 263 F.3d at 954, and *McCune v. F. Alioto Fish Co.*, 597 F.2d 1244, 1250 (9th Cir. 1979) for the proposition that faded memories and the degradation of evidence support a finding of evidentiary prejudice.  While this proposition is correct, the party asserting laches nonetheless has the burden of demonstrating "that it has suffered prejudice as a result of the plaintiff's unreasonable delay in filing suit."  *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir 2006).  In both *Danjaq* and *McCune*, the defendants pointed to specific evidence that had degraded as a result of the plaintiff's unreasonable delay.  *Danjaq*, 263 F.3d at 955 (noting that most of the key potential

1    witnesses had died in the intervening forty years); *McCune*, 465 F.3d at 1249-50 (finding

2    prejudice because an eyewitness and a participant in the event at issue had died).    Here, by

3    contrast, Thomson Consumer fails to set forth a single piece of evidence that has degraded as a

4    result of the DAPs' purported delay in filing suit.  Instead, Thomson Consumer contends only

5    that "much of the evidence and many of the witnesses needed to prepare its defense will be

6    difficult, if not impossible to obtain."  Mot. at 9.  Such bald assertions are insufficient to meet its

7    burden of showing evidentiary prejudice.  *See In re Beaty*, 306 F.3d 914, 928 (9th Cir. 2002)

8    (finding that "generic claims of prejudice do not suffice for a laches defense in any case"); *see*

9    *also IXYS Corp. v. Advanced Power Tech., Inc.*, 321 F. Supp. 2d 1156 (N.D. Cal. 2004)

10   ("Conclusory statements that there are missing witnesses, that witnesses' memories have

11   lessened, and that there is missing documentary evidence, are not sufficient" to establish

12   evidentiary prejudice).

13              2.    Thomson Consumer has not suffered expectations-based prejudice.

14          Nor has Thomson Consumer made a showing of expectations-based prejudice.   In the

15   Ninth Circuit, expectations-based prejudice "requires at least some reliance [by the defendant] on

16   the absence of a lawsuit."  *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ.,*

17   *Inc.*, 621 F.3d 981, 990 (9th Cir. 2010); *see also Univ. of Pittsburgh v. Champion Prods. Inc.*,

18   686 F.2d 1040, 1045 (3d Cir. 1982) ("The distinction between . . . mere delay and the laches

19   which give rise to affirmative rights in the defendant as a result of detrimental reliance, has been

20   consistently recognized by the Supreme Court for well over 100 years").

21          Thomson Consumer argues that it will be prejudiced because substantial discovery has

22   already taken place in the pending CRT litigation, and that it would struggle to meet the current

23   schedule.  Mot. at 6-7.  This argument is flawed for three reasons.  First, and fundamentally,

24   Thomson Consumer fails to explain how this scheduling issue is evidence of its detrimental

25   reliance on not being sued.  Notably, it does not cite a single case where a court has found

26   expectations-based prejudice due to scheduling issues.[11]  Second, Thomson Consumer itself is

---

[11] Indeed, litigation scheduling issues are *per se* insufficient to establish the prejudice element of
laches. *See Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1163
(Fed. Cir. 1993) (reversing district court dismissal on laches grounds, and holding that "the

responsible for the position in which it finds itself.  When the DAPs moved to amend their complaints in the CRT litigation to add Thomson Consumer more than nine months ago, Thomson Consumer successfully fought the amendment.  <u>Third</u>, as Thomson Consumer concedes, the Court may set a schedule for Thomson Consumer separate from the other Defendants.

Alternatively, Thomson Consumer asserts that it would be prejudiced by being placed on a separate schedule from the other Defendants because it would be "depriv[ed] . . . of the cost efficiencies that have resulted from the joint defense group."  Mot. at 8.  Essentially, Thomson Consumer is arguing that it will be prejudiced by having to bear the ordinary costs of litigation. As such, it is no surprise that Thomson Consumer cites no authority for the idea that it is legally entitled to a joint defense group.

Thomson Consumer further claims—again, without any actual authority—that it would be prejudiced because "the DAPs will attempt to recover from Thomson Consumer amounts left unsatisfied by settlements or judgments involving other defendants."  Mot. at 8.  The timing of a defendant's decision to settle does not establish legal prejudice to other defendants.  Tellingly, Thomson Consumer does not cite a single case recognizing expectations-based prejudice for laches in this context.

### III.   THE DAPS HAVE ADEQUATELY ALLEGED ANTITRUST STANDING

As an initial matter, this Court has already ruled that the DAPs have standing to proceed with their federal claims under the ownership or control exception to *Illinois Brick*.  The Court has twice rejected Defendants' arguments to the contrary.  Dkt. No. 1856 at 5 (denying Defendants' Joint Motion to Dismiss based upon standing "to the extent that [the MTD] challenges the DAPs' right to proceed under the ownership or control exception"); Dkt. No. 1470 at 16 ("The named DPPs are indirect purchasers, but, under *Royal Printing*, they have standing to sue insofar as they purchased [finished products] incorporating the allegedly price-fixed CRTs from an entity owned or controlled by any allegedly conspiring defendant").

---

prejudice element of laches is not established solely because the raising of the claim would delay other litigation.").

1    Nevertheless, Thomson Consumer now argues that the DAPs must identify the initial

2    sellers of CRTs and allege that those sellers have an ownership or control relationship with the

3    entities from which they bought CRT Products.[12]  Mot. at 19-21.  Thomson Consumer's motion

4    should be denied because the DAPs' allegations are sufficient under Rule 8's notice-pleading

5    requirements.   The DAPs have pled that they "purchased CRT Products directly from the

6    Defendants, and/or the Defendants' subsidiaries and affiliates and/or any agents the Defendants

7    or Defendants' subsidiaries and affiliates controlled."  Electrograph FAC ¶ 23.  These allegations

8    are more than sufficient to put Thomson Consumer on notice that the DAPs are making claims

9    based upon the ownership or control exception to *Illinois Brick*.

10   Moreover, Thomson Consumer's argument has already been rejected in other cases

11   before this Court.   Judge Illston rejected this very same argument twice in the *TFT-LCD*

12   *Antitrust Litigation.  In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*, No. 07-1827, 2012

13   WL 5949585, at *3 (N.D. Cal. Nov. 28, 2012) (rejecting argument that plaintiff "is required to

14   identify with specificity who it purchased finished LCD products from"); *In re TFT-LCD (Flat*

15   *Panel) Antitrust Litig. (Best Buy)*, No. 07-1827, 2013 WL 254873, at *3-4 (N.D. Cal. Jan. 23,

16   2013) (rejecting the argument that "Best Buy must, 'at a minimum, *identify* the initial sellers of

17   the LCD Panels and allege that those sellers owned or controlled the entities from whom Best

18   Buy purchased LCD products").

19   Thomson Consumer relies on *In re TFT-LCD (Flat Panel) Antitrust Litig. (Proview)*, No.

20   07-1827, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) to support its argument, Mot. at 20, but

21   that decision is entirely inapposite.  In the *Proview* case, the plaintiff, Proview, sought to recover

22   for purchases it made from OEMs that Proview itself owned and controlled.  *Id*. at *3.  The

23   OEMs had then purchased the price-fixed goods from conspirators.  *Id.*  The distinction between

24   the *Proview* decision and the present case is obvious: In Proview's situation, the plaintiff

25   allegedly owned and controlled the OEMs, and thus the plaintiff was in possession of

26   information that would demonstrate that it had sufficient ownership or control of the OEMs to

27

28   _____
[12] The DAPs also direct the Court to their more comprehensive discussion of this argument in DAP Tweeter's opposition to Toshiba's Motion to Dismiss [Dkt. No. 2245] at 6-12.

satisfy *Illinois Brick*. *Id.* at *3.  Here, it is Defendants that have the ownership or control relationships with entities from which the DAPs made purchases, and thus it is Defendants that are in possession of information to prove or disprove the ownership or control relationships of these entities.  Although the DAPs had knowledge of the companies from which they purchased CRT Products, they did not have access to detailed facts regarding the relationships between all of those entities and the Defendants and their co-conspirators.

## CONCLUSION

For the foregoing reasons, the DAPs respectfully submit that Thomson Consumer's Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

DATED:  February 10, 2014

*/s/  Philip J. Iovieno*

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY  12207
Telephone:  (518) 434-0600
Facsimile:  (518) 434-0665
Email:  piovieno@bsfllp.com
Email:  anardacci@bsfllp.com

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:  (202) 237-6131
Email:  wisaacson@bsfllp.com

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022
Email:  ssinger@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs and Counsel for Plaintiffs Electrograph Systems, Inc., Electrograph Technologies, Corp., Office Depot, Inc., Interbond Corporation of America, P.C. Richard & Son Long Island Corporation, MARTA Cooperative of America, Inc., ABC Appliance, Inc., and Schultze Agency Services, LLC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/  David Martinez*

Roman M. Silberfeld
David Martinez
Jill S. Casselman
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone:  (310) 552-0130
Facsimile:   (310) 229-5800
Email:  rmsilberfeld@rkmc.com
            dmartinez@rkmc.com
            jscasselman@rkmc.com

Elliot S. Kaplan
K. Craig Wildfang
Laura E. Nelson
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
Telephone:  (612) 349-8500
Facsimile:   (612) 339-4181
Email:  eskaplan@rkmc.com
            kcwildfang@rkmc.com
            lenelson@rkmc.com

*Counsel for Plaintiffs Best Buy Co., Inc., Best Buy
Purchasing LLC, Best Buy Enterprise Services,
Inc., Best Buy Stores, L.P., BestBuy.com, L.L.C.,
and Magnolia Hi-Fi, LLC.*

*/s/  Steven Sklaver*

Steven Sklaver
SUSMAN GODFREY LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone:  (310) 789-3100
Facsimile:   (310) 789-3150
Email:  ssklaver@susmangodfrey.com

Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
John P. Lahad
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:  (713) 651-9366
Facsimile:   (713) 654-6666
Email:  kmarks@susmangodfrey.com
            jross@susmangodfrey.com

jcarter@susmangodfrey.com
dpeterson@susmangodfrey.com
jlahad@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone:  (206) 516-3880
Facsimile:   (206) 516-3883
Email:  pfolse@susmangodfrey.com
          rblack@susmangodfrey.com
          jconnors@susmangodfrey.com

*Counsel for Plaintiff Alfred H. Siegel, solely in his capacity as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

*/s/  David J. Burman*
_____

David J. Burman
Cori G. Moore
Eric J. Weiss
Nicholas H. Hesterberg
Steven D. Merriman
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  (206) 359-8000
Facsimile:   (206) 359-9000
Email:  DBurman@perkinscoie.com
          CGmoore@perkinscoie.com
          EWeiss@perkinscoie.com
          NHesterberg@perkinscoie.com
          SMerriman@perkinscoie.com

Joren S. Bass
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131
Telephone:  (415) 344-7120
Facsimile:   (415) 344-7320
Email:  JBass@perkinscoie.com

*Counsel for Plaintiff Costco Wholesale Corporation*

*/s/  William J. Blechman*
_____

Richard Alan Arnold
William J. Blechman
Kevin J. Murray

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KENNY NACHWALTER, P.A.
201 S. Biscayne Boulevard, Suite 1100
Miami, FL 33131
Telephone:  (305) 373-1000
Facsimile:   (305) 372-1861
Email:  rarnold@knpa.com
            wblechman@knpa.com
            kmurray@knpa.com

*Counsel for Plaintiff Sears Roebuck and Co. and
Kmart Corp.*


/s/  Jason C. Murray
_____

Jason C. Murray
CROWELL & MORING LLP
515 South Flower Street, 40th Floor
Los Angeles, CA 90071
Telephone:  (213) 443-5582
Facsimile:   (213) 622-2690
Email:  jmurray@crowell.com

Jerome A. Murphy
Astor H.L. Heaven
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 624-2500
Facsimile:   (202) 628-5116
Email:  jmurphy@crowell.com
            aheaven@crowell.com

*Counsel for Target Corp.*

DAPS' OPPOSITION TO THOMSON CONSUMER'S
MOTION TO DISMISS

- 28 -

Master File No. 3:07-5944-SC
MDL No. 1917