*Counsel Listed on Signature Block*

REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED

1

2

3

4

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-5944 SC |
| | MDL No. 1917 |
| This document relates to: | **DIRECT ACTION PLAINTIFFS' OPPOSITION TO THOMSON SA'S MOTION TO DISMISS** |
| *Best Buy Co, Inc. v. Technicolor SA,* No. 13-cv-05264; | **Judge: Hon. Samuel P. Conti** **Court: Courtroom 1, 17th Floor** **Date: March 7, 2014** **Time: 10 a.m.** |
| *Siegel v. Technicolor SA*, No. 13-cv-00141; | |
| *Costco Wholesale Corp. v. Technicolor SA (f/k/a Thomson SA) et al.,* No. 13-cv-05723; | |
| *Electrograph Systems, Inc. v. Technicolor SA,* No. 2:13-cv-05724; | |
| *Interbond Corp. of Am. v. Technicolor SA,* No. 13-cv-05727; | |
| *Office Depot, Inc. v. Technicolor SA,* No. 13-cv-05726; | |
| *P.C. Richard & Son Long Island Corp. v. Technicolor SA,* No. 13-cv-05725 | |

26

27

28

1

*Sears, Roebuck & Co. v. Technicolor SA*, No.
13-cv-05262;

2

3

*Schultze Agency Services, LLC v. Technicolor
SA*, No. 13-cv-05668; and

4

*Target Corp. v. Technicolor SA,* No. 13-cv-
05686.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND .........................................................1

I.   THOMSON SA WAS MORE THAN A HOLDING COMPANY AND
     CONTROLLED THE PRICES OF CRTS SOLD TO CUSTOMERS IN THE
     UNITED STATES .....................................................................................................2

II.  THOMSON SA PARTICIPATED IN THE CRT CONSPIRACY AND
     TARGETED THE UNITED STATES.......................................................................3

     A.  Thomson SA participated in meetings in order to raise the price of CRTs and
         CRT products sold in the United States. ............................................................3

     B.  Thomson SA and its co-conspirators fraudulently concealed the conspiracy.................4

     C.  Thomson SA directed its anticompetitive conduct at the United States. ......................4

     D.  Thomson SA participated in the conspiracy to realize massive profits. .......................5

ARGUMENT ......................................................................................................................5

I.   THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER THOMSON
     SA..............................................................................................................................5

     A.  Thomson SA Purposefully Directed its Misconduct at the United States. ....................6

     B.  This Action Arises Out Of and Relates to Thomson SA's Conduct ..............................9

     C.  The Exercise of Personal Jurisdiction over Thomson SA is Reasonable. ...................10

II.  IN THE ALTERNATIVE, THE COURT SHOULD PERMIT PLAINTIFFS TO
     CONDUCT JURISDICTIONAL DISCOVERY. .....................................................12

III. THE DAPS' CLAIMS ARE TIMELY BECAUSE THE LIMITATIONS PERIOD
     HAS BEEN TOLLED..............................................................................................12

     A.  Thomson SA and its Co-Conspirators Fraudulently Concealed the Conspiracy. .........13

     B.  The DAPs' Fraudulent Concealment Allegations Are More than Adequate.................14

         1.  The DAPs' complaints allege that Thomson SA directly participated in
             concealing the conspiracy ....................................................................................14

         2.  The fraudulent concealment conduct of Thomson SA's co-conspirators is
             attributable to Thomson SA for tolling purposes, regardless of its purported
             withdrawal from the conspiracy............................................................................14

         3.  In light of Thomson SA's active concealment of the conspiracy, DAPs have
             adequately alleged their diligence ........................................................................17

     C.  American Pipe Tolled the DAPs' Claims from At Least January 2008 until
         March 2009 ......................................................................................................17

     D.  Government Action Tolled the DAPs'  Claims from February 2009 until Today. .......18

IV.  THE DOCTRINE OF LACHES DOES NOT BAR THE DAPS' CLAIMS......................21

     A.  The DAPs did not unreasonably delay bringing suit against Thomson SA...................22

     B.  Thomson SA makes no showing of evidentiary or expectations-based prejudice..........22

         1.  Thomson SA has not established evidentiary prejudice .........................................23

2.   Thomson SA has not suffered expectations-based prejudice...................................23

V.  THE DAPS HAVE ADEQUATELY ALLEGED ANTITRUST STANDING .................24

**CONCLUSION.................................................................................................................25**

# TABLE OF AUTHORITIES

**Page**

## Cases

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004)................................................................................................6

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974)..........................................................................................12, 17, 18

*Anderson v. Dassault Aviation*,
   361 F.3d 449 (8th Cir. 2004)..............................................................................................11

*Arivella v. Lucent Techs., Inc.*,
   623 F. Supp. 2d 164 (D. Mass. 2009) ................................................................................18

*Aurora Enters v. Nat'l Broad Co.*,
   688 F.2d 689 (9th Cir. 1982)..............................................................................................22

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995)..........................................................................................9, 10

*Barker v. Am. Mobil Power Corp.*,
   64 F.3d 1397 (9th Cir. 1995)..............................................................................................15

*Barneby v. E.F. Hutton & Co.*,
   715 F. Supp. 1512 (M.D. Fla. 1989) .................................................................................18

*Bartlett v. Miller and Schroder Municipals, Inc.*,
   355 N.W.2d 435 (Minn. Ct. App. 1984) ...........................................................................18

*Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*,
   620 F.2d 1360 (9th Cir. 1980).........................................................................................15

*Bratton v. Bethlehem Steel Corp.*,
   649 F.2d 658 (9th Cir. Cal. 1980) .....................................................................................22

*Carson v. Independent School Dist. No. 623*,
   392 N.W.2d 216 (Minn. 1986)...........................................................................................18

*Chipanno v. Champion Int'l Corp.*,
   702 F.2d 827 (9th Cir. 1983).........................................................................................20, 21

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
   2013 U.S. Dist. LEXIS 1604 (N.D. Cal. Jan. 3, 2013) ............................................................12

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011).............................................................................................6

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
   395 F.3d 1315 (Fed. Cir. 2005).........................................................................................11

*Conerly v. Westinghouse Elec. Corp.*,
   623 F.2d 117 (9th Cir. 1980)..............................................................................................17

*Conmar Corp. v. Mitsui & Co., Inc.*,
   858 F.2d 499 (9th Cir. 1988).....................................................................................12, 13, 17

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001)........................................................................................22, 23

*DFSB Kollective Co., Ltd. v. Bing Yang*,
  2013 U.S. Dist. LEXIS 46096 (N.D. Cal. Mar. 28, 2013) ........................ 11

*Dungan v. Morgan Drive-Away, Inc.*,
  570 F.2d 867 (9th Cir. 1978) ................................................................ 19

*eMag Solutions, LLC v. Tada Kogyo Corp.*,
  2006 U.S. Dist. LEXIS 94462 (N.D. Cal. Dec. 21, 2006) ....................... 12

*Evergreen Safety Council v. RSA Network Inc.*,
  697 F.3d 1221 (9th Cir. 2012) ................................................................ 22

*Fiore v. Walden*,
  688 F.3d 558 (9th Cir. 2012) ............................................................. 8, 10

*Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*,
  103 F.3d 888 (9th Cir. 1996) .................................................................... 9

*Gates Learjet Corp. v. Jensen*,
  743 F.2d 1325 (9th Cir. 1984) ............................................................ 9, 11

*Go-Video, Inc. v. Akai Elec. Co., Ltd.*,
  885 F.2d 1406 (9th Cir. 1989) .................................................................. 6

*Hatfield v. Halifax PLC*,
  564 F.3d 1177 (9th Cir. 2009) ................................................................ 18

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
  885 F. Supp. 2d 617 (S.D.N.Y. 2012) ..................................................... 20

*Holland America Line, Inc. v. Wartsila North America, Inc.*,
  485 F.3d 450 (9th Cir. 2007) .................................................................... 9

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) ......................................................................... 24, 25

*In re Antibiotic Antitrust Actions*,
  333 F. Supp. 317 (S.D.N.Y. 1971) ......................................................... 21

*In re Beaty*,
  306 F.3d 914 (9th Cir. 2002) .................................................................. 23

*In re Catfish Antitrust Litig.*,
  826 F. Supp. 1019 (N.D. Miss. 1993) ..................................................... 16

*In re CRT Antitrust Litig. (Crago)*,
  2010 WL 9543295 (N.D. Cal. Feb. 5, 2010) ........................................... 15

*In re CRT Antitrust Litig.*,
  2013 WL 4505701 (N.D. Cal. Aug. 31, 2013) ......................................... 13

*In re CRT Antitrust Litig.*,
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ............................................ 13, 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  2005 U.S. Dist. LEXIS 30299 (N.D. Cal. Nov. 7, 2005) ......................... 8, 9

*In re Elec. Carbon Prods. Antitrust Litig.*,
  333 F. Supp. 2d 303 (D.N.J. 2004) ......................................................... 16

*In re Katz Interactive Call Processing Patent Litig.*,
  882 F. Supp. 2d 1123 (C.D. Cal. 2010) .................................................. 22

*In re Linerboard Antitrust Litig.*,
  223 F.R.D. 335 (E.D. Pa. 2004) ............................................................. 18

*In re Perrier Bottled Water Litig.*,
  138 F.R.D. 348 (D. Conn. 1991) ............................................................... 11

*In re Rubber Chem. Antitrust Litig.*,
  504 F. Supp. 2d 777 (N.D. Cal. 2007) ................................................. 15, 17

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008) ................................................................... 15

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Best Buy)*,
  2013 WL 254873 (N.D. Cal. Jan. 23, 2013) .............................................. 25

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Electrograph)*,
  2012 U.S. Dist. LEXIS 12063 ..................................................................... 9

*In re TFT-LCD (Flat Panel) Antitrust Litig. (MetroPCS)*,
  2011 U.S. Dist. LEXIS 131809 ................................................................... 9

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Proview)*,
  2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) ........................................... 25

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*,
  2012 WL 5949585 (N.D. Cal. Nov. 28, 2012) ........................................... 25

*In re Urethane*,
  663 F. Supp. 2d 1067 (D. Kan. 2009) ....................................................... 16

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
  715 F.3d 716 (9th Cir. 2013) .................................................................. 6, 7

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ................................................................................... 6

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ............................................................. 21, 22

*Jenson v. Allison-Williams Co.*,
  1999 U.S. Dist. LEXIS 22170 (S.D. Cal. Aug. 23, 1999) ........................... 18

*Laker Airways Ltd. v. Pan Am. World Airways*,
  559 F. Supp. 1124 (D.D.C. 1983) ............................................................ 11

*Laub v. U.S. Dep't of Interior*,
  342 F.3d 1080 (9th Cir. 2003) .................................................................. 12

*Lee v. Grand Rapids Board of Education*,
  148 Mich. App. 364, 384 N.W.2d 165 (Mich. 1986) ................................. 18

*Lum v. Bank of Am.*,
  361 F.3d 217 (3d Cir. 2004) ..................................................................... 16

*McCune v. F. Alioto Fish Co.*,
  597 F.2d 1244 (9th Cir. 1979) .................................................................. 23

*Menken v. Emm*,
  503 F.3d 1050 (9th Cir. 2007) .................................................................. 10

*Mt. Hood Stages, Inc. v. Greyhound Corp.*,
  555 F.2d 687, 698 (9th Cir. 1977) ............................................................ 13

*Ochoa v. J.B. Martin & Sons Farms*,
  287 F.3d 1182 (9th Cir. 2002) .................................................................... 6

*Panavision Int'l L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) .................................................................. 10

*Riddell v. Riddell Wash. Corp.*,
   866 F.2d 1480 (D.C. Cir. 1989) ........................................................................15

*Seaboard Corp. v. Marsh Inc.*,
   284 P.3d 314 (Kan. 2012) ..................................................................................18

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,
   621 F.3d 981 (9th Cir. 2010) .............................................................................23

*Sensible Foods, LLC v. World Gourmet, Inc.*,
   2011 WL 5244716 (N.D. Cal., Nov. 3, 2011) ....................................................22

*Sinatra v. Nat'l Enquirer, Inc.*,
   854 F.2d 1191 (9th Cir. 1988) ...........................................................................11

*Societe Civile Succession Richard Guino v. Beseder Inc.*,
   2007 U.S. Dist. LEXIS 83782 (D. Ariz. Oct. 30, 2007) ....................................11

*Steel v. U.S.*,
   813 F.2d 1545 (9th Cir. 1987) .............................................................................8

*Thomson S.A. v. Quixote Corp.*,
   979 F. Supp. 286 (D. Del. 1997), *aff'd* 166 F.3d 1172 (Fed. Cir. 1999) ..............10

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
   875 F.2d 1369 (9th Cir. 1989) ...........................................................................21

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
   465 F.3d 1102 (9th Cir 2006) .............................................................................23

*Trueposition, Inc. v. Sunon, Inc.*,
   No. 05-3023, 2006 WL 1686635 (E.D. Pa. June 14, 2006) ...............................10

*United States v. Cheng*,
   No. 09-cr-00836 (N.D. Cal. Aug. 18, 2009) ......................................................19

*United States v. Lee*,
   No. 10-cr-00817 (N.D. Cal. Nov. 9, 2010) ........................................................19

*United States v. Lin*,
   No. 09-cr-00131 (N.D. Cal. Feb. 10, 2009) ..................................................20, 21

*United States v. Yeh*,
   No. 10-cr-00231 (N.D. Cal. Mar. 30, 2010) ......................................................19

*Univ. of Pittsburgh v. Champion Prods. Inc.*,
   686 F.2d 1040 (3d Cir. 1982) .............................................................................23

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*,
   704 F.3d 668 (9th Cir. 2012) ...............................................................................6

*Williams v. Dow Chem. Co.*,
   No. 01-cv-4307, 2004 WL 1348932 (S.D.N.Y. June 16, 2004) .........................18

*Yahoo Inc. v. La Ligue Contre le Racisme*,
   433 F.3d 1199 (9th Cir. 2006) ..............................................................................6

**STATUTES**

15 U.S.C. § 16(i) ..................................................................................12, 13, 19, 20

**RULES**

Federal Rule of Civil Procedure 8.............................................................................24

Federal Rule of Civil Procedure 9(b) .......................................................................16

The Direct Action Plaintiffs ("DAPs") subject to Defendant Thomson SA's Motion to Dismiss Newly Filed Direct Action Plaintiff Complaints (the "Motion") [Dkt. No. 2355] submit their Opposition to the Motion as follows:

## **INTRODUCTION**

The Court should deny Thomson SA's motion to dismiss on all counts.  First, this Court has specific jurisdiction over Thomson SA.  Thomson SA was the "biggest seller of televisions" in the U.S. throughout the conspiracy period and derived more than half its net sales from the U.S., which it considered its "most important market" and where it generated €10.2 billion in 2002 sales alone.  Loh Decl. Ex. V; Rose Decl. ¶¶ 1, 4.[1]  Thomson SA exploited this "most important market" by participating in a conspiracy whose primary goal was raising and fixing the prices of CRTs and CRT Products sold here.  Thomson SA was not merely a passive bystander: it took part in numerous conspiratorial meetings that specifically targeted the U.S.  Thomson SA *admitted* its role in this conspiracy in 2011.  Best Buy Compl. ¶ 152.  Thomson SA's intentional misconduct is more than sufficient to establish minimum contacts with the U.S., and the Court therefore has specific personal jurisdiction over this admitted conspirator.[2]

In addition, for the reasons stated below, as well as in the DAPs' opposition to Thomson Consumer's motion to dismiss [Dkt. No. 2377-3], the Court should reject Thomson SA's arguments concerning statute of limitations and laches, as well as its argument concerning standing.[3]

## **FACTUAL AND PROCEDURAL BACKGROUND**

Thomson SA is a French corporation with its headquarters located in France.  Best Buy

---

[1] Thomson SA submitted the declarations of Frederic Rose, Adrien Cadieux, Michael O'Hara, and Marie-Ange Debon in support of its Motion.  *See* Mot. [Dkt. No. 2355], Exs. 2, 3, 5, and 6.
[2] On November 25, 2013, Thomson SA filed a motion to dismiss against Sharp that is substantially similar to the Motion it has filed against Plaintiffs here.  *See* Dkt. No. 2235-3.  The briefing on Thomson SA's motion against Sharp is complete.  The Court has vacated the hearing date and will decide the motion on the papers without oral argument.
[3] The DAPs adopt by reference their more comprehensive discussion of statute of limitations and laches, contained in the DAPs' Opposition to Thomson Consumer's Motion to Dismiss [Dkt. No. 2377-3] at 13-25; *see also* DAPs' Opposition to Mitsubishi's Motion to Dismiss Complaints [Dkt. No. 2358] at 7-25, and their more comprehensive discussion of standing in DAP Tweeter's Opposition to Toshiba's Motion to Dismiss [Dkt No. 2245] at 6-12.

Compl. ¶ 27; Ex. X at last page; Ex. J at ¶¶ 1, 6; Ex. L at p. 3 of 44; Cadieux Decl. ¶ 4.  Now known as Technicolor SA (Compl. ¶ 27; Cadieux Decl. ¶ 1), Thomson SA was formerly known as Thomson multimedia S.A. and Thomson multimedia.  Ex. X at pp. F-7, F-74.  Thomson SA had multiple wholly-owned subsidiaries, including Thomson Consumer Electronics, Inc. ("Thomson Consumer").  *Id.* ¶ 28; Cadieux Decl. ¶ 17.  Thomson Consumer is now known as Technicolor USA, Inc. (*id.*), and was formerly known as Thomson multimedia, Inc.  Cadieux Decl. ¶ 17; Ex. X at p. F-75.

## I.    THOMSON SA WAS MORE THAN A HOLDING COMPANY AND CONTROLLED THE PRICES OF CRTS SOLD TO CUSTOMERS IN THE UNITED STATES.

Thomson SA's motion rests on the fiction that it was merely a holding company and, therefore, could not have participated in the CRT conspiracy.  Mot. at 1, 3, 4.  Yet in its 2011 Annual Report to shareholders, Thomson SA admitted that it "played a minor role in the alleged anticompetitive conduct [regarding CRTs]."  Best Buy Compl. ¶¶ 30, 151, 152.  And one year later, following a four-year investigation, the European Commission fined Thomson SA €38.6 million for its supposedly "minor" role, finding that the conspiracy "operated worldwide" and was "among the most organized cartels that the Commission has investigated."  *Id.*

Other evidence further demonstrates that Thomson SA did more than hold the stock of its subsidiaries.  In a 1997 appellate brief it filed in the Federal Circuit, it described itself as a "large multi-national defense and consumer electronics firm with headquarters in France."  Loh Decl. Ex. L; *see also* Ex. M (Thomson SA was "the world's largest supplier of television set-top boxes" and had "operational programs"); Ex. Z at pp. 9-10 (listing numerous operations officers at Thomson SA); Ex. I at pp. 3, 28 ("[Thomson SA]" signed a letter of intent with the city of Foshan, China, to run a jointly owned tube production facility").

Thomson SA also had a controlling role in the finances, policies, and/or affairs of its subsidiaries, including Defendant Thomson Consumer, which served the U.S. CRT market.  Best Buy Compl. ¶ 29.  Thomson SA managed Thomson Consumer's business from its headquarters in France, and Thomson SA's management and board of directors set its policies and direction.  *Id.*; Ex. J at ¶¶ 1, 6.  Thomson SA's employees also oversaw the U.S. profits and losses

associated with Thomson Consumer's high-end and value TV businesses.  Best Buy Compl. ¶ 29.  Thomson SA further involved itself in planning and purchasing discussions with U.S. CRT customers, as it approved the purchases made by U.S. customers.  *Id.*  It also took part in CRT production and pricing discussions relating to CRTs manufactured in Mexico for the North American market.  *Id.*;

Ex. K at pp. 43-44 ("Our Asian plants produce goods for all markets").

## II.   THOMSON SA PARTICIPATED IN THE CRT CONSPIRACY AND TARGETED THE UNITED STATES.

Between at least 1995 and 2005, Thomson SA participated in a worldwide conspiracy to fix, maintain, and/or stabilize the prices of CRTs sold in the U.S.  *See e.g.,* Best Buy Compl. ¶¶ 1, 4, 16, 27, 29, 154.  The conspiracy proved extremely successful, affecting "billions of dollars of commerce throughout the United States."  *Id.* ¶ 7.

### A.   Thomson SA participated in meetings in order to raise the price of CRTs and CRT products sold in the United States.

Thomson SA and its co-conspirators effectuated the conspiracy through a combination of group and bilateral meetings.  *Id.* ¶¶ 6, 126, 127, 154.  The purpose of these meetings was to raise and stabilize the prices and set supply levels of CRTs sold by Thomson SA and its competitors in North America, including the U.S.  *Id.* ¶ 154.  During these meetings, Thomson SA and its co-conspirators discussed CRT prices, production, revenues, volumes, demand, inventories, estimated sales, plant shutdowns, customer allocation, and new product development, including for North American CRTs.  *Id.*  Examples of these meetings include:



**B.     Thomson SA and its co-conspirators fraudulently concealed the conspiracy.**

The DAPs also allege that the conspirators went to great lengths to keep their coordination hidden.  Electrograph FAC ¶ 232-246.  For example,

**C.     Thomson SA directed its anticompetitive conduct at the United States.**

Thomson SA controlled the prices of CRTs sold in the U.S.  Best Buy Compl. ¶ 29.  A June 2003 email between two Thomson Consumer employees and Christian Lissorgues of Thomson SA, for instance, shows that "all pricing decisions outside of the MYF pricing must be submitted to Mr. Lissorgues, and approved by both Messrs. Lissorgues and Lecoq."  Loh Decl. Ex. W.  As the Thomson Consumer employee noted, "[t]he decision regarding pricing deviations beyond the MYF pricing was made at levels above Mr. Lissorgues and myself, thus we must follow our Managements direction with regard to approval of all pricing deviations."  *Id.*  The e-mail also attached a spreadsheet that discussed "NAFTA production" in 2003.  *Id.*

Likewise,

---
4

*see also* Best Buy Compl. ¶ 150 ("The individual participants in the conspiratorial meetings and communications often did not know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family").

1

2

3

    Other documents similarly highlight Thomson SA's direct involvement in CRT pricing,

planning, and operations in the U.S.

6

7

8

9

10

11

12

    **D.**    ***Thomson SA participated in the conspiracy to realize massive profits.***

    Thomson SA profited handsomely by participating in the conspiracy and targeting its anticompetitive conduct at the U.S. The U.S. was Thomson SA's "most important market" and Thomson SA thrived in it, becoming the "biggest seller of televisions in the U.S." Loh Decl. Ex. N at p. 36; Rose Decl. ¶¶ 1, 4; Loh Decl. Ex. V. In 2002, alone, more than half of its sales – totaling €10.2 billion – came from the U.S. *Id.* U.S. sales also accounted for 55% of its net sales in 1999, 53% of its net sales in 2000, and 53%, of its net sales in 2001. Loh Decl. Ex. N at p. 36; Rose Decl. ¶¶ 1, 4 (approximately 47% of revenues generated from U.S. in 2008).

**<u>ARGUMENT</u>**

**I.**    **THE COURT HAS SPECIFIC PERSONAL JURISDICTION OVER THOMSON SA.**

    Section 12 of the Clayton Act confers personal jurisdiction over a defendant for plaintiffs' federal antitrust claims. This section, the long-arm statute for federal antitrust suits, provides: "Any suit, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22. The Constitution

permits a court to exercise specific personal jurisdiction over a nonresident defendant if the defendant has minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  In performing this analysis, the Ninth Circuit applies a three-part test: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).  Once plaintiffs satisfy the first two prongs, the burden shifts to the defendant to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable.  *Id*.  The Ninth Circuit has adopted a flexible approach that allows plaintiffs to make a "lesser showing of minimum contacts 'if considerations of reasonableness dictate.'" *Ochoa v. J.B. Martin & Sons Farms*, 287 F.3d 1182, 1188, n. 2 (9th Cir. 2002).

Here, the relevant forum for the Court's minimum contacts analysis is the U.S.  *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1416 (9th Cir. 1989); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

## A.     Thomson SA Purposefully Directed its Misconduct at the United States.

The Ninth Circuit applies the "effects test" to determine whether a defendant has purposefully directed its misconduct at the U.S.  *CollegeSource*, 653 F.3d at 1076.  The test focuses "on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo Inc. v. La Ligue Contre le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc).  Thus, purposeful direction occurs where the defendant allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1077; *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 743-44 (9th Cir. 2013); *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012).  It is enough for a plaintiff to

1   assert that a defendant engaged in anticompetitive action that was "intended to have, and did

2   have" an effect on commerce in the forum.  *In re W. States Wholesale*, 715 F.3d at 744.

3       Thomson SA argues that the DAPs cannot establish personal jurisdiction because they do

4   not specify that Thomson SA (as opposed to other Thomson entities) specifically targeted the

5   U.S. (as opposed to other countries).  Mot. at 9 and 10.  Thomson SA's argument is inaccurate

6   and ignores both the DAPs' allegations and the evidence.

7       As described *supra* and in detail in the Complaint, the DAPs allege and show that

8   "Thomson SA" controlled the prices that Thomson Consumer offered its customers in the U.S.

9   Best Buy Compl. ¶ 29 (detailing Thomson SA's involvement in planning and purchasing

10  discussions with U.S. CRT customers); Loh Decl. Ex. W (email stating that Thomson Consumer

11  pricing deviations had to be be submitted to Thomson SA executive Mr. Lissorgues and

12  approved by both Messrs. Lissorgues and Lecoq, and attaching a spreadsheet discussing

13  "NAFTA production").

14

15

16

17

18

19

20

21

22

23                                                          Compl. ¶¶ 30, 151,

24  152 (noting the European Commission fined Thomson SA €38.6 million for participating in a

25  conspiracy that "operated worldwide").

26      Thomson SA also participated in the conspiracy to orchestrate agreements about U.S.

27  CRT sales.

28

These meetings all took place while North America was the world's largest market for CRT televisions and computer monitors. *See* Compl. ¶ 184.

None of Thomson SA's declarations refute these allegations. All four are phrased in the present tense and therefore do not speak to what occurred during the conspiracy period. *See, e.g.,* Rose Decl. ¶ 4 ("Thomson [SA] owns all of the stock of Thomson, Inc …"); Cadieux Decl. ¶ 20 ("Thomson S.A. does not control the day-to-day activities of Thomson Consumer …"); Debon Decl. ¶ 6 ("Thomson S.A. does not direct or advise Thomson Inc. on how to sell or distribute any Thomson Inc. product in the United States …"); O'Hara Decl. ¶ 6 ("Thomson Inc. controls its day-to-day activities."); *see also Steel v. U.S.*, 813 F.2d 1545, 1549 (9th Cir. 1987) ("courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether they have jurisdiction"). Further, Thomson SA's earliest declaration is dated September 2, 2005, which is after Thomson SA's sale of its CRT business to Videocon in July 2005. Debon Decl.; Compl. ¶ 27.

Thomson SA also does not offer any credible explanation for why it participated in the above-referenced meetings. Thomson SA merely points to various meetings – none of which the DAPs refer to above – to argue that because they occurred in Europe where Thomson SA is headquartered, "it is equally, if not more, plausible that these alleged meetings related to the European CRT operations of these subsidiaries …." Mot. at 9. This logic, however, ignores the fact that the DAPs expressly alleged that the meetings concerned the U.S. CRT market. It also ignores the fact that Thomson SA was the "biggest seller of televisions in the U.S.," and that more than half of its net sales were derived there. Loh Decl. Ex. V. Regardless, Thomson SA's plausibility argument is not evidence and, even if it were, the Court must resolve all conflicts in

1    the DAPs' favor.  *Fiore v. Walden*, 688 F.3d 558, 574-575 (9th Cir. 2012).

2            Thomson SA's cited authority is also inapposite.  It cannot rely on *DRAM* (Mot. at 9-10),

3    for instance, because there the plaintiffs failed to "offer any evidence that defendants knew that

4    DRAM products related to them would reach the forum states …."  2005 U.S. Dist. LEXIS 30299

5    at *21 (N.D. Cal. Nov. 7, 2005).  Likewise, the *DRAM* plaintiffs did not allege that defendants'

6    conspiratorial acts targeted plaintiffs whom defendants knew to be residents of the forum.  *Id.* at

7    *20.  In stark contrast to *DRAM*, the DAPs allege that Thomson SA partook in a conspiracy; that

8    the conspiracy's purpose and effect was to fix, raise, stabilize, and maintain the prices for CRTs;

9    and that the conspiracy targeted the U.S.  Best Buy Compl. ¶¶ 1, 4, 27, 29, 30, 151-54.  Also, as

10   discussed   above,   the   evidence   demonstrates   that   Thomson   SA   purposefully   directed   its

11   anticompetitive conduct at the U.S. market.  *DRAM* is thus inapposite.  *See, e.g., In re TFT-LCD*

12   *(Flat Panel) Antitrust Litig. (Electrograph)*, 2012 U.S. Dist. LEXIS 12063 at *40 (distinguishing

13   *DRAM* on the evidence).

14           Thomson SA's other cited case, *Holland America Line, Inc. v. Wartsila North America,*

15   *Inc.*, 485 F.3d 450 (9th Cir. 2007), is also unpersuasive.  There, the plaintiff argued that the

16   defendants agreed to a forum-selection clause that the plaintiff included in its purchase orders.

17   The court rejected the plaintiff's assertion because the plaintiff merely alleged that "it conveyed

18   the form terms (including the forum selection clause) to an unidentified email address ending in

19   @wartsila.com, and that the Wartsila entities had notice of the terms because they appear on

20   [plaintiff's] website."  *Id.* at 458.

21       **B.    This Action Arises Out Of and Relates to Thomson SA's Conduct.**

22           The Ninth Circuit uses a "but for" test to determine whether a plaintiff's action arises out

23   of and relates to a defendant's conduct.  *Ballard*, 65 F.3d at 1500; *Learjet*, 715 F.3d at 742;

24   *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 894 (9th Cir. 1996).  Thomson

25   SA does not even attempt to deny that this action arises out of its misconduct.  And for good

26   reason: but for Thomson SA's anticompetitive conduct, the DAPs would not have sustained any

27   damage.  Thus, the DAPs meet the second prong here.  *See In re TFT-LCD (Flat Panel) Antitrust*

28   *Litig. (MetroPCS)*, 2011 U.S. Dist. LEXIS 131809 at *15 (finding plaintiff's claim that it paid

1    artificially high prices for LCDs related directly to defendant's conspiratorial activities).

2              **C.    The Exercise of Personal Jurisdiction over Thomson SA is Reasonable.**

3         Thomson SA fails to present a "compelling case that the exercise of jurisdiction would

4    not be reasonable." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).  Courts generally

5    look to seven factors to determine reasonableness: (1) the extent of the defendant's purposeful

6    interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict

7    with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the

8    dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the

9    forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an

10   alternative forum.  *Walden*, 688 F.3d at 582-583.

11        **Purposeful interjection.**   This factor looks at the degree to which the defendant has

12   aimed its activities at the forum.  *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir.

13   1998).   As described above, Thomson SA participated in conspiratorial conduct directed at the

14   U.S. CRT market.  Moreover, Thomson SA's participation was substantial, as evidenced by the

15   fact that it was the "biggest seller of televisions in the U.S.," regularly had more than half of its

16   net sales come from the U.S., and generated €10.2 billion from the U.S. in 2002 alone.  Loh

17   Decl. Ex. V.  Thus, this factor weighs in favor of jurisdiction.

18        **Burden.**   To satisfy this element, Thomson SA must show that the "inconvenience is so

19   great as to constitute a deprivation of due process."  *Panavision*, 141 F.3d at 1323 (internal

20   quotation marks omitted).  It cannot do so here.

21        Thomson SA argues that litigating this case in the U.S. "would impose a significant

22   burden" because all of its evidence and percipient witnesses reside in France.  *See* Mot. at 11.

23   But as the Ninth Circuit has explained, "the advent of modern transportation certainly has made

24   the burden of defending in a foreign forum more palatable."  *Ballard v. Savage*, 65 F.3d 1495,

25   1501 (9th Cir. 1995).  Moreover, Thomson SA has prosecuted substantial and lengthy litigation

26   in the U.S.  Loh Decl. Exs. Y and L; *Thomson S.A. v. Quixote Corp.*, 979 F. Supp. 286 (D. Del.

27   1997), *aff'd*, 166 F.3d 1172 (Fed. Cir. 1999); *see also Trueposition, Inc. v. Sunon, Inc*., No. 05-

28   3023, 2006 WL 1686635, at *9 (E.D. Pa. June 14, 2006) ("Based on [defendant's] prior

1    involvement in litigation in the United States, the Court cannot conclude that [defendant] would
2    be heavily burdened by defending the instant litigation in Pennsylvania").

3        Thomson SA also cannot rely on the French "blocking statute" it cites. Mot. at 11. The
4    case it relies on is inapposite as it does not address whether the "blocking statute" precludes
5    jurisdiction. *See In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 356 (D. Conn. 1991)
6    (discussing "blocking statute" in context of The Hague Convention). Moreover, other French
7    litigants regularly participate in U.S. discovery despite this provision. *See Anderson v. Dassault*
8    *Aviation*, 361 F.3d 449, 453-54 (8th Cir. 2004); *Commissariat A L'Energie Atomique v. Chi Mei*
9    *Optoelectronics Corp.*, 395 F.3d 1315, 1323-24 (Fed. Cir. 2005); *Societe Civile Succession*
10   *Richard Guino v. Beseder Inc.*, 2007 U.S. Dist. LEXIS 83782 at *32-33 (D. Ariz. Oct. 30, 2007).

11       **Conflicts.** If conflicts with a foreign sovereignty were dispositive, they would always
12   preclude suit against a foreign national in a U.S. court. *Gates Learjet Corp. v. Jensen*, 743 F.2d
13   1325, 1333 (9th Cir. 1984). Sovereignty considerations "weigh less heavily" when the defendant
14   manifests an intent to serve and benefit from the U.S. market. *Sinatra v. Nat'l Enquirer, Inc.*,
15   854 F.2d 1191, 1200 (9th Cir. 1988); *DFSB Kollective Co., Ltd. v. Bing Yang*, 2013 U.S. Dist.
16   LEXIS 46096 at *25 (N.D. Cal. Mar. 28, 2013). As discussed above, Thomson SA manifested
17   that intent here. Thus, this factor weighs in favor of jurisdiction.

18       **U.S. interest/efficiency/plaintiffs' choice.** The U.S. is interested in trying violations of
19   its antitrust laws and injuries to its residents. The Northern District of California will also be the
20   most efficient forum and is critical to affording the DAPs convenient and efficient relief. This
21   Court has already presided over this litigation for several years and is familiar with the facts and
22   issues that will need to be addressed. These factors therefore weigh in favor of jurisdiction.

23       **Alternative forum.** Thomson SA fails to even attempt to argue that there is an
24   alternative forum. Because the burden is on Thomson SA, this factor weighs in favor of
25   jurisdiction. In any event, it is unlikely that the DAPs' claims could be tried in any other forum.
26   *See Laker Airways Ltd. v. Pan Am. World Airways,* 559 F. Supp. 1124, 1136 (D.D.C. 1983)
27   (noting that foreign courts may decline to hear cases involving American antitrust law).

28       In short, Thomson SA has not established—and cannot establish—a "compelling case"

1  that the exercise of jurisdiction over it would be unreasonable.

2  **II.    IN THE ALTERNATIVE, THE COURT SHOULD PERMIT PLAINTIFFS TO
3         CONDUCT JURISDICTIONAL DISCOVERY.**

4       The DAPs submit that Thomson SA's motion should be denied based upon the record

5  before the Court.  Should the Court find otherwise, however, the DAPs respectfully request that

6  they be permitted to conduct jurisdictional discovery.  A plaintiff need only show "some

7  evidence" of jurisdiction in order to obtain discovery.  *eMag Solutions, LLC v. Tada Kogyo*

8  *Corp.*, 2006 U.S. Dist. LEXIS 94462 at *10 (N.D. Cal. Dec. 21, 2006).  The DAPs have shown

9  far more than "some evidence" that jurisdiction is appropriate.  However, should the Court

10  nonetheless conclude that this evidence is insufficient, it should grant the DAPs the opportunity

11  to develop a "more satisfactory showing of the facts."  *See Laub v. U.S. Dep't of Interior*, 342

12  F.3d 1080, 1093 (9th Cir. 2003); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2013 U.S.

13  Dist. LEXIS 1604 at *13-14 (N.D. Cal. Jan. 3, 2013) (Conti, J.) (granting jurisdictional discovery

14  to evaluate agency jurisdiction).[5]

15  **III.   THE DAPS' CLAIMS ARE TIMELY BECAUSE THE LIMITATIONS PERIOD HAS
        BEEN TOLLED.**

16
17       The DAPs' claims are timely because the limitations period has been tolled by a

18  combination of three tolling doctrines.  The DAPs allege in their complaints that Thomson SA

19  fraudulently concealed the conspiracy, thus tolling the statute of limitations until the DAPs

20  became aware of the conspiracy when it became public at the end of 2007.  *Conmar Corp. v.*

21  *Mitsui & Co., Inc.*, 858 F.2d 499, 502 (9th Cir. 1988).  Additionally, the DAPs' claims were

22  tolled pursuant to the class-action tolling doctrine set forth in *American Pipe & Constr. Co. v.*

23  *Utah*, 414 U.S. 538, 554 (1974).  The *American Pipe* doctrine tolled the limitations period

24  starting from at least January 2008 through March 2009, when Thomson SA was named as a

25  defendant in the original CRT class action complaints.  Furthermore, in February 2009, the

26  limitations period was again tolled pursuant to 15 U.S.C. § 16(i), when federal grand juries

27
28  _____
[5] The DAPS reserve the right to assert general personal jurisdiction arguments should jurisdictional
discovery provide a basis to do so.

1  began returning indictments against individuals for participating in the conspiracy.  BrandsMart

2  FAC ¶ 9.  Government actions relating to the CRT conspiracy remain ongoing, and so the

3  limitations period remains tolled.  15 U.S.C. § 16(i).

4  Accordingly, through a combination of these tolling doctrines, the limitations period has

5  not run and the DAPs' claims remain timely.  *See Mt. Hood Stages, Inc. v. Greyhound Corp.*,

6  555 F.2d 687, 698 n.26 (9th Cir. 1977).

7  **A.     *Thomson SA and its Co-Conspirators Fraudulently Concealed the Conspiracy.***

8  First, as this Court has concluded multiple times in this litigation, "it is generally

9  inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to

10  dismiss stage, particularly when the proof relating to the extent of the fraudulent concealment is

11  alleged to be largely in the hands of the alleged conspirators."  *In re CRT Antitrust Litig.*, 2013

12  WL 4505701, at *4 (N.D. Cal. Aug. 31, 2013) ; *In re CRT Antitrust Litig.*, 738 F. Supp. 2d 1011,

13  1024 (N.D. Cal. 2010).  There is no reason for a different result here.

14  The DAPs have more than adequately alleged that the statute of limitations on the DAPs'

15  claims was tolled until November 2007 by Thomson SA and its co-conspirators' fraudulent

16  concealment of the price-fixing conspiracy.  In order to toll the limitations period based on

17  fraudulent concealment, a plaintiff must show that defendants actively concealed the conspiracy,

18  and that plaintiff had neither actual nor constructive knowledge of the facts giving rise to its

19  claim, despite its diligence in trying to uncover those facts.  *Conmar*, 858 F.2d at 502.

20  The DAPs allege in detail how Defendants affirmatively misled their customers and the

21  public into believing that CRT prices were governed by market forces, rather than Defendants'

22  collusion.  The complaints explain how Defendants carried out the conspiracy through "secret

23  meetings [and] surreptitious communications . . . in order to prevent the existence of written

24  records."  *E.g.*, BrandsMart FAC ¶¶ 221.  Defendants agreed to "give pretextual reasons for price

25  increases and output reductions to the customers," *id.* ¶ 225, by, for instance, blaming a 2004

26  price increase "on a shortage of glass shells use[d] for manufacturing CRT monitors."  *Id.* ¶ 228.

27  In addition, when Defendants' top executives attended conspiracy meetings, they "agreed to

28  stagger their arrivals and departures at such meetings to avoid being seen in public with each

1    other." *Id.* ¶ 222.  The Court has already analyzed fraudulent concealment allegations that are

2    essentially identical to those the DAPs have made here, and concluded that they "are sufficient to

3    deny" this type of motion.  *In re CRT*, 738 F. Supp. 2d at 1025.

4         **B.    The DAPs' Fraudulent Concealment Allegations Are More than Adequate.**

5              Thomson SA also contends that the DAPs' fraudulent concealment allegations are

6    insufficient because they do not state with particularity (1) Thomson SA's direct involvement in

7    the concealment of the conspiracy, (2) concealment conduct that may be imputed to Thomson

8    SA, or (3) the DAPs' specific acts of diligence in attempting to uncover their claims.  This

9    argument fails on all counts.

10        **1.    The DAPs' complaints allege that Thomson SA directly participated in
11             concealing the conspiracy.**

12             While not required for a finding of fraudulent concealment, the DAPs' complaints do

13   contain specific allegations as to Thomson SA's involvement in the cover-up of the conspiracy.

14   For example, the DAPs allege that,

15   

16   

17   

18   

19                                              The complaints further state that Thomson SA attended numerous

20   bilateral and multilateral meetings, including green meetings. *See id.* ¶¶ 152.  The complaints

21   then allege in depth how the conspirators used these meetings to carry out and conceal the

22   conspiracy.  *See id.* ¶¶ 125-81, 238-39.  Thus, the complaints set forth detailed examples of

23   Thomson SA's direct participation in Defendants' fraudulent concealment.

24        **2.    The fraudulent concealment conduct of Thomson SA's co-conspirators is
25             attributable to Thomson SA for tolling purposes, regardless of its purported
             withdrawal from the conspiracy.**

26             Thomson Consumer contends that the Court should rule on a motion to dismiss that it

27   withdrew from the conspiracy.  In any event, this Court has already rejected similar arguments as

28   to withdrawal, commenting that self-serving suggestions that defendants "withdrew from the

alleged conspiracy . . .  raise[] factual questions inappropriate for resolution at the motion-to-

dismiss stage." *In re CRT*, 738 F. Supp. 2d at 1025.  In addition to having alleged Thomson

SA's direct participation in Defendants' fraudulent concealment, the DAPs also set forth detailed

allegations of fraudulent concealment by other conspirators that can be imputed to Thomson SA.

*See id.* ¶¶ 236-43.  The law is clear that steps taken by Thomson SA's co-conspirators to conceal

the price-fixing conspiracy can be imputed to Thomson SA.  *See Riddell v. Riddell Wash. Corp.*,

866 F.2d 1480, 1493 (D.C. Cir. 1989); *see also Beltz Travel Serv., Inc. v. Int'l Air Transport

Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 538

(6th Cir. 2008).  In pleading fraudulent concealment of a global conspiracy involving numerous

defendants, detailed defendant-by-defendant allegations are not required.  As the former Special

Master in this action previously held:

> Defendants' motions emphasize[] that plaintiffs have not alleged fraudulent
> concealment on a defendant-by-defendant basis. . . .
>
> It is one thing to compel the plaintiffs to plead that each defendant is a part of the
> conspiracy. It is another to require the plaintiffs to plead facts as to what each
> defendant did within the conspiracy, including concealment. And indeed, such a
> requirement would be contrary to a general principle of conspiracy law that once
> a party becomes a member of a conspiracy he is bound by all of the acts of the
> other conspirators. . . .  [A]pplication of the pleading requirements for fraudulent
> concealment must recognize that by their very nature the acts of fraudulent
> concealment would not be readily apparent to even a diligent investigation by
> plaintiffs, and particularly not in the details of which defendants did what in order
> to conceal.

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2010 WL 9543295, at *10 (N.D.

Cal. Feb. 5, 2010), *R&R adopted by* 738 F. Supp. 2d 1011.  The only Ninth Circuit case that

Thomson SA cites to the contrary did not involve a conspiracy or co-conspirator imputation.  *See*

Mot. at 19 (citing *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995)).

Furthermore, so long as the conspiracy remains concealed, the limitations period remains

tolled as to all conspirators, regardless of when their individual participation in the conspiracy

terminated.  *See In re Rubber Chem. Antitrust Litig.*, 504 F. Supp. 2d 777, 789-90 (N.D. Cal.

2007) (holding that the statute of limitations began to run for claims against a defendant as of the

date the conspiracy was actually disclosed, not the date of the defendant's withdrawal from the

conspiracy).  Thomson SA cannot escape liability for a conspiracy in which it participated and

1   which it fraudulently concealed merely by withdrawing before it was made public.

2          Finally, Thomson SA asserts that the DAPs cannot toll the statute of limitations beyond

3   2004 because the last dated act of fraudulent concealment alleged in the complaints occurred in

4   2004.  Mot. at 20.  This argument not only ignores numerous post-2004 allegations in the

5   complaints, but is also a fundamental misstatement of the law.  <u>First</u>, the DAPs specifically

6   allege that Thomson SA, acting through Videocon, continued to fraudulently conceal the

7   conspiracy from 2005 through 2007.  *See, e.g.*, Electrograph FAC ¶¶ 152, 156-58.  Indeed, the

8   complaints allege that

9

10                                                                          *Id.* ¶ 156.  And from

11  2005 through 2007, "Videocon participated in several glass meetings and multiple bilateral

12  meetings with its competitors."  *Id.* ¶ 156.  Such meetings were "organized . . . to avoid

13  detection," were held "in secret" and were used in part to "orchestrate the giving of pretextual

14  reasons for their pricing actions and output restrictions."  *Id.* ¶ 234.

15         <u>Second</u>, there is no requirement that plaintiffs allege the dates of each act of concealment

16  to mark the beginning and end of the concealment period.  Rather, to satisfy the pleading

17  standard of Rule 9(b), a plaintiff need only use some "means [which] inject[s] precision and

18  some measure of substantiation into their allegations of fraud."  *In re Elec. Carbon Prods.*

19  *Antitrust Litig.*, 333 F. Supp. 2d 303, 315 (D.N.J. 2004) (quoting *Lum v. Bank of Am.*, 361 F.3d

20  217, 224 (3d Cir. 2004)); s*ee also In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1028 (N.D.

21  Miss. 1993) (rejecting defendants' contention that the dates and locations of each act of

22  fraudulent concealment must be pleaded, particularly in light of the fact that "the proof is largely

23  in the hands of the alleged conspirators")).  Here, the DAPs have alleged with particularity the

24  means of concealment, the parties involved, the contents of numerous documents describing and

25  encouraging the concealment, and the dates of several such documents.  Electrograph FAC ¶¶

26  125-81, 234-43.  These allegations are more than sufficient to inject particularity into the DAPs'

27  fraudulent concealment pleadings.

28         In arguing otherwise, Thomson SA relies on *In re Urethane,* 663 F. Supp. 2d 1067, 1078-

1    79 (D. Kan. 2009), which is not persuasive here for two reasons.  First, that case has apparently

2    never been cited for the point for which Thomson SA cites it.  Second, the issue in that case was

3    when the defendants' fraudulent concealment began, not when it ended.  663 F. Supp. 2d at

4    1078.  Even assuming that the DAPs only alleged concealment activities through 2004, such

5    activities were clearly enough to keep the conspiracy hidden up through 2007.

6              **3.    In light of Thomson SA's active concealment of the conspiracy, DAPs have
               adequately alleged their diligence.**

7

8              Thomson SA erroneously asserts that the DAPs' allegations are insufficient because they

9    do not specifically plead the DAPs' attempts to uncover their claims.  To the contrary, a party

10   has an obligation to plead specific acts of diligence <u>only</u> where there are publicly available facts

11   "that would excite the inquiry of a reasonable person." *Conmar*, 858 F.2d at 504.[6]  Here,

12   Thomson SA and its co-conspirators actively and successfully prevented such facts from being

13   disclosed to the public until government investigations began in November 2007.  Accordingly,

14   the DAPs' allegations that "they had neither actual nor constructive knowledge of the facts

15   supporting [their] claim for relief despite their diligence in trying to discover the facts," until

16   November 2007, are sufficient.  *See, e.g.*, Electrograph FAC ¶ 232; *see also In re Rubber Chem.*

17   *Antitrust Litig.*, 504 F. Supp. 2d at 788 (finding similar allegations adequate because the pleaded

18   facts of concealment, if true, "would not give rise to any information that would excite the

19   inquiry of a reasonable person," and "Plaintiffs are not under a duty continually to scout around

20   to uncover claims which they have no reason to suspect they might have.").

21             **C.    *American Pipe* Tolled the DAPs' Claims from At Least January 2008 until March
               2009.**

22             As Thomson SA concedes, the DAPs' claims against Thomson SA were tolled under

23   *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), from at least January 2008

24

25   _____

26   [6] Thomson SA cites *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980) for
     its proposition that a plaintiff must plead specific acts of diligence.  Mot. at 19.  This case does
27   not support Thomson SA's contention.  In that case, unlike the present one, the plaintiff failed to
     plead *any* facts supporting fraudulent concealment.  *See Conerly*, 623 F.2d at 121 ("[The
28   complaint] does not allege any facts, however, tending to excuse his failure to discover
     Westinghouse's misconduct for a period of twenty-four years.").

through March 2009.  Mot. at 20-21.[7]  However, contrary to Thomson SA's assertions, Mot. at

21, *American Pipe* tolling also applies to several of the DAPs' state law claims.  *American Pipe*

applies in states that have adopted cross-jurisdictional tolling.  *See In re Linerboard Antitrust*

*Litig.*, 223 F.R.D. 335 (E.D. Pa. 2004).  There is an interest in cross-jurisdictional tolling "[i]n

the antitrust context, [because] declining to adopt cross-jurisdictional class action tolling will

invite the filing of numerous protective, duplicative and in many cases, unnecessary, suits by

class members that want to consider filing claims under state antitrust law not included in a

federal class action complaint." *Id.* at 346 (citation omitted).  In any event, independent of the

federal interest involved, several of the states under whose laws the DAPs have brought claims

would apply cross-jurisdictional tolling here.[8]

**D.**    ***Government Action Tolled the DAPs' Claims from February 2009 until Today.***

The limitations period for the DAPs' claims was tolled again starting in February 2009

because of actions instituted by the United States Department of Justice relating to the CRT

conspiracy.  By statute,

---

[7] For the reasons set forth in the DAPs' opposition to Thomson Consumer's motion to dismiss, the DAPs further assert that *American Pipe* tolled the DAPs' claims from November 2007 through November 2011.  *See* Dkt. No. 2377-3 at 13-15.

[8] **California**: *See Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009) (applying California doctrine of equitable tolling based on class action filed in other jurisdiction); **Florida**: *See Barneby v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1528-29 (M.D. Fla. 1989) ("*American Pipe* tolling is properly extended" where Florida state law claims "involve the same 'evidence, memories, and witnesses' as are involved in the putative class action [in Indiana federal court]."); **Kansas**: *See Seaboard Corp. v. Marsh Inc.*, 284 P.3d 314, 327-28 (Kan. 2012) (applying Kansas savings statute on a cross-jurisdictional basis and holding that plaintiff's claim was timely filed because it was a putative plaintiff in a federal class action based on claims arising out of the same conduct, transaction, or occurrence); **Massachusetts**: *See Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 180 (D. Mass. 2009) (class action tolling should be interpreted with the goal of reducing multiplicity of actions, even if the individual plaintiff's claims are not identical to those asserted in the class complaint); **Michigan**: *See Lee v. Grand Rapids Board of Education,* 148 Mich. App. 364, 384 N.W.2d 165 (Mich. 1986) ("We conclude … that the federal district court action tolled the operation of the statute of limitations as to plaintiffs' claims pursuant to the Elliott-Larsen Civil Rights Act and the Michigan State Fair Employment Practices Act."); **Minnesota**: *See Jenson v. Allison-Williams Co.*, 1999 U.S. Dist. LEXIS 22170, *18-19 (S.D. Cal. Aug. 23, 1999) (holding that federal class action tolled state law claim under Minnesota Securities Act, and citing to *Carson v. Independent School Dist. No. 623*, 392 N.W.2d 216, 223 (Minn. 1986) and *Bartlett v. Miller and Schroder Municipals, Inc.*, 355 N.W.2d 435, 439-440 (Minn. Ct. App. 1984)); **New York**: *Williams v. Dow Chem. Co.*, No. 01-cv-4307, 2004 WL 1348932, at *12 (S.D.N.Y. June 16, 2004) ("New York would likely apply *American Pipe*" in a cross-jurisdictional context).

1

2

3

> [w]henever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws . . . the running of the statute of limitations in respect to every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter . . . ."

4

5

6

7

8

9

10

11

15 U.S.C. § 16(i).  As such, the DAPs' four-year limitations period against Thomson SA was tolled on February 10, 2009, and remains tolled today.  On February 10, 2009, a federal grand jury indicted C.Y. Lin of Chunghwa for his involvement in conspiracies fixing the prices of CDTs and CPTs.  BrandsMart FAC ¶ 185.  The indictment, as described in a DOJ press release, charges that C.Y. Lin conspired with others "to fix the prices of two types of CRTs used in computer monitors and televisions."  *Id.*  The DOJ subsequently indicted five other Korean and Taiwanese executives who participated in the conspiracy.  *Id.* ¶¶ 186-89.[9]  <u>All of these actions remain pending.</u>

12

13

14

15

16

17

18

19

20

21

22

23

24

Tolling pursuant to Section 16(i) commenced when the first indictment issued, and the DAPs' claims will remain tolled throughout the pendency of the government actions.  *Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 868 (9th Cir. 1978).  In *Dungan*, the Ninth Circuit determined that "[t]he date of the return of the indictment fits comfortably within the statutory language" of § 16(i) requiring that proceedings be 'instituted.'  In discussing *Dungan*, Thomson SA asserts that courts must 'strike the exquisite balance' in applying § 16(i).  Mot. at 21.  In fact, the court reached the exact opposite conclusion.  The court specifically did not want to leave the question of what qualifies as 'instituting' proceedings to a case-by-case determination, noting that "considerable judicial time would be consumed in *striking the exquisite balance* between serving the objects of grand jury secrecy on the one hand and those of section 16(i) . . . on the other."  570 F.2d at 871 (emphasis added).  Accordingly, because grand juries began indicting CRT executives in 2009, the limitations period for the DAPs' claims against Thomson SA has been tolled since that time.

25

26

Thomson SA first argues that tolling would not serve the purposes of 15 U.S.C. § 16(i)

27

28

---

[9] *See United States v. Cheng,* No. 09-cr-00836 (N.D. Cal. Aug. 18, 2009); *United States v. Yeh,* No. 10-cr-00231 (N.D. Cal. Mar. 30, 2010); *United States v. Lee*, No. 10-cr-00817 (N.D. Cal. Nov. 9, 2010).

1   because the government's case against the criminal defendants has not progressed.  Mot. at 22.

2   Tellingly, Thomson SA cites no legal authority to support its contention that § 16(i) does not

3   apply until some point after indictment or requires a court to assess the progress of a criminal

4   proceeding.  The law is clear that application of § 16(i) does not depend on the success of the

5   government's case or on the government's prosecutorial decisions. *See Chipanno v. Champion*

6   *Int'l Corp.*, 702 F.2d 827 (9th Cir. 1983); *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 885 F.

7   Supp. 2d 617, 628-29 (S.D.N.Y. 2012).  By asserting that the Court should draw the line at

8   arraignment or at a certain number of years of fugitive status, Thomson SA is asking the Court to

9   engage in the case-by-case process that *Dungan* rightly rejected.

10      Next, Thomson SA asserts that the DAPs' allegations do not sufficiently overlap with the

11   allegations in the criminal indictments.  To the contrary, the DAPs' claims overlap directly with

12   the subject matter of the indictments, and are plainly "based in whole or in part on any matter

13   complained of in [a government proceeding]."  15 U.S.C. § 16(i); *see Chipanno* 702 F.2d at 833.

14   The Ninth Circuit has held that "consideration of whether a later private suit is 'based in whole

15   or in part on any matter complained of' in a prior government action . . . must be limited to a

16   comparison of the two complaints on their face."  *Chipanno* 702 F.2d at 832.  "If the necessary

17   overlap is present, the purpose of the statute is served though there are differences in the

18   allegations of the two complaints as to the means used, the defendants named, and the time

19   period and geographic area involved."  *Id.* at 832-33.

20      Here, the DAPs' complaints and the indictment against Mr. Lin each describe a

21   conspiracy that includes both CDTs and CPTs.  *Compare* BrandsMart FAC ¶ 3 ( "CPT Products

22   and CDT Products shall be referred to collectively as 'CRT Products'") *with United States v. Lin*,

23   No. 09-cr-00131, at 1, 4-5 (N.D. Cal. Feb. 10, 2009) (Dkt. No. 1) (indicting C.Y. Lin for

24   conspiracies involving both CDTs and CPTs). Both describe similar methods used in furtherance

25   of the conspiracy.  *Compare* BrandsMart FAC ¶¶ 111, 122 (describing secret meetings in

26   "Taiwan, South Korea, Thailand, Japan, Malaysia, Indonesia and Singapore" where agreements

27   were made to set "target prices") *with Lin*, at 5 (meetings were held in "Taiwan, Korea,

28   Malaysia, China, Thailand, Indonesia, and elsewhere" where conspirators agreed to "charge

prices of CPTs at certain target levels"). Both allege that the conspiracy affected the prices of CRTs sold in the United States. *Compare* BrandsMart FAC ¶ 209 (prices for CRTs were "raised, fixed, maintained and stabilized at artificially high and noncompetitive levels throughout the United States") *with Lin*, at 4 (conspirators fixed "the prices of [CPTs] to be sold in the United States and elsewhere").

With respect to the Lin indictment, Thomson SA argues that its geographic scope distinguishes it from the DAPs' complaints, and it claims that no allegations expressly connect the activities of Mr. Lin and Chunghwa to Thomson SA.  Mot. at 23.  However, even if the geographic scope of the complaint differed from the indictment, the overlap between the two would still be sufficient. *See Chipanno*, 702 F.2d at 829, 832-33 (tolling subsequent private claims which involved a timber market covering a broader geographic area than the government's case); *see also In re Antibiotic Antitrust Actions*, 333 F. Supp. 317, 321 (S.D.N.Y. 1971) (where a government action in the domestic market tolled a private action even though the action involved both domestic and foreign markets). Thomson SA also argues that the overlap with respect to the indictments is insufficient because they do not cover CPTs.  *See* Mot. at 23. This argument is puzzling because Mr. Lin's indictment specifically covers CPTs.  *See Lin*, at 1, 4-5. And, whether, as Thomson SA argues, the CPT and CDT markets are entirely separate is a question of fact that cannot be resolved on a motion to dismiss.  *See, e.g.*, *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989) (defining a product market is a "factual inquiry for the jury.").  Even the indictments alleging actions only with respect to CDTs provide the overlap necessary to toll the statute of limitations.  There is no requirement that the markets at issue be "identical."  *See In re Antibiotic Antitrust Actions*, 333 F. Supp. at 321.

## IV.   THE DOCTRINE OF LACHES DOES NOT BAR THE DAPS' CLAIMS.

Thomson SA's argument that laches bars the DAPs' claims is also meritless.  "Laches is an equitable time limitation on a party's right to bring suit."  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).  To prevail on a laches defense, a defendant must show (1) the plaintiff unreasonably delayed filing suit, (2) which caused prejudice to the defendant.  *Id.*  Thomson SA cannot establish either element.

As a threshold matter, meeting the standard for a laches defense in a motion to dismiss is a virtually insurmountable task.  This Court recognized this high barrier in *Sensible Foods, LLC v. World Gourmet, Inc.*, 2011 WL 5244716 at *4-5 (N.D. Cal., Nov. 3, 2011) (J. Conti):

> In their Motion, Defendants ask the Court to make factual determinations concerning when Plaintiff knew or should have known about the alleged infringement, Plaintiff's diligence in enforcing its rights, and the prejudice to Defendants caused by Plaintiff's alleged delay…. [E]ven if the Court were to take notice of the facts set forth in the parties' requests for judicial notice, it is premature to determine whether such evidence is sufficient to raise a genuine issue of material fact, let alone weigh that evidence.
>
> Accordingly, the Court finds that a determination on the adequacy of Defendants' laches defense … requires findings of fact and is inappropriate for resolution on a motion to dismiss.

*Sensible Foods*, 2011 WL 5244716 at *4-5 (internal citations and quotations omitted). Generally, laches defense cannot be resolved in a motion to dismiss, and is rarely susceptible to resolution even by summary judgment. Such factual determinations are inappropriate on a motion to dismiss in this case, and even more so in light of Thomson SA's failure to provide <u>any</u> evidence of the DAPs' lack of diligence. *See. e.g., Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666-67 (9th Cir. Cal. 1980).  Moreover, as discussed below, Thomson SA is unable to establish either unreasonable delay or prejudice.

### A.    The DAPs did not unreasonably delay bringing suit against Thomson SA.

Where, as here, the DAPs filed their respective actions within the tolled statute of limitations period, there is a "strong presumption" that the timing is reasonable and laches is inapplicable.  *Jarrow*, 304 F.3d at 835-36; *see also Aurora Enters v. Nat'l Broad Co.*, 688 F.2d 689, 694 (9th Cir. 1982).  Importantly, where the presumption against laches applies, the party asserting laches bears the burden of proof.  *In re Katz Interactive Call Processing Patent Litig.*, 882 F. Supp. 2d 1123, 1146 (C.D. Cal. 2010).

### B.    Thomson SA makes no showing of evidentiary or expectations-based prejudice.

Similarly, Thomson SA makes only conclusory allegations of prejudice.  For laches purposes, the Ninth Circuit recognizes two forms of prejudice: evidentiary and expectations-based prejudice.  *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012).  "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or

1   witnesses whose memories have faded, or who have died." *Id.* (quoting *Danjaq LLC v. Sony

2   Corp.*, 263 F.3d 942, 955 (9th Cir. 2001)).   A defendant suffers expectations-based prejudice

3   where it "took actions or suffered consequences that it would not have, had the plaintiff brought

4   suit promptly." *Id.*

5               **1.    Thomson SA has not established evidentiary prejudice.**

6        Thomson SA cites to *Danjaq*, 263 F.3d at 954, and *McCune v. F. Alioto Fish Co.*, 597

7   F.2d 1244, 1250 (9th Cir. 1979), for the proposition that faded memories and the degradation of

8   evidence support a finding of evidentiary prejudice.  While this proposition is correct, the party

9   asserting laches nonetheless has the burden of demonstrating "that it has suffered prejudice as a

10  result of the plaintiff's unreasonable delay in filing suit." *Tillamook Country Smoker, Inc. v.

11  Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir 2006).   In both *Danjaq* and

12  *McCune*, the defendants pointed to specific evidence that had degraded as a result of the

13  plaintiff's unreasonable delay.  *See Danjaq*, 263 F.3d at 955 (noting that most of the key

14  potential witnesses had died); *McCune*, 465 F.3d at 1249-50 (finding prejudice because an

15  eyewitness had died).  Here, by contrast, Thomson SA fails to set forth a single piece of evidence

16  that degraded, or name a single witness that would be unavailable, as a result of the DAPs'

17  purported delay in filing suit.  *See* Mot. at 17.  Such bald assertions are insufficient to establish

18  evidentiary prejudice.  *See In re Beaty*, 306 F.3d 914, 928 (9th Cir. 2002).[10]

19              **2.    Thomson SA has not suffered expectations-based prejudice.**

20       In the Ninth Circuit, expectations-based prejudice "requires at least some reliance [by the

21  defendant] on the absence of a lawsuit."  *Seller Agency Council, Inc. v. Kennedy Ctr. for Real

22  Estate Educ., Inc.*, 621 F.3d 981, 990 (9th Cir. 2010); *see also Univ. of Pittsburgh v. Champion

23  Prods. Inc.*, 686 F.2d 1040, 1045 (3d Cir. 1982).  Thomson SA argues that it will be prejudiced

24  because substantial discovery has already taken place in the pending CRT litigation, and that it

25

26  ───────────────
    [10] Thomson SA complains that "[m]any of the witnesses Thomson SA needs to prepare its
27  defense no longer work for the company and many CRT-related documents were transferred to
    Videocon" in 2005.   Mot. at 17.  Notably, no specific witnesses or documents are identified.
28  Morover, the situation would be no different had the DAPs sued in 2007 when the conspiracy
    first became known.

would struggle to meet the current schedule. Mot. at 15. However, Thomson SA fails to explain how this scheduling issue is evidence of its detrimental reliance on not being sued. Notably, it does not cite a single case where a court has found expectations-based prejudice due to scheduling issues. Finally, as Thomson Consumer concedes, the Court may set a schedule for Thomson Consumer separate from the other Defendants.

Alternatively, Thomson SA asserts that it would be prejudiced by being placed on a separate schedule from the other Defendants because it would be "depriv[ed] . . . of the cost efficiencies that have resulted from the joint defense group." Mot. at 16. Essentially, Thomson SA argues that it will be prejudiced by having to bear the ordinary costs of litigation. As such, it is no surprise that Thomson SA cites no authority for the idea that it is legally entitled to a joint defense group. Thomson SA further claims—again, without any actual authority—that it would be prejudiced because "the DAPs will attempt to recover from Thomson SA amounts left unsatisfied by settlements or judgments involving other defendants." *Id.* The timing of a defendant's decision to settle does not establish legal prejudice to other defendants. Tellingly, Thomson SA does not cite a single case recognizing expectations-based prejudice for laches in this context.

## V.   THE DAPS HAVE ADEQUATELY ALLEGED ANTITRUST STANDING.

As an initial matter, this Court has already ruled that the DAPs have standing to proceed with their federal claims under the ownership or control exception to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). The Court has twice rejected Defendants' arguments to the contrary. Dkt. No. 1856 at 5 (denying Defendants' Joint Motion to Dismiss based upon standing "to the extent that [the MTD] challenges the DAPs' right to proceed under the ownership or control exception"); Dkt. No. 1470 at 16 ("The named DPPs are indirect purchasers, but, under *Royal Printing*, they have standing to sue insofar as they purchased [finished products] incorporating the allegedly price-fixed CRTs from an entity owned or controlled by any allegedly conspiring defendant."). The DAPs' standing has already been established in this case, and Thomson SA gives no reason to disturb the Court's duly and repeatedly considered judgment.

Nevertheless, Thomson SA now argues that the DAPs must identify the initial sellers of

1   CRTs and allege that those sellers have an ownership or control relationship with the entities

2   from which they bought CRT Products.   Mot. at 24 and 25.  Thomson SA's motion should be

3   denied because the DAPs' allegations are sufficient under Rule 8's notice pleading requirements.

4   The DAPs have pled that they "purchased CRT Products directly from the Defendants, and/or

5   the Defendants' subsidiaries and affiliates and/or any agents the Defendants or Defendants'

6   subsidiaries and affiliates controlled." *See, e.g.,* Electrograph FAC ¶ 23.  These allegations are

7   more than sufficient to put Thomson SA on notice that the DAPs are making claims based upon

8   the ownership or control exception to *Illinois Brick*.  Moreover, Thomson SA's argument has

9   already been rejected in other cases before this Court.  *See In re TFT-LCD (Flat Panel) Antitrust*

10  *Litig. (Viewsonic)*, 2012 WL 5949585, at *3 (N.D. Cal. Nov. 28, 2012); *In re TFT-LCD (Flat*

11  *Panel) Antitrust Litig. (Best Buy)*, 2013 WL 254873, at *3-4 (N.D. Cal. Jan. 23, 2013).

12       Thomson SA relies on *In re TFT-LCD (Flat Panel) Antitrust Litig. (Proview)*, No. 07-

13  1827, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) in an attempt to support its argument, Mot.

14  at 24 (citing *In re TFT-LCD (Flat Panel) Antitrust Litig. (Proview)*, 2013 WL 1164897 (N.D.

15  Cal. Mar. 20, 2013)), but that decision is entirely inapposite.  In the *Proview* case, the plaintiff

16  sought to recover for purchases it made from OEMs that it owned and controlled itself. *Id.* at *3.

17  Here, by contrast, it is the Defendants who own and control the entities from which the DAPs

18  made purchases, and thus it is Defendants that are in possession of information to prove the

19  ownership relationships of these entities.  Accordingly, the DAPs are not required to plead this

20  information, and Thomson SA's standing argument should be rejected.[11]

21                                **CONCLUSION**

22       The DAPs respectfully submit that Thomson SA's Motion should be denied.

23

24                                Respectfully submitted,

25  DATED:  February 10, 2014        */s/  David Martinez*_____

26                                Roman M. Silberfeld

27  _____

28  [11] Nevertheless, if the Court determines that additional details are required concerning the DAPs'
     purchases of CRT Products, the DAPs request leave to amend their complaints to add such details.

David Martinez
Jill S. Casselman
ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone:  (310) 552-0130
Facsimile:   (310) 229-5800
Email:  rmsilberfeld@rkmc.com
            dmartinez@rkmc.com
            jscasselman@rkmc.com

Elliot S. Kaplan
K. Craig Wildfang
Laura E. Nelson
ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
Telephone:  (612) 349-8500
Facsimile:   (612) 339-4181
Email:  eskaplan@rkmc.com
            kcwildfang@rkmc.com
            lenelson@rkmc.com

*Counsel for Plaintiffs Best Buy Co., Inc., Best
Buy Purchasing LLC, Best Buy Enterprise
Services, Inc., Best Buy Stores, L.P.,
BestBuy.com, L.L.C., and Magnolia Hi-Fi, LLC.*

/s/  Philip J. Iovieno

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY  12207
Telephone:  (518) 434-0600
Facsimile:   (518) 434-0665
Email:  piovieno@bsfllp.com
Email:  anardacci@bsfllp.com

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131
Email:  wisaacson@bsfllp.com

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301

Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022
Email:  ssinger@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs and Counsel for Plaintiffs Electrograph Systems, Inc., Electrograph Technologies, Corp., Office Depot, Inc., Interbond Corporation of America, P.C. Richard & Son Long Island Corporation, MARTA Cooperative of America, Inc., ABC Appliance, Inc., and Schultze Agency Services, LLC*

/s/  Steven Sklaver

Steven Sklaver
SUSMAN GODFREY LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone:  (310) 789-3100
Facsimile:   (310) 789-3150
Email:  ssklaver@susmangodfrey.com

Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
John P. Lahad
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:  (713) 651-9366
Facsimile:   (713) 654-6666
Email:  kmarks@susmangodfrey.com
          jross@susmangodfrey.com
          jcarter@susmangodfrey.com
          dpeterson@susmangodfrey.com
          jlahad@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone:  (206) 516-3880
Facsimile:   (206) 516-3883
Email:  pfolse@susmangodfrey.com
          rblack@susmangodfrey.com
          jconnors@susmangodfrey.com

*Counsel for Plaintiff Alfred H. Siegel, solely in his capacity as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

1

_/s/  David J. Burman_

2    David J. Burman
        Cori G. Moore

3    Eric J. Weiss
        Nicholas H. Hesterberg

4    Steven D. Merriman
        PERKINS COIE LLP

5    1201 Third Avenue, Suite 4900
        Seattle, WA 98101-3099

6    Telephone:  (206) 359-8000
        Facsimile:   (206) 359-9000

7    Email:  DBurman@perkinscoie.com
                 CGmoore@perkinscoie.com

8                 EWeiss@perkinscoie.com
                 NHesterberg@perkinscoie.com

9                 SMerriman@perkinscoie.com

10   Joren S. Bass
        PERKINS COIE LLP

11   Four Embarcadero Center, Suite 2400
        San Francisco, CA 94111-4131

12   Telephone:  (415) 344-7120
        Facsimile:   (415) 344-7320

13   Email:  JBass@perkinscoie.com

14   _Counsel for Plaintiff Costco Wholesale_
        _Corporation_

15

16   _/s/  William J. Blechman_

17   Richard Alan Arnold
        William J. Blechman

18   Kevin J. Murray
        KENNY NACHWALTER, P.A.

19   201 S. Biscayne Boulevard, Suite 1100
        Miami, FL 33131

20   Telephone:  (305) 373-1000
        Facsimile:   (305) 372-1861

21   Email:  rarnold@knpa.com
               wblechman@knpa.com

22               kmurray@knpa.com

23   _Counsel for Plaintiff Sears Roebuck and Co._
        _and Kmart Corp._

24

25   _/s/  Jason C. Murray_

26   Jason C. Murray
        CROWELL & MORING LLP

27   515 South Flower Street, 40th Floor
        Los Angeles, CA 90071

28   Telephone:  (213) 443-5582

Facsimile:   (213) 622-2690
Email:  jmurray@crowell.com

Jerome A. Murphy
Astor H.L. Heaven
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 624-2500
Facsimile:   (202) 628-5116
Email:  jmurphy@crowell.com
          aheaven@crowell.com

*Counsel for Target Corp.*

DAPS' OPPOSITION TO THOMSON SA'S MOTION TO DISMISS

- 29 -