William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131
Email:  wisaacson@bsfllp.com

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665
Email: piovieno@bsfllp.com
Email: anardacci@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs*
*[Additional Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 07-5944 SC<br><br>MDL No. 1917 |
| This document relates to:<br><br>*Best Buy Co, Inc. v. Technicolor SA, et al.*, No. 13-cv-05264;<br><br>*Siegel v. Technicolor SA, et al.*, No. 13-cv-00141;<br><br>*Costco Wholesale Corp. v. Technicolor SA , et al.*, No. 13-cv-05723;<br><br>*Electrograph Systems, Inc. v. Technicolor SA, et al.*, No. 13-cv-05724;<br><br>*Interbond Corp. of Am. v. Technicolor SA, et al.*, No. 13-cv-05727;<br><br>*Office Depot, Inc. v. Technicolor SA, et al.*, No. 13-cv-05726; | **DIRECT ACTION PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION TO DISMISS COMPLAINTS**<br><br>**Judge:  Hon. Samuel P. Conti**<br>**Court:  Courtroom 1, 17th Floor**<br>**Date:    February 7, 2014**<br>**Time:   10:00 a.m.**<br><br><br>**<u>REDACTED VERSION OF DOCUMENT SOUGHT TO BE PARTIALLY SEALED</u>** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*P.C. Richard & Son Long Island Corp. v. Technicolor SA, et al.*, No. 13-cv-05725;

*Sears, Roebuck & Co. v. Technicolor SA, et al.*, No. 13-cv-05262;

*Schultze Agency Services, LLC v. Technicolor SA, et al.*, No. 13-cv-05668; and

*Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686.

# TABLE OF CONTENTS

Introduction ....................................................................................................................... 1

Factual Background ........................................................................................................... 3

Legal Standard .................................................................................................................. 6

Argument .......................................................................................................................... 7

I.    The DAPs' Claims are Timely Because the Limitations Period Has Been Tolled ............ 7

    A.    Mitsubishi and Its Co-Conspirators Fraudulently Concealed the Conspiracy ....... 8

    B.    The Complaints Allege Actions Taken Directly by Mitsubishi to Conceal the Conspiracy, As Well As Fraudulent Concealment Conduct Imputed to Mitsubishi ................................................................................................. 10

        i.    The DAPs' complaints allege that Mitsubishi directly participated in concealing the conspiracy ....................................................... 10

        ii.    The fraudulent concealment conduct of Mitsubishi's co-conspirators is attributable to Mitsubishi for tolling purposes, regardless of Mitsubishi's purported withdrawal from the conspiracy ............................................... 10

    C.    *American Pipe* Tolled the DAPs' Claims from November 2007 Until November 2011 ................................................................................................. 13

    D.    Government Action Tolled the DAPs' Claims from February 2009 Until Today .......................................................................................................... 16

II.    The Equitable Doctrine of Laches Does Not Bar The DAPs' Claims ............................. 19

    A.    The DAPs did not unreasonably delay bringing suit against Mitsubishi .............. 21

    B.    Mitsubishi makes no showing of evidentiary or expectations-based prejudice .... 22

        i.    Mitsubishi's conclusory allegations are insufficient to prove evidentiary prejudice ....................................................................................... 22

        ii.    Mitsubishi has not suffered expectations-based prejudice ....................... 24

Conclusion ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**                                                     **Page**

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
988 F.2d 1157 (Fed. Cir. 1993) ................................................................... 24

*American Ass'n of Naturopathic Physicians v. Hayhurst*,
227 F.3d 1104 (9th Cir. 2000) ...................................................................... 6

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ................................................................. 2, 7, 13, 14

*Apple Inc. v. Samsung Elec. Co., Ltd.*,
888 F. Supp. 2d 976 (N.D. Cal. 2012) ........................................................ 23

*Arivella v. Lucent Techs., Inc.*,
623 F. Supp. 2d 164 (D. Mass. 2009) .......................................................... 16

*ATM Express, Inc. v. ATM Express, Inc.*,
No. 07-CV-1293, 2009 WL 2973034 (S.D. Cal. Sep. 11, 2009) ...................... 22

*Aurora Enters v. Nat'l Broad Co.*,
688 F.2d 689 (9th Cir. 1982) ....................................................................... 21

*Barneby v. E.F. Hutton & Co.*,
715 F. Supp. 1512 (M.D. Fla. 1989) ............................................................ 15

*Bartlett v. Miller and Schroder Municipals, Inc.*,
355 N.W.2d 435 (Minn. Ct. App. 1984) ....................................................... 16

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*,
620 F.2d 1360 (9th Cir. 1980) ............................................................... 11, 12

*Boone v. Citigroup, Inc.*,
416 F.3d 382 (5th Cir. 2005) ....................................................................... 13

*Boston Telecomm. Grp. Inc. v. Deloitte Touche Tohmatsu*,
249 Fed. Appx. 534 (9th Cir. 2007) ............................................................. 6

*Bratton v. Bethlehem Steel Corp.*,
649 F.2d 658 (9th Cir. Cal. 1980) ..................................................... 2, 19, 20

*Carson v. Independent School Dist. No. 623*,
392 N.W.2d 216 (Minn. 1986) ..................................................................... 16

*Chipanno v. Champion Intern. Corp.*,
702 F.2d 827 (9th Cir. 1983) ................................................................. 15, 18

*Conmar Corp. v. Mitsui & Co., Inc.*,
858 F.2d 499 (9th Cir. 1988) ............................................................. 7, 8, 21

*Costello v. United States*,
365 U.S. 265 (1961) .................................................................................... 19

*Couveau v. American Airlines, Inc.*,
218 F.3d 1078 (9th Cir. 2000) ..................................................................... 20

*Danjaq LLC v. Sony Corp.*,
263 F.3d 942 (9th Cir. 2001) ................................................................. 22, 24

*Dungan v. Morgan Drive-Away, Inc.*,
570 F.2d 867 (9th Cir. 1978) ................................................................. 17, 18

*E.E.O.C. v. Global Horizons, Inc.*,
   904 F. Supp. 2d 1074 (D. Haw. 2012) ................................................................. 20

*Evergreen Safety Council v. RSA Network Inc.*,
   697 F.3d 1221 (9th Cir. 2012) ............................................................................ 22

*Hatfield v. Halifax PLC*,
   564 F.3d 1177 (9th Cir. 2009) ............................................................................ 15

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
   885 F. Supp. 2d 617 (S.D.N.Y. 2012) ................................................................. 18

*In re Beaty*,
   306 F.3d 914 (9th Cir. 2002) .............................................................................. 23

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   738 F. Supp. 2d 1011 (N.D. Cal. 2010) ...................................................... passim

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2013 WL 4505701 (N.D. Cal. Aug. 31, 2013) ................................................. 1, 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 07-5944, 2010 WL 9543295  (N.D. Cal. Feb. 5, 2010) ........................... 1, 11

*In re High Fructose Corn Syrup Antitrust Litig.*,
   293 F. Supp. 2d 854 (C.D. Ill. 2003) ................................................................. 13

*In re Katz Interactive Call Processing*,
   Nos. CV 2:07-ML-01816-B-RGK, 07-CV-2360-RGK, 2009 WL 8591011
   (C.D. Cal. May 1, 2009) ..................................................................................... 23

*In re Linerboard Antitrust Litig.*,
   223 F.R.D. 335 (E.D. Pa. 2004) ......................................................................... 15

*In re Scrap Metal Antitrust Litig.*,
   527 F.3d 517 (6th Cir. 2008) .............................................................................. 11

*In re Transpacific Passenger Air Transportation Antitrust Litig.*,
   No. C 07-05634 CRB, 2011 WL 1753738 (N.D. Cal. May 9, 2011) ................. 11

*IXYS Corp. v. Advanced Power Tech., Inc.*,
   321 F. Supp. 2d 1156 (N.D. Cal. 2004) .............................................................. 23

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002)................................................................. 2, 4, 19, 21

*Kourtis v. Cameron*,
   419 F.3d 989(9th Cir. Cal. 2005), abrogated ............................................... 20, 21

*Lee v. Grand Rapids Board of Education*,
   148 Mich. App. 364, 384 N.W.2d 165 (MI 1986................................................ 16

*Leh v. Gen. Petroleum Corp.*,
   382 U.S. 54 (1965) ....................................................................................... 16, 18

*Madison Square Garden, L.P. v. NHL*,
   *No. 07 CV*, 08455, 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) ........................ 20

*McCune v. F. Alioto Fish Co.*,
   597 F.2d 1244 (9th Cir. 1979)............................................................................. 20

*Meyers v. Asics Corp.*,
   974 F.2d 1304 (Fed. Cir. 1992)........................................................................... 23

*Mishewal Wappo Tribe of Alexander Valley v. Salazar*,
   No. 5:09-CV-02502, 2011 WL 5038356  (N.D. Cal. Oct. 24, 2011) ................... 20

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999)................................................................................ 12, 13

*Mt. Hood Stages, Inc. v. Greyhound Corp.*,
   555 F.2d 687 (9th Cir. 1977) ...................................................................................... 7

*Riddell v. Riddell Wash. Corp.*,
   866 F.2d 1480 (D.C. Cir. 1989) ................................................................................ 11

*Rubber Chem.*,
   504 F. Supp. 2d 777 (N.D. Cal. 2007) ............................................................... 8, 9, 12

*Rutledge v. Boston Woven Hose & Rubber Co.*,
   576 F.2d 248 (9th Cir. 1978)....................................................................................... 8

*Seaboard Corp. v. Marsh Inc.*,
   284 P.3d 314 (Kan. August 31, 2012).......................................................................... 15

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,
   621 F.3d 981 (9th Cir. 2010)...................................................................................... 24

*Sensible Foods, LLC v. World Gourmet, Inc.*,
   No. 11-2819, 2011 WL 5244716  (N.D. Cal., Nov. 3, 2011) ......................................... passim

*Sierra Club v. U.S. Dep't of Transp.*,
   245 F. Supp. 2d 1109 (D. Nev. 2003) ......................................................................... 21

*State of New York v. Hendrickson Bros., Inc.*,
   840 F.2d 1065 (2d. Cir. 1988)............................................................................... 11, 12

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
   465 F.3d 1102 (9th Cir 2006)..................................................................................... 23

*Tosti v. City of Los Angeles*,
   754 F.2d 1485 (9th Cir. 1985)..................................................................................... 15

*Univ. of Pittsburgh v. Champion Products Inc.*,
   686 F.2d 1040 (3d Cir. 1982)................................................................................ 24, 25

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010)....................................................................................... 6

*Williams v. Dow Chem. Co.*,
   No. 01-cv-4307, 2004 WL 1348932 (S.D.N.Y. June 16, 2004) ..................................... 16

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971)................................................................................................... 14

**STATUTES AND TREATIES**

15 U.S.C. § 16(i) .................................................................................................. passim

*Korean Extradition Treaty*,
   art. 2(1), entered into force Dec. 20, 1999, S. Treaty Doc. 106-2 ................................. 18

Monopoly Regulation and Fair Trade Act, Act. No 9554, Mar. 25, 2009.........................18,19

**RULES**

Fed. R. Civ. P. 12(g), (h).............................................................................................. 6

**OTHER AUTHORITIES**

Hee-Eun Kim, Developments in Criminal Enforcement of Competition Law in Korea,
   COMPETITION POLICY INTERNATIONAL (2012)...............................................................18

The Direct Actions Plaintiffs (the "DAPs") subject to Mitsubishi's Motion to Dismiss (the "Motion") [Dkt. No. 2299] hereby submit their Opposition to the Motion.

## **INTRODUCTION**

As an initial matter, Mitsubishi's attempt to portray itself as a complete "stranger to the CRT litigation" and as an "apparent victim of the conspiracy," Motion at 2-3, is without a basis in fact.  Mitsubishi entered into an initial tolling agreement with the Indirect Purchaser Plaintiff ("IPP") class over two years ago, in November 2011, the same month in which the DAPs filed their original complaints against the other conspirators  Mitsubishi has been on notice since at least that time that it was a potential defendant in this litigation.  Moreover, as the DAPs have detailed in their complaints, ongoing discovery has revealed that Mitsubishi played an active role in the CRT conspiracy and, ██████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████

Despite this, Mitsubishi now makes two arguments in an effort to achieve dismissal of the DAPs' claims against it: (1) the DAPs' claims are barred by the statute of limitations, and (2) the DAPs' claims should be dismissed on laches grounds.  Given the intensely factual nature of these arguments, Mitsubishi faces an exceedingly high bar to succeed on either ground, particularly on a motion to dismiss.  Mitsubishi cannot meet its substantial burden, and its motion must fail.

With respect to statute of limitations, the DAPs' claims are timely because the limitations period has been tolled by a combination of tolling doctrines.  First, fraudulent concealment tolled the statute of limitations on the DAPs' claims until November 2007, when governmental investigations into the CRT industry became public.  This Court has already ruled that nearly identical fraudulent concealment allegations made by plaintiffs in this litigation (including the DAPs) are adequate.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2013 WL 4505701, at *4 (N.D. Cal. Aug. 31, 2013) [Dkt. No. 1856]; *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024 (N.D. Cal. 2010) [Dkt No. 665].  Mitsubishi rehashes arguments previously made by other defendants, but the Court's reasoning applies

1    equally to Mitsubishi and defeats its fraudulent concealment argument here.

2         Second, the limitations period for the DAPs' claims was tolled from November 2007 to

3    November 2011 pursuant to the class action tolling doctrine set forth in *American Pipe & Constr.*

4    *Co. v. Utah*, 414 U.S. 538, 554 (1974).  The first putative class action complaints were filed in

5    November 2007 and the DAPs filed their initial complaints in November 2011, and thus

6    *American Pipe* applied in the interim.  Mitsubishi, however, contends that because it was not a

7    defendant in the putative class actions, *American Pipe* does not apply.  Mitsubishi's narrow

8    interpretation of the *American Pipe* rule has no support in the law of this Circuit, would be

9    contrary to the remedial purpose of the Supreme Court's ruling, and is inconsistent with the

10   undisputed application of other tolling doctrines.

11        Third, the limitations period for the DAPs' claims was also tolled for the period

12   beginning in February 2009 and continuing through the present because of criminal actions

13   instituted by the United States Department of Justice relating to the CRT conspiracy.   In

14   February 2009, a grand jury indicted C.Y. Lin of Chunghwa for his involvement in the

15   conspiracy.  Five other indictments followed in 2009 and 2010.  <u>All of these criminal actions</u>

16   <u>remain pending</u>.  Pursuant to the terms of 15 U.S.C. § 16(i), governmental tolling remains in

17   effect during the pendency of these actions and for one year thereafter.  Mitsubishi's arguments

18   to the contrary have no basis in law or fact.

19        With respect to laches, this Court has recognized that it is exceptionally difficult to meet

20   the standard for a laches defense in a motion to dismiss.  *Sensible Foods, LLC v. World Gourmet,*

21   *Inc.*, No. 11-2819, 2011 WL 5244716 at *4-5 (N.D. Cal., Nov. 3, 2011) (Conti, J.) (denying

22   motion to dismiss on laches grounds).   Indeed, laches questions are rarely susceptible to

23   resolution even by summary judgment.  *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666-67

24   (9th Cir. Cal. 1980).  Moreover, where, as here, the DAPs' claims were filed within the tolled

25   statute of limitations period, there is a "strong presumption" that laches is inapplicable.  *Jarrow*

26   *Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835-36 (9th Cir. 2002).

27        Mitsubishi has made no showing that the DAPs unreasonably delayed in bringing suit

28   against Mitsubishi or that Mitsubishi has been prejudiced as a result.  Rather, Mitsubishi makes

2

1   unsupported conclusory statements about the unreasonableness of the timing of the DAPs'

2   complaints and the nature of the prejudice they purport to have suffered.  Mitsubishi's assertions,

3   however, do not provide support for the specific legal determinations necessary to find either the

4   delay or prejudice elements of laches.  With respect to the prejudice element in particular,

5   Mitsubishi could not have suffered any evidentiary prejudice, since they have had an obligation

6   to preserve all relevant evidence since at least November 2011, when they first entered into a

7   tolling agreement with the IPP class.  Moreover, they have not suffered any expectations-based

8   prejudice, which requires a showing of at least some reliance by the defendant on the absence of

9   a lawsuit.  Under the law, Mitsubishi's complaints about the current litigation schedule are not a

10  sufficient basis to find either evidentiary or expectations-based prejudice.

11      For all of the above reasons, and as described in further detail below, the DAPs

12  respectfully submit that Mitsubishi's motion should be denied in its entirety.

13                              **FACTUAL BACKGROUND**

14      ***The DAPs' allegations.***  In each of the complaints Mitsubishi seeks to dismiss, the DAPs

15  allege in significant detail the existence of a long-running, global conspiracy to fix the prices of

16  CRTs.  *See, e.g.*, Electrograph FAC [Dkt. No. 2279-4] ¶ 1.  Each of these complaints details in

17  over 50 paragraphs how the "CRT conspiracy was effectuated through a combination of group

18  and bilateral meetings."  *See, e.g.*, *id.*, at ¶ 126; ¶¶ 125-181.

19      ***Mitsubishi participated in the CRT conspiracy.***   The DAPs further detail in their

20  complaints specific actions taken by Mitsubishi in furtherance of the conspiracy, alleging that

21  "[b]etween at least 1995 and 2005, Defendant Mitsubishi participated in multiple bilateral and

22  group meetings with its competitors, including but not limited to, co-conspirators Samsung SDI,

23  Toshiba, Chunghwa, and Hitachi," where the parties discussed "CRT prices, production, future

24  production, revenues, volumes, demand, inventories, estimated sales, plant shutdowns, customer

25  allocation, and new product development, and agreed on prices, customer allocations, and supply

26  levels for CRTs."  *E.g.,* BrandsMart FAC [Dkt. No. 2279-6] ¶ 144.

27  ██████████████████████████████████████████████████

28  ██████████████████████████████████████████████████



**Mitsubishi and its co-conspirators fraudulently concealed the conspiracy.**  The DAPs also allege that the conspirators went to great lengths to keep meetings and coordination hidden from the public and customers.  *See id*. at ¶¶ 217-231.  For example, meetings were held in secret, and Defendants attempted to prevent the creation of written records by meeting in person and discouraging participants from taking minutes.  *See id.* at ¶ 222.  Defendants discussed how to evade antitrust laws and conceal the conspiracy from non-conspirators.  Meeting attendees "were instructed on more than [one] occasion not to disclose the fact of these meetings to outsiders, or even to other employees of Defendants not involved in CRT pricing or production."  *Id.*  Defendants would "coordinate and exchange in advance the texts of the proposed communications with customers" containing "pretextual reasons for their pricing actions and output restrictions."  *Id.* ¶ 219.  Mitsubishi took an active role in the concealment.

The DAPs, therefore, "could not have discovered the alleged conspiracy at an earlier date

by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, conspiracy or combination," *id.* ¶ 221, until governmental antitrust bodies' investigations of price-fixing in the CRT industry became public in November 2007.

   ***Procedural posture.*** On November 26, 2007, the first putative class action complaint was filed on behalf of direct purchasers of CRTs and CRT Products.[1]  Likewise, on November 13, 2007, the first putative class action complaint was filed on behalf of indirect purchasers of CRTs and CRT Products.[2]  Mitsubishi entered into a tolling agreement with the Indirect Purchaser Plaintiff ("IPP") class in November 2011.[3]

   On February 10, 2009, a federal grand jury indicted Cheng Yuan Lin, a/k/a C.Y. Lin, a Taiwanese CRT executive, for his role in conspiracies to fix the prices of color display tubes ("CDTs") and color picture tubes ("CPTs").  *See* Office Depot FAC [Dkt. 2279-8] ¶ 187.  Grand juries subsequently indicted five more Korean and Taiwanese CRT executives for their roles in the conspiracy.  *Id.*  ¶¶ 188-190.  These indictments remain open.

   In November 2011, the DAPs filed complaints against certain CRT conspirators, not including Mitsubishi.  On August 22, 2012, the IPPs filed a motion for leave to amend their complaint to add claims against Mitsubishi, Thomson, and Videocon.  *See* Dkt. No. 1325.  As the basis for their motion, the IPPs stated that recent discovery had uncovered "production line status reports" implicating Mitsubishi.  *Id.* at 3.  However, the IPP did not cite any specific reports in their motion or supporting declaration.  Thus, at that time the DAPs had no independent basis to make similar allegations about Mitsubishi.  Subsequently, the DAPs

---

[1] *See Crago, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, Case No. 07-5944 SC (N.D. Cal) [Dkt. No. 1].

[2] *See Kindt v. Matsushita Electric Industrial Co., Ltd. et al*, Case No. 1:07-cv-10322-GBD (S.D.N.Y.) [Dkt. No. 1].

[3] IPPs' Motion to Amend Complaint [Dkt No. 1325] at 7.  The IPP class then sought to amend their complaint to add Mitsubishi as a defendant in August 2012.  *See id.*.  On December 27, 2012, this Court granted the parties' joint stipulation whereby the IPP class agreed to withdraw its motion, but maintained its "right to file a separate lawsuit against Mitsubishi Electric at a later date asserting similar claims as those contained in the Complaint." *See* Dkt. No. 1505; Dkt. No. 1496 at 1.

1  identified the documents on which the IPPs relied, confirmed their substance, and located

2  additional evidence implicating Mitsubishi.  The DAPs then moved to amend their complaints on

3  March 26, 2013 to add Mitsubishi as a Defendant.  On June 28, 2013, the Interim Special Master

4  recommended that the Court grant the motion and grant the DAPs leave to amend their

5  complaints to include, among other things, claims against Mitsubishi.  *See* Dkt. No. 1751.  On

6  September 26, 2013, the Court declined to allow the DAPs to add claims against Mitsubishi.  *See*

7  Dkt. No. 1959.

8      On November 11-13, 2013, the DAPs filed the instant complaints against Mitsubishi,

9  Thomson and Videocon.  On December 20, 2013, certain of the DAPs amended their complaints,

10  ██████████████████████████████████████████████████████

11  ████████████████████████████████████████████  *See* Dkt. No.

12  2279.  On December 30, 2013, Mitsubishi moved to dismiss the operative DAP complaints.[4]

13  ## LEGAL STANDARD

14      To survive a motion to dismiss an antitrust conspiracy complaint, "'[s]pecific facts are

15  not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is

16  and the grounds upon which it rests.'"  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F.

17  Supp. 2d 1011, 1017 (N.D. Cal. 2010) [Dkt No. 665].  Moreover, a complaint may be dismissed

18  on limitations grounds at the pleading stage only when "it appears beyond doubt that the plaintiff

19  can prove *no set of facts* that would establish the timeliness of the claim."  *Von Saher v. Norton*

20  *Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (emphasis added)

21  (quotation and citation omitted).   Mitsubishi faces an even higher bar to succeed on laches than

22  on statute of limitations.   Because of the fact-intensive nature of the defense, "a laches

23  determination is ill-suited for a motion to dismiss for failure to state a claim," and is only

24

25  [4] By failing to raise the defenses of lack of personal jurisdiction, improper venue, insufficient
process and insufficient service of process, Mitsubishi has now waived those defenses and may

26  not raise them in a subsequent motion to dismiss or in their answer.  Fed. R. Civ. P. 12(g), (h);
*see also American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107 (9th Cir.

27  2000); *Boston Telecomm. Grp. Inc. v. Deloitte Touche Tohmatsu*, 249 Fed. Appx. 534, 537 (9th
Cir. 2007) (noting that "[t]his circuit has construed these provisions strictly").  "The fact that

28  [Defendants'] first filing was not dubbed a 'Rule 12' motion is of no significance.  The rule
applies with equal effect no matter what is the title of the pleading."  *American Ass'n of*
*Naturopathic Physicians*, 227 F.3d at 1107.

"seldom susceptible of resolution by summary judgment." *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819, 2011 WL 5244716 at *4-5 (N.D. Cal., Nov. 3, 2011) (Conti, J.) (quotations and citations omitted).

**ARGUMENT**

**I.     THE DAPS' CLAIMS ARE TIMELY BECAUSE THE LIMITATIONS PERIOD HAS BEEN TOLLED**

        The DAPs' claims are timely because the limitations period has been tolled by a combination of tolling doctrines.  The DAPs allege in their complaints that Mitsubishi fraudulently concealed the conspiracy.  Because the DAPs were left with "neither actual nor constructive knowledge of the facts giving rise to [their] claim[s]," this concealment tolled the statute of limitations until the DAPs became aware of the conspiracy when it became public at the end of 2007.  *Conmar Corp. v. Mitsui & Co., Inc.*, 858 F.2d 499, 502 (9th Cir. 1988). Additionally, the DAPs' claims were tolled pursuant to the class-action tolling doctrine set forth in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).  The *American Pipe* doctrine tolled the limitations period starting from the filing of the initial class action complaints in November 2007, until November 14, 2011, when the DAPs brought their first set of claims. Furthermore, in February 2009, the limitations period was also tolled pursuant to 15 U.S.C. § 16(i), when federal grand juries began returning indictments against individuals for participating in the conspiracy.  *See, e.g.*, BrandsMart FAC ¶ 9.  Government actions relating to the CRT conspiracy remain ongoing, and so the limitations period remains tolled.  15 U.S.C. § 16(i).

        Accordingly, through a combination of these well-established tolling doctrines, the limitations period has not run and the DAPs' claims remain timely.  *See Mt. Hood Stages, Inc. v. Greyhound Corp.*, 555 F.2d 687, 698 n.26 (9th Cir. 1977) (tolling doctrines may be "tacked" together), *vacated on other grounds*, 437 U.S. 322, 337 (1978).

        The following table depicts the proper application of these tolling doctrines to the DAPs' claims, such that no limitations period for any of their claims has expired:

| Basis for Tolling: | Tolling Period: |
|---|---|
| Fraudulent Concealment | Through November 2007 |
| *American Pipe* Tolling | November 2007–November 2011 |
| Government Action tolling (15 U.S.C. § 16(i)) | February 2009–Present |

### A.  *Mitsubishi and Its Co-Conspirators Fraudulently Concealed the Conspiracy*

First, as this Court has previously concluded multiple times in this very litigation, "it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly when the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 4505701, at *4 (N.D. Cal. Aug. 31, 2013) [Dkt. No. 1856] (quoting *Rubber Chem.*, 504 F. Supp. 2d 777, 788 (N.D. Cal. 2007)) (denying motion to dismiss on statute of limitations grounds);  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024 (N.D. Cal. 2010) (same).  There is no reason for a different result here.

Indeed, the DAPs have more than adequately alleged that the statute of limitations on the DAPs' claims was tolled until November 2007 by Mitsubishi's and its co-conspirators' fraudulent concealment of the price-fixing conspiracy.  In order to toll the limitations period based on fraudulent concealment, a plaintiff must show that it defendants actively concealed the conspiracy, and that plaintiff had neither actual nor constructive knowledge of the facts giving rise to its claim, despite its diligence in trying to uncover those facts.  *Conmar*, 858 F.2d at 502 (citing *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249-50 (9th Cir. 1978)).

The DAPs' complaints allege in detail how Defendants, including Mitsubishi, affirmatively misled the their customers and the public into believing that CRT prices were governed by market forces, rather than Defendants' collusion.  The complaints explain how Defendants, including Mitsubishi, carried out the conspiracy through "secret meetings, [and] surreptitious communications . . . in order to prevent the existence of written records, discussion on how to evade antitrust laws and concealing the existence and nature of their competitor pricing discussions from non-conspirators (including customers)."  *See, e.g.*, BrandsMart FAC ¶¶ 221.   The conspirators, including Mitsubishi, agreed to "give pretextual reasons for price increases and output reductions to the customers," *id.* ¶ 225, by, for instance, blaming a 2004 price increase "on a shortage of glass shells use[d] for manufacturing CRT monitors."  *Id.* ¶ 228. This type of pretext was used to cover up the conspiracy by giving the conspirators' customers an alternative reason why all major CRT producers were raising prices at the same time.

1    In addition, when the conspirators' top executives attended conspiracy meetings, they

2    "agreed to stagger their arrivals and departures at such meetings to avoid being seen in public

3    with each other and with the express purpose and effect of keeping them secret." *Id.* ¶ 222.

4    Additionally, Defendants and their co-conspirators instructed meeting attendees "not to take

5    minutes" and "not to disclose the fact of these meetings to outsiders" or even to employees "not

6    involved in CRT pricing or production." *Id.*

7    The Court has already analyzed fraudulent concealment allegations that are essentially

8    identical to those the DAPs have made here, and concluded that they "are sufficient to deny" this

9    type of motion. *In re CRT*, 738 F. Supp. 2d at 1025; *see also In re CRT*, 2013 WL 4505701.

10   The Court pointed to allegations that "Defendants gave pretextual reasons for price increases,"

11   "coordinated their misleading announcements," and "took steps to keep their meetings secret."

12   *In re CRT, 738 F. Supp. 2d* at 1024; *see also In re CRT*, 2013 WL 4505701. The DAPs allege

13   the same here. These allegations are more than sufficient, particularly in light of the fact that the

14   DAPs have not yet had access to discovery from Mitsubishi.

15   In addition, the DAPs allege that, as a result of Defendants' fraudulent concealment, the

16   DAPs had "neither actual nor constructive knowledge of the facts supporting [their] claim for

17   relief despite their diligence in trying to discover the facts," until the investigations became

18   public in November 2007. *See, e.g.*, Electrograph FAC ¶ 232. The Court has held similar

19   allegations as to diligence to be sufficient at the pleading stage, because "Plaintiffs are not under

20   a duty continually to scout around to uncover claims which they have no reason to suspect they

21   might have." *In re Rubber Chem. Antitrust Litig.*, 504 F. Supp. 2d at 788.

22   Despite the obvious sufficiency of the DAPs' fraudulent concealment allegations,

23   Mitsubishi asserts that the conspirators' agreement to conceal their conspiracy, and the steps they

24   took in furtherance of that agreement, "were entirely internal to defendants, and could not have

25   misled plaintiffs." Motion at 17. Mitsubishi's argument is illogical. Defendants' internal

26   communications demonstrate that Defendants' actions were designed to mislead *their customers*

27   *and the public, including the DAPs*. Defendants destroyed evidence of their meetings, attempted

28   to avoid being seen together, and then lied to their customers and the public in a coordinated

manner so as to avoid detection.  Thus, the fact that the communications evidencing Defendants'

fraudulent concealment were internal is not surprising at all.  Of course Defendants would not

have shared their concealment scheme with anyone outside of the conspiracy.  It is not the

internal communications themselves, but rather the actions they described, that were misleading.

### B. The Complaints Allege Actions Taken Directly by Mitsubishi to Conceal the Conspiracy, As Well As Fraudulent Concealment Conduct Imputed to Mitsubishi

Mitsubishi also contends that the DAPs' fraudulent concealment allegations are

insufficient because they do not state with particularity either (1) Mitsubishi's direct involvement

in the concealment of the conspiracy or (2) concealment conduct that may be imputed to

Mitsubishi.  This argument fails on both counts.

   i.   <u>The DAPs' complaints allege that Mitsubishi directly participated in concealing the conspiracy.</u>

While not required for a finding of fraudulent concealment, the DAPs' complaints do

contain specific allegations as to Mitsubishi's involvement in the cover-up of the conspiracy.



ii.     The fraudulent concealment conduct of Mitsubishi's co-conspirators is attributable to Mitsubishi for tolling purposes, regardless of Mitsubishi's purported withdrawal from the conspiracy.

In addition to having alleged Mitsubishi's direct participation in Defendants' fraudulent concealment, the DAPs also set forth detailed allegations of fraudulent concealment by other conspirators that can be imputed to Mitsubishi. *See, e.g.*, Electrograph FAC ¶¶ 236-43. The law is clear that steps taken by Mitsubishi's co-conspirators to conceal the price-fixing conspiracy should be imputed to Mitsubishi. *See, e.g., Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989). In pleading fraudulent concealment of a global conspiracy involving numerous defendants, detailed defendant-by-defendant allegations are not required. As the former Special Master in this action previously held:

> Defendants' motions emphasizes that plaintiffs have not alleged fraudulent concealment on a defendant-by-defendant basis. . . .
>
> It is one thing to compel the plaintiffs to plead that each defendant is a part of the conspiracy. It is another to require the plaintiffs to plead facts as to what each defendant did within the conspiracy, including concealment. And indeed, such a requirement would be contrary to a general principle of conspiracy law that once a party becomes a member of a conspiracy he is bound by all of the acts of the other conspirators. We must also not lose sight of the fact that the complaints contain many well pleaded allegations, against numerous of the named defendants, of their participation in the conspiracy. And application of the pleading requirements for fraudulent concealment must recognize that by their very nature the acts of fraudulent concealment would not be readily apparent to even a diligent investigation by plaintiffs, and particularly not in the details of which defendants did what in order to conceal.

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944, 2010 WL 9543295 at *10 (N.D. Cal. Feb. 5, 2010) (*R&R adopted by* 738 F. Supp. 2d 1011).

Indeed, "where the original conspiracy contemplates concealment, or where the concealment is in furtherance of that conspiracy, affirmative acts of concealment by one or more of the conspirators can be imputed to their co-conspirators for purposes of tolling the statute of limitations." *Riddell*, 866 F.2d at 1493 (citing, *e.g., State of New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1085 (2d. Cir. 1988)); *see also Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980) (holding that "[p]articipation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability"); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 538 (6th Cir. 2008) (finding that "[f]raudulent concealment

1   . . . may be established through the acts of co-conspirators," and noting that the defendant could

2   cite no authority to the contrary).[5]

3        Furthermore, so long as the conspiracy remains concealed, the limitations period remains

4   tolled as to all conspirators, regardless of when their individual participation in the conspiracy

5   terminated.   In *In re Rubber Chemicals Antitrust Litigation*, 504 F. Supp. 2d 777 (N.D. Cal.

6   2007), one defendant argued that he withdrew from the conspiracy in December 2001, and

7   therefore the statute of limitations began running for claims against h as of that date.   The Court

8   rejected that argument, finding that allegations of fraudulent concealment were sufficient to toll

9   the statute of limitations until October 2002, when the conspiracy was actually disclosed.   *Id.* at

10   789-90.   The same logic applies here.   Mitsubishi cannot escape liability for a conspiracy in

11   which it participated and which it fraudulently concealed merely by withdrawing before it was

12   made public.   To hold otherwise would allow Mitsubishi to benefit from its co-conspirators'

13   continued fraudulent concealment.   Accordingly, Defendants' fraudulent concealment tolled the

14   statute of limitations for the DAPs' claims against all Defendants until November 2007.

15        In arguing to the contrary, Mitsubishi relies on two inapposite cases.   First, Mitsubishi

16   cites to *Hendrickson Bros.*, 840 F.2d at 1084-85, for its contention that "the actions of a co-

17   conspirator may only be imputed to a defendant during the time that it participated in the

18   conspiracy."   Motion at 16.   *Hendrickson Bros.* simply does not support this proposition because

19   the case did not concern, and the court did not address, the effect of withdrawal on co-

20   conspirator imputation.   *See* 840 F.2d at 1084-85.   Second, Mitsubishi relies on a superseded

21   version of *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999),

22   _____

23   [5] While seeming to concede that the conduct of co-conspirators may be imputed to each member
   of the conspiracy, Mitsubishi also cites *In re Transpacific Passenger Air Transportation*

24   *Antitrust Litigation*, No. C 07-05634 CRB, 2011 WL 1753738, at *21 (N.D. Cal. May 9, 2011)
   for the proposition that a "lack of particularity with regard to specific defendants warrant[s]

25   dismissal."   Motion at 18.   This is a blatant mischaracterization of *In re Transpacific*.   In that
   case, two members of an antitrust conspiracy asserted that the fraudulent concealment allegations

26   lacked particularity with regard to all defendants, or, alternatively, that the complaint did not
   allege that the two moving defendants actively participated in the concealment.   The Court found

27   that the concealment allegations were insufficient as to all defendants, *id.* at *20, but then
   explicitly stated that it was "not swayed by Defendants' additional argument, that the fraudulent

28   concealment claims fail because they make no specific allegations of fraudulent concealment by
   Air New Zealand and Malaysian Airlines."   *Id.* at *21 & n.22 (citing *Beltz Travel*, 620 F.2d at
   1367).

1   for its argument that withdrawal from a conspiracy marks the beginning of the limitations period

2   for claims against the withdrawing party.  However, in the amended version of that opinion, the

3   court made clear that withdrawal from a conspiracy is not relevant to the running of the

4   limitations period, so long as the conspiracy remains undisclosed.  211 F.3d 1224 (11th Cir.

5   2000) ("As to Pet, we hold that it effectively withdrew from the conspiracy in 1985 and, as to it,

6   these actions are not timely-filed *unless the statute was equitably tolled by fraudulent*

7   *concealment.  If so, Pet would be liable for any price-fixing activity prior to its withdrawal.*")

8   (emphasis in original).

9        In any event, this Court has already rejected similar arguments as to withdrawal,

10   commenting that self-serving suggestions that defendants "withdrew from the alleged conspiracy

11   . . . raise[] factual questions inappropriate for resolution at the motion-to-dismiss stage."  *In re*

12   *CRT*, 738 F. Supp. 2d at 1025.  Mitsubishi is thus incorrect that the mere assertion of the sale of

13   its CRT business in 2005 establishes, as a matter of law, that Mitsubishi withdrew from the

14   conspiracy.  Mitsubishi cites no case reaching such a conclusion with respect to a motion to

15   dismiss.  The only case they cite regarding the sale of a business—*Morton's*—involved a

16   determination at summary judgment.  The court there only concluded that the defendant had

17   withdrawn after determining, from the factual record, that it "certainly 'retired' and totally

18   severed its ties" to the conspiracy, and "did nothing more to assist or participate in the price-

19   fixing activities." *Morton's Market,* 198 F.3d at 839 .  There is no basis for such a conclusion

20   here.[6]

21      **C.  American Pipe *Tolled the DAPs' Claims from November 2007 Until November 2011***

22        Mitsubishi contends that *American Pipe* tolling does not apply to the DAPs' claims

23   because no Mitsubishi entity was named in any class action complaint relating to the CRT

24   conspiracy.  *See* Motion at 15 (citing *Boone v. Citigroup, Inc*., 416 F.3d 382, 392 (5th Cir.

25   2005)).  But Mitsubishi's contention is based on out-of-circuit precedent that does not properly

26

27   [6] Mitsubishi also cites to *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854
     (C.D. Ill. 2003), which dealt with an employee's termination—not the sale of a business.  In that

28   case, the plaintiff had made only a "vague reference" to an "overt act . . . taken in furtherance of
     the conspiracy within the limitations period."  *Id.* at 860.  That is not the case here.  *See, e.g.*,
     BrandsMart FAC ¶¶ 144-45.

account for the purpose of the tolling doctrine as it is applied by the Supreme Court and the Ninth Circuit.

As the Supreme Court held in *American Pipe*, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  414 U.S. at 554. This rule exists to disincentivize members of the prospective class from rushing to the courthouse to intervene and proceed on an individual basis:

> A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable. . . . [A] rule requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions.

*Id.* at 553-54 (footnotes omitted).

In this case, the interests that *American Pipe* serves to protect are furthered by the application of the equitable tolling doctrine as to all members of the CRT conspiracy, regardless of whether they were named as defendants in the initial complaint.   Here, the statute of limitations was tolled between November 2007 (when the first putative class action complaints were filed) and November 14, 2011 (the date on which the DAPs filed their complaints). During this period, as passive members of a putative class, the DAPs had no access to discovery materials or non-public information relating to the conspiracy.   But upon intervening and investigating the scope of the conspiracy, the DAPs determined that they had claims relating to the CRT conspiracy that had not been asserted by the class.   Under Mitsubishi's application of *American Pipe*, the DAPs would be punished for exercising the very course of conduct that Rule 23 and the Supreme Court urge and allow parties to take—*i.e.*, wait until the first opt-out date in the case to examine their Rule 23 right to proceed individually with their claims.

Not only would Mitsubishi's narrow tolling rule defeat the remedial purpose of *American Pipe*, it would also conflict with other applications of tolling provisions that extend broadly to suspend the statute of limitations for subsequent individual claims that differ from the prior action.   For example, the government action tolling provision, discussed *infra* at Section I(D),

applies to any private cause of action that is partially based on any matter encompassed by the federal government's antitrust suit, even with respect to defendants that are not mentioned in the government's complaint. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 335 (1971) (holding that government tolling applies "even if the defendant named in the private suit was named neither as a defendant nor as a coconspirator by the Government"); *see also Chipanno v. Champion Intern. Corp.*, 702 F.2d 827, 833 (9th Cir. 1983) ("section 16(i) must be broadly construed to accomplish its remedial purpose"). Similarly, the Ninth Circuit permits *American Pipe* tolling of individual claims that differ from those asserted by a prior class, provided that the class action "alerted [the defendant] to make appropriate investigations." *See Tosti v. City of Los Angeles*, 754 F.2d 1485, 1489 (9th Cir. 1985) ("We find no persuasive authority for a rule which would require that the individual suit must be identical in every respect to the class suit for the statute to be tolled.").

Accordingly, because applying *American Pipe* tolling to the DAPs' claims against Mitsubishi comports with the remedial purpose of the Supreme Court's ruling and would be consistent with other applications of tolling provisions, the prior class action complaints properly suspended the statute of limitations until the individual plaintiffs opted out of the class actions.

Moreover, *American Pipe* tolling applies not only to the DAPs' federal claims, but also to their state law claims where the states at issue have adopted cross-jurisdictional tolling. *See In re Linerboard Antitrust Litig.*, 223 F.R.D. 335 (E.D. Pa. 2004).[7] There is an interest in cross-jurisdictional tolling "[i]n the antitrust context, [because] declining to adopt cross-jurisdictional class action tolling will invite the filing of numerous protective, duplicative and in many cases, unnecessary, suits by class members that want to consider filing claims under state antitrust law not included in a federal class action complaint." *Id.* at 346 (citation omitted). In any event, independent of the federal interest involved, several of the states under whose laws the DAPs

---

[7] The DAPs also direct the Court to their more comprehensive discussion of the application of cross-jurisdictional tolling to their state law claims in their Opposition to Defendants' Joint Motion to Dismiss [Dkt. No. 1384] at 18-20; *see also* DAPs' Motion to Adopt Rulings from R&R Regarding Defendants' Motion to Dismiss [Dkt. No. 1749] at 16-18; DAPs' Objections to R&R Regarding Philips' and LG's Motion to Dismiss [Dkt. No. 1704] at 15-17.

1  have brought claims would apply cross-jurisdictional tolling here.[8]

2      **D.  Government Action Tolled the DAPs' Claims from February 2009 Until Today**

3          The limitations period for the DAPs' claims was also tolled starting in February 2009

4  because of actions instituted by the United States Department of Justice relating to the CRT

5  conspiracy.  By statute,

6          [w]henever any civil or criminal proceeding is instituted by the United States to
           prevent, restrain, or punish violations of any of the antitrust laws . . . the running
7          of the statute of limitations in respect to every private or State right of action
           arising under said laws and based in whole or in part on any matter complained of
8          in said proceeding shall be suspended during the pendency thereof and for one
           year thereafter . . . ."
9

10  15 U.S.C. § 16(i).  The Supreme Court has instructed that "effect must be given to the broad

11  terms of the statute itself—based in whole or in part on any matter complained of—in light of

12  Congress' belief that private antitrust litigation is one of the surest weapons for effective

13  enforcement of the antitrust laws."  *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59 (1965)

14  (quotation and citation omitted).

15          As such, the DAPs' four-year limitations period against Mitsubishi was tolled on

16  February 10, 2009 and remains tolled today.  On February 10, 2009, a federal grand jury indicted

17  C.Y. Lin of Chunghwa for his involvement in conspiracies fixing the prices of CDTs and CPTs.

18

19  [8] **California**: *See Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009) (applying California
    doctrine of equitable tolling based on class action filed in other jurisdiction);  **Florida**: *See
20  Barneby v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1528-29 (M.D. Fla. 1989) ("*American Pipe*
    tolling is properly extended" where Florida state law claims "involve the same 'evidence,
21  memories, and witnesses' as are involved in the putative class action [in Indiana federal
    court].");  **Kansas**: *See Seaboard Corp. v. Marsh Inc.*, 284 P.3d 314, 327-28 (Kan. August 31,
22  2012) (applying Kansas savings statute on a cross-jurisdictional basis and holding that plaintiff's
    claim was timely filed because it was a putative plaintiff in a federal class action based on claims
23  arising out of the same conduct, transaction, or occurrence);  **Massachusetts**: *See Arivella v.
    Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 180 (D. Mass. 2009) (class action tolling should be
24  interpreted liberally with the goal of reducing multiplicity of actions, even if the individual
    plaintiff's claims are not identical to those asserted in the class complaint);  **Michigan**: *See Lee v.
25  Grand Rapids Board of Education,* 148 Mich. App. 364, 384 N.W.2d 165 (MI 1986) ("We
    conclude … that the federal district court action tolled the operation of the statute of limitations
26  as to plaintiffs' claims pursuant to the Elliott-Larsen Civil Rights Act and the Michigan State
    Fair Employment Practices Act.");  **Minnesota**: *See Jenson v. Allison-Williams Co.*, 1999 U.S.
27  Dist. LEXIS 22170, 18-19 (S.D. Cal. Aug. 23, 1999) (holding that federal class action tolled
    state law claim under Minnesota Securities Act, and citing to *Carson v. Independent School Dist.
28  No. 623*, 392 N.W.2d 216, 223 (Minn. 1986) and *Bartlett v. Miller and Schroder Municipals,
    Inc.*, 355 N.W.2d 435, 439-440 (Minn. Ct. App. 1984));  **New York**: *Williams v. Dow Chem. Co.*,
    No. 01-cv-4307, 2004 WL 1348932, at *12 (S.D.N.Y. June 16, 2004) ("New York would likely
    apply *American Pipe*" in a cross-jurisdictional context).

1   *See, e.g.,* BrandsMart FAC ¶ 185.  The indictment, as described in a DOJ press release, charges

2   that C.Y. Lin conspired with others "to fix the prices of two types of CRTs used in computer

3   monitors and televisions."  *Id.*  The press release further stated that "[t]his is the first charge as a

4   result of the Antitrust Division's ongoing investigation into the cathode ray tubes industry."  *Id.*

5   The DOJ subsequently indicted five other Korean and Taiwanese executives who participated in

6   the conspiracy.  *Id.* at ¶¶ 186-189.[9]  <u>All of these criminal actions remain pending.</u>

7        Tolling pursuant to Section 16(i) commenced when the first indictment issued, and the

8   DAPs' claims will remain tolled throughout the pendency of the government actions.  ***See***

9   *Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 868 (9th Cir. 1978).  In *Dungan*, the Ninth

10  Circuit determined that "[t]he date of the return of the indictment fits comfortably within the

11  statutory language" of § 16(i) requiring that proceedings be 'instituted.'  In discussing *Dungan*,

12  Mitsubishi asserts that "the court recognized that courts must consider the facts in individual

13  cases 'to strike the exquisite balance' inherent in Section 16(i)."  Motion at 23.  In fact, the court

14  reached the exact opposite conclusion.  The court specifically did not want to leave the question

15  of what qualifies as 'instituting' proceedings to a case-by-case determination, noting that

16  "considerable judicial time would be consumed in *striking the exquisite balance* between serving

17  the objects of grand jury secrecy on the one hand and those of section 16(i) . . . on the other."

18  570 F.2d at 871 (emphasis added).  The court concluded that, by adopting the date of indictment

19  as the date where proceedings are 'instituted,' it "confine[d] the [judge's] task to substantially

20  more manageable proportions than would otherwise be the case."  *Id.* at 872.  Accordingly, since

21  grand juries indicted C.Y. Lin and other Korean and Taiwanese nationals for their roles in the

22  CRT conspiracy in 2009 and 2010, the limitations period for the DAPs' claims against

23  Mitsubishi has been tolled since that time.

24        None of Mitsubishi's arguments to the contrary has merit.  Mitsubishi argues that tolling

25  would not serve the purposes of 15 U.S.C. § 16(i) because the government's case against the

26  criminal defendants has not progressed.  Motion at 22.  In particular, Mitsubishi argues that §

27

28  [9] *See United States v. Cheng,* No. 09-cr-00836 (N.D. Cal. Aug. 18, 2009); *United States v. Yeh,* No. 10-cr-00231 (N.D. Cal. Mar. 30, 2010); *United States v. Lee*, No. 10-cr-00817 (N.D. Cal. Nov. 9, 2010).

16(i) should not apply where there has been "neither an arraignment nor the reasonable expectation of an arraignment" because the criminal defendant is abroad and is not subject to extradition.  *Id.* at 21.  This argument is contrary to both the law and the facts.  <u>First</u>, Mitsubishi cites no legal authority to support its contention that § 16(i) only comes into play upon arraignment, or upon the defendant's arrival in a country from which he may be extradited, or at any point other than indictment.  Application of § 16(i) does *not* depend on capturing the defendant, on the success of the government's case, or on the government's prosecutorial decisions. "Obviously suspension of the running of the statute of limitations pending resolution of the government action may not be made to turn on whether the United States is successful in proving the allegations of its complaint." *Leh*, 382 U.S. at 65; *see also Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, (9th Cir. 1983) (observing that "a private litigant's right to his day in court [should not] depend upon the government's success in its litigation"); *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 885 F. Supp. 2d 617, 628-29 (S.D.N.Y. 2012) (finding that, in applying § 16(i), the court should not "speculate as to an array of conceivable conclusions implicit in prosecutorial decisions").  By asserting that the Court should draw the line at arraignment, extradition, arrival in a country with an extradition treaty, or at a certain number of years of fugitive status, Mitsubishi is asking the Court to engage in the case-by-case process that the Ninth Circuit rejected in the *Dungan* decision.

    <u>Second</u>, Mitsubishi's contention that the Korean defendants cannot be extradited to the United States is factually incorrect.  As Mitsubishi points out, the U.S.-Korea extradition treaty provides that an extraditable offense is one which is "punishable" in both countries by incarceration of more than one year.  Motion at 20 (citing Korean Extradition Treaty, art. 2(1), entered into force Dec. 20, 1999, S. Treaty Doc. 106-2, TIAS 12962).  Mitsubishi then cites to an article where the author notes that prosecutions for violations of the Monopoly Regulation and Fair Trade Act ("MRFTA"), the Korean antitrust law, "so far have been concluded with criminal fines, without imprisonment yet."  Hee-Eun Kim, *Developments in Criminal Enforcement of Competition Law in Korea*, COMPETITION POLICY INTERNATIONAL (2012), *available at* https://www.competitionpolicyinternational.com/developments-in-criminal-enforcement-of-

competition-law-in-korea.

However, in arguing that the offenses at issue here are not extraditable, Mitsubishi incorrectly construes the term "punish*able*" to mean "punish*ed*".  Contrary to Mitsubishi's assertion, the offense with which the Korean defendants were charged is indeed punishable by incarceration of more than one year in Korea, and thus extraditable under the treaty. Specifically, Article 66(1(9)) of the MFRTA provides for a maximum three-year jail sentence for violations of Article 19(1) of the Act, which outlaws conspiracies involving "fixing, maintaining, or changing prices."   MRFTA (2013) (Kor.), *available at* http://www.moleg.go.kr/english/ korLawEng?pstSeq=54772&pageIndex=26.   Even the secondary authority commentary upon which Mitsubishi relies acknowledges this fact, in the very same paragraph cited by Mitsubishi. *See* Hee-Eun Kim, *Developments, supra* ("Article 66 of the MRFTA provides for a jail term of a maximum of three years . . . for offenses concerning abuse of market dominance, merger control, cartel, and certain restrictions on business conglomerates.").   Thus, because a charge for a conspiracy to fix CRT prices, *see, e.g.*, Electrograph FAC ¶ 203, carries a maximum three-year sentence in Korea, the Korean defendants  were indeed charged with an extraditable offense. Therefore, even accepting Mitsubishi's unsupported legal argument that § 16(i) does not apply to proceedings instituted against non-extraditable defendants, that argument simply does not apply to the facts of this case.

## II.    THE EQUITABLE DOCTRINE OF LACHES DOES NOT BAR THE DAPS' CLAIMS

Mitsubishi's argument that laches bars the DAPs' claims is also meritless.  "Laches is an equitable time limitation on a party's right to bring suit." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (quotation omitted).   To prevail on a laches defense, a defendant must show make two showings: (1) the plaintiff unreasonably delayed filing suit; *and* (2) the unreasonable delay caused prejudice to the defendant. *Id.*  Mitsubishi is unable to establish either element.

As a threshold matter, meeting the standard for a laches defense in a motion to dismiss is a virtually insurmountable task.  This Court recognized this extremely high barrier in *Sensible*

*Foods, LLC v. World Gourmet, Inc.*, 2011 WL 5244716 at *4-5 (N.D. Cal., Nov. 3, 2011) (Conti, J.):

> It is well established that laches "requires *proof* of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666 (9th Cir. Cal. 1980) (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961) (emphasis added).
>
> The Court declines to dismiss Plaintiff's claims on the basis of laches because "a laches determination is ill-suited for a motion to dismiss for failure to state a claim." *Italia Marittima, S.p.A. v. Seaside Transp. Servs., LLC*, 2010 WL3504834 (N.D. Cal. Sep. 7, 2010). "Because the application of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment." *Couveau v. American Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000). "At the motion-to-dismiss phase, the obstacle to asserting a successful laches defense is greater because the defendant must rely exclusively upon the factual allegations set forth in the complaint." *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. Cal. 2005), abrogated on other grounds in *Taylor v. Sturgell*, 553 U.S. 880 (2008).
>
> In their Motion, Defendants ask the Court to make factual determinations concerning when Plaintiff knew or should have known about the alleged infringement, Plaintiff's diligence in enforcing its rights, and the prejudice to Defendants caused by Plaintiff's alleged delay…. Most of the facts relevant to these issues are not set forth in the Complaint. Further, even if the Court were to take notice of the facts set forth in the parties' requests for judicial notice, it is premature to determine whether such evidence is sufficient to raise a genuine issue of material fact, let alone weigh that evidence.
>
> Accordingly, the Court finds that a determination on the adequacy of Defendants' laches defense … requires findings of fact and is inappropriate for resolution on a motion to dismiss.

*Sensible Foods*, 2011 WL 5244716 at *4-5. In addition to your Honor's clear holding and explanation in *Sensible Foods*, numerous other courts have also held that a laches defense cannot be resolved in a motion to dismiss—and is only rarely susceptible to resolution even by summary judgment.[10] Instead, Mitsubishi attempts to gloss over the issue by simply noting that "laches

---

[10] *See, e.g., Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 666-67 (9th Cir. Cal. 1980) ("Laches questions are seldom susceptible of resolution by summary judgment, because 'where laches is raised as a defense 'the factual issues involved … can rarely be resolved without some preliminary inquiry.'"); *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, No. 5:09-CV-02502, 2011 WL 5038356 at *7 (N.D. Cal. Oct. 24, 2011) ("[L]aches is analyzed under 12(b)(6). Since that rule generally precludes consideration of evidence outside the complaint and resolves all doubt in favor of plaintiff, it poses a nearly insurmountable obstacle to the facts-sensitive inquiry associated with laches."); *E.E.O.C. v. Global Horizons, Inc.*, 904 F. Supp. 2d 1074, 1095 (D. Haw. 2012) ("Determining whether delay was unexcused or unreasonable and whether prejudice ensued necessarily demands a close evaluation of all the particular facts in a case. As a result, a claim is not easily disposed of at the motion to dismiss stage based on a defense of laches.") (internal quotes and citations omitted).

1    can be raised in a motion to dismiss" and citing two cases in which claims were dismissed based

2    on laches.[11]   Moreover, as discussed in detail below, Mitsubishi has not established (and cannot

3    establish) either unreasonable delay or prejudice.

4              **A.   The DAPs did not unreasonably delay bringing suit against Mitsubishi.**

5              First, Mitsubishi has not shown that the DAPs unreasonably delayed in filing suit.

6    Where, as here, the DAPs filed their respective actions within the tolled statute of limitations

7    period, there is a "strong presumption" that the timing is reasonable and laches is inapplicable.

8    *See Jarrow*, 304 F.3d at 835-36; *see also Aurora Enters v. Nat'l Broad Co.*, 688 F.2d 689, 694

9    (9th Cir. 1982).   For all the reasons discussed above, the DAPs' claims comply with the

10   limitations period, and Mitsubishi fails to assert why laches should nonetheless apply.

11   Importantly, the DAPs' fraudulent concealment allegations establish for purposes of this motion

12   that it had "neither actual nor constructive knowledge of the facts giving rise to its claim,"

13   despite its own diligence, until the end of 2007.   *Conmar Corp.*, 858 F.2d at 502.   To determine

14   otherwise, this Court would have to make a finding based on facts outside of those alleged in the

15   DAPs' complaints, thereby rendering Mitsubishi's laches defense premature at the motion to

16   dismiss stage.   *See Kourtis*, 419 F.3d at 1000.

17             Mitsubishi asserts that the DAPs should have identified their claims against Mitsubishi

18   earlier than November 2013 and then baldly concludes that any failure to file must have been

19   unreasonable.   Motion at 5-7.   "Laches, however, requires more than delay; it requires a lack of

20   ───────────────────

[11] These two cases are wholly inapposite.   *McCune v. F. Alioto Fish Co.*, 597 F.2d 1244 (9th Cir. 1979) was the rare instance in which the plaintiff himself *admitted* in the pleading phase that the defendant could not possibly have known of its potential involvement in the action until the claim was actually filed.   *Id.* at 1249.   In *Madison Square Garden, L.P. v. NHL*, No. 07 CV 08455, 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008), the plaintiff sought injunctive relief for harm inflicted by a contract to which the plaintiff itself had acquiesced.   *Id.* at *2-3.   The plaintiff also *signed a release* discharging all claims against the defendant.   *Id.* at *6.   Then, after the four-year statute of limitations had run, the plaintiff brought suit.   The court found that the terms of the release were sufficient to justify granting the motion to dismiss.   *Id.* at *10.   In the alternative, the court said, the doctrine of laches would bar the suit.   *Id.*   Mitsubishi's reliance on one case in which the defendant could not possibly have known it would be sued, and on another in which the plaintiff affirmatively promised not to sue highlights why laches is inappropriate here.   In the instant case, it was the *Defendants*—not the Plaintiffs—who knew of the grounds for the suit:   Mitsubishi participated in the conspiracy and then engaged in a course of conduct that fraudulently concealed its wrongdoing.   And here, Plaintiffs neither acquiesced to Mitsubishi's illegal conduct nor granted it a release.

1   diligence." *Sierra Club v. U.S. Dep't of Transp.*, 245 F. Supp. 2d 1109, 1115 (D. Nev. 2003).

2   As this Court has previously held, a finding of laches generally requires "factual determinations

3   concerning when Plaintiff knew or should have known about the alleged infringement, [and]

4   Plaintiff's diligence in enforcing its rights." *Sensible Foods*, 2011 WL 5244716 at *5.

5          Unsupported conclusory statements aside, Mitsubishi provides no basis for the factual

6   determinations necessary to find unreasonable delay.   Mitsubishi attempts to inappropriately

7   shift its own burden to prove laches by arguing that "the plaintiffs have never explained why it

8   took them so long to file this suit."  Motion at 7.  That statement is simply false.   On the *exact*

9   *same page*, *just three sentences before* that statement, Mitsubishi writes that "Plaintiffs have

10  previously claimed that they had to look through the 'voluminous document productions' before

11  they could verify that the IPP motion presented an adequate basis to add Mitsubishi Electric."

12  *Id.*  And indeed, the DAPs became aware of their potential claims against Mitsubishi with the

13  filing of the IPP motion, but then had to conduct an investigation to confirm an adequate basis

14  for bringing the claims.

15         Moreover, as discovery has continued, even more evidence of Mitsubishi's participation

16  in the conspiracy has been uncovered.  For example, on November 25, 2013, Samsung SDI, an

17  admitted conspirator, served discovery responses making specific admissions that Mitsubishi

18  participated in the conspiracy and that two Mitsubishi executives attended conspiracy meetings

19  on behalf of Mitsubishi.

20         **B.  *Mitsubishi makes no showing of evidentiary or expectations-based prejudice.***

21         Similarly, Mitsubishi makes only conclusory allegations of prejudice.   For laches

22  purposes, the Ninth Circuit recognizes only two forms of prejudice: evidentiary and

23  expectations-based prejudice.  *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221,

24  1227 (9th Cir. 2012).  "Evidentiary prejudice includes such things as lost, stale, or degraded

25  evidence, or witnesses whose memories have faded, or who have died."  *Id.* (quoting *Danjaq*

26  *LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001)).  A defendant suffers expectations-based

27  prejudice where it "took actions or suffered consequences that it would not have, had the

28  plaintiff brought suit promptly."  *Id.*

1         i.     <u>Mitsubishi's conclusory allegations are insufficient to prove evidentiary prejudice.</u>

2    Mitsubishi cites *ATM Express, Inc. v. ATM Express, Inc.*, No. 07-CV-1293, 2009 WL

3    2973034 (S.D. Cal. Sep. 11, 2009), for the proposition that faded memories and the degradation

4    of evidence support a finding of evidentiary prejudice.  The DAPs do not dispute this

5    proposition.  However, Mitsubishi's argument ignores the requirement that the party asserting

6    laches nevertheless has the burden of demonstrating "that it has suffered prejudice as a result of

7    the plaintiff's unreasonable delay in filing suit." *Id.* at *4 (quoting *Tillamook Country Smoker,*

8    *Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir 2006)).  In *ATM Express*,

9    the defendant asserted that it would suffer prejudice because it would no longer be able to

10   conduct a reliable market survey and that plaintiff's owner, due to illness, could no longer

11   remember certain material facts about Plaintiff's business.  *Id.* at *9.

12       Here, by contrast, Mitsubishi fails to set forth a single piece of evidence that has

13   degraded as a result of the DAPs' purported delay in filing suit.  Mitsubishi contends only that

14   "Evidence went stale. Memories faded.  What might have been possible to preserve, however

15   narrowly and partially, even 15 months ago, cannot be preserved today."  Motion at 8.  Such bald

16   assertions are insufficient for Mitsubishi to meet its burden of showing evidentiary prejudice.

17   *See In re Beaty*, 306 F.3d 914, 928 (9th Cir. 2002) (finding that "generic claims of prejudice do

18   not suffice for a laches defense in any case"); *see also IXYS Corp. v. Advanced Power Tech.,*

19   *Inc.*, 321 F. Supp. 2d 1156 (N.D. Cal. 2004) (noting that defendant's assertion of evidentiary

20   prejudice was "not supported by so much [as] a single citation to the voluminous factual record,"

21   and holding that "[c]onclusory statements that there are missing witnesses, that witnesses'

22   memories have lessened, and that there is missing documentary evidence, are not sufficient" to

23   establish evidentiary prejudice) (quoting *Meyers v. Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir.

24   1992)); *In re Katz Interactive Call Processing*, Nos. CV 2:07-ML-01816-B-RGK, 07-CV-2360-

25   RGK, 2009 WL 8591011 at *10 (C.D. Cal. May 1, 2009) (finding that conclusive assertions of

26   evidentiary prejudice are insufficient to prove prejudice).

27       Moreover, Mitsubishi has been on notice at the very least since they entered a tolling

28   agreement with the IPP class in November 2011, *see supra* n. 3, that they were potential

1    defendants in the litigation.  At a minimum, Mitsubishi certainly had an obligation from at least

2    that time forward to preserve all relevant evidence.  *See Apple Inc. v. Samsung Elec. Co., Ltd.*,

3    888 F. Supp. 2d 976, 990-91 (N.D. Cal. 2012) (holding that the duty to preserve evidence arises

4    when it is "reasonably foreseeable" that the evidence may be relevant to future litigation).  Given

5    this obligation, no evidence should have degraded since November 2011, and no prejudice

6    should result from any purported delay between at least November 2011 and the institution of the

7    DAPs' actions.

8            ii.    Mitsubishi has not suffered expectations-based prejudice.

9            Nor has Mitsubishi made a showing of expectations-based prejudice.  In the Ninth

10   Circuit, expectations-based prejudice "requires at least some reliance [by the defendant] on the

11   absence of a lawsuit."  *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,

12   621 F.3d 981, 990 (9th Cir. 2010); *see also Univ. of Pittsburgh v. Champion Products Inc.*, 686

13   F.2d 1040, 1045 (3d Cir. 1982) ("The distinction between . . . mere delay and the laches which

14   give rise to affirmative rights in the defendant as a result of detrimental reliance, has been

15   consistently recognized by the Supreme Court for well over 100 years.").  Mitsubishi argues that

16   it will be prejudiced because substantial discovery has already taken place in the pending CRT

17   litigation with its co-conspirators, and Mitsubishi would struggle to meet the current schedule.

18   Motion at 8-9.

19          Mitsubishi's argument is flawed for three reasons.  First, and fundamentally, Mitsubishi

20   fails to explain how this scheduling issue is evidence of its detrimental reliance on not being

21   sued.  Notably, Mitsubishi does not cite a single case where a court has found expectations-based

22   prejudice due to litigation scheduling issues.[12]  Second, Mitsubishi itself is responsible for the

23

24   ───────────────────
     [12] Indeed, litigation scheduling issues are *per se* insufficient to establish the prejudice element of
     laches.  *See Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1163

25   (Fed. Cir. 1993) (reversing district court dismissal on laches grounds, and holding that "the
     prejudice element of laches is not established solely because the raising of the claim would delay

26   other litigation.").  The lone case cited by Mitsubishi that discusses expectations prejudice,
     *Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001), Motion at 12, found such prejudice

27   only where the defendant showed reliance extrinsic to the litigation.  In *Danjaq*, the plaintiff
     alleged copyright infringement, and the court found expectation prejudice because the defendant

28   had invested one billion dollars in the allegedly copyrighted material.  263 F.3d at 956.  Here,
     Mitsubishi alleges no prejudice other than the purported inconvenience of complying with trial
     and pretrial deadlines.

1  position in which it finds itself.  When the DAPs moved to amend their complaints in the CRT

2  litigation to add Mitsubishi more than nine months ago, Mitsubishi successfully fought the

3  amendment.  As a result, the DAPs were forced to file these new lawsuits to assert their claims

4  against Mitsubishi.  Mitsubishi's feigned protest that it is now prejudiced by discovery and other

5  events that occurred in the interim in the DAPs' litigation with Mitsubishi's co-conspirators rings

6  hollow.  <u>Third</u>, to the extent that Mitsubishi is concerned with scheduling, the correct procedure

7  would be to move for an extension of the trial schedule, not for dismissal.

8       Mitsubishi also claims—without any actual authority—that it would be prejudiced

9  because it could be "left 'holding the bag' after other defendants settle."  Motion at 11.  This

10  speculative argument is insufficient to demonstrate actual prejudice.  One could just as easily

11  hypothesize that a later settling defendant will benefit from offsets obtained from other

12  defendants' settlements.  Mitsubishi's only support for this unremarkable point is a 1986 ABA

13  Antitrust Section publication advocating for contribution and claim reduction rules in antitrust

14  cases, which makes the common sense observation that late-settling defendants may face higher

15  exposure if they are one of the last co-conspirators to settle.  *Id.*  However, the source cited by

16  Mitsubishi also states that this "whipsaw" effect increases the deterrent effect of the law by

17  making it "more likely plaintiffs [can] obtain large settlements, [which makes it] more likely

18  they are to bring antitrust suits, which in turn decreases the expected gains from violating the

19  law."   ABA Antitrust Section, Monograph No. 11, *Contribution and Claim Reduction In*

20  *Antitrust Litigation* 37 (1986).  Mitsubishi's policy arguments in favor of changing contribution

21  rules are better directed at the legislative branch.  Tellingly, Mitsubishi does not cite a single

22  case or other authority recognizing expectations-based prejudice for laches in this context.

23       Therefore, because Mitsubishi is unable to show either an unreasonable delay or

24  prejudice, this Court should find that laches does not bar the DAPs' claims.

<u>**CONCLUSION**</u>

26       For the foregoing reasons, the DAPs respectfully submit that Mitsubishi's Motion to

27  Dismiss should be denied in its entirety.

28

DATED:  January 27, 2014

_/s/  Philip J. Iovieno_

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY  12207
Telephone:  (518) 434-0600
Facsimile:   (518) 434-0665
Email:  piovieno@bsfllp.com
Email:  anardacci@bsfllp.com

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131
Email:  wisaacson@bsfllp.com

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022
Email:  ssinger@bsfllp.com

_Liaison Counsel for Direct Action Plaintiffs and
Counsel for Plaintiffs Electrograph Systems, Inc.,
Electrograph Technologies, Corp., Office Depot, Inc.,
Interbond Corporation of America, P.C. Richard &
Son Long Island Corporation, MARTA Cooperative of
America, Inc., ABC Appliance, Inc., and Schultze
Agency Services, LLC_

_/s/  David Martinez_

Roman M. Silberfeld
David Martinez
Jill S. Casselman
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone:  (310) 552-0130
Facsimile:   (310) 229-5800
Email:  rmsilberfeld@rkmc.com
           dmartinez@rkmc.com
           jscasselman@rkmc.com

Elliot S. Kaplan
K. Craig Wildfang
Laura E. Nelson
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
Telephone:  (612) 349-8500
Facsimile:  (612) 339-4181
Email:  eskaplan@rkmc.com
          kcwildfang@rkmc.com
          lenelson@rkmc.com

*Counsel for Plaintiffs Best Buy Co., Inc., Best Buy
Purchasing LLC, Best Buy Enterprise Services, Inc.,
Best Buy Stores, L.P., BestBuy.com, L.L.C., and
Magnolia Hi-Fi, LLC.*

*/s/  Steven Sklaver*

Steven Sklaver
SUSMAN GODFREY LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
Email:  ssklaver@susmangodfrey.com

Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
John P. Lahad
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email:  kmarks@susmangodfrey.com
          jross@susmangodfrey.com
          jcarter@susmangodfrey.com
          dpeterson@susmangodfrey.com
          jlahad@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883
Email:  pfolse@susmangodfrey.com
          rblack@susmangodfrey.com
          jconnors@susmangodfrey.com

*Counsel for Plaintiff Alfred H. Siegel, solely in his
capacity as Trustee of the Circuit City Stores, Inc.
Liquidating Trust*

1

*/s/  David J. Burman*

2

David J. Burman
Cori G. Moore

3

Eric J. Weiss
Nicholas H. Hesterberg

4

Steven D. Merriman
PERKINS COIE LLP

5

1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

6

Telephone:  (206) 359-8000
Facsimile:   (206) 359-9000

7

Email:  DBurman@perkinscoie.com
            CGmoore@perkinscoie.com

8

            EWeiss@perkinscoie.com
            NHesterberg@perkinscoie.com

9

            SMerriman@perkinscoie.com

10

Joren S. Bass
PERKINS COIE LLP

11

Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131

12

Telephone:  (415) 344-7120
Facsimile:   (415) 344-7320

13

Email:  JBass@perkinscoie.com

14

*Counsel for Plaintiff Costco Wholesale Corporation*

15

16

*/s/  William J. Blechman*

17

Richard Alan Arnold
William J. Blechman

18

Kevin J. Murray
KENNY NACHWALTER, P.A.

19

201 S. Biscayne Boulevard, Suite 1100
Miami, FL 33131

20

Telephone:  (305) 373-1000
Facsimile:   (305) 372-1861

21

Email:  rarnold@knpa.com
            wblechman@knpa.com

22

            kmurray@knpa.com

23

*Counsel for Plaintiff Sears Roebuck and Co. and Kmart Corp.*

24

25

*/s/  Jason C. Murray*

26

Jason C. Murray
CROWELL & MORING LLP

27

515 South Flower Street, 40th Floor
Los Angeles, CA 90071

28

Telephone:  (213) 443-5582
Facsimile:   (213) 622-2690
Email:  jmurray@crowell.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jerome A. Murphy
Astor H.L. Heaven
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 624-2500
Facsimile:   (202) 628-5116
Email:  jmurphy@crowell.com
         aheaven@crowell.com

*Counsel for Target Corp.*