Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA  94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

***Attorneys for Defendant, Thomson Consumer Electronics, Inc.***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | No. 07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Electrograph Systems, Inc. et al. v. Technicolor SA, et al., No. 13-cv-05724;*<br><br>*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Technicolor SA, et al., No. 13-cv-00141;*<br><br>*Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264;* | **REPLY IN SUPPORT OF THOMSON CONSUMER, INC.'S MOTION TO DISMISS NEWLY FILED DIRECT ACTION PLAINTIFFS' COMPLAINTS**<br><br>Date: March 7, 2014<br>Time: 10:00 a.m.<br>Place: Courtroom 1, 17th Floor<br>Judge: Hon. Samuel Conti |

*Interbond Corporation of America v. Technicolor SA, et al.,* No. 13-cv-05727;

*Office Depot, Inc. v. Technicolor SA, et al.,* No. 13-cv-05726;

*Costco Wholesale Corporation v. Technicolor SA, et al.,* No. 13-cv-05723;

*P.C. Richard & Son Long Island Corporation, et al. v. Technicolor SA, et al.,* No. 31:cv-05725;

*Schultze Agency Services, LLC, o/b/o Tweeter Opco, LLC, et al. v. Technicolor SA, Ltd., et al.,* No. 13-cv-05668;

*Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA,* No. 3:13-cv-05262;

*Target Corp. v. Technicolor SA, et al.,* No. 13-cv-05686

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I. The Court Should Confirm Its Prior Ruling and Hold That the Doctrine of Laches Bars the DAPs' Late-Filed Claims. ............................................................................. 1

    A. It Is Undisputed That the DAPs Have Unreasonably Delayed Filing Their Claims Against Thomson Consumer. ............................................................. 2

    B. The DAPs' Delay Has Severely Prejudiced Thomson Consumer. ...................... 4

        1. Thomson Consumer Has Suffered Evidentiary Prejudice. ........................ 4

        2. The DAPs Have Caused Thomson Consumer Expectations-Based Prejudice. .................................................................................................. 5

II. The Statutes of Limitation Have Not Been Tolled. ............................................................... 6

    A. Just Months Before the Close of Discovery, the DAPs Do Not Plead Facts That Plausibly Support Fraudulent Concealment. ................................................ 7

    B. American Pipe Tolling Does Not Save the DAPs' Claims. .................................. 8

    C. Government Action Tolling Does Not Apply to the DAPs' Claims. .................... 9

III. The DAPs Have Not Adequately Alleged Antitrust Standing. ........................................ 11

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Arneil v. Ramsey*,
 550 F.2d 774 (2d Cir. 1977) .................................................................................................. 8

*Ashley v. Boyle's Famous Corned Beef Co.*,
 66 F.3d 164 (8th Cir. 1995) .................................................................................................... 2

*Boone v. Citigroup, Inc.*,
 416 F.3d 382 (5th Cir. 2005) .................................................................................................. 8

*Cada v. Baxter Healthcare Corp.*,
 920 F.2d 446 (7th Cir. 1991) .................................................................................................. 2

*Chippano v. Champion International Corp.*,
 702 F.2d 827 (9th Cir. 1983) ................................................................................................ 10

*Credit Suisse Sec. (USA) LLC v. Simmonds*,
 132 S. Ct. 1414 (2012) ........................................................................................................... 9

*Greyhound Corp. v. Mt. Hood Stages*,
 437 U.S. 322 (1978) ............................................................................................................... 9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 738 F. Supp. 2d 1011 (N.D. Cal. 2010) .................................................................................. 7

*In re High Fructose Corn Syrup Antitrust Litig.*,
 293 F. Supp. 2d 854 (C.D. Ill. 2003) ...................................................................................... 6

*In re Processed Egg Prods. Antitrust Litig.*,
 2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013) ...................................................... 7

*In re Rubber Chemicals Antitrust Litig.*,
 504 F. Supp. 2d 777 (N.D. Cal. 2007) .................................................................................... 8

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Best Buy)*,
 No. 07-1827, 2013 WL 254873 (N.D. Cal. Jan. 23, 2013) ................................................... 12

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Proview)*,
 No. 07-1827, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) ............................................... 12

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*,
 No. 07-1827, 2012 WL 5949585 (N.D. Cal. Nov. 28, 2012) ............................................... 12

*In re Urethane Antitrust Litig.*,
 663 F. Supp. 2d 1067 (D. Kan. 2009) ..................................................................................... 7

*J.M. Dungan v. Morgan Drive-Away, Inc.*,
   570 F.2d 867 (9th Cir. 2007) ............................................................................................. 9, 10

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ................................................................................................ 1, 2

*Kendall v. VISA U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ................................................................................................. 11

*Leh v. Gen. Petroleum Corp.*,
   382 U.S. 54 (1965) ..................................................................................................................... 10

*Madison v. IBP, Inc.*,
   330 F.3d 1051 (8th Cir. 2003) ................................................................................................... 2

*McCune v. Alioto Fish Co.*,
   597 F.2d 1244 (9th Cir. 1979) ................................................................................................ 1, 2

*Miller v. Maxwell's Int'l*,
   991 F.2d 583 (9th Cir. 1993) ..................................................................................................... 2

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999) .................................................................................................. 6

*Nartron Corp. v. STMicroelectronics, Inc.*,
   305 F.3d 397 (6th Cir. 2002) ..................................................................................................... 5

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   695 F.3d 946 (9th Cir. 2012) .................................................................................................. 4, 5

*Smith v. United States*,
   133 S. Ct. 714 (2013) .................................................................................................................. 6

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
   413 F.3d 553 (6th Cir. 2005) ..................................................................................................... 8

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971) .................................................................................................................... 6

**FEDERAL STATUTES**

15 U.S.C. § 16(i) .................................................................................................................. 1, 9, 10, 11

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................................................... 7, 8

**OTHER AUTHORITIES**

C. Leslie, *Judgment-Sharing Agreements*, 58 Duke L.J. 747 (2009) ............................................ 6

# INTRODUCTION

This Court already rejected the Direct Action Plaintiffs' ("DAPs") belated attempt to join Thomson Consumer to these actions, and concluded that forcing Thomson Consumer "to enter litigation now would put it at an unfair, prejudicial disadvantage" and that "the DAPs had ample time to add Thomson to their complaints without delay or prejudice." (*See* Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].) In their Opposition, the DAPs pretend that the Court's prior ruling does not exist. Instead, they suggest that merely repackaging their stale claims into newly-filed complaints creates a fact issue concerning the prejudice their unreasonable delay has caused Thomson Consumer. While laches is a defense that is not typically resolved at the motion to dismiss stage, in a case like this one where the relevant facts are undisputed and clear from the pleadings and the Court's prior orders, courts do not hesitate to dismiss claims that are barred by laches. *McCune v. Alioto Fish Co.*, 597 F.2d 1244, 1249-50 (9th Cir. 1979).

The DAPs' attempts to escape the statutes of limitation that bar stale claims that accrued nearly a decade ago are similarly unavailing. First, they fail to support their fraudulent concealment claims by failing to plead facts with particularity that *any* alleged co-conspirators − much less Thomson Consumer − engaged in affirmative acts of concealment after 2004, so that doctrine does not toll the statutes of limitation during time periods after Thomson Consumer exited the CRT industry in 2005. Second, *American Pipe* tolling does not apply because Thomson Consumer was never a party to any class action filed within the statute of limitations. Finally, allowing the DAPs to indefinitely toll the statute of limitations based on stagnant federal indictments against foreign nationals that have not resulted in actual criminal proceedings would undermine the purposes of 15 U.S.C. § 16(i). The DAPs' claims are unreasonably and inexcusably late and should be dismissed with prejudice.

# ARGUMENT

**I.    The Court Should Confirm Its Prior Ruling and Hold That the Doctrine of Laches Bars the DAPs' Late-Filed Claims.**

"[L]aches penalizes inexcusable dilatory behavior" by plaintiffs who, like the DAPs, sleep on their rights. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 838 (9th Cir.

2002).  Moreover, any "presumption" that claims filed within the statute of limitations are reasonably timed does not apply where a plaintiff asks the Court to employ tolling doctrines to save claims filed after the limitations period has expired that should have been brought long before.  *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1991); *Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 170 (8th Cir. 1995) (en banc), *abrogation on other ground recognized in Madison v. IBP, Inc.*, 330 F.3d 1051, 1056 (8th Cir. 2003).[1]

The DAPs concede that laches may operate to bar their claims upon a proper showing, but insist (contrary to the Court's prior ruling) that Thomson Consumer has not made that showing here.  They rely on the proposition that it is generally difficult to establish laches − like any affirmative defense − in a motion to dismiss.  (Opp'n. at 19-23.)  But in doing so, they ignore this Court's finding that the DAPs unreasonably, and prejudicially, delayed attempting to assert claims against Thomson Consumer.  As the Ninth Circuit has recognized, a complaint should be dismissed where, as here, the undisputed facts establish that the claims are barred by laches.  *McCune*, 597 F.2d at 1249-50.

A.  **It Is Undisputed That the DAPs Have Unreasonably Delayed Filing Their Claims Against Thomson Consumer.**

The DAPs do not credibly explain why they waited for *six years* to assert claims against Thomson Consumer, despite having had access to: (1) knowledge of the alleged conspiracy since *at least* 2007 and (2) the comprehensive discovery record in this case since at least 2011. Instead, they assert that they have not unreasonably delayed bringing suit and that they have "more than adequately explained the timing of filing claims against Thomson Consumer" in their briefing in support of their motion to amend their original complaint.  (Opp'n. at 21.)  The DAPs' assertions completely ignore the Court's previous rejection of these very same arguments

---

[1] In *Miller v. Maxwell's Int'l*, 991 F.2d 583, 586 (9th Cir. 1993), the court held that laches is "inapplicable when Congress has provided a statute of limitations to govern the action." However, the claim in *Miller* was filed within the initial statute of limitations without recourse to tolling; as evidenced by other circuit decisions, laches may bar a plaintiff's claims where the plaintiff seeks to invoke tolling doctrines to revive a claim long after the statutory period has run. *Cada*, 920 F.2d at 453; *Ashley*, 66 F.3d 164.

when it held that their undue delay had caused the Thomson Defendants severe prejudice. ([Dkt. No. 1959 at 4-6].) By repackaging the same tardy claims in their newly-filed complaints and rehashing their previously rejected arguments, the DAPs are simply attempting to get the Court to reconsider its previous findings. Nothing has changed, however, since the Court entered its Order finding that the Thomson Defendants would be severely prejudiced if they were forced to enter this litigation to defend against the DAPs' claims now. Accordingly, there is no basis for the Court to revisit its prior holding. The Court's September 26, 2013 Order establishes that the DAPs' unreasonable delay has prejudiced the Thomson Defendants; for the same reasons, the Court should hold that the DAPs' reliance on tolling doctrines is barred by laches and dismiss their claims with prejudice.

Moreover, the DAPs' inexcusable delay is readily apparent on the face of their complaints and the docket in this case. First, the complaints are clear that the existence of the alleged CRT conspiracy was public as of November 2007 when the initial complaints in this litigation were filed. (*See* Interbond FAC at ¶ 230.) The complaints also allege that Thomson Consumer "was a major manufacturer of CRTs for the United States market" during the period of the alleged conspiracy − a fact which was certainly not a secret. The DAPs provide no explanation for why they failed to investigate potential claims against this well-known major manufacturer of CRTs and CRT Products for over five years after the existence of the alleged conspiracy became public in 2007. Second, even if the DAPs were somehow unaware of their potential claims following the 2007 revelations, nothing explains why the DAPs did not begin their investigation and potentially file claims against Thomson Consumer after its parent, Thomson SA, was named as a defendant in certain class actions in early 2008. The filing of these actions gave the DAPs notice that others believed that Thomson Consumer's parent was involved in the conspiracy, but the DAPs slept on their rights and did nothing. Third, the DAPs do not credibly explain why, after they filed their initial complaints and obtained discovery from other defendants in 2011, it took them over sixteen months to attempt to join Thomson Consumer as a defendant. Nor do they attempt to justify this extensive delay while discovery in this sprawling litigation proceeded apace. Finally, even after Indirect Purchaser Plaintiffs sought

to amend their own complaints to add Thomson Consumer in 2012, the DAPs *still* waited another seven months − critical months, given the scope and pace of discovery − before attempting to amend their complaints with virtually identical allegations.  Simply stated, is undisputed and plain from the face of their complaints that the DAPs unreasonably delayed filing their claims.

### B. The DAPs' Delay Has Severely Prejudiced Thomson Consumer.

Since the DAPs have delayed filing their claims against Thomson Consumer for a long time – more than six years – a lower showing of prejudice is required.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946, 953 (9th Cir. 2012) (noting that "if only a short period of time has elapsed since the accrual of the claim, the magnitude of the prejudice required before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required." (citation omitted)).  The severe, irremediable prejudice caused to Thomson Consumer by the DAPs' delay is clear from the face of the complaints, the history of this case, and the Court's September 26, 2013 Order.

### 1. Thomson Consumer Has Suffered Evidentiary Prejudice.

Thomson Consumer has suffered evidentiary prejudice because much of the evidence Thomson Consumer might need to defend itself is likely no longer available as the personnel formerly involved with its CRT operations have long since left the company.  Accordingly, it is difficult for Thomson Consumer to identify specific evidence needed to defend against the DAPs' claims that may or may not still exist.

The DAPs' argument that Thomson Consumer has not made a sufficiently "particularized" showing of evidentiary prejudice rings hollow when their own unreasonable multi-year delay is what makes it difficult, if not impossible, to identify the witnesses and evidence necessary for Thomson Consumer to adequately defend itself.  The DAPs' own allegations establish that Thomson Consumer shut down its U.S.-based CRT operations in 2004 and entirely exited the CRT business in 2005 when its CRT-related assets and personnel were transferred to Videocon Industries in 2005. (Interbond FAC at ¶¶ 22-26.)  Had the DAPs timely

filed their claims, Thomson Consumer may have been able to preserve documents and testimony regarding its former business, but instead the DAPs slept on their rights. By waiting to file claims against Thomson Consumer until over eight years after it entirely exited the CRT industry, the DAPs have caused Thomson Consumer severe evidentiary prejudice.

### 2. The DAPs Have Caused Thomson Consumer Expectations-Based Prejudice.

Expectations-based prejudice exists where a defendant "suffered consequences that it would not have, had the plaintiff brought suit promptly." *Petrella*, 695 F.3d at 953; *see also Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 411 (6th Cir. 2002) (noting that for laches, "any prejudice is sufficient, including an increase in potential damages or a loss of evidence"). Unable to justify their delay, the DAPs instead contend that it has not caused Thomson Consumer prejudice. They ask the Court to ignore the fact that they slept on their rights for six years after they indisputably knew or should have known of their potential claims. During that time, discovery proceeded apace − the parties have produced nearly 5 million pages of documents (many in foreign languages) and conducted 100 depositions of witnesses from around the world. Because of the DAPs' delay, Thomson Consumer has had no involvement in this discovery. It has not had the opportunity to question any of these witnesses, and it is unclear, if not unlikely, it would ever have an opportunity to go back and do so if it is added to these proceedings now. The DAPs' arguments that their delay has not prejudiced Thomson Consumer should be rejected.

Given the size, complexity, and volume of the factual and legal issues raised by this case, bringing Thomson Consumer into this action now is prejudicial because Thomson Consumer cannot adequately prepare its defense on the current schedule. And, further delaying the entire CRT case is also unreasonable. The DAPs should not be permitted to benefit from their dilatory conduct by obtaining additional time to litigate their claims against the defendants. Nor should Thomson Consumer be forced to go it alone on a separate track when it could have meaningfully taken advantage of group litigation efficiencies and reduced the cost of defending this litigation had the DAPs attempted to bring Thomson Consumer into this case in a timely manner.

The DAPs' unjustified delay has also caused Thomson Consumer to suffer prejudice through increased exposure to liability for enormous damages. Through no fault of its own and because of the DAPs' delay, settlements with earlier-sued defendants will shift disproportionate and unwarranted risk of liability onto Thomson Consumer. *See* C. Leslie, *Judgment-Sharing Agreements*, 58 Duke L.J. 747, 758-59 (2009). It would be fundamentally unfair and inequitable to allow the DAPs to benefit from their inexcusable delay by imposing this serious prejudice on Thomson Consumer.

The Court has already found Thomson Consumer has been prejudiced by the DAPs' delay. By repackaging the same untimely claims in newly-filed complaints, they have not remedied this prejudice. Consistent with its September 26, 2013 Order, the Court should find that the DAPs' reliance on tolling doctrines is barred by laches and dismiss their untimely claims with prejudice.

## II.  The Statutes of Limitation Have Not Been Tolled.

Not only is the DAPs' reliance on tolling doctrines barred by laches, but their claims are barred by the applicable statutes of limitation. "[An antitrust] cause of action begins to accrue and the statute [of limitations] begins to run when a defendant commits an act that injures the plaintiff's business." *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971). The statutes of limitation on the DAPs' claims against Thomson Consumer began to run no later than July 2005, when they admit that Thomson Consumer exited the CRT business. *Smith v. United States*, 133 S. Ct. 714, 719 (2013); *see also Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999), *as modified by* 211 F.3d 1224 (11th Cir. 2000) (holding that the statute of limitations on antitrust claims began to run when defendant sold business and thereby withdrew from alleged conspiracy); *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854 (C.D. Ill. 2003) (holding that an executive withdrew from an alleged price-fixing conspiracy by resigning). The DAPs plead no facts that make it plausible to infer that Thomson Consumer participated in the conspiracy after it exited the CRT industry in July 2005, so the statutes of limitation began to run, at the latest, at that time.

A.  **Just Months Before the Close of Discovery, the DAPs Do Not Plead Facts That Plausibly Support Fraudulent Concealment.**

The DAPs' attempt to plead that Thomson Consumer fraudulently concealed its alleged participation in the conspiracy does not meet the heightened pleading standards of Fed. R. Civ. P. 9(b). In an effort to gloss over the inadequacy of their allegations, the DAPs cite to a Report and Recommendation ("R&R") filed by former Special Master Legge in February 2010 in which he found that at that early stage in the case, detailed allegations of fraudulent concealment were not necessary. (Opp'n. at 15.) Now, over four years later and after extensive discovery has been conducted, that decision is inapplicable. Moreover, the DAPs ignore that, in its Order evaluating that R&R, the Court stated that it was "concerned about the temporal scope of the alleged conspiracies in this case" and suggested that whether Plaintiffs claims were barred by the applicable statutes of limitation should be more carefully analyzed after discovery had been conducted. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010).

At this stage in the proceedings, the DAPs must plead with particularity specific, dated acts of alleged concealment. *See In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1078-9 (D. Kan. 2009) (granting motion to dismiss and limiting time periods for which plaintiffs could rely on theory of fraudulent concealment to only those periods corresponding with dated acts of concealment pleaded with particularity in antitrust complaint). They should also be required to plead specific acts of diligence that they undertook to uncover their claims. *In re Processed Egg Prods. Antitrust Litig.,* 2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013). Although they have had access to extensive discovery from other alleged conspirators for years, the DAPs do not plead facts with particularity that satisfy these standards so their claims must be dismissed.

The DAPs argue that, because they have made conclusory allegations of acts of fraudulent concealment by other defendants, the Court may not find that Thomson Consumer withdrew from the alleged conspiracy when it exited the CRT industry in 2005. According to the DAPs, these allegations make Thomson Consumer liable for unspecified acts of concealment

allegedly committed by other defendants after 2005. The DAPs' theory is not supported by the facts or the law. In cases where the courts have held that fraudulent concealment could apply to toll the statute of limitations even after the defendant had exited the relevant business, plaintiffs had plead specific facts establishing that the withdrawing defendant actively participated in fraudulent concealment before it withdrew. *See In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 790 (N.D. Cal. 2007). Moreover, unlike the DAPs here, in these cases, the plaintiffs were not attempting to rely on fraudulent concealment to toll the statutes of limitations during time periods for which they had failed to plead acts of concealment by *any* defendant with the particularity required by Rule 9(b). (*See* Interbond FAC at ¶¶ 217-231 (pleading no acts of alleged "concealment" that occurred after November 2004).) Thus, even if other defendants' acts could be imputed to Thomson Consumer after it exited the CRT industry in 2005, the DAPs fail to allege any actions after 2004 that could be so imputed to toll the statutes of limitation during the relevant time period here.

### B. *American Pipe* Tolling Does Not Save the DAPs' Claims.

*American Pipe* tolling is simply inapplicable to Thomson Consumer. The law is clear that class action tolling does not apply to defendants not sued by the class. *See Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 568 (6th Cir. 2005) (holding that *American Pipe* does not toll claims against parties not sued in the prior class action); *Boone v. Citigroup, Inc.*, 416 F.3d 382, 392 (5th Cir. 2005) (same); *Arneil v. Ramsey*, 550 F.2d 774, 782 n.10 (2d Cir. 1977) ("A different conclusion would not comport with reason.").

The DAPs' argument that the Court should find that *American Pipe* tolling extends to Thomson Consumer because the original class actions *might* have alerted it to the possibility of future claims against it finds no support in the case law. For good reason, such a rule would undermine an important purpose of the doctrine by depriving defendants of clear notice that the statute of limitations for claims against them had been tolled. If a class action suit against one defendant were sufficient to toll the statute of limitations against any defendant who might thereby anticipate a similar suit against it, the very certainty that statutes of limitations are meant

to provide would be severely undermined. Potential defendants would be required to scour dockets across the country in search of class action suits that a plaintiff might later claim "alerted [the defendant] to make appropriate investigations." (Opp'n. at 14.) Because Thomson Consumer was not previously named as a defendant in any CRT-related class action, *American Pipe* tolling does not apply to the DAPs' claims against it.

### C. Government Action Tolling Does Not Apply to the DAPs' Claims.

The Supreme Court has stated that government action tolling serves two purposes: (1) it ensures private litigants "have the benefit of prior Government antitrust enforcement efforts," and (2) it "shorten[s] the period over which treble-damages actions will extend." *Greyhound Corp. v. Mt. Hood Stages*, 437 U.S. 322, 334 (1978). Application of the statute here would not serve either of these purposes. Since no meaningful criminal proceedings are currently pending against the fugitive defendants, there is no evidence or other fruit of the government indictments from which the DAPs may benefit. Applying government action tolling here would simply provide a windfall to the DAPs. In addition, contrary to the second purpose of the statute, its application here would result in indefinite tolling, a result that the Supreme Court has rejected. *Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1420 (2012) (rejecting interpretation of statute that would permit indefinite tolling, reasoning that "[t]he potential for such endless tolling in cases in which a reasonably diligent plaintiff would know of the facts underlying the action is out of step with the purpose of limitations periods in general").

Nor is the DAPs' interpretation of 15 U.S.C. § 16(i) mandated by applicable authority. The DAPs rely on *J.M. Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867 (9th Cir. 2007), for the proposition that a criminal proceeding should always be deemed to have been instituted under the statute after a grand jury returns an indictment. This mischaracterizes *Dungan*. In that case, the court merely rejected the argument that events *before* an indictment − specifically the empanelling of a grand jury − could "institute" criminal proceedings. It did not consider whether an indictment, without more, *always* institutes a criminal proceeding. In fact, consistent with Thomson Consumer's arguments the Ninth Circuit expressly recognized that its holding would

"not eliminate all necessity to strike the exquisite balance" in seeking to effectuate the purposes of § 16(i) when determining if government action tolling applies in a particular case. *Id.* at 872.[2]

In addition, a facial comparison between the government indictments at issue and the DAPs' allegations against Thomson Consumer demonstrates that the claims here are not based on the "matter complained of" in the indictments. With respect to the Lin Indictment, the only indictment regarding the CRT market for televisions, there are no allegations in the DAPs' complaints that Thomson Consumer had any dealings with Lin or was involved in any way with the conspiracy in Asia he is alleged to have participated in. The DAPs' reliance on *Chipanno* to argue that they have plead facts sufficient to establish the necessary overlap between the Lin Indictment and their claims against Thomson Consumer is misplaced. In that case, the court determined that there was necessary overlap between private antitrust claims regarding the sale of timber on private lands in Oregon and a prior government antitrust action regarding timber sales on public lands in Oregon. Critical to the court's holding was the fact that tolling the statute of limitations would further the "purpose" of 15 U.S.C. §16(i). *Chippano v. Champion International Corp.*, 702 F.2d 827, 832-33 (9th Cir. 1983). Because both suits had the same "geographic scope . . . evidence adduced *in the trial of the government suit* would be of practical assistance to plaintiffs in proving their own complaint." (*Id.*) (emphasis added). Here, the purposes of the statute would not be served because there are no government proceedings from which the DAPs may benefit and the suits relate to different geographic markets. Moreover, the fact that the Ninth Circuit determined that there was sufficient overlap between suits regarding timber sales in Oregon does not require this Court to assume an overlap between alleged anticompetitive conduct regarding unrelated parties on different continents. Accordingly, the DAPs have failed to plead facts that establish a relationship between their claims against

---

[2] The DAPs' argument that whether government action tolling applies "may not be made to turn on whether the United States is successful in proving the allegations of its complaint" is a red-herring because Thomson Consumer has never contended otherwise. (Opp'n. at 17 (quoting *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59 (1965).) Government action tolling does not apply here because no meaningful criminal proceedings have been instituted from which the DAPs could benefit, not because the indictments might not yield convictions.

Thomson Consumer and the Lin Indictment. Government action tolling does not apply to save the DAPs' claims against Thomson Consumer, so they are time-barred as a matter of law.[3]

**III.     The DAPs Have Not Adequately Alleged Antitrust Standing.**

The DAPs suggest that Thomson Consumer's arguments that the DAPs have failed to plead facts establishing that they qualify for the ownership or control exception to *Illinois Brick* should be rejected because "this Court has already ruled that the DAPs' have standing to proceed with their federal claims under" this exception. (Opp'n at 23 (citing [Dkt. No. 1856 at 5]).) In fact, on the same page of the Order cited by the DAPs, the Court expressly stated that it was "mak[ing] no ruling on the adequacy of the DAPs' allegations of ownership or control." ([Dkt. No. 1856 at 5].) Therefore, Thomson Consumer's arguments that the DAPs have failed to adequately plead facts that make it plausible that they possess standing under a recognized exception to *Illinois Brick* are properly before the Court.

The Court has recently recognized that "[s]o many years after this MDL's inception, Plaintiffs should be able to provide something more than boilerplate allegations." ([Dkt. No. 1960].) While, before discovery began, the Court may have determined that the DAPs' generalized allegations were sufficient to state viable claims, now, after years of discovery, the DAPs must plead more detailed facts to make their claims plausible on their face. ([*Id*. at 5-6.]); *see also Kendall v. VISA U.S.A., Inc.,* 518 F.3d 1042, 1047-1050 (9th Cir. 2008).

The DAPS have not plead *any* facts that would allow the Court to plausibly infer that the entities that sold CRT Products to the DAPs were owned or controlled by a DAP, the defendants, or other named co-conspirators. The DAPs do not dispute this, arguing instead that they do not have to. This is not the law. Under Ninth Circuit precedent, the DAPs must plead specific facts that make it plausible that they qualify for the ownership or control exception. *See Kendall*, 518 F.3d at 1050. Moreover, just months before the close of discovery, the DAPs cannot credibly claim that they have not had the opportunity to discover the facts needed to make plausible

---

[3] The DAPs appear to concede that government action tolling does not apply to any of their state law claims, which are not claims under the "antitrust laws" covered by § 16(i).

allegations that they qualify for the ownership or control exception. At this late stage in the litigation, the DAPs' complete failure to plead any facts that would allow the Court to plausibly infer that the DAPs can satisfy the ownership or control exception mandates dismissal of their claims.[4]

### CONCLUSION

The DAPs' newly-filed complaints are simply an attempted end-run around the Court's September 26, 2013 Order denying them leave to drag Thomson Consumer into this litigation over six years after it began. The DAPs' claims against Thomson Consumer are barred by laches and the statutes of limitation. For the reasons explained above, Thomson Consumer respectfully asks this Court to dismiss the plaintiffs' unreasonably tardy complaints.

---

[4] The DAPs' reliance on decisions from the *TFT-LCD Antitrust Litig.* for the broad proposition that plaintiffs generally need not plead evidentiary facts establishing the ownership and control exception to *Illinois Brick* is also incorrect. First, *In re TFT-LCD (Flat Panel) Antitrust Litig. (Best Buy)*, No. 07-1827, 2013 WL 254873, at *3-4 (N.D. Cal. Jan. 23, 2013), is inapposite because the plaintiff *did* identify the seller of LCD products, which was a sister entity to the manufacturer, and the issue was whether the *initial* seller of the fixed-price goods must own or control the direct purchaser. And, Judge Illston's other rulings, when read together, simply suggest that the level of pleading detail necessary to allege the ownership and control exception depends on the circumstances of the alleged conspiracy and the litigation. *Compare In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*, No. 07-1827, 2012 WL 5949585, at *3 (N.D. Cal. Nov. 28, 2012) (holding that specific allegations of the seller of finished LCD products was unnecessary in light of "significant evidence of the alleged conspiracy in the public record") *with In re TFT-LCD (Flat Panel) Antitrust Litig. (Proview)*, No. 07-1827, 2013 WL 1164897, at *3 (N.D. Cal. Mar. 20, 2013) (holding that even where the plaintiff identified the seller, conclusory allegations of control were insufficient to establish antitrust standing).

Dated:  February 18, 2014

Respectfully submitted,

*/s/ Kathy L. Osborn*
Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA  94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

**Attorneys for Defendant, Thomson Consumer Electronics, Inc.**