1  Kathy L. Osborn (*pro hac vice*)
   Ryan M. Hurley (*pro hac vice*)
2  Faegre Baker Daniels LLP
   300 N. Meridian Street, Suite 2700
3  Indianapolis, IN  46204
   Telephone: +1-317-237-0300
4  Facsimile: +1-317-237-1000
   kathy.osborn@FaegreBD.com
5  ryan.hurley@FaegreBD.com

6  Jeffrey S. Roberts (*pro hac vice*)
   Faegre Baker Daniels LLP
7  3200 Wells Fargo Center
   1700 Lincoln Street
8  Denver, CO  80203
   Telephone: +1-303-607-3500
9  Facsimile:  +1-303-607-3600
   jeff.roberts@FaegreBD.com
10
   Calvin L. Litsey (SBN 289659)
11 Faegre Baker Daniels LLP
   1950 University Avenue, Suite 450
12 East Palo Alto, CA  94303-2279
   Telephone: +1-650-324-6700
13 Facsimile: +1-650-324-6701
   calvin.litsey@FaegreBD.com
14
   **Attorneys for Specially Appearing Defendant**
15 **Thomson SA**

16              **UNITED STATES DISTRICT COURT**

17            **NORTHERN DISTRICT OF CALIFORNIA**

18               **SAN FRANCISCO DIVISION**

19
   IN RE CATHODE RAY TUBE (CRT)          No. 07-cv-5944-SC
20 ANTITRUST LITIGATION,                 MDL No. 1917

21 _____

22 This Document Relates to:            **THOMSON SA'S REPLY IN SUPPORT**
                                         **OF ITS MOTION TO DISMISS NEWLY**
   *Electrograph Systems, Inc. et al. v.* **FILED DIRECT ACTION PLAINTIFFS'**
23 *Technicolor SA, et al., No. 13-cv-05724;* **COMPLAINTS**

24 *Alfred H. Siegel, as Trustee of the Circuit* Date:   March 7, 2014
   *City Stores, Inc. Liquidating Trust v.*    Time:  10:00 a.m.
25 *Technicolor SA, et al., No. 13-cv-00141;*  Place:  Courtroom 1, 17th Floor
                                              Judge: Hon. Samuel Conti
26
   *Best Buy Co., Inc., et al. v. Technicolor SA,*
27 *et al., No. 13-cv-05264;*

28

---

1
2
*Interbond Corporation of America v. Technicolor SA, et al., No. 13-cv-05727;*

3
*Office Depot, Inc. v. Technicolor SA, et al., No. 13-cv-05726;*

4
5
*Costco Wholesale Corporation v. Technicolor SA, et al., No. 13-cv-05723;*

6
7
*P.C. Richard & Son Long Island Corporation, et al. v. Technicolor SA, et al., No. 31:cv-05725;*

8
9
10
*Schultze Agency Services, LLC, o/b/o Tweeter Opco, LLC, et al. v. Technicolor SA, Ltd., et al., No. 13-cv-05668;*

11
*Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA, No. 3:13-cv-05262;*

12
13
*Target Corp. v. Technicolor SA, et al., No. 13-cv-05686*

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REPLY IN SUPPORT OF THOMSON SA'S
MOTION TO DISMISS NEWLY FILED DAPS'
COMPLAINTS                                    No. 07-5944-SC; MDL No. 1917

1

**TABLE OF CONTENTS**

2   INTRODUCTION ............................................................................................................ 1

3   ARGUMENT .................................................................................................................. 1

4   I.    THE DAPS' CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED
          BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER IT. ............... 1

5         A.    The DAPs Concede That the Court Does Not Have General Jurisdiction
                Over Thomson SA and They Have Failed to Make a Prima Facie Case
6               That Thomson SA Is Subject to Specific Jurisdiction. ........................................... 1

7               1.    The DAPs Have Failed to Plead Facts Establishing That They
                      Have Been Harmed by Actions Thomson SA Purposefully
8                     Directed at the United States. ........................................................................ 2

9               2.    The DAPs Have Failed to Plead Facts Establishing That Thomson
                      SA Was a But-For Cause of the Antitrust Injuries They Allegedly
10                    Suffered in the United States. ........................................................................ 5

11              3.    The Exercise of Specific Jurisdiction Over Thomson SA Would
                      Not Be Reasonable. ........................................................................................ 6

12        B.    The Court Should Not Grant the DAPs Jurisdictional Discovery .......................... 6

13  II.   THE NEW DAP CLAIMS AGAINST THOMSON SA SHOULD BE
14        DISMISSED BECAUSE THEY FAIL TO PLEAD VIABLE CLAIMS. ......................... 7

15        A.    The DAPs' Tardy Claims Against Thomson SA Are Barred by the
                Doctrine of Laches. .............................................................................................. 7

16        B.    The DAPs' Claims Are Time-Barred and They Have Not Pleaded Specific
                Facts That Establish a Plausible Basis for Tolling the Statutes of
17              Limitation. ........................................................................................................... 10

18              1.    Just Months Before the Close of Discovery, the DAPs Do Not
                      Plead Facts That Plausibly Support Fraudulent Concealment. ...................... 10
19
                2.    *American Pipe* Tolling Does Not Save the DAPs' Claims. ......................... 12
20
                3.    Government Action Tolling Does Not Apply to the DAPs' Claims ............... 12

21        C.    The DAPs' Claims Against Thomson SA Should Be Dismissed Because
                They Have Failed to Allege Facts That Plausibly Establish the DAPs
22              Qualify for the Ownership or Control Exception to *Illinois Brick* ....................... 13

23  CONCLUSION .............................................................................................................. 15

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**FEDERAL CASES**

4

*Ashley v. Boyle's Famous Corned Beef Co.,*
  66 F.3d 164 (8th Cir. 1995) ........................................................................................... 7

5

*Bancroft & Masters v. Augusta Nat'l Inc.,*
  223 F.3d 1080 (9th Cir. 2000) ....................................................................................... 2

6

7

*Cada v. Baxter Healthcare Corp.,*
  920 F.2d 446 (7th Cir. 1991) ......................................................................................... 7

8

*Core-Vent Corp. v. Nobel Industries AB,*
  11 F.3d 1482 (9th Cir. 1993) ......................................................................................... 6

9

10

*Credit Suisse Sec. (USA) LLC v. Simmonds,*
  132 S. Ct. 1414 (2012) ................................................................................................. 12

11

*Daimler AG v. Bauman,*
  134 S. Ct. 746 (2014) ..................................................................................................... 1

12

13

*Goodyear Dunlop Tires Operations v. Brown,*
  131 S. Ct. 2846 (2011) ................................................................................................... 1

14

*Greyhound Corp. v. Mt. Hood Stages,*
  437 U.S. 322 (1978) ..................................................................................................... 12

15

16

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ....................................................................... 11

17

18

*In re High Fructose Corn Syrup Antitrust Litig.,*
  293 F. Supp. 2d 854 (C.D. Ill. 2003) ........................................................................... 10

19

*In re Memory Interactive Sec. Litig.,*
  618 F.3d 688 (9th Cir. 2010) ......................................................................................... 1

20

21

*In re Processed Egg Prods. Antitrust Litig.,*
  2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013) ........................................... 11

22

23

*In re Rubber Chemicals Antitrust Litig.,*
  504 F. Supp. 2d 777 (N.D. Cal. 2007) ......................................................................... 11

24

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Best Buy),*
  No. 07-1827, 2013 WL 254873 (N.D. Cal. Jan. 23, 2013) .......................................... 15

25

26

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Proview),*
  No. 07-1827, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) ....................................... 15

27

28

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*,
    No. 07-1827, 2012 WL 5949585 (N.D. Cal. Nov. 28, 2012).................................................. 15

*In re Urethane Antitrust Litig.*,
    663 F. Supp. 2d 1067 (D. Kan. 2009) ...................................................................................... 11

*J.M. Dungan v. Morgan Drive-Away, Inc.*,
    570 F.2d 867 (9th Cir. 2007) ......................................................................................... 13, 14

*Kendall v. VISA U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) .................................................................................................. 14

*Lake v. Lake*,
    817 F.2d 1416 (9th Cir. 1987) .................................................................................................... 5

*Madison v. IBP, Inc.*,
    330 F.3d 1051 (8th Cir. 2003) .................................................................................................... 7

*McCune v. Alioto Fish Co.*,
    597 F.2d 1244 (9th Cir. 1979) .................................................................................................... 8

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999) .................................................................................................. 10

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    695 F.3d 946 (9th Cir. 2012) ...................................................................................................... 8

*Shute v. Carnival Cruise Lines*,
    897 F.2d 377 (1990) .................................................................................................................... 5

*Smith v. United States*,
    133 S. Ct. 714 (2013) ................................................................................................................ 10

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971) .................................................................................................................. 10

**FEDERAL STATUTES**

15 U.S.C. § 16(i) ........................................................................................................................... 13

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................................................. 10, 11

**OTHER AUTHORITIES**

C. Leslie, *Judgment-Sharing Agreements*, 58 Duke L.J. 747 (2009)............................................ 9

1

**INTRODUCTION**

2        Thomson SA is not subject to the personal jurisdiction of this Court.  Thomson SA is a

3   French holding company that never manufactured or sold CRTs or CRT Products in the United

4   States.  Even with complete access to the extensive record that has been developed after years of

5   fulsome discovery in this case, the DAPs do not present any evidence in their Opposition that

6   establishes Thomson SA took any intentional acts expressly aimed at causing the DAPs antitrust

7   injury in the United States.  The DAPs' claims also fail because they are untimely.  The Court

8   has already found, and thus it is undisputed, that the DAPs unreasonably delayed filing their

9   claims and that Thomson SA would be prejudiced if it was forced to join this litigation now.

10  (*See* Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].)  Accordingly, the DAPs' reliance on tolling

11  doctrines is barred by laches.  Moreover, none of the tolling doctrines asserted by the DAPs save

12  their tardy claims.  Consistent with the Court's September 26, 2013 Order, the DAPs' newly-

13  filed Complaints against Thomson SA should be dismissed with prejudice.

14

**ARGUMENT**

15  **I.     THE DAPS' CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED**
16  **        BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER IT.**

17           **A.     The DAPs Concede That the Court Does Not Have General Jurisdiction**
                      **Over Thomson SA and They Have Failed to Make a Prima Facie Case That**
18                    **Thomson SA Is Subject to Specific Jurisdiction.**

19           General jurisdiction exists over foreign corporations like Thomson SA only when their

20  "affiliations with the State are so 'continuous and systematic' as to render them essentially at

21  home in the forum State."  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014) (quoting

22  *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011)).  The DAPs do not

23  address general jurisdiction in their Opposition and therefore have waived any argument that

24  Thomson SA is subject to the general jurisdiction of this Court.  *See In re Memory Interactive*

25  *Sec. Litig.,* 618 F.3d 688, 992 (9th Cir. 2010).

26           The DAPs have also failed to establish Thomson SA is subject to specific jurisdiction.

27  To establish specific jurisdiction over Thomson SA, the DAPs must show that:  (1) Thomson SA

28

1  purposefully directed activities at this forum; (2) the DAPs' claims against it arise out of or

2  result from Thomson SA's forum related activities; and (3) the exercise of jurisdiction is

3  reasonable.  *See Bancroft & Masters v. Augusta Nat'l Inc.,* 223 F.3d 1080, 1086-7 (9th Cir.

4  2000).  The DAPs have not, and cannot, satisfy these elements.

> **1.**      **The DAPs Have Failed to Plead Facts Establishing That They Have Been Harmed by Actions Thomson SA Purposefully Directed at the United States.**

7          In its now withdrawn December 11, 2013 Order, the Court found that Sharp had failed to

8  establish a prima facie case that Thomson SA was subject to specific jurisdiction.  (Dec. 11,

9  2013 Order [Dkt. No. 2252] at 12-15.)  The Court stated that "[o]n Plaintiffs' allegations and

10 evidence, the Court cannot find that [Thomson SA] engaged in any intentional acts directed at

11 the United States."  (*Id.* at 14-15.)  "Plaintiffs' evidence, which often references 'Thomson'

12 generally is . . . inconclusive.  Under these circumstances, the Court cannot find that [Thomson

13 SA] intentionally aimed any action toward the United States, that [Thomson SA's] actions were

14 the but-for cause of Plaintiffs' claims, and especially that exercising jurisdiction would be

15 reasonable." (*Id.* at 15.)

16         The DAPs' Opposition does not warrant a different finding here.  Citing to similar, and in

17 many cases identical, documents as those previously cited by Sharp – evidence this Court

18 previously found "inconclusive" – the DAPs argue that Thomson SA participated in an alleged

19 global conspiracy to fix the price of CRTs.  They assert that Thomson SA must have purposely

20 directed anticompetitive activity at the United States because representatives of some generic,

21 unidentified "Thomson" entity attended foreign meetings with other defendants where

22 information concerning pricing and production information related to CRTs and CRT Products

23 sold in the United States was allegedly discussed.  (Opp'n. at 4-8.)  The DAPs also make

24 conclusory statements that their federal and state claims would not have arisen absent this

25 alleged global price fixing conspiracy, and Thomson SA's alleged participation in it, such that

26 Thomson SA's conduct is a but-for cause of the antitrust injuries the DAPs' allegedly suffered in

27 the United States.  (*Id.* at 9.)

28

1   The DAPs' attenuated arguments and evidence do not establish a prima facie case that

2   Thomson SA committed intentional acts directly aimed at the United States that were a but-for

3   cause of their alleged domestic antitrust injuries.  The exhibits the DAPs attach to their brief do

4   not:  (1) establish that Thomson SA set the prices at which its United States subsidiary, Thomson

5   Consumer, sold CRTs in the United States; and (2) refute the statements in the Cadieux, O'Hara,

6   and Debon Declarations establishing that Thomson SA did not do so.  (*See* Cadieux Decl. at ¶¶

7   14-15, attached as **Ex. 3** to Thomson SA's Mot.; O'Hara Declaration at ¶¶ 5-7, **Ex. 5**

8   ("Thomson [Consumer] control[ed] its day-to-day activities" and was "responsible for the sales

9   and marketing of products in the United States."); Debon Declaration at ¶ 6, **Ex. 6** ("Thomson

10   SA d[id] not direct or advise Thomson [Consumer] on how to sell or distribute any Thomson

11   [Consumer] product in the United States.").)  For example, the DAPs assert that Exhibits A and

12   B attached to their Opposition establish that Thomson SA took intentional acts aimed at the

13   United States to set the prices of CRTs sold here.  (Opp'n. at 3-4.)  In fact, these exhibits show

14   only that:

15

16

17

18

19

20

21

22

23   •

24

25

26   The other exhibits attached to the DAPs' Opposition also fail to prove that Thomson SA

27   took intentional acts aimed at the United States in furtherance of the alleged CRT conspiracy.

28

1    Like Sharp,

2

3

4

5

6

7

8

9                                                                     The other documents

10   cited by the DAPs refer to the activities of some generic, unidentified "Thomson" entity, but do

11   not establish that Thomson SA set the prices of CRTs Thomson Consumer sold in the United

12   States.[1]

13       Simply stated, although over 100 depositions have been conducted in this case, nearly 5

14   million pages of documents have been produced by the parties, and the discovery cut-off is just

15   months away, the DAPs are unable to present a single document to this Court that establishes

16   Thomson SA engaged in anticompetitive activity directly aimed at causing the DAPs harm in the

17

18

19

20

21

22   _____

23   [1]

24

25

26

27                                                                   None of these documents

28   establish that Thomson SA directly aimed any activities at the United States.

1  United States.[2]  The reason for this failure is simple – Thomson SA has never manufactured or

2  sold CRTs or conducted any CRT business in the United States.  The DAPs have failed to

3  establish a prima facie case that Thomson SA is subject to this Court's specific jurisdiction, so

4  their Complaints should be dismissed with prejudice.

5        **2.  The DAPs Have Failed to Plead Facts Establishing That Thomson SA Was a But-For Cause of the Antitrust Injuries They Allegedly Suffered in the United States.**

6

7       Because they cannot plead facts showing that Thomson SA took any intentional acts

8  aimed at causing them antitrust injury in the United States, the DAPs are unable to make a prima

9  facie case that Thomson SA's forum-related conduct was a but-for cause of their claims.

10  Instead, the DAPs assert that:  (1) Thomson SA participated in the alleged global antitrust

11  conspiracy by attending meetings in Europe with other defendants in this case (many of whom

12  had a customer-supplier relationship with Thomson affiliated companies) and (2) its United

13  States subsidiary, Thomson Consumer, generated substantial revenues from its CRT-related

14  operations in this country, so *ipso facto* forum-related activities of Thomson SA were a but-for

15  cause of the DAPs' alleged antitrust injuries.  (Opp'n at 7-9.)  This attenuated theory of but-for

16  causation should be rejected.  Where, as here, a foreign defendant has had limited contact with

17  the forum, an especially "close nexus between its forum-related activities and the cause of the

18  plaintiffs' harm" is required to establish the but-for causation needed to subject a defendant to

19  specific jurisdiction.  *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 n.7 (1990) (rev'd on

20  other grounds, 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)); *see also Lake v. Lake*,

21  817 F.2d 1416, 1421 (9th Cir. 1987).  The DAPS have not plead facts or attached evidence to

22  their Opposition that establishes a connection, let alone but-for causation, between any

23

24  [2] The DAPs' argument that "in its 2011 Annual Report to shareholders Thomson SA admitted
25  that it" participated in a global conspiracy to fix the price of CRTs is also strained and
unavailing.  (*See* Opp'n at 2.)  The fact that Thomson SA was one of the many targets of the
26  European Commission's investigation into alleged CRT price-fixing activity in Europe does not
even suggest, let alone establish, that Thomson SA took any anticompetitive actions directed at
27  the United States.  The subject of the EC's investigation – CRT sales in Europe – was not co-
extensive with the subject of the DAPs' claims here, which relate to CRTs sold in the United
28  States.

1   intentional acts Thomson SA expressly aimed at this forum and the DAPs' claims. As a result,

2   the DAPs have failed to satisfy the second element of the *Calder*–effects test, and their claims

3   against Thomson SA should be dismissed for lack of personal jurisdiction.

>   **3.     The Exercise of Specific Jurisdiction Over Thomson SA Would Not
>            Be Reasonable.**

6       In these circumstances, the exercise of specific jurisdiction over Thomson SA would not

7   be reasonable. The first factor evaluated by courts when determining if it would be reasonable to

8   exercise specific jurisdiction over a foreign defendant – "the extent of the defendant's purposeful

9   interjection into the forum state" – is wholly absent here. "The smaller the element of

10  purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its

11  exercise." *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1488 (9th Cir. 1993).

12      Here, at all relevant times, Thomson SA was <u>not</u> a manufacturer – it was a holding

13  company headquartered and incorporated in France. (*See* Cadieux Decl. at ¶¶ 14-15, **Ex. 3**.)

14  Thomson SA has no operations, offices, employees, bank accounts, or registered agents in the

15  United States and it owns no property, is not registered to do business, and does not pay taxes

16  here. (*Id.* at ¶¶ 6-8, 10-13.) It did not control the day-to-day operations of Thomson Consumer

17  in the United States nor set the prices of tubes sold by Thomson Consumer in this forum.

18  (O'Hara Declaration at ¶¶ 5-7, **Ex. 5**; Debon Declaration at ¶ 6, **Ex. 6**.) With complete access to

19  the voluminous discovery record in this case, the DAPs are unable to refute these facts. Because

20  Thomson SA has not purposefully interjected itself into this forum, requiring it to litigate the

21  DAPs' tardy claims in a foreign jurisdiction would impose an unreasonable burden on it.

>   **B.     The Court Should Not Grant the DAPs Jurisdictional Discovery.**

23      As noted above, the DAPs have not even attempted to argue that Thomson SA is subject

24  to the Court's general jurisdiction, so there is no reason that the DAPs should be permitted to

25  conduct discovery on that topic. Despite the fact that they have had access to the enormous

26  discovery record compiled during the last four years, including extensive document productions

27  from Thomson SA's alleged co-conspirators, the DAPs are still unable to plead specific facts or

28  cite to evidence that controverts Thomson SA's declarations showing that it is not subject to

1  specific jurisdiction.  At this advanced stage in these proceedings, there is simply no basis to

2  believe that by permitting the DAPs to conduct additional far-ranging jurisdictional discovery

3  against Thomson SA they will obtain evidence that supports their attenuated theory of specific

4  jurisdiction.  Accordingly, Thomson SA respectfully requests that the Court deny the DAPs

5  jurisdictional discovery.

6  **II.    THE NEW DAP CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED**
   **BECAUSE THEY FAIL TO PLEAD VIABLE CLAIMS.**

7

8  **A.    The DAPs' Tardy Claims Against Thomson SA Are Barred by the Doctrine**
   **of Laches.**

9        The DAPs' claims against Thomson SA are barred by laches.  This Court has already

10  found "[t]he DAPs had ample time to add Thomson to their complaints without delay or

11  prejudice, but they did not" and that their delay was "not justifiable." (Sept. 26, 2013 Order at

12  5-6.)  The DAPs do not credibly explain why they waited for over four years to assert claims

13  against Thomson SA after it was dropped as a party from the class actions in March 2009,

14  despite the fact that the DAPs had:  (1) knowledge of the alleged conspiracy since *at least* 2007

15  and (2) access to the comprehensive discovery record in this case since at least 2011.  Instead,

16  they baldly assert that they have not unreasonably delayed bringing suit.[3]  The DAPs' assertions

17  completely ignore the Court's previous rejection of this argument when it held that their undue

18  delay had caused the Thomson Defendants severe prejudice.  ([Dkt. No. 1959 at 4-6].)  By

19  repackaging the same tardy claims in their newly-filed Complaints and rehashing their

20  previously rejected arguments, the DAPs are simply attempting to get the Court to reconsider its

21  previous findings.  Nothing has changed, other than more delay and more prejudice, since the

22  Court entered its Order finding that the Thomson Defendants would be severely prejudiced if

23  they were forced to enter this litigation to defend against the DAPs' claims now.  Accordingly,

24

25  _____
   [3] Any "presumption" that claims filed within the statute of limitations are reasonably timed does

26  not apply where a plaintiff asks the court to employ tolling doctrines to save claims filed after
   the limitations period has expired that should have been brought long before.  *See Cada v.*

27  *Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1991); *Ashley v. Boyle's Famous Corned*
   *Beef Co.*, 66 F.3d 164, 170 (8th Cir. 1995) (en banc), *abrogation on other ground recognized in*

28  *Madison v. IBP, Inc.*, 330 F.3d 1051, 1056 (8th Cir. 2003).

1    there is no basis for the Court to revisit its prior holding.  The Court's September 26, 2013

2    Order establishes that the DAPs' unreasonable delay has prejudiced the Thomson Defendants;

3    for the same reasons, the Court should hold that the DAPs' reliance on tolling doctrines is

4    barred by laches and dismiss their claims with prejudice.

5         There is also no dispute that Thomson SA has been seriously prejudiced by this delay.

6    Since the DAPs sat on their claims against Thomson SA for a long time – more than four years

7    – a lower showing of prejudice is required.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695

8    F.3d 946, 953 (9th Cir. 2012) (noting that "if only a short period of time has elapsed since the

9    accrual of the claim, the magnitude of the prejudice required before the suit should be barred is

10   great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of

11   prejudice will be required." (citation omitted)).  The severe, irremediable prejudice caused to

12   Thomson SA by the DAPs' delay is clear from the face of their Complaints, the history of this

13   case, and the Court's September 26, 2013 Order.

14        First, while the DAPs slept on their rights, evidence degraded, memories faded, and

15   information and personnel involved in Thomson affiliated companies' CRT operations − an

16   industry which it exited in 2005 − became even more difficult, if not impossible, to locate.  *See*

17   *McCune v. Alioto Fish Co.*, 597 F.2d 1244, 1250 (9th Cir. 1979) (affirming trial court's

18   dismissal of complaint on basis of laches where plaintiff's three-year delay in bringing claims

19   made it difficult for defendant to obtain evidence needed to defend claims).  Accordingly, it is

20   difficult for Thomson SA to identify specific evidence needed to defend against the DAPs'

21   claims that may or may not still exist.

22        The DAPs' argument that Thomson SA has not made a sufficiently "particularized"

23   showing of evidentiary prejudice rings hollow when their own unreasonable multi-year delay is

24   what makes it difficult, if not impossible, to identify the witnesses and evidence necessary for it

25   to adequately defend itself.  The DAPs' own allegations establish that Thomson SA exited the

26   CRT business in 2005 when its CRT-related assets and personnel were transferred to Videocon

27   Industries in 2005.  (Interbond FAC at ¶¶ 22-26.)  Had the DAPs timely filed their claims,

28   Thomson SA may have been able to preserve documents and testimony regarding its former

business, but instead the DAPs slept on their rights. By waiting to file claims against Thomson SA until over eight years after it entirely exited the CRT industry, the DAPs have caused Thomson SA severe evidentiary prejudice.

The DAPs' delay has also caused Thomson SA expectations-based prejudice. Thomson SA will be forced to bear disproportionate litigation expenses and will be subject to higher potential damages if it is joined to these actions now. Given the size, complexity, and volume of the factual and legal issues raised by this case, bringing Thomson SA into this action now is prejudicial because Thomson SA cannot adequately prepare its defense on the current schedule. And, further delaying the entire CRT case is also unreasonable. The DAPs should not be permitted to benefit from their dilatory conduct by obtaining additional time to litigate their claims against the defendants. Nor should Thomson SA be forced to go it alone on a separate track when it could have meaningfully taken advantage of group litigation efficiencies and reduced the cost of defending this litigation had the DAPs attempted to bring it into this case in a timely manner.

The DAPs' unjustified delay has also caused Thomson SA to suffer prejudice through increased exposure to liability for enormous damages. Through no fault of its own and because of the DAPs' delay, settlements with earlier-sued defendants will shift disproportionate and unwarranted risk of liability onto Thomson SA. *See* C. Leslie, *Judgment-Sharing Agreements*, 58 Duke L.J. 747, 758-59 (2009). It would be fundamentally unfair and inequitable to allow the DAPs to benefit from their inexcusable delay by imposing this serious prejudice on Thomson SA.

The Court has already found Thomson SA has been prejudiced by the DAPs' delay. By repackaging the same untimely claims in newly-filed complaints, they have not remedied this prejudice. Consistent with its September 26, 2013 Order, the Court should find that the DAPs' reliance on tolling doctrines is barred by laches and dismiss their untimely claims with prejudice.

**B.** **The DAPs' Claims Are Time-Barred and They Have Not Pleaded Specific Facts That Establish a Plausible Basis for Tolling the Statutes of Limitation.**

Not only is the DAPs' reliance on tolling doctrines barred by laches, but their claims are barred by the applicable statutes of limitation.  "[An antitrust] cause of action begins to accrue and the statute [of limitations] begins to run when a defendant commits an act that injures the plaintiff's business."  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).  The statutes of limitation on the DAPs' claims against Thomson SA began to run no later than July 2005, when Thomson  SA exited the CRT business.  *Smith v. United States*, 133 S. Ct. 714, 719 (2013); *see also Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999), *as modified by* 211 F.3d 1224 (11th Cir. 2000) (holding that the statute of limitations on antitrust claims began to run when defendant sold business and thereby withdrew from alleged conspiracy); *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854 (C.D. Ill. 2003) (holding that an executive withdrew from an alleged price-fixing conspiracy by resigning).  The DAPs' allegations that Thomson SA was a minority shareholder in Videocon until 2007 do not make it plausible to infer that Thomson SA participated in the conspiracy after it exited the CRT industry in July 2005, so the statutes of limitation began to run, at the latest, at that time.

**1.** **Just Months Before the Close of Discovery, the DAPs Do Not Plead Facts That Plausibly Support Fraudulent Concealment.**

The DAPs' attempt to plead that Thomson SA fraudulently concealed its alleged participation in the conspiracy does not meet the heightened pleading standards of Fed. R. Civ. P. 9(b).  In an effort to gloss over the inadequacy of their allegations, the DAPs cite to a Report and Recommendation ("R&R") filed by former Special Master Legge in February 2010 in which he found that at that early stage in the case, detailed allegations of fraudulent concealment were not necessary.  (Opp'n. at 15.)  Now, over four years later and after extensive discovery has been conducted, that decision is inapplicable.  (*See* [Dkt. No. 1960] at 5-6.)  Moreover, the DAPs ignore that, in its Order evaluating that R&R, the Court stated that it was "concerned about the temporal scope of the alleged conspiracies in this case" and suggested that

1    whether Plaintiffs' claims were barred by the applicable statutes of limitation should be more

2    carefully analyzed after discovery had been conducted.   *In re Cathode Ray Tube (CRT)*

3    *Antitrust Litig.*, 738 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010).

4         At this stage in the proceedings, the DAPs must plead with particularity specific, dated

5    acts of alleged concealment.  *See In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1078-9

6    (D. Kan. 2009) (granting motion to dismiss and limiting time periods for which plaintiffs could

7    rely on theory of fraudulent concealment to only those periods corresponding with dated acts of

8    concealment pleaded with particularity in antitrust complaint).  They should also be required to

9    plead specific acts of diligence that they undertook to uncover their claims.  *In re Processed*

10   *Egg Prods. Antitrust Litig.,* 2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013).  Although

11   they have had access to extensive discovery from other alleged conspirators for years, the DAPs

12   do not plead facts with particularity that satisfy these standards so their claims must be

13   dismissed.

14        The DAPs argue that because they have made conclusory allegations of acts of

15   fraudulent concealment by other defendants, the Court may not find that Thomson SA withdrew

16   from the alleged conspiracy when it exited the CRT industry in 2005.  According to the DAPs,

17   these allegations make Thomson SA liable for unspecified acts of concealment allegedly

18   committed by other defendants after 2005.  The DAPs' theory is not supported by the facts or

19   the law.  In cases where the courts have held that fraudulent concealment could apply to toll the

20   statute of limitations even after the defendant had exited the relevant business, plaintiffs had

21   plead specific facts establishing that the withdrawing defendant actively participated in

22   fraudulent concealment before it withdrew.  *See In re Rubber Chemicals Antitrust Litig.*, 504 F.

23   Supp. 2d 777, 790 (N.D. Cal. 2007).  Moreover, unlike the DAPs here, in these cases, the

24   plaintiffs were not attempting to rely on fraudulent concealment to toll the statutes of limitation

25   during time periods for which they had failed to plead acts of concealment by *any* defendant

26   with the particularity required by Rule 9(b).  (*See* Interbond FAC at ¶¶ 217-231 (pleading no

27   acts of alleged "concealment" that occurred after November 2004).)   Thus, even if other

28   defendants' acts could be imputed to Thomson SA after it exited the CRT industry in 2005, the

1    DAPs have alleged no actions after 2005 that could be so imputed to toll the statutes of

2    limitation during the relevant time period here.

3              **2.    *American Pipe* Tolling Does Not Save the DAPs' Claims.**

4         *American Pipe* tolling does not save the DAPs' claims against Thomson SA. In their

5    Opposition, the DAPs concede that *American Pipe* tolling only applied to toll the limitations

6    period on their claims against Thomson SA from January 2008 until March 2009, when

7    Thomson SA was dropped as a party from the class actions. (Opp'n. at 17-18.) Accordingly, the

8    limitations period began to run again on March 16, 2009 and expired well before November and

9    December 2013, when the DAPs filed their "new" Complaints. Moreover, *American Pipe*

10   tolling does not toll the statutes of limitation that apply to the DAPs' state law claims because

11   the class action complaints only asserted federal claims. Accordingly, for the reasons explained

12   in and based on the authority cited in Thomson Consumer's Motion to Dismiss the DAP

13   Complaints, all of the DAPs' state law claims are untimely and subject to dismissal with

14   prejudice. (*See* Thomson Consumer's Mot. at 15-16, incorporated by reference and restated as if

15   set forth fully herein.)

16             **3.    Government Action Tolling Does Not Apply to the DAPs' Claims.**

17        The Supreme Court has stated that government action tolling serves two purposes: (1) it

18   ensures private litigants "have the benefit of prior Government antitrust enforcement efforts"

19   and (2) it "shorten[s] the period over which treble-damages actions will extend." *Greyhound*

20   *Corp. v. Mt. Hood Stages*, 437 U.S. 322, 334 (1978). Application of the statute here would not

21   serve either of these purposes. Since no meaningful criminal proceedings are currently pending

22   against the fugitive defendants, there is no evidence or other fruit of the government indictments

23   from which the DAPs may benefit. Applying government action tolling here would simply

24   provide a windfall to the DAPs. In addition, contrary to the second purpose of the statute, its

25   application here would result in indefinite tolling, a result that the Supreme Court has rejected.

26   *Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1420 (2012) (rejecting

27   interpretation of statute that would permit indefinite tolling, reasoning that "[t]he potential for

28

REPLY IN SUPPORT OF THOMSON SA'S          12          No. 07-5944-SC; MDL No. 1917
MOTION TO DISMISS NEWLY FILED DAPS'
COMPLAINTS

1    such endless tolling in cases in which a reasonably diligent plaintiff would know of the facts

2    underlying the action is out of step with the purpose of limitations periods in general").

3         Nor is the DAPs' interpretation of 15 U.S.C. § 16(i) mandated by applicable authority.

4    The DAPs rely on *J.M. Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867 (9th Cir. 2007), for

5    the proposition that a criminal proceeding should always be deemed to have been instituted

6    under the statute after a grand jury returns an indictment.  This mischaracterizes *Dungan*.  In

7    that case, the court merely rejected the argument that events *before* an indictment − specifically

8    the empanelling of a grand jury − could "institute" criminal proceedings.  It did not consider

9    whether an indictment, without more, *always* institutes a criminal proceeding.   In fact,

10   consistent with Thomson SA's arguments, the Ninth Circuit expressly recognized that its

11   holding would "not eliminate all necessity to strike the exquisite balance" in seeking to

12   effectuate the purposes of § 16(i) when determining if government action tolling applies in a

13   particular case.  *Id.* at 872.[4]  In accordance with the purposes of the statute, the Court should

14   find that government action tolling does not apply.

15       **C.     The DAPs' Claims Against Thomson SA Should Be Dismissed Because They
                  Have Failed to Allege Facts That Plausibly Establish the DAPs Qualify for
16                the Ownership or Control Exception to *Illinois Brick*.**

17       The DAPs disingenuously suggest that Thomson SA's arguments that the DAPs have

18   failed to plead facts establishing that they qualify for the ownership or control exception to

19   *Illinois Brick*  should be rejected because "this Court has already ruled that the DAPs' have

20   standing to proceed with their federal claims under" this exception.  (Oppn. at 24 (citing [Dkt.

21   No. 1856 at 5]).)  In fact, on the same page of the Order cited by the DAPs, the Court expressly

22   stated that it was "mak[ing] no ruling on the adequacy of the DAPs' allegations of ownership or

23   control."  ([Dkt. No. 1856 at 5].)  Therefore, Thomson SA's arguments that the DAPs have

24

25

26   [4] The DAPs' argument that whether government action tolling applies "does not depend on the
     success of the government's case" is a red-herring because Thomson SA has never contended
27   otherwise.   (Opp'n. at 20.)   Government action tolling does not apply here because no
     meaningful criminal proceedings have been instituted from which the DAPs could benefit, not
28   because the indictments might not yield convictions.

1    failed to adequately plead facts that make it plausible that they possess standing under a

2    recognized exception to *Illinois Brick* are properly before the Court.

3          The Court has recently recognized that "[s]o many years after this MDL's inception,

4    Plaintiffs should be able to provide something more than boilerplate allegations." ([Dkt. No.

5    1960] at 5-6.)  While, before discovery began, the Court may have determined that the DAPs'

6    generalized allegations were sufficient to state viable claims, now, after years of discovery, the

7    DAPs must plead more detailed facts to make their claims plausible on their face.  *Id.*; *see also*

8    *Kendall v. VISA U.S.A., Inc.,* 518 F.3d 1042, 1047-50 (9th Cir. 2008).

9          The DAPs have not plead *any* facts that would allow the Court to plausibly infer that the

10   entities that sold CRT Products to the DAPs were owned or controlled by a DAP, the

11   defendants, or other named co-conspirators.  The DAPs do not dispute this, arguing instead that

12   they do not have to.  This is not the law.  Under Ninth Circuit precedent, the DAPs must plead

13   specific facts that make it plausible that they qualify for the ownership or control exception.  *See*

14   *Kendall*, 518 F.3d at 1050.  Moreover, just months before the close of discovery, the DAPs

15   cannot credibly claim that they have not had the opportunity to discover the facts needed to

16   make plausible allegations that they qualify for the ownership or control exception.  At this late

17   stage in the litigation, the DAPs' complete failure to plead any facts that would allow the Court

18

19

20

21

22

23

24

25

26

27

28

1  to plausibly infer that the DAPs can satisfy the ownership or control exception mandates

2  dismissal of their claims.[5]

3  **CONCLUSION**

4      The DAPs' newly-filed complaints are simply an attempted end-run around the Court's

5  September 26, 2013 Order denying them leave to drag Thomson SA into this litigation over six

6  years after it began. The DAPs have failed to make a prima facie case that Thomson SA is

7  subject to the jurisdiction of this Court. In addition, the DAPs' claims against Thomson SA are

8  barred by laches and the statutes of limitation. For the foregoing reasons, Thomson SA

9  respectfully requests that DAPs' claims against it be dismissed with prejudice.

10

11

12

13

14

15

16

17

18

19

20  [5] The DAPs' reliance on decisions from the *TFT-LCD Antitrust Litig.* for the broad proposition that plaintiffs generally need not plead evidentiary facts establishing the ownership and control

21  exception to *Illinois Brick* is also incorrect. First, *In re TFT-LCD (Flat Panel) Antitrust Litig. (Best Buy)*, No. 07-1827, 2013 WL 254873, at *3-4 (N.D. Cal. Jan. 23, 2013), is inapposite

22  because the plaintiff *did* identify the seller of LCD products, which was a sister entity to the manufacturer, and the issue was whether the *initial* seller of the fixed-price goods must own or

23  control the direct purchaser. And, Judge Illston's other rulings, when read together, simply suggest that the level of pleading detail necessary to allege the ownership and control exception

24  depends on the circumstances of the alleged conspiracy and the litigation. *Compare In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*, No. 07-1827, 2012 WL 5949585, at *3 (N.D.

25  Cal. Nov. 28, 2012) (holding that specific allegations of the seller of finished LCD products was unnecessary in light of "significant evidence of the alleged conspiracy in the public record")

26  *with In re TFT-LCD (Flat Panel) Antitrust Litig. (Proview)*, No. 07-1827, 2013 WL 1164897, at

27  *3 (N.D. Cal. Mar. 20, 2013) (holding that even where the plaintiff identified the seller, conclusory allegations of control were insufficient to establish antitrust standing).

28

1    Dated:  February 18, 2014                    Respectfully submitted,

2

3                                                 */s/ Kathy L. Osborn*
                                                  Kathy L. Osborn (*pro hac vice*)
4                                                 Ryan M. Hurley (*pro hac vice*)
                                                  Faegre Baker Daniels LLP
5                                                 300 N. Meridian Street, Suite 2700
                                                  Indianapolis, IN  46204
6                                                 Telephone: +1-317-237-0300
                                                  Facsimile: +1-317-237-1000
7                                                 kathy.osborn@FaegreBD.com
                                                  ryan.hurley@FaegreBD.com
8
                                                  Jeffrey S. Roberts (*pro hac vice*)
9                                                 Faegre Baker Daniels LLP
                                                  3200 Wells Fargo Center
10                                                1700 Lincoln Street
                                                  Denver, CO  80203
11                                                Telephone: +1-303-607-3500
                                                  Facsimile:  +1-303-607-3600
12                                                jeff.roberts@FaegreBD.com

13                                                Calvin L. Litsey (SBN 289659)
                                                  Faegre Baker Daniels LLP
14                                                1950 University Avenue, Suite 450
                                                  East Palo Alto, CA  94303-2279
15                                                Telephone: +1-650-324-6700
                                                  Facsimile: +1-650-324-6701
16                                                calvin.litsey@FaegreBD.com

17                                                ***Attorneys for Specially Appearing Defendant***
                                                  ***Thomson SA***

18

19

20

21

22

23

24

25

26

27

28