Robert W. Turken
Scott N. Wagner
Mitchell E. Widom
BILZIN SUMBERG BAENA PRICE &
AXELROD LLP
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone:      305-374-7580
Facsimile:      305-374-7593
E-mail:         rturken@bilzin.com; swagner@bilzin.com;
                mwidom@bilzin.com

Stuart H. Singer
BOIES, SCHILLER, & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone:      (954) 356-0011
Facsimile:      (954) 356-0022
E-mail:         ssinger@bsfllp.com

*Counsel for Plaintiffs Tech Data Corporation
and Tech Data Product Management, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### (SAN FRANCISCO DIVISION)

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>_____<br>This Document Relates to Individual Case No. 13-CV-00157-SC<br><br>TECH DATA CORPORATION; TECH DATA PRODUCT MANAGEMENT, INC.,<br><br>          Plaintiffs,<br>     vs.<br><br>HITACHI, LTD; *et al.*<br><br>          Defendants. | Master File No.  07-cv-5944-SC (N.D. Cal)<br><br>MDL No. 1917<br><br>**TECH DATA'S OPPOSITION TO THOMSON CONSUMER ELECTRONICS, INC. AND THOMSON SA'S MOTIONS TO STRIKE WITH PREJUDICE TECH DATA'S FIRST AMENDED COMPLAINT**<br><br>**Date:      March 21, 2014**<br>**Time:      10:00 am**<br>**Courtroom:  1, 17th Floor**<br>**Judge:      Hon. Samuel Conti**<br><br>**REDACTED - PUBLIC VERSION** |

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

# TABLE OF CONTENTS

<div style="text-align: right;">**Page**</div>

TABLE OF AUTHORITIES ...........................................................**Error! Bookmark not defined.**

I.    TECH DATA HAD AN ABSOLUTE RIGHT TO AMEND ITS FIRST AMENDED
      COMPLAINT AS A MATTER OF COURSE PURSUANT TO FED. R. CIV. P. 15 .......2

II.   THOMSON SA'S MOTION ON JURISDICTIONAL GROUNDS SHOULD BE
      DENIED FOR THE REASONS SET FORTH IN THIS COURT'S PRIOR ORDER ......5

      A.   The Court's Prior Order on Personal Jurisdiction over Thomson SA ...................5

      B.   The Court has Specific Personal Jurisdiction Over Thomson SA .........................5

           1.   Thomson SA. ...............................................................................................6

           2.   Thomson SA Was More Than a Holding Company and Controlled the
                Prices of CRTs Sold to Customers in the United States. ............................7

           3.   Thomson SA Purposefully Directed its Misconduct at the United States. ..8

           4.   This Action Arises Out Of and Relates to Thomson SA's Conduct..........12

           5.   The Exercise of Personal Jurisdiction Over Thomson SA Is Reasonable. 12

III.  TECH DATA'S ALLEGATIONS ARE SUFFICIENT TO STATE
      A CLAIM AGAINST THE THOMSON DEFENDANTS ................................................14

IV.   TECH DATA'S SHERMAN ACT CLAIM IS TIMELY ..................................................15

      A.   The Thomson Defendants' Fraudulent Concealment Argument
           Is A Red Herring.............................................................................................16

      B.   Government Action Tolled Tech Data's Sherman Act Claims
           From February 2009 Until The Filing Of The FAC ...............................................18

V.    THE DOCTRINE OF LACHES DOES NOT BAR TECH DATA'S CLAIMS..............20

      A.   Tech Data Did Not Unreasonably Delay Bringing Suit Against The Thomson
           Defendants .............................................................................................21

      B.   The Thomson Defendants Make No Showing Of Evidentiary Or Expectations-
           Based Prejudice.............................................................................................21

           1.   Thomson SA has not established evidentiary prejudice. ...........................22

           2.   Thomson SA has not suffered expectations-based prejudice. ...................22

VI.   TECH DATA HAS ADEQUATELY ALLEGED ANTITRUST STANDING...............23

VII.  THE COURT SHOULD DEEM THE FAC SERVED ON THE THOMSON
      DEFENDANTS' COUNSEL.................................................................................24

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) ..................................................................6

*Anderson v. Dassault Aviation*,
   361 F.3d 449 (8th Cir. 2004) ...................................................................13

*Aurora Enters v. Nat'l Broad Co.*,
   688 F.2d 689 (9th Cir. 1982) ...................................................................21

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ...................................................................13

*Barker v. Am. Mobil Power Corp.*,
   64 F.3d 1397 (9th Cir. 1995) ...................................................................18

*Barnes & Noble, Inc. v. LSI Corporation*,
   823 F. Supp. 2d 980 (N.D. Cal. 2011) .......................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................2, 15

*Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*,
   620 F.2d 1360 (9th Cir. 1980) .................................................................17

*Bratton v. Bethlehem Steel Corp.*,
   649 F.2d 658 (9th Cir. Cal. 1980)............................................................21

*Chipanno v. Champion Int'l Corp.*,
   702 F.2d 827 (9th Cir. 1983) ...................................................................19

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
   2013 U.S. Dist. LEXIS 1604 (N.D. Cal. Jan. 3, 2013) .............................5

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ...............................................................6, 9

*Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
   395 F.3d 1315 (Fed. Cir. 2005)................................................................13

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001) ...................................................................21

*DFSB Kollective Co., Ltd. v. Bing Yang*,
   No. 11-1051, 2013 U.S. Dist. LEXIS 46096 (N.D. Cal. Mar. 28, 2013)................13

*Dungan v. Morgan Drive-Away, Inc.*,
  570 F.2d 867 (9th Cir. 1978) ...................................................................19, 20

*Evergreen Safety Council v. RSA Network Inc.*,
  697 F.3d 1221 (9th Cir. 2012) .................................................................21, 22

*Fiore v. Walden*,
  688 F.3d 558 (9th Cir. 2012) ..........................................................................12

*Fireman's Fund Ins. Co. v. National Bank of Coops.*,
  103 F.3d 888 (9th Cir. 1996) ..........................................................................12

*Gates Learjet Corp. v. Jensen*,
  743 F.2d 1325 (9th Cir. 1984) ........................................................................13

*Go-Video, Inc. v. Akai Elec. Co., Ltd.*,
  885 F.2d 1406 (9th Cir. 1989) ..........................................................................6

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
  885 F. Supp. 2d 617 (S.D.N.Y. 2012)............................................................19

*Horne v. Doe*,
  No. WDQ-11-2787, 2012 WL 4009887 (D. Md. Sept. 5, 2012).......................3

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)...................................................................................23, 24

*In re Beaty*,
  306 F.3d 914 (9th Cir. 2002) ..........................................................................22

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
  738 F. Supp. 2d at 1025 ............................................................................17, 18

*In re CRT Antitrust Litig. (Crago)*,
  No. 07-5944, 2010 WL 9543295 (N.D. Cal. Feb. 5, 2010) ............................18

*In re Katz Interactive Call Processing Patent Litig.*,
  882 F. Supp. 2d 1123 (C.D. Cal. 2010) ..........................................................21

*In re Perrier Bottled Water Litig.*,
  138 F.R.D. 348 (D. Conn. 1991)......................................................................13

*In re Rubber Chem. Antitrust Litig.*,
  504 F. Supp. 2d 777 (N.D. Cal. 2007) ............................................................16

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008) ..........................................................................17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 11-0829, 2011 U.S. Dist. LEXIS 131809 .................................................12

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Best Buy)*,
   No. 07-1827, 2013 WL 254873 (N.D. Cal. Jan. 23, 2013)....................................................24

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Proview)*,
   No. 07-1827, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) ................................................24

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*,
   No. 07-1827, 2012 WL 5949585 (N.D. Cal. Nov. 28, 2012) ................................................23

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
   715 F.3d 716 (9th Cir. 2013) .................................................................................................9

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)................................................................................................................5

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) .........................................................................................20, 21

*Laker Airways Ltd. v. Pan Am. World Airways*,
   559 F. Supp. 1124 (D.D.C. 1983) ........................................................................................14

*Laub v. U.S. Dep't of Interior*,
   342 F.3d 1080 (9th Cir. 2003) ...............................................................................................5

*Matthews Metals Products, Inc. v. RBM Precision Metal Products, Inc.*,
   186 F.R.D. 581 (N.D. Cal. 1999)........................................................................................3, 4

*McCune v. F. Alioto Fish Co.*,
   597 F.2d 1244 (9th Cir. 1979) .............................................................................................22

*Menken v. Emm*,
   503 F.3d 1050 (9th Cir. 2007) .............................................................................................12

*No Cost Conference, Inc. v. Windstream Comm'ns, Inc.*,
   940 F. Supp. 2d 1285 (S.D. Cal. 2013)..................................................................................3

*Ochoa v. J.B. Martin & Sons Farms*,
   287 F.3d 1182 (9th Cir. 2002) ...............................................................................................6

*Pacific Gas & Electric Co. v. Fireboard Products, Inc.*,
   116 F. Supp. 377 (N.D. Cal 1953) .........................................................................................4

*Panavision Int'l L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) .............................................................................................12

*Plunkett v. Dept. of Justice*,
   No. 11-341, 2011 WL 6396632 (D.D.C. Dec. 20, 2011)........................................................3

*Riddell v. Riddell Wash. Corp.*,
   866 F.2d 1480 (D.C. Cir. 1989) ...........................................................................................17

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,
  621 F.3d 981 (9th Cir. 2010) ...........................................................................22

*Sensible Foods, LLC v. World Gourmet, Inc.*,
  No. 11-2819 SC, 2011 WL 5244716 (N.D. Cal., Nov. 3, 2011) ....................20, 21

*Sinatra v. Nat'l Enquirer, Inc.*,
  854 F.2d 1191 (9th Cir. 1988) ........................................................................13

*Societe Civile Succession Richard Guino v. Beseder Inc.*,
  No. 03-1310, 2007 U.S. Dist. LEXIS 83782 (D. Ariz. Oct. 30, 2007)...................13

*Steel v. U.S.*,
  813 F.2d 1545 (9th Cir. 1987) ..........................................................................9

*Thomson S.A. v. Quixote Corp.*,
  979 F. Supp. 286 (D. Del. 1997), *aff'd,* 166 F.3d 1172 (Fed. Cir. 1999) ..............13

*Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*,
  465 F.3d 1102 (9th Cir 2006) ...........................................................................22

*Trueposition, Inc. v. Sunon, Inc.*,
  No. 05-3023, 2006 WL 1686635 (E.D. Pa. June 14, 2006)...................................13

*Univ. of Pittsburgh v. Champion Prods. Inc.*,
  686 F.2d 1040 (3d Cir. 1982)............................................................................22

*Villery v. District of Columbia*,
  277 F.R.D. 218 (D.D.C. 2011)............................................................................3

*Washington Shoe Co. v. A-Z Sporting Goods Inc.*,
  704 F.3d 668 (9th Cir. 2012) ............................................................................9

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
  556 F.2d 406 (9th Cir. 1977) ............................................................................5

*Yahoo Inc. v. La Ligue Contre le Racisme*,
  433 F.3d 1199 (9th Cir. 2006) (en banc) .............................................................9

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
  401 U.S. 321 (1971)...........................................................................................20

STATUTES

15 U.S.C. § 16(i) ...........................................................................................................19

OTHER AUTHORITIES

Fed. R. Civ. P. 4...........................................................................................................24

Fed. R. Civ. P. 7...........................................................................................................2

1

Fed. R. Civ. P. 15 ................................................................................................................1, 2, 3, 4

Fed. R. Civ. P. 21 ........................................................................................................................3, 4

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1    Tech Data Corporation and Tech Data Product Management, Inc. ("Tech Data") submit

2    their Opposition to Defendants Thomson Consumer Electronics, Inc. and Thomson SA's

3    ("Thomson Defendants") Motions to Strike With Prejudice Tech Data's First Amended

4    Complaint (the "Motion") [Dkt. Nos. 2329, 2373] and state as follows:

5    <center>**QUESTIONS PRESENTED**</center>

6    1.    Whether Tech Data's First Amended Complaint was properly filed under Federal

7    Rule of Civil Procedure 15(a)(1)(B).

8    2.    Whether this Court has jurisdiction over Thomson SA, or, alternatively, Tech

9    Data is entitled to jurisdictional discovery.

10   3.    Whether Tech Data's Sherman Act claims against Thomson are properly pled.

11   <center>**INTRODUCTION**</center>

12   The Thomson Defendants assert several bases upon which they claim the allegations in

13   Tech Data's First Amended Complaint (the "FAC") [D.E. No. 1911[1]] should be stricken, or

14   alternatively, dismissed.  The Thomson Defendants first argue that because Tech Data did not

15   obtain the Thomson Defendants' consent or leave of court before filing the FAC, Tech Data's

16   amendment of its complaint was improper.  Next, Thomson SA argues that it is not subject to

17   this Court's jurisdiction and Tech Data is not entitled to jurisdictional discovery.  The Thomson

18   Defendants also assert that the allegations of Tech Data's FAC are insufficient to state a claim

19   against them.  Finally, the Thomson Defendants claim that, even if Tech Data's allegations are

20   sufficient, Tech Data's claims are time barred.

21   The Thomson Defendants are wrong on all counts.

22   First, because no responsive pleading or motion to dismiss was filed as to Tech Data's

23   original complaint at the time Tech Data filed its FAC, Tech Data had the right to amend its

24   complaint as a matter of course under Fed. R. Civ. P. 15(a)(1)(B).

25   Second, this Court previously ruled that jurisdictional discovery is necessary to further

26   develop the factual basis for the Court's jurisdiction over Thomson SA.

27

28   [1] "Dkt. No." refers to the docket entry number in the MDL, 07-5944 SC, MDL No. 1917 (N.D. Cal.).

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1    Third, Tech Data's allegations as to the Thomson Defendants are sufficient to meet the

2    *Twombly* standard.   Tech Data's FAC contains detailed allegations concerning the Glass

3    Meetings and specifically alleges the Thomson Defendants' direct participation in these group

4    meetings.  Tech Data also alleges that the Thomson Defendants participated in bilateral meetings

5    with other members of the CRT price-fixing conspiracy.

6    Finally, Tech Data's Sherman Act claims were timely filed due to the Thomson

7    Defendants' and their co-conspirators' fraudulent concealment of the CRT price-fixing

8    conspiracy—which the Court has already determined lasted at least until November 2007—and

9    the pendency of the Department of Justice's ongoing investigation.

10   For these reasons, which we explain in further detail below, each of the Thomson

11   Defendants' arguments should be rejected.[2]

12   **ARGUMENT**

13   **I.   TECH DATA HAD AN ABSOLUTE RIGHT TO AMEND ITS FIRST AMENDED

14   COMPLAINT AS A MATTER OF COURSE PURSUANT TO FED. R. CIV. P. 15**

15   The Thomson Defendants contend that Tech Data's FAC should be stricken because

16   Tech Data was required to either obtain Thomson's written consent or leave of court under Fed.

17   R. Civ. P. 15(a)(2) before filing its FAC.  Indeed, according to Thomson Tech Data is prohibited

18   from filing its FAC as a matter of course pursuant to Rule 15(a)(1)(B) because "when it was

19   filed, no Defendant had filed a responsive pleading or motion under rule 12(b), (e) or (f) directed

20   at the Original Complaint."  Thomson Consumer Motion at 6-7.

21   Thomson's reading of Rule 15(a) is incorrect.  A complaint is a pleading to which a

22   responsive pleading is required.  Fed. R. Civ. P. 7(a)(2).  "Therefore, under Rule 15(a)(1)(B), a

23   party has an absolute right to amend its complaint at any time from the moment the complaint is

---

[2]  The memoranda of law filed by Thomson SA and Thomson Consumer Electronics, Inc. contain
numerous cross-references to each other and to briefing in other DAP cases.  As a result, Tech Data has
assumed that with the exception of the jurisdiction argument set forth by Thomson SA, both Thomson
entities raised the same arguments in response to the FAC.  Moreover, Tech Data has only responded to
the arguments raised in the Thomson Defendants' respective Motions to Strike, and is under no obligation
to respond to arguments made in briefing in other cases that are not explicitly discussed in the Thomson
Defendants' Motions.

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1  filed until 21 days after the earlier of the filing of a responsive pleading or a motion under Rule

2  12(b), (e), or (f)." *Villery v. District of Columbia*, 277 F.R.D. 218, 219 (D.D.C. 2011); *see also*

3  *Plunkett v. Dept. of Justice*, No. 11-341, 2011 WL 6396632 at *3 (D.D.C. Dec. 20, 2011)

4  (holding that where defendant has not yet filed an answer or a motion under Rule 12(b), (e), or

5  (f), Plaintiff may amend his complaint once as a matter of right); *Horne v. Doe*, No. WDQ-11-

6  2787, 2012 WL 4009887 at *1 n.5 (D. Md. Sept. 5, 2012) (holding that because plaintiff moved

7  to amend his complaint before the defendants filed either their answer or a rule 12 motion,

8  plaintiff could file an amended complaint as a matter of right).

9      Tech Data filed its initial complaint on December 11, 2012.  And, when Tech Data filed

10  its FAC adding the Thomson Defendants on September 9, 2013, the Defendants in this action

11  had not filed a responsive pleading or a motion under 12(b), (e) or (f).[3]  Thus under the plain

12  terms of Rule 15(a)(1)(B), Tech Data had an absolute right to amend its complaint as a matter of

13  course when it did.

14      The Thomson Defendants also argue that even if Tech Data's filing was timely under

15  Rule 15(a), Tech Data was required to obtain leave of court under Rule 21 before it could add

16  Thomson as a party.  The Thomson Defendants' alternative contention is also wrong.

17      If an amended complaint adding new parties is filed within the time period prescribed for

18  amendment as a matter of course under Rule 15(a)(1), Rule 15 takes precedence over Rule 21

19  and the amendment is permitted without leave of court.  *See No Cost Conference, Inc. v.*

20  *Windstream Comm'ns, Inc.,* 940 F. Supp. 2d 1285, 1296-97 (S.D. Cal. 2013) (finding no leave of

21  court required to amend complaint to add new parties where Rule 15 " establish[es] an exception

22  to the strict requirements of Rule 21"); *Barnes & Noble, Inc. v. LSI Corporation,* 823 F. Supp. 2d

23  980 (N.D. Cal. 2011) (finding plaintiffs entitled to file amend complaint adding parties as a

24  matter of right under 15(a)); *Matthews Metals Products, Inc. v. RBM Precision Metal Products,*

25  *Inc.,* 186 F.R.D. 581, 583 (N.D. Cal. 1999) (finding leave of court not required for an

26  amendment adding a party prior to the filing a responsive pleading.)

27  _____

28  [3] Indeed, the other Defendants did not file their motion to dismiss certain of Tech Data's claims until October 7, 2013.

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1    The Thomson defendants rely on *Pacific Gas & Electric Co. v. Fireboard Products, Inc.,*

2    116 F. Supp. 377 (N.D. Cal 1953) to argue that a party must seek leave of court under Rule 21

3    even if the amended pleading is timely under Rule 15(a)(1).   However, even the Thomson

4    Defendants acknowledge the line of authority holding "that Rule 15(a) should control over Rule

5    21."   Thomson Consumer Motion at 8.   Indeed, when the Northern District of California

6    reconsidered the holding in *Pacific Gas & Electric Company* in 1999, it concluded that in

7    circumstances such as these Rule 15(a) trumps Rule 21.

> Defendants argue that although they had not responded at the time plaintiffs amended their complaint to add Stone as a defendant, plaintiffs were required to obtain leave of court. There is authority to support defendants' claim. *See Pacific Gas & Elec. Co. v. Fibreboard Products, Inc.,* 116 F.Supp. 377, 382 (N.D.Cal.1953).... However, other authority and the more persuasive reasoning supports the conclusion that leave of court is not required for an amendment adding a party prior to the filing of a responsive pleading. Rule 21 of the Federal Rules of Civil Procedure can correctly be viewed as a general provision dealing with adding and dropping parties, while Rule 15(a) is a more specific provision dealing with the particular means by which a party may do so by an amendment to the pleadings. Therefore, the court concludes that plaintiffs could properly add Stone without leave of court.

16    186 F.R.D. 581 at 583 (internal citations omitted).

17    Despite this clear pronouncement, the Thomson Defendants argue that the *Matthews* rule

18    has "no application here" because the Thomson Defendants "would be substantially prejudiced if

19    [they were] forced to join this action nearly six years after it commenced and four years after

20    discovery began."   Thomson Consumer Motion at 8.   The Thomson Defendants' prejudice

21    argument is entirely irrelevant here, where Tech Data had an absolute right to amend its

22    complaint as a matter of course.   The Thomson Defendants do not cite any authority supporting

23    the contention that prejudice to a defendant can override a plaintiff's right to amend a complaint

24    as a matter of course under Rule 15(a)(1).

25    For these reasons, Tech Data's addition of the Thomson Defendants in its FAC was both

26    timely and in full accordance with the Federal Rules.

27

28

1
2

**II.  THOMSON SA'S MOTION ON JURISDICTIONAL GROUNDS SHOULD BE DENIED FOR THE REASONS SET FORTH IN THIS COURT'S PRIOR ORDER**

3

 **A.  The Court's Prior Order on Personal Jurisdiction over Thomson SA**

4

  This Court previously issued an order on Thomson SA's Motion to Dismiss Sharp's

5

complaint on jurisdictional grounds, which presented the same issues that Thomson SA raises in

6

the instant Motion.  Order Denying Motion to Dismiss for Lack of Personal Jurisdiction and

7

Granting Motion for Jurisdictional Discovery (the "Personal Jurisdiction Order").  [D.E. No.

8

2252].

9

  Tech Data acknowledges this Court's finding in its Personal Jurisdiction Order that

10

Sharp's current allegations with respect to specific and general jurisdiction were insufficient to

11

establish personal jurisdiction over Thomson SA.  Given the similarity between the allegations

12

contained in the Tech Data and Sharp complaints, Tech Data does not expect the Court to reach a

13

different conclusion here.

14

  In the same Order, the Court found that jurisdictional discovery is appropriate and

15

granted Sharp leave to take discovery regarding Thomson SA's relationship with Thomson

16

Consumer and Thomson SA's involvement in the CRT price-fixing conspiracy.  *Id.* at 16.

17

  The result should be no different here.  Tech Data is entitled to the opportunity to develop

18

a "more satisfactory showing of the facts."  *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080,

19

1093 (9th Cir. 2003); *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430, n.2 (9th

20

Cir. 1977); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2013 U.S. Dist. LEXIS 1604 at

21

*13-14 (N.D. Cal. Jan. 3, 2013) (Conti, J.) (granting jurisdictional discovery to evaluate agency

22

jurisdiction).  Tech Data, nevertheless, includes its argument on personal jurisdiction in Section

23

B below in order to preserve its ability to contest the issue at a later date.

24

 **B.  The Court has Specific Personal Jurisdiction Over Thomson SA**

25

  A Court may exercise specific personal jurisdiction over a nonresident defendant if the

26

defendant has minimum contacts with the forum state such that the exercise of jurisdiction "does

27

not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*,

28

326 U.S. 310, 316 (1945).  In performing this analysis, the Ninth Circuit applies a three-part test:

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

"(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one with arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).   Once a plaintiff satisfies the first two prongs, the burden shifts to the defendant to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* The Ninth Circuit has adopted a flexible approach that allows a plaintiff to make a "lesser showing of minimum contacts 'if considerations of reasonableness dictate.'" *Ochoa v. J.B. Martin & Sons Farms*, 287 F.3d 1182, 1188, n.2 (9th Cir. 2002).

Here, the relevant forum for the Court's minimum contacts analysis is the U.S. *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1416 (9th Cir. 1989); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

        1.    <u>Thomson SA</u>.

Thomson SA is a French corporation with its headquarters located in France. *See e.g.*, FAC ¶ 62; Wagner Decl. Ex. A at last page (Thomson 2003 20-F) at p. 286; Ex. B at ¶¶ 1, 6; Ex. C at p. 3 of 44; Cadieux Decl. ¶ 4.   Now known as Technicolor SA (FAC ¶ 62; Cadieux Decl. ¶ 1), Thomson SA was formerly known as Thomson multimedia S.A. and Thomson multimedia. *See* Wagner Decl. Ex. A at pp. F-7, F-74.   Thomson SA had multiple wholly-owned subsidiaries, including Thomson Consumer Electronics, Inc. ("Thomson Consumer").   FAC ¶ 62; Cadieux Decl. ¶ 17.   Thomson Consumer is now known as Technicolor USA, Inc. (FAC at ¶ 63), and was formerly known as Thomson multimedia, Inc. *See* Cadieux Decl. ¶ 17; Wagner Ex. A (Thomson 2003 20-F) at p. F-75.   During the conspiracy period, Thomson Consumer "was a major manufacturer of CRTs for the United States market, with plants located in Scranton, Pennsylvania; Marion, Indiana; and Mexicali, Mexico."   FAC ¶ 63.   "Thomson Consumer Electronics sold its CRTs" to "television manufacturers in the United States and elsewhere." *Id.*

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1
2

      2.     <u>Thomson SA Was More Than a Holding Company and Controlled the Prices of CRTs Sold to Customers in the United States.</u>

3          Thomson SA's motion rests on the fiction that it was merely a holding company and,

4 therefore, could not have participated in the CRT conspiracy. *See* Mot. at 2, 3.  In its 2011

5 Annual Report to shareholders, though, Thomson SA admitted that it "played a minor role in the

6 alleged anticompetitive conduct [regarding CRTs]." *See also* FAC ¶159.  One year later,

7 following a four year investigation, the European Commission fined Thomson SA and 6 other

8 international corporate families a total of over €1.4 billion for its supposedly "minor" role,

9 finding that the conspiracy "operated worldwide" and was "among the most organized cartels

10 that the Commission has investigated." *Id.* at 187.

11          Other evidence further demonstrates that Thomson SA did more than hold the stock of its

12 subsidiaries.  In a 1997 appellate brief it filed in the Federal Circuit, it described itself as a "large

13 multi-national defense and consumer electronics firm with headquarters in France." *See* Wagner

14 Decl. Ex. C; *see also* Ex. D (Thomson SA was "the world's largest supplier of television set-top

15 boxes" and had "operational programs"); Ex. E at pp. 9-10 (listing numerous operations officers

16 at Thomson SA); Ex. F at pp. 3, 28 ("[Thomson SA]" signed a letter of intent with the city of

17 Foshan, China, to run a jointly owned tube production facility").

18          Thomson SA also had a controlling role in the finances, policies, and/or affairs of its

19 subsidiaries, including Defendant Thomson Consumer, which served the U.S. CRT market.

20 Thomson SA managed Thomson Consumer's business from its headquarters in France, and

21 Thomson SA's management and board of directors set its policies and direction. Ex. B at ¶¶ 1, 6.

22 It also took part in CRT production and pricing discussions relating to CRTs manufactured in

23 Mexico for North American CRTs. ██████████████████████████████████

24 ████████████████████████████████████████████████████████

25 ██████████████████████████████████████████ Ex. H at pp. 43-44 ("Our

26 Asian plants produce goods for all markets").

27
28

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

3.     Thomson SA Purposefully Directed its Misconduct at the United States.

Thomson SA controlled the prices of CRTs sold in the U.S.  A June 2003 email between two Thomson Consumer employees and Christian Lissorgues of Thomson SA, for instance, shows that "all pricing decisions outside of the MYF pricing must be submitted to Mr. Lissorgues, and approved by both Messrs. Lissorgues and Lecoq."  *See* Wagner Decl. Ex. I.  As the Thomson Consumer employee noted, "[t]he decision regarding pricing deviations beyond the MYF pricing was made at levels above Mr. Lissorgues and myself, thus we must follow our Managements direction with regard to approval of all pricing deviations."  *Id.*  The e-mail also attached a spreadsheet that discussed "NAFTA production" in 2003.  *Id.*

Likewise,

Other documents similarly highlight Thomson SA's direct involvement in CRT pricing, planning, and operations in the U.S.

Thomson SA profited handsomely by participating in the conspiracy and targeting its anticompetitive conduct at the U.S.  The U.S. was Thomson SA's "most important market" and Thomson SA thrived in it, becoming the "biggest seller of televisions in the U.S."  *See* Wagner

---

[4] Thomson SA was formerly known as Thomson multimedia and Thomson multimedia S.A.  *See* Ex. 2 (Thomson 2003 20-F) at pp. F-7, F-74.

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1   Decl. Ex. R at p. 36; Rose Decl. ¶¶ 1, 4; Wagner Decl. Ex. S.  In 2002, alone, more than half of

2   its sales—totaling €10.2 billion—came from the U.S.  *Id.*  U.S. sales also accounted for 55% of

3   its net sales in 1999, 53% of its net sales in 2000, and 53%, of its net sales in 2001.   Wagner

4   Decl. Ex. R at p. 36; Rose Decl. ¶¶ 1, 4 (noting that in 2008, "approximately 47% of [Thomson

5   SA's] revenues were generated from the U.S.").

6         The Ninth Circuit applies the "effects test" to determine whether a defendant has

7   purposefully directed its misconduct at the U.S.  *CollegeSource*, 653 F.3d at 1076.  The test

8   focuses "on the forum in which the defendant's actions were felt, whether or not the actions

9   themselves occurred within the forum."  *Yahoo Inc. v. La Ligue Contre le Racisme*, 433 F.3d

10   1199, 1206 (9th Cir. 2006) (en banc).  Thus, purposeful direction occurs where the defendant

11   allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

12   harm that the defendant knows is likely to be suffered in the forum state."  *Id.* at 1077; *In re W.*

13   *States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 743-44 (9th Cir. 2013); *Washington*

14   *Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012).  It is enough for a

15   plaintiff to assert that a defendant engaged in anticompetitive action that was "intended to have,

16   and did have" an effect on commerce in the forum.  *In re W. States Wholesale*, 715 F.3d at 744.

17         Thomson SA argues that Tech Data cannot establish personal jurisdiction because it did

18   not specify that Thomson SA (as opposed to other Thomson entities) specifically targeted the

19   U.S. (as opposed to other countries) and that Thomson SA did not in fact target the U.S. when it

20   participated in conspiratorial meetings.  *See* Thomson SA Motion at 9 and 10.  Thomson SA

21   submits several declarations in support of these contentions.

22         None of Thomson SA's declarations refute Tech Data's allegations.  All four of Thomson

23   SA's declarations are phrased in the present tense and therefore do not speak to what occurred

24   during the conspiracy period.  *See, e.g.,* Rose Decl. ¶ 4 ("Thomson [SA] owns all of the stock of

25   Thomson, Inc …"); Cadieux Decl. ¶ 20 ("Thomson S.A. does not control the day-to-day

26   activities of Thomson Consumer …"); Debon Decl. ¶ 6 ("Thomson S.A. does not direct or

27   advise Thomson Inc. on how to sell or distribute any Thomson Inc. product in the United

28   States …"); O'Hara Decl. ¶ 6 ("Thomson Inc. controls its day-to-day activities."); *see also Steel*

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1  *v. U.S.*, 813 F.2d 1545, 1549 (9th Cir. 1987) ("[C]ourts must examine the defendant's contacts

2  with the forum at the time of the events underlying the dispute when determining whether they

3  have jurisdiction.").  Further, Thomson SA's earliest declaration is dated September 2, 2005,

4  which is after Thomson SA's sale of its CRT business to Videocon in July 2005.  *See* Debon

5  Decl.; FAC ¶ 62.

6  Thomson SA's argument ignores both Tech Data's allegations and the evidence.  Tech

7  Data alleged for example, that Thomson SA "participated in dozens of meetings with its

8  competitors, including several Glass Meetings and multiple bilateral meetings" and that the

9  meetings concerned the U.S. CRT market.  FAC ¶¶ 1, 4, 7, 14, 116, 120, 126, and 159.  The

10  purpose of these meetings was to raise and stabilize the prices and set supply levels of CRTs sold

11  by Thomson SA and its competitors in North America, including the U.S.  *Id.* ¶ 159.  During

12  these meetings, Thomson SA and its co-conspirators discussed CRT prices, production,

13  revenues, volumes, demand, inventories, estimated sales, plant shutdowns, customer allocation,

14  and new product development, including for North American CRTs.  *Id.*  Examples of these

15  meetings include the following:



25  *see also* Wagner Decl. Ex. I (email stating that Thomson

26  Consumer pricing deviations had to be submitted to Thomson SA executive Mr. Lissorgues and

27  approved by both Messrs. Lissorgues and Lecoq, and attaching a spreadsheet discussing

28  "NAFTA production").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18    FAC ¶¶ 120, 187 (noting the European Commission

19 fined Thomson and 6 other international corporate families a total of over € 1.4 billion for

20 participating in a conspiracy that "raised and stabilized worldwide and U.S. prices").[5]

21

22 _____

23 [5]

24

25

26

27    *see also* FAC ¶ 164 ("The

individual participants in the conspiratorial meetings and communications often did not know the
corporate affiliation of their counterparts, nor did they distinguish between the entities within a
corporate family.")

28

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

4.     This Action Arises Out Of and Relates to Thomson SA's Conduct.

The Ninth Circuit uses a "but for" test to determine whether a plaintiff's action arises out of and relates to a defendant's conduct.  *Fireman's Fund Ins. Co. v. National Bank of Coops.*, 103 F.3d 888, 894 (9th Cir. 1996).  Thomson SA does not even attempt to deny that this action arises out of its misconduct.  And for good reason: but for Thomson SA's anticompetitive conduct, Tech Data would not have sustained any damage.  Thus, Tech Data meets the second prong here.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 U.S. Dist. LEXIS 131809 at *15 (finding plaintiff's claim that it paid artificially high prices for LCDs related directly to defendant's conspiratorial activities).

5.     The Exercise of Personal Jurisdiction Over Thomson SA Is Reasonable.

Thomson SA fails to present a "compelling case that the exercise of jurisdiction would not be reasonable." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).  Courts generally look to seven factors to determine reasonableness: (1) the extent of the defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Fiore v. Walden*, 688 F.3d 558, 582-583 (9th Cir. 2012).

**Purposeful interjection.**  This factor looks at the degree to which the defendant has aimed its activities at the forum. *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).  As described above, Thomson SA participated in conspiratorial conduct directed at the U.S. CRT market.  Moreover, Thomson SA's participation was substantial, as evidenced by the fact that it was the "biggest seller of televisions in the U.S.," regularly had more than half of its net sales come from the U.S., and generated €10.2 billion from the U.S. in 2002 alone.  *See* Wagner Decl. Ex. TT.  Thus, this factor weighs in favor of jurisdiction.

**Burden.**  To satisfy this element, Thomson SA must show that the "inconvenience is so great as to constitute a deprivation of due process." *Panavision*, 141 F.3d at 1323 (internal quotation marks omitted).  It cannot do so here.

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1    Thomson SA argues that litigating this case in the U.S. "would impose a significant

2   burden" because all of its evidence and percipient witnesses reside in France.  *See* Thomson SA

3   Motion at 11.  But as the Ninth Circuit has explained, "the advent of modern transportation

4   certainly has made the burden of defending in a foreign forum more palatable."  *Ballard v.*

5   *Savage*, 65 F.3d 1495, 1501 (9th Cir. 1995).  Moreover, Thomson SA has prosecuted substantial

6   and lengthy litigation in the U.S.  *See* Wagner Decl. Exs. Y and L; *Thomson S.A. v. Quixote*

7   *Corp.*, 979 F. Supp. 286 (D. Del. 1997), *aff'd,* 166 F.3d 1172 (Fed. Cir. 1999); *see also*

8   *Trueposition, Inc. v. Sunon, Inc.*, No. 05-3023, 2006 WL 1686635 at *9 (E.D. Pa. June 14, 2006)

9   ("Based on [defendant's] prior involvement in litigation in the United States, the Court cannot

10   conclude that [defendant] would be heavily burdened by defending the instant litigation in

11   Pennsylvania").

12    Thomson SA also cannot rely on the French "blocking statute" it cites.  *See* Thomson SA

13   Motion at 11.  The case it relies on is inapposite as it does not address whether the "blocking

14   statute" precludes jurisdiction.  *See In re Perrier Bottled Water Litig.*, 138 F.R.D. 348, 356 (D.

15   Conn. 1991) (discussing "blocking statute" in context of The Hague Convention).  Moreover,

16   other French litigants regularly participate in U.S. discovery despite this provision.  *See*

17   *Anderson v. Dassault Aviation*, 361 F.3d 449, 453-54 (8th Cir. 2004); *Commissariat A L'Energie*

18   *Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323-24 (Fed. Cir. 2005); *Societe*

19   *Civile Succession Richard Guino v. Beseder Inc.*, 2007 U.S. Dist. LEXIS 83782 at *32-33 (D.

20   Ariz. Oct. 30, 2007).

21    **Conflicts.**  If conflicts with a foreign sovereignty were dispositive, they would always

22   preclude suit against a foreign national in a U.S. court.  *Gates Learjet Corp. v. Jensen*, 743 F.2d

23   1325, 1333 (9th Cir. 1984).  Sovereignty considerations "weigh less heavily" when the defendant

24   manifests an intent to serve and benefit from the U.S. market.  *Sinatra v. Nat'l Enquirer, Inc.*,

25   854 F.2d 1191, 1200 (9th Cir. 1988); *DFSB Kollective Co., Ltd. v. Bing Yang*, No. 11-1051, 2013

26   U.S. Dist. LEXIS 46096 at *25 (N.D. Cal. Mar. 28, 2013).  As discussed above, Thomson SA

27   manifested that intent here.  Thus, this factor weighs in favor of jurisdiction.

28

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

**U.S. interest/efficiency/plaintiffs' choice.** The U.S. is interested in trying violations of its antitrust laws and injuries to its residents. The Northern District of California—as the MDL court—will also be the most efficient forum and is critical to affording Tech Data convenient and efficient relief. This Court has already presided over this litigation for several years and is familiar with the facts and issues that will need to be addressed. Most of the evidence and witnesses are also located in the U.S. as compared to France. These factors therefore weigh in favor of jurisdiction.

**Alternative forum.** Thomson SA fails to even attempt to argue that there is an alternative forum. Because the burden is on Thomson SA, this factor weighs in favor of jurisdiction. In any event, it is unlikely that Tech Data's claims could be tried in any other forum. *See Laker Airways Ltd. v. Pan Am. World Airways,* 559 F. Supp. 1124, 1136 (D.D.C. 1983) (noting that foreign courts may decline to hear cases involving American antitrust law).

In short, Thomson SA has not established—and cannot establish—a "compelling case" that the exercise of jurisdiction over it would be unreasonable.[6]

### III.   TECH DATA'S ALLEGATIONS ARE SUFFICIENT TO STATE A CLAIM AGAINST THE THOMSON DEFENDANTS

According to the Thomson Defendants, Tech Data's allegations with respect to Thomson "amount to nothing more than a 'bare allegation of a conspiracy which is almost impossible to defend against' and is insufficient to state a claim against Thomson." Thomson SA Motion at 20. Once again, the Thomson Defendants are incorrect.

Tech Data's FAC includes an extensive discussion regarding the nature of, purpose, and effect of the Glass Meetings. FAC ¶¶ 121-135. And Tech Data specifically alleges that the Thomson Defendants participated in these conspiratorial meetings. For example, among other facts, Tech Data alleges that:

> • Between at least 1996 and 2005, Defendant Thomson participated in dozens of meetings with its competitors, including several Glass Meetings and multiple

---

[6] In the absence of jurisdictional discovery, Tech Data is not a position to argue that Thomson SA is subject to general jurisdiction. Tech Data reserves its right to make this argument following jurisdictional discovery.

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

bilateral meetings. These meetings were attended by high level sales managers from Thomson. At these meetings, Thomson discussed such things as CRT prices, production, revenues, volumes, demand, inventories, estimated sales, plant shut downs, customer allocation, and new product development and agreed on prices and supply levels for CRTs. Thomson never effectively withdrew from this conspiracy. Thomson sold its CRT business to co-conspirator Videocon Industries, Ltd. in July 2005. Thomson had admitted to the European Commission that it played a role in the conspiracy.

- Glass meetings also occurred occasionally in various European countries. Attendees at these meetings included those Defendants and co-conspirators which had subsidiaries and/or manufacturing facilities located in Europe, including Philips, LG Electronics, LP Displays, Chunghwa, Samsung, Daewoo (usually DOSA attended these meetings on behalf of Daewoo), IRICO and Thomson. Chunghwa also attended these meetings.

FAC ¶¶ 126, 159.

These allegations are sufficient to meet the heightened pleading standard under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Therefore, the Thomson Defendants' Motions should be denied in this respect as well.[7]

## IV.    TECH DATA'S SHERMAN ACT CLAIM IS TIMELY

The Thomson Defendants contend that Tech Data's claim is untimely because they purportedly exited the CRT industry in July 2005 and Tech Data cannot rely on any theory of tolling to bring its Sherman Act claim against the Thomson Defendants within the applicable statute of limitations. The Thomson Defendants' argument misses the point.

The relevant question for the statute of limitations inquiry is not when the Thomson Defendants exited the CRT industry but rather the date until which the Thomson Defendants and their co-conspirators fraudulently concealed the conspiracy. This Court has already determined,

---

[7] As the Thomson Defendants are well-aware, the plaintiffs have developed significant additional facts regarding the Thomson Defendants' involvement in the CRT price-fixing conspiracy since the filing of Tech Data's FAC. While Tech Data remains confident that the allegations as to the Thomson Defendants in the FAC are sufficient to satisfy the *Twombly* standard, Tech Data offered to replead its complaint to include these new Thomson-specific factual allegations. Despite the fact that Tech Data's proposal would have streamlined the briefing process considerably, and indeed obviated the need for this very discussion, the Thomson Defendants rejected Tech Data's offer and instead opted to file these Motions.

1    at least at the motion to dismiss stage, that the conspiracy was concealed and plaintiffs could not

2    have known about its existence until November 2007 at the earliest.

3        Moreover, the Thomson Defendants' argument that Tech Data cannot rely upon the

4    Department of Justice's ongoing investigation into price-fixing in the CRT industry to toll its

5    claim is entirely unfounded.   Thus, the Court's previous rulings on plaintiffs' fraudulent

6    concealment allegations coupled with the tolling effect of the government investigation, brings

7    Tech Data's Sherman Act claim against Thomson well within the Sherman Act's four year

8    statute of limitations.

9    **A.    The Thomson Defendants' Fraudulent Concealment Argument Is A Red Herring**

10

11       The Thomson Defendants make two arguments in respect of fraudulent concealment:

12   (i) that the relevant date for the Court's inquiry is July 2005 when Thomson sold its CRT

13   business to alleged co-conspirator Videocon and (ii) as a general matter, Tech Data's fraudulent

14   concealment allegations are insufficient.   As explained in detail below, the Thomson Defendants

15   are wrong on both accounts.

16       According to the Thomson Defendants, the statute of limitations started running in July

17   2005 simply by virtue of Thomson's sale of its CRT business to Videocon.[8]   The July 2005 date

18   is entirely irrelevant.   So long as the conspiracy remains concealed, the limitations period

19   remains tolled as to ***all conspirators***, regardless of when their individual participation in the

20   conspiracy terminated.   *See In re Rubber Chem. Antitrust Litig.*, 504 F. Supp. 2d 777, 789-90

21   (N.D. Cal. 2007) (holding that the statute of limitations began to run for claims against a

22   defendant as of the date the conspiracy was actually disclosed, not the date of the defendant's

23   withdrawal from the conspiracy).   The Thomson Defendants cannot escape liability for

24

25

26

27

_____

28   [8] Even this contention is wrong.  Tech Data alleges that the Thomson Defendants never withdrew from the conspiracy.  FAC ¶ 159.

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1   participating in a conspiracy that they fraudulently concealed merely by withdrawing from the

2   conspiracy before it was made public.[9]

3   As such, the applicable date for the Court to consider is November 2007, after the

4   Department of Justice revealed its investigation into the CRT price-fixing conspiracy.

5   Both the former Special Master and the Court determined that the statute of limitations on

6   plaintiffs' claims did not begin running until sometime after November 14, 2007.   Special

7   Master's Report and Recommendations Regarding Defendants' Motions to Dismiss Direct

8   Action Complaints, Dkt. No. 1664, at 6-7 (the "DAP R&R"); Order Adopting in Part and

9   Modifying in Part Special Master's Report and Recommendation on Defendants' Motion to

10  Dismiss the Direct Action Plaintiffs' Complaints, Dkt. No. 1856, at 8 (the "DAP Order").

11  Special Master Legge and the Court also found that the DAP's allegations that they could not

12  have reasonably discovered the facts supporting their cause of action within the applicable

13  limitations period were sufficient.   *Id.* ("The Court does not find Defendants' arguments

14  persuasive.   They remain reliant on disputed facts.   The Court therefore finds the Special

15  Master's conclusions correct and ADOPTS them.")

16  Tech Data's fraudulent concealment allegations mirror the allegations contained in the

17  complaints that were the subject of the DAP Order and are perfectly in line with this Court's

18  ruling, which is equally applicable to the Thomson Defendants.   In addition to having alleged the

19  Thomson Defendants' direct participation in Defendants' fraudulent concealment, Tech Data

20  also set forth detailed allegations of fraudulent concealment by other conspirators that can be

21  imputed to the Thomson Defendants.   *See id.* ¶¶ 224-235.   The law is clear that steps taken by

22  the Thomson Defendants' co-conspirators to conceal the price-fixing conspiracy can be imputed

23  to the Thomson Defendants.   *See Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1493 (D.C. Cir.

24  1989); *see also Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*, 620 F.2d 1360, 1367 (9th

25  Cir. 1980); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 538 (6th Cir. 2008).   In pleading

26

27  [9] In any event, this Court has already rejected similar arguments as to withdrawal, commenting
    that self-serving suggestions that defendants "withdrew from the alleged conspiracy . . . raise[]
28  factual questions inappropriate for resolution at the motion-to-dismiss stage."   *In re CRT*, 738 F.
    Supp. 2d at 1025.

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

fraudulent concealment of a global conspiracy involving numerous defendants, detailed defendant-by-defendant allegations are not required.  As the former Special Master previously held:

> Defendants' motions emphasizes that plaintiffs have not alleged fraudulent concealment on a defendant-by-defendant basis. . . .
>
> It is one thing to compel the plaintiffs to plead that each defendant is a part of the conspiracy. It is another to require the plaintiffs to plead facts as to what each defendant did within the conspiracy, including concealment. And indeed, such a requirement would be contrary to a general principle of conspiracy law that once a party becomes a member of a conspiracy he is bound by all of the acts of the other conspirators. . . .  [A]pplication of the pleading requirements for fraudulent concealment must recognize that by their very nature the acts of fraudulent concealment would not be readily apparent to even a diligent investigation by plaintiffs, and particularly not in the details of which defendants did what in order to conceal.

*In re CRT Antitrust Litig. (Crago)*, No. 07-5944, 2010 WL 9543295, at *10 (N.D. Cal. Feb. 5, 2010), *R&R adopted by* 738 F. Supp. 2d 1011.  The only Ninth Circuit case that the Thomson Defendants cite to the contrary did not involve a conspiracy or co-conspirator imputation.  *See* Thomson SA Motion at 16 (citing *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995)).  Therefore, Tech Data's Sherman Act claim was tolled by the doctrine of fraudulent concealment until at least November 2007.

> **B.    Government Action Tolled Tech Data's Sherman Act Claims From February 2009 Until The Filing Of The FAC**

The limitations period for Tech Data's claims was tolled starting in February 2009 because of actions instituted by the United States Department of Justice relating to the CRT conspiracy.[10]  By statute,

> [w]henever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws . . . the running of the statute of limitations in respect to every private or State right of action

---

[10]  The Thomson Defendants argue that both Tech Data's Sherman Act and State law claims are untimely.  Tech Data acknowledges that with respect to the Thomson Defendants, there is no tolling doctrine that brings its California and Florida state law claims within the applicable statues of limitations.

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1   arising under said laws and based in whole or in part on any matter complained of
2   in said proceeding shall be suspended during the pendency thereof and for one
    year thereafter . . . ."

3

4   15 U.S.C. § 16(i).   As such, Tech Data's four-year limitations period against the Thomson

5   Defendants was tolled on February 10, 2009 and remains tolled through the filing of the FAC.

6       On February 10, 2009, a federal grand jury indicted C.Y. Lin of Chunghwa for his

7   involvement in conspiracies fixing the prices of CDTs and CPTs.   *See* FAC ¶¶ 8, 180.   The

8   indictment, as described in a DOJ press release, charges that C.Y. Lin conspired with others "to

9   fix the prices of two types of CRTs used in computer monitors and televisions."   *Id.*   The DOJ

10  subsequently indicted five other Korean and Taiwanese executives who participated in the

11  conspiracy.   *Id.* at ¶¶ 181-183.   The Government investigation remains open.

12      Tolling pursuant to Section 16(i) commenced when the first indictment issued, and Tech

13  Data's claims will remain tolled throughout the pendency of the government actions.   *See*

14  *Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 868 (9th Cir. 1978).   Accordingly, since

15  grand juries began indicting CRT executives in 2009, the limitations period for Tech Data's

16  claims against the Thomson Defendants has been tolled since that time.

17      The Thomson Defendants' argument to the contrary has no merit.   The Thomson

18  Defendants argue that tolling would not serve the purposes of 15 U.S.C. § 16(i) because the

19  government's case against the criminal defendants has not progressed.   Thomson Consumer's

20  Motion at 15-16.   Tellingly, The Thomson Defendants cite no legal authority to support its

21  contention that § 16(i) does not apply until some point after indictment.   The law is clear that

22  application of § 16(i) does not depend on the success of the government's case or on the

23  government's prosecutorial decisions. *See Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, (9th

24  Cir. 1983); *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 885 F. Supp. 2d 617, 628-29 (S.D.N.Y.

25  2012).   By asserting that the Court should draw the line at arraignment or at a certain number of

26

27

28

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

years of fugitive status, Thomson SA is asking the Court to engage in the case-by-case process that *Dungan* rightly rejected. [11]

Consequently, less than 14 months had run on the state of limitations for Tech Data's Sherman Act claim when it filed the FAC.  Tech Data's Sherman Act claim against Thomson is therefore timely and Thomson's arguments with respect to the statute of limitations on this claim should be rejected in their entirety.

## V.   THE DOCTRINE OF LACHES DOES NOT BAR TECH DATA'S CLAIMS

The Thomson Defendants' argument that laches bars Tech Data's claims is also meritless.  "Laches is an equitable time limitation on a party's right to bring suit."  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).  To prevail on a laches defense, a defendant must show (1) the plaintiff unreasonably delayed filing suit, (2) which caused prejudice to the defendant.  *Id.*  The Thomson Defendants cannot establish either element.

As a threshold matter, meeting the standard for a laches defense in a motion to dismiss is a virtually insurmountable task.  Your Honor recognized this high barrier in *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819 SC, 2011 WL 5244716 (N.D. Cal., Nov. 3, 2011) (J. Conti):

> In their Motion, Defendants ask the Court to make factual determinations concerning when Plaintiff knew or should have known about the alleged infringement, Plaintiff's diligence in enforcing its rights, and the prejudice to Defendants caused by Plaintiff's alleged delay…. [E]ven if the Court were to take notice of the facts set forth in the parties' requests for judicial notice, it is premature to determine whether such evidence is sufficient to raise a genuine issue of material fact, let alone weigh that evidence.

> Accordingly, the Court finds that a determination on the adequacy of Defendants' laches defense … requires findings of fact and is inappropriate for resolution on a motion to dismiss.

---

[11]  It is unclear from the Motion whether the Thomson Defendants also contend that the government investigation does not apply to the Thomson Defendants.  In the event that this is, in fact, the Thomson Defendants' position, they are incorrect. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 337-38 (1971) (limitations tolled even though defendant was neither a party nor a co-conspirator in the government suit), and for a more fulsome discussion see Tech Data's Opposition to Defendants' Joint Motion to Dismiss Certain Direct Action Plaintiffs' Claims [Dkt. No. 2197].

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1   *Sensible Foods*, 2011 WL 5244716 at *4-5 (internal citations and quotations omitted).

2   Generally, laches defense cannot be resolved in a motion to dismiss, and is rarely susceptible to

3   resolution even by summary judgment.  *See, e.g., Bratton v. Bethlehem Steel Corp.*, 649 F.2d

4   658, 666-67 (9th Cir. Cal. 1980).  Moreover, as discussed below, the Thomson Defendants are

5   unable to establish either unreasonable delay or prejudice.

6   **A.      Tech Data Did Not Unreasonably Delay Bringing Suit Against The Thomson**
        **Defendants**

7

8       First, the Thomson Defendants have not shown that Tech Data unreasonably delayed in

9   filing suit.  Where, as here, Tech Data filed its case within the tolled statute of limitations period,

10  there is a "strong presumption" that the timing is reasonable and laches is inapplicable.  *See*

11  *Jarrow*, 304 F.3d at 835-36; *see also Aurora Enters v. Nat'l Broad Co.*, 688 F.2d 689, 694 (9th

12  Cir. 1982).  Importantly, where the presumption against laches applies, the party asserting laches

13  bears the burden of proof.  *See, e.g.*, *In re Katz Interactive Call Processing Patent Litig.*, 882 F.

14  Supp. 2d 1123, 1146 (C.D. Cal. 2010).  As this Court has previously held, a finding of laches

15  generally requires "factual determinations concerning when Plaintiff knew or should have known

16  about the alleged infringement, [and] Plaintiff's diligence in enforcing its rights."  *Sensible*

17  *Foods,* 2011 WL 5244716 at *5.  Such factual determinations are inappropriate on a motion to

18  dismiss, and even more so in light of the Thomson Defendants' failure to provide <u>any</u> evidence

19  of Tech Data's lack of diligence.

20  **B.      The Thomson Defendants Make No Showing Of Evidentiary Or**
        **Expectations-Based Prejudice**

21

22      Similarly, the Thomson Defendants make only conclusory allegations of prejudice.  For

23  laches purposes, the Ninth Circuit recognizes two forms of prejudice: evidentiary and

24  expectations-based prejudice.  *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221,

25  1227 (9th Cir. 2012).  "Evidentiary prejudice includes such things as lost, stale, or degraded

26  evidence, or witnesses whose memories have faded, or who have died."  *Id.* (quoting *Danjaq*

27  *LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001)).  A defendant suffers expectations-based

28

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

prejudice where it "took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly." *Id.*

   1. <u>Thomson SA has not established evidentiary prejudice.</u>

  Thomson SA cites to *McCune v. F. Alioto Fish Co.*, 597 F.2d 1244, 1250 (9th Cir. 1979), for the proposition that faded memories and the degradation of evidence support a finding of evidentiary prejudice.  While this proposition is correct, the party asserting laches nonetheless has the burden of demonstrating "that it has suffered prejudice as a result of the plaintiff's unreasonable delay in filing suit." *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1108 (9th Cir 2006).  In *McCune*, the defendants pointed to specific evidence that had degraded as a result of the plaintiff's unreasonable delay.  *See McCune*, 465 F.3d at 1249-50 (finding prejudice because an eyewitness had died).  Here, by contrast, the Thomson Defendants fail to set forth a single piece of evidence that degraded, or name a single witness that would be unavailable, as a result of Tech Data's purported delay in filing suit.  *See* Thomson Consumer's Motion at 11-12.  Such bald assertions are insufficient to establish evidentiary prejudice. *See In re Beaty*, 306 F.3d 914, 928 (9th Cir. 2002).[12]

   2. <u>Thomson SA has not suffered expectations-based prejudice.</u>

  In the Ninth Circuit, expectations-based prejudice "requires at least some reliance [by the defendant] on the absence of a lawsuit." *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 990 (9th Cir. 2010); *see also Univ. of Pittsburgh v. Champion Prods. Inc.*, 686 F.2d 1040, 1045 (3d Cir. 1982).  The Thomson Defendants argue that they will be prejudiced because substantial discovery has already taken place in the pending CRT litigation.  Thomson Consumer Motion at 12.  The Thomson Defendants, however, fail to provide any explanation whatsoever of what that supposed prejudice is.  To the extent Thomson believes it will be disadvantaged by proceeding on the current schedule set by the Court, and the

---

[12] Thomson SA complains that "evidence degraded, memories faded, and information and personnel involved in Thomson SA's CRT operations . . . became even more difficult, if not impossible to locate." Thomson SA Motion at 14.  Notably, no specific witnesses or documents are identified.  But this is beside the point.  The Thomson Defendants have not explained why the situation would have been any different had Tech Data sued in 2007 when the conspiracy first became known, such that it is Tech Data's "unjustified delay" that is causing any such harm.

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1    Court agrees, Tech Data has no objection to the Thomson Defendants being placed on a separate

2    scheduling track.

3         Therefore, because the Thomson Defendants are unable to show either an unreasonable

4    delay or prejudice, this Court should find that laches does not bar the DAPs' claims.

5    **VI.    TECH DATA HAS ADEQUATELY ALLEGED ANTITRUST STANDING**

6         As an initial matter, this Court has already ruled that the DAPs have standing to proceed

7    with their federal claims under the ownership or control exception to *Illinois Brick Co. v. Illinois,*

8    431 U.S. 720 (1977).  The Court has twice rejected Defendants' arguments to the contrary.  Dkt.

9    No. 1856 at 5 (denying Defendants' Joint Motion to Dismiss based upon standing "to the extent

10   that [the MTD] challenges the DAPs' right to proceed under the ownership or control

11   exception"); Dkt. No. 1470 at 16 ("The named DPPs are indirect purchasers, but, under *Royal*

12   *Printing*, they have standing to sue insofar as they purchased [finished products] incorporating

13   the allegedly price-fixed CRTs from an entity owned or controlled by any allegedly conspiring

14   defendant.").  The DAPs' standing has already been established in this case, and Thomson SA

15   gives no reason to disturb the Court's duly and repeatedly considered judgment.

16        Moreover, the Thomson Defendants' Motions should be denied because Tech Data's

17   allegations are sufficient under Rule 8's notice pleading requirements.  Tech Data has pled that it

18   "purchased CRT Products directly from the Defendants, and/or the Defendants' subsidiaries and

19   affiliates and/or any agents the Defendants or Defendants' subsidiaries and affiliates controlled"

20   and that it was injured when it paid prices for these and other purchases that were higher than

21   they would have been absent the conspiracy.  *See* FAC ¶ 19.  These allegations are more than

22   sufficient to put the Thomson Defendants on notice that Tech Data is making claims based upon

23   the ownership or control exception to *Illinois Brick*.

24        Indeed, the Thomson Defendants' argument that Tech Data must identify the initial

25   sellers of CRTs and allege that those sellers have an ownership or control relationship with the

26   entities from which they bought CRT Products has already been rejected in other cases before

27   this Court.  *See In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*, No. 07-1827, 2012 WL

28

1    5949585, at *3 (N.D. Cal. Nov. 28, 2012); *In re TFT-LCD (Flat Panel) Antitrust Litig. (Best*

2    *Buy)*, No. 07-1827, 2013 WL 254873, at *3-4 (N.D. Cal. Jan. 23, 2013).

3         The Thomson Defendants rely on another decision from the *TFT-LCD Antitrust*

4    *Litigation* in an attempt to support its argument, (Thomson SA's Motion at 22 (citing *In re TFT-*

5    *LCD (Flat Panel) Antitrust Litig. (Proview)*, No. 07-1827, 2013 WL 1164897 (N.D. Cal. Mar.

6    20, 2013))), but that decision is entirely inapposite.  In the *Proview* case, the plaintiff sought to

7    recover for purchases it made from OEMs that it owned and controlled itself. *Id.* at *3.

8    Therefore, in order to satisfy *Illinois Brick*, Judge Illston ruled that the plaintiff had to

9    specifically plead that it owned or controlled the OEMs.  *Id.*  Here, by contrast, it is the

10   Defendants who own and control the entities from which Tech Data made purchases, and thus it

11   is Defendants that are in possession of information to prove the ownership relationships of these

12   entities.  Accordingly, Tech Data is not required to plead this information, and the Thomson

13   Defendants' standing argument should be rejected.[13]

14   **VII.   THE COURT SHOULD DEEM THE FAC SERVED ON THE THOMSON
         DEFENDANTS' COUNSEL**

15

16        To date, the Thomson Defendants have refused to accept service of Tech Data's

17   complaint.  This Court has previously held it is appropriate to serve foreign defendants through

18   their United States counsel.  *See* Report and Recommendation Regarding Motions For Service

19   of Process on Certain Defendants [Dkt. No. 1241] ; see also Order Granting Indirect Purchaser

20   Plaintiffs' Motion to Authorize Service on Certain Foreign Defendants Pursuant to Federal Rule

21   of Civil Procedure 4(F)(3) [Dkt. No. 374].  Therefore, the Court should enter an order deeming

22   the FAC served upon the Thomson Defendants through their United States counsel.

23                              **CONCLUSION**

24        The Thomson Defendants' contention that Tech Data failed to comply with the

25   requirements of the Federal Rules when filing its FAC is contradicted by the Rules themselves

26   _____

27   [13] Nevertheless, if the Court determines that additional details are required concerning Tech
     Data's purchases of CRT Products, Tech Data requests leave to amend its complaint to add such
28   details.

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1   and relevant case law.  The Court, therefore, should deny the Thomson Defendants' Motions to

2   Strike in their entirety.

3          Additionally, Thomson SA does not provide any viable argument for why Tech Data is

4   not entitled to take the jurisdictional discovery that the Court already ruled Sharp is entitled to.

5          Finally, the Thomson Defendants have not presented a colorable argument supporting

6   their contention that Tech Data's Sherman Act claim should be dismissed.  And, if the Court

7   should find Tech Data's allegations as to Thomson insufficient, Tech Data should have the

8   opportunity to amend its complaint to add allegations based on the facts discovered since the

9   filing of the FAC.

10          For these reasons and those discussed above, Tech Data respectfully requests the Court

11   enter an order: (i) denying the Thomson Defendants' Motions to Strike; (ii) denying Thomson

12   SA's Motion to Dismiss on jurisdictional grounds and granting Tech Data leave to take

13   jurisdictional discovery; (iii) denying the Thomson Defendants' Motions to Dismiss Tech Data's

14   Sherman Act claims; and (iv) deeming the Thomson Defendants served with the FAC through

15   service on their United States counsel.

16   Dated: February 27, 2014.

17                                          Respectfully Submitted,

18                                           /s/Scott N. Wagner
                                            ROBERT W. TURKEN
19                                          SCOTT N. WAGNER
                                            MITCHELL E. WIDOM
20                                          BILZIN SUMBERG BAENA PRICE &
                                            AXELROD LLP
21                                          1450 Brickell Ave., Suite 2300
                                            Miami, Florida 33131-3456
22                                          Telephone:  (305) 374-7580
                                            Facsimile:  (305) 374-7593
23                                          E-mail:        rturken@bilzin.com
                                                           swagner@bilzin.com
24                                                         mwidom@bilzin.com

25

26

27

28

STUART H. SINGER
BOIES, SCHILLER, & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone:      (954) 356-0011
Facsimile:      (954) 356-0022
E-mail:         ssinger@bsfllp.com

WILLIAM A. ISAACSON
MELISSA WILLETT
BOIES, SCHILLER & FLEXNER
5301 Wisconsin Ave. NW, Suite 800
Washington, DC 20015
Telephone:  (202) 237-2727
Facsimile:  (202) 237-6131
E-mail:         wisaacson@bsfllp.com
                mwillett@bsfllp.com

PHILIP J. IOVIENO
BOIES, SCHILLER & FLEXNER
10 North Pearl Street, 4th Floor
Albany, NY 12207
Telephone:      (518) 434-0600
Facsimile:      (518) 434-0665
E-mail:         piovieno@bsfllp.com

*Counsel for Plaintiffs Tech
Data Corporation and Tech Data Product
Management, Inc.*

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

1

## **CERTIFICATE OF SERVICE**

2

3       The undersigned counsel hereby certifies that a true and correct copy of the foregoing

4   document was electronically served upon the parties and counsel of record through the Court's

5   ECF system on February 27, 2014.

6                                               /s/Scott N. Wagner
                                                Scott N. Wagner
7                                               *Attorney for Plaintiffs*
                                                *Tech Data Corporation and*
8                                               *Tech Data Product Management, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131-3456

4052630.V8