GUIDO SAVERI (22349)
  *guido@saveri.com*
R. ALEXANDER SAVERI (173102)
  *rick@saveri.com*
GEOFFREY C. RUSHING (126910)
  *grushing@saveri.com*
CADIO ZIRPOLI (179108)
  *cadio@saveri.com*
TRAVIS L. MANFREDI (281779)
  *travis@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111-5619
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Interim Lead Counsel for
Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-5944-SC<br><br>MDL No. 1917 |
| This Document Relates To:<br><br>DIRECT PURCHASER CLASS ACTIONS | **DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO OPT-IN PLAINTIFFS' MOTION TO WITHDRAW REQUESTS FOR EXCLUSION FROM THE SETTLEMENT CLASSES AND TO JOIN THE CLASS SETTLEMENTS**<br><br>Judge: Honorable Samuel Conti<br>Date:  April 4, 2014<br>Time:  10:00 a.m.<br>Ctrm:  1, 17th floor |

**I.   INTRODUCTION**

The Direct Purchaser Class Plaintiffs ("DPPs") submit this opposition to the Opt-in Plaintiffs' Motion to Withdraw Requests for Exclusion from the Settlement Classes and to Join the Class Settlements (Dkt. No. 2403) ("Motion"), filed on behalf of Unisys Corporation, ("Unisys"), and ViewSonic Corporation ("ViewSonic") (collectively "Movants").[1]

Movants, through their experienced counsel and pursuant to this Court's orders, have requested exclusion from the five settlement classes this Court has certified in connection with its final approval of the five previous settlements herein. In each instance, the Court has entered a judgment providing that such opt-out plaintiffs are "not entitled to any recovery of the settlement proceeds obtained through this judgment." *See, e.g.*, Final Judgment of Dismissal with Prejudice as to Defendants Toshiba Corporation, Toshiba Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. ¶ 5 (Dkt. No. 1792) (July 23, 2013); *see also* Dkt Nos. 1413, 1414, 1509, 1622. While they fail to cite Federal Rule of Civil Procedure 60 which governs such motions, Movants effectively ask the Court to amend its judgments so that they may claim against the settlement proceeds. In addition, Movants have not provided any details of their likely claims. It appears, however, that they are substantial—*i.e.*, in excess of $1 billion—and would materially reduce the recoveries of existing class members.

The Court should deny this motion because Movants have not met the requirements of Federal Rule of Civil Procedure 60. Movants do not even attempt to meet the requirements of the Rule. They do not claim that their opt-outs were mistaken, the result of excusable neglect, or even that they have discovered new evidence. They identify no unfairness or inequity associated with their opt-out. To the contrary, it is clear that their requests for exclusion were the carefully considered actions of sophisticated parties taken upon the advice of sophisticated and experienced counsel and in the expectation of obtaining a greater recovery outside the class proceeding. The sole basis for their instant request is simply that they have "determined that the class settlements

---

[1] Unisys and ViewSonic also move on behalf of their affiliates and predecessors.

1

achieved by direct and indirect class counsel are fair and reasonable." Motion at 3. In other words, they changed their minds.

Moreover, granting this motion will harm current class members. Not only will Movants' claims materially dilute the recoveries of class members, other opt-outs may also seek similar relief, which would further reduce class members' recoveries. Finally, the rule advocated by Movants—that their requests for exclusion and the Court's prior orders and judgments are essentially meaningless—would encourage sophisticated entities like Movants to game the system, and thereby needlessly increase rather than reduce litigation.

## II.   BACKGROUND

This Court has finally approved five settlements with five defendant groups totaling more than $79 million:

(1)   Defendant Chunghwa Picture Tube, Ltd. ("CPT") and affiliates for $10 million (Dkt. No. 1179 (preliminary approval); Dkt. No. 1412 (final approval October 19, 2012); Dkt. No. 1414 (judgment));

(2)   Defendant Koninklijke Philips Electronics, N.V. and affiliates ("Philips") for $15 million (after opt-out reduction) (Dkt. No. 1179 (preliminary approval); Dkt. No. 1412 (final approval October 19, 2012); Dkt. No. 1413 (judgment));

(3)   Defendant Panasonic Corporation and affiliates ("Panasonic") for $17,500,000, (Dkt. No. 1333 (preliminary approval); Dkt. No. 1508 (final approval December 27, 2012); Dkt. No. 1509 (judgment));

(4)   Defendant LG Electronics, Ltd. and affiliates ("LG") for $25,000,000 (Dkt. No. 1441 (preliminary approval); Dkt. No. 1621 (final approval April 1, 2013); Dkt. No. 1622 (judgment)); and

(5)   Defendant Toshiba Corporation and affiliates ("Toshiba") for $13,500,000 (Dkt. No. 1603 (preliminary approval); Dkt. No. 1791 (final approval July 23, 2013); Dkt. No. 1792 (judgment)).

The preliminary approval orders for each of these settlements tentatively certified a settlement class, provided for notice to the class members, and established a schedule for final approval, including, among other things a procedure for class members to object to the settlements or to exclude themselves from the class. For example, the Panasonic preliminary approval order provided that "[e]ach class member shall have the right to be excluded from the settlement class by mailing a request for exclusion to the Claims Administrator no later than a date set at least forty-five (45) days after mailing of the direct notice." Dkt. No. 1280, ¶ 11. The order required that a list of

1  opt-outs be filed with the Court. *Id.* It also provided that a class member who does not properly

2  request exclusion from the class would be bound by the terms of the settlement. *Id.* ¶ 12.

3  The Court approved notices to be mailed to class members and published. They described

4  each settlement, the procedure for exclusion from the class, and the consequences of such exclusion.

5  For example, the notice of the CPT and Philips settlements mailed to class members provided:

> **Get out of the Settlement Class:** If you wish to keep any of your rights to sue the Settling Defendants about the claims in this[] case[,] you must exclude yourself from the Settlement Class. You will not get any money from either of the settlements if you exclude yourself from the Settlement Class.

*See* Dkt. No. 1179, Exhibit A at p. 6 (CPT and Philips); *see also* Dkt. No. 1333-1 at p. 6

(Panasonic); Dkt. No. 1441, Exhibit A at p. 6 (LG); Dkt. No. 1603-1, Exhibit A at p. 6 (Toshiba).

Movants excluded themselves from each settlement. Motion at 3 n.1; Declaration of

Deborah E. Arabi, Ex. A. ViewSonic has previously excluded itself from classes in antitrust cases

such as this and pursued its own remedies. ViewSonic excluded itself from the settlements and

litigated classes in the *LCD* litigation. Declaration of R. Alexander Saveri ("Saveri Decl.") ¶ 2 &

Ex. 1.

In addition to orders of final approval, the Court entered a final judgment on each settlement

pursuant to Federal Rules of Civil Procedure 54(a) and (b). Dkt. No. 1412, ¶ 14 (CPT and Philips);

Dkt. No. 1508, ¶ 14 (Panasonic); Dkt. No. 1621, ¶ 14 (LG); Dkt. No. 1791, ¶ 14 (Toshiba). Each

Judgment expressly provided that excluded class members could not share in settlement proceeds.

For example, the Toshiba judgment states:

> The persons/entities identified on Exhibit C to the Declaration of Markham Sherwood in Support of Motion for Final Approval of Class Action Settlements filed on July 1, 2013, have timely and validly requested exclusion from the Class and, therefore, are excluded. Such persons/entities are not included in or bound by this Final Judgment. Such persons/entities are not entitled to any recovery of the settlement proceeds obtained through this settlement.

Dkt. No. 1792, ¶ 5.

There can be no doubt that Movants fully understood the class settlement process

and the consequences of their actions. Neither Movant has filed a complaint based on the

alleged CRT conspiracy.

3

## III. ARGUMENT

### A. The Opt-Out Plaintiffs Fail to Satisfy Federal Rule of Civil Procedure 60 as Required to Modify the Final Judgments Entered with Respect to the CPT, Philips, Panasonic, LG, and Toshiba Settlements.

As noted, the judgments entered by this Court preclude any recovery by Movants from the settlements. The relief Movants seek therefore requires the Court to modify these judgments. Federal Rule of Civil Procedure 60 strictly limits the circumstances in which a judgment may be modified. Subsection (b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Movants do not mention Rule 60. For this reason alone, the Court should deny their motion. In any event, it is plain that they do not satisfy grounds (1) through (5). Again, they do not assert that their exclusion requests were filed in error.

It is also plain that Movants cannot succeed under Federal Rule of Civil Procedure 60(b)(6). The Ninth Circuit has explained that this section is rarely satisfied:

> The Rule 60(b)(6) "catch-all" provision, on which appellants rely, applies only when the reason for granting relief is not covered by any of the other reasons set forth in Rule 60. *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 n.8 (9th Cir. 2002). "Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice" and "is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993). A party seeking to re-open a case under Rule 60(b)(6) "must demonstrate both injury and

circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion." *Cmty. Dental*, 282 F.3d at 1168.

*Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007). *See also Cook v. Ryan*, 688 F.3d 598, 608–09 (9th Cir. 2012); *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008). It is beyond argument that Movants have no basis to assert that this case involves manifest injustice or an erroneous judgment, much less that circumstances beyond their control compelled the filing of their exclusion requests.

None of the cases cited by Movants suggest a different rule; all are from different jurisdictions and distinguishable on other grounds as well. In *Zients v. LaMorte*, 459 F.2d 628, 629 (2d Cir. 1972), relied upon by Movants for the proposition that "the Court retains its equitable powers when settlement funds have not yet been distributed" (Motion, p. 4:3-4), the court held that class members who "concededly failed to receive any notice of the institution of the class action or notice of hearing on the settlement" were entitled to make untimely claims. *Zients*, 459 F.2d at 629. *Zients* did not involve the modification of a judgment under Rule 60 or the withdrawal of a request for exclusion.

*In re Orthopedic Bone Screw Prods. Liability Litig.*, 246 F.3d 315 (3d Cir. 2001), is also completely inapposite. Again, it did not involve a party who had excluded itself from the class or Rule 60. It involved a member of a mandatory class whose claim was late filed because he had not received notice of the settlement. *Id.* at 316. Among many other things, the court refused "to find [the claimant] culpable for his failure to note a small advertisement run once on page 50 of a newspaper he does not receive." *Id.* at 327.

While courts do grant motions to revoke requests for exclusion in some circumstances, Movants' assertion that "[c]ourts have consistently used their equitable powers to permit parties to withdraw requests to opt out of class actions" (Motion, p. 4:4–5) is misleading in the context of this case. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 237 F.R.D. 541, 544–45 (S.D.N.Y. 2006) (denying request to withdraw opt-out request); *In re Hydrogen Peroxide Antitrust Litig.*, No. 05-cv-00666 SD, Dkt. No. 560, at *5 (E.D. Pa. May 29, 2009) ("*Hydrogen Peroxide*") (attached as Exhibit 1 to the Declaration of Geoffrey C. Rushing) (same). The cases Movants cite in support of this assertion all involve substantially different factual situations. In all but one, the court did not apply Rule 60.

1  Thus, in *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 394, 397 (D.N.J. 2006), the
2  class member did not request a modification of a final judgment under Rule 60. Instead, the
3  withdrawal of the notice of exclusion was negotiated with class counsel and defendants ***before final***
4  ***approval*** in order to preserve the settlements. *Id.*

5  Similarly, *In re "Agent Orange" Prod. Liability Litig.*, 689 F. Supp. 1250, 1263, 1261
6  (E.D.N.Y. 1998), was a mass tort case involving veterans exposed to Agent Orange. Among other
7  things, the court did not address Rule 60 and stressed that the claims involved were "*de minimis*" in
8  relation to the total number of claims. *Id.* at 1263. The court also noted that it "has previously
9  indicated that it would consider sympathetically the numerous late applications to rejoin the class
10 received after settlement and after the fairness hearings." *Id.* at 1261.

11 In *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2008 WL 5215980, at *1 (D. Kan.
12 Dec. 12, 2008), class counsel did not oppose the withdrawal of the request for exclusion and the
13 court did not apply Rule 60.

14 While the District Court in *In re Electric Weld Steel Tubing Antitrust Litig.*, N. 81-4737,
15 1982 WL 1873 (E.D. Pa. 1982), considered Rule 60, this case also does not help Movants because
16 the court's analysis is contrary to *Delay v. Gordon*, 475 F.3d 1039, 1044 as discussed above.

17 For these reasons, it is plain that Movants have not and cannot satisfy the requirements of
18 Rule 60. Their motion must therefore be denied.

19 **B. Equity Does Not Favor the Movants**

20 Movants' argument also fails on its own terms. The equities here do not favor the granting
21 of their motion. Movants offer no basis for a conclusion that their exclusion from the class is an
22 injustice. It is also plain that class members would be prejudiced by allowing the withdrawal of their
23 requests for exclusion.

24 First, as noted, Movants present no facts or argument establishing any unfairness to them.
25 On this record, it is plain that their repeated requests for exclusion were the carefully considered
26 actions of sophisticated entities. Movants acted on the advice of experienced counsel. It appears,
27 moreover, that they did so in the expectation of achieving a more advantageous result than if they
28 stayed in the settlement classes.

1         Second, contrary to Movants' assertion, if the Court allows the withdrawal of their requests for exclusion, the value of the present class members' claims will be materially diminished. Movants' assertion that granting their request will not "result in significantly smaller settlement payments to class members" (Motion, p. 5:22) is unsupported and false. Movants provide no information about the size of their anticipated claims, but it appears that they are very large. Counsel would not quantify ViewSonic's claim, but confirmed DPPs' understanding that it could exceed one billion dollars. Rushing Decl. ¶ 2. Counsel for Unisys stated that his client had approximately $100 million in purchases of finished products. *Id.* ¶ 3. There can be no question that allowing these claims would materially diminish class members' recoveries.[2] Moreover, their recoveries would be even more diminished if other opt-outs seek to withdraw their requests for exclusion based on a ruling in favor of Movants. *See Hydrogen Peroxide*, No. 05-cv-00666 SD, Dkt. No. 560, at *4–5 ("Class plaintiffs also note that if we grant Chem-Way's motion, class members who declined to opt out would receive less than they would as the class now stands, and this concern could balloon if others who have opted out seek to rejoin the class now that it has achieved significant settlements").

        Third, Movants' assertion that class members will receive a "windfall" if this motion is denied is also incorrect. The amount of commerce accounted for by expected requests for exclusion—or, stated another way, the amount of commerce that will remain in the class after opt-outs—is a critical part of settlement negotiation, including the settlements involved here. Saveri Decl. ¶ 3. Indeed, class settlements sometimes include—as the Philips settlement did here—a provision reducing the consideration to be paid based on the amount of opt-out claims. Saveri Decl. ¶ 4. Similarly, as here, class settlements sometimes contain "blow provisions" which allow a defendant to cancel the settlement if opt-out claims substantially exceed expectations. *Id.* In other words, the amount of the settlement consideration is calibrated as closely as circumstances allow to the expected size of the class. In these circumstances, using the term "windfall"—i.e., "a sudden or

---

[2] DPPs do not concede that any claim made by Movants will be valid. Such a determination cannot be made with regard to any claim until it is made and the basis for it examined.

unexpected piece of good fortune or personal gain"[3]—to characterize class members' recoveries is simply wrong.

Further, Movants quote the "windfall" language from *In re Orthopedic Bone Screw* out of context. The preceding language from the opinion makes clear that the Court's reasoning depended on the fact that the claimant there was a member of a mandatory class with a valid claim and therefore would be bound by the release whether or not he was allowed to participate in the settlement:

> It cannot be maintained that timely registrants are more deserving of remedy, for purposes of equity, than tardy registrants with similar claims, presuming the failure to register on time was indeed blameless. By excluding Sambolin and other similarly situated late registrants from the class, the timely registrants would receive what is essentially a "windfall," comprised of some portion of the recovery that would be owed to the otherwise deserving late registrants.

246 F. 3d at 324. The equities here tilt in the opposite direction because Movants are not class members and maintain their claims against Defendants. It also cannot be said that they are "blameless" with regard to their requests for exclusion.

Fourth, Movants' argument proves too much because it would require a Court to allow class members to withdraw requests for exclusion in virtually every instance. This would render the Court's orders—as well as Movants requests for exclusion—essentially meaningless. This is contrary to the orderly conduct of complex litigation. *See e.g., In re WorldCom, Inc. Sec. Litig.*, 237 F.R.D. 541, 544 (S.D.N.Y. 2006) (denying motion to withdraw request for exclusion: "The management of a class action, particularly one as sprawling and substantial as the WorldCom class action, requires a Court to set an appropriate and clear schedule for the litigation and to enforce the deadlines to which the parties have been required to adhere."); *Hydrogen Peroxide*, No. 05-cv-00666, Dkt. No. 560, at *5 (denying motion to withdraw request for exclusion: "As the parties well know, we strongly favor the conservation of judicial resources, but we are also concerned about protecting the finality of our judgments and ensuing that <u>this</u> litigation moves forward in an orderly and efficient manner").

---

[3] American Heritage College Dictionary, 4th ed., 2007.

1      Fifth, the rule asserted by Movants would also encourage sophisticated parties (like Movants) to game the system and would cause the proliferation of unnecessary opt-out litigation by eliminating the consequences of opting out. Thus, contrary to Movants' assertions, the rule they propose will not conserve judicial resources. In any event, granting this motion will not preserve judicial resources in this case because Movants have not filed an action.

Finally, the fact that the defendants do not object to Movants' motion should be accorded no weight. Of course they do not object! The order Movants seek costs them nothing and increases the value of the releases contained in the settlements. Movants' assertion that Defendants "would be prejudiced if Opt-In Plaintiffs do not reenter the class" because they would be exposed to additional damages and litigation costs (Motion, p. 4:19-20) is preposterous in this context. Defendants have received everything to which they are entitled from the settlements. The only potential windfall from this motion is to Defendants if it is granted.

**IV.     CONCLUSION**

Movants do not and cannot satisfy the stringent standards for reopening a final judgment under Rule 60. DPPs respectfully submit that this motion should be denied.

DATED: March 6, 2014                    Respectfully submitted,

/s/ *Guido Saveri*
Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)
Travis L. Manfredi (281779)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Interim Lead Counsel for
Direct Purchaser Plaintiffs*