1

2

3

4

5

6                  IN THE UNITED STATES DISTRICT COURT

7                FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   In re: CATHODE RAY TUBE (CRT)    )   Case No. C 07-5944 SC
    ANTITRUST LITIGATION             )
10                                    )   MDL No. 1917
    This Document Relates to:        )
11                                    )   ORDER GRANTING IN PART AND
                                     )   DENYING IN PART DEFENDANTS'
    Tech Data Corp. v. Hitachi,      )   JOINT MOTION TO DISMISS
12  Ltd., No. 13-cv-00157;           )
                                     )
13  Sharp Elecs. Corp. v. Hitachi,   )
    Ltd., No. 13-cv-01173;           )
14                                    )
                                     )
15  Sharp Elecs. Corp. v.            )
    Koninklijke Philips Elecs. N.V., )
16  No. 13-cv-02776.                 )
    _____  )

17

18

19  I.    **INTRODUCTION**

20          Now before the Court is the Defendants' joint motion to

21  dismiss claims asserted in the above-captioned cases[1] by Tech Data

22  _____

23  [1] The operative pleadings were originally filed in Case No. 07-5944
    at ECF Nos. 1604-2 ("Sharp Compl."), 1741-2 ("Sharp-Philips
    Compl."), and 1911 ("Tech Data Compl.").  However, pursuant to
24  stipulation, ECF No. 2240, the Joint Motion to Dismiss as to Sharp
    is deemed to apply to Sharp's First Amended Complaint ("FAC"),
25  filed under seal at ECF No. 2030.

26  The Sharp-Philips Complaint is an outlier in this matter because it
    is subject to a separate tolling agreement between Sharp and
27  Koninklijke-Philips N.V. and its related entities (the "Philips
    Defendants").  Under that agreement, any claims based on the
    Philips Defendants' actions before April 29, 2009 are barred by
28  applicable statutes of limitations.  Per this order's analysis,

**United States District Court**
For the Northern District of California

and Sharp.[2]  The matter is fully briefed[3] and appropriate for decision without oral argument, per Civil Local Rule 7-1(b).  As explained below, the Court GRANTS in part and DENIES in part the motion.

## II.   BACKGROUND

The parties are familiar with this case's facts.  Accordingly, the Court will only summarize some of the facts that are relevant to the instant motion, which only concerns whether any of Sharp or Tech Data's claims are barred by an applicable statute of limitations, and whether any relevant tolling doctrines apply to avoid that bar.

The underlying antitrust conspiracy in this MDL -- to fix prices of cathode ray tubes ("CRTs") and products containing CRTs -- is alleged to have lasted between March 1, 1995 and December 2007 (the "Relevant Period").  The plaintiffs in all of the MDL's cases contend that Defendants kept the conspiracy secret, to avoid putting the plaintiffs (and anyone else) on notice.  But on November 8, 2007, the European Commission ("EC") issued a press release stating that its officials had raided several unnamed CRT manufacturers.  Shortly thereafter, other countries' law enforcement agencies conducted similar raids, and within a few

---

this changes little, and the parties do not discuss this point much.

[2] "Sharp" collectively includes Sharp Electronics Corporation ("SEC") and Sharp Electronics Manufacturing Company of America, Inc. ("SEMA").  Tech Data Corporation and Tech Data Product Management, Inc., are collectively called "Tech Data."

[3] Case No. 07-5944 ECF Nos. 1992 ("MTD"), 2194 ("Sharp Opp'n"), 2197 ("Tech Data Opp'n"), 2231 ("Reply").

weeks, Defendants Panasonic, Samsung SDI, and Philips all acknowledged that they were under investigation.

A major point of contention as to this motion is whether Sharp or Tech Data were parts of any of the earlier-filed class actions: the direct purchaser plaintiff ("DPPs") class, the indirect purchaser plaintiff ("IPP") class, or any of the state classes that were later subsumed by the DPP or IPP actions.  Sharp filed an individual complaint on March 15, 2013, opting out of the putative DPP class.  It filed another separate complaint against the Philips Defendants on June 17, 2013.  Both of Sharp's complaints assert claims under Section 1 of the Sherman Act, 15 U.S.C. et seq.; the California Cartwright Act, Cal. Bus. & Prof. Code § 16700 et seq.; the California UCL, Cal. Bus. & Prof. Code § 17200 et seq.; New York's Donnelly Act, N.Y. Gen. Bus. L. § 340 et seq.; the New York UCL, N.Y. Gen. Bus. L. § 349 et seq.; the New Jersey Antitrust Act, N.J. Stat. § 56:9-1 et seq.; and the Tennessee Antitrust Act, Tenn. Code Ann. § 47-25-101 et seq.

Tech Data filed its first complaint on December 11, 2012. Tech Data asserts claims under Section 1 of the Sherman Act, the Florida Deceptive and Unfair Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq., the Cartwright Act, and the California UCL.

All of Tech Data and Sharp's claims are subject to four-year statutes of limitations, except the New York UCL and the Tennessee Antitrust Act, which have three-year statutes of limitations. Defendants now jointly move to dismiss Sharp and Tech Data's claims, arguing that under no theory -- fraudulent concealment, cross-jurisdictional tolling, American Pipe tolling,[4] equitable

---

[4] So called because it is derived from the case American Pipe &

United States District Court
For the Northern District of California

1  tolling, or government tolling -- can Sharp or Tech Data avoid

2  their claims' being barred, since they bring their claims so many

3  years after the alleged conspiracy had been revealed.  Sharp's

4  claims against the Philips Defendants before April 29, 2009 are

5  time-barred under those parties' tolling agreement.  Defendants'

6  arguments address only Sharp and Tech Data's state law claims, not

7  their federal claims.

8

9  **III.  LEGAL STANDARD**

10     A motion to dismiss under Federal Rule of Civil Procedure

11  12(b)(6) "tests the legal sufficiency of a claim." Navarro v.

12  Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

13  on the lack of a cognizable legal theory or the absence of

14  sufficient facts alleged under a cognizable legal theory."

15  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

16  1988).  "When there are well-pleaded factual allegations, a court

17  should assume their veracity and then determine whether they

18  plausibly give rise to an entitlement to relief." Ashcroft v.

19  Iqbal, 556 U.S. 662, 664 (2009).  However, "the tenet that a court

20  must accept as true all of the allegations contained in a complaint

21  is inapplicable to legal conclusions.  Threadbare recitals of the

22  elements of a cause of action, supported by mere conclusory

23  statements, do not suffice." Id. at 678 (citing Bell Atl. Corp. v.

24  Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a

25  complaint must be both "sufficiently detailed to give fair notice

26  to the opposing party of the nature of the claim so that the party

27  may effectively defend against it" and "sufficiently plausible"

28  Construction Co. v. Utah, 414 U.S. 538 (1974).

1   such that "it is not unfair to require the opposing party to be

2   subjected to the expense of discovery." Starr v. Baca, 652 F.3d

3   1202, 1216 (9th Cir. 2011).

4       Claims sounding in fraud are subject to the heightened

5   pleading requirements of Federal Rule of Civil Procedure 9(b),

6   which requires that a plaintiff alleging fraud "must state with

7   particularity the circumstances constituting fraud." See Kearns v.

8   Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).  "To satisfy

9   Rule 9(b), a pleading must identify the who, what, when, where, and

10  how of the misconduct charged, as well as what is false or

11  misleading about [the purportedly fraudulent] statement, and why it

12  is false." United States ex rel Cafasso v. Gen. Dynamics C4 Sys.,

13  Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks

14  and citations omitted).

15

16  **IV.   DISCUSSION**

17       **A.   Fraudulent Concealment**

18       The doctrine of fraudulent concealment focuses on actions that

19  a defendant took to prevent a plaintiff from learning of grounds

20  for filing a suit.  See Lukovsky v. City & Cnty. of S.F., 535 F.3d

21  1044, 1051 (9th Cir. 2008).  To invoke the doctrine, plaintiffs

22  must allege facts demonstrating that they could not have discovered

23  the alleged violations by exercising reasonable diligence.

24  Rosenfeld v. JPMorgan Chase Bank N.A., 732 F. Supp. 2d 952, 964

25  (N.D. Cal. 2010); see also Hubbard v. Fid. Fed. Bank, 91 F.3d 75,

26  79 (9th Cir. 1996).  A fraudulent concealment claim must be alleged

27  with particularity under Rule 9(b).  Noll v. eBay, Inc., 282 F.R.D.

28  462, 468 (N.D. Cal. 2012).

**United States District Court**
For the Northern District of California

Defendants argue that neither Sharp nor Tech Data can plausibly allege that they had no actual or constructive knowledge of their claims as of December 11, 2008 (for Tech Data) or March 15, 2009 (for Sharp).  Defendants contend that because of the fact that litigation in this high-profile MDL had been proceeding apace, and since both Sharp and Tech Data's pleadings refer to the very public investigations of some of these Defendants, there is no plausible excuse for Tech Data or Sharp's statement that they had no knowledge of their claims' bases, absent any further facts.  See MTD at 9-12.  Further, Defendants claim that Tech Data and Sharp fail to meet their burden to plead fraudulent concealment with particularity, since their complaints do not allege any affirmative acts following the end of the alleged conspiracy period or the announcement of the government investigations.  Id. at 12-13.

The Court finds that both Tech Data and Sharp have sufficiently pled fraudulent concealment until November 14, 2007, the latest date this Court has held to provide actual or inquiry notice to the DAPs.  See In re Cathode Ray Tube (CRT) Antitrust Litig., No. C-07-5944, 2013 WL 4505701, at *3 (N.D. Cal. Aug. 21, 2013).  This renders their claims time-barred unless they are able to invoke a tolling doctrine or some equivalent.

### i.   **American Pipe Tolling**

American Pipe held that commencement of a class action suspends the statute of limitation as to all putative members of the class up to and until class certification is denied or the plaintiff opts out of the class.  414 U.S. at 554; Williams v. Boeing Co., 517 F.3d 1120, 1136 (9th Cir. 2008); Emp'rs-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors,

**United States District Court**
For the Northern District of California

1   498 F.3d 920, 925 (9th Cir. 2007).  "Tolling is fair in such a case

2   because when the complaint is filed defendants have notice of the

3   'substantive claims being brought against them.'"  Williams, 517

4   F.3d at 1136 (quoting Crown, Cork & Seal Co. v. Parker, 462 U.S.

5   345, 352-53 (1983)).  "However, the tolling rule does not 'leave[]

6   a plaintiff free to raise different or peripheral claims following

7   denial of class status.'"  Id. at 1136 (quoting Crown, 462 U.S. at

8   354 (Powell, J. concurring)) (alterations in original).

9       The parties first dispute whether Crown limits the rule of

10  American Pipe in a way that would toll only later-filed claims that

11  are identical to those asserted in the earlier-filed class actions,

12  as opposed to tolling new claims asserted by putative class

13  members.  Tech Data Opp'n at 5; Sharp Opp'n at 13.  Sharp and Tech

14  Data contend that it is the substantive similarity of the claim

15  that matters for American Pipe tolling, not their actual identity.

16  Id.  Defendants claim that the causes of action asserted in the

17  arguably tolled complaints have to be identical to those from the

18  class action complaints in order for American Pipe to apply.  Reply

19  at 4-5.

20      The Court finds for Defendants on this point.  Justice

21  Powell's concurrence from Crown indicates that while courts should

22  permit tolling when a lawsuit raises claims that "concern the same

23  evidence, memories, and witnesses as the subject matter of the

24  original class suit," it is still important to "make certain . . .

25  that American Pipe is not abused by the assertion of claims that

26  differ from those raised in the original class suit."  462 U.S. at

27  354; see also In re TFT-LCD (Flat Panel) Antitrust Litig., No. M

28  07-1827 SI, C 12-4114 SI, 2013 WL 254873, at *2 & n.3 (N.D. Cal.

1    Jan. 13, 2013) (declining to apply American Pipe to state law

2    claims not asserted in the original class complaint); accord In re

3    Copper Antitrust Litig., 436 F.3d 782, 793-97 (7th Cir. 2006)

4    (same).

5         This holding comports with other post-American Pipe rulings,

6    such as Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 467

7    (1975), in which the Supreme Court held that American Pipe tolling

8    did not apply to a later-filed claim that was not identical to the

9    earlier-filed class claims.  The Court stated: "Finally, and

10   perhaps most importantly, the tolling effect given to the timely

11   prior filings in American Pipe and [Burnett v. N.Y. Cent. R.R. Co.,

12   380 U.S. 424 (1965)] depended heavily on the fact that those

13   filings involved exactly the same cause of action subsequently

14   asserted.  This factor was more than a mere abstract or theoretical

15   consideration because the prior filing in each case necessarily

16   operated to avoid the evil against which the statute of limitations

17   was designed to protect." Id.; see also Int'l Union of Elec.,

18   Radio and Mach. Workers, AFL-CIO, Local 790 v. Robbins & Myers,

19   Inc., 429 U.S. 229, 238 (1976) (declining to toll a later-filed

20   claim that was not identical to the earlier-filed claim, citing

21   Johnson).[5]

22              a.    **Direct Purchaser Cases**

23        None of the direct purchaser complaints asserts a state law

24   cause of action.  Therefore, based on the above reasoning, the

25   Court does not find that American Pipe tolling extends to any of

26   
27   [5] In an unpublished 2005 opinion, the Ninth Circuit found
     similarly.  Card v. Duker, 122 Fed. App'x 347, 349 (9th Cir. 2005)
     ("The Supreme Court has thus not extended tolling due to class
28   litigation beyond American Pipe's narrow allowance for identical
     causes of action brought where the class was decertified.").

8

**United States District Court**
For the Northern District of California

1   Tech Data or Sharp's state law causes of action based on direct

2   purchases.  Based on this conclusion, it is not necessary to reach

3   the issue of whether those states' laws would apply American Pipe

4   in the cross-jurisdictional context.  Further, to the extent Sharp

5   and Tech Data rely on indirect purchases for standing, they would

6   not be able to toll claims based on direct purchaser complaints,

7   which were exclusively brought on behalf of direct purchasers.

8        In any event, none of the states in which Sharp or Tech Data

9   purports to bring claims would adopt cross-jurisdictional tolling.[6]

10  The Tennessee Supreme Court has held that "[a]doption of [cross-

11  jurisdictional tolling] would run the risk that Tennessee courts

12  would become a clearinghouse for cases that are barred in the

13  jurisdictions in which they otherwise would have been brought."

14  Maestas v. Sofamor Danek Grp., Inc., 33 S.W.3d 805, 808 (Tenn.

15  2000).  New Jersey limits tolling to former class members, and only

16  to the extent their claims were raised in the original putative

17  class actions, so Sharp cannot rely on that case since the DPP

18  class did not assert a New Jersey claim.  Del Sontro v. Cendant

19  Corp., 223 F. Supp. 2d 563, 581 (D.N.J. 2002).  New York law is

20  unsettled, but the Court follows the Southern District of New York

21  in declining to import American Pipe into New York state law.

22  Soward v. Deutsche Bank AG, 814 F. Supp. 2d 272, 281-82 (S.D.N.Y.

23  2011).  California explicitly forecloses American Pipe's

24  application to cross-jurisdictional actions.  Hatfield v. Halifax

25  _____

26  [6] In encouraging the Court to apply cross-jurisdictional tolling to
    the state claims, Sharp asks the Court to adopt the case-by-case
27  test from In re Linerboard Antitrust Litigation, 223 F.R.D. 335
    (E.D. Pa. 2004).  The Court declines to do so.  That case is not
28  binding on the Court.

United States District Court
For the Northern District of California

1   PLC, 564 F.3d 1177, 1187 (9th Cir. 2009); see also Clemens v.

2   DaimlerChrysler Corp., 534 F.3d 1017, 1025 ("California's interest

3   in managing its own judicial system counsel[s] us not to import the

4   doctrine of cross-jurisdictional tolling into California law.").[7]

5   Finally, Tech Data's Florida claim is a special case, which the

6   Court addresses (and dismisses) below, but regardless of that,

7   Florida Statute section 95.051(1) sets out the exclusive list of

8   Florida tolling doctrines, which does not include cross-

9   jurisdictional tolling.

10              **b.     The Special Case of Equitable Tolling in**

11                       **California**

12       Equitable tolling under California law is a judicially created

13   doctrine that suspends or extends statutes of limitations in order

14   to ensure that limitations periods are not used to bar claims

15   unfairly.  Hatfield, 564 F.3d at 1185.  Courts apply three factors

16   in deciding whether to apply equitable tolling in California: "(1)

17   timely notice to the defendant in the filing of the first claim;

18   (2) lack of prejudice to the defendant in gathering evidence to

19   defend against the second claim; and (3) good faith and reasonable

20   conduct by the plaintiff in filing the second claim."  Id.

21   Equitable tolling overlaps with American Pipe tolling to some

22   extent, though the two doctrines are not congruent, so this

23   analysis falls outside the discussion of American Pipe tolling and

24   its limitations.  Id. at 1188.

25       The Court is not completely convinced by Tech Data and Sharp's

26   contentions that the Court should apply California's equitable

27

28   [7] The Court addresses California's equitable tolling doctrine
     separately.

10

**United States District Court**
For the Northern District of California

1 tolling and allow them collectively to extend the tolling periods

2 for state law claims not asserted in the DPP action.  Only Sharp

3 Plaintiff SEMA is a California resident, since it is organized

4 under California law and has its principal place of business in San

5 Diego.  No other plaintiffs are entitled to equitable tolling,

6 which is limited to California residents.  Id. at 1189 ("Although

7 we conclude that California would allow its resident class members

8 to reap tolling benefits under its equitable tolling doctrine, the

9 same cannot be said for the non-resident class members.").  To the

10 extent that Sharp's complaint brings claims on behalf of SEMA's

11 direct purchases from Defendants, however, the Court finds that

12 equitable tolling should apply, because (1) Defendants have had

13 timely notice of the DPP action; (2) Defendants are not prejudiced

14 in gathering evidence to defend against SEMA's claim, since the DPP

15 cases (though now nearing settlement) have been underway for years;

16 and (3) it does not appear that Sharp has acted in bad faith in

17 filing this opt-out case.  See Hatfield, 564 F.3d at 1185.

18        The Court is not persuaded by Defendants' arguments against

19 the application of the doctrine to SEMA.  First, Defendants' cases

20 denying equitable tolling on the basis of a state-law claim having

21 been filed first refer to the same named plaintiffs bringing cases

22 first in state court and later pursuing a federal case, relying on

23 the earlier-filed state action to toll their claims -- the present

24 case's fact pattern is different.  See Eichman v. Fotomat, 880 F.2d

25 149, 155-56 (9th Cir. 1989); Mir. v. Little Co. of Mary Hosp., 844

26 F.2d 646, 649 (9th Cir. 1988).  Second, the Court is also not

27 convinced by Defendants' argument that equitable estoppel does not

28 apply when plaintiffs file a subsequent action in the same court as

United States District Court
For the Northern District of California

the prior action.  Reply at 8 (citing, among other cases, <u>Centaur</u>
<u>Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Grp.</u>,
878 F. Supp. 2d 1009, 1018 (C.D. Cal. 2011)).  Defendants' cases
again refer to named plaintiffs, or putative class members after
the denial of class certification, and the Court does not find that
the equities in those cases are the same as those at work in this
one.

Therefore, Sharp's California claims on behalf of SEMA's
direct purchases from Defendants remain in the case pursuant to
equitable tolling.  Sharp's California claims on behalf of any
other Sharp entities are DISMISSED WITH PREJUDICE.

### c.  **Indirect Purchaser Cases**

Sharp and Tech Data also assert that to the extent they allege
causes of action based on indirect purchases, they are entitled to
tolling based on earlier-filed indirect purchaser plaintiffs'
("IPPs") class actions.  As noted above, the Court holds that
<u>American Pipe</u> tolling is inapplicable to state law claims not
asserted in previous actions, so the Court will evaluate tolling
here only as to claims actually asserted in the IPP cases.  Both
Sharp and Tech Data refer to two earlier-filed IPP cases that
asserted California state law claims,[8] which they contend
separately entitle them to toll their California state law claims
from those cases' filings dates until March 16, 2009, when the IPP
consolidated class complaint was finalized to exclude resellers
like Sharp and Tech Data.  The first case, <u>Juetten</u>, was filed

---

[8] <u>Juetten v. Chunghwa Picture Tubes, Ltd.</u>, No. 07-cv-6225 (N.D. Cal.) and <u>Gonzalez v. Chunghwa Picture Tubes, Ltd.</u>, No. 08-cv-01108) (N.D. Cal.)

December 10, 2007; the second, <u>Gonzalez</u>, was filed on February 25, 2008.

The Court finds that neither Sharp nor Tech Data can assert tolling based on the IPP cases. First, the plaintiff in <u>Juetten</u> brought his case only on behalf of purchasers who bought CRTs "for their own use and not for resale." ECF 1 ("<u>Juetten</u> Compl.") ¶ 84, No. 07-cv-6225. This excludes Tech Data and Sharp's claims based on indirect purchases, since they acknowledge that they are resellers.[9]

Second, <u>Gonzalez</u> does not rescue either Tech Data or Sharp's claims because it does not extend the tolling period long enough. It was filed on February 25, 2008, and is relevant for tolling purposes only until March 16, 2009, when the IPP Consolidated Amended Complaint ("IPP CCAC"), was filed. ECF No. 437. Tech Data must account for tolling between November 14, 2007, and December 11, 2012, when it filed its complaint. Sharp must account for tolling between November 14, 2007, and March 19, 2013. "[U]nder <u>American Pipe</u> the limitations period applicable to [a plaintiff's claims] could have been tolled only until such time as he was no longer a class member, that is . . . when [the amended complaint] in the consolidated class action was filed." <u>Chardon v. Soto</u>, 462 U.S. 650, 654 (1983). 385 days passed between <u>Gonzalez</u>'s filing date and the IPP CCAC's filing date. This leaves both Tech Data and Sharp still in excess of four years between dates on which they would have had notice of their claims, and their actual filing

---

[9] Defendants contend that the Court should find that the same exclusion applies to <u>Gonzalez</u> even though its complaint does not expressly limit the proposed class in the way that <u>Juetten</u>'s did. The Court declines to speculate on what the named plaintiff from <u>Gonzalez</u> planned to do.

dates.  In Sharp's case, five years, four months, and five days --
1,952 days in total -- passed between the notice date and the day
Tech Data filed its complaint.  For Tech Data, five years and
twenty-seven days -- 1,854 days total -- passed between those two
dates.  Gonzalez could have provided, at most, one year and twenty
days of tolling, leaving both Sharp and Tech Data outside the
limitations period.

Therefore, even if Gonzalez could toll Sharp or Tech Data's
California claims, with the exception of SEMA's California claims
related to direct purchases, those claims would remain time-barred.

### ii.    Governmental Action

### a.    New York

Sharp argues that the federal government's actions on the CRT
conspiracy toll the statute of limitations for its Donnelly Act
claims, beginning with the DOJ's criminal actions against CRT
conspirators in February 2009.  Sharp Opp'n at 11-12.  They base
this argument not on federal antitrust tolling provisions, but on
the Donnelly Act's own tolling provision, which tolls Donnelly Act
limitations periods pending federal antitrust proceedings:

> Whenever any civil or criminal proceeding is instituted
> by the federal government to prevent, restrain, or
> punish violations of the federal antitrust laws, the
> running of the period of limitations in respect of every
> right of action arising under sections three hundred
> forty, three hundred forty-two and three hundred forty-
> two-a of this article, based in whole or in part on any
> matter complained of in the federal proceeding, shall be
> suspended during the pendency of said proceeding and for
> one year thereafter . . . .

N.Y. Gen. Bus. Law § 342-c.  Sharp further notes that, elsewhere in
this litigation, Defendants have conceded that Donnelly Act claims

United States District Court
For the Northern District of California

are tolled due to pending federal investigations.  Opp'n at 12
(citing ECF No. 1422 ("Defs. Joint Reply ISO MTD DAP Claims")).

Defendants contend that their earlier motion was directed
toward other DAPs, whose complaints were filed in November 2011.
Reply at 15.  They also argue that the New York tolling provision
does not save Sharp's claim.  Id. at 14-15.  According to
Defendants, tolling under that statute commences only as of the
date an indictment was filed, and lasts through the pendency of
prosecution.  Id. at 15 (citing Hinds Cnty., Miss. v. Wachovia Bank
N.A., 885 F. Supp. 2d 617, 628 (S.D.N.Y. 2012) (applying tolling
under the federal provision, not Section 342-c); Dungan v. Morgan
Drive-Away, Inc., 570 F.2d 867, 871 (9th Cir. 1978) (same)).
Defendants claim that because Sharp has alleged nothing as to the
duration of any criminal proceedings, except fifty-five days
between March 18, 2011 and May 12, 2011 when two defendants entered
plea agreements, there is no way for Sharp to account for the
period between November 2007 and March 2013.  Id.  Defendants state
that even if Sharp's Donnelly Act claim were tolled for a year and
fifty-five days, Sharp's March 2013 complaint is still untimely.
Id.

The Court is not convinced by Defendants' argument.  The Court
finds that § 16(i) tolling applies based on the open indictments in
this case.  First, one criminal matter, pending between March 18,
2011 until its closure in August 30, 2012, tolls claims under §
16(i) for that time period plus a year.  Further, based on J.M.
Dungan v. Morgan Drive-Away, Inc., 570 F.2d 867 (9th Cir. 1978),
tolling under § 16(i) begins at least at the indictment stage,
though the Court notes that Dungan had the benefit of at least one

United States District Court
For the Northern District of California

15

1   completed criminal case.  However, the Ninth Circuit's holding was

2   in fact based on the court's reasoning that the return of a grand

3   jury indictment fits the statutory language of § 16(i) more

4   comfortably than empanelling alone would, since the purpose of an

5   indictment is the prevention, restraint, or punishment of antitrust

6   violations.  In this case, the open indictments Sharp references

7   remain pending, and the Court finds Dungan instructive here:

8   tolling under § 16(i) may begin at least with the return of an

9   indictment, and absent facts or law indicating that the Court

10  cannot apply tolling because not much has happened in those cases,

11  the Court finds that under current precedent tolling will apply

12  from February 10, 2009 to the present as to Sharp's Donnelly Act

13  claims.

14           b.   **Florida**

15       Tech Data argues that its FDUTPA claim is tolled because in

16  2011, the State of Florida filed a complaint, ECF No. 2349-1 ("Fl.

17  Compl."), alleging that Defendants' alleged conspiracy violated the

18  FDUTPA.  Tech Data relies on Section 501.207(1)(c) of the Florida

19  Statutes, which gives the State the authority to bring actions on

20  behalf of consumers or governmental entities for damages caused by

21  FDUTPA violations.  Tech Data Opp'n at 8-9.  The Florida Complaint

22  was not filed under Rule 23 or a comparable state class action

23  statute, see Fl. Compl., but Tech Data, a Florida-based business,

24  would have fallen under the group of "consumers" on behalf of whom

25  Florida could sue.  Id.  It contends that Florida would recognize

26  American Pipe tolling, so the Court should toll the statute of

27  limitations based on the State's complaint.  Id. at 9.

28

**United States District Court**
For the Northern District of California

1    Defendants respond that a different Florida statute, Section

2  95.051(1), provides an exclusive list of conditions that can toll

3  the Florida statute of limitations.  Reply at 11.  They also argue

4  that Tech Data's cited cases do not support their contention that

5  Florida would recognize American Pipe tolling.  Id.  And in their

6  supplemental brief, they add that since the Florida complaint is

7  not a class action, it is not subject to American Pipe tolling in

8  any event.  See ECF No. 2360 ("Supp. Reply") at 1-2.

9    Tech Data's argument is essentially that it would have been a

10  putative class member of the State of Florida's class action, and

11  Florida would apply American Pipe tolling, so the Court should toll

12  the claim.  Defendants are right that Section 95.051(1) provides an

13  exclusive list of Floridian tolling doctrines, and class-action

14  American Pipe tolling is not on it.  Fla. Dep't of Health & Rehab.

15  Servs. v. S.A.P., 835 So. 2d 1091, 1095-96 & n.7 (Fla. 2002)

16  (affirming that Section 95.051 is exclusive, but distinguishing

17  tolling doctrines from equitable estoppel).  Defendants also argue

18  that a parens patriae case brought on behalf of state consumers and

19  businesses do not apply to toll actions under American Pipe,

20  because they are not brought pursuant to Rule 23 or a similar state

21  statute or rule of judicial procedure.  Supp. Reply at 2 (citing

22  Miss. ex rel Hood v. AU Optronics Corp., 134 S. Ct. 736, 740-41

23  (2014)).

24    The Court finds this reasoning compelling in light of

25  Mississippi v. AU Optronics.  That case concerned, in part, whether

26  a case brought by a state as sole plaintiff, on behalf of state

27  consumers -- but not filed as a class action under either Rule 23

28  or an equivalent state law or rule -- could qualify as a "mass

action" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  134 S. Ct. 736, 740-41 (2014).  Under CAFA, class actions are civil actions filed under Rule 23 or a similar state statute or procedural rule, and mass actions are civil actions in which "monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground the plaintiffs' claims involve common questions of law or fact."  Id. at 740.  The Supreme Court noted that both the trial court and appellate court had held that the suit, in which the State of Mississippi was sole plaintiff, was not a class action.  Id. at 741.  After holding that the word "person" in CAFA referred to "plaintiffs," and "plaintiffs" were the actual named parties in the suit, the Supreme Court rejected the argument that the case's similarity to a class action -- being brought by one named party on behalf of other parties in interest, in this case the citizens of Mississippi -- merited its being analyzed as one under CAFA.  Id. at 744-45.

The Court finds this reasoning applicable to the present case: there must be a distinction between a class action and a case brought by a state on behalf of its citizens.  Even if cross-jurisdictional tolling were to apply in Florida, the State of Florida's complaint was not a class action, regardless of the state's authority to bring actions on behalf of consumers.  See Fla. Stat. § 501.207(1)(c).  As the Supreme Court has held, when consumers are parties in interest to a case in which the State is the sole plaintiff and has not brought the action as a class action (or when the action is not a mass action), the parens patriae case's similarity to those types of actions does not warrant courts analyzing all such cases as if they were the same.  See Miss. v. AU

United States District Court
For the Northern District of California

1   <u>Optronics</u>, 134 S. Ct. at 741.  <u>American Pipe</u> does not apply here,
2   and the Court makes no holding as to whether Florida would adopt it
3   even if it were applicable.  The Court also declines to evaluate
4   the parties' disputes over whether <u>American Pipe</u> tolling would save
5   Plaintiffs' claims if it did apply.

6        In any event, Tech Data's claim would be untimely even if the
7   Florida complaint tolled its cause of action.  The parties made the
8   relevant dates clear in their supplemental briefs, and the Court
9   finds that the complaint could toll the relevant four-year
10  limitations period if, assuming the longest possible tolling date,
11  the period was tolled between the Florida complaint's filing on
12  December 9, 2011, and December 11, 2012.  Considering the period
13  between November 14, 2007, and December 11, 2012 -- five years and
14  twenty-seven days -- applying a tolling period of 367 days leaves
15  Tech Data several weeks outside the limitations period.  Finally,
16  the fact that Florida law explicitly does not include cross-
17  jurisdictional class-action tolling also counsels rejecting Tech
18  Data's argument on this point.

19       As this is not a dismissal that could be cured with amendment,
20  it is WITH PREJUDICE.
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

United States District Court
For the Northern District of California

1  **V.   <u>CONCLUSION</u>**

2        As explained above, Sharp's state law claims are DISMISSED

3  WITH PREJUDICE, with the exception of Sharp Plaintiff SEMA's

4  California claims and Sharp's Donnelly Act claim, which remain in

5  the case.   Tech Data's California and Florida claims are DISMISSED

6  WITH PREJUDICE.   All parties' federal claims are undisturbed.   All

7  holdings apply to the Philips Defendants.

8

9        IT IS SO ORDERED.

10

11      Dated: March 13, 2014

12                                        UNITED STATES DISTRICT JUDGE