IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>Schultze Agency Servs., LLC v. Hitachi Ltd., No. 12-cv-2649-SC | Case No. C 07-5944 SC<br><br>MDL No. 1917<br><br>ORDER GRANTING IN PART AND DENYING IN PART TOSHIBA'S MOTION TO DISMISS SCHULTZE AGENCY SERVICES, LLC'S FIRST <u>AMENDED</u> <u>COMPLAINT</u> |

## I. INTRODUCTION

Now before the Court is the Toshiba Defendants'[1] Rule 12(b)(6) motion to dismiss Plaintiff Schultze Agency Services, LLC's[2] first amended complaint. ECF No. 1980 ("FAC"). The Philips Defendants join in the motion.[3] The motion is fully briefed. ECF Nos. 2108 ("Mot."), 2245 ("Opp'n"), 2282 ("Reply"). The Court finds it appropriate for resolution without oral argument, Civ. L.R. 7-1(b).

---

[1] The Toshiba Defendants are Toshiba Corporation, Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc.

[2] Schultze is suing on behalf of Tweeter Opco LLC and Tweeter Newco LLC (collectively "Tweeter"). The parties and the Court accordingly refer to Tweeter, not Schultze, where appropriate.

[3] The Philips Defendants are Koninklijke Philips N.V. and Philips Electronic North America Corp.

The motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

The parties are familiar with the general facts of this case, which is an antitrust action concerning the alleged price-fixing of cathode-ray tubes ("CRTs").  A brief factual summary relevant to the instant motion follows.

The Toshiba Defendants are companies that are all alleged to have manufactured, marketed, sold, or distributed CRT Products in the United States, either directly or through subsidiaries or affiliates.  FAC ¶¶ 58-63.  The Philips Defendants are Dutch companies alleged to have done the same things.  Id. ¶¶ 43-47.  Plaintiffs allege that the Toshiba and Philips Defendants participated in an international conspiracy to fix the prices of CRTs, and that they never effectively withdrew from it.  Plaintiffs also contend that the Toshiba and Philips Defendants, as well as other Defendants, were highly interrelated, as when they formed CRT-related joint ventures.  Plaintiffs state that they bought price-fixed CRT Products "directly from Defendants and co-conspirators, and/or Defendants' and co-conspirators' subsidiaries and affiliates, and/or any agents controlled by Defendants, Defendants' subsidiaries and affiliates, co-conspirators or co-conspirators' affiliates," as well as from original equipment manufacturers ("OEMs") and other suppliers.

The Toshiba Defendants now move to dismiss.  The Philips Defendants join this motion.

///
///

2

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud."  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and

3

how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. Ownership or Control

The Toshiba and Philips Defendants argue first that Plaintiffs have failed to allege facts that would support federal antitrust standing under the "ownership or control" exception of Illinois Brick v. Illinois, 431 U.S. 720 (1977). That case, now quite familiar to all parties in this MDL,[4] set forth several exceptions to the general rule that plaintiffs who purchased allegedly price-fixed goods indirectly -- i.e., not from the ultimate price-fixer -- lack standing to bring a federal antitrust case. See In re ATM Fee Antitrust Litig., 686 F.3d 741, 749 (9th Cir. 2012). One exception, the "ownership or control" exception, provides for standing when a plaintiff bought the allegedly price-fixed good from an entity owned or controlled by the ultimate price-fixer. Id.

The Court finds for Tweeter. Tweeter's allegations are sufficient to invoke the ownership or control exception at this time. Tweeter pleads that it purchased CRT Products from Defendants, their affiliates or agents, or any agents that Defendants or their subsidiaries controlled, and that it was

---

[4] See, e.g., ECF No. 1470 ("Order Re: Defs.' Joint Mot. for S.J.") ("S.J. Order.")).

1  injured when it paid artificially high prices for those products.
2  Defendants contend that this is insufficient pleading, and that
3  Tweeter should essentially have to name all of the entities from
4  which it purchased CRT Products.  But in this long-running case, in
5  which significant evidence of the alleged conspiracy is in the
6  record, and Defendants have long had notice of the claims against
7  them, the Court does not find it necessary to require Tweeter to
8  adhere to Defendants' pinpoint pleading standards.  Further,
9  Defendants continually point to Tweeter's allegations that they
10 purchased CRT Products "from original equipment manufacturers
11 ('OEMs'), as well as other suppliers," but this pleading comes
12 directly after the sentence stating that Plaintiffs purchased CRT
13 Products from entities that would entitle Plaintiffs to the
14 ownership or control exception at the pleading stage.[5]
15      This is sufficient to entitle Tweeter to invoke the ownership
16 or control exception as a pleading matter.  Whether they have the
17 facts to prove it is a different issue.  The motion is accordingly
18 DENIED on these grounds.
19      **B.   Massachusetts Law**
20      Tweeter also asserts a cause of action under the Massachusetts
21 Consumer Protection Act ("MCPA"), Mass. Gen. Laws  ch. 93A, § 1 et
22 seq.  Tweeter cites specifically Section 9 of the MCPA, which
23 provides a cause of action for "[a]ny person, other than a person
24 entitled to bring action under section eleven of this chapter, who
25 has been injured by another person's use or employment of any

---

[5] Defendants also point to the fact that the Court dismissed Sharp's complaint against the Thomson defendants, ECF No. 1960, but that concerned different parties, different pleadings, and a different issue on a motion to dismiss.

5

method, act or practice declared to be unlawful by section two [of this chapter]."  Section 2 of the MCPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," and the parties do not dispute that the activity Tweeter alleges would fall under this section.  The parties' dispute involves whether Tweeter can bring a claim under Section 9 at all, or whether their claim can only arise under Section 11.  Defendants contend that the two sections of the MCPA are mutually exclusive, and that Twitter may only bring a claim under Section 11, which provides a cause of action for entities that participate in trade or commerce (as Tweeter undisputedly does) but prohibits indirect purchaser suits.[6]  Defendants also argue that Tweeter did not comply with the MCPA's notice provisions.

      **i.**     **Sections 9 and 11 of the MCPA**

Tweeter responds, first, that Section 9 is not limited to consumer claims, because it provides a cause of action for "any person," and corporations are persons under Massachusetts law.  Opp'n at 13 (citing Mass. Gen. Laws ch. 4, § 7(23) ("person" includes corporations)).  Tweeter contends that it satisfies each element of a Section 9 claim: (1) it is a "person," since corporations are persons in Massachusetts; (2) it is not "entitled" to bring a claim under Section 11, since Section 11 is reserved for direct-purchaser claims; and (3) it has been injured by Defendants' alleged unlawful practices.  Tweeter concludes that even if Section

---

[6] The parties agree that Massachusetts does not permit indirect purchaser suits, an interpretation that is in line with Massachusetts law.  See Ciardi v. F. Hoffman-La Roche, Ltd., 762 N.E.2d 303, 312 (Mass. 2002).

6

1  11 does not provide a cause of action for it, Section 9 must, since
2  interpreting Section 11 as being the exclusive avenue for
3  businesses to bring antitrust claims in Massachusetts would result
4  in allowing indirect-purchaser businesses to file meritless claims,
5  rendering the statute's language about being "entitled" to bring a
6  claim essentially meaningless.

7  Defendants oppose this argument, citing a Supreme Judicial
8  Court of Massachusetts case holding that the MCPA "creates a sharp
9  distinction between a business person and an individual who
10 participates in commercial transactions on a private,
11 nonprofessional basis.  For example, where § 9 affords a private
12 remedy to the individual consumer . . . an entirely different
13 section, § 11, extends the same remedy to '[a]ny person who engages
14 in the conduct of any trade or commerce.'"  Reply at 8 (citing
15 Lantner v. Carson, 373 N.E. 2d 973, 976 (Mass. 1978)).  That case
16 rejects interpretations of the MCPA under which "the 'persons'
17 covered by § 9 and 11 would be identical," because "[s]ection 11
18 would thus be superfluous merely a repetition of § 9."  Id.  The
19 First Circuit is similarly clear: "By their terms . . . the two
20 sections of chapter 93A that create private rights of action are
21 mutually exclusive . . . section 11 affords no relief to consumers
22 and, conversely, section 9 affords no relief to persons engaged in
23 trade or commerce."  Cont'l Ins. Co. v. Bahnan, 216 F.3d 150, 156
24 (1st Cir. 2000).

25 The Court agrees with Defendants.  Tweeter's argument is
26 engaging, but ultimately, the Supreme Judicial Court's reasoning
27 and statutory interpretation must prevail.  The Court declines to
28 collapse Sections 9 and 11: Section 9 applies to persons

7

1  (individual consumers or corporations) not involved in trade or
2  commerce.  Section 11 provides a cause of action to persons who are
3  so involved, but Massachusetts law still does not provide an
4  antitrust cause of action for indirect purchasers.  This does not
5  mangle statutory interpretation, as Tweeter contends.  It only
6  means that, while corporations engaged in commerce can bring suits
7  under Section 11 and potentially win them, a corporation engaged in
8  commerce whose suit is based on indirect purchases will not have
9  standing under Section 11.
10     Tweeter makes several further arguments based purportedly on
11 policy and common sense -- that corporations engaged in trade
12 should be able to bring the same kinds of unfair competition suits
13 that individual consumers can -- but the Court declines to address
14 these points.  They are the domain of the Massachusetts legislature
15 and courts of appeal.
16     Finally, since Tweeter's claim under either provision of the
17 MCPA is barred, the Court need not address whether it met the
18 statutory notice requirements.
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## V. CONCLUSION

As explained above, the Toshiba Defendants' Rule 12(b)(6) motion to dismiss Plaintiff Schultze Agency Services first amended complaint is GRANTED in part and DENIED in part. Tweeter's federal antitrust claim is undisturbed, but Tweeter's Massachusetts Consumer Protection Act claim is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: March 13, 2014

UNITED STATES DISTRICT JUDGE