**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | )<br>)<br>)<br>)<br>)<br>) |
| ———————————————————— | |
| This Order Relates To: | )<br>) |
| Best Buy Co., Inc. v. Hitachi Ltd., No. 11-cv-05513-SC; | )<br>)<br>) |
| Costco v. Hitachi Ltd., No. 11-cv-06397-SC; | )<br>)<br>) |
| Target Corp. v. Chunghwa, No. 11-cv-05514-SC; | )<br>)<br>) |
| Tech Data v. Hitachi, Ltd., No. 13-cv-00157-SC. | )<br>)<br>)<br>)<br>)<br>) |
| ———————————————————— | ) |

MDL No. 1917

Case No. C-07-5944-SC

ORDER DENYING BEIJING-MATSUSHITA COLOR CRT CO.'S MOTION TO DISMISS

I.   **INTRODUCTION**

Now before the Court is Defendant Beijing-Matsushita Color CRT Company's ("Defendant" or "BMCC") motion to dismiss certain Direct Action Plaintiffs' ("Plaintiffs" or "DAPs") complaints for lack of personal jurisdiction.[1]  ECF No. 2118 ("MTD").  The motion is fully

---
[1] The complaints in question are filed under seal in Best Buy Co.

**United States District Court**
For the Northern District of California

briefed.  ECF Nos. 2239-4 ("Opp'n") (filed under seal), 2363

("Reply").[2]  Finding this matter suitable for disposition without

oral argument, Civ. L.R. 7-1(b), the Court DENIES the motion.

II.   <u>BACKGROUND</u>

Defendant is a Chinese company with its principal place of

business in Beijing, China.  <u>See</u> Target SAC ¶ 38; Best Buy FAC ¶

44; Sears Compl. ¶ 40; Tech Data FAC ¶ 46.  During the time

relevant to the Complaints, Defendant was a joint venture, and its

shareholders included MT Picture Display Co. Ltd. ("MTPD"), a

subsidiary of Defendant Panasonic Corporation ("Panasonic"), which

owned 50 percent of Defendant.  <u>Id.</u>  Three Chinese companies owned

the remainder.  <u>See id.</u>  Plaintiffs allege that MTPD controlled

Defendant, classified it as a business unit, monitored its

activities, and assigned its directors responsibility over

Defendant.  ECF No. 2339-5 ("Loh Decl.") Ex. D at 6, 11, 12, 17,

18, 27, 37, 38 (filed under seal).  Originally, MTPD was formed as

a joint venture between Defendants Panasonic and Toshiba, with

_____

v. Hitachi, Ltd., No. 3:11-cv-05513-SC; <u>Costco v. Hitachi, Ltd.</u>,
No. 3:11-cv-06397-SC; <u>Target Corp. v. Chunghwa</u>, No. 3:aa-cv-05513-
SC; and <u>Tech Data v. Hitachi, Ltd.</u>, No. 3:13-cv-00157-SC.  The
Court refers to the complaints according to each plaintiff's name,
but the relevant pleadings are variously in their first or second
amended stages.  The parties refer to the pleadings in this way, so
the Court follows suit.

[2] Defendant also asks the Court to take judicial notice of a
California Superior Court case quashing a summons for Defendant on
personal jurisdiction grounds.  ECF Nos. 2372 ("RJN"), 2372-1
("Quash Order").  Plaintiffs object.  ECF No. 2376.  The Court
GRANTS Defendant's motion under Federal Rule of Evidence 201,
because the Quash Order is a state court decision, but the Court
otherwise finds the Quash Order uncompelling: it is an unpublished
California court decision; it was based on different facts and
arguments; and it evaluated Defendant's contacts with California
alone, not with the United States (which is the proper forum to
consider for this case's purposes).

**United States District Court**
For the Northern District of California

1    Panasonic owning 64.5 of MTPD and Toshiba owning the remaining

2    35.5, but Panasonic purchased Toshiba's share on March 30, 2007,

3    making MTPD Panasonic's wholly owned subsidiary.  Best Buy FAC ¶

4    43; Tech Data FAC ¶ 45; Target SAC ¶ 37.  Panasonic personnel moved

5    interchangeably through Defendant, MTPD, and related entities.

6        Plaintiffs allege that between at least 1998 and 2007,

7    Defendant conspired to fix prices of CRTs ultimately sold in the

8    United States.  See Best Buy FAC ¶¶ 1, 4, 14, 44; Tech Data FAC ¶¶

9    1, 4, 15, 46; Target SAC ¶¶ 1, 3, 14, 38.  This included attending

10   meetings with co-conspirators regarding the prices of CRTs sold to

11   corporate affiliates, which manufactured finished CRT Products like

12   televisions and computer monitors for sale in the United States.

13   See Best Buy FAC ¶¶ 116-30, 146; Tech Data FAC ¶¶ 121-34, 142;

14   Target SAC ¶¶ 109-24, 140.  The co-conspirators allegedly ensured

15   that all original equipment manufacturers ("OEMs"), including their

16   affiliates, paid supracompetitive prices for CRTs around the world,

17   including in the United States.  See Best Buy FAC ¶ 127; Tech Data

18   FAC ¶ 132; Target SAC ¶ 120.

19       Defendant allegedly participated in price-fixing meetings in

20   China between 1998 and 2007.  See, e.g., Loh Decl. Ex. E ("Samsung

21   Interrogs.") at 29-85 (summarizing Defendant Samsung SDI's price-

22   fixing meetings with alleged co-conspirators, including Defendant);

23   id. Ex. F ("Yang Depo.") 402:3-22 (stating that Defendant and other

24   alleged co-conspirators conducted meetings in China); id. Ex. G

25   ("Lu Depo.") 238:2-23 (same); id. Ex. O (meeting notes from a

26   discussion among alleged co-conspirators, including Defendant,

27   regarding CRT marketing information, including sales to United

28   States customers like Wal-Mart, Circuit City, and Sears).  The

United States District Court
For the Northern District of California

alleged co-conspirators coordinated pricing decisions in relation
to United States market conditions, and discussed CRT prices in
U.S. dollars.  Id. Ex. H ("Mar. 9, 2001 Notes") at CHU00029193E
(noting that Defendant Orion, as well as other unnamed customers,
would see an increase in orders as the United States market's high
season drew closer), CHU00029194E (stating that though Defendant
did not attend that meeting, another party was responsible for
delivering price increase news to Defendant so that producers would
not confuse customers by providing lower prices); id. Ex. I ("Aug.
23, 1999 Notes") at CHU00029179.02E (confirming that Defendant had
raised CRT prices from USD 29.50 to USD 30.50 following
communications with another alleged co-conspirator).

    Importantly for this particular case, Defendant asserts that
it never sold any CRTs or CRT Products to United States customers -
- rather, it sold the majority of its CRTs to customers in China.
ECF No. 2118-1 ("Kinoshita Decl.") ¶¶ 21-23.  It sold certain CRTs
to Defendant Panasonic, which then sold them in the United States,
but Defendant avers that it had no control over or responsibility
for Panasonic's volume or pricing decisions.  Id.  Certain
deposition testimony states, however, that Defendant sold CRTs to
AKEI, which the witness states was a New Jersey-based Matsushita
affiliate.  Loh Decl. Ex. K ("Liu Depo.") 423:17-424:11.  Further,
Panasonic and Defendant exchanged frequent emails regarding Chinese
television makers' sales to the United States.  See Loh Decl. Ex. L
("Jun. 13, 2002 Email").  Defendant supplied this information to
Panasonic, which included certain Chinese manufacturers' sales to
Best Buy and the American military, among others.  Loh Decl. Ex. M
("Sept. 11, 2003 Email").  Other emails concern discussions among

4

1  Defendant, Panasonic, and MTPD about price and volume increases to
2  the United States.   Loh Decl. Ex. N ("Sept. 11, 2006 Email").

3      Plaintiffs sued Defendant under federal and state antitrust
4  and competition laws, based on their allegations that Defendant
5  fixed prices on CRTs that it or its affiliates sold in the United
6  States.   Defendant moves to dismiss, arguing that the Court lacks
7  either general or specific jurisdiction over it, and that some
8  Plaintiffs' service on Defendant was improper, owing to what
9  Defendant claims is the Court's error in prior orders concerning
10 methods of serving foreign defendants.

11

12 **III.   LEGAL STANDARD**

13      **A.   Jurisdiction - Rule 12(b)(2)**

14      Under Rule 12(b)(2) of the Federal Rules of Civil Procedure,
15 defendants may move to dismiss for lack of personal jurisdiction.
16 The Court may consider evidence presented in affidavits and
17 declarations determining personal jurisdiction.   <u>Doe v. Unocal</u>
18 <u>Corp.</u>, 248 F.3d 915, 922 (9th Cir. 2001).   Plaintiff bears the
19 burden of showing that the Court has personal jurisdiction over
20 Defendants.   <u>See</u> <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151, 1154
21 (9th Cir. 2006).   "[T]his demonstration requires that the plaintiff
22 make only a prima facie showing of jurisdictional facts to
23 withstand the motion to dismiss."   <u>Id.</u> (quotations omitted).
24 "[T]he court resolves all disputed facts in favor of the plaintiff
25 . . . ."   <u>Id.</u> (quotations omitted).   "The plaintiff cannot simply
26 rest on the bare allegations of its complaint, but uncontroverted
27 allegations in the complaint must be taken as true."   <u>Mavrix Photo,</u>
28 <u>Inc. v. Brand Techs., Inc.</u>, 647 F.3d 1218, 1223 (9th Cir. 2011)

**United States District Court**
For the Northern District of California

1    (quotations and citations omitted).  The Court may not assume the

2    truth of allegations that are contradicted by affidavit.  <u>Data</u>

3    <u>Disc, Inc. v. Sys. Tech. Assocs., Inc.</u>, 557 F.2d 1280, 1284 (9th

4    Cir. 1977).

5        Courts may exercise personal jurisdiction over a defendant

6    only if (1) a statute confers jurisdiction and (2) exercising

7    jurisdiction would comport with constitutional due process.  <u>See</u>

8    <u>Action Embroidery Corp. v. Atlantic Embroidery, Inc.</u>, 368 F.3d

9    1174, 1177 (9th Cir. 2004).  Since the federal Clayton Act, 15

10   U.S.C. § 22, fulfills the statutory requirement for jurisdiction in

11   this case, the question on this motion is whether exercising

12   jurisdiction would comport with due process.  For a court to

13   exercise personal jurisdiction over a non-resident defendant

14   consistent with due process, the defendant must have "certain

15   minimum contacts" with the relevant forum "such that the

16   maintenance of the suit does not offend 'traditional notions of

17   fair play and substantial justice.'"  <u>Int'l Shoe Co. v. Washington</u>,

18   326 U.S. 310, 316 (1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457,

19   463 (1940)).  If a defendant has sufficient minimum contacts,

20   personal jurisdiction may be founded on either general jurisdiction

21   or specific jurisdiction.  <u>Panavision Int'l, L.P. v. Toeppen</u>, 141

22   F.3d 1316, 1320 (9th Cir. 1998).  The relevant forum for this

23   case's minimum contacts analysis is the United States.  <u>Go-Video,</u>

24   <u>Inc. v. Akai Elec. Co. Ltd.</u>, 885 F.2d 1406, 1415-16 (9th Cir.

25   1989).

26   ///

27   ///

28   ///

**United States District Court**
For the Northern District of California

1  **IV.**   **DISCUSSION**

2       **A.**   **Waiver**

3       Plaintiffs first argue that Defendant waived its personal

4  jurisdiction defense.  As a general rule, if a party files a

5  responsive pleading or makes a Rule 12 motion but does not raise

6  personal jurisdiction as a defense, the party waives the right to

7  raise personal jurisdiction later.  See Fed. R. Civ. P. 12(h);

8  Parker v. United States, 110 F.3d 678, 682 (9th Cir. 1997).

9  Plaintiffs cite to some of Defendant's earlier MDL filings, in

10 other plaintiffs' cases, to support their contention that Defendant

11 has waived its personal jurisdiction argument in this case by not

12 raising it in other cases.  See Opp'n at 11 (citing various

13 filings).  Plaintiffs argue that because their complaints are

14 essentially the same as the other plaintiffs' were, and Defendant

15 is represented by the same counsel, Defendant must have waived its

16 personal jurisdiction defense in this case by not raising it in

17 previous, separate cases.  Id. at 11-12 (citing In re Polyester

18 Staple Antitrust Litig., No. 3:03-CV-1516, 2008 WL 906331, at *16-

19 18 (W.D.N.C. Apr. 1, 2008)).  Plaintiffs also contend that simply

20 by being part of this litigation for over five years, Defendant has

21 waived its personal jurisdiction defense by implication.

22      Plaintiffs are correct about the basic law of Rule 12 and

23 waiver, but they are wrong about how it works in this particular

24 instance.  The Ninth Circuit has held that even if actions are

25 closely related -- as when different plaintiffs sue the same

26 defendant in different cases but based on the same facts --

27 defendants do not waive their personal jurisdiction defense by

28 raising it only in a later action, so long as the defendant is not

1  independently seeking affirmative relief in the same court

2  concerning the same transaction or occurrence.  Dow Chem. Co. v.

3  Calderon, 422 F.3d 827, 835-36 (9th Cir. 2005); see also Fahmy v.

4  Jay-Z, No. CV 07-5715 CAS (PJWx), 2008 WL 4792383, at *4 (C.D. Cal.

5  Oct. 29, 2008) (citing Calderon).  In this case, even though

6  Defendant has been haled into court by numerous plaintiffs

7  regarding the same alleged activity, Defendant has not

8  affirmatively decided to seek relief on its own, thereby consenting

9  to the jurisdiction of this Court.  See Calderon, 422 F.3d at 836.

10      Defendant has not therefore waived its personal jurisdiction

11  defense in Plaintiffs' cases.  In answering some of the earlier

12  pleadings, Defendant expressly reserved its right to raise a

13  personal jurisdiction later, and it has never otherwise waived that

14  right in these particular cases.  See MTD at 7 n.12 (citing

15  responsive pleadings).  Plaintiffs' separate argument that

16  Defendant waived its personal jurisdiction defense in these cases

17  by participating in this MDL for years is wrong for the same

18  reasons stated above, and because it is based on one non-binding,

19  out-of-circuit case.  In the Ninth Circuit, Defendant is free to

20  change its litigation strategy in these Plaintiffs' cases even if

21  it took a separate course in other cases.

22      **B.   Service**

23      Defendant argues that the Best Buy, Costco, Sears, and Target

24  complaints were not properly served on it, because it is a Chinese

25  corporation and, under Rule 4, the complaints should have been

26  served to its foreign process agent.[3]  Instead, per court order,

27  ───────────────

28  [3] Plaintiffs argue that Defendant waived this defense, but the
Court rejects this argument for the same reasons the Court rejected
Plaintiffs' personal jurisdiction waiver argument.

United States District Court
For the Northern District of California

those plaintiffs served Defendant by mail at the Washington, D.C. office of Defendant's counsel.  Defendant contends that the Court's order and Plaintiffs' service contravene Rule 4, the Hague Convention,[4] Ninth Circuit precedent, and Defendant's due process rights.

On June 27, 2012, the Court issued an Order permitting some of the DAPs to serve Defendant by mail at its D.C. counsel's offices under Rule 4(f)(3), which provides for service on a defendant in a foreign country "by other means not prohibited by international agreement as the Court orders."  ECF No. 1241 ("Service Order"). This Rule's purpose is to require a process by which a defendant gets actual notice of claims against it, and an opportunity to be heard.  Id. at 2 (citing Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002)).

Defendant argues, first, that the Service Order is facially deficient because Rule 4(f) empowers courts to authorize service of process "at a place not within any judicial district of the United States," but the Service Order specifically permits service in Washington D.C., which is obviously within a United States judicial district.  Neither the Ninth Circuit nor any lower court has taken up Defendant's interpretation, likely because the court orders generally crafted under Rule 4(f)(3) require transmission of service papers to a foreign defendant via a domestic conduit like a law firm or agent -- ultimately, the foreign individual is served and thereby provided notice outside a United States judicial

---

[4]  In this case, the "Hague Convention" is short for the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361.

**United States District Court**
For the Northern District of California

1   district, in accordance with Rule 4's plain language.  <u>Rio</u>, 284

2   F.3d at 1016 ("Applying th[e] proper construction of Rule 4(f)(3) .

3   . . . , trial courts have authorized a wide variety of alternative

4   methods of service including . . . delivery to defendant's

5   attorney."); <u>Richmond Techs., Inc. v. Aumtech Bus. Solutions</u>, No.

6   11-CV-02460-LHK, 2011 WL 2607158, at *12-13 (N.D. Cal. July 1,

7   2011) (discussing service on a foreign defendant via domestic

8   counsel under Rule 4(f)(3)).  There is no contradiction here.

9       Second, Defendant argues that, contrary to Rule 4(f)(3),

10  service on Defendant is "prohibited by international agreement"

11  because although China is a signatory to the Hague Convention, it

12  objected to Article 10 of the Convention, which allows for service

13  "by postal channels" or through judicial officers, official, or

14  other persons in the state of destination provided that the

15  signatory does not object.  MTD at 24.  Defendant contends that

16  because China objected to Article 10, service on Defendant can only

17  be effected through the Chinese Central Authority in Beijing.  <u>Id.</u>

18  Defendant therefore claims that the Service Order "contradicts

19  clear dicta" from <u>Rio</u>, is inconsistent with Rule 4(f)(3), and

20  violates the Hague Convention.  Defendant is wrong on each point.

21  While <u>Rio</u> did involve a non-signatory country, its reasoning is

22  still applicable so long as service on Defendant is court-directed

23  and not prohibited by an international agreement.  <u>See In re LDK</u>

24  <u>Solar Secs. Litig.</u>, No. C-07-05182 WHA, 2008 WL 2415186, at *3

25  (N.D. Cal. June 12, 2008).  In this case, as in <u>In re LDK Solar</u>,

26  Plaintiffs did not seek to effect service by Chinese postal

27  channels: Defendant was served through its counsel's Washington,

28  D.C. office.  <u>Id.</u>  The Hague Convention does not prohibit this, and

**United States District Court**
For the Northern District of California

as this Court has noted, it is a common method of service under Rule 4(f)(3).  <u>Richmond Techs.</u>, 2011 WL 2607158, at *13; <u>In re LDK Solar</u>, 2008 Wl 2415186, at *3.

Finally, the Court finds that this method of service was reasonably calculated to apprise Defendant of the pendency of the action and afford it an opportunity to be heard.  <u>Rio</u>, 284 F.3d at 1016-17 (citing <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950)).  Defendant obviously has notice of the action, and Freshfields is skillfully representing its interests.  The Court therefore finds that service effected under the Service Order comports with due process.  The Court accordingly rejects Defendant's argument that it was improperly served in this case.

**C.   <u>Personal Jurisdiction</u>**

There are two forms of personal jurisdiction: "specific" and "general."  "A court may exercise specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." <u>Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.</u>, 284 F.3d 1114, 1123 (9th Cir. 2002) (citing <u>Hanson v. Denckla</u>, 357 U.S. 235, 251 (1958)). "Alternatively, a defendant whose contacts are substantial, continuous, and systematic is subject to a court's general jurisdiction even if the suit concerns matters not arising out of his contact with the forum."  <u>Id.</u> (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415 n.9 (1984)). Plaintiffs do not argue that the Court has general jurisdiction over Defendant.  They only argue that the Court should exercise specific jurisdiction.

Courts may exercise specific personal jurisdiction depending on "the nature and quality of the defendant's contacts in relation to the cause of action." <u>Data Disc</u>, 557 F.2d at 1287.  The Ninth Circuit applies a three-prong test when analyzing a claim of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

<u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff bears the burden of satisfying the first two prongs, and if he or she fails to satisfy either, specific jurisdiction is not established.  <u>Sher v. Johnson</u>, 911 F.2d 1357, 1361 (9th Cir. 1990).  If the plaintiff satisfies these prongs, the burden shifts to the defendant "to present a compelling case" that the exercise of jurisdiction would not be reasonable.  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477 (1985).

Plaintiffs argue that the Court has specific jurisdiction over Defendant because (1) Defendant purposefully directed its CRT conspiracy activity at the United States, or purposefully availed itself of U.S. laws and markets; and (2) Plaintiffs' claims arise out of Defendant's conspiracy activity in the United States. Plaintiffs also contend that exercising personal jurisdiction over

**United States District Court**
For the Northern District of California

1  Defendant would be reasonable.  Defendant opposes all of these
2  points.

3      The Ninth Circuit applies a three-part test for purposeful
4  direction: "the defendant allegedly must have (1) committed an
5  intentional act, (2) expressly aimed at the forum state, (3)
6  causing harm that the defendant knows is likely to be suffered in
7  the forum state."  Id.  When considering the first prong,
8  "something more than mere foreseeability" of an effect in the forum
9  state is necessary.  Schwarzenegger, 374 F.3d at 805 (internal
10  citation and quotation omitted).  And as the Ninth Circuit has
11  warned, "the foreign-acts-with-forum-effects jurisdictional
12  principle must be applied with caution, particularly in an
13  international context."  Kramer Motors, Inc. v. British Leyland,
14  Ltd., 628 F.2d 1175, 1178 (9th Cir. 1980) (internal quotations and
15  citations omitted).  The parties do not argue the first prong here
16  -- that Defendant committed some intentional act -- but they do
17  dispute whether Sharp has established that Defendant purposefully
18  directed activities at the United States and that Sharp's claims
19  against Defendant arose out of, or result from, Defendant's forum-
20  related activities.

21      An antitrust defendant "expressly aims" an intentional act at
22  a forum state when its allegedly anticompetitive behavior is
23  targeted at a resident of the forum, or at the forum itself.  See
24  In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d
25  716, 743 (9th Cir. 2013).  Defendant provides a declaration that it
26  contends controverts all of Plaintiffs' allegations of purposeful
27  direction.  See generally Kinoshita Decl.  That declaration, from a
28  former employer of Defendant who now works for Panasonic,

establishes that Defendant had its principal place of business in China; never manufactured CRTs outside China; was never registered or licensed to do business in the United States; never held property in the United States; never operated offices, plants, or warehouses in the United States; never had shipping addresses, phone listings, or bank accounts in the United States; never paid property or income tax in the United States; never had employees located in the United States; never solicited business in the United States or hosted an English-language website; never had a registered agent for process in the United States; never maintained inventory in the United States; never sold CDTs or CPTs in the United States; and shipped and sold the majority of its CRTs to Chinese customers. Id. ¶¶ 7-23. It also asserts that none of Plaintiff's evidence suggests any inference that Defendant directed its conduct toward the United States, and avers that even though Panasonic bought CRTs from Defendant in China and sold them (or incorporated them into products sold in) the United States, Defendant had no control over the CRTs after they left its possession. See MTD at 14-15. Defendant therefore concludes that Plaintiff fails to make an uncontroverted, prima facie case for purposeful direction or availment. Id. at 17-18.

Neither Defendant's motion nor its reply brief responds to the more detailed facts that Plaintiff provides in support of its argument for specific jurisdiction. As described above, supra Section II, Plaintiffs provide specific evidence supporting their allegations that Defendant, on its own and with co-conspirators, fixed CRT prices abroad and ensured that United States customers paid supracompetitive prices. Defendant specifically shared CRT

**United States District Court**
For the Northern District of California

marketing information, including sales to United States customers
like Wal-Mart, Circuit City, and Sears, with co-conspirators,
including Samsung Defendants.  See Loh Decl. Ex. O.  The alleged
co-conspirators coordinated pricing decisions in relation to United
States market conditions, and discussed CRT prices in U.S. dollars.
Mar. 9, 2001 Notes at CHU00029194E (stating that though Defendant
did not attend that meeting, another party was responsible for
delivering price increase news to Defendant so that producers would
not confuse customers by providing lower prices); Aug. 23, 1999
Notes at CHU00029179.02E (confirming that Defendant had raised CRT
prices from USD 29.50 to USD 30.50 following communications with
another alleged co-conspirator).

Further, deposition testimony never controverted by Defendant
states specifically that Defendant sold CRTs to AKEI, which the
witness states was a New Jersey-based Matsushita affiliate that
sold televisions in the United States.  Liu Depo. 423:17-424:11.
Regardless of whether Defendant coordinated sales with Panasonic,
direct sales to a United States business would suffice to show
purposeful direction of anticompetitive activity to the United
States.  As to the relationship between Panasonic and Defendant,
Defendant claims that any information it shared with Panasonic was
publicly available customs information about products not
manufactured by Defendant, and that the fact that a Panasonic
employee, Mr. Kinoshita, shared his CRT-related travel and meeting
schedule with Defendant is irrelevant.  See Reply at 3-4 (citing
Loh Decl. Exs. L-N).  The Court rejects Defendant's arguments.
Ownership or control over Panasonic would be one thing, but in this
case, Plaintiffs allege that Defendant specifically coordinated

**United States District Court**
For the Northern District of California

with Panasonic such that the prices of products ultimately sold by Panasonic would be inflated due to the price-fixed CRTs they contained.  Defendant does not have to direct Panasonic's activity in order for this to count as purposeful direction: it is enough for Defendant to have known that Panasonic was going to sell these goods in the United States, which evidence shows Defendant indeed knew.  This is all sufficient to show purposeful direction.

Regarding the last prong of specific jurisdiction analysis, Plaintiffs must make a prima facie showing that Defendant's United States-directed actions were a "but-for" cause of their claims. Bancroft & Masters, Inc. v. Augusta Nat., Inc., 223 F.3d 1082, 1088 (9th Cir. 2000); Unocal, 248 F.3d at 924.  This "but-for" test requires "some nexus between the cause of action and the defendant's activities in the forum."  Shute v. Carnival Cruise Lines, 897 F.2d 377, 387 (9th Cir. 1988), overruled on other grounds, 499 U.S. 585 (1991).  The Court finds that Plaintiffs establish this by pleading that they paid artificially high prices for CRT Products, directly as a result of Defendant's activities.

The Court finds that Sharp has met the standard for specific jurisdiction.  The next issue is whether exercising jurisdiction would be reasonable.  Defendant argues that it would not be.  In determining whether the exercise of jurisdiction over a foreign defendant would be reasonable, the Court must consider seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to

**United States District Court**
For the Northern District of California

1    the plaintiff's interest in convenient and effective
     relief, and (7) the existence of an alternative forum.

2    Bancroft & Masters, 223 F.3d at 1088 (citing Burger King, 471 U.S.

3    at 476-77).  It is Defendant's burden to demonstrate

4    unreasonableness.  Id. at 1088.

5        Defendant argues exercising jurisdiction over it would be

6    unreasonable given the burden it would bear to defend itself, its

7    lack of contacts with the United States, its limited involvement in

8    the alleged conspiratorial activity, and the existing Defendants'

9    joint and several liability.

10       First, the Court agrees that Defendant's burden would be

11   substantial, but the inconvenience for Defendant must be so great

12   as to constitute a deprivation of due process, which is not the

13   case here.  See Panavision, 141 F.3d at 1323.

14       Second, costliness and evidentiary complexity are simply parts

15   of modern, multinational litigation, especially when the claims at

16   issue concern an international price-fixing conspiracy.  Defendant

17   contends that the Court should be unwilling to find that serious

18   burdens on it, a foreign defendant, are outweighed by "minimal

19   interests on the part of the plaintiff or the forum State," MTD at

20   20 (quoting Asahi Metal Indus. Co. v. Super. Ct., 480 U.S. 102, 115

21   (1987)), but this case is not like Asahi: there, the plaintiff was

22   a Taiwanese corporation and the defendant was Japanese, and the

23   only question left in the case was an indemnification claim,

24   leaving California with little interest in adjudicating the matter

25   and plaintiff with no interest in litigating the case in

26   California.  Id. at 114.  Here, the DAPs are American corporations

27   alleging to have been harmed by purchasing price-fixed goods from

28

**United States District Court**
For the Northern District of California

1  Defendant and other alleged co-conspirators.  These are not minimal

2  interests.

3      Third, Defendant contends that because it is a Chinese

4  citizen, China's sovereignty creates a high barrier to finding

5  reasonableness in this forum.  MTD at 20 (citing Glencore Grain,

6  284 F.3d at 1126).  Defendant also cites the Supreme Court's recent

7  reversal of the Ninth Circuit in Daimler AG v. Bauman, 134 S. Ct.

8  746, 761 (2014), in which the Supreme Court stated that the Ninth

9  Circuit should have paid more heed to the risks of international

10  comity given its expansive holding on general jurisdiction.  The

11  Supreme Court's concern was based on due process's requirement of

12  "fair play and substantial justice."  Id. (citing Int'l Shoe, 326

13  U.S. at 316).  Critically, in Glencore Grain, the court found no

14  conduct directed to or related to a United States forum because the

15  contracts giving rise to that case's dispute were negotiated

16  abroad, involved only foreign companies, and required performance

17  in a foreign country.  284 F.3d at 1124.  In the present case, as

18  noted above, Defendant specifically directed price-fixing activity

19  toward and into the United States.  Even though much of the alleged

20  conspiracy-related activity occurred abroad, just as it did with

21  many other Defendants, the end target and end result was the United

22  States.  Further, the Court does not find general jurisdiction in

23  this case: only specific jurisdiction is at issue, which lessens

24  the concerns of comity raised in Daimler AG.  This case is to some

25  degree international in character, which would weigh in Defendant's

26  favor, see Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc., 1 F.3d

27  848, 852 (9th Cir. 1993), but in this case the Court finds that

28  Defendant's United States-oriented activity plus the narrower

18

**United States District Court**
For the Northern District of California

jurisdictional basis of specific jurisdiction mitigates that concern.

Fourth, Defendant contends that United States federal courts have no significant interest in adjudicating claims against it. MTD at 20 (citing Leonis, 1 F.3d at 852). Not so. Plaintiffs are United States citizens who allege that they were harmed by Defendant, which directed its activities toward the United States. That gives United States federal courts an interest in hearing this case. Burger King, 471 U.S. at 473.

Fifth and sixth, Defendant argues that adjudication against it in this forum is not necessary to grant Plaintiffs complete relief, since all Defendants would be jointly and severally liable for any alleged harm resulting in Defendant's anticompetitive activities. Further, Defendant asserts that injunctive relief would be merely symbolic because the alleged conspiracy ended more than six years ago, and Defendant ceased manufacturing CRTs before that. MTD at 20-21. The Court disagrees: these factors ask the Court to consider the most efficient judicial resolution of the controversy and the importance of the forum to the plaintiff's interest in convenient and effective relief, and in this case, since the Court has handled the MDL for years, the efficiency, effectiveness, and convenience of this matter's resolution are best served by keeping the case in this forum, regardless of the ultimate remedy (if any) granted to Plaintiffs. While some evidence and many witnesses related to Defendant may be abroad, the same is true of most parties in this case, and a combination of modern technology and coordination among the parties has so far ensured that evidentiary

**United States District Court**
For the Northern District of California

1   matters are handled efficiently.   See Reply at 10-11 (expressing

2   concern about the location of witnesses and evidence).

3        Finally, concerning the existence of an alternative forum,

4   Defendant contends that while Plaintiffs' allegations support no

5   damages claims anywhere, the locus of Defendant's activity in China

6   suggests that Plaintiffs could sue Defendant there, where private

7   antitrust actions are permitted and where any judgment obtained

8   against Defendant would need to be enforced anyway.   MTD at 20-21;

9   Reply at 10-11.   Plaintiffs note that China has a shorter

10  limitations period, Opp'n at 21 (citing In re World War II Era

11  Japanese Forced Labor Litig., 164 F. Supp. 2d 1160, 1182 (N.D. Cal.

12  2001) (discussing statutes of limitation in China)), which weighs

13  against finding China an adequate alternative forum.   Defendant

14  contends that since Plaintiffs have had notice of potential claims

15  since at least November 2007, they have no excuse for not bringing

16  their case in China within the limitations period.   Reply at 10-11.

17  The Court does not find Defendant's argument compelling.   It is not

18  clear, based solely on this statute of limitations dispute, whether

19  China has the same tolling rules as the United States, and given

20  the significance of those doctrines to this case (especially where

21  fraudulent concealment is concerned), the Court is in no position

22  to find China an adequate alternative forum.   This factor counts

23  toward neither party.

24       The Court finds, under the circumstances described above, that

25  exercising specific jurisdiction over Defendant for the purposes of

26  this case would be reasonable.

27  ///

28  ///

20

**V.  CONCLUSION**

As explained above, the Court DENIES Defendant Beijing-Matsushita Color CRT Company's motion to dismiss the various Direct Action Plaintiffs' complaints.

IT IS SO ORDERED.

Dated: March 13, 2014

_____

UNITED STATES DISTRICT JUDGE