**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. C 07-5944 SC |
| | MDL No. 1917 |
| This Document Relates to: | ORDER GRANTING IN PART AND DENYING IN PART TECHNOLOGIES DISPLAYS AMERICAS, LLC'S MOTION TO DISMISS SHARP'S FIRST AMENDED COMPLAINT |
| Sharp Elecs. Corp. v. Hitachi, Ltd., No. 13-cv-01173 | |

I.   **INTRODUCTION**

   Now before the Court is Defendant Technologies Displays Americas, LLC's ("TDA" or "Defendant") motion to dismiss Sharp's[1] first amended complaint.  ECF Nos. 2234 ("MTD"), 2030 ("FAC") (filed under seal).  The matter is fully briefed, ECF Nos. 2280 ("Opp'n"), 2318 ("Reply"), and appropriate for decision without oral argument, per Civil Local Rule 7-1(b).  As explained below, the Court GRANTS in part and DENIES in part the motion.

---

[1] "Sharp" collectively includes Sharp Electronics Corporation ("SEC") and Sharp Electronics Manufacturing Company of America, Inc. ("SEMA").

United States District Court
For the Northern District of California

## II.   BACKGROUND

The parties are familiar with this case's facts.  Accordingly, the Court will only summarize some of the facts that are relevant to the instant motion

The underlying antitrust conspiracy in this MDL -- to fix prices of cathode ray tubes ("CRTs"), including color picture tubes ("CPTs"), and products containing CRTs ("CRT Products") -- is alleged to have lasted between March 1, 1995 and December 2007 (the "Relevant Period").  The plaintiffs in all of this MDL's cases contend that the defendants kept the conspiracy secret, in order to avoid putting the plaintiffs (and anyone else) on notice.  But on November 8, 2007, the European Commission ("EC") issued a press release stating that its officials had raided several unnamed CRT manufacturers.  Shortly thereafter, other countries' law enforcement agencies conducted similar raids, and within a few weeks, Defendants Panasonic, Samsung SDI, and Philips all acknowledged that they were under investigation.

Sharp filed an individual complaint on March 15, 2013, opting out of the putative DPP class.  Sharp's complaint asserts claims under Section 1 of the Sherman Act, 15 U.S.C. et seq.; the California Cartwright Act, Cal. Bus. & Prof. Code § 16700 et seq.; the California UCL, Cal. Bus. & Prof. Code § 17200 et seq.; New York's Donnelly Act, N.Y. Gen. Bus. L. § 340 et seq.; the New York UCL, N.Y. Gen. Bus. L. § 349 et seq.; the New Jersey Antitrust Act, N.J. Stat. § 56:9-1 et seq.; and the Tennessee Antitrust Act, Tenn. Code Ann. § 47-25-101 et seq.

Sharp's complaint alleges the following facts about TDA specifically, and the Court takes them as true at this time.

Before 2005, TDA was known as "Thomson Displays America" and was a subsidiary of Defendant Thomson Consumer Electronics, Inc. ("Thomson Consumer").  FAC ¶ 72.  In 2005, Videocon Industries, Inc. ("Videocon") acquired the CRT business of Defendants Thomson Consumer and Thomson SA (collectively "Thomson"), though Thomson SA allegedly maintained at least a 10 percent ownership stake in Videocon during the conspiracy period.  Id. 197.  Thomson is alleged to have been involved in the conspiracy between 1999 and Videocon's acquisition of the Thomson CRT business in 2005.  Id. ¶ 199.  Between 2005 and 2007, Videocon participated in several conspiracy-related meetings, continuing Thomson's practice, though Sharp alleges that Thomson remained involved in the conspiracy through Videocon and TDA.  Id. ¶¶ 198.

TDA was responsible for Videocon's sales and marketing of CRT Products in North America, and Sharp alleges on information and belief that Videocon dominated or controlled TDA's policies and affairs, and directed TDA's pricing of CRT Products.  Id. ¶ 199. Sealed facts indicate that at least two former Thomson employees who had previously attended conspiracy meetings then began working for TDA, while Videocon continued to participate in conspiratorial information sharing and meetings.  Id.  Under Videocon's direction, TDA and its Mexican subsidiary and co-conspirator Technologies Displays Mexicana distributed CRTs to direct purchasers, ensuring that the prices for those products did not undercut the pricing agreements reached at the conspiratorial meetings.  Id. ¶ 200.

All of Sharp's claims are subject to four-year statutes of limitations, except the New York UCL and the Tennessee Antitrust Act, which have three-year statutes of limitations.  TDA now moves

1  to dismiss Sharp's FAC.

2

3  **III.   LEGAL STANDARD**

4      A motion to dismiss under Federal Rule of Civil Procedure

5  12(b)(6) "tests the legal sufficiency of a claim." Navarro v.

6  Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

7  on the lack of a cognizable legal theory or the absence of

8  sufficient facts alleged under a cognizable legal theory."

9  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

10  1988).  "When there are well-pleaded factual allegations, a court

11  should assume their veracity and then determine whether they

12  plausibly give rise to an entitlement to relief." Ashcroft v.

13  Iqbal, 556 U.S. 662, 664 (2009).  However, "the tenet that a court

14  must accept as true all of the allegations contained in a complaint

15  is inapplicable to legal conclusions.  Threadbare recitals of the

16  elements of a cause of action, supported by mere conclusory

17  statements, do not suffice." Id. at 678 (citing Bell Atl. Corp. v.

18  Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a

19  complaint must be both "sufficiently detailed to give fair notice

20  to the opposing party of the nature of the claim so that the party

21  may effectively defend against it" and "sufficiently plausible"

22  such that "it is not unfair to require the opposing party to be

23  subjected to the expense of discovery." Starr v. Baca, 652 F.3d

24  1202, 1216 (9th Cir. 2011).

25      Claims sounding in fraud are subject to the heightened

26  pleading requirements of Federal Rule of Civil Procedure 9(b),

27  which requires that a plaintiff alleging fraud "must state with

28  particularity the circumstances constituting fraud." See Kearns v.

**United States District Court**
For the Northern District of California

4

1  _Ford Motor Co._, 567 F.3d 1120, 1124 (9th Cir. 2009).  "To satisfy

2  Rule 9(b), a pleading must identify the who, what, when, where, and

3  how of the misconduct charged, as well as what is false or

4  misleading about [the purportedly fraudulent] statement, and why it

5  is false."  _United States ex rel Cafasso v. Gen. Dynamics C4 Sys.,_

6  _Inc._, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks

7  and citations omitted).

8

9  **IV.   DISCUSSION**

10      **A.   Whether Sharp Adequately Pled a Claim Against TDA**

11      TDA argues that Sharp's complaint is purely speculative and

12  insufficient to meet Rule 8's plausibility standard.  MTD at 3.

13  According to TDA, Sharp fails to plead enough detail about TDA's

14  alleged involvement in the conspiracy, despite having the benefit

15  of the Court's prior order on Sharp's pleading in a different case.

16  _Id._ (citing ECF No. 1960 ("Order Granting Thomson MTD")).  TDA

17  contends that Sharp never alleges what TDA agreed to do, or did, in

18  furtherance of the alleged conspiracy, such as attending specific

19  meetings.  Further, TDA states that alleging a parent-subsidiary

20  relationship, without more, is not enough to make TDA liable for

21  the torts of any of its affiliates -- mere corporate status is

22  insufficient.  Finally, TDA argues that its sale of CRTs does not

23  automatically make it a co-conspirator, nor does it show that TDA

24  was at any of the alleged conspiratorial meetings.  All of these,

25  TDA claims, render Sharp's allegations implausible.

26      Rule 8 demands "more than an unadorned, the-defendant-

27  unlawfully-harmed-me accusation."  _Iqbal_, 556 U.S. at 678.  But the

28  Court finds that Sharp has alleged enough specifics as to TDA to

United States District Court
For the Northern District of California

1  warrant its pleadings surviving a motion to dismiss, particularly

2  given the Court's frequent statements that plaintiffs in complex,

3  multinational antitrust cases do not have to plead detailed,

4  defendant-by-defendant allegations -- they only have to make

5  allegations plausibly suggesting that each defendant participated

6  in the conspiracy.  See In re Cathode Ray Tube (CRT) Antitrust

7  Litig., 738 F. Supp. 2d 1011, 1019 (N.D. Cal. 2010); In re TFT-LCD

8  (Flat Panel) Antitrust Litig., 599 F. Supp. 2d 1179, 1184-85 (N.D.

9  Cal. 2009).  The Court has dismissed claims against certain

10  defendants in this action because plaintiffs had essentially copied

11  other pleadings and, in responsive briefs to motions to dismiss,

12  defended their allegations' paucity of facts by comparing their

13  complaints to the much-older pleadings the Court had held

14  sufficient to survive a Rule 12(b)(6) motion, instead of referring

15  to their own pleadings.  See Sept. 26 Order at 5.

16      That reasoning still stands, but the Court does not find that

17  Sharp has slipped below the pleading requirements set by Rule 8.

18  Sharp's complaint does not set out elaborate fact pleading that

19  explains every step Sharp contends TDA to have taken, but it does

20  not have to go that far.  In complex antitrust litigation, motive

21  and intent play leading roles, and the proof is largely in the

22  alleged conspirators' hands.  Poller v. Columbia Broad. Sys., Inc.,

23  368 U.S. 464, 473 (1962).  Accordingly, pleadings must be

24  plausible, but they do not have to be in the form of precisely

25  detailed, defendant-by-defendant allegations.  In re CRT, 738 F.

26  Supp. 2d at 1017.

27      Sharp has pled that this particular conspiracy is structured

28  in such a way that its allegations about TDA's business and

**United States District Court**
For the Northern District of California

behavior make sense in terms of adequately stating TDA's involvement and putting it on notice of Sharp's claims against it. Sharp does not plead dates on which TDA is alleged to have attended conspiratorial meetings, but Sharp does plead that Videocon, which allegedly did attend those meetings, dominated and controlled TDA, and that executives who attended price-fixing meetings worked for Videocon and TDA.  These pleadings are sufficient.  And while Sharp has apparently obtained written discovery responses from TDA, no depositions have been taken and only a "small number of documents" have been provided.  See Opp'n at 11 n.4.  TDA is very new to this litigation and has not been involved in any capacity, unlike, for example, the Thomson Defendants.  This puts Sharp's pleadings in a different posture, though the pleadings that are on the record rise above being mere labels and conclusions.

### B.   Statutes of Limitation

The doctrine of fraudulent concealment focuses on actions that a defendant took to prevent a plaintiff from learning of grounds for filing a suit.  See Lukovsky v. City & Cnty. of S.F., 535 F.3d 1044, 1051 (9th Cir. 2008).  To invoke the doctrine, plaintiffs must allege facts demonstrating that they could not have discovered the alleged violations by exercising reasonable diligence. Rosenfeld v. JPMorgan Chase Bank N.A., 732 F. Supp. 2d 952, 964 (N.D. Cal. 2010); see also Hubbard v. Fid. Fed. Bank, 91 F.3d 75, 79 (9th Cir. 1996).  A fraudulent concealment claim must be alleged with particularity under Rule 9(b).  Noll v. eBay, Inc., 282 F.R.D. 462, 468 (N.D. Cal. 2012).

TDA notes that one of Sharp's earlier briefs concedes that Sharp can only assert fraudulent concealment through November 2007.

**United States District Court**
For the Northern District of California

1   MTD at 8 n.4 (citing ECF No. 2194).  However, TDA contends that

2   even if Sharp could plead concealment, the ground for tolling would

3   be inapplicable because Sharp's complaint was filed outside the

4   limitations periods even if its claims were tolled through November

5   2007.  Id.  Sharp views this statement as TDA's conceding that

6   Sharp's allegations show fraudulent concealment through November

7   2007, Opp'n at 15, though TDA maintains that Sharp's complaint

8   simply lacks any facts supporting fraudulent concealment on TDA's

9   part, Reply at 5.

10       The Court finds that Sharp's complaint has sufficiently pled

11  fraudulent concealment until November 14, 2007, the latest date

12  this Court has held to provide actual or inquiry notice to the

13  DAPs.  See In re Cathode Ray Tube (CRT) Antitrust Litig., No. C-07-

14  5944, 2013 WL 4505701, at *3 (N.D. Cal. Aug. 21, 2013); see also In

15  re Rubber Chems. Antitrust Litig., 504 F. Supp. 2d 777, 789 (N.D.

16  Cal. 2007) ("[I]t is generally inappropriate to resolve the fact-

17  intensive allegations of fraudulent concealment at the motion to

18  dismiss stage, particularly where the proof relating to the extent

19  of the fraudulent concealment is alleged to be largely in the hands

20  of the alleged conspirators.").  This renders their claims time-

21  barred unless they are able to invoke a tolling doctrine or some

22  equivalent that would cover the time period from November 14, 2007

23  to the filing of the present complaint.

24       To overcome this deficiency, Sharp asserts (1) tolling based

25  on American Pipe and similar class-action tolling doctrines, and

26  (2) the pendency of criminal proceedings and investigations against

27  several Defendants and co-conspirators.

28  ///

United States District Court
For the Northern District of California

1        i.    **American Pipe Tolling**

2        American Pipe held that commencement of a class action

3    suspends the statute of limitation as to all putative members of

4    the class up to and until class certification is denied or the

5    plaintiff opts out of the class.   414 U.S. at 554; Williams v.

6    Boeing Co., 517 F.3d 1120, 1136 (9th Cir. 2008); Emp'rs-Teamsters

7    Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors,

8    498 F.3d 920, 925 (9th Cir. 2007).   "Tolling is fair in such a case

9    because when the complaint is filed defendants have notice of the

10    'substantive claims being brought against them.'"   Williams, 517

11    F.3d at 1136 (quoting Crown, Cork & Seal Co. v. Parker, 462 U.S.

12    345, 352-53 (1983)).

13        TDA was not a defendant in any of the previously filed cases.

14    This alone is enough for the Court to hold American Pipe tolling

15    inapplicable in this case.   See Biotech. Value Fund, L.P. v. Celera

16    Corp., -- F. Supp. 2d --, 2013 WL 6731900, at *8 (N.D. Cal. Dec.

17    20, 2013) (not applying American Pipe to a defendant not named in

18    any putative class action); Tech Data Corp. v. AU Optronics Corp.,

19    No. 07-MD-1827, 2012 WL 3236065, at *5 (N.D. Cal. Aug. 6, 2012)

20    (same).   Sharp argues that the Court should apply American Pipe

21    tolling anyway, because there is "at least a fact question as to

22    whether TDA was on notice of the claims sufficient to trigger

23    American Pipe tolling."   Opp'n at 21.   Sharp cites no binding law

24    to support its point.   The Court does not find Sharp's arguments

25    convincing.   There is no authority behind the contention that the

26    Court could or should apply American Pipe to toll claims against a

27

28

**United States District Court**
For the Northern District of California

1  party not named as a defendant in any case that could toll an

2  action.[2]

3      **ii.    <u>Governmental Action</u>**

4          **a.   <u>New York</u>**

5      Sharp argues that the federal government's actions on the CRT

6  conspiracy toll the statute of limitations for its Donnelly Act

7  claims, beginning with the DOJ's criminal actions against CRT

8  conspirators in February 2009.  Sharp Opp'n at 11-12.  They base

9  this argument not on federal antitrust tolling provisions, but on

10 the Donnelly Act's own tolling provision, which tolls Donnelly Act

11 limitations periods pending federal antitrust proceedings:

12       Whenever any civil or criminal proceeding is instituted
         by the federal government to prevent, restrain, or
13       punish violations of the federal antitrust laws, the
         running of the period of limitations in respect of every
14       right of action arising under sections three hundred
         forty, three hundred forty-two and three hundred forty-
15       two-a of this article, based in whole or in part on any
         matter complained of in the federal proceeding, shall be
16       suspended during the pendency of said proceeding and for
         one year thereafter . . . .
17

18 N.Y. Gen. Bus. Law § 342-c.  Sharp further notes that, elsewhere in

19 this litigation, Defendants have conceded that Donnelly Act claims

20 are tolled due to pending federal investigations.  Opp'n at 12

21 (citing ECF No. 1422 ("Defs. Joint Reply ISO MTD DAP Claims")).

22     Defendants contend that their earlier motion was directed

23 toward other DAPs, whose complaints were filed in November 2011.

24 Reply at 15.  They also argue that the New York tolling provision

25 does not save Sharp's claim.  <u>Id.</u> at 14-15.  According to

26 Defendants, tolling under that statute commences only as of the

27 ─────────────────────

28 [2] Even if <u>American Pipe</u> applied, as explained in the concurrently
   filed Order on Defendants' Joint Motion to Dismiss, it would not
   toll any of Sharp's state law claims.

**United States District Court**
For the Northern District of California

1   date an indictment was filed, and lasts through the pendency of

2   prosecution.  Id. at 15 (citing Hinds Cnty., Miss. v. Wachovia Bank

3   N.A., 885 F. Supp. 2d 617, 628 (S.D.N.Y. 2012) (applying tolling

4   under the federal provision, not Section 342-c); Dungan v. Morgan

5   Drive-Away, Inc., 570 F.2d 867, 871 (9th Cir. 1978) (same)).

6   Defendants claim that because Sharp has alleged nothing as to the

7   duration of any criminal proceedings, except fifty-five days

8   between March 18, 2011 and May 12, 2011 when two defendants entered

9   plea agreements, there is no way for Sharp to account for the

10  period between November 2007 and March 2013.  Id.

11       The Court is not convinced by Defendants' argument.  The Court

12  finds that § 16(i) tolling applies based on the open indictments in

13  this case.  For 15 U.S.C. § 16(i) to apply, a plaintiff must show

14  by a "comparison of the two complaints on their face[s]" that there

15  is a significant overlap between the two actions, such "that the

16  matters complained of in the government suit bear a real relation

17  to the private plaintiff's claim for relief."  Leh v. Gen. Petro.

18  Grp., 382 U.S. 54, 59 (1965).  The Court finds accordingly here:

19  the conspiracy is the same, many of the actors are the same, and

20  the cases will share many facts.  They overlap significantly, and

21  the government's cases bear real relations to Sharp's case.  Id.

22       First, one criminal matter, pending between March 18, 2011

23  until its closure in August 30, 2012, tolls claims under § 16(i)

24  for that time period plus a year.  Further, based on J.M. Dungan v.

25  Morgan Drive-Away, Inc., 570 F.2d 867 (9th Cir. 1978), tolling

26  under § 16(i) begins at least at the indictment stage, though the

27  Court notes that Dungan had the benefit of at least one completed

28  criminal case.  However, the Ninth Circuit's holding was in fact

**United States District Court**
For the Northern District of California

based on the theory that the return of a grand jury indictment fits the statutory language of § 16(i) more comfortably than empanelling alone would, since the purpose of an indictment is the prevention, restraint, or punishment of antitrust violations.  In this case, the open indictments Sharp references remain pending, and the Court finds <u>Dungan</u> instructive here: tolling under § 16(i) may begin at least with the return of an indictment, and absent facts or law indicating that the Court cannot apply tolling because not much has happened in those cases, the Court finds that under current precedent tolling will apply from February 10, 2009 to the present as to Sharp's Donnelly Act claims.

**V.   <u>CONCLUSION</u>**

As explained above, Sharp's state law claims are DISMISSED WITH PREJUDICE, with the exception of Sharp's Donnelly Act claims. All federal claims are undisturbed.

IT IS SO ORDERED.

Dated: March 13, 2014

_____

UNITED STATES DISTRICT JUDGE