**United States District Court**
For the Northern District of California

1

2

3                    IN THE UNITED STATES DISTRICT COURT

4                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 |
| | Case No. C-07-5944-SC |
| This Order Relates To: | ORDER GRANTING IN PART AND DENYING IN PART THE THOMSON DEFENDANTS' MOTIONS TO DISMISS |
| <u>Sharp Electronics Corp. v. Hitachi Ltd.</u>, No. C-13-1173-SC; | |
| <u>Electrograph Systems, Inc. v. Technicolor SA</u>, No. 13-cv-05724; | |
| <u>Alfred H. Siegel v. Technicolor SA</u>, No. 13-cv-05261; | |
| <u>Best Buy Co., Inc. v. Technicolor SA</u>, No. 13-cv-05264; | |
| <u>Interbond Corporation of America v. Technicolor SA</u>, No. 13-cv-05727; | |
| <u>Office Depot, Inc. v. Technicolor SA</u>, No. 13-cv-05726; | |
| <u>Costco Wholesale Corporation v. Technicolor SA</u>, No. 13-cv-05723; | |
| <u>P.C. Richard & Son Long Island Corporation v. Technicolor SA</u>, No. 13-cv-05725; | |
| <u>Schultze Agency Services, LLC v. Technicolor SA, Ltd.</u>, No. 13-cv-05668; | |
| <u>Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA</u>, No. 3:13-cv-05262; | |
| <u>Target Corp. v. Technicolor SA</u>, No. 13-cv-05686 | |

**United States District Court**
For the Northern District of California

## I.   INTRODUCTION

Now before the Court are Defendants Thomson SA's ("Thomson SA") and Thomson Consumer Electronics, Inc.'s ("Thomson Consumer") (collectively "Defendants" or the "Thomson Defendants') motions to dismiss the above-captioned Sharp Plaintiffs' ("Sharp")[1] first amended complaint for lack of personal jurisdiction, as well as the complaints of various direct action plaintiffs ("DAPs").[2]   ECF No. 2235-4 ("TSA MTD Sharp"), 2236 ("TC MTD Sharp") (filed under seal), 2353 ("TC MTD DAP"), 2355-10 ("TSA MTD DAP") (filed under seal).[3] The motions are fully briefed.[4]   Finding this matter suitable for disposition without oral argument, Civ. L.R. 7-1(b), the Court GRANTS in part and DENIES in part each Thomson Defendant's motion.

///

---

[1] "Sharp" collectively includes Sharp Electronics Corporation ("SEC") and Sharp Electronics Manufacturing Company of America, Inc. ("SEMA").  Sharp's complaint is filed under seal at ECF No. 2030-4.

[2] When convenient to do so, the Court refers collectively to Sharp and the DAPs as "Plaintiffs."

[3] The DAPs' pleadings appear under seal in the following cases: Best Buy Co, Inc. v. Technicolor SA, No. 13-cv-05264; Siegel v. Technicolor SA, No. 13-cv-00141; Costco Wholesale Corp. v. Technicolor SA (f/kla Thomson SA) et al., No. 13-cv-05723; Electrograph Systems, Inc. v. Technicolor SA, No. 2: 13-cv-05724; Interbond Corp. of Am. v. Technicolor SA, No. 13-cv-05727; Office Depot, Inc. v. Technicolor SA, No. 13-cv-05726; P.C. Richard & Son Long Island Corp. v. Technicolor SA, No. 13-cv-05725; Sears, Roebuck & Co. v. Technicolor SA, No. 13-cv-05262; Schultze Agency Services, LLC v. Technicolor SA, No. 13-cv-05668; and Target Corp. v. Technicolor SA, No. 13-cv-05686.  Rather than citing pertinent paragraphs from each DAPs' complaint, the Court often refers to one or two example pleadings, since the DAP complaints are essentially identical.

[4] ECF Nos. 2377-4 ("DAP Opp'n to TC") (filed under seal), 2378-4 ("DAP Opp'n to TSA") (filed under seal), 2286 ("Sharp Opp'n to TC"), 2289-4 ("Sharp Opp'n to TSA") (filed under seal), 2317 ("TC Reply Sharp"), 2319 ("TSA Reply Sharp"), 2397 ("TC Reply DAP"), 2398-4 ("TSA Reply DAP") (filed under seal).

**II.    BACKGROUND**

As it must on a motion to dismiss, the Court takes all of the following allegations as true.

Thomson SA is a French holding company with its principal place of business in Issy-les-Moulineaux, France.   Sharp FAC ¶ 71; Office Depot FAC ¶ 23.   Thomson SA "sold its CRTs internally to its television-manufacturing division, which had plants in the United States and Mexico, and to other television manufacturers in the United States and elsewhere."   Id.   Thomson SA sold its CRT business in 2005, but Sharp alleges that between March 1, 1995, and December 2007 (the "Relevant Period"), Thomson SA "manufactured, marketed, sold and/or distributed [products containing CRTs ("CRT Products")] either directly or through its subsidiaries or affiliates throughout the United States."   Id.   Further, after selling its CRT business to defendant and alleged co-conspirator Videocon Industries, Ltd. ("Videocon"), Thomson SA remained in a close working relationship with Videocon.   Id.   Under this relationship, Thomson SA helped Videocon set up and run its CRT business, had a seat on Videocon's board, maintained at least a 10 percent ownership stake in Videocon during the Relevant Period, and used Videocon and other subsidiaries or affiliates to manufacture, market, sell, or distribute CRT Products directly or indirectly throughout the United States.   Id.

Defendant Thomson Consumer Electronics Corporation[5] is a wholly owned United States-based subsidiary of Thomson SA, through

---

[5] Plaintiffs sometimes refer to Thomson SA and Thomson Consumer collectively as "Thomson," but since resolution of this motion requires the Court to evaluate the two entities' relationships and connections to this jurisdiction, the Court refers to them separately.

**United States District Court**
For the Northern District of California

1    which Thomson SA manufactured CRTs.  Sharp FAC ¶ 72; Office Depot

2    FAC ¶ 24.  Plaintiffs contend that "[Thomson SA] dominated and/or

3    controlled the finances, policies, and/or affairs of [Thomson

4    Consumer] relating to the antitrust violations alleged in [the

5    complaints]."  Sharp FAC ¶ 72; Office Depot FAC ¶ 25.  Thomson

6    Consumer is based in Indiana, and its CRT plants were located in

7    Pennsylvania and Indiana.  Sharp FAC ¶ 72.  Videocon bought those

8    plants, and as stated above, Plaintiffs contend that Thomson

9    Consumer and Thomson SA worked together, using Videocon, to

10   continue the CRT conspiracy in the United States after 2004.  <u>See</u>

11   Office Depot FAC ¶¶ 23-27; Sharp FAC ¶¶ 71-75.

12        Plaintiffs sued the Thomson Defendants under federal and state

13   antitrust laws.  They allege that Thomson SA fixed prices on CRTs

14   that its subsidiary Thomson Consumer sold in the United States.

15   Plaintiffs allege specifically that Thomson SA was never merely a

16   holding company or corporate shell, but rather that it had

17   controlling roles in its subsidiaries, exercising central

18   management functions over them, and that it derived between 40 and

19   50 percent of its revenue from the United States, which Thomson

20   SA's CEO called "[Thomson SA's] most important market."  <u>See</u> Sharp

21   FAC ¶ 73; Electrograph FAC ¶ 39; Office Depot FAC ¶¶ 23-26.

22   Further, Plaintiffs assert that Thomson SA's management and board

23   of directors set its and Thomson Consumer's direction, oversaw

24   United States profits and losses for Thomson Consumer's CRT

25   businesses, and planned and approved business decisions relating to

26   the United States.  <u>Id.</u>  Plaintiffs refer to five senior executives

27   who transitioned between executive and board roles with Thomson SA

28   and Thomson Consumer between 1997 and the present.  <u>Id.</u>  Plaintiffs

**United States District Court**
For the Northern District of California

also state that other Thomson SA "Executive Officers" had operational responsibilities in the United States, being based out of Thomson Consumer's offices despite purportedly being employees of Thomson SA.  Id.

Plaintiffs also allege that between 1995 and 2005, "Thomson" -- referring jointly to Thomson SA and Thomson Consumer -- participated in numerous CRT-price-fixing meetings in the United States and abroad.  Sharp FAC ¶ 196; Office Depot FAC ¶ 138; Electrograph FAC ¶ 152.  Only Thomson Consumer attended some of these meetings, but Sharp notes that Thomson SA's employees met with other alleged co-conspirators to discuss price-fixing among various parties, that some of these discussions concerned the United States CRT market, and that Thomson SA participated in numerous confidential meetings allegedly related to the CRT conspiracy in Europe.  Id.

Both Thomson Defendants move to dismiss on laches, statutes of limitations, and pleading grounds.  Thomson SA also moves to dismiss for lack of personal jurisdiction.  With its jurisdictional motions, Thomson SA files several declarations and exhibits stating (among other things) that Thomson SA is purely a holding company, with no operations, offices, employees, property, books, records, bank accounts, agents, registrations, or business activities in the United States.  ECF Nos. 2235-1 ("Roberts Decl.") Exs. 1-6 (copies of annual reports, declarations, affidavits, and orders from other courts), 2355-8 ("Roberts Decl. DAP") Exs. 1-6 (same as Sharp case). The declarations, exhibits, and affidavits also assert that Thomson SA has never manufactured CRTs or CRT Products in the United States or elsewhere, and that Thomson SA and Thomson

**United States District Court**
For the Northern District of California

1   Consumer maintain separate corporate structures, offices, finances,

2   and business activities.  According to the declaration, Thomson

3   Consumer -- over which the Court undisputedly has jurisdiction --

4   was solely responsible for CRT sales, marketing, and pricing in the

5   United States.

6       Sharp asserts claims under Section 1 of the Sherman Act, 15

7   U.S.C. et seq.; the California Cartwright Act, Cal. Bus. & Prof.

8   Code § 16700 et seq.; the California Unfair Competition Law

9   ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; New York's

10  Donnelly Act, N.Y. Gen. Bus. L. § 340 et seq.; the New York Unfair

11  Competition Law ("UCL"), N.Y. Gen. Bus. L. § 349 et seq.; the New

12  Jersey Antitrust Act, N.J. Stat. § 56:9-1 et seq.; and the

13  Tennessee Antitrust Act, Tenn. Code Ann. § 47-25-101 et seq.  All

14  of Sharp's claims are subject to four-year statutes of limitations,

15  except the New York UCL and the Tennessee Antitrust Act, which have

16  three-year statutes of limitations.

17      The DAPs are a group of opt-out plaintiffs alleging the same

18  essential facts described above.  See, e.g., Electrograph FAC ¶¶ 1,

19  125-181, 152-55, 188-90, 234-38 (providing a representative DAP

20  pleading).  The primary difference between their actions and

21  Sharp's case is that they filed their complaints in November 2011

22  (without naming either Thomson Defendant), later located additional

23  evidence implicating Thomson Consumer, and sought to amend their

24  complaints adding Thomson Consumer on March 26, 2013, a motion the

25  Court denied primarily for insufficient facts on September 26,

26  2013.  ECF No. 1959 ("Order Denying Amendment").  The Court had

27  found that, given the DAPs' paucity of allegations supporting their

28  claims, it would have been a prejudicial waste to add Thomson

Consumer to the case.  Id.  The DAPs filed complaints adding, among
other entities, the Thomson Defendants on November 11-13, 2013, and
some DAPs amended their complaints on December 20, 2013.  The DAPs
now add substantially more detail to their pleadings, some of which
comes from defendants who settled in late 2013.  The Thomson
Defendants moved to dismiss the new DAP complaints on January 27,
2014.  The DAPs assert a variety of causes of action against the
Thomson Defendants, including federal and state claims that largely
overlap with Sharp's, with additional state claims from Kansas,
Michigan, and Minnesota.  The DAPs' allegations (and the parties'
arguments concerning them) overlap substantially with Sharp's, and
where they do not, the Court notes any relevant distinctions.

### III.  **LEGAL STANDARD**

####    A.    **Jurisdiction - Rule 12(b)(2)**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure,
defendants may move to dismiss for lack of personal jurisdiction.
The Court may consider evidence presented in affidavits and
declarations determining personal jurisdiction.  Doe v. Unocal
Corp., 248 F.3d 915, 922 (9th Cir. 2001).  The plaintiff bears the
burden of showing that the Court has personal jurisdiction over
defendants.  See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154
(9th Cir. 2006).  "[T]his demonstration requires that the plaintiff
make only a prima facie showing of jurisdictional facts to
withstand the motion to dismiss."  Id. (quotations omitted).
"[T]he court resolves all disputed facts in favor of the plaintiff
. . . ."  Id. (quotations omitted).  "The plaintiff cannot simply
rest on the bare allegations of its complaint, but uncontroverted

**United States District Court**
For the Northern District of California

allegations in the complaint must be taken as true." <u>Mavrix Photo,</u>
<u>Inc. v. Brand Techs., Inc.</u>, 647 F.3d 1218, 1223 (9th Cir. 2011)
(quotations and citations omitted).  The Court may not assume the
truth of allegations that are contradicted by affidavit.  <u>Data</u>
<u>Disc, Inc. v. Sys. Tech. Assocs., Inc.</u>, 557 F.2d 1280, 1284 (9th
Cir. 1977).

Courts may exercise personal jurisdiction over a defendant
only if (1) a statute confers jurisdiction and (2) exercising
jurisdiction would comport with constitutional due process.  <u>See</u>
<u>Action Embroidery Corp. v. Atlantic Embroidery, Inc.</u>, 368 F.3d
1174, 1177 (9th Cir. 2004).  Since the federal Clayton Act, 15
U.S.C. § 22, fulfills the statutory requirement for jurisdiction in
this case, the question on this motion is whether exercising
jurisdiction would comport with due process.  For a court to
exercise personal jurisdiction over a non-resident defendant
consistent with due process, the defendant must have "certain
minimum contacts" with the relevant forum "such that the
maintenance of the suit does not offend 'traditional notions of
fair play and substantial justice.'"  <u>Int'l Shoe Co. v. Washington</u>,
326 U.S. 310, 316 (1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457,
463 (1940)).  If a defendant has sufficient minimum contacts,
personal jurisdiction may be founded on either general jurisdiction
or specific jurisdiction.  <u>Panavision Int'l, L.P. v. Toeppen</u>, 141
F.3d 1316, 1320 (9th Cir. 1998).  The relevant forum for this
case's minimum contacts analysis is the United States.  <u>Go-Video,</u>
<u>Inc. v. Akai Elec. Co. Ltd.</u>, 885 F.2d 1406, 1415-16 (9th Cir.
1989).
///

### B.   **Failure to State a Claim - Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." <u>See</u> <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009).  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." <u>United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.</u>, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks and citations omitted).

///

**IV.    THOMSON SA'S MOTION TO DISMISS THE SHARP COMPLAINT**

  **A.    Personal Jurisdiction**

There are two forms of personal jurisdiction: "specific" and "general."  "A court may exercise specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum."  <u>Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.</u>, 284 F.3d 1114, 1123 (9th Cir. 2002) (citing <u>Hanson v. Denckla</u>, 357 U.S. 235, 251 (1958)).  "Alternatively, a defendant whose contacts are substantial, continuous, and systematic is subject to a court's general jurisdiction even if the suit concerns matters not arising out of his contact with the forum."  <u>Id.</u> (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415 n.9 (1984)).

Thomson SA argues that the Court lacks either general or specific jurisdiction over it.  Before Sharp filed an amended complaint, Thomson SA had moved to dismiss on jurisdictional grounds and Sharp, opposing that motion but working with a somewhat bare pleading, had relied primarily on an agency theory of jurisdiction premised on the relationship between Thomson SA and Thomson Consumer.  Now Sharp has added facts to its complaint, and also asserts more targeted arguments, mainly in support of a specific jurisdiction finding.  As discussed below, the Court finds that Sharp has pled facts supporting a finding of specific jurisdiction, and Thomson SA's responses fail to controvert Sharp's pleadings.  The Court does not address general jurisdiction or Sharp's alternative motion for jurisdictional discovery in this Order.

///

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

###### i.    **Specific Jurisdiction**

Courts may exercise specific personal jurisdiction depending on "the nature and quality of the defendant's contacts in relation to the cause of action." Data Disc, 557 F.2d at 1287.  The Ninth Circuit applies a three-prong test when analyzing a claim of specific jurisdiction:

> (1)  The  non-resident  defendant  must  purposefully direct  his  activities  or  consummate  some  transaction with  the  forum  or  resident  thereof;  or  perform  some act  by  which  he  purposefully  avails  himself  of  the privilege  of  conducting  activities  in  the  forum, thereby  invoking  the  benefits  and  protections  of  its laws;
>
> (2)  the  claim  must  be  one  which  arises  out  of  or relates  to  the  defendant's  forum-related  activities; and
>
> (3)  the  exercise  of  jurisdiction  must  comport  with fair  play  and  substantial  justice,  i.e.  it  must  be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff bears the burden of satisfying the first two prongs, and if he or she fails to satisfy either, specific jurisdiction is not established.  Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990).  If the plaintiff satisfies these prongs, the burden shifts to the defendant "to present a compelling case" that the exercise of jurisdiction would not be reasonable.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

Sharp argues that the Court has specific jurisdiction over Thomson SA because (1) Thomson SA purposefully directed its CRT conspiracy activity at the United States and (2) Sharp's claims arise out of Thomson SA's conspiracy activity in the United States. Sharp also contends that exercising personal jurisdiction over

11

**United States District Court**
For the Northern District of California

1  Thomson SA would be reasonable.  Thomson SA opposes all of these
2  points.

3       The Ninth Circuit applies a three-part test for purposeful
4  direction: "the defendant allegedly must have (1) committed an
5  intentional act, (2) expressly aimed at the forum state, (3)
6  causing harm that the defendant knows is likely to be suffered in
7  the forum state."  Id.  When considering the first prong,
8  "something more than mere foreseeability" of an effect in the forum
9  state is necessary.  Schwarzenegger, 374 F.3d at 805 (internal
10 citation and quotation omitted).  And as the Ninth Circuit has
11 warned, "the foreign-acts-with-forum-effects jurisdictional
12 principle must be applied with caution, particularly in an
13 international context."  Kramer Motors, Inc. v. British Leyland,
14 Ltd., 628 F.2d 1175, 1178 (9th Cir. 1980) (internal quotations and
15 citations omitted).  The parties do not argue the first prong --
16 that Thomson SA committed some intentional act -- but they do
17 dispute whether Sharp has established that Thomson SA purposefully
18 directed activities at the United States and that Sharp's claims
19 against Thomson SA arose out of, or result from, Thomson SA's
20 forum-related activities.

21      An antitrust defendant "expressly aims" an intentional act at
22 a forum state when its allegedly anticompetitive behavior is
23 targeted at a resident of the forum, or at the forum itself.  See
24 In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d
25 716, 743 (9th Cir. 2013).  Sharp alleges that Thomson SA oversaw
26 worldwide sales of CRTs to the United States, and also that in
27 2003, Thomson SA's worldwide general manager for marketing and
28 sales negotiated with one of Sharp's subsidiaries' managers

United States District Court
For the Northern District of California

1  regarding Thomson SA's sales of CRTs to a Sharp subsidiary in the

2  United States.  Sharp FAC ¶ 73.  Sharp also pleads that Thomson SA

3  was involved in CRT production and pricing discussions relating to

4  Mexican-made CRTs sold in the North American market, though it is

5  unclear whether these CRTs were meant for sale in the United

6  States.  Id.  Further, Sharp provides a list of meetings in which

7  Thomson SA allegedly took part, some of which explicitly concerned

8  price-fixing agreements between Thomson SA and other alleged co-

9  conspirators concerning the sales of CRT Products in the United

10  States.  Id. ¶ 196.  Thomson SA's declarations do not controvert

11  these pleadings.  They concern primarily issues of general

12  jurisdiction, like the corporate relationship between Thomson SA

13  and Thomson Consumer, but they do not controvert Sharp's facts and

14  pleadings regarding Thomson SA's United States-targeted activity.

15  As to this prong, Thomson SA argues that it did not make or sell

16  CRTs in the United States, and that many of Sharp's pleadings

17  concern the ambiguous "Thomson" entity instead of Thomson SA or

18  Thomson Consumer specifically.

19      Defendant fails to rebut Sharp's contentions on this issue.

20  In a multinational price-fixing conspiracy like the one at issue in

21  this case, defendants do not have to make the price-fixed product

22  themselves within the bounds of the forum state in order for the

23  state to have jurisdiction.  They only have to target intentional

24  acts (e.g., price-fixing activities) toward the forum state,

25  knowing the effects of the activity will be felt there.  In re W.

26  States, 715 F.3d at 743; see also Wash. Shoe Co. v. A-Z Sporting

27  Goods Inc., 704 F.3d 668, 673 (9th Cir. 2012).  Thomson SA's

28  briefing on this issue largely misses the point or misreads Sharp's

**United States District Court**
For the Northern District of California

1   pleadings.  It makes some valid points about the FAC's occasional
2   reference to "Thomson" instead of Thomson SA or Thomson Consumer
3   individually -- a confusing move when it has not been definitively
4   established that they are effectively the same entity -- but
5   Thomson SA never directly addresses the fact that Sharp actually
6   pleads Thomson SA's direct involvement in price-fixing discussions
7   concerning products actually sold to and purchased in the United
8   States.  See TSA MTD Sharp at 12-13; TSA Reply Sharp at 4.

9       The Court is not persuaded by Thomson SA's argument that it is
10  equally plausible that some of these meetings related to European
11  CRT operations.  Sharp has pled that those meetings were
12  specifically related to the United States CRT market.  Moreover,
13  given the size of the North American market and, as this Court has
14  discussed numerous times, the fact that worldwide CRT effects could
15  have direct and known effects in the United States as a result of
16  an anticompetitive market, it is not plausible to argue that
17  Thomson SA's alleged discussions with huge, multinational CRT
18  business partners were somehow structured to avoid directing any
19  price-fixing activity to the United States, which all parties agree
20  was one of the largest CRT markets.  Thomson SA frequently cites
21  the Court's now-withdrawn order on Thomson SA's previous motion to
22  dismiss Sharp's complaint, but that complaint did not include the
23  present pleadings that Thomson SA fails to controvert or address.

24      Thomson SA cites Bancroft & Masters, Inc. v. Augusta National,
25  Inc., 223 F.3d 1082, 1087 (9th Cir. 2000), for the proposition that
26  express aiming requires more than a broad allegation that a foreign
27  act has foreseeable effects in the forum state, but again that is
28  not what Sharp asserts in this case.  Sharp pled that Thomson SA

had actual discussions with Sharp agents about CRT sales to the United States, while at the same time Thomson SA was engaged in price-fixing discussions with other co-conspirators.  This is not merely a foreseeable effect, and Thomson SA's contention that it did not manufacture or sell CRTs in the United States itself does not change the fact that Sharp has pled that Thomson SA expressly aimed price-fixing activity at the United States.

Regarding the last prong of specific jurisdiction analysis, Sharp must make a prima facie showing that Thomson SA's United States-directed actions were a "but-for" cause of its claims. Bancroft & Masters, 223 F.3d at 1088; Unocal, 248 F.3d at 924. This "but-for" test requires "some nexus between the cause of action and the defendant's activities in the forum." Shute v. Carnival Cruise Lines, 897 F.2d 377, 387 (9th Cir. 1988), overruled on other grounds, 499 U.S. 585 (1991).  Thomson SA argues that if Sharp cannot establish that Thomson SA aimed any intentional acts at the United States, it cannot meet this prong, so the Court cannot find specific jurisdiction.  TSA MTD Sharp at 14; TSA Reply Sharp at 4.  As noted above, the Court finds that Sharp satisfies the "intentional acts" prong, so Thomson SA's argument is inapposite.  Moreover, Sharp has established that its claims arise out of Thomson SA's activities in the forum.  Sharp bought CRTs in the United States from Thomson SA's affiliates, subsidiaries, or co-conspirators, and it alleges that Thomson SA fixed the prices of CRTs that its subsidiaries sold.

The Court finds that Sharp has met the standard for specific jurisdiction.  The next issue is whether exercising jurisdiction would be reasonable.  Thomson SA argues that it would not be.  In

United States District Court
For the Northern District of California

determining whether the exercise of jurisdiction over a foreign defendant would be reasonable, the Court must consider seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

Bancroft & Masters, 223 F.3d at 1088 (citing Burger King, 471 U.S. at 476-77).  It is the defendant's burden to demonstrate unreasonableness.  Id. at 1088.

Thomson SA argues that the burden imposed on it outweighs other concerns.  TSA MTD Sharp at 15 (citing Terracom v. Valley Nat'l Bank, 49 F.3d 555, 561 (9th Cir. 1995); Menken v. Emm, 503 F.3d 1050, 1061 (9th Cir. 2007)).  On this point, Thomson SA contends that it would hold a significant burden in such a complicated case, that many documents related to its now-sold CRT business would be in France, that it would have to contend with French criminal laws related to evidence used in foreign judicial proceedings, and that exercising jurisdiction over it would raise concerns regarding French sovereignty.

The Court agrees that Thomson SA's burden would be substantial, but the inconvenience for Thomson SA must be so great as to constitute a deprivation of due process.  See Panavision, 141 F.3d at 1323.  The Court does not find Thomson SA's arguments on this point to rise to that level.  Costliness and evidentiary complexity are simply parts of modern, multinational litigation; foreign litigants must always deal with their home states' laws;

**United States District Court**
For the Northern District of California

1    and if vague concerns about foreign sovereignty always outweighed

2    the merits of finding jurisdiction over a foreign defendant, it is

3    unlikely that a foreign corporation would ever be successfully sued

4    here.  True, if Thomson SA lacked any contacts with the United

5    States at all, and this forum had no interest whatsoever in hearing

6    this dispute, holding Thomson SA accountable in the United States

7    would raise due process concerns, but the Court finds that none of

8    those factors exist now.

9         Nor is the Court convinced by Thomson SA's other arguments on

10   these points.  First, as noted above, the Court has found that

11   Thomson SA purposefully interjected its activities into the United

12   States when in negotiated with Sharp's subsidiaries for the sale of

13   CRTs in the United States market, even if Thomson SA's involvement

14   in various price-fixing meetings did not rise to that level (which

15   it does).

16        Second, the fact that Thomson SA's stock was owned by the

17   French government in 1999 does not raise sovereignty concerns

18   substantial enough to find jurisdiction unreasonable.  Thomson SA

19   does not explain how pre-1999 corporate ownership actually affects

20   Sharp's claims at the present time.  Moreover, in this context it

21   is important to note that the Court's exercise of jurisdiction here

22   is a limited form of jurisdiction -- specific jurisdiction -- and

23   not general jurisdiction, so concerns about Thomson SA's exposure

24   to litigation (and the sovereignty concerns that entails) are more

25   limited.  See Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1333

26   (9th Cir. 1984); Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191,

27   1200 (9th Cir. 1988).

28

**United States District Court**
For the Northern District of California

1      Third, exercising jurisdiction over Thomson SA would not be

2  inefficient merely because Thomson Consumer is undisputedly within

3  the Court's jurisdiction too.  Both entities can be, and it is not

4  plausible that a wealthy, multinational corporation like Thomson SA

5  would be somehow overstressed at litigating one case, based on

6  specific jurisdiction, in the United States.  Even evaluated

7  asymmetrically, with Thomson SA's burden being accorded the highest

8  value in this analysis, the Court finds that Thomson SA fails to

9  meet its burden to show unreasonableness.  Exercising specific

10  jurisdiction is reasonable in this case.

11      **B.**    **Thomson SA's Other Arguments**

12      Thomson SA argues that even if the Court has jurisdiction over

13  it, the Court should dismiss some or all of Sharp's claims because

14  (1) they are time-barred under various statutes of limitations, (2)

15  they are barred by the doctrine of laches, and (3) they otherwise

16  fail to state cognizable claims.[6]

17      **i.**    **Statutes of Limitation**

18      Sharp filed this opt-out case in March 2013.  Thomson SA left

19  the CRT industry in 2005, and the Court has held that parties to

20  this case knew or should have known of the possibility of bringing

21  suit by November 2007, when various governments issued press

22  releases concerning the CRT price-fixing conspiracy and lawsuits

23  were filed around the world.  Sharp must therefore account for the

24  gap between potential limitations dates and its filing of this

25  suit, because all of its claims are subject to three- or four-year

---

26  [6] Thomson SA incorporates by reference portions Thomson Consumer's
27  motion to dismiss on these issues, TSA MTD Sharp 17 n.3, and Sharp
   incorporates by reference its opposition brief from that matter.
28  The Thomson Defendants and the DAPs do the same cross-incorporation
   of briefs in their case as well.

**United States District Court**
For the Northern District of California

1    statutes of limitations.   Sharp argues that Thomson SA's withdrawal

2    argument fails, that fraudulent concealment tolls at least part of

3    the relevant limitations periods, that related class-action suits

4    toll its claims under American Pipe, and that governmental-action

5    tolling applies to some of its other claims.

6                    **a.   Withdrawal**

7         Thomson SA argues that the statutes of limitation on Sharp's

8    claims began to run in July 2005, when Thomson SA sold its CRT

9    assets.   TSA Reply Sharp at 9.   It notes that, per Sharp's

10   pleadings, it sold its CRT assets and transferred related employees

11   to Videocon at that time, after which Thomson SA retained an equity

12   investment as a minority shareholder in Videocon.   Id. at 11

13   (citing Sharp FAC ¶ 75).   After that, according to Thomson SA,

14   Sharp pleads nothing plausibly suggesting that Thomson SA

15   participated in CRT- or conspiracy-related activities anywhere in

16   the world, and the latest CRT-related action Thomson SA took

17   allegedly occurred in Europe in November 2004, still beyond the

18   statutory period.   Id. (citing Sharp FAC ¶ 196).

19        Sharp maintains that the issue of withdrawal is irrelevant

20   because even if Thomson SA had withdrawn from the conspiracy in

21   2005, the fact that the conspiracy remained concealed until at

22   least November 2007 means that fraudulent concealment could still

23   apply to toll Sharp's claims.   Sharp notes that in Thomson SA's

24   motion, it relies on a superseded version of the Eleventh Circuit

25   case Morton's Market, Inc. v. Gustafson's Dairy, Inc., 198 F.3d 823

26   (11th Cir. 1999), amended by 211 F.3d 1224 (2000).   Thomson SA

27   cites the earlier, pre-amendment version of Morton's Market, in

28   which the Eleventh Circuit had held without qualification that

19

**United States District Court**
For the Northern District of California

claims against a defendant that "effectively withdrew" from the conspiracy prior to the limitations period, because it had sold all of its interests in the allegedly price-fixed industry.  198 F.3d at 837, 839.  The Eleventh Circuit amended its opinion, however, to state that filings as to that defendant were untimely unless the statute of limitations were tolled by fraudulent concealment, in which case the defendant would be liable for pre-withdrawal price-fixing activity.  211 F.3d at 1224.

This conclusion is in line with the way this Court has treated the matter of withdrawal at this posture.  Generally, it is a fact-sensitive affirmative defense, and even if a defendant argues that it had withdrawn from the conspiracy at the relevant time, it could still be liable for its pre-withdrawal price-fixing activity if the plaintiff adequately pled fraudulent concealment.  See In re Rubber Chems. Antitrust Litig., 504 F. Supp. 2d 777, 788 (N.D. Cal. 2007); In re Cathode Ray Tube (CRT) Antitrust Litig., No. C-07-5944-SC, 2013 WL 4505701, at *7 (N.D. Cal. Aug. 21, 2013).  Based on the record, the Court cannot find that Thomson SA had actually withdrawn from the conspiracy in 2005, because the full extent of Thomson SA's relationships with Videocon and Tech Displays remains somewhat unclear, and it is not possible for the Court to find at this time that Thomson SA had completely withdrawn from the conspiracy.  The Court therefore finds it inappropriate to dismiss Sharp's claims based on Thomson SA's alleged withdrawal from the conspiracy at this time, turning instead to the question of whether Sharp has adequately pled fraudulent concealment in its FAC.

///

///

**United States District Court**
For the Northern District of California

### b.   **Fraudulent Concealment**

The doctrine of fraudulent concealment focuses on actions that a defendant took to prevent a plaintiff from learning of grounds for filing a suit.  See Lukovsky v. City & Cnty. of S.F., 535 F.3d 1044, 1051 (9th Cir. 2008).  To invoke the doctrine, plaintiffs must allege facts demonstrating that they could not have discovered the alleged violations by exercising reasonable diligence. Rosenfeld v. JPMorgan Chase Bank N.A., 732 F. Supp. 2d 952, 964 (N.D. Cal. 2010).  A fraudulent concealment claim must be alleged with particularity under Rule 9(b).  Noll v. eBay, Inc., 282 F.R.D. 462, 468 (N.D. Cal. 2012).

Thomson SA contends that Sharp failed to plead with specificity that Thomson SA itself, as opposed to other defendants, affirmatively concealed its alleged participation in the conspiracy.  TSA Reply Sharp at 10 (citing Sharp FAC ¶¶ 232-37). It also argues that Sharp fails to plead that any defendant fraudulently concealed the conspiracy after Thomson SA's sale of its CRT assets in 2005, or that Sharp itself undertook any specific acts of diligence to discover potential claims.  Id. at 10-11.

In context, it is clear from the entire FAC, read along with Sharp's specific allegations of conspiracy-related conduct and fraudulent concealment, that Sharp meets the pleading standard for fraudulent concealment.  Sharp pleads as to Thomson SA, for example, that on several specific dates Thomson SA held or attended meetings concerning CRT price-fixing in France, Luxembourg, and England, and that the parties to those meetings agreed to keep them secret.  See Sharp FAC ¶¶ 196, 232-49 (discussing, in part, a Thomson entity's concern about consequences if meeting information

United States District Court
For the Northern District of California

1   were released in the European Union).  Elsewhere, as often

2   discussed in this case, Sharp explains that such secret meetings

3   have been a pattern among the alleged co-conspirators.  The Court

4   finds these facts particular and substantial enough to indicate

5   that Sharp has pled fraudulent concealment.[7]  Accordingly, the

6   Court finds that Sharp's claims are tolled under the doctrine of

7   fraudulent concealment until November 14, 2007, the latest date on

8   which the Court has found such tolling appropriate given worldwide

9   press releases and lawsuits concerning this alleged conspiracy.

10       With Sharp's claims tolled until November 14, 2007, Sharp must

11  still account for the nearly-six-year delay between November 2007

12  and March 15, 2013, when it filed its case.

13                   c.   **American Pipe Tolling**

14       American Pipe and Construction Co. v. Utah, 414 U.S. 538

15  (1974), held that commencement of a class action suspends the

16  statute of limitation as to all putative members of the class up to

17  and until class certification is denied or the plaintiff opts out

18  of the class.  Id. at 554; Williams v. Boeing Co., 517 F.3d 1120,

19  1135-36 (9th Cir. 2008); Emp'rs-Teamsters Local Nos. 175 & 505

20  Pension Trust Fund v. Anchor Capital Advisors, 498 F.3d 920, 925

21  (9th Cir. 2007).  "Tolling is fair in such a case because when the

22  complaint is filed defendants have notice of the 'substantive

23  claims being brought against them.'"  Williams, 517 F.3d at 1136

24  _____

25  [7] The Court is not convinced by Thomson SA's arguments that Sharp
    failed to allege due diligence, since that pleading requirement is
26  only meaningful when facts exist that would "excite the inquiry of
    a reasonable person," Conmar Corp. v. Mitsui & Co. (USA) Inc., 858
27  F.2d 499, 504 (9th Cir. 1988), and in this case, Sharp makes clear
    that it had no notice of the existence of an alleged price-fixing
28  conspiracy until November 2007.

1    (quoting Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 352-53

2    (1983)).  "However, the tolling rule does not 'leave[] a plaintiff

3    free to raise different or peripheral claims following denial of

4    class status.'"  Id. at 1136 (quoting Crown, 462 U.S. at 354

5    (Powell, J. concurring)) (alterations in original).

6        While courts should permit tolling when a lawsuit raises

7    claims that "concern the same evidence, memories, and witnesses as

8    the subject matter of the original class suit," it is still

9    important to "make certain . . . that American Pipe is not abused

10   by the assertion of claims that differ from those raised in the

11   original class suit."  Crown, 462 U.S. at 354; see also In re TFT-

12   LCD (Flat Panel) Antitrust Litig., No. M 07-1827 SI, C 12-4114 SI,

13   2013 WL 254873, at *2 & n.3 (N.D. Cal. Jan. 13, 2013) (declining to

14   apply American Pipe to state law claims not asserted in the

15   original class complaint); accord In re Copper Antitrust Litig.,

16   436 F.3d 782, 793-97 (7th Cir. 2006) (same).

17       Sharp contends that its claims against Thomson SA are tolled

18   under American Pipe from January 28, 2008, when two putative direct

19   purchaser classes filed complaints against Thomson SA, until March

20   16, 2009, when the earlier complaints were consolidated into the

21   familiar Direct Purchaser Plaintiffs' complaint, which did not name

22   Thomson SA as a defendant.  Sharp Opp'n at TC at 10-12.  Sharp then

23   makes a somewhat unclear argument suggesting that tolling might

24   extend further than March 16, 2009, because Thomson SA was

25   potentially on notice of future liability, but it does not explain

26   this point further or cite law supporting it.  Id. at 12.  Finally,

27   Sharp contends that an out-of-district case, In re Linerboard

28

**United States District Court**
For the Northern District of California

1  <u>Antitrust Litigation</u>, 223 F.R.D. 335 (E.D. Pa. 2004), should apply

2  to toll Sharp's state-law claims as well.

3       The Court finds that <u>American Pipe</u> tolls Sharp's federal

4  claims against Thomson SA between January 28, 2008, and March 16,

5  2009, but this is only 413 days (one year, one month, and sixteen

6  days), so Sharp is left several months to a year short of the

7  limitations period on its federal claims.  <u>American Pipe</u> does not

8  toll any of Sharp's state law claims because the direct purchaser

9  class actions it cites in support of its argument only asserted

10  federal claims, and in any event, none of the states whose law

11  Sharp cites would adopt cross-jurisdictional tolling, as noted in

12  the Court's concurrently filed order on the Defendants' Joint

13  Motion to Dismiss.[8]  Further, Sharp would not be able to toll any

14  of its indirect purchaser claims based on any direct purchaser

15  case.

16  ///

17

18  [8] The Tennessee Supreme Court has held that "[a]doption of [cross-jurisdictional tolling] would run the risk that Tennessee courts

19  would become a clearinghouse for cases that are barred in the jurisdictions in which they otherwise would have been brought."

20  <u>Maestas v. Sofamor Danek Grp., Inc.</u>, 33 S.W.3d 805, 808 (Tenn. 2000).  New Jersey limits tolling to former class members, and only

21  to the extent their claims were raised in the original putative class actions, so Sharp cannot rely on that case since the DPP

22  class did not assert a New Jersey claim.  <u>Del Sontro v. Cendant Corp.</u>, 223 F. Supp. 2d 563, 581 (D.N.J. 2002).  New York law is

23  unsettled, but the Court follows the Southern District of New York in declining to import <u>American Pipe</u> into New York state law.

24  <u>Soward v. Deutsche Bank AG</u>, 814 F. Supp. 2d 272, 281-82 (S.D.N.Y. 2011).  California explicitly forecloses <u>American Pipe</u>'s

25  application to cross-jurisdictional actions.  <u>Hatfield v. Halifax PLC</u>, 564 F.3d 1177, 1187 (9th Cir. 2009); <u>see also Clemens v.</u>

26  <u>DaimlerChrysler Corp.</u>, 534 F.3d 1017, 1025 ("California's interest in managing its own judicial system counsel[s] us not to import the

27  doctrine of cross-jurisdictional tolling into California law.").[8] Florida Statute section 95.051(1) sets out the exclusive list of

28  Florida tolling doctrines, which does not include cross-jurisdictional tolling.

**United States District Court**
For the Northern District of California

1    Therefore, all of Sharp's claims will be dismissed as time-

2   barred unless any of those claims is tolled by governmental action.

3                d.   <u>Governmental Action Tolling</u>

4    Sharp argues that its claims are tolled by 15 U.S.C. § 16(i),

5   which reads:

6           Whenever any civil or criminal proceeding is instituted
            by the United States to prevent, restrain, or punish
7           violations of any of the antitrust laws, but not
            including an action under section 15a of this title, the
8           running of the statute of limitations in respect to
            every private or State right of action arising under
9           said laws and based in whole or in part on any matter
            complained of in said proceeding shall be suspended
10          during the pendency thereof and for one year thereafter
            . . . .
11

12   Sharp's brief avoids addressing exactly which claims would be

13   tolled, but to be clear, § 16(i) only applies to federal law, not

14   state law.  15 U.S.C. § 12 (stating that the statute only applies

15   to an express list of federal law); <u>Nashville Milk Co. v. Carnation</u>

16   <u>Co.</u>, 355 U.S. 373, 376 (1958) ("[T]he definition contained in

17   [Section] 1 of the Clayton Act is exclusive.  Therefore it is of no

18   moment . . . that [a statute] may be colloquially described as an

19   'anti-trust' statute.").  Accordingly, the only questions remaining

20   in the parties' briefs is whether § 16(i) tolls Sharp's federal

21   claim, and whether New York's Donnelly Act, which includes a

22   tolling provision modeled on the federal provision, will also toll

23   Plaintiff's Donnelly Act claim.

24    For § 16(i) to apply to a federal claim, a plaintiff must show

25   by a "comparison of the two complaints on their face[s]" that there

26   is a significant overlap between the two actions, such "that the

27   matters complained of in the government suit bear a real relation

28   to the private plaintiff's claim for relief."  <u>Leh v. Gen. Petro.</u>

**United States District Court**
For the Northern District of California

1  <u>Grp.</u>, 382 U.S. 54, 59 (1965).  On this point, Thomson SA argues

2  that the indictments on which Sharp relies are limited to

3  allegations that the indicted defendants participated in a

4  conspiracy involving color display tubes ("CDTs," a type of CRT)

5  "for use in computer monitors and other products with similar

6  technological requirements."  TC MTD Sharp at 15; TC MTD Sharp Exs.

7  A-D ("Indictments").  Thomson SA contends that the indictments

8  contain no allegations regarding the color picture tube ("CPT", a

9  different type of CRT") market, and that they also all concern

10  alleged anticompetitive activities taking place in Asian markets,

11  not in North America or Europe.  TC MTD Sharp at 15-16.  Thomson SA

12  also argues that because the indicted individuals are fugitives, it

13  is unlikely that any proceedings will occur in their cases, so

14  permitting governmental-action tolling would essentially allow

15  plaintiffs like Sharp to toll their claims forever.  TSA Reply

16  Sharp at 13-14 (citing <u>Ariz. State Bd. for Charter Schs. v. U.S.</u>

17  <u>Dep't of Educ.</u>, 464 F.3d 1003, 1008 (9th Cir. 2006); <u>Credit Suisse</u>

18  <u>Secs. (USA) LTD v. Simmonds</u>, 132 S. Ct. 1414, 1420 (2012)).  The

19  Ninth Circuit addressed the latter point in <u>Dungan v. Morgan Drive-</u>

20  <u>Away, Inc.</u>, 570 F.2d 867, 868-72 (9th Cir. 1987), holding that §

21  16(i) must be applied in a way that both strengthens private

22  antitrust enforcement and provides a statute of repose.

23      The Court is not convinced by Thomson SA's contention that the

24  indictments based on CDTs, instead of CPTs, renders the markets so

25  different that these actions are dissimilar for purposes of §

26  16(i).  Sharp's case, like the other plaintiffs in this action,

27  concerns both CDTs and CPTs, and the Court has often noted the

28  similarity in these markets.  <u>See, e.g.</u>, <u>In re Cathode Ray Tube</u>

**United States District Court**
For the Northern District of California

1   (CRT) Antitrust Litig., No. 07-5944-SC, 2013 WL 5391159, at *3-4

2   (N.D. Cal. Sept. 19, 2013) (discussing the CRT market generally,

3   including CPTs and CDTs).  Further, the Court rejects Thomson SA's

4   attempt to limit the indictments' relevance to particular criminal

5   defendants or geographical regions.  This is a worldwide,

6   multinational antitrust case, and Sharp's allegations (like the

7   other plaintiffs') are premised partly on the contention that

8   price-fixing in one region tends to affect prices elsewhere.  See

9   Sharp FAC ¶ 224.

10      The Court is also not convinced that permitting tolling based

11  on the Indictments, even when the indicted individuals are

12  fugitives and their cases have been inactive for some time,

13  produces an "absurd result."  Thomson SA cites case law supporting

14  the uncontroversial rule of statutory construction stating that

15  statutes should not be interpreted in a way that would produce

16  absurd results.  See Ariz. State Bd. for Charter Schs., 464 F.3d at

17  1008.  This is not really an issue of statutory interpretation,

18  though: it is an application of the statute to facts.

19      The more apt case is Credit Suisse, a case concerning the

20  tolling provision of § 16(b) of the Securities Exchange Act of

21  1934, 15 U.S.C. § 78p(a).  That provision has nothing to do with 15

22  U.S.C. § 16(i).  Section 16(b) allows a corporation or security

23  holder of that corporation to sue corporate insiders who realize

24  profits resulting from purchase and sale, or sale and purchase, of

25  the corporation's securities within a six-month period, though they

26  must bring suit within two years after the date the profit was

27  realized.  A separate part of the Securities Exchange Act, § 16(a),

28  requires insiders to publicly disclose such transactions.  Thomson

SA appears to be analogizing to the rule the Supreme Court reviewed in Credit Suisse: a Ninth Circuit holding that § 16(b) applied to toll a plaintiff's claims even if she already knew of the conduct at issue (and had sued on it). See id. at 1419-20.

That holding was based on the Ninth Circuit's view that § 16(b) tolled all actions brought under it until the § 16(a) disclosure was filed. Id. at 1419. According to the Ninth Circuit, such a rule was necessary because otherwise, an unscrupulous insider could avoid the salutary effect of § 16(b) by failing to file § 16(a) disclosures, thereby concealing from prospective plaintiffs the information necessary to file § 16(b) claims. Id. The Supreme Court disagreed, holding first that the statute's plain language started a two-year clock from the time the insider realized a profit from the sale, not from the time a § 16(a) statement was filed. Id. The Supreme Court then noted that the Ninth Circuit's rule was inequitable in part because insiders would be compelled either to file potentially unnecessary § 16(a) disclosures or face § 16(b) litigation in perpetuity, even though plaintiffs had been aware of the grounds for their suit for years. Id. at 1419-20.

None of Thomson SA's cases counsels interpreting § 16(i) to say anything other than what it does: when the federal government brings an antitrust action, private plaintiffs with similar enough cases per laws interpreting § 16(i) can toll their claims for the pendency of the government's case plus one year. See Credit Suisse, 132 S. Ct. at 1419 (stating that in analyzing a tolling provision, courts are to refer first to the statute's text, instead of beginning with equitable principles). Even if the Court were to

United States District Court
For the Northern District of California

evaluate Thomson SA's arguments in terms of equity here, the facts have not established that it would be inequitable for Sharp to toll its claims: the government has not concluded the cases for which it issued the Indictments, and the Court is in no position to assume (as Thomson SA does) that those cases may as well be put to rest forever.  The Court does not know this, and if the government does close those cases, the parties will then know very clearly when the tolling period will end.  At present, Sharp is entitled to the tolling benefit of § 16(i).  See Leh, 382 U.S. at 65 (tolling based on government action does not turn on the government's success in proving its complaint's allegations); Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 336 (1971) (the purpose of § 16(i) is to enable private litigants to benefit from government suits and use the benefits accruing from those suits).

The Court holds that § 16(i) tolls Sharp's federal claims from February 10, 2009, when the first indictment issued, until today. The same reasoning applies to Plaintiff's claims under the Donnelly Act, which the parties do not fully address in their briefing. Since the Donnelly Act's tolling provision maps to the federal law, Sharp's Donnelly Act claim is tolled for the pendency of the federal criminal proceedings.

### ii.   Laches

Thomson SA also argues that Sharp's claims are barred by laches, an equitable time limitation on a party's right to bring suit that requires a showing of (1) unreasonable delay in filing the suit and (2) prejudice to Defendant.  Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002).  A laches defense raised at the motion to dismiss posture requires exclusive

reliance on the factual allegations in the complaint.  <u>Kourtis v. Cameron</u>, 419 F.3d 989, 1000 (9th Cir. 2005), <u>overruled on other grounds</u>, <u>Taylor v. Sturgell</u>, 553 U.S. 880 (2008).  Courts have noted that this postural requirement poses a nearly insurmountable obstacle to a favorable resolution of a defendant's fact-dependent laches claim.  <u>See</u> <u>Mishewal Wappo Tribe of Alexander Valley v. Salazar</u>, No. 09-cv-02502-EJD, 2011 WL 5038356, at *7 (N.D. Cal. Oct. 24, 2011); <u>Italia Marittima, S.P.A. v. Seaside Transp. Servs., LLC</u>, No. C-10-0803-PJH, 2010 WL 3504834, at *6 (N.D. Cal. Sept. 7, 2010).

In examining Sharp's FAC, it is difficult not to find some delay, but the Court cannot find that Sharp's delay was unreasonable based only on the FAC's allegations.  As noted above, some of Sharp's claims are time-barred, but some are tolled, and there is a "strong presumption" that laches is inapplicable to claims brought within a statutory period.  <u>See</u> <u>Jarrow</u>, 304 F.3d at 835-36.  Thomson SA is, of course, not barred from raising laches on a more developed record.

### iii.   **Failure to State Claims**

Thomson SA argues that Sharp fails to plead claims because (1) it pleads no facts plausibly suggesting that it satisfies the <u>Illinois Brick</u> ownership or control exception; (2) it fails to plead facts establishing that Thomson SA had a significant aggregation of contacts with New York and New Jersey; and (3) separately, the Court lacks subject matter jurisdiction over Sharp's claims, because the FAC pleads no facts plausibly suggesting that Thomson SA's alleged foreign conduct caused a "direct, substantial, and reasonably foreseeable effect" on

United States District Court
For the Northern District of California

1  domestic commerce under the Foreign Trade Antitrust Improvements

2  Act ("FTAIA"), 15 U.S.C. § 6a.[9]

3      First, Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977),

4  which generally bars federal antitrust suits by indirect

5  purchasers, permits indirect purchasers to sue if the direct

6  purchaser of the allegedly price-fixed good was a division or

7  subsidiary of a co-conspirator.  See In re Cathode Ray Tube (CRT)

8  Antitrust Litig., 911 F. Supp. 2d 857, 867 (N.D. Cal. 2012) (citing

9  In re ATM Fee, 686 F.3d 741, 755 (9th Cir. 2012); Royal Printing

10 Co. v. Kimberly Clark Corp., 621 F.2d 323, 326-27 (9th Cir. 1980)).

11 Thomson SA contends that Sharp fails to plead sufficient facts

12 demonstrating that its purchases from direct purchasers demonstrate

13 sufficient ownership and control to meet this Illinois Brick

14 exception.  The Court finds that Sharp has pled enough to state the

15 ownership or control exception given Sharp's pleadings about the

16 relationship between Thomson SA and Thomson Consumer.

17     Second, Thomson SA's argument about its relationship to New

18 Jersey is moot, but its argument that it lacks a significant

19 aggregation of contacts with New York merits some consideration.

20 Thomson SA argues that because Sharp has not alleged that it

21 purchased any CRTs or CRT Products in New York, but only that it

22 warehoused purchased CRT Products in New York, Sharp has failed to

23

24 [9] Sharp raises, in a footnote, the fact that the Ninth Circuit and
   courts in this district have questioned whether FTAIA presents a
25 jurisdictional issue or whether it is an element of a claim.  Opp'n
   to TSA at 24 n.24.  The Court need not decide this issue, because
26 resolution of the FTAIA question does not require it.  Separately,
   Thomson SA argues that Sharp fails to state a claim under New York
27 General Business Law section 349, the New York UCL, but the Court
   has found that cause of action to be time-barred, so the argument
28 here is moot.  That section is separate from the Donnelly Act's
   tolling provision, New York General Business Law section 342-c.

**United States District Court**
For the Northern District of California

1  allege sufficient contacts with New York to survive a due process

2  challenge to the application of New York law.  TC Reply Sharp at

3  15; TSA Reply Sharp at 15.

4      Thomson SA cites the recent case AT&T Mobility LLC v. AU

5  Optronics Corp., 707 F.3d 1106, 1112-13 (9th Cir. 2013), to support

6  its contention that the Court's due process analysis is limited to

7  examining where the allegedly price-fixed products were purchased

8  and where the allegedly anti-competitive conduct giving rise to the

9  conspiracy occurred.  TC Reply Sharp at 15.  Thomson SA misreads

10  AT&T Mobility and Allstate Insurance Co. v. Hague, 449 U.S. 302,

11  312-13 (1981), as the Court has explained in relation to a

12  different Thomson SA in In re CRT, 2013 WL 4505701, at *6.  AT&T

13  and Allstate do not limit the Court to those two considerations:

14  rather, read together, they require the Court to evaluate, with

15  respect to each defendant, whether a plaintiff has alleged

16  sufficient conspiratorial conduct within a state such that

17  application of that state's law is neither arbitrary nor

18  fundamentally unfair.  Id.; see also In re TFT-LCD, No. C-12-3802-

19  SI, 2013 WL 1164897, at *4 (N.D. Cal. Mar. 20, 2013).  Sharp

20  contends that because Sharp Electronics Corporation ("SEC") is a

21  New York corporation, albeit with a principal place of business in

22  New Jersey, the effects of the CRT conspiracy on the New York

23  market plus the fact that SEC warehoused CRT Products in the state

24  merit application of New York law to Thomson SA within the limits

25  of due process.  Sharp Opp'n to TC at 25 & n.25.

26      The Court finds for Sharp here: Thomson SA's alleged conduct

27  resulted in a New York-based company being harmed, and this is

28  sufficient to give New York an interest in applying its own law to

**United States District Court**
For the Northern District of California

the controversy, especially given <u>Allstate</u>'s "modest restrictions
on the application of forum law" and "highly permissive standard."
<u>See</u> <u>Experience Hendrix LLC v. Hendrixlicensing.com Ltd.</u>, -- F.3d --
, Nos. 11-35858, 11-35872, 2014 WL 306600, at *4 (9th Cir. 2014)
(citing <u>Allstate</u> and <u>AT&T</u>, and quoting <u>AT&T</u>, 707 F.3d at 1111).

      Finally, Thomson SA's FTAIA argument fails.   The FTAIA
excludes from Sherman Act claims: "(1) export activities and (2)
other commercial activities taking place abroad, unless those
activities adversely affect domestic commerce, imports to the
United States, or exporting activities of one engaged in such
activities within the United States." <u>Hoffman-La Roche, Ltd. v.</u>
<u>Empagran S.A.</u>, 542 U.S. 155, 161 (2004).   Thomson SA argues that
the alleged meetings and other conspiratorial activities took place
outside the United States and targeted the world CRT market instead
of the United States specifically, since Thomson SA and other
defendants are citizens of foreign countries, and the foreign
conduct had an indirect and attenuated effect in the United States.
TSA MTD Sharp at 25.   Thomson SA claims that these amounts to a
"trickle-down" claim insufficient to ground jurisdiction under the
FTAIA, so the Court must refuse jurisdiction.   <u>Id.</u>   Sharp responds
that its claims are based solely on domestic or import commerce, so
by its terms, the FTAIA does not apply at all.   Sharp Opp'n to TSA
at 24.   Sharp argues further that even if the FTAIA applied, its
allegations would fit within the FTAIA's domestic injury exception,
which permits Sherman Act claims arising from conduct involving
trade or commerce with foreign nations if (1) the underlying
conduct cause a "direct, substantial, and reasonably foreseeable
effect" on American domestic, import, or some export commerce; and

United States District Court
For the Northern District of California

1    (2) the effect gave rise to the injury.  <u>Id.</u> at 25 (citing

2    <u>Empagran</u>, 542 U.S. at 162 (quoting 15 U.S.C. § 6a(1)(2)).

3         Sharp is correct.  First, while Thomson SA claims that Sharp

4    pleads no facts suggesting that Thomson SA set prices of or engaged

5    in anticompetitive conduct regarding CRTs imported in the domestic

6    market -- since Sharp only pled that it purchased CRTs and CRT

7    Products from Thomson Consumer -- Thomson SA is wrong that Sharp

8    pled nothing plausibly suggesting Thomson SA's conduct regarding

9    CRTs imported to the United States.  Sharp specifically pled that

10   Thomson SA met with another co-conspirator and discussed CRT price-

11   fixing for the United States market.  Sharp FAC ¶ 196 (under seal).

12   Thomson SA represents that Sharp's allegations only concern

13   trickle-down effects, but that is not true.  Sharp's allegations

14   regarding Thomson SA do not allege purely "participation in foreign

15   meetings regarding foreign commerce," they concern participation in

16   foreign meetings regarding United States commerce, even if Sharp

17   ultimately purchased the allegedly price-fixed CRTs from Thomson

18   Consumer.  This is not excluded under the FTAIA.  <u>Empagran</u>, 542

19   U.S. at 161.

20

21   **V.   THOMSON CONSUMER'S MOTION TO DISMISS THE SHARP COMPLAINT**

22        Thomson SA and Thomson Consumer filed separate motions, but

23   their briefs and arguments overlap in most places, with the obvious

24   exception of Thomson SA's specific jurisdiction argument.  Thomson

25   Consumer's brief primarily concerns laches, statutes of limitation,

26   and Sharp's purported failure to plead various federal and state

27   claims, all of which the Court discussed at length, <u>see</u> <u>supra</u>.

28   Thomson SA's brief incorporates Thomson Consumer's brief on most of

34

**United States District Court**
For the Northern District of California

1   these issues, so the Court's analysis is identical.

2       **A.   Laches**

3       Thomson Consumer's laches argument is the same as Thomson

4   SA's.  The Court's ruling is accordingly the same as above: the

5   Court cannot find that Sharp's delay was unreasonable based only on

6   the FAC's allegations.

7       **B.   Statutes of Limitation**

8       Thomson Consumer's argument that Sharp's claims are time-

9   barred is the same as Thomson SA's.  The Court's ruling is also the

10  same: fraudulent concealment applies until November 2007, but all

11  of Sharp's claims are DISMISSED WITH PREJUDICE as time-barred,

12  except the federal claim and the New York Donnelly Act claim, which

13  are both tolled by government action.  The only aspect of the

14  Court's analysis that would change here is that, as in the Tech

15  Displays America action, American Pipe tolling could not apply to

16  Thomson Consumer based on any DPP class action because Thomson

17  Consumer was never named as a defendant in any of those cases.

18  See, e.g., Tech Data Corp. v. AU Optronics Corp., No. 07-MD-1827,

19  2012 WL 3236065, at *5 (N.D. Cal. Aug. 6, 2012).  It tolls claims

20  against Thomson SA, but not for long enough to save the claim from

21  being untimely absent governmental action tolling.

22      **C.   Pleading Matters**

23      Thomson Consumer's pleading arguments are the same as Thomson

24  SA's.  The Court's rulings on them are the same as above.

25

26  **VI.   THE THOMSON DEFENDANTS' MOTIONS TO DISMISS THE DAP COMPLAINTS**

27      Thomson SA and Thomson Consumer file motions to dismiss in the

28  aforementioned DAP cases, which as the Court notes below are

virtually the same as their briefs in the Sharp matter, discussed at length above.  The main difference is that the Court had once considered and denied the DAPs' requests to add the Thomson Defendants to their complaints.  See ECF No. 1959 ("Order Denying Amendment").  The difference between then and now, as discussed in the concurrently filed Order in Mitsubishi's motion to dismiss, is that the DAPs now provide substantially more facts explaining why the Thomson Defendants should be in this case, instead of listing and relying on unacceptably vague boilerplate.

However, in most respects, the DAP-Thomson dispute is the same as the Sharp-Thomson dispute, and for brevity's sake the Court rules on all of the issues in this Order, incorporating the above analysis and relevant parts of the Order on Mitsubishi's motion to dismiss.

First, the Court rejects Thomson SA's argument that the DAPs fail to plead facts supporting an uncontroverted finding of specific jurisdiction.  The DAPs plead sufficient facts to support a finding that Thomson SA directed its price-fixing activities toward the United States.  They also provide evidence, which Thomson SA fails to rebut, that Thomson SA targeted the United States by setting price targets for United States purchases, approving various pricing plans from its French headquarters, exchanging information about United States CRT operations in meetings at its French headquarters, and sharing worldwide market information (with the knowledge that the United States was the world's largest CRT market).  See Best Buy Compl. ¶¶ 29-30, 151; ECF No. 2378-1 ("Loh Decl.") Exs. C, P-T (meeting notes, agendas, and emails indicating that Thomson SA was targeting the United

1   States and approving United States-targeted price-fixing activity).

2   As above, Thomson SA refers to its own declarations and affidavits,

3   but these do not directly controvert any of the DAPs' allegations

4   about Thomson SA's United States-targeted activity, nor does

5   Thomson SA respond to the facts the DAPs provide with their

6   opposition brief.  The Court finds, as above, that Thomson SA

7   directed price-fixing activity toward the United States, that this

8   activity was a but-for cause of the DAPs' injuries, and that it

9   would be reasonable to exercise specific jurisdiction over Thomson

10   SA.

11      As to each Thomson Defendant, the Court makes the same

12   findings on laches, statutes of limitations, and pleading matters

13   described above.  Nothing in the Thomson Defendants' briefs in the

14   DAP cases changes this analysis.  Accordingly, the Court rejects

15   the Thomson Defendants' laches arguments at this time, for reasons

16   described above and in the concurrently filed Order on Mitsubishi's

17   motion to dismiss.

18      American Pipe tolling does preserve the DAPs' claims against

19   Thomson SA for reasons described above, but only for a short time -

20   - even with the benefit of the short tolling period on which the

21   DAPs rely, their claims would be untimely.  See DAP Opp'n to TSA at

22   17-18.  Since Thomson Consumer had not been named as a defendant in

23   the earlier cases on which the DAPs rely, American Pipe does not

24   toll claims against it.  Tech Data Corp. v. AU Optronics Corp.,

25   2012 WL 3236065, at *5.

26      Further, DAPs do not state that any of the direct purchaser

27   complaints on which they rely raised the same state causes of

28   action, which is grounds for the Court to reject the application of

**United States District Court**
For the Northern District of California

American Pipe to the DAPs' state law claims.  See In re TFT-LCD (Flat Panel) Antitrust Litig., No. M 07-1827 SI, C 12-4114 SI, 2013 WL 254873, at *2 & n.3 (N.D. Cal. Jan. 13, 2013) (declining to apply American Pipe to state law claims not asserted in the original complaint); accord In re Copper Antitrust Litig., 436 F.3d 782, 793-97 (7th Cir. 2006) (same).

Finally, for the sake of thoroughness, the Court is not persuaded that Kansas, Michigan, or Minnesota -- the three states not also discussed in the Sharp case or the Joint Motion to Dismiss -- would adopt cross-jurisdictional tolling based on federal class actions asserting federal claims.  In the DAPs' case Seaboard Corp. v. Marsh Inc., 284 P.3d 314, 327 (Kan. 2012), the Kansas Supreme Court stated specifically that Kansas has declined to adopt American Pipe principles, and applied tolling instead based on a specific state statute.  In Mair v. Consumers Power Co., 384 N.W.2d 256, 260-61 (Mich. 1984), the Michigan Supreme Court held that a federal administrative complaint did not put a defendant on notice of a state claim.  In Lee v. Grand Rapids Bd. of Educ., 148 Mich. App. 364, 367-68 (Mich. Ct. App. 1986), the Michigan Court of Appeals cited Mair to describe Michigan law's occasional application of tolling when a defendant has notice of a state law claim, which is not the case when a federal complaint does not include the state law cause of action, as in this case.  It is possible that Minnesota courts would analogize to American Pipe's cross-jurisdictional tolling principles in some circumstances, but the application of this rule in Minnesota courts appears to depend on whether the defendant had notice of the state law claims, which, as stated above, does not appear to be the case where federal

1  plaintiffs did not plead the same Minnesota causes of action

2  against the same defendants.  See Bartlett v. Miller & Schroeder

3  Muns., 355 N.W.2d 435, 439-40 (Minn. 1984).

4      The Thomson Defendants' pleading arguments are rejected in the

5  DAP cases for the reasons explained above.

6      The Court finds that all of the DAPs' state law claims against

7  the Thomson Defendants are DISMISSED WITH PREJUDICE as untimely,

8  except any Donnelly Act claims, which are tolled by governmental

9  action.  The federal claims are also tolled by governmental action.

10

11 **VII.  CONCLUSION**

12     As explained above, the Court GRANTS in part and DENIES in

13 part the Thomson Defendants' motions to dismiss.  All Plaintiffs'

14 state law claims are DISMISSED WITH PREJUDICE as untimely, except

15 their Donnelly Act claims, which are tolled by the federal criminal

16 proceedings.  All Plaintiffs' federal claims are also tolled.

17

18     IT IS SO ORDERED.

19

20     Dated: March 13, 2014

21                                    UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California