Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA  94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Defendant*
*Thomson Consumer Electronics, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | No. 07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Tech Data Corp., et al. v. Hitachi, Ltd., et al., No. 13-cv-00157* | **REPLY IN SUPPORT OF THOMSON CONSUMER'S MOTION TO STRIKE WITH PREJUDICE TECH DATA'S FIRST AMENDED COMPLAINT**<br><br>Date:   March 21, 2014<br>Time:  10:00 a.m.<br>Place:  Courtroom 1, 17th Floor<br>Judge: Hon. Samuel Conti |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 1

I.   The Court Should Strike the Allegations Against Thomson Consumer in the FAC Because Tech Data Was Not Entitled to Amend Its Complaint Without Leave of Court........................................................................................................... 1

II.  Laches Bars Tech Data's Late-Filed Claims Because Its Delay Was Unreasonable and Highly Prejudicial to Thomson Consumer. .................................................. 3

   A.   It Is Undisputed That Tech Data Has Unreasonably Delayed Filing Its Claims Against Thomson Consumer. ................................................. 4

   B.   Tech Data's Delay Has Severely Prejudiced Thomson Consumer. ........ 6

      1.   Thomson Consumer Has Suffered Evidentiary Prejudice. ......... 6

      2.   Tech Data Has Caused Thomson Consumer Expectations-Based Prejudice............................................................................ 7

III. Tech Data's Claims Are Time-Barred Because the Statutes of Limitation Have Not Been Tolled. ................................................................................................... 8

   A.   Just Months Before the Close of Discovery, Tech Data Does Not Plead Facts That Plausibly Support Fraudulent Concealment. ......................... 8

   B.   Tech Data Concedes that American Pipe Tolling Does Not Apply...................... 10

   C.   Government Action Tolling Does Not Apply to Tech Data's Claims. ................. 10

IV.  Tech Data Has Not Adequately Alleged Antitrust Standing. ........................................... 12

CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Ashley v. Boyle's Famous Corned Beef Co.,*
66 F.3d 164 (8th Cir. 1995) .................................................................................. 4

*Cada v. Baxter Healthcare Corp.,*
920 F.2d 446 (7th Cir. 1991) ................................................................................ 4

*Chippano v. Champion International Corp.,*
702 F.2d 827 (9th Cir. 1983) ......................................................................... 11, 12

*Credit Suisse Sec. (USA) LLC v. Simmonds,*
132 S. Ct. 1414 (2012) ......................................................................................... 10

*Greyhound Corp. v. Mt. Hood Stages,*
437 U.S. 322 (1978) .............................................................................................. 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
738 F. Supp. 2d 1011 (N.D. Cal. 2010) ................................................................ 9

*In re High Fructose Corn Syrup Antitrust Litig.,*
293 F. Supp. 2d 854 (C.D. Ill. 2003) .................................................................... 8

*In re Processed Egg Prods. Antitrust Litig.,*
2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013) .................................... 9

*In re Rubber Chemicals Antitrust Litig.,*
504 F. Supp. 2d 777 (N.D. Cal. 2007) .................................................................. 9

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Best Buy),*
No. 07-1827, 2013 WL 254873 (N.D. Cal. Jan. 23, 2013) .................................. 13

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Proview),*
No. 07-1827, 2013 WL 1164897 (N.D. Cal. Mar. 20, 2013) ............................... 13

*In re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic),*
No. 07-1827, 2012 WL 5949585 (N.D. Cal. Nov. 28, 2012) ............................... 13

*In re Urethane Antitrust Litig.,*
663 F. Supp. 2d 1067 (D. Kan. 2009) ................................................................... 9

*J.M. Dungan v. Morgan Drive-Away, Inc.,*
570 F.2d 867 (9th Cir. 2007) ............................................................................... 11

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.,*
304 F.3d 829 (9th Cir. 2002) ................................................................................. 3

*Kendall v. VISA U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................. 13

*Leh v. Gen. Petroleum Corp.*,
    382 U.S. 54 (1965) ............................................................. 11

*Madison v. IBP, Inc.*,
    330 F.3d 1051 (8th Cir. 2003) ............................................................. 4

*Matthews Metals Prods., Inc. v. RBM Precision Metal Prods., Inc.*,
    186 F.R.D. 581 (N.D. Cal. 1999) ............................................................. 3

*McCune v. Alioto Fish Co.*,
    597 F.2d 1244 (9th Cir. 1979) ............................................................. 4

*Miller v. Maxwell's Int'l*,
    991 F.2d 583 (9th Cir. 1993) ............................................................. 4

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999) ............................................................. 8

*Nartron Corp. v. STMicroelectronics, Inc.*,
    305 F.3d 397 (6th Cir. 2002) ............................................................. 7

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    695 F.3d 946 (9th Cir. 2012) ............................................................. 6, 7

*Smith v. United States*,
    133 S. Ct. 714 (2013) ............................................................. 8

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971) ............................................................. 8

**FEDERAL STATUTES**

15 U.S.C. § 16(i) ............................................................. 1, 11, 12

**RULES**

Fed. R. Civ. P. 9(b) ............................................................. 8, 10

Fed. R. Civ. P. 12 ............................................................. 1, 2

Fed. R. Civ. P. 15 ............................................................. 1, 2, 3

Fed. R. Civ. P. 21 ............................................................. 1, 2, 3

**OTHER AUTHORITIES**

C. Leslie, *Judgment-Sharing Agreements*, 58 Duke L.J. 747 (2009) ............................................................. 7

**INTRODUCTION**

The Court should strike Tech Data's claims against Thomson Consumer in its First Amended Complaint ("FAC") because Tech Data did not seek leave of this Court to amend its original complaint to join Thomson Consumer to this action, and at this late stage in this litigation, under the plain terms of Federal Rules of Civil Procedure 15(a) and 21, Tech Data was not entitled to do so as a matter of course.  Procedural failures aside, Tech Data simply waited too long to sue the Thomson Defendants.  As this Court ruled in rejecting the Direct Action Plaintiffs' ("DAPs") belated attempt to join the Thomson Defendants to this litigation, forcing them "to enter litigation now would put [them] at an unfair, prejudicial disadvantage" and the Plaintiffs "had ample time to add Thomson to their complaints without delay or prejudice." (*See* Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].)  Because Tech Data's claims against the Thomson Defendants are also inexcusably and prejudicially late, Tech Data's reliance on tolling doctrines to toll the statutes of limitation is barred by laches.  Moreover, none of the tolling theories that Tech Data relies on save its nearly decade-old claims.  First, it fails to plead with particularity that *any* alleged co-conspirators − much less Thomson Consumer − engaged in affirmative acts of fraudulent concealment after 2004.  Second, Tech Data concedes that *American Pipe* tolling does not apply.  Finally, allowing Tech Data to indefinitely toll the statute of limitations based on stagnant federal indictments against foreign nationals that have not resulted in actual criminal proceedings would undermine the purposes of 15 U.S.C. § 16(i).  Tech Data's stale claims should be dismissed with prejudice.

**ARGUMENT**

**I.    The Court Should Strike the Allegations Against Thomson Consumer in the FAC Because Tech Data Was Not Entitled to Amend Its Complaint Without Leave of Court.**

The plain language of Fed. R. Civ. P. 15(a)(1) is clear: a party may only amend its pleading as a matter of course within "21 days after serving it" or within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(B).  As the Advisory Notes to the 2009 Amendments to Rule 15 explain, under the amended rule, a party's right to file one amended pleading is triggered by the

1    opposing party filing a responsive pleading or a Rule 12 motion because the purpose of granting

2    the party the right to amend its pleading once as a matter of course is to allow it "to consider

3    issues that the original pleader has not considered and persuade the pleader that amendment is

4    wise." *See* Advisory Committee Notes to 2009 Amendments to Fed. R. Civ. P. 15. "In this way

5    a responsive amendment may avoid the need to decide the motion or reduce the number of issues

6    to be decided, and will expedite the determination of issues that otherwise might be raised

7    seriatim. It should also advance other pretrial proceedings." *Id*. Accordingly, because Tech Data

8    filed the FAC before any Defendant filed a responsive pleading or Rule 12 motion, Tech Data's

9    filing of the FAC did not serve the purposes of Rule 15 and was prohibited by the Rule.

10          Unable to dispute this, Tech Data instead argues that it was entitled to file the FAC as a

11   matter of course because at the time it was filed, no Defendant had filed a responsive pleading or

12   Rule 12 motion. (Opp'n. at 3.) This argument ignores the purposes of amended Rule 15(a) and

13   the express limitations on a party's right to amend.[1] The Court should reject Tech Data's

14   argument and, consistent with both the plain text and purposes of Rule 15, strike the unauthorized

15   FAC.

16          Moreover, even if the Court holds that Rule 15(a)(1) permits amendment as a matter of

17   course at any point before a motion to dismiss or responsive pleading is filed, that right should

18   not trump Rule 21's requirement that the amending party obtain Court permission before joining

19   additional parties. As both Thomson Consumer and Tech Data acknowledge, there is a split of

20   authority regarding whether Rule 21 or Rule 15(a)(1) controls when an amendment that would

21   otherwise be permitted as a matter of course seeks to add parties to the litigation. The Ninth

22   Circuit Court of Appeals has not taken a position on this issue. Nonetheless, Tech Data asserts

23   that the law in this regard is "clear" based on a 1999 district court decision that departed from

---

[1] Before Rule 15 was amended in 2009, it provided that a party could amend its pleading "once as a matter of course before being served with a responsive pleading." *See* 2008 Fed. R. Civ. P. 15(a)(1)(A). Thus, Tech Data's interpretation is consistent with Rule 15 before it was amended, but effectively nullifies the text and purpose of the amended version of the Rule. Similarly, the cases Tech Data cites do not analyze the text or purposes of Rule 15 and do not explain why the express limitations on amendments as a matter of course contained in it should be ignored.

1    earlier precedent.  *See Matthews Metals Prods., Inc. v. RBM Precision Metal Prods., Inc.*, 186

2    F.R.D. 581, 583 (N.D. Cal. 1999).  *Matthews Metals* did hold that Rule 15(a) takes precedence

3    over Rule 21, but its persuasive value is limited because its holding was cursory, the amendment

4    in that case was made very shortly after the initial complaint was filed and the case removed, and

5    there is no indication that in the circumstances of that case the court would have denied leave to

6    add a party.

7         The circumstances here, on the other hand, demonstrate the importance of requiring court

8    approval of joinder under Rule 21 even when Rule 15(a)(1) might otherwise apply.  While court

9    supervision may be unnecessary where amendments seek to add parties at the early stage of the

10   proceedings, Rule 15(a) – at least as interpreted by Tech Data – would permit amendments as a

11   matter of course at an advanced stage of the proceedings.  Here, Tech Data's interpretation of

12   Rule 15(a) and Rule 21 would permit it to do as a matter of course what this court has already

13   ruled would be unwarranted and prejudicial for the DAPs to do – force the Thomson Defendants

14   to join these proceedings six years after they began.  Such a ruling would provide an unwarranted

15   windfall to Tech Data.  The only relevant differences between the DAPs' and Tech Data's belated

16   attempts to join the Thomson Defendants is that Tech Data waited *longer* to file its initial

17   complaint and to amend it, and then stipulated with other Defendants (who have no incentive to

18   protect the Thomson Defendants' interests) to delay any response until after the Court ruled on

19   motions to dismiss filed by the other Defendants.  Accordingly, the Court should reject an

20   interpretation of Rules 15 and 21 that would allow Tech Data to benefit from its unreasonable

21   delay by amending its complaint at this late stage in these proceedings without leave of court.

22   Consistent with its Sept. 26, 2013 Order, the Court should strike the allegations against the

23   Thomson Defendants in Tech Data's FAC.

24
**II.    Laches Bars Tech Data's Late-Filed Claims Because Its Delay Was Unreasonable
25           and Highly Prejudicial to Thomson Consumer.**

26         "[L]aches penalizes inexcusable dilatory behavior" by plaintiffs who, like Tech Data,

27   have slept on their rights.  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.,* 304 F.3d 829, 838 (9th

28   Cir. 2002).  Moreover, any "presumption" that claims filed within the statute of limitations are

1    reasonably timed does not apply where a plaintiff asks the court to employ tolling doctrines to

2    save claims filed after the limitations period has expired that should have been brought long

3    before.  *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1991); *Ashley v.*

4    *Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 170 (8th Cir. 1995) (en banc), *abrogation on*

5    *other ground recognized in Madison v. IBP, Inc.*, 330 F.3d 1051, 1056 (8th Cir. 2003).[2]

6        Tech Data argues that establishing laches on a motion to dismiss is difficult because the

7    issue often turns on disputed facts.  (Opp'n. at 20.)  But, this argument ignores the reality that

8    everything necessary for the Court to rule on the issue of laches is present in Tech Data's

9    pleadings, and that this Court has already held that the similarly-situated DAPs unreasonably and

10   prejudicially delayed attempting to assert claims against Thomson Consumer.  As the Ninth

11   Circuit has recognized, a complaint should be dismissed where, as here, the undisputed facts

12   establish that the claims are barred by laches.  *McCune v. Alioto Fish Co.*, 597 F.2d 1244, 1249-

13   50 (9th Cir. 1979).

14       **A.    It Is Undisputed That Tech Data Has Unreasonably Delayed Filing Its**
15       **Claims Against Thomson Consumer.**

16       Tech Data does not even attempt to explain why it waited for *six years* to assert claims

17   against Thomson Consumer, despite having had:  (1) knowledge of the alleged conspiracy since

18   *at least* 2007 and (2) access to the comprehensive discovery record in this case since at least

19   2012.  Instead, it simply asserts that laches requires "factual determinations" and relies on a

20   supposed presumption that laches is inapplicable to a claim filed within the statute of limitations.

21   Tech Data's assertions completely ignore the Court's previous rejection of these very same

22   arguments when it held that the DAPs' delay was unreasonable and had caused the Thomson

23   Defendants severe prejudice.  ([Dkt. No. 1959 at 4-6].)  As discussed above, the only difference

---

24
25   [2] In *Miller v. Maxwell's Int'l*, 991 F.2d 583, 586 (9th Cir. 1993), the court held that laches is
     "inapplicable when Congress has provided a statute of limitations to govern the action."
26   However, the claim in *Miller* was filed within the initial statute of limitations without recourse to
     tolling; as evidenced by other circuit decisions, laches may bar a plaintiff's claims where the
27   plaintiff seeks to invoke tolling doctrines to revive a claim long after the statutory period has run.
     *Cada*, 920 F.2d at 453; *Ashley*, 66 F.3d at 164.
28

1   between Tech Data and the other DAPs is that Tech Data has waited even longer and supports its

2   claims with even flimsier allegations.  For the same reasons stated in its September 26, 2013

3   Order denying the DAPs' motion to amend, the Court should hold that Tech Data's reliance on

4   tolling doctrines is barred by laches.

5            Moreover, Tech Data's inexcusable delay is readily apparent on the face of its complaint

6   and the docket in this case.  First, the FAC is clear that the existence of the alleged CRT

7   conspiracy was public as of November 2007 when the initial complaints in this litigation were

8   filed.  (*See* FAC at ¶ 240.)  The complaint also alleges that Thomson Consumer "was a major

9   manufacturer of CRTs for the United States market" during the period of the alleged conspiracy

10  − a fact which was certainly not a secret.  (FAC at ¶ 62).  Tech Data provides no explanation for

11  why it failed to investigate potential claims against this well-known major manufacturer of CRTs

12  and CRT Products for over five years after the existence of the alleged conspiracy became public

13  in 2007.  Second, even if Tech Data were somehow unaware of its potential claims following the

14  2007 revelations, nothing explains why it did not begin its investigation and potentially file

15  claims against Thomson Consumer after its parent, Thomson SA, was named as a defendant in

16  certain class actions in early 2008.  The filing of these actions gave Tech Data notice that others

17  believed that Thomson Consumer's parent was involved in the alleged conspiracy, but Tech Data

18  slept on its rights and did nothing.  Third, Tech Data does not credibly explain why, after it filed

19  its initial complaint in 2012, it waited to attempt to assert claims against Thomson Consumer

20  until September 2013.  Nor does it attempt to justify this extensive delay while discovery in this

21  sprawling litigation proceeded apace.  Finally, even after the Indirect Purchaser Plaintiffs sought

22  to amend their own complaints to add Thomson Consumer in 2012 and the DAPs attempted to

23  amend their complaints in March 2013, Tech Data *still* waited nearly six months − critical

24  months, given the scope and pace of discovery − before attempting to amend its complaint with

25  virtually identical allegations.  Simply stated, it is undisputed and plain from the face of its

26  complaint that Tech Data unreasonably delayed filing its claims.

27

28

1

**B.      Tech Data's Delay Has Severely Prejudiced Thomson Consumer.**

2          Since Tech Data has delayed filing its claims against Thomson Consumer for a long time

3   – more than six years – a lower showing of prejudice is required to establish laches.  *See Petrella*

4   *v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946, 953 (9th Cir. 2012) (noting that "if only a short

5   period of time has elapsed since the accrual of the claim, the magnitude of the prejudice required

6   before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely

7   to have occurred and less proof of prejudice will be required." (citation omitted)).  The severe,

8   irremediable prejudice caused to Thomson Consumer by Tech Data's delay is clear from the face

9   of the complaint, the history of this case, and the Court's September 26, 2013 Order.

10          **1.      Thomson Consumer Has Suffered Evidentiary Prejudice.**

11          Thomson Consumer has suffered evidentiary prejudice because much of the evidence

12   Thomson Consumer might need to defend itself is likely no longer available, as the personnel

13   formerly involved with its CRT operations have long since left the company.  Accordingly, it is

14   difficult for Thomson Consumer to identify specific evidence needed to defend against Tech

15   Data's claims that may or may not still exist.

16          Tech Data's argument that Thomson Consumer has not made a sufficiently "specific"

17   showing of evidentiary prejudice rings hollow when its own unreasonable multi-year delay is

18   what makes it difficult, if not impossible, to identify the witnesses and evidence necessary for

19   Thomson Consumer to adequately defend itself.  Tech Data's own allegations establish that

20   Thomson Consumer shut down its U.S.-based CRT operations in 2004 and entirely exited the

21   CRT business in 2005, when its CRT-related assets and personnel were transferred to Videocon

22   Industries.  (FAC at ¶¶ 62-63.)  Had Tech Data timely filed its claims, Thomson Consumer may

23   have been able to preserve documents and testimony regarding its former business; instead, Tech

24   Data slept on its rights.  By waiting to file claims against Thomson Consumer until over eight

25   years after it entirely exited the CRT industry, Tech Data has caused Thomson Consumer severe

26   evidentiary prejudice.

27

28

REPLY IN SUPPORT OF THOMSON          6          No. 07-5944-SC; MDL No. 1917
CONSUMER'S MOTION TO STRIKE TECH
DATA'S FIRST AMENDED COMPLAINT

1

2

**2.     Tech Data Has Caused Thomson Consumer Expectations-Based Prejudice.**

3

Expectations-based prejudice exists where a defendant "suffered consequences that it

4

would not have, had the plaintiff brought suit promptly." *Petrella*, 695 F.3d at 953; *see also*

5

*Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 411 (6th Cir. 2002) (noting that for

6

laches, "any prejudice is sufficient, including an increase in potential damages or a loss of

7

evidence").   Unable to justify its delay, Tech Data instead contends that it has not caused

8

Thomson Consumer prejudice.  It asks the Court to ignore the fact that it slept on its rights for six

9

years after it indisputably knew or should have known of its potential claims.  During that time,

10

discovery proceeded apace − the parties have produced nearly 5 million pages of documents

11

(many in foreign languages) and conducted 100 depositions of witnesses from around the world.

12

Because of Tech Data's delay, Thomson Consumer has had no involvement in this discovery.  It

13

has not had the opportunity to question any of these witnesses, and it is unclear, if not unlikely, it

14

would ever have an opportunity to go back and do so if it is added to these proceedings now.

15

Tech Data's arguments that its delay has not prejudiced Thomson Consumer should be rejected.

16

Given the size, complexity, and volume of the factual and legal issues raised by this case,

17

bringing Thomson Consumer into this action now is prejudicial because Thomson Consumer

18

cannot adequately prepare its defense on the current schedule.  And further delaying the entire

19

CRT case is also unreasonable.  Tech Data should not be permitted to benefit from its dilatory

20

conduct by obtaining additional time to litigate its claims against the Defendants.  Nor should

21

Thomson Consumer be forced to go it alone on a separate track when it could have meaningfully

22

taken advantage of group litigation efficiencies and reduced the cost of defending this litigation

23

had Tech Data attempted to bring Thomson Consumer into this case in a timely manner.

24

Tech Data's unjustified delay has also caused Thomson Consumer to suffer prejudice

25

through increased exposure to liability for enormous damages.  Through no fault of its own and

26

because of Tech Data's dilatory conduct, settlements with earlier-sued Defendants will shift

27

disproportionate and unwarranted risk of liability onto Thomson Consumer.  *See* C. Leslie,

28

*Judgment-Sharing Agreements*, 58 Duke L.J. 747, 758-59 (2009).  It would be fundamentally

1    unfair and inequitable to allow Tech Data to benefit from its inexcusable delay by imposing this

2    serious prejudice on Thomson Consumer.

3        The Court has already held Thomson Consumer has been prejudiced by the DAPs'

4    similar delay.  The same reasoning applies to Tech Data's delay.  Consistent with its September

5    26, 2013 Order, the Court should find that Tech Data's reliance on tolling doctrines is barred by

6    laches and dismiss its untimely claims with prejudice.

7    **III.    Tech Data's Claims Are Time-Barred Because the Statutes of Limitation Have Not
             Been Tolled.**

8

9        Not only is Tech Data's reliance on tolling doctrines barred by laches, but its claims are

10   also untimely under the applicable statutes of limitation.  "[An antitrust] cause of action begins to

11   accrue and the statute [of limitations] begins to run when a defendant commits an act that injures

12   the plaintiff's business."  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338

13   (1971).  The statutes of limitation on Tech Data's claims against Thomson Consumer began to

14   run no later than July 2005, when it admits that Thomson Consumer exited the CRT business.

15   *Smith v. United States*, 133 S. Ct. 714, 719 (2013); *see also Morton's Market, Inc. v. Gustafson's*

16   *Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999), *as modified by* 211 F.3d 1224 (11th Cir. 2000)

17   (holding that the statute of limitations on antitrust claims began to run when defendant sold

18   business and thereby withdrew from alleged conspiracy); *In re High Fructose Corn Syrup*

19   *Antitrust Litig.*, 293 F. Supp. 2d 854 (C.D. Ill. 2003) (holding that an executive withdrew from

20   an alleged price-fixing conspiracy by resigning).  Tech Data pleads no facts that make it

21   plausible to infer that Thomson Consumer participated in the conspiracy after it exited the CRT

22   industry in July 2005, so the statutes of limitation began to run, at the latest, at that time.

23       **A.    Just Months Before the Close of Discovery, Tech Data Does Not Plead Facts
                That Plausibly Support Fraudulent Concealment.**

24

25       Tech Data's attempt to plead that Thomson Consumer fraudulently concealed its alleged

26   participation in the conspiracy does not meet the heightened pleading standards of Fed. R. Civ.

27   P. 9(b).  In an effort to gloss over the inadequacy of its allegations, Tech Data cites to a Report

28   and Recommendation ("R&R") filed by former Special Master Legge in February 2010 in which

1   he found that, at that early stage in the case, detailed allegations of fraudulent concealment were

2   not necessary.  (Opp'n. at 17.)  Now, over four years later and after extensive discovery has been

3   conducted, that decision is inapplicable.   Moreover, Tech Data ignores that, in its Order

4   evaluating that R&R, the Court stated that it was "concerned about the temporal scope of the

5   alleged conspiracies in this case" and suggested that whether Plaintiffs' claims were barred by

6   the applicable statutes of limitation should be more carefully analyzed after discovery had been

7   conducted.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1025 (N.D.

8   Cal. 2010).

9       At this stage in the proceedings, Tech Data must plead with particularity specific, dated

10  acts of alleged concealment.  *See In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1078-79

11  (D. Kan. 2009) (granting motion to dismiss and limiting time periods for which plaintiffs could

12  rely on theory of fraudulent concealment to only those periods corresponding with dated acts of

13  concealment pleaded with particularity in antitrust complaint).  It should also be required to

14  plead specific acts of diligence that it undertook to uncover its claims.  *In re Processed Egg*

15  *Prods. Antitrust Litig.,* 2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013).  Although it has

16  had access to extensive discovery from other alleged conspirators for years, Tech Data does not

17  plead facts with particularity that satisfy these standards.

18      Tech Data argues that, because it has made conclusory allegations of acts of fraudulent

19  concealment by other Defendants, the Court may not find that Thomson Consumer withdrew

20  from the alleged conspiracy when it exited the CRT industry in 2005.  According to Tech Data,

21  these allegations make Thomson Consumer liable for unspecified acts of concealment allegedly

22  committed by other Defendants after 2005.  Tech Data's theory is not supported by the facts or

23  the law.  In cases where courts have held that fraudulent concealment could apply to toll the

24  statute of limitations even after the defendant had exited the relevant business, plaintiffs had

25  plead specific facts establishing that the withdrawing defendant actively participated in

26  fraudulent concealment before it withdrew.  *See In re Rubber Chemicals Antitrust Litig.*, 504 F.

27  Supp. 2d 777, 790 (N.D. Cal. 2007).  Moreover, unlike Tech Data, in these cases, the plaintiffs

28  were not attempting to rely on fraudulent concealment to toll the statutes of limitations during

1    time periods for which they had failed to plead acts of concealment by *any* defendant with the

2    particularity required by Rule 9(b).  (*See* FAC at ¶¶ 224-235 (pleading no acts of alleged

3    concealment that occurred after November 2004).)  Thus, even if other Defendants' acts could be

4    imputed to Thomson Consumer after it exited the CRT industry in 2005, Tech Data fails to

5    allege any actions after 2004 that could be so imputed to toll the statutes of limitation.

6            **B.      Tech Data Concedes that *American Pipe* Tolling Does Not Apply.**

7            *American Pipe* tolling does not save Tech Data's claims against Thomson Consumer.  In

8    its Opposition, Tech Data does not respond to and thus concedes Thomson Consumer's argument

9    that *American Pipe* does not apply to its claims against Thomson Consumer.  Tech Data must

10   make this concession because the law is clear that class action tolling does not apply to a

11   defendant like Thomson Consumer that has never previously been named as a defendant in any

12   related class action.   Moreover, Tech Data specifically concedes that "with respect to the

13   Thomson Defendants there is no tolling doctrine that brings its California and Florida state law

14   claims within the applicable statutes of limitations."  (Opp'n. at 18 n.10).  *American Pipe* tolling

15   does not save Tech Data's untimely claims against the Thomson Defendants.

16           **C.      Government Action Tolling Does Not Apply to Tech Data's Claims.**

17           The Supreme Court has stated that government action tolling serves two purposes: (1) it

18   ensures private litigants "have the benefit of prior Government antitrust enforcement efforts" and

19   (2) it "shorten[s] the period over which treble-damages actions will extend." *Greyhound Corp.*

20   *v. Mt. Hood Stages*, 437 U.S. 322, 334 (1978).  Application of the statute here would not serve

21   either of these purposes.   Since no meaningful criminal proceedings are currently pending

22   against the fugitive defendants, there is no evidence or other fruit of the government indictments

23   from which Tech Data may benefit.  Applying government action tolling here would simply

24   provide a windfall to Tech Data – a windfall that would be especially unjustified in light of its

25   prejudicial delay.  In addition, contrary to the second purpose of the statute, its application would

26   result in indefinite tolling, a result that the Supreme Court has rejected. *Credit Suisse Sec. (USA)*

27   *LLC v. Simmonds*, 132 S. Ct. 1414, 1420 (2012) (rejecting interpretation of statute that would

28   permit indefinite tolling, reasoning that "[t]he potential for such endless tolling in cases in which

1    a reasonably diligent plaintiff would know of the facts underlying the action is out of step with

2    the purpose of limitations periods in general").

3           Nor is Tech Data's interpretation of 15 U.S.C. § 16(i) mandated by applicable authority.

4    Tech Data relies on *J.M. Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867 (9th Cir. 2007) for

5    the proposition that a criminal proceeding should always be deemed to have been instituted

6    under the statute after a grand jury returns an indictment.  This reads too much into *Dungan*.  In

7    that case, the court merely rejected the argument that events *before* an indictment − specifically

8    the empanelling of a grand jury − could "institute" criminal proceedings.  It did not consider

9    whether an indictment, without more, *always* institutes a criminal proceeding.  In fact, consistent

10   with Thomson Consumer's arguments here, the Ninth Circuit expressly recognized that its

11   holding would "not eliminate all necessity to strike the exquisite balance" in seeking to

12   effectuate the purposes of § 16(i) when determining if government action tolling applies in a

13   particular case.  *Id.* at 872.[3]

14          In addition, a facial comparison between the government indictments at issue and Tech

15   Data's allegations against Thomson Consumer demonstrates that the claims here are not based

16   on the "matter complained of" in the indictments.  With respect to the Lin Indictment, the only

17   indictment regarding the CRT market for televisions, there are no allegations in Tech Data's

18   complaint that Thomson Consumer had any dealings with Lin or was involved in any way with

19   the conspiracy in Asia he is alleged to have participated in.  Tech Data's reliance on *Chipanno* to

20   argue that it has plead facts sufficient to establish the necessary overlap between the Lin

21   Indictment and their claims against Thomson Consumer is misplaced.  In that case, the court

22   determined that there was necessary overlap between private antitrust claims regarding the sale

23   of timber on private lands in Oregon and a prior government antitrust action regarding timber

24   _____

25   [3] Tech Data's argument that whether government action tolling applies "may not be made to turn on whether the United States is successful in proving the allegations of its complaint" is a red-
26   herring because Thomson Consumer has never contended otherwise.  (Opp'n. at 17 (quoting *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59 (1965).)  Government action tolling does not apply
27   here because no meaningful criminal proceedings have been instituted from which Tech Data could benefit, not because the indictments might not yield convictions.
28

1  sales on public lands in Oregon.  Critical to the court's holding was the fact that tolling the

2  statute of limitations would further the "purpose" of 15 U.S.C. §16(i).  *Chippano v. Champion*

3  *International Corp.*, 702 F.2d 827, 832-33 (9th Cir. 1983).  Because both suits had the same

4  "geographic scope . . . evidence adduced *in the trial of the government suit* would be of practical

5  assistance to plaintiffs in proving their own complaint."  (*Id.*) (emphasis added).  Here, the

6  purposes of the statute would not be served because there are no government proceedings from

7  which Tech Data may benefit and the suits relate to different geographic markets.  Moreover, the

8  fact that the Ninth Circuit determined that there was sufficient overlap between suits regarding

9  timber sales in Oregon does not require this Court to assume an overlap between alleged

10  anticompetitive conduct regarding unrelated parties on different continents.  Accordingly, Tech

11  Data has failed to plead facts that establish a relationship between its claims against Thomson

12  Consumer and the Lin Indictment.  Government action tolling does not apply to save Tech

13  Data's claims against Thomson Consumer, so they are time-barred as a matter of law.[4]

14  **IV.    Tech Data Has Not Adequately Alleged Antitrust Standing.**

15          Tech Data suggests that Thomson Consumer's arguments regarding the ownership or

16  control exception to *Illinois Brick* should be rejected because "this Court has already ruled that

17  the DAPs have standing to proceed with their federal claims under" this exception.  (Opp'n. at 23

18  (citing [Dkt. No. 1856 at 5]).)  In fact, on the same page of the Order cited by Tech Data, the

19  Court expressly stated that it was "mak[ing] no ruling on the adequacy of the DAPs' allegations

20  of ownership or control."  ([Dkt. No. 1856 at 5].)  Therefore, Thomson Consumer's arguments

21  that Tech Data has failed to adequately plead facts that make it plausible that it possesses

22  standing under a recognized exception to *Illinois Brick* are properly before the Court.

23          The Court has recently recognized that "[s]o many years after this MDL's inception,

24  Plaintiffs should be able to provide something more than boilerplate allegations."  ([Dkt. No.

25  1960].)  While the Court may have determined that Tech Data's generalized allegations were

26

27  [4] As noted, Tech Data concedes that government action tolling does not apply to any of their
   state law claims.  (Opp'n. at 18 n.10).

28

1    sufficient to state viable claims before discovery began, now, after years of discovery, Tech Data

2    must plead more detailed facts to make its claims plausible on their face.  ([*Id.* at 5-6]); *see also*

3    *Kendall v. VISA U.S.A., Inc.,* 518 F.3d 1042, 1047-1050 (9th Cir. 2008).

4         Yet Tech Data has not plead *any* facts that would allow the Court to plausibly infer that

5    the entities that sold CRT Products to Tech Data were owned or controlled by it, the Defendants,

6    or other named co-conspirators.  Tech Data does not dispute this, arguing instead that it does not

7    have to.  This is not the law.  Under Ninth Circuit precedent, Tech Data must plead specific facts

8    that make it plausible to infer that it qualifies for the ownership or control exception.  *See*

9    *Kendall,* 518 F.3d at 1050.  Moreover, just months before the close of discovery, Tech Data

10    cannot credibly claim that it has not had the opportunity to discover the facts needed to plausibly

11    allege that it qualifies for the ownership or control exception.  At this late stage in the litigation,

12    Tech Data's complete failure to plead any facts that would allow the Court to plausibly infer that

13    Tech Data can satisfy the ownership or control exception mandates dismissal of its claims.[5]

14                          **CONCLUSION**

15         For the foregoing reasons, Thomson Consumer respectfully asks this Court to strike Tech

16    Data's unreasonably tardy claims against Thomson Consumer in the FAC with prejudice.

17

18

19

[5] Tech Data's reliance on decisions from the *TFT-LCD Antitrust Litigation* for the broad
20   proposition that plaintiffs generally need not plead evidentiary facts establishing the ownership
and control exception to *Illinois Brick* is also incorrect.  First, *In re TFT-LCD (Flat Panel)*
21   *Antitrust Litig. (Best Buy)*, No. 07-1827, 2013 WL 254873, at *3-4 (N.D. Cal. Jan. 23, 2013), is
inapposite because the plaintiff *did* identify the seller of LCD products, which was a sister entity
22   to the manufacturer, and the issue was whether the *initial* seller of the fixed-price goods must
own or control the direct purchaser.  And, Judge Illston's other rulings, when read together,
23   simply suggest that the level of pleading detail necessary to allege the ownership and control
exception depends on the circumstances of the alleged conspiracy and the litigation.  *Compare In*
24   *re TFT-LCD (Flat Panel) Antitrust Litig. (Viewsonic)*, No. 07-1827, 2012 WL 5949585, at *3
(N.D. Cal. Nov. 28, 2012) (holding that specific allegations of the seller of finished LCD
25   products was unnecessary in light of "significant evidence of the alleged conspiracy in the public
record") *with In re TFT-LCD (Flat Panel) Antitrust Litig. (Proview)*, No. 07-1827, 2013 WL
26   1164897, at *3 (N.D. Cal. Mar. 20, 2013) (holding that even where the plaintiff identified the
seller, conclusory allegations of control were insufficient to establish antitrust standing).
27

28

1

Dated:  March 13, 2014                          Respectfully submitted,

2

3
                                                  /s/ Kathy L. Osborn
4                                               Kathy L. Osborn (*pro hac vice*)
                                                Ryan M. Hurley (*pro hac vice*)
5                                               Faegre Baker Daniels LLP
                                                300 N. Meridian Street, Suite 2700
6                                               Indianapolis, IN  46204
                                                Telephone: +1-317-237-0300
7                                               Facsimile: +1-317-237-1000
                                                kathy.osborn@FaegreBD.com
8                                               ryan.hurley@FaegreBD.com

9                                               Jeffrey S. Roberts (*pro hac vice*)
                                                Faegre Baker Daniels LLP
10                                              3200 Wells Fargo Center
                                                1700 Lincoln Street
11                                              Denver, CO  80203
                                                Telephone: +1-303-607-3500
12                                              Facsimile:  +1-303-607-3600
                                                jeff.roberts@FaegreBD.com
13
                                                Calvin L. Litsey (SBN 289659)
14                                              Faegre Baker Daniels LLP
                                                1950 University Avenue, Suite 450
15                                              East Palo Alto, CA  94303-2279
                                                Telephone: +1-650-324-6700
16                                              Facsimile: +1-650-324-6701
                                                calvin.litsey@FaegreBD.com
17
                                                ***Attorneys for Defendant***
18                                              ***Thomson Consumer Electronics, Inc.***

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF THOMSON                              14                    No. 07-5944-SC; MDL No. 1917
CONSUMER'S MOTION TO STRIKE TECH
DATA'S FIRST AMENDED COMPLAINT