# B O I E S ,   S C H I L L E R   &   F L E X N E R   L L P

30 SOUTH PEARL STREET ● 11TH FLOOR ● ALBANY, NY 12207 ● PH: 518.434.0600 ● FX: 518.434.0665

January 31, 2014

**VIA EMAIL AND FEDEX OVERNIGHT**

Hon. Vaughn R. Walker (Ret.)
c/o Mr. Jay Weil
Federal Arbitration, Inc.
288 Hamilton Avenue, 3rd Floor
Palo Alto, California 94301
jay.weil@fedarb.com

      Re:    *In re Cathode Ray Tube (CRT) Antitrust Litigation*
              MDL No. 1917; Case No. 07-cv-5944 SC (N.D. Cal.)

Dear Judge Walker:

      On December 5, 2012, the European Commission issued a final decision (the "Decision") reflecting its determination that numerous companies—including defendants in this litigation—participated in an illegal global conspiracy to fix the prices for cathode ray tubes. Although the companies that were targets of the investigation have complete copies of the document, the EC has not yet released a public version of the Decision, which is now over a year old. Accordingly, we write on behalf of the Direct Action Plaintiffs ("Plaintiffs") to seek production of the full Decision by defendants Chunghwa, LG Electronics, Philips, Samsung SDI, Toshiba, Panasonic, and MTPD ("Defendants").

      EC decisions, like the one sought here, generally contain comprehensive recitations of facts that are determined through lengthy and thorough investigative and adjudicatory processes. For instance, with respect to the LCD conspiracy, which constituted a similar conspiracy to the one at issue in this case, the EC's decision spanned 119 pages and contained nearly forty of pages of detailed description of the relevant conspiratorial contacts between competitors.[1] As of this date, however, all that the EC has made available relating to the CRT conspiracy is a brief four page summary of the Decision, which contains only four paragraphs describing the factual basis of the EC's conclusions.

      The Decision addresses the very conspiracy and defendants that are the subject of this case, and is unquestionably responsive to outstanding discovery requests. But Defendants have refused to produce the document and have insisted—wrongly—that EC confidentiality provisions trump the operation of U.S. discovery rules and that it is Defendants who get to make

---

[1]     *See generally* Ex. 1.

that call. The EC has not intervened in this case, and this motion seeks only the Decision itself, not other internal EC documents that might disclose the EC's investigatory methods.

Defendants' argument that they need not produce the Decision is wrong. For the reasons explained below, they should be compelled under Rule 37 of the Federal Rules of Civil Procedure to produce the document, subject to the comprehensive protective order governing this case.

**I.   Background**

*The EC Decision.*   Following an investigation into the CRT conspiracy that began in 2006, the EC issued its Decision on December 5, 2012. Ex. 2 ¶ 1. According to the published summary, the Decision found that companies participated in a CDT cartel from October 1996 through March 2006, and a CPT cartel from December 1997 through November 2006. The cartels were "among the most organised cartels that the Commission has investigated." Ex. 3. Cartel members "fixed prices, allocated market shares and customers and restricted output." *Id.* The conspiracy was "highly organised" and "covered . . . the worldwide level." Ex. 2 ¶¶ 11-12. The Decision resulted in total fines of over €1.47 billion against Chunghwa, LG Electronics, Philips, Samsung SDI, Panasonic, Toshiba, MTPD, and Thomson (n/k/a Technicolor), each of which is a defendant in this multidistrict litigation.[2] Ex. 3.

At the time it issued its Decision over one year ago, the EC stated that it and "the companies involved [were] in the process of establishing" a redacted version of the Decision. Ex. 4. The EC noted that it was "trying to settle this issue as soon as possible with a view to a quick publication." Ex. 4. But a public version remains unavailable over one year later.

*Plaintiffs' discovery requests.*   On March 12, 2010, Direct Purchaser Plaintiffs ("DPPs") served defendants with a document request seeking "[a]ll Documents relating to, prepared for, submitted to, or received from any foreign governmental or legislative investigative body, including . . . the European Commission . . . ." Ex. 5.[3] Defendants uniformly refused to produce the Decision or other documents responsive to this request. This past summer, counsel for the DPPs sent a letter to Samsung SDI (one of the only Defendants remaining in the DPP case at that time), requesting production of the Decision pursuant to the existing document request. Ex. 7. Defendants refused and informed plaintiffs that they believed they were prohibited from doing so by EC procedure. In the fall, the DAPs sent a follow up letter to Defendants, Ex. 8, again

---

[2] Plaintiffs filed cases against Thomson in November 2013, and Thomson has not yet engaged in discovery in the litigation.

[3] Counsel for Defendant Chunghwa has represented to counsel for Plaintiffs that Chunghwa had settled with the DPPs prior to the DPPs' issuance of this discovery request and thus Chunghwa did not receive it and had no obligation to respond to it. Counsel for Plaintiffs served an identical request for production of documents on Chunghwa yesterday, January 30, 2014. Ex. 6. Thus, this dispute is not yet ripe with respect to Chunghwa, but it is ripe with respect to the other Defendants, each of which received the DPPs' request.

January 31, 2014
Hon. Vaughn R. Walker
Page 3 of 7

seeking production of the Decision.  Defendants again refused, citing EC procedure.  Ex. 9.  The parties have met and conferred and are at an impasse.

**II. The Rules of Discovery Obligate Defendants to Produce the EC Decision.**

    **A. The Decision is Responsive and Relevant.**

Plaintiffs do not understand Defendants to challenge the responsiveness of the Decision to pending discovery requests, nor its relevance to the case generally.  Nor, realistically, could they.  The Decision relates to precisely the activity that is the basis for Plaintiffs' complaints in these cases and was specifically requested.  Ex. 2 ¶¶ 9-12.  Even the limited information provided in the EC's press release reflects that the Decision would provide Plaintiffs with information relevant to at least: (1) the formation and duration of the conspiracy; (2) the broad geographic sweep of the conspiracy; (3) the actions by the conspirators that constituted price fixing, market allocation, and output restrictions; and (4) attempted concealment of the conspiracy.  *See* Ex. 3; Ex. 2 ¶¶ 1-4, 9-12.

In a letter on the issue, Defendants point out that the Decision applies European, and not U.S., antitrust law.  That, of course, does not mean the Decision is not responsive or relevant, particularly given the international nature of the alleged conspiracy.  *See* Ex. 2 ¶ 12 ("[T]he Asian cartel contacts covered . . . the worldwide level.").  Plaintiffs seek the Decision for the facts that form the basis of the fines, not the application of law.

    **B. Defendants Cannot Rely on Positions Taken by the EC in Other U.S. Cases To Exempt Defendants from their Discovery Obligations Here.**

The sole basis for Defendants' refusal to produce the Decision is their argument that they are prohibited by EC confidentiality provisions.  But the interests of Plaintiffs in enforcing the antitrust laws of the United States and the immediate relevance and importance of the Decision outweigh any deference this Court owes to the policies of the EC—particularly given the limited information sought (the Decision itself).  Courts in this Circuit have examined such comity concerns through the five-factor test set forth in *Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522 (1987):

> (1) The importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1082 (N.D. Cal. 2007) (quoting *Aerospatiale*, 482 U.S. at 544 n. 28).  These factors weigh in favor of production here.

January 31, 2014
Hon. Vaughn R. Walker
Page 4 of 7

***The Decision is important.*** As discussed above, the Decision and its assumed contents line up precisely with issues in this litigation. The Decision should contain the evidence that grounded the EC's conclusions on the formation and duration of the conspiracy; the conspiracy's geographic reach; the actions constituting or evidencing price fixing, market allocation, and output restrictions; and the participants' attempts to conceal the existence of the conspiracy.

***The request is specific***. Plaintiffs move at this time only to compel production of the Decision itself. Courts have held that even broader requests for production of all governmental-investigation documents are sufficiently narrow. *See In re Vitamins Antitrust Litig.*, 2002 U.S. Dist. LEXIS 26490, at *129 (D.D.C. Jan. 23, 2002) (compelling production of all documents given to government investigatory bodies by defendants). Accordingly, plaintiffs' far narrower request here certainly is limited.

***The Decision is not otherwise available.*** No alternative means presently exists of determining the material facts that the EC relied upon in issuing fines amounting to over €1.47 billion. *See* Ex. 3. The summary of the Decision contains a mere four paragraphs outlining in only general terms the bases for the fines, which is no substitute for a complete, thorough decision of the EC. *See generally* Ex. 2.

***Denying plaintiffs access to the Decision harms U.S. prosecution efforts and producing the Decision should not hurt the EC's investigative efforts.*** Plaintiffs' request does not implicate the EC's ability to effectively investigate and enforce antitrust laws. Plaintiffs do not seek to upset or penetrate the EC's investigative processes, and do not believe that ordering the production of the Decision will do so. To the contrary, the investigation here has already concluded and resulted in an order imposing fines. Moreover, Plaintiffs seek only the production of the Decision, not the underlying investigatory materials. And indeed, the EC regularly releases versions of its final decisions and makes them publicly available. In fact, over one year ago, the EC claimed that it would do so in this case. It simply has not done so. *See* Ex. 10; Ex. 4.

Furthermore, any concerns about business secrets or other confidential information from Defendants included in the Decision are lessened here, where few, if any, Defendants remain in the business of manufacturing CRTs. The CRT industry has shrunk enormously as LCDs and other technologies have entered the market. In addition, the protective order in this case shields confidential information from public view, including, any information in the Decision designated as confidential pursuant to this case's protective order.

The court in *In re Vitamins Antitrust Litigation* examined and rejected comity concerns similar to those raised by Defendants here. There, the magistrate judge granted a motion to compel production of all documents produced by defendants to the investigatory bodies of several governments, including the EC, even in the face of protests by the EC that such disclosures could harm its investigation and enforcement of other antitrust violations. *In re Vitamins Antitrust Litig.*, 2002 U.S. Dist. LEXIS 26490, at *129 (D.D.C. Jan. 23, 2002). The judge stated that "the concerns expressed by the representatives of the EC . . . are insufficient to protect the defendants' submissions to these authorities from disclosure standing on their own

and when weighed against the U.S. interests in open discovery and enforcement of its antitrust laws." *Id.* at 125.  So too here.

**Defendants' arguments to the contrary are unpersuasive.**  In correspondence, Defendants have asserted that they are not permitted to disclose the Decision because it contains information that the parties to the investigation agreed to keep confidential.  Ex. 10.  In support of this position, Defendants have directed Plaintiffs to other cases in which the EC intervened to argue against allowing plaintiffs in U.S. litigation to obtain documents relating to an EC investigation, specifically an order in *In re Air Cargo Shipping Services Antitrust Litigation*, 1:06-md-01775-JG-VVP, Dkt. No. 1625 (Dec. 19, 2011) (transcript of order attached hereto as Ex. 11), and the Special Master's Order Denying Motion of Direct Purchaser Class Plaintiffs to Compel Hitachi to Produce Foreign Regulatory Documents in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 3:07-md-01827-SI, Dkt. No 2686 (Apr. 26, 2011) ("*TFT-LCD* Order) (attached hereto as Ex. 12).  But decisive factors in those cases are not present here.

In *TFT-LCD*, Special Master Quinn denied a motion to compel a much broader production—that of *all* documents produced to the EC.  Moreover, in that case, the EC had not issued a charging document (called a Statement of Objections) to the defendant, and the defendant had already supplied the moving plaintiffs with all responsive documents which existed prior to the commencement of the EC investigation.  Ex. 12 at 2.  After an *in camera* review, the court found that more than 75% of the documents plaintiffs sought had already been produced by defendants in the civil litigation.  Ex. 12 at 6.  Our case is not comparable.  Defendants here have received a Statement of Objections, and were ultimately found to have violated EC antitrust law and fined substantial sums of money.  Unlike the *TFT-LCD* plaintiffs, who sought *all* documents exchanged between the EC and the defendants, this motion concerns a single document in the possession of Defendants—the final decision of the EC.

In *Air Cargo*, plaintiffs sought disclosure of the unredacted EC decision like we do here.  The court denied the motion to compel, relying largely on representations that a redacted version of that decision would be available soon after the hearing.  Ex. 11 ¶ 15:3-8, 15-25.  The court stated that "once the non-confidential version comes out, there may be something [movants] can point to in there that gives rise to a more specific need . . . ."  Ex. 11 ¶ 15:17-19.  In this sense, *Air Cargo* only makes clearer why our request here is reasonable.  The hearing in *Air Cargo* took place on December 19, 2011, more than one year after the defendants in that case were fined by the EC.  *See* Ex. 11.  Yet to this day, nearly *three years* after the decision was reached by the EC and two years after the relevant hearing at which defendants argued a public version would be available "in the near future," no such version of the decision is available.  *See* Ex. 11; Ex. 13; Ex. 14.  Likewise, with respect to the CRT conspiracy, over thirteen months has elapsed since the EC's decision became final, and no public version of that full decision has been made available.

Moreover, production of the single document Plaintiffs are requesting—the final decision of the EC—is consistent with the proceedings in the *In re Flat Glass Antitrust Litigation (II)*, MDL No. 1942.  In that case, defendants produced, at the plaintiffs' request, "an unredacted version of the EC decision."  *In re Flat Glass Antitrust Litigation (II) ("Flat Glass")*, MDL No. 1942, No. 08-mc-180 Dkt. 185 (W.D. Pa. July 29, 2009), at 2 (attached hereto as Ex. 15).

January 31, 2014
Hon. Vaughn R. Walker
Page 6 of 7

Plaintiffs later moved to compel the production of additional documents in defendants' possession which related to the EC investigation. With respect to that subsequent motion to compel, the EC intervened and requested that the court limit the production of certain of those other documents pertaining to the EC's investigation. Notably, the EC never objected to the production of its full, unredacted decision. *See* Br. of EC in Support of Motion for Partial Reconsideration (filed Oct. 8, 2009) *Flat Glass* Dkt. 200-1 (attached hereto as Ex. 16). Here, Plaintiffs are requesting production of *exactly the same* document (the final EC decision) that was produced in *Flat Glass* without any subsequent objection from the EC.

Defendants' policy arguments for nondisclosure are also flawed. An agreement between parties in a separate proceeding to keep information confidential does not bar a party outside of that agreement from discovering that information if it is otherwise responsive and relevant. *Board of Trustees of Leland Stanford Junior University v. Tyco Int'l Ltd.*, 253 F.R.D. 521, 523 (C.D. Cal. 2008). A foreign entity's assurance or demand of confidentiality does not trump the long-standing presumption of open discovery in the courts of the United States. *See In re Vitamins Antitrust Litig.*, 2002 U.S. Dist. LEXIS 26490, at *94-95 (D.D.C. Jan. 23, 2002) (holding that "assurances defendants may have received from foreign governmental authorities that their documentary submissions would be held in confidence, and considerations of international comity" were insufficient ground to deny a motion to compel relevant documents). This is particularly true where, as here, a protective order exists that protects confidential information from public disclosure, and plaintiffs will treat the Decision in accordance with any proper designation under that protective order. *Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006).

Plaintiffs are particularly concerned that Defendants in this case may be part of the reason for the EC's delay in releasing its Decision. According to the EC, the redacted, public version results from collaboration with "the companies involved" in the decision, a category that presumably includes Defendants. Defendants should not be permitted to benefit from a delay of their own making, even a delay which may be the result of good faith negotiation with the EC.

### III. Conclusion

Plaintiffs respectfully request that the Court order Defendants to produce the Decision of the EC.

Respectfully,

*/s/ Philip J. Iovieno*

Philip J. Iovieno

*Liaison Counsel for the Direct Action Plaintiffs*

January 31, 2014
Hon. Vaughn R. Walker
Page 7 of 7

Attachments 1-16.

cc (via electronic mail only):

Defense counsel of record
Class counsel of record
California Attorney General