1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    - - - - - - - - - - - - - - - X

3    IN RE:

4    AIR CARGO SHIPPING SERVICES
     ANTITRUST LITIGATION          : 06-MD-01775

5

6    - - - - - - - - - - - - - -X

7                    U.S. Courthouse
                     Brooklyn, New York
8

9                    Conference

10                   December 19, 2011
                     2:30 p.m.
11

12   BEFORE:     HONORABLE VIKTOR V. POHORELSKY
                 United States Magistrate Judge
13

14

15

16   Court Reporter:   ALLAN R. SHERMAN, CSR, RPR
                                Official Court Reporter
17                              225 Cadman Plaza East
                                Brooklyn, New York 11201
18                      Tel (718)613-2529  Fax (718)613-2630
                                asher99983@aol.com
19

20

21   Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Assisted Transcript.
22

23

24

25

```
 1   A-P-P-E-A-R-A-N-C-E-S:

 2


 3   For the Plaintiff:     LEVIN, FISHBEIN, SEDRAN
                                   BERMAN
 4                                 510 Walnut Street
                                    Suite 500
 5                                  Philadelphia, PA 19106-3697
                                     BY:  HOWARD J. SEDRAN
 6                                  HSEDRAN@LFSBLAW.COM

 7


 8


 9


10   For the Plaintiff:     LABATON SUCHAROW & RUDOFF, LLP
                                   100 Park Avenue
11                                 New York, New York 10017
                                    BY: GREG ASCIOLLA, ESQ.
12


13


14


15   For the Plaintiff:    KAPLAN FOX & KILSHEIMER, LLP
                                   805 Third Avenue
16                                 New York, New York 10022
                                    BY:  ROBERT N. KAPLAN, ESQ.
17                                         GREGORY K. ARENSON
                                           GARY L. SPECKS, ESQ.
18


19


20


21


22


23


24


25
```

```
1   APPEARANCES: (Continued)

2   DEFENDANTS:

3   For Korean                 PAUL HASTINGS, LLP
    Air                             75 East 55th Street
4                                     New York, N.Y.  10022
                                        BY: KEVIN C. LOGUE, ESQ.
5

6

7   For the Defendant:      LATHAM & WATKINS, LLP
    Singapore Air              555 Eleventh Street, N.W.
8   Singapore Air              Suite 1000
    Cargo                            Washington, D.C. 20004
9                              BY:  WILLIAM R. SHERMAN, ESQ.

10

11

12  For the Defendant:    HOGAN LOVELLS U.S., L.L.P.
    Air Canada                 555 Thirteenth Street, NW
13  AC Cargo                     Washington, DC 20004
                                    BY:  ASHLEY ANTLER, ESQ.
14

15

16  For the Defendant:    DLA PIPER,  LLP
    Cathay Pacific             1200 Nineteenth Street, NW
17                                   Washington, DC 20036
                             BY:  DEANA L. CAIRO, ESQ.
18                                DAVID H. BAMBERGER, ESQ.

19

20
    For EVA Airways
21                                   KIRKLAND & ELLIS
                                     BY:  KATE WHEATON, ESQ.
22

23

24

25
```

```
1   APPEARANCES: (Continued)

2

3   DEFENDANTS:

4   For Asiana Airlines

5                            O'MELVANEY & MYERS
                             BY:  ANGELA WILKS, ESQ.
6                                 BEN BRADSHAW, ESQ.

7

8
    For China Airlines
9                            SQUIRE SANDERS, LLP
                             BY:  JAMES DICK, ESQ.
10

11

12  For Air India

13                           RUSKIN MOSCOU FALTISCHEK, P.C.
                             BY:  E. CHRISTIAN MURRAY, ESQ.
14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE CLERK:  Civil cause for a status conference, In

2   Re Air Cargo Shipping Services Antitrust Litigation, docket

3   number 06 MD 1775.

4          MR. SPECKS:  Gary L. Specks, Kaplan Fox, for the

5   plaintiffs.

6          MR. KAPLAN:  Robert N. Kaplan, Kaplan Fox, for

7   plaintiffs.

8          MR. ARENSON:  Gregory K. Arenson, Kaplan Fox, for

9   plaintiffs.

10          MR. ASCIOLLA:  Gregory S. Asciolla from Labaton

11   Sucharow for the plaintiffs.

12          MR. SEDRAN:  Howard J. Sedran, Levin, Fishbein,

13   Sedran & Berman for plaintiffs.

14          MR. LANDAU:  Brent W. Landau, Hausfeld for

15   plaintiffs.

16          MR. SHERMAN:  William R. Sherman, Latham & Watkins

17   for defendants.

18          MS. CAIRO:  Deana L. Cairo, DLA Piper for

19   defendants.

20          MR. LOGUE:  Kevin C. Logue, Paul Hastings for Korean

21   Air.

22          THE COURT:  Good afternoon.

23          I have your agenda letter that was put together by

24   plaintiff's counsel, thank you.

25          So is there anything to add from the letter from the

1    defendants' standpoint?

2            MR. SHERMAN:  No.

3            THE COURT:  I might as well take things down from

4    the top, the pending motions.

5            I have received the further papers on the European

6    Commission issue.  The decision, I gather there is -- has a

7    redacted version yet been issued, a non-confidential version?

8            MR. SHERMAN:  William Sherman for Singapore Air.  My

9    understanding is that a draft non-confidential version has

10   been circulated in accordance with fair processes.  Their

11   comments have been made and it's working its way through that

12   process.

13           I can't tell you anything more than that.  I don't

14   think there is any standard set period of time but it is, as I

15   understand it, in that stage.

16           THE COURT:  The European Commission, I guess the

17   European Commission did submit a letter and the plaintiffs

18   responded to it.  I did find it curious that the Commission

19   did not address that Flighterer case, I think that is the name

20   of it, although I'm not sure I understand Flighterer, I was

21   reading through it, I'm not sure I understand the

22   interrelationship between the various parties.  It didn't seem

23   as though the European Commission was a party to that matter

24   but they submitted argument or they submitted something in the

25   nature of an amicus to the high court is it?

1          Maybe somebody can explain to me what exactly what

2     the Flighterer -- what the issue was in Flighterer because

3     there is obviously helpful language for the plaintiffs.

4          Mr. Landau is it?

5          MR. LANDAU:  Yes, your Honor.  Brent Landau for the

6     plaintiffs.

7          The Flighterer case which was decided by the

8     European Court of Justice which is the highest Court in Europe

9     actually involved the German Competition Authority, so that

10    national level version of the European Commission.

11         THE COURT:  So it's like, I know it's a rough

12    analogy but it's like a state versus the United States?

13         MR. LANDAU:  Similar, your Honor.

14         THE COURT:  I know that is not exactly the way they

15    set things up over there, and before you go too much further,

16    the European high court --

17         MR. LANDAU:  European Court of Justice.

18         THE COURT:  Thank you.

19         Who set that up?  Is that a creature of the European

20    Commission as well?

21         MR. LANDAU:  I'm a little bit out of my depth,

22    your Honor, but I think it is a creature of European Union

23    Law, the European Commission is the entity in the European

24    Union that handles its prosecutorial and adjudicatory

25    functions.

1          So the European Court of Justice is -- one way to

2     think about it would be the European Commission would be like

3     the Federal Trade Commission.

4          THE COURT:  Is that all it is?  I thought it had a

5     broader reach for some reason but okay.

6          You have given me at least some context.

7          MR. LANDAU:  Certainly, your Honor.

8          And so that the issue in the Flighterer case was the

9     same fundamental issue that we have here which is under what

10    circumstances can a competition authority in Europe deny

11    access to its materials to a party who has been injured by a

12    cartel and is seeking redress.

13         And the Court ruled that there is no basis to simply

14    deny access because of concerns that the Competition Authority

15    wants to keep things confidential but there needs to be a

16    balancing of the competing interest, the confidentiality

17    versus the interest of the victims.

18         The European Commission has recognized the

19    Flighterer case as having broader significance as indeed it

20    does because the same reasoning would apply to the European

21    Commission's own decisions and whether the confidential

22    versions of those decisions or other materials that result

23    from the investigation process should be made available to

24    injured victims.

25         THE COURT:  You said the European Commission has

1    recognized.  Where?

2                MR. LANDAU:  If you look, your Honor, at our

3    October 26 letter which is in response to the EC's letter.

4                THE COURT:  Yes.

5                MR. LANDAU:  One of the exhibits that we attached is

6    a speech from the European Commission's vice president for

7    competition policy in which he says that the Court in

8    Flighterer decided that there was no EU rule that would

9    justify a refusal to disclose EC related information.  And

10   there has been an application of Flighterer to the European

11   Commission materials in the National Grid case, which is the

12   other one that we cited where the parties made arguments about

13   the applicability of Flighterer and actually the Commission

14   agreed that so long as there was an appropriate order that the

15   parties would keep the materials confidential, that they could

16   be provided.

17               There was also, your Honor, just on Thursday of last

18   week so we haven't submitted it to you, but another European

19   decision in the CBC Hydrogen Peroxide versus European

20   Commission case.  And I can hand it up to you if you'd like or

21   we can file it, but the reason why that is relevant is because

22   as here and as in some of these other cases, the Commission

23   argued that its sort of general interest in protecting the

24   effectiveness of the leniency program outweighed a claimant's

25   right to have access to the materials.  And the Court ruled

1    that that interest wasn't specific enough as asserted to

2    refuse to provide information to the claimants.

3            So if your Honor would like, I can hand that up to

4    you or I can file it but it might be useful to you.

5            THE COURT:  Have the defendants been provided with a

6    copy?

7            MR. LANDAU:  Not yet.  I have a copy for them.  I

8    haven't given it to them.  It was just provided on Thursday.

9            THE COURT:  Of what significance is it that they are

10   there dealing with a leniency issue, a leniency, applicant for

11   a leniency versus the situation here where -- I'm not sure I

12   know exactly --

13           This judgment of General Court with chamber, is this

14   another Court?

15           This is obviously a different Court.

16           MR. LANDAU:  It is, your Honor.

17           I believe it is a -- it is a lower court than the

18   European Court of Justice in the European system.

19           THE COURT:  And this Court, what was sought what was

20   the same thing essentially that was being sought in

21   Flighterer, that is materials submitted by a leniency

22   applicant?

23           MR. LANDAU:  It was in this case one step removed in

24   that what the claimant sought was basically the index to the

25   commission's file that identified all the documents that would

1    be in the file.

2              To respond to your question, your Honor, I think

3    what we are seeking here which is just the final decision of

4    the commission is a much less sensitive request than is

5    usually at issue in these cases where the parties may be

6    seeking intermediate charging documents or the actual leniency

7    submissions of the defendants.

8              Here we're talking only about the output of that

9    process, the final decision.  The way the European law is

10   going is that even the more sensitive documents, the

11   investigatory documents are the ones that are not so shielded

12   from disclosure as the Commission has argued there and here,

13   so if anything, this presents an easier case for disclosure

14   because we are only talking about the final decision which is

15   itself a document that is binding on all European courts and

16   we're not asking for any of the investigatory materials, the

17   hearing transcript, the statement of objections such as for

18   example where at issue in the Payment Card case before Judge

19   Gleeson where the plaintiff's already had the final decision

20   and were seeking the more sensitive intermediate type

21   documents.

22              THE COURT:  So the defendants want to respond?

23              MR. SHERMAN:  Yes, your Honor, just briefly.

24              William Sherman again.

25              THE COURT:  Let me just pose this to you so you

1    know, I guess it's self-evident by the questions where I'm

2    going, but it strikes me that Flighterer -- the various more

3    recent decisions postdate Judge Gleeson's own decision denying

4    discovery of a similar nature that was sought in another

5    antitrust case.  And so this to some extent I suppose can be

6    taken as some -- these more recent decisions can be taken as

7    some indication of what European courts, how important

8    European courts and the European Union for that matter sees

9    the confidentiality of the materials that are sought here.

10           MR. SHERMAN:  Your Honor, I don't think so.

11           I apologize.  I lost my voice over the last couple

12   of days which most people who spend time with me think is a

13   good thing.

14           I think that's what the plaintiffs want you to

15   believe but in fact, I don't know the new case Mr. Landau

16   handed up but they are overstating Flighterer, they are

17   overstating the other cases, the British case in an attempt to

18   make you focus on that and not Judge Gleeson's finding in

19   Payment Card.

20           In the Flighterer case, the Court simply said in

21   making this determination, and Mr. Landau sort of said it but

22   tried to camouflage it, we don't have a blanket rule saying

23   you can't protect these things.  National courts and national

24   legislators in Europe can address this issue by taking into

25   account the things that the Commission had said are important.

1   So they said it's important for their leniency program to

2   protect information.  They said it's important that

3   confidential information and business secrets be protected.

4   And the decision simply said we won't have a blanket rule,

5   take that into account legislators and Courts in making those

6   decisions and weigh those things.  National Grid is no

7   different.  National Grid said yes, in this case we should

8   take that into account.  But there the Commission objected to

9   materials prepared for leniency application.  The Court said

10  the national court must protect business secrets and

11  confidential information.  And it said equally and subject to

12  the above conditions, that is the two I just mentioned, the

13  Commission would not object to the disclosure in proceedings

14  before the English Court concerning the applications of these

15  articles.

16          So in other words, plaintiffs want you to think that

17  the Commission said we don't care anymore.  That is not the

18  case at all.  They recognized what Flighterer said.  They have

19  taken the position they took in National Grid but here they

20  have come in and said now in three different letters; we hear

21  it's important to us, our leniency program is important.  If

22  you disclose this, and they said we're fully aware that it's a

23  protective order, this is harmful to our leniency program and

24  it's contrary to our policy because it will reveal business

25  secrets and confidential information.

1          And just to go back to the question before this

2     Court, it's not interpreting European law.  There may be very

3     good reasons that the Commission decided that it's going to

4     take a different position with respect to a private action in

5     a European Court where it's much more familiar with the

6     procedures and potential outcome.  And I don't know if the

7     fact that there are treble damages here have anything to do

8     with a different position if they are taking one but I suggest

9     to you that the plaintiffs want you to interpret European law

10    and the decisions of these courts and indeed why the

11    Commission would take a position one place and not take a

12    place in another.

13         We submit to you that what the Commission has said

14    to you is plain.  They have made it clear that they have a

15    concern and they object to what the plaintiffs seek here.

16         Judge Gleeson's decision exactly on point, it's the

17    comity concern.  The fact that it's a statement of objections

18    versus the final decision is not the question.  The question

19    is do the comity concerns, which are the most concerns in

20    making this decision, do those outweigh the plaintiff's need

21    for the information?

22         Here there can't be any question.

23         Plaintiffs at one point said we need this for class

24    certification.  Since they made that argument, they filed

25    their class certification papers, there is no apparent need --

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

1   they certainly haven't identified any need for this stuff in

2   what they put in.

3           In the meantime, the Commission is working its way

4   through the process and they will get -- I wish I could tell

5   you this next week, but at some point in the near future they

6   are going to get the non-confidential version.  Between now

7   and then, all we're doing is going through the class

8   certification process.

9           So we submit, number 1, they haven't shown any need

10  and number 2, whatever they want to say about those European

11  cases, the fact is that the Commission has made it clear that

12  it objects to the disclosure in this case and that is the

13  overriding comity concern under Judge Gleeson's decision and a

14  whole host of others that are to guide the Court's decision.

15          THE COURT:  I am convinced that the defendants have

16  the better of the argument at this point.

17          It may well be that once the non-confidential

18  version comes out, there may be something you can point to in

19  there that gives rise to a more specific need that might

20  justify some disclosure of some aspect but at this point, I

21  believe the comity concerns should prevent the production of

22  an unredacted version of the decision.

23          You don't have anything yet I guess but you'll get

24  something I think relatively soon.  But in any event, I see

25  the comity concerns as outweighing any immediate need.

1          Let me turn to the next issue which is the

2     attorney/client, the assertion of attorney/client privilege

3     with respect to some -- actually, I'm not sure exactly.  There

4     are two documents that I was looking at but I'm not sure

5     whether all or -- I think we had carved out some of those.

6          MR. SHERMAN:  Before we get into the substance of

7     the document, you may recall that we asked that the courtroom

8     be cleared other than the plaintiff's counsel who are

9     necessary to this and Singapore counsel.  If you want to

10    discuss this in terms of the detail with respect to any of the

11    documents, then I request that we do that again.

12         Again, this has been fully submitted.  If you have

13    other questions about the document.

14         THE COURT:  I had forgotten that.  You are right,

15    you did submit things ex parte.  Perhaps we can table that one

16    to the end like we did the last time and we don't have to have

17    everybody stick around.

18         I have to confess that I did not read the transcript

19    as I had intended to of the deposition of the 30(b)(6) witness

20    but I am going to have time over the next two weeks to do

21    precisely that and to issue the rulings on that and I

22    anticipate that I will do that before the end of the year.

23         So I can't deal with that today.  I'm not going to

24    be able to give you a ruling but I will shortly.

25         We have some new business apparently.

1          And we did get a transfer -- we got some documents

2     from the Central District of California with respect to I

3     guess an application that was made there to get access to a

4     Grand Jury transcript and the Court sent it over to us.

5          I think that the Central District of California

6     punted on it which is fine.

7          MR. KAPLAN:  Under the Douglas Oil case, there is

8     two parts.  The first part, the Grand Jury court which was the

9     Central District of California had first looked at it and made

10    a determination for any continued Grand Jury secrecy and

11    decided whether to transfer it and made some determinations

12    and there should be a transcript and exhibits.

13         I'm happy that it's here because --

14         THE COURT:  I don't think, excuse me for just a

15    moment, I don't know that we got the transcript yet.

16         THE LAW CLERK:  There is no transcript attached or

17    exhibits.  We're in the process of speaking with the clerk's

18    office here.

19         MR. KAPLAN:  We are trying to locate it and we have

20    been talking to the clerk there and they have been giving us a

21    transcript form, like ordering AO transcript.  So if there is

22    some way the two clerk's offices could get together on that.

23    I have also talked to the Justice Department about their

24    possibly sending it under seal.

25         THE COURT:  Jim, you are looking at that?

1          THE CLERK:  Yes, and I can speak with Mr. Kaplan

2    afterwards.

3          MR. KAPLAN:  I can give you some contacts.

4          THE CLERK:  Absolutely.

5          THE COURT:  The question I have is where do I pick

6    up in this process, because I gather there was some briefing

7    in the Central District of California as well.

8          MR. KAPLAN:  Yes.

9          THE COURT:  And maybe you can bring me up to where

10   that was procedurally and what I am now going to be called

11   upon to do.

12         MR. KAPLAN:  The Justice Department had an in-camera

13   filing that we haven't seen.  Then the plaintiffs and counsel

14   for Korean Air, counsel for the witness Hedo Lee.

15         THE COURT:  That is the witness?

16         MR. KAPLAN:  That is the witness.

17         He is I believe a current employee of Korean

18   Airlines.  He is based on the West Coast of the U.S. and they

19   did filings which we have.

20         So I think the procedure now would be when it

21   arrives, we set up some kind of briefing schedule in

22   conjunction with the Justice Department.

23         THE COURT:  So the Justice Department opposed

24   release of the Grand Jury transcripts in the Central District?

25         MR. KAPLAN:  Yes and no.  They didn't oppose the

1    transfer to this Court.  They did file in camera as I

2    understand it something as to the need for continued Grand

3    Jury secrecy.

4              THE COURT:  Understood.

5              And the Court there had to make what, an initial

6    determination that they didn't have a specific interest in

7    this, that they could just pass it on to me or to us over

8    here?

9              MR. KAPLAN:  Under Douglas Oil, there are two courts

10   involved.  This Court determines the need for us to get the

11   transcript because you are familiar with the litigation, you

12   know what is going on in this litigation and the posture of

13   this litigation.

14             The Grand Jury court transfers it, determines to

15   transfer it and also made findings as to, if you had the

16   order, the findings at to the continued need for Grand Jury

17   secrecy.

18             THE COURT:  I see.  I didn't read the order yet.

19             MR. KAPLAN:  That can be presented again here.  We

20   have to show particularized need which we said we think we

21   have shown.  The other people say they think we have not shown

22   it.

23             So that would be presented here once the transcript

24   arrives and we set up a briefing schedule.

25             THE COURT:  And presumably, the Department of

1    Justice is going to want to weigh in and presumably Korean Air

2    is going to want to weigh in.

3             MR. KAPLAN:  Correct.

4             THE COURT:  And that is the only --

5             MR. KAPLAN:  The witness.

6             THE COURT:  That is true.

7             MR. KAPLAN:  I think those are the parties, the

8    plaintiffs, the Justice Department, Korean Air and the witness

9    and if we ever find this transcript in the exhibits, we will

10   try to set up some type of schedule.

11            THE COURT:  The only transcript that is being sought

12   is the transcript of the testimony of this Mr. Lee?

13            MR. KAPLAN:  There is another part to it and that is

14   that we have made a similar motion for another witness Dallas

15   Sabrenian.  He is a former employee of Singapore Air.  And we

16   have made a similar motion in the Northern District of Georgia

17   and that is pending.  The judge there hasn't ruled on that,

18   has not transferred that transcript.

19            THE COURT:  Is that the same guy that is implicated

20   in the --

21            MR. SHERMAN:  Yes, your Honor.

22            MR. KAPLAN:  So once this first transcript arrives

23   and we see where the second one is, then we will try to --

24            THE COURT:  Do it all at one time?

25            MR. KAPLAN:  Do it all at one time.

1              MR. LOGUE:  Kevin Logue for Korean Air.

2              And we agree, a briefing schedule makes sense.

3              I should point out that Mr. Lee had separate counsel

4    in the California proceeding.  I assume he would want to put

5    something in here as well.

6              THE COURT:  Is he a former employee or present?

7              MR. LOGUE:  Mr. Lee is a present employee.

8              2 things I want to stress.

9              First of all, as I think maybe was mentioned, the

10   Court here did find that there was a clear need for continuing

11   Grand Jury secrecy and based that in part on the showing that

12   Mr. Lee's counsel made but in part on the in-camera submission

13   that the Department of Justice made.

14             Obviously, there has been several references here to

15   trying to get the transcript and the exhibits.  I'm not

16   entirely sure what is being referenced there but I do want to

17   stress that obviously the Grand Jury testimony and the

18   Department of Justice in-camera submissions should not be

19   released to plaintiff's counsel until your Honor has a chance

20   to look at this.

21             THE COURT:  I don't know that it ever should be

22   released.  It was submitted in camera to the Court there.  The

23   Court did not --

24             MR. KAPLAN:  We're not asking -- it can be made

25   later if the Justice Department submits something which may

1   take the position that we should have a chance to see it and

2   respond to it and of course this whole Grand Jury secrecy

3   issue changes over time.  There was supposed to be a trial in

4   January.  The former employees of Cargo pled so that could be

5   a changed circumstance.

6           THE COURT:  Right.

7           MR. KAPLAN:  So when it's ripe, we will address it.

8   We are not asking at this point for the release.

9           THE COURT:  Do you want me to set a schedule now

10  triggered by the -- I guess there are too many variables.  You

11  don't know when the -- we still have Georgia to deal with.  We

12  don't know when that will come in.  We might as well deal with

13  them all at the same time although I presume it's a different

14  investigation in Georgia, right?

15          I don't know.

16          MR. KAPLAN:  I think that it's all part of the

17  overall investigation.  Apparently there were two different

18  Grand Juries setting in two different places but it's all part

19  of the overall investigation but the Justice Department may

20  have views as to need for secrecy.  So I think the first step

21  is to try to get the Lee transcript and exhibits here.  Then

22  perhaps we can inquire what is going on in Georgia.  When they

23  are both here, we can address it.

24          THE COURT:  So I will look to the plaintiffs, who

25  I'm sure will do this, to coordinate with the parties who want

1    to weigh in on this and submit a briefing schedule whenever

2    you think the time is right, if we haven't met by that time.

3                MR. KAPLAN:  We will do that.

4                THE COURT:  We have another Korean Airlines at

5    issue,  Moo-ho Song.

6                MR. KAPLAN:  It's actually Moon-ho Song.  There was

7    an N left off.

8                We are going to advise the Court about what is going

9    on there, but just to refresh you, we filed in March of 2001

10   an application for letters rogatory which was granted.

11               THE COURT:  2011.

12               MR. KAPLAN:  2011.

13               THE COURT:  It's an old case but not that old.

14               MR. KAPLAN:  It's getting there.

15               In April we field a motion to have Korean Air

16   request Moon-ho Song to come to the U.S. because we submitted

17   a declaration from our Korean counsel who said at the time,

18   Mr. Sung was not represented by counsel.  Korean Air told us

19   he would represent himself.  Our local lawyer called him.  He

20   submitted an affidavit, a declaration saying that Moon-ho Song

21   had told his that if Korean Air requested him and paid the

22   way, we would come to the U.S. for a deposition.  So made the

23   application to have Korean Air request him to come to the U.S.

24               In April 2007 Paul Hastings representing Korean Air

25   filed a declaration from a Seung Jin Choe who said he now

1    represented Mr. Song and Mr. Song didn't want to come to the

2    U.S.

3          Your Honor, we appeared before your Honor on May 3.

4    Your Honor said this was very strange that suddenly he had an

5    attorney after he had made this application.  And you directed

6    Korean Air to send a letter to Mr. Song requesting him to come

7    to the U.S. saying plaintiff would pay his way.

8          On May 17, Korean Air filed that letter.  We have

9    never received a written response although Korean Air has told

10   us orally that he says no, he doesn't want to come, but we

11   would like you to ask Korean Air to please give us a written

12   response to the letter they sent which letter they filed May

13   17.

14          THE COURT:  I'm not sure I understand what you mean.

15   You want to make some sort of filing that says, or a

16   statement, some statement saying that they have heard from

17   Mr. Choe, did you say?

18          MR. KAPLAN:  A letter was sent to Mr. Song by Korean

19   Air, copied to his lawyer.

20          THE COURT:  I see.

21          MR. KAPLAN:  And we have never received a written

22   response.

23          If they have gotten a response, it seems to me, in

24   writing they should tell us what the response is, whether they

25   got a letter back, so we request that.

1          Just to bring it up to date, the court in Korea

2    scheduled an examination of Mr. Song for today, 4:30 Korean

3    time, which of course they are 14 hours ahead.

4          THE COURT:  Now I am really lost.

5          So somehow you compelled his testimony there

6    pursuant to the letters rogatory?

7          MR. KAPLAN:  Yes.  Taken from March 2011, it has

8    taken -- this is a new procedure.  This is the first

9    deposition under the Hague that ever occurred in Korea.

10         So it's a new procedure but the judge there issued,

11   I don't know if it's an order or request, for Mr. Song to

12   appear today and he didn't show up.

13         So the judge has reset it for January 30.

14   Hopefully, he will show up.  I believe the procedure is the

15   judge said if he doesn't show up he is either going to have

16   him arrested or fined or something.

17         So hopefully he will show up but it would be a lot

18   easier if they would bring Mr. Song over here as when our

19   lawyer first spoke to him, he said he would do if requested by

20   Korean Air and they paid his way.

21         So we would like something in writing about what

22   kind of response they got to the letter.

23         THE COURT:  Mr. Logue.

24         MR. LOGUE:  Logue, L-O-G-U-E, your Honor.

25         First of all, this is the first I'm hearing about

1   this request with respect to what happened back in the spring,

2   your Honor.

3           I would submit that that motion isn't properly tee'd

4   up.

5           We did comply with the Court's directive back in the

6   spring.  We did send a letter.  And as is apparent, Mr. Song

7   did not come to the United States.  They did pursue their

8   deposition and apparently got the judge to order the

9   deposition.

10          We don't represent this individual.  This is a

11  former employee.  As you know, at the advice of court, he does

12  have separate counsel.  We recently again last week gave them

13  the contact information and in fact we understand that their

14  Korean counsel has been in contact with this lawyer.

15          So --

16          THE COURT:  With the lawyer for Mr. Song?

17          MR. LOGUE:  For Mr. Song, right.

18          THE COURT:  I don't think there is any motion

19  pending.

20          Mr. Kaplan just wanted to know whether you had

21  received anything in writing or orally from Mr. Song saying he

22  is not going to appear.

23          MR. LOGUE:  To be perfectly candid, your Honor,

24  because this happened back in the spring, I don't remember how

25  specifically it was communicated but I believe it was an oral

1   communication from his counsel.  But I would hesitate to

2   represent to that definitively because it's been so long and

3   again, they gave us no notice that they were raising this

4   issue today.

5           THE COURT:  Is there any problem with you giving

6   them something telling them how you found out?

7           MR. LOGUE:  I can certainly inquire but I am not

8   prepared to commit to giving them something in writing because

9   I don't know what we got, if it came through our client or how

10  we know the information.

11          I can look at it and respond in some fashion and if

12  they think motion practice is in order, they can pursue it but

13  I would submit that today there is no properly filed motion or

14  there is no meet and confer application.

15          THE COURT:  It just doesn't seem to me that we have

16  to go to all that kind of extra effort.  It's a simple thing.

17  Did you find out and did he give you something in writing?  If

18  so, if you think it's privileged, although I can't imagine why

19  it would be, you can say we got something in writing but I

20  think it's privileged or you can tell me no if you didn't, you

21  can say no, we didn't.

22          Let them know in a couple of weeks.  After New

23  Years, you should let them know and you should be able to find

24  out between now and then whether you did get something in

25  writing.  If you did, give them a copy of it.  If you didn't,

1    tell them; and if you think something is privileged in there,

2    you can assert that.

3              So let's do that by January 9th.

4              MR. LOGUE:  Thank you, your Honor.

5              THE COURT:  What is the next item?

6              MR. KAPLAN:  This is just the schedule.  This is

7    in --

8              THE COURT:  You have already made a class

9    certification motion?

10             MR. KAPLAN:  We have made our class certification

11   motion.  They have deposed five of the plaintiffs and they are

12   going to address that.  That is item five.

13             THE COURT:  Yes.

14             MR. KAPLAN:  They have requested the deposition of

15   one of our experts and we are trying to get a date for that

16   and these are the dates.  So we don't file our reply brief

17   until May 25 and you can see the schedule there.

18             THE COURT:  All right.

19             Anything about that that needs adjustment?

20             MR. SHERMAN:  Thank you for asking that, your Honor.

21   William Sherman for defendants.

22             Nothing to formally ask the Court to do today but

23   since it's on the agenda, we thought we should inform the

24   Court that it's conceivable at this point that we will be

25   asking for an extension for our papers.

1          We are working hard but as often happens in these

2     cases, we didn't get all the backup materials from the

3     plaintiffs' expert when they filed their reports.

4          I have to say Mr. Arenson and Mr. Landau have been

5     very responsive to our requests and have provided additional

6     information.  The fact is that we are still getting it.

7          There was some data from a couple of the defendant

8     carriers that the plaintiffs experts used it turned out we did

9     not have.  We had to go and get that.  And one of the

10    plaintiffs has just now in the last week or so produced more

11    documents.

12         Again, this is not to say at this point that we

13    think we need an extension but just to sort of preview it for

14    the Court.

15         As you may recall, the plaintiffs had several

16    extensions in filing their papers and it is possible, I guess

17    I wouldn't say likely now, but possible that the defendants

18    will at some point after the new year be asking for an

19    extension of time for us to put in our papers.

20         MR. KAPLAN:  We were going to say we thought this

21    schedule was very attenuated.  We called when we presented the

22    first version of it and you said that is an awful long time

23    for defendants to put in their opposition papers.

24         We would hope that at the very least, the schedule

25    is kept here because the case will be six years old in

1    February and under the schedule, we don't start taking

2    depositions again until June and we have a lot more

3    depositions to take.

4              So we hope we can stick with this.

5              MR. SHERMAN:  We hope so too, your Honor, but I

6    didn't bring the list of extensions the plaintiffs put in

7    their initial papers but I'm happy to bring that to the Court

8    if and when we make our request.  We are working for that date

9    but just as a preview, we do have obstacles.

10             THE COURT:  I don't want to make any preliminary

11   ruling although I think Mr. Kaplan is right.  There was a five

12   month period.  Now, I'm sure that was set up because it

13   contemplated there would be expert discovery going on during

14   that process.  And hopefully, that won't slow things down but

15   it does seem like a long time and if you want extensions, the

16   mere fact that the plaintiffs got extensions is not to me a

17   compelling factor.  It's what occurred after they filed their

18   papers that wasn't anticipated that introduced delays to make

19   it difficult if not impossible for you for meet the deadline.

20             MR. SHERMAN:  Understood, your Honor, and my

21   argument isn't that  because they get an extension, we should

22   necessarily.  But they got their extensions, at least asked

23   for them in part because they thought they weren't ready to

24   file their papers because they felt there was still discovery

25   issues or data issues that they were trying to resolve.  That

1    is exactly our position.

2            THE COURT:  So I don't have to make any decisions

3    right now and won't, but apparently as part of this process,

4    there are depositions of class representatives that are

5    underway, are about to get under way.

6            There are instructions not to answer, so I'm not

7    sure I know exactly what that means.

8            MR. KAPLAN:  There are six class representatives.

9    Depositions of five of them have been taken.  There is one

10   more that -- it was I believe it was Emirates' counsel was

11   supposed to take the deposition of a plaintiff but we settled

12   with Emirates, filed the papers last week.  So that has been

13   put off to give new defendants' counsel -- I don't know who is

14   doing it but if we settle with that one too --

15           THE COURT:  There is a benefit to having this

16   process lengthen out.

17           MR. KAPLAN:  But in any event, they had some issues

18   in a couple of the depositions, I believe.

19           THE COURT:  Okay.

20           MS. CAIRO:  Good afternoon, your Honor.  Deana Cairo

21   for Cathay Pacific Airways, Ltd.

22           As Mr. Kaplan mentioned, we have done five of the

23   six plaintiffs' depositions and at two of the deposition,

24   plaintiffs SAT and FTS, there were instructions not to answer.

25   They were defended by Mr. Landau and Mr. Specks respectively

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

1    and the instructions not to answer were based on relevance.

2    So Mr. Mauro who represents Korean Airlines and took the

3    deposition of FTS and I who took the deposition of SAT have

4    conferred with Mr. Landau and Mr. Specks and we also had an

5    extensive collequy on the record during the deposition about

6    the instruction based on relevance and we feel that we are at

7    an impasse and just wanted to ask your Honor to set up a

8    briefing schedule for a motion to compel that we plan on

9    filing shortly after the new year so that we can have it heard

10   fairly early on because as your Honor pointed out, we do need

11   to file our opposition to class certification and these issues

12   directly bear on our opposition to class certification.

13           THE COURT:  Let me ask the plaintiffs; if you are

14   sole objection is relevance --

15           MR. LANDAU:  It's not.

16           THE COURT:  -- I'm not going to pay attention to

17   that argument.

18           MR. LANDAU:  I wouldn't make that argument.  That is

19   not what the instructions were based on and we can set it out

20   in more detail in our briefs.  The instructions were based on

21   a prior order of this Court and an agreement that we had with

22   the defendants about questions that they wouldn't go into at

23   the deposition.  It has to do with downstream discovery.  We

24   had your Honor's order from a year ago that downstream

25   information wasn't discoverable.

1          When we got the defendants' deposition notices, we

2     met and conferred with them and we said theses are pretty

3     broad, it looks like they get into downstream information.

4     They said don't worry, we are not going to ask any questions

5     about downstream information.

6          THE COURT:  So I guess it is a species of relevance

7     but you are resting on the prior ruling of the Court.

8          MR. LANDAU:  And their agreement that they weren't

9     going to do exactly that.

10         THE COURT:  So propose a schedule.

11         What do you want to do?

12         MS. CAIRO:  We propose that we file our brief on

13    January 4.

14         THE COURT:  Is it going to be a big brief?

15         MS. CAIRO:  No, your Honor.  Actually we had

16    asked -- Mr. Mauro had asked Mr. Landau and Mr. Specks if we

17    could file a six page brief because it involves two

18    depositions and they have not indicated to us yet.

19         THE COURT:  You guys talked about it, you know what

20    the arguments are so you should be able to anticipate each

21    other's arguments.

22         So I'll take six pages from you and six pages from

23    you, single spaced.

24         It ought to be enough for each side, right?

25         MR. LANDAU:  Probably too much.

1            THE COURT:  I'm glad to hear.

2            MS. CAIRO:  We won't use the six pages if we don't

3    need them.

4            THE COURT:  What date did you want to file?

5            MS. CAIRO:  January 4th.

6            THE COURT:  How much time do you need?

7            MR. LANDAU:  I'd like to say two weeks, your Honor.

8            THE COURT:  2 weeks is fine, January 14.

9            But you know what is going to happen.  This may be

10   used to extend that March 23rd deadline for them to file.

11           MR. LANDAU:  Only if you agree with them, your

12   Honor.

13           THE COURT:  2 weeks is not over-long and so we'll do

14   that.

15           MS. CAIRO:  Can we have a date as well to have

16   argument on it.  The status conference might be too long.

17           THE COURT:  I'll set a date for argument but subject

18   to being canceled if I don't think it's necessary.

19           MS. CAIRO:  Thank you.

20           THE COURT:  Let me do that right now because I think

21   that brings us to the end of the agenda except for the things

22   that you want to take up ex parte.

23           We also have a motion that was -- I think it may

24   have been withdrawn but we weren't sure.

25           There was a proposal to have interrogatories and

1   consolidate the interrogatories.  This goes back a few months.

2           MR. SEDRAN:  Your Honor, that's still on hold.

3           THE COURT:  We are going to mark it withdrawn

4   without prejudice just so it's not lingering around on the

5   docket.

6           MR. SEDRAN:  That is fine, your Honor.

7           THE COURT:  Is there anything else that we need to

8   discuss as a group other than scheduling perhaps the next

9   conference?

10          (No verbal response.)

11          (Pause.)

12          THE COURT:  Well, I could see you on January 20th at

13  11:00 for argument.

14          MR. SPECKS:  Your Honor, I hate to say it but I'm

15  going to be on vacation out of the country.  I don't get back

16  until the 24th and this does concern my client.

17          THE COURT:  Here is a good date, January 26.

18          MR. SPECKS:  That is fine, your Honor.  I appreciate

19  it.

20          MR. LANDAU:  That is fine with me also.

21          THE COURT:  11:00 a.m. on that date.  How is that?

22          MR. SPECKS:  That is fine.

23          THE COURT:  Okay.

24          MR. KAPLAN:  If we have other things, I guess we

25  can --

1              THE COURT:  Whoever wants to attend can attend.  The

2    only ones who have to attend -- I guess it's pretty much all

3    defendants and plaintiffs.

4              MR. SHERMAN:  I don't need to be here for the

5    argument if that was a case management or status conference.

6              I'm actually not able to come in but if it's

7    strictly argument, it's irrelevant if I'm here.

8              THE COURT:  Let's do it this way.

9              Unfortunately, that is the only hole that I have.  I

10   don't want to put it off too much beyond that because this

11   needs to be done and decided relatively early.

12             I'll schedule it for argument.  If there is

13   something that -- I don't think it would be anything

14   substantive.  It may be something, who knows what happens with

15   this -- the Grand Jury business.

16             If it turns out that it's just a matter of

17   scheduling something for that, we will do that but we won't do

18   anything substantive.

19             MR. SHERMAN:  So 11:00 a.m. on the 26th?

20             THE COURT:  Yes.

21             In terms of case management, I should probably

22   schedule something 90 days from now or so, something like

23   that, mid-March, earlier, later.

24             What do you think?

25             MR. KAPLAN:  Maybe early March, and if we don't need

1  | it, we will cancel it.

2  |         THE COURT:  I do have time in the first week of

3  | March, on the sixth, seventh or eighth.  The eighth is Purim.

4  | I don't know if that matters but on the seventh.

5  |         MR. SHERMAN:  The sixth.

6  |         THE COURT:  Tuesday the sixth.

7  |         Morning or afternoon?

8  |         I have all day.

9  |         MR. KAPLAN:  I usually prefer the afternoon for

10 | people coming from out of town.

11 |         THE COURT:  So 2:30 on March 6th.

12 |         So if that is all for the group as a whole, we are

13 | adjourned and we'll take up once the room is cleared the

14 | attorney/client privilege matter regarding Singapore Air.

15 |         (Matter concluded.)

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |