Martin Quinn
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 982-5267
Fax: (415) 982-5287

SPECIAL MASTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATON<br><br>This Order Relates to:<br><br>ALL CASES | **CASE NO. M:07-cv-01827-si**<br><br>**MDL No. 1819**<br><br>**SPECIAL MASTER'S ORDER DENYING MOTION OF DIRECT PURCHASER CLASS PLAINTIFFS TO COMPEL HITACHI TO PRODUCE FOREIGN REGULATORY DOCUMENTS (Hrgs. 12/10/10, 3/25/11)** |

On October 25, 2010, Direct Purchaser Class Plaintiffs ("DPPs") filed a motion to compel Hitachi[1] to produce all communications and documents exchanged between Hitachi and antitrust regulators at the European Commission ("EC") and the Japan Fair Trade Commission ("JFTC").

---

[1] As used herein, "Hitachi" refers collectively to Hitachi Ltd., Hitachi Displays, Ltd. and Hitachi Electronic Devices (USA), Inc.

1

On December 10, 2010 all interested counsel appeared before me for a hearing on the motion. On March 25, 2011 I conducted an *in camera* hearing with counsel for Hitachi to review the documents at issue in the motion. Having considered all the written and oral arguments and evidence submitted, and the various submissions from the two agencies, I now rule as follows.

## I. INTRODUCTION

A. Procedural History:

In early June 2010, counsel for DPPs advised me that they intended to bring a motion to compel Hitachi to produce all documents exchanged with any foreign regulatory documents. Following a conference call on June 3, 2010 and subsequent submissions, on June 30, 2010 I ordered that the motion should proceed only as to documents exchanged by Hitachi with two publically-announced investigations by the Japan Fair Trade Commission and the European Commission. (*See*, Docket No. 1827.) In that Order, I required Hitachi to state whether the EC had issued to it a Statement of Objections,[2] and if so, whether Hitachi had applied to the EC for leniency, whether Hitachi had produced in this case all pre-existing business documents it had submitted to the EC, and where responsive documents were located. In deference to objections from the EC, I excused Hitachi from supplying a log of the documents it was withholding and allowed it to state only the types of document typically exchanged in EC investigations.[3]

On October 12, 2010 Hitachi stated under oath that the EC had not issued a Statement of Objections to it, that Hitachi had produced all pre-existing business documents exchanged with the EC or the JFTC, and that all responsive documents (other than those already produced in this case or submitted to the Department of Justice) are located in Japan.[4]

---

[2] In EC procedure a Statement of Objections is comparable to a complaint against a party under investigation.

[3] Since the JFTC had not expressed to me any concerns about confidentiality, I ordered Hitachi to provide a specific log of all documents exchanged with the JFTC. As part of its objection to my Order, Hitachi did submit to the Court an expression of the JFTC's concerns. [Docket No. 1870] Therefore, the Court allowed Hitachi to provide as to the JFTC as well only a list of documents typically exchanged. [Docket No. 2036]

[4] Hitachi did not disclose whether it had applied to the EC for leniency because no Statement of Objections had been issued to it, and did not disclose whether it had applied to the JFTC for leniency because Art. 8 of the JFTC Rules on Reporting and Submission of Materials regarding Immunity from or Reduction of Surcharges prohibits Hitachi from doing so.

2

The parties submitted extensive briefing and evidence. On November 22, 2010 Alexander Italianer, the Director General of Competition for the EC, submitted to me a letter expressing his opposition to disclosure of any documents that may have been exchanged with Hitachi during the EC investigation or any information concerning a possible application for leniency. (*See*, Docket No. 2360-3.) He stated that "disclosure…is very likely to seriously undermine the effectiveness of public antitrust enforcement in the European Union as well as other jurisdictions." Finally, he noted that "Hitachi may be under investigation for alleged misconduct in cartel behavior in the TFT-LCD sector" and that the EC's investigation was "ongoing." Following a hearing on December 10, 2010, I ordered Hitachi to submit to me for *in camera* review the documents it had exchanged with both the EC and JFTC. (*See*, Docket No. 2244.) Hitachi filed an objection to my Order. The JFTC submitted a letter dated February 3, 201 opposing the *in camera* review. (*See*, Docket No. 2392.) The EC also opposed the *in camera* review in its letter of February 22, 2010, filed under seal. (*See*, Docket No. 2485.)[5] On February 22, 2011, the Court overruled Hitachi's objection to my Order. (*See*, Docket No. 2482.)

Hitachi submitted to me two CDs containing all documents it had submitted to or received from the JFTC and the EC.[6] The CDs contained JFTC-related documents Bates numbered 1-2697, and EC-related documents Bates numbered 1-2137. On March 25, 2011 I conducted a three-hour *in camera* hearing with counsel for Hitachi during which its Japanese counsel explained the content and significance of the Japanese language documents pertaining to the JFTC, and its EC counsel from London explained the significance of the EC set of documents. The transcript of the hearing has been made available only to counsel for Hitachi

---

[5] The redacted version is Docket No. 2485-02.

[6] In the *in camera* hearing, Hitachi explained that it no longer had copies of some pre-existing business documents that the JFTC had seized in a "dawn raid." Hitachi represented that other than the seized documents and possibly some other pre-existing business documents it had submitted to the JFTC that it cannot now identify, it had provided me with all documents submitted to or received from the two agencies.

3

and me. On March 16, 2011, the JFTC submitted a letter to the Court asking that "any future order not make reference to the confidential information submitted by [it] under seal."

I reviewed the EC-related materials, which were in English, page-by-page. I determined not to require Hitachi to spend upwards of $100,000 to have the JFTC documents translated until I had learned their general nature. Therefore, during this *in camera* review, I relied on the description of the contents of the JFTC documents provided on the record by Hitachi's Japanese counsel.

### B. The JFTC-Related Documents:

Hitachi represented that the JFTC's investigation, and hence all the documents Hitachi submitted to the JFTC, concerned only sales in Japan and only sales of LCD panels to Nintendo. The documents were created during both an investigation phase and a hearing phase. To the extent I can describe them without unduly revealing their contents, the documents consist of: (a) Requests for Information and Hitachi's responses thereto; (b) non-substantive procedural documents; (c) lists of documents submitted to and seized by the JFTC; (d) opinion letters from counsel for Hitachi; (e) briefs and other material relating to the cease & desist order issued to Hitachi regarding Nintendo; and (f) statements from two Hitachi witnesses and one witness each from Nintendo and Sharp. Hitachi represented, and has previously stated under oath, that it has produced in this case all pre-existing business documents that it supplied to the JFTC.

### C. The EC-Related Documents:

The EC-related materials consist of: (a) Requests for Information from the DG Competition dated December 7, 2006 and July 29, 2008, and Hitachi's responses, including supporting pre-existing business documents; (b) correspondence between Hitachi's London counsel and the DG Competition; and (c) other submissions. The submissions of information include both a complete version, and a version redacted to shield trade secret information. All Japanese language EC-related documents are accompanied by translations.

4

## II. ANALYSIS

The issue for decision is whether, applying the factors required by Supreme Court in *Societe Nationale Industrielle Aerospatiale v. U.S. District Court*, 482 U.S. 522 (1987) ["*Aerospatiale*"], the court should require Hitachi to disclose any or all of the JFTC and EC-related documents in its possession. Those factors, as applied to this case, are: the importance of the documents to this MDL litigation; the specificity of DPPs' request; whether the documents originated in and are located in the United States; whether DPPs have alternative means of obtaining the information contained in the documents; and whether the interest of the United States in enforcing its antitrust laws outweigh the interest of the JFTC and EC in maintaining confidentiality of the documents.

Plaintiffs place great weight on the district court's application of the *Aerospatiale* factors in *In re Vitamin Antitrust Litigation ("Vitamins")*, Misc. No. 99-197 (TFH), MDL No. 1285, 2002 U.S. Dist. LEXIS 26490 (D.D.C. Jan. 23, 2002). However, that out-of-circuit case did not address specific assertions by the EC and JFTC of their confidentiality interests, such as have been submitted in the present case. Thus, I find more persuasive the more recent decisions that did take into account such specific assertions by foreign antitrust authorities. *See, e.g., In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 05-MD-1720(JG)(JO), 2010 U.S. Dist. LEXIS 89275 (E.D. NY Aug. 27, 2010) (concluding the EC's asserted interest in confidentiality was entitled to prevail based on an analysis of the *Aerospatiale* factors); *see also, In re Rubber Chemicals Antitrust Litigation*, 486 F.Supp.2d 1078, (N.D. Cal. 2007) (finding "any marginal benefit that the plaintiff would gain from disclosure is outweighed by the impact that disclosure will have on the Commission's interests in the effective enforcement of its competition laws and its cooperation with the U.S. to enforce those laws internationally").

Applying the *Aerospatiale* factors, and based on my *in camera* review of the documents at issue, I find the marginal benefit of allowing discovery of the documents to be outweighed by the impact that disclosure will have on the EC's and JFTC's interests in the effective

5

enforcement of their respective competition laws and their cooperation with the U.S. to enforce those laws internationally.

*Importance of the documents*: Plaintiffs contend that the documents are important to this litigation because: 1) one witness has invoked the Fifth Amendment and two others are expected to do so; 2) Hitachi has produced between two and three million pages of mostly Japanese-language documents; 3) information contained in the requested documents may ameliorate the difficulties plaintiffs have faced in discovery; and 4) any doubts about how helpful the information will be should be resolved in plaintiffs' favor. Having now reviewed the documents *in camera*, I do not find any of these contentions persuasive.

More than 75% of the documents appear to be pre-existing business documents. Most of the information Hitachi supplied in response to the agencies' Requests for Information appears to be general information about its corporate structure, the identity of LCD-related employees, and general sales and market share data. Based on my review of the EC documents, and assuming that the JFTC documents are not materially different, fewer than 10% of the documents (other than pre-existing business documents) appear to contain cartel-specific information about competitor meetings and information exchanges. Moreover, plaintiffs have already obtained through discovery much, if not all, of the information contained in these documents: corporate structure, key witnesses, and competitor-meetings. Finally, as noted above, the JFTC investigation focused only on sales in Japan, and specifically on sales to Nintendo, none of which are at issue in the present case. This case, of course, deals exclusively with U.S. sales to a large number of manufacturers of a wide variety of products. Therefore, the JFTC documents as a whole appear to have little relevance to this case.

The fact that certain documents may make it easier for a party to review a large number of non-English language documents does not render such documents *substantively* important to the case. Defendants' contention that plaintiffs are seeking "an opportunity to free ride on the investigations of the EC and the JFTC," and their reliance on work product protection cases, is not entirely without merit. Plaintiffs appear to be seeking a short-cut to dealing with the customary burdens of proving their case. In the work product context, absent a strong showing

6

of need, the fruits of another party's lawyer's efforts are outside the scope of discovery. *See Hickman v. Taylor*, 329 U.S. 495(1947). The Court in *Hickman* explained that:

> "Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."

A similar rationale makes sense in the context of exchanges between companies and foreign antitrust authorities, because candor suffers when there is a risk of later disclosure to an adverse party. Thus, as in the work product context, it seems appropriate here to exclude from the "importance" factor documents created or exchanged in confidence for purposes of legal proceedings in the foreign country absent a showing that the substantive information is not otherwise available to the propounding party. Here, plaintiffs admit they have received millions of relevant documents, albeit in Japanese. They have not shown that the only way they can adequately review those documents is to first review Hitachi's submissions to the EC and JFTC.

With regard to the witnesses who have asserted the Fifth Amendment, plaintiffs have not shown that the numerous other witnesses available to them cannot supply the information they need. In the event a significant number of other witnesses assert the Fifth Amendment, or for other reasons plaintiffs are unable to obtain deposition testimony from witnesses with adequate knowledge of the facts, plaintiffs may seek reconsideration of this order as to any statements by, or documents authored by, those witnesses that may be included among the EC-related or JFTC-related documents at issue in this motion.

With regard to Judge Illston's remarks on the record regarding plaintiffs having the "benefit of the doubt," those comments were made before I ordered and conducted the *in camera* review, and were based on the then-existing ambiguity as to what responsive documents existed. *See* Declaration of Brendan P. Glackin in Support of Direct Purchaser Class Plaintiffs' Motion to Compel Production of Foreign Regulatory Documents, Exh. D at pp. 13-14. It is far from clear

7

whether Judge Illston would expect any such "benefit of the doubt" to remain in effect after Hitachi disclosed to me the actual documents at issue.

Case law teaches that where the disputed documents are cumulative or not "outcome-determinative" or "directly relevant," a court should be cautious about requiring disclosure in the face of comity objections. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992). Here, the documents relevant to this litigation are largely cumulative and are *not* outcome-determinative. Therefore, I conclude that this factor weighs somewhat against requiring Hitachi to produce.

*Specificity of DPPs' requests*: As I noted in my prior order, this factor weighs in favor of the requesting parties. Although their initial Request Nos. 1-4 were quite broad, they made every effort to obtain a log or description of the documents so that they could focus in on those documents they really seek. Hitachi, following the direction of the EU and the JFTC, declined to provide any such specifics. Thus, the requests were as specific as possible under the circumstances.

*Origin and Location of the Documents*: Except for those documents provided to DOJ or produced in this case, and some that are in possession of Hitachi's U.S. counsel, the disputed documents originated in Japan or Europe, and are now located in London and Japan. However, Hitachi is readily able to produce the documents if so ordered, and is subject to this court's jurisdiction. Therefore, this factor weighs strongly in favor of requiring Hitachi to produce.

*Alternative Sources for the Information*: As noted above, DPPs already have the pre-existing business documents, and it is highly likely that virtually all the information contained in the disputed documents is known in some form to DPPs. What DPPs do not know, and what the disputed documents do show, is which documents, which competitor meetings, which other events and evidence Hitachi considered significant enough to disclose to regulators. That is, the documents would reveal Hitachi's <u>selection</u> and <u>organization</u> of materials, and hence the priority it gave to some information over other. However, it might well be inaccurate to infer that the information Hitachi disclosed to regulators was the <u>most relevant</u> to the case or <u>most damning</u> to Hitachi, or that it reflected Hitachi's priorities, because Hitachi may have had a range of motives

8

in selecting the material to disclose. Most obviously, it would have disclosed what the regulators asked for, which may not be what DPPs want or need to advance their case. On balance, while the documents I reviewed would no doubt be of some use to DPPs and even may conceivably contain a few items of previously-unknown evidence, I conclude that this factor weighs somewhat against requiring Hitachi to produce.

*Balancing of Interest of U.S. in Enforcing Antitrust Laws Against Interest of Foreign Regulators in Confidentiality.* This factor is the most important[7] and the most difficult to evaluate. The two agencies have expressed concern to the court about disclosure of materials obtained or generated in connection with ongoing antitrust investigations. Both agencies express their strongest objections to any disclosure of whether Hitachi has applied for leniency, and if it has, any disclosure of materials it submitted in connection with such an application.[8] The regulations of both agencies prohibit a party from disclosing whether it has applied for leniency.[9] A breach of the confidentiality obligation will bar a party from obtaining leniency. Nothing in this Order is intended to imply or suggest whether Hitachi has in fact applied for leniency from either the EC or the JFTC.

The agencies' main concern is basically that the leniency programs have been fertile avenues for enforcement of antitrust laws, and that parties would be dissuaded from applying and furnishing information if they feared that the information would be made available in private

---

[7] *See Richmark*, 959 F.2d at 1476.

[8] The EC adopted its leniency program in 2002, which allows a party to an investigation to obtain a reduction in any fine in return for providing information and documents about the alleged cartel. The JFTC adopted a comparable leniency program in 2006. Both programs afford higher fine reductions to parties that file for leniency early. An applicant to the EC for leniency must show that it has contributed "significant added value" to the Commission's investigation – thus again providing an impetus to parties to apply early and to be very forthcoming with information. *See* Commission Notice on Immunity from fines and reduction of fines in cartel cases (2006/C 298/11) ("Leniency Notice"), ¶ 24.

[9] The JFTC prohibits disclosure of a leniency application "without justifiable reason." *See* Declaration of Harumichi Uchida ("Uchida Decl.") (Docket No. 1870), ¶¶ 8 & 9. The EC prohibits an applicant for leniency from disclosing "the fact or any of the content of its application" unless and until the EC has issued the applicant a Statement of Objections. *See* Leniency Notice, ¶ 12(a). At that point, all parties to whom a Statement of Objections has been issued may see leniency applications, but are limited to viewing them on the Commission's premises, may not disclose the information to third parties, and must use the information only for purposes of their own defense. *See* Leniency Notice, ¶ 7.

9

1 antitrust actions in the United States. The JFTC reports that the number of leniency applications
2 has increased from 26 in 2005 to 85 in 2009. Uchida Decl., ¶7 (Docket No. 1870). The EC
3 maintains that its leniency program is its "most important investigative tool…which has proven
4 to be a highly successful instrument for detecting cartels in Europe." *See* EC letter dated
5 2/15/11(Docket No. 2485-2). The JFTC expresses concern that disclosure of leniency-related
6 materials could "put pressure" on an applicant or "cause the collusion of stories." *See* JFTC
7 letter dated 2/3/11 (Docket No. 2392). Moreover, in the EC, if leniency materials submitted by
8 one party became public, other parties would be dissuaded from applying if they concluded that
9 they could not provide "significant added value." As long as leniency materials are secret, other
10 parties will be more inclined to file themselves in the hope that their information will prove to be
11 new and important. Finally, the JFTC stated that its investigation of Hitachi as to LCD-related
12 conduct "has yet to be completed." The EC stated that the fact that Hitachi was not an addressee
13 of the Statement of Objections in May 2009 "does not necessarily exclude the possibility that
14 Hitachi may be under investigation for alleged participation in cartel behavior in the TFT-LCD
15 sector" for conduct other than that which was the subject of the May 2009 Statements of
16 Objections. *See* EC letter dated 11/22/10 (Docket No. 2360-3). Therefore, it is clear that any
17 leniency materials which may be in these documents should not be disclosed.

18 As to materials submitted by Hitachi in response to the agencies' requests for
19 information, for the reasons set forth above I conclude that these materials are not of sufficient
20 novelty or importance to the case to justify their disclosure.

21 I conclude that the JFTC's and EC's interests in maintaining the confidentiality of
22 materials obtained or generated in connection with ongoing antitrust investigations outweighs the
23 United States' interest in allowing discovery of the materials in this case. It does not appear that
24 the United States has a strong interest in obtaining this information. While any information that
25 would tend to incriminate an antitrust offender is in some sense useful to the enforcement of
26 American antitrust laws, in this particular case the material itself largely duplicates or overlaps
27 other information produced in discovery and available to enforcement authorities. The
28 Department of Justice located enough evidence to obtain guilty pleas from Hitachi and other

defendants. Plaintiffs in this case have obtained about seven million documents in discovery from defendants. My review of the EC and JFTC documents did not reveal any significant areas of information that has not been elicited already. Although it is possible that the documents could disclose an additional witness, or a previously undetected meeting of conspirators, or a new nuance of an admission by Hitachi, that possibility in this case is slim and thus pales in comparison to the likely damage that mandating disclosure could do to the enforcement regimes of Japan and Europe. Accordingly, I conclude that this factor weighs strongly against requiring disclosure of any of the EC-related and JFTC-related documents, whether or not they relate to any leniency request that may or may not have been made by Hitachi.

## Order

Based on the foregoing analysis of the *Aerospatiale* factors, and good cause appearing, it is ORDERED that DDPs' motion to compel is DENIED.

Dated: April 26, 2011

/s/
Martin Quinn, Special Master

11