**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| IN RE: FLAT GLASS ANTITRUST | ) | Master Docket |
| LITIGATION (II) | ) | Misc. Action No. 08-mc-180 |
| | ) | MDL No. 1942 |
| | ) | |
| This Document Relates to: | ) | |
| All Actions | ) | Judge Donetta W. Ambrose |
| | ) | |
| **European Commission** | ) | |
| | ) | |
| Motion For Partial Reconsideration | ) | Electronically Filed |

_____


**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY INTERVENOR-**
**APPLICANT EUROPEAN COMMISSION TO RECONSIDER IN PART THE COURT'S**
**ORDER COMPELLING DISCOVERY OF CONFIDENTIAL MATERIALS**

Carter G. Phillips (DC 264176) (*pro hac vice*)
Richard Klingler (DC 438908) (*pro hac vice*)
James C. Owens (DC 490140) (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
Phone:  (202) 736-8000
Fax:      (202) 736-8711
Email: cphillips@sidley.com
            rklingler@sidley.com
            jcowens@sidley.com

*Attorneys For Intervenor-Applicant European*
*Commission*

i

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ...................................................................................................... 1

STATEMENT OF THE CASE ..................................................................................... 1

I.    EC Law ........................................................................................................... 1

II.    The European *Flat Glass* Cartel Investigation ................................................ 3

III.   Civil Proceedings Respecting *Flat Glass* In The United States ....................... 3

LEGAL STANDARD .................................................................................................. 5

ARGUMENT ............................................................................................................... 5

I.    International Comity Requires Preserving The Confidentiality Under EC Law Of Certain Documents That Plaintiffs Have Requested ........................................... 5

    A.    The EC's Interest In Preserving Confidentiality Is Clearly Important, Advances The U.S. Government's Interest, And Only Marginally Impairs The Interest Of Private Litigants ................................................................ 8

        1.    *The EC Has A Strong And Longstanding Interest In Preserving The Confidentiality Of Certain Investigatory Materials Guaranteed By Its Laws* ..................................................................... 9

        2.    *The United States Government Has An Interest In Preserving The Confidentiality Of Documents Generated Pursuant To An Antitrust Amnesty Program, Including The EC's Program* ..................... 11

        3.    *The EC's Interest Is Confirmed By The Documents' Confidential Status* ......................................................................................... 14

    B.    Confidentiality Is Narrowly Tailored Here, So The Documents That Should Be Protected Are Few In Number And Not Important To This Litigation ................................................................................................ 15

    C    The Document Request Was Not Sufficiently Narrow ........................... 17

    D.    The Information Did Not Originate In The United States ....................... 18

    E.    There Are Alternative Means Of Securing The Information ................... 18

II.    The Act Of State Doctrine Prohibits Judicial Challenge To The Commission's
       Promise Of Strict Confidentiality In Exchange For Cooperation ...................................19

CONCLUSION ............................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288 (3d Cir. 2004) ...................................7

*Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964) ......................................................19

*Gross v. German Found. Indus. Initiative*, 456 F.3d 363 (3d Cir. 2006) ..................................6, 19

*Hilton v. Guyot*, 159 U.S. 113 (1895) ...........................................................................................6

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) .................................................1

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669 (3d Cir. 1999) ..................5

*Phila. Gear Corp. v. Phila. Gear de Mexico, S.A.*, 44 F.3d 187 (3d. Cir. 1994)...........................6

*Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275 (7th Cir. 1990) ...............................................................................................................................................11

*Remington Rand Corp.-Del. v. Bus. Sys. Inc.*, 830 F.2d 1260 (3d Cir. 1987) ................................6

*Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) .......................7, 8

*In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078 (N.D. Cal. 2007) ................15, 17, 18

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522 (1987).............................................................................................................7

*Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435 (3d Cir. 1971) ................................6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 618 F. Supp. 2d 1194 (N.D. Cal. 2009) ................13

*United States ex rel. Saroop v. Garcia*, 109 F.3d 165 (3d Cir. 1997) .........................................6, 7

*United States v. First Nat'l Bank of Chi.*, 699 F.2d 341 (7th Cir. 1983) .......................................11

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.*, 493 U.S. 400 (1990) ......................................19

*White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 369 (N.D. Ill. 2001)........................................15

# RULES

Fed. R. Civ. P. 26(b)(1)................................................................................14
Fed. R. Civ. P. 54(b) ...................................................................................5

Fed. R. Evid. 501 .........................................................................................14

# INTERNATIONAL MATERIAL

Commission Decision, Case COMP/39165 - Flat Glass, 2008 O.J. (C 127) 9, *at*
http://ec.europa.eu/competition/antitrust/cases/decisions/39165/en.pdf .........................................3

EC Council Regulation of 16 December 2002, no. 1/2003, O.J. (L 1) 1, *at* http://eur-
lex.europa.eu/LexUriServ/LexUriServ.do?uri=CONSLEG:2003R0001:20061018:EN:PDF ......10

EC Council Regulation of 22 December, 2005, no. 139/2004, O.J. (C 325) 7, *at* http://eur-
lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:C:2005:325:0007:0015:EN:PDF ..................17

EC Commission Regulation of 7 April 2004, no. 773/2004, O.J. (L 123) 18, *at* http://eur-
lex.europa.eu/LexUriServ/LexUriServ.do?uri=OJ:L:2004:123:0018:0024:EN:PDF ..................10

EC, *Staff Regulations of Officials of the European Communities* (Jan. 5, 2004), *at*
http://ec.europa.eu/dgs/personnel_administration/statut/tocen100.pdf .........................................10

EC Treaty, 2002 O.J. (C 325) 1, *at* http://europa.eu/eur-lex/pri/en/oj/dat/2002/c_325/
c_32520021224en00010184.pdf...................................................................................10

# OTHER AUTHORITIES

Restatement (Second) of Foreign Relations Law (1965)...................................................8

Restatement (Third) of Foreign Relations Law (1987)......................................................7, 15, 19

U.S. Dep't of Justice, *Antitrust Division Manual* (4th ed. 2008), *at*
http://www.usdoj.gov/atr/public/divisionmanual/atrdivman.pdf...................................................12

## INTRODUCTION

Intervenor-Applicant European Commission ("EC" or "Commission") respectfully petitions the Court to reconsider in part its order of July 29, 2009 in the above-captioned action (Docket No. 185) ("Discovery Order") compelling discovery and production of certain materials that are confidential under EC law. The Commission is not supporting any of the private parties to this action, and has sought to intervene here only for the limited purpose of preventing the discovery of certain investigatory materials whose continued confidentiality is critical to the EC's ability as a sovereign to investigate and deter unlawful cartel activities.

Preserving the confidentiality of these materials is vital to the Commission's ongoing ability to detect and investigate unlawful cartel activity and would require only a very limited restriction on the plaintiffs' access to discovery because the confidentiality attaches to only a small number of the documents in Guardian's possession. Therefore, based on the principles of international comity and the act of state doctrine, the Court should partially reconsider the Discovery Order and decline to compel the discovery of material that is confidential under EC law.

## STATEMENT OF THE CASE

### I. EC Law

The European Commission is an institution representing the sovereign interests of the European Community. The Commission "exercises responsibility over the wide range of subject areas covered by the European Union treaty" including laws "governing competition." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 250 (2004). Investigations into cartels are based on extensive investigative powers aimed at allowing the Commission to uncover documents and information relating to the most serious violations of competition law. *See* Declaration of Philip Lowe, ¶ 2 (attached) ("Decl. Lowe"). Equally important is the Leniency

Program, which encourages the voluntary cooperation of parties in return for immunity or a reduction of a fine; the Leniency Program is closely related to the United States Department of Justice's Amnesty Program. *Id.*; *see also*, Letter of Dep't of Justice ("DOJ Letter"), attached as Exhibit to Declaration of James Owens. The decisions of the European Commission applying the competition rules are subject to judicial review by the European Court of First Instance and, on appeal, by the European Court of Justice. Decl. Lowe ¶ 2.

In investigating unlawful cartel activities, the Commission collects sensitive material from suspects in two principal ways: by voluntary submissions through the Leniency Program and by compulsory process. As related in greater detail in the attached Declaration of Philip Lowe, the Director General of the Commission's Directorate General for Competition, certain documents prepared or collected by the Commission are protected under EC law, and cannot be used by any of the parties (including the Commission) in any matter other than the investigation itself. *Id.* The Commission collects the documents and information into an administrative file, which includes confidential and non-confidential material.

As its investigation proceeds, the EC submits a "Statement of Objections" (akin to an indictment) to entities suspected of illegal activity. The Statement of Objections is also confidential because it often directly quotes from corporate statements and other confidential replies to information requests made by the EC. Recipients may submit replies to the Statement of Objections. These replies are kept confidential and are not made available to the other parties or to the general public. While recipients are authorized to review and copy certain portions of the Commission's investigative file (which may include confidential submissions by other parties under investigation) in preparing their defenses, they are strictly prohibited by law from using information obtained in this way or for any reason outside responding to or otherwise

participating in the investigation itself.  *Id.*  The EC can and will take disciplinary action against external counsel for infringing such rules.  *Id.*

## II.    The European *Flat Glass* Cartel Investigation

Following its *Flat Glass* investigation, the Commission imposed fines amounting to EUR 486.9 million (approximately $718.11 million at the then-prevailing exchange rate) on four flat glass producers on November 28, 2007.[1]  The EC launched the investigation with unannounced inspections of certain companies.  Further information was collected by sending formal requests for information to the entities potentially involved in the suspected anticompetitive agreement. One of the suspects, Asahi/Glaverbel Corp. ("Asahi"), cooperated by submitting further information, which added significant value to the body of evidence relevant in establishing the existence of the cartel.  Asahi's voluntary cooperation qualified it for substantially reduced fines under the Leniency Program.  Commission Decision, Case COMP/39165 – Flat Glass, O.J. (C 127) 9, 127, 24.5.2008, § 8.7, ¶ 541.

One of the Commission's findings was that Guardian Industries Corp. and its wholly owned subsidiary Guardian Europe S.à.r.l. (hereinafter jointly referred to as "Guardian") had participated in the European cartel from April 20, 2004 until February 22, 2005.  This resulted in a fine of EUR 148 million (approximately $218.28 million in 2007 dollars).  *Id.*  On February 12, 2008, Guardian appealed that decision to the Court of First Instance.  That appeal is currently pending.

## III.    Civil Proceedings Respecting *Flat Glass* In The United States

On June 20, 2008, a number of actions involving allegations of U.S. antitrust violations in the flat glass industry were transferred to this Court under the multi-district litigation ("MDL")

---

[1] *See* Commission Decision, Case COMP/39165 – Flat Glass, O.J. (C 127) 9, 127, 24.5.2008, § 8.7, ¶ 541 (Nov. 28, 2007), *available at* http://ec.europa.eu/ competition/ antitrust/ cases/ decisions/ 39165 /en.pdf.

process. On July 2, 2009, the plaintiffs filed a motion to compel seeking discovery of a wide

range of documents relating to the Commission's *Flat Glass* investigation, including:

    (1)    documents provided to or received from the European Commission ("EC") in connection with any proceeding or investigation relating to Construction Flat Glass;

    (2)    documents the EC obtained from Defendants in connection with any proceeding or investigation relating to Construction Flat Glass;

    (3)    reports, findings, decisions, Statements of Objections, and hearing transcripts made or issued in connection with any proceeding or investigation by the EC relating to Construction Flat Glass, including but not limited to, any such documents relating to EC Case COMP/39.165 – Flat Glass; and

    (4)    documents relating to any investigation by the EC in connection with any proceeding or investigation relating to Construction Flat Glass not otherwise specified in Plaintiffs' Request for Production.

Plt's Br. In Support of Mot. to Compel, at 1 (Docket No. 172). On July 17, 2009, Guardian filed

a brief opposing the motion. Def's Br. in Opp'n (Docket No. 179). On July 29, the Court

granted the Motion to Compel, holding *inter alia*:

> [a]s to principles of international comity, I find that the production would not violate such principles. Most of the documents are in Defendant's possession, the EC investigation has concluded, and Defendant Guardian has already produced an unredacted version of the EC decision. Furthermore, a protective order is in effect.

Discovery Order at 2. Guardian notified the Commission of the Court's order on August 26,

2009. Guardian Letter, attached as Exhibit to Decl. Lowe.

Thereafter, the EC moved to intervene and now seeks partial reconsideration of the

Court's July 29, 2009 Order to the extent that it requires production of confidential information.

As indicated in the attached Declaration, EC confidentiality does not affect all, or possibly even

most, of the material at issue here. *See* Decl. Lowe ¶ 4. The Commission does not seek to

prevent the discovery of Guardian's pre-existing documents, or of any other non-confidential material.

## LEGAL STANDARD

This Court has the authority under Rule 54(b) to reconsider its discovery ruling "and [the ruling] may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). To prevail on a motion for reconsideration, a litigant must demonstrate: "(1) an intervening change in the controlling law; (2) the availability of new evidence ...; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

## ARGUMENT

This Court should reconsider and modify the Discovery Order to correct a clear error of law. In that Order, the Court applied the well-established rules of international comity incorrectly because the parties neglected adequately to address the state of EC law, and the existing protective order does not meet the requirements of EC law. In addition, the parties failed to notify the Court that discovery was also barred by the act of state doctrine. On reconsideration, the Court should deny plaintiffs' motion to compel as it pertains to a small number of investigatory materials that are confidential under EC law.

### I. International Comity Requires Preserving The Confidentiality Under EC Law Of Certain Documents That Plaintiffs Have Requested

Documents that are protected from discovery in Europe should not be subject to discovery in the United States, particularly where, as here, entities cooperated with an EC investigation in detrimental reliance on sovereign guarantees of confidentiality. EC competition law requires that certain documents related to the Commission's investigations be kept

confidential, and courts should respect this confidentiality under international comity. European competition law's procedures – and especially its successful Leniency Program – depend on assurances that certain types of information exchanged during the investigation will be accorded absolute and legally binding confidentiality outside of the investigation itself. While the discovery protection afforded certain investigatory materials lies at the core of European competition law and policy, respecting this confidentiality would have a minimal effect on private litigants in the United States because Guardian's pre-existing business documents, even if produced to the EC, would not be protected. Therefore, international comity prohibits discovery of certain investigatory documents in this matter.

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164 (1895); *see also Remington Rand Corp.-Del. v. Bus. Sys. Inc.,* 830 F.2d 1260, 1266 (3d Cir. 1987). The doctrine is "more than mere courtesy and accommodation," and represents "a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws." *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971). "Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Id; see also, Gross v. German Found. Indus. Initiative*, 456 F.3d 363, 392-94 (3d Cir. 2006); *United States ex rel Saroop v. Garcia*, 109 F.3d 165, 170 (3d Cir. 1997); *Phila. Gear Corp. v. Phila. Gear de Mexico, S.A.*, 44 F.3d 187, 193-94 (3d Cir. 1994).

International discovery is one of the core conflicts that comity addresses.  Courts must "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position," and "[j]udicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests."  *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) ("*Aerospatiale*"). Thus, "[w]hen it is necessary to seek evidence abroad, . . . the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses."  *Id.*; *see also In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 301 (3d Cir. 2004) (quoting same).

Comity requires courts to balance competing interests in a manner akin to a conflicts of law analysis.  As *Aerospatiale* indicated, 482 U.S. at 544 n.28, the Restatement (Third) of Foreign Relations Law articulates one well-established set of factors to consider:

- the importance to the investigation or litigation of the documents or other information requested;

- the degree of specificity of the request;

- whether the information originated in the United States;

- the availability of alternative means of securing the information; and

- the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

Restatement (Third) of Foreign Relations Law, § 442(1)(c) (1987).[2]  The last factor is considered "the most important."  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1476 (9th Cir. 1992).  The Third Circuit has applied this balancing test.  *Garcia*, 109 F.3d at 169 n.8.

---

[2] The Restatement (Second) enunciates a rule that differs only marginally, and it also supports the Commission's position.  Section 40 of the Restatement (Second) of Foreign Relations Law provides:

Beginning with the last factor and examining each of the other factors in turn, each mandates respect for the EC's strong interest in preserving the confidentiality of certain documents closely related to its anti-cartel investigations.

A.    The EC's Interest In Preserving Confidentiality Is Clearly Important, Advances The U.S. Government's Interest, And Only Marginally Impairs The Interest Of Private Litigants

Preserving the confidentiality of investigatory materials is strongly supported by balancing the relative interests of the litigants, the United States, and the Commission.  This "most important" factor requires courts to "assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would 'affect important substantive policies or interests' of either the United States or [the European Union].  In assessing the strength of [the EC's] interests, [courts] will consider 'expressions of interest by the foreign state,' 'the significance of disclosure in the regulation ... of the activity in question,' and 'indications of the foreign state's concern for confidentiality *prior to the controversy*.'" *Richmark Corp.*, 959 F.2d at 1476 (citation omitted, emphasis in original, alterations added). These considerations favor the application of comity here in at least three ways: (1) EC's longstanding and robust sovereign interest in preserving its successful mechanism of combating unlawful cartels clearly outweighs any interest private litigants may have in obtaining marginal discovery; (2) the United States government shares the Commission's strong interest in

---

Where two states have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each state is required by international law to consider, in good faith, moderating the exercise of its enforcement jurisdiction in the light of such factors as (a) vital national interests of each of the states, (b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person, (c) the extent to which the required conduct is to take place in the territory of the other state, (d) the national of the person, and (e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.

Restatement (Second) of Foreign Relations Law, § 40 (1965).

8

preserving the confidentiality of certain documents relating to the two sovereigns' leniency or amnesty programs; and (3) the documents are confidential and not discoverable under comity and the Federal Rules.

        1.     *The EC Has A Strong And Longstanding Interest In Preserving The Confidentiality Of Certain Investigatory Materials Guaranteed By Its Laws*

The Commission's policies and laws respecting the confidentiality of certain investigatory documents are longstanding and represent important sovereign interests. As related in greater detail in the attached Declaration of Philip Lowe, *see* Decl. Lowe ¶ 2, EC law accords strict confidentiality to documents that are generated pursuant to or obtained from third parties during the course of the Commission's anti-cartel investigations. For instance, the Leniency Program requires applicants to produce incriminating material as part of their cooperation. *Id.* Moreover, the Commission's briefs or other filings may contain confidential material, while suspects are allowed to review portions of the Commission's administrative file (which may include sensitive material submitted by third parties) to assist in the preparation of their legal defenses. *Id.* In addition, different private parties can attend closed hearings during which confidential material (including that from third parties) may be disclosed. *Id.* All of these types of information are at issue here.

The creation and exchange of investigatory material is central to European legal procedures and depends on cooperation from private parties, which in turn arises from the Commission's assurances that the information will be accorded strict confidentiality under EC law. Consequently, none of the parties to any given investigation – including the Commission itself – may use or discover the confidential material in any matter or for any purpose other than the investigation itself. Decl. Lowe ¶ 2; *see also* Antitrust Modernization Commission,

Submission by Directorate General of the EC, § 2.4; EC Treaty art. 287, 2002 O.J. (C 325) 1; EC Council Regulation of 16 December 2002, no. 1/2003 art. 28, 2003 O.J. (L1) 1; EC, *Staff Regulations of Officials of the European Communities*, art. 17 (Jan. 5, 2004); EC Commission Regulation of 7 April 2004, no. 773/2004 art. 15(4), 2004 O.J. (L 128) 18 ("Documents obtained through access to the file pursuant to this Article shall only be used for the purposes of judicial or administrative proceedings for the application of Articles 81 and 82 of the Treaty"); *see generally*, DOJ Letter. The Leniency Program – the most successful instrument for detecting and punishing unlawful cartels in Europe – relies on voluntary submissions of sensitive material by applicants, but applicants would not participate if they were put in a worse position for having volunteered this information. *See* DOJ Letter at 4 ("Turning over information provided by a leniency applicant will create disincentives for companies to apply for leniency in the European Union"). As such, the protective order in place in this litigation is inadequate because, by its terms, entities who were not parties to the Commission's investigation may be granted access to confidential material to use in entirely separate proceedings.

Preserving the protection from discovery of investigative materials is critical to EC's sovereign interests. EC investigation procedures are designed to encourage private parties to provide sensitive material in detrimental reliance on the Commission's legally binding assurance of confidentiality. It follows that destroying the confidentiality *post facto* creates an unfair and unexpected harm to companies who cooperated with the Commission, would reduce confidence in the Commission's sovereign promises, and, in turn, would make it more difficult for the Commission to secure future cooperation from and to negotiate with suspects. According to the Department of Justice, such a result would harm the EC as well as the United States: "the disclosure of such documents will harm the EC's leniency program and its investigative abilities

and could have a corresponding negative impact on the Antitrust Division's leniency program and its international anti-cartel enforcement program." *Id.* at 1. Moreover, the EC's sovereign guarantee is protected by statute and, therefore, the discovery protection cannot be waived by private parties, even if a party produces some limited set of the confidential material inadvertently. In short, the guarantee of confidentiality lies at the heart of the Commission's ability to detect and punish unlawful cartels, and anything that damages that guarantee would undermine the EC's sovereign interest in preventing cartels and risk serious economic harm to consumers in the European Union. In light of the global nature of much cartel activity, impeding the Commission's ability to combat unlawful cartels would likely have negative effects on consumers in other places—including the United States.[3]

  2. *The United States Government Has An Interest In Preserving The Confidentiality Of Documents Generated Pursuant To An Antitrust Amnesty Program, Including The EC's Program*

The Commission and the United States share an equally strong interest in protecting the confidentiality of materials obtained through their respective antitrust amnesty programs or otherwise through their anti-cartel investigations. Enforcement of competition laws benefits both the EC and U.S. in their antitrust enforcement, and the U.S. Government (often in cooperation with the EC) has also recognized that antitrust enforcement depends on the continued confidentiality of materials such as those at issue here. *See* DOJ Letter at 4 ("Due to the critical role of the Division's leniency program in its international anti-cartel enforcement program . . . harm to the EC leniency program could result in harm to the Division's ability to detect and successfully prosecute international cartels that target U.S. businesses and consumers.").

---

[3] The EC laws at issue are longstanding, have broad application in the European Union, and cannot be characterized as mere blocking statutes designed to frustrate foreign judicial proceedings. *See Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1282-83 (7th Cir. 1990) (Romanian secrecy law respected where it applied to domestic and foreign litigants with equal force); *United States v. First Nat'l Bank of Chicago*, 699 F.2d 341, 345-46 (7th Cir. 1983) (Greek bank secrecy laws outweighed U.S. interest in collecting taxes).

Case 2:08-mc-00180-JSW Document 200-1 Filed 03/03/14 Page 17 of 25

In a program that is very similar to that administered by the EC, the U.S. Department of Justice offers leniency to cartel participants who inform on their fellow cartel participants and then continue cooperating with the subsequent investigation. *See* U.S. Dep't of Justice, *Antitrust Division Manual*, at III-102-09 (4th Ed. 2008). "The leniency program is clearly the [Antitrust] Division's most effective generator of international cartel cases" and "has led to the detection and prosecution of more international cartels than all of the Division's search warrants, consensual monitoring, and FBI interrogations combined." DOJ Letter at 2; *see also* Br. of United States, *Empagran, S.A. v. F. Hoffman-Laroche, Ltd.*, No. 01-7115, 2005 WL 388672, at *19 (D.C. Cir. Feb. 16, 2005) (describing the program as "the primary engine of the government's anti-cartel enforcement"). Like the Commission's Leniency Program, the Amnesty Program's success depends on obtaining the cooperation of would-be informants by "offer[ing] incentives to cartel members who voluntarily disclose their criminal conduct and cooperate with prosecutors," *Empagran* Br. at *19, "[b]ecause cartels operate in secret, [and] obtaining the cooperation of insiders is the best and frequently the only way to break open a cartel." DOJ Letter at 2.

The Justice Department believes ongoing confidentiality is a critical element of any leniency or amnesty program. As the Antitrust Division explains in a letter prepared for the purpose of assisting the EC in this matter:

> Confidentiality is one of the hallmarks of leniency programs, and a lack of confidentiality is a major disincentive for leniency applications. . . . Many leading members of the private antitrust bar who represent leniency applicants have advised . . . that the Division's promise of confidentiality is a critical, and in some cases determinative, factor that companies rely upon in making the decision to self-report pursuant to the Division's leniency program.

Case 4:08-mc-00180-JSW Document 2605 Filed 03/03/14 Page 18 of 25

*Id.* at 3. Thus, as it explained in a brief opposing the discoverability of Amnesty-related documents in the first *Flat Glass* MDL, "[t]he Division holds the identity of amnesty applicants in strict confidence" based on "the common-sense understanding that corporations or individuals will be unwilling to step forward unilaterally to admit their guilt if their request and the information they supply is made public." Br. of United States as *amicus curiae*, *In re Flat Glass Antitrust Litig.,* MDL No. 1200, Misc. No. 97-550, at 5-6 (W.D. Pa. Mar. 26, 1998). In fact, "the Division will not publicly disclose the identity of an amnesty applicant" because "both the Division and any applicant for amnesty rely on and expect their discussions to remain confidential." *Id.* at 6. Materials "that may have been specially created – or statements that may have been specifically made – in connection with an amnesty application," *id.* at 7, are protected from discovery under the law enforcement investigatory privilege. *See* Br. of United States, *Nelson v. Pilkington*, No. 98-3498, at 13-14 (3d Cir. Dec. 7, 1998); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 618 F.Supp. 2d 1194, 1194-95 (N.D. Cal. 2009) (analyzing applicant's duties under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004).

Leniency programs are critical to international anti-cartel enforcement efforts, as the Department of Justice explains:

> [t]he [Antitrust] Division has advised a number of foreign governments in the drafting and implementation of effective leniency policies [because t]he emergence of leniency polices of different governments with similar requirements has made it much easier and far more attractive for companies to develop a global strategy for reporting international cartel offenses and had led leniency applicants to report their conduct to multiple jurisdictions simultaneously.

DOJ Letter at 3. Indeed, "the European Commission has been one of the Division's closest partners in the fight against international cartels" and "[o]ver ninety percent of the international cartels that have been prosecuted by the Division were active in Europe as well as in the United

States." *Id.* at 4.  Therefore, enhancing anti-cartel enforcement in the United States requires courts to respect sovereign guarantees of confidentiality across international borders.  As the Justice Department explains, "[i]f companies that have dual exposure in the United States and the European Union are dissuaded from applying for leniency with the European Commission, then they may also choose not to apply for leniency in the United States." *Id.*  This would have serious ramification for enforcement efforts in the United States: "Due to the critical role of the Division's leniency program in its international anti-cartel enforcement program as described above, harm to the EC leniency program could result in harm to the Division's ability to detect and successfully prosecute international cartels that target U.S. businesses and consumers." *Id.*

Although the two programs are structured somewhat differently, both the United States and the Commission have determined that preserving the strict confidentiality of material that is closely related to their respective leniency programs is an important and necessary element to the programs' continued success, and to protect consumers in the EC and in the United States.

3.     *The EC's Interest Is Confirmed By The Documents' Confidential Status*

The strength of the EC's interest in confidentiality is confirmed by the fact that the documents and other materials in question here are protected from discovery under EC law. Third parties were encouraged to provide statements in the EC based on the Commission's sovereign guarantees of confidentiality – assurances backed by law.  Decl. Lowe ¶ 2.  As documents privileged from discovery, those at issue here are entitled to the highest level of protection under comity principles.  *See* Fed. R. Civ. P. 26(b)(1) (discovery extends only to matters that are "nonprivileged"); Fed. R. Evid. 501 ("the privilege of a witness, person, government, State, or political subdivision thereof, shall be governed by the principles of the common law").

Discovery privileges are not restricted to those specifically established within the United States. Indeed, the Restatement (Third) explains that "a communication privileged where made—for instance, *confidential testimony given to a foreign government investigation under assurance of privilege*—is not subject to discovery in a United States court." Restatement (Third) of Foreign Relations Law, § 442 cmt. d (emphasis added); *see also White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 369, 372 (N.D. Ill. 2001) (English legal proceeding was confidential under English law, and therefore not subject to discovery in the United States; "if a privilege is recognized in a foreign country, then comity requires us to apply that country's laws to the documents at issue.") (citing *McCook Metals L.L.C. v. Alcoa, Inc.*, 192 F.R.D. 242, 256 (N.D. Ill. 2000)).

The materials at issue here were provided by third parties to the EC, and in turn by the EC to other parties, under the EC's strict assurance of confidentiality. Accordingly, as in the example provided in comment d to § 442 of the Restatement (Third), the Court should treat the confidential information and documents as privileged and non-discoverable under the Federal Rules.

B.    Confidentiality Is Narrowly Tailored Here, So The Documents That Should Be Protected Are Few In Number And Not Important To This Litigation

Only a limited number of confidential documents are at issue here, and their non-disclosure should have no material effect on this litigation. This fact weighs heavily in favor of respecting EC law. "[C]ourts are less inclined to ignore a foreign state's concerns where the outcome of litigation 'does not stand or fall on the present discovery order,' or where the evidence sought is cumulative of existing evidence." *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1082 (N.D. Cal. 2007) (denying motion to compel discovery of EC competition enforcement materials).

15

Case 2:08-mc-00180-JWA Document 200-6 Filed 13/03/04 Page 2 of 25

That is the case here: as set forth in the attached affidavit from the Director General of the Commission's Directorate for Competition, many – perhaps most – of the documents that are potentially responsive to the plaintiffs' discovery motion are *not* confidential and would be responsive to plaintiffs' request if the EC's motion is granted. Decl. Lowe, ¶ 4. For instance, the Commission does not object to Guardian's production of its own documents that pre-existed the investigation, even if it produced those documents to the Commission. *Id.* Nor does it object to Guardian producing documents and briefs it created in response to the investigation – including documents it provided to the Commission – so long as it redacts all confidential information that it had obtained from the Commission (such as the trade or business secrets of third parties).

Specifically, the Commission believes that:

- First, Guardian should be required to withhold entirely the following classes of documents:

  i.   pre-existing documents and information produced to the Commission by third parties, obtained by Guardian from the Commission's administrative file;

  ii.  the Commission's Statement of Objections, which incorporates third-party confidential information;

  iii. transcripts or other records of oral proceedings before the Commission, which includes confidential statements by the Commission and third parties; and

  iv.  the Commission's legal brief and associated materials filed in opposition to Guardian's pending appeal to the European Court of First Instance.

- Second, Guardian should be required to redact confidential information pertaining to third parties or the Commission before it can lawfully produce the following documents:

  i.   Guardian's reply to the Statement of Objections;

  ii.  the Commission's request for information under Article 18;

  iii. Guardian's response to the Commission's Article 18 request; and

iv.   Guardian's briefs and associated documents filed in its pending appeal to the Court of First Instance.

*See* Decl. Lowe ¶ 4.  The Commission does not seek to prevent the discovery of Guardian's pre-existing documents, or of any other non-confidential material.  *See generally*, 1/2003, EC Commission Regulation 773/2004 and Commission Notice on the rules for access to the Commission file in cases pursuant to Articles 81 and 82 of the EC Treaty, Articles 53, 54 and 57 of the EEA Agreement and Council Regulation (EC) No 139/2004 ("Access to File Notice") (providing one definition of business secrets and other confidential information under EC law).

In short, the only material confidential under EC law for the purposes of this litigation is that which was created by the Commission or provided to the Commission by third parties.  This would include Guardian's own documents to the extent that they contain confidential information received from the Commission or third parties.  This likely represents a limited number of documents, and should have no material effect on this litigation.

C.    The Document Request Was Not Sufficiently Narrow

This factor also favors non-disclosure.  "[G]eneralized searches for information whose disclosure is prohibited under foreign law are discouraged."  *In re Rubber Chems.*, 486 F. Supp. 2d at 1083.  The plaintiffs here elected to demand production of a wide and poorly-defined range of documents "in connection with" the Commission's investigations "but not limited to" the Commission's specific case, including "documents . . . received from the European Commission" and "documents relating to any investigation by the EC."  Mot. to Compel at 1.  The lack of specificity and limitation in the discovery motion fails to provide the level of precision that might better enable the Court and the parties to limit the proposed document production to non-confidential material.

D.    The Information Did Not Originate In The United States

Documents created abroad are more widely protected under principles of international comity, and most, if not all, of the documents at issue here either were prepared by European companies or subsidiaries for the purpose of responding to or cooperating with the Commission's investigation, or else they were prepared or transcribed by the Commission itself for the purpose of its investigation. Guardian may have these materials in its possession only because the Commission provided the documents to the party's European counterparts to assist in their legal defense in Europe. "The fact that [Guardian or any of the other parties] has access to these documents in the U.S. is not dispositive [because t]he documents were created, transmitted, and used only in Europe and in conjunction with the European enforcement proceedings." *In re Rubber Chems.*, 486 F. Supp. 2d at 1083.

E.    There Are Alternative Means Of Securing The Information

Finally, there are alternative means of securing most of the information sought in the discovery motion, which also weighs in the Commission's favor. "If the information sought can easily be obtained elsewhere, there is little or no reason to offend foreign law." *Id.* Most of the documents at issue are already non-confidential, or at least discoverable with appropriate redactions. Moreover, information relating to the defendants' practices in the United States "is likely to be more relevant to [plaintiffs] than the EC documents." *Id.* An additional critical consideration is that many of the documents of third parties that pre-existed the Commission's investigation – possibly including some material that may be confidential and protected if obtained through the Commission's legal process – may be discoverable *from those parties directly* if the information is relevant and if the Court otherwise has jurisdiction over those parties and papers.

18

II.    **The Act Of State Doctrine Prohibits Judicial Challenge To The Commission's Promise Of Strict Confidentiality In Exchange For Cooperation.**

The Court should deny the motion to compel confidential documents under the act of state doctrine.  This doctrine does not allow courts to "inquir[e] into the validity of the public acts a recognized foreign sovereign power committed within its own territory."  *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401 (1964); *see also* Restatement (Third) of Foreign Relations Law § 443(1) (courts should not invalidate the "acts of a governmental character done by a foreign state within its own territory and applicable there").  As the Third Circuit has explained, "[c]ourts must dismiss under the act of state doctrine when resolution of a suit would require the court to declare invalid and ineffective as 'a rule of decision for the courts of this country' the official act of a foreign sovereign."  *Gross v. German Found. Indus. Initiative*, 456 F.3d at 391-92 (quoting *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.,* 493 U.S. 400, 405 (1990) (citing *Ricaud v. Am. Metal Co.,* 246 U.S. 304, 310 (1918)))).  "In every case in which [the Supreme Court has] held the act of state doctrine applicable, the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick,* 493 U.S. at 405.

The act of state doctrine bars discovery of certain documents in this case.  The Commission, acting as a sovereign, provided private parties with assurances of confidentiality that are legally binding under EC law.  This discovery protection is absolute:  neither the Commission nor any of the parties may use or produce any of the documents covered by the confidentiality in any way or for any matter other than the investigation itself.  Decl. Lowe ¶ 2.  Each of the exchanges of information between the Commission and the private parties occurs under the aegis of strict and binding confidentiality created by the EC's rules.

19

Therefore, judicial orders countermanding the confidentiality binding under EC law necessarily call into question the validity of public acts by a sovereign authority within its own borders. That is, this Court cannot compel the discovery of documents that are protected under EC law without simultaneously declaring invalid and ineffective the official acts of a foreign sovereign that extended the confidential status to the documents. Accordingly, the Court should not authorize the discovery of documents or information confidential under EC law.

## CONCLUSION

For the foregoing reasons, this Court should grant the EC's Motion for Partial Reconsideration and deny in part the plaintiffs' motion as it pertains to confidential material.

Dated:  October 8, 2009                     Respectfully submitted,


   /s/ Carter G. Phillips_____
Carter G. Phillips (DC 264176) (*pro hac vice*)
Richard Klingler (DC 438908) (*pro hac vice*)
James C. Owens (DC 490140) (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC  20005
Phone:  (202) 736-8000
Fax:     (202) 736-8711
Email: cphillips@sidley.com
      rklingler@sidley.com
      jcowens@sidley.com

*Attorneys For Intervenor-Applicant European Commission*