Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA  94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Specially Appearing Defendant Thomson SA*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | No. 07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Tech Data Corp., et al. v. Hitachi, Ltd., et al., No. 13-cv-00157* | **THOMSON SA'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE WITH PREJUDICE TECH DATA'S FIRST AMENDED COMPLAINT**<br><br>Date:   March 21, 2014<br>Time:  10:00 a.m.<br>Place:  Courtroom 1, 17th Floor<br>Judge: Hon. Samuel Conti |

**TABLE OF CONTENTS**

Page(s)

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I. THE ALLEGATIONS AGAINST THE THOMSON DEFENDANTS IN THE FAC SHOULD BE STRICKEN BECAUSE TECH DATA WAS NOT ENTITLED TO AMEND ITS COMPLAINT WITHOUT SEEKING LEAVE OF COURT. ................................................................................................................................. 1

II. TECH DATA'S CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER IT. ................. 3

    A. Tech Data Concedes That the Court Does Not Have General Jurisdiction Over Thomson SA and It Has Failed to Make a Prima Facie Case That Thomson SA Is Subject to Specific Jurisdiction. ...................................................... 3

        1. Tech Data Has Failed to Plead Facts Establishing That They Have Been Harmed by Actions Thomson SA Purposefully Directed at the United States. ............................................................................................... 4

        2. Tech Data Has Failed to Plead Facts Establishing That Thomson SA Was a But-For Cause of the Antitrust Injuries It Allegedly Suffered in the United States. ................................................................. 7

        3. The Exercise of Specific Jurisdiction Over Thomson SA Would Not Be Reasonable. ............................................................................................ 8

    B. The Court Should Not Grant Tech Data Jurisdictional Discovery. ........................ 9

III. TECH DATA'S CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED BECAUSE IT FAILS TO PLEAD VIABLE CLAIMS. ....................................................... 9

    A. Tech Data's Tardy Claims Against Thomson SA Are Barred by the Doctrine of Laches. ............................................................................................... 9

    B. Tech Data's Claims Are Time-Barred and It Has Not Pleaded Specific Facts That Establish a Plausible Basis for Tolling the Statutes of Limitation. ............................................................................................................ 12

        1. Just Months Before the Close of Discovery, Tech Data Does Not Plead Facts That Plausibly Support Fraudulent Concealment. .................. 13

        2. American Pipe Tolling Does Not Save Tech Data's Claims. .................... 14

        3. Government Action Tolling Does Not Apply to the DAPs' Claims. ......... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashley v. Boyle's Famous Corned Beef Co.*,
  66 F.3d 164 (8th Cir. 1995) ................................................................................................. 10

*Bancroft & Masters v. Augusta Nat'l Inc.*,
  223 F.3d 1080 (9th Cir. 2000) ............................................................................................... 4

*Cada v. Baxter Healthcare Corp.*,
  920 F.2d 446 (7th Cir. 1991) ............................................................................................... 10

*Core-Vent Corp. v. Nobel Industries AB*,
  11 F.3d 1482 (9th Cir. 1993) ................................................................................................. 8

*Credit Suisse Sec. (USA) LLC v. Simmonds*,
  132 S. Ct. 1414 (2012) ......................................................................................................... 15

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ............................................................................................................. 3

*Goodyear Dunlop Tires Operations v. Brown*,
  131 S. Ct. 2846 (2011) ........................................................................................................... 3

*Greyhound Corp. v. Mt. Hood Stages*,
  437 U.S. 322 (1978) ............................................................................................................. 14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ............................................................................... 13

*In re High Fructose Corn Syrup Antitrust Litig.*,
  293 F. Supp. 2d 854 (C.D. Ill. 2003) ................................................................................... 12

*In re Memory Interactive Sec. Litig.*,
  618 F.3d 688 (9th Cir. 2010) ................................................................................................. 4

*In re Processed Egg Prods. Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013) .................................................. 13

*In re Rubber Chemicals Antitrust Litig.*,
  504 F. Supp. 2d 777 (N.D. Cal. 2007) ................................................................................. 14

*In re Urethane Antitrust Litig.*,
  663 F. Supp. 2d 1067 (D. Kan. 2009) .................................................................................. 13

*J.M. Dungan v. Morgan Drive-Away, Inc.*,
  570 F.2d 867 (9th Cir. 2007) ............................................................................................... 15

*Lake v. Lake*,
    817 F.2d 1416 (9th Cir. 1987) ............................................................................................ 8

*Madison v. IBP, Inc.*,
    330 F.3d 1051 (8th Cir. 2003) .......................................................................................... 10

*Matthews Metals Prods., Inc. v. RBM Precision Metal Prods., Inc.*,
    186 F.R.D. 581 (N.D. Cal. 1999) ........................................................................................ 2

*McCune v. Alioto Fish Co.*,
    597 F.2d 1244 (9th Cir. 1979) .......................................................................................... 11

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999) .......................................................................................... 12

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    695 F.3d 946 (9th Cir. 2012) ............................................................................................ 10

*Shute v. Carnival Cruise Lines*,
    897 F.2d 377 (1990) ........................................................................................................... 8

*Smith v. United States*,
    133 S. Ct. 714 (2013) ....................................................................................................... 12

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971) ......................................................................................................... 12

**FEDERAL STATUTES**

15 U.S.C. § 16(i) ...................................................................................................................... 15

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................................................ 13, 14

Fed. R. Civ. P. 12 .................................................................................................................. 1, 2

Fed. R. Civ. P. 15 .............................................................................................................. 1, 2, 3

Fed. R. Civ. P. 21 .............................................................................................................. 1, 2, 3

**OTHER AUTHORITIES**

C. Leslie, *Judgment-Sharing Agreements*, 58 Duke L.J. 747 (2009) ..................................... 12

**INTRODUCTION**

The claims against Thomson SA in Tech Data's First Amended Complaint should be stricken with prejudice because Tech Data did not seek leave of this Court to amend its original complaint to join Thomson SA to this action and, at this late stage in this litigation, under the plain terms of Fed. R. Civ. P. 15(a), Tech Data was not entitled to do so as a matter of course. In the alternative, Tech Data's claims should be dismissed because Thomson SA is not subject to the personal jurisdiction of this Court. Thomson SA is a French holding company that never manufactured or sold CRTs or CRT Products in the United States. Even with complete access to the extensive record that has been developed after years of fulsome discovery in this case, Tech Data does not present any evidence in its Opposition that establishes Thomson SA took any intentional acts expressly aimed at causing Tech Data antitrust injury in the United States. Tech Data's claims also fail because: (1) its claims are inexcusably late, so Tech Data's reliance on tolling doctrines is barred by laches; and (2) none of the tolling doctrines asserted by Tech Data save its tardy claims. Consistent with the Court's September 26, 2013 Order denying the DAPs leave to amend, the Court should strike Tech Data's claims against Thomson SA with prejudice.

**ARGUMENT**

**I. THE ALLEGATIONS AGAINST THE THOMSON DEFENDANTS IN THE FAC SHOULD BE STRICKEN BECAUSE TECH DATA WAS NOT ENTITLED TO AMEND ITS COMPLAINT WITHOUT SEEKING LEAVE OF COURT.**

As explained in Thomson Consumer's Reply, the plain language of Fed. R. Civ. P. 15(a)(1) is clear – a party may only amend its pleading as a matter of course within "21 days after serving it" or within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(B). As the Advisory Notes to the 2009 Amendments to Rule 15 explain, under the amended rule, a party's right to file one amended pleading is triggered by the opposing party filing a responsive pleading or a Rule 12 motion because the purpose of granting the party the right to amend its pleading once as a matter of course is to allow it "to consider issues that the original pleader has not considered and persuade the pleader that amendment is wise." *See* Advisory Committee Notes to 2009 Amendments to Fed. R. Civ. P. 15. "In this way a responsive amendment may avoid the

1  need to decide the motion or reduce the number of issues to be decided, and will expedite the
2  determination of issues that otherwise might be raised seriatim. It should also advance other
3  pretrial proceedings." *Id*. Accordingly, because Tech Data filed the FAC before any Defendant
4  filed a responsive pleading or Rule 12 motion, Tech Data's filing of the FAC did not serve the
5  purposes of Rule 15 and was prohibited by the Rule.

6  Unable to dispute this, Tech Data instead argues that it was entitled to file the FAC as a
7  matter of course because, at the time it was filed, no Defendant had filed a responsive pleading
8  or Rule 12 motion. (Opp'n. at 3.) This argument ignores the purposes of amended Rule 15(a)
9  and the express limitations on a party's right to amend.[1] The Court should reject Tech Data's
10 argument and, consistent with both the plain text and purposes of Rule 15, strike the
11 unauthorized FAC.

12 Moreover, even if the Court holds that Rule 15(a) permits amendment as a matter of
13 course at any point before a motion to dismiss or responsive pleading is filed, that right should
14 not trump Rule 21's requirement that the amending party obtain court permission before joining
15 additional parties. As both Thomson SA and Tech Data acknowledge, there is a split of
16 authority regarding whether Rule 21 or Rule 15(a) controls when an amendment that would
17 otherwise be permitted as a matter of course seeks to add parties to the litigation. The Ninth
18 Circuit Court of Appeals has not taken a position on this issue. Nonetheless, Tech Data asserts
19 that the law in this regard is "clear" based on a 1999 district court decision that departed from
20 earlier precedent. *See Matthews Metals Prods., Inc. v. RBM Precision Metal Prods., Inc.*, 186
21 F.R.D. 581, 583 (N.D. Cal. 1999). *Matthews Metals* did hold that Rule 15(a) takes precedence
22 over Rule 21, but its persuasive value is limited because its holding was cursory, the amendment
23 in that case was made very shortly after the initial complaint was filed and the case removed, and

---

[1] Before Rule 15 was amended in 2009, it provided that a party could amend its pleading "once as a matter of course before being served with a responsive pleading." *See* 2008 Fed. R. Civ. P. 15(a)(1)(A). Thus, Tech Data's interpretation is consistent with Rule 15 before it was amended, but effectively nullifies the text and purpose of the amended version of the Rule. Similarly, the cases Tech Data cites do not analyze the text or purposes of Rule 15 and do not explain why the express limitations on amendments as of course contained in it should be ignored.

1   there is no indication that in the circumstances of that case the court would have had any reason
2   to deny leave to add a party.

3         The circumstances here, on the other hand, demonstrate the importance of requiring court
4   approval of joinder under Rule 21 even when Rule 15(a)(1) might otherwise apply. While court
5   supervision may be unnecessary where amendments seek to add parties at the early stage of
6   proceedings, Rule 15(a), as interpreted by Tech Data, would permit amendments as a matter of
7   course at an advanced stage of the proceedings. Here, Tech Data's interpretation of Rule 15(a)
8   and Rule 21 would permit it to do as a matter of course what this Court has already ruled would
9   be unwarranted and prejudicial for the DAPs to do – to force the Thomson Defendants to join
10  these proceedings six years after they began. Such a ruling would provide an unwarranted
11  windfall to Tech Data. The only relevant differences between the DAPs' and Tech Data's
12  belated attempts to join the Thomson Defendants is that Tech Data waited *longer* to file its initial
13  complaint and to amend it, and then stipulated with the Defendants (who have no incentive to
14  protect Thomson's interests) to delay any response until after the Court ruled on the DAPs'
15  motion to dismiss. Accordingly, the Court should reject an interpretation of Rules 15 and 21 that
16  would allow Tech Data to benefit from its unreasonable delay by amending its complaint at this
17  late stage in these proceedings without leave of court. Consistent with its Sept. 26, 2013 Order,
18  the Court should strike the allegations against the Thomson Defendants in Tech Data's FAC.

19  **II.    TECH DATA'S CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED
            BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER IT.**
20
21      **A.    Tech Data Concedes That the Court Does Not Have General Jurisdiction
                Over Thomson SA and It Has Failed to Make a Prima Facie Case That
22              Thomson SA Is Subject to Specific Jurisdiction.**

23        General jurisdiction exists over foreign corporations like Thomson SA only when their
24  "affiliations with the State are so 'continuous and systematic' as to render them essentially at
25  home in the forum State." *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014) (quoting
26  *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011)). Tech Data does
27  not address general jurisdiction in its Opposition and therefore has waived any argument that
28

Thomson SA is subject to the general jurisdiction of this Court.  *See In re Memory Interactive Sec. Litig.,* 618 F.3d 688, 992 (9th Cir. 2010).

Tech Data has also failed to establish Thomson SA is subject to specific jurisdiction.  To establish specific jurisdiction over Thomson SA, Tech Data must show that: (1) Thomson SA purposefully directed activities at this forum; (2) Tech Data's claims against it arise out of or result from Thomson SA's forum related activities; and (3) the exercise of jurisdiction is reasonable.  *See Bancroft & Masters v. Augusta Nat'l Inc.,* 223 F.3d 1080, 1086-7 (9th Cir. 2000).  Tech Data has not, and cannot, satisfy these elements.

### 1. Tech Data Has Failed to Plead Facts Establishing That They Have Been Harmed by Actions Thomson SA Purposefully Directed at the United States.

In its now withdrawn December 11, 2013 Order, the Court found that Sharp had failed to establish a prima facie case that Thomson SA was subject to specific jurisdiction.  (Dec. 11, 2013 Order [Dkt. No. 2252] at 12-15.)  The Court stated that "[o]n Plaintiffs' allegations and evidence, the Court cannot find that [Thomson SA] engaged in any intentional acts directed at the United States." (*Id*. at 14-15.)  "Plaintiffs' evidence, which often references 'Thomson' generally is . . . inconclusive.  Under these circumstances, the Court cannot find that [Thomson SA] intentionally aimed any action toward the United States, that [Thomson SA's] actions were the but-for cause of Plaintiffs' claims, and especially that exercising jurisdiction would be reasonable." (*Id*. at 15.)

Tech Data's Opposition does not warrant a different finding here.  Citing to similar, and in many cases identical, documents as those previously cited by Sharp – evidence this Court previously found "inconclusive" – Tech Data argues that Thomson SA participated in an alleged global conspiracy to fix the price of CRTs.  It asserts that Thomson SA must have purposely directed anticompetitive activity at the United States because representatives of some generic, unidentified "Thomson" entity attended foreign meetings with other defendants where information concerning pricing and production information related to CRTs and CRT Products sold in the United States was allegedly discussed.  (Opp'n. at 7-11.)  Tech Data also makes conclusory statements that its claims would not have arisen absent this alleged global price

1  fixing conspiracy, and Thomson SA's alleged participation in it, so Thomson SA's conduct was
2  a but-for cause of the antitrust injuries it allegedly suffered in the United States. (*Id*. at 12.)

3        Tech Data's attenuated arguments and evidence do not establish a prima facie case that
4  Thomson SA committed intentional acts directly aimed at the United States that were a but-for
5  cause of its alleged domestic antitrust injuries. Tech Data's FAC itself is devoid of specific
6  factual allegations regarding Thomson SA, and therefore Tech Data does not even attempt to
7  rely upon it to prove that Thomson SA is subject to this Court's jurisdiction. The exhibits Tech
8  Data attaches to its brief, like the virtually identical exhibits Sharp and the DAPs attached to
9  their briefs on these issues do not: (1) establish that Thomson SA set the prices at which its
10 United States subsidiary, Thomson Consumer, sold CRTs in the United States; or (2) refute the
11 statements in the Cadieux, O'Hara, and Debon Declarations establishing that Thomson SA did
12 not do so. (*See* Cadieux Decl. at ¶¶ 14-15, attached as **Ex. 3** to Thomson SA's Mot.; O'Hara
13 Declaration at ¶¶ 5-7, **Ex. 5** ("Thomson [Consumer] control[ed] its day-to-day activities" and
14 was "responsible for the sales and marketing of products in the United States."); Debon
15 Declaration at ¶ 6, **Ex. 6** ("Thomson SA d[id] not direct or advise Thomson [Consumer] on how
16 to sell or distribute any Thomson [Consumer] product in the United States.").)

17       For example, Tech Data asserts that Exhibits V and B attached to their Opposition
18 establish that Thomson SA took intentional acts aimed at the United States to set the prices of
19 CRTs sold here. (Opp'n. at 10.) In fact, these exhibits show only that:



[redacted]

• [redacted] regarding "worldwide CPT sales, CRT tube import status, and European market review" [redacted]

The other exhibits attached to Tech Data's Opposition also fail to prove that Thomson SA took intentional acts aimed at the United States in furtherance of the alleged CRT conspiracy. [redacted] The other documents cited by Tech Data refer to the activities of some generic, unidentified "Thomson" entity, but do not establish that Thomson SA set the prices of CRTs Thomson Consumer sold in the United States.[3]

---

[2] In its Opposition, Tech Data erroneously cites to Exhibit C in support of this allegation, a document that has no relation to this allegation. Because Sharp and the DAPs have made the same inaccurate allegation, however, Thomson SA believes that Tech Data intended to cite to Ex. T, just as those parties did.

[3] [redacted]

Simply stated, although over 100 depositions have been conducted in this case, nearly 5 million pages of documents have been produced by the parties, and the discovery cut-off is just months away, Tech Data is unable to present a single document to this Court that establishes Thomson SA engaged in anticompetitive activity directly aimed at causing Tech Data harm in the United States.[4]  The reason for this failure is simple – Thomson SA has never manufactured or sold CRTs or conducted any CRT business in the United States.  Tech Data has failed to establish a prima facie case that Thomson SA is subject to this Court's specific jurisdiction, so its FAC should be dismissed with prejudice.

> **2.   Tech Data Has Failed to Plead Facts Establishing That Thomson SA Was a But-For Cause of the Antitrust Injuries It Allegedly Suffered in the United States.**

Because it cannot plead facts showing that Thomson SA took any intentional acts aimed at causing it antitrust injury in the United States, Tech Data is unable to make a prima facie case that Thomson SA's forum-related conduct was a but-for cause of its claims.  Instead, Tech Data baldly asserts that: (1) Thomson SA participated in the alleged global antitrust conspiracy by attending meetings with other defendants in this case (many of whom had a customer-supplier relationship with Thomson affiliated companies) and (2) its United States subsidiary, Thomson Consumer, generated substantial revenues from its CRT-related operations in this country, so *ipso facto* forum-related activities of Thomson SA were a but-for cause of Tech Data's alleged antitrust injury. (Opp'n. at 8-10.)

[REDACTED]

---

[4] Tech Data's argument that "in its 2011 Annual Report . . . Thomson SA admitted that it" participated in a global conspiracy to fix the price of CRTs is also strained and unavailing. (*See* Opp'n. at 7.)  The fact that Thomson SA was one of the many targets of the European Commission's investigation into alleged CRT price-fixing activity in Europe does not even suggest, let alone establish, that Thomson SA took any anticompetitive actions directed at the United States.  Further, the subject of the EC's investigation – CRT sales in Europe – was not co-extensive with the subject of Tech Data's claims, which relate to CRTs sold in the United States.

1   This attenuated theory of but-for causation should be rejected. Where, as here, a foreign defendant has had limited contact with the forum, an especially "close nexus between its forum-related activities and the cause of the plaintiffs' harm" is required to establish the but-for causation needed to subject a defendant to specific jurisdiction. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 n.7 (1990) (rev'd on other grounds, 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)); *see also Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987). Tech Data has not plead facts or attached evidence to its Opposition that establishes a connection, let alone but-for causation, between any intentional acts Thomson SA expressly aimed at this forum and Tech Data's claims. Instead, Tech Data relies on its conclusory, unsupported assertion that "but for Thomson SA's anticompetitive conduct, Tech Data would not have sustained any damage." (Opp'n. at 12.) As a result, Tech Data has failed to satisfy the second element of the *Calder-*effects test, and its claims against Thomson SA should be dismissed for lack of personal jurisdiction.

### 3.  The Exercise of Specific Jurisdiction Over Thomson SA Would Not Be Reasonable.

In these circumstances, the exercise of specific jurisdiction over Thomson SA would not be reasonable. The first factor evaluated by courts when determining if it would be reasonable to exercise specific jurisdiction over a foreign defendant – "the extent of the defendant's purposeful interjection into the forum state" – is wholly absent here. "The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1488 (9th Cir. 1993).

Here, at all relevant times, Thomson SA was not a manufacturer – it was a holding company headquartered and incorporated in France. (*See* Cadieux Decl. at ¶¶ 14-15, **Ex. 3**.) Thomson SA has no operations, offices, employees, bank accounts, or registered agents for service of process in the United States and it owns no property, is not registered to do business, and does not pay taxes here. (*Id*. at ¶¶ 6-8, 10-13.) It did not control the day-to-day operations of Thomson Consumer in the United States nor set the prices of tubes sold by Thomson Consumer in this forum. (O'Hara Declaration at ¶¶ 5-7, **Ex. 5**; Debon Declaration at ¶ 6, **Ex. 6**.)

With complete access to the voluminous discovery record in this case, Tech Data is unable to refute these facts. Because Thomson SA has not purposefully interjected itself into this forum, requiring it to litigate Tech Data's tardy claims in a foreign jurisdiction would impose an unreasonable burden on it.

### B. The Court Should Not Grant Tech Data Jurisdictional Discovery.

As noted above, Tech Data has not even attempted to argue that Thomson SA is subject to the Court's general jurisdiction, so there is no reason that Tech Data should be permitted to conduct discovery on that topic. Despite the fact that it has had access to the enormous discovery record compiled during the last four years, including extensive document productions from Thomson SA's alleged co-conspirators, Tech Data pleads no specific facts and is unable to cite to evidence that controverts Thomson SA's declarations showing that it is not subject to specific jurisdiction. At this advanced stage in these proceedings, there is simply no basis to believe that by permitting Tech Data to conduct additional far-ranging jurisdictional discovery against Thomson SA it will obtain evidence that supports its attenuated theory of specific jurisdiction. Accordingly, Thomson SA respectfully requests that the Court deny Tech Data jurisdictional discovery.

### III. TECH DATA'S CLAIMS AGAINST THOMSON SA SHOULD BE DISMISSED BECAUSE IT FAILS TO PLEAD VIABLE CLAIMS.

#### A. Tech Data's Tardy Claims Against Thomson SA Are Barred by the Doctrine of Laches.

Tech Data's claims against Thomson SA are barred by laches. This Court has already found that the DAPs, who are similarly situated to Tech Data, "had ample time to add Thomson to their complaints without delay or prejudice, but they did not" and that their delay was "not justifiable." (Sept. 26, 2013 Order at 5-6.) Tech Data does not credibly explain why it waited for over four years to assert claims against Thomson SA after it was dropped as a party from the class actions in March 2009, despite the fact that Tech Data had: (1) knowledge of the alleged conspiracy since *at least* 2007 and (2) access to the comprehensive discovery record in this case

since at least 2012. Instead, it asserts that it has not unreasonably delayed bringing suit.[5] Tech Data's assertions completely ignore the Court's findings that Thomson SA had been prejudiced by the DAPs' unreasonable delay in seeking leave to amend their complaints to attempt to join Thomson SA to these actions. ([Dkt. No. 1959] at 4-6.) By asserting claims against the Thomson Defendants in their FAC without seeking leave of this Court, Tech Data has attempted to circumvent this Court's well-reasoned ruling. However, Tech Data's efforts to draw the Thomson Defendants into this litigation are just as inexcusably late and would cause the Thomson Defendants the same irremediable prejudice as allowing the DAPs to amend their complaints would have. Accordingly, for the same reasons expressed in the Court's September 26, 2013 Order, Tech Data's unreasonable delay in attempting to join the Thomson Defendants to these actions has prejudiced the Thomson Defendants. Thus, the Court should hold that Tech Data's reliance on tolling doctrines is barred by laches and dismiss its claims with prejudice.

There is also no dispute that Thomson SA has been seriously prejudiced by this delay. Since Tech Data sat on its claims against Thomson SA for a long time – more than four years – a lower showing of prejudice is required. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 695 F.3d 946, 953 (9th Cir. 2012) (noting that "if only a short period of time has elapsed since the accrual of the claim, the magnitude of the prejudice required before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required." (citation omitted)). The severe prejudice caused to Thomson SA by Tech Data's delay is clear from the face of the FAC, the history of this case, and the Court's September 26, 2013 Order.

First, while Tech Data slept on its rights, evidence degraded, memories faded, and information and personnel involved in Thomson affiliated companies' CRT operations − an industry which it exited in 2005 − became even more difficult, if not impossible, to locate. *See*

---

[5] Any "presumption" that claims filed within the statute of limitations are reasonably timed does not apply where a plaintiff asks the court to employ tolling doctrines to save claims filed after the limitations period has expired that should have been brought long before. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1991); *Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 170 (8th Cir. 1995) (en banc), *abrogation on other ground recognized in Madison v. IBP, Inc.*, 330 F.3d 1051, 1056 (8th Cir. 2003).

*McCune v. Alioto Fish Co.*, 597 F.2d 1244, 1250 (9th Cir. 1979) (affirming trial court's dismissal of complaint on basis of laches where plaintiff's three-year delay in bringing claims made it difficult for defendant to obtain evidence needed to defend claims). Accordingly, it is difficult for Thomson SA to identify specific evidence needed to defend against Tech Data's claims that may or may not still exist.

Tech Data's argument that the Thomson Defendants have not made a sufficiently particularized showing of evidentiary prejudice rings hollow when Tech Data's own unreasonable multi-year delay is what makes it difficult, if not impossible, to identify the witnesses and evidence necessary for it to adequately defend itself. Tech Data's own allegations establish that Thomson SA exited the CRT business in 2005 when its CRT-related assets and personnel were transferred to Videocon Industries in 2005. (FAC at ¶ 62.) Had Tech Data timely filed its claims, Thomson SA may have been able to preserve documents and testimony regarding its former business, but instead Tech Data slept on their rights. By waiting to file claims against Thomson SA until over eight years after it entirely exited the CRT industry, Tech Data has caused Thomson SA severe evidentiary prejudice.

Tech Data's delay has also caused Thomson SA expectations-based prejudice. Thomson SA will be forced to bear disproportionate litigation expenses and will be subject to higher potential damages if it is joined to these actions now. Given the size, complexity, and volume of the factual and legal issues raised by this case, bringing Thomson SA into this action now is prejudicial because Thomson SA cannot adequately prepare its defense on the current schedule. And, further delaying the entire CRT case is also unreasonable. Tech Data should not be permitted to benefit from its dilatory conduct by obtaining additional time to litigate its claims against the defendants. Nor should Thomson SA be forced to go it alone on a separate track when it could have meaningfully taken advantage of group litigation efficiencies and reduced the cost of defending this litigation had Tech Data attempted to bring it into this case in a timely manner.

Tech Data's unjustified delay has also caused Thomson SA to suffer prejudice through increased exposure to liability for enormous damages. Through no fault of its own and because

of Tech Data's delay, settlements with earlier-sued defendants will shift disproportionate and unwarranted risk of liability onto Thomson SA. *See* C. Leslie, *Judgment-Sharing Agreements*, 58 Duke L.J. 747, 758-59 (2009). It would be fundamentally unfair and inequitable to allow Tech Data to benefit from its inexcusable delay by imposing this serious prejudice on Thomson SA.

The Court has already found Thomson SA has been prejudiced by the DAPs' delay. By attempting to join the Thomson Defendants to these actions without seeking leave of this Court, Tech Data's FAC threatens to cause the Thomson Defendants the same prejudice. The Court should reject this attempt and, for the reasons it has already given, hold that laches prevents Tech Data from relying on tolling doctrines to extend the statute of limitations in this case.

### B. Tech Data's Claims Are Time-Barred and It Has Not Pleaded Specific Facts That Establish a Plausible Basis for Tolling the Statutes of Limitation.

Not only is Tech Data's reliance on tolling doctrines barred by laches, but its claims are barred by the applicable statutes of limitation. "[An antitrust] cause of action begins to accrue and the statute [of limitations] begins to run when a defendant commits an act that injures the plaintiff's business." *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971). The statutes of limitation on Tech Data's claims against Thomson SA began to run no later than July 2005, when Thomson SA exited the CRT business. *Smith v. United States*, 133 S. Ct. 714, 719 (2013); *see also Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999), *as modified by* 211 F.3d 1224 (11th Cir. 2000) (holding that the statute of limitations on antitrust claims began to run when defendant sold business and thereby withdrew from alleged conspiracy); *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854 (C.D. Ill. 2003) (holding that an executive withdrew from an alleged price-fixing conspiracy by resigning). Tech Data's factually bare FAC does not plead any facts that make it plausible to infer that Thomson SA participated in the conspiracy after it exited the CRT industry in July 2005, so the statutes of limitation began to run, at the latest, at that time. (*See* FAC at ¶¶ 62-63.)

### 1. Just Months Before the Close of Discovery, Tech Data Does Not Plead Facts That Plausibly Support Fraudulent Concealment.

Tech Data's attempt to plead that Thomson SA fraudulently concealed its alleged participation in the conspiracy does not meet the heightened pleading standards of Fed. R. Civ. P. 9(b). In an effort to gloss over the inadequacy of their allegations, Tech Data cites to a Report and Recommendation ("R&R") filed by former Special Master Legge in February 2010 in which he found that at that early stage in the case, detailed allegations of fraudulent concealment were not necessary. (Opp'n. at 18.) Now, over four years later and after extensive discovery has been conducted, that decision is inapplicable. (*See* [Dkt. No. 1960] at 5-6.) Moreover, Tech Data ignores that, in its Order evaluating that R&R, the Court stated that it was "concerned about the temporal scope of the alleged conspiracies in this case" and suggested that whether Plaintiffs' claims were barred by the applicable statutes of limitation should be more carefully analyzed after discovery had been conducted. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010).

At this stage in the proceedings, Tech Data must plead with particularity specific, dated acts of alleged concealment. *See In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1078-9 (D. Kan. 2009) (granting motion to dismiss and limiting time periods for which plaintiffs could rely on theory of fraudulent concealment to only those periods corresponding with dated acts of concealment pleaded with particularity in antitrust complaint). It should also be required to plead specific acts of diligence that they undertook to uncover their claims. *In re Processed Egg Prods. Antitrust Litig.,* 2013 U.S. Dist. LEXIS 119936 (E.D. Pa. Aug. 23, 2013). Although it has had access to extensive discovery from other alleged conspirators for years, the Tech Data does not plead facts with particularity that satisfy these standards. (*See* FAC at ¶¶ 225-235.)

Tech Data argues that because it has made conclusory allegations of acts of fraudulent concealment by other defendants, the Court may not find that Thomson SA withdrew from the alleged conspiracy when it exited the CRT industry in 2005. According to Tech Data, these allegations make Thomson SA liable for unspecified acts of concealment allegedly committed by other defendants after 2005. Tech Data's theory is not supported by the facts or the law. In

cases where the courts have held that fraudulent concealment could apply to toll the statute of limitations even after the defendant had exited the relevant business, plaintiffs had plead specific facts establishing that the withdrawing defendant actively participated in fraudulent concealment before it withdrew. *See In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 790 (N.D. Cal. 2007). Moreover, unlike Tech Data here, in these cases, the plaintiffs were not attempting to rely on fraudulent concealment to toll the statutes of limitation during time periods for which they had failed to plead acts of concealment by *any* defendant with the particularity required by Rule 9(b). (*See* FAC at ¶¶ 225-35 (pleading no acts of alleged "concealment" that occurred after 2004).) Thus, even if other defendants' acts could be imputed to Thomson SA after it exited the CRT industry in 2005, Tech Data has alleged no actions after 2005 that could be so imputed to toll the statutes of limitation during the relevant time period here.

### 2. *American Pipe* Tolling Does Not Save Tech Data's Claims.

*American Pipe* tolling does not save Tech Data's claims against Thomson SA. In its Opposition, Tech Data does not respond to and thus concedes Thomson SA's argument that *American Pipe* tolling only applied to toll the limitations period on claims against Thomson SA from January 2008 until March 2009, when Thomson SA was dropped as a party from the class actions. Accordingly, the limitations period began to run again on March 16, 2009 and expired well before September 2013, when Tech Data filed the FAC. Moreover, Tech Data specifically concedes that "with respect to the Thomson Defendants there is no tolling doctrine that brings its California and Florida state law claims within the applicable statutes of limitations." (Opp'n. at 18 n.10). Accordingly, all of Tech Data's state law claims are untimely and subject to dismissal with prejudice.

### 3. Government Action Tolling Does Not Apply to the DAPs' Claims.

The Supreme Court has stated that government action tolling serves two purposes: (1) it ensures private litigants "have the benefit of prior Government antitrust enforcement efforts" and (2) it "shorten[s] the period over which treble-damages actions will extend." *Greyhound Corp. v. Mt. Hood Stages*, 437 U.S. 322, 334 (1978). Application of the statute here would not

serve either of these purposes. Since no meaningful criminal proceedings are currently pending against the fugitive defendants, there is no evidence or other fruit of the government indictments from which Tech Data may benefit. Applying government action tolling here would simply provide a windfall to Tech Data. In addition, contrary to the second purpose of the statute, its application here would result in indefinite tolling, a result that the Supreme Court has rejected. *Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1420 (2012) (rejecting interpretation of statute that would permit indefinite tolling, reasoning that "[t]he potential for such endless tolling in cases in which a reasonably diligent plaintiff would know of the facts underlying the action is out of step with the purpose of limitations periods in general").

Nor is Tech Data's interpretation of 15 U.S.C. § 16(i) mandated by applicable authority. Tech Data relies on *J.M. Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867 (9th Cir. 2007), for the proposition that a criminal proceeding should always be deemed to have been instituted under the statute after a grand jury returns an indictment. This mischaracterizes *Dungan*. In that case, the court merely rejected the argument that events *before* an indictment − specifically the empanelling of a grand jury − could "institute" criminal proceedings. It did not consider whether an indictment, without more, *always* institutes a criminal proceeding. In fact, consistent with Thomson SA's arguments, the Ninth Circuit expressly recognized that its holding would "not eliminate all necessity to strike the exquisite balance" in seeking to effectuate the purposes of § 16(i) when determining if government action tolling applies in a particular case. *Id.* at 872. In accordance with the purposes of the statute, the Court should find that government action tolling does not apply.

## CONCLUSION

For the foregoing reasons, Thomson SA respectfully requests that the Court strike Tech Data's claims against Thomson SA in the FAC with prejudice.

Dated:  March 13, 2014

Respectfully submitted,

   */s/ Kathy L. Osborn*
Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA  94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

**Attorneys for Specially Appearing Defendant Thomson SA**