# EXHIBIT A



E-SERVED
06/17/02 02:26 PM ET
Methionine Lit.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

**MDL NO. 00-1311 CRB (JCS)**
**Master File No. C99-3491 CRB (JCS)**

**JAMS No. 1100034770**

**IN RE: METHIONINE ANTITRUST LITIGATION**
(This order pertains to all direct action cases)

---

## ORDER ON PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS
## SUBMITTED TO GOVERNMENTAL AUTHORITIES

Plaintiffs move to compel the production of documents submitted by defendants to governmental authorities. The motion is opposed by defendants and has been briefed by both sides. An oral argument was conducted by telephone on June 10, 2002, and the motion was then submitted for decision.

The parties, and particularly plaintiffs, have advised that they desire a ruling on the motion as soon as possible, because they leave for Europe on June 21 for the taking of depositions in this case. This order does so; however, because of the shortness of time and the length of the record, the undersigned's discussions of the reasons for his decisions are less complete than he would otherwise desire.

//

I.

First of all, it is important to define precisely what is now at issue in this motion.

Plaintiffs seek compliance with Document Request No. 18, which requires defendants  to produce all documents:

> "provided to or received from any foreign or domestic governmental agency or legislative body or representative, including the Federal Trade Commission, the United States Department of Justice, the FBI, the SEC, the European Commission, any grand jury, any Congressional committee, any agency or representative body of any country, state or other political subdivision relating to methionine or chemical intermediates."

Defendants have represented to the Special Master that no written submissions have been made to any United States authority.  Plaintiffs appear to take issue with that representation (footnote 2 of their reply brief), but only obliquely.  First, plaintiffs speculate that there may have been oral submissions; but the present motion is for documents.  Second, plaintiffs say that they are moving for the production of all documents produced to the Justice Department; but in the face of defendants' representation, plaintiffs have not produced any record indicating that any documents were submitted to the Department of Justice.  Finally, plaintiffs' footnote asks for notes made by witnesses and by the defendants; but the document request specifically asks for documents between the defendants and a governmental agency.  The Special Master therefore concludes that the present motion addresses documents between a defendant and a foreign governmental agency.

More specifically, the documents at issue are filings made by defendants with the European Commission or the Australian Competition and Consumer Commission.  Such a filing is generally a written submission, or so-called "corporate statement," prepared by an attorney for a defendant, detailing the defendant's prior participation in activities within the jurisdiction of

E-SERVED
06/17/02 02:26 PM ET
Methionine Lit.

the commission, to assist the commission in its enforcement responsibilities and to obtain leniency for the defendant. Additional supporting documents may be attached to those submissions, which documents were ones created by the company or witnesses at the time the events occurred. Defendants represent that they have already produced all such preexisting records to the plaintiffs, and defendants are not here objecting to production just because those records were also a part of a submission to a governmental agency.

Plaintiffs take issue with that representation in at least one respect. Plaintiffs cite a memorandum authored in 1971 by defendant Degussa. However, the Special Master does not believe that the existence of that one document is sufficient to change the focus of this motion from the corporate statements to each document which may have been filed with them. It appears that the 1971 document predates the relevant time period of plaintiffs' document request. In any event, in the context of all of the production in this case, one document is not enough to offset defendants' representation that they have complied with the discovery requests except for the specific corporate statements filed with the agencies.

The Special Master therefore concludes that the issue in this motion is the production of the written submissions or corporate statements themselves, and not any supporting documents filed with them, filed by defendants with the European Commission or the Australian Commission.

Those statements were filed with the commissions under rules of the commissions providing that the submissions would be confidential. But plaintiffs have somehow obtained redacted copies of two submissions made to the European Commission. How plaintiffs obtained these confidential redacted copies is not known, but for purposes of this motion is not material.

So the dispute at issue here is plaintiffs' request for copies of the written submissions made by the defendants to the European Commission, in unredacted form, and copies of any submissions made to the Australian Commission.

## II.

The copies that the plaintiffs presently have are sufficient to enable plaintiffs to engage in certain discovery, including using the copies at depositions of the defense witnesses.  But as stated, the copies of the European Commission statements are redacted, so plaintiffs do not know what additional information is not available to them.  And plaintiffs have not received any of the submissions filed with the Australian Commission.

Plaintiffs argue that they need the submissions not only for discovery purposes, but also to authenticate the submissions for introduction into evidence at trial.  The mere production of those submissions by defendants would not necessarily admit their authenticity, but production would focus any further discovery requests for authenticity.

In that regard, the undersigned also notes that any decision regarding production of the statements in discovery will not be coextensive with a decision as to whether they are admitted into evidence at trial.  This is at least because of issues of confidentiality and comity, which are raised by the foreign governments and which go beyond discovery and add principles of law and policy relevant to admissibility.  Nevertheless, the above issues are relevant to the balancing of the interests in this discovery request.

A motion similar to this was made in "In re: Vitamin Antitrust Litigation," pending in the United States District Court for the District of Columbia.  In that action Special Master Steven J. Pollak issued a lengthy opinion on plaintiffs' request for the written submissions, which opinion

was essentially affirmed by the United States District Judge.  However, some procedural and substantive differences exist between the Vitamin's case and the present case.  And more important, subsequent to the Special Master's decision, the European Commission (1) filed an amicus brief in that case disagreeing with certain conclusions of the Special Master; (2) filed a letter statement of position, through counsel for a defendant, for submission to the undersigned in this present case.  The commission takes the position that the request of plaintiffs for copies of the written submissions should be denied.  Special Master Pollak had no opportunity to consider the European Commission's own presentation of its position at the time of his decision.

III.

The subject matter of the present litigation is an alleged conspiracy to fix prices of the chemical commodity known as methionine.  The limited evidence known to the Special Master at the present time indicates that the alleged conspiracy was conducted primarily overseas.  But the issue remains as to whether such a conspiracy, assuming that it did exist, had an impact on prices and markets in the United States.  The submissions made by the defendants to the European Commission and to the Australian Commission undoubtedly deal with those issues.  And the redacted submissions which plaintiffs have received refer to manufacturing and marketing in the United States, to at least one meeting in the United States, and to "world-wide" events.  The corporate statements are therefore relevant to the subject matter of the present litigation and could lead to the production of admissible evidence.

The plaintiff have made a prima facie showing of need, because they have received only redacted copies of two submissions and have not received others.

Defendants have raised several objections to the production of the written submissions, and the European Commission's amicus brief in Vitamins and its letter in this case have also raised objections.

IV.

The Special Master turns first to the stated position of the European Commission. The undersigned does so for several reasons. One is that the corporate statements at issue are the property of the commission, and they are subject to its regulations (although the defendants of course have copies and plaintiffs seek to obtain those copies). Second, the position of the commission underscores several of the objections made by the defendants. And finally, the commission is best able to state for itself the considerations of international comity that it believes are at issue. As stated, Special Master Pollak did not have the exposition of the commission's positions at the time of his decision in Vitamins.

A.

The European Commission's letter submitted in this case states the commission's unequivocal opposition to the production of the corporate statements. Indeed, in the final paragraph of its letter, the commission states that it may attempt to intervene directly in this action.

Parenthetically, the commission expresses its serious concern about the fact that the plaintiffs here have been able to obtain copies of the defendants' submissions. However, the commission does not suggest any remedy or other consequence.

The commission defines the written submissions, or "corporate statements," as documents written exclusively for the purpose of leniency applications to the commission, in

which a company describes a cartel's actions and practices obtained from its own participation in the cartel. The commission emphasizes that if a company decided not to submit such a statement, the document would never have existed. This underscores the fact that the statements are created substantially <u>after</u> the events and are not therefore business or contemporaneous records.

The commission states that production of the submissions would "entail serious consequences for the effectiveness of the E.U. Leniency Program," which the commission describes as "the E.U.'s most productive tool in combating illegal cartels." The commission also argues that production would contravene principles of international comity, because the commission's effective enforcement of its competition laws would be harmed. The commission also says that production would jeopardize the cooperation between the E.U. and the United States antitrust authorities regarding effective enforcement of antitrust laws in global transactions, as reflected in the E.C.-U.S. agreement of 1995. The fact that the commission even refers to that agreement, and states that cooperation would be "jeopardized," is indicative of the seriousness of the policy-level objection which the commission is raising to production of the statements. The commission also refers to the production of the written statements as violating "privileges owned and affirmatively asserted by the commission." That reference is somewhat vague, but undoubtedly refers to investigative privileges, which are asserted by the defendants in this motion.

Taken as a whole, the commission's letter is obviously a strong objection to production of the statements, and raises serious questions about the impact on continuing United States-E.U. cooperation in the enforcement of the antitrust laws internationally.

//



B.

The commission's letter incorporates by reference, and asks this court to consider, the amicus brief which it filed in the <u>Vitamin</u>'s case. That amicus brief disagrees, albeit politely, with Special Master Pollak's earlier decision, and argues that the written statements should not be produced. The principle arguments made by the commission are that production would undermine the E.C.'s leniency program, which it again says is "its most productive tool in combating illegal cartels." And the commission argues that production would contravene principles of international comity. A third argument was also made in the brief, but for some reason was redacted in the public version which was provided to the undersigned. The commission argues in some detail that production of the corporate statements involves the disclosure of evidence that is "critical for the Commission's ability to establish violations of the relevant antitrust provisions contained in the E.C. treaty."

The commission's brief contains a lengthy section emphasizing international comity. It discusses the danger to the European Union's public interest in the ability of its commission to initiate and prosecute future investigations if it became known that corporate statements are discoverable by litigants in the United States. The commission again refers to the agreement between the United States and the European Commission that governs their cooperation regarding the application of their competition laws. The commission specifically states that "any marginal benefit the Plaintiffs will enjoy from disclosure of the Submission is outweighed by the powerfully adverse impact it will have on the E.C.'s interests in the effective enforcement of its competition laws." And "it is undeniable that the risk of public disclosure would chill the E.C.'s commission carefully crafted anti-cartel mechanism." The brief further discusses how its enforcement of the antitrust laws would be chilled, and stresses that the interests of the United

States are also furthered by non-disclosure because of the agreement between the United States and the E.C.

C.

The commission recognizes, as does this Special Master, that the conflicting interests of comity and discovery involve a balancing of interests.  But the commission argues that disclosure on the one hand would undermine its ability to enforce the antitrust laws, while on the other hand, the disclosure policies of the federal rules of civil procedure would only be marginally affected at best.  The commission points out that the plaintiffs have access to facts from the witnesses.  They have access to the contemporaneous evidentiary material.  And because they already have redacted copies of certain of the statements in this case, plaintiffs already have the ability to question witnesses about the facts that are disclosed.  The plaintiffs have not been impeded in their independent quest for information here.  Voluminous documents have been produced.  The source documents underlying the written statements have been produced.  Witnesses have been and will be deposed, and none of those witnesses has claimed a 5th Amendment privilege or has indicated an intent to do so.

The undersigned concludes that these contentions of the commission, now stated directly in this case, strengthen several of the arguments made by defendants against production of the statements.

V.

This motion is also concerned with similar statements filed by some defendants with the Australian Commission. The defendants' declaration states that at least one defendant has made a submission to the Australian Commission that is similar in nature to the submissions made to the

European Commission.  The Australian Commission has not taken any position in the present

case.  But the undersigned has been referred to the statutes and regulations of the Australian

Commission that apply to such documents.

Plaintiffs have submitted a declaration from Mr. Brett Walker, a senior counsel at the

New South Wales Bar.  Mr. Walker analyzes the problem under the rubric of a public immunity

defense, apparently approaching the issue from the point of view of whether a court in Australia

would preclude production of these documents under such a defense.  Mr. Walker first states that

he has not had sufficient detail as to the nature of the documents to make a clear determination

on a claim for immunity.  But he says that there is in his view "no certainty that an Australian

court would uphold a claim for public-interest immunity."  And he also concludes that "it could

not, in my view, be said that any claim by the A.C.C.C. or the U.S. defendants for public interest

immunity would necessarily succeed in an Australian court."  However, Mr. Walker does not

directly address the issue of the comity that should be extended by a United States court to the

regulatory scheme of Australia.  And he does state that a decision on disclosure requires "the

exercise of balancing" competing interests.

Defendants have submitted portions of the Australian Trade Practices Act, providing for

the confidentiality and protection of information supplied to the Australian Commission.  The

defendants have also submitted the table of contents of the Trade Practices Act itself.  Although

that is only a table of contents, it is sufficient to demonstrate that Australia has enacted a very

thorough body of substantive and procedural law dealing with competition and consumer

protection.  It includes prohibitions of restrictive trade practices and the filing of corporate

statements.

E-SERVED
06/17/02 02:26 PM ET
Methionine Lit.

Defendants have further produced an affidavit from the Chief Executive Officer of the Australian Commission.  That affidavit demonstrates that the A.C.C.C.'s provisions for corporate statements, the protection of those corporate statements, and their function in antitrust enforcement parallels the European Commission.  In addition, the affidavit establishes that if third parties such as plaintiffs in United States litigation can gain access to A.C.C.C. submissions, the commission's ability to conduct effective investigations and enforcement of its act would be seriously affected.  And future resolution of the commission's investigations by way of settlement, including those involving overseas companies, would be jeopardized.  It therefore appears that Australia's antitrust regulation and enforcement parallels that of the European Commission.  Australia's comity interests would be as adversely impacted as the comity interests of the European Commission.

Against the back-drop of the positions expressed by the E.C. and the A.C.C.C., the Special Master now turns to the arguments of the defendants.


## VI.

Defendants argue that the self-evaluation privilege precludes production of the written submissions.   Defendants' assertion that the corporate statements are self evaluations is directly supported by the European Commission as discussed above. The written submissions were prepared long after the events occurred.  They were written for the purpose of disclosing the existence of a possible conspiracy, and the facts of the defendant's actions in connection with it. And they were submitted to the commission for the purposes of disclosure and of seeking leniency.

The self-evaluative privilege is recognized it this circuit, <u>Dowling v. American Hawaii,</u> <u>Inc.</u> 971F 2nd 423 (9th Circuit 1992). Although the <u>Dowling</u> court outlined and discussed the privilege, it did not apply it in the facts of the case then before the court. The briefs of both parties here argue by citation to numerous cases, primarily trial court decisions, the extent to which the privilege applies. However shaky the application to particular fact situations, it is clear that the 9th Circuit did state in <u>Dowling</u> the criteria for such a privilege:

The information had to result from a critical self analysis undertaken by a party. As stated above, this is effectively what occurred with respect to the corporate statements. Next, no documents are to be accorded the privilege unless they were prepared with the expectation that they would be kept confidential. That is certainly the situation in this case. Notwithstanding the fact that plaintiffs somehow obtained redacted copies, it was the intention of both the defendants and the European Commission that the documents would be confidential. Another criterion is that the public must have a strong interest in preserving the free flow of that type of information. The submissions of the E.C. and the A.C.C.C. show the strong interests which the commissions and other international organizations have in the flow of such information. The commissions consider those statements as essential to their antitrust enforcement work. A final criterion is that the information must be the type whose flow would be curtailed if disclosure were allowed. The commissions themselves have adequately demonstrated that if discovery of corporate statements were allowed, the commissions' enforcement actives would be severely hampered because parties would be unwilling to file them in the future.

The Special Master therefore concludes that the <u>Dowling</u> case defining the privilege remains the law of this circuit, and that the elements for this privilege have been established, primarily by the filings and arguments of the commissions. The balancing of interests in such a

situation favor non-disclosure, particularly in this case where the plaintiffs do have access to other available information to establish their claims.

## VII.

Defendants also argue that these documents are protected from disclosure under the principles of international comity.  As stated above, the two commissions also endorse this objection, and the E.C. has emphasized in detail the important comity considerations.  The Special Master believes that this principle should be given effect here, particularly in light of the strong statements of the European Commission.  This is not a case of the parties merely speculating over how a foreign government might feel about such an action; the foreign government itself has clearly stated its position and the reasons why the production of the documents would harm its interests.

Comity is a balance, and this Special Master is of the opinion that the balance tips strongly in favor of the interests of the commissions.  Striking the balance in favor of comity here does little harm to these plaintiffs.  The plaintiffs already have the documents underlying the corporate statements.  The also have access to the testimony of witnesses, none of whom has taken the 5th Amendment or have indicated that they will do so.  And the plaintiffs already have the partial information from the redacted statements which they have received.

## VIII.

The defendants also insert the investigative privilege.  This is a privilege which generally belongs to the governmental agency itself.  The E.C. has, at least obliquely, demonstrated its interest in preserving the privilege and asserting it (pages 6 and 7 of its amicus brief, and page 2

of its letter to this court). The E.C. has stated its bona fide interest in the secrecy of such corporate filings and in maintaining their confidentiality. The arguments are particularly strong in view of the two commissions' explanations of the reasons for secrecy and confidentiality.

IX.

Defendants also assert that the attorney work-product privilege (not the attorney-client privilege) protects the documents from production. There is little question that the documents were prepared by attorneys for the defendants, and that the privilege at least initially applies to them.

However, the problem with assertion of the privilege here is that the statements were voluntarily produced by the defendants to the agencies. The E.C.'s contentions indicate that the filing of a corporate statement itself is a voluntary act, and that only after the filing of such a document does the commission have the power to compel the production of other documents. The Special Master is of the opinion that the filing of the voluntary corporate statements was a waiver of this particular privilege. The fact that it is important to the antitrust enforcement of foreign authorities is an argument that is more appropriately considered under the principles of comity. The filing of the statements themselves were voluntary and not compelled.

Defendants make the additional argument that even though not compelled, the statements were filed under a provision of confidentiality, and that defendants should be protected from a breach of that confidentiality. It is apparent that the redacted statements were given to plaintiffs in violation of the confidentiality expectations of the commission and the defendants. But it is not clear from either the commission's presentation or from the defendants' arguments and authorities that a denial of production should necessarily result from someone else's violation of

E-SERVED
06/17/02 02:26 PM ET
Methionine Lit.

confidentiality.  And in view of the Special Master's conclusions above with respect to the other objections by the commission and the defendants, the Special Master need not stretch to find a causal connection that is not self apparent.


                                        X.

    It is therefore ordered that plaintiffs' motion to compel the production of documents submitted to governmental authorities is denied.


IT IS SO ORDERED.

Dated: June 17, 2002          ORIGINAL SIGNED DOCUMENT ON FILE WITH THE COURT
                                        Hon. Charles Legge (Ret.)
                                        Special Master