# EXHIBIT G

JUDGMENT OF THE COURT (Third Chamber)

27 February 2014([*](#))

(Appeal — Regulation (EC) No 1049/2001 — Access to documents of the institutions — Documents relating to a proceeding under Article 81 EC — Regulation (EC) No 1/2003 and Regulation (EC) No 773/2004 — Access refused — Exceptions relating to the protection of investigations, commercial interests and the decision-making process of the institutions — Obligation upon the institution concerned to carry out a specific, individual examination of the content of the documents covered by the request for access)

In Case C‑365/12 P,

APPEAL under Article 56 of the Statute of the Court of Justice of the European Union, brought on 31 July 2012,

**European Commission,** represented by B. Smulders, P. Costa de Oliveira and A. Antoniadis, acting as Agents, with an address for service in Luxembourg,

appellant,

the other parties to the proceedings being:

**EnBW Energie Baden-Württemberg AG,** established in Karlsruhe (Germany), represented by A. Hahn and A. Bach, Rechtsanwälte,

applicant at first instance,

**Kingdom of Sweden,** represented by C. Meyer-Seitz, acting as Agent,

**Siemens AG,** established in Berlin (Germany) and Munich (Germany), represented by I. Brinker, C. Steinle and M. Holm-Hadulla, Rechtsanwälte,

**ABB Ltd,** established in Zurich (Switzerland), represented by J. Lawrence, Solicitor, and H. Bergmann and A. Huttenlauch, Rechtsanwälte,

interveners at first instance,

THE COURT (Third Chamber),

composed of M. Ilešič, President of the Chamber, C.G. Fernlund, A. Ó Caoimh (Rapporteur), C. Toader and E. Jarašiūnas, Judges,

Advocate General: P. Cruz Villalón,

Registrar: M. Aleksejev, Administrator,

having regard to the written procedure and further to the hearing on 13 June 2013,

after hearing the Opinion of the Advocate General at the sitting on 3 October 2013,

gives the following

# Judgment

1    By its appeal, the European Commission seeks to have set aside the judgment of the General Court of the European Union of 22 May 2012 in Case T‑344/08 *Energie Baden-Württemberg* v *Commission*, not yet published in the ECR ('the judgment under appeal'), by which that court annulled Commission Decision SG.E.3/MV/psi D (2008) 4931 of 16 June 2008 refusing the request made by EnBW Energie BadenWürttemberg AG ('EnBW') for access to the case-file in Case COMP/F/38.899 — Gas insulated switchgear ('the contested decision').

## Legal context

2    Regulation (EC) No 1049/2001 of the European Parliament and of the Council of 30 May 2001 regarding public access to European Parliament, Council and Commission documents (OJ 2001 L 145, p. 43) lays down the principles, conditions and limits of the right of access to documents of those institutions.

3    Article 4 of Regulation No 1049/2001, entitled 'Exceptions', is worded as follows:

'…

2.    The institutions shall refuse access to a document where disclosure would undermine the protection of:

–    commercial interests of a natural or legal person, including intellectual property,

–    court proceedings and legal advice,

–    the purpose of inspections, investigations and audits,

unless there is an overriding public interest in disclosure.

3.    Access to a document, drawn up by an institution for internal use or received by an institution, which relates to a matter where the decision has not been taken by the institution, shall be refused if disclosure of the document would seriously undermine the institution's decision-making process, unless there is an overriding public interest in disclosure.

Access to a document containing opinions for internal use as part of deliberations and preliminary consultations within the institution concerned shall be refused even after the decision has been taken if disclosure of the document would seriously undermine the institution's decision-making process, unless there is an overriding public interest in disclosure.

…

6.    If only parts of the requested document are covered by any of the exceptions, the remaining parts of the document shall be released.

7.    The exceptions as laid down in paragraphs 1 to 3 shall only apply for the period during which protection is justified on the basis of the content of the document. The exceptions may

apply for a maximum period of 30 years. In the case of documents covered by the exceptions relating to privacy or commercial interests and in the case of sensitive documents, the exceptions may, if necessary, continue to apply after this period.'

4      Articles 17 to 22 of Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 [EC] and 82 [EC] (OJ 2003 L 1, p. 1) set out the Commission's powers of investigation. Those powers include requests for information (Article 18), the power to inspect the premises of the undertaking concerned (Article 20) or other premises (Article 21).

5      Article 27 of Regulation No 1/2003, entitled 'Hearing of the parties, complainants and others', provides in paragraph 2 thereof as follows:

'The rights of defence of the parties concerned shall be fully respected in the proceedings. They shall be entitled to have access to the Commission's file, subject to the legitimate interest of undertakings in the protection of their business secrets. The right of access to the file shall not extend to confidential information and internal documents of the Commission or the competition authorities of the Member States. In particular, the right of access shall not extend to correspondence between the Commission and the competition authorities of the Member States, or between the latter, including documents drawn up pursuant to Articles 11 and 14. Nothing in this paragraph shall prevent the Commission from disclosing and using information necessary to prove an infringement.'

6      Article 28 of Regulation No 1/2003, entitled 'Professional secrecy', provides as follows:

'1.      Without prejudice to Articles 12 and 15, information collected pursuant to Articles 17 to 22 shall be used only for the purpose for which it was acquired.

2. Without prejudice to the exchange and to the use of information foreseen in Articles 11, 12, 14, 15 and 27, the Commission and the competition authorities of the Member States, their officials, servants and other persons working under the supervision of these authorities as well as officials and civil servants of other authorities of the Member States shall not disclose information acquired or exchanged by them pursuant to this Regulation and of the kind covered by the obligation of professional secrecy.  This obligation also applies to all representatives and experts of Member States attending meetings of the Advisory Committee pursuant to Article 14.'

7      Commission Regulation (EC) No 773/2004 of 7 April 2004 relating to the conduct of proceedings by the Commission pursuant to Articles 81 [EC] and 82 [EC] (OJ 2004 L 123, p. 18) provides in Article 6 thereof, entitled 'Participation of complainants in proceedings', as follows:

'1.      Where the Commission issues a statement of objections relating to a matter in respect of which it has received a complaint, it shall provide the complainant with a copy of the non-confidential version of the statement of objections and set a time-limit within which the complainant may make known its views in writing.

        …'

8      Article 8 of Regulation No 773/2004, entitled 'Access to information', is worded as follows:

'1.    Where the Commission has informed the complainant of its intention to reject a complaint pursuant to Article 7(1) the complainant may request access to the documents on which the Commission bases its provisional assessment. For this purpose, the complainant may however not have access to business secrets and other confidential information belonging to other parties involved in the proceedings.

2.    The documents to which the complainant has had access in the context of proceedings conducted by the Commission under Articles 81 [EC] and 82 [EC] may only be used by the complainant for the purposes of judicial or administrative proceedings for the application of those Treaty provisions.'

9    Article 15 of Regulation No 773/2004, entitled 'Access to the file and use of documents', states as follows:

'1.    If so requested, the Commission shall grant access to the file to the parties to whom it has addressed a statement of objections. Access shall be granted after the notification of the statement of objections.

2.    The right of access to the file shall not extend to business secrets, other confidential information and internal documents of the Commission or of the competition authorities of the Member States. The right of access to the file shall also not extend to correspondence between the Commission and the competition authorities of the Member States or between the latter where such correspondence is contained in the file of the Commission.

3.    Nothing in this Regulation prevents the Commission from disclosing and using information necessary to prove an infringement of Articles 81 [EC] or 82 [EC].

4.    Documents obtained through access to the file pursuant to this Article shall only be used for the purposes of judicial or administrative proceedings for the application of Articles 81 [EC] and 82 [EC].'

10    Article 16 of Regulation No 773/2004, entitled 'Identification and protection of confidential information', provides in Article 1 thereof as follows:

'Information, including documents, shall not be communicated or made accessible by the Commission in so far as it contains business secrets or other confidential information of any person.'

### Background to the dispute

11    EnBW is an energy-distribution company which considers itself to have been affected by a cartel operated by producers of gas insulated switchgear ('GIS'), which was censured by Commission Decision C(2006) 6762 final of 24 January 2007 relating to a proceeding under Article 81 [EC] and Article 53 of the EEA Agreement (Case COMP/F/38.899 — Gas insulated switchgear) ('the GIS decision'). Those producers included Siemens AG ('Siemens') and ABB Ltd ('ABB').

12    In the GIS decision, the Commission found that a number of undertakings had infringed Article 81(1) EC and Article 53 of the European Economic Area Agreement of 2 May 1992 (OJ 1994 L 1, p. 3) by taking part in a cartel on the GIS market, involving bid-rigging, price fixing

and allocation of GIS projects and markets in Europe. As a consequence, the Commission imposed fines totalling EUR 750 million on the undertakings that had taken part in the cartel.

13    On 9 November 2007, EnBW sought from the Commission, on the basis of Regulation No 1049/2001, access to all documents in the file relating to the proceeding that led to the adoption of the GIS decision.

14    Following discussions with the Commission, EnBW stated that its application, as well as a confirmatory application of 10 December 2007, was devoid of purpose and, on 13 December 2007, made a fresh application for access to documents relating to the case in question. By fax of 11 January 2008, EnBW clarified its request by excluding from it three categories of document, namely all documents dealing exclusively with the structure of the undertakings concerned, all documents relating exclusively to the identity of the addressees of the GIS decision, and all documents that were drawn up wholly in Japanese.

15    On 16 June 2008, the Commission rejected that request and adopted the contested decision.

16    At point 2 of that decision, the Commission classified the documents in the file in question according to the following five categories:

(1)    documents provided in connection with an immunity or leniency application, namely statements from the undertakings in question and all documents submitted by them in connection with the immunity or leniency application ('category 1');

(2)    requests for information and the parties' replies to those requests ('category 2');

(3)    documents obtained during inspections, namely documents seized during on-the-spot inspections at the premises of the undertakings concerned ('category 3');

(4)    the statement of objections and the parties' replies thereto ('category 4');

(5)    internal documents:

(a)    documents relating to the facts, that is, (i) background notes on the conclusions to be drawn from the evidence gathered, (ii) correspondence with other competition authorities, and (iii) consultation of other Commission departments that were involved in the case ('category 5(a)');

(b)    procedural documents, that is, inspection warrants, inspection reports, lists of documents obtained in the course of inspections, documents concerning the service of certain documents and file notes ('category 5(b)').

17    At point 3 of the contested decision, the Commission explained that each of the categories fell within the exception provided for in the third indent of Article 4(2) of Regulation No 1049/2001 and that the documents in category 5(a) also fell within the exception laid down in Article 4(3) of that regulation.

18    At point 4 of the contested decision, the Commission went on to explain that the documents in categories 1 to 4 fell within the exception provided for in the first indent of Article 4(2) of Regulation No 1049/2001.

19    At point 5 of that decision, the Commission stated that it could see nothing that indicated that there was an overriding public interest in disclosure of the documents requested, for the purposes of Article 4(2) of Regulation No 1049/2001.

20    Finally, at point 6 of the contested decision, the Commission gave as its reason for refusing to grant partial access to the case-file the fact that all the documents contained in the file were fully covered by the exceptions listed in Regulation No 1049/2001.

### The procedure before the General Court and the judgment under appeal

21    By application lodged at the Registry of the General Court on 25 August 2008, EnBW brought an action for the annulment of the contested decision. The Kingdom of Sweden intervened in support of that action, while the Commission was supported by Siemens and ABB.

22    In support of its action, EnBW relied on four pleas in law. The first plea alleged infringement of the first and third indents of Article 4(2) and of the second subparagraph of Article 4(3) of Regulation No 1049/2001 and the fourth plea alleged a manifest error of assessment with regard to the scope of the request for access to documents.

23    The General Court examined the fourth plea first of all, at paragraphs 32 to 37 of the judgment under appeal. It upheld that plea, on the ground that the Commission made a manifest error of assessment in interpreting EnBW's request for access to documents as not encompassing the category 5(b) documents in the file. The General Court therefore found, at paragraphs 37 and 171 of the judgment under appeal, that it was necessary to annul the contested decision in so far as it refused to grant access to those documents.

24    The General Court then went on to examine the first plea in law. As a preliminary matter, it considered in that connection whether the conditions which must be fulfilled to enable the Commission to dispense with a specific, individual examination of the documents in the contested decision were met in the present case.

25    The General Court concluded, at paragraphs 54 to 63 of the judgment under appeal, that the Commission was not entitled to presume, without undertaking a specific analysis of each document, that all the documents requested were clearly covered by the third indent of Article 4 (2) of Regulation No 1049/2001.

26    Moreover, the General Court found, at paragraphs 64 to 110 of the judgment under appeal, that the Commission was entitled to carry out an examination by category only in respect of the category 3 documents, for the purpose of the application of the exception concerning the protection of the purpose of investigations provided for in the third indent of Article 4(2) of Regulation No 1049/2001. The General Court therefore concluded, at paragraphs 111 and 172 of the judgment under appeal, that it was necessary to annul the contested decision in so far as it refused access to the documents falling within categories 1, 2, 4 and 5(a).

27    The General Court went on in the judgment under appeal to examine — for the sake of completeness as regards the documents falling under the categories referred to above — the validity of the exceptions to the right of access relied on in the contested decision, and upheld the three parts of the first plea in law. First, at paragraphs 113 to 130 and 173 of the judgment under appeal, the General Court examined the part of that plea alleging infringement of the third indent of Article 4(2) of Regulation No 1049/2001, relating to investigations. Next, at paragraphs 131 to 150 and 174 of the judgment, it examined the part of that plea alleging

infringement of the first indent of Article 4(2) of that regulation, relating to the commercial interests of the undertakings concerned. Lastly, the court examined, at paragraphs 151 to 170 and 175 of the judgment, the part of the first plea alleging infringement of the second indent of Article 4(3) of the regulation, relating to opinions within the meaning of that provision.

28    It was in those circumstances, without examining the other pleas relied on, that the General Court annulled the contested decision in its entirety.

### Procedure before the Court of Justice and the forms of order sought by the parties

29    By order of the President of the Court of 19 February 2013, the applications for leave to intervene submitted by HUK-Coburg Haftpflicht-Unterstützungs-Kasse kraftfahrender Beamter Deutschlands a. G., LVM Landwirtschaftlicher Versicherungsverein Münster a. G., VHV Allgemeine Versicherung AG and Württembergischen Gemeinde-Versicherung a. G. in support of the form of order sought by EnBW were rejected, on the ground that those companies did not have an interest in the outcome of the dispute.

30    By its appeal, the Commission claims that the Court should:

–    set aside the judgment under appeal in so far as, by that judgment, the General Court annulled the contested decision;

–    dismiss the application for annulment brought before the General Court by EnBW and give a final ruling on the questions which form the subject-matter of the present appeal, and

–    order EnBW to pay the costs incurred by the Commission in respect of both the proceedings at first instance and the present appeal.

31    EnBW contends that the Court should dismiss the appeal and order the Commission to pay the costs.

32    Siemens and ABB support the form of order sought by the Commission. The Kingdom of Sweden supports the form of order sought by EnBW.

### The appeal

33    The Commission relies on five grounds of appeal. Those grounds allege: (i) failure to have regard to the need for a harmonious interpretation of Regulation No 1049/2001 in order to ensure that legislative provisions relating to other areas remain fully effective; (ii) an error of law in the examination of the existence of a general presumption applicable to all documents in the file relating to concerted practices proceedings; (iii) infringement of the third indent of Article 4(2) of Regulation No 1049/2001, concerning the exception relating to the protection of the purpose of investigations; (iv) infringement of the first indent of Article 4(2) of that regulation, concerning the exception relating to the protection of commercial interests and; (v) infringement of the second subparagraph of Article 4(3) of the regulation, concerning the exception relating to the protection of the Commission's decision-making process.

34    Those grounds of appeal must be examined together.

*Arguments of the parties*

First ground of appeal

35    The Commission, supported on this point by ABB and Siemens, submits that the judgment under appeal disregarded the need to interpret harmoniously Regulation No 1049/2001 and Regulations Nos 1/2003 and 773/2004, concerning concerted practices. The General Court was mindful only of the principle that exceptions to the right of access to documents must be interpreted strictly, thus giving Regulation No 1049/2001 precedence over those other regulations.

36    The Commission claims that it is essential to protect both its task of implementing the law on concerted practices and the undertakings involved in proceedings related to such practices. The requirement to protect confidential information may be disregarded only where there is an overriding interest in the disclosure of documents containing such information, such as respect for the rights of defence enjoyed by the undertakings concerned. If broad access were given to the file, that would entail a risk that the rules governing access applicable to concerted practice cases would be circumvented and undertakings would be liable to limit their cooperation.

37    According to the Commission, the General Court's misinterpretation is apparent from the findings in which it places emphasis on the fact that the objective of Regulation No 1049/2001 is to guarantee the widest possible public access to documents. That approach is incorrect, since the provisions of that regulation should be interpreted in such a way as to ensure the full application of the various relevant legislative provisions.

38    EnBW, supported on this point by the Kingdom of Sweden, argues that the General Court was entitled to find that the exceptions to the right of access to documents laid down in Article 4 of Regulation No 1049/2001 must be interpreted and applied strictly. The Commission is attempting to include in that regulation an additional, unwritten rule for determining exceptions. It is thereby aiming to create, using Regulation No 1049/2001 as its basis, an artificial exception for all documents relating to its investigations and thus remove all its competition-related activities from the application of Regulation No 1049/2001.

39    According to EnBW, Case C‑404/10 P *Commission* v *Éditions Odile Jacob* [2013] ECR and Case C‑477/10 P *Commission* v *Agrofert Holding* [2013] ECR cannot be applied to the present case. Mergers are not, as such, prohibited. On the other hand, the procedure followed under Regulation No 1/2003 is directed at undertakings which have acted in breach of Articles 81 EC and 82 EC. The sole purpose of voluntary communication of information to the Commission in connection with a leniency application is, therefore, to enable the undertakings concerned to be exempted from their liability for breach of EU law. No provision of EU law obliges an undertaking which has acted in breach of that law to report such conduct to the Commission and to provide information in order to prove the breach committed.

40    EnBW is of the view that the interpretation advocated by the Commission is incompatible with Article 81 EC. It argues that the full effectiveness of that provision would be compromised if all third parties were denied the possibility of claiming compensation for the damage caused by conduct capable of restricting competition. An action for damages would have no chance of success unless the injured person was in a position to establish the nature and extent of the harm suffered.

The second ground of appeal

41    The Commission, supported in this regard by Siemens and ABB, argues that the General Court concluded incorrectly that there is no general presumption that all documents in a file relating to concerted practice proceedings should, in principle, enjoy protection.

42    According to the Commission, the General Court was incorrect to take the view that the findings of the Court of Justice in Case C−139/07 P *Commission* v *Technische Glaswerke Ilmenau* [2010] ECR I−5885 were not applicable to the present case, on the ground that the documents sought in the case giving rise to that judgment related to proceedings that had not yet closed. That is irrelevant for the purpose of defining the scope of the protection afforded under Article 4(2) of Regulation No 1049/2001. Only the nature of the interests protected has any relevance. Moreover, in *Commission* v *Éditions Odile Jacob* and *Commission* v *Agrofert Holding*, the Court of Justice had, in the meantime, applied that general presumption to the field relating to the control of concentrations. The rules governing access to the file in cartel law are virtually the same as those applicable to the control of concentrations.

43    The Commission is of the view that the General Court was incorrect to consider that the requirement for a case-by-case assessment resulting from the restrictions applicable to undertakings or complainants involved in the proceedings rules out any general presumption. In both matters concerning the review of State aid and in the field of competition law, third parties who are not involved cannot, in any event, claim any entitlement to access to documents in the file relating to concerted practices proceedings.

44    EnBW considers that *Commission* v *Technische Glaswerke Ilmenau* is not applicable to the present case. In the case which gave rise to that judgment, the State aid proceedings in question had not yet been closed by a final Commission decision, whereas in the present case, by adopting the decision establishing the infringement, the Commission made such a final decision. Moreover, the State aid proceedings were brought against a Member State, not an undertaking. Lastly, the general presumption alluded to by the Court of Justice is not applicable to the present case either because the identification of the documents according to category carried out by the Commission did not, for the most part, perform any useful function for the purpose of the adoption of the contested decision.

45    The Kingdom of Sweden states that, while the Commission bases its decision on general presumptions, it is nevertheless required to verify, in each case, whether general considerations normally applicable to a particular kind of document are in fact applicable to a specific document which it has been asked to disclose. It would in fact be impossible for the applicant, who has no knowledge of the content of the documents concerned, to show that disclosure of the document was liable to harm a legitimate interest.

The third ground of appeal

46    The Commission, supported on this point by Siemens and ABB, maintains that the General Court misinterpreted the scope of the protection afforded by the third indent of Article 4(2) of Regulation No 1049/2001 by failing to have regard to the fact that the purpose of investigations is not only to complete each investigation procedure but also to apply competition law effectively. The General Court also failed to have regard to the fact that it is necessary to interpret the provisions laying down exceptions in that regulation in the light of the special legislative provisions in other areas.

47    The Commission also contends that the General Court failed to have regard to the fact that the documents provided in connection with a request for leniency must have special protection, even after all proceedings have concluded. In particular, the fact that undertakings fear public

disclosure of such documents is liable to make them less minded to cooperate with the Commission. Irrespective of the contribution made by private actions for damages to the enforcement of competition law, such a contribution cannot justify or counteract the threat to the public interest. Any useful purpose such actions might serve is also dependent on the Commission's ability to unearth infringements of the rules on competition.

48    In the alternative, the Commission also claims that the General Court failed to have regard to the need to protect documents even when its decision has become final. Where a decision is annulled by the General Court on grounds of procedural defects, the Commission may reopen the procedure and come to a final decision on the basis of the file.

49    EnBW submits, first, that the Commission does not have any margin of discretion in deciding whether and to what extent requests for access to documents provided by those seeking leniency might undermine the full effectiveness of the leniency programme.

50    EnBW goes on to submit that the Commission has failed to put forward any evidence to support or prove its claims relating to the fears it alludes to as regards the risk that undertakings will be deterred from cooperating with it. In reality, each applicant for leniency will weigh up the actual risk, when it decides to submit a leniency request, of having to defend an action brought by its victims in response to the disclosures made by it. In view of the upper limit of fines that may be imposed by the Commission, the incentive for self-incrimination is so great that it will not be affected significantly by the possibility that victims might gain access to the file.

51    Lastly, EnBW claims that the annulment of a decision imposing a fine for breach of Article 81 EC does not, as a general rule, lead to new proceedings, since the EU judicature has the power to cancel, reduce or increase the amount of the fine imposed.

The fourth ground of appeal

52    The Commission, supported by ABB and Siemens on this point, submits that the General Court was incorrect to conclude that the Commission had failed to establish to the requisite legal standard the extent to which access to the documents requested would be likely to affect the commercial interests of the undertakings which took part in the cartel. The General Court failed to have regard to the fact that the provision providing for an exception relating to the protection of commercial interests and that relating to the protection of the purpose of investigations are closely linked, so that the general assumption applies equally to the first and third indents of Article 4(2) of Regulation No 1049/2001.

53    According to the Commission, the term 'commercial interest' must be construed having regard to the specific provisions of cartel law, that is to say more broadly than it was construed by the General Court. Account must be taken of the fact that the documents provided contain information on the commercial activities of the undertakings concerned, to which those undertakings would not have granted access in that form outside cartel proceedings. Account must also be taken of the fact that if access were granted to documents under Regulation No 1049/2001, that would enable even third parties not involved in the cartel to consult the documents — access which would have been denied during the administrative procedure to all the undertakings which participated in the cartel.

54    The Commission is also of the view that the General Court erred in requiring a specific examination to be carried out for the purpose of establishing the extent to which the information

in question remained confidential. The fact that undertakings are obliged to communicate to it any commercial information that may be sensitive is sufficient.

55    EnBW contends that undertakings seeking to avail themselves of the leniency programme communicate incriminating sensitive information voluntarily. In that context, the General Court was correct to find that the interests of the parties concerned in non-disclosure cannot be regarded as commercial interests in the true sense of those words, since the objective of the undertakings is to avoid actions for damages being brought against them before the national courts.

The fifth ground of appeal

56    The Commission, supported by ABB and Siemens on this point, contends that the General Court erred in failing to have regard to the fact that the general presumption extends to all internal documents in the file relating to concerted practices proceedings, irrespective of whether those documents may be classified as 'documents containing opinions' within the meaning of the second subparagraph of Article 4(3) of Regulation No 1049/2001.

57    For the same reason, the Commission argues that, even if it were accepted that it erred in its interpretation of the request submitted to it, that could not justify the annulment of the contested decision in that regard. The category 5(b) documents are internal documents, to which, as such, access cannot be granted, in accordance with the special rules on access, so that, even if those documents were covered by that request, the refusal to grant EnBW access is justified. Therefore, the General Court should have rejected the fourth plea in law raised before it as ineffective.

58    In the alternative, the Commission contends that the General Court failed to establish the precise extent to which its assessment concerning the application of the second subparagraph of Article 4(3) of Regulation No 1049/2001 was incorrect. The General Court was also incorrect to consider that the Commission had failed to establish to the requisite legal standard to what extent the category 5(a) documents contain 'opinions'. Lastly, the General Court erred in taking the view that the disclosure of the documents at issue would not seriously undermine the decision-making process.

59    EnBW submits that the reasoning contained in *Commission* v *Technische Glaswerke Ilmenau* cannot be applied in the present case. The general presumption referred to in that judgment would in fact require the Commission to prove that the conditions to be fulfilled by an exception provided for in Regulation No 1049/2001 are met in relation to a specific category of documents. In the present case, the substantive conditions laid down in the second subparagraph of Article 4 (3) of that regulation are not fulfilled. Moreover, the contested decision does not mention any of the grounds on which it is alleged that all the internal documents in the file at issue contain opinions. Lastly, the Commission has failed to provide any prima facie evidence that disclosure of the documents concerned would seriously undermine that institution's decision-making process in a case involving a decision adopted more than five years ago.

*Findings of the Court*

60    By its grounds of appeal, the Commission claims, in essence, that, in breach of the provisions of Regulations Nos 1/2003 and 773/2004 on access to documents in the file relating to a proceeding under Article 81 EC, the General Court found that it was not entitled, without carrying out a specific, individual analysis of each document in such a file, to take the view that all such documents are covered by a general presumption that those documents fall within the

exceptions to right of access provided for in the first and third indents of Article 4(2) of Regulation No 1049/2001 and the second subparagraph of Article 4(3) of that regulation, which relate, in essence, respectively, to the protection of commercial interests, the purpose of investigations and the Commission's decision-making process.

61    It should be recalled, at the outset, that Article 255(1) and (2) EC provides that any citizen of the Union, and any natural or legal person residing or having its registered office in a Member State, are to have a right of access to the documents of the institutions of the European Union, subject to the principles and conditions defined in accordance with the principles laid down in Article 251 EC. Regulation No 1049/2001 is designed to confer on the public as wide a right of access as possible to documents of the institutions. It is also apparent from that regulation, in particular from Article 4 thereof, which lays down exceptions in that regard, that the right of access is nevertheless subject to certain limits based on reasons of public or private interest (see *Commission* v *Technische Glaswerke Ilmenau*, paragraph 51; Joined Cases C‑514/07 P, C‑528/07 P and C‑532/07 P *Sweden and Others* v *API and Commission* [2010] ECR I‑8533, paragraphs 69 and 70; *Commission* v *Éditions Odile Jacob*, paragraph 111; *Commission* v *Agrofert Holding*, paragraph 53; and Case C‑514/11 *LPN and Finland* v *Commission* [2013] ECR, paragraph 40).

62    In accordance with the exceptions relied on by the Commission, namely those set out in the first and second indents of Article 4(2) of Regulation No 1049/2001 and in the second subparagraph of Article 4(3) of that regulation, unless there is an overriding public interest in disclosure, the institutions are to refuse access to a document, first, where its disclosure would undermine the protection of the commercial interests of a specific natural or legal person or the protection of the purpose of inspections, investigations and audits and, second, where the document contains opinions for internal use as part of deliberations and preliminary consultations within the institution concerned, if disclosure of the document would seriously undermine the institution's decision-making process.

63    It follows that the system of exceptions laid down in Article 4 of that regulation is based on a balancing of the opposing interests in a given situation, that is to say, first, the interests which would be favoured by the disclosure of the documents in question and, secondly, those which would be jeopardised by such disclosure. The decision taken on a request for access to documents depends on which interest must prevail in the particular case (*LPN and Finland* v *Commission*, paragraph 42).

64    In accordance with well-established case-law, in order to justify refusal of access to a document the disclosure of which has been requested, it is not sufficient, in principle, for that document to be covered by an activity mentioned in Article 4(2) and (3) of Regulation No 1049/2001. The institution concerned must also provide explanations as to how access to that document could specifically and actually undermine the interest protected by an exception laid down in that article (see, to that effect, Joined Cases C‑39/05 P and C‑52/05 P *Sweden and Turco* v *Council* [2008] ECR I‑4723, paragraph 49; *Commission* v *Technische Glaswerke Ilmenau*, paragraph 53; *Commission* v *Éditions Odile Jacob*, paragraph 116; *Commission* v *Agrofert Holding*, paragraph 57; and *LPN and Finland* v *Commission*, paragraph 44).

65    However, the Court has acknowledged that it is open to the EU institution concerned to base its decisions in that regard on general presumptions which apply to certain categories of documents, as considerations of a generally similar kind are likely to apply to requests for disclosure relating to documents of the same nature (see, inter alia, *Sweden and Turco* v *Council*, paragraph 50; *Commission* v *Technische Glaswerke Ilmenau*, paragraph 54;

*Commission* v *Éditions Odile Jacob*, paragraph 116; *Commission* v *Agrofert Holding*, paragraph 57; Case C‒280/11 P *Council* v *Access Info Europe* [2013], paragraph 72; and *LPN and Finland* v *Commission*, paragraph 45).

66    Accordingly, the Court has already acknowledged the existence of such presumptions in four particular cases, namely with regard to the documents in the administrative file relating to a procedure for reviewing State aid (see *Commission* v *Technische Glaswerke Ilmenau*, paragraph 61), the documents exchanged between the Commission and notifying parties or third parties in the course of merger control proceedings (see *Commission* v *Éditions Odile Jacob*, paragraph 123, and *Commission* v *Agrofert Holding*, paragraph 64), the pleading lodged by one of the institutions in court proceedings (see *Sweden and Others* v *API and Commission*, paragraph 94) and the documents concerning an infringement procedure during its pre-litigation stage (see *LPN and Finland* v *Commission*, paragraph 65).

67    All those cases are characterised by the fact that the request for access in question covered not just one document but a set of documents (see *LPN and Finland* v *Commission*, paragraph 47 and the case-law cited).

68    In that type of situation, the recognition that there is a general presumption that the disclosure of documents of a certain nature will, in principle, undermine the protection of one of the interests listed in Article 4 of Regulation No 1049/2001 enables the institution concerned to deal with a global application and to reply thereto accordingly (*LPN and Finland* v *Commission*, paragraph 48).

69    The present case entails that type of situation. As is apparent from paragraphs 13 and 14 above, EnBW requested disclosure of a set of documents, identified globally, in the file relating to the proceeding which led to the adoption of the GIS decision.

70    Furthermore, it is common ground in the present case that, at the date on which EnBW requested the Commission to grant access to a set of documents in its file relating to that proceeding, proceedings for annulment of the GIS decision were pending before the General Court and, as that court indicated at paragraph 118 of the judgment under appeal, that was still the case when the contested decision was adopted.

71    It is in the light of those preliminary considerations that it is necessary to examine whether, in the judgment under appeal, the General Court erred in law in its interpretation and application of the exceptions to the right of access to documents provided in the first and third indents of Article 4(2) of Regulation No 1049/2001 and in the second subparagraph of Article 4(3) of that regulation, by ruling that there was no general presumption, such as that referred to at paragraphs 65 and 66 above, in so far as concerns a request for access to all the documents in the file in question, relating to a procedure under Article 81 EC.

  The exceptions to the right of access to documents provided for in the first and third indents of Article 4(2) of Regulation No 1049/2001

    –    The judgment under appeal

72    After indicating, inter alia at paragraph 41 of the judgment under appeal, that the exceptions to the right of access to documents laid down in Article 4 of Regulation No 1049/2001, in so far as they derogate from the principle that there should be as wide a right of public access to documents as possible, must be interpreted and applied strictly, the General Court concluded, at paragraphs 62 and 172 of that judgment, that the Commission was not entitled to presume,

without undertaking a specific, individual analysis of each document, that all the documents requested by EnBW were covered by the exception laid down in the third indent of Article 4(2) of Regulation No 1049/2001, which relates to the protection of investigations.

73    In that regard, the General Court stated, at paragraph 56 of the judgment under appeal, that it was not possible in the present case to rely on reasoning similar to that followed in *Commission* v *Technische Glaswerke Ilmenau*, in which it was held, in relation to a request for access to a file in a State aid procedure, that a general presumption that all the documents requested were covered by an exception could arise, in particular, from Council Regulation (EC) No 659/1999 of 22 March 1999 laying down detailed rules for the application of Article [88 EC] (OJ 1999 L 83, p. 1).

74    In the first place, the General Court stated, at paragraph 57 of the judgment under appeal, that the access system specific to a particular procedure, whether in the matter of State aid or cartels, is applicable only while the procedure in question is in progress, and that there is no need to take account of whether the decision in question might subsequently be annulled by the European Union judicature, which rules out its application in the present case, as the GIS decision concluded the procedure.

75    For that reason, while acknowledging, at paragraphs 78, 92, 109 and 172 of the judgment under appeal, that the Commission was entitled, in principle, to carry out an examination by category of the category 3 documents in the file, namely those obtained during inspections, in the light of the third indent of Article 4(2) of Regulation No 1049/2001, the General Court went on to find, at paragraphs 113 to 130 and 173 of that judgment, that that exception did not apply in the present case to all the documents in the file in question.

76    In the second place, the General Court found, at paragraphs 58 to 62 of the judgment under appeal, that no general presumption that documents are not to be disclosed arose from Regulation No 1/2003 or Regulation No 773/2004, as those regulations impose certain restrictions on the right of undertakings subject to a procedure under Article 81 EC and of complainants to consult certain documents in the Commission's file, and those restrictions themselves need to be assessed on a case-by-case basis.

77    It is also apparent from paragraphs 113 to 150 and 174 of the judgment under appeal that the General Court considered that such a presumption did not apply to documents covered by the exception provided for in the first indent of Article 4(2) of Regulation No 1049/2001, concerning the protection of commercial interests. As is clear from paragraphs 142 and 149 of that judgment, the General Court criticised the Commission, in essence, for confining itself, in spite of the fact that most of the commercially sensitive information in the file dated from a long time ago, to general assessments covering all the documents in that file within categories 1 to 4, without carrying out a specific, individual examination of those documents to demonstrate how their disclosure would undermine the protection of the commercial interests of the persons concerned.

       –    Whether there is a general presumption that the documents concerned are not to be disclosed

78    It is common ground in the present case, as is apparent from paragraphs 115 and 136 of the judgment under appeal, that the documents in the file relating to the procedure under Article 81 EC at issue relate to an investigation within the meaning of the third indent of Article 4(2) of Regulation No 1049/2001 and that they may contain commercially sensitive information for the purpose of the first indent of Article 4(2) of that regulation.

79    Having regard to the objective of a proceeding under Article 81 EC, which is to ascertain whether or not an agreement between undertakings is compatible with the common market, the Commission is likely to gather, in the context of such a proceeding, commercially sensitive information concerning, inter alia, the commercial strategies of the undertakings concerned, their sales figures, their market shares or their business relations, so that disclosure of documents relating to such a proceeding may undermine the protection of the commercial interests of those undertakings. Accordingly, the exceptions relating to the protection of commercial interests and the protection of the purpose of investigations are, in such a procedure, closely connected (see, by analogy, *Commission* v *Editions Odile Jacob*, paragraph 115, and *Commission* v *Agrofert Holding*, paragraph 56).

80    The Court has already held, when it acknowledged the existence of the general presumption referred to at paragraphs 65 and 66 above in relation to requests for disclosure of documents in a file relating to a procedure for reviewing State aid or a file concerning merger control proceedings, that the Commission is entitled to presume that disclosure of such documents will, in principle, undermine the protection of the commercial interests of the undertakings involved in those proceedings as well as the protection of the purpose of investigations relating to such proceedings within the meaning of the first and third indents of Article 4(2) of Regulation No 1049/2001 (see *Commission* v *Technische Glaswerke Ilmenau*, paragraph 61; *Commission* v *Éditions Odile Jacob*, paragraph 123; and *Commission* v *Agrofert Holding*, paragraph 64).

81    Contrary to the General Court's findings at paragraph 57 of the judgment under appeal, a similar general presumption applies to a request for access to a set of documents in a file relating to a proceeding under Article 81 EC.

82    It is true, as observed at paragraph 61 above and as stated by the General Court, inter alia at paragraph 41 of the judgment under appeal, that Regulation No 1049/2001 is designed to confer on the public as wide a right of access as possible to documents of the institutions concerned.

83    However, the exceptions to the right of access to documents set out, in particular, in Article 4 of Regulation No 1049/2001, cannot, where, as in the present case, the documents covered by the request for disclosure fall within a particular area of EU law — in the present case, a proceeding under Article 81 EC — be interpreted without taking account of the specific rules governing access to those documents, which are laid down in this instance by Regulations Nos 1/2003 and 773/2004. Those two regulations pursue different objectives from those pursued by Regulation No 1049/2001, since they are designed to ensure that the rights of defence of the parties concerned are respected and complaints dealt with diligently, while at the same time ensuring compliance with the duty of professional secrecy in proceedings under Article 81 EC, and not to facilitate as far as possible the exercise of the right of access to documents or to promote good administrative practice by guaranteeing the greatest possible transparency in the decision-making process of public authorities and the information on which they base their decisions (see, by analogy, *Commission* v *Éditions Odile Jacob*, paragraph 109, and *Commission* v *Agrofert Holding*, paragraph 51).

84    Since those regulations do not contain a provision expressly giving one regulation primacy over the other, it is necessary to ensure that each of the regulations is applied in a manner which is compatible with the other and enables them to be applied consistently (see, by analogy, Case C-28/08 P *Commission* v *Bavarian Lager* [2010] ECR I-6055, paragraph 56; *Commission* v *Éditions Odile Jacob*, paragraph 110; and *Commission* v *Agrofert Holding*, paragraph 52).

85    First, in accordance with the case-law cited at paragraph 61 above, while Regulation No 1049/2001 is designed to confer on the public as wide a right of access as possible to

documents of the institutions, that right is none the less subject to certain limits based on reasons of public or private interest.

86    Second, Articles 27(2) and 28 of Regulation No 1/2003 and Articles 6, 8, 15 and 16 of Regulation No 773/2004 lay down restrictive rules for the use of documents in the file relating to a proceeding under Article 81 EC by confining access to the file to the 'parties concerned' and to 'complainants' whose complaints the Commission intends to reject, subject to the protection of the business secrets and other confidential information of undertakings and internal documents of the Commission and the competition authorities of the Member States, and provided that the documents made available are used only for the purposes of judicial or administrative proceedings for the application of Article 81 EC.

87    It follows that the parties to a proceeding under Article 81 EC do not enjoy unlimited right of access to the documents in the Commission's file and that third parties, with the exception of complainants, do not, under such a proceeding, have any right of access to the documents in the Commission's file (see, by analogy, *Commission* v *Technische Glaswerke Ilmenau*, paragraph 58).

88    Those considerations must be taken into account in interpreting the first and third indents of Article 4(2) of Regulation No 1049/2001 and the second subparagraph of Article 4(3) of that regulation. If persons other than those with a right of access under Regulations Nos 1/2003 and 773/2004, or those who enjoy such a right in principle but have not used it or have been refused access, were able to obtain access to documents on the basis of Regulation No 1049/2001, the access system introduced by Regulations Nos 1/2003 and 773/2004 would be undermined (see, by analogy, *Commission* v *Technische Glaswerke Ilmenau*, paragraph 58; *Sweden and Others* v *API and Commission*, paragraph 100; *Commission* v *Éditions Odile Jacob*, paragraph 122; *Commission* v *Agrofert Holding*, paragraph 63; and *LPN and Finland* v *Commission*, paragraph 58).

89    It is true that the right to consult the file in a proceeding under Article 81 EC and the right of access to documents pursuant to Regulation No 1049/2001 are legally distinct. However, the fact remains that they lead to a comparable situation from a functional point of view. Whatever the legal basis on which it is granted, access to the file enables the interested parties to obtain the observations and documents submitted to the Commission by the undertakings concerned and by third parties (see, by analogy, *Commission* v *Technische Glaswerke Ilmenau*, paragraph 59; *Commission* v *Éditions Odile Jacob*, paragraph 120; and *Commission* v *Agrofert Holding*, paragraph 61).

90    In those circumstances, generalised access, on the basis of Regulation No 1049/2001, to the documents in a file relating to a proceeding under Article 81 EC would jeopardise the balance which the EU legislature sought to ensure in Regulations Nos 1/2003 and 773/2004 between the obligation on the undertakings concerned to submit to the Commission possibly sensitive commercial information to enable it to ascertain whether a concerted practice was in existence and to determine whether that practice was compatible with Article 81 EC, on the one hand, and the guarantee of increased protection, by virtue of the requirement of professional secrecy and business secrecy, for the information so provided to the Commission, on the other (see, by analogy, *Commission* v *Éditions Odile Jacob*, paragraph 121, and *Commission* v *Agrofert Holding*, paragraph 62).

91    It should be noted in that regard that, in accordance with the Court's case-law, the administrative activity of the Commission does not require such extensive access to documents as that required by the legislative activity of an EU institution (see, to that effect, *Commission* v

*Technische Glaswerke Ilmenau*, paragraph 60; *Sweden and Others* v *API and Commission*, paragraph 77; and Case C‑506/08 P *Sweden* v *My Travel and Commission* [2011] ECR I‑6237, paragraph 87).

92    It follows that, in so far as concerns proceedings under Article 81 EC, a general presumption such as that referred to at paragraphs 65, 66 and 80 above may arise from the provisions of Regulations Nos 1/2003 and 773/2004 which specifically govern the right of access to documents in the Commission's files relating to such proceedings (see, by analogy, *Commission* v *Technische Glaswerke Ilmenau*, paragraphs 55 to 57; *Commission* v *Éditions Odile Jacob*, paragraph 117; and *Commission* v *Agrofert Holding*, paragraph 58).

93    In the light of the foregoing, it must be found that, for the purposes of the application of the exceptions provided for in the first and third indents of Article 4(2) of Regulation No 1049/2001, the Commission is entitled to presume, without carrying out a specific, individual examination of each of the documents in a file relating to a proceeding under Article 81 EC, that disclosure of such documents will, in principle, undermine the protection of the commercial interests of the undertakings involved in such a proceeding and the protection of the purpose of the investigations relating to the proceeding (see, by analogy, *Commission* v *Technische Glaswerke Ilmenau,* paragraph 61; *Commission* v *Éditions Odile Jacob*, paragraph 123; *Commission* v *Agrofert Holding*, paragraph 64; and *LPN and Finland* v *Commission*, paragraph 64).

94    It follows, in the present case, that after stating, correctly, at paragraphs 59 to 61 of the judgment under appeal, that Regulations Nos 1/2003 and 773/2004 subject the right of access to documents in the file relating to a proceeding under Article 81 EC to certain restrictive conditions and do not provide a right of access to the file for third parties other than complainants, the General Court erred in law by concluding, at paragraphs 61, 62, 142 and 149 of that judgment, that the Commission was not entitled to presume that all the documents concerned were covered by the exceptions provided for in the first and third indents of Article 4 (2) of Regulation No 1049/2001.

95    Contrary to the finding of the General Court at paragraph 61 of the judgment under appeal, it is irrelevant in that regard that the restrictions on the right of access laid down by Regulations Nos 1/2003 and 773/2004 themselves require an assessment to be carried out on a case-by-case basis. On the other hand, what is decisive, as the Court has already held, is that those regulations lay down strict rules regarding the treatment of information obtained or established in the context of a proceeding under Article 81 EC (*Commission* v *Éditions Odile Jacob*, paragraph 118, and *Commission* v *Agrofert Holding*, paragraph 59).

96    In any event, it is clear that in a case, such as the present, involving a request for access to documents made by a third party who does not have the status of complainant, those regulations do not grant any right of access, so that there is no need for such a case-by-case assessment.

97    Contrary to EnBW's contentions, it is also irrelevant in that regard that certain documents were provided to the Commission voluntarily by the parties concerned with a view to obtaining immunity or a reduction in the amount of the fines imposed, since it is common ground that disclosure of such documents, regardless of whether they were provided to that institution on a voluntary basis or under compulsion, is in any event strictly governed by Regulations Nos 1/2003 and 773/2004.

98    In those circumstances, having established, at paragraph 118 of the judgment under appeal, that at the date on which the contested decision was adopted, legal proceedings were pending against

the GIS decision, the General Court went on to err in law, at paragraph 122 of that judgment, by finding that disclosure of the documents requested was not likely to undermine the protection of the investigations relating to the proceeding under Article 81 EC in question.

99    Contrary to the General Court's finding at paragraph 119 of the judgment under appeal, a proceeding under Article 81 EC cannot be regarded as closed once the Commission's final decision has been adopted irrespective of any possible future judgment by the EU judicature annulling that decision. Indeed, under Article 233 EC, the annulment of such a decision may lead the Commission to resume its investigations with a view to adopting, if appropriate, a new decision on the application of Article 81 EC, which was, moreover, the case here with regard to two of the parties concerned, as the Commission indicated at the hearing, and may therefore lead that institution to reuse information in the file relating to the annulled decision or to supplement the file with other information in the exercise of the powers conferred on it by Regulation No 1/2003. Consequently, investigations relating to a proceeding under Article 81 EC may be regarded as completed only when the decision adopted by the Commission in connection with that proceeding is final.

–    Whether it is possible to rebut the general presumption that the documents concerned are not to be disclosed

100   It should, however, be noted that the general presumption referred to above does not rule out the possibility of demonstrating that a specific document disclosure of which has been requested is not covered by that presumption, or that there is an overriding public interest in disclosure of the document by virtue of Article 4(2) of Regulation No 1049/2001 (*Commission* v *Technische Glaswerke Ilmenau*, paragraph 62; *Commission* v *Éditions Odile Jacob*, paragraph 126; *Commission* v *Agrofert Holding*, paragraph 68; and *LPN and Finland* v *Commission*, paragraph 66).

101   However, the requirement to ascertain whether the general presumption in question actually applies cannot be interpreted as meaning that the Commission must examine individually all the documents requested in each individual case. Such a requirement would deprive that general presumption of its proper effect, which is to permit the Commission to reply to a global request for access in a manner equally global (*LPN and Finland* v *Commission*, paragraph 68).

102   In the present case, the judgment under appeal discloses nothing capable of rebutting that presumption.

103   It is true that it may be inferred from that judgment, in particular paragraph 1 thereof, that when it submitted its request for access to the documents at issue, EnBW would appear to have had the intention of seeking compensation for the loss allegedly caused as a result of the cartel which was the subject of the GIS decision.

104   As the General Court correctly observed at paragraph 128 of the judgment under appeal, any person is entitled to claim compensation for the loss caused to him by a breach of Article 81 EC. Such a right strengthens the working of the EU competition rules, thereby making a significant contribution to the maintenance of effective competition in the European Union (see, to that effect, Case C-453/99 *Courage and Crehan* [2001] ECR I-6297, paragraphs 26 and 27; Joined Cases C-295/04 to C-298/04 *Manfredi and Others* [2006] ECR I-6619, paragraph 91; Case C-360/09 *Pfleiderer* [2011] ECR I-5161, paragraph 28; and Case C-536/11 *Donau Chemie and Others* [2013] ECR, paragraph 23).

105   Nevertheless, such general considerations are not, as such, capable of prevailing over the reasons justifying the refusal to disclose the documents in question (see, to that effect, *Sweden and Others* v *API and Commission*, paragraph 158).

106   In order to ensure effective protection of the right to compensation enjoyed by a claimant, there is no need for every document relating to a proceeding under Article 81 EC to be disclosed to that claimant on the ground that that party is intending to bring an action for damages, as it is highly unlikely that the action for damages will need to be based on all the evidence in the file relating to that proceeding (see, to that effect, *Donau Chemie and Others*, paragraph 33).

107   It follows that any person seeking compensation for the loss caused by a breach of Article 81 EC must establish that it is necessary for that person to be granted access to documents in the Commission's file, in order to enable the latter to weigh up, on a case-by-case basis, the respective interests in favour of disclosure of such documents and in favour of the protection of those documents, taking into account all the relevant factors in the case (see, by analogy, *Commission* v *Bavarian Lager*, paragraphs 77 and 78, and *Donau Chemie and Others*, paragraphs 30 and 34).

108   In the absence of any such necessity, the interest in obtaining compensation for the loss suffered as a result of a breach of Article 81 EC cannot constitute an overriding public interest, within the meaning of Article 4(2) of Regulation No 1049/2001 (see, to that effect, *Commission* v *Agrofert Holding*, paragraph 86).

109   It follows from the foregoing considerations that the judgment under appeal is vitiated by errors of law, in particular at paragraphs 56 to 63, 118 to 122, 172 and 174, in so far as the General Court took the view, in the absence of any evidence capable of rebutting the presumption referred to at paragraphs 92 and 93 above, that the Commission was required to carry out a specific, individual examination of each document in the file in question relating to a proceeding under Article 81 EC which had not yet closed, in order to ascertain whether, in view of its specific content, disclosure of the document would undermine the protection of commercial interests and the purpose of investigations within the meaning of the first and third indents of Article 4(2) of Regulation No 1049/2001.

The exception to the right of access to documents, provided for in the second subparagraph of Article 4(3) of Regulation No 1049/2001

110   With regard, first, to the category 5(a) documents in the file relating to the proceeding under Article 81 EC, it should be recalled that the General Court found, at paragraphs 151 to 170 and 175 of the judgment under appeal, that the Commission was not entitled to take the view that disclosure of those documents was likely to seriously undermine its decision-making process within the meaning of the second subparagraph of Article 4(3) of Regulation No 1049/2001.

111   First, while expressing the view, at paragraph 160 of the judgment under appeal, that it was plausible, in the light of the explanations provided by the Commission before it, that many of the documents within that category contained opinions, within the meaning of the provision referred to above, the General Court concluded, at paragraphs 159 and 161 of the judgment, that the Commission had failed to establish to the requisite legal standard in the contested decision that all those documents contained such opinions.

112   Second, the General Court stated, at paragraph 162 of the judgment under appeal, that the Commission was required to show that disclosure of those documents was likely specifically and actually to undermine its decision-making process. The General Court went on to state, at

paragraph 166 of that judgment, that the Commission had merely justified in a general and abstract fashion, without taking account of the actual content of those documents, its decision that disclosure of the documents would seriously affect its decision-making process.

113   It is common ground in the present case that, as already observed at paragraph 70 above, both at the time of the request for access to the documents at issue and at the time when the contested decision was adopted, proceedings for annulment of the GIS decision were pending before the General Court.

114   In those circumstances, since, as already noted at paragraph 99 above, the Commission may have been prompted, depending on the outcome of those proceedings, to resume its investigations with a view to the possible adoption of a new decision on the application of Article 81 EC, it is necessary to accept that there is a general presumption that any obligation placed on that institution to disclose, during those proceedings, opinions within the meaning of the second subparagraph of Article 4(3) of Regulation No 1049/2001 would seriously undermine that institution's decision-making process (see, to that effect, *Commission* v *Éditions Odile Jacob*, paragraph 130).

115   As a consequence, since it found that it was 'plausible', in the light of the explanations provided by the Commission before it, that many of the documents fell within category 5(a) in the file in question, it was not possible for the General Court, without erring in law, to criticise the Commission for failing to show specifically how those documents were covered by the exception provided for in the second subparagraph of Article 4(3) of Regulation No 1049/2001.

116   By very reason of the general presumption referred to at paragraph 114 above, the Commission cannot be required to show in its decision that each of the documents concerned constitutes an opinion within the meaning of the provision referred to above. Since the Commission explained in the present case before the General Court in what way the documents in question constituted opinions and that court itself considered that it was plausible that many of those documents could be regarded as opinions, the General Court should have concluded from this that those documents were covered by that general presumption, so that the Commission was not required to show specifically and individually that disclosure of the documents was liable to seriously undermine its decision-making process.

117   Nevertheless, it should be recalled that, in accordance with the case-law cited at paragraph 100 above, the general presumption in question does not exclude the possibility of demonstrating that a specific document disclosure of which has been requested is not covered by that presumption, or that there is an overriding public interest in disclosure of the document by virtue of Article 4(3) of Regulation No 1049/2001.

118   However, the Court finds that the judgment under appeal discloses nothing capable of rebutting that presumption.

119   It is apparent from the foregoing considerations that the General Court erred in law, at paragraphs 159 to 166 of the judgment under appeal, by considering that the Commission was required, in the absence of any evidence capable of rebutting that presumption, to carry out a specific, individual examination of each category 5(a) document in the file in question relating to a proceeding under Article 81 EC which was not closed, in order to ascertain whether, in the light of its specific content, its disclosure would undermine the protection of opinions within the meaning of the second subparagraph of Article 4(3) of Regulation No 1049/2001.

120   With regard, second, to the category 5(b) documents, it should be recalled that the General Court considered, at paragraphs 32 to 37 and 171 of the judgment under appeal, that the Commission committed a manifest error of assessment by taking the view that those documents were not covered by the request for access submitted by EnBW. The General Court concluded from this that it was necessary to annul the contested decision in so far as it refused to grant EnBW access to the documents within that category.

121   In that regard, it should be noted that, since the General Court considered, in its assessment of the facts, which is not subject to appeal and is not disputed in these proceedings, that the Commission was incorrect to consider that the category 5(b) documents in the file in question were not covered by that request for access, the General Court was entitled in law to take the view that the Commission had committed a manifest error of assessment in that respect.

122   However, contrary to the finding of the General Court at paragraphs 37 and 171 of the judgment under appeal, it was not entitled to conclude from this that, by the contested decision, the Commission had refused to disclose such documents. Having found that those documents were covered by that request for access, the General Court was entitled to infer from this only that it was necessary to annul that decision in so far as the Commission had thereby failed to give a decision in respect of that part of the request.

123   If follows from the foregoing considerations that the General Court erred in law in concluding, at paragraphs 37 and 171 of the judgment under appeal, that it was necessary to annul the contested decision in so far as, by that decision, the Commission had refused to disclose the category 5(b) documents in the file in question.

124   In the light of all the foregoing, the present appeal must be upheld and, accordingly, the judgment under appeal set aside in its entirety.


### The action before the General Court

125   In accordance with the second sentence of the first paragraph of Article 61 of the Statute of the Court of Justice of the European Union, if the decision of the General Court is set aside, the Court of Justice may give final judgment in the matter where the state of the proceedings so permits. That is the case here.

126   EnBW raised four pleas in law in support of its action, alleging: (i) infringement of the first and third indents of Article 4(2) of Regulation No 1049/2001 and the second subparagraph of Article 4(3) of that regulation, concerning the protection of commercial interests, the purpose of investigations and opinions for internal use; (ii) infringement of the last limb of Article 4(2) of that regulation, concerning the existence of an overriding public interest in disclosure; (iii) infringement of Article 4(6) of that regulation, concerning partial access to documents; and (iv) a manifest error of assessment as to the scope of the request for disclosure. Moreover, the Kingdom of Sweden put forward a plea alleging failure to carry out a specific, individual examination of the documents in question.

127   With regard to the plea raised by the Kingdom of Sweden and the first and second pleas, it is apparent from paragraphs 60 to 124 above that the Commission was entitled in the present case, pursuant to the first and third indents of Article 4(2) of Regulation No 1049/2001 and the second subparagraph of Article 4(3) of that regulation, to refuse access to all the documents in the file relating to the proceeding under Article 81 EC in question without first carrying out a specific, individual examination of those documents.

128   In the absence of any evidence in the action capable of rebutting the general presumptions referred to at paragraphs 92, 93 and 114 of the present judgment, EnBW cannot claim that the Commission ought to have carried out a specific, individual examination of the documents at issue.

129   First, in its action before the General Court, EnBW made no attempt to show that certain individual documents disclosure of which was sought were not covered by that presumption but simply criticised the Commission, in essence, for refusing access to a set of documents in its file, on the basis of general and abstract considerations and suppositions, on the ground that, as the purpose of Regulation No 1049/2001 is to give the fullest possible effect to the right of public access to documents held by the institutions, the Commission was required to grant it such access, unless it were able to show specifically in what way certain individual documents were covered by the exceptions provided for in Article 4(2) and (3) of that regulation.

130   Second, EnBW has also failed to demonstrate that there is an overriding public interest in disclosure of those documents by virtue of Article 4(2) and (3) of Regulation No 1049/2001.

131   It is true that EnBW has indicated its intention to bring an action before the national courts for compensation for the loss allegedly suffered as a result of the cartel which was the subject of the proceeding under Article 81 EC which led to the adoption of the GIS decision.

132   However, EnBW has failed to show in what way access to all the documents relating to the proceeding in question is necessary for that purpose on the basis that there is an overriding public interest in disclosure of the documents under Article 4(2) and (3) of Regulation No 1049/2001. In particular, EnBW simply stated that it was 'utterly dependent' on disclosure of the documents in the file in question, without showing that such disclosure would have enabled it to obtain the evidence needed to establish its claim for damages as it had no other way of obtaining that evidence (see, to that effect, *Donau Chemie and Others*, paragraphs 32 and 44).

133   The first two pleas relied on by EnBW and the plea put forward by the Kingdom of Sweden must therefore be rejected as unfounded.

134   With regard to the third plea relied on by EnBW, it should be noted that it is apparent from the general presumptions referred to at paragraphs 92, 93 and 114 above that the documents covered by those presumptions fall outside the scope of the obligation to disclose their content, in full or in part (see *Commission* v *Éditions Odile Jacob*, paragraph 133).

135   It follows that the Commission was entitled in the contested decision to give as the reason for its refusal to grant EnBW partial access to the file the fact that all the documents in it were fully covered by the exceptions set out in Regulation No 1049/2001.

136   The third plea must therefore be rejected as unfounded.

137   As regards the fourth plea relied on by EnBW, it is apparent from paragraphs 120 to 122 above that that plea must be upheld and, as a consequence, the contested decision annulled, in so far as, by that decision, the Commission failed to give a decision on EnBW's request to the extent that it sought disclosure of the category 5(b) documents in the file.

138   As is apparent from paragraphs 127 to 136 above, EnBW's action before the General Court must be dismissed as to the remainder.

**Costs**

139   Under Article 184(2) of the Rules of Procedure of the Court of Justice, where the appeal is well founded and the Court itself gives final judgment in the case, the Court is to make a decision as to costs. Article 138(3) of those rules, applicable to appeal proceedings by virtue of Article 184 (1) thereof, provides that where each party succeeds on some and fails on other heads, the parties are to bear their own costs. However, if it appears justified in the circumstances of the case, the Court may order that one party, in addition to bearing its own costs, pay a proportion of the costs of the other party.

140   Article 140(1) of the Rules of Procedure provides that the Member States which have intervened in the proceedings are to bear their own costs. Under Article 140(3) of those rules, the Court may order an intervener other than those referred to in the preceding paragraphs of that provision to bear their own costs.

141   Since the Commission's appeal has been upheld and EnBW's action before the General Court has been partly successful, each party is to bear its own costs, as incurred both at first instance and in this appeal.

142   The Kingdom of Sweden, Siemens and ABB are to bear their own costs.


On those grounds, the Court (Third Chamber) hereby:

1.   **Sets aside the judgment of the General Court of the European Union of 22 May 2012 in Case T−344/08 *EnBW Energie Baden-Württemberg* v *Commission*;**

2.   **Annuls Commission Decision SG.E.3/MV/psi D (2008) 4931 of 16 June 2008 refusing the request made by EnBW Energie Baden-Württemberg AG for access to the case-file in Case COMP/F/38.899 — Gas insulated switchgear, in so far as, by that decision, the European Commission failed to give a decision on EnBW Energie Baden-Württemberg AG's request to the extent that it sought disclosure of the category 5(b) documents in the file;**

3.   **Dismisses the action brought by EnBW Energie Baden-Württemberg AG before the General Court in Case T−344/08 as to the remainder;**

4.   **Orders the European Commission and EnBW Energie Baden-Württemberg AG to bear their own costs;**

5.   **Orders the Kingdom of Sweden, Siemens AG and ABB Ltd to bear their own costs.**

[Signatures]

---

[*](#) Language of the case: German.