# EXHIBIT H

JUDGMENT OF THE COURT (Third Chamber)

28 June 2012 (*)

(Appeals – Access to documents of the institutions – Regulation (EC) No 1049/2001 – Documents relating to merger control proceedings – Regulations (EEC) No 4064/89 and (EC) No 139/2004 – Refusal to grant access – Exceptions relating to the protection of investigations, commercial interests, legal advice and the decision-making process of the institutions – Duty of the institution concerned to carry out a concrete, individual examination of the content of the documents covered by the application for access)

In Case C‑404/10 P,

APPEAL under Article 56 of the Statute of the Court of Justice of the European Union, brought on 10 August 2010,

**European Commission,** represented by B. Smulders, O. Beynet and P. Costa de Oliveira, acting as Agents, with an address for service in Luxembourg,

applicant,

supported by:

**Czech Republic,** represented by M. Smolek and D. Hadroušek, acting as Agents,

**French Republic,** represented by J. Gstalter, acting as Agent,

interveners in the appeal,

the other parties to the proceedings being:

**Éditions Odile Jacob SAS,** established in Paris (France), represented by O. Fréget and L. Eskenazi, avocats,

defendant at first instance,

supported by:

**Kingdom of Denmark,** represented by S. Juul Jørgensen and C. Vang, acting as Agents,

**Kingdom of Sweden,** represented by K. Petkovska, acting as Agent,

interveners in the appeal,

**Lagardère SCA,** established in Paris, represented by A. Winckler, F. de Bure and J.-B. Pinçon, avocats,

intervener at first instance,

THE COURT (Third Chamber),

composed of K. Lenaerts, President of the Chamber, J. Malenovský, R. Silva de Lapuerta, E. Juhász (Rapporteur) and G. Arestis, Judges,

Advocate General: J. Mazák,

Registrar: R. Şereş, Administrator,

having regard to the written procedure and further to the hearing on 8 December 2011,

having decided, after hearing the Advocate General, to proceed to judgment without an Opinion,

gives the following

## Judgment

1    By its appeal, the European Commission seeks to have the judgment of the General Court of the European Union in Case T‑237/05 *Éditions Jacob* v *Commission* [2010] ECR II‑2245 ('the judgment under appeal') set aside in so far as it annuls in part Commission Decision D(2005) 3286 of 7 April 2005 ('the contested decision'), dismissing the application of Éditions Odile Jacob SAS ('Odile Jacob') for access to documents relating to procedure COMP/M.2978 –Lagardère/Natexis/VUP concerning a merger.

2    By its cross-appeal, Odile Jacob seeks to have the judgment under appeal set aside in so far as it dismissed its application for annulment of the contested decision inasmuch as it refuses any access to the advice of the Commission Legal Service referred to in paragraph 1(g) of the judgment under appeal.

3    The present case arises in the same context as Case C‑551/10 P and Joined Cases C‑553/10 P and C‑554/10 P, which concern a procedure concerning a merger seeking to acquire the publishing assets held in Europe by its subsidiary Vivendi Universal Publishing SA ('VUP').

## Legal context

4    Article 4 of Regulation (EC) No 1049/2001 of the European Parliament and of the Council of 30 May 2001 regarding public access to European Parliament, Council and Commission documents (OJ 2001 L 145, p. 43), entitled 'Exceptions', provides:

'…

2.    The institutions shall refuse access to a document where disclosure would undermine the protection of:

–    commercial interests of a natural or legal person, including intellectual property,

–    court proceedings and legal advice,

–    the purpose of inspections, investigations and audits,

unless there is an overriding public interest in disclosure.

3.    Access to a document, drawn up by an institution for internal use or received by an institution, which relates to a matter where the decision has not been taken by the institution, shall be refused if disclosure of the document would seriously undermine the institution's decision-making process, unless there is an overriding public interest in disclosure.

Access to a document containing opinions for internal use as part of deliberations and preliminary consultations within the institution concerned shall be refused even after the decision has been taken if disclosure of the document would seriously undermine the institution's decision-making process,

unless there is an overriding public interest in disclosure.

4.      As regards third-party documents, the institution shall consult the third party with a view to assessing whether an exception in paragraph 1 or 2 is applicable, unless it is clear that the document shall or shall not be disclosed.

...

6.      If only parts of the requested document are covered by any of the exceptions, the remaining parts of the document shall be released.

7.      The exceptions as laid down in paragraphs 1 to 3 shall only apply for the period during which protection is justified on the basis of the content of the document. The exceptions may apply for a maximum period of 30 years. In the case of documents covered by the exceptions relating to privacy or commercial interests and in the case of sensitive documents, the exceptions may, if necessary, continue to apply after this period.'

5      Pursuant to Article 17 of Council Regulation (EEC) No 4064/89 of 21 December 1989 on the control of concentrations between undertakings (OJ 1989 L 395, p. 1 and corrigendum OJ 1990 L 257, p. 13), entitled 'Professional secrecy':

'1.      Information acquired as a result of the application of Articles 11, 12, 13 and 18 shall be used only for the purposes of the relevant request, investigation or hearing.

2.      Without prejudice to Articles 4(3), 18 and 20, the Commission and the competent authorities of the Member States, their officials and other servants shall not disclose information they have acquired through the application of this Regulation of the kind covered by the obligation of professional secrecy.

...'

6      Article 18(3) of that regulation provides:

'The Commission shall base its decision only on objections on which the parties have been able to submit their observations. The rights of the defence shall be fully respected in the proceedings. Access to the file shall be open at least to the parties directly involved, subject to the legitimate interest of undertakings in the protection of their business secrets.'

7      Article 13(3) of Commission Regulation (EC) No 447/98 of 1 March 1998 on the notifications, time limits and hearings provided for in Council Regulation (EEC) No 4064/89 on the control of concentrations between undertakings (OJ 1998 L 61, p. 1) states:

'After having addressed its objections to the notifying parties, the Commission shall, upon request, give them access to the file for the purpose of enabling them to exercise their rights of defence.

The Commission shall, upon request, also give the other involved parties who have been informed of the objections access to the file in so far as this is necessary for the purposes of preparing their observations.'

8      Article 17(1) of Regulation No 447/98 provides:

'Information, including documents, shall not be communicated or made accessible in so far as it contains business secrets of any person or undertaking, including the notifying parties, other involved parties or third parties, or other confidential information the disclosure of which is not considered necessary by the Commission for the purpose of the procedure, or where internal documents of the authorities are concerned.'

9      Article 17 of Council Regulation (EC) No 139/2004 of 20 January 2004 on the control of concentrations between undertakings (the EC Merger Regulation) (OJ 2004 L 24, p. 1), entitled

'Professional secrecy', provides in paragraphs 1 and 2 thereof:

'1.      Information acquired as a result of the application of this Regulation shall be used only for the purposes of the relevant request, investigation or hearing.

2.      Without prejudice to Article 4(3), Articles 18 and 20, the Commission and the competent authorities of the Member States, their officials and other servants and other persons working under the supervision of these authorities as well as officials and civil servants of other authorities of the Member States shall not disclose information they have acquired through the application of this Regulation of the kind covered by the obligation of professional secrecy.'


## Background to the dispute

10      The requests for access to certain documents made by Odile Jacob are detailed as followed in the judgment under appeal:

'1      By letter of 27 January 2005, [Odile Jacob] asked the Commission ..., pursuant to Regulation ... No 1049/2001 ..., for access to a number of documents relating to the administrative procedure ("the procedure at issue") which led to the adoption of Commission Decision 2004/422/EC of 7 January 2004 declaring a concentration compatible with the common market and the functioning of the EEA Agreement (Case COMP/M.2978 – Lagardère/Natexis/VUP) (OJ 2004 L 125, p. 54; "the decision on compatibility"), so that it might use them in support of its action in Case T 279/04 *Éditions Odile Jacob* v *Commission*, pending before the Court, in which it seeks the annulment of the decision on compatibility. The documents in question were:

(a)      the Commission's decision of 5 June 2003 to initiate an in-depth investigation under Article 6(1)(c) of Council Regulation ... No 4064/89 ... in the procedure at issue;

(b)      the full text of the sale and purchase agreement signed on 3 December 2002 by Natexis Banques populaires SA, of the one part, and Segex Sarl and Ecrinvest 4 SA, of the other part;

(c)      all the correspondence between the Commission and Natexis Banques populaires between September 2002 and the date of notification of the concentration, 14 April 2003;

(d)      all the correspondence between the Commission and Lagardère SCA [("Lagardère")] between September 2002 and the date of the said notification;

(e)      the contract under which Natexis Banques populaires acquired ownership of the shareholdings and assets of [VUP] from Vivendi Universal SA on 20 December 2002;

(f)      Lagardère's promise of 22 October 2002 to purchase VUP from Vivendi Universal;

(g)      all the Commission's internal memoranda relating, exclusively or otherwise, to the application of Article 3(5)(a) of Regulation No 4064/89 to the acquisition of VUP's assets by Natexis SA/Investima 10 SAS, including memoranda exchanged between the Commission's Directorate-General (DG) for Competition and its Legal Service;

(h)      all the correspondence between the Commission and Natexis relating, exclusively or otherwise, to the application of Article 3(5)(a) of Regulation No 4064/89 to the acquisition of VUP's assets by Natexis/Investima 10.

2      By letter of 27 January 2005, [Odile Jacob] sent the Commission a request for access to another set of documents, so that it might use them in support of its action in Case T 452/04 *Éditions Odile Jacob* v *Commission*, pending before the Court, in which it seeks the annulment of the Commission's decision of 30 July 2004 on the approval of Wendel Investissement SA as purchaser

of the assets sold by Lagardère, in accordance with the decision on compatibility ("the approval decision"). The documents in question were:

(a)      the Commission's decision approving the appointment of the trustee charged with ensuring the observance of the commitments entered into by Lagardère at the time when the concentration was authorised by the decision on compatibility;

(b)      the mandate conferred by Lagardère upon Salustro Reydel Management SA to ensure the observance of the commitments entered into by Lagardère at the time when the concentration was authorised by the decision on compatibility;

(c)      any requests by the Commission for amendment of the draft mandate and Lagardère's replies thereto;

(d)      the mandate conferred by Lagardère upon the Hold Separate Manager, responsible for the management of the assets in accordance with the decision on compatibility;

(e)      the Commission's decision approving the appointment of the Hold Separate Manager;

(f)      the draft agreement signed on 28 May 2004 by Lagardère and Wendel Investissement on the repurchase of the transferred assets;

(g)      Lagardère's letter to the Commission of 4 June 2004 seeking approval of Wendel Investissement as the repurchaser of the transferred assets;

(h)      the request for information that the Commission sent to Lagardère on 11 June 2004 pursuant to Article 11 of Regulation No 4064/89, designed to enable the Commission to assess whether the conditions for approving the company Wendel Investissement had been satisfied;

(i)      Lagardère's reply of 21 June 2004 to that request for information;

(j)      the trustee's report assessing Wendel Investissement's proposal to act as purchaser of the transferred assets against the approval criteria, submitted to the Commission on 5 July 2004.

3      By fax dated 15 February 2005, the Director-General of the Competition DG sent [Odile Jacob] the Commission's letter of 5 February 2004 approving the appointment of the trustee and the Hold Separate Manager (the documents referred to in paragraph 2(a) and (e) above), and informed it that the remaining documents could not be sent to it as they were covered by the exceptions laid down in the first to third indents of Article 4(2) and in the second subparagraph of Article 4(3) of Regulation No 1049/2001 and there was no overriding public interest in their disclosure.

4      By letter of 18 February 2005, [Odile Jacob] made a confirmatory application ("the request for access") concerning the documents to which it had been denied access.

5      On 14 March 2005, the Secretary-General of the Commission informed [Odile Jacob] that the time-limit for replying to its request would be extended, in accordance with Article 8(2) of Regulation No 1049/2001, until 7 April 2005, because of the complexity of the request for access and the number of documents sought.'

11      By the contested decision, the Commission confirmed its refusal of 15 February 2005 to disclose the documents in question.

12      Initially, the Commission identified, in that decision, the documents covered by the request for access and provided a detailed list of them, except for those mentioned in point (d) of paragraph 1 above for the reason that the correspondence between Lagardère and the Commission amounted to

some 20 or so binders and drawing up a list would have constituted a disproportionate administrative burden. Furthermore, the Commission stated that it was not in possession of the document mentioned in point (f) of paragraph 1 above and pointed out that the documents mentioned in point (c) of paragraph 1 included those mentioned in point (h).

13      Next, under the heading 'Protection of the purposes of investigative activities', the Commission stated, in that decision, that 'all the documents referred to are covered by the exception to the right of access based on the protection of the purpose of investigative activities carried out by the Commission (third indent of Article 4(2) of Regulation No 1049/2001)'.

14      Applying that exception, the Commission refused, by the contested decision, to grant access to all the documents requested which were either communicated to or drawn up by the Commission's departments in the context of a procedure for the control of a concentration between undertakings. The Commission submitted that, should the General Court annul the decision on compatibility, it would be obliged to adopt a new decision and, consequently, to reopen its investigation. The aim of that investigation would be jeopardised if documents drawn up or received in the context of the control procedure were made public at that stage. On a more general note, the Commission took the view that the disclosure of information given to it in the context of a procedure for the control of a concentration would upset the climate of trust and cooperation between the Commission and the interested parties which is essential if it is to garner all the information it needs.

15      Furthermore, the Commission has stated expressly, in the contested decision, that that refusal is justified because 'all the documents referred to in [the] request are covered by the exception to the right of access based on the protection of the purpose of investigative activities'.

16      The Commission also invoked the exception laid down in the first indent of Article 4(2) of Regulation No 1049/2001, which concerns the protection of commercial interests, in order to justify its refusal to grant access to the documents mentioned in paragraph 1(b) to (e) and (h) and in paragraph 2(b), (c) (in part), (d), (f), (g), (i) and (j) of the contested judgment on the ground that they contain sensitive information about the commercial strategies of the undertakings concerned which the undertakings sent to the Commission solely for the purposes of the control of the proposed concentration. The Commission submits that the documents mentioned in paragraph 1(a) and in paragraph 2(c) (a letter from the Commission to Lagardère) and (h) of that judgment, all of which it drew up itself, also contain sensitive commercial information relating to the undertakings concerned.

17      Moreover, the Commission has relied, in the contested decision, on the exception laid down in the second subparagraph of Article 4(3) of Regulation No 1049/2001, which concerns the protection of the institution's decision-making processes, in order to justify its refusal to grant access to two of the three Commission internal notes referred to in point (g) of paragraph 1 above. One of those notes is a request from the Competition DG to the Legal Service for advice. The other is a note prepared for the Member of the Commission responsible for competition, summarising the state of the file.

18      In that regard, the Commission stated, in that decision, that, 'apart from the fact that disclosure of those documents would jeopardise the purpose of the inquiry, ... the decision-making process itself would be seriously undermined if internal discussions were to be rendered public'. Thus, it asserted that its various departments must be able to express points of view freely, without any external pressure, so that they can guide the Commission in taking its decisions.

19      The Commission also relied on the exception laid down in the second indent of Article 4(2) of Regulation No 1049/2001 relating to the protection of legal advice in order to justify its refusal to grant access to one of the documents referred to in paragraph 1(g) of the judgment under appeal. It emphasised that frankness, objectivity and independence are essential in the provision of legal opinions and submits that, had its Legal Service been required to take into account subsequent publication of its opinion, it would not have expressed itself with absolute independence.

20      As regards documents emanating from third parties, the Commission took the view that there was no need for it to consult the third parties concerned, in accordance with Article 4(4) of Regulation No

1049/2001, since it believed that one of the exceptions mentioned above applied and it was therefore clear that the documents in question must not be disclosed.

21      The Commission asserted, in that decision, that it considered the possibility of granting Odile Jacob partial access to the documents concerned, pursuant to Article 4(6) of Regulation No 1049/2001, and decided against it because of the large number of documents involved and the fact that almost all their content was covered by the exceptions mentioned above. Identifying the parts of the documents that could be disclosed would involve a disproportionate administrative burden in comparison with the public interest in having access to the passages that would be left after such an exercise.

22      Furthermore, the Commission pointed out, in that decision, that there was no overriding public interest to justify disclosure of the documents sought, the request for access arising from the defence of Odile Jacob's interests in a case pending before the General Court, and that is a private, not a public, interest.

23      The Commission drew attention in that decision to the existence of other specific rules on access laid down both in Regulation No 4064/89 and in the provisions of the Rules of Procedure of the Court of Justice and of the General Court which enable parties to legal proceedings to apply for measures of organisation of procedure, which can consist in an order for the production of documents relating to the case.

24      Lastly, the Commission observed in the contested decision that the fact that it communicated requests for information under Article 11 of Regulation No 4064/89 as an annex to its defence in Case T 279/04 does not mean that it is obliged to disclose the request for information which it sent to Lagardère pursuant to the same provision, referred to in paragraph 2(h) of the judgment under appeal. It pointed out that the documents annexed to pleadings submitted to the Court of Justice and the General Court are communicated solely for the purposes of the procedure in question and are not intended to be made public, whereas the communication of a document pursuant to Regulation No 1049/2001 is the equivalent of publication of the document.

25      On 5 July 2005, after the adoption of the contested decision, Odile Jacob lodged an application for measures of organisation of procedure in Case T 279/04 pursuant to Article 64 of the Rules of Procedure of the General Court, seeking an order requiring the Commission to produce the documents referred to in paragraph 1(a) to (h) of the contested judgment. The Commission communicated to Odile Jacob, as an annex to its observations on that application, the document referred to in paragraph 1(a), that is to say, its decision of 5 June 2003 to initiate an in-depth investigation under Article 6(1)(c) of Regulation No 4064/89 in the procedure at issue.

### The procedure before the General Court and the judgment under appeal

26      By application lodged at the Registry of the General Court on 17 June 2005, Odile Jacob brought an action for annulment of the contested decision.

27      Odile Jacob puts forward four pleas in law in support of its action, alleging the lack of any specific, individual examination of the documents referred to in the request for access, a manifest error of assessment on the Commission's part in the application of the exceptions laid down in Article 4(2) and (3) of Regulation No 1049/2001, infringement of the right to at least partial access to the documents requested and infringement of the principle of proportionality arising from the failure to balance the exceptions invoked against the overriding public interest justifying disclosure of the documents sought.

28      By order of 10 July 2009, in accordance with Article 65(b), Article 66(1) and the third subparagraph of Article 67(3) of the Rules of Procedure, the General Court ordered the Commission to produce all the documents sought, with the exception of those referred to in paragraph 1(f) and paragraph 2(a) and (e) of the judgment under appeal, at the same time making it clear that those documents would not be communicated either to Odile Jacob or to the intervener in the context of the proceedings before the General Court. The Commission complied and sent those documents to the General Court.

29      Several of the documents to which access had been requested by Odile Jacob pursuant to Regulation No 1049/2001 were sent to it by the Commission, either in their entirety or partially. The General Court therefore took the view that there was no longer any need to rule on the legality of the contested decision in so far as the Commission denied access to the documents referred to in paragraph 1(a) to (c) and paragraph 2(h) and (j) of the judgment under appeal. Moreover, Odile Jacob has not disputed the Commission's contention that the document referred to in paragraph 1(f) of the judgment under appeal is not in its possession.

30      Consequently, the General Court stated, in paragraph 32 of the judgment under appeal, that the subject-matter of the dispute concerned the documents referred to in paragraph 1(d), (e), (g) and (h) and paragraph 2(b) to (d), (f), (g) and (i) of the judgment under appeal ('the documents at issue').

31      Initially, the General Court considered the admissibility of one of the preliminary arguments raised by Lagardère, that the request for access at issue should have been evaluated in the specific context of a procedure for the control of a concentration. Lagardère submitted that access to the file in procedures for the control of concentrations is subject to the special rules laid down in Article 17 of Commission Regulation (EC) No 802/2004 of 7 April 2004 implementing Council Regulation No 139/2004 (OJ 2004 L 133, p. 1). The General Court, noting that application to intervene must be limited to supporting the form of order sought by one of the parties and finding that that argument had not been raised by the parties, rejected that argument as inadmissible.

32      So far as concerns the structure of the pleas in law in the action, the General Court followed the order of the justifications given by the Commission according to which all the documents at issue were covered by the exception in the third indent of Article 4(2) of Regulation No 1049/2001 relating to the protection of the purpose of investigations and, in addition, certain of those documents were entirely or partially covered by other exceptions. Thus, the General Court assessed, in paragraphs 63 to 97 of the judgment under appeal, the merits of the exception relating to the protection of the purpose of those activities, then, in paragraphs 109 to 129 thereof, the exception relating to the protection of commercial interests, in paragraphs 136 to 145 of that judgment, the exception relating to the protection of the decision-making process and, finally, in paragraphs 152 to 163 of the judgment, the exception relating to the protection of legal advice.

33      The General Court, considering that the first and second pleas were closely connected, examined them together.

34      After having recalled the settled case-law concerning the duty to carry out a specific, individual examination of a request for access to institution documents, the General Court pointed out that it was for the institution concerned to consider whether, firstly, the document to which access is sought fell within the scope of one or other of the exceptions laid down in Article 4 of Regulation No 1049/2001, and, secondly, whether disclosure of that document would specifically and actually undermine the protected interest and, thirdly, if so, whether the need for protection applied to the whole of the document.

35      Undertaking that analysis in three stages, the General Court first examined whether the documents at issue fell under the exception relating to the protection of the purpose of inspections, investigations and audits laid down in the third indent of Article 4(2) of Regulation No 1049/2001.

36      As regards the documents sent before 14 April 2003, which were communicated as part of an informal 'pre-notification' procedure, the General Court took the view, in paragraph 67 of the judgment under appeal, that they must be regarded as relating to the investigation carried out by the Commission as part of its control of concentrations, as is clear from the letter of 14 February 2005 from the Director  General of the Competition DG, which identifies the documents as belonging to that file, and from the contested decision, which states that all the documents sought were 'drawn up or received in the context of the conduct [of the procedure at issue]'. In paragraph 67 of the judgment under appeal, the General Court stated expressly that 'all the documents sought do indeed relate to investigation activities'.

37    In paragraph 70 of the judgment under appeal, the General Court considered whether that exception still applied, *ratione temporis*.

38    The General Court pointed out that the documents at issue had been requested by Odile Jacob when the investigation in question had already led to the adoption of two Commission decisions, the decision on compatibility and the approval decision. However, the General Court also noted that those decisions were not yet final, given the two actions for their annulment, Cases T 279/04 and T 452/04, pending before the General Court.

39    In paragraphs 76 and 77 of the judgment under appeal, the General Court took the view that to concede that the documents sought remain covered by the exception laid down in the third indent of Article 4(2) of Regulation No 1049/2001 until the decision on compatibility and the approval decision adopted following the investigation become final, would make access to those documents dependent on an uncertain, future and possibly distant event. Accordingly, the General Court held that, when the contested decision was adopted, the documents at issue no longer fell within the scope of the exception relating to the protection of the purpose of investigations.

40    The General Court added, in paragraphs 78 and 82 of the judgment under appeal, that, even if those documents did possibly fall within the scope of the exception relating to the protection of the purpose of investigations, it was in no way clear from the excessively vague and general statement of reasons for the contested decision that the Commission carried out any specific, individual examination of the documents at issue. In the view of the General Court, the same reasoning could have applied to all the documents provided in the context of any procedure for the control of a concentration, in that the abstract and general reasoning of the contested decision is unrelated to the content of the documents at issue.

41    As regards all the correspondence between the Commission and Lagardère between September 2002 and the date of the notification of the concentration, the General Court, refuting the Commission's arguments, held that, under Article 2(3) of Regulation No 1049/2001, the provisions on public access to Commission documents applied to all documents held by that institution and that documents concerning controls of concentrations also fell under that provision. In that regard, the General Court held that the Commission was under a duty to satisfy itself, by means of a concrete, individual examination of each document, that the exception relating to the protection of the purpose of investigations does apply. Thus, the Commission could not avoid that duty by means of an examination *in abstracto* of those documents.

42    The General Court noted, in paragraph 89 of the judgment under appeal, with regard to the Commission's argument based on Article 17(1) of Regulation No 139/2004, according to which '[i]nformation acquired as a result of the application of [that regulation may] be used only for the purposes of the relevant request, investigation or hearing', that that provision, which is worded in similar fashion to the provision of Regulation No 4064/89 applicable to the present case, addressed the way in which the Commission is entitled to use information provided to it but did not govern the access to documents guaranteed by Regulation No 1049/2001.

43    In that paragraph, the General Court stated that that provision 'cannot be interpreted as precluding exercise of the right of access to documents guaranteed by Article 255 EC and by Regulation No 1049/2001. Moreover, it must be read in the light of Article 17(2) of Regulation No 139/2004, which prohibits the disclosure only of information "of the kind covered by the obligation of professional secrecy". Notifying undertakings must therefore expect that any information obtained that is not covered by the duty of professional secrecy will be disclosed'.

44    In paragraph 90 of the judgment under appeal, the General Court noted that '[a]ccording to case-law, to the extent that the public has a right of access to documents containing certain information, that information cannot be considered to be of the kind covered by the duty of professional secrecy (Case T 198/03 *Bank Austria Creditanstalt* v *Commission* [2006] ECR II 1429, paragraph 74). The duty of professional secrecy is therefore not so extensive as to justify any general, abstract refusal of access to documents sent in the context of the notification of a concentration. Admittedly, Article 287

EC and Regulations No 4064/89 and No 139/2004 contain no exhaustive list of the kind of information that is covered by the duty of professional secrecy. Nevertheless it is clear from the wording of Article 17(2) of those regulations that not all information gathered is necessarily covered by the duty of professional secrecy. Assessing whether or not information is confidential therefore requires that the legitimate interests opposing disclosure be weighed against the public interest in the activities of the Community institutions taking place as openly as possible (see, to that effect, *Bank Austria Creditanstalt* v *Commission*, paragraph 71, and Case T 474/04 *Pergan Hilfsstoffe für industrielle Prozesse* v *Commission* [2007] ECR II 4225, paragraphs 63 to 66).'

45    In paragraph 91 of the judgment under appeal, the General Court took the view that, '[b]y carrying out a specific, individual examination of the documents sought, in accordance with the first indent of Article 4(2) of Regulation No 1049/2001, the Commission is thus in a position to ensure the practical effect of the provisions applicable in the field of concentrations in a manner fully consistent with Regulation No 1049/2001. It follows that the duty of professional secrecy arising from Article 287 EC and from Article 17 of Regulations No 4064/89 and No 139/2004 is not such as to relieve the Commission of its obligation to carry out the specific, individual examination of each of the documents in question required by Article 4(2) of Regulation No 1049/2001'.

46    Considering that the Commission erred in law by refusing to grant access to the documents sought on the ground that they were covered by the exception laid down in the third indent of Article 4(2) of Regulation No 1049/2001, the General Court held that the contested decision was therefore vitiated by unlawfulness on this point.

47    None the less, the General Court noted, in paragraph 99 of the judgment under appeal, that all the documents at issue to which the Commission refused access on the basis of the exception relating to the protection of the purpose of investigations also remained capable of being covered, according to the contested decision, by another of the exceptions to the right of access laid down in Regulation No 1049/2001.

48    In consequence, the General Court examined whether those documents could be covered by other exceptions to the right of access laid down by that regulation, such as the protection of commercial interests, of the decision-making process or of legal advice.

49    As regards the exception relating to the protection of commercial interests, the General Court considered, in paragraphs 113 to 119 of the judgment under appeal, that the documents at issue, although likely to contain information about the commercial strategies of the undertakings concerned, cannot be considered to be of the kind covered by that exception to the extent that the public has a right of access to institution documents. Consequently, the General Court held that the Commission was under a duty to satisfy itself, by means of a proper, specific examination of each document, that it was covered by the exception laid down in the first indent of Article 4(2) of Regulation No 1049/2001 in order to refuse access thereto.

50    As regards consultation of third parties, under Article 4(4) of that regulation, the General Court pointed out, in paragraphs 125 to 127 of the judgment under appeal, that failure to consult the authors of third-party documents is thus inconsistent with Regulation No 1049/2001 unless one of the exceptions laid down in that regulation clearly applies to the documents in question. The General Court found that that was not the case in those proceedings, with respect to the exception relating to the protection of the purpose of investigations and the exception relating to the protection of commercial interests.

51    As regards the exception relating to the protection of the decision-making process, the General Court took the view, in paragraphs 138 to 143 of the judgment under appeal, that the note dated 10 February 2002 from the Competition DG to the Commission's Legal Service and the note dated 4 November 2002 summarising the state of the file contained opinions for internal use as part of deliberations and preliminary consultations and thus clearly fall within the scope of the second subparagraph of Article 4(3) of Regulation No 1049/2001. Considering that the Commission's justifications were made in a general and abstract fashion, the General Court took the view that the

institution in question had not shown that access to the documents requested was likely specifically and actually to undermine the Commission's decision-making process and that disclosure of the documents sought would have a significant effect on that decision-making process.

52      Finally, as regards the exception relating to the protection of legal advice, the General Court held, in paragraph 154 of the judgment under appeal, that the opinion of the Commission's Legal Service of 10 October 2002 did indeed fall within the scope of the second indent of Article 4(2) of Regulation No 1049/2001.

53      According to paragraphs 159 and 160 of the judgment under appeal, there was a reasonably foreseeable and not purely hypothetical risk that disclosure of the opinion in question would be detrimental to the future work of the Commission's Legal Service, particularly in litigation before the General Court, and that that service would draft such opinions in the future in a more guarded and prudent fashion so as not to affect the Commission's ability to take decisions in matters where it acts in its capacity as an administrative authority.

54      Furthermore, the General Court noted that disclosure of opinions of the Commission's Legal Service would risk putting the Commission in the difficult position, having a considerable effect on both the freedom of the Legal Service to express its views and its ability effectively to defend before the judicature of the European Union, on an equal footing with the other legal representatives of the various parties to legal proceedings, weakening the Commission's definitive position and the internal decision-making process of that institution.

55      Consequently, the General Court dismissed Odile Jacob's argument that the disclosure of the opinion of the Legal Service, referred to in paragraph 1(g) of the judgment under appeal, would not undermine the protection of legal advice.

56      Next, the General Court examined, in paragraphs 167 to 176 of the judgment under appeal, the third plea in law, alleging infringement of the right to at least partial access to the documents at issue.

57      In the view of the General Court, a specific, individual examination is also required in application of Article 4(6) of Regulation No 1409/2001. The institution concerned may avoid carrying out such an examination only after it has genuinely investigated all other conceivable options and explained in detail the reasons for which those various options also involve an unreasonable amount of work. Having regard to the fact that the Commission failed to proceed in such a manner, the General Court took the view that the contested decision must also be annulled on that ground.

58      Finally, as regards the fourth plea in law, alleging infringement of the principle of proportionality, in paragraphs 189 to 196 of the judgment under appeal, the General Court examined whether there was any overriding public interest capable of justifying the disclosure of that opinion of the Commission's Legal Service, in accordance with the requirements of the final sentence of Article 4(2) of Regulation No 1049/2001.

59      After having examined the different arguments put forward by Odile Jacob regarding its defence in the legal action, the preservation of undistorted competition on the publishing markets in France and prevention of the rules relating to the control of concentrations being circumvented, the General Court rejected all those arguments, holding that there was no overriding public interest capable of justifying the disclosure of the legal opinion in question.

60      On the basis of all the foregoing considerations, the General Court, as is apparent from paragraph 197 of the judgment under appeal, annulled the contested decision in so far as it refused both complete and partial access to all the documents requested, with the exception of the legal opinion referred to in paragraph 1(g) of that judgment.

**Procedure before the Court**

61      By an application lodged at the Registry of the Court on 10 August 2010, the Commission sought suspension of operation of the contested act, by way of interim relief, until the Court of Justice has ruled on the appeal.

62      Taking the view that the Commission had failed to establish that there was serious and irreparable harm and that, consequently, the application for suspension of operation of the judgment under appeal did not meet the requirement of urgency, the President of the Court, by an order dated 31 January 2011, dismissed the application for interim relief.

63      By order of the President of the Court of Justice of 2 February 2011, the Kingdom of Denmark and the Kingdom of Sweden were granted leave to intervene in support of the form of order sought by Odile Jacob and the Czech Republic was granted leave to intervene in support of the form of order sought by the Commission.

64      By order of the President of the Court of Justice of 29 June 2011, the French Republic was granted leave to intervene in support of the form of order sought by the Commission and to submit its observations during the oral procedure.

### Forms of order sought by the parties

65      By its appeal, the Commission claims that the Court should:

–      set aside the judgment under appeal in so far as it partly annuls the contested decision;

–      dismiss the application for annulment brought before the General Court by Odile Jacob and give a final ruling on the questions which form the subject-matter of the present appeal, and

–      order Odile Jacob to pay the costs incurred by the Commission in respect of both the proceedings at first instance and the present appeal.

66      In its response and its cross-appeal, Odile Jacob contends that the Court should:

–      reject the Commission's appeal in so far as it is in part inadmissible and, in any event, unfounded, and

–      set aside the judgment under appeal in so far as it dismissed its application for annulment of the contested decision inasmuch as it refuses any access to the advice of the Commission Legal Service referred to in paragraph 1(g) of that judgment.

67      The Czech Republic and the French Republic support the Commission's submissions. The Kingdom of Denmark and the Kingdom of Sweden support Odile Jacob's submissions.

68      Lagardère contends that the Court should:

–      set aside the judgment under appeal in so far as it partly annuls the contested decision;

–      dismiss the application for annulment brought before the General Court by Odile Jacob, and

–      order Odile Jacob to pay all the costs incurred at first instance and on appeal.

### The appeal

69      In its appeal, the Commission raises two grounds of appeal, the first alleging that the General Court misinterpreted Regulation No 1049/2001 by failing to take account, for the purposes of the interpretation of the exceptions to the right of access to documents, of the provisions of Regulation No 4064/89.

70      The second ground of appeal, which comprises five parts, alleges misinterpretation of Article 4(2) and (3) of Regulation No 1049/2001. The first part refers to the obligation to carry out a concrete, individual examination of each of the documents covered by a request for access. The second part deals with an incorrect interpretation of the third indent of Article 4(2) of that regulation, concerning the exception regarding the protection of the purpose of investigations. The third part relates to an incorrect interpretation of the first indent of Article 4(2) of that regulation, concerning the exception relating to the protection of commercial interests. The fourth part concerns an incorrect interpretation of the second subparagraph of Article 4(3) of the regulation, concerning the exception relating to the protection of the decision-making process. The fifth part concerns an incorrect interpretation of Article 4(6) of Regulation No 1049/2001 concerning the right of partial access to documents.

71      At the beginning of its appeal, the Commission, referring to the contested decision, recalls the exceptions by which the documents at issue are covered and which form the basis of the refusal to grant access. Those exceptions are laid down in the following provisions:

–       the third indent of Article 4(2) of Regulation No 1049/2001, regarding the exception relating to the protection of the purpose of investigations, which applies to all the documents at issue;

–       the first indent of Article 4(2) of that regulation, concerning the exception relating to the protection of commercial interests, which applies to the documents referred to in paragraph 1(d), (e) and (h) and paragraph 2(b), (c), in part, (d), (f), (g) and (i) of the judgment under appeal;

–       the second subparagraph of Article 4(3) of the regulation, concerning the exception relating to the protection of the decision-making process, which applies to two of the three Commission internal notes referred to in paragraph 1(g) of the judgment under appeal;

–       the second indent of Article 4(2) of that regulation, concerning the protection of legal advice, which applies to the advice of the Commission Legal Service referred to in paragraph 1(g) of the judgment under appeal.

*Arguments of the parties*

The incorrect interpretation of Regulation No 1049/2001 relating to the failure to take account of the provisions of Regulation No 4064/89

72      In the submission of the Commission, the General Court did not interpret or apply Regulation No 1049/2001 in a coherent manner, which leads to a contradiction of the provisions relating to procedures for the control of concentrations between undertakings and runs counter to the intention of the European Union legislature. That regulation constitutes a general rule which applies to all documents held by the institutions. Thus, exceptions to the right of access to institution documents were drafted in broad terms in order to protect public or private interests and to be applied in the widest range of situations likely to arise in practice. Those exceptions should therefore be interpreted so as to protect legitimate private or public interests in all fields of activity of the institutions and, more particularly, where those interests have the benefit of express protection by virtue of other provisions of European Union law, such as Regulation No 4064/89.

73      The Court of Justice has already had occasion to interpret Regulation No 1049/2001, linking it with other applicable legal acts, in the judgments in Case C 139/07 P *Commission* v *Technische Glaswerke Ilmenau* [2010] ECR I 5885 and Case C 28/08 P *Commission* v *Bavarian Lager* [2010] ECR I 6055. The judgment under appeal has created a multi-faceted contradiction in the application of that case-law.

74      The balance of Regulation No 4064/89 has thus been called into question by the General Court. The obligations on undertakings to provide data and information and the Commission's extended powers of investigation are set off against the provisions on increased protection laid down by that regulation and Regulation No 802/2004 which is the latter's implementing regulation. The guarantees of protection are intended, firstly, to enable the smooth functioning of the system of control of

concentrations between undertakings in the public interest and, secondly, to ensure respect of the legitimate interest of the undertakings that the information which they send to the Commission is used solely for the purposes of the inquiry and that confidential information is not disclosed, while protecting them from interference in their private activity from the public authority.

75      In the submission of the Commission, the duty of professional secrecy arising from Article 339 TFEU and from Article 17 of Regulation No 4064/89 is intended to avoid harm to undertakings' business secrets and other commercial interests, but also to ensure their rights of defence. That interpretation is based on the judgments in Case C‑67/91 *Asociación Española de Banca Privada and Others* [1992] ECR I‑4785; Joined Cases C‑238/99 P, C‑244/99 P, C‑245/99 P, C‑247/99 P, C‑250/99 P to C‑252/99 P and C‑254/99 P *Limburgse Vinyl Maatschappij and Others* v *Commission* [2002] ECR I‑8375; and Case C‑450/06 *Varec* [2008] ECR I‑581.

76      The Commission points out that the data sent to it by undertakings which are party to a merger must be regarded as relating to their private activity and as such are subject to compliance with the provisions of Article 8 of the European Convention for the Protection of Human Rights and Fundamental Freedoms, signed in Rome on 4 November 1950. The right of access to documents in the merger file is available only to the parties which are directly involved in the proceeding, with the exception of documents covered by business secrecy and, if appropriate, to other natural or legal persons showing a sufficient interest, in accordance with Article 18(3) of Regulation No 4064/89. Any other applicant unable to demonstrate such an interest will be refused access to the documents in the file on that basis alone without any other justification.

77      Thus, in the judgment under appeal, the General Court deliberately failed to have regard to the system laid down in Regulations No 4064/89 and No 802/2004.

78      By giving primacy to Regulation No 1049/2001 over any other legal text, not only over Regulation No 4064/89 but also over the Charter of Fundamental Rights of the European Union and the European Convention for the Protection of Human Rights and Fundamental Freedoms, the General Court failed to have regard to European Union law.

79      Lagardère argues that the General Court was wrong to reject, in paragraphs 33 to 38 of the judgment under appeal, the argument concerning the exclusive application of the rules on access to the file laid down in the field of control of mergers.

80      In support of the appeal, the Czech Republic points out that the principle of access to institution documents is not an absolute principle and that it is subject to certain limits, such as respect for the professional secrets or business secrets of the parties to the proceedings. Consequently, it is necessary for access to documents containing information to be restricted to those applicants who are affected 'to a certain degree' and who have demonstrated sufficient interest within the meaning of Regulation No 4064/89. The Czech Republic submits that, where mergers are concerned, the fact of allowing access to documents could give a considerable market advantage to the competitors of the undertaking which is party to the proceedings.

81      Odile Jacob points out that the ground of appeal relating to the application of the provisions of Regulation No 4064/89 is raised for the first time at the appeal stage and must, therefore, be regarded as inadmissible. The undertaking argues that the Commission's conduct at the present instance is paradoxical, since the institution had totally disregarded the applicability of that regulation when it decided to produce certain documents, selectively, before the General Court or while dealing with the requests for access to the documents at issue.

82      In the alternative, Odile Jacob points out that, in any event, the first ground of appeal is manifestly unfounded. The Commission applies incorrectly the principle of the coherence of the legal order of the European Union to support its argument. The travaux préparatoires of Regulation No 1049/2001 contradict the Commission's assessment of the link between that regulation and the regulations specific to the field of access to documents. The principles laid down in that regulation can be overridden only where specific rules provide for wider access and not vice versa. Competition law is

not a derogatory system restricting the provisions of Regulation No 1049/2001. The regulations concerning mergers and those relating to the right of access are not contradictory and the General Court was correct to establish a balance between them.

83      In the submission of Odile Jacob, a distinction must be drawn, as regards access to documents concerning inquiries into mergers, between the reports between the Commission and the undertakings concerned in the inquiry and the reports between the Commission and third parties. In the first case, Regulation No 4064/89 guarantees that the rights of defence of undertakings concerned in those inquiries will be protected. In the second, the Commission is under a duty of transparency by virtue of Regulation No 1049/2001. Those two obligations have a single purpose, that of ensuring that the Commission's action remains within its lawful limits. There is no analogy, which the Commission seeks to draw, between the present case and the case which gave rise to the judgment in *Commission* v *Bavarian Lager*.

84      The Kingdom of Sweden points out, in support of Odile Jacob, that the fact that special legislation provides other rules for access to institution documents does not mean that those rules must automatically take precedence over those in Regulation No 1049/2001. Having regard to all the rules on secrecy, such an interpretation would considerably reduce the importance of that regulation and would run counter to the principle of the greatest possible transparency in the institutions' activities, set out in Articles 1 TEU, 15 TFEU and 42 of the Charter of Fundamental Rights of the European Union, and would render that regulation meaningless and ineffective.

85      The Kingdom of Sweden notes that the judgments in *Asociación Española de Banca Privada and Others* and *Limburgse Vinyl Maatschappij and Others* v *Commission* state that the restriction on use of information gathered in merger control proceedings, together with the duty of professional secrecy, is intended to protect undertakings' rights of defence. That restriction prevents the Commission from making use, in any other context, of information provided by the undertakings in such a proceeding. However, as the General Court pointed out, that restriction has no purpose other than to restrict the Commission's right itself to use the information covered by that restriction and does not affect the public's right to peruse the documents. There is, in its view, no need to take account of Article 17(1) of Regulation No 4064/89 when interpreting the exceptions laid down in Regulation No 1049/2001.

86      Furthermore, in the view of the Kingdom of Sweden, nor can Article 17(2) of Regulation No 4064/89, on the obligation of professional secrecy, and Article 18(3) thereof, which protects the parties' rights of defence, be understood as being capable of leading the exceptions laid down in Regulation No 1049/2001 to be given a broader interpretation than that which emerges from Article 4 of that regulation.

The incorrect interpretation of Article 4(2) and (3) of Regulation No 1049/2001

–      The first part of the second ground of appeal, regarding the obligation of a concrete, individual examination of each document concerned

87      By the first part of the second ground of appeal, the Commission disputes the existence of an obligation to carry out a concrete, individual examination of all the documents at issue, established by the judgment under appeal.

88      Supported by Lagardère, it is of the view that the judgment in *Commission* v *Technische Glaswerke Ilmenau*, which applies to State aid, can be transposed to merger control proceedings, inasmuch as that judgment establishes a general presumption that the public disclosure of the documents in the file would, in principle, undermine protection of the purpose of the investigation.

89      It submits that it is appropriate to accept the existence of a general presumption that access to documents which are not accessible to third parties who are outside the proceeding concerned would, in principle, undermine protection of the purpose of the inquiries. Such documents are accessible only where they are not covered by that presumption or where there is an overriding public interest in their disclosure in accordance with Article 4(2) of Regulation No 1049/2001.

90      Odile Jacob, relying on the reasoning of the General Court, believes that the first part of the second ground of appeal is unfounded. A concrete, individual examination of each document constitutes an approach to be adopted as a matter of principle, which applies to all the exceptions in Article 4(1) and (3) of Regulation No 1049/2001, even in the field of control of mergers. The fact that the Commission is in possession of highly confidential information does not in any way relieve it of the obligation to carry out that concrete, individual examination, if only to ascertain which of those documents do not contain such information and to which, as appropriate, full or partial access might be granted.

91      Odile Jacob is of the view that the reference to the judgment in *Commission* v *Technische Glaswerke Ilmenau* is not relevant to a case relating to a merger since, in cases of State aid, which was the subject-matter of that judgment, the interested parties have no right of access to documents in the Commission's administrative file, which is not so in the case of controls of mergers since Articles 17 and 18 of Regulation No 4064/89 authorise such access. Moreover, in the case which gave rise to the judgment in *Commission* v *Technische Glaswerke Ilmenau*, part of the aid in question was in the process of being examined by the Commission, so that it had not yet become possible to raise the exception relating to the protection of the purpose of investigations.

–      The second part of the second ground of appeal, alleging incorrect interpretation of the third indent of Article 4(2) of Regulation No 1049/2001, concerning the exception relating to protection of the purpose of investigations

92      The Commission submits that the investigation to which the documents at issue are connected could not be regarded as closed, since the validity of the decision on compatibility and the approval decision were in dispute and, in the event that those decisions were annulled, the Commission would have to reopen its investigation. Thus, the finding of the General Court, in paragraph 77 of the judgment under appeal, that, when the contested decision was adopted, the documents sought no longer fell within the scope of the exception relating to the protection of the purpose of investigations runs counter to the law.

93      It follows from the judgment in *Commission* v *Technische Glaswerke Ilmenau* that that exception can continue to apply and justify a global refusal of access to documents, without it being necessary to undertake a concrete examination after adoption of the Commission decision closing the investigation. That judgment does not draw a distinction in the stage of progress of proceedings as between ongoing investigations and closed investigations.

94      The Commission is of the opinion that the judgment under appeal, in its interpretation of the third indent of Article 4(2) of Regulation No 1049/2001, disregards the objective of that provision and leads to a paradox in the control of mergers. While access to the file is refused, under the competition rules, without any examination of the documents, to any third party who does not demonstrate 'sufficient interest' in the proceeding, that access can be refused to a member of the public only on the basis of a concrete, detailed examination of the content of the documents at issue and with detailed reasons, which totally distorts the structure of the procedure in that field.

95      Odile Jacob points out that the arguments raised in the context of the second part of the second ground of appeal in essence repeat the arguments already put forward by the Commission at first instance and in the context of the first part of the second ground of appeal.

96      Odile Jacob submits that Regulations No 4064/89 and No 1049/2001 are not contradictory as regards third party access to the files. Both regulations provide that 'third parties', whoever they may be, can neither have the benefit of an absolute right of access nor be faced with an absolute refusal of access.

–      The third part of the second ground of appeal, alleging incorrect interpretation of the first indent of Article 4(2) of Regulation No 1049/2001 concerning the exception relating to the protection of commercial interests

97      The Commission challenges the interpretation made by the General Court of the first indent of Article 4(2) of Regulation No 1049/2001, concerning the exception relating to the protection of commercial

interests. The Commission submits that, by its nature, a merger requires a large amount of extremely confidential information to be sent, to which the duty of professional secrecy arising from Article 339 TFEU and from Article 17 of Regulation No 4064/89 apply. Consequently, in the present case, in order to ensure the confidentiality of the documents at issue and the restriction of their use to that which is laid down in Article 16 of Regulation No 1049/2001, it is necessary for it to be possible to refuse access to documents without it being necessary to undertake a concrete, detailed examination of them. Nor is it necessary to consult a third party, since it is clear from Article 4(4) of Regulation No 1049/2001 that the documents at issue could not be disclosed to the public. Furthermore, the party which supplied those documents, namely Lagardère, remains opposed to their disclosure, as is proved by its participation in the present proceedings.

98      Odile Jacob is of the opinion that the rules of access laid down in Regulation No 4064/89 do not relieve the Commission of the obligation to carry out a concrete, individual examination of each of the documents, including confidential documents, covered by a request for access pursuant to Regulation No 1049/2001, in order to balance the interests affected and to ensure adequate protection of both the commercial interests of the undertakings in question and the right of access to documents, at least partial, which can be refused only on the basis of concrete, individual reasons. Moreover, the notions of confidentiality, within the meaning of Regulation No 4064/89, and of protection of commercial interests have equivalent meanings. In any event, where there is a potential conflict between Regulations No 4064/89 and No 1049/2001, it cannot be suggested that the latter should yield, since it lays down a requirement that all other provisions concerning access to institution documents comply with its provisions.

–      The fourth part of the second ground of appeal, alleging incorrect interpretation of the second subparagraph of Article 4(3) of Regulation No 1049/2001 concerning the exception related to the protection of the institution's decision-making process

99      In the Commission's submission, the General Court made an incorrect interpretation of the second subparagraph of Article 4(3) of Regulation No 1049/2001, concerning the exception relating to the protection of the institution's decision-making process. The Commission points out, as for the other exceptions, that there is a presumption of inaccessibility of internal documents concerning mergers, in order to avoid the Commission's decision-making process being seriously undermined.

100     Odile Jacob rejects the notion of 'presumption of inaccessibility' of documents concerning mergers. The Commission ought to have advanced concrete justification and not general considerations. The travaux préparatoires which led to the adoption of Regulation No 1049/2001 rejected the principle that all internal memoranda of the institutions should be inaccessible. Consequently, in the submission of Odile Jacob, it cannot be accepted that access to any internal memorandum is refused on the sole ground that that memorandum constitutes an opinion within the meaning of the second subparagraph of Article 4(3) of that regulation.

–      The fifth part of the second ground of appeal, alleging incorrect interpretation of Article 4(6) of Regulation No 1049/2001, relating to the right of partial access

101     The Commission is of the view that it was able validly to refuse access to the documents at issue on the basis of general presumptions and that thus there could be no infringement of the right of partial access to those documents under Article 4(6) of Regulation No 1049/2001.

102     Odile Jacob submits that the Commission could not, on the basis of a general presumption of inaccessibility, escape its obligation to disclose the documents at issue and, in particular, was required to examine whether it was possible to grant partial access to them, as provided for in Article 4(6) of that regulation.

*Findings of the Court*

103     Since the first and second ground of appeal overlap to a great extent, it is appropriate to examine them together.

104    First of all, it is appropriate to deal with the argument raised by Odile Jacob that the question of the link between Regulation No 4064/89 and Regulation No 1049/2001 is inadmissible at the stage of the appeal.

105    That argument is unfounded. It is established that, in its defence before the General Court, the Commission raised the exception relating to the protection of the purpose of investigations, laid down in the third indent of Article 4(2) of Regulation No 1049/2001, to justify its refusal to disclose the documents at issue. Despite the fact that, in that defence, the Commission did not expressly cite Regulation No 4064/89, there is no doubt that the investigations referred to by the Commission related to an administrative proceeding of merger falling within the scope of that regulation. That is apparent from the first letter of 27 January 2005 from Odile Jacob requesting the Commission to grant access to documents in the administrative procedure which led to the adoption of the decision on compatibility. The first document which the General Court identified in paragraph 1(a) of the judgment under appeal as a document requested is the decision of 5 June 2003 to initiate an in-depth investigation under Article 6(1)(c) of Regulation No 4064/89. Furthermore, in its reply before the General Court, the Commission refers expressly to that regulation.

106    Thus, it must be found that the question of the link between Regulation No 4064/89 and Regulation No 1049/2001 does not alter the subject-matter of the dispute and must be examined by the Court.

107    By its two grounds of appeal, the Commission submits, in essence, that the reasoning of the General Court is incorrect, because the relevant provisions of Regulation No 4064/89 concerning access to documents in merger control proceedings were not taken into consideration for the interpretation of the exceptions to the right of access laid down in the first and third indents of Article 4(2) of Regulation No 1049/2001 relating to the protection of commercial interests and the protection of the purpose of investigations respectively.

108    In the light of the case-law of the Court of Justice concerning the relationship between Regulation No 1049/2011 and certain specific rules of European Union law, laid down in particular in *Commission* v *Technische Glaswerke Ilmenau*; *Commission* v *Bavarian Lager*; and Joined Cases C 514/07 P, C 528/07 P and C 532/07 P *Sweden and Others* v *API and Commission* [2010] ECR I 8533, that complaint is well founded.

109    The present case concerns the relationship between Regulation No 1049/2001 and other rules, namely Regulation No 4064/89, which governs a specific field of European Union law. Those regulations have different objectives. The first is designed to ensure the greatest possible transparency of the decision-making process of the public authorities and the information on which they base their decisions. It is thus designed to facilitate as far as possible the exercise of the right of access to documents, and to promote good administrative practices. The second is designed to ensure compliance with the duty of professional secrecy in merger control proceedings which have a Community aspect.

110    Those regulations do not contain a provision expressly giving one regulation primacy over the other. Accordingly, it is appropriate to ensure that each of those regulations is applied in a manner compatible with the other and which enables a coherent application of them.

111    In accordance with the case-law of the Court, although Regulation No 1049/2001 is designed to confer on the public as wide a right of access as possible to documents of the institutions, that right of access is nevertheless subject, in the light of the regime of exceptions laid down in Article 4 thereof, to certain limits based on reasons of public or private interest (see, to that effect, *Commission* v *Technische Glaswerke Ilmenau*, paragraph 51).

112    In the present case, the Commission refused to send Odile Jacob the documents at issue relying, firstly, in respect of all those documents, on the exception laid down in the third indent of Article 4(2) of Regulation No 1049/2001 and, secondly, in respect of some of those documents, the exceptions relating to the protection of commercial interests, the protection of the institution's decision-making process, the protection of legal advice and the protection of the purpose of investigations respectively,

laid down in the first indent of Article 4(2), the second subparagraph of Article 4(3) and the second indent of Article 4(2) of that regulation respectively.

113    In that regard, it must be noted that a European Union institution, when assessing a request for access to documents held by it, may take into account more than one of the grounds for refusal set out in Article 4 of Regulation No 1049/2001.

114    In the present case, the Commission was able, in consequence, legitimately to base its refusal of access to the documents at issue cumulatively on a number of grounds. The grounds for refusal are based, as regards all those documents, principally on the exception relating to the protection of the purpose of investigations, then to a lesser degree and more specifically on the other exceptions, as set out in paragraph 112 of the present judgment.

115    Firstly, with regard to the documents exchanged between the Commission and notifying parties or third parties, it is common ground that the documents at issue do in fact relate to an investigation within the meaning of the third indent of Article 4(2) of Regulation No 1049/2001. Furthermore, having regard to the objective of merger control proceedings, which consists of ascertaining whether or not a merger gives the notifying parties a market power which may significantly affect competition, the Commission gathers, in the context of such a procedure, sensitive information about the commercial strategies of the undertakings concerned, their sales figures, their market shares or their business relations, so that access to documents in such a procedure can undermine the protection of the commercial interests of those undertakings. Accordingly, the exceptions relating to the protection of commercial interests and that of the purpose of investigations are, in the present case, closely connected.

116    It is true that, in order to justify refusal of access to a document, it is not sufficient, in principle, for that document to fall within an activity or an interest mentioned in Article 4(2) of Regulation No 1049/2001. The institution concerned must also supply explanations as to how access to that document could specifically and actually undermine the interest protected by an exception laid down in that article. However, it is open to the institution to base its decisions in that regard on general presumptions which apply to certain categories of documents, as similar general considerations are likely to apply to requests for disclosure relating to documents of the same nature (see *Commission* v *Technische Glaswerke Ilmenau*, paragraphs 53 and 54 and the case-law cited).

117    As regards procedures for reviewing State aid, such general presumptions may arise from Council Regulation (EC) No 659/1999 of 22 March 1999 laying down detailed rules for the application of Article [88] of the EC Treaty (OJ 1999 L 83, p. 1), which specifically regulates the field of State aid and which contains provisions concerning access to information and to documents obtained in the context of the investigation and aid review proceedings (see, to that effect, *Commission* v *Technische Glaswerke Ilmenau*, paragraphs 55 to 57).

118    Such general presumptions are applicable to merger control proceedings because the legislation governing those procedures also lays down strict rules as regards the treatment of information obtained or established in those proceedings.

119    Articles 17 and 18(3) of Regulation No 4064/89 and Article 17 of Regulation No 447/98 restrict the use of information in merger control proceedings, by limiting access to the file to 'parties directly involved' and 'other involved parties', subject to the legitimate interest of the undertakings concerned in the non-disclosure of their business secrets, and by requiring that the information gathered is used only for the purposes of the relevant request for information, review or hearing, and that the information which, by its nature, is covered by the duty of professional secrecy is not disclosed. Those provisions have been repeated, in essence, in Articles 17 and 18(3) of Regulation No 139/2004 and in Article 17 of Regulation No 802/2004.

120    It is true that the right to consult the administrative file in the context of merger control proceedings and the right of access to documents, pursuant to Regulation No 1049/2001, are legally distinct, but the fact remains that they lead to a comparable situation from a functional point of view. Whatever

the legal basis on which it is granted, access to the file enables the interested parties to obtain all the observations and documents submitted to the Commission (see, to that effect, *Commission* v *Technische Glaswerke Ilmenau*, paragraph 59).

121    In those circumstances, generalised access, on the basis of Regulation No 1049/2001, to the documents exchanged in such a procedure between the Commission and the notifying parties or third parties would, as the Commission has pointed out, jeopardise the balance which the European Union legislature sought to ensure in the merger regulation between the obligation on the undertakings concerned to send the Commission possibly sensitive commercial information to enable it to assess the compatibility of the proposed transaction with the common market, on the one hand, and the guarantee of increased protection, by virtue of the requirement of professional secrecy and business secrecy, for the information so provided to the Commission, on the other.

122    If persons other than those entitled to have access to the file by the rules on merger control proceedings, or those who could be regarded as involved parties but have not used their right of access to the information or have been refused access, were able to obtain access to the documents relating to such a procedure on the basis of Regulation No 1049/2001, the system introduced by that legislation would be undermined.

123    Consequently, for the purposes of interpretation of the exceptions under the first and third indents of Article 4(2) of Regulation No 1049/2001, the General Court should have acknowledged the existence of a general presumption that disclosure of documents exchanged between the Commission and undertakings during merger control proceedings undermines, in principle, both protection of the objectives of investigation activities and that of the commercial interests of the undertakings involved in such a procedure (see, to that effect, *Commission* v *Technische Glaswerke Ilmenau*, paragraph 61).

124    Having regard to the nature of the interests protected in the context of merger control proceedings, clearly the conclusion reached in the preceding paragraph of this judgment is correct irrespective of whether the request for access concerns a control procedure which is already closed or a pending procedure. The publication of sensitive information concerning the economic activities of the undertakings involved is likely to harm their commercial interests, regardless of whether a control procedure is pending. Furthermore, the prospect of such publication after a control procedure is closed runs the risk of adversely affecting the willingness of undertakings to cooperate when such a procedure is pending.

125    It must, in addition, be pointed out that, under Article 4(7) of Regulation No 1049/2001, the exceptions relating to privacy or commercial interests and in the case of sensitive documents may apply for a period of 30 years and may, if necessary, continue to apply after this period.

126    The general presumption referred to above does not exclude the possibility of demonstrating that a given document disclosure of which has been requested is not covered by that presumption, or that there is a higher public interest justifying the disclosure of the document concerned by virtue of Article 4(2) of Regulation No 1049/2001 (*Commission* v *Technische Glaswerke Ilmenau*, paragraph 62).

127    Secondly, with regard to the exception laid down in the second subparagraph of Article 4(3) of Regulation No 1049/2001, it is appropriate to note that that exception has been relied upon, by the Commission, to refuse access to a note from the Competition DG to the Commission's Legal Service requesting an opinion on the application of Article 3(5)(a) of Regulation No 4064/89 and a note to the Member of the Commission responsible for competition summarising the state of the file, as set out in paragraph 1(g) of the judgment under appeal.

128    In that regard, it must be pointed out that, as in the situation giving rise to the judgment in *Commission* v *Technische Glaswerke Ilmenau* (see, in particular, paragraphs 14 and 22 of that judgment), legal proceedings before the General Court were ongoing, in the present case, when the request for access to the documents at issue was made. It is common ground that those documents were requested by Odile Jacob in order to be used in support of its action in Case T‑279/04, pending before the General Court when the request for access was made.

129     Such a situation is different from that which gave rise to the judgment of 21 July 2011 in Case C 506/08 P *Sweden* v *MyTravel and Commission* [2011] ECR I 0000, in which, when the request for access to internal documents drawn up in the context of an administrative merger control procedure was made, the Commission decision relating to the merger in question had been annulled by the General Court in a judgment which became *res judicata* in the absence of any appeal lodged against it and in which the Commission had not, following that judgment annulling its decision, recommenced its activities with a view to the eventual adoption of a new decision relating to that merger. It also differs from the situation which gave rise to the judgment delivered today in Case C 477/10 P *Commission* v *Agrofert Holding*, where the request for access to internal documents was made when the Commission decision which closed the merger control procedure to which those documents were related had become final in the absence of any legal action brought against that decision.

130     In a situation such as that in the present case, where the institution concerned could, according to the result of the legal proceedings, be called upon to recommence its investigation activities with a view to the eventual adoption of a new decision on the merger in question, it is appropriate to accept that there is a general presumption that the obligation which is placed on that institution to disclose, during that procedure, internal memoranda such as those referred to in paragraph 127 of this judgment would seriously undermine the institution's decision-making process.

131     Such an assessment is also valid as regards the legal advice referred to in paragraph 1(g) of the judgment under appeal, over and above the considerations appropriately set out by the General Court in paragraph 160 of the judgment under appeal.

132     It must also be pointed out that, in paragraphs 84 and 85 of the judgment in *Sweden and Others* v *API and Commission*, the Court held that the limitations placed on the application of the principle of transparency in relation to judicial activities pursue the same objective of ensuring that exercise of the right of access to the documents of the institutions does not undermine the protection of court proceedings. In the Court's view, the protection of those proceedings implies that compliance with the principles of equality of arms and the sound administration of justice must be ensured. The Court added, in paragraph 87 of that judgment, that access to documents by one party could well upset the vital balance between the parties to a dispute – the state of balance which is at the basis of the principle of equality of arms – since only the institution concerned by an application for access to its documents, and not all the parties to the proceedings, would be bound by the obligation of disclosure.

133     Thirdly, as regards the argument alleging incorrect interpretation of Article 4(6) of Regulation No 1049/2001 concerning the right of partial access, it must be noted that the general presumptions referred to in paragraphs 123, 130 and 131 respectively of this judgment indicate that the documents covered by them do not fall within an obligation of disclosure, in full or in part, of their content.

134     Such a consideration is also valid, in particular, as regards the refusal of partial access to the legal advice referred to in paragraph 1(g) of the judgment under appeal, which refusal is more specifically referred to, in paragraph 197 of that judgment, among the grounds for annulment of the contested decision.

135     Consequently, all the grounds of appeal and parts thereof raised by the Commission in support of its appeal must be upheld.

136     It follows from the foregoing that the judgment under appeal must be set aside in so far as it annulled the contested decision.

**The cross-appeal**

137     By its cross-appeal, Odile Jacob seeks to have the judgment under appeal set aside in so far as it dismissed its application for annulment of the contested decision inasmuch as it refuses any access to the advice of the Commission Legal Service referred to in paragraph 1(g) of the judgment under appeal.

138    Having regard to the considerations set out, in particular, in paragraphs 128 to 134 of this judgment, that appeal must be dismissed as unfounded.

## The action before the General Court

139    In accordance with the first paragraph, second sentence, of Article 61 of the Statute of the Court of Justice of the European Union, where the judgment under appeal has been annulled, the Court of Justice may itself give final judgment in the matter, where the state of the proceedings so permits. That is so in this case.

140    In support of its action, Odile Jacob put forward four pleas in law, alleging the lack of any specific, individual examination of the documents at issue, a manifest error of assessment on the Commission's part in the application of the exceptions laid down in Article 4(2) and (3) of Regulation No 1049/2001, infringement of the right to at least partial access to the documents at issue and infringement of the principle of proportionality arising from the failure to balance the exceptions invoked against the overriding public interest justifying disclosure of those documents.

141    With regard to the first two pleas in law, as it emerges from paragraphs 116 to 132 of this judgment, in the present case the Commission was entitled, pursuant to the first and third indents of Article 4(2) of Regulation No 1049/2001, to refuse access to all the documents at issue relating to the merger control procedure in question referred to in the request for access made by Odile Jacob on the basis of that regulation, without first carrying out a specific, individual examination of those documents.

142    In the absence of any factors becoming apparent from the action which are liable to refute the general presumptions referred to in paragraphs 123, 130 and 1331 of the present judgment, Odile Jacob cannot claim that the Commission ought to have carried out a specific, individual examination of the documents at issue and, accordingly, the first and second pleas in law must be rejected.

143    It follows from the foregoing, and from paragraphs 133 and 134 of the present judgment, that the third plea in law, alleging infringement of the right to at least partial access to the documents at issue, has become irrelevant.

144    As regards the fourth plea in law, alleging infringement of the right to at least partial access to the documents at issue and infringement of the principle of proportionality arising from the failure to balance the exceptions invoked against the overriding public interest justifying disclosure of those documents, it must be pointed out that the Commission was of the opinion, in the contested decision, that the interest claimed by Odile Jacob was, on all the evidence, private not public.

145    In that regard, it must be borne in mind that, under the last sentence of Article 4(2) and Article 4(3) of Regulation No 1049/2001, only an overriding public interest can take priority over the need to protect the interests set out in paragraphs 2 and 3 of that article.

146    Odile Jacob expressly stated in its originating application that the documents at issue would be able to enable it to present more convincing arguments in its actions for annulment which it had brought against the decision on compatibility and the approval decision. Accordingly, Odile Jacob has failed to demonstrate any overriding public interest justifying disclosure of the documents at issue and this plea in law must be rejected as unfounded.

147    Consequently, the action brought by Odile Jacob before the General Court seeking annulment of the contested decision must be dismissed.

## Costs

148    Under the first paragraph of Article 122 of its Rules of Procedure, where the appeal is well founded

and the Court of Justice itself gives final judgment in the case, the Court shall make a decision as to costs. Article 69(2) of the Rules of Procedure, which applies to appeal proceedings by virtue of Article 118 thereof, provides that the unsuccessful party is to be ordered to pay the costs if they have been applied for in the successful party's pleadings. The first paragraph of Article 69(4) of the Rules of Procedure provides that Member States which intervene in the proceedings are to bear their own costs.

149    Since the Commission's appeal has been upheld, Odile Jacob's cross-appeal has been dismissed and Odile Jacob's action before the General Court has been dismissed, Odile Jacob must be ordered to bear its own costs and pay those incurred by the Commission and Lagardère both at first instance and on appeal, as they have pleaded.

150    The Czech Republic, the Kingdom of Denmark, the French Republic and the Kingdom of Sweden must be ordered to bear their own costs.

On those grounds, the Court (Third Chamber) hereby:

1.    **Sets aside paragraphs 2 to 6 of the operative part of the judgment of the General Court of the European Union in Case T 237/05** *Éditions Jacob* **v** *Commission*;

2.    **Dismisses the cross-appeal;**

3.    **Dismisses the action brought before the General Court of the European Union seeking annulment of Commission Decision D(2005) 3286 of 7 April 2005, dismissing the application of Éditions Odile Jacob SAS for access to documents relating to merger control procedure COMP/M.2978 — Lagardère/Natexis/VUP;**

4.    **Orders Éditions Odile Jacob SAS to bear its own costs and pay those incurred by the Commission and Lagardère both at first instance and on appeal;**

5.    **Orders the Czech Republic, the Kingdom of Denmark, the French Republic and the Kingdom of Sweden to bear their own costs.**

[Signatures]

---

* Language of the case: French.