# EXHIBIT J

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: FLAT GLASS ANTITRUST LITIGATION (II) ) ) ) ) | Master Docket<br>Misc. Action No. 08-mc-180<br>MDL No. 1942 |
| This Document Relates to:<br>All Actions ) ) ) | Judge Donetta W. Ambrose |
| **European Commission** ) ) ) | |
| Motion For Reconsideration ) ) | Electronically Filed |

### DECLARATION OF PHILIP LOWE

Pursuant to 28 U.S.C. § 1746, I, Philip Lowe, declare as follows:

1.      I am Director General of the European Commission's Directorate General for Competition ("DG Competition"), and have served in this capacity since September 2002. DG Competition is one of the European Commission's departments primarily responsible to assist the Commission in competition law matters. I have prepared this Declaration in my personal capacity, based on my professional knowledge about European competition law.

2.      I am fully familiar with the substance and procedures of the European Union's competition law. The following is a true and accurate summary of European competition law as it is relevant to this action:

        a.      The European Commission is a strong proponent of effective damages actions so that victims of infringements of EC competition law can be fully compensated for the harm they have suffered. However, in certain circumstances there is a balance to be struck between public enforcement interests in the European Community and the interests of private litigants in third country jurisdictions. Disclosure of information from the European Commission's file in the context of private litigation in third jurisdictions, in particular of

leniency statements submitted during the investigation, is very likely to seriously undermine the effectiveness of public antitrust enforcement in the European Community. The European Commission has a duty to ensure that its investigations and the effectiveness of its enforcement programmes are not undermined by disclosure.[1]

    b.  Article 15(4) of Regulation 773/2004 provides that documents obtained through access to the file shall only be used for the purposes of judicial or administrative proceedings for the application of Articles 81 and 82 EC.[2] Accordingly, they shall not be disclosed for any other purpose.[3] The European Commission's statement of objections and the full confidential version of the decision are documents prepared specifically for the competition proceedings and contain confidential information received through investigative measures. The same considerations apply to the disclosure of replies to statements of objections, requests for information and other documents depending on the individual procedure. Therefore, they and the information contained therein shall also be used only for the purpose of proceedings concerning the application of Articles 81 and 82 EC.[4]

---

[1] But after the Commission decision is adopted a non-confidential version of the decision is published, providing some useful information to interested third parties.

[2] Article 15(4) of Regulation 773/2004 provides: "Documents obtained through access to the file pursuant to this Article shall only be used for the purposes of judicial or administrative proceedings for the application of Articles 81 and 82 of the Treaty."

[3] *See also* ¶ 48 of the Commission Notice on the rules for access to the Commission file in cases pursuant to Articles 81 and 82 of the EC Treaty; Articles 53, 54 and 57 of the EEA Agreement; and Council Regulation (EC) No 139/2004, OJ C 325, 22.12.2005, at 7 ("Access to the Commission file Notice"), which provides that: "Access to the file in accordance with this notice is granted on the condition that the information thereby obtained may only be used for the purposes of judicial or administrative proceedings for the application of the Community competition rules at issue in the related administrative proceedings. Should the information be used for a different purpose, at any point in time, with the involvement of an outside counsel, the Commission may report the incident to the bar of that counsel, with a view to disciplinary action."

[4] In the EC legal system, these documents can be disclosed to the EC courts, at their request, for the purpose of controlling the legality of the European Commission decision. *See, e.g.,* Case T-353/94, *Postbank v. Commission* [1996] ECR II-921, ¶ 89, concerning provisions on professional secrecy and, in particular, statements of objections, where the Court of Justice explained: "[t]hese provisions, *even if they prevent undertakings from transmitting such*

c.      The European Commission has taken further initiatives to safeguard its administrative files. Specific protection has been given to voluntary statements made in the context of its Leniency Policy.[5] In particular, the oral procedure was formally introduced for leniency applications. Equivalent safeguards exist for settlement submissions.[6] Access to such statements is granted only to the addressees of the Statement of Objections, provided they commit not to make any copies by mechanical or electronic means of any information contained therein and to use information obtained from such statements only for the purpose stated in the Notice on the rules for access to the European Commission file.

d.      Entities failing to comply with the obligations set out in the preceding paragraphs can face negative consequences. A breach of the obligation not to use information obtained through access to file for any other purpose during the proceeding by leniency applicants may be regarded as lack of cooperation under the Leniency Notice. Pursuant to the Guidelines on the method of setting fines,[7] refusal to cooperate with or obstruction of the European Commission in carrying out its investigations may be considered as an aggravating circumstance in any Commission prohibition decision. If any such use is made after the European Commission has already adopted a prohibition decision in the proceeding, the Commission may, in any legal proceedings before the Community Courts, ask the Courts to

---

*documents to third parties*, do not in any way prevent their disclosure to the national courts [of Member States for the purpose of application of Articles 81 and 82 of the Treaty]" (emphasis added).

[5] *See* the 2006 Leniency Notice, ¶¶ 33-34, 37. Leniency applicants are also expected to comply with the obligation not to use information obtained through access to file for any other purpose. *See id.* ¶ 34.

[6] *See* the 2006 Leniency Notice, ¶¶ 32-35, 6-7, and the Settlement Procedure Notice, ¶¶ 35-40.

[7] *See* the Guidelines on the method of setting fines imposed pursuant to Article 23(2)(a) of Regulation No 1/2003, OJ C 210, 1.09.2006, p. 2, at ¶ 28.

3

Case 2:06-mc-00150-JWA Document 200-2 Filed 10/03/09 Page 4 of 13

increase the fine in respect of the responsible party.[8] Furthermore, as indicated in point 48 of the "Access to the Commission file Notice", *"should the information be used for a different purpose, at any point in time, with the involvement of an outside counsel, the Commission may report the incident to the bar of that counsel, with a view to disciplinary action"*. This shows that the relevant legal provisions clearly aim at ensuring compliance with the law.

        e.      In addition the European Commission has intervened through *amicus curiae* briefs before courts of the United States, where the law allows discovery that is exceptionally broad and relatively uncertain as to its outcome, to highlight the threat of discovery to its investigative processes. Such briefs were submitted in the *Vitamins* case,[9] and the *Methionine* litigation.[10] The Directorate General for Competition has also submitted letters to litigants in a number of proceedings in the United States against the discoverability of information that has been prepared solely for the purpose of its investigation, either by the parties or by the European Commission itself, including the recent *Rubber Chemicals* litigation.[11]

        f.      Furthermore, the Directorate General for Competition made a submission in 2006 to the United States Antitrust Modernization Commission, highlighting again the impact

---

[8] *See* the Access to the Commission file Notice, at ¶ 48; the 2006 Leniency Notice at point 34; and Article 23 of Council Regulation (EC) No 1/2003 in cartel cases, OJ C 167, 2.7.2008, p. 1 ("Settlement Procedure Notice"), at ¶¶ 35-40.

[9] *See* Br. of European Commission, *In Re Vitamins Antitrust Litigation*, Misc. No. 99-197, Docket No. 3079 (D.D.C. May 20, 2002); *see also In re Vitamins Antitrust Lit.*, 217 F.R.D. 229 (D.D.C. 2002). This case concerned disclosure of corporate statements where the investigation which was still on-going. The defendant, however, did not contest production of its corporate statements and the court ordered the production of these documents.

[10] *See* Order on Plaintiff's Mot. To Compel Production of Document, *In Re: Methionine Antitrust Litigation*, No. C-99-3491, MDL no. 1311 (N.D. Cal. June 17, 2002). The European Commission expressed opposition to the production of corporate statements. The plaintiff's motion to compel the production of these documents was denied.

[11] *See In Re: Rubber Chemicals Antitrust Litigation*, 486 F. Supp. 2d. 1078 (N.D. Cal. 2007). The plaintiff requested discovery of the documents provided by the defendant to the European Commission in the context of the Leniency Programme. The defendant submitted to the court a letter from the Directorate General for Competition, which expressed opposition to discovery of those documents. The court denied discovery of the documents requested.

of discovery rules in antitrust civil damages actions in the United States on the Commission's antitrust enforcement. It explained why it believes that the disclosure of statements and submissions, especially corporate statements, which are specifically prepared by undertakings within the context of the European Commission's antitrust proceedings, should not be deemed discoverable to third parties. The disclosure of such information submitted on a voluntary basis during the European Commission's investigation could seriously undermine the effectiveness of the Commission's and other authorities' antitrust enforcement actions. In particular, entities that voluntarily cooperate with the European Commission in revealing cartels cannot be put in a worse position in respect of civil claims than other cartel members which refuse cooperation. The ordered production, or uncertainty in this regard, of submissions that a company has prepared and produced exclusively for the European Commission's antitrust proceedings in civil proceedings for damages could seriously undermine the effectiveness of the Leniency Programme and jeopardise the European Commission's investigation of cartels. In contrast, the European Commission does not have an interest in generally protecting pre-existing documents from discovery.[12] Nevertheless, when the investigation is ongoing, pre-existing documents should be shielded from discovery, insofar as it could reveal the European Commission's investigative strategy.[13]

---

[12] Documents that were in the possession of leniency applicants before and independently of any submission to the European Commission. The leniency programme and other forms of voluntary cooperation should not act as a shield for companies seeking to conceal information that would otherwise be subject to disclosure/discoverable.

[13] A summary of the legal framework for the European Commission's antitrust investigation, on its information gathering process, its Leniency Programme, the rights of defence of undertakings and confidentiality rules is to be found in the filing by DG Competition to the American Modernization Commission on the issue of the impact of US discovery rules on EC antitrust enforcement practice and especially its Leniency Programme. See contribution to the US Antitrust Modernization Commission, April 2007, at http://govinfo.library.unt.edu/ amc/ comments/ request_comment_fr_28902/ international_comments.pdf.

3.      It is my personal opinion that authorizing discovery in American litigation of documents that are strictly confidential under European competition law would be highly detrimental to the sovereign interests and public policies of the European Union, and would substantially undermine the Commission's ability to detect and punish unlawful cartel activity in the European Union.  This could lead to grave economic consequences to Europe's nearly five hundred million consumers, and the ramifications of increased cartel activity could also cause substantial harm in other places, including the United States. Mutual benefits among international cartel enforcers have been also recognized by the US Department of Justice, Antitrust Division representatives in official *fora.*[14]

4.      Not all of the material potentially at issue in plaintiffs' motion is subject to EC confidentiality laws.  Instead, there are several categories of documents that do not implicate the Commission's policies regarding confidentiality.  Accordingly, I would like to submit the following specific observations on the list of documents whose disclosure has been or may have been ordered in this case to assist the Court in ascertaining the appropriate application of confidentiality.  This list is derived from correspondence received from Guardian's European affiliate, noted in Exhibit 1.

---

[14] *See, e.g.,* statement of Gerald F. Masoudi, Deputy Assistant Attorney General, on behalf of the United States Department of Justice, before the Antitrust Modernization Commission, Hearing of International Antitrust issues, February 15, 2006, http://govinfo.library.unt.edu/amc/commission_hearings/pdf/Statement_Masoudi.pdf,: "A growing worldwide consensus that international cartels victimize businesses and consumers everywhere, and a shared commitment to fighting those cartels, has led to improved cooperation among antitrust enforcement authorities. This strengthened cooperation has contributed to the Antitrust Division's ability to detect and prosecute international cartels that have subverted competition and victimized American businesses and consumers on an order of magnitude in the billions of dollars.[....] Our success thus far with our amnesty program has also influenced foreign antitrust authorities to adopt or strengthen their own programs. The European Commission revised its amnesty program several years ago to closely mirror ours. This and similar actions in other jurisdictions should further increase opportunities for multi-jurisdictional cooperation in cartel enforcement", *available at* http://govinfo.library.unt.edu/amc/commission_hearings/pdf/Statement_Masoudi.pdf.

a. **Pre-existing Guardian documents that the European Commission copied during its dawn raids at Guardian premises**

The European Commission does not generally oppose the disclosure of company documents that pre-existed its inspection from discovery.[15] An exception to this would be if the European Commission's investigation is still ongoing and disclosure of such documents is likely to have an adverse effect on its investigation (which it is not here).

b. **Pre-existing documents from the other undertakings under investigation which Guardian obtained through the access to file procedure**

This category concerns documents obtained by Guardian during the so-called access to file procedure, exercised according to Council Regulation (EC) 1/2003 and Commission Regulation 773/2004, in order to safeguard the rights of defence of the suspected entity before the European Commission takes its final decision.

The information that is normally gathered in a given investigation, including confidential data and voluntarily submissions, constitutes the European Commission's administrative file on which the final decision is based. Most of the documents contained in the administrative file are covered by a general rule of professional secrecy which obliges the European Commission to use such information only for the purpose for which they were acquired, namely the application of the competition rules of the EC Treaty. Disclosure to the parties of an antitrust proceeding of information or document that is part of the administrative file submitted to the European Commission takes place only within the specific framework of access to the file, thus respecting the rights of defence of potentially accused parties in the proceedings before the European Commission.

---

[15] *See* Order on Plaintiff's Mot. To Compel Production of Document, *In Re: Methionine Antitrust Litigation*, No. C-99-3491, MDL no. 1311 (N.D. Cal. June 17, 2002).

Case 2:06-mc-00180-JWA Document 200-2 Filed 10/03/09 Page 8 of 13

The parties to an antitrust proceeding are entitled to have access to the European Commission's file if they have been served a Statement of Objections, outlining the European Commission's preliminary allegations. During the access to the file procedure, the suspected entities have a right to consult non-confidential versions (in terms of administrative procedure) of all accessible documents and to copy such documents for use in their defence. Conversely, documents containing business secrets or other confidential information are not accessible.[16] Access to non-confidential versions of leniency submissions is granted only to the addressees of the statement of objections at Commission premises, provided they commit not to make any copies by mechanical or electronic means of any information contained therein and to use information obtained from such statements only for the purpose stated in the Commission Notice on the rules for access to the Commission file.

Legal obligations exist to ensure that documents obtained during the access to file exercise can only be used for the enforcement of the EC antitrust rules.[17] The importance of a strict adherence to these rules is underlined in the access to file rules, where the possibility of disciplinary action can be pursued by the European Commission against external counsel of undertakings in case of breach.[18]

Presumably for these reasons, the European Commission opposes in this case the disclosure of documents obtained by Guardian during the access to file procedure to the extent

---

[16] *See* Article 15 (2) of Commission Regulation 773/2004.

[17] This is regulated in Article 15(4) of the Commission Regulation 773/2004 and ¶ 33 of the European Commission Leniency Notice (hereinafter the "European Commission Leniency Notice"). As a standard practice, the party's attention is drawn to this obligation when access to the file is granted to them. In addition, Article 16 (1) of Commission Regulation (EC) No 773/2004 provides that "information, including documents, shall not be communicated or made accessible by the Commission in so far as it contains business secrets or other confidential information of any person."

[18] *See* ¶ 48 of Commission Notice on the rules for access to the Commission file in cases pursuant to Articles 81 and 82 of the EC Treaty, Articles 53, 54 and 57 of the EEA Agreement and Council Regulation (EC) No. 139/2004, in OJ C 325, 22.12.2005, p. 7, quoted in note 5 *supra*.

this category of documents contains information obtained from companies under its investigatory powers or voluntarily submitted for the application of Articles 81 and 82 of the EC Treaty. Furthermore, for reasons of international comity the disclosure of such documents will conflict with the law and policies of the European Community, which is a foreign sovereign, and is likely to work substantial harm because it will interfere with the European Commission's powers to investigate and prosecute antitrust cases within the territory over which the EC Treaty applies.

### c.    Disclosure of the European Commission's Statement of Objections

A Statement of Objections is a preparatory document containing the European Commission's provisional charges addressed to suspected undertaking in order to enable them to exercise their rights of defence.[19]  Based on the arguments submitted by the parties in reply to the Statement of Objections, the European Commission then takes a final decision on the case.  It is that final Decision which produces legal consequences and that is subject to judicial review by the European Courts.  Statements of Objections and the parties' replies thereto may contain confidential and other information submitted either under compulsion by parties or third parties to the investigation, or in the framework of the EC Leniency Programme (or other voluntary cooperation).  This document and the information contained therein should therefore be used only for the pursuit of infringements of the EC competition rules.

In light of the above, it is logical that the European Commission considers that disclosure of the unredacted, confidential version of its Statement of Objections in this case should not be allowed because it would seriously interfere with the EC's power to prosecute anticompetitive practices that have an impact within its borders.

---

[19] *See* art. 10 of Commission Regulation 773/2004.

Case 2:08-mc-00180-BWA Document 200-2 Filed 10/08/09 Page 11 of 13

**d.      Guardian's reply to the Statement of Objections**

As the European Commission has adopted the final decision in this case, the disclosure by Guardian of its reply to the Statement of Objections can be made, provided that it first removed all references to the leniency submissions and to other confidential documents and information of other parties which Guardian obtained through access to file in the Commission's proceedings.

**e.      Commission requests for information under Article 18 of Regulation (EC) No 1/2003, including requests sent to parties other than Guardian**

Considering that a final decision has been adopted by the Commission in this case, the disclosure by Guardian of non-confidential versions of the Article 18 Requests for Information sent to it does not meet objection from the European Commission.  However, such versions should not contain any information obtained through the Commission's proceedings, in particular any references to leniency submissions, for the reasons already explained above.  The requests sent by the European Commission to parties other than Guardian remain covered in any case by the above-mentioned confidentiality obligations and restriction of use for the application of the EC competition rules only.  As a result, the European Commission would consider that they should not be disclosed.

**f.      Guardian's Responses to these Requests for Information**

As these documents originate from Guardian and the final decision in the case has already been adopted, the European Commission would consider that, in this case, Guardian could disclose its own responses to Article 18 Requests for Information.  However, such versions should not contain any information obtained through the European Commission's proceedings,

in particular any references to leniency statements or other confidential submissions for the same reasons explained above.

### g. Transcripts and recording of the Oral Hearing

According to Article 27 of Council Regulation (EC) 1/2003, entities or affiliates of entities which are the subject of the proceedings conducted by the European Commission have the opportunity to be heard on the matters to which the Commission has taken objection before it reaches its final conclusions. In such cases, parties are entitled to exercise in full their rights of defence at an Oral Hearing that is closed to the public and before a Hearing Officer, who exercises the role of independent guardian of the parties' rights of defence in competition proceedings before the European Commission.[20] Oral Hearings are not compulsory, and only take place at the request of a party. The Oral Hearing in cartel cases is normally attended by the (often numerous) parties to the investigation, the European Commission, and the Member States' competition authorities. All information exchanged and discussions during the Oral Hearings are subject to obligations of professional secrecy, as also stipulated in Article 28 of Council Regulation 1/2003. This ensures that all participants at an Oral Hearing can freely discuss the Commission's preliminary objections and the parties' position on those objections. After the Oral Hearing takes place, a recording of the hearing is provided to the parties who attended the Oral Hearing to ensure the full exercise of their rights of defense.

It follows that discoverability of the tapes in general – as ordered by the Court in this case – is likely to have a negative impact on the willingness of the parties: (i) to request or to attend an Oral Hearing and, hence, exercise their rights of defence in full, (ii) to make full statements in

---

[20] Oral Hearings are governed by the principles and provisions set out in the Mandate of the Hearing Officers, see Decision of the European Commission of 23 May 2001 on the terms of reference of hearing officers in certain competition proceedings as well as in Commission Regulation 773/2004, *OJ L* 162, 19.6.2001, p. 21-24.

their defense as they see fit, and (iii) to trigger possibly a flood of *in camera* requests at hearings.[21]   Consequently, given that Oral Hearings are not compulsory and given their value in allowing the European Commission to hear all potentially affected parties and so reach a final decision that is sound and objective, if parties were dissuaded from requesting or attending them this could create an obstacle to the European Commission's investigative work.   Moreover, such recordings of Oral Hearings might contain information revealing leniency statements, other parties' confidential information or references to documents obtained for the application of EC competition rules.

> **h.      Guardian's application to the European Court of First Instance for the annulment of the European Commission's decision in this case**

Disclosure of this document can generally be allowed without prejudicing the EC's enforcement process, provided that any confidential information, references to statements made within the context of the EC Leniency Programme, and references to documents obtained solely for the application of European antitrust laws are deleted.

> **i.      Disclosure of the European Commission's defence to this Application, which includes a verbatim five-page extract of the transcript of Asahi/Glaverbel's Corporate Statement made in the context of its leniency application**

For the reasons already explained above, disclosure of this document should not be allowed because it contains information covered by obligations of professional secrecy and references to statements made within the context of the EC Leniency Program.

In particular, as far as the extract from the transcript of the leniency applicant Asahi/Glaverbel's Corporate statement is concerned (or any other corporate leniency statement), this information is prepared solely for submission to the European Commission's Leniency

---

[21] In some cases, special *in camera* sessions are organized by the Hearing Officer within the same oral hearing, when confidential issues *vis-à-vis* other parties to the investigation at stake are involved.

12

Case 2:08-mc-00180-BWA Document 200-2 Filed 10/08/09 Page 13 of 13

Programme and is given a high level of protection. The Leniency Notice expressly clarifies that any disclosure of statements specifically prepared for submission under the leniency programme would undermine leniency policy and could run counter the public interest of the European Commission to effectively investigative and prosecute violations of the competition rules.

With specific reference to corporate leniency statements, point 6 of the Leniency Notice states that: "[V]oluntary presentations of their knowledge of a cartel and their role therein prepared specially to be submitted under this leniency programme [...] should not be discouraged by discovery orders issued in civil litigation. Potential leniency applicants might be dissuaded from cooperating with the Commission under this Notice if this could impair their position in civil proceedings, as compared to companies who do not cooperate."

These statements are also subject to obligations of professional secrecy as stipulated in Article 28 of Council Regulation (EC) 1/2003 and Article 16 (1) of Regulation 773/2004 mentioned above.

* * * *

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 7, 2009 in Brussels, Belgium.

Philip Lowe
Director General
European Commission Directorate
General for Competition

13