David N. Lake, Esq., State Bar No. 180775
**LAW OFFICES OF DAVID N. LAKE**
**A Professional Corporation**
16130 Ventura Boulevard, Suite 650
Encino, California 91436
Telephone: (818) 788-5100
Facsimile: (818) 788-5199
david@lakelawpc.com

Attorneys for Class Member/Objector Donald Silvestri

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>_____<br><br>**This document relates to:**<br><br>ALL INDIRECT PURCHASER ACTIONS<br>_____ | Master File No. CV-07-5944 SC<br><br>MDL No. 1917<br>(Honorable Samuel Conti)<br><br>**CLASS MEMBER DONALD SILVESTRI'S OBJECTION TO FEE REQUEST AND EXPENSE REQUEST** |

Objecting class member Donald Silvestri ("Silvestri" or "Objector"), by and through his counsel, respectfully submits this Objection to this Honorable Court awarding attorneys' fees in excess of 10% and granting the attorneys $5 million to be used in anticipated expenses for the remainder of the litigation without any oversight.

Objector is a member of the damages class that was preliminarily approved by the court for the purpose of settlement of this matter. (See Certification of Donald Silvestri attached hereto as Exhibit A and incorporated herein by reference).

## I. BACKGROUND OF THE CATHODE RAY TUBE SETTLEMENT

This lawsuit was filed in 2008 on behalf of indirect purchasers of Cathode Ray Tube (hereinafter "CTR") products for their own use and not re-sale from March 1, 1996 through November 25, 2007.

The Court preliminarily approved a Settlement Fund of $25,000,000 minus attorneys' fees, reimbursement of expenses and $5 million for costs going forward in the litigation (a quasi-litigation fund). The defendants settling this portion of the case are the following: LG Electronics, LG Electronics USA, Inc., and LG Taiwan Taipei Co., Ltd. (the "LG Defendants"). As a result of just settling with the LG Defendants, the case is still moving forward against the other defendants. Class counsel did negotiate as part of the settlement that they receive $5 million from the settlement as a litigation fund to continue with the litigation against the non-LG Defendants. However, this is precisely the type of settlement Congress was attempting to prevent by enacting the Class Action Fairness Act. See Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332 (d), 1453, and 1711-1715.

## II. ARGUMENT

### A. THE COURT SHOULD APPROVE THE SETTLEMENT

The Ninth Circuit's decision in In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454 (9th Cir. 2000), sets forth a list of factors that Courts should consider when

evaluating a settlement of representative litigation – mainly that the proposed settlement is fundamentally fair, adequate and reasonable. The <u>Mego</u> factors include the following: 1) the strength of plaintiffs' case; 2) the risk, expense, complexity and likely duration of further litigation; 3) the risk of maintaining a class action status throughout the trial; 4) the amount offered in the settlement; extent of discovery completed; and 5) the reaction of the class members to the proposed settlement. <u>Mego</u> at 458. Here, Objector maintains that when the <u>Mego</u> factors are applied to this proposed settlement this Honorable Court should approve it.

**B.     THE ATTORNEYS SHOULD NOT RECEIVE A LEGAL FEE AT THIS TIME**

1. <u>THE CLASS IS RECEIVING NO BENEFIT</u>

Based on the structure of the settlement, the class members are not receiving any money or benefit from the $25 million. The best that can be said is the class members may receive money when the litigation is completed against the non-LG Defendants. In the final analysis, this settlement provides substantial legal fees for the attorneys (33 1/3% of the $25 million), reimbursement of their future expenses and another $5 million litigation fund for the attorneys to use to pay their fees and costs. It does not, however, in a benefit to the class members. Class counsel with undoubtedly argue they obtained a wonderful result for the class, but in actuality they created no real benefit for the class members. Then, adding insult to injury, they have the unmitigated gall to request attorneys' fees up to thirty three and one third (33 1/3%) of the $25 million where the standard benchmark for the Ninth Circuit is 25%. Furthermore, class counsel's proposal completely contradicts the Supreme Court common fund doctrine which provides that a litigant or a lawyer who recovers a common fund benefit of persons other than himself or his client is entitled to a reasonable attorney fee from the fund as a whole. <u>Boeing v. Van Gemert</u>, 444 U.S. 472, 62 L.Ed. 676, 100 S. Ct. 745 (1980).

///

2. **THE ENRON CASE DEMONSTRATES THESE ATTORNEYS DO NOT DESERVE A FEE NOW**

Major litigation was instituted against the insiders at Enron Corp., and its accountants, as a result of their fraud. See Newby et al. v. Enron Corp. et al., 394 F.3d 296 (5th Cir. 2004). The lead plaintiffs firm there was Lerach Coughlin which was founded and run by William Lerach. Mr. Lerach was one of the most prominent securities attorney in the country and his lead client in the case was CALPERS. After about a year of litigation, Mr. Lerach was able to settle a portion of the case against one of the foreign defendants, AWSC, for $40 million.

Lerach Coughlin did not request a legal fee from that $40 million settlement in Enron because the class was not receiving any money from that settlement. Contrary to the attorneys here, the plaintiffs' lawyers at the Lerach Coughlin firm recognized they were not entitled to a legal fee from the $40 million settlement because, quite simply, the class members received nothing. The same result should pertain here. Class counsel should not get a fee from the $25 million settlement because the Class gets nothing.

3. **THIS HONORABLE COURT SHOULD NOT APPROVE ATTORNEYS' FEES IN EXCESS OF TEN PERCENT**

Objector maintains that class counsel does not deserve a legal fee at this juncture in the litigation especially if the court provides $5 million for on-going litigation. However, if this Honorable Court is inclined to award attorneys' fees at this time, the legal fees must be limited to ten percent (10%) of the net settlement fund. The following argument is presented in the alternative and only in the event the Court deems fit to award any attorneys' fees at this time.

4. **THIS COURT SHOULD APPLY THE STANDARDS OF IN RE WASH. PUB. POWER SUPPLY SYS. SEC. LITIG.**

In the matter In Re Wash. Pub. Power Supply Sys. Sec. Litigation, 19 F.3d 1291 (9th Cir. 1994) ("Wash. Pub."), the Ninth Circuit held that when determining

attorneys' fees, the district court should be guided by the fundamental principle that fee awards out of common funds need to be reasonable under the circumstances. Id. at 1296. Moreover, even though the Ninth Circuit established twenty five percent (25%) of the Settlement Fund as the benchmark for awarding attorneys' fees, the guiding principle remains that the fee award must be reasonable under the circumstances. Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268 (9th Cir. 1989). The Ninth Circuit has instilled the district court with the discretion to award fees in common fund cases based on either the lodestar/multiplier method or the percentage of the fund method. Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000) and Wash. Pub., supra, at 1296.

Here, the class members will not receive any payment from the $25 million settlement fund. Not one dollar. Indeed, the attorneys' stand as the sole financial benefactors of the fund. Because of this, and according to the Supreme Court in Boeing v. Van Gemert, supra, they deserve no attorneys' fees.

5. **A 10% ATTORNEYS' FEE IS MORE THAN REASONABLE IN THIS MATTER**

Objector maintains that the class attorneys should not receive any attorneys' fees at this time. However, in the alternative, should this Honorable Court believe legal fees should be awarded to counsel, Objector contends that fee should be limited to 10% of the net settlement fund taking into account the expenses and litigation cost awarded to handle this litigation. Awarding a fee of 33 1/3% would be equal to $8,333,333.33 from the gross settlement. A fee of 10% would be equal to $2,500,000.00 of the gross settlement fund. However, Objector contends the attorneys' fees must be awarded from the ***net*** Settlement Fund, not the gross amount of $25,000,000. If fees are to be granted, a fee in the amount of ten percent (10%) would be a reasonable fee given the adequate result associated with representing the class on a contingency fee basis along with the high hourly rates incorporated in the lodestar. Such a fee is especially reasonable where, as here, the class members

receive nothing. This is in line with the Ninth Circuit requirement that the fee be reasonable under the circumstances.[1]

### 6. THIS COURT SHOULD FOLLOW THE REASONING THAT PREVAILED IN RE PEOPLESOFT, INC. LITIGATION AND LIMIT COUNSEL FEES TO 10% OF THE SETTLEMENT FUND

Again, Objector argues that the attorneys in this matter are not entitled to any attorneys' fees at this time. However, should this Honorable Court disagree with Objector on this point, the attorneys' fees must be limited to ten percent (10%). The Court can follow the example it set In re Peoplesoft, Inc. Securities Litigation, N.D. Cal., No. C 99-00472 ("Peoplesoft"). There, this Honorable Court granted attorneys' fees, but limited them to approximately seventeen percent (17%) of the settlement fund. The Peoplesoft case settled for $15 million and the attorneys were awarded a fee of $ 2,585,500.75. In Peoplesoft, counsel for the class spent thousands of hours reviewing documents produced in discovery and took multiple depositions of fact witnesses in the case. Still, the Court decided to use the 17% figure because the results obtained for the class were at the low end of reasonableness such that the attorneys did not earn the benchmark fee of 25% of common fund. The Court should likewise limit plaintiffs' counsel's fee award, if any is to be given, to less than $2 million.

### 7. ANY ATTORNEYS' FEES AWARD MUST BE FROM THE NET SETTLEMENT FUND

Class counsel is requesting an award of $5,000,000 to setup a litigation fund. Whatever this Honorable Court determines to be an appropriate fee award (if any), that award must be from the *Net* Settlement Fund not the Gross Fund. This is the

---

[1] Counsel for Objector does not have the total lodestar of the plaintiffs' attorneys in this matter. However, careful scrutiny by the Court will demonstrate that the true lodestar of the attorneys in this matter was substantially less than the $2 million that Objector believes is reasonable in this case.

Case 4:07-cv-05944-JST   Document 2455   Filed 03/19/14   Page 7 of 8

standard in California. In fact, the American Bar Association Action Commission to Improve Tort Liability System recommended that all fees should be from Net Settlement Funds. The reasoning for that recommendation is that a contingent fee is justified as a sharing of the benefit the lawyer has achieved for the client, not of amounts paid to deposition reporters, experts, hotels and airlines. Thus, the better approach is to award a fee from the Net Settlement Funds. See Morganstein v. Esber, 768 F. Supp. 725, 727-28 (C.D. Cal. 1991) (Awarding a fee from the Net Settlement Fund encourages lawyers to be diligent in controlling expenses. Thus, the lawyers and the clients share the same goal which is to maximize the net recovery).

8. **THE ATTORNEYS SHOULD NOT BE GIVEN FREE ACCESS TO MILLIONS OF DOLLARS FOR FURUTRE EXPENSES**

Class counsel is requesting $5,000,000 of the Settlement Funds to be used as a litigation fund to pay for the remaining litigation. Objector maintains this Honorable Court should deny the request for the $5,000,000 litigation fund. In the alternative, if the Court permits class counsel to receive monies to finance future litigation, then those funds should be controlled by the Court, not counsel, so that there is some level of oversight and the class members are protected. This Court should actively scrutinize the expenses class counsel claims will be spent continuing the litigation. Objector believes that if the attorneys are given free access to the litigation fund because it will result in delayed resolution of the case.

### III. CONCLUSION

For all of the foregoing reasons and in the testimony to be submitted at the hearing, Objector respectfully requests that this Honorable Court not approve attorneys' fees at all. However, if the Court believes that class counsel is entitled to attorneys' fees at this juncture, those fees should be limited to ten percent (10%) of the net settlement fund as any greater award would be neither fair nor reasonable.

-7-
Objection to Fee and Expense Request

In addition to the issue of attorneys' fees, this Honorable Court should not award class counsel $5,000,000 to serve as a litigation fund. However, if this Honorable Court is inclined to award a litigation fund, it should not permit class counsel to have unfettered control over the distribution of those funds.

DATED:  March 19. 2014                    LAW OFFICES OF DAVID N. LAKE


                                          By:  _____/s/_____
                                              DAVID N. LAKE
                                              Attorneys for Objector