1

2

3

4

5              IN THE UNITED STATES DISTRICT COURT

6           FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  IN RE: CATHODE RAY TUBE (CRT)   )  Case No. C 07-5944 SC
   ANTITRUST LITIGATION            )  MDL No. 1917
                                   )
9                                  )  ORDER DENYING MOTION TO COMPEL
                                   )
10                                 )
                                   )
11                                 )
                                   )
12 _____  )

13

14  **I.    INTRODUCTION**

15       Now before the Court is the Direct Action Plaintiffs' ("DAPs")

16  motion to compel production of a document from Defendants Chunghwa

17  Picture Tubes, Ltd., LG Electronics, Philips, Samsung SDI, Toshiba

18  Corp., Panasonic, and MTPD (collectively "Defendants").  The

19  parties briefed this motion before the case's Special Master, who

20  referred the matter to the Court.  ECF No. 2432.  The motion is

21  fully briefed, ECF Nos. 2446 ("Mot."), 2449 ("Opp'n"), and

22  appropriate for resolution without oral argument, Civ. L.R. 7-1(b).

23  The motion is DENIED, as explained below.

24

25  **II.   BACKGROUND**

26       The parties are familiar with this case's factual background.

27  The facts germane to this motion are as follows.  The DAPs seek

28  production of a confidential European Commission ("EC") decision

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

(the "Decision"), issued on December 5, 2012, which relates to EC investigations regarding the Defendants' participation in an alleged price-fixing conspiracy regarding color display tubes ("CDTs") and color picture tubes ("CPTs"), two different types of cathode ray tubes ("CRTs").  The EC has not yet published a public or redacted version of the Decision, but a summary of the Decision confirms that these Defendants, plus Technicolor, were found to have participated in price-fixing cartels for CDTs and CPTs, and were collectively fined more than € 1.47 billion.  Mot. Ex. 2 ("Summary") ¶¶ 1, 11-12.  Public statements regarding the Decision state that the two cartels were highly organized, aware of the illegality of their activity, and ultimately successful in imposing harmful price increases on consumers.  Id. Ex. 3 ("EC Press Release").  When the EC issued the Decision, it said that it and the companies involved were trying to establish a public, redacted version "with a view to a quick publication," though as of this Order's signature date, no such public version has been made available.  Id. Ex. 4.

   In 2010, the Direct Purchaser Plaintiffs ("DPPs") served Defendants with a discovery request related to the EC's investigation (since, at that time, the Decision had not yet issued), but Defendants continually refused based on their belief that European Union ("EU") law and EC policy prohibited the disclosure of those documents.  Now the DAPs seek production of the Decision, but Defendants still refuse.  See Opp'n at 1-6.

///

///

///

**III.   DISCUSSION**

The Federal Rules of Civil Procedure authorize party-initiated discovery of any evidence that is relevant to any party's claims or defenses.  Fed. R. Civ. P. 26(b)(1).  However, Rule 26 grants the court discretion to limit discovery on several grounds, including international comity.  See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa, 482 U.S. 522, 544 (1987).  American courts, in supervising pretrial proceedings, should exercise special vigilance to demonstrate due respect for any sovereign interest expressed by a foreign state.  Id. at 546.

"Comity, in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other."  Id. at 544 (citing Hilton v. Guyot, 159 U.S. 113, 163-64 (1895)).  It is the recognition that one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.  Id.; In re Rubber Chems. Antitrust Litig., 486 F. Supp. 2d 1078, 1081 (N.D. Cal. 2007).

The Supreme Court and the Ninth Circuit agree that comity and foreign law alone will not be dispositive when a discovery dispute arises regarding a foreign law's protection of documents sought in a United States court.  See id. at 544 & n.29; Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers, 357 U.S. 197, 208 (1958); Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1474-75 (9th Cir. 1992).  The Court

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

must consider the following factors in determining whether or not foreign law excuses noncompliance with a United States court's discovery orders:

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Aerospatiale*, 482 U.S. at 544 n.28.  This list is not exhaustive. The Ninth Circuit has also considered other factors, including "the extent and the nature of the hardship that inconsistent enforcement would impose upon the person, . . . [and] the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state." *United States v. Vetco, Inc.*, 691 F.2d 1281, 1287 (9th Cir. 1981); *Richmark*, 959 F.2d at 1475.  Defendants do not dispute the request's specificity, but they contend that no other factor counsels granting the DAPs' motion.  *Id.*

First, courts are less inclined to ignore a foreign state's concerns if the outcome of litigation "does not stand or fall on the present discovery order," or if the evidence sought is cumulative.  *Richmark*, 959 F.2d at 1475; *In re Rubber Chems.*, 486 F. Supp. 2d at 1082.  The DAPs argue that the Decision is important because it concerns the formation and duration of the conspiracy, the conspiracy's geographic reach, the price-fixing activities at the conspiracy's center, and the conspirators' attempts to conceal the conspiracy's existence.  Mot. at 4.  Defendants contend that

the Decision is irrelevant, because it concerns the European CDT and CPT market and applies EU, not US, law.  Opp'n at 2-3.

The Court finds the Decision is relevant, because the DAPs' and other plaintiffs' allegations in this case have always concerned the international character of the alleged CRT conspiracy.  Applicable law would clearly be different in a foreign jurisdiction, but the Decision could include relevant facts regardless of any foreign legal analysis.  This weighs for production.

Second, the DAPs do not dispute the fact that the Decision originated from the EU, not the US.  This weighs against production due to the EU's sovereign interest in governmental information produced within its borders.  See In re Rubber Chems., 486 F. Supp. 2d at 1083; see also In re Air Cargo Shipping Svcs. Antitrust Litig., 278 F.R.D. 51, 52-53 (E.D.N.Y. 2010).  Further, Defendants do not appear to have released the Decision in other litigation, and they have continually relied on the application of EU confidentiality law in the present dispute.  This also weighs against production.

Third, the parties dispute the availability of the Decision outside this demand for production.  Defendants contend that the Decision will be available as soon as the EC completes its preparation of a public version.  Opp'n at 4.  They also note that fact discovery does not close for six months, during which time publication of the Decision is likely.  Id. at 4-5.  The DAPs argue that no alternative means of learning the Decision's detailed findings are available, and that since Defendants' cooperation is necessary for production of a public version of the Decision,

United States District Court
For the Northern District of California

5

**United States District Court**
For the Northern District of California

1   Defendants have an incentive to proceed very slowly in order to

2   avoid producing the Decision in this litigation.  Mot. at 4, 7.

3   The Court finds that this factor weighs in favor of production,

4   because there does not appear to be an alternative means of

5   accessing the Decision without contravening EU law and policy.

6       However, since the Court explains below that the EU's

7   interests override the need for production in this case, the Court

8   notes here that the speedy development of a public version of the

9   Decision is highly important.  Defendants state that publication of

10  a non-confidential version of the Decision within six months is

11  "likely."  Opp'n at 4.  Because they already appear to be on notice

12  of the importance of that publication, Defendants are encouraged to

13  proceed apace with their collaboration in the EC's public version

14  of the Decision.

15      Finally, the Court must balance international comity with the

16  policies of the Federal Rules of Civil Procedure in order to

17  determine the extent to which noncompliance with the discovery

18  request would undermine important United States interests, compared

19  to how compliance could undermine important interests of the state

20  where the information is located.  Aerospatiale, 482 U.S. at 544.

21  In evaluating the interests on both sides, the Court considers both

22  "expressions of interest by the foreign state" and "indications of

23  the foreign state's concern for confidentiality prior to the

24  controversy," as well as the United States' interest in vindicating

25  American plaintiffs' rights.  Richmark, 959 F.2d at 1477.

26      The DAPs contend that the investigation behind the Decision is

27  over, that they do not seek the underlying investigative materials

28  (only the Decision itself), and that the EC's delay in issuing a

6

public version of the Decision are all factors favoring production. Mot. at 4.  The DAPs also argue that any confidentiality concerns are lessened where few Defendants remain in the CRT business and a protective order on the case shields any designated information from the public.  Id.

Defendants argue that EU law and EC policy are very clear here: disclosure of the Decision would violate foreign law, frustrate the EC's investigations of antitrust cases, and subject Defendants to harsh sanctions at home and abroad.  In support of this, they supply a letter from Eric van Ginderachter, Director of the EC's Directorate General for Competition ("DG Competition"), which the Supreme Court has recognized as "the European Union's primary antitrust law enforcer."  Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 250 (2004); Opp'n Ex. D ("DG Competition Letter").

The Court finds that comity outweighs discovery in this instance.  In terms of law, Article 337 of the Treaty of the Functioning of the European Union and Article 28 of EC Regulation 1/2003 require the EC to refrain from disclosing information acquired or exchanged pursuant to the EU's competition laws.  EU law also potentially subjects parties who disclose such confidential information to official sanctions, including being reported to their home jurisdictions' bars.  In terms of policy, the DG Competition Letter states that even though its investigation as to these Defendants is over for purposes of the Decision, it objects to the Decision's disclosure because its leniency program "is a cornerstone of its cartel detection and enforcement," whose "optimal functioning requires that a party that comes forward and

**United States District Court**
For the Northern District of California

cooperates with the Commission does not find itself worse-off vis-à-vis the non-cooperating cartel members as a result of doing so." DG Competition Letter at 3.  The EC also relies on cooperation from United States law enforcement agencies, including the Department of Justice, and while the Letter does not say as much, the cooperation of United States and EU agencies is an aspect of comity.  See In re Rubber Chems., 486 F. Supp. 2d at 1084 (noting that a similar letter from the DG Competition objecting to disclosure of a similar decision could impact US-EU cooperation in international antitrust enforcement).

The Court therefore finds that the final factor weighs against disclosure, and that it also outweighs the benefit the DAPs might receive in obtaining the Decision.  However, as noted above, Defendants seem optimistic about the EC's publication of a public version of the Decision before the close of discovery in this case. They are advised to assist in that task.

**IV.   CONCLUSION**

For the reasons explained above, the Direct Action Plaintiffs' motion to compel is DENIED without prejudice.


IT IS SO ORDERED.


Dated: March 26, 2014        _____

                             UNITED STATES DISTRICT JUDGE