# EXHIBIT A

1  DAVID M. LISI (SBN 154926)
   Email: lisid@howrey.com
2  HOWREY LLP
   1950 University Avenue, 4th Floor
3  East Palo Alto, CA 94303
   Telephone: (650) 798-3530
4  Facsimile: (650) 798-3600

5  JOHN M. TALADAY (pro hac vice)
   Email: taladayj@howrey.com
6  HOWREY LLP
   1299 Pennsylvania Ave NW
7  Washington, DC 20004
   Telephone: (202) 383-6564
8  Facsimile:  (202) 383-6610

9  ETHAN E. LITWIN (pro hac vice)
   Email: litwine@howrey.com
10 HOWREY LLP
   Citigroup Center
11 153 E. 53rd Street, 54th Floor
   Telephone: (212) 896-6500
12 Facsimile: (212) 896-6501

13 Attorneys for KONINKLIJKE PHILIPS ELECTRONICS N.V.,
   PHILIPS ELECTRONICS NORTH AMERICA
14 CORPORATION, PHILIPS ELECTRONICS INDUSTRIES
   (TAIWAN), LTD. AND PHILIPS DA AMAZONIA
15 INDUSTRIA ELECTRONICA LTDA.

16                 UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18                  SAN FRANCISCO DIVISION

19 _____
                                              )  Case No. C-07-5944-SC
20 In re:  CATHODE RAY TUBE (CRT)             )
   ANTITRUST LITIGATION                       )  MDL No. 1917
21                                            )
                                              )  **KONINKLIJKE PHILIPS ELECTRONICS**
22                                            )  **N.V., PHILIPS ELECTRONICS NORTH**
                                              )  **AMERICA CORPORATION, PHILIPS**
23 _____   )  **ELECTRONICS INDUSTRIES (TAIWAN),**
                                              )  **LTD. AND PHILIPS DA AMAZONIA**
24 This Document Relates to:                  )  **INDUSTRIA ELECTRONICA LTDA.'S**
                                              )  **MOTION TO DISMISS THE DIRECT**
25 ALL ACTIONS                                )  **PURCHASER PLAINTIFFS' AND THE**
                                              )  **INDIRECT PURCHASER PLAINTIFFS'**
26                                            )  **CONSOLIDATED AMENDED**
                                              )  **COMPLAINTS**
27                                            )
                                              )  Date:    August 4, 2009
28                                            )  Time:    9:00 am
   _____   )  Before:  The Honorable Charles A. Legge

1

**TABLE OF CONTENTS**

2   NOTICE OF MOTION AND MOTION ..................................................................................... 1

3   MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 2

4   PRELIMINARY STATEMENT ............................................................................................... 2

5   ISSUES TO BE DECIDED ....................................................................................................... 4

6   STATEMENT OF FACTS ......................................................................................................... 4

7       The Alleged Conspiracy Concerns Tubes Alone ................................................................ 4

8       Plaintiffs' Allegations Against the Philips Defendants ...................................................... 6

9   ARGUMENT .............................................................................................................................. 8

10  I.    PLAINTIFFS DO NOT ALLEGE SUFFICIENT FACTS TO STATE A
         CLAIM AGAINST ANY PHILIPS DEFENDANT .................................................... 8

11
         A.    Plaintiffs' Utter Disregard for Corporate Separateness Flies in the
12            Face of Nearly a Century of Uniform Jurisprudence to the Contrary .......................... 10

13                1.    Plaintiffs Fail to Plead Facts Demonstrating Unity of
                       Interest ............................................................................................................. 11
14
                  2.    Plaintiffs Fail to Allege that Any Particularized Inequity
15                     Will Result ....................................................................................................... 14

16       B.    Plaintiffs' Agency Theory of Liability Fails as a Matter of Law ................................. 14

17  II.    PLAINTIFFS' CLAIMS ALSO ARE TIME-BARRED AS THE PHILIPS
         DEFENDANTS EFFECTIVELY WITHDREW FROM THE ALLEGED
18       CONSPIRACY IN 2001 ............................................................................................. 16

19  III.   PLAINTIFFS CANNOT SATISFY THEIR BURDEN OF
         ESTABLISHING JURISDICTION OVER EITHER PHILIPS DA
20       AMAZONIA OR PEIT ................................................................................................. 18

21  CONCLUSION ........................................................................................................................ 22

22

23

24

25

26

27

28

-i-
KPE'S, PENAC'S, PEIT'S AND PHILIPS DA AMAZONIA'S MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED AMENDED COMPLAINTS – CASE NO.: 3:07-CV-5944 SC

DM_US:22152242_1

# TABLE OF AUTHORITIES

## CASES

*AT&T v. Compagnie Bruxelles Lambert*,
   94 F.3d 586 (9th Cir. 1996) ............................................................................. 11, 14

*AccuImage Diagnostics Corp v. TeraRecon, Inc.*,
   260 F. Supp. 2d 941 (N.D. Cal. 2003) .................................................................... 12

*Asahi Metal Industry Co. v. Superior Court of California.*,
   480 U.S. 102 (1987) .................................................................................................. 20

*Ashcroft v. Iqbal*,
   No. 07-015, 556 US ___,
   2009 U.S. LEXIS 3472 (May 18, 2009) ............................................................. 13, 17

*Bancroft & Masters, Inc. v. Augusta National, Inc.*,
   223 F.3d 1082 (9th Cir. 2000) .................................................................................. 19

*Bell Atlantic v. Twombly*,
   550 U.S. 540 (2007) ................................................................................................... 8

*Brand v. Menlove Dodge*,
   796 F.2d 1070 (9th Cir. 1986) .................................................................................. 19

*Brennan v. Concord EFS, Inc.*,
   369 F. Supp. 2d 1127 (N.D. Cal. 2005) ..................................................................... 9

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ............................................................................................ 18, 19

*Burnet v. Clark*,
   287 U.S. 410 (1932) .................................................................................................. 13

*Coremetrics, Inc. v. AtomicPark.com LLC*,
   370 F. Supp. 2d 1013 (N.D. Cal. 2005) .................................................................... 19

*In re Currency Conversion Fee Antitrust Litig.*,
   265 F. Supp. 2d 385 (S.D.N.Y. 2003) ...................................................................... 12

*E&J Gallo Winery v. EnCana Energy Services, Inc.*,
   No. CV F 03-5412 AWI LJO, 2008 WL 2220396
   (C.D. Cal. May 27, 2008) .................................................................................... 10, 15

*Flynt Distributing Co. v. Harvey*,
   734 F.2d 1389 (9th Cir. 1984) .................................................................................. 20

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) .................................................................................. 19

*Gauvin v. Trombatore*,
   682 F. Supp. 1067 (N.D. Cal. 1988) ........................................................................... 9

*Helicopteros Nacionales de Colombia, S. A. v. Hall,*
    466 U.S. 408 (1984) ................................................................................................ 19

*Hokama v. E.F. Hutton & Co.,*
    566 F. Supp. 636 (C.D. Cal. 1983) ................................................................. 12, 13

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ................................................................................................ 20

*Jimena v. UBS AG Bank, Inc.,*
    No. CV-F-07-367 OWW/GSA, 2008 WL 2774676
    (E.D. Cal. July 15, 2008) ....................................................................................... 12

*Katzir's Floor & Home Design, Inc. v. M-MLS.COM,*
    394 F.3d 1143 (9th Cir. 2004) ...................................................................... 11, 13, 14

*Lovesy v. Armed Forces Benefit Ass'n,*
    No. C 07-2745 SBA, 2008 U.S. Dist. LEXIS 93479
    (N.D. Cal. Mar. 13, 2008) ...................................................................................... 21

*MacDonald v. Grace Church Seattle,*
    No. C05-0747C, 2006 U.S. Dist. LEXIS 75192
    (W.D. Wash. Apr. 14, 2006) ................................................................................... 15

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.,*
    198 F.3d 823 (11th Cir. 1999) ...................................................................... 16, 17, 18

*Mountain View Pharmacy v. Abbott Laboratories,*
    630 F.2d 1383 (10th Cir. 1980) ................................................................................ 9

*Neilson v. Union Bank of California, N.A.,*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......................................................... 10, 12, 14

*Nordberg v. Trilegiant Corp.,*
    445 F. Supp. 2d 1082 (N.D. Cal. 2006) ............................................................. 11, 13

*Pacific Atlantic Trading Co. v. M/V Main Express,*
    758 F.2d 1325 (9th Cir. 1985) ................................................................................. 20

*Qwest Communications Corp. v. Herakles LLC,*
    No. 2:07-cv-00393-MCE-KJM, 2008 WL 783343
    (E.D. Cal. Mar. 20, 2008) .................................................................................. 11, 12

*Shell v. Shell Oil,*
    165 F. Supp. 2d 1096 (C.D. Cal. 2001) .................................................................. 20

*Sherman v. British Leyland Motors, Ltd.,*
    601 F.2d 429 (9th Cir. 1979) ................................................................................... 10

*Sonora Diamond Corp. v. Super. Ct.,*
    83 Cal. App. 4th 523 (2000) ................................................................................... 10

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ................................................................................... 21

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ............................................................. 9, 10

*Terracom v. Valley National Bank,*
    49 F.3d 555 (9th Cir. 1995) ....................................................................... 19, 21

*United States v. Bestfoods,*
    524 U.S. 51 (1998) ....................................................................................... 10, 12

*United States v. Borelli,*
    336 F.2d 376 (2d Cir. 1964) .............................................................................. 18

*United States v. Nippon Paper Industries Co.,*
    62 F. Supp. 2d 173 (D. Mass. 1999)) ............................................................... 17

*United States v. Standard Beauty Supply Stores, Inc.,*
    561 F.2d 774 (9th Cir. 1977) ............................................................................. 14

*United States v. United States Gypsum Co.,*
    438 U.S. 422 (1978) ........................................................................................... 16

*Wady v. Provident Life & Accident Insurance Co. of America,*
    216 F. Supp. 2d 1060 (C.D. Cal. 2002) ....................................................... 11, 12

*Walton v. Mead,*
    No. C 03-4921 CRB, 2004 WL 2415037 (N.D. Cal. Oct. 28, 2004) ................... 15

**STATUTES**

United States Code
    Title 15, Section 1 ............................................................................................... 8

United States Code
    Title 15, Section 15(b) ....................................................................................... 15

**RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 8 ..................................................................................................................... 8

Federal Rules of Civil Procedure
    Rule 12(b)(2) ................................................................................................... 1, 20

Federal Rules of Civil Procedure
    Rule 12(b)(5) ......................................................................................................... 1

Federal Rules of Civil Procedure
    Rule 12(b)(6) ......................................................................................................... 1

**TREATIES AND OTHER AUTHORITIES**

1 William Meade Fletcher,
    *Fletcher Cyclopedia of Law of Private Corporation* § 43 (rev. ed. 2008) .............. 10

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that on August 4, 2009 at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Charles A. Legge, United States District Court Judge (Ret.), Special Master, in the San Francisco Resolution Center of JAMS, Two Embarcadero Center, Suite 1500, San Francisco, California, 94111, Defendants Koninklijke Philips Electronics N.V. ("KPE"), Philips Electronics North America Corporation ("PENAC"), Philips Electronics Industries (Taiwan), Ltd. ("PEIT") and Philips da Amazonia Industria Electronica Ltda. ("Philips da Amazonia" and, collectively with KPE, PENAC, and PEIT, the "Philips Defendants")[1] will and hereby do move the Court to dismiss, with prejudice, the Direct Purchaser Plaintiffs' Consolidated Amended Complaint (the "DP Am. Compl.") and Indirect Purchaser Plaintiffs' Consolidated Amended Complaint (the "IP Am. Compl." and, collectively with the DP Am. Compl., the "Amended Complaints")[2] pursuant to Federal Rules of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted, and 12(b)(2), for lack of personal jurisdiction over Philips Electronics Industries (Taiwan), Ltd. and Philips da Amazonia Industria Electronica Ltda.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof; the Declarations of Ivy P. Y. Lin and Philips da Amazonia, each sworn to on May 18, 2009 (the "PEIT Decl." and the "Philips da Amazonia Decl.", respectively), in support thereof; and such further evidence and argument as the Court may permit.

---

[1] As of today, neither PEIT nor Philips da Amazonia have been served with either Amended Complaint. On May 11, 2009, PEIT and Philips da Amazonia agreed, under protest and reserving all rights, to accept service through its sister company PENAC. Such service was never effected. Despite lack of service, PEIT and Philips da Amazonia join this brief as per the Court's April 24, 2009 Order regarding briefing at Appendix A (including PEIT and Philips da Amazonia as part of the Philips Defendants' individual brief). However, due to Plaintiffs' failure to serve either PEIT or Philips da Amazonia, PEIT and Philips da Amazonia each move to dismiss the Amended Complaints pursuant to Fed. R. Civ. Pro. 12(b)(5). Moreover, PEIT and Philips da Amazonia move to dismiss the Amended Complaints, in the event that such service has been effected as of the date of argument, pursuant to Rule 12(b)(5) on the grounds that service on PENAC, in which neither PEIT nor Philips da Amazonia have shareholdings and which does not report to either PEIT or Philips da Amazonia, is not effective service.

[2] As the Philips Defendants' arguments apply in equal measure to both Amended Complaints, both the indirect purchaser and direct purchaser plaintiffs are referred to herein as "Plaintiffs."

DM_US:22152242_1

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiffs allege in their Amended Complaints a broad conspiracy comprising nearly 50 separate entities, to fix or otherwise control the prices of cathode-ray tubes ("CRTs" or "Tubes") between 1995 and 2007. Those defendants include KPE, PENAC, PEIT and Philips da Amazonia, which the Plaintiffs aggregate under the label "Philips".[3] The Philips Defendants are not properly in this action as they are not in the business of manufacturing, marketing or selling Tubes in the United States.[4] Plaintiffs have not alleged that they have ever purchased Tubes from any of the Philips Defendants. Indeed, for much of the alleged Class Period, PENAC, PEIT and Philips da Amazonia were themselves *direct purchasers* of Tubes; KPE, which at all times was a holding company, neither manufactured nor sold Tubes at any time. In an effort to sidestep these realities, Plaintiffs engage in pleading games to drag these entities into a case where they do not belong.

Plaintiffs' claims against each of the Philips Defendants should be dismissed, with prejudice, for the following reasons:

*First*, the Amended Complaints lack sufficient individualized allegations against specific Philips Defendants to provide the adequate notice of the claims made against them. Rather than plead facts specific to each of the Philips Defendants individually, Plaintiffs improperly conflate the entire Philips corporate structure by defining KPE, PENAC, PEIT and Philips da Amazonia as "Philips." By so doing, Plaintiffs impermissibly dispense with any effort to allege any facts establishing direct liability on the part of KPE, PENAC, PEIT or Philips da Amazonia individually. Further, Plaintiffs' attempt to impose liability vicariously on each of the Philips Defendants is improper as a matter of law; their boilerplate allegations are devoid of any facts justifying a departure from the sanctity of corporate form and the strong legal presumption against piercing the corporate veil and imposing alter

---

[3]   Although KPE, PENAC, PEIT and Philips da Amazonia reject this conflation, they will refer to themselves collectively as the "Philips Defendants" so as to avoid confusion with the Plaintiffs' terminology.

[4]   Although PENAC historically manufactured and sold Tubes (the "Tube Business") in the United States, it exited that business in June 2001.

KPE'S, PENAC'S, PEIT'S AND PHILIPS DA AMAZONIA'S  MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED AMENDED COMPLAINTS – CASE NO.: 3:07-CV-5944 SC
DM_US:22152242_1

1  ego liability.  Similarly defective is Plaintiffs' unabashed "kitchen sink" contention that the Philips

2  Defendants are vicariously liable for the actions of their undefined "agents."  These allegations, which

3  contain no facts whatsoever to justify the imposition of vicarious liability, are the very paradigm of

4  conclusory pleading.

5      *Second*, Plaintiffs' concession that *none* of the Philips Defendants manufactured or sold Tubes

6  after June 2001 establishes that, to the extent any conspiracy involving the Philips Defendants had

7  existed, the Philips Defendants effectively withdrew more than two years prior to the commencement

8  of the statute of limitations period.  Plaintiffs fail to allege a basis to toll the statute of limitations as to

9  the Philips Defendants: the Philips Defendants cannot be held responsible for any other entity's actions

10  to fraudulently conceal the alleged conspiracy after June 2001; further, as demonstrated in the Joint

11  Motions,[5] Plaintiffs do not allege fraudulent concealment prior to that time with the requisite

12  specificity as to the Philips Defendants.  Consequently, Plaintiffs' putative claims are time-barred.

13      *Third*, this Court lacks personal jurisdiction over PEIT and Philips da Amazonia, the latest

14  Philips entities that Plaintiffs have brought into these actions.  PEIT and Philips da Amazonia are two

15  subsidiaries of KPE that have no connection to the United States whatsoever.  Neither of these

16  companies: (i) have any place of business in the United States; (ii) manufacture any products in the

17  United States; (iii) are registered as a foreign corporation to do business in the United States; (iv) have

18  any offices, inventory, real estate, personal property, or employees in the United States; or, (v)

19  pay any taxes in the United States.  These factual realities, established in the accompanying

20  declarations, demonstrate that no basis exists for this Court to assert either general or specific

21  jurisdiction over PEIT and Philips da Amazonia.

22      In sum, there is no basis for Plaintiffs having named any of the Philips Defendants in the

23  Amended Complaints and all claims against them should be dismissed with prejudice.

24

25

26  [5]  Joint Motion to Dismiss Direct Purchaser Plaintiffs' Consolidated Amended Complaint and Joint
    Motion to Dismiss Indirect Purchaser Plaintiffs' Consolidated Amended Complaint (together, the
27  "Joint Motions").

28

KPE'S, PENAC'S, PEIT'S AND PHILIPS DA AMAZONIA'S  MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED AMENDED COMPLAINTS – CASE NO.: 3:07-CV-5944 SC
DM_US:22152242_1

**ISSUES TO BE DECIDED**

1.      Have Plaintiffs adequately pled specific facts sufficient to find that KPE, PENAC, PEIT and/or Philips da Amazonia are directly liable for the acts of the alleged Tube conspiracy?

2.      Is the mere allegation that KPE owned shares of alleged conspirator LPD prior to April 1, 2007 sufficient to establish *alter ego* liability against KPE for the alleged acts of that joint venture and, if so, is Plaintiffs' generic allegation that KPE "controlled and dominated" PENAC, PEIT, and Philips da Amazonia sufficient to impute a second level of alter ego liability on those companies?

3.      Is Plaintiffs' general declaration that each Defendant acted as the agent of the other Defendants sufficient to hold the Philips Defendants vicariously liable for the acts of these unidentified and undefined "agents"?

4.      Did the Philips Defendants, by exiting the Tube Business in 2001 and, thereafter, engaging in purchases of Tubes from competing third parties, effectively withdraw from the alleged conspiracy prior to the commencement of the statute of limitations period?

5.      Do PEIT and Philips da Amazonia have sufficient contacts in the United States to justify the exercise of jurisdiction where these two foreign companies do not manufacture any products in the United States; have no place of business in the United States; have not registered as a foreign corporation to do business in the United States; have no offices, inventory, real estate, or personal property, in the United States; and do not pay taxes in the United States?

**STATEMENT OF FACTS**

The Alleged Conspiracy Concerns Tubes Alone

The Amended Complaints allege that Defendants participated in a price-fixing conspiracy.  DP Am. Compl. ¶¶ 139, 144, 188, 197; IP Am. Compl. ¶ 144, 152, 192.  According to Plaintiffs, the alleged conspiracy involved more than 500 bilateral and multilateral meetings throughout Asia and Europe.  DP Am. Compl. ¶¶ 134-138; IP Am. Compl. ¶¶ 140-144.[6]  The Amended Complaints,

---

[6] Plaintiffs therefore admit that all of the alleged meetings occurred outside of the U.S.  DP Am. Compl. ¶ 134; IP Am. Compl. ¶¶ 141, 150, 160.

KPE'S, PENAC'S, PEIT'S AND PHILIPS DA AMAZONIA'S  MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED AMENDED COMPLAINTS – CASE NO.: 3:07-CV-5944 SC
DM_US:22152242_1

however, contain a central and fatal flaw: while Plaintiffs concede that the alleged conspiracy concerned only Tubes, Plaintiffs do not allege that they purchased this allegedly price-fixed product.

*First*, Plaintiffs admit that the scope of the alleged conspiracy was restricted to Tubes only. The Amended Complaints do not allege that Defendants, or anyone else, conspired to fix the prices of televisions or computer monitors ("Finished Products"); rather, Plaintiffs allege that "[t]he overall CRT conspiracy affected worldwide prices . . . that Defendants charged for CRT Products." DP Am. Compl. ¶ 139. The phrase "CRT Products", as defined and used in the Amended Complaints, is a semantic sleight of hand. This absurdly broad product market attempts to aggregate three, if not four, non-substitutable products: (i) CRTs[7] – the Tubes themselves, along with (ii) finished televisions, and (iii) finished computer monitors. Plaintiffs, however, *never* specifically allege any misconduct regarding the pricing of televisions or computer monitors in any of the more than 500 paragraphs which comprise the Amended Complaints. Rather, all of the specific allegations in the Amended Complaints concern *Tubes only*. DP Am. Compl. ¶ 139 ("The overall CRT conspiracy affected worldwide prices . . . that Defendants charged for CRT Products."); DP Am. Compl. ¶ 188 ("Defendants' collusion is evidenced by unusual price movements in the CRT market."); DP Am. Compl. ¶ 197 ("The stability of the price of *CRTs* was accomplished by the collusive activities alleged above.") (emphasis added); IP. Am. Compl. ¶ 223 ("The Defendants concluded that in order to make their CRT price increases stick, they needed to make the increase high enough that their direct customers (CRT TV and monitor makers) would be able to justify a corresponding price increase to customers (for e.g., retailers and computer OEMs)."). Moreover, the various regulatory investigations on which the Plaintiffs base their claims concern only Tubes. DP Am. Compl. ¶¶ 126-133; IP Am. Compl. ¶¶ 203-205, 213.

---

[7] As Plaintiffs' admit, the Tubes used in televisions, color picture tubes ("CPTs"), are materially different from "specialized" Tubes used in computer monitors ("CDTs"). IP Am. Compl. ¶ 14; DP Am. Compl. ¶ 103. Thus, even an "all CRTs" market would be over-inclusive, let alone Plaintiffs' unwieldy market definition that encompasses both raw components and finished consumer products.

*Second*, Plaintiffs further concede that while the alleged conspirators may have *considered* the prices of televisions and monitors, the alleged conspirators never reached any agreement concerning the prices of Finished Products. DP Am. Compl. ¶ 144 ("Defendants also considered the internal pricing of products containing CRTs *in agreeing upon the prices at which CRTs were set*.") (emphasis added); DP Am. Compl. ¶ 146 ("The analysis often included *consideration of downstream prices for televisions, computer monitors*, or similar products and *how they would affect the price ranges being collusively set*.") (emphasis added); IP Am Compl. ¶ 155 ("Each of the participants in these meetings knew, and in fact discussed, the *significant impact that the price of CRTs had on the cost of the finished products into which they were placed*.") (emphasis added).

In other words, Plaintiffs do not allege that the Defendants fixed the prices of television and monitors that they bought; rather, Plaintiffs apparently only allege that the prices that they paid for these Finished Products reflect a pass through by one or more distribution levels of the purportedly inflated prices of the raw component Tubes that these consumer-ready Finished Products contain. IP. Am. Comp. ¶ 226 ("The margins for CRT TV and monitor makers are sufficiently thin that price increases of CRTs force them to increase the prices of their CRT Products.").

*Finally*, despite conceding that the alleged conspiracy concerned Tubes only, Plaintiffs *never* specifically allege that they purchased Tubes.[8]

Plaintiffs' Allegations against the Philips Defendants

Although Plaintiffs treat the various Philips Defendants as if they were one legal entity called "Philips", the Philips Defendants are, rather, four distinct and separate companies:

> 1. KPE is a holding company that has employed, over the duration of the alleged Class Period, an average of approximately 13 individuals. KPE has never manufactured or sold anything, let alone Tubes or Finished Products.

---

[8] Although Plaintiffs claim to have purchased "CRT Products" from one or more defendants, Plaintiffs do not appear to have purchased any Tubes, the alleged price-fixed product. In an effort to paper over this obvious deficiency in their Amended Complaints, and as set forth more fully in the Joint Motions, Plaintiffs define an indefensible market that encompasses both Tubes and Finished Products by merging two completely separate levels of production and sales (*i.e.*, both the raw component CRTs and the consumer-ready televisions and monitors) into one made-to-order term applicable to this litigation alone: "CRT Products."

KPE'S, PENAC'S, PEIT'S AND PHILIPS DA AMAZONIA'S MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED AMENDED COMPLAINTS – CASE NO.: 3:07-CV-5944 SC
DM_US:22152242_1

2.  PEIT, a Taiwanese company, is a subsidiary of KPE.  DP Am. Compl. ¶¶ 51, 55; IP Am. Compl. ¶¶ 54, 58.  PEIT's display components division manufactured and sold Tubes prior to June 2001.  PEIT's consumer electronics division sold Finished Products.  PEIT never manufactured any products in the United States.  PEIT does not have today, and has never had, any U.S. presence.

3.  Philips da Amazonia, a Brazilian company, is also an indirect subsidiary of KPE.  DP Am. Compl. ¶¶ 51, 56; IP Am. Compl. ¶¶ 54, 59.  Philips da Amazonia's display components division manufactured and sold Tubes prior to June 2001.  Philips da Amazonia's consumer electronics division sold Finished Products in Brazil.  Philips da Amazonia never manufactured any products in the United States.  Philips da Amazonia does not have today, and has never had, any U.S. presence.

4.  PENAC, a U.S. corporation, is an indirect subsidiary of KPE.  DP Am. Compl. ¶¶ 51, 53; IP Am. Compl. ¶¶ 54, 55.  PENAC's display components division manufactured and sold Tubes in the United States prior to June 2001.  PENAC's consumer electronics division sold Finished Products in the U.S.

As Plaintiffs acknowledge, in June 2001, and pursuant to an agreement with LG Electronics, KPE divested the entirety of its Tube Business to a new company, namely LPD.  DP Am. Compl. ¶ 51; IP Am Compl. ¶ 54.  LPD was a separate legal company from any of the Philips Defendants and was individually incorporated under the laws of The Netherlands.  *Id*.  Plaintiffs allege that after June 2001, LPD, and its successor company LP Displays, directly participated in the alleged conspiracy. DP Am. Compl. ¶ 175; IP Am. Compl. ¶ 172.

In contrast to the specific allegations concerning LPD and LP Displays, Plaintiffs do not specifically allege that any of the Philips Defendants attended any of the more than 500 multilateral and bilateral meetings alleged in the Amended Complaints. DP Am. Compl. ¶ 164 ("Philips participated [in the alleged meetings] through [KPE] *or* its subsidiaries into 2001 and participated thereafter through [LPD].") (emphasis added).  Indeed, Plaintiffs concede that PENAC and Philips da Amazonia never attended any of the alleged meetings; instead, Plaintiffs allege – without any supporting facts – that PENAC and Philips da Amazonia were "represented" at these meetings. DP Am. Compl. ¶ 165; IP Am. Compl. ¶ 171.  Through these vague and conclusory allegations, Plaintiffs impermissibly conflate an entire global corporate structure on the novel theory that when "employees . . . of entities within the corporate family engaged in conspiratorial meetings [they did so] on behalf of every company in that family." IP Am. Compl. ¶ 188.

**ARGUMENT**

**I.     PLAINTIFFS DO NOT ALLEGE SUFFICIENT FACTS TO STATE A CLAIM AGAINST ANY PHILIPS DEFENDANT**

The Amended Complaints each assert a single cause of action for violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. [9]  They do so in the most conclusory manner, stating broad generalities without discussing the specifics of any alleged meetings or overt acts.  As discussed in the Joint Motions, such allegations fall short of the Rule 8 pleading standard as interpreted by the U.S. Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 540 (2007).  With respect to the Philips Defendants, Plaintiffs fail to allege specific facts sufficient to attribute the purported misconduct to any of these four companies.

Plaintiffs claim that each of the Philips Defendants was a primary actor in the alleged conspiracy.  DP Am. Compl. ¶¶ 164, 165; IP Am. Compl. ¶¶ 170, 171.  But Plaintiffs allege no facts to back up this assertion; instead, they resort to the shop-worn pleading tactic of making broad allegations against "Philips," an entity stitched together for the sole purpose of this litigation and purportedly comprising four distinct legal entities: KPE, PENAC, PEIT, and Philips da Amazonia.  Simply put, Plaintiffs never – in their 148 pages of complaints encompassing over 500 paragraphs – allege *any facts* of wrongdoing against any individual Philips Defendant. DP Am. Compl. ¶¶ 51-57, 164-165; IP Am. Compl. ¶¶ 54-60, 170-171.

Instead of including specific factual allegations as to KPE, PENAC, PEIT and Philips da Amazonia individually, Plaintiffs broadly assert that "Philips" attended more than 100 multilateral and bilateral meetings with competitors at which the prices of Tubes were fixed.  DP Am. Compl. ¶¶ 164-165; IP Am. Compl. ¶¶ 170-171.  Plaintiffs do not allege, however, any specific facts as to which – if any – of the four Philips Defendants attended those meetings, or what specifically any of the Philips Defendants agreed to do that was in violation of the antitrust laws.  Judge Illston, in the *TFT-LCD*

---

[9] As for the Indirect Purchaser Plaintiffs' additional claims under various state laws, these claims should be dismissed as against the Philips Defendants for the reasons set forth in the Joint Motions.

1  antitrust class action currently pending in the Northern District, held under similar facts as those here

2  that plaintiffs cannot conflate corporate structure to make general allegations against an entire

3  corporate family as if it were a single entity.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp.

4  2d 1109, 1117 (N.D. Cal. 2008) ("The Court agrees that general allegations as to . . . a single corporate

5  entity such as 'Hitachi' is insufficient to put specific defendants on notice of the claims against

6  them.").[10] Plaintiffs' allegation that when "employees of entities within the corporate family engaged

7  in conspiratorial meetings [they did so] on behalf of every company in that family", IP Am. Compl. ¶

8  188, is directly contrary to Judge Illston's holding in *In re TFT-LCD*.

9  Lacking any allegations against any of the Philips Defendants individually, the Amended

10  Complaints do not meet their minimum legal pleading obligation as to each of these parties. As a

11  result, the individual Philips Defendants lack any meaningful opportunity to respond to Plaintiffs'

12  claims against them, if any.  Unsurprisingly, courts do not condone such methods of subliminal

13  pleading and consistently reject pleadings like the Amended Complaints here.  *See*, *e.g.*, *Mountain*

14  *View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388 (10th Cir. 1980) (affirming dismissal where

15  plaintiffs failed to make specific allegation, as to each defendant individually, that they had

16  participated in the alleged conspiracy); *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1136

17  (N.D. Cal. 2005) (same); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (same).

18  Plaintiffs seek in vain to remedy this fatal defect by asserting two different legal theories: (1)

19  that any one the Philips Defendants may be held liable for the actions of any of the other Philips

20  Defendants; (2) that that each Defendant "acted as the agent of" of every other Defendant.  DP Am.

21  Compl. ¶¶ 84, 154; IP Am. Compl. ¶¶ 113, 188. Both theories fail as a matter of law under the facts

22  alleged in the Amended Complaints.

23

24

25

---

26  [10]  Although Judge Illston granted Plaintiffs leave to amend their complaints in *In re TFT-LCD*, such
27  leave would be futile here because Plaintiffs' claims against the Philips Defendants are, in any event,
    time-barred.  *See* Section II, *infra*.

28

**A.**  **Plaintiffs' Utter Disregard for Corporate Separateness Flies in the Face of Nearly a Century of Uniform Jurisprudence to the Contrary**

The corporate form is widely recognized as an efficient and desirable means of organizing businesses. Central to its appeal is the fact that "a corporation is regarded as a legal entity, separate and distinct from its stockholders . . . with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 538 (2000); *see also E&J Gallo Winery v. EnCana Energy Servs., Inc.*, No. CV F 03-5412 AWI LJO, 2008 WL 2220396, at *5 (C.D. Cal. May 27, 2008) ("'The law allows corporations to organize for the purpose of isolating liability of related corporate entities.'") (quoting *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1234 (N.D. Cal. 2004)). Thus, it is bedrock corporate law that one company is not liable for the acts of its subsidiaries or other affiliated corporations. 1 William Meade Fletcher, *Fletcher Cyclopedia of Law of Private Corporations* § 43 (rev. ed. 2008); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 441 (9th Cir. 1979) (relationship between subsidiary and parent is insufficient to hold one liable for the antitrust violations of the other); *see also In re TFT-LCD*, 586 F. Supp. 2d at 1117 (complaint must allege that "*each individual defendant joined the conspiracy and played some role in it*") (emphasis added). The only exception is where one company is deemed to be the *alter ego* of the other.

The *alter ego* doctrine was developed to "prevent[] individuals or other corporations from misusing corporate laws by the device of a sham corporate entity formed from the purpose of committing fraud or other misdeeds." *Sonora*, 83 Cal. 4th at 538. However, recognizing the value of limited liability, courts have declared *alter ego* to be "an extreme remedy, sparingly used." *Id.* at 539. Thus, courts in this circuit have uniformly held that it is the plaintiff's burden to overcome the presumption of the separate existence of the corporate entity. *See, e.g., Neilson v. Union Bank of Cal., N.A.,* 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003) ("In order to overcome the presumption of separateness afforded to related corporations, [a plaintiff] is required to plead . . . specific facts supporting its claims, not mere conclusory allegations.") (internal quotation marks omitted).

In the instant case, Plaintiffs advocate employing the *alter ego* doctrine in an unprecedented way, namely to collapse an entire corporate family of parent and subsidiaries into a single enterprise called "Philips". Indeed, no reported case of any federal court has ever held a subsidiary liable for the acts of the parent or a sister corporation, absent sufficient factual allegations warranting piercing the corporate veil. Yet Plaintiffs brazenly suggest that this Court should hold, contrary to nearly a century of uniform jurisprudence, that a company is liable for the acts of each and every one of their corporate affiliates, parents, and subsidiaries, without a single factual allegation to justify ignoring corporate separateness.

Rather, in order to pursue *alter ego* liability under the controlling law of this circuit, Plaintiffs must plead facts which demonstrate: (i) that such unity of interest and ownership exists among two of the Philips Defendants so that the individuality of the corporation and its parent has ceased, and (ii) that inequitable results will result if Philips Defendants are treated as separate companies. *See Qwest Commc'ns Corp. v. Herakles LLC*, No. 2:07-cv-00393-MCE-KJM, 2008 WL 783343, at **3-4 (E.D. Cal. Mar. 20, 2008); *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1101-02 (N.D. Cal. 2006); *see also Katzir's Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1149 (9th Cir. 2004). They have failed to do so.

### 1. Plaintiffs Fail to Plead Facts Demonstrating Unity of Interest

The "unity of interest" factor requires that Plaintiffs show more than the mere existence of inter-corporate connections. Rather, Plaintiffs must show extreme abuse of the corporate form itself such that one entity has been essentially eviscerated by the other or has been subjected completely to the other's control. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996) (plaintiffs must show "such unity of interest and ownership that the separate personalities of [the corporation and the individual] no longer exist"); *Wady v. Provident Life & Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1068 (C.D. Cal. 2002) (same). Courts in this Circuit have specifically identified the factors necessary to establish "unity of interest": plaintiffs must cite facts to support a finding that (1) the corporation was inadequately capitalized, (2) corporate formalities were ignored – *e.g.*, stock was not issued, minutes were not kept, officers and directors were not elected, corporate

1   records were not segregated, and (3) the corporations were hopelessly commingled – *e.g.*, assets

2   commingled, joint bank accounts kept, parent used corporate shell of the subsidiary to obtain goods

3   and services. *See Qwest*, 2008 WL 783343, at *4; *Jimena v. UBS AG Bank, Inc.*, No. CV-F-07-367

4   OWW/GSA, 2008 WL 2774676, at *7 (E.D. Cal. July 15, 2008).

5       Thus, where, as here, plaintiffs fail to make specific and detailed factual allegations to support

6   holding a defendant liable under an *alter ego* theory, courts decline to apply this exception to corporate

7   form. *See Wady*, 216 F. Supp. 2d at 1067 (dismissing complaint where plaintiff failed to allege that

8   parent treated assets of subsidiary as its own, commingled funds with its subsidiary, shared officers or

9   directors with its subsidiary, or that the subsidiary was undercapitalized); *Neilson*, 290 F. Supp. 2d at

10  1116 (dismissing complaint with prejudice where plaintiffs failed to sufficiently allege facts to support

11  both elements of *alter ego* liability); *Jimena*, 2008 WL 2774676, at *8 (dismissing complaint because

12  "[p]laintiff[s'] reliance on the ownership connections between UBS AG and UBS FS is simply not

13  sufficient to allege a claim against UBS FS based on alter ego"); *see also In re Currency Conversion

14  Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 426 (S.D.N.Y. 2003) (dismissing complaint where complaint

15  alleged that parent "'exercised such dominion and control over its subsidiaries . . . that it is liable

16  according to the law for the acts of such subsidiaries under the facts alleged in this Complaint'"

17  because "[t]hese purely conclusory allegations cannot suffice to state a claim based on veil-piercing or

18  alter-ego liability, even under the liberal notice pleading standard.").

19      Here, Plaintiffs attempt to satisfy the "unity of interest" factor with the same boilerplate,

20  conclusory allegations that have been decisively rejected by every court in this circuit that has

21  considered this issue.  Plaintiffs' allegations that KPE "dominated and controlled the finances, policies

22  and affairs" of its various subsidiaries constitute the entirety of Plaintiffs' allegations as to the Philips'

23  Defendants supposed "unity of interest."   Courts in this circuit have routinely and repeatedly

24  dismissed complaints based on conclusory allegations of dominion and control.[11]  *See Hokama v. E.F.*

26  [11]  Plaintiffs fare no better by claiming that any of the Philips Defendants are liable for the acts of
LPD merely by virtue of KPE's shareholdings in that company.  Once again, black letter law instructs
27  that shareholders are not liable for the actions of the company. *See AccuImage Diagnostics Corp v.
TeraRecon, Inc.*, 260 F. Supp. 2d 941, 951-52 (N.D. Cal. 2003)); *cf. Bestfoods,* 524 U.S. at 61-62
28                                                                                   (Continued...)

KPE'S, PENAC'S, PEIT'S AND PHILIPS DA AMAZONIA'S  MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED AMENDED COMPLAINTS – CASE NO.: 3:07-CV-5944 SC
DM_US:22152242_1

*Hutton & Co.*, 566 F. Supp. 636, 647 (C.D. Cal. 1983) (holding that "plaintiffs cannot circumvent the requirements for secondary liability by blandly alleging that Madgett, Consolidated, and Frane are 'alter egos' of other defendants accused of committing the primary violations"). As the *Hokama* court reasoned: "This point is well taken. . . . If plaintiffs wish to pursue such a theory of liability, they must allege the elements of the doctrine. Conclusory allegations of alter ego status such as those made in the present complaint are not sufficient." *Id.*; *see also Katzir's*, 394 F.3d at 1149 (quoting 1 William Meade Fletcher, et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 41.35, at 671 (perm. ed., rev. vol. 1999) (holding that "'[e]ven if the sole shareholder is entitled to all of the corporation's profits, and *dominated and controlled the corporation*, that fact is insufficient by itself to make the shareholder personally liable'") (emphasis added); *Nordberg*, 445 F. Supp. 2d at 1102 (dismissing complaint with prejudice because plaintiffs' "conclusory" allegations that past parent controlled subsidiary and had a majority representation on subsidiary's board are "insufficient to support the contention that a subsidiary is a mere instrumentality" of the parent). [12]

Plaintiffs accordingly fail to allege facts sufficient to such unity of interest among two of the Philips Defendants such that that their separate personalities no longer exist. For this reason alone,

---

(...Continued)

("Thus, it is hornbook law that 'the exercise of 'control' which stock holdings gives to the stockholders . . . will not create liability beyond the assets of the subsidiary."). Thus, that LPD was a joint venture and KPE owned 50% of it shares is completely irrelevant. *Burnet v. Clark*, 287 U.S. 410, 415 (1932) ("A corporation and its stockholders are generally to be treated as separate entities.").

Plaintiffs also allege that the Philips Defendants are liable for the acts of LP Displays. *See* DP Am. Compl. ¶ 164 (alleging that "Philips" participated in the alleged conspiracy through LP Displays through 2007); IP Am. Compl. ¶ 170. Yet, as Plaintiffs concede, LP Displays was a completely independent company. DP Am. Compl. ¶ 51; IP Am. Compl. ¶ 61. Plaintiffs offer no explanation whatsoever as to why any of the Philips Defendants are directly liable for the acts of an independent third party.

[12] As the Supreme Court stated unequivocally today, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft* v. *Iqbal*, 2009 U.S. LEXIS 3472, at No. 07-1015, 556 U.S. ___, 2009 U.S. LEXIS 3472, at **29-30 (May 18, 2009). Alleging that KPE "dominated and controlled" its subsidiaries does not satisfy Plaintiffs' pleading obligations; Plaintiffs must allege *facts* that, if assumed to be true, establish what is otherwise a bald legal conclusion that is not entitled to any assumption of truth. *Id.* at p. 17.

---

DM_US:22152242_1

1  Plaintiffs cannot pursue an *alter ego* theory of liability to cure their pleading deficiencies as to the

2  Philips Defendants.

3  **2.  Plaintiffs Fail to Allege that Any Particularized Inequity Will Result**

4  Plaintiffs who allege *alter ego* liability must also establish that an inequity will result unless the

5  alleged misconduct is imputed to the defendant.  *AT&T*, 94 F.3d at 591.  Absent such a showing, the

6  corporate form must be respected.  *Id.*  Inequity in the *alter ego* context means some form of bad faith

7  conduct on the part of the defendant will remain unremedied unless the court pierces the corporate veil.

8  *United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977) (alter ego

9  doctrine is applied where conduct "amounting to bad faith" makes it inequitable for the defendant to

10  hide behind the corporate veil).  Importantly, "[t]he injustice that allows a corporate veil to be pierced

11  is not a general notion of injustice; rather, it is the injustice that results only when corporate

12  separateness is illusory."  *Katzir's*, 394 F.3d at 1149.  In other words, the injustice requires the

13  existence of "unity of interest."  Failure to adequately allege this element bars the invocation of the

14  *alter ego* doctrine.  *See, e.g., Neilson*, 290 F. Supp. 2d at 1117 (dismissing complaint where plaintiffs

15  allege only that "an inequitable result would occur" if *alter ego* liability was not imposed).Plaintiffs

16  fail to, and cannot, allege that an inequitable result will occur if this Court refuses to pierce the

17  corporate veils of the Philips Defendants.  This is an independent reason why Plaintiffs cannot pursue

18  an *alter ego* theory of liability to cure their pleading deficiencies as to the Philips Defendants.

19  **B.  Plaintiffs' Agency Theory of Liability Fails as a Matter of Law**

20  Plaintiffs' alternate approach to salvage their claims against KPE, PENAC, PEIT and Philips da

21  Amazonia is an assertion that each of the Philips Defendants acted as the 'agent' of all other

22  Defendants with respect to the acts of the alleged conspiracy.  DP Am. Compl. ¶ 84; IP Am. Compl. ¶

23  113.[13]  This allegation is the epitome of a legal conclusion; Plaintiffs do not even purport to allege any

---

[13] Plaintiffs' allegation that "[e]ach [domestic] Defendant that is a subsidiary of a foreign parent acts as the United States agent for CRTs and/or CRT Products made by its parent company," DP Am. Compl. ¶ 84, is inapplicable to PENAC because KPE is a holding company with no manufacturing assets of its own.

KPE'S, PENAC'S, PEIT'S AND PHILIPS DA AMAZONIA'S  MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED AMENDED COMPLAINTS – CASE NO.: 3:07-CV-5944 SC
DM_US:22152242_1

1   facts that would justify invoking agency theory in this case. In short, Plaintiffs cannot simply allege an

2   agency relationship without also alleging specific facts supporting their claims. *See*, *e.g.*, *Walton v.*

3   *Mead*, No. C 03-4921 CRB, 2004 WL 2415037, at *4 (N.D. Cal. Oct. 28, 2004) (dismissing claims

4   based on agency theory of liability); *MacDonald v. Grace Church Seattle*, No. C05-0747C, 2006 U.S.

5   Dist. LEXIS 75192, at *11 (W.D. Wash. Apr. 14, 2006) (dismissing claim based on agency theory of

6   liability as plaintiff did not allege "any of the traditional indicia of an agency relationship (such as

7   consent by the alleged agent that another shall act on his behalf, and control of the alleged agent by the

8   principal)")(internal quotation marks omitted). In *Walton*, the plaintiffs alleged that "each of the

9   defendants herein was, at all times relevant, to this action, the agent . . . of the remaining defendants

10  and was acting within the course and scope of that relationship." *Id.* at *4. Here, Plaintiffs allegations

11  are essentially a carbon copy of the allegations that were dismissed in *Walton* as too conclusory to

12  withstand a motion to dismiss.

13      Rather, to establish vicarious liability through an agency theory, Plaintiff must allege facts

14  sufficient to establish: (i) a manifestation by the principal that the agent shall act for him; (ii) that the

15  agent has accepted the undertaking; and, (iii) that there is an understanding between the parties that the

16  principal is to be in control of the undertaking. *See E&J Gallo Winery*, 2008 WL 2220396, at *6.

17  Plaintiffs neglect to allege any of these elements, let alone any facts to support them, in the Amended

18  Complaints.

19      In sum, Plaintiffs' agency theory of liability is woefully insufficient and legally defective.

20  Consequently, for the same reasons discussed in the *alter ego* section above, the Amended Complaint's

21  agency liability theory fails.

22                  *       *       *       *

23      Having failed to plead sufficient facts to establish a basis for holding any of the Philips

24  Defendants liable for the acts of the alleged conspiracy, Plaintiffs' claims against the Philips

25  Defendants should be dismissed in their entirety. Moreover, as set forth in the following Section,

26  because Plaintiffs' claims are time-barred against the Philips Defendants in any event, the dismissal

27  should be with prejudice.

28

**II.    PLAINTIFFS' CLAIMS ALSO ARE TIME-BARRED AS THE PHILIPS DEFENDANTS EFFECTIVELY WITHDREW FROM THE ALLEGED CONSPIRACY IN 2001**

Even if this Court were to find that the Amended Complaints adequately state a claim against any of the Philips Defendants, Plaintiffs' claims are nonetheless time-barred.  Plaintiffs' federal claims are subject to a four year statute of limitations.  15 U.S.C. § 15b.  The first complaint filed against KPE and PENAC was filed on November 26, 2007.  *Crago, Inc. v. Chunghwa Picture Tubes, Ltd.,* No. 07-5944 (N.D. Cal. filed Nov. 26, 2007).  The first complaints filed against either PEIT or Philips da Amazonia were these Amended Complaints, which were filed on March 16, 2009.  Docket Nos. 436 and 437.  Thus, to be timely, Plaintiffs claims must have accrued no earlier than November 26, 2003 as regards KPE and PENAC, and March 16, 2005 as regards PEIT and Philips da Amazonia.

It is black letter law that a defendant cannot be held liable for the acts of an antitrust conspiracy if that defendant withdrew from the conspiracy prior to the commencement of the statute of limitations period.  *See United States v. U.S. Gypsum Co.*, 438 U.S. 422 (1978).  As the Supreme Court held in *Gypsum*, a defendant may effect a withdraw from a conspiracy through affirmative acts that are inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach its former co-conspirators.  *Id.* Here, Plaintiffs' Amended Complaints clearly demonstrate that the Philips Defendants effectively withdrew from the alleged conspiracy in June 2001, *more than two years before the commencement of the statute of limitations period*.

Plaintiffs concede that the Philips Defendants divested the entirety of the Tube Business to LPD in June 2001.  DP Am. Compl. ¶ 51; IP Am. Compl. ¶ 54.  Plaintiffs further concede that, following this divestiture, none of the Philips Defendants attended any of the alleged cartel meetings. *See* DP Am. Compl. ¶ 164-165 and IP Am. Compl. ¶ 170-171 (alleging that from 2001 on, "Philips" participated in the alleged conspiracy "through" LPD).  Where, as Plaintiffs concede here, an alleged cartel member divested the business involved in the alleged conspiracy to a third party, courts have held that the divestiture alone was sufficient to effectively withdraw from a price-fixing conspiracy. *See, e.g., Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823 (11th Cir. 1999).  In the *Morton's Market* case, the defendants were alleged to have participated in a scheme to rig bids for

-16-

1   contracts to supply milk to schools. *Id.* at 826. One of the defendants, Pet, had sold its dairy business

2   one-year prior to the commencement of the statute of limitations period. *Id.* at 837. The court

3   observed that with the sale of the dairy, which was announced publicly, Pet stopped operating in the

4   business (production and sale of milk) that was the subject of the alleged conspiracy, and did nothing

5   more to assist or participate in the price fixing activities of other milk producers, *i.e.*, dairies. *Id.* at

6   839. As a result, the court held that Pet effectively withdrew from the conspiracy as of the date of the

7   sale prior to the commencement of the statute of limitations period, and dismissed all claims against

8   Pet as time-barred. *Id.* The same result redounds here. After June 2001, none of the Philips

9   Defendants manufactured or sold Tubes, the subject of the alleged price-fixing conspiracy; all of those

10  operations were the property of LPD (later LP Displays). DP Am. Compl. ¶ 51; IP Am. Compl. ¶ 54.

11        Further, Plaintiffs allege that the Philips Defendants, following their exit from the Tube

12  Business, continued to produce and sell Finished Products. DP Am. Compl. ¶ 209; IP Am. Compl.

13  197. Accordingly, post-divestiture -- which encompasses the entirety of the statute of limitations

14  period -- PEIT, PENAC and Philips da Amazonia continued to purchase Tubes, exclusively from third

15  parties, for its television and computer monitor business. To the extent that the prices of such Tubes

16  were fixed, Plaintiffs' pass-on theory of recovery presumes that PEIT, PENAC and Philips da

17  Amazonia were overcharged by these third parties for all of their purchases of Tubes after June 2001.

18  Thus, the Philips Defendants' economic incentives conflicted with those of the alleged conspirators –

19  just as in any other customer/supplier situation. Plaintiffs' allegations that the Philips Defendants

20  continued to support efforts to price-fix Tubes by their third-party suppliers after the divestiture of the

21  Tube Business is, simply put, implausible.[14] For this reason, courts have held that the "'resumption of

22  competitive behavior . . . [is] sufficient to communicate withdrawal or general abandonment of a price-

23  fixing conspiracy.'" *See United States v. Nippon Paper Indus. Co.*, 62 F. Supp. 2d 173, 190 (D. Mass.

24  _____

25  [14] *See Ashcroft v. Iqbal,* 2009 U.S. LEXIS 3472, at *29 ("A claim has facial plausibility when the
    plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant
26  is liable for the misconduct alleged. . . . Where a complaint pleads facts that are 'merely consistent
    with' a defendant's liability, it 'stops short of the line between possibility and plausibility of
27  entitlement to relief.'").

28

1999) (the "'resumption of competitive behavior . . . [is] sufficient to communicate withdrawal or

general abandonment of a price-fixing conspiracy'") (quoting *Gypsum*, 438 U.S. at 464-65).

These facts from the Plaintiffs' own Amended Complaints demonstrate that, by divesting the

Tube Business and thereafter engaging in competitive purchases of Tubes from the alleged

conspirators, the Philips Defendants, even assuming that such a conspiracy ever existed, effectively

withdrew from that alleged conspiracy in June 2001, triggering the statute of limitations period as to

any claims against them. *See Morton's Market*, 198 F.3d at 837 ("The statute of limitations begins to

run upon the conspirator's withdrawal from the conspiracy."). Thus, the statute of limitations period

expired in 2005,[15] more than 2 years before the first complaint was filed against any of the Philips

Defendants.[16] Plaintiffs' claims are therefore time-barred and should be dismissed with prejudice.

## III. PLAINTIFFS CANNOT SATISFY THEIR BURDEN OF ESTABLISHING JURISDICTION OVER EITHER PHILIPS DA AMAZONIA OR PEIT

Finally, this Court lacks personal jurisdiction over PEIT and Philips da Amazonia, both of

which Plaintiffs recently added as defendants.

Federal courts may only exercise personal jurisdiction over a defendant where the defendant

has sufficient specific or general contacts with the forum. Where that defendant "expressly aimed"

conduct at the forum and where the cause of action "arise[s] out" of or has a "substantial connection"

to the defendant's contacts with the forum, a federal court may exercise specific personal jurisdiction

over the defendant with respect to the claim(s) asserted. *See Burger King Corp. v. Rudzewicz*, 471

---

[15] Plaintiffs that reside in states providing a six year statute of limitation period under state antitrust laws are likewise barred from pursuing this action. Since the first complaint against any of the Philips Defendants was filed on November 26, 2007, the claims must have accrued no earlier than November 26, 2001, nearly six months after the Philips Defendants effectively withdrew from the alleged conspiracy.

[16] Plaintiffs' allegations that the statute of limitations, as regards the Philips Defendants, was tolled as a result of alleged fraudulent concealment of the alleged conspiracy is also a red herring. The Philips Defendants cannot be charged with fraudulently concealing a conspiracy from which they effectively withdrew. *United States v. Borelli*, 336 F.2d 376, 388 (2d Cir. 1964) (cartel member who withdraws from cartel is no longer member of cartel and incurs no obligations or liabilities from subsequent acts of cartel). Moreover, and as set forth in the Joint Motions, Plaintiffs have not pled fraudulent concealment with sufficient particularity in any event and with no particularity to any Philips Defendant either prior to or after exiting the Tube Business.

U.S. 462, 472 (1985) (a defendant only has adequate notice that it may be subject to specific personal

jurisdiction if that defendant has "'purposefully directed' his activities at residents of the

forum")(citation omitted); *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995) (Specific

jurisdiction requires showing that "'but for' the contacts between the defendant and the forum state, the

cause of action would not have arisen.").[17]

By comparison, in order to invoke a federal court's broader and more comprehensive general

jurisdiction over a defendant, a plaintiff must demonstrate that the defendant's contact with the forum

state that are "continuous and systematic." *See Helicopteros Nacionales de Colombia, S. A. v. Hall*,

466 U.S. 408, 415-16 (1984). Incidental or occasional contact with the forum is not enough. *See id*. at

418 ("mere purchases" in, and regular visits to, the forum insufficient to confer *in personam* jurisdiction

in a cause of action unrelated to those contacts); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330-31

(9th Cir. 1984) (no general jurisdiction over defendants despite several visits and purchases in forum

which included choice of law provision favoring forum, and extensive communication with the forum).

"The standard for establishing general jurisdiction is 'fairly high,' and requires that the defendant's

contacts be of the sort that approximate physical presence." *Bancroft*, 223 F.3d at 1086 (9th Cir. 2000)

(citation omitted).[18]

The United States Supreme Court has made clear that the touchstone for exercising either

specific or general jurisdiction is whether a defendant has "purposefully avail[ed]" itself of the

pertinent forum, which "ensures that a defendant will not be haled into a jurisdiction solely as a result

of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp.*, 471 U.S. at 475 (quoting

---

[17] Even where such contacts exist, the exercise of personal jurisdiction must be "reasonable." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1088-89 (9th Cir. 2000); *see also Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986) ("We examine seven factors to determine whether exercise of jurisdiction is reasonable: existence of an alternative forum; burden on the defendant; convenience and effectiveness of relief for the plaintiff; most efficient judicial resolution of the dispute; conflict with sovereignty of the defendant's state; extent of purposeful interjection; and the forum state's interest in the suit.").

[18] *See also Coremetrics, Inc. v. AtomicPark.com LLC*, 370 F. Supp. 2d 1013, 1017 (N.D. Cal. 2005) ("This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.") (internal quotation marks omitted).

---

KPE'S, PENAC'S, PEIT'S AND PHILIPS DA AMAZONIA'S MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED AMENDED COMPLAINTS – CASE NO.: 3:07-CV-5944 SC
DM_US:22152242_1

1   *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  The Supreme Court has also stressed

2   that particular caution must be taken when asserting personal jurisdiction over a foreign defendant,

3   noting that the "unique burdens placed upon one who must defend oneself in a foreign legal system

4   should have significant weight." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114

5   (1987).  Constitutional due process is satisfied when a nonresident defendant has "certain minimum

6   contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of

7   fair play and substantial justice.'" *International Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting

8   *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

9       Plaintiffs' sole basis for invoking this Court's jurisdiction (whether general or specific) over

10  Philips da Amazonia and PEIT is a single bland and mechanical allegation that each "sold and

11  distributed CRT Products either directly or through its subsidiaries or affiliates throughout the United

12  States." DP Am. Compl. ¶¶ 8, 55, 56; IP Am. Compl. ¶¶ 5, 58, 59.

13      The attached declarations demonstrate that this assertion is false.  Philips da Amazonia and

14  PEIT do not manufacture any products in the United States; have no place of business in the United

15  States; have not registered as a foreign corporation to do business in the United States; have no

16  offices, inventory, real estate, or personal property, in the United States; and do not pay taxes in

17  the United States.  Philips da Amazonia Decl. ¶¶ 6-12; PEIT Decl. ¶¶ 5-12.   In light of these facts, this

18  Court cannot credit Plaintiffs' unsupported allegation regarding these entities' purported contacts with

19  the United States.[19]  *Shell v. Shell Oil*, 165 F. Supp. 2d 1096, 1103 (C.D. Cal. 2001) ("Where the

20  motion challenges the facts alleged, it must be decided on the basis of competent evidence (e.g.,

21  declarations and discovery materials), and the court cannot assume the truth of the allegations in a

22  pleading contradicted by a sworn affidavit.").  "[M]ere 'bare bones' assertions of minimum contacts

23  with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a

24  _____

25  [19]  Once a defendant has raised a jurisdictional defense under Fed. R. Civ. P. 12(b)(2), plaintiffs bear
    the burden of establishing jurisdictional facts.  *Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1392

26  (9th Cir. 1984), and this Court's analysis of the jurisdiction question requires resolution of factual
    issues outside the pleadings, *i.e.*, whether *in personam* jurisdiction actually lies.  *See Pac. Atl. Trading*

27  *Co. v. M/V Main Express*, 758 F.2d 1325, 1327 (9th Cir. 1985).

28

1  plaintiff's pleading burden" once personal jurisdiction has been challenged.  *Swartz v. KPMG LLP*,

2  476 F.3d 756, 766 (9th Cir. 2007).

3       Further, Plaintiffs are not entitled to jurisdictional discovery as a matter of course.  "Where a

4  plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in

5  the face of specific denials made by defendants, the Court need not permit even limited discovery."

6  *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (internal quotation marks omitted);

7  *see also Lovesy v. Armed Forces Benefit Ass'n*, No. C 07-2745 SBA, 2008 U.S. Dist. LEXIS 93479, at

8  *40 (N.D. Cal. Mar. 13, 2008) ("In order to obtain discovery on jurisdictional facts, the plaintiff must

9  at least . . . come forward with 'some evidence' tending to establish personal jurisdiction over the

10  defendant.") (citation omitted).  Plaintiffs allege no specific facts supporting a claim that either of these

11  companies have any contacts with the United States and thus lack any basis for requesting

12  jurisdictional discovery.

13       The record demonstrates that neither PEIT nor Philips da Amazonia engage in any activities in

14  the United States. Therefore, there is no evidentiary basis for this Court to assert general or specific

15  personal jurisdiction over these companies in this matter, and the Court must dismiss PEIT and Philips

16  da Amazonia from this action.

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For the foregoing reasons, the Court should enter an Order dismissing KPE, PENAC, PEIT and Philips da Amazonia from the action with prejudice.

Dated: May 18, 2009

Respectfully submitted,

HOWREY LLP


_____/s/ David M. Lisi_____
DAVID M. LISI

1950 University Avenue, 4th Floor
East Palo Alto, CA 94303
Telephone: (650) 798-3530
Facsimile: (650) 798-3600
Email: lisid@howrey.com

*Attorneys for Defendants Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd. and Philips da Amazonia Industria Electronica Ltda.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | ) ) ) |
| | ) |
| This Document Relates To: | ) ) |
| DIRECT PURCHASER ACTIONS and INDIRECT PURCHASER ACTIONS | ) ) ) ) |

Case No.: 3:07-cv-5944 SC

MDL No. 1917

**DECLARATION OF IVY P. Y. LIN**

I, Ivy P. Y. Lin, declare and state as follows:

1.    I am employed as Senior Counsel of Philips Electronics Industries (Taiwan), Ltd. ("PEIT") and have held this position since November 2003. The information contained herein is based on my own personal knowledge, my review of reasonably available documents prepared and/or maintained by PEIT in the ordinary course of business and upon information provided to me by employees responsible for and with knowledge of the business and accounting records of PEIT. If called upon to testify as a witness, I can competently testify that to the best of my knowledge and belief the matters set forth herein are true.

2.    This declaration is made in support of the Defendant PEIT's Motion to Dismiss for Lack of Personal Jurisdiction.

3.    PEIT is a Taiwanese corporation formed and organized under the laws of Taiwan.

4.    PEIT has its principal place of business at 15F, 3-1 Yuanqua St., Nangang District, Taipei, Taiwan.

5.    PEIT does not have any subsidiaries in the United States.

1  6.    PEIT maintains its own board of directors.  PEIT also has its own corporate officers

2  who run PEIT on a day-to-day basis.

3  7.    PEIT is not registered to do business in the United States.

4  8.    PEIT does not have any:  (a) offices; (b) manufacturing plant; (c) personnel; (d) post

5  office box; or (e) telephone listing in the United States.  PEIT also does not have any bank accounts in

6  the United States.

7  9.    PEIT does not own or lease any real property in the United States.

8  10.    PEIT does not pay taxes in the United States.

9  11.    The books and records of PEIT are kept outside of the United States.

10  12.    PEIT does not engage in any manufacturing activities for Cathode Ray Tubes or any

11  other product in the United States.

12  I declare under penalty of perjury under the laws of the United States of America that the

13  foregoing is true and correct.  Executed on May 18 , 2009.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

Declaration

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION ) ) ) ) | Case No.: 3:07-cv-5944 SC MDL No. 1917 |
| This Document Relates To: ) ) ) | |
| DIRECT PURCHASER ACTIONS and INDIRECT PURCHASER ACTIONS ) ) ) | |

**DECLARATION OF PHILIPS DA AMAZONIA INDUSTRIA ELECTRONICA LTDA.**

On behalf of Philips da Amazonia Industria Electronica Ltda. ("Philips da Amazonia"), I declare and state as follows:

     1.    I, Renato dos Santos Donaton, am a Director of Philips da Amazonia. I have been employed by Philips da Amazonia since October 2000. The information contained herein is based on my own personal knowledge, my review of reasonably available documents prepared and/or maintained by Philips da Amazonia in the ordinary course of business and upon information provided to me by employees responsible for and with knowledge of the business and accounting records of Philips da Amazonia. I can competently testify that to the best of my knowledge and belief the matters set forth herein are true.

     2.    This declaration is made in support of Defendant Philips da Amazonia's Motion to Dismiss for Lack of Personal Jurisdiction.

     3.    Philips da Amazonia is a Brazilian corporation with its principal place of business at Av Torquato Tapajos 2236, 1 andar (parte 1), Flores, Manaus, AM 39048-660, Brazil.

     4.    Philips da Amazonia is an indirect subsidiary of Koninklijke Philips Electronics N.V. ("KPE").

Declaration of Philips da Amazonia
Case No.: 3:07-cv-5944 SC -- MDL No. 1917

1      5.    Philips da Amazonia has an independent board of directors and its own officers who

2 manage day-to-day operations.

3      6.    Philips da Amazonia does not have any manufacturing plants or offices in the United

4 States.

5      7.    Philips da Amazonia does not pay taxes in the United States and does not own or lease

6 any real property in the United States.

7      8.    Philips da Amazonia does not have a telephone listing or mailing address in the United

8 States.

9      9.    Philips da Amazonia is not registered to do business in the United States.

10      10.    Philips da Amazonia maintains its own corporate records, payroll, and financial plans

11 and statements.  Also, the books and records of Philips da Amazonia are kept in Brazil.

12      11.    Philips da Amazonia does not have any subsidiaries in the United States.

13      12.    Philips da Amazonia does not engage in any manufacturing activities for Cathode Ray

14 Tubes or any other product in the United States.

15      I declare under penalty of perjury that the foregoing is true and correct, to the best of my

16 knowledge.  Executed on May 18, 2009.

17

18 _____

19

20

21

22

23

24

25

26

27

28                             2