Mario N. Alioto (56433)
Lauren C. Capurro  (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com;
laurenrussell@tatp.com

*Lead Counsel for the
Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-SC |
|  | MDL No. 1917 |
|  | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' FINAL APPROVAL OF CLASS  ACTION SETTLEMENT WITH DEFENDANTS  LG ELECTRONICS INC.; LG ELECTRONICS USA, INC.; AND LG ELECTRONICS TAIWAN TAIPEI CO., LTD.** |
| This Document Relates to:

All Indirect Purchaser Actions | Hearing Date:  April 18, 2014
Time: 10:00 a.m.
Courtroom 1
Judge:  Hon. Samuel Conti |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I. INTRODUCTION....................................................................................................1

II. PROCEDURAL HISTORY ....................................................................................2

III. SUMMARY OF SETTLEMENT TERMS ...........................................................5

  A. Proposed Settlement...................................................................................5

  B. Consideration ..............................................................................................7

  C. Release ........................................................................................................7

IV. ARGUMENT ..........................................................................................................8

  A. Class Action Settlement Procedure...........................................................8

  B. The Notice Plan Comports with Due Process............................................9

  C. The Court Should Finally Certify the Settlement Class.............................9

  D. The Settlement Should be Finally Approved...........................................12

  E. Objections .................................................................................................14

  F. Exclusions ................................................................................................15

V. CONCLUSION .....................................................................................................15

1

<strong>TABLE OF AUTHORITIES</strong>

2

**CASES**

3

*Amchem Prods., Inc. v. Windsor*
   521 U.S. 591 (U.S. 1997 ............................................................................. 10, 11

*Amone v. Aveiro*
   Civ. No. 04-00508 ACK-BMK, 2007 U.S. Dist. LEXIS 63631
   at **6-7 (D. Haw. Aug. 27, 2007) ............................................................... 15

*Carnegie v. Household Int'l Inc.*
   376 F.3d 656, 660 (7th Cir. 2004) ............................................................... 10

*Churchill Village, L.L.C. v. General Electric*
   361 F.3d 566, 575 (9th Cir. 2004) ............................................................... 14

*Cotton v. Hinton*
   559 F.2d 1326, 1330 (5th Cir. 1977) ........................................................... 14

*Ellis v. Naval Air Rework Facility*
   87 F.R.D. 15, 18 (N.D. Cal. 1980), *affd,* 661 F.2d 939 (9th Cir. 1981) ....................................... 13

*Feder v. Elec. Data Sys. Corp.*
   248 Fed. Appx. 579, 580 (5th Cir. 2007) ...................................................... 15

*Fisher Bros. v. Mueller Brass Co.*
   630 F. Supp. 493, 499 (E.D. Pa. 1985) ........................................................ 13

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ............................................................... 10, 14

*In re Heritage Bond Litig.*
   MDL No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555,
   at *10 (C.D. Cal. June 10, 2005) ................................................................. 13

*In re Indus. Diamonds Antitrust Litig.*
   167 F.R.D. 374, 383 (S.D.N.Y. 1996)11……………………………………...11

*In re IPO Sec. Litig.*
   226 F.R.D. 186, 190, 195 (S.D.N.Y. 2005)……………………………………...10

*In re Linerboard Antitrust Litig.*
   203 F.R.D. 197, 206 (E.D. Pa. 2001)……………………………………………10

*In re Linerboard Antitrust Litig.*
   321 F. Supp. 2d 619, 629 (E.D. Pa. 2004) .................................................... 14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Master Key Antitrust Litig.*
  528 F.2d 5, 12 n.11 (2d Cir. 1975)…………………………………………………………11

*In re NASDAQ Market-Makers Antitrust Litig.*
  169 F.R.D. 493, 517-18 (S.D.N.Y. 1996).................................................................. 11

*In re NASDAQ Market-Makers Antitrust Litig.*
  187 F.R.D. 465, 475 (S.D.N.Y. 1998)...................................................................... 13

*In re Paine Webber Partnerships Litig.*
  171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 199

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
  264 F.R.D. 603 (N.D. Cal. Nov. 25, 2009)........................................................ 10, 11

*In re Sumitomo Copper Litig.*
  189 F.R.D. 274, 283 (S.D.N.Y. 1999)...................................................................... 13

*Knight v. Red Door Salons, Inc.*
  No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149,
  at *8 (N.D. Cal. Feb. 2, 2009) ................................................................................ 12

*M Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*
  671 F. Supp. 819, 822 (D. Mass. 1987)................................................................... 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV Inc.*
  221 F.R.D. 523, 528 (C.D. Cal. 2004).................................................................... 14

*Officers for Justice v. Civil Serv. Comm'n*
  688 F.2d 615 (9th Cir. 1982) .................................................................................. 12

*Pallas v. Pacific Bell*
  No. C-89-2373 DLJ, 1999 WL 1209495, at *8 (N.D.Cal. 1999) ................................ 14

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*
  209 F.R.D. 159, 167 (C.D. Cal. 2002).................................................................... 11

*Torrisi v. Tucson Elec. Power Co.*
  8 F.3d 1370, 1375 (9th Cir. 1993) .......................................................................... 13

*Van Bronkhorst v. Safeco Corp.*
  529 F.2d 943, 950 (9th Cir. 1976) .......................................................................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
  396 F.3d 96, 113-14 (2d Cir. 2005) .......................................................................... 9

**FEDERAL STATUTES**

15 U.S.C. § 1 ........................................................................................................................ 3

28 U.S.C. § 1292(b) ............................................................................................................. 3

**FEDERAL RULES**

Fed. R. Civ. P. 23 ............................................................................................................ 9, 10

  Rule 23(a) ..................................................................................................................... 10, 11

  Rule 23(a)(3) ...................................................................................................................... 11

  Rule 23(a)(4) ...................................................................................................................... 11

  Rule 23(b) .......................................................................................................................10,11

  Rule 23(b)(3) ................................................................................................................ 10, 11

  Rule 23(e) ........................................................................................................................ 8, 9

  Rule 23(e)(5) ...................................................................................................................... 15

**OTHER AUTHORITIES**

4 Newberg on Class Actions

  §§ 11.22, *et seq.* ................................................................................................................ 9

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3      Indirect Purchaser Plaintiffs ("Plaintiffs") submit this Memorandum in support of final

4  approval of their class action settlement with defendants LG Electronics Inc., LG Electronics USA,

5  Inc. and LG Electronics Taiwan Taipei Co., Ltd. (collectively "LG").  This Memorandum is

6  submitted pursuant to the Court's Order granting preliminary approval of the proposed settlement

7  entered December 9, 2013 ("Preliminary Approval Order") (Docket Entry ("DE") 2248).[1]

8      The Settlement Agreement obligates LG to pay $25 million in exchange for a release of the

9  class members' antitrust and consumer-protection claims.  LG has made this payment and Plaintiffs

10  have placed it in an escrow account where it is earning interest.  LG's sales remain in the case for

11  purposes of computing Plaintiffs' damages against the remaining non-settling Defendants.

12  Declaration of Mario N. Alioto In Support of Indirect Purchaser Plaintiffs' Motion for Preliminary

13  Approval of Settlement with LG Defendants ("Alioto Prelim. App. Decl."), (DE 1933) ¶ 12, 14,15.

14      In addition to the monetary value, the Settlement confers significant additional benefits.

15  First, LG has agreed to cooperate with Plaintiffs in the prosecution of this action by providing

16  information relating to the allegations about the CRT competitor meetings alleged in the FCAC,

17  including 1) an attorney proffer by LG's counsel of the facts known by LG regarding the allegations

18  contained in Plaintiffs' FCAC; 2) interviews, depositions and, if necessary, testimony at trial of up to

19  four LG persons with knowledge regarding the CRT competitor meetings alleged in Plaintiffs'

20  FCAC; 3) one or more witnesses for deposition, and if necessary trial, to provide information with

21  respect to LG's data regarding sales, pricing, production, capacity and cost of its CRT Products; 4)

22  one or more witnesses, to establish the foundation of any LG document or data necessary for

23  summary judgment and/or trial.

24

25

26  _____

[1] Along with this Memorandum of Point and Authorities, Plaintiffs have submitted the Declaration
27  of Mario N. Alioto ("Alioto Final App. Decl.") and the Declaration of Joseph M. Fisher of The
Notice Company, Inc. (the "Settlement Administrator") ( "Fisher Decl."), as well as the previously
28  filed Declaration of Mario N. Alioto in Support of Indirect Purchaser Plaintiffs' Motion for
Preliminary Approval of Settlement  with LG Defendants (" Alioto Prelim. App. Decl.") (DE1933).

INDIRECT PURCHASER PLAINTIFFS' MPA IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION
SETTLEMENT – Master File No. CV-07-5944-SC

This Court provisionally certified the Settlement Class, preliminarily approved the Settlement and ordered that Class Members be provided notice of preliminary approval of the Settlement as well as notice of the April 18, 2014 final approval hearing and their right to exclude themselves and/or object. (DE 2248 )  Plaintiffs' Counsel, through the Settlement Administrator, caused such notice to be provided to Settlement Class Members.  Only one objection was received. The objector lacks standing and her objection should be rejected by the Court.  Alioto Final App. Decl.¶ 2, Ex. 1.  One request for exclusion was received. Fisher Decl.¶ 14, Ex Q.

For the reasons detailed below, this Court should finally certify the Settlement Class and grant final approval to the Settlement on the grounds that it is fair, adequate and reasonable to the Settlement Class.

## II.   <u>PROCEDURAL HISTORY</u>

This multidistrict litigation arises from an alleged international cartel's conspiracy to fix the prices of CRT Products worldwide, specifically including the United States, during the period March 1, 1995 through November 25, 2007.  *See* Fourth Consolidated Amended Complaint ("FCAC") ¶ 1, Docket No. 1526.  The first cases were filed in November 2007.  The Judicial Panel on Multidistrict Litigation transferred these proceedings to this Court in February 2008.  Alioto Prelim. App. Decl. ¶ 2.  On May 9, 2008 the Court appointed Mario N. Alioto of Trump, Alioto, Trump & Prescott, LLP as Interim Lead Counsel.  *See* Order Appointing Interim Lead Counsel, (DE 47).  *Id.* ¶ 3.

As Interim Lead Counsel, Mr. Alioto immediately began organizing Plaintiffs' Counsel and interviewing class representatives from the various states.  Mr. Alioto also met on numerous occasions with Interim Lead Counsel for the Direct Purchaser Plaintiffs and Liaison Counsel for the Defendants to prepare a scheduling order.  Plaintiffs served their first set of document requests on Defendants in June 2008 seeking production of the documents Defendants had produced to the Grand Jury.  However, the Department of Justice's Antitrust Division ("DOJ") moved to intervene and sought a stay of all merits discovery.  Thereafter, Plaintiffs engaged in extensive negotiations with the DOJ, the Direct Purchaser Plaintiffs and Defendants and worked out a Stipulated Order that provided for a stay of all merits discovery until September 12, 2009.  This stay was extended pursuant to the requests of the DOJ on several occasions.  The Stipulated Order also contained

1   various document requests to Defendants, which sought mainly sales and cost data.  Certain

2   Defendants produced a small amount of documents responsive to these requests in November 2008.

3   Plaintiffs have reviewed and analyzed these documents with the help of their expert economists.  *Id.*

4   ¶ 4.

5          On April 18, 2009, Plaintiffs entered into a settlement with Chunghwa Picture Tubes, Ltd.,

6   for $10,000,000 cash. The Court granted Preliminary Approval on August 9, 2011 and Final

7   Approval on March 22, 2012. *Id.* ¶ 5

8          Plaintiffs filed their CAC on March 16, 2009.  The CAC pled a nationwide injunctive relief

9   claim under Section 1 of the Sherman Act (15 U.S.C. § 1), as well as damage and/or restitutionary

10  claims under the laws of 22 separate states.  Defendants filed one joint motion and nine separate

11  motions to dismiss the CAC.  The briefs filed in support of and in opposition to Defendants' motions

12  totaled more than 700 pages.  Judge Legge conducted a hearing on the motions on October 3, 2009,

13  at JAMS and heard almost nine hours of oral argument.  Judge Legge issued his rulings on the

14  motions to dismiss on February 5, 2010, and denied in part and granted in part Defendants' motions

15  to dismiss.  Defendants objected to those rulings that were unfavorable to them.  Defendants'

16  objections were heard by this Court and rejected in an Order dated March 31, 2010.  Defendants then

17  moved the Court for permission to bring an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

18  The Court heard and denied Defendants' motion by Order dated April 30, 2010.  *Id.* ¶ 6.

19         Plaintiffs filed their Second Consolidated Amended Complaint ("SCAC") on May 10, 2010.

20  The SCAC amended certain state law claims that were dismissed with leave to amend by the Court.

21  In addition, the SCAC brought claims on behalf of 4 additional states, bringing the total number of

22  states to 26.  Defendants moved to dismiss some of Plaintiffs' additional state law claims.  Judge

23  Legge recommended that the Defendants' motion be granted as to certain state law claims and

24  denied as to others.  Pursuant to stipulation of the parties, an Order Modifying And Adopting Judge

25  Legge's Report and Recommendation was entered on October 26, 2010.  Plaintiffs filed their Third

26  Consolidated Amended Complaint on December 11, 2010, bringing claims on behalf of 23 states.

27  *Id.* ¶ 7.

28

1     The DOJ's stay of merits discovery was partially lifted on March 8, 2010 and Defendants

2 began their rolling production of documents, including Grand Jury documents, to Plaintiffs.

3 Plaintiffs also propounded additional discovery on Defendants.  Defendants propounded several sets

4 of document requests and interrogatories on Plaintiffs as well.  Plaintiffs spent almost two years and

5 thousands of hours, meeting and conferring with nine separate defendant groups[2] regarding their

6 written discovery responses and production of documents and data.  Most of the defendant groups

7 comprise multiple entities located around the world.  The meet and confers concluded with several

8 successful motions to compel additional productions from certain defendants.  Because many of the

9 Defendants are no longer involved in the CRT business, Plaintiffs had to travel to several "Iron

10 Mountain" facilities and manually search Defendants' paper records for relevant documents, and had

11 to employ technical experts to restore backup tapes and servers containing relevant information.

12 Plaintiffs also subpoenaed and negotiated productions of documents and data from over 50 third

13 party retailers, distributors and CRT television and monitor manufacturers.  Most recently, Plaintiffs

14 subpoenaed documents and data from the Dutch bankruptcy trustee of a former manufacturer of

15 CRTs, LG. Philips Displays. *Id.* ¶ 8.

16     The result of Plaintiffs' efforts has been the production of almost 5 million documents and

17 voluminous data sets, which have been loaded into a web-based electronic database and are being

18 reviewed and analyzed by a team of over 50 attorneys.  This team includes more than a dozen

19 attorneys that are fluent in Japanese, Korean and Chinese because much of the best evidence is in

20 these languages.  In addition, Plaintiffs must get certified translations of any documents they wish to

21 use in briefs or depositions.  Plaintiffs also retained expert economists to review and analyze the

22 documents and data, and prepare expert reports in support of class certification, liability and

23 damages. *Id.* ¶ 8.

24     From February to September of 2012, Plaintiffs defended the depositions of 24 class

25 representatives.  During the summer of 2012, Plaintiffs took 25 depositions of Defendants pursuant

26 —————————————

27 [2] The nine defendant groups were as follows: the Samsung SDI Defendants; the Samsung
Electronics Defendants; the Hitachi Defendants; the Toshiba Defendants; the Philips Defendants; the
28 LGE Defendants; the Panasonic Defendants (which includes MT Picture Display Co. Ltd.); Beijing
Matsushita Color CRT Co., Ltd.; and Chunghwa Picture Tubes, Ltd.

to Fed. R. Civ. P. 30(b)(6), the main purpose of which was to gather information for the motion for class certification.  Plaintiffs filed their motion for class certification, along with the Declaration of Janet S. Netz, Ph.D., on October 1, 2012.  Defendants filed their opposition to the motion on December 17, 2012, and Plaintiffs filed their reply on February 15, 2013.  The complete record on class certification, including all briefs, declarations and exhibits, totaled approximately 6,000 pages. A hearing was held before the Interim Special Master Martin Quinn on April 30, 2013.  On June 20, 2013, Special Master Quinn issued his Report and Recommendation, which recommended that the Court grant Plaintiffs' motion for class certification.  *Id.* ¶ 9.  On September 24, 2013, the Honorable Samuel Conti adopted the Special Master's Report and Recommendation in full and certified 22 state-wide classes of indirect purchasers of CRTs.[3]  The Ninth Circuit Court of Appeals denied the Defendants' petition to appeal the district court's order pursuant to Fed. R. Civ. P. 23(f).[4]

Currently, Plaintiffs are engaged in merits depositions.  To date, there have been 40 depositions of Defendants' employees, several of which have involved foreign travel to Taiwan, Korea and Mexico. These depositions will continue over the next few months.  *Id.* ¶ 10.

On May 28, 2013, Plaintiffs entered into a settlement agreement with LG which is the subject of this Final Approval Motion.  Settlement negotiations are ongoing with several other Defendants. *Id.* ¶ 11.

## III.   SUMMARY OF SETTLEMENT TERMS

### A.   Proposed Settlement

This Settlement resolves all claims against defendant LG for LG's part in the alleged conspiracy to fix prices of CRT Products indirectly purchased from Defendants.  Alioto Decl. ¶ 12. The proposed Settlement Class is defined as:

---

[3] *See* Order Adopting Special Master's Reports and Recommendations on Defendants' Motion to Exclude Expert Testimony and Motion for Class Certification, Dkt. No. 1950.

[4] *See Toshiba Corp. et al. v. Indirect Purchaser Plaintiffs, et al.,* No. 13-80210, Order dated December 20, 2013, Dkt. No. 2283.

NATIONWIDE CLASS:

All persons and or entities who or which indirectly purchased in the United States for their own use and not for resale, CRT Products[5] manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or co-conspirator thereof, at any time during the period from at least March 1, 1995 through at least November 25, 2007. Specifically excluded from this Class are claims on behalf of Illinois persons (as defined by 740 ILCS 10/4 ) for purposes of claims under 740 Ill. Comp. Stat § 10/7(2), Oregon natural persons (as defined by ORS 646.705 (2)) for purposes of claims under ORS § 646.775(1), and Washington persons (as defined by RCW 19.86.080) for purposes of claims under RCW 19.86.080 (1). Also specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant.  Also excluded are named co-conspirators, any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.


INDIRECT PURCHASER STATE CLASSES:

All persons and or entities in Arizona, California, District of Columbia, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin who or which indirectly purchased for their own use and not for resale, CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or co-conspirator thereof, at any time during the period from at least March 1, 1995 through at least November 25, 2007.

All persons and entities in Hawaii who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants or any parents, affiliates, subsidiaries, predecessors or successors in interest or co-conspirators thereof, at any time from June 25, 2002 through at least November 25, 2007.

All persons and entities in Nebraska who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants or any parents, affiliates, subsidiaries, predecessors or successors in interest or co-conspirators thereof, at any time from July 20, 2002 through at least November 25, 2007.

All persons and entities in Nevada who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants or any parents, affiliates, subsidiaries, predecessors or successors

---

[5] CRT Products are defined in the settlement agreement to mean Cathode Ray Tubes of any type (e.g. color display tubes, color picture tubes and monochrome display tubes) and products containing Cathode Ray Tubes.

in interest or co-conspirator thereof at any time from February 4, 1999 through at least November 25, 2007.

Specifically excluded from these Classes are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are named co-conspirators, any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

**B.    Consideration**

LG agreed to pay Twenty-Five Million Dollars ($25,000,000) to settle all indirect purchaser claims against LG. These monies have been deposited into an interest-bearing, US Treasury guaranteed escrow account. *Id.* ¶ 14.

In addition to the monetary value, the Settlement confers significant additional benefits. First, LG has agreed to cooperate with Plaintiffs in the prosecution of this action by providing information relating to the allegations about the CRT competitor meetings alleged in the FCAC, including 1) an attorney proffer by LG's counsel of the facts known by LG regarding the allegations contained in Plaintiffs' FCAC; 2) interviews, depositions and, if necessary, testimony at trial of up to four LG persons with knowledge regarding the CRT competitor meetings alleged in Plaintiffs' FCAC; 3) one or more witnesses for deposition, and if necessary trial, to provide information with respect to LG's data regarding sales, pricing, production, capacity and cost of its CRT Products; 4) one or more witnesses, to establish the foundation of any LG document or data necessary for summary judgment and/or trial. LG's sales also remain in the case for the purpose of computing damages against the non-settling Defendants. *Id.* ¶¶ 15, 16.

**C.    Release**

Upon this Settlement becoming final, Plaintiffs and class members will release all federal and state-law claims against LG "concerning the manufacture, supply, distribution, sales or pricing of CRT Products. . . ." *Id.* ¶ 17, Ex. 1 at ¶ 13. The release does not, however, include claims arising from the sale of CRT Products by other Defendants or their co-conspirators. Furthermore, the release does not include claims for product defect, personal injury or breach of contract. *Id.* ¶ 17, Ex. 1 at ¶¶ 3, 13, 15, 32.

Plaintiffs moved for preliminary approval of the LG Settlement on September 16, 2013. (DE 1963)  The Court preliminarily approved the Settlement by Order dated December 9, 2013.  (DE 2248).   Thereafter, Summary Notice was published in Parade Magazine, USA Weekend, USA Today, the New York Times and El Nueva Dia.  Class Counsel also established a website, www.CRTsettlement.com, which contains copies of the Settlement Agreement, Summary Notice, Detailed Notice and Preliminary Approval Order in both English and Spanish.  Concurrent with this Motion, Class Counsel have filed the Declaration of Joseph M. Fisher of The Notice Company attesting to the fact that notice of the LG Settlement was disseminated in accordance with the Preliminary Approval Order.

The deadline for requests for exclusion from and objections to the Settlement Class was March 20, 2014.  One request to be excluded from the proposed settlement was received. Fisher Decl. ¶ 14, Ex. Q.  One objection to the proposed settlement was received from Jill K. Cannata.  An "objection" was also received from Donald Silvestri.  Mr. Silvestri does not object to the settlement, but rather objects to "awarding of attorneys' fees in excess of 10% and granting the attorneys $5 million to be used in anticipated expenses."  Alioto Final App. Decl.¶ 3, Ex.2.

## IV.   ARGUMENT

### A.   Class Action Settlement Procedure

A class action may not be dismissed, compromised or settled without the express approval of the Court.  Judicial decisions under Rule 23(e) have led to a well-defined procedure and specific criteria for approval of class action settlements, which are:

1. Certification of a settlement class and preliminary approval of the proposed settlement;

2. Dissemination of notice of the settlement to all affected class members; and

3. A formal fairness hearing, (called the "Final Approval Hearing"), at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

*See* 4 Newberg on Class Actions §§ 11.22, *et seq*. (4th ed. 2002) ("*Newberg*") (describing class action settlement procedure).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

The Court completed the first step in the settlement approval process when it granted preliminary approval to the Settlement.  As discussed below, the second step in the process has been completed as well: the Court-approved Notice plan was fully implemented.  By this motion, Plaintiffs request that the Court take the third and final step of holding a formal fairness hearing, granting final approval of the proposed Settlement and entering Final Judgment in this case.

**B.      The Notice Plan Comports With Due Process**

Federal Rule of Civil Procedure 23(e) and due process requires that Class Members be given "reasonable" notice of a proposed settlement and their right to be heard at the fairness hearing to determine whether final approval of the settlement should be granted.  *See* Fed. R. Civ. P. 23(e); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 113-14 (2d Cir. 2005).

Based on the arguments fully set forth in Plaintiffs' motion for approval of the notice plan, this Court held that the notice program proposed by Plaintiffs' counsel – which included published notice and the posting of notice on the website established for this case – "constitutes the best notice practicable under the circumstances, is due and sufficient notice to the Indirect Purchaser Settlement Class and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States."  Preliminary Approval Order, ¶13.  As described in the Declaration of Joseph M. Fisher, Plaintiffs' counsel caused that notice program to be implemented as required by this Court's order.  Therefore, this Court should find the notice program related to the Settlement satisfies the requirements of Rule 23(e) and due process.

**C.      The Court Should Finally Certify the Settlement Class**

This Court provisionally certified the Settlement Class in the Preliminary Approval Order.  All of the grounds for certification articulated then apply with equal force now.  Thus, final certification is warranted.

The Court can certify a settlement class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the four prerequisites in Rule 23(a) – numerosity,

commonality, typicality and adequacy of representation – and one of the three requirements of Rule 23(b). *See* Fed. R. Civ. P. 23; *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Certification of a class action for damages requires a showing that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In certifying a settlement class, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997). As Judge Posner has explained, manageability concerns that might preclude certification of a litigated class may be disregarded with a settlement class "because the settlement might eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household Int'l Inc.,* 376 F.3d 656, 660 (7th Cir. 2004) *(citing Amchem,* 521 U.S. at 620); *see also In re IPO Sec. Litig.,* 226 F.R.D. 186, 190, 195 (S.D.N.Y. 2005) (settlement class may be broader than litigated class because settlement resolves manageability and predominance concerns).

Here, the Settlement Class meets the requirements of Rule 23(a) and (b) of the Federal Rules of Civil Procedure and should be certified. It is undisputed that millions of people in the United States purchased CRT Products during the class period, and that the class readily satisfies the numerosity requirements of Rule 23. *See In re Static Random Access Memory (SRAM) Antitrust Litig.,* 264 F.R.D. 603, 608 (N.D. Cal.). There are questions of law and fact common to the Class that predominate over any individual questions, including whether Defendants conspired to fix the prices of CRTs; whether Defendants violated Section 1 of the Sherman Act as well as the state antitrust and unfair competition laws identified in the Complaint; the extent to which Defendants' conduct injured the class members, among other previously identified issues. "Antitrust, price fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy. Whether defendants participated in the actions alleged is a common question." *In re Linerboard Antitrust Litig.,* 203 F.R.D. 197, 206 (E.D. Pa. 2001) (citation and quotation marks omitted).

1    Plaintiffs' claims are also typical, as each Plaintiff indirectly purchased CRT Products during

2    the relevant time period, and allege that Defendants engaged in an anti-competitive conspiracy.  The

3    Court, in *SRAM,* recognized that "the overarching price fixing scheme is the linchpin of [Plaintiffs']

4    complaint, 'regardless of the product purchased, the market involved or the price ultimately paid,'"

5    and held that Plaintiffs' claims are typical although they may have used different purchasing

6    procedures, purchased different quantities or a different mix of products, or received different prices

7    than other class members.  *SRAM,* 264 F.R.D. at 609.  Because the same is true here, the typicality

8    requirement is met.  Furthermore, as evidenced by the history of the litigation, Plaintiffs and their

9    counsel have fairly and adequately represented and protected the interests of all Class members.  *See*

10   Fed. R. Civ. P. 23(a)(3) and (a)(4).

11          In addition to the prerequisites of Rule 23(a), the Settlement Class also satisfies the

12   prerequisites of Rule 23(b)(3), namely: (1) questions of law or fact common to Class members must

13   predominate over any questions affecting only individual members; and (2) the class action must be

14   superior to other available methods for the fair and efficient adjudication of the matter.  The Rule

15   23(b) predominance inquiry is "readily met in certain cases alleging violations of the antitrust laws."

16   *Amchem,* 521 U.S. at 625; *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and*

17   *Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002).  "The ... inquiry tests whether proposed

18   classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at

19   623.  Predominance is satisfied "unless it is clear that individual issues will overwhelm the common

20   questions and render the class action valueless." *In re NASDAQ Market-Makers Antitrust Litig.*, 169

21   F.R.D. 493, 517-18 (S.D.N.Y. 1996).  Individual issues in this case will not overwhelm the common

22   questions of law or fact, because the central question is whether the Defendants conspired to

23   improperly raise the prices of CRTs, and, if so, how.  *See e.g., SRAM*, 264 F.R.D. at 611.  Moreover,

24   the fact that individual Class members' damages may vary due to quantity of purchases or types of

25   CRT Products purchased does not defeat predominance.  *See, e.g., In re Master Key Antitrust Litig.*,

26   528 F.2d 5, 12 n.11 (2d Cir. 1975); *In re Indus. Diamonds Antitrust Litig.,* 167 F.R.D. 374, 383

27   (S.D.N.Y. 1996) (citing cases).

28          With respect to the superiority requirement, a court must consider the following factors: (A)

1   the interest of members of the class in individually controlling the prosecution or defense of separate

2   actions; (B) the extent and nature of any litigation concerning the controversy already commenced

3   by or against members of the class; (C) the desirability or undesirability of concentrating the

4   litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the

5   management of a class action. Fed. R. Civ. P. 23(b)(3).  The damages of most individual Class

6   members are relatively small compared to the cost of litigation.  There is no problem in

7   consolidating the litigation here, nor will any unusual difficulties be encountered.  Members of the

8   Class, therefore, have no real interest in controlling the prosecution of individual actions, and

9   effectively would be unable to adjudicate their claims individually.  Even if they were able to do so,

10   the court system would be overwhelmed by the burden of hundreds of thousands of separate actions.

11   As such, it is highly desirable to concentrate these claims in this court.  *See SRAM,* 264 F.R.D. at

12   615.

13          **D.      The Settlement Should Be Finally Approved**

14          It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the

15   preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615,

16   625 (9th Cir. 1982); *accord Knight v. Red Door Salons, Inc.,* No. 08-01520 SC, 2009 U.S. Dist.

17   LEXIS 11149, at *8 (N.D. Cal. Feb. 2, 2009).  "[T]here is an overriding public interest in settling

18   and quieting litigation" and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco*

19   *Corp.,* 529 F.2d 943, 950 (9th Cir. 1976).  In evaluating a proposed class action settlement, the

20   Ninth Circuit has recognized that:

21          [T]he universally applied standard is whether the settlement is fundamentally fair,
           adequate and reasonable. The district court's ultimate determination will
22          necessarily involve a balancing of several factors which may include, among
           others, some or all of the following: the strength of plaintiffs' case; the risk,
23          expense, complexity, and likely duration of further litigation; the risk of
           maintaining class action status throughout the trial; the amount offered in
24          settlement; the extent of discovery completed and the stage of the proceedings; the
           experience and views of counsel; the presence of a governmental participant; and
25          the reaction of the class members to the proposed settlement.

26   *Officers for Justice,* 688 F.2d at 625 (citations omitted); *accord Torrisi v. Tucson Elec. Power Co.,*

27   8 F.3d 1370, 1375 (9th Cir. 1993).

28          This Court is entitled to exercise its "sound discretion" when deciding whether to grant final

approval. *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981); *Torrisi,* 8 F.3d at 1375. In doing so, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice,* 688 F.2d at 625; *In re Heritage Bond Litig.,* MDL No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *10 (C.D. Cal. June 10, 2005). "Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair." *M Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 822 (D. Mass. 1987); *accord In re Heritage Bond Litig.,* 2005 U.S. Dist. LEXIS 13555, at **11-12. The Settlement here is certainly fair, reasonable and adequate.

First, the $25,000,000 cash consideration for the Settlement is substantial and is generally comparable to or more favorable than the settlements finally approved in other price-fixing cases. *See, e.g., Fisher Bros. v. Mueller Brass Co.,* 630 F. Supp. 493, 499 (E.D. Pa. 1985). Indeed, this Court has already granted final approval to a $25 million settlement between LG and the Direct Purchaser Plaintiffs (DE 1621).

Second, the Settlement was the product of intense and thorough arm's-length negotiations that were conducted by experienced and informed counsel. The negotiations occurred over a span of many months and involved numerous discussions. The negotiations were contested, conducted in the utmost good faith, and the settlement was appropriate in light of the evidence against LG. *See* Motion for Preliminary Approval of Settlement (DE 884).

While Plaintiffs believe the case against LG has merit, this Settlement eliminates significant risks that Plaintiffs would otherwise face at a trial against LG. For instance, Plaintiffs would bear the burden of establishing liability, impact and damages. *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 475 (S.D.N.Y. 1998); *In re Sumitomo Copper Litig.,* 189 F.R.D. 274, 283 (S.D.N.Y. 1999). The foregoing considerations are important because LG is represented by highly respected counsel and would have aggressively defended this action and continued to do so through

1    trial and appeal.

2         In addition, Plaintiffs' counsel's belief that the Settlement is in the best interest of the Class

3    is entitled to "great weight."  *In re Paine Webber Partnerships Litig.,* 171 F.R.D. 104, 125

4    (S.D.N.Y. 1997) (citation omitted), *aff'd* 117 F.3d 721 (2d Cir. 1997); *accord Nat'l Rural*

5    *Telecomms. Coop. v. DIRECTV Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight" is

6    accorded to the recommendation of counsel, who are most closely acquainted with the facts of the

7    underlying litigation.").  In fact, "the trial judge, absent fraud, collusion, or the like, should be

8    hesitant to substitute its own judgment for that of counsel."  *Nat'l Rural Telecomms.,* 221 F.R.D.

9    at 528, *quoting Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977).

10        For all of the foregoing reasons, the Settlement should be finally approved.

11   **E.   Objections**

12        Millions of potential Settlement Class members were notified of the Settlement through

13   the Notice Program approved by the Court.  *See* Fisher Decl. ¶ 5-13. Only one objection to the

14   settlement was received—an infinitesimal portion of what is indisputably a very large Settlement

15   Class.  The objection was filed by Jill K. Cannata, who resides in Chagrin, Ohio.[6]

16        In determining the fairness and adequacy of a proposed settlement, this Court should

17   consider "the reaction of the Class Members to the proposed settlement." *Churchill Village, L.L.C. v.*

18   *General Electric,* 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011,

19   1026.  "It is established that the absence of a large number of objections to a proposed class action

20   settlement raises a strong presumption that the terms of a proposed class settlement action are

21   favorable to the class members." *National Rural Telecoms,* 221 F.R.D. at 529; *see also Pallas v.*

22   *Pacific Bell,* No. C-89-2373 DLJ, 1999 WL 1209495, at *8 (N.D.Cal. 1999) ("The small percentage

23   – less than one percent – of persons raising objections is a factor weighing in favor of approval of

24   the settlement.").  The inference of class support due to the absence of objectors is even stronger

25   when, as here, a portion of the Settlement Class consists of sophisticated business entities.  *See In re*

---

[6] An "objection" was also filed by Donald Silvestri.  Mr. Silvestri did not object to the settlement but to the granting of attorneys' fees and expenses, which Plaintiffs' Counsel are not requesting at this time. Plaintiffs' Counsel will respond to both the Cannata and Silvestri objections on or before April 4, 2014, as per the Court's Preliminary Approval Order ¶ 15 (DE 2248).

14

INDIRECT PURCHASER PLAINTIFFS' MPA IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION
SETTLEMENT – Master File No. CV-07-5944-SC

1 | *Linerboard Antitrust Litig.,* 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004).

2 |     While the absence of any significant objections alone provides ample basis for final approval

3 | here, final approval is also warranted because the objector, Jill K. Cannata, resides and purchased the

4 | CRT TV in Ohio and is not a member of the Indirect Purchaser State Classes entitled to recover

5 | damages.  She therefore lacks standing to object.  *See* Fed. R. Civ. P. 23(e)(5) ("Any class member

6 | may object to the [settlement] proposal if it requires court approval under this subdivision (e)").

7 | *See also Feder v. Elec. Data Sys. Corp.,* 248 Fed. Appx. 579, 580 (5th Cir. 2007) ("only class

8 | members have an interest in the settlement funds, and therefore only class members have standing

9 | to object to a settlement"); *Amone v. Aveiro,* Civ. No. 04-00508 ACK-BMK, 2007 U.S. Dist.

10 | LEXIS 63631, at **6-7 (D. Haw. Aug. 27, 2007) (objector lacked standing to object to final

11 | approval of settlement where he was "not a member of the Plaintiff Class, nor does he allege a

12 | cognizable injury from the settlement.").

13 |     **F.**    **Exclusions**

14 |     Class members were advised of the right to be excluded from the Settlement Class, which

15 | could be accomplished through mailing a request for exclusion to the Settlement Administrator not

16 | later than March 20, 2014.  One request for exclusion was received from Class members.  *See*

17 | Fisher Decl. ¶14, Ex Q (exclusion letters).  Class Counsel has provided LG with these requests for

18 | exclusion.

19 | **V.**    **CONCLUSION**

20 |     For all of the foregoing reasons, the Court should overrule Cannata's objection and finally

21 | approve the Settlement.

22 |

23 | Dated: March 28, 2014              Respectfully submitted,

24 |                      */s/ Mario N. Alioto*

                    Mario N. Alioto

25 |

26 |                Mario N. Alioto (56433) malioto@tatp.com

               Lauren C. Russell (241151)laurenrussell@tatp.com

27 |                TRUMP, ALIOTO, TRUMP & PRESCOTT LLP

               2280 Union Street

28 |                San Francisco, CA 94123

               Telephone: 415-563-7200

15

INDIRECT PURCHASER PLAINTIFFS' MPA IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION
SETTLEMENT – Master File No. CV-07-5944-SC

Facsimile: 415-346-0679

*Lead Counsel for Indirect-Purchaser
Plaintiffs*

INDIRECT PURCHASER PLAINTIFFS' MPA IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION
SETTLEMENT – Master File No. CV-07-5944-SC