# DECLARATION OF JOSEPH M. FISHER

## EXHIBIT B

# If You Bought A Cathode Ray Tube Product,

## A Class Action Lawsuit and Settlement May Affect You.

**Cathode Ray Tube (CRT) Products include CRTs, Televisions, Computer Monitors, and other products containing CRTs.**

**Para una notificacion en Espanol, llamar o visitar nuestro website.**

On September 19, 2013, the US District Court for the Northern District of California ( the "Court") certified plaintiff classes in 21 states and the District of Columbia, of individuals and businesses that indirectly purchased any CRT Product from the Defendant Companies or any co-conspirator (collectively "Defendants"), for their own use and not for resale, from March 1, 1995 through November 25, 2007 (the "Litigated Class"). The case is *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, 07-cv-05944-SC. "Indirect" means that you did not buy the CRT Product directly from any of the Defendants.

A Settlement has been reached with LG Electronics, Inc.; LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd. ("LG"). On December 9, 2013, the Court preliminarily approved the LG Settlement and certified a nationwide (excluding Illinois, Oregon and Washington) settlement class of individuals and businesses that indirectly purchased any CRT Product from the Defendants, for their own use and not for resale, from March 1, 1995 through November 25, 2007 (the "Settlement Class"). The Court previously approved a settlement with defendants Chunghwa Picture Tubes Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn Bhd.

The litigation is continuing against the remaining Defendants. The Settlement Agreement, the Class Certification Order, the Preliminary Approval Order and a complete list of the Defendants are set out in the Detailed Notice available at www.CRTsettlement.com.

## What is this case about?

The lawsuit claims that numerous Defendants, including LG, conspired to fix, raise, maintain or stabilize prices of CRT Products resulting in overcharges to consumers who bought CRT Products such as televisions and computer monitors. The Defendants deny that they did anything wrong. The Court has not decided who is right.

## What does the Settlement Provide?

The Settlement provides for the payment by LG of $25 million in cash, plus interest, to the Settlement Class. It also provides that LG will furnish information about the case, including other Defendants' involvement in the alleged conspiracy, to Class Counsel. Money will not be distributed to Settlement Class members yet. The lawyers will pursue the lawsuit against the other Defendants to see if any future settlements or judgments can be obtained in the case and then distribute the funds together to reduce expenses. It is possible that money will be distributed to organizations that are, as nearly as

practicable, representative of the interests of indirect purchasers of CRT Products instead of Settlement Class members themselves if the cost to process claims would result in small payments to members of the Settlement Class.

## Who Represents You?

The Court has appointed Mario N. Alioto of Trump, Alioto, Trump & Prescott LLP as "Class Counsel" to represent members of the Litigated Class and the Settlement Class. You do not have to pay these lawyers to represent you. You may hire your own attorney, if you wish, but if you do so you will be responsible for your own attorney's fees and expenses.

## What are your Options?

If you wish to remain a member of the Litigated Class and the Settlement Class, you do not need to take any action at this time. You will be bound by the judgment of the Court regarding your claims and cannot present them in another lawsuit. If you don't want to be a member of the Litigated Class, or be legally bound by the Settlement, you must exclude yourself in writing by **March 20, 2014**. If you remain a Settlement Class member, you may object to the Settlement by **March 20, 2014**. The Detailed Notice, which you may review online at www.CRTsettlement.com, describes how to exclude yourself from the Litigated Class or the Settlement Class, or how to object to the Settlement. The Court will hold a Fairness Hearing at 10:00 a.m. on **April 18, 2014**, at 450 Golden Gate Ave., 17th Floor, Courtroom One, San Francisco, CA 94102. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.CRTsettlement.com. At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. The Court will also consider Class Counsel's request that $5 million from the Settlement Fund be set aside to pay for expenses incurred or to be incurred in prosecuting this case. Class Counsel are not asking for attorneys' fees at this time. At a future time, Class Counsel will ask the Court for attorneys' fees not to exceed one-third of this and any future settlements. If there are objections or comments to the fees requested, the Court will consider them at that time. You may appear at the hearing, but you don't have to. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take. Please do not contact the Court about this case. Please retain any receipts or other evidence of purchase of any CRT Product. Before disposing of any CRT Product please see the Detailed Notice for recommendations on preserving proof of ownership.

For more details, call toll free 1-800-649-8153, visit www.CRTsettlement.com,
or write to CRT Indirect Settlement, c/o The Notice Company, P.O. Box 778, Hingham, MA 02043.

# DECLARATION OF JOSEPH M. FISHER

# EXHIBIT C

TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO NORTE DE CALIFORNIA

# Si usted ha comprado un producto con tubos de rayos catódicos,
## Ud. puede verse afectado por un acuerdo de demanda colectiva

Entre los productos que contienen tubos de rayos catódicos (**CRT**, del inglés Cathode Ray Tube) se encuentran tubos de rayos catódicos y productos acabados como televisores y monitores de computadoras

*Un Tribunal Federal ha autorizado este Aviso. Esta no es una solicitud de un abogado.*

- Este aviso se hace a tenor de la Norma 23 de las Normas Federales del Procedimiento Civil y por Orden del Tribunal de Estados Unidos del Distrito Norte de California ("el Tribunal del Distrito).

- Existe una demanda pendiente relativa a productos con CRT comprados indirectamente a los demandados o a sus copartícipes (los "Demandados"), como se expone más abajo. "Indirectamente" significa que usted no compró el producto CRT directamente a uno de los demandados".   El caso está consignado como: *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, 07-cv-05944-SC, MDL No. 1917.

- El 19 de septiembre de 2013, el Tribunal del Distrito certificó grupos demandantes en 21 estados y el Distrito de Columbia. Los estados incluyen a: Arizona, California, Florida, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, Nuevo México, Nueva York, Carolina del Norte, Dakota del Norte, Dakota del Sur, Tennessee, Vermont, Virginia Occidental y Wisconsin. Los grupos están formados por individuos y negocios que compraron un producto CRT cualquiera indirectamente a  los Demandados, para su propio uso y no para revender, del 1 de marzo de 1995 hasta noviembre 25 de 2007 (el "Grupo Litigante").

- Se ha llegado a un Acuerdo con LG Electronics, Inc.; LG Electronics USA, Inc.; y LG Electronics Taiwan Taipei Co., Ltd. ("LG" o "Demandado en Conciliación. El litigio continúa contra los restantes Demandados en No Conciliación.

- El 9 de diciembre de 2013, el Tribunal del Distrito aprobó preliminarmente el Acuerdo. Conforme a este Acuerdo, el Tribunal del Distrito certificó: (1) para toda la nación (excluyendo Illinois, Oregón y Washington) una cautelar a favor del grupo de individuos y negocios que compraron indirectamente cualquier producto CRT a los Demandados para su propio uso y no para revender, entre el 1 de marzo de 1995 y el 25 de noviembre de 2007; y (2) grupos perjudicados a nivel de estados presentados en detalle más abajo, en la página 7 ("Grupo del Acuerdo").

- Sus derechos legales se verán afectados tanto si actúa como si no lo hace. Este Aviso incluye información sobre el Acuerdo y la demanda que prosigue. Por favor, lea detenidamente el Aviso completo.

**Para más Información: Llame al 1-800-649-8153 o visite www.CRTsettlemnt.com**

| Los siguientes derechos y opciones - y los plazos para ejercerlos - se explican en el presente aviso. | |
|---|---|
| Usted puede objetar a o dar su opinión sobre el acuerdo | *ver* Pregunta 12 |
| Usted también puede excluirse de la demanda y/o el Acuerdo | *ver* Preguntas 7 y 12 |
| Usted puede ir a una audiencia para hablar personalmente con el Tribunal del Distrito sobre el acuerdo | *ver* Pregunta 18 |

- El Tribunal de Distrito a cargo de este caso debe determinar aún si aprobar o no el Acuerdo. El litigio continúa avanzando hacia el juicio.

## QUÉ CONTIENE ESTE AVISO

**INFORMACIÓN BÁSICA** ……………………………………...……..…..……………PÁGINAS 4, 5
    1.    ¿Por qué hay un aviso?
    2.    ¿Qué es una Demanda Colectiva y quién presentó la demanda?
    3.    ¿Quiénes son los Demandados y Copartícipes?
    4.    ¿De qué se trata esta demanda?
    5.    ¿Qué es un Producto con Tubos de Rayos Catódicos (CRT)?

**EL GRUPO LITIGANTE** ………………………………....…...…………PÁGINAS  5, 6
    6.    ¿Cómo sé si soy parte del Grupo Litigante?
    7.    ¿Cuáles son mis opciones si soy un miembro del Grupo Litigante?

**EL GRUPO DEL ACUERDO**………….…………………..….……PÁGINAS 7, 8, 9, 10
    8.    ¿Por qué hay un Acuerdo pero la demanda continúa?
    9.    ¿Cómo sé si soy parte del Grupo del Acuerdo?
    10.    ¿Qué establece el Acuerdo?
    11.    ¿Cuándo puedo recibir un pago?
    12.    ¿Cuáles son mis derechos en el Grupo del Acuerdo?
    13.    ¿A qué renuncio si permanezco dentro del Grupo del Acuerdo?

**INTERACCIÓN ENTRE EL GRUPO LITIGANTE Y EL GRUPO DEL ACUERDO.**…………………………….…...………………….………..PÁGINA 10
    14.    ¿Puedo permanecer en el Grupo Litigante y optar por no pertenecer al Grupo del Acuerdo?
    15.    ¿Puedo permanecer en el Grupo del Acuerdo y optar por no pertenecer al Grupo Litigante?

**LA AUDIENCIA PARA APROBAR  EL ACUERDO ………..……...…….PÁGINAS 11**
    16.    ¿Cuándo y dónde decidirá el Tribunal si aprobar o no el Acuerdo?
    17.    ¿Tengo que presentarme a la Audiencia?
    18.    ¿Puedo hablar en la Audiencia?

**LOS ABOGADOS QUE LO REPRESENTAN…………………...………PÁGINA 11, 12**
    19.    ¿Tengo un abogado en el caso?
    20.    ¿Cómo se les pagará a los abogados?

**CONSTANCIA DE COMPRA…………………………….………………PÁGINA 12**
    21.    ¿Qué pasos debo seguir para demonstrar evidencia de compra/posesión de un producto CRT?

**OBTENER MÁS INFORMACIÓN………..…………………………………PÁGINA 12**
    22.    ¿Cómo obtengo más información?

## INFORMACIÓN BÁSICA

### 1. ¿Por qué hay un aviso?

El aviso es para informarle de la demanda y el acuerdo, de modo que usted pueda tomar una decisión informada acerca de si debe permanecer como miembro del Grupo Litigante y/o del Grupo del Acuerdo,  excluirse de un Grupo o comentar sobre el Acuerdo propuesto.

El Tribunal de Distrito a cargo del caso es el Tribunal de Distrito de los Estados Unidos para el Distrito Norte de California, y el caso lleva por título *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 07-CV-05944-SC, MDL No. 1917.

### 2. ¿Qué es una Demanda Colectiva y quién presentó la demanda?

La demanda fue presentada como una "Demanda Colectiva". En una demanda colectiva una o más personas llamadas representantes del grupo demandan a nombre de personas que tienen reclamos similares. Todas estas personas son un grupo o miembros de un grupo, excepto aquellos que se excluyen a sí mismos del grupo. Las personas que presentan la demanda son llamadas Demandantes y las compañías que son demandadas son llamadas los Demandados.

Aunque los Demandantes en esta demanda colectiva han alcanzado acuerdos con ciertos Demandados, el litigio continúa contra otros Demandados. Si los Demandantes logran obtener dinero o beneficios como resultado de un juicio o acuerdo futuro, usted será notificado acerca de cómo solicitar una parte o cuales sean sus opciones en ese momento. Estas posibilidades se desconocen por ahora. En cuanto esté disponible, información importante sobre este caso aparecerá en el sitio web, **www.CRTsettlement.com**. Por favor, chequee el sitio para mantenerse informado acerca de cualquier desarrollo futuro.

### 3. ¿Quiénes son los Demandados y Copartícipes?

Entre las compañías demandadas se encuentran: LG Electronics, Inc., LG Electronics U.S.A., Inc., LG Electronics Taiwan Taipei Co., Ltd, Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., Philips da Amazonia Industria Electronica Ltda., LP Displays International, Ltd. f/k/a LG.Philips Displays, Samsung SDI Co. Ltd., Samsung SDI America, Inc., Samsung SDI México S.A. de C.V., Samsung SDI Brasil Ltda., Shenzhen Samsung SDI Co. Ltd., Tianjin Samsung SDI Co. Ltd., Samsung SDI Malaysia Sdn. Bhd., Toshiba Corporation, Toshiba America Consumer Products, LLC., Toshiba America Information Systems, Inc., Toshiba America Electronics Components, Inc. Toshiba Display Devices (Thailand) Company, Ltd., P.T. Tosummit Electronic Devices Indonesia,  Panasonic Corporation f/k/a Matsushita Electric Industrial, Ltd., Panasonic Corporation of North America, Matsushita Electronic Corporation (Malaysia) Sdn Bhd., MT Picture Display Co., Ltd., Beijing-Matsushita Color CRT Company, Ltd. (BMCC), Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Electronic Devices (USA), Inc., Hitachi America, Ltd., Hitachi Asia, Ltd., Shenzhen SEG Hitachi Color Display Devices, Ltd., Chunghwa Picture Tubes Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.,  IRICO Group Corporation, IRICO Display Devices Co., Ltd., IRICO Group Electronics Co., Ltd., Thai CRT Company, Ltd., y  Samtel

Color, Ltd., Thomson SA (n/k/a Technicolor SA), Thomson Consumer Electronics, Inc. (n/k/a/ Technicolor USA, Inc.), Videocon Industries, Ltd., Mitsubishi Electric Corporation y Mitsubishi Electric & Electronics USA, Inc.

## 4.  ¿De qué se trata esta demanda?

La demanda alega que los Demandados conspiraron para establecer, aumentar, mantener o estabilizar los precios de productos con CRT lo cual llevó a sobrecargos para los consumidores que compraron productos con CRT como televisores y monitores de computadoras. Los Demandados niegan haber hecho algo incorrecto. El tribunal aún no ha decidido quién tiene la razón.

## 5. ¿Qué es un Producto con Tubos de Rayos Catódicos (CRT)?

A los efectos de la demanda y del acuerdo, la denominación de productos con tubos de rayos catódicos (CRT) se refiere a tubos de rayos catódicos de cualquier tipo (por e. j. tubos de pantalla a color, tubos de imagen a color y tubos de pantalla monocromática) y productos terminados que contienen tubos de rayos catódicos como televisores y monitores de computadoras.

## EL GRUPO LITIGANTE

## 6. ¿Cómo sé si soy parte del Grupo Litigante?

El 19 de septiembre de 2013, el Tribunal del Distrito falló que la demanda procedía como una demanda colectiva a nombre del Grupo Litigante. Usted es miembro del Grupo Litigante si usted satisface los requisitos que se mencionan a continuación:

(A)  Todas las personas o entidades en Arizona, California, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nuevo México, Nueva York, Carolina del Norte, Dakota del Norte, Dakota del Sur, Tennessee, Vermont, Virginia Occidental, o Wisconsin que, como residentes de esos estados, compraron indirectamente para su propio uso y no para revender cualquier producto CRT fabricado por los Demandados o sus copartícipes entre el 1 de marzo de 1995 y el 25 de noviembre de 2007.

(B)  Todas las personas o entidades en el Distrito de Columbia que, como residentes del mismo, compraron indirectamente para su propio uso y no para revender cualquier producto CRT fabricado por los Demandados o sus copartícipes entre el 1 de marzo de 1995 y el 25 de noviembre de 2007.

(C)  Todas las personas o entidades en Hawaii que, como residentes de Hawaii, compraron indirectamente para su propio uso y no para revender cualquier producto CRT fabricado por los Demandados o sus copartícipes entre el 25 de junio de 2002 y el 25 de noviembre de 2007.

(D)  Todas las personas o entidades en Nebraska que, como residentes de Nebraska, compraron indirectamente para su propio uso y no para revender cualquier producto

CRT fabricado por los Demandados o sus copartícipes entre el 20 de Julio de 2002 y el 25 de noviembre de 2007.

(E)     Todas las personas o entidades en Nevada que, como residentes de Nevada, compraron indirectamente para su propio uso y no para revender cualquier producto CRT fabricado por los Demandados o sus copartícipes entre el 4 de febrero de 1999 y el25 de noviembre de 2007.

## EXCLUSIONES

Se excluyen específicamente de estos Grupos a los Demandados; funcionarios, directores o empleados de cualquier Demandado; cualquier entidad en la cual tenga intereses de control cualquier Demandado; y cualquier afiliado, representante legal, heredero o designado de cualquier Demandado.  También se excluye a los copartícipes mencionados, entidades gubernamentales federales, estatales o locales, cualquier funcionario judicial presidiendo esta demanda y miembros de su familia inmediata y personal judicial así como cualquier jurado asignado a esta demanda.

## 7. ¿Cuáles son mis opciones si soy un miembro del Grupo Litigante?

Si usted es un miembro del Grupo Litigante, usted puede: (1) quedarse como miembro del Grupo o (2) solicitar ser excluido del Grupo.

**Permanecer como miembro del Grupo Litigante:** Si usted desea permanecer como miembro del Grupo usted no tiene que hacer nada más en este momento. Usted quedará automáticamente como un miembro del Grupo.

Si usted se queda como un miembro del Grupo, usted estará vinculado a las regulaciones del Tribunal del Distrito en la demanda, incluyendo cualquier acuerdo o fallo final. No obstante, usted puede objetar o comentar cualquier acuerdo propuesto y usted también tiene derecho a presentarse ante el Tribunal.

**Excluirse del Grupo Litigante:** Si usted desea excluirse del Grupo Litigante, y conservar su derecho a demanda a los Demandados por su cuenta, usted tiene que enviar una carta que incluya lo siguiente:
* Su nombre, dirección y número de teléfono,
* Una declaración indicando que quiere ser "Excluido del Grupo Litigante'" de *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, Chunghwa Settlement; y
* Su firma

Debe enviar su petición de exclusión por correo, con fecha de sello postal anterior al **20 de marzo de 2014**, a:

CRT Litigated Class Exclusion
c/o The Notice Company
PO Box 778
Hingham, MA 02043

## EL GRUPO DEL ACUERDO

### 8. ¿Por qué hay un Acuerdo pero la demanda continúa?

El Demandado en Conciliación es solo una de una serie de compañías demandadas mencionadas en la demanda. El Demandado en Conciliación ha accedido a pagar a los Demandantes $25 millones para poner fin a la disputa en su contra. Los Demandados habían acordado previamente con los Demandados Chunghwa Picture Tubes Ltd. y Chunghwa Picture Tubes (Malaysia) Sdn Bhd. El pago de $10 millones. Ese acuerdo fue final el 22 de marzo de 2012. El caso continúa contra los restantes Demandados en No Conciliación. Puede que haya más dinero adicional disponible en el futuro como resultado de un juicio o acuerdos futuros, pero no hay garantías de que esto suceda.

### 9. ¿Cómo sé si soy parte del Grupo del Acuerdo?

La demanda se presentó en nombre de un grupo a nivel nacional de Compradores Indirectos de Productos CRT para prohibir la conducta de los Demandados que los Demandantes alegan es impropia. Esto se denomina medida cautelar. La demanda también pretende recuperar dinero de parte de los Demandados por daños sufridos por los demandantes debido a Compras Indirectas en los 21 estados y el Distrito de Columbia. El Demandado en Conciliación ha acordado pagar $25,000,000. A cambio, los miembros del Grupo del Acuerdo acuerdan abandonar sus demandas de medidas cautelares y dinero por daños.

Por tanto, el Tribunal del Distrito ha certificado un Grupo del Acuerdo consistente en (1) un Grupo Cautelar a Nivel Nacional; y (2) Grupos Afectados a Nivel Estatal. Los miembros del Grupo Cautelar a Nivel Nacional obtendrán solamente medidas cautelares. En fecha posterior, los miembros de los Grupos Afectados a Nivel Estatal recibirán el dinero a distribuir de este acuerdo. Algunas personas pudieran calificar como miembros de ambos grupos. Estas personas pudieran recibir ambos beneficios, medidas cautelares y dinero.

Usted es parte del Grupo del Acuerdo si usted cumple los requisitos de ser un miembro del Grupo Cautelar a Nivel Nacional o uno de los Grupos Afectados a Nivel Estatal, o es miembro de ambos grupos, como se establece a continuación:

### GRUPO CAUTELAR A NIVEL NACIONAL:

Todas las personas o entidades que compraron indirectamente en Estados Unidos para su propio uso y no para revender cualquier producto CRT fabricado por los demandados o sus copartícipes entre el 1 de marzo de 1995 y el 25 de noviembre de 2007. Las demandas a nombre de personas de Illinois (como se define en 740 ILCS 10/4) para fines de reclamación según 740 Ill. Comp. Stat § 10/7(2); personas naturales de Oregón (como se define en ORS 646.705(2)) para fines de reclamación según ORS § 646. 775(1), y personas de Washington (como se define en RCW 19.86.080) para fines de reclamación según RCW 19.86.080 (1) en 740 ILCS 10/4, están específicamente excluidas de este grupo.

## GRUPOS AFECTADOS A NIVEL ESTATAL:

(A)   Todas las personas o entidades en Arizona, California, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nuevo México, Nueva York, Carolina del Norte, Dakota del Norte, Dakota del Sur, Tennessee, Vermont, Virginia Occidental, Wisconsin o el Distrito de Columbia que compraron indirectamente para su propio uso y no para revender cualquier producto CRT fabricado por los Demandados o sus copartícipes entre el 1 de marzo de 1995 y el 25 de noviembre de 2007

(B)   Todas las personas o entidades en Hawaii que compraron indirectamente para su propio uso y no para revender cualquier producto CRT fabricado por los Demandados o sus copartícipes entre el 25 de junio de 2002 y el 25 de noviembre de 2007.

(C)   Todas las personas o entidades en Nebraska que, compraron indirectamente para su propio uso y no para revender cualquier producto CRT fabricado por los Demandados o sus copartícipes entre el 20 de Julio de 2002 y el 25 de noviembre de 2007.

(D)   Todas las personas o entidades en Nevada que compraron indirectamente para su propio uso y no para revender cualquier producto CRT fabricado por los Demandados o sus copartícipes entre el 4 de febrero de 1999 y el 25 de noviembre de 2007.

## EXCLUSIONES:

Se excluyen específicamente de estos Grupos a los Demandados; funcionarios, directores o empleados de cualquier Demandado; cualquier entidad en la cual tenga intereses de control cualquier Demandado; y cualquier afiliado, representante legal, heredero o designado de cualquier Demandado.  También se excluye a los copartícipes mencionados, entidades gubernamentales federales, estatales o locales, cualquier funcionario judicial presidiendo esta demanda y los miembros de su familia inmediata y personal judicial, así como a cualquier jurado asignado a esta demanda.
      .

| **10. ¿Qué establece el Acuerdo?** |
| --- |

El Acuerdo establece el pago de $25 millones en efectivo, más el interés, por parte del Demandado en Conciliación al Grupo del Acuerdo. También establece que el Demandado en Conciliación ofrezca información acercadle caso, incluyendo la participación de otros Demandados en la supuesta conspiración, al abogado del grupo. Finalmente, prevé que parte de los $25 millones del fondo del acuerdo sean usados para pagar por los gastos incurridos o en los que se incurrirá en el futuro, en el litigio. Los demandantes pretenden solicitar que el Tribunal les permita utilizar hasta $5 millones de este fondo para pagar por los gastos incurridos o en los que incurrirán en el futuro, eneste litigio.

Más detalles del Acuerdo de Compensación están a disposición  **www.CRTsettlement.com**.

## 11. ¿Cuándo puedo recibir un pago?

Aún no se distribuirá dinero alguno a los miembros del Grupo del Acuerdo. Los abogados continuarán el proceso contra los Demandados en No Conciliación para ver si cualquier acuerdo o fallo futuro puede obtenerse en el caso y luego ser distribuido en conjunto para reducir los gastos. Es posible que el dinero sea distribuido a organizaciones que son, en la medida de las posibilidades, representativas de los intereses de los compradores indirectos de productos CRT en lugar de a los propios miembros del Grupo si el costo del procesamiento de reclamaciones resultara en pequeños pagos a los mismos.

## 12. ¿Cuáles son mis derechos en el Grupo del Acuerdo?

**Permanecer en el Grupo del Acuerdo:** Si usted desea permanecer como miembro del Grupo del Acuerdo no necesita hacer nada en este momento.

**Salir del Grupo del Acuerdo:** Si usted desea mantener su derecho a denunciar al Demandado en Conciliación sobre las alegaciones del grupo en este caso, usted tiene que excluirse a sí mismo. Usted no tendrá derecho a recibir ningún dinero de este acuerdo si se excluye a sí mismo del acuerdo.

Para ser excluido del acuerdo debe enviar una carta que incluye lo siguiente:

- Su nombre, dirección y número de teléfono;
- Una declaración indicando que quiere ser **"Excluido del Grupo del Acuerdo"** de *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, y
- Su firma.

Debe enviar su petición de exclusión por correo, con fecha de sello postal anterior al **20 de marzo de 2014**, a:

CRT Settlement Class Exclusion
c/o The Notice Company
PO Box 778
Hingham, MA 02043

Si su declaración de exclusión no se refiere al "Grupo del Acuerdo" o si no es enviada a "CRT Settlement Class Exclusion", entonces su declaración será tratada como una solicitud de exclusión del Grupo Litigante.

**Permanecer en el Grupo del Acuerdo y Objetar:** Si usted tiene comentarios sobre el acuerdo, o está en desacuerdo con cualquier aspecto del acuerdo usted puede expresar sus opiniones al Tribunal del Distrito escribiendo a la dirección que aparece debajo. La intervención por escrito debe incluir su nombre, dirección, número de teléfono, el número y nombre del caso (*In re Tubos de Rayos Catódicos (CRT) Litigio Antimonopolio Antitrust Litigation*, MDL No. 1917), prueba de membrecía del Grupo del Acuerdo (p.ej. un recibo, facture o fotografía del producto CRT),

una breve explicación de sus razones para objetar y su firma. Además debe tener una fecha de sello postal anterior al **20 de marzo de 2014**, y deberá enviarse a:

| TRIBUNAL | ABOGADO DEL GRUPO | ABOGADO DEFENSOR |
|---|---|---|
| Clerk's Office United States District Court for the District of Northern California 16th Floor 450 Golden Gate Ave San Francisco, CA 94102 | Mario N. Alioto Trump, Alioto, Trump & Prescott LLP 2280 Union Street San Francisco, CA 94123 | Hojoon Hwang Munger Tolles & Olson LLP 560 Mission Street, 27th Floor San Francisco, CA 94105 |

### 13. ¿A qué renuncio si permanezco dentro del Grupo del Acuerdo?

Sí. usted no se excluye a sí mismo del Grupo del Acuerdo, usted no puede demandar al Demandado en Conciliación, continuar demandando, ni ser parte de cualquier otra demanda contra el Demandado en Conciliación relativa a los problemas legales de este caso. También significa que estará obligado a acatar todas las decisiones del Tribunal de Distrito. La "Renuncia a Reclamaciones" incluye cualquier causa de acciones afirmadas o que pudieran haber sido afirmadas en la demanda, como se describe en detalle en el Acuerdo Conciliatorio. El Acuerdo Conciliatorio está disponible en **www.CRTsettlement.com**.

## INTERACCIÓN ENTRE EL GRUPO LITIGANTE Y EL GRUPO DEL ACUERDO

### 14. ¿Puedo permanecer en el Grupo Litigante y optar por no pertenecer al Grupo del Acuerdo?

Sí. Usted puede permanecer como miembro del Grupo Litigante y excluirse del Grupo del Acuerdo

### 15. ¿Puedo permanecer en el Grupo del Acuerdo y optar por no pertenecer al Grupo Litigante?

No. Si usted se excluye del Grupo Litigante, entonces usted quedará excluido del Grupo del Acuerdo. Usted no será incluido en este acuerdo ni ningún otro en el futuro y no estará vinculado a ningún fallo futuro del Tribunal del Distrito.

## LA AUDIENCIA PARA APROBAR EL ACUERDO

### 16. ¿Cuándo y dónde decidirá el Tribunal si aprobar o no el Acuerdo?

El Tribunal del Distrito celebrará una Audiencia de Equidad a las 10:00 a.m. el **18 de abril de 2014**, en 450 Golden Gate Ave., 17th Floor, Courtroom One, San Francisco, CA 94102. La audiencia puede cambiarse a una fecha u hora diferente sin previo aviso, por lo que es una buena idea visitar **www.CRTsettlement.com**. En esta audiencia, el Tribunal del Distrito considerará si el acuerdo es justo, razonable y adecuado. El Tribunal del Distrito también tendrá en cuenta la petición o peticiones del Abogado del Grupo para usar hasta $5 millones del Fondo del Acuerdo para pagar gastos incurridos en el caso. Si hay objeciones o comentarios, el Tribunal del Distrito los considerará en ese momento. Tras la audiencia, el Tribunal del Distrito decidirá si aprueba o no el Acuerdo. No sabemos cuánto demore la toma de estas decisiones.

### 17. ¿Tengo que presentarme en la Audiencia?

No. El Abogado del Grupo contestará cualquier pregunta que pueda tener el Tribunal del Distrito. Pero usted es bienvenido a asistir a su propio costo. Si usted envía una objeción o comentario, no tiene que acudir al Tribunal del Distrito para hablar sobre ello. Siempre que envíe su objeción o comentario por escrito a tiempo, el Tribunal del Distrito los considerará. Usted también puede pagar a un abogado para asistir, pero no se requiere que lo haga.

### 18. ¿Puedo hablar en la Audiencia?

Si desea su propio abogado en lugar del Abogado del Grupo para que hable en la Audiencia de Equidad, usted debe darle al Tribunal del Distrito un documento llamado "Aviso de Comparecencia". Dicho Aviso debe incluir el nombre y número de la demanda (*In re Cathode Ray Tube (CRT) Antitrust Litigation*, 07-cv-05944 SC (MDL No. 1917), y el estado con que usted desea ingrese una comparecencia en la Audiencia de Equidad. También debe incluir su nombre, dirección, número de teléfono y firma. Su aviso de comparecencia debe tener fecha de sello postal anterior al Mes 00, 2013. Usted no podrá hablar en la Audiencia de Equidad si usted pidió con anterioridad su exclusión del Acuerdo.

El Aviso de Comparecencia debe enviarse a las direcciones que aparecen en la Pregunta 12.

## LOS ABOGADOS QUE LO REPRESENTAN

### 19. ¿Tengo un abogado en este caso?

El tribunal ha designado a Mario N. Alioto de Trump, Alioto, Trump & Prescott LLP para representarlo a usted como "Abogado Grupo". Usted no tiene que pagar al Abogado del Grupo. Si usted desea ser representado por su propio abogado y el mismo comparece ante el Tribunal en su nombre, usted puede contratarlo a su propio costo.

**20.  ¿Cómo se pagará a los abogados?**

En un futuro  el Abogado del Grupo solicitará al Tribunal honorarios de los abogados que no
excederán un tercio (1/3) de los $25,000,000 del Fondo del Acuerdo más el reembolso de sus
gastos y costas, según lo estipulado en el acuerdo. El Abogado del Grupo puede también solicitar
que se le pague una cantidad a cada uno de los representantes del Grupo Demandante que
ayudaron a los abogados en nombre de todo el Grupo.


## CONSTANCIA DE COMPRA

**21. ¿Qué pasos debo seguir para demonstrar evidencia de compra/posesión de un producto
CRT?**

Si usted tiene recibos de compra, facturas o cualquier otra prueba de compra de cualquier
producto CRT, por favor, retenga esos documentos. Si en estos momentos usted tiene un
producto CRT por favor consérvelo si le es posible. Si no puede hacerlo por favor fotografíe la
parte delantera y parte posterior del producto CRT incluyendo cualquier nombre comercial y
anote el número del modelo, número de serie, tamaño y cualquier otra información que crea
puede ayudar a identificar al fabricante del producto CRT. Usted pudiera retirar el panel
posterior y fotografiar el nombre del fabricante ubicado en el propio tubo CRT.  Por favor,
asegúrese de que el televisor o monitor está desconectado antes de hacerlo. Si usted tiene
cualquier pregunta o preocupación respecto a la prueba de compra o la identificación del
fabricante, por favor remítase a la Pregunta 22.


## OBTENER MÁS INFORMACIÓN

**22.  ¿Cómo obtengo más información?**

Este aviso resume la demanda y el Acuerdo. Usted puede obtener más información acerca de la
demanda y Acuerdos en **www.CRTsettlement.com**, llamando al 1-800-649-8153, o escribiendo
a CRT Class Action, c/o The Notice Company, PO Box 778, Hingham, MA 02043.  Por favor,
no contacte al Tribunal del Distrito acerca de este caso.

**DECLARATION OF JOSEPH M. FISHER**

**EXHIBIT D**

AVISO LEGAL

## Si usted ha comprado un producto con tubo de rayos catódicos,
### podría verse afectado por un Acuerdo de Demanda Colectiva

Los productos con tubo de rayos catódicos (**CRT**, del inglés Cathode Ray Tube) incluyen tubos de rayos catódicos, televisores, monitores de computadoras y otros productos que contienen CRT.

Para una notificación en Español, llamar o visitar nuestro sitio web.

El 19 de septiembre de 2013, el Tribunal de Distrito de los Estados Unidos para el Distrito Norte de California (el "Tribunal") certificó grupos demandantes en 21 estados y el Distrito de Columbia, de individuos y negocios que compraron indirectamente cualquier producto CRT a las Compañías Demandadas o a cualquier copartícipe (denominados colectivamente "Demandados"), para su propio uso y no para revender, del 1 de marzo de 1995 al 25 de noviembre 25 de 2007 (el "Grupo Litigante"). El caso se encuentra en *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, 07-cv-05944-SC. "Indirectamente" significa que usted no compró el producto CRT directamente a ninguno de los Demandados.

Se ha llegado a un Acuerdo con LG Electronics, Inc.; LG Electronics USA, Inc.; y LG Electronics Taiwan Taipei Co., Ltd. ("LG"). El 9 de diciembre de, 2013, el tribunal aprobó preliminarmente el Acuerdo LG y certificó para toda la nación (excluyendo Illinois, Oregón y Washington) un acuerdo colectivo de individuos y negocios que compraron indirectamente cualquier producto CRT a los Demandados para su propio uso y no para revender, del 1 de marzo de 1995 hasta el 25 de noviembre de 2007 (el "Acuerdo Colectivo). El Tribunal previamente aprobó un acuerdo con los demandados Chunghwa Picture Tubes Ltd. y Chunghwa Picture Tubes (Malasia) Sdn Bhd.

El litigio contra los restantes Demandados continúa.  El Acuerdo de Conciliación, la Orden de Certificación  de la Demanda Colectiva, la Orden de Acuerdo Preliminar  y una lista completa de Demandados aparecen detalladamente en el Aviso Detallado, disponible ***www.CRTsettlement.com***.

### ¿De qué se trata este caso?

La demanda alega que numerosos Demandados, incluyendo a LG, conspiraron para establecer, aumentar, mantener o estabilizar precios de productos CRT, lo cual llevó a sobrecargos para los consumidores que compraron productos con CRT como televisores y monitores de computadoras. Los Demandados niegan haber hecho algo incorrecto. El Tribunal aún no ha decidido quién tiene la razón

### ¿Qué dispone el Acuerdo?

El Acuerdo dispone el pago por parte de LG de $25 millones en efectivo, más el interés, al Grupo Demandante. También estipula que LG dará información sobre el caso, incluyendo la participación de otros Demandados en la supuesta conspiración, al Abogado de los Demandantes. Todavía no se distribuirá dinero a los miembros del Grupo del Acuerdo. Los abogados continuarán la demanda contra los restantes Demandados para determinar si cualesquiera acuerdos o juicios futuros pueden lograrse en el caso y entonces distribuir los fondos conjuntamente para reducir gastos. Es posible que se distribuya dinero a organizaciones que son, en cierta medida, representativas de los intereses de compradores indirectos de productos CRT en lugar de  los mismos miembros del Acuerdo Colectivo, si el costo de procesamiento de las reclamaciones resultara en pequeños pagos a los miembros del Grupo del Acuerdo.

### ¿Quién lo representa a usted?

El Tribunal ha designado a Mario N. Alioto de Trump, Alioto, Trump & Prescott LLP como "Abogado del Grupo" para representar a los miembros del Grupo Litigante y del Grupo del Acuerdo.  Usted no tiene que pagar a estos abogados para que lo representen. Usted puede contratar a su propio abogado, si lo desea, pero si lo hace, será responsable de los honorarios y gastos de su propio abogado.

### ¿Cuáles son sus Opciones?

Si desea mantenerse como miembro del Grupo Litigante, no precisa hacer nada ahora. Usted estará vinculado al fallo del Tribunal respecto a sus reclamaciones y no puede presentarlas en otra demanda. Si no quiere ser parte del Grupo Litigante ni estar obligado legalmente al Acuerdo, tiene que excluirse por escrito para el **20 de marzo de 2014**. Si permanece como miembro del Grupo del Acuerdo puede objetar al Acuerdo para el **20 de marzo de 2014**. El Aviso en Detalle que puede revisar online en ***www.CRTsettlement.com***, describe cómo excluirse del Grupo Litigante o Grupo de Acuerdo, o cómo objetar el Acuerdo. El Tribunal efectuará una Audiencia de Imparcialidad a las 10:00 a.m. el **18 de abril de 2014**, en 450 Golden Gate Ave., 17th Floor, Courtroom One, San Francisco, CA 94102. La audiencia puede cambiarse a una fecha u hora distinta sin previa notificación, así que en una buena idea chequear en ***www.CRTsettlement.com***. En esta audiencia, el Tribunal considerará si el Acuerdo es justo, razonable y adecuado. El Tribunal también considerará la solicitud del abogado del grupo acerca de que  $5 millones del Fondo de Acuerdo in separados para pagar por los gastos incurridos o en los que se incurrirá en la prosecución del caso. El abogado del Grupo no está solicitando honorarios para los consejeros en este momento. En el futuro, el abogado del Grupo solicitará al Tribunal honorarios para los abogados que no excederán un tercio del presente Acuerdo y cualquier acuerdo futuro. Si hay comentarios u objeciones respecto a los honorarios solicitados, el Tribunal lo considerará en dicho momento.  Usted puede comparecer a la audiencia, pero no está obligado a hacerlo. Después de la audiencia, el Tribunal decidirá si aprobar el Acuerdo. No sabemos cuánto tardará dicha decisión. Por favor, no contacte al Tribunal sobre este caso. Por favor conserve cualquier recibo u otra prueba de compra de cualquier producto CRT. Antes de disponer de cualquier producto CRT, por favor vea el Aviso en Detalle para recomendaciones acerca de preservar prueba de propiedad.

Para más detalles llame gratis al 1-800-649-8153, visite ***www.CRTsettlement.com,*** o escriba a  CRT Indirect Settlement, c/o The Notice Company, P.O. Box 778, Hingham, MA 02043.

**DECLARATION OF JOSEPH M. FISHER**

**EXHIBIT E**



PUBLICATIONS

**GEORGE PAPADOPOULOS**
*Distribution Manager*

## PUBLICATION
## AFFIDAVIT

Joseph M Fisher
President
The Notice Company, Inc.
94 Station St
Hingham, MA 02043
781-740-1900  tel
781-836-4297  fax
legal@notice.com

I, George Papadopoulos, being Distribution Manager of PARADE Publications, hereby certify as follows:

The *CRT Settlement* ad on behalf of The Notice Company published in PARADE's January 19th issue ran nationally in all the markets that were ordered.

Sincerely,

Subscribed and sworn before me this _21st_ day of _January, 2014_____.

JOSEPH BRONNENKANT
Notary Public, State of New York
No. 4891451
Qualified in Suffolk County
Commission Expires May 4, 20_15_

*711 Third Avenue, New York, NY  10017-4014*
*telephone:(212)450-7032  fax:(212)450-7280  e-mail: george_papadopoulos@parade.com*



**WHO TO WATCH NEXT MONTH**

*Meet America's most promising Olympic skaters headed to the Winter Games in Sochi at parade.com/skate.*

light of his "unique hobby of collecting life-threatening illnesses," including testicular cancer and a recurrent benign brain tumor.

"I think what sets skaters apart is we have to get up a lot," says Hamilton, who will be in Sochi as a figure skating analyst for NBC. (Ohno and Yamaguchi will also be there, as an NBC speed skating analyst and the U.S. Olympic committee's digital ambassador, respectively.) "We fall down all the time, and we get up. If anything is following me from my skating career into my life, it's the getting up."

**PARADE:** What's it like for competitors during these last few weeks leading up to the Olympics?
**OHNO:** Athletes train years for a chance at 40 seconds on the ice. By the time they arrive in Sochi, there's nothing more they can do to prepare physically; it's a mind game, and it can make or break the athlete. That's when the real champions come to light.
**You'll all be spectators of the Games this year. How does it feel to be on the other side?**
**HAMILL:** I love when you're watching someone you've just been introduced to on TV, and how you can be so emotionally involved in this young person. They're out there and it's all on the line. As a former competitor, you're out there with them.
**The four of you captured the public's hearts as beloved Olympians. What do you most admire about one another?**
**HAMILTON:** Do you know what

**Signature Move**

**Apolo Ohno**

In 2010, Ohno's famous **explosive acceleration** clinched the final two Olympic medals of his career, when he sailed from the back of the pack into third place in the 1,000-meter event and the 5,000-meter relay.

**Signature Move**

**Kristi Yamaguchi**

At the 1992 Games, Yamaguchi opened her spellbinding long program with her favorite trick, the dizzying **triple lutz–triple toe** jump sequence.

Apolo does before he races? He yawns to relax himself. To watch this explosive power, and to see that yawn before, it's really cool. I met Kristi when she was about 8 years old. She presented me with a rose at the first national championship I won, in 1981. I've watched her grow from a child to Olympic champion to superstar to wife and mother. She's toes-up integrity.
**HAMILL:** I was there in the arena when she won the Olympics, and she looked like this little music-box doll.
**YAMAGUCHI:** Well, I wouldn't be sitting here if it wasn't for Dorothy. She was my big idol. I was fascinated by the romanticism of the sport because of Dorothy, America's Sweetheart. I had my Dorothy Hamill doll—with the red dress and the medal. It would come to the rink with me and sit on the rails.

LEGAL NOTICE

**If You Bought A Cathode Ray Tube Product,**
A Class Action Lawsuit and Settlement May Affect You.

Cathode Ray Tube (CRT) Products include CRTs, Televisions, Computer Monitors, and other products containing CRTs. | Para una notificación en Español, llamar o visitar nuestro website.

On September 19, 2013, the US District Court for the Northern District of California (the "Court") certified plaintiff classes in 21 states and the District of Columbia, of individuals and businesses that indirectly purchased any CRT Product from the Defendant Companies or any co-conspirator (collectively "Defendants"), for their own use and not for resale, from March 1, 1995 through November 25, 2007 (the "Litigated Class"). The case is *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, 07-cv-05944-SC. "Indirect" means that you did not buy the CRT Product directly from any of the Defendants.

A Settlement has been reached with LG Electronics, Inc.; LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd. ("LG"). On December 9, 2013, the Court preliminarily approved the LG Settlement and certified a nationwide (excluding Illinois, Oregon and Washington) settlement class of individuals and businesses that indirectly purchased any CRT Product from the Defendants, for their own use and not for resale, from March 1, 1995 through November 25, 2007 (the "Settlement Class"). The Court previously approved a settlement with defendants Chunghwa Picture Tubes Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn Bhd.

The litigation is continuing against the remaining Defendants. The Settlement Agreement, the Class Certification Order, the Preliminary Approval Order and a complete list of the Defendants are set out in the Detailed Notice available at www.CRTsettlement.com.

**What is this case about?**

The lawsuit claims that numerous Defendants, including LG, conspired to fix, raise, maintain or stabilize prices of CRT Products resulting in overcharges to consumers who bought CRT Products such as televisions and computer monitors. The Defendants deny that they did anything wrong. The Court has not decided who is right.

**What does the Settlement Provide?**

The Settlement provides for the payment by LG of $25 million in cash, plus interest, to the Settlement Class. It also provides that LG will furnish information about the case, including other Defendants' involvement in the alleged conspiracy, to Class Counsel. Money will not be distributed to Settlement Class members yet. The lawyers will pursue the lawsuit against the other Defendants to see if any future settlements or judgments can be obtained in the case and then distribute the funds together to reduce expenses. It is possible that money will be distributed to organizations that are, as nearly as

practicable, representative of the interests of indirect purchasers of CRT Products instead of Settlement Class members themselves if the cost to process claims would result in small payments to members of the Settlement Class.

**Who Represents You?**

The Court has appointed Mario N. Alioto of Trump, Alioto, Trump & Prescott LLP as "Class Counsel" to represent members of the Litigated Class and the Settlement Class.   You do not have to pay these lawyers to represent you. You may hire your own attorney, if you wish, but if you do so you will be responsible for your own attorney's fees and expenses.

**What are your Options?**

If you wish to remain a member of the Litigated Class and the Settlement Class, you do not need to take any action at this time. You will be bound by the judgment of the Court regarding your claims and cannot present them in another lawsuit. If you don't want to be a member of the Litigated Class, or be legally bound by the Settlement, you must exclude yourself in writing by **March 20, 2014**. If you remain a Settlement Class member, you may object to the Settlement by **March 20, 2014**. The Detailed Notice, which you may review online at www.CRTsettlement.com, describes how to exclude yourself from the Litigated Class or the Settlement Class, or how to object to the Settlement. The Court will hold a Fairness Hearing at 10:00 a.m. on **April 18, 2014**, at 450 Golden Gate Ave., 17th Floor, Courtroom One, San Francisco, CA 94102.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.CRTsettlement.com. At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate.  The Court will also consider Class Counsel's request that $5 million from the Settlement Fund be set aside to pay for expenses incurred or to be incurred in prosecuting this case. Class Counsel are not asking for attorneys' fees at this time. At a future time, Class Counsel will ask the Court for attorneys' fees not to exceed one-third of this and any future settlements. If there are objections or comments to the fees requested, the Court will consider them at that time.  You may appear at the hearing, but you don't have to.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.  Please do not contact the Court about this case.  Please retain any receipts or other evidence of purchase of any CRT Product.  Before disposing of any CRT Product please see the Detailed Notice for recommendations on preserving proof of ownership.

For more details, call toll free 1-800-649-8153, visit www.CRTsettlement.com or write to CRT Indirect Settlement, c/o The Notice Company, P.O. Box 778, Hingham, MA 02043

**DECLARATION OF JOSEPH M. FISHER**

**EXHIBIT F**



# PROOF OF PUBLICATION

I hereby certify that the Legal Notice for

The Notice Company/CRT

Ran in
**USA WEEKEND MAGAZINE**

We hereby declare that The Notice Company/CRT booked an advertisement for Class Action Suit that was in size a Quarter page, BW unit. This Legal Advertisement published nationally in USA WEEKEND Magazine.

On

**January 19, 2014**

**USA WEEKEND REPRESENTATIVE**

Signed: _Brian C. Jones_

Brian C. Jones, Sr. Manager/Advertising Operations

Date: _1-22-14_

Please imprint seal

_Julie Roth_
Notary Public Signature

_12/31/17_
Date My Commission Expires

JULIE ROTH
NOTARY PUBLIC
REG. #7573317
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES DECEMBER 31, 2017

**\*\*\* MUST BE NOTARIZED FOR LEGAL PURPOSES \*\*\***

\*\*\* Please mail along with a tearsheet to:

The Notice Company, Inc.
94 Station Street
Hingham, MA 02043
Attn: Joseph Fisher
781-740-1900

LEGAL NOTICE

## If You Bought A Cathode Ray Tube Product,
**A Class Action Lawsuit and Settlement May Affect You.**

Cathode Ray Tube (CRT) Products include CRTs, Televisions, Computer Monitors, and other products containing CRTs. | Para una notificacion en Espanol, llamar o visitar nuestro website.

On September 19, 2013, the US District Court for the Northern District of California (the "Court") certified plaintiff classes in 21 states and the District of Columbia, of individuals and businesses that indirectly purchased any CRT Product from the Defendant Companies or any co-conspirator (collectively "Defendants"), for their own use and not for resale, from March 1, 1995 through November 25, 2007 (the "Litigated Class"). The case is *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, 07-cv-05944-SC. "Indirect" means that you did not buy the CRT Product directly from any of the Defendants.

A Settlement has been reached with LG Electronics, Inc.; LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd. ("LG"). On December 9, 2013, the Court preliminarily approved the LG Settlement and certified a nationwide (excluding Illinois, Oregon and Washington) settlement class of individuals and businesses that indirectly purchased any CRT Product from the Defendants, for their own use and not for resale, from March 1, 1995 through November 25, 2007 (the "Settlement Class"). The Court previously approved a settlement with defendants Chunghwa Picture Tubes Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn Bhd.

The litigation is continuing against the remaining Defendants. The Settlement Agreement, the Class Certification Order, the Preliminary Approval Order and a complete list of the Defendants are set out in the Detailed Notice available at *www.CRTsettlement.com*.

**What is this case about?**

The lawsuit claims that numerous Defendants, including LG, conspired to fix, raise, maintain or stabilize prices of CRT Products resulting in overcharges to consumers who bought CRT Products such as televisions and computer monitors. The Defendants deny that they did anything wrong. The Court has not decided who is right.

**What does the Settlement Provide?**

The Settlement provides for the payment by LG of $25 million in cash, plus interest, to the Settlement Class. It also provides that LG will furnish information about the case, including other Defendants' involvement in the alleged conspiracy, to Class Counsel. Money will not be distributed to Settlement Class members yet. The lawyers will pursue the lawsuit against other Defendants to see if any future settlements or judgments can be obtained in the case and then distribute the funds together to reduce expenses. It is possible that money will be distributed to organizations that are, as nearly as practicable, representative of the interests of indirect purchasers of CRT Products instead of Settlement Class members themselves if the cost to process claims would result in small payments to members of the Settlement Class.

**Who Represents You?**

The Court has appointed Mario N. Alioto of Trump, Alioto, Trump & Prescott LLP as "Class Counsel" to represent members of the Litigated Class and the Settlement Class.   You do not have to pay these lawyers to represent you. You may hire your own attorney, if you wish, but if you do so you will be responsible for your own attorney's fees and expenses.

**What are your Options?**

If you wish to remain a member of the Litigated Class and the Settlement Class, you do not need to take any action at this time. You will be bound by the judgment of the Court regarding your claims and cannot present them in another lawsuit. If you don't want to be a member of the Litigated Class, or be legally bound by the Settlement, you must exclude yourself in writing by **March 20, 2014**. If you remain a Settlement Class member, you may object to the Settlement by **March 20, 2014**. The Detailed Notice, which you may review online at *www.CRTsettlement.com*, describes how to exclude yourself from the Litigated Class or the Settlement Class, or how to object to the Settlement. The Court will hold a Fairness Hearing at 10:00 a.m. on **April 18, 2014**, at 450 Golden Gate Ave., 17th Floor, Courtroom One, San Francisco, CA 94102. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check *www.CRTsettlement.com*. At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. The Court will also consider Class Counsel's request that $5 million from the Settlement Fund be set aside to pay for expenses incurred or to be incurred in prosecuting this case. Class Counsel are not asking for attorneys' fees at this time. At a future time, Class Counsel will ask the Court for attorneys' fees not to exceed one-third of this and any future settlements. If there are objections or comments to the fees requested, the Court will consider them at that time. You may appear at the hearing, but you don't have to.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.  Please do not contact the Court about this case.  Please retain any receipts or other evidence of purchase of any CRT Product. Before disposing of any CRT Product please see the Detailed Notice for recommendations on preserving proof of ownership.

For more details, call toll free 1-800-649-8153, visit *www.CRTsettlement.com* or write to CRT Indirect Settlement, c/o The Notice Company, P.O. Box 778, Hingham, MA 02043

**Quality, Affordable Travel since 1967!**

# Grand European Cruise
## & Italy Tour

### 18 days from $1699*

Departs September 4, 2014.  Fly into Hamburg, Germany where you will enjoy  sightseeing including city hall and St. Michael's Church.  Then transfer to Kiel where you'll board the **MSC**



*Orchestra.*  Experience luxury cruising and comfort as you sail to ports in:  Copenhagen, **Denmark**; Southampton, **UK**; Vigo, **Spain**; Lisbon, **Portugal**; Palma de Mallorca, Spain; Valletta, **Malta**; and Dubrovnik, **Croatia**.  Disembark in Venice, Italy where you will enjoy an amazing city tour.  Then travel through the lush northern landscape to Verona and Milan where you will depart for home.

*PPDO.  Plus $299 tax/service/government fees. Based on Inside Cabin (Cat. I1), upgrades available. Add-on airfare available.*

**YMT vacations**
*It's time to travel*

**Call for Details!**
**800-736-7300**

*Reserve your Space Today!*

New Orleans for flirty flavors.

# Cozy winter getaways

## 10Best picks North America's most romantic places

USA WEEKEND presents this list of romantic North American spots with 10Best, where authoritative lists are curated by local experts and savvy editors. This particular list of romantic destinations was compiled by 10Best editors, and each of these special places provides a picturesque setting while offering other attributes specifically attuned to passion. You'll likely find a few surprises. Best of all, some of 10Best's destinations for romance are warm and toasty, while others afford the chance to cuddle in front of a roaring fire. Which appeals most to you?



Boston for patriotic passion.

**BOSTON**
Whether strolling the charming Back Bay, cheering on a pro team, taking a water taxi to dinner or canoodling in a park, couples find a full menu of romantic fun in Boston.

**CHARLESTON, S.C.**
Charleston is as lovely as it is historic. Narrow, cobbled passageways lead to antebellum homes, secret gardens, moss-draped oaks and gorgeous churches.

**JACKSON, WYO.**
The view alone makes this postcard romantic - snowy peaks surrounding a gorgeous valley - but Jackson's natural hot springs, fine dining and fun cowboy aesthetic make it hard to beat.

Visit us at **usaweekend.com**

**DECLARATION OF JOSEPH M. FISHER**

**EXHIBIT G**



**USA
TODAY.**
A GANNETT COMPANY

## VERIFICATION OF PUBLICATION

**COMMONWEALTH OF VIRGINIA
COUNTY OF FAIRFAX**

Being duly sworn, Toussaint Hutchinson says that he is the principal clerk of USA TODAY, and is duly authorized by USA TODAY to make this affidavit, and is fully acquainted with the facts stated herein: on **Thursday, January 16, 2014** the following legal advertisement – **In Re Cathode Ray Tube (CRT) Antitrust Litigation** - was published in the national edition of **USA TODAY**.

Principal Clerk of USA TODAY
March 25, 2014

This 25th day of March month 2014 year.

Notary Public

JULIE ROTH
NOTARY PUBLIC
REG. #7573317
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES DECEMBER 31, 2017

## HEALTH AND SCIENCE

# New therapy may block damage in heart attacks

**Karen Weintraub**
Special for USA TODAY

In a heart attack, the initial harm is often compounded by a person's immune system, which rushes "soldiers" to the heart to fight what it thinks are invaders. An immune-system overreaction also causes much of the trouble in irritable bowel syndrome, multiple sclerosis and West Nile Virus.

"The immune system does a significant amount of damage while it's

trying to protect us," said immunologist Daniel Getts, a visiting researcher at Northwestern University Feinberg School of Medicine in Chicago.

Now, Getts and colleagues have figured out a way to trick the immune system into attacking tiny synthetic particles instead of the body.

Their research, published Wednesday in *Science Translational Medicine*, is still in its early days, and the technique has been tested only in mice. But if it is shown to work in people, it could transform treatment

for a wide variety of ailments.

Eric Bachelder, an assistant research professor at Ohio State University, said he was impressed by the research and the number of diseases the particles seemed to help.

Yesterday, "if you told me one size fits all, I would have laughed — no way," he said. "It's something that no one has ever done before."

The discovery came about by accident. Getts and his colleague, Nicholas King of the University of Sydney in Australia, were using tiny particles to track immune soldiers in the

brains of mice given West Nile Virus, when one of the mice survived the fatal illness.

They tried the experiment several more times, and again saw survivors. Eventually, they realized that the particles they were giving the mice were not what they'd specified to the manufacturer — these were accidentally strongly negatively charged.

That negative charge apparently enabled the particles to grab onto the immune soldiers, like a dish collector throwing bags onto the back of a truck. The particles carried this

"trash" to the spleen, killing the immune cells and allowing the mouse to survive an otherwise fatal illness.

The same process worked in mice that had had a heart attack — killing immune cells that would have compounded the heart damage — and in mice with irritable bowel syndrome, ulcerative colitis and multiple sclerosis.

The researchers have formed a company, Cour Pharmaceuticals Development, in Chicago, to raise money to take the particles through the process of testing in people.

---

**BILLION-DOLLAR WEATHER AND CLIMATE DISASTERS**

Seven separate disasters in 2013 caused at least $1 billion in damages.



Colorado
floods
Sept. 10-16

Midwest/Plains
severe weather
April 7-11

Ohio Valley
tornadoes
Nov. 17

Western
drought/
heat wave
spring-fall

Midwest/Plains/
Northeast
tornadoes
May 27-31

Midwest/
Plains/East
tornadoes
May 18-22

Southeast
severe
weather
March 18

Source
National
Oceanic and
Atmospheric
Administration

FRANK POMPA, USA TODAY

## '13 wetter than usual; big exception: West Coast

**Doyle Rice**
@USATODAYWeather
USA TODAY

The USA was slightly warmer and wetter than average in 2013, according to a summary of the nation's weather and climate released Wednesday by scientists from the National Oceanic and Atmospheric Administration.

As for wild weather, the climate extremes index from NOAA — which details how severe a given year's temperature, precipitation and tropical storms were — was below average last year. This was the first time that occurred since 2009.

An unusually quiet year for both tornadoes (likely the fewest since 1989) and of wildfires contributed to the relative calm.

Nationwide, temperatures were rather unremarkable last year. The average temperature for the Lower 48 during 2013 was 52.4 degrees, which was only 0.3 degrees above average, tying with 1980 as the 37th-warmest year in the 119-year period of record, NOAA reported.

Three of the seasons in 2013 — the winter of 2012-13, summer and autumn — were warmer than average, while spring was cooler than average.

Although warmer than average, the year 2013 was notably cooler than 2012, which was the warmest year on record in the USA. For the first time in more than a decade, the number of record low temperatures was greater than the number of record high temperatures.

For the year, the average precipitation total for the Lower 48 was 31.17 inches, or 2.03 inches above the 20th-century average. This made it the 21st-wettest year on record and the wettest since 2009.

California had its driest year on record, while Michigan and North Dakota had record wet years. Alaska had its third-wettest year.

The stunning shortage of rain and snow across California in 2013 will likely be the biggest weather news as the nation moves through 2014.

The average precipitation across California was only 7.38 inches in 2013, more than 15 inches less than their driest years on record.

Cities such as San Francisco, Sacramento, Fresno and Eureka all had their driest years on record.

To the north, Oregon was also very dry, with Eugene, Medford and Salem seeing their driest years.

In 2013, the U.S. had seven separate weather and climate disaster events with losses that exceeded $1 billion in damage, reported Deke Arndt, chief of the climate monitoring branch at NOAA's National Climatic Data Center in Asheville, N.C. These events included five severe weather and tornado events, a major flood event, and the western drought/heat wave.

Overall, these seven events killed 109 people and had significant economic impact.

NOAA will release global weather and climate data on Tuesday. Through November, the Earth was having its fourth-warmest year on record.

## Heavy drinking in men can speed memory loss

**Kim Painter**
Special for USA TODAY

We all lose some mental sharpness as we age, but men who drink heavily at midlife can expect a steeper, faster decline in memory and thinking skills a decade down the road, a new study suggests.

The study, published Wednesday in the journal *Neurology*, defines heavy drinking for men as more than 36 grams of alcohol a day, the equivalent of 2.5 drinks. Men who drink less or don't drink at all still lose some cognitive ground, the researchers say, but not as much. The study looked at women but found no clear results.

The study suggests lighter drinking does not contribute to cognitive decline. "The findings are in agreement with previous studies and suggest that moderate alcohol consumption is probably not deleterious for cognitive outcomes," says lead researcher Séverine Sabia, an epidemiologist at University College London.

Some studies even suggest light or moderate drinking might be better for aging brains than abstinence, but the new study did not show that, she says. There was a hint that nondrinking women fared worse than moderate drinkers, but there was not enough abstaining women in the study to make the results convincing, Sabia says. The study suggested fuller cognitive declines for female heavy drinkers, but those results were not statistically significant.

The study involved more than 5,000 men and 2,000 women, all white-collar workers, participating in

a long-running health study in the United Kingdom. Starting at an average age of 45, the participants told researchers how much they drank. A decade later, they started taking tests of memory and executive function, the kind of thinking used in planning, organizing and regulating behavior.

Researchers found no major differences among men who abstained, quit drinking during the study or had up to two drinks a day. The men who averaged 2.5 drinks or more lost ground on memory tests at a rate nearly six years faster than other men; they declined on executive function nearly two years faster.

It's important to note that some of the men in the heavy-drinking group drank as many as eight drinks a day on average, says Sara Jo Nixon, a professor of psychiatry at the University of Florida–Gainesville. It would be wrong to assume, she says, that men who drink 2.5 drinks a day are at the same risk as the heaviest drinkers.

In the USA, health officials define a drink as the amount in 12 ounces of beer, 5 ounces of wine or a 1.5-ounce shot of liquor, according to the Centers for Disease Control and Prevention.

Moderate drinking is defined as up to two drinks a day for men, but just one drink for women, because the same amount of alcohol typically affects women more strongly.

In addition to cognitive risks, drinking is associated with increased risks of breast cancer in women and increases in car crashes, violence and liver disease. Some evidence suggests moderate drinking is beneficial for heart health in some older adults.

---

# MARKETPLACE TODAY

For advertising information: 1.800.397.0070    www.russelljohns.com/usatoday

## NOTICES

### LEGAL NOTICE

**Members of Healthcare Plans Insured or Administered by Horizon Blue Cross Blue Shield of New Jersey, Inc. ("Horizon"); and Out-of-Network Non-Medical Health Care Providers and Provider Groups That Furnished Covered Services or Supplies to Such Members:**

*A Proposed Class Action Settlement May Affect Your Rights.*

A Settlement has been preliminarily approved in a class action lawsuit that alleges that Horizon provided insufficient reimbursement for Covered Out-of-Network healthcare benefits by using the Ingenix Databases and certain other reimbursement methods.

If you were or are in either of the following groups, then you are a member of the class:

a) a "Subscriber," meaning all persons including both subscribers and their covered dependents who, at any time from February 9, 2003 through December 4, 2013, (i) were enrolled in a health benefits plan issued by Horizon that included an Out-of-Network benefit, and (ii) received a Covered Service or Supply from an Out-of-Network Health Care Provider or Provider Group; OR

b) a "Provider," meaning Persons or entities who, at any time from February 9, 2003 through December 4, 2013 (i) were Out-of-Network Health Care Providers or Provider Groups who are not, or are not comprised of, licensed medical doctors or doctors of osteopathy; (ii) provided Covered Services or Supplies to Horizon Subscribers; and (iii) were paid less than their billed amount for these Covered Services or Supplies

The Class expressly excludes all Horizon Subscribers who are Medicaid members, Medicare members, Federal Employee members and Federal Employee Health Benefit Plan members. The Class also expressly excludes Ambulatory Surgical Centers. If you fall into any of these categories, you are not a member of the Class.

If you are a Class member, your rights may be affected by a proposed Settlement in the class action lawsuits consolidated under the case caption, *Cathleen McDonough, Plaintiff, Barry Hellmann, Psy.D. and the New Jersey Psychological Association, individually and behalf of all other similarly situated individuals, Consolidated Plaintiffs, v. Horizon Healthcare Services, Inc., d/b/a Blue Cross Blue Shield of New Jersey*, pending in the United States District Court for the District of New Jersey, Master Docket No. 09-06571 (the "Actions"). Plaintiffs allege that Defendants violated Plan language, as well as the Employee Retirement Income Security Act ("ERISA"), in calculating the Allowed Amount for reimbursement of Covered Services and Supplies provided by Out-of-Network Providers under the Plans. Horizon denies all of Plaintiffs' allegations.

The Representative Plaintiffs have agreed to settle all claims against Horizon in the Actions in exchange for Horizon's undertaking of business reforms, as well as payment by Horizon of certain fees and class representative payments.

- The business reforms include a commitment by Horizon to discontinue using, beginning January 1, 2014, on a rolling basis as each coverage contract is renewed, replaced or expires, and to the extent permitted by law or contract, the Ingenix database and the Top of Range ("TOR") database to calculate Allowed Amounts for Covered Services or Supplies provided by Out-of-Network Providers in connection with claims by Horizon Subscribers, or Out-of-Network Providers who have Assignments from Horizon Subscribers. Horizon has also committed to updating Plan language, Member Handbooks, and marketing materials to reflect the sources Horizon uses to derive Allowed Amounts for reimbursement of Covered Services and Supplies provided by Out-of-Network Providers

under the Plans. Horizon will likewise update its public website and member portal to provide general information regarding the sources Horizon uses to derive the Allowed Amount for reimbursement of Covered Services or Supplies provided by Out-of-Network Providers.

- The fees and class representative payments include: (i) an award of attorneys' fees and costs for Class Counsel not to exceed the sum of $2,500,000; and (ii) incentive payments to class representative Cathleen McDonough in the amount of $20,000 and class representative New Jersey Psychological Association in the amount of $15,000.

The Court did not rule for either side in approving this settlement. Rather, both sides agreed to settle all claims that were or could have been asserted against Horizon in the Actions in exchange for these business concessions. That way, the parties avoid the uncertainties and cost of a trial and possible appeal.

The Court has scheduled a hearing to consider the fairness, reasonableness, and adequacy of the Settlement, to be held on April 1, 2014 at 10:00 a.m. at the United States Courthouse, United States District for the District of New Jersey, Martin Luther King, Jr. Federal Building and U.S. Courthouse, 50 Walnut Street, Newark, New Jersey (the "Final Settlement Hearing").

This notice is a summary of your rights under the Settlement. To obtain copies of the complaints filed in the Actions, the Settlement Agreement and the full Notice, contact the Notice Administrator at 1-855-731-5897 or visit the Notice Administrator's website at www.HorizonBCBSNJUCRclassaction.com

**What Are My Rights?**

- If you wish to remain a member of the Class, you do not have to do anything. You will be bound by all the Court's orders with regard to the Settlement. This means you cannot sue Horizon or other Released Persons for any of the Released Claims described in the Settlement Agreement.

- If you do not wish to be a member of the Class and be bound by the Court's orders with regard to the Settlement, you must affirmatively opt out of the Class by sending a letter asking to be excluded from the Class, as explained in the full Notice. The letter must be postmarked no later than March 3, 2014.

- If you do not exclude yourself from the Class, you or your lawyer still may tell the Court if you do not like the Settlement or some part of it as explained in the full Notice. You must file your written objection with the Court no later than March 3, 2014.

Who is Counsel for the Class?

Bruce Nagel
Nagel Rice, LLP
103 Eisenhower Parkway
Suite 103
Roseland, New Jersey 07068

DO NOT CALL OR WRITE THE COURT, THE CLERK OF THE COURT OR HORIZON FOR INFORMATION OR LEGAL ADVICE. CONTACT CLASS COUNSEL LISTED ABOVE OR GO TO THE ADMINISTRATOR'S WEBSITE AT www.HorizonBCBSNJUCRclassaction.com

Dated: _January 16, 2014_

BY ORDER OF THE UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY

---

### LEGAL NOTICE

**If You Bought A Cathode Ray Tube Product,**
A Class Action Lawsuit and Settlement May Affect You.

Cathode Ray Tube (CRT) Products include CRTs, Televisions, Computer Monitors, and other products containing CRTs.    Para una notificación en Español, llamar o visitar nuestra website.

On September 18, 2013, the US District Court for the Northern District of California (the "Court") certified plaintiff classes in 21 states and the District of Columbia, of individuals and businesses that indirectly purchased any CRT Product from the Defendant Companies or any co-conspirator (collectively "Defendants") for their own use and not for resale, from March 1, 1995 through November 25, 2007 (the "Litigated Class"). The case is *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, 07-cv-05944-SC. "Indirect" means that you did not buy the CRT Product directly from any of the Defendants.

A Settlement has been reached with LG Electronics, Inc.; LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd. ("LG"). On December 9, 2013, the Court preliminarily approved the Settlement involvement in the alleged conspiracy to fix, raise, maintain, or stabilize the prices of CRTs, resulting in overcharges to consumers who bought CRT Products such as televisions and computer monitors. The Defendants deny that they did anything wrong. The Court has not decided who is right.

What does this Settlement Provide?
The Settlement provides for the payment by LG of $25 million in cash, plus interest, to the Settlement Class. It also provides that LG will furnish information about the case, including other Defendants' involvement in the alleged conspiracy, to Class Counsel. Money will not be distributed to Settlement Class members yet. The lawyers will provide an update on other Defendants to see if any future settlements or judgments can be obtained so that one distribution to the Class would be more efficient. It is possible that For more details, call toll free 1-800-649-8153, visit www.CRTclaims.com, or write to CRT Indirect Settlement, c/o The Notice Company, P.O. Box 778, Hingham, MA 02043

money will be distributed to organizations that are, as nearly as practicable, representative of the interests of indirect purchasers of CRT Products instead of Settlement Class members if the cost to process claims would result in a small payment to members of the Settlement Class.

Who Represents You?
The Court has appointed Mario N. Alioto of Trump, Alioto, Trump & Prescott LLP as "Class Counsel" to represent members of the Litigated Class and the Settlement Class.    You do not have to pay these lawyers to represent you. You may hire your own attorney at your own expense, if you wish, but you will be responsible for your own attorney's fees and expenses.

What are your Options?
If you wish to remain a member of the Litigated Class and the Settlement Class, you do not need to take any action at this time. You will be bound by the judgment of the Court regarding your claims and cannot pursue your own lawsuit against LG. If you wish to exclude yourself (opt out) from the Settlement, you must exclude yourself in writing by March 20, 2014. If you exclude yourself, you may receive a similar or greater recovery by means of some other settlement or lawsuit, but you cannot do this. If you stay in the Settlement Class, you may object to the hearing, but you can't opt out at any future settlements. If there are objections or comments about the Settlement, the Court may hold a hearing to consider them. You may appear at the hearing, but you don't have to. After the Court approves or rejects the Settlement, and any future settlements, if there are objections or comments about the Settlement, the Court may schedule distribution of the remaining funds and you may receive a payment. Please retain any receipts of other evidence of purchase of any CRT Product. Balance of the Litigated or Settlement Class members can monitor status. Please visit the website for more information and additional options.

---

## MARKETPLACE TODAY

Do you have a business, real estate, or travel opportunity to market?

Do you have a product to sell or service to offer?

*USA TODAY's MARKETPLACE TODAY* is the answer, offering a variety of ways to reach a frequency rates to fit your budget.

For more information, contact us today:



1-800-397-0070