Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. CV-07-5944 SC |
| | MDL No. 1917 |
| | **INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION** |
| | **[DOCUMENT SUBMITTED PARTIALLY UNDER SEAL]** |
| **This document relates to:** **ALL INDIRECT PURCHASER ACTIONS** | Date: May 30, 2014 <br> Time: 10:00 a.m. <br> Courtroom: One, 17th Floor <br> Judge: Honorable Samuel Conti |

**TABLE OF CONTENTS**

ISSUES TO BE DECIDED……………………………………………………………………...1

FACTUAL BACKGROUND .................................................................................................. 1

    A.    Philips Taiwan's and Philips Brazil's Role in the Global CRT Conspiracy.............. 1

    B.    The Globally Integrated Nature of Philips' CRT Business........................................ 4

RELEVANT PROCEDURAL HISTORY................................................................................ 6

    A.    Pleadings and Other Motion Practice........................................................................ 6

    B.    Negotiations with Philips Regarding Discovery through August 2012 .................... 8

    C.    Defendants' Motion for Approval of their Settlements with the Direct Purchaser Plaintiffs in this MDL ............................................................................................ 10

    D.    Plaintiffs' Merits Discovery and Discussions on Jurisdictional Issues from 2012 Forward .................................................................................................................... 10

ARGUMENT .......................................................................................................................... 12

I.    PLAINTIFFS HAVE SERVED DEFENDANTS AND HAVE ACTIVELY LITIGATED THE CASE AGAINST THEM ......................................................................................... 12

    A.    Defendants' Counsel Accepted Service of the Amended Summons and Consolidated Amended Complaint ............................................................................ 12

    B.    Plaintiffs Effected Service of Their Subsequent Complaints................................... 14

    C.    Plaintiffs Have Actively Prosecuted Their Case Against Defendants ..................... 14

    D.    Defendants Cannot Show Prejudice.......................................................................... 17

II.    THE RULE 4(f)(3) SERVICE WAS EFFECTIVE ......................................................... 19

III.    THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ................... 20

    A.    Personal Jurisdiction Comports with Due Process .................................................. 20

        1.    Philips Taiwan and Philips Brazil Expressly Aimed Their Unlawful, Anticompetitive Acts at the United States ................................................... 21

        2.    Philips Taiwan and Philips Brazil Sold Substantial Quantities of CRTs Into the United States ........................................................................................... 24

            a.    Philips Taiwan........................................................................... 24

            b.    Philips Brazil ............................................................................ 25

    B.    Defendants Have Submitted to the Jurisdiction of the Court................................... 25

CONCLUSION ....................................................................................................................... 27

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ash v. Cvetkov,*
739 F. 2d 493 (9th Cir. 1984)...........................................................................................18

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985).........................................................................................................21

*College Source, Inc. v. AcademyOne, Inc.,*
653 F.3d 1066 (9th Cir. 2011)..........................................................................................21

*Dow Chem. Co. v. Calderon,*
422 F. 3d 827 (9th Cir. 2005)...........................................................................................26

*Gregory v. Harris,*
No. CV11–0372 PHX DGC, 2011 WL 6205902, (D. Ariz. December 13, 2011) ...........14

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
-- F. Supp. 2d --, 2014 WL 1091044 (N.D. Cal. March 13, 2014) .......................19, 20, 21, 26

*Mullane v. Cent. Hanover Bank & Trust Co.,*
 339 U.S. 306 (1950).........................................................................................................20

*Ochoa v. J.B. Martin & Sons Farms,*
287 F.3d 1182 (9th Cir. 2002)..........................................................................................21

*Rio Prop. Inc. v. Rio Int'l Interlink,*
284 F.3d 1007 (9th Cir. 2002)..........................................................................................19

*Schwarzenegger v. Fred Martin Motor Co.,*
374 F.3d 797 (9th Cir. 2004)............................................................................................21

*Scottish Air Int'l v. British Caledonian Group,*
152 F.R.D. 18 (S.D.N.Y. 1993) ........................................................................................26

**Statutes**

Cal. Code Civ. Proc. §415.40............................................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(5)..................................................................................................8, 13

Fed. R. Civ. P. 12(b)(6).......................................................................................................7

Fed. R. Civ. P. 30(b)(6).....................................................................................................16

Fed. R. Civ. P. 4..........................................................................................................14, 19

Fed. R. Civ. P. 4(f)(3) ....................................................................................6, 11, 19, 20

Fed. R. Civ. P. 4(m)...........................................................................................................12

Fed. R. Civ. P. 5................................................................................................................14

Fed. R. Civ. P.5(b)(2)(E)...................................................................................................14

## MEMORANDUM OF POINTS AND AUTHORITIES

Indirect Purchaser Plaintiffs ("Plaintiffs") hereby respond to the motion to dismiss filed by Defendants Philips Taiwan Limited ("Philips Taiwan") and Philips do Brasil Ltda. ("Philips Brasil") (collectively "Defendants").

## ISSUES TO BE DECIDED

1. Whether Plaintiffs properly served their Consolidated Amended Complaint and Amended Summons on Defendants, where: (a) within 120 days of filing, Plaintiffs served counsel for Defendants' sister companies, who had already appeared, with these documents, via ECF; (b) that same counsel subsequently agreed to accept service of these documents on behalf of Defendants; (c) Plaintiffs did not "re-serve" these documents since counsel for Defendants had already received them via ECF; and (d) Plaintiffs properly served their Second, Third, and Fourth Consolidated Amended Complaints via ECF.

2. Whether Plaintiffs needed to obtain a Rule 4(f)(3) Order specifically permitting service on Defendants, where: (a) Plaintiffs had previously obtained an Order permitting service on foreign defendants through their domestic counsel; (b) Defendants waived the need for an Order specific to them when their counsel agreed to accept service; and (c) Defendants had actual notice of Plaintiffs' claims.

3. Whether the Court has personal jurisdiction over Defendants, where: (a) Defendants purposely directed their conspiratorial activities at the United States; and (b) Defendants have submitted to jurisdiction by seeking affirmative relief from this Court.

## FACTUAL BACKGROUND

### A.    Philips Taiwan's and Philips Brazil's Role in the Global CRT Conspiracy

Plaintiffs have sued four Philips entities: (1) Koninklijke Philips Electronics, N.V. ("Royal Philips"), the Dutch parent company; (2) its U.S. subsidiary, Philips Electronics North America Corporation ("PENAC"); (3) Philips Taiwan; and (4) Philips Brazil.  Philips Taiwan and Philips Brazil would have the Court believe that they have been innocent, uninvolved bystanders throughout this litigation.  To the contrary, Defendants: (1) actively collaborated with their sister companies and other

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

1

defendants in furtherance of the global conspiracy to fix CRT prices between 1995 and 2007; (2) have been on notice of the claims against them since first being named; and (3) have purposely directed their activities at this forum, selling substantial quantities of CRTs in the U.S., into the U.S., and, knowingly, to foreign companies that sold CRT televisions and monitors to the U.S.

For example, on December 12-13, 2013, Plaintiffs deposed James ("Jim") Smith, the former Regional Manager of Philips Display Components' Asia Pacific Region and an employee of Philips Taiwan from September 1999 through June 2001.[1]



---

[1] *See* Declaration of Lauren C. Capurro in Support of Indirect Purchaser Plaintiffs' Opposition to Philips Taiwan Limited's and Philips do Brasil Ltda.'s Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction ("Capurro Decl."), Ex. 9.

[2] *Id.* ¶¶28 and 33, Ex. 10 Deposition Transcript of Jim Smith, 59:20 - 60:21.

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

2

In addition, according to C.C. Liu, the former Vice President of defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa"),

To date, Plaintiffs have been unable to depose any of the employees who worked in Philips Brazil's CRT business during the Class Period because they no longer work for Philips and Plaintiffs have been unable to locate them.[5]   But the documentary evidence uncovered to date shows the involvement of Philips Brazil in the worldwide conspiracy.

For example,

---

[3] *Id.* at 193:1- 193:18.
[4] *Id.* ¶ 34, Ex. 11: Deposition Transcript of Chih Chun ("C.C.") Liu, 52:20 – 53:15.
[5] Plaintiffs are currently preparing to move the Court for an order issuing a letter of request to the Central Authority in Belgium regarding Ney Corsino, a former employee of Philips Brazil.

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

3



According to

**B.      The Globally Integrated Nature of Philips' CRT Business**

During the Class Period, the Philips companies around the world involved in the CRT business constituted a very complex, inter-related group of business entities.   Philips' global CRT business was called Philips Display Components.[9]

---

[6] *See* Capurro Decl., ¶¶38, Exs. 12 and 13.
[7] *Id.*¶40, Ex. 14.
[8] *Id.* ¶41, Ex. 15.
[9] Philips' internal documents refer to Philips Display Components using the acronyms "PDC", "BGDC" or "BG Display Components" (which stands for Business Group Display Components), or "DC" (Display Components) for short.
[10] *Id.* ¶42, Ex. 16.
[11] *Id.* ¶¶ 43-44, Exs. 17 - 18.

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

4

Within each region, there were "Philips Electronics" entities that were incorporated under the laws of the country in which they were located, and the "Display Components" group operated within these legal entities as divisions. In other words, the "Display Components" groups were simultaneously part of the local Philips corporate entity and part of Philips Display Components global organization. For example,

Philips Displays Components took a global approach to planning, manufacturing and supplying CRTs to customers around the world and essentially acted as a single, global entity.

Plaintiffs have devoted much time and effort to uncovering this complex web of conspiratorial activity involving these Philips entities. It has become clear that Philips Taiwan and Philips Brazil played major roles in the conspiracy and must be included as defendants. Otherwise, the other Philips

---

[12] For example, Jim Smith testified that he was sent to Taiwan by the Managing Director to become the regional manager of the Asia Pacific region, because headquarters "wanted a European in Asia." *See* Jim Smith Transcript, 27:22 – 28:15, Capurro Decl., Ex. 10.

[13] *See id.,* Ex. 19, Philips Rule 30(b)(6) Transcript at 30:12-33:6.  *See also id.* at 32:19-33:6; *id.* at 127:19-20; *id.* at 173:13-22.

[14] *See generally,* Jim Smith Deposition Transcript, 34-38, Capurro Decl., Ex. 10.

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

5

1  defendants may attempt to shift blame for the conspiracy to Philips Taiwan and Philips Brazil.  If

2  Philips Taiwan and Philips Brazil are not defendants, Philips may be able to escape liability.

3                          **RELEVANT PROCEDURAL HISTORY**

4       **A.      Pleadings and Other Motion Practice**

5         Plaintiffs filed their initial complaints in November and December 2007.  These complaints

6  named a number of defendants but included only two of the Philips entities: Royal Philips and PENAC.

7  Royal Philips is a Dutch company.  Its subsidiary, PENAC, is located in the United States.  On

8  September 3, 2008, Plaintiffs obtained an Order from this Court permitting them to serve a complaint

9  on Royal Philips through PENAC. *See* Dkt. No. 374 (Order Granting Indirect Purchaser Plaintiffs'

10  Motion to Authorize Service on Certain Foreign Defendants Pursuant to Federal Rule of Civil

11  Procedure 4(f)(3)) (the "Service Order").

12        Plaintiffs filed their Consolidated Amended Complaint ("CAC") and the Amended Summons

13  naming several new foreign defendants, including Philips Taiwan and Philips Brazil on March 16, 2009

14  and March 24, 2009, respectively, and served them on counsel for PENAC and Royal Philips via ECF.

15  *See* Dkt. Nos. 437; 443.

16        Plaintiffs and counsel for the direct purchaser plaintiffs wrote to counsel for PENAC and Royal

17  Philips (along with counsel for the other newly named defendants) on April 6, 2009 and requested that

18  he "agree to accept service of the Amended Summons and Consolidated Amended Complaints" for

19  Philips Taiwan and Philips Brazil pursuant to the Court's Service Order.  Plaintiffs further stated:  "If

20  counsel for the new defendants refuse to accept service, Plaintiffs will request that the Court reissue its

21  September 3, 2008 Order to apply to the new defendants."  Capurro Decl. ¶3, Ex. 1.

22        On April 14, 2009, counsel for PENAC and Royal Philips (Ethan Litwin of Howrey LLP)

23  declined to accept service, on the ground that the Service Order did not require him to do so. *Id.* ¶4, Ex.

24  2.  Plaintiffs disputed Mr. Litwin's narrow reading of the Court's Service Order in a letter dated May 6,

25  2009 and pointed out that Howrey was the only counsel refusing to accept service.  *Id.* ¶6. Ex. 3.[15]

26

27  _____

[15] Plaintiffs named a number of new foreign defendants in the CAC.  Almost all of these new foreign

28  defendants had related entities that had appeared and were actively litigating the case.  Plaintiffs also

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR
INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

6

1    On May 11, 2009, Mr. Litwin stated that "PENAC will accept [service] 'under protest.'"

2    "Under protest" meant that he wanted to preserve the arguments that acceptance of service was not an

3    admission that: (1) PENAC was the agent or alter ego of either Philips Taiwan or Philips Brazil; (2)

4    Philips Taiwan or Philips Brazil was subject to personal jurisdiction in the United States; and (3) the

5    Service Order was improper. *Id.* ¶7, Ex 4.  This was agreeable to Plaintiffs.

6    On May 18, 2009, Defendants responded to the CAC by specially appearing to move to dismiss

7    for lack of personal jurisdiction and insufficient service of process.  Dkt. 476.  Despite the fact that

8    PENAC's counsel had been served with the CAC and Amended Summons via ECF, they complained

9    that Plaintiffs had not *re-served* the CAC and Amended Summons on PENAC.[16]  Defendants also

10   joined the Rule 12(b)(6) motion brought by Royal Philips and PENAC, and a separate Rule 12(b)(6)

11   motion with the other defendants. *See* Dkt. No. 485.

12   In the meantime, the parties met and conferred with respect to jurisdictional discovery.  On July

13   9, 2009, they wrote to Special Master Judge Legge, asking him to vacate the briefing schedule and the

14   hearing on Defendants' motions to dismiss.  Capurro Decl., Ex. 5.  The parties explained that "in the

15   interest of conserving resources, the briefing schedule and hearing on all the motions to dismiss by

16   Philips and Samtel [another defendant] should be vacated until after the other Defendants' motions to

17   dismiss are resolved." *Id.*  The parties stated that they would continue to "meet and confer regarding

18   jurisdictional discovery and a new briefing schedule on the Philips and Samtel motions, and would

19   submit their proposed new briefing schedule to the Court. *Id.*  On July 15, 2009, the Special Master

20   issued a Stipulated Order vacating the briefing schedule and hearing date on Defendants' motions to

21   dismiss.  Dkt. No. 519.

22   On February 5, 2010, Judge Legge issued his Report & Recommendation ("R&R") on the Rule

23   12(b)(6) motions to dismiss.  Dkt. No. 597.  Defendants joined in the objections to the R&R raised by

24   the other Philips defendants.  Their joinder included a footnote stating that they "have filed separate

25

26   wrote to counsel for these related entities and asked that the related entities or their counsel accept
     service for the new foreign defendants.  They all agreed to accept service. *Id.* ¶ 5.

27   [16] None of the other defense counsel who agreed to accept service on behalf of the newly named
     defendants required Plaintiffs to re-serve the CAC and Amended Summons. Capurro Decl. ¶8.

28   IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR
     INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

                                                                                                     7

1    motions to dismiss for lack of personal jurisdiction pursuant [sic]. The Special Master has not yet

2    issued a recommendation on those motions.  Without prejudice to those jurisdictional motions,

3    [Defendants] also join in this objection." Dkt No. 622.  Defendants' objection to the R&R did not

4    mention purportedly defective service. *Id*.

5         On March 30, 2010, the Court adopted the R&R on the defendants' motions to dismiss.  Dkt.

6    No. 665.  Philips Taiwan and Philips Brazil joined in the defendants' motion for interlocutory appeal.

7    Dkt. No. 667.  On April 30, 2010, the Court denied the defendants' motions for interlocutory appeal.

8    Dkt No. 711.

9         On May 10, 2010, Plaintiffs filed and served via ECF their Second Consolidated Amended

10   Complaint, naming Philips Taiwan and Philips Brazil (along with Royal Philips and PENAC).  Dkt.

11   No. 716.  Philips Taiwan and Philips Brazil joined in the defendants' joint motion to dismiss certain

12   new state law claims alleged in this complaint.  Dkt. No. 733.

13        On May 25, 2010, Mr. Litwin of the Howrey firm wrote to Judge Legge on behalf of

14   Defendants regarding the status of their personal jurisdiction motion.  He stated that the parties would

15   meet and confer on jurisdictional issues, and that, pending an agreement or the parties' decision to

16   litigate the issue, the motions should remain pending.  Again, Mr. Litwin's letter made no mention of

17   Defendants' Rule 12(b)(5) motion for insufficient service. *See* Dkt. 720.

18        On December 11, 2012, Plaintiffs filed and served via ECF their Third Consolidated Amended

19   Complaint, naming Philips Taiwan and Philips Brazil (along with Royal Philips and PENAC).  *See* Dkt.

20   Nos. 827.  On January 10, 2013, Plaintiffs filed and served via ECF their Fourth Consolidated

21   Amended Complaint, naming Philips Taiwan and Philips Brazil (along with Royal Philips and

22   PENAC).  *See* Dkt. No. 1526.  Thus, Philips Taiwan and Philips Brazil were served not only with the

23   original CAC but also with all subsequent amended complaints.

24        **B.      Negotiations with Philips Regarding Discovery through August 2012**

25

26

27

28

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

8

1    Following the lift of the stay of document discovery on March 8, 2010,[17] Plaintiffs served

2    discovery requests on counsel for all defendants, including the Howrey law firm on behalf of Royal

3    Philips, PENAC, Philips Taiwan and Philips Brazil.  *Id.*

4    Starting in June 2010, Plaintiffs' counsel began extended negotiations with Philips' counsel

5    regarding discovery relating to Philips' global CRT business, Philips Display Components.  During

6    these negotiations, Plaintiffs specifically requested documents and information relating to Philips

7    Taiwan's and Philips Brazil's former CRT business, their employees' participation in the CRT

8    conspiracy and their sales of CRTs into the United States.

9    For example, the parties agreed to develop a list of important individuals who were likely to

10   have relevant documents in their files, and agreed to limit Philips' initial search to those "custodians."

11   The final list of custodians was comprised of individuals who worked for Philips Display Components

12   division wherever they were located and included individuals from Taiwan and Brazil.  Philips never

13   objected to the custodians proposed by Plaintiffs on the grounds that they worked for Philips Taiwan or

14   Philips Brazil, or refused to produce documents from their files.[18]

15   In addition, Philips agreed to make available documents from its "JV Data Room," which

16   contained documents and information gathered by Royal Philips from its CRT subsidiaries around the

17   world (including Philips Taiwan and Brazil) as due diligence prior to the formation of the joint venture,

18   LG.Philips Displays.  Capurro Decl. ¶ 18.  Notably, throughout these discovery negotiations, Philips'

19   counsel never indicated that they would not produce Philips Taiwan or Philips Brazil documents

20   because these entities had not been served, or because the Court did not have personal jurisdiction over

21

22   _____

23   [17] On September 12, 2008, the Court granted a six-month stay of discovery, at the insistence of the
     Department of Justice.  Dkt. No. 379.  This stay of document discovery was extended several times

24   until March 8, 2010, and the stay on deposition discovery continued until March 1, 2011.  John
     Taladay signed the stipulated order regarding the discovery stay on behalf of Philips Taiwan and
     Philips Brazil.  *See* Dkt. No. 798.  Capurro Decl. ¶ 12.

25   [18] *See* Capurro Decl. ¶¶ 14-17.  Indeed, the organization charts provided by Philips for the purpose of

26   compiling the custodian list are for Philips' global CRT group, Philips Display Components, and
     include employees such as Jim Smith, David Chang and Jerry Lin, who worked for Philips Taiwan in

27   the "Display Components Asia Pacific Region"; and employees such as Joel Garbi  and Ney Corsino
     who worked for Philips Brazil in the South American ("LATAM") region.  *Id* & Ex. 6.

28
IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR
INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

9

them.  *Id*. ¶ 24.  *See further id*. ¶¶15-20; 22-23 (describing additional examples of specific requests by Plaintiffs for documents from Philips Taiwan and Philips Brazil).

On October 4, 2010, Plaintiffs' counsel travelled to the Netherlands to review the JV Data Room documents and select documents for copying.  The documents selected for copying included documents and emails from Philips Taiwan and Philips Brazil.  Philips did not produce these documents until August 10, 2011.  *Id*.

On November 22, 2011, Philips began its production of custodian documents.  On December 14, 2011, Philips made a second production of documents.  These two 2011 productions constitute the majority of the documents produced by Philips in this case.  *Id*.

On April 23, 2012, the parties entered into a final agreement on custodians relating to the production of documents from Philips' CRT television and monitor business.  These custodians included Reinoud Selbeck, formerly of Philips Taiwan.  *Id*.  From May 4, 2012 to August 9, 2012, Philips produced documents from the CRT finished product custodians on a rolling basis.  *Id*.

## C. Defendants' Motion for Approval of their Settlements with the Direct Purchaser Plaintiffs in this MDL

Meanwhile, in a settlement agreement dated February 1, 2012, Philips Taiwan and Philips Brazil, along with the other two Philips defendants, Royal Philips and PENAC, settled the direct purchaser class action.  Dkt. No. 1114-1.  The settlement agreement is signed by counsel for Philips, John Taladay (formerly of Howrey and now at Baker Botts LLP).  The direct purchaser class action was based upon the same underlying evidence of antitrust conspiracy as Plaintiffs' action.  The settlement provided Philips Taiwan and Philips Brazil with comprehensive protection in the form of releases of all claims.  This Court approved the settlement, and entered judgment on October 22, 2012.  Dkt. No. 1413.

## D. Plaintiffs' Merits Discovery and Discussions on Jurisdictional Issues from 2012 Forward

From December 2012 to December 2013, Plaintiffs deposed over 30 current and former employees of various defendants.  Capurro Decl. ¶ 29.  On November 13, 2013, Plaintiffs contacted Philips' counsel, Erik Koons of Baker Botts LLP, regarding Philips Taiwan's and Philips Brazil's

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

10

personal jurisdiction motion, and the parties met and conferred regarding this issue on November 15, 2013.[19]  Philips' counsel did not raise service issues concerning Philips Taiwan and Philips Brazil and did not inform Plaintiffs of their position that Plaintiffs needed to obtain a new Order from the Court permitting mail service pursuant to Rule 4(f)(3).  *Id.* ¶ 3.

On December 12, 2013, Plaintiffs deposed the first Philips witness, former employee Jim Smith, following months of work to track him down and negotiate his appearance.  Capurro Decl. ¶ 31.   Since then, Plaintiffs have deposed three other former employees of Philips Displays Components and the joint venture LG.Philips Displays.  Plaintiffs are scheduled to depose four more former Philips employees over the next few months.  *Id.* ¶ 32.

On February 5, 2014, Plaintiffs met and conferred with counsel for Philips regarding service and the personal jurisdiction motion.  Philips' counsel never mentioned his current argument that the Court's Service Order does not apply to Philips Taiwan and Philips Brazil.  Alioto Decl. ¶ 4.

Plaintiffs re-served the Fourth CAC and the Amended Summons on February 18, 2014 on counsel for PENAC and Royal Philips, Baker Botts, LLP, at their offices in Washington D.C.  Service was made by certified mail, return receipt requested pursuant to California Civil Procedure Section 415.40 and the Court's Service Order.  Actually this service was unnecessary because counsel had agreed in 2009 to accept service for the Defendants and these Defendants had already been served with these documents via ECF.  This was an attempt by Plaintiffs to moot Defendants' service argument.  Capurro Decl. ¶ 33; Alioto Decl. ¶ 4.

Plaintiffs met and conferred with Philips' counsel on February 26 and 27, 2014 and again on March 4, 2014, regarding service and the personal jurisdiction motion.  Once again, Philips' counsel never stated their position that Plaintiffs needed to obtain a Rule 4(f)(3) order as to Philips Taiwan and Philips Brazil.  Capurro Decl. ¶ 34.

---

[19] *See* Declaration of Mario N. Alioto In Support of Plaintiffs' Opposition to Philips Taiwan Limited's and Philips Do Brasil Ltda.'s Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction ("Alioto Decl."), ¶¶ 2-3.

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

11

**ARGUMENT**

## I.   PLAINTIFFS HAVE SERVED DEFENDANTS AND HAVE ACTIVELY LITIGATED THE CASE AGAINST THEM

Defendants contend that Plaintiffs "did not attempt to serve [them] with any complaint until February 18, 2014" (Mot. at 4) and thus that Plaintiffs have failed to serve them within Rule 4(m)'s allotted 120-day period.  This assertion is incorrect.  Even assuming that Rule 4(m) applies here, a debatable proposition,[20] Plaintiffs served Defendants within 120 days following the filing of their Consolidated Amended Complaint ("CAC") in 2009.  Service was timely.  Defendants' contentions that Plaintiffs have not been diligent, and that Defendants will be prejudiced if the case against them goes forward, also lack merit.

### A.   Defendants' Counsel Accepted Service of the Amended Summons and Consolidated Amended Complaint

As described above, Plaintiffs filed and served via ECF the CAC and the Amended Summons naming Philips Taiwan and Philips Brazil on March 16, 2009 and March 24, 2009, respectively.  Dkt. Nos. 436 and 443.  Plaintiffs served the CAC and Amended summons on counsel for PENAC and Royal Philips (Mr. Litwin) via ECF.  Plaintiffs then wrote to Mr. Litwin, on April 6, 2009, requesting that he also agree to accept service on behalf of Philips Taiwan and Philips Brazil pursuant to the Service Order.  Plaintiffs specifically stated:  "If counsel for the new defendants refuse to accept service, Plaintiffs will request that the Court reissue its September 3, 2008 Order to apply to new defendants."  Capurro Decl. ¶ 3.

On April 14, 2009, Mr. Litwin declined to accept service, on the ground that the Service Order did not require him to do so.  *Id.* ¶ 4, Ex. 2.  Plaintiffs disputed Mr. Litwin's narrow reading of the Service Order in a letter dated May 6, 2009 and pointed out that his firm was the only one refusing to accept such service.  *Id.*¶6, Ex. 3.

---

[20] Defendants argue that Rule 4(m)'s 120-day period governs.  Plaintiffs disagree.  That rule on its face does not apply when service is made under Rule 4(f), as was done here.  In any event, as shown below, even if Rule 4(m) applies, Plaintiffs have met its requirements.

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

12

1    On May 11, 2009, Mr. Litwin proposed that PENAC would agree to accept service "under

2    protest."   As explained, "under protest" meant he wanted to maintain the arguments that this was not

3    an admission that: (1) PENAC was the agent or alter ego of either Philips Taiwan or Philips Brazil; (2)

4    Philips Taiwan or Philips Brazil was subject to personal jurisdiction in the United States; and (3) that

5    the Service Order was improper.  This was agreeable to the Plaintiffs.  *Id.*¶7, Ex 4.

6    A week later, on May 18, 2009, Philips Taiwan and Philips Brazil specially appeared and

7    moved to dismiss the CAC for lack of personal jurisdiction and for insufficient service under Rule

8    12(b)(5).  Dkt. No. 476.  Despite availing themselves of their opportunity to be heard by moving to

9    dismiss, and despite Mr. Litwin's agreement to accept service, Defendants argued in their motion that

10   they had not been served.[21]  Apparently, Defendants' position was that service was ineffective because

11   Plaintiffs did not re-serve the summons and complaint on PENAC after Mr. Litwin agreed to accept

12   service. This makes no sense.

13   The Amended Summons and the CAC were filed via ECF on March 16, 2009 and March 24,

14   2009, respectively.  These documents were served electronically upon every lawyer in the case,

15   including Mr. Litwin.  There was no need to re-file and re-serve these documents via ECF, as the

16   documents remained available electronically from the prior filing and service.  Nor was there any need

17   to serve these documents separately from ECF.  In fact, this Court's Order filed September 29, 2008

18   (Dkt. No. 383) expressly provides: "All papers that are filed under the ECF system pursuant to General

19   Order 45 and Pretrial Order No. 1 shall be served through the ECF system, and no service of paper

20   copies will be necessary."  Thus, these documents were properly served upon these Defendants.

21   These issues regarding service were never judicially resolved because the parties subsequently

22   obtained a stipulated order vacating the briefing schedule and the hearing date on Defendants'

23   motions.[22]  However, Defendants were properly served.  While Mr. Litwin accepted service "under

24   protest," the fact remains that he did accept service.  These Defendants participated in all aspects of this

25   litigation thereafter and should not therefore be dismissed from this case for insufficient service.

26

27   [21] *See* Dkt. No. 476, p.1 at n.1.

28   [22] *See* Dkt. No. 519.

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR
INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

13

**B.      Plaintiffs Effected Service of Their Subsequent Complaints**

Federal Rule of Civil Procedure 5 "governs service of 'every pleading subsequent to the original complaint.'"  *Gregory v. Harris*, No. CV11–0372 PHX DGC, 2011 WL 6205902, at *1 (D. Ariz. December 13, 2011) (citation omitted).  As a "pleading subsequent to the original complaint," an amended complaint must be filed pursuant to Rule 5.  *Id.* at *2.  "Rule 5 provides more ways to complete service than Rule 4, including using court facilities such as the ECF system if authorized by local rule."  *Gregory,* 2011 WL 6205902, at *1.  Under Rule 5(b)(3), "If a local rule so authorizes, a party may use the court's transmission facilities to make service under Rule 5(b)(2)(E) [permitting service by electronic means]."

Plaintiffs filed their Second, Third, and Fourth Consolidated Amended Complaints on the Court's ECF system.  *See* Dkt. Nos. 716, 827, and 1526, respectively.  This method properly accomplished service of these pleadings under Rule 5.[23]

**C.      Plaintiffs Have Actively Prosecuted Their Case Against Defendants**

Defendants' additional claim that Plaintiffs have failed to prosecute their claims has no merit. Plaintiffs have been prosecuting this case against Philips Taiwan and Philips Brazil all along.

Plaintiffs amended their complaint in March 2009 and added Philips Taiwan and Philips Brazil as named defendants.

When Defendants moved to dismiss Plaintiffs' complaint in May 2009 for lack of personal jurisdiction, the parties discussed the need for jurisdictional

---

[23] On February 18, 2014, Plaintiffs also served PENAC's counsel by certified mail, return receipt requested, in an attempt to moot Defendants' service argument.  Capurro Decl. ¶33.

[24] *Id.* ¶2. Chunghwa was prevented from producing any documents or providing any deposition testimony to Plaintiffs at this time because there was a stay of all document and deposition discovery in place. Chunghwa has since provided Plaintiffs with documents and deposition testimony that corroborate what they told us during the proffer.  *Id.*

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR
INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

14

1    discovery and these discussions led to their stipulation to vacate the briefing schedule and hearing date

2    on the motion. *See* Dkt. No. 519.

3          The intent of this stipulation was to preserve the status quo and preserve the resources of the

4    parties and the Court by resolving the Defendants' personal jurisdiction motion in an efficient manner.

5    Plaintiffs agreed to this procedure to avoid the meet and confers and motion to compel regarding

6    jurisdictional discovery, which Defendants had refused to provide, and potentially avoid briefing on the

7    motion altogether.  Capurro Decl. ¶ 9.  Plaintiffs judged (correctly as it turns out) that the question of

8    whether this Court may exercise personal jurisdiction over Philips Taiwan and Philips Brazil was

9    intertwined with the merits of the case and could be answered through merits discovery with the other

10   Philips defendants regarding Philips' global CRT business, described above, which included

11   information relating to Philips Taiwan and Philips Brazil.

12         Consistent with this strategy, Plaintiffs repeatedly sought information from PENAC and Royal

13   Philips regarding Philips Taiwan's and Philips Brazil's CRT business, their employees' participation in

14   the conspiracy, and their sales of CRTs to the United States.[25]  Plaintiffs even travelled to the

15   Netherlands in October 2010 and conducted a review of hard copy boxes of documents in the "JV Data

16   Room"[26] and selected for copying certain documents relating to Philips Taiwan and Brazil's CRT

17   business.[27]

18         As this Court is well aware, this is a massive, complex case involving multiple parties on both

19   sides and a massive amount of information. Discovery is taking a long time due to factors beyond

20   Plaintiffs' control.  For example:

21         •   The stay of merits discovery that prevented Plaintiffs from serving document discovery

22             until March 8, 2010.  Dkt. 590.  Plaintiffs served their discovery requests on March 25,

23             2010; less than two weeks after the stay was lifted.  Capurro Decl. ¶¶ 12; 25.

24

25   _____
     [25] *See* Capurro Decl. ¶¶ 14-20; 22-24.
26   [26] The JV data room contained documents and information gathered by Royal Philips from the
     Philips Display Components business group around the world as part of the due diligence requested
27   by LG prior to the formation of the joint venture.
     [27] These documents were not produced until August 2011.
28   IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR
     INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

- The stay of merits discovery prevented Plaintiffs from engaging in deposition discovery until March 1, 2011. Dkt. 798. And practically speaking, Plaintiffs were unable to begin deposition discovery until the Court entered the deposition protocol in April 2012. Dkt. No. 1128. Plaintiffs began taking Rule 30(b)(6) depositions in June 2012, only two months later. Capurro Decl. ¶ 25.

- It took almost two years (from the filing of the CAC in March 2009 until the Court issued its order on defendants' second set of motions to dismiss in October 2010) for resolution of the defendants' motions to dismiss the IPPs' complaint.

- IPPs began to meet and confer with Philips' counsel regarding Philips' discovery responses in June 2010, yet Philips produced virtually no documents until November 2011, with the vast majority of the production coming in December 2011. Indeed, the vast majority of the documents produced in this case were only produced in the fourth quarter of 2011. *Id.* ¶¶ 14; 21.

- Defendants have collectively produced more than 1.5 million documents, many of which are in foreign languages. Plaintiffs have a team of almost 50 attorneys reviewing these documents, several of which are fluent in the relevant foreign languages. Reviewing and getting informal and, if necessary, formal translations of foreign documents takes additional time. *Id.*. ¶ 26.

- The initial focus of Plaintiffs' review of defendants' documents was class certification. Plaintiffs spent most of 2012 reviewing relevant documents and data from defendants and third party retailers, and deposing defendants pursuant to Rule 30(b)(6) to gather information for the class certification motion. Plaintiffs took 25 Rule 30(b)(6) depositions during the summer of 2012. *Id.* ¶27. Plaintiffs filed their motion for class certification on October 1, 2012. Plaintiffs' motion for class certification was finally resolved on December 22, 2013 when the Ninth Circuit denied defendants' Rule 23(f) petition to appeal the Court's order granting class certification.

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

16

- Plaintiffs began their review of defendants' documents regarding merits issues in October 2012, immediately after they filed their class certification motion.  In November and December 2012, Plaintiffs contacted defendants to discuss merits depositions and propose potential deponents.  The first merits deposition took place in mid-December 2012 and depositions are continuing today.  To date, Plaintiffs have taken over 40 merits depositions.  *Id.* ¶28.

- The vast majority of the relevant Philips witnesses are no longer employed by Philips.  This meant that the first Philips deposition did not occur until December 12, 2013.  *Id.* ¶30.

Thus, it is only in the last year, through Plaintiffs' review of defendants' documents and the various merits depositions we have taken, that the roles of Philips Taiwan and Brazil in the CRT conspiracy have come into full focus.  As further described herein, Plaintiffs' efforts have uncovered overwhelming evidence that these Defendants were actively involved in the CRT conspiracy and sold CRTs to the United States.

### D.    Defendants Cannot Show Prejudice

Defendants' vague assertions that they will suffer prejudice by being brought in "at this stage" of the case must likewise be rejected.

First, try as they might, Philips Taiwan and Philips Brazil cannot claim to be newcomers to this litigation. They have been involved in motion practice and discovery from the start.[28]

Second, Defendants posit that "to be added at this late stage would surely require additional discovery, greatly prejudice these parties' ability to prepare their defense and join in any expert reports, and further delay the Court's trial schedule."  This is not so.  Plaintiffs have negotiated with the same team of attorneys (first at the Howrey firm and now employed at Baker Botts LLP) for access to relevant information from Philips' global CRT business—including the discovery of documents and

---

[28] Capurro Decl. ¶¶ 10-13.

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

17

witnesses directly connected to Philips Taiwan and Philips Brazil.[29]  Indeed, during the meet and confers regarding Philips' document production, Philips' counsel informed Plaintiffs that all of the documents produced were drawn from a central repository regardless of what entity the individual custodian worked for.[30]  Thus, Philips Defendants' documents have already been searched.  For this reason, Plaintiffs anticipate serving no additional document discovery on these Defendants.  Philips Taiwan and Philips Brazil do not identify what further discovery they could possibly seek from Plaintiffs or third parties that their sister companies PENAC and Royal Philips, or the multitude of other defendants, have not already pursued.

Philips Taiwan and Philips Brazil also argue that they will not have sufficient time to defend against Plaintiffs' claims, and that existing pretrial and trial deadlines will have to be moved, or even a "separate track" of deadlines created.  Again, this is not true.  Counsel for Royal Philips and PENAC have been actively involved throughout this litigation and have ably represented the interests of all the Philips entities involved in the CRT business, whether in prior motion practice, class certification proceedings, or merits and expert discovery.  Presumably counsel have also been diligently reviewing documents produced in the action.

Finally, it is highly unlikely given the global nature of Philips' former CRT business that any of Defendants' affirmative defenses will differ from those of Defendants' sister companies, which defenses counsel have been developing all along.  Plaintiffs foresee no issues that would catch Philips Taiwan or Philips Brazil unawares, or prejudice their defenses, and they have identified none.[31]

---

[29] Indeed, the first Philips witness deposed by Plaintiffs was Jim Smith, a former Philips Taiwan employee.

[30] *See* Capurro Decl. ¶¶19; 22.

[31] Defendants argue that the claims against them should be dismissed for "failure to prosecute" under Rule 41(b).  They cite no cases in support of this argument.  In the Ninth Circuit, district courts considering this ground for dismissal must "weigh the court's need to manage its docket, the public interest in expeditious resolution of litigation, and the risk of prejudice to the defendants against the policy favoring disposition of cases on their merits, and the availability of less drastic sanctions."  *Ash v. Cvetkov*, 739 F. 2d 493, 496 (9th Cir. 1984). Here, Defendants have failed to demonstrate prejudice, particularly as Plaintiffs have represented that no further discovery from Philips Taiwan or Philips Brazil is expected.  Furthermore, disposition of these claims "on their merits" (alongside all the pending claims) will be seamless.  Plaintiffs have not interfered with the Court's docket nor disobeyed any court order on scheduling, and permitting the claims to proceed will not disrupt scheduling.

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

18

## II.   THE RULE 4(f)(3) SERVICE WAS EFFECTIVE

Defendants' next argument is that service of process was insufficient because Plaintiffs did not obtain an order of the Court permitting service through U.S. counsel for PENAC and Royal Philips under Rule 4(f)(3).  *See* Mot. at 7.  This argument fails as well.

First, Defendants waived the right to request such an order.  In their April 6, 2009 letter regarding service to "counsel for defendants listed below," including Defendants, Plaintiffs stated:  "If counsel for any of the new foreign defendants refuses to accept service on behalf of their client, Plaintiffs will request that the Court re-issue its September 3, 2008 Order to apply to the new foreign defendants."  Capurro Decl. ¶3, Ex. 1.  In the ensuing exchange of correspondence between Plaintiffs and Mr. Litwin regarding service on Defendants, Mr. Litwin never made such a request before accepting service "under protest."  *Id.* ¶¶ 4; 6-7, Exs. 2-4.

Second, this Court recently held that the Thomson Defendants could be served via their domestic counsel without a prior court order to that effect.[32]  The same reasoning applies here.

Third, Plaintiffs sought and obtained the Service Order because requiring service under international protocols would have been wasteful, given that many foreign defendants (including Royal Philips) had U.S. affiliates that had already appeared in the case, and whose counsel would therefore provide notice to their sister companies.  *See* Docket 344 (Indirect Purchaser Plaintiffs' Notice of Motion and Motion to Authorize Service on Certain Foreign Defendants Pursuant to FRCP 4(f)(3)).  They were not required to use other means.[33]

---

[32] "[T]o the extent that [the Thomson Defendants] refuse service based on their belief that a foreign defendant may not be served via its domestic counsel, they are wrong. *See* ECF No. 2437 ("Order Denying Beijing-Matsushita Color CRT Co.'s MTD") at 8-11 (explaining that service on a foreign defendant via domestic counsel is proper under Rule 4).  If Tech Data has properly served the FAC on the Thomson Defendants via their United States counsel, then the Thomson Defendants have been served under Rule 4 per the Court's prior orders on that issue." Dkt. No. 2507.

[33] Defendants argue that under *Rio Prop. Inc. v. Rio Int'l Interlink,* 284 F.3d 1007 (9th Cir. 2002), Plaintiffs have not shown under the "particularities and necessities" of this case that mail service on counsel is warranted.  They complain that Plaintiffs could have employed letters rogatory to effectuate service, and that their failure to do so renders proceeding under the Service Order invalid.  Again, as *Rio Properties* makes clear, and as this Court held in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 1091044, at *4 (N.D. Cal. March 13, 2014), there is simply no requirement that plaintiffs attempt international service prior to using Rule 4(f).  *Rio Props.*, 284 F. 3d at 1015 (Rule 4(f) service

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

19

1    Fourth, the Service Order has served as precedent subsequent Orders in this MDL authorizing

2    service on foreign defendants by mail delivery to U.S. counsel, even where such defendants did not

3    have U.S. subsidiaries.[34] As the Special Master stated, "the objective of [Rule 4(f)(3)] is to require a

4    process by which the defendant gets actual notice of the claim against it, and the opportunity to be

5    heard." *Id.* at 2.

6    Here, Philips Taiwan and Philips Brazil have "actual notice" of Plaintiffs' claims.  They

7    certainly had actual notice of the CAC, since the Howrey firm moved to dismiss the CAC on their

8    behalf on May 18, 2009.  As noted, counsel for PENAC and Royal Philips—now Baker Botts—have

9    negotiated extensively with Plaintiffs regarding discovery from Philips' global CRT business.  Baker

10   Botts also negotiated a 2012 settlement for Philips Taiwan and Philips Brazil in the direct purchaser

11   class action in this MDL.  And, Plaintiffs served their Fourth Consolidated Amended Complaint on

12   Baker Botts on February 18, 2014.  Capurro Decl. ¶¶14-20; 22-24; 33.

13   Under constitutional standards, all that is required is that service be "reasonably calculated,

14   under all the circumstances, to apprise interested parties of the pendency of the action and afford them

15   an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306,

16   314 (1950); *Rio Prop.*, 284 F. 3d at 1016.  This standard is met here.

17   **III.    THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS**

18   **A.    Personal Jurisdiction Comports with Due Process**

19   This Court has specific jurisdiction over Philips Taiwan and Philips Brazil because (1) each

20   defendant purposefully directed its conspiratorial activities at the United States; and (2) Plaintiffs'

21   claims arise out of these Defendants' conspiracy-related activity.  The Ninth Circuit applies a three-part

22   test to determine if purposeful direction is established: "the defendant allegedly must have (1)

---

24   is not a "last resort" but rather "one means among several" for accomplishing service on foreign
     defendants.).

25   [34] Pursuant to the Service Order, certain Direct Action Plaintiffs ("DAPs") were granted permission to
     serve foreign defendants Beijing Matsushita Color CRT Co. Ltd. and Chunghwa by mail on U.S.

26   counsel already representing these defendants in the MDL.  *See* Dkt. 1241 (Report and
     Recommendation Regarding Motions for Service of Process on Certain Defendants, dated June 27,

27   2012).  The Court just recently reaffirmed the propriety of these service orders.  *CRT*, 2014 WL
     1091044 at *4.

28   IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR
     INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

                                                                                                   20

1    committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

2    defendant knows is likely to be suffered in the forum state." *CRT*, 2004 WL 1091044, at *5-6.  As this

3    Court stated, "an antitrust defendant 'expressly aims' an intentional act at a forum state when its

4    allegedly anticompetitive behavior is targeted at a resident of the forum, or at the forum itself." *Id.*

5         Once the plaintiff establishes "purposeful direction" in this manner, the exercise of jurisdiction

6    must still "comport with fair play and substantial justice, i.e., it must be reasonable." *College Source,*

7    *Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011); *see also Schwarzenegger v. Fred*

8    *Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  However, it is defendants' burden to make a

9    "compelling case" that the exercise of jurisdiction would not be reasonable. *Id; see also Burger King*

10   *Corp. v. Rudzewicz*, 471 U.S. 462, 476-478 (1985). The Ninth Circuit has adopted a flexible approach

11   that allows plaintiffs to make a "lesser showing of minimum contacts 'if considerations of

12   reasonableness dictate.'" *Ochoa v. J.B. Martin & Sons Farms*, 287 F.3d 1182, 1188, fn. 2 (9th Cir.

13   2002).

14        In support of their original motion, Philips Taiwan and Philips Brazil submitted declarations

15   from officers of these companies, purporting to show that neither company had contacts with the

16   United States. *See* Docket 477 (declaration of "senior counsel" of PTL stating, among other things, that

17   PTL "is not registered to do business in the United States" and does not "own or lease property," "pay

18   taxes," or have offices, plants, personnel or bank accounts there). The apparent purpose was to

19   demonstrate the absence of sufficient contacts to justify jurisdiction under a minimum contacts

20   analysis.  However, precisely such a declaration was found irrelevant by this Court in *CRT*, 2014 WL

21   1091044, at *5-6, because plaintiffs provided evidence establishing defendants' "purposeful direction"

22   of unlawful conduct at the United States.  The same is true here.

23        **1.   Philips Taiwan and Philips Brazil Expressly Aimed Their Unlawful,**
24        **Anticompetitive Acts at the United States**

25        Plaintiffs' Fourth Consolidated Amended Complaint ("FCAC") alleges that Philips Taiwan and

26   Philips Brazil were actively involved in the CRT conspiracy affecting the United States market,

27   participating in at least 100 Glass Meetings and thereby "agree[ing] on prices and supply levels for

28

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR
INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

21

CRT products." FCAC ¶¶ 171-172.  Plaintiffs' FCAC alleges also that Defendants coordinated pricing with CRT Product manufacturers in Brazil, including Philips Brazil, as a means to ensure "that prices of all CRT Products sold in the United States were fixed, raised, maintained and/or stabilized at supracompetitive levels." *Id.* at ¶164. These allegations are borne out by the evidence.



[35] *See* Capurro Decl. ¶37, Ex. 11: C.C. Liu Transcript at 47:25-50:22.  Mr. Liu further testified that the United States was a very important market for CRTs.  *Id.* at 420:13-421:10.

[36] *See id.* ¶36, Ex. 10: Jim Smith Transcript at 34:7-9; 192:5 – 193:18; *id.* Ex. 20-21.

[37] *See also id.* ¶¶49-50, Exs. 23 and 24.

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

22

*       *       *



---

[38] SREC (Sharp Roxy Electronics Corporation) is a TV manufacturer based in Malaysia that exported TVs to the United States.  *See id*.

[39] *See also id.* ¶¶ 58-59, Exs. 32-33.

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR
INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

**2.  Philips Taiwan and Philips Brazil Sold Substantial Quantities of CRTs Into the United States**

Philips Taiwan and Philips Brazil manufactured CDTs and CPTs, respectively, for sale in the United States.  More specifically, Philips Taiwan was the legal entity responsible for Philips Display Components' production of CDTs for the United States market until the formation of LG.Philips Displays in June 2001. Likewise, Philips Brazil was the legal entity responsible for the Philips Display Components' production of 14" and 20" CPTs for sale in the U.S. until June 2001.

**a.  Philips Taiwan**



[40] *See id.* ¶60, Ex. 34.  *See also*

*See also* Capurro Decl., ¶64, Ex. 38.

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

24

1

2

### b.  Philips Brazil

4

5

6

7

8

9      To summarize, the foregoing evidence establishes that Philips Taiwan and Philips Brazil

10 participated in the global conspiracy to fix CRT prices and "expressly aimed" their conspiratorial

11 activities at the United States.  Plaintiffs have made a "prima facie showing that Defendants' United

12 States-directed actions were a 'but-for' cause of their claims" by "pleading that they paid artificially

13 high prices for CRT Products, directly as a result of Defendants' activities."  March 13, 2014 Order

14 Denying Beijing-Matsushita Color CRT Co.'s Motion to Dismiss (Dkt. No. 2437), at p.16.

15      **B.      Defendants Have Submitted to the Jurisdiction of the Court**

16      Philips Taiwan and Philips Brazil filed a motion to dismiss on May 18, 2009, wherein they

17 reserved the argument to move for lack of personal jurisdiction.  However, in the intervening period,

18 Philips Taiwan and Philips Brazil *embraced* this Court's jurisdiction by affirmatively seeking relief

19 from this Court.  Under Ninth Circuit law, this conduct amounted to consent to jurisdiction for purposes

20 of this MDL.

21      Pursuant to a settlement agreement dated February 1, 2012, "Philips," specifically defined in

22 that agreement to include Royal Philips, PENAC, Philips Taiwan and Philips Brazil, entered into a

23 settlement with the direct purchaser class plaintiffs resolving direct class antitrust claims against them

24 concerning "CRT Products." Dkt. No. 1115-1. The settlement contains an express provision "reserving

25

26  _____

27 [44] *See, e.g.,* Capurro Decl. ¶65, Ex. 39; *id.* ¶45, Ex. 19.
   [45] *See id.* ¶60, Ex. 34.  See also id., ¶45, Ex. 19.
   [46] *See, e.g., id.* ¶¶66-67, Exs. 40 – 41.

28 IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR
   INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

exclusive jurisdiction" over the settlement to "the United States Court for the Northern District of California." Section 10(e). It provides that the "Philips Releasees" will be "completely released" from all present and future claims, and empowers them to use the settlement "to defend against the assertion of Released Claims." Sections 12, 13.

According to the agreement, "the United States District Court for the Northern District of California shall retain jurisdiction over the implementation, enforcement and performance of this agreement. . . ." Section 34. The settlement was presented to the Court for approval, and by order dated October 22, 2012, this Court signed the final judgment.  The final order approving the settlement states that this Court "has jurisdiction . . . over the parties."  Dkt. No. 1412.

As this Court has recognized, "the Ninth Circuit has held that even if actions are closely related—as when different plaintiffs sue the same defendant in different cases but based on the same facts—defendants do not waive their personal jurisdiction defense by raising it only in a later action, *so long as the defendant is not independently seeking affirmative relief in the same court concerning the same transaction or occurrence*." *CRT,* 2014 WL 1091044, at *3, citing *Dow Chem. Co. v. Calderon*, 422 F. 3d 827, 835-36 (9th Cir. 2005) (emphasis added). Thus, this Court held that participation in this MDL by simply defending claims, even for years, did not constitute waiver of a personal jurisdiction argument which had been reserved in a particular case.

But here, Philips Taiwan and Philips Brazil have sought "affirmative relief" in this Court under *Calderon.* They each affirmatively bargained for, and now rely upon, the valuable *res judicata* protection that this Court's final judgment will provide.  Having expressly agreed to the jurisdiction of this Court for purposes of settling closely related antitrust claims based on the same underlying conspiracy, Philips Taiwan and Philips Brazil cannot now disavow jurisdiction before the same Court, in a case based on the same facts and circumstances.[47]

---

[47] *See Scottish Air Int'l v. British Caledonian Group*, 152 F.R.D. 18, 24 (S.D.N.Y. 1993) ("defendants, having previously submitted to the Court's jurisdiction for purposes of negotiating and executing the settlement agreement, have waived the defense of lack of jurisdiction."); *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F. 2d 714, 717 (2d. Cir. 1974) ("A stipulation and agreement of settlement, entitled in the action and 'so ordered' by the judge, is quite different from a general appearance. Whether or not the court previously had jurisdiction over [the defendant], the stipulation was a consent

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917

26

**CONCLUSION**

For all of the foregoing reasons, the Court should deny the motion to dismiss by Philips Taiwan and Philips Brazil for insufficient service of process and lack of personal jurisdiction.

Dated:  April 14, 2014                              Respectfully submitted,

                                              By:   /s/ Mario N. Alioto

                                                    _____
                                                    TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
                                                    Mario N. Alioto (56433)
                                                    Lauren C. Capurro (241151)
                                                    2280 Union Street
                                                    San Francisco, CA  94123
                                                    Telephone: (415) 563-7200
                                                    Facsimile: (415) 346-0679

                                                    *Lead Counsel for the Indirect Purchaser Plaintiffs*

---

to the exercise of the court's power to compel compliance."); *Newport Components v. NEC Home Electronics*, 671 F. Supp. 1525, 1539 (C.D. Cal. 1987) ("by availing itself of the federal court system, [defendant] may be fairly called upon now to answer claims brought in that system.").

IPPs' OPPOSITION TO PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S MOTION TO DISMISS FOR
INSUFFICIENT SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION, MDL No. 1917