ATTACHMENT 2

Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and
Sharp Electronics Manufacturing Company of America, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-cv-5944 SC<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>*Sharp Electronics Corp.*, et al. *v. Hitachi Ltd.*, et al., Case No. 13-cv-1173 SC | **SHARP ELECTRONICS CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.'S OPPOSITION TO TOSHIBA DEFENDANTS' MOTION TO DISMISS**<br><br>Date: December 20, 2013<br>Time: 10:00 a.m.<br>Place: Courtroom 1, 17th floor<br>Judge: Hon. Samuel Conti |

# TABLE OF CONTENTS

**Page**

ISSUES TO BE DECIDED ................................................................................................. 1

INTRODUCTION .............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................. 3

ARGUMENT ..................................................................................................................... 5

I.    TOSHIBA'S MOTION TO DISMISS BASED ON THE BTA'S FORUM
      SELECTION CLAUSE SHOULD BE DENIED ............................................... 5

      A.    The Sharp Plaintiffs Are Not Parties to or Bound By the BTA ........... 5

      B.    The Sharp Plaintiffs' Claims Do Not Relate to the BTA .................... 7

      C.    Enforcing the Forum Selection Clause Here Would Violate Public
            Policy By Depriving the Sharp Plaintiffs of Reasonable Recourse
            for Their Claims:  Treble Damages in a Court of Competent
            Jurisdiction ...................................................................................... 12

II.   THE SHARP PLAINTIFFS' FINISHED PRODUCT CLAIMS ARE
      PROPER UNDER *ILLINOIS BRICK* ............................................................. 14

CONCLUSION ................................................................................................................ 17

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Adams v. Raintree Vacation Exch., LLC*,
　702 F.3d 436 (7th Cir. 2012)................................................................... 9

*Anselmo v. Univision Station Group, Inc.*,
　No. 92-cv-1471, 1993 WL 17173 (S.D.N.Y. Jan. 15, 1993) ................... 8

*Argueta v. Banco Mexicano, S.A.*,
　87 F.3d 320 (9th Cir. 1996)..................................................................... 5

*In re ATM Fee Antitrust Litig.*,
　686 F.3d 741 (9th Cir. 2012)................................................................... 15

*Beverly Enters. v. Herman*,
　130 F. Supp. 2d 1 (D.D.C. 2000) ....................................................... 6, 10

*In re Brand Name Prescription Drugs Antitrust Litig.*,
　123 F.3d 599 (7th Cir. 1997).................................................................. 15

*Cedars-Sinai Med. Center v. Global Excel Mgmt., Inc.*,
　No. 09-cv-3627, 2010 WL 5572079 (C.D. Cal. Mar. 19, 2010)............... 8

*City of Moundridge v. Exxon Mobil Corp.*,
　471 F. Supp. 2d 20 (D.D.C. 2007) .......................................................... 16

*Clinton v. Janger*,
　583 F. Supp. 284 (N.D. Ill. 1984) ............................................................ 9

*Coal. for ICANN Transparency Inc. v. Verisign, Inc.*,
　452 F. Supp. 2d (N.D. Cal. 2006) ............................................................ 8

*Comer v. Micor, Inc.*,
　436 F.3d 1098 (9th Cir. 2006)................................................................. 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
　911 F. Supp. 2d 857 (N.D. Cal. 2012) .................................................... 16

*In re CRT Antitrust Litig.*,
　No. 07-cv-5944, 2013 WL 4505701 (N.D. Cal. Aug. 21, 2013) ........... 16

*Decker Coal Co. v. Commonwealth Edison Co.*,
　805 F.2d 834 (9th Cir. 1986).................................................................... 9

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*,
　9 F.3d 1060 (2d Cir. 1993)................................................................. 9, 10

*E.E.O.C. v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ............................................................................................. 5

*In re G-Fees Antitrust Litig.*,
  584 F. Supp. 2d 26 (D.D.C. 2008) ............................................................ 15, 16

*GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JP Morgan Chase Bank, N.A.*,
  671 F.3d 1027 (9th Cir. 2012) ............................................................................ 6

*Harrington v. Atl. Sounding Co., Inc.*,
  602 F.3d 113 (2d Cir. 2010) .............................................................................. 11

*Herrera v. Katz Comm'ns, Inc.*,
  532 F. Supp. 2d 644 (S.D.N.Y. 2008) ............................................................... 7

*Holland Am. Line Inc. v. Wartsila N. Am. Inc.*,
  485 F.3d 450 (9th Cir. 2007) ......................................................................... 9, 12

*Ill. Brick v. Illinois*,
  431 U.S. 720 (1977) ...................................................................................... 7, 15

*Jewish Hosp. Ass'n v. Stewart Mech. Enters.*,
  628 F.2d 971 (6th Cir. 1980) ............................................................................ 15

*Katzir's Floor & Home Design, Inc. v. M-MLS.COM*,
  394 F.3d 1143 (9th Cir. 2004) .......................................................................... 11

*Kendall v. Visa U.S.A. Inc.*,
  518 F.3d 1042 (9th Cir. 2008) .......................................................................... 16

*Klamath Water Users Protective Ass'n v. Patterson*,
  204 F.3d 1206 (9th Cir. 1999) ............................................................................ 6

*Kristian v. Comcast Corp.*,
  446 F.3d 25 (1st Cir. 2006) ............................................................................... 13

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) .......................................................................... 16

*M/S Bremen v. Zapata Offshore Co.*,
  407 U.S. 1 (1972) .............................................................................................. 11

*Mayes v. Leipziger*,
  729 F.2d 605 (9th Cir. 1984) ............................................................................ 17

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988) .......................................................................... 5, 9

*In re Mercedes-Benz Antitrust Litig.*,
    157 F. Supp. 2d 355 (D.N.J. 2001) ............................................................................... 16

*Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am. Inc*,
    822 F. Supp. 2d 896 (D. Minn. 2011) ............................................................................... 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ............................................................................... 10, 11, 13, 14

*Mundi v. Union Sec. Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009) ............................................................................... 12

*Murphy v. Schneider Nat'l, Inc.*,
    362 F.3d 1133 (9th Cir. 2004) ............................................................................... 5, 7

*Pierce Cnty. Hotel Emps. & Rest. Emps. Health Trust v. Elks Lodge, B.P.O.E. No. 1450*,
    827 F.2d 1324 (9th Cir. 1987) ............................................................................... 6

*Pratt v. Silversea Cruises, Ltd., Inc.*,
    No. 05-cv-0693, 2005 WL 1656891 (N.D. Cal. July 13, 2005) ............................................................................... 12

*Prince Heaton Enters. v Buffalo's Franchise Concepts, Inc.*,
    117 F. Supp. 2d 1357 (N.D. Ga. 2000) ............................................................................... 16

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    7 F.3d 1110 (3d Cir. 1993) ............................................................................... 9

*Putz v. Golden*,
    No. 10-cv-0741, 2010 WL 5071270 (W.D. Wash. Dec. 7, 2010) ............................................................................... 12, 13

*Richards v. Lloyd's of London*,
    135 F.3d 1289 (9th Cir. 1998) ............................................................................... 10, 11, 14

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ............................................................................... 10, 14

*Stereo Gema, Inc. v. Magnadyne Corp.*,
    941 F. Supp. 271 (D.P.R. 1996) ............................................................................... 5

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*,
    10 F.3d 753 (11th Cir. 1993) ............................................................................... 9

*Time Warner Entm't Co. v. Everest Midwest Licensee, L.L.C.*,
    381 F.3d 1039 (10th Cir. 2004) ............................................................................... 7

*In re TFT-LCD Antitrust Litig.*,
    No. 07-cv-1827, 2011 WL 4017961 (N.D. Cal. Sept. 9, 2011) ............................................................................... 13

*Trosper v. Synthes USA Sales, LLC*,
   No. 13-cv-2126, 2013 WL 2898229 (C.D. Cal. June 12, 2013) ............................................. 12

*Udom v. Fonseca*,
   846 F.2d 1236 (9th Cir. 1988) ................................................................................................... 17

*U.S. for the Use & Benefit of Union Bldg. Materials Corp. v. Haas & Haynie Corp.*,
   577 F.2d 568 (9th Cir. 1978) ..................................................................................................... 6

*Universal Grading Serv. v. eBay, Inc.*,
   No. 08-cv-3557, 2009 WL 2029796 (E.D.N.Y. June 10, 2009) ............................................... 9

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
   515 U.S. 528 (1995) ................................................................................................................. 13

*Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*,
   351 F.3d 1067 (11th Cir. 2003) .................................................................................................. 6

**OTHER AUTHORITIES**

Fed. R. of Civ. P. 12(b)(3) ............................................................................................................... 5

Restatement (Second) of Contracts § 202(4) (1981) ....................................................................... 6

**ISSUES TO BE DECIDED**

1.  Whether a forum selection clause in a Japanese 1977 contract between non-party Sharp Corporation and Toshiba Corporation, that no plaintiff signed, that no plaintiff is party to, which reflects no intention to apply internationally or to non-parties to the agreement, and which is not the contract governing the transactions at issue, prevents plaintiffs from bringing Sherman Act and related state law claims in a United States court for their U.S. purchases?

2.  Whether the Sharp Plaintiffs' allegations suffice to establish that their purchases of CRT finished products under the Sherman Act fall under the *Illinois Brick* exception for ownership or control, like the Direct Purchaser Plaintiffs and other Direct Action Plaintiffs?

**INTRODUCTION**

The Toshiba Defendants' motion to dismiss should be denied.[1]  Their venue argument is based entirely on a forum selection clause in a 1977 "Basic Transaction Agreement" (the "BTA") that neither of the two plaintiffs in this case ever executed.  The two companies that are plaintiffs here—New Jersey-based Sharp Electronics Corporation and California-based Sharp Electronics Manufacturing Company of America (the "Sharp Plaintiffs")—are United States companies, and they are not now, and have never been, parties to the BTA.  The BTA does not apply to them and does not govern their relationship with the Toshiba Defendants.  The Sharp Plaintiffs' claims are based on their purchases in the United States of price-fixed CRTs and of finished products containing CRTs manufactured by defendants and conspirators—purchases that were governed by entirely separate agreements.

The BTA is instead between two Japanese corporations, Tokyo Shibaura Electric Corporation ("Tokyo Shibaura," a former official name of Toshiba Corporation) and Sharp Corporation.  *Sharp Corporation is not a party to this lawsuit and none of the claims at issue are for Sharp Corporation purchases from Toshiba Corporation.*  The BTA does not even purport to bind other companies, including subsidiaries or other entities related to Sharp Corporation, such as the Sharp Plaintiffs.  The Toshiba Defendants' motion should be denied on this ground alone.

---

[1]  The moving Toshiba Defendants are Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc.

Not surprisingly, there are other defects with the motion to dismiss. The forum selection clause in the BTA also does not apply to this case because the claims at issue here do not "relate" to that agreement. The BTA relates only to domestic Japanese transactions between Toshiba Corporation and Sharp Corporation. The claims here, by contrast, arise out of purchases of CRTs or CRT Products made by the Sharp Plaintiffs solely in the United States. The Sharp Plaintiffs, in fact, entered into their own separate agreements to purchase CRTs during the conspiracy period. An exemplar CRT agreement with Toshiba America Electronics Components ("TAEC") contains its own terms and conditions that are inconsistent with terms in the BTA. The applicable CRT agreement, for example, says not one word about disputes being resolved in Osaka, Japan. Instead, it contemplates proceedings in United States courts by specifying that the governing law for any disputes is Tennessee state law and requiring compliance with U.S. federal law, which, of course, includes the Sherman Act. The CRT agreement also contains an integration clause that recites it is the *only* agreement related to that subject matter. This clause excludes application of the BTA to the claims here.

Third, enforcing the BTA's forum selection clause against the Sharp Plaintiffs would deprive them of rights and remedies available under U.S. law and thus violate public policy. Not only would the Osaka District Court lack jurisdiction over this dispute, but even if it could exercise jurisdiction, it could not award the Sharp Plaintiffs the treble damages to which they would be entitled under U.S. law. Japanese law does not permit the award of treble damages. In short, the Sharp Plaintiffs could not bring the claims they assert here in the Osaka District Court. There can be no serious argument that the Sharp Plaintiffs waived their right to bring such claims by virtue of a document to which they are not even a party.

Finally, in the second part of their motion, the Toshiba Defendants seek to revisit legal rulings by this Court on the question of claims for finished CRT products. Twice this Court has permitted claims for finished CRT products to proceed under the "ownership or control exception" to *Illinois Brick*. For the same reasons that the Court permitted the Direct Purchaser Class Plaintiffs' and the other Direct Action Plaintiffs' claims to proceed to discovery, it should permit the Sharp Plaintiffs', as well.

### FACTUAL BACKGROUND

New Jersey-based Sharp Electronics Corporation and California-based Sharp Electronics Manufacturing Company of America, Inc. bought price-fixed cathode ray tubes (CRTs) directly from the defendants in the United States, and also purchased "CRT Products" from "OEMs as well as others" containing price-fixed CRTs that had been manufactured by the defendants. Compl. ¶¶ 30, 218. Because this Court is generally familiar with the details of the alleged conspiracy, we do not rehearse them here. The Complaint names as defendants participating in the conspiracy Toshiba Corporation; Toshiba America, Inc.; Toshiba America Electronic Components, Inc.; and, Toshiba America Information Systems, Inc.[2] Compl. ¶¶ 65-69.

Throughout the conspiracy period, the Sharp Plaintiffs purchased CRTs from the Toshiba Defendants through Purchase Orders containing mandatory terms and conditions. *See* Attach. 1, Decl. of Vince Sampietro, Ex. A (Purchase Order ("PO")). These Purchase Orders contained essential commercial terms relating to the price, delivery, and course of performance for the sale of the CRTs. *See id.* They specified, among other things, that any disputes would be governed by Tennessee law, and they guaranteed that the Seller would comply with U.S. "federal and state" laws, including the "Occupational Safety Health Act of 1970." *Id.* at ¶¶ 9, 13. They also included an integration clause which stated that the Purchase Order "shall constitute the entire agreement between the Seller and the Buyer and no other understanding shall limit[,] modify, or vary its terms unless reduced to writing." *Id.* at ¶ 3. These Purchase Orders are the contracts that governed the Sharp Plaintiffs' purchases of CRTs from the Toshiba Defendants. *See* Attach. 1, Decl. of Vince Sampietro, ¶ 3. The Toshiba Defendants have identified no writing that purports to limit, modify or vary the terms of these agreements.

Japan-based Sharp Corporation is the ultimate parent corporation for the Sharp Plaintiffs. Sharp Corporation is not a party to this lawsuit, however, and it does not make purchases in the United States of CRTs or CRT Products. In 1977, Tokyo Shibaura Electric Corporation entered into the BTA with Sharp Corporation. *See* Mot. to Dismiss, Attach. 3. The

---

[2] Plaintiffs also brought suit against Matsushita Toshiba Picture Display Co., Ltd.—a joint venture between Toshiba Corporation and Matsushita. Compl. ¶ 51.

BTA lists only two parties: "Party A," defined only as Sharp Corporation, and "Party B," defined only as Tokyo Shibaura. *Id.* It purports to set forth "the basic terms and conditions related to the manufacture and supply of goods" and to apply to only individual agreements between Sharp Corporation and Tokyo Shibaura, if there is no other special agreement. *Id.*, BTA Preamble; Art. 1(2) ("Content . . . shall apply to all individual Agreements between Party A and Party B to the extent that there is no special Agreement."). Only Sharp Corporation and Tokyo Shibaura are signatories to the BTA. *Id.*

The BTA was a version of a form contract that Sharp Corporation used for domestic Japanese contracts. *See* Attach. 2, Decl. of Fumihiro Yamazoe at ¶ 5. The BTA does not state, or reflect any intent, that it applies to international disputes or make any references to international disputes at all, and Sharp Corporation did not intend for the BTA, nor agreements like it, to apply internationally. *Id.* at ¶¶ 3-4. The BTA is an example of a "basic agreement for Japanese, domestically produced materials and research materials transactions." *Id.* at ¶ 5. The BTA also does not state that it applies to any affiliate, joint venture or subsidiary of the signatories and Sharp Corporation did not intend for the BTA to apply to its affiliates, joint ventures or subsidiaries. *Id.* at ¶¶ 3-4. It contains no express waiver of any non-parties' rights to litigate international disputes under foreign law. *See id.* at ¶ 7. Consistent with this understanding that the BTA governed only domestic transactions between two Japanese companies, the BTA specifies that for "litigation related to this Agreement . . . the Osaka District Court shall be the court of competent jurisdiction." *See* Mot. to Dismiss, Attach. 3, BTA Art. 21(2).

That the BTA and the Purchase Orders are separate contracts, intended to bind separate entities with respect to separate claims, is made clear by the fact that the BTA and the Purchase Orders contain terms on overlapping subject matters, but that differ from one another. The BTA and the Purchase Orders provide different indemnity provisions as well as different requirements regarding basic terms and conditions, delivery of goods, inspection of goods upon delivery, and the transfer of rights and obligations. *See* Mot. to Dismiss, Attach. 3, BTA Arts. 1, 6-8, 18-19; Attach. 1, Ex. A, PO at ¶¶ 1, 5-6, 11. For example, the BTA envisions additional

1  agreements between Sharp Corporation and Tokyo Shibaura, stating that the BTA applies to "all

2  individual Agreements between Party A and Party B to the extent that there is no special

3  Agreement," Mot. to Dismiss, Attach. 3, BTA Art. 1(2), whereas the Purchase Orders state that

4  the Order "constitute[s] the entire agreement between the Seller [SMCA] and the Buyer

5  [TAEC]," Attach. 1, Ex. A, PO at ¶ 3.  The BTA states that when Sharp Corporation incurs

6  damages due to Tokyo Shibaura's failure to deliver goods, "Party A may request Party B to make

7  compensation for damages."  Mot. to Dismiss, Attach. 3, BTA Art. 6(2).  The Purchase Orders,

8  on the other hand, state that the Seller's failure to deliver goods allows the Buyer to "cancel the

9  then remaining balance of this Order unless the delay is an excusable delay."  Attach. 1, Ex. A,

10  PO at ¶ 5.  Finally, employees at the Sharp Plaintiffs responsible for CRT procurement from the

11  Toshiba Defendants were unaware of the BTA's existence, and instead understood that their

12  purchases were governed by the Purchase Orders.  *See* Attach. 1, Decl. of Vince Sampietro, at ¶¶

13  1, 4-5.

14  ## ARGUMENT

15  **I.    TOSHIBA'S MOTION TO DISMISS BASED ON THE BTA'S FORUM

16        SELECTION CLAUSE SHOULD BE DENIED**

17         A motion to dismiss for improper venue proceeds under Rule 12(b)(3) of the

18  Federal Rules of Civil Procedure.  *Argueta v. Banco Mexicano*, *S.A.*, 87 F.3d 320, 324 (9th Cir.

19  1996).  The court may consider facts outside the face of the pleadings but must "draw all

20  reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of

21  the non-moving party."  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137-38 (9th Cir. 2004).

22  Because the BTA does not specify under what law it is to be interpreted, federal common law

23  governs its interpretation.  *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 512-13

24  (9th Cir. 1988); *see also Stereo Gema, Inc. v. Magnadyne Corp.*, 941 F. Supp. 271, 273 (D.P.R.

25  1996).

26         **A.    The Sharp Plaintiffs Are Not Parties to or Bound By the BTA**

27         "It goes without saying that a contract cannot bind a nonparty."  *E.E.O.C. v. Waffle

28  *House, Inc.*, 534 U.S. 279, 294 (2002).  This is true, even when the party is a corporate parent or

1  affiliate of the non-party.  *See Beverly Enters. v. Herman*, 130 F. Supp. 2d 1, 22 (D.D.C. 2000)

2  ("The relationship between a parent and subsidiary alone is not enough to render a subsidiary

3  liable on a parent's contract."); *Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067,

4  1074 (11th Cir. 2003); *see also Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am. Inc.*, 822

5  F. Supp. 2d 896, 904 (D. Minn. 2011) ("Thus, the forum-selection clause in a contract between

6  the subsidiary and another generally does not also bind the parent in any dispute with the other

7  party.").  The Sharp Plaintiffs are not parties or signatories to the BTA.  *See* Mot. to Dismiss,

8  Attach. 3.  Not even Toshiba Defendants contest this.

9          A contract may not be enforced by or against a non-signatory unless the parties to

10  the agreement intended it to be so.  *See GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v.*

11  *JPMorgan Chase Bank, N.A.*, 671 F.3d 1027, 1033 (9th Cir. 2012).  Intent is divined first through

12  the agreement itself:  "Contract terms are to be given their ordinary meaning, and when the terms

13  of a contract are clear, the intent of the parties must be ascertained from the contract itself."

14  *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999).

15  Nothing about the plain language of the BTA reflects an intention to bind any non-signatory.  The

16  BTA quite clearly defines the parties as *only* Tokyo Shibaura and Sharp Corporation.  *See* Mot. to

17  Dismiss, Attach. 3, BTA Preamble.  It does not mention affiliated companies or subsidiaries at

18  all, or suggest that it intended to cover their claims, or that they were, in any way, third-party

19  beneficiaries of the agreement.  That silence is unambiguous.  *See Klamath Water Users*, 204

20  F.3d at 1210.  Again, not even the Toshiba Defendants contest this.

21          But even if the contract were ambiguous (and it is not), courts would look to

22  secondary considerations for intent.  These include "negotiations, later conduct, related

23  agreements, and industrywide custom."  *Pierce Cnty. Hotel Emps. & Rest. Emps. Health Trust v.*

24  *Elks Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1327 (9th Cir. 1987).  "[S]ubsequent action of the

25  parties in construing the contract cannot be ignored as evidencing the intent of the parties."  *U.S.*

26  *for the Use & Benefit of Union Bldg. Materials Corp. v. Haas & Haynie Corp.*, 577 F.2d 568, 574

27  (9th Cir. 1978); *see also* Restatement (Second) of Contracts § 202(4) (1981).  Here, the secondary

28

considerations show that the relevant entities did *not* intend for the U.S. Sharp Plaintiffs to be bound by the BTA.[3]

Sharp Corporation had no intention to bind its U.S. subsidiaries through the renewal of the BTA. The BTA is an example of a "basic agreement for Japanese, domestically produced materials and research materials transactions." *See* Attach. 2, Decl. of Fumihiro Yamazoe at ¶ 5. The executed version is in Japanese because, consistent with Sharp Corporation's policy, this was an agreement only between two Japanese entities governing their commercial transactions in Japan. *Id.* at ¶ 6.[4] The Toshiba Defendants have identified no conduct or correspondence from either Sharp Corporation or Tokyo Shibaura reflecting a contrary intent.

### B. The Sharp Plaintiffs' Claims Do Not Relate to the BTA

Because it is plain that the Sharp Plaintiffs did not sign the BTA, that they are not mentioned (generically or specifically) in it, and that there is no evidence of an intent to bind them to it, Toshiba must argue instead that the Sharp Plaintiffs should be nonetheless bound by the BTA's forum selection clause because their dispute is "closely related" to the subject matter of the contract. Mot. to Dismiss at 9. But this argument is wrong on the facts and the law.

On the facts, the BTA purports to relate to Japanese transactions between Tokyo Shibaura and Sharp Corporation (which is not a party to this case). The phrase "related to" "cover[s] claims that have a significant relationship to the contract or have 'their origin or

---

[3]   Even if the BTA were ambiguous, ambiguous contracts should not be interpreted in a way that contravenes public policy or the public interest. *Herrera v. Katz Comm'ns, Inc.*, 532 F. Supp. 2d 644, 647 (S.D.N.Y. 2008) ("[P]rinciples of contract . . . provide that . . . a meaning which serves the public interest . . . is preferred over a meaning which does not.") (*citing Time Warner Entm't Co. v. Everest Midwest Licensee, L.L.C.*, 381 F.3d 1039, 1045 (10th Cir. 2004), *and* Restatement (Second) of Contracts § 207 (interpretation "that serves the public interest is generally preferred")). But Toshiba's interpretation would do just that, for the reasons discussed in (I)(C) below. The Supreme Court has observed time and again that "private treble-damages action[s] play a paramount role in the enforcement of the fundamental economic policy of the Nation." *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 755 (1977).

[4]   To the extent Toshiba challenges these assertions, this factual dispute, alone, mandates that Toshiba's argument be denied. *See Murphy*, 362 F.3d at 1139.

genesis' in the contract." *Cedars-Sinai Med. Ctr. v. Global Excel Mgmt., Inc.*, No. 09-cv-3627, 2010 WL 5572079, at *5 (C.D. Cal. Mar. 19, 2010) (quoting *Seagal v. Vorderwuhlbecke*, 162 Fed. Appx. 746, 748 (9th Cir. 2006)). Under the "plain meaning" of the term "related to," the claims "must involve the [agreement] itself to trigger the clause." *Coal. for ICANN Transparency Inc. v. Verisign, Inc.*, 452 F. Supp. 2d 924, 931-32 (N.D. Cal. 2006). But this case does not involve claims that purport to have their origin in the BTA. This case involves purchases made in the United States by U.S. corporations, and those transactions were governed by separate Purchase Orders, which state that they shall "constitute the entire agreement between the Seller and the Buyer and no other understanding shall limit[,] modify or vary its terms unless reduced to writing." *See* Attach. 1, Ex. A, PO at ¶ 3. Nowhere do those Purchase Orders make any mention of the 35-year old BTA, and the Toshiba Defendants have identified nothing suggesting that either party considered the BTA to modify the Purchase Orders. Those Purchase Orders clearly specify that the "order and performance hereunder shall be governed by the case and statutory laws of the State of Tennessee." *See id.*, PO at ¶ 13. This is completely inconsistent with an expectation that disputes would be resolved in the Osaka District Court. Likewise, the BTA and the Purchase Orders have duplicative provisions that would be unnecessary if the parties had intended for the BTA to govern these agreements. *See* Mot. to Dismiss, Attach. 3, BTA Art. 18, and Attach. 1, Ex. A, PO at ¶ 6 (indemnity provisions); Mot. to Dismiss, Attach. 3, BTA Art. 7, and Attach. 1, Ex. A, PO at ¶ 5 (inspection provisions); Mot. to Dismiss, Attach. 3, BTA Art. 19, and Attach. 1, Ex. A, PO at ¶ 11 (provisions governing the transfer of rights and obligations). And employees at the Sharp Plaintiffs responsible for CRT procurement from the Toshiba Defendants were unaware of the BTA's existence, and instead understood that purchases were governed by the Purchase Orders. *See* Attach. 1, Decl. of Vince Sampietro, ¶¶ 1, 4, 5.

In similar contexts, courts have declined to find that claims arising under one agreement "relate to" a wholly different agreement. *See Anselmo v. Univision Station Group, Inc.*, No. 92-cv-1471, 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993) ("[T]he forum selection clause by its terms applies only to litigation relating to 'this Agreement,' so it was not intended to govern disputes arising under the terms of earlier contracts or agreements . . . .").

On the law, Toshiba's cases are all distinguishable. None present facts remotely like the ones here. Critically, all but two of the cases involve disputes where *both signatories* to the agreement were parties in the lawsuit and on opposite sides of the case.[5] This is in stark contrast to the circumstance here, where only one signatory is. The courts in those cases were thus faced with a very different question: how to give effect to a forum selection clause in a litigation between the two admitted signatories, where there are *also* non-signatory parties that are affiliated companies involved in the same underlying dispute. The courts therefore had to evaluate whether the mere inclusion of non-signatories as parties should frustrate the signatories' unambiguous intent to proceed with their litigation in a particular forum. Because Sharp Corporation is not a party to this case—and, indeed, could not be—these cases are irrelevant.

The other two cases cited by Toshiba that, like this one, do *not* involve a signatory on both sides of the case—*Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436 (7th Cir. 2012), and *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060 (2d Cir. 1993)—are inapposite for other reasons. The *Adams* court concluded that the non-signatory *defendant* could enforce a forum selection clause against the signatory *plaintiff* only where the non-signatory defendant was "the parent of [the signatory]'s successor" and the signatory no longer existed. *Adams*, 702 F.3d at 442. In that circumstance, there was no question that the plaintiff—whose choice of venue is ordinarily given weight[6]—was a party to the agreement and had agreed to the forum; it was, rather, the *defendant* that was "opting in" to the agreement. *See id.* Additionally, because the defendant subsidiary signatory no longer existed, "the effect [was] merely to substitute one party for another." *Id.* There is nothing comparable here. Binding the Sharp Plaintiffs, therefore, would not simply be a matter of substituting a defunct signatory with a viable

---

[5]   *See Holland Am. Line Inc. v. Wartsila N. Am. Inc.*, 485 F.3d 450, 455, 458 (9th Cir. 2007) (both signatories co-parties to the litigation); *Manetti-Farrow, Inc.*, 858 F.2d at 511 (same); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) (same); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757-58 (11th Cir. 1993) (same); *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984) (same); *Universal Grading Serv. v. eBay, Inc.*, No. 08-cv-3557 (CPS), 2009 WL 2029796, at *16 (E.D.N.Y. June 10, 2009) (same).

[6]   *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

successor-in-interest involved in the underlying dispute. It would mean binding a non-signatory subsidiary solely because its parent corporation was a party to the contract—an argument courts have squarely rejected. *See Beverly Enters.*, 130 F. Supp. 2d at 22.

Deloitte was decided on the grounds of equitable estoppel, a theory which only applies when the party who seeks to take advantage of an agreement is later bound by it. *See Deloitte*, 9 F.3d at 1064. In *Deloitte*, the court observed that the non-signatory party was bound where the intent of the parties to bind it was clear, since it was *specifically named* in the relevant agreement, and it was undisputed that the party had previously received a copy of the agreement with a request to voice any objections and did not do so; as such, the court found it had "no persuasive reason for its inaction." *Id.* The court held that, by making affirmative use of the rights conferred in the agreement, the party was bound to the agreement by estoppel. *See id.* There is no evidence or assertion here that the Sharp Plaintiffs sought to take advantage of the BTA. In short, the Toshiba Defendants have not identified a single case that would bind the Sharp Plaintiffs—even if the CRT transactions were "closely related" to the BTA.

The cases Toshiba cites in its brief more generally regarding international agreements or transactions—*Bremen*, *Mitsubishi Motors*, *Richards*, and *Simula*—lend no support to the argument that the Sharp Plaintiffs should be bound here for at least three reasons. Mot. to Dismiss 6. *First*, it mattered to the courts in those cases that those agreements—unlike the BTA here—were explicitly international in nature.[7] *Second*, unlike here, there was no question that the parties whose claims were at issue in those plainly intended to be bound by the

---

[7] *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 8-9, 13, 16 (1972) (involving "a freely negotiated private international commercial agreement" where an "American company" is "contracting with a foreign company" and eliminating of uncertainties was an "indispensable element in international trade"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (noting importance of federal policy in favor of arbitral dispute resolution "in the field of international commerce" where agreement was between Japanese and Puerto Rican corporations); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (noting that forum selection clause was "indispensable element in international trade, commerce, and contracting" where agreement was between British association and American underwriters); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 722 (9th Cir. 1999) (noting the importance of agreement's basis in "the field of international commerce" where it was between American and German corporations).

1  underlying contracts.[8]  And *finally*, most of the cases involved arbitration clauses and therefore

2  also relied on the Federal Arbitration Act, which has no relevance at all here, as the BTA does not

3  contain an arbitration clause.[9]

4            Toshiba also baldly asserts that the Sharp Plaintiffs could be bound by the BTA's

5  forum selection clause, even though they are not parties to the agreement, under the fact-specific

6  theories of either "alter ego" status, third party beneficiary status, or equitable estoppel.  For the

7  factual predicate, Toshiba relies on an innocuous allegation in the Sharp Plaintiffs' Complaint

8  that "Sharp Electronics is the wholly-owned U.S. sales and marketing subsidiary of Osaka-based

9  Sharp Corporation."  Mot. to Dismiss at 10.  This is plainly insufficient for any such theory.  An

10  alter ego finding requires evidence of "either fraud or a failure to observe corporate formalities."

11  *Comer v. Micor, Inc.*, 436 F.3d 1098, 1103 (9th Cir. 2006); *see also Katzir's Floor & Home*

12  *Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1149 (9th Cir. 2004).  There is nothing like that

13  here.  And Toshiba's third-party beneficiary theory is mistaken:  the Ninth Circuit has made clear

14  that a "third party beneficiary . . . certainly cannot be *bound* to a contract it did not sign or

15  otherwise assent to."  *Comer*, 436 F.3d at 1102.

16            Moreover, as described earlier, any equitable estoppel theory fails also.  The Ninth

17  Circuit has explained that the only circumstance in which, as here, a signatory (like Toshiba

18  Corporation) can force a non-signatory (like the Sharp Plaintiffs) to comply with an arbitration

19  clause under an estoppel theory is where the non-signatory has "knowingly exploit[ed] the

20  agreement containing the arbitration clause."  *Id.* at 1101-02.  The Toshiba Defendants have

---

8   *Mitsubishi*, 473 U.S. at 628 ("Having made the bargain to arbitrate, the party should be held
    to it . . . ."); *Bremen*, 407 U.S. at 12, 16 (noting that enforcing arbitration clauses is proper
    where they "give effect to the legitimate expectations of the parties, manifested in their freely
    negotiated agreement," and that the "parties to a freely negotiated private international
    commercial agreement contemplated the claimed inconvenience"); *Richards*, 135 F.3d at
    1295 (holding that plaintiffs could not "escape their 'solemn agreement' to adjudicate their
    claims in England").

9   *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 121 (2d Cir. 2010) (where "the FAA is
    involved . . . the issues must be addressed with a healthy regard for the federal policy favoring
    arbitration") (internal quotations and emphasis omitted).

1      asserted no such thing here, and there is no evidence to support such a notion. *See Mundi v.*

2      *Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1047 (9th Cir. 2009).

3           Toshiba's position also requires it to make the untenable argument that the <u>non-</u>

4      <u>signatory</u> Toshiba Defendants "have the right to enforce the forum selection clause" against

5      parties consisting entirely of <u>non-signatories</u>, the Sharp Plaintiffs.  Mot. to Dismiss at 12.  It cites

6      no cases where this has ever happened, nor has it put forth any facts suggesting that either they or

7      Tokyo Shibaura intended them to be bound by the BTA.  There is simply no basis for dismissing

8      any of the Sharp Plaintiffs' claims.

9        **C.**      **Enforcing the Forum Selection Clause Here Would Violate Public Policy By**
                 **Depriving the Sharp Plaintiffs of Reasonable Recourse for Their Claims:**

10               **Treble Damages in a Court of Competent Jurisdiction**

11           This forum selection clause should not be enforced for another, independent,

12      reason.  Courts may reject such clauses where, as here, they are unreasonable because they would

13      deprive plaintiffs of their rights under the law.  This is true even when there is no question that

14      the signatories intended non-signatories to be bound.  When weighing the reasonableness of a

15      forum selection clause, courts consider if enforcing the clause "would contravene a strong public

16      policy of the forum in which suit is brought."  *Holland Am.*, 485 F.3d at 457.  Here, it would.

17           It is unreasonable to enforce a forum selection clause where it would render filing

18      suit an "impossibility."  *See Trosper v. Synthes USA Sales, LLC*, No. 13-cv-2126, 2013 WL

19      2898229, at *4 (C.D. Cal. June 12, 2013); *Pratt v. Silversea Cruises, Ltd., Inc.*, No. 05-cv-0693,

20      2005 WL 1656891, at *4 (N.D. Cal. July 13, 2005).  This includes where the venue mandated by

21      a forum selection clause would lack jurisdiction.  In *Putz v. Golden*, for example, the court

22      declined to enforce a forum selection clause where there was "considerable doubt" that the

23      specified French Polynesian court would have personal jurisdiction over the defendants, thus

24      "depriv[ing the plaintiffs] of their day in court."  No. 10-cv-0741, 2010 WL 5071270, at *9 (W.D.

25      Wash. Dec. 7, 2010).  This case presents a similar problem: the forum designated by the BTA, the

26      Osaka District Court in Japan, would not apply the forum selection clause in the BTA to the

27      Sharp Plaintiffs and to the non-signatory Toshiba Defendants.  *See* Attach. 3, Decl. of Kazuto

28      Yamamoto at ¶¶ 3-5.  More than mere "considerable doubt," the Sharp Plaintiffs have established

1    that the BTA *would not* confer jurisdiction on the Osaka District Court to hear their antitrust

2    claims, leaving them with no recourse against the Toshiba Defendants in the forum mandated by

3    the clause. *See id.* at ¶ 5; *Putz*, 2010 WL 5071270, at *9.

4            Enforcing the BTA's forum selection clause would also violate public policy

5    because it would divest the Sharp Plaintiffs of their statutory claims for treble damages. In

6    *Mitsubishi*, the Supreme Court enforced an arbitration clause providing for arbitration before a

7    Japanese arbitral tribunal, but only where it observed that the clause at issue did not leave the

8    plaintiff without an antitrust remedy. *Mitsubishi*, 473 U.S. at 636-37. It specifically contrasted

9    the scenario where a choice-of-forum clause acts as "a prospective waiver of a party's right to

10   pursue statutory remedies for antitrust violations," noting that there, it "would have little

11   hesitation in condemning the agreement as against public policy." *Id.* at 628, 637 & n.19. The

12   *Mitsubishi* Court also took comfort in the fact that, under the Federal Arbitration Act, a federal

13   court would have the opportunity to review any arbitral award. *See id.* at 638. Our case fails this

14   *Mitsubishi* test twice: the Sharp Plaintiffs would be waiving rights to pursue statutory remedies,

15   and there would be no opportunity for U.S. federal court oversight. *See Vimar Seguros y*

16   *Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 542 (1995) (O'Connor, J., concurring) (noting

17   the "important" difference that foreign arbitration clauses "do not divest domestic courts of

18   jurisdiction, unlike true foreign forum selection clauses").

19           Enforcing the BTA's forum selection clause here would thus deprive the Sharp

20   Plaintiffs of their right to "vindicate [their] statutory cause of action," undermining the antitrust

21   laws' "remedial and deterrent function." *Mitsubishi*, 473 U.S. at 637. No Japanese court can

22   award treble damages, a key attribute of recovery under U.S. antitrust law—and one that cannot

23   be prospectively waived. *See id.* at 635; *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir.

24   2006); *In re TFT-LCD Antitrust Litig.*, No. 07-cv-1827, 2011 WL 4017961, at *6 (N.D. Cal. Sept.

25   9, 2011) ("The Court agrees that the arbitration clause's limitation on treble damages is

26   unenforceable."); Attach. 3, Decl. of Kazuto Yamamoto at ¶ 6. Without this tool, Japanese courts

27   cannot "provide an adequate mechanism" for remedying the Sharp Plaintiffs' losses, and for

28   deterring future antitrust violators. *Mitsubishi*, 473 U.S. at 636-37.

In these circumstances, the Ninth Circuit has stated that even a choice-of-forum clause *between parties who are admitted signatories to the contract* should be closely scrutinized. *Simula*, 175 F.3d at 723; *Richards*, 135 F.3d at 1296.  In contrast to *Richards* and *Simula*, however, where plaintiffs had adequate recourse against the defendants under applicable laws,[10] here, there is no question that Japanese courts would be unable to wield the "chief tool in the antitrust enforcement scheme," the treble-damages remedy.  *Mitsubishi*, 473 U.S. at 635; *see* Attach. 3, Decl. of Kazuto Yamamoto at ¶ 6.  As such, the Ninth Circuit was not squarely presented in *Richards* and *Simula* with the concern here:  a certain waiver of non-waivable U.S. antitrust remedies due to the operation of a foreign forum selection clause that the plaintiffs did not sign, with no safeguards through federal judicial review of judgment as provided under the FAA.  This result would be all the more unfair here than in *Richards* or *Simula*, since, at least, in those cases, there was no question that the party challenging the clause had previously agreed to be bound.  *See Simula*, 175 F.3d at 718-19; *Richards*, 135 F.3d at 1292.  Here, the Toshiba Defendants would be asking this Court to approve the waiver of federal statutory rights of a non-signatory with no showing of an intent to be bound.

For all of these reasons, the Toshiba Defendants' arguments regarding the forum selection clause in the BTA should be rejected.

## II.   THE SHARP PLAINTIFFS' FINISHED PRODUCT CLAIMS ARE PROPER UNDER *ILLINOIS BRICK*

The Sharp Plaintiffs bring claims based on direct purchases of CRTs from the Toshiba Defendants, as well as purchases of finished CRT products from other Sharp entities that purchased price-fixed CRTs from the defendants.  The Toshiba Defendants' challenge under *Illinois Brick*[11] is only for claims relating to the Sharp Plaintiffs' purchases of finished products

---

[10] *Simula* is further distinguishable on this point, as the plaintiff's expert conceded that it was possible that the arbitral forum would apply U.S. antitrust laws, and so there was no certainty of a waiver of federal statutory remedies.  *Simula*, 175 F.3d at 723 n.4.  Here, there is that certainty.

[11] As a preliminary matter, the parties have already stipulated that this Court's *Illinois Brick* ruling applies, making this motion improper.  *See* Order (Dkt. 1971) (Oct. 1, 2013).  Nonetheless the Sharp Plaintiffs respond on the merits as well.

containing price-fixed CRTs—not those relating to CRTs.[12]  These finished products claims, however, are proper under the so-called "ownership or control" doctrine articulated by the Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) and previously ruled upon in this case.[13]

Although federal law generally prohibits antitrust damages claims for indirect purchases, it permits them in certain circumstances, including where there are allegations of sufficient "ownership and control" as between a customer of the direct purchaser and the direct purchaser.  *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 749 (9th Cir. 2012) (citing *Illinois Brick*, 431 U.S. at 736); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 605 (7th Cir. 1997).  The Sharp Plaintiffs' claims for CRT finished products meet this "ownership or control" exception.

The "ownership or control" exception may be met, among other ways, through "interlocking directorates, minority stock ownership, agreements ceding operating control, a contractual agency relationship, or other modes of control separate from ownership of a majority of the intermediary's common stock."  *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 33 (D.D.C. 2008).  The exception is grounded in the idea that where there is "functional economic or other unity" between a direct and indirect purchaser, "there effectively has been only one sale" which eliminates the complexities of a pass-through analysis that gave rise to the *Illinois Brick* bar on indirect purchaser damages suits.  *See Jewish Hosp. Ass'n v. Stewart Mech. Enters.*, 628 F.2d 971, 975 (6th Cir. 1980).

---

[12]  The Toshiba Defendants mistakenly contend that the Sharp Plaintiffs seek only damages on "devices that incorporate CRTs."  Mot. to Dismiss at 3.  The Toshiba Defendants have misread the definition of CRT Products in the Complaint, which includes both CRTs and finished products.  *See* Compl. ¶ 3.

[13]  The Toshiba Defendants move against Sharp's New Jersey claims on *Illinois Brick* grounds as well.  Mot. to Dismiss at 15.  The Sharp Plaintiffs' claims are equally proper under New Jersey law which, as the Toshiba Defendants note, is to be interpreted in accord with federal law.

This Court has twice permitted claims on CRT finished products under the "ownership or control" exception. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857, 872 (N.D. Cal. 2012) (denying defendants' motion for summary judgment as to certain DPPs); *In re CRT Antitrust Litig.*, No. 07-cv-5944, 2013 WL 4505701, at *3 (N.D. Cal. Aug. 21, 2013) (denying defendants' motion to dismiss as to certain DAPs). The Sharp Plaintiffs' claims should be permitted, as well. The Sharp Plaintiffs allege that they purchased "CRT Products" from "others" which contained price-fixed CRTs manufactured by the defendants. Compl. ¶¶ 30, 218. More specifically—as Sharp Plaintiffs have made clear in their discovery responses—the Sharp Plaintiffs purchased through inter-company transactions CRT televisions manufactured by other Sharp affiliates in Asia which contained CRTs that the affiliates purchased from defendants.[14] This is sufficient under *Illinois Brick* and to the extent that the Toshiba Defendants wish to challenge any of the facts, they should do so through discovery. *See City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 32 (D.D.C. 2007) ("At this stage of the lawsuit, the [plaintiffs] have sufficiently pled control even though they have failed to specify the nature of the alleged control."); *see also In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d at 34 (denying a motion to dismiss on the grounds that an exception to *Illinois Brick* was sufficiently pleaded); *In re Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d 355, 367 (D.N.J. 2001) (same); *Prince Heaton Enters. v. Buffalo's Franchise Concepts, Inc.*, 117 F. Supp. 2d 1357, 1364 (N.D. Ga. 2000) (same).[15]

Finally, should the Court find the Complaint's current allegations insufficient, the Sharp Plaintiffs request leave to amend the Complaint. Leave to amend is proper where, as here, the Sharp Plaintiffs could cure any defects through more detailed allegations. *Lopez v. Smith*, 203

---

[14] *See* Attach. 4, Decl. of Craig A. Benson, Ex. A, Excerpt of Response to Interrog. No. 4, Pls. Sharp Elecs. Corp. and Sharp Elecs. Mfg. Co. of Am., Inc.'s Resps. and Objections to Defs. Hitachi Elec. Devices (USA), Inc. and Samsung SDI America, Inc.'s First Set of Interrogs.

[15] The Toshiba Defendants' reliance on *Kendall v. Visa U.S.A. Inc.*, 518 F.3d 1042 (9th Cir. 2008) is inapposite, as the question there was whether there were plausible allegations that a direct purchaser and the seller had conspired as co-conspirators. *Id.* at 1049-50. The question of whether facts could "just as easily suggest rational, legal business behavior" is not at issue here. *Id.*

1  F.3d 1122, 1130 (9th Cir. 2000); *see also Mayes v. Leipziger*, 729 F.2d 605, 608 (9th Cir. 1984);

2  *Udom v. Fonseca*, 846 F.2d 1236, 1238 (9th Cir. 1988).

3

**CONCLUSION**

4       For the foregoing reasons, Plaintiffs respectfully submit that the Court should deny

5  the Toshiba Defendants' Motion to Dismiss in its entirety.

6

7

8  DATED:  November 6, 2013     By: /s/  *Craig A. Benson*

9                         Kenneth A. Gallo (*pro hac vice*)
                          Joseph J. Simons (*pro hac vice*)

10                      Craig A. Benson (*pro hac vice*)
                      PAUL, WEISS, RIFKIND, WHARTON & GARRISON  LLP

11                      2001 K Street, NW
                      Washington, DC  20006

12                      Telephone:  (202) 223-7300
                      Facsimile:  (202) 223-7420

13                      Email:  kgallo@paulweiss.com
                      Email:  jsimons@paulweiss.com

14                      Email:  cbenson@paulweiss.com

15                      Stephen E. Taylor (SBN 058452)
                      Jonathan A. Patchen (SBN 237346)

16                      TAYLOR & COMPANY LAW OFFICES, LLP
                      One Ferry Building, Suite 355

17                      San Francisco, California 94111
                      Telephone:  (415) 788-8200

18                      Facsimile:  (415) 788-8208
                      Email: staylor@tcolaw.com

19                      Email: jpatchen@tcolaw.com

20                      *Attorneys for Plaintiffs*

21

22

23

24

25

26

27

28