ATTACHMENT 3

Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., and Toshiba America*
*Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to<br>Case No. 13-cv-02171-SC<br><br>SHARP ELECTRONICS CORP., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HITACHI, LTD., *et al.*,<br><br>Defendants. | **THE TOSHIBA DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SHARP'S FIRST AMENDED COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:        December 20, 2013<br>Time:       10:00 a.m.<br>Before:     Hon. Samuel Conti |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

ARGUMENT......................................................................................................2

I.    The Court Should Dismiss Sharp's Complaint Because The Forum
Selection Clause Of The BTA Requires Sharp To Litigate Its Claims
Against The Toshiba Defendants In The Osaka District Court In Japan ....................2

    A.    The Forum Selection Clause Of The BTA Applies To The Non-
signatory Sharp Plaintiffs .........................................................................2

    B.    This Litigation Is Related To Individual Agreements Subject To The
BTA ...........................................................................................................7

    C.    Enforcement Of The BTA's Forum Selection Clause Will Not
Contravene Any Public Policy...............................................................12

II.    The Court Should Dismiss Sharp's First Amended Complaint With Respect
To Its Indirect Purchases Because Sharp Has Failed To Allege Facts
Sufficient To Confer Standing Under The "Ownership Or Control"
Exception To *Illinois Brick*.....................................................................14

CONCLUSION ................................................................................................15

1

## TABLE OF AUTHORITIES

Cases                                                                                       Page

*Adams v. Raintree Vacation Exchange, LLC*,
    702 F.3d 436 (7th Cir. 2012) ..............................................................................4, 5, 14

*Anselmo v. Univision Station Group, Inc.*,
    No. 92-cv-1471, 1993 WL 17173 (S.D.N.Y. Jan. 15, 1993) ................................. .  9-10

*Besag v. Custom Decorators, Inc.*,
    No. CV08-05463 JSW, 2009 WL 330934 (N.D. Cal. Feb. 10, 2009) ........................ 10

*Cedars-Sinai Med. Ctr. v. Global Excel Mgmt., Inc.*,
    No. 09-cv-3627 PSG (AJWx), 2010 WL 5572079 (C.D. Cal. Mar. 19, 2010) ............9

*Coal. For ICANN Transparency Inc. v. Verisign, Inc.*,
    452 F. Supp. 2d 924 (N.D. Cal. 2006) .......................................................................... 9

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) ....................................................................................... 4

*E.E.O.C. v. Waffle House, Inc.*,
    534 U.S. 279 (2002) .......................................................................................................4

*Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*,
    131 F.3d 1336 (9th Cir. 1998) .................................................................................... 12

*Holland America Line Inc. v. Wärtsilä N. America, Inc.*,
    485 F.3d 450 (9th Cir. 2007) ................................................................................1, 3, 4

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ..................................................................................................2, 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, 2013 WL 1164897 (N.D. Cal Mar. 20, 2013) ....................... 14-15

*Klamath Water Users Protective Ass'n v. Patterson*,
    204 F.3d 1206 (9th Cir. 2000) ...................................................................................... 5

*M/S Bremen v. Zapata Off-shore Co.*,
    407 U.S. 1 (1972) .......................................................................................................... 3

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
    858 F.2d 509 (9th Cir. 1988) .......................................................................... 2-3, 6, 13

*Meras Eng'g, Inc. v. CH2O, Inc.*,
    No. C-11-0389 EMC, 2013 WL 146341 (N.D. Cal. Jan. 14, 2013) ........................... 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ............................................................................................... 13

*Northwest Administrators, Inc. v. B.V. & B.R., Inc.*,
    813 F.2d 223 (9th Cir. 1987) ................................................................................... 7

*Ohkubo v. Antara Biosciences, Inc.*,
    364 Fed. Appx. 340 (9th Cir. 2010) ......................................................................... 3

*Orly Industry, Inc. v. Rite Aid Hdqtrs., Corp.*,
    No. 12-CV-855 (SLT) (JMA), 2013 WL 4516101 (E.D.N.Y. Aug. 23, 2103) ............. 9

*Putz v. Golden*,
    No. 10-cv-0741, 2010 WL 5071270 (W.D. Wash. Dec. 7, 2010) ....................... 12-13

*RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*,
    No. 10 Civ. 0025 (PGG), 2013 WL 1294515 (S.D.N.Y. March 30, 2013) ................. 6

*Richards v. Lloyd's of London*,
    135 F.3d 1289 (9th Cir. 1998) ............................................................................... 12

*Schaeffer v. Am. Honda Motor Co., Inc.*,
    976 F. Supp. 736 (W.D. Tenn. 1997) ..................................................................... 10

*Sempra Energy Trading Corp. v. Algoma Steel, Inc.*,
    No. 00 Civ 9227 (GEL), 2001 WL 282684 (S.D.N.Y. Mar. 22, 2001) ....................... 9

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716, 723 (9th Cir. 1999) .................................................................2, 12, 13

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
    534 F. Supp. 2d 1101 (N.D. Cal. 2007) .................................................................... 8

*United States v. Seckinger*,
    397 U.S. 203 (1970) ............................................................................................... 7

**Other**

Restatement (Second) of Conflict of Laws (1969) ................................................. 3

Restatement (Second) of Contracts (1979) ........................................................ 7

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

1.    By commencing this litigation through two of its wholly owned U.S. subsidiaries, Sharp Corporation has violated its contractual obligation to litigate this dispute with Toshiba Corporation in the Osaka District Court.  The Sharp Plaintiffs attempt to excuse their behavior by arguing that they are not signatories to the BTA, but the Ninth Circuit has long recognized that non-signatories are properly subject to a forum selection clause "where the alleged conduct of the non-parties is closely related to the contractual relationship . . . ."  *Holland America Line Inc. v. Wärtsilä N. America, Inc.*, 485 F.3d 450, 456 (9th Cir. 2007).  Here, Plaintiff Sharp Electronics Corporation ("Sharp Electronics") admits that it is "the wholly owned U.S. sales and marketing subsidiary of Osaka-based Sharp Corporation" (First Am. Compl. ¶ 22) and further admits that it made purchases of CRTs in the United States "through its subsidiaries" (*i.e.*, Plaintiff Sharp Electronics Manufacturing Company of America, Inc. ("SEMA")).  First Am. Compl. ¶ 27.  In this manner, the conduct of the Sharp Plaintiffs is "closely related" to the BTA, an agreement that governs the supply of goods from Toshiba Corporation to Sharp Corporation

The Sharp Plaintiffs assert that the BTA is somehow limited to "Japanese transactions" between Toshiba Corporation and Sharp Corporation and, as a result, the claims made by the Sharp Plaintiffs are not "related to" the BTA.  Sharp Br. at 7.  Such an argument, however, finds no support in the BTA.  That agreement has no geographic limitation in terms of its scope.  The Sharp Plaintiffs also assert that the United States sales that are the subject of their claims were covered by purchase orders that are separate-and-apart from the BTA.  Sharp Br. at 8.  In making this argument, the Sharp Plaintiffs ignore the fact that the BTA specifically states that its provisions will cover "individual agreements" and that such individual agreements are "established upon the delivery of the ***purchase order*** describing the details of the transaction . . . ."  Toshiba Att. 3 at Art. 2.2 (emphasis added).  Thus, the purchase order identified by the Sharp Plaintiffs qualifies as an "individual agreement" subject to the BTA.  Finally, the Sharp Plaintiffs seek to avoid their responsibilities under the BTA by asserting that enforcement of that agreement's

Case 3:07-cv-05944-SC Document 2229-3 Filed 11/20/13 Page 8 of 22

forum selection clause is contrary to public policy. The Ninth Circuit has previously recognized that the mere fact that the remedies available in a foreign forum differ from the remedies available in a U.S. court is not a result that contravenes public policy. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 723 (9th Cir. 1999).

2. In order for the "ownership or control" exception to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), to apply, a plaintiff must **allege** sufficient facts to support or explain the type of ownership or control exercised. With respect to the Sharp Plaintiffs, this rule applies to both their Sherman Act claims as well as their New Jersey Antitrust Act claims. Since the filing of our motion to dismiss, the Sharp Plaintiffs have filed an amended complaint. This amended complaint, however, is still deficient in that it makes insufficient allegations of ownership or control. *First*, the Sharp Plaintiffs allege that they made purchases of CRT Products from affiliated entities. First Am. Compl. ¶ 30. The Sharp Plaintiffs do not own these affiliated entities; rather, both the Sharp Plaintiffs and the affiliated entities are merely owned by a common parent. This is an insufficient allegation of ownership. Nor do the Sharp Plaintiffs make any allegation that they control these affiliated entities. *Second*, the Sharp Plaintiffs allege that they purchased CRT Products from "OEMs as well as others." First Am. Compl. ¶ 228. The Sharp Plaintiffs do not provide the identity of the "OEMs" or the "others." Nor do the Sharp Plaintiffs make any allegations of ownership or control with respect to these entities. This failure to make sufficient allegations of ownership or control mandates dismissal of these claims.

## ARGUMENT

**I. The Court Should Dismiss Sharp's Complaint Because The Forum Selection Clause Of The BTA Requires Sharp To Litigate Its Claims Against The Toshiba Defendants In The Osaka District Court In Japan**

### A. The Forum Selection Clause Of The BTA Applies To The Non-signatory Sharp Plaintiffs

The Sharp Plaintiffs do not dispute the fact that forum selection clauses are *prima facie* valid and enforceable. *See Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) ("Forum selection clauses are *prima facie* valid, and are

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'") (quoting *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 15 (1972)); Restatement (Second) of Conflict of Laws § 80 (1969) ("The parties' agreement as to the place of the action will be given effect unless it is unfair or unreasonable."). This rule carries special force when sophisticated business entities are at issue. In those instances, it can be presumed that both sides were ably represented by counsel and fully understood the consequences of agreeing to the chosen forum. *See Holland America Line Inc.*, 485 F.3d 450, 457 (9th Cir. 2007) ("The parties are sophisticated corporations that freely contracted with each other, and enforcement of the forum selection clause does not offend due process.").

Nor do the Sharp Plaintiffs have any response to our argument that the forum selection clause of the BTA is both mandatory and enforceable. Toshiba Mot. at 6. The BTA's forum selection clause provides that "[i]n terms of litigation related to this Agreement or the individual Agreement, the Osaka District Court **shall be the court of competent jurisdiction**." Toshiba Att. 3 at Art. 21.2 (emphasis added). In *Ohkubo v. Antara Biosciences, Inc.*, 364 Fed. Appx. 340, 342 (9th Cir. 2010), the Ninth Circuit construed a forum selection clause translated from Japanese and held that the word "shall" is a mandatory term and that the phrase "the court with jurisdiction" indicates exclusivity. The Sharp Plaintiffs do not address the *Ohkubo* decision.

According to the Sharp Plaintiffs, the forum selection clause of the BTA does not apply to their claims because they are not signatories to that agreement. This simplistic argument, however, ignores numerous cases, both here in the Ninth Circuit and elsewhere, that have applied forum selection clauses to non-signatories. *See Manetti-Farrow*, 858 F.2d at 514 n.5 ("the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants"); *Holland America Line Inc.*, 485 F.3d at 456 ("The forum selection clauses apply equally to BVNA and BV Canada because any transactions between those entities and Holland America took

place as part of the larger contractual relationship between Holland America and Bureau Veritas."); *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436, 441 (7th Cir. 2012) ("Were it not for judicial willingness in appropriate circumstances to enforce forum selection clauses against affiliates of signatories, such clauses could easily be evaded."). Contrary to the Sharp Plaintiffs' arguments (Sharp Br. at 9), the holdings in these cases did not turn on the fact that the non-signatories were somehow parties to the lawsuit. Rather, the concern addressed by these courts centered on the abuse that could occur if non-signatory affiliates were somehow beyond the reach of forum selection clauses. This case — commenced by two Sharp Corporation subsidiaries — presents a quintessential example of a real party-in-interest attempting to avoid its contractual responsibilities by conducting litigation through its affiliates.

The Sharp Plaintiffs somehow believe that their position is bolstered by that part of *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002), that states that "[i]t goes without saying that a contract cannot bind a nonparty." Sharp Br. at 5. This stray sentence has been specifically considered and recognized as *dicta* by the Ninth Circuit, which noted that it would, "if taken literally, jettison hundreds of years of common law under which nonparties can be contractually liable under ordinary contract and agency principles." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.10 (9th Cir. 2006). "We thus join many of our sister circuits who, in the wake of *Waffle House*, have recognized that contract and agency principles continue to bind nonsignatories to arbitration agreements." *Id.* As noted in our initial motion (Toshiba Mot. at 8), arbitration agreements are simply a specialized type of forum selection clause, a point that is not challenged by the Sharp Plaintiffs. Consequently, the *Comer* holding applies with full force here.

The position taken by the Sharp Plaintiffs in this case cannot be reconciled with the position taken by Plaintiff Sharp Electronics in the *LCD* case. In that case, Sharp Electronics (who was a named defendant in *LCD*) joined other defendants in filing a motion to compel arbitration directed at Costco Wholesale Corporation. In so doing, Sharp Electronics argued that a vendor agreement with Costco (one that contained an arbitration

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

THE TOSHIBA DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS SHARP'S FIRST AMENDED COMLAINT
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

clause) should apply not just to signatories to that agreement, but to non-signatories as well:  "A signatory to an agreement to arbitrate, like Costco, can be compelled to arbitrate claims where it has been alleged that the non-signatory parties are agents or that their liability is otherwise intertwined with the agreement to arbitrate."  Toshiba Att. 4.  The Court should not endorse the Sharp Plaintiffs' attempt to take one position in *LCD*, only to reverse course and take the exact opposite position here.

The Sharp Plaintiffs believe that a non-signatory can be bound to a contract only if the parties to a contract intended that result.  Sharp Br. at 6.  The cases relied upon by the Sharp Plaintiffs, however, both deal with the question of third-party beneficiaries, where the signatories' intent to cover non-signatories becomes paramount.  *E.g., Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000) ("Before a third party can recover under a contract, it must show that the contract was made for its direct benefit — that it is an *intended* beneficiary of the contract.") (emphasis added).  Here, the plain meaning of the BTA reveals that was the intent of Toshiba Corporation and Sharp Corporation to have litigation "related to" the BTA (or individual agreements arising under that agreement) be resolved in the Osaka District Court.  The BTA does not state that such litigation would necessarily be between Toshiba Corporation and Sharp Corporation.  Instead, by using the phrase "[i]n terms of litigation related to this Agreement or the individual Agreement" without specifically referring to disputes brought by Toshiba Corporation or Sharp Corporation, the signatories to the BTA must have understood that the prospective litigation might involve parties other than the signatories themselves.  In any event, courts regularly enforce forum selection clauses against non-signatories to prevent signatories from evading forum selection clauses through their use of affiliates.

The Sharp Plaintiffs assert that the BTA is unambiguous.  Sharp Br. at 6.  We agree.  Yet, despite this argument, the Sharp Plaintiffs attempt to rely on the Declaration of Fumihiro Yamazoe to interpret the meaning of the BTA.  Sharp Br. at 7.  Because the BTA does not specify the law under which it is to be interpreted, federal common law governs.  Sharp Br. at 5.  "Traditional contract law provides that extrinsic evidence is inadmissible to

interpret an unambiguous contract." *Manetti-Farrow*, 858 F.2d at 514. The Ninth Circuit's decision in *Manetti-Farrow* is significant because the plaintiffs in that case, like the Sharp Plaintiffs here, attempted to introduce extrinsic evidence to support their argument that certain of their claims were not covered by a forum selection clause. The Ninth Circuit held that the proffered extrinsic evidence was properly excluded because "the plain meaning of the clause is that Manetti-Farrow's claims fall within the scope of the forum selection clause." *Id.* The Court should reach the same result here.

In any event, the Yamazoe declaration should be given no weight by the Court. Mr. Yamazoe states that he has worked for Sharp Corporation since 1980. Decl. of Fumihiro Yamazoe, dated Nov. 5, 2013, ¶ 1. The BTA, however, was signed in 1977. Mr. Yamazoe does not state that he participated in the negotiation of the contract, nor could he have because he was not employed by Sharp Corporation at the time the BTA was negotiated. Thus, Mr. Yamazoe only offers a *post hoc* interpretation of the BTA, which must be rejected. *See RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10 Civ. 0025 (PGG), 2013 WL 1294515, at *8 (S.D.N.Y. March 30, 2013) ("*Post hoc* interpretations of a contract, particularly by individuals who did 'not . . . participate [] in drafting or negotiating [the] contract [] . . . are inadmissible and may not be considered on a motion for summary judgment.'") (citation omitted). The Sharp Plaintiffs should not be allowed to re-write the BTA through the use of their declarants. Rather, the Court should enforce that document by use of its plain meaning.

Even if the Court were to conclude that the BTA is somehow ambiguous, it should apply the doctrine of *contra proferentem* and construe all such ambiguities against Sharp Corporation, the party that drafted the BTA. "The doctrine of *contra proferentem* is based on the commonsense notion that ambiguous language should be interpreted against the drafter because that party was in the best position to prevent the ambiguity; that is, 'the provision should be construed less favorably to that party which selected the contractual language.'" *Northwest Administrators, Inc. v. B.V. & B.R., Inc.*, 813 F.2d 223, 226 (9th Cir. 1987) (quoting *United States v. Seckinger*, 397 U.S. 203, 216 (1970)); *see also*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Restatement (Second) of Contracts § 206 cmt. A (1979) ("Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party. He is also more likely than the other party to have reason to know of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert."). The Sharp Plaintiffs admit that Sharp Corporation drafted the BTA. *See* Sharp Br. at 4 ("The BTA was a version of a form contract that Sharp Corporation used . . . ."). Thus, any and all ambiguities in that contract should be construed against Sharp Corporation because, as the drafter of the BTA, that company was in the best position to understand its meaning.

**B.    This Litigation Is Related To Individual Agreements Subject To The BTA**

The Sharp Plaintiffs make several arguments in support of their position that their claims are not "related to" the BTA. None of these arguments is availing.

First, the Sharp Plaintiffs assert that the BTA involves "Japanese transactions" between Toshiba Corporation and Sharp Corporation. Sharp Br. at 7. The BTA, however, does not limit its coverage to transactions that occur in Japan. Indeed, that agreement imposes no geographic limitation whatsoever. The Sharp Plaintiffs also take the position that the scope of the BTA must be limited to Japan because that document is written in Japanese. *Id.* There is no canon of contract interpretation that ascribes any geographic limitation based on the specific language in which an agreement is written. It would be very logical for two Japanese corporations to enter into an agreement, written in Japanese, that would apply to transactions outside of Japan. More revealing are the terms and conditions used in the BTA itself. That agreement sets forth "the basic terms and agreements related to the manufacture and supply of the goods." Toshiba Att. 3 (introduction). Because this agreement is not limited to any geographic location, it applies to all transactions between Toshiba Corporation and Sharp Corporation, wherever those transactions might occur. Again, if there is any ambiguity with respect to this issue, such ambiguity must be construed against Sharp Corporation, the drafter of the BTA.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

The Sharp Plaintiffs also assert that their claims are not "related to" the BTA because these claims do not have their origin in the BTA. Sharp Br. at 8. We disagree. The forum selection clause of the BTA encompasses not just litigation "related to" the BTA itself, but also litigation "related to" "the individual Agreement," a defined term under the BTA. Toshiba Att. 3 at Art. 21.2. Article 1.2 of the BTA provides that the BTA shall apply to all "individual Agreements" between Toshiba Corporation and Sharp Corporation. Article 2.2 of the BTA then specifies how "individual Agreements" are made: "The individual Agreement is established upon the delivery of the ***purchase order*** describing the details of the transaction in the previous paragraph by Party A and upon delivery of the order confirmation by Party B" (emphasis added). In their brief and declarations, the Sharp Plaintiffs describe how they purchased CRTs from Toshiba America Electronic Components, Inc. through the use of "Purchase Orders" that were drafted by Sharp Manufacturing Company of America ("SMCA") (a division of one of the Sharp Plaintiffs). Sharp Br. at 8; Decl. of Vince Sampietro, dated Oct. 30, 2013, ¶¶ 3-4. An exemplary purchase order is attached to the Sampietro declaration. This purchase order fulfills all of the requirements of the purchase order described in the BTA — it sets forth "the name, quantity, time of delivery, place of delivery, method of delivery, as well as the amount of payment and unit price." Toshiba Att. 3 at Art. 2.1. In this manner, the claims of the Sharp Plaintiffs have their origin in the BTA. The forum selection clause of that agreement applies with full force to these claims.

The Sharp Plaintiffs note that there are certain provisions of their exemplary purchase order that duplicate the BTA, indicating in their view that these are two separate and distinct agreements. Sharp Br. at 8. Again, we disagree. The BTA is a master agreement and the purchase orders issued by SMCA are all subject to that master agreement. *See generally Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 534 F. Supp. 2d 1101, 1115 (N.D. Cal. 2007) (describing relationship between master agreement and purchase order). Purchase orders may even be issued pursuant to a master agreement that have *different* terms and conditions; even in these situations, the language of the purchase order does

nothing to change the master agreement. *See Sempra Energy Trading Corp. v. Algoma Steel, Inc.*, No. 00 Civ. 9227 (GEL), 2001 WL 282684, at *5 (S.D.N.Y. Mar. 22, 2001) (discussing confirmations issued pursuant to the Asset Management Agreement ("AMA") master agreement that contained terms that differed from the AMA: "The confirmations do not on their face purport to amend the AMA, and indeed do not refer to the AMA at all."). Other courts have held that non-signatory parties who issue purchase orders subject to a master agreement may be properly bound to the forum selection clause of that master agreement. *See Orly Industry, Inc. v. Rite Aid Hdqtrs., Corp.*, No. 12-CV-855 (SLT) (JMA), 2013 WL 4516101, at *4 (E.D.N.Y. Aug. 23, 2103) (holding that an entity that issued purchase orders was bound by a forum selection clause in a master agreement where that non-signatory was closely related to a signatory of the master agreement). Here, the Sharp Plaintiffs merely note that the purchase orders issued by SMCA duplicate certain provisions in the BTA. That fact does nothing to amend or change the forum selection clause of the BTA.

All of the cases relied upon by the Sharp Plaintiffs support the conclusion that the claims of the Sharp Plaintiffs are subject to the BTA's forum selection clause. Their claims have "their origin or genesis" in the BTA (*Cedars-Sinai Med. Ctr. v. Global Excel Mgmt., Inc.*, No. 09-cv-3627 PSG (AJWx), 2010 WL 5572079, at *5 (C.D. Cal. Mar. 19, 2010)), because the BTA provides that all litigation "related to" the individual agreements (*i.e.*, the purchase orders) shall be resolved in the Osaka District Court. In this manner, the claims of the Sharp Plaintiffs "involve the [agreement] itself" and, thus, "trigger the clause." *Coal. For ICANN Transparency Inc. v. Verisign, Inc.*, 452 F. Supp. 2d 924, 932 (N.D. Cal. 2006). This is not a case where claims arising under one agreement "relate to" a wholly different agreement. Sharp Br. at 8 (citing *Anselmo v. Univision Station Group, Inc.*, No. 92-cv-1471, 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993)). Rather, the *Anselmo* case relied upon by the Sharp Plaintiffs provides the rule that should be given full effect here: "A forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship,

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   or if 'the gist' of those claims is a breach of that relationship." *Anselmo*, 1993 WL 17173,

2   at *2. All of the Sharp Plaintiffs' claims grow out of the contractual relationship between

3   Toshiba Corporation and Sharp Corporation, as embodied in the BTA. Thus, all of those

4   claims should be sent to the Osaka District Court in Japan for resolution.

5        The Declaration of Sharp's Vince Sampietro (Sharp Att. 1) does nothing to bolster

6   Sharp's argument. In his declaration, he opines about the purchase orders used by the

7   Sharp Plaintiffs. But those purchase orders specifically state that they are to be governed

8   by Tennessee law, which provides that "courts will not look beyond the written contract to

9   alter, vary or qualify the plain meaning of an unambiguous written contract." *Schaeffer v.*

10  *Am. Honda Motor Co., Inc.*, 976 F. Supp. 736, 741 (W.D. Tenn. 1997). Here, there is no

11  ambiguity in the purchase order. Consequently, that contract must be read according to its

12  terms and not supplemented by the inadmissible parol evidence in the Sampietro

13  Declaration. In any event, the purchase order merely has a choice-of-law provision. It has

14  no forum selection clause whatsoever. The two concepts are separate and distinct. *See*

15  *Besag v. Custom Decorators, Inc.*, No. CV08-05463 JSW, 2009 WL 330934 at *4 (N.D.

16  Cal. Feb. 10, 2009) ("A forum selection clause determines where the case will be heard, it

17  is 'separate and distinct from choice of law provisions that are not before the court.'")

18  (citation omitted).

19       Elsewhere in their brief, the Sharp Plaintiffs refer to the integration clause of the

20  purchase order that purportedly states "it is the *only* agreement related to that subject

21  matter." Sharp Br. at 2. This is not a correct description of the integration clause. Instead,

22  the integration clause provides as follows: "This Order shall constitute the entire

23  agreement between the Seller and the Buyer and no other understanding shall limit modify

24  or vary its terms unless reduced to writing." Sharp Ex. A. By asserting their rights to have

25  this dispute litigated in the Osaka District Court, the Toshiba Defendants do not attempt to

26  "limit, modify, or vary" any part of the purchase order. That order simply does not address

27  the question of where this dispute shall be litigated. Indeed, there is no need for the

28  purchase order to specify the forum *because that issue has already been addressed in the*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*BTA*.   As a result, both the BTA and the purchase order can (and should) be applied according to their terms.

Any doubt concerning the relatedness of this litigation to individual agreements under the BTA is dispelled by the Complaint and First Amended Complaint of the Sharp Plaintiffs.  In their Complaint, the Sharp Plaintiffs alleged that "Sharp Electronics is the wholly owned U.S. sales and marketing subsidiary of Osaka-based Sharp Corporation." Compl. ¶ 22.  This admission reveals that the purpose of Plaintiff Sharp Electronics is to act as a sales conduit for Sharp Corporation and to otherwise provide marketing services for Sharp Corporation.  The Sharp Plaintiffs attempt to downplay the significance of this allegation by characterizing it as "an innocuous allegation."  Sharp Br. at 11.  But the exact same allegation appears in the First Amended Complaint.  *See* First Am. Compl. ¶ 22 ("Sharp Electronics is the wholly owned U.S. sales and marketing subsidiary of Osaka-based Sharp Corporation").  No attempt was made to change this "innocuous" allegation because it accurately reflects the relationship between Plaintiff Sharp Electronics and Sharp Corporation.  SMCA "is a division of Sharp Electronics, with its principal place of business in Memphis, Tennessee."  First Am. Compl. ¶ 23.  SMCA is the entity that issued purchase orders to the Toshiba Defendants, including the exemplary purchase order provided by the Sharp Plaintiffs.  Sharp Ex. A.  Plaintiff SEMA "is a wholly owned subsidiary of Sharp Electronics."  First Am. Compl. ¶ 24.  During the relevant period, "Sharp Electronics, directly *and through its subsidiaries*, purchased substantial amounts of CRTs manufactured by Defendants and/or their subsidiaries . . . ."  First Am. Compl. ¶ 27 (emphasis added).  This allegation explains why the actions of Plaintiff SEMA are "related to" individual agreements under the BTA.  In this manner, the conduct of the Sharp Plaintiffs is closely related to the contractual relationship between Toshiba Corporation and Sharp Corporation.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**C.    Enforcement Of The BTA's Forum Selection Clause Will Not Contravene Any Public Policy**

The Sharp Plaintiffs make essentially two arguments in support of their position that enforcement of the BTA's forum selection clause would violate public policy.  Neither is persuasive.

First, the Sharp Plaintiffs assert that the Osaka District Court would not possess jurisdiction to entertain their antitrust claims against the Toshiba Defendants.  Sharp Br. at 12-13.  In support of this proposition, the Sharp Plaintiffs rely upon the declaration of Kazuto Yamamoto.  Sharp Att. 3.  According to Mr. Yamamoto, the Sharp Plaintiffs would not be able to raise their antitrust claims in the Osaka District Court.  Even if Mr. Yamamoto's speculation is correct, the Sharp Plaintiffs still have not established that such a result is contrary to public policy.  On more than one occasion, the Ninth Circuit has considered and rejected similar arguments.  In *Simula, Inc.*, 175 F.3d 716, the Ninth Circuit rejected a claim that sending a dispute to arbitration in Switzerland is contrary to public policy because the there was a likelihood that the Swiss Arbitral Tribunal would not apply U.S. antitrust law.  According to the Ninth Circuit, the fact that the Swiss Arbitral Tribunal "would not provide the identical relief of a United States Court" was "unavailing."  *Id.* at 723.  The Ninth Circuit explained that, "[u]nder *Richards*, remedies in a foreign forum need not be identical; to require that 'American standards of fairness . . . must govern the controversy demeans the standards of justice elsewhere in the world, and unnecessarily exalts the primacy of United States law over the laws of other countries.'"  *Id.* (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1295 (9th Cir. 1998) (en banc)); *see also Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*, 131 F.3d 1336, 1338 (9th Cir. 1998) ("Although litigating in Korea will deprive FFIC of its right to proceed in rem against The Atlantic, the loss of that right is insufficient to invalidate the forum clause on public policy grounds.").

The Sharp Plaintiffs suggest that enforcement of the forum selection clause has the effect of "depriv[ing the plaintiffs] of their day in court."  Sharp Br. at 12 (quoting *Putz v.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    *Golden*, No. 10-cv-0741, 2010 WL 5071270, at *9 (W.D. Wash. Dec. 7, 2010)).  But that

2    would not be the case.  Even under their interpretation of the law (as explained by their

3    declarant, Mr. Yamamoto), the Osaka District Court will honor the forum selection clause

4    as it pertains to Sharp Corporation.  Sharp Att. 3 at ¶ 4.  The real complaint of the Sharp

5    Plaintiffs is that honoring the forum selection clause precludes them from making antitrust

6    claims in U.S. court.  This complaint rings hollow.  When Sharp Corporation signed the

7    BTA, it must have understood that the Osaka District Court would apply its own legal

8    precedent to any disputes brought before it, as opposed to the legal precedents of other

9    jurisdictions.  *Accord Manetti-Farrow*, 858 F.2d at 515 (responding to Manetti-Farrow's

10   argument that an Italian court might not adequately protect its rights:  "it is a concern

11   which the parties presumably thought about and resolved when they included the forum

12   selection clause in their contract").  Sharp Corporation "now wants to change the bargain"

13   (*id.*) by insisting that that its subsidiaries sue Toshiba Corporation and its affiliates in U.S.

14   court applying U.S. law.  The Court should hold Sharp Corporation (the real party-in-

15   interest) to the bargain it struck with Toshiba Corporation.

16          The second public policy argument made by the Sharp Plaintiffs pertains to the

17   availability of treble damages in Japan.  Their declarant, Mr. Yamamoto, opines that a

18   plaintiff in Japan may only recover its actual damages, not treble damages.  Sharp Att. 3

19   ¶ 6.  The Sharp Plaintiffs believe that such a result is contrary to public policy because of

20   the statement made by the Supreme Court in footnote 19 of *Mitsubishi Motors Corp. v.*

21   *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985), where the Court stated that "in

22   the event the choice-of-forum and choice-of-law clauses operated in tandem as a

23   prospective waiver of a party's right to pursue statutory remedies for antitrust violations,

24   we would have little hesitation in condemning the agreement as against public policy."

25   This sentence, however, is mere *dicta* and is not followed in the Ninth Circuit.  *See Simula,*

26   *Inc.*, 175 F.3d at 723 ("We have, however, indicated that we do not consider that footnote

27   to be binding: 'we do not believe dictum in a footnote regarding antitrust law outweighs the

28   extended discussion and holding in *Scherk* on the validity of clauses specifying the forum

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

and applicable law.") (quoting *Richards*, 135 F.3d at 1295); *see also Meras Eng'g, Inc. v. CH2O, Inc.*, No. C-11-0389 EMC, 2013 WL 146341, at *14 (N.D. Cal. Jan. 14, 2013) ("In fact, *Richards* held that *Mitsubishi's* footnote 19 was mere *dicta*, and not controlling law in this Circuit."). Accordingly, enforcement of the BTA's forum selection clause violates no public policy. Instead, enforcement of that clause contributes to certainty in commercial transactions, which is a laudable result. *See Adams*, 702 F.3d at 441 ("A literal approach to interpreting forum selection clauses — an approach that always ignored affiliates of the signatories — could also undermine the contribution that such clauses have been praised for making to certainty in commercial transactions . . . .").

## II. The Court Should Dismiss Sharp's First Amended Complaint With Respect To Its Indirect Purchases Because Sharp Has Failed To Allege Facts Sufficient To Confer Standing Under The "Ownership Or Control" Exception To *Illinois Brick*

The Sharp Plaintiffs concede that there must be "allegations of sufficient 'ownership and control'" in order for such standing under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), to exist (Sharp Br. at 15), but have made patently insufficient allegations of ownership or control. Thus, their indirect claims should be dismissed.

In their First Amended Complaint, the Sharp Plaintiffs allege that they made purchases of CRT Products from affiliated entities. First Am. Compl. ¶ 30. The Sharp Plaintiffs do not own these affiliated entities; rather, both the Sharp Plaintiffs and the affiliated entities are merely "owned by the same ultimate parent company." *Id*. This is an insufficient allegation of ownership. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1164897, at *2 (N.D. Cal Mar. 20, 2013) ("Paradigmatic examples of 'situations where an ownership or control relationship between an indirect purchaser and a direct purchaser' may exist include parent-subsidiary relationships or one company's stock ownership of another.") (citation omitted). The fact that two or more companies have the same ultimate parent is far different than one company owning another. Aside from their deficient ownership allegations concerning these affiliates, the Sharp Plaintiffs make no allegations whatsoever that they control these affiliates.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    In their First Amended Complaint, the Sharp Plaintiffs also allege that they purchased

2    CRT Products from "OEMs as well as others."  First Am. Compl. ¶ 228.  The Sharp

3    Plaintiffs do not provide the identity of the "OEMs" or the "others."  Nor do the Sharp

4    Plaintiffs make any allegations of ownership or control with respect to these entities.  The

5    failure to make sufficient allegations of ownership or control mandates dismissal of claims

6    based on these purchases.

7    Finally, the Sharp Plaintiffs' First Amended Complaint is unclear as to whether the

8    Sharp Plaintiffs made indirect purchases of CRTs themselves (as opposed to just purchases

9    of CRT Products).  To the extent that the Sharp Plaintiffs made indirect purchases of CRTs

10   and seek damages as a result, these arguments apply to such purchases as well.

11                                             **CONCLUSION**

12   For these reasons and the reasons contained in our motion to dismiss, the Court

13   should grant our motion and dismiss the Sharp Plaintiffs' First Amended Complaint as it

14   pertains to the Toshiba Defendants.

15                                                  Respectfully submitted,

16   Dated:  November 20, 2013                      **WHITE & CASE** LLP

17

18                                    By:  */s/ Lucius B. Lau*
                                          Christopher M. Curran (*pro hac vice*)
19                                        ccurran@whitecase.com
                                          Lucius B. Lau (*pro hac vice*)
20                                        alau@whitecase.com
                                          Dana E. Foster (*pro hac vice*)
21
                                          defoster@whitecase.com
22                                        701 Thirteenth Street, N.W.
                                          Washington, DC  20005
23                                        tel.: (202) 626-3600
24                                        fax: (202) 639-9355

25
                                          *Counsel to Defendants Toshiba*
26                                        *Corporation, Toshiba America, Inc.,*
27                                        *Toshiba America Information Systems,*
                                          *Inc., and Toshiba America Electronic*
28                                        *Components, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## <u>CERTIFICATE OF SERVICE</u>

On November 20, 2013, I caused a copy of "THE TOSHIBA DEFENDANTS'
REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS SHARP'S
FIRST AMENDED COMPLAINT" to be electronically filed via the Court's Electronic
Case Filing System, which constitutes service in this action pursuant to the Court's order of
September 29, 2008.

*/s/ Lucius B. Lau*
Lucius B. Lau

THE TOSHIBA DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS SHARP'S FIRST AMENDED COMLAINT
Case No. 07-5944 SC
MDL No. 1917