# ATTACHMENT 9

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>Sharp Electronics Corp. v. Hitachi Ltd., No. 12-cv-1173-SC | Case No. C 07-5944 SC<br><br>MDL No. 1917<br><br>ORDER GRANTING TOSHIBA'S MOTION TO DISMISS SHARP'S FIRST AMENDED COMPLAINT |

## I. INTRODUCTION

Now before the Court is Toshiba's[1] motion to dismiss Sharp's first amended complaint.[2] ECF No. 2030 ("FAC") (filed under seal). The motion is fully briefed. ECF Nos. 2000 ("MTD"), 2195 ("Opp'n"), 2229 ("Reply").[3] The Court finds it appropriate for

---

[1] The Toshiba Defendants are Toshiba Corporation, Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc.

[2] "Sharp" and "Plaintiffs" collectively refers to Plaintiffs Sharp Electronics Corporation and Sharp Electronics Manufacturing of America, Inc. Toshiba's motion first referred to Sharp's original complaint, but the parties stipulated that all briefing would refer to the FAC.

[3] Toshiba amended its motion, with the Court's leave, to accord with the Supreme Court's ruling that procedural motions to dismiss complaints based on forum-selection clauses are to be based on the doctrine of forum non conveniens and Rule 12(b)(6) of the Federal Rules of Civil Procedure -- not, per prior Ninth Circuit procedure,

resolution without oral argument, Civ. L.R. 7-1(b), and GRANTS it.

## II. BACKGROUND

The parties are familiar with the general facts of this case, which is an antitrust action concerning the alleged price-fixing of cathode-ray tubes ("CRTs"). A brief factual summary relevant to the instant motion follows.

Plaintiff Sharp Electronics Corporation is based in New Jersey, and Plaintiff Sharp Electronics Manufacturing Company of America, Inc. is based in California. They allege that Toshiba manufactured, marketed, sold, or distributed CRT Products in the United States, either directly or through subsidiaries or affiliates. Plaintiffs allege that Toshiba participated in an international conspiracy to fix the prices of CRTs. Plaintiffs state that they bought price-fixed CRT Products "directly from Defendants and co-conspirators, and/or Defendants' and co-conspirators' subsidiaries and affiliates, and/or any agents controlled by Defendants, Defendants' subsidiaries and affiliates, co-conspirators or co-conspirators' affiliates," as well as from original equipment manufacturers ("OEMs") and other suppliers.

The two parties' Japan-based parent corporations -- Tokyo Shibaura Electric Corporation and Sharp Corporation -- entered an agreement, the "Basic Transaction Agreement" or "BTA," that is crucial to this dispute. MTD Attach. 3 ("BTA") (filed under

---

Rule 12(b)(3). Sharp filed a response to this amended motion, adding some detail to their opposition. ECF No. 2292. Toshiba then filed another supplemental reply to their brief, again with the Court's leave, ECF No. 2336, and Sharp responded to that as well. ECF No. 2352.

2

seal).[4]  Under the BTA, Sharp Corporation is "Party A," and Tokyo Shibaura is "Party B." <u>Id.</u> Preamble & Art. 1(2).  The BTA expressly applies to all "individual Agreements" between Parties A and B, "to the extent that there is no special Agreement." <u>Id.</u> Art. 1(2).  The BTA includes a short forum-selection clause: "In terms of litigation related to this Agreement or the individual Agreement, the Osaka District Court shall be the court of competent jurisdiction." <u>Id.</u> Art. 21(2).

Toshiba now moves to dismiss this action, arguing that the BTA's forum-selection clause requires this action to be litigated in Japan.

### III. DISCUSSION

Toshiba originally brought its motion to dismiss under Rule 12(b)(3) -- improper venue -- but has amended its motion to dismiss to rely on Rule 12(b)(6) and the doctrine of forum non conveniens instead, comporting with a recent Supreme Court holding that Rule 12(b)(3) is not the proper mechanism for enforcing a forum-selection clause. <u>See</u> <u>Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.</u>, 134 S. Ct. 568, 580 (2013).  <u>Atlantic Marine</u> held that 28 U.S.C. § 1404(a)[5] and the forum non conveniens doctrine provide appropriate mechanisms for enforcing forum-selection clauses.  Neither party's substantive arguments changed

---

[4] While the BTA and its certified translation filed under seal, the parties frequently quote it in their unsealed papers.  The Court likewise disregards the seal.

[5] "Section 1404(a) is merely a codification of the dotrine of forum non conveniens for the subset of cases in which the transferee forum is within the federal court system." <u>Atl. Marine</u>, 134 S. Ct. at 580.

3

pursuant to this amendment. Since this case does not involve a transferee forum within the federal court system -- the putative transferee court is in Japan -- section 1404(a) does not apply here, so Toshiba's motion can only be based on forum non conveniens doctrine concerning forum-selection clauses. Absent further guidance, the Court continues to apply the Ninth Circuit's standard of review from Rule 12(b)(3) cases on this motion, drawing reasonable inferences and resolving factual conflicts in favor of the non-movant, but not necessarily accepting the non-movant's pleadings as true, and also considering facts outside the pleadings. Petersen v. Boeing Co., 715 F.3d 276, 279 (9th Cir. 2013).

In diversity cases, federal courts apply federal law in determining the enforceability of forum-selection clauses. Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988). Contractual forum-selection clauses are prima facie valid and therefore enforceable absent a strong showing that "enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 15 (1972). "The party seeking to avoid the forum-selection clause bears 'a heavy burden of proof.'" Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir. 1988) (en banc) (quoting Bremen, 407 U.S. at 17). The policy of enforcing forum-selection clauses remains strong in the international commercial context: as the Ninth Circuit has stated, "[t]he expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved

4

under our laws and in our courts." <u>TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.</u>, 915 F.2d 1351, 1354 (9th Cir. 1990).

Federal courts have recognized three grounds for declining to enforce a forum-selection clause: (1) if the inclusion of the clause in the contract was the result of "fraud or overreaching"; (2) if the party seeking to avoid the clause would be effectively deprived of its day in court in the forum specified in the clause; or (3) if enforcement would contravene a strong public policy of the forum in which the suit is brought. <u>Murphy v. Schneider Nat'l, Inc.</u>, 362 F.3d 1133, 1140 (9th Cir. 2004).

Sharp contends that the forum-selection clause in the BTA neither governs the present dispute nor mandates dismissal for any reason, because (1) the two Sharp Plaintiffs are not parties to or bound by the BTA, (2) the Sharp Plaintiffs' claims do not relate to the BTA, and (3) enforcing the BTA's forum-selection clause would violate public policy.

Sharp is wrong on all counts. Sharp first contends that the two Sharp Plaintiffs are not parties to the BTA, and that "[i]t goes without saying that a contract cannot bind a nonparty." Opp'n at 5-6 (quoting <u>EEOC v. Waffle House, Inc.</u>, 534 U.S. 279, 294 (2002)). Sharp argues that the face of the BTA proves that it was not intended to bind any non-signatories, because only Sharp Corporation and Tokyo Shibaura -- not subsidiaries or affiliates -- are listed in the preamble. <u>Id.</u> (citing <u>GECCMC 2005-C1 Plummer St. Office Ltd. P'ship v. JPMorgan Chase Bank, N.A.</u>, 671 F.3d 1027, 1033 (9th Cir. 2012); <u>Klamath Water Users Protective Ass'n v. Patterson</u>, 204 F.3d 1206, 1210 (9th Cir. 1999)). Sharp also seeks to support its argument with a secondary source, the deposition of

5

a Sharp Corporation employee, but because the parties agree that the BTA is not ambiguous, the Court need not and cannot evaluate that evidence. <u>Pierce Cnty. Hotel Emps. & Rest. Emps. Health Trust v. Elks Lodge, B.P.O.E. No. 1450</u>, 827 F.2d 1324, 1327 (9th Cir. 1987) (extrinsic evidence is inadmissible to contradict clear contract terms).

Sharp's authority is inapposite: the Ninth Circuit recognizes the quotation from <u>EEOC v. Waffle House, Inc.</u> as dicta, noting that if taken literally it would "jettison hundreds of years of common law under which nonparties can be contractually liable under ordinary contract and agency principles." <u>Comer v. Micor, Inc.</u>, 436 F.3d 1098, 1104 n.10 (9th Cir. 2006) (Kozinski, J.). Sharp's other authority concerns third-party beneficiary doctrine, which is different from the present situation in that the parties' intent to cover non-signatories is the central question. See <u>Klamath Water Users</u>, 204 F.3d at 1210 (discussing third-party beneficiary doctrine). Rather, on the face of the BTA, Tokyo Shibaura and Sharp Corporation explicitly agree to handle all litigation related to the BTA, which includes individual Agreements (and purchase orders), in Osaka District Court. BTA Art. 21(2). In this case, the Ninth Circuit has held that forum-selection clauses will apply to non-signatories "where the alleged conduct of the non-parties is closely related to the contractual relationship." <u>Holland Am. Line, Inc. v. Wartsila N. Am., Inc.</u>, 485 F.3d 450, 456 (9th Cir. 2007). In this case, because any relationship between the Sharp Plaintiffs and Toshiba took place "as part of the larger contractual relationship" between the two parent companies, the BTA

6

1 and its forum-selection clause should be read to apply to the
2 subsidiaries.  Id.; see also Manetti-Farrow, 858 F.2d at 511.
3     Second, Sharp is wrong that its claims do not relate to the
4 BTA.  Sharp correctly states that the term "related to" must
5 involve the agreement itself to trigger a forum-selection clause
6 governing litigation related to a contract.  See Opp'n at 7-8
7 (citing cases).  But Sharp is wrong that the BTA governs only
8 Japanese transactions, and that the Purchase Orders it cites, see
9 id. Attach. 1, Ex. A ("PO"), are the real governing agreements (or
10 that they are inconsistent with the BTA and should override it).
11 On Sharp's first point, the BTA is not so limited.  It clearly
12 states that it establishes "the basic terms and agreements related
13 to the manufacture and supply of goods."  BTA Preamble.  Further,
14 it also governs "individual Agreements," which are "established
15 upon the delivery of the purchase order describing the details of
16 [transactions related to the parties' goods] by Party A and upon
17 delivery of the order confirmation by Party B."  BTA Art. 2.  The
18 Court finds that orders like Sharp's PO are related to the BTA by
19 the contract's terms themselves.
20     In such a case, the forum-selection clause of the master
21 agreement could be limited in application if it were true -- as
22 Sharp argues -- that the secondary agreement contained an
23 integration clause that foreclosed the master agreement's
24 application, or perhaps if the two contracts were inconsistent.
25 See Sharp Opp'n at 8 (citing PO ¶¶ 3 (integration clause), 5
26 (inspection provisions), 6 (indemnity provisions), 11 (transfer of
27 rights and obligations provisions), 13 (choice of law provisions)).
28 However, the BTA and PO are not exclusive: Article 2 of the BTA

7

1  states that the BTA covers individual Agreements, and none of the
2  provisions of the PO is a forum-selection clause.  The PO includes
3  an integration clause reading, "This Order shall constitute the
4  entire agreement between the Seller and the Buyer and no other
5  understanding shall limit modify or vary its terms [sic] unless
6  reduced to writing."  PO ¶ 3.  This does not preclude application
7  of the BTA's forum-selection clause because the PO includes no such
8  term -- it includes a choice of law provision, but choice-of-law
9  provisions are distinct from forum-selection clauses.  See
10 Hartstein v. Rembrandt IP Solutions, LLC, No. 12-2270 SC, 2012 WL
11 3075084, at *6 (N.D. Cal. July 30, 2012) (quoting Besag v. Custom
12 Decorators, Inc., No. 08-05463 JSW, 2009 WL 330934, at *4 (N.D.
13 Cal. Feb. 10, 2009)).

14      In any event, Sharp's claims are based partly on its corporate
15 relationship with Sharp Corporation, a party to the BTA.  See FAC
16 ¶¶ 22-23.  And as the parties discuss in their supplemental briefs,
17 filed under seal, the Sharp Plaintiffs' purchases that form the
18 basis of their antitrust claims against Toshiba were made from
19 Sharp Corporation.  The Court therefore finds that Sharp's claims
20 relate to and have their genesis in the BTA between Sharp
21 Corporation and Tokyo Shibaura.

22      Finally, the Court finds that enforcing the BTA's forum-
23 selection clause would not violate public policy.  Sharp first
24 contends that the Osaka District Court would lack jurisdiction over
25 the antitrust claims at issue in this case, because the Japanese
26 court would hold the forum-selection clause applicable only to the
27 parent corporations, not to the subsidiaries and affiliates.  See
28 Opp'n at 12-13 (citing Opp'n Attach. 3 ("Yamamoto Decl.") ¶¶ 3-5).

1  Sharp's declarant, a Japanese attorney, states that he is unaware
2  of cases in which Japanese courts have applied forum-selection
3  clauses to non-signatories, including subsidiaries or affiliates.
4  Yamamoto Decl. ¶ 5.  The Court finds this argument insufficient: it
5  does not suggest that the Japanese court would not actually have
6  jurisdiction over the parties or that the parties are without
7  recourse in the forum-selection clause's designated court.  It only
8  states that the Japanese Court might not hear the parties' United
9  States antitrust claims, an argument the Ninth Circuit has rejected
10 on the grounds that foreign fora's remedies need not be identical
11 to those in the United States.  See Simula, Inc. v. Autoliv, Inc.,
12 175 F.3d 716, 723 (9th Cir. 1999).  The standard here is whether
13 the transferee court's law would be so deficient that plaintiffs
14 would be deprived of "any reasonable recourse," and the Court does
15 not find that Sharp's argument or declaration meets that standard.
16 Richard's v. Lloyd's of London, 135 F.3d 1289, 1295 (9th Cir. 1988)
17 (en banc).  Sharp never argues that Sharp Corporation, the parent,
18 would be deprived of the ability to sue on behalf of its
19 subsidiaries or affiliates.

20     Likewise, Sharp's argument that the Japanese court would not
21 permit treble damages is deficient.  As noted, the Ninth Circuit's
22 standard is not that remedies must be identical -- rather, the
23 plaintiff must lack any reasonable recourse.  Id.  Mr. Yamamoto
24 states that plaintiffs can recover only actual damages, not
25 punitive damages.  Yamamoto Decl. ¶ 6.  The Court does not find
26 this sufficient to render application of the forum-selection clause
27 contrary to public policy.  Simula, 175 F.3d at 723.  Sharp cites a
28 statement from Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,

9

1  Inc., 473 U.S. 614 (1985), as support here: "[I]n the event the
2  choice-of-forum and choice-of-law clauses operated in tandem as a
3  prospective waiver of a party's right to pursue statutory remedies
4  for antitrust violations, we would have little hesitation in
5  condemning the agreement as against public policy."  Id. at 637
6  n.19.  The Ninth Circuit has repeatedly held that this footnote is
7  non-binding dicta.  Simula, 175 F.3d at 723 (citing Richards, 135
8  F.3d at 1295); Meras, 2013 WL 146341, at *14.  The proper standard
9  remains whether a plaintiff is deprived of reasonable recourse, and
10 as above, the Court finds that Sharp has not demonstrated such a
11 lack here: despite the unavailability of treble damages, Sharp
12 maintains that actual damages could be available to it, which does
13 not evince a lack of reasonable recourse in the Japanese court
14 system.  See Richards, 135 F.3d at 1296.

## IV. CONCLUSION

As explained above, the Toshiba Defendants' motion to dismiss the Sharp Plaintiffs' first amended complaint is GRANTED.  The complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: March 13, 2014

_____
UNITED STATES DISTRICT JUDGE

10