Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and*
*Sharp Electronics Manufacturing Company of America, Inc.*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-cv-5944 SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| *Sharp Electronics Corp.*, et al. v. *Hitachi Ltd.*, et al., Case No. 13-cv-1173 SC | **SHARP ELECTRONICS CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.'S REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND** |
| | DATE: May 30, 2014 |
| | TIME: 10:00 a.m. |
| | PLACE: Courtroom 1, 17th Floor |
| | JUDGE: Hon. Samuel Conti |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ii

ARGUMENT ........................................................................................................................... 2

I.     THE SHARP PLAINTIFFS' PROPOSED AMENDMENTS ARE
       PROCEDURALLY PROPER AND MEET THE *FOMAN* FACTORS.......................... 2

II.    THE SHARP PLAINTIFFS' CLAIMS FOR JOINT AND SEVERAL
       LIABILITY CANNOT BE DISMISSED BASED ON *FORUM NON
       CONVENIENS*  GROUNDS INDEPENDENTLY OF THE BTA ................................. 8

III.   THE PARTIES DID NOT ADDRESS JOINT AND SEVERAL
       LIABILITY OR DISMISSAL WITH PREJUDICE IN THEIR BRIEFING
       ON THE MOTION TO DISMISS .................................................................. 11

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*In re Air Crash Over The Taiwan Straits on May 25, 2002*,
    331 F. Supp. 2d 1176 (C.D. Cal. 2004) ..................................................................9

*Amarel v. Connell*,
    102 F.3d 1494 (9th Cir. 1996).............................................................................14

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*,
    134 S. Ct. 568 (2013) ........................................................................................13

*Avila v. Chiquita Fresh North Am., LLC*,
    No. 12-56938, 2014 WL 1465097 (9th Cir. Apr. 15, 2014) ...................................14

*Carijano v. Occidental Petroleum Corp.*,
    643 F.3d 1216 (9th Cir. 2011)......................................................................10, 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 3:07-cv-05944-SC, MDL No. 1917 (N.D. Cal.) .............................................4

*Coal. for ICANN Transparency Inc. v. Verisign, Inc.*,
    452 F. Supp. 2d 924 (N.D. Cal. 2006) ..................................................................6

*Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.*,
    918 F.2d 1446 (9th Cir. 1990)............................................................................10

*Creager v. Yoshimoto*,
    No. 05-cv-01985, 2006 WL 680555 (N.D. Cal. Mar. 14, 2006)...............................9

*Crostley v. Lamar Cnty.*,
    717 F.3d 410 (5th Cir. 2013)...........................................................................2, 3

*Dawson v. Cagle Cartoons, Inc.*,
    No. 13-cv-0610, 2013 WL 4829317 (E.D. Cal. Sept. 9, 2013) ...............................6

*DB Mexican Franchising LLC v. Cue*,
    No. 11-cv-0515, 2012 WL 253189 (S.D. Cal. Jan. 26, 2012) ...............................14

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir. 2009).............................................................................6

*Duran v. J. Hass Grp. L.L.C.*,
    No. 10-cv-4538, 2012 WL 3233818 (E.D.N.Y. June 8, 2012) .............................6, 7

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*ElcomSoft, Ltd. v. Passcovery Co. Ltd.*,
    958 F. Supp. 2d 616 (E.D. Va. 2013) .......................................................................14

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ...................................................................................3

*Fogade v. ENB Revocable Trust*,
    263 F.3d 1274 (11th Cir. 2001) ..............................................................................7, 8

*Foman v. Davis*,
    371 U.S. 178 (1962) ..................................................................................................3

*Gates Learjet Corp. v. Jensen*,
    743 F.2d 1325 (9th Cir. 1984) .................................................................................8, 9

*In re Hall, Bayoutree Assocs., Ltd.*,
    939 F.2d 802 (9th Cir. 1991) ...................................................................................13

*Lockman Found. v. Evangelical Alliance Mission*,
    930 F.2d 764 (9th Cir. 1991) ...............................................................................9, 10

*Miller v. Rykoff-Sexton, Inc.*,
    845 F.2d 209 (9th Cir. 1988) ....................................................................................3

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .......................................................................................................7

*Nalco Co. v. Turner Designs, Inc.*,
    No. 13-cv-02727, 2014 WL 645365 (N.D. Cal. Feb. 19, 2014) ................................3

*Peterson v. Boeing Co.*,
    715 F.3d 276 (9th Cir. 2013) .....................................................................................6

*Prograph Int'l Inc. v. Barhydt*,
    928 F. Supp. 983 (N.D. Cal. 1996) ...........................................................................6

*Project Dev. Grp., Inc. v. Sonoma Cnty. Junior Coll. Dist.*,
    No. 07-cv-2987, 2007 WL 2518034 (N.D. Cal. Aug. 31, 2007) ...............................6

*Raima, Inc. v. Myriad France, SAS*,
    No. C12-1166JLR, 2012 WL 6201709 (W.D. Wash. Dec. 11, 2012) ......................13

*Salton, Inc. v. Philips Domestic Appliances & Pers. Care B.V.*,
    391 F.3d 871 (7th Cir. 2004) ...................................................................................10

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ...................................................................................................7

*Smith v. Lucent Techs., Inc.*,
    Civ.A. 02-0481, 2004 WL 515769 (E.D. La. Mar. 16, 2004) .........................6, 7, 12

*Sonoma Cnty. Ass'n of Ret. Emps. v. Sonoma Cnty.*,
    708 F.3d 1109 (9th Cir. 2013) ...................................................................................3

*Travelers Prop. Cas. Co. of Am. v. Centex Homes*,
    No. 11-cv-3638-SC, 2013 WL 4528937 (N.D. Cal. Aug. 26, 2013) ........................14

*Ventura Content, Ltd. v. UGC Internet Ventures, Ltd.*,
    No. 12-cv-2856, 2013 WL 5312866 (N.D. Ga. Aug. 13, 2013) ...............................14

*U.S. v. Vittaly*,
    No. C 04-3186 MHP, 2006 WL 3834229 (N.D. Cal. Dec. 28, 2006) .......................14

*West v. I-Flow Corp.*,
    No. 1:09-cv-00098, 2009 WL 6055838 (S.D. Ohio Oct. 7, 2009) ............................3

*Wright v. City of Vallejo*,
    No. 12-cv-03473, 2012 WL 5350150 (N.D. Cal. Sept. 26, 2012) ...........................13

*Zurich Capital Mkts. Inc. v. Coglianese*,
    383 F. Supp. 2d 1041 (N.D. Ill. 2005) ...................................................................14

**Statutes**

Civil L.R. 7-9 ..............................................................................................................14

**Other Authorities**

3 Int'l Contract Manual § 62:3 (Dec. 2013) .................................................................5

Fed. R. Civ. P. 12 ....................................................................................................1, 13

Fed. R. Civ. P. 15 ......................................................................................................2, 3

Fed. R. Civ. P. 54 ................................................................................................2, 3, 14

Fed. R. Civ. P. 59 .........................................................................................................3

Fed. R. Civ. P. 60 .........................................................................................................3

Restatement (Second) of Contracts § 202 (1981) ........................................................6

# MEMORANDUM OF LAW

Courts generously permit leave to amend complaints because the overarching goal of litigation is to do substantial justice.  That goal will be served here, we respectfully submit, by permitting the Sharp Plaintiffs leave to amend their complaint.  There is no doubt that the parties could have better served the Court by focusing in the initial briefing on the question of joint and several liability.  That said, the Sharp Plaintiffs should not forever lose the opportunity to pursue claims potentially worth hundreds of millions of dollars because the issues were not as clearly framed as they might have been.  The Sharp Plaintiffs moved for leave to amend to assert claims for joint and several liability promptly after the Court's ruling on Toshiba's motion to dismiss, and there is no prejudice to Toshiba in permitting valid claims to proceed after amendment.

And, while Toshiba seeks to place blame solely on the Sharp Plaintiffs for failing to frame the issues as clearly as they might have, as the moving party Toshiba also might have focused the issues and even brought potentially relevant contrary legal authority to the Court's attention.  It remains undisputed that Toshiba never specifically contended that the Sharp Plaintiffs' joint and several claims should be dismissed, and it never argued that the dismissal should be with prejudice.  Nor does Toshiba contest that when it filed its original motion, a dismissal with prejudice would not have even been possible because the motion was made under Rule 12(b)(3).  And, it recently came to our attention that long before the Sharp Plaintiffs joined this case, Toshiba *expressly* argued in an analogous context that an arbitration agreement with Costco required dismissal of all of Costco's claims against Toshiba—based on both direct sales *and joint and several liability*.  The Court disagreed and ruled to the contrary:  it dismissed *only* claims based on direct sales, and permitted the claims based on joint and several liability to remain.  Toshiba did not remind the Court of this potentially relevant ruling, which it might have felt compelled to do if its original motion papers had sought a dismissal of joint and several liability claims with prejudice.

Ultimately, we respectfully submit, this motion ought not be decided on the basis of these arguments. Rather, the focus should be on substantial justice, which would be served by having the Sharp Plaintiffs' claims for joint and several liability decided on the merits. None of the other arguments that Toshiba raises to oppose leave to amend the complaint supports a contrary result. The Sharp Plaintiffs' claims for joint and several liability are not controlled by the forum-selection clause of the BTA agreement which, by its express terms, only applies to litigation related to the manufacture and supply of goods between Toshiba Corporation and Sharp Corporation. The joint and several claims here do *not* relate to the manufacture or supply of goods between Toshiba and Sharp Corporation or the Sharp Plaintiffs. And, as a matter of law, whether they do is a question, in the first instance, for this Court to decide – not a court in Osaka.

Toshiba's new argument that the Sharp Plaintiffs' joint and several claims should be dismissed on *forum non conveniens* grounds, even if the BTA does not control them, also is wrong. The factors considered under the standards for *forum non conveniens* analysis favor keeping this case related to injuries sustained in the United States in the home and chosen forum of the United States-based Sharp Plaintiffs. To argue otherwise, Toshiba must pretend that Japan-based Sharp Corporation—a non-party to the case—is not only a plaintiff in the case, but is the only plaintiff whose home forum is relevant.

The Sharp Plaintiffs' motion to amend should be granted.

## **ARGUMENT**

### I. **THE SHARP PLAINTIFFS' PROPOSED AMENDMENTS ARE PROCEDURALLY PROPER AND MEET THE *FOMAN* FACTORS**

As discussed in our earlier briefing, *Crostley v. Lamar County*, 717 F.3d 410 (5th Cir. 2013), and other cases reflect that Rule 15 governs a motion for leave to amend after a court dismisses with prejudice one party in a multiparty case. This is because the dismissal order does not become a final judgment until certified under Rule 54(b). Mot. to Amend at 6-7. Toshiba does not contest that Rule 15 is the appropriate mechanism for the Sharp Plaintiffs' proposed amendments here, or that the Court's dismissal order was not a "final" order or judgment

1   pursuant to Rules 59 and 60.  Toshiba attempts to distinguish *Crostley*, but not based on any of

2   the relevant arguments or propositions for which the Sharp Plaintiffs cited the case.[1]

3         The five *Foman* factors courts use to apply Rule 15 favor amendment here:  (1)

4   futility; (2) prejudice; (3) bad faith; (4) undue delay; and (5) whether the plaintiff has previously

5   amended the complaint.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Sonoma Cnty. Ass'n of Ret.*

6   *Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).  "Absent prejudice, or a strong

7   showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in

8   favor of granting leave to amend."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052

9   (9th Cir. 2003) (emphasis in original).  Toshiba's arguments to the contrary miss the mark.

10         **Futility.**  The futility standard is met "'only if no set of facts can be proved under

11   the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'"

12   *Nalco Co. v. Turner Designs, Inc.*, No. 13-cv-02727, 2014 WL 645365, at *2 (N.D. Cal. Feb. 19,

13   2014) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).  Toshiba

14   contends that the proposed amendments are futile because they do not "add" new allegations.

15   Toshiba Opp. at 11.  Toshiba's argument is devoid of any authority and can be dispensed with

16   easily.  The Sharp Plaintiffs can amend their pleading to remove the claims determined by the

17   Court to be governed by the BTA and thus cure the problem identified by the Court.  That they do

18   so without adding additional facts is irrelevant.  *West v. I-Flow Corp.*, No. 1:09-cv-00098, 2009

19   WL 6055838, at *2 (S.D. Ohio Oct. 7, 2009) ("[T]he Court finds no requirement in the Federal

20   Rules of Civil Procedure, nor does Defendant offer any authority, which would require Plaintiffs

21   to offer new factual allegations in order to amend their Complaint.").

22

23

_____

24   [1] Toshiba rehashes irrelevant facts of *Crostley* while ignoring the material facts and application of

25   law of that case.  The Fifth Circuit mentions none of the facts recited by Toshiba in its
     explanation of its decision to reverse the district court's refusal to allow leave to amend.  Instead,

26   the court applied the same facts that require leave to amend here:  (1) a final judgment had not
     been certified, (2) the statute of limitations had not run, and (3) the order in question

27   "'adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties.'"
     *Crostley*, 717 F.3d at 421 (quoting Fed. R. Civ. P. 54(b)).  Toshiba's discussion of *Crostley*

28   serves only to reveal distinctions without a difference.

Toshiba also argues, for the first time, that the proposed amendments are futile because the BTA's forum selection clause would cover the Sharp Plaintiffs' joint and several claims against Toshiba.  To do so, Toshiba must ignore that the BTA, on its face, governs only relations relating to the supply and manufacture of goods.  This is set forth plainly in the very first sentence of the BTA, which states that it was "made and entered into by and between Sharp Corporation (hereafter referred as 'Party A') and Tokyo Shibaura Electric Corporation (hereafter referred as 'Party B') *to set forth the basic terms and conditions related to the manufacture and supply of the goods.*" Toshiba Mot. to Dismiss, Attach. 3 at 1, Dkt. No. 2000 (emphasis added).[2]  The BTA also makes clear that any "Individual Agreements" referenced in the BTA are also agreements *relating to the manufacture and supply of goods*.[3]  Subsequent articles in the BTA further reinforce that the BTA applies only to transactions related to the manufacture and supply of goods.  *See, e.g.*, *id.* at "Article 3 (Supply of Raw Materials)," "Article 5 (Handling of the Supply Goods and Rental Goods)," "Article 6 (Delivery of the Goods)," "Article 7 (Receipt and Inspection),"  "Article 8 (Treatment of rejected Goods from Inspection)," "Article 9 (Quality Management)," & "Article 10 (Quality Assurance)."

Toshiba instead focuses attention on Article 21, where the BTA sets forth procedures for resolution of disputes.  By its terms, however, Article 21 relates only to the resolution of "disputes or doubts that arise *in relation to*" the BTA or the "individual Agreement[s]."

---

[2] As used herein, all references to "Dkt. No." are to materials filed in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-05944-SC, MDL No. 1917 (N.D. Cal.).

[3] "Article 2 (Individual Agreement):  1. The individual Agreement *sets forth the name, quantity, time of delivery, place of delivery, method of delivery as well as the amount of payment and unit price, and other related matters of the goods (referred below as "Goods")*.  2. The individual Agreement is established upon the *delivery of the purchase order describing the details of the transaction* in the previous paragraph by Party A and upon delivery of the order confirmation by Party B . . . ."  Toshiba Mot. to Dismiss, Attach. 3 at 1, Dkt. No. 2000 (emphasis added).

Article 21 (Resolution of Doubt or Disputes)

1. When there are disputes or doubts that arise *in relation to this Agreement or individual Agreement*, or when there are unsolved items *in this Agreement or individual Agreement*, resolutions shall be made between Party A and Party B in good faith.

2. In terms of litigation *related to this Agreement or the individual Agreement*, the Osaka District Court shall be the court of competent jurisdiction.

*Id.* at 8 (emphasis added).

As noted, the preamble and definitions clearly restrict the BTA and the Individual Agreements to relations between Sharp Corporation and Toshiba Corporation *for the manufacture and supply of goods*. Section 21 does nothing to expand that. Rather, when "disputes or doubts" or "unsolved items" arise between Sharp Corporation and Toshiba Corporation in relation to the BTA or the Individual Agreements, Article 21 does two things. First, Article 21(1) provides that Sharp Corporation and Toshiba Corporation shall resolve their disputes related to the BTA or the Individual Agreements in good faith; this sort of good faith clause is commonly included in agreements in Japan. *See* 3 Int'l Contract Manual § 62:3 (Dec. 2013) ("In most agreements in Japan, contracting parties usually include a clause in their agreement that stipulates that, if a dispute should arise between them *with regard to the right and duties provided in the contract*, the parties will confer in good faith and settle the dispute harmoniously through consultation.") (emphasis added). Second, Article 21(2) establishes that for "litigation *related to* this Agreement or the individual Agreement" between Sharp Corporation and Toshiba Corporation, the forum shall be the Osaka District Court. Toshiba's assertion that this BTA commits all disputes between any member of either corporate family against the other on any subject whatsoever (even those unrelated to sales transactions between them) to the district court in Osaka is therefore meritless.

Nowhere in the BTA does it say that Article 21's forum selection clause is intended to govern all lawsuits between any Sharp entity and any Toshiba entity, over any subject matter, anywhere in the world, at any time. Had Article 21 been intended to apply to "all disputes" between Sharp Corporation and Toshiba Corporation, it would just say so. Contract

1   terms should normally be interpreted according to their plain meanings, in light of the entire

2   agreement.  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).  Under the "plain meaning"

3   of the term "related to," the claims "must involve the [agreement] itself to trigger the clause."

4   *Coal. for ICANN Transparency Inc. v. Verisign, Inc.*, 452 F. Supp. 2d 924, 931-32 (N.D. Cal.

5   2006).   And as Toshiba points out, the Court should read the BTA as a whole and interpret it in

6   light of all of the preamble and Articles 1, 2, and 21.  These all consistently provide that the BTA

7   covers relations between Sharp Corporation and Toshiba Corporation only for the manufacture

8   and supply of goods.  *See* Restatement (Second) of Contracts § 202 (1981) ("A writing is

9   interpreted as a whole, and all writings that are part of the same transaction are interpreted

10  together."); Toshiba Opp. at 13.

11          Toshiba's next new argument is that, at least, the question here presents a

12  "dispute," "doubt," or "unsolved item" over the meaning of the BTA, which itself must be

13  resolved in the Osaka District Court.  Toshiba Opp. at 13.  But "[b]efore a court can consider

14  enforcing a forum selection clause, it first must decide whether the clause applies to the type of

15  claims asserted in the lawsuit."  *Smith v. Lucent Techs., Inc.*, Civ.A. 02-0481, 2004 WL 515769

16  at *7 (E.D. La. Mar. 16, 2004) (internal quotation and citation omitted).  It is federal courts that

17  determine, in the first instance, the scope and applicability of forum selection clauses, under

18  federal law.  *Peterson v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (reversing district court's

19  dismissal on the basis of a forum selection clause and reversing district court's denial of the

20  plaintiff's motion to amend to address the district court's reasons for dismissal); *Dawson v. Cagle*

21  *Cartoons, Inc.*, No. 13-cv-0610, 2013 WL 4829317, at *3 (E.D. Cal. Sept. 9, 2013) ("Federal law

22  governs interpretation of a forum selection clause in a federal question case . . . ."); *Project Dev.*

23  *Grp., Inc. v. Sonoma Cnty. Junior Coll. Dist.*, No. 07-cv-2987, 2007 WL 2518034, at *1 (N.D.

24  Cal. Aug. 31, 2007) (same).[4]  And here, this dispute does not relate to the BTA.  The Sharp

25  ─────────────────

26  [4] Toshiba also relies on arbitration clause cases; district courts similarly interpret the scope of
    arbitration clauses in the first instance.  *See, e.g.*, *Prograph Int'l Inc. v. Barhydt*, 928 F. Supp.

27  983, 989 (N.D. Cal. 1996) ("This Court must decide whether all of the claims against petitioners .
    . . fall within the scope of the arbitration clause."); *Duran v. J. Hass Grp. L.L.C.*, No. 10-cv-4538,

28  2012 WL 3233818, at *3 (E.D.N.Y. June 8, 2012) ("[W]hether [the parties] agreed to arbitrate a

1    Plaintiffs have not asserted a breach of contract claim or, in the proposed amended complaint, any

2    claim that depends in any part on transactions between any Sharp entity and any Toshiba entity.

3    None of the Sharp Plaintiffs' complaints mentions the BTA at all.  The Sharp Plaintiffs allege

4    instead that Toshiba conspired with the other defendants and co-conspirators to raise the prices

5    the Sharp Plaintiffs paid for CRTs from those *other* defendants and co-conspirators, and so is

6    liable jointly and severally based on the Sherman Act and various state laws.  The Sharp

7    Plaintiffs' antitrust claims have nothing to do with a "dispute," "doubt," or "unsolved item" over

8    how to interpret the BTA.

9            **Other *Foman* factors.**  As Toshiba effectively concedes, the other *Foman* factors

10   also support the Sharp Plaintiffs.  Granting leave to amend does not prejudice Toshiba.  Toshiba

11   is and has been in the CRT cases since it was originally sued by the Direct Purchaser Plaintiff

12   class back in November 2007.  Toshiba continues to be a defendant in the other pending class and

13   direct actions in this MDL and will be regardless of where the Sharp Plaintiffs' claims against

14   Toshiba are pursued.  The Sharp Plaintiffs acted in good faith, seeking to amend promptly

15   following the Court's order in order to clarify the scope of their claims against Toshiba.  The

16   Sharp Plaintiffs have not unduly delayed, filing the proposed amended complaint less than three

17   weeks after the Court's Order.  And this is the Sharp Plaintiffs' first amendment as to Toshiba.

18           Ultimately, our case resembles *Fogade v. ENB Revocable Trust*, 263 F.3d 1274

19   (11th Cir. 2001).  The Eleventh Circuit there affirmed a district court's decision to grant leave to

20   amend a complaint following a dismissal without prejudice for *forum non conveniens*.  *Id.* at

21   1286-87.  The proposed amendments removed the claims for conduct relating to foreign law that

22   had given rise to the *forum non conveniens* issues.  *Id.* at 1279, 1283.  The appeals court held that

23   matter . . . is a question of arbitrability for the courts . . . .") (internal quotations omitted); *Smith*,
24   2004 WL 515769, at *8 n.3 ("Both the United States Supreme Court and the Fifth Circuit have
     noted the similarities between arbitration clauses and forum selection clauses and have applied
25   the same enforceability analysis to both because an arbitration clause is, 'in effect, a specialized
     kind of forum-selection clause that posits not only the situs of suit but also the procedure to be
26   used in resolving the dispute.'" (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519
     (1974))).  *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.* is not to the contrary and merely
27   directs the district court—when interpreting an arbitration clause—to resolve doubts in favor of
28   arbitration.  460 U.S. 1, 24-25 (1983).

1    the district court thereafter properly retained jurisdiction of the case as amended.  *Id.* at 1286-87.

2    The Sharp Plaintiffs' proposed amended complaint will achieve the same end.

3            Because the Sharp Plaintiffs' proposed amendment is not futile and the other

4    *Foman* factors all weigh in the Sharp Plaintiffs' favor, the Court should grant leave here.

5    **II.    THE SHARP PLAINTIFFS' CLAIMS FOR JOINT AND SEVERAL LIABILITY**
     **CANNOT BE DISMISSED BASED ON *FORUM NON CONVENIENS* GROUNDS**
6    **INDEPENDENTLY OF THE BTA**

7            Toshiba debuts yet another new argument:  that the *forum non conveniens* doctrine

8    requires dismissal of the Sharp Plaintiffs' claims against Toshiba *even without* the forum-

9    selection clause of the BTA.  Toshiba Opp. at 15.  This new argument does not withstand

10   scrutiny.  To the contrary, all of the private interest factors on which Toshiba relies actually

11   support the Sharp Plaintiffs.

12           **Choice of forum.**  Toshiba's argument on choice of forum—to the extent it can be

13   understood at all—appears to be that: (1) "Sharp [Corporation]'s home forum is Osaka, Japan;"

14   (2) Sharp Corporation is thus a "foreign plaintiff" in the United States and California; (3) "a

15   foreign plaintiff's choice deserves less deference" and therefore; (4) "the Court should not defer

16   to Sharp [Corporation]'s choice of forum" in the Northern District of California.  Toshiba Opp. at

17   15-16 (citations omitted).  Toshiba's confusing argument ultimately fails because it ignores (or

18   distorts) the most critical facts here:  ***Sharp Corporation is not a plaintiff here and the Sharp***

19   ***Plaintiffs' home forum is the United States and California.***  Both Sharp Plaintiffs in this case

20   are based in the United States:  Plaintiff Sharp Electronics Manufacturing Company of America,

21   Inc. is based in California, and Sharp Electronics Corporation is based in New Jersey.  It is only

22   by invoking the BTA that Toshiba has sought to bring Japan-based non-party Sharp Corporation

23   into the mix.  But by Toshiba's own terms, this argument is meant to proceed "separate and apart

24   from the forum-selection clause."  Toshiba Opp. at 15.

25           If anything, the Sharp Plaintiffs' choice of their home forum of the U.S. should be

26   given substantial deference.  *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir.

27   1984) ("The Supreme Court [] has observed that a plaintiff's choice of forum is entitled to greater

28

1   deference when the plaintiff has chosen the home forum." (citation omitted)); *In re Air Crash*

2   *Over The Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1190-91 (C.D. Cal. 2004)

3   ("The Supreme Court has clearly and unambiguously established that courts should offer greater

4   deference to the selection of a U.S. forum by U.S. resident plaintiffs when evaluating a motion to

5   dismiss for *forum non conveniens*." (quotation and citation omitted)); *Creager v. Yoshimoto*, No.

6   05-cv-01985, 2006 WL 680555, at *2 (N.D. Cal. Mar. 14, 2006) (denying Japanese defendant's

7   forum non conveniens motion, explaining that "plaintiff's choice of forum receives great

8   deference and a strong ground for retention of jurisdiction exists"). This favors the Sharp

9   Plaintiffs' position.

10          **Witnesses.** Toshiba's argument that "most of the witnesses for the Toshiba

11   Defendants are located in Japan" ignores the reality of this case and its part of a longstanding

12   multidistrict litigation. Toshiba Opp. at 16. First, the Toshiba witnesses plainly are available in

13   the United States. Eight Toshiba employees have already been deposed in the United States in

14   this case. Discovery remains open here until at least September 2014 for additional depositions.

15   Second, irrespective of what happens with our case, the other plaintiffs in the MDL continue to

16   have claims against Toshiba here, necessitating depositions and document discovery. No

17   convenience results from having to litigate this case in two different forums.

18          **Multi-issue disputes.** Toshiba's argument that the suit should be dismissed

19   because only the Osaka District Court can hear "all of the disputes between Sharp and the

20   Toshiba Defendants" also fails. *Id.* The key authority on which Toshiba relies to support this

21   private interest argument*, Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764

22   (9th Cir. 1991), is readily distinguishable. In *Lockman*, each party had filed a competing lawsuit.

23   *Id.* at 766-67. One was in Japan for declaratory judgment over copyright claims, and the other

24   was in the U.S. for many claims, including a duplicative copyright claim. *Id.* The district court

25   dismissed the case on *forum non conveniens* grounds and ruled that all of the plaintiff's claims

26   should be heard in Japan. *Id.* at 766. The U.S.-based plaintiff then moved to amend under Rule

27   15 to dismiss its copyright claims and argued that the case should thereafter remain in the U.S.

28   because the duplicative copyright claim was no longer at issue. *Id.* at 771. The district court

1    denied amendment, and the Ninth Circuit agreed, concluding that even though the duplicative

2    copyright claim had technically been dismissed, "the copyright issue is integral to Lockman's

3    remaining claims," as "even the noncopyright claims are related to copyright issues, for which the

4    balance of conveniences strongly favors resolution of the dispute in Japan." *Id.* at 770, 772.

5    Thus, there was no efficiency from the dismissal of the copyright claim.[5]

6             There are no comparable facts here. First of all, here, there is no competing

7    lawsuit in Japan. Sharp Corporation has not sued Toshiba in Japan for any claims related to the

8    CRT antitrust conspiracy. Second, it was pivotal to the district court's ruling in *Lockman* that

9    "the copyright issue is integral to Lockman's remaining claims." *Id.* at 770. It is simply not true

10   here that resolving issues relating to Toshiba's sales to the Sharp Plaintiffs is "integral" to its joint

11   and several liability for participating in a conspiracy. To the contrary, Toshiba's joint and several

12   liability is completely independent of any sales that it made to the Sharp Plaintiffs. And

13   critically, Toshiba will remain in the MDL, so its arguments about inconvenience ring hollow.

14   *See id.* ("The inconvenience to Lockman, however, is mitigated because Lockman is already

15   participating in TEAM/Domei's Japanese copyright action.").

16            **Public interest factors.** Finally, as discussed in our prior briefing, the public

17   interest factors applicable to a *forum non conveniens* analysis also favor the Sharp Plaintiffs. The

18   first factor is whether the forum has an interest in resolving the case. *Carijano v. Occidental*

19   *Petroleum Corp.*, 643 F.3d 1216, 1232 (9th Cir. 2011). Here, the United States has a strong

20   interest in resolving this case because the Sharp Plaintiffs are United States corporations that are

21   based in New Jersey and California and manufacture and sell electronics products in the U.S.

22   This Court is more familiar with the United States antitrust law governing the claims at issue here

23   than the Osaka District Court would be. *See id.* None of the public-interest factors focusing on

24

25   _____

     [5] Toshiba's other cases—*Contact Lumber* and *Salton*—are similarly distinguishable. *See Contact*

26   *Lumber Co. v. P.T. Moges Shipping Co.*, *Ltd.*, 918 F.2d 1446, 1452 (9th Cir. 1990) (multiple
     lawsuits filed, including in Philippine courts); *Salton, Inc. v. Philips Domestic Appliances & Pers.*

27   *Care B.V.*, 391 F.3d 871, 876 (7th Cir. 2004) (entity deemed indispensable party sought to enjoin
     adversary from litigating claims in Illinois instead of Hong Kong, where indispensable party was

28   already in pending Hong Kong litigation with adversary).

"the burden on local courts and juries," "congestion in the court," and "the costs of resolving a dispute unrelated to a particular forum weighs in favor of resolving this dispute in Japan." *See id.* Certainly, judicial economy would not be furthered by forcing Toshiba to open a second front, half a globe away, in this case it is already litigating in the Northern District of California.

## III.   THE PARTIES DID NOT ADDRESS JOINT AND SEVERAL LIABILITY OR DISMISSAL WITH PREJUDICE IN THEIR BRIEFING ON THE MOTION TO DISMISS

In its motion to dismiss, Toshiba argued that the Sharp Plaintiffs' claims were "based on purchases that are governed by a contract containing a mandatory forum selection clause that selects the Osaka District Court, in Osaka, Japan." Toshiba Mot. to Dismiss at 1, Dkt. No. 2000. At no point in its several briefs in support of its motion to dismiss did Toshiba ever argue that the BTA also affected the Sharp Plaintiffs' joint and several claims against Toshiba based on injuries the Sharp Plaintiffs sustained from purchases from *other* defendants and co-conspirators.

Toshiba's prior work in this case demonstrates that it could have much more clearly brought this issue to the Court's attention. The parties could then have joined issue and the Court could have benefited from full briefing. In August 2012, over six months before the Sharp Plaintiffs filed suit, Toshiba moved to dismiss and compel arbitration for "all of Costco Wholesale Corporation's ('Costco') claims, and dismissing this action in its entirety as to the Toshiba Defendants," on the basis of an arbitration provision contained in a vendor agreement between Costco and Toshiba entity TACP. Toshiba Mot. to Compel Arbitration at 1, Dkt. No. 1332. Citing allegations identical to those of the Sharp Plaintiffs, Toshiba acknowledged that, "[a]llegations such as these establish that Costco's claims against the Toshiba Defendants are based upon purchases from: (1) the Toshiba Defendants; (2) Defendant TACP's predecessor, TACP, Inc.; (3) *co-conspirators*; and (4) customers of the Toshiba Defendants pursuant to the Vendor Agreement." *Id.* at 12 (emphasis added). It then argued, that, *"[a]s such, all of Costco's claims relate to and are intertwined with those contracts."* *Id.* (emphasis added). Toshiba also

1  explicitly argued that all of Costco's joint and several claims against Toshiba should be dismissed

2  due to the arbitration provision.  *Id.* at 1, 2, 11-12.[6]

3            Notably, both the Special Master and this Court disagreed with Toshiba's prior

4  argument that claims relating to its joint and several liability were subject to the arbitration

5  agreement.  Rather, Special Master Legge ruled, "The Toshiba Defendants' Motion to Compel

6  Arbitration is granted *with the exception of claims for co-conspirator or joint and several*

7  *liability based upon Costco's purchase of products from defendants other than the Toshiba*

8  *Defendants (the 'non-arbitrable claims')*."  Report & Recommendation at 2, Dkt. No. 1433

9  (emphasis added).  And this Court agreed with the Special Master's recommendation: "There is

10  no basis for compelling arbitration *for Plaintiff's claims based on the Toshiba Defendants'*

11  *alleged dealings with other defendants, even if the Toshiba Defendants as a corporate family*

12  *may compel arbitration based on the Vendor Agreement with TACP.  Plaintiff did not agree to*

13  *arbitrate those claims not related to its direct or indirect purchases from the Toshiba*

14  *Defendants*."  Order at 5, Dkt. No. 1543 (emphasis added).

15            Toshiba here asserted a nearly identical contract-based argument against the Sharp

16  Plaintiffs that it did against Costco.  *See Smith*, 2004 WL 515769, at *8 n.3 ("an arbitration clause

17  is, in effect, a specialized kind of forum-selection clause") (internal quotation omitted).  This time

18  around, however, Toshiba did not address joint and several claims.  Rather, Toshiba argued for

19  dismissal only because the Sharp Plaintiffs' "claims are based on purchases that are governed by

20  a contract containing a mandatory forum selection clause that selects the Osaka District Court, in

21  Osaka, Japan, as the forum to resolve disputes arising out of the contract."  Toshiba Mot. to

22  Dismiss at 1, Dkt. No. 2000.  No party thus ever briefed whether the BTA could cover the Sharp

23  Plaintiffs' joint and several claims.

24

25

26  _____

[6] Unlike Toshiba's BTA with Sharp Corporation, in Toshiba's motion to dismiss and compel
27  arbitration against Costco, both parties to the arbitration agreement—Costco and TACP—were
actually parties to the case.  The only Sharp entity that is party to the BTA—Sharp Corporation—
28  is not and has never been a party to this action.

1        Although the Sharp Plaintiffs disagree with the Court's interpretation that the BTA

2   applies to the non-signatory Sharp Plaintiffs' claims related to their transactions *with* Toshiba, the

3   Sharp Plaintiffs' proposed amendment will remove all such transactions from the case.  This

4   leaves nothing to which the BTA could apply.  The Court should retain the Sharp Plaintiffs' joint

5   and several claims against Toshiba, because the BTA cannot apply to those claims.  This result

6   would be consistent with its treatment of Costco's claims.

7        Toshiba also does not dispute that it never argued that its motion to dismiss should

8   be with prejudice.  As we explained before, this is not surprising, since Toshiba's initial motion to

9   dismiss was pursuant to Fed. R. Civ. P. 12(b)(3); Toshiba concedes that a dismissal under that

10  rule cannot be with prejudice.  *See, e.g.*, *Wright v. City of Vallejo*, No. 12-cv-03473, 2012 WL

11  5350150, at *3 (N.D. Cal. Sept. 26, 2012) (citing *In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d

12  802, 804 (9th Cir. 1991) ("A determination of improper venue does not go to the merits of the

13  case and therefore must be without prejudice.")).  And although Toshiba amended its motion in

14  light of the intervening Supreme Court decision in *Atlantic Marine Construction Co., Inc. v. U.S.*

15  *District Court for the Western District of Texas*, 134 S. Ct. 568 (2013), to clearly assert a *forum*

16  *non conveniens* argument, it did not argue at that time that dismissal should be with prejudice.

17       Toshiba now argues that "Sharp should have known that any dismissal for *forum*

18  *non conveniens* would be with prejudice."  Toshiba Opp. at 10.  But it is not true that a *forum non*

19  *conveniens* dismissal is necessarily with prejudice.  No party ever argued that dismissal with

20  prejudice would be appropriate.  Even as to Toshiba's later *forum non conveniens* motion, the

21  new authority on which Toshiba relied, *Atlantic Marine*, was entirely silent on whether dismissal

22  with prejudice would be appropriate in a *forum non conveniens* situation.  *See Atl. Marine*, 134 S.

23  Ct. at 583 n.8.

24       On the law, Toshiba relies on a single unpublished case from the Western District

25  of Washington for the sweeping assertion that all *forum non conveniens* dismissals are necessarily

26  with prejudice.  Toshiba Opp. at 10 (citing *Raima, Inc. v. Myriad France, SAS,* No. C12-

27  1166JLR, 2012 WL 6201709, at *7 (W.D. Wash. Dec. 11, 2012)).  But that conclusion is wrong.

28  A litany of cases dismiss complaints ***without prejudice*** based on *forum non conveniens* grounds.

1   *See, e.g.*, *ElcomSoft, Ltd. v. Passcovery Co. Ltd.*, 958 F. Supp. 2d 616, 623 (E.D. Va. 2013)

2   ("This case is **DISMISSED WITHOUT PREJUDICE** for *forum non conveniens*."); *Ventura*

3   *Content, Ltd. v. UGC Internet Ventures, Ltd.*, No. 12-cv-2856, 2013 WL 5312866, at *3 (N.D.

4   Ga. Aug. 13, 2013) (same); *DB Mexican Franchising LLC v. Cue*, No. 11-cv-0515, 2012 WL

5   253189, at *5 (S.D. Cal. Jan. 26, 2012) (same).  In fact, in *Avila v. Chiquita Fresh North*

6   *America, LLC*, the Ninth Circuit recently remanded a case back to the district court "with

7   directions to correct the dismissal order to reflect that dismissal of the complaint is 'without

8   prejudice'" where the district court had dismissed with prejudice for *forum non conveniens*.  No.

9   12-56938, 2014 WL 1465097, at *1 (9th Cir. Apr. 15, 2014).  The court explained that "dismissal

10  with prejudice" was "synonymous" with "final judgment on the merits" and therefore was

11  inappropriate where district court's dismissal for *forum non conveniens* "clearly did not intend to

12  finally decide the merits."  *Id.* (citation omitted).

13          Toshiba's remaining arguments are irrelevant or unsupported.  Toshiba argues

14  that, despite filing a motion to amend and attaching a proposed amended complaint, what the

15  Sharp Plaintiffs really meant to do was file a motion for reconsideration under Local Rule 7-9.

16  While the Court is always free, pursuant to Local Rule 7-9 and Federal Rule 54(b), to reconsider

17  its orders on its own initiative, *see Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996); *U.S.*

18  *v. Vittaly*, No. C 04-3186 MHP, 2006 WL 3834229, at *2 (N.D. Cal. Dec. 28, 2006); *Zurich*

19  *Capital Mkts. Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005), the Sharp Plaintiffs

20  made clear at the very start of their motion that they did not "seek to modify or re-argue [] in any

21  way" the Court's prior ruling.  Mot. to Amend at 2.  The concerns expressed by the Court in its

22  Order are remediable through the proposed amended complaint, without any need for

23  reconsideration under Local Rule 7-9.  Nonetheless, the Sharp Plaintiffs respectfully submit that

24  they would meet the standards for reconsideration under Local Rule 7-9, because the Court is free

25  to reconsider "dispositive legal arguments."  *Travelers Prop. Cas. Co. of Am. v. Centex Homes*,

26  No. 11-cv-3638-SC, 2013 WL 4528937, at *3 (N.D. Cal. Aug. 26, 2013); Civil L.R. 7-9(b).

27

28

1    For the foregoing reasons, the Sharp Plaintiffs respectfully request that the Court

2    grant the Sharp Plaintiffs leave to file the proposed amended complaint.

3

4    DATED:  April 23, 2014                By: /s/  *Craig A. Benson*
                                          _____

5
                                          Kenneth A. Gallo (*pro hac vice*)
6                                         Joseph J. Simons (*pro hac vice*)
                                          Craig A. Benson (*pro hac vice*)
7                                         PAUL, WEISS, RIFKIND, WHARTON & GARRISON  LLP
                                          2001 K Street, NW
8                                         Washington, DC  20006
                                          Telephone:  (202) 223-7300
9                                         Facsimile:  (202) 223-7420
                                          Email:  kgallo@paulweiss.com
10                                        Email:  jsimons@paulweiss.com
                                          Email:  cbenson@paulweiss.com
11
                                          Stephen E. Taylor (SBN 058452)
12                                        Jonathan A. Patchen (SBN 237346)
                                          TAYLOR & COMPANY LAW OFFICES, LLP
13                                        One Ferry Building, Suite 355
                                          San Francisco, California  94111
14                                        Telephone:  (415) 788-8200
                                          Facsimile:  (415) 788-8208
15                                        Email: staylor@tcolaw.com
                                          Email: jpatchen@tcolaw.com
16
                                          *Attorneys for Plaintiffs*
17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

On April 23, 2014, I caused a copy of **SHARP ELECTRONICS CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.'S REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND** to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

DATED:  April 23, 2014                    By: /s/  *Craig A. Benson*                                 
                                                        Craig A. Benson