Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to<br>Case No. 13-cv-01173-SC<br><br>SHARP ELECTRONICS CORP., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HITACHI, LTD., *et al.*,<br><br>Defendants. | **THE TOSHIBA DEFENDANTS' SURREPLY IN OPPOSITION TO SHARP'S MOTION FOR LEAVE TO AMEND**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:     May 30, 2014<br>Time:    10:00 a.m.<br>Before:  Hon. Samuel Conti |

# TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................................................................1

ARGUMENT ......................................................................................................................................1

I.    Sharp Had Both Constructive And Actual Notice Of This Court's Ruling On The Costco Arbitration Agreement And Could Have Raised This Issue Earlier ..................................................................................................................................1

II.    Sharp's Proposed Amendment Is Futile, As Confirmed By The Meritlessness of Sharp's New Arguments Raised In Its Reply .....................................4

CONCLUSION ...................................................................................................................................9

# **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                                                <u>Page</u>

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
   No. 06-00715 SC, 2007 WL 3010743 (N.D. Cal. Oct. 12, 2007) ................................. 8

*Fogade v. ENB Revocable Trust*,
   263 F.3d 1274 (11th Cir. 2001) ........................................................................................ 8

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983) .............................................................................................................. 5

*Ruiz v. GAP, Inc.*,
   No. 07-5739 SC, 2009 WL 250481 (N.D. Cal. Feb. 3, 2009) .................................... 1, 8

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960) .......................................................................................................... 4

## **Other**

3 Int'l Contract Manual § 62:3 (Dec. 2013) ............................................................................ 5

## INTRODUCTION

In its reply memorandum, Sharp for the first time urges this Court to reconsider its dismissal with prejudice in light of this Court's January 28, 2013 Order regarding the arbitration of Costco's claims. But the January 28, 2013 Order on Costco has no bearing on whether Sharp's claims belong in Osaka, Japan. The proper forum for Sharp's claims is determined by the terms of the Sharp/Toshiba BTA, not by the very different terms of the Costco/Toshiba Vendor Agreement. The BTA covers "disputes," "doubts," and "unsolved items" between Sharp and Toshiba related to the supply of goods to Sharp, and all of Sharp's claims here are captured, despite any attempt by Sharp to circumvent the BTA through artful pleading. Furthermore, as a threshold matter, Sharp has no justification for raising its Costco-based arguments now for the first time, instead of earlier in opposing Toshiba's motion to dismiss.

## ARGUMENT

### I.  Sharp Had Both Constructive And Actual Notice Of This Court's Ruling On The Costco Arbitration Agreement And Could Have Raised This Issue Earlier

Sharp's reply memorandum raises a number of new excuses as to why Sharp failed to raise its joint-and-several issue when opposing the Toshiba Defendants' motion to dismiss. None of these new excuses is valid. As such, Local Rule 7-9 and *Ruiz v. GAP, Inc.*, No. 07-5739 SC, 2009 WL 250481 (N.D. Cal. Feb. 3, 2009) (Conti, J.) — as well as "substantial justice" (Sharp Reply at 1) — preclude reconsideration of this Court's March 13, 2014 dismissal with prejudice. This Court should stand by its dismissal with prejudice, leaving Sharp to pursue its claims in Osaka, Japan.

As its first purported excuse for not raising the joint-and-several issues in a timely fashion, Sharp represents that "it recently came to [Sharp's] attention" that "long before the Sharp Plaintiffs joined this case" a "potentially relevant contrary legal authority" was decided by this Court and "Toshiba did not remind the Court of this potentially relevant ruling" when Toshiba moved to dismiss. Sharp Reply at 1. Every element of these representations is misleading, if not demonstrably wrong. In fact, the ruling in question

(the January 28, 2013 Order regarding the arbitrability of Costco's claims) was sent to Sharp's counsel when issued, Sharp's counsel has been active in this case since long before the January 28, 2013 ruling, that ruling addressed materially different contractual language and, in any event, Toshiba *did* cite and discuss that ruling in its motion to dismiss Sharp's complaint. Sharp, in short, has no one to blame except itself for failing to raise the Costco ruling earlier (but that failure is immaterial anyway because the ruling is not determinative here).

Sharp's assertion that the January 28, 2013 Order only "recently" came to its attention is a contrivance because Sharp and its counsel have been active in this litigation for almost two years. Sharp Corporation (the parent company) first appeared in this Court, represented by the firm of Paul Weiss and by the firm of Bingham McCutchen, on June 27, 2012 when they filed an application with this Court pursuant to 28 U.S.C. § 1782. Toshiba Att. 10. In that application, Sharp Corporation explained that it along with certain of its affiliates — including affiliates upon whose purchases Sharp brings claims in this matter — were plaintiffs in litigation filed in Korea that concerned "the same illegal cartel activity" as this litigation. *Id.* at 1 (memorandum of points and authorities). Sharp Corporation explained that it sought discovery that had been produced in this case for use in the Korean lawsuit. Sharp Corporation's application was signed by its counsel Colin C. West of Bingham McCutchen, with Paul Weiss attorneys as co-counsel. *Id.* at 12 (memorandum of points and authorities). On June 27, 2012, Mr. West of Bingham McCutchen and the Paul Weiss lawyers (admitted *pro hac vice* for Sharp Corporation) also filed a motion to relate the § 1782 petition to this MDL. Toshiba Att. 11. That motion was granted. Toshiba Att. 12.

On August 6, 2012, a Settlement Administrator filed a declaration with respect to the direct purchaser plaintiffs' settlements with respect to the Chunghwa defendants and Philips defendants. Toshiba Att. 13. That declaration indicated that Sharp Electronics Corporation, Sharp Manufacturing Company of America, and Sharp Electronics Manufacturing Company of America had submitted requests to be excluded from the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DPPs' settlements with Chunghwa and Philips, signifying an intention on the part of these Sharp entities to pursue opt-out claims. *Id.* at 16.

Briefing on our motion to compel arbitration with respect to Costco began on August 24, 2012 (ECF No. 1332), and culminated in the Court's January 28, 2013 Order Adopting Special Master's Report and Recommendation Regarding Toshiba Defendants' Motion To Compel Arbitration. Toshiba Att. 14. The Pacer notification of this decision lists Sharp Corporation counsel Colin C. West of Bingham McCutchen, co-counsel with Paul Weiss, as a recipient. Toshiba Att. 15. Then, on March 15, 2013, Sharp (*i.e.*, the Plaintiffs here) filed its original complaint (Toshiba Att. 16), presumably after some sort of pre-filing investigation to ensure that it complied with all pertinent decisions and orders that had been issued in the case, including the Court's January 28, 2013 Order involving Costco.

On December 13, 2013, the Court issued an Order Granting in Part and Denying in Part the Philips Defendants' Motion to Compel Arbitration. Toshiba Att. 17 at 11. In that Order, the Court expressly relied upon its January 28, 2013 Order involving Costco. *Id.* The Pacer notification of this decision lists Sharp counsel Craig Benson of Paul Weiss as a recipient. Toshiba Att. 18. Given these facts, it is indisputable that Sharp and its counsel were on notice of the Court's January 28, 2013 Order on Costco long before this Court's March 13, 2014 dismissal with prejudice. Sharp's contention that the Costco Order "recently came to our attention" is unsupportable.

Sharp's statement that "Toshiba did not remind the Court of this potentially relevant ruling" (Sharp Reply at 1) is likewise unsupportable. In our October 7, 2013 motion to dismiss, we expressly relied on the Court's January 28, 2013 Costco Order. On page 9 of our motion, we cited that decision for the proposition that arbitration and forum-selection clauses apply to state antitrust claims. On pages 12 and 13 of our motion, we discussed that decision as support for the proposition that non-signatories can enforce arbitration clauses. If Sharp and its counsel were, contrary to fact, not already on notice of the Costco

order prior to our motion to dismiss, our express citation and discussion of that Order certainly put Sharp and its counsel on notice then, prior to their opposition.

In short, it is meritless for Sharp to contend now that it only had notice of the Costco Order after this Court's March 13, 2014 dismissal with prejudice. Sharp had ample notice of the Costco order and could have tried to make an argument based on it any time prior to this Court's dismissal with prejudice. As already established, the Toshiba Defendants' motion expressly sought dismissal without qualification, condition, or exception, so it was incumbent upon Sharp to raise any arguments to the contrary. Sharp invokes "substantial justice" as the touchstone here, but in so doing ignores the fact that it has had numerous opportunities to make the arguments now raised in its reply brief. Sharp has no valid excuse for its dilatory actions and its attempt to shift the blame to Toshiba is nothing short of disingenuous.

**II.   Sharp's Proposed Amendment Is Futile, As Confirmed By The Meritlessness of Sharp's New Arguments Raised In Its Reply**

In any event, the Court's January 28, 2013 Order concerning Costco is simply not "contrary authority." By that Order, the Court considered an arbitration clause that covered "claims and disputes" that "arise out of or relate to these Standard Terms or any agreement between Vendor and PriceCostco or to their performance or breach (including any text or statutory claim) . . . ." Toshiba Att. 14 at 3. The Court adopted the Special Master's report and recommendation, granting the Toshiba Defendants' motion to compel arbitration in part, "with the exception of plaintiff's claims for co-conspirator or joint and several liability based on Plaintiff Costco's purchase of products from defendants other than the Toshiba Defendants." *Id.* at 10. The Court declined to require arbitration for claims based upon co-conspirator or joint-and-several liability because Costco "did not agree to arbitrate those claims not related to its direct or indirect purchases from the Toshiba Defendants." *Id.* at 5. The Court based this aspect of its ruling on *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960), which held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has

not agreed so to submit." In so doing, the Court recognized that the scope of an arbitration clause is based on the contract language actually agreed to by the parties.

The Court's January 28, 2013 Order is not "contrary authority" with respect to joint-and-several liability because the language of the Vendor Agreement at issue in the Costco matter differs materially from the language contained in Sharp's BTA. Whereas the Vendor Agreement covers "claims and disputes," the BTA covers "disputes," "doubts," and "unsolved items." As noted in our opposition at page 14, if there is a "doubt" about whether the BTA covers joint-and-several claims, such doubts must be resolved in the first instance by the Osaka District Court. *Cf. Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including where "the problem at hand is the construction of the contract language itself"). Further, in executing the BTA, the parties may not have anticipated the possibility of there being a question of joint-and-several liability that might arise in the future. Such an unaddressed issue is an "unsolved item," one that also must be resolved in the Osaka District Court.

Relying upon a single sentence of the International Contract Manual (which it did not discuss in its original motion), Sharp suggests that Article 21.1 of the BTA is simply a type of "good faith" clause that is commonly included in Japanese agreements. Sharp Reply at 5. Sharp, however, does not provide a copy of the relevant portion of the International Contract Manual nor does it quote the sentence that immediately follows the sentence it relies on. When read in context, the relevant portion of the International Contract Manual provides as follows:

> In most agreements in Japan, contracting parties usually include a clause in their agreement that stipulates that, if a dispute should arise between them with regard to the rights and duties provided in the contract, the parties will confer in good faith and settle the dispute harmoniously through consultation. ***Where disputes cannot be so settled, the parties of the contract need to select between litigation and arbitration to resolve disputes.***

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Toshiba Att. 19 (emphasis added). The second, bolded sentence is important because it confirms the interrelationship between the good faith consultations and the litigation or arbitration that occurs if the consultations fails. The matters that are the subject of the good faith consultations are the matters that will go to litigation or arbitration, if necessary. The BTA follows this cascading structure to the letter. Article 21.1 provides that Toshiba and Sharp consult with each other in good faith with respect to (1) "disputes" that arise in relation to the BTA (or Individual Agreements); (2) "doubts" that arise in relation to the BTA (or Individual Agreements); or (3) "unsolved items" in the BTA (or Individual Agreements). Consistent with the Japanese practice described in the International Contract Manual, Article 21.2 then specifies that any litigation will occur in the Osaka District Court. Even Sharp agrees that contracts should be read as a whole. Sharp Reply at 6. When that holistic analysis is done (and given Sharp's recognition of Japanese practice, as reflected in the International Contract Manual), it is apparent that Sharp and Toshiba agreed to engage in good faith consultations with respect to a variety of matters between them (both matters specified in the BTA as well as "unsolved" in the BTA) and then, should litigation ensue, such litigation would occur only in the Osaka District Court.

Sharp asserts that "Toshiba's joint and several liability is completely independent of any sales that it made to the Sharp Plaintiffs." Sharp Reply at 10. How can that be? Sharp's complaint did not contend that there were two CRT price-fixing conspiracies, one which affected prices paid to Toshiba and another which affected prices it paid to other companies. *See* Sharp FAC § 1 ("Sharp brings this action to recover damages on account of the antitrust injuries it incurred as a result of a long-running conspiracy by suppliers of cathode ray tubes ('CRTs') to coordinate and fix the prices of CRTs and exchange detailed competitive information."). In addition, Sharp's expert calculated damages allegedly caused by a "global CRT conspiracy." Expert Report of Jerry A. Hausman, dated April 15, 2014, ¶ 30. Sharp's assertion, moreover, ignores the fact that the Toshiba Defendants indisputably *did make sales* to Sharp and Sharp believes that these sales were made at artificially high prices, facts that Sharp acknowledges again in its motion for leave.

*See* Sharp Br. at 3 (noting that "the Sharp Plaintiffs were injured when they purchased CRTs manufactured by the defendants"); at 4 (discussing "Toshiba's own sales to the Sharp Plaintiffs"). Sharp cannot, by the stroke of its pleading pen, disclaim damages from Toshiba sales transactions, while maintaining joint-and-several claims, and thereby avoid the terms of the BTA. Sharp's disclaimer of damages from Toshiba sales transactions cannot erase the unavoidable fact that Toshiba sold to Sharp. Sharp's cynical alteration of its damages demand does not negate the parties' intention, as reflected in the BTA, that where Toshiba sells product to Sharp, their "disputes," "doubts," or "unsolved items" shall be litigated in Osaka.

Furthermore, Sharp repeatedly asserts that the BTA "governs only relations relating to the supply and manufacture of goods." Sharp Reply at 4. But CRTs are "goods," and Sharp's claims, even if limited to joint-and-several claims, surely relate to the supply and manufacture of CRTs. They relate to the supply and manufacture of CRTs by alleged co-conspirators and, because Sharp alleges complicity by Toshiba, also relate to the supply and manufacture of CRTs by Toshiba. As long as Sharp is maintaining claims against Toshiba relating to the supply and manufacture of CRTs, the claims are covered by the BTA. (Contrary to Sharp's suggestion (Sharp Reply at 5), Toshiba does not contend that the BTA applies to all lawsuits "over any subject matter," but only as to those relating to the sale or manufacture of goods.)

In its reply memorandum, Sharp persists in arguing as though Sharp Corporation is a stranger to this action. But the multi-faceted appearance of the firm of Paul Weiss in this action — first as counsel for parent company Sharp Corporation (expressly on behalf of itself and various of its subsidiaries) and then as counsel for the subsidiaries asserting claims against Toshiba — confirms that the Sharp corporate family ought to be considered as a single unit under the direction of Sharp Corporation for purposes of this action. Indeed, Paul Weiss also has represented Sharp Corporation throughout the parallel LCD proceedings, including as counsel on Sharp Corporation's felony guilty plea, which resolved the LCD criminal exposure of both Sharp Corporation and its LCD-selling

subsidiaries. Sharp (through Paul Weiss) criticizes Toshiba for "pretend[ing]" that Sharp Corporation is a party to this action and that the Plaintiffs are based in Japan. Sharp Reply at 2. In fact, it is Sharp that wishes to "pretend" that Sharp Corporation never appeared in this case, that the Sharp corporate family is not based in Japan, and that the head of that family never committed itself to the terms of the BTA, including the selection of Sharp Corporation's home town of Osaka as the forum for disputes, doubts, and unsolved items relating to the BTA (and individual agreements associated with the BTA).

While Sharp, for the first time in its reply, relies upon *Fogode v. ENB Rovocable Trust*, 263 F.3d 1274 (11th Cir. 2001), and asserts that the case "resembles" this one (Sharp Reply at 7), in fact *Fogode* did not even involve a forum-selection clause, the initial dismissal was *without* prejudice, and the sole issue on appeal relative to *forum non conveniens* was whether the district court retained jurisdiction after dismissal; the Eleventh Circuit held that the district court retained jurisdiction because it never set forth judgment on a "separate document" as required under Rule 58 to trigger the time for appeal. Sharp has no valid authority to support its effort to gerrymander its allegations to undo a dismissal with prejudice.

At the very end of its reply, Sharp sheepishly addresses its failure to comply with Local Rule 7-9 by stating that "[t]he concerns expressed by the Court in its Order are remediable through the proposed amended complaint, without any need for reconsideration under Local Rule 7-9." Sharp Reply at 14. Sharp's attempt to re-write the rules to suit its own shortcomings must be rejected. In our response, we explained that "[a] motion for leave to amend may not act as a substitute for a motion for reconsideration" (Toshiba Response at 7) and, in support of this proposition, we relied upon this Court's decision in *Ruiz v. GAP, Inc.*, No. 07-5739 SC, 2009 WL 250481 (N.D. Cal. Feb. 3, 2009) (Conti, J.). There, the Court cited Local Rule 7-9(a) in explaining that "Ruiz should have sought leave of the Court to file a motion for reconsideration of the dismissal." *Id.* at *3. The Court further explained that "Ruiz's motion for leave to amend the Complaint to add a claim that was previously dismissed with prejudice is procedurally improper." *Id.* Even though *Ruiz*

was prominently displayed in our response, Sharp chose to ignore it in its reply. All parties are presumed to be familiar with the Local Rules. And adherence to those Local Rules "is not optional." *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-00715 SC, 2007 WL 3010743, at *4 (N.D. Cal. Oct. 12, 2007) (Conti, J.). Indeed, all counsel admitted *pro hac vice* in this MDL — including Sharp's counsel — have committed to follow the Local Rules. Sharp should not be rewarded for its cavalier disregard of those Local Rules.

## CONCLUSION

For these reasons and the reasons contained in our response, the Court should deny Sharp's motion for leave to amend its complaint.

Respectfully submitted,

Dated: April 30, 2014                        WHITE & CASE LLP

By: */s/ Lucius B. Lau*
Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
701 Thirteenth Street, N.W.
Washington, DC  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc.*