# ATTACHMENT 10

| | |
|---|---|
| 1 | Kenneth A. Gallo (D.C. Bar No. 371253, *pro hac vice* admission pending) |
| | (kgallo@paulweiss.com) |
| 2 | Bruce H. Searby (CA State Bar No. 183267, *pro hac vice* admission pending) |
| 3 | **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP** |
| | 2001 K Street, NW |
| 4 | Washington, DC 20006-1047 |
| | Telephone: (202) 223-7300 |
| 5 | Facsimile: (202) 204-7359 |
| | Email: bsearby@paulweiss.com |
| 6 | |
| | Colin C. West (CA State Bar No. 184095) |
| 7 | **BINGHAM MCCUTCHEN LLP** |
| | Three Embarcadero Center |
| 8 | San Francisco, CA 94111-4067 |
| | Telephone: (415) 393-2000 |
| 9 | Facsimile: (415) 393-2286 |
| | Email: colin.west@bingham.com |
| 10 | |
| | Attorneys for Petitioner |
| 11 | SHARP CORPORATION |

FILED 2012 JUN 27 P 1:24
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

CV 12-80-151 MISC    RS

Miscellaneous Case No.

| | |
|---|---|
| **IN RE: APPLICATION FOR JUDICIAL ASSISTANCE FOR THE ISSUANCE OF SUBPOENAS PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING** | ***EX PARTE* APPLICATION OF SHARP CORPORATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Sharp Corporation, Petitioner | |

- 1 -

*EX PARTE* APPLICATION FOR ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES – Case No. _____

1    Petitioner Sharp Corporation ("Sharp") hereby applies *ex parte* pursuant to 28
2 U.S.C. § 1782(a) for permission to issue discovery subpoenas to a custodian (or custodians) of
3 records who reside or can be found within this district, the Northern District of California, to
4 obtain documents for use in connection with an ongoing plaintiffs' action that Sharp and various
5 of its subsidiaries has filed in the Republic of Korea ("Korean Litigation"). The proposed
6 subpoenas seek documents that have been obtained by the custodians during the course of
7 discovery in antitrust litigation pending in the Northern District of California, in the custodians'
8 capacity as attorneys of record for class plaintiffs. The litigation in this district concerns
9 essentially the same illegal cartel activity in the manufacture and sale of Cathode Ray Tubes
10 ("CRTs") that is the subject of the Korean Litigation.

    Sharp seeks the appointment of its local counsel, Colin West of the law firm of
Bingham McCutchen LLP, as Commissioner to issue and cause to be served the proposed
subpoenas upon the custodians of records, to receive the requested documents, and to take any
testimony that Sharp may find necessary in connection with the production of the documents, in
accordance with the Federal Rules of Civil Procedure.

    The documents that Sharp would obtain from the discovery hereby requested are
subject to a protective order in the antitrust litigation pending in this district. Accordingly, any
use in the Korean Litigation of these documents should be conditioned upon acceptance of the
terms of that protective order, as appropriately modified, or of a protective order in the Korean
Litigation based upon substantially similar terms safeguarding the confidentiality interests of the
relevant parties.[1]

    This application is based upon the attached Memorandum of Points and
Authorities, the declaration of Bruce H. Searby and exhibits attached thereto, all matters of
///
///

---

[1] As lead Plaintiff in the Korean Litigation, Sharp is the petitioner in this application. However, the documents sought to be discovered are intended for use not only by Sharp but also by its subsidiaries that are also plaintiffs in the Korean Litigation. Each plaintiff in the Korean Litigation will separately accept the confidentiality terms required for their use of the documents.

- 2 -

which the Court may take judicial notice, and such further written and oral argument as may be presented to the Court.

Dated: June 27, 2012

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

    Kenneth A. Gallo (D.C. Bar No. 371253, *pro hac vice* admission pending)
    Bruce H. Searby (CA State Bar No. 183267, *pro hac vice* admission pending)

BINGHAM MCCUTCHEN LLP

By: _____
    Colin C. West (CA State Bar No. 184095)

Attorneys for Petitioner
SHARP CORPORATION

- 3 -

EX PARTE APPLICATION FOR ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES – Case No. _____

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this *ex parte* application, Petitioner Sharp Corporation ("Sharp") respectfully requests that the Court enter an order pursuant to 28 U.S.C. § 1782(a) appointing a commissioner with the power to issue subpoenas to custodians in possession of documents acquired in antitrust litigation currently pending before the Honorable Judge Samuel Conti in the Northern District of California, *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, Case No. 3:07-5944-SC (the "N.D. Cal. Litigation"). The intended subpoena recipient (or recipients), counsel for a putative class of direct purchaser from the law firm of Saveri & Saveri, Inc., possesses a large volume of discovery detailing collusive meetings in which the defendants conspired to fix, raise, maintain, and stabilize prices to defendants in the manufacture and sale of cathode ray tubes ("CRTs") and products containing CRTs. Sharp seeks the production of these documents under § 1782(a) to help it pursue claims in an ongoing lawsuit it has filed in the Republic of Korea ("Korean Litigation"). The Korean Litigation was filed in Suwon District Court, 2010gahap21125 Claim for Damages (gi). Like the N.D. Cal. Litigation, the Korean Litigation alleges the same illegal cartel activity by the same group of competitors, but concerns damages to Sharp for CRTs and products containing CRTs from purchases being in or for the Asian market.

Sharp satisfies all statutory requirements for this Court to have authority to allow Sharp, as an "interested party," to seek documents in the possession of persons within this district for use in Korean court. An application under § 1782 can be an appropriate means for a foreign litigant to obtain documents from counsel who are in custody and control of documents for litigation purposes, if the attorney-custodian resides or is found in the district.

Moreover, the Court should exercise its discretion to order this discovery. Sharp's application is firmly within the proper purposes of providing judicial assistance in foreign proceedings. The evidence sought would be welcome and most useful in the Korean court. Lastly, the discovery process would impose no undue intrusion or burden upon the subpoenaed attorney-custodians.

---

As the N.D. Cal. Litigation is subject to a protective order for dissemination of protected documents, access to and use of the documents in the Korean Litigation will be conditioned upon acceptance and extension of the terms of the protective order, or substantially similar terms, to the Korean Litigation.

This application is properly made *ex parte* because the custodian of records will have a procedural opportunity to challenge the subpoena upon their receipt and prior to a reasonable date for return.

For these and the other reasons discussed herein, this Court should grant Sharp the relief requested under § 1782.

## II. FACTUAL AND PROCEDURAL BACKGROUND

CRTs consist of evacuated glass envelopes that contain an electron gun and a phosphorescent screen and evoke color images. Throughout the 1990s and early 2000s, CRTs were frequently a component piece in color display tubes ("CDTs") for computers and in color picture tubes ("CPTs") for televisions. Sharp was a direct purchaser of CPTs as components in the televisions it manufactured and sold around the world.

### A. N.D. Cal. Litigation

The N.D. Cal. Litigation is a Multi-District Litigation ("MDL") proceeding consolidated for pretrial purposes and pending before Judge Conti. Included in it is a class action brought on behalf of companies who were direct purchasers of CDTs, CPTs and products containing CDTs and/or CPTs. The Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("DPP Am. Compl."), filed on March 16, 2009,[2] alleges a horizontal antitrust conspiracy that began at least as early as March 1995 and continued until at least November 25, 2007 between manufacturers of CRTs and CRT Products. (*See* DPP Am. Compl. (Doc. No. 436) ¶¶ 1, 6, 213-221).[3] The complaint also alleges that 12 manufacturers and related corporate

---

[2] Sharp hereby requests that the Court take judicial notice of this and other pleadings referenced herein that have been filed with it in the MDL proceeding docketed as *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, Case No. 3:07-5944-SC.

[3] Sharp is a putative class member of the DPP class. Sharp has until approximately July 23, 2012 to decide to opt out of the class action.

- 2 -

entities participated in the conspiracy, including but not limited to Chunghwa entities.[4] (*See* DPP Am. Compl. ¶¶ 24-80).

As alleged by the DPP class, the CRT industry faced economic pressures as consumer preferences changed and accordingly threatened the sustainability of the industry. (DPP Am. Compl. ¶ 2). To maintain price stability, increase profitability, and decrease the erosion of pricing in the CRT market, manufacturers of CRTs conspired to fix, raise, maintain, and stabilize their prices. (*Id.* ¶¶ 3-6, 136-143). The conspiracy was carried out through bilateral meetings that began in at least March of 1995 and through informal group meetings also beginning in 1995. (*Id.* ¶¶ 134-136). By 1997, these group meetings had become more formalized. The formalized group meetings, known as "Glass Meetings," included meetings for employees at every level of the company: Top Meetings, Management Meetings and Working Level Meetings. There were also Glass Meetings on golf courses known as Green Meetings. (*Id.* ¶ 141). Between 1995 and 2007, there were at least 500 meetings among the Defendants. (*Id.* ¶¶ 6, 134). These meetings occurred in various locales, including Taiwan, South Korea, Indonesia, Thailand, Singapore, Malaysia, China, the U.K. and Europe. (*Id.*) These meetings

---

[4] The Direct Purchaser Plaintiffs' Consolidated Amended Complaint names the following defendants: Chunghwa Picture Tubes, Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., Daewoo International Corporation, Daewoo Electronics Corporation f/k/a/ Daewoo Electronics Company, Ltd., Orion Electric Company, Daewoo-Orion Societe Anonyme, Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi America, Ltd., Hitachi Asia, Ltd., Hitachi Electronic Devices (USA), Shenzhen SEG Hitachi Color Display Devices, Ltd., Irico Group Corporation, Irico Group Electronics Co., Ltd., Irico Display Devices Co., Ltd., LG Electronics, Inc., LG Electronics USA, Inc., LG Electronics Taiwan Taipei Co., Ltd., LP Displays International, Ltd., Panasonic Corporation f/k/a Matsushita Electric Industrial Co, Ltd., Matsushita Electronic Corporation (Malaysia) Sdn Bhd., Panasonic Corporation of North America, Panasonic Consumer Electronics Co., Koninklijke Philips Electronics N.V., LG Phillips Displays, Philips Electronics Industries Ltd., Philips Electronics North America, Philips Consumer Electronics Co., Philips Electronics Industries (Taiwan), Ltd., Philips da Amazonia Industria Electronica Ltda., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung SDI (Malaysia) Sdn Bhd., Samsung SDI Co., Ltd., Samsung SDI America, Inc., Samsung SDI Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzhen Samsung SDI Co., Ltd., and Tianjin Samsung SDI Co., Ltd., Samtel Color, Ltd., Tatung Company of America, Inc., Thai CRT Company, Ltd., Toshiba Corporation, Toshiba America, Inc., Toshiba America Consumer Products LLC, Toshiba America Consumer Products, Inc., Toshiba America Consumer Products, Inc., Toshiba America Electronic Components, Inc., Toshiba America Information Systems, Inc., and Toshiba Display Devices (Thailand) Company, Ltd.

- 3 -

*EX PARTE* APPLICATION FOR ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES – Case No. _____

1  included representatives from the highest levels of the respective companies, as well as regional
2  managers and others. (*See id.* ¶¶ 136-153).

3  On March 27, 2012, interim lead counsel for the DPP class, R. Alexander Saveri
4  ("Saveri") submitted a notice of motion and motion for certification of a settlement class and
5  preliminary approval of a class action settlement as to the Chunghwa and Philips defendants.
6  ("Mot. for Class Certification and Settlement Approval" (Doc. No. 1115)). In a declaration in
7  support of this motion, Saveri noted that plaintiffs have received over 5 million pages of
8  documents produced by defendants. (Declaration of R. Alexander Saveri in Support of Mot. for
9  Class Certification and Settlement Approval ("Saveri Decl.") (Doc. No. 1115-1) ¶ 7).

10  The documents obtained in discovery are subject to a protective order, which
11  prohibits disclosure of confidential or highly confidential information except to counsel and
12  those to whom disclosure is reasonably necessary for this litigation or "unless otherwise ordered
13  by the Court or permitted in writing by the Designating Party." (Stipulated Protective Order
14  (Doc. No. 306) §§ 7.2, 7.3).

15  Judge Conti entered the Preliminary Order of Class Certification and Settlement
16  with Chunghwa and Philips on May 3, 2012. ("Preliminary Order of Class Certification and
17  Settlement") (Doc. No. 1179)).

### B. The Korean Litigation

On November 5, 2010, Sharp and several of its Asian subsidiaries[5] filed a
complaint in South Korea's Suwon District Court, which was assigned the case file identifier of
"2010gahap21125 Claim for Damages (gi)" (the "Korean Complaint"), an English translation of
which is attached to the declaration of Bruce H. Searby ("Searby Decl."), counsel for Sharp in
the instant application. (Searby Decl., Ex. A). The Korean Complaint named as defendants
Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Sdn Bhd., Samsung SDI (HK) Ltd., Shenzhen

---

[5] Sharp's affiliated companies that are also plaintiffs in the lawsuit are Sharp Manufacturing Corporation (M) Sdn. Bhd., Sharp Electronics (Malaysia) Sdn. Bhd., Sharp Roxy Appliances Corporation (M) Sdn. Bhd., P.T. Sharp Electronics Indonesia, Sharp Manufacturing (Thailand) Co., Ltd., Sharp Thai Co., Ltd., Nanjing Sharp Electronics Co., Ltd., Sharp India Ltd., and Sharp (Phils.) Corporation.

- 4 -

1  Samsung SDI Co., Ltd., and Tianjin Samsung SDI Co., Ltd., LG Philips Display Co., Ltd., PT
2  LP Displays Indonesia, LG Philips (Singapore) Pte. Ltd., LG Philips (Shuguang) Displays, and
3  Meridian Solar & Display Co. (together, the "Korean Litigation Defendants") (*See* Searby Decl.
4  ¶ 5; Searby Decl., Ex. A at 12-13).

5  Based on information and belief, Sharp alleged that Korean Litigation Defendants
6  and other CRT manufacturers including Chunghwa entities, Daewoo entities, Hitachi entities,
7  Irico entities, Panasonic entities, Samtel entities, Tatung Company of America, Inc., Thai CRT,
8  Toshiba entities, and MT Picture Display Co., Ltd. ("MTPD"), engaged in illegal collusive
9  conduct, which violated the Monopoly Regulation and Fair Trade Act of Korea. (*See* Searby
10 Decl., Ex. A at 13-15 & n.2). The scope of cartel activity alleged in the Korean Litigation
11 occurred between January 1, 2001 and the date of the filing of the Korean Complaint in
12 November 2010. (Searby Decl., Ex. A at 2). The Korean Litigation Defendants and their
13 competitors agreed to fix a minimum target price for CRTs and selling them at prices equal to or
14 greater than such prices. (*Id.*). This conspiracy was carried out at Glass Meetings in Taiwan,
15 Korea, Malaysia, China, Thailand, Indonesia and elsewhere where the Korean Litigation
16 Defendants agreed to charge certain prices for CRTs and exchanged pricing information to
17 achieve the agreed-upon prices. (*Id.*). Sharp seeks damages for the overcharges in purchases
18 from the Korean Litigation Defendants, subject to appraisal. (*Id.*)

19 The claims in the Korean Litigation as to purchases in or for the Asian market are
20 based substantially on the same factual nucleus as the N.D. Cal. Litigation, namely, price-fixing
21 of CRTs at multilateral and bilateral meetings held by the defendants and their competitors.

22 Sharp's Korean counsel advises that South Korea, unlike the United States, does
23 not give civil litigants rights of liberal discovery from adversaries and third parties. (Searby
24 Decl. ¶ 8). Sharp has the limited procedural ability under Korean rules of civil procedure to
25 petition the court to order discovery, provided that Sharp can establish with specificity the
26 documents that will contain probative evidence. *See* Korean Code of Civil Procedure, Art. 345
27 (requiring that the party seeking a court order for production of documents must specify (i) the
28 indication of the document, (ii) the purport of the document, (iii) the holder of the document, (iv)

- 5 -

*EX PARTE* APPLICATION FOR ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES – Case No. _____

the facts sought to be proven by, and (v) the causes of the obligation to produce the requested documents). (*Id.*; Searby Decl., Ex. B at Art. 345). However, thus far, Sharp has not been able to demonstrate the existence, holder and location of specific documents sufficient for the Korean court to propound discovery requests to the defendants in the Korean case or to third parties, assuming they are within the jurisdiction of the Korean court. (Searby Decl. ¶ 10). Sharp's Korean counsel seeks the evidence from CRT cartel documents already produced in the N.D. Cal. Litigation to establish the grounds required to obtain Korean court orders for discovery. (*See* Searby Decl. ¶ 11).

Moreover, Sharp's Korean counsel seeks the discovery from the N.D. Cal. Litigation for possible introduction into evidence to help prove Sharp's case. The evidence of Glass Meetings and other bilateral agreements alluded to by DPP class counsel is sought to prove the participation of the Korean Litigation Defendants in the alleged conspiracy and the details thereof, including attendance at the meetings, the frequency of the meetings, the substantive content of the meetings, and the direction from the parent companies to their foreign subsidiaries in Asia involved in the CRT business. (*Id.*) Korean counsel states that the Korean courts are receptive to discovery obtained in a foreign country, and cites Korean Civil Procedure Act, Art. 296 (2) for the following proposition: "Any examination of evidence undertaken in a foreign country shall, even if it is contrary to the laws of that country, be valid unless it is contrary to this Act." (Searby Decl. ¶ 12; Searby Decl., Ex. B at Art. 296(2)). Korean counsel states that courts there have adopted in Article 202 the "principle of free evaluation of evidence," meaning that in principle, there is no limitation on the admissibility of evidence. (Searby Decl. ¶ 12). In sum, Korean counsel knows of no reason why Korean courts would not be willing to accept evidence obtained through US discovery procedures in an antitrust class action case. (*See id.*)

The Korean Litigation is ongoing, with a status hearing currently scheduled for June 28, 2012. (Searby Decl. ¶ 13).

C. **Intended Subpoena Recipient – DPP Interim Class Counsel**

Sharp seeks an order allowing it to serve a subpoena on a custodian or custodians for sets of the documents and other discovery obtained in the N.D. Cal. Litigation. A draft copy

- 6 -

of the subpoena is attached to counsel's declaration. (Searby Decl., Ex. C). The custodians whom Sharp intends to name are R. Alexander Saveri, Esq., Guido Saveri, Esq. and/or any and all persons who are responsible in whole or in part for the maintenance and safekeeping of electronic discovery on behalf of the DPP Class (together, "Custodians") at the law firm of Saveri & Saveri, Inc., which is listed on the docket of the N.D. Cal. Litigation as being located at 706 Sansome Street, San Francisco, CA 94111. Saveri & Saveri is the interim lead counsel for the Direct Plaintiff Purchasers. Saveri & Saveri filed the DPP Amended Complaint and have attested to receipt of five million pages of documents produced by the Defendants in the N.D. Cal. Litigation. (*See* Saveri Decl. ¶ 7).

## III. ARGUMENT

As a victim of global price-fixing of CRTs, Sharp hereby seeks evidence about the cartel that has been collected in class action litigation in this district, for use in the separate Korean action in which Sharp claims antitrust damages for those CRT products sold into the Korean market. For the reasons discussed below, Sharp's application for this discovery meets statutory requirements. Furthermore, the factors that district courts may consider in exercising their discretionary authority weigh in favor of permitting Sharp the requested discovery. Accordingly, the Court should grant Sharp's application.

### A. Sharp Meets the Statutory Requirements To Permit Discovery For Use In a Foreign Court Proceeding

This Court is authorized to empower foreign litigants with the use of compulsory process in obtaining discovery from persons residing in this judicial district for use in the foreign proceedings. In relevant part, the statute establishing this authority provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a . . . request made . . . upon the application of any interested person and may direct that . . . the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

- 7 -

*EX PARTE* APPLICATION FOR ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES – Case No. _____

Sharp's application meets all of these requirements. First, Sharp has established that there are at least two sets of custodians of relevant documents who reside or can be found in the Northern District of California. The lawyers of Saveri & Saveri have a listed office address within this district on the docket of the N.D. Cal. Litigation in which they have entered appearances. The fact that these custodians are lawyers and a law firm holding materials produced in discovery does not change the fact that the relevant documents are in their custody and thus subject to this district's jurisdiction. *See In re Application of Schmitz*, 259 F. Supp. 2d 294, 296 (S.D.N.Y. 2003). In *Schmitz*, the district court rejected a law firm's argument that § 1782 did not properly apply to the documents in its temporary custody solely for the purposes of U.S. litigation, reasoning:

> Application of section 1782 does not involve an analysis of the duration of residency of the documents or even why a respondent has the documents. It is sufficient that respondents reside in this district, as they concededly do.

*Id.*; *see also In re Linerboard Antitrust Litigation*, 333 F. Supp. 2d 333, 340-42 (E.D. Pa. 2004) (granting intervenor's access to materials produced in antitrust litigation based on § 1782(a)).[6]

In addition, Sharp is without doubt an interested party seeking information for use in a foreign court proceeding. The Korean Litigation is currently pending and Sharp is the plaintiff.

**B. The Court Should Exercise Its Discretion To Permit Sharp's Requested Discovery, Based on Consideration of the Purposes of the Statute and the Lack of Serious Burden Upon the Intended Recipients of the Subpoenas**

Discovery of the documents produced in the N.D. Cal. Litigation falls squarely into the statutory purpose of aiding a foreign legal proceeding, would not impose any undue burden or intrusion, and therefore should be granted in the Court's discretion.

Once the requirements under § 1782 are met, the Court considers where it should grant the requested relief in the exercise of its discretion. *See, e.g., Intel Corp. v. Advanced*

---

[6] Sharp is not seeking any attorney work product or privileged attorney-client communications in the possession of counsel; Sharp seeks only the documentary evidence produced in the normal course of discovery.

- 8 -

*Micro Devices, Inc.*, 542 U.S. 241, 247 (2004) ("§ 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance to foreign or international tribunals or to 'interested person[s]' in proceedings abroad"); *United States v. Sealed 1, Letter of Request for Legal Assistance from the Deputy Prosecutor General of the Russian Federation*, 235 F.3d 1200, 1206 (9th Cir. 2000) ("The fact that § 1782 *authorizes* assistance does not mean that the district court must exercise its discretion to grant such assistance."). There are four discretionary factors for district courts to consider in an application under § 1782: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *See In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 571 (9th Cir. 2011) (citing *Intel*, 542 U.S. at 264-65).

As for the first discretionary factor, the persons from whom Sharp specifically seeks discovery, *i.e.*, the lawyers and personnel of Saveri and Saveri, Inc., are not participants in the Korean action. *See Intel*, 542 U.S. at 264 (noting that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid"). Indeed, there is no reason to believe that the Korean court could exercise jurisdiction over any custodian of the collection of documents sought here – those documents assembled by U.S. counsel from numerous companies all over the Asia-Pacific region for U.S. litigation purposes. Therefore, the first factor weighs in favor of granting the application.

As to the second factor, Korean courts would be receptive to evidence discovered in the United States. According to Sharp's Korean counsel, Korean civil procedure liberally permits examination of evidence gathered in a foreign country, follows the principle of free evaluation of evidence, and presents no limitation on the admissibility of evidence.

*EX PARTE* APPLICATION FOR ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES – Case No. _____

1  Third, for the same reasons, there is no concern here that Sharp's application is
2  being used to circumvent foreign proof-gathering restrictions or other policies in the Korean
3  jurisdiction. To the contrary, this application is consistent with Korean law's approval of foreign
4  proof gathering, and indeed Sharp would use the documents to establish the specific basis needed
5  for Korean court orders of discovery under their rules of civil procedure.

6  Finally, this request is not unduly intrusive or burdensome. Sharp seeks
7  documents which the lawyers of Saveri and Saveri, Inc. already have in their custody and
8  control, and which they presumably hold in a database. (*See* Saveri Decl. ¶ 7 (noting that
9  Plaintiffs have already received over 5 million pages of documents)). As one district court
10 reasoned in applying the discretionary factors of § 1782(a), a party does not suffer prejudice
11 merely by allowing access to materials that have already been produced to other parties in
12 litigation. *See In re Linerboard Antitrust Litigation*, 333 F. Supp. 2d at 342 (citing cases).

13 The fact that there is a protective order in the N.D. Cal. Litigation for the
14 materials sought should not discourage judicial approval of this request. Section 1782 relief has
15 specifically been available in cases where there are protective orders. *See U.S. Philips Corp. v.
16 Iwasaki Elec. Co., Ltd.*, 142 Fed. Appx. 516, 518, 2005 WL 1874992, at *2 (2d Cir. 2005)
17 (rejecting argument that the protective order limited litigant's possession of the documents at
18 issue so as to exempt them from § 1782 production where the order granted the district court
19 broad discretion to allow disclosure); *In re Linerboard Antitrust Litigation*, 333 F. Supp. 2d at
20 335 (granting counsel for intervenor Canadian company access to documents subject to
21 confidentiality order on the basis of § 1782).

22 Moreover, the protective order in force in the N.D. Cal. Litigation permits
23 disclosure of the protected material if "ordered by the Court. . ." or to ". . . any other person to
24 whom the Court compels access to the Confidential Information." (Stipulated Protective Order
25 (Doc. No. 306) Sections 7.2, 7.3). Thus, granting this application and ordering production of
26 Disclosure or Discovery Material would fall squarely within the disclosures permitted under the
27 Protective Order. Furthermore, Sharp's application requests that the Court's order state clearly
28 that the subsequent use of the discovery in the Korean Litigation will be conditioned upon

- 10 -

*EX PARTE* APPLICATION FOR ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES – Case No. _____

1 acceptance of the terms of that Protective Order, as appropriately modified, or of a protective
2 order in the Korean Litigation based upon substantially similar terms safeguarding the
3 confidentiality interests of the relevant parties.

   **C.**   **Notice to the Custodians of Records is Not Required at this Time**

5    Lastly, this Court may grant this *ex parte* application for judicial assistance
6 without notice to the Custodians intended to be served with subpoenas. Indeed, it is common for
7 "the process of presenting the request to a court and to obtain the order authorizing discovery" to
8 be conducted *ex parte*, because the Custodians will have ample notice of any discovery sought
9 and taken pursuant to the request. *See In re Letter of Request from Supreme Court*, 138 F.R.D.
10 27, 32 n. 6 (S.D.N.Y. 1991) ("[S]uch ex parte applications are typically justified by the fact that
11 the parties will be given adequate notice of any discovery taken pursuant to the request and will
12 then have the opportunity to move to quash the discovery or to participate in it."); *see also In re
13 Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) ("Letters Rogatory are
14 customarily received and appropriate action taken with respect thereto ex parte" and stating that
15 "[t]he witnesses can and have raised objections and exercised their due process rights by motions
16 to quash the subpoenas").

17    Although Sharp believes that an appropriate time for the Custodians to lodge any
18 objection to the subpoena would be prior to its return date, Sharp has decided as a matter of
19 professional courtesy to serve them with a copy of this application at the time of filing.

20 ///
21 ///
22 ///
23 ///
24 ///
25 ///

- 11 -
*EX PARTE* APPLICATION FOR ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING;
MEMORANDUM OF POINTS AND AUTHORITIES – Case No. _____

## IV. CONCLUSION

For the reasons set forth above and in the accompanying declaration of counsel, Sharp respectfully requests that the Court enter an order appointing Colin West of Bingham McCutchen LLP as commissioner empowered to issue subpoenas to the intended subpoena recipients for the documents collected in the N.D. Cal. Litigation.

Dated: June 27, 2012

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Kenneth A. Gallo (D.C. Bar No. 371253, *pro hac vice* admission pending)
Bruce H. Searby (CA State Bar No. 183267, *pro hac vice* admission pending)

BINGHAM MCCUTCHEN LLP

By: _____
Colin C. West (CA State Bar No. 184095)

Attorneys for Petitioner
SHARP CORPORATION

- 12 -
*EX PARTE* APPLICATION FOR ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES – Case No. _____