1  Jon V. Swenson (SBN 233054)
   BAKER BOTTS LLP
2  1001 Page Mill Road
   Building One, Suite 200
3  Palo Alto, CA 94304-1007
   Telephone: (650) 739-7500
4  Facsimile: (650) 739-7699
5  Email: jon.swenson@bakerbotts.com

6  John M. Taladay (*pro hac vice*)
   Joseph Ostoyich (*pro hac vice*)
7  Erik T. Koons (*pro hac vice*)
8  Charles M. Malaise (*pro hac vice*)
   BAKER BOTTS LLP
9  1299 Pennsylvania Ave., N.W.
   Washington, DC 20004-2400
10 Telephone: (202) 639-7700
   Facsimile: (202) 639-7890
11 Email: john.taladay@bakerbotts.com
12 Email: joseph.ostoyich@bakerbotts.com
   Email: erik.koons@bakerbotts.com
13 Email: charles.malaise@bakerbotts.com

14 *Attorneys Specially Appearing for Defendants*
   *Philips Taiwan Limited and Philips do Brasil Ltda.*

15                  UNITED STATES DISTRICT COURT

16                 NORTHERN DISTRICT OF CALIFORNIA

17                    SAN FRANCISCO DIVISION

18 In re:  CATHODE RAY TUBE (CRT)          )  Case No. 07-5944-SC
19 ANTITRUST LITIGATION                    )
                                           )  MDL No. 1917
20                                         )
                                           )  **PHILIPS TAIWAN LIMITED'S AND**
21                                         )  **PHILIPS DO BRASIL LTDA.'S REPLY IN**
                                           )  **SUPPORT OF THEIR MOTION TO**
22                                         )  **DISMISS FOR INSUFFICIENT SERVICE**
                                           )  **OF PROCESS AND LACK OF PERSONAL**
                                           )  **JURISDICTION**
23 This Document Relates to:              )
                                           )  Date:          May 30, 2014
24 ALL INDIRECT PURCHASER ACTIONS          )  Time:          10:00 a.m.
                                           )  Place:         Hon. Samuel P. Conti
25                                         )  Special Master: Hon. Vaughn R. Walker,
                                           )                 U.S. District Judge (Ret.)
26                                         )
                                           )
27                                         )

28

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ..................................................................................................................... 1

I.   THE IPPS' CLAIMS AGAINST PTL AND PDBL SHOULD BE
     DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS ...................................... 1

     A.   The IPPs never properly served PTL and PDBL with
          process pursuant to Federal Rule of Civil Procedure 4. ...................................... 1

     B.   The Court should not approve of the IPPs' tardy attempts to
          serve PTL and PDBL with "process." ................................................................. 4

II.  THE IPPS' CLAIMS AGAINST PTL AND PDBL SHOULD BE
     DISMISSED FOR LACK OF PERSONAL JURISDICTION ....................................... 8

     A.   PTL and PDBL's entry into a settlement agreement is
          irrelevant to the Court's exercise of personal jurisdiction .................................. 9

     B.   The IPPs have not presented evidence that PTL or PDBL
          sold CRTs into the United States ....................................................................... 10

CONCLUSION ............................................................................................................... 12

PHILIPS TAIWAN LIMITED'S AND PHILIPS DO BRASIL LTDA.'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR INSUFFICIENT
SERVICE OF PROCESS AND LACK OF PERSONAL JURISDICTION (3:07-CV-05944 SC, MDL NO. 1917)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Dow Chemical Company v. Calderon*,
    422 F.3d 827 (9th Cir. 2005) ................................................................................9

*Gregory v. Harris*,
    No. CV11-0372, 2011 WL 6205902 (D. Ariz. Dec. 13, 2011) ................................3

*Jarrow Formulas, Inc. v. Nature's Way Products, Inc.*,
    942 F.2d 791 (9th Cir. 1991) ................................................................................9

*Meetings & Expositions, Inc. v. Tandy Corp.*,
    490 F.2d 714 (2d Cir. 1974) ................................................................................9

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ................................................................................8

*Scottish Air Int'l v. British Caledonian Group*,
    152 F.R.D. 18 (S.D.N.Y. 1993) ................................................................................9

*Swaim v. Moltan Co.*,
    73 F.3d 711 (7th Cir. 1996) ................................................................................3

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ................................................................................8

*Walden v. Fiore*,
    134 S.Ct. 1115 (2014) ................................................................................10

*Way v. Mueller Brass Co.*,
    840 F.2d 303 (5th Cir. 1988) ................................................................................3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 5 ................................................................................2

Fed. R. Civ. P. 12 ................................................................................2

Fed. R. Civ. P. 4 ................................................................................1, 3, 4

Local Rule 5-1 ................................................................................3

Philips Taiwan Limited ("PTL") and Philips do Brasil Ltda. ("PDBL"), appearing specially through undersigned counsel,[1] hereby file this reply memorandum in support of their motion to dismiss the Indirect Purchaser Plaintiffs' ("IPPs") Fourth Consolidated Amended Complaint for insufficient service of process and lack of personal jurisdiction.

Try as they might to skirt the issue, the IPPs never served PTL or PDBL under Federal Rule of Civil Procedure 4.  This failure is not mitigated by the IPPs' attempted service on counsel for other parties, Koninklijke Philips N.V. ("KPNV") and Philips Electronics North America Corporation ("PENAC"), or the IPPs' mere filing of their complaints through the Court's ECF system.  Now—more than five years after the start of this case, yet only five months before the close of discovery—the IPPs seek the Court's blessing on their failure to serve PTL and PDBL.  The Court should not oblige. Neither PTL nor PDBL have been actively involved in this litigation except for one prior filing seeking to dismiss the IPPs' claims for lack of personal jurisdiction and insufficient service of process. Bringing these parties into the litigation now would surely result in prejudice.

Further, even if the IPPs had properly served PTL and PDBL—which they have not—the IPPs have failed to satisfy their burden of establishing the Court's personal jurisdiction over these defendants based on these specific defendants' contacts with the United States.

## ARGUMENT

**I.    THE IPPS' CLAIMS AGAINST PTL AND PDBL SHOULD BE DISMISSED FOR INSUFFICIENT SERVICE OF PROCESS**

### A.    The IPPs never properly served PTL and PDBL with process pursuant to Federal Rule of Civil Procedure 4.

The IPPs do not and cannot argue that they ever properly served PTL or PDBL under Federal Rule of Civil Procedure 4.  Instead, they make much of the assertion that former counsel for a separate party, PENAC, purportedly agreed to accept service of an entirely different and superseded pleading

---

[1] Undersigned counsel are only appearing to assert PTL and PDBL's motion to dismiss for insufficient service of process and lack of personal jurisdiction.  This appearance is not meant to, and does not, constitute a general appearance or a waiver of any objections PTL and PDBL have to the sufficiency of the IPPs' service of process and allegations related to personal jurisdiction.

1   (the IPPs' First Consolidated Amended Complaint) on behalf of PTL and PDBL five years ago "under

2   protest."  Opp. at 13.  Counsel for PENAC, however, explicitly reserved all rights to "claim, pursuant

3   to Fed. R. Civ. Pro. 12(b)(5) that [PTL and PDBL were] improperly served with process and/or to

4   appeal on such grounds."  Capurro Decl., Ex. 4.

5          Moreover, as the IPPs concede, they never subsequently served their First Consolidated

6   Amended Complaint on PTL and PDBL.  Opp. at 13.  This omission is especially glaring given the

7   fact that PTL and PDBL specifically informed the IPPs of this defect in the Philips Defendants' motion

8   to dismiss the IPPs' First Consolidated Amended Complaint: "As of today, neither [PTL] nor [PDBL]

9   have been served with [the IPPs' First Consolidated] Amended Complaint.  On May 11, 2009, [PTL]

10  and [PDBL] agreed, under protest and reserving all rights, to accept service through its sister company

11  PENAC.  Such service was never effected."  Koons Decl. (Dkt. No. 2470-1), Ex. A at 6 n.1.  Based on

12  this failure to serve them, PTL and PDBL moved "to dismiss the [IPPs'] Amended Complaint[]

13  pursuant to Fed. R. Civ. Pro. 12(b)(5)."  *Id.*  In blatant disregard for this clear notice, the IPPs never

14  served PTL and PDBL with any of their successive four consolidated amended complaints in a manner

15  that would satisfy Rule 4.

16         Instead, the IPPs seek to excuse their failure by offering a multitude of *post hoc* explanations.

17  The IPPs argue that the filing of their claims through the Court's ECF system effected proper service

18  of each of their four consolidated amended complaints because they were "served" on counsel for

19  KPNV and PENAC.  However, service through ECF does not satisfy the requirements of service of

20  process under Rule 4.  Such electronic filings only satisfy the service requirement for later pleadings

21  governed by Rule 5 *after service of process under Rule 4 has been accomplished*.  Thus, while Rule 5

22  allows that "[i]f a local rule so authorizes, a party may use the court's transmission facilities to make

23  [electronic] service under Rule 5(b)(2)(E),"[2] no such allowance is provided in Rule 4.

24         Nor does the Court's September 29, 2008 Order allowing service through the ECF system

25  replace the requirements of Rule 4 as this Order does not dictate how service *of process* is to be

26

27  [2] *See* Fed. R. Civ. P. 5(b)(3).

28

1   accomplished.  *See* Dkt. No. 383.  Indeed, Local Rule 5-1 (which abrogated General Order 45 that is

2   referenced in the Court's September 29, 2008 Order) expressly states: "Upon the filing of a complaint

3   or other case-initiating document, whether manually or electronically, the plaintiff shall *manually* serve

4   upon the defendant along with the complaint, the ECF Registration Information Handout available

5   from the Clerk's Office and on the ECF website."  L.R. 5-1(d)(3) (emphasis added).  The Local Rule

6   then explicitly distinguishes between what is necessary for service of process and for service of later-

7   filed documents: "Upon the filing of a document by a party, an email message will be automatically

8   generated by the ECF system and sent to the registered attorneys for all parties in the case.  Except for

9   electronically-filed *civil complaints* and case-initiating documents, which must be served *manually*,

10   receipt of this message constitutes service on the receiving party."  *Id.* 5-1(h)(1) (emphasis added).

11   Thus, the filing of each of the IPPs' successive consolidated amended complaints through the Court's

12   ECF system never effectuated service of process on PTL and PDBL under Rule 4, because these

13   defendants had never previously been manually served.[3]

14      Finally, it is irrelevant that PTL and PDBL joined in the motions to dismiss filed by the other

15   Philips entities, or related filings.  Courts have consistently made clear that actual notice does not

16   remedy deficient service of process.  *See, e.g.*, *Swaim v. Moltan Co.*, 73 F.3d 711, 719 (7th Cir. 1996)

17   ("Valid service of process comprises more than actual notice; it requires a legal basis for holding the

18   defendant susceptible to service of the summons and complaint."); *Way v. Mueller Brass Co.*, 840 F.2d

19   303, 306 (5th Cir. 1988) ("The defendant's actual notice of the litigation, moreover, is insufficient to

20   satisfy Rule 4's requirements.").  PTL and PDBL only joined in the motions to dismiss filed by the

---

[3] The IPPs' reliance on *Gregory v. Harris*, No. CV11-0372, 2011 WL 6205902 (D. Ariz. Dec. 13, 2011) only further establishes the deficiency of the IPPs' service of process.  In that case, the Court distinguished between a defendant that had received the initial complaint, appeared, and responded to that complaint, versus a defendant who was not a party to the original complaint.  *Id.* at *2.  While the first defendant could be served with the amended complaint pursuant to Rule 5, the second defendant had to be served pursuant to Rule 4.  *Id.*  Applying these principles to PTL and PDBL, because these defendants were never properly served with the IPPs' First Amended Consolidated Complaint under Rule 4, the filing of the IPPs' subsequent complaints through the ECF system cannot remedy this prior deficiency and each of these subsequent complaints should have been served on PTL and PDBL under the requirements of Rule 4.

1   other Philips entities because of Special Master Legge's Order requiring such a joint filing.  *See* Koons

2   Decl., Ex. A at 6 n.1; Dkt No. 448 (Apr. 27, 2009).  In Special Master Legge's Order, all defendants

3   seeking to file a motion to dismiss were required to file a joint motion to dismiss for issues affecting all

4   defendants and, in addition, each group of participating defendants were only allowed to file one

5   additional brief per group.  *See* Dkt. No. 448 (Apr. 27, 2009).  PTL and PDBL were grouped with the

6   other "Philips Defendants" and thus were required to submit a single brief with the rest of the Philips

7   Defendants.  *Id.*  In addition, Judge Legge's Order made clear that submission of a motion to dismiss

8   did not constitute an admission that a defendant was "subject to personal jurisdiction in this action" or

9   "subject to personal jurisdiction in the United States."  *Id.*  PTL and PDBL should not be penalized for

10  complying with the Court's order.[4]

11      **B.      The Court should not approve of the IPPs' tardy attempts to serve PTL and PDBL**
            **with "process."**

12

13          As explained above, as of February 2014, neither PTL nor PDBL had ever received proper

14  service of process under Rule 4 in the almost five years since the filing of the IPPs' First Consolidated

15  Amended Complaint, or in the more than ten months since the filing of the IPPs' Fourth Consolidated

16  Amended Complaint.  Such tardiness far exceeds the 120 days allowed for service of process under

17  Federal Rule of Civil Procedure 4(m).  Thus, when in February 2014, the IPPs contacted counsel for

18  KPNV and PENAC and asked him to accept service of process on PTL and PDBL, counsel for KPNV

19  and PENAC was well-warranted in refusing to accept service of process pursuant to the Court's four-

20  and-a-half-year-old—and otherwise inapplicable—Order allowing service on KPNV through PENAC

21  under Rule 4(f)(3).[5]  *See* Dkt. No. 374 at 1 (Sept. 3, 2008).

22

23  _____

    [4] In addition, PTL and PDBL's motion to dismiss for lack of personal jurisdiction and insufficient
24  service of process has remained pending and the issues raised in those motions have remained
    preserved.  *See* Koons Decl. ¶ 4, Ex. B (attaching Dkt. No. 720).

25
    [5] The IPPs' statements that they believed that PTL and PDBL were adequately served almost five
26  years ago is belied by the IPPs' own actions in approaching counsel for KPNV and PENAC in
    February 2014 about accepting service on behalf of these entities.  Such a communication and service
27  would have been wholly unnecessary if the IPPs believed their prior service had been sufficient.

28

The Court's September 3, 2008 Order does not mandate that PTL and PDBL accept service through PENAC; nor is such service appropriate under Rule 4(f)(3).[6]  *See* Dkt. No. 374 at 1 (Sept. 3, 2008); Capurro Decl., Ex. 2.  The Court's prior order allowed service on PENAC because it was an indirect subsidiary of KPNV.  *See id.*  Even if that holding were correct, PTL and PDBL are sister corporations to PENAC and do not hold any shares in PENAC (or vice-versa), and do not otherwise control that entity or hold it out as an agent.  Also, undersigned counsel should not be considered "domestic counsel" under the Court's Order as they have not been authorized to accept service on behalf of PTL and PDBL and have only specially appeared on these defendants' behalf.  *But see* Dkt. No. 1241 (June 27, 2012).  Such a special appearance to protect the rights of foreign defendants should not waive a parties' entitlement to proper service of process.

But, even if the Court's Sept. 3, 2008 Order was relevant to this distinct situation, the Court should revisit its prior analysis in light of the changed circumstances that now exist.  As explained in more detail in PTL and PDBL's initial brief, the IPPs' long delay in seeking to serve PTL and PDBL and the prejudice that these entities will surely face if added to the litigation at this late stage warrant the exercise of the Court's discretion to deny service of process on PTL and PDBL through counsel for KPNV and PENAC under Rule 4(f)(3).  *See* Mot. at 8–9.

After learning that counsel for KPNV and PENAC would not accept service of process on behalf of PTL and PDBL, the IPPs should have returned to the Court and sought a new order to allow service under Rule 4(f)(3).  Instead, the IPPs disregarded KPNV and PENAC's counsel's clear statement that he was not authorized to accept service of process on behalf of PTL and PDBL and purported to serve this counsel through certified mail dated February 18, 2014.  *See* Koons Second Decl. ¶ 5.  Allowing this mailing of a copy of a complaint—to counsel for a different party that is specifically not authorized to accept it—to constitute adequate service of process would undermine the precepts of requiring service of process.  The IPPs' service was improper under Rule 4(f)(3) because

---

[6] PTL and PDBL maintain their position that service on outside U.S. counsel for a U.S. sister company can never effectuate service under Rule 4(f)(3), which specifically applies to service "at a place not within any judicial district of the United States."  Fed. R. Civ. P. 4(f)(3).

1   there was no court order allowing service on PTL or PDBL through counsel for PENAC and KPNV.

2   *See* Mot. at 7–8.  The Court should exercise its discretion to deny the IPPs' lame attempt to serve PTL

3   and PDBL through counsel for KPNV and PENAC.  The IPPs' claims against these defendants should

4   be dismissed for untimely and insufficient service of process.  *See* Mot. at 4–6.

5          In response, the IPPs first argue that dismissal is inappropriate because PTL and PDBL have

6   been actively involved in the litigation since being named.  This assertion is false.  PTL and PDBL's

7   only unique participation in this action to date is their motion to dismiss for lack of personal

8   jurisdiction and insufficient service of process.  While PTL and PDBL also signed on to the other

9   Philips defendants' motion and the defendants' joint motion to dismiss and subsequent related filings,

10  this was merely to comply with the Court's Order requiring PTL and PDBL to file motions to dismiss

11  with the other Philips defendants.  *See* Koons Decl., Ex. A at 6 n.1; Dkt. No. 448 (Apr. 27, 2009)

12  (limiting the "Philips Defendants"—including PTL and PDBL—to one joint motion to dismiss).

13         Nor have PTL and PDBL been directly involved in discovery.  Neither PTL nor PDBL have

14  independently produced documents in this case.  Any discovery purported to relate to these entities

15  was in the possession or control of KPNV and was produced by KPNV and only pursuant to KPNV's

16  discovery obligations.  Indeed, the IPPs' own documents establish that their discovery requests were

17  directed at KPNV and PENAC—not PTL and PDBL.  *See, e.g.*, Capurro Decl., Exs. 7 & 8.[7]

18  Information about an entity that happens to be in the files of another entity cannot be deemed active

19  involvement in discovery.  The IPPs further argue that dismissal is improper because the IPPs have

20  diligently pursued their claims against PTL and PDBL.  The IPPs' own briefing, however, establishes

21  their failure to prosecute these claims.  The IPPs concede that the "vast majority of the documents

22  produced in this case were . . . produced in the fourth quarter of 2011."  Opp. at 16; *see also id.* at 10.

23  Even if this were an accurate portrayal, the IPPs then concede that they waited almost two years—until

24

25

26  _____

27  [7] In addition, Jim Smith appeared as a third-party witness and was not produced as an employee of any
    Philips entity.  Koons Second Decl. ¶ 8.

28

1    November 2013—to contact counsel about reviving PTL and PDBL's pending motion to dismiss and,

2    even then, did not attempt to effectuate service on PTL and PDBL until three months later.  *Id.* at 11.

3          The IPPs also argue that belated service should be allowed on PTL and PDBL because these

4    defendants will not be prejudiced by their late entry into this litigation.  While counsel for KPNV and

5    PENAC have diligently prepared for trial, their counsel has focused on the Philips entities that have

6    been served and which have actually been involved in discovery.  Despite the existence of some

7    overlapping defenses shared by the distinct Philips entities, PTL and PDBL have different

8    circumstances from KPNV and PENAC that almost certainly will result in different, additional

9    defenses and considerations.  Moreover, the IPPs' undue delay has precluded any possibility that PTL

10   and PDBL could participate in any discovery, including by testing the allegations specifically pled as

11   to PTL's and PDBL's purported involvement in the alleged conspiracy.  The IPPs' inexplicable delay

12   has also effectively shut PTL and PDBL out of the expert report and discovery process; the April 15,

13   2014 deadline for affirmative expert reports has now passed and, indeed, the entire expert disclosure

14   schedule is likely to have ended before the jurisdictional issues here are finally resolved.

15         Further, the IPPs' assurances that "Plaintiffs anticipate serving no additional document

16   discovery on" PTL and PDBL and that "no further discovery from [PTL or PDBL] is expected," Opp.

17   at 18 & n.31, are uncertain at best and do not foreclose the possibility that the IPPs will seek additional

18   discovery based on new or previous requests at this late hour of pretrial preparation.  Indeed, counsel

19   for KPNV and PENAC previously asked counsel for the IPPs if the IPPs intended to seek additional

20   discovery on PTL and PDBL.  *See* Koons Second Decl. ¶ 7.  The IPPs stated that they would not

21   foreclose the possibility of such discovery and do not unequivocally do so here.  *Id.*[8]

22

23

24

---

25   [8] If the Court ultimately decides to allow the IPPs' claims against PTL and PDBL to proceed, the Court

26   should order that the IPPs are not entitled to request or receive any additional discovery from PTL or
     PDBL.  Such an order, however, will not eliminate the prejudice to PTL and PDBL of being added to

27   the litigation at this late hour and not having the benefit of fully participating in discovery.

28

## II.   THE IPPS' CLAIMS AGAINST PTL AND PDBL SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Even if the IPPs had properly served PTL and PDBL at any point in the five years since these defendants first moved to dismiss the First Consolidated Amended Complaint, the IPPs' claims must still be dismissed.   The law is clear that the plaintiff bears the burden of establishing personal jurisdiction over a foreign defendant.   *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990))).   In their Fourth Consolidated Amended Complaint, the IPPs assert that personal jurisdiction over PTL and PDBL is warranted because these entities allegedly "sold and distributed CRT Products either directly or through [their] subsidiaries or affiliates throughout the United States."   IPP 4th Cons. Am. Compl. ¶¶ 9, 56, 57.   Such conclusory, boilerplate allegations are clearly insufficient to justify the exercise of personal jurisdiction, especially given the declarations submitted by PTL and PDBL establishing that neither entity manufactures any products in the United States; neither have a place of business in the United States; neither have registered as a foreign corporation to do business in the United States; and neither have offices, inventory, real estate, or personal property, in the United States, and do not pay taxes in the United States.   *See* Koons Decl., Ex. A at 20.   Given such evidence, the IPPs' "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations" cannot satisfy their burden to plead personal jurisdiction.   *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

In response, the IPPs have sought to introduce documents and testimony allegedly establishing the Court's personal jurisdiction over PTL and PDBL.   The IPPs, however, rely on irrelevant information and have not produced sufficient evidence that these defendants made CRT sales to the United States during the alleged conspiracy.   The IPPs have thus failed to satisfy their burden to establish the Court's personal jurisdiction over these foreign corporations and their claims against PTL and PDBL must be dismissed.

**A.     PTL and PDBL's entry into a settlement agreement is irrelevant to the Court's exercise of personal jurisdiction.**

The IPPs argue that PTL and PDBL submitted to the Court's jurisdiction by entering into a settlement agreement with the Direct Purchaser Plaintiff class—a class wholly separate from the IPPs. This settlement agreement, however, is irrelevant to the question of whether the Court can exercise personal jurisdiction over PTL and PDBL.  Indeed, adopting the IPPs' proposed standard would greatly chill foreign defendants' willingness to enter into settlement agreements in the United States for fear that doing so would open them up to personal jurisdiction in that forum.  Such a result would be wholly contrary to the desire of the courts to support and encourage parties to settle their claims short of litigation.  *See Jarrow Formulas, Inc. v. Nature's Way Products, Inc.*, 942 F.2d 791 (9th Cir. 1991) ("To conserve judicial resources and limit costly litigation, we favor and encourage settlements.").

The IPPs' authorities do not warrant a contrary finding.  First, the IPPs cite to cases in which the cause of action arose over a disputed interpretation or breach of the settlement agreement itself and thus specific jurisdiction was appropriate to enforce the terms of the agreement.  *See Scottish Air Int'l v. British Caledonian Group*, 152 F.R.D. 18, 24 (S.D.N.Y. 1993); *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974).  That is simply not the case here—the IPPs are not seeking to enforce some aspect of PTL or PDBL's settlement with the DPP class.

Nor is the IPPs' reliance on *Dow Chemical Company v. Calderon*, 422 F.3d 827 (9th Cir. 2005) persuasive.  Indeed *Calderon* merely summarizes out-of-circuit and wholly inapplicable case law that does not support the IPPs' arguments.  *See Calderon*, 422 F.3d at 834 ("We assume without deciding that this circuit would follow *Interpole* and *Embotelladora* . . . .") (citing *General Contracting & Trading Co. v. Interpole, Inc.*, 940 F.2d 20 (1st Cir. 1991), and *International Transactions Limited v. Embotelladora Agral Regionmontana S.A. de C.V.*, 277 F. Supp. 2d 654 (N.D. Tex. 2002)).  *Calderon* stands for the unremarkable proposition that personal jurisdiction may be satisfied if a defendant contesting jurisdiction had previously filed *an affirmative claim* as a plaintiff in federal court based on the same transaction or occurrence from which the current disputed claim arose.  This authority does

1  not apply to PTL's and PDBL's situation as these defendants have never filed affirmative actions

2  related to alleged price-fixing of CRTs in California.

3      Therefore, PTL and PDBL's agreement to settle the DPPs' claims against them does not waive

4  their ability to assert their personal jurisdiction defense against the IPPs' claims.

5      **B.    The IPPs have not presented evidence that PTL or PDBL sold CRTs into the United States**

6

7      While the IPPs allege that PTL and PDBL "sold and distributed CRT Products either directly or

8  through [their] subsidiaries or affiliates throughout the United States," *see* IPP 4th Cons. Am. Compl.

9  ¶¶ 9, 56, 57, the evidence the IPPs have presented does not support these allegations.

10      The IPPs' evidence that PTL sold CRTs into the United States is lacking.  Many of the

11  documents identified by the IPPs show only that PTL was selling CRTs to "North America," but do

12  not specifically state that PTL sold these CRTs to customers in the United States.  *See, e.g.*, Capurro

13  Decl., Exs. 23, 24, 34, and 37.  Other documents relate solely to the sale of computer monitors—not

14  CRTs—to the United States, which cannot establish specific jurisdiction over PTL based on its sale of

15  CRTs.  *See, e.g.*, Capurro Decl., Exs. 22 and 25. ████████████████

16  ███████████████████████████████████████████

17  ██████████████████████████████ *See, e.g.*, Capurro Decl., Ex. 19.

18  ███████████████████████████████

19  █████████████████████████████ *See* Koons Second Decl. ¶ 9, Ex. A,

20  Deposition of Roger De Moor at 226:5–10.  ████████████

21  ███████████████████████████████████████████

22  ████████████████ As the Supreme Court has recently reiterated, personal jurisdiction must be

23  evaluated based on the "contacts that the 'defendant himself' creates with the forum."  *Walden v.*

24  *Fiore*, 134 S.Ct. 1115, 1122 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475

25  (1985)).  Because the IPPs have not shown that PTL itself had any direct contacts with the United

26  States, the IPPs have not met their burden to establish personal jurisdiction over PTL.

27

28

1   As to PDBL, the IPPs assert that this defendant's ██████████

2  ████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████

4  ████."[9]  Opp. at 23.  ██████████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████  Thus, in order to establish specific personal jurisdiction over PDBL,

7  the IPPs must establish that PDBL was selling CRTs in, or shipping CRTs to, the United States after

8  allegedly joining the alleged conspiracy in 1999.  The documents presented by the IPPs, however, fail

9  to establish this requirement.

10   The IPPs primarily point to a presentation entitled Philips Display Components Company

11  North America Strategy Review 1996-2000.  *See* Capurro Decl., Ex. 34.  As is clear from this

12  document, however, it was created in 1995 or 1996, long before PDBL's alleged participation in the

13  conspiracy began.  *See id.* at JLJ-00000880 (describing market trends in 1995 and projected market

14  trends for 1996).  This document thus does not establish jurisdiction over PDBL.  The IPPs also rely on

15  Exhibit 40, but this document simply states that PDBL sells to a variety of finished product

16  manufacturers with operations all over the globe.  *See* Capurro Decl., Ex. 40.  It does not mention

17  where these sales occur or to where PDBL ships CRTs.[10]  Finally, the testimony in Exhibit 19 only

18  states that ████████████████████████████████████████████████

19  ████████████████████████████  *See* Capurro Decl., Ex. 19.  The witness further confirms that at

20  ████████████████████████████████████████████████████████████

21  ████████████████████.  *Id.*

---

[9] The IPPs then concede that PDBL stopped manufacturing CRTs in June 2001.  *Id.* at 24.

[10] In Ms. Capurro's declaration, the IPPs assert that Exhibit 41 is a true and correct copy of EIN 0107825 at EIN0107848-EIN0107850, which purports to be a chart of PDBL's customer base for CRTs in 1998-2000.  No such information is provided in the version of Exhibit 41 the IPPs served on defendants and instead Exhibit 41 appears to be a company logo for "BB Line."  Further, even if Exhibit 41 contained the asserted information, this information would suffer from the same defects as Exhibit 40—there is no indication where PDBL made the sales or to where PDBL shipped CRTs.

1    The IPPs have thus failed to sustain their burden to establish PDBL and PTL's minimum

2  contacts with the United States and their claims against PDBL and PTL must be dismissed.

3  <u>**CONCLUSION**</u>

4    For the foregoing reasons and those stated in PTL and PDBL's initial motion, the Court should

5  quash the IPPs' attempted service and dismiss the IPPs' claims against PTL and PDBL with prejudice.

6

7  Dated: May 1, 2014                    By: /s/ Erik T. Koons
                                         Jon V. Swenson (SBN 233054)
8                                        BAKER BOTTS LLP
                                         1001 Page Mill Road
9                                        Building One, Suite 200
                                         Palo Alto, CA 94304-1007
10                                       Telephone: (650) 739-7500
                                         Facsimile: (650) 739-7699
11                                       Email: jon.swenson@bakerbotts.com

12
                                         John M. Taladay (*pro hac vice*)
13                                       Joseph Ostoyich (*pro hac vice*)
                                         Erik T. Koons (*pro hac vice*)
14                                       Charles M. Malaise (*pro hac vice*)
                                         BAKER BOTTS LLP
15                                       1299 Pennsylvania Ave., N.W.
                                         Washington, DC 20004-2400
16                                       Telephone: (202) 639-7700
                                         Facsimile: (202) 639-7890
17                                       Email: john.taladay@bakerbotts.com
                                         Email: joseph.ostoyich@bakerbotts.com
18                                       Email: erik.koons@bakerbotts.com
                                         Email: charles.malaise@bakerbotts.com
19
20                                       *Attorneys Specially Appearing for Defendants Philips*
                                         *Taiwan Limited and Philips do Brasil Ltda.*
21
22
23
24
25
26
27
28