United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | ) MDL No. 1917 |
| | ) |
| | ) Case No. CV 07-5944-SC |
| | ) |
| This Order Relates To: | ) ORDER DENYING PHILIPS |
| | ) TAIWAN LIMITED AND PHILIPS |
| ALL INDIRECT PURCHASER ACTIONS | ) DO BRASIL LTDA.'S MOTIONS |
| | ) TO DISMISS FOR INSUFFICIENT |
| | ) SERVICE OF PROCESS AND LACK |
| | ) OF PERSONAL JURISDICTION |
| | ) |
| | ) |

## I.   **INTRODUCTION**

Now before the Court is Defendants Philips Taiwan Limited ("PTL") and Philips do Brasil Ltda.'s ("PDBL")[1] motion to dismiss the Indirect Purchaser Plaintiffs' ("IPPs") claims for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5) and failure to adequately allege personal jurisdiction under Rule 12(b)(2).  The motions are fully briefed.  ECF Nos. 2536-5 ("Opp'n) (filed under seal), 2560 ("Reply").[2]  Finding this matter suitable

---

[1] PTL and PDBL were previously known as Philips Electronics Industries (Taiwan) ("PEIT") and Philips da Amazonia Industria Electronica Ltda. ("PAIEL"), respectively.

[2] The IPPs also move to file a surreply.  ECF No. 2575-3 (filed under seal).  The Court GRANTS the motion.  The Surreply, ECF No. 2575-5, is accompanied by a Second Declaration of Lauren Capurro,

<div style="writing-mode: vertical">**United States District Court**
For the Northern District of California</div>

1   for disposition without oral argument, Civ. L.R. 7-1(b), the Court

2   DENIES both motions.

3

4   **II.**   <u>**BACKGROUND**</u>

5        The parties are familiar with this case's facts.  Plaintiffs

6   are a class of indirect purchasers of cathode ray tubes ("CRTs") or

7   products containing CRTs ("CRT Products"), which are the allegedly

8   price-fixed goods that are the basis of this antitrust MDL.   The

9   movants, PTL and PDBL, are related to two of the Philips Defendants

10  that have appeared in this case: Konklijke Philips Electronics,

11  N.V. ("Royal Philips"), the movants' Dutch parent company; and

12  Royal Philips's United States subsidiary, Philips Electronics North

13  America Corporation ("PENAC").   Plaintiffs contend that PTL and

14  PDBL have been properly served and that the Court has personal

15  jurisdiction over both of them.   PTL and PDBL dispute both of these

16  claims.

17       These parties' service dispute began on April 6, 2009.

18  Plaintiffs wrote to PENAC and Royal Philips' counsel to ask if they

19  would accept service on behalf of the other Philips Defendants,

20  including PTL and PDBL, without Plaintiffs having to request

21  additional orders permitting service of foreign defendants via

22  their domestic counsel under Federal Rule of Civil Procedure

23  4(f)(3).   ECF No. 2536-6 ("Capurro Decl.") ¶¶ 2-4 & Exs. 1 ("Pls.'

24  Apr. 6 Letter") & 2 ("Defs.' Apr. 14, 2009 Letter") (filed under

25  seal).   This request was based in part on an order the Court issued

26

27  ECF No. 2575-7 ("Capurro Decl. II").   PTL and PDBL opposed the
    motion, ECF No. 2597, but the Court finds their arguments
28  uncompelling.   The Court disfavors surreplies, but they will, as
    always, be addressed on a case-by-case basis.

on September 3, 2008, permitting service on several foreign defendants via their United States lawyers per Rule 4(f)(3).  ECF No. 374 ("Sept. 3 Order").

Counsel for PENAC and Royal Philips refused to accept service, contending that PTL and PDBL had neither subsidiaries nor counsel in the United States.  Defs.' Apr. 14 Letter at 1-2.  Plaintiffs responded to say that the September 3 Order permitted service under Rule 4(f)(3) on any local agent (not necessarily a subsidiary or counsel), consistent with due process, per Rio Properties, Inc. v. Rio International Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002). Capurro Decl. Ex. 3 ("Pls.' May 6 Letter") at 1-2 (filed under seal).  They argued that simply accepting service under similar terms to the September 3 Order, without having to brief another motion, would be efficient and inexpensive, particularly since PTL and PDBL's parent companies' involvement in the case assured that PTL and PDBL would have notice and an opportunity to be heard, so due process requirements would be satisfied.  Id.  Counsel for PENAC and Royal Philips subsequently agreed to accept service on behalf of PTL and PDBL, though they stated that they did so "under protest," meaning that they did not admit to personal jurisdiction and reserved the right to file a Rule 12(b)(5) motion based on improper service.  Capurro Decl. Ex. 4 ("Defs.' May 11 Letter") (filed under seal).

At that time, this case's previous Special Master had required all defendants seeking to file motions to dismiss to file one joint motion for issues affecting all defendants in that group -- e.g., the Philips Defendants -- with one additional brief permitted per group.  ECF No. 448 ("SM's Order Re: MTDs").  Accordingly, the

**United States District Court**
For the Northern District of California

1    Philips Defendants filed a motion to dismiss Plaintiffs' then-

2    operative complaint on May 18, 2009, focusing mainly on pleading,

3    limitations, and personal jurisdictional matters.  See generally

4    ECF No. 476 ("Philips MTD I").  As to PTL and PDBL specifically,

5    the Philips Defendants stated that neither PTL nor PDBL had been

6    served despite the agreement stated in Defendants' May 11 Letter,

7    so they moved to dismiss based on Rule 12(b)(5).  Id. at 1 n.1.

8        Plaintiffs' opposition brief to the defendants' motions to

9    dismiss notes that PTL and PDBL's motions had been deferred by

10   stipulation, so the Rule 12(b)(5) motion was not further discussed

11   by either the Special Master or the Court.  ECF No. 536 ("Opp'n I")

12   at 1 n.1.  That stipulation, entered on July 15, 2009, vacated the

13   briefing schedule and hearing date on the arguments PTL and PDBL

14   raised in the Philips MTD I.  ECF No. 519 ("MTD Stip.") at 2.  It

15   noted that the parties would meet and confer on jurisdictional

16   discovery and a new briefing schedule, and would then submit the

17   new schedule to the Court.  Id.

18       The parties' positions become murky after they filed the MTD

19   Stipulation.  On May 20, 2010, the Special Master had filed a

20   report stating that certain parties with jurisdictional motions had

21   suspended those motions pending further proceedings.  ECF No. 718

22   ("May 20 Status Report") at 2.  On May 24, 2010, PTL and PDBL's

23   counsel wrote a letter to the former Special Master in response to

24   his report, intending to clarify "the parties' agreement concerning

25   [PTL and PDBL's] pending Rule 12(b)(2) motions to dismiss

26   [Plaintiffs' complaints] for lack of personal jurisdiction."  ECF

27   No. 720 ("Defs.' May 24 Letter").  Counsel wrote that the parties

28   would "continue to meet and confer on the issue of personal

**United States District Court**
For the Northern District of California

jurisdiction in hopes of avoiding further briefing and argument on these motions altogether," though he stated that he meant to preserve his clients' objections to personal jurisdiction and leave the Rule 12(b)(2) motions pending.  Id.  Neither party references or provides proof of any further discussions on the issue after that letter.

The next motion on which PTL and PDBL appear is another joint motion to dismiss, ECF No. 733 ("Joint MTD II"), filed June 25, 2010.  That motion, filed under Rule 12(b)(6), asked the Court to dismiss a number of Plaintiffs' state causes of action and noted in a footnote, id. at 1 n.1, that the jointly filing Defendants meant to reassert and preserve all prior arguments, including those raised in the Philips MTD I.  Briefing and argument on that motion proceeded before the Special Master, and the Court entered a stipulation modifying and adopting the Special Master's tentative ruling on October 25, 2010, after which Plaintiffs were given leave to file a third consolidated amended complaint.  No one -- not PTL, PDBL, or Plaintiffs -- ever again raised the service issue until the instant motion.

Neither party is likely to disagree that this particular motion arrives amid some procedural confusion.  Interpreted charitably, this is likely due to logistical and communications problems.  PTL and PDBL never calendared a motion of their own, nor did they specifically raise a Rule 12(b)(5) defense after their first motion, which was itself made in a footnote.  In their only specific attempt to clarify anything, their counsel stated only that PTL and PDBL meant for their Rule 12(b)(2) motions to remain

United States District Court
For the Northern District of California

1  pending subject to the parties' discussions.  He said nothing about

2  service, nor did he calendar any further motions.

3      In the four years that followed that clarification, neither

4  side rejoined either the service or the personal jurisdiction

5  issue, until now.  Plaintiffs claim that PTL and PDBL accepted

6  service in 2009 and did not actually raise the argument again.  PTL

7  and PDBL state that either they were never properly served or, in

8  the alternative, that the Court lacks personal jurisdiction over

9  them because they are foreign companies with insufficient minimum

10 contacts with the United States.

11

12 **III.  <u>DISCUSSION</u>**

13      **A.   <u>Service and Waiver</u>**

14      A federal court lacks personal jurisdiction over a defendant

15 if service of process is insufficient.  <u>Omni Capital Int'l v.</u>

16 <u>Rudolf Wolff & Co.</u>, 484 U.S. 97, 104 (1987).  A court may dismiss

17 the action without prejudice pursuant to Federal Rule of Civil

18 Procedure 12(b)(5).  Once a defendant challenges service, a

19 plaintiff bears "the burden of establishing that service was valid

20 under Rule 4."  <u>Brockmeyer v. May</u>, 383 F.3d 798, 801 (9th Cir.

21 2004).

22      Under the circumstances now before the Court, though neither

23 party raises the issue, there is a question whether PTL and PDBL

24 have waived their right to object to Plaintiffs' service of

25 process.  As a general rule, if a party files a responsive pleading

26 or makes a Rule 12 motion but does not raise one of the defenses

27 listed in Rule 12(b)(2)-(5), the party waives the right to raise

28 the defense in a later-filed Rule 12(b) motion.  <u>See</u> Fed. R. Civ.

**United States District Court**
For the Northern District of California

1  P. 12(h); <u>Peterson v. Highland Music, Inc.</u>, 140 F.3d 1313, 1318

2  (9th Cir. 1998). But having raised the issue at an early stage of

3  the proceedings does not mean that a party cannot waive it later.

4  <u>Peterson</u>, 140 F.3d at 1318 (defenses like lack of personal

5  jurisdiction can be waived as a result of a party's litigation

6  conduct); <u>see also</u> <u>Craters & Freighters v. Daisychain Enters.</u>, No.

7  09-4531 CW, 2010 WL 761310, at *3 (N.D. Cal. Mar. 2, 2010), <u>aff'd</u>

8  <u>sub nom</u> <u>Craters & Freighters v. Benz</u>, 465 Fed. App'x 719 (9th Cir.

9  2012) (defense of insufficient process can be waived based on

10  litigation conduct).

11      Deciding whether PTL and PDBL waived their insufficient

12  service of process defense requires the Court to evaluate PTL and

13  PDBL's conduct in this case to determine whether their behavior

14  militates in favor of finding waiver. See <u>Peterson</u>, 140 F.3d at

15  1318 (citing other circuit courts' cases holding that certain

16  factors can favor finding waiver even if a defense was properly

17  raised in a Rule 12 motion); <u>see also</u> <u>New.Net, Inc. v. Lavasoft</u>,

18  356 F. Supp. 2d 1071, 1074 (C.D. Cal. 2003). In this case, as

19  explained below, the Court finds that PTL and PDBL's earlier

20  conduct in this litigation constitutes waiver of their Rule

21  12(b)(5) defense.

22      In PTL and PDBL's favor, they raised their Rule 12(b)(5)

23  motion in the Philips Defendants' first motion to dismiss

24  Plaintiffs' complaint, and, when read most charitably, the first

25  footnote of the Joint MTD II technically preserves all previously

26  raised defenses. But PTL and PDBL's counsel, clarifying his

27  clients' positions regarding the Special Master's May 20 Status

28  Report, stated very clearly that the only pending motions were PTL

1  and PDBL's Rule 12(b)(2) motions to dismiss, and that the issue of

2  personal jurisdiction was the only pending motion.  Defs.' May 24

3  Letter at 1.

4       The Court finds that in this particular long-running MDL,

5  filing sworn statements and participating in status conferences

6  before a Special Master are litigation activities that support a

7  finding of waiver.  In such situations, permitting a defendant to

8  represent to the Court and other parties that a defense has been

9  abandoned, without putting that party at risk of waiver, could

10 unfairly allow parties to take advantage of other litigants who

11 take the abandonment on its face and do not then return to the

12 issue.  See Peterson, 140 F.3d at 1317-18.  The Court finds that

13 the vaguely worded language of the Joint MTD II footnote, submitted

14 after the May 24 Letter,[3] does not override PTL and PDBL's

15 counsel's clear statement of the parties' litigation status.

16      The May 24 Letter, sent on Howrey LLP's letterhead and signed

17 by "Counsel to PEIT and PAIEL," did not indicate that counsel

18 continued to appear "under protest," that PTL and PDBL still

19 maintained that service was improper, or that the Rule 12(b)(5)

20 motion was meant to be preserved and reasserted.  The May 24 Letter

21 references the complaints only to dispute their allegations of

22 personal jurisdiction -- it never refers to the service of the

23 complaints themselves.  PTL and PDBL certainly had the opportunity

24 to maintain their service objections before the Special Master, or

25 

26 [3] That note read, in relevant part, "Defendants reassert and
   preserve each of the arguments raised in their prior joint and
27 individual Motions to Dismiss, specifically . . . Philips
   Defendants' May 18, 2009 Motion to Dismiss Indirect Purchaser
28 Plaintiff's [sic] Consolidated Amended Complaint."  Joint MTD II at
   3 n.1.

United States District Court
For the Northern District of California

in their subsequent letter to the Special Master and the Court after the Special Master's May 20 Report.  Even if PTL and PDBL were correct that Plaintiffs had not re-served them with process by the time the Philips MTD I was filed, Reply at 2, the May 24 Letter's conspicuous statement that only the Rule 12(b)(2) defense remained overrides any service disputes that remained at that time. Therefore, even if the Joint MTD II were enough to meet the minimum requirements of Rule 12, the Court finds that PTL and PDBL's clarification of their litigation position militates in favor of finding waiver in this case.  <u>Peterson</u>, 140 F.3d at 1319.

Accordingly, the Court DENIES PTL and PDBL's Rule 12(b)(5) motion as untimely, finding that their May 24 Letter clarified that they had waived any service objections to Plaintiffs' complaint by May 24, 2010 at the latest.  The Court now turns to PTL and PDBL's Rule 12(b)(2) motion, which they properly preserved.

**B.   <u>Personal Jurisdiction</u>**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, defendants may move to dismiss for lack of personal jurisdiction. The Court may consider evidence presented in affidavits and declarations determining personal jurisdiction.  <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 922 (9th Cir. 2001).  Plaintiffs bear the burden of showing that the Court has personal jurisdiction over Defendants.  See <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151, 1154 (9th Cir. 2006).  "[T]his demonstration requires that the plaintiff make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss."  <u>Id.</u> (quotations omitted). "[T]he court resolves all disputed facts in favor of the plaintiff . . . ."  <u>Id.</u> (quotations omitted).  "The plaintiff cannot simply

rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (quotations and citations omitted).  The Court may not assume the truth of allegations that are contradicted by affidavit.  Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977).

Courts may exercise personal jurisdiction over a defendant only if (1) a statute confers jurisdiction and (2) exercising jurisdiction would comport with constitutional due process.  See Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1177 (9th Cir. 2004).  Since the federal Clayton Act, 15 U.S.C. § 22, confers jurisdiction in this case, the question on this motion is whether exercising jurisdiction would comport with due process.

For a court to exercise personal jurisdiction over a non-resident defendant consistent with due process, the defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  The relevant forum for this case's minimum contacts analysis is the United States.  Go-Video, Inc. v. Akai Elec. Co. Ltd., 885 F.2d 1406, 1415-16 (9th Cir. 1989).

If a defendant has sufficient minimum contacts with the relevant forum, personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction.  Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).  "A court may exercise specific jurisdiction where the cause of action arises out

of or has a substantial connection to the defendant's contacts with the forum." Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002) (citing Hanson v. Denckla, 357 U.S. 235, 251 (1958)). "Alternatively, a defendant whose contacts are substantial, continuous, and systematic is subject to a court's general jurisdiction even if the suit concerns matters not arising out of his contact with the forum." Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415 n.9 (1984)).

Plaintiffs do not argue that the Court has general jurisdiction over PTL and PDBL. They only argue that the Court should exercise specific jurisdiction. Courts may exercise specific personal jurisdiction depending on "the nature and quality of the defendant's contacts in relation to the cause of action." Data Disc, 557 F.2d at 1287. The Ninth Circuit applies a three-prong test when analyzing a claim of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs, and if he or she fails to satisfy either, specific

**United States District Court**
For the Northern District of California

1   jurisdiction is not established.  <u>Sher v. Johnson</u>, 911 F.2d 1357,

2   1361 (9th Cir. 1990).  If the plaintiff satisfies these prongs, the

3   burden shifts to the defendant "to present a compelling case" that

4   the exercise of jurisdiction would not be reasonable.  <u>Burger King</u>

5   <u>Corp. v. Rudzewicz</u>, 471 U.S. 462, 477 (1985).

6       Plaintiffs argue that the Court has specific jurisdiction over

7   PTL and PDBL because they expressly aimed their anticompetitive

8   actions at the United States by coordinating information with CRT

9   Product manufacturers to ensure that CRT Products were sold in the

10  United States at supracompetitive prices, and because PTL and PDBL

11  participated in a settlement with the Direct Purchaser Plaintiffs

12  ("DPPs").  Plaintiffs also contend that PTL and PDBL sold

13  substantial quantities of CRTs into the United States, because PTL

14  was the legal entity responsible for Philips Display Components'

15  ("PDC")[4] production of color display tubes ("CDTs") for the United

16  States market until the Philips-LG joint venture of June 2001,

17  while PDBL was responsible for PDC's production of 14" and 20"

18  color picture tubes ("CPTs") for sale in the United States until

19  June 2001.[5]

20      **i.   <u>Participation in the Settlement with the DPPs</u>**

21      The Court agrees with PTL and PDBL that participation in the

22  DPP settlement, on its own, does not support a finding of personal

23  jurisdiction over PTL and PDBL.  While PTL and PDBL are certainly

24  bound by that settlement agreement, Plaintiffs' present motion does

25  not relate to that agreement, and neither PTL nor PDBL has

26  _____

27  [4] "PDC" is what Plaintiffs call the CRT divisions within each
    regional Philips Electronics entity.

28  [5] CPTs and CDTs are different subtypes of CRTs.  CPTs were used in
    televisions, and CDTs were used in computer monitors.

**United States District Court**
For the Northern District of California

undertaken any affirmative claim related to it.  See Dow Chem. Co. v. Calderon, 422 F.3d 827, 834 (9th Cir. 2005) (supporting a finding of personal jurisdiction where a defendant had independently sought affirmative relief before a court concerning a transaction or occurrence that formed the basis of a different case).  The Court does not find that existence of the settlement agreement, without more, raises a prima facie case that PTL and PDBL purposefully availed themselves of, or directed activity into, the Court's jurisdiction.

    **ii.**    **Purposeful Direction**

The Ninth Circuit applies a three-part test for purposeful direction: "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  Id.  When considering the first prong, "something more than mere foreseeability" of an effect in the forum state is necessary.  Schwarzenegger, 374 F.3d at 805 (internal citation and quotation omitted).  And as the Ninth Circuit has warned, "the foreign-acts-with-forum-effects jurisdictional principle must be applied with caution, particularly in an international context."  Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175, 1178 (9th Cir. 1980) (internal quotations and citations omitted).

The parties do not appear to dispute the first prong of the test.  See Opp'n at 21-25, Reply at 9-12.  But PTL and PDBL contend that Plaintiffs fail to show that PTL and PDBL "sold and distributed CRT Products either directly or through [their]

subsidiaries or affiliates throughout the United States."  Reply at 10-12.

Plaintiffs argue that PTL and PDBL expressly aimed their anticompetitive activities at the United States, and that their evidence carries their burden at this stage.  An antitrust defendant "expressly aims" an intentional act at a forum state when its allegedly anticompetitive behavior is targeted at a resident of the forum, or at the forum itself.  See In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 743 (9th Cir. 2013).

The parties discuss Plaintiffs' pleadings and proof in terms of two series of events: the first concerns PTL and PDBL's direction of price-fixing activities into the United States primarily via Glass Meetings,[6] and the second concerns PTL and PDBL's manufacture of CDTs and CPTs, respectively, for sale in the United States.

### a. Meetings

Plaintiffs' evidence regarding PTL and PDBL's participation in Glass Meetings consists mainly of meeting reports, all unfortunately under seal.[7]  These meeting reports indicate that PTL employees participated in the Glass Meetings, discussing both the risk of decreased CDT demand in the North American market generally and the comparative strength of the United States monitor market.

---

[6] "Glass Meetings" were what the Defendants in this MDL allegedly called their organized, high-level, intra-company meetings to exchange pricing information and establish plans for the future.

[7] The Court's December 27, 2012 Order still stands: "[T]he Court will look favorably upon motions to intervene filed by members of the public who wish to access the sealed documents.  If such motions are filed, the Court will not hesitate to appoint a Special Master to review the documents to be unsealed, whose fee shall be paid directly by the party seeking to preserve confidentiality." ECF No. 1512.

**United States District Court**
For the Northern District of California

1  Capurro Decl. Exs. 22 ("Mar. 1, 1999 Notes"), 25 ("May 26, 2000

2  Notes") (filed under seal).  Meeting participants, including a PTL

3  manager, also specifically agreed to convey "Agreed Prices" to

4  their customers and to avoid leaking meeting minutes.  May 26, 2000

5  Notes.

6      PTL and PDBL contend that reports like these are not specific

7  enough to show express aim toward the United States.  See Reply at

8  10-12.  They argue that Plaintiffs' evidence as to PDBL's lack of

9  cooperation with price-fixing agreements at some point in 1999

10 actually shows that PDBL was not participating in the conspiracy

11 and directing CRTs to the United States prior to 1999.  Id. at 11

12 (citing Opp'n at 23) (relevant documents under seal).  PTL and PDBL

13 therefore conclude that Plaintiffs' proof does not show that PDBL

14 was involved in United States-directed price-fixing activities

15 after 1999.  Id.  Finally, PTL and PDBL note that a Philips Display

16 Components Company North America Strategy Review for the years

17 1996-2000, Capurro Decl. Ex. 34 (filed under seal), refers to dates

18 prior to PDBL's alleged participation in the conspiracy and does

19 not specify where PDBL ships CRTs.  Reply at 11.  PTL and PDBL

20 contend that purportedly corroborating testimony is similarly non-

21 specific because it only refers to PDBL's supply of CRTs to "North

22 America," probably Mexico, and states that at some unspecified

23 time, CRTs used in the United States were produced by a separate

24 entity in a United States factory.  Id. (citing Capurro Decl. Ex.

25 19 (filed under seal)).

26     The Court disagrees with PTL and PDBL's interpretation of

27 these facts.  While North America generally, and Mexico

28 specifically, were indeed discussed at these meetings, the reports

**United States District Court**
For the Northern District of California

1   indicate that the United States market was quite significant to the
2   alleged co-conspirators, and that PTL employees specifically
3   discussed potential price and shipping charges directed toward the
4   United States. Capurro Decl. Ex. 31 ("Apr. 14, 2000 Report").
5   Moreover, PENAC's Rule 30(b)(6) witness, as well as various other
6   depositions and pieces of documentary evidence, confirmed that
7   PENAC's Mexican operations produced monitors for the United States
8   market, and it has always been clear in this case that the United
9   States market was the most significant CRT and CRT Product market
10  for most of the defendants in the case, including Philips. See,
11  e.g., IPP Surreply at 5-7 & Capurro Decl. II ¶¶ 8-10 & Exs. A-F.

12      PDBL is correct that the sealed documents also state that PDBL
13  was not cooperating with certain Defendants' pricing and supply
14  amounts to Sharp Roxy Electronics Corp. ("SREC"), a Malaysian TV
15  manufacturer, whose New York office handled purchases from PDBL.
16  Capurro Decl. Ex. 27 ("January 8, 2000 Email") (discussing SREC's
17  forecast in an email thread involving a PDBL Marketing Manager)
18  (filed under seal). But the Court is not convinced by PDBL's
19  contention that this is evidence of PDBL's innocence: the evidence
20  indicates that PDBL agreed to "correct" its prices to SREC -- that
21  is, to "raise the price to match everyone else." Capurro Decl Ex.
22  30 ("Jan. 24, 2000 Report"). This is not innocent behavior.

23              **b.   Sales**

24      As to PTL and PDBL's sale of CRTs into the United States, PTL
25  and PDBL contend that sale of CRTs to "North America," without
26  more, or sale of monitors (not CRTs) to the United States, cannot
27  establish specific jurisdiction, especially since testimony
28  indicates that PTL-manufactured CDTs were shipped to Mexico, not

**United States District Court**
For the Northern District of California

1   the United States.  ECF No. 2560-1 ("Koons Decl.") ¶ 9 & Ex. A ("De

2   Moor Depo.") (filed under seal) at 226:5-10.  PTL contends that

3   even if those monitors were later sold into the United States by a

4   separate legal entity, PTL itself did not create the contact with

5   the United States.  Reply at 10 (citing Walden v. Fiore, 134 S. Ct.

6   1115, 1122 (2014)).  They claim that Plaintiffs' evidence of PTL's

7   CRT sales into "North America" does not specifically state that PTL

8   sold CRTs to United States customers.  Id. at 10 (citing Capurro

9   Decl. Exs. 23, 24, 34, 37 (filed under seal)).  They also claim

10  that other documents refer only to PTL's sale of computer monitors,

11  not CRTs, to the United States.  Id. (citing Capurro Decl. Exs. 19,

12  22, 25 (filed under seal)).

13      The Court finds that this contention is overridden in part by

14  countervailing facts.  For example, a PTL manager explicitly

15  testified to his meeting with United States companies like Dell and

16  Gateway to "promote tube sales," and to his attendance of United

17  States consumer electronics shows.  Capurro Decl. Ex. 10 ("Smith

18  Depo.") at 214:22-216:16, 328:22-329:3.

19      Further, PTL focuses on the act of sale itself, but equally

20  important is the act of aiming anticompetitive activity to the

21  United States.  In re W. States Wholesale Natural Gas Antitrust

22  Litig., 715 F.3d at 743.  The Court finds that such is the creation

23  of a type of contact -- aiming anticompetitive acts toward the

24  United States but rerouting them through a related entity should

25  not shield PTL from what Plaintiffs have sufficiently alleged to

26  have been United States-directed price-fixing activity.  See

27  Walden, 134 S. Ct. at 1122 (citing Burger King, 471 U.S. at 475,

28  for the principle that the defendant must create the contact with

the forum state).

Finally, the Rule 30(b)(6) witness whom PTL and PDBL cite as having stated that PTL-manufactured CDTs and monitors were sold through Mexico says, in the same deposition, that the monitors were being manufactured specifically for a United States company. De Moor Depo. at 140:22-141:8, 175:17-176:18.  This supports the finding that PTL was expressly aiming anticompetitive activity at the United States.  See In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d at 743.  At this point, with specific evidence indicating that PTL's actions were aimed toward setting supracompetitive prices in the United States, the Court finds that PTL directed its activities toward this forum.

Regarding PDBL, the Court's findings are similar.  PDBL's contention that it was not cooperating with purported price-fixing deals sometime in 1999 is weak.  The fact that PDBL was clearly participating in price-fixing meetings meant to direct sales of its CRTs into the United States is enough, at this stage, for the Court to find that it has personal jurisdiction over PDBL.  Specifically, the November 9, 1999 Report, Capurro Decl. Ex. 28, states clearly that PDBL had in the past offered low prices to customers in the United States but had recently begun to refuse to do so, while the January 24, 2000 Report states correspondingly that PDBL would follow pricing guidelines in the future.  At least some of these prices were directed to a buyer in New York.  See Capurro Decl. ¶ 53 (SREC negotiated its deals with PDBL from New York).  PDBL never addresses those facts.  The Court finds Plaintiffs have sufficiently made a prima facie showing that PDBL expressly aimed its price-fixing activities at the United States.

United States District Court
For the Northern District of California

18

**United States District Court**
For the Northern District of California

### iii.    But-For Causation

Regarding the last prong of specific jurisdiction analysis, Plaintiffs must make a prima facie showing that PTL and PDBL's United States-directed actions were a "but-for" cause of their claims. Bancroft & Masters, Inc. v. Augusta Nat., Inc., 223 F.3d 1082, 1088 (9th Cir. 2000); Unocal, 248 F.3d at 924. This "but-for" test requires "some nexus between the cause of action and the defendant's activities in the forum." Shute v. Carnival Cruise Lines, 897 F.2d 377, 387 (9th Cir. 1988), overruled on other grounds, 499 U.S. 585 (1991).

The Court finds that Plaintiffs have established this nexus by pleading that they paid artificially high prices in the United States for CRT Products, and that the prices were set by PTL and PDBL during Glass Meetings and in other United States-directed actions.

### iv.    Reasonableness

The Court finds that Plaintiffs have met the standard for specific jurisdiction. The next issue is whether exercising jurisdiction would be reasonable. PTL and PDBL do not argue this point, but the Court must nevertheless consider it. In determining whether the exercise of jurisdiction over a foreign defendant would be reasonable, the Court must consider seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state,
>
> (2) the burden on the defendant in defending in the forum,
>
> (3) the extent of the conflict with the sovereignty of the defendant's state,
>
> (4) the forum state's interest in adjudicating the dispute,

**United States District Court**
For the Northern District of California

(5) the most efficient judicial resolution of the controversy,

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and

(7) the existence of an alternative forum.

Bancroft & Masters, 223 F.3d at 1088 (citing Burger King, 471 U.S. at 476-77).  It is the defendant's burden to demonstrate unreasonableness.  Id. at 1088.

First, the extent of PTL and PDBL's purposeful interjection into the United States is enough for the Court to find that they are subject to personal jurisdiction here, as explained above.

Second, the Court finds that PTL and PDBL's burdens could be substantial.  However, the inconvenience for PTL and PDBL must be so great as to constitute a deprivation of due process, which is not the case here.  See Panavision, 141 F.3d at 1323.  They are represented by talented United States counsel, and the facts do not indicate to the Court that participating in this litigation further would be untenable for them.  Costliness and evidentiary complexity are simply parts of modern multinational litigation, especially when the claims at issue concern an international price-fixing conspiracy.

Third, as noted above, Defendant specifically directed price-fixing activity toward and into the United States.  Even though much of the alleged conspiracy-related activity occurred abroad, just as it did with many other Defendants, the end target and end result was the United States.  Moreover, only a narrow exercise of specific jurisdiction is at issue as to PTL and PDBL, which lessens the concerns of comity raised in Daimler AG v. Bauman, 134 S. Ct.

**United States District Court**
For the Northern District of California

746, 761-63 (2014) (finding that international comity concerns
should have weighed more heavily in an appellate court's analysis
of general jurisdiction).  This case is to some degree
international in character, which would weigh in PTL and PDBL's
favor, see Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc., 1 F.3d
848, 852 (9th Cir. 1993), but in this case the Court finds that
those Defendants' United States-oriented activity, plus the
narrower jurisdictional basis of specific jurisdiction, mitigates
that concern.

Fourth, Plaintiffs are United States citizens who allege that
they were harmed by PTL and PBL's activities, which set
anticompetitive prices on products Plaintiffs purchased in the
United States.  That gives United States federal courts an interest
in hearing this case.  Burger King, 471 U.S. at 473.

Fifth and sixth, because the Court has handled the MDL for
years, the efficiency, effectiveness, and convenience of this
matter's resolution are best served by keeping the case in this
forum, regardless of the ultimate remedy (if any) granted to
Plaintiffs.  While some evidence and many witnesses related to PTL
and PDBL may be abroad, the same is true for most parties in this
case, and a combination of modern technology and coordination among
the parties has so far ensured that evidentiary matters are handled
efficiently.

Finally, concerning the existence of an alternative forum, the
Court has received no briefing on the issue.  The Court finds, as
in other cases raising the same issue, that this factor favors
neither party.

///

**United States District Court**
For the Northern District of California

The Court finds, under the circumstances described above, that exercising specific jurisdiction over Defendant for the purposes of this case is reasonable.  The Court notes that PTL and PDBL occasionally object to Plaintiffs' allegations on the grounds that the various Philips Defendants left the CRT business in June 2001, either because of a joint venture with LG or for other reasons.  See, e.g., Reply at 11 n.9.  But Plaintiffs have sufficiently alleged that, for at least some times during the Class Period of 1995-2007, PTL and PDBL had minimum contacts with the United States sufficient for the Court to find that exercising specific jurisdiction over them is reasonable.

### C.   <u>Tardiness and Discovery</u>

PTL and PDBL ask that if the Court denies their motions to dismiss, it forbid Plaintiffs from requesting or receiving additional discovery.  Reply at 7 n.8.  They also note that they would be prejudiced by being added at this late hour and not being able to fully participate in discovery.  Id.  The Court is not convinced by the prejudice argument, especially since PTL and PDBL's lawyers have been involved in this action for years, and the Philips Defendants have had numerous opportunities to defend the interests of all of their constituent entities.

The Court does not find that the late confirmation of PTL and PDBL's status -- particularly given the evident lack of clarity between their present and former counsel's positions -- would work any unfairness on them.  As to discovery, both parties should be held to the calendar as it stands now.  As the Court has made clear, it has no plans to alter the trial calendar further.  If the

parties later come to specific stipulations that will neither cause prejudice nor derail this case, the Court will consider them.

**V.     CONCLUSION**

As explained above, the Court DENIES Defendants Philips Taiwan Limited and Philips do Brasil Ltda.'s motion to dismiss the Indirect Purchaser Plaintiffs' Fourth Consolidated Class Action Complaint.

IT IS SO ORDERED.

Dated: June 9, 2014

UNITED STATES DISTRICT JUDGE