Exhibit 10

## Tschirgi, John S.

| | |
|---|---|
| **From:** | Nelson, Laura E. <LENelson@rkmc.com> |
| **Sent:** | Friday, October 26, 2012 4:04 PM |
| **To:** | Cole, Eva W. |
| **Cc:** | Donovan, Molly M.; Chiu, Michelle Park <mchiu@morganlewis.com> (mchiu@morganlewis.com); Naranjo, Minna Lo (mnaranjo@morganlewis.com); Martinez, David; Baumgart, Jamie L.; Stewart, Jennifer M.; Mustes, George W. |
| **Subject:** | RE: In re CRT Antitrust Litigation, MDL 1917 (N.D. Cal.) |
| **Attachments:** | Best Buy Proposed Search Terms.doc; CRT custodians.XLSX |

Eva,

We are not available on the 19th or the 20th. Does the 28th or the 29th work better for you? The deposition will be at our Minneapolis office: 800 LaSalle Avenue. I understand that you are only seeking a deposition on topics related to pass on at this time. We are designating a witness to respond, subject to our right to respond to your formal notice with objections.

Regarding the search terms, I have reviewed your proposal and have accepted many of your revised terms. Attached is what I hope is our final list. In order to get documents produced in advance of the deposition we need to bring this process to a close.

Regarding custodians, as I told you, two weeks was a rough estimate—it certainly wasn't a guarantee. We completed our custodial interviews earlier this week, and have compiled the attached list of current and former employees that may have documents that are responsive to your requests.  We are willing to search the email files, personal files, and relevant shared files of each of these custodians to the extent they exist.

Finally regarding timing, without running the search we do not know the volume of documents that we are discussing. Given that, we certainly cannot make a blind commitment regarding production. That said, if we can get the search started today, we will commit to begin producing documents before the deposition, with a priority on documents that hit on the terms you have indicated you believe are relevant to pass-on.

Best,
Laura

---

**From:** Cole, Eva W. [mailto:EWCole@winston.com]
**Sent:** Wednesday, October 24, 2012 4:04 PM
**To:** Nelson, Laura E.
**Cc:** Donovan, Molly M.; Chiu, Michelle Park <mchiu@morganlewis.com> (mchiu@morganlewis.com); Naranjo, Minna Lo (mnaranjo@morganlewis.com); Martinez, David; Baumgart, Jamie L.; Stewart, Jennifer M.; Mustes, George W.
**Subject:** RE: In re CRT Antitrust Litigation, MDL 1917 (N.D. Cal.)

Dear Laura,

First, with respect to the 30(b)(6) deposition, the dates you have proposed for the deposition are only approximately 10 days in advance of our deadline to file an opposition to plaintiffs' motion for class certification.  Could your witness make himself or herself available November 19 or November 20 instead?  In the meantime, we are holding November 28 and 29, but hope that your witness will be available sooner.  In addition, could you please provide the name of the witness you will be designating?  Finally, please let us know the location of the deposition.  As mentioned in one of our previous calls, we note that we only expect

this witness to be able to testify to the 30(b)(6) pass-on subjects, but we reserve the right to ask for another witness to speak to the other 30(b)(6) subjects which we agreed to remove from this notice in the interest of efficiency.

With respect to the document production, please find attached our proposed revised search terms.  We are willing to accept many of your revisions to our search term proposal.  First, we will agree to strike several of the terms that you have suggested we strike (this is reflected in the attached; see items in the "strikethrough" font).  Second, we have added each term that you proposed that was not on our original list.  Third, we will agree that Best Buy does not have to search for documents whose only "hit" is a term on List A.  Fourth, we will agree that Best Buy does not have to search for documents whose only "hit" is a term on List D.  With these changes, the result is as follows:

1. List A terms (the relevant entities) are responsive only if they appear on a document that also contains a term from List B (the relevant products) or list D (competition and collusion).
2. List B terms (the relevant products) are responsive only if they appear on a document that also contains a term from list A (the relevant entities), C (pricing/sales) or D (competition and collusion).
3. List C terms (pricing/sales) are responsive only if they appear on a document that also contains a term from list B (the relevant products).
4. List D terms (competition and collusion) are responsive only if they appear on a document that also contains a term from list A (the relevant entities) or list B (the relevant products).

In terms of your document collection, the primary hold up is with respect to the custodians and not the search terms.  Best Buy cannot unilaterally select custodians for this purpose.  Thus, we are concerned by the fact that we have not received any list of proposed custodians to date.  As you recall, you told us that it would take approximately 2 weeks to complete your custodian interviews.  That was three and a half weeks ago.  When do you anticipate providing that information?

We also think it is critical to put into place a schedule for the production of the pass-on documents in the first instance (we can deal with the other documents later).  While we appreciate that you "hope" to produce documents in advance of the deposition, that is not a sufficient response.  Again, we do not want to have to go to Judge Legge and I am sure he does not want to be bothered with setting a production schedule, but if Best Buy continues to fail to commit to any dates for producing anything, we will be forced to seek his intervention.  Thus, please confirm that Best Buy will commit to completing the production of relevant pass-on documents two weeks in advance of the deposition date with the production to be made on a rolling basis.

Finally, thank you for the further clarification regarding your sales and purchasing data.  We look forward to receiving the brick and mortar operation data today.  As for the dotcom data, please let us know your proposed timeline on this.  It will be critical to having this data in advance of the 30(b)(6) deposition.  To the extent that we do not receive sufficient documents or data in advance of the deposition, please note that we will be prepared to call your witness again once we do have the information we need.  This would obviously not be in anyone's interest and I hope we can avoid that.

Thanks.

Best,

Eva

**Eva Cole**

**Partner**

Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193

D: +1 (212) 294-4609

F: +1 (212) 294-4700

Bio | VCard | Email | www.winston.com



**From:** Nelson, Laura E. [mailto:LENelson@rkmc.com]
**Sent:** Tuesday, October 23, 2012 10:04 PM
**To:** Cole, Eva W.
**Cc:** Donovan, Molly M.; Chiu, Michelle Park <mchiu@morganlewis.com> (mchiu@morganlewis.com); Naranjo, Minna Lo (mnaranjo@morganlewis.com); Martinez, David; Baumgart, Jamie L.; Stewart, Jennifer M.
**Subject:** RE: In re CRT Antitrust Litigation, MDL 1917 (N.D. Cal.)

Eva,

Best Buy will make a witness available for a 30(b)(6) deposition. We are available in Minneapolis on either November 28th or 29th. Please let me know as soon as possible which date you prefer.

You misunderstood me regarding the purchase order and point of sale data, as I did not commit to producing that last week. We will, however, be producing the purchase order and point of sale data for Best Buy's brick and mortar operation tomorrow. As I have previously indicated to you, we identified a discrepancy in our pull of the dotcom data and are continuing to work to resolve that issue.  We will be producing that data separately as soon as the issue is resolved.

Finally, regarding documents, it is our hope to be able to produce additional documents in advance of the deposition, however, as I have repeatedly indicated we will need to reach agreement on search terms in order to move forward on that. As you know, we were waiting for over two weeks to receive your edits to the search term list.  As I indicated in my email on Thursday, we made every effort to review your extensive edits as quickly as possible.  Attached is a revised search term proposal. Please let me know as soon as possible if we are in agreement so that we can begin collection.

Best,
Laura

**From:** Cole, Eva W. [mailto:EWCole@winston.com]
**Sent:** Tuesday, October 23, 2012 9:48 AM
**To:** Nelson, Laura E.
**Cc:** Donovan, Molly M.; Chiu, Michelle Park <mchiu@morganlewis.com> (mchiu@morganlewis.com); Naranjo, Minna Lo (mnaranjo@morganlewis.com); Martinez, David; Baumgart, Jamie L.; Stewart, Jennifer M.
**Subject:** RE: In re CRT Antitrust Litigation, MDL 1917 (N.D. Cal.)

Laura,

I was unable to reach you by phone this morning. We have still not heard from you regarding whether Best Buy is willing to produce documents related to pass-on and make a witness available for a 30(b)(6) deposition sufficiently in advance of defendants' deadline to respond to plaintiffs' motion for class certification in the

indirect purchaser action. Moreover, we have yet to hear any further information concerning the sales and purchasing data, which we understood from you was ready to be produced last week.

Unless we hear from you by the end of the day that Best Buy is willing to produce pass-on documents and a 30(b)(6) witness on the same subject before Thanksgiving and along the lines of the scheduled proposed in my email of last week, we will need to seek the Court's intervention. While we would prefer to resolve this amicably, we are reaching a critical point in time and Best Buy's refusal to commit to any sort of timeline for this discovery (or any discovery for that matter) leaves us with little choice.


Thank you.

Best,
Eva

**Eva Cole**
**Partner**

Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 (212) 294-4609
F: +1 (212) 294-4700
Bio | VCard | Email | www.winston.com



**From:** Nelson, Laura E. [mailto:LENelson@rkmc.com]
**Sent:** Thursday, October 18, 2012 3:26 PM
**To:** Cole, Eva W.
**Cc:** Donovan, Molly M.; Chiu, Michelle Park <mchiu@morganlewis.com> (mchiu@morganlewis.com); Naranjo, Minna Lo (mnaranjo@morganlewis.com); Martinez, David; Baumgart, Jamie L.; Stewart, Jennifer M.
**Subject:** RE: In re CRT Antitrust Litigation, MDL 1917 (N.D. Cal.)


Eva,

I am reviewing your proposed list and will respond in short order. That said, I note that it took you 15 days to respond to my initial list of search terms, so as I'm sure you can appreciate it may take more than 2 days for me to give these the meaningful review they deserve.


Best,
Laura

**From:** Cole, Eva W. [mailto:EWCole@winston.com]
**Sent:** Wednesday, October 17, 2012 8:19 PM
**To:** Nelson, Laura E.
**Cc:** Donovan, Molly M.; Chiu, Michelle Park <mchiu@morganlewis.com> (mchiu@morganlewis.com); Naranjo, Minna Lo (mnaranjo@morganlewis.com); Martinez, David; Baumgart, Jamie L.; Stewart, Jennifer M.
**Subject:** RE: In re CRT Antitrust Litigation, MDL 1917 (N.D. Cal.)


Laura,

Thanks for the call today.  As discussed, attached please find our proposed search terms, intended to identify documents responsive to our complete document requests.  The lists should be considered as follows:

1.  Any document hit upon with a search term from <u>EITHER</u> List A or List D is responsive and should be produced.

2.  With respect to Lists B and C, we would expect that a document containing any term from List B <u>AND</u> any term from List C is responsive.

We have identified the terms most relevant to the issue of pass-on with yellow highlighting and they are contained exclusively in Lists B and C.  Pursuant to our discussion, we expect to receive any documents hit upon with a term highlighted in yellow in List B <u>AND</u> a term highlighted in yellow in List C as soon as possible and in advance of the 30(b)(6) deposition of the witness designated to testify on the pass-on issues.

As explained on the call today, the pass-on information is relevant to our opposition to the indirect purchaser plaintiffs' class certification motion, which is due on December 10.  As you may know, the indirect purchaser plaintiffs' expert specifically relied upon certain of Best Buy's data, which makes the discovery concerning the data and the pass-on issues that much more relevant.  Even if Best Buy had not filed a complaint in this case, defendants would be entitled to this discovery.

Thus, we would appreciate your confirmation of the following proposed schedule:

1.  Production of documents relating to the pass-on issue by the end of the month, including the sales and purchasing data.

2.  30(b)(6) deposition sometime during the week of November 12.

If you are unable to confirm this schedule by the end of the week, we may be forced to seek the intervention of Judge Legge to ensure that we obtain the discovery we are entitled to under the current class certification schedule.

Separately, could you please let us know whether the written notifications of price increases that are referenced in the vendor agreements you produced are kept in a central file or are otherwise readily identifiable, and if so, we would ask that such documents be produced right away.

Thank you.

Best regards,

Eva


**Eva Cole**

**Partner**

Winston & Strawn LLP
200 Park Avenue

New York, NY 10166-4193

D: +1 (212) 294-4609

F: +1 (212) 294-4700

Bio | VCard | Email | www.winston.com



---

**From:** Baumgart, Jamie L. [mailto:JLBaumgart@rkmc.com] **On Behalf Of** Nelson, Laura E.
**Sent:** Friday, October 12, 2012 5:16 PM
**To:** Stewart, Jennifer M.; Cole, Eva W.
**Cc:** Donovan, Molly M.; Chiu, Michelle Park <mchiu@morganlewis.com> (mchiu@morganlewis.com); Naranjo, Minna Lo (mnaranjo@morganlewis.com); Nelson, Laura E.; Martinez, David; Baumgart, Jamie L.
**Subject:** RE: In re CRT Antitrust Litigation, MDL 1917 (N.D. Cal.)

Counsel,

Please see the attached correspondence.

Best,

Laura

---

**From:** Stewart, Jennifer M. [mailto:JStewart@winston.com]
**Sent:** Thursday, October 04, 2012 7:06 PM
**To:** Nelson, Laura E.
**Cc:** Cole, Eva W.; Donovan, Molly M.; Chiu, Michelle Park <mchiu@morganlewis.com> (mchiu@morganlewis.com); Naranjo, Minna Lo (mnaranjo@morganlewis.com)
**Subject:** In re CRT Antitrust Litigation, MDL 1917 (N.D. Cal.)

Laura,

Please see the attached correspondence.

Best,

Jennifer

**Jennifer M. Stewart**

**Associate**

Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193

D: +1 (212) 294-4743

F: +1 (212) 294-4700

Email | www.winston.com



The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable

privilege. Please do not disseminate this message without the permission of the author.
************************************************************************* Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

_____

Information contained in this e-mail transmission may be privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.

If you are not the intended recipient, do not read, distribute, or reproduce this transmission.

If you have received this e-mail transmission in error, please notify us immediately of the error by return email and please delete the message from your system.

Pursuant to requirements related to practice before the U. S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U. S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Thank you in advance for your cooperation.

Robins, Kaplan, Miller & Ciresi L.L.P.
http://www.rkmc.com

_____

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
************************************************************************* Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
************************************************************************* Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
************************************************************************* Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

# EXHIBIT 11
## [Highly Confidential – Filed Under Seal]

Exhibit 12

**Arguello, Sofia**

| | |
|---|---|
| **From:** | Stewart, Jennifer M. |
| **Sent:** | Tuesday, March 11, 2014 8:50 PM |
| **To:** | lenelson@rkmc.com |
| **Cc:** | Cole, Eva W.; Donovan, Molly M. |
| **Subject:** | CRT - Best Buy 30(b)(6) Deposition |
| **Attachments:** | NY-#1599985-v2-CRT_-_Best_Buy_2nd_30(b)(6)_notice.DOC |

Dear Laura,

Attached please find our proposed notice for a second 30(b)(6) deposition of the Best Buy plaintiffs. We would like to get this scheduled for toward the end of April, but, as per our recent phone call, please let us know when you are available to discuss timing once you have considered the appropriate deponent(s).

Thank you and best regards,

Jennifer

**Jennifer M. Stewart**
**Associate**
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 (212) 294-4743
F: +1 (212) 294-4700
Email | winston.com



*U.S. NEWS AND WORLD REPORT'S SPORTS LAW "LAW FIRM OF THE YEAR" 2012-2013*



*********

JEFFREY L. KESSLER (*pro hac vice*)
A. PAUL VICTOR (*pro hac vice*)
ALDO A. BADINI (257086)
EVA W. COLE (*pro hac vice*)
MOLLY M. DONOVAN (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail: jkessler@winston.com

STEVEN A. REISS (*pro hac vice*)
DAVID L. YOHAI (*pro hac vice*)
ADAM C. HEMLOCK (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
E-mail: david.yohai@weil.com

*Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd.,
and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd)*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944 SC |
| | MDL NO. 1917 |
| | **NOTICE OF DEPOSITION OF BEST BUY** |
| | Judge:          Hon. Samuel Conti |
| This Document Relates To: | |
| ALL ACTIONS | |

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THIS ACTION:**

2    **YOU ARE HEREBY NOTIFIED** that, pursuant to Federal Rule of Civil Procedure 30(b)(6),

3    Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic

4    Corporation (f/k/a Matsushita Electric Industrial Co., Ltd), by and through their counsel and in

5    conjunction with all defendants, will take the deposition of a designated representative of Best Buy

6    Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P.,

7    Bestbuy.com, LLC, and Magnolia HI-FI, Inc. (collectively, "Best Buy"), commencing on _____,

8    2014 at 9:30 AM at the offices of Winston & Strawn LLP, 200 Park Avenue, New York, NY 10166.

9    The topics of the deposition are listed in Exhibit A.

10    **YOU ARE FURTHER NOTIFIED** that the deposition shall be recorded stenographically

11    by a certified shorthand reporter who is duly authorized to take and transcribe said deposition, and a

12    real-time transcription service such as LiveNote may also be available for the use of counsel.  The

13    deposition may also be recorded by videotape, and the defendants reserve the right to use the

14    videotape of the deposition at trial.

15

16    Dated:  March ##, 2014                    WINSTON & STRAWN LLP

17

18                                              By:  /s/ Eva W. Cole
                                                JEFFREY L. KESSLER (*pro hac vice*)
19                                              A. PAUL VICTOR (*pro hac vice*)
                                                ALDO A. BADINI (257086)
20                                              EVA W. COLE (*pro hac vice*)
                                                MOLLY M. DONOVAN (*pro hac vice*)
21                                              WINSTON & STRAWN LLP
                                                200 Park Avenue
22                                              New York, NY 10166-4193
                                                Telephone: (212) 294-6700
23                                              Facsimile: (212) 294-4700
                                                E-mail: jkessler@winston.com
24

25                                              STEVEN A. REISS (*pro hac vice*)
                                                DAVID L. YOHAI (*pro hac vice*)
26                                              ADAM C. HEMLOCK (*pro hac vice*)
                                                WEIL, GOTSHAL & MANGES LLP
27                                              767 Fifth Avenue

28                                                              2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
E-mail: david.yohai@weil.com

*Attorneys for Defendants Panasonic Corporation, Panasonic Corporation of North America, and MT Picture Display Co., Ltd.*

3

**EXHIBIT A**

**DEFINITIONS**

1.      "Any" shall be construed to mean "any and all."

2.      "CRT" or "CRTs" means any (a) color picture tubes ("CPTs"), which are cathode ray tubes used primarily in color televisions; and (b) color display tubes ("CDTs"), which are used primarily in color computer monitors.

3.      "CRT Finished Product" means televisions containing CPTs and/or computer monitors containing CDTs.

4.      "CRT Product" means any CRT or CRT Finished Product.

5.      "Defendant" or "Defendants" means any of the entities currently or formerly named as defendants in this litigation and, without limitation, all of their past and present parents, subsidiaries, affiliates, joint ventures, officers, directors, employees, agents, attorneys, or representatives (and the parents', subsidiaries', affiliates', or joint ventures' past and present officers, directors, employees, agents, attorneys, or representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

6.      "Document" or "documents" has the broadest possible meaning pursuant to the Federal Rules of Civil Procedure including, but not limited to, all writings and other tangible things upon which any form of communication is recorded or reproduced, and preliminary drafts and non-identical copies of the above (whether such copies differ from the original by reason of notation made on such copies or otherwise). Without limiting the generality of the foregoing, the term "document" or "documents" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings or of other communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films,

4

tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, including email, and all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, but not limited to, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes, and any preliminary versions, drafts or revisions of any of the foregoing. "Document" or "documents" also includes each and every file folder or other material in which the above items are stored, filed or maintained.

7.      "Or" and "and" should be construed so as to require the broadest possible response. If, for example, a request calls for information about "A or B" or "A and B," you should produce all information about A and all the information about B, as well as all information about A and B collectively. In other words, "or" and "and" should be read as "and/or."

8.      "Relating to," "referring to," "regarding" or "with respect to" mean, without limitation, the following concepts: discussing, describing, reflecting, dealing with, and pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

9.      "Relevant Period" means March 1, 1995 to November 25, 2007.

10.      "You," "Your," or Your Company" mean the responding plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., BestBuy.Com, L.L.C., and Magnolia Hi-Fi, Inc., together with all present and former directors, officers, employees, or agents of the entities listed in this Definition.

5

**SCHEDULE OF TOPICS**

Witnesses with knowledge of the following matters during the Relevant Period (unless a time period is specified otherwise):

1.      Your overall corporate structure, including, the identification of departments within Best Buy responsible for the purchase, sale, pricing, marketing or distribution of CRTs and/or CRT Finished Products and their functions and the identification of any individuals that had managerial responsibility for the purchase, sale, pricing, marketing or distribution of CRTs and/or CRT Finished Products.

2.      The location of Best Buy's purchasing operations for CRT or CRT Finished Products, including the location of price negotiations.

3.      The identity and general description of the CRTs and/or CRT Finished Products Best Buy purchased, sold, marketed or distributed.

4.      The identity of the Defendants from whom you purchased CRTs and/or CRT Finished Products, and the identity and amount of CRTs and/or CRT Finished Products You purchased from them (by year, in units and U.S. dollars), if any.

5.      The identity of any non-Defendant manufacturers, producers or distributors from whom you purchased CRTs and/or CRT Finished Products, and the identity and amount of CRTs and/or CRT Finished Products (by year, in units and U.S. dollars) You purchased from them, if any.

6.      Best Buy's purchase or acquisition of CRTs or CRT Finished Products, including:

(a)  purchase volume (by units and dollar value);

(b)  the price quoted and paid for each purchase, including any discounts (e.g., early-pay, volume, or deduction from invoice ("DFI") discounts), rebates (e.g., guaranteed or unguaranteed volume, trailing credit, debit memoranda), and other terms of purchase;

(c)  the date and quantity of each purchase;

(d)  whether each purchase was for internal use or resale;

(e)  whether each purchase was for a new product or a refurbished product;

(f)  whether and when Best Buy took physical possession of the purchased CRTs or CRT

6

Finished Products;

(g) whether and when transfer of title to Best Buy occurred;

(h) the reasons for purchasing CRTs or CRT Finished Products in one state or country as opposed to another;

(i) the person(s) from whom each purchase was made;

(j) the location of the person(s) who negotiated and consummated the purchase on Best Buy's behalf and on behalf of the person(s) from whom the purchase was made;

(k) the locations from which and to which each purchase was shipped;

(l) the locations from which and to which Best Buy was billed for each transaction;

(m) the persons and locations from which and to which purchase orders and payments were issued; and

(n) the name of each entity from which You acquired the CRTs or CRT Finished Products.

7.     The factors Best Buy considered in determining (a) from which Defendant(s) and/or non-Defendant(s) to purchase CRTs and/or CRT Finished Products, and (b) which CRTs and/or CRT Finished Products to purchase from particular Defendants and non-Defendants.

8.     The process by which You negotiated, entered into, approved or ratified purchase agreements or contracts for CRT Finished Products, including: (a) Your policies and practices regarding the negotiation of terms and conditions of such sales contracts; (b) use of standardized sales or purchase contracts; (c) use of "MFN" (Most Favored Nation) or "MFC" (Most Favored Company) clauses or similar price-protection clauses; and (d) the identity and location of documents that relate to the matters specified in this topic.

9.     Your participation in any discounts, promotions, rebates or advertising cooperative programs provided or sponsored by any Defendant or non-Defendant from whom You purchased CRT Finished Products.

10.     Best Buy's sales of CRTs or CRT Finished Products, whether direct sales or sales by any person or entity purchasing or incorporating such CRTs or CRT Finished Products into other CRT Finished Products on Best Buy's behalf, including Best Buy's incorporation of CRTs in any

other product or resale of CRTs or CRT Finished Products, including:  (a) the sales volume (by units and dollar value); (b) the price quoted and received for each sale (including any discounts, rebates, and other terms of sale); (c) the date and quantity of each sale; and (d) the person(s) to whom such CRTs or CRT Finished Products were sold.

11.     Your policies and practices for setting the price at which You sold CRT Finished Products to Your customers, including consideration or use of the following:

(a)     formulas;

(b)     factors such as cost, supply, demand, competitor pricing, market forecasts, and product specifications;

(c)     price guidelines or price lists;

(d)     negotiations or negotiated prices;

(e)     commission costs;

(f)     average costs;

(g)     why pay prices;

(h)     minimum advertised prices;

(i)     meet-comping;

(j)     alternative distribution channels;

(k)     the percentage of price attributable to CRTs contained in CRT Finished Products sold;

(l)     any increase of price that Best Buy quoted or charged to any customer that was attributable to Best Buy's alleged overpayment of CRTs;

(m)     rebates;

(n)     below-cost pricing;

(o)     bundled product or services pricing;

(p)     most-favored-nation pricing;

(q)     sale pricing;

(r)     market development funds or demo budgets;

(s)     advertising funds;

8

1    (t)    non-price consideration;

2    (u)    loss-leader pricing;

3    (v)    early-pay discounts;

4    (w)    "min sell prices";

5    (x)    "closest thing to wholesale" prices;

6    (y)    builder prices;

7    (z)    spiffs or spivs; and

8    (aa)   if and how these policies, procedures, practices, methods, formulas, or factors vary by

9          purchaser.

10    12.    How Best Buy's CRT Finished Products were marketed for sale, including whether

11 factors other than price were evidence in the marketing materials and how the marketing strategy

12 was determined and implemented for the CRT Finished Products sold.

13    13.    Your use of discounts, promotions, rebates or loyalty programs in connection with the

14 sale of CRT Finished Products to Your customers, including how You recorded such discounts or

15 rebates, and the identity and location of Documents or data recording such discounts or rebates.

16    14.    Other products that Your Company believed were viewed by Your customers as

17 alternatives to CRT Finished Products, including: (a) products other than CRT Finished Products; (b)

18 the reasons that You believe purchasers viewed such products to be alternatives to the CRT Finished

19 Products You purchased from the Defendants; (c) the extent to which these products had any effect

20 on Your pricing decisions; and (d) the identity and location of Documents that relate to the matters

21 specified in this topic.

22    15.    Your policies and practices relating to Your decision to give priority to the

23 promotion, advertising or sale of certain Defendants' CRT Finished Products over other Defendants'

24 CRT Finished Products; to promote Defendants' CRT Finished Products over non-Defendants' CRT

25 Finished Products; or to promote non-Defendants' CRT Finished Products over Defendants' CRT

26 Finished Products.

27    16.    All contracts or any other agreements relating to CRTs or CRT Finished Products

28

9

1   between Best Buy and any entity, including the terms and conditions of any such contracts or

2   agreements, including the scope of the agreement, choice of law, and forum selection.

3          17.    Explanation of whether, based on records maintained by Best Buy, it is possible to

4   link, trace, or otherwise establish a relationship between the CRTs or CRT Finished Products that

5   Best Buy purchased to those that it sold and, if so, how.

6          18.    Whether the CRTs contained in each of the CRT Finished Products on which Best

7   Buy bases its claims were first shipped-to or billed-to a location outside the United States or inside

8   the United States, and an explanation of how Best Buy made or would make that determination.

9          19.    The identity of the manufacturer of the CRT contained in each of the CRT Finished

10   Products on which Best Buy bases its claims, and an explanation of how Best Buy has made or

11   would make that identification.

12          20.    Your practices, policies and procedures concerning Your market monitoring activity

13   for CRT Finished Products including, but not limited to the following: (a) Your competitive

14   intelligence activities; (b) Your use of third-party data sources and market share/data analyses; and

15   (c) Your knowledge, use, and tracking of Your competitors pricing for CRT Finished Products

16   during the Relevant Time Period.

17          21.    Best Buy's suspicions or beliefs that any manufacturer of CRTs was engaged in any

18   anticompetitive conduct relating to CRTs and the circumstances (including dates) surrounding, and

19   reasons for and sources of, such suspicions or beliefs, and any formal or informal investigations

20   conducted by Best Buy to confirm or deny such suspicions or beliefs.

21          22.    The identification, description, date, location, source, and persons involved in all

22   statements that Best Buy read, heard, or otherwise became aware of upon which Best Buy bases its

23   contention that Defendants fraudulently concealed the alleged conspiracy from Best Buy, including a

24   description of Best Buy's reliance on any such statements.

25          23.    The method(s) used by Your Company to track inventory levels, link returns and

26   sales, and monitor product margins of CRT Finished Products You sold.

27          24.    Your standards and practices with regard to tracking the purchases and sales of CRT

28

1    Finished Products for determining the profitability of sales, and for financial reporting purposes,

2    including the nature of the financial data available, the location of such data, and the names of

3    individuals responsible for maintaining such data.

4         25.    The identity of each of Your electronic databases related to the purchases and sales

5    listed in Topics 6 and 11 above, and the contents of each such databases, including the fields and/or

6    column headings used in such electronic databases.

7         26.    Your policies and practices related to the retention and deletion of all Documents and

8    data (including any of Your electronic databases) related to the purchases and sales listed in Topics 6

9    and 11.

10        27.    The extent to which Best Buy passed on its costs in purchasing or acquiring CRTs or

11   CRT Finished Products to its customers, including pricing practices and timing of price increases,

12   but not including precise figures or total amounts of price margins.

13        28.    The assignment of any claims asserted in the Complaint, including the identification

14   of the assignees, the identification of the assignors, the mechanism or form of said assignments, the

15   consideration received for any such assignment, and any agreements or plans for the distribution of

16   damages or settlement proceeds recovered in this action to the assignors.

17        29.    Best Buy's search for, production of, and all efforts to preserve any documents that

18   are potentially relevant to this or any other litigation or investigation concerning CRTs or CRT

19   Finished Products.

20        30.    Identification, location, last known address, telephone number, and e-mail address of

21   any person having or believed to have any information regarding the foregoing topics or facts

22   underlying these topics.

23        31.    Identification, location, last known address, telephone number, and e-mail address of

24   any person having or believed to have any documents or other electronic or non-electronic files

25   regarding the foregoing topics or facts underlying these topics, including any person having or

26   believed to have information regarding each of the fields contained in such files and the means by

27   which those fields were constructed.

28

NOTICE OF DEPOSITION OF BEST BUY                                    Case No. 07-5944 SC
                                                                    MDL NO. 1917

32.     A complete explanation of Your transactional sales and purchase data for CRTs or CRT Finished Products, including any transactional-level sales data produced by You in this action and the information contained in such data.

## CERTIFICATE OF SERVICE

I hereby certify that on March ##, 2014, I electronically caused a copy of "Notice of Deposition of Best Buy" to be served via e-mail upon Laura Nelson of Robins, Kaplan, Miller & Ciresi L.L.P., counsel for Best Buy, at lenelson@rkmc.com, as well as counsel for parties who have entered an appearance in this case.


By:      /s/ *Jennifer Stewart*
         Jennifer Stewart

Exhibit 13

## Arguello, Sofia

| | |
|---|---|
| **From:** | Stewart, Jennifer M. |
| **Sent:** | Tuesday, April 01, 2014 4:29 PM |
| **To:** | 'Nelson, Laura E.' |
| **Cc:** | Cole, Eva W.; Donovan, Molly M.; 'Baumgart, Jamie L.' |
| **Subject:** | RE: CRT - Best Buy 30(b)(6) Deposition |
| **Attachments:** | NY-#1599985-v3-CRT_-_Best_Buy_2nd_30(b)(6)_notice.DOC |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear Laura,

Attached please find our revised draft 30(b)(6) topics, which take into account our discussion last week. We think based on these revisions that the scope of information we are seeking is clear, and would request that you provide us with a date by which you can identify an appropriate deponent or deponents. We would also ask that you indicate a potential time frame for the deposition(s), as we would like to get this on the calendar shortly. As you may know, various other DAPs have agreed to the broader scope of topics set forth in our initial proposed notice, and thus we are not inclined to revise the notice any further.

Additionally, we have a few other housekeeping requests. First, Best Buy had previously identified Mickey Thedens as a potentially relevant custodian in October 2012, who we understand is no longer with the company. Mr. Stone, however, testified about a Mickey *Thaden*, who served as the Senior Merchant for Computer Monitors immediately before Mr. Stone assumed that position in 1998 (Tr. at 74:12-14). Please advise as to the correct spelling of this individual's name or whether these are two different individuals.

Second, we would appreciate if you could please confirm that Pamela Andreson, who Mr. Stone testified had left Best Buy (Tr. 65:16-21), is no longer a Best Buy employee.

Finally, in October 2012, we agreed to a list of sixty-four initial custodians for which you subsequently provided "expanded relevant job tile information" consisting of the title, start date, and department for each job that the custodian held during the relevant time period. *See* Letter of March 1, 2013. On April 22, 2013, you agreed to produce the documents of fifteen additional custodians – namely, Steven J. Andrzejewski, Sheri Best, John Keith Bryan, Gholamhossein Chehrzad, Michael Cuccia, Lisa D. Hancock, Lauren Haugen, Christopher R. Koller, John P. Maskel, Patrick D. Obrien, Lance Rusco, Joseph P. Thull, Ryan L. Tykwinski, Todd Philip Walker, and Scott J. Wallace. We would request that you provide us with the same "expanded relevant job title information" for these custodians as you did for the initial custodians.

Thank you,

Jennifer

**Jennifer M. Stewart**
Winston & Strawn LLP
D: +1 (212) 294-4743
winston.com



**From:** Nelson, Laura E. [mailto:LENelson@rkmc.com]
**Sent:** Thursday, March 20, 2014 4:01 PM
**To:** Stewart, Jennifer M.
**Cc:** Cole, Eva W.; Donovan, Molly M.; Baumgart, Jamie L.
**Subject:** RE: CRT - Best Buy 30(b)(6) Deposition

Confirmed.  Thanks, Jennifer.

---

**From:** Stewart, Jennifer M. [mailto:JStewart@winston.com]
**Sent:** Thursday, March 20, 2014 2:57 PM
**To:** Nelson, Laura E.
**Cc:** Cole, Eva W.; Donovan, Molly M.
**Subject:** RE: CRT - Best Buy 30(b)(6) Deposition

Laura,

As discussed, Eva and I are available to speak with you about these proposed topics at 11am EDT on Tuesday morning. Please confirm your availability for the call and we can use the following dial in information:

Dial in - 1-866-844-9418
Passcode – 12122944743

Thank you,

Jennifer

**Jennifer M. Stewart**
Winston & Strawn LLP
D: +1 (212) 294-4743
winston.com



---

**From:** Stewart, Jennifer M.
**Sent:** Tuesday, March 11, 2014 8:50 PM
**To:** lenelson@rkmc.com
**Cc:** Cole, Eva W. (EWCole@winston.com); Donovan, Molly M. (MMDonovan@winston.com)
**Subject:** CRT - Best Buy 30(b)(6) Deposition

Dear Laura,

Attached please find our proposed notice for a second 30(b)(6) deposition of the Best Buy plaintiffs. We would like to get this scheduled for toward the end of April, but, as per our recent phone call, please let us know when you are available to discuss timing once you have considered the appropriate deponent(s).

Thank you and best regards,

Jennifer

**Jennifer M. Stewart**
**Associate**
Winston & Strawn LLP
200 Park Avenue

New York, NY 10166-4193
D: +1 (212) 294-4743
F: +1 (212) 294-4700
Email | winston.com



# WINSTON &STRAWN

U.S. NEWS AND WORLD REPORT'S SPORTS LAW "LAW FIRM OF THE YEAR" 2012-2013

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. *********************************************************************** Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

_____

Information contained in this e-mail transmission may be privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.

If you are not the intended recipient, do not read, distribute, or reproduce this transmission.

If you have received this e-mail transmission in error, please notify us immediately of the error by return email and please delete the message from your system.

Pursuant to requirements related to practice before the U. S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U. S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Thank you in advance for your cooperation.

Robins, Kaplan, Miller & Ciresi L.L.P.
http://www.rkmc.com
_____

*********

JEFFREY L. KESSLER (*pro hac vice*)
A. PAUL VICTOR (*pro hac vice*)
ALDO A. BADINI (257086)
EVA W. COLE (*pro hac vice*)
MOLLY M. DONOVAN (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail: jkessler@winston.com

STEVEN A. REISS (*pro hac vice*)
DAVID L. YOHAI (*pro hac vice*)
ADAM C. HEMLOCK (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
E-mail: david.yohai@weil.com

*Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd.,
and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd)*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Master File No. 3:07-cv-05944 SC

MDL NO. 1917

**NOTICE OF DEPOSITION OF BEST BUY**

Judge:         Hon. Samuel Conti

This Document Relates To:

ALL ACTIONS

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THIS ACTION:**

2  **YOU ARE HEREBY NOTIFIED** that, pursuant to Federal Rule of Civil Procedure 30(b)(6),

3  Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic

4  Corporation (f/k/a Matsushita Electric Industrial Co., Ltd), by and through their counsel and in

5  conjunction with all defendants, will take the deposition of a designated representative of Best Buy

6  Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P.,

7  Bestbuy.com, LLC, and Magnolia HI-FI, Inc. (collectively, "Best Buy"), commencing on _____,

8  2014 at 9:30 AM at the offices of Winston & Strawn LLP, 200 Park Avenue, New York, NY 10166.

9  The topics of the deposition are listed in Exhibit A.

10  **YOU ARE FURTHER NOTIFIED** that the deposition shall be recorded stenographically

11  by a certified shorthand reporter who is duly authorized to take and transcribe said deposition, and a

12  real-time transcription service such as LiveNote may also be available for the use of counsel.  The

13  deposition may also be recorded by videotape, and the defendants reserve the right to use the

14  videotape of the deposition at trial.

15

16  Dated:  April ##, 2014                    WINSTON & STRAWN LLP

17

18                                                      By:  /s/ *Eva W. Cole*
                                                       JEFFREY L. KESSLER (*pro hac vice*)
19                                                     A. PAUL VICTOR (*pro hac vice*)
                                                       ALDO A. BADINI (257086)
20                                                     EVA W. COLE (*pro hac vice*)
                                                       MOLLY M. DONOVAN (*pro hac vice*)
21                                                     WINSTON & STRAWN LLP
                                                       200 Park Avenue
22                                                     New York, NY 10166-4193
                                                       Telephone: (212) 294-6700
23                                                     Facsimile: (212) 294-4700
                                                       E-mail: jkessler@winston.com
24
                                                       STEVEN A. REISS (*pro hac vice*)
25                                                     DAVID L. YOHAI (*pro hac vice*)
                                                       ADAM C. HEMLOCK (*pro hac vice*)
26                                                     WEIL, GOTSHAL & MANGES LLP
                                                       767 Fifth Avenue
27
28                                                                    2

New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
E-mail: david.yohai@weil.com

*Attorneys for Defendants Panasonic Corporation,*
*Panasonic Corporation of North America, and MT*
*Picture Display Co., Ltd.*

3

NOTICE OF DEPOSITION OF BEST BUY                         Case No. 07-5944 SC
                                                         MDL NO. 1917

**EXHIBIT A**

**DEFINITIONS**

1.      "Any" shall be construed to mean "any and all."

2.      "CRT" or "CRTs" means any (a) color picture tubes ("CPTs"), which are cathode ray tubes used primarily in color televisions; and (b) color display tubes ("CDTs"), which are used primarily in color computer monitors.

3.      "CRT Finished Product" means televisions containing CPTs and/or computer monitors containing CDTs.

4.      "CRT Product" means any CRT or CRT Finished Product.

5.      "Defendant" or "Defendants" means any of the entities currently or formerly named as defendants in this litigation and, without limitation, all of their past and present parents, subsidiaries, affiliates, joint ventures, officers, directors, employees, agents, attorneys, or representatives (and the parents', subsidiaries', affiliates', or joint ventures' past and present officers, directors, employees, agents, attorneys, or representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

6.      "Document" or "documents" has the broadest possible meaning pursuant to the Federal Rules of Civil Procedure including, but not limited to, all writings and other tangible things upon which any form of communication is recorded or reproduced, and preliminary drafts and non-identical copies of the above (whether such copies differ from the original by reason of notation made on such copies or otherwise). Without limiting the generality of the foregoing, the term "document" or "documents" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings or of other communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films,

4

tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, including email, and all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, but not limited to, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes, and any preliminary versions, drafts or revisions of any of the foregoing. "Document" or "documents" also includes each and every file folder or other material in which the above items are stored, filed or maintained.

7.     "Or" and "and" should be construed so as to require the broadest possible response. If, for example, a request calls for information about "A or B" or "A and B," you should produce all information about A and all the information about B, as well as all information about A and B collectively. In other words, "or" and "and" should be read as "and/or."

8.     "Relating to," "referring to," "regarding" or "with respect to" mean, without limitation, the following concepts: discussing, describing, reflecting, dealing with, and pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

9.     "Relevant Period" means March 1, 1995 to November 25, 2007.

10.     "You," "Your," or Your Company" mean the responding plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., BestBuy.Com, L.L.C., and Magnolia Hi-Fi, Inc., together with all present and former directors, officers, employees, or agents of the entities listed in this Definition.

NOTICE OF DEPOSITION OF BEST BUY                                    Case No. 07-5944 SC
                                                                   MDL NO. 1917

**SCHEDULE OF TOPICS**

Witnesses with knowledge of the following matters during the Relevant Period (unless a time period is specified otherwise):

1.      Your overall corporate structure, including, the identification of departments within Best Buy responsible for the purchase, sale, pricing, marketing or distribution of CRTs and/or CRT Finished Products and their functions and the identification of any individuals that had managerial responsibility for the purchase, sale, pricing, marketing or distribution of CRTs and/or CRT Finished Products.

2.      The location of Best Buy's purchasing operations for CRT or CRT Finished Products, including the location of price negotiations.

3.      The identity and general description of the CRTs and/or CRT Finished Products Best Buy purchased, sold, marketed or distributed.

4.      The identity of the Defendants from whom you purchased CRTs and/or CRT Finished Products, and the general and relative volume of CRTs and/or CRT Finished Products You purchased from them, including any changes over the Relevant Period.

5.      The identity of any non-Defendant manufacturers, producers or distributors from whom you purchased CRTs and/or CRT Finished Products, and the general and relative volume of CRTs and/or CRT Finished Products You purchased from them, including any changes over the Relevant Period.

6.      Best Buy's purchase or acquisition of CRTs or CRT Finished Products, including:

(a)     whether Best Buy made any purchases for internal use;

(b)     whether Best Buy purchased any refurbished products;

(c)     whether and when Best Buy took physical possession of the purchased CRTs or CRT Finished Products; and

(d)     whether and when transfer of title to Best Buy occurred.

7.      The factors Best Buy considered in determining (a) from which Defendant(s) and/or non-Defendant(s) to purchase CRTs and/or CRT Finished Products, and (b) which CRTs and/or

6

CRT Finished Products to purchase from particular Defendants and non-Defendants.

8.    The process by which You negotiated, entered into, approved or ratified purchase agreements or contracts for CRT Finished Products, including: (a) Your policies and practices regarding the negotiation of terms and conditions of such sales contracts; (b) use of standardized sales or purchase contracts; (c) use of "MFN" (Most Favored Nation) or "MFC" (Most Favored Company) clauses or similar price-protection clauses; and (d) the identity and location of documents that relate to the matters specified in this topic.

9.    Your participation in any discounts, promotions, rebates or advertising cooperative programs provided or sponsored by any Defendant or non-Defendant from whom You purchased CRT Finished Products.

10.    Best Buy's sales of CRTs or CRT Finished Products, including any sales by any person or entity purchasing or incorporating such CRTs or CRT Finished Products into other CRT Finished Products on Best Buy's behalf.

11.    Your policies and practices for setting the price at which You sold CRT Finished Products to Your customers, including consideration or use of the following:

(a)    commission costs;

(b)    average costs;

(c)    why pay prices;

(d)    meet-comping;

(e)    alternative distribution channels;

(f)    the percentage of price attributable to CRTs contained in CRT Finished Products sold;

(g)    any increase of price that Best Buy quoted or charged to any customer that was attributable to Best Buy's alleged overpayment of CRTs;

(h)    below-cost pricing;

(i)    bundled product or services pricing;

(j)    most-favored-nation pricing;

(k)    sale pricing;

1    (l)    market development funds or demo budgets;

2    (m)   advertising funds;

3    (n)    non-price consideration;

4    (o)    loss-leader pricing;

5    (p)    early-pay discounts;

6    (q)    "min sell prices";

7    (r)    "closest thing to wholesale" prices;

8    (s)    builder prices;

9    (t)    spiffs or spivs; and

10    (u)    if and how these policies, procedures, practices, methods, formulas, or factors vary by

11          purchaser.

12    12.    How Best Buy's CRT Finished Products were marketed for sale, including whether

13 factors other than price were evidenced in the marketing materials and how the marketing strategy

14 was determined and implemented for the CRT Finished Products sold.

15    13.    Your use of rebates in connection with the sale of CRT Finished Products to Your

16 customers.

17    14.    Other products that Your Company believed were viewed by Your customers as

18 alternatives to CRT Finished Products, including: (a) products other than CRT Finished Products; (b)

19 the reasons that You believe purchasers viewed such products to be alternatives to the CRT Finished

20 Products You purchased from the Defendants; (c) the extent to which these products had any effect

21 on Your pricing decisions; and (d) the identity and location of Documents that relate to the matters

22 specified in this topic.

23    15.    Your policies and practices relating to Your decision to give priority to the

24 promotion, advertising or sale of certain Defendants' CRT Finished Products over other Defendants'

25 CRT Finished Products; to promote Defendants' CRT Finished Products over non-Defendants' CRT

26 Finished Products; or to promote non-Defendants' CRT Finished Products over Defendants' CRT

27 Finished Products.

28

16.     All contracts or any other agreements relating to CRTs or CRT Finished Products between Best Buy and any entity, including the terms and conditions of any such contracts or agreements, including the scope of the agreement, choice of law, and forum selection.

17.     Whether the CRTs contained in each of the CRT Finished Products on which Best Buy bases its claims were first shipped-to or billed-to a location outside the United States or inside the United States, and an explanation of how Best Buy made or would make that determination.

18.     The identity of the manufacturer of the CRT contained in each of the CRT Finished Products on which Best Buy bases its claims, and an explanation of how Best Buy has made or would make that identification.

19.     Your practices, policies and procedures concerning Your market monitoring activity for CRT Finished Products including, but not limited to the following: (a) Your competitive intelligence activities; (b) Your use of third-party data sources and market share/data analyses; and (c) Your knowledge, use, and tracking of Your competitors pricing for CRT Finished Products during the Relevant Time Period.

20.     Best Buy's suspicions or beliefs that any manufacturer of CRTs was engaged in any anticompetitive conduct relating to CRTs and the circumstances (including dates) surrounding, and reasons for and sources of, such suspicions or beliefs, and any formal or informal investigations conducted by Best Buy to confirm or deny such suspicions or beliefs.

21.     The identification, description, date, location, source, and persons involved in all statements that Best Buy read, heard, or otherwise became aware of upon which Best Buy bases its contention that Defendants fraudulently concealed the alleged conspiracy from Best Buy, including a description of Best Buy's reliance on any such statements.

22.     The method(s) used by Your Company to track inventory levels, link returns and sales, and monitor product margins of CRT Finished Products You sold.

23.     Your standards and practices with regard to tracking the purchases and sales of CRT Finished Products for determining the profitability of sales, and for financial reporting purposes, including the nature of the financial data available, the location of such data, and the names of

9

individuals responsible for maintaining such data.

24.     Your policies and practices related to the retention and deletion of all Documents and data (including any of Your electronic databases) related to the purchases and sales listed in Topics 6 and 11.

25.     The extent to which Best Buy passed on its costs in purchasing or acquiring CRTs or CRT Finished Products to its customers, including pricing practices and timing of price increases, but not including precise figures or total amounts of price margins.

26.     The assignment of any claims asserted in the Complaint, including the identification of the assignees, the identification of the assignors, the mechanism or form of said assignments, the consideration received for any such assignment, and any agreements or plans for the distribution of damages or settlement proceeds recovered in this action to the assignors.

27.     Best Buy's search for, production of, and all efforts to preserve any documents that are potentially relevant to this or any other litigation or investigation concerning CRTs or CRT Finished Products.

28.     Identification, location, last known address, telephone number, and e-mail address of any person having or believed to have any information regarding the foregoing topics or facts underlying these topics.

29.     Identification, location, last known address, telephone number, and e-mail address of any person having or believed to have any documents or other electronic or non-electronic files regarding the foregoing topics or facts underlying these topics, including any person having or believed to have information regarding each of the fields contained in such files and the means by which those fields were constructed.

10

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on April ##, 2014, I electronically caused a copy of "Notice of Deposition of

3

Best Buy" to be served via e-mail upon Laura Nelson of Robins, Kaplan, Miller & Ciresi L.L.P.,

4

counsel for Best Buy, at lenelson@rkmc.com, as well as counsel for parties who have entered an

5

appearance in this case.

6

7

By:      /s/ *Jennifer Stewart*

Jennifer Stewart

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF DEPOSITION OF BEST BUY

Case No. 07-5944 SC
MDL NO. 1917

Exhibit 14

**Arguello, Sofia**

| | |
|---|---|
| **From:** | Nelson, Laura E. <LENelson@rkmc.com> |
| **Sent:** | Wednesday, April 09, 2014 6:24 PM |
| **To:** | Stewart, Jennifer M. |
| **Cc:** | Cole, Eva W.; Donovan, Molly M.; Baumgart, Jamie L. |
| **Subject:** | Re: CRT - Best Buy 30(b)(6) Deposition |

Jennifer,

We are reviewing your revised notice with our client and will be putting up one or more witnesses on the topics subject to our objections. We will provide dates shortly. On our last call, I was told I would be receiving a list of the fact witnesses you wanted to depose when I received the revised draft notice. I still have not received that list, but would appreciate receiving it as soon as possible as it may impact scheduling of the 30(b)(6).

Best,
Laura

On Apr 9, 2014, at 5:02 PM, "Stewart, Jennifer M." <JStewart@winston.com> wrote:

> Dear Laura,
>
> We have been unable to reach you by phone this week. We still have not received a response to our 30(b)(6) topics, or received from you the name or names of Best Buy's deponent(s) or a date by which you will provide us with this information. As we have previously explained, there are already depositions on the calendar for virtually all of the other DAPs in this litigation and there have been no issues with the general scope of these topics for those depositions that have been taken to date.
>
> Unless we hear from you by the end of the day tomorrow with a date by which Best Buy will identify its deponent and some proposed dates for this deposition, we will need to seek Judge Walker's intervention. We would prefer to resolve this without the court's assistance, but we need to move forward with this discovery in order to comply with the rigorous schedule in this case.
>
> Thank you,
>
> Jennifer
>
>
> **Jennifer M. Stewart**
>
> Winston & Strawn LLP
> D: +1 (212) 294-4743
> winston.com
> <image001.jpg>
> **From:** Stewart, Jennifer M.
> **Sent:** Tuesday, April 01, 2014 4:29 PM
> **To:** Nelson, Laura E.
> **Cc:** Cole, Eva W.; Donovan, Molly M.; Baumgart, Jamie L.
> **Subject:** RE: CRT - Best Buy 30(b)(6) Deposition
>
>
> Dear Laura,

Attached please find our revised draft 30(b)(6) topics, which take into account our discussion last week. We think based on these revisions that the scope of information we are seeking is clear, and would request that you provide us with a date by which you can identify an appropriate deponent or deponents. We would also ask that you indicate a potential time frame for the deposition(s), as we would like to get this on the calendar shortly. As you may know, various other DAPs have agreed to the broader scope of topics set forth in our initial proposed notice, and thus we are not inclined to revise the notice any further.

Additionally, we have a few other housekeeping requests. First, Best Buy had previously identified Mickey Thedens as a potentially relevant custodian in October 2012, who we understand is no longer with the company. Mr. Stone, however, testified about a Mickey *Thaden*, who served as the Senior Merchant for Computer Monitors immediately before Mr. Stone assumed that position in 1998 (Tr. at 74:12-14). Please advise as to the correct spelling of this individual's name or whether these are two different individuals.

Second, we would appreciate if you could please confirm that Pamela Andreson, who Mr. Stone testified had left Best Buy (Tr. 65:16-21), is no longer a Best Buy employee.

Finally, in October 2012, we agreed to a list of sixty-four initial custodians for which you subsequently provided "expanded relevant job tile information" consisting of the title, start date, and department for each job that the custodian held during the relevant time period. *See* Letter of March 1, 2013. On April 22, 2013, you agreed to produce the documents of fifteen additional custodians – namely, Steven J. Andrzejewski, Sheri Best, John Keith Bryan, Gholamhossein Chehrzad, Michael Cuccia, Lisa D. Hancock, Lauren Haugen, Christopher R. Koller, John P. Maskel, Patrick D. Obrien, Lance Rusco, Joseph P. Thull, Ryan L. Tykwinski, Todd Philip Walker, and Scott J. Wallace. We would request that you provide us with the same "expanded relevant job title information" for these custodians as you did for the initial custodians.

Thank you,

Jennifer


**Jennifer M. Stewart**

Winston & Strawn LLP

D: +1 (212) 294-4743

winston.com

<image001.jpg>

**From:** Nelson, Laura E. [mailto:LENelson@rkmc.com]
**Sent:** Thursday, March 20, 2014 4:01 PM
**To:** Stewart, Jennifer M.
**Cc:** Cole, Eva W.; Donovan, Molly M.; Baumgart, Jamie L.
**Subject:** RE: CRT - Best Buy 30(b)(6) Deposition

Confirmed.  Thanks, Jennifer.

**From:** Stewart, Jennifer M. [mailto:JStewart@winston.com]
**Sent:** Thursday, March 20, 2014 2:57 PM
**To:** Nelson, Laura E.
**Cc:** Cole, Eva W.; Donovan, Molly M.
**Subject:** RE: CRT - Best Buy 30(b)(6) Deposition

Laura,

As discussed, Eva and I are available to speak with you about these proposed topics at 11am EDT on Tuesday morning. Please confirm your availability for the call and we can use the following dial in information:

Dial in - 1-866-844-9418
Passcode – 12122944743

Thank you,

Jennifer

**Jennifer M. Stewart**
Winston & Strawn LLP
D: +1 (212) 294-4743
winston.com
<image001.jpg>

**From:** Stewart, Jennifer M.
**Sent:** Tuesday, March 11, 2014 8:50 PM
**To:** lenelson@rkmc.com
**Cc:** Cole, Eva W. (EWCole@winston.com); Donovan, Molly M. (MMDonovan@winston.com)
**Subject:** CRT - Best Buy 30(b)(6) Deposition

Dear Laura,

Attached please find our proposed notice for a second 30(b)(6) deposition of the Best Buy plaintiffs. We would like to get this scheduled for toward the end of April, but, as per our recent phone call, please let us know when you are available to discuss timing once you have considered the appropriate deponent(s).

Thank you and best regards,

Jennifer

**Jennifer M. Stewart**
**Associate**
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
D: +1 (212) 294-4743
F: +1 (212) 294-4700
Email | winston.com
<image001.jpg>
<image002.jpg>

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
*********************************************************************************

Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

_____

Information contained in this e-mail transmission may be privileged, confidential and covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.

If you are not the intended recipient, do not read, distribute, or reproduce this transmission.

If you have received this e-mail transmission in error, please notify us immediately of the error by return email and please delete the message from your system.

Pursuant to requirements related to practice before the U. S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U. S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

Thank you in advance for your cooperation.

Robins, Kaplan, Miller & Ciresi L.L.P.
http://www.rkmc.com
_____


The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
*********************************************************************************
Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

# EXHIBIT 15
## [Highly Confidential – Filed Under Seal]

Exhibit 16

1

JEFFREY L. KESSLER (*pro hac vice*)
STEVEN A. REISS (*pro hac vice*)

2

A. PAUL VICTOR (*pro hac vice*)
DAVID L. YOHAI (*pro hac vice*)

ALDO A. BADINI (257086)
ADAM C. HEMLOCK (*pro hac vice*)

3

EVA W. COLE (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP

MOLLY M. DONOVAN (*pro hac vice*)
767 Fifth Avenue

4

WINSTON & STRAWN LLP
New York, New York 10153-0119

5

200 Park Avenue
Telephone: (212) 310-8000

New York, NY 10166-4193
Facsimile: (212) 310-8007

6

Telephone: (212) 294-6700
E-mail: david.yohai@weil.com

Facsimile: (212) 294-4700

7

E-mail: jkessler@winston.com

8

*Attorneys for Defendant Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)*

9

Additional Counsel Listed on Signature Page

10

11

## IN THE UNITED STATES DISTRICT COURT

12

## NORTHERN DISTRICT OF CALIFORNIA

13

## SAN FRANCISCO DIVISION

14

In re: CATHODE RAY TUBE (CRT)
Case No. Master File No. 3:07-cv-05944-SC

15

ANTITRUST LITIGATION

MDL No. 1971

16

This Document Relates to:
Individual Case No. 3:11-cv-05513-SC

17

18

BEST BUY ACTION
**DEFENDANTS PANASONIC**

11-cv-05513 SC
**CORPORATION AND LG**

19

**ELECTRONICS, INC.'S THIRD SET OF**
**INTERROGATORIES TO PLAINTIFFS**

20

**BEST BUY CO., INC., BEST BUY**
**PURCHASING LLC, BEST BUY**

21

**ENTERPRISE SERVICES, INC.; BEST**
**BUY STORES, L.P., BESTBUY.COM,**

22

**LLC, AND MAGNOLIA HI-FI, INC.**

23

**PROPOUNDING PARTIES:**
Defendants Panasonic Corporation (f/k/a Matsushita

24

Electric Industrial Co., Ltd.) and LG Electronics, Inc.

25

**RESPONDING PARTY:**
Best Buy Co., Inc., Best Buy Purchasing LLC, Best

Buy Enterprise Services, Inc., Best Buy Stores, L.P.,

26

Bestbuy.com, L.L.C., and Magnolia Hi-Fi, Inc.

27

**SET NO.:**
THIRD

28

1    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants

2  Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.) and LG Electronics, Inc.

3  hereby request that Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise

4  Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, Inc. ("Plaintiffs") in

5  the above-captioned action respond to the following second set of interrogatories (the

6  "Interrogatories"). Plaintiffs are directed to serve verified answers in conformance with the above-

7  cited rules at the offices of WINSTON & STRAWN LLP, Attn: Jennifer Stewart, 200 Park Avenue,

8  New York, New York 10166 (or at such other place as may be agreed upon by the parties), within

9  thirty (30) days after the date of the service hereof.

10                              **DEFINITIONS**

11    For the purposes of these Interrogatories, the following definitions apply:

12    A.    "All" shall be construed as all, each, any, and every.

13    B.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary

14  to bring within the scope of the Interrogatories all information that might otherwise be construed to

15  be outside of their scope.

16    C.    "Complaint" means the First Amended Complaint filed by Best Buy Co., Inc., Best

17  Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com,

18  L.L.C., and Magnolia Hi-Fi, Inc., on October 3, 2013 as Case No. 3:11-cv-05513-SC.

19    D.    "CRTs" means cathode ray tubes.

20    E.    "CRT Product(s)" means products containing CRTs.

21    F.    "Document(s)" has the broadest possible meaning permissible under the Federal

22  Rules of Civil Procedure and/or applicable precedent, including but not limited to any written,

23  printed, typed, recorded, filmed, punched, transcribed, taped or other graphic matter of any kind or nature,

24  however produced or reproduced, whether in hard copy, electronic, or other form, and includes, without

25  limitation, pamphlets, brochures, books, booklets, information sheets, papers, articles, journals,

26  magazines, computer printouts, Internet search results, tapes, discs or other forms of audio, visual or

27  audio/visual recordings, records, memoranda, reports, financial statements, affidavits, handwritten and

28

2

1   other notes, transcripts, paper, indices, letters, envelopes, telegrams, cables, electronic mail messages,

2   telex messages, telecopied messages, telephone messages, summaries or records of telephone

3   conversations, summaries or records of personal conversations or interviews, summaries or records of

4   meetings or conferences, minutes or transcriptions or notations of meetings or telephone conversations

5   or other communications of any type, tabulations, studies, analyses, evaluations, projections, work

6   papers, statements, summaries, opinions, journals, desk calendars, product labels, prescriptions,

7   package inserts or other information accompanying medications, maintenance or service records,

8   appointment books, diaries, billing records, checks, bank account statements, invoices, photographs,

9   microfilms, tapes or other records, punch cards, magnetic tapes, discs, data cells, drums, printouts, other

10  data compilations (in any form) from which information can be obtained, recordings made through data

11  processing techniques and the written information necessary to understand and use such materials, and

12  any other documents discoverable under the Federal Rules of Civil Procedure.

13      G.   "Person" means and includes all natural persons or entities, governmental units,

14  partnerships, firms, corporations, associations, joint ventures, any other form of business

15  organization or arrangement, or any form of public, private or legal entity.

16      H.   "You" and "Your" means the Plaintiffs responding to these interrogatories, their

17  predecessors in interest, divisions, successors, and assigns, the present and former officers, directors,

18  employees, attorneys, agents, and representatives of any of the above, and all persons acting or

19  purporting to act on their behalf. "You" or "Your" includes, but is not limited to, all entities who

20  assigned their claims to You.

21      I.   The singular form of any noun or pronoun includes the plural, and vice versa.

22      J.   Terms in the present tense include terms in the past tense, and terms in the past tense

23  include terms in the present tense.

24                          **GENERAL INSTRUCTIONS**

25      1.   Answers to these Interrogatories are to be based upon all knowledge or information

26  available to You, including, but not limited to, all information or knowledge derivable from business

27  or other records, and all knowledge or information possessed by any person, including but not

28

3

1  limited to any employee, agent, attorney, expert witness, consultant, representative or other advisor,

2  subject to the instruction, direction or control of You.

3     2.     Each Interrogatory is to be answered separately and in order, and shall be construed

4  independently and not by reference to any other Interrogatory.

5     3.     Plaintiffs should answer each Interrogatory fully, unless it is objected to, in which

6  event the reasons for the objection should be specifically and separately stated.

7     4.     Plaintiffs shall sign any answers or responses; objections, if any, are to be signed by

8  the attorney making them.

9     5.     Where a complete answer to a particular Interrogatory is not possible, the

10  Interrogatory should be answered to the extent possible and a statement should be made indicating

11  why only a partial answer is given, together with the identity of any Documents or sources from

12  which more complete information is obtainable.

13     6.  ·  With respect to any Interrogatory that You may allege that You are unable to answer

14  due to insufficient knowledge, You are requested to specify the nature of the inquiries made in an

15  attempt to enable You to answer the Interrogatory, including the identity of any person

16  communicated with in an attempt to enable You to respond fully to the Interrogatory.

17     7.     If, in answering these Interrogatories, You claim any ambiguity in interpreting either

18  a particular Interrogatory or a definition or instruction, such claim shall not be utilized as a basis for

19  refusing to answer.  Instead, You shall set forth as part of the answer the language deemed to be

20  ambiguous and the interpretation utilized in the response to the Interrogatory.

21     8.     When referring to a person, "identify" means to state the person's full name, present

22  or last known address, telephone number, present or last known place of employment, and present or

23  last known title at that place of employment.  Once a person has been identified in accordance with

24  this paragraph, only the name of the person need be listed in response to subsequent discovery

25  requesting the identification of the person.

26     9.     When referring to a purchase, "identify" means to identify each person involved in

27  negotiating the purchase, the place(s) of purchase negotiation, the date and place of purchase, size,

28

4

model, type (CPT or CDT), seller and manufacturer of each CRT purchased, each Person involved in the purchase and the time period and nature of each Person's involvement, and any Documents or other evidence of the purchase.

10.    If You elect to produce business records in response to an Interrogatory pursuant to Federal Rule of Civil Procedure 33(d), You shall specifically identify the portion(s) of the business record You produced or will produce that are responsive to the Interrogatory.  You shall produce the business records as they are kept in the usual course of business or shall organize and label them to correspond with the Interrogatory.  For all documents produced pursuant to Rule 33(d), identify the name of the employee, officer, or agent certifying the documents as business records.

## INTERROGATORIES

**Interrogatory No. 16:**

16.    Identify your executives, employees, or agents who participated in any market monitoring activity, including those in the Competitive Strategies Group, related to CRTs or CRT Products.  Market monitoring activity includes, but is not limited to, the following: (a) Your competitive intelligence activities; (b) Your use of third-party data sources or market share/data analyses; (c) Your knowledge, use, or tracking of Your competitors' prices; (d) Your knowledge, use, or tracking of Your suppliers' prices; (e) Your knowledge, use, or tracking of Your competitors' promotions; (f) Your knowledge, use, or tracking of Your suppliers' promotions; and/or (g) Your or any of your executives', employees', or agents' participation in any meetings with Your competitors.

**Interrogatory No. 17:**

17.    For each person identified in response to Interrogatory No. 16, separately describe the nature of his or her knowledge, responsibility, or involvement regarding market monitoring activity.

**Interrogatory No. 18:**

18.    Identify each person You believe to have knowledge that supports the fraudulent concealment allegations in Your Complaint, including at paragraphs 220 through 232.

DEFENDANTS PANASONIC CORP. AND LG ELECTRONICS, INC.'S
THIRD SET OF INTERROGATORIES TO BEST BUY

Case No. 07-5944 SC
MDL NO. 1917

**Interrogatory No. 19:**

19.     To the extent not already identified in Interrogatories No. 16 through 18, Identify each person You believe to have knowledge that supports the allegations in Your Complaint.

**Interrogatory No. 20:**

20.     For each person identified in response to Interrogatory No. 19, separately Identify the nature of his or her knowledge that supports the allegations in your Complaint.

Dated: April 4, 2014                             WINSTON & STRAWN LLP

By:  /s/ *Eva W. Cole*
JEFFREY L. KESSLER (*pro hac vice*)
A. PAUL VICTOR (*pro hac vice*)
ALDO A. BADINI (257086)
EVA W. COLE (*pro hac vice*)
MOLLY M. DONOVAN (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
E-mail: jkessler@winston.com

STEVEN A. REISS (*pro hac vice*)
DAVID L. YOHAI (*pro hac vice*)
ADAM C. HEMLOCK (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
E-mail: david.yohai@weil.com

*Attorneys for Defendant Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)*

By: /s/ *Hojoon Hwang*
Hojoon Hwang
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, CA 94105
Tel: 415-512-4000
Fax: 415-512-4077

6

Email: Hojoon.Hwang@mto.com

*Counsel for Defendant LG Electronics, Inc.*

7

1

JEFFREY L. KESSLER (*pro hac vice*)        STEVEN A. REISS (*pro hac vice*)
2   A. PAUL VICTOR (*pro hac vice*)            DAVID L. YOHAI (*pro hac vice*)
ALDO A. BADINI (257086)                    ADAM C. HEMLOCK (*pro hac vice*)
3   EVA W. COLE (*pro hac vice*)               WEIL, GOTSHAL & MANGES LLP
MOLLY M. DONOVAN (*pro hac vice*)          767 Fifth Avenue
4   WINSTON & STRAWN LLP                       New York, New York 10153-0119
200 Park Avenue                            Telephone:  (212) 310-8000
5   New York, NY 10166-4193                    Facsimile:  (212) 310-8007
Telephone: (212) 294-6700                  E-mail: david.yohai@weil.com
6   Facsimile: (212) 294-4700
7   E-mail: jkessler@winston.com

8   *Attorneys for Defendants Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)*

9   Additional Counsel Listed on Signature Page

10

11                    IN THE UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13                         SAN FRANCISCO DIVISION

14   In re: CATHODE RAY TUBE (CRT)           Case No. Master File No. 3:07-cv-05944-SC
15   ANTITRUST LITIGATION
                                             MDL No. 1971
16
This Document Relates to:                Individual Case No. 3:11-cv-05513-SC
17
BEST BUY ACTION                          **CERTIFICATE OF SERVICE**
18   11-cv-05513 SC
19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2          I declare that I am employed with the law firm of Winston & Strawn LLP, 200 Park Avenue,
New York, New York 10166.  I am not a party to the within cause, and I am over the age of eighteen
3    years.  I further declare that on April 4, 2014, I served a copy of:

4

5    **DEFENDANTS PANASONIC CORPORATION AND LG ELECTRONICS, INC.'S THIRD
SET OF INTERROGATORIES TO PLAINTIFFS BEST BUY CO., INC., BEST BUY
6    PURCHASING LLC, BEST BUY ENTERPRISE SERVICES, INC.; BEST BUY STORES,
L.P., BESTBUY.COM, LLC, AND MAGNOLIA HI-FI, INC.**

7    ☒        **BY ELECTRONIC MAIL** by sending a true copy thereof to the addressees, as stated
8    below.

| | |
|---|---|
| 9   Roman M. Silberfeld<br>E-mail: RMSilberfeld@rkmc.com<br>10  David Martinez<br>E-mail: DMartinez@rkmc.com<br>11  Laura E. Nelson<br>E-mail: LeNelson@rkmc.com<br>12  ROBINS, KAPLAN, MILLER & CIRESI<br>13  L.L.P.<br>14  *Attorneys for Best Buy Co., Inc., Best Buy*<br>15  *Purchasing LLC, Best Buy Enterprise*<br>*Services, Inc.; Best Buy Stores, L.P.,*<br>16  *Bestbuy.com, llc, and Magnolia Hi-Fi, Inc.* | Philip J. Iovieno<br>E-mail:  piovieno@bsfllp.com<br>William A. Isaacson<br>E-mail:  wisaacson@bsfllp.com<br>BOIES, SCHILLER & FLEXNER<br>LLP<br><br>*Liaison Counsel for Direct Action*<br>*Plaintiffs* |
| 17  Mario N. Alioto<br>E-mail: malioto@tatp.com<br>18  TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP<br>19<br>*Interim Lead Counsel for the Indirect Purchaser*<br>20  *Plaintiffs* | Guido Saveri<br>E-mail: guido@saveri.com<br>SAVERI & SAVERI, INC.<br><br>*Interim Lead Counsel for the Direct*<br>*Purchaser Plaintiffs* |

21    Executed on April 4, 2014 at New York, New York.  I declare under penalty of perjury under the
22    laws of the United States of America that the foregoing is true and correct.

23                                                                  /s/
24                                                          Jennifer M. Stewart

25

26

27

28

# EXHIBIT 17
[Highly Confidential – Filed Under Seal]

Exhibit 18

Volume 8

Pages 1124 – 1283

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SUSAN ILLSTON, JUDGE

IN RE: TFT-LCD (FLAT-PANEL)        )
ANTITRUST LITIGATION.              )    NO. C 07-MDL-1827 SI


San Francisco, California                  Individual Cases:
Thursday                                   CASE NO. 10-CV-4572
August 1, 2013                             CASE NO. 12-CV-4114
8:37 a.m.

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Best Buy Plaintiffs:
                    ROBINS, KAPLAN, MILLER & CIRESI LLP
                    2049 Century Park East
                    Suite 3400
                    Los Angeles, California  90067
              BY:   ROMAN M. SILBERFELD, ESQ.
                    DAVID MARTINEZ, ESQ.
                    LAURA E. NELSON, ESQ.
                    BERNICE CONN, ESQ.
                    MICHAEL A. GEIBELSON, ESQ.


For Defendant HannStar Display Corporation:
                    FREITAS TSENG & KAUFMAN, LLP
                    100 Marine Parkway
                    Suite 200
                    Redwood Shores, California  94065
              BY:   ROBERT E. FREITAS, ESQ.
                    JASON SHEFFIELD ANGELL, ESQ.
                    JESSICA NICOLE LEAL, ESQ.


(Appearances continued, next page)

**APPEARANCES, CONTINUED:**

**For Toshiba Defendants:**
                  **WHITE & CASE LLP**
                  **701 Thirteenth Street, N.W.**
                  **Washington, D.C.  20005**
        **BY:  CHRISTOPHER M. CURRAN, ESQ.**
                  **JOHN H. CHUNG, ESQ.**
                  **J. MARK GIDLEY, ESQ.**
                  **AGATHA KOPROWSKI, ESQ.**
                  **HEATHER BURKE, ESQ.**
                  **MARTIN TOTO, ESQ.**

**Also Present:**
                  **Naomi Kusakabe**
                  **Alex Tsai**
                  **Paul Chiu**
                  **Wendy Fritz**
                  **Julius Christensen**

**Reported by:    BELLE BALL, CSR #8785, CRR, RDR**
                  **CONNIE KUHL, CSR #13173, RMR, CRR**
                  **Official Reporters, U.S. District Court**

Case 4:07-cv-05944-JST Document 2676-16 Filed 07/07/14 Page 61 of 83    1194
Case3:07-md-01827-SI Document3209-16 Filed09/07/13 Page61 of 101
FRITZ - CROSS EXAMINATION / CURRAN

1    A    Correct.

2    Q    And what type of information does NPD gather there?

3    A    Sales information, right.

4    Q    Price?

5    A    Yes.

6    Q    Quantity?

7    A    Categories.  Uh-huh.

8    Q    Does it report on trends and things like that?

9    A    They do some trend reporting, yes.

10   Q    And then, is Stevenson another company like NPD?

11   A    Similar, but it's survey-based.

12   Q    Okay.  And, is that again a subscription service that

13   Best Buy subscribes to?

14   A    We have a partnership with them as well.

15   Q    Okay.  And then, Ms. Fritz, I think you also referred to

16   having had a field intelligence team.  Is that right?

17   A    Yes.

18   Q    Okay.  What was the field intelligence team?

19   A    We refer to it as the "competitive intelligence team."  As

20   I mentioned, it's been scaled back significantly, just based on

21   cost and that kind of thing.

22        But, the main focus of that, again, was people in the

23   specific markets understanding what our competition was doing,

24   and making sure that there was line of sight, one.

25        Two, other promotions that were going and pricing going

Case 4:07-cv-05944-JST Document 2676-16 Filed 07/07/14 Page 62 of 83    1195
Case 3:07-md-01827-SI Document 8220-16 Filed 07/23/14 Page 62 of 101
FRITZ - CROSS EXAMINATION / CURRAN

```
1    back to our price match guarantee, we wanted to make sure we
2    were competitive.  If we weren't competitive, they would be
3    reporting that back to the buyer team to make sure that there
4    was awareness of that.
5  Q    So this competitive field intelligence team would go out
6  in the marketplace, including store visits at competitor sites,
7  and gather up information.  Is that right?
8  A    Yes.
9  Q    And, use other resources available to them to gather up
10 information?
11 A    I can't speak for other resources.
12 Q    Okay.  And, you said it's been scaled back recently.
13 When?
14 A    I -- I actually don't have a lot of visibility to the
15 details.  I just know recently that group has gotten a lot
16 smaller.  So, probably in the last three or four months.
17 Q    Okay.  Is Mr. Britton still an employee of Best Buy?
18 A    I believe so.
19 Q    And he's been the head of competitive intelligence at
20 Best Buy, right?
21 A    He was not the head of it.  He was, I think, a manager in
22 competitive intelligence.  But --
23 Q    Who was the head, or who is the head of Best Buy's
24 competitive field intelligence team?
25 A    At one time, Mike Ray headed up our competitive
```

*********

Case 4:07-cv-05944-JST Document 2676-16 Filed 07/07/14 Page 64 of 83
Case 3:07-md-01827-SI Document 7329-16 Filed 02/03/13 Page 90 of 101     1213
FRITZ - CROSS EXAMINATION / CURRAN

 **BY MR. CURRAN:**

**Q**    Well, Ms. Fritz, does it appear to you that these pages at the back (Indicating) were a -- represent a periodic distribution of information from Asia?

**A**    It -- this (Indicating) is a distribution of information from Asia.  Whether it was a periodic update, I cannot say.

**Q**    Okay.  Why was this information being distributed and disseminated within Best Buy, including at the highest levels?

**A**    I could not specify why.

**Q**    Ma'am, wasn't it so Best Buy could compete more effectively against its competitors?

**A**    We were always gathering competitive information, so that we were knowledgeable about what was happening in the marketplace.

**Q**    Ms. Fritz, you testified this morning about Black Friday.  And, I think you said it was the most important day in the most important time of the year in retail.  Did I get that right?

**A**    Yes.

**Q**    And I think Mr. Silberfeld asked you, and I think you agreed, that Black Friday was the day that retailers, at least apocryphally, became profitable during the year, right?

**A**    I can't remember specifically what he asked me, but what I was explaining was Black Friday was a key prominent time during the holiday, and really kind of kicked off the holiday time frame.  And to a large degree, would dictate success and

*********

Case 4:07-cv-05944-JST Document 2676-16 Filed 07/07/14 Page 66 of 83
Case 3:07-md-01827-SI Document 8994 Filed 08/02/13 Page 66 of 183    1236
FRITZ - CROSS EXAMINATION / CURRAN

1  Q    Okay.  Do you know, did Wal-Mart change their forecast as

2  to that product?

3  A    I don't recall.

4  Q    All right.  Ms. Fritz, so we have just seen the use of

5  some competitive intelligence at Best Buy.  Right?

6  A    Yes.

7  Q    So, the effort to gather and assemble competitive

8  information, including on price and quantity, and the use of

9  that information within Best Buy, for its own decision-making.

10 Right?

11 A    Can you repeat that?

12 Q    Yeah.  So, so, through the last three exhibits, we've seen

13 the gathering of competitive information within Best Buy, the

14 analysis of it, including competitors' pricing and quantity

15 information, and the determination by Best Buy as to what its

16 strategy should be.

17 A    Yes.  It was common practice for us to gather competitive

18 information.

19 Q    And to use it in your decision-making.

20 A    And use it as an input -- one input into our

21 decision-making.

22 Q    Was that activity, in your judgment, consistent with

23 Best Buy's code of business ethics?

24 A    Yes.

25 Q    Why?

# EXHIBIT 19
## [Highly Confidential – Filed Under Seal]

# EXHIBIT 20
## [Highly Confidential – Filed Under Seal]

# EXHIBIT 21
## [Highly Confidential – Filed Under Seal]

# EXHIBIT 22
[Highly Confidential – Filed Under Seal]

# EXHIBIT 23
[Highly Confidential – Filed Under Seal]

# EXHIBIT 24
## [Highly Confidential – Filed Under Seal]

# EXHIBIT 25
## [Highly Confidential – Filed Under Seal]

# EXHIBIT 26
## [Highly Confidential – Filed Under Seal]

# EXHIBIT 27
[Highly Confidential – Filed Under Seal]

# EXHIBIT 28
[Highly Confidential – Filed Under Seal]

Exhibit 29

Pages 313 – 520

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SUSAN ILLSTON

In Re:  TFT-LCD (Flat Panel)        )
Antitrust Litigation.               )
_____     )   No. M. 07-01827 SI
                                        San Francisco, California
                                        Tuesday
                                        May 22, 2012
                                        8:42 a.m.


**TRANSCRIPT OF PROCEEDINGS**



**APPEARANCES:**

| | |
|---|---|
| **For Direct Purchaser Plaintiffs** | Lieff, Cabraser, Heimann & Bernstein<br>275 Battery Street, 30th Floor<br>San Francisco, CA  94111<br>(415) 956-1000<br>(415) 956-1008 (fax)<br>**BY:  RICHARD HEIMANN<br>BRENDAN GLACKIN** |
| **For Direct Purchaser Plaintiffs** | Pearson, Simon, Warshaw & Penny, LLP<br>44 Montgomery Street<br>Suite 2450<br>San Francisco, CA 94104<br>(415) 433-9000<br>(415) 433-9008 (fax)<br>**BY:  BRUCE LEE SIMON<br>AARON SHEANIN** |
| **For Plaintiff Crago Corporation** | Polsinelli Shughart, PC<br>Twelve Wyandotte Plaza<br>120 West 12th Street<br>Kansas City, MO  64105-1929<br>(816) 421-3355<br>**BY:  DANIEL D. OWEN** |

(Appearances continued on next page)

**APPEARANCES CONTINUED:**

| | |
|---|---|
| **For Defendant**<br>**Toshiba Corporation** | White & Case<br>701 Thirteenth Street, NW<br>Washington, D.C.  20005<br>(202) 626-3600<br>(202) 639-9355 (fax) |

           BY:  **CHRISTOPHER M. CURRAN**
                 **J. MARK GIDLEY**
                 **JOHN CHUNG**
                 **MARTIN TOTO**

                      White & Case, LLP
                      3000 El camino Real
                      5 Palo Alto Square, 9th Floor
                      Palo Alto, CA  94306
                      (650) 213-0300
           BY:  **HEATHER M. BURKE**

| | |
|---|---|
| **For H. S. Suh** | Covington & Burling, LLP<br>1201 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20004-2401<br>(202) 662-6000<br>(202 778-5429 (fax) |

           BY:  **DEREK LUDWIN**


**ALSO PRESENT:**       **Naomi Kusakabe, Toshiba**

                       **Julius G. Christensen, Toshiba**

                       **Phyllis Kim, Korean-language interpreter**

                       **Jared Taylor, Japanese-language interpreter**

Case 4:07-cv-05944-JST Document 2676-16 Filed 07/07/14 Page 80 of 83
Case 3:07-md-01827-SI Document 8819 Filed 09/09/13 Page 82 of 209   403
ALLEN - CROSS EXAMINATION / GIDLEY

12:04:29          **MR. OWEN:** Objection. May we approach?

12:04:32          **THE COURT:** Yes.

12:09:53     (Whereupon the following discussion was had at side bar)

12:09:53          **MR. OWEN:** We believe that questions regarding

12:09:54 pricing violate the Court's Order *in limine* about the

12:09:55 pass-through or any kind of downstream sales after the direct

12:09:56 purchase by Crago.

12:09:57          **THE COURT:** I'm assuming you're not going to violate

12:09:58 the order.

12:09:58          **MR. GIDLEY:** Well, your Honor, we think that the

12:09:59 evidence goes to the substantial-affects issue, first.

12:10:00          Second, they spent some time on --

12:10:01          **THE COURT:** But there's an Order, you know. There's

12:10:02 an Order.

12:10:02          **MR. GIDLEY:** Yes, your Honor. Pass-through. I'm not

12:10:03 asking -- I'm not arguing that ultimate end customers paid

12:10:04 more.

12:10:04          Instead, your Honor, the fact that he's made

12:10:05 purchases of these monitors, and his customers, in turn, are

12:10:06 price sensitive, means that he would be a price-sensitive

12:10:08 purchaser. And I think I'm allowed to establish that,

12:10:09 your Honor.

12:10:09          **THE COURT:** So what were you planning to ask him?

12:10:10          **MR. GIDLEY:** I'm going to ask him about his practices

12:10:11 in the industry, as a purchaser; and why he would want to seek,

Case 4:07-cv-05944-JST Document 2676-16 Filed 07/07/14 Page 81 of 83
Case 3:07-md-01827-SI Document 8718-1 Filed 09/09/13 Page 82 of 209    404
**ALLEN - CROSS EXAMINATION / GIDLEY**

12:10:12    as a purchaser, low prices; and the steps he takes to do that.

12:10:14         Now, his testimony on Direct was that he's a CEO, and

12:10:16    not a salesman, as if he's disconnected from sales.

12:10:17         In point of fact, when steep discount is offered to a

12:10:18    customer, the salesman has to come to the CEO as a loner.

12:10:20    That's all I want at this point in the exam.

12:10:21    **MR. CURRAN:** If I could add, I believe your Honor's

12:10:22    rulings on motions *in limine* left the door open on substantial

12:10:23    fact FTAIA-type issues.

12:10:24    **MR. SIMON:** Well --

12:10:24    **THE COURT:** I'm still not clear. You're asking him:

12:10:25    Does he care about the prices that he has to pay?

12:10:27    **MR. GIDLEY:** Right. And why does he care? He cares

12:10:27    because his customers, in turn, were price sensitive, because

12:10:28    they can always run off to Sam's or Dell or another competitor.

12:10:30         So, having opened the door, talking about what's

12:10:31    going on in Kansas City, I think we want to talk about what's

12:10:32    the industry custom in Kansas City of a purchaser of class

12:10:34    panels.

12:10:34    **MR. OWEN:** There was no opening of the door about the

12:10:35    downstream prices. That is what is prohibited. And the minute

12:10:36    he's talking -- he begins to talk about what price you resold

12:10:38    these goods at, he's into the prohibited area.

12:10:39    **THE COURT:** Well, if you want to ask him if he cares

12:10:40    what price he has to pay, that's fair game.

12:10:41        And if you're asking him, "Was it a competitive

12:10:42   market such that, if people didn't buy from him, there were

12:10:44   other places they could buy from," I think that's fair game,

12:10:45   too.

12:10:45        The concern, though, is any emphasis on -- on the

12:10:47   pass-through.  That's what I'm worried about.

12:10:48        **MR. GIDLEY:**  I'll try to be extremely careful.  We'll

12:10:49   take it one question --

12:10:50        **THE COURT:**  The fact that the markets are competitive

12:10:50   in terms of that he would like to get as cheap a purchase price

12:10:52   for himself that he can, and that his customers also want to

12:10:53   pay as little as they can get by with -- that's fine.

12:10:55        **MR. SIMON:**  We've got to be very careful, though.

12:10:55   There's really no undoing it if we pass through the

12:10:57   pass-through line.  So, you know, we'll rely on the good faith

12:10:58   of counsel not to tread there, but it's -- once the information

12:10:59   is out that he's reseller, and passed anything through, then

12:11:00   we're -- you can't unring that bell, really.

12:11:02        **THE COURT:**  Mr. Simon, every human in this courtroom

12:11:02   knows about that, so don't give me bells unrigging; but I'm

12:11:04   assuming counsel's going to follow the orders of the Court, and

12:11:05   that, because of the way the law is situated, is just

12:11:06   completely off limits, but --

12:11:07        **MR. GIDLEY:**  And, your Honor, there may be one other

12:11:08   gray area, so when I get to that in the exam, I'd like to come

Case 4:07-cv-05944-JST Document 2676-16 Filed 07/07/14 Page 83 of 83
Case 3:07-md-01827-SI Document 8196-10 Filed 06/05/13 Page 84 of 209   406
**ALLEN - CROSS EXAMINATION / GIDLEY**

12:11:10   back to a quick --

12:11:10            **THE COURT:**  How about doing it now?

12:11:11            **MR. GIDLEY:**  Okay.  The second issue is what he does,

12:11:12   as a purchaser, to find out if he's getting good prices.

12:11:13            And he calls competitors in the Kansas City area and

12:11:15   in Wichita to get price information, either directly from the

12:11:16   competitor, or by means of customers getting a price list; very

12:11:18   parallel to what's been alleged against Toshiba.

12:11:19            And we think that's really effective, for two

12:11:19   reasons.

12:11:20            First, whatever the plaintiff does is relevant for

12:11:20   the jury to weigh what the defendant does.  And there are cases

12:11:22   I can hand up to your Honor:  *McDonnell Douglas* case and the

12:11:23   *Motorola* case.

12:11:23            **THE COURT:**  Has he already testified that he calls

12:11:24   around?

12:11:25            **MR. SIMON:**  (Shakes head from side to side)

12:11:25            **MR. CURRAN:**  In his deposition.

12:11:25            **MR. GIDLEY:**  Yes, yes.  Two passages.

12:11:26            **MR. OWEN:**  No objection.  No objection.

12:11:27            **THE COURT:**  Okay.  Thank you.

12:11:27            **MR. GIDLEY:**  Thank you, your Honor.

12:11:28            (End of side bar)

12:11:28   **BY MR. GIDLEY**

12:11:29   **Q.**   Mr. Allen, sir, do you care about the purchase price of