

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

**EVA W. COLE**
Partner
(212) 294-4609
ewcole@winston.com

North America   Europe   Asia

July 11, 2014

***VIA ECF***
The Honorable Samuel Conti
Senior United States District Judge
United States District Court
Northern District of California
Courtroom No. 1, 17th Fl.
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:**   *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917

Dear Judge Conti:

      We represent defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), and we respectfully write on behalf of all defendants[1] regarding Best Buy's Objections to the Special Master's Order re Best Buy's Motion for a Protective Order, dated July 7, 2014 ("Objection Brief").[2]

      Best Buy's Objection Brief is an inappropriate attempt to resist Defendants' discovery efforts and derail the carefully negotiated pre-trial schedule implemented by this Court.  *See* Opp'n to Best Buy's Mot. for a Protective Order at 5-6 ("Opp'n"), Ex. 2 to the Decl. of David Martinez, July 7, 2014 ("Martinez Decl.").  Indeed, this Objection Brief and Best Buy's attempt to notice a hearing for August 15, 2014 – more than six weeks from now and just three weeks shy of the fact discovery cutoff date – is an improper effort to delay resolution of this issue and "run down the clock" on the discovery schedule.[3]

---

[1] Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display Inc.), Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc., LG Electronics, Inc., LG Electronics USA, Inc., LG Electronics Taiwan Taipei Co., Ltd., Samsung SDI America, Inc., Samsung SDI Co., Ltd., Samsung SDI (Malaysia) SDN. BHD., Samsung SDI Mexico S.A. DE C.V., Samsung SDI Brasil Ltda., Shenzen Samsung SDI Co., Ltd., Tianjin Samsung SDI Co., Ltd., Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., Toshiba America Electronic Components, Inc., Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Chunghwa Picture Tubes, Ltd., Technicolor SA (f/k/a Thomson SA), Technicolor USA, Inc. (f/k/a Thomson Consumer Electronics, Inc.), Technologies Displays Americas LLC (f/k/a Thomson Displays Americas LLC), Mitsubishi Electric Corporation, Mitsubishi Electric Visual Solutions America, Inc., and Mitsubishi Electric & Electronics USA, Inc.

[2] "Best Buy" refers to Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia HI-FI, Inc.

[3] Pursuant to Local Rule 72-2, Best Buy is not even necessarily entitled to a hearing on this matter, nor do Defendants believe such a hearing is necessary.  *See* N.D. Cal. Civ. L.R. 72-2 ("Unless otherwise ordered by the assigned District Judge, no response need be filed and no hearing will be held concerning the motion.").  Should Your Honor be inclined to conduct a



July 11, 2014<br>Page 2

Defendants should be permitted to use the remainder of their allotted 30(b)(6) deposition time to depose a witness on Best Buy's competitive intelligence program, in line with Judge Walker's decision, and to identify through that deposition additional percipient witnesses as soon as possible. *See* Order re Best Buy's Motion for a Protective Order at 2, June 23, 2014 ("Order"), Martinez Decl. Ex. 4; *see also* Order re Discovery and Case Management Protocol at 2, Apr. 3, 2012 (Dkt. No. 1128).[4]

As for Best Buy's suggestion that Judge Walker erred because he did not address "the question of whether Best Buy's competitive intelligence practices are relevant," it belies a plain reading of the Order. Judge Walker clearly stated that "[t]he parties' dispute arises from defendants' effort to seek discovery related to Best Buy's practice of '***competitive intelligence***' about its competitors' pricing practices. . . . The undersigned rejects Best Buy's argument that ***this discovery*** is not relevant to the issues herein."[5] Order at 1. In fact, Best Buy's motion for a protective order was denied wholesale with respect to the 30(b)(6) deposition on competitive intelligence. *See* Order at 2. The only limitation on Judge Walker's ruling was regarding the interrogatories, which Judge Walker held were relevant, but found Best Buy's burden and expense in responding would "likely exceed[] the value of the information that would be produced," particularly because the deposition could be used to obtain the same information sought by the interrogatories.[6]

Best Buy's other arguments that Judge Walker erred in ruling that inquiry into Best Buy's competitive intelligence practices is relevant at the discovery stage are also without merit. To the extent that the Court has any doubt as to the propriety of Judge Walker's Order, Defendants respectfully request

---

hearing on this issue, Defendants respectfully request that it be conducted on an expedited basis to allow the parties to maintain the existing fact discovery cutoff of September 5, 2014.

[4] Best Buy's delay tactics have been pervasive throughout this litigation. For example, during the pendency of the competitive intelligence motion, Best Buy ignored numerous requests by Defendants for proposed dates for the depositions of six percipient witnesses whose testimony is predominantly unrelated to the underlying discovery dispute at issue in Best Buy's Objection Brief. Best Buy's eventual response – received more than three weeks after Defendants' initial request – provides a single date for each requested witness, all of which occur within late August and the last of which is a mere week before the discovery cutoff date. In addition, it was just this week that Defendants finally received Best Buy's supplemental responses to certain long-outstanding and overdue interrogatory requests. Even Best Buy's seventeen-page Objection Brief reflects its disregard for the procedures set forth in this Court's local rules and the relevant discovery order in this case, which provide that any such motion "may not exceed 5 pages," and "must specifically identify the portion of the [] order to which objection is made and the reasons and authority therefor." *See* N.D. Cal. Civ. L.R. 72-2; Order Appointing Special Master for Discovery ¶ 6, Dec. 17, 2013 (Dkt. No. 2272). Best Buy's protracted rehashing of its protective order motion before this Court is thus improper and should also be disregarded for this reason.

[5] Moreover, in reaching this conclusion, Judge Walker heard oral argument for over an hour on June 23, 2014, and carefully considered the issues raised by counsel for both parties.

[6] Judge Walker's passing comment that an interrogatory concerning Best Buy's meetings with competitors was seemingly foreclosed by the *Kiefer-Stewart* line of cases does not impact his holding that even the interrogatories were otherwise relevant, nor does this passing comment apply or limit in any way the scope of a 30(b)(6) deposition topic on competitive intelligence. Indeed, as articulated to Judge Walker by Defendants at the hearing, it would be impossible to question a deponent on the full scope of a competitive intelligence program without asking questions about whether that program involved meetings with competitors. And, as noted, Judge Walker did not limit the scope of the 30(b)(6) deposition in any way.



that Your Honor consider the following substantive points in response to Best Buy's Objection Brief, consistent with Rule 72-2:

- Importantly, when confronted with virtually identical arguments made by Best Buy in *LCD*, Judge Illston determined that evidence of Best Buy's competitive intelligence activities was not only relevant (the test for discovery), ***but also that such evidence was admissible under the more demanding standards of Federal Rules of Evidence 401 and 402***.[7]  Final Pretrial Scheduling Order – Phase 1 DAP Trial, *In re TFT-LCD Flat Panel Antitrust Litig.*, No. 3:07-MD-01827-SI (July 11, 2013) (N.D. Cal.) ("*LCD*").  Indeed, the testimony allowed in *LCD* involved the full scope of Best Buy's competitive intelligence program, including Best Buy's contacts with competitors to obtain that information.  *See, e.g.*, Tr. of Proceedings at 1244-45, 1248, *LCD*, No. 3:07-MD-01827-SI (N.D. Cal. Aug. 1, 2013) ("Q. So Mr. Green, here, is reporting on a discussion he had with one of the managers at the Dadeland Circuit City.  Correct?  A. It appears that way, yes."), attached hereto as Ex. A; Trial Exs. No. 5552, 5587, 5603, LCD, No. 3:07-MD-01827-SI (N.D. Cal. 2013), attached hereto as Exs. B, C, and D, respectively.

- Best Buy asserts that its competitive intelligence activities are irrelevant to downstream pricing; however, Best Buy's 30(b)(6) designee has already testified, absent objection, that Best Buy used competitive intelligence in determining its prices to consumers.  *See* Opp'n at 10.  That pricing determination bears on the prices paid by the indirect purchaser plaintiffs and their expert's opinion that the alleged CRT overcharges were always passed through to the retail customer at a rate of 100% or more.  Defendants are entitled to discover what information Best Buy gathers from competitors (*i.e.*, their sales volumes, prices, profitability targets and/or margins, and/or costs, among other things) and how they use that information in setting and changing their own retail prices, all of which could impact any alleged pass-on.  *See, e.g.*, *In re Polyester Staple Antitrust Litig.*, No. 3:03CV1516, 2005 WL 6457181, at *4-5 (W.D.N.C. May 9, 2005) (recognizing that discovery relating to pricing, distribution, and downstream sales are relevant to indirect purchasers' damages claims).

- Best Buy's contention that its competitive intelligence activities, including how it gathered such information, are irrelevant to upstream pass-through is equally misplaced.  The extent to which Best Buy's competitive intelligence program tracked component or CRT product costs, among other things, and whether any such information impacted Best Buy's pricing negotiations for its purchases of CRT products is directly relevant to whether Best Buy suffered injury-in-fact.  *See* Opp'n at 10-11.  Moreover, Best Buy's response – that it already produced this in the form of transactional data – fails to explain how Best Buy's discussions of or comparisons with the pricing of its competitors and its ability to utilize those prices in its negotiations with CRT product vendors would be reflected in the final sales prices set forth in its purchase order data. *See* Objection Brief at 8.

---

[7] Best Buy's misguided attempts to undermine Judge Illston's decision as not citable authority simply ignore the law in this circuit.  *See Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1438 n.5 (9th Cir. 1986) ("Neither the Ninth Circuit Rules nor the local rules of the Northern District of California prohibit citation of unreported district court opinions.").



July 11, 2014
Page 4

- Best Buy's argument that evidence of "how" Best Buy gathers competitive intelligence is irrelevant to downstream pricing also does not pass muster. As Defendants explained to Judge Walker during the hearing, discovery into "how" Best Buy gathers competitive intelligence is necessary to understand the scope of precisely what was done by Best Buy and how it was used. At the discovery stage, "the focus is on placing all pertinent facts (*i.e.*, facts that may have a bearing on a claim or defense in the case) on the table." *In re Urethane Antitrust Litig.*, MDL No. 1616, 2010 WL 5287675, at *5 (D. Kan. Dec. 17, 2010).

- Best Buy states that the Special Master did not address Defendants' relevance arguments, except to note that "*Kiefer-Stewart Co.* only applies to preclude evidence of the Plaintiffs' meetings with competitors." Objection Brief at 9. As an initial matter, as noted above, Judge Walker's passing comment regarding *Kiefer-Stewart* does not constitute a holding and, in any event, was limited to his conclusions concerning the interrogatories, and not the 30(b)(6) deposition. Moreover, the holding in *Kiefer-Stewart* that "[t]he alleged illegal conduct of petitioner . . . could not legalize the unlawful combination by respondents nor immunize them against liability to those they injured" simply has no application here. *Kiefer-Stewart Co.*, 340 U.S. at 214. As noted in their Opposition brief, Defendants are not seeking the requested discovery in support of any unclean hands or *in pari delicto* defense.

- Instead, Defendants contend that discovery into Best Buy's competitive intelligence practices, including how it obtained such information, is relevant, among other reasons, to defend against Best Buy's assertion that Defendants' similar gathering of information from competitors supports the existence of the alleged price-fixing conspiracy. *See, e.g.*, *Pac. Far East Line, Inc. v. R.J. Reynolds Indus., Inc.*, No. C 76-2312 AJZ, 1981 WL 2517, at *15 (N.D. Cal. Sept. 14, 1981) ("[e]vidence of the magnitude, extent, and duration of plaintiff's own rebating . . . may indicate that, to the extent [defendant] paid rebates of a kind which were likewise paid by plaintiff . . . and virtually every other carrier in the Far East trade, [defendant's] payment of rebates was neither a restraint of trade nor a predatory practice").

- The analogous decision in *In re Urethane Antitrust Litigation* is also instructive in this regard. 2010 WL 5287675, at *6. There, in granting defendants' motion to compel responses to discovery requests seeking information related to the plaintiffs' communications with competitors, the Magistrate Judge held that under the liberal discovery standards of Rule 26, "plaintiffs' parallel price increases and communication with competitors in setting the price of foam could possibly bear on plaintiffs' claims that similar actions by defendants are indicative of a urethane conspiracy." *Id.*; *see also In re Urethane Antitrust Litig.*, MDL No. 1616, 2011 WL 1327988, at *6 (D. Kan. Apr. 5, 2011) ("defendants would be entitled to rebut that evidence by showing that because plaintiffs engaged in the same conduct, that evidence does not necessarily indicate or support the existence of a conspiracy among defendants"). As in *Urethane*, Defendants seek discovery into Best Buy's competitive intelligence practices for, among other things, the purpose of defending against Best Buy's assertion that Defendants' similar gathering of information from competitors supports the existence of the alleged price-fixing conspiracy. Defendant witnesses have repeatedly testified that gathering competitive information and engaging in occasional competitor contacts were lawful, procompetitive activities, and not cartel



conduct.   Accordingly, Defendants should be entitled to rebut plaintiffs' challenges that such testimony is not credible by demonstrating that Best Buy, for example, similarly gathered competitive information and engaged in communications with competitors.

- Finally, Best Buy asserts "the Special Master did not make findings regarding the burden, oppression or prejudice to Best Buy related to producing a Rule 30(b)(6) witness."  Objection Brief at 6.  But, Judge Walker explicitly considered the burden Best Buy would face in submitting to the requested discovery.   Order at 1-2 ("Compiling thorough and complete responses to Interrogatory Nos 16 and 17 would entail a significant amount of attorney time and that of Best Buy personnel, as well.").  Indeed, Judge Walker recognized that Best Buy had not articulated any undue burden in producing a 30(b)(6) witness on competitive intelligence, noting at the hearing that the requested deposition did not strike him as "greatly burdensome."[8]  Moreover, Best Buy's complaints of burden appear to be substantially based on the time period for which this discovery is sought, which is simply a reflection of the 12-year conspiracy period that Best Buy itself put at issue, and which Judge Walker noted was not unduly burdensome.  Indeed, the only discovery still at issue amounts to one 30(b)(6) deposition topic.

In sum, the discovery sought by Defendants is undeniably relevant to this litigation and, before both the Special Master and this Court, Best Buy has failed to articulate any burden associated with producing a 30(b)(6) witness or to otherwise establish that good cause exists to deny the Panasonic Defendants' reasonable and limited requests for a deposition concerning Best Buy's competitive intelligence practices.

Accordingly, Defendants respectfully request that the Court (i) deny Best Buy's Objections and affirm the Special Master's Order denying Best Buy's motion for a protective order as to Best Buy's 30(b)(6) deposition, the scope of which was not limited in any way by Judge Walker, and (ii) thus permit Defendants to proceed with the 30(b)(6) deposition of Best Buy concerning the full scope its competitive intelligence program, including meetings with competitors.

Respectfully submitted,


/s/ *Eva W. Cole*
Eva W. Cole

WINSTON & STRAWN LLP

cc:      All counsel via ECF

---

[8] Given Best Buy's testimony in *LCD*, which identified a number of relevant individuals and indicated that Best Buy in fact had a specific "Competitive Strategies Group," Best Buy cannot complain of any burden, let alone an undue one, in identifying the members of that group and who, in particular, would have had CRT responsibilities.

# Exhibit A

Volume 8

Pages 1124 – 1283

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SUSAN ILLSTON, JUDGE

IN RE: TFT-LCD (FLAT-PANEL)         )
ANTITRUST LITIGATION.               )    NO. C 07-MDL-1827 SI


San Francisco, California              Individual Cases:
Thursday                               CASE NO. 10-CV-4572
August 1, 2013                         CASE NO. 12-CV-4114
8:37 a.m.

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Best Buy Plaintiffs:
                     ROBINS, KAPLAN, MILLER & CIRESI LLP
                     2049 Century Park East
                     Suite 3400
                     Los Angeles, California  90067
               BY:   ROMAN M. SILBERFELD, ESQ.
                     DAVID MARTINEZ, ESQ.
                     LAURA E. NELSON, ESQ.
                     BERNICE CONN, ESQ.
                     MICHAEL A. GEIBELSON, ESQ.


For Defendant HannStar Display Corporation:
                     FREITAS TSENG & KAUFMAN, LLP
                     100 Marine Parkway
                     Suite 200
                     Redwood Shores, California  94065
               BY:   ROBERT E. FREITAS, ESQ.
                     JASON SHEFFIELD ANGELL, ESQ.
                     JESSICA NICOLE LEAL, ESQ.


(Appearances continued, next page)

FRITZ - CROSS EXAMINATION / CURRAN

1    **Q**    And this email is dated July 7, correct?

2    **A**    Yes.

3    **Q**    So this is talking about Circuit City's pricing in this

4    Dadeland store through the end of July.  Correct?

5    **A**    It actually says their "offer."  Doesn't say their

6    "pricing."

7    **Q**    Okay.  Running with their offer, through the end of July?

8    **A**    That's what it says.

9    **Q**    And, what do you understand "offer" to mean in this

10   context?

11   **A**    I don't recall this specific instance, but "offer" could

12   be a promotion.  It could be a number of things.

13   **Q**    Okay.  And then, continuing (As read):

14   "Also while talking to one of the managers he informed me that

15   their corporate office is telling the regional, district and

16   store management teams that Best Buy is starting an all out

17   pricing war to put CC out of business and that they will be

18   launching pre-emptive strikes in the form of aggressive

19   financing, promotions and floor pricing and that some stores

20   have been told to kick out any Best Buy employed shoppers if

21   they think they are writing or even recording prices.  This

22   came from a manager that has known me for 8 years."

23          Do you see that, ma'am?

24   **A**    I do.

25   **Q**    So Mr. Green, here, is reporting on a discussion he had

FRITZ - CROSS EXAMINATION / CURRAN

1    with one of the managers at the Dadeland Circuit City.

2    Correct?

3    **A**    It appears that way, yes.

4    **Q**    In your judgment, is this, the conduct reflected in this

5    email, consistent with Best Buy's ethics policy, ethics code?

6             **MR. SILBERFELD:**  Objection, Your Honor.  Vague as to

7     which conduct.

8             **THE COURT:**  Can you specify?

9             **MR. CURRAN:**  Yes.

10    **BY MR. CURRAN:**

11    **Q**    Ms. Fritz, the second sentence of the email has a

12    reference to "...while talking to one of the managers he

13    informed me..." and then it continues on.

14         In your judgment, is it consistent with Best Buy's code of

15     ethics for Mr. Green to have been talking with one of the

16     managers at the Dadeland Circuit City about the subjects

17     reflected in this email?

18    **A**    I would say it was not common practice, no.

19    **Q**    That -- my question was, was it consistent with Best Buy's

20    code of ethics?

21    **A**    I would say no.

22    **Q**    Why not?

23    **A**    Because part of our code of ethics is to make sure that

24    we're looking at information in terms of the competitive

25    context, and not engaging in conversations.

FRITZ - CROSS EXAMINATION / CURRAN

1    **Q**    Sorry, not engaging in --

2    **A**    In the conversations.

3    **Q**    In conversations?  As you read this, was Mr. Green engaged

4    in price-fixing?

5             **MR. SILBERFELD:**  Objection, speculation.

6             **MR. CURRAN:**  I'm just basing it on the document,

7    Your Honor.

8             **THE COURT:**  Overruled.

9        You can answer.

10            **THE WITNESS:**  So, again, I don't recall this specific

11   information or email.  And, while it looks like they were

12   talking about things, there's nothing in here to suggest they

13   were talking about pricing.

14   **BY MR. CURRAN:**

15   **Q**    Okay.  So, in your judgment, Mr. Green may have been

16   violating Best Buy corporate policy, but not engaged in

17   price-fixing?

18   **A**    I can't speak to that, because I don't actually understand

19   -- I don't know the specific situation.

20            **MR. CURRAN:**  Your Honor, another document that's been

21   admitted into evidence is 5552.

22       (Document handed up to the Court)

23       (Document displayed)

24            **MR. CURRAN:**  May I approach the witness?

25            **THE COURT:**  You may.

FRITZ - CROSS EXAMINATION / CURRAN

1          (Document handed up to the Court)

2          (Witness examines document)

3    **BY MR. CURRAN:**

4    **Q**    Ms. Fritz, please take a moment to familiarize yourself

5    with 5552.

6          (Witness examines document)

7    **A**    Okay.

8    **Q**    Okay.  So now, Ms. Fritz, this, the last in time email

9    here-is-another email from Philip Britton to Mike Ray, correct?

10   Or, I'm sorry, from Mike Ray to Philip Britton?

11   **A**    The most recent?  Or the top one?

12   **Q**    Yes.

13   **A**    Yes, it appears that way.  It is really hard to read, but

14   the --

15   **Q**    True.  The first-in-time email, which is on the second

16   page, which starts the chain, is from Douglas Jacobsen.

17   Correct?

18   **A**    Um, yes.

19   **Q**    And Mr. Jacobsen writes (As read):

20    "FYI...The information below was given to me from an

21    acquaintance at our competitor.  The information should be

22    very reliable."

23          And then it continues:

24    "Effective November 29th cc's price match policy will be

25    changing."

FRITZ - CROSS EXAMINATION / CURRAN

1    And then it goes on to give details about the changes in

2    Circuit City's price match policy.  Correct?

3    **A**    Correct.

4    **Q**    And this email is dated November 18, 2006.  Correct?

5    **A**    It appears that way, yes.

6    **Q**    Okay.  So that, that email indicates a discussion or -- or

7    information being provided from an acquaintance of Mr. Jacobsen

8    at Circuit City.  Correct?

9    **A**    I don't know.  I don't know who Mr. Jacobsen is, or who

10   Mr. Rogers is.

11   **Q**    Farther up the email chain there is the -- second-to-last

12   in time, there is an email from Mike Ray.  Do you see that one?

13   Dated November 19, 2006, at 3:28 p.m.?

14   **A**    I do.

15   **Q**    Now, Mike Ray, you know; we've talked about him already.

16   He was an employee, senior employee at Best Buy.  Correct?

17   **A**    Correct.

18   **Q**    And, he writes (As read):

19    "Glen.. On it.. We're going to have the teams ping their

20    contacts to validate this change is hitting all markets."

21    Do you see that?

22   **A**    Yes.

23   **Q**    And, by that email, Mr. Ray was stating that the team at

24   Best Buy or the teams at Best Buy would be pinging their

25   contacts at Circuit City.  Correct?

FRITZ - CROSS EXAMINATION / CURRAN

1    **A**    It just says pinging their contacts.  It does not say

2    where.

3    **Q**    Okay.  Do you know what contacts Mr. Ray was referring to

4    here?

5    **A**    I do not.

6    **Q**    One more document in this set, Ms. Fritz.

7          **MR. CURRAN:**  Your Honor, this is 5587, the last of

8     the four stipulated to.

9          (Document handed up to the Court)

10          **MR. CURRAN:**  May I approach the witness?

11          **THE COURT:**  You may.

12          (Witness examines document)

13          **THE WITNESS:**  Okay.

14     **BY MR. CURRAN:**

15    **Q**    Ms. Fritz, you have 5587 in front of you, and you've

16    reviewed it?

17    **A**    I have.

18    **Q**    I would like to direct your attention to Ms. Ayala's

19    email, dated Sunday, December 31, 2006, at 1:09 a.m.

20          And specifically, about halfway down that email on that

21     page, there's a paragraph that says:

22     "With that done I went and found my good friend who is an

23     operations manager at Hulen (not the same manager that

24     verified the info the other day) and ask him.  He told me that

25     they did lower prices on much of their floor trying to compete

FRITZ - CROSS EXAMINATION / CURRAN

1  price wise but that when it came to warranty's we still beat

2  them.  Our highest priced warranty is $600 but they have one

3  that is 1,000 and does little more than our $600 one."

4      Do you see that?

5  A   I do.

6  Q   And the re line or the subject line on this email is

7  "Circuit Information," correct?

8  A   The subject line does say "Circuit Info," yes.

9  Q   Okay.  Ms. Fritz, is it, in your judgment, consistent with

10 Best Buy's corporate code of ethics for a Best Buy employee to

11 be having a discussion with a good friend at a Circuit City

12 store about pricing and warranties?

13 A   Well, I don't -- I don't know anything about this specific

14 instance, but it doesn't say that her good friend is a person

15 at Circuit City or where they're from.

16 Q   And this is referring to a Circuit City store at Hulen,

17 near Dallas-Fort Worth, isn't it?

18 A   I don't know.  I don't know what Hulen is.

19      MR. CURRAN:  Your Honor, I would like to show a clip

20 from the deposition of Philip Britton, and then ask the

21 witness if she agrees with the testimony provided.

22     This is a clip that's been agreed to by stipulation.

23      THE CLERK:  Is this marked as an exhibit?  Is she

24 going to transcribe it?

25      THE REPORTER:  (Shakes head)

# Exhibit B

| | |
|---|---|
| **From:** | Ray, Mike |
| **To:** | Britton, Philip |
| **Sent:** | 11/19/2006 8:03:45 PM |
| **Subject:** | FW: Fw: competitors new price match policy |

Phillip the great,

Let's chat tomorrow, and see if we can plot data on this.

TX.. hope you had a great weekend.

Mike Ray
Competitive Strategies Group, CSI/Mystery Shop
cell 973 207 6102


-----Original Message-----
From: Ray, Mike
Sent: Sunday, November 19, 2006 3:28 PM
To: Swanson, Glen; Parker, Charles
Cc: Ray, Mike; Britton, Philip; Kimberly, Dean; Mohan, Mike; Mccolloch, Anthony (Scott);
Calice, Bill; Delp, Steve; Sheehan, Tim (SVP); Veintimilla, Laura; Hansen, Scott; Howard,
Brant
Subject: Re: Fw: competitors new price match policy

Glen..
On it..
We're going to have the teams ping their contacts to validate that this change is hitting all
markets. We would welcome, also, any further insights, from anyone on this email.
We will consolidate the info and advise over the next few days.
Please also pass along thanks to your team for surfacing the intel.
Mike

-----Original Message-----

From: "Swanson, Glen" <Glen.Swanson@bestbuy.com>
Subj: Fw: competitors new price match policy
Date: Sun Nov 19, 2006 11:28 am
Size: 2K
To: "Parker, Charles" <Charles.Parker@bestbuy.com>
cc: "Ray, Mike" <Mike.Ray@bestbuy.com>, "Britton, Philip" <Philip.Britton@bestbuy.com>,
"Kimberly, Dean" <Dean.Kimberly@bestbuy.com>, "Mohan, Mike" <Mike.Mohan@bestbuy.com>,
"TE-TGMs" <TE-TGMs@bestbuy.com>

Charlie,
Let's see if we can verify this across the markets and be sure our teams are aware.

National issue?
Interesting. Please advise.

Thanks,
Glen

-----Original Message-----
From: Rogers, Kevin
To: TE-05-Staff
Sent: Sat Nov 18 16:17:11 2006
Subject: FW: competitors new price match policy

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
MDL No. 3:07-md-1827-SI

**2013 Exhibit 5552**

T5 Team ... Some great information here from a CEM in #301 who used to work for Circuit. Looks
like they may be under pressure from a Margin standpoint.

This information aligns with the e-mail Glen sent us last night that stated ...

"We believe Circuit City has been caught off guard by the recent flat panel television price

 BBYLCD0017403

Exhibit 5552 - 001

declines over the last two months and their ability to generate gross profit dollar growth is
likely coming under pressure."


Possibly a great Market Share opportunity about to come our way through the Holidays.


Kevin


_____

From: Jacobsen, Douglas
Sent: Saturday, November 18, 2006 11:45 AM
To: Rogers, Kevin
Subject: competitors new price match policy

FYI...The information below was given to me from an acquaintance at our competitor. The
information should be very reliable.

Effective November 29th cc's price match policy will be changing. Currently it is managers
discretion how price matches are handled at the store level. Obviously they have some
advertised policies to follow, but otherwise pricing is flexed at managers discretion. From
the 29th on there are two things cc will price match

1) CC web site (no competitors sites AT ALL)
2) Competitors weekly or special printed flyers (I.E. Weekly Circulars)

All other pricing will be determined on a weekly basis by corporate, and downloaded on sunday
mornings.

This will be strictly enforced by district and regional staff. They will not be allowed to
"Take the deal". In order to take any price matches outside of this policy, the store manager
will be forced to contact a district manager, or above.

From my past experience they will be exceptionally str

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

BBYLCD0017404

Exhibit 5552 - 002

# Exhibit C

| From: | Britton, Philip |
|---|---|
| To: | Ray, Mike |
| Sent: | 12/4/2006 5:12:22 PM |
| Subject: | FW: Circuit Info |
| Attachments: | WBBB Dallas 11-27-06.xls |

**From:** Howard, Brant
**Sent:** Monday, December 04, 2006 2:11 PM
**To:** Britton, Philip
**Subject:** FW: Circuit Info

Some tidbits

**From:** Ayala, Debbie
**Sent:** Sunday, December 03, 2006 1:09 AM
**To:** Howard, Brant
**Cc:** Lal, Emmanuel
**Subject:** Circuit Info

<<...>>

Hey Brant,

Wanted to send this interesting chart to you.... After the guy at the store gave me the info about them lowering prices I did a little comparison...The first column on my chart is what Lal shopped on Sunday...the second is the prices I found Wednesday when the guy gave me the info...I then went back to the same store today and did another shop....

You will notice that:

They beat us on 11 out of 20 models.

They are higher priced on 7 of the models

They are priced the same on 1 and 1 I did not find at my store but lal found at his.

(this is based on Saturday Prices)

With that done I went and found my good friend who is an operations manager at Hulen (not the same manager that verified the info the other day) and ask him.  He told me that they did lower prices on much of their floor trying to compete price wise but that when it came to warranty's we still beat them.  Our highest priced warranty is $600 but they have one that is $1000 and does little more than our $600 one.

He also told me that as a district they were doing well in Fire Dog and in fact Rockwall was #1 in the company last month and is #1 now .  The only store not doing well in fire dog is the Arlington store in the mall and they are bringing the entire District down. Everyone else is between 60 and 70% to budget and Arlington is only 54%.

He told me they did 320 thousand dollars the day after and their budget was 290 thousand. He also said that they were considering moving that store but they have not missed budget in 8 months so they do not want to move a good thing (it is a little hole in the wall ).

Rockwall seems to be the beast for this district he said they blow budget out of the water every month and have just been " crazy in numbers and money" .

Hope these few tidbits will help and I will keep digging!!!

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

BBYLCD0028712

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
MDL No. 3:07-md-1827-SI

**2013 Exhibit 5587**

Exhibit 5587 - 001

## Debbie Ayala

**T3 Competitive Specialist - Dallas/Ft. Worth**

**mb: 817.975.7006**

**Debbie.Ayala@bestbuy.com**

Includer, Communication, Woo, Responsibility, Harmony

"We provide competitive strategies and intelligence to all organizational levels to

provide the best value to our Customers enhancing profitable and sustained growth."

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

BBYLCD0028713

Exhibit 5587 - 002

# Why Best Buy?    …We'll show you the best value in town!

While other competitors in town Talk about their *low price guarantee*, we'll Show your our competitor's current pricing and offers. Then we'll Earn your business by explaining our Everyday Value Advantages and building you a Great Deal!

**Exhibit 5587 - 003**

### We'll explain Best Buy's EVERYDAY VALUE ADVANTAGES!

**Reward Zone:**
Membership is Free Earn Points towards your favorite products - You receive a $5 Gift Certificate for every $250 you spend!

**Complete Solution:**
Get it all in one stop, from hardware to software. Installation and product Schedule a consultation with our CERTIFIED installers to create the

| Best Buy | Thru Saturday 12/02 |
|---|---|

No interest for 18 months on all digital cameras $279 & up
No interest for 18 months on all major appliances & OTR Microwaves totaling
No Interest for 24 Months on select Refrigeration

| This Week's Best Buy Advertised Offers | Thru Saturday 12/02 |
|---|---|

No interest for 2 years on all Home Theater Totaling $699 and up
Reward Zone-Program members earn Double points on all CDs, DVDs, and Video & PC Gamnes until December 24th.
$279-$599

Free Bluetooth Microphone with select Sony Camcorders

| Circuit City Advertised Offers | Thru Saturday 12/02 |
|---|---|

Save $200 by MIR w/ purchase of Panasonic plama TVs & Firedog installation
DirecTV HD receiver for $99 & free lease upgrade for new customer (after MIR)

**Data Compiled:** 11/13/06 8:05 AM

**We monitor our competition to ENSURE a competitive price!**

| Dept 2: Video | | Best Buy DFW Priced on 12/2/2006 | Circuit City DFW Shopped on 11/26/2006 | Circuit City DFW Shopped on 11/29/2006 | Circuit City DFW Shopped on 12/2/2006 | |
|---|---|---|---|---|---|---|
| **ALL PROJECTION TV** | | | | | | |
| SAMSUNG | HLS-5086WX | $ 1,499.99 | $ 1,399.99 | $1,399.99 | $1,399.99 | 7705708 |
| SAMSUNG | HLS-6187WX | $ 2,599.99 | $ 2,499.99 | $2,499.99 | $2,469.99 | 7705897 |
| SONY | KDF-50E2000 | $ 1,699.99 | $ 1,699.99 | $1,619.99 | $1,579.99 | 7848546 |
| SONY | KDF-55E2000 | $ 1,898.99 | $ 1,619.99 | $1,999.99 | $1,999.99 | 7834828 |
| SONY | KDS-60A2000 | $ 2,848.99 | $ 1,899.99 | $ 2,699.99 | $ 2,699.99 | 7932767 |
| **26"+ LCD TV** | | | | | | |
| SAMSUNG | LNS-3241DX | $ 1,169.99 | $ 1,299.99 | $1,169.99 | $1,199.99 | 7682518 |
| SAMSUNG | LNS-3251DX | $ 1,349.99 | $ 1,329.99 | $1,329.99 | $1,329.99 | 7675697 |
| SAMSUNG | LNS-4051DX | $ 1,799.99 | $ 1,799.99 | $1,799.99 | $1,899.99 | 7688923 |
| SAMSUNG | LNS-4092DX | $ 2,199.99 | $ 2,099.99 | $ 2,087.99 | $ 2,069.99 | 7689192 |
| SONY | KDL-32S2010 | $ 1,349.99 | $ 1,399.99 | $ 1,359.99 | $1,339.99 | 7986673 |
| SONY | KDL-40S2010 | $ 1,799.99 | $ 1,799.99 | $ 1,799.99 | $2,299.99 | 8007186 |
| SONY | KDL-40XBR2 | $ 2,644.99 | $ 2,499.99 | $ 2,799.99 | $2,799.99 | 7941212 |
| Sony | KDL-32XBR1 | $ 1,499.99 | $ 1,799.99 | $ 1,788.99 | $1,499.99 | 7393279 |
| SONY | KDL-V32XBR2 | $ 1,789.99 | $ 1,799.99 | $ 1,799.99 | $ 1,769.99 | 7986637 |
| **ALL PLASMA TV** | | | | | | |
| PANASONIC | TH-37PX60 | $ 1,518.99 | $ 1,519.99 | | | 7669436 |
| PANASONIC | TH-42PX60 | $ 1,518.99 | $ 1,499.99 | $ 1,499.99 | $ 1,499.99 | 7679185 |
| PANASONIC | TH-50PX60U | $ 2,399.99 | $ 2,299.99 | $ 2,299.99 | $2,299.99 | 7679238 |
| PANASONIC | TH-58PX60U | $ 4,558.99 | $ 4,799.99 | $ 4,799.99 | $4,799.99 | 7749788 |
| SAMSUNG | HPS-4253X | $ 1,708.99 | $ 1,599.97 | $ 1,799.99 | $ 1,799.99 | 7711201 |
| SAMSUNG | HPS-5053X | $ 2,519.99 | $ 2,599.97 | $ 2,499.99 | $ 2,499.99 | 7711238 |

**Discard this document after Saturday 12/02/06**

Planning
Competitive Strategies Group
ACT    SEE
TELL

circuit city
Just what I needed.

# Exhibit D

| From: | Britton, Philip |
|---|---|
| To: | *Field Competitive Manager |
| CC: | Ray, Mike |
| Sent: | 7/7/2006 1:01:49 PM |
| Subject: | FW: Circuit City July 4th Business Recap |

Nice glimpse in to Circuit's psyche from Miami.  Is one else seeing this aggressive rhetoric out there?  Are they using internal language like "put out of business" and "war" and so on?  Also, have any of our specialists been bounced?

Phil

**From:** Howard, Brant
**Sent:** Friday, July 07, 2006 12:43 PM
**To:** Green, Mike
**Cc:** Britton, Philip; Ayala, Debbie; Calhoun, Debra; Duhon, Myra; Julia, Vionnette; Kelly, Ryan; Lal, Emmanuel; Lundberg, Jarrod; Smith, Pam (LP); Still, Brandon; Stoughton, William
**Subject:** RE: Circuit City July 4th Business Recap

Very good insight Mike!

What has everybody else found?  bq

**From:** Green, Mike
**Sent:** Friday, July 07, 2006 1:38 PM
**To:** Howard, Brant; Britton, Philip; Peterson, Dan; Seem, Christian
**Cc:** Julia, Vionnette
**Subject:** RE: Circuit City July 4th Business Recap

 I just checked with the Dadeland CC today and they are running with the offer like we are till the end of July even though their signage says expires 7/4.  Also while talking to one of the managers he informed me that their corporate office is telling the regional, district and store management teams that Best Buy is starting an all out pricing war to put CC out of business and that they will be launching pre-emtive strikes in the form of aggressive financing, promotions and floor pricing and that some stores have been told to kick out any BBY employed shoppers if they think that they are writing or even recording prices.  This came from a manager that has known me for 8 years.

# Mike Green
**District Marketing Coordinator**
**Districts 28 & 67  Territory 36**
**305 299 0191**
**Mike.Green@BestBuy.Com**
**Includer, Achiever, Learner, Input, Responsibility**

"We provide actionable competitive strategies and
intelligence to all organizational levels to provide
the best value to our Customers while enhancing
profitable and sustained growth"

**From:** Howard, Brant
**Sent:** Thu 7/6/2006 8:34 PM
**To:** Ayala, Debbie; Calhoun, Debra; Duhon, Myra; Green, Mike; Julia, Vionnette; Kelly, Ryan; Lal, Emmanuel; Lundberg, Jarrod; Smith, Pam (LP); Still, Brandon; Stoughton, William
**Subject:** FW: Circuit City July 4th Business Recap

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
MDL No. 3:07-md-1827-SI
**2013 Exhibit 5603**

BBYLCD0030316

Exhibit 5603 - 001

Team, when you're in CC, let me know if they are still playing off our 'HD Advantage' offer as Phil states below. bq

---

**From:** Britton, Philip
**Sent:** Thursday, July 06, 2006 3:44 PM
**To:** *Field Competitive Manager
**Cc:** Housker, Amy
**Subject:** FW: Circuit City July 4th Business Recap

Team,

Like I said yesterday, major kudos on these store visits. Tim Sheehan himself stopped by to say thanks to us. If the Sr. VP is happy, everyone is happy.

Speaking of happy, (a bit of a stretch of a segue, I know) can we get word on whether or not Circuit is still playing with this version of our "HD Advantage" Offer? Just the usual observations like we got last week (although this can be more of a "yes/no" sort of deal) would be stellar.

Thanks,

Phil

---

**From:** Britton, Philip
**Sent:** Wednesday, July 05, 2006 1:20 PM
**To:** Sheehan, Tim (SVP)
**Cc:** Ray, Mike; Jordan, Cheryl; Calice, Bill; Mccolloch, Anthony (Scott)
**Subject:** Circuit City July 4th Business Recap

Tim,

Mike asked me to touch base with you regarding a recap of this holiday weekend activity at Circuit City. We do not (at this point) have a feel for their business at this time.

**Recap:** In short, they copied our $300 off promotion first announced to the field last Wednesday, and had flyers made up and in the store by Thursday/Friday. The presentation of the flyers indicates that they may have had some sort of advanced warning on this. Their flyers look as good as our own, which indicates someone at Richmond cranking these out, they were not store-made. The flyers and offers were consistent from store to store around the country.

Additionally, there was another sign posted indicating four reasons to purchase at Circuit City. We are calling this the "We Won't Be Beat" sign. It Indicates four reasons why you should buy your next TV from Circuit:

1. Professional Delivery & Installation

2. Expert Advice

3. Wide Selection

4. After the Sale Support

**Offers:** Here is what was called out on the flyer; these were consistent coast to coast:

·        $300 off instantly with purchase of any TV 37" and up when you activate new DirecTV service & purchase Home Installation $199 and up. (**In addition new DirecTV Subscribers receive a $100 merchandise card via mail-in rebate with the purchase of a "3 or more" room system)

·        $200 off instantly with purchase of any TV 37" and up when you sign up for Digital Cable & purchase Home Installation $199 and up.

·        $200 off instantly with purchase of any TV 37" and up when you activate new HD DirecTV service. (**In addition new DirecTV Subscribers receive a $100 merchandise card via mail-in rebate with the purchase of a "3 or more" room system)

---

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                                                      BBYLCD0030317

Exhibit 5603 - 002

·       $100 off instantly with purchase of any TV 37" and up when you purchase Home Installation $199 and up.

·       $100 off instantly with purchase of any TV 37" and up when you sign up for Digital Cable.

**Shopping:**  Reports from several markets indicate that Sales Managers, Store Directors, and DMs from Circuit are in our stores at least twice weekly.  They are talking to our folks, getting a feel for our sales presentation, stock levels, and go-to pieces.  (This could be how they got our offers and turned them as quickly as they did, although I think it is likely they had it earlier).  It appears competitive shopping is a corporate directive, as nearly every sales presentation we received included some variation of "we shop Best Buy and (whoever) at least twice a week."  We do also know for a fact that Circuit is attempting to assemble a Field Competitive/Pricing team like our own, several of the folks on our team have received offers (including yours truly).

**Traffic:**  Since this was an un-advertised special, we didn't see huge traffic in Circuit City stores.  We did see varying levels of execution (everything from just photocopies taped to the doors to a store with balloons/streamers and a manned table at the entry).  However, the sales teams in Circuit City were aggressively pushing these offers, and mentioning them to all HT customers.

In short, Circuit City is willing to copy our standing offers while still maintaining a strong print/floor price.  We will continue to monitor…

<<100_3212.jpg>> <<100_3213.jpg>>

### Phil Britton

### Mgr, Field Competitive Team

Best Buy Company

612 291-5229

952 484-4407

We provide actionable competitive strategies and

intelligence to all organizational levels to provide

the best value to our customers while enhancing

profitable & sustained growth.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY        BBYLCD0030318

Exhibit 5603 - 003