Eliot A. Adelson (SBN 205284)
James Maxwell Cooper (SBN 284054)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: eadelson@kirkland.com
Email: max.cooper@kirkland.com

James H. Mutchnik, P.C. (*pro hac vice*)
Kate Wheaton (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: jmutchnik@kirkland.com
Email: kate.wheaton@kirkland.com

Attorneys for Defendants
HITACHI, LTD., HITACHI AMERICA, LTD.,
HITACHI ASIA, LTD., HITACHI DISPLAYS,
LTD. (n/k/a JAPAN DISPLAY, INC.), HITACHI
ELECTRONIC DEVICES (USA), INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | CASE NO.: 3:07-cv-05944-SC |
| | MDL NO.: 1917 |
| _____ | Individual Case No. 3:13-cv-1173-SC |
| This Document Relates To: | **HITACHI DEFENDANTS' OPPOSITION TO SHARP ELECTRONICS CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.'S ADMINISTRATIVE MOTION TO CONFIRM ITS OPT-OUT REQUEST OR, IN THE ALTERNATIVE, ENLARGE TIME FOR SHARP TO OPT OUT OF CLASS SETTLEMENTS** |
| *Sharp Electronics Corp., et al. v. Hitachi, Ltd., et al.* | |

1    Defendants Hitachi, Ltd., Hitachi America, Ltd., Hitachi Asia, Ltd., Hitachi Displays, Ltd.

2    (n/k/a Japan Display Inc.) and Hitachi Electronic Devices (USA), Inc. (the "Hitachi Defendants")

3    submit this Opposition to the Administrative Motion to Confirm Its Opt-Out Request Or, In The

4    Alternative, Enlarge Time for Sharp to Opt Out of Class Settlements filed by Sharp Electronics

5    Corporation and Sharp Electronics Manufacturing Company of America, Inc. (collectively "Sharp").

6    **I.    INTRODUCTION**

7        Despite acknowledging that it received notice of the deadline for opting out of the Hitachi

8    Defendants' and SDI Defendants' settlements with the Direct Purchaser Plaintiffs ("DPP

9    Settlements"), Sharp did not timely opt out.  *See* Decl. of Craig A. Benson, ECF No. 2698-1

10   ("Benson Decl."), ¶¶ 2-3.  The DPP Settlements total over $46 million and Sharp will be entitled to

11   its share of that pot of money.  Two weeks after the deadline to opt out of the DPP Settlements,

12   Sharp submitted its opt-out request.  *See* Benson Decl. at ¶ 4.  Almost another two weeks after that,

13   Sharp contacted counsel for the Hitachi Defendants, asking the Hitachi Defendants to waive the

14   missed deadline.  *Id.* at ¶ 6.  Sharp now moves this Court to either (1) construe its untimely request

15   to opt out as timely, or (2) retroactively extend the deadline for opting out.

16       Sharp provides no excuse for why it did not opt out by the deadline.  It received notice, but

17   did not opt out.  Eighteen other corporate families opted out of the DPP Settlements on time.[1]  Just

18   like Sharp, they received notice of the DPP Settlements and of the deadline.  Because Sharp cannot

19   establish excusable neglect for not meeting the deadline, Sharp's motion should be denied.

20   **II.    ARGUMENT**

21       **A.    Sharp's standard is inapplicable.**

22       Perhaps realizing that it cannot meet the real legal standard, Sharp claims that its "actions

23   constituted an effective opt-out notice notwithstanding the deadline for providing formal notice."

24   *See* Sharp's Administrative Motion, ECF No. 2698 ("Br."), 4.  In effect, Sharp urges this Court to

25   shortcut the "excusable neglect" standard in favor of an "order affirming the operating understanding

26   of all relevant parties."  *Id.*  But in the Ninth Circuit, "[t]he standard for determining whether [a

27   ───────────────────

28   [1]   Sharp is joined only by Dell Inc. and Dell Products L.P. (collectively "Dell") among plaintiffs who have previously
         filed individual complaints, but did not opt out on time.  *See* Decl. of Ross Murray at ¶ 10, Ex. D ("Murray Decl.").

plaintiff] should be allowed to opt-out of the class after the applicable deadline is whether its failure to comply with the deadline is the result of 'excusable neglect.'"  *In re Static Random Access Memory Antitrust Litig.*, No. C 07-01819, 2009 WL 2447802, at *2 (N.D. Cal. Aug. 7, 2009); *Silber v. Mabon*, 18 F.3d 1449, 1455 (9th Cir. 1994) (remanding where it was unclear if the district court had considered if there was excusable neglect).  Sharp has not shown excusable neglect.

### B.      Sharp has not demonstrated "excusable neglect."

Courts determine whether movants have shown excusable neglect by examining four factors: (1) the danger of prejudice to nonmoving parties; (2) the length of the delay; (3) the reason for the delay; and (4) whether the movant acted in good faith.  *See* Br. at 4; *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 395 (1993).

#### 1.      Prejudice

Especially in complex class actions like this one, deadlines are necessary and enforced.  *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977).  So courts draw a line.  *See Georgine v. Amchem Prod.'s, Inc.*, No. 93-0215, 1995 WL 251402, at *6 (E.D. Penn. April 26, 1995) ("This Court sees no more appropriate time to draw a 'white line' than the opt-out deadline itself.").  Indeed, courts find no excusable neglect in cases involving less robust notice (such as where movant did not know a class action was pending),[2] more sympathetic plaintiffs,[3] and less elapsed time between the missed deadline and counsel's attempts to correct it.[4]  If the deadline is retroactively extended, it will undermine deadlines and certainty in this complex case.  *See id.*

In contrast, there is no prejudice to Sharp if it remains in the settlement class.  It will be entitled to its share of the $46,450,000 DPP Settlements.  Further, having timely opted out of all the

---

[2]  *See, e.g.*, *In re PaineWebber Ltd. P'Ship Litig.*, 147 F.3d 132, 135 (2d Cir. 1998) (affirming district court's refusal to enlarge opt-out period where movant "lacked knowledge of the Class Action, the opt-out deadline, and the effect of the Class Action on his rights until after the deadline had passed").

[3]  *Id.* at 134 (noting that movant "did not discover the Notice until after his discharge from the hospital" because movant, "then a 78-year-old man, unmarried and without children, received no mail during his hospitalization").

[4]  *See, e.g.*, *Demint v. NationsBank Corp.*, 208 F.R.D. 639, 642 n.5 (M.D. Fla. 2002) (referring to the plaintiffs' "somewhat conclusory assertion of a lack of prejudice" because the delay was twelve days as "dubious").

1   other class action settlements, Sharp may be able to recover all of its alleged damages from any one

2   or more of the defendants in its other direct action cases under joint and several liability.

   2.   *Timing*

4   The second factor, the length of the delay, does not support a finding of excusable neglect.

5   Courts have found no excusable neglect for shorter delays.  *See*, *e.g. Demint*, 28 F.R.D. at 640.  And,

6   in cases regarding other missed deadlines, the Ninth Circuit has held inexcusable delays as short as

7   one day.  *See, e.g.*, *Clark v. H.R. Textron, Inc.*, 66 F.3d 334, at *1-2 (9th Cir. 1995) (affirming denial

8   to enlarge time one day after the deadline and with immediate notice to opposing counsel); *see also*

9   *Kyle v. Campbell Soup Co.*, 28 F.3d 928, 929 (9th Cir. 1994) (affirming denial to extend deadline

10   two days after the deadline).  The cases Sharp cites to support its contention that its delay should be

11   excused as "*de minimis*" are unavailing.  *See* Br. at 5.  For example, the only in-circuit case that

12   Sharp cites, *Silber*, does not find the "delay excusable though opt-out notice received 'well after' the

13   opt-out deadline" (Br. at 5) but rather remands for further consideration in accordance with the

14   *Pioneer* factors.  18 F.3d at 1455.

   3.   *Reason for the Delay*

16   The third factor is the most significant: the reason for the delay.  Sharp does not even directly

17   address it in its brief.  *See* Br. at 4-5 (examining other three factors but not the reason for the delay

18   factor).  Failure to provide an excuse "largely moots any further inquiry into the other pertinent

19   factors."  *Demint*, 208 F.R.D. at 642 n.5; *see also U.S. v. Torres*, 372 F.3d 1159, 1162-63 (10th Cir.

20   2004) (reversing finding of excusable neglect even though "[t]hree of the relevant circumstances

21   noted in *Pioneer* weigh in favor of a finding of excusable neglect") (citing *Pioneer*, 507 U.S. 380).

22   Courts do not accept any excuse: "inadvertence, ignorance of the rules, or mistakes

23   construing the rules do not usually constitute 'excusable' neglect . . . ."  *Pioneer*, 507 U.S. at 392.

24   As the Ninth Circuit recognized, "it is the responsibility of all attorneys to keep track of deadlines

25   relevant to their clients' cases."  *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d

26   1217, 1245 (9th Cir. 2006).

27   Indeed, in *In re SRAM,* the court rejected Intel's motion to enlarge the opt-out period despite

28   counsel's excuse that "miscommunications" caused the missed deadline.  2009 WL 2447802, at *2.

Granting relief would mean there "would be no rational way to draw the line between excusable and non-excusable neglect if other class members in the case sought to opt out." *Id.; see also Brannon v. Household Int'l Inc.*, 236 F. App'x 285, 288 (9th Cir. 2007) (affirming refusal to extend opt-out deadline and noting that "oversight and confusion . . . need not be excused").

Here, Sharp provides no excuse. Sharp acknowledges that it received formal notice by mail. *See* Benson Decl. at ¶ 5. And Sharp received notice in other forms. On April 14, 2014, the Court granted preliminarily approval of the DPP Settlements. *See* Dkt. No. 2534. Plaintiff Costco Wholesale Corporation submitted its exclusion request nine days later, on April 23, 2014 — before the class administrator distributed formal written notice. *See Murray Decl.* at ¶ 10, Ex. D. Others opted out in May and June. *Id.* Sharp did not.

Between April and June, Sharp was given further, and repeated, notice of the deadline:

1. The administrator mailed notice to several Sharp addresses. *See* Murray Decl. at ¶ 4 (stating that none were returned as undeliverable). The postal address used was the same that was used to provide notice of the other class settlements, all of which Sharp timely opted out of. *Id.* at ¶¶ 4-5. The notice says that opt-outs "must mail your exclusion request, postmarked no later than **June 12, 2014** . . ." *Id.* at Ex. A.

2. The administrator's website contained the actual notice and "Frequently Asked Questions," both of which said you "must mail your exclusion request, postmarked no later than **June 12, 2014** . . ."[5] *See id.* at ¶ 6, Ex. B.

3. The administrator published notice in the Wall Street Journal, which said that "you must exclude yourself in writing by **June 12, 2014**, or you will not be able to sue, or continue to sue, the Settling Defendants about the legal claims in this case." *See id.* at ¶ 8, Ex. C.

By the deadline, June 12, eighteen other corporate families had opted out. *See* Murray Decl. at ¶ 10, Ex. D. Yet Sharp did not submit its exclusion request until June 26, and only did so after speaking with DPP counsel and learning that the deadline had already passed. *See id.;* Benson Decl. at ¶ 2-3. And then Sharp waited until July 8, almost two more weeks, to notify the Hitachi Defendants that it did not wish to be part of the class. *See* Benson Decl. at ¶ 6.

---

[5] Sharp states that "the CRT settlement administrator's website did not reflect any dates associated with the Samsung SDI or Hitachi settlements, *under its 'dates to remember' page*." Br. at 2 (emphasis added). But Sharp nowhere claims it actually viewed that page — and even if it had, the actual notice and the "Frequently Asked Questions" pages of that same website set out the June 12 deadline in bold. *See Murray Decl.* at ¶ 6, Ex. B.

**C.      Even under Sharp's preferred standard, its actions do not demonstrate that it is part of the settlement classes.**

Setting aside that whether "Sharp's Actions Demonstrate That Sharp Is Not Part of the Settlement Class" (Br. at 3) is not the correct inquiry, that Sharp had filed a separate complaint or engaged in post-deadline discovery is not sufficient to demonstrate its intent.  *See Demint*, 208 F.R.D. at 641 ("[M]ere pendency and continued prosecution of a separate suit, which the litigant instituted *before* commencement of the 'opt-out' period in a related class action, neither registers nor preserves a litigant's 'opt out' of the related class action.").   Sharp retained the right to participate in the DPP Settlements rather than continue to prosecute its claims individually.   Until the DPP Settlements are final, and in the face of upcoming expert and discovery deadlines, the Hitachi Defendants have had to continue to litigate with Sharp.   Similarly, neither Sharp's instituting suit prior to the opt-out period nor its amendment of its Complaint after the termination of the opt-out period are sufficient.   *See McCubbery v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 67 (N.D. Cal. 1976) (holding that those who "instituted suit against Boise Cascade *after* termination of the exclusion period are bound by the judgment entered in the class action") (emphasis added) (Br. at 3); *Bowman v. UBS Fin. Svcs., Inc.*, No. C-04-3525, 2007 WL 1456037, at *2 (N.D. Cal. May 17, 2007) (characterizing *McCubbery* as merely "holding filing of suit *during* opt-out period 'constituted an effective expression of a class member's desire to opt out'").

## III.      CONCLUSION

Sharp has not demonstrated the requisite excusable neglect to allow it to opt out of the DPP Settlements after the deadline.  The Court should thus deny its motion.

DATED:  July 28, 2014                                     Respectfully submitted,

                                                         By: */s/ Eliot A. Adelson*
                                                         Eliot A. Adelson
                                                         James Maxwell Cooper
                                                         KIRKLAND & ELLIS LLP

                                                         Attorneys for Defendants
                                                         HITACHI, LTD., HITACHI DISPLAYS, LTD.
                                                         (n/k/a JAPAN DISPLAY INC.), HITACHI
                                                         AMERICA, LTD., HITACHI ASIA, LTD., AND
                                                         HITACHI ELECTRONIC DEVICES (USA), INC.