IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | ) ) ) | MDL No. 1917 |
| | ) | Case No. C-07-5944-SC |
| This Order Relates To: | ) ) ) | ORDER DENYING BEST BUY'S OBJECTIONS TO THE SPECIAL MASTER'S ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROTECTIVE ORDER |
| Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al., No. 11-cv-05513-SC; | ) ) ) ) | |
| Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264-SC | ) ) ) ) ) ) ) | |

## I.   **INTRODUCTION**

Now before the Court is Direct Action Plaintiffs ("DAPs") the Best Buy entities'[1] ("Best Buy") objection to the Special Master's[2] Order ("Order") granting in part and denying in part Best Buy's motion for protective order.  ECF No. 2689 ("Objection") (filed

---

[1] The Best Buy entities are Best Buy Co, Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., BestBuy.Com, LLC, and Magnolia Hi-Fi, LLC.  ECF No. 2689 ("Objection") at 1 n.1.

[2] On December 17, 2013 the Court appointed the Honorable Vaughn R. Walker, United States District Judge (Retired), as a Special Master to assist the Court with discovery matters.  ECF No. 2272.

under seal).[3]  Defendants oppose Best Buy's objection, and argue the Court should deny the objection and affirm the Special Master's order.  ECF No. 2685 ("Response").  Although Best Buy requests the Court order a hearing and set a briefing schedule as permitted by Local Rule 72-2, the Court finds neither is necessary.  See Civ. L.R. 72-2 ("Unless otherwise ordered by the assigned District Judge, no response need be filed and no hearing will be held concerning the motion.  The District Judge may deny the motion by written order at any time . . . .").  As a result, Best Buy's objection is ripe for disposition without oral argument.  Civ. L.R. 7-1(b).  As set forth below, the Court AFFIRMS the Special Master and DENIES the objection.

## II.  BACKGROUND

The parties are familiar with the factual and procedural background of the case, so an exhaustive review is unnecessary. The facts relevant to the motion are set forth below.  Defendants are allegedly manufacturers of cathode ray tubes ("CRTs") and, in some cases, of finished products as well.  Best Buy, along with the other DAPs, alleges that Defendants conspired to fix prices for CRTs.  The DAPs do not allege that Defendants conspired to fix the

---

[3] Best Buy previously filed an objection to the Special Master's order that exceeded the five page limit under Civil Local Rule 72-2.  ECF No. 2677.  After Defendants pointed out the issue, Best Buy filed an amended version.  ECF No. 2689.  The Court's order appointing the discovery master sets forth the procedure for objections to the Special Master's orders and incorporates the procedures (including page limits) contained in Civil Local Rule 72-2.  ECF No. 2272, at 4-5.  Accordingly, Best Buy's earlier objection is STRICKEN except for the accompanying Declaration of David Martinez and exhibits containing the record necessary for the Court's review of the Special Master's order.  ECF No. 2677-1 (filed under seal).

**United States District Court**
For the Northern District of California

1  prices of products containing CRTs.  Each DAP alleges that it

2  bought at least one CRT product from a defendant or an entity owned

3  or operated by a defendant.

4      On May 16, 2014, Best Buy filed a motion for a protective

5  order barring discovery into Best Buy's competitive intelligence

6  practices before the Special Master.  ECF No. 2677-1 ("Martinez

7  Decl.") Ex. 1 ("Mot.") at 1 (filed under seal).  The competitive

8  intelligence practices are a part of Best Buy's broader price match

9  guarantee program, by which Best Buy agrees to match any lower

10  prices offered by their competitors.  Mot. at 2.  These practices

11  amount to: (1) contacting competitors to confirm customers'

12  pricing, (2) monitoring competitor advertisements and other records

13  publicly displaying pricing information, and (3) subscribing to

14  industry analyst reports and attending analyst calls.  Id.

15      Defendants seek two forms of discovery into Best Buy's

16  competitive intelligence practices.  First, they seek to depose

17  Best Buy's Rule 30(b)(6) designee regarding Best Buy's:

18

19          [P]ractices, policies and procedures concerning Your
            market monitoring activities for CRT Finished Products
20          including, but not limited to the following: (a) Your
            competitive intelligence activities; (b) Your use of
            third-party data sources and market share/data analyses;
21          and (c) Your knowledge, use and tracking of Your
            competitor's [sic] pricing for CRT Finished Products
22          during the Relevant Time Period . . . .

23

24  Objection at 2-3.  Second, Defendants propounded two

25  interrogatories also seeking information regarding the competitive

26  intelligence practices, including (1) the participation of Best

27  Buy's executives in the competitive intelligence practices or other

28  market monitoring activities, and (2) Best Buy's "executives',

**United States District Court**
For the Northern District of California

employees', or agents' participation in any meetings with [Best Buy's] competitors."  Id. at 3.

In the briefing before the Special Master, Best Buy argued that the information sought in these requests was irrelevant under Supreme Court precedent and subsequent case law, and, even if relevant, the burden of ordering discovery outweighed any potential benefit.  Mot. at 4-9.  Defendants disagreed, arguing that the information sought was both relevant and discoverable.  Martinez Decl. Ex. 2 ("Opp'n") at 2 (filed under seal).  After a telephone conference on June 23, 2014 at which both Best Buy and Defendants' counsel were heard, the Special Master issued an order denying Best Buy's motion as to the Rule 30(b)(6) deposition and granting a protective order as to the interrogatories.  On July 7, 2014, Best Buy filed an objection with the Court seeking review of the Special Master's order.  ECF No. 2677.

## III. <u>LEGAL STANDARDS</u>

### A.   <u>Review of Orders by the Special Master</u>

The Court reviews the Special Master's factual findings for clear error, his legal conclusions <u>de novo</u>, and his procedural decisions for abuse of discretion.  Fed. R. Civ. P. 53(f)(3)-(5); ECF No. 302 (appointing the initial special master).

### B.   <u>Motion for Protective Order</u>

Federal Rule of Civil Procedure 26(c) permits the Court, upon a showing of good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  The Court must undertake a two-step inquiry in deciding whether the information sought is discoverable.  First,

the Court must determine if the material sought is "relevant to any party's claim or defense."  Id. at (b)(1).  Such evidence need not be clearly admissible at trial so long as the request is "reasonably calculated to lead to the discovery of admissible evidence."  Id.  Second, the Court must weigh the burden of the discovery sought against its likely benefit.  Id. at (b)(2)(C)(iii).

**IV.  DISCUSSION**

While Best Buy's objection dices the issues differently, their objection challenges the Special Master's answers to two key questions.  First, is evidence of how Best Buy's competitive intelligence practices function relevant, particularly given the Supreme Court's decision in Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211 (1951) and subsequent case law?  Second, if such evidence is relevant, does the burden of discovery outweigh its likely benefit?  The Court reviews the Special Master's decisions on both questions de novo.

**A. Relevance of the Competitive Intelligence Program**

First, Best Buy argues, citing the Supreme Court's decision in Kiefer-Stewart and subsequent cases, that the evidence sought is irrelevant because "[i]t is black letter law that evidence of an antitrust plaintiff's own conduct is irrelevant and cannot excuse the defendants' conspiratorial conduct."  Mot. at 5 (citing Perma Life Mufflers v. Int'l Parts Corp., 392 U.S. 134, 139-40 (1968); Kiefer-Stewart, 340 U.S. at 214, overruled on other grounds, Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 781-82 (1984); Memorex Corp. v. IBM Corp., 555 F.2d 1379, 1381-82 (9th

5

United States District Court
For the Northern District of California

Cir. 1977); Wilk v. Am. Med. Ass'n, 719 F.2d 207, 232 (7th Cir. 1983)).  Anticipating some of Defendants' arguments in opposition, Best Buy cites cases from other district courts rejecting several arguments as to the relevance of a plaintiff's communications with third parties or sales practices.  See, e.g., In re Polyester Staple Antitrust Litig., No. 3:03CV1516, 2005 WL 6457181, at *4 (W.D.N.C. May 9, 2005) (rejecting relevance argument based on the need to "rebut any inference that communication amongst competitors necessarily means the parties are engaging in an illegal conspiracy"); In re Auto. Refinishing Paint Antitrust Litig., No. MDL 1426, 2006 WL 1479819, at *8 (E.D. Pa. May 26, 2006) (casting aside the contention that discovery might show, inter alia, the highly competitive nature of the relevant industry, and the prices that "Defendants may have charged in a 'but for' world"); In re Aspartame Antitrust Litig., No. 2:06-CV-1732-LDD, 2008 WL 2275528, at *4 (E.D. Pa. Apr. 8, 2008) (denying a motion to compel as to plaintiffs' communications with third parties despite the argument such communications were relevant to show "buying power, market position and demand elasticity").  Finally, Best Buy argues that the policy concerns underlying the antitrust laws would be undermined by permitting discovery into downstream activities. Mot. at 7 (citing Meijer, Inc. v. Abbott Labs., 251 F.R.D. 431, 433-34 (N.D. Cal. 2008)).

In opposition, Defendants offer three reasons why the discovery they seek is relevant.  First, Defendants argue that discovery into the competitive intelligence program is relevant because it shows how Best Buy and their competitors priced their products.  Opp'n at 2.  This is likely to lead to the discovery of

**United States District Court**
For the Northern District of California

admissible evidence here, Defendants contend, because the indirect purchaser plaintiffs ("IPPs") claim that Best Buy and other retailers passed on 100 percent of the conspiratorial CRT overcharges and because Best Buy is likely to be an important third-party witness in the IPPs' case. _Id._ Second, Defendants claim that discovery into the competitive intelligence program is relevant to Best Buy's ability to show injury-in-fact. _Id._ at 10-11. Finally, Defendants contend that the discovery sought is relevant as it will enable them to rebut charges by Best Buy (or other plaintiffs) that competitor contacts and price monitoring is indicative of a conspiracy. _Id._ at 11-13. In support of these arguments Defendants rely principally on two cases. First, they cite to Judge Illston's orders, also involving Best Buy's competitive intelligence practices, in the In re TFT-LCD Flat Panel Antitrust Litigation, No. 07-MD-1827 (N.D. Cal.). In the _TFT_ cases, Best Buy submitted to discovery on their competitive intelligence practices, the Court denied a motion in limine to exclude evidence obtained regarding those practices, and the evidence was admitted in both the direct purchaser trial and individual opt-out trials. Opp'n at 11-12, n.38 (citing 07-MD-1827 (N.D. Cal.) ECF Nos. 5776, 8298). Second, Defendants argue that In re Urethane Antitrust Litigation, No. 04-MD-1616-JWL, 2010 WL 5287675 (D. Kan. Dec. 17, 2010) is "precisely on point." Opp'n at 12. In _Urethane_, the Magistrate Judge granted a motion to compel responses to discovery requests seeking information related to plaintiffs' communications with competitors, finding that the information sought was potentially relevant to "refute plaintiffs' claims that similar conduct by defendants is indicative of

United States District Court
For the Northern District of California

collusion."  <u>Id.</u> at *5; <u>see also</u> <u>In re Urethane Antitrust Litig.</u>,
No. 04-1616-JWL, 2011 WL 1327988, at *5-6 (D. Kan. Apr. 5, 2011)
(affirming the Magistrate's decision).

    In his order, the Special Master rejected Best Buy's argument
that the discovery sought was irrelevant.  Specifically, the
Special Master found that:

> Discovery directed to the settling of prices for finished
> products charged by Best Buy and other retailers could
> well lead to discovery of relevant evidence concerning
> the extent to which, if at all, alleged overcharges were
> passed on by Best Buy and/or by entities above Best Buy
> in the distribution channels for products containing CRTs
> as well as both the fact of damages and their amounts, if
> any.

Order at 1.  In doing so, the Special Master disagreed with Best
Buy's reliance on <u>Kiefer-Stewart</u> and other cases discussing
discovery into an antitrust plaintiff's practices and competitor
contacts.  <u>Id.</u>  Nonetheless, the Special Master did remark that
subpart (g) of Interrogatory No. 16, which requests Best Buy
identify its "executives', employees' and agents' participation in
any meetings with" competitors, "seems foreclosed by the <u>Keifer-
Stewart</u> line of cases."  <u>Id.</u> at 2.

    The Court agrees with the Special Master in every relevant
respect.[4]  Here, the discovery sought is relevant for three

---

[4] The Court does question the Special Master's conclusion that the
type of inquiry in Interrogatory No. 16(g) would be barred by the
<u>Kiefer-Stewart</u> line of cases.  The Court would agree with this view
were it to find, as it seems the Special Master did, that discovery
into Best Buy's competitive intelligence practices is relevant only
as to the issues of pass-through and damages.  However the Court
goes a step further than the Special Master and finds that the
discovery sought by Defendants is also relevant to rebut any
charges that competitive contacts and price monitoring are
circumstantial evidence of an illegal conspiracy.  <u>See Urethane</u>,
2011 WL 1327988, at *6.  Nonetheless, as discussed <u>infra</u>, the Court
concurs with the Special Master's weighing of the burdens and
benefits of Defendant's interrogatories.  Therefore, the Special

United States District Court
For the Northern District of California

1    reasons.

2        First, the Court concurs with the Special Master's conclusion

3    that Kiefer-Stewart and its progeny do not bar all discovery into

4    an antitrust plaintiff's activities.  Specifically, Kiefer-Stewart

5    concluded that antitrust violations by a plaintiff cannot immunize

6    defendants from liability for their own violations.  340 U.S. at

7    214.  While the subsequent cases cited by Best Buy apply various

8    aspects of that principle to the discovery context, Best Buy has

9    not offered any support for the blanket contention that an

10   antitrust plaintiff's activities are always irrelevant and outside

11   the scope of discovery.  To the contrary, as one of Best Buy's

12   cases concluded, information about plaintiffs' activities is

13   relevant in cases, such as this one, where the amount of any pass-

14   through to indirect purchasers is likely to be an issue.  See,

15   e.g., Polyester Staple, 2005 WL 6457181, at *4-5 (concluding that

16   discovery into downstream activities by plaintiffs was potentially

17   relevant to the amount of any pass-through).  Simply because

18   Defendants cannot claim that Best Buy's activities immunize them

19   from liability does not mean the information sought cannot be

20   relevant for other purposes.

21       Second, and relatedly, Best Buy's argument that "the policy

22   precluding discovery into an antitrust plaintiff's conduct bars

23   Defendants' discovery irrespective of any relevance" also fails.

24   Objection at 4.  It may be true that the policy underlying the

25   antitrust laws militates against permitting broad discovery against

26   antitrust plaintiffs where, for instance, the discovery sought

27

28   Master's decision granting in part and denying in part the motion
     need not be disturbed.

United States District Court
For the Northern District of California

1  would simply enable the defendant to shift attention away from an
2  otherwise illegal and actionable scheme or assert an improper pass-
3  on defense.  However such a policy is not implicated in this case.
4  Unlike the situation at issue in the cases cited by Best Buy, here
5  discovery about the downstream pricing activities of Best Buy is
6  not being sought to allege a price fixing conspiracy by Best Buy.
7  Accordingly, permitting discovery here does not run the risk of
8  chilling private enforcement of the antitrust laws, as in the cases
9  offered by Best Buy.  See, e.g., Perma Life Mufflers, 392 U.S. at
10 139-40; Meijer, 251 F.R.D. at 433-34.  Instead, Defendants are
11 seeking the instant discovery because it is directly relevant to
12 the question of how, and in what amount, any potential overcharges
13 were passed through to other plaintiffs.
14     Best Buy dedicates much of its reply brief and objection to
15 two remaining points.  First, Best Buy contends that discovery into
16 the results of the competitive intelligence practices, which they
17 concede might be relevant, would simply be duplicative given the
18 extent of previous discovery on pass-through.  Second, Best Buy
19 argues that the court should distinguish between this allegedly
20 completed discovery on pass-through and discovery into "how Best
21 Buy obtained competitor information," which they argue is wholly
22 irrelevant.  The Court is unmoved.  First, Best Buy's complaints
23 about having already submitted to discovery into its pricing
24 practices and their relevance to the pass-through issue go to the
25 Court's weighing of the benefits and burdens of discovery -- not to
26 the relevance issue.  Second, even if the distinction between the
27 pass-through itself and "how" the competitive intelligence program
28 works were a meaningful one, that distinction would only undermine

**United States District Court**
For the Northern District of California

1 Defendants' arguments as to pass-through and damages.  Evidence of

2 how the competitive intelligence program operates might still be

3 admissible (or at least lead to the discovery of admissible

4 evidence) at trial to rebut allegations that competitor contacts

5 and price monitoring are indicative of the existence of a

6 conspiracy as they were in <u>TFT</u>.  <u>See also</u> <u>Urethane</u>, 2011 WL

7 1327988, at *6.

8     As a result the Court concurs with the Special Master's

9 findings as to the relevance of the discovery sought here.  The

10 discovery sought by Defendants is relevant to the issues of pass-

11 through, injury, and to rebut any argument that competitor

12 communications and price monitoring are indicative of an improper

13 conspiracy.

14     **B.   <u>Weighing the Burdens and Benefits of Discovery</u>**

15     Next, the Court must weigh the burden of discovery against its

16 likely benefits.  Fed. R. Civ. P. 26(b)(2)(C)(iii).  In doing so,

17 the Court considers "the needs of the case, the amount in

18 controversy, the parties' resources, the importance of the issues

19 at stake in the action, and the importance of discovery in

20 resolving those issues."  <u>Id.</u>

21     In Best Buy's briefing before the Special Master, it argued

22 that because it has already submitted to prior discovery on the

23 issue of pass-through and competitive contacts, the burden of

24 discovery is greater than its likely benefit.  Specifically, Best

25 Buy points to a 2012 document production and prior 30(b)(6)

26 deposition involving information relevant to Best Buy's pricing and

27 "the competitive landscape," as rendering the current requests

28 duplicative and burdensome.  Mot. at 2-3.  Further, they complain

United States District Court
For the Northern District of California

1   that the 30(b)(6) deposition at issue involves 26 topics, including

2   "dozens of sub-topics." Id. at 9.  Defendants counter, noting the

3   enormous financial stakes in this case, and contending that Best

4   Buy mischaracterized the extent of discovery already taken in this

5   case.  Opp'n at 2-3, 14.  Specifically, they note that "[t]here is

6   nothing extraordinary or burdensome about requiring a corporate

7   plaintiff to submit to a deposition, even if it involves multiple

8   days or deponents, particularly where, as here, a discovery

9   protocol explicitly allows just such a scenario." Id. at 14.

10  Furthermore, Best Buy complains that in the time since the Special

11  Master's order, Defendants have noticed four more depositions which

12  they apparently intend to take between now and September 5, 2014.

13  Objection at 3.

14      The Special Master concluded that while the burden of

15  responding to Defendants' interrogatories outweighed the benefits,

16  the same was not true with regard to the 30(b)(6) deposition.  The

17  Court agrees.  First, and most importantly, as the Court has

18  already concluded, the discovery sought here is relevant and

19  important not just to parties' claims or defenses, but to one of

20  the most central remaining issues in the litigation -- the question

21  of pass-through.  Given the centrality of this issue to the case,

22  the Court is loath to deny discovery on the issue to any party.

23  Second, as mentioned above, the amount in controversy in this case

24  is enormous, and, as in any complex multidistrict litigation, the

25  parties have all submitted to and propounded extensive discovery.

26  Third, the parties are all sophisticated, well-advised by able (and

27  expensive) lawyers, and certainly not lacking in resources.

28      Finally, additional factors convince the Court that the

United States District Court
For the Northern District of California

1    Special Master appropriately weighed the burden of discovery.
2    First, the objected deposition topic on the competitive
3    intelligence program is only one of 26 topics to be covered at the
4    30(b)(6) deposition -- the remainder of which Best Buy does not
5    object to.  Furthermore, as Defendants state (and Best Buy does not
6    dispute), the parties understood that Defendants would take further
7    30(b)(6) deposition testimony once Best Buy completed document
8    discovery.  Particularly when compared to the level of detail
9    required by Interrogatories Nos. 16 and 17, examination on this
10   issue in a 30(b)(6) deposition would entail significantly less
11   expenditure of time, money, and effort.  Further militating in
12   favor of the deposition and against the interrogatories, the Court
13   shares the Special Master's concern that requiring answers to the
14   interrogatories may require Best Buy to go through a lengthy and
15   expensive process of reviewing its competitive intelligence
16   program's records to identify what may well be a large number of
17   individuals who participated in the program.  It seems unlikely
18   that this inquiry, if completed would lead to the discovery of
19   significant evidence above that gained in the 30(b)(6) deposition.
20   **IV.  CONCLUSION**
21       As a result, the Court AFFIRMS the Special Master's order
22   granting in part and denying in part Best Buy's motion for a
23   protective order and DENIES Best Buy's objection.
24
25       IT IS SO ORDERED.
26
27   Dated: July 28, 2014          _____
28                                 UNITED STATES DISTRICT JUDGE