Guido Saveri (22349) guido@saveri.com
R. Alexander Saveri (173102) rick@saveri.com
Geoffrey C. Rushing (126910) grushing@saveri.com
Cadio Zirpoli (179108) cadio@saveri.com
Travis L. Manfredi (281779) travis@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel for the*
*Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| **ALL DIRECT PURCHASER ACTIONS** | **DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH HITACHI AND SAMSUNG SDI DEFENDANTS** |
| | Date:    August 22, 2014 |
| | Time:   10:00 a.m. |
| | Judge:  Honorable Samuel Conti |
| | Courtroom: 1 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES..................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES............................................................. 1

I.  INTRODUCTION............................................................................................................. 1

II.  FACTUAL AND PROCEDURAL HISTORY .................................................................. 3

III.  THE TERMS OF THE SETTLEMENT ............................................................................ 8

IV.  ARGUMENT .................................................................................................................. 10

   A.  The Settlement Class. ................................................................................................ 11

   B.  The Court-Approved Notice Program Satisfies Due Process and Has Been Fully
     Implemented. ............................................................................................................. 11

   C.  The Settlements Are "Fair, Adequate And Reasonable" and Should Be Granted Final
     Approval. ................................................................................................................... 13

      1.  The Settlements Provide Considerable Relief For The Class. ........................... 14

      2.  The Class Members' Positive Reaction Favors Final Approval. ..................... 15

      3.  The Settlements Eliminate Significant Risk to the Class. ................................ 16

      4.  The Settlements Are the Product of Arm's-Length Negotiations Between the Parties and
        The Recommendation of Experienced Counsel Favors Approval. ................... 17

   D.  The Plan of Allocation Is "Fair, Adequate and Reasonable" and Therefore Should Be
     Approved. .................................................................................................................. 18

V.  OBJECTIONS BY CLASS MEMBERS ......................................................................... 19

VI.  EXCLUSIONS ............................................................................................................... 19

VII.  DISTRIBUTION OF THE SETTLEMENT PROCEEDS TO THE CLASS ...................... 19

VIII. CONCLUSION .............................................................................................................. 21

# TABLE OF AUTHORITIES

## CASES

*Agretti v. ANR Freight System, Inc.*,
    982 F.2d 242 (7th Cir. 1992) ................................................................................... 15

*Arnold v. Arizona Department of Public Safety*,
    No. CV-01-1463-PHX-LOA, 2006 WL 2168637 (D. Ariz. July 31, 2006)................... 16

*Bellows v. NCO Financial System*,
    2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec. 2, 2008) ........................................ 17

*Bynum v. District of Columbia*,
    412 F. Supp. 2d 73 (D.D.C. 2006)............................................................................ 15

*Churchill Village L.L.C. v. General Electric*,
    361 F.3d 566 (9th Cir. 2004) ......................................................................... 12, 13, 15

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .................................................................................. 13

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) .................................................................................. 14

*Fisher Brothers v. Mueller Brass Co.*,
    630 F. Supp. 493 (E.D. Pa. 1985)............................................................................ 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) ............................................................................. 13, 15

*In re "Agent Orange" Product Liability Litigation*,
    818 F.2d 145 (2d Cir. 1987) ..................................................................................... 12

*In re Austrian and German Bank Holocaust Litigation*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................................ 17

*In re Citric Acid Antitrust Litigation*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) .................................................................... 18

*In re Computron Software, Inc.*,
    6 F. Supp.2d 313 (D.N.J. 1998) ............................................................................... 18

*In re Corrugated Container Antitrust Litigation*,
    Case No. M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) .............................. 15

*In re Fleet/Norstar Securities Litigation*,
    935 F. Supp. 99 (D.R.I. 1996) .................................................................................. 15

*In re Linerboard Antitrust Litigation*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003)....................................................................... 14

*In re Lloyds' American Trust Fund Litigation*,
    No. 96 Civ.1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .................... 18

*In Re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) .................................................................................... 20

*In re Mid-Atlantic Toyota Antitrust Litigation*,
    564 F. Supp. 1379 (D. Md. 1983).............................................................................. 14

*In re NASDAQ Market-Makers Antitrust Litigation*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................. 16

*In re PaineWebber Ltd. Partnerships Litigation,*
    171 F.R.D. 104 (S.D.N.Y. 1997) ......................................................................... 19

*In re Patriot American Hospitality Inc. Securities Litigation,*
    No. MDL C-00-1300 VRW, 2005 WL 3801594 (N.D. Cal. Nov. 30, 2005) ........................... 16

*In re Sumitomo Copper Litigation,*
    189 F.R.D. 274 (S.D.N.Y. 1999) ......................................................................... 16

*In re Visa Check/Mastermoney Antitrust Litigation,*
    297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................................................... 16

*In re Vitamins Antitrust Litigation,*
    No. 99-197 TFH, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) ........................................ 18

*Larsen v. Trader Joe's Co.,*
    No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ............................... 16

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,*
    671 F. Supp. 819 (D. Mass. 1987) ....................................................................... 14

*Mangone v. First USA Bank,*
    206 F.R.D. 222 (S.D. Ill. 2001) ......................................................................... 12

*Marisol A. ex rel. Forbes v. Giuliani,*
    185 F.R.D. 152 (S.D.N.Y. 1999) ......................................................................... 17

*Mendoza v. Tucson School District No. 1,*
    623 F.2d 1338 (9th Cir. 1980) ........................................................................... 12

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... 15, 17

*Officers for Justice v. Civil Service Commission,*
    688 F.2d 615 (9th Cir. 1982) ......................................................................... 13, 14

*Pallas v. Pacific Bell,*
    No. C-89-2373 DLJ, 1999 WL 1209495 (N.D. Cal. 1999) ............................................. 16

*Petrovic v. Amoco Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999) ........................................................................... 12

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
    314 F.3d 1180 (10th Cir. 2002) .......................................................................... 17

*Torrisi v. Tucson Electric Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) .......................................................................... 12, 14

*Utility Reform Project v. Bonneville Power Administration,*
    869 F.2d 437 (9th Cir. 1989) ........................................................................... 13

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ........................................................................... 13

*Wilkerson v. Martin Marietta Corp.,*
    171 F.R.D. 273 (D. Colo. 1997) ......................................................................... 17

**STATUTES**

Clayton Act, 15 U.S.C. § 15 .................................................................................. 3

Sherman Act, 15 U.S.C. § 1 .................................................................................. 3

**OTHER AUTHORITIES**

4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 11.22, *et seq.* (4th ed. 2002) .. 11

**RULES**

Federal Rule of Civil Procedure 23 ................................................................................ 1, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e) and the Court's Orders granting preliminary approval of the proposed settlements (Docket Nos. 2311 and 2534), Direct Purchaser Class Plaintiffs ("Plaintiffs") submit this memorandum in support of final approval of the settlements reached with Defendants Hitachi, Ltd.; Hitachi Displays, Ltd. (n/k/a Japan Display Inc.) ("Hitachi Displays"); Hitachi America, Ltd.; Hitachi Asia, Ltd.; Hitachi Electronic Devices (USA) Inc. (collectively, "Hitachi"); and Samsung SDI Co. Ltd. (f/k/a Samsung Display Devices Co., Ltd.); Samsung SDI America, Inc.; Samsung SDI Brasil, Ltd.; Tianjin Samsung SDI Co., Ltd.; Samsung Shenzhen SDI Co., Ltd.; SDI Malaysia Sdn. Bhd.; SDI Mexico S.A. de C.V. (collectively, "Samsung SDI") (collectively "Settling Defendants").

Attached as Exhibit 1 to the accompanying Declaration of R. Alexander Saveri in Support of Final Approval of Class Action Settlement with Hitachi and Samsung SDI Defendants ("Saveri Declaration" or "Saveri Decl.") is the Settlement Agreement dated November 29, 2013 between Plaintiffs and Hitachi ("Hitachi Settlement Agreement"). Saveri Decl., Ex. 1. Attached as Exhibit 2 to the Saveri Declaration is the Settlement Agreement dated February 11, 2014 between Plaintiffs and Samsung SDI ("Samsung SDI Settlement Agreement"). Saveri Decl., Ex. 2. Collectively, the Hitachi Settlement Agreement and the Samsung SDI Settlement Agreement are referred to herein as the "Settlement Agreements," or "Agreements." The settlement memorialized in the Hitachi Settlement Agreement is referred to herein as the "Hitachi Settlement," and the settlement memorialized in the Samsung SDI Settlement Agreement is referred to herein as the "Samsung SDI Settlement." Collectively, the Hitachi Settlement and the Samsung SDI Settlement are referred to herein as the "Settlements." Saveri Decl. ¶ 2.

The Hitachi Settlement provides for payment to the class in the amount of $13,450,000 for a complete release of all class members' claims as defined in paragraph 13 of the Hitachi Settlement Agreement. Saveri Decl., Ex. 1. Hitachi (specifically Hitachi Displays) also has agreed to cooperate with the Plaintiffs in providing certain information regarding the allegations in the complaint. *Id.* (Hitachi Settlement Agreement ¶ 24). In addition, the sales of Hitachi remain in the

1

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH HITACHI AND SAMSUNG SDI DEFENDANTS; Master File No. CV-07-5944-SC

1    case for the purpose of computing damages against the remaining non-settling Defendants. Saveri

2    Decl. ¶ 28.

3            The Samsung SDI Settlement provides for payment to the class in the amount of

4    $33,000,000 for a complete release of all class members' claims as defined in paragraph 13 of the

5    Samsung SDI Settlement Agreement. Saveri Decl., Ex. 2. Like Hitachi Displays, Samsung SDI

6    also has agreed to cooperate with the Plaintiffs in providing certain information regarding the

7    allegations in the complaint. *Id.* (Samsung SDI Settlement Agreement ¶ 24). In addition, the sales

8    of Samsung SDI remain in the case for the purpose of computing damages against the remaining

9    non-settling Defendants. Saveri Decl. ¶ 29.

10           The Hitachi Settlement and Samsung SDI Settlement are the sixth and seventh settlements

11   in this action. Saveri Decl. ¶¶ 18-19. Settlements with the Chunghwa Defendants, the Philips

12   Defendants, the Panasonic Defendants, the LG Defendants, and the Toshiba Defendants have been

13   finally approved by the Court. Saveri Decl. ¶ 20.

14           On January 8, 2014, the Court certified the Settlement Class and preliminarily approved the

15   settlement reached with Hitachi. (Docket No. 2311); Saveri Decl. ¶ 18. On that date, the Court

16   certified a Settlement Class, appointed Plaintiffs' Interim Lead Counsel as Settlement Class

17   Counsel, approved the manner and form of providing notice of the Settlement to class members,

18   established a timetable for publishing class notice and set a hearing for final approval. *See id.*

19           On April 14, 2014, the Court certified the Settlement Class and preliminarily approved the

20   settlement reached with the Samsung SDI Defendants (the "Samsung SDI Settlement"). (Docket

21   No. 2534); Saveri Decl. ¶ 19. On that date, the Court certified a Settlement Class, appointed

22   Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, approved the manner and form of

23   providing notice of the Settlement to class members, established a timetable for publishing class

24   notice and set a hearing for final approval. *See id.*

25           After notice of both settlements was sent to the class, Plaintiffs received just one letter

26   regarding the settlements. Declaration of Ross Murray re Dissemination of Hitachi/Samsung

27   Notice to Class Members and Requests for Exclusion. ("Murray Decl.") ¶ 10; Declaration of

28   Daniel Burke in Support of Final Approval of Class Action Settlement ("Burke Decl.") ¶ 3.

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH HITACHI AND SAMSUNG SDI DEFENDANTS; Master File No. CV-07-5944-SC

1    Although the letter mentions the word "object," it was confirmed by the class settlement

2    administrator Gilardi & Co. that the potential class member simply wishes to participate in the

3    settlements and is not objecting. Therefore, there are no objections to either settlement. *Id.*

4         Direct Purchaser Plaintiffs respectfully request the Court grant final approval of the

5    Settlements on the grounds that they are fair, adequate and reasonable to the class.

6    **II.     FACTUAL AND PROCEDURAL HISTORY**

7         This multidistrict litigation arises from an alleged conspiracy to fix prices of Cathode Ray

8    Tubes ("CRTs"). Saveri Decl. ¶ 3. In November of 2007, the first direct purchaser plaintiff filed a

9    class action complaint on behalf of itself and all others similarly situated alleging a violation of

10   Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15. *Id.*

11   Thereafter, additional actions were filed in other jurisdictions. *Id.* The Judicial Panel on

12   Multidistrict Litigation ("JPML") transferred all related actions to this Court on February 15, 2008.

13   (Dkt. No. 122); Saveri Decl. ¶ 3. On May 9, 2008, Saveri & Saveri, Inc. was appointed Interim

14   Lead Class Counsel for the nationwide class of direct purchasers. (Dkt. No. 282); Saveri Decl. ¶ 3.

15        On March 16, 2009, Plaintiffs filed the Consolidated Amended Complaint ("CAC")

16   alleging an over-arching horizontal conspiracy among the Defendants and their co-conspirators to

17   fix prices for CRTs and to allocate markets and customers for the sale of CRTs in the United States

18   from March 1, 1995 through November 25, 2007 (the "Class Period"). Saveri Decl. ¶ 4. The CAC

19   alleges that Plaintiffs and members of the Class are direct purchasers of CRTs and/or CRT

20   Finished Products from Defendants and/or their subsidiaries and were injured because they paid

21   more for CRTs and/or CRT Finished Products than they would have absent Defendants' illegal

22   conspiracy. (CAC ¶¶ 213–221); Saveri Decl. ¶ 4. Plaintiffs seek, *inter alia*, treble damages

23   pursuant to Section 4 of the Clayton Act, 15 U.S.C. §§ 15 and 22. (CAC at p. 47); Saveri Decl. ¶ 4.

24        Defendants filed several motions to dismiss the CAC on May 18, 2009. (*See* Dkt. Nos.

25   463–493); Saveri Decl. ¶ 5. On March 30, 2010, this Court entered its Order approving and

26   adopting Judge Legge's previous ruling and recommendations granting in part and denying in part

27   Defendants' Motion to Dismiss. (Dkt. No. 665); Saveri Decl. ¶ 5. On April 29, 2010, Defendants

28   answered the CAC. Saveri Decl. ¶ 5.

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH HITACHI AND SAMSUNG SDI DEFENDANTS; Master File No. CV-07-5944-SC

On March 21, 2011, pursuant to FRCP 11, certain Defendants moved to strike allegations of a finished product conspiracy from the CAC. (Dkt. No. 880); Saveri Decl. ¶ 6. After a hearing, the Special Master recommended that the motion be granted and that Plaintiffs' allegations of a finished products conspiracy be stricken from the complaint. (Dkt. No. 947); Saveri Decl. ¶6. The Special Master also recommended that "the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case, and is a proper subject of discovery." (Dkt. No. 947 at 14); Saveri Decl. ¶ 6.

On June 29, 2011, Defendants moved the Court to adopt the Special Master's Report and Recommendation (Dkt. No. 953), and Plaintiffs filed an objection (Dkt. No. 957). Saveri Decl. ¶ 7. The Court set the matter for hearing on September 2, 2011. (Dkt. No. 968); Saveri Decl. ¶ 7. Prior to the hearing, on August 26, 2011, the parties entered into a stipulation providing, among other things: (1) that the Special Master's recommended finding that Plaintiffs violated Rule 11 be vacated; (2) that certain other aspects of the Special Master's recommendations be adopted; and (3) that Plaintiffs' "allegations of the Direct CAC purporting to allege a conspiracy encompassing Finished Products are Stricken from the Direct CAC, provided, however, that the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case." Saveri Decl. ¶ 7. Plaintiffs agreed to withdraw discovery requests regarding the CRT Finished Product Conspiracy claims. Saveri Decl. ¶ 7. Defendants agreed that the issue of the impact of the CRT conspiracy on the prices of the Finished Products would remain in the case. (Dkt. No. 996); Saveri Decl. ¶ 7.

On December 12, 2011 Defendants moved for Summary Judgment against Plaintiffs who purchased CRT Finished Products only. (Dkt. No. 1013); Saveri Decl. ¶ 8. Plaintiffs and the Direct Action Plaintiffs ("DAPs") opposed the motion. Saveri Decl. ¶ 8. On March 20, 2012, Judge Legge heard argument from all parties. *Id.* On May 31, 2012, the Special Master issued his Report and Recommendation that the Court grant Defendants' motion for summary judgment and that judgment be entered against certain plaintiffs that purchased CRT Finished Products from defendants ("R&R"). (Dkt. No. 1221); Saveri Decl. ¶ 8.

The parties filed briefs in support and in opposition to adoption of the R&R. Saveri Decl. ¶ 9. On November 29, 2012, the Court entered the Order Granting in Part and Denying in Part Defendants' Joint Motion for Summary Judgment (Dkt. No. 1470) ("Order"); Saveri Decl. ¶ 9. The Court found that Plaintiffs that purchased a Finished Product, were "in fact indirect purchasers for purposes of antitrust standing." Order at 6; Saveri Decl. ¶ 9. The Court further found that one of the three exceptions that permit indirect purchasers to pursue private treble-damages claims, outlined by the Ninth Circuit Court of Appeals in *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012), could apply to Plaintiffs. Saveri Decl. ¶ 9. The Court ruled that the "Ownership and Control Exception" created in *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), conferred standing on Plaintiffs to sue "insofar as they purchased [Finished Products] incorporating the allegedly price-fixed CRTs from an entity owned or controlled by any allegedly conspiring defendant." Order at 16; Saveri Decl. ¶ 9. Certain defendants filed a motion under 28 U.S.C. section 1292(b) requesting that the Court certify the Order for interlocutory appeal. (Dkt. No. 1499); Saveri Decl. ¶ 9. The Court denied defendants' request. (Dkt. No. 1569); Saveri Decl. ¶ 9.

On May 14, 2013, Plaintiffs moved for class certification. Saveri Decl. ¶ 10. Defendants filed their opposition on September 11, 2013 and Plaintiffs filed their reply on November 11, 2013. *Id.* The matter was fully briefed and set for hearing. *Id.* Prior to the hearing on Plaintiffs' Motion for Class Certification, Plaintiffs settled with the last remaining defendant—Samsung SDI. *Id.*

In September of 2008, the first of several stays prohibiting Plaintiffs from obtaining merits discovery was entered by this Court. (Dkt. Nos. 379, 425, and 590); Saveri Decl. ¶ 11. On June 4, 2008, Plaintiffs' propounded their First Set of Limited Document Requests. Saveri Decl. ¶11.

On March 12, 2010, after the partial stay of discovery was lifted, Plaintiffs propounded their Second Set of Document Requests and First Set of Interrogatories. Saveri Decl. ¶ 12. On October 27, 2011, after extensive meet and confers and several motions to compel, the Court issued its Report Regarding Case Management Conference No. 4 in which it set the middle of December, 2011 as the deadline for the completion of substantial discovery by all parties. (Dkt. Nos. 1007, 1008); Saveri Decl. ¶ 12. Plaintiffs have now received over 5 million pages of documents produced by Defendants. Saveri Decl. ¶ 12.

5

1    On April 3, 2013, the Court entered the Special Master's Scheduling Order and Order Re

2    Discovery and Case Management Protocol. (Dkt. Nos. 1127, 1128); Saveri Decl. ¶ 13. The

3    Scheduling Order set August 30, 2013 as the date for completion of all fact and expert discovery.

4    Saveri Decl. ¶ 13. Beginning in June of 2012, after meeting and conferring with defendants

5    regarding the scope and topics of 30(b)(6) witnesses, Plaintiffs began taking 30(b)(6) depositions

6    of the various defendants. *Id.* To date, in coordination with the indirect purchasers, the Attorneys

7    General, and the opt-out plaintiffs, Plaintiffs have deposed over 25 corporate representatives. *Id.*

8    Beginning in December of 2012, Plaintiffs began taking merits depositions. *Id.* Over 40 merits

9    depositions have been completed to date. *Id.*

10    On October 19, 2012, the Court granted final approval of the first two settlements reached

11    in this case with: (1) Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn.

12    Bhd. ("CPT") ($10 million), and (2) Koninklijke Philips Electronics N.V., Philips Electronics

13    North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da

14    Amazonia Industria Electronica Ltda. ("Philips") ($15 million). Saveri Decl. ¶ 14.

15    On December 27, 2012, the Court granted final approval of the third settlement reached in

16    this case with Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic

17    Corporation of North America, and MT Picture Display Co., Ltd., ("Panasonic") for $17.5 million.

18    Saveri Decl. ¶ 15.

19    On April 1, 2013, the Court granted final approval of the fourth settlement reached in this

20    case with defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan

21    Taipei Co., Ltd. ("LG") for $25 million. Saveri Decl. ¶ 16.

22    On July 23, 2013, the Court granted final approval of the fifth settlement reached in this

23    case with defendants Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba

24    America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.

25    ("Toshiba") for $13.5 million. Saveri Decl. ¶ 17.

26    On January 8, 2014, the Court granted preliminary approval of the sixth settlement reached

27    in this case with Hitachi for $13.45 million. (Dkt. No. 2311); Saveri Decl. ¶ 18. On that date, the

28    Court certified a Settlement Class, appointed Plaintiffs' Interim Lead Counsel as Settlement Class

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH HITACHI AND SAMSUNG SDI DEFENDANTS; Master File No. CV-07-5944-SC

Counsel, approved the manner and form of providing notice of the Settlement to class members, established a timetable for publishing class notice and set a hearing for final approval. Saveri Decl. ¶ 18.

On April 14, 2014, the Court granted preliminary approval of the seventh settlement reached in this case with Samsung SDI for $33 million. (Dkt. No. 2534); Saveri Decl. ¶ 19. On that date, the Court certified a Settlement Class, appointed Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, approved the manner and form of providing notice of the Settlement to class members, established a timetable for publishing class notice and set a hearing for final approval. Saveri Decl. ¶ 19. Because the Samsung SDI Settlement was reached before notice of the Hitachi settlement was sent to the class, Plaintiffs and Hitachi stipulated, and the Court ordered, that in the interest of judicial efficiency and to save notice costs, notice and final approval would be delayed so that notice of the Samsung SDI Settlement could be given at the same time. (Dkt. No. 2341); Saveri Decl. ¶ 19.

In the first five settlements—CPT, Philips, Panasonic, LG, and Toshiba—the Court certified a Settlement Class, appointed Saveri & Saveri, Inc. as Settlement Class Counsel, and found that the manner and form of providing notice of the settlements to class members was the best notice practicable under the circumstances (*see* Dkt. Nos. 1412, 1508, 1621, 1791), and the Court entered final judgments of dismissal with respect to the settling (and released) defendants (*see* Dkt. Nos. 1413, 1414, 1509, 1510, 1622, 1792); Saveri Decl. ¶ 20.

Including the settlements with Hitachi and Samsung SDI, class plaintiffs have reached total settlements to date of $127,450,000 in cash for the benefit of the class. Saveri Decl. ¶ 38. If final approval of the settlements with Hitachi and Samsung SDI is granted, this resolves the litigation for the Direct Purchaser Class pending in Case No. 07-cv-5944 SC.[1] *Id.* The CRT Direct Purchasers have filed a separate class action (Case No. 14-cv-2058 SC) against the Thomson and the Mitsubishi entities alleging the same conspiracy for the fixing the prices of CRTs and CRT

---

[1] IRICO Group Corporation; IRICO Group Electronics Co., Ltd.; and IRICO Display Devices Co., Ltd. ("IRICO") were all properly served and appeared through counsel. On June 24, 2010, the Court granted counsel for IRICO's motion to withdraw. (Dkt. No. 732.) No new counsel for IRICO has made an appearance in this action on their behalf. Plaintiffs' Counsel shall file a Request for a Default Judgment against IRICO in the near future.

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH HITACHI AND SAMSUNG SDI DEFENDANTS; Master File No. CV-07-5944-SC

1    products. *Id.* That case was filed in the Northern District of California and has been coordinated

2    with the MDL 1917 as a separate matter. *Id.*

3          CRTs are defined to mean Cathode Ray Tubes of any type (*e.g.*, color display tubes and

4    color picture tubes). Saveri Decl. ¶ 21. CRT Finished Products are those products that when

5    finished contain Cathode Ray Tubes—such as televisions and computer monitors. CRT Products

6    means CRTs and/or CRT Finished Products. *Id.*

7          The Settlement between Plaintiffs and Hitachi resolves all claims related to CRT Products

8    (*i.e.*, CRTs and CRT Finished Products) brought by Plaintiffs against Hitachi and related entities

9    that are defined in the Hitachi Settlement Agreement to be "Hitachi Releasees." Saveri Decl. ¶ 22.

10          The Settlement between Plaintiffs and Samsung SDI resolves all claims related to CRT

11    Products (*i.e.*, CRTs and CRT Finished Products) brought by Plaintiffs against Samsung SDI and

12    related entities that are defined in the Samsung SDI Settlement Agreement to be "Samsung SDI

13    Releasees." Saveri Decl. ¶ 23.

14          Plaintiffs have hired Gilardi & Co, LLC ("Gilardi") to serve as the Settlement

15    Administrator. Murray Decl. ¶ 1. On April 28, 2014, Gilardi mailed and e-mailed notice to each

16    class member identified by Defendants. Murray Decl. ¶¶ 4–5. On April 28, 2014, the Summary

17    Notice was published in The Wall Street Journal. *Id.* ¶ 8. A website was also established at

18    www.CRTDirectPurchaserAntitrustSettlement.com, which contains copies of the Settlement

19    Agreement, Class Notice and Preliminary Approval Order. *Id.* ¶ 6. The deadline for objections to

20    the Settlement or requests for exclusion from the Settlement Class was June 12, 2014. *Id.* ¶ 9

21    Gilardi received twenty-one (21) requests for exclusion and no objections. *Id.* ¶¶ 9, 10. *See also*

22    Burke Decl. ¶ 3.

23    **III.    THE TERMS OF THE SETTLEMENT**

24          In exchange for dismissal with prejudice and a release of all claims asserted in the CAC,

25    Hitachi has agreed to pay $13,450,000 in cash to settle all direct purchaser claims against it. Saveri

26    Decl. ¶ 26. The funds have been deposited into a guaranteed escrow account pursuant to the

27    Settlement Agreement. *Id.*

28

8

1    In exchange for dismissal with prejudice and a release including all claims asserted in the

2    CAC, Samsung SDI has agreed to pay $33,000,000 in cash to settle all direct purchaser claims

3    against it. Saveri Decl. ¶ 27. The funds have been deposited into a guaranteed escrow account

4    pursuant to the Settlement Agreement. *Id.*

5    In addition, Hitachi Displays has agreed to cooperate with Plaintiffs in the prosecution of

6    this action by: (1) providing copies of all discovery (including among other things, all documents,

7    interrogatories, requests for admission, etc.) Hitachi produces to any other party in the Action; (2)

8    providing a declaration and/or custodian establishing the authenticity of Hitachi's transactional

9    data, and foundation of any Hitachi document or data needed at summary judgment or trial; (3)

10   allowing Counsel to question percipient witnesses noticed for deposition by any other party in the

11   Action with whom Hitachi has not settled; and (4) using its best efforts to make available three

12   persons for trial testimony, each of whom is, at the time of trial, a director, officer, and/or

13   employee of Hitachi Displays whom Lead Counsel reasonably believes to have knowledge

14   regarding Plaintiffs' claims. Saveri Decl. ¶ 30.

15   Similarly, Samsung SDI has agreed to cooperate with Plaintiffs in the prosecution of this

16   action by: (1) providing copies of all discovery (including among other things, all documents,

17   interrogatories, requests for admission, etc.) Samsung SDI produces to any other party in the

18   Action; (2) providing a declaration and/or custodian establishing the authenticity of Samsung SDI's

19   transactional data, and foundation of any Samsung SDI document or data needed at summary

20   judgment or trial; (3) allowing Counsel to question percipient witnesses noticed for deposition by

21   any other party in the Action with whom Samsung SDI has not settled; and (4) using its best efforts

22   to make available one person for trial testimony, who is, at the time of trial, a director, officer,

23   and/or employee of Samsung SDI whom Lead Counsel reasonably believes to have knowledge

24   regarding Plaintiffs' claims. Saveri Decl. ¶ 31.

25   Moreover, Hitachi's sales remain in the case for the purpose of computing Plaintiffs' claims

26   against the remaining non-settling Defendants. Saveri Decl. ¶ 28.

27   Likewise, Samsung SDI's sales remain in the case for the purpose of computing Plaintiffs'

28   claims against any remaining non-settling Defendants. Saveri Decl. ¶ 29.

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH HITACHI AND SAMSUNG SDI DEFENDANTS; Master File No. CV-07-5944-SC

1    Upon the Settlements becoming final, Plaintiffs and Class members will relinquish any

2   claims against Hitachi and Samsung SDI as described in paragraph 13 of both of the Settlement

3   Agreements. Saveri Decl., Exs. 1 and 2 (paragraph 13 of the Settlement Agreements). The release,

4   however, excludes claims for product defects or personal injury or breach of contract arising in the

5   ordinary course of business or indirect purchaser claims for CRT Products that were not purchased

6   directly from Defendants or their alleged co-conspirators. *Id.*

7    The Hitachi Settlement and the Samsung SDI Settlement become final upon: (i) the Court's

8   approval of the Settlements pursuant to Rule 23(e) and the entry of a final judgment of dismissal

9   with prejudice as to Hitachi and Samsung SDI; and (ii) the expiration of the time for appeal or, if

10   an appeal is taken, the affirmance of the judgment with no further possibility of appeal. Saveri

11   Decl., Exs. 1 and 2 (paragraph 11 of the Settlement Agreements).

12    Subject to the approval and direction of the Court, the Settlement payments will be used to:

13   (i) make a distribution to Class members in accordance with a proposed plan of allocation to be

14   approved by the Court (Saveri Decl., Exs. 1 and 2 (paragraph 21 of the Settlement Agreements));

15   (ii) pay Class Counsel's attorneys' fees, costs, and expenses as may be awarded by the Court

16   (Saveri Decl., Exs. 1 and 2, (paragraphs 22 and 23 of the Settlement Agreements)); and (iii) pay all

17   taxes associated with any interest earned on the escrow account. Saveri Decl., Exs. 1 and 2,

18   (paragraph 17(f) of the Settlement Agreements). In addition, each settlement provides that

19   $300,000 may be used to pay for Notice costs and future costs incurred in the administration and

20   distribution of the Settlement payments. Saveri Decl., Exs. 1 and 2, (paragraph 19(a) of the

21   Settlement Agreements).

22   **IV.    ARGUMENT**

23    A class action may not be dismissed, compromised, or settled without the approval of the

24   Court. Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined

25   procedure and specific criteria for class action settlement approval. The Rule 23(e) settlement

26   approval procedure includes three distinct steps:

27    1.    Certification of a settlement class and preliminary approval of the proposed

28     settlement;

1       2.      Dissemination of notice of the settlement to all affected class members; and

2       3.      A formal fairness hearing, also called the final approval hearing, at which class

3               members may be heard regarding the settlement, and at which counsel may

4               introduce evidence and present argument concerning the fairness, adequacy, and

5               reasonableness of the settlement.

6   This procedure safeguards class members' due process rights and enables the Court to fulfill its

7   role as the guardian of class interests. *See* 4 Albert Conte & Herbert Newberg, *Newberg on Class*

8   *Actions* §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*").

9       **A.      The Settlement Class.**

10      The Court here completed the first step in the settlement approval process when it granted

11  preliminary approval of the Settlements.

12      With respect to both the Hitachi Settlement and the Samsung SDI Settlement, the Court

13  certified a Settlement Class consisting of:

> All persons and entities who, between March 1, 1995 and November 25, 2007,
> directly purchased a CRT Product in the United States from any defendant or any
> subsidiary or affiliate thereof, or any co-conspirator. Excluded from the Class are
> defendants, their parent companies, subsidiaries and affiliates, any co-conspirators,
> all governmental entities, and any judges or justices assigned to hear any aspect of
> this action.

18  CRT Products refers to all forms of Cathode Ray Tubes, as well as to devices that contain

19  CRTs. It includes CPTs, CDTs, monochrome display tubes and the finished products that

20  contain them—televisions and monitors. (Docket No. 1603).

21      **B.      The Court-Approved Notice Program Satisfies Due Process and Has Been**
22              **Fully Implemented.**

23      The second step in the settlement process has also been completed. The Court-approved

24  notice plan has been successfully implemented and class members have been notified of the

25  Settlements.

26      When a proposed class action settlement is presented for court approval, the Federal Rules

27  require:

> [T]he best notice that is practicable under the circumstances, including individual
> notice to all members who can be identified through reasonable effort. The notice

11

1

2

3

4

> must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

5

Fed. R. Civ. P. 23(c)(2)(B)

6

7

8

9

10

11

12

13

A settlement notice is a summary, not a complete source, of information. *See, e.g.*, *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *In re "Agent Orange" Prod. Liability Litig.*, 818 F.2d 145, 170 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988); *Mangone v. First USA Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001). This circuit requires a general description of the proposed settlement in such a notice. *Churchill Vill. L.L.C. v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993); *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980), *cert. denied sub nom. Sanchez v. Tuscon Unified School District*, 450 U.S. 912 (1981).

14

15

16

17

18

19

20

21

22

23

24

25

The notice plan approved by this Court is commonly used in class actions like this one. It constitutes valid, due and sufficient notice to class members, and is the best notice practicable under the circumstances. The content of the court-approved notice complies with the requirements of Rule 23(c)(2)(b). Both the summary and long-form notices clearly and concisely explained in plain English the nature of the action and the terms of the Settlements. They provided a clear description of who is a member of the class and the binding effects of class membership. They explained how to exclude oneself from the class, how to object to the Settlements, how to obtain copies of papers filed in the case and how to contact Class counsel. *See* Murray Decl., Exs. A, B. The notices also explained that they provided only a summary of the Settlements, that the settlement agreements were on file with the District Court, and that the settlement agreements were available online at: www.CRTDirectPurchaserAntitrustSettlement.com. *See* Murray Decl., Exs. A, B. Consequently every provision of the Settlements was available to each class member.

26

27

28

The notice plan was implemented by the settlement administrator Gilardi & Co. LLC. Murray Decl., ¶ 1. Specifically, Gilardi printed and mailed 16,895 notices to class members through U.S. Mail and electronically mailed notices to 873 unique electronic mail addresses of

12

1    class members. Murray Decl., ¶¶ 4, 5. Gilardi also published notice in the April 28, 2014 *Wall*

2    *Street Journal*. Murray Decl., ¶ 8, Ex. B. Gilardi also maintains the case website, at which class

3    members can view and print the Class Notice, the Settlement Agreements, and the Preliminary

4    Approval Orders. Murray Decl., ¶ 6. Gilardi also established a toll-free telephone number to

5    answer Class members' questions in both English and Spanish. Murray Decl. ¶ 7.

6         The notice plan is substantially identical to the notice plan approved by the Court with CPT,

7    Philips, Panasonic, LG and Toshiba Settlements. Saveri Decl. ¶ 34.

8         **C.    The Settlements Are "Fair, Adequate And Reasonable" and Should Be**
9              **Granted Final Approval.**

10        The law favors the compromise and settlement of class action suits. *See, e.g.*, *Churchill*

11   *Village*, 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

12   "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial

13   judge because he is 'exposed to the litigation and their strategies, positions and proof.'" *Hanlon v.*

14   *Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988) (quoting *Officers for Justice v. Civil Serv.*

15   *Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)). In exercising such discretion, courts should give

16   "proper deference to the private consensual decision of the parties . . . . '[T]he court's intrusion

17   upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit

18   must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the

19   product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

20   settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon*, 150 F.3d

21   at 1027 (citation omitted).

22        It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the

23   preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625. "[T]here is an

24   overriding public interest in settling and quieting litigation" and this is "particularly true in class

25   action suits. . . ." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also*

26   *Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). In

27   evaluating a proposed class action settlement, the Ninth Circuit has recognized that:

28

13

> [T]he universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi*, 8 F.3d at 1375.

The court is entitled to exercise its "sound discretion" when deciding whether to grant final approval. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. "Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987).

### 1.    The Settlements Provide Considerable Relief For The Class.

The consideration for the Settlements is substantial and provides considerable relief for the class. The Hitachi Settlement provides for a payment of $13,450,000, and the Samsung SDI Settlement provides for a payment of $33,000,000. *See* Saveri Decl. ¶¶ 26-27. The settlement with Samsung SDI is the largest settlement to date. *Id.* ¶ 27. The Settlements also compare favorably to settlements finally approved in other price-fixing cases. *See, e.g.*, *Fisher Bros. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (recoveries equal to .1%, .2%, 2%, .3%, .65%, .88%, and 2.4% of defendants' total sales).

Further, the Settlements call for Hitachi and Samsung SDI to cooperate with Plaintiffs. Saveri Decl. ¶¶ 30-31. This is a valuable benefit because it will save time, reduce costs, and provide access to information, witnesses, and documents regarding the CRT conspiracy that might otherwise not be available to Plaintiffs. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a court to consider in approving a settlement"). "The provision of such assistance is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). *See also*

14

*In re Corrugated Container Antitrust Litig.*, Case No. M.D.L. 310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981) ("*Corrugated Container*") ("The cooperation clauses constituted a substantial benefit to the class."). In addition, "[i]n complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (quoting Manual for Complex Litigation Second, § 30.46 (1986)).

Finally, the Settlements preserve Plaintiffs' right to litigate against the non-settling defendants for the entire amount of Plaintiffs' damages based on joint and several liability. *See Corrugated Container*, 1981 WL 2093, at *17; Saveri Decl. ¶¶ 28-29 (Released claims do not preclude Plaintiffs from pursuing any and all claims against other non-settling defendants for the sales attributable to Hitachi and Samsung SDI).

### 2. The Class Members' Positive Reaction Favors Final Approval.

There are no objections to the Settlements, and the reaction of the class to the Settlements supports this Court granting final approval. Murray Decl. ¶10; Burke Decl. ¶ 3. In determining the fairness and adequacy of a proposed settlement, the Court also should consider "the reaction of the class members to the proposed settlement." *Churchill Village*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also, In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996).

Pursuant to the Court's order, approximately 17,768 Class Notices were mailed or electronically mailed to class members throughout the United States. *See* Murray Decl., ¶¶ 4, 5. When presented with the material financial terms of the proposed Settlements, no members of the class objected to the Settlements. Murray Decl. ¶ 10; Burke Decl. ¶ 3. In addition, only 21 class members opted out of the class. *See* Murray Decl. ¶ 9. The reaction of the class to the proposed Settlements therefore supports the conclusion that the proposed Settlements are fair, adequate and reasonable. *Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73, 77 (D.D.C. 2006) ("The low number of opt outs and objectors (or purported objectors) supports the conclusion that the terms of the settlement were viewed favorably by the overwhelming majority of class members."); *Pallas v.*

15

*Pac. Bell*, No. C-89-2373 DLJ, 1999 WL 1209495, at *8 (N.D. Cal. July 13, 1999) ("The small percentage—less than 1%—of persons raising objections is a factor weighing in favor of approval of the settlement."). *See also*, *Arnold v. Arizona Dept. of Pub. Safety*, No. CV-01-1463-PHX-LOA, 2006 WL 2168637, at *10 (D. Ariz. July 31, 2006); *In re Patriot Am. Hospitality Inc. Sec. Litig.*, No. MDL C-00-1300 VRW, 2005 WL 3801594, at *2 (N.D. Cal. Nov. 30, 2005). The inference of class's approval of the Settlements is even stronger where, as here, much of the class consists of sophisticated business entities. *See Linerboard*, 321 F. Supp. 2d at 629.

### 3. The Settlements Eliminate Significant Risk to the Class.

While Plaintiffs believe their case is strong, the Settlements eliminate significant risks they would face if the action were to proceed. Plaintiffs would bear the burden of establishing liability, impact and damages. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("'Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'") (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998)); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 283 (S.D.N.Y. 1999). This is an important consideration because Defendants have vowed to aggressively defend this action. Thus, the Settlements are in the best interest of the Class because they eliminate the risks of continued litigation, while at the same time creating a substantial cash recovery and obtaining certain Defendants' cooperation.

Continued litigation against Defendants also would involve significant additional expenses and protracted legal battles, which are avoided through the Settlements. *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial resources . . . . Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement.") (cited authority omitted); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), *aff'd* 396 F.3d 96 (2d Cir. 2005) ("The potential for this complex litigation to result in enormous expense, and to continue for a long time, was great."); *In re Austrian and German Bank Holocaust Litig.*, 80 F.

16

Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 8 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."); *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y. 1999), *aff'd sub nom. Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) (noting that trial would last at least five months and require testimony from numerous witnesses and experts).

### 4. The Settlements Are the Product of Arm's-Length Negotiations Between the Parties and The Recommendation of Experienced Counsel Favors Approval.

This class action has been vigorously litigated. Class Counsel has analyzed millions of documents produced by Defendants and others. They have also conducted an independent investigation of the facts and analyzed Defendants' sales and pricing data.

The negotiations leading to the Settlements were vigorous, informed and thorough. With respect to both the Hitachi Settlement and the Samsung SDI Settlement, the parties reached agreement after the exchange of extensive mediation briefs and arduous mediation sessions before an experienced mediator, Judge Vaughn Walker (Ret.). Saveri Decl. ¶¶ 24-25. They were contested and conducted in the utmost good faith. *Id.*

Counsel's judgment that the Settlements are fair and reasonable is also entitled to great weight. *See Nat'l Rural Telcomms. Coop.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *accord Bellows v. NCO Fin. Sys.*, No. 3:07-dv-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525, at *22 (S.D. Cal. Dec. 2, 2008); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288–89 (D. Colo. 1997).

While the Plaintiffs believe they have meritorious claims, Defendants have asserted that they have strong defenses which would serve to eliminate their liability and/or damage exposure to the Class. The parties entered into the Settlements to eliminate the burden, and expense and risks of further litigation.

For all of these reasons, the cash settlements obtained represent excellent recoveries and are certainly "fair, adequate and reasonable" to the Class. Accordingly, final approval should be granted.

**D.     The Plan of Allocation Is "Fair, Adequate and Reasonable" and Therefore Should Be Approved.**

The Class Notice, which was disseminated in accordance with the Preliminary Approval Orders, outlined the following proposed plan for allocating the settlement proceeds:

> In the future, each Settlement Class member's *pro rata* share of the Settlement Fund will be determined by computing each valid claimant's total CRT Product purchases divided by the total valid CRT Product purchases claimed. This percentage is multiplied to the Net Settlement Fund (total settlements minus all costs, attorneys' fees, and expenses) to determine each claimant's *pro rata* share of the Settlement Fund. To determine your CRT Product purchases, CRT tubes (color display and color picture) are calculated at full value (100%) while CRT televisions are valued at 50% and CRT computer monitors are valued at 75%. In summary, all valid claimants will share in the settlement funds on a *pro rata* basis determined by the CRT value of the product you purchased — tubes 100%, monitors 75% and televisions 50%.

*See* Murray Decl., Ex. A, ¶ 9.

Plaintiffs received no objection to the plan of allocation. *Id*. ¶ 10, Burke Decl. ¶ 3.  To the contrary, plaintiffs' only comments from the class are that they wish to participate in the settlement proceeds. Burke Decl. ¶ 3.

A plan of allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements. *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). A plan of allocation that compensates class members based on the type and extent of their injuries is generally considered reasonable. *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998). Here the proposed distribution will be on a *pro rata* basis, with no class member being favored over others. This type of distribution has frequently been determined to be fair, adequate, and reasonable. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, p.2 (Oct. 27, 2010) (Order Approving Pro Rata Distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable."); *In re Lloyds' Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating

18

the settlement benefits."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 135 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997) ("*pro rata* distribution of the Settlement on the basis of Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of the merits of the Class Members' claims").

The Notice informed class members that they will submit their purchase information for both CRT tubes and finished products—televisions and monitors containing CRTs. All class members will share in the settlement funds on a *pro rata* basis determined by the CRT value of the product they purchased—tubes 100%, monitors 75% and televisions 50%.

The proposed plan of allocation is identical to the plan of allocation previously approved by the Court with CPT, Philips, Panasonic, LG and Toshiba settlements. Saveri Decl. ¶ 35. Accordingly, the plan of allocation done on a *pro rata* basis in the instant case is "fair, adequate and reasonable" to the Class and final approval of the plan of allocation should be granted.

## V.   OBJECTIONS BY CLASS MEMBERS

As indicated above, there were no objections to the Settlements. Murray Decl. ¶ 10; Burke Decl. ¶ 3.

## VI.   EXCLUSIONS

Class members were advised of the right to be excluded from the Settlement Class, which could be accomplished through mailing a request for exclusion to the Settlement Administrator postmarked not later than June 12, 2014. Twenty-one (21) requests for exclusion were received from Class members.[2] Murray Decl., ¶ 9, Ex. C.

## VII.   DISTRIBUTION OF THE SETTLEMENT PROCEEDS TO THE CLASS

After entry of separate final judgments against Hitachi and Samsung SDI, the litigation against all defendants who have appeared in Case No. 07-cv-5944 SC is complete. It is therefore appropriate at this time to establish a schedule to distribute the $127,450,000 settlement fund to class members. In this regard, Plaintiffs respectfully request the court (1) approve the claim form for class members to complete regarding their purchases of CRTs; (2) set a schedule for class member to

---

[2] The twenty-one requested exclusions include the Dell and Sharp entities.  These exclusions are the subject of separate motions which are fully briefed and pending before the Court. (*See* Dkt. Nos. 2696, 2698, 2712, 2713 and 2715).

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH HITACHI AND SAMSUNG SDI DEFENDANTS; Master File No. CV-07-5944-SC

1   submit their completed claim forms to the Settlement Administrator Gilardi; and (3) set a schedule

2   for Plaintiffs to file and the Court to hear Plaintiffs' Motion for Attorneys' Fees and Costs.

3          Plaintiffs respectfully request that the Court approve the Notice Regarding Claims and the

4   Claim Form attached as Exhibit A to the Proposed Order Approving Claim Form and Directing

5   Notice to Class Members Regarding Distribution of Settlement Fund ("Proposed Order") submitted

6   concurrently herewith. The Proposed Order anticipates the Claims Administrator mailing the

7   Notice Regarding Claims and the Claim Form to class members approximately fourteen (14) days

8   after Your Honor issues an order approving the proposed Claim Form and schedule. Class

9   members will have ninety (90) days from the date of mailing of the Claim Form to complete and

10  submit the Claim Form to the Settlement Administrator. *See* Order Approving Claim Form and

11  Claim Period for Direct Purchaser Action, *In re Static Random Access Memory (SRAM) Antitrust*

12  *Litig.*, Case No. 07-md-1819 CW (Nov. 2, 2011) (Dkt. No. 1416) (attached as Exhibit 3 to the

13  Saveri Declaration); Order Approving Claim Form to Be Provided to Class Members Regarding

14  Distribution of Settlement Fund, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,

15  Case No. 02-md-1486 PJH (Sept. 11, 2007) (Dkt. No. 1712) (attached as Exhibit 4 to the Saveri

16  Declaration). The Settlement Administrator, with the assistance of Class Counsel, will review and

17  audit the claims and submit to the Court an order approving distribution of the Settlement Fund to

18  class members. All valid claims will be distributed in accordance with the plan of allocation that

19  this Court has previously approved, namely, a *pro rata* distribution based on direct purchases of

20  CRT products.

21         Plaintiffs' Notice Regarding Claims will also inform class members that Plaintiffs' counsel

22  will file their Motion for Attorneys' Fees and Costs on or before September 5, 2014 and that the

23  hearing, already reserved with the Court, is set for October 10, 2014 at 10:00 a.m. in Courtroom 1.

24  In addition, any class member wishing to comment or object to Plaintiffs' Motion for Attorneys'

25  Fees and Costs may do so by filing with the Court any comments or objections on or before

26  September 26, 2014. *See In Re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-95 (9th

27  Cir. 2010) (the deadline for class members to comment or object must be after counsels' fee and

28  cost application is on file).

The proposed dates set forth above are summarized as follows:

- August 22, 2014:     Hearing on Final Approval of Settlements

- 14 Days From
  Entry of Order:     Plaintiffs Send Notice and Proof of Claim
  form to class.

- September 5, 2014:     Plaintiffs File Motion For Attorneys' Fees
  and Costs

- September 26, 2014:     Comments or Objections to Plaintiffs'
  Motion for Attorney's Fees and Costs

- October 10, 2014:     Hearing on Plaintiffs Motion For
  Attorneys' Fees and Costs

- 90 Days from
  Mailed Notice:     Class members to submit claim forms

## VIII.   CONCLUSION

For the foregoing reasons set forth herein, Plaintiffs respectfully submit that the Court should enter the orders granting the relief requested by this motion: (i) granting final approval of the Settlements; (ii) granting final judgment and dismissal with prejudice as to Hitachi and Samsung SDI; (iii) approving the claim form for class members to complete regarding their purchases of CRTs; (iv) setting a schedule for class member to submit their completed claim forms to the Settlement Administrator Gilardi; and (v) setting a schedule for Plaintiffs to file and the Court to hear Plaintiffs' Motion for Attorneys' Fees and Costs.

Dated: August 1, 2014.

Respectfully submitted,

/s/ *Guido Saveri*
Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)
Travis L. Manfredi (281779)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel For Plaintiffs*

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH HITACHI AND SAMSUNG SDI DEFENDANTS; Master File No. CV-07-5944-SC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joseph W. Cotchett
Steven N. Williams
Adam J. Zapala
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577


Bruce L. Simon
Aaron M. Sheanin
PEARSON, SIMON & WARSHAW LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:  (415) 433-9000
Facsimile:  (415) 433-9008


H. Laddie Montague, Jr.
Ruthanne Gordon
Charles P. Goodwin
Candice Enders
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (800) 424-6690
Facsimile: (215) 875-4604


Michael P. Lehmann
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:  (415) 633-1908
Facsimile:  (415) 358-4980


Gary Specks
KAPLAN FOX
423 Sumac Road
Highland Park, IL 60035
Telephone: (847) 831-1585
Facsimile: (847) 831-1580


Douglas A. Millen
William H. London
FREED KANNER LONDON & MILLEN
2201 Waukegan Road
Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4519

22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Eric B. Fastiff
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008


W. Joseph Bruckner
Elizabeth R. Odette
LOCKRIDGE GRINDAL NAUEN P.L.L.P
100 Washington Avenue S
Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile: (612) 339-0981

*Attorneys for Plaintiffs*

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH HITACHI AND SAMSUNG SDI DEFENDANTS; Master File No. CV-07-5944-SC