Guido Saveri (22349) guido@saveri.com
R. Alexander Saveri (173102) rick@saveri.com
Geoffrey C. Rushing (126910) grushing@saveri.com
Cadio Zirpoli (179108) cadio@saveri.com
Travis Manfredi (281779) travis@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel for the
Direct Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV- 07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| | **DECLARATION OF R. ALEXANDER SAVERI IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH HITACHI AND SAMSUNG SDI DEFENDANTS** |
| **ALL DIRECT PURCHASER ACTIONS** | |
| | Date:  August 22, 2014 |
| | Time: 10:00 a.m. |
| | Judge: Honorable Samuel Conti |
| | Courtroom: 1 |

1    I, R. Alexander Saveri, declare:

2        1.      I am a partner with Saveri & Saveri, Inc., Interim Lead Counsel for Direct Purchaser

3    Plaintiffs in this litigation. I am a member of the Bar of the State of California and an attorney

4    admitted to practice in the Northern District of California. I make this Declaration in Support of

5    Plaintiffs' Motion for Final Approval of Class Action Settlement with Defendants Hitachi, Ltd.;

6    Hitachi Displays, Ltd. (n/k/a Japan Display Inc.) ("Hitachi Displays"); Hitachi America, Ltd.;

7    Hitachi Asia, Ltd.; Hitachi Electronic Devices (USA) Inc. (collectively, "Hitachi"); and Samsung

8    SDI Co. Ltd. (f/k/a Samsung Display Devices Co., Ltd.); Samsung SDI America, Inc.; Samsung

9    SDI Brasil, Ltd.; Tianjin Samsung SDI Co., Ltd.; Samsung Shenzhen SDI Co., Ltd.; SDI Malaysia

10   Sdn. Bhd.; SDI Mexico S.A. de C.V. (collectively, "Samsung SDI") (collectively "Settling

11   Defendants"). Except as otherwise stated, I have personal knowledge of the facts stated below.

12       2.      Attached hereto as <u>Exhibit 1</u> is the Settlement Agreement dated November 29, 2013

13   between Plaintiffs and Hitachi ("Hitachi Settlement Agreement").  It was the sixth settlement

14   Plaintiffs have reached in this case.  Attached hereto as <u>Exhibit 2</u> is the Settlement Agreement

15   dated February 11, 2014 between Plaintiffs and Samsung SDI ("Samsung SDI Settlement

16   Agreement").  It was the seventh settlement that Plaintiffs have reached in this case.  Collectively,

17   the Hitachi Settlement Agreement and the Samsung SDI Settlement Agreement are referred to

18   herein as the "Settlement Agreements," or "Agreements."  The settlement memorialized in the

19   Hitachi Settlement Agreement is referred to herein as the "Hitachi Settlement," and the settlement

20   memorialized in the Samsung SDI Settlement Agreement is referred to herein as the "Samsung SDI

21   Settlement."  Collectively, the Hitachi Settlement and the Samsung SDI Settlement are referred to

22   herein as the "Settlements."

23       3.      This multidistrict litigation arises from an alleged conspiracy to fix prices of

24   Cathode Ray Tubes ("CRTs"). In November of 2007, the first direct purchaser plaintiff filed a class

25   action complaint on behalf of itself and all others similarly situated alleging a violation of Section 1

26   of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15. Thereafter,

27   additional actions were filed in other jurisdictions. The Judicial Panel on Multidistrict Litigation

28   ("JPML") transferred all related actions to this Court on February 15, 2008. (Dkt. No. 122). On

1

1  May 9, 2008, Saveri & Saveri, Inc. was appointed Interim Lead Class Counsel for the nationwide

2  class of direct purchasers. (Dkt. No. 282).

3      4.     On March 16, 2009, Plaintiffs filed the Consolidated Amended Complaint ("CAC")

4  alleging an over-arching horizontal conspiracy among the Defendants and their co-conspirators to

5  fix prices for CRTs and to allocate markets and customers for the sale of CRTs in the United States

6  from March 1, 1995 through November 25, 2007 (the "Class Period").  The CAC alleges that

7  Plaintiffs and members of the Class are direct purchasers of CRTs and/or CRT Finished Products

8  from Defendants and/or their subsidiaries and were injured because they paid more for CRTs

9  and/or CRT Finished Products than they would have absent Defendants' illegal conspiracy.  (CAC

10  ¶¶ 213–221).  Plaintiffs seek, *inter alia*, treble damages pursuant to Section 4 of the Clayton Act,

11  15 U.S.C. §§ 15 and 22.  (CAC at p. 47).

12      5.     Defendants filed several motions to dismiss the CAC on May 18, 2009. (See Dkt.

13  Nos. 463–493).  On March 30, 2010, this Court entered its Order approving and adopting Judge

14  Legge's previous ruling and recommendations granting in part and denying in part Defendants'

15  Motion to Dismiss. (Dkt. No. 665).  On April 29, 2010, Defendants answered the CAC.

16      6.     On March 21, 2011, pursuant to FRCP 11, certain Defendants moved to strike

17  allegations of a finished product conspiracy from the CAC. (Dkt. No. 880).  After a hearing, the

18  Special Master recommended that the motion be granted and that Plaintiffs' allegations of a

19  finished products conspiracy be stricken from the complaint. (Dkt. No. 947).  The Special Master

20  also recommended that "the issue of the possible impact or effect of the alleged fixing of prices of

21  CRTs on the prices of Finished Products shall remain in the case, and is a proper subject of

22  discovery." *Id.* at p. 14.

23      7.     On June 29, 2011, Defendants moved the Court to adopt the Special Master's

24  Report and Recommendation (Dkt. No. 953), and Plaintiffs filed an objection (Dkt. No. 957). The

25  Court set the matter for hearing on September 2, 2011. (Dkt. No. 968). Prior to the hearing, on

26  August 26, 2011, the parties entered into a stipulation providing, among other things: (1) that the

27  Special Master's recommended finding that Plaintiffs violated Rule 11 be vacated; (2) that certain

28  other aspects of the Special Master's recommendations be adopted; and (3) that Plaintiffs'

DECL. OF R. ALEXANDER SAVERI ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH
HITACHI AND SAMSUNG SDI DEFENDANTS—07-CV-5944-SC

"allegations of the Direct CAC purporting to allege a conspiracy encompassing Finished Products are Stricken from the Direct CAC, provided, however, that the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case." Plaintiffs agreed to withdraw discovery requests regarding the CRT Finished Product Conspiracy claims. Defendants agreed that the issue of the impact of the CRT conspiracy on the prices of the Finished Products would remain in the case. (Dkt. No. 996).

8.    On December 12, 2011 Defendants moved for Summary Judgment against Plaintiffs who purchased CRT Finished Products only. (Dkt. No. 1013). Plaintiffs and the Direct Action Plaintiffs ("DAPs") opposed the motion. On March 20, 2012, Judge Legge heard argument from all parties. On May 31, 2012, the Special Master issued his Report and Recommendation that the Court grant Defendants' motion for summary judgment and that judgment be entered against certain plaintiffs that purchased CRT Finished Products from defendants ("R&R"). (Dkt. No. 1221).

9.    The parties filed briefs in support and in opposition to adoption of the R&R. On November 29, 2012, the Court entered the Order Granting in Part and Denying in Part Defendants' Joint Motion for Summary Judgment (Dkt. No. 1470) ("Order"). The Court found that Plaintiffs that purchased a Finished Product, were "in fact indirect purchasers for purposes of antitrust standing." Order at 6. The Court further found that one of the three exceptions that permit indirect purchasers to pursue private treble-damages claims, outlined by the Ninth Circuit Court of Appeals in *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012), could apply to Plaintiffs.  The Court ruled that the "Ownership and Control Exception" created in *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), conferred standing on Plaintiffs to sue "insofar as they purchased [Finished Products] incorporating the allegedly price-fixed CRTs from an entity owned or controlled by any allegedly conspiring defendant." Order at 16. Certain defendants filed a motion under 28 U.S.C. section 1292(b) requesting that the Court certify the Order for interlocutory appeal. (Dkt. No. 1499). The Court denied defendants' request. (Dkt. No. 1569).

10.    On May 14, 2013, Plaintiffs moved for class certification. Defendants filed their opposition on September 11, 2013. On November 11, 2013, Plaintiffs filed their reply. The matter

3

1    was fully briefed.  Prior to the hearing on Plaintiffs' Motion for Class Certification, Plaintiffs

2    settled with the last remaining defendant—Samsung SDI.

3         11.    In September of 2008, the first of several stays prohibiting Plaintiffs from obtaining

4    merits discovery was entered by this Court. (Dkt. Nos. 379, 425, and 590). On June 4, 2008,

5    Plaintiffs' propounded their First Set of Limited Document Requests.

6         12.    On March 12, 2010, after the partial stay of discovery was lifted, Plaintiffs

7    propounded their Second Set of Document Requests and First Set of Interrogatories. On October

8    27, 2011, after extensive meet and confers and several motions to compel, the Court issued its

9    Report Regarding Case Management Conference No. 4 in which it set the middle of December,

10   2011 as the deadline for the completion of substantial discovery by all parties. (Dkt. Nos. 1007,

11   1008). Plaintiffs have now received over 5 million pages of documents produced by Defendants.

12        13.    On April 3, 2013, the Court entered the Special Master's Scheduling Order and

13   Order Re Discovery and Case Management Protocol. (Dkt. Nos. 1127, 1128). The Scheduling

14   Order set August 30, 2013 as the date for completion of all fact and expert discovery. Beginning in

15   June of 2012, after meeting and conferring with defendants regarding the scope and topics of

16   30(b)(6) witnesses, Plaintiffs began taking 30(b)(6) depositions of the various defendants. To date,

17   in coordination with the indirect purchasers, the Attorneys General, and the opt-out plaintiffs,

18   Plaintiffs have deposed over 25 corporate representatives. Beginning in December of 2012,

19   Plaintiffs began taking merits depositions. Over 40 merits depositions have been completed to date.

20        14.    On October 19, 2012, the Court granted final approval of the first two settlements

21   reached in this case with: (1) Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes

22   (Malaysia) Sdn. Bhd. ("CPT") ($10 million), and (2) Koninklijke Philips Electronics N.V., Philips

23   Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips

24   Da Amazonia Industria Electronica Ltda. ("Philips") ($15 million).

25        15.    On December 27, 2012, the Court granted final approval of the third settlement

26   reached in this case with Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.),

27   Panasonic Corporation of North America, and MT Picture Display Co., Ltd., ("Panasonic") for

28   $17.5 million.

DECL. OF R. ALEXANDER SAVERI ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH
HITACHI AND SAMSUNG SDI DEFENDANTS—07-CV-5944-SC

16.     On April 1, 2013, the Court granted final approval of the fourth settlement reached in this case with defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd. ("LG") for $25 million.

17.     On July 23, 2013, the Court granted final approval of the fifth settlement reached in this case with defendants Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. ("Toshiba") for $13.5 million.

18.     On January 8, 2014, the Court granted preliminary approval of the sixth settlement reached in this case with Hitachi for $13.45 million. (Dkt. No. 2311).  On that date, the Court certified a Settlement Class, appointed Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, approved the manner and form of providing notice of the Settlement to class members, established a timetable for publishing class notice and set a hearing for final approval.

19.     On April 14, 2014, the Court granted preliminary approval of the seventh settlement reached in this case with Samsung SDI for $33 million. (Dkt. No. 2534).  On that date, the Court certified a Settlement Class, appointed Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, approved the manner and form of providing notice of the Settlement to class members, established a timetable for publishing class notice and set a hearing for final approval.  Because the Samsung SDI Settlement was reached before notice of the Hitachi settlement was sent to the class, Plaintiffs and Hitachi stipulated, and the Court ordered, that in the interest of judicial efficiency and to save notice costs, notice and final approval would be delayed so that notice of the Samsung SDI Settlement could be given at the same time.  (Dkt. No. 2341).

20.     In the first five settlements—CPT, Philips, Panasonic, LG, and Toshiba—the Court certified a Settlement Class, appointed Saveri & Saveri, Inc. as Settlement Class Counsel, and found that the manner and form of providing notice of the settlements to class members was the best notice practicable under the circumstances (*See* Dkt. Nos. 1412, 1508, 1621, 1791), and the Court entered final judgments of dismissal with respect to the settling (and released) defendants (*See* Dkt. Nos. 1413, 1414, 1509, 1510, 1622, 1792).

DECL. OF R. ALEXANDER SAVERI ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH HITACHI AND SAMSUNG SDI DEFENDANTS—07-CV-5944-SC

21.     CRTs are defined to mean Cathode Ray Tubes of any type (*e.g.*, color display tubes and color picture tubes). CRT Finished Products are those products that when finished contain Cathode Ray Tubes—such as televisions and computer monitors. CRT Products means CRTs and/or CRT Finished Products.

22.     The Settlement between Plaintiffs and Hitachi resolves all claims related to CRT Products (*i.e.*, CRTs and CRT Finished Products) brought by Plaintiffs against Hitachi and related entities that are defined in the Hitachi Settlement Agreement to be "Hitachi Releasees."

23.     The Settlement between Plaintiffs and Samsung SDI resolves all claims related to CRT Products (*i.e.*, CRTs and CRT Finished Products) brought by Plaintiffs against Samsung SDI and related entities that are defined in the Samsung SDI Settlement Agreement to be "Samsung SDI Releasees."

24.     I participated in settlement negotiations with Hitachi. The settlement was reached as a result of several arduous mediation sessions conducted by Judge Vaughn Walker (Ret.). The parties exchanged extensive mediation briefs and attended a mediation session on March 26, 2013. On May 14, 2013, the parties again exchanged extensive briefs and attended another mediation session. While no settlement was reached at the mediation sessions, the parties continued their discussions with the assistance of Judge Walker and reached an agreement in principle on several material terms on or about September 12, 2013. The negotiations were thorough and hard fought. They were contested and conducted at arms-length in the utmost good faith.

25.     I participated in settlement negotiations with Samsung SDI. The settlement was reached as a result of several arduous mediation sessions conducted by Judge Vaughn Walker (Ret.). The parties exchanged extensive mediation briefs and attended a mediation session on March 19, 2013. On September 24, 2013, the parties again submitted extensive briefs and attended another mediation session. While no settlement was reached at the mediation sessions, the parties continued their discussions with the assistance of Judge Walker and reached an agreement in principle on several material terms in late December 2013. The negotiations were thorough and hard fought. They were contested and conducted at arms-length in the utmost good faith.

DECL. OF R. ALEXANDER SAVERI ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH HITACHI AND SAMSUNG SDI DEFENDANTS—07-CV-5944-SC

26.     In exchange for dismissal with prejudice and a release of all claims asserted in the CAC, Hitachi has agreed to pay $13,450,000 in cash to settle all direct purchaser claims against it. The funds have been deposited into a guaranteed escrow account pursuant to the Settlement Agreement.

27.     In exchange for dismissal with prejudice and a release including all claims asserted in the CAC, Samsung SDI has agreed to pay $33,000,000 in cash to settle all direct purchaser claims against it.  The funds have been deposited into a guaranteed escrow account pursuant to the Settlement Agreement.  The settlement with Samsung SDI is the largest settlement to date.

28.     Hitachi's sales remain in the case for the purpose of computing Plaintiffs' claims against the remaining non-settling Defendants.

29.     Samsung SDI's sales remain in the case for the purpose of computing Plaintiffs' claims against any remaining non-settling Defendants.

30.     Hitachi Displays has agreed to cooperate with Plaintiffs in the prosecution of this action by: (1) providing copies of all discovery (including among other things, all documents, interrogatories, requests for admission, etc.) Hitachi produces to any other party in the Action; (2) providing a declaration and/or custodian establishing the authenticity of Hitachi's transactional data, and foundation of any Hitachi document or data needed at summary judgment or trial; (3) allowing Counsel to question percipient witnesses noticed for deposition by any other party in the Action with whom Hitachi has not settled; and 4) using its best efforts to make available three persons for trial testimony, each of whom is, at the time of trial, a director, officer, and/or employee of Hitachi Displays whom Lead Counsel reasonably believes to have knowledge regarding Plaintiffs' claims.

31.     Samsung SDI has agreed to cooperate with Plaintiffs in the prosecution of this action by: (1) providing copies of all discovery (including among other things, all documents, interrogatories, requests for admission, etc.) Samsung SDI produces to any other party in the Action; (2) providing a declaration and/or custodian establishing the authenticity of Samsung SDI's transactional data, and foundation of any Samsung SDI document or data needed at summary judgment or trial; (3) allowing Counsel to question percipient witnesses noticed for deposition by

any other party in the Action with whom Samsung SDI has not settled; and (4) using its best efforts to make available one person for trial testimony, who is, at the time of trial, a director, officer, and/or employee of Samsung SDI whom Lead Counsel reasonably believes to have knowledge regarding Plaintiffs' claims.

32.     It is my opinion that the Settlements are, in every aspect, fair, adequate and reasonable and in the best interest of the class members. My opinion is based, among other things, on my participation in virtually every aspect of this case, my review of all of the important evidence obtained to date and my experience in many other class action antitrust cases.

33.     The transactional data produced so far indicates that the Settlement Class contains thousands of members dispersed across the country who directly purchased CRT Products from the Settling Defendants and their co-conspirators from March 1, 1995 through November 25, 2007.

34.     The notice program is the same as the one approved by the Court on May 3, 2012 (Chunghwa and Philips settlements), on August 27, 2012 (Panasonic settlement), on November 13, 2012 (LG Settlement), and on March 18, 2013 (Toshiba settlement), namely direct notice to class members whose addresses can be reasonably obtained along with publication once in the national edition of the *Wall Street Journal*, together with appropriate listings on the Internet.  This notice program is similar to that employed in the direct purchaser *DRAM*, *SRAM* and *LCD* class actions.

35.     The plan of allocation is the same procedure as approved by the Court on May 3, 2012 in connection with the CPT and Philips settlements, on August 27, 2012 in connection with the Panasonic settlement, on November 13, 2012 in connection with LG Settlement, and on March 18, 2013 in connection with the Toshiba settlement.

36.     Plaintiffs' plan of allocation is as follows: Each Settlement Class member's *pro rata* share of the Settlement Fund will be determined by computing each valid claimant's total CRT purchases divided by the total valid CRT purchases claimed. This percentage is multiplied against the Net Settlement Fund (total settlements minus all costs, attorneys' fees, and expenses) to determine each claimant's *pro rata* share of the Settlement Fund. To determine each class member's CRT purchases, CRT tubes (CPTs/CDTs) are calculated at full value while televisions

DECL. OF R. ALEXANDER SAVERI ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH HITACHI AND SAMSUNG SDI DEFENDANTS—07-CV-5944-SC

are valued at 50% and computer monitors are valued at 75%. This approach is very similar to that approved by Judge Illston in the *LCD* litigation.

37. Including the settlements with Hitachi and Samsung SDI, class plaintiffs have reached total settlements to date of $127,450,000 in cash for the benefit of the class. If final approval is granted for the Hitachi and Samsung SDI settlements, this resolves the litigation for the Direct Purchaser Class pending in Case No. 07-cv-5944 SC. The CRT Direct Purchasers have filed a separate class action (Case No. 14-cv-2058 SC) against Thomson and Mitsubishi entities alleging the same conspiracy for the fixing the prices of CRTs and CRT products. That case was filed in the Northern District of California and has been coordinated with the MDL 1917 as a separate matter.

38. Attached hereto as <u>Exhibit 3</u> is a true and correct copy of Order Approving Claim Form and Claim Period for Direct Purchaser Action, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, Case No. 07-md-1819 CW (Nov. 2, 2011) (Dkt. No. 1416).

39. Attached hereto as <u>Exhibit 4</u> is a true and correct copy of Order Approving Claim Form to Be Provided to Class Members Regarding Distribution of Settlement Fund, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, Case No. 02-md-1486 PJH (Sept. 11, 2007) (Dkt. No. 1712).

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed the 1st day of August, 2014 in San Francisco, California.

<div align="right">

    */s/ R. Alexander Saveri*    
R. Alexander Saveri

</div>

DECL. OF R. ALEXANDER SAVERI ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH HITACHI AND SAMSUNG SDI DEFENDANTS—07-CV-5944-SC

# EXHIBIT 1

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT)   ) | **Master File No. CV-07-5944 SC** |
| ANTITRUST LITIGATION                     ) | |
|                                                              ) | **MDL No. 1917** |
| THIS DOCUMENT RELATES TO:      ) | |
| ALL DIRECT-PURCHASER ACTIONS  ) | |

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 29th day of November, 2013 by and between Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc., and Hitachi Displays, Ltd. (n/k/a Japan Display Inc.)(collectively "Hitachi") and the direct-purchaser plaintiff class representatives ("Plaintiffs"), both individually and on behalf of a settlement class of direct purchasers of Cathode Ray Tube (CRT) Products("the Class") as more particularly defined in Paragraph 1 below.

WHEREAS, Plaintiffs are prosecuting the above *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 (N.D. Cal.) (the "Action") on their own behalf and on behalf of the Class against, among others, Hitachi;

WHEREAS, Plaintiffs allege that Hitachi participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of CRT Products in violation of Section 1 of the Sherman Act;

WHEREAS, Hitachi denies Plaintiffs' allegations and has asserted defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving claims against Hitachi according to the terms set forth below is in the best interest of Plaintiffs and the Class;

WHEREAS, Hitachi, despite its belief that it is not liable for the claims asserted and has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted

1

litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Hitachi, based on the allegations of the Action, as more particularly set out below;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Hitachi Releasees, as defined below, and except as hereinafter provided, without costs as to Plaintiffs, the Class, or Hitachi, subject to the approval of the Court, on the following terms and conditions:

A.   <u>Definitions.</u>

1.   For purposes of this Agreement, "the Class" and "Class Period" are defined in Plaintiffs' Consolidated Amended Complaint or, if that complaint is amended, the operative complaint at the time this Agreement is presented for preliminary approval. The parties to this Agreement hereby stipulate for purposes of this settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied.

2.   For purposes of this Agreement, "CRT Products" shall have the meaning as defined in the Consolidated Amended Complaint or, if that Complaint is amended, the operative complaint at the time this Agreement is presented for preliminary approval.

3.   "Hitachi Releasees" shall refer to Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc., and Hitachi Displays, Ltd. (n/k/a Japan Display Inc.), and to all of their respective past and present, direct and indirect, parents, subsidiaries, and affiliates, and all of their respective past and present, direct and indirect, parents, subsidiaries, affiliates, unincorporated entities, divisions, and groups; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing. "Hitachi Releasees" does not include any defendant in the Action other than those entities defined in the Consolidated Amended Complaint as "Hitachi."

2

4. "Class Member" means each member of the Class who has not timely elected to be excluded from the Class.

5. "Releasors" shall refer to the direct-purchaser plaintiff Class representatives that are referred to in paragraphs 11 through 23 of the Plaintiffs' Consolidated Amended Complaint and the direct-purchaser plaintiff Class Members, and to all of their respective past and present, direct and indirect, parents, subsidiaries, and affiliates, and all of their respective past and present, direct and indirect, parents, subsidiaries, affiliates, unincorporated entities, divisions, and groups; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing., as well as to anyone claiming by, for, or through the Releasors.

6. "The Settlement Fund" shall be $13,450,000 specified in Paragraph 16 plus accrued interest on said deposits set forth in Paragraph 17.

7. "Lead Counsel" shall refer to the law firm of:

Guido Saveri
R. Alexander Saveri
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111

B. Approval of this Agreement and Dismissal of Claims Against Hitachi.

8. Plaintiffs and Hitachi shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the prompt, complete, and final dismissal with prejudice of the Action as to the Hitachi Releasees only.

9. Plaintiffs shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Class members identified by the parties (the "Motion"). If notice to the Class is given jointly with any other settling defendant, for purposes of Paragraph 19 below, the costs of notice and claims administration shall be prorated with any other such defendant based on their respective settlement amounts. The Motion shall include (i) a proposed

form of, method for, and date of dissemination of notice; and (ii) a proposed form of order. The text of the foregoing items (i) and (ii) shall be agreed upon by Plaintiffs and Hitachi before submission of the Motion, with the understanding that, among other things, individual notice of the settlement shall be mailed by regular mail or email, with appropriate notice by publication, with all costs and expenses paid from the Settlement Fund subject to Paragraph 19(a). The Motion shall recite and ask the Court to find that the mailing of the notice of settlement to all members of the Class who can be identified upon reasonable effort constitutes valid, due and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23.

      10.    Plaintiffs shall seek, and Hitachi will not object unreasonably to the entry of, an order and final judgment, the text of which Plaintiffs and Hitachi shall agree upon. The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

    a.    certifying the Class described in Paragraph 1, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

    b.    as to the Action, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

    c.    as to the Hitachi Releasees, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs and expenses;

    d.    reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement, to the United States District Court for the Northern District of California; and

    e.    determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to the Hitachi Releasees shall be final.

11.     This Agreement shall become final when (i) the Court has entered a final order certifying the Class described in Paragraph 1 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to Hitachi Releasees against all Class Members and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to Hitachi Releasees described in (i) hereof has expired or, if appealed, approval of this Agreement and the final judgment as to Hitachi Releasees have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.  On the date that Plaintiffs and Hitachi have executed this Agreement, Plaintiffs and Hitachi shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 17(h), 18(a), 28, or 29 of this Agreement.

12.     Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by Hitachi (or the Hitachi Releasees) or evidence of any violation of any statute or law or of any liability or wrong doing whatsoever by Hitachi (or the Hitachi Releasees), or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any of the settling parties shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

C.     Release, Discharge, and Covenant Not to Sue.

13.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in

5

Paragraph 11 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 16 of this Agreement, into the Settlement Fund, and for other valuable consideration, the Hitachi Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, judgments, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any act or omission of the Hitachi Releasees (or any of them) concerning the CRT Products that are the subject of the Plaintiffs' Consolidated Amended Complaint up to the date of execution of this Agreement, including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in any class action complaints filed in the Action, other than claims for product defect or personal injury or breach of contract arising in the ordinary course of business or indirect purchaser claims for CRT Products that were not purchased directly from Defendants or their alleged co-conspirators(the "Released Claims"). However, the Released Claims shall not preclude Plaintiffs from pursuing any and all claims against other defendants for the sale of CRT Products by those defendants, or their co-conspirators, which contain Hitachi's CRT Products.  Releasors shall not, after the date of this Agreement, seek to establish liability against any Hitachi Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims.  For purposes of clarity, the Released Claims shall include any claims under foreign antitrust or competition laws or state antitrust or competition laws (including indirect purchaser claims) that relate to or arise out of the sale of any of the CRT Products that are the subject of the Plaintiffs' Consolidated Amended Complaint, but do not include any foreign antitrust or competition law claims or any state law indirect purchaser claims that relate to or arise out of the sale of CRT Products that: (a) were not purchased from a Defendant or alleged co-conspirator in the Action; or (b) were not sold

in the United States as either a CRT Product or as a component included within a CRT Product.

14.     In addition to the provisions of Paragraph 13 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by §1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDIT OR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIMEOF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of Paragraph 13 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of Paragraph 13 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

15.     The release, discharge, and covenant not to sue set forth in Paragraph 13 of this Agreement does not include claims by any of the Class Members other than the Released Claims and does not preclude Class Members from pursuing claims based on indirect sales or foreign sales of CRT Products so long as such claims are not based on the purchase of the same CRT Products included as part of the Released Claims defined in Paragraph 13.  The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Hitachi Releasees based, in whole or in part, upon any of the Released Claims.

D.      Settlement Amount.

16.      Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, Hitachi Displays shall pay the Settlement Amount of $13,450,000 in United States Dollars (the "Settlement Amount"). The Settlement Amount shall be paid into an escrow account in United States Dollars to be administered in accordance with the provisions of Paragraph 17 of this Agreement (the "Escrow Account") within thirty (30) days after execution of this Agreement.

17.      Escrow Account.

(a)      The Escrow Account will be established at Citibank, N.A. – Citi Private Bank, San Francisco, California, with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Plaintiffs' Lead Counsel and Hitachi, such escrow to be administered under the Court's continuing supervision and control.

(b)      The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or an interest-bearing bank deposit insured by the Federal Deposit Insurance Corporation ("FDIC") to applicable limits, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

(c)      All funds held in the Escrow Account shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

(d)      Plaintiffs and Hitachi agree to treat the Settlement Fund as being at all times a qualified settlement fund within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent and/or claims administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 17, including the relation-back election (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made incompliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent and/or

8

claims administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(e)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated there under, the administrator shall be the Escrow Agent and/or claims administrator.  The Escrow Agent and/or claims administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(l)). Such returns(as well as the election described in Paragraph 17(d)) shall be consistent with Paragraph17(d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 17(f) hereof.

(f)     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Hitachi or any other Hitachi Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 17(d) through 17(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 17(f)("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)     Neither Hitachi nor any other Hitachi Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent and/or the claims administrator out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (not withstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld

9

under Treas. Reg. § 1.468B-2(1)(2)).  Neither Hitachi nor any other Hitachi Releasee is responsible nor shall they have any liability therefor.  Plaintiffs and Hitachi agree to cooperate with the Escrow Agent, the claims administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 17(d) through17(f).

(h)     If this Agreement does not receive final Court approval, including final approval of "the Class" as defined in Plaintiffs' Consolidated Amended Complaint or, if that complaint is amended, the operative complaint at the time this Agreement is presented for preliminary approval, or if the Action is not certified as a class action for settlement purposes, then all amounts paid by Hitachi into the Settlement Fund (other than costs expended in accordance with Paragraph19(a)) shall be returned to Hitachi from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days.

18.     Exclusions.

(a)     Within ten (10) business days after the end of the period to request exclusion from the Class, Lead Counsel will cause copies of timely requests for exclusion from the Class to be provided to counsel for Hitachi. To the extent that Hitachi determines in good faith that its sales of CRT Products during the Class Period to the potential members of the Class (or any of them) who have requested exclusion from the Class represent an amount of sales equal to or greater than 80% of Hitachi's sales of CRT Products in the United States during the Class Period, Hitachi may terminate the Agreement within thirty (30) days of receipt of the list of exclusions.

(b)     If Hitachi terminates this Agreement pursuant to Paragraph 18(a), then all amounts paid by Hitachi into the Settlement Fund (other than notice costs expended in accordance with Paragraph 19(a)) shall be returned to Hitachi from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days.

(c)     With respect to any potential Class member who requests exclusion from the Class, Hitachi reserves all of its legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Class member is a direct purchaser of any allegedly price-fixed product and/or has standing to bring any claim.

10

19.     Payment of Expenses.

(a)     Hitachi agrees to permit use of a maximum of $300,000 of the Settlement Fund towards notice to the class and the costs of administration of the Settlement Fund set forth in Paragraph 17.  The $300,000 in notice and administration expenses are not recoverable if this settlement does not become final to the extent such funds are expended for notice and administration costs. Other than as set forth in this Paragraph 19(a), neither Hitachi nor any of the other Hitachi Releasees under this Agreement shall be liable for any of the costs or expenses of the litigation of the Action, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for Class administration and costs.

(b)     If Lead Counsel enters into any other settlements on behalf of the Class before notice of this Agreement is given to the Class, Lead Counsel shall use its reasonable best efforts to provide a single notice to prospective Class members of all of the settlements.

E.      The Settlement Fund.

20.     Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the Hitachi Releasees of all Released Claims, and shall have no other recovery against Hitachi or any other Hitachi Releasee.

21.     After this Agreement becomes final within the meaning of Paragraph 11, the Settlement Fund shall be distributed in accordance with a plan to be submitted at the appropriate time by Plaintiffs, subject to approval by the Court. In no event shall any Hitachi Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration, with the sole exception of the provisions set forth in Paragraph 19(a) of this Agreement.

22.     Plaintiffs and Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs. The Hitachi Releasees shall not be liable for any costs, fees, or expenses of any of Plaintiffs' or the Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

11

23.    Class Counsel's Attorneys' Fees and Reimbursement of Expenses.

(a)    Class Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distribution to them from the Settlement Fund and Hitachi shall not oppose such application for: (i) an award of attorneys' fees not in excess of one-third of the settlement fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Class Counsel reserve the right to make additional applications for fees and expenses incurred, but in no event shall Hitachi Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)    The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund. After this Agreement becomes final within the meaning of Paragraph 11, the Fee and Expense Award shall be paid to Lead Counsel within ten (10) business days.  Lead Counsel shall allocate the attorneys' fees among Class Counsel in a manner which it in good faith believes reflects the contributions of such counsel to the prosecution and settlement of the Action.

(c)    The procedure for and the allowance or disallowance by the Court of the application by Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(d)    Neither Hitachi nor any other Hitachi Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Class Counsel of any Fee and Expense Award in the Action.

(e)    Neither Hitachi nor any other Hitachi Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

F.      Cooperation.

24.      Hitachi Displays shall reasonably cooperate with Lead Counsel as set forth specifically below:

(a)      Hitachi Displays shall provide Lead Counsel with copies of all discovery (including among other things, all documents, interrogatories, requests for admission, etc.) Hitachi produces to any other party in the Action;

(b)      Hitachi Displays agrees to provide a declaration and, if necessary, a document custodian to establish, to the best of its ability, the foundation and authenticity of Hitachi's transactional data.  In addition, Hitachi Displays agrees to provide a declaration and, if necessary, a document custodian to establish, to the best of their ability, the foundation of any Hitachi document or data Lead Counsel identify as necessary for summary judgment and/or trial.

(c)      Hitachi agrees to allow Lead Counsel to ask questions of any percipient witness from Hitachi noticed for deposition by any other party in *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 (N.D. Cal.) (the " MDL Action") with whom Hitachi has not settled, pursuant to the deposition procedures described in the Order Re Discovery and Case Management Protocol (ECF. No. 1128).

(d)      If the Plaintiffs proceed to trial against any of the remaining, non-settling defendants in the MDL Action, Hitachi Displays agrees to use its reasonable efforts to make available for live testimony at trial at the United States Courthouse of the United States District Court for the Northern District of California, at Plaintiffs' expense, three (3) persons, each of whom is, at the time of trial, a director, officer, and/or employee of Hitachi Displays whom Lead Counsel, in consultation with Hitachi, reasonably and in good faith believes to have knowledge regarding Plaintiffs' claims as alleged in the Plaintiffs' Consolidated Amended Complaint.  At a reasonable time prior to his/her scheduled trial appearance, Plaintiffs may also meet with each of the three proposed trial

witnesses to discuss his/her testimony.  Hitachi's counsel may be present during any such meeting.

(e)     Not withstanding any other provision in this Agreement, Plaintiffs agree that they and Class Counsel shall maintain all statements made by Hitachi's counsel as strictly confidential; and that they shall not use directly or indirectly the information so received for any purpose other than the prosecution of the Action.  The parties and their counsel further agree that any statements made by Hitachi's counsel in connection with and/or as part of this settlement shall be protected by Federal Rule of Evidence 408, and shall in no event be discoverable by any person or treated as evidence of any kind, unless otherwise ordered by a Court.

(f)     If any document protected by the attorney-client privilege, attorney work-product protection, joint defense or any other protection, privilege, or immunity is accidentally or inadvertently produced under this Paragraph, the document shall promptly be returned to Hitachi, and its production shall in no way be construed to have waived any privilege or protection attached to such document.

(g)     Releasors and Lead Counsel agree they will not use the information provided by Hitachi or the Hitachi Releasees or their representatives under this Paragraph for any purpose other than the pursuit of the Action and, will not publicize the information beyond what is reasonably necessary for the prosecution of the action or as otherwise required by law.  Any documents and other information provided will be deemed "Highly Confidential" and subject to the protective order entered in the Action as if they had been produced in response to discovery requests and so designated.

25.     In the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraphs 8-11 hereof, including final approval of "the Class" as defined in Plaintiffs' Consolidated Amended Complaint or, if that complaint is amended, the operative complaint at the time this Agreement isgranted preliminary approval, or in the event that it is terminated by either party under any provision herein, the parties agree that neither Plaintiffs nor Plaintiffs' counsel shall be permitted to

introduce into evidence, at any hearing, or in support of any motion, opposition or other pleading in the Action or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of this Action, any deposition testimony or any documents provided by the Hitachi Releasees, their counsel, or any individual made available by the Hitachi Releasees pursuant to the cooperation provisions of Paragraph 24.

26.     Except as provided in Paragraph 24 of this Agreement, Hitachi and their officers, directors, and employees need not respond to discovery requests or demands from Plaintiffs or otherwise participate in the Action during the pendency of the Agreement. Neither Hitachi nor Plaintiffs shall file motions against the other during the pendency of the Agreement.

27.     Hitachi and Plaintiffs agree not to disclose publicly or to any other defendant the terms of this Agreement until this Agreement is submitted to the Court for approval.

G.     <u>Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.</u>

28.     If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify a settlement class in accordance with the specific class definition set forth in Plaintiffs' Consolidated Amended Complaint, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 10 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Hitachi and the Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 39.  A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

29.     In the event that this Agreement does not become final, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forth with to Hitachi less only disbursements made in accordance with

Paragraph 19 of this Agreement. Hitachi expressly reserves all of its rights and defenses if this Agreement does not become final.

30.    Further, and in any event, Releasors and Hitachi agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrong doing whatsoever by Hitachi (or the Hitachi Releasees), or of the truth of any of the claims or allegations contained in the complaint or any other pleading filed in the Action, or by any person or entity in any other action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding.

31.    This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Hitachi Releasee as provided in this Agreement.

32.    The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in Paragraphs 8-11 hereof, appropriate notice 1) of the settlement; and 2) of a hearing at which the Court will consider the approval of this Settlement Agreement will be given to Class members.

H.    Miscellaneous.

33.    This Agreement does not settle or compromise any claim by Plaintiffs or any Class Member asserted in the Consolidated Amended Complaint or, if amended, any subsequent Complaint, against any defendant or alleged co-conspirator other than the Hitachi Releasees. All rights against such other defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Class. Hitachi's sales to the Class shall not be removed from the Action.

34.    The United States District Court for the Northern District of California shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Hitachi. This Agreement shall be governed by and interpreted according to

the substantive laws of the state of California without regard to its choice of law or conflict of laws principles.

35.     This Agreement constitutes the entire, complete and integrated agreement among Plaintiffs and Hitachi pertaining to the settlement of the Action against Hitachi, and supersedes all prior and contemporaneous undertakings of Plaintiffs and Hitachi in connection herewith.  This Agreement may not be modified or amended except in writing executed by Plaintiffs and Hitachi, and approved by the Court.

36.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Hitachi. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Plaintiffs, Lead Counsel or Class Counsel shall be binding upon all Class Members and Releasors. The Hitachi Releasees (other than Hitachi which is a party hereto) are third party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

37.     This Agreement may be executed in counterparts by Plaintiffs and Hitachi, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

38.     Neither Plaintiffs nor Hitachi shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

39.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

40.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: November 12, 2013

*R. Alexander Saveri*

Guido Saveri
R. Alexander Saveri
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel and Attorneys for the Class*

_____

James H. Mutchnik, P.C.
Kate Wheaton
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: jmutchnik@kirkland.com
Email: kate.wheaton@kirkland.com

Eliot A. Adelson
James Maxwell Cooper
**KIRKLAND & ELLIS LLP**
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: eadelson@kirkland.com
Email: max.cooper@kirkland.com

*Attorneys for Hitachi, Ltd., Hitachi Asia,
Ltd., Hitachi America, Ltd., Hitachi
Electronic Devices (USA), Inc., and
Hitachi Displays, Ltd. (n/k/a Japan Display
Inc.)*

18

40.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: November 29, 2013

_____

Guido Saveri
R. Alexander Saveri
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

***Lead Counsel and Attorneys for the Class***

_____

James H. Mutchnik, P.C.
Kate Wheaton
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: jmutchnik@kirkland.com
Email: kate.wheaton@kirkland.com

Eliot A. Adelson
James Maxwell Cooper
**KIRKLAND & ELLIS LLP**
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: eadelson@kirkland.com
Email: max.cooper@kirkland.com

***Attorneys for Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc., and Hitachi Displays, Ltd. (n/k/a Japan Display Inc.)***

18

# EXHIBIT 2

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ) <br> ANTITRUST LITIGATION ) <br> ) <br> THIS DOCUMENT RELATES TO: ) <br> ALL DIRECT-PURCHASER ACTIONS ) | Master File No. CV-07-5944 SC <br><br> MDL No. 1917 |

### SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this __11__ day of February, 2014 by and between Samsung SDI Co. Ltd.; Samsung SDI America, Inc.; Samsung SDI Brasil, Ltd.; Tianjin Samsung SDI Co., Ltd.; Samsung Shenzhen SDI Co., Ltd.; SDI Malaysia Sdn. Bhd.; and SDI Mexico S.A. de C.V. (collectively "Samsung SDI") and the direct-purchaser plaintiff class representatives ("Plaintiffs"), both individually and on behalf of a settlement class of direct purchasers of Cathode Ray Tube (CRT) Products("the Class") as more particularly defined in Paragraph 1 below.

WHEREAS, Plaintiffs are prosecuting the above *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 (N.D. Cal.) (the "Action") on their own behalf and on behalf of the Class against, among others, Samsung SDI;

WHEREAS, Plaintiffs allege that Samsung SDI participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of CRT Products in violation of Section 1 of the Sherman Act;

WHEREAS, Samsung SDI denies Plaintiffs' allegations and has asserted defenses to Plaintiffs' claims, and disclaims any wrongdoing or liability whatsoever on behalf of itself and the Samsung Releasees;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving claims against Samsung SDI according to the terms set forth below is in the best interest of Plaintiffs and the Class;

WHEREAS, Samsung SDI, despite its belief that it is not liable for the claims asserted and has good defenses thereto, has nevertheless agreed to enter into this

1

Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Samsung SDI, based on the allegations of the Action, as more particularly set out below;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Samsung SDI Releasees, as defined below, and except as hereinafter provided, without costs as to Plaintiffs, the Class, or Samsung SDI, subject to the approval of the Court, on the following terms and conditions:

A.     Definitions.

1.     For purposes of this Agreement, "the Class" and "Class Period" are defined in Plaintiffs' Consolidated Amended Complaint or, if that complaint is amended, the operative complaint at the time this Agreement is signed.  The parties to this Agreement hereby stipulate for purposes of this settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied.

2.     For purposes of this Agreement, "CRT Products" shall have the meaning as defined in the Consolidated Amended Complaint or, if that Complaint is amended, the operative complaint at the time this Agreement is signed.

3.     "Samsung SDI Releasees" shall refer to Samsung SDI Co. Ltd. (fka Samsung Display Devices Co., Ltd. or "SDD"); Samsung SDI America, Inc.; Samsung SDI Brasil, Ltd.; Tianjin Samsung SDI Co., Ltd.; Samsung Shenzhen SDI Co., Ltd.; SDI Malaysia Sdn. Bhd.; and SDI Mexico S.A. de C.V., and to all of their respective past and present, direct and indirect, parents, subsidiaries, and affiliates, and all of their respective past and present, direct and indirect, parents, subsidiaries, affiliates, unincorporated entities, divisions, and groups; the predecessors, predecessors in interest, successors, successors in interest and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing.

2

4.     "Class Member" means each member of the Class who has not timely elected to be excluded from the Class.

5.     "Releasors" shall refer to the direct-purchaser plaintiff Class representatives that are referred to in paragraphs 11 through 23 of the Plaintiffs' Consolidated Amended Complaint and the direct-purchaser plaintiff Class Members, and to all of their respective past and present, direct and indirect, parents, subsidiaries, and affiliates, and all of their respective past and present, direct and indirect, parents, subsidiaries, affiliates, unincorporated entities, divisions, and groups; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing., as well as to anyone claiming by, for, or through the Releasors.

6.     "The Settlement Fund" shall be thirty-three million U.S. Dollars ($33,000,000) specified in Paragraph 16 plus accrued interest on said deposits set forth in Paragraph 17.

7.     "Lead Counsel" shall refer to the law firm of:

Guido Saveri
R. Alexander Saveri
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111

B.     Approval of this Agreement and Dismissal of Claims Against Samsung SDI.

8.     Plaintiffs and Samsung SDI shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the prompt, complete, and final dismissal with prejudice of the Action as to the Samsung SDI Releasees only.

9.     Plaintiffs shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Class members identified by the parties (the "Motion"). If notice to the Class is given jointly with any other settling defendant, for purposes of Paragraph 19 below, the costs of notice and claims administration shall be prorated with any other such defendant

3

based on their respective settlement amounts. The Motion shall include (i) a proposed form of, method for, and date of dissemination of notice; and (ii) a proposed form of order. The text of the foregoing items (i) and (ii) shall be agreed upon by Plaintiffs and Samsung SDI before submission of the Motion, with the understanding that, among other things, individual notice of the settlement shall be mailed by regular mail or email, with appropriate notice by publication, with all costs and expenses paid from the Settlement Fund subject to Paragraph 19(a). The Motion shall recite and ask the Court to find that the mailing of the notice of settlement to all members of the Class who can be identified upon reasonable effort constitutes valid, due and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23.

10.    Plaintiffs shall seek, and Samsung SDI will not object unreasonably to the entry of, an order and final judgment, the text of which Plaintiffs and Samsung SDI shall agree upon. The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

a.    certifying the Class described in Paragraph 1, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

b.    as to the Action, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

c.    as to the Samsung SDI Releasees, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs and expenses;

d.    reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement, to the United States District Court for the Northern District of California; and

e.     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to the Samsung SDI Releasees shall be final.

11.     This Agreement shall become final when (i) the Court has entered a final order certifying the Class described in Paragraph 1 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to Samsung SDI Releasees against all Class Members and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to Samsung SDI Releasees described in (i) hereof has expired or, if appealed, approval of this Agreement and the final judgment as to Samsung SDI Releasees have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the date that Plaintiffs and Samsung SDI have executed this Agreement, Plaintiffs and Samsung SDI shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 17(h), 18(a), 28, or 29 of this Agreement.

12.     Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by Samsung SDI (or the Samsung SDI Releasees) or evidence of any violation of any statute or law or of any liability or wrong doing whatsoever by Samsung SDI (or the Samsung SDI Releasees), or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any of the settling parties shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or

proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

      C.      Release, Discharge, and Covenant Not to Sue.

          13.    In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 11 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 16 of this Agreement, into the Settlement Fund, and for other valuable consideration, the Samsung SDI Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, judgments, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any act or omission of the Samsung SDI Releasees (or any of them) concerning the CRT Products that are the subject of the Plaintiffs' Consolidated Amended Complaint up to the date of execution of this Agreement, including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in any class action complaints filed in the Action, or arising out of any facts alleged or asserted in the Action, other than claims for product defect or personal injury or breach of contract arising in the ordinary course of business or indirect purchaser claims for CRT Products that were not purchased directly from Defendants or their alleged co-conspirators(the "Released Claims"). However, the Released Claims shall not preclude Plaintiffs from pursuing any and all claims against other defendants (including but not limited to Thomson or Mitsubishi entities or affiliates) for the sale of CRT Products by those persons, or their co-conspirators, which contain Samsung SDI's CRT Products. Releasors shall not, after the date of this Agreement, seek to establish liability against any Samsung SDI Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims. For purposes of clarity, the Released Claims shall include any claims

under foreign antitrust or competition laws or state antitrust or competition laws
(including indirect purchaser claims) that relate to or arise out of the sale of any of the
CRT Products that are the subject of the Plaintiffs' Consolidated Amended Complaint,
but do not include any foreign antitrust or competition law claims or any state law
indirect purchaser claims that relate to or arise out of the sale of CRT Products that: (a)
were not purchased from a Defendant or alleged co-conspirator in the Action; or (b) were
not sold in the United States as either a CRT Product or as a component included within a
CRT Product.  The types of claims released in this Paragraph 13 are released regardless
of the type of cause of action, common law principle, or statute under which they are
asserted.  For example, such claims are released whether asserted under any federal, state,
international, foreign, or local antitrust, unfair competition, unfair practices, deceptive
trade practices, price discrimination, unitary pricing, common law unjust enrichment,
trade practice, racketeering, or civil conspiracy law, or similar law or regulation of any
jurisdiction within the United States or elsewhere.

       14.    In addition to the provisions of Paragraph 13 of this Agreement,
Releasors hereby expressly waive and release, upon this Agreement becoming final, any
and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code,
which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL
> RELEASE. A GENERAL RELEASE DOES NOT EXTEND
> TO CLAIMS WHICH THE CREDIT OR DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR
> AT THE TIME OF EXECUTING THE RELEASE, WHICH
> IF KNOWN BY HIM OR HER MUST HAVE
> MATERIALLY AFFECTED HIS OR HER SETTLEMENT
> WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law,
which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each
Releasor may hereafter discover facts other than or different from those which he, she, or
it knows or believes to be true with respect to the claims which are the subject matter of
the provisions of Paragraph 13 of this Agreement, but each Releasor hereby expressly
waives and fully, finally, and forever settles and releases, upon this Agreement becoming
final, any known or unknown, suspected or unsuspected, contingent or non-contingent
claim with respect to the subject matter of the provisions of Paragraph 13 of this

Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

15.   The release, discharge, and covenant not to sue set forth in Paragraph 13 of this Agreement does not include claims by any of the Class Members other than the Released Claims and does not preclude Class Members from pursuing claims based on indirect sales or foreign sales of CRT Products so long as such claims are not based on the purchase of the same CRT Products included as part of the Released Claims defined in Paragraph 13.  The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Samsung SDI Releasees based, in whole or in part, upon any of the Released Claims.

D.   Settlement Amount.

16.   Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, Samsung SDI shall pay the Settlement Amount of thirty-three million U.S. Dollars ($33,000,000) in United States Dollars (the "Settlement Amount"). The Settlement Amount shall be paid into an escrow account in United States Dollars to be administered in accordance with the provisions of Paragraph 17 of this Agreement (the "Escrow Account") within thirty (30) days after execution of this Agreement.

17.   Escrow Account.

(a)   The Escrow Account will be established at Citibank, N.A. – Citi Private Bank, San Francisco, California, with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Plaintiffs' Lead Counsel and Samsung SDI, such escrow to be administered under the Court's continuing supervision and control.

(b)   The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or an interest-bearing bank deposit insured by the Federal Deposit Insurance Corporation ("FDIC") to applicable limits, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

8

(c)    All funds held in the Escrow Account shall be deemed and considered to be in custodia legis of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

(d)    Plaintiffs and Samsung SDI agree to treat the Settlement Fund as being at all times a qualified settlement fund within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent and/or claims administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 17, including the relation-back election (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent and/or claims administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(e)    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated there under, the administrator shall be the Escrow Agent and/or claims administrator.  The Escrow Agent and/or claims administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(l)). Such returns(as well as the election described in Paragraph 17(d)) shall be consistent with Paragraph 17(d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 17(f) hereof.

(f)    All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Samsung SDI or any other Samsung SDI Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 17(d) through 17(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution

costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 17(f)("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)     Neither Samsung SDI nor any other Samsung SDI Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent and/or the claims administrator out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (not withstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)).  Neither Samsung SDI nor any other Samsung SDI Releasee is responsible nor shall they have any liability therefor.  Plaintiffs and Samsung SDI agree to cooperate with the Escrow Agent, the claims administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 17(d) through 17(f).

(h)     If this Agreement does not receive final Court approval, including final approval of "the Class" as defined in Plaintiffs' Consolidated Amended Complaint or, if that complaint is amended, the operative complaint at the time this Agreement is signed, or if the Action is not certified as a class action for settlement purposes, then all amounts paid by Samsung SDI into the Settlement Fund (other than costs expended in accordance with Paragraph 19(a)) shall be returned to Samsung SDI from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days.

18.     Exclusions.

(a)     Within ten (10) business days after the end of the period to request exclusion from the Class, Lead Counsel will cause copies of timely requests for exclusion from the Class to be provided to counsel for Samsung SDI. To the extent that Samsung SDI determines in good faith that its sales of CRT Products during the Class Period to the potential members of the Class (or any of them) who have requested exclusion from the Class represent an amount equal to or greater than 70% of Samsung SDI's sales of CRT Products in the United States during the Class Period, Samsung SDI may terminate the Agreement within thirty (30) days of receipt of the

list of exclusions.

    (b)    If Samsung SDI terminates this Agreement pursuant to Paragraph 18(a), then all amounts paid by Samsung SDI into the Settlement Fund (other than notice costs expended in accordance with Paragraph 19(a)) shall be returned to Samsung SDI from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days.

    (c)    With respect to any potential Class member who requests exclusion from the Class, Samsung SDI reserves all of its legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Class member is a direct purchaser of any allegedly price-fixed product and/or has standing to bring any claim.

    19.    Payment of Expenses.

    (a)    Samsung SDI agrees to permit use of a maximum of three hundred thousand U.S. Dollars ($300,000) of the Settlement Fund towards notice to the class and the costs of administration of the Settlement Fund set forth in Paragraph 17. The $300,000 in notice and administration expenses are not recoverable if this settlement does not become final to the extent such funds are expended for notice and administration costs. Other than as set forth in this Paragraph 19(a), neither Samsung SDI nor any of the other Samsung SDI Releasees under this Agreement shall be liable for any of the costs or expenses of the litigation of the Action, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for Class administration and costs.

    (b)    If Lead Counsel enters into any other settlements on behalf of the Class before notice of this Agreement is given to the Class, Lead Counsel shall use its reasonable best efforts to provide a single notice to prospective Class members of all of the settlements.

    E.    The Settlement Fund.

    20.    Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the Samsung SDI Releasees of all Released Claims, and shall have no other recovery against Samsung SDI or any other Samsung SDI Releasee.

    21.    After this Agreement becomes final within the meaning of Paragraph 11, the Settlement Fund shall be distributed in accordance with a plan to be

11

submitted at the appropriate time by Plaintiffs, subject to approval by the Court. In no event shall any Samsung SDI Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration, with the sole exception of the provisions set forth in Paragraph 19(a) of this Agreement.

22.    Plaintiffs and Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs. The Samsung SDI Releasees shall not be liable for any costs, fees, or expenses of any of Plaintiffs' or the Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

23.    Class Counsel's Attorneys' Fees and Reimbursement of Expenses.

(a)    Class Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distribution to them from the Settlement Fund and Samsung SDI shall not oppose such application for: (i) an award of attorneys' fees not in excess of one-third of the settlement fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Class Counsel reserve the right to make additional applications for fees and expenses incurred, but in no event shall Samsung SDI Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)    The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund. After this Agreement becomes final within the meaning of Paragraph 11, the Fee and Expense Award shall be paid to Lead Counsel within ten (10) business days.  Lead Counsel shall allocate the attorneys' fees among Class Counsel in a manner which it in good faith believes reflects the contributions of such counsel to the prosecution and settlement of the Action.

(c)    The procedure for and the allowance or disallowance by the Court of the application by Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of

12

the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(d)     Neither Samsung SDI nor any other Samsung SDI Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Class Counsel of any Fee and Expense Award in the Action.

(e)     Neither Samsung SDI nor any other Samsung SDI Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

F.     Cooperation.

24.     Samsung SDI shall reasonably cooperate with Lead Counsel as set forth specifically below:

(a)     Samsung SDI shall provide Lead Counsel with copies of all discovery (including among other things, all documents, interrogatories, requests for admission, etc.) Samsung SDI produces to any other party in the Action;

(b)     Samsung SDI agrees to provide a declaration and, if necessary, a document custodian to establish, to the best of its ability, the foundation and authenticity of Samsung SDI's transactional data. In addition, Samsung SDI agrees to provide a declaration and, if necessary, a document custodian to establish, to the best of their ability, the foundation of any Samsung SDI document or data Lead Counsel identify as necessary for summary judgment and/or trial.

(c)     Samsung SDI agrees to allow Lead Counsel to ask questions of any percipient witness from Samsung SDI noticed for deposition by any other party in *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 (N.D. Cal.) (the " MDL Action") with whom Samsung SDI has not settled, pursuant to the deposition procedures described in the Order Re Discovery and Case Management Protocol (ECF. No. 1128).

(d)     If the Plaintiffs proceed to trial against any of the remaining, non-settling defendants in the MDL Action (including but not limited to Thomson or Mitsubishi entities or affiliates), Samsung agrees to use its reasonable efforts to make available for live testimony at trial at the United States Courthouse of the United States District Court for the Northern District of California, at Plaintiffs' expense, one (1) person, who is, at the time of trial, a director, officer, and/or employee of Samsung whom Lead Counsel, in consultation with Samsung, reasonably and in good faith believes to have knowledge regarding Plaintiffs' claims as alleged in the Plaintiffs' Consolidated Amended Complaint.  At a reasonable time prior to his/her scheduled trial appearance, Plaintiffs may also meet with the proposed trial witness to discuss his/her testimony. Samsung's counsel may be present during any such meeting.

(e)     Notwithstanding any other provision in this Agreement, Plaintiffs agree that they and Class Counsel shall maintain all statements made by Samsung SDI's counsel as strictly confidential; and that they shall not use directly or indirectly the information so received for any purpose other than the prosecution of the Action.  The parties and their counsel further agree that any statements made by Samsung SDI's counsel in connection with and/or as part of this settlement shall be protected by Federal Rule of Evidence 408, and shall in no event be discoverable by any person or treated as evidence of any kind, unless otherwise ordered by a Court.

(e)     If any document protected by the attorney-client privilege, attorney work-product protection, joint defense or any other protection, privilege, or immunity is accidentally or inadvertently produced under this Paragraph, the document shall promptly be returned to Samsung SDI, and its production shall in no way be construed to have waived any privilege or protection attached to such document.

(f)     Releasors and Lead Counsel agree they will not use the information provided by Samsung SDI or the Samsung SDI Releasees or their representatives under this Paragraph for any purpose other than the pursuit of the Action and, will not publicize the information beyond what

14

is reasonably necessary for the prosecution of the action or as otherwise required by law.  Any documents and other information provided will be deemed "Highly Confidential" and subject to the protective order entered in the Action as if they had been produced in response to discovery requests and so designated.

25.     In the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraphs 8-11 hereof, including final approval of "the Class" as defined in Plaintiffs' Consolidated Amended Complaint or, if that complaint is amended, the operative complaint at the time this Agreement is granted preliminary approval, or in the event that it is terminated by either party under any provision herein, the parties agree that neither Plaintiffs nor Plaintiffs' counsel shall be permitted to introduce into evidence, at any hearing, or in support of any motion, opposition or other pleading in the Action or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of this Action, any deposition testimony or any documents provided by the Samsung SDI Releasees, their counsel, or any individual made available by the Samsung SDI Releasees pursuant to the cooperation provisions of Paragraph 24.

26.     Except as provided in Paragraph 24 of this Agreement, Samsung SDI and their officers, directors, and employees need not respond to discovery requests or demands from Plaintiffs or otherwise participate in the Action during the pendency of the Agreement. Neither Samsung SDI nor Plaintiffs shall file motions against the other during the pendency of the Agreement.

27.     Samsung SDI and Plaintiffs agree not to disclose publicly or to any other defendant the terms of this Agreement until this Agreement is submitted to the Court for approval.

G.     Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.

28.     If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify a settlement class in accordance with the specific class definition set forth in Plaintiffs' Consolidated Amended Complaint, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 10 of this Agreement, or if the Court enters the final

judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Samsung SDI and the Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 39. A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

29.   In the event that this Agreement does not become final, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forth with to Samsung SDI less only disbursements made in accordance with Paragraph 19 of this Agreement. Samsung SDI expressly reserves all of its rights and defenses if this Agreement does not become final.

30.   Further, and in any event, Releasors and Samsung SDI agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrong doing whatsoever by Samsung SDI (or the Samsung SDI Releasees), or of the truth of any of the claims or allegations contained in the complaint or any other pleading filed in the Action, or by any person or entity in any other action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding.

31.   This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Samsung SDI Releasee as provided in this Agreement.

32.   The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in Paragraphs 8-11 hereof, appropriate notice 1) of the settlement; and 2) of a hearing at which the Court will consider the approval of this Settlement Agreement will be given to Class members.


H.    Miscellaneous.

33.    This Agreement does not settle or compromise any claim by Plaintiffs or any Class Member asserted in the Consolidated Amended Complaint or, if amended, any subsequent Complaint, against any defendant or alleged co-conspirator other than the Samsung SDI Releasees. All rights against such other defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Class. Samsung SDI's sales to the Class shall not be removed from the Action.

34.    The United States District Court for the Northern District of California shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Samsung SDI. This Agreement shall be governed by and interpreted according to the substantive laws of the state of California without regard to its choice of law or conflict of laws principles.

35.    This Agreement constitutes the entire, complete and integrated agreement among Plaintiffs and Samsung SDI pertaining to the settlement of the Action against Samsung SDI, and supersedes all prior and contemporaneous undertakings of Plaintiffs and Samsung SDI in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and Samsung SDI, and approved by the Court.

36.    This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Samsung SDI. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Plaintiffs, Lead Counsel or Class Counsel shall be binding upon all Class Members and Releasors. The Samsung SDI Releasees (other than Samsung SDI which is a party hereto) are third party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

37.    This Agreement may be executed in counterparts by Plaintiffs and Samsung SDI, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

38.    Neither Plaintiffs nor Samsung SDI shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

39.    Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

40.    Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: February __11__, 2014

Guido Saveri
R. Alexander Saveri
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel and Attorneys for the Class*

2/14/14

Gary Halling
**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 774-3234
Facsimile: (415) 403-6007

*Attorneys for Samsung SDI Co. Ltd.; Samsung SDI America, Inc.; Samsung SDI Brasil, Ltd.; Tianjin Samsung SDI Co., Ltd.; Samsung Shenzhen SDI Co., Ltd.; SDI Malaysia Sdn. Bhd.; and SDI Mexico S.A. de C.V.*

18

# EXHIBIT 3

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | | |
|---|---|---|
| **IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION** | ) ) ) | Master File 4:07-md-01819-CW |
| | ) ) | MDL NO. 1819 |
| **This Document Relates to:** | ) ) ) ) | **[PROPOSED]** ORDER APPROVING CLAIM FORM AND CLAIM PERIOD FOR DIRECT PURCHASER ACTION |
| **All Direct Purchaser Actions** | ) ) ) ) ) ) ) | |

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

**[PROPOSED]** ORDER APPROVING CLAIM FORM AND CLAIM PERIOD FOR
DIRECT PURCHASER ACTION
Case No. 4:07-md-01819-CW

1       Plaintiffs' Motion for Approval of Claim Form and Claim Period for Direct Purchaser

2  Plaintiffs was presented to and considered by the Court.  Notice of Judgment of Dismissal has

3  been entered with respect to all defendants (Dkt. Nos. 1023, 1024, 1025, 1026, 1027, 1028, 1029,

4  1372 and 1373).  This Court retained jurisdiction over this action for matters relating to

5  "implementation of [ ] settlement[s] and any distribution to Class Members pursuant to further

6  orders of this Court [and] disposition of the Settlement Fund." *See, e.g.,* dkt. 1028, Final

7  Judgment of Dismissal with Prejudice as to the Etron Defendants, at p.2:21-23.

8       Having considered the proposed claim form and the proposed time period for submission

9  of claims, the Court grants the motion.  The claims form attached as Exhibit A is appropriate.

10  Within twenty-one (21) days of entry of this Order, Gilardi & Co. ("Gilardi"), as Claims

11  Administrator, will disseminate the claims form to those members of the Class who can

12  reasonably be contacted through electronic or direct mail.   When dissemination of notice is

13  completed, Lead Counsel shall cause a declaration to be filed reflecting that notice has been

14  provided in accordance with this order.  Class members shall have approximately ninety (90)

15  days from the date of completion of distribution of the Claim Form by the Claims Administrator

16  to complete and submit the Claim Form to the Claims Administrator.  In order to provide

17  certainty, the last date for submission of claims forms to the Claims Administrator shall be

18  **March 2, 2012.**

19       Upon completion of submission of all proofs of claim within the period set by the Court,

20  Gilardi will analyze and verify the claims submissions based upon the information provided by

21  Defendants and follow up with claimants to resolve any discrepancies between their submissions

22  and Defendants' data. At that time, final distribution amounts will be determined and Plaintiffs

23  will submit to the Court an order approving distribution of the Settlement Fund to class

24  members.

25       All valid claims will be distributed in accordance with the plan of allocation that this

26  Court has previously approved, *i.e.,* a *pro rata* distribution to Claimants based on direct

27  purchases of SRAM from the named defendants as described in the order certifying a class in this

28

LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

action and the orders approving final approval of the settlements and approving the plan of

distribution..

     The Court retains exclusive jurisdiction over this action to consider all further matters

arising out of or connected with the disbursement of the Settlement Funds.


Dated: _____November 2__, 2011

_____
Honorable Claudia Wilken
United States District Judge

*Submitted By:*

Joseph W. Cotchett
Steven N. Williams
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:     650-697-6000
Fax:                 650-697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com

*Attorneys for the Direct Purchaser Class*

[**PROPOSED**] ORDER APPROVING CLAIM FORM AND CLAIM PERIOD FOR
DIRECT PURCHASER ACTION
Case No. 4:07-md-01819-CW

2

**Must Be Postmarked
No Later Than
March 2, 2012**

## PROOF OF CLAIM

*In re Static Random Access Memory
(SRAM) Antitrust Litigation*
Case No. 4:07-md-01819-CW

### Last date to submit Claim is March 2, 2012.

# SRAMD

ClaimIDBarCode   ClaimIDBarDisplay
FirstName LastName
Addr1 Addr2
City, State Zip-Zip4

☐ Please check the box if the name or address is different from the information above and complete below:

First Name                                                    Last Name

Address 1 (Please do not use RED INK or pencil.)

Address 2

City                                                    State        Zip Code

## PART 1: IMPORTANT INFORMATION

YOU MAY BE A CLASS MEMBER IN THE ABOVE ENTITLED LAWSUIT IF YOU PURCHASED
STATIC RANDOM ACCESS MEMORY (SRAM) IN THE UNITED STATES BETWEEN
**NOVEMBER 1, 1996 AND DECEMBER 31, 2005**
DIRECTLY FROM ANY OF THE FOLLOWING COMPANIES
(OR THEIR SUBSIDIARIES OR AFFILIATES):

- Cypress Semiconductor
- Etron Technology, Inc.
- Etron Technology America, Inc.
- Hitachi, Ltd.
- Hitachi America, Ltd.
- Hynix Semiconductor Inc.
- Hynix Semiconductor America Inc.
- Integrated Silicon Solution, Inc.
- Micron Technology, Inc.
- Micron Semiconductor Products, Inc.

- Mitsubishi Electric Corporation
- Mitsubishi Electric & Electronics USA, Inc.
- NEC Electronics Corporation
- NEC Electronics America, Inc.
- Renesas Technology Corp.
- Renesas Technology America, Inc.
- Samsung Electronics Company, Ltd.
- Samsung Semiconductor, Inc.
- Toshiba Corporation
- Toshiba America Electronic Components, Inc.





FOR CLAIMS
PROCESSING
ONLY

○ LC

○ OZ

**THE CLASS INCLUDES:**

"All persons and entities who, during the period November 1, 1996 through December 31, 2005, purchased non-custom SRAM in the United States directly from Defendants or any subsidiaries or affiliates thereof. Excluded from the class are Defendants, their parent companies, subsidiaries and affiliates, any co conspirators, and all government entities."

You are a Class member if:

(1) you purchased non-custom SRAM in the United States directly from one or more of the Defendants listed above (or their subsidiaries or affiliates) between November 1, 1996 and December 31, 2005; and,

(2) you did not previously request to exclude yourself from the Class.

Purchasing SRAM in the United States means SRAM that was billed to or shipped to the United States.

**TYPES OF SRAM**

For purposes of this lawsuit and the Settlements, SRAM means all types of Static Random Access Memory, including high speed or fast SRAM, low power or slow SRAM, synchronous SRAM, asynchronous SRAM, and pseudoSRAM ("PSRAM"). For purposes of this lawsuit and the Settlements, custom SRAM is: (1) SRAM that was designed and sold by only one manufacturer in order to meet a set of defined performance characteristics established by only one purchaser; and, (2) that set of defined performance characteristics was not met by SRAM designed or sold by any other manufacturer; and (3) the SRAM was designed as a completely new SRAM or required substantial change to an already existing SRAM.

## PART 2: CLAIMANT INFORMATION

Please type or neatly print all information. Report all purchases of non-custom SRAM made directly from any Defendant in the United States during the Class Period. Failure to include all eligible purchases will reduce the amount of your claim. You **DO NOT** need to attach documentation. However, you must keep copies of your purchase orders, invoices, or other documentation of your purchases in case verification of your claim is necessary.

Daytime Telephone Number:                          Evening Telephone Number:

Email Address:

Person to Contact if there are questions regarding this claim:



## PART 3: SCHEDULE OF QUALIFYING PURCHASES IN DOLLARS
## FROM NOVEMBER 1, 1996 THROUGH DECEMBER 31, 2005

In the table below, list the total dollar amount (in U.S. dollars) of your purchases of SRAM made directly in the United States from each defendant during the Class Period. Amounts should be rounded to the nearest dollar. (Example: $5,252.78 should be entered as $5,253). Do not include transportation charges, rebates, refunds, credits, etc. If you did not purchase SRAM from a Defendant, or if you settled with a particular Defendant, assigned or transferred your claim, write "No Purchases" in the corresponding Defendant box below.

Cypress Semiconductor, Inc. . . . . . . . . . . $

Etron[1] . . . . . . . . . . . . . . . . . . . . . . . . . . . $

Hitachi[2] . . . . . . . . . . . . . . . . . . . . . . . . . . $

Hynix[3] . . . . . . . . . . . . . . . . . . . . . . . . . . . $

Integrated Silicon Solutions, Inc. . . . . . . . $

Micron[4] . . . . . . . . . . . . . . . . . . . . . . . . . . $

Mitsubishi[5] . . . . . . . . . . . . . . . . . . . . . . . . $

NEC[6] . . . . . . . . . . . . . . . . . . . . . . . . . . . . $

Renesas[7] . . . . . . . . . . . . . . . . . . . . . . . . . $

Samsung[8] . . . . . . . . . . . . . . . . . . . . . . . . $

Toshiba[9] . . . . . . . . . . . . . . . . . . . . . . . . . $

Pursuant to Court order, the Settlement Fund will be distributed to Class Members based upon the pro rata share of the total amount of eligible SRAM purchases that each Class Member purchased directly from Defendants from November 1, 1996 through December 31, 2005.

### PART 4: SUBMITTING A CLAIM FORM

Mail the completed Claim Form to:

SRAM Antitrust Settlements
c/o Gilardi & Co. LLC
PO Box 8060
San Rafael, CA 94912-8060

— OR —

Submit a completed Claim Form Online:

**CLAIM FORMS MAY BE FILED ON-LINE AT www.sramcase.com**

---

1. "Etron" means Etron Technology, Inc. and Etron Technology America, Inc.
2. "Hitachi" means Hitachi, Ltd. and Hitachi America, Ltd.
3. "Hynix" means Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc.
4. "Micron" means Micron Technology, Inc. and Micron Semiconductor Products, Inc.
5. "Mitsubishi" means Mitsubishi Electric Corporation and Mitsubishi Electric & Electronics USA, Inc.
6. "NEC" means NEC Electronics Corporation and NEC Electronics America, Inc.
7. "Renesas" means Renesas Technology Corp. and Renesas Technology America, Inc.
8. "Samsung" means Samsung Electronics Company, Ltd. and Samsung Semiconductor, Inc.
9. "Toshiba" means Toshiba Corporation and Toshiba America Electronic Components, Inc.



## PART 5: SUBMISSION TO JURISDICTION OF THE DISTRICT COURT

By signing below, you are verifying that:

1.  You have documentation to support your claim and agree to provide additional information to Class Counsel or the Claims Administrator if requested;

2.  You have not assigned or transferred (or purported to assign or transfer) or settled for the same purchases or submitted any other claim for the same purchases of SRAM and have not authorized any other person or entity to do so, and know of no other person or entity having done so on your behalf; and

3.  The information provided in this Claim Form is accurate and complete.

## PART 6: CERTIFICATION

I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(c) of the Internal Revenue Code because: (a) I am (We are) exempt from backup withholding, or (b) I (We) have not been notified by the I.R.S. that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the I.R.S. has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE:  If you have been notified by the I.R.S. that you are subject to backup withholding, please strike out the language that you are not subject to backup withholding in the certification above.

I (WE) DECLARE, UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA, THAT THE INFORMATION PROVIDED IN THIS PROOF OF CLAIM FORM IS TRUE AND CORRECT.

This certification was executed on the _____ of _____ , 2011,
                                  (day)                            (month)

in _____
                            (city, state, country)

SIGNATURE OF CLAIMANT:  (If this claim is being made on behalf of Joint Claimants, then each must sign).

_____    _____
Signature                                       Type/Print Name

_____    _____
Company's Name                             Capacity of person signing, e.g. President



# EXHIBIT 4

1  GUIDO SAVERI (22349)
   R. ALEXANDER SAVERI (173102)
2  GEOFFREY C. RUSHING (126910)
   CADIO ZIRPOLI (179108)
3  SAVERI & SAVERI, INC.
   111 Pine Street, Suite 1700
4  San Francisco, CA 94111-5619
   Telephone: (415) 217-6810
5  Facsimile: (415) 217-6813
   *guido@saveri.com*
6  *rick@saveri.com*

7  STEVE W. BERMAN (*pro hac vice*)
   ANTHONY D. SHAPIRO (*pro hac vice*)
8  GEORGE W. SAMPSON
   CRAIG R. SPIEGEL (122000)
9  HAGENS BERMAN SOBOL SHAPIRO LLP
   1301 Fifth Avenue, Suite 2900
10 Seattle, Washington 98101
   Telephone: (206) 623-7292
11 Facsimile No.: (206) 623-0594

12 FRED TAYLOR ISQUITH (*pro hac vice*)
   MARY JANE FAIT (*pro hac vice*)
13 WOLF, HALDENSTEIN, ADLER,
       FREEMAN & HERZ
14 270 Madison Avenue
   New York, NY 10016
15 Telephone: (212) 545-4600
   Facsimile: (212) 545-4653
16
17 Co-Lead Counsel for Plaintiffs

17                    UNITED STATES DISTRICT COURT

18                   NORTHERN DISTRICT OF CALIFORNIA

19

20 | IN RE DYNAMIC RANDOM ACCESS | Master File No. M-02-1486-PJH
21 | MEMORY (DRAM) ANTITRUST | MDL No. 1486
   | LITIGATION |

22                                    [~~PROPOSED~~] ORDER APPROVING
                                      CLAIM FORM TO BE PROVIDED
23                                    TO CLASS MEMBERS REGARDING
                                      DISTRIBUTION OF SETTLEMENT
24                                    FUND

25 | This Document Relates to: | Date: Submitted Without Oral Argument
                                  Judge: Hon. Phyllis J. Hamilton
26 | ALL DIRECT PURCHASER ACTIONS | Courtroom: 3

27

28

1       Plaintiffs' Motion for Court Approval of Claim Form to be Provided to Class Members

2  Regarding Distribution of Settlement Fund was presented to the Court without oral argument.  The

3  Court has previously approved the plan of allocation, namely, the Settlement Fund will be

4  distributed to Class Members based upon the *pro rata* share of the total amount of DRAM that

5  each Class Member purchased directly from Defendants from April 1, 1999 through June 30, 2002.

6  *See* Order Approving Joint Notice to Class Regarding Class Certification and Preliminary

7  Approval of Class Action Settlements with Samsung, Infineon, and Hynix Defendants, dated July

8  27, 2006; Order Approving Joint Notice to Class Regarding Preliminary Approval of Class Action

9  Settlements with Elpida, NEC, Winbond and Micron Defendants, dated Febraury 14, 2007 and

10  Amended Order Approving Joint Notice to Class Regarding Preliminary Approval of Class Action

11  Settlements with the Mosel and Nanya Defendants and Class Counsels' Request for Attorneys'

12  Fees and Expenses and Incentive Awards, dated May 24, 2007 (collectively, "Orders Approving

13  Joint Notice").  Notice of the Plan of Allocation has been given in accordance with the Court's

14  Orders.

15       The Claim Form attached hereto as Exhibit A is in all repsects fair, adequate and

16  reasonable.

17       Within approximately twenty-one (21) days of entry of this Order the Claims Administrator

18  shall provide the Claim Form to those members of the Class who can reasonably be contacted

19  through electronic or direct mail.

20       Class members shall have ninety (90) days to fill out and submit the Claim Form to the

21  Claims Administrator.

22       At such time as the Claims Administration is completed, Class Counsel shall provide to the

23  Court a proposed order relating to the payment of claims and distribution of the net settlement

24  fund.

25

26

27

28

The Court retains exclusive jurisdiction over this action to consider all further matters arising out of or connected with the disbursement of the Settlement Funds.

**IT IS SO ORDERED.**

Dated: September ___, 2007



Hon. Phyllis J. Hamilton

IT IS SO ORDERED

Judge Phyllis J. Hamilton

ram.838

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Master File No. M-02-1486 PJH MDL No. 1486 |
| This Document Relates To: All Direct Purchaser Actions | |

## PROOF OF CLAIM

**TO: ALL PERSONS OR ENTITIES WHO DIRECTLY PURCHASED DRAM (DYNAMIC RANDOM ACCESS MEMORY) IN THE UNITED STATES DURING THE PERIOD OF APRIL 1, 1999 THROUGH JUNE 30, 2002 FROM THE DEFENDANTS OR THEIR SUBSIDIARIES.** *(Refer to Definitions below.)*

### I. GENERAL INSTRUCTIONS

This Proof of Claim form ("Claim Form") must be completed and returned by Class Members who seek payment from the settlements. It must be postmarked no later than XXXXXXXXX __, 200X. Claim Forms can be completed and filed on-line at www.dramantitrustsettlement.com. If you fail to mail a timely, properly addressed Claim Form or complete and file a timely on-line Claim Form, your claim may be rejected and you may be precluded from any recovery from the settlements. Class Members who choose not to file an on-line Claim Form should mail their completed Claim Form to the Claims Administrator at:

*In re DRAM Antitrust Litigation*
c/o Rust Consulting, Inc.
P.O. Box 24657
West Palm Beach, FL 33416

Members of the Class who did not timely and validly seek exclusion from the Settlement Class will be bound by the judgment entered approving these settlements as to Defendants and the Releasees regardless of whether they submit a Claim Form. If you have submitted a request for exclusion from the Settlement Class in connection with settlements, do not submit this Claim Form. Also, if you entered into a settlement with any defendant for your purchases from that defendant, or assigned or transferred your claim for any purchases, your Claim Form must not include, as part of your claim, any of those purchases. For example, if Class Member A purchased $10,000 from defendant 1 and entered into a settlement with defendant 1 for those purchases, that $10,000 must not be included as part of your claim.

### II. DEFINITIONS

A) "Class Period" means April 1, 1999 through June 30, 2002.

B) "Defendant" or "Defendants" means the following entities which are named as defendants in this action:

| | |
|---|---|
| Elpida Memory, Inc. | Mosel-Vitelic, Inc. |
| Elpida Memory (USA) Inc. | Mosel Vitelic Corp. |
| Hynix Semiconductor, Inc. | NEC Electronics America, Inc. |
| Hynix Semiconductor America, Inc. | Nanya Technology Corporation USA |
| Infineon Technologies AG | Samsung Electronics Company, Ltd. |

**CLAIM FORMS MAY BE FILED ON-LINE AT WWW.DRAMANTITRUSTSETTLEMENT.COM**

Infineon Technologies North America Corp.

Micron Technology, Inc.

Micron Semiconductor Products, Inc.

Samsung Semiconductor, Inc.

Winbond Electronics Corporation

Winbond Electronics Corporation America

C)  "Class" means all individuals and entities who, during the period beginning April 1, 1999 and continuing through June 30, 2002 (the "Class Period"), purchased DRAM in the United States directly from the defendants or their subsidiaries. Excluded from the Class are Defendants and their parents, subsidiaries, affiliates, all governmental entities and co-conspirators.

D)  "Releasees" shall refer jointly and severally, individually and collectively, to all Defendants listed above and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

E)  "DRAM" is defined to mean dynamic random access memory components, including without limitation, synchronous dynamic random access memory ("SDRAM"), Rambus dynamic random access memory ("RDRAM"), asynchronous dynamic random access memory ("ASYNC"), FPM DRAM, EDO DRAM, BEDO DRAM, and double data rate synchronous dynamic random access memory ("DDR") semiconductor devices and modules.

F)  "Class Members" means all members of the Class who did not timely and validly elect to be excluded from the Class certified by the Court.

---

### REMINDER LIST

Please make sure that you:

1.  Sign the Certification on page 5;

2.  Keep a copy of the completed Claim Form for your records;

3.  You must keep originals and/or copies of your purchase orders, invoices, or other documentation of your purchases in case verification of your claim is necessary. *DO NOT* attach documentation to this Claim Form;

4.  Send your Claim Form by Certified Mail (return receipt requested) if you want proof that your claim form was received; and

5.  Submit your claim form **postmarked no later than xxxxxxxxx xx, 200X.**

---

### ADDITIONAL INFORMATION

Contact the Claims Administrator at:
Toll-free 1-866-483-9938
OR
Visit the website:
www.dramantitrustsettlement.com.

If you change your mailing address, please notify the Claims Administrator, in writing, at:
*In re DRAM Antitrust Litigation*
c/o Rust Consulting, Inc.
P.O. Box 24657
West Palm Beach, FL  33416

---

**CLAIM FORMS MAY BE FILED ON-LINE AT WWW.DRAMANTITRUSTSETTLEMENT.COM**

# PROOF OF CLAIM

In Re: DRAM Antitrust Litigation

**Must Be Postmarked
No Later Than
XXXXXXXXXX xx, 200X**

For Official Use Only

«☐☐☐☐☐☐» — «Seq_no»

«name1»«name2»«name3»
«addr1»
«addr2»
«city», «state» «zip5»
«country_name»

☐ Please check the box if the name or address is different from information on left and complete below:

_____

_____

_____

## PART 1: CLAIMANT INFORMATION

Please type or neatly print all information. Report all purchases of DRAM made directly from any Defendant during the Class Period. Failure to include all purchases will reduce the amount of your claim. You **DO NOT** need to attach documentation. However, you must keep copies of your purchase orders, invoices, or other documentation of your purchases in case verification of your claim is necessary.

Telephone Number (Day)

☐☐☐ ☐☐☐ ☐☐☐☐

Telephone Number (Evening)

☐☐☐ ☐☐☐ ☐☐☐☐

Email Address

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐

Person to contact if there are questions regarding this claim

☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐



**CLAIM FORMS MAY BE FILED ON-LINE AT <u>WWW.DRAMANTITRUSTSETTLEMENT.COM</u>**

## PART 2: SCHEDULE OF QUALIFYING PURCHASES

In the table below, list the total dollar amount (in U.S. dollars) of your purchases of DRAM made directly from each Defendant during the Class Period. *Amounts should be rounded to the nearest dollar.* (Example: $12,345.67 should be entered as $12,346.) Do not include transportation charges, rebates, refunds, credits, etc. If you did not purchase DRAM from a Defendant, or if you settled with a particular Defendant, assigned or transferred your claim, write "No Purchases" in the corresponding Defendant box below.

### PURCHASES IN DOLLARS FROM APRIL 1, 1999 THROUGH JUNE 30, 2002

Infineon[1]    $ ☐☐☐ , ☐☐☐ , ☐☐☐

Samsung[2]    $ ☐☐☐ , ☐☐☐ , ☐☐☐

Hynix[3]    $ ☐☐☐ , ☐☐☐ , ☐☐☐

Elpida[4]    $ ☐☐☐ , ☐☐☐ , ☐☐☐

NEC[5]    $ ☐☐☐ , ☐☐☐ , ☐☐☐

Micron[6]    $ ☐☐☐ , ☐☐☐ , ☐☐☐

Winbond[7]    $ ☐☐☐ , ☐☐☐ , ☐☐☐

Mosel[8]    $ ☐☐☐ , ☐☐☐ , ☐☐☐

Nanya[9]    $ ☐☐☐ , ☐☐☐ , ☐☐☐

**Total**    $ ☐☐☐ , ☐☐☐ , ☐☐☐

Pursuant to Court order, the Settlement Fund will be distributed to Class Members based upon the *pro rata* share of the total amount of DRAM that each Class Member purchased directly from Defendants from April 1, 1999 through June 30, 2002.

---

1 "Infineon" means Infineon Technologies AG and Infineon Technologies North America Corp.
2 "Samsung" means Samsung Electronics Company, Ltd. and Samsung Semiconductor, Inc.
3 "Hynix" means Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc.
4 "Elpida" means Elpida Memory, Inc. and Elpida Memory (USA) Inc.
5 "NEC" means NEC Electronics America, Inc.
6 "Micron" means Micron Technology, Inc. and Micron Semiconductor Products, Inc. through its Crucial Technology division
7 "Winbond" means Winbond Electronics Corporation and Winbond Electronics Corporation America
8 "Mosel" means Mosel-Vitelic, Inc. and Mosel Vitelic Corp.
9 "Nanya" means Nanya Technology Corporation USA

**CLAIM FORMS MAY BE FILED ON-LINE AT WWW.DRAMANTITRUSTSETTLEMENT.COM**

## PART 3: SUBMISSION TO JURISDICTION OF THE DISTRICT COURT

By signing below, you are verifying that:

1.    You have documentation to support your claim and agree to provide additional information to Class Counsel or the Claims Administrator to support your claim if necessary;

2.    You have not assigned or transferred (or purported to assign or transfer)or settled for the same purchases or submitted any other claim for the same purchases of DRAM and have not authorized any other person or entity to do so, and know of no other person or entity having done so on your behalf; and

3.    The information provided in this Claim Form is accurate and complete.

## PART 4: CERTIFICATION

I (We) certify that I am (We are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1)(c) of the Internal Revenue Code because: (a) I am (We are) exempt from backup withholding, or (b) I (We) have not been notified by the I.R.S. that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the I.R.S. has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE: If you have been notified by the I.R.S. that you are subject to backup withholding, please strike out the language that you are not subject to backup withholding in the certification above.

I (WE) DECLARE, UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA, THAT THE INFORMATION PROVIDED IN THIS PROOF OF CLAIM FORM IS TRUE AND CORRECT.

This certification was executed on the _____ of _____, 200X,

                                      (day)                       (month)

in _____

            (City/State/Country)

**SIGNATURE OF CLAIMANT:** (If this claim is being made on behalf of Joint Claimants, then each must sign)

_____       _____
(Signature)                                (Type/Print Name)

_____       _____
(Company's Name)                       (Capacity of person signing, e.g. President)

*D R A M 2 *

**ACCURATE PROCESSING OF CLAIMS MAY TAKE SIGNIFICANT TIME.
THANK YOU, IN ADVANCE, FOR YOUR PATIENCE.**

**CLAIM FORMS MAY BE FILED ON-LINE AT WWW.DRAMANTITRUSTSETTLEMENT.COM**