**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT)<br>ANTITRUST LITIGATION | MDL No. 1917<br><br>Case No. C-07-5944-SC<br><br>ORDER RE: DELL'S AND<br>SHARP'S ADMINISTRATIVE |
| This Order Relates To: | MOTIONS TO CONFIRM THEIR |
| <u>Sharp Electronics Corp., et al. v.<br>Hitachi, Ltd., et al.</u>, 13-cv-1173-<br>SC | OPT OUT REQUESTS OR, IN THE<br>ALTERNATIVE, FOR AN<br>ENLARGEMENT OF TIME TO OPT<br><u>OUT</u> |
| <u>Dell Inc., et al. v. Hitachi,<br>Ltd., et al.</u>, 13-cv-02171-SC | |
| ALL DIRECT PURCHASER ACTIONS | |

I.   **INTRODUCTION**

Now before the Court are administrative motions by Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. ("Sharp") and Dell Inc. and Dell Products L.P. ("Dell") to confirm their request to opt out from the Direct Purchaser Plaintiffs' ("DPPs") proposed settlement with the SDI and Hitachi Defendants[1] ("Proposed Settlements") or for a retroactive

---

[1] The SDI Defendants include Samsung SDI Co. Ltd. (f/lk/a Samsung Display Devices Co., Ltd.), Samsung SDI America, Inc., Samsung SDI Brasil, Ltd., Tianjin Samsung SDI Co., Ltd., Samsung Shenzhen SDI Co., Ltd., SDI Malaysia Sdn. Bhd., and SDI Mexico S.A. de C.V. (collectively "SDI").  The DPP's proposed settlement with Hitachi includes Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display Inc.), Hitachi America, Ltd., Hitachi Asia, Ltd., and Hitachi

extension of the time to opt out.  ECF Nos. 2696 ("Dell Mot."),
2698 ("Sharp Mot.").  Hitachi opposes the motion.  ECF Nos. 2712
("Dell Opp'n"), 2713 ("Sharp Opp'n").  DPPs also filed a responsive
brief in support of the motion.  ECF No. 2715 ("DPP Br.").  The
motion is fully briefed and ripe for disposition without oral
argument.  Civ. L.R. 7-1(b); 7-11.  For the reasons set forth
below, Dell's motion is GRANTED and Sharp's motion is DENIED.

**II.   BACKGROUND**

The parties are familiar with the factual and procedural
background of the case, so an exhaustive review is unnecessary.
The facts relevant to the motion are set forth below.  Defendants
are allegedly manufacturers of cathode ray tubes ("CRTs") and, in
some cases, of finished products as well.  In March 2013, Sharp
filed a direct action suit against a host of defendants including
the Settling Defendants.  ECF No. 1604-2.  In June 2013, Dell filed
its First Amended Complaint, also asserting claims against the
Settling Defendants.  ECF No. 1726.

On April 14, 2014 the Court granted provisional certification
to a class in the Proposed Settlements.  ECF No. 2534.
Subsequently, the Settlement Administrator set the deadline to opt
out of the Proposed Settlements for June 12, 2014.  The Settlement
Administrator mailed notice to the class members including two
addresses for Dell and eight addresses for Sharp.  ECF Nos. 2712-1
("Murray Dell Decl.") ¶¶ 3-4; 2713-1 ("Murray Sharp Decl.") ¶¶ 3-4.
One of Dell's notices was returned as undeliverable.  Murray Dell

Electronic Devices (USA) Inc. (collectively, "Hitachi").  SDI and
Hitachi are collectively referred to as the "Settling Defendants."

1   Decl. ¶ 4.  None of the Sharp notices were returned.  Murray Sharp

2   Decl. ¶ 4.  The Settlement Administrator also published notice in

3   the Wall Street Journal, established a website with copies of the

4   relevant notices and a Frequently Asked Questions page with the

5   June 12 deadline, and activated a toll-free telephone line with

6   customer service representatives available to answer questions

7   related to the class settlement.  Id. at ¶ 6-8.

8        Before, during, and after the June 12 deadline, both Dell and

9   Sharp have been actively litigating against the Settling

10  Defendants.  See Dell Mot. at 1-2 (describing Dell's active

11  participation in discovery); Sharp Mot. at 1-2 (discussing Sharp's

12  litigation against the Settling Defendants).  Nonetheless, neither

13  Dell nor Sharp sent an opt out notice to the Settlement

14  Administrator by the June 12 deadline.  Instead, on June 26, 2014,

15  after DPPs' counsel contacted counsel for Dell and Sharp and

16  pointed out that opt out requests had not been received from either

17  company, Dell and Sharp immediately submitted opt-out requests.

18  ECF No. 2715-1 ("Saveri Decl.") ¶¶ 3, 6.  As a result, both Dell

19  and Sharp were included on the list of opt-outs filed by the DPPs

20  on the court-ordered deadline of June 26, the earliest date on

21  which the Settling Defendants were notified of the list of opt-

22  outs.  Id. at ¶ 6.  Twelve days later, counsel for both Sharp and

23  Dell contacted SDI and Hitachi's counsel seeking to stipulate to an

24  extension of the opt-out deadline, but Hitachi refused.  ECF No.

25  2698-1 ("Benson Decl."), ¶ 6.

26       Sharp and Dell now bring these motions seeking alternatively

27  to confirm that their June 26 opt-out was effective or to

28  retroactively extend the opt-out deadline.  Hitachi opposes.

**United States District Court**
For the Northern District of California

**III.  DISCUSSION**

Sharp and Dell make two largely identical arguments in support of their motions.  First, they argue that their actions before, during, and after the opt-out deadline sufficiently demonstrated their intent to be excluded from the settlement class.  Sharp Mot. at 3-4; Dell Mot. at 3-4.  Accordingly, they ask the Court for an order confirming their status as opt-outs from the Proposed Settlements.  Alternatively they contend that even if their demonstration of intent to opt out is insufficient, this is a case of excusable neglect and good cause exists for the Court to order an enlargement of time under Federal Rule of Civil Procedure 6(b).  Sharp Mot. at 4-5; Dell Mot. at 4-5.  The Court will analyze Sharp's and Dell's second argument first.  Finding Sharp's neglect inexcusable but Dell's excusable, the Court then turns to the parties' first argument.

A.  **Excusable Neglect**

District Courts have discretion to grant retroactive enlargements of time under Federal Rules of Civil Procedure 6(b) and 60(b)(1) provided a party shows their neglect in missing the applicable deadline was excusable.  In determining whether the parties have shown excusable neglect, the Court considers four factors (the "Pioneer factors"): (1) the danger of prejudice to the nonmoving parties, (2) the length of delay, (3) the reason for the delay, and (4) whether the movant acted in good faith.  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993); Silber v. Mabon, 18 F.3d 1449, 1455 (9th Cir. 1994).

Dell and Sharp both argue they have satisfied each of these factors.  First, Dell and Sharp argue that because they were

included in the report on exclusions, the first time the Settling

Defendants received information regarding the identify of the opt-

outs, the Settling Defendants will not be prejudiced if they are

permitted to opt out.  Furthermore, Dell and Sharp argue that their

delay was minimal -- their opt-out request was postmarked and

received 14 days after the opt-out deadline.  As to the third

factor, the reason for the delay, Dell argues that while they

repeatedly checked the Settlement Administrator's "dates to

remember" page, the page was never updated to include the opt-out

deadline for this particular settlement.  Coupled with the

ostensible failure of Dell's in-house counsel's to receive notice

of the Proposed Settlements, Dell contends their delay resulted

from "confusion" and "reasonable mistake."  Dell Mot. at 5.  Sharp

offers no explanation for its failure to opt out prior to the

deadline.  Finally, it is undisputed that the parties acted in good

faith, and did not fail to opt out seeking a tactical advantage.

Hitachi argues that neither party has successfully

demonstrated excusable neglect.  Specifically, Hitachi argues that

extending the opt-out deadline retroactively will be prejudicial as

it will undermine certainty and deadlines in the case and that the

length of the delay weighs in their favor.  Furthermore, they argue

that the third factor, the explanation for the delay, does not

weigh in either Sharp's or Dell's favor.  Specifically they note

that Sharp's failure to offer any explanation "'largely moots any

further inquiry into the other pertinent factors.'"  Sharp Opp'n at

3 (quoting Demint v. NationsBank Corp., 208 F.R.D. 639, 642 n.5

(M.D. Fla. 2002)).  As to Dell, they contend that "Dell knew or

should have known about the deadline," particularly in light of the

numerous other requests for exclusion.  Dell Opp'n at 4.

### 1.   Adequacy of Notice

As a preliminary matter, the Court notes that the notice provided in this case was constitutionally adequate.  Notice was sent to (and apparently received at) at least one Dell address and multiple Sharp addresses, published in the Wall Street Journal, and posted on the Settlement Administrator's website.  The fact that Dell arguably did not receive the class notice does not render the notice constitutionally inadequate.  Brannon v. Household Int'l Inc., 236 F. App'x 285, 287 n.1 (9th Cir. 2007) (noting that neither actual nor "individually tailored" notice is constitutionally required).  Furthermore, while the success of the procedures is not dispositive, the fact that eighteen corporate families filed timely opt-out notices further indicates notice was adequate.

### 2.   Sharp

As to Sharp, two of the Pioneer factors weigh in their favor. First, it is undisputed that Sharp acted in good faith.  Second, Hitachi's suggestion that Defendants will be prejudiced by reduced certainty in deadlines is vague and unconvincing.  On the other hand, the DPPs point out that members of the settlement classes may well be prejudiced by including Sharp, a large purchaser of CRTs. This may well be true, but neither Sharp nor the DPPs provide any detail above generalized assertions of prejudice.  See DPP Br. at 3-4; Saveri Decl. ¶ 9.  Without more, the Court does not ascribe significant weight to this factor.

On the other hand, the remaining factors weigh strongly against a finding of excusable neglect.  First, and most

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

importantly, Sharp has offered no explanation as to why it missed the applicable opt-out deadline aside from mentioning that notice was "inadvertently not . . . sent to outside counsel for the Sharp Plaintiffs." See Benson Decl. ¶ 5.  Inadvertence and miscommunication are insufficient excuses.  See, e.g., In re Static Random Access Memory (SRAM) Antitrust Litig., No. C 07-01819 CW, 2009 WL 2447802, at *2 (N.D. Cal. Aug. 7, 2009) (declining to find excusable neglect due to "miscommunications"); see also Pioneer, 507 U.S. at 392 (stating that "inadvertence . . . [does] not usually constitute 'excusable' neglect.").  Sharp received notices (sent to the same address used for other settlements Sharp opted out of), and had every opportunity to review the Settlement Administrator's website or publication notice.  While Sharp points out that the Settlement Administrator's "dates to remember" page omitted the opt-out deadline, they do not claim they viewed that page or relied on it for notice of the applicable deadline.  See Sharp Mot. at 2.  Finally, while Sharp characterizes the two week delay in filing a request for exclusion as "de minimis," they fail to note that after filing their request for exclusion, counsel waited an additional twelve days before contacting opposing counsel seeking their position on Sharp's exclusion from the class.  These facts are simply insufficient to justify a finding of excusable neglect.  Accordingly, Sharp's motion for a retroactive extension of the opt-out period is DENIED.

### 3. Dell

Unlike Sharp, Dell's motion provides sufficient detail to demonstrate its neglect was excusable.  As with Sharp, the parties agree that Dell has acted in good faith.  Similarly, the Court

United States District Court
For the Northern District of California

1   finds that Defendants will not be prejudiced by permitting Dell to

2   opt out of the class.   There is at least some support for the DPPs'

3   contention that the members of the settlement class will be

4   prejudiced if Dell, unlike Sharp, is included in the class.   The

5   DPPs suggest that Dell's purchases from SDI "exceed $1.6 billion,"

6   although they provide no source for that number other than stating

7   the information was gleaned from a conversation with Dell's

8   counsel.   Saveri Decl. ¶ 9.   While the Court has no way to

9   determine what percentage of the $1.6 billion in purchases Dell

10  considers to be overcharges, and accordingly what amount of that

11  $1.6 billion would constitute recoverable damages in SDI

12  settlement, the Court finds this is enough detail to tip the

13  prejudice factor further in Dell's favor.

14       Also unlike Sharp, Dell offers an explanation for missing the

15  opt-out deadline.   Dell contends that "confusion regarding the opt-

16  out deadline created by the class administrator's settlement

17  website not being properly updated to reflect the opt-out

18  deadline," the alleged "failure to serve Dell with actual notice of

19  the opt-out deadline," and "reasonable mistake regarding the opt-

20  out deadline" caused them to miss the opt-out deadline.   Dell Mot.

21  at 5.   Furthermore, unlike Sharp, which points to the confusion

22  regarding the Settlement Administrator's "dates to remember" page

23  but does not claim to have ever visited the page or relied on it,

24  Dell states that their counsel visited several pages on the

25  Settlement Administrator's website during the opt-out period and

26  include internet browsing history from the relevant period to prove

27  it.   ECF Nos. 2696-2 ("Kent Decl.") ¶ 3; 2696-3 ("Mahurin Whitehead

28  Decl.") ¶¶ 5-9, Ex. 9.   While some of Dell's explanations are

inapposite, see Silber, 18 F.3d at 1453 (noting that Rule 23 does not require actual notice, only the best notice practicable), the Court finds this explanation shows an appreciable level of diligence and rises above the vague assertions of miscommunication and inadvertence other courts have rejected.  See Pioneer, 507 U.S. at 392; SRAM, 2009 WL 2447802, at *2.  Accordingly, Dell has also tipped the balance of this factor in its favor.

While the Court finds the length of delay factor weighs against Dell for the same reasons it weighed against Sharp, the Court finds Dell has demonstrated excusable neglect.  Accordingly, Dell's motion for a retroactive enlargement of the time to opt out is GRANTED.

B.   **Confirmation of Sharp's Opt-Out Attempt**

Having found that Sharp's neglect is inexcusable, the Court must now determine if Sharp can demonstrate some other ground for its exclusion from the Proposed Settlements.  Specifically, Sharp argues that its litigation conduct throughout the relevant period is sufficient to have effectively opted them out of the Proposed Settlements. As a preliminary matter, however, Hitachi disputes whether such an inquiry is even appropriate.  Instead, Hitachi contends that the excusable neglect standard is the sole test for determining the efficacy of an opt-out in the Ninth Circuit.  In doing so, Hitachi relies on Chief Judge Wilken's statement in In re Static Random Access Memory (SRAM) Antitrust Litigation that "[t]he standard for determining whether [a plaintiff] should be allowed to opt-out of the class after the applicable deadline is whether its failure to comply with the deadline is the result of 'excusable neglect.'"  2009 WL 2447802, at *2; see also Silber, 18 F.3d at

**United States District Court**
For the Northern District of California

1455 (remanding to the district court to analyze whether the party

seeking to opt out could show excusable neglect).

In <u>SRAM</u>, the Court denied Intel's motion for a retroactive enlargement of time to opt out of the certified class. Despite numerous electronic, mail, and publication notices by the Settlement Administrator, at least one of which was received before the opt-out deadline, Intel failed to timely return an opt-out notice. <u>Id.</u> at *1. After being informed of its failure to opt out by a supplier, Intel immediately contacted outside counsel and several defendants to inform them they intended to opt out, and filed an unopposed motion to do so. <u>Id.</u> The Court denied the motion, reasoning that Intel's only explanation -- an "honest mistake" resulting from "miscommunications" -- was insufficiently detailed to justify granting a retroactive enlargement of the deadline. <u>Id.</u> at *2-3.

Sharp disagrees that excusable neglect is the sole basis for concluding it has effectively opted out of the class, instead arguing that the continued prosecution of its case throughout the opt out period was sufficient to express "the operating understanding of all relevant parties: Sharp is not a member of the settlement class." Sharp Mot. at 3. In support of this proposition Sharp relies primarily on two cases, <u>In re Brand Name Prescription Drugs Antitrust Litigation</u>, 171 F.R.D. 213 (N.D. Ill. 1997) and <u>McCubbrey v. Boise Cascade Home & Land Corp.</u>, 71 F.R.D. 62 (N.D. Cal. 1976). In <u>McCubbrey</u>, the Court granted final approval and class certification to a settlement releasing class member's claims against a homebuilding company. 71 F.R.D. at 64-65. Prior to doing so, notice was sent via mail and publication to

10

United States District Court
For the Northern District of California

1    absent class members that "suggest[ed] that inaction will result in

2    barring _future_ litigation, not automatic termination of present

3    suits." Id. at 68.   The Defendant sought an order enjoining twenty

4    state court actions filed by members of the putative class before,

5    during, and after opt-out period.   Id. at 65.   Pointing to the due

6    process implications of binding absent class members, Judge Peckham

7    concluded that "it seems clear that institution of litigation . . .

8    constitutes an effective -- indeed, strident -- expression of a

9    desire not to acquiesce in an impending class settlement." Id. at

10   71.

11        In opposition, Hitachi suggests that, even under Sharp's

12   preferred view, Sharp cannot prevail.   Sharp Opp'n at 5.

13   Specifically, Hitachi notes the existence of cases holding that the

14   "mere pendency and continued prosecution of a separate suit, which

15   the litigant instituted _before_ commencement of the 'opt-out' period

16   in a related class action, neither registers nor preserves a

17   litigant's 'opt out' of the related class action." Demint v.

18   NationsBank Corp., 208 F.R.D. 639, 641 (M.D. Fla. 2002); see also

19   Bowman v. UBS Fin. Servs., Inc., No. C-04-3525, 2007 WL 1456037, at

20   *1-2 (N.D. Cal. May 17, 2007) (quoting the language from Demint,

21   and citing McCubbrey for the narrower position that filing suit

22   "during [the] opt-out period" was sufficient to express the desire

23   to opt out) (emphasis added); In re Prudential Secs. Inc. Ltd.

24   P'ships Litig., 164 F.R.D. 362, 370 (S.D.N.Y. 1996) ("It is well-

25   established that pendency of an individual action does not excuse a

26   class member from filing a valid request for exclusion."), aff'd

27   107 F.3d 3 (2d Cir. 1996); Holmes v. CSX Transp., No. Civ.A. 97-

28   3863, 1999 WL 447087, at *4 (E.D. La. 1999) ("Simply continuing

**United States District Court**
For the Northern District of California

1   with the present lawsuit, in a different court than the class

2   action suit, is not sufficient to provide the court with notice of

3   plaintiff's intent to opt-out of the class.").

4        Hitachi is right.  Assuming arguendo that in some cases a

5   party's litigation conduct may sufficiently demonstrate its intent

6   to be excluded from the class, this is not such a case.  First,

7   unlike in McCubbrey, the notice in this case was constitutionally

8   sufficient, and Sharp's case against the Settling Defendants was

9   filed prior to the opt-out period.  See Bowman, 2007 WL 1456037, at

10  *1 ("Here, unlike the notice at issue in McCubbrey, the Class

11  Notice complies with the due process requirement that 'the options

12  available to class members and the consequences of their elections

13  be detailed with sufficient clarity to afford absent members a

14  realistic opportunity to evaluate alternative options available to

15  them.'") (quoting McCubbrey, 71 F.R.D. at 67).  Second, the weight

16  of authority cited by Hitachi is clear: filing an individual case

17  prior to the opt-out period and continuing to litigate that case

18  through the opt-out period is insufficient.  Id. at *2 (collecting

19  cases); see also In re Prudential Ins. Co. of Am. Sales Pracs.

20  Litig., 177 F.R.D. 216, 238 (D.N.J. 1997); In re VMS Secs. Litig.,

21  No. 89 C 9448, 1992 WL 203832, at *3 (N.D. Ill. 1992); cf. Brannon,

22  236 F. App'x at 287 (concluding that ongoing negotiations between

23  the individuals and defendants "did not exclude [plaintiffs] from

24  compliance with the judicially ordered exclusion procedures");

25  Penson v. Terminal Transp. Co., Inc., 634 F.2d 989, 996 (5th Cir.

26  1981) (rejecting the argument that an individual's filing of an

27  EEOC charge prior to the entry of a consent decree prevented the

28  application of claim preclusion).  Finally, Sharp's reliance on

United States District Court
For the Northern District of California

1  Brand Name Prescription Drugs is misplaced.  In that case, the
2  party seeking to confirm the effectiveness of its opt-out request
3  mistakenly sent the required opt-out notice to the court rather
4  than the appropriate post office box.  171 F.R.D. at 215-16.
5  Furthermore, to the extent the case concluded that "[t]he clearest
6  evidence of a desire to pursue its own litigation against the
7  defendants is the filing of its case against the same 23
8  defendants," it is contrary to the clear weight of authority
9  identified above.

10      Accordingly, Sharp has failed to show that its actions during
11  the opt-out period sufficiently demonstrated its intent to be
12  excluded from the Proposed Settlements.  As a result, their motion
13  is DENIED.

14

15  **IV.   CONCLUSION**

16      For the reasons set forth above, the Court GRANTS Dell's
17  motion for a retroactive enlargement of time to opt out of the
18  Proposed Settlements.  Dell's alternative motion to confirm its
19  prior opt-out is DENIED as moot.  The Court DENIES Sharp's motions
20  to confirm its opt-out request and its alternative motion for a
21  retroactive enlargement of time to opt out of the Proposed
22  Settlements.

23

24  IT IS SO ORDERED.

25

26      Dated: August 20, 2014          _____

27                                       UNITED STATES DISTRICT JUDGE

28