Vaughn R Walker
Law Office of Vaughn R Walker
P O Box 26250
San Francisco, CA  94126
Tel:  (415) 871-2888
Fax:  (415) 871-2890
vrw@judgewalker.com

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No 1917 |
| This Order Relates To: | Master Case No 3:07-cv-05944SC |
| All Direct Purchaser Plaintiff Actions | **RECOMMENDED ORDER OF THE SPECIAL MASTER** |

This order deals with a motion submitted by letter memorandum dated August 6, 2014 by counsel for LG Electronics and LG Electronics USA, Inc ("the LG Defendants") on behalf of themselves and all other defendants[1] to compel responses by the direct action plaintiffs[2] to the following interrogatories:

**INTERROGATORY NO 1:[3]**

Separately Identify each "target price[ ], floor price[ ] and price range[ ]" for CRTs that YOU contend was agreed to by the alleged CONSPIRATORS, as alleged in paragraph 251(b) of the COMPLAINT, by stating:

    (a) The entities who YOU contend agreed to the target price, floor price or price range;

    (b) The date of the agreement;

---

[1] Hitachi, Ltd, Hitachi Displays, Ltd (n/k/a Japan Display, Inc), Hitachi Asia, Ltd, Hitachi America, Ltd, Hitachi Electronic Devices (USA), Inc, Panasonic Corporation of North America, MT Picture Display Co, Ltd, Panasonic Corporation (f/k/a Matsushita Electric Industrial Co, Ltd), Samsung SDI Co, Ltd, Samsung SDI (Malaysia) SDN.BHD, Samsung SDI Mexico SA de CV, Samsung SDI Brasil Ltd, Shenzen Samsung SDI Co, Tianjin Samsung SDI Co, Ltd, Toshiba Corporation, Toshiba America, Inc, Toshiba America Information Systems, Inc, Toshiba America Consumer Products, LLC, Toshiba Electronics Components, Inc, Koninklijke Philips NV, Philips Electronics North America Corporation, Chungwha Picture Tubes, Ltd, Technicolor SA (f/k/a Thomson, SA), Technicolor USA, Inc (f/k/a Thomson Consumer Electronics, Inc, Videocon Industries, Ltd, Technologies Displays Americas LLC (f/k/a Thomson Displays Americas LLC), Mitsubishi Electric Corporation, Mitsubishi Electric Visual Solutions America, Inc and Mitsubishi Electric & Electronics USA, Inc.

[2] Electrograph Systems, Inc, Electrograph Technologies Corp, Best Buy Co, Inc, Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc, Best Buy Stores, LP, Bestbuy.com, LLC, Magnolia Hi-Fi, LLC, Shultze Agency Services, LLC, Alfred H Siegel, as trustee of the Circuit City Stores, Inc Liquidating Trust, Costco Wholesale Corporation, Target Corp, Office Depot, Inc, CompuCom Systems, Inc, Tech Data Corporation, Tech Data Product Management, Inc, Interbond Corporation of America, Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc.

[3] The above quoted interrogatories were those propounded to the Electrograph plaintiffs; identical interrogatories were propounded to all other defendants, save only for the different paragraph numbers of the respective plaintiffs' complaints.

(c) The type (i e, CDT or CPT) and model (flat, curved, ITC, bare) of CRT to which the target price, floor price or price range applied;

(d) The effective date(s) of the target price, floor price or price range;

(e) The customer(s) to whom the target price, floor price or price range applied;

(f) The geographic area to which the target price, floor price or price range applied;

(g) ALL EVIDENCE upon which YOU intend to rely to prove such target price, floor price or price range (including the Bates number of each DOCUMENT and/or citation to specific deposition testimony that YOU claim supports YOUR contention).


**INTERROGATORY NO 2:**

Separately Identify each meeting or competitor communication which YOU contend resulted in an agreement to fix "target price[ ], floor price[ ] and price range[ ]" for CRTs, as alleged in paragraph 251(b) of the COMPLAINT.


**INTERROGATORY NO 3:**

Separately for each meeting or competitor communication that YOU Identified in response to Interrogatory No 2, Identify all EVIDENCE upon which YOU intend to rely to prove that such a meeting or competitor communication resulted in an agreement to fix target prices, floor prices and price ranges for CRTs, including:

(a) Each DOCUMENT that YOU contend suggests that an agreement to fix target price, floor price and price range for CRTs was reached;

(b) All persons with knowledge suggesting that an agreement to fix target price, floor price and price range for CRTs was reached;

(c) The date of each meeting or competitor communication which YOU contend resulted in an agreement to fix target price, floor price and price range for CRTs;

(d)  The location of each alleged meeting, if applicable;

(e)  The names of each specific corporate entity that YOU content directly participated in each meeting or competitor communication; and

(f)  The names of the individuals that YOU content participated in each meeting or competitor communication.

**INTERROGATORY NO 4:**

Separately Identify each meeting or competitor communication which YOU contend resulted in an agreement to maintain or lower production capacity for CRTs, as alleged in paragraph 251(g) of the COMPLAINT.[4]

Counsel for the direct action plaintiffs and for the State of California submitted letter memoranda in opposition on August 14, 2014.  The undersigned special master conducted a telephone hearing with counsel on August 15, 2014.  Laura Lin of Munger Tolles & Olson presented defendants' position in support of the motion.  Anne Nardacci of Boies Shiller & Flexner argued on behalf of the direct action plaintiffs in opposition.

The parties' submissions on this motion are quite voluminous, but the issue presented is fairly straightforward.  Among other allegations in their complaints, the direct action plaintiffs allege that the defendants met and agreed on "target prices, 'bottom' prices price ranges and price guidelines" for CRTs.[5]  By the present interrogatories, defendants seek to have the plaintiffs pin point the high and low prices and price ranges agreed to at various meetings and in communications and spell out the meetings and communications at which these prices were fixed, the documents which evidence these meetings and communications

---

[4] Defendants' letter memorandum dated July 25 appeared to seek responses to five interrogatories dealing with target prices; LG counsel made clear that the above quoted four interrogatories are the subject of the present motion.

[5] Quoting the Electrograph second amended complaint, Doc 1976 at 34; apparently some complaints use the term "floor" price and hence use of that term in the interrogatories.

together with the particulars of those meetings and communications, such as participants and locations, and the meetings and communications at which production capacity was agreed to be lowered.  Given the large number of communications and meetings among the defendants, they argue that they need to know not only which of these fixed prices but whether the prices fixed were target prices, maximum prices, minimum prices or were meetings and communications to maintain or reduce output of CRTs.  Without this information, defendants argue they face the risk that the trier of fact will be unable to separate meetings and communications that were innocent from those which plaintiffs contend give rise to liability. Although it would appear defendants' inquiries, calling as they do for information about target prices, floor prices, price ranges and capacity reductions, go to the effects of defendants' alleged conspiracy (and thus plaintiffs' injuries or damages), defendants deny that is the information they seek.  Instead, defendants assert what they're after is liability evidence.  It is, however, questionable that evidence showing the absence of agreements about specific price targets, floors or ranges or capacity would negate the existence of the conspiracy plaintiffs allege.  What matters is an agreement or coordination of conduct, not the particulars of that agreement or coordination.

Defendants rely heavily on two magistrate judge decisions:  In re Rail Freight Surcharge Antitrust Litigation, 281 FRD 1 (D DC 2011) and In re Urethane Antitrust Litigation, 2009 WL 2058759 (D Kan 2009).  In Urethane, defendants propounded an interrogatory asking plaintiffs to identify "the date and amount of each price increase announcement that you claim was the result of the conspiracy."  Id at *2.  Plaintiffs objected on the ground that the answer would be revealed in their expert report, a deflection that the magistrate judge quickly called out by requiring plaintiffs to answer the question with whatever information they have.  In contrast to Urethane, defendants here have been provided extensive lists of meetings and communications which plaintiffs say they intend to use to prove both liability and an effect on prices and output.  As these are defendants' own meetings and communications, defendants can hardly be said to be in the dark about their contents, a point plaintiffs make, of course.

Furthermore, and more importantly, unlike <u>Urethane</u>, plaintiffs' theory here does not hinge on specific price announcements.

This last point emerges even more clearly in <u>Rail Freight Surcharges</u> although that case's language is somewhat more helpful to defendants than <u>Urethane</u>. The first interrogatory in <u>Rail Freight Surcharges</u> analogous to those on which defendants move here asked for each communication that plaintiffs contended constitutes an unlawful agreement. Plaintiffs objected claiming attorney work product, an objection the magistrate promptly dispatched by directing plaintiffs to tell defendants the meetings at which agreements were reached or from which an agreement may be inferred. Here by contrast, defendants have not been stiffed but have been furnished lengthy lists of meetings and communications from which plaintiffs plan to mine proof of a conspiracy. Other interrogatories analogous to those under review in <u>Rail Freight Surcharges</u> sought "'trigger [sic] price, surcharge percentage and increment, fuel price index" and like mechanisms of the alleged fuel surcharges. 281 FRD at 5. Plaintiffs responded with a lengthy narrative that the magistrate described as fulsome, but evasive of the information to which defendants were entitled, namely "the agreement *ab initio* and whether the defendants agreed, again *ab initio*, to the mechanisms that would be used to bring about the results about which plaintiffs complain." 281 FRD at 6. Defendants here have been furnished information significantly more informative than an elusive narrative. Furthermore, the very nature of the conspiracy alleged in <u>Rail Freight Surcharges</u> was an agreement to increase fuel charges over regulatory permitted charges so that the specific increase in charges was the essence of the liability that plaintiffs alleged. Without such increases, liability would not follow. In this case, by contrast, a conspiracy could still be found even if it resulted in no CRT prices above competitive levels. This could be due to a host of circumstances, such as cheating by the alleged conspirators, contributions to supply by firms not part of the alleged cartel, among others.

In addition, defendants point to the Civil Rules Advisory Committee Notes to the 1970 amendment of FRCP 33 and its seeming approbation of contention interrogatories, of which the interrogatories under review are certainly examples. See Hwang Ltr, Aug 6, 2013 at

5. Defendants do so without observing that subsequent amendments, especially that in 1993, have largely been directed to reigning in the excessive use of interrogatories.  Contention interrogatories have their place, but at this point in the litigation, defendants surely do not labor under a misapprehension about plaintiffs' theory of the case.

Plaintiffs respond with essentially three points: (1) the discovery defendants seek would be "oppressive, cumulative and unduly burdensome," (2) it is essentially irrelevant; and (3) lacks "proportional corresponding benefit."  Nardacci Ltr, Aug 14, 2014 at 1-2.  There can be little doubt that answering these interrogatories would take a lot of work.  That alone is not reason to deny a motion to compel if the evidence sought is relevant and the burden proportional to the light cast on the issues.  So plaintiffs' other two points deserve some discussion.

Plaintiffs' relevance argument rests first on an oft-quoted but hoary passage out of Continental Ore Company v Union Carbide & Carbon Corp, 370 US 690, a case upon which antitrust practitioners have been schooled for nearly two generations: "In cases such as this, plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each."  370 US at 699. Continental Ore involved a challenge to jury instructions and the exclusion of evidence at trial; it was not a discovery case.  Nonetheless, Judge Illston, in the LCD litigation, applied this teaching in denying summary judgment for defendants in part on the ground that "the evidence shows that defendants routinely exchanged information concerning production and capacity in order to fix prices. To the extent that certain defendants, such as Toshiba, contend that there is no evidence that they in particular exchanged capacity and production information, those defendants are still liable for the actions taken by others in furtherance of the alleged conspiracy."  In re TFT-LCD (Flat Panel) Antitrust Litigation, 2011 WL 7724271 (N D Cal 2011).  If "compartmentalizing" an alleged conspiracy at trial or on summary judgment motion is not appropriate, still less is it appropriate in discovery.

To be sure, the legitimate point that plaintiffs' evidence should not be sliced and diced into a series of separate conspiracies rather than viewed as a whole does not make the

point that the individual components of plaintiffs' proof lack relevance for purposes of discovery.  Devils do reside in details.  The more important point is that not every communication or meeting can be linked to a corresponding price increase or output reduction. The discovery defendants seek might well show little more than this truism, which is not in doubt.  The probative value of defendants' proposed discovery is, therefore, problematic at best.  This then makes plaintiffs' third, and to the undersigned their more persuasive, point.

The discovery effort in these cases has been monumental, but it is not the main event.  When asked why defendants did not propound more limited inquiries seeking to identify the witnesses plaintiffs intend to call at trial or the deposition or recorded testimony they intend to offer, the documents they intend to introduce as exhibits and the other features of the evidence they intend to use at trial, defendants' counsel pointed to the court's scheduling order calling for this type of information to be spelt out at the final pretrial conference.  See Doc 30.  Such a provision in the court's case management and scheduling order should not preclude inquiries in advance of the eve of trial about what the parties expect to be the evidence at trial.  To be sure, it may well have been premature to propound such inquiries at the outset of the case, but that is hardly the present point of this litigation.  This litigation is nearly seven years old during which there has been a vast expenditure of time, effort and money in discovery.  The litigation now approaches summary judgment motions and a trial date is just around the corner on any cases that survive summary judgment and are not remanded to a transferee forum.  It is time for the parties to think seriously about how these cases can be tried.  The vast discovery taken to date offers plenty of grist for the trial mill.

The undersigned does not at this point recommend that defendants propound a new round of discovery calling for witness names and lists of exhibits.  Discovery should close as scheduled in the court's case management order on November 7, 2014 with only such follow-on work as required to wrap up any already initiated discovery.  Numerous questions remain unanswered about the litigation's next phases.  It is time for the parties to begin focusing on those questions.

//

It is RECOMMENDED that the defendants' motion to compel responses to the four interrogatories involved in this motion be DENIED.

IT IS SO ORDERED.

This _15 M._ day of August 2014

_____
Vaughn R Walker
United States District Judge (Ret)

The Recommended Order of the Special Master is Accepted and Ordered /
~~Denied / Modified.~~

Dated: August _20_, 2014

_____
Hon Samuel Conti
United States District Judge