# Exhibit A

Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 223-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California  94111
Telephone:  (415) 788-8200
Facsimile:  (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and*
*Sharp Electronics Manufacturing Company of America, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-cv-5944 SC<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>*Sharp Electronics Corp., et al. v. Hitachi Ltd., et al.,* Case No. 13-cv-1173 SC | **SHARP ELECTRONICS CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.'S PROPOSED MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING SHARP'S ADMINISTRATIVE MOTION TO CONFIRM ITS OPT-OUT REQUEST OR FOR AN ENLARGEMENT OF TIME TO OPT OUT** |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs Sharp Electronics Corporation and Sharp Electronics Manufacturing Corporation of America, Inc. hereby move the Court pursuant to Local Rule 7-9 for reconsideration of the Court's August 20, 2014 Order Denying Sharp's Motion to Confirm Its Opt Out Request or, in the Alternative, for an Enlargement of Time to Opt Out (MDL Dkt. No. 2746).

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, and such other materials and information that the Court may properly consider.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Sharp Electronics Corporation ("SEC") and Sharp Electronics Manufacturing Company of America, Inc. ("SEMA") (collectively, "Sharp") respectfully ask the Court to reconsider its recent Order denying Sharp's motion for an enlargement of time to opt out from the Direct Purchaser Plaintiffs' ("DPPs") proposed settlements with the Samsung SDI[1] and Hitachi[2] Defendants (the "Settlements").  The Court's determination that Sharp has not demonstrated excusable neglect under the relevant test appears to have been based on a misapprehension of certain key facts, specifically those concerning the prejudice to Sharp and the DPP Class and Sharp's reasons for its 14-day delay in notifying the DPP class of its intent to opt out.  Under the facts of the case, Sharp has adequately shown excusable neglect and respectfully requests reconsideration.

Courts have discretion to retroactively enlarge deadlines if the court determines a party's neglect in missing a deadline was excusable.  In determining whether a party has demonstrated excusable neglect in missing a deadline, the court considers the four *Pioneer* factors: (1) the danger of prejudice to the nonmoving parties; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380, 395 (1993); *Silber v. Mabon*, 18 F.3d 1449, 1455 (9th Cir. 1994).  The *Pioneer* case explains that the "excusable neglect" standard is, by design, intended to be flexible to suit the facts of the case.  The Court noted that appeals courts have generally construed "excusable neglect" to extend to "inadvertent delays."  *Pioneer*, 507 U.S. at 391-92.  The court also determined that "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic

---

[1] "Samsung SDI" includes Samsung SDI Co. Ltd. (f/k/a Samsung Display Devices Co., Ltd.), Samsung SDI America, Inc., Samsung SDI Brasil, Ltd., Tianjin Samsung SDI Co., Ltd., Samsung Shenzhen SDI Co., Ltd., SDI Malaysia Sdn. Bhd., and SDI Mexico S.A. de C.V.

[2] "Hitachi" includes Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display Inc.), Hitachi America, Ltd., Hitachi Asia, Ltd., and Hitachi Electronic Devices (USA) Inc.

1    concept' and is not limited strictly to omissions caused by circumstances beyond the control of

2    the movant." *Id.* at 392; *see also id.* at 388 (courts are permitted, where appropriate, "to accept

3    late filings caused by inadvertence, mistake, or carelessness, as well as by intervening

4    circumstances beyond the party's control").  Sharp has shown excusable neglect in these

5    circumstances.

6           ***Sharp has shown substantial prejudice to the DPP Class and to Sharp if Sharp***

7    ***remains in the Class.***  There is no dispute that two of the four *Pioneer* factors weigh clearly in

8    Sharp's favor.  First, as the Court previously recognized, "it is undisputed that Sharp acted in

9    good faith."  Order Denying Sharp's Motion to Extend, MDL Dkt. No. 2746 at 6 (Aug. 20, 2014)

10   ("Order").

11          Second, the DPP Class and Sharp would be severely prejudiced if the Court's

12   Order is not reconsidered.  The prejudice to the DPP Class is real and specific.  The Court

13   previously determined that it could not "ascribe significant weight" to the DPP class prejudice

14   because the DPPs' assertions of prejudice were too generalized.  Order at 6.  Respectfully, the

15   record in this case demonstrates specific concrete harm.  According to Dr. Jerry A. Hausman, an

16   expert retained by counsel for Sharp, Sharp's total volume of CRT purchases from Hitachi and

17   Samsung SDI during the overcharge period totals $334.8 million.  Declaration of Kenneth A.

18   Gallo ¶¶ 4-5 ("Gallo Decl.").[3]  DPP counsel previously explained that purchases by Dell and

19   Sharp exceeded $1.6 billion.  *See* MDL Dkt. No. 2715 at 4.  Sharp's commerce from Hitachi and

20   Samsung SDI totaling nearly $350 million is a substantial portion of that estimated commerce.

21   This matters because DPP counsel has represented that it did not include Sharp's nearly $350

22   million in purchases in the settlement negotiations with Samsung SDI and Hitachi.  Gallo Decl.

23   ¶ 9 (citing Saveri Decl. ¶ 8).  Sharp's share of the DPP settlement will cause unexpected and

24   material dilution to every Class member.

25          The prejudice to Sharp is even more severe.  Based on Sharp's volume of

26   commerce with Hitachi, Sharp's estimated damages with Hitachi alone are $14.1 million in single

27

28   ---
     [3] Dr. Hausman's reports were served on all parties to the case, including the DPP Class and
     Hitachi and Samsung SDI.  Gallo Decl. ¶ 3.

1   damages, and $42.3 million in treble damages.  Gallo Decl. ¶ 4.  Sharp's single damages from

2   Hitachi exceed the *entire* $13.45 million proposed settlement between Hitachi and the DPP Class.

3   *Id.* ¶ 7.  Hitachi's actual liability to Sharp of $42.3 million exceeds the settlement by more than a

4   factor of three.

5        As for Samsung SDI, Sharp was damaged by Samsung SDI by $22.5 million in

6   single damages, and approximately $67.5 million in treble damages.  Gallo Decl. ¶ 5.  Sharp's

7   damages from Samsung SDI would exceed two-thirds of the proposed DPP Class settlement of

8   $33.0 million.  *Id.* ¶ 7.  In total, therefore, Sharp has suffered approximately $36.6 million in

9   single damages **and $109.8 million in treble damages** collectively by Hitachi and SDI

10  Defendants.  *Id.* ¶ 6.

11       Sharp's anticipated share of the Settlements is small in comparison.  Although

12  counsel for the DPP Class has not disclosed the total volume of commerce on which the Class

13  negotiated settlements with Hitachi and Samsung SDI, or what Sharp's share in those settlements

14  would have been had counsel for the Class negotiated to settle Sharp's claims, based on the best

15  information currently available Sharp estimates that it would receive distributions of

16  approximately $500,000 from the Class settlement with the Hitachi Defendants and $800,000

17  from the Class settlement with the Samsung SDI Defendants.  Gallo Decl. ¶ 10.  The total

18  recovery Sharp would expect to receive if it is forced to accept a distribution of the DPP Class

19  settlements with Hitachi and Samsung SDI is approximately $1.3 million. *Id.* ¶ 11.  This

20  represents only 0.39% of Sharp's total CRT purchases from the Hitachi Defendants and the

21  Samsung SDI Defendants.  *Id.*

22       The low volume of Sharp's share of the settlement is not surprising since DPP

23  counsel has stated unequivocally that he "did not settle . . . Sharp's claims," Declaration of R.

24  Alexander Saveri ¶ 8, MDL Dkt. No. 2715-1 (filed July 28, 2014), and "[b]ecause . . . Sharp

25  w[as] litigating [its] own cases and had opted out of all previous class settlements, DPPs did not

26  include [Sharp's] purchases in their settlement analysis.  It was clearly understood during

27  settlement negotiations with both Hitachi and Samsung SDI that . . . Sharp w[as] not in the class."

28  *Id.*; Gallo Decl. ¶ 9.  The settlements before the Court for approval assume that Sharp is to be

1    excluded from the class.  *See* MDL Dkt. No. 2728-19, fn.1.  Sharp will be severely prejudiced,

2    therefore, if it is forced to accept settlements that  class counsel acknowledges were negotiated

3    without representation of Sharp's interests and without consideration of Sharp's purchases.

4              ***The 14-day delay here was* de minimis *and caused no negative effects on any***

5    ***party or the Court.***  The third factor of the *Pioneer* test that weighs in Sharp's favor, or is at least

6    neutral, is the 14-day length of delay.  *See In re Vitamins Antitrust Class Action*, 327 F.3d 1207,

7    1209-10 (D.C. Cir. 2003) ("excusable neglect" permitted opt out nearly two and a half months

8    after deadline); *Walter v. Blue Cross & Blue Shield United of Wis.*, 181 F.3d 1198, 1201-02 (11th

9    Cir. 1999) (one-month delay in responding to motion to dismiss was excusable neglect in absence

10   of bad faith).  Sharp counsel was first notified by counsel for the DPP Class on June 26, 2014 that

11   the Class had not, as Class counsel had expected, received opt-out notices from Sharp.  Within

12   hours, Sharp confirmed its intent to opt out, and the same day the opt-out list showing Sharp

13   among the parties that had requested exclusion from the settlement class was filed.  Gallo Decl.

14   ¶ 12.  The opt-out list filed with the Court that day stated clearly to all recipients, including

15   Hitachi and Samsung SDI, that Sharp opted out on June 26, 2014.  *Id.*  In the 14 days between the

16   opt-out notice deadline of June 12, 2014 and when the opt-out list was filed, no party was affected

17   by which plaintiffs had determined to opt out.  During that intervening time both Hitachi and

18   Samsung SDI actively participated in discovery against Sharp, including the June 25-26, 2014

19   Rule 30(b)(6) depositions of Sharp witnesses.  Declaration of Craig A. Benson ¶ 12 (filed July 23,

20   2014) (MDL Dkt. No. 2698-1) ("Benson Decl.").  The 14-day delay caused no alteration in any

21   court deadline or proceeding.  On the facts of this case and in light of this record, Sharp's 14-day

22   delay caused no effects at all.  If Sharp's opt-out notice is accepted, it will put Sharp and the other

23   parties in the same position everyone believed themselves to be on June 26 and will impact none

24   of the existing deadlines in the case.

25              Further, the 12 days, seven of which were business days, between when Sharp

26   notified the DPP Class of its intent to opt out and when Sharp (and Dell) first contacted counsel

27   for Hitachi and Samsung SDI on July 8, 2014, also caused no prejudice.  During that 12-day

28   period, counsel for Sharp conferred with both its clients and with counsel for Dell and conducted

1   legal research.  Sharp and Dell then proactively contacted counsel for Hitachi and Samsung SDI

2   to ascertain their positions.  Gallo Decl. ¶ 13.  Neither Hitachi nor Samsung SDI was aware that

3   Sharp's opt-out notice was filed after the June 12, 2014 deadline, despite the fact that the opt-out

4   list was public and clearly stated a June 26, 2014 opt-out date for Sharp.  Benson Decl. ¶ 6.

5   During that entire 12-day period, Sharp was listed publicly as one of the opt-out plaintiffs with an

6   opt-out date of June 26, 2014, and counsel for Hitachi and Samsung SDI did not contact Sharp to

7   object to Sharp's opting out of the Class.  Rather, Hitachi and Samsung SDI actively litigated

8   against Sharp during that twelve-day period (and afterwards).  For instance, on July 2, 2014, the

9   Hitachi Defendants served fifteen sets of interrogatories, requests for production and requests for

10  admission on Sharp.  Gallo Decl. ¶ 13.

11          Respectfully, the 14-day time period here is not significant when viewed in this

12  full context.  It affected no party, caused no interruption in court proceedings or discovery, caused

13  no harm to any party's interest, and indeed appears to have gone wholly unnoticed by every

14  relevant party.  After Sharp notified the DPP class of its intent to opt out, no party's behavior

15  changed towards Sharp, and no party claimed to have been harmed by the delay.  In these

16  circumstances the length of delay weighs in Sharp's favor, or at the least is neutral.

17          ***Sharp unexpectedly did not process the opt-out notices in accordance with***

18  ***internal procedures.***  Finally, Sharp's mistake in not uncovering the DPP settlement notice before

19  June 12, 2014 was the result of a failure of procedure that could not have been expected or

20  prevented by Sharp or Sharp's counsel.  Sharp has procedures in place to process notices of class

21  action settlements and to send notices to outside counsel, and those procedures have worked

22  properly with respect to the five prior settlements in this case.  Gallo Decl. ¶ 14.  Sharp has

23  records of receiving notices of settlement, and SEC and SEMA forwarded those notices to

24  counsel for the five prior DPP Class settlements Sharp has opted out of in this case.  *Id.*  Neither

25  Sharp nor counsel for Sharp had any reason to believe those same procedures that had previously

26  worked to process notices correctly would fail in this instance.

27          Unfortunately, those procedures were unsuccessful in processing the notices of the

28  Hitachi and Samsung SDI settlements, and in forwarding copies of those notices to counsel.

1   Sharp has no record of processing the opt-out notice in the normal course, but was able to locate a

2   copy of the notice in its files in July 2014, only after inquiries from counsel.  Gallo Decl. ¶ 14.

3   The individual responsible for reviewing legal notices at SEC was unable to determine why there

4   was no record of SEC having received the notice or why it was not forwarded to counsel.  *Id.*

5           Sharp's late filing of its opt-out notice was unintentional and was not caused by a

6   lack of procedure or lack of diligence.  Put simply, Sharp made a mistake and tried to rectify it as

7   soon as possible after it learned of the error.  The question then is not whether Sharp made a

8   mistake and missed a deadline – clearly it did – but rather whether that mistake is excusable in the

9   circumstances.  A court's "excusable neglect" determination is an equitable one, taking into

10  account all of the relevant circumstances and determined within the context of the particular case.

11  *Pioneer,* 507 U.S. at 395; *Pincay v. Andrews*, 389 F.3d 853, 859 (9th Cir. 2004).  The facts show

12  that in this instance Sharp's unanticipated failure to correctly process the opt-out notices was a

13  benign error that is at most neutral in the *Pioneer* test and should not be heavily weighted.

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

## <u>CONCLUSION</u>

2     Under these circumstances, Sharp respectfully requests that its Motion for

3  Reconsideration should be granted.

4

5  DATED:  August 21, 2014          By:  /s/ *Kenneth A. Gallo*

6                                         Kenneth A. Gallo (*pro hac vice*)
                                          Joseph J. Simons (*pro hac vice*)
7                                         Craig A. Benson (*pro hac vice*)
                                          **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
8                                         2001 K Street, NW
                                          Washington, DC  20006
9                                         Telephone: (202) 223-7300
                                          Facsimile: (202) 223-7420
10                                        kgallo@paulweiss.com
                                          jsimons@paulweiss.com
11                                        cbenson@paulweiss.com

12                                        Stephen E. Taylor (SBN 058452)
                                          Jonathan A. Patchen (SBN 237346)
13                                        **TAYLOR & COMPANY LAW OFFICES, LLP**
                                          One Ferry Building, Suite 355
14                                        San Francisco, California 94111
                                          Telephone:  (415) 788-8200
15                                        Facsimile:  (415) 788-8208
                                          Email: staylor@tcolaw.com
16                                        Email: jpatchen@tcolaw.com

17                                        *Attorneys for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28