Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Sharp Electronics Corp., et al. v. Hitachi, Ltd. et al.*, Case No. 13-cv-1173 (SC) | Case No. 07-cv-5944 (SC)<br><br>MDL No. 1917<br><br>**DECLARATION OF KENNETH A. GALLO IN SUPPORT OF SHARP'S EMERGENCY MOTION TO EXTEND TIME TO OBJECT TO SETTLEMENTS AND FILE NOTICE OF APPEARANCE** |

- 1 -
DECLARATION OF KENNETH A. GALLO IN SUPPORT OF SHARP'S EMERGENCY MOTION TO ENLARGE TIME
CASE NO. 13-1173 (SC); MDL NO. 1917

I, KENNETH A. GALLO, hereby declare as follows:

1. I am a partner with the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP, counsel for Plaintiffs Sharp Electronics Corporation ("SEC") and Sharp Electronics Manufacturing Company of America, Inc. ("SEMA") (together, "Sharp"). I am a member in good standing of the bar of the District of Columbia and of the State of New York. I was admitted to practice law in the District of Columbia on June 23, 1983, and admitted to practice law in the State of New York on May 23, 2007, and on March 20, 2013 was granted leave to appear *pro hac vice* in the above-captioned cases. I have personal knowledge of the facts stated herein and could competently testify to these facts if called upon to do so. I submit this Declaration in support of Sharp's concurrently filed Emergency Motion to Extend Time to Object to Settlements and File Notice of Appearance.

2. Attached as Exhibit A to this Declaration is Sharp's Objections to the Direct Purchaser Plaintiff Class Action Settlements with the Hitachi Defendants and the Samsung SDI Defendants.

3. On August 20, 2014, counsel for Sharp contacted liaison counsel for the Direct Purchaser Plaintiff ("DPP") Class and counsel for the Hitachi Defendants and the Samsung SDI Defendants, requesting an agreement and stipulation that Sharp could file objections to the Settlements and a notice of appearance on August 21, 2014. The Hitachi Defendants and Samsung SDI Defendants refused to agree to Sharp's request. As of the time of this filing, the DPP Class has not responded to Sharp's request.

4. Sharp would be substantially prejudiced if Sharp's request to extend the time to file objections and a notice of appearance is not granted. Sharp would be substantially prejudiced because its estimated recovery through distribution of proceeds of the Settlements is only approximately $1.3 million, significantly less than Sharp's estimated damages caused by the Hitachi Defendants and the Samsung SDI Defendants.

5. Sharp has not previously requested an extension of time to file objections to a settlement or notice of appearance in this case, and to Sharp's knowledge no other party has filed such a request either. Sharp and the Dell Plaintiffs separately filed motions on July 23, 2014, and July 22, 2014, respectively, to confirm their opt-out requests or, in the alternative, enlarge the time to opt out of the Settlements. Sharp's motion was denied on August 20, 2014.

6. Sharp's request to extend the time to file objections to the Settlements and a notice of appearance would have no effect on the schedule of this case. The settlement fairness hearing is scheduled for August 22, 2014, and Sharp seeks to file objections contemporaneous with this Declaration and to appear at the hearing on August 22, 2014. If Sharp's request is granted, the Court can hold the settlement fairness hearing without delay and not affect any other deadlines in the case.

7. On April 15, 2014, and July 3, 2014, Dr. Jerry A. Hausman, an expert retained by counsel for Sharp, submitted an original and then supplemental expert report calculating the overcharge caused to Sharp on the CRTs it purchased during the overcharge period and estimating total damages to Sharp. Unlike most members of the DPP Class, Sharp did not purchase CRT Finished Products from the Defendants. Demonstrative Exhibit 1 to Dr. Hausman's report additionally breaks out the volume of commerce and damages caused to Sharp by each defendant group. All parties, including the DPP Class counsel and the Hitachi Defendants and the Samsung SDI Defendants, were served with copies of Dr. Hausman's reports.

8. According to Dr. Hausman's July 3, 2014 supplemental report and Demonstrative Exhibit 1, Sharp's volume of CRT purchases from the Hitachi Defendants during the overcharge period was $130.9 million. Dr. Hausman estimated that Sharp was overcharged on its CRT purchases from the Hitachi Defendants by $14.1 million in single damages. Treble damages to Sharp caused by the Hitachi Defendants were estimated by Dr. Hausman to be $42.3 million.

9. According to Dr. Hausman's July 3, 2014 supplemental report and Demonstrative Exhibit 1, Sharp's volume of CRT purchases from the Samsung SDI Defendants during the overcharge period was $203.9 million. Dr. Hausman estimated that Sharp was overcharged on its CRT purchases from the Samsung SDI Defendants by $22.5 million in single damages. Treble damages to Sharp caused by the Samsung SDI Defendants were estimated by Dr. Hausman to be $67.5 million.

10. In total, Sharp has been damaged by $36.6 million in single damages and $109.8 in treble damages by the Hitachi Defendants and the Samsung SDI Defendants collectively. Sharp's claims against the Hitachi Defendants and the Samsung SDI Defendants are based on purchases of $334.8 million in CRTs during the overcharge period.

11. Sharp's single damages from the Hitachi Defendants of $14.1 million is more than the *entire* settlement of $13.45 million agreed to between the Direct Purchaser Plaintiff Class and the Hitachi Defendants. Sharp's single damages from the Samsung SDI Defendants of $22.5 million would represent over two-thirds of the $33 million settlement agreed to between the DPP Class and the Samsung SDI Defendants.

12. Sharp's $109.8 million in total damages from the Hitachi Defendants and the Samsung SDI Defendants is more than double the total settlement amount the DPP Class seeks from the Hitachi Defendants and the Samsung SDI Defendants.

13. The DPP Class counsel did not represent Sharp's interests when negotiating the DPP Class settlements with the Hitachi Defendants and the Samsung SDI Defendants. As counsel for the DPP Class stated in the declaration supporting Sharp's motion to confirm opt-ut requests or extend the time to opt out, "[b]ecause Dell and Sharp were litigating their own cases and had opted out of all previous class settlements, DPPs did not include their purchases in their settlement analysis. It was clearly understood during settlement negotiations with both Hitachi and Samsung SDI that Dell and Sharp were not in the class. In other words, DPPs did not settle Dell or Sharp's claims." Declaration of R. Alexander Saveri ¶ 8, MDL Dkt. No. 2715-1 (filed July 28, 2014).

14. Sharp would be severely prejudiced if Sharp were forced to accept a share of the DPP Class's proposed settlements with the Hitachi Defendants and the Samsung SDI Defendants. Counsel for the DPP Class has not disclosed the total volume of commerce on which the Class negotiated settlements with the Hitachi Defendants and the Samsung SDI Defendants, or what Sharp's share in those settlements would have been had counsel for the Class negotiated to settle Sharp's claims. Based on the best information currently available, Sharp estimates that it would receive distributions of approximately $500,000 from the Class settlement with the Hitachi Defendants and $800,000 from the Class settlement with the Samsung SDI Defendants.

15. In other words, the total recovery Sharp would expect to receive if it is forced to accept a distribution of the DPP Class settlements with the Hitachi Defendants and the Samsung SDI Defendants is approximately $1.3 million. Sharp's total expected recovery under the settlements would be only 0.39% of Sharp's total CRT purchases from the Hitachi Defendants and the Samsung SDI Defendants.

16. Sharp counsel was first notified by counsel for the DPP Class on June 26, 2014 that the Class had not, as Class counsel had expected, received opt-out notices from Sharp. On the same day, Sharp confirmed its intent to opt out the opt-out list showing Sharp among the parties that had requested exclusion from the settlement class was filed. The opt-out list made clear that Sharp opted out on June 26, 2014. *See* MDL Dkt. No. 2650, Exh. C. This was the earliest date on which the Hitachi Defendants and Samsung SDI Defendants were notified of the list of opt-outs.

17. In the intervening twelve days between June 26, 2014 and July 8, 2014 (seven of which were business days), when Sharp (and Dell) first contacted counsel for the Hitachi Defendants and the Samsung SDI Defendants, seeking their positions on Sharp's opting out of the Class, counsel for Sharp conferred with both its clients and with counsel for Dell as well as conducted relevant legal research. Sharp and Dell proactively contacted counsel for the Hitachi Defendants and the Samsung SDI Defendants to ascertain their positions. During that

- 5 -

1 entire twelve-day period, Sharp was listed publicly as one of the opt-out plaintiffs with an opt-
2 out date of June 26, 2014, and counsel for the Hitachi Defendants and the Samsung SDI
3 Defendants did not contact Sharp to object to Sharp's opting out of the Class.  The Hitachi
4 Defendants and the Samsung SDI Defendants actively litigated against Sharp during that twelve-
5 day period (and afterwards).  For instance, on July 2, 2014, the Hitachi Defendants served fifteen
6 sets of interrogatories, requests for production and requests for admission on Sharp.

7         18. Sharp has procedures in place to process notices of class action
8 settlements and to send those notices to counsel. Those procedures worked properly with respect
9 to the five prior settlements in this case.  Sharp has records of receiving notices of settlement,
10 and SEC and SEMA forwarded those notices to counsel for the five prior DPP Class settlements
11 Sharp has opted out of in this case.  In this instance, those procedures were unsuccessful in both
12 processing the notices of the Hitachi Defendants and Samsung SDI Defendants settlements, and
13 in forwarding copies of the notices to counsel.  Sharp has no record of processing the opt-out
14 notice in the normal course or forwarding it to counsel but was able to locate a copy of the notice
15 in its files in July 2014, only after inquiries from counsel.  Despite a thorough investigation, the
16 individual responsible for reviewing legal notices at SEC was unable to determine why there was
17 no record of SEC having processed the notice or why it was not forwarded to counsel.

19         I declare under penalty of perjury, that the foregoing is true and correct.  Executed
20 this 21st day of August, 2014, at Washington, DC.

21                                           /s/ *Kenneth A. Gallo*
22                                               Kenneth A. Gallo