SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GARY L. HALLING, Cal. Bar No. 66087
JAMES L. McGINNIS, Cal. Bar No. 95788
MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
DYLAN I. BALLARD, Cal. Bar No. 253929
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:     415-434-9100
Facsimile:      415-434-3947
E-mail:           ghalling@sheppardmullin.com
                      jmcginnis@sheppardmullin.com
                      mscarborough@sheppardmullin.com
                      dballard@sheppardmullin.com

Attorneys for Defendants
SAMSUNG SDI AMERICA, INC.,
SAMSUNG SDI CO., LTD.,
SAMSUNG SDI (MALAYSIA) SDN. BHD.,
SAMSUNG SDI MEXICO S.A. DE C.V.,
SAMSUNG SDI BRASIL LTDA.,
SHENZHEN SAMSUNG SDI CO., LTD. and
TIANJIN SAMSUNG SDI CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>ALL DIRECT PURCHASER ACTIONS | Case No. 07-5944 SC<br><br>MDL No. 1917<br><br>**SDI DEFENDANTS' OPPOSITION TO (1) SHARP'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OF MOTION TO ENLARGE SHARP'S TIME TO OPT OUT; (2) SHARP'S MOTION FOR EXTENSION OF TIME TO OBJECT TO SETTLEMENTS WITH DIRECT PURCHASER PLAINTIFFS; AND (3) SHARP'S OBJECTIONS TO SETTLEMENTS WITH DIRECT PURCHASER PLAINTIFFS** |

SMRH:430843723.2
MDL No. 1917

SDI DEFENDANTS' OPP. TO (1) SHARP MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; (2) SHARP MOTION FOR EXTENSION OF TIME TO OBJECT; AND (3) SHARP OBJECTIONS TO SETTLEMENTS WITH DIRECT PURCHASER PLAINTIFFS

The Samsung SDI Defendants ("SDI") oppose Sharp's "emergency" filings with respect to the proposed settlement between SDI and the Direct Purchaser Plaintiffs ("DPPs"):  (1) Sharp's Motion for Leave to File Motion for Reconsideration of Court's Order Denying Sharp's Motion to Enlarge Time to Opt Out (Dkt. No. 2750); (2) Sharp's Motion For Extension of Time to Object To Direct Purchaser Plaintiff Settlements (Dkt. No. 2751); and, to the extent the Court may permit their filing, (3) Sharp's Objections to SDI's Settlement with the Direct Purchaser Plaintiffs (Dkt. No. 2751-2).

*First*, Sharp's motion for leave to file a motion for reconsideration should be denied because Sharp improperly seeks to introduce new facts that it could have presented in its prior submissions, and those new facts do nothing to alter the Court's conclusion that Sharp committed "inexcusable neglect" in failing to opt out of the Settlement Class before the June 12, 2014 deadline.

*Second*, Sharp's objections to SDI's settlement with the DPPs are indisputably untimely and therefore barred under ample federal case law; indeed, the objections fail to comply with the very same deadline, contained in the very same notice, that governed Sharp's right to opt-out of the Settlement Class—the deadline that, as this Court just held, Sharp committed "inexcusable neglect" in failing to comply with.  If Sharp wanted to seek relief from that deadline, the time to do so has long since passed.  Sharp knew at least as early as June 26, 2014—when it filed its untimely opt-out notice—that it remained a member of the proposed DPP Settlement Class, and could have sought to file objections at that time.  Instead, Sharp elected to wait for nearly two months, until the eve of the final approval hearing.  Any repercussions from that delay should fall on Sharp alone.  Sharp should not be allowed to use the guise of untimely "objections" to terminate SDI's heavily-negotiated settlement at the eleventh hour, and thereby obtain the second chance to opt-out that this Court only yesterday refused to grant.  Sharp's motion for leave to file its objections should be denied.

*Finally*, even if the Court were to reach the merits of Sharp's objections, those objections should be rejected.  Sharp relies heavily on statements by DPP counsel that they did not expect

-1-

SMRH:430843723.2
MDL No. 1917

SDI DEFENDANTS' OPP. TO (1) SHARP MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; (2) SHARP MOTION FOR EXTENSION OF TIME TO OBJECT; AND (3) SHARP OBJECTIONS TO SETTLEMENTS WITH DIRECT PURCHASER PLAINTIFFS

1  Sharp to remain in the Settlement Class when they negotiated the settlement with SDI.  But the
2  parties to class action settlements *never* know with certainty which class members will remain in
3  or opt out, and in almost every case there are unexpected outcomes in that regard.  That is one of
4  countless uncertainties inherent in negotiating a settlement.  Indeed, many DPP class members in
5  this litigation, in addition to Sharp, have made varied decisions with respect to existing
6  settlements—opting out of some settlement classes while remaining in others, or attempting to opt
7  back in after having opted out.  Allowing a class action settlement to be terminated at this late
8  hour based on such a commonplace and unpredictable occurrence would disincentivize the
9  extreme time and effort necessary to negotiate and finalize such settlements.

10         Moreover, SDI strongly disagrees with the premise that the terms of its settlement with the
11  DPPs reflect any specific expectation regarding Sharp's potential participation in the Settlement
12  Class.  During negotiations, the parties held widely divergent views about nearly every issue that
13  might affect valuation of the case, including the relevant volume of commerce (which DPP
14  counsel contended included tens of billion dollars in total tube and finished product purchases),
15  and the appropriate overcharge assumptions.  The parties never came to an agreement on these
16  disputed issues.  Instead, the settlement was the direct result of a Mediator's proposal that did not
17  attempt to specify which sales or customers were appropriately "counted."  Thus, the notion that
18  SDI's settlement was the result of a simple mathematical calculation that omitted sales to Sharp is
19  both wrong and inconsistent with the way complex settlements are negotiated in the real world.

20         Sharp's own estimate of its recovery under the DPP settlements with SDI and Hitachi—
21  which it says would total $1.3 million—also belies any contention of prejudice to other DPP class
22  members based on "dilution" of their respective recoveries.  $1.3 million amounts to less than
23  *three percent* of the $46.45 million in total settlement funds provided for under the SDI and
24  Hitachi settlements.  A three percent "dilution" of the recovery by other class members is nominal
25  and hardly a basis for terminating these settlements.

26
27
28

-2-

SMRH:430843723.2
MDL No. 1917

SDI DEFENDANTS' OPP. TO (1) SHARP MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; (2) SHARP MOTION FOR EXTENSION OF TIME TO OBJECT; AND (3) SHARP OBJECTIONS TO SETTLEMENTS WITH DIRECT PURCHASER PLAINTIFFS

Sharp's contention that DPP counsel failed to fulfill their fiduciary duty to Sharp as an unnamed class member is baseless. Class counsel have an ethical obligation to provide zealous representation to the entirety of a putative class *as it is defined*, regardless of whether certain members may one day opt out. SDI is aware of no evidence that DPP counsel failed to fulfill that obligation while negotiating the settlement. *See* Dkt. No. 2430 at p. 2 (Motion for Preliminary Approval) ("The Settlement provides for payment by Samsung SDI of $33,000,000….The Settlement was achieved only after extensive arms-length negotiations and several mediations. It is larger than previous settlements, and represents an outstanding recovery for the class.").

## I. Sharp's Motion For Reconsideration Improperly Seeks To Introduce Facts That Could Have Presented In Its Prior Submissions.

There are only three grounds on which a party may obtain leave to file a motion for reconsideration. *See* L.R. 7-9(b). Sharp apparently concedes that it cannot satisfy either of the first two grounds by demonstrating "an intervening change in controlling law" or "the emergence of new material facts." *Id.*; Dkt. No. 2750 at pp. 1-2. Instead, Sharp relies entirely on the third grounds, which permits a motion for reconsideration only where there has been "[a] manifest failure by the Court to consider material facts or dispositive legal arguments ***which were presented to the Court before such interlocutory order***." *Id.* (emphasis added).

But Sharp does not attempt to point the Court to any facts or arguments *that were made in its prior submissions* which the Court failed to consider. Instead, Sharp seeks to "clarify" what it calls "factual ambiguities" in its prior submissions—in other words, to present new facts that it failed to present the first time. As held by voluminous and controlling case law, that is not a valid use of a motion for reconsideration. *See, e.g., Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008) (motions for reconsideration "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."); *Christie v. Iopa*, 176 F.3d 1231, 1239 n. 5 (9th Cir. 1999) ("we do not consider evidence or arguments presented for the first time in a motion for reconsideration.") (citing *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986) ("Although the defendants attempted to raise the argument in their motion for reconsideration, a motion for reconsideration is an improper

-3-

1  vehicle to introduce evidence previously available or to tender new legal theories."). Sharp makes
2  no attempt to explain why these additional facts could not have been raised in its prior
3  submissions to the Court. *See Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990) (denial of a
4  motion for reconsideration is "especially soundly exercised when the party has failed to articulate
5  any reason for the failure to raise an issue at an earlier stage in the litigation.").

6  Moreover—even if considered, which they should not be—none of the "clarifications"
7  offered by Sharp do anything to affect the Court's analysis regarding Sharp's inexcusable neglect
8  in failing to timely opt out of the settlement class. Sharp asserts that it appeared on the opt-out list
9  after its untimely opt-out notice on June 26, and that Hitachi and SDI "actively litigated" with
10 Sharp thereafter. But the Court is already aware of these facts and addressed them in its Order
11 denying Sharp's motion. (*See* Dkt. No. 2746, at p. 3). Sharp says that during the twelve days
12 between the date it filed its opt-out notice and the date it contacted defense counsel, it "conferred
13 with both its clients and counsel for Dell, and conducted relevant legal research." (Dkt. No. 2750
14 at p. 5). And Sharp says the reason it failed to timely opt-out was that "the individual at [Sharp]
15 responsible for reviewing [opt-out] notices failed to forward the relevant notice to legal counsel."
16 Sharp does not, and cannot, explain how either of these new facts does anything to excuse its
17 neglect in failing to comply with the opt out deadline. The remainder of Sharp's brief is simply a
18 rehash of the very same purported "prejudice" arguments it made in its prior submissions. *See*
19 *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (a motion
20 for reconsideration is not properly founded on a request that the Court "rethink what [it] has
21 already thought through").

22 Because Sharp fails to satisfy any of the bases for obtaining leave to file a motion for
23 reconsideration under Local Rule 7-9(b), its motion for leave should be denied.

24 **II.    Sharp's Proposed Settlement Objections Are Untimely And Should Be Barred.**
25 "For an objection to a settlement to be considered by the Court on its merits, it must be
26 timely filed." *Yarrington v. Solvay Pharm., Inc.*, 697 F.Supp.2d 1057, 1064 (D. Minn. 2010)
27 (collecting authorities); *see also Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457,
28

-4-

SMRH:430843723.2
MDL No. 1917

SDI DEFENDANTS' OPP. TO (1) SHARP MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; (2) SHARP MOTION FOR EXTENSION OF TIME TO OBJECT; AND (3) SHARP OBJECTIONS TO SETTLEMENTS WITH DIRECT PURCHASER PLAINTIFFS

1  475 (S.D. Fla. 2002) ("Objectors also are barred from being heard due to their violation of the
2  Court's objection filing deadline."). The deadline for filing objections in this case—as specified
3  in the notice sent to eight different Sharp addresses, and which this Court has already found
4  adequate—was June 12, 2014, the very same deadline for submitting opt-out notices. Just as
5  Sharp's failure to comply with the latter deadline constituted "inexcusable neglect," so too does its
6  failure to file timely objections.

7  Indeed, Sharp's failure to timely object is particularly inexcusable because Sharp had
8  ample time to seek relief from the deadline for objections but instead elected to wait until the eve
9  of the final approval hearing. Sharp filed an untimely opt-out notice on June 26, 2014, and could
10 just as easily have filed untimely objections, along with a request for relief from the objection
11 deadline, at that time. Instead, Sharp has allowed almost two full months to pass, and elected to
12 object at the eleventh hour when SDI's settlement with the DPPs has traversed all but the final
13 steps on the path to final approval. It would be unfair and prejudicial to both SDI and the DPPs to
14 allow Sharp to hold up that process simply because it elected to sit on its rights.

15 Moreover, Sharp's objections are, in effect, an attempt to sidestep the Court's ruling that
16 Sharp committed "inexcusable neglect" in failing to comply with the opt out deadline. The main
17 thrust of Sharp's objections are that the DPPs' settlements with SDI and Hitachi should be
18 terminated, thereby freeing Sharp to negotiate its own independent settlement, and thus effectively
19 giving Sharp a second opportunity to opt out of the DPP settlements. Sharp should be denied a
20 second bite at this apple.

**III.    Sharp's Inclusion In The DPP Settlement Class Does Not Affect the Fairness Of The Settlement.**

Even if Sharp's untimely objections to the DPP settlements were properly considered, they should have no effect on the Court's fairness analysis. Sharp's objections do nothing to undermine the "fundamental fairness" of SDI's settlement with the DPPs. *See, e.g., Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("The universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable."); *M. Berenson*

-5-

SMRH:430843723.2
MDL No. 1917

SDI DEFENDANTS' OPP. TO (1) SHARP MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; (2) SHARP MOTION FOR EXTENSION OF TIME TO OBJECT; AND (3) SHARP OBJECTIONS TO SETTLEMENTS WITH DIRECT PURCHASER PLAINTIFFS

*Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair.").  As the DPPs have explained in their preliminary approval papers, SDI's settlement, in addition to future cooperation obligations, provides for a payment of $33 million, which is "the largest settlement" in this litigation to date and "compare[s] favorably to settlements finally approved in other price-fixing cases."  (Dkt. No. 2728 at p. 14).   No class members other than Sharp have attempted to object to the settlement.

Sharp's primary objection centers on its conjecture that the DPPs would have negotiated "a different settlement" (which Sharp apparently presumes SDI would have agreed to) if they had known that Sharp would be included in the Settlement Class.  (Dkt. No. 2751-2 at p. 1).  Sharp's conjecture, in addition to being baseless, is inconsistent with the way SDI's settlement with the DPPs—and settlements in complex litigation more generally—was actually negotiated.

Regardless of DPP counsel's own prediction of whether Sharp would or would not opt out of the settlement class, SDI's settlement with the DPPs was the result of extensive negotiations, during which the parties expressed widely divergent views on almost every issue in the case—including which sales and customers were properly at issue, and what the appropriate volume of commerce, overcharge, and damages assumptions were.  *See* Declaration of Michael W. Scarborough ("Scarborough Decl.") ¶ 2.  The parties did not come to a resolution or compromise with respect to these disputes, and there was no mathematical formula, or list of agreed-upon sales or customers, used for arriving at the final settlement figure.  *Id.*, ¶ 3.  Instead, the final terms of the settlement were the direct result of extensive compromise and a Mediator's proposal that made no attempt to articulate which customers or sales were or were not reflected in the settlement.  *Id.*  Thus, the fact that DPP counsel apparently excluded Sharp's purchases from its own "settlement analysis" had no direct or discernible effect on the final settlement terms.  Indeed, during negotiations DPP counsel took the position that the potentially relevant volume of commerce included tens of billions of tube and finished product purchases.  *Id.*, ¶ 4.  Thus,

-6-

SMRH:430843723.2
MDL No. 1917

SDI DEFENDANTS' OPP. TO (1) SHARP MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; (2) SHARP MOTION FOR EXTENSION OF TIME TO OBJECT; AND (3) SHARP OBJECTIONS TO SETTLEMENTS WITH DIRECT PURCHASER PLAINTIFFS

1  Sharp's claimed purchases and damages are hardly dispositive.

2  But even if Sharp's conjecture that the settlement would have been "different" were true,
3  settlements are not negotiated with the aid of hindsight, and the fairness of a proposed class action
4  settlement is not to be gauged based on developments that occur after the settlement is finalized.
5  *See, e.g., U.S. v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994) ("When a party makes a
6  deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her
7  assessment of the consequences was incorrect."); *In re Checking Account Overdraft Litig.*, 830
8  F.Supp.2d 1330, 1346 (S.D. Fla. 2011) ("A settlement fairness analysis must consider such risks at
9  the time the settlement was reached, not after settlement."); *accord In re CIGNA Corp.*, 2007 WL
10  2071898, at *3 (E.D. Pa. July 13, 2007) (purely post-settlement events are not relevant to the
11  fairness analysis under Rule 23).  Uncertainty is inherent in the settlement process.

12  Here, SDI's settlement was necessarily negotiated at a time when no one—not DPP
13  counsel, SDI, or anyone else—knew with certainty which class members would remain in or opt
14  out of the class.  This is an exceedingly common form of uncertainty when negotiating class action
15  settlements, and is one of many risks that may be accepted by the parties as a cost of resolving
16  litigation.  While DPP counsel have said they expected Sharp to opt out of the SDI and Hitachi
17  settlements because Sharp had done so with respect to past settlements, the opt-out history in this
18  litigation demonstrates that past opt-out decisions are not always a reliable indicator of what a
19  significant potential class member might do with respect to future settlements.

20  To give just a few noteworthy examples:  IGB Electronica opted out of the SDI and
21  Hitachi settlements but remained in the settlement classes for all other DPP settlements; Hewlett
22  Packard and Sysco opted out of the Toshiba settlement but remained in the settlement classes for
23  all other settlements; and Mivar di Carlo Vichi opted out of the Panasonic, LG, and Toshiba
24  settlement classes, but remained in for the Chunghwa, Philips, Hitachi, and SDI classes.  And
25  earlier this year, ViewSonic unsuccessfully sought to opt back in to prior DPP settlements.   In
26  short, there is *always* a significant risk that there will be idiosyncratic opt out or "opt in" decisions
27  or outcomes.  Allowing a settlement to be terminated—much less at this late stage—simply

28

-7-

SMRH:430843723.2
MDL No. 1917

SDI DEFENDANTS' OPP. TO (1) SHARP MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; (2) SHARP MOTION FOR EXTENSION OF TIME TO OBJECT; AND (3) SHARP OBJECTIONS TO SETTLEMENTS WITH DIRECT PURCHASER PLAINTIFFS

1  because the final make-up of the settlement class was not what exactly what the parties expected,
2  would open all class action settlements to termination at any time and seriously undermine parties'
3  confidence in the settlement process.

4       Notably, moreover, if parties find this risk of unpredicted opt in or opt out outcomes
5  intolerable, they are not without recourse.  In the DPPs' settlement with Philips, for example, the
6  parties negotiated a "sliding scale" approach to determining the final settlement figure, based on
7  the percentage of Philips' sales that would ultimately be excluded from the class due to opt-outs—
8  the more sales that were excluded, the lower Philips' final settlement figure would be.  As a result
9  of this provision, Philips' settlement figure was reduced from a maximum of $27 million to $15
10 million.  The DPPs have refused to negotiate such a provision in subsequent settlements.

11      Sharp contends that DPP counsel failed to adequately represent them while negotiating the
12 SDI and Hitachi settlements because they expected Sharp to opt out of the Settlement Class.  But
13 Sharp does not attempt to explain how DPP counsel failed to "protect their interests" or the
14 interests of other unnamed class members.  As class counsel, DPP counsel had a duty to represent
15 the interests of  the entirety of the putative class, regardless of what its final constitution may have
16 turned out to be.  *See, e.g., Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) (in context of
17 class action settlement "the duty owed by Class Counsel is to the entire class"); Alba Conte and
18 Herbert B. Newberg, Newberg on Class Actions § 11:65 (4th ed. 2002) ("The general rule is that
19 the named plaintiff and counsel bringing the action stand as fiduciaries for the entire class,
20 commencing with the filing of a class complaint.").  Sharp's contention that they have done
21 otherwise is baseless; indeed, SDI's settlement was the result of extensive and hard-fought
22 negotiations, and reflects the highest settlement recovery in this litigation to date.

23      Sharp's next objection asserts that its recovery under the DPP settlements with SDI and
24 Hitachi—which it estimates will total $1.3 million—will be "inadequate" because it claims to
25 have $36.6 million in single damages claims and $109.8 million in treble damages claims against
26 SDI and Hitachi.  As a threshold matter, antitrust settlements are routinely negotiated on the basis
27 of single damages estimates (among many other factors), so Sharp's use of trebled figures is
28

-8-

1  inappropriate.  More importantly, both of Sharp's figures are of course heavily disputed, and are
2  based on volume of commerce, overcharge, and damages estimates prepared by Sharp's own
3  expert, calculations that SDI and other defendants contend are seriously flawed and inflated.
4  Simply put, the fact that Sharp will not recover the highest possible measure of its damages,
5  derived by its own expert by resolving all disputed legal and factual issues in this litigation in
6  Sharp's favor, is not a compelling basis for arguing that its recovery will be "inadequate."  To the
7  extent Sharp will potentially recover a smaller amount of damages from SDI and Hitachi than it
8  might have recovered if it had negotiated an independent settlement with those two defendants,
9  that is a consequence inherent in Sharp's inexcusable neglect in failing to timely opt out, an issue
10 that has already been litigated and decided.  And of course, Sharp retains claims against all other
11 defendants in this litigation, and Sharp will claim that each of them is jointly and severally liable
12 for the entirety of Sharp's claimed damages.

13       Further, Sharp's own estimate that it will recover $1.3 million under the SDI and Hitachi
14 settlements—which amounts to less than *three percent* of the $46.45 million in total settlement
15 funds provided for under the SDI and Hitachi settlements, totally undermines the notion of
16 prejudice to other DPP class members based on excessive "dilution" of their recoveries due to
17 Sharp remaining in the settlement class.  Because funds are to be distributed to claimants on a *pro*
18 *rata* basis, each class member will see a reduction in their total recovery of only three percent due
19 to Sharp's participation, compared to the recovery they would have seen had Sharp opted-out.
20 This minimal difference further demonstrates that the inclusion of Sharp does not alter the
21 fundamental fairness of the settlement.

22       Finally, Sharp objects on the grounds that it is "differently situated" than other members of
23 the DPP settlement classes because, unlike some unquantified number of other class members,
24 Sharp purchased CRT tubes, not finished products.  Sharp asserts that the settlements "treat direct-
25 purchaser and indirect-purchaser claims as being on equal legal footing" and therefore that "the
26 agreed-upon recovery to the DPP Class is less than what it would be were Sharp negotiating
27 alone."  Once again, Sharp does not even attempt to support these baseless assertions.  DPP
28

-9-

SMRH:430843723.2
MDL No. 1917

SDI DEFENDANTS' OPP. TO (1) SHARP MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; (2) SHARP MOTION FOR EXTENSION OF TIME TO OBJECT; AND (3) SHARP OBJECTIONS TO SETTLEMENTS WITH DIRECT PURCHASER PLAINTIFFS

1  counsel and SDI are aware of the differing legal issues that confront direct and indirect purchasers
2  and negotiated their settlement accordingly.  Scarborough Decl., ¶ 5.  These and countless other
3  disputes and uncertainties were taken into account when the parties compromised and reached a
4  settlement.

6  Dated:  August 21, 2014                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                              By      */s/ Michael W. Scarborough*
                                                         MICHAEL W. SCARBOROUGH

                                              Attorneys for Defendants
                                              SAMSUNG SDI AMERICA, INC.,
                                              SAMSUNG SDI CO., LTD.,
                                              SAMSUNG SDI (MALAYSIA) SDN. BHD.,
                                              SAMSUNG SDI MEXICO S.A. DE C.V.,
                                              SAMSUNG SDI BRASIL LTDA.,
                                              SHENZEN SAMSUNG SDI CO., LTD. and
                                              TIANJIN SAMSUNG SDI CO., LTD.