Eliot A. Adelson (State Bar No. 205284)
James Maxwell Cooper (State Bar No. 284054)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: eadelson@kirkland.com
Email: max.cooper@kirkland.com

James H. Mutchnik, P.C. (*pro hac vice*)
Kate Wheaton (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: jmutchnik@kirkland.com
Email: kate.wheaton@kirkland.com

Attorneys for Defendants,
HITACHI, LTD., HITACHI DISPLAYS, LTD.
(n/k/a JAPAN DISPLAY INC.), HITACHI AMERICA, LTD.,
HITACHI ASIA, LTD., AND
HITACHI ELECTRONIC DEVICES (USA), INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-SC |
| | MDL No. 1917 |
| This Document Relates To: | Individual Case No. 13-cv-1173 SC |
| *Sharp Electronics Corp., et al. v. Hitachi Ltd., et al.,* Case No. 13-cv-1173 SC | **HITACHI DEFENDANTS' OPPOSITION TO (1) SHARP'S EMERGENCY MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING SHARP'S MOTION TO CONFIRM ITS OPT OUT REQUEST OR FOR ENLARGEMENT OF TIME; AND (2) SHARP'S EMERGENCY MOTION TO EXTEND TIME TO OBJECT TO THE FINAL APPROVAL OF THE DIRECT PURCHASER PLAINTIFFS' CLASS SETTLEMENT WITH HITACHI AND SAMSUNG DEFENDANTS AND TO APPEAR AT THE FAIRNESS HEARING** |

Defendants Hitachi, Ltd., Hitachi America, Ltd., Hitachi Asia, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display Inc.) and Hitachi Electronic Devices (USA), Inc. (the "Hitachi Defendants") submit this Opposition to two "emergency" motions filed on August 21, 2014 by Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. (collectively, "Sharp"): (1) Sharp's Emergency Motion for Leave to File a Motion for Reconsideration of the Court's Order Denying Sharp's Motion to Confirm Its Opt-Out Request or For An Enlargement of Time to Opt Out (Dkt. No. 2750) (the "Reconsideration Motion"); and (2) Sharp's Emergency Motion to Extend Time to Object to the Final Approval of The Direct Purchaser Plaintiffs' Class Settlement with Hitachi and Samsung Defendants and to Appear at the Fairness Hearing (Dkt. No. 2751) (the "Objection Motion").  Both "emergency" motions should be denied.[1]

I.     ARGUMENT

    A.     **Motion for Reconsideration**

        1.     *Sharp fails to meet the standard to obtain leave of Court.*

Sharp moves for leave to file for reconsideration of the Court's Order re: Dell's and Sharp's Administrative Motions to Confirm Their Opt Out Requests Or, In the Alternative, For An Enlargement of Time to Opt Out (Dkt. No. 2746) (the "Order").  Sharp acknowledges that it faces a "high burden" in moving for reconsideration.  (Reconsideration Mot. at 2.)  The Ninth Circuit has held that "[r]econsideration of a court's prior ruling is an 'extraordinary remedy, to be used sparingly.'"  *Pac. Coast Fed'n of Fishermen's Ass'n v. Locke*, C 10-04790 CRB, 2011 WL 289927 at *1 (N.D. Cal. Jan. 27, 2011) (quoting *Kona Enter., Inc. v. Estate of Bisho*p, 229 F.3d 877, 890 (9th Cir. 2000))."  Thus, "a motion for reconsideration should not be granted, absent highly unusual circumstances." *Khan v. K2 Pure Solutions, LP*, 12-CV-05526-WHO, 2013 WL 6235572 at *1 (N.D. Cal. Dec. 2, 2013) (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).  Those circumstances do not exist here.

To obtain leave of court to file a motion for reconsideration, the movant must show:

---

[1] In addition to the argument herein, the Hitachi Defendants incorporate by reference the arguments in the Direct Purchaser Plaintiffs' Opposition to Sharp's Objection Motion (Dkt. No. 2753) and the SDI Defendants' Opposition to Sharp's Reconsideration and Objection Motions (Dkt. No. 2754).

(1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

(2) The emergence of new material facts or a change of law occurring after the time of such order; or

(3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

(Civil L.R. 7-9.)  Sharp does not even try to make one of these showings.

Creating its own standard, Sharp seeks reconsideration by saying that the Court relied on three "factual ambiguities" to conclude that Sharp's neglect was inexcusable: (1) Sharp did not "provide any detail above generalized assertions of prejudice"; (2) Sharp did not explain why it "waited an additional twelve days before contacting opposing counsel seeking their position on Sharp's exclusion from the class;" and (3) Sharp did not explain "why it missed the applicable opt-out deadline aside from mentioning that notice was 'inadvertently not … sent to outside counsel for the Sharp Plaintiffs.'"  (Reconsideration Mot. at 3.) These "factual ambiguities," however, were a result of evidence Sharp did *not* present to the Court.  That, of course, is not a basis for reconsideration.  *See, e.g., Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n. 5 (2008) (motions for reconsideration "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.").

Far from demonstrating a "manifest failure by the Court to consider material facts … which were presented to the Court before such interlocutory order," the Court's identification of material facts missing from Sharp's motion demonstrates a ***thorough*** consideration of the facts that were actually presented to the Court.  (Order at 7 ("These facts are simply insufficient to justify a finding of excusable neglect.").)

Sharp then offers additional facts that will purportedly "clarif[y]" the holes in Sharp's argument.  (Reconsideration Mot. at 3.)  New facts can form the basis for reconsideration ***only*** if those facts were unknown to the party applying for reconsideration law at the time of the interlocutory order (*see* Civil L.R. 7-9(b)(1)) or are newly emerged since the issuance of the order ((*see* Civil L.R. 7-9(b)(2)). Sharp makes no claim that any of the additional facts in its motion for

1  leave were unknown to Sharp at the time of the interlocutory order or are newly emerged in the
2  hours since the Order was issued. Because Sharp's Reconsideration Motion does not meet the high
3  burden required, it should be denied. *See Love v. Permanente Med. Grp.*, C-12-05679 WHO
4  (DMR), 2014 WL 720744 at *2 (N.D. Cal. Feb. 24, 2014) (denying motion for leave to file motion
5  for reconsideration because, in part, defendants impermissibly attempted to introduce new facts
6  "which should have been put before the court in the first instance"); *In re AutoZone, Inc., Wage &*
7  *Hour Employment Practices Litig.*, 3:10-MD-02159-CRB, 2013 WL 163289 (N.D. Cal. Jan. 15,
8  2013) (denying motion for leave when moving party relied on material facts that existed before the
9  interlocutory order).

2. *Sharp's newly presented evidence does not support reconsideration*

Moreover, Sharp's newly presented (but not new) evidence is not material to the Court's decision.

First, Sharp's argument that "both Sharp and the DPPs would be severely prejudiced by including Sharp in the Settlements" (Reconsideration Mot. at 3) is still not supported by Sharp's motion for leave. Sharp's newly presented facts does not support its assertion that it "would be severely prejudiced if it were forced to accept a share of the Settlement." (*Id.* at 4.)

1. Sharp will be entitled to a *pro rata* portion of the Settlements, which Sharp claims will be $1.3 million.
2. It is irrelevant that Sharp's recovery is less than the damages calculated by Sharp's experts. All settlements require plaintiffs to accept less than the alleged full value of their claim.
3. Sharp ignores the substantial risk it has of zero recovery at trial.
4. Sharp deceptively claims that it should not "lose damages claims amounting to approximately $110 million." (Reconsideration Mot. at 6.) Yet Sharp never explains how it will lose these damages claims. Sharp has pleaded that all defendants are jointly and several liable, and therefore can pursue recovery of the full value of its claim from any defendant through joint and several liability. Inclusion in the Class will have no effect on its asserted joint and several rights. As described by counsel for the DPPs, "the

Settlements preserve Plaintiffs' right to litigate against the non-settling defendants for the entire amount of Plaintiffs' damages based on joint and several liability." (Direct Purchaser Pls.' Memo. in Supp. of Final Approval of Class Action Settlement with Hitachi and Samsung SDI Defs., Dkt. No. 2728.)

5. Sharp's 0.39% recovery of total CRT purchases from the Hitachi and SDI Defendants "compares favorably to settlements finally approved in other price fixing cases." (*Id.* at 14.)

Next, Sharp asserts (without any support) that the "DPP class would also be substantially prejudiced by Sharp's inclusion in the Settlements." (Reconsideration Mot. at 4.) Sharp argues that if it is included in the DPP class, "the value of the claims to the rest of the class would be substantially diluted." (*Id*. at 5.) This argument remains as deficient as it was in Sharp's first attempt at this motion. It still does not "provide any detail above generalized assertions of prejudice." (Order at 6.)

Further, Sharp's own calculations in other parts of the motion show that there will not be substantial dilution. The total recovery from the Settlements is $46.45 million ($33 million SDI; $13.45 million Hitachi). Sharp claims that its *pro rata* share would be $1.3 million. Therefore, Sharp's *pro rata* share of the settlement is only 2.8%. So while true there will be some dilution, Sharp's inclusion will have a minimal effect.

Sharp also offers no facts that explain why it waited an additional twelve days before contacting opposing counsel seeking their position on Sharp's exclusion from the class. Sharp claims that during that twelve-day gap it was "diligently conferr[ing]" with its clients and counsel for Dell, as well as "conduct[ing] relevant legal research." (Reconsideration Mot. at 5.) But Sharp makes no attempt to explain why those activities precluded it from reaching out to opposing counsel to ascertain their position on Sharp's exclusion. Further, Sharp fails to mention that this twelve-day delay followed Sharp's two week delay in filing a request for exclusion, which was also considered by the Court when it found Sharp's neglect was inexcusable. Because Sharp's additional facts do nothing to mitigate the neglect associated with Sharp's delay, they are immaterial to the Court's Order.

1    Sharp is still unable to offer any facts explaining why it missed the applicable opt-out
2 deadline.  Sharp originally "offered no explanation as to why it missed the applicable opt-out
3 deadline aside from mentioning that notice was 'inadvertently not…sent to outside counsel for the
4 Sharp Plaintiffs.'"  (Order at 7.)  The Court found Sharp's inability to offer any explanation for
5 missing the deadline was the "most important" factor weighing against a finding of excusable
6 neglect. (Order at 6.)

7    Sharp does no better here.  It provides the same non-explanation that the "individual at
8 [Sharp] responsible for reviewing such notices failed to forward the relevant notice to legal counsel"
9 and admits that it cannot explain that failure.  (*See* Reconsideration Mot. at 6 n. 6 ("After
10 investigation, the individual responsible for reviewing legal notices at [Sharp] was unable to
11 determine … why it was not forwarded to counsel.").)  As the Court has stated, "[i]nadvertence and
12 miscommunication are insufficient excuses."  (Order at 7.)  Sharp now asserts that it has procedures
13 for processing opt-out notices and has no record of receiving the notice, but these facts are
14 immaterial since Sharp admits that it "was able to locate a copy of the notice in its files."
15 (Reconsideration Mot. at 6.)  Thus, the fact remains that "Sharp received notices (sent to the same
16 address used for other settlements that Sharp opted out of ), and had every opportunity to review the
17 Settlement Administrator's website or publication notice."  (Order at 7.)

18    **B.    Objection Motion**

19        1.    *Sharp fails to demonstrate excusable neglect.*

20    For the same reasons this Court denied Sharp's motion for an extension of time to opt out,
21 Sharp's Objection Motion should be denied as well.  As Sharp acknowledges, an extension of time
22 after a deadline has passed is only permitted where a party has failed to act for reasons of excusable
23 neglect.  (Objection Mot. at 1 (citing *Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship*, 507 U.S.
24 380, 395 (1993)).)  "In determining whether the parties have shown excusable neglect, the Court
25 considers four factors (the "*Pioneer* factors"): (1) the danger of prejudice to the nonmoving parties,
26 (2) the length of delay, (3) the reason for the delay, and (4) whether the movant acted in good faith."
27 (Order at 4.)

28

1   Sharp's motion does not argue that *any* of the *Pioneer* factors weigh in its favor, with the exception of good faith. On that basis alone, Sharp's motion should be denied.[2] Had Sharp's motion addressed the correct standard, the *Pioneer* factors weigh heavily against granting Sharp's motion.

First, the danger of prejudice to the nonmoving parties is great. The DPPs and the Hitachi Defendants engaged in lengthy and arduous negotiations to arrive at the proposed settlement. Allowing Sharp to raise objections ***the day before*** the final fairness hearing raises the dangerous possibility of derailing this heavily negotiated settlement, thereby injuring the DPP class members by depriving them of the proceeds of the settlement and Hitachi by depriving it of the certainty of settlement.

Second, the length of delay weighs against Sharp. In denying Sharp's motion for an extension of time to opt out, this Court rejected Sharp's characterization of its twenty-six day delay as "de minimis" and found the length of delay weighed against Sharp. (Order at 7.) Here, the delay between the deadline to object and Sharp's motion to extend time is ten weeks (seventy days), almost ***three times as long***.

Third, this Court has already ruled the reason for Sharp's delay in responding to the notice was inexcusable neglect. (Order at 4.) Sharp's argument that it "objected as soon as it practically could" is simply not true. (Objection Mot. at 2.) As noted above, Sharp admits it received the notice and cannot offer any explanation for its failure to meet the deadline other than inadvertence and miscommunication. These are insufficient excuses. *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2009 WL 2447802, at *2 (N.D. Cal. Aug. 7, 2009); *see also Pioneer*, 507 U.S. at 392. Moreover, Sharp could have filed a conditional objection immediately after it was notified by DPP class counsel on June 26 that it had failed to timely opt out of the settlement, after it was informed by opposing counsel of their position on Sharp's untimely opt-out, or when it moved for an order enlarging the time to opt out. Sharp chose to do none of these.

---

[2] Instead, Sharp's motion only addresses the factors required in a declaration that accompanies a motion to enlarge time. N.D. Cal. LR 6-3(a) ("A motion to enlarge or shorten time may be no more than 5 pages in length and must be accompanied by a proposed order and by a declaration that [list of requirements].")

1    Nothing in Sharp's argument changes the *Pioneer* analysis this Court has already conducted:
2 Sharp's response to the notice to object (contained in the same document as the notice to opt out)
3 was inexcusable neglect.

DATED:  August 21, 2014

Respectfully submitted,

KIRKLAND & ELLIS LLP


*/s/ Eliot A. Adelson*
Eliot A. Adelson (State Bar No. 205284)
James Maxwell Cooper (State Bar No. 284054)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: eadelson@kirkland.com
Email: max.cooper@kirkland.com

James H. Mutchnik, P.C. (*pro hac vice*)
Kate Wheaton (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: jmutchnik@kirkland.com
Email: kate.wheaton@kirkland.com

Attorneys for Defendants,
HITACHI, LTD., HITACHI DISPLAYS, LTD. (n/k/a JAPAN DISPLAY INC.), HITACHI AMERICA, LTD., HITACHI ASIA, LTD., AND HITACHI ELECTRONIC DEVICES (USA), INC.