Pages 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAMUEL CONTI

In re: CATHODE RAY TUBE (CRT)    )  Case No. 07-cv-5944 SC
ANTITRUST LITIGATION          )
_____)  MDL No. 1917

                               San Francisco, California
                               Friday, August 22, 2014

## TRANSCRIPT OF PROCEEDINGS

**APPEARANCES**:

| | |
|---|---|
| **For Direct Purchaser Plaintiffs:** | Saveri & Saveri, Inc.<br>706 Sansome Street<br>San Francisco, California 94111<br>By:  **Guido Saveri, Esquire**<br>      **Richard Saveri, Esquire**<br>      **Geoffrey Conrad Rushing, Esquire** |
| | Pearson Simon & Warshaw, LLP<br>44 Montgomery Street, Suite 2450<br>San Francisco, California 94104<br>By:  **Bruce Lee Simon, Esquire** |
| | Cotchett Pitre & McCarthy LLP<br>840 Malcolm Road, Suite 200<br>Burlingame, California 94010<br>By:  **Steven Noel Williams, Esquire** |
| | Hausfeld LLP<br>44 Montgomery Street, Suite 3400<br>San Francisco, California 94104<br>By:  **Michael Paul Lehmann, Esquire** |

(Appearances continued on next page)

**Reported By:**   **Katherine Powell Sullivan, CSR #5812, RPR, CRR**
                 **Official Reporter - U.S. District Court**

**APPEARANCES (CONTINUED):**

| | |
|---|---|
| **For Plaintiff**<br>**Sharp Electronics:** | **Paul, Weiss, Rifkind, Wharton &**<br> **Garrison LLP**<br>2001 K Street NW<br>Washington, DC 20006-1047 |
| **By:** | **Kenneth A. Gallo, Esquire** |

| | |
|---|---|
| **For Plaintiff**<br>**Orion Home Systems:** | Gross Belsky Alonso LLP<br>One Sansome Street, Suite 3670<br>San Francisco, California 94104 |
| **By:** | **Monique Alonso, Esquire** |

| | |
|---|---|
| **For Defendant**<br>**Samsung SDI:** | **Sheppard Mullin Richter & Hampton LLP**<br>Four Embarcadero Center, 17th Floor<br>San Francisco, California 94111-4106 |
| **By:** | **Michael W. Scarborough, Esquire**<br>**Gary L. Halling, Esquire** |

| | |
|---|---|
| **For Defendant**<br>**Hitachi:** | Kirkland & Ellis LLP<br>555 California Street, 27th Floor<br>San Francisco, CA 94104 |
| **By:** | **Eliot A. Adelson, Esquire** |

1               P R O C E E D I N G S

2  **AUGUST 22, 2014**                              **10:03 A.M.**

3           **THE CLERK:**  The next matter is MDL No. 1917.  That's

4  civil case 07-5944, the In Re Cathode Ray Tube Antitrust

5  Litigation.

6       Counsel, please state your appearance.

7           **MR. GUIDO SAVERI:**  Good morning, Your Honor.  Guido

8  Saveri for the direct purchaser plaintiffs.

9           **THE CLERK:**  Make sure you move that microphone so we

10 can hear you.

11          **MR. GUIDO SAVERI:**  Guido Saveri for the direct

12 purchaser plaintiffs, for the plaintiffs.

13          **MR. RICHARD SAVERI:**  Good morning, Your Honor.

14 Rick Saveri on behalf of the direct purchaser class plaintiffs.

15      Thank you.

16          **MR. SIMON:**  Good morning, Your Honor.  Bruce Simon on

17 behalf of direct purchasers.

18          **MR. WILLIAMS:**  Good morning, Your Honor.

19 Steve Williams on behalf of the direct purchasers.

20          **MR. LEHMANN:**  Good morning, Your Honor.

21 Michael Lehmann on behalf of the direct purchase plaintiffs.

22          **MR. RUSHING:**  Good morning, Your Honor.  Geoffrey

23 Rushing on behalf of the direct purchaser plaintiffs.

24          **MR. GALLO:**  Good morning, Your Honor.  Ken Gallo on

25 behalf of Sharp Corporation from Paul, Weiss.

1          **MR. SCARBOROUGH:**  Good morning, Your Honor.  Mike

2    Scarborough on behalf of the Samsung SDI defendants.

3          **MR. HALLING:**  Good morning.  Gary Halling on behalf of

4    Samsung SDI.

5          **MR. ADELSON:**  Good morning.  Eliot Adelson, of

6    Kirkland & Ellis, on behalf of the Hitachi defendants.

7          **MS. ALONSO:**  Good morning, Your Honor.

8    Monique Alonso, Gross Belsky Alonso, for the indirect.

9          **THE COURT:**  Is something going to happen?

10         **MR. RICHARD SAVERI:**  Good morning, Your Honor.

11   Rick Saveri.  May it please the Court, Rick Saveri on behalf of

12   the direct purchaser class plaintiffs.

13       We're here on plaintiff's motion for final approval of the

14   settlement.

15         **THE COURT:**  Any objection?

16         **MR. RICHARD SAVERI:**  There are no objections, Your

17   Honor.

18         **MR. GALLO:**  May I be heard, Your Honor?

19         **THE COURT:**  Yes.

20         **MR. GALLO:**  Thank you, Your Honor.

21       I am Ken Gallo, from Paul, Weiss, on behalf of the Sharp

22   Corporation.

23       The Court, I hope, is aware that yesterday we filed two

24   motions.  A motion for leave for reconsideration on our motion

25   to opt out, to have extra time to opt out.  And we filed a

1  motion -- if that motion were to be denied, we filed a motion

2  for leave to be heard on objections.

3      And I received a telephone message, from your court clerk,

4  indicating that the Court was inclined to allow us to be heard

5  on those papers.

6      If that's true --

7          **THE COURT:**  Yes.

8          **MR. GALLO:**  -- I, of course, welcome the opportunity

9  to be heard.

10          **THE COURT:**  Yes.  Proceed.

11          **MR. GALLO:**  Thank you, Your Honor.  Let me grab my

12  notes, and I'll be right here.

13          **THE COURT:**  Sure.

14          **MR. GALLO:**  Your Honor, I appreciate the opportunity

15  to be heard this morning.  May I address, first, the motion for

16  leave to file reconsideration?

17          **THE COURT:**  Sure.

18          **MR. GALLO:**  Thank you, Your Honor.

19      We filed a motion for extra time to opt out.  The Court

20  denied that motion on Wednesday.  Yesterday we asked that that

21  be reconsidered.

22      We are here most fundamentally, Your Honor, because we

23  made a mistake.  I made a mistake.  My team made a mistake.  My

24  client made a mistake.  It's undisputed that we filed our

25  notice to opt out two weeks late.

```
 1        And what I am really asking, at the bottom line, is that
 2   while it be recognized that we made a mistake and while I will
 3   apologize to the Court for the fact that that occurred, that
 4   $110 million claim shouldn't be released for that reason.  And
 5   that's what the effect would be if we were part of this class
 6   and if we all -- if our objection was also denied.
 7        It's undisputed here that we filed two weeks late.  But
 8   it's also undisputed, it's also undisputed that we acted in
 9   good faith.  It's also undisputed that there's no prejudice to
10   the class if we're permitted to opt out; that there's no
11   prejudice to the defendants if we're permitted to opt out.
12        It's undisputed that we were on the very first opt-out
13   list that the defendants got.  It's undisputed we were on the
14   very first opt-out list filed with the Court.
15        We've been litigating against these defendants very
16   actively since March of 2013.  We were litigating during the
17   two-week period where we were late in filing the opt-out
18   notice.  We were in depositions.  We had filed an amended
19   complaint, it so happened, during that two-week period.  We
20   actually had started settlement discussions, individual
21   settlement discussions, with Hitachi before that two-week
22   period.
23        Nothing changed during that two-week period that
24   prejudiced anyone on the defense side of the table or the
25   class.
```

1        When we filed our motion for leave to enlarge the time to

2   opt out, the class counsel supported our motion because they

3   thought it was in the interest of the class that we be

4   permitted to opt out.

5        One of the defendants, SDI, did not oppose our motion.

6   Hitachi did oppose our motion.  And, as I said, if we're not

7   permitted to opt out our client would lose a $110 million

8   damage claim.

9        The specifics of our motion for leave to -- for

10  reconsideration and our request that you reconsider really fall

11  into three buckets.  And I'll try to cover them very quickly

12  because I have no doubt that the Court is familiar with the

13  arguments that we're making.  They go to the reasons that Your

14  Honor ruled against us.

15       You first said that we had provided only conclusory

16  evidence of prejudice, that we had not provided sufficient

17  specifics of prejudice.

18       In our motion papers and in the papers that the class

19  counsel filed, just to recap, what we had said, in essence, was

20  the claims work that we had, that would be released under the

21  settlement, were enormous claims.  We were characterized as a

22  significant purchaser.  It was said, more concretely, Dell had

23  just something in excess of $1.6 billion in purchases, and that

24  Dell and Sharp together had multi-billion dollars in purchases.

25  That's what was before the Court.

1          One might have inferred from that -- but we didn't say it

2     expressly, and I'm not going to pretend we did -- one might

3     have inferred from that that Sharp had at least around three or

4     four hundred million dollars in purchases, from what was before

5     the Court.

6          We have now, in our motion for reconsideration, made that

7     more concrete.  We have told the Court, concretely, we had

8     $334 million in purchases.  We have told the Court what our

9     overcharge expert says the overcharge is.  And we have

10    quantified for the Court that the claim that would be released

11    would be a $109.8 million treble damage claim.

12         So I submit it is real and concrete prejudice.  It also is

13    real and concrete prejudice that class counsel was -- and I'm

14    not suggesting in any way they did anything wrong.  I think

15    they acted completely appropriately.  There's a suggestion in

16    some papers filed last night that I was suggesting they had not

17    discharged their duty to Sharp.  I didn't mean to suggest that.

18         They have said, very clearly, that they were not

19    negotiating on behalf of Sharp because they understood Sharp

20    would opt out; that they didn't consider Sharp's commerce when

21    they reached the settlement because they understood Sharp would

22    opt out; and they didn't reach a settlement on behalf of Sharp

23    when they reached the class settlement.

24         That's all correct.  And I did not mean to suggest they

25    had not performed a duty.  I just mean to suggest that because

1  class counsel understood it was our intent to litigate, and

2  everybody in the room understood it was our intent to litigate,

3  that our interests weren't represented when that settlement was

4  reached.

5      The main response that were filed in papers last night, by

6  SDI and by Hitachi, are that the Court is not permitted to

7  consider the new facts that we put in, in our motion to

8  reconsider yesterday.

9      And I would suggest two things:  One is, Your Honor, this

10 may be a little bit of word playing but, I guess, to some

11 degree, that's what lawyers do.  I don't really believe there

12 are, quote, new facts.  I think they are more clear, they are

13 more concrete, they are more precise facts which give the Court

14 a basis to find that there is real prejudice because of our

15 $108 million claim.

16     As I said, from the record, one might have inferred that

17 we had purchases in over -- in excess of $300 million.  A

18 damage claim that was very substantial.  We characterized it as

19 very substantial.  We've now said the number.  And I think it

20 is well within the Court's discretion to recognize that we have

21 now quantified it, and not cause a $110 million claim to be

22 released as part of this settlement.

23     And, at basis, my argument is pretty simple, that we made

24 an administrative mistake, and we are asking the Court to not

25 cause a $110 million claim to be dismissed.

1         The second thing Your Honor said, in dismissing our

2    claims, was that we didn't sufficiently explain why we missed

3    the deadline by 14 days in filing our opt-out, in filing our

4    opt-out application.

5         And what we had said in our opening papers, in essence,

6    was that one of our two clients got the notice; the other

7    client did not have a record of getting it; and the notice

8    wasn't forwarded to outside counsel.  And, as a result of that,

9    we missed the deadline.

10         What we have done in our -- we also say, by the way, that

11    we had opted out of five prior settlements in this matter.

12    What we have now explained further in our papers is that we had

13    a process in place, in consultation with the client, that the

14    client got the opt-out notice; they processed it internally in

15    their legal department; and that they forwarded it to outside

16    counsel.  That's what had happened.  It had happened five other

17    times in this matter.  It had happened successfully five other

18    times in this matter.

19         In this case the legal assistant at the client, charged

20    with processing it and forwarding it to us, did not do it.  We

21    haven't been able to ascertain precisely why.

22         We didn't find the notice until after the issue arose.  We

23    realized we were late.  We asked the client to go back and see

24    if it had received a notice.  They found it in the file.  But

25    they found that it had not been processed in the normal course.

1       Now, my law firm might have also affirmatively caught the

2    issue.  And we have systems in place to do that as well.  I

3    work with a partner who I have worked with for years who is in

4    charge with running the case day-to-day.  We meet every client

5    in this case.  We have a legal assistant who keeps everything

6    on the calendar.  We have a system where all lawyers put things

7    on the calendar.

8       We didn't get the notice from the client and we didn't --

9    and we missed the deadline.  We might have caught it,

10   independent of getting the notice from the client, but we

11   didn't do it.  And for that I apologize to the Court.  But it

12   was a good faith administrative mistake.

13      Nobody is suggesting that we did this to benefit somehow.

14   We got nothing out of missing this deadline other than me

15   standing here today and us imposing on the Court's time.

16   Nobody is suggesting we're acting in bad faith.

17      The last point -- and then I'll stop -- is Your Honor was

18   concerned that we hadn't sufficiently explained why we didn't

19   go to counsel for Hitachi and counsel for SDI for 12 days after

20   we realized we had missed the deadline.

21      We had explained previously that we were consulting with

22   our client, we were consulting with Dell, who was in the same

23   boat, and we were doing legal research and trying to figure out

24   what to do about the situation.  I thought that was a

25   sufficient explanation.  Your Honor obviously did not.

```
 1         I will add a couple of things.

 2         Dell -- for good or bad, Dell took exactly the same period

 3  of time.  Twelve days.  And Your Honor, respectfully, did not

 4  deny their application.  So I assume the 12 days, in and of

 5  itself, isn't a dispositive fact.

 6         Second, I would point out nothing changed during that

 7  12-day period.  Nothing changed.  We were litigating with these

 8  gentlemen over here, vigorously, just like we have been for a

 9  year and a half.

10         Third, I would add that we -- this was -- we consulted

11  with the client repeatedly about the best way to proceed.  And

12  if it matters to the Court, and I'm not sure it does, but if it

13  matters to the Court it was really seven business days, over

14  the Fourth of July weekend.  I don't know that that should

15  matter, seven versus 12 but, in fact, that happens to be the

16  truth.

17         For example, in the SRAM case, that Your Honor relied on

18  in your order denying our motion, the person in my position

19  didn't even tell class counsel for six weeks.

20         Class counsel and we discussed this fact the very first

21  day when we got Sharp's name on the list that was distributed

22  to the -- filed with the Court and served on the defendants.

23         So in SRAM there was a six-week delay on the plaintiff's

24  side of the case.  And in SRAM Intel, the party that was asking

25  for leave to opt out, was not actively litigating.  Nobody --
```

13

1  people didn't know, didn't assume, like everybody did know here

2  that Sharp was actively litigating.

3      So, Your Honor, I will conclude, I will say to the Court,

4  you know, I've been practicing law for about 30 years.  I'm a

5  senior partner at a very proud law firm.  To have to be arguing

6  this motion in front of you is one of the worst days of my

7  professional career.  I take this extremely seriously.

8  Extremely seriously.

9      We try to operate at Paul, Weiss at the very highest

10  levels of the legal profession.  And we may be -- our client

11  made a mistake, but maybe we could have prevented it if I had

12  done a better job.  And I apologize to the Court for that.

13      THE COURT:  I read someplace in the pleadings that

14  seven notices were sent out to your clients.  Is that correct,

15  seven?  Six?  Seven?

16      MR. GALLO:  I don't -- Your Honor, I'm not --

17      THE COURT:  It wasn't just one notice.  It was more

18  than one notice that was sent out.

19      What I'm trying to get at, were they sent out to your

20  clients and then your clients funneled them all in to you?  Is

21  that what happened?

22      MR. GALLO:  I must admit, I must confess, I'm not sure

23  what the reference to seven is.  Let me try to be as clear as I

24  can about answering this question.

25      THE COURT:  More than one notice was sent out.  Is

1    that true?

2            MR. GALLO:  Well, I'm not aware of that being true

3    with respect to this settlement.  I'm aware of only one

4    notice --

5            THE COURT:  No, the opt-out.  I'm talking about

6    opt-out.

7            MR. GALLO:  I'm aware -- let me -- I will double-check

8    this because I, obviously, don't want to compound anything by

9    making a misstatement.

10        But here's what I believe to be true, here's what I

11   believe to be true:  That SEC, Sharp Electronics Corporation,

12   received a notice of this settlement, and that notice was not

13   forwarded to us.

14        What I also believe to be true is that there were five

15   prior settlements in these matters which we did opt out of.

16   And those went to our client.  And we successfully -- they were

17   successfully processed and forwarded to us.

18        So I don't know if the reference to seven refers to the

19   prior settlements.  That's what I'm not --

20            THE COURT:  Refers to the notice to either opt out or

21   opt in.

22            MR. GALLO:  Right, Your Honor.

23            THE COURT:  Stay in or opt out.

24            MR. GALLO:  What I'm not clear about --

25            THE COURT:  You're not aware of --

1          **MR. GALLO:**  What I'm not clear about is whether you

2     are referring to it with respect to this single settlement,

3     because there were prior settlements that we opted out of.

4     Five of them.  That's just not what I'm clear about.

5          **THE COURT:**  Okay.  Is that --

6          **MR. GALLO:**  Our system worked the first five times, is

7     what I'm trying to say.  And it didn't work this time.

8          So, Your Honor, you know, I guess I will leave it with

9     this:  I ask the Court -- I understand the Court's frustration.

10    And I understand that we have inconvenienced the Court.  But I

11    ask the Court not to release --

12         **THE COURT:**  Don't worry about inconvenience.  I get

13    paid by the year; not by the case.

14        (Laughter)

15         **MR. GALLO:**  I understand.  But you don't need

16    unnecessary papers and pleadings.

17         **THE COURT:**  Part of the job.

18         **MR. GALLO:**  I ask the Court, Your Honor, blame me and

19    admonish me.  Impose costs on me.  Please don't release a

20    $110 million claim because somebody made an administrative

21    mistake that didn't cause any prejudice to the class or the

22    defendants.  That's what I'm asking.

23        And I believe we have perfected the record to give the

24    Court the concrete evidence of prejudice to Sharp that it needs

25    to allow us to opt out of this proceeding.

1    I really appreciate being heard on this.  Thank you very

2   much.

3           **THE COURT:**  Whatever decision I make, I make it on the

4   law.

5           **MR. GALLO:**  I understand.

6           **THE COURT:**  Not on sympathy, or any other thing, or

7   excuse or not excuse, or what have you.

8    I have to follow the law.  And whatever the law is, if the

9   law's on your side, I'll follow the law.  If it's not on your

10  side I'll rule against you.

11          **MR. GALLO:**  I appreciate that, Your Honor.  I guess

12  what I'm trying to articulate is that under the *Pioneer* case

13  out of the Supreme Court, I believe, it is fair to say that

14  where there is a mistake, an inadvertent mistake made in good

15  faith -- which is what occurred here, undisputedly -- that

16  doesn't prejudice the defendants and they have -- in our

17  original motion papers they made no showing of prejudice, and

18  the class said it didn't prejudice the class, and they actually

19  supported our motion, and where a $110 million claim would be

20  dismissed, that's the prejudice to us, I think on those facts

21  under *Pioneer* we fit well within the standard that the law says

22  that we should be permitted leave to opt out.  We should be

23  permitted leave to opt out even though we filed two weeks late,

24  because it's a balancing test considering the factors of

25  whether it was good faith or not and weighing the prejudice.

1     And I submit to you that under the governing law the

2  proper result is that our client's claim not be released, not

3  be part of this settlement.

4     Thank you, Your Honor.

5     **MR. ADELSON:**  Good morning, Your Honor.  Eliot Adelson

6  of Kirkland & Ellis for the Hitachi defendants.

7     And it's a good place to start with the law.

8     **THE CLERK:**  Move the microphone.

9     **MR. ADELSON:**  You said you were going to follow the

10  law because the law that rules the motion before you today,

11  which is a motion for leave to file for reconsideration, is

12  Local Rule 7-9.  And Local Rule 7-9 gives the Court the only

13  circumstances under which it's appropriate for a motion for

14  reconsideration to be heard.

15     The first two are reasons that Sharp did not argue.  What

16  they have argued in their papers is the third reason.  And let

17  me read that to you, if I may.

18     The third reason is a manifest failure by the Court to

19  consider material facts or dispositive legal arguments which

20  were presented to the Court before such interlocutory order.

21     With that standard and with the argument you just heard,

22  that is the beginning and the end of this dispute.

23     We just heard from Mr. Gallo that they are not arguing

24  that there are new facts before the Court.  They are not

25  arguing that they are presenting things that they have learned

```
 1  since the order has come out.  They're trying to clarify what
 2  they really meant.  They're trying to add to what they wanted
 3  to say before.  They had that opportunity, and they didn't use
 4  it.  And the Court has already ruled on it.
 5       And so unless the Court finds that there were new facts
 6  that have happened since the order came out yesterday the
 7  motion for leave should be denied.  That is the standard that
 8  we're dealing with here today.
 9       What we heard a lot about was the other standard from what
10  the original motion was, which was to enlarge the opt-out
11  deadline.  That's where the Pioneer factors come in.  They do
12  not come in with the motion that's before the Court today.
13       But even addressing the Pioneer factors, as the Court did
14  in its opinion, its order on this motion, we haven't learned
15  anything new.  We already knew that they missed the deadline.
16  We already knew that they had received notice.  We already knew
17  that they didn't contact opposing counsel for 12 days.
18       There's nothing new in these papers that helps them get
19  around the Court's order.  The Court looked at the evidence
20  presented and made its decision.
21       And addressing the point that Your Honor made about the
22  notices that were sent, in our opposition to the original
23  motion we submitted the declaration from Ross Murray of
24  Gilardi & Company.  And that is document 2713-1.  I believe
25  that's what Your Honor was referring to where he identifies
```

1  eight Sharp entities that were provided with the notice.

2      So what we heard about today was not the factors for leave

3  to file a motion for reconsideration.  We heard about prejudice

4  and hardship on their clients, and mistakes.

5      But even looking at those factors from *Pioneer*, there's no

6  change in what has already been presented to the Court.

7      First, there's no evidence of Sharp being prejudiced here.

8  We keep hearing about this $110 million claim that's being

9  released.  Sharp has pled joint and several liability.  They

10 are not releasing a claim against any other defendants except

11 for Samsung SDI and Hitachi.

12     And under their theory of the case, and under the papers

13 submitted by the direct purchaser plaintiffs' counsel, Sharp

14 can continue to pursue damages for the purchases made from

15 Samsung SDI and Hitachi against other defendants.

16     They're not giving anything up here.  In fact, they're

17 getting money.  According to their calculation, they're getting

18 $1.3 million from us to settle out our clients.  And they have

19 the right to continue with joint and several liability against

20 everybody else.

21     They also ignore the litigation risk that they face.  And

22 they face a significant litigation risk.

23     Now, all of the papers we see are $110 million given up;

24 $110 million given up.  Nowhere do they acknowledge -- as the

25 DPPs do and as we do -- that there's risk that they get zero;

1   that they lose; that they litigate for another year or two and

2   get nothing out of it.  So they're guaranteed money out of this

3   payment but don't acknowledge that they have risk.

4       And we have other factors that the DPPs have put into

5   their motion for approval of the final settlement, which is

6   that the class payment, according to Sharp, recovery is

7   .39 percent of the total purchases by the class.  Which,

8   according to the DPP's papers, falls right in line in a range

9   of cases that other courts have already approved.

10      .39 percent, which is Sharp's calculation, is higher than

11  others that are cited by the DPP, which are .1 percent,

12  .1 percent, .2 percent.  It's double or quadruple what other

13  courts have found to be appropriate.  So Sharp's payout is not

14  inappropriate.  It's perfectly legitimate.

15      We also have other factors that the Court had looked at

16  and rejected, which is that they acted diligently.  And we have

17  the same argument rehashed by them.  Instead of asking for

18  reconsideration, they are just rearguing:  We put it aside; we

19  made a mistake.  Nothing new though.  Nothing new that the

20  Court hasn't heard before.

21      And there is the good faith.  The Court has found that we

22  did not argue they didn't act in good faith.  But, as the Court

23  acknowledged in its order and as we cited to in our papers,

24  that is not a dispositive issue.  The other factors, as the

25  Court acknowledged in the papers and relied upon, weigh more

1  heavily.

2       So getting back to the main point, today's motion is not a

3  motion for reconsideration.  It's for leave to file a motion

4  for reconsideration.  That standard has not been met.  If you

5  even get into the factors about whether or not they have met

6  the original burden, those standards have not been met either.

7       Thank you.

8           MR. GALLO:  May I be heard very briefly?

9           THE COURT:  Surely.

10           MR. GALLO:  Thank you, Your Honor.

11       Your Honor, respectfully, I think we do meet the standard,

12  the third standard, that material facts are being presented to

13  the Court that weren't considered, because we had articulated

14  an argument for prejudice.  We had said we -- we had

15  characterized the claims as large.  As I said, we had permitted

16  the Court if it had -- we had allowed an inference to be drawn.

17  I'm not suggesting the Court should have or did draw the

18  inference.

19       What we have done -- because you said our showing of

20  prejudice was conclusory -- is we have provided specific and

21  concrete facts that permit reconsideration.  And that's exactly

22  what we've done.  Whether they are characterized as new facts

23  or old facts they relate to the same point, obviously.  The

24  issue that you articulated in your opinion was we hadn't

25  provided anything concrete and specific enough.  And we have

1   done that.

2       With respect to the fact that the claims administrator had

3   eight notices sent, I now understand the reference.  There are

4   only two Sharp plaintiffs here.  And that's why I focused on

5   the two that are plaintiffs.

6       Standing before you today I don't know about other Sharp

7   entities that may or may not have received notices, but they

8   are not plaintiffs in this case.

9       The notion that we're not hurt because we have joint and

10  several liability, I mean, in the real world that's just not

11  true.  It's not true from a settlement perspective when we're

12  negotiating, and it's not true if this case is in front of a

13  jury and we have one defendant in the room.  And we don't, for

14  example, have SDI who's one of the two defendants here who has

15  actually pled guilty in this field.

16      There is real concrete prejudice to these defendants, to

17  our claims against these defendants being released.  A

18  $1.3 million settlement on our facts, with a defendant that's

19  pled guilty, we believe, is a real concrete injury to our

20  client, compared to our opportunity to either litigate on the

21  merits or reach a settlement on the merits where our commerce

22  is actually considered as part of the settlement discussions,

23  which it admittedly was not done here.

24      And, finally, I would conclude there is no prejudice to

25  the defendants.  Nobody has articulated it.  I'm reluctant to

```
 1  call it a windfall because we come here in a compromised
 2  position.
 3       But these gentlemen on the other side of the room did not
 4  expect to have Sharp's claim released when they entered this
 5  settlement with the class.  And they would be getting something
 6  they didn't expect.  And it would do significant prejudice to
 7  our client.
 8       I appreciate the opportunity, Your Honor.  Thank you.
 9       MR. RICHARD SAVERI:  May it please the Court, Rick
10  Saveri on behalf of the direct purchaser class plaintiffs.
11       Very briefly, Your Honor.  It was always our position that
12  they should be -- that Sharp should have opted out of the
13  class, and that I feel that we're here caught in the middle
14  between three very sophisticated electronic corporations.  But
15  we've read your opinion.  And if they are in the class it
16  doesn't change that the settlement should be approved and that
17  judgment should be entered.
18       Thank you, Your Honor.
19       THE COURT:  Well, I want to say one thing.  First of
20  all, the comments I make now have nothing to do with how I'm
21  going to rule on the case.  But assuming arguendo that I rule
22  for the -- continue to rule that Sharp is in the class, I
23  looked over some of the notices that you want to send.
24       MR. RICHARD SAVERI:  Correct, Your Honor.
25       THE COURT:  Send out.  And I don't want the other side
```

1  to be shaking here, to think I'm going to rule for your side,

2  but I don't know yet how I'm going to rule.

3       And what I don't like about all class actions is the fact

4  that they seem to hide what the total settlement is, and they

5  seem to hide what the attorney fees are going to be --

6            **MR. RICHARD SAVERI:**  Okay, Your Honor.

7            **THE COURT:**  -- until the very end.

8       So if I rule in your favor, I want you to modify the class

9  action and put in bold print what the attorneys are asking for.

10 Not that you're going to get it.  But what you're asking for.

11 So the class should know that.

12      Because sometimes I get letters from people who say, We

13 don't know what these attorneys are asking for.  We don't know

14 how much they're asking for.  And we may complain about that

15 they're getting $50 million and I'm getting, you know, five

16 coupons.

17      That's the point that I'm getting at.

18           **MR. RICHARD SAVERI:**  May I address that, Your Honor?

19           **THE COURT:**  Yes.

20           **MR. RICHARD SAVERI:**  Just so we're clear on the

21 process that we were requesting that the Court enter here,

22 which was that we send out notice, the request for attorneys'

23 fees would be on the website, the full motion.

24           **THE COURT:**  I don't like websites, to tell you the

25 truth.  Maybe I'm too old, but I don't like websites.  I like

1  plain, simple English.

2      Put in the notice how much you are asking for.

3          MR. RICHARD SAVERI:  Exactly.

4          THE COURT:  No hidden secret for that.  You're going

5  to ask me for it, so you might tell them what you're going to

6  ask for.

7          MR. RICHARD SAVERI:  We'll put that in there.

8          THE COURT:  I want that.  Also, I'll change some of

9  the dates because the October date is not acceptable.  If I

10 rule in your favor.

11         MR. RICHARD SAVERI:  Thank you, Your Honor.

12         THE COURT:  Okay.  Anything further?

13         MR. RICHARD SAVERI:  Nothing further from the

14 plaintiffs, Your Honor.

15         THE COURT:  Well, I tell you this:  I could appreciate

16 the arguments here today, having been involved with the law

17 over half a century and having practiced for 20 years.  I know

18 that deadlines of all sorts, including statute of limitations,

19 are the dread of all practicing attorneys.  If you miss a

20 deadline, you miss the deadline.  And that's the problem that I

21 have facing it.

22     But there are circumstances in which there is a

23 deadline -- for instance, estoppel comes into play in many of

24 these situations -- where the deadline is really not a

25 deadline.  It's some legitimate excuse for extending the

```
1  deadline.

2       So I've listened to your arguments.  And I'm going to take

3  it under consideration and submit it thereby.  So you'll hear

4  from me in a few days, and I'll tell you what my decision is.

5       (Counsel thank the Court.)

6       (At 10:37 a.m. the proceedings were adjourned.)

7                             -   -   -   -

8

9

10                    CERTIFICATE OF REPORTER

11       I certify that the foregoing is a correct transcript

12  from the record of proceedings in the above-entitled matter.

13

14  DATE:   Monday, August 25, 2014

15

16

17

18  _____

19       Katherine Powell Sullivan, CSR #5812, RMR, CRR
                  U.S. Court Reporter

20

21

22

23

24

25
```