1  DAVID L. YOHAI (*pro hac vice*)
   ADAM C. HEMLOCK (*pro hac vice*)
2  DAVID E. YOLKUT (*pro hac vice*)
   WEIL, GOTSHAL & MANGES LLP
3  767 Fifth Avenue
   New York, New York 10153-0119
4  Telephone: (212) 310-8000
   Facsimile: (212) 310-8007
5  E-mail: adam.hemlock@weil.com

6  BAMBO OBARO (267683)
   WEIL, GOTSHAL & MANGES LLP
7  201 Redwood Shores Parkway
   Redwood Shores, California 94065-1175
8  Telephone: (650) 802-3000
   Facsimile: (650) 802-3100
9  E-mail: bambo.obaro@weil.com

10 JEFFREY L. KESSLER (*pro hac vice*)
   WINSTON & STRAWN LLP
11 200 Park Avenue
   New York, New York 10166-4193
12 Telephone: (212) 294-6700
   Facsimile: (212) 294-7400
13 E-mail: jkessler@winston.com

14 *Attorneys for Defendants Panasonic Corporation, Panasonic Corporation of North America, and MT Picture Display Co., Ltd. Additional attorneys in the signature page.*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master Case No. 3:07-cv-05944-SC |
| | MDL No. 1917 |
| This Document Relates to: | Individual Case No. 3:14-cv-02510 |
| *ViewSonic Corporation v. Chunghwa Picture Tubes, Ltd., et al.*, No. 3:14-cv-02510 | **PANASONIC DEFENDANTS' NOTICE OF MOTION, AND MOTION TO DISMISS AND TO COMPEL ARBITRATION** |
| | **Oral Argument Requested** |
| | Date: October 10, 2014<br>Time: 10:00 a.m.<br>Before: Hon. Samuel Conti |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

PANASONIC DEFENDANTS' MOTION TO DISMISS       MDL No. 1917
AND TO COMPEL ARBITRATION [REDACTED]          Case No. 3:14-cv-02510

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................2

I. INTRODUCTION ......................................................................................................2

II. STATEMENT OF THE ISSUE ..................................................................................3

III. FACTUAL BACKGROUND .....................................................................................3

    A. Procedural History .........................................................................................3

    B. ViewSonic Alleges a Conspiracy Involving The Panasonic Defendants ......3

    C. ███████████████████████████████████████ ........................................................4

IV. ARGUMENT ..............................................................................................................5

    A. Legal Standard ................................................................................................5

    B. ███████████████████████████████████████ .......................................................7

    C. ███████████████████████ ..............................................................................7

    D. All of ViewSonic's Claims as to Direct Purchases from the Panasonic Defendants Relate to and Connect with the Vendor Agreement ....................8

    E. ViewSonic Must Arbitrate Claims with All of The Panasonic Defendants..9

V. CONCLUSION..........................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
    622 F. Supp. 2d 825 (N.D. Cal. 2007) ..................................................................................9, 10

*In re Apple & AT&TM Antitrust Litig.*,
    826 F. Supp. 2d 1168 (N.D. Cal. Dec. 1, 2011) ...........................................................................11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ..................................................................................................8

*Estrella v. Freedom Fin.*,
    No. C 09-03156 SI, 2011 WL 2633643 (N.D. Cal. July 5, 2011) ..................................................6

*Fujian Pac. Elec. Co. Ltd. v. Bechtel Power Corp.*,
    No. C 04-3126 MHP, 2004 WL 2645974 (N.D. Cal. Nov. 19, 2004) ..........................................11

*Hansen v. KPMG, LLP, et. al.*,
    No. CV 04-10525-GLT, 2005 WL 6051705 (C.D. Cal. Mar. 29, 2005) ......................................10

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004) ..............................................................................................9, 10,11

*Just Film, Inc. v. Merch. Services, Inc.*,
    No. C 10–1993 CW, 2011 WL 3809908 (N.D. Cal. Aug. 29, 2011) ............................................11

*Mediterranean Enters., Inc., v. Ssangyong Corp.*,
    708 F.2d 1458 (9th Cir. 1983) ..................................................................................................8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*,
    473 U.S. 614 (1985) ..................................................................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .................................................................................................................5, 6

*Mundi v. Union Security Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009) ................................................................................................10

*Nagrampa v. MailCoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) ..................................................................................................6

*Rep. of Nicaragua v. Standard Fruit Co.*,
    937 F.2d 469 (9th Cir. 1991) ....................................................................................................6

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise*,
    239 F.2d 689 (4th Cir. 1956) ..................................................................................................7

*Simula, Inc. v. Autoliv, Inc.*,
    175, 716, 719-20 F.3d 7120 (9th Cir. 1999) ............................................................6, 8, 9

*St. Paul Marine & Fire Ins. Co. v. Courtney Enters., Inc.*,
    270 F.3d 621 (8th Cir. 2001) ...................................................................................................5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    M 07-1827 SI, Dkt. No. 3213 at 3 (N.D. Cal. Aug. 3, 2011) ...........................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) ......................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, 2014 WL 1395733 (N.D. Cal. Apr. 10, 2014)...........................6, 10

*ViewSonic Corporation v. Chunghwa Picture Tubes, Ltd. et al*,
    No. 3:14-cv-02510 (N.D. Cal. May 30, 2014), ECF No. 1................................................3

**Statutes**

9 U.S.C. § 2............................................................................................................................7, 8

9 U.S.C. § 3...............................................................................................................................1

9 U.S.C. § 4...............................................................................................................................6

9 U.S.C. § 206...........................................................................................................................6

Federal Arbitration Act ................................................................................................. *passim*

Sherman Act, 15 U.S.C. § 1.....................................................................................................3

**Other Authorities**

Rule 12(b)(6) of the Federal Rules of Civil Procedure..........................................................1

|   |   |
|---|---|
| 1 | **NOTICE OF MOTION AND MOTION** |
| 2 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: |
| 3 | PLEASE TAKE NOTICE that on October 10, 2014, at 10:00 a.m., or as soon thereafter as |

PLEASE TAKE NOTICE that on October 10, 2014, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Samuel Conti, Defendants Panasonic Corporation, Panasonic Corporation of North America, and MT Picture Display Co., Ltd. (the "Panasonic Defendants") will and hereby do move the Court pursuant to Chapter 1 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, and Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing ViewSonic Corporation's ("ViewSonic") claims that are based on its alleged purchases of CRT Finished Products from the Panasonic Defendants and compelling ViewSonic to arbitrate those claims. ViewSonic must be compelled to arbitrate its claims against the Panasonic Defendants because ViewSonic entered into a valid, written arbitration agreement with the Panasonic Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ Further, ViewSonic asserts that the non-signatory Panasonic Defendants were "agents" of the signatory and that all Panasonic Defendants are jointly and severally liable. Because ViewSonic's claims against the Panasonic Defendants are subject to arbitration, the Court should grant this motion, dismiss this action as it pertains to ViewSonic's CRT Finished Product purchases from the Panasonic Defendants, and compel ViewSonic to proceed with arbitration as to any such claims.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, and accompanying exhibits, argument of counsel, and such other matters as the Court may consider.

1

PANASONIC DEFENDANTS' MOTION TO DISMISS  
AND TO COMPEL ARBITRATION [REDACTED]    MDL No. 1917  
Case No. 3:14-cv-02510

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Defendants Panasonic Corporation, Panasonic Corporation of North America ("PNA"), and MT Picture Display Co., Ltd. ("MTPD") (collectively, the "Panasonic Defendants") move to compel arbitration of Plaintiff ViewSonic Corporation's ("ViewSonic") claims against the Panasonic Defendants. ViewSonic alleges that the Panasonic Defendants and others engaged in a conspiracy to fix the prices of cathode ray tubes ("CRTs"), which resulted in ViewSonic paying artificially-inflated prices for products containing CRTs ("CRT Finished Products"). ViewSonic, however, entered into an OEM supply agreement (the "OEM Agreement") with Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[1] Pursuant to the Federal Arbitration Act, this Court should enforce this arbitration agreement and compel ViewSonic to pursue any claims against the Panasonic Defendants in an arbitral forum.

Indeed, in other opt-out actions in this MDL where plaintiffs had similarly entered into supply agreements containing arbitration clauses, this Court has repeatedly dismissed plaintiffs' claims and ordered the parties to proceed in arbitration. *See infra* Section IV(a) (citing successful motions to compel arbitration brought by Toshiba Defendants and Philips Defendants against Costco Wholesale Corporation). Given ViewSonic's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the long-standing federal policy in support of arbitration, ViewSonic should likewise be ordered to arbitrate its claims based ViewSonic's CRT Finished Product purchases from the Panasonic Defendants, and its claims against the Panasonic Defendants should be dismissed accordingly.

---

[1] *See* Declaration of Adam C. Hemlock, dated August 25, 2014 ("Hemlock Decl."), Ex. A § 17.3.

## II. STATEMENT OF THE ISSUE

Whether the Court should dismiss ViewSonic's claims against the Panasonic Defendants based on ViewSonic's CRT Finished Product purchase from the Panasonic Defendants and compel ViewSonic to arbitrate its claims given that ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████

## III. FACTUAL BACKGROUND

### A. Procedural History

On May 30, 2014, ViewSonic filed a Complaint in the Northern District of California against the Panasonic Defendants and other defendants. *ViewSonic Corporation v. Chunghwa Picture Tubes, Ltd. et al,* No. 3:14-cv-02510 (N.D. Cal. May 30, 2014), ECF No. 1.[2] On June 6, 2014, ViewSonic produced documents and data that purport to be responsive to discovery requests propounded on other Direct Action Plaintiffs ("DAPs") in this case, including the OEM Agreement between ViewSonic and Panasonic Corporation. *See* Hemlock Decl. Ex. A. The OEM Agreement ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████

### B. ViewSonic Alleges a Conspiracy Involving The Panasonic Defendants

ViewSonic's Complaint asserts federal antitrust claims under Section 1 of the Sherman Act, 15 U.S.C. § 1, against the Panasonic Defendants and others based upon allegations of a CRT price-

---

[2] On August 13, 2014, this Court granted a stipulation between the Panasonic Defendants and ViewSonic in which the parties agreed that any applicable motions brought against other plaintiffs in the MDL to date are deemed to have been raised by the Panasonic Defendants against the ViewSonic Complaint, and the arguments raised in any such motions are preserved for appellate purposes as if they had been made by the Panasonic Defendants against the ViewSonic Complaint. ECF No. 2738.

3

fixing conspiracy that purportedly took place between March 1, 1995 and November 25, 2007 (the "Relevant Period"). Compl. ¶ 1. ViewSonic alleges that it purchased CRT Finished Products at artificially-inflated prices as a result of the alleged conspiracy. Compl. ¶¶ 2, 16, 213, 218. Among other things, ViewSonic asserts that "[e]ach Defendant acted as the principal, agent, or joint venturer of, or for, other Defendants," that "one or more employees or agents of entities within the corporate family engaged in conspiratorial meetings or communications on behalf of every company in that corporate family," and that meetings and agreements were reported to respective corporate families, thus "the entire corporate family was represented." *Id.* ¶¶ 65, 132. Although ViewSonic alleges that it was injured due to purchases of CRT Finished Products at artificially-inflated prices, the Complaint does not specify from whom, when, or where ViewSonic bought these products.

ViewSonic alleges that certain Panasonic entities participated in the purported conspiracy, including Panasonic Corporation, PNA (a wholly-owned subsidiary of Panasonic Corporation), and MTPD (a joint venture between Panasonic Corporation and Toshiba Corporation established in 2003).[3] *Id.* ¶¶ 26-29. Panasonic Corporation held a majority interest in MTPD (64.5 percent) up until 2007 when MTPD became a wholly-owned subsidiary of Panasonic Corporation. *Id.* ¶ 29.

C. ███████████████████████████████

ViewSonic's claims against the Panasonic Defendants fall squarely within the scope of the arbitration clause contained within the operative OEM Agreement, ███████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ *Id.* (emphasis added).

In relevant part, the OEM Agreement states as follows:

---

[3] Although ViewSonic alleges MTPD was formed in 2002, it was not formed until 2003.

4



*Id*. at Ex. A ▮▮▮   ViewSonic's claims in this action concern its alleged CRT Finished Product purchases from the Panasonic Defendants, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  There can therefore be no doubt that ViewSonic's claims against the Panasonic Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[4]

## IV.  ARGUMENT

### A.  Legal Standard

The Federal Arbitration Act ("FAA") establishes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). This Court has acknowledged this well-settled principle in granting motions to compel arbitration brought by other defendants in this case against other opt-out plaintiffs. *See* Order Granting in Part and Denying in Part the Philips Defendants' Motion to Compel Arbitration, ECF No. 2265 ("Philips Order") at 5 ("The FAA embodies a policy that generally favors arbitration agreements."); Order

---

[4] The Panasonic Defendants do not concede that they are liable for the sales of their unnamed and alleged affiliates and reserve all rights to contest that liability before the arbitrator or before this Court. Such liability is a question of fact for the arbitrator to decide. *See St. Paul Marine & Fire Ins. Co. v. Courtney Enters., Inc.,* 270 F.3d 621, 624 (8th Cir. 2001) ("[T]he court may not rule on the merits of any claim the parties have agreed to arbitrate.").

Adopting Special Master's Report and Recommendation Regarding Toshiba Defendants' Motion to Compel Arbitration, ECF No. 1543 ("Toshiba Order") at 4 (same). It is equally well-settled that agreements to arbitrate are to be rigorously enforced. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; Philips Order at 5 ("Federal courts must enforce arbitration agreements rigorously."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2014 WL 1395733, at *1 (N.D. Cal. Apr. 10, 2014) (same).

When considering a motion to compel arbitration, the Court must determine whether: (1) the contract containing the arbitration clause relates to a transaction involving interstate commerce; (2) a valid agreement to arbitrate exists; and (3) whether the dispute is encompassed within the scope of that agreement. *See Simula, Inc. v. Autoliv, Inc.*, 175, 716, 719-20 F.3d 7120 (9th Cir. 1999) (when considering motion to compel arbitration, "the district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms.") (citation omitted); *Rep. of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475-78 (9th Cir. 1991); *see also* 9 U.S.C. § 4; Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), 9 U.S.C. § 206. Where there is a valid, enforceable arbitration agreement, the Court *must* compel arbitration. *See* 9 U.S.C. § 4 ("[T]he court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."); Philips Order at 5 (policy of enforcing arbitration agreements and resolving ambiguities in favor of arbitration "appl[ies] with special force in the field of international commerce."); *Estrella v. Freedom Fin.*, No. C 09-03156 SI, 2011 WL 2633643, at *2 (N.D. Cal. July 5, 2011) ("Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration.") (citation omitted). Once a court determines that a controversy is arbitrable, it may do nothing further on the merits except to dismiss or stay proceedings pending arbitration. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276-77 (9th Cir. 2006) ("[i]f . . . the district court

6

decides that the arbitration agreement is valid and enforceable, then it should stay or dismiss the action pending arbitration proceedings to allow the arbitrator to decide the remaining claims . . .").

**B.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The FAA applies wherever an arbitration agreement is a "written provision in . . . a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. That commerce must involve either interstate or foreign commerce. *Id*. § 1. The OEM Agreement at issue here ▮▮▮▮▮▮ ▮▮▮▮▮▮ thus triggering the application of the FAA. Indeed, ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Commercial contracts between American and foreign corporations involve foreign "commerce." *Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise*, 239 F.2d 689, 693 (4th Cir. 1956). As ViewSonic itself alleges, Defendants sold CRTs in the United States in a "continuous and uninterrupted flow of interstate commerce and foreign commerce . . ." Compl. ¶ 73.

The FAA also applies because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Here, too, ViewSonic's own allegations are instructive: it alleges that "[t]he business activities of Defendants substantially affected interstate trade and commerce . . ." Compl. ¶ 75.

**C.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The OEM Agreement, and the arbitration provision contained therein, is a valid and enforceable contract emerging from arms-length negotiations between commercial entities. Both ViewSonic and Panasonic Corporation are sophisticated companies, accustomed to commercial dealings and arrangements such as those that the OEM Agreement memorializes. The OEM

7

Agreement bears all of the indicia of a routine business contract ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  No "grounds as exist at law or in equity for the revocation" of the OEM Agreement, and therefore, the FAA is applicable.  9 U.S.C. § 2.

### D. All of ViewSonic's Claims as to Direct Purchases from the Panasonic Defendants Relate to and Connect with the Vendor Agreement

ViewSonic's claims against the Panasonic Defendants are premised on its alleged purchases of CRT Finished Products.  *See* Compl. ¶¶ 2, 10, 16-17, 83-84, 213-14, 247.  The OEM Agreement ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Thus, the claims against the Panasonic Defendants fall within the scope of the arbitration provision in the OEM Agreement.

The OEM Agreement contains ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Even a cursory review of ViewSonic's allegations demonstrates that ViewSonic's federal claims arose ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

Further, the Ninth Circuit has recognized that an agreement to arbitrate claims "arising out of or relating to" a dispute is a broad and far reaching clause.  *See Mediterranean Enters., Inc., v. Ssangyong Corp.,* 708 F.2d 1458, 1464 (9th Cir. 1983) (noting that the language "'arising out of or relating to this agreement' had been labeled a 'broad arbitration clause'" by other courts) (citation omitted); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (finding "arising out of or relating to" to be "broad and far reaching").  The Ninth Circuit has also broadly interpreted the phrase "arising in connection with" an agreement.  *See Simula*, 175 F.3d at 721 (holding that antitrust claims "arising in connection with the agreement were fully arbitrable and

8

stating, "[e]very court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly."). Moreover, it is well-established that antitrust claims are claims "arising under" purchase contracts. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614 (1985) (holding that the antitrust claims arising under a sales agreement between the parties were arbitrable); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 181 (2d Cir. 2004) (holding that the plaintiffs' antitrust claims arising under a form charter agreement were arbitrable).

As noted above, this Court has in this MDL already considered and enforced similar arbitration clauses in virtually identical circumstances, and has repeatedly ordered the parties to arbitrate. *See* Philips Order at 12, Toshiba Order at 10. Judge Illston similarly reached the same result in an antitrust action that, like this one, implicated supply agreements for the sale and purchase of component electronics that contained an arbitration clause. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 2650689, at *3-5 (N.D. Cal. July 6, 2011) (enforcing arbitration agreement governing "[a]ny disputes related to this Agreement . . ."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, M 07-1827 SI, Dkt. No. 3213 at 3 (N.D. Cal. Aug. 3, 2011) (enforcing agreement to arbitrate "all disputes arising out of, relating to, or in connection with this [Agreement]").

In line with this Court's prior orders, and the well-settled public policy that "any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration,"[5] arbitration is required with respect to ViewSonic's claims against the Panasonic Defendants as well.

### E.   ViewSonic Must Arbitrate Claims with All of The Panasonic Defendants

ViewSonic is required to arbitrate its claims with all three of the Panasonic Defendants, including PNA and MTPD, because the "obligation to arbitrate does not attach *only* to those who

---

[5] *Simula*, 175 F.3d at 719 (citation omitted).

9

actually signed the agreement to arbitrate." *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 830 (N.D. Cal. 2007); *JLM*, 387 F.3d at 177 ("under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate"). Where, as here, it has been alleged that the non-signatory parties are agents or that their liability is otherwise intertwined with the agreement to arbitrate, courts in this Circuit routinely apply agreements to arbitrate to signatories and non-signatories alike. *See Mundi v. Union Security Life Ins. Co.,* 555 F.3d 1042, 1046 (9th Cir. 2009) ("a signatory may be required to arbitrate a claim brought by a non-signatory because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations.") (internal quotations omitted); *Amisil*, 622 F. Supp. 2d at 832-33 (N.D. Cal. 2007) (non-signatories to an agreement containing an arbitration clause could compel signatories to arbitrate when claims against agents relate to their behavior or capacities as agents and arise out of or relate to the contract in question); *Hansen v. KPMG, LLP, et. al.*, No. CV 04-10525-GLT, 2005 WL 6051705, at *2-3 (C.D. Cal. Mar. 29, 2005) (compelling a plaintiff signatory to arbitration where "[p]laintiff's allegations plead interdependent and concerted misconduct" by a signatory and non-signatory defendants).

Indeed, this Court has repeatedly held – including in this case – that related business entities can enforce provisions of contracts to which they were not signatories. *See* Toshiba Order at 9 ("Plaintiff must arbitrate its claims against the Toshiba Defendants whose affiliates – in this case, TACP – have arbitration agreements with Plaintiff.  Plaintiff's claims against the Toshiba Defendants, per its own complaint, relate to their interrelated behavior and capacities as agents.") (citations omitted); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, M 07-1827 SI, 2014 WL 1395733, at *4 (N.D. Cal. Apr. 10, 2014) (finding "the relationship between the five NEC defendants is sufficiently close, and the relationship between the nonsignatory NEC defendants' alleged wrongs

10

PANASONIC DEFENDANTS' MOTION TO DISMISS                                MDL No. 1917
AND TO COMPEL ARBITRATION [REDACTED]                       Case No. 3:14-cv-02510

and the arbitration agreement is sufficiently intertwined, such that Gateway can be compelled to arbitrate against all five NEC defendants."); *see also Fujian Pac. Elec. Co. Ltd. v. Bechtel Power Corp.,* No. C 04-3126 MHP, 2004 WL 2645974, at *6 (N.D. Cal. Nov. 19, 2004) ("[w]hen the charges against a parent company and its subsidiary are based upon the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement.") (citation omitted); *JLM*, 387 F.3d at 177-78 (plaintiffs could not avoid arbitration with affiliate of signatory after having treated signatory and its affiliate as single unit in complaint).[6]

Here, ViewSonic's claims against the Panasonic Defendants relate to their alleged interrelated behavior. ViewSonic's Complaint treats Panasonic Corporation and PNA as a single entity and further alleges that "the entire corporate family was represented" in the alleged conspiracy. Compl. ¶¶ 26-28, 132. Further, ViewSonic alleges that PNA is a wholly-owned and controlled subsidiary of Panasonic Corporation and that Panasonic Corporation "dominated and controlled the finances, policies and affairs" of PNA. *Id.* ¶ 27. ViewSonic also claims that "Panasonic participated in the CRT conspiracy through MTPD" and generally asserts an "interrelated" relationship between Panasonic Corporation and MTPD. *Id.* ¶¶ 86, 88, 92(iii), 146. ViewSonic further alleges that Panasonic Corporation was the majority owner of MTPD until MTPD became a wholly-owned subsidiary of Panasonic Corporation in 2007. *Id.* ¶ 29.

---

[6] Courts have also permitted non-signatories to compel arbitration in cases where they "have tended to share a common feature in that the non-signatory party . . . has had some sort of corporate relationship to a signatory party." *Just Film, Inc. v. Merch. Services, Inc.*, No. C 10–1993 CW, 2011 WL 3809908, at *5 (N.D. Cal. Aug. 29, 2011) (citation omitted); *see also In re Apple & AT&TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1178-79 (N.D. Cal. Dec. 1, 2011) (granting non-signatory's motion to compel arbitration and finding that the "non-signatory need not be a parent or subsidiary company of the signatory for the requisite 'relationship' to be found"). Just as these cases "involv[ed] subsidiaries, affiliates, agents, and other related business entities," *Just Film, Inc.*, 2011 WL 3809908, at * 5, ViewSonic has alleged that both PNA and MTPD are related to Panasonic Corporation, the signatory of the OEM Agreement.

PANASONIC DEFENDANTS' MOTION TO DISMISS                      MDL No. 1917
AND TO COMPEL ARBITRATION [REDACTED]                         Case No. 3:14-cv-02510

Because ViewSonic has alleged a sufficiently close and interrelated relationship between all of the Panasonic Defendants, ViewSonic's claims against all of the Panasonic Defendants must be arbitrated under the OEM Agreement.

## V. CONCLUSION

For the foregoing reasons, the Panasonic Defendants respectfully request that the Court dismiss ViewSonic's claims that are based on its alleged CRT Finished Product Purchases from the Panasonic Defendants and compel ViewSonic to arbitrate those claims.

Dated:  August 25, 2014

By:  /s/ *Adam C. Hemlock*
DAVID L. YOHAI (*pro hac vice*)
E-mail: david.yohai@weil.com
ADAM C. HEMLOCK (*pro hac vice*)
E-mail: adam.hemlock@weil.com
DAVID YOLKUT (*pro hac vice*)
E-mail: david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

BAMBO OBARO (267683)
E-mail: bambo.obaro@weil.com
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

JEFFREY L. KESSLER (*pro hac vice*)
E-mail: jkessler@winston.com
EVA W. COLE (*pro hac vice*)
E-mail: ewcole@winston.com
MOLLY M. DONOVAN (*pro hac vice*)
E-mail: mmdonovan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-7400

*Attorneys for Defendants Panasonic Corporation, Panasonic Corporation of North America, and MT Picture Display Co., Ltd.*