# EXHIBIT 35

# E<span>XHIBIT</span> 1

**FAEGRE BAKER DANIELS**

FaegreBD.com

USA ▼ UK ▼ CHINA

Kathy L. Osborn
*Partner*
kathy.osborn@FaegreBD.com
Direct **+1 317 237 8261**

Faegre Baker Daniels LLP
300 North Meridian Street  Suite 2700
Indianapolis  Indiana 46204-1750
Phone **+1 317 237 0300**
Fax **+1 317 237 1000**

July 22, 2014

**VIA ELECTRONIC MAIL**

Mr. Craig Benson
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street NW
Washington, DC 20006-1047
(202) 223-7343
cbenson@paulweiss.com

Re:  *In re: CRT Antitrust Litigation*, 3:07-cv-5944-SC MDL No. 1917 (N.D. Cal.).

Dear Mr. Benson:

I write in response to your July 17, 2014 letter regarding the Rule 30(b)(6) deposition of the Thomson SA and your July 16, 2014 letter summarizing our July 15, 2014 conference call to discuss discovery issues including Thomson Consumer's and Thomson SA's responses to the Direct Action Plaintiffs' first and second sets of requests for production.

With respect to your July 16, 2014 letter, generally, with the exception of the last sentence on the first page and one comment about depositions, it accurately memorializes our July 15, 2014 discussions. To clarify, I did not speculate that the universe of responsive documents in France was very small. Instead, I offered hopeful speculation that the difference between the production we have made in this litigation and the production made to the European Commission is not very significant.  As we have stated, we are undertaking a comparison of these productions and will not have any definitive information to share with you on that until the analysis is complete. I also am hopeful that the universe of additional, responsive CRT-related documents existing in France is few to none because those existing in France were reviewed to identify documents responsive to the DOJ and European Commission document requests.

For one additional point of clarification, we believe we will be able to make James Hanrahan, Alex Hepburn and Jack Brunk available for deposition before the close of fact discovery on September 5, 2014, but they are former employees and balancing their respective schedules is challenging.  We hope to have dates to offer you for them and Jackie Taylor-Boggs soon.

With respect to the question in your July 17, 2014 letter regarding the scope of testimony Thomson SA's Rule 30(b)(6) representative, Ms. Meggan Ehret, may provide at a deposition, Thomson SA states that subject to its objections to the Rule 30(b)(6) deposition notice you have served upon it,

Mr. Craig Benson -2- July 22, 2014

and consistent with its obligations under French law and the Federal Rules of Civil Procedure, Ms. Ehret will be prepared to testify about information known or reasonably available to the company provided that the disclosure of this information would not violate Loi 80-538 du 16 juillet 1980 relative à la communication de documents et renseignements d'ordre économique, commercial ou technique à des personnes physiques ou morales étrangères [Law 80-538 of July 16, 1980 relating to the disclosure of documents and information of an economic, commercial or technical nature to foreign natural and legal persons], JOURNAL OFFICIEL DE LA RÉPUBLIQUE FRANÇAISE [J.O.] [OFFICIAL GAZETTE OF FRANCE], July 17, 1980, p. 1799; see also Cour de cassation, Criminal Chamber, Dec. 12, 2007, no. 07-83228, Christopher X; Loi Informatique et Libertes Act N°78-17 of January 6, 1978 [Law No. 78-17 of 6 January 1978 on data processing, data files and individual liberties]. Under Article 1 bis of this statute, "it is prohibited for any person to request, seek or disclose, in writing, orally or otherwise, economic, commercial, industrial, financial or technical documents or information leading to the constitution of evidence with a view to foreign judicial or administrative proceedings or in connection therewith." As the plain text of the statute makes clear, Thomson SA would violate French law if it were to "disclose" "economic, commercial, industrial, financial or technical documents or information" that is located in France in a Rule 30(b)(6) deposition. And as the March 7, 2008 letter from the French Ministry of Foreign Justice to Thomson SA makes clear, Thomson SA's compliance with this statute is mandatory. Accordingly, if Plaintiffs would like to discover this information, they must proceed through the Hague Convention.

Lastly, and for the sake of clarity, we have been working exceptionally hard to stay on the same trial schedule as the other defendants and do not believe the Ministry of Foreign Justice's directive that Thomson SA's compliance with the Law of July 16, 1980 is mandatory in any way impacts our ability to do so. We have produced a substantial number of documents that were previously located in France, but ended up in the United States and overlap with documents Thomson SA produced to the European Commission. Subject to Thomson SA's objections to the Rule 30(b)(6) deposition notice you have served upon it, Ms. Ehret will be prepared to answer questions regarding these documents and other information located in the United States at Thomson SA's Rule 30(b)(6) deposition. And we have confirmed that Ms. Ehret could be available for the 30(b)(6) depositions on August 14 and 15 (if a 2nd day is needed) or August 20 and 21 (if a 2nd day is needed). Her schedule gets filled quickly, so please let us know as soon as possible what dates you select.

Sincerely,

*Kathy L. Osborn*

Kathy L. Osborn

# **E**XHIBIT **2**

# Summary of Commission Decision

## of 5 December 2012

### relating to a proceeding under Article 101 of the Treaty on the Functioning of the European Union and Article 53 of the EEA Agreement

### (Case COMP/39.437 — TV and computer monitor tubes)

*(notified under document C(2012) 8839)*

**(Only the English text is authentic)**

**(Text with EEA relevance)**

(2013/C 303/07)

*On 5 December 2012, the Commission adopted a decision relating to a proceeding under Article 101 of the Treaty on the Functioning of the European Union and Article 53 of the EEA Agreement. In accordance with the provisions of Article 30 of Council Regulation (EC) No 1/2003 [1], the Commission herewith publishes the names of the parties and the main content of the decision, including any penalties imposed, having regard to the legitimate interest of undertakings in the protection of their business secrets.*

## 1. INTRODUCTION

(1) On 5 December 2012, the European Commission adopted a decision relating to two separate infringements of Article 101 of the Treaty on the Functioning of the European Union and Article 53 of the EEA Agreement in the sector of cathode ray tubes ('CRT'). By these infringements, the addressees of the decision colluded on prices, market shares, customers and output as well as exchanged confidential information and monitored implementation of the collusive arrangements.

(2) The decision was addressed to the following legal entities: Chunghwa Picture Tubes Co., Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., CPTF Optronics Co., Ltd. ('Chunghwa'); Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Berhad, Samsung SDI Germany GmbH ('Samsung SDI'); Koninklijke Philips Electronics NV ('Philips'); LG Electronics, Inc ('LGE'); Panasonic Corporation ('Panasonic'); Toshiba Corporation ('Toshiba'); MT Picture Display Co., Ltd. ('MTPD'); Technicolor SA ('Technicolor').

## 2. CASE DESCRIPTION

### 2.1. The product concerned

(3) The product concerned, CRT, is an evacuated glass envelope containing an electron gun and a fluorescent screen. There are two distinct types of CRTs that were covered respectively in the two separate infringements: (i) colour display tubes (CDTs) used in computer monitors and (ii) colour picture tubes (CPTs) used for colour televisions.

(4) Since early 2000's, the CRT technology was gradually replaced by alternative techniques such as LCD and plasma displays.

### 2.2. Procedure

(5) Following the immunity application of Chunghwa under the terms of the 2006 Leniency Notice, the Commission carried out inspections in November 2007. Subsequently, the Commission received leniency applications from Samsung SDI, Panasonic (together with MTPD), Philips and Technicolor. In addition, several requests for information were addressed to the parties.

(6) On 23 November 2009, the Commission adopted a statement of objections. An oral hearing was held on 26 and 27 May 2010. On 2 December 2010, the Commission issued a letter of facts to Panasonic, MTPD and Toshiba regarding the decisive influence of parent companies over MTPD.

(7) On 1 June 2012, the Commission adopted supplementary statements of objections addressed to Philips and to LGE concerning liability. An oral hearing of these parties was held on 6 September 2012. On 5 July 2012 the Commission issued a letter of facts to all the addressees of the 23 November 2009 statement of objections regarding participants in the cartel contacts from Philips group, LGE group and the Philips/LGE joint venture group.

(8) The Advisory Committee on restrictive practices and dominant positions issued a favourable opinion on 19 November 2012 and 3 December 2012.

### 2.3. Summary of the infringements

(9) Overall, the CDT cartel lasted from October 1996 until March 2006 and the CPT cartel from December 1997 until November 2006.

---
[1] OJ L 1, 4.1.2003, p. 1.

(10) The addressees of the decision for the CDT cartel fixed prices, allocated market shares and customers and restricted output. The addressees of the decision for the CPT cartel fixed prices, allocated market shares and restricted output. The price fixing, market sharing and output restrictions were also subject to regular monitoring in both cartels and, in the case of the CDT cartel, at times the capacity restrictions were also audited with plant visits. The addressees also engaged in exchanges of commercially sensitive information in both cartels. In the CPT cartel, the addressees also attempted to maintain a price gap between identical products marketed in Europe and Asia.

(11) The two cartels were highly organised. There were regular multilateral meetings involving different corporate levels of the addressees up to the executive level. The multilateral meetings were complemented by bilateral meetings and other exchanges. Originally, CDTs and CPTs were discussed in the same cartel contacts, but soon a division between CDT and CPT related cartel contacts emerged. Focus of the cartel contacts evolved over time following the development in the sector for example as the emphasis in the demand was moving to larger dimension CRTs.

(12) In the CDT cartel the cartel, contacts took place mainly in Asia whereas in the CPT cartel, there were cartel contacts both in Asia and in Europe. As of 1999, the CPT cartel contacts started to be organised more frequently also in Europe to complement the cartel meetings that had started in Asia. In the CPT cartel the arrangements reached in the Asian and European cartel, contacts were interconnected. The European meetings focused more specifically on Europe and the Asian cartel contacts covered more clearly the worldwide level. However, cartel contacts concerning Europe clearly took place both in Asia and in Europe.

2.4. **Addressees**

(13) The following undertakings infringed Article 101 of the Treaty and Article 53 of the EEA Agreement by participating, during the periods indicated, in a single and continuous complex of agreements and concerted practices in the sector of colour display tubes used in computer monitors:

(a) Chunghwa Picture Tubes Co., Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., CPTF Optronics Co., Ltd., from 24 October 1996 until 14 March 2006;

(b) Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Berhad, from 23 November 1996 until 14 March 2006;

(c) Koninklijke Philips Electronics NV, from 28 January 1997 until 30 January 2006;

(d) LG Electronics, Inc., from 24 October 1996 until 30 January 2006.

(14) The following undertakings infringed Article 101 of the Treaty and Article 53 of the EEA Agreement by participating, during the periods indicated, in a single and continuous complex of agreements and concerted practices in the sector of colour picture tubes used for colour televisions:

(a) Chunghwa Picture Tubes Co., Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., CPTF Optronics Co., Ltd., from 3 December 1997 until 6 December 2005;

(b) Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Berhad, Samsung SDI Germany GmbH, from 3 December 1997 until 15 November 2006;

(c) Panasonic Corporation, from 15 July 1999 until 12 June 2006;

(d) Toshiba Corporation, from 16 May 2000 until 12 June 2006;

(e) MT Picture Display Co., Ltd., from 1 April 2003 until 12 June 2006;

(f) Koninklijke Philips Electronics NV, from 21 September 1999 until 30 January 2006;

(g) LG Electronics, Inc., from 3 December 1997 until 30 January 2006;

(h) Technicolor SA, from 25 March 1999 until 19 September 2005.

2.5. **Remedies**

(15) The decision applies the 2006 Guidelines on fines ([1]).

2.5.1. *Basic amount of the fine*

(16) The basic amount of the fine to be imposed on the undertakings concerned is to be set by reference to the relevant value of the undertakings' sales of goods or services to which the infringement related in the relevant geographic area in the EEA.

(17) For the purpose of establishing the value of sales in this case, the relevant EEA turnover consists of those sales where the first 'real' sale of CDT or CPT — as such or integrated in a final computer or colour television product — was made into the EEA during the period of the infringement. This includes both direct EEA sales (that is CDTs or CPTs directly sold to customers in the EEA) and direct EEA sales through transformed products (that is CDTs or CPTs incorporated intra-group into a final computer monitor or colour television and subsequently sold to customers in the EEA) by one of the addressees of the decision or their joint venture. Sales of CDTs and CPTs to intra-group customers were part of the cartel

---

([1]) OJ C 210, 1.9.2006, p. 2.

discussions in this case and are therefore included in the value of sales. For the calculation of the respective value of sales, the value of the CDTs and CPTs are included in so far as the transformed products are sold by the cartelist in the EEA to unrelated customers.

(18) In order to identify the relevant value of sales, the Commission takes into account sales of products which were delivered in the EEA. By doing this, a strong nexus with the EEA is established, thereby reflecting the economic importance of the infringement in the EEA.

(19) In this case, it is appropriate to take the average annual value of sales (based on the actual sales over the entire duration of the infringement) as the basis for the 'value of sales' calculation, having regard to the significant decrease of the sales for all undertakings between the beginning and the end of the infringement and to the considerable variation of the value of sales from one year to the next.

(20) Considering the nature of the infringements, their geographical scope and their implementation, the percentage for the variable amount of the fine and the additional amount ('entry fee') is set at 19 % of the value of sales for the CDT cartel and 18 % of the value of sales for the CPT cartel for all the undertakings addressed.

(21) LGE participated directly and through subsidiaries and Philips through subsidiaries in the CPT and CDT cartels until the end of June 2001, and thereafter both continued participation through the Philips/LGE joint venture. Panasonic participated directly and through subsidiaries and Toshiba directly in the CPT cartel until the end of March 2003, and thereafter both continued participation through the joint venture MTPD. Consequently, separate additional amounts are imposed only on the respective joint venture parent companies, Philips, LGE, Panasonic and Toshiba.

(22) In this case, the Commission takes into account the actual duration of participation in the infringements of the undertakings involved in this case on a rounded down monthly and *pro rata* basis to take fully into account the duration of the participation for each undertaking, which leads to the following multipliers for duration of participation:

A. C D T  c a r t e l

    (a) Chunghwa Picture Tubes Co., Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. and CPTF Optronics Co., Ltd., jointly and severally — 9,33;

    (b) Samsung SDI Co., Ltd, and Samsung SDI (Malaysia) Berhad, jointly and severally — 9,25;

    (c) Koninklijke Philips Electronics NV, for the period prior to the Philips/LGE joint venture — 4,41;

    (d) LG Electronics, Inc., for the period prior to the Philips/LGE joint venture — 4,66;

    (e) Koninklijke Philips Electronics NV and LG Electronics, Inc, for the period of the Philips/LGE joint venture — 4,5.

B. C P T  c a r t e l

    (a) Chunghwa Picture Tubes Co., Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. and CPTF Optronics Co., Ltd., jointly and severally — 8;

    (b) Samsung SDI Co., Ltd, Samsung SDI Germany GmbH, and Samsung SDI (Malaysia) Berhad, jointly and severally — 8,91;

    (c) Koninklijke Philips Electronics NV, for the period prior to the Philips/LGE joint venture — 1,75;

    (d) LG Electronics, Inc., for the period prior to the Philips/LGE joint venture — 3,5;

    (e) Koninklijke Philips Electronics NV and LG Electronics, Inc, for the period of the Philips/LGE joint venture — 4,5;

    (f) Technicolor SA — 6,41;

    (g) Panasonic Corporation, for the period prior to the joint venture MTPD — 3,66;

    (h) Toshiba Corporation, for the period prior to the joint venture MTPD — 2,83;

    (i) Panasonic Corporation, Toshiba Corporation and MT Picture Display Co., Ltd, for the period of the joint venture MTPD — 3,16.

2.5.2. *Adjustments to the basic amount*

(23) There are no aggravating or mitigating circumstances in this case.

2.5.3. *Specific increase for deterrence*

(24) In this case, a deterrence multiplier of the fines to be imposed of 1,1 is applied to Toshiba, and of 1,2 is applied to Panasonic and MTPD.

2.5.4. *Application of the 10 % turnover limit*

(25) The final individual amounts of the fines are below 10 % of the worldwide turnovers of the addressed undertakings.

2.5.5. *Application of the 2006 Leniency Notice*

(26) Chunghwa was the first undertaking to submit information and evidence meeting the conditions of point 8(a) of the 2006 Leniency Notice. The fine to be imposed was reduced by 100 % for both CDT and CPT cartels.

(27) Samsung SDI is granted a 40 % reduction of the fines that would otherwise have been imposed on it both regarding the CDT and the CPT cartel.

(28) Philips is granted a 30 % reduction of the fines that would otherwise have been imposed on it both regarding the CDT and the CPT cartel.

(29) Technicolor is granted a 10 % reduction of the fines that would otherwise have been imposed on it regarding the CPT cartel.

(30) The Commission concluded that Panasonic and MTPD did not qualify for a reduction of fines.

2.5.6. *Inability to pay*

(31) One undertaking invoked its inability to pay under point 35 of the 2006 Fines Guidelines. The Commission considered this claim and carefully analysed the financial situation of the undertaking and the specific social and economic context. As a result of the analysis, the Commission granted a reduction of the fine.

3. **FINES IMPOSED BY THE DECISION**

(32) For the single and continuous infringement in relation to the sector of colour display tubes used in computer monitors, the following fines are imposed:

(a) Chunghwa Picture Tubes Co., Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., CPTF Optronics Co., Ltd., jointly and severally liable: EUR 0;

(b) Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Berhad, jointly and severally liable: EUR 69 418 000;

(c) Koninklijke Philips Electronics NV: EUR 73 185 000;

(d) LG Electronics, Inc.: EUR 116 536 000;

(e) Koninklijke Philips Electronics NV and LG Electronics, Inc., jointly and severally liable: EUR 69 048 000.

(33) For the single and continuous infringement in relation to the sector of colour picture tubes used for colour televisions, the following fines are imposed:

(a) Chunghwa Picture Tubes Co., Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., CPTF Optronics Co., Ltd., jointly and severally liable: EUR 0;

(b) Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Berhad, Samsung SDI Germany GmbH, jointly and severally liable: EUR 81 424 000;

(c) Koninklijke Philips Electronics NV: EUR 240 171 000;

(d) LG Electronics, Inc.: EUR 179 061 000;

(e) Koninklijke Philips Electronics NV and LG Electronics, Inc., jointly and severally liable: EUR 322 892 000;

(f) Panasonic Corporation: EUR 157 478 000;

(g) Toshiba Corporation: EUR 28 048 000;

(h) Panasonic Corporation, Toshiba Corporation and MT Picture Display Co., Ltd., jointly and severally liable: EUR 86 738 000;

(i) Panasonic Corporation and MT Picture Display Co., Ltd., jointly and severally liable: EUR 7 885 000;

(j) Technicolor SA: EUR 38 631 000.