# EXHIBIT 36

FaegreBD.com

**FAEGRE BAKER DANIELS**

USA ▾ UK ▾ CHINA

**Kathy L. Osborn**
*Partner*
kathy.osborn@FaegreBD.com
Direct **+1 317 237 8261**

Faegre Baker Daniels LLP
2200 Wells Fargo Center ▾ 90 South Seventh Street
Minneapolis ▾ Minnesota 55402-3901
Phone **+1 612 766 7000**
Fax **+1 612 766 1600**

August 6, 2014

**VIA E-MAIL (JAY.WEIL@FEDARB.COM)**

Hon. Vaughn R. Walker
c/o Mr. Jay Weil
Federal Arbitration, Inc.
288 Hamilton Avenue, 3rd Floor
Palo Alto, California 94301

Re:   *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, Master Case No. 3:07-cv-05944-SC

Dear Judge Walker:

   Thomson SA hereby responds to Direct Action Plaintiffs' ("DAPs") July 28, 2014, letter-brief seeking to compel Thomson SA to produce documents and information located in France (the "Motion"), without resort to the Hague Convention and in violation of French law. Thomson SA opposes the Motion because any discovery of information or documents located in France should proceed in accord with the provisions of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 744 ("Hague Convention"), a process which the DAPs have already initiated.

## I.   Preliminary Statement

   "It is a general principal that one state cannot require a person 'to do an act in another state that is prohibited by the law of that state or by the law of the state of which he is a national' ...." *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1392 (9th Cir. 1995) (citing RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 441(1)(a) (1987)). This is exactly what the DAPs are attempting to do here. They request this United States court to issue an order compelling both Thomson SA and its individual Rule 30(b)(6) representative to produce documents and provide testimony in a manner that would cause Thomson SA and its Rule 30(b)(6) representative to violate French criminal statutes concerning the production of economic, commercial, and private documents and information. *See* Loi No. 68-678 (July 26, 1968) *modified by* Loi No. 80-538 (July 16, 1980) ("French Blocking Statute"); Loi No. 78-17 (Jan. 6, 1978). The French Blocking Statute imposes criminal penalties in the event of any violation.

Furthermore, in an effort to justify forcing Thomson SA to violate French law by responding to the DAPs' overbroad discovery requests outside of Hague Convention procedures, the DAPs ignore the thousands of documents—many of which originated in France, but ended up in the U.S.—that Thomson SA's U.S. subsidiary, Thomson Consumer Electronics, Inc. ("Thomson Consumer" and collectively with Thomson SA, the "Thomson Defendants") has already produced in this litigation.[1] Absent a showing of great need, which the DAPs have not made, the Court should deny their Motion.

## II. Factual and Procedural Background

In November 2007, the first of a series of complaints alleging price fixing in the CRT industry were filed in what would eventually become this multi-district litigation. In January 2008, Thomson SA was named as a defendant in four related cases that alleged that it was involved in a global CRT price-fixing conspiracy. By early 2009, however, Thomson SA had been dropped as a defendant in the consolidated amended complaints. Thomson SA was not named as a party again until Sharp Electronics Corporation ("Sharp") filed a complaint against it in March 2013—more than five years after the litigation began and years after discovery began. At about the same time, all of the other moving DAPs filed motions to amend their complaints to add claims against the Thomson Defendants. Recognizing the prejudice the Thomson Defendants would face if they were brought into the litigation so late, the Court initially denied the DAPs' motion to amend. (See Sept. 26, 2013 Order at 4-6 [Dkt. No. 1959].) However, these DAPs then simply filed new actions against the Thomson Defendants, which are currently pending before the Court.

### A. Thomson Consumer has already produced significant responsive documents that originated in France.

Because of the DAPs' delay, the Thomson Defendants were presented with a Hobson's choice: go it alone on a separate, later discovery schedule and face ruinous damages exposure as the last defendant standing, or attempt to "catch up" and complete discovery in a few short months. Selecting the only real alternative available to it, the Thomson Defendants have worked incredibly hard to catch up in discovery so that they can stay on track for trial in March 2015.

For example, Thomson Consumer has produced over 26,000 pages of documents (plus thousands of pages of native files) regarding the Thomson Defendants' former CRT operations, including virtually all of the documents produced to the United States Department of Justice in 2008 in response to a subpoena regarding the same conduct alleged by the DAPs.[2] Many of these documents were originally created by Thomson SA employees in France, but were already located in the United States at the time the DAPs served their document requests in April 2014.[3] Included in this production were thousands of documents regarding Thomson SA's former European CRT operations, including documents responsive

---

[1] The DAPs further ignore that these already-produced documents contain substantial volumes of information regarding the issues about which they seek to compel additional documents.

[2] The Department of Justice took no action against the Thomson Defendants.

[3] To give just one example, Thomson Consumer produced thousands of pages of documents authored by Agnes Martin, a former Business Intelligence Manager for Thomson's European CPT operations, who was based in France.

US.54627199.02

Hon. Vaughn R. Walker -3- August 6, 2014

to the very requests for documents that plaintiffs seek to compel here: (1) Thomson SA's alleged meetings with competitors; (2) facts related to this Court's alleged personal jurisdiction over Thomson SA, (3) Thomson SA's 2005 sale of its CRT business to Videocon, and (4) documents included in Thomson SA's production to the European Commission. Conspicuously absent from DAPs' Motion is any analysis of this production, much less any explanation of why it was inadequate.

### B.   Thomson SA has complied in good-faith with both French law and agreements in this case.

Article 1A of the French Blocking Statute, French Penal Code No. 80-538, makes it a *crime* "for any person to request, seek or disclose, in writing orally or otherwise, economic, commercial, industrial, financial or technical documents or information leading to the constitution of evidence with a view to foreign judicial or administrative proceedings or in connection therewith." *See Societe Nat'l Indus. Aérospatiale v. United States District Court* ("*Aérospatiale*"), 482 U.S. 522, 526 n.6 (1987) (quoting French Blocking Statute). Article 2 of the same law provides that "[t]he parties mentioned in [Article 1A] shall forthwith inform the competent minister if they receive any request concerning such disclosures." The nature of the party requesting information (whether it be a private party or a foreign court) is irrelevant under the statute: it is the intent to gather evidence in connection with foreign judicial or administrative proceedings that triggers the prohibition. Violation of this provision is a criminal offense punishable by up to six months imprisonment and a fine of €18,000 for an individual. Legal entities also may be held liable for violating the French Blocking Statute and may be sentenced to up to five times the fine provided for individuals (*i.e.*, € 90,000).

Consistent with these legal obligations, in February 2008 Thomson SA informed the French Ministry of Foreign Affairs that it had received a request for documents in connection with the claims filed against it in January 2008 in this case. The Ministry responded by acknowledging that Thomson SA's letter was required under Article 2 of the Act 68-678, and reminding Thomson SA that the Act prohibits the disclosure of the information requested and that "the provisions of the Act are mandatory, subject to international treaties or agreements." *See* Letter from French Ministry of Foreign Affairs, ("Ministry of Foreign Affairs Letter") attached as **Exhibit A** (true and correct certified translation of the original French version of the Ministry of Foreign Affairs Letter).[4] The Ministry suggested that the information requested could be obtained through the Hague Convention under an application according to the proper procedures. No plaintiff in these actions attempted to initiate Hague Convention procedures to obtain information or documents from Thomson SA in France at any time in the next six years. Instead, the DAPs waited until approximately five weeks before the close of discovery to invoke Hague Convention procedures.

In both the instant Motion and their simultaneously filed Motion for Issuance of a Letter of Request, the DAPs claim that Thomson SA has "changed its tune" and "pulled an about-face" regarding the production of documents located in France. This is incorrect. As the 2008 Ministry of Foreign Affairs Letter establishes, since 2008 Thomson SA has understood that, as a French company subject to

---

[4] A copy of the Ministry of Foreign Affairs Letter was provided to counsel for Sharp on June 3, 2014. In spite of this, Sharp waited almost two more months to file the instant Motion.

US.54627199.02

Hon. Vaughn R. Walker -4- August 6, 2014

French law, it cannot produce documents, nor have witnesses testify regarding information located in France, if doing so would violate French law. Thus, in its 2013 motions to dismiss the DAPs' complaints, Thomson SA raised the issue of the burden this action would place on it because of the French statutes. (*See* Dkt. 1765 at 11; Dkt. 2355-9 at 11-12.) When those motions were denied, Thomson SA stipulated that it would "make [its] best effort[] to complete discovery on the existing schedule, including, ***on the part of Thomson***, by making [its] best effort[] to make documents and witnesses available, ***in compliance with the law in the jurisdiction where those documents and witnesses are located***, and, ***if legally possible***, without resort to Hague Convention procedures, as soon as is reasonably possible in the circumstances." (Dkt. 2250 at 4.) (emphasis added).

This is exactly what Thomson SA has done. The Thomson Defendants have made diligent, good-faith efforts to simultaneously comply with their discovery obligations in this litigation and French law. Thomson Consumer has produced the documents described above without violating French law or requiring the DAPs to resort to Hague Convention procedures to obtain them. Indeed, in a matter of months, Thomson SA has fully engaged in a discovery process commenced years before the DAPs first filed their claims against it. Just this week, in its Response to the DAPs' Motion for Issuance of a Letter of Request, Thomson SA reaffirmed that it will fully cooperate in efforts to obtain relevant discovery pursuant to Hague Convention procedures, as permitted by French law. (*See* Dkt. 2727 at 4-5.) Thomson SA has never opposed Plaintiffs properly invoking Hague Convention procedure.

As explained below, Thomson SA should not be required to produce documents located in France in a manner that will force it to violate French law, nor should its Rule 30(b)(6) representative be exposed to individual criminal liability by being compelled to testify regarding information that would violate French law. Accordingly, the DAPs' Motion should be denied.

### C. If the DAPs' Motion is granted, under French law Thomson SA and its individual Rule 30(b)(6) representative will be subject to criminal prosecution.

France's highest civil court, the *Cour de cassation*, has upheld criminal sanctions for violation of the French Blocking Statute. In *In re Advocate Christopher X.* Cour de Cassation [Cass. Crim.], Paris, Dec. 12, 2007, Juris-Data No. 2007-83228 (Fr.),[5] a criminal court in Paris found a Paris lawyer guilty of violating the Blocking Statute and fined him € 10,000 for circumventing the Hague Convention and soliciting information directly from a former officer of one of the companies involved. The Paris court determined that the accused French counsel "sought, although he was devoid of any warrant authorized by [the Hague Convention], for information of an economic, commercial or financial nature...." Paris Court of Appeal, 9th Chamber, Section B, Mar. 28, 2007 n° 06/06272.[6] Finding no error, the *Cour de cassation* affirmed the Paris court's judgment, making clear that the Hague Convention is the exclusive

---

[5] An English translation of the decision is available at 7 Digital Evidence & Elec. Signature L. Rev. 130 (2010), *available online at* http://sas-space.sas.ac.uk/5427/1/1937-2737-1-SM.pdf.

[6] The original French text reads: « *Qu'il a recherché, alors qu'il était dépourvu de tout mandat autorisé au sens de cette convention, des informations dont le caractère économique, commercial ou financier est avéré, et qui tendaient à la constitution de preuves, dès lors qu'elles étaient susceptibles de justifier la désignation de M. L. comme témoin à charge dans la procédure pendante devant la juridiction californienne et d'orienter son interrogatoire ultérieur* ».

means of securing information in France for use in foreign litigation and that parties caught in France bypassing the Hague Convention may expect to be prosecuted under the French Blocking Statute.

Thus, if Thomson SA and its Rule 30(b)(6) representative are compelled to provide the requested information outside of Hague Convention procedures, they will face the very real possibility of prosecution. Individual Thomson SA employees and attorneys would be required to contact French individuals and provide French documents to the DAPs, without any mandate secured through the Hague Convention. In light of the DAPs' failure to demonstrate the need for any documents or information beyond that already produced or available via Hague Convention procedures, the Court should respect France's sovereign interests in controlling evidence collection in its territory and refuse to subject Thomson SA and its employees to the very real threat of criminal sanctions. This burden outweighs the likely benefit of the discovery sought.

In light of the substantial volume of information already produced by Thomson Consumer as well as other defendants in this litigation, and the fact that the DAPs have failed to establish that they do not already have or may not obtain the documents and information they seek to compel through the Hague Convention, the DAPs' attempt to force Thomson SA and its 30(b)(6) representative to violate French criminal law should be denied. By ordering the DAPs to follow Hague Convention procedures, this Court will enable the DAPs to obtain documents they seek, while simultaneously protecting Thomson SA and its Rule 30(b)(6) representative from criminal prosecution in France.

### III. Argument

#### A. The Court should require the DAPs to utilize Hague Convention procedures.

This Court is vested with "broad discretion" to deny discovery, "and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (upholding order denying discovery based on showing of minimal relevance) (quoting *Goehring v. Brophy*, 94 F.3d 1294, 1305 (9th Cir. 1996) (same)). Federal Rule of Civil Procedure 26(b)(2)(C)(iii) provides that a court may limit discovery if the burden, oppression and/or expense of the proposed discovery outweighs its likely benefit.

Not only does Rule 26 seek to balance the cost and burden of discovery with its benefit, the United States Supreme Court recognizes that "[w]hen it is necessary to seek evidence abroad . . . the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Aérospatiale*, 482 U.S. at 546; *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 1247770, at *1 (N.D. Cal. Mar. 26, 2014) ("Rule 26 grants the court discretion to limit discovery on several grounds, including international comity."). To that end, when, as here, a party's obligations under foreign law conflict with discovery requests in domestic litigation, a court must address whether international comity calls for resort to Hague Convention procedures in a particular case. *Aérospatiale*, 482 U.S. at 544. Courts should consider in each case the "particular facts, the sovereign interests, and the likelihood that resort to [Convention] procedures will prove effective." *Id.* In deciding whether to resort to the Hague Convention, district courts must "take care to demonstrate due respect for any

special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Id.* at 546.

### B. The *Aérospatiale* factors weigh in favor of using the Hague Convention.[7]

1. *DAPs' requests seek cumulative information and are substantially overbroad.*

In examining the "particular facts" of this case, the Court must focus on "the nature of the discovery requested." *In re Perrier Bottled Water Litig.*, 183 F.R.D. 348, 354 (D. Conn. 1991). In this case, the Court should require use of the Hague Convention rather than compel compliance with the DAPs' overbroad discovery requests. Although the DAPs purport to identify four categories of requested information allegedly "central to their case," closer examination of each of the DAPs' four categories indicates that most of the information: (1) has already been produced by the Thomson Defendants, (2) is redundant to other information provided by other defendants, and/or (3) is immaterial to the legal issues actually in dispute.

***First,*** the DAPs argue that documents and information regarding Thomson SA's relationship with Thomson Consumer are "crucial" should Thomson argue that the Court lacks personal jurisdiction over it. (*See* Dkt. No. 2716-2, RFPs 36-37, 46-60, attached as Exhibit A to Benson Declaration.) But this ignores that evidence regarding the nature of Thomson SA's contacts with the United States were contained in the tens of thousands of pages of documents Thomson Consumer has already produced. Simply put, the Court's jurisdiction over Thomson SA turns on the extent to which that entity directed activities at and had contacts with the United States. Such evidence, if it exists, is thus likely to already be present in the United States.

***Second,*** the DAPs' do not explain why their expansive requests regarding documents and information related to Thomson SA's 2005 sale of its CRT business are "critical." (*See* Dkt. No. 2716-2, RFPs 33, 35.) Public documents available (and obviously known by) the DAPs verify the general terms of the Thomson-Videocon transaction,[8] and Thomson Consumer has produced additional responsive documents regarding the transaction that were already present in the United States. Furthermore, Videocon's former U.S. subsidiary, Technologies Displays Americas, has also produced numerous documents in this litigation regarding the asset sale. The DAPs' extremely overbroad requests regarding the 2005 asset sale are unduly burdensome and cumulative in light of these prior productions. *See* Fed. R. Civ. P. 26(b)(2)(C).

***Third,*** the DAPs assert that documents and information Thomson SA produced to the European Commission are "central" to their case without much in the way of explanation other than that the

---

[7] Courts often employ the five-factor Restatement analysis cited by the *Aérospatiale* Court in a footnote. *Id.* at 544 n. 28. Regardless of the specific elaboration of factors, however, it is clear that the central considerations identified by the *Aérospatiale* Court drive the analysis and that the factors argued by the DAPs reduce to the three factors discussed in this brief. Here, the parties do not dispute that the documents and information at issue did not originate in the United States. Mot. at 6.

[8] For example, a number of Thomson SA's Form 20-F filings with the Securities and Exchange Commission discuss the sale of Thomson SA's picture tube business to Videocon Industries.

investigation "relates to the same CRT actors and conduct alleged in this case." But this is hardly obvious, given that the focus of the present litigation is on collusive conduct targeting the United States, not Europe. Certainly, the DAPs are not entitled to production of these documents simply because they were produced in the course of the European Commission investigation, and indeed cite no authority for such a proposition. Nor do the DAPs explain why there would have been substantial documents relevant to the United States market turned over to the European Commission that were not included in the production of documents to the Department of Justice, which have since been produced to DAPs. To date, the Court has been careful to respect the confidentiality of productions made to the European Commission during its proceedings, and this Motion should not make an end-run around earlier decisions. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 1247770 at *3 (N.D. Cal. Mar. 26, 2014) (denying motion to compel production of European Commission decision and noting that the DAPs "do not seek the underlying investigative materials.").

***Finally***, the DAPs' requests are overly broad, unnecessarily burdensome and insufficiently precise. To give but a few examples, Request No. 35 requests essentially every document related to Thomson SA's transaction with Videocon and subsequent status as investor, even though most such documents do not plausibly contain any relevant, responsive information. Request No. 42 would require the disclosure of legal submissions to the European Commission, which are strictly confidential. *Id.* (recognizing that European laws prohibit the disclosure of information provided to the European Commission pursuant to European competition laws and impose sanctions upon parties who violate those laws). Request No. 46 would require Thomson SA to examine the entire operational history of its former CRT business. And Requests No. 49 and 53 are not limited to CRTs and would require the production of a substantial amount of entirely irrelevant information related to non-CRT-related business expenses, budgets, and financial analysis. These requests sweep far beyond what could be relevant to this litigation. Compelling Thomson SA to comply with these requests would impose extraordinary expense and burden on it, to say nothing of the criminal penalties it could face.

2. *French sovereign interests are implicated by the coerced violation of its criminal laws.*

Although the DAPs causally dismiss France's interest in ensuring applicable French law is followed when foreign litigants seek to obtain evidence located within its borders, France does have a substantial interest in overseeing the administration of justice within its own territory. Civil-law countries—including France—view the evidence gathering process not as a free-wheeling, party-driven process, but "as an exercise in judicial sovereignty to be entrusted entirely to the courts." *In re Perrier*, 147 F.R.D. at 353. Indeed, France has consistently asserted its sovereign interest that "in French territory the only agency permitted to undertake the collection of evidence is a [French] court or magistrate appointed by that court." *Id.* Thus, while France has long criminalized extra-judicial requests for or production of documents or other information for use in foreign litigation, it has also adopted the Hague Convention and amended its laws to facilitate fact discovery through procedures consistent with its conception of sovereignty. As other courts have recognized, "[t]he simple fact that, in joining the Convention, France has consented to its procedures is an expression of France's sovereign interests and weighs heavily in favor of the use of those procedures." *Id.* at 355 (citing *Hudson v. Hermann Pfauter GmbH & Co.*, 117 F.R.D. 33 (N.D.N.Y. 1987)).

Nor has France's sovereign interest in controlling the collection of evidence within its own territory abated with time. As discussed above, in late 2007 the *Cour de cassation* affirmed that compliance with the Hague Convention is mandatory, making it abundantly clear that violations of the French Blocking Statute can and will be prosecuted under French law. Moreover, the French government has expressed its sovereign interests in controlling the collection of information **in this case.** In response to Thomson SA's obligatory report of discovery requests directed against it in 2008, the French Foreign Ministry specifically reiterated that compliance with the Blocking Statute is mandatory and that proceedings under the Hague Convention were the appropriate and exclusive means of collecting relevant evidence in France. See **Ex. A**.

The DAPs argue that the Court need not respect France's sovereign interests by ensuring that evidence located within its territory be obtained in a manner that complies with French law because France's interests are contrary to the United States' interest in the enforcement of its antitrust laws. Without persuasive support, the DAPs go so far as to suggest that the French Blocking Statute serves the "insidious purpose" of preventing them from prosecuting their antitrust claims. This is incorrect. France's interest is not in limiting the DAPs' ability to secure the information they legitimately need, but in ensuring that evidence regarding French citizens is collected within its sovereign territory in a manner that is consistent with fundamental principles of French law. Ample means are available under the Hague Convention to secure information and documents needed by the DAPs. Proceeding via the Hague Convention will respect both the interests of France in controlling the collection of evidence in France and the United States' interests in allowing the DAPs to prosecute their claims.

3. *Hague Convention procedures are available and effective.*

Notwithstanding to DAPs' *ipse dixit* contention, resort to the Hague Convention procedures are not "effectively unavailable to" them. As the courts in *In re Perrier* and *Hudson* have observed, "the major obstacle to the effective use of the Convention procedures, if there be one," is not the procedures themselves, but rather the "litigant's lack of familiarity with them." *In re Perrier*, 138 F.R.D. at 355. This obstacle appears on full display in the DAPs' Motion, which provides no explanation regarding what features of the Hague Convention render its use so infeasible as to be effectively unavailable.

To the contrary, the Hague Convention provides three effective procedures through which the DAPs may obtain evidence located in France, without requiring Thomson SA and its Rule 30(b)(6) representative to violate French law. *See In re Perrier*, 138 F.R.D. at 353. First, this Court can issue a "letter of request" to the appropriate authority in France, requesting the French court to "obtain evidence, or to perform a requested act." Hague Evidence Convention, Arts. 1-14, 23 U.S.T. 2555, 2557-64. As explained at great length in France's *amicus curiae* brief to the United States Supreme Court in *Aérospatiale*, French law requires French courts to enforce letters of request. See Brief of Amicus Curiae the Republic of France ("*Aérospatiale* Amicus"), 1986 WL 727501, at *23, (France will execute a letter of request seeking pre-trial discovery "provided that the documents requested are enumerated in the letter of request and have a direct and clear nexus with the subject matter of the litigation"). Second, a French party may voluntarily comply with a discovery request pursuant to Articles 15-17 of the Hague Convention, provided this compliance—whether in the form of a deposition, interrogatory responses, or the production of documents—is made before an appropriately

designated consular official in France and, if necessary, authorized by appropriate French officials. Hague Evidence Convention, Arts. 15-16, 23 U.S.T. at 2564-65, 2566-68. While the Convention itself does not discuss interrogatory responses or document production, it is the long-standing practice in France to handle such requests expeditiously in a manner similar to that approved for depositions. *See Aérospatiale* Amicus, 1986 WL 727501, at *26 (noting that the appointed consular official "supervises the packing and sealing of documents, takes the oath of the person answering the interrogatories, and arranges for the evidence to be sent by United States Armed Forces Mail to the court that issued the production order"). Finally, evidence may be taken in a similar manner by any competent person commissioned by a United States court, as long as advance authorization is obtained from appropriate French officials and the hearing or information exchange takes place within embassy property. Hague Evidence Convention, Arts. 17-22, 23 U.S.T. at 2565-68. The DAPs' apparent unwillingness to familiarize themselves with and make use of the available Hague Convention procedures does not provide a basis for failing to utilize these procedures.

### IV. Conclusion

In sum, having waited years to drag Thomson SA into this case, the DAPs fail to identify sufficient reasons for this Court to grant the DAPs' Motion, which would expose Thomson SA and, perhaps even more importantly, its individual Rule 30(b)(6) representative, to prosecution, criminal penalties, and potential imprisonment in France. Certainly enforcing extremely broad discovery requests seeking information duplicative of that already available to DAPs does not justify the relief sought. The Court should deny the DAPs' Motion and instead direct the DAPs to proceed via the Hague Convention if they wish to obtain documents or other information located in France.

Respectfully submitted,

/s/ Kathy L. Osborn

Kathy L. Osborn

Faegre Baker Daniels LLP
*Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.*

US.54627199.02