1  Vaughn R Walker
2  Law Office of Vaughn R Walker
   Four Embarcadero Center, Suite 2200
3  San Francisco, CA  94111
   Tel:  (415) 871-2888
4  Fax:  (415) 871-2890
5  vrw@judgewalker.com

6

7

8

9

10

11

12                    IN THE UNITED STATES DISTRICT COURT

13                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

14

15  IN RE CATHODE RAY TUBE (CRT) ANTITRUST        MDL No 1917
16  LITIGATION
                                                  Master Case No 3:07-cv-05944SC
17

18  This Order Relates To:                        **RECOMMENDED ORDER
                                                  OF THE SPECIAL MASTER**
19
    All Direct Action Plaintiff Actions, except for
20
    those brought by Dell and CompuCom
21

22

23

24

25

26

27

28

29

30

31

32

On July 28, 2014, Direct Action Plaintiffs Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc ("Sharp") on behalf of themselves and most of the Direct Action Plaintiffs[1], sought the undersigned's assistance in resolving a discovery dispute with defendant Thomson, SA ("Thomson") concerning documents and testimony purportedly withheld on the basis of a French statute and other grounds.  Thomson submitted its opposition on August 6 and, on August 12, Sharp submitted a reply to Thomson's opposition.  The undersigned did not conduct an oral hearing on the matter in the interest of time and because a hearing did not appear likely to add new or different information or arguments.

Sharp seeks an order compelling Thomson to produce a FRCP 30(b)(6) witness and documents[2]:  (1) related to communications or meetings between Thomson and competitors[3]; (2) related to the court's general or specific jurisdiction over Thomson[4]; (3) related to the disposition of Thomson's CRT business[5]; and (4)  produced to the European

---

[1] Electrograph Systems, Inc, Electrograph Technologies Corp, Best Buy Co, Inc, Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc, Best Buy Stores, LP, Bestbuy.com, LLC, Magnolia Hi-Fi, LLC, Shultze Agency Services, LLC, Alfred H Siegel, as trustee of the Circuit City Stores, Inc Liquidating Trust, Costco Wholesale Corporation, Target Corp, Office Depot, Inc, Tech Data Corporation, Tech Data Product Management, Inc, Interbond Corporation of America, Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc.  Direct Action Plaintiffs CompuCom Systems, Inc and Dell, Inc and Dell Products, LP have not named Thomson as a defendant.

[2] What follows is Sharp's paraphrase of the discovery requests; the undersigned has not independently reviewed the requests themselves for accuracy of the paraphrasing.

[3] Direct Action Plaintiffs' First Set of Requests for Production of Documents, Request Nos 3-5; Notice of Deposition of Thomson SA pursuant to FRCP 30(b)(6), Nos 1, 2, 5, 6, 9.

[4] Request Nos 36-37, 46-60; Notice Nos 13, 14, 20, 21, 24, 25, 31.

[5] Request Nos 33, 35; Notice Nos 34, 35.

Commission for Competition.[6] Sharp argues that: (1) requests calling for communications and meetings with competitors are regularly held to be relevant to the issues in this litigation concerning as it does alleged cartel behavior; (2) the requests regarding Thomson SA's relationship with Thomson Consumer are relevant to jurisdictional issues, in particular the extent to which Thomson SA controlled or acted through Thomson Consumer and conducted conspiratorial activities in or related to the United States and has, therefore, met minimum contacts standards required for general or specific jurisdiction; and (3) the French Blocking Statute that Thomson has asserted precludes its production of documents in France presents no obstacle to proceeding with this discovery.  The French statute occupies the bulk of the parties' attention.

    In opposition, Thomson makes essentially four arguments:  (1) Sharp was late in naming Thomson – in March 2013, five years after the litigation and discovery began – yet Thomson Consumer has produced over 26,000 pages of documents regarding the Thomson defendants' CRT operations, many of which were created by Thomson SA's employees in France "including documents responsive to the very requests for documents that plaintiffs seek to compel here;" despite this, Sharp has failed to provide "any explanation of why [this

_____

    [6] Request No 42; Notice No 4.  Sharp states that it "seeks only those documents that Thomson SA produced to the European Commission," a limitation evidently imposed due to the court's decision in its March 26 order.  See In re Cathode Ray Tube (CRT) Antitrust Litigation, 2014 WL 1247770 (N D Cal 2014).

production] was inadequate;"[7] (2) the French Blocking Statute[8] makes it a crime "for any person to request, seek or disclose, in writing or orally or otherwise, economic, commercial, industrial, financial or technical documents or information leading to the constitution of evidence with a view to foreign judicial or administrative proceedings or in connection therewith,"[9] and in 2008 Thomson was advised that the provisions of the Blocking Statute are mandatory and limited only by applicable international treaties or agreements; (3) compliance with Sharp's requests will subject Thomson SA and its Rule 30(b)(6) witness to criminal prosecution while the requested materials have either been provided or are available through Hague Convention procedures which is the appropriate means of securing Sharp's proposed discovery and, finally, (4) ordering the discovery of documents produced to the EC competition authorities would be an end run around the court's March 26, 2014 decision denying the Direct Action Plaintiffs' motion for the December 5, 2012 decision of the competition authorities of the European Commission.  In re Cathode Ray Tube (CRT) Antitrust Litigation, 2014 WL 1247770 (N D Cal 2014).[10]

The so-called French Blocking Statute in which Thomson seeks refuge is a peculiar enactment that if applied literally would thwart much of the normal process of

---

[7] Osborn Ltr, Aug 6, 2014 at 3
[8] Penal Code No 80-538, Art 1A.
[9] Osborn Ltr, supra, quoting Societe Nationale Industrielle Aerospatiale v U S District Court for Southern Dist of Iowa, 482 US 522, 526 n 6 (1987).
[10] Thomson also argues that at least some of the discovery Sharp seeks calls for information related to its non-CRT-related business expenses, budget and financial analysis.  Osborn Ltr at 7.  By definition, the discovery at issue here relates to CRTs, not other products.

discovery from French nationals and of evidence located in that country.  Thomson's basis for

claiming that the statute would be enforced in the present situation is predicated on an episode

six years ago in an unrelated matter.  Thomson presents nothing to show that the statute would

be invoked in the present case.  While it is obvious that the courts of the United States must

respect the sovereign interests of foreign nations and "exercise special vigilance to protect

foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place

them in a disadvantageous position," Societe Nationale Industrielle Aerospatiale v U S District Court

for Southern Dist of Iowa, 482 US 522, 545 (1987), it is equally the case that the discovery processes

of the United States should not be thwarted by some obstructive edit of a foreign country.  Ibid.

Hence, the Supreme Court in Aerospatiale made short shrift of a similar attempt to invoke the

French Blocking Statute noting, as in this case, that the record in that case did not establish that

the petitioners had notified the appropriate French ministerial official of the present discovery

request or attempted to secure a waiver of prosecution from French authorities.  482 US at 582

n10.  Furthermore, Aerospatiale disposes of another of Thomson's arguments: that Sharp must

resort to the Hague Convention in order to obtain the discovery it seeks here.  The Supreme

Court made plain that the Hague Convention does not displace the processes of the Federal Rules when

it comes to obtaining discovery abroad:

> An interpretation of the Hague Convention as the exclusive means for obtaining
> evidence located abroad would effectively subject every American court hearing a case
> involving a national of a contracting state to the internal laws of that state.
> Interrogatories and document requests are staples of international commercial
> litigation, no less than of other suits, yet a rule of exclusivity would subordinate the
> court's supervision of even the most routine of these pretrial proceedings to the actions
> or, equally, to the inactions of foreign judicial authorities.

482 US at 539.

That said, Sharp may be well advised to proceed simultaneously under the more cumbersome processes of the Hague Convention.  The undersigned understands that a motion for discovery invoking that procedure is pending before the court which may wish to give that matter its prompt attention.

Thomson's remaining arguments deserve only brief attention.  The previous production of 26,000 pages of documents by no means establishes substantial compliance with Sharp's discovery requests all of which appear to call for relevant evidence.  This court's March 26 decision denying discovery of the EC's *confidential* decision provides little basis for denial of the present discovery.  The discovery sought here does not entail disclosure of confidential information of an international entity and thus does not implicate the comity interests that the court found persuasive.   See In re Cathode Ray Tube (CRT) Antitrust Litigation, 2014 WL 1247770 at *3-4 (N D Cal 2014).  The March 26 order did not expressly foreclose the discovery of documents Thomson produced to the EC authorities. Thomson argues, however, that producing such documents would be tantamount to invading the confidential processes of the EC and an end run around the March 26 order.  Mindful of the court's concern and instead of ordering production to Sharp's fourth category of requests, the undersigned recommends denial of the fourth category of Sharp's requests, but to forbid Thomson from withholding any document that falls into the fourth category if the document is otherwise responsive to Sharp's first three categories of requests.

Finally, it may be that allowing Sharp to proceed with the discovery it seeks here

will necessitate that this discovery be allowed to be taken after the present discovery deadline

has passed.  That should not be an obstacle to granting Sharp's motion for several reasons:  (1)

Thomson's late entry into the case almost made inevitable that some post-deadline discovery

would have to be allowed; (2) diligent efforts and cooperation between the parties should allow

the discovery sought here to be completed in a  matter of weeks, not months or years, so that

any additional time for taking this discovery should not unduly prolong the discovery period;

and (3) in the near future the court will be confronted with serious questions from the parties

about the scope, phasing and scheduling of the trial as well as, in all likelihood, motions under

FRCP 42(b) for separate proceedings; these matters will require serious attention and

consideration and allow the court factor in any unfinished discovery in addressing these issues.

   Accordingly, IT IS REPORTED AND RECOMMENDED that to the extent the

following discovery relates to the products at issue herein Sharp's motion to compel production

of documents and to produce one or more FRCP 30(b)(6) witnesses competent to testify on the

communications and meetings between Thomson SA and its competitors , Thomson SA's

control or actions though Thomson Consumer and the disposition of Thomson SA's CRT

business be GRANTED;

   IT IS FURTHER REPORTED AND RECOMMENDED that production to the fourth

category of Sharp's requests be DENIED but that notwithstanding that a document was

produced to the EC competition authorities it must be produced if it is otherwise responsive to

Sharp's requests;

1

2          IT IS FURTHER REPORTED AND RECOMMENDED that the parties be directed to

3   confer and, to the extent possible, work out a schedule for the prompt completion of the

4   foregoing discovery, so as not unduly to prolong the taking of discovery herein and that any

5

6   disputes with respect to the scheduling of the discovery ordered hereby and the specific

7   discovery requests at issue here be brought to the undersigned's attention.

8   IT IS SO ORDERED.

9

10

11  This __2d__ day of September 2014

12

13                                                    _____
                                                      Vaughn R Walker
14                                                    United States District Judge (Ret)

15

16          The Recommended Order of the Special Master is Accepted and Ordered /

17  Denied / Modified.

18

19

20  Dated:  September ___, 2014                        _____
                                                      Hon Samuel Conti
21                                                    United States District Judge

22

23

24

25

26

27

28

29

30

31

32

RECOMMENDED ORDER OF THE SPECIAL MASTER                              PAGE **8** OF **8**