1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: CATHODE RAY TUBE (CRT)  ) MDL No. 1917
ANTITRUST LITIGATION          )
                              ) Case No. C-07-5944-SC
_____ )
                              ) ORDER DENYING SHARP'S
This Order Relates To:        ) MOTION FOR LEAVE TO FILE
                              ) MOTION FOR RECONSIDERATION
Sharp Electronics Corp., et al. v. )
Hitachi, Ltd., et al., 13-cv-1173- )
SC                            )
                              )
                              )
ALL DIRECT PURCHASER ACTIONS  )
                              )
                              )
                              )
                              )
_____ )

I.   **INTRODUCTION**

        Now before the Court is an emergency motion filed by Sharp

Electronics Corporation and Sharp Electronics Manufacturing Company

of America, Inc. ("Sharp"), seeking leave to file a motion for

reconsideration pursuant to Civil Local Rule 7-9.  ECF No. 2750

("Recons. Mot.").  The motion seeks the Court's reconsideration of

its earlier ruling that Sharp failed to demonstrate excusable

neglect in missing the June 12, 2014 deadline to opt out of two

settlements between the Direct Purchaser Plaintiffs ("DPPs") and

///

///

the SDI and Hitachi Defendants[1] ("Proposed Settlements").  <u>In re</u>
<u>Cathode Ray Tube Antitrust Litigation</u>, Case No. C 07-5944-SC, 2014
WL 4181732 (N.D. Cal. Aug. 20, 2014), ECF No. 2746 ("Order").  The
motion is opposed.  ECF No. 2754 ("SDI Opp'n"); 2755 ("Hitachi
Opp'n"); 2756 ("Toshiba Joinder").  The Court held argument on the
motion on August 22, 2014, and counsel for Sharp, Hitachi, and the
DPPs were heard.  ECF No. 2759 ("Hr'g Tr.").  After considering the
parties' arguments and submissions, the Court DENIES Sharp's motion
for leave to file a motion for reconsideration.

## II.   BACKGROUND

The parties are familiar with the factual and procedural
background of the case, so an exhaustive review is unnecessary.
The facts relevant to the motion are set forth below and are based
on the parties' submissions and the Court's findings following the
hearing on the motion.  Defendants are allegedly manufacturers of
cathode ray tubes ("CRTs") and, in some cases, of finished products
as well.  In March 2013, Sharp filed a direct action suit against a
host of defendants including the Settling Defendants.  ECF No.
1604-2 ("Sharp Compl.").

On April 14, 2014 the Court granted provisional certification
to a class in the Proposed Settlements.  ECF No. 2534 ("Prelim.

---

[1] The SDI Defendants include Samsung SDI Co. Ltd. (f/k/a Samsung Display Devices Co., Ltd.), Samsung SDI America, Inc., Samsung SDI Brasil, Ltd., Tianjin Samsung SDI Co., Ltd., Samsung Shenzhen SDI Co., Ltd., SDI Malaysia Sdn. Bhd., and SDI Mexico S.A. de C.V. (collectively "SDI").  The DPP's proposed settlement with Hitachi includes Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display Inc.), Hitachi America, Ltd., Hitachi Asia, Ltd., and Hitachi Electronic Devices (USA) Inc. (collectively, "Hitachi").  SDI and Hitachi are collectively referred to as the "Settling Defendants."

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

Approval Order"). Subsequently, the Settlement Administrator set the deadline to opt out of the Proposed Settlements for June 12, 2014. The Settlement Administrator mailed notice to the class members including eight addresses for various Sharp entities.[2] ECF No. 2713-1 ("Murray Sharp Decl.") ¶¶ 3-4. None of the Sharp notices were returned. Id. ¶ 4. The Settlement Administrator also published notice in the Wall Street Journal, established a website with copies of the relevant notices and a Frequently Asked Questions page with the June 12 deadline, and activated a toll-free telephone line with customer service representatives available to answer questions related to the class settlement. Id. ¶¶ 6-8.

Before, during, and after the June 12 deadline, Sharp was actively litigating against the Settling Defendants. See ECF No. 2698 ("Opt-Out Mot.") at 1-2 (discussing Sharp's litigation against the Settling Defendants). Nonetheless, Sharp did not submit an opt-out notice to the Settlement Administrator by the June 12 deadline. Instead, on June 26, 2014, after DPPs' counsel contacted counsel for Sharp and pointed out that an opt-out request had not been received from Sharp, Sharp immediately submitted its opt-out. ECF No. 2715-1 ("Saveri Decl.") ¶¶ 3, 6. As a result, Sharp was included on the list of opt-outs filed by the DPPs on the court-ordered deadline of June 26, the earliest date on which the

---

[2] At the hearing, counsel for Sharp was unaware of the number of notices received. Hr'g Tr. at 13:13-15:7. Apparently the notices may have been directed to other Sharp entities around the world, while only Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. are actively litigating claims in this case. It is unclear from the factual record whether Sharp has a system in place for forwarding these notices to a central location for processing. In any event, what is clear is that Sharp received, but failed to process, at least one notice of the Proposed Settlements with the opt-out deadline.

**United States District Court**
For the Northern District of California

1   Settling Defendants were notified of the list of opt-outs.  Id. ¶

2   6.  Twelve days later, counsel for Sharp contacted SDI and

3   Hitachi's counsel seeking to stipulate to an extension of the opt-

4   out deadline, but Hitachi refused.  ECF No. 2698-1 ("Benson Decl.")

5   ¶ 6.

6        On July 23, 2014, Sharp filed a motion seeking to confirm the

7   validity of its opt-out request or, alternatively, to enlarge the

8   time to opt out of the Proposed Settlements.  The Court denied the

9   motion, finding that the weight of the factors identified by the

10  Supreme Court in Pioneer Investment Services Co. v. Brunswick

11  Associates Ltd. Partnership, 507 U.S. 380 (1993), militated against

12  a finding of "excusable neglect."  Order at *3.  Specifically, the

13  Court concluded that, under the factors identified in Pioneer,

14  Sharp failed to demonstrate excusable neglect because it (1) failed

15  to provide anything more than a mere "generalized assertion" that

16  the absent class members would be prejudiced if Sharp were not

17  permitted to opt out, (2) offered no "explanation as to why it

18  missed the applicable opt-out deadline aside from mentioning that

19  notice was 'inadvertently not . . . sent to outside counsel for the

20  Sharp Plaintiffs,'" id. (quoting Benson Decl. ¶ 5), and (3) ignored

21  the fact that, in addition to the initial two week delay in

22  submitting opt-out notice, Sharp also waited twelve more days

23  before contacting the Settling Defendants seeking their position on

24  the issue.  Id.

25       At the same time, the Court granted a parallel motion by Dell

26  Inc. and Dell Products L.P. ("Dell"), finding various

27  distinguishing facts rendered Dell's neglect excusable.  Id. at *3-

28  4.  The Court also concluded, citing a long line of cases, that

Sharp's litigation conduct was insufficient to opt it out of the Proposed Settlements.  Id. at *4-5 (citing Bowman v. UBS Fin. Servs., Inc., No. C-04-3525, 2007 WL 1456037, at *2 (N.D. Cal. May 17, 2007) (collecting cases)).

## III. **LEGAL STANDARD**

Civil Local Rule 7-9 requires a party seeking to file a motion for reconsideration to obtain leave of the court.  Civ. L.R. 7-9(a); Dennis v. Chappell, 5:98-cv-21027-JF, 2014 WL 710102, at *3 (N.D. Cal. Feb. 24, 2014).  The moving party must "specifically show reasonable diligence in bringing the motion," as well as one of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought.  The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

> (2) The emergence of new material facts or a change of law occurring after the time of such order; or

> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b)(1)-(3).  Furthermore, "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered."  Id. at (c).  "Whether or not to grant reconsideration is committed to the sound discretion of the court."  Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  IV.  **DISCUSSION**

2       The instant motion seeks leave from the Court to file a motion

3  for reconsideration.  Specifically, Sharp seeks reconsideration

4  under Local Rule 7-9(b)(3), which provides for reconsideration when

5  there is "[a] manifest failure by the Court to consider material

6  facts or dispositive legal arguments which were presented to the

7  Court before such interlocutory order."  Sharp argues

8  "reconsideration is appropriate here because material facts were

9  not considered in the Court's Order."  Recons. Mot. at 3.

10      The material facts allegedly not considered in the Court's

11 prior order are relevant to three findings made in support of the

12 Court's conclusion that Sharp failed to show excusable neglect.

13 First, the Court found that "neither Sharp nor the DPPs provide any

14 detail above generalized assertions of prejudice."  Order at *3

15 (citing ECF Nos. 2715 ("DPPs Br.") at 3-4; Saveri Decl. ¶ 9).

16 Accordingly, "the Court [did] not ascribe significant weight" to

17 the prejudice factor in Pioneer.  Id.  Second, as to the length of

18 delay, the Court found that even if it were to credit Sharp's

19 conclusion that missing the opt-out deadline by two weeks was "de

20 minimis," Sharp "fail[ed] to note that after filing its request for

21 exclusion, counsel waited an additional twelve days before

22 contacting opposing counsel . . . ."  Id.  Finally, the Court found

23 that "Sharp has offered no explanation as to why it missed the

24 applicable opt-out deadline aside from mentioning that notice was

25 'inadvertently not . . . sent to outside counsel for the Sharp

26 Plaintiffs.'"  Id. (quoting Benson Decl. ¶ 5).  Accordingly, the

27 Court concluded that the facts offered by Sharp were "simply

28 insufficient to justify a finding of excusable neglect."  Id.

**United States District Court**
For the Northern District of California

1    In the instant motion, Sharp suggests that "[i]n coming to
2  this conclusion, the Court relied on three factual ambiguities that
3  could have been corrected . . . ," and "submit[s] that these
4  factual ambiguities relied upon by the Court can and should be
5  clarified in the interests of justice . . . ." Recons. Mot. at 3.
6  First, as to the question of prejudice, Sharp now offers a detailed
7  description of its expert's estimates of Sharp's overcharges at the
8  hands of the Settling Parties. Specifically Sharp's expert
9  estimates, based on Sharp's $334.8 million in purchases from the
10 Settling Defendants, that Sharp was overcharged $14.1 million by
11 Hitachi and $22.5 million by SDI. After trebling, this amounts to
12 $109.8 million in damages. In contrast, if Sharp remains in the
13 class, Sharp estimates its pro rata share of the Proposed
14 Settlements will be approximately $1.3 million. As a result, Sharp
15 contends that both it and the DPP settlement class will be severely
16 prejudiced should Sharp be forced to share in the Proposed
17 Settlements. Second, Sharp specifically addresses the previously
18 unexplained twelve-day delay between submitting its untimely opt-
19 out request and contacting opposing counsel. Sharp contends that
20 during those twelve days, "counsel for Sharp diligently conferred
21 with both its clients and counsel for Dell, and conducted relevant
22 legal research." Recons. Mot. at 5. Accordingly, Sharp argues the
23 length of delay factor should not weigh against them. Finally,
24 Sharp expands on its earlier explanation for missing the opt-out
25 deadline. Now Sharp explains its procedures for handling opt-out
26 notices and contends that those "procedures appear to have been
27 unsuccessful in this single instance for a simple reason: the
28 individual at [Sharp] responsible for reviewing these notices

**United States District Court**
For the Northern District of California

1  failed to forward the relevant notice to legal counsel."  Recons.

2  Mot. at 6.

3      Defendants argue that the Court should not consider these

4  clarifying facts because Sharp has not met the standard under Local

5  Rule 7-9(b)(3).  Simply put, Defendants argue the Court should not

6  consider this newly offered evidence because these facts were known

7  to Sharp at the time of its earlier motion and were nonetheless not

8  raised in its submissions.  See Christie v. Iopa, 176 F.3d 1231,

9  1239 n.5 (9th Cir. 1999) ("[W]e do not consider evidence or

10  arguments presented for the first time in a motion for

11  reconsideration."); Love v. Permanente Med. Grp., No. C-12-05679

12  WHO(DMR), 2014 WL 720744, at *2 (N.D. Cal. Feb. 24, 2014) (denying

13  a motion for reconsideration based on facts "which should have been

14  put before the court in the first instance"); cf. Exxon Shipping

15  Co. v. Baker, 554 U.S. 471, 485 n.5 (2008) (noting that under

16  Federal Rule of Civil Procedure 59(e), a motion to alter or amend

17  judgment "may not be used to relitigate old matters, or to raise

18  arguments or present evidence that could have been raised prior to

19  entry of judgment").  Furthermore, Defendants point out that

20  Sharp's proffered ground for reconsideration -- the failure of the

21  Court to consider material facts which Sharp presented in its

22  earlier motion -- ignores the fact that "the Court's identification

23  of material facts missing from Sharp's motion demonstrates a

24  thorough consideration of the facts that were actually presented to

25  the Court."  Hitachi Opp'n at 2 (citing Order at 7) (emphasis in

26  original); see also SDI Opp'n at 3 ("Sharp does not attempt to

27  point the Court to any facts or arguments that were made in its

28  prior submissions which the Court failed to consider.") (emphasis

United States District Court
For the Northern District of California

in original).  Finally, Defendants contend that even if the Court were to consider the new facts offered by Sharp, they do nothing to alter the Court's prior conclusion that the _Pioneer_ factors weigh against a finding of excusable neglect.

Defendants are right.  Undoubtedly, the facts discussed in Sharp's motion would have been relevant to the Court's weighing of the factors under _Pioneer_ had they been presented in Sharp's earlier motion.  _See Pioneer_, 507 U.S. at 395 (noting that the excusable neglect inquiry is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission").  However, the Court is only able to weigh the facts which the parties put before it.  _See Traveler's Prop. Cas. Co. of Am. v. Centex Homes_, No. 11-3638-SC, 2012 WL 2135315, at *1 (N.D. Cal. June 12, 2012) (Conti, J.) (denying a motion for leave to file a motion for reconsideration because the "theory was never mentioned before, [therefore] the Court could not have wrongfully failed to consider it").  Civil Local Rule 7-9 seeks to avoid precisely this situation, by requiring that motions for leave to file motions for reconsideration raise either (1) a material change in facts or law which could not have been known with reasonable diligence _at the time of the earlier motion_, (2) the emergence of new facts "_occurring after the time of such order_," or (3) the failure of the Court to consider the factual and legal arguments _presented on the earlier motion_.  _See_ Civ. L.R. 7-9(b)(1)-(3) (emphasis added).  Sharp fails to satisfy this standard.

In its motion for reconsideration, Sharp does not point to any facts "which _were presented_ to the Court," that the Court failed to consider in its prior order.  _Id._ at (3) (emphasis added).  For

United States District Court
For the Northern District of California

1  example, in its original briefing, Sharp offered only the following

2  conclusory statement regarding prejudice to the absent class

3  members:

> The settlement class may suffer, however, if Sharp is
> prohibited from pursuing its individual opt-out cases
> against Samsung SDI and Hitachi. Unexpectedly including
> Sharp, a sizeable purchaser of CRTs, in the class would
> dramatically reduce the proportional recovery for other
> class members. It would be unfair to punish the settling
> class members because of Sharp's inadvertent two-week
> delay in providing formal opt-out notice.

9  Opt-Out Mot. at 4-5. The Court considered these allegations of

10 prejudice, and concluded that, while the prejudice factor weighed

11 in Sharp's favor, without more detail the Court could not "ascribe

12 significant weight to this factor."[3]  Order at *3. Specifically,

13 Sharp offered no information regarding (1) the amount of its

14 purchases from the Settling Defendants during the class period, (2)

---

[3] At the hearing on this motion, Sharp's counsel repeatedly
contended that the Court "might have inferred . . . that Sharp had
at least around three or four hundred million dollars in purchases,
from what was before the Court." Hr'g Tr. at 8:2-5; 9:16-17.
Apparently, counsel believes that the Court could infer the amount
of purchases by combining Sharp's characterization of itself as a
"sizeable purchaser of CRTs," Opt-Out Mot. at 4, with the DPPs'
counsel's declaration stating that "Sharp and Dell's CRT and CRT
Product purchases during the class period are in billions of
dollars[,] [f]or example Dell's counsel informed me today that its
purchases from Samsung SDI exceeded $1.6 billion." Saveri Decl. ¶
9. While the Court might have inferred that -- after all, such an
inference is consistent with Sharp's later-offered evidence that
Sharp had purchases from the Settling Defendants totaling $334.8
million -- such an inference is by no means the only one
mathematically available. ECF No. 2750-1 ("Gallo Recons. Decl.") ¶
6. Because the only concrete number quoted was Dell's purchases
against just one of the Settling Defendants, the Court could just
as easily have concluded that Sharp's purchases were significantly
smaller. Moreover, even if the Court were able to make such an
inference from the record before it, the Court still lacked any
basis for determining what percentage of Sharp's purchases from the
Settling Defendants constituted overcharges, and thus recoverable
damages in either the Proposed Settlements or in a separate opt-out
case, and what effect, if any, the amount of Sharp's recovery would
have on the class's recovery.

**United States District Court**
For the Northern District of California

what amount of those purchases Sharp considered to be overcharges, and hence recoverable damages, (3) how much Sharp would be entitled to under the settlement, or (4) what concrete impact Sharp's inclusion would have on the recovery of absent class members. Similarly, in its original briefing, Sharp's only proffered explanation as to why it failed to opt out of the class in a timely manner was "Sharp's outside litigation counsel had never received a copy of the notice indicating the June 12, 2014 deadline for opting out as it had inadvertently not been forwarded to litigation counsel by Sharp Electronics Corporation."  Opt-Out Mot. at 2; <u>see also</u> Benson Decl. ¶ 5.  The Court analyzed this explanation and found it lacking given the multiple forms of notice received by or available to Sharp, and based on <u>In re Static Random Access Memory (SRAM) Antitrust Litigation</u>, No. C 07-01819 CW, 2009 WL 2447802, at *2 (N.D. Cal. Aug. 7, 2009), in which Judge Wilken rejected a similarly vague explanation based on "an 'honest mistake' due to human error."  Finally, the Court found the length of delay factor weighed against Sharp, concluding that even if Sharp's initial fourteen day delay was, as it argued, "<u>de minimis</u>," Sharp failed to mention or explain its further twelve day delay before contacting defendants.[4]  As a result, the Court weighed the applicable factors

---

[4] At the hearing, Sharp's counsel made two points relevant to this twelve-day delay.  First, he contended that Sharp "had explained previously that we were consulting with our client, we were consulting with Dell, who was in the same boat, and we were doing legal research and trying to figure out what to do about the situation."  Hr'g Tr. at 11:21-25.  This is incorrect.  In fact, Sharp's briefing and accompanying declarations on the earlier motion gloss over the existence of this period and fail to explain what happened during those twelve days and why the delay occurred.  <u>See, e.g.</u>, Opt-Out Mot. at 2 (stating that "[a]fter confirming that it appeared on the opt-out list filed with the Court, counsel for Sharp contacted lead counsel for Hitachi and Samsung SDI to learn

United States District Court
For the Northern District of California

1   in light of the facts offered by Sharp.  Because Sharp cannot show

2   the existence of newly discovered facts, intervening changes in the

3   law, or factual or legal arguments the Court failed to consider,

4   Sharp's motion for leave to file a motion for reconsideration is

5   DENIED.

6        Nevertheless, even if the Court were to grant Sharp's motion,

7   many of the additional facts offered by Sharp would not

8   meaningfully alter the Court's analysis.  For instance, even

whether they would take the position that Sharp's opt-out was
ineffective as untimely" but failing to mention Sharp's counsel
only did so twelve days after the opt-out list was filed) (citing
Benson Decl. ¶ 6); Benson Decl. ¶¶ 2-6 (describing Sharp's actions
immediately after discovering that it missed the opt-out deadline,
but skipping directly from that point to July 8, when its counsel
first spoke to opposing counsel).  Second, also at the hearing,
Sharp's counsel stated that in SRAM there was a "six-week delay on
the plaintiff's side of the case."  Hr'g Tr. at 12:23-24.  As a
result, Sharp argues the Court misweighed the length of delay
factor because "[c]lass counsel and [Sharp] discussed this fact the
very first day when we got Sharp's name on the list" of opt-outs.
Id. at 12:20-22.  However the facts of SRAM are somewhat more
nuanced.  In SRAM, Intel realized it had failed to opt out twenty-
three days after the applicable deadline, a period similar to the
fourteen days at issue here.  Intel immediately contacted the
"outside counsel and several Defendants to inform them of its
intent to opt out and to find the most efficient remedy," similar
to Sharp's immediate contact with the DPPs' counsel here.  2009 WL
2447802, at *1.  Nonetheless, as counsel stated, six weeks after
discovering the error and notifying outside counsel and the
defendants of the issue, Intel contacted Plaintiffs' lead counsel
for the first time and discussed the best course of action.  Three
days later, Intel filed a motion seeking an enlargement of time.
While it is true that the six week period before contacting all
relevant counsel is significantly longer than the one at issue
here, that fact does not alter the Court's treatment of the SRAM
case.  First, the Court did not discuss the SRAM case's relevance
to the length of delay factor, instead relying on it in addressing
Sharp's explanation for the delay.  Order at 7.  Second, and most
importantly, the Court agrees with the SRAM court's assessment of
the failure to promptly contact opposing counsel.  After
discovering its failure to meet the opt-out deadline, Sharp had two
options: file a motion for an extension of time or obtain the
consent of the opposing parties and file a stipulation.  SDI and
Hitachi would have needed to agree to such a stipulation.  As a
result, Sharp's "delay belies its argument that it acted reasonably
and diligently."  SRAM, at *3.

considering the additional facts offered by Sharp, it is by no means clear that the class will suffer significant prejudice if Sharp is included in the Proposed Settlements.  As Defendants point out, under the Proposed Settlements, Sharp will be entitled to a pro rata share of the settlement proceeds.  According to Sharp's estimates, its pro rata share is likely to amount to approximately $1.3 million.  As a result, Sharp's recovery from the Proposed Settlements would only reduce the class's recovery by 2.8 percent. Other courts have found even larger reductions in absent class members' recoveries only slightly prejudicial.  See Cassese v. Wash. Mut., Inc., No. 05-cv-2724 (ADS)(ARL), 2013 WL 5502831, at *2 (E.D.N.Y. Oct. 1, 2013) (concluding that a difference of less than five percent in the class' recovery would only have "a relatively slight prejudicial effect" in an excusable neglect analysis).  As a result, the Court still would not "ascribe significant weight" to the prejudice to absent class members.  Order at *3.

Similarly, even considering Sharp's newly offered facts, the length of delay factor weighs against a finding of excusable neglect.  First, neither Sharp's initial two-week delay in submitting its opt-out notice, nor the twelve-day delay prior to contacting defense counsel is particularly long or short. Nonetheless, the Ninth Circuit has reversed a finding of excusable neglect where a party missed the applicable deadline by just two days.  See Kyle v. Campbell Soup Co., 28 F.3d 928, 931-32 (9th Cir. 1994) (relying on the party seeking the extension's failure to present "a persuasive justification" for missing the applicable deadline), questioned by Mendez v. Knowles, 556 F.3d 757, 766 n.3 (9th Cir. 2009); see also Russell v. United States, No. C 09-03239

1   WHA, 2010 WL 1691634, at *4 (N.D. Cal. Apr. 23, 2010) (finding that

2   while an opt-out request "was only one day late, it was

3   nevertheless late," and concluding the moving party could not

4   demonstrate excusable neglect).  Furthermore, as to the previously

5   unexplained twelve-day delay before contacting opposing counsel,

6   Sharp's counsel offers no reason why its actions during that period

7   -- conferring with Dell, the DPPs, and Sharp; and conducting legal

8   research -- precluded it from contacting opposing counsel.

9   Accordingly, even if Sharp's counsel is right that nothing material

10  changed in this litigation during those twelve days, Hr'g Tr. 12:6-

11  9, the failure to promptly contact opposing counsel after

12  discovering the missed opt-out deadline still "belies [Sharp's]

13  argument that it acted reasonably and diligently." SRAM, at *3.

14          Finally, while Sharp offers additional detail about its

15  explanation for the delay, its explanation remains unsatisfying.

16  Just as the Ninth Circuit concluded that "failure to read an

17  applicable rule is one of the least compelling excuses that can be

18  offered," Pincay v. Andrews, 389 F.3d 853, 859-60 (9th Cir. 2004),

19  so too is pointing to "oversight" in failing to adequately

20  "review[] such notices [and] fail[ing] to forward the relevant

21  notice to legal counsel."[5]  Recons. Mot. at 6.  Sharp is

22  [5] The Court does wish to clarify one point in its earlier order.

23  As the Ninth Circuit has repeatedly held, per se rules are
    inappropriate in weighing whether a party can establish excusable

24  neglect.  See Pincay, 389 F.3d at 859-60 ("[U]nder Pioneer, the
    correct approach is to avoid any per se rule."); see also Ahanchian

25  v. Xenon Pictures, Inc., 624 F.3d 1253, 1262 (9th Cir. 2010)
    (reversing a district court's conclusion that "a calendaring

26  mistake is the type of 'inadvertent mistake' that is not entitled
    to relief pursuant to Rule 60(b)(1)" as impermissibly adopting a

27  per se rule contrary to Pioneer).  While the Court concluded that
    "[i]nadvertence and miscommunication are insufficient excuses," the

28  Court did not intend to suggest that it believes that cases of
    inadvertence or miscommunication can never satisfy the excusable

United States District Court
For the Northern District of California

1  represented in this litigation by some of the most experienced and

2  able class action litigators in the country.  It received actual

3  notice of the Proposed Settlements and applicable opt-out deadline.

4  The Court's preliminary approval order, even if it did not specify

5  the opt-out deadline, should have put experienced class action

6  counsel on notice that Sharp had two choices: remain in the class

7  and be bound by the settlement, or opt out and continue pursuing

8  individual claims against the Settling Defendants.  See Silvercreek

9  Mgmt., Inc. v. Banc of Am. Secs., LLC, 534 F.3d 469, 473 (5th Cir.

10 2008) (finding no excusable neglect in failing to timely opt out in

11 part because, even where the party did not receive actual notice

12 from the settlement administrator, experienced counsel received the

13 district court's preliminary approval order and could have surmised

14 or otherwise inquired about the deadline).  Sophisticated parties

15 and experienced counsel know or should know that it is folly to

16 rely solely on receiving mailed notice of a pending class

17 settlement.  After all, while individual notice is required for all

18 identifiable class members, see Eisen v. Carlisle & Jacquelin, 417

19 U.S. 156, 176 (1974), even identifiable class members need not

20 neglect standard.  Instead, as the Court perhaps should have made
21 more clear, under the flexible standards elucidated by the Supreme
   Court and the Ninth Circuit, Sharp's vague explanation for the
22 delay -- that notice was inadvertently not sent to outside counsel
   -- was, like "a lawyer's mistake of law in reading a rule of
23 procedure[,] . . . not a compelling excuse."  Pincay, 389 F.3d at
   860; see also Steinfeld v. Discover Fin. Servs., No. C 12-01118
24 JSW, 2014 WL 1309352, at *4 (N.D. Cal. Mar. 31, 2014) (rejecting a
   late opt-out request where the only explanation cited for the delay
25 was "that his late submission was inadvertent").  Accordingly, as
   the Court found in its first order, when weighing the applicable
26 factors, Sharp's undisputed good faith and weak, "generalized
   assertions of prejudice," were insufficient to outweigh Sharp's
27 vague and unimpressive explanation for the delay and unexplained
   twelve-day delay prior to contacting opposing counsel.  This
28 conclusion falls well within the Court's discretion under Pioneer
   and subsequent Ninth Circuit law.

**United States District Court**
For the Northern District of California

1   actually receive such notice to be bound. <u>Silber v. Mabon</u>, 18 F.3d

2   1449, 1453 (9th Cir. 1994); <u>see also</u> <u>Torrisi v. Tucson Elec. Power</u>

3   <u>Co.</u>, 8 F.3d 1370, 1375 (9th Cir. 1993) (concluding notice was

4   adequate even where it was received by some class members after the

5   opt out date). As the Court previously found, the notice in this

6   case was constitutionally sufficient. Order at *3. In short, as

7   Judge Kozinski wrote, examining explanations for missed deadlines

8   accepted by the Ninth Circuit:

9       Was this a class action that bristled with client
        "consultation difficulties"? Was the client distracted
10      by a divorce and job change, and he had lost his lawyer
        to boot? Was the rule confusing or the notice of the
11      deadline unusual? No, no and no. The action was not
        complicated; the lawyer worked at a large, sophisticated
12      law firm; and the rule is . . . clear . . . .

13  <u>Pincay</u>, 389 F.3d at 862 (Kozinski, J., dissenting) (citing <u>Pioneer</u>,

14  507 U.S. at 398; <u>Laurino v. Syringa Gen. Hosp.</u>, 279 F.3d 750, 753

15  (9th Cir. 2002); <u>Marx v. Loral Corp.</u>, 87 F.3d 1049, 1053-54 (9th

16  Cir. 1996)). As a result the Court remains unpersuaded by Sharp's

17  explanation for its delay.

18      All that said, at least one of Sharp's points, the prejudice

19  it would experience as a result of being bound by the Proposed

20  Settlements, would merit serious consideration were the Court to

21  grant reconsideration. While <u>Pioneer</u> focused on the potential for

22  prejudice to the non-moving parties, the Ninth Circuit has stated

23  that consideration of the prejudice to the movant should also be

24  considered in analyzing excusable neglect. <u>See</u> <u>Feinstein v. Serv.</u>

25  <u>Solutions Grp. LLC</u>, 464 F. App'x 670, 671 (9th Cir. 2012) (citing

26  <u>Lemoge v. United States</u>, 587 F.3d 1188, 1196 (9th Cir. 2009) for

27  the proposition that "prejudice to the moving party should also be

28  considered in any analysis of the first <u>Pioneer</u> . . . factor"). As

**United States District Court**
For the Northern District of California

1  Sharp points out, should it remain in the Proposed Settlements, it

2  will receive $1.3 million in exchange for releasing individual

3  claims it believes are worth $109.8 million.  This is a substantial

4  prejudice, even if the Court grants some credence to Defendants'

5  contrary suggestions that Sharp's claims (1) ignore litigation

6  risk, (2) are irrelevant because "[a]ll settlements require

7  plaintiffs to accept less than the alleged full value of their

8  claim," and (3) overlook the possibility of joint and several

9  liability.[6]  Hitachi Opp'n at 3.  While the Court previously

10 weighed the prejudice factor lightly in Sharp's favor, this

11 evidence would (even more than the detail provided by Dell and the

12 DPPs in support of Dell's parallel motion, Order at *3) tip the

13 scales on prejudice substantially in Sharp's favor.  Nonetheless,

14 the Court does not reach the issue because Sharp only made passing

15 and conclusory reference to the prejudice it might suffer by being

16 included in the Proposed Settlements in its earlier motion to

17 enlarge the opt-out period.  In fact, Sharp's only previous

18 reference to this issue is limited to portions of a single

19 paragraph in the Benson Declaration.  See Benson Decl. ¶ 14

20 ───────────────
[6] Settling Defendants also suggest that "Sharp's 0.39 [percent]
21 recovery of total CRT purchases from the Hitachi and SDI Defendants
   'compares favorably to settlements finally approved in other price
22 fixing cases.'"  Hitachi Opp'n at 4 (quoting ECF No. 2728 ("DPPs'
   Class Cert. Br.")) (citing Fisher Bros. v. Mueller Brass Co., 630
23 F. Supp. 493, 499 (E.D. Pa. 1985)).  However, the Settling
   Defendants, both of which cite this passage as support for their
24 argument that Sharp's recovery compares favorably to other
   settlements, seem to have misread DPPs' argument and the case they
25 cite.  Fisher Brothers v. Mueller Brass Co., addressed recoveries
   between 0.1 and 2.4 percent of defendants' total sales.  On the
26 present motion the parties are not discussing whether the class's
   recovery constitutes a sufficient percentage of the Settling
27 Defendants' sales, but rather whether Sharp's pro rata portion of
   the Proposed Settlements constitutes such a small percentage of
28 Sharp's alleged damages as to be substantially prejudicial to
   Sharp.  As a result, Fisher is inapposite.

**United States District Court**
For the Northern District of California

1   (stating that "[s]ubstantial harm or prejudice to Sharp . . . would

2   occur if either form of relief requested through Sharp's Motion

3   were not granted," and that "Sharp was a sizeable purchaser of CRTs

4   during the relevant period").  Because these facts were not

5   presented to the Court at the time of its earlier order, the Court

6   could not have "manifest[ly] fail[ed] . . . to consider" any

7   material facts that were actually presented.  <u>See</u> Civ. L.R. 7-

8   9(b)(3).

9

10  **V.    <u>CONCLUSION</u>**

11       In closing, the Court notes that it is not without sympathy

12  for Sharp and its counsel.  The Court has repeatedly been impressed

13  by the quality and diligence of counsel for all parties in this

14  case.  Furthermore, Sharp's counsel's genuine and candid apology

15  for this regrettable incident is appreciated.  Yet sympathy is not

16  a part of the excusable neglect analysis under <u>Pioneer</u>.  Instead,

17  the Court must engage in a fact-bound inquiry, taking account of

18  the relevant circumstances before determining whether a party's

19  neglect is excusable.  In doing so, the Court is, as all courts

20  are, dependent on the parties to submit and develop the factual

21  record necessary to resolve the issue.  While the Court cannot say

22  whether it would reach the same conclusion now, having had the

23  benefit of the additional facts offered in support of the instant

24  motion, Sharp took that risk when it chose not to present these

25  facts to the Court on its earlier motion.  Sharp now seeks the

26  proverbial second bite at the apple in an effort to remedy this

27  error, but that is not the purpose of the reconsideration process.

28  After neglecting to meet the applicable opt-out deadline by

18

fourteen days, neglecting to notify opposing counsel for twelve more days, and neglecting to offer admittedly material facts that it could have offered in support of its earlier motion, Sharp's motion for leave to file a motion for reconsideration is DENIED.

IT IS SO ORDERED.

Dated: September 8, 2014 

UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California