**United States District Court**
For the Northern District of California

1

2

3

4

5                IN THE UNITED STATES DISTRICT COURT

6            FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  IN RE: CATHODE RAY TUBE (CRT)    )  MDL No. 1917
   ANTITRUST LITIGATION             )
9                                   )  Case No. C-07-5944-SC
   _____ )
10                                  )  ORDER DENYING SHARP'S
   This Order Relates To:          )  MOTION FOR LEAVE TO FILE
11                                  )  MOTION FOR RECONSIDERATION
   Sharp Electronics Corp., et al. v. )
12 Hitachi, Ltd., et al., 13-cv-1173- )
   SC                               )
13                                  )
   ALL DIRECT PURCHASER ACTIONS     )
14                                  )
                                    )
15                                  )
                                    )
16                                  )
   _____ )

17

18  **I.    INTRODUCTION**

19      Now before the Court is an emergency motion filed by Sharp

20  Electronics Corporation and Sharp Electronics Manufacturing Company

21  of America, Inc. ("Sharp"), seeking leave to file a motion for

22  reconsideration pursuant to Civil Local Rule 7-9.  ECF No. 2750

23  ("Recons. Mot.").  The motion seeks the Court's reconsideration of

24  its earlier ruling that Sharp failed to demonstrate excusable

25  neglect in missing the June 12, 2014 deadline to opt out of two

26  settlements between the Direct Purchaser Plaintiffs ("DPPs") and

27  ///

28  ///

**United States District Court**
For the Northern District of California

1  the SDI and Hitachi Defendants[1] ("Proposed Settlements").  <u>In re</u>

2  <u>Cathode Ray Tube Antitrust Litigation</u>, Case No. C 07-5944-SC, 2014

3  WL 4181732 (N.D. Cal. Aug. 20, 2014), ECF No. 2746 ("Order").  The

4  motion is opposed.  ECF No. 2754 ("SDI Opp'n"); 2755 ("Hitachi

5  Opp'n"); 2756 ("Toshiba Joinder").  The Court held argument on the

6  motion on August 22, 2014, and counsel for Sharp, Hitachi, and the

7  DPPs were heard.  ECF No. 2759 ("Hr'g Tr.").  After considering the

8  parties' arguments and submissions, the Court DENIES Sharp's motion

9  for leave to file a motion for reconsideration.

10

11  **II.   BACKGROUND**

12      The parties are familiar with the factual and procedural

13  background of the case, so an exhaustive review is unnecessary.

14  The facts relevant to the motion are set forth below and are based

15  on the parties' submissions and the Court's findings following the

16  hearing on the motion.  Defendants are allegedly manufacturers of

17  cathode ray tubes ("CRTs") and, in some cases, of finished products

18  as well.  In March 2013, Sharp filed a direct action suit against a

19  host of defendants including the Settling Defendants.  ECF No.

20  1604-2 ("Sharp Compl.").

21      On April 14, 2014 the Court granted provisional certification

22  to a class in the Proposed Settlements.  ECF No. 2534 ("Prelim.

23

24  [1] The SDI Defendants include Samsung SDI Co. Ltd. (f/k/a Samsung
    Display Devices Co., Ltd.), Samsung SDI America, Inc., Samsung SDI
25  Brasil, Ltd., Tianjin Samsung SDI Co., Ltd., Samsung Shenzhen SDI
    Co., Ltd., SDI Malaysia Sdn. Bhd., and SDI Mexico S.A. de C.V.
26  (collectively "SDI").  The DPP's proposed settlement with Hitachi
    includes Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display
27  Inc.), Hitachi America, Ltd., Hitachi Asia, Ltd., and Hitachi
    Electronic Devices (USA) Inc. (collectively, "Hitachi").  SDI and
28  Hitachi are collectively referred to as the "Settling Defendants."

2

**United States District Court**
For the Northern District of California

1  Approval Order").  Subsequently, the Settlement Administrator set

2  the deadline to opt out of the Proposed Settlements for June 12,

3  2014.  The Settlement Administrator mailed notice to the class

4  members including eight addresses for various Sharp entities.[2]  ECF

5  No. 2713-1 ("Murray Sharp Decl.") ¶¶ 3-4.  None of the Sharp

6  notices were returned.  Id. ¶ 4.  The Settlement Administrator also

7  published notice in the Wall Street Journal, established a website

8  with copies of the relevant notices and a Frequently Asked

9  Questions page with the June 12 deadline, and activated a toll-free

10 telephone line with customer service representatives available to

11 answer questions related to the class settlement.  Id. ¶¶ 6-8.

12      Before, during, and after the June 12 deadline, Sharp was

13 actively litigating against the Settling Defendants.  See ECF No.

14 2698 ("Opt-Out Mot.") at 1-2 (discussing Sharp's litigation against

15 the Settling Defendants).  Nonetheless, Sharp did not submit an

16 opt-out notice to the Settlement Administrator by the June 12

17 deadline.  Instead, on June 26, 2014, after DPPs' counsel contacted

18 counsel for Sharp and pointed out that an opt-out request had not

19 been received from Sharp, Sharp immediately submitted its opt-out.

20 ECF No. 2715-1 ("Saveri Decl.") ¶¶ 3, 6.  As a result, Sharp was

21 included on the list of opt-outs filed by the DPPs on the court-

22 ordered deadline of June 26, the earliest date on which the

23

24 [2] At the hearing, counsel for Sharp was unaware of the number of
notices received.  Hr'g Tr. at 13:13-15:7.  Apparently the notices

25 may have been directed to other Sharp entities around the world,
while only Sharp Electronics Corporation and Sharp Electronics

26 Manufacturing Company of America, Inc. are actively litigating
claims in this case.  It is unclear from the factual record whether

27 Sharp has a system in place for forwarding these notices to a
central location for processing.  In any event, what is clear is

28 that Sharp received, but failed to process, at least one notice of
the Proposed Settlements with the opt-out deadline.

**United States District Court**
For the Northern District of California

1  Settling Defendants were notified of the list of opt-outs.  Id. ¶

2  6.  Twelve days later, counsel for Sharp contacted SDI and

3  Hitachi's counsel seeking to stipulate to an extension of the opt-

4  out deadline, but Hitachi refused.  ECF No. 2698-1 ("Benson Decl.")

5  ¶ 6.

6      On July 23, 2014, Sharp filed a motion seeking to confirm the

7  validity of its opt-out request or, alternatively, to enlarge the

8  time to opt out of the Proposed Settlements.  The Court denied the

9  motion, finding that the weight of the factors identified by the

10 Supreme Court in Pioneer Investment Services Co. v. Brunswick

11 Associates Ltd. Partnership, 507 U.S. 380 (1993), militated against

12 a finding of "excusable neglect."  Order at *3.  Specifically, the

13 Court concluded that, under the factors identified in Pioneer,

14 Sharp failed to demonstrate excusable neglect because it (1) failed

15 to provide anything more than a mere "generalized assertion" that

16 the absent class members would be prejudiced if Sharp were not

17 permitted to opt out, (2) offered no "explanation as to why it

18 missed the applicable opt-out deadline aside from mentioning that

19 notice was 'inadvertently not . . . sent to outside counsel for the

20 Sharp Plaintiffs,'" id. (quoting Benson Decl. ¶ 5), and (3) ignored

21 the fact that, in addition to the initial two week delay in

22 submitting opt-out notice, Sharp also waited twelve more days

23 before contacting the Settling Defendants seeking their position on

24 the issue.  Id.

25     At the same time, the Court granted a parallel motion by Dell

26 Inc. and Dell Products L.P. ("Dell"), finding various

27 distinguishing facts rendered Dell's neglect excusable.  Id. at *3-

28 4.  The Court also concluded, citing a long line of cases, that

**United States District Court**
For the Northern District of California

1  Sharp's litigation conduct was insufficient to opt it out of the

2  Proposed Settlements.  Id. at *4-5 (citing Bowman v. UBS Fin.

3  Servs., Inc., No. C-04-3525, 2007 WL 1456037, at *2 (N.D. Cal. May

4  17, 2007) (collecting cases)).

5

6  **III.  LEGAL STANDARD**

7      Civil Local Rule 7-9 requires a party seeking to file a motion

8  for reconsideration to obtain leave of the court.  Civ. L.R. 7-

9  9(a); Dennis v. Chappell, 5:98-cv-21027-JF, 2014 WL 710102, at *3

10  (N.D. Cal. Feb. 24, 2014).  The moving party must "specifically

11  show reasonable diligence in bringing the motion," as well as one

12  of the following:

13      (1) That at the time of the motion for leave, a material
       difference in fact or law exists from that which was
14      presented to the Court before entry of the interlocutory
       order for which reconsideration is sought.  The party
15      also must show that in the exercise of reasonable
       diligence the party applying for reconsideration did not
16      know such fact or law at the time of the interlocutory
       order; or

17

18      (2) The emergence of new material facts or a change of
       law occurring after the time of such order; or

19      (3) A manifest failure by the Court to consider material
       facts or dispositive legal arguments which were presented
20      to the Court before such interlocutory order.

21  Civ. L.R. 7-9(b)(1)-(3).  Furthermore, "[n]o motion for leave to

22  file a motion for reconsideration may repeat any oral or written

23  argument made by the applying party in support of or in opposition

24  to the interlocutory order which the party now seeks to have

25  reconsidered."  Id. at (c).  "Whether or not to grant

26  reconsideration is committed to the sound discretion of the court."

27  Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian

28  Nation, 331 F.3d 1041, 1046 (9th Cir. 2003).

5

**United States District Court**
For the Northern District of California

1   **IV.   DISCUSSION**

2          The instant motion seeks leave from the Court to file a motion

3   for reconsideration.  Specifically, Sharp seeks reconsideration

4   under Local Rule 7-9(b)(3), which provides for reconsideration when

5   there is "[a] manifest failure by the Court to consider material

6   facts or dispositive legal arguments which were presented to the

7   Court before such interlocutory order."  Sharp argues

8   "reconsideration is appropriate here because material facts were

9   not considered in the Court's Order."  Recons. Mot. at 3.

10         The material facts allegedly not considered in the Court's

11  prior order are relevant to three findings made in support of the

12  Court's conclusion that Sharp failed to show excusable neglect.

13  First, the Court found that "neither Sharp nor the DPPs provide any

14  detail above generalized assertions of prejudice."  Order at *3

15  (citing ECF Nos. 2715 ("DPPs Br.") at 3-4; Saveri Decl. ¶ 9).

16  Accordingly, "the Court [did] not ascribe significant weight" to

17  the prejudice factor in Pioneer.  Id.  Second, as to the length of

18  delay, the Court found that even if it were to credit Sharp's

19  conclusion that missing the opt-out deadline by two weeks was "de

20  minimis," Sharp "fail[ed] to note that after filing its request for

21  exclusion, counsel waited an additional twelve days before

22  contacting opposing counsel . . . ."  Id.  Finally, the Court found

23  that "Sharp has offered no explanation as to why it missed the

24  applicable opt-out deadline aside from mentioning that notice was

25  'inadvertently not . . . sent to outside counsel for the Sharp

26  Plaintiffs.'"  Id. (quoting Benson Decl. ¶ 5).  Accordingly, the

27  Court concluded that the facts offered by Sharp were "simply

28  insufficient to justify a finding of excusable neglect."  Id.

**United States District Court**
For the Northern District of California

1    In the instant motion, Sharp suggests that "[i]n coming to

2   this conclusion, the Court relied on three factual ambiguities that

3   could have been corrected . . . ," and "submit[s] that these

4   factual ambiguities relied upon by the Court can and should be

5   clarified in the interests of justice . . . ."  Recons. Mot. at 3.

6   First, as to the question of prejudice, Sharp now offers a detailed

7   description of its expert's estimates of Sharp's overcharges at the

8   hands of the Settling Parties.  Specifically Sharp's expert

9   estimates, based on Sharp's $334.8 million in purchases from the

10  Settling Defendants, that Sharp was overcharged $14.1 million by

11  Hitachi and $22.5 million by SDI.  After trebling, this amounts to

12  $109.8 million in damages.  In contrast, if Sharp remains in the

13  class, Sharp estimates its pro rata share of the Proposed

14  Settlements will be approximately $1.3 million.  As a result, Sharp

15  contends that both it and the DPP settlement class will be severely

16  prejudiced should Sharp be forced to share in the Proposed

17  Settlements.  Second, Sharp specifically addresses the previously

18  unexplained twelve-day delay between submitting its untimely opt-

19  out request and contacting opposing counsel.  Sharp contends that

20  during those twelve days, "counsel for Sharp diligently conferred

21  with both its clients and counsel for Dell, and conducted relevant

22  legal research."  Recons. Mot. at 5.  Accordingly, Sharp argues the

23  length of delay factor should not weigh against them.  Finally,

24  Sharp expands on its earlier explanation for missing the opt-out

25  deadline.  Now Sharp explains its procedures for handling opt-out

26  notices and contends that those "procedures appear to have been

27  unsuccessful in this single instance for a simple reason: the

28  individual at [Sharp] responsible for reviewing these notices

**United States District Court**
For the Northern District of California

1  failed to forward the relevant notice to legal counsel."  Recons.

2  Mot. at 6.

3       Defendants argue that the Court should not consider these

4  clarifying facts because Sharp has not met the standard under Local

5  Rule 7-9(b)(3).  Simply put, Defendants argue the Court should not

6  consider this newly offered evidence because these facts were known

7  to Sharp at the time of its earlier motion and were nonetheless not

8  raised in its submissions.  See Christie v. Iopa, 176 F.3d 1231,

9  1239 n.5 (9th Cir. 1999) ("[W]e do not consider evidence or

10 arguments presented for the first time in a motion for

11 reconsideration."); Love v. Permanente Med. Grp., No. C-12-05679

12 WHO(DMR), 2014 WL 720744, at *2 (N.D. Cal. Feb. 24, 2014) (denying

13 a motion for reconsideration based on facts "which should have been

14 put before the court in the first instance"); cf. Exxon Shipping

15 Co. v. Baker, 554 U.S. 471, 485 n.5 (2008) (noting that under

16 Federal Rule of Civil Procedure 59(e), a motion to alter or amend

17 judgment "may not be used to relitigate old matters, or to raise

18 arguments or present evidence that could have been raised prior to

19 entry of judgment").  Furthermore, Defendants point out that

20 Sharp's proffered ground for reconsideration -- the failure of the

21 Court to consider material facts which Sharp presented in its

22 earlier motion -- ignores the fact that "the Court's identification

23 of material facts missing from Sharp's motion demonstrates a

24 thorough consideration of the facts that were actually presented to

25 the Court."  Hitachi Opp'n at 2 (citing Order at 7) (emphasis in

26 original); see also SDI Opp'n at 3 ("Sharp does not attempt to

27 point the Court to any facts or arguments that were made in its

28 prior submissions which the Court failed to consider.") (emphasis

8

**United States District Court**
For the Northern District of California

1  in original).  Finally, Defendants contend that even if the Court

2  were to consider the new facts offered by Sharp, they do nothing to

3  alter the Court's prior conclusion that the <u>Pioneer</u> factors weigh

4  against a finding of excusable neglect.

5      Defendants are right.  Undoubtedly, the facts discussed in

6  Sharp's motion would have been relevant to the Court's weighing of

7  the factors under <u>Pioneer</u> had they been presented in Sharp's

8  earlier motion.  <u>See</u> <u>Pioneer</u>, 507 U.S. at 395 (noting that the

9  excusable neglect inquiry is "at bottom an equitable one, taking

10  account of all relevant circumstances surrounding the party's

11  omission").  However, the Court is only able to weigh the facts

12  which the parties put before it.  <u>See</u> <u>Traveler's Prop. Cas. Co. of</u>

13  <u>Am. v. Centex Homes</u>, No. 11-3638-SC, 2012 WL 2135315, at *1 (N.D.

14  Cal. June 12, 2012) (Conti, J.) (denying a motion for leave to file

15  a motion for reconsideration because the "theory was never

16  mentioned before, [therefore] the Court could not have wrongfully

17  failed to consider it").  Civil Local Rule 7-9 seeks to avoid

18  precisely this situation, by requiring that motions for leave to

19  file motions for reconsideration raise either (1) a material change

20  in facts or law which could not have been known with reasonable

21  diligence <u>at the time of the earlier motion</u>, (2) the emergence of

22  new facts "<u>occurring after the time of such order</u>," or (3) the

23  failure of the Court to consider the factual and legal arguments

24  <u>presented on the earlier motion</u>.  <u>See</u> Civ. L.R. 7-9(b)(1)-(3)

25  (emphasis added). Sharp fails to satisfy this standard.

26      In its motion for reconsideration, Sharp does not point to any

27  facts "which <u>were presented</u> to the Court," that the Court failed to

28  consider in its prior order.  <u>Id.</u> at (3) (emphasis added).  For

9

**United States District Court**
For the Northern District of California

example, in its original briefing, Sharp offered only the following

conclusory statement regarding prejudice to the absent class

members:

> The settlement class may suffer, however, if Sharp is
> prohibited from pursuing its individual opt-out cases
> against Samsung SDI and Hitachi.  Unexpectedly including
> Sharp, a sizeable purchaser of CRTs, in the class would
> dramatically reduce the proportional recovery for other
> class members.  It would be unfair to punish the settling
> class members because of Sharp's inadvertent two-week
> delay in providing formal opt-out notice.

Opt-Out Mot. at 4-5.  The Court considered these allegations of

prejudice, and concluded that, while the prejudice factor weighed

in Sharp's favor, without more detail the Court could not "ascribe

significant weight to this factor."[3]  Order at *3.  Specifically,

Sharp offered no information regarding (1) the amount of its

purchases from the Settling Defendants during the class period, (2)

---

[3] At the hearing on this motion, Sharp's counsel repeatedly
contended that the Court "might have inferred . . . that Sharp had
at least around three or four hundred million dollars in purchases,
from what was before the Court."  Hr'g Tr. at 8:2-5; 9:16-17.
Apparently, counsel believes that the Court could infer the amount
of purchases by combining Sharp's characterization of itself as a
"sizeable purchaser of CRTs," Opt-Out Mot. at 4, with the DPPs'
counsel's declaration stating that "Sharp and Dell's CRT and CRT
Product purchases during the class period are in billions of
dollars[,] [f]or example Dell's counsel informed me today that its
purchases from Samsung SDI exceeded $1.6 billion."  Saveri Decl. ¶
9.  While the Court might have inferred that -- after all, such an
inference is consistent with Sharp's later-offered evidence that
Sharp had purchases from the Settling Defendants totaling $334.8
million -- such an inference is by no means the only one
mathematically available.  ECF No. 2750-1 ("Gallo Recons. Decl.") ¶
6.  Because the only concrete number quoted was Dell's purchases
against just one of the Settling Defendants, the Court could just
as easily have concluded that Sharp's purchases were significantly
smaller.  Moreover, even if the Court were able to make such an
inference from the record before it, the Court still lacked any
basis for determining what percentage of Sharp's purchases from the
Settling Defendants constituted overcharges, and thus recoverable
damages in either the Proposed Settlements or in a separate opt-out
case, and what effect, if any, the amount of Sharp's recovery would
have on the class's recovery.

**United States District Court**
For the Northern District of California

1  what amount of those purchases Sharp considered to be overcharges,

2  and hence recoverable damages, (3) how much Sharp would be entitled

3  to under the settlement, or (4) what concrete impact Sharp's

4  inclusion would have on the recovery of absent class members.

5  Similarly, in its original briefing, Sharp's only proffered

6  explanation as to why it failed to opt out of the class in a timely

7  manner was "Sharp's outside litigation counsel had never received a

8  copy of the notice indicating the June 12, 2014 deadline for opting

9  out as it had inadvertently not been forwarded to litigation

10  counsel by Sharp Electronics Corporation."  Opt-Out Mot. at 2; see

11  also Benson Decl. ¶ 5.  The Court analyzed this explanation and

12  found it lacking given the multiple forms of notice received by or

13  available to Sharp, and based on In re Static Random Access Memory

14  (SRAM) Antitrust Litigation, No. C 07-01819 CW, 2009 WL 2447802, at

15  *2 (N.D. Cal. Aug. 7, 2009), in which Judge Wilken rejected a

16  similarly vague explanation based on "an 'honest mistake' due to

17  human error."  Finally, the Court found the length of delay factor

18  weighed against Sharp, concluding that even if Sharp's initial

19  fourteen day delay was, as it argued, "de minimis," Sharp failed to

20  mention or explain its further twelve day delay before contacting

21  defendants.[4]  As a result, the Court weighed the applicable factors

---

[4] At the hearing, Sharp's counsel made two points relevant to this twelve-day delay.  First, he contended that Sharp "had explained previously that we were consulting with our client, we were consulting with Dell, who was in the same boat, and we were doing legal research and trying to figure out what to do about the situation."  Hr'g Tr. at 11:21-25.  This is incorrect.  In fact, Sharp's briefing and accompanying declarations on the earlier motion gloss over the existence of this period and fail to explain what happened during those twelve days and why the delay occurred. See, e.g., Opt-Out Mot. at 2 (stating that "[a]fter confirming that it appeared on the opt-out list filed with the Court, counsel for Sharp contacted lead counsel for Hitachi and Samsung SDI to learn

11

**United States District Court**
For the Northern District of California

1    in light of the facts offered by Sharp.  Because Sharp cannot show

2    the existence of newly discovered facts, intervening changes in the

3    law, or factual or legal arguments the Court failed to consider,

4    Sharp's motion for leave to file a motion for reconsideration is

5    DENIED.

6         Nevertheless, even if the Court were to grant Sharp's motion,

7    many of the additional facts offered by Sharp would not

8    meaningfully alter the Court's analysis.  For instance, even

9    ───────────────────────────────────────────────────────────

10   whether they would take the position that Sharp's opt-out was
     ineffective as untimely" but failing to mention Sharp's counsel

11   only did so twelve days after the opt-out list was filed) (citing
     Benson Decl. ¶ 6); Benson Decl. ¶¶ 2-6 (describing Sharp's actions
     immediately after discovering that it missed the opt-out deadline,

12   but skipping directly from that point to July 8, when its counsel
     first spoke to opposing counsel).  Second, also at the hearing,

13   Sharp's counsel stated that in SRAM there was a "six-week delay on
     the plaintiff's side of the case."  Hr'g Tr. at 12:23-24.  As a

14   result, Sharp argues the Court misweighed the length of delay
     factor because "[c]lass counsel and [Sharp] discussed this fact the

15   very first day when we got Sharp's name on the list" of opt-outs.
     Id. at 12:20-22.  However the facts of SRAM are somewhat more

16   nuanced.  In SRAM, Intel realized it had failed to opt out twenty-
     three days after the applicable deadline, a period similar to the

17   fourteen days at issue here.  Intel immediately contacted the
     "outside counsel and several Defendants to inform them of its

18   intent to opt out and to find the most efficient remedy," similar
     to Sharp's immediate contact with the DPPs' counsel here.  2009 WL

19   2447802, at *1.  Nonetheless, as counsel stated, six weeks after
     discovering the error and notifying outside counsel and the

20   defendants of the issue, Intel contacted Plaintiffs' lead counsel
     for the first time and discussed the best course of action.  Three

21   days later, Intel filed a motion seeking an enlargement of time.
     While it is true that the six week period before contacting all

22   relevant counsel is significantly longer than the one at issue
     here, that fact does not alter the Court's treatment of the SRAM

23   case.  First, the Court did not discuss the SRAM case's relevance
     to the length of delay factor, instead relying on it in addressing

24   Sharp's explanation for the delay.  Order at 7.  Second, and most
     importantly, the Court agrees with the SRAM court's assessment of

25   the failure to promptly contact opposing counsel.  After
     discovering its failure to meet the opt-out deadline, Sharp had two

26   options: file a motion for an extension of time or obtain the
     consent of the opposing parties and file a stipulation.  SDI and

27   Hitachi would have needed to agree to such a stipulation.  As a
     result, Sharp's "delay belies its argument that it acted reasonably

28   and diligently."  SRAM, at *3.

**United States District Court**
For the Northern District of California

1  considering the additional facts offered by Sharp, it is by no

2  means clear that the class will suffer significant prejudice if

3  Sharp is included in the Proposed Settlements.  As Defendants point

4  out, under the Proposed Settlements, Sharp will be entitled to a

5  pro rata share of the settlement proceeds.  According to Sharp's

6  estimates, its pro rata share is likely to amount to approximately

7  $1.3 million.  As a result, Sharp's recovery from the Proposed

8  Settlements would only reduce the class's recovery by 2.8 percent.

9  Other courts have found even larger reductions in absent class

10  members' recoveries only slightly prejudicial.  See Cassese v.

11  Wash. Mut., Inc., No. 05-cv-2724 (ADS)(ARL), 2013 WL 5502831, at *2

12  (E.D.N.Y. Oct. 1, 2013) (concluding that a difference of less than

13  five percent in the class' recovery would only have "a relatively

14  slight prejudicial effect" in an excusable neglect analysis).  As a

15  result, the Court still would not "ascribe significant weight" to

16  the prejudice to absent class members.  Order at *3.

17       Similarly, even considering Sharp's newly offered facts, the

18  length of delay factor weighs against a finding of excusable

19  neglect.  First, neither Sharp's initial two-week delay in

20  submitting its opt-out notice, nor the twelve-day delay prior to

21  contacting defense counsel is particularly long or short.

22  Nonetheless, the Ninth Circuit has reversed a finding of excusable

23  neglect where a party missed the applicable deadline by just two

24  days.  See Kyle v. Campbell Soup Co., 28 F.3d 928, 931-32 (9th Cir.

25  1994) (relying on the party seeking the extension's failure to

26  present "a persuasive justification" for missing the applicable

27  deadline), questioned by Mendez v. Knowles, 556 F.3d 757, 766 n.3

28  (9th Cir. 2009); see also Russell v. United States, No. C 09-03239

**United States District Court**
For the Northern District of California

1   WHA, 2010 WL 1691634, at *4 (N.D. Cal. Apr. 23, 2010) (finding that

2   while an opt-out request "was only one day late, it was

3   nevertheless late," and concluding the moving party could not

4   demonstrate excusable neglect).  Furthermore, as to the previously

5   unexplained twelve-day delay before contacting opposing counsel,

6   Sharp's counsel offers no reason why its actions during that period

7   -- conferring with Dell, the DPPs, and Sharp; and conducting legal

8   research -- precluded it from contacting opposing counsel.

9   Accordingly, even if Sharp's counsel is right that nothing material

10  changed in this litigation during those twelve days, Hr'g Tr. 12:6-

11  9, the failure to promptly contact opposing counsel after

12  discovering the missed opt-out deadline still "belies [Sharp's]

13  argument that it acted reasonably and diligently."  SRAM, at *3.

14      Finally, while Sharp offers additional detail about its

15  explanation for the delay, its explanation remains unsatisfying.

16  Just as the Ninth Circuit concluded that "failure to read an

17  applicable rule is one of the least compelling excuses that can be

18  offered," Pincay v. Andrews, 389 F.3d 853, 859-60 (9th Cir. 2004),

19  so too is pointing to "oversight" in failing to adequately

20  "review[] such notices [and] fail[ing] to forward the relevant

21  notice to legal counsel."[5]  Recons. Mot. at 6.  Sharp is

22  _____

[5] The Court does wish to clarify one point in its earlier order.
23  As the Ninth Circuit has repeatedly held, per se rules are
    inappropriate in weighing whether a party can establish excusable
24  neglect.  See Pincay, 389 F.3d at 859-60 ("[U]nder Pioneer, the
    correct approach is to avoid any per se rule."); see also Ahanchian
25  v. Xenon Pictures, Inc., 624 F.3d 1253, 1262 (9th Cir. 2010)
    (reversing a district court's conclusion that "a calendaring
26  mistake is the type of 'inadvertent mistake' that is not entitled
    to relief pursuant to Rule 60(b)(1)" as impermissibly adopting a
27  per se rule contrary to Pioneer).  While the Court concluded that
    "[i]nadvertence and miscommunication are insufficient excuses," the
28  Court did not intend to suggest that it believes that cases of
    inadvertence or miscommunication can never satisfy the excusable

14

**United States District Court**
For the Northern District of California

1  represented in this litigation by some of the most experienced and

2  able class action litigators in the country.  It received actual

3  notice of the Proposed Settlements and applicable opt-out deadline.

4  The Court's preliminary approval order, even if it did not specify

5  the opt-out deadline, should have put experienced class action

6  counsel on notice that Sharp had two choices: remain in the class

7  and be bound by the settlement, or opt out and continue pursuing

8  individual claims against the Settling Defendants.  See Silvercreek

9  Mgmt., Inc. v. Banc of Am. Secs., LLC, 534 F.3d 469, 473 (5th Cir.

10  2008) (finding no excusable neglect in failing to timely opt out in

11  part because, even where the party did not receive actual notice

12  from the settlement administrator, experienced counsel received the

13  district court's preliminary approval order and could have surmised

14  or otherwise inquired about the deadline).  Sophisticated parties

15  and experienced counsel know or should know that it is folly to

16  rely solely on receiving mailed notice of a pending class

17  settlement.  After all, while individual notice is required for all

18  identifiable class members, see Eisen v. Carlisle & Jacquelin, 417

19  U.S. 156, 176 (1974), even identifiable class members need not

20

neglect standard.  Instead, as the Court perhaps should have made

21  more clear, under the flexible standards elucidated by the Supreme
Court and the Ninth Circuit, Sharp's vague explanation for the

22  delay -- that notice was inadvertently not sent to outside counsel
-- was, like "a lawyer's mistake of law in reading a rule of

23  procedure[,] . . . not a compelling excuse."  Pincay, 389 F.3d at
860; see also Steinfeld v. Discover Fin. Servs., No. C 12-01118

24  JSW, 2014 WL 1309352, at *4 (N.D. Cal. Mar. 31, 2014) (rejecting a
late opt-out request where the only explanation cited for the delay

25  was "that his late submission was inadvertent").  Accordingly, as
the Court found in its first order, when weighing the applicable

26  factors, Sharp's undisputed good faith and weak, "generalized
assertions of prejudice," were insufficient to outweigh Sharp's

27  vague and unimpressive explanation for the delay and unexplained
twelve-day delay prior to contacting opposing counsel.  This

28  conclusion falls well within the Court's discretion under Pioneer
and subsequent Ninth Circuit law.

1  actually receive such notice to be bound.  Silber v. Mabon, 18 F.3d

2  1449, 1453 (9th Cir. 1994); see also Torrisi v. Tucson Elec. Power

3  Co., 8 F.3d 1370, 1375 (9th Cir. 1993) (concluding notice was

4  adequate even where it was received by some class members after the

5  opt out date).  As the Court previously found, the notice in this

6  case was constitutionally sufficient.  Order at *3.  In short, as

7  Judge Kozinski wrote, examining explanations for missed deadlines

8  accepted by the Ninth Circuit:

9       Was this a class action that bristled with client
        "consultation difficulties"?  Was the client distracted
10      by a divorce and job change, and he had lost his lawyer
        to boot?  Was the rule confusing or the notice of the
11      deadline unusual?  No, no and no.  The action was not
        complicated; the lawyer worked at a large, sophisticated
12      law firm; and the rule is . . . clear . . . .

13  Pincay, 389 F.3d at 862 (Kozinski, J., dissenting) (citing Pioneer,

14  507 U.S. at 398; Laurino v. Syringa Gen. Hosp., 279 F.3d 750, 753

15  (9th Cir. 2002); Marx v. Loral Corp., 87 F.3d 1049, 1053-54 (9th

16  Cir. 1996)).  As a result the Court remains unpersuaded by Sharp's

17  explanation for its delay.

18       All that said, at least one of Sharp's points, the prejudice

19  it would experience as a result of being bound by the Proposed

20  Settlements, would merit serious consideration were the Court to

21  grant reconsideration.  While Pioneer focused on the potential for

22  prejudice to the non-moving parties, the Ninth Circuit has stated

23  that consideration of the prejudice to the movant should also be

24  considered in analyzing excusable neglect.  See Feinstein v. Serv.

25  Solutions Grp. LLC, 464 F. App'x 670, 671 (9th Cir. 2012) (citing

26  Lemoge v. United States, 587 F.3d 1188, 1196 (9th Cir. 2009) for

27  the proposition that "prejudice to the moving party should also be

28  considered in any analysis of the first Pioneer . . . factor").  As

**United States District Court**
For the Northern District of California

1  Sharp points out, should it remain in the Proposed Settlements, it

2  will receive $1.3 million in exchange for releasing individual

3  claims it believes are worth $109.8 million.  This is a substantial

4  prejudice, even if the Court grants some credence to Defendants'

5  contrary suggestions that Sharp's claims (1) ignore litigation

6  risk, (2) are irrelevant because "[a]ll settlements require

7  plaintiffs to accept less than the alleged full value of their

8  claim," and (3) overlook the possibility of joint and several

9  liability.[6]  Hitachi Opp'n at 3.  While the Court previously

10  weighed the prejudice factor lightly in Sharp's favor, this

11  evidence would (even more than the detail provided by Dell and the

12  DPPs in support of Dell's parallel motion, Order at *3) tip the

13  scales on prejudice substantially in Sharp's favor.  Nonetheless,

14  the Court does not reach the issue because Sharp only made passing

15  and conclusory reference to the prejudice it might suffer by being

16  included in the Proposed Settlements in its earlier motion to

17  enlarge the opt-out period.  In fact, Sharp's only previous

18  reference to this issue is limited to portions of a single

19  paragraph in the Benson Declaration.  See Benson Decl. ¶ 14

---

20  [6] Settling Defendants also suggest that "Sharp's 0.39 [percent]
21  recovery of total CRT purchases from the Hitachi and SDI Defendants
   'compares favorably to settlements finally approved in other price
22  fixing cases.'"  Hitachi Opp'n at 4 (quoting ECF No. 2728 ("DPPs'
   Class Cert. Br.")) (citing Fisher Bros. v. Mueller Brass Co., 630
23  F. Supp. 493, 499 (E.D. Pa. 1985)).  However, the Settling
   Defendants, both of which cite this passage as support for their
24  argument that Sharp's recovery compares favorably to other
   settlements, seem to have misread DPPs' argument and the case they
25  cite.  Fisher Brothers v. Mueller Brass Co., addressed recoveries
   between 0.1 and 2.4 percent of defendants' total sales.  On the
26  present motion the parties are not discussing whether the class's
   recovery constitutes a sufficient percentage of the Settling
27  Defendants' sales, but rather whether Sharp's pro rata portion of
   the Proposed Settlements constitutes such a small percentage of
28  Sharp's alleged damages as to be substantially prejudicial to
   Sharp.  As a result, Fisher is inapposite.

**United States District Court**
For the Northern District of California

1   (stating that "[s]ubstantial harm or prejudice to Sharp . . . would

2   occur if either form of relief requested through Sharp's Motion

3   were not granted," and that "Sharp was a sizeable purchaser of CRTs

4   during the relevant period").  Because these facts were not

5   presented to the Court at the time of its earlier order, the Court

6   could not have "manifest[ly] fail[ed] . . . to consider" any

7   material facts that were actually presented.  See Civ. L.R. 7-

8   9(b)(3).

9

10  **V.    CONCLUSION**

11       In closing, the Court notes that it is not without sympathy

12  for Sharp and its counsel.  The Court has repeatedly been impressed

13  by the quality and diligence of counsel for all parties in this

14  case.  Furthermore, Sharp's counsel's genuine and candid apology

15  for this regrettable incident is appreciated.  Yet sympathy is not

16  a part of the excusable neglect analysis under Pioneer.  Instead,

17  the Court must engage in a fact-bound inquiry, taking account of

18  the relevant circumstances before determining whether a party's

19  neglect is excusable.  In doing so, the Court is, as all courts

20  are, dependent on the parties to submit and develop the factual

21  record necessary to resolve the issue.  While the Court cannot say

22  whether it would reach the same conclusion now, having had the

23  benefit of the additional facts offered in support of the instant

24  motion, Sharp took that risk when it chose not to present these

25  facts to the Court on its earlier motion.  Sharp now seeks the

26  proverbial second bite at the apple in an effort to remedy this

27  error, but that is not the purpose of the reconsideration process.

28  After neglecting to meet the applicable opt-out deadline by

18

1  fourteen days, neglecting to notify opposing counsel for twelve

2  more days, and neglecting to offer admittedly material facts that

3  it could have offered in support of its earlier motion, Sharp's

4  motion for leave to file a motion for reconsideration is DENIED.

5

6

7  IT IS SO ORDERED.

8

9      Dated: September 8, 2014

10                                    UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19