# Exhibit 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. C 07-5944 SC<br>MDL No. 1917<br><br>ORDER DENYING MOTION TO COMPEL |

## I. INTRODUCTION

Now before the Court is the Direct Action Plaintiffs' ("DAPs") motion to compel production of a document from Defendants Chunghwa Picture Tubes, Ltd., LG Electronics, Philips, Samsung SDI, Toshiba Corp., Panasonic, and MTPD (collectively "Defendants"). The parties briefed this motion before the case's Special Master, who referred the matter to the Court. ECF No. 2432. The motion is fully briefed, ECF Nos. 2446 ("Mot."), 2449 ("Opp'n"), and appropriate for resolution without oral argument, Civ. L.R. 7-1(b). The motion is DENIED, as explained below.

## II. BACKGROUND

The parties are familiar with this case's factual background. The facts germane to this motion are as follows. The DAPs seek production of a confidential European Commission ("EC") decision

1  (the "Decision"), issued on December 5, 2012, which relates to EC
2  investigations regarding the Defendants' participation in an
3  alleged price-fixing conspiracy regarding color display tubes
4  ("CDTs") and color picture tubes ("CPTs"), two different types of
5  cathode ray tubes ("CRTs").  The EC has not yet published a public
6  or redacted version of the Decision, but a summary of the Decision
7  confirms that these Defendants, plus Technicolor, were found to
8  have participated in price-fixing cartels for CDTs and CPTs, and
9  were collectively fined more than € 1.47 billion.  Mot. Ex. 2
10 ("Summary") ¶¶ 1, 11-12.  Public statements regarding the Decision
11 state that the two cartels were highly organized, aware of the
12 illegality of their activity, and ultimately successful in imposing
13 harmful price increases on consumers.  Id. Ex. 3 ("EC Press
14 Release").  When the EC issued the Decision, it said that it and
15 the companies involved were trying to establish a public, redacted
16 version "with a view to a quick publication," though as of this
17 Order's signature date, no such public version has been made
18 available.  Id. Ex. 4.
19     In 2010, the Direct Purchaser Plaintiffs ("DPPs") served
20 Defendants with a discovery request related to the EC's
21 investigation (since, at that time, the Decision had not yet
22 issued), but Defendants continually refused based on their belief
23 that European Union ("EU") law and EC policy prohibited the
24 disclosure of those documents.  Now the DAPs seek production of the
25 Decision, but Defendants still refuse.  See Opp'n at 1-6.
26 ///
27 ///
28 ///

2

## III. DISCUSSION

The Federal Rules of Civil Procedure authorize party-initiated discovery of any evidence that is relevant to any party's claims or defenses. Fed. R. Civ. P. 26(b)(1). However, Rule 26 grants the court discretion to limit discovery on several grounds, including international comity. See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa, 482 U.S. 522, 544 (1987). American courts, in supervising pretrial proceedings, should exercise special vigilance to demonstrate due respect for any sovereign interest expressed by a foreign state. Id. at 546.

"Comity, in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." Id. at 544 (citing Hilton v. Guyot, 159 U.S. 113, 163-64 (1895)). It is the recognition that one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws. Id.; In re Rubber Chems. Antitrust Litig., 486 F. Supp. 2d 1078, 1081 (N.D. Cal. 2007).

The Supreme Court and the Ninth Circuit agree that comity and foreign law alone will not be dispositive when a discovery dispute arises regarding a foreign law's protection of documents sought in a United States court. See id. at 544 & n.29; Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers, 357 U.S. 197, 208 (1958); Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1474-75 (9th Cir. 1992). The Court

must consider the following factors in determining whether or not foreign law excuses noncompliance with a United States court's discovery orders:

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

Aerospatiale, 482 U.S. at 544 n.28. This list is not exhaustive. The Ninth Circuit has also considered other factors, including "the extent and the nature of the hardship that inconsistent enforcement would impose upon the person, . . . [and] the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state." United States v. Vetco, Inc., 691 F.2d 1281, 1287 (9th Cir. 1981); Richmark, 959 F.2d at 1475. Defendants do not dispute the request's specificity, but they contend that no other factor counsels granting the DAPs' motion. Id.

First, courts are less inclined to ignore a foreign state's concerns if the outcome of litigation "does not stand or fall on the present discovery order," or if the evidence sought is cumulative. Richmark, 959 F.2d at 1475; In re Rubber Chems., 486 F. Supp. 2d at 1082. The DAPs argue that the Decision is important because it concerns the formation and duration of the conspiracy, the conspiracy's geographic reach, the price-fixing activities at the conspiracy's center, and the conspirators' attempts to conceal the conspiracy's existence. Mot. at 4. Defendants contend that

4

1  the Decision is irrelevant, because it concerns the European CDT
2  and CPT market and applies EU, not US, law. Opp'n at 2-3.
3      The Court finds the Decision is relevant, because the DAPs'
4  and other plaintiffs' allegations in this case have always
5  concerned the international character of the alleged CRT
6  conspiracy. Applicable law would clearly be different in a foreign
7  jurisdiction, but the Decision could include relevant facts
8  regardless of any foreign legal analysis. This weighs for
9  production.
10     Second, the DAPs do not dispute the fact that the Decision
11 originated from the EU, not the US. This weighs against production
12 due to the EU's sovereign interest in governmental information
13 produced within its borders. See In re Rubber Chems., 486 F. Supp.
14 2d at 1083; see also In re Air Cargo Shipping Svcs. Antitrust
15 Litig., 278 F.R.D. 51, 52-53 (E.D.N.Y. 2010). Further, Defendants
16 do not appear to have released the Decision in other litigation,
17 and they have continually relied on the application of EU
18 confidentiality law in the present dispute. This also weighs
19 against production.
20     Third, the parties dispute the availability of the Decision
21 outside this demand for production. Defendants contend that the
22 Decision will be available as soon as the EC completes its
23 preparation of a public version. Opp'n at 4. They also note that
24 fact discovery does not close for six months, during which time
25 publication of the Decision is likely. Id. at 4-5. The DAPs argue
26 that no alternative means of learning the Decision's detailed
27 findings are available, and that since Defendants' cooperation is
28 necessary for production of a public version of the Decision,

1 Defendants have an incentive to proceed very slowly in order to
2 avoid producing the Decision in this litigation. Mot. at 4, 7.
3 The Court finds that this factor weighs in favor of production,
4 because there does not appear to be an alternative means of
5 accessing the Decision without contravening EU law and policy.
6 However, since the Court explains below that the EU's
7 interests override the need for production in this case, the Court
8 notes here that the speedy development of a public version of the
9 Decision is highly important. Defendants state that publication of
10 a non-confidential version of the Decision within six months is
11 "likely." Opp'n at 4. Because they already appear to be on notice
12 of the importance of that publication, Defendants are encouraged to
13 proceed apace with their collaboration in the EC's public version
14 of the Decision.
15 Finally, the Court must balance international comity with the
16 policies of the Federal Rules of Civil Procedure in order to
17 determine the extent to which noncompliance with the discovery
18 request would undermine important United States interests, compared
19 to how compliance could undermine important interests of the state
20 where the information is located. <u>Aerospatiale</u>, 482 U.S. at 544.
21 In evaluating the interests on both sides, the Court considers both
22 "expressions of interest by the foreign state" and "indications of
23 the foreign state's concern for confidentiality prior to the
24 controversy," as well as the United States' interest in vindicating
25 American plaintiffs' rights. <u>Richmark</u>, 959 F.2d at 1477.
26 The DAPs contend that the investigation behind the Decision is
27 over, that they do not seek the underlying investigative materials
28 (only the Decision itself), and that the EC's delay in issuing a

6

public version of the Decision are all factors favoring production. Mot. at 4. The DAPs also argue that any confidentiality concerns are lessened where few Defendants remain in the CRT business and a protective order on the case shields any designated information from the public. Id.

Defendants argue that EU law and EC policy are very clear here: disclosure of the Decision would violate foreign law, frustrate the EC's investigations of antitrust cases, and subject Defendants to harsh sanctions at home and abroad. In support of this, they supply a letter from Eric van Ginderachter, Director of the EC's Directorate General for Competition ("DG Competition"), which the Supreme Court has recognized as "the European Union's primary antitrust law enforcer." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 250 (2004); Opp'n Ex. D ("DG Competition Letter").

The Court finds that comity outweighs discovery in this instance. In terms of law, Article 337 of the Treaty of the Functioning of the European Union and Article 28 of EC Regulation 1/2003 require the EC to refrain from disclosing information acquired or exchanged pursuant to the EU's competition laws. EU law also potentially subjects parties who disclose such confidential information to official sanctions, including being reported to their home jurisdictions' bars. In terms of policy, the DG Competition Letter states that even though its investigation as to these Defendants is over for purposes of the Decision, it objects to the Decision's disclosure because its leniency program "is a cornerstone of its cartel detection and enforcement," whose "optimal functioning requires that a party that comes forward and

cooperates with the Commission does not find itself worse-off vis-à-vis the non-cooperating cartel members as a result of doing so." DG Competition Letter at 3. The EC also relies on cooperation from United States law enforcement agencies, including the Department of Justice, and while the Letter does not say as much, the cooperation of United States and EU agencies is an aspect of comity. See In re Rubber Chems., 486 F. Supp. 2d at 1084 (noting that a similar letter from the DG Competition objecting to disclosure of a similar decision could impact US-EU cooperation in international antitrust enforcement).

The Court therefore finds that the final factor weighs against disclosure, and that it also outweighs the benefit the DAPs might receive in obtaining the Decision. However, as noted above, Defendants seem optimistic about the EC's publication of a public version of the Decision before the close of discovery in this case. They are advised to assist in that task.

**IV. CONCLUSION**

For the reasons explained above, the Direct Action Plaintiffs' motion to compel is DENIED without prejudice.

IT IS SO ORDERED.

Dated: March 26, 2014

UNITED STATES DISTRICT JUDGE

8