# Exhibit 12

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

555 Mission Street
San Francisco, CA 94105-0921
Tel 415.393.8200
www.gibsondunn.com

Rachel S. Brass
Direct: +1 415.393.8293
Fax: +1 415.374.8429
RBrass@gibsondunn.com

February 28, 2014

VIA ELECTRONIC MAIL & FEDEX OVERNIGHT

Hon. Vaughn R. Walker (Ret.)
c/o Mr. Jay Weil
Federal Arbitration, Inc.
288 Hamilton Avenue, 3rd Floor
Palo Alto, California 94301
Jay.weil@fedarb.com

Re: *In re Cathode Ray Tube (CRT) Antitrust Litigation*, Case No. 07-cv-5944-SC (N.D. Cal.)

Dear Judge Walker:

We write on behalf of the Chunghwa Picture Tubes, Ltd., LG Electronics, Philips, Samsung SDI, Toshiba Corp., Panasonic, and MTPD defendants ("Defendants") regarding the Direct Action Plaintiffs' ("Plaintiffs") January 31, 2014 letter to you. That letter asks this Court to order the production of the confidential European Commission ("EC") decision relating to its investigations regarding color display tubes ("CDT") and color picture tubes ("CPT") (collectively, cathode ray tubes). Requiring that would violate well-established principles of international comity, and place Defendants in the untenable position of necessarily violating European Union ("EU") law under threat of sanction in order to comply with an order of this Court.

This Court has uniformly rejected similar motions. *See In re TFT-LCD Antitrust Litig.*, 07-md-1827-SI (N.D. Cal. Apr. 26, 2011), Dkt. No. 2686, at 11 (denying motion to compel communications submitted to or received from the EC) (Pls.' Ex. 12); *In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1084 (N.D. Cal. 2007) (denying motion to compel production of communications with the EC); *In re Methionine Antitrust Litig.*, MDL No. 00-1311 CRB (JCS) (N.D. Cal. July 29, 2002) (adopting Special Master's report denying motion to compel unredacted written submissions made to the EC) (Exs. A & B); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 06-md-1775-JG-VVP (E.D.N.Y. Dec. 19, 2011), Dkt. No. 1625 (denying motion to compel confidential EC decision) (Ex. C); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-MD-1720, 2010 WL 3420517, *10 (E.D.N.Y. Aug. 27, 2010) (denying motion to compel EC's Statement of Objections and oral hearing recording). There is no reason for a different result here.

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

# GIBSON DUNN

February 28, 2014
Page 2

### I.  The Court Should Deny Plaintiffs' Request For The Confidential EC Decision

The EC is unambiguous with respect to its interest in protecting confidential investigative materials from disclosure. This case is no exception. In a letter to Defendants dated February 11, 2014, attached as Exhibit D, the EC expressly opposed disclosure of its confidential CDT and CPT decision, including to Plaintiffs, because it would undermine the EC's competition law enforcement, and in particular, its leniency program. This Court should "take care to demonstrate due respect for . . . any sovereign interest expressed by a foreign state," such as the EU's interest in confidentiality here. *Societe Nat'l Indus. Aérospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 546 (1987).

The EC also reiterated in its letter that EU law prohibits disclosure of the confidential decision. *See* Ex. D. Plaintiffs do not appear to dispute that requiring disclosure of the decision would force Defendants to violate EU law.[1]

The EC's position should be of no surprise to Plaintiffs, as it has long made clear that the promise of confidentiality is at the core of its leniency program and critical to its viability and success. The leniency program is based on the voluntary submission of information, in exchange for amnesty or a reduced fine. Parties would not participate if they were put in a worse position for having cooperated. As the EC explained to the Antitrust Modernization Commission, parties "which voluntarily cooperate with the Commission in revealing cartels cannot be put in a worse position in respect of civil claims than other cartel members which refuse cooperation."[2] Requiring disclosure of confidential materials "could seriously undermine the effectiveness of the Leniency Programme and jeopardise the Commission's investigation of cartels."[3] Here, ordering disclosure of the EC's confidential decision would compel Defendants to violate EU requirements and directly undermine the EC's enforcement prac-

---

[1] EU law dictates that documents obtained through access to the administrative file "shall only be used for the purposes of judicial or administrative proceedings for the application of Articles [101] and [102]." Article 15(4), Regulation 773/2204. The EC's Access to File Notice reiterates this restriction and also provides that "[s]hould the information be used for a different purpose, at any point in time, with the involvement of an outside counsel, the Commission may report the incident to the bar of that counsel, with a view to disciplinary action."

[2] *See* Ex. E; *see also* Ex. F (Commission Staff Working Paper accompanying the Communication from the Commission to the European Parliament and Council in 2009).

[3] *See* Ex. E. Just yesterday, as in prior decisions, the Court of Justice of the EU endorsed the EC's view, acknowledging the existence of a general presumption that the disclosure of documents exchanged between the Commission and undertakings in the course of competition proceedings undermines, in principle, both protection of the objectives of investigation activities and that of the commercial interests of the undertakings involved in those proceedings. *See EC v. EnBW Energie Baden-Württemberg* AG, Case C-365/12 P (Feb. 27, 2014), ¶¶ 65-69 (Ex. G); *EC v. Editions Odile Jacob SAS*, Case C-404/10, (June 28, 2012), ¶ 123 (Ex. H); *EC v. Technische Glaswerke Ilmenau GmbH*, Case C-139/07 (June 29, 2010), ¶ 61 (Ex. I).

**GIBSON DUNN**

February 28, 2014
Page 3

tice. Given that the EC has confirmed that it is in the process of preparing a public decision, there is simply no reason to disregard its express instructions.

### A. The EC Decision Is Irrelevant

Plaintiffs suggest that Defendants conceded the EC decision is relevant to this litigation. That is wrong. *See* Pls.' Ex. 9 (Defs.' Nov. 5, 2013 Letter), at 3. The EC's public Summary of Decision, Exhibit 2 to Plaintiffs' letter, shows the error of Plaintiffs' view.

Importantly, the EC investigation and decision relate to EU—not US—law. *See* Pls.' Ex. 2, ¶ 1. There is no reason to presume that the subject of the EC's investigation is co-extensive with Plaintiffs' claims. That fact is underscored by even a cursory review of the Summary of Decision, which states that the EC investigation related to distinct CDT and CPT conduct, unlike the "cathode ray tube" conspiracy alleged here. *Compare, e.g.*, Best Buy First Am. Compl. ¶¶ 2, 242 *with* Pls.' Ex. 2, ¶¶ 1, 3. While Plaintiffs assert that the EC's decision and this case involve the "same conspiracy," that is demonstrably not so.

Further, the Summary of Decision emphasizes that the EC focused on conduct that allegedly had anticompetitive effects on the sale of color picture tubes and color display tubes *in Europe*, not the US. *See* Pls.' Ex. 2, ¶¶ 17-18. The Foreign Trade Antitrust Improvements Act makes conduct directed at overseas sales irrelevant to U.S. claims. *See In re Dynamic Random Access Memory Antitrust Litig.*, 546 F.3d 981 (9th Cir. 2008) (plaintiffs' foreign injury claim based on overseas purchases was barred by the FTAIA); *Motorola Mobility, Inc. v. AU Optronics Corp.*, No. 09-c-6610, Dkt. No. 182 (N.D. Ill. Jan. 23, 2014) (same).

### B. Principles Of Comity Strongly Outweigh The Need For Discovery

The Court has discretion to limit discovery on grounds of international comity. *See Aérospatiale*, 482 U.S. at 544. As explained by the Supreme Court, "[c]omity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Id.* at 544 n.27; *see also In re Rubber Chems.*, 486 F. Supp. at 1081-82 (according comity to the EU). Comity is more than "mere courtesy and good will," and courts should "take care to demonstrate due respect for . . . any sovereign interest expressed by a foreign state." *Aérospatiale*, 482 U.S. at 544 n.27, 546. "Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971).

In the Ninth Circuit, comity requires courts to consider five factors in analyzing requests for foreign materials. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992). Here, four of those factors strongly weigh against requiring disclosure. Defendants do not dispute the specificity of the request.

February 28, 2014
Page 4

***The decision is not important to this litigation.*** "Where the outcome of litigation does not stand or fall on the present discovery order, or where the evidence sought is cumulative of existing evidence," or not "directly relevant," courts are generally unwilling to require disclosure in the face of comity objections. *Richmark Corp.*, 959 F.2d at 1475 (internal quotation omitted); *see also In re Rubber Chems.*, 486 F. Supp. 2d at 1082 (where documents are noncritical or cumulative, "courts are less inclined to ignore a foreign state's concerns").

Here, the confidential EC decision is not important to Plaintiffs' case for at least three reasons. First, it is not directly relevant to the claims or conspiracy alleged here. Second, the request is premature. Discovery is ongoing, and Plaintiffs will have access to the nonconfidential decision once it becomes available. Finally, it would likely be cumulative of the vast amount of existing discovery relating to the alleged conspiratorial conduct. This is not a case for want of evidence. To date, Defendants and alleged co-conspirators have collectively produced well over 5 million pages of documents created contemporaneously to the alleged conspiracy. Brass Decl. ¶ 2. Plaintiffs have taken 86 days of deposition testimony from 34 fact witnesses, utilizing, to date, over 2,000 exhibits. *Id.* ¶ 3. The depositions of 8 additional percipient witnesses have been noticed or are in the process of being scheduled. *Id.* ¶ 4. Plaintiffs do not explain why they cannot obtain the facts underlying the EC decision through these already produced documents or the completed or noticed depositions. The possibility that the EC decision will reveal any relevant information beyond the extensive discovery conducted and contemplated in this case is slim and "pales in comparison to the likely damage that mandating disclosure could do to the enforcement regime[] of . . . Europe." *In re TFT-LCD* Order, at 11. This factor weighs strongly against disclosure.

***The decision originated in the EU.*** Because the EC decision was prepared by the EC and originated in the EU, this factor also weighs strongly against disclosure. *See In re Payment Card*, 2010 WL 3420517, at *9 ("Granting the motion to compel [the EC's Statement of Objections and oral hearing recording] would amount to requiring the European Commission to turn over the fruits of its own labors in the service of the plaintiffs' American case."). Plaintiffs do not dispute this factor.

***There are alternative means of securing the decision.*** Notwithstanding Plaintiffs' protests, they *can* obtain the public version of the EC decision—once the EC has completed its process of preparing a nonconfidential version of the decision. Where "the information sought can easily be obtained elsewhere, there is little or no reason to offend foreign law." *In re Rubber Chems.*, 486 F. Supp. 2d at 1083.

Neither the fact that the EC is still in the process of preparing the public version, nor Plaintiffs' haste to obtain the decision, justifies overriding the EU's interest in confidentiality. This is not a time-sensitive issue. Fact discovery does not close for another six months, during which time the EC is likely to publish the public version. There is simply no reason for

# GIBSON DUNN

February 28, 2014
Page 5

this Court to advance Plaintiffs' interests over those of the EC in its extant confidentiality process. Thus, this factor weighs strongly against disclosure.

***Disclosure would harm important interests of the EU.*** The last factor—balancing the relative interests of the EU and US—is the most significant factor. *Richmark*, 959 F.2d at 1476. In assessing the strength of the EU interests at issue here, the Court should consider "expressions of interest by the foreign state" and "indications of the foreign state's concern for confidentiality *prior to the controversy.*" *Id.* (emphasis in original).

Here, the EU has left no room to question its interest in confidentiality. On February 11, 2014, the EC confirmed by letter that it opposes disclosure of its confidential decision. The EC has also previously opposed similar requests, for example, in the Declaration of Philip Lowe (then Director General of the EC's Directorate General for Competition) in *In re Flat Glass Antitrust Litigation (II)*, MDL No. 1942, No. 08-mc-180, Dkt. 200-2, attached as Exhibit J to this letter. Plaintiffs argue that "[n]otably, the EC never objected to the production of its full unredacted decision" in that case. Pls.' Letter, at 6. But while Plaintiffs are correct in observing that the Declaration does not address in detail disclosure of the confidential decision, they disregard the fundamental statement in paragraph 2(b) of the Declaration that "The European Commission's statement of objections *and the full confidential version of the decision* are documents prepared specifically for the competition proceedings [of the EC] and contain confidential information received through investigative measures. . . . Therefore, they and the information contained therein shall also be used only for the purpose of proceedings concerning the application of Articles 81 and 82 EC" (emphasis added). *See* Ex. J.

Courts undertaking a comity analysis have consistently found the EU's confidentiality interest outweighed the need for discovery. *See* cases cited *supra*, at 1.[4] Plaintiffs cite only one out-of-circuit case in which a court compelled production of confidential EC documents—*In re Vitamins Antitrust Litigation*, 2002 U.S. Dist. LEXIS 26490 (D.D.C. Jan. 23, 2002). As did the Special Master in the *In re TFT-LCD* litigation, this Court should "find more persuasive the more recent decisions that . . . take into account . . . specific assertions [of confidentiality interests]" by the EC. *In re TFT-LCD* Order, at 5; *see also* Ex. A, *In re Methionine Order*, at 5 (distinguishing *Vitamins* because the Special Master "had no opportunity to consider the European Commission's own presentation of its position at the time of his decision").

---

[4]  The Court of Justice of the EU has itself endorsed the position of the EC with regard to EU Member States. In *Kingdom of The Netherlands v. EC*, Case T-380/08 (Sept. 13, 2013), ¶ 42, the court rejected a request by The Netherlands (in its role as a damages claimant) for access to the confidential EC *Bitumen* decision, finding that the Netherlands's interest in information to understand the EC's rationale did not outweigh the EC's confidentiality interest.

GIBSON DUNN

February 28, 2014
Page 6

Plaintiffs argue *In re TFT-LCD* is distinguishable because plaintiffs in that case sought numerous documents while they seek only one. Pls.' Letter, at 5. That is beside the point. Indeed, the one document sought is the confidential work product of the EC itself—putting even more squarely before this Court the EC's interest in a document *it designated* confidential. Plaintiffs also argue that defendants in the *In re TFT-LCD* litigation had already produced 75% of the documents sought. Again, this is no distinction; the EC decision here is both irrelevant and cumulative to discovery already conducted in this case.

In the *In re Air Cargo Shipping Services Antitrust Litigation*, the EC intervened to oppose the disclosure of the unredacted version of its decision, the same document sought in this case. The judge denied compelling production "on grounds of comity." *In re Air Cargo Order*, at 1. Plaintiffs argue *In re Air Cargo* is distinguishable because the court in that case "rel[ied] largely on representations that a redacted version of that decision would be available soon after the hearing." Pls.' Letter, at 5. That is of no moment here. The *In re Air Cargo* decision was based on its conclusion that "comity concerns should prevent the production of an unredacted version of the decision," not on when the decision would be made public. *See* Pls.' Ex. 11, at 15:20-25. Nor does the fact the EC has elected to proceed cautiously in its timeline in making a decision public in that case—or this one—make Plaintiffs' request here any more reasonable. The appropriate inquiry is whether the EC's interest in confidentiality outweighs the need for discovery in this case. The resounding answer to that question is yes.

Importantly, the US also shares an interest in protecting the confidentiality of EC materials. In the *In re Flat Glass Antitrust Litigation*, the DOJ opposed disclosure of confidential EC materials, explaining that disclosure "will harm the EC's leniency program and its investigative abilities and could have a corresponding negative impact on the Antitrust Division's leniency program and its international anti-cartel enforcement program." *In re Flat Glass Antitrust Litig. (II)*, MDL No. 1942, No. 08-mc-180, Dkt. 200-5 (W.D. Pa. Oct. 8, 2009) (*see* Ex. K). That is because companies "dissuaded from applying for leniency with the European Commission . . . may also choose not to apply for leniency in the United States." *Id.* Those rationales are just as important here as in that case.

Thus, this final factor also weighs strongly against disclosure. International comity mandates that the Court defer to the EU's interest in maintaining confidentiality of the decision.

II.    Conclusion

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' request for the confidential EC decision.

Sincerely,

Rachel S. Brass

**GIBSON DUNN**

February 28, 2014
Page 7

      cc: Defense counsel of record
           Class counsel of record
           California Attorney General