# EXHIBIT 4

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

LLOYD K GARRISON (1946-1991)
RANDOLPH E PAUL (1946-1956)
SIMON H RIFKIND (1950-1995)
LOUIS S WEISS (1927-1950)
JOHN F WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER
(202) 223-7343

WRITER'S DIRECT FACSIMILE
(202) 223-7410

WRITER'S DIRECT E-MAIL ADDRESS
cbenson@paulweiss.com

1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE (212) 373-3000

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU, CHAOYANG DISTRICT
BEIJING 100020, PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
PO BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

August 12, 2014

By Email

Hon. Vaughn R. Walker (Ret.)
c/o Mr. Jay Weil
Federal Arbitration, Inc.
288 Hamilton Avenue, 3rd Floor
Palo Alto, California 94301
jay.weil@fedarb.com

*In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, Master Case No. 3:07-cv-05944-SC

Dear Judge Walker:

       Plaintiffs[1] submit this reply in further support of their motion to compel production of certain responsive documents from Thomson SA that are located in France and for Thomson SA to produce a competent 30(b)(6) deposition witness educated on the basis of information residing in France.

---

[1] As in our opening papers, "plaintiffs" refers to all Direct Action Plaintiffs (except the Dell and CompuCom plaintiffs, which have not named Thomson SA as a defendant).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Vaughn R. Walker                                                                                        2

      Thomson's opposition is particularly noteworthy for what it *does not* say. Specifically, Thomson SA nowhere denies that:

- It has been found by the European antitrust regulator to be a participant in a worldwide conspiracy to fix the prices of CRTs;

- This Court has already found that it has personal jurisdiction over Thomson SA because Thomson SA did not and could not controvert Sharp's allegations and showings that Thomson SA purposefully directed CRT conspiratorial activity at the United States CRT marketplace;

- When it was seeking to be placed on the current trial schedule, counsel for Thomson SA stipulated in April of 2014 that it would make its best efforts to make documents and witnesses available to defendants without resort to Hague Convention procedures if legally possible;

- Only after it had been placed on the current trial schedule did Thomson SA inform plaintiffs that it would withhold documents and testimony on the basis of the French Blocking Statute – citing (on June 3, 2014) as its authority a letter it had received years before and certainly before it represented to plaintiffs it would make its best efforts to produce documents without resort to the Hague; and

- Counsel for Thomson SA has not even familiarized itself with the Thomson SA materials that are located in France, to determine their volume or the extent to which they are duplicative of materials in the United States.

    Instead of addressing these points, Thomson's opposition primarily explains the language of the rarely enforced French Blocking Statute and characterizes its minimal document production to this point. Nothing Thomson says in its opposition distinguishes this case from the numerous others that plaintiffs cited where courts have rejected a defendant's efforts to hide behind the intentionally obstructive French Blocking Statute. Plaintiffs file this limited reply merely, therefore, to correct several factual misstatements contained in Thomson's submission:

    **1.**  **Thomson has not produced "significant" documents from France or otherwise.** Thomson states that the 26,000 pages its U.S. subsidiary has produced represent a "significant" volume of documents. (Opp. at 2.) To be clear, a production of 26,000 *pages* (not documents) is paltry compared to the productions of

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Vaughn R. Walker 3

every other defendant in the case – including defendants that, like Thomson, purport to have ceased their CRT manufacturing operations prior to the end of the relevant period.[2]

Thomson also states that the "DAPs have failed to establish that they do not already have" the documents that are located in France (Opp. at 5), that the information the DAPs seek is "cumulative" of documents already produced (*id.* at 6), and that certain categories of documents – like those relating to jurisdiction over Thomson SA – are "likely to already be present in the United States" (*id.*). There is no basis for *any* of these assertions. By its own admission, Thomson's counsel has not familiarized itself with either the volume or the content of the documents that are located in France.[3] There is thus no way for *plaintiffs* to know whether they are cumulative or duplicative, since even *Thomson* cannot even say with any confidence how many and what sort of documents exist in France.

2.  **Thomson pulled an "about-face."** The record speaks for itself about how Thomson's position shifted on its willingness and ability to produce documents from France without forcing plaintiffs to resort to Hague procedures. Counsel for Thomson now says that, because of a letter Thomson SA received in 2008 from the Ministry of Foreign Affairs, "since 2008, Thomson SA has understood that, as a French company subject to French law, it cannot produce documents, nor have witnesses testify regarding information located in France, if doing so would violate French law." (Opp. at 3-4.) In April 2014, however, counsel for Thomson SA said something very different. It represented first orally on a meet-and-confer with multiple lawyers, and then confirmed in a writing filed with the Court, that it would make its best efforts to produce documents and witnesses from France without Hague intervention. It made *no mention whatsoever* of any 2008 letter or contrary understanding. Had Thomson SA represented, back in April, that the plaintiffs would need to resort to Hague procedures in order to procure documents and witnesses, this issue could have been addressed months ago.

More generally, if Thomson intended to make the parties go through the Hague, then the schedule made no sense from the outset. Thomson owed the Court a duty of candor. A party cannot agree to get all discovery done in a matter of months knowing that plaintiffs want documents and depositions, knowing that it intends to invoke the Hague procedures.

---

[2]  Hitachi defendants, for example, have produced over 460,000 pages of documents.

[3]  Similarly misleading is Thomson's representation that Technologies Displays Americas, a successor to Thomson's domestic CRT business, "produced numerous documents in this litigation" regarding its purchase of Thomson's assets. (Opp. at 6.) Technologies Displays Americas' complete production comprised only 56 documents.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Vaughn R. Walker 4

        **3.    Thomson's complaints about time are disingenuous.** In any event, contrary to its suggestions, Thomson has long been on notice of its need to preserve and collect documents relating to the claims at issue in these litigations. Therefore, to the extent it professes to have been put to a Hobson's Choice, or to be behind in its preparation or investigation, it has primarily itself to blame. Thomson was investigated by both U.S. and foreign authorities as far back as 2008. As it acknowledges in its opposition, it also received a request for documents in connection with these very claims filed against it in January 2008. (Opp. at 3.) Thereafter, when the DPPs filed their consolidated complaint and omitted Thomson SA as a named defendant, they did so pursuant to a tolling agreement, which put Thomson SA on notice of the need to preserve all such documents.[4] Nor was Sharp's 2013 complaint against Thomson at all untimely. Sharp filed suit against all defendants – including Thomson SA and Thomson Consumer – well over a year ago, and before the Court made any ruling on class certification for the direct or indirect purchaser classes. Moreover, Sharp immediately sought to initiate discovery against the Thomson defendants to avoid any prejudice. Thomson, however, unilaterally refused to respond to discovery requests, or to coordinate with other defendants to familiarize itself with the discovery that had already been conducted.[5] (By contrast, other defendants that were new to the case agreed to participate in discovery, even while their motions to dismiss pended.)

        Thomson here seeks to use its decision not to participate in discovery as both a sword and a shield. It cannot.

        **Conclusion.** As demonstrated in our opening papers, plaintiffs' document requests focus only on the narrow categories of specific information most critical to their prosecution of their claims. The lengthy and cumbersome Hague procedures are impractical in light of the approaching discovery deadline (to which Thomson committed), and, in any event, it would be unjust to force plaintiffs to comply with it in light of Thomson's shifting position regarding its application. Finally, enforcing U.S. antitrust laws against a known conspirator outweighs any possible legitimate purpose for the French Blocking Statute. Accordingly, plaintiffs respectfully request that the Court order Thomson SA to produce a competent 30(b)(6) witness that will testify as to topics 1, 2, 4, 5, 6, 9, 13, 14, 20, 21, 24, 25, 31, 34, and 35; and also produce all documents in France located based on reasonable search, responsive to requests 3-5, 33, 35-37, 42, and 46-60.

---

[4]   *See* Pls.' Opp'n to Thomson S.A.'s Mot. to Dismiss Sharp's First Am. Compl. 23 n.23, Dkt. No. 2288; Pls' Opp'n to Thomson Consumer's Mot. to Dismiss Sharp's First Am. Compl. 19-21, Dkt. No. 2286.

[5]   Special Master Legge later denied a motion by Sharp to compel the Thomson defendants to participate in discovery.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Vaughn R. Walker                                                                                          5

                              Very truly yours,

                              <u>/s/ *Craig A. Benson*</u>

                              Craig A. Benson

*Counsel for Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc., on behalf of Direct Action Plaintiffs*