KAMALA D. HARRIS
Attorney General of California
MARK BRECKLER
Chief Assistant Attorney General
KATHLEEN E. FOOTE
Senior Assistant Attorney General
State Bar No. 65819
EMILIO VARANINI
Deputy Attorney General
State Bar No. 163952
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5908
 Fax:  (415) 703-5480
 E-mail:  Emilio.Varanini@doj.ca.gov

Attorneys for the State of California et al.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | Master File No. 3:07-cv-05944-SC<br><br>MDL No. 1917 |
| This Documents Relates To:<br><br>ALL ACTIONS | **MEMORANDUM PURSUANT TO SEPTEMBER 8, 2014 ORDER ON RECOMMENDED ORDER OF SPECIAL MASTER**<br><br>Date:        TBA<br>Dept.:       Courtroom 1 – 17th Floor<br>Judge:      Hon. Samuel Conti |

1

**TABLE OF CONTENTS**

2

**Page**

3

I.    INTRODUCTION ........................................................................................ 2

II.    BACKGROUND ON THE ATTORNEY GENERAL'S ACTION ............................. 2

III.  REPORT AND PROPOSAL ON SETTLEMENTS IN STATE AND FEDERAL COURT .............. 4

     A.     The Settlement Activities Of The Attorney General................................... 4

     B.     Proposal ................................................................................ 6

IV.  REPORT AND PROPOSAL ON COORDINATING LITIGATION IN STATE AND FEDERAL COURT ......................................................................................... 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.    INTRODUCTION**

In accordance with this Court's order dated September 8, 2014, the Attorney General hereby reports to this Court on the extent of federal and state coordination on litigation and settlement to date and advances proposals going forward to minimize duplication and avoid inefficiency. Document No. 2811.

The Attorney General's action for civil redress here has a law enforcement component to maximize deterrence and restore competition to the market through injunctive relief and civil penalties and a restitutionary component for damages incurred by California natural persons, California government entities, and the California economy. Aware of the potential for direct and indirect overlap, the Attorney General has closely coordinated her actions in litigation and in settlement with those of private plaintiffs in similar complex price-fixing cases in the past with great success. The Attorney General has also facilitated coordination between the federal and state courts where she has filed a state action and private plaintiffs have filed a federal action. In the instant case, the Attorney General has actively sought the implementation of similar approaches to coordination. That effort has met with success in this case so far, *see, e.g.,* Document No. 1128 at 2-6 (setting out process for coordination of fact discovery); Document No. 1991 at 2 n.1 (Attorney General action coordinated with other plaintiffs' actions in this Court for purposes of fact discovery, expert discovery, and settlement), except that coordination with Indirect Purchaser Plaintiffs has been troubled to date. But more should be done.

**II.    BACKGROUND ON THE ATTORNEY GENERAL'S ACTION**

In these price-fixing cases, class actions by private plaintiffs and *parens patriae* actions[1] by state attorneys general serve to complement one another.[2] Though the Attorney General may

---

[1] *Parens patriae* actions in this context are actions brought by a state attorney general to protect her citizens by suing to recover damages without having to endure the class certification process.  *See, e.g.,* H.R. Rep. No. 499, 94th Cong., 2nd Sess. (1975), reprinted in 1976 U.S.C.C.A.N. 2572, 2573-79 (legislative history of the Hart-Scott-Rodino Act Antitrust Improvements Act of 1976, 15 U.S.C. §§ 15c-h); *see also Clayworth v. Pfizer*, 49 Cal.4th 758, 777-78 (2010) (because California Legislature enacted the federal *parens patriae* statute, the legislative history of Congress as to that statute is relevant).

[2] *See United States v. Borden*, 347 U.S. 514, 518 (1954); *New York v. Microsoft*, 209 F.Supp.2d 132, 154 (D.D.C. 2002); *Clayworth*, 49 Cal.4th at 776-78. There are several such examples: please *see, e.g., In re TFT-LCD Antitrust Litig.*, No. 3:07-md-01827-SI, 2013 U.S.
(continued…)

1

file a case later-in-time than private plaintiffs, she will have conducted a confidential and often broad investigation beforehand.[3] As in this case, the Attorney General's action includes components that fit within a law enforcement role that goes beyond the role of private plaintiffs in complex price-fixing actions. *See, e.g.,* Tr. of Final Approval Hearing of *Chunghwa* and *Philips* Settlements at 5:14-25, 77:1-15 *State of California et al. v. Chunghwa Picture Tubes et al.*, Case No. CGC-11-515786 (Cal. Super. Ct. San Francisco Dec. 5, 2013), attached as Exhibit 1 to Declaration of Emilio E. Varanini.[4] However, on issues ranging from having to prove the existence of a price-fixing conspiracy, e.g., the requisite conscious commitment to a common scheme, *see* Document No. 2747 at 4, 7-8, to the question of when and how pass-on should be addressed as a precursor to receiving damages,[5] the potential for *indirect* overlap with the claims of direct purchaser plaintiffs, direct action plaintiffs, and indirect purchaser plaintiffs is substantial.

Because of this potential for direct and indirect overlap, state attorneys general commonly engage in tight coordination of litigation efforts with indirect purchaser plaintiff classes, direct purchaser plaintiff classes, and opt-outs when we file a price-fixing case in federal or state court.[6] Tight coordination of efforts involves not just close coordination of litigation efforts but also participation in joint settlement proceedings. *See, e.g.,* Order Granting Final Approval of Settlements, *State of California et al. v. Infineon Technologies, et al.*, Case No. CV-06-4333 (N.D. Cal. filed June 25, 2014) (DRAM price-fixing cases), attached as Exh. 2 to Decl. of Emilio

---

(…continued)
Dist. LEXIS 49885 (N.D. Cal. Apr. 3, 2013); *State of California et al. v. Infineon Technologies, et al.*, Case No. CV-06-4333 (N.D. Cal. filed July 14, 2006).

[3] *See, e.g., Brovelli v. Sup. Ct.* 56 Cal.2d 524, 529 (1961) (antitrust investigations analogous to confidential grand jury proceedings).

[4] For example, the Attorney General's action includes injunctive relief in which her right to seek a restoration of competition is expressly recognized by statute, Cal. Bus. & Prof. Code § 16754.5, civil penalties, Cal. Bus. & Prof. Code § 17206, and deadweight loss or general damage to the State's economy, *see, e.g.,* Christopher Leslie, *Antitrust Damages and Deadweight Loss*, 51 ANTITRUST BULLETIN 521, 525–26 (2006).

[5] *See generally* Emilio Varanini, *Exiting the Fun House of Mirrors: Clayworth v. Pfizer and the Handling of Pass-on in Post-Trial Allocation Proceedings in Federal and State Court*, 20 COMPETITION J. ANTI. & UNFAIR COMP. L. SEC. ST. B. CAL. 28, 33-44 (2011).

[6] *See, e.g., State of California et al. v. Infineon Technologies, et al.*, Case No. CV-06-4333 (N.D. Cal. filed July 14, 2006) (coordinated litigation of DRAM price-fixing case with various plaintiff groups).

E. Varanini.   That allows the Attorney General to effectuate global releases, a considerable benefit to all parties,[7] and to ensure that Californians receive maximum value for their claims.[8]

## III.   REPORT AND PROPOSAL ON SETTLEMENTS IN STATE AND FEDERAL COURT

### A.   The Settlement Activities of the Attorney General

Although in previous cases the Attorney General and indirect purchaser plaintiff groups have joined forces for coordination of fact and expert discovery, and for negotiation of settlements, whether through mediation or without it, the Indirect Purchaser Plaintiffs have not chosen that approach here.   Nonetheless, the Attorney General has reached settlements with Defendants Philips and Chunghwa that are final (Exh. 1), of which one, Philips, is on appeal (*see* Order of Court of Appeal re: Motion to Dismiss, *State of California et al. v. Philips Electronics North Am. Corp.*, Case No. A140908 (Cal. App. 1st Dist. July 9, 2014), attached as Exh. 3 to the Declaration of Emilio E. Varanini).   In addition, the Attorney General has reached settlements-in-principle with two more Defendants that are publicly known (*see, e.g.,* Exh. 1 at 4:9-19 [discussing settlement-in-principle with Defendant LG]).

However, the inability to execute a global release, as no joint settlement discussions involving the Indirect Purchaser Plaintiffs, the Attorney General, and any Defendant has taken place to date, has been hindering, and continues to substantially hinder, the Attorney General's ability to enter into settlements, thus adding to her costs.   Decl. of Emilio E. Varanini at ¶ 4.

Indeed, this inability to effectuate a global release through joint discussions and agreements has cut both ways:   After the Indirect Purchaser Plaintiffs announced their settlement, and disclosed the release language they had agreed to, with LG, the Attorney General filed a notice of intent to object—Document No. 1991, which normally is not done, before reaching her own settlement-in-principle with LG.   Exh. 1 at 4:9-19.

---

[7] *See, e.g., Sullivan v. DB Investments*, 667 F.3d 273, 310-11 (3rd Cir. 2011) (*en banc*).

[8] *Cf.* Varanini, *Exiting the Fun House of Mirrors*, 20 COMPETITION at 66 ("Indeed, state attorneys general such as the California Attorney General often work closely with class lawyers for purchasers to obtain significant relief for their citizens and government entities and then help craft and administer an allocation plan for the proceeds.").

A.  *The Appeal by the Indirect Purchaser Plaintiffs of the Attorney General's Settlement*

The settlement involving Philips is being appealed by one individual, Mr. Jeffrey Figone, who also acts as a class representative in the Indirect Purchaser Class.  Mr. Figone's objection revolves solely around the alleged preclusive effect of the release of the Attorney General's *parens patriae* claim on that part of the Indirect Purchaser Plaintiffs' class action that covers California natural persons (the rest of their case being unaffected).   Absent any such preclusive effect, they would have no such objection to that settlement. Exh. 1 at 5:14-25, 77:1-15.

That litigation of that objection in state trial court, and now in state appellate court, has led to additional costs and time expended by the State of California.  Decl. of Emilio E. Varanini at ¶ 5.  These additional costs are all the more striking given that the state trial court that granted final approval to the Philips settlement expressly envisioned, as did the settling parties, that it would be *this Court* that would adjudicate the preclusive effect, if any, of a *parens* release on the class claims.   Exh. 1 at 7:7-10, 9:12-18, 24-25, 10:1-5, 10:18-23, 12:2-18, 13:1-6, 16:6-20, 17:20-25, 18:1-25, 19:1-19, 77:1-15, 78:1-25, 82:16-24, 83:1-25.   The state trial court's reasoning was simple: until that issue was before this Court, there would be too many unknowns for any state court to rule on what, if any, preclusive effect the release of California *parens patriae* claims might have.  *Id.* It is also striking that the appeal of his decision by Mr. Figone has not removed the circumstances under which this Court may have to rule on the issue.  For example, the state appellate court could find that the Attorney General's settlement with Philips to be reasonable no matter the alleged preclusive effect of her *parens* release.  *Cf.*  Exh. 3 (Order of state appellate court: "The issue of whether Jeffrey Figone is bound by the state court settlement under the doctrine of res judicata is a disputed issue in this case.  (But see Bus. & Prof. Code, §16760, subd. (b)(3).) While we do not yet address the merits of the case, a potential effect could find Figone bound in his collateral federal litigation by the res judicata effect of the judgment at issue before us."). Indeed, even if the state appellate court were to make a ruling on this issue, this Court could still rule otherwise if it were convinced that the California Supreme Court would disagree with the ruling of the intermediate appellate court.  *See, e.g., West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940); *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007).

**B.    Proposal**

Even if this Court should choose not to address the *parens*-class issue, the Court may wish to encourage a joint settlement or mediation process.  In previous cases, the Attorney General has seen how such a process, in which state attorneys general could fold in our existing settlement efforts as part of reaching a global settlement and release, can be productive.  *Cf.* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 20.313, at 238 (2004) ("State and federal judges should consider conducting joint comprehensive settlement negotiations, hearings, and alternative dispute resolution procedures to establish case values."); Transcript of Hearing on Discovery Motions at 11-12, *State of California et al. v. Samsung SDI Co., Ltd., et al.*, Case No. CGC-11-515784 (Cal. Super. Ct. San Francisco Aug. 21, 2014), attached as Exhibit 4 to Declaration of Emilio E. Varanini (state judge asked parties to meet and confer about prospect of mediation with special master in federal action serving as mediator).  And the existence of our parallel state court case would be *no* obstacle to approval of such settlements by this Court.  *See, e.g.,* Exh. 2.

**IV.    REPORT AND PROPOSAL ON COORDINATING LITIGATION IN STATE AND FEDERAL COURT**

Coordination of federal and state litigation is not only an important goal in complex cases *see, e.g.,* MANUAL FOR COMPLEX LITIGATION, *supra*, §§ 20.31, 20.312, 20.313, but also a goal for which we have actively worked in our previous price-fixing cases, *see, e.g.,* Exh. 2 (granting approval of DRAM price-fixing case of settlements of state and federal cases).  In accordance with this goal, we have conducted fact and expert discovery in this forum, while reserving only discovery involving state government entities, residual discovery, and certain discovery involving state issues for the state court.  *Cf., e.g.,* Document No. 1128 at 2-6; Document No. 1991 at 2 n.1; Exh. 1 at 43:1-25, 44:1-8 (discussing state court endorsement of coordination of state proceedings with federal proceedings and extent of success of coordination with various plaintiff groups); Exh. 4 at 18-32 (discussing whether discovery should be allowed as to certain interrogatories due to state law contentions); *id.* at 40-48 (discussing issues of discovery involving state government entities).  This coordination of fact and expert discovery has allowed the Attorney General to avoid duplication of effort and the unnecessary expenditure of costs, though this goal has been

5

1   hindered to a substantial extent by the reluctance of the Indirect Purchaser Plaintiffs to engage in

2   meaningful coordination.  Decl. of Emilio E. Varanini at ¶ 3.

3        Going forward, the Attorney General believes that the continued coordination of

4   proceedings between state and federal courts beyond fact and expert discovery would be

5   conducive to these goals.  She envisions that a division of tasks could involve the Attorney

6   General's participation in common issues through at least the summary judgment phase of

7   proceedings in this Court.[9]  To the extent that there are state-law issues involving the Cartwright

8   Act or unique state discovery issues such as discovery aimed at state government entities, those

9   issues could be addressed by the state court going forward.[10]

10       In that respect, this Court, together with the state court, can set up those structures and

11  processes that both courts find appropriate to facilitate such coordination.  MANUAL FOR

12  COMPLEX LITIGATION, *supra*, § 20.312, at 233 ("Federal judges should communicate personally

13  with state court judges who have a significant number of cases in order to discuss mutual

14  concerns and suggestions, such as designating a liaison attorney and judge to communicate with

15  federal counterparts."); *id.* § 20.313 at 235 ("Judges might agree that the court with most of the

16  cases or the strongest interest should take the lead in certain proceedings, such as class

17  certification."); *id.* at 238 ("State and federal judges have developed coordinated management

18  plans for an entire litigation.").  And the continued voluntary participation of the Attorney

19  General in such coordination efforts does not raise jurisdictional issues for this Court.[11]

20       Consequently, the Attorney General also respectfully proposes that this Court reach out to

21  the state judge in her case and discuss the continued coordination of her state case with the federal

22  case along the lines proposed in this memorandum.[12]

23

24

---

[9] *Cf.* Varanini, *Exiting the Fun House of Mirrors*, 20 COMPETITION at 58 ("Presumably,
25  liability issues involving the underlying facts remain the same for any opt-out plaintiffs as for the
    class of purchasers or a California Attorney General's *parens patriae* action.").

26  [10] *Cf. id.* at 65 (noting that state law issues can best be handled by state courts).
    [11] *See id.* at 63 & n.14.

27  [12] The state judge has set the trial in the state case to occur on December 28, 2015, well
    after the trial date set by this Court.  Exh. 4 at 3-4.

28

1    Dated:  September 18, 2014               Respectfully submitted,

2                                  KAMALA D. HARRIS
                                 Attorney General of California

3

4

5                                  */s/ Emilio Varanini*
                                 EMILIO VARANINI
                                 Deputy Attorney General

6                                  *Attorneys for the State of California*

7    SF2011203501

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum Pursuant to September 8, 2014 Order (Master File No. CV-07-5944-SC)