Exhibit 4

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2            IN AND FOR THE COUNTY OF SAN FRANCISCO

3           BEFORE THE HONORABLE CURTIS E.A. KARNOW

4                        DEPARTMENT 304

5

6   THE STATE OF CALIFORNIA,      )
    et al,                        )
7                                 )
             Plaintiff,           )
8                                 )
       vs.                        )   CASE NO: CGC-11-515784
9                                 )
                                  )
10  SAMSUNG SDI, CO, LTD,         )
                                  )
11           Defendant,           )
    _____)
12

13           REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                     AUGUST 21, 2014

15                 SAN FRANCISCO, CALIFORNIA

16

17

18                        SF REPORTERS
                    912 COLE STREET, NUMBER 304
19              SAN FRANCISCO, CALIFORNIA  94117
                          415-948-8289
20                   Info@sf-reporters.com

21

22

23  REPORTED BY:
    KATHRYN LLOYD, CSR NO. 5955
24

25

1       A P P E A R A N C E S   O F   C O U N S E L:

2    FOR THE PLAINTIFF:

3       STATE OF CALIFORNIA DEPARTMENT OF JUSTICE

4       455 Golden Gate Avenue, Suite 11000

5       San Francisco, California 94102

6       Tel: (415)703-5909

7       BY:  BRIAN D. WANG, ESQ.

8       BY:  EMILIO VARANINI, ESQ.

9

10   FOR THE DEFENDANT:

11      SHEPPARD MULLIN

12      Four Embarcadero Center, 17th Floor

13      San Francisco, California  94111

14      Tel: (415)434-9100

15      BY:  TYLER CUNNINGHAM, ESQ.

16

17

18

19

20                    --oOo--

21

22

23

24

25

```
1              PROCEEDINGS FOR THURSDAY, AUGUST 21, 2014

2                 BEFORE CURTIS E. A. KARNOW, JUDGE

3                          9:06 a.m.

4                         PROCEEDINGS

5              THE COURT:  Good morning.  The first thing

6    I just want to mention has nothing to do with the

7    motion but has to do with trial dates.

8              This department's calendar is filling up

9    very rapidly.  Usually trial dates are about a year

10   out, and things have gotten considerably worse over

11   the last month or two.

12             I don't want to wait until we get together

13   again for our CMC to, at least, see if we can clear a

14   date.

15             The first time I can take this case -- I'm

16   assuming about a four-week trial -- I know we don't

17   know how long the trial is going to be at this point,

18   but four weeks is probably a fair estimate, starting

19   December 28th, 2015, or the next week, in early

20   January of 2016.  That would be the first date I

21   could give you if we set it today.

22             My plan is to reserve that time.  We can

23   get together and we can chat about it in more detail

24   at the CMC.  But I think it's essential that we set

25   that time aside, because next time I see you, I think
```

```
 1   we have been talking about dates in the spring and
 2   summer of 2016, and so on.  And that's not going to
 3   be of any use to anybody.
 4           And it doesn't mean that there aren't a lot
 5   of things that we can do to resolve the case before
 6   that date, but I want to reserve that time.
 7           Does anybody object to that?
 8           Does anybody, for example, know right now
 9   that's impossible, it's just not going to work?
10           MR. CUNNINGHAM:  Your Honor, it's not
11   impossible from my point of view, your Honor, but we
12   would appreciate --
13           It's fine if your Honor wants to reserve
14   the time, but we would appreciate the opportunity to
15   come back at CMC and, of course, address it.
16           MR. VARANINI:  And that's acceptable to the
17   plaintiffs, your Honor, to set a starting of
18   December 28th.
19           THE COURT:  Okay.  That'll be, presumably
20   after the Christmas break.  I'll be issuing an order
21   today that will reserve that time, and then we can
22   make it clear the parties -- reserve the right to
23   discuss it with me further.  And we'll fix it
24   formally, presumably, next time we get together again
25   for the CMC.
```

1              Before I just give you a brief read as to

2     where I am on some of these issues, do the parties

3     have anything to report to me, in other words, since

4     the papers have been filed, you have discussed

5     something, something else is off the table, some

6     resolution has been had?

7              MR. VARANINI:  No, your Honor.

8              MR. CUNNINGHAM:  Nothing here, your Honor.

9              THE COURT:  Let me take some of the easier

10    ones first.

11             My sense is that we have these issues

12    today.  We've got, in effect, the People's motion to

13    compel mediation.

14             We have People's motion for protective

15    order, which to some extent is moot.

16             As Samsung has pointed out, just because

17    the motion has been filed, the People have secured

18    some time, but we want to talk about whether the

19    People need more than September 19.

20             We have, in effect, sort of a motion to

21    stay depositions until, maybe, October 6.

22             We have SDI's motion to compel, which

23    involves roughly three areas, the Foreign Trade

24    Antitrust Improvement Act, Interrogatory Number 10,

25    and Interrogatory Number 25.

```
 1              And we have an issue which may have dropped
 2   off the radar, the adequacy of verifications, but I
 3   still want to talk about it because I'm worried about
 4   it.
 5              I think that's what's on the agenda.
 6              Does anybody have anything else to add to
 7   the agenda for today?
 8              MR. VARANINI:  No, your Honor, but on
 9   depositions, we have scheduled three depositions
10   already for September.  If I remember right, it is
11   three, I believe.
12              Well, actually, it is four depositions, and
13   we are working on the final two.
14              So I don't believe that issue is teed up
15   today, but that would depend upon opposing counsel.
16              THE COURT:  So as far as you are concerned,
17   there's nothing more to talk about on that issue.
18              MR. VARANINI:  I don't believe so.  Not
19   until October and the CMC then.
20              THE COURT:  Does Samsung agree?
21              MR. CUNNINGHAM:  I think that's right.  We
22   have got four on calender for September.  We are
23   waiting for dates.  And I understand counsel to say
24   we will get dates for those remaining two.
25              So nothing more to add on those six
```

1    depositions.  But as your Honor pointed out, there's

2    no point to further stay any further depositions

3    until later.

4           THE COURT:  Well, let's just jump in, then.

5           I mean, is there an issue with respect to

6    depositions?

7           MR. VARANINI:  Yes, your Honor, there is.

8    Even scheduling these six depositions took a huge

9    effort on our part.

10          We were given informal notice that these

11   depositions, that the opposing side wanted to take

12   them.

13          As your Honor is well aware, opposing

14   counsel, back in January, suggested that they only

15   wanted to take a few.  They came up with six.

16          Because it was the end of the fiscal year

17   and people were on vacation, it took us a huge amount

18   of effort even to get those scheduled.

19          We have never said, just be clear, we would

20   not agree to any more depositions.  But frankly, at

21   this point, given what we are doing and ending fact

22   discovery, and given the fact that we have scheduled

23   four with two more that we are trying to get

24   scheduled, to do any more depositions before the CMC,

25   frankly, would be impossible.

```
 1                    And I can go into what we are doing to
 2      finish up fact discovery, if that's necessary for
 3      your Honor.
 4                    THE COURT:  Not yet.
 5                    I'm trying to figure out if we have an
 6      issue.
 7                    So do we have a situation now where SDI has
 8      said:
 9                    We want to take the depositions of A, B and
10      C.
11                    And the AG is saying:
12                    No, we are not going to do it.
13                    Is that what I'm presented with?
14                    Or is this just an abstract chat we're
15      having about:
16                    Well, Samsung might have some other people
17      in mind some day.  And the AG is saying:
18                    Well, if you do, we won't agree to them.
19                    MR. CUNNINGHAM:  I think it's the latter,
20      your Honor, and I don't think there's a real issue
21      with respect to depositions.
22                    We have asked specifically for six specific
23      plaintiffs.  I hear plaintiff to say they will
24      produce those people.
25                    The order that they are asking your Honor
```

1    to enter here is to stay any additional depositions

2    until after October.

3              And as I is it here, I don't have any plans

4    to ask for any additional depositions beyond those

5    six, until October.

6              Our plan was all along to try to do this

7    initial discovery, including these initial

8    depositions and sit back, assess where we are, and

9    assess whether we need any additional depositions.

10             THE COURT:  Okay.  We are done with that

11   issue.

12             If something comes up tomorrow, where SDI

13   calls you up and says:

14             Here's some more people we want to do

15   before October 6th, and you look at it and say to

16   yourself we can't do that for whatever reason, come

17   talk to me and I would be happy to chat with you

18   about it.

19             MR. VARANINI:  If I may, your Honor, just

20   to keep the record clear, there's no way we can do

21   any additional depositions before October --

22             THE COURT:  I'm not talking about that.

23   I'm moving on to a new subject.

24             I'm only going to be discussing things that

25   would be right for resolution today.

1           The next issue, which I think we can take

2    care of fairly rapidly is what I'm calling the

3    People's motion to compel mediation.

4           It's cast in a different sort of way, but I

5    think that at least tees the issue up.

6           This is something which I propose to talk

7    to you about, not today, but when we get together

8    again at the CMC to give you some tentative thoughts

9    about that.

10          I don't think I have the power to compel

11   mediation, because in my mind, mediation as opposed

12   to a mandatory settlement conference is something the

13   parties have to pay for, so if you go to Jams --

14          I guess Judge Walker is at Jams now?

15          MR. VARANINI:  Judge Walker is on his own,

16   your Honor.

17          THE COURT:  He's on his own.  He's probably

18   not doing it for free.  There's probably a fee

19   involved.

20          I'm dubious of my authority to compel

21   parties to pay money to get ADR.  I'm not dubious

22   about my power to order mandatory settlement

23   conferences.

24          I think that's clear.  And if you disagree

25   with me, you should let me know when we get together

1   again next time.

2          Setting those comments aside, there's a far

3   more important issue here.  Far more important, which

4   is:

5          When is it going to be smart to do some

6   ADR?

7          And isn't it true that Judge Walker is the

8   best person to do it?

9          Those are rhetorical questions which are

10  not going to be answered today.  The parties can

11  think about that and we can talk about it when we get

12  together next time.

13         The whole idea of mediation and mandatory

14  settlement conferences is to be successful.  That

15  means people have to be in the position to be able to

16  start talking because they have got all the

17  information they need, even though they don't have

18  all the information they need for trial, and they

19  want to go to the mediator who is best bet for

20  resolving it.

21         Sounds like Judge Walker is probably that

22  person.  But ultimately it's a decision that the

23  lawyers in this case and the clients have to make in

24  terms of who they are going to come to.

25         There's definitely going to be ADR involved

1    in this case.  I am going to direct that the parties

2    meet and confer on that, what they want to do with

3    respect to the ADR and talk to me about it when they

4    get together again at the CMC.

5           Let's talk about the People's motion for an

6    effective protective order regarding written

7    discovery, supplemental productions.

8           My understanding is this:  That reading

9    between the lines, Samsung is comfortable with

10   shifting the dates back for compliance to

11   September 19th, but maybe in the reply papers,

12   there's the suggestion that more time than that is

13   needed.

14          Maybe some of this depends on which

15   interrogatories are going to be answered and how they

16   are going to be answered.

17          And maybe when I turn this over to the AG's

18   office, I will be told that we really should discuss

19   SDI's motion to compel first.  And I'm happy to

20   listen to that, since that's really the approach we

21   should take.

22          But let me, at least for now, get a lay of

23   the land as to what the parties actually want at this

24   point, turning to the People first.

25          MR. VARANINI:  Yes, your Honor.  So we had

1    proposed September 19th on a number of requests that

2    are not before your Honor as part of a global

3    resolution of all the outstanding discovery issues.

4    We didn't get that global resolution of the issues.

5    Instead, we got a motion to compel.

6              And I'm not quarreling with that.  That's

7    the right of defendants to do that.

8              But between having to deal with that motion

9    to compel and a number of last minute issues in terms

10   of fact discovery and expert discovery that we have

11   put in our reply brief, what we have asked for -- and

12   this can include the request, the so-called FTAIA

13   request, is to be able to turn in all of our

14   responses.

15             We picked October 5th, which is a Sunday.

16   That might be unreasonable.  So October 3rd, a

17   Friday, would make sense to us.  But that would allow

18   us to do with thorough job on the outstanding

19   requests, which are trial-related requests, where we

20   have to basically spell out what we are going to be

21   presenting at trial.

22             It would allow us as well, if your Honor

23   orders it, to add in the FTAIA request.

24             It gives us enough time to deal with that

25   and with all of the outstanding issues that we are

1   racing to get done before with close of discovery on

2   September 5th.

3           It also gives, since Samsung has asked for

4   their motion to compel to be brought in November,

5   that would give them over a month to digest the

6   responses and meet and confer, if necessary, before

7   bringing that motion to compel.

8           And we both would be in a position to talk,

9   at least preliminarily at the CMC, to the extent that

10  that would be warranted.

11          So for all those reasons, that's why we

12  suggested that, yes, we can get it done, we will get

13  it done, but that September 19th is just too soon,

14  given what's happened.

15          THE COURT:  Are you suggesting that a due

16  date for motion to compel be 45 days after

17  October 3rd?

18          MR. VARANINI:  Yes, your Honor.

19          THE COURT:  Mr. Cunningham?

20          MR. CUNNINGHAM:  Your Honor, we would be

21  fine with that October date, but with one big caveat

22  here, and I want to make sure that this is clear with

23  the Court and the parties, that if we are going to

24  wait until October to get responses to this discovery

25  that we served back in April, there's going to be an

1  understanding here that we're going to need some time

2  after we receive responses to be able to digest those

3  and follow-up on them.

4           And by "follow-up" I mean both follow-up in

5  terms of if we perceive there's a deficiency in the

6  response, but also to follow up with respect to any

7  further discovery we think needs to be done in this

8  case.

9           So we're fine with the October date if the

10 court is fine with that, but we just want to be sure

11 that we're not squeezed on the back end by getting

12 responses to this discovery in October, and then be

13 told that, you know, your period for taking discovery

14 is going to end a month thereafter.

15          THE COURT:  Have I set a discovery cut-off

16 in this case?

17          MR. CUNNINGHAM:  You have not.

18          MR. VARANINI:  No, your Honor.  It was our

19 hope that once we have a trial date, we could work

20 backwards and get a discovery cut-off out of that.

21          THE COURT:  Well, the trial date is,

22 unfortunately, way out in the future.  And it's

23 actually my hope to talk about this more at the CMC.

24 But the dates we are going to set are not going to be

25 a function of the trial date.  I want things wrapped

1    up a lot earlier than that.  Expert discovery, a wide

2    variety of things, which in a small traditional car

3    accident case, are done in 30 or 40 days of a trial

4    date, while you are already trying to prepare for

5    trial, that approach is usually a big mistake in a

6    case like this.

7             I think if we do have to have a trial in

8    early January 2016, for example, I think we really

9    want to wisely use the time between now and then to,

10   for example, make your lives not so miserable as you

11   might be if you were doing expert discovery in

12   December of 2015.

13            We don't have to have that discussion now,

14   but I think it's clear that we have time to get this

15   discovery done.

16            So in summary, I don't see a problem with

17   further discovery from Samsung, or indeed, the

18   People, because I haven't yet set a discovery cut-off

19   date.

20            And that being the case, I'm not going to

21   spring on the parties to set a position where it's

22   not possible for them to do anything about it.

23            We can talk about those issues when we get

24   together again at the CMC.  And the parties are free

25   to propose what those cut-off dates should be.

```
 1              So my understanding is this --
 2              Well let me ask Samsung this:
 3              Are you telling me in part that 45 days is
 4   not long enough for you to figure out whether they
 5   have given you adequate responses?
 6              MR. CUNNINGHAM:  No, your Honor.  45 days
 7   would be fine.
 8              THE COURT:  Okay.  Good.  We're set.
 9              Let me just make one comment before we get
10   on to one of the last issues we need to talk about,
11   which is discovery motions.
12              I'm here looking at approximately, I don't
13   know, maybe 10 pounds of paper or so, for these
14   discovery motions.  Most of the paper was not useful.
15              I don't know if you actually thought I was
16   going to read the expert report filed or prepared by
17   William Comanor, but the entire report was provided
18   to me.
19              There were separate statements, as required
20   by the California Rules of Court, that included the
21   discovery at issue and the responses to it, but on
22   this top of that, I also got copies of all of the
23   discovery demands and responses.
24              Totally useless.
25              So you should only provide me things that
```

1    you think in your deepest recesses of your heart I'm

2    actually going to read.

3            Of course, you have requirements when it

4    comes to the California Rules of Court, and there's

5    nothing we can do about that, except there is one

6    thing, that if you are going to pursue formal

7    discovery, obviously, you have to follow all the

8    rules.  That's just the way it is.  It produces a lot

9    of paper sometimes, and I know that.

10           Consider the one-shot approach.  It's much,

11   much faster.  It's only a few pages long sometimes.

12   It just tees up the issues once.  You never have to

13   repeat an argument even if there are fourteen

14   interrogatories at stake.

15           So have a look at the guidelines to see if

16   you think that that might satisfy your needs and

17   still allows you to adequately represent your client

18   in a discovery dispute.

19           Let's turn to Samsung's Motion to Compel.

20   Interrogatory Number 22 has been withdrawn.

21           The first one I want to talk about is the

22   Foreign Trade Antitrust Improvement Act, FTAIA.

23           The question posed by Samsung is this, in

24   the interrogatory as I understand it:

25           What is it that the People are going to

1    rely on?

2           Seems to be the common theme between this

3    and some of the other discovery disputes as well.

4           The People's argument, and then the

5    response from SDI shifts gears radically and goes

6    into the merits of this act.

7           If the People's position is that they don't

8    think the need to rely on anything in their

9    affirmative case, I suppose they could say so.  And

10   the answer to the interrogatory would be the word

11   "none."

12          And then Samsung could make a motion, make

13   a summary judgment motion.  And if Samsung is right

14   on the law, then I guess I dismiss the case or I

15   dismiss something.  And if Samsung is wrong, then I

16   don't.

17          But the issue here is:

18          What is it that People are going to rely

19   on?

20          The People's argument to me is:

21          We don't have to rely on anything because

22   that law doesn't apply.

23          Obviously, this is not a good moment for me

24   to decide the applicability of that statute.  That

25   would be quite awkward in the context of the

1   discovery dispute.

2           So why doesn't the People -- why don't they

3   just say:

4           We don't think we need to prove anything

5   here, and we are not going to.  So our answer is,

6   when it comes to the case in chief, the word "none."

7           How about that?

8           MR. VARANINI:  Well, there is a little bit

9   of a problem with that, your Honor.  We have to

10  answer that to verify the answer.

11           So what if your Honor does rule that, no,

12  it's not --

13          For example, yes, it applies under the

14  Cartwright Act, and no, it's not an affirmative

15  defense.  Then by my answering "none" which is the

16  position we would take at this point, have I waived

17  that?

18          The other side of the coin on that is in

19  terms of if it is part of my affirmative case in

20  chief, I've got two problems:

21          One is, yes, I can provide --

22          And we did say that we are going to rely on

23  the expert.  Okay.

24          But then there's the question of, well, we

25  also introduced lay testimony to support our

1    contentions on FTAIA.

2            Whether I would introduce lay testimony or

3    not --

4            THE COURT:  Just so the court reporter is

5    clear, when you say FTAIA, you mean, F-T-A-I-A?

6            MR. VARANINI:  F-T-A-I-A, yes.  I apologize

7    to the court reporter.

8            So then the question comes down to:

9            Okay, if I say "none", if I say expert

10   evidence, and they have defined evidence to exclude

11   expert evidence, so if I say "none" have I barred

12   myself from being able to come back and say, Okay,

13   well, your Honor has ruled it's actually part of our

14   case in chief, it's not an affirmative defense, it's

15   not entirely out of the Cartwright Act, have I now

16   barred myself from being able to present evidence to

17   meet what your Honor has ruled is an element of my

18   case in chief as opposed to dealing with the summary

19   judgment motion where, of course, I can come back

20   even in that context and say, no there is an issue of

21   fact, and here's the evidence that we would present.

22           That's why we think these types of

23   requests, although, they are couched in terms of

24   discovery, are really designed to give the defendants

25   an advantage at summary judgment that's not needed.

1          As your Honor just said, they can bring a

2    motion based on FTAIA.  When they bring that motion,

3    they'll present, this is what the evidence is that we

4    have.  We think it's Emelio's burden -- the AG's

5    burden, I'm sorry.  The Attorney General has not

6    proved their case in chief on this point and can't.

7    There's no triable issue of material fact.

8          We would come back and say, Number 1, it

9    doesn't apply at all under the Cartwright Act.

10          Number 2, it's an affirmative defense.

11          But Number 3, yes, there's a triable issue

12    of material fact.

13          And then those issues will be teed up for

14    this court to be able to work through them and give

15    guidance to the parties in terms of what's going on.

16          But as your Honor just said, this has come

17    up in the context of a request, so I can't literally

18    answer that question and say "none" because that's

19    not accurate.

20          It depends on whether I have the burden or

21    not, or I don't have the burden.

22          If I have the burden, then I have to go

23    back through what we have and say, okay, since your

24    Honor has ruled we have the burden, this is the

25    evidence that we would present.

1            And if on the other hand, we don't have the

2    burden, and I can wait and merely worry about

3    rebutting their affirmative defense, then if all I

4    have to do is rebut, then I can't say anything at

5    this point, because it depends on what they present.

6            And we do have requests out to Samsung that

7    go through all of their affirmative defenses as well

8    as issues like FTAIA and ask them, you know, give us

9    what evidence you are going to present on these

10   issues for precisely that reason.

11           THE COURT:  Your demands to them on what

12   evidence they have on this issue are okay, but their

13   requests to you about what evidence you have on this

14   issue is not okay?

15           MR. VARANINI:  Well, again, it depends on

16   what FTAIA is.

17           If F-T-A-I-A, if FTAIA does not apply under

18   the Cartwright Act at all, then the whole issue is

19   moot.

20           If it applies under the Cartwright Act, and

21   it's an affirmative defense, that's what your Honor

22   rules.

23           THE COURT:  When am I going to rule on

24   that?  Like on a motion in limine or something, like

25   whose burden it is?

1          MR. VARANINI:  Well, that's what's teed up

2    now in front of your Honor because it has been

3    brought up in the context of a discovery request.

4    And pursuant to the Saras (phonetic) case, if

5    something is not relevant, we shouldn't have to

6    answer it.

7          And it's going to be burdensome.  We can do

8    it by October, but it's going to be burdensome to go

9    through our entire record, act as if it is part of

10   our case in chief and extract out all of the evidence

11   that we would be presenting in pursuit of that, both

12   expert evidence and lay evidence.

13         THE COURT:  So your view is that we sort of

14   wait until the summary judgment?

15         MR. VARANINI:  No, your Honor, that's not

16   my view.

17         THE COURT:  What's your view?

18         MR. VARANINI:  My view is that your Honor

19   should go ahead and rule and give the parties

20   guidance now so that we can figure out how we deal

21   with these requests.

22         I think it is squarely before this court,

23   does FTAIA apply?

24         If the answer to that is no, then we

25   shouldn't be wasting our time doing these requests at

1   all, because it's going to eat up a considerable

2   amount of our time.

3           But let's say your Honor disagrees on that

4   point, and your Honor says, yes, it's an issue under

5   state law.  If it's an affirmative defense, then we

6   shouldn't have to reply to it, it's their defense.

7           And so insofar as we served a request to

8   them, yes, they should have to reply to that, and

9   then we should have to give to them any evidence that

10  we would present by way of rebuttal.

11          That's how it should work.  But if your

12  Honor disagrees with that and says no, no, the

13  Attorney General's office is the one that has the

14  burden, it's part of your case in chief, then, yes, I

15  do have to answer all of that.  And I have to answer

16  all of it by October.

17          But either way, the guidance from your

18  Honor, in terms of how this issue shakes out is

19  important.

20          And if you look at the Saras (phonetic),

21  your Honor, that clearly says that you are supposed

22  to look and determine if something is relevant or

23  not.

24          THE COURT:  If it's part of --

25          Let's say it's part of an affirmative

1   defense --

2           MR. VARANINI:  Yes.

3           THE COURT:  Well I guess there are three

4   options, right, that you layed out.

5           One, it has got nothing to do with this

6   case at all under any circumstances.  It's just

7   never going to come up, because it's federal law.

8   It's something we might chat about in federal court.

9   But not you.

10          Number 2, it's an affirmative defense that

11  the defendant has to raise.

12          And Number 3, it's part of the People's

13  case in chief.

14          MR. VARANINI:  Yes.

15          THE COURT:  Let's take the latter two

16  situations.

17          In either of those situations, the

18  relevancy requirement for discovery has been met,

19  right?  It's discoverable.

20          MR. VARANINI:  Correct.

21          THE COURT:  The only possible reading of

22  the statute that would absolve you from responding to

23  the discovery is holding that the FTAIA will never

24  have anything to do with this case one way or the

25  other.  Right?

```
 1              MR. VARANINI:  Yes, with a caveat.
 2              And the caveat is if your Honor finds it's
 3    an affirmative defense, then we ultimately would have
 4    to respond to these responses.
 5              But --
 6              THE COURT:  Let me interrupt you, because
 7    you have misunderstood what I said.
 8              MR. VARANINI:  Okay.
 9              THE COURT:  If it's part of your case in
10    chief, then clearly, you have to respond to the
11    discovery.
12              MR. VARANINI:  Correct.
13              THE COURT:  I'm now going to a different
14    scenario where it is --
15              Let's say I think it's part of the -- it's
16    an affirmative defense.
17              MR. VARANINI:  Yes.
18              THE COURT:  In that situation, the
19    discovery -- relevancy or the discoverability of it
20    has been established, even though it's not your
21    burden.  Right?  It's still discoverable today.
22              MR. VARANINI:  Not today.
23              THE COURT:  Why not?
24              MR. VARANINI:  Okay.  It is discoverable,
25    but not today.  If it's an affirmative defense, what
```

1   we would put on would be by way of rebuttal.  So

2   until we see what they are going to put on as an

3   affirmative defense, we can't determine --

4            THE COURT:  This doesn't --

5            I'm really not tracking you.

6            Let's say we had a statute of limitations

7   defense in this case, where there's a big dispute

8   that you found out about this on Day X, and they say

9   you actually found out about all this on Day Y, and

10  it turns out that's a big deal because it's

11  indecisive.

12           And we all know that statutes of

13  limitations are affirmative defenses.  Right?

14           MR. VARANINI:  Yes.

15           THE COURT:  Let's assume so, at least for

16  today's purposes.

17           Now, an interrogatory comes from the

18  defendant to the AG and says:

19           When did you learn about this, and other

20  questions about when the People learned, things that

21  relate clearly and only to the affirmative defense of

22  the statute of limitations.

23           MR. VARANINI:  Yes.

24           THE COURT:  You wouldn't have to answer

25  those questions until what, somewhere halfway through

1    the trial?

2            MR. VARANINI:  No, your Honor.

3            But the question that your Honor is posing,

4    if I could just rephrase it slightly, is what's the

5    timing of our responses?

6            THE COURT:  Okay.

7            MR. VARANINI:  Okay.  Your Honor is

8    correct.  We would have to respond to that.  But it

9    depends on whether there's an issue or not and what

10   kind of evidence they, the other side would be

11   presenting.

12           THE COURT:  You mean the discoverability?

13   They have to make an evidentiary showing that they

14   have some evidence before they can issue the demand,

15   the discovery demand to you for you to respond to?

16           MR. VARANINI:  Sure, because how do I know

17   how I am going to rebut it.

18           If the question is -- it's their burden and

19   we do rebuttal, your Honor, then the question is what

20   kind of evidence do I have to put on by way of

21   rebutting their case?

22           If I don't know what their case is, then

23   I'm assuming a hypothetical.

24           THE COURT:  So if they tell you at the

25   beginning of a case:

1          We don't have any evidence on the statute

2     of limitations right now, we are investigating, but

3     we are pretty sure that you, the AG, learned about

4     this 25 years ago.  Here's our interrogatory to you:

5          When did you, Attorney General, learn about

6     this thing?

7          You would be entitled to say:

8          We are not talking to you about this.  We

9     are not going to respond to this until, what, they

10    give you a declaration that says we have some

11    evidence, or they respond to your demands first?

12    That sort of thing?

13         MR. VARANINI:  Well, it depends on whether

14    that type of fact is something that --

15         They would be doing discovery into whether

16    they have an affirmative defense, just like we do

17    discovery into whether we have a case in chief.

18         So like we do discovery, for example, the

19    Attorney General's office, into whether Samsung was

20    part of a conspiracy.

21         They are doing discovery in terms of

22    whether, what we knew for purposes of putting on an

23    affirmative defense.

24         This kind of defense is different.  This

25    type of defense is that you cannot show the direct

1    and substantial effect under FTAIA.

2            Okay.  So if you look at the FTAIA as a

3    statute, right?  What it says is:  If you, the

4    Attorney General's office want a bring a price fixing

5    case.  And part of that price fixing case involves

6    conduct that happened overseas, which is what

7    happened here, and it involves commerce that came

8    into this country, which is also what happened here,

9    you can only do that in one of two ways under the

10   statute.

11           One is that you can go under the import

12   commerce provision.  So that's, for example, to the

13   extent that tubes were directly imported into the

14   United States.  Okay.  That's entirely pursuant to

15   the Ninth Circuit Hsiung case.  That's entirely

16   outside of the FTAIA.

17           Okay.  So there's that part of the case.

18           Then there's the other part of the case

19   where you are talking about, okay, you have a color

20   picture tube, for example, that is made overseas.

21   It's put into a television overseas.  That television

22   is then imported into this country.  Okay.  That

23   specific transaction falls within a different

24   exception to the FTAIA, the direct, substantial and

25   foreseeability exception.  Okay.

1        And in terms of the direct, substantial and
2   foreseeability exception to the FTAIA, which is what
3   we are talking about here, that's different than your
4   Honor's example of a statute of limitations, because
5   that, if it's an affirmative defense, they have to
6   show it's not direct, not substantial, not
7   foreseeable it went into the United States, and I
8   only have to rebut it.
9        If, on the other hand, I have to show it's
10  direct, substantial and foreseeable, that changes the
11  kind of evidence I would put on, the nature and
12  quality of it.  It changes my whole strategy, and it
13  would change my whole answer to that question.
14       It's a complex answer to that question.
15  It's not as simple as saying what did I know 25 years
16  ago if we are talking a statute of limitations.
17       And so whether I have to rebut or whether I
18  have to put it on my case in chief actually changes a
19  lot the kind of answer I would have to give, which I
20  have to give under oath and which binds our office.
21       THE COURT:  I'll hear from Samsung.
22       MR. CUNNINGHAM:  Well, I agree completely
23  with the position that your Honor stated that --
24       THE COURT:  I haven't taken one yet.
25       MR. CUNNINGHAM:  Well, with your initial

1    thoughts, let me say.

2            I think that what's been lost a little bit

3    in the shuffle of the briefing here, is we get into

4    weaves of the FTAIA and how it functions in the fact

5    that this is a discovery motion.

6            And really the pertinent questions are:

7            Is this discovery relevant to the subject

8    matter of the action and is it reasonably calculated

9    to lead to the discovery of admissible evidence?

10           And the answers to those questions are

11   clearly yes here.

12           We are asking about the CRTs and the

13   monitors and the televisions that plaintiffs

14   purchased.  So that's the subject matter of the

15   action.

16           And we are asking plaintiffs:

17           What's the evidence that you are going to

18   put forth on these issues relating to foreign

19   commerce?

20           And that's reasonably calculated to lead to

21   the discovery of admissible evidence.

22           Now, I heard your Honor's initial comments

23   to say you don't think you have to decide these

24   issues of whether the FTAIA applies to the Cartwright

25   Act and what the burden is.

1          And I agree with that statement.  I don't
2    think that's necessary to resolve on this motion.  I
3    think it's been sufficiently briefed that the court
4    could decide that.  I think that there's been plenty
5    of case law, and I think there's no question based on
6    that case law that, yes, it does apply.
7          THE COURT:  Well, if I concluded that it
8    clearly doesn't apply.  I mean, if you asked
9    something to the AG about, you know, how do you
10   expect to prove negligence in the manufacture of
11   these tubes, the AG would look at that and say that
12   has nothing to do with this case, and I might have to
13   decide that, and we wouldn't have discovery on that.
14   Right?
15         I mean, there has to be this nexus for the
16   issues which were legitimately raised by the
17   pleadings.
18         MR. CUNNINGHAM:  Well, I think that --
19   going back to your Honor's initial comment -- if that
20   is your decision that the FTAIA has nothing to do
21   with this case, that --
22         I mean, we are weighing the relevance of
23   the request versus the burden in answering.  Right?
24         So if that's your Honor's position, I think
25   plaintiffs can fairly come back and say, as your

1    Honor suggested, "none" in response to each of these

2    questions.

3            What's your evidence that, you know, that

4    the sale of the CRT tube had a direct, substantial

5    and reasonably foreseeable effect on U.S. commerce?

6            None.  We have no evidence on that.

7            And that answer could be given with no

8    burden at all.

9            So I think what's important to keep in mind

10   here is the function of this discovery.  What we are

11   trying to do is appropriately tee up these issues for

12   a resolution down the road.

13           And so we are asking what the Attorney

14   General's evidence is on these issues, which we think

15   are crucial issues and have potential to really pare

16   down a good amount of this case and narrow the

17   issues.

18           THE COURT:  My understanding is that the AG

19   actually has provided a response, and that your

20   problem -- it's not that they haven't replied, but

21   your problem is that what they have done is to point

22   to 148 depositions and 3,000 exhibits.  And you have

23   said that doesn't work as a response.  You have to be

24   more specific.

25           MR. CUNNINGHAM:  Right.  That's exactly

1    right, your Honor.

2            And so the problem with that is it doesn't

3    serve the function of the discovery here of narrowing

4    the issues, but what can we do with that response?

5            When we go to make our summary judgment

6    motion, we don't have the universe of evidence that

7    the Attorney General is really going to use to prove

8    these critical foreign commerce facts.

9            And so what we are trying to prevent here

10   is I'll spring a summary judgment motion on the

11   FTAIA, and having in opposition the Attorney General

12   tell us for the first time:

13           Our proof is this data set and that data

14   set.

15           And then we have to deal with that on the

16   reply.

17           And so I really think it serves everybody's

18   interests here, and particularly would facilitate

19   resolution of the issues for the court if everybody

20   could put their cards on the table on this issue now

21   and we could deal with it squarely when it comes time

22   for summary judgment.

23           THE COURT:  Let me just give the last word

24   to the AG, and then we'll move on.

25           MR. VARANINI:  Yes, your Honor.

1            So when we talk about laying the cards on

2    the table, it depends on what kind of game are we

3    playing here, if we are going to keep going with the

4    card analogy.

5            So if the game here is rebut the

6    affirmative defense, that's a different set of cards

7    that get played as opposed to the game being you have

8    to do this as part of your case in chief.  That's a

9    different response.

10            So actually in the absence of guidance from

11    your Honor, how we are going to have to interpret

12    this is we are going to have to respond as if this is

13    our case in chief, which means we have to do a lot of

14    extra work on the issues where your Honor may rule it

15    doesn't even apply at all, in which case, that would

16    solve it, we are done, and that enables us to focus

17    on other more important issues.

18            Or your Honor could say, yes, it is

19    relevant, but it's an affirmative defense, so, yes,

20    you Attorney General, do need to respond, but you can

21    wait and see what Samsung's going to present on that

22    issue.  And then I would want a response within 30

23    days after their response.

24            And that would be reasonable because that

25    forces people to put their cards on the table, but at

1    least we know the game that we are actually playing

2    here.

3            THE COURT:  Suppose Samsung didn't even

4    have their demand out?  Suppose they asked you for

5    this stuff?

6            Your position is that:

7            Well, we don't have to answer your question

8    until you have served us with discovery?

9            Or what?

10           You served them with discovery first on

11   this issue?

12           You need to send them a demand first on the

13   statute?

14           MR. VARANINI:  I'm sorry, your Honor.  I'm

15   not sure I understood the question.

16           THE COURT:  I'm going to move on to

17   Interrogatory Number 10.  I think we exhausted that

18   issue.

19           Interrogatory 10 is the same structure,

20   which is again, what is it that you are going to rely

21   on with respect to identifying the makers of these

22   CRTs?

23           That's what they want to know.  What are

24   you going to rely on?

25           So it's not true, as the People's papers

1   suggest, that it actually requires you to talk to

2   everybody in California and ask them to go into their

3   cabinets, rip open their televisions, read the

4   interior labels and try and figure out who made the

5   CRTs at issue.

6           The question is:  What is it that you are

7   going to rely on?

8           And your answer might be:

9           Nothing;

10          Or, we have got an expert;

11          Or, we have some spreadsheets;

12          Or, we don't think we have to.

13          What they are asking you is:

14          What is your plan?

15          What is your plan in terms of what you are

16   going to be producing on this issue?

17          So what's wrong with that question?

18          MR. VARANINI:  Well, as your Honor

19   rephrased it, nothing.  I don't have a problem with

20   that.

21          Your Honor rephrased it as:

22          What's your plan?

23          What are you going to produce on this

24   issue?

25          We told them that we are going to produce

```
1    expert evidence based on market shares.
2              We have, even in response to their
3    criticism, you haven't pointed us to where in the
4    expert report we have done that.
5              THE COURT:  Okay.
6              MR. VARANINI:  So as rephrased?  No, we
7    don't have a problem with what your Honor is saying.
8              THE COURT:  So does Samsung agree that
9    that's the thrust of your interrogatory?
10             MR. CUNNINGHAM:  It is, your Honor.
11             THE COURT:  Okay.  Let's move on.
12             Next one is Interrogatory Number 25.
13             What evidence is the plaintiff going to
14   relying to show that the conspiracy included
15   agreements on transfer prices?
16             My understanding is that there's actually
17   an agreement here, reading between the lines, that
18   the People have basically agreed to respond to that
19   within the time frame that we are going to be
20   setting, October 3rd.  Right?
21             MR. VARANINI:  Yes, your Honor.  We will
22   give them a more specific response like we agreed to
23   for other requests by them.
24             THE COURT:  So we're good.
25             The last thing I just want to talk about
```

1   briefly -- and we don't need to have a resolution of

2   this now -- and it may be that the parties will work

3   this out on their own -- is the adequacy of

4   verification.

5          It has been raised by, at least, in some of

6   the opening papers.  I think by the time you get to

7   the reply, it sounds like the parties don't think we

8   we have to address it today, which is fine, because

9   I'm not reaching out for problems.

10          But I'm a little worried about the

11  situation because by the time we get to trial, I

12  think we need the ability to have, for example, the

13  defendant cross-examine a person, a live person on

14  the stand, about interrogatory responses or responses

15  to RFAs or something like that.

16          Now, I completely understand the practical

17  issues that the AG's office faces and why it is

18  convenient to have an attorney at the AG's office do

19  the verifications.  That's perfectly obvious.

20          But I'm worried about what the trial is

21  going to look like, especially if a lead attorney

22  from the AG's office, who is going to be spending

23  much of his or her time at the podium talking to a

24  jury or talking to me, as a lawyer that has to take

25  the stand to testify about why he or she thinks these

1   verifications were trustworthy, where the information

2   came from and so on.  So that's my concern.  What is

3   it that the AG's office thinks is probably going to

4   happen at trial if we go down this path?

5           MR. VARANINI:  If I may, your Honor.  We

6   represent actual persons.

7           THE COURT:  Right.

8           MR. VARANINI:  We represent government

9   entities.  There has never been a case insofar as I'm

10  aware where an AG attorney needed to be

11  cross-examined on the stand about verifications that

12  they did when they were acting in those capacities.

13          There is the possibility, I'm sure -- I

14  would tend to doubt it, frankly.  I think it's

15  unlikely.  Maybe opposing counsel would disagree with

16  me, but I can imagine a case where a government

17  entity would need to be cross-examined on the stand

18  about, let's say, bidding practices.  Again, I doubt

19  it.  But let's just say that's possible, because

20  that's really the only scenario I can think of here,

21  then we would be obligated to produce somebody who

22  could speak about that.  And that's the point of the

23  depositions.

24          So right now we have these six depositions.

25  And we've said that they can bring up the possibility

1    of needing to do more later.

2              Those People would be the kind of People

3    who we would be calling to the stand.  I wouldn't be

4    called to the stand for anything that has to do with

5    any of that.

6              So I don't practically think there was

7    going to be a problem here.  If there was, the

8    legislature never would have set up this scheme in

9    the first place for us to be able to represent these

10   people and do verifications on their behalf, because

11   it would become impossible under the state rules to

12   do a case in that eventuality.

13             THE COURT:  So your view is that if Samsung

14   issues a trial subpoena for you to testify about a

15   verification and about the contents of, let's say,

16   interrogatory responses --

17             MR. VARANINI:  Yes.

18             THE COURT:  -- that that would be not

19   proper?

20             MR. VARANINI:  My view would be that

21   it would not.  I can't say it would never be proper,

22   but my view would be that in the normal course of

23   things, yes, it would be improper.  It would violate

24   the whole scheme set up by the legislature by which

25   we can represent people.

1          It's like a class action case in this

2     sense.  So I just thought of this analogy, and it's

3     off the top of my head, which is always dangerous,

4     but you have a class action case, and you have a

5     situation -- sure, you have the class representative,

6     who you can put up on the stand, I suppose.

7          Would you do that for, let's say, the

8     conspiracy side of the case?

9          No.

10         But let's say you are talking about

11    damages.  And for some reason there's something

12    involved where you want to hear -- you know, you want

13    to examine the class representative to show that it's

14    unlikely there were ever overcharges.  Say you want

15    to do that.

16         Well, you talk about government entities.

17    And there are -- with your Honor's guidance, there

18    are ways that witnesses could be put up to talk about

19    that.

20         If you are talking about actual persons,

21    that's going to be only through experts.  We are not

22    going to go get people at random and put them up on

23    stand.  We don't have a class representative.  And to

24    follow the legislature's scheme that they set out

25    under which we can represent people, we don't need to

1    show injury to be able to bring a Parens claim.

2              THE COURT:  I understand that.

3              MR. VARANINI:  So I guess my point, your

4    Honor, is that, yes it would be improper.  It would

5    be unlikely if not impossible that it would ever be

6    relevant.

7              And to the extent that one could imagine

8    issue with all the government entities, that is

9    something we can deal with without having to put

10   myself on the stand, for example, because I am the

11   one doing the verifications here.

12             THE COURT:  Does Samsung think we have an

13   issue to discuss or not at this time?

14             MR. CUNNINGHAM:  I do think so coming into

15   the courtroom, this morning, but I'm not quite sure

16   now.

17             I initially viewed this as a non-issue

18   because I thought that, you know, we could use

19   verifications by the Attorney General acting as an

20   attorney for the government entities to perform this

21   cross-examination that your Honor is talking about.

22             THE COURT:  Who did you think you would

23   cross?

24             MR. CUNNINGHAM:  Well, for instance, a

25   purchaser from one of the government entities.

1              THE COURT:  You are right.

2              MR. CUNNINGHAM:  I understand the Parens

3    claim is different animal.  And practically speaking,

4    I don't know how we would go about getting

5    verifications from everybody that bought a television

6    in California.  So I'm speaking strictly about the

7    government entity claims here.

8              So I didn't think it was an issue with the

9    verification.  We resisted their motion for

10   protective order just because we wanted to leave the

11   option open in the case something unforeseen happened

12   down the road to try to pursue verifications from

13   those entities.

14             But if I hear your Honor telling me that

15   there might be a problem with using an interrogatory

16   response, for example, from a government entity agent

17   that's signed by counsel from the AG's office --

18             THE COURT:  That's not what I'm suggesting

19   at all.  I don't think that's at issue.

20             I mean, if they submit a verification with

21   respect to the interrogatories and there's no motion

22   made about it and there's no fuss about it, then

23   there you are, you've got verifying discovery.

24             And I would find it bizarre that in the

25   event of trial, that the AG would then object to your

1    using it when they are the very party who thought to
2    themselves this is a perfectly appropriate way of
3    verifying.
4              So I don't have any concern about that at
5    all.  I would find that bizarre, and various
6    doctrines of estoppel and so on would probably
7    inhibit the AG's office from taking such a position.
8              I think I had a different issue in mind,
9    which I think the Attorney General's office is
10   suggesting as a practical solution to it.  The
11   different issue is that there are situations in which
12   lawyers want to cross-examine the verifier:
13             Is it true that you signed these
14   interrogatories?
15             How could you think that this was true at
16   the time?
17             You didn't --
18             You know, to cross-examination in that
19   sense.
20             I think what the AG's office is saying
21   is -- and I think you hinted to it yourself -- if
22   there is such a factual issue that pertains to some
23   government agency, you can actually call that agency
24   into court and you can actually get the firsthand
25   information in at that point.

1              You will, perhaps, be inhibited, arguably

2    from cross-examining the verifier.

3              But if there's no issue now, there's no

4    issue, and I'm not going to belabor it.

5              I'm going to get an order out on all these

6    discovery issues, and including memorializing

7    agreements that have been reached.  There have been a

8    couple here -- not all of them -- that have been

9    subject to agreement.  I will get them out within the

10   next day or two.  And I will see everybody at the

11   next CMC.

12             MR. CUNNINGHAM:  If I may, your Honor.  A

13   couple points.

14             THE COURT:  Sure.

15             MR. CUNNINGHAM:  If I may go back, briefly,

16   to Interrogatory Number 10.

17             THE COURT:  Number 10.  Okay.

18             MR. CUNNINGHAM:  That's the interrogatory

19   that asks for the evidence the Attorney General is

20   going to put forth regarding the manufacturer of the

21   CRTs inside the televisions, in the monitors.

22             Their response, as it currently stands to

23   that interrogatory, cites the entire expert report

24   and all of the backup data, et cetera.  The Attorney

25   General in their papers, in this motion, has narrowed

1    that down considerably to just a couple pages and

2    specific pieces of evidence.  And I understand now

3    that that's the evidence they intend to rely on to

4    show this point.

5           We would just ask that in their

6    supplemental response the Attorney General provides a

7    verified response that specifies that narrow range of

8    evidence.

9           MR. VARANINI:  That's fine, your Honor.

10          MR. CUNNINGHAM:  And then the only other

11   issue that I wanted to raise was with respect to the

12   timing of the next case management conference.

13          I don't know if the Attorney General

14   agrees, but I think it may serve us to maybe push

15   that back a month, or four or five or six weeks, so

16   that we'll have these supplemental responses in hand?

17          THE COURT:  I don't want to do that.  Even

18   if it's a brief discussion, I would like to meet with

19   you, and you can tell me at that point if there's

20   more important work to do down the road.  But I want

21   to make sure that I'm on top of this, that we don't

22   have discovery disputes.

23          Even if you just come in for five or ten

24   minutes.  If you are coming from out of town, I'm

25   happy to do it by telephone if that's more

1    convenient, but I want to make sure that I just stay

2    on top of this.  And I'll see you soon.

3              Thank you very much.  Appreciate it.

4              MR. VARANINI:  Thank you, your Honor.

5              MR. CUNNINGHAM:  Thank you, your Honor.

6

7         (Proceedings were concluded at 9:58 a.m.)

8

9                        --oOo--

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    REPORTER'S CERTIFICATE

2        I, KATHRYN LLOYD, CSR No. 5955, Certified

3   Shorthand Reporter, certify:

4        That the foregoing proceedings were taken before

5   me at the time and place therein set forth;

6        That the statements of the parties made at the

7   time of the proceedings were recorded

8   stenographically by me and were thereafter

9   transcribed;

10        That the foregoing is a true and correct

11   transcript of my shorthand notes so taken.

12        I further certify that I am not a relative or

13   employee of any attorney of the parties, nor

14   financially interested in the action.

15        I declare under penalty of perjury under the

16   laws of California that the foregoing is true and

17   correct.

18        Dated this____ day of _____, 2014.

19

20        _____

21             KATHRYN LLOYD, CSR 5955

22

23

24

25
```

**-**

**--ooo--** 50:9

**1**

**1** 22:8
**10** 5:24 17:13 38:17,19 48:16,17
**148** 35:22
**19** 5:19
**19th** 12:11 13:1 14:13

**2**

**2** 26:10
**2014** 3:1
**2015** 3:19 16:12
**2016** 3:20 4:2 16:8
**21** 3:1
**22** 18:20
**25** 5:25 30:4 32:15 40:12
**28th** 3:19 4:18

**3**

**3** 22:11 26:12
**3,000** 35:22
**30** 16:3 37:22
**3rd** 13:16 14:17 40:20

**4**

**40** 16:3
**45** 14:16 17:3,6

**5**

**5th** 13:15 14:2

**6**

**6** 5:21
**6th** 9:15

**9**

**9:06** 3:3
**9:58** 50:7

**A**

**a.m.** 3:3 50:7
**ability** 41:12
**absence** 37:10
**absolve** 26:22
**abstract** 8:14
**acceptable** 4:16
**accident** 16:3
**accurate** 22:19
**act** 5:24 18:22 19:6 20:14 21:15
  22:9 23:18,20 24:9 33:25
**acting** 42:12 45:19
**action** 33:8,15 44:1,4
**actual** 42:6 44:20
**add** 6:6,25 13:23
**additional** 9:1,4,9,21
**address** 4:15 41:8
**adequacy** 6:2 41:3
**adequate** 17:5
**adequately** 18:17
**admissible** 33:9,21
**ADR** 10:21 11:6,25 12:3
**advantage** 21:25
**affirmative** 19:9 20:14,19 21:14
  22:10 23:3,7,21 25:5,25 26:10
  27:3,16,25 28:3,13,21 30:16,23
  32:5 37:6,19
**AG** 8:11,17 28:18 30:3 34:9,11
  35:18 36:24 42:10 46:25
**AG'S** 12:17 22:4 41:17,18,22 42:3
  46:17 47:7,20
**agency** 47:23
**agenda** 6:5,7
**agent** 46:16

**agree** 7:20 8:18 32:22 34:1 40:8
**agreed** 40:18,22
**agreement** 40:17 48:9
**agreements** 40:15 48:7
**agrees** 49:14
**ahead** 24:19
**amount** 7:17 25:2 35:16
**analogy** 37:4 44:2
**animal** 46:3
**answering** 20:15 34:23
**answers** 33:10
**Antitrust** 5:24 18:22
**apologize** 21:6
**applicability** 19:24
**applies** 20:13 23:20 33:24
**apply** 19:22 22:9 23:17 24:23
  34:6,8 37:15
**approach** 12:20 16:5 18:10
**appropriately** 35:11
**approximately** 17:12
**April** 14:25
**areas** 5:23
**arguably** 48:1
**argument** 18:13 19:4,20
**asks** 48:19
**assess** 9:8,9
**assume** 28:15
**assuming** 3:16 29:23
**attorney** 22:5 25:13 30:5,19 31:4
  35:13 36:7,11 37:20 41:18,21
  42:10 45:19,20 47:9 48:19,24
  49:6,13
**AUGUST** 3:1
**authority** 10:20
**aware** 7:13 42:10
**awkward** 19:25

**B**

**back** 4:15 7:14 9:8 12:10 14:25

15:11 21:12,19 22:8,23 34:19,25
   49:15

**backup** 48:24

**backwards** 15:20

**barred** 21:11,16

**based** 22:2 34:5 40:1

**basically** 13:20 40:18

**beginning** 29:25

**behalf** 43:10

**belabor** 48:4

**bet** 11:19

**bidding** 42:18

**big** 14:21 16:5 28:7,10

**binds** 32:20

**bit** 20:8 33:2

**bizarre** 46:24 47:5

**bought** 46:5

**break** 4:20

**briefed** 34:3

**briefing** 33:3

**briefly** 41:1 48:15

**bring** 22:1,2 31:4 42:25 45:1

**bringing** 14:7

**brought** 14:4 24:3

**burden** 22:4,5,20,21,22,24 23:2,
   25 25:14 27:21 29:18 33:25 34:23
   35:8

**burdensome** 24:7,8

———————————

## C

**cabinets** 39:3

**calculated** 33:8,20

**calendar** 3:8

**calender** 6:22

**California** 17:20 18:4 39:2 46:6

**call** 47:23

**called** 43:4

**calling** 10:2 43:3

**calls** 9:13

**capacities** 42:12

**car** 16:2

**card** 37:4

**cards** 36:20 37:1,6,25

**care** 10:2

**Cartwright** 20:14 21:15 22:9
   23:18,20 33:24

**case** 3:15 4:5 11:23 12:1 15:8,16
   16:3,6,20 19:9,14 20:6,19 21:14,
   18 22:6 24:4,10 25:14 26:6,13,24
   27:9 28:7 29:21,22,25 30:17 31:5,
   15,17, 32:18 34:5,6,12,21 35:16
   37:8,13,15 42:9,16 43:12 44:1,4,8
   46:11 49:12

**cast** 10:4

**caveat** 14:21 27:1,2

**cetera** 48:24

**change** 32:13

**chat** 3:23 8:14 9:17 26:8

**chief** 20:6,20 21:14,18 22:6 24:10
   25:14 26:13 27:10 30:17 32:18
   37:8,13

**Christmas** 4:20

**Circuit** 31:15

**circumstances** 26:6

**cites** 48:23

**claim** 45:1 46:3

**claims** 46:7

**class** 44:1,4,5,13,23

**clear** 3:13 4:22 7:19 9:20 10:24
   14:22 16:14 21:5

**client** 18:17

**clients** 11:23

**close** 14:1

**CMC** 3:13,24 4:15,25 6:19 7:24
   10:8 12:4 14:9 15:23 16:24 48:11

**coin** 20:18

**color** 31:19

**Comanor** 17:17

**comfortable** 12:9

**comment** 17:9 34:19

**comments** 11:2 33:22

**commerce** 31:7,12 33:19 35:5
   36:8

**common** 19:2

**compel** 5:13,22 10:3,10,20 12:19
   13:5,9 14:4,7,16 18:19

**completely** 32:22 41:16

**complex** 32:14

**compliance** 12:10

**concern** 42:2 47:4

**concerned** 6:16

**concluded** 50:7

**conduct** 31:6

**confer** 12:2 14:6

**conference** 49:12

**conferences** 10:23 11:14

**considerable** 25:1

**considerably** 3:10 49:1

**conspiracy** 30:20 40:14 44:8

**contentions** 21:1

**contents** 43:15

**context** 19:25 21:20 22:17 24:3

**convenient** 41:18 50:1

**copies** 17:22

**correct** 26:20 27:12 29:8

**couched** 21:23

**counsel** 6:15,23 7:14 42:15 46:17

**country** 31:8,22

**couple** 48:8,13 49:1

**court** 3:5 4:19 5:9 6:16,20 8:4
   9:10,22 10:17 14:15,19,23 15:10,
   15,21 17:8,20 21:4,7 22:14 23:11,
   23 24:13,17,22 25:24 26:3,8,15,21
   27:6,9,13,18,23 28:4,15,24 29:6,
   12,24 32:21,24 34:3,7 35:18
   36:19,23 38:3,16 40:5,8,11,24
   42:7 43:13,18 45:2,12,22 46:1,18
   47:24 48:14, 49:17

**courtroom** 45:15

**critical** 36:8

criticism 40:3

cross 45:23

cross-examination 45:21 47:18

cross-examine 41:13 47:12

cross-examined 42:11,17

cross-examining 48:2

CRT 35:4

CRTS 33:12 38:22 39:5 48:21

crucial 35:15

Cunningham 4:10 5:8 6:21
 14:19,20 15:17 17:6 32:22,25
 34:18 35:25 40:10 45:14,24 46:2
 48:12,15,18 49:10 50:5

CURTIS 3:2

cut-off 15:15,20 16:18,25

---

D

damages 44:11

dangerous 44:3

data 36:13 48:24

date 3:14,20 4:6 14:16,21 15:9,19,
 21,25 16:4,19

dates 3:7,9 4:1 6:23,24 12:10
 15:24 16:25

day 8:17 28:8,9 48:10

days 14:16 17:3,6 37:23

deal 13:8,24 24:20 28:10 36:15,21
 45:9

dealing 21:18

December 3:19 4:18 16:12

decide 19:24 33:23 34:4,13

decision 11:22 34:20

declaration 30:10

deepest 18:1

defendant 26:11 28:18 41:13

defendants 13:7 21:24

defense 20:15 21:14 22:10 23:3,
 21 25:5,6 26:1,10 27:3,16,25 28:3,
 7,21 30:16,23,24,25 32:5 37:6,19

defenses 23:7 28:13

deficiency 15:5

defined 21:10

demand 29:14,15 38:4,12

demands 17:23 30:11

department's 3:8

depend 6:15

depends 12:14 22:20 23:5,15
 29:9 30:13 37:2

depositions 5:21 6:9,12 7:1,2,6,
 8,11,20,24 8:9,21 9:1,4,8,9,21
 35:22 42:23,24

designed 21:24

detail 3:23

determine 25:22 28:3

digest 14:5 15:2

direct 12:1 30:25 31:24 32:1,6,10
 35:4

directly 31:13

disagree 10:24 42:15

disagrees 25:3,12

discoverability 27:19 29:12

discoverable 26:19 27:21,24

discovery 7:22 8:2 12:7 13:3,10
 14:1,24 15:7,12,13,15,20 16:1,11,
 15,17,18 17:11,14,21,23 18:7,18
 19:3 20:1 21:24 24:3 26:18,23
 27:11,19 30:15,17,18,21 33:5,7,9,
 21 34:13 35:10 36:3 38:8,10 46:23
 48:6 49:22

discuss 4:23 12:18 45:13

discussed 5:4

discussing 9:24

discussion 16:13 49:18

dismiss 19:14,15

dispute 18:18 20:1 28:7

disputes 19:3 49:22

doctrines 47:6

doubt 42:14,18

dropped 6:1

dubious 10:20,21

due 14:15

---

E

earlier 16:1

early 3:19 16:8

easier 5:9

eat 25:1

effect 5:12,20 31:1 35:5

effective 12:6

effort 7:9,18

element 21:17

Emelio's 22:4

enables 37:16

end 7:16 15:11,14

ending 7:21

enter 9:1

entire 17:17 24:9 48:23

entities 42:9 44:16 45:8,20,25
 46:13

entitled 30:7

entity 42:17 46:7,16

essential 3:24

established 27:20

estimate 3:18

estoppel 47:6

event 46:25

eventuality 43:12

everybody's 36:17

evidence 21:10,11,16,21 22:3,25
 23:9,12,13 24:10,12 25:9 29:10,
 14,20 30:1, 32:11 33:9,17,21 35:3,
 6,14 36:6 40:1,13 48:19 49:2,3,8

evidentiary 29:13

examine 44:13

exception 31:24,25 32:2

exclude 21:10

exhausted 38:17

exhibits 35:22

expect 34:10

expert 13:10 16:1,11 17:16 20:23

21:9,11 24:12 39:10 40:1,4 48:23

**experts** 44:21

**extent** 5:15 14:9 31:13 45:7

**extra** 37:14

**extract** 24:10

**F**

**F-t-a-i-a** 21:5,6 23:17

**faces** 41:17

**facilitate** 36:18

**fact** 7:21,22 8:2 13:10 21:21 22:7, 12 30:14 33:4

**facts** 36:8

**factual** 47:22

**fair** 3:18

**fairly** 10:2 34:25

**falls** 31:23

**faster** 18:11

**federal** 26:7,8

**fee** 10:18

**figure** 8:5 17:4 24:20 39:4

**filed** 5:4,17 17:16

**filling** 3:8

**final** 6:13

**find** 46:24 47:5

**finds** 27:2

**fine** 4:13 14:21 15:9,10 17:7 41:8 49:9

**finish** 8:2

**firsthand** 47:24

**fiscal** 7:16

**fix** 4:23

**fixing** 31:4,5

**focus** 37:16

**follow** 15:6 18:7 44:24

**follow-up** 15:3,4

**forces** 37:25

**foreign** 5:23 18:22 33:18 36:8

**foreseeability** 31:25 32:2

**foreseeable** 32:7,10 35:5

**formal** 18:6

**formally** 4:24

**found** 28:8,9

**four-week** 3:16

**fourteen** 18:13

**frame** 40:19

**frankly** 7:20,25 42:14

**free** 10:18 16:24

**Friday** 13:17

**front** 24:2

**FTAIA** 13:12,23 18:22 21:1,5 22:2 23:8,16,17 26:23 31:1,2,16,24 32:2 33:4,24 34:20 36:11

**function** 15:25 35:10 36:3

**functions** 33:4

**fuss** 46:22

**future** 15:22

**G**

**game** 37:2,5,7 38:1

**gears** 19:5

**General** 30:5 36:7,11 37:20 48:19,25 49:6,13

**General's** 25:13 30:19 31:4 35:14 47:9

**give** 3:21 5:1 10:8 14:5 21:24 22:14 23:8 24:19 25:9 30:10 32:19,20 36:23 40:22

**global** 13:2,4

**good** 3:5 17:8 19:23 35:16 40:24

**government** 42:8, 44:16 45:8,20, 25 46:7,16 47:23

**guess** 19:14 45:3

**guidance** 22:15 24:20 25:17 37:10 44:17

**guidelines** 18:15

**H**

**halfway** 28:25

**hand** 23:1 32:9 49:16

**happen** 42:4

**happened** 14:14 31:6,7,8 46:11

**happy** 9:17 12:19 49:25

**head** 44:3

**hear** 8:23 32:21 44:12 46:14

**heard** 33:22

**heart** 18:1

**hinted** 47:21

**holding** 26:23

**Honor** 4:10,11,13,17 5:7, 6:8 7:1, 7,13 8:3,20,25 9:19 10:16 12:25 13:2,22 14:18,20 15:18 17:6 20:9, 11 21:13,17 22:1,16,24 23:21 24:2,15,18 25:3,4,12,18,21 29:2,3, 7,19 32:23 36:1,25 37:11,14,18 38:14 39:18,21 40:7,10,21 42:5 45:4,21 46:14 48:12 49:9 50:4,5

**Honor's** 32:4 33:22 34:19,24 44:17

**hope** 15:19,23

**Hsiung** 31:15

**huge** 7:8,17

**hypothetical** 29:23

**I**

**idea** 11:13

**identifying** 38:21

**imagine** 42:16 45:7

**import** 31:11

**important** 11:3 25:19 35:9 37:17 49:20

**imported** 31:13,22

**impossible** 4:9,11 7:25 43:11 45:5

**improper** 43:23 45:4

**Improvement** 5:24 18:22

**include** 13:12

**included** 17:20 40:14

**including** 9:7 48:6

**indecisive** 28:11

**informal** 7:10

**information** 11:17,18 42:1 47:25

**inhibit** 47:7

**inhibited** 48:1

**initial** 9:7 32:25 33:22 34:19

**initially** 45:17

**injury** 45:1

**inside** 48:21

**instance** 45:24

**intend** 49:3

**interests** 36:18

**interior** 39:4

**interpret** 37:11

**interrogatories** 12:15 18:14 46:21 47:14

**interrogatory** 5:24,25 18:20,24 19:10 28:17 30:4 38:17,19 40:9,12 41:14 43:16 46:15 48:16,18,23

**interrupt** 27:6

**introduce** 21:2

**introduced** 20:25

**investigating** 30:2

**involved** 10:19 11:25 44:12

**involves** 5:23 31:5,7

**issue** 6:1,14,17 7:5 8:6,20 9:11 10:1,5 11:3 17:21 19:17 21:20 22:7,11 23:12,14,18 25:4,18 29:9, 14 36:20 37:22 38:11,18 39:5,16, 24 45:8,13 46:8,19 47:8,11,22 48:3,4 49:11

**issues** 5:2,11 13:3,4,9,25 16:23 17:10 18:12 22:13 23:8,10 33:18, 24 34:16 35:11,14,15,17 36:4,19 37:14, 41:17 43:14 48:6

**issuing** 4:20

**J**

**Jams** 10:13,14

**January** 3:20 7:14 16:8

**job** 13:18

**Judge** 3:2 10:14,15 11:7,21

**judgment** 19:13 21:19,25 24:14 36:5,10,22

**jump** 7:4

**jury** 41:24

**K**

**KARNOW** 3:2

**kind** 29:10,20 30:24 32:11,19 43:2

**knew** 30:22

**L**

**labels** 39:4

**land** 12:23

**law** 19:14,22 25:5 26:7 34:5,6

**lawyer** 41:24

**lawyers** 11:23 47:12

**lay** 12:22 20:25 21:2 24:12

**layed** 26:4

**laying** 37:1

**lead** 33:9,20 41:21

**learn** 28:19 30:5

**learned** 28:20 30:3

**leave** 46:10

**legislature** 43:8,24

**legislature's** 44:24

**legitimately** 34:16

**limine** 23:24

**limitations** 28:6,13,22 30:2 32:4, 16

**lines** 12:9 40:17

**listen** 12:20

**literally** 22:17

**live** 41:13

**lives** 16:10

**long** 3:17 17:4 18:11

**lost** 33:2

**lot** 4:4 16:1 18:8 32:19 37:13

**M**

**made** 31:20 39:4 46:22

**make** 4:22 11:23 13:17 14:22 16:10 17:9 19:12 29:13 36:5 49:21 50:1

**makers** 38:21

**management** 49:12

**mandatory** 10:12,22 11:13

**manufacture** 34:10

**manufacturer** 48:20

**market** 40:1

**material** 22:7,12

**matter** 33:8,14

**means** 11:15 37:13

**mediation** 5:13 10:3,11 11:13

**mediator** 11:19

**meet** 12:2 14:6 21:17 49:18

**memorializing** 48:6

**mention** 3:6

**merits** 19:6

**met** 26:18

**mind** 8:17 10:11 35:9 47:8

**minute** 13:9

**minutes** 49:24

**miserable** 16:10

**mistake** 16:5

**misunderstood** 27:7

**moment** 19:23

**money** 10:21

**monitors** 33:13 48:21

**month** 3:11 14:5 15:14 49:15

**moot** 5:15 23:19

**morning** 3:5 45:15

**motion** 3:7 5:12,14,17,20,22 10:3 12:5,19 13:5,8 14:4,7,16 18:19 19:12,13 21:19 22:2 23:24 33:5

34:2 36:6,10 46:9,21 48:25

**motions** 17:11,14

**move** 36:24 38:16 40:11

**moving** 9:23

### N

**narrow** 35:16 49:7

**narrowed** 48:25

**narrowing** 36:3

**nature** 32:11

**needed** 12:13 21:25 42:10

**needing** 43:1

**negligence** 34:10

**nexus** 34:15

**Ninth** 31:15

**non-issue** 45:17

**normal** 43:22

**notice** 7:10

**November** 14:4

**number** 5:24,25 13:1,9 18:20 22:8,10,11 26:10,12 38:17 40:12 48:16,17

### O

**oath** 32:20

**object** 4:7 46:25

**obligated** 42:21

**obvious** 41:19

**October** 5:21 6:19 9:2,5,15,21 13:15,16 14:17,21,24 15:9,12 24:8 25:16 40:20

**office** 12:18 25:13 30:19 31:4 32:20 41:17,18,22 42:3 46:17 47:7,9,20

**one-shot** 18:10

**open** 39:3 46:11

**opening** 41:6

**opportunity** 4:14

**opposed** 10:11 21:18 37:7

**opposing** 6:15 7:11,13 42:15

**opposition** 36:11

**option** 46:11

**options** 26:4

**order** 4:20 5:15 8:25 10:22 12:6 46:10 48:5

**orders** 13:23

**outstanding** 13:3,18,25

**overcharges** 44:14

**overseas** 31:6,20,21

### P

**pages** 18:11 49:1

**paper** 17:13,14 18:9

**papers** 5:4 12:11 38:25 41:6 48:25

**pare** 35:15

**Parens** 45:1 46:2

**part** 7:9 13:2 17:3 20:19 21:13 24:9 25:14,24,25 26:12 27:9,15 30:20 31:5,17,18 37:8

**parties** 4:22 5:2 10:13,21 11:10 12:1, 14:23 16:21,24 22:15 24:19 41:2,7

**party** 47:1

**path** 42:4

**pay** 10:13,21

**people** 5:17,19 7:17 8:16,24 9:14 11:15 12:24 16:18 18:25 19:18 20:2 28:20 37:25 40:18 43:2,10,25 44:22,25

**People's** 5:12,14 10:3 12:5 19:4, 7,20 26:12 38:25

**perceive** 15:5

**perfectly** 41:19 47:2

**perform** 45:20

**period** 15:13

**person** 11:8,22 41:13

**persons** 42:6 44:20

**pertains** 47:22

**pertinent** 33:6

**phonetic** 24:4 25:20

**picked** 13:15

**picture** 31:20

**pieces** 49:2

**place** 43:9

**plaintiff** 8:23 40:13

**plaintiffs** 4:17 8:23 33:13,16 34:25

**plan** 3:22 9:6 39:14,15,22

**plans** 9:3

**played** 37:7

**playing** 37:3 38:1

**pleadings** 34:17

**plenty** 34:4

**podium** 41:23

**point** 3:17 4:11 7:2,21 12:24 20:16 22:6 23:5 25:4 35:21 42:22 45:3 47:25 49:4,19

**pointed** 5:16 7:1 40:3

**points** 48:13

**posed** 18:23

**posing** 29:3

**position** 11:15 14:8 16:21 19:7 20:16 32:23 34:24 38:6 47:7

**possibility** 42:13,25

**potential** 35:15

**pounds** 17:13

**power** 10:10,22

**practical** 41:16 47:10

**practically** 43:6 46:3

**practices** 42:18

**precisely** 23:10

**preliminarily** 14:9

**prepare** 16:4

**prepared** 17:16

**present** 21:16,21 22:3,25 23:5,9 25:10 37:21

**presented** 8:13

**presenting** 13:21 29:11

**pretty** 30:3

**prevent** 36:9

**price** 31:4,5

**prices** 40:15

**problem** 16:16 20:9 35:20,21 36:2 39:19 43:7 46:15

**problems** 20:20 41:9

**proceedings** 3:1,4 50:7

**produce** 8:24 39:23,25 42:21

**produces** 18:8

**producing** 39:16

**productions** 12:7

**proof** 36:13

**proper** 43:19,21

**propose** 10:6 16:25

**proposed** 13:1

**protective** 5:14 12:6 46:10

**prove** 20:4 34:10 36:7

**proved** 22:6

**provide** 17:25 20:21

**provided** 17:17 35:19

**provision** 31:12

**purchased** 33:14

**purchaser** 45:25

**purposes** 28:16 30:22

**pursuant** 24:4 31:14

**pursue** 18:6 46:12

**pursuit** 24:11

**push** 49:14

**put** 13:11 28:1,2 29:20 31:21 32:11, 33:18 36:20 37:25 44:6,18, 22 45:9 48:20

**putting** 30:22

**Q**

**quality** 32:12

**quarreling** 13:6

**question** 18:23 20:24 21:8 22:18 29:3,18,19 32:13,14 34:5 38:7,15

39:6,17

**questions** 11:9 28:20,25 33:6,10 35:2

**R**

**racing** 14:1

**radar** 6:2

**radically** 19:5

**raise** 49:11

**raised** 34:16 41:5

**random** 44:22

**range** 49:7

**rapidly** 3:9 10:2

**reached** 48:7

**reaching** 41:9

**read** 5:1 17:16 18:2 39:3

**reading** 12:8 26:21 40:17

**real** 8:20

**reason** 9:16 23:10 44:11

**reasonable** 37:24

**reasons** 14:11

**rebut** 23:4 29:17 32:8,17 37:5

**rebuttal** 25:10 28:1 29:19

**rebutting** 23:3 29:21

**receive** 15:2

**recesses** 18:1

**record** 9:20 24:9

**relate** 28:21

**relating** 33:18

**relevance** 34:22

**relevancy** 26:18 27:19

**relevant** 24:5 25:22 33:7 37:19 45:6

**rely** 19:1,8,18,21 20:22 38:20,24 39:7 49:3

**relying** 40:14

**remaining** 6:24

**remember** 6:10

**repeat** 18:13

**rephrase** 29:4

**rephrased** 39:19,21 40:6

**replied** 35:20

**reply** 13:11 25:6,8 36:16 41:7

**report** 5:3 17:16,17 40:4 48:23

**reporter** 21:4,7

**represent** 18:17 42:6,8 43:9, 44:25

**representative** 44:5,13,23

**request** 13:12,13,23 22:17 24:3 25:7 34:23

**requests** 13:1,19 21:23 23:6,13 24:21,25 40:23

**required** 17:19

**requirement** 26:18

**requirements** 18:3

**requires** 39:1

**reserve** 3:22 4:6,13,21,22

**resisted** 46:9

**resolution** 5:6 9:25 13:3,4 35:12 36:19 41:1

**resolve** 4:5 34:2

**resolving** 11:20

**respect** 7:5 8:21 12:3 15:6 46:21 49:11

**respond** 27:4,10 29:8,15 30:9,11 37:12,20 40:18

**responding** 26:22

**response** 15:6 19:5 35:1,19,23 36:4 37:9,22,23 40:2,22 46:16 48:22 49:6,7

**responses** 13:14 14:6,24 15:2,12 17:5,21,23 27:4 29:5 41:14 49:16

**RFAS** 41:15

**rhetorical** 11:9

**rip** 39:3

**road** 46:12 49:20

**roughly** 5:23

**rule** 20:11 23:23 24:19 37:14

**ruled** 21:13,17 22:24

**rules** 17:20 18:4,8 23:22 43:11

---

**S**

---

**sale** 35:4

**Samsung** 5:16 6:20 8:16 12:9 14:3 16:17 17:2 18:23 19:12,13,15 23:6 30:19 32:21 38:3 40:8 43:13 45:12

**Samsung's** 18:19 37:21

**Saras** 24:4 25:20

**satisfy** 18:16

**scenario** 27:14 42:20

**scheduled** 6:9 7:18,22,24

**scheduling** 7:8

**scheme** 43:8, 44:24

**SDI** 8:7 9:12 19:5

**SDI'S** 5:22 12:19

**secured** 5:17

**send** 38:12

**sense** 5:11 13:17 44:2 47:19

**separate** 17:19

**September** 5:19 6:10,22 12:11 13:1 14:2,13

**serve** 36:3 49:14

**served** 14:25 25:7 38:8,10

**serves** 36:17

**set** 3:21,24 4:17 15:15,24 16:18, 21 17:8 36:13,14 37:6 43:8, 44:24

**setting** 11:2 40:20

**settlement** 10:12,22 11:14

**shakes** 25:18

**shares** 40:1

**shifting** 12:10

**shifts** 19:5

**show** 30:25 32:6,9 40:14 44:13 45:1 49:4

**showing** 29:13

**shuffle** 33:3

**side** 7:11 20:18 29:10 44:8

**signed** 46:17 47:13

**simple** 32:15

**sit** 9:8

**situation** 8:7 27:18 41:11 44:5

**situations** 26:16,17 47:11

**slightly** 29:4

**small** 16:2

**smart** 11:5

**so-called** 13:12

**solution** 47:10

**solve** 37:16

**sort** 5:20 10:4 24:13 30:12

**sounds** 11:21 41:7

**speak** 42:22

**speaking** 46:3,6

**specific** 8:22 31:23 35:24 40:22 49:2

**specifically** 8:22

**specifies** 49:7

**spell** 13:20

**spending** 41:22

**spreadsheets** 39:11

**spring** 4:1 16:21 36:10

**squarely** 24:22 36:21

**squeezed** 15:11

**stake** 18:14

**stand** 41:14,25 42:11,17 43:3,4 44:6,23 45:10

**stands** 48:22

**start** 11:16

**starting** 3:18 4:17

**state** 25:5 43:11

**stated** 32:23

**statement** 34:1

**statements** 17:19

**States** 31:14 32:7

**statute** 19:24 26:22 28:6,22 30:1 31:3,10 32:4,16 38:13

**statutes** 28:12

**stay** 5:21 7:2 50:1

**strategy** 32:12

**strictly** 46:6

**structure** 38:19

**stuff** 38:5

**subject** 9:23 33:7,14 48:9

**submit** 46:20

**subpoena** 43:14

**substantial** 31:1,24 32:1,6,10 35:4

**successful** 11:14

**sufficiently** 34:3

**suggest** 39:1

**suggested** 7:14 14:12 35:1

**suggesting** 14:15 46:18 47:10

**suggestion** 12:12

**summary** 16:16 19:13 21:18,25 24:14 36:5,10,22

**summer** 4:2

**Sunday** 13:15

**supplemental** 12:7 49:6,16

**support** 20:25

**suppose** 19:9 38:3,4 44:6

**supposed** 25:21

---

**T**

---

**table** 5:5 36:20 37:2,25

**taking** 15:13 47:7

**talk** 5:18 6:3, 9:17 10:6 11:11 12:3,5 14:8 16:23 17:10 18:21 39:1 40:25 44:16,18

**talking** 4:1 9:22 11:16 30:8 31:19 32:3,16 41:23,24 44:10,20 45:21

**tee** 35:11

**teed** 6:14 22:13 24:1

**tees** 10:5 18:12

**telephone** 49:25

**television** 31:21 46:5

**televisions** 33:13 39:3 48:21

Index: telling..wrong

telling 17:3 46:14

ten 49:23

tend 42:14

tentative 10:8

terms 11:24 13:9 15:5 20:19
21:23 22:15 25:18 30:21 32:1
39:15

testify 41:25 43:14

testimony 20:25 21:2

That'll 4:19

theme 19:2

thing 3:5 30:6,12 40:25

things 3:10 4:5 9:24 15:25 16:2
17:25 28:20 43:23

thinks 41:25 42:3

thought 17:15 44:2 45:18 47:1

thoughts 10:8 33:1

thrust 40:9

THURSDAY 3:1

time 3:15,22,25 4:6,14,21,24 5:18
11:1, 12:12 13:24 15:1 16:9,14
24:25 25:2 36:12,21 40:19 41:6,
11,23 45:13 47:16

timing 29:5 49:12

today 4:21 5:12 6:7,15 9:25 10:7
11:10 27:21,22,25 41:8

today's 28:16

told 12:18 15:13 39:25

tomorrow 9:12

top 17:22 44:3 49:21 50:2

Totally 17:24

town 49:24

tracking 28:5

Trade 5:23 18:22

traditional 16:2

transaction 31:23

transfer 40:15

triable 22:7,11

trial 3:7,9,16,17 11:18 13:21
15:19,21,25 16:3,5,7 29:1 41:11,
20 42:4 43:14 46:25

trial-related 13:19

true 11:7 38:25 47:13,15

trustworthy 42:1

tube 31:20 35:4

tubes 31:13 34:11

turn 12:17 13:13 18:19

turning 12:24

turns 28:10

type 30:14,25

types 21:22

U

U.S. 35:5

ultimately 11:22 27:3

understand 6:23 18:24 41:16
49:2

understanding 12:8 17:1 35:18
40:16

understood 38:15

unforeseen 46:11

United 31:14 32:7

universe 36:6

unreasonable 13:16

useless 17:24

V

vacation 7:17

VARANINI 4:16 5:7 6:8,18 7:7
9:19 10:15 12:25 15:18 20:8 21:6
23:15 24:1,15,18 26:2,14,20 27:1,
8,12,17,22,24 28:14,23 29:2,7,16
30:13 36:25 38:14 39:18 40:6,21
42:5,8 43:17,20 45:3 49:9 50:4

variety 16:2

verification 41:4 43:15 46:9,20

verifications 6:2 41:19 42:1,11
43:10 45:11,19 46:5,12

verified 49:7

verifier 47:12 48:2

verify 20:10

verifying 46:23 47:3

versus 34:23

view 4:11 24:13,16,17,18 43:13,
20,22

viewed 45:17

violate 43:23

W

wait 3:12 14:24 23:2 24:14 37:21

waiting 6:23

waived 20:16

Walker 10:14,15 11:7,21

wanted 7:11,15 46:10 49:11

warranted 14:10

wasting 24:25

ways 31:9 44:18

weaves 33:4

week 3:19

weeks 3:18 49:15

weighing 34:22

wide 16:1

William 17:17

wisely 16:9

withdrawn 18:20

witnesses 44:18

word 19:10 20:6 36:23

words 5:3

work 4:9 15:19 22:14 25:11 35:23
37:14 41:2 49:20

working 6:13

worried 6:3 41:10,20

worry 23:2

worse 3:10

wrapped 15:25

written 12:6

wrong 19:15 39:17

## Y

**year**  3:9 7:16

**years**  30:4 32:15