1  GIBSON, DUNN & CRUTCHER LLP
   JOEL S. SANDERS, SBN 107234
2  jsanders@gibsondunn.com
   RACHEL S. BRASS, SBN 219301
3  rbrass@gibsondunn.com
   AUSTIN SCHWING, SBN 211696
4  aschwing@gibsondunn.com
   555 Mission Street, Suite 3000
5  San Francisco, CA 94105
   Telephone: (415) 393-8200
6  Facsimile: (415) 986-5309

7  Attorneys for Defendant
   CHUNGHWA PICTURE TUBES, LTD.

8  [Additional counsel listed in signature blocks]

9

10                    UNITED STATES DISTRICT COURT

11       NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

12

13

14  In re: Cathode Ray Tube (CRT) ANTITRUST       Master File No. 3:07-md-05944-SC
    LITIGATION
                                                  MDL No. 1917
15
    _____
16  This Document Relates To:
                                                  **DEFENDANTS' OPPOSITION TO DIRECT
17  DIRECT ACTION PLAINTIFF ACTIONS               ACTION PLAINTIFFS' RENEWED
                                                  MOTION TO COMPEL DEFENDANTS TO
18                                                PRODUCE THE EUROPEAN
                                                  COMMISSION DECISION**

19                                                Date: October 24, 2014

20                                                Time: 9:00 a.m.

21                                                Place: Courtroom 1, 17th Floor

22                                                Hon. Samuel Conti

23

24

25

26

27

28

**INTRODUCTION**

This Court has previously denied Plaintiffs' request for the exact document they now seek and there is no reason to change that ruling. On March 26, 2014, the Court denied Plaintiffs' motion to compel production of the confidential European Commission ("EC") decision relating to the EC's investigations regarding color display tubes ("CDT") and color picture tubes ("CPT") (collectively, cathode ray tubes) (the "Prior Order"). While Plaintiffs have filed a renewed motion seeking the decision, they provide no reason for the Court to depart from its prior ruling.

Plaintiffs make their renewed request *solely* on the basis that the EC has not yet published a public version of the decision—a possibility that the Court already took into account in its Prior Order. Plaintiffs mistakenly latch on to statements this Court made "encourag[ing]" Defendants to assist the EC in its finalization of a public decision and in so doing, misapprehend the clearly-articulated basis for the Court's ruling. Order at 8. Plaintiffs suggest that the Court somehow conditioned or premised its Prior Order on a public decision becoming available before the close of fact discovery. *Id.* at 6. That is wrong. Rather, the Court based its decision on the EC's stated interest in confidentiality as necessary to the effective operation of its leniency program, holding that international comity "outweighs the benefit the DAPs might receive in obtaining the Decision." *Id.* at 8.

International comity concerns still mandate against disclosure. Defendants understand that the EC is diligently working towards finalizing a public decision, and that the EC continues to oppose disclosure of the confidential decision because it would harm the European Union's ("EU") competition law enforcement regimes and policy interests. Brass Decl. ¶ 4; ECF Dkt. 2449, Ex. D (February 11, 2014 letter from EC opposing disclosure). Comity is more than "mere courtesy and good will," and courts should "take care to demonstrate due respect for . . . any sovereign interest expressed by a foreign state." *Société Nat'l Industrielle Aérospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 544 n.27, 546 (1987). "Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971). There is no such basis here.

1

Plaintiffs provide no evidence beyond their speculation (Mot. at 1) that Defendants are not complying with the Court's order and working with the EC towards a final decision. On the contrary, Defendants have heeded the Court's instruction to assist the EC in its task; they have also kept the EC informed of these proceedings and deadlines as this Court suggested. Brass Decl. ¶¶ 3, 6. It is not unreasonable that the EC requires time to finalize a public decision. The EC decision stems from a multilayered regulatory regime with extensive policies and detailed checks and balances governing the process for release of public decisions. That Defendants have no control over the EC's process, and the fact that the U.S. litigation is moving along a different timeline than that process provides no basis to override the EC's stated interests.

Defendants understand that the EC intends to deliver imminently a formal statement of its views on this issue to the Department of Justice. *Id.* ¶ 5. This statement is expected to be provided to the Court in the coming days. *Id.* Defendants respectfully request that the Court defer a ruling until the EC has had time to deliver that statement, and to seek further briefing from the parties in reference to it, if that is of help to the Court.

For the reasons set forth in this opposition and those stated in the Prior Order, Plaintiffs' motion to compel should be denied.

## **BACKGROUND**

On January 31, 2014, Plaintiffs filed their first motion to compel production of the confidential decision. ECF Dkt. 2447. Defendants opposed the motion on the grounds that requiring production would violate well-established principles of international comity, and place Defendants in the untenable position of acting contrary to express instructions of the EC in order to comply with an order of this Court. ECF Dkt. 2449. In its opposition, Defendants further explained that the EC was in the process of preparing the public version, and that Plaintiffs would have access to that version once the EC completed that process. *Id.*

In a letter dated February 11, 2014 submitted by Defendants to the Court, Eric van Ginderachter, Director of the EC's Directorate General for Competition, expressly objected to disclosure of the decision, including to Plaintiffs. ECF Dkt. 2449, Ex. D. Disclosure would

undermine the EC's competition law enforcement, and in particular, its leniency program. *Id.* The EC also reiterated that it would strongly object to the disclosure of the confidential decision. *Id.*

On March 26, 2014, the Court declined to require disclosure of the decision based on the EC's stated interest in confidentiality and principles of international comity. The Court held that the EC's interest "outweighs the benefit the DAPs might receive in obtaining the Decision." Order at 8; *see also id.* at 6 ("the EU's interests override the need for production in this case"). The Court did not condition its decision on the availability of a public version, but did "encourage[] [Defendants] to proceed apace with their collaboration in the EC's public version of the Decision." *Id.* at 6.[1]

Defendants immediately provided a copy of this Court's order to the EC and also provided the EC with the discovery and trial deadlines in this case. Brass Decl. ¶ 3. Since then each of the Defendants named in the EC decision has engaged with the EC regarding confidentiality and other issues that are prerequisites to finalizing a public decision. *Id.* ¶ 6. In addition, there are recipients of the decision who are not Defendants in this case, and the EC is also working with those companies on these same issues. *Id.* Finally, the EC maintains the position that any disclosure of the confidential decision would contravene the EC's rules and stated policy on this issue. *Id.* ¶ 4. In other words, by producing a copy of the EC's decision, the Defendants named in that decision would directly contravene the EC's position.

Defendants have kept Plaintiffs informed of their efforts to assist the EC and the status of the public decision, but are understandably unable to provide a date certain for publishing of the public decision. *See* Mot., Exs. 2 & 18. While those efforts are by EC requirements themselves confidential, it is generally understood that many of the entities named by the EC in its decision have resolved those issues, and the EC is working with others in good faith towards a similar end. Brass Decl. ¶ 6. However, finalization of the decision is, simply put, a matter outside of Defendants' control.

---

[1]  The Court did not, as Plaintiffs state in their motion, "admonish[] Defendants" to assist the EC in finalizing a public decision. Mot. at 7; *see* Order at 8 ("[Defendants] are *advised* to assist in that task.") (emphasis added).

# ARGUMENT

## I.    The Court Should Deny Plaintiffs' Request For The Confidential Decision

That the EC is still finalizing its public decision does not change the fact that principles of international comity strongly outweigh Plaintiffs' need for a document that is irrelevant, inadmissible, and cumulative to the evidence otherwise developed through discovery.

In the Prior Order, this Court applied the five-factor test set forth in *Aérospatiale* for analyzing requests for foreign materials:

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Aérospatiale*, 482 U.S. at 544 n.28.  Balancing these factors, the court held that "comity outweighs discovery" of the decision.  Order at 7.  The Court should reach the same result again here.[2]

### A.    The Decision Is Not Important To The Litigation

Plaintiffs overstate the Court's earlier findings regarding this factor.  In the Prior Order, the Court found that this factor weighed in favor of disclosure because the decision "could include relevant facts."  *Id.* at 5.  Contrary to Plaintiffs' motion, the Court did not find that the decision "was important to the litigation because of its spot-on relevance," nor did the Court "recogniz[e] that the conspiracy at issue in the Decision was the same conspiracy alleged in this action."  Mot. at 2, 5.  Those statements contradict even those portions of the EC's Summary of Decision quoted in Plaintiffs' motion.  *See id.* at 3-4.

No matter how many times plaintiffs italicize the word "same" in their filings with this Court, publicly available information confirms that the EC's decision and this case do not involve the "same conspiracy."  The EC investigation and decision relate to EU—not U.S.—law.  *See* Mot., Ex. 4, ¶ 1 (Summary of Decision).  As this Court acknowledged, "[a]pplicable law would clearly be different in

---

[2]  Defendants do not dispute the specificity of the request or that alternative means of accessing the decision are not presently available.

a foreign jurisdiction." Order at 5. And while plaintiffs here expressly plead a single cathode ray tube conspiracy affecting all kinds of tubes, the EC's Summary of Decision states that the EC investigation related to distinct CDT and CPT conduct. Mot. at 3 ("[A]ccording to the summary, . . . Defendants participated in long-running cathode display tube and cathode picture tube cartels . . . ."); *compare*, *e.g.*, Best Buy First Am. Compl. ¶¶ 2, 242 *with* Mot., Ex. 4, ¶¶ 1, 3. And, the Summary of Decision emphasizes that the EC focused on conduct that allegedly had anticompetitive effects on the sale of CPTs and CDTs in Europe, not the U.S. *See* Mot., Ex. 4, ¶¶ 17-18; *In re Dynamic Random Access Memory Antitrust Litig.*, 546 F.3d 981 (9th Cir. 2008) (plaintiffs' foreign injury claim based on overseas purchases was barred by the FTAIA); *Motorola Mobility, Inc. v. AU Optronics Corp.*, No. 09-c-6610, Dkt. No. 182 (N.D. Ill. Jan. 23, 2014) (same).

Defendants respectfully submit that even if the decision might contain some facts that overlap with those related to the Plaintiffs' claims, there is no reason to believe that over four years of discovery in this case has not brought them out here. Plaintiffs do not explain why they cannot obtain the facts underlying the decision through already produced documents or depositions. The possibility that the decision will reveal any relevant information beyond the extensive discovery conducted and contemplated in this case is slim and "pales in comparison to the likely damage that mandating disclosure could do to the enforcement regime[] of . . . Europe." *In re TFT-LCD Antitrust Litig.*, 07-md-1827-SI, ECF Dkt. 2686, slip op. at 11(N.D. Cal. Apr. 26, 2011).

Indeed, since the Prior Order, Plaintiffs have received more documents and taken more depositions. Brass Decl. ¶ 8. In total, Defendants and alleged co-conspirators have collectively produced well over 5 million pages of documents created contemporaneously to the alleged conspiracy. *Id.* ¶ 9. Plaintiffs have taken 154 days of deposition testimony from 80 fact witnesses, utilizing, to date, over 1,500 exhibits. *Id.* ¶ 10. The depositions of 10 additional percipient witnesses have been noticed or are in the process of being scheduled. *Id.* ¶ 11. In addition, Plaintiffs have access to a wide variety of materials from other foreign government entities. For example, Plaintiffs already possess or have access to the public, final decisions of the Korea Fair Trade Commission, Anti-Monopoly Office of the Slovak Republic, Hungarian Competition Authority, and Office for the Protection of Competition of the Czech Republic in connection with their CPT and CDT

5

investigations.[3]  As with the EC decision, these decisions are not important to the litigation and do not involve the "same conspiracy" as this case; in any event, Plaintiffs have access to them and any mention of any facts which may overlap with those related to their claims.

Where the outcome of litigation "does not stand or fall on the present discovery order, or where the evidence sought is cumulative of existing evidence," or not "directly relevant," courts are generally unwilling to require disclosure in the face of comity objections.  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992); *see also In re Rubber Chems. Antitrust Litig.*, 486 F. Supp. 2d 1078, 1082 (N.D. Cal. 2007) (where documents are noncritical or cumulative, "courts are less inclined to ignore a foreign state's concerns").  The decision is not important to this litigation and weighs against production here.

**B.      The Decision Originated In The EU**

As the Court held in its Prior Order, this factor weighs against disclosure.  Plaintiffs do not dispute that the decision was prepared by the EC and originated in the EU, not the U.S.  Order at 5.  Further, Defendants have not released the decision in other litigation, and have continually complied with the EC's view of their obligations with respect to confidentiality.  *Id.*; Brass Decl. ¶ 7.

**C.      Requiring Disclosure Of The Confidential Decision Would Harm Important Interests Of The EU**

As the Court held in its Prior Order, this factor weighs against disclosure because the EC's interest "outweighs the benefit the DAPs might receive in obtaining the Decision."  Order at 8.  This balance of the relative interests of the EU and U.S. is the most significant factor in determining whether to require disclosure of foreign materials.  *Richmark*, 959 F.2d at 1476.  There is no change in circumstances that justifies the Court revisiting its prior determination on this dispositive factor.

In the Prior Order, the Court found that "comity outweighs discovery" for several reasons.  European law prohibits the EC from "disclosing information acquired or exchanged pursuant to the EU's competition laws" and "also potentially subjects parties who disclose such confidential

---

[3]  The EC decision is also unlikely to be admissible at trial because it is irrelevant, unduly prejudicial, confusing, misleading, and hearsay, Fed. R. Evid. 401, 402, 403 & 801, making discovery here even less pressing.

1  information to official sanctions."  Order at 7 (citing EU law).  Also, the EC submitted a letter

2  opposing the disclosure of the decision because it would undermine the EC's competition law

3  enforcement, and in particular, its leniency program.  *Id.* at 7-8.  The Court further found that the EC

4  depends on cooperation from U.S. law enforcement agencies, including the Department of Justice, in

5  its enforcement work against cartels, and that the cooperation of the U.S. and EU agencies is an

6  aspect of comity.  *Id.* at 8 (citing *In re Rubber Chems.*, 486 F. Supp. 2d at 1084).  Conversely,

7  cooperation with an effective EC is important for the continued success of the U.S. enforcement

8  regime.

9      Plaintiffs' renewed motion does not dispute any of these conclusions.  Plaintiffs cannot deny

10  that the EC has a strong interest in confidentiality.  *Richmark*, 959 F.2d at 1476 (the Court should

11  consider "expressions of interest by the foreign state" and "indications of the foreign state's concern

12  for confidentiality prior to the controversy").[4]  Nor can Plaintiffs dispute that production of the

13  decision would violate EU law—they simply argue that it is okay to violate laws where it is the

14  Plaintiffs that are inconvenienced by them.  This, at end, is Plaintiffs' only argument for why comity

15  no longer outweighs the need for discovery.  Mot. at 6.  That the EC has not yet published a public

16  decision despite awareness of these proceedings is not good reason to disregard the EC's multifaceted

17  and well-considered interest in confidentiality, and indeed is disingenuous, as the EC is actively

18  working to secure publication as soon as possible.

---

21  [4]  The EC has long made clear that the promise of confidentiality is at the core of its leniency
22  program and critical to its viability and success.  As the EC explained to the Antitrust
Modernization Commission, parties "which voluntarily cooperate with the Commission in
revealing cartels cannot be put in a worse position in respect of civil claims than other cartel
23  members which refuse cooperation."  ECF Dkt. 2449, Ex. E; *see also id.*, Ex. F (Commission
Staff Working Paper accompanying the Communication from the Commission to the European
24  Parliament and Council in 2009).  In addition, the Court of Justice has also acknowledged the
existence of a general presumption that the disclosure of confidential documents undermines both
25  the objectives of investigation activities and that of the commercial interests of the undertakings
involved in those proceedings.  *See EC v. EnBW Energie Baden-Württemberg AG*, Case C-365/12
26  P (Feb. 27, 2014), ¶¶ 65-69 (ECF Dkt. 2449, Ex. G); *EC v. Editions Odile Jacob SAS*, Case C-
404/10 (June 28, 2012), ¶ 123 (ECF Dkt. 2449, Ex. H); *EC v. Technische Glaswerke Ilmenau*
27  *GmbH*, Case C-139/07 (June 29, 2010), ¶ 61 (ECF Dkt. 2449, Ex. I).  Plaintiffs' motion offered
no case law in support of their arguments.  If Plaintiffs raise new authority in a reply brief,
28  Defendants should be allowed to submit a sur-reply.

Courts undertaking a comity analysis have consistently found the EU's confidentiality interest outweighed the need for discovery.  *See In re TFT-LCD Antitrust Litig.*, 07-md-1827-SI, ECF Dkt. No. 2686, slip op. at 11 (N.D. Cal. Apr. 26, 2011) (denying motion to compel communications submitted to or received from the EC); *In re Rubber Chems.*, 486 F. Supp. 2d at 1084 (denying motion to compel production of communications with the EC); *In re Methionine Antitrust Litig.*, MDL No. 00-1311 CRB (JCS) (N.D. Cal. July 29, 2002) (adopting Special Master's report denying motion to compel unredacted written submissions made to the EC) (ECF Dkt. 2449, Exs. A & B); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, 06-md-1775-JG-VVP (E.D.N.Y. Dec. 19, 2011), Dkt. No. 1625 (denying motion to compel confidential EC decision) (ECF Dkt. 2449, Ex. C); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-MD-1720, 2010 WL 3420517, at *10 (E.D.N.Y. Aug. 27, 2010) (denying motion to compel EC's Statement of Objections and oral hearing recording).  There is no reason for a different result here.[5]

Ordering disclosure of the EC's confidential decision would compel Defendants to violate EU directives and directly undermine the EC's enforcement practice.  Given that the EC has confirmed that it is still in the process of preparing a public decision, there is simply no reason to disregard its concerns set out in its letter.  Brass Decl. ¶ 4.

## II.     The Procedure Adopted by the Delaware Court In *Vichi* Is Inappropriate In This Case

The Court should deny Plaintiffs' request in the alternative for the Court to make a request for international assistance to the EC for the decision, as the court did in *Vichi v. Koninklijke Philips Electronics, N.V.*, 85 A.3d 725 (Del. Ch. 2014).  Mot. at 3, 8.  The EC has already sent a letter to Defendants in this case expressly opposing disclosure of its confidential decision, including to Plaintiffs.  Thus, it is highly unlikely that the EC would agree to the request.  In addition, in stark contrast to the current case, the EC decision and EU law were directly relevant to U.S. liability issues in the Delaware litigation.  Specifically, at issue in *Vichi* was whether the EC decision had a collateral

---

[5]   The Court of Justice of the EU has itself endorsed the position of the EC with regard to EU Member States.  In *Kingdom of The Netherlands v. EC*, Case T-380/08 (Sept. 13, 2013), ¶ 42, the court rejected a request by The Netherlands (in its role as a damages claimant) for access to the confidential EC *Bitumen* decision, finding that the Netherlands's interest in information to understand the EC's rationale did not outweigh the EC's confidentiality interest.

estoppel effect under EU law with respect to plaintiff's claim of fraud, rendering the production of the decision to the U.S. court appropriate and necessary. *Vichi*, 85 A.3d at 778-84. Further, the EC only authorized the *Vichi* parties to produce to the court a narrowly redacted portion of the specific section of the EC decision that was directly relevant to the collateral estoppel issue; it did not authorize production of the decision in its entirety. Thus, there is no reason the Court should adopt the approach in *Vichi*.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' request for the confidential EC decision.

Dated: September 26, 2014

By:    */s/ Rachel S. Brass*

Rachel S. Brass (SBN 219301)
Joel S. Sanders (SBN 107234)
Austin V. Schwing (SBN 211696)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306
jsanders@gibsondunn.com
rbrass@gibsondunn.com
aschwing @gibsondunn.com

*Attorneys for Defendant Chunghwa Picture Tubes, Ltd.*

DATED: September 26, 2014

By:    */s/ Hojoon Hwang*

Hojoon Hwang (SBN 184950)
William D. Temko (SBN 98858)
Laura K. Lin (SBN 281542)
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
hojoon.hwang@mto.com
william.temko@mto.com

9

1

laura.lin@mto.com

2

*Attorneys for Defendant LG Electronics, Inc. and LG
Electronics U.S.A., Inc.*

3

4

DATED: September 26, 2014

5

By:   */s/ Michael Scarborough*

6

Gary L. Halling (SBN 66087)
James L. McGinnis (SBN 95788)

7

Michael Scarborough (SBN 203524)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

8

Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109

9

Telephone: (415) 434-9100
Facsimile: (415) 434-3947

10

ghalling@sheppardmullin.com
jmcginnis@sheppardmullin.com

11

mscarborough@sheppardmullin.com

12

*Attorneys for Defendants Samsung SDI Co., Ltd.,
Samsung SDI America, Inc., Samsung SDI (Malaysia)*

13

*Sdn. Bhd., Samsung SDI Mexico S.A. de C.V., Samsung
SDI Brasil Ltda., Shenzhen Samsung SDI Co., Ltd., and*

14

*Tianjin Samsung SDI Co., Ltd.*

15

Dated:  September 26, 2014

16

By:   */s/ Dana E. Foster*

17

Christopher M. Curran (*pro hac vice*)
Lucius B. Lau (*pro hac vice*)

18

Dana E. Foster (*pro hac vice*)
WHITE & CASE LLP

19

701 Thirteenth Street, N.W.
Washington, DC  20005

20

tel.: (202) 626-3600
fax: (202) 639-9355

21

ccurran@whitecase.com
alau@whitecase.com

22

defoster@whitecase.com

23

*Counsel to Defendant Toshiba Corporation, Toshiba*

24

*America, Inc., Toshiba America Electronic Components,
Inc., Toshiba America Information Systems, Inc.,*

25

*Toshiba America Consumer Products, L.L.C.*

26

Dated:  September 26, 2014

27

By:   */s/ John M. Taladay*

28

John M. Taladay
Joseph Ostoyich

10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Erik Koons
Charles M. Malaise
BAKER BOTTS L.L.P.
Washington, D.C. 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
Email: john.taladay@bakerbotts.com
joseph.ostoyich@bakerbotts.com
erik.koons@bakerbotts.com
charles.malaise@bakerbotts.com

*Attorneys For Defendants Koninklijke Philips N.V. and Philips Electronics North America Corporation*

Dated:  September 26, 2014

By:   */s/ Jeffrey L. Kessler*

Jeffrey L. Kessler (*pro hac vice*)
A. Paul Victor (*pro hac vice*)
Aldo A. Badini (257086)
Eva W. Cole (*pro hac vice*)
Molly M. Donovan (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Email: jkessler@winston.com
pvictor@winston.com
abadini@winston.com
ewcole@winston.com
mmdonovan@winston.com

STEVEN A. REISS (*pro hac vice*)
DAVID L. YOHAI (*pro hac vice*)
ADAM C. HEMLOCK (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: steven.reiss@weil.com
david.yohai@weil.com
adam.hemlock@weil.com

BAMBO OBARO (267683)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
Email: bambo.obaro@weil.com

*Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and*

11

*Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)*

## SIGNATURE ATTESTATION

The filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.

101680950.7.DOC