Kenneth S. Marks
Jonathan J. Ross
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile:  (713) 654-6666
kmarks@susmangodfrey.com
jross@susmangodfrey.com

*Attorneys for plaintiff Alfred H. Siegel, solely
in his capacity as Trustee of the Circuit City
Stores, Inc. Liquidating Trust*
[additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 07-5944 SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| ALL INDIRECT PURCHASER ACTIONS | |
| *Siegel v. Hitachi, Ltd.*, No. 11-cv-05502; | **INDIRECT PURCHASER PLAINTIFFS' AND DIRECT ACTION PLAINTIFFS' MOTION FOR SEPARATE TRIALS** |
| *Target Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514; | |
| *Sears, Roebuck and Co., & Kmart Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514-SC; | The Honorable Samuel Conti |
| *Sharp Elecs. Corp. v. Hitachi, Ltd.*, No. 13-cv-01173;| |
| *Sharp Elecs. Corp. v. Koninklijke Philips Elecs. N.V.*, No. 13-cv-02776 | |
| *Siegel v. Technicolor SA, et al.*, No. 13-cv-05261; | |
| *Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA*, No. 3:13-cv-05262; | |
| *Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686; | |
| *Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 14-cv-02510 | |

i

3342678v1/012325

# TABLE OF CONTENTS

I.      SUMMARY ..................................................................................................... 1

II.     THE PARTIES TO AND STATUS OF THE IPP AND DAP CASES ............................ 3

III.    THE COURT CAN CONDUCT SEPARATE TRIALS. .................................................. 5

IV.     SEPARATE TRIALS WILL AVOID PREJUDICE TO THE DAPS AND IPPS ................................................................................................................ 5

V.      SEPARATE TRIALS WILL MINIMIZE JURY CONFUSION. ....................................... 6

VI.     SEPARATE TRIALS ARE NOT LIKELY TO CONSUME MORE JUDICIAL RESOURCES. ....................................................................... 7

VII.    SEPARATE TRIALS DO NOT LEAD TO DUPLICATIVE RECOVERY ...................... 8

        A.      There is no duplicative recovery issue between Sherman Act direct action plaintiffs and state law indirect purchaser plaintiffs. .................................. 8

        B.      If any allocation of damages is eventually required, it can and should be addressed by the Court through post-trial proceedings. ........................................ 10

VIII.   A BIFURCATED TRIAL WILL NOT ALLEVIATE THE POTENTIAL PREJUDICE TO THE DAPS AND IPPS AND WILL RESULT IN PROBLEMS OF ITS OWN. ........................................................................... 11

        A.      Bifurcation Does Not Eliminate Potential Prejudice to the DAPs and IPPs. ........................................................................................................ 12

        B.      Bifurcation Raises Issues of Duplication and Inefficiency. .................................. 14

IX.     THE RECENT CASE FILED BY THE DPPS IS ON AN ENTIRELY DIFFERENT SCHEDULE. ........................................................................... 14

X.      THE COURT SHOULD SCHEDULE SEPARATE TRIALS FOR THE DAPS AND IPPS. ........................................................................................................ 15

3342678v1/012325

# TABLE OF AUTHORITIES

## Cases

*Blanton v. Mobil Oil Corp.*,
   721 F.2d 1207 (9th Cir. 1983) ............................................................................. 12, 15

*California v. ARC America*,
   490 U.S. 93 (1989) .................................................................................................. 6, 9

*Christofferson Dairy v. MMM Sales*,
   849 F.2d 1168 (9th Cir. 1988) ................................................................................... 12

*Daka, Inc. v. McCrae*,
   839 A.2d 682 (D.C. 2003) ......................................................................................... 11

*Eccleston v. New York City Health & Hosps. Corp.*,
   698 N.Y.S.2d 869 (1999) ........................................................................................... 11

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
   392 U.S. 481 (1968) ............................................................................................ 1, 8, 9

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) .................................................................................................... 9

*Louis DeGidio Oil & Gas Burner Sales & Service, Inc. v. Ace Eng'g Co., Inc.*,
   302 Minn. 19 (1974) ................................................................................................. 11

*M2 Software, Inc. v. Madacy Entm't*,
   421 F.3d 1073 (9th Cir. 2005) ..................................................................................... 5

*Mattel, Inc. v. MGA Entm't, Inc., Case No. CV 04-9049 DOC (RNBx)*,
   2011 U.S. Dist. LEXIS 85928 (C.D. Cal. Aug. 4, 2011) ......................................... 11

*MCI Communications Corp. v. AT&T Co.*,
   708 F.2d 1081 (7th Cir. 1983) ................................................................................... 12

*Miller v. Fairchild Indus.*,
   885 F.2d 498 (9th Cir. 1989) ..................................................................................... 12

*Morgan v. New York Life Ins. Co.*,
   559 F.3d 425 (6th Cir. 2009) ..................................................................................... 10

*Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*,
   532 F.3d 1063 (10th Cir. 2008) ................................................................................. 11

*Response of Carolina, Inc. v. Leasco Response, Inc.*,
   537 F.2d 1307 (5th Cir. 1976) ................................................................................... 11

*Simon v. San Paolo U.S. Holding Co., Inc.*,
   35 Cal. 4th 1159 (2005) ............................................................................................ 11

*Union Carbide Corp. v. Superior Court*,
   36 Cal. 3d 15 (1984) ................................................................................................. 10

*Windham v. American Brands, Inc.*,
    565 F.2d 59 (4th Cir. 1977) ......................................................................................... 11

## Statutes

735 Ill. Comp. Stat 5/2-1207 ............................................................................................ 10

## Rules

Fed. R. Civ. P. 42(b) ........................................................................................................... 5

iv

3342678v1/012325

The Indirect Purchaser Plaintiff Class ("IPPs") and the undersigned Direct Action Plaintiffs ("DAPs") whose cases were filed in and will be tried in this Court move for separate trials of their respective cases as follows:  the DAPs will try their cases together beginning on March 9, 2015, the date set for trial in the current Scheduling Order.  [Docket Nos. 1991, 2459, 2554][1]  The IPP case will be set for trial on a later date selected by the Court and the parties to that case.  The issues required to be tried in the IPP case will be substantially narrowed if the DAPs prevail on their claims.  Regardless of the outcome, the DAP trial result is likely to promote settlement of the IPP case.  This is the parties' first opportunity to address with the Court the structure for trial of these cases.

## I.    SUMMARY

Separate trials of the DAP and IPP cases is the only way to be certain that the DAPs and IPPs receive a fair trial free of prejudicial influence.  For the DAPs, having a consolidated trial with the IPPs (the downstream customers of most DAPs) injects the issue of defensive pass-through, which the Supreme Court prohibited in Sherman Act cases in *Hanover Shoe, Inc. v. United Shoe Mach. Corp.,* 392 U.S. 481, 491-94 (1968).   Even if a joint trial is limited to issues not including damages and/or includes limiting instructions to the jury, the presence of the downstream purchasers represented by the IPPs may infect the trial with defensive pass-through and distort the verdict for the DAPs.

Separate trials also is the only way to ensure that the IPPs receive a fair trial on their state antitrust and consumer protection claims, where pass-through of the conspiratorial overcharges to them must be established.  A jury awarding damages to the upstream DAPs may account for that

---

[1]   The DAPs who make this motion are: (1) Viewsonic Corporation, (2) Alfred H. Siegel, as the Trustee of the Circuit City Stores, Inc. Liquidating Trust, (3) Kmart Corporation, (4) Sears, Roebuck & Co., (5) Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc., and (6) Target Corporation.  A seventh direct action plaintiff whose case was filed in this Court, Best Buy Co., is filing separately a joinder to this Motion.

1

award and correspondingly decrease the damages to the downstream IPPs, which would improperly deprive the IPPs of the full measure of their recovery.[2]

Separate trials of the DAP and IPP cases also limits the potential for jury confusion in a case as complex as this and relieves the Court of the burden of managing a massive, lengthy, and needlessly complicated single trial.  A trial of just the DAP cases admittedly will be complex. There may be as many as seven plaintiffs and as many as nine groups of defendants, each with its own counsel.  There will be competing expert economists and econometric models.  Each defendant group will argue its own perspective on the scope and effect of the CRT conspiracy and its role in the CRT market and the conspiracy.   In addition, defendants have made clear their intention to distract the jury in the DAP trial by arguing that the DAPs had varying degrees of buying power, which supposedly mitigated the impact of defendants' price-fixing scheme on the DAPs.  While this argument and evidence should not be admissible, to the extent the Court allows it a DAP trial is further complicated.

Trying the IPPs' state-law claims in the same trial with the DAPs' Sherman Act claims magnifies this complexity and the potential for jury confusion and introduces ground for appellate reversal.  In addition to the DAPs' claims under the Sherman Act, the jury would have to consider the IPPs' claims under state antitrust and consumer protection laws of twenty-one states.  In a single, consolidated trial, the jury confusion resulting from pass-through of the conspiratorial overcharges would be insurmountable – pass-through cannot be considered in the DAPs federal claims but must be established for the IPPs to prevail on their state claims.  Even in a joint but bifurcated trial, a single jury inevitably may be confused by first awarding damages to the DAPs and then considering damages suffered by the downstream IPPs.

---

[2]   Separate trials of the IPP and DAP cases does not create an issue of "duplicative recovery."  As explained in the text, the Supreme Court has made clear that state law does not "duplicate" federal law; rather, it provides remedies in addition to those available under the Sherman Act.  And, to the extent there is even a possibility of an issue of duplicative recovery, which is entirely speculative at this point, it can and should be dealt with post-trial by the Court.

2

Separate trials of the DAP and IPP cases will not impair, and may well promote, judicial efficiency.  A trial outcome favorable to the DAPs will be dispositive of many of the issues in the IPP case, thus reducing materially the amount of time needed for an IPP trial.  And, regardless of the outcome of the DAP trial, obtaining a jury verdict on liability and quantum of the price-fixing overcharge on CRTs and CRT products purchased by the DAPs is very likely to encourage settlement of the IPP case.

Fundamentally, for both the DAPs and IPPs, separate trials is the only way to have their respective claims adjudicated free of prejudice and minimize potential jury confusion.  For the DAPs with cases in this Court, a trial separate from the IPPs provides the same trial integrity available to those DAPs whose cases will be remanded for trial to their transferor courts, such as Costco and Dell.  The remanded DAPs will not have their trials adversely influenced or complicated by the presence (or any mention) of the downstream IPPs.  The outcome for those DAPs who will try their cases in this Court should be equally untainted.

## II.   THE PARTIES TO AND STATUS OF THE IPP AND DAP CASES

The IPPs are twenty-two certified classes of persons who purchased CRT products indirectly from defendants for their own use and not for resale.  [Master Docket Nos. 1742, 1950 (all docket references are to the Master Docket)]  Essentially, the IPPs are individual consumers and small businesses who bought CRT TVs and monitors.  The IPPs assert claims for damages under twenty-two state antitrust laws, eight state consumer protection statutes, and for unjust enrichment and disgorgement of profits.  [IPPs' Fourth Consolidated Amended Complaint, Docket No. 1526]  The IPPs assert these claims against five defendant groups:  Philips, Samsung, Toshiba, Panasonic, and Hitachi.[3]

---

[3]  The IPPs settled with Chunghwa and LG.  These settlements were given final approved by the Court on March 22, 2012 [Docket No. 1105] and April 18, 2014 [Docket No. 2542], respectively.  The IPPs also named as defendants other entities, such as IRICO and Thai CRT, which are defunct or otherwise have not appeared.

3

The direct action plaintiffs with cases filed and to be tried in this Court are:  Best Buy, the Circuit City Liquidating Trust, Kmart, Sears, Sharp Electronics, Target, and Viewsonic.  The DAPs are (or were) well-known retailers, a CRT TV manufacturer (Sharp), and another CRT product manufacturer (Viewsonic.)  If separate trials are held as proposed in this Motion, the DAPs will present at trial claims only under Section One of the Sherman Act.[4]  With some slight variation among them, the group of DAPs has claims against nine defendant groups:  Philips, Samsung, Toshiba, Panasonic, Hitachi, LG, Chunghwa, Thomson, and Mitsubishi.[5]

The IPP and DAP cases are proceeding under a common Scheduling Order.  [Docket Nos. 1991, 2459, 2554][6]  That Scheduling Order sets March 9, 2015 as the date for "Trial(s)." [Docket No. 2459]

On September 13, 2013, the Court held a status conference with all parties in all *CRT* cases, including the Direct Purchaser Plaintiff Class ("DPPs"), which at that time had settled its claims against all defendants except Samsung.  Following that status conference, the Court entered an order giving the DPPs a pretrial schedule with expedited deadlines for expert reports, dispositive motions, and mediation [Docket No. 2096].[7]  The Court also entered a separate stipulated order placing the IPPs and DAPs under a common scheduling order [Docket No.

---

[4]  The DAPs originally filed claims under various state statutes and common law. Certain of those claims were dismissed by the Court on Defendants' Motion to Dismiss [Docket No. 1856].  In the interests of efficiency and streamlining a separate DAP trial, should the Court hold separate trials as proposed in this Motion, the DAPs will dismiss the remainder of their state law claims.  As a result, the undersigned DAPs contemplate that the first trial will involve only claims under federal antitrust law.

[5]  Several of the DAPs have settled with Chunghwa but others have not.  The DAPs also named as defendants other entities, such as IRICO and Thia CRT, which have not appeared.

[6]  The Scheduling Order provides that other DAP cases not filed in this Court but transferred by the MDL Panel to this Court for pretrial proceedings "will be returned to the courts in which they were originally filed" after "the Court's rulings on dispositive motions and Daubert motions."  [Docket No. 2459 at 4, n*]  Thus, the cases brought by Costco, Dell, Electrograph, Office Depot, TechData and other DAPs will be returned to their respective transferor courts for trial.

[7]  The DPPs subsequently settled with Samsung, and that settlement was given preliminary approval by the Court on April 14, 2014.  [Docket No. 2534]  On August 22, 2014, a hearing was held on final approval of the DPP-Samsung settlement.

INDIRECT PURCHASER PLAINTIFFS' AND DIRECT
ACTION PLAINTIFFS' MOTION FOR SEPARATE TRIALS
MDL No. 1917

3342678v1/012325

1991].[8]   Although the order on the DPPs' schedule states that "all proceedings will be consolidated for trial," [Docket No. 2096 at 2], at the status conference neither the Court nor the parties discussed how best to conduct fair and manageable trials because the focus at that time was on the appropriate pretrial schedules.[9]

## III.   THE COURT CAN CONDUCT SEPARATE TRIALS.

The Court may hold separate trials of the IPP and DPP cases.  Fed. R. Civ. P. 42(b) provides that separate trials may take place "[f]or convenience, to avoid prejudice, or to expedite and economize."   Prejudice to the parties, confusion to the jury, and relative convenience and economy may be grounds for ordering separate trials.  *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1088 (9th Cir. 2005).  Only one of the Rule 42(b) criteria need be met.  *Id.*  In this case, several are applicable.

## IV.   SEPARATE TRIALS WILL AVOID PREJUDICE TO THE DAPS AND IPPS.

Separate trials of the DAP and IPP cases is the best and only way to assure the DAPs and IPPs receive fair trials untainted by prejudicial influence.[10]  For the DAPs, a consolidated trial of the DAP and IPP cases places defensive pass-through of the price-fixing overcharge squarely

---

[8]  Under the Court's order providing certain expedited pretrial deadlines for the DPPs, after the deadline for mediation the DPPs' claim against Samsung, if not settled, would proceed on the remaining schedule set for the IPPs and DAPs.  [Docket No. 2096 at 2]

[9]  The parties' written statements submitted in advance of the September 13, 2013 status conference did not discuss how to structure trial of these cases, and during the conference the Court expressed reservations about the feasibility of trying all claims of all plaintiffs in a single trial.  [Transcript of Sept. 13, 2013, status conference, at 19:23-20:5.]

[10]   An entirely separate but very important issue regarding prejudice to the DAPs and IPPs arises from defendants' apparent intention to place into evidence in the trials of these cases the guilty plea of non-party Sharp Corporation in the *LCD Antitrust* criminal case.  That guilty plea has no bearing on whether Sharp, which did not produce CRTs and was only a purchaser of CRTs from defendants, paid an unlawful overcharge due to a price-fixing conspiracy.  Further, the Sharp guilty plea has zero probative value and enormous prejudicial value as to the other DAPs, who had nothing to do with the LCD price-fixing conspiracy and most of whom were victims of that conspiracy and sued Sharp based on that guilty plea in the *LCD* case.  Nonetheless, defendants' plainly intend to use the guilty plea in this case, if allowed.  For no legitimate reason, they recently marked the Sharp guilty plea agreement as an exhibit in the deposition of the Sharp plaintiffs' expert economist in this case.  In the event that the Court is inclined to allow admission at trial of the Sharp Corporation LCD guilty plea, the remaining DAPs would request that their cases be tried separately from the Sharp plaintiffs.

before the jury.  Not only will the defendants argue the DAPs passed on the overcharges, the IPPs must prove pass-through to establish their state-law claims.  The prejudice to the DAPs will be immense and in violation of the clear rule in *Hanover Shoe*.  As this Court recognized in its Order Granting in Part and Denying in Part Defendants' Joint Motion for Summary Judgment in the DPP case, "In *Hanover Shoe*, the Supreme Court barred the defensive use of a pass-through theory, thereby allowing antitrust plaintiffs to recover damages in excess of their actual losses." [Docket No. 1470 at 7, n. 5].[11]

For the IPPs, a trial consolidated with the DAPs is equally prejudicial.  As the downstream plaintiffs, the jury may assess damages to the IPPs after considering damages to the upstream DAPs.  If that happens, substantial prejudice may result from the jury reducing or offsetting the award to the IPPs because of damages awarded to the DAPs.  This would impair the IPPs' right to recovery provided under state antitrust and consumer protection laws.

## V.    SEPARATE TRIALS WILL MINIMIZE JURY CONFUSION.

With as many as seven plaintiffs and nine defendant groups and expert economists for each side offering economic theories and econometric models of the CRT market and resulting conspiratorial overcharges, a trial of the DAP cases will be complicated and challenging for a jury.  If the IPPs and their claims are added to this complexity, the likelihood of jury confusion increases.  The IPPs bring an additional set of state-law claims under twenty-two antitrust acts and eight consumer competition statutes.

Moreover, the IPPs add to the trial another layer of the distribution chain – the end-user purchasers of CRT products.  In order for the IPPs to establish pass-through of the overcharges to them, they will introduce market evidence and expert economic opinion on the state of competitive conditions in the CRT product market at the retailer level (the DAP level).  It is the

---

[11]  *See  California v. ARC America Corp.*, 490 U.S. 93, 102 (1989) ("Congress intended the federal antitrust laws to supplement, not displace state antitrust remedies.").

6

distribution level above the IPP end-users that "passes through" the price-fixing overcharge to them.  Thus, in addition to defensive pass-through causing substantial prejudice to the DAPs, a jury in a consolidated trial will have to keep separate the evidence of pass-through at two levels of the distribution chain – first from the defendants (and their affiliated or controlled product manufacturing entities) who sold CRT products to the DAPs, and then from the retailer-DAPs to the end-user IPPs.

Further jury confusion in a consolidated DAP-IPP trial is likely to arise if the Court allows defendants to argue that the DAPs had bargaining power in purchasing CRT products and somehow used this power to mitigate the extent of the price-fixing overcharges.  While this evidence should not be admitted as to the DAPs, it has no application to the IPPs; yet, the jury in a consolidated trial would have to keep this testimony separate as to the different sets of plaintiffs.

## VI.   SEPARATE TRIALS ARE NOT LIKELY TO CONSUME MORE JUDICIAL RESOURCES.

Separate trials of the IPP and DAP cases are not likely to involve more judicial resources than an all-encompassing, consolidated trial.  If the DAPs prevail in their case, the preclusive effect of the verdict on liability, overcharges on CRTs, pass-through of overcharges to the DAPs, and defensive issues submitted to the jury (if any) in will reduce the scope of the subsequent IPP trial.  The focus of the IPP trial would be on fact of injury to the IPPs, pass-through of the overcharge to the IPPs and damages.

Even a mixed result or adverse outcome in the DAP trial is likely to influence the resolution of the IPP case.  Experienced and highly competent counsel for the parties will have the benefit of an actual trial of most of the disputed issues and can use that in their evaluations of the IPP case.  While there can be no guarantee that the IPP case would settle entirely, both experience and reason suggest that is likely to happen.[12]

---

[12]   Separate trials of the DAP and IPP cases will not impose unwarranted costs on the defendants.  As a result of the

7

## VII.   SEPARATE TRIALS DO NOT LEAD TO DUPLICATIVE RECOVERY.

There is no issue of duplicative recoery under federal law, as the Supreme Court has made clear that state law does not "duplicate" federal law, but rather provides remedies in addition to those available under the Sherman Act.  And to the extent that there is even a possibility of some issue of duplicative recovery issue arising in the future under state law (which is purely speculative at this point), that can and should be dealt with by the Court post-trial, and thus provides no reason to try the DAP and IPP cases together.

### A.   There is no duplicative recovery issue between Sherman Act direct action plaintiffs and state law indirect purchaser plaintiffs.

Under well-established federal law, there is no duplicative recovery issue between the federal law DAPs and the state law IPPs.  *Hanover Shoe* established that a federal antitrust plaintiff is entitled to 100% of any overcharge that it paid, regardless of whether some of that overcharge was passed on to indirect purchasers.  The Supreme Court held that "Hanover proved injury and the amount of its damages for the purpose of its treble-damage suit when it proved that United had overcharged it during the damage period and showed the amount of the overcharge," and did not allow a pass-on defense. *Hanover Shoe,* 392 U.S. at 494.  The Court stated that it was reaffirming earlier cases holding that any passing-on of an overcharge is "irrelevant in assessing damages." *Id*. at 490.  While the Court indicated that there might be rare situations where the

---

substantial scope, nature and impact of their CRT price-fixing conspiracy, the defendants have been sued by DPPs, IPPs, a number of DAPs, and the California Attorney General, in addition to several criminal indictments and a guilty plea and governmental regulatory proceedings in the European Union, Korea and Japan.  The defendants face trial not only in this Court but in several MDL transferor courts in Washington, Texas, Florida and other jurisdictions in the United States and abroad.  In addition, the defendants face a trial of the California Attorney General's case in California state court.  Whether this Court conducts one massive trial or two more focused trials will not materially alter defendants' costs of resolving their anticompetitive conduct.  Nor can the defendants argue that separate trials should not be held in this Court because they may reach inconsistent outcomes.  While such results might occur, that potential is inherent and accepted in cases such as this where anticompetitive conduct injures many parties in many different jurisdictions.  Separate actions may reach different outcomes, as for example the DAPs in this Court may obtain a favorable jury verdict but Dell's Section One claims against the defendants may receive a different outcome from a jury in Texas.  The same is true with respect to separate trials of the DAP and IPP cases in this Court.

8

logic of the opinion would not control—for example when a plaintiff had a cost-plus contract—there is nothing in the opinion suggesting that the Court thought that a pass-on defense and allocation of damages across distribution levels was called for by federal law.

In *Illinois Brick*, the Court reaffirmed its holding in *Hanover Shoe* that "in general a pass-on theory may not be used defensively by an antitrust violator against a direct purchaser plaintiff." *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 726 (1977). The Court stated that this holding "rest[ed] on the judgment that the antitrust laws will be more effectively enforced by concentrating the full recovery for the overcharge in the direct purchasers." *Id.* at 735. The Court further held that indirect purchaser claims based on passed-on overcharges would not be recognized under the federal antitrust laws. *Id.* at 728-729.

Finally, in *ARC America*, the Court held that federal antitrust law did not pre-empt state law causes of action by indirect purchaser plaintiffs. *ARC America*, 490 U.S. at 101. The *Illinois Brick* rule does not preclude state law indirect purchaser claims because "Congress intended the federal antitrust laws to supplement, not displace, state antitrust remedies." *Id.* at 102. The Supreme Court rejected the argument that any "express federal policy condemning multiple liability" compelled a different result. *Id.* at 105. As the Court held, there is no "federal policy against States imposing liability in addition to that imposed by federal law." *Id.*

Thus, the Supreme Court has never endorsed the view that federal and state law trials should be consolidated to coordinate remedies, or that damages would somehow have to be allocated between direct purchaser federal plaintiffs and indirect purchaser state plaintiffs. The Court has in fact indicated just the opposite: "[T]hese state statutes cannot and do not purport to affect remedies available under federal law." *Id.* at 103. Federal and state law plaintiffs can pursue their different claims without coordination and without allocation between each other, because under the federal antitrust laws there is no "policy against States imposing liability in addition to that imposed by federal law." *Id.* at 105.

9

The California Supreme Court came to a similar conclusion in *Union Carbide Corp. v. Superior Court*, 36 Cal. 3d 15 (1984).   There, the defendants argued that California direct purchasers who were pursuing federal claims in a separate case should be brought into a pending Cartwright Act state case brought by indirect purchasers, because the federal claims supposedly created a risk of multiple liability.  *Id*. at 22.  The Court rejected that argument, finding that there is no substantial risk of multiple liability arising from the fact that the defendants "may be held liable in a federal suit under a federal statute to a person or class wholly different from the person or class to whom they are sought to be held liable in a California action under a California statute for the same tortious conduct."  *Id*. at 22-23.  The Court noted that pass-on issues were "irrelevant to" the federal direct purchaser case because federal law "allows recovery by the direct purchaser regardless of whether the overcharge was passed on."  *Id*. at 23.  Thus, there was no need to join the actions of the federal direct purchasers, who were pursuing full federal law recovery in their case, to the actions of the California indirect purchasers, who were pursuing their full state law recovery under the Cartwright Act.

Because state law provides antitrust remedies distinct from those permitted under federal law, any purported concerns about "duplicative recovery" are a red herring and provide no basis to deny this Motion.

## B.    If any allocation of damages is eventually required, it can and should be addressed by the Court through post-trial proceedings.

Under both federal and state law, the Court can and should utilize post-trial remittitur to address any due process claim by defendants of purported punitive damages.  *See Morgan v. New York Life Ins. Co*., 559 F.3d 425, 443 (6th Cir. 2009) ("we will vacate the award and remand the case to the district court for an order of remittitur that will set the punitive damages in an amount that it determines is compatible with due process."); 735 Ill. Comp. Stat 5/2-1207 ("The trial

court may, in its discretion, with respect to punitive damages, determine whether a jury award for punitive damages is excessive, and if so, enter a remittitur and a conditional new trial."); *Simon v. San Paolo U.S. Holding Co., Inc.*, 35 Cal. 4th 1159, 1187 (2005) (the "appropriate order" to address excessive punitive damages is a remittitur); *Daka, Inc. v. McCrae*, 839 A.2d 682, 701-02 (D.C. 2003).

Similarly, the Court can utilize remittitur to address any due process concerns regarding duplicative damages. S*ee, e.g., Mattel, Inc. v. MGA Entm't, Inc.*, Case No. CV 04-9049 DOC (RNBx), 2011 U.S. Dist. LEXIS 85928, 56-57 (C.D. Cal. Aug. 4, 2011) (remittitur is proper vehicle to address claim of duplicative recovery); *Morrison Knudsen Corp. v. Ground Improvement Techniques, Inc.*, 532 F.3d 1063, 1079 (10th Cir. 2008); *Eccleston v. New York City Health & Hosps. Corp.*, 698 N.Y.S.2d 869, 870 (1999); *Louis DeGidio Oil & Gas Burner Sales & Service, Inc. v. Ace Eng'g Co., Inc.*, 302 Minn. 19, 29 (1974).

Because the issue of duplicative recovery can (and should) be raised in the context of post-trial remittitur proceedings, concerns over duplicative recovery have no bearing on whether the IPP and DAP cases should be tried together.

## VIII.   A BIFURCATED TRIAL WILL NOT ALLEVIATE THE POTENTIAL PREJUDICE TO THE DAPS AND IPPS AND WILL RESULT IN PROBLEMS OF ITS OWN.

Counsel for the DAPs and IPPs have considered at length whether a consolidated trial bifurcated into separate liability and damages phases can eliminate the prejudicial effect of a joint DAP-IPP trial on all issues. It cannot. Moreover, bifurcation of this antitrust case raises difficult issues of duplicative testimony, potentially conflicting outcomes, and inefficiency. For these reasons, courts have cautioned that "[i]n a private antitrust suit there is no neat dividing line between the issues of liability and damages and because of the difficulty in establishing this 'dividing line' any severance of issues in such a case 'must proceed with trepidation.'" *Windham v. American Brands, Inc.,* 565 F.2d 59, 71-72 (4th Cir. 1977) (en banc) (quoting *Response of*

11

*Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1324 (5th Cir. 1976)).  The Manual for Complex Litigation, Fourth, likewise advises that "[g]eneral principles relevant to structuring trials apply to antitrust litigation, although the judge should take particular care when considering severance of damage issues from other elements of the claim."  § 30.1.  The Ninth Circuit has held that it is error for a district court to bifurcate liability and damages when "the question of damages is so interwoven with liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty."  *Miller v. Fairchild Indus.*, 885 F.2d 498, 511 (9th Cir. 1989).

## A.   Bifurcation Does Not Eliminate Potential Prejudice to the DAPs and IPPs.

Conducting a consolidated trial of the DAP and IPP cases in bifurcated phases does not free the DAPs and IPPs from potential prejudice.  A joint DAP-IPP trial in which liability and damages are bifurcated and considered in separate phases by the same jury still has enormous potential for prejudice.  Under the Sherman Act, "fact of damage" is an element which plaintiff must establish. *Christofferson Dairy v. MMM Sales*, 849 F.2d. 1168, 1172-73 (9th Cir. 1988). . "Fact of damage" is in general terms the causation element of a Section One claim and how plaintiff establishes the "injury to business or property" requirement.   "Fact of damage" is considered an element of proving liability and differs from amount of damages.  *E.g., MCI Communications Corp. v. AT&T Co.,* 708 F.2d 1081, 1167-68 & n. 122 (7th Cir. 1983). *See also Blanton v. Mobil Oil Corp.*, 721 F.2d 1207 (9th Cir. 1983).

In this case, "fact of damage" for the DAPs will be established in part through evidence and expert opinion that they paid a price-fixing overcharges on CRTs.  Similarly, "fact of damage" for the IPPs will be proven in part by evidence and expert opinion that the price-fixing overcharges on CRTs was passed through to them by the DAPs.  Without downstream pass-through, the IPPs cannot demonstrate "fact of damage."  Thus, a joint DAP-IPP trial in which

12

"liability" is considered in the first phase necessarily poses the same risk of prejudice to the DAPs and runs head on into *Hanover Shoe's* bar against defensive pass-through in Section One cases.

Even a bifurcated trial in which the first phase is limited to whether defendants conspired to fix CRT prices poses serious risk of prejudice to the DAPs and IPPs. Such a trial would have to proceed in three phases. The first phase would be a joint DAP-IPP trial in which the jury would determine whether there was a conspiracy. In the second phase, only the DAPs would be present and the jury would determine whether the DAPs suffered "fact of damage" and the quantum of damages. In the third phase involving only the IPPs, the jury would determine whether the downstream IPPs suffered "fact of damage" and the quantum of their damages.

This three-phase trial is very likely to expose the DAPs, the IPPs, or both to prejudice. A jury hearing a joint DAP-IPP phase one trial will be entirely aware of the IPPs and their presence in the case when considering the "fact of damage" and quantum of damages to the DAPs in phase two. The jury will understand (and may have been expressly advised) that a third phase will follow in which the downstream IPPs will seek damages. There is a serious risk that the jury's awareness of an upcoming phase devoted to the IPPs damages will prejudice its consideration of the damages to the DAPs in phase two.[13]

This three-phase bifurcation also risks prejudice to the IPPs. A jury that in phase two awards substantial damages to the DAPs should not consider that award in awarding damages to the IPPs in phase three. Human nature, however, suggests that the same jury that awarded damages to the DAPs in week one is not capable of divorcing itself from that award when considering damages to the IPPs from the same anticompetitive conduct in week two.

---

[13] Conducting a bifurcated trial with separate juries in all three phases will keep defensive pass-through from infecting the DAPs and will avoid one jury offsetting the damages awarded to either the DAPs or the IPPs with those awarded or to be awarded to the other. However, conducting in essence three trials with separate juries is the least efficient use of party and judicial resources. It also presents troubling issues of how to separate the evidence neatly into the three phases (or risk substantial duplication) and whether issues can fairly be submitted to juries in a near-vacuum.

3342678v1/012325

### B.    Bifurcation Raises Issues of Duplication and Inefficiency.

One major defense theme in this case is that while defendants attended group meetings, had bilateral communications, exchanged highly confidential information on prices, production, and capacity, and agreed to fix prices and otherwise restrain competition in CRTs, they did not honor their agreements.  Thus, according to defendants, the CRT conspiracy was largely if not entirely ineffective in raising prices.  One defense economist even opines that the conspiracy *lowered* prices for certain CRTs.  Other defense economic experts have opined that the CRT market was not susceptible to effective price-fixing and/or that the conspirators did not honor their anticompetitive agreements.

This defense theme of cheating and dishonor permeates all aspects of this case.  Defendants will argue it means there was no conspiracy, there was no "fact of damage," and that there were no measurable damages suffered by the DAPs and IPPs.  Parsing the evidence, including expert testimony, that defendants intend to introduce in support of this argument between separate trial phases will be challenging, if not impracticable.  The result is likely to be duplication of evidence and a corresponding impact on the efficiency of a bifurcated trial.

### IX.    THE RECENT CASE FILED BY THE DPPS IS ON AN ENTIRELY DIFFERENT SCHEDULE.

After settling all claims in their action filed in 2007 in this Court, the DPPs commenced a new action on May 5, 2014 against two defendants – Thomson and Mitsubishi.  *Crago v. Mitsubishi Electric Corp.,* Case No. 14-cv-2058-SC.  That case is on an entirely different schedule than the IPP and DAP cases.  Class certification proceedings have not been held and no class as yet has been certified, expert reports have not been exchanged, and no pretrial scheduling order has been entered.  Trial of the new DPP case cannot reasonably be coordinated with the IPP and DAP cases.

## X.   THE COURT SHOULD SCHEDULE SEPARATE TRIALS FOR THE DAPS AND IPPS.

To assure both the DAPs and IPPs of trials free of prejudicial influence and to minimize the likelihood of jury confusion in admittedly complex cases, the Court should schedule separate trials for the DAPs and IPPs.  Recognizing these concerns, the district court in *In re Polyurethane Foam Antitrust Litigation* recently ordered separate trials for the claims of the IPPs (and DPPs) and DAPs.  Order Selecting Initial Trial, Requiring Party Mediation, and Revising Remaining Deadlines, July 3, 2014 [attached as Exhibit A].  The court in *Polyurethane Foam* stated that separate trials avoid "passthrough issues" and are "more manageable for this Court and the jury." *Id.* at 3.  Similarly, in the *LCD Antitrust Litigation* Judge Illston ordered separate trials for the class action cases and the DAP cases.  *In re TFT-LCD (Flat Panel) Antitrust Litigation,* Order re Pretrial and Trial Schedule, Nov. 23, 2010 [attached as Exhibit B].  Due to the number of DAP cases filed in *LCD,* Judge Illston separated the DAPs into "tracks" based upon the date their cases were commenced and ordered that separate trials be scheduled for the tracks of DAP cases.  *Id.* (creating both pretrial and trial dates "applicable to all Direct Action Plaintiffs and all State AG Plaintiffs (in cases on file by 12/1/10).[14]

For the foregoing reasons, the IPPs and the undersigned DAPs request that the Court order separate trials of their cases.

---

[14]   Later scheduling orders in the LCD cases adopted pretrial and trial schedules for those DAP cases filed after December 1, 2010, which were designated "Track 2 cases."  Order re Pretrial and Trial Schedule for Track Two Direct Action Cases, July 6, 2012.

15

Dated:   October 3, 2014

/s/ Kenneth S. Marks
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
John P. Lahad
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email:     kmarks@susmangodfrey.com
           jross@susmangodfrey.com
           jcarter@susmangodfrey.com
           dpeterson@susmangodfrey.com
           jlahad@susmangodfrey.com


Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883
Email:     pfolse@susmangodfrey.com
           rblack@susmangodfrey.com
           jconnors@susmangodfrey.com

*Attorneys for plaintiff Alfred H. Siegel, solely in his capacity as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

16

3342678v1/012325

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Mario N. Alioto*
Mario N. Alioto (56433)
Lauren C. Capurro (241151)
**TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP**
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
malioto@tatp.com
laurenrussell@tatp.com

***Interim Lead Counsel***
***For the Indirect Purchaser Plaintiffs***

*/s/ Jason C. Murray*
Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690
Email: jmurray@crowell.com

*Attorneys for Plaintiffs Target Corp. and Viewsonic Corp.*

17

<table>
<tr><td>1</td><td> <em>/s/ Richard Alan Arnold</em>
Richard Alan Arnold</td></tr>
</table>

/s/ Richard Alan Arnold
Richard Alan Arnold
William J. Blechman
Kevin J. Murray
Ryan Zagare
Jalaine Garcia
James Almon
KENNY HACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL  33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
Email:  rarnold@knpa.com
        wblechman@knpa.com
        kmurray@knpa.com
        rzagare@knpa.com
        jgarcia@knpa.com
        jalmon@knpa.com

Gavin D. Whitis
POND NORTH, LLP
100 Spear Street, Suite 1200
San Francisco, CA  94105
Telephone: (415) 217-1240
Facsimile: (415) 644-0578
Email:  gwhitis@pondnorth.com

*Attorneys for Plaintiffs Sears, Roebuck and Co. and Kmart Corp.*

*/s/ Craig A. Benson*
Craig A. Benson
Joseph J. Simons
Kenneth A. Gallo
PAUL WEISS LLP
2001 K Street NW
Washington, DC 20006
Telephone: (202) 223-7343
Email: CBenson@paulweiss.com
        jsimons@paulweiss.com
        kgallo@paulweiss.com

*Attorneys for Plaintiffs Sharp Electronics Corp. and Sharp Electronics Manufacturing Company of America, Inc.*

18

# CERTIFICATE OF SERVICE

## IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION
## Case No. CV-07-5944-SC
## MDL No. 1917

I, Kenneth S. Marks , declare:

I am employed in the County of Harris, State of Texas.  I am over the age of 18 years and not a party to the within action.  My business address is Susman Godfrey L.L.P., 1000 Louisiana Street, Suite 5100, Houston, Texas  77002.

On October 3, 2014, I served a true and correct copy of the following document(s) in the manner indicated below:

[  ]   **BY U.S. MAIL:**  I caused the said document(s) to be deposition in the United States mail, at Houston, Texas, in a sealed envelope with first-class postage thereon fully prepaid, to the addressee(s) named below: and

[X]   **BY ELECTRONIC MAIL:**  I caused the said document(s) to be emailed to the offices and/or to attorneys of the offices of the addressee(s) named below.

## SEE ATTACHED SERVICE LIST

Dated:  October 3, 2014                Signed    _/s/ Kenneth S. Marks_____
                                                         Kenneth S. Marks

19

3342678v1/012325

## SERVICE LIST

| | |
|---|---|
| Philip J. Iovieno<br>piovieno@bsfllp.com<br>Anne M. Nardacci<br>anardacci@bsfllp.com<br>BOIES, SCHILLER & FLEXNER LLP<br>10 North Pearl Street, 4th Floor<br>Albany, NY  12207<br>Tel:  (518) 434-0600<br><br>*Liaison Counsel for Direct Action Plaintiffs<br>and Attorneys for Plaintiffs Electrograph<br>Systems, Inc., Electrograph Technologies,<br>Corp., Office Depot, Inc., Compucom Systems,<br>Inc., Interbond Corporation of America, P. C.<br>Richard & Son Long Island Corporation,<br>Marta Cooperative of America, Inc., ABC<br>Appliance, Inc., Schultze Agency Services LLC<br>on behalf of Tweeter Opco, LLC and Tweeter<br>Newco, LLC* | Mario N. Alioto<br>malioto@tatp.com<br>Lauren C. Russell<br>laurenrussell@tatp.com<br>Joseph M. Patane<br>jpatane@tatp.com<br>TRUMP, ALIOTO, TRUMP & PRESCOTT<br>  LLP<br>2280 Union Street<br>San Francisco, CA  94123<br>Tel:  (415) 563-7200<br><br>*Interim Lead Counsel for Indirect Purchaser<br>Plaintiffs Class* |
| Kamala D. Harris<br>    Attorney General of California<br>Mark Breckler<br>    Chief Assistant Attorney General<br>Kathleen E. Foote<br>    Senior Assistant Attorney General<br>Emilio E. Varanini<br>    Deputy Attorney General<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA  94102-3664<br>Tel:  (415) 703-5908<br>emilio.varanini@doj.ca.gov<br><br>*Counsel for Plaintiff State of California* | Guido Saveri<br>guido@saveri.com<br>R. Alexander Saveri<br>rick@saveri.com<br>Geoffrey C. Rushing<br>grushing@saveri.com<br>Cadio Zirpoli<br>cadio@saveri.com<br>SAVERI & SAVERI, INC.<br>706 Sansome Street<br>San Francisco, CA  94111<br>Tel:  (415) 217-6810<br><br>*Interim Lead Counsel for The Direct<br>Purchaser Plaintiffs Class* |

20

3342678v1/012325

| | |
|---|---|
| Jeffrey L. Kessler<br>jkessler@winston.com<br>A. Paul Victor<br>pvictor@winston.com<br>Eva W. Cole<br>ewcole@winston.com<br>Molly M. Donovan<br>mmdonovan@winston.com<br>WINSTON & STRAWN LLP<br>200 Park Avenue<br>New York, NY  10166-4193<br>Tel:  (212) 294-6700<br><br>David L. Yohai<br>david.yohai@weil.com<br>Steven A. Reiss<br>steven.reiss@weil.com<br>Adam C. Hemlock<br>adam.hemlock@weil.com<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY  10153<br>Tel:  (212) 310-8000<br><br>*Counsel for Defendants Panasonic*<br>*Corporation, Panasonic Corporation*<br>*of North America, and MT Picture*<br>*Display Co., Ltd.* | Hojoon Hwang<br>hojoon.hwang@mto.com<br>MUNGER, TOLLES & OLSON LLP<br>560 Mission Street, 27th Floor<br>San Francisco, CA  94105<br>Tel:  (415) 512-4000<br><br>William D. Temko<br>william.temko@mto.com<br>Jonathan E. Altman<br>jonathan.altman@mto.com<br>Bethany W. Kristovich<br>bethany.kristovich@mto.com<br>MUNGER TOLLES & OLSON LLP<br>355 South Grand Avenue, 35th Floor<br>Los Angeles, CA  90071-1560<br>Tel. (213) 683-9100<br><br>*Counsel for Defendants LG Electronics, Inc.,*<br>*LG Electronics USA, Inc., and LG Electronics*<br>*Taiwan Taipei Co., Ltd.* |
| Mark C. Dosker<br>mark.dosker@squiresanders.com<br>Nathan Lane, III<br>nathan.lane@squiresanders.com<br>SQUIRE SANDERS LLP<br>275 Battery Street, Suite 2600<br>San Francisco, CA 94111<br>Tel: (415) 954-0200<br><br>*Counsel for Technologies Displays Americas*<br>*LLC* | Joseph R. Tiffany<br>Joseph.tiffany@pillsburylaw.com<br>PILLSBURY WINTHROP SHAW PITTMAN,<br> LLP<br>2550 Hanover Street<br>Palo Alto, CA 94304-1114<br>Tel. (650) 233-4644<br><br>*Counsel for Defendants IRICO Display Devices*<br>*Co., Ltd., IRICO Group Corporation, and*<br>*IRICO Group Electronics Co., Ltd.* |

21

| | |
|---|---|
| John Taladay<br>john.taladay@bakerbotts.com<br>Joseph Ostoyich<br>joseph.ostoyich@bakerbotts.com<br>Charles M. Malaise<br>Charles.malaise@bakerbotts.com<br>Erik T. Koons<br>erik.koons@bakerbotts.com<br>BAKER BOTTS LLP<br>The Warner<br>1299 Pennsylvania Avenue, NW<br>Washington, DC  20004-2400<br>Tel:  (202) 639-7909<br><br>Jon V. Swenson<br>jon.swenson@bakerbotts.com<br>BAKER BOTTS LLP<br>1001 Page Mill Road<br>Building One, Suite 200<br>Palo Alto, CA  94304<br>Tel. (650) 739-7500<br><br>*Counsel for Defendants Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips da Amazonia Industria Electronica Ltda.* | Ian Simmons<br>isimmons@omm.com<br>Benjamin G. Bradshaw<br>bbradshaw@omm.com<br>Courtney C. Byrd<br>cbyrd@omm.com<br>David Kendall Roberts<br>droberts2@omm.com<br>Kevin Douglas Feder<br>kfeder@omm.com<br>O'MELVENY & MYERS LLP<br>1625 Eye Street, NW<br>Washington, DC  20006-4001<br>Tel:  (202) 383-5163<br><br>Michael Frederick Tubach<br>mtubach@omm.com<br>O'MELVENY & MYERS LLP<br>Two Embarcadero Center<br>28th Floor<br>San Francisco, CA 94111-3305<br>Tel. (415) 984-8700<br><br>*Counsel for Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.* |
| Joel S. Sanders<br>jsanders@gibsondunn.com<br>Rachel S. Brass<br>rbrass@gibsondunn.com<br>Austin V. Schwing<br>aschwing@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER<br>555 Mission Street, Suite 3000<br>San Francisco, CA  94105<br>Tel:  (415) 393-8200<br><br>*Counsel for Defendant Tatung Company America and Counsel for Defendants Chunghwa Picture Tubes, Ltd. and Chungwha Picture Tubes (Malaysia)* | Michael R. Lazerwitz<br>mlazerwitz@cgsh.com<br>Jeremy J. Calsyn<br>jcalsyn@cgsh.com<br>CLEARY GOTTLIEB STEEN &<br>  HAMILTON LLP<br>2000 Pennsylvania Avenue, NW, Suite 9000<br>Washington, DC  20006<br>Tel:  (202) 974-1500<br><br>*Counsel for Defendant LP Displays International, Ltd.* |

22

3342678v1/012325

| | |
|---|---|
| Christine Laciak<br>christine.laciak@freshfields.com<br>Richard Snyder<br>richard.snyder@freshfields.com<br>Craig D. Minerva<br>craig.minerva@freshfields.com<br>Bruce C. McCulloch<br>bruce.mcculloch@freshfields.com<br>Terry Calvani<br>terry.calvani@freshfields.com<br>FRESHFIELDS BRUCKHAUS &<br>  DERINGER US, LLP<br>700 13th Street, NW<br>10th Floor<br>Washington, DC 20005-3960<br>Tel: (202) 777-4500<br><br>*Counsel for Defendant Beijing*<br>*Matsushita Color CRT Co., Ltd.* | Christopher M. Curran<br>ccurran@whitecase.com<br>Lucius B. Lau<br>alau@whitecase.com<br>Dana E. Foster<br>defoster@whitecase.com<br>WHITE & CASE, LLP<br>701 13th Street, NW<br>Washington, DC 20005<br>Tel: (202) 626-3600<br><br><br>*Counsel for Defendants Toshiba Corporation,*<br>*Toshiba America, Inc., Toshiba America*<br>*Information Systems, Inc., Toshiba America*<br>*Consumer Products, L.L.C., and Toshiba*<br>*America Electronic Components, Inc.* |
| Eliot A. Adelson<br>eadelson@kirkland.com<br>James Maxwell Cooper<br>max.cooper@kirkland.com<br>KIRKLAND & ELLIS LLP<br>555 California Street, 27th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 439-1400<br>Facsimile: (415) 439-1500<br><br>James H. Mutchnik<br>jmutchnik@kirkland.com<br>Kate Wheaton<br>kate.wheaton@kirkland.com<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br><br>*Counsel for Defendants Hitachi, Ltd.,*<br>*Hitachi Displays, Ltd., Hitachi Asia, Ltd.,*<br>*Hitachi America, Ltd., and Hitachi*<br>*Electronic Devices (USA), Inc.* | Gary L. Halling<br>ghalling@sheppardmullin.com<br>James L. McGinnis<br>jmcginnis@sheppardmullin.com<br>Michael Scarborough<br>mscarborough@sheppardmullin.com<br>SHEPPARD MULLIN RICHTER &<br>  HAMPTON LLP<br>Four Embarcadero Center, 17th Floor<br>San Francisco, CA 94111<br>Tel: (415) 434-9100<br><br>*Counsel for Defendants Samsung SDI America*<br>*Samsung SDI Co., Ltd., Samsung SDI Mexico*<br>*S.A. de C.V., Samsung SDI Brasil Ltda.,*<br>*Shenzhen Samsung SDI Co., Ltd., Tianjin*<br>*Samsung SDI Co., Ltd., and Samsung SDI*<br>*(Malaysia) Sdn. Bhd.* |

23

3342678v1/012325

| | |
|---|---|
| Brent Caslin<br>bcaslin@jenner.com<br>JENNER & BLOCK LLP<br>633 West 5th Street, Suite 3600<br>Los Angeles, CA 90071-2054<br>Tel: (213) 239-5100 | Calvin L. Litsey<br>calvin.litsey@faegrebd.com<br>FAEGRE BAKER DANIELS LLP<br>1950 University Avenue, Suite 450<br>East Palo Alto, CA 94303-2279<br>Tel: (650) 324-6700 |
| Terrence J. Truax<br>ttruax@jenner.com<br>Michael T. Brody<br>mbrody@jenner.com<br>Shaun M. Van Horn<br>svanhorn@jenner.com<br>Gabriel A. Fuentes<br>gfuentes@jenner.com<br>Molly M. Powers<br>mpowers@jenner.com<br>JENNER & BLOCK LLP<br>353 North Clark Street<br>Chicago, IL 60654<br>Tel: (312) 222-9350 | Kathy Osborn<br>kathy.osborn@faegrebd.com<br>Ryan M. Hurley<br>ryan.hurley@faegrebd.com<br>FAEGRE BAKER DANIELS LLP<br>300 N. Meridian Street, Suite 2700<br>Indianapolis, IN 46204<br>Tel: (317) 237-0300<br><br>Jeffrey S. Roberts<br>Jeff.roberts@faegrebd.com<br>FAEGRE BAKER DANIELS LLP<br>3200 Wells Fargo<br>1700 Lincoln Street<br>Denver, CO 80203<br>Tel: (303) 607-3500 |
| *Counsel for Mitsubishi Electric Corporation, Mitsubishi Electric & Electronics USA, Inc. and Mitsubishi Digital Electronic Americas, Inc.* | Stephen M. Judge<br>Steve.judge@faegrebd.com<br>FAEGRE BAKER DANIELS LLP<br>202 S. Michigan Street, Suite 1400<br>South Bend, IN 46601<br>Tel: (574) 234-4149<br><br>*Counsel for Defendants Thomson S.A. (N/K/A Technicolor SA); Thomson Consumer Electronics, Inc. (N/K/A Technicolor USA, Inc.)* |

INDIRECT PURCHASER PLAINTIFFS' AND DIRECT
ACTION PLAINTIFFS' MOTION FOR SEPARATE TRIALS
MDL No. 1917

3342678v1/012325