1   SHEPPARD MULLIN RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2       Including Professional Corporations
    GARY L. HALLING, Cal. Bar No. 66087
3   JAMES L. MCGINNIS, Cal. Bar No. 95788
    MICHAEL W. SCARBOROUGH, Cal. Bar No. 2035247
4   DYLAN I. BALLARD, Cal. Bar No. 253929
    Four Embarcadero Center, 17th Floor
5   San Francisco, California  94111-4106
    Telephone:      415-434-9100
6   Facsimile:      415-434-3947
    E-mail:      ghalling@sheppardmullin.com
7               jmcginnis@sheppardmullin.com
                mscarborough@sheppardmullin.com
8               dballard@sheppardmullin.com

9   Attorneys for Defendants
    SAMSUNG SDI AMERICA, INC.,
10  SAMSUNG SDI CO., LTD.,
    SAMSUNG SDI (MALAYSIA) SDN. BHD.,
11  SAMSUNG SDI MEXICO S.A. DE C.V.,
    SAMSUNG SDI BRASIL LTDA.,
12  SHENZHEN SAMSUNG SDI CO., LTD. and
    TIANJIN SAMSUNG SDI CO., LTD.

13  *Additional counsel listed on signature pages*

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                       SAN FRANCISCO DIVISION

17  In re: CATHODE RAY TUBE (CRT)          | Case No. 3:07-cv-5944 SC
18  ANTITRUST LITIGATION
                                            | MDL No. 1917
19  _____
                                            | **DEFENDANTS' CROSS-MOTION FOR**
20  This Document Relates to:               | **CONSOLIDATION OF TRIALS;**
                                            | **OPPOSITION TO INDIRECT**
21  INDIRECT PURCHASER ACTIONS              | **PURCHASER PLAINTIFFS' AND**
                                            | **CERTAIN DIRECT ACTION**
22  *Sears, Roebuck and Co. and Kmart Corp. v.* | **PLAINTIFFS' MOTION FOR SEPARATE**
    *Technicolor SA, et al.*, No. 13-cv-05262; | **TRIALS**
23
    *Sears, Roebuck and Co. and Kmart Corp. v.*
24  *Chunghwa Picture Tubes, Ltd., et al.*, No. 13-
    cv-05262;
25
    *Target Corp. v. Technicolor SA, et al.*, No. 13-
26  cv-05686;
27
    *Target Corp. v. Chunghwa Picture Tubes,*
28  *Ltd., et al.*, No. 11-cv-05514;

DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION OF TRIALS;
                                            OPP. TO IPPS' & DAPs' MOTION FOR SEPARATE TRIALS

*Best Buy Co. Inc., et al. v. Hitachi Ltd., et al.*, No. 11-cv-05513;

*Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502;

*Siegel v. Technicolor SA, et al.*, No. 13-cv-05261;

*Sharp Elecs. Corp., et al. v. Hitachi Ltd., et al.*, No. 13-cv-01173;

*Sharp Elecs. Corp., et al. v. Technicolor SA, et al.*, No. 13-cv-02776;

*ViewSonic Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 14-cv-02510

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     SUMMARY OF CASES TO BE TRIED IN THIS COURT ...................................... 2

III.    ARGUMENT ............................................................................................................... 5

IV.     CONCLUSION ......................................................................................................... 13

1

<u>TABLE OF AUTHORITIES</u>

2

Page(s)

<u>Federal Cases</u>

3

*Alabama v. Blue Bird Body Co.*
4          573 F.2d 309 (5th Cir. 1978) .................................................................... 12

5

*In re Cardizem CD Antitrust Litig.*
6          105 F.Supp.2d 618 (E.D. Mich. 2000) ................................................... 10

7      *Collins v. Horton*
           505 F.3d 874 (9th Cir. 2007) ................................................................... 11
8

9      *Freeman v. Blue Ridge Paper Products, Inc.*
           551 F.3d 405 (6th Cir. 2008) ..................................................................... 9
10

11     *Hendrix v. Raybestos-Manhattan, Inc.*
           776 F.2d 1492 (11th Cir. 1985) .................................................................. 5

12     *Howard Hess Dental Laboratories v. Dentsply Int.*
           516 F.Supp.2d 324 (D. Del. 2007) .......................................................... 10
13

14     *In re Jacobson*
           676 F.3d 1193 (9th Cir. 2012) ................................................................. 10

15     *Johnson v. Celotex Corp.*
           899 F.2d 1281 (2d Cir. 1990) ................................................................. 7, 8
16

17     *Jordan Video, Inc. v. 144942 Canada Inc.*
           617 F.3d 1146 (9th Cir. 2010) ................................................................... 7
18

19     *Illinois Brick Co. v. Illinois*
           431 U.S. 720 (1977) ............................................................................... 12

20     *In re Microsoft Corp. Antitrust Litig.*
           232 F. Supp.2d 534 (D. Md. 2002) ......................................................... 10
21

22     *Parklane Hosiery Co. v. Shore*
           439 U.S. 322, 326 (1979) ....................................................................... 11
23

24     *Pierce v. County of Orange*
           526 F.3d 1190 (9th Cir. 2008) ................................................................... 5

25     *Richardson v. Marsh*
           481 U.S. 200 (1987) ............................................................................... 12
26

27     *Steen v. John Hancock Mut. Life Ins. Co.*
           106 F.3d 904 (9th Cir. 1997) ................................................................... 11

28

-ii-

DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION OF TRIALS;
OPP. TO IPPS' & DAPs' MOTION FOR SEPARATE TRIALS

*In re TFT-LCD Antitrust Litig.*
    2012 WL 4858836 (N.D. Cal. Oct. 11, 2012) ......................................................... 11

*In re TFT-LCD Antitrust Litig.*
    2012 WL 6709621 (N.D. Cal. Dec. 26, 2012) ........................................................... 9

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Class Action Fairness Act of 2005
    28 U.S.C. §§ 1332(d), 1453, 1711-1715 ("CAFA") ................................................. 9

Fed.R.Civ.Proc. 42(a) .......................................................................................................... 5

# I.

## INTRODUCTION

Defendants oppose the multiple-trial proposal advanced by the Direct Action Plaintiffs ("DAPs") and Indirect Purchaser Plaintiffs ("IPPs") (collectively "Plaintiffs").  Plaintiffs' proposal is a model of inefficiency that could take a minimum of four months (depending on the amount of time between the proposed trials), while requiring extensive duplication of evidence and argument and posing a high (and completely unnecessary) risk of contradictory verdicts, including at least the following:

- Many of Defendants' percipient witnesses, the Defendants' joint expert witness on pass-through issues, and potentially certain individual Defendant expert witnesses as well, would have to be called in two separate trials to provide substantially similar testimony.

- Juries in the two trials could be expected to reach different conclusions on key issues of impact, pass-through, overcharges, damages, and scope of the alleged conspiracy, including which companies were or were not members of the conspiracy, and which products were involved over what periods of time.

- The application of collateral estoppel to a second trial could not cure any of these problems.  At a minimum, impact, pass-through, and overcharges would need to be independently tried in both of Plaintiffs' proposed two trials.  Even the issue of liability would be contested again because liability to a specific DAP for specific products during a specific time period does not establish liability to the indirect class for an alleged global conspiracy for all types of CRT tubes.

Plaintiffs' multiple-trial proposal also comes with conditions and strings attached, and the Plaintiffs have differing views as to what the proposal will entail.  Five of the six DAPs at issue say they will dismiss their state law claims, and thereby reduce the pass-through issues that will need to be resolved, but four of these DAPs say they will do so only if the Court adopts their trial proposal.  The sixth DAP, Best Buy, says it will not dismiss its state law claim under any circumstances.  Five of the six DAPs—all but Sharp—say that if the Court issues an unfavorable

DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION OF TRIALS;
OPP. TO IPPS' & DAPs' MOTION FOR SEPARATE TRIALS

1    ruling on the admissibility of a guilty plea by Sharp in a prior case, they will ask for a separate

2    trial of Sharp's claims, converting Plaintiffs' current two-trial proposal into a three-trial proposal.

3            Defendants' proposal has no such conditions.  Defendants urge a single, streamlined and

4    timed trial that can be completed from jury selection to closing arguments in no more than eight

5    weeks' time.  A single joint trial involving the handful of Plaintiffs whose claims are to be tried in

6    this District—the IPPs and six similarly-situated DAPs—would allow the claims and issues before

7    this Court to be resolved in the shortest time and most efficient manner possible, and by a

8    significant margin.  This is true both in terms of court days and the calendar:  an eight week trial

9    commencing on March 9, 2015 would be completed no later than May 1.

10           Such a trial would feature only one more Plaintiff group—the IPPs—than would appear at

11   the initial six-DAP trial under Plaintiffs' two-trial proposal, and would entail only a modest

12   increase in the scope and length of such a trial, mostly in the form of some additional expert

13   testimony.   At the same time, a fully consolidated trial would by definition avoid the duplication

14   and high risk of inconsistency inherent in Plaintiffs' proposal.

15           Plaintiffs' only meaningful objection to a joint trial—that it would involve the resolution of

16   state law pass-through issues that do not apply to every Plaintiff at issue—is both a stock objection

17   that is easily addressed by standard jury instructions and attorney argument at trial, and completely

18   undermined by the fact that *the very same issue would arise under Plaintiffs' own proposal*.  As

19   noted, DAP Best Buy has refused to dismiss its state law claims based on indirect purchases,

20   thereby ensuring that even Plaintiffs' proposed six-DAP trial would require the jury to resolve

21   pass-through issues that may not apply to the other DAPs.  Thus, adding the IPPs to that proposed

22   trial—in other words, fully consolidating the cases to be tried in this Court—would simply allow

23   all such pass-through issues to be resolved at once, rather than through unnecessary multiple trials.

## II.

### SUMMARY OF CASES TO BE TRIED IN THIS COURT

26           This multidistrict antitrust litigation has been pending before this Court since early 2008,

27   and presently includes an indirect purchaser class action and fifteen opt-out actions brought by so-

28   called DAPs.  Nine of these fifteen DAP cases were originally filed in other Districts, and were

DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION OF TRIALS;
OPP. TO IPPS' & DAPs' MOTION FOR SEPARATE TRIALS

1  transferred to this Court by the Judicial Panel on Multidistrict Litigation for pre-trial proceedings

2  only.  Those nine cases must be transferred back to their original Districts for trial.  Thus, the only

3  cases set to be tried in this Court are the IPP case and six remaining DAP cases—those filed by

4  Best Buy, Circuit City, Sears/Kmart, Target, Sharp, and ViewSonic.[1]

5  　　　All of these Plaintiffs allege a global, twelve-year price-fixing conspiracy among

6  manufacturers of cathode ray tubes, also known as "CRTs," a now largely obsolete display

7  technology that was once the primary component responsible for displaying images in televisions

8  and computer monitors.  There were two general, non-interchangeable types of CRTs:  color

9  display tubes, or "CDTs," which were used in manufacturing monitors, and color picture tubes, or

10  "CPTs," which were used in manufacturing televisions.   Plaintiffs claim the alleged conspiracy

11  affected the prices of both CDT and CPT tubes themselves, and of finished products containing

12  CDTs and CPTs.  Judging from their pleadings and discovery responses, all of these Plaintiffs

13  base their conspiracy claims on substantially identical allegations, which they purport to support

14  with substantially identical documents and testimony.

15  　　　Attached to this brief as **<u>Appendix 1</u>** is a chart summarizing the claims and key

16  contentions of the seven Plaintiff groups currently set to appear at trial in this Court—the IPPs and

17  six DAPs.  Six of these seven Plaintiffs—all but ViewSonic—assert both federal and state antitrust

18  claims.  Five of these seven Plaintiffs, all except Sharp and ViewSonic, assert claims based on

19  indirect purchases and therefore must prove that upstream overcharges were passed on to them.

20  Six of these seven Plaintiffs, again all except ViewSonic, make state law claims subject to a

21  defense argument that any damages claims must be reduced to the extent the alleged overcharges

22  these Plaintiffs experienced were passed on to downstream customers.  Thus, six of these seven

23  Plaintiffs must address pass-through issues at trial in one form or another.  Perhaps not

24  surprisingly given their similar allegations and issues, all of the DAPs with the sole exception of

25  Sharp have retained the same expert witnesses, who have conducted similar expert analyses on

26

27  [1] As identified on the caption page of this Motion, there are nominally eleven cases set to be tried in this Court, because four of the DAPs at issue—Circuit City, Sharp, Sears/Kmart, and Target—elected to file two cases each against separate groups of Defendants.  Thus, practically speaking there are seven cases at issue.

28

-3-

1   issues of liability, overcharges, and pass-through and damages, and in most cases the DAPs have

2   submitted joint or nearly identical expert reports on these issues.

3        Most of the percipient witnesses called at trial are likely to be Defendants' current and

4   former employees, most of whom live and work in foreign countries and will testify at trial with

5   the aid of an interpreter.  Both sides, Plaintiffs and Defendants, are likely to rely on such witnesses

6   in supporting or rebutting, respectively, the conspiracy claims in these cases.  Under Plaintiffs'

7   two-trial proposal many of these percipient witnesses would need to be called in both trials, and

8   asked to provide essentially identical testimony.  For example, a percipient witness called in

9   Plaintiffs' proposed first DAP-only trial, for the purpose of supporting or rebutting a claim that the

10  scope of the alleged conspiracy included the types of products purchased by specific DAPs, could

11  need to be recalled in a second IPP-only trial to address the same issue, this time with respect to

12  the types of products purchased by the IPPs.

13        The Defendants have jointly retained an expert, Dr. Janusz Ordover, to testify at trial

14  regarding all pass-through issues, including both upstream and downstream pass-through, for both

15  DAPs and IPPs.  Under Plaintiffs' proposal, Dr. Ordover would have to provide extensive and

16  largely identical testimony in both the proposed DAP trial and the IPP trial.  In addition, eight of

17  the nine Defendant groups have retained their own individual testifying experts, some of whom

18  may also testify at trial.  This is not surprising given the fact these Defendants are differently

19  situated with respect to business strategies, geographical regions, products, and time periods

20  manufacturing CRTs or CRT Products, among other issues.  These experts apply the same basic

21  economic principles to the situations of individual defendants rather than having a single expert

22  try to make one very long and complicated presentation.  In any case, all eight of these individual

23  Defendant experts opine on issues that apply equally to the IPP and DAP cases, including issues

24  bearing on individual Defendants' liability for the alleged conspiracy.  To the extent it is necessary

25  for some of these experts to testify at trial, Plaintiffs' two-trial proposal would force them to do so

26  twice, on substantially identical topics.

27

28

## III.

## ARGUMENT

This Court has "broad discretion" to consolidate cases for trial when they involve "a common question of law or fact." Fed.R.Civ.Proc. 42(a); *Pierce v. County of Orange*, 526 F.3d 1190, 1203 (9th Cir. 2008). Here, both sides seek consolidation. Defendants propose full consolidation of all seven cases set to be tried in this Court. Plaintiffs, though they style their motion as a request for "separate trials," in fact seek partial consolidation—*i.e.*, consolidation of *six* of these seven cases, while leaving the seventh, the IPP case, to be tried at some later date.

Partial consolidation makes no sense here. *All seven* of these cases share extensive common questions of law and fact, and *all seven* should be consolidated for trial. Anything less would defeat the purpose of consolidation to increase efficiency and avoid delay. *See, e.g., Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985) (Rule 42(a) exists to allow the district court to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (internal quotations and citations omitted); Fed.R.Civ.Proc. 42(a) (authorizing consolidation or "any other orders to avoid unnecessary cost or delay.").

A single joint trial of the seven cases to be tried in this Court would be by far the quickest and most efficient way of resolving the remaining CRT litigation in this District, which has been pending for more than seven years. Such a joint trial—including opening statements, all direct and cross examinations of both percipient and expert witnesses, and closing arguments—could be completed in a total of eight trial weeks, with that time allocated equally among Plaintiffs and Defendants collectively.[2]

---

[2] In crafting this proposal, Defendants have conferred and agreed that they will closely coordinate their presentations at trial to avoid duplication and present to the jury the most efficient case possible. The proposal of course assumes that Plaintiffs will do the same. A consequence of this coordination is that if some parties were to settle in advance of trial—either Plaintiff or Defendant—it would not necessarily follow that the total trial time should be reduced, as the remaining parties would then be required to assume responsibility for making any presentations on issues of joint applicability that had been assigned to the settling parties.

DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION OF TRIALS;
OPP. TO IPPS' & DAPs' MOTION FOR SEPARATE TRIALS

1    An eight-week joint trial, with half of that time allocated collectively to Plaintiffs, should

2    be sufficient for Plaintiffs to present their cases to the jury.  There would be fewer parties at trial

3    on the Plaintiffs' side than on the Defendants' side, meaning that, under Defendants' proposal,

4    each individual Plaintiff could be allocated more trial time than each individual Defendant.

5    Moreover, and more importantly, the IPPs and six DAPs who could appear at trial in this

6    Court all make substantially identical conspiracy allegations, and purport to rely on substantially

7    identical evidence to support them, which should allow them to significantly streamline and

8    coordinate their presentations to the jury.  Collectively, these Plaintiffs—DAPs and IPPs alike—

9    assert a similar mix of federal and state antitrust claims.  *See* Appendix 1.  All of them, with the

10   exceptions of Sharp and ViewSonic, presently assert claims based on indirect purchases and

11   therefore must prove that upstream overcharges were passed on to them.  *See* Order Adopting in

12   Part and Modifying in Part Special Master's Report and Recommendation on Defendants' Motion

13   to Dismiss the Direct Action Plaintiffs' Complaints (ECF No. 1856) at 2 ("The DAPs, despite

14   their moniker, are classified as indirect purchasers under antitrust law—not direct purchasers.").

15   Thus, Plaintiffs' suggestion that a single joint trial would be too complicated is just plain

16   wrong.  Plaintiffs are no doubt correct that their proposed DAP-only trial would itself be

17   "complex," (Mot. at 2:3-14), a statement that will be true of any trial in this litigation, however

18   structured.  The point is that adding the IPPs to Plaintiffs' proposed DAP-only trial—*i.e.*, fully

19   consolidating the cases to be tried in this Court—would not meaningfully increase the complexity

20   of that single trial, and would completely avoid the need for future trials in this Court.  As

21   explained above, the addition of the IPPs to Plaintiffs' proposed DAP-only trial would mostly

22   entail some additional expert testimony, while otherwise having little effect on the roster of

23   witnesses who would need to testify.  And while such a fully consolidated trial would certainly

24   qualify as complex, conducting multiple trials, each involving most of the same parties, issues,

25   and arguments, would be dramatically more so.

26   Indeed, Plaintiffs indicate that their proposal may not be limited to two trials.  In a

27   footnote, Plaintiffs say that if they receive an unfavorable evidentiary ruling on the admissibility

28   of Sharp's LCD guilty plea, the other DAPs will move for a separate trial of Sharp's claims.  (*See*

-6-

DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION OF TRIALS;
OPP. TO IPPS' & DAPs' MOTION FOR SEPARATE TRIALS

1    Mot. at 5, n. 10).  This would mean that, under Plaintiffs' proposal, resolving the litigation before

2    this Court would now require at least *three* trials.[3]  And it is not inconceivable that Plaintiffs could

3    seek still further multiplication of trials depending on the Court's resolution of other pretrial

4    issues.

5              Plaintiffs also rely heavily on the assertion that a fully consolidated trial involving federal

6    and state law claims would prejudice both the IPPs and DAPs because some of these Plaintiffs

7    face pass-through issues that others do not.  This argument, commonly made by plaintiffs in

8    antitrust trials, has no force here.  As a threshold matter, any potential prejudice resulting from a

9    joint trial—whether to Plaintiffs or Defendants—is properly addressed by the Court's instructions

10   and the parties' own arguments to the jury.  It is commonplace for joint trials to involve issues that

11   do not apply to every party (indeed, that will be true of any trial in this litigation), and it is equally

12   commonplace for juries to follow instructions on how to understand and resolve those issues.

13   *Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010) ("There is a strong

14   presumption that juries follow curative instructions.").  Accordingly, the risk of any theoretical

15   prejudice arising from this everyday trial issue is far outweighed here by the efficiency and

16   avoidance of inconsistency and duplication that would be achieved by a single joint trial.[4]  *See*

17   _____

18   [3] Under the pretrial schedule in this litigation, the Court will not hold its hearing on motions *in*

19   *limine*, which will presumably include the issue of Sharp's LCD guilty plea, until February 27,
     2015.  *See* ECF No. 2459.  Thus, it likely will not be known until a matter of days before trial

20   begins on March 9, 2015 whether Sharp's guilty plea will be admissible, and therefore whether
     Plaintiffs will seek two separate trials or an additional *third* trial of Sharp's claims.  Plaintiffs'

21   proposal thus would force all of the parties to attempt to prepare for trial without knowing which
     Plaintiffs' claims are to be tried and in what order.  Defendants' single trial proposal eliminates

22   this ambiguity.

23   [4] Plaintiffs rely on a trial structure order from the *LCD* case, but omit the context of that order.

24   (*See* Mot. at p. 15).  The *LCD* Court approved a single (albeit phased) trial before a single jury,
     involving both direct purchaser and indirect purchaser class plaintiffs.  *See In re TFT-LCD*

25   *Antitrust Litig.*, No. M 07-1827 SI (N.D. Cal. April 20, 2012), Dkt. No. 5518.  That trial thus
     would have involved the same pass-through issues Plaintiffs claim are prejudicial here.  That

26   approved joint trial was obviated because the IPP case was settled in its entirety before trial was to
     begin.  While the *LCD* Court approved a separate trial for the DAPs, it did so not because of any

27   prejudice concerns, but because of differences in the state of progress between the DAP and class
     cases.  Thus, the overall trial structure approved in *LCD* arguably undermines, and certainly does

28   not support, Plaintiffs' claims of prejudice here.

-7-

DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION OF TRIALS;
OPP. TO IPPS' & DAPs' MOTION FOR SEPARATE TRIALS

1    *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-1285 (2d Cir. 1990) (in exercising "broad

2    discretion" to consolidate trials, district court considers "[w]hether the specific risks of prejudice

3    and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual

4    and legal issues, the burden on parties, witnesses, and available judicial resources posed by

5    multiple lawsuits, the length of time required to conclude multiple suits as against a single one,

6    and the relative expense to all concerned of the single-trial, multiple-trial alternatives.").

7        In fact, as presently constituted, Plaintiffs' *own trial proposal* would raise exactly the same

8    pass-through issues that Plaintiffs identify as prejudicial.  Just like a fully consolidated trial,

9    Plaintiffs' proposed DAP-only trial would involve both federal and state law claims, and would

10   require resolution of issues of both "offensive" and "defensive" pass-through.  Specifically, those

11   DAPs who assert claims based on indirect purchases (which necessarily arise only under state

12   laws)—Target, Best Buy, Circuit City, and Sears/Kmart—would all need to prove that alleged

13   upstream overcharges were passed on to them.  And those DAPs who assert claims under state

14   laws that permit a pass-through defense—all of the DAPs at issue except ViewSonic—would need

15   to prove that they did not pass alleged overcharges onto their customers.  *See* Appendix 1.

16       Presumably in an effort to resolve this contradiction, four of the six DAPs at issue now say

17   they are willing to voluntarily dismiss their state law claims and thus eliminate any pass-through

18   issues relating to these claims—but only if they receive the trial structure they want.[5]  (*See* Mot. at

19   p. 4, n. 4) ("should the Court hold separate trials as proposed in this Motion, the DAPs will

20   dismiss the remainder of their state law claims.").  The inference can only be that if this Court

21   were to deny Plaintiffs' motion and fully consolidate the cases at issue for trial, these four DAPs

22   would then elect to maintain their state claims, and insist on injecting the very same pass-through

23   issues they now deem prejudicial.  That makes no sense—and in any event, these DAPs should not

24   be permitted to use their state law claims as leverage for obtaining their desired trial structure.

25       Regardless, however, the DAPs do not have a uniform position on this issue.  Best Buy has

26   filed a separate "joinder" in Plaintiffs' Motion, in which it asserts that, unlike the other DAPs, it

27   _____

28   [5] A fifth DAP, Circuit City, has filed a stipulation dismissing its state law claims regardless of the
     Court's trial structure ruling.  *See* ECF No. 2913.

1  intends to maintain its state law claim under the Minnesota Antitrust Act even if the Court adopts

2  Plaintiffs' multiple-trial proposal.  (ECF No. 2903).  Best Buy contends that its Minnesota claim

3  does not raise issues of defensive pass-through; Best Buy made the same argument, based on the

4  same authorities, in the *LCD* case, where it was squarely rejected.  *See In re TFT-LCD Antitrust*

5  *Litig.*, 2012 WL 6709621, at *7 (N.D. Cal. Dec. 26, 2012) ("The Court concludes that allowing a

6  pass-on defense is consistent with the Minnesota Antitrust Act because plaintiffs will recover their

7  'actual damages sustained.'") (citing Minn.Stat. § 325D.57).  Accordingly, Best Buy's decision to

8  maintain its state law claim, regardless of the Court's ruling on trial structure, ensures that

9  defensive pass-through issues will remain even in Plaintiffs' proposed six-DAP trial. [6]

10       Further, even if Best Buy were correct about *defensive* pass-through, it is beyond dispute

11  that its decision to maintain a state law claim based on indirect purchases will nonetheless require

12  it, like the IPPs, to prove *offensive* or upstream pass-through—*i.e.*, that any upstream overcharges

13  were passed on to Best Buy.  Thus, contrary to their assertion, Plaintiffs' *own proposal* would fail

14  to eliminate pass-through issues in the first, DAP-only trial, and conducting a separate trial of the

15  IPPs' claims would serve no purpose in this regard.  This is a serious failing, given that Plaintiffs

16  identify the supposed simplification of pass-through issues as the primary benefit of their multiple-

17  trial proposal.

18       Plaintiffs' request for multiple trials, leaving the IPPs' state law claims to be tried

19  separately at some future date, is problematic for the additional reason that the IPPs originally

20  filed their state law claims in this federal court under the Class Action Fairness Act of 2005, 28

21  U.S.C. §§ 1332(d), 1453, 1711-1715 ("CAFA"), one of the primary purposes of which was to

22  "create efficiencies in the judicial system" by allowing "overlapping" cases, like these, involving a

23  mix of federal and state law claims "to be consolidated in a single federal court."  *Freeman v. Blue*

24  *Ridge Paper Products, Inc.*, 551 F.3d 405, 408 (6th Cir. 2008) (internal quotations omitted)

25  (quoting S.Rep. No. 109-14, at 4, U.S. Code Cong & Admin.News 2005, p. 3 (2005)).  The fact

26  _____

27  [6] Best Buy also appears to agree that the IPPs should not be able to recover any damages that

28  duplicate any recovery by Best Buy and that at a minimum some sort of post-trial proceeding
would be necessary.

-9-

1    that the IPPs now oppose such consolidation, and urge a trial structure that would seriously

2    undermine judicial efficiency, is therefore contrary to the IPPs' legal basis for bringing their case

3    before this Court in the first place.

4            Plaintiffs' trial proposal would also require extensive duplication of evidence and

5    arguments, for both Plaintiffs and Defendants.  Contrary to Plaintiffs' assertion, their proposed

6    DAP-only trial could do little, if anything, to "narrow the issues" to be tried in their proposed

7    subsequent IPP trial, because virtually none of the jury's findings in the first trial would be

8    applicable or determinative in the second.  For example, the key issues of impact, pass-through,

9    overcharge, and damages are all necessarily specific to particular Plaintiffs; thus, a finding on any

10   of these issues with respect to one Plaintiff (*e.g.*, certain DAPs) could have no bearing on how

11   such issues would be resolved with respect to any other Plaintiff (*e.g.*, the IPPs).  *See, e.g., In re*

12   *Jacobson*, 676 F.3d 1193, 1201 (9th Cir. 2012) (collateral estoppel only applies to "issues of fact

13   or law that were actually litigated and necessarily decided by a valid and final judgment in a prior

14   action."); *In re Cardizem CD Antitrust Litig.*, 105 F.Supp.2d 618, 647 n. 15 (E.D. Mich. 2000)

15   (defendant not barred from litigating lack of antitrust injury by decision in prior antitrust case

16   involving different plaintiff:  "There is no collateral estoppel because the required identity of

17   issues is lacking"); *In re Microsoft Corp. Antitrust Litig.*,  232 F. Supp.2d 534, 538-539 (D. Md.

18   2002) (plaintiff could not rely on judgment in prior case that anticompetitive activity occurred to

19   avoid having to prove "injury-in-fact, antitrust injury, and causation"); *Howard Hess Dental*

20   *Laboratories v. Dentsply Int*., 516 F.Supp.2d 324, 334 (D. Del. 2007) (denying motion for

21   collateral estoppel as to issues of injury in fact, antitrust injury, and causation:  "The court declines

22   to infer that a finding of anticompetitive effects [in a prior case] necessarily implies a finding that

23   consumers . . . have been hurt") (internal quotations omitted).  Similarly, even if the jury in the

24   first DAP trial were to find that a conspiracy existed, the scope of that conspiracy—*e.g.*, what

25   products, customers, time periods, or geographical regions were included in any alleged

26   anticompetitive agreements—would remain an open question in a second IPP trial to the extent

27   such specifics were not addressed in the first DAP trial.

28

-10-

DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION OF TRIALS;
OPP. TO IPPS' & DAPs' MOTION FOR SEPARATE TRIALS

1    Similar issues were addressed in the *LCD* case:  there, one of the DAPs, Dell, filed a

2  motion arguing that jury verdicts in two prior LCD trials had preclusive effect regarding (1) the

3  duration of the alleged antitrust conspiracy; (2) the participants in the alleged conspiracy; and

4  (3) that Dell was injured by the alleged conspiracy.  Judge Illston denied the motion in its entirety,

5  holding that Dell was unable to establish collateral estoppel by showing that any of those issues

6  were specifically raised and decided in the prior trials.  *See In re TFT-LCD Antitrust Litig.*, 2012

7  WL 4858836 at *2 (N.D. Cal. Oct. 11, 2012) ("Dell has not met its burden of showing with

8  'clarity and certainty' that the three issues for which it seeks preclusion were actually determined

9  by the jury and that a determination of the issues was a 'critical and necessary part of the judgment

10  in the earlier action.'") (citations omitted).

11    In light of the above authorities, there is at the very least significant doubt as to whether

12  the key issues litigated in an initial DAP-only trial would be identical to issues raised in a

13  subsequent IPP trial, which is all that is required to prevent application of collateral estoppel.

14  *Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 912 (9th Cir. 1997) ("Collateral estoppel

15  is inappropriate if there is any doubt as to whether an issue was actually litigated in a prior

16  proceeding").  Moreover, applying collateral estoppel in favor of the IPPs under Plaintiffs'

17  proposal would run afoul of the U.S. Supreme Court's warning that plaintiffs not be allowed to

18  increase "the total amount of litigation" by adopting "a 'wait and see' attitude, in the hope that [a]

19  first action by another plaintiff will result in a favorable judgment."  *Collins v. Horton*, 505 F.3d

20  874, 881-882 (9th Cir. 2007) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

21    For similar reasons, Plaintiffs' speculation that the verdict in Plaintiffs' proposed six-DAP

22  trial will "promote settlement" of the IPP case, is dubious.  Even assuming some or all of the

23  DAPs were to prevail in Plaintiffs' proposed first trial, it is far from clear that the key factual

24  findings underlying such a verdict would have any application in a future IPP trial, and thus any

25  obvious bearing on potential IPP settlements.   In addition, even if some of the results from the

26  proposed six-DAP trial could theoretically encourage settlements in the IPP case, Plaintiffs'

27  proposal incentivizes the IPPs to delay such settlements by first awaiting the results of the DAP

28  trial.  Indeed, to date the IPPs have reached settlements with just two of the Defendant groups—a

1    multiple-trial scenario, with the IPPs waiting in the wings, is unlikely to encourage an expedient

2    improvement in that situation.

3            Thus, under Plaintiffs' proposal Defendants would have to present the vast bulk of their

4    evidence relating to these issues, including extensive expert and percipient witness testimony, on

5    two separate occasions, once in responding to the conspiracy, impact, pass-through, overcharge,

6    and damages arguments of the DAPs, and again in responding to the closely similar arguments on

7    these issues by the IPPs.  Most of these percipient witnesses reside in Asia and other foreign

8    countries and, given the likely significant time gap between Plaintiffs' proposed trials, would have

9    to travel to the United States twice.  Plaintiffs' proposal would unnecessarily burden the Court by

10   tying up its schedule for months with at least two lengthy trials, and would require an excessive

11   and unreasonable period of service by the jury.  And the inefficiencies of Plaintiffs' proposal

12   would also require duplication on the Plaintiffs' side—by being relegated to separate trials, the

13   DAPs and IPPs would be precluded from coordinating their trial presentations on the many issues

14   in this case that apply to all Plaintiffs jointly.

15           Further, because of this extensive duplication, Plaintiffs' multiple-trial proposal would

16   create a high risk of inconsistent or even contradictory verdicts with respect to the above issues,

17   which is to say almost every key issue in this litigation.[7]  Plaintiffs' only response to this

18   problem—that inconsistent verdicts are somehow "accepted" in cases like this one, (*see* Mot. at 7,

19   n. 12)—is simply wrong.  *See, e.g., Richardson v. Marsh*, 481 U.S. 200, 210 (1987) ("Joint trials

20   generally serve the interests of justice by avoiding inconsistent verdicts and enabling more

21   accurate assessment of relative culpability"); *Alabama v. Blue Bird Body Co*., 573 F.2d 309, 318

22   (5th Cir. 1978) ("inherent in the Seventh Amendment guarantee of a trial by jury is the general

23   right of a litigant to have only one jury pass on a common issue of fact").

24   _____

25   [7] The overlap between the DAP and IPP cases also poses a risk of duplicative recovery, especially
     because these Plaintiffs seek recovery at different levels of the same distribution chain based on
26   the same alleged overcharge.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 737 (1977) (risk that
     "potential plaintiffs at each level in the distribution chain" may "assert conflicting claims to a
27   common fund—the amount of the alleged overcharge" may support joining those claims in a
     single proceeding).

28

DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION OF TRIALS;
                       OPP. TO IPPS' & DAPs' MOTION FOR SEPARATE TRIALS

1    The bottom line is that Plaintiffs' multiple-trial proposal could not possibly be completed

2    in the eight weeks provided under Defendants' proposal—or anything close to it.  In fact,

3    Plaintiffs' proposal would be a perfect storm of inefficiency.  Due to the extent of overlap between

4    these Plaintiffs' theories and arguments, carving out a single Plaintiff group (the IPPs) would do

5    little, if anything, to streamline the first DAP-only trial.  And because most of the jury's findings

6    in the first trial are unlikely to have collateral estoppel or otherwise preclusive effect, virtually all

7    of issues resolved as to the Plaintiffs in the first trial would have to be retried as to the IPPs in the

8    second trial.  The result would be two highly-duplicative and equally time-consuming trials, and a

9    total trial process that could take at least twice as long to complete as the single joint trial

10   proposed by Defendants.

11                                                    **IV.**

12                                            **CONCLUSION**

13   The quickest, simplest, and most efficient manner of structuring the trial of the seven

14   actions at issue—a single joint trial—also happens to be the natural approach to resolving cases,

15   like these, involving a large number of common legal and factual issues and requiring overlapping

16   arguments and evidence.  A single joint trial would only take modestly longer to complete than the

17   *first trial* under Plaintiffs' two-trial proposal—adding only slightly more expert testimony—while

18   completely avoiding the need for a second or third trial, along with all the duplication and risk of

19   inconsistency a multiple-trial scenario would entail.  For all of these reasons, Defendants

20   respectfully request that the Court fully consolidate the cases at issue for trial.

21

22   Respectfully Submitted:  October 13, 2014

23                                    By:    _____/s/ James L. McGinnis_____
                                     SHEPPARD MULLIN RICHTER & HAMPTON LLP
24                                   Gary L. Halling, Cal. Bar No. 66087
                                     James L. McGinnis, Cal. Bar No. 95788
25                                   Michael W. Scarborough, Cal. Bar No. 203524
                                     Dylan I. Ballard, Cal. Bar No. 253929
26                                   Four Embarcadero Center, 17th Floor
                                     San Francisco, CA  94111-4109
27                                   Telephone:(415) 434-9100
                                     Facsimile: (415) 434-3947
28                                   E-mail:    ghalling@sheppardmullin.com

DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION OF TRIALS;
OPP. TO IPPS' & DAPs' MOTION FOR SEPARATE TRIALS

jmcginnis@sheppardmullin.com
mscarborough@sheppardmullin.com
dballard@sheppardmullin.com

*Attorneys for Defendants Samsung SDI America, Inc.; Samsung SDI Co., Ltd.; Samsung SDI (Malaysia) SDN. BHD.; Samsung SDI Mexico S.A. DE C.V.; Samsung SDI Brasil Ltda.; Shenzen Samsung SDI Co., Ltd. and Tianjin Samsung SDI Co., Ltd.*

By:   /s/ Jeffrey L. Kessler
WINSTON & STRAWN LLP
Jeffrey L. Kessler (pro hac vice)
A. Paul Victor (pro hac vice)
Aldo A. Badini Cal. Bar No. 257086
Eva W. Cole (pro hac vice)
Molly M. Donovan (pro hac vice)
200 Park Avenue
New York, NY 10166
Telephone:(212) 294-4692
Facsimile: (212) 294-4700
Email:  jkessler@winston.com
        abadini@winston.com
        pvictor@winston.com
        ewcole@winston.com
        mmdonovan@winston.com

WEIL, GOTSHAL & MANGES LLP
Steven A. Reiss (pro hac vice)
David L. Yohai (pro hac vice)
Adam C. Hemlock (pro hac vice)
767 Fifth Avenue
New York, NY 10153-0119
Telephone:(212) 310-8000
Facsimile: (212) 310-8007
Email:  steven.reiss@weil.com
        david.yohai@weil.com
        adam.hemlock@weil.com

*Attorneys for Defendants Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of North America, and MT Picture Display Co., Ltd.*

By:   /s/ Jon V. Swenson
BAKER BOTTS LLP
Jon V. Swenson (SBN 233054)
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone:(650) 739-7500
Facsimile: (650) 739-7699

-14-

1    Email:     jon.swenson@bakerbotts.com

2    John M. Taladay (pro hac vice)
     Joseph Ostoyich (pro hac vice)
3    Erik T. Koons (pro hac vice)
     Charles M. Malaise (pro hac vice)
4    1299 Pennsylvania Ave., N.W.
     Washington, DC 20004-2400
5    Telephone:(202) 639-7700
     Facsimile: (202) 639-7890
6    Email:   john.taladay@bakerbotts.com
                joseph.ostoyich@bakerbotts.com
7                erik.koons@bakerbotts.com
                charles.malaise@bakerbotts.com
8
     *Attorneys for Defendants Koninklijke Philips N.V. and*
9    *Philips Electronics North America Corporation*

10
     By:    */s/ Richard Snyder*
11   FRESHFIELDS BRUCKHAUS
          DERINGER US LLP
12   Terry Calvani Cal. Bar. No. 53260
     Christine Laciak(pro hac vice)
13   Richard Snyder (pro hac vice)
     701 Pennsylvania Avenue NW, Suite 600
14   Washington, D.C. 20004
     Telephone:(202) 777-4565
15   Facsimile: (202) 777-4555
     Email:   terry.calvani@freshfields.com
16              christine.laciak@freshfields.com
                richard.snyder@freshfields.com
17
     *Attorneys for Beijing-Matsushita Color CRT*
18   *Company, Ltd.*

19
     By:    */s/ Eliot A. Adelson*
20   KIRKLAND & ELLIS LLP
     Eliot A. Adelson Cal. Bar. No. 205284
21   555 California Street, 27th Floor
     San Francisco, CA 94104
22   Telephone:(415) 439-1400
     Facsimile: (415) 439-1500
23   Email:     eadelson@kirkland.com

24   *Attorneys for Defendants Hitachi, Ltd., Hitachi Displays,*
     *Ltd. (n/k/a Japan Display, Inc.), Hitachi Asia, Ltd.,*
25   *Hitachi America, Ltd., and Hitachi Electronic Devices*
     *(USA), Inc.*
26
     By:    */s/ Lucius B. Lau*
27   WHITE & CASE LLP
     Christopher M. Curran (*pro hac vice*)
28   George L. Paul (*pro hac vice*)

-15-

Lucius B. Lau (*pro hac vice*)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355
Email:   ccurran@whitecase.com
             gpaul@whitecase.com
             alau@whitecase.com

*Attorneys for Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.*


By: _____*/s/ Rachel S. Brass*_____
GIBSON, DUNN & CRUTCHER LLP
Rachel S. Brass Cal. Bar. No. 219301
Joel S. Sanders Cal. Bar. No. 107234
Austin V. Schwing Cal. Bar. No. 211696
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:  (415) 393-8200
Facsimile:  (415) 393-8306
Email:   rbrass@gibsondunn.com
             jsanders@gibsondunn.com
             aschwing@gibsondunn.com
*Attorneys for Defendants Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia)*


By: _____*/s/ Hojoon Hwang*_____
MUNGER, TOLLES & OLSON LLP
Hojoon Hwang, Cal. Bar. No. 184950
William D. Temko, Cal. Bar. No. 98858
Laura K. Lin, Cal. Bar. No. 281542
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Facsimile:  (415) 512-4077

*Attorneys For Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc.*


By: _____*/s/ Kathy L. Osborn*_____
FAEGRE BAKER DANIELS LLP
Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

-16-

1

2          Calvin L. Litsey (SBN 289659)
           Faegre Baker Daniels LLP
3          1950 University Avenue, Suite 450
           East Palo Alto, CA 94303-2279
4          Telephone:  (650) 324-6700
           Facsimile: (650) 324-6701
5          calvin.litsey@FaegreBD.com

6          *Attorneys for Defendants Thomson SA and*
           *Thomson Consumer Electronics, Inc.*

7
           By:  ____/s/ Michael T. Brody_____
8          JENNER&BLOCK LLP
           Terrence J. Truax (pro hac vice)
9          Michael T. Brody (pro hac vice)
           353 North Clark Street
10         Chicago, Illinois 60654-3456
           Telephone:  (312) 222-9350
11         Facsimile: (312) 527-0484
           ttruax@jenner.com
12         mbrody@jenner.com
           Brent Caslin (Cal. Bar. No. 198682)
13         JENNER&BLOCK LLP
           633 West Fifth Street, Suite 3600
14         Los Angeles, California 90071
           Telephone:  (213) 239-5100
15         Facsimile:  (213) 239-5199
           bcaslin@jenner.com
16
           *Attorneys for Defendants Mitsubishi Electric*
17         *Corporation, Mitsubishi Electric US, Inc., and,*
           *Mitsubishi Electric Visual Solutions America, Inc.*
18

19         Pursuant to Local Rule 5-1(i), the filer attests that the concurrence in the filing of this

20  document has been obtained from each of the above signatories.

21

22

23

24

25

26

27

28

-17-