# ATTACHMENT 2



**EUROPEAN COMMISSION**
DG Competition

Cartels
V

Brussels  **1 5 OCT. 2014**
COMP/G-5/IOS/ib  D*2014/103085

**State of California**
**Department of Justice**
*For the attention of Mr Varanini*
455 Golden Gate Avenue, Suite 11000
San Francisco CA94102-7004
United States of America

By email Emilio.Varanini@doj.ca.gov

**Subject:**   **Case AT. 39437 – TV and Computer Monitor Tubes**

Dear Mr Varanini,

1. Thank you for the letter of 15 September 2014 in which the California Attorney General asks the European Commission to provide information on the preparation of the public version of the Commission Decision in case 39437 – TV and computer monitor tubes of 5 December 2012 ('the Decision').

2. In our contacts in September, we discussed that we could provide you a description and state of play on the publication process by mid-October. As you are aware there are several appeals pending in this case at the General Court of the European Union, which also impacts the process for publication of the Decision. With the information we have recently received on planning of the hearings on those appeals, we can now update you on our publication process and describe the following key elements:

   - European Commission's legal obligations regarding the publication of its decisions in antitrust cases,

   - rules regarding protection of business secrets and other confidential information in publications,

   - progress of the European Commission's service in charge, DG Competition, in the publication process.

*Legal framework*

3. Pursuant to Article 30 of Regulation 1/2003[1] the European Commission is obliged to publish the main elements of its antitrust decisions. This obligation is met by publishing a summary of

---

[1] Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty, OJ L 1, 4.01.2003.

each decision in the Official Journal of the European Union, in all official languages of the European Union.

4. In addition – and unlike many other jurisdictions – the European Commission publishes a non-confidential version of each antitrust decisions on its website. Cartel decisions often count around 250-400 pages and contain business secrets, personal data and other confidential information that the European Commission and its staff are bound to protect[2].

5. The disclosure of business secrets and other confidential information could cause considerable harm both to the addressees of the antitrust decisions and to the private uninvolved parties and individuals. Consequently, the addressees of the antitrust decisions have the right to claim that their business secrets and other confidential information are redacted in a non-confidential version ('public version'), provided that the criteria set out by EU legislation and case law regarding professional secrecy[3] are met. In order to produce a public version of its decision, the European Commission, and more specifically DG Competition, therefore need the cooperation and feed-back from all addressees of such decision.

6. Apart from business secrets and other confidential information there are other categories of information that must also be protected, such as the following: personal data[4]; information the publication of which may jeopardize the European Commission's investigations and leniency programme (including some specific leniency information); and information to be protected to safeguard the principle of presumption of innocence[5]. Consequently, further to the redactions on the basis of claims from the parties, the Commission is obliged to introduce some *ex officio* redactions to the public versions of the decisions.

*Procedure to follow to prepare a public version*

7. Shortly after the adoption of an antitrust decision, the European Commission asks all addressees of that decision to indicate in the full text of the decision the parts that they consider to be confidential and to justify their confidentiality claims[6]. The European Commission's respective case teams assess these claims and justifications, and inform each of the parties (usually in writing) on the outcome.

8. The addressees of the European Commission's antitrust decision are given a deadline within which they need to comment in writing if they wish to uphold any of the rejected confidentiality claims. On this basis, the case team will reassess the maintained claims, take a final position and inform thereof the respective party (if the claims remain numerous, the case team may first discuss with the party to see if the party would withdraw at least part of its claims). The respective parties are also informed that they can address any further

---

[2] Article 339 of the Treaty on Functioning of the European Union ('TFEU').

[3] Such as the following case law: Case T-198/03 Bank Austria Creditanstalt / Commission [2006] ECR II-1429, para. 71; and also Case T-474/04 Pergan Hilfsstoffe für industrielle Prozesse / Commission [2007] ECR II-4225, paras. 65 et seq.

[4] Regulation (EC) No. 45/2001 of the European Parliament and of the Council of 18 December 2000 on the protection of individuals with regard to the processing of personal data by the Community institutions and bodies and on the free movement of such data, OJ L 8, 12.1.2001, p. 1–22.

[5] As established by the General Court of the European Union in case T-474/04 Pergan, the Commission must remove from the public version any references relating conduct by any third parties, which may appear in the description of the infringement in the decision, when those parties are not mentioned in the operative part of the decision (meaning that they are not addressees of the decision).

[6] Pursuant to Article 16(3) of Regulation No 773/2004 the addressees of a decision may be required, within a deadline set by the Commission, to identify any part of the decision that has been addressed to them which in their view contains business secrets and other confidential information.

disagreements to the Hearing Officer ('HO')[7]. The HO decides on such disputed confidentiality claims. Once the HO is involved, a *provisional* version of the decision – without the disputed content – will be published on the website of DG Competition.

9. A *final* non-confidential version will be published on the website of DG Competition on the basis of the decision of the HO, unless any of the addressees appeals this decision to the General Court of the European Union. In case of an appeal, the General Court may suspend the effect of the appealed HO's decision until a final judgment is rendered. In such case a final publication will be delayed until then.

10. Before publication of the public version of a Decision on the website of DG Competition, the case team presents this version to the addresses of the Decision and requests within a very short deadline that they confirm that the public version correctly reflects the agreement reached with each party on their confidentiality claims.

*Preparation of the public version of the Commission Decision in case 39437 – TV and computer monitor tubes*

11. In the case TV and computer monitor tubes, the European Commission DG Competition has fulfilled the legal obligation for publication: a summary of the Decision was published in the Official Journal of the European Union last year[8].

12. The case team is currently preparing a public version of the Decision for publication on the DG Competition website. In this case, the Decision is over 350 pages long. With a minority of the parties the case team has reached an agreement on all of their confidentiality claims, which often were very limited. Considerable progress has been made towards completion of the publication. Nevertheless, several parties continue to insist on many of their initial confidentiality claims that have been rejected in the first round of assessment of such claims. The case team is currently assessing those claims for the second time based on the further arguments that the parties have submitted and trying to determine what information claimed by the parties as confidential is confidential, including verifying whether some of that information is already in public domain. Assessing such claims and identifying whether some information is already publicly known is a time consuming exercise for a public authority.

13. Should no agreement be found with some parties following the ongoing second round of assessment, they can bring the rejection of their confidentiality claims to the HO. In that case, a provisional version of the non-confidential version of the decision can be published on the DG Competition website. At this stage, it cannot be determined yet whether a decision of the HO may become necessary, in which case the Commission would publish a provisional version (without the information that is subject to the disputed confidentiality claims).

14. I should note, however, that timing of the ongoing assessment of the confidentiality claims is impacted by the upcoming hearings in this case at the General Court of the European Union which will deal with the appeals lodged on the substance of the case by most of the companies which were addressees of the decision. The Court has recently informed the Commission that the hearings are planned for the period 11-13 November 2014. The Court will make some information available on the appeals at the hearing stage. Namely, according to the Rules of Procedure of the General Court of the European Union[9], the judge writes a report for each of

---

[7] Terms of Reference of the Hearing Officer, Decision 2011/695/EU of the President of the European Commission of 13 October 2011 on the function and terms of reference of the hearing officer in certain competition proceedings, OJ L 275, 20.10.2011, p. 29.

[8] OJ C 303, 19.10.2013, p. 13-16.-Accessible at the following internet site: http://eur-lex.europa.eu/legal-content/EN/ALL/;ELX_SESSIONID=J1XdJ7RRyphDpQY1LL1q1qj110yCF6KplQyWjQ15X5GI_CXVdBbsJJ-13071320091?uri=CELEX:52013XC1019(02)

[9] http://curia.europa.eu/jcms/upload/docs/application/pdf/2008-09/txt7_2008-09-25_14-08-6_431.pdf

the hearings, which will summarise the case and the arguments of the parties. At the end of the hearing, the Registrar draws up the minutes which constitute an official record. The parties can then inspect it and obtain copies at their own expense. With the approaching EU court hearings, the priority of the case team has to be for a while in preparations for those hearings to defend the Commission Decision.

15. Taking into account all of the above mentioned considerations, it will still take some time to finalise the public version and, therefore, at this stage no precise publication date can be given. Nevertheless, the case team gives its best effort in completing a public version of the decision still during this autumn or at least publishing a provisional version before the European Commission Christmas holidays break.

Yours sincerely,

Sari SUURNAKKI
Deputy Head of Unit