# EXHIBIT A



# Commercial Dispute Resolution Procedures

## (INCLUDING MEDIATION AND ARBITRATION RULES)

*As Amended and Effective on January 1, 1999*

**American Arbitration Association**

*Dispute Resolution Services Worldwide*

# INTRODUCTION

Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

The American Arbitration Association (AAA), a public service, not-for-profit organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, families, communities, and all levels of government. Services are available through AAA headquarters in New York and through offices located in major cities throughout the United States. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on all forms of out-of-court dispute settlement.

## Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

> *Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the*

*arbitrator(s) may be entered in any court
having jurisdiction thereof.*

Arbitration of existing disputes may be
accomplished by use of the following:

*We, the undersigned parties, hereby agree to
submit to arbitration administered by the
American Arbitration Association under its
Commercial Arbitration Rules the following
controversy: (describe briefly). We further agree
that the above controversy be submitted to
(one) (three) arbitrator(s). We further agree
that we will faithfully observe this agreement
and the rules, that we will abide by and
perform any award rendered by the
arbitrator(s), and that a judgment of any
court having jurisdiction may be entered on
the award.*

In transactions likely to require emergency
interim relief, the parties may wish to add to
their clause the following language:

*The parties also agree that the AAA Optional
Rules for Emergency Measures of Protection
shall apply to the proceedings.*

These Optional Rules may be found at pages
43 of this pamphlet.

The services of the AAA are generally
concluded with the transmittal of the award.
Although there is voluntary compliance with
the majority of awards, judgment on the award
can be entered in a court having appropriate
jurisdiction if necessary.

## Administrative Fees

The AAA's administrative fees are based on
service charges. There is a filing fee based on
the amount of the claim or counterclaim,
ranging from $500 on claims below $10,000 to
a negotiated amount for claims in excess of $5

million. In addition, there are service charges
for hearings and postponements. This fee
information, which is included with these
rules, allows the parties to exercise control
over their administrative fees.

The fees cover AAA administrative services;
they do not cover arbitrator compensation or
expenses, if any, reporting services, or any
post-award charges incurred by the parties in
enforcing the award.

## Mediation

The parties might wish to submit their dispute
to mediation prior to arbitration. In
mediation, the neutral mediator assists the
parties in reaching a settlement but does not
have the authority to make a binding decision
or award. Mediation is administered by the
AAA in accordance with its Commercial
Mediation Rules. There is no additional
administrative fee where parties to a pending
arbitration attempt to mediate their dispute
under the AAA's auspices.

If the parties want to adopt mediation as a
part of their contractual dispute settlement
procedure, they can insert the following
mediation clause into their contract in
conjunction with a standard arbitration
provision:

*If a dispute arises out of or relates to this
contract, or the breach thereof, and if the
dispute cannot be settled through negotiation,
the parties agree first to try in good faith to
settle the dispute by mediation administered by
the American Arbitration Association under
its Commercial Mediation Rules before
resorting to arbitration, litigation, or some
other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission:

*The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Rules. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

## Large, Complex Cases

Unless the parties agree otherwise, the Optional Procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $1,000,000 exclusive of claimed interest, arbitration fees and costs, *and* in which either (1) all parties have elected to have the Procedures apply to the resolution of their dispute; or (2) a court or governmental agency of competent jurisdiction has determined that a dispute should be resolved before the AAA pursuant to the Procedures.

The key features of these Procedures include:

- a highly qualified, trained Roster of Neutrals;
- a mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference;
- broad arbitrator authority to order and control discovery, including depositions;
- presumption that hearings will proceed on a consecutive or block basis.

# COMMERCIAL MEDIATION RULES

## M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association (AAA) or under these rules, they shall be deemed to have made these rules, as amended and in effect as of the date of the submission of the dispute, a part of their agreement.

## M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation by filing with the AAA a submission to mediation or a written request for mediation pursuant to these rules, together with the appropriate Filing Fee (page 10). Where there is no submission to mediation or contract providing for mediation, a party may request the AAA to invite another party to join in a submission to mediation. Upon receipt of such a request, the AAA will contact the other parties involved in the dispute and attempt to obtain a submission to mediation.

## M-3. Requests for Mediation

A request for mediation shall contain a brief statement of the nature of the dispute and the names, addresses, and telephone numbers of all parties to the dispute and those who will represent them, if any, in the mediation. The initiating party shall simultaneously file two copies of the request with the AAA and one copy with every other party to the dispute.

## M-4. Appointment of the Mediator

Upon receipt of a request for mediation, the AAA will appoint a qualified mediator to

serve. Normally, a single mediator will be appointed unless the parties agree otherwise or the AAA determines otherwise. If the agreement of the parties names a mediator or specifies a method of appointing a mediator, that designation or method shall be followed.

## M-5. Qualifications of the Mediator

No person shall serve as a mediator in any dispute in which that person has any financial or personal interest in the result of the mediation, except by the written consent of all parties. Prior to accepting an appointment, the prospective mediator shall disclose any circumstance likely to create a presumption of bias or prevent a prompt meeting with the parties. Upon receipt of such information, the AAA shall either replace the mediator or immediately communicate the information to the parties for their comments. In the event that the parties disagree as to whether the mediator shall serve, the AAA will appoint another mediator. The AAA is authorized to appoint another mediator if the appointed mediator is unable to serve promptly.

## M-6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise.

## M-7. Representation

Any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

## M-8. Date, Time, and Place of Mediation

The mediator shall fix the date and the time of each mediation session. The mediation shall be held at the appropriate regional office of the AAA, or at any other convenient location agreeable to the mediator and the parties, as the mediator shall determine.

## M-9. Identification of Matters in Dispute

At least ten days prior to the first scheduled mediation session, each party shall provide the mediator with a brief memorandum setting forth its position with regard to the issues that need to be resolved. At the discretion of the mediator, such memoranda may be mutually exchanged by the parties.

At the first session, the parties will be expected to produce all information reasonably required for the mediator to understand the issues presented.

The mediator may require any party to supplement such information.

## M-10. Authority of the Mediator

The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. The mediator is authorized to conduct joint and separate meetings with the parties and to make oral and written recommendations for settlement. Whenever necessary, the mediator may also obtain expert advice concerning technical aspects of the dispute, provided that the parties agree and assume the expenses of obtaining such advice. Arrangements for obtaining such advice shall be made by the mediator or the parties, as the mediator shall determine.

The mediator is authorized to end the mediation whenever, in the judgment of the mediator, further efforts at mediation would not contribute to a resolution of the dispute between the parties.

## M-11. Privacy

Mediation sessions are private. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## M-12. Confidentiality

Confidential information disclosed to a mediator by the parties or by witnesses in the course of the mediation shall not be divulged by the mediator. All records, reports, or other documents received by a mediator while serving in that capacity shall be confidential. The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding:

a. views expressed or suggestions made by another party with respect to a possible settlement of the dispute;

b. admissions made by another party in the course of the mediation proceedings;

c. proposals made or views expressed by the mediator; or

d. the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

– 8 –

## M-13. No Stenographic Record

There shall be no stenographic record of the mediation process.

## M-14. Termination of Mediation

The mediation shall be terminated:

a. by the execution of a settlement agreement by the parties;

b. by a written declaration of the mediator to the effect that further efforts at mediation are no longer worthwhile; or

c. by a written declaration of a party or parties to the effect that the mediation proceedings are terminated.

## M-15. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation.

Neither the AAA nor any mediator shall be liable to any party for any act or omission in connection with any mediation conducted under these rules.

## M-16. Interpretation and Application of Rules

The mediator shall interpret and apply these rules insofar as they relate to the mediator's duties and responsibilities. All other rules shall be interpreted and applied by the AAA.

## M-17. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the mediation, including required traveling and other expenses of the mediator and representatives of the AAA, and the expenses of any witness and the cost of any

– 9 –

proofs or expert advice produced at the direct request of the mediator, shall be borne equally by the parties unless they agree otherwise.

## ADMINISTRATIVE FEES

### The Filing Fee

The case filing or set-up fee is $150 per party.

Additionally, the parties are charged a fee based on the number of hours of mediator time. The hourly fee is for the compensation of both the mediator and the AAA and varies according to region. Check with your local office for specific availability and rates.

There is no charge to the filing party where the AAA is requested to invite other parties to join in a submission to mediation. However, if a case settles after AAA involvement but prior to dispute resolution, the filing party will be charged a $150 filing fee.

The expenses of the AAA and the mediator, if any, are generally borne equally by the parties. The parties may vary this arrangement by agreement.

Where the parties have attempted mediation under these rules but have failed to reach a settlement, the AAA will apply the administrative fee for the mediation toward subsequent AAA arbitration filed with the AAA within ninety days of the termination of the mediation.

### Deposits

Before the commencement of mediation, the parties shall each deposit such portion of the fee covering the cost of mediation as the AAA shall direct and all appropriate additional sums that the AAA deems necessary to defray the expenses of the proceeding. When the mediation has terminated, the AAA shall render an accounting and return any unexpended balance to the parties.

### Refunds

Once the parties agree to mediate, no refund of the administrative fee will be made.

# COMMERCIAL ARBITRATION RULES

## R-1. Agreement of Parties*

The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the demand for arbitration or submission agreement is received by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules.

## R-2. AAA and Delegation of Duties

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

## R-3. National Panel of Arbitrators

The AAA shall establish and maintain a National Panel of Commercial Arbitrators and shall appoint arbitrators as provided in these rules. The term "arbitrator" in these rules refers to the arbitration panel, whether composed of one or more arbitrators and whether the arbitrators are neutral or party-appointed.

---

* A dispute arising out of an employment relationship will be administered under the AAA's National Rules for the Resolution of Employment Disputes, unless all parties agree otherwise after the commencement of AAA administration.

## R-4. Initiation under an Arbitration Provision in a Contract

(a) Arbitration under an arbitration provision in a contract shall be initiated in the following manner:

  i. The initiating party (the "claimant") shall, within the time period, if any, specified in the contract(s), give to the other party (the "respondent") written notice of its intention to arbitrate (the "demand"), which demand shall contain a statement setting forth the nature of the dispute, the names and addresses of all other parties, the amount involved, if any, the remedy sought, and the hearing locale requested.

  ii. The claimant shall file at any office of the AAA two copies of the demand and two copies of the arbitration provisions of the contract, together with the appropriate filing fee as provided in the schedule included with these rules.

  iii. The AAA shall confirm notice of such filing to the parties.

(b) A respondent may file an answering statement in duplicate with the AAA within 15 days after confirmation of notice of filing of the demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of the answering statement to the claimant. If a counterclaim is asserted, it shall contain a statement setting forth the nature of the counterclaim, the amount involved, if any, and the remedy sought. If a counterclaim is made, the party making the counterclaim shall forward

to the AAA with the answering statement the appropriate fee provided in the schedule included with these rules.

(c) If no answering statement is filed within the stated time, respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

(d) When filing any statement pursuant to this section, the parties are encouraged to provide descriptions of their claims in sufficient detail to make the circumstances of the dispute clear to the arbitrator.

## R-5.  Initiation under a Submission

Parties to any existing dispute may commence an arbitration under these rules by filing at any office of the AAA two copies of a written submission to arbitrate under these rules, signed by the parties. It shall contain a statement of the nature of the dispute, the names and addresses of all parties, any claims and counterclaims, the amount involved, if any, the remedy sought, and the hearing locale requested, together with the appropriate filing fee as provided in the schedule included with these rules.  Unless the parties state otherwise in the submission, all claims and counterclaims will be deemed to be denied by the other party.

## R-6.  Changes of Claim

After filing of a claim, if either party desires to make any new or different claim or counterclaim, it shall be made in writing and filed with the AAA.  The party asserting such a claim or counterclaim shall provide a copy to the other party, who shall have 15 days from the date of such transmission within which to file an answering statement with the AAA.

After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

## R-7.  Applicable Procedures

Unless the parties or the AAA in its discretion determines otherwise, the Expedited Procedures shall be applied in any case where no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration costs. Parties may also agree to use the Expedited Procedures in cases involving claims in excess of $75,000. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures. All other cases shall be administered in accordance with Sections R-1 through R-56 of these rules.

## R-8.  Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the

claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## R-9. Mediation

At any stage of the proceedings, the parties may agree to conduct a mediation conference under the Commercial Mediation Rules in order to facilitate settlement. The mediator shall not be an arbitrator appointed to the case. Where the parties to a pending arbitration agree to mediate under the AAA's rules, no additional administrative fee is required to initiate the mediation.

## R-10. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, potential mediation of the dispute, potential exchange of information, a timetable for hearings and any other administrative matters. There is no administrative fee for this service.

## R-11. Fixing of Locale

The parties may mutually agree on the locale where the arbitration is to be held. If any party requests that the hearing be held in a specific locale and the other party files no objection thereto within 15 days after notice of the request has been sent to it by the AAA, the locale shall be the one requested. If a party objects to the locale requested by the other party, the AAA shall have the power to determine the locale, and its decision shall be final and binding.

## R-12. Qualifications of an Arbitrator

(a) Any neutral arbitrator appointed pursuant to Section R-13, R-14, R-15, or E-5, or selected by mutual choice of the parties or their appointees, shall be subject to disqualification for the reasons specified in Section R-19. If the parties specifically so agree in writing, the arbitrator shall not be subject to disqualification for those reasons.

(b) Unless the parties agree otherwise, an arbitrator selected unilaterally by one party is a party-appointed arbitrator and is not subject to disqualification pursuant to Section R-19.

## R-13. Appointment from Panel

If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:

(a) Immediately after the filing of the submission or the answering statement or the expiration of the time within which the answering statement is to be filed, the AAA shall send simultaneously to each party to the dispute an identical list of names of persons chosen from the panel. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

(b) If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 15 days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all

persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the panel without the submission of additional lists.

(c) Unless the parties have agreed otherwise no later than 15 days after the commencement of an arbitration, if the notice of arbitration names two or more claimants or two or more respondents, the AAA shall appoint all the arbitrators.

## R-14.  Direct Appointment by a Party

(a) If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed. The notice of appointment, with the name and address of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the panel from which the party may, if it so desires, make the appointment.

(b) If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

(c) If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 15 days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

## R-15.  Appointment of Neutral Arbitrator by Party-Appointed Arbitrators or Parties

(a) If the parties have selected party-appointed arbitrators, or if such arbitrators have been appointed as provided in Section R-14, and the parties have authorized them to appoint a neutral arbitrator within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint a neutral arbitrator, who shall act as chairperson.

(b) If no period of time is specified for appointment of the neutral arbitrator and the party-appointed arbitrators or the parties do not make the appointment within 15 days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the neutral arbitrator, who shall act as chairperson.

(c) If the parties have agreed that their party-appointed arbitrators shall appoint the neutral arbitrator from the panel, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-13, a list selected from the panel, and the appointment of the neutral arbitrator shall be made as provided in that section.

## R-16. Nationality of Arbitrator

Where the parties are nationals or residents of different countries, the AAA, at the request of any party or on its own initiative, may appoint as a neutral arbitrator a national of a country other than that of any of the parties. The request must be made prior to the time set for the appointment of the arbitrator as agreed by the parties or set by these rules.

## R-17. Number of Arbitrators

If the arbitration agreement does not specify the number of arbitrators, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators be appointed. The parties may request three arbitrators in their demand or answer, which request the AAA will consider in exercising its discretion regarding the number of arbitrators appointed to the dispute.

## R-18. Notice to Arbitrator of Appointment

Notice of the appointment of the neutral arbitrator, whether appointed mutually by the parties or by the AAA, shall be sent to the arbitrator by the AAA, together with a copy of these rules, and the signed acceptance of the arbitrator shall be filed with the AAA prior to the opening of the first hearing.

## R-19. Disclosure and Challenge Procedure

(a) Any person appointed as a neutral arbitrator shall disclose to the AAA any circumstance likely to affect impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or

their representatives. Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

(b) Upon objection of a party to the continued service of a neutral arbitrator, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive.

## R-20. Communication with Arbitrator

(a) No party and no one acting on behalf of any party shall communicate unilaterally concerning the arbitration with a neutral arbitrator or a candidate for neutral arbitrator. Unless the parties agree otherwise or the arbitrator so directs, any communication from the parties to a neutral arbitrator shall be sent to the AAA for transmittal to the arbitrator.

(b) The parties or the arbitrators may also agree that once the panel has been constituted, no party and no one acting on behalf of any party shall communicate unilaterally concerning the arbitration with any party-appointed arbitrator.

## R-21. Vacancies

(a) If for any reason an arbitrator is unable to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules.

(b) In the event of a vacancy in a panel of neutral arbitrators after the hearings

have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

(c) In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## R-22. Preliminary Hearing

(a) At the request of any party or at the discretion of the arbitrator or the AAA, the arbitrator may schedule as soon as practicable a preliminary hearing with the parties and/or their representatives. The preliminary hearing may be conducted by telephone at the arbitrator's discretion. There is no administrative fee for the first preliminary hearing.

(b) During the preliminary hearing, the parties and the arbitrator should discuss the future conduct of the case, including clarification of the issues and claims, a schedule for the hearings and any other preliminary matters.

## R-23. Exchange of Information

(a) At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called.

(b) At least five (5) business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

(c) The arbitrator is authorized to resolve any disputes concerning the exchange of information.

## R-24. Date, Time, and Place of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

## R-25. Attendance at Hearings

The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary. Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person other than a party and its representatives.

## R-26. Representation

Any party may be represented by counsel or other authorized representative. A party intending to be so represented shall notify the other party and the AAA of the name and address of the representative at least three days prior to the date set for the hearing at which that person is first to appear. When such a representative initiates an arbitration or responds for a party, notice is deemed to have been given.

## R-27. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

## R-28. Stenographic Record

Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three days in advance of the hearing. The requesting party or parties shall pay the cost of the record. If the transcript is agreed by the parties, or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

## R-29. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

## R-30. Postponements

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative. A party or parties causing a postponement of a hearing will be charged a postponement fee, as set forth in the administrative fee schedule.

## R-31. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

## R-32. Conduct of Proceedings

(a) The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

(b) The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

(c) The parties may agree to waive oral hearings in any case.

## R-33. Evidence

(a) The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of

evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default or has waived the right to be present.

(b) The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

(c) The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

(d) An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

## R-34. Evidence by Affidavit and Posthearing Filing of Documents or Other Evidence

(a) The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission.

(b) If the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

## R-35. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

## R-36. Interim Measures**

(a) The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

(b) Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

(c) A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

## R-37. Closing of Hearing

The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

---

** The Optional Rules may be found at pages 43 of this pamphlet.

Case 3:07-cv-06040-CRD Document 2021-2 Filed 10/19/04 Page 17 of 50

If briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided in Section R-34 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the closing date of the hearing. The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing.

## R-38. Reopening of Hearing

The hearing may be reopened on the arbitrator's initiative, or upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. When no specific date is fixed in the contract, the arbitrator may reopen the hearing and shall have 30 days from the closing of the reopened hearing within which to make an award.

## R-39. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

## R-40. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.

## R-41. Serving of Notice

(a) Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

(b) The AAA, the arbitrator and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (E-mail), or other methods of communication.

(c) Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

## R-42. Majority Decision

When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement, a majority of the arbitrators must make all decisions.

## R-43.  Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing the hearing, or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

## R-44.  Form of Award

(a) Any award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the manner required by law.

(b) The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.

## R-45.  Scope of Award

(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

(b) In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

(c) In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-51, R-52, and R-53. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

(d) The award of the arbitrator(s) may include: (a) interest at such rate and from such date as the arbitrator(s) may deem appropriate; and (b) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.

## R-46.  Award upon Settlement

If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award."

## R-47.  Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

## R-48.  Modification of Award

Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other parties shall be given 10 days to respond to the request. The arbitrator shall dispose of

the request within 20 days after transmittal by the AAA to the arbitrator of the request and any response thereto.

## R-49. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party, furnish to the party, at the party's expense, certified copies of any papers in the AAA's possession that may be required in judicial proceedings relating to the arbitration.

## R-50. Applications to Court and Exclusion of Liability

(a) No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary party in judicial proceedings relating to the arbitration.

(c) Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

(d) Neither the AAA nor any arbitrator shall be liable to any party for any act or omission in connection with any arbitration conducted under these rules.

## R-51. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees and service charges to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable.

The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award.

The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

## R-52. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

## R-53. Neutral Arbitrator's Compensation

(a) Unless the parties agree otherwise, members of the National Panel of Commercial Arbitrators appointed as neutrals on cases administered under the Expedited Procedures with claims not exceeding $10,000, will customarily serve without compensation for the first day of service. Thereafter, arbitrators shall receive compensation as set forth herein.

(b) Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation, beginning with the first day of hearing in all cases with claims exceeding $10,000.

(c) If there is disagreement concerning the terms of compensation, an appropriate

rate shall be established with the arbitrator by the AAA and confirmed to the parties.

(d) Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

## R-54. Deposits

The AAA may require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case.

## R-55. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

## R-56. Suspension for Nonpayment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

## EXPEDITED PROCEDURES

### E-1. Applicability

Unless the parties or the AAA determines otherwise, these procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration fees and costs. Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases in which there is no disclosed monetary claim or in cases involving more than two parties.

### E-2. Limitation on Extensions

Except in extraordinary circumstances, the AAA or the arbitrator may grant a party no more than one seven-day extension of time to respond to the demand for arbitration or counterclaim as provided in Section R-4.

### E-3. Changes of Claim or Counterclaim

A claim or counterclaim may be increased in amount, or a new or different claim or counterclaim added, upon the agreement of the other party, or the consent of the arbitrator. After the arbitrator is appointed, however, no new or different claim or counterclaim may be submitted except with the arbitrator's consent.

If an increased claim or counterclaim exceeds $75,000, the case will be administered under the regular procedures unless all parties and the arbitrator agree that the case may continue to be processed under the Expedited Procedures.

## E-4. Serving of Notices

In addition to notice provided by Section R-41(b), the parties shall also accept notice by telephone. Telephonic notices by the AAA shall subsequently be confirmed in writing to the parties. Should there be a failure to confirm in writing any such oral notice, the proceeding shall nevertheless be valid if notice has, in fact, been given by telephone.

## E-5. Appointment and Qualifications of Arbitrator

(a) The AAA shall simultaneously submit to each party an identical list of five proposed arbitrators drawn from its panel from which one arbitrator shall be appointed.

(b) The parties are encouraged to agree to an arbitrator from this list and to advise the AAA of their agreement. If the parties are unable to agree upon an arbitrator, each party may strike two names from the list and return it to the AAA within seven days from the date of the AAA's mailing to the parties. If for any reason the appointment of an arbitrator cannot be made from the list, the AAA may make the appointment from other members of the panel without the submission of additional lists.

(c) The parties will be given notice by the AAA of the appointment of the arbitrator, who shall be subject to disqualification for the reasons specified in Section R-19. The parties shall notify the AAA within seven days of any objection to the arbitrator appointed. Any such objection shall be for cause and shall be confirmed in writing to the AAA with a copy to the other party or parties.

## E-6. Exchange of Exhibits

At least two business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. The arbitrator shall resolve disputes concerning the exchange of exhibits.

## E-7. Proceedings on Documents

Where no party's claim exceeds $10,000, exclusive of interest and arbitration costs, and other cases in which the parties agree, the dispute shall be resolved by submission of documents, unless any party requests an oral hearing, or the arbitrator determines that an oral hearing is necessary. The arbitrator shall establish a fair and equitable procedure for the submission of documents.

## E-8. Date, Time, and Place of Hearing

There shall not be an administrative conference. In cases in which a hearing is to be held, the arbitrator shall set the date, time, and place of the hearing, to be scheduled to take place within 30 days of confirmation of the arbitrator's appointment. The AAA will notify the parties in advance of the hearing date.

## E-9. The Hearing

(a) Generally, the hearing shall not exceed one day. Each party shall have equal opportunity to submit its proofs and complete its case. The arbitrator shall determine the order of the hearing, and may require further submission of documents within two days after the hearing. For good cause shown, the

arbitrator may schedule additional
hearings within seven business days after
the initial day of hearings.

(b) Generally, there will be no stenographic
record.  Any party desiring a
stenographic record may arrange for
one pursuant to the provisions of
Section R-28.

## E-10.  Time of Award

Unless otherwise agreed by the parties, the
award shall be rendered not later than
fourteen days from the date of the closing of
the hearing or, if oral hearings have been
waived, from the date of the AAA's transmittal
of the final statements and proofs to the
arbitrator.

## OPTIONAL PROCEDURES FOR LARGE, COMPLEX COMMERCIAL DISPUTES

### L-1.  Applicability

(a) Unless the parties agree otherwise, these
Optional Procedures for Large,
Complex Commercial Disputes
(hereinafter "Procedures") shall apply to
all cases administered by the AAA under
the Commercial Arbitration Rules in
which the disclosed claim or
counterclaim of any party is at least
$1,000,000 exclusive of claimed interest,
arbitration fees and costs, and in which
either (1) all parties have elected to have
the Procedures apply to the resolution
of their dispute; or (2) a court or
governmental agency of competent
jurisdiction has determined that a
dispute should be resolved before the
AAA pursuant to the procedures.  Parties
may also agree to using the Procedures
in cases involving claims or
counterclaims under $1,000,000, in non-
monetary cases or in cases involving
claims of undetermined amount. The
Procedures are designed to complement
the Regular Commercial Arbitration
Rules.  To the extent that there is any
variance between such rules and these
Procedures, the Procedures shall
control. Any such cases are herein
referred to as Large, Complex Cases.

(b) The parties to any arbitration
proceeding that is to be subject to the
Procedures may, prior to the
appointment of the arbitrator(s) and by
consent of all parties, agree to eliminate,
modify or alter any of the Procedures,

and, in such case, these Procedures as so modified or altered shall apply to that particular case. After appointment of the arbitrator(s), such modifications may be made only with the consent of the arbitrator(s).

## L-2. Administrative Conference

Prior to the dissemination of a list of potential arbitrators, the AAA shall, unless it determines same to be unnecessary, conduct an administrative conference with the parties and/or their attorneys or other representatives, either in person or by conference call, at the discretion of the AAA. Such administrative conference shall be conducted for the following purposes and for such additional purposes as the parties or the AAA may deem appropriate:

(a) to obtain additional information about the nature and magnitude of the dispute and the anticipated length of hearing and scheduling;

(b) to discuss the views of the parties about the technical and other qualifications of the arbitrators;

(c) to obtain conflicts statements from the parties; and

(d) to consider, with the parties, whether mediation or other non-adjudicative methods of dispute resolution might be appropriate.

## L-3. Arbitrators

(a) Large, Complex Commercial Cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. If the parties are unable to agree upon the number of

arbitrators, then three arbitrator(s) shall hear and determine the case.

(b) The AAA shall appoint arbitrator(s) as agreed by the parties. If they are unable to agree on a method of appointment, the AAA shall appoint arbitrators from the Large, Complex Commercial Case Panel, in the manner provided in the Regular Commercial Arbitration Rules. Absent agreement of the parties, the arbitrator(s) shall not have served as the mediator in the mediation phase of the instant proceeding.

## L-4. Preliminary Hearing

As promptly as practicable after the selection of the arbitrator(s), a preliminary hearing shall be held among the parties and/or their attorneys or other representatives and the arbitrator(s). With the consent of the arbitrator(s) and the parties, the preliminary hearing may: (a) be conducted by the Chair of the panel rather than all the arbitrator(s); (b) be conducted by telephone conference call rather than in person; or (c) be omitted.

At the preliminary hearing the matters to be considered shall include, without limitation: (a) service of a detailed statement of claims, damages and defenses, a statement of the issues asserted by each party and positions with respect thereto, and any legal authorities the parties may wish to bring to the attention of the arbitrator(s); (b) stipulations to uncontested facts; (c) the extent to which discovery shall be conducted; (d) exchange and premarking of those documents which each party believes may be offered at the hearing; (e) the identification and availability of witnesses, including experts, and such matters with respect to witnesses including

their biographies and expected testimony as may be appropriate; (f) whether, and the extent to which, any sworn statements and/or depositions may be introduced; (g) the extent to which hearings will proceed on consecutive days; (h) whether a stenographic or other official record of the proceedings shall be maintained; and (i) the possibility of utilizing mediation or other non-adjudicative methods of dispute resolution.

## L-5. Management of Proceedings

(a) Arbitrators shall take such steps as they may deem necessary or desirable to avoid delay and to achieve a just, speedy and cost-effective resolution of Large, Complex Commercial Cases.

(b) Parties shall cooperate in the exchange of documents, exhibits and information within such party's control if the arbitrator(s) consider such production to be consistent with the goal of achieving a just, speedy and cost-effective resolution of a Large, Complex Commercial Case.

(c) The parties may conduct such document discovery as may be agreed to by all the parties provided, however, that the arbitrator(s) may place such limitations on the conduct of such discovery as the arbitrator(s) shall deem appropriate. If the parties cannot agree on document discovery, the arbitrator(s) for good cause shown and consistent with the expedited nature of arbitration, may establish the extent of same.

(d) The arbitrator(s) upon good cause shown may order the conduct of the deposition of, or the propounding of

interrogatories to, such persons who may possess information determined by the arbitrator(s) to be necessary to a determination of a Large, Complex Commercial Case.

(e) Generally hearings will be scheduled on consecutive days or in blocks of consecutive days in order to maximize efficiency and minimize costs.

(f) The arbitrator(s) may direct the recording of the hearings, the cost of which shall be borne equally by the parties.

## OPTIONAL RULES FOR EMERGENCY MEASURES OF PROTECTION

### O-1. Applicability

Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

### O-2. Appointment of Emergency Arbitrator

Within one business day of receipt of notice as provided in Section O-1, the AAA shall appoint a single emergency arbitrator from a special AAA panel of emergency arbitrators

designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed in the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

## O-3. Schedule

The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone conference or on written submissions as alternatives to a formal hearing.

## O-4. Interim Award

If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim award granting the relief and stating the reasons therefor.

## O-5. Constitution of the Panel

Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

## O-6. Security

Any interim award of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

## O-7. Special Master

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in Section O-1 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

## O-8. Costs

The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the panel to determine finally the apportionment of such costs.

## ADMINISTRATIVE FEES

The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

### Filing Fees

A nonrefundable filing fee is payable in full by a filing party when a claim, counterclaim or additional claim is filed, as provided below.

| Amount of Claim | Filing Fee |
|---|---|
| Up to $10,000 | $500 |
| Above $10,000 to $50,000 | $750 |
| Above $50,000 to $100,000 | $1,250 |
| Above $100,000 to $250,000 | $2,000 |
| Above $250,000 to $500,000 | $3,500 |
| Above $500,000 to $1,000,000 | $5,000 |
| Above $1,000,000 to $5,000,000 | $7,000 |
| Above $5,000,000 | Negotiated |

When no amount can be stated at the time of filing, the minimum fee is $2,000, subject to increase when the claim or counterclaim is disclosed.

When a claim or counterclaim is not for a monetary amount, an appropriate filing fee will be determined by the AAA.

The minimum filing fee for any case having three or more arbitrators is $2,000.

Expedited Procedures are applied in any case where no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration cost.

### Hearing Fees

For each day of hearing held before a single arbitrator, an administrative fee of $150 is payable by each party.

For each day of hearing held before a multi-arbitrator panel, an administrative fee of $250 is payable by each party.

There is no AAA hearing fee for the initial Procedural Hearing.

There is no hearing fee for the initial hearing in cases in which no party's claim exceeds $10,000, administered under the Expedited Procedures.

### Postponement/Cancellation Fees

A fee of $150 is payable by a party causing a postponement/cancellation of any hearing scheduled before a single arbitrator.

A fee of $250 is payable by a party causing a postponement/cancellation of any hearing scheduled before a multiarbitrator panel.

### Hearing Room Rental

The Hearing Fees described above do not cover the rental of hearing rooms, which are available on a rental basis. Check with the AAA for availability and rates.

## NOTES

Rules, forms, procedures and guides are
subject to periodic change and updating.
To ensure that you have the most current
information, see our World Wide Web
home page at **http://www.adr.org**

©1999, all rights are reserved by
the American Arbitration Association.



AAA235-10M-11/98

**EXHIBIT B**



# *International Arbitration Rules*

*As Amended and Effective April 1, 1997*



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

AAA175-10M-3/97

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Rules, forms, procedures and guides are subject to periodic change and updating. To ensure that you have the most current information, see our World Wide Web home page at http://www.adr.org

©1997, all rights are reserved by the American Arbitration Association.

# INTRODUCTION

The world business community uses arbitration to resolve commercial disputes arising in the global marketplace. Supportive laws are in place. The New York Convention of 1958 has been widely adopted, providing a favorable legislative climate. Arbitration clauses are enforced. International commercial arbitration awards are recognized by national courts in most parts of the world, even more than foreign court judgments.

Arbitration institutions have been established in many countries to administer international cases. Many have entered into cooperative arrangements with the American Arbitration Association.

These International Arbitration Rules have been developed to encourage greater use of such services. By providing for arbitration under these rules, parties can avoid the uncertainty of having to petition a local court to resolve procedural impasses.

These rules are intended to provide effective arbitration services to world business through the use of administered arbitration.

Parties can arbitrate future disputes under these rules by inserting the following clause into their contracts:

*"Any controversy or claim arising out of or relating to this contract shall be determined by arbitration in accordance with the International Arbitration Rules of the American Arbitration Association."*

The parties may wish to consider adding:
(a) "The number of arbitrators shall be (one or three)";
(b) "The place of arbitration shall be (city and/or country)"; or
(c) "The language(s) of the arbitration shall be _____."

Parties are encouraged, when writing their contracts or when a dispute arises, to request a

– 1 –

conference, in person or by telephone, with the AAA, to discuss an appropriate method for selection of arbitrators or any other matter that might facilitate efficient arbitration of the dispute.

Under these rules, the parties are free to adopt any mutually agreeable procedure for appointing arbitrators, or may designate arbitrators upon whom they agree. Parties can reach agreements concerning appointing arbitrators either when writing their contracts or after a dispute has arisen. This flexible procedure permits parties to utilize whatever method they consider best suits their needs. For example, parties may choose to have a sole arbitrator or a tribunal of three or more. They may agree that arbitrators shall be appointed by the AAA, or that each side shall designate one arbitrator and those two shall name a third, with the AAA making appointments if the tribunal is not promptly formed by that procedure. Parties may mutually request the AAA to submit to them a list of arbitrators from which each can delete names not acceptable to it, or the parties may instruct the AAA to appoint arbitrators without the submission of lists, or may leave that matter to the sole discretion of the AAA. Parties also may agree on a variety of other methods for establishing the tribunal. In any event, if parties are unable to agree on a procedure for appointing arbitrators or on the designation of arbitrators, the AAA, after inviting consultation by the parties, will appoint the arbitrators. The rules thus provide for the fullest exercise of party autonomy, while assuring that the AAA is available to act if the parties cannot reach mutual agreement.

Whenever a singular term is used in the rules, such as "party," "claimant" or "arbitrator," that term shall include the plural if there is more than one such entity.

Parties may wish to consider the possibility of mediation or conciliation. This too can be

discussed with the AAA, either when the contract is being written or after a dispute arises, and the AAA is prepared to arrange for mediation or conciliation anywhere in the world.

Parties filing an international case with the American Arbitration Association may do so by contacting any one of the regional offices indicated at the end of these rules, or by contacting the Association's International Center located in New York, N.Y., which is staffed by multilingual attorneys who have the requisite expertise in international matters.

Further information about these rules can be secured from:

American Arbitration Association
140 West 51st Street
New York, New York 10020-1203
phone   (212) 484-4000
fax       (212) 765-4874

# AMERICAN ARBITRATION ASSOCIATION
## International Arbitration Rules

### Article 1

1. Where parties have agreed in writing to arbitrate disputes under these International Arbitration Rules or have provided for arbitration of an international dispute by the American Arbitration Association without designating particular rules, the arbitration shall take place in accordance with these rules, as in effect at the date of commencement of the arbitration, subject to whatever modifications the parties may adopt in writing.

2. These rules govern the arbitration, except that, where any such rule is in conflict with any provision of the law applicable to the arbitration from which the parties cannot derogate, that provision shall prevail.

3. These rules specify the duties and responsibilities of the administrator, the American Arbitration Association. The administrator may provide services through its own facilities or through the facilities of arbitral institutions with which it has agreements of cooperation.

## I. Commencing the Arbitration

### Notice of Arbitration and Statement of Claim

#### Article 2

1. The party initiating arbitration ("claimant") shall give written notice of arbitration to the administrator and at the same time to the party against whom a claim is being made ("respondent").

2. Arbitral proceedings shall be deemed to commence on the date on which the administrator receives the notice of arbitration.

3. The notice of arbitration shall contain a statement of claim including the following:

   (a) a demand that the dispute be referred to arbitration;
   (b) the names and addresses of the parties;
   (c) a reference to the arbitration clause or agreement that is invoked;
   (d) a reference to any contract out of or in relation to which the dispute arises;
   (e) a description of the claim and an indication of the facts supporting it;
   (f) the relief or remedy sought and the amount claimed; and
   (g) may include proposals as to the means of designating and the number of arbitrators, the place of arbitration and the language(s) of the arbitration.

4. Upon receipt of the notice of arbitration, the administrator shall communicate with all parties with respect to the arbitration and shall acknowledge the commencement of the arbitration.

### Statement of Defense and Counterclaim

#### Article 3

1. Within 30 days after the commencement of the arbitration, a respondent shall submit a written statement of defense, responding to the issues raised in the notice of arbitration, to the claimant and any other parties, and to the administrator.

2. At the time a respondent submits its statement of defense, a respondent may make counterclaims or assert setoffs as to any claim covered by the agreement to arbitrate, as to which the claimant shall within 30 days submit a written statement of defense to the respondent and any other parties and to the administrator.

3. A respondent shall respond to the administrator, the claimant and other parties within 30 days after the commencement of the arbitration as to any proposals the claimant may have made as to the number of arbitrators, the place of the arbitration or the language(s) of the arbitration, except to the extent that the parties have previously agreed as to these matters.

4. The arbitral tribunal, or the administrator if the arbitral tribunal has not yet been formed, may extend any of the time limits established in this article if it considers such an extension justified.

**Amendments to Claims**

*Article 4*

During the arbitral proceedings, any party may amend or supplement its claim, counterclaim or defense, unless the tribunal considers it inappropriate to allow such amendment or supplement because of the party's delay in making it, prejudice to the other parties or any other circumstances. A party may not amend or supplement a claim or counterclaim if the amendment or supplement would fall outside the scope of the agreement to arbitrate.

## II.  The Tribunal

**Number of Arbitrators**

*Article 5*

If the parties have not agreed on the number of arbitrators, one arbitrator shall be appointed unless the administrator determines in its discretion that three arbitrators are appropriate because of the large size, complexity or other circumstances of the case.

**Appointment of Arbitrators**

*Article 6*

1. The parties may mutually agree upon any procedure for appointing arbitrators and shall inform the administrator as to such procedure.

2. The parties may mutually designate arbitrators, with or without the assistance of the administrator. When such designations are made, the parties shall notify the administrator so that notice of the appointment can be communicated to the arbitrators, together with a copy of these rules.

3. If within 45 days after the commencement of the arbitration, all of the parties have not mutually agreed on a procedure for appointing the arbitrator(s) or have not mutually agreed on the designation of the arbitrator(s), the administrator shall, at the written request of any party, appoint the arbitrator(s) and designate the presiding arbitrator. If all of the parties have mutually agreed upon a procedure for appointing the arbitrator(s), but all appointments have not been made within the time limits provided in that procedure, the administrator shall, at the written request of any party, perform all functions provided for in that procedure that remain to be performed.

4. In making such appointments, the administrator, after inviting consultation with the parties, shall endeavor to select suitable arbitrators. At the request of any party or on its own initiative, the administrator may appoint nationals of a country other than that of any of the parties.

5. Unless the parties have agreed otherwise no later than 45 days after the commencement of the arbitration, if the notice of arbitration names two or more claimants or two or more

respondents, the administrator shall appoint all the arbitrators.

## Impartiality and Independence of Arbitrators

### Article 7

1. Arbitrators acting under these rules shall be impartial and independent. Prior to accepting appointment, a prospective arbitrator shall disclose to the administrator any circumstance likely to give rise to justifiable doubts as to the arbitrator's impartiality or independence. If, at any stage during the arbitration, new circumstances arise that may give rise to such doubts, an arbitrator shall promptly disclose such circumstances to the parties and to the administrator. Upon receipt of such information from an arbitrator or a party, the administrator shall communicate it to the other parties and to the tribunal.

2. No party or anyone acting on its behalf shall have any ex parte communication relating to the case with any arbitrator, or with any candidate for appointment as party-appointed arbitrator except to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability or independence in relation to the parties, or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection. No party or anyone acting on its behalf shall have any ex parte communication relating to the case with any candidate for presiding arbitrator.

## Challenge of Arbitrators

### Article 8

1. A party may challenge any arbitrator whenever circumstances exist that give rise to justifiable doubts as to the arbitrator's impartiality or

independence. A party wishing to challenge an arbitrator shall send notice of the challenge to the administrator within 15 days after being notified of the appointment of the arbitrator or within 15 days after the circumstances giving rise to the challenge become known to that party.

2. The challenge shall state in writing the reasons for the challenge.

3. Upon receipt of such a challenge, the administrator shall notify the other parties of the challenge. When an arbitrator has been challenged by one party, the other party or parties may agree to the acceptance of the challenge and, if there is agreement, the arbitrator shall withdraw. The challenged arbitrator may also withdraw from office in the absence of such agreement. In neither case does withdrawal imply acceptance of the validity of the grounds for the challenge.

### Article 9

If the other party or parties do not agree to the challenge or the challenged arbitrator does not withdraw, the administrator in its sole discretion shall make the decision on the challenge.

## Replacement of an Arbitrator

### Article 10

If an arbitrator withdraws after a challenge, or the administrator sustains the challenge, or the administrator determines that there are sufficient reasons to accept the resignation of an arbitrator, or an arbitrator dies, a substitute arbitrator shall be appointed pursuant to the provisions of Article 6, unless the parties otherwise agree.

### Article 11

1. If an arbitrator on a three-person tribunal fails to participate in the arbitration for reasons other than those identified in Article 10, the two other arbitrators shall have the power in their

sole discretion to continue the arbitration and to make any decision, ruling or award, notwithstanding the failure of the third arbitrator to participate. In determining whether to continue the arbitration or to render any decision, ruling or award without the participation of an arbitrator, the two other arbitrators shall take into account the stage of the arbitration, the reason, if any, expressed by the third arbitrator for such nonparticipation, and such other matters as they consider appropriate in the circumstances of the case. In the event that the two other arbitrators determine not to continue the arbitration without the participation of the third arbitrator, the administrator on proof satisfactory to it shall declare the office vacant, and a substitute arbitrator shall be appointed pursuant to the provisions of Article 6, unless the parties otherwise agree.

2. If a substitute arbitrator is appointed under either Article 10 or Article 11, the tribunal shall determine at its sole discretion whether all or part of any prior hearings shall be repeated.

## III. General Conditions

### Representation

*Article 12*

Any party may be represented in the arbitration. The names, addresses and telephone numbers of representatives shall be communicated in writing to the other parties and to the administrator. Once the tribunal has been established, the parties or their representatives may communicate in writing directly with the tribunal.

### Place of Arbitration

*Article 13*

1. If the parties disagree as to the place of arbitration, the administrator may initially

determine the place of arbitration, subject to the power of the tribunal to determine finally the place of arbitration within 60 days after its constitution. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

2. The tribunal may hold conferences or hear witnesses or inspect property or documents at any place it deems appropriate. The parties shall be given sufficient written notice to enable them to be present at any such proceedings.

### Language

*Article 14*

If the parties have not agreed otherwise, the language(s) of the arbitration shall be that of the documents containing the arbitration agreement, subject to the power of the tribunal to determine otherwise based upon the contentions of the parties and the circumstances of the arbitration. The tribunal may order that any documents delivered in another language shall be accompanied by a translation into the language(s) of the arbitration.

### Pleas as to Jurisdiction

*Article 15*

1. The tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

2. The tribunal shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the tribunal that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

3. A party must object to the jurisdiction of the tribunal or to the arbitrability of a claim or counterclaim no later than the filing of the statement of defense, as provided in Article 3, to the claim or counterclaim that gives rise to the objection. The tribunal may rule on such objections as a preliminary matter or as part of the final award.

## Conduct of the Arbitration

### Article 16

1. Subject to these rules, the tribunal may conduct the arbitration in whatever manner it considers appropriate, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

2. The tribunal, exercising its discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute. It may conduct a preparatory conference with the parties for the purpose of organizing, scheduling and agreeing to procedures to expedite the subsequent proceedings.

3. The tribunal may in its discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

4. Documents or information supplied to the tribunal by one party shall at the same time be communicated by that party to the other party or parties.

## Further Written Statements

### Article 17

1. The tribunal may decide whether the parties shall present any written statements in addition to statements of claims and counterclaims and statements of defense, and it shall fix the periods of time for submitting any such statements.

2. The periods of time fixed by the tribunal for the communication of such written statements should not exceed 45 days. However, the tribunal may extend such time limits if it considers such an extension justified.

## Notices

### Article 18

1. Unless otherwise agreed by the parties or ordered by the tribunal, all notices, statements and written communications may be served on a party by air mail, air courier, facsimile transmission, telex, telegram, or other written forms of electronic communication addressed to the party or its representative at its last known address or by personal service.

2. For the purpose of calculating a period of time under these rules, such period shall begin to run on the day following the day when a notice, statement or written communication is received. If the last day of such period is an official holiday at the place received, the period is extended until the first business day which follows. Official holidays occurring during the running of the period of time are included in calculating the period.

## Evidence

### Article 19

1. Each party shall have the burden of proving the facts relied on to support its claim or defense.

2. The tribunal may order a party to deliver to the tribunal and to the other parties a summary of the documents and other evidence which that party intends to present in support of its claim, counterclaim or defense.

3. At any time during the proceedings, the tribunal may order parties to produce other documents, exhibits or other evidence it deems necessary or appropriate.

## Hearings

### Article 20

1. The tribunal shall give the parties at least 30 days' advance notice of the date, time and place of the initial oral hearing. The tribunal shall give reasonable notice of subsequent hearings.

2. At least 15 days before the hearings, each party shall give the tribunal and the other parties the names and addresses of any witnesses it intends to present, the subject of their testimony and the languages in which such witnesses will give their testimony.

3. At the request of the tribunal or pursuant to mutual agreement of the parties, the administrator shall make arrangements for the interpretation of oral testimony or for a record of the hearing.

4. Hearings are private unless the parties agree otherwise or the law provides to the contrary. The tribunal may require any witness or witnesses to retire during the testimony of other witnesses. The tribunal may determine the manner in which witnesses are examined.

5. Evidence of witnesses may also be presented in the form of written statements signed by them.

6. The tribunal shall determine the admissibility, relevance, materiality and weight of the evidence offered by any party. The tribunal shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

– 14 –

## Interim Measures of Protection

### Article 21

1. At the request of any party, the tribunal may take whatever interim measures it deems necessary, including injunctive relief and measures for the protection or conservation of property.

2. Such interim measures may take the form of an interim award, and the tribunal may require security for the costs of such measures.

3. A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

4. The tribunal may in its discretion apportion costs associated with applications for interim relief in any interim award or in the final award.

## Experts

### Article 22

1. The tribunal may appoint one or more independent experts to report to it, in writing, on specific issues designated by the tribunal and communicated to the parties.

2. The parties shall provide such an expert with any relevant information or produce for inspection any relevant documents or goods that the expert may require. Any dispute between a party and the expert as to the relevance of the requested information or goods shall be referred to the tribunal for decision.

3. Upon receipt of an expert's report, the tribunal shall send a copy of the report to all parties and shall give the parties an opportunity to express, in writing, their opinion on the report. A party may examine any document on which the expert has relied in such a report.

4. At the request of any party, the tribunal shall give the parties an opportunity to question the

– 15 –

expert at a hearing. At this hearing, parties may present expert witnesses to testify on the points at issue.

## Default

### Article 23

1. If a party fails to file a statement of defense within the time established by the tribunal without showing sufficient cause for such failure, as determined by the tribunal, the tribunal may proceed with the arbitration.

2. If a party, duly notified under these rules, fails to appear at a hearing without showing sufficient cause for such failure, as determined by the tribunal, the tribunal may proceed with the arbitration.

3. If a party, duly invited to produce evidence or take any other steps in the proceedings, fails to do so within the time established by the tribunal without showing sufficient cause for such failure, as determined by the tribunal, the tribunal may make the award on the evidence before it.

## Closure of Hearing

### Article 24

1. After asking the parties if they have any further testimony or evidentiary submissions and upon receiving negative replies or if satisfied that the record is complete, the tribunal may declare the hearings closed.

2. The tribunal in its discretion, on its own motion or upon application of a party, may reopen the hearings at any time before the award is made.

## Waiver of Rules

### Article 25

A party who knows that any provision of the rules or requirement under the rules has not been complied with, but proceeds with the arbitration

– 16 –

without promptly stating an objection in writing thereto, shall be deemed to have waived the right to object.

## Awards, Decisions and Rulings

### Article 26

1. When there is more than one arbitrator, any award, decision or ruling of the arbitral tribunal shall be made by a majority of the arbitrators. If any arbitrator fails to sign the award, it shall be accompanied by a statement of the reason for the absence of such signature.

2. When the parties or the tribunal so authorize, the presiding arbitrator may make decisions or rulings on questions of procedure, subject to revision by the tribunal.

## Form and Effect of the Award

### Article 27

1. Awards shall be made in writing, promptly by the tribunal, and shall be final and binding on the parties. The parties undertake to carry out any such award without delay.

2. The tribunal shall state the reasons upon which the award is based, unless the parties have agreed that no reasons need be given.

3. The award shall contain the date and the place where the award was made, which shall be the place designated pursuant to Article 13.

4. An award may be made public only with the consent of all parties or as required by law.

5. Copies of the award shall be communicated to the parties by the administrator.

6. If the arbitration law of the country where the award is made requires the award to be filed or registered, the tribunal shall comply with such requirement.

– 17 –

7. In addition to making a final award, the tribunal may make interim, interlocutory, or partial orders and awards.

**Applicable Laws and Remedies**

*Article 28*

1. The tribunal shall apply the substantive law(s) or rules of law designated by the parties as applicable to the dispute. Failing such a designation by the parties, the tribunal shall apply such law(s) or rules of law as it determines to he appropriate.

2. In arbitrations involving the application of contracts, the tribunal shall decide in accordance with the terms of the contract and shall take into account usages of the trade applicable to the contract.

3. The tribunal shall not decide as amiable compositeur or ex aequo et bono unless the parties have expressly authorized it to do so.

4. A monetary award shall be in the currency or currencies of the contract unless the tribunal considers another currency more appropriate, and the tribunal may award such pre-award and post-award interest, simple or compound, as it considers appropriate, taking into consideration the contract and applicable law.

5. Unless the parties agree otherwise, the parties expressly waive and forego any right to punitive, exemplary or similar damages unless a statute requires that compensatory damages be increased in a specified manner. This provision shall not apply to any award of arbitration costs to a party to compensate for dilatory or bad faith conduct in the arbitration.

**Settlement or Other Reasons for Termination**

*Article 29*

1. If the parties settle the dispute before an award is made, the tribunal shall terminate the arbitration and, if requested by all parties, may record the settlement in the form of an award on agreed terms. The tribunal is not obliged to give reasons for such an award.

2. If the continuation of the proceedings becomes unnecessary or impossible for any other reason, the tribunal shall inform the parties of its intention to terminate the proceedings. The tribunal shall thereafter issue an order terminating the arbitration, unless a party raises justifiable grounds for objection.

**Interpretation or Correction of the Award**

*Article 30*

1. Within 30 days after the receipt of an award, any party, with notice to the other parties, may request the tribunal to interpret the award or correct any clerical, typographical or computation errors or make an additional award as to claims presented but omitted from the award.

2. If the tribunal considers such a request justified, after considering the contentions of the parties, it shall comply with such a request within 30 days after the request.

**Costs**

*Article 31*

The tribunal shall fix the costs of arbitration in its award. The tribunal may apportion such costs among the parties if it determines that such apportionment is reasonable, taking into account the circumstances of the case.

Such costs may include:

    (a)  the fees and expenses of the arbitrators;

    (b)  the costs of assistance required by the tribunal, including its experts;

    (c)  the fees and expenses of the administrator;

    (d)  the reasonable costs for legal representation of a successful party; and

    (e)  any such costs incurred in connection with an application for interim or emergency relief pursuant to Article 21.

**Compensation of Arbitrators**

*Article 32*

Arbitrators shall be compensated based upon their amount of service, taking into account their stated rate of compensation and the size and complexity of the case. The administrator shall arrange an appropriate daily or hourly rate, based on such considerations, with the parties and with each of the arbitrators as soon as practicable after the commencement of the arbitration. If the parties fail to agree on the terms of compensation, the administrator shall establish an appropriate rate and communicate it in writing to the parties.

**Deposit of Costs**

*Article 33*

1.  When a party files claims, the administrator may request the filing party to deposit appropriate amounts as an advance for the costs referred to in Article 31, paragraphs (a), (b) and (c).

2.  During the course of the arbitral proceedings, the tribunal may request supplementary deposits from the parties.

3.  If the deposits requested are not paid in full within 30 days after the receipt of the request, the administrator shall so inform the parties, in order that one or the other of them may make the required payment. If such payments are not

made, the tribunal may order the suspension or termination of the proceedings.

4.  After the award has been made, the administrator shall render an accounting to the parties of the deposits received and return any unexpended balance to the parties.

**Confidentiality**

*Article 34*

Confidential information disclosed during the proceedings by the parties or by witnesses shall not be divulged by an arbitrator or by the administrator. Unless otherwise agreed by the parties, or required by applicable law, the members of the tribunal and the administrator shall keep confidential all matters relating to the arbitration or the award.

**Exclusion of Liability**

*Article 35*

The members of the tribunal and the administrator shall not be liable to any party for any act or omission in connection with any arbitration conducted under these rules, except that they may be liable for the consequences of conscious and deliberate wrongdoing.

**Interpretation of Rules**

*Article 36*

The tribunal shall interpret and apply these rules insofar as they relate to its powers and duties. The administrator shall interpret and apply all other rules.

## ADMINISTRATIVE FEES

The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

### Filing Fees

A nonrefundable filing fee is payable in full by a filing party when a claim, counterclaim or additional claim is filed, as provided below.

| Amount of Claim | Filing Fee |
| --- | --- |
| Up to $10,000 | $500 |
| Above $10,000 to $50,000 | $750 |
| Above $50,000 to $100,000 | $1,250 |
| Above $100,000 to $250,000 | $2,000 |
| Above $250,000 to $500,000 | $3,500 |
| Above $500,000 to $1,000,000 | $5,000 |
| Above $1,000,000 to $5,000,000 | $7,000 |

When no amount can be stated at the time of filing, the minimum filing fee is $2,000, subject to increase when the claim or counterclaim is disclosed.

When a claim or counterclaim is not for a monetary amount, an appropriate filing fee will be determined by the AAA.

The minimum filing fee for any case having three or more arbitrators is $2,000.

The administrative fee for claims in excess of $5,000,000 will be negotiated.

### Hearing Fees

For each day of hearing held before a single arbitrator, an administrative fee of $150 is payable by each party.

For each day of hearing held before a multiarbitrator panel, an administrative fee of $250 is payable by each party.

There is no AAA hearing fee for the initial Procedural Hearing.

### Postponement/Cancellation Fees

A fee of $150 is payable by a party causing a postponement of any hearing scheduled before a single arbitrator.

A fee of $250 is payable by a party causing a postponement of any hearing scheduled before a multiarbitrator panel.

### Suspension for Nonpayment

If arbitrator compensation or administrative charges have not been paid in full, the administrator may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the tribunal may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

### Hearing Room Rental

The Hearing Fees described above do not cover the rental of hearing rooms, which are available on a rental basis. Check with the administrator for availability and rates.

## INTERNATIONAL CENTER
New York (10020-1203)
Vivienne Ashman • (212) 484-3270
Stacy Kaplan • (212) 484-3254
Luis Martinez • (212) 484-3268
fax (212) 246-7274
140 West 51st Street

# REGIONAL OFFICE LISTING

**ARIZONA**
**Phoenix (85012-2365)** • Harry Kaminsky
333 East Osborn Road, Suite 310 • (602) 234-0950/230-2151 (Fax)

**CALIFORNIA**
**Irvine (92614-7240)** • P. Jean Baker
2030 Main Street, Suite 1650 • (714) 474-5090/474-5087 (Fax)
**Los Angeles (90010-1108)** • Kelvin Chin
3055 Wilshire Boulevard, Floor 7 • (213) 383-6516/386-2251 (Fax)
**San Diego (92101-4586)** • Dennis Sharp
600 B Street, Suite 1450 • (619) 239-3051/239-3807 (Fax)
**San Francisco (94104-4207)** • Stephen P. Van Liere
225 Bush Street, Floor 18 • (415) 981-3901/781-8426 (Fax)

**COLORADO**
**Denver (80264-2101)** • D. Breckenridge Grover
1660 Lincoln Street, Suite 2150 • (303) 831-0823/832-3626 (Fax)

**CONNECTICUT**
**East Hartford (06108-3256)** • Karen M. Jalkut
111 Founders Plaza, Floor 17 • (860) 289-3993/282-0459 (Fax)

**FLORIDA**
**Miami (33131-2808)** • René Grafals
799 Brickell Plaza, Suite 600 • (305) 358-7777/358-4931 (Fax)
**Orlando (32801-2742)** • Mark Sholander
201 East Pine Street, Suite 800 • (407) 648-1185/649-8668 (Fax)

**GEORGIA**
**Atlanta (30345-3203)** • India Johnson
1975 Century Boulevard, NE, Suite 1 • (404) 325-0101/325-8034 (Fax)

**HAWAII**
**Honolulu (96813-4714)** • Lance K. Tanaka
810 Richards Street, Suite 641 • (808) 531-0541/533-2306 (Fax)
In Guam, (671) 477-1845/477-3178 (Fax)

**ILLINOIS**
**Chicago (60601-7601)** • Scott Carfello
225 North Michigan Avenue, Suite 2527 • (312) 616-6560/819-0404 (Fax)

**LOUISIANA**
**New Orleans (70163-2810)** • Glen H. Spencer
2810 Energy Centre, 1100 Poydras Street • (504) 522-8781/561-8041 (Fax)

**MARYLAND**
**Baltimore (21201-2930)** • Steven G. Gallagher
10 Hopkins Plaza • (410) 837-0087/783-2797 (Fax)

**MASSACHUSETTS**
**Boston (02110-1703)** • Christine L. Newhall
133 Federal Street • (617) 451-6600/451-0763 (Fax)

**MICHIGAN**
**Southfield (48076-3728)** • Mary A. Bedikian
One Towne Square, Suite 1600 • (810) 352-5500/352-3147 (Fax)

**MINNESOTA**
**Minneapolis (55402-1092)** • James R. Deye
514 Nicollet Mall, Floor 6 • (612) 332-6545/342-2334 (Fax)

**MISSOURI**
**Kansas City (64106-2110)** • Lori A. Madden
1101 Walnut Street, Suite 903 • (816) 221-6401/471-5264 (Fax)
**St. Louis (63101-1614)** • Neil Moldenhauer
One Mercantile Center, Suite 2512 • (314) 621-7175/621-3730 (Fax)

**NEVADA**
**Las Vegas (89102-8719)** • Laura Camp
4425 Spring Mountain Road, Suite 310 • (702) 252-4071/252-4073 (Fax)
From Reno, (702) 786-5566

**NEW JERSEY**
**Somerset (08873-4120)** • Philip Levine
265 Davidson Avenue, Suite 140 • (908) 560-9560/560-8850 (Fax)

**NEW YORK**
**Garden City (11530-2004)** • Mark A. Resnick
666 Old Country Road, Suite 603 • (516) 222-1660/745-6447 (Fax)
**New York (10020-1203)** • Agnes J. Wilson
140 West 51st Street • (212) 484-3266/307-4387 (Fax)
**Syracuse (13202-1376)** • Deborah A. Brown
205 South Salina Street • (315) 472-5483/472-0966 (Fax)
**White Plains (10603-1916)**
399 Knollwood Road, Suite 116 • (914) 946-1119/946-2661 (Fax)

**NORTH CAROLINA**
**Charlotte (28202-2431)** • Debi Miller Moore
428 East Fourth Street, Suite 300 • (704) 347-0200/347-2804 (Fax)

**OHIO**
**Cincinnati (45202-2973)** • Eileen B. Vernon
441 Vine Street, Suite 3308 • (513) 241-8434/241-8437 (Fax)
**Cleveland (44130-3490)** • Eileen B. Vernon
17900 Jefferson Park, Suite 101 • (216) 891-4741/891-4740 (Fax)

**PENNSYLVANIA**
**Philadelphia (19102-4106)** • Kenneth Egger
230 South Broad Street, Floor 6 • (215) 732-5260/732-5002 (Fax)
**Pittsburgh (15222-1207)** • John F. Schano
Four Gateway Center, Room 419 • (412) 261-3617/261-6055 (Fax)

**TENNESSEE**
**Nashville (37219-1823)** • Judy C. Johnson
211 Seventh Avenue North, Suite 300 • (615) 256-5857/244-8570 (Fax)

**TEXAS**
**Dallas (75240-6620)** • Helmut O. Wolff
13455 Noel Road, Suite 1750 • (972) 702-8222/490-9008 (Fax)
**Houston (77002-6708)** • Glen H. Spencer
1001 Fannin Street, Suite 1005 • (713) 739-1302/739-1702 (Fax)

**UTAH**
**Salt Lake City (84111-3834)** • Diane Abegglen
645 South 200 East, Suite 203 • (801) 531-9748/323-9624 (Fax)

**VIRGINIA**
**Richmond (23219-2803)** • Betty Starke
707 East Main Street, Suite 1610 • (804) 649-4838/643-6340 (Fax)
**McLean (22102)** • Steven G. Gallagher
8201 Greensboro Drive, Suite 610 • (703) 760-4820/760-4847 (Fax)

**WASHINGTON**
**Seattle (98101-2511)** • Sheri L. Raders
1325 Fourth Avenue, Suite 1414 • (206) 622-6435/343-5679 (Fax)

**WASHINGTON, D.C.**
**Washington, D.C. (20036-4104)** • Steven G. Gallagher
1150 Connecticut Avenue, NW, Floor 6 • (202) 296-8510/872-9574 (Fax)

VISIT THE AMERICAN ARBITRATION ASSOCIATION ONLINE
http://www.adr.org

**EXHIBIT C**

K
A174

Case 4:07-cv-05944-JST   Document 2921-2   Filed 10/16/14   Page 45 of 50   AEP-6668

0 2007 0466770 4
California State Library

# CURRENTS

## The Newsletter of Dispute Resolution Law and Practice

# Behind the Neutral: A Look at Provider Issues

### BY THOMAS J. STIPANOWICH

I n a world where conflict resolution services are rapidly proliferating, one may look wistfully back at a time not so long ago when we stood wide-eyed on the threshold of a universe of dispute resolution possibilities. It is in the nature of things that the

*The author is the W.L. Matthews Professor of Law at the University of Kentucky. A member of the Board of Directors of the American Arbitration Association, he is also director of CPR's Commission on the Future of Arbitration. The views expressed here are solely the author's and do not necessarily represent the opinions of any organization.*

innocent rapture of discovery must give way to cold-eyed appraisal of the methods we have embraced, to a more considered assessment of their relative benefits and burdens. Thus, even as many are drawn to ADR by fortune, philosophy or financial need, there is an unprecedented impetus to re-evaluate and possibly to reform.

A few examples. As the National Conference of Commissioners on Uniform State Laws sets to work on a new model mediation act, another NCCUSL committee is revising the venerable Uniform Arbitration Act. Major institutional sponsors of international arbitration, including the American Arbitration Association and the International Chamber of Commerce, recently made significant procedural changes in their international

*Continued on page 14*

---

## HALLIGAN V. PIPER JAFFRAY

# A Dangerous Expansion of "Manifest Disregard"

### By Barry H. Garfinkel and Rona G. Shamoon

A recent decision by the U.S. Court of Appeals for the 2nd Circuit—which vacated an award on the basis of the arbitrators' "manifest disregard of the law or the evidence or both"—may have far-reaching and unintended effects on U.S. arbitration practice. Indeed, the opinion may significantly expand this narrow, judicially created standard of review.

In *Halligan v. Piper Jaffray, Inc.,*[1] a case involving an age-discrimination claim, the 2nd Circuit reversed a ruling by the district court for the Southern District of New York confirming a National Association of Securities Dealers award in the employer's favor. In vacating the

*Continued on page 18*

---

**IN THIS ISSUE**    *Published by the American Arbitration Association*    **DECEMBER 1998**

| ADR Update | Commentary on | The Virtues of | Does State | Court Roundup |
|---|---|---|---|---|
| *page* 4 | the AAA | ADR for IP Claims | Arbitration Law | *page* 24 |
| A Former GC's | Commercial | *page* 12 | Matter At All? | |
| Conversion to ADR | Rules Changes | New Belgian Law | (Part II) | |
| *page* 5 | *page* 6 | *page* 16 | *page* 20 | |

# *Commentary on the Revisions to the*
# Commercial Arbitration Rules
## *of the American Arbitration Association*

### BY THE AMERICAN ARBITRATION ASSOCIATION COMMERCIAL ARBITRATION RULES REVISION COMMITTEE

*The Rules Revision Committee's efforts to enhance the AAA's Commercial Arbitration Rules will become effective Jan. 1, 1999. The rationale for these rules changes is shared below in the committee's commentary.*

The American Arbitration Association undertook an intensive review of its administration of commercial cases with the basic purpose of further improving its case administration to better serve parties' needs. First, the AAA's Case Administration Advisory Committee* prepared a report outlining a host of recommended administrative improvements, including certain revisions to the Commercial Arbitration Rules. Many of the former were implemented. Next, AAA President William K. Slate II appointed a rules revision committee under the guidance of the AAA's general counsel, Michael F. Hoellering, to consider drafting rules changes consistent with the report. The committee was composed of the following members: David W. Rivkin (chair), Charles A. Beach, James H. Carter, Robert Layton, Nancy Nelson, William Sondericker, and John M. Townsend.

The AAA's Commercial Arbitration Rules are applied to a wide variety of commercial disputes involving many different industries and spanning the gamut in size from very modest to very substantial. Mindful that the commercial rules have stood the test of time and that they serve as a model for many of the AAA's specialized rules, the committee has recommended only those changes necessary to improve the process in light of modern arbitration practice.

The more significant amendments include making explicit the arbitrator's power to rule on his or her own jurisdic-

tion; enhancement of the arbitrator's authority to actively manage the proceedings; refinement of the administrative conference and preliminary hearing; clarification of the arbitrator's broad authority to take interim measures; further clarifying the role of the arbitrator and the parties in the production of evidence; revisions to the expedited procedures to make the resolution of small disputes efficient and appropriate for the



size of the dispute; and creation of a separate optional mechanism for parties to choose when they may require rapid emergency measures of protection.

Both the AAA's Mediation Rules and Supplementary Procedures for Large, Complex Disputes are now included in the pamphlet containing

the Commercial Arbitration Rules.

This commentary sets forth the salient considerations underlying the revisions.

## Applicability of Rules § R-1

In the past, the commercial rules have provided that they would apply either when they are specifically chosen or whenever the parties have provided for arbitration by the AAA without naming specific rules. More narrowly, the AAA's International Arbitration Rules, which were promulgated in 1991, have stated that they would apply only where the parties have specifically agreed to apply them. As a result, some international disputes have had to be arbitrated under the commercial rules, rather than internationally oriented procedures, because the parties did not specifically identify the AAA's International Arbitration Rules.

To rectify this problem, in April 1997 the international rules were revised to provide for arbitration under those rules if the dispute is international and the parties have chosen the AAA without designating particular rules. To harmonize the two sets of rules and the administration of domestic and international cases, without diminishing party autonomy, the commercial rules have hereby been revised to reflect that they will apply to a domestic commercial dispute where parties have not specified particular AAA rules.

In an explanatory note to Section R-1, we have clarified that disputes arising out of an employment relationship will

be administered under the AAA's National Rules for the Resolution of Employment Disputes, unless all parties agree otherwise after the commencement of AAA administration. The AAA provides various rules of procedures for different industries. Because employment disputes are unique, the employment rules were created and specifically designed to address needs that may arise in the employment context. Further, it is AAA policy to administer such disputes in accordance with those rules.

## Initiation of Arbitration § R-4

In addition to minor fine-tuning, Section R-4 was revised to make more express the amount of detail parties should provide in their statements of claim or counterclaim. Specifically, Subsection (d) was added to encourage parties to provide descriptions of their claims in sufficient detail to clarify the circumstances of the dispute for the arbitrator. The committee recognized that for smaller disputes a rule requiring more detail would not be appropriate. However, the committee hopes that parties to larger disputes will recognize the precatory nature of this language and provide enough detail to permit a clear understanding of issues, which can significantly expedite the proceedings.

## Jurisdiction of Arbitrator § R-8

In *First Options v. Kaplan*, 115 S. Ct. 1920 (1995), the U.S. Supreme Court held that any dispute as to the arbitrability of a dispute shall be decided by the arbitrators if the parties have explicitly so agreed in their contract. Section R-8 is designed to address the Court's holding and to make explicit in the rules useful, generally accepted principles of arbitral jurisdiction.

The committee believes that by adopting these rules, parties agree to the arbitrability of such jurisdictional disputes. In an effort to make more explicit this designation of authority, the committee added Section R-8. Subsection (a) specifically states that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Inclusion of the term "scope" further clarifies the arbitrator's power to rule on any challenge to jurisdiction.

The first sentence of Subsection (b) authorizes the arbitrator to determine the existence or validity of a contract of which an arbitration clause forms a part. The latter two sentences concern the separability of the arbitration agreement from the rest of the contract. Subsection (c) is simply intended to clarify when such jurisdictional challenges are to be filed and that the arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## Administrative Conference § R-10

Experience has proven that an administrative conference can be a very useful procedural device. Although the earlier version of the commercial rules contained a provision for an administrative conference, it was grouped together with the preliminary hearing and mediation conference in one section. The revision separates each procedure into individual sections to clarify their distinguishing and unique features.

The administrative conference provision (Section R-10) was revised to reflect the practice that such conferences may be held in person or by *telephone*, and also to assist parties by providing a description of the types of issues that may be explored: arbitrator selection, potential mediation of the dispute, potential exchange of information, a timetable for hearings, and other administrative matters.

## Multi-Party Arbitration § R-13(c)

While the majority of arbitrations involve two parties and are governed by one contract with one arbitration clause, arbitration clauses are also frequently inserted in contracts involving multiple parties. In such cases, parties may experience some difficulty in determining the manner of arbitrator

*The committee considered it appropriate to insert language designed to encourage parties to refrain from ex parte communication with their party-appointed arbitrators.*

selection, because the interests of the various parties may not easily be aligned into two opposing groups.

There are many possible methods for appointing one or more arbitrators in multi-party disputes. Parties with foresight can draft appropriate provisions in their arbitration clause. Once a dispute has arisen, it is more difficult for the parties to agree upon a fair method for appointing arbitrators, but they may nevertheless be able to reach such an agreement if they view it to be in their best interest.

Because the principle of party autonomy is a fundamental aspect of any arbitration proceeding, parties are encouraged to develop their own solutions for multi-party proceedings. In amending the rules, however, the committee chose to provide a default mechanism in the event that the parties are unable to agree on how the arbitral tribunal should be constituted. This provision states that, where there are two or more claimants or two or more respondents named in the notice of arbitration, "unless the parties have agreed otherwise no later than 15 days after the commencement of the arbitration," the AAA will appoint all the arbitrators. The "no later than" language was chosen in order to make clear that the agreement of the parties may be reflected in the arbitration clause, in a subsequent contract, or in an agreement once the dispute has arisen.

The committee believes that appointment of all the arbitrators by the AAA is a fair and appropriate method for a set of rules that will be applied in many different situations.

## Communication with Arbitrator § R-20

The issue of communication between a party and an arbitrator is of great importance. Parties and counsel
*Continued on page 8*

*Continued from page 7*

must have a shared understanding as to the scope of permissible communications, if any. The committee therefore created a provision to focus on such communication. Although formerly a part of Rule 29, which addressed both the "order of proceedings and communication with the arbitrator," the amended section now clarifies the kind of communication, as well as with whom, that is prohibited. Specifically, Subsection (a) prohibits unilateral communication *concerning the arbitration* between a party or its representative and the neutral arbitrator, as well as a candidate for *neutral* arbitrator.

Another concern is the level of communication between parties and their party-appointed arbitrators. Traditionally in domestic proceedings, it was not unusual for a party-appointed arbitrator to exhibit a degree of partiality to, and closer contact with, the appointing party. In recent years, however, the courts have not viewed favorably such arrangements. Experience has also suggested the need for more uniform and transparent conduct by parties in their dealings with party-appointed arbitrators.

Thus, the committee considered it appropriate to insert the following language, designed to encourage parties to refrain from *ex parte* communication with their party-appointed arbitrators and to place all parties to a case on the same footing: "[t]he parties or the arbitrators *may also agree* that once the panel has been constituted, no party and no one acting on behalf of any party shall communicate unilaterally concerning the arbitration with any arbitrator [italics added]."

## Preliminary Hearing § R-22

Because preliminary hearings have proven particularly useful in organizing arbitration proceedings, where procedures are so flexible and vary considerably from case to case, this provision was amended in several respects to streamline the process: (1) to encourage the use of preliminary hearings, their procedures were separated into a new provision; (2) the provision states explicitly that in the arbitrator's discretion, the hearing may

be conducted *by telephone*; and (3) the provision itemizes some of the issues that may be discussed at such a hearing, such as the future conduct of the case, clarification of the issues and claims, a schedule for the hearings and any other preliminary matters.

## Exchange of Information § R-23

Parties, representatives, and contract drafters often ask to what extent document production and any other exchanges of information are permitted in arbitration under AAA rules. In order to effectively present one's case, parties sometimes need documentary and other evidence in the opposing party's possession.

Revised Section R-23 is suitable for a majority of the cases that are filed under the AAA's Commercial Rules. It provides generally for the production of documents and other information, while resting the ultimate determination within the arbitrator's discretion. Under this new provision, parties may request, and arbitrators are authorized to direct (1) the production of documents and other information, and (2) the identification of any witnesses to be called.

Further, the rule provides that at least five business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. Arbitrators at all times retain the power to resolve any disputes concerning the exchange of information.

## Conduct of Proceedings § R-32

The driving force underlying the amendments to this section was to provide arbitrators with the ability to conduct arbitrations by the most effective and efficient means possible. Experience has shown that arbitrators who take an active managerial role will significantly impact the efficiency of the

arbitral proceedings. Section R-32(b) now emphasizes (1) the arbitrator's duty to conduct the proceedings "with a view to expediting the resolution of the dispute," and (2) the arbitrator's discretion to "direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case."

The committee was concerned that arbitrators too often are inclined to admit any and all evidence submitted by the parties, without regard to the true relevance and materiality of that evidence. It is hoped that the new rules will make clear that arbitrators may, in the exercise of their discretion, limit the evidence to be heard to what they consider pertinent and necessary in order to reach a fair decision. The rule also makes explicit the arbitrator's authority to bifurcate proceedings in order to hold separate, initial hearings on threshold matters that may shorten or make further hearings unnecessary.

Under these new provisions, the arbitrator has the *authority* to consider dispositive motions, but is not *required* to do so. Federal and state court cases have upheld awards in which arbitrators ruled based on dispositive motions. *Carbon Bermuda, Ltd. v. Caldex Trading Corp.,* No. 91 Civ. 4631 (S.D.N.Y. Jan. 11, 1993); *Schlessinger v. Rosenfeld, Meyer & Susman,* 47 Cal. Rptr.2d 650 (Cal. App. 2 Dist. 1995); but see *Chem-Met Co. v. Metaland Int'l, Inc.,* Civ. Action No. 96-02548 (D.C. D.C. Mar. 25, 1998).

It is important to keep in mind that while summary motions are now explicitly available to arbitrators under certain circumstances, employing such motions is not always advisable and will depend on numerous factors. Of vital importance is ensuring that a party who objects to a summary disposition motion be afforded a fair opportunity to present its case.

> *The driving force underlying the amendments to § R-32 was to provide arbitrators with the ability to conduct arbitrations by the most effective and efficient means possible.*

## Evidence and Privileges
### § R-33

The rules provide that (1) the arbitrator must ensure that the parties are treated with equality, (2) the parties have the right to be heard, and (3) each party is given a fair opportunity to present its case. Simultaneously, however, it is equally important that the arbitrator manage the proceedings. To further strengthen the arbitrator's ability to manage the proceedings, and consistent with the provisions of Section R-32, Section R-33(b) has been revised to state explicitly that the arbitrator "may exclude evidence deemed by [him or her] to be cumulative or irrelevant."

On occasion, uncertainty about the applicability of the attorney-client privilege in arbitration has created problems for arbitrators and the parties and has tended to prolong proceedings. The rules now clarify that such privileges are to be recognized. The new language explicitly states that the "arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client." The language was drafted broadly enough to include any applicable legal privilege.

### Interim Measures § R-36

The revised provision clarifies further the arbitrator's inherent authority to order a broad scope of interim measures. These include, but are not limited to, injunctive relief, measures for the protection or conservation of property, disposition of perishable goods and other provisional restraints. The reference to "protection" of property was inserted to clarify that intangible property, such as intellectual property, may also be the subject of an interim award. Further, the rule now provides that such interim measures may be embodied in an interim award and that the arbitrator may require security for the costs associated with such measures.

### Form of Award § R-44

Occasionally there is confusion regarding the arbitrator's responsibility in rendering an award. Parties question whether the arbitrator is required to render a reasoned award. In order to clarify the tacit rule that the arbitrator will provide a reasoned award if that is what the parties desire or if the arbitrator deems it appropriate, Section R-44(b) was amended accordingly: "The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate." The requirement to request a reasoned award *before* the appointment of the arbitrator is important, so that any prospective arbitrator knows exactly what the parties will expect.

### Interim Award § R-45

Arbitrators often make interim rulings or orders throughout the course of the arbitration proceedings. In order to clarify existing practice that such orders or rulings may take the form of an award, Section 45(b) was amended to provide pertinently that, "[i]n addition to the final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards."

### Modification of Award § R-48

Although already permitted under various state arbitration statutes, the AAA's Commercial Rules now provide that any party, upon notice to the other parties, may request that the arbitrator correct any clerical, typographical or computational errors in the award. This does not permit the arbitrator to revisit the merits of any claim already decided.

### Expedited Procedures

In keeping with the purpose of expedited procedures, amendments to these procedures are intended primarily to make the process even more efficient for smaller cases. Changes include raising the threshold amount to $75,000; an expedited arbitrator appointment process, with party input; electronic communication of notices; the limited availability of extensions; the presumption that cases involving less than $10,000 will be processed on documents only; and the requirement of a hearing within 30 days of the arbitrator's appointment.

## Optional Procedures for Large, Complex Commercial Cases

The addition of the Large, Complex Commercial Case Procedures makes the revised Commercial Arbitration Rules all inclusive in that they now deal with all categories of cases—small, medium and large, complex cases.

Another reason for including these procedures within the commercial rules pamphlet is that often parties to large, complex cases do not have at their disposal such additional procedures which are specifically designed to serve the needs of parties in such disputes. They now are readily accessible and make it easier for parties to prepare their case. Some of the key features include a highly qualified, trained roster of neutrals; a mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference; broader authority to order and control discovery, including depositions; and the presumption that hearings will proceed on a consecutive or block basis.

## Optional Rules for Emergency Measures of Protection

The Commercial Arbitration Rules provide arbitrators with broad authority to order conservatory and provisional measures and to incorporate them into enforceable interim awards, while preserving the status of arbitration in situations where meaningful provisional relief can only be obtained from the courts.

However, if emergency interim relief is required before the panel has been constituted, parties have needed to resort to the courts rather than seek the requisite relief from the arbitrator. To bridge this deficiency and to more fully implement the parties' intent to arbitrate any future disputes, the AAA has made available Optional Rules for Emergency Measures of Protection. These optional rules also respond to the preference of courts to limit their involvement in matters where the parties have expressed an intention to arbitrate. The optional rules are the first such provision in any arbitration rules intended for general use, which is in response to certain expressed user needs and expressed preference of the courts.

*Continued on page 10*

## COMMERCIAL RULES CHANGES

*Continued from page 9*

As the title indicates, these measures are optional. The contracting parties must have agreed to use them either by special agreement or in their arbitration clause. A party seeking such relief prior to the constitution of the panel must notify the AAA and all other parties in writing of the nature of the relief sought, the reasons why such relief is required, and why the party is entitled to such relief on an emergency basis. Within one business day of receipt of the notice, the AAA will appoint a single emergency arbitrator to rule on emergency applications from a special AAA panel of emergency arbitrators designated for that purpose. Of course, the appointment of the emergency arbitrator will be subject to a disclosure and challenge procedure similar to that in the standard commercial rules.

The rules provide an expedited time frame within which the arbitrator shall establish a schedule for consideration of the application for relief, and shall accordingly review the request. If the arbitrator determines that the party is entitled to the relief, he or she may enter an interim award granting the relief and stating the reasons therefor. Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until such time as the panel is constituted. The emergency arbitrator shall have no further power to act after the panel is constituted, unless the parties agree that the emergency arbitrator is named as a member of the panel. The procedures contain a provision on modification of the interim award and apportionment of costs.  ∎

---

\* *The AAA Case Administration Advisory Committee was composed of David Heilbron (chair), facilitators Frank T. Zotto, Barbara L. Brady, members Diane Abegglen, Richard Adelman, Mitchell Becker, Scott Carfello, Ines Delgado, Inta Khutorsky, Jennifer McLaughlin, Robert E. Meade, Mark Scholander, Gerry Strathmann, John Townsend and George Wood.*

## CONVERTING TO ADR

*Continued from page 5*

for mediation, although we occasionally used arbitration. We liked the fact that mediation gave us greater control over the settlement process, at modest cost and within a relatively short time. Once we used a mini-trial before the senior executives of Siemens and one of its customers, and that also was a successful experience, although it took a lot of executive time.

It is not as though litigating through trial, instead of using ADR or otherwise negotiating a settlement, would give us a reasonable assurance of achieving our business objectives. The days are long since past when demurrers and other motions offered quick and predictable ways of concluding a significant number of cases on a point of law. Trial today normally means trial by jurors who are too often selected for their perceived lack of understanding and susceptibility to emotional appeals. This makes it quite difficult for corporate counsel to provide reliable assurances to management as to the likely results of litigation.

Some prescriptions have been proposed to address the two basic problems with traditional litigation—its high expense and lack of predictable results in court. These include hiring better and more aggressive trial lawyers; compensating them at a fixed fee per case or at hourly rates that decrease with time; establishing tougher litigation guidelines and tighter litigation budgets; and auditing billings with greater thoroughness and in greater detail. But these techniques only address the margins of the problems with litigation.

The successful resolution of litigation and the avoidance of unnecessary litigation require a systematic policy which uses ADR as an integral part of a carefully thought out process of litigation management. The goal has to be to achieve better results at lower costs through realistic early settlement negotiations which encourage the use of ADR, primarily mediation. Timing is normally critical in the cost-benefit analysis of ADR usage.

Most corporate counsel have come to realize that their company's participation in litigation must serve a business purpose. It is not businesslike to spend large amounts of the company's money preparing to try a case in court when the chances are nine out of 10 that the case will be settled before trial. Clearly it is better for the business to prepare for settlement—using means, such as ADR, designed to produce a settlement—rather than a trial. And if mediation or some other nonbinding ADR process is used and does not succeed, traditional litigation is still available.

With the understanding that the heart of their responsibility is the successful practice of preventive law, corporate counsel today are implementing proactive strategic approaches aimed at eliminating the basis for disputes, where feasible, and focusing on prompt settlements of unavoidable disputes, using various ADR techniques. This approach to dispute resolution requires a change in some lawyers' way of thinking. It is no longer prudent to wait until the last bit of discovery has been completed to initiate settlement negotiations or commence mediation. Recently my friends at Siemens Energy moved quickly to mediate a personal injury case arising out of a Siemens product. The result was that the legal fees were limited to $3,000. And while the settlement cost was substantial, it was also reasonable, and pleased the important customer in whose plant the injury occurred.

The various ADR techniques have proved to be highly beneficial, but to maximize their benefits, ADR must become an integral part of the litigation plan. The trial lawyer's willingness to use ADR should be confirmed in the initial retention discussions. Then, trial counsel should be required to include—in the hiring letter—a plan to achieve a successful negotiated settlement, which includes the use of ADR. This makes clear to counsel that traditional litigation is not the company's goal.  ∎