**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | ) MDL No. 1917 |
| | ) |
| | ) Case No. C-07-5944-SC |
| This Order Relates To: | ) |
| | ) ORDER RE: THOMSON DISCOVERY |
| Sharp Electronics Corp. v. Hitachi Ltd., No. C-13-1173-SC; | ) |
| | ) |
| Electrograph Systems, Inc. v. Technicolor SA, No. 13-cv-05724; | ) |
| | ) |
| Siegel v. Technicolor SA, No. 13-cv-05261; | ) |
| | ) |
| Best Buy Co., Inc. v. Technicolor SA, No. 13-cv-05264; | ) |
| | ) |
| Target Corp. v. Technicolor SA, No. 13-cv-05686 | ) |
| | ) |
| Interbond Corporation of America v. Technicolor SA, No. 13-cv-05727; | ) |
| | ) |
| Office Depot, Inc. v. Technicolor SA, No. 13-cv-05726; | ) |
| | ) |
| Costco Wholesale Corporation v. Technicolor SA, No. 13-cv-05723; | ) |
| | ) |
| P.C. Richard & Son Long Island Corporation v. Technicolor SA, No. 13-cv-05725; | ) |
| | ) |
| Schultze Agency Services, LLC v. Technicolor SA, Ltd., No. 13-cv-05668; | ) |
| | ) |
| Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA, No. 3:13-cv-05262; | ) |
| | ) |
| Tech Data Corp., et al. v. Hitachi, Ltd., et al., No. 13-cv-00157; | ) |
| | ) |
| Crago, et al. v. Mitsubishi Elec. Corp., et al., No. 14-cv-02058. | ) |

**United States District Court**
For the Northern District of California

# I.   __INTRODUCTION__

Now before the Court are several issues related to the Direct Action Plaintiffs' ("DAPs") discovery efforts against Defendants Thomson SA and Thomson Consumer ("Thomson").  First, Thomson objects to the Special Master's[1] Recommended Order, ECF No. 2812 ("R&R") granting DAPs', led by Sharp, motion to compel production of various documents and witnesses in France pursuant to the Federal Rules of Civil Procedure.  ECF No. 2849 ("Obj.").  Without prejudice to the motion to compel, DAPs seek similar discovery via the issuance of letters of request for international judicial assistance in the production of documents, ECF No. 2716 ("Docs. Mot."), and depositions in France, ECF No. 2776 ("Depos. Mot."), pursuant to the procedures of the Hague Convention.[2]  Finally, in light of the passage of the fact discovery deadline on September 5, 2014, DAPs seek to extend the deadline to permit the aforementioned productions and depositions to take place.  ECF No. 2773 ("Deadline Mot.").  The motions and objection are fully briefed,[3] and appropriate for resolution without oral argument under Civil Local Rule 7-1(b).  For the reasons set forth below, the Court DENIES Thomson's objection and GRANTS DAPs' motion to compel.  Having found that DAPs need not resort to Hague Convention procedures in

---

[1] On December 17, 2013 the Court appointed the Honorable Vaughn R. Walker, United States District Judge (Retired), as a Special Master to assist the Court with discovery matters.  ECF No. 2272.

[2] Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 (codified at 28 U.S.C. § 1780) ("Hague Convention").

[3] ECF Nos. 2727 ("Docs. Opp'n"); 2782 ("Depos. Opp'n"); 2783 ("Deadline Opp'n").  Plaintiff ViewSonic Corporation also submitted a brief memorandum in support of DAPs' motion to extend the discovery deadline.  ECF No. 2778 ("Viewsonic Br.").

**United States District Court**
For the Northern District of California

1  seeking the documents and depositions at issue, DAPs are ORDERED to

2  file a statement explaining whether they intend to proceed with

3  their motions for the issuance of letters of request.  Finally, the

4  Court GRANTS DAPs' motion to extend the cutoff for discovery of

5  Thomson.

6

7  **III.  BACKGROUND**

8      The parties are familiar with the factual and procedural

9  background of the case.  DAPs, led by Sharp, seek discovery of

10  documents and witnesses in France.  Specifically, DAPs pursue

11  documents held by Thomson in France that are relevant to Thomson's

12  communications with competitors and aspects of Thomson's CRT

13  business, and documents produced to various foreign regulatory

14  agencies during prior investigations related to price fixing in the

15  CRT industry.  Those include documents produced during a 2012

16  European Commission ("EC") investigation that found Defendants

17  participated in a price fixing cartel for CRTs.  See Docs. Mot. at

18  4-5.  DAPs also wish to depose four former Thomson employees in

19  France who have been identified as potential participants in

20  meetings related to the alleged CRT conspiracy.  Depos. Mot. at 2.

21  To provide time for this discovery to take place, the DAPs request

22  extension of the fact discovery deadline.  Deadline Mot. at 4-5.

23      DAPs propose two alternative means of obtaining this

24  discovery.  First, DAPs argue that, notwithstanding the provisions

25  of the so-called French Blocking Statute,[4] the Federal Rules of

26  ────────────────

27  [4] See Loi No. 80-538 du 16 juillet 1980 relative à la communication de documents et renseignements d'ordre économique, commercial ou technique à des personnes physiques ou morales étrangères [Law 80-538 of July 16, 1980 relating to the Communication of Economic,

28  Commercial, Industrial, Financial or Technical Documents or

United States District Court
For the Northern District of California

1  Civil Procedure should govern the discovery sought here.  Without

2  prejudice to that position, DAPs propose the Court issue letters of

3  request for international judicial assistance in obtaining the

4  documents and depositions sought.  Thomson disagrees with both

5  positions, arguing (1) that permitting discovery to go forward

6  under the Federal Rules of Civil Procedure will, by virtue of the

7  French Blocking Statute, subject them to possible French criminal

8  sanctions for compliance, and (2) DAPs' letters of request are

9  overly broad, unduly burdensome, and do not comply with the Hague

10  Convention and French government's requirements for international

11  discovery requests.

12      DAPs' first position, that the discovery sought should be

13  obtained through the Federal Rules of Civil Procedure, was raised

14  in a motion to compel production of documents and a Rule 30(b)(6)

15  deponent before the Special Master.  In that motion, DAPs contended

16  that the Supreme Court's decision in Société Nationale Industrielle

17  Aérospatiale v. United States District Court for the Southern

18  District of Iowa, 482 U.S. 522 (1987) ("Aerospatiale"), forecloses

19  any obligation to resort first to Hague Convention procedures.

20  ────────────────────────────────────────────────────────

21  Information to Foreign, Natural or Legal Person], J. Officiel de la
   République Française [J.O.] [Official Gazette of France], July 17,

22  1980, p. 1799 ("French Blocking Statute").

23  The law provides:

24      "Subject to treaties or international agreements and
       applicable laws and regulations, it is prohibited for any

25      party to request, seek or disclose, in writing, orally or
       otherwise, economic, commercial, industrial, financial or

26      technical documents or information leading to the constitution
       of evidence with a view to foreign judicial or administrative

27      proceedings or in connection therewith."

28  Société Nationale Industrielle Aérospatiale v. United States Dist.
   Ct. for the So. Dist. of Iowa, 482 U.S. 522, 527 n.6 (1987).

**United States District Court**
For the Northern District of California

1   Instead, DAPs argued that under the factors identified in

2   Aerospatiale, DAPs' interest in obtaining this discovery outweighed

3   the interests of international comity that might otherwise compel

4   them to seek discovery through the Hague Convention.  The Special

5   Master concurred, finding that Sharp and the DAPs need not resort

6   to the Hague Convention procedures,[5] they "may be well advised to

7   proceed simultaneously under the more cumbersome procedures of the

8   Hague Convention" and as a result, the Special Master suggested the

9   Court give its prompt attention to DAPs' motions for issuance of

10  letters of request.  R&R at 6.

11      Now Thomson objects.

12

13  **III.  LEGAL STANDARDS**

14      **A.   Review of Orders by the Special Master**

15      The Court reviews the Special Master's factual findings for

16  clear error, his legal conclusions de novo, and his procedural

17  decisions for abuse of discretion.  Fed. R. Civ. P. 53(f)(3)-(5);

18  ECF No. 302 (appointing the previous special master).

19      **B.   Discovery of Evidence Located Abroad**

20      The Federal Rules of Civil Procedure authorize party-initiated

21  discovery of any evidence that is relevant to any party's claims or

22  defenses.  Fed. R. Civ. P. 26(b)(1).  However, Rule 26 grants the

23  court discretion to limit discovery on several grounds, including

24

25  [5] The Special Master did, however, deny the motion to compel as to
    one category of documents he found might run afoul of the
26  undersigned's prior order foreclosing discovery of the European
    Commission's investigation and confidential decision involving
27  these Defendants.  See In re Cathode Ray Tube (CRT) Antitrust
    Litig., No. 07-cv-5944-SC, 2014 WL 1247770, at *2-4 (N.D. Cal. Mar.
28  26, 2014).  That decision is currently the subject of a renewed
    motion to compel by DAPs.  ECF No. 2843.

**United States District Court**
For the Northern District of California

1   international comity.  See Aerospatiale, 482 U.S. at 544.

2   The Supreme Court and the Ninth Circuit agree that comity and

3   foreign law alone are not dispositive when a discovery dispute

4   arises regarding a foreign law's protection of documents sought in

5   a United States court.  See id. at 544 & n.29; Societe

6   Internationale Pour Participations Industrielles et Commerciales v.

7   Rogers, 357 U.S. 197, 208 (1958); Richmark Corp. v. Timber Falling

8   Consultants, 959 F.2d 1468, 1474-75 (9th Cir. 1992).  The Court

9   must consider the following factors in determining whether or not

10  foreign law excuses noncompliance with a United States court's

11  discovery orders:

12      (1) the importance to the . . . litigation of the
        documents or other information requested; (2) the degree
13      of specificity of the request; (3) whether the
        information originated in the United States; (4) the
14      availability of alternative means of securing the
        information; and (5) the extent to which noncompliance
15      with the request would undermine important interests of
        the United States, or compliance with the request would
16      undermine important interests of the state where the
        information is located.

17

18  Aerospatiale, 482 U.S. at 544 n.28.  This list is not exhaustive.

19  The Ninth Circuit has also considered other factors, including "the

20  extent and the nature of the hardship that inconsistent enforcement

21  would impose upon the person, . . . [and] the extent to which

22  enforcement by action of either state can reasonably be expected to

23  achieve compliance with the rule prescribed by that state."  United

24  States v. Vetco, Inc., 691 F.2d 1281, 1287 (9th Cir. 1981); see

25  also Richmark, 959 F.2d at 1475.

26  **C.   Modification of Scheduling Orders**

27  Scheduling orders "may be modified only for good cause and

28  with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Pretrial

**United States District Court**
For the Northern District of California

1  scheduling orders may be modified if the dates scheduled "cannot

2  reasonably be met despite the diligence of the party seeking the

3  extension." <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604,

4  609 (9th Cir. 1992).  The focus of the good cause inquiry is "on

5  the moving party's reasons for seeking modification.  If that party

6  was not diligent, the inquiry should end." <u>Id.</u>

7

8  **IV.  <u>DISCUSSION</u>**

9      The Court addresses three main issues in this order.  First,

10  Thomson's objections to the Special Master's report and

11  recommendation granting Sharp and DAPs' motion to compel Thomson to

12  produce documents and deponents under the Federal Rules of Civil

13  Procedure.  After concluding that the motion to compel should be

14  granted, the Court then turns to DAPs' parallel requests for the

15  same or similar discovery by means of letters of request for

16  international judicial assistance, and DAPs' motion to extend the

17  discovery deadline to permit the discovery at issue to take place.

18      **A.   <u>Objection to Special Master's Recommendation</u>**

19      In granting Sharp's motion, the Special Master made three

20  findings Thomson considers objectionable.  First, the Special

21  Master apparently misinterpreted a letter received from the French

22  Ministry of Foreign Affairs stating that the provisions of the

23  Blocking Statute are "mandatory," and as a result, Thomson

24  concludes his analysis is "premised on a fundamental error."  Obj.

25  at 1.  Second, Thomson argues the "extraordinary expense and

26  burden" imposed by DAPs' requests, <u>id.</u> at 2, belies the Special

27  Master's conclusion that the discovery sought could be "completed

28  in a matter of weeks, not months or years."  R&R at 7.  Finally,

**United States District Court**
For the Northern District of California

Thomson seizes upon the Special Master's observation that the Court might cure possible prejudice resulting from these late discovery requests in addressing forthcoming proposals for structuring the trials in these matters, and argues that separate treatment would "severely prejudice Thomson . . . ." Obj. at 2.

The Court reviews each issue <u>de novo</u>.

### 1. <u>Blocking Statute and International Comity</u>

Thomson's chief objection to the Special Master's report and recommendation relates to the French Blocking Statute. Perhaps no single law better illustrates the gulf between American and civil law countries' attitudes toward pre-trial discovery than the Blocking Statute. <u>See</u> Diana Lloyd Muse, Note, <u>Discovery in France and the Hague Convention: The Search for a French Connection</u>, 64 N.Y.U. L. Rev. 1073, 1073-78 (1989) (reviewing the historical, social, and cultural context of the Blocking Statute). As the Special Master put it, were the Blocking Statute to be applied literally, it "would thwart much of the normal process of discovery from French nationals and of evidence located in that country." R&R at 4-5.

In short, the parties disagree as to what extent, if any, the interests in international comity embodied in the Hague Convention should compel DAPs to refine their requests and resort to the Convention's letters of request process so as to avoid running afoul of the Blocking Statute. DAPs argue that because the Supreme Court held in <u>Aerospatiale</u> that the Hague Convention's procedures for obtaining discovery abroad serve as a "permissive supplement, not a pre-emptive replacement, for other means of obtaining evidence abroad," 482 U.S. at 539-40, and the comity factors

United States District Court
For the Northern District of California

1    identified by the Court and the Ninth Circuit weigh in their favor,

2    the Court should order Thomson to submit to discovery pursuant to

3    the Federal Rules of Civil Procedure.  Thomson disagrees, citing a

4    letter from an official at the French Ministry of Foreign Affairs

5    suggesting that the Blocking Statute's provisions are "mandatory,"

6    and that Hague Convention procedures are "potentially applicable in

7    this case."  As a result, Thomson argues it may be subjected to

8    potential criminal sanctions if it were compelled to produce these

9    documents or witnesses outside the Hague Convention process.  See

10   Docs. Opp'n at 2-3 (citing In re Advocat Christopher X., Cour de

11   cassation [Cass. Crim.], Paris, crim., Dec. 12, 2007, Bull. crim.,

12   No. 7168 [JurisData No. 2007-83228] (Fr.) (fining a lawyer €10,000

13   for violating the blocking statute)).

14       As mentioned before, the Court considers a series of factors

15   in weighing whether foreign laws like the French Blocking Statute

16   excuse compliance with an American discovery requests.

17   Specifically the Court considers: (1) the importance of the

18   discovery to this litigation, (2) the specificity of the requests,

19   (3) the origin of the information sought, (4) whether alternative

20   means are available to obtain the discovery, (5) the interests of

21   the United States and foreign state, (6) the extent of hardship,

22   and (7) "the extent to which enforcement by action of either state

23   can reasonably be expected to achieve compliance with the rule

24   prescribed by that state."  2014 WL 1247770, at *2 (quoting

25   Aerospatiale, at 544 n.28; Vetco, 691 F.2d at 1287).

26       The parties agree that the information sought originated in

27   France, and as a result, that factor weighs in favor of denying the

28   motion to compel.  The Court will address each remaining factor in

turn.

### a.   Importance of the Discovery Sought

First, the discovery sought is highly significant to this litigation.  Courts are often more likely to heed a foreign state's concerns when the case "does not stand or fall on the present discovery order," or if the evidence sought is cumulative, Richmond, 959 F.2d at 1475; In re Rubber Chems. Antitrust Litig., 486 F. Supp. 2d 1078, 1081 (N.D. Cal. 2007).  Here, while it is possible DAPs would be able to prove their claims against Thomson without access to this discovery, doing so would be challenging to say the least.  For example, DAPs seek discovery into Thomson's communications and meetings with competitors.  This information is crucial to DAPs' liability case against Thomson and may inform their liability cases against the other alleged co-conspirators.

Nevertheless, some other materials sought, while relevant, are perhaps less important to this litigation.  For instance, documents produced to the European Commission ("EC") in its confidential investigation of the same alleged cartel are likely to be largely cumulative of other DAPs' other requests.  Finally, while documents and information regarding the disposition of Thomson's CRT business are certainly relevant for discovery purposes, DAPs have not made immediately clear how central those documents are to this litigation.

Despite these flaws, on balance this factor weighs strongly in favor of granting the motion to compel.

### b.   Specificity of the Requests

Second, while always staying within the bounds of permissible discovery under the Federal Rules, at times DAPs requests sweep

**United States District Court**
For the Northern District of California

quite broadly.  "[G]eneralized searches for information whose disclosure is prohibited under foreign law are discouraged." Rubber Chems., 486 F. Supp. 2d at 1083 (citing Richmark, 959 F.2d at 1475).  Thomson argues that many of DAPs' requests are imprecise, overly broad, burdensome, or seek information that has already been produced by Thomson Consumer.  In particular, Thomson takes issue with DAPs' requests for production of documents related to (1) Thomson Consumer's relationship with Thomson SA, (2) the disposition of Thomson's CRT business, and (3) the European Commission's confidential investigation of Thomson and other Defendants in this case.  See ECF No. 2716-2 ("Benson Letters Decl.") Ex. A ("RFP") Requests Nos. 33, 35-37, 42, 46-60.

Several of Thomson's complaints have merit.  For instance, Request Number 33 calls for:

> All Documents relating to any contemplated, proposed, planned, pending or executed purchases, sales, acquisitions, mergers, joint ventures, divestitures, transfers, spin-offs or any other change in ownership of any assets, liabilities, subsidiaries, departments, units or other subdivisions of Your or another company relating to production, distribution, marketing, pricing, sale or resale of CRTs during the Relevant Period.

While this request certainly satisfies the test for relevance in discovery, Rule 26(b)(1), the request is also likely to capture a significant amount of irrelevant information.  At the same time, many, if not most, of DAPs' requests are narrowly-tailored and fall far short of "generalized searches for information." Rubber Chems. 486 F. Supp. 2d at 1083 (citation omitted).  For instance Request Number 2 asks for the identity of executives or employees in management positions with respect to specifically enumerated aspects of Thomson's CRT business.  See ECF No. 2773-1 ("Benson

11

1    Decl.") Ex. 9 at 9.

2        As a result this factor weighs only minimally against granting

3    the motion to compel.

4                    **c.   Availability Through Alternative Means**

5        Third, while these documents are nominally available through

6    Hague Convention procedures, at this stage they may be unavailable

7    as a practical matter.  "If the information sought can easily be

8    obtained elsewhere, there is little or no reason to offend foreign

9    law." Rubber Chems., 486 F. Supp. 2d at 1083.

10       At this late date, it would be difficult, if not impossible,

11   for DAPs to obtain the discovery expeditiously through Hague

12   Convention procedures.  As an empirical study of Hague Convention

13   document and deposition requests found, France is particularly slow

14   to execute Hague Convention requests, and when they are executed,

15   often the results are unsatisfactory.[6]  Furthermore, while Thomson

16   complains that some categories of evidence are available in the

17   U.S. and have already been produced, most of the information sought

18   in the motion to compel must be obtained one way or another from

19   France.

20       Accordingly, the lack of alternative means for obtaining much

21   of the information sought weighs strongly in favor of production.

22                    **d.   The Interests of the United States and France**

23       Fourth, the strong national interests of the United States are

24   at play.  This is a case alleging violations of United States

25

26   [6] See Am. Bar Ass'n, Int'l Litig. Comm., Section of Int'l L. &
     Prac., Report on Survey of Experience of U.S. Lawyers with the
27   Hague Evidence Convention Letter of Request Procedures, at 7, 10-
     11, n.16 (Oct. 9, 2003) ("ABA Report"), available at:
28   http://www.hcch.net/upload/wop/lse_20us.pdf.

**United States District Court**
For the Northern District of California

antitrust laws, laws that are of "fundamental importance to American democratic capitalism." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 634 (1985).  As the Supreme Court has recognized, enforcement of the antitrust laws through private civil actions is an important part of encouraging compliance with those laws.  See Hawaii v. Std. Oil Co. of Cal., 405 U.S. 251, 262 (1972).  On the other hand, France's interests here are significantly weaker.  To be sure, France has an interest in controlling foreign access to information within its borders, and in protecting its citizens from foreign discovery practices it views as antithetical to the French legal culture.  Nevertheless, France also shares an interest in preventing price-fixing behavior, as is demonstrated by the European Commission's investigation and confidential decision involving price-fixing allegations in the CRT market.  See 2014 WL 1247770, at *1 (describing the European Commission decision); see also In re Air Cargo Shipping Servs. Antitrust Litig., 278 F.R.D. 51, 54 (E.D.N.Y. 2010) (noting that "France, given its membership in the European Economic Community . . . " has also adopted prohibitions against price-fixing).  The national interests in enforcement of antitrust laws are "only realized if the parties have access to relevant discovery." Air Cargo, 278 F.R.D. at 54.

As a result, the United States' strong national interests weigh in favor of granting the motion to compel.

### e.   **Extent of Hardship**

Fifth, while Thomson argues this factor weighs strongly in its favor, its position is weaker than it may initially appear. Specifically, Thomson points to the potential for criminal

**United States District Court**
For the Northern District of California

sanctions if they comply with discovery requests outside the Hague Convention process and a letter from the French Ministry of Foreign Affairs stating that the provisions of the Blocking Statute are "mandatory." Obj. at 1. Furthermore, they argue that the Special Master misinterpreted this letter when he concluded that it stems from an "unrelated matter . . . ." R&R at 5.

Thomson is right that the Special Master misinterpreted the letter, however that is not enough to tip the scales on this factor heavily in their favor. While the Supreme Court has stated that "fear of criminal prosecution constitutes a weighty excuse for nonproduction," Aerospatiale, 357 U.S. at 211, many courts have discounted that risk in the context of the French Blocking Statute, noting that the Blocking Statute "does not subject defendants to a realistic risk of prosecution . . . ." Bodner v. Banque Paribas, 202 F.R.D. 370, 375 (E.D.N.Y. 2000); see also Air Cargo, 278 F.R.D. at 53-54; Strauss v. Credit Lyonnais, S.A., 249 F.R.D. 429, 454-55 (E.D.N.Y. 2008); Adidas (Canada) Ltd. v. SS Seatrain Bennington, Nos. 80 Civ. 1911, 82 Civ. 0375, 1984 WL 423, at *3 (S.D.N.Y. May 30, 1984). In fact, the legislative history of the Blocking Statute "gives strong indications that it was never expected or intended to be enforced against French subjects but was intended rather to provide them with tactical weapons and bargaining chips in foreign courts." Adidas, at *3.

Furthermore, Thomson's reliance on a case in which a French court imposed a monetary sanction for violating the Blocking Statute is misplaced. That case, In re Advocat Christopher X, involved a French attorney who made false statements to a potential French witness in an effort to obtain evidence to be used in a case

**United States District Court**
For the Northern District of California

pending in California.  <u>See</u> <u>Air Cargo</u>, 278 F.R.D. at 54 (summarizing the facts of <u>Christopher X</u>).  <u>Christopher X</u> did not involve discovery requests made in the California litigation nor did it involve a court order compelling production under protest. <u>Id.</u>  Thomson has pointed to no similar case, nor indeed any other case, in which the Blocking Statute was enforced against a French company.  As such the Court finds the risk of prosecution in this case, if any, is minimal.  This is true even in light of the Ministry of Foreign Affairs' letter in this litigation.  Notably, nowhere does the letter suggest or threaten prosecution for complying with discovery requests or orders in this litigation. Instead, as at least one other court has found in considering (and rejecting) a similar letter, the letter "does little more than generally state [France's] interest in sovereignty and restate . . . that French civil and criminal laws prohibit [Thomson] from disclosing . . . the information in dispute here." <u>Strauss</u>, 249 F.R.D. at 448.

In short, neither the letter nor the specter of potential criminal prosecution is enough to convince the Court that this factor weighs anything more than minimally in Thomson's favor.

### f.   <u>Conclusion</u>

Having considered the relevant factors, they weigh in favor of permitting discovery to go forward in France pursuant to the Federal Rules of Civil Procedure.  Accordingly, on this point Thomson's objection is DENIED.

### 2.   <u>Remaining Objections</u>

Having found that the factors in <u>Aerospatiale</u> favor production pursuant to the Federal Rules, the Court must turn now to Thomson's

**United States District Court**
For the Northern District of California

remaining two objections. First, Thomson contends that the Special Master failed to appropriately weigh the burdens of production. Obj. at 3-5. Second, Thomson objects to the Special Master's passing reference to trial phasing and Federal Rule of Civil Procedure 42(b) bifurcation motions to the extent he suggested that Thomson's claims may be tried on a different schedule than the other Defendants'. Obj. at 5.

The Rule 42(b) issue can be dispensed with quickly. Nowhere was the Special Master suggesting that Thomson's case should be tried on a separate schedule than the remaining Defendants'. Instead, the Court reads the Special Master to have simply pointed out the possibility that in ruling on the (then unseen) Rule 42(b) motions, the Court might factor in unfinished discovery issues. Now that those motions have been filed, it appears that neither side is seeking to try any of the Defendants on a separate schedule than the others, and the Court is acutely aware of the potential prejudice that Thomson would suffer were their claims to be tried on a different schedule. See ECF No. 2897 ("IPP & DAP 42(b) Mot."); 2903 ("Best Buy Joinder"); 2914 ("Defs.' 42(b) Cross-Mot."). As a result, the Court sees no reason the Special Master's aside regarding the Rule 42(b) motions undermines his (or the Court's) conclusion that DAPs are entitled the discovery at issue here.

The issue of the burdens of discovery is more complicated, but ultimately does not alter the Court's conclusion. In support of their objection on this basis, Thomson provides only scant citation to authority, but the Court takes their objection to be based on Rule 26's requirement that the Court limit discovery if it

United States District Court
For the Northern District of California

determines that the discovery sought is "unreasonably cumulative or duplicative," "the party seeking discovery has had ample opportunity to obtain the information," or the burden of discovery outweighs its expected benefits.  Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).  Specifically Thomson argues that the Special Master was wrong when he concluded that "diligent efforts and cooperation between the parties should allow the discovery sought here to be completed in a matter of weeks, not months or years . . . ," and in any event, because DAPs have long been aware of the information they seek, the Court should deny the motion to compel.  See Obj. at 5 (citing Rule 26(b)(2)(C)(ii) for the proposition that Courts must limit discovery where "the party seeking discovery has had ample opportunity to obtain the information.").

     The Court is not entirely unsympathetic to Thomson's complaints.  As the Court previously observed, some of DAPs' requests are indeed broad.  Furthermore, Thomson's financial situation does appear to be less secure than that of many of the other Defendants.  Nonetheless, DAPs' requests are indisputably relevant, and even if not perfectly tailored, they are essential to DAPs' case against Thomson.  As Rule 26(b)(2)(C)(i) expressly contemplates, sometimes discovery may be somewhat cumulative or duplicative while nonetheless being permissible.  See id. (stating the court must limit discovery if it is "unreasonably cumulative or duplicative") (emphasis added).  Furthermore, "broad discovery may be needed to uncover evidence of invidious design, pattern, or intent" in antitrust cases.  In re Urethane Antitrust Litig., 261 F.R.D. 570, 573 (D. Kan. 2009) (quoting source).  Accordingly, the Court finds no need to limit discovery on the bases enumerated in

**United States District Court**
For the Northern District of California

1   Rule 26(b)(2)(C)(i).

2        Second, Thomson's suggests that, because DAPs have been aware

3   of the information sought since "sometime between 2011 and 2013,"

4   the Court should deny them access to the information now.  Thomson

5   is mistaken on this point as well.  First, it is difficult to

6   conclude that DAPs have had "ample opportunity to obtain the

7   information" at issue here given that discovery was stayed during

8   the pendency of Thomson's motion to dismiss.  Benson Decl. at Ex. 3

9   ("Order Staying Discovery").  Because of the stay, discovery

10  against Thomson only began after March 13, 2014, when the Court

11  denied Thomson's motion to dismiss.  ECF No. 2240 ("Thomson MTD

12  Order").  Furthermore it appears that DAPs have been

13  extraordinarily diligent since that date, seeking the instant

14  discovery as of April 2014 -- roughly a month after discovery of

15  Thomson began -- and furnishing to the Court numerous other

16  discovery requests also served on Thomson during that period.

17  Benson Decl. ¶¶ 16-32 (showing numerous discovery requests since

18  April 2014); ¶¶ 33-41 (outlining Sharp's initial efforts to seek

19  the specific materials at issue here and the subsequent attempts to

20  resolve those issues through meeting and conferring).  Accordingly,

21  the Court cannot find DAPs had "ample" opportunity to obtain this

22  discovery sooner.

23        Finally, even if Thomson is right that the discovery sought

24  will take longer than the Special Master suggested, that does not

25  fatally undermine Judge Walker's recommendation.  After all, based

26  on their motion to extend the discovery deadline, DAPs appear to

27  believe that the discovery at issue here can be completed within

28  sixty days of the signature date of this order.  See Deadline Mot.

**United States District Court**
For the Northern District of California

at 4.   Thomson has offered no suggestions as to how long would be
necessary to review and produce the documents at issue here, aside
from saying that granting DAPs' requests will push discovery
"months past the September 5, 2014 deadline," and "make it
extremely difficult . . . to prepare for a March 2015 trial."   Obj.
at 4.   Thomson's complaints about the challenges of translation and
the size of the necessary productions are well met, but tempered by
the fact that Thomson's production to date of 15,799 documents is
paltry in the context of this large and complex case.   <u>See</u> Benson
Decl. ¶¶ 6-7 (comparing Thomson's production with the approximately
1.2 million documents produced by all defendants).   Finally, even
if the discovery at issue here is burdensome, Rule 26 once again
recognizes that the burden of discovery must be weighed against its
likely benefit.   Rule 26(b)(2)(C)(iii).   As the Court has
repeatedly found, these materials are essential for DAPs' case
against Thomson.   Accordingly, even considering the burdens of
production on Thomson, the Court finds they are offset by the
benefits of permitting this discovery.

### 3.   Conclusion

Having considered Thomson's objections to the Special Master's
report and recommendations, the objection is DENIED.   Accordingly,
DAPs' motion to compel is GRANTED.

### B.   Remaining Motions

Having rejected Thomson's objections, two issues remain:
First, DAPs' motions for the issuance of letters of request, and
second, DAPs' motion to extend the discovery deadline.

The Court believes that DAPs' motions for the issuance of
letters of request may be denied as moot.   However, the record is

**United States District Court**
For the Northern District of California

1   not sufficiently clear for the Court to do so at this time.   For

2   instance, in DAPs' motion to compel before the Special Master, DAPs

3   appear to seek only documents and perhaps just one Rule 30(b)(6)

4   deponent.   R&R at 2.   Nonetheless DAPs' motion for the issuance of

5   letters of request seeks depositions of four witnesses.

6   Accordingly, within five (5) days of the signature date of this

7   order, Sharp is ORDERED to file a statement of not more than four

8   (4) pages explaining whether it wishes to continue to press its

9   motions for the issuance of letters of request.   If Sharp does not

10  file the statement within five days, the Court will deny the

11  motions for letters of request as moot.

12      Turning finally to Sharp's motion for an extension of the

13  discovery deadline, the Court finds that Sharp and DAPs have

14  diligently pursued discovery against Thomson and good cause exists

15  to extend the discovery deadline.   As the Ninth Circuit has

16  observed, scheduling orders may be modified for good cause, and any

17  analysis of good cause focuses "on the moving party's reasons for

18  seeking modification.   If that party was not diligent, the inquiry

19  should end."   Johnson, 975 F.2d at 609.   The Court has previously

20  observed that "centering the good cause analysis on the moving

21  party's diligence prevents parties from profiting from

22  carelessness, unreasonability, or gamesmanship, while also not

23  punishing parties for circumstances outside their control."   ECF

24  No. 2877 ("Cal. AG Discover Order"), at 5 (citing Orozco v. Midland

25  Credit Mgmt. Inc., No. 2:12-cv-02585-KJM-CKD, 2013 WL 3941318, at

26  *3 (E.D. Cal. July 30, 2013)).

27      Ultimately, the diligence inquiry comes down to two questions.

28  First, did Sharp and DAPs unreasonably delay in seeking this

**United States District Court**
For the Northern District of California

1  discovery given that they knew or should have known of the

2  potential relevance of this discovery earlier?  Second, did DAPs

3  act diligently after discovering Thomson's position on the

4  applicability of the French Blocking Statute?  ECF No. 2554

5  ("Thomson Discovery Stip.") at 4 (emphasis added).

6      First, in Thomson's view, "it is undisputed that the DAPs knew

7  of the potential relevance of" certain witnesses "no later than

8  August 2013," yet failed to seek deposition testimony from them

9  until much later.  However, as the Court noted earlier, discovery

10 of Thomson was stayed for much of that time, and it appears that

11 DAPs specifically inquired as to the status of several of the

12 witnesses at issue on April 11, 2014, approximately a month after

13 the discovery stay was lifted.  Benson Decl. at Ex. 8.  Moreover,

14 also approximately a month after discovery of Thomson began, DAPs

15 served a Rule 30(b)(6) deposition notice on Thomson SA.  Id. at Ex.

16 25.  Similarly, the requests for production at issue here were also

17 promulgated in April 2014.  Id. at ¶¶ 16, 20.  Because Sharp and

18 the other DAPs were pursing the witnesses and materials at issue at

19 an early date, the Court finds that Sharp and the other DAPs acted

20 diligently in seeking the discovery at issue here.

21     Similarly, the Court cannot find a lack of diligence in DAPs'

22 failure to pursue Hague Convention procedures earlier, or to

23 otherwise seek judicial resolution of the parties' dispute about

24 the applicability of the French Blocking Statute.  Thomson argues

25 that DAPs "have known since, at the very latest, May 14, 2014,"

26 that Thomson interpreted the French Blocking Statute to bar

27 production of the documents and witnesses DAPs seek.  Deadline

28 Opp'n at 5.  But the record shows that within thirteen days of

**United States District Court**
For the Northern District of California

1   receiving Thomson's objections, DAPs sought to meet and confer

2   regarding this and other issues and the parties' attempts to

3   resolve their dispute continued for almost two months.  See Benson

4   Decl. ¶¶ 33-41.  After that meet and confer process was completed,

5   DAPs filed the motion to compel before Judge Walker within days.

6   Given Thomson's prior suggestion that it would work to produce

7   documents and witnesses without demanding Hague Convention

8   procedures where possible, the Court cannot fault DAPs for

9   proceeding as they did.  Furthermore, the Court certainly cannot

10  conclude DAPs were not diligently pursuing discovery when they

11  were, in fact, making an effort to resolve these issues without

12  pursuing them before the Special Master or the Court.

13      Because the Court finds that Sharp and the other DAPs

14  proceeded diligently in pursuing discovery against Thomson and good

15  cause exists for an extension of the discovery deadline to permit

16  document discovery and depositions to go forward, Sharp's motion to

17  extend the discovery deadline to permit taking additional discovery

18  from Thomson SA and Thomson Consumer is GRANTED.  The cutoff of

19  discovery with Thomson will therefore be extended sixty (60) days

20  from the signature date of this order.

21

22  **V.**   **CONCLUSION**

23      The Court ORDERS as follows:

24          • Thomson's objection to the Special Master's report and

25            recommendation regarding DAPs' motion to compel is

26            DENIED.

27          • DAPs' motion to compel is GRANTED.

28          • Sharp is ORDERED to file within five (5) days of the

signature date of this order, a statement of not more
than four (4) pages explaining whether it wishes to
continue to press its motions for the issuance of
letters of request.  If Sharp does not file the
statement within five days, the Court will deny the
motions for letters of request as moot.

- DAPs' motion to extend time for the taking of
  discovery from Thomson SA and Thomson Consumer is
  GRANTED.

IT IS SO ORDERED.

Dated: October 23, 2014

_____
UNITED STATES DISTRICT JUDGE