Kenneth S. Marks
Jonathan J. Ross
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Facsimile:   (713) 654-6666
kmarks@susmangodfrey.com
jross@susmangodfrey.com

*Attorneys for plaintiff Alfred H. Siegel, solely
in his capacity as Trustee of the Circuit City
Stores, Inc. Liquidating Trust*
[additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 07-5944 SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| ALL INDIRECT PURCHASER ACTIONS | |
| *Siegel v. Hitachi, Ltd.*, No. 11-cv-05502; | **INDIRECT PURCHASER PLAINTIFFS' AND DIRECT ACTION PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SEPARATE TRIALS; OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION OF TRIALS** |
| *Target Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514; | |
| *Sears, Roebuck and Co., & Kmart Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514-SC; | |
| *Sharp Elecs. Corp. v. Hitachi, Ltd.*, No. 13-cv-01173; | |
| *Sharp Elecs. Corp. v. Koninklijke Philips Elecs. N.V.*, No. 13-cv-02776 | The Honorable Samuel Conti |
| *Siegel v. Technicolor SA, et al.*, No. 13-cv-05261; | |
| *Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA*, No. 3:13-cv-05262; | |
| *Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686; | |
| *Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 14-cv-02510 | |

i

# TABLE OF CONTENTS

SUMMARY ............................................................................................................... 1

ARGUMENT ........................................................................................................... 4

    I.    LEGAL STANDARD ...................................................................... 4

        A.    Standards for Consolidation Versus Separate Trials................................. 4

        B.    Fairness Is Paramount ............................................................... 5

    II.    A CONSOLIDATED TRIAL WILL PREJUDICE PLAINTIFFS, CONFUSE THE JURY, AND INVITE REVERSIBLE LEGAL ERROR ................................................................................................ 5

        A.    Jury Prejudice Caused By Pass-through Evidence...................................... 7

        B.    Jury Confusion Caused By Inherent Case Differences and Complexity ............................................................................... 9

        C.    Jury Instructions Cannot Cure The Prejudicial Effects and Jury Confusion Caused By a Single, Consolidated Trial.................................. 12

        D.    Consolidation Would Also Be Procedurally Inappropriate ...................... 13

    III.    SEPARATE TRIALS ARE NOT LIKELY TO CONSUME MORE JUDICIAL RESOURCES.................................................................. 14

    IV.    THE CURRENT EXISTENCE OF BEST BUY'S STATE CLAIM DOES NOT SUPPORT THE DENIAL OF PLAINTIFFS' MOTION ............... 17

CONCLUSION ........................................................................................................ 18

ii

**INDIRECT PURCHASER PLAINTIFFS' AND DIRECT ACTION PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SEPARATE TRIALS; OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION OF TRIALS**
MDL No. 1917

3377267v1/012325

1

## TABLE OF AUTHORITIES

2

3   <u>Cases</u>

4   *Advanced Microtherm, Inc. v. Norman Wright Mechanical Equipment Corp.*,
5       2006 WL 753028 (N.D. Cal. March 23, 2006) ...................................................... 4

6   *Arnold v. Eastern Air Lines, Inc.*,
    712 F.2d 899(4th Cir.1983) ..................................................................................... 5

7

8   *Bautista-Perez v. Holder*,
    2009 WL 2031759 (N.D. Cal. July 9, 2009) ........................................................... 4

9   *California v. ARC America Corp.*,
10      490 U.S. 93 (1989) ............................................................................................. 2, 13

11  *Crown Cork & Seal Company, Inc. Master Retirement Trust v. Credit Suisse First Boston Corp.*,
    288 F.R.D. 335, 337 (S.D.N.Y. 2013) .................................................................... 6

12

13  *Dixon v. CSX Transp., Inc.*,
    990 F.2d 1440 (4th Cir. 1993) ...................................................................... 6, 7, 13

14

15  *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
    392 U.S. 481 (1968) ...................................................................... 1, 7, 8, 13

16  *Hayes v. Arthur Young & Co.*,
    34 F.3d 1072, 1994 WL 463493 (9th Cir. 1994) .................................................... 7

17

18  *In re Bendectin Litigation*,
    857 F.2d 290 (6th Cir. 1988) ................................................................................. 18

19

20  *In re Brand Name Prescription Drugs Antitrust Litig.*,
    1995 WL 399684 (N.D. Ill. July 7, 1995) ......................................................... 5, 13

21  *In re Paris Air Crash of March 3, 1974*,
22      69 F.R.D. 310 (C.D. Cal. 1975) ............................................................................. 5

23  *In re Polyurethane Foam Antitrust Litig.*,
    Case No. 1:10-MD-2196 (N.D. Ohio July 3, 2014) ............................................... 8

24

25  *In re Static Random Access Memory Antitrust Litigation*,
    2010 WL 10086747 (N.D. Cal. Dec. 16, 2010) ..................................................... 8

26

27  *In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    Case No. M-07-1827-SI (N.D. Cal. Nov. 23, 2010) ........................................ 8, 9, 14, 15

28

**INDIRECT PURCHASER PLAINTIFFS' AND DIRECT ACTION PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SEPARATE TRIALS; OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION OF TRIALS**
MDL No. 1917

3377267v1/012325

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
    2012 WL 4858836  (N.D. Cal. Oct. 11, 2012) .................................................................. 16

*In re Wyoming Tight Sands Antitrust Cases*,
    1990 WL 155542 (D. Wy. Sept. 6, 1990) ...................................................................... 8

*Johnson v. Celotex Corp.*,
    899 F.2d 1281–85 (2d Cir. 1990) ................................................................................. 2

*Jordan Video, Inc. v. 144942 Canada, Inc.*,
    617 F.3d 1146 (9th Cir. 2010) .................................................................................... 12

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993) ................................................................................... 2, 5

*McDaniel v. Anheuser-Busch, Inc.*,
    987 F.2d 298 (5th Cir. 1993) ..................................................................................... 13

*Myspace Inc. v. Graphon Corp.*,
    732 F. Supp. 2d 915 (N.D. Cal. 2010) ......................................................................... 4

*Siddiqi v. Regents of the Univ. of Cal.*,
    2000 WL 33190435 (N.D. Cal. Sept. 6, 2000) ............................................................. 4

*Solannex, Inc. v. MiaSole*,
    2012 WL 1894268 (N.D. Cal. May 23, 2012 ) ....................................................... 3, 4, 6

*Vann v. Citicorp Sav. of Illinois*,
    891 F.2d 1507 (11th Cir. 1990) .................................................................................. 14

*Winnett v. Caterpillar, Inc.*,
    2010 WL 424914 (M.D. Tenn. Jan. 28, 2010) ............................................................ 10

*Zaldana v. K.R. Home*,
    2010 WL 4313777 (N.D. Cal. Oct. 26, 2010) ............................................................. 13

**Statutes**

N.Y. Gen. Bus. Law § 349 .................................................................................................. 9

**Rules**

Fed. R. Civ. P. 21 ......................................................................................................... 13, 14

Fed. R. Civ. P. 42 .......................................................................................................... 4, 13

Fed. R. Civ. P. 42(b) ................................................................................................. 4, 13, 14

Fed. R. Civ. P. 54(b) ......................................................................................................... 14

iv

**INDIRECT PURCHASER PLAINTIFFS' AND DIRECT ACTION PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR SEPARATE TRIALS; OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION
OF TRIALS**
MDL No. 1917

3377267v1/012325

**<u>Treatises</u>**

9 Wright & Miller, *Federal Practice and Procedure*:
     Civil § 2387 (1971) ......................................................................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INDIRECT PURCHASER PLAINTIFFS' AND DIRECT ACTION PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR SEPARATE TRIALS; OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR CONSOLIDATION
OF TRIALS**
MDL No. 1917

3377267v1/012325

The Indirect Purchaser Plaintiff Class ("IPPs") and six of the seven Direct Action Plaintiffs ("DAPs") (collectively "Plaintiffs") whose cases are to be tried in this Court submit this reply in support of their motion for separate trials, and oppose Defendants' cross-motion for consolidation of trials.[1]

## SUMMARY

Separate trials of the IPP and DAP cases is the only way to provide both the IPPs and DAPs a fair trial untainted by prejudice, to adhere to the clear (and undisputed) rule of *Hanover Shoe*, and to minimize the potential for a single jury to be overwhelmed and confused by a trial involving three levels of purchasers of CRTs and CRT Products and a jury charge and instructions covering more than thirty claims.

Defendants' consolidated trial proposal is devoid of legal authority and is a transparent effort to distract from the merits of Plaintiffs' claims and pit Plaintiffs against each other at trial. Defendants do not dispute that prejudice to Plaintiffs will result from a consolidated trial. Defendants do not deny that in a consolidated trial the DAPs' Sherman Act claims will be pitted directly against the IPPs' state antitrust and consumer protection claims because the IPPs *must* establish pass-through of the price-fixing overcharges from the DAPs to them to prove they were damaged. Since such evidence necessarily supports Defendants' position that the DAPs were not injured by the overcharges, there can be no more clear violation of *Hanover Shoe* and no greater

---

[1]   Of the six DAPs, Sharp has withdrawn its claims under state law, and Circuit City has filed a stipulation with the Court dismissing its state law claims.  A third DAP, Target, has advised defendants it intends to dismiss its state law claims and will submit a stipulation to the Court shortly.  A fourth DAP, Viewsonic, did not assert state law claims.   Thus, four of the six DAPs assert claims only under the Sherman Act.  The remaining two DAPs, Kmart and Sears, have stated they will dismiss their state law claims if the motion for separate trials is granted.  This is not to "leverage" the Court, as Defendants suggest, but to facilitate the orderly disposition of these cases.  In dismissing these claims,  Kmart, Sears and other DAPs will forego substantial damages based on purchases from third parties of billions of dollars of CRT products containing defendants' price-fixed CRTs.  The seventh direct action plaintiff with a case in this Court, Best Buy, supports separate trials of the IPP and DAP cases, as indicated in its joinder in the motion filed on October 7, 2014.  [MDL Docket No. 2903.]

prejudice to the DAPs' rights to recover under the Sherman Act. Compelling the DAPs to try their Sherman Act claims in the same trial as their downstream customers would be, we respectfully submit, legal error. Defendants cite no case where a court has combined DAPs and a class of their downstream purchasers in a consolidated trial.

And Defendants say nothing about the prejudice to the IPPs resulting from a single, consolidated trial. The IPPs are entitled to the full measure of their damages under state antitrust and consumer protection laws, yet a single trial exposes them to a compromise jury verdict that improperly allocates damages between the IPPs and DAPs. Defendants have no response to *California v. ARC America Corp.*'s holdings that "Congress intended the federal antitrust laws to supplement, not displace state antitrust remedies," and that there is no "federal policy against States imposing liability in addition to that imposed by federal law." 490 U.S. 93, 102, 105 (1989). Nor do Defendants deny that if an issue of duplicative recovery arises, it should be dealt with post-trial in a remittitur proceeding, not *ad hoc* by the jury. *See* Plfs' Opening Br. at 8-11.

Aside from considerations of prejudice, Defendants make no mention of the tremendous likelihood of jury confusion if these highly complex cases are presented in a single trial. The jury would have to contend with the different damages claims of several DAPs and distinguish those claims from the claims of the IPPs; sort through the contradictory testimony of numerous economic and other experts, the testimony of numerous other witnesses, and reams of documentary evidence; and absorb complicated antitrust concepts on pass-through and the distinctions between direct and indirect purchaser claims. That is a lot to ask of one jury, regardless of jury instructions.

Issues of economy and efficiency for the parties and the Court are the main reason Defendants say a single, consolidated trial should be held. But the law is clear that "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial."[2] Defendants announce for the first time in their opposition that a consolidated

---

[2] *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993), citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284–85 (2d Cir. 1990) (citations omitted), cert. denied, 498 U.S. 920

trial will take eight weeks, whereas they argue two separate trials could take a minimum of four months.  Defendants misstate and exaggerate the comparison.  A DAP-only first trial will not require eight weeks; it can be completed in less time.  While the necessity for and duration of a later IPP-only trial is unclear at this point, the combination of collateral estoppel and real-world verdict experience of a DAP trial will result in a significantly shorter IPP trial.  It is posturing for the Defendants to suggest that they would find no basis for compromise with the IPPs following a fully litigated trial on conspiracy, overcharges, and damages to the DAPs.  Even if Defendants are entirely unreasonable, the comparison for the Court's time is not eight weeks versus twice that; the likely difference, if there is a second trial at all, is much less.

Defendants contend that prejudice to the Plaintiffs is not a basis for separate trials because DAP Best Buy's assertion of its claims under Minnesota law means defensive pass-through will be aired even in a separate DAP trial.  Defendants' contention is incorrect.  Best Buy separately joined the DAPs' motion because of its view that defensive pass-through is not a permitted defense under the Minnesota Antitrust Act.  [MDL Docket No. 2903.]  For this reason, Best Buy envisions that its Minnesota claim can be tried along with all DAPs' Sherman Act claims.  If the Court agrees with Best Buy on this issue, then defensive pass-through will not be mentioned in any context in a separate DAP trial.  If the Court disagrees with Best Buy and finds defensive pass-through is a defense under the Minnesota Antitrust act, Best Buy's joinder does not state it will continue to prosecute its Minnesota antitrust claim.  Like the other DAPs, who either did not bring or would dismiss their state law claims as part of a first trial, Best Buy would be expected to assess the enormous prejudicial effect of defensive pass-through on its federal antitrust claims and dismiss that claim.  In the unlikely event that Best Buy does not dismiss its state law claim, the moving parties reserve the right to request that the Court sever Best Buy from the DAP and IPP trials to avoid substantial prejudice.

---

(1990); *Solannex, Inc. v. MiaSole*, No. 11-CV-00171-PSG, 2012 WL 1894268, at *2 (N.D. Cal. May 23, 2012) .

Separate trials are the only way to prevent prejudice and jury confusion, and ensure effective management of the trial.   The Court should grant Plaintiffs' motion and deny Defendants' cross-motion.

## ARGUMENT

### I.   LEGAL STANDARD

#### A. Standards for Consolidation Versus Separate Trials

Rule 42 of the Federal Rules of Civil Procedure governs consolidation and separate trials.[3]  Rule 42 factors include: "(1) the complexity of the issues; (2) whether there would be a risk of jury misunderstanding in a nonbifurcated trial; (3) whether bifurcation would facilitate disposition of the issues; and (4) whether bifurcation would prejudice either of the parties." [4] The same standards govern consolidation.[5]  "Ordering separate trials is, in effect, the 'flip side' of consolidation."[6]

The presence of even one factor will support separate trials: "It is noted that the standards of *convenience, avoidance of prejudice*, and what will be *conducive to expedition and*

---

[3] Rule 42 subd. (b) states:  "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b).

[4] *Bautista-Perez v. Holder*, No. C 07-4192, 2009 WL 2031759, at *12 (N.D. Cal. July 9, 2009); *accord, Siddiqi v. Regents of the Univ. of Cal.*, No. C 99-0790, 2000 WL 33190435, at *9 (N.D. Cal. Sept. 6, 2000) ("Factors to be considered when determining whether or not to bifurcate include: (1) convenience, (2) prejudice, (3) judicial economy, (4) risk of confusion, and (5) separability of issues"); *Myspace Inc. v. Graphon Corp.*, 732 F. Supp. 2d 915, 917 (N.D. Cal. 2010) (listing similar factors).

[5] *Solannex, Inc. v. MiaSole* , No. 11–CV–00171–PSG, 2012 WL 1894268, at *2 (N.D. Cal. May 23, 2012 ) (to determine whether to consolidate, "the court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation. 'Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial.'" (internal citations omitted)).

[6] *Advanced Microtherm, Inc. v. Norman Wright Mechanical Equipment Corp.*, No. C 04 02266 JW, 2006 WL 753028, at *2 (N.D. Cal. March 23, 2006).

4

*economy* are all in the *alternative*.  Thus, they need not all be present for separation or severance, but the presence of any one of them is sufficient to sustain an order for a separate trial in the exercise of an informed discretion." *In re Paris Air Crash of March 3, 1974*, 69 F.R.D. 310, 319 (C.D. Cal. 1975) (emphasis in original).

### B. Fairness Is Paramount

The most important concern in deciding whether to consolidate or separate actions for trial is fairness.  *See Malcolm v. Nat'l Gypsum Co.*, 995 F.2d at 350 ("the discretion to consolidate is not unfettered.  Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial"); *Arnold v. Eastern Air Lines, Inc.*, 712 F.2d 899, 906 (4th Cir.1983) (en banc), cert. denied, 464 U.S. 1040 (1984) ("a trial must remain fair to both parties, and such considerations of convenience may not prevail where the inevitable consequence to another party is harmful and serious prejudice").

In short, "[a]lthough the possibility of conserving resources" through consolidated trials "is attractive, a party's individual rights must not be lost in the shadow of towering mass litigation." *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-C-897, 1995 WL 399684, at *2 (N.D. Ill. July 7, 1995) (internal citation omitted).

## II.   A CONSOLIDATED TRIAL WILL PREJUDICE PLAINTIFFS, CONFUSE THE JURY, AND INVITE REVERSIBLE LEGAL ERROR

Holding a consolidated trial with the IPPs and DAPs, as Defendants propose, invites reversible legal error.[7]  Two of the most important factors in deciding whether to consolidate or

---

[7] *Arnold,* 712 F.2d at 906-07 ("Consolidation, or refusal to sever, where prejudice results under the facts and circumstances of the particular case, amounts to abuse of discretion, constituting reversible error.")

hold separate trials are prejudice and jury confusion.[8]  A consolidated trial of the IPP and DAP claims will lead to both.

For example, in *Dixon v. CSX Transp., Inc.,* 990 F.2d 1440 (4th Cir. 1993), a personal injury action brought by a railroad association workerand his wife, the Fourth Circuit reversed a jury verdict on the grounds that the district court committed legal error by denying defendant's motion to try plaintiffs' Federal Employers' Liability Act (FELA) claim and state claims separately.  The Court of Appeals found that the jury heard inflammatory evidence on loss of consortium, relevant to the state law claims but not to the FELA claim; and it heard other evidence relevant to the FELA claim but not the state law claims.

"The inevitable effect of the introduction of this highly prejudicial evidence was to deny [the defendant] the fair trial to which it was entitled on both the Dixons' federal and state and law claims."  *Id.* at 1443.  In addition, the joint trial of "these distinct actions" also caused "considerable juror confusion, as evidenced by the damages awards on the alternative verdicts.[9] *Id.* at 1444.  As the Court of Appeals explained:

> The district court undoubtedly believed that the simultaneous trial of these two alternative causes of action would conserve judicial resources and save all parties and witnesses time and expense.  Whether or not these laudable goals were served by the single proceeding, 'a trial must remain fair to both parties, and such

---

[8] *See, e.g., Solannex,* 2012 WL 1894268, at *2 (("Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial.'" (internal citations omitted)); *Crown Cork & Seal Company, Inc. Master Retirement Trust v. Credit Suisse First Boston Corp.*, 288 F.R.D. 335, 337 (S.D.N.Y. 2013) ("In the court's view, eliminating the likelihood of juror confusion is the foremost fact in support of bifurcating the trial.").

[9] On the FELA claim, the jury was instructed to reduce damages awarded for lost wages or injury to earning capacity to reflect anticipated income taxes; to award damages for loss of enjoyment of life; and to reduce any awards for future lost wages and medical expenses to present value. Then, after the jury returned its verdict on the FELA claim, it was instructed on the state law claims *not* to deduct income taxes from any award for lost wages or injury to *Dixon*; *not* to award damages for loss of enjoyment of life (not being actionable under state law); and reduce to present value *all* future damages, including damages for pain and suffering. *Id.* at 1444.

considerations of convenience may not prevail where the inevitable consequence to another party is harmful and serious prejudice.' [Internal citations omitted.] In the circumstances of this case, we are left with the firm conviction that, because the district court tried the federal and state claims together, thereby exposing the jury to the inflammatory and irrelevant evidence on the respective claims recited above, [defendant] CSX did not receive a fair trial on either the FELA or the state law claims. *Id.* at 1445.

The potential for the reversible error found to exist in *Dixon* lurks here as well: (1) the jury will hear evidence related to pass-through and other issues relevant to the IPPs' state law claims that is both prejudicial and irrelevant to the DAPs' Sherman Act claims; and (2) the jury is likely to be confused by the differences in damages permitted under the Sherman Act claims and the state law claims. In addition, it is unrealistic to expect a single jury to take on the daunting task of resolving not only seven DAP cases but also the IPP class claims under the laws of 22 states.

In the sections below, Plaintiffs make the following offer of proof regarding the prejudice and jury confusion that will occur in a consolidated trial. *See Hayes v. Arthur Young & Co.,* 34 F.3d 1072, 1994 WL 463493, at *7 (9th Cir. 1994) (need for detailed offer of proof regarding bifurcation).

### A.  Jury Prejudice Caused By Pass-through Evidence

Conducting separate trials of the IPP and DAP cases ensures that all Plaintiffs receive a trial free of improper considerations of defensive pass-through. The DAPs will present their Sherman Act claims in the first trial, where *Hanover Shoe* prohibits any mention of passing the price-fixing overcharges downstream. In a later trial, the IPPs will present their claims under state antitrust and consumer protection laws, and in that trial they will present expert testimony and other evidence regarding the class-wide impact of Defendants' price-fixing conspiracy and the extent to which the price-fixing overcharges were passed on to the IPPs. Separate trials allow both the DAPs and IPPs to try their cases fully and fairly under applicable law.

7

Holding a consolidated trial with the IPPs and DAPs, as Defendants propose, invites legal error.  Under Defendants' consolidated trial proposal, a single jury will be given the unattainable task of hearing the DAPs' Sherman Act claims and ignoring entirely both Defendants' and the IPPs' economic and other evidence that the overcharges were passed on to consumers.  That same jury will hear the IPPs' state law claims while listening to economic and other evidence that the DAPs, not the IPPs, were injured when they paid the price-fixing overcharges.  A single jury considering both the DAPs' federal claims and the IPPs' state claims based on a common price-fixing conspiracy producing overcharges will be highly likely to allocate damages between the plaintiff groups – exactly what *Hanover Shoe* is designed to prevent.[10]

As discussed in Plaintiffs' moving papers, courts do not put IPP class cases and DAP cases before a single jury in these circumstances.  *See, e.g., In re Polyurethane Foam Antitrust Litig.,* Case No. 1:10-MD-2196, Order Selecting Initial Trial, Requiring Party Mediation, and Revising Remaining Deadlines (N.D. Ohio July 3, 2014) (attached as Exhibit A to Plfs' Opening Br.);  *see also  In re TFT-LCD (Flat Panel) Antitrust Litig.,* Case No. M-07-1827-SI, Order re Pretrial and Trial Schedule (N.D. Cal. Nov. 23, 2010) (attached as Exhibit B to Plfs' Opening Br.).

Defendants misleadingly argue that in *LCD*, Judge Illston approved a trial for the direct and indirect purchaser class plaintiffs that put defensive pass-through issues in a single trial. [Def. Opp. At 7, n. 4] To the contrary, Judge Illston attempted *not* to do this.  Her order bifurcated the IPP and DPP trial, so that the jury did not hear the indirect purchasers' evidence

---

[10]    To effectuate *Hanover Shoe,* courts in Sherman Act cases routinely grant motions in limine barring any reference to defensive pass-through of overcharges. *See, e.g., In re Static Random Access Memory Antitrust Litigation,* No. 07-md-01819 CW, 2010 WL 10086747, at *1 (N.D. Cal. Dec. 16, 2010); *In re Wyoming Tight Sands Antitrust Cases,* No. 85-2349, 1990 WL 155542, at *2 (D. Wy. Sept. 6, 1990).

8

regarding pass-through until all issues in the direct purchasers' case were first decided. *In re TFT-LCD (Flat Panel) Antitrust Litig.,* Order Regarding Trial Structure [of class action cases], April 20, 2012 [attached as Exhibit A].[11]  More relevant here, Judge Illston's trial structure in *LCD* separated all DAP cases for trial from the class cases.

**B.  Jury Confusion Caused By Inherent Case Differences and Complexity**

Aside from the issue of pass-through, the IPPs and DAPs have separate and different claims that would not be appropriate to try jointly.  The IPPs assert claims for damages under 22 state antitrust laws, eight state consumer protection statutes, and for unjust enrichment and disgorgement of profits.   While the conspiracy evidence presented on the state antitrust claims will overlap substantially with the DAPs' federal claims, the consumer protection and unjust enrichment claims will require presentation of additional evidence that is irrelevant to the DAPs' federal claims.[12]

In addition, Defendants have different defenses to the IPPs' state law claims than the DAPs' federal claims.   For example, Defendants' statute of limitations defense must be

---

[11] While Judge Ilston's order addressed, to some degree, the issue of prejudice to the DAPs caused by evidence of pass-through to the IPPs, such evidence is prejudicial to both DAPs *and* IPPs.  Permitting the same jury to hear the DAPs' evidence on impact and damages, and to render a damages award to the DAPs *before* hearing the IPPs' evidence on impact and damages, is even more prejudicial to the IPPs than the Defendants' proposal of a single, consolidated trial, for the following reason. A jury that has awarded substantial damages to the DAPs is very likely to discount a damages award to the IPPs, based on an improper concern that the defendants have been punished enough and should not be subjected to duplicative liability. Further, Judge Ilston's order provides that "[t]he jury will be informed, at the outset, that the trial will proceed in these two phases, and will be given a general statement as to the purpose of each of the phases."  At best, such an instruction prevents surprise: it informs the jury that it will need to decide the question of damages for the IPPs after it has done so for the DAPs.  At worst, the instruction invites the jury to consider whether the DAPs passed on at least some of the overcharge, and then improperly to allocate the damages between the DAPs and IPPs.  Again, this result will lead to reversible error.

[12] For example, the IPPs' New York consumer protection claim (N.Y. Gen. Bus. Law § 349) requires a showing that Defendants made misleading statements to the general public in New York and that a reasonable consumer would have been misled by those statements.

evaluated under the laws of the 22 states, whereas the DAPs' claims must be evaluated under federal law. The DAPs will face defenses specific to their claims as well, such as arguments that the DAPs did not purchase from an entity that is owned and controlled by one of the Defendants and therefore cannot bring a Sherman Act claim, or that they had actual or constructive notice of the conspiracy before the statute of limitations period. The introduction of evidence regarding these defenses will take substantial time and dilute the evidence presentation by the other plaintiff group. It will also be practically impossible for the jury to keep straight which defense applies to which claim, and will prejudice Plaintiffs in the likely event the jury gets it wrong.

The IPPs' claims are also much broader than the DAPs claims, since the IPPs' claims are brought on behalf of 22 state-wide classes of indirect purchasers of CRT Products. IPPs must therefore show broad impact to direct purchasers of CRTs, the amount of the overcharge to these direct purchasers, and the fact of pass-through and amount of the overcharge to indirect purchasers in the 22 states. Defendants will, of course, argue that IPPs have failed to show impact and damages on a class-wide basis. Much of this evidence has no bearing on the DAPs' federal claims since each DAP need only show impact and damages to it, and is not concerned with issues of class-wide proof.[13]

Moreover, even if the IPPs' and DAPs' damages evidence may contain similarities, there are also differences that pose the risk of hopelessly confusing the jury. IPPs have retained a separate expert economist, Dr. Janet Netz, to testify regarding class-wide impact and damages. Dr. Netz's methodology for proving impact to direct purchasers of CRTs and the amount of the overcharge to direct purchasers differs from the DAPs' experts' methodologies. Hearing each of

---

[13] *See, e.g., Winnett v. Caterpillar, Inc.,* Nos. 3:06-CV-00235, 3:06-CV-01113, 2010 WL 424914, at *2 (M.D. Tenn. Jan. 28, 2010) (granting separate trials when consolidation would require that the jury "hear vast amounts of evidence" without "any relevance to the claims on which the jury must render a verdict.")

the IPP and DAP experts testifying regarding their multiple regression models, and each Defendant's expert's criticisms of each model, will undoubtedly confuse the jury and prejudice Plaintiffs if the jury does not understand which criticisms apply to which model.

Differences in the calculation of total damages to the DAPs and IPPs based on the overcharges and pass-through rates calculated by their respective experts will also confuse the jury. The amount of the damages to each DAP is calculated by multiplying the Defendants' sales of CRTs and CRT products to that DAP by the overcharge. The amount of the damages to the IPPs, however, is a more complicated, multi-step process. It is calculated by multiplying the Defendants' sales to all direct purchasers of CRTs (including the DAPs), multiplied by the percentage of CRT TVs and monitors sold in the United States, multiplied again by the percentage of buyers in the class states, by the overcharge.

The danger of the differences in estimation of the overcharge and calculation of the damages is that the jury may not understand the computational differences and may penalize the IPPs by using the DAPs' lower total damages. Or, the jury could compromise the IPPs' total damage number in the mistaken belief that the DAPs' damages are simply a lower estimate of the same number.

In addition to the complexities occasioned by the different Plaintiffs' experts' damages analyses, there will also be jury confusion caused by the sheer number of expert reports and the different issues they address. Dr. Netz will testify for the IPPs in support of liability and damages in their case. She will also testify in opposition to the defense experts who testify on affirmative defenses. The DAPs have retained two experts to testify regarding the overcharge, an expert on the merits, an expert on pass-through and an expert in opposition to defense experts who will testify on affirmative defenses.

Defendants have retained two experts who will testify against the IPPs' claims only, and one expert who will testify against the DAPs' claims only.  Defendants have retained seven additional experts who will testify against both the IPPs' and the DAPs' claims.  Defendants have also retained four other experts who will testify against the DAPs on behalf of Defendants Chunghwa, LG Electronics, Thomson and Mitsubishi.  These four Defendants are not Defendants in the IPP case.  Finally, one Defendant has retained an expert to testify on foreign law, and three of Defendants' experts will testify on their affirmative defenses.

The confusion caused by the complexity of the issues and the number of the experts is compounded by the number of reports filed per expert.  Each expert issue has spawned four separate reports (opening, opposition, rebuttal and sur-rebuttal).  It will be hopelessly confusing for one jury to hear all of this expert testimony in one trial.

### C. Jury Instructions Cannot Cure The Prejudicial Effects and Jury Confusion Caused By a Single, Consolidated Trial

Defendants contend that the prejudicial effects of a single, consolidated trial can be cured by a jury instruction.  But they cite no suggestion by a court, let alone a court holding, that a jury instruction would cure the prejudice to Plaintiffs.  To our knowledge, no court has done so in similar circumstances.[14]

---

[14]   The one case cited by Defendants, *Jordan Video, Inc. v. 144942 Canada, Inc.,* 617 F.3d 1146 (9th Cir. 2010), is a copyright case, not an antitrust case.  The court in *Jordan Video* did not consider whether a jury instruction can cure the prejudicial effect of joining in a single trial claims that have opposing legal features, as the DAP and IPP claims do here.  In their opposition, Defendants characterize Plaintiffs' concerns over the prejudicial effects of a consolidated trial as a "stock objection."  Def. Opp. at 2.  If that were so, Defendants no doubt would have directed the Court to the many cases in which this objection was overruled and a consolidated trial of DAPs and IPPs was ordered.  Defendants cite no such orders or decisions.

Indeed, other courts have expressly found that limiting instructions are unlikely to avoid prejudice and jury confusion in a case like this.[15]  It is difficult to conceive of such an instruction. Defendants propose none.   Instructing the same jury to follow *Hanover Shoe* and **not to consider** pass-through by the DAPs for the Sherman Act claims but **to consider** pass-through by the DAPs to the IPPs as an element of the IPPs' state law claims is at best quixotic.   As a practical matter, after hearing days of evidence from the parties and their expert economists on pass-through, any jury will undoubtedly compromise by allocating damages among the plaintiff groups, no matter what the instruction.[16]   Such an outcome would be contrary to the law and likely constitute reversible error.  *Cf. Dixon,* 90 F.2d at 1444 (reversible error found despite jury instructions on damages).

### D. Consolidation Would Also Be Procedurally Inappropriate

Lastly, consolidation could also raise significant procedural and case management issues. Rule 42 does not create separate actions.   In a consolidated trial, there is only one judgment, which is not entered until all phases of the trial are complete.   Only when claims are "severed," under Rule 21, are there separate judgments. [17]   This distinction has important implications on

---

[15] *See, e.g., Brand Name Prescription Drugs Antitrust Litig.,* 1995 WL 399684, at *2 (denying defendants' motion to consolidate and doubting the efficacy of limiting instructions "given the complexity of this action and the vast amounts of information a jury will be asked to assimilate.")

[16]  *See California v. ARC America,* 490 U.S. at 105. ("But *Illinois Brick,* as well as *Associated General Contractors* and *Blue Shield*, all were cases construing §4 of the Clayton Act; in none of those cases did the Court identify a federal policy against States imposing liability in addition to that imposed by federal law.")  As explained in Plaintiffs' moving brief, any issue of duplicative liability should be addressed in a post-trial remittitur, not *ad hoc* by the jury. *See* Plfs' Opening Br. at 8-11.  Defendants do not dispute this.

[17] Rule 21 states in relevant part:  "The court may also sever any claim against a party."  Fed. R. Civ. P. 21.  *See, e.g., Zaldana v. K.R. Home,* No. C–08–3399 MMC, 2010 WL 4313777, at *2 n.4 (N.D. Cal. Oct. 26, 2010) ("[A]n order pursuant to Rule 42(b) results in separate proceedings in a single action, whereas severance under Rule 21 results in two separate actions; *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 n.19 (5th Cir. 1993) ("The procedure authorized

13

appeal.[18]  Currently, each of the DAP cases and the IPP case are separate actions.  If the Court permits consolidation, the parties might have to await the outcome of the entire trial to obtain judgment.  In addition, given the number of parties in this litigation, the odds of an appeal are high.  With one judgment covering all the DAP and IPP cases, and intertwining so many issues, any appeal is likely to be even more complex.  This result would be good for no one—not for the parties, and not for the courts.

### III.    SEPARATE TRIALS ARE NOT LIKELY TO CONSUME MORE JUDICIAL RESOURCES.

Separate trials of the DAP and IPP cases are not likely to consume more judicial and party resources than a single, massive trial.  Findings favorable to the DAPs may have preclusive effects on a subsequent IPP trial.  And no matter what the outcome of the DAP trial, both the IPPs and Defendants will have a sound basis for evaluating the IPP case for settlement.  Separate trials (assuming severance) also remove the risk of reversal on appeal, which would ultimately consume far more judicial and party resources.

Ignoring these considerations, Defendants over-dramatize the potential for two trials to consume twice the resources as one.[19]  For starters, a DAP-only trial would not require eight

---

by Rule 42(b) should be distinguished from severance under Rule 21.  Separate trials will usually result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently.  Unfortunately, this distinction, clear enough in theory, is often obscured in practice since at times the courts talk of "separate trial" and "severance" interchangeably.") (citing 9 Wright & Miller, *Federal Practice and Procedure*: Civil § 2387 (1971)).

[18] *See, e.g., Vann v. Citicorp Sav. of Illinois,* 891 F.2d 1507, 1511 (11th Cir. 1990) ("Different consequences flow from the two rules.  Since a Rule 21 severance creates a separate action, Rule 54(b) is not applicable; however, a Rule 42(b) separate trial does not separate the actions.  In a Rule 42(b) case, 'the counterclaim continues as part of this "'action[,]'" and thus Rule 54(b) leaves us without jurisdiction.'" (internal citations omitted)).

[19]   Defendants also exploit the DAPs concern over Defendants' use in this case of the Sharp Corporation guilty plea in the *LCD* case to suggest there could be a third trial.  This is a

weeks, as Defendants announce in their opposition.  It can be conducted in less time.  Whether there will be a later IPP trial and how much time it will require will depend on whether the IPPs settle their claims (and whether they do so before or after the DAP trial).  It will also depend on the extent to which a verdict favorable to the DAPs controls the outcome of issues in the IPP case.

At a minimum, a determination in a DAP trial that Defendants conspired to fix the prices of CRTs would be collateral estoppel.  A determination on other significant, overlapping issues could lead to collateral estoppel as well, such as (1) whether the Defendants' conspiracy involved large CPTs; (2) whether the Defendants' conspiracy affected United States commerce; (3) whether certain Defendants withdrew from the conspiracy as a matter of law; and (4) whether the Defendants engaged in fraudulent concealment of their unlawful activities.  Defendants acknowledge that the scope of the price-fixing conspiracy and who its participants were are plainly issues common to both DAP and IPP claims.  Def. Opp. at 3 (stating "all of these Plaintiffs allege a global, twelve-year price-fixing conspiracy among manufacturers of cathode ray tubes" and "all of these Plaintiffs base their conspiracy claims on substantially identical allegations.")

Defendants' contention that there would be no collateral estoppel following the DAP trial is belied by their concerns regarding inconsistent verdicts.  In their opposition, Defendants argue that separate trials should not be held because of "a high risk of inconsistent or even

---

disingenuous tactic.  Defendants do not deny that they have marked the *LCD* guilty plea as an exhibit in an expert deposition in this case and that they intend to introduce the guilty plea at trial.  In their opposition, Defendants offer no justification – none – for admitting the *LCD* guilty plea as to the Sharp plaintiffs, let alone as to the other DAPs, in this case.  Instead, they twist the DAPs entirely proper concern over this meritless and highly prejudicial ploy to accuse the DAPs of proposing three trials.  A third trial will not be required because there is no legitimate ground for allowing the Sharp Corporation plea in *LCD* to be admitted.

contradictory verdicts with respect to the above issues, which is to say almost every key issue in this litigation." Def. Opp. at 12. If the issues in the DAP and IPP cases were not the same, Defendants would not express concern about inconsistent or contradictory verdicts. It is very likely there will be collateral estoppel effect from the DAP trial on issues common to the IPP case, which will resolve any concerns regarding inconsistent verdicts.

Judge Illston's decision in Dell's *LCD* case does not indicate collateral estoppel would be inapplicable here. Judge Illston held Dell could not apply issue preclusion based on the results of a prior Government trial against AU Optronics ("AUO") because the jury was instructed it could convict AUO if it participated in the conspiracy at any time, whereas Dell sought to bind AUO to the entire five-year period of the conspiracy. *In re TFT-LCD (Flat Panel) Antitrust Litigation,* No. 07-md-01827-S1, 2012 WL 4858836 at *3 (N.D. Cal. Oct. 11, 2012). In addition, Dell could not bind AUO to a conspiracy with the other defendants in Dell's case because the jury in the Government's case "was not asked to decide . . . the identity of the co-conspirators." *Id.* Judge Illston did not allow Dell to bind Toshiba to the verdict in an earlier DPP action for similar reasons: the jury was "explicitly instructed" that Dell was not part of the DPP class, and the jury was not asked to determine the identity of Toshiba's co-conspirators. *Id.* at *4. By contrast, the jury in the DAP-only trial in this case can determine issues of the timing and participants of the CRT conspiracy.

Defendants also dispute that, regardless of outcome, the result of the DAP-only trial will promote settlement of the IPP case. This defies reason and experience and should be taken as the posturing it is. Similarly, Defendants' argument that scheduling separate trials will cause the IPPs to delay settlement discussions has no merit. The IPPs settled their claims with Chunghwa and LG well in advance of knowing the trial structure of these cases. The IPPs have been

16

actively involved in litigating all aspects of this case.  They have taken anything but a "wait and see" attitude in this case.

## IV.  THE CURRENT EXISTENCE OF BEST BUY'S STATE CLAIM DOES NOT SUPPORT THE DENIAL OF PLAINTIFFS' MOTION

The DAPs are six of the seven direct action plaintiffs whose cases were filed in this Court.  The seventh DAP, Best Buy, joined in the motion for separate trials.  [MDL Docket No. 2903]  Best Buy alleges claims under both the Sherman Act and the Minnesota Antitrust Act.  In its joinder, Best Buy argued that its claims under the Minnesota Antitrust Act are not subject to the defense of pass-through *as a matter of law*.  Thus, Best Buy believes it can pursue its state law claims against Defendants without defensive pass-through entering the case (the same as its Sherman Act claims).  In their opposition, Defendants ignore Best Buy's position on defensive pass-through and argue that Best Buy's inclusion in a DAP-only trial undermines the DAPs concern with the enormous prejudice of going to trial with the IPPs.  If the Court concurs with Best Buy and determines that defensive pass-through is not allowed under Minnesota law, defensive pass-through will not be mentioned in the DAP trial.

Even if the Court disagrees with Best Buy and holds that defensive pass-through is a permitted defense under the Minnesota Antitrust Act, it does not follow that the DAPs should be compelled to try their claims with the IPPs.  To begin with, if the Court rules that Defendants can introduce pass-through evidence against Best Buy under Minnesota law, then Best Buy will likelydecide not to pursue its state law claims any further.  Like the other DAPs, Best Buy must weigh heavily the substantial prejudice and jury confusion that evidence of defensive pass-through will cause to its Sherman Act claims.  If Best Buy assesses this circumstance like those DAPs who are or will be dismissing their state law claims as part of a first trial because defensive pass-through is permitted, then there will be no mention of defensive pass-through in a

17

DAP-only trial.  In the unlikely event that Best Buy does not dismiss their state law claims, the moving parties reserve the right to request that the Court sever Best Buy from the DAP and IPP trials to avoid substantial prejudice.

## CONCLUSION

In sum, there is ample reason to expect that granting separate trials for the DAP and IPP cases is not likely to involve the Court or the parties in two lengthy trials.  Even if separate trials involve some additional judicial resources, "the paramount consideration at all times in the administration of justice is a fair and impartial trial to all litigants.  Considerations of economy of time, money and convenience of witnesses must yield."   *In re Bendectin Litigation,* 857 F.2d 290, 308 (6th Cir. 1988).[20]  Here, the prejudice to the Plaintiffs if the Court ordered a single trial would be overwhelming.  The Court should grant the motion for separate trials of the DAP and IPP cases.


Dated:   October 23, 2014

---

[20]    For the same reasons, it is unlikely that Defendants' witnesses will need to repeat their testimony in two trials in this Court.  But, in the event that some must appear twice, the expense of doing so is minor in comparison to the highly prejudicial effect of a consolidated trial on the victims of Defendants' conspiracy.

18

3377267v1/012325

1

2              /s/ Kenneth S. Marks
              Kenneth S. Marks
3             Jonathan J. Ross
              Johnny W. Carter
4             David M. Peterson
              John P. Lahad
5             SUSMAN GODFREY L.L.P.
              1000 Louisiana Street, Suite 5100
6             Houston, Texas 77002
              Telephone:  (713) 651-9366
7             Facsimile:  (713) 654-6666
              Email:    kmarks@susmangodfrey.com
8                       jross@susmangodfrey.com
9                       jcarter@susmangodfrey.com
                        dpeterson@susmangodfrey.com
10                      jlahad@susmangodfrey.com

11

12

13            Parker C. Folse III
              Rachel S. Black
14            Jordan Connors
              SUSMAN GODFREY L.L.P.
15            1201 Third Avenue, Suite 3800
              Seattle, Washington 98101-3000
16            Telephone:  (206) 516-3880
              Facsimile:  (206) 516-3883
17            Email:    pfolse@susmangodfrey.com
18                      rblack@susmangodfrey.com
                        jconnors@susmangodfrey.com
19

20            *Attorneys for plaintiff Alfred H. Siegel, solely in his
              capacity as Trustee of the Circuit City Stores, Inc.
21            Liquidating Trust*

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Mario N. Alioto*
Mario N. Alioto (56433)
Lauren C. Capurro (241151)
**TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP**
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
malioto@tatp.com
laurenrussell@tatp.com

***Lead Counsel***
***For the Indirect Purchaser Plaintiffs***

*/s/ Jason C. Murray*
Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: (213) 622-4750
Facsimile: (213) 622-2690
Email: jmurray@crowell.com

*Attorneys for Plaintiffs Target Corp. and Viewsonic Corp.*

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Richard Alan Arnold*

Richard Alan Arnold
William J. Blechman
Kevin J. Murray
Ryan Zagare
Jalaine Garcia
James Almon
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL  33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
Email:  rarnold@knpa.com
            wblechman@knpa.com
            kmurray@knpa.com
            rzagare@knpa.com
            jgarcia@knpa.com
            jalmon@knpa.com

Gavin D. Whitis
POND NORTH, LLP
100 Spear Street, Suite 1200
San Francisco, CA  94105
Telephone: (415) 217-1240
Facsimile: (415) 644-0578
Email:  gwhitis@pondnorth.com

*Attorneys for Plaintiffs Sears, Roebuck and
Co. and Kmart Corp.*

*/s/ Craig A. Benson*

Craig A. Benson
Joseph J. Simons
Kenneth A. Gallo
PAUL WEISS LLP
2001 K Street NW
Washington, DC 20006
Telephone: (202) 223-7343
Email:  CBenson@paulweiss.com
            jsimons@paulweiss.com
            kgallo@paulweiss.com

*Attorneys for Plaintiffs Sharp Electronics Corp. and
Sharp Electronics Manufacturing Company of
America, Inc.*

21

# CERTIFICATE OF SERVICE

## IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION
### Case No. CV-07-5944-SC
### MDL No. 1917

I, Kenneth S. Marks , declare:

I am employed in the County of Harris, State of Texas.  I am over the age of 18 years and not a party to the within action.  My business address is Susman Godfrey L.L.P., 1000 Louisiana Street, Suite 5100, Houston, Texas  77002.

On October 23, 2014, I served a true and correct copy of the following document(s) in the manner indicated below:

[ ]   **BY U.S. MAIL:**  I caused the said document(s) to be deposition in the United States mail, at Houston, Texas, in a sealed envelope with first-class postage thereon fully prepaid, to the addressee(s) named below: and

[X]   **BY ELECTRONIC MAIL:**  I caused the said document(s) to be emailed to the offices and/or to attorneys of the offices of the addressee(s) named below.

### SEE ATTACHED SERVICE LIST

Dated:  October 23, 2014               Signed _____*/s/ Kenneth S. Marks*_____
                                                  Kenneth S. Marks

22

3377267v1/012325

1

**SERVICE LIST**

| | |
|---|---|
| Philip J. Iovieno<br>piovieno@bsfllp.com<br>Anne M. Nardacci<br>anardacci@bsfllp.com<br>BOIES, SCHILLER & FLEXNER LLP<br>10 North Pearl Street, 4th Floor<br>Albany, NY  12207<br>Tel:  (518) 434-0600<br><br>*Liaison Counsel for Direct Action Plaintiffs*<br>*and Attorneys for Plaintiffs Electrograph*<br>*Systems, Inc., Electrograph Technologies,*<br>*Corp., Office Depot, Inc., Compucom Systems,*<br>*Inc., Interbond Corporation of America, P. C.*<br>*Richard & Son Long Island Corporation,*<br>*Marta Cooperative of America, Inc., ABC*<br>*Appliance, Inc., Schultze Agency Services LLC*<br>*on behalf of Tweeter Opco, LLC and Tweeter*<br>*Newco, LLC* | Mario N. Alioto<br>malioto@tatp.com<br>Lauren C. Russell<br>laurenrussell@tatp.com<br>Joseph M. Patane<br>jpatane@tatp.com<br>TRUMP, ALIOTO, TRUMP & PRESCOTT<br>  LLP<br>2280 Union Street<br>San Francisco, CA  94123<br>Tel:  (415) 563-7200<br><br>*Interim Lead Counsel for Indirect Purchaser*<br>*Plaintiffs Class* |
| Kamala D. Harris<br>    Attorney General of California<br>Mark Breckler<br>    Chief Assistant Attorney General<br>Kathleen E. Foote<br>    Senior Assistant Attorney General<br>Emilio E. Varanini<br>    Deputy Attorney General<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA  94102-3664<br>Tel:  (415) 703-5908<br>emilio.varanini@doj.ca.gov<br><br>*Counsel for Plaintiff State of California* | Guido Saveri<br>guido@saveri.com<br>R. Alexander Saveri<br>rick@saveri.com<br>Geoffrey C. Rushing<br>grushing@saveri.com<br>Cadio Zirpoli<br>cadio@saveri.com<br>SAVERI & SAVERI, INC.<br>706 Sansome Street<br>San Francisco, CA  94111<br>Tel:  (415) 217-6810<br><br>*Interim Lead Counsel for The Direct*<br>*Purchaser Plaintiffs Class* |

23

| | |
|---|---|
| Jeffrey L. Kessler<br>jkessler@winston.com<br>A. Paul Victor<br>pvictor@winston.com<br>Eva W. Cole<br>ewcole@winston.com<br>Molly M. Donovan<br>mmdonovan@winston.com<br>WINSTON & STRAWN LLP<br>200 Park Avenue<br>New York, NY 10166-4193<br>Tel: (212) 294-6700<br><br>David L. Yohai<br>david.yohai@weil.com<br>Steven A. Reiss<br>steven.reiss@weil.com<br>Adam C. Hemlock<br>adam.hemlock@weil.com<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Tel: (212) 310-8000<br><br>*Counsel for Defendants Panasonic Corporation, Panasonic Corporation of North America, and MT Picture Display Co., Ltd.* | Hojoon Hwang<br>hojoon.hwang@mto.com<br>MUNGER, TOLLES & OLSON LLP<br>560 Mission Street, 27th Floor<br>San Francisco, CA 94105<br>Tel: (415) 512-4000<br><br>William D. Temko<br>william.temko@mto.com<br>Jonathan E. Altman<br>jonathan.altman@mto.com<br>Bethany W. Kristovich<br>bethany.kristovich@mto.com<br>MUNGER TOLLES & OLSON LLP<br>355 South Grand Avenue, 35th Floor<br>Los Angeles, CA 90071-1560<br>Tel. (213) 683-9100<br><br>*Counsel for Defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd.* |
| Mark C. Dosker<br>mark.dosker@squiresanders.com<br>Nathan Lane, III<br>nathan.lane@squiresanders.com<br>SQUIRE SANDERS LLP<br>275 Battery Street, Suite 2600<br>San Francisco, CA 94111<br>Tel: (415) 954-0200<br><br>*Counsel for Technologies Displays Americas LLC* | Joseph R. Tiffany<br>Joseph.tiffany@pillsburylaw.com<br>PILLSBURY WINTHROP SHAW PITTMAN,<br> LLP<br>2550 Hanover Street<br>Palo Alto, CA 94304-1114<br>Tel. (650) 233-4644<br><br>*Counsel for Defendants IRICO Display Devices Co., Ltd., IRICO Group Corporation, and IRICO Group Electronics Co., Ltd.* |

3377267v1/012325

| | |
|---|---|
| John Taladay<br>john.taladay@bakerbotts.com<br>Joseph Ostoyich<br>joseph.ostoyich@bakerbotts.com<br>Charles M. Malaise<br>Charles.malaise@bakerbotts.com<br>Erik T. Koons<br>erik.koons@bakerbotts.com<br>BAKER BOTTS LLP<br>The Warner<br>1299 Pennsylvania Avenue, NW<br>Washington, DC  20004-2400<br>Tel:  (202) 639-7909<br><br>Jon V. Swenson<br>jon.swenson@bakerbotts.com<br>BAKER BOTTS LLP<br>1001 Page Mill Road<br>Building One, Suite 200<br>Palo Alto, CA  94304<br>Tel. (650) 739-7500<br><br>*Counsel for Defendants Koninklijke*<br>*Philips Electronics N.V., Philips*<br>*Electronics North America*<br>*Corporation, Philips Electronics*<br>*Industries (Taiwan), Ltd., and Philips*<br>*da Amazonia Industria Electronica*<br>*Ltda.* | Ian Simmons<br>isimmons@omm.com<br>Benjamin G. Bradshaw<br>bbradshaw@omm.com<br>Courtney C. Byrd<br>cbyrd@omm.com<br>David Kendall Roberts<br>droberts2@omm.com<br>Kevin Douglas Feder<br>kfeder@omm.com<br>O'MELVENY & MYERS LLP<br>1625 Eye Street, NW<br>Washington, DC  20006-4001<br>Tel:  (202) 383-5163<br><br>Michael Frederick Tubach<br>mtubach@omm.com<br>O'MELVENY & MYERS LLP<br>Two Embarcadero Center<br>28th Floor<br>San Francisco, CA 94111-3305<br>Tel. (415) 984-8700<br><br>*Counsel for Defendants Samsung*<br>*Electronics Co., Ltd., and Samsung*<br>*Electronics America, Inc.* |
| Joel S. Sanders<br>jsanders@gibsondunn.com<br>Rachel S. Brass<br>rbrass@gibsondunn.com<br>Austin V. Schwing<br>aschwing@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER<br>555 Mission Street, Suite 3000<br>San Francisco, CA  94105<br>Tel:  (415) 393-8200<br><br>*Counsel for Defendant Tatung Company*<br>*America and Counsel for Defendants*<br>*Chunghwa Picture Tubes, Ltd. and Chungwha*<br>*Picture Tubes (Malaysia)* | Michael R. Lazerwitz<br>mlazerwitz@cgsh.com<br>Jeremy J. Calsyn<br>jcalsyn@cgsh.com<br>CLEARY GOTTLIEB STEEN &<br>  HAMILTON LLP<br>2000 Pennsylvania Avenue, NW, Suite 9000<br>Washington, DC  20006<br>Tel:  (202) 974-1500<br><br>*Counsel for Defendant LP Displays*<br>*International, Ltd.* |

| Christine Laciak | Christopher M. Curran |
|---|---|
| christine.laciak@freshfields.com | ccurran@whitecase.com |
| Richard Snyder | Lucius B. Lau |
| richard.snyder@freshfields.com | alau@whitecase.com |
| Craig D. Minerva | Dana E. Foster |
| craig.minerva@freshfields.com | defoster@whitecase.com |
| Bruce C. McCulloch | WHITE & CASE, LLP |
| bruce.mcculloch@freshfields.com | 701 13th Street, NW |
| Terry Calvani | Washington, DC  20005 |
| terry.calvani@freshfields.com | Tel:  (202) 626-3600 |
| FRESHFIELDS BRUCKHAUS & | |
|   DERINGER US, LLP | |
| 700 13th Street, NW | |
| 10th Floor | *Counsel for Defendants Toshiba Corporation,* |
| Washington, DC 20005-3960 | *Toshiba America, Inc., Toshiba America* |
| Tel:  (202) 777-4500 | *Information Systems, Inc., Toshiba America* |
| | *Consumer Products, L.L.C., and Toshiba* |
| *Counsel for Defendant Beijing* | *America Electronic Components, Inc.* |
| *Matsushita Color CRT Co., Ltd.* | |
| Eliot A. Adelson | Gary L. Halling |
| eadelson@kirkland.com | ghalling@sheppardmullin.com |
| James Maxwell Cooper | James L. McGinnis |
| max.cooper@kirkland.com | jmcginnis@sheppardmullin.com |
| KIRKLAND & ELLIS LLP | Michael Scarborough |
| 555 California Street, 27th Floor | mscarborough@sheppardmullin.com |
| San Francisco, CA 94104 | SHEPPARD MULLIN RICHTER & |
| Telephone: (415) 439-1400 |   HAMPTON LLP |
| Facsimile: (415) 439-1500 | Four Embarcadero Center, 17th Floor |
| | San Francisco, CA  94111 |
| James H. Mutchnik | Tel:  (415) 434-9100 |
| jmutchnik@kirkland.com | |
| Kate Wheaton | *Counsel for Defendants Samsung SDI America* |
| kate.wheaton@kirkland.com | *Samsung SDI Co., Ltd., Samsung SDI Mexico* |
| KIRKLAND & ELLIS LLP | *S.A. de C.V., Samsung SDI Brasil Ltda.,* |
| 300 North LaSalle | *Shenzhen Samsung SDI Co., Ltd., Tianjin* |
| Chicago, Illinois 60654 | *Samsung SDI Co., Ltd., and Samsung SDI* |
| Telephone: (312) 862-2000 | *(Malaysia) Sdn. Bhd.* |
| Facsimile: (312) 862-2200 | |
| | |
| *Counsel for Defendants Hitachi, Ltd.,* | |
| *Hitachi Displays, Ltd., Hitachi Asia, Ltd.,* | |
| *Hitachi America, Ltd., and Hitachi* | |
| *Electronic Devices (USA), Inc.* | |

26

| | |
|---|---|
| Brent Caslin<br>bcaslin@jenner.com<br>JENNER & BLOCK LLP<br>633 West 5th Street, Suite 3600<br>Los Angeles, CA 90071-2054<br>Tel: (213) 239-5100 | Calvin L. Litsey<br>calvin.litsey@faegrebd.com<br>FAEGRE BAKER DANIELS LLP<br>1950 University Avenue, Suite 450<br>East Palo Alto, CA 94303-2279<br>Tel: (650) 324-6700 |
| Terrence J. Truax<br>ttruax@jenner.com<br>Michael T. Brody<br>mbrody@jenner.com<br>Shaun M. Van Horn<br>svanhorn@jenner.com<br>Gabriel A. Fuentes<br>gfuentes@jenner.com<br>Molly M. Powers<br>mpowers@jenner.com<br>JENNER & BLOCK LLP<br>353 North Clark Street<br>Chicago, IL 60654<br>Tel: (312) 222-9350 | Kathy Osborn<br>kathy.osborn@faegrebd.com<br>Ryan M. Hurley<br>ryan.hurley@faegrebd.com<br>FAEGRE BAKER DANIELS LLP<br>300 N. Meridian Street, Suite 2700<br>Indianapolis, IN 46204<br>Tel: (317) 237-0300<br><br>Jeffrey S. Roberts<br>Jeff.roberts@faegrebd.com<br>FAEGRE BAKER DANIELS LLP<br>3200 Wells Fargo<br>1700 Lincoln Street<br>Denver, CO 80203<br>Tel: (303) 607-3500 |
| *Counsel for Mitsubishi Electric Corporation, Mitsubishi Electric & Electronics USA, Inc. and Mitsubishi Digital Electronic Americas, Inc.* | Stephen M. Judge<br>Steve.judge@faegrebd.com<br>FAEGRE BAKER DANIELS LLP<br>202 S. Michigan Street, Suite 1400<br>South Bend, IN 46601<br>Tel: (574) 234-4149<br><br>*Counsel for Defendants Thomson S.A. (N/K/A Technicolor SA); Thomson Consumer Electronics, Inc. (N/K/A Technicolor USA, Inc.)* |

3377267v1/012325