# EXHIBITS 1–2
## [Documents Submitted Under Seal]

# EXHIBIT 3

1   LIDIA MAHER (CSBN 222253)
    MAY LEE HEYE (CSBN 209366)
2   TAI S. MILDER (CSBN 267070)
    Antitrust Division
3   U.S. Department of Justice
    450 Golden Gate Avenue
4   Box 36046, Room 10-0101
    San Francisco, CA 94102
5   Telephone: (415) 436-6660

6   Attorneys for the United States

7

8                    UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA              )    Case No. CR 11-0162 (WHA)
                                          )
12               v.                       )
                                          )
13  SAMSUNG SDI COMPANY, LTD.,            )
                                          )
14                                        )
                     Defendant.           )
15  _____  )

16                  **AMENDED PLEA AGREEMENT**

17          The United States of America and Samsung SDI Company, Ltd. ("defendant"), a

18  corporation organized and existing under the laws of the Republic of Korea, hereby enter into the

19  following Amended Plea Agreement ("Plea Agreement") pursuant to Rule 11(c)(1)(C) of the

20  Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

21                      **RIGHTS OF DEFENDANT**

22  1.      The defendant understands its rights:

23          (a)     to be represented by an attorney;

24          (b)     to be charged by Indictment;

25          (c)     as a corporation organized and existing under the laws of the Republic of

26  Korea, to decline to accept service of the Summons in this case, and to contest the

27  jurisdiction of the United States to prosecute this case against it in the United States

28  District Court for the Northern District of California;

PLEA AGREEMENT - SAMSUNG SDI - PAGE 1

(d)     to plead not guilty to any criminal charge brought against it;

(e)     to have a trial by jury, at which it would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for it to be found guilty;

(f)     to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

(g)     to appeal its conviction if it is found guilty; and

(h)     to appeal the imposition of sentence against it.

## AGREEMENT TO PLEAD GUILTY AND WAIVE CERTAIN RIGHTS

2.     The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(g) above, including all jurisdictional defenses to the prosecution of this case, and agrees voluntarily to consent to the jurisdiction of the United States to prosecute this case against it in the United States District Court for the Northern District of California. The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 8 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b) and (c). Nothing in this paragraph, however, shall act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty at arraignment to a one-count Information to be filed in the United States District Court for the Northern District of California. The Information will charge the defendant with participating in a conspiracy to suppress and eliminate competition by fixing prices, reducing output, and allocating market shares of color display tubes ("CDTs") sold in the United States and elsewhere, from at least as early as January 1997, until at least as late as March 2006, in violation of the Sherman Antitrust

PLEA AGREEMENT - SAMSUNG SDI - PAGE 2

1    Act, 15 U.S.C. § 1.

2        3.    The defendant, pursuant to the terms of this Plea Agreement, will plead guilty to

3    the criminal charge described in Paragraph 2 above and will make a factual admission of guilt to

4    the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

5                    **FACTUAL BASIS FOR OFFENSE CHARGED**

6        4.    Had this case gone to trial, the United States would have presented evidence

7    sufficient to prove the following facts:

8        (a)    For purposes of this Plea Agreement, the "relevant period" is that period from at

9    least as early as January 1997, until at least as late as March 2006. During the relevant period,

10   the defendant was a corporation organized and existing under the laws of the Republic of Korea.

11   The defendant has its principal place of business in Giheung, Republic of Korea. During the

12   relevant period, the defendant was a producer of CDTs, was engaged in the sale of CDTs in the

13   United States and elsewhere, and employed over 5,000 individuals.

14       (b)    CDTs are a type of cathode ray tube. Cathode ray tubes consist of evacuated glass

15   envelopes that contain an electron gun and a phosphorescent screen. When electrons strike the

16   screen, light is emitted, creating an image on the screen. CDTs are the specialized cathode ray

17   tubes manufactured for use in computer monitors and other products with similar technological

18   requirements. CDTs are distinguished from another type of specialized cathode ray tube product,

19   color picture tubes ("CPTs"), which are manufactured for use in televisions.

20       (c)    During the relevant period, the defendant, through its officers and employees,

21   including high-level personnel of the defendant, participated in a conspiracy among major CDT

22   producers, the primary purpose of which was to fix prices, reduce output, and allocate market

23   shares of CDTs sold in the United States and elsewhere. In furtherance of the conspiracy, the

24   defendant, through its officers and employees, engaged in discussions and attended meetings

25   with representatives of other major CDT producers. During these discussions and meetings,

26   agreements were reached to fix prices, reduce output, and allocate market shares of CDTs to be

27   sold in the United States and elsewhere.

28       (d)    During the relevant period, CDTs sold by one or more of the conspirator firms,

PLEA AGREEMENT - SAMSUNG SDI - PAGE 3

1   and equipment and supplies necessary to the production and distribution of CDTs, as well as

2   payments for CDTs, traveled in interstate and foreign commerce.  The business activities of the

3   defendant and its co-conspirators in connection with the production and sale of CDTs that were

4   the subjects of this conspiracy were within the flow of, and substantially affected, interstate and

5   foreign trade and commerce.  During the relevant period, the defendant's CDT sales, directly

6   affected by the conspiracy, to customers in the United States totaled approximately $89 million.

7       (e)     Acts in furtherance of this conspiracy were carried out within the Northern

8   District of California.  CDTs that were the subject of this conspiracy were transported by one or

9   more of the conspirators through this District.

10                          **POSSIBLE MAXIMUM SENTENCE**

11      5.      The defendant understands that the statutory maximum penalty which may be

12  imposed against it upon conviction for a violation of Section One of the Sherman Antitrust Act is

13  a fine in an amount equal to the greatest of:

14          (a)     $100 million (15 U.S.C. § 1);

15          (b)     twice the gross pecuniary gain the conspirators derived from the crime (18

16  U.S.C. § 3571(c) and (d)); or

17          (c)     twice the gross pecuniary loss caused to the victims of the crime by the

18  conspirators (18 U.S.C. § 3571(c) and (d)).

19      6.      In addition, the defendant understands that:

20          (a)     pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of

21  probation of at least one year, but not more than five years;

22          (b)      pursuant to §8B1.1 of the United States Sentencing Guidelines

23  ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or

24  3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

25          (c)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the

26  defendant to pay a $400 special assessment upon conviction for the charged crime.

27  ///

28  ///

PLEA AGREEMENT - SAMSUNG SDI - PAGE 4

## SENTENCING GUIDELINES

7.     The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing, along with the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing sentence. The defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). Pursuant to U.S.S.G. §1B1.8, the United States agrees that self-incriminating information that the defendant provides to the United States pursuant to this Plea Agreement will not be used to increase the volume of affected commerce attributable to the defendant or in determining the defendant's applicable Guidelines range, except to the extent provided in U.S.S.G. §1B1.8(b).

## SENTENCING AGREEMENT

8.     Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence within the applicable Guidelines range requiring the defendant to pay to the United States a criminal fine of $32 million, and no order of restitution ("the recommended sentence"). The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0. The parties agree not to seek or support any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The parties further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

(a)     The defendant understands that the Court will order it to pay a $400 special assessment, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

(b)     Both parties will recommend that no term of probation be imposed, but the

PLEA AGREEMENT - SAMSUNG SDI - PAGE 5

1  defendant understands that the Court's denial of this request will not void this Plea

2  Agreement.

3       (c)    The United States and the defendant jointly submit that this Plea

4  Agreement, together with the record that will be created by the United States and the

5  defendant at the plea and sentencing hearings, and the further disclosure described in

6  Paragraph 9, will provide sufficient information concerning the defendant, the crime

7  charged in this case, and the defendant's role in the crime to enable the meaningful

8  exercise of sentencing authority by the Court under 18 U.S.C. § 3553.  The United States

9  and defendant agree to request jointly that the Court accept the defendant's guilty plea

10  and impose sentence on an expedited schedule as early as the date of arraignment, based

11  upon the record provided by the defendant and the United States, under the provisions of

12  Fed. R. Crim. P. 32(c)(1)(A)(ii), U.S.S.G. §6A1.1, and Rule 32-1(b) of the Criminal

13  Local Rules.  The Court's denial of the request to impose sentence on an expedited

14  schedule will not void this Plea Agreement.

15      9.    Subject to the ongoing, full, and truthful cooperation of the defendant described in

16  Paragraph 12 of this Plea Agreement, and before sentencing in the case, the United States will

17  fully advise the Court of the fact, manner, and extent of the defendant's cooperation and its

18  commitment to prospective cooperation with the United States' investigation and prosecutions,

19  all material facts relating to the defendant's involvement in the charged offense, and all other

20  relevant conduct.

21      10.    The United States and the defendant understand that the Court retains complete

22  discretion to accept or reject the recommended sentence provided for in Paragraph 8 of this Plea

23  Agreement.

24       (a)    If the Court does not accept the recommended sentence, the United States

25  and the defendant agree that this Plea Agreement, except for Paragraph 10(b) below, shall

26  be rendered void.

27       (b)    If the Court does not accept the recommended sentence, the defendant will

28  be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)).  If the defendant

PLEA AGREEMENT - SAMSUNG SDI - PAGE 6

withdraws its plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government shall not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410. In addition, the defendant agrees that, if it withdraws its guilty plea pursuant to this subparagraph of the Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 16 of this Plea Agreement shall be tolled for the period between March 10, 2011 and the date the defendant withdrew its guilty plea or for a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever period is greater.

11. In light of the civil class action cases filed against the defendant, including *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. C07-5944 SC, MDL No. 1917, in the United States District Court, Northern District of California, which potentially provide for a recovery of a multiple of actual damages, and the opportunity for potential victims to pursue damages through non-class claims in the multidistrict litigation and other proceedings, the United States and the defendant agree that the recommended sentence provided for in Paragraph 8 of this Plea Agreement does not include a restitution order for the offense charged in the Information.

### DEFENDANT'S COOPERATION

12. The defendant, its subsidiaries, and related corporate entities engaged in the sale or production of any cathode ray tube products, including CDTs and CPTs (collectively, "related entities") will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the manufacture or sale of CDTs and CPTs in the United States and elsewhere, any other federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding"). The ongoing, full, and truthful cooperation of the defendant shall include, but not be limited to:

(a) producing to the United States all non-privileged documents, information,

PLEA AGREEMENT - SAMSUNG SDI - PAGE 7

and other materials wherever located, in the possession, custody, or control of the
defendant or any of its related entities, requested by the United States in connection with
any Federal Proceeding; and

(b) using its best efforts to secure the ongoing, full, and truthful cooperation,
as defined in Paragraph 13 of this Plea Agreement, of the current and former directors,
officers, and employees of the defendant or any of its related entities as may be requested
by the United States – but excluding Jae-Sik Kim, Seung-Kyu Park, a.k.a. Sang-Kyu
Park, a.k.a. Sky Park, Duck-Yun Kim, a.k.a. Deok-Yun Kim, a.k.a. Deok-Yeon Kim, and
Hoo-Mok Ha, a.k.a. Hu-Mok Ha – including making these persons available in the
United States and at other mutually agreed-upon locations, at the defendant's expense, for
interviews and the provision of testimony in grand jury, trial, and other judicial
proceedings in connection with any Federal Proceeding.

13.  The ongoing, full, and truthful cooperation of each person described in Paragraph
12(b) above will be subject to the procedures and protections of this paragraph, and shall include,
but not be limited to:

(a) producing in the United States and at other mutually agreed-upon locations
all non-privileged documents, including claimed personal documents, and other materials,
wherever located, requested by attorneys and agents of the United States;

(b) making himself or herself available for interviews in the United States and
at other mutually agreed-upon locations, not at the expense of the United States, upon the
request of attorneys and agents of the United States;

(c) responding fully and truthfully to all inquiries of the United States in
connection with any Federal Proceeding, without falsely implicating any person or
intentionally withholding any information, subject to the penalties of making false
statements (18 U.S.C. § 1001) and obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(d) otherwise voluntarily providing the United States with any non-privileged
material or information not requested in (a) - (c) of this paragraph that he or she may have
that is related to any Federal Proceeding;

PLEA AGREEMENT - SAMSUNG SDI - PAGE 8

(e)     when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and

(f)     agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 15(c), the statute of limitations period for any Relevant Offense as defined in Paragraph 15(a) shall be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six (6) months after the date that the United States gave notice of its intent to void its obligations to that person under the Plea Agreement.

## GOVERNMENT'S AGREEMENT

14.     Upon acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence, and subject to the cooperation requirements of Paragraph 12 of this Plea Agreement, the United States agrees that it will not bring further criminal charges against the defendant or any of its related entities for any act or offense committed before the date of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of any cathode ray tube products, including CDTs and CPTs, in the United States and elsewhere. The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence.

15.     The United States agrees to the following:

(a)     Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 15(c), the United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its related entities for any act or offense committed before the date of this Plea Agreement and while

PLEA AGREEMENT - SAMSUNG SDI - PAGE 9

that person was acting as a director, officer, or employee of the defendant or its related entities that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of any cathode ray tube products, including CDTs and CPTs, in the United States and elsewhere ("Relevant Offense"), except that the protections granted in this paragraph shall not apply to Jae-Sik Kim, Seung-Kyu Park, a.k.a. Sang-Kyu Park, a.k.a. Sky Park, Duck-Yun Kim, a.k.a. Deok-Yun Kim, a.k.a. Deok-Yeon Kim, and Hoo-Mok Ha, a.k.a. Hu-Mok Ha;

(b)     Should the United States determine that any current or former director, officer, or employee of the defendant or its related entities may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendant) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendant;

(c)     If any person requested to provide cooperation under Paragraph 15(b) fails to comply with his or her obligations under Paragraph 13, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, shall be rendered void;

(d)     Except as provided in Paragraph 15(e), information provided by a person described in Paragraph 15(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury (18 U.S.C. § 1621), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), or obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(e)     If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 13 of this Plea Agreement, the agreement in Paragraph 15(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case

PLEA AGREEMENT - SAMSUNG SDI - PAGE 10

shall be rendered void;

(f)    The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence; and

(g)    Documents provided under Paragraphs 12(a) and 13(a) shall be deemed responsive to outstanding grand jury subpoenas issued to the defendant or any of its related entities.

16.    The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention, or service of process, or to prevent such person from departing the United States. This paragraph does not apply to an individual's commission of perjury (18 U.S.C. § 1621), making false statements (18 U.S.C. § 1001), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or contempt (18 U.S.C. §§ 401-402) in connection with any testimony or information provided or requested in any Federal Proceeding.

17.    The defendant understands that it may be subject to administrative action by federal or state agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls whatever action, if any, other agencies may take. However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such administrative action of the fact, manner, and extent of the cooperation of the defendant and its related entities as a matter for that agency to consider before determining what administrative action, if any, to take.

## REPRESENTATION BY COUNSEL

18.    The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation. The defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charge,

PLEA AGREEMENT - SAMSUNG SDI - PAGE 11

any possible defenses to the charge, and the nature and range of possible sentences.

## **VOLUNTARY PLEA**

19.     The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement.  The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## **VIOLATION OF PLEA AGREEMENT**

20.     The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant or any of its related entities have failed to provide full and truthful cooperation, as described in Paragraph 12 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant and its related entities shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement.  The defendant may seek Court review of any determination made by the United States under this Paragraph to void any of its obligations under the Plea Agreement.  The defendant and its related entities agree that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant or its related entities for any offense referred to in Paragraph 14 of this Plea Agreement, the statute of limitations period for such offense shall be tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

21.     The defendant understands and agrees that in any further prosecution of it or its related entities resulting from the release of the United States from its obligations under this Plea Agreement, because of the defendant's or its related entities' violation of the Plea

PLEA AGREEMENT - SAMSUNG SDI - PAGE 12

Agreement, any documents, statements, information, testimony, or evidence provided by it, its related entities, or current or former directors, officers, or employees of it or its related entities to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against it or its related entities in any such further prosecution. In addition, the defendant unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

**ENTIRETY OF AGREEMENT**

22.     This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charge in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

23.     The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

24.     The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

PLEA AGREEMENT - SAMSUNG SDI - PAGE 13

1     25.    A facsimile or PDF signature shall be deemed an original signature for the

2    purpose of executing this Plea Agreement. Multiple signature pages are authorized for the

3    purpose of executing this Plea Agreement.

Respectfully submitted,

BY: _____
Sang Soo Noh
Vice President
Samsung SDI Company, Ltd.
428-5 Gongse-dong
Giheung-gu, Yongin-si
Gyeonggi-do, 446-577
Republic of Korea

DATED: 5 / 12 / 2011

BY: _____
Lidia Maher
May Lee Heye
Tai S. Milder
Attorneys
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, California 94102
Tel: (415) 436-6660
Fax: (415) 436-6687

DATED: May 12, 2011

BY: _____
Gary L. Halling, Esq.
Counsel for Samsung SDI Company, Ltd.
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111
Tel: (415) 434-9100
Fax: (415) 434-3947

DATED: May 12, 2011

PLEA AGREEMENT - SAMSUNG SDI - PAGE 14

# RESOLUTION OF THE BOARD OF DIRECTORS
## OF
## SAMSUNG SDI CO., LTD.

A meeting of the Board of Directors (the "Board") of SAMSUNG SDI, CO., LTD. (the "Company"), a Korean corporation, was held on March 9, 2011 at the Company's Seoul office having its address at 21st Fl., SEC Bldg., Samsung Seocho Tower, 1320-10 Seocho 2-Dong, Seocho-Gu, Seoul 137-965, Korea.

The following Directors of the Company were present and constituted a quorum:

MR. CHI HUN CHOI
MR. JUNG WHA LEE
MR. BYEONG BOK JEON
MR. YEONG KIL BAE
MR. JUNE CHULL CHANG
MS. HEE KYUNG KIM

The following resolutions are hereby adopted by the Board of the Company in accordance with the Commercial Laws of Korea:

WHEREAS, it is deemed in the best interest of the Company to enter a plea agreement with the United States Department of Justice;

NOW, THEREFORE, be it

RESOLVED, that execution, delivery and performance of a plea agreement, by and between the Company and the United States Department of Justice (the "Agreement"), in substantially the form made available to the Board, is

hereby approved; and

FUTHER RESOLVED, that MR. SANG SOO NOH, the Vice President of the Company, is hereby fully authorized to execute the Agreement and any other related documents on behalf of the Company and take all necessary actions, including representing the Company at any hearing in order to waive any and all rights of the Company referred to in the Agreement and to plead guilty on behalf of the Company according to the terms of the Agreement.

DATE:   MARCH 9, 2011

---------------------------------
MR. CHI HUN CHOI

---------------------------------
MR. JUNG WHA LEE

---------------------------------
MR. BYEONG BOK JEON

---------------------------------
MR. YEONG KIL BAE

---------------------------------
MR. JUNE CHULL CHANG

---------------------------------
MS. HEE KYUNG KIM

2/2

# EXHIBIT 4
## [Document Submitted Under Seal]

# EXHIBIT 5

<table>
1  | LIDIA MAHER (CSBN 222253)
   | BARBARA J. NELSON (CSBN 87952)
2  | JEANE M. HAMILTON (CSBN 157834)
   | ANNA TRYON PLETCHER (CSBN 239730)
3  | MAY LEE HEYE (CSBN 209366)
   | Antitrust Division
4  | U.S. Department of Justice
   | 450 Golden Gate Avenue
5  | Box 36046, Room 10-0101
   | San Francisco, CA  94102
6  | Telephone:  (415) 436-6660
</table>

7   Attorneys for the United States

8

9                 UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION                **WHA**

12  UNITED STATES OF AMERICA              )      No. **CR 09      0131**
                                          )      INDICTMENT
13                 v.                      )
                                          )
14  CHENG YUAN LIN, a.k.a. C.Y. LIN,       )      VIOLATIONS:
                                          )      Title 15, United States Code,
15                                         )      Section 1 (Conspiracy in Restraint of Trade)
                                          )
16                 Defendant.             )      San Francisco Venue
                                          )
17  ─────────────────────────────────

18       The Grand Jury charges:

19  COUNT ONE: 15 U.S.C. § 1 (Conspiracy in Restraint of Trade)

20                              I.

21                 DESCRIPTION OF THE OFFENSE

22       1.     CHENG YUAN LIN, a.k.a. C.Y. LIN, is hereby indicted and made a defendant on

23  the charge stated below.

24       2.     Beginning at least as early as January 28, 1997, until at least as late as April 7,

25  2003, the exact dates being unknown to the Grand Jury, the defendant CHENG YUAN LIN and

26  coconspirators joined, entered into, and engaged in a combination and conspiracy to suppress and

27  eliminate competition by fixing prices, reducing output, and allocating market shares of color

28  display tubes ("CDTs") to be sold in the United States and elsewhere.  The combination and

INDICTMENT – PAGE 1

conspiracy engaged in by the defendant and coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

3. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and coconspirators, the substantial terms of which were to agree to fix prices, reduce output, and allocate market shares of CDTs to be sold in the United States and elsewhere for use in computer monitors and other products with similar technological requirements.

## II.

## MEANS AND METHODS OF THE CONSPIRACY

4. For the purpose of forming and carrying out the charged combination and conspiracy, the defendant and coconspirators did those things that they combined and conspired to do, including, among other things:

    (a)    attended meetings and engaged in conversations and communications in Taiwan, Korea, Malaysia, China, and elsewhere to discuss the prices, output, and market shares of CDTs;

    (b)    agreed during those meetings, conversations, and communications to charge prices of CDTs at certain target levels or ranges;

    (c)    agreed during those meetings, conversations, and communications to reduce output of CDTs by shutting down CDT production lines for certain periods of time;

    (d)    agreed during those meetings, conversations, and communications to allocate target market shares for the CDT market overall and for certain CDT customers;

    (e)    exchanged CDT sales, production, market share, and pricing information for the purpose of implementing, monitoring, and enforcing adherence to the agreed-upon prices, output reduction, and market share allocation;

INDICTMENT – PAGE 2

(f)    implemented an auditing system that permitted coconspirators to visit each other's production facilities to verify that CDT production lines had been shut down as agreed;

(g)    authorized and approved the participation of subordinate employees in the conspiracy;

(h)    issued price quotations and reduced output in accordance with the agreements reached; and

(i)    took steps to conceal the conspiracy and conspiratorial contacts through various means.

III.

## DEFENDANT AND COCONSPIRATORS

5.    Defendant CHENG YUAN LIN is a resident of Taiwan, Republic of China. During the period covered by this Indictment, CHENG YUAN LIN was Chairman and Chief Executive Officer of Chunghwa Picture Tubes, Ltd. ("Chunghwa"). During the period covered by this Indictment, Chunghwa was a Taiwanese company engaged in the business of producing and selling, among other things, CDTs to customers in the United States and elsewhere.

6.    Various corporations and individuals not made defendants in Count One of this Indictment participated as coconspirators in the offenses charged in Count One of this Indictment and performed acts and made statements in furtherance of it.

7.    Whenever in this Indictment reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

IV.

## TRADE AND COMMERCE

8.    CDTs are a type of cathode ray tube. Cathode ray tubes consist of evacuated glass envelopes that contain an electron gun and a phosphorescent screen. When electrons strike the screen, light is emitted, creating an image on the screen. CDTs are the specialized cathode ray

INDICTMENT – PAGE 3

1  tubes manufactured for use in computer monitors and other products with similar technological
2  requirements.

3      9.     During the period covered by Count One of this Indictment, the defendant and
4  coconspirators sold and distributed substantial quantities of CDTs in a continuous and
5  uninterrupted flow of interstate and foreign trade and commerce to customers located in states or
6  countries other than the states or countries in which the defendant and coconspirators produced
7  CDTs. In addition, payments for CDTs traveled in interstate and foreign trade and commerce.

8      10.    During the period covered by Count One of this Indictment, the business activities
9  of the defendant and coconspirators that are the subject of Count One of this Indictment were
10 within the flow of, and substantially affected, interstate and foreign trade and commerce.

11                                              V.

12                              JURISDICTION AND VENUE

13     11.    The combination and conspiracy charged in Count One of this Indictment was
14 carried out, in part, in the Northern District of California, within the five years preceding the filing
15 of this Indictment, excluding the period during which the running of the statute of limitations was
16 suspended pursuant to agreement with defendant CHENG YUAN LIN.

17 COUNT TWO: 15 U.S.C. § 1 (Conspiracy in Restraint of Trade)

18                                             VI.

19                          DESCRIPTION OF THE OFFENSE

20     12.    CHENG YUAN LIN, a.k.a. C.Y. LIN, is hereby indicted and made a defendant on
21 the charge stated below.

22     13.    Beginning at least as early as March 12, 1997, until at least as late as April 7, 2003,
23 the exact dates being unknown to the Grand Jury, the defendant CHENG YUAN LIN and
24 coconspirators joined, entered into, and engaged in a combination and conspiracy to suppress and
25 eliminate competition by fixing the prices of color picture tubes ("CPTs") to be sold in the United
26 States and elsewhere. The combination and conspiracy engaged in by the defendant and
27 coconspirators was in unreasonable restraint of interstate and foreign trade and commerce in
28 violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

INDICTMENT – PAGE 4

14.     The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and coconspirators, the substantial terms of which were to agree to fix the prices of CPTs to be sold in the United States and elsewhere for use in television sets.

VII.

## MEANS AND METHODS OF THE CONSPIRACY

15.     For the purpose of forming and carrying out the charged combination and conspiracy, the defendant and coconspirators did those things that they combined and conspired to do, including, among other things:

(a)     attended meetings and engaged in conversations and communications in Taiwan, Korea, Malaysia, China, Thailand, Indonesia, and elsewhere to discuss the prices of CPTs;

(b)     agreed during those meetings, conversations, and communications to charge prices of CPTs at certain target levels or ranges;

(c)     exchanged CPT pricing information for the purpose of implementing, monitoring, and enforcing adherence to the agreed-upon prices;

(d)     authorized and approved the participation of subordinate employees in the conspiracy;

(e)     issued price quotations in accordance with the agreements reached; and

(f)     took steps to conceal the conspiracy and conspiratorial contacts through various means.

VIII.

## DEFENDANT AND COCONSPIRATORS

16.     Defendant CHENG YUAN LIN is a resident of Taiwan, Republic of China. During the period covered by this Indictment, CHENG YUAN LIN was Chairman and Chief Executive Officer of Chunghwa.  During the period covered by this Indictment, Chunghwa was a Taiwanese company engaged in the business of producing and selling, among other things, CPTs to customers in the United States and elsewhere.

INDICTMENT – PAGE 5

17.    Various corporations and individuals not made defendants in Count Two of this Indictment participated as coconspirators in the offenses charged in Count Two of this Indictment and performed acts and made statements in furtherance of it.

18.    Whenever in this Indictment reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

IX.

TRADE AND COMMERCE

19.    CPTs are a type of cathode ray tube. Cathode ray tubes consist of evacuated glass envelopes that contain an electron gun and a phosphorescent screen. When electrons strike the screen, light is emitted, creating an image on the screen. CPTs are the specialized cathode ray tubes manufactured for use in television sets.

20.    During the period covered by Count Two of this Indictment, the defendant and coconspirators sold and distributed substantial quantities of CPTs in a continuous and uninterrupted flow of interstate and foreign trade and commerce to customers located in states or countries other than the states or countries in which the defendant and coconspirators produced CPTs. In addition, payments for CPTs traveled in interstate and foreign trade and commerce.

21.    During the period covered by Count Two of this Indictment, the business activities of the defendant and coconspirators that are the subject of Count Two of this Indictment were within the flow of, and substantially affected, interstate and foreign trade and commerce.

X.

JURISDICTION AND VENUE

22.    The combination and conspiracy charged in Count Two of this Indictment was carried out, in part, in the Northern District of California, within the five years preceding the filing of this Indictment, excluding the period during which the running of the statute of limitations was suspended pursuant to agreement with defendant CHENG YUAN LIN.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

INDICTMENT – PAGE 6

1  DATED:  2/10/09                    A TRUE BILL

2

3  _____            _____
   Scott D. Hammond                   FOREPERSON
   Acting Assistant Attorney General

4

5  _____
   Marc Siegel                        _____
6  Director of Criminal Enforcement   Phillip H. Warren
                                      Chief, San Francisco Office
7

   United States Department of Justice
8  Antitrust Division                 _____
                                      Niall E. Lynch
9                                     Assistant Chief, San Francisco Office

10 _____
   Joseph P. Russoniello  For JPR     _____
11 United States Attorney             Lidia Maher
   Northern District of California    Barbara J. Nelson
12                                    Jeane M. Hamilton
                                      Anna Tryon Pletcher
13                                    May Lee Heye
                                      Attorneys
14                                    United States Department of Justice
                                      Antitrust Division
15                                    450 Golden Gate Avenue
                                      Box 36046, Room 10-0101
16                                    San Francisco, CA 94102
                                      (415) 436-6660

17

18

19

20

21

22

23

24

25

26

27

28

   INDICTMENT – PAGE 7

# EXHIBIT 6

# United States District Court

### FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN FRANCISCO

### UNITED STATES OF AMERICA,

## C R  V.  10  0231

**JSW**

## CHUNG CHENG YEH, a.k.a. ALEX YEH,

### DEFENDANT(S).

## INDICTMENT

Title 15 U.S.C. Section 1 (Conspiracy in Restraint of Trade)
COUNT 1

| A true bill. | |
| --- | --- |
| | Foreman |

Filed in open court this ___30th___ day of

___March___  ___2010___.

**BETTY P. LEE**
Clerk

Bail, $ _____

EDWARD M. CHEN
UNITED STATES MAGISTRATE JUDGE

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT

☐ SUPERSEDING

──── OFFENSE CHARGED ────

Title 15 U.S.C. Section 1 -- Conspiracy in Restraint o Trade

☐ Petty

☐ Minor

☐ Misde-meanor

☒ Felony

PENALTY: See attachment.

CR

Name of District Court, and/or Judge/Magistrate Location

**NORTHERN DISTRICT OF CALIFORNIA**

SAN FRANCISCO DIVISION

──── DEFENDANT - U.S ────

▶ CHUNG CHENG YEH, a.k.a. ALEX YEH

DISTRICT COURT NUMBER

**10 0231 JSW**

──── DEFENDANT ────

──── PROCEEDING ────

Name of Complaintant Agency, or Person (& Title, if any)

FEDERAL BUREAU OF INVESTIGATION

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY ☐ DEFENSE

**SHOW DOCKET NO.**

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

**MAGISTRATE CASE NO.**

Name and Office of Person
Furnishing Information on this form    JOSEPH P. RUSSONIELLO

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)    Lidia Maher, Trial Attorney, ATR

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes } If "Yes"
been filed? ☐ No give date filed

**DATE OF ARREST** ▶ Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year

☐ This report amends AO 257 previously submitted

──── ADDITIONAL INFORMATION OR COMMENTS ────

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT

Bail Amount:

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time:              Before Judge:

Comments:

PENALTY SHEET

Individual:      CHUNG CHENG YEH, a.k.a. ALEX YEH

Offense Charged: 15 U.S.C. Section 1 (Conspiracy in Restraint of Trade)

Maximum Penalties:

      1.      A fine in an amount equal to the largest of:

            A.      $1,000,000.00

            B.      Twice the gross pecuniary gain derived from the crime.

            C.      Twice the gross pecuniary loss caused to the victims of the crime.

      2.      A term of imprisonment for ten years.

      3.      A term of supervised release of at least two years but not more than three years.

      4.      $100 special assessment.

      5.      Restitution.

1   LIDIA MAHER (CSBN 222253)
   MAY LEE HEYE (CSBN 209366)
2   TAI S. MILDER (CSBN 267070)
   Antitrust Division
3   U.S. Department of Justice
   450 Golden Gate Avenue
4   Box 36046, Room 10-0101
   San Francisco, CA 94102
5   Telephone: (415) 436-6660

6   Attorneys for the United States

7

                UNITED STATES DISTRICT COURT
8

          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

              SAN FRANCISCO DIVISION
10

11   UNITED STATES OF AMERICA     )   No. **10 0231**

12         v.            )   **INDICTMENT**   **JSW**

13   CHUNG CHENG YEH, a.k.a. ALEX YEH, )   VIOLATION:
                        )   Title 15, United States Code,
14                       )   Section 1 (Conspiracy in Restraint of Trade)
          Defendant.    )
15                       )   San Francisco Venue

16   _____)

17       The Grand Jury charges that:

18                           I.

19               DESCRIPTION OF THE OFFENSE

20      1.     The following individual is hereby indicted and made defendant on the charge

21   stated below: CHUNG CHENG YEH, a.k.a. ALEX YEH.

22      2.     Beginning at least as early as January 1997, until at least as late as March 2006,

23   the exact dates being unknown to the Grand Jury, coconspirators of the defendant joined, entered

24   into, and engaged in a combination and conspiracy to suppress and eliminate competition by

25   fixing prices, reducing output, and allocating market shares of color display tubes ("CDTs") to be

26   sold in the United States and elsewhere. The combination and conspiracy engaged in by the

27   defendant and coconspirators was in unreasonable restraint of interstate and foreign trade and

28   commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

    INDICTMENT – PAGE 1

1    3.    Defendant CHUNG CHENG YEH joined and participated in the conspiracy from
2  at least as early as May 1999 and continuing until at least March 2005.

3    4.    The charged combination and conspiracy consisted of a continuing agreement,
4  understanding, and concert of action among the defendant and coconspirators, the substantial
5  terms of which were to agree to fix prices, reduce output, and allocate market shares of CDTs to
6  be sold in the United States and elsewhere for use in computer monitors and other products with
7  similar technological requirements.

8                                      II.

9                    MEANS AND METHODS OF THE CONSPIRACY

10    5.    For the purpose of forming and carrying out the charged combination and
11  conspiracy, the defendant and coconspirators did those things that they combined and conspired
12  to do, including, among other things:

13            (a)    attending meetings and engaging in conversations and communications in
14                   Taiwan, Korea, Malaysia, China, and elsewhere to discuss the prices,
15                   output, and market shares of CDTs;

16            (b)    agreeing during those meetings, conversations, and communications to
17                   charge prices of CDTs at certain target levels or ranges;

18            (c)    agreeing during those meetings, conversations, and communications to
19                   reduce output of CDTs by shutting down CDT production lines for certain
20                   periods of time;

21            (d)    agreeing during those meetings, conversations, and communications to
22                   allocate target market shares for the CDT market overall and for certain
23                   CDT customers;

24            (e)    exchanging CDT sales, production, market share, and pricing
25                   information for the purpose of implementing, monitoring, and enforcing
26                   adherence to the agreed-upon prices, output reduction, and market share
27                   allocation;

28            (f)    implementing an auditing system that permitted coconspirators to visit each

INDICTMENT – PAGE 2

other's production facilities to verify that CDT production lines had been shut down as agreed;

    (g)    authorizing and approving the participation of subordinate employees in the conspiracy;

    (h)    issuing price quotations and reducing output in accordance with the agreements reached; and

    (i)    taking steps to conceal the conspiracy and conspiratorial contacts through various means.

## III.

## DEFENDANT AND COCONSPIRATORS

6.    Defendant CHUNG CHENG YEH is a resident of Taiwan, Republic of China. From at least as early as May 1999 and continuing until at least March 2005, CHUNG CHENG YEH was employed by Company A and, beginning in March 2002, was Director of Sales for Company A. During the period covered by this Indictment, Company A was a Taiwanese company engaged in the business of producing and selling, among other things, CDTs to customers in the United States and elsewhere.

7.    Various corporations and individuals not made defendants in this Indictment participated as coconspirators in the offense charged in this Indictment and performed acts and made statements in furtherance of it.

8.    Whenever in this Indictment reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## IV.

## TRADE AND COMMERCE

9.    CDTs are a type of cathode ray tube. Cathode ray tubes consist of evacuated glass envelopes that contain an electron gun and a phosphorescent screen. When electrons strike the screen, light is emitted, creating an image on the screen. CDTs are the specialized cathode ray

INDICTMENT – PAGE 3

1  tubes manufactured for use in computer monitors and other products with similar technological
2  requirements.

3      10.    During the period covered by this Indictment, Company A and coconspirators sold
4  and distributed substantial quantities of CDTs in a continuous and uninterrupted flow of interstate
5  and foreign trade and commerce to customers located in states or countries other than the states or
6  countries in which Company A and coconspirators produced CDTs. In addition, payments for
7  CDTs traveled in interstate and foreign trade and commerce.

8      11.    During the period covered by this Indictment, the business activities of the
9  defendant and coconspirators related to the sale and distribution of CDTs that are the subject of
10  this Indictment were within the flow of, and substantially affected, interstate and foreign trade and
11  commerce.

12                              V.

13              JURISDICTION AND VENUE

14      12.    The combination and conspiracy charged in this Indictment was carried out, in
15  part, in the Northern District of California, within the five years preceding the filing of this
16  Indictment.

17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

INDICTMENT – PAGE 4

1  ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

2  DATED:  30 March 2010                    A TRUE BILL

3

4  Christine A. Varney                      FOREPERSON
5  Assistant Attorney General

6

7  Scott D. Hammond                         Phillip H. Warren
   Deputy Assistant Attorney General       Chief, San Francisco Office
8

9  Marc Siegel                              Lidia Maher
10 Director of Criminal Enforcement         May Lee Heye
                                            Tai S. Milder
11 United States Department of Justice      Attorneys
   Antitrust Division                       U.S. Dept. of Justice, Antitrust Division
12                                          450 Golden Gate Avenue
                                            Box 36046, Room 10-0101
13 Joseph P. Russoniello                    San Francisco, CA 94102
   United States Attorney                   (415) 436-6660
14 Northern District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   INDICTMENT – PAGE 5

# EXHIBIT 7

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☐ SUPERSEDING

### OFFENSE CHARGED

Title 15, United States Code, Section 1 (Conspiracy in Restraint of Trade)

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:  See attachment

Name of District Court, and/or Judge/Magistrate Location

**NORTHERN DISTRICT OF CALIFORNIA**

SAN FRANCISCO DIVISION

— DEFENDANT - U.S —

▶ SEUNG-KYU LEE, a.k.a. SIMON LEE

DISTRICT COURT NUMBER

**CR10 0817 WHA**

FILED
2010 NOV -9 P 2:51
RICHARD W. WIEKING
CLERK, U.S. DIST. COURT
NO. DIST. OF CA.

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:     } SHOW DOCKET NO.

☐ U.S. ATTORNEY  ☐ DEFENSE }

☐ this prosecution relates to a pending case involving this same defendant     } MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under }

Name and Office of Person
Furnishing Information on this form     Melinda Haag

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)     Lidia Maher, Antitrust Div.

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction     } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes     If "Yes"
been filed?  ☐ No     give date filed

DATE OF     Month/Day/Year
ARREST ▶

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED     Month/Day/Year
TO U.S. CUSTODY ▶

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT     Bail Amount:

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:     Before Judge:

Comments:

PENALTY SHEET

Individuals:            SEUNG-KYU LEE, a.k.a. SIMON LEE

Offense Charged:       15 U.S.C. Section 1 (Conspiracy in Restraint of Trade)

Maximum Penalties:

    1.    A fine in an amount equal to the largest of:

          A.    $1,000,000.00

          B.    Twice the gross pecuniary gain derived from the crime.

          C.    Twice the gross pecuniary loss caused to the victims of the crime.

    2.    A term of imprisonment for ten years.

    3.    A term of supervised release of at least two years but not more than three years.

    4.    $100 special assessment.

    5.    Restitution.

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

—— OFFENSE CHARGED ——

Title 15, United States Code, Section 1 (Conspiracy in Restraint of Trade)

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY:  See attachment

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CR 10 0817

—— DEFENDANT - U.S. ——

YEONG-UG YANG, a.k.a. YEONG-WOOK YANG, a.k.a.
YONG-SHU YANG, a.k.a. YONG-SHU LIANG, a.k.a.
YOUNG-UK YANG, a.k.a. YEONG-EUG YANG, a.k.a.
ALBERT YANG

DISTRICT COURT NUMBER

—— PROCEEDING ——

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
} MAGISTRATE CASE NO.

Name and Office of Person
Furnishing Information on this form      Melinda Haag

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)      Lidia Maher, Antitrust Div.

—— DEFENDANT ——

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction
} ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes
been filed?  ☐ No
} If "Yes" give date filed

DATE OF ARREST ▶  Month/Day/Year
Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶  Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

—— ADDITIONAL INFORMATION OR COMMENTS ——

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT      Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance      * Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment
Defendant Address:

Date/Time:      Before Judge:

Comments:

PENALTY SHEET

FILED

2010 NOV -9

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF
CALIFORNIA

WHA

Individuals: YEONG-UG YANG, a.k.a. YEONG-WOOK YANG, a.k.a. YONG-SHU YANG, a.k.a. YONG-SHU LIANG, a.k.a. YOUNG-UK YANG, a.k.a. YEONG-EUG YANG, a.k.a. ALBERT YANG

Offense Charged: 15 U.S.C. Section 1 (Conspiracy in Restraint of Trade)

Maximum Penalties:

## CR 10 0817

1. A fine in an amount equal to the largest of:

   A. $1,000,000.00

   B. Twice the gross pecuniary gain derived from the crime.

   C. Twice the gross pecuniary loss caused to the victims of the crime.

2. A term of imprisonment for ten years.

3. A term of supervised release of at least two years but not more than three years.

4. $100 special assessment.

5. Restitution.

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

**FILED**

**OFFENSE CHARGED**

Title 15, United States Code, Section 1 (Conspiracy in Restraint of Trade)

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: See attachment

2010 NOV -9 NORTHERN DISTRICT OF CALIFORNIA
RICHARD W. WIEKING SAN FRANCISCO DIVISION
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Name of District Court, and/or Judge/Magistrate Location

**DEFENDANT - U.S.A.**

▶ JAE-SIK KIM

DISTRICT COURT NUMBER  **WHA**

# CR 10 0817

**DEFENDANT**

## PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE

**SHOW DOCKET NO.**

☐ this prosecution relates to a pending case involving this same defendant

**MAGISTRATE CASE NO.**

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form    Melinda Haag

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)    Lidia Maher, Antitrust Div.

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction   } ☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes   If "Yes"
been filed?  ☐ No    give date filed

DATE OF ▶   Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶  Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT    Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed; since Magistrate has scheduled arraignment

Date/Time:              Before Judge:

Comments:

PENALTY SHEET

*FILED*

2010 NOV -9 P 2: 51

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DIST. OF CALIFORNIA

WHA

Individuals:         JAE-SIK KIM

Offense Charged:     15 U.S.C. Section 1 (Conspiracy in Restraint of Trade)

**10** 0 8 1 7

Maximum Penalties:

    1.    A fine in an amount equal to the largest of:

        A.    $1,000,000.00

        B.    Twice the gross pecuniary gain derived from the crime.

        C.    Twice the gross pecuniary loss caused to the victims of the crime.

    2.    A term of imprisonment for ten years.

    3.    A term of supervised release of at least two years but not more than three years.

    4.    $100 special assessment.

    5.    Restitution.

# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

FILED WHA
2010 NOV -9 P 2:51
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

# CR 10 0817

SEUNG-KYU LEE, a.k.a. SIMON LEE;
YEONG-UG YANG, a.k.a.
YEONG-WOOK YANG, a.k.a.
YONG-SHU YANG, a.k.a. YONG-SHU
LIANG, a.k.a., YOUNG-UK YANG, a.k.a.
YEONG-EUG YANG, a.k.a. ALBERT
YANG; and JAE-SIK KIM

DEFENDANT(S).

## INDICTMENT

Title 15 U.S.C. Section 1 (Conspiracy in Restraint of Trade)

A true bill.

_____
Foreman

Filed in open court this _____ day of

_____ 2010

_____
**BETTY P. LEE**          Clerk

Bail, $ No bail warrant

_____
Timothy J Bommer
U.S. Magistrate Judge

FILED

2010 NOV -9 P 2: 51

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  LIDIA MAHER (CSBN 222253)
   MAY LEE HEYE (CSBN 209366)
2  TAI S. MILDER (CSBN 267070)
   Antitrust Division
3  U.S. Department of Justice
   450 Golden Gate Avenue
4  Box 36046, Room 10-0101
   San Francisco, CA 94102
5  Telephone: (415) 436-6660

6  Attorneys for the United States

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

              SAN FRANCISCO DIVISION

10                                      CR 10 0817

11  UNITED STATES OF AMERICA      )   No.
                                  )
12            v.                   )   **INDICTMENT**
                                  )
13  SEUNG-KYU LEE, a.k.a. SIMON LEE;  )   VIOLATION:
    YEONG-UG YANG, a.k.a.          )   Title 15, United States Code,
14  YEONG-WOOK YANG, a.k.a.        )   Section 1 (Conspiracy in Restraint of Trade)
    YONG-SHU YANG, a.k.a. YONG-SHU )
15  LIANG, a.k.a., YOUNG-UK YANG, a.k.a. )   San Francisco Venue
    YEONG-EUG YANG, a.k.a. ALBERT  )
16  YANG; and JAE-SIK KIM,         )
                                  )
17            Defendants.          )
                                  )
18

19      The Grand Jury charges that:

20                          I.

21              DESCRIPTION OF THE OFFENSE

22      1.      The following individuals are hereby indicted and made defendants on the charge

23  stated below:  SEUNG-KYU LEE, a.k.a. SIMON LEE; YEONG-UG YANG, a.k.a. YEONG-

24  WOOK YANG, a.k.a. YONG-SHU YANG, a.k.a. YONG-SHU LIANG, a.k.a. YOUNG-UK YANG,

25  a.k.a. YEONG-EUG YANG,  a.k.a. ALBERT YANG; and JAE-SIK KIM.

26      2.      Beginning at least as early as January 1997, until at least as late as March 2006,

27  the exact dates being unknown to the Grand Jury, coconspirators of the defendants joined,

28  entered into, and engaged in a combination and conspiracy to suppress and eliminate competition

    INDICTMENT – PAGE 1

1    by fixing prices, reducing output, and allocating market shares of color display tubes ("CDTs") to
2    be sold in the United States and elsewhere.  The combination and conspiracy engaged in by the
3    defendants and coconspirators was in unreasonable restraint of interstate and foreign trade and
4    commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

5        3.      Defendant SEUNG-KYU LEE joined and participated in the conspiracy from at
6    least as early as January 2000 and continuing until at least December 2005.

7        4.      Defendant YEONG-UG YANG joined and participated in the conspiracy from at
8    least as early as June 2003 and continuing until at least March 2006.

9        5.      Defendant JAE-SIK KIM joined and participated in the conspiracy from at least as
10   early as June 2003 and continuing until at least March 2006.

11       6.      The charged combination and conspiracy consisted of a continuing agreement,
12   understanding, and concert of action among the defendants and coconspirators, the substantial
13   terms of which were to agree to fix prices, reduce output, and allocate market shares of CDTs to
14   be sold in the United States and elsewhere for use in computer monitors and other products with
15   similar technological requirements.

16                                          II.

17                    MEANS AND METHODS OF THE CONSPIRACY

18       7.      For the purpose of forming and carrying out the charged combination and
19   conspiracy, the defendants and coconspirators did those things that they combined and conspired
20   to do, including, among other things:

21               (a)     attending meetings and engaging in conversations and communications in
22                       Taiwan, Korea, Malaysia, China, and elsewhere to discuss the prices,
23                       output, and market shares of CDTs;

24               (b)     agreeing during those meetings, conversations, and communications to
25                       charge prices of CDTs at certain target levels or ranges;

26               (c)     agreeing during those meetings, conversations, and communications to
27                       reduce output of CDTs by shutting down CDT production lines for certain
28                       periods of time;

INDICTMENT – PAGE 2

1       (d)   agreeing during those meetings, conversations, and communications to

2               allocate target market shares for the CDT market overall and for certain

3               CDT customers;

4       (e)   exchanging CDT sales, production, market share, and pricing

5               information for the purpose of implementing, monitoring, and enforcing

6               adherence to the agreed-upon prices, output reduction, and market share

7               allocation;

8       (f)   implementing an auditing system that permitted coconspirators to visit each

9               other's production facilities to verify that CDT production lines had been

10             shut down as agreed;

11      (g)   authorizing and approving the participation of subordinate employees in the

12             conspiracy;

13      (h)   issuing price quotations and reducing output in accordance with the

14             agreements reached; and

15      (i)   taking steps to conceal the conspiracy and conspiratorial contacts through

16             various means.

17                           III.

18              DEFENDANTS AND COCONSPIRATORS

19    8.    Defendant SEUNG-KYU LEE is or was a resident of Korea. From at least as early

20  as January 2000 and continuing until at least December 2005, SEUNG-KYU LEE was employed

21  by Company A and later by Company B. Company B was a joint venture formed in

22  approximately 2001 between Company A and Company C. Beginning around 2004, SEUNG-

23  KYU LEE was responsible for CDT sales for Company B. During the period covered by this

24  Indictment, Company A was a Korean company, and Company B was a company incorporated in

25  the Netherlands, headquartered in Hong Kong, and engaged in the business of producing and

26  selling, among other things, CDTs to customers in the United States and elsewhere.

27    9.    Defendant YEONG-UG YANG is or was a resident of Korea. From at least as

28  early as June 2003 and continuing until at least March 2006, YEONG-UG YANG was employed

INDICTMENT – PAGE 3

1 by Company B and, beginning around 2004, was responsible for CRT sales for Company B.
2 During the period covered by this Indictment, Company B was a company incorporated in the
3 Netherlands, headquartered in Hong Kong, and engaged in the business of producing and selling,
4 among other things, CDTs to customers in the United States and elsewhere.

5     10.    Defendant JAE-SIK KIM is or was a resident of Korea. From at least as early as
6 June 2003 and continuing until at least March 2006, JAE-SIK KIM was employed by Company D
7 and, beginning around 2002, was CRT Sales Division Head for Company D. During the period
8 covered by this Indictment, Company D was a Korean company engaged in the business of
9 producing and selling, among other things, CDTs to customers in the United States and elsewhere.

10     11.    Various corporations and individuals not made defendants in this Indictment
11 participated as coconspirators in the offense charged in this Indictment and performed acts and
12 made statements in furtherance of it.

13     12.    Whenever in this Indictment reference is made to any act, deed, or transaction of
14 any corporation, the allegation means that the corporation engaged in the act, deed, or transaction
15 by or through its officers, directors, employees, agents, or other representatives while they were
16 actively engaged in the management, direction, control, or transaction of its business or affairs.

17 IV.

18 TRADE AND COMMERCE

19     13.    CDTs are a type of cathode ray tube. Cathode ray tubes consist of evacuated glass
20 envelopes that contain an electron gun and a phosphorescent screen. When electrons strike the
21 screen, light is emitted, creating an image on the screen. CDTs are the specialized cathode ray
22 tubes manufactured for use in computer monitors and other products with similar technological
23 requirements.

24     14.    During the period covered by this Indictment, Company B, Company D, and
25 coconspirators sold and distributed substantial quantities of CDTs in a continuous and
26 uninterrupted flow of interstate and foreign trade and commerce to customers located in states or
27 countries other than the states or countries in which Company B, Company D, and coconspirators
28 produced CDTs. In addition, payments for CDTs traveled in interstate and foreign trade and

INDICTMENT – PAGE 4

1    commerce.

2      15.    During the period covered by this Indictment, the business activities of the

3    defendants and coconspirators related to the sale and distribution of CDTs that are the subject of

4    this Indictment were within the flow of, and substantially affected, interstate and foreign trade and

5    commerce.

6                               V.

7                  JURISDICTION AND VENUE

8      16.    The combination and conspiracy charged in this Indictment was carried out, in

9    part, in the Northern District of California, within the five years preceding the filing of this

10    Indictment.

11    ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

12    DATED:                                A TRUE BILL

13

14

   Christine A. Varney                     FOREPERSON

15    Assistant Attorney General

16

17    Scott D. Hammond                   Phillip R. Warren

   Deputy Assistant Attorney General      Chief, San Francisco Office

18

19    United States Department of Justice

   Antitrust Division                          Lidia Maher

20                                   May Lee Heye

                                    Tai S. Milder

21                                   Attorneys

                                    U.S. Dept. of Justice, Antitrust Division

22    Melinda L. Haag                     450 Golden Gate Avenue

   United States Attorney              Box 36046, Room 10-0101

23    Northern District of California       San Francisco, CA 94102

                                    (415) 436-6660

24

25

26

27

28

   INDICTMENT – PAGE 5

# EXHIBIT 8

1   LIDIA MAHER (CSBN 222253)
2   *ANNA TRYON PLETCHER (CSBN 239730)*
    MAY LEE HEYE (CSBN 209366)
3   Antitrust Division
    U.S. Department of Justice
    450 Golden Gate Avenue
4   Box 36046, Room 10-0101
    San Francisco, CA  94102
5   Telephone:  (415) 436-6660

6   Attorneys for the United States

7



8               UNITED STATES DISTRICT COURT          **PJH**

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11   UNITED STATES OF AMERICA     )   **CR 09     0836**
                                  )
12          v.                    )   **INDICTMENT**
                                  )
13                                )   VIOLATION:
     WEN JUN CHENG, a.k.a. TONY CHENG )   Title 15, United States Code,
14                                )   Section 1 (Conspiracy in Restraint of Trade)
                                  )
15          Defendant.            )   San Francisco Venue
                                  )
16   ────────────────────────────

17       The Grand Jury charges that:

18                           I.

19            DESCRIPTION OF THE OFFENSE

20       1.     The following individual is hereby indicted and made a defendant on the charge

21   stated below:  WEN JUN CHENG, a.k.a. TONY CHENG.

22       2.     Beginning at least as early as January 1997, until at least as late as March 2006,

23   the exact dates being unknown to the Grand Jury, coconspirators of the defendant joined, entered

24   into, and engaged in a combination and conspiracy to suppress and eliminate competition by

25   fixing prices, reducing output, and allocating market shares of color display tubes ("CDTs") to be

26   sold in the United States and elsewhere.  The combination and conspiracy engaged in by the

27   defendant and coconspirators was in unreasonable restraint of interstate and foreign trade and

28   commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

     INDICTMENT – PAGE 1

3.    Defendant WEN JUN CHENG joined and participated in the conspiracy from at least as early as January 1999 and continuing until at least September 2004.

4.    The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendant and coconspirators, the substantial terms of which were to agree to fix prices, reduce output, and allocate market shares of CDTs to be sold in the United States and elsewhere for use in computer monitors and other products with similar technological requirements.

II.

## MEANS AND METHODS OF THE CONSPIRACY

5.    For the purpose of forming and carrying out the charged combination and conspiracy, the defendant and coconspirators did those things that they combined and conspired to do, including, among other things:

    (a)    attending meetings and engaging in conversations and communications in Taiwan, Korea, Malaysia, China, and elsewhere to discuss the prices, output, and market shares of CDTs;

    (b)    agreeing during those meetings, conversations, and communications to charge prices of CDTs at certain target levels or ranges;

    (c)    agreeing during those meetings, conversations, and communications to reduce output of CDTs by shutting down CDT production lines for certain periods of time;

    (d)    agreeing during those meetings, conversations, and communications to allocate target market shares for the CDT market overall and for certain CDT customers;

    (e)    exchanging CDT sales, production, market share, and pricing information for the purpose of implementing, monitoring, and enforcing adherence to the agreed-upon prices, output reduction, and market share allocation;

    (f)    implementing an auditing system that permitted coconspirators to visit each

INDICTMENT – PAGE 2

1    other's production facilities to verify that CDT production lines had been

2    shut down as agreed;

3        (g)    authorizing and approving the participation of subordinate employees in the

4               conspiracy;

5        (h)    issuing price quotations and reducing output in accordance with the

6               agreements reached; and

7        (i)    taking steps to conceal the conspiracy and conspiratorial contacts through

8               various means.

9                                          III.

10                  DEFENDANT AND COCONSPIRATORS

11       6.      Defendant WEN JUN CHENG is a resident of Taiwan, Republic of China.  From

12   at least as early as January 1999 and continuing until at least September 2004, WEN JUN

13   CHENG was employed by Company A and, beginning in March 2002, was Assistant Vice

14   President of Sales and Marketing for Company A.  During the period covered by this Indictment,

15   Company A was a Taiwanese company engaged in the business of producing and selling, among

16   other things, CDTs to customers in the United States and elsewhere.

17       7.      Various corporations and individuals not made defendants in this Indictment

18   participated as coconspirators in the offense charged in this Indictment and performed acts and

19   made statements in furtherance of it.

20       8.      Whenever in this Indictment reference is made to any act, deed, or transaction of

21   any corporation, the allegation means that the corporation engaged in the act, deed, or transaction

22   by or through its officers, directors, employees, agents, or other representatives while they were

23   actively engaged in the management, direction, control, or transaction of its business or affairs.

24                                          IV.

25                        TRADE AND COMMERCE

26       9.      CDTs are a type of cathode ray tube.  Cathode ray tubes consist of evacuated glass

27   envelopes that contain an electron gun and a phosphorescent screen.  When electrons strike the

28   screen, light is emitted, creating an image on the screen.  CDTs are the specialized cathode ray

INDICTMENT – PAGE 3

1    tubes manufactured for use in computer monitors and other products with similar technological

2    requirements.

3        10.    During the period covered by this Indictment, Company A and coconspirators sold

4    and distributed substantial quantities of CDTs in a continuous and uninterrupted flow of interstate

5    and foreign trade and commerce to customers located in states or countries other than the states or

6    countries in which Company A and coconspirators produced CDTs.  In addition, payments for

7    CDTs traveled in interstate and foreign trade and commerce.

8        11.    During the period covered by this Indictment, the business activities of the

9    defendant and coconspirators related to the sale and distribution of CDTs that are the subject of

10   this Indictment were within the flow of, and substantially affected, interstate and foreign trade and

11   commerce.

12                                    V.

13                        JURISDICTION AND VENUE

14       12.    The combination and conspiracy charged in this Indictment was carried out, in

15   part, in the Northern District of California, within the five years preceding the filing of this

16   Indictment.

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

     INDICTMENT – PAGE 4

1    ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

2    DATED:    8/18/09                          A TRUE BILL

3

4    _Christine A. Varney_

5    Christine A. Varney
     Assistant Attorney General

6

7    Scott D. Hammond
     Deputy Assistant Attorney General          _Phillip H. Warren_

8                                               Phillip H. Warren
                                                Chief, San Francisco Office
9
     Marc Siegel
10   Director of Criminal Enforcement           Lidia Maher
                                                Anna Tryon Pletcher
11   United States Department of Justice        May Lee Heye
     Antitrust Division                         Attorneys
12                                              U.S. Dept. of Justice, Antitrust Division
                                                450 Golden Gate Avenue
13                                              Box 36046, Room 10-0101
     Joseph P. Russoniello  for JM             San Francisco, CA 94102
14   United States Attorney                     (415) 436-6660
     Northern District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     INDICTMENT – PAGE 5

# EXHIBIT 9



# Department of Justice

---

FOR IMMEDIATE RELEASE                                                                    AT
TUESDAY, FEBRUARY 10, 2009                                                  (202) 514-2007
WWW.USDOJ.GOV                                                        TDD (202) 514-1888

### FORMER EXECUTIVE INDICTED FOR HIS ROLE
### IN TWO CATHODE RAY TUBE PRICE-FIXING CONSPIRACIES

*Global Price-Fixing Scheme Involves Tubes Used in Computer Monitors and Televisions*

WASHINGTON – A federal grand jury in San Francisco today returned a two-count indictment against the former Chairman and Chief Executive Officer of Chunghwa Picture Tubes Ltd. for his participation in global conspiracies to fix prices of two types of cathode ray tubes (CRTs) used in computer monitors and televisions, the U.S. Department of Justice announced today.  This is the first charge as a result of the Antitrust Division's ongoing investigation into the cathode ray tubes industry.

The indictment, filed today in U.S. District Court in San Francisco, charges Cheng Yuan Lin, aka C.Y. Lin, a resident of Taiwan, with conspiring with others to suppress and eliminate competition by fixing prices, reducing output and allocating market shares of color display tubes (CDTs) to be sold in the U.S. and elsewhere, beginning at least as early as Jan. 28, 1997, until at least as late as April 7, 2003.  The indictment also charges C.Y. Lin with conspiring with others to suppress and eliminate competition by fixing prices for color picture tubes (CPTs) to be sold in the U.S. and elsewhere, beginning at least as early as March 12, 1997, until at least as late as April 7, 2003.

CRTs consist of evacuated glass envelopes that contain an electron gun and a phosphorescent screen.  When electrons strike the screen, light is emitted, creating an image on the screen.  CDTs and CPTs are each types of CRTs.  CDTs are used in computer monitors and other specialized applications, while CPTs are used in color televisions.  The worldwide market for CRTs, including CPTs and CDTs, in 1997, at the start of the conspiracies has been estimated as approximately $26 billion.

"This conspiracy harmed countless Americans who purchased computers and televisions using cathode ray tubes sold at fixed prices," said Scott D. Hammond, Acting Assistant Attorney General in charge of the Antitrust Division.  "The Antitrust Division will continue to prosecute individuals, wherever they are located and however high their position on the corporate ladder, who engage in price fixing aimed at U.S. businesses and consumers."

According to the charges, C.Y. Lin and co-conspirators carried out the CDT conspiracy by, among other things:

- 2 -

- Attending meetings and engaging in conversations and communications in Taiwan, Korea, Malaysia, China and elsewhere to discuss the prices, output and market shares of CDTs;
- Agreeing during those meetings, conversations and communications to charge prices of CDTs at certain target levels or ranges;
- Agreeing during those meetings, conversations and communications to reduce output of CDTs by shutting down CDT production lines for certain periods of time;
- Agreeing during those meetings, conversations and communications to allocate target market shares for the CDT market overall and for certain CDT customers;
- Exchanging CDT sales, production, market share and pricing information for the purpose of implementing, monitoring and enforcing adherence to the agreed-upon prices, output reduction and market share allocation;
- Implementing an auditing system that permitted co-conspirators to visit each other's production facilities to verify that CDT production lines had been shut down as agreed;
- Authorizing and approving the participation of subordinate employees in the conspiracy;
- Issuing price quotations and reducing output in accordance with the agreements reached; and
- Taking steps to conceal the conspiracy and conspiratorial contacts through various means.

C.Y. Lin is charged with carrying out the CPT conspiracy with his co-conspirators by, among other things:

- Attending meetings and engaging in conversations and communications in Taiwan, Korea, Malaysia, China, Thailand, Indonesia and elsewhere to discuss the prices of CPTs;
- Agreeing during those meetings, conversations and communications to charge prices of CPTs at certain target levels or ranges;
- Exchanging CPT pricing information for the purpose of implementing, monitoring and enforcing adherence to the agreed-upon prices;
- Authorizing and approving the participation of subordinate employees in the conspiracy;
- Issuing price quotations in accordance with the agreements reached; and
- Taking steps to conceal the conspiracy and conspiratorial contacts through various means.

On Feb. 3, 2009, Lin was indicted for his participation in a separate conspiracy to suppress and eliminate competition by fixing the prices of Thin Film Transistor-Liquid Crystal Display (TFT-LCD) panels.

- 3 -

Lin is charged with violating the Sherman Act, which carries a maximum penalty of three years imprisonment and a fine of $350,000 for individuals for violations occurring before June 22, 2004.  The maximum fines may be increased to twice the gain derived from the crime or twice the loss suffered by the victims if either of those amounts is greater than the Sherman Act maximum fines.

This case is part of an ongoing joint investigation by the San Francisco Field Office of the Antitrust Division of the U.S. Department of Justice and the Federal Bureau of Investigation in San Francisco.  Anyone with information concerning illegal conduct in the CRT industry is urged to call the San Francisco Field Office of the Antitrust Division at 415-436-6660.

### 

09-110

# EXHIBIT 10



**EUROPEAN COMMISSION**

**PRESS RELEASE**

Brussels, 5 December 2012

# Antitrust: Commission fines producers of TV and computer monitor tubes € 1.47 billion for two decade-long cartels

The European Commission has fined seven international groups of companies a total of € 1 470 515 000 for participating in either one or both of two distinct cartels in the sector of cathode ray tubes ("CRT"). For almost ten years, between 1996 and 2006, these companies fixed prices, shared markets, allocated customers between themselves and restricted their output. One cartel concerned colour picture tubes used for televisions and the other one colour display tubes used in computer monitors. The cartels operated worldwide. The infringements found by the Commission therefore cover the entire European Economic Area (EEA). Chunghwa, LG Electronics, Philips and Samsung SDI participated in both cartels, while Panasonic, Toshiba, MTPD (currently a Panasonic subsidiary) and Technicolor (formerly Thomson) participated only in the cartel for television tubes. Chunghwa received full immunity from fines under the Commission's 2006 Leniency Notice for the two cartels, as it was the first to reveal their existence to the Commission. Other companies received reductions of their fines for their cooperation in the investigation under the Commission's leniency programme.

Commission Vice President in charge of competition policy Joaquín Almunia said: *"These cartels for cathode ray tubes are 'textbook cartels': they feature all the worst kinds of anticompetitive behaviour that are strictly forbidden to companies doing business in Europe. Cathode ray tubes were a very important component in the making of television and computer screens. They accounted for 50 to 70% of the price of a screen. This gives an indication of the serious harm this illegal behaviour has caused both to television and computer screen producers in the EEA, and ultimately the harm it caused to the European consumers over the years".*

The two CRT cartels are among the most organised cartels that the Commission has investigated. For almost 10 years, the cartelists carried out the most harmful anti-competitive practices including price fixing, market sharing, customer allocation, capacity and output coordination and exchanges of commercial sensitive information. The cartelists also monitored the implementation, including auditing compliance with the capacity restrictions by plant visits in the case of the computer monitor tubes cartel.

Top management level meetings, dubbed "green(s) meetings" by the cartelists themselves because they were often followed by a golf game, designed the orientations for the two cartels. Preparation and implementation were carried out through lower level meetings, often referred to as "glass meetings", on a quarterly, monthly, sometimes even weekly basis. Meetings were held in various locations in Asia (Taiwan, Korea, Japan, Malaysia, Indonesia, Thailand, Hong Kong, etc.) and Europe (Amsterdam, Budapest, Glasgow, Paris, Rome). The cartels operated worldwide.

Multilateral meetings usually started with a review of demand, production, sales and capacity in the main sales areas, including Europe; then prices were discussed, including for individual customers, i.e. TV and computer manufacturers. They had therefore a direct impact on customers in the European Economic Area (EEA), ultimately harming final consumers. The cartelists were trying to address the decline of the CRT market in a collusive way, to the detriment of consumers. For example, one document recording the cartel discussions spells out clearly: *"producers need to avoid price competition through controlling their production capacity"*.

The investigation also revealed that the companies were well aware they were breaking the law. For instance, in a document found during the Commission's inspections, a warning goes as follows: *"Everybody is requested to keep it as secret as it would be serious damage if it is open to customers or European Commission"*. The participants were therefore taking precautions to avoid being in possession of anticompetitive documents. Some documents spelled out, for example: *"Please dispose the following document after reading it"*.

## Fines

The fines were set on the basis of the [Commission's 2006 Guidelines on fines](#) (see [IP/06/857](#) and [MEMO/06/256](#)).

In setting the level of fines, the Commission took into account the companies' sales of the products concerned in the EEA, the very serious nature of the infringement, its geographic scope, its implementation and its duration. If Chunghwa had not received full immunity, its fines would have been € 8 385 000 for the TV tubes cartel and € 8 594 000 for the computer monitor tubes cartel. Samsung SDI, Philips and Technicolor received reductions of fines ranging from 10 to 40% for their cooperation under the Commission's leniency programme. The reductions reflect the timing of their cooperation and the extent to which the evidence they provided helped the Commission to prove the respective cartels. One of the companies invoked its inability to pay the fine. The Commission assessed this claim under point 35 of the 2006 fines Guidelines and granted a reduction of the fine.

The fines imposed are as follows:

| Name of undertaking | Reduction under the Leniency Notice (%) | Fine for the TV tubes cartel[1] (€) | Fine for the computer monitor tubes cartel[1] (€) | Total fine[1] (€) |
|---|---|---|---|---|
| Chunghwa[2] | 100% | 0 | 0 | 0 |
| Samsung SDI | 40% | 81 424 000 | 69 418 000 | 150 842 000 |
| Philips | 30% | 240 171 000 | 73 185 000 | 313 356 000 |
| LG Electronics | 0% | 179 061 000 | 116 536 000 | 295 597 000 |
| Philips and LG Electronics[2] | 30% (reduction only for Philips) | 322 892 000 | 69 048 000 | 391 940 000 |
| Technicolor | 10% | 38 631 000 | | 38 631 000 |
| Panasonic | 0% | 157 478 000 | | 157 478 000 |
| Toshiba | 0% | 28 048 000 | | 28 048 000 |
| Panasonic, Toshiba and MTPD[2] | 0% | 86 738 000 | | 86 738 000 |
| Panasonic and MTPD[2] | 0% | 7 885 000 | | 7 885 000 |
| **TOTAL** | | 1 142 328 000 | 328 187 000 | **1 470 515 000** |

[1] Legal entities within the undertaking may be held jointly and severally liable for the whole or part of the fine imposed.

[2] Jointly and severally liable for that whole fine imposed.

## Background

A Cathode Ray Tube ("CRT") is an evacuated glass envelope containing an electron gun and a fluorescent screen. Two distinct types of CRTs are relevant for the cartels sanctioned in today's decisions: (i) colour display tubes (CDT) used in computer monitors and (ii) colour picture tubes (CPT) used for colour televisions. The CRT was gradually replaced by alternative techniques such as LCD and plasma displays.

The Commission's investigation started with unannounced inspections in November 2007 (see MEMO/07/453). A statement of objections was issued in November 2009 (see MEMO/09/525) on which the companies had the opportunity to comment and to be heard. A supplementary statement of objections concerning corporate liability was issued in June 2012 against two companies.

More information on this case will be available under the case number 39437 in the Commission's public case register on the competition website, once confidentiality issues have been dealt with. For more information on the Commission's action against cartels, see its cartels website.

## Action for damages

Any person or firm affected by anti-competitive behaviour as described in this case may bring the matter before the courts of the Member States and seek damages. The case law of the European Court of Justice (ECJ) and the Antitrust Regulation (Council Regulation 1/2003) both confirm that in cases before national courts, a Commission decision is binding proof that the behaviour took place and was illegal. Even though the Commission has fined the companies concerned, damages may be awarded without these being reduced on account of the Commission fine.

The Commission considers that meritorious claims for damages should be aimed at compensating, in a fair way, the victims of an infringement for the harm done. More information on antitrust damages actions, including the public consultation and a citizens' summary, is available at:

http://ec.europa.eu/comm/competition/antitrust/actionsdamages/documents.html

Contacts :
Antoine Colombani  (+32 2 297 45 13)
Marisa Gonzalez Iglesias  (+32 2 295 19 25)

# EXHIBIT 11

**Cease-and-Desist Order and Surcharge Payment Orders**
**against Manufacturers of Cathode Ray Tubes for Televisions**
(Tentative Translation)

October 7, 2009

Japan Fair Trade Commission

The Japan Fair Trade Commission (hereinafter "JFTC") investigated entrepreneurs manufacturing and selling the cathode ray tubes for televisions in accordance with the provisions of the Antimonopoly Act   (hereinafter "AMA"), and found that they had engaged in activities that violate Article 3 (prohibition of unreasonable restraint of trade) of the AMA. Accordingly, the JFTC today issued a cease and desist order pursuant to the provision of Paragraph 2, Article 7 of the AMA and surcharge payment orders pursuant to the provision of Paragraph 1, Article 7-2 of the AMA as shown below.

The JFTC commenced its investigations almost simultaneously with foreign competition authorities including the United States Department of Justice and the European Commission in November 2007.

1   The numbers of entrepreneurs involved in the violation, entrepreneurs subject to the cease and desist order and to the surcharge payment orders, and the amount of surcharge (See also the appendix);

| Number of entrepreneurs involved in violation | Number of entrepreneurs subject to the cease and desist order | Number of entrepreneurs subject to the surcharge payment orders | Total amount of the surcharge |
|---|---|---|---|
| 11 | 2 | 5[Note 1] | 3,322,240,000 yen |

(Note 1) In addition to the said five entrepreneurs, the JFTC is in the progress to give one foreign entrepreneur who is to be the addressee of another surcharge payment order an opportunity to express its opinions and to submit evidences concerning content of the surcharge payment order in accordance with the provision of Paragraph 6, Article 50 and Paragraph 5, Article 49 of the AMA.

2   Outline of the violation

Regarding cathode ray tubes for televisions which   Japanese manufacturing and sales companies of CRT televisions[Note 2]   have their overseas manufacturing subsidiaries and the like[Note 3] (hereinafter "**Overseas Manufacturing Subsidiaries and the Like**") purchase[Note 4]

(hereinafter the "**Specified CRTs**"), the eleven entrepreneurs listed in the appendix, no later than around May 22, 2003[(Note 5)], formed an agreement to continuously hold CPT meetings[(Note 6)] about once every other month where they jointly set minimum target prices and the like, on an approximately quarterly basis, that each of them should abide by and that should be applied to the selling prices for Overseas Manufacturing Subsidiaries and the Like for the following quarter, and thereby, substantially restrained competition in the field of sales of the Specified CRTs.

(Note 2) The term "Japanese manufacturing and sales companies of CRT televisions" means Orion Electric Co., LTD., SANYO Electric Co., Ltd., Sharp Corporation, Victor Company of Japan, Limited and FUNAI ELECTRIC CO., LTD. each of which engages in the business of manufacturing and selling cathode ray tube televisions.

(Note 3) The term "Overseas Manufacturing Subsidiaries and the Like" means manufacturing subsidiaries or manufacturing subcontractors on contract located in the Southeast Asian Region which are substantial production bases of the Japanese manufacturing and sales companies of CRT televisions.

(Note 4) The term "Specified CRTs" means cathode ray tubes for televisions listed below:
   1. 14-inch round cathode ray tube;
   2. 20-inch round cathode ray tube;
   3. 21-inch round cathode ray tube;
   4. 21-inch flat cathode ray tube under the name Invar; and
   5. 21-inch flat cathode ray tube under the name AK.

(Note 5) MT Picture Display (Malaysia) Sdn. Bhd. joined in the agreement no later than February 16, 2004 and MT Picture Display (Thailand) Co., Ltd. joined in it no later than April 23, 2004.

(Note 6) The term "CPT meeting" means meetings of sales personnel of the entrepreneurs manufacturing and selling the Specified CRTs including department managers or section chiefs or equivalent personnel responsible for sales or marketing activities of Samsung SDI Co., Ltd., LG Philips Displays Korea Co., Ltd., and MT Picture Display Co., Ltd..

3   Outline of the cease-and-desist order

 (1)   MT Picture Display Co., Ltd. and Samsung SDI Co., Ltd. must respectively pass a resolution on the following items by their authorized decision-making bodies on execution of business such as the board of directors:

   a. to confirm termination of the agreement as noted in 2 above; and

   b. to ensure that they will, neither mutually nor jointly with any other entrepreneurs, determine the selling prices of the Specified CRTs for Overseas Manufacturing Subsidiaries and the Like, and that each of them will determine such prices individually.

 (2)   Each of the two entrepreneurs must notify the measure taken in accordance with (1) above to the other entrepreneur and to the Japanese manufacturing and sales companies of CRT televisions, and ensure that the action is made known to and implemented by its employees.

    In addition, Samsung SDI Co., Ltd. must notify the measure taken in accordance with (1) above to Samsung SDI (Malaysia) BERHAD.

 (3) The two entrepreneurs must in the future, neither mutually nor jointly with any other entrepreneurs, determine the selling prices of the Specified CRTs for Overseas

Manufacturing Subsidiaries and the Like.

4    Outline of the surcharge payment order

MT Picture Display (Malaysia) Sdn. Bhd., PT. MT Picture Display Indonesia, MT Picture Display (Thailand) Co., Ltd., Samsung SDI (Malaysia) BERHAD, and LG Philips Displays Korea Co., Ltd. shall pay the respective amounts of surcharge by January 8, 2010, described in the appendix (the total amount reaches 3,322,240,000 yen).

Appendix

| No. | Name of entrepreneur | Location of principal office | Representative | Cease and desist order | Surcharge payment order |
|---|---|---|---|---|---|
| 1 | MT Picture Display Co., Ltd. | 1-15, Matsuo-cho, Kadoma-shi, Osaka | Tatsuo Tobinaga | ○ | |
| 2 | MT Picture Display (Malaysia) Sdn. Bhd. (Note 4) | Wisma Goshen, 2nd Floor 60, 62 & 64 Jalan SS 22/21 Damansara Jaya 47400 Petaling Jaya Selangor, Malaysia | Yue Sau Yin | | 650,830,000 yen |
| 3 | PT. MT Picture Display Indonesia(Note 5) | Kawasan EJIP Industrial Park Plot 3-G, Desa Sukaresmi, Kecamatan Cikarang Selatan, Kabupaten Bekasi, Republic of Indonesia | Yoshitaka Yagaki | | 580,270,000 yen |
| 4 | MT Picture Display (Thailand) Co., Ltd. (Note 6) | No. 142, Village No. 5, Bang Kadi Industrial Park, Tiwanon Road, Bang Kadi Sub-district, Muang Pathum Thani District, Pathum Thani Province, Kingdom of Thailand | Ravita Thisarn | | 566,140,000 yen |
| 5 | Samsung SDI Co., Ltd. | 673-7 Maetan-dong, Youngtong-gu, Suwon, Kyunggi-do, Republic of Korea | Kim Soontaek | ○ | |
| 6 | Samsung SDI (Malaysia) BERHAD | 635 & 660, Kawasan Perindustrian, Tuanku Jaafar, 71450 Sungai Gadut, Negeri Sembilan Darul Khusus, Malaysia | Cho Dae-Hyoung | | 1,373,620,000 yen |
| 7 | LG Philips Displays Korea Co., Ltd. (Note 7) | 184 Gongdan-Dong, Gumi-City, Kyungbuk, Republic of Korea | Kwon, Soo-Kun | | 151,380,000 yen |
| 8 | P.T. LP Displays Indonesia | Kawasan Industri MM2100 Block G Cibitung, Bekasi 17520 West Jawa, Republic of Indonesia | Park Ju Tae | | (Note 9) |
| 9 | Chunghwa Picture Tubes Co. Ltd. | No. 1127, Ho Ping Road, Ba De City, Taoyuan County, Taiwan, Republic of China | Wei-Shan Lin | | |
| 10 | Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. | 10th Floor, Wisma Havela Thakardas, No. 1, Jalan Tiong Nam, Off Jalan Raja Laut, 50350 Kuala Lumpur, Malaysia | Chuang-Yee Chiu | | |
| 11 | Thai CRT Co. Ltd(Note 8) | 87/9 Moo 2, Sukhapiban 7 Road, Tambon Thungsukala, Amphor Sriracha, Chonburi, Kingdom of Thailand | | | |
| | Total | | | 2 entrepreneurs | 3,322,240,000 yen |

(Note 1)   In this appendix, No.1 is the parent entrepreneur of No.2, 3, and 4; No.5 is the parent entrepreneur of No.6; and No.9 is the parent entrepreneur of No.10. The parent entrepreneurs issued instructions and took control of the business of manufacturing and selling cathode ray tubes for televisions operated by their subsidiaries. No.7 is not a parent entrepreneur of No.8, but issued instructions to No.8 regarding the sales prices of the Specified CRTs.

(Note 2)   The entrepreneurs indicated with a circle "○" are the addressees of the cease-and-desist order.

(Note 3)   The entrepreneurs indicated with a hyphen "   " committed the violation but are not the addressees of the cease and desist order or the surcharge payment order.

(Note 4)   MT Picture Display (Malaysia) Sdn. Bhd. passed a resolution of dissolution on October 8, 2007. Its liquidation proceedings have been commenced on the same date and it has closed down its whole business activities.

(Note 5)   PT. MT Picture Display Indonesia discontinued its operation on September 28, 2007. Its liquidation proceedings have been commenced on the same date and it has closed down its whole business activities.

(Note 6)   MT Picture Display (Thailand) Co., Ltd. passed a resolution of dissolution on May 13, 2009. Its liquidation proceedings have been commenced on the same date and it has closed down its whole business activities.

(Note 7)   LG Philips Displays Korea Co., Ltd. transferred its business of manufacturing and selling cathode ray tubes for televisions to Meridian Solar & Display Co., Ltd. having its principal office at Seoul Special City, Republic of Korea on July 21, 2009.

(Note 8)   Thai CRT Co. Ltd passed a resolution of dissolution on June 29, 2007 and closed down its whole business activities, and later ceased to exist.

(Note 9)   The JFTC is in the progress to give an opportunity for the entrepreneur to express its opinions and to submit evidences concerning content of the surcharge payment order in accordance with the provision of Paragraph 6, Article 50 and Paragraph 3 and 5, Article 49of the AMA.

Attached sheet (amendment)

The JFTC today received letters from Samsung SDI Co., Ltd. and Samsung SDI (Malaysia) BERHAD which notify that each of the two entrepreneurs dismissed all their agents in Japan as of October 5, 2009. As a result of the dismissal, as for the two entrepreneurs, the JFTC has not been able to serve the orders through those agents in Japan.

# EXHIBIT 12



# KOREA FAIR TRADE COMMISSION

**KFTC Fines 5 Color Display Tube Producers   26.2 Billion Won for CDT International Cartel**

January 27, 2011

The Korea Fair Trade Commission (hereinafter "KFTC") imposed a total surcharge of 26,271million won (about USD 23.5million) on 5 color display tube (hereinafter "CDT") manufacturers* for violating the Monopoly Regulation and Fair Trade Act (Article 19). The KFTC found that 5 CDT manufacturers agreed to fix prices and reduce output of CDTs, and implemented the agreement for almost 10 years from November 1996 to March 2006.

* Samsung SDI Co. Ltd., LG Philips Display Korea Co., Ltd., Chunghwa Picture Tubes, Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., CPTF Optronics Co., Ltd.

**<The case>**

The KFTC found that the cartel conspiracies for CDT seriously affected the Korean market.

The conspiracies regulated by the KFTC in this case are as follows:

The CDT producers agreed on fixing prices and reducing output of CDTs in the secret meetings which took place in various countries including Korea, Taiwan,  and Malaysia at least once a month for almost 10 years from November 1996 to March 2006.

In addition they agreed on fixing prices of CDTs by size and client and curtailing production by reducing operating days and shutting down CDT production lines. And the CDT manufacturers exchanged confidential business information such as CDT sales, production, market share to fulfill and monitor the implementation of their agreements. Especially, they conducted cross-inspections of factories each other to monitor and enforce the output-curtailing agreement.

**<Fines>**

In setting the surcharges, the Commission took into account various factors including the respective affected sales of the companies involved, the serious nature of the infringement and the current status of the CDT industry.

The surcharges imposed for CDT cartel are as follows:

| Company Name | Location | Surcharge (Million WON) |
|---|---|---|
| Samsung SDI Co. Ltd | Korea | 24,013 |
| LG Philips Display Korea Co., Ltd. | Korea | 0 |
| Chunghwa Picture Tubes, Ltd. | Taiwan | 2,198 |
| Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. | Malaysia | 32 |
| CPTF Optronics Co., Ltd. | China | 28 |

\* LG Philips Display Korea Co., Ltd. was exempted from paying the surcharge, because it cannot afford the surcharge. It closed its business in June 2009 by transferring entire business lines including CDT sector to another corporation.

\*\* The amount of surcharges may vary considering many factors including the reduction for the leniency applicants.

**<Background>**

Today's KFTC decision is the result of a joint investigation with foreign competition authorities including the United States Department of Justice and the European Commission in November 2007. The KFTC investigation into the case was initiated by a leniency application.

The Commission is fully committed to pursuing those who conspired to harm Korean businesses and consumers. Anyone with information concerning any international price fixing or other illegal collusive behavior is urged to contact the International Cartel Division at +82-2-2023-4474.