# EXHIBIT 13
## [Part 1]


consortra
translations

STATE of NEW YORK       )
                        )                    ss:
COUNTY of NEW YORK      )

### *CERTIFICATE OF ACCURACY*

This is to certify that the attached document, *"KFTC decision"*, originally written in *Korean* is, to the best of our knowledge and belief, a true, accurate, and complete translation into *English*.

Dated: August 23, 2013

Seth Wargo
Consortra Translations

Sworn to and signed before ME this
22ᴺᴰ day of August,
2013.

Notary Public

JAMES G MAMERA
Notary Public, State of New York
No. 01MA6157195
Qualified in New York County
Commission Expires Dec. 4, 2014

Your
legal
translation
partner

Fair Trade Commission

Multi-party Meeting

Decision no. 2011-019                      March 10, 2011

Case number: 2010*Gukka*2364

Case name: Wrongful joint actions by the 5 computer color monitor CDT manufacturers

Defendants: 1. Samsung SDI
  428-5 Gongse-dong, Giheung-gu, Yongin-si
  Representative Director: ○ ○ Choi
  Agent: Shin & Kim
  Attorneys at law: Jung Won Park, Min Ho Lee, Oh Tae Kwon
  Agent: Apex Law Firm
  Attorney at law: Jung Hee Kang

  2. LG Philips Display
  184 Gongdan 1-dong, Gumi-si
  (Delivery address: Kyungbuk Samil Law Firm 34-3 Songjeong-dong, Gumi-si)
  Temporary Representative Director: ○ ○ Kim

  3. Chunghwa Picture Tubes, Ltd.
   No. 1127 Heping Rd. Bade City, Taoyuan, 334, China (Taiwan)
   Representative Director: Lin Wei Shan

  4. Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.

Exhibit
630-EF

Lot 1 Subang Hi-Tech Industrial Park Batu Tiga 40000 Shah Selangor, Malaysia
Representative Director: Kuang-Lang Chen

5. CPTF Optronics Co., Ltd.
No. 1 Xin Ye Road, Mawai Hi-Tech Development Zone, Fuzhou, China
Representative Director: Sheng-Chang Lin
The agent for the defendants 3 through 5: Yoon & Yang
Attorneys at law: Ho Il Yoon, Jae Yung Kim, Dong Young Han

Text

1. The defendant Samsung SDI, the defendant Chunghwa Picture Tubes, Ltd., the defendant Chunghwa Picture Tubes (Malaysia) Sdn. Bhd, and the defendant CPTF Optronics Co., Ltd. should pay the following fines to the government coffers.

A. Penalties

| | |
|---|---|
| (1) Defendant Samsung SDI: | 24,013,000,000 won |
| (2) Defendant Chunghwa Picture Tubes, Ltd.: | 2,198,000,000 won |
| (3) Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.: | 32,000,000 won |
| (4) CPTF Optronics Co., Ltd.: | 28,000,000 won |

B. Payment due date: Within the due date indicated in the penalty notification (60 days)

C. Place of payment: The Bank of Korea (Treasury Collecting Agency) or post office

The Reasons

1. The basic facts

A. The eligibility of the defendants

1       The defendant Samsung SDI Co., Ltd. (hereinafter referred to as "Samsung SDI" or "Samsung Display Devices[1]"), the defendant LG Philips Display (hereinafter referred to as "LPD"[2]), the defendant Chunghwa Pictures Limited (hereinafter referred to as "Chunghwa Pictures"), the defendant Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. (hereinafter referred to as "Chunghwa Pictures Malaysia"), and the defendant CPTF Optronics Company Limited (hereinafter referred to as "Chunghwa Pictures Tubes Fuzhou") produces and markets CDT (color display tube)[3] products, which are color monitor display tubes for computers and are companies as defined under Article 2.1 of the Law on the Regulation of Trusts and on Fair Transactions (revised to Law No. 7492 on April 1, 2006, hereinafter referred to as the "Law").

2       The defendant Samsung SDI and the defendant LPD are domestic companies who were established according to the laws of the Republic of Korea and whose principal offices are located in the Republic of Korea.  The defendant Chunghwa Picture Tubes which was established according to the laws of the Republic of China (Taiwan) and whose principal office is located in Taiwan, Chunghwa Picture Tubes Malaysia which was established according to the laws of Malaysia and whose principal office is located in Malaysia, and Chunghwa Picture Tubes Fuzhou which was established according to the laws of the People's Republic of China and whose principal office is located in the People's Republic of China, are foreign companies which were each established according to the laws of their respective countries and whose principal places of business are located in their respective countries.

3       In regard to the jurisdiction over foreign companies and in regard to their status as defendants, Article 2.1 of the Law merely states that "a business entity carries out manufacturing, service, or other business activities," not limiting the business entities that are subject to the Law to domestic companies.  Furthermore, Article 19.1 of the Law stipulates that the subject of violation is a "business entity," and doesn't limit such business entities to domestic companies.  Furthermore, according to Article 2.2 of the Law, "the Law applies to those actions that impact the domestic market regardless of whether such actions were carried out overseas."

---

[1] The defendant Samsung SDI was established as Samsung NEC in 1970.  In 1974, the company changed its name to Samsung Display Devices Industrial Inc.  In 1984, the company changed its name again to Samsung Display Devices Inc.  In November of 1999, the company changed its name to Samsung SDI.
[2] On March 30, 2010, the Kimchun branch of Daegu District Court appointed Mr. Kim, an attorney at law at Kyungbuk Samil, as the temporary representative director.  As a result, the address "Law firm Kyungbuk Samil 34-3 Songjung-dong, Gumi City" was included was included as one of the addresses to send documents related to this case.
[3] The term cathode ray tube (CRT), also known as the Braun tube, refers to both the computer color monitor CDT (color display tube) and the TV color monitor CPT (color picture tube).

4       Therefore, despite of the fact that some of the defendants that manufacture and market CDT products, which are cathode ray tubes for computer color monitors, were established according to the laws of foreign countries and have principal offices in foreign countries, the jurisdiction of the Law is acknowledged over foreign companies to the extent of the impact on the domestic market caused by any joint actions carried out with other companies overseas, so the Law applies accordingly.

5       Therefore, as can be seen in 3. A below, the defendants, which carried out wrongful joint actions such as setting the sales prices of the CDT products which are computer color monitor cathode ray tubes, from November 23, 1996 to March 14, 2006, allocating the market shares, and limiting the production volumes (hereinafter referred to as the "joint actions in this case"), thereby impacting the domestic market, are subject to the application of the Law in accordance with the stipulations of Article 2.1 and Article 2.2 of the Law.

B. The corporate structures of the defendants[4] and other relevant information

1) Chunghwa Picture Tubes Group

6       The defendant Chunghwa Picture Tubes[5] is the parent company of the Chunghwa Picture Tubes Group and the headquarters office is located in Taoyuan, Taiwan.   18.1% of the shares of the defendant Chunghwa Picture Tubes are owned by Chunghwa Electronics Investment Co (18.1%), 12.8% are owned by Tatung Company, and the rest are owned by the general public.  During the joint action period, the defendant Chunghwa Picture Tubes marketed CDT products and parts to the whole world, but currently the company produces and markets TFT-LCD panels and related parts.

---

[4] Although Orion Electronics Co., Ltd. (hereinafter referred to only as "Orion") participated in the joint actions related to this case, the liquidation process started in July of 2003.  After the company was dissolved on October 31, 2005, the dissolution registration was completed.  Due to the fact that the statute of limitations expired, the company was excluded in the defendant list of this case.  Both LG Electronics and Philips engaged in the CRT business before transferring their respective businesses to LPD.  However, after transferring the CRT business to the defendant LPD on June 30, 2016 and July 1, 2001, respectively, these companies are no longer engaged in the CRT business, which is related to the joint actions in this case.  Furthermore, neither of the companies has directly or indirectly dominated or participated in the decision making processes related to the pricing and production volume of LPD.  On top of that, the statute of limitations for the actions taken by LG Electronics prior to June 30, 2001 and the actions taken by Philips prior to July 1, 2001 has expired.  As a result, these two companies have been excluded from the defendant list.

[5] Hereinafter in this document, the term "Chunghwa Picture Tubes" refers to the corporate group that includes the "Chunghwa Picture Tubes" headquarters, "Chunghwa Picture Tubes Malaysia," and "Chunghwa Picture Tubes Fuzhou" unless the term "Chunghwa Picture Tubes" is specifically used to refer only to the headquarters office to the exclusion of the defendant Chunghwa Picture Tubes Malaysia and the defendant Chunghwa Picture Tubes Fuzhou.  First, the directors and employees of the defendant Chunghwa Picture Tubes participated directly with the employees of the subsidiary companies in the cartel meetings to reach agreements or directed the subsidiary companies to carry out the agreements.  Second, as we can see in the statement of Jason Liu in the attachment of the review report of this case dated May 14, 2008 (refer to page 267), due to the transfer of personnel within the Chunghwa Picture Tubes Group, the same people carried out the joint actions in this case on behalf of both the parent company and the subsidiary companies, reporting to both the Chunghwa Picture Tubes headquarters and other subsidiary companies.  Third, in agreeing on the market shares during the joint action period of this case, other defendants regarded the Chunghwa Picture Tubes group as a single entity.

7        During the joint action period, the defendant Chunghwa Picture Tubes produced and marketed CDT products directly or through its subsidiary companies Chunghwa Picture Tubes Malaysia and Chunghwa Picture Tubes Fuzhou.  The defendant Chunghwa Picture Tubes Malaysia is a wholly-owned subsidiary of Chunghwa PT (Bermuda) Ltd., which is in turn wholly owned by the defendant Chunghwa Picture Tubes, and produced CDT products until 2003.  The defendant Chunghwa Picture Tubes Fuzhou is also wholly owned by Chunghwa Picture Tubes through Chunghwa PT (Labuan) Ltd. and Chunghwa PT (Bermuda) Ltd.[6]

2) Samsung SDI

8        The defendant Samsung SDI was established as Samsung NEC Co., Ltd. in 1970.  In 1974, the company changed its trade name to Samsung Display Devices Industrial Inc. and started to produce semiconductors.  In 1979, the company was listed in the Korean stock exchange.  In 1984, the company changed its trade name to Samsung Display Devices Inc. In November of 1999, the company again changed its trade name to Samsung SDI Co., Ltd.  The largest shareholder of Samsung SDI is Samsung Electronics Co., Ltd.,[7] which owns 19.68% of the shares.  The rest of the shares are owned by the general public.  The company currently produces such products as PDP's (plasma display panels), secondary batteries, and OLED's (organic lighting diodes).  During the joint action period of this case, Samsung SDI manufactured CDT products in its factory located in Suwon, Korea and in its factory located in Busan, Korea, marketing the CDT products to such domestic customers as Samsung Electronics, Daewoo Electronics, Hansol Electronics, Hyundai Electronics, and LG Electronics.  However, the Suwon factory closed in 2006 and the Busan factory closed in 2007.  Currently, the company doesn't produce CDT products anymore.

---

[6]

| Chunghwa Picture Tubes, Ltd. | | |
|---|---|---|

41.03% ↓                          ↓ 100%

| Chunghwa PT (Labuan) Ltd. | 58.97% | Chunghwa PT (Bermuda) Ltd. |
|---|---|---|

10.61% ↓          78.20% ↓          ↓ 100%

| Chunghwa Picture Tubes Fuzhou | | Chunghwa Picture Tubes Malaysia |
|---|---|---|

[7] Hereinafter, the term "co. ltd." will be omitted when referring to companies.

3) LPD

9        LPD was established by LPD Holdings (LG Philips Displays Holdings B.V.), which is a holding company established in Eindhoven, the Netherlands, as a joint venture created when LG Electronics and Philips Electronics (Kninklijke Philips Electronics N.V.) transferred their CRT business units.  Since its founding, the company has been under the control of LPD Holdings.  LG Electronics transferred its CRT business unit to LPD on June 30, 2001 and Philips Electronics (Kninklijke Philips Electronics N.V.) transferred its CRT business unit to LPD on July 1, 2001.  Specifically, LPD Holdings, which was invested equally by LG Electronics and Philips Electronics, is the sole owner of LPD Investment (LG Philips Displays Investment B.V.).  LPD Sittard (LG Philips Displays Sittard B.V.) and LPD Stadskanaal (LG Philips Displays Stadskanaal B.V.) each own 50% of the shares of LPD.

10       LPD produced CDT's in the Gumi factory and in Changwon factory, which are all located in Korea, and sold these products to such customers as LG Electronics, Samsung Electronics, and Hansol Electronics.  In January of 2006, LPD Holdings started bankruptcy proceedings at a court in the Netherlands and is in the middle of a liquidation process.  LPD transferred its CRT production and marketing facilities to Merdian Solar & Display Co., Ltd, which is wholly owned by MGA Holding Corporation Limited, a company located in Hong Kong, and closed business on December 10, 2009. Currently, the company is not engaged in any specific business activities.

4) The financial information of the defendants

The financial related to the defendants is as shown in Table 1 below.

<Table 1>                      General information of the defendants

(1 million won, as of 2009)

| Classification | Chunghwa Picture Tubes | Chunghwa Picture Tubes Malaysia | Chunghwa Picture Tubes Fuzhou | Samsung SDI | LPD ('08)[8] |
|---|---|---|---|---|---|
| Capital | 5,954,641 | 263,632 | 330,001 | 240,681 | △584,125 |
| Sales | 1,745,415 | 174,831 | 150,145 | 3,550,584 | 422,965 |
| Ordinary income | △385,096 | △44,327 | △169,298 | 231,141 | 59,130 |
| Operating profit | △1,068,534 | △21,206 | △39,880 | 88,229 | 6,199 |
| Net income | △373,170 | △44,291 | △69,221 | 217,992 | △262,508 |

* Source: Information submitted by the defendants and data from the electronic disclosure system of the Financial Supervisory Service

2. The Market Structure and the Market Situation

A. The related products

11      The CRT (cathode ray tube) is generally known as "Brawn tube" in Korean.  The CRT is a vacuum tube which displays videos, diagrams, or texts with electronic beams and is used in color TV's and computer monitors.  The CRT is a core display component which had been used widely before such flat panel displays as LCD's or PDP's became widespread.

12      The CRT is classified into the CDT or CPT depending on the usage.  The CDT (color display tube) under this case is used in color monitors for computers and the CPT (color picture tube) is used in color monitors for TV's.  The two products are different in the following ways;

13      First, in terms of product characteristics, the CDT is designed for the purpose of displaying mainly texts or still pictures.  So, the CDT is excellent in terms of resolution and contrast, but is relatively inferior in terms of brightness.  On the other hand, the CPT is excellent in terms of brightness because it is required to display moving pictures on TV, but is relatively inferior in terms of resolution and contrast.  Due to such technological characteristics, the CDT and the CPT are not compatible.  The product size is indicated in inches (").  The CDT sizes are standardized at 14", 15", 17", and 19".  On the other hand, due to the fact that there are various performance criteria and designs for TV's depending on the manufacturer, the CPT sizes are very diverse, ranging from 6" to 36".

---

[8] LPD transferred its CRT business to another company on June 8, 2009 and is not engaged in any business activities.  As a result, the 2008 data is provided here.

14      Also, depending on the curvature of the product surface, the CPT is classified into flat screen or curved screen.  Although the flat screen is superior for displaying videos, the price is high.  Also, the lower the reflection rate of the CRT, more advanced technology is required, so the price is higher.  Also, depending on whether the deflection yoke (DY)[9] is attached or not, the CRT is classified into bare tube or integrated tube component (ITC).  Due to the fact that some CRT customers wanted to purchase bare tubes onto which they can attach their own deflection yokes, the defendants produced and marketed two types of products.

<Diagram 1>                                    The CRT Structure



<Diagram 2>                                    CRT Classification

| Classification | CDT | CPT |
|---|---|---|
| Major use | Computer monitors | TV monitors |
| Structure | Dots applied (mask structure) | Stripes applied (mask structure) |
| Difference | • A spherical fluorescent substance is used to improve resolution<br>• Documents or diagrams are viewed up close<br>• The fluorescent substances are arranged so that the distance between the fluorescent substances is consistent in any direction | • For brightness, the fluorescent substance is formed vertically to use the fluorescent substance area broadly<br>• Moving pictures are viewed from a few meters away<br>• The short afterglow fluorescent substance is used |
| Characteristics | • Because the dot hole is small, resolution is high<br>• Brightness is low due to the large area being lighted<br>• There are afterglows | • Because the dot hole is broad, the resolution is low<br>• Because the lighting area is broad, brightness is high<br>• There are no afterglows |
| Size | 12"~28" | 6"~36" |

* Source: KIS Credit Information Service Industry Report (CRT), February 21, 2007

B. The general characteristics of the CRT industry

---

[9] This is the most important component of the CRT magnetic device.  In order for the electronic signals transmitted as time series to be reproduced as video on the CRT, the electronic beams fired from the electronic gun should be two-dimensionally deflected.  The device that is used here is the deflection yoke.

15      Due to the fact that the CRT is a core component of home TV's and computer monitors, the demand for the CRT is sensitive to the demands for these products.  Actually, the demand for the CPT increases in even years when such international sports events as the Olympic Games and World Cup are held and the demand for the CDT increases during the school opening season.  Due to the fact that the CRT is standardized, mass production is feasible.  However, due to the requirement of large capital, production is carried out mainly by large corporations which have the necessary capital.  Due to the fact that the strategic relationship with parts manufacturers is important for the industry, most CRT makers are vertically integrated with electronics producers and computer producers.

C. Changes in the CDT market situation

16      In the 2000's, the global CRT market has decreased in size with the growth of the flat panel display products such as the LCD, PDP, and OLED.  With the growth in the notebook PC market, the demand for LCD monitors has accelerated, resulting in the rapid decrease in the CDT market.  Furthermore, with the digitalization of broadcasting companies, the CRT TV sales decreased, especially in the advanced countries.  In 1999, the CDT held 84% market share of the global computer monitor market.  However, in 2004, the market share decreased to 40%.  In 2003, the CPT held 95% of the global TV market.  However, in 2006, the market share decreased to 75%.[10]  However, due to the fact that it is possible to produce completely flat CRT's and that the high resolution technology became available, slim CRT TV's were launched.  As a result the demand for low-end models such as premium CRT products is still present in the emerging countries such as Southeast Asian countries, Eastern Europe countries, and China where the diffusion level for PC's and TV's is low.

<Diagram 2>                    Changes in the Sales of the Global CDT Monitors        (10,000 units)

---

[10] Source: Display market research company iSuppli, Display Search report (December 19, 2006)



* Source: Display Search 3Q of 2007

17      With the rapid growth of the flat display industry (e.g. LCD) in recent years, the demand for the CDT, which is the subject of this case, resulted in the downward pressure on the CDT price.

<Diagram 3>                    <u>Changes in the CDT price</u>                    (in dollars)

| Classification | 2003 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|
| CDT price | 56.08 | 51.98 | 45.97 | 45.06 | 48.54 |

* Source: KIS Credit Information Service CRT Industry Report (February of 2008), Samsung SDI Business Report

<Diagram 3>                    Changes in the CDP Price (graph)



* Source: KIS Credit Information Service CRT Industry Report (February of 2008)

D. The competitive situation in the global CDT market and in the Korean CDT market

18      Starting in the 1980's, the global CDT industry had been led by the Japanese companies such as Matsushita, Hitachi, Sony, and Toshiba, but the Japanese companies started to stop producing the CDT's in the late 1990's and in the early 2000's.  As a result, the defendants of this case started to supply the CDT products in the global market and in the Korean market.

19      As illustrated in Diagram 4 below, the defendants of this case have been supplying 85% of the CDT's in the global CDT market after 2002.  Also, the domestic CDT cartel comprised of Samsung SDI, LPD (LG Electronics before July of 2001), and Orion (up until around 2003) has supplied at least 90% of the supplies in the Korean CDT market.

<Diagram 4>                              Global CDT market share by company

(%)

| Company\year | 2002 | 2003 | 2004 | 2005 |
|---|---|---|---|---|
| Samsung SDI | 33.5 | 39.0 | 42.0 | 43.8 |
| LPD | 28.1 | 30.7 | 32.1 | 32.2 |
| Chunghwa Picture Tubes | 22.9 | 23.6 | 22.1 | 22.8 |
| Subtotal | 84.5 | 93.3 | 96.2 | 98.8 |
| Others | 15.5 | 6.7 | 3.8 | 1.2 |
| Total | 100.0 | 100.0 | 100.0 | 100.0 |

* Source: Display Search, Stanford Resources Display Insight, Samsung SDI Business Report

20      The size of the global CDT market in 2002 was around 5 trillion won.  However, the market size has been reduced continuously, and as a result the market size in 2005 was reduced to 1.8 trillion won. The Korean market experienced a similar trend.  In 2000, the market size was 45 billion won, but the market size is estimated to have been reduced to around 50 billion won in 2005 due to such factors as the transfer of CDT monitor factories to other countries.

<Diagram 5>                    Global CDT Market Size and Korean CDT Market Size

(Million won)

| Year | Global CDT market size | Korean CDT market size |
|---|---|---|
| 2002 | 5,344,794 | 452,000 |
| 2003 | 3,948,489 | 154,000 |
| 2004 | 3,199,409 | 130,000 |
| 2005 | 1,866,766 | 49,892 |

* Source: Data submitted by the defendants

E. The distribution structure of the CDT

21      The CDT, which is the product related to which the joint actions were carried out, has the following distribution structure: Raw materials producers → CDT producers, who are the defendants in this case → Computer monitor producers, who are the customers of the defendants → PC producers → Final consumers.  Most monitor producers deliver monitors to specific PC producers as OEM producers. Most CDT producers are Asian companies such as Korean companies and Taiwanese companies.  Most Taiwanese monitor suppliers provide monitors to American PC manufacturers such as Dell and HP and overseas PC manufacturers as OEM producers.

22      During the joint action period in this case, the CDT customers were classified into 6 major customers and 6 minor customers.  The 6 major customers as jointly recognized by the cartel participants in this case were South Korea's Samsung Electronics, LG Electronics, Philips, Lite-On, AOC and EMC.  Also, the 6 minor customers were South Korea's Hyundai Electronics and Hansol Electronics, Ben-Q, Compal, Delta, Tatung.

23      Generally, computer monitor producers transact with multiple CDT manufacturers.  The first reason is to induce price competition among the CDT manufacturers by maintaining relationships with multiple suppliers because computer monitor producers want to purchase CDT's at the lowest possible prices.  Second, due to the fact that these products are technologically standardized, these products can be used in monitors after conducting sample tests over a period of time regardless of the manufacturer. Lastly, the CDT customers want to have secondary and tertiary suppliers ready to supply them with the CDT products to prepare for the spike in demand.   As a result, they maintain relationships with multiple CDT manufacturers.

F. Price determination

24      The defendants in this case did not have list prices.  Rather, the price and quantity of the CDT's were determined based on a case-by-case negotiation with each customer.  The negotiations took place on a monthly basis to determine the price and quantity.  However, in the event that there was any imbalance between the supply and demand, negotiations could take place many times in a given month at the request of the party with the bargaining power.

25      The price negotiation processes of the defendants in this case proceeded similarly.  First, before the price negotiation started, the sales and marketing directors of the headquarters office of each defendant group set up an internal target sales price based on the production capability, desired sales quantity, market price, and expected changes in the supply and demand situation.[11]

26      On the other hand, the price negotiation started when the customer provided the defendant with the purchase order (PO) which included the target price and the desired quantity.  Each of the defendants used the price guideline established through the above process when negotiating with the customer.  The final sales quantity and sales price were determined by taking into consideration the relationship with the customer, the inventory level, and the production plan.  At this time, the sales manager at the overseas subsidiary company discussed with the director at the headquarters office.  For major customers, volume discounts were sometimes applied.  On the other hand, the employees at the overseas subsidiary company sometimes had the power to determine the sales price for small-scale orders within the bounds of the price range preapproved by the final price decision maker at the headquarters office.

3. Wrongful Joint Actions

A. Actions

1) Summary of the joint actions in this case

27      The defendants in this case jointly set up the CDT sales price, allocated the CDT market share, and agreed on the limitation of production.  In order to smoothly carry out such agreements, the defendants periodically exchanged confidential sales information.  The joint actions in this case occurred at least from November 23, 1996 to March 14, 2006.  During this period, the defendants periodically held multi-party cartel meetings.  These meetings were referred to as "CDT glass meetings."  However, when the number of the companies in the cartel changed due to such occurrences as bankruptcies or joint ventures, these meetings were referred to as "5-party meetings" or "3-party meetings."

---

[11] During the routinely –held cartel meetings, the companies shared information regarding the above mentioned issues, jointly set the sales prices, and agreed to reduce production and set market shares.  When setting the sales prices and deciding on the production level, the defendants took the agreements into consideration.

28      During such meetings, the defendants exchanged such sensitive sales information as each company's production capacity, operation rate, production plans, sales prices, customer demands, and customer reactions.  Based on such information, the defendants allocated production quotas to meet the CDT market's demand, jointly set up the sales prices, and periodically agreed to reduce production in order to maximize each company's profit.  At each meeting, the companies checked whether other companies adhered to the agreements reached during the previous meeting.

29      On the other hand, the cartel meetings were held at different levels, from the top level meetings to the working level meetings.  Specifically, during the top level meetings, CEO's or high-level directors participated to confirm the need for cooperation among the companies in the industry and the overall principle of cooperation.  Right below the top level meetings were the management level meetings during which the senior sales directors participated in order to agree on the allocation of market shares and on production cutbacks.  Lastly, during the working level meetings in which the sales and marketing people participated, detailed market information was exchanged and whether the agreements reached at the management levels were carried out.  These cartel meetings were held in various Asian countries such as South Korea, Taiwan, Malaysia, Indonesia, Thailand, Hong Kong, China, and Japan, and in various European countries.

30      The types of agreements reached at the cartel meetings can be classified broadly into three categories.  First, the defendants agreed on the sales prices.  The means of agreement to the sales price were shown in the forms of joint setting of the sales price, the extent of increases (decreases) in the sales prices, and the minimum prices.  To carry out the above, the defendants exchanged information on the supply and demand in the CDT market, the customer reactions each company learned based on negotiations with the customers, and the price changes of the raw materials.  Furthermore, the defendants fixed target prices and agreed on the reasons for any price increases, even agreeing on which member company was to inform which customer on the reasons for the price increases.  The agreed prices could be adjusted by taking into consideration the differences in quality.  Sometimes, the price could be adjusted by reflecting the differences in product specifications.  Second, the defendants agreed on production reduction.  The defendants either agreed on the number of days production was to be stopped or jointly established a plan to close the production line.  Furthermore, in order to effectively carry out the production reduction agreement, each company designated auditors and agreed to allow these auditors to audit the production facilities.  Third, the defendants even agreed to allocate the market share for each customer.  The defendants agreed on the allocation of market share based on the sales volume of each company during the period prior to any given cartel meeting, thereby reducing competition and stabilizing the market shares.

31      Besides explicitly agreeing on the above, implicitly agreed upon or mutually recognized the following issues.  For example, the defendants hid evidences related to the agreements in order to maintain the cartel's discussions confidential.  Also, when disputes arose, the directors resolved the issues.  Furthermore, the defendants exchanged important information such as information pertaining to production, prices, and customer demands.  In the event that any agreement was not carried out, the company that failed to carry out the agreements was criticized or other companies implied the possibility of retaliation to prompt the member companies to carry out the agreements.  These implicit agreements were necessary for the explicit agreements to be carried out efficiently and these implicit agreements were reached as a matter of course as more cartel meetings were held.

   2) The agreements

   A) The basic principles and structure of the joint actions

   (1) The motivation for the formation of the cartel

32      The defendants started the bilateral contacts in 1995.  The companies that participated in the initial two-party meetings in the CDT industry's heyday exchanged CDT market information one on one.  Such information could have been acquired through market research companies or customer companies.  However, such information from competitors was more reliable.  Furthermore, as the exchange of information continued intermittently, the defendants ultimately started to jointly determine the sales quantity or sales price.

33      Specifically, during the multi-party meeting held on November 23, 1996 with the top level managers from Samsung Display Devices[12], Chunghwa Picture Tubes, and Orion present, the participants agreed on the basic principles of the cartel, namely "collectively reducing production in order to resolve the excess supply of the CDT's" and "refraining from reducing the prices which would lead to cut-throat competition."  From then on, the defendants started to share other companies' confidential sales information, thereby jointly determining the sales prices and the production volumes in order to maximize profit.

---

[12] The company name Samsung Display Devices is to be used when describing any actions carried out by the defendant before the company changed its name to Samsung SDI in November of 1999.

<Table 6> The statement of President OOO Jing of Chunghwa Picture Tubes made on May 14, 2008

| |
|---|
| Answer (1) I think that even if the information disclosed in the CDT multi-party meetings was not always accurate, such information helped all the participants.  The information obtained through the CDT multi-party meetings was each company's confidential sales information not disclosed in the marketplace.  I believed that such information allowed us to prevent the price from falling further, ensuring that we receive a higher price.<br><br>(Evidence *sogap* 1-1, page 275 of the review report) |

(2) The participants in the cartel meetings[13]

34      During the period in which the joint actions in this case were carried out, the participants in the cartel meetings from Chunghwa Picture Tubes Group were Representative Director C. Y. Lin, Vice-president C. C. Liu, S. J. Yang, Jason Liu, Tony Chien, Tony Cheng, Alex Ye, Michael Du, Christina Tsie, Edward Cheng, and Yvonne Ling-Yuan.  The participants from Samsung SDI were Representative Director Sohn, Vice-president Kim, Mr. Ra, Mr. Lee, Mr. Kim, Mr. Song, and so on.  The participants from LPD were Director Yang, Vice-president Choi, Mr. Park, Mr. Koh, Mr. Jeon, and so on.

(3) The structure of the cartel meetings

35      The cartel meetings in this case can be classified into the top level meetings which were held each quarter or semi-annually, the management level meetings which were held monthly, and the working level meetings which were held monthly as well.  The CEO's or CRT business unit heads participated in the top level meetings to reach high-level agreements.  During the management level meetings, the directors from each company participated in order to reach specific agreements on such areas as the market share and the reduction in production volume.

---

[13] Among the directors and employees belonging to the Chunghwa Picture tubes group, C. Y. Lien worked as the representative director of Chunghwa Picture tubes from 1983 to May of 2007, C. C. Liu worked as the sales and marketing vice-president of Chunghwa Picture Tubes from 2000 to 2005, S. J. Sheng worked as a senior VP of Chunghwa Picture tubes from 1997 to June of 2007, and Jason Liu worked as a sales manager of Chunghwa Picture Tubes Malaysia from September of 1994 to November of 1998, worked as a CDT sales manager of Chunghwa Picture Tubes Fuzhou from 1998 to November of 2001, worked as the vice-president of Chunghwa Picture Tubes in 2006, and worked as the president of Chunghwa Picture Tubes Fuzhou from July of 2006 to May of 2007.  Among the Samsung SDI directors and employees, Mr. Sohn worked as the representative director of Samsung Display Devices from January of 1996 to January of 1999 and Mr. Kim worked as a senior managing director (headquarters head) for Samsung Display Devices and Samsung SDI from February of 1998 to March of 2001, worked as the vice-president of Digital Display from March of 2001 to February of 2002, and worked as the vice-president of Samsung SDI from March of 2002 to February of 2003.  Among the directors and employees belonging to LPD, Mr. Yang worked as a registered director of LPD from February of 2002 to September 22 of 2006, and Mr. Choi worked as a CRT managing director from July of 2001 to January of 2003, and worked as the CPO vice-president from February of 2004 to January for 2006.

In the working level meetings, specific sales related information to be provided to the top level meetings or management level meetings was exchanged.  Furthermore, whether the agreements of the previous meetings had been carried out was checked during the working level meetings.  The above facts can be confirmed by a statement made by a participant in the cartel meetings.

<Table 7> The statement of General Manager Song of Samsung SDI made on June 18 and June 19 of 2009

Answer (2) The cartel meetings were broadly classified into the top meetings, management meetings, and working level meetings.
 First, in the top level meetings, the CDT sales heads (senior managing directors) participated and these meetings were to be held once per quarter in principle.  During these meetings, the issues that had been agreed on at the management level meetings were shared and the participants could grasp the CDT industry trend.  Below the top level meetings were the management level meetings participated by the sales team heads (managing directors).  These meetings played the most important part for the cartel.  These cartels were supposed to be held each month, in principle.  In many cases, these meetings were held along with the "green meetings" at hotels or resorts that had a golf course.  Below the management level meetings were the working level meetings.  The sales managers who worked in the Taiwan branch office of each company participated in such meetings.  These meetings were held each month and each company's office in the downtown Taipei was used as the meeting place.  The working level meetings were held 1 week prior to the management level meetings to support the management level meetings.

                                             (Evidence *sogap* 2-1, page 304 of the review report)

(4) How the cartel meetings were held

A company was designated as the "presiding company" over a period of from 6 months to 12 months.  The presiding company was responsible for such administrative tasks as selecting the meeting dates and places and making hotel and transportation reservations.  Also, the directors from the presiding company presided over the cartel meetings.  The meeting information was exchanged at the working level, and such information was provided mainly via emails or telephone.

<Table 8> The statement of President Jason Liu of Chunghwa Picture Tubes made on May 14, 2008

Answer (3) The company entrusted with the responsibility of acting as the presiding company was in charge of gathering the related information.  For example, when Samsung SDI was the presiding company in 2005, Samsung SDI gathered and edited such information for the most part.  Until March of 2006, Chunghwa Picture Tubes was the presiding company, so the company carried out such tasks.                              (Evidence *sogap* 1-1, page 275 of the review report)

<Table 9> The statement of General Manager Song of Samsung SDI made on June 18 and June 19 of 2009

> Answer (3) In contrast to the working level meetings which were conducted relatively freely, the management level meetings were conducted with prepared meeting materials.  In the management meetings, the participants took turns to act as the chairman.  In most cases, the chairman was responsible for making reservations for the meeting room, gold course, room and board, and transportation as well as for presiding over the meeting.
>
> (Evidence Sogap 2-1, page 307 of the review report)

37      The cartel meetings were conducted in English and the presentation materials used during the meetings were exchanged and confirmed by the sales and marketing people before being distributed.  The market information to be exchanged among the participants or issues to be agreed upon were either projected on the wall or prepared on a whiteboard by the chairman.  The participants confirmed the issues to be agreed on before reaching any agreement.

<Table 10> The statement of General Manager Song of Samsung SDI made on June 18 and June 19 of 2009

> Answer (2) For this, Yvonne of Chunghwa Picture Tubes provided a standardized excel spreadsheet to each of the participants and requested the participants to fill the new sales data after the previous meeting in the respective columns.  Yvonne then participated in the working level meeting, projecting the Excel data on the wall with a projector for the participants to confirm whether the agreed-upon market shares were being adhered to well, and if there were any discrepancies, explanations were provided and the participants discussed about future adjustments.
>
> Answer (5) There were no separate documents to verify that agreements were reached.  Discussions were carried out during the working level meetings.  Then, at the management level meeting participated by the sales team heads, the details of the agreements to be kept by the participating companies were discussed and confirmed and the participants expressed their agreements either explicitly or implicitly.
>
> (Evidence Sogap 2-1, page 306 and page 309 of the review report)

38      During the collusion period in this case, the cartel meetings proceeded in a set pattern.  First, when a meeting started, during the "market update" session, the member companies presented sensitive information such as information on the production volume, operational capability, sales volume, sales price, negotiations with their customers and so on.  Then, the member companies compared the global demand and supply to review whether the agreement to increase the price could be implemented effectively.  Afterwards, the member companies checked other member companies regarding whether the agreements of the previous meeting were being carried out properly.  After confirming with any companies that were being suspected of not carrying out the agreements based on the information from the customers or market, either the breaching companies promised to adhere to the agreements or actions were taken against the breaching companies.

<Table 11> Statement of General Manager Song of Samsung SDI made on June 18 and June 19 of 2009

> Answer 13) During the management level meeting, <u>the sales volume of each model for each company in that month was checked first.</u>  The next session was the "<u>M/S Review</u>" session, during which the companies checked whether the market shares which had been agreed at the beginning of the year were being adhered to properly.  The next session was the Line Control Plan or Lone <u>Shut-Down Schedule</u> session during which the companies discussed about whether CDT factories located across the globe either stopped or close production lines according to the plan.  Also, on several occasions during the meetings, the companies agreed on the standard price for each model. The major CDT monitors were 14 inch, 15 inch, 17 inch, and 19 inch models.  The companies agreed on the standard prices based on the major specifications of each model (e.g. coating, DY integration, mask materials, etc.)
>
> (Evidence Sogap 2-1, page 307 of the review report)

39    Also, in order to increase the price or minimize the price drop, the defendants allocated the market share for each company or agreed to reduce the production volume.  In order to match the supply artificially to the overall demand, the companies agreed to allocate the amount of supply to be reduced by each company and to allocate the sales volume for each major customer.  Furthermore, in order to ensure that the agreements would be carried out, the companies agreed on how to specifically audit the member companies.

<Table II> <u>Statement of General Manager Lee of Samsung SDI made on July 7 and July 8 of 2009</u>

> Answer 14) In order to maintain the sales prices at a certain level, the excess supply had to be resolved.  For this, <u>the companies agreed to jointly control the supply.</u>  So, during the early 2000's, <u>the companies submitted the monthly closing days to stop operation on specific number of days, to notify the designated personnel in other companies, and to allow these people to actually visit the companies to check whether the agreements were being implemented.</u>  I visited competitors' factors on line audits in the first half of 1999.  Also, I remember that the people from Chunghwa Picture Tubes and LPD visited our company.      (Evidence Sogap 2-2, page 308 of the review report)

40    Lastly, during the AOB (any other business) session, the participants decided on the next meeting's date and place before ending the meeting.

(5) Details of the agreements

41    During the cartel meetings, in order to avoid competition, the defendants allocated the global CDT market or market share for each customer.  Furthermore, the defendants agreed to reduce production volume in order to prevent the price from decreasing due to excess supply.  In addition, the defendants agreed on the measures of price fixing in order to carry out the above agreements effectively.  In the case of the sales price agreement, such specific agreements as prohibiting the sale of defective products, which could have an adverse effect on the market prices, and synchronizing the price increases were included.

42      Specifically, the "market share allocation" agreement comprised of such details as the allocation of the global CDT market share based on the sales volume in the previous year, the allocation of a market share for a specific customer, and the designation of a major supplier and a secondary supplier for each customer.  The "production volume reduction" agreement was comprised of the agreement on the number of operational days per month, the agreement to close production lines located across the globe, and the agreement on the audit system to directly confirm the production line stoppage in order to check whether the above agreements were being carried out.

<Table 12> <u>The statement of President Jason Liu of Chunghwa Picture Tubes made on May 14, 2008</u>

Answer 10) Broadly, agreements were made on the price, production, and market share.  First, regarding the price, <u>agreements on the price increases and on the minimum, floor, or bottom prices were made.</u>  Also, agreements were made on the sales prices to individual customers.  For instance, agreements on the specific prices to be offered to the 6 major customers by the primary suppliers were made.  In addition, agreements on the specific prices to be offered to the 6 major customers by the secondary suppliers were made.  Furthermore, agreements on the differences in price between the 6 major customers and small customers were made.  During the CDT cartel meetings, the companies determined which companies were to notify to the customers of any price increases and jointly determined the timing of any price increase and the reasons behind the price increase.

Also, <u>the companies agreed on the market shares.</u>  For instance, <u>the market shares of the global CDT market and the market shares of the participating companies for each major customer as well as the market shares for each major customer were agreed.</u>  During each meeting, the companies checked whether the agreements were adhered to.  The market shares were sometimes allocated to each company based on the global sales in the previous year or previous quarter.  Sometimes, market share were allocated to the companies for a particular customer.  The market shares were allocated based on the global market, so the meeting participants could effectively maintain the agreed prices.

Lastly, agreements were made on the <u>production volume.</u>  First, the global CDT demand was projected.  Then, in order to prevent the CDT prices from falling, each participating company was allocated production volume according to the projected demand.  The companies participating in the CDT meetings exchanged the monthly production stoppage plans before the start of each meeting.  <u>During the meeting, the number of stoppage days was decided for each company.</u>  Furthermore, as the CDT market was gradually decreasing, the multi-party glass meeting <u>participants agreed to close some of the production lines located across the globe voluntarily</u>.  The companies agreed to reduce production because it was not easy to determine whether price agreements were followed by the companies.  Sometimes, in order to check whether the production reduction agreements were being followed, the participating companies sent their employees to other companies to directly audit whether these companies stopped production or closed lines.

(Evidence Sogap 1-1, page 273 of the review report)

<Table 13> The statement of General Manager Lee of Samsung SDI made on July 7 and July 8 of 2009

Answer 19) Although the B products made up less than 1% of the total production, the companies agreed to "stop the sale of B products" <u>because these products had an adverse effect on the overall market prices.</u>  The companies agreed not to recognize any "buffer period" because if any buffer period was allowed for each customer after reaching an agreement on the price, those companies who carried out prices increases first could incur damages.  Therefore, it was agreed by the companies to immediately increase the price.   (Evidence Sogap 2-2, page 344 of the review report)

(6) Implementation of the agreements and sanctions against the breaching companies

43      For the purpose of limiting competition, the defendants in this case met periodically during the joint action period in order to agree on major issues such as the sales prices of the CDT products and the production volumes.

The implementation of the agreements was checked mutually in the following meeting.  Sometimes, some member companies provided information on the production volume and sales volume which was different from the actual information.  However, this was tantamount to presenting to other cartel participants that they were adhering to the agreements.  All the member companies disclosed whether they were adhering to the agreements based on the expectation that other member companies would carry out the agreements as well.  In conclusion, we can see that all the cartel members carried out their agreements as expected.

<Table 14> The statement of President Jason Liu of Chunghwa Picture Tubes made on May 14, 2008

Answer 11) I think that the sales prices and production volumes disclosed by the companies CDT glass meeting participants during the multi-party meetings were sometimes inaccurate prior to 2005.  In order to give the impression to other participants that that they were adhering to the agreements, the participants tended to disclose their sales prices a little higher than the actual prices and the production volumes or sales volumes a little lower than the actual production volumes or sales volumes, and as the meetings continued, the participants took this into consideration.  Chunghwa Picture Tubes sometimes knew that based on the customer information or information gathered from the market, the information disclosed by the companies participating in the glass meetings were inaccurate.  However, the multi-party participants disclosed more accurate information through discussions or arguments during the meetings and reconfirmed their intention to adhere to the agreements.  Sometimes, differences were narrowed through higher level meetings (i.e. top level meetings or management level meetings.

(Evidence Sogap 1-1, page 274 of the review report)

44      Also, the member companies took several measures in order to prevent cheating by the participating companies.  Regarding the agreement to fix the sales price, in order to simplify the implementation of the agreed-upon price, the price differences due to different specifications and the price differences due to the transaction conditions were taken into consideration.  Regarding the agreement to reduce production volume, auditors from each company could visit other companies' production facilities without prior notification to check whether the operation was being reduced as agreed.  Also, in the event that any company breached the market share allocation agreement, the participants declared to the breaching company that they would take back the market share against the breaching company's major customers in the same manner.  In most cases, the member company that was found out to have lowballed promised to prevent the reoccurrence.  Also, in the event that the annual market share allocation agreement was not carried out, the market shares of the breaching companies were deducted during the meeting to determine each company's market share in the following year.

(7) The cartel's areas of influence

45      The joint actions in this case had anticompetitive influences in all the areas where the CDT products were sold, either directly or indirectly.

The cartel in this case agreed on the target price by customer and by model, allocated market shares based on the total sales volume, allocated the sales volume of each producer for each customer, allocated major customers, and agreed on production reduction.  In case of Korea, it can be confirmed that the manufacturers of finished computer products such as Samsung Electronics, LG Electronics, Hyundai Electronics, and Hansol Electronics, etc who were the targets of the cartel existed within the country, that Samsung SDI, LPD, etc. were the major participants (Korean companies) to the cartel, and also that the cartel meetings were frequently held in Korea.

<Table 15> The statement of President Jason Liu of Chunghwa Picture Tubes made on May 14, 2008

| |
|---|
| Answer 15) The range of the CDT multi-party agreements was global.  In addition to the agreements, there were always discussions about the production volumes from the factories throughout the world including Korea and about the sales volumes.  Also, the corporations located in Korea, namely Samsung Electronics and LG Electronics were among the 6 major customers discussed during the CDT multi-party meetings.  Therefore, I think that Korean customers would have been influenced by the implementation of the agreements reached through the CDT multiparty meetings. |
| (Evidence Sogap 1-1, page 276 of the review report) |

(8) The principle of confidentiality

46      The defendants in this case endeavored to hide their collusion.  First, the meeting reports were titled as "Visitation Report," "Market Information Exchange," or "Return-from-abroad Trip Report" in order to keep the agreements with the competitors confidential.  Also, either "secret" or "confidential" was written on the defendants' cartel documents and meeting reports.  Furthermore, in order to ensure that the purpose of the collusion would not be disclosed outside, other meeting names were used or the meeting places were changed.

<Table 16> The statement of President Jason Liu of Chunghwa Picture Tubes made on May 14, 2008

| |
|---|
| Answer 22-1) Also, there were cases where the participants faced difficult situations in negotiating with customers when the discussion details sometimes leaked outside as the glass meetings progressed.  So, the companies discussed about how to keep the meetings and the agreements of the meetings confidential.  Also, I now believe that some of the participants were concerned about potential penalties related to the violation of the antitrust regulations.  Mr. Jerry Lin of Philips proposed to other companies not to prepare meeting logs and to limit the number of participants from each company to 2 to 3 people, and the participants agreed. |
| (Evidence Sogap 1-1, page 292 of the review report) |

<Table 17> The statement of General Manager Lee of Samsung SDI made on July 7 and July 8 of 2009

> Answer 5) ….   GSM stands for glass standardized meeting.  The participants used this term not only because the term didn't disclose the characteristics of the meetings but also because the name somewhat conformed to the meetings' purpose, which was to "standardize."  (Evidence Sogap 2-2, page 337 of the review report)

47      Also, even during cartel meetings, in order to ensure that no evidence would be left behind, the participants agreed not to leave any records pertaining to the discussions.  Furthermore, in order to ensure that only the minimum number of people would know the existence of such meetings, the companies agreed to limit the number of participants in a given meeting to 2 people from each company.

(9) The joint action period and the termination date

48      For the defendant Samsung SDI, the defendant Chunghwa Picture Tubes, the defendant Chunghwa Picture Tubes Malaysia, and the defendant Chunghwa Picture Tubes Fuzhou, the joint action period commenced on November 23, 1996.  For the defendant LPD, the starting date was June 30, 2001.

49      In the case of the defendant Samsung SDI, the defendant Chunghwa Picture Tubes, the defendant Chunghwa Picture Tubes Malaysia[14], and the defendant Chunghwa Picture Tubes Fuzhou, on November 23, 1996, the representative directors participated in the top level meeting.  Thereafter, for the next 10 years, the companies exchanged information on the production situation and future plans, agreed on production reduction, and agreed to refrain from lowering the sales prices at the CDT cartel meetings.  Therefore, November 23, 1996 should be regarded as the starting date of the violations for the defendant Samsung SDI, the defendant Chunghwa Picture Tubes, the defendant Chunghwa Picture Tubes Malaysia, and the defendant Chunghwa Picture Tubes Fuzhou.

50      The defendant LPD participated in the CDT cartel meeting for the first time on July 24, 2001 after being established on June 11, 2001.  However, the company was transferred the CRT business unit from LG Electronics on June 30, 2001 and the CRT business unit from Philips Electronics on July 1, 2001.  Since it should be acknowledged that the parent companies' intention to limit competition by participating in the wrongful joint actions was continued by LPD and the effects of the parent companies' prior actions can be attributed to LPD, June 30, 1001, which is the day on which the CRT business was transferred from LG Electronics, should be considered as the starting date of the violations.

---

[14] Although it is not clear whether the representatives from the defendant Chunghwa Picture Tubes participated in this meeting, as we reviewed in footnote 5), the directors and employees of Chunghwa Picture Tubes participated in the cartel meetings to reach agreements or directed the subsidiary companies to carry out the details of the agreements.  Furthermore, as we can see in the statement (refer to page 267) of Jason Liu dated May 14, 2008, which is an attachment to the review report of this case, due to the transfer of personnel within the Chunghwa Picture Tubes group, the same people worked for both the parent company and the subsidiary companies to carry out the joint actions in this case or reported to the Chunghwa Picture Tubes headquarters office and subsidiary companies related to the joint actions.  Therefore, even in the case of the defendant Chunghwa Picture Tubes Malaysia, November 23, 1996 should be regarded as the starting date of the joint actions in this case.

The defendants held discussions just on the Korean market at least 9 times in 1997, 19 times in 1998, 23 times in 1999, 9 times in 2000, 11 times in 2001, 9 times in 2002, 18 times in 2003, 19 times in 2004, and 12 times in 2005, continuing to hold cartel meetings through the years.

51      Due to the fact that it is not clear when the violations were no longer being perpetrated and that there is no evidence related to the agreements, the day on which the defendants held the last meeting, which is March 3, 2006, is regarded as the termination date of this case; as the CDT market was rapidly transitioning into the flat display panel market, the demand for the CDT's decreased substantially and the cartel meetings no longer existed afterwards.

3) The agreements and the specific details of the implementation

A) The agreements of the competitors prior to November 23, 1996

52      Even before November 23, 1996, when the joint actions in this case started, the competitors producing and marketing the CDT's exchanged the CDT market information through two-party meetings (Evidences Sogap 3-1 to Sogap 3-8).  During such meetings which started to be held from around September of 1995, Chunghwa Picture Tubes, LG Electronics, and Samsung Display Devices exchanged such information as each company's production situation, order situation, and sales prices.

53      Through such two-party meetings, the defendants could understand that by sharing their market information, they could increase profit by reducing uncertainties related to the future actions of the competitors and customers relative to participating in the market individually.  However, it is judged that the irregular two-party meetings held by the companies prior to November 23, 1996 did not reach the level where there's a meeting of minds to limit competition.

B) The meetings among the competitors in 1996

<Table 18>                     Summary of the CDT Cartel Meetings in 1996[15]

| Year | Date | Agreements | Participants (meeting level) | Evidences |
|------|------|-----------|------------------------------|-----------|
|      |      |           |                              |           |

---

[15] Hereinafter in the annual cartel meeting summaries, Chunghwa Picture Tubes is denoted as "Chunghwa," Samsung SDI ["Samsung Display Devices (SDD)" prior to November of 1999] is denoted as "SDI," LG Philips Display is denoted as "LPD," LG Electronics is denoted as "LG," Philips Electronics is denoted as "Philips," and Orion Electronics is denoted as "Orion."

| 1 | 11.23. 1996 | Production cutbacks, refraining from sales price decreases | Chunghwa, SDI, Orion (top level meeting) | Evidence Sogap 3-9, page 469 and page 471 of the review report |
|---|---|---|---|---|
| 2 | 11.25. 1996 | 14" floor price ($76) | Chunghwa, SDI, Hitachi | Evidence Sogap 3-10, Page 495 of the review report |
| 3 | 11.26. 1996 | Sales price difference ($0.5) | Chunghwa, SDI | Evidence Sogap 3-11, page 505, page 506, and page 508 of the review report |
| 4 | 12.28. 1996 | Floor price agreement confirmation | Chunghwa, SDI | Evidence Sogap 3-12, page 523 of the review report |

The multi-party meeting held on November 23, 1996

54     This meeting was the high level meeting in which the representative director from each company participated.  In the meeting, Chunghwa Picture Tubes, Samsung Display Devices, and Orion provided other companies with information on the production of each CDT product by size and future plans.  Furthermore, the representative directors agreed to reduce the CDT production volume, to refrain from reducing the sales prices, and to maintain the price difference of 2 dollars between the ITC and the B+D[16].  In addition, the participants in this meeting agreed to induce other CRT companies to participate.  Specifically, it was agreed that Chunghwa Picture Tubes would bring in Philips, Orion would bring in Toshiba, and Samsung Display Devices would brining in LG Electronics and Hitachi.  We can see that their intention was to make it impossible for the customers to substitute the suppliers by including all the CDT suppliers in the cartel in this case.  In this meeting, Chairman C. Y. Lin, C. C. Liu, and Jason Liu of Chunghwa Picture Tubes, 5 people from Samsung Display Devices including President Sohn, and 2 people from Orion including President Um participated.[17]  This can be confirmed in the Chunghwa Picture Tubes' "Visiting Report".

All the manufacturers agreed that the excess supply of the CDT's was serious.  <u>Chairman Lin of CPT[18] proposed to overcome the difficulties of 1997 by reducing the production level and temporarily reduce or defer line expansion plans.  Both SDD and Orion expressed their agreement to the proposal.</u>
We explained that <u>continuing to reduce the prices I the midst of the cut-throat competition was not good for the CRT factories or monitor manufacturers.</u>
<u>The price difference between ITC and B+D was supposed to be USD 2 and there was consensus among the companies regarding this.</u>                                    (Evidence Sogap 3-9)

Furthermore, Orion proposed that various CRT companies participate in the next meeting to engage in honest conversations and to prepare to solve problems together.  <u>CPT confirmed that it would invite PH and Orion confirmed that it would invite TSB.  SDD was responsible for inviting LG and HTC.</u>
                                                                                      (Evidence Sogap 3-9)

[16] Refers to the bare tube without the deflection yolk attached.
[17] C.Y. Lin was the representative director of Chunghwa Picture Tubes from 1983 to May of 2007.  Mr. Sohn worked as Samsung SDD's representative director from January of 1996 to January of 1999.
[18] The acronym "CPT" in the evidential documents could mean either the color picture tube, which is the product subject to collusion, or Chunghwa Picture Tubes Co., Ltd., a defendant, depending on the context.

The multi-party meeting on November 25, 1996

55      As agreed in the meeting of November 23, 1996, Samsung Display Devices invited Hitachi to participate in the multi-party meeting of November 25 of the same year.  In the meeting, the defendants agreed to refrain from engaging in price competition for the CDT products and to set the minimum price of the 14 inch CDT at 76 dollars.  Also, in response to the criticism of Samsung Display Devices and Hitachi that the 15 inch CDT price of Chunghwa Picture Tubes is too low, impacting the market price adversely, the company promised to adjust the price.  The participants in this meeting were Mr. Ra of Samsung Display Devices, Kimura and Sakashita of Hitachi, and Chi-Chun Liu of Chunghwa Picture Tubes.  We can confirm this from Chunghwa Picture Tube's "Visiting Report."

---

The prices could be decreased to increase sales.  However, if the prices drop too much, sales will not increase.  Rather, the manufacturers will continue to decrease the prices, resulting in cut-throat competition.  In order to prevent the CDT prices from freefalling, we hope that HTC will contact each CRT factory and continue to discuss.

We hope that the floor price of the 14″ tubes will be maintained at USD 76 (S/S ITD[1]).  CPT's USD 2 could be used as a benchmark for the price gap between ITC and B+D. (USD 3 for the Korean manufacturers and USD 4 for the Japanese manufacturers.)  I think that reconciliation could be reached easily because the CPT could consider changing to USD 3 through SDD.

Sales price of 15″ products: Both HEDS and SDD think that CPT's external estimated price of USD 115 strongly disrupts the market. (The market price offered by HEDS is USD 120 and SDD is offering USD 118.) We said explained that we launched our products late and that our prices had to be rather low because we were not as competitive, asking for their understanding and stating that we would adjust the prices according to the circumstances.

(Evidence Sogap 3-10)

---

The two-party meeting on November 26, 1996

56      During this meeting, the defendants checked each company's minimum sales price applied in early October and the sales prices applied to different purchase quantities.  In the meeting, Chunghwa Picture Tubes stated that Samsung Display Devices was applying the same special price for large orders to those customers with small orders, requesting that the price difference of at least 1 dollar be maintained between Samsung Display Devices and Chunghwa Picture Tubes.  After discussions, in order to avoid the start of a price competition, Samsung Display Devices agreed to maintain the price difference of at least 0.5 dollars.  The defendants agreed that Chunghwa Picture Tubes would inform the agreed-upon minimum 14 –inch price to Hitachi and Philips and Samsung Display Devices would inform the same information to Toshiba and Orion.  In the meeting, Mr. Ra, Mr. Ha, Mr. Lee, and M. S. Lee of Samsung Display Devices and Chi-Chun Liu, Cheng, and Michael Du of Chunghwa Picture Tubes participated.  This can be confirmed with Chunghwa Picture Tube's "Customer Contact Report."

---

[19] S/S is a type of DY (saddle/saddle).  ITO stands for Indium Tin Oxide and refers to the coating Braun tube screen coating material for non-reflecting gap lines.

CPT disclosed the confirmed floor price in early October first.

14″ MPRII[2]/ITC USD 80.00

14″ SS/ITC USD 76.00

Up to now, CPT has followed the guidelines.

The offer prices in accordance with the customer orders are as follows:

100K→USD 76, 80K→77, 60K→78, 50K-79                    (Evidence Sogap 3-11)

---

Continuing to reduce the prices will result in more losses for the CRT manufacturers.  As a result, CPT intends to maintain the current price floors under the condition that unsound competition will be stopped.  But requested <u>SDD to cooperate by maintaining its offer price to the customers with at least USD 1.00/PC price difference compared to CPT.</u>

 Although the current situation is the buyer's market, price reduction doesn't have any positive effect on increasing orders.  Furthermore, if the CRT manufacturers do not maintain their sales prices, leaving the customers to reduce the prices, revenues will decline and losses will mount.
If SDD forces CPT to lower its prices by following the same prices, another vicious competition will start.  Mr. Ra finally agreed to maintain the price difference of at least USD 0.5/PC and to use the light on/EMC.                                                                  (Evidence Sogap 3-11)

---

Also, CPT was to inform the 14″ price floors to HTC/PH and SDD was to provide that information to TSB/GS/Orion.  All the companies agreed to keep consistency and to maintain the price difference of USD 0.5 ~ USD 1.00/PC with CPT.                              (Evidence Sogap 3-11)

The two-party meeting on December 18, 1996

57      In this meeting, the two companies reconfirmed that they would maintain the prices they agreed on November 26, 1996.  Also, the two companies confirmed the other company's sales prices obtained from the customers in order to check whether the agreements had been carried out.  Also, Chunghwa Picture Tubes threatened that in the event that Samsung Display Devices hides price reductions, the price competition could start.  Based on the above, it can be inferred that the two companies implicitly had agreed to refrain from carrying out aggressive sales activities on the other company's major customers.  In the meeting, Samsung SDD's Mr. Ha, Mr. Lee, M. S. Lee, and others and Chunghwa Picture Tube's Chi-Chun Liu, Wen-chun Cheng, and Ching-wien Du participated.  This can be confirmed with Chunghwa Picture Tube's "Customer Contact Report."

---

[20] The term MPRII is the international unit stipulated in Sweden which indicates the interception of harmful electronic waves generated by electronic products.

> CPT agreed to maintain the MPRI price of USD 80.00 and normal price of 76.00 during the two-party meeting on November 26, 1996.
>
> If SDD asserts to compete by fully utilizing its production capacity, which is not conducive to profit, CPT will apply greater production capacity pressure to the Taiwanese customers and will take more irrational measures in Korea in order to prevent SDD from establishing any bridgehead.  Mr. Ha of SDD will transmit this information to the headquarters office in Korea.     (Evidence Sogap 3-12)

(3) The meetings among the competitors in 1997

<Table 19>                          Summary of the CDT Cartel Meetings in 1997

| Year | Date held | Agreement details | Participants | Evidences |
|---|---|---|---|---|
| 1 | 1.28. 1997 | Maintain the price floors (14": $64, 15": $98) Reduce the number of operational days | Chunghwa, SDI, Orion, Philips | Evidence Sogap 3-15, page 554 and page 559 of the review report |
| 2 | 2.24. 1997 | Notify price increases and reduction plans | Chunghwa, SDI/Chunghwa, LG | Evidence Sogap 3-16, Evidence Sogap 3-16-1 Evidence Sogap 3-17, Page 589 of the review report |
| 3 | 2.25. 1997 | Price floors (14": $67, 15": $100) Reduce the number of operational days, maintain the market shares | Chunghwa, SDI, LG, Philips | Evidence Sogap 3-18 Evidence Sogap 3-19 Page 593 of the review report |
| 4 | 2.27. 1997 | How to implement the previous agreements | Chunghwa, Toshiba | Evidence Sogap 3-20 , Page 605 of the review report |
| 5 | 3.12. 1997 | Maintain the previously-agreed prices | Chunghwa, SDI, LG, Orion, Philips, Hitachi, Matsushita | Evidence Sogap 3-21 Evidence Sogap 3-22, Page 611, page 613, and page 615 of the review report |
| 6 | 3.19. 1997 | 14" and 15" CDT price increases for each company and the implementation dates | Chunghwa, SDI, Orion, Philips | Evidence Sogap 3-23 Page 627, page 628 of the review report |
| 7 | 3.26. 1997 | 14" and 15" CDT prices increases for each company and the implementation dates.  Prices differences for based on detailed specifications | Chunghwa, SDI, Philips | Evidence Sogap 3-24 Page 640 and page 642 of the review report |
| 8 | 4.7. 1997 | Increase of $5 for the 17" CDT's | Chunghwa, Toshiba | Evidence Sogap 3-25 Page 649 and page 652 of the review report |
| 9 | 4.23. 1997 | Confirmation of the previously-agreed prices, price increases for 14" and 15" CDT's in the Korean market | Chunghwa, Matsushita, / Chunghwa, SDI, Orion, Philips | Evidence Sogap 3-26-9, page 661, page 673, page 675, page 687, and page 688 of the review report |
| 10 | 5.2. 1997 | Agreement on the price increases for the 14" and 15" CDT's | Chunghwa, SDI | Evidence Sogap 3-30, Page 689 and page 690 of the review report |
| 11 | 5.9. 1997 | The minimum prices (14": $71, 15": 4105) and maintain the price volume for each customer | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap 3-31 Page 696, page 698, and page 700 of the review report |

| 12 | 5.16. 1997 | Maintain the previously-agreed prices | Chunghwa, SDI, LG | Evidence Sogap 3-32 Page 710 of the review report |
| 13 | 5.20. 1997 | Maintain the previously-agreed prices, maintain the differences in prices among the defendants and increase the prices in Korea | Chunghwa, SDI, LG, Philips | Evidence Sogap 3-33 Page 723, page 725 of the review report |
| 14 | 6.5. 1997 | Measures to induce breaching companies to cooperate | Chunghwa, SDI | Evidence Sogap 3-34 Page 734 of the review report |
| 15 | 7.8. 1997 | Refrain from competition.  Price of 14" ($62), mutually adjust the price | Chunghwa, SDI | Evidence Sogap 3-35 Page 739 and page 741 of the review report |
| 16 | 7.18. 1997 | Floor prices (14": $60, 15": $90) How the overseas subsidiary companies is to implement | Chunghwa, SDI | Evidence Sogap 3-36 Page 747 and page 749 of the review report |
| 17 | 8.1. 1997 | How to maintain confidentiality | Chunghwa, SDI | Evidence Sogap 3-37 Page 764 of the review report |
| 18 | 8.18. 1997 | Check whether the agreements were carried out | Chunghwa, SDI | Evidence Sogap 3-38 Page 772 and page 774 of the review report |
| 19 | 10.9. 1997 | Exchange information on the current sales prices | Chunghwa, SDI, Philips | Evidence Sogap 3-39 Page 787 of the review report |
| 20 | 10.20. 1997 | Refrain from reducing prices, control production, and maintain the price floor | Chunghwa, SDI | Evidence Sogap 3-40 Page 795 of the review report |
| 21 | 10.30. 1997 | Minimum prices (14": $58, 15": $75) | Chunghwa, SDI, Philips | Evidence Sogap 3-41 Page 805 and page 807 of the review report |
| 22 | 11.7. 1997 | Check the intention of the companies to carry out the agreements | Chunghwa, Matsushita | Evidence Sogap 3-42 |
| 23 | 11.20. 1997 | Contact more, agree on the floor price for 14" ($58) | Chunghwa, SDI, LG, Philips | Evidence Sogap 3-43 Page 892 and page 832 of the review report |

The multi-party meeting on January 28, 1997

In this meeting, the defendants agreed to maintain the minimum price (per each customer) by reducing the number of operational days, reasoning that reducing the price in order to increase the market share results only in the reduction in the CDT industry's overall profit.  Also, the meeting results were provided to LG Electronics, which had not participated in this meeting, encouraging the company to carry out the agreements of the CRT suppliers.  We can see that the defendants shared information on each company's operational days, inventory situation, and production cost data in order to effectively respond to price decreases and to reach effective price agreements, thereby controlling the supply in line with the CDT demand by establishing future plans based on the above information.  In the meeting, Mr. Ra of Samsung Display Devices, Mr. Yoo of Philips, Mr. Moon of Orion, and Chi-Chun Liu, Yoo-shuen Lin, and Ching-wien Du of Chunghwa Picture Tubes participated.  This can be confirmed with Chunghwa Picture Tube's "Customer Contact Report."

If the CDT prices continue to decline, we will only feel that the demand/orders are decreasing more and more.  <u>Therefore, it is mandatory to make the customers understand the results of the CDT decisions.  In order for all the people in the CDT industry maintain the floor prices based on the agreements at the same time dealing with the customers' price reduction demands, the number of operational days should be temporarily reduced.</u>                   (Evidence Sogap 3-15)

Currently, HTC is providing the customers (MPRII) 14″ at 64.00/pc.  Therefore, in order for us to maintain our market share, we should follow the above price and <u>should confirm this price as the final price.  Major customers: 64.00 dollars, mid-sized customers: 65.50 dollars, small customers: 67.00 dollars.  The final price for the 15″ MPRII will be 98 USD.  Major customers: 98.00 dollars, mid-sized customers: 100.00 dollars, small customers: 102-103 dollars</u>

<u>The meeting participants agreed to maintain the February sales prices as the minimum prices. The meeting results were transmitted to LG and requested the company to do its best to persuade HTC to support our minimum price resolution.</u>                   (Evidence Sogap 3-15)

The two two-party meetings on February 24, 1997

59      During this meeting, the participants reconfirmed the agreements reached during the meeting held on January 28, 1997, checked whether the agreements such as the reduction in the number of operational days had been carried out, and compared the supply prices of each customer in order to carry out the agreed-upon prices smoothly.  Also, the companies agreed to notify to the customers of their plans to reduce production and to increase the prices in the second half of the year.  In this meeting, Chi-Chun Liu, Yoo-shuen Lin, and Chin-yuen Du of Chunghwa Picture Tubes, Mr. Lee and Mr. Lee of Samsung Display Devices and Mr. Lee of LG Electronics agreed on the CDT prices and on the reduction of the number of operational days.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

First, Director Liu <u>talked about the issues related to the agreements reached during the CPT/PH/SDD/Orion meeting held on January 28, 1997. (1) Reduction in the number of operational days (2) Decision on the minimum prices: 14″ USD 60.00 (S/S), USD 64.00 (MPRII) (3) Refraining from offering lower prices to take market shares from other suppliers.</u>

<u>Currently, CPT and SDD, which are the major 14″ suppliers, notified all the customers that they started to reduce production in order to maintain the balance between supply and demand.  There is a possibility that the price of the 14″ CDT will go up in the 2nd half when there is a shortage.</u>

(Evidence Sogap 3-17)

60      Also, the fact that all the participating companies carried out the agreement to reduce the number of operational days, one of the agreements reached in the previous meeting, can be confirmed by a newspaper article of that time period ("CRT companies to reduce production," February 18, 1997, Korea Economic Daily).

The multi-party meeting on February 25, 1997

61      During this meeting, the participants agreed on four points.  First, the companies agreed on the minimum prices for the 14 inch CDT and the 15 inch CDT.  Second, Samsung Display Devices was to announce the increase in price of the 14 inch CDT and Chunghwa Picture Tubes was to announce the price increase for the 15 inch CDT, with the price increases to take effect from April 1, 1997.  Third, the participants agreed to reduce the number of operational days.  Lastly, the participants agreed to maintain the market shares for each customer.  The participants in the meeting were C. Y. Lin of Chunghwa Picture Tubes, Mr. Yoon and Mr. Ra of Samsung Display Devices, Mr. Lin of LG Electronics, and Cheng of Philips.  This can be confirmed with Chunghwa Picture Tube's "Customer Contact Report" and Samsung SDD's  "Meeting data on CRT manufacturers' production volumes and demands summarized  in a table format."

> The minimum prices of the 14″ CDT MRPII: 67 dollars/unit, S/S: 63.50/unit
> Minimum price of the 15″ CDT MPRI: 100.00/PC
> The 14″ size price increase was published by SEC (sic) and afterwards CPT announced the price increase for the 15″ size CDT.  The 14″/15″ CDT prices will increase April 1 of '97.
> Each manufacturer should reduce the number of production days in order to control the production volume.
> In order to maintain the original market shares, each manufacturer should refrain from using any price increases as an opportunity to take away other manufacturers' market shares.
>
> (Evidence Sogap 3-18)

The two-party meeting of February 27, 1997

62      We can confirm that during this meeting, the CDT manufacturers confirmed the agreement to increase the prices of the 14″ CDT's and discussed about the plan to increase the CDT prices (to be implemented by Samsung, Chunghwa Picture Tubes, and Toshiba, in that order) and about contacting Toshiba and Hitachi to implement the details of the agreements.   This can be confirmed with Chunghwa Picture Tube's "Customer Contact Report."

> CPT also stated that currently most CDT manufacturers agreed to increase the 14″ price.  After SDD announces its price increase (14″: MPRII 67), CPT will immediately its 15″ CPT to USD 100.  TSB stated that it is very happy to hear the news and that it would follow the measures.
>
> CPT stated that most CDT manufacturers agreed on these measures.  However, HTC still has not expressed its opinion.  We requested TSB to request HTC to provide more support.
>
> (Evidence Sogap 3-20)

The multi-party meeting on March 12, 1997

63      During this meeting, the defendants disclosed and compared such information as the production volume, number of operational days, and inventory level between February and April of 1997 in order to determine whether each company maintained the appropriate amount of supply.

In addition, the companies agreed to increase the minimum price of the 14″ CDT to 67 dollars and the minimum price of the 15″ CDT to 100 dollars, agreeing further on the order of notifications of the price increases and the method of notifications.  Also, the companies exchanged opinions regarding whether the previously agreed-upon prices were implemented and confirmed that Chunghwa Picture Tubes had not sold its CDT products more than 5 dollars below the customers' offer prices, as the company had agreed in the previous meeting.  In the meeting, directors and employees from 7 CDT manufacturers including Mr. Ha, Mr. Lee, and Mr. Lee of Samsung Display Devices, Mr. Lee of LG Electronics, Mr. Moon of Orion, Huan Lung of Philips, Jian Lung Jang of Hitachi, Yue Hao Jang of Matsushita, and Tony Chen and David Ross of Chunghwa Picture Tubes participated.  This can be confirmed by the memos of the participants from Chunghwa Picture Tubes and by the "Contact Report" prepared after the meeting.

|  | February | | March | | April | | |
|---|---|---|---|---|---|---|---|
|  | Production | Production days | Production | Production days | Production | Production days | Inventory |
| PH | 460 | 23 | 54 | 27 | 440 | 22 | 60 |
| CPT 14″ | 602 | 12 | 698 | 16 | | | 550 |
| 15″ | 161 | 12 | 250 | 16 | | | 450 |
| SDD | 900 | 22 | 1030 | 24 | 1030 | 24 | 500 |
| LG | | 21-22 | 550 | 24 | 550 | 24 | 150 |
| DW | 280 | 22 | 320 | 23 | 350 | 24 | 500 |
| MEC | 70 | | 70-80 | | 70-80 | | |

14″: They will start to make overall adjustments starting April 10.  The manufacturers reached the following conclusion after discussing carefully.
<u>Maintain the minimum prices</u>       <u>MPRII: USD 67.00/pc</u>
                                                       <u>S/S 63.50/pc</u>
SDD will distribute an official written notification stating the price increase starting April 10 to the customers (effective from the shipping date).  Other companies will follow suit.
15″ <u>The minimum price will be adjusted starting April 10. 67KHz/MPRII USD 100.00/pc</u>
CPT will take the lead in notifying the price increases to the customers.  Other manufacturers will follow suit.
                                                                                                     (Evidence Sogap 3-22)

I reviewed <u>each manufacturer's sales prices that should be applied when selling to customers and then requested each manufacturer to disclose its books so that each manufacturer could maintain its sales territory.</u>

The customers demanded 8-10 dollars, but CPT strongly refused.  However, 5 dollars is the amount previously agreed.                                                                                 (Evidence Sogap 3-22)

The multi-party meeting on March 19, 1997

64      This meeting was a multi-party working level meeting held for the purpose of discussing about the prices of the 14″ and 15″ CDT's and their production volumes.  The defendants prepared the following table which contains information on the minimum CDT prices by customer and by specification and checked whether the agreements had been carried out.

Also, the defendants agreed to maximize profit by increasing the price further (5 dollars), reasoning that if the increase were too small (2 to 3 dollars), the customers would just ignore the increase. In order to ensure that the agreed-upon prices could be applied effectively, the defendants agreed to provide the details of the agreements to those companies that didn't participate in the meeting. Furthermore, the companies agreed to strengthen communication in order to smoothly carry out the price increases. In addition, by acknowledging the quality differences among the companies, the companies agreed that the price difference of 3 dollars be maintained between Chunghwa Picture Tubes and Samsung Display Devices/Philips/LG Electronics for the 15 inch CDT. The participants in this meeting include Mr. Lee, M. S. Lee, and Otto Lee of Samsung Display Devices, Milan Baran and Cheng of Philips, Mr. Moon of Orion, Mr. Ahn of LG Electronics, and Chi-Chun Liu of Chunghwa Picture Tubes. This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

1. 14″ CDT: The minimum CDP prices and implementation dates for each company:

| Classification | March | Starting April 1 | Starting May 1 |
|---|---|---|---|
| CPT | USD 67 | 67 | 72 |
| SDD | 64 | 67 | 72 |
| PH | 64 | 67 | 72 |
| LG | 64 | 67 | 72 |
| Orion | 63 | 65 | 70 |

2. 15″ CDT (57KHZ[3] MPRI): the minimum prices and implementation dates for each company:

| Classification | March | Starting April 1 | Starting May 1 |
|---|---|---|---|
| CPT | USD 98 | 102 | 107 |
| SDD | 102 | 105 | 110 |
| PH | 100 | 105 | 110 |
| LG | 100 | 105 | 110 |
| Orion | 98 | 100 | 105 |

The April CPT/SDD price increase letter was sent to all the customers. Also, PH, LG, and Orion followed suit. The manufacturers will apply the new prices on the supplies to be delivered starting April 1, in principle.                                                      (Evidence Sogap 3-23)

When considering that the increase in the CPT price was only USD 2-3/pc, some customers will in turn pressure their customers to bear the price increase, but answered that they would not be able to transfer the actual price increase to their customers. Therefore, they proposed to extend the scale of the price increase. Their reasoning was that if we do it this way, then it could be more beneficial to the operation of CDT manufacturers.
The price increase of about $2 to $3 is not enough. The price increase should be at least $5.
                                                                      (Evidence Sogap 3-23)

---

[21] KHZ: Indicates frequency and means kilohertz.

Each of the meeting participants should inform <u>TSB/MEC[4] about the 15″ size prices. (CPT will contact them.)</u>

CPT wants to maintain the difference of USD 5.00/pc reached during the previous discussion in regard to the price difference for the 15″ CDT with SDD/PH/LG.  However, <u>the manufacturers disclosed about their concerns that they would lose orders, and agreed only to the difference of USD 3.00/pc.</u>

 The companies should strengthen their communication in order to carry out the price increases smoothly.

Despite of the fact that SDD/LG offered the minimum price of USD 64.00/pc, they could not obtain orders.  Therefore, <u>the wait-and-see attitude of the customers should be stopped, and in order to eliminate the noise, we should immediately increase their prices.</u>

(Evidence Sogap 3-23)

The multi-party meeting on March 26, 1997

The defendants found out that their plan to increase the prices was not going smoothly due to Hitachi's failure to increase its sales prices as agreed.  So, in April and May of the same year, the defendants notified the Japanese manufacturers about the agreements and agreed to persuade the Japanese manufacturers to carry out the agreements.  Based on the above, we can see that the defendants adjusted the details of the agreements by taking into consideration the market situation in the event that the agreed-upon prices could not be applied readily.  Also, the companies prepared a table showing the price differences among the different CDT specifications in order to ensure that the agreements would be carried out precisely and to prevent any breaches of the agreements.  In addition, the participants confirmed the principle of the cartel, which was to maintain profitability by successfully increasing the prices based on mutual trust.  In the meeting, Mr. Ra and Mr. Ha of Samsung Display Devices, Mr. Chung of Philips, and Chi-Chun Liu, Shen-jen Yang, and Ching-Wien of Chunghwa Picture Tubes participated.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

<u>A common understanding should be reached regarding the price increase of the 15″ CDT.</u>  The decision by SDD/PH/CPT to increase their prices should be notified to the Japanese manufacturers to push the Japanese manufacturers to follow the decision.  <u>The companies decided to modify the sales prices of the 15″ CDT starting April 1.</u>

| Classification | March | Starting April 1 | Starting May 1 |
|---|---|---|---|
|  | USD |  |  |
| SDD | 102.00 | USD 105.00 | USD 110.00 |
| PH | 100.00 (PH, Jin) | USD 102.00 | USD 110.00 |
|  | 103.00 (Others) | USD 104 (target 105) |  |
| CPT | 98.00 | USD 101-102 | USD 107.00 |

Regarding the price increase for the 14″ CDT, the meeting participants said that all customers basically accepted the price increase and that there were no real problems.           (Evidence Sogap 3-24)

---

[22] TSB refers to Toshiba and MEC refers to Matsushita Electronics.

| The price differences for each tube type | | |
|---|---|---|
| | SDD | CPT |
| 15 MPRII | 105 | 101-102 |
| 15 ASC | -2.00 | -2.00 |
| 15 w/o coil | -2.00 | -2.50 |
| 14 MPRII | 67.00 | 67.00 |
| 14 ASC | -2.00 | -2.00 |
| 14 w/o coil | -2.00 | -1.50 |

In additional to continued production reduction, whenever any frictions related to customer dissatisfaction or order quantity occur, all should adhere to mutual trust and communicate honestly and seriously in order to find the mutually-beneficial way and to increase the prices successfully so that future profitability can be ensured.

(Evidence Sogap 3-24)

The two-party meeting on April 7, 1997

66      In this meeting, Chunghwa Picture Tubes was informed that Toshiba would increase the price of the 17″ CDT by 15 dollars starting May of the same year and that one of the major customers for Toshiba's 15″MNN neck product was Samsung Electronics. From these facts, the defendants provided information related to the agreements reached in multi-party meetings at the two-party meeting and urged the implementation of such agreements. Also, we can confirm that a few of the customers subject to the implementation of the cartel agreements were Korean companies. Also, in regard to the plans to increase the prices of the 14″ and 15″ CDT's agreed in the previous meeting, Toshiba disclosed to Chunghwa Picture Tubes that it would increase the prices according to the agreements. This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

CDT confirmed to increase the price to USD 15/pc (The current 17″ sales price is at least USD 215.00/pc)
Currently, the manor customers of the 15″ MNN neck are Japanese and Korean customers and about 50k/m is for Korea's Samsung (Evidence Sogap 3-25)

Mr. Pu Yong checked TSB's 14″/15″ CDT price increases and said that he wanted to see the results and that he would follow the market price. Also, TSB decided to increase the 15″ CDT price by 7″% starting May. Namely, the sales price will increase from USD 105/pc to USD 112/pc

(Evidence Sogap 3-25)

The two-party meeting and the multi-party meeting on April 23, 1997

67      We can see that the purpose of the two-party meeting between Matsushita and Chunghwa Picture Tubes held on April 23, 1997 was to completely carry out the CDT price agreements by preventing any companies from breaching the agreements. This can be confirmed in the "Visiting Report" prepared by Ching-wien Du of Chunghwa Picture Tubes.

The major purpose of this trip is to explain to the MEC employees about the current price increases for the 14″/15″ CDT's and the background to the current prices of SDD/PH/CPT/LG/TSB and to persuade the MEC employees to agree with other companies so that they will support the actual price increase measures, thereby making the CDT price increases more perfect and satisfactory.

(Evidence Sogap 3-26)

68      In the multi-party meeting held on the same day, the defendants compared each company's production volume and inventory level.  Afterwards, the companies reconfirmed the minimum prices of the 14″ CDT in April and May.

| | Production | | | Inventory | |
|---|---|---|---|---|---|
| | April | May | March | April | May |
| CPT | >700K | <700K | 650K-700K | 400-500K | 400-500K |
| PH | 450K | 450K | 70K | 170K | 120K |
| SDD | 850K | 850K | 600K | 850K | 750K |
| Orion | 300K | 300K | 500K | 350K-380K | 350K |

Regarding the 14″ MPRRII, the meeting participants agreed to keep the April/May prices as follows: (minimum price)

| | April | May |
|---|---|---|
| 14″ MPRII | USD 67.0/pc | USD 72.0/pc |

15″MPRII: The companies decided that the standard price to strive for is USD 110.00/pc.

(Evidence Sogap 3-26)

69      Also, the defendants discussed about the CDT sales prices in the Korean market.  They were very sensitive to any price increases in the Korean market.  The reason was that non-Korean customers referred to the sales prices in Korea to demand price discounts to the Cartel participants so that the prices in the Korean market had to increase by the same margin as in other countries.  So, Chunghwa Picture Tubes and Philips asserted that the previous agreements had to be carried out in Korea as well.  This is verified by the fact that Mr. Ra of Samsung Display Devices had sent out a letter related to the price increase.  In order to quickly agree on the prices in May of the same year, the companies decided to hold the meeting which had been scheduled to be held on May 19-20 earlier on May 6-7.  In this meeting, the marketing directors and employees from four companies including Mr. Ra, Mr. Ha, Mr. Lee, M.S. Lee, and Mr. Otto of Samsung Display Devices, Mr. Song of Philips, Mr. Moon of Orion, and Chi-Chun Liu, Shen-jen Yang, and Ching-wien Du of Chunghwa Picture Tubes participated.   This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

> The 14″/15″ CDT sales prices in the Korean market:
> If the 14″/15″ CDT prices in Korea do not increase, this will lead to the deterioration of competiveness among the Taiwanese companies, and will vehemently resist any CDT price increase.  In order to prevent failure due to the above situation, CPT/PH prompted SDD/Orion to adjust the prices in Korea at the same speed.  Mr. Ra asserted that an official letter had already been sent to PH and that the company is continuing to endeavor to work with LG/Orion.
> [Memo written in a different font:] Mr. Ra asserted that the CRT manufacturers had discussed with PH (Korea) on March 23 regarding price increase in Korea.
> Also, the LG people will not be able to attend the top level meeting which was originally scheduled to be held between May 8 and May 10, so the meeting will be rescheduled to be held on May 19-May 20.  However, CPT proposed to schedule the meeting earlier on May 6-May 7, reasoning that it would be better to decide on the May prices as soon as possible.
>
> (Evidence Sogap 3-26)

70      In regard to the implementation of the agreed-upon prices, Chunghwa Picture Tubes sent a letter written on the company's letter head paper to Samsung Display Devices on April 29, 1997 to prompt the faithful implementation of the agreements ("we do not wish to see any withdrawn attitude to destroy the understanding[23]").  In response, Samsung Display Devices sent a letter ("Why do we have to dig our own grave under this situation?"[24]) written on the company's letter head paper on May 2 of the same year in order to resolve Chunghwa Picture Tube's misunderstanding.

The two-party agreement on May 2, 1997

71      During this meeting, Samsung Display Devices and Chunghwa Picture Tubes agreed to increase the prices of the CDT products.  Also, as discussed in the previous meeting, the Chunghwa Picture Tube's participants strongly urged Samsung Display Devices to increase it monitor prices in Korea because whether Chunghwa Picture Tubes could increase the prices of its products depended directly on the domestic prices in Korea.  This can be confirmed in Chunghwa Picture Tube's "Visiting Report."

> This time, it was CPT's turn to announce and lead the 14″/15″ CDT price increases.  At this stage, any price increases could lead to order decreases in the short term, but in order for the operations to normalize, price increases are mandatory.
>
> As long as CPT and SDD maintain their position staunchly, the price increases will occur.  SDD agreed to such a point of view and agreed to increase the prices.                                                   (Evidence Sogap 3-

---

[23] "With all the efforts working together these days, we do not wish to see any withdrawn attitude to destroy the understanding and this difficult task.  By this last minute determination to prop up price increase action, all of us could attain the goal.  I believe I should be most beneficial for SDD to comply with the agreement of increasing the price step by step...."
[24] "Why do we have to dig our own grave under this situation?  Please make it sure that there is no doubt about our efforts to increase the price."

Regarding the price increase issue, <u>CPT strongly requested SDD to increase the monitor prices in Korea to prevent the deterioration of Taiwanese companies' competitiveness</u>  (Evidence Sogap 3-30)

The multi-party meeting on May 9, 1997

72      In this meeting, Director Liu of Chunghwa Picture Tubes explained about the agreements reached during the top level meeting of April 23 and about the effective date (May 1), and the participants expressed agreement.  Also, the defendants prepared a table as follows to indicate the sales volume by customer and agreed to maintain the market share.

Director Liu first explained to the meeting participants that the top management's decisions were as follows: <u>Minimum price for 14″ MPR II: 72 dollars/unit.  15″ MPR II: 105 dollars/unit.  Effective May 1</u>

(Evidence Sogap 3-31)

|          | Quantity | CPT | SDD | PH  | LG | Orion |
|----------|----------|-----|-----|-----|----|-------|
| Acer     | 115      | 65  | 10  |     |    |       |
| Action   | 17       |     | 14  | 2   |    |       |
| AOC      | 85       | 40  |     | 8   |    | 35    |
| Bridge   | 11       | 1.5 |     |     |    | 10.5  |
| Compal   | 34       | 18  |     |     |    |       |
| CTX      | 27       | 4   | 2   |     | 3  |       |
| Delta    | 17       | 7   |     |     |    |       |
| EMC      | 37       | -   | 22  | 10  |    |       |
| Punai    | 15       | 15  |     | 0.5 |    |       |
| GVC      | 43       | 7   | 7   |     | 6  | 23    |
| KFC      | 32       | 5   | 5   |     | 1  | 4     |
| LED      | 9        | 1   |     |     | 8  |       |
| Light-on | 85       | 72  |     |     | 12 |       |
| MAG      | 18       | 9   |     | 3   |    |       |
| MITAC    | 9        |     | 5   |     | 2  |       |

Right now, everybody has to cooperate with each other.  It is necessary for us to withstand for one more month and ignore the sales prices of HTC (Hitachi) <u>while not losing customers/market share to other manufacturers.  This is the only way that the endeavors of the top level meetings will bear fruit.</u>

(Evidence Sogap 3-31)

73      The defendants posed questions about the low sales prices, checked other companies' prices and reconfirmed the sales prices, and then agreed to refrain from selling the products at low prices to meet customer demands.

According to the order situation information from AOC, CPT expressed strong dissatisfaction to Mr. Moon of Orion that AOC is offering 200 dollars, <u>which is lower than CPT's price, in order to take CPT's existing market share.</u>

CPT posed questions regarding SDD/LG's passive behaviors to their customers such as GVC/KFC/LED and regarding their failure to adhere to the minimum price level in April.  <u>After SDD's explanations and LG's adamant denial, the meeting participants from PH/SDD/LG/Orion agreed to set the minimum 14" MRPII price at 72.0 dollars/unit starting May.</u>

The customers' statements should not be taken at face value.  <u>Also, we should not hesitate to increase the sales prices.</u>  We should refrain from offering low prices to obtain small orders to ensure that the efforts of all the companies will not have been in vain.

(Evidence Sogap 3-31)

74      This meeting was a working level meeting which was held in order for the participants to agree on such issues as the CDT prices, market shares, and prohibition against lowballing.  Mr. Kim and Mr. Ha of Samsung Display Devices, Mr. Lim of LG Electronics, Mr. Moon of Orion, Mr. Cheng of Philips, Director Liu of Chunghwa Picture Tubes, and 3 other people participated in the meeting.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

The multi-party agreement on May 16, 1997

75      During this meeting, the defendants checked whether the agreed prices of each customer were being carried out properly.  Also, the companies discussed about how to effectively respond jointly to the price decreases carried out by Hitachi.  In addition, the companies agreed to faithfully carry out the agreements reached during the previous top level meeting.

Mr. Ha repeatedly mentioned that he had notified the price increases to the customers first.  Therefore, Mr. Lim <u>thinks that the originally-agreed minimum prices of 15"</u> <u>MPRII-105.0/pc. And 14"MPRI-72.00/unit should be offered to all the customers, that these prices should be retried</u> for 1 to 2 months, and that <u>HTC should be continuously persuaded to increase the sales prices.</u>

Director Liu summarized that before new decisions should be made, the comprehensive opinions of all the meeting participants should be included in the report to be submitted to the top management and that <u>everyone should follow the original decisions of the top management.</u>

CPT entrusted LG the responsibility to ensure that all the members will follow the implementation decisions based on mutual trust.  Also, CPT requested LG to participate in all working level meetings in order to strengthen cooperation based on mutual trust.                    (Evidence Sogap 3-32)

The multi-party meeting on May 20, 1997

76      During this meeting, the defendants reconfirmed the agreements of the top level meeting.  Then, the companies exchanged each company's production volume and inventory situation.  Afterwards, the companies discussed about increasing the sales prices in Korea.

Then, the participants agreed on the sales prices of the 14″ and 15″ CDT's, setting the price differences among the companies.  Chunghwa Picture Tubes and Philips then urged the Korean companies to increase the domestic sales prices.  In response, Samsung Display Devices confirmed that it had requested LG Electronics and Orion to increase their prices, openly criticizing Orion and LG Electronics which had offered low prices.

> According to the agreements of the top level meeting on May, 1997, <u>the minimum prices should be adhered to and the prices should not be lowered to take away other companies' orders</u>
>
> <div align="right">(Evidence Sogap 3-33)</div>

> <u>Also, due to the fact that the Korean manufacturers' prices have not increased, CPT/HP complained about the sales prices of the 14″/15″ CDT's in Korea.</u>  Mr. Ra said that SDD had already notified price increases to the customers and <u>demanded LG/Orion to follow the price increases requests by increasing the prices above the agreed levels.</u>
> I said that the most problematic customers were Orion/LG, and added that Orion's prices were the lowers.
> <u>I requested 48KMZ-100 dollars to other LG people for 15″ products, further requesting to maintain 64KMZ-103 dollars.</u>                                          (Evidence Sogap 3-33)

77      Also, the defendants agreed on the minimum prices and the sales prices based on customer size for the 14″ and 15″ CDT's.  Furthermore, the companies agreed that the price difference for the 15″ CDT between Chunghwa Picture Tubes and Samsung Display Devices/Philips would be set at 3 dollars.  This is the reconfirmation of the agreement reached in the meeting on May 9 in order for Chunghwa Picture Tubes to maintain its market share in the 15″ CDT market.

> 14″ CDT: Maintain the previously-agreed prices <u>in accordance with decision reached at the top level meeting: 14″ MPRII-72.00 dollars/pc</u>
> - <u>Major customers – 100.00 dollars/unit in May of 97, June of 97: 100 dollars/unit</u>
> - <u>Medium and small customers – May of '97: 102.00 dollars/unit.  June of '97: 102 dollars/unit</u>
> <u>The price difference between CPT and SDD/PH</u> will be maintained at 3 dollars/unit according to the top level meeting and will not be discussed further.          (Evidence Sogap 3-33)

78      In this meeting, Mr. Ra and Mr. Ha from Samsung SDI, Mr. Song and another person from Philips, Charles Lou from LG Electronics, Chi-Chun Liu, Wen-chun Cheng, and Ching-Wien from Chunghwa Picture Tubes, and other people participated.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

The two-party meeting on June 5, 1997

79      During this meeting, the implementation of the previous price agreements was checked and those who hadn't implemented the agreements were confirmed, and how to further cooperate was discussed.

Also, the Chunghwa Picture Tubes' participants expressed their dissatisfaction that the company had incurred damages due to the Korean CRT manufacturers' failure to increase the prices in Korea as agreed, urging the Korean companies to increase their prices in the Korean market.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

Therefore, they (SDD) continued to request CPT to support the price agreements and disclosed that they were willing to understand CPT's position and to help CPT.

In order to compete, Orion offered lower prices than contract prices and as a result took away substantial orders from CPT. ... LG also took away orders by frequently offering lower prices than the contract prices.  HEDS' expected 14″ CDT production situation is unclear.

SDD's President Sohn proposed to have another meeting and invited the people who were related to the future discussions.                                             (Evidence Sogap 3-34)

---

The local 14″/15″ CDT prices in Korea could not increase simultaneously, only causing the Taiwanese manufacturers to lose their competitiveness further.                    (Evidence Sogap 3-34)

---

The two-party meeting on July 8, 1997

80      The defendants agreed to refrain from competing with each other regarding the 14″ CDT price and quantity, to maintain the price difference between major customers and small-scale customers, and to check with the other company when customers would propose low prices.  Regarding the 15″ CDT, Chunghwa Picture Tubes informed Samsung Display Devices that its sales price was not different from the sales prices of Samsung Display Devices, Philips, and LG Electronics in contrast to the previous agreement, and the two companies agreed to adjust the price to in line with the price of Samsung Display Devices.  Samsung SDD's Mr. Ha and Chunghwa Picture Tube's Ching-wien Du and Ling-Yoon Cheng participated in this meeting.  This can be confirmed in Chunghwa Picture Tube's "Visiting Report."

President Ha said that the current SDD price for 14″ follows the price of CPT entirely.  He agreed that there was no reason for CPT and SDD to compete on price for the 14″ CDT.  That is because competition between the two companies would just cause damages to the companies without increasing orders/market share.

In response to CPT's proposal to maintain the price at USD 62.00/pc (MPRII), President Ha expressed his intention to cooperate.  Also, he agreed that a price difference between major customers and small customers was needed.

Samsung agreed to take similar measures on prices, so we should follow suit.  Also, if we have any suspicions about each other's prices, we should check each other to prevent the customers from cheating us.                                                  (Evidence Sogap 3-35)

---

CPT explained to Mr. Ha again that there was no difference between the current CPT's 15″ price and the prices of SDD/PH/LG. (USD 1~2.00/pc)

In addition, CPT will adjust the price within 1 to 2 months to match the SDD price.
                                                                   (Evidence Sogap 3-35)

The two-party meeting on July 18

81      During this meeting, the two companies confirmed whether the rumors surrounding the prices of the 14″ and 15″ CDT's were true and agreed on the new sales prices.  First, in regard to the 14″ CDT, Samsung SDD's Mr. Ha proposed to lead the market price jointly with Chunghwa Picture Tubes.  Then, the two companies agreed on the prices to be applied to other customers.  In addition, the two companies agreed to transmit the agreements to the respective overseas subsidiary companies.

> Mr. Ha agreed that the market prices of the 14″ CDT could be jointly led by CPT/SDD.
> Both sides agreed to set the 14″ CDT prices as follows:
> Major customers: Brand P / Brand A / Brand I: 60.00/pc.  Others: 62~64.00/pc
> Director Liu mentioned about CPT's sincerity in maintaining the current prices and requested today's conclusions to the headquarters/Malaysia factory/Hong Kong subsidiary so that they could follow the conclusions.
>
> (Evidence Sogap 3-36)

82      In addition, regarding the 15″ CDT, the two companies compared the prices differences that occurred according to product specifications based on the standard specification (64KHZ/MRPII) to ensure that the agreed-upon prices would be applied.  Furthermore, the two companies agreed to cooperate with Philips to set the minimum price at 90 dollars.

> Both sides clearly stated again that the price differences for the various tube types were as follows:
> Base: 64KHZ/MRPII
>
> |         | CPT   | SDD   |
> |---------|-------|-------|
> | No ASC  | -2.00 | -2.00 |
> | No coil | -2.50 | -2.00 |
> | 48KHZ   | -2.00 | -2.00 |
> | Glare[7] | -2.00 | -2.00 |
> | Total   | -8.50 | -8.00 |
>
> As long as SDD/PH/CPT cooperate, the minimum 15″ CDT price could be maintained at USD 90.00/pc.
> CPT will contact PH again to cooperate in such efforts.                    (Evidence Sogap 3-36)

83      The purpose of this meeting was to agree on the prices and production volumes of the 14″ and 15″ CDT's.  Mr. Ha and 2 other people from Samsung Display Devices and Chi-Chun Liu and Ching-Wien of Chunghwa Picture Tubes participated.   This can be confirmed in Chunghwa Picture Tube's "Visiting Report."

---

[25] "Due to the fact that people watch computer monitors more closely than TV monitors, the specifications on the effects on the body are more detailed.  The monitors without any liquid applied on the glass are referred as glare monitors.  Those monitors with the coating on the glass are referred to as non-glare monitors.  The CDT monitors with the coated glass are high-end monitors." (Evidence Sogap 2-1 answer 6)

The two-party meeting on August 1, 1997

84      In this meeting, the two companies exchanged information on factory production volumes and sales data for each customer.  In addition, the companies agreed to keep the cartel meetings confidential.  This can be confirmed in Chunghwa Picture Tube's "Visiting Report."

> We have to continue to maintain contact points to exchange information.  However, except to respond carefully to deal with excessive competition, we should exchange information only orally and should never provide any written information.                                             (Evidence Sogap 3-37)

The two-party meeting on August 18, 1997

85      The two companies exchanged the production data and production line conversion plans of the factories located across the globe and checked whether the previous agreements had been implemented.  Specifically, the participants checked whether the other company's sales price information obtained from the market or customers was correct.  Regarding the sales prices of the products to Samsung Electronics, Samsung Display Devices confirmed that the prices offered to Samsung Electronics were about 2 to 3% lower than the market prices.  The meeting participants were Mr. Ra and 3 others from Samsung Display Devices and Chieng-wien Lin and 2 others from Chunghwa Picture Tubes. This can be confirmed in Chunghwa Picture Tube's "Visiting Report."

> When CPT asserted that the current 14"/15" CDT prices of SDD are 58.00/pc and USD 84.00/pc respectively based on reliable evidences obtained from customers, Mr. Ra responded that his company's lowest 14" CDT price was USD 59.00/pc.  CPT pointed out that when Director Liu had visited SDD in July, Mr. Ha had promised to staunchly defend the minimum price of USD 60.00/pc.  He continued that even if it was necessary to adjust the lower price due to the changes in the market situation, SDD had to notify CPT about that for CPT to review the price.
> In regard to the fact that the 15" CDT price is USD 84.00/pc, Mr. Ha strongly denied that his company had never offered such a price.  Mr. Ha said that that price was only the price demanded by Light-on and further stated that SDD had not acquiesced to the company's demand.        (Evidence Sogap 3-38)

> President Lin requested Mr. Ra to provide him with the prices used for internal transactions. However, Mr. Ra just said that the prices are about 2 to 3% lower than the market prices.
>
> (Evidence Sogap 3-38)

The multi-party meeting on October 9, 1997

86      In order to find out whether the excess supply of specific CDT products exerted any downward pressure on the prices, the defendants exchanged information on the production volume of each of the production lines located across the globe and information on the line conversion plans.

Also, the participants agreed to differentiate between major customers and small-scale customers in terms of price and confirmed that there would be no additional price decreases per the decision of the top management.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

The minimum 14″ price is USD 58.00/pc.  If possible, the price should be increased to about USD 1-2/pc.  However, the price increase should be determined based on the price difference with the 15″ CDT.  Mr. Lin of PH said that although their minimum 14″/15″ CDT prices are USD 57.00/79.00, the top management had already decided not to decrease the 14″/15″ CDT prices further.  Also, he said that the 14″ CDT price would be adjusted to at least USD 58.00/pc.
For the 3 manufacturers, the minimum 15″ prices are USD 78-80/pc.  SDD asserted that it wants to maintain the minimum price at USD 80.00/pc.  …  Also, they will not decrease the price further.
17″ CDT sales prices:  The minimum PH price is USD 170.00/pc and the minimum SDD price is USD 175.00/pc.
(Evidence Sogap 3-39)

The two-party meeting on October 20, 1997

87      This meeting was a two-party meeting in which the CEO from each company participated. During the meeting, the two companies agreed on the principles of refraining from competition through more close cooperation to prevent price decreases and controlling the production level to maximize profit.  In order to carry out the above principles, the two companies agreed at the working level to work closely, including notifying to customers uniformly.  In order to refrain from price competition in the 14″ and 15″ CDT product categories and to reach price agreements, CEO Sohn, Mr. Kim, Mr. Ha, and others from Samsung Display Devices and CEO Chieng-wien Lin, Chi-Chun Liu, Shen-jen Yang, and Ching-wien Du from Chunghwa Picture Tubes participated.  This can be confirmed in Chunghwa Picture Tube's "Visiting Report."

President Lin emphasized that it was a good opportunity for all the companies to stop decreasing their prices.
The CDT manufacturers need to send the message to product suppliers and monitor manufacturers that the CDT manufacturers do not have the ability to decrease the prices any longer and that in order to stabilize the price level the CDT manufacturers will not decrease the prices next year.
It is more advisable to all the companies to cooperate to control the production volume rather than decreasing our prices and engaging in cut-throat competition.  In order to pursue more healthy had profitable business, we have to maintain the prices.
In order to strengthen communication, the companies should visit other companies more frequently. Thanks to President Lin's extensive explanations about the fact that there is no way to increase customer demand by engaging in price competition and about the fact that it would be more profitable for both companies to cooperate, CEO Sohn of SDD agreed on the spot to strongly defend the price floor.  Also, he asked everyone to communicate more and to cooperate wholeheartedly.
(Evidence sogap 3-40)

The multi-party meeting on October 30, 1997

88      Chunghwa Picture Tubes invited Samsung Display Devices and Philips in order to jointly check Hitachi, which was decreasing product prices, and to carry out the price agreements effectively. Specifically, the defendants agreed to adjust prices before offering estimates to customers and reconfirmed their intention to maintain the minimum price of 58 dollars for the 14″ CDT and the minimum price of 75 dollars for the 15″ CDT, which had been agreed in the previous meeting.  The meeting participants were Mr. Ha and Mr. Lee from Samsung Display Devices and Chi-Chun Liu, Shen-jen Yang, and Ching-Wien of Chunghwa Picture Tubes.  This can be confirmed by Chunghwa Picture Tube's "Customer Contact Report."

> In order to strengthen mutual trust to "maintain the prices" and to understand other companies' thoughts and methods, CPT invited PH/SDD to the meeting held at SDD Taipei.
> CPT requested SDD to review prices with CPT and use CPT to price as the reference price before offering any prices to small and medium customers.                   (Evidence Sogap 3-41)

> SDD believes that in order to ensure the current minimum 14″ CDT price, the price of the 15″ MPRII should not drop below USD 75.00/pc.
> They will adhere to the minimum (14″) price of USD 58.00/pc.                    (Evidence Sogap 3-41)

The multi-party meeting on November 21, 1997

89      This meeting was held in order for the companies to confirm the market rumors and then to agree on the next month sales prices and to jointly notify the customers that the prices would increase due to the supply shortage.  First, the defendants contacted frequently amongst themselves to agree to check the sales prices in advance.  Then, they agreed to maintain the price of the 14″ CDT at 58 dollars, further agreeing to notify the customers of supply shortages.  According to the data that shows the CDT manufacturers' production plans, although 24 production lines were planned to be operated, the companies agreed to prevent the sales prices from falling by notifying the customers that only 21.5 lines were in operation.

> Regarding the rumor surrounding the current price decisions, the participants agreed to contact frequently and to check all areas to make sure to prevent being cheated by the customers.
> All the manufacturers agreed to maintain the 14″ price at 58.00 dollars/unit.
>                                                                         (Evidence Sogap 3-43)

> CPT: 5 lines (Should be 5.5 lines).          SDD: 4 lines
> PH: 2 lines (Should be 3 lines)           Orion: 1 line
> LG: 2 lines (There is 0.5 line at US Zenith and will operate a line in July of '98 in Great Britain.)
> HEDS: 2 lines    Toshiba: 2 lines    MEC: 1 line
> Sony: 2 lines      NEC: 0.5 line (TECO's 0.5 line will be added)
> Total: 21.5 lines (Actually should be 24 lines)         (Evidence Sogap 3-43)

> All manufacturers <u>agreed to announce to the monitor manufacturers to that there would be a supply shortage for 14"/15" next year to maintain the price level.</u>
> We should be able to notify the customers that the supply will be tight to prevent the prices from automatically dropping.        (Evidence Sogap 3-43)

90     In order to agree on the CDT prices to be applied in December of the same year, the directors and employees[8] of Samsung Display Devices, LG Electronics, Philips, and Chunghwa Picture Tubes participated.  The participants were Mr. Ha of the Taiwan subsidiary of Samsung Display Devices, Mr. Park and Mr. M. M. Park of LG Electronics, Siuri Lin of Philips, and Chi-Chun Liu, Shen-jen Yang, and Ching-wien Du of Chunghwa Picture Tubes.  This can be confirmed by Chunghwa Picture Tube's "Customer Contact Report."

(4) The meetings held by the competitors in 1998

&lt;Table 20&gt;         The summary of the CDT Cartel Meetings in 1998

| Year | Date held | Agreement details | Participants | Evidences |
|---|---|---|---|---|
| 1 | 1.5. 1998 | Maintain the 14"-15" CDT price difference | Chunghwa, SDI | Evidence Sogap 3-44, page 843 of the review report |
| 2 | 1.14. 1998 | Minimum prices (14": $58, 15": $73~74). Establish an audit system | Chunghwa, SDI/Chunghwa, Toshiba | Evidence Sogap 3-45 Page 852 and page 861 of the review report |
| 3 | 1.19. 1998 | Increase the 17" CDT prices | Chunghwa, Matsushita | Evidence Sogap 3-47 Page 870 of the review report |
| 4 | 3.4. 1998 | Decrease production / Minimum prices (14": $53.15, 15": $65) | Chunghwa, LG/Chunghwa, SDI, Philips, Orion | Evidence Sogap 3-48~9 Page 879 and page 891 of the review report |
| 5 | 3.25. 1998 | Amount of decrease ($0.5~1.0/pc), price stabilization | Chunghwa, SDI | Evidence Sogap 3-50 Pages 900~902 of the review report |
| 6 | 3.30. 1998 | Price guidelines (14": $50, 15": $63) | Chunghwa, SDI, LG, Orion | Evidence Sogap 3-51 Page 912 of the review report |
| 7 | 4.14. 1998 | Production reduction, price maintenance | Chunghwa, SDI | Evidence Sogap 3-52 Page 920 of the review report |

---

[26] Although the companies which participated in the cartel meeting are clear based on the evidence related to this meeting, some of the participants could not be identified, so no participant names were indicated for some of the participating companies as a result.

| 8 | 5. 18. 1998 | Sales prices (14″: $46, 15″ $56) | Chunghwa, Orion | Evidence Sogap 3-53 Page 928 and page 932 of the review report |
|---|---|---|---|---|
| 9 | 6. 1. 1998 | Production reduction, prevention of price drop | Chunghwa, SDI, Orion | Evidence Sogap 3-54 Pages 942–943 of the review report |
| 10 | 7. 9. 1998 | Confirmation of the intention to maintain the cooperative relationship | Chunghwa, LG | Evidence Sogap 3-55 Page 956 of the review report |
| 11 | 7. 18. 1998 | Termination of sales of B products, 1st and 2nd price increases, application of different prices for major customers and other customers, production reduction, implementation of the audit system to check adherence to agreements | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap 4-1, page 2738 Evidence Sogap 2-2, page 344 |
| 12 | 7. 31. 1998 | Reduce 17″ production by 25%, maintain the price of $93 | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap 4-2 Page 2741 of the review report |
| 13 | 8. 21. 1998 | Check whether the price increase agreement is being implemented, Check increases in price for products from SDD to SEC | Chunghwa, Hitachi | Evidence Sogap 3-56 Page 967 and page 969 of the review report |
| 14 | 9. 2. 1998 | Production reduction for 14″, 15″, and 17″ and price increase plans | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap 4-3 Page 2746 of the review report |
| 15 | 10. 9. 1998 | Number of production reduction days and measures to check implementation | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap 2-2, page 346 Evidence Sogap 4-5, page 2751 of the review report |
| 16 | 10. 20. 1998 | Sales prices (maintain the price of 14″, increase the price of 17″) | Chunghwa, "SDI, LG, Orion, Philips | Evidence Sogap 4-6, page 2760 of the review report |
| 17 | 11. 4. 1998 | Measures to check the implementation of production reduction | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap 4-7, page 2764 of the review report |
| 18 | 11. 23. 1998 | Maintain the current sales prices | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap 4-8, page 2767 of the review report |
| 19 | 11.28–29. 1998 | Increase the sales price of 17″ by $5 | Chunghwa, SDI, LG, Orion, Thai CRT | Evidence Sogap 4-9, page 2769 of the review report |

The meeting on January 5, 1998

91      During this meeting, the defendants continued to discuss about the necessity of maintaining the price difference between the 14″ CDT and the 15″ CDT.  The reason was that in the event that the price gap between the two products narrowed, the demand for 14″ CDT's would be transferred to the 15″ CDT, thereby reducing the profit level.  Also, in regard to the sales prices applied to Samsung Electronics, a Korean customer, Samsung Display Devices confirmed to Chunghwa Picture Tubes that Samsung Display Devices had never supplied Samsung Electronics the products at lower prices.  The meeting participants were Mr. Ha of Samsung Display Devices and another person from Samsung Display Devices and Chi-Chun Liu, Shen-jen Yang, and Ling-yun Cheng of Chunghwa Picture Tubes.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

> If the price difference between 14″ and 15″ narrows to USD 10.00 for SDD, inevitably substantial portion of the 14″ demand will shift to 15″.  Then, the entire market will actively push for change.
>
> (Evidence Sogap 3-44)

> Regarding the rumor that the Korean manufacturers started dumping their products at low prices due to the substantial depreciation of the Korean currency, SDD stated that the product orders were adequate and that <u>there was no need to hurriedly decrease the prices</u>.  <u>In the case of SEC, as a lot of CDTs are imported through TSB, the payments have to be made in dollars, so the import prices are still high.</u>  As a result, SEC could not substantially decrease the prices, and there was no statement that SEC was dumping its products.                                        (Evidence Sogap 3-44)

The two two-party meetings held on January 14, 1998

92      During this meeting, Mr. Lee of Samsung Display Devices inquired to Ling-yun Cheng about the possibility of a price drop due to the reduction in orders and Chunghwa Picture Tubes confirmed its intention to maintain the price level.  On the same day, Toshiba's Hamano, Oshima, and Yang-chang Lee and Chunghwa Picture Tube's Chieng-wien Lin and Ching-wien Du discussed about drawing up common guidelines for the CDT manufacturers and setting up an audit system.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

> Assistant Vice-president Lee expressed his concern about price decreases due to the decrease in orders for CPT [Chunghwa Picture Tube]'s 14″ products.  I answered that we were not taking any actions to reduce the <u>price of the 14″ CDT</u> and that we would <u>maintain the minimum price at USD 58.</u> I hope that both sides will be able to reach an agreement.  We <u>plan</u> to reduce the <u>price of 15″ from</u> USD 74~74 to USD 73~74.                                        (Evidence Sogap 3-45)

> For such a reason, he proposed to <u>organize an international CDT industry association</u> during this visit. <u>The member companies had to maintain representatives in Korea, Japan, and Taiwan in order to meet in the above meeting, to prepare common guidelines appropriate for the circumstances, and to prepare an audit system to audit</u> the actual activities of each member.
>
>                                                        (Evidence Sogap 3-46)

The two-party meeting on January 19, 1998

93      During this meeting, the defendants confirmed that except for Hitachi, the CDT manufacturers had increased the 17″ CDT prices starting January 16 of the same year in accordance with the previous agreement.  Also, Chunghwa Picture Tubes confirmed that in the event that other CDT manufacturers agree to increase their prices by the same level as the Japanese products, the company would follow suit.  During this meeting, He-wi Ahn and 2 others from Matsushita and Chi-Chun Liu and Sheng-jen of Chunghwa Picture Tubes participated.  This can be confirmed in Chunghwa Picture Tube's "Visiting Report."

> Even if some companies mess around, if the demand is still strong, such actions will not impact the overall situation.  Except for Hitachi Singapore, which was acting independently, all the manufacturers in Japan, Korea, and China increased their 17″ prices at this time.
> If the conclusion reached by all the companies is CF Med (confirmed), CPT will definitely follow this.
>
> (Evidence Sogap 3-37)

The two-party meeting and the multi-party meeting held on March 4, 1998

94      During this meeting, the defendants agreed to control production and inspect the details of the agreements in order to improve the market situation marked by excess supply and further agreed to hold more meetings in the future in order to check in advance uncertainties related to the prices.  In order to discuss on stabilizing the CDT prices, Mr. Cho and 4 others from LG Electronics and Chi-Chun Liu and 2 others from Chunghwa Picture Tubes participated.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

> It was stated that the current CDT business was very difficult, the excess supply in the overall market was serious, and that the price decrease issue had to be strictly resolved based on production control by all the companies. (... It was explained that the agreed production control would not be effective without strict supervision.)
> Mr. Cho said that he wanted to contact frequently and exchange information and stated that any rumors in the market could be mutually confirmed.
>
> (Evidence Sogap 3-48)

95      On the same day, Mr. Ra and 3 others from Samsung Display Devices, Jung Lin of Philips, Mr. Moon of Orion, and Shen-jen Yang and 2 others from Chunghwa Picture Tubes held a multi-party meeting to agree on the CDT prices.  The defendants checked the customer demands and the market supply and demand situation, and then discussed about the sales prices of the 14″, 15″, and 17″ CDT's to be applied jointly.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

> Mr. Ra said that he wanted the participants to use the following prices as the minimum prices for the 14″/15″ CDT's.
> 14″ – USD 53.0/pc                          15″ – 65.0/pc
> Mr. Ra wanted SDD and LG to maintain the USD 130.0/pc level.          (Evidence Sogap 3-49)

The two-party meeting on March 25, 1998

96      Chunghwa Picture Tubes worried about the strong downward pressure on the CDT prices from the Taiwanese monitor manufacturers as a result of the enhanced price competitiveness of the Korean monitor manufacturers due to the depreciation of the Korean currency.  During this meeting, Mr. Ra of Samsung Display Devices proposed that all the CDT manufacturers should jointly endeavor to reduce the price decrease.

Chunghwa Picture Tubes expressed that the company wanted Samsung Display Devices to transfer some of the supplies sold to Samsung Electronics to Chunghwa Picture Tubes and discussed about such a possibility.  From this, we can see that the share of sales to Samsung Electronics by Samsung Display Devices depended on the market situation and the supply prices and that the purpose of the adjustment of order quantities among the competitors was to avoid competition, thereby avoiding decreases in prices.

97      Lastly, the defendants agreed to hold a top level meeting between the two companies with the CEO from each company present and to hold a multi-party working level meeting including the participants from the two companies, Philips, and LG Electronics, on March 30 of the same year. Samsung SDD's Mr. Ra and another person and Chunghwa Picture Tube's Chi-Chun Liu, Shang-jen Yang, and Ching-wien Du participated in this meeting in order to discuss about how the CDT manufacturers could carry out joint actions effectively.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

> Due to the enhanced competitiveness of the Korean monitor producers as a result of the depreciation of the Korean won...   The Taiwanese producers will exert pressure to reduce the price level to USD 60.0/pc in order to maintain competitiveness against the Korean companies.
> Mr. Ra said that he wanted all the companies to cooperate to limit the price decrease to about USD 0.5~1.0 in order to prevent the business situation from deteriorating further.
>
> (Evidence Sogap 3-50)

> Director Liu said that if SDD could transfer 5% of the orders (transfer orders from SEC), in other word, (namely, SDD's production utilization rate decreases to about 75%), CPT could provide supplies at better prices.  He continued that if the CPT production line utilization rate continued this way, the need to compete for orders would subside in the current market.  Also, he said that this would contribute to the stabilization of the price level.
>
> (Evidence Sogap 3-50)

> CEO Sohn of SDD plans to visit Taiwan in mid-April.  I hope that there will be an opportunity to exchange opinions with CEO Lin regarding the market information and industry situation.
> Also, the working level employees of PH/LG/CPT/SDD were invited to SDD's Taipei office on March 30, '98 at 2:00 PM to exchange information on the market situation and on the price information.  I hope that a consensus will be reached regarding the price level.          (Evidence Sogap 3-50)

The multi-party meeting on March 30, 1998

98      The purpose of this meeting was to exchange information on the CDT prices in order to refrain from engaging in CDT price competition.  During this meeting, the participants agreed that the price differences between Chunghwa Picture Tubes and other participants for the 15″ CDT and the 14″ CDT should be adjusted to 2 dollars and 3 dollars, respectively.  Also, the participants discussed about setting the minimum price of the 14″ CDT at 50 dollars and the minimum price of the 15″ CDT at 63 dollars.

The four companies including Samsung Display Devices, LG Electronics, Orion, and Chunghwa Picture Tubes held this meeting in the Samsung Display Devices meeting room in Taiwan.  During this meeting, the companies agreed on the prices of the CDT products.  The participants from each company were Mr. Ra, Mr. Ha, and another person from Samsung SDD's Taiwanese subsidiary company, Mr. Lim and another person from LG Electronics' Taiwanese subsidiary company, Mr. Moon of Orion, and Shen-jen Yang and another person from Chunghwa Picture Tubes.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

---

In order to prepare <u>April price guidelines to prevent the CDT prices from decreasing exorbitantly due to excessive price competitio</u>n, the people from CPT/PH/LG/Orion and other related people were invited.

CPT's proposal to <u>adjust the price difference to USD 2.00/USD 3.00 to reduce 14"/15"</u> was welcomed by everyone.  SDD also promised to follow this action.  Mr. Ha said that SDD wanted to maintain the <u>April 14" price level above USD 50.00/pc</u> and the <u>April 15" price level above 63.0/pc.</u>

(Evidence Sogap 3-15)

---

The two-party meeting on April 14, 1998

99    This top level meeting was held in Taiwan with Representative Director Sohn from Samsung SDD's headquarters office, Mr. Ra, the head of the Taiwanese subsidiary company, and 4 others and Representative Director Chieng-wien Lin and 4 others participating in order to reconfirm the principle of agreeing on the CDT prices and to strengthen cooperation.  During the meeting, the two companies' representative directors agreed to maintain the price level by reducing the production level as follows.  Also, from the information contained in the evidential materials, we can see that on Saturday of April 14 of 1998 when this meeting was held, the Korean CDT manufacturers LG Electronics and Orion agreed to hold a multi-party meeting in Korea to agree on the prices.  Also, according to the statement made by Mr. Ra of Samsung Display Devices, we can see that the Taiwanese subsidiary company of Samsung Display Devices was carrying out the agreements reached with the competitors in accordance with the directives of the headquarters office.  This can be confirmed in the "Visiting Report" indicated as "confidential" prepared by one of the participants from Chunghwa Picture Tubes.

---

<u>If the CDT manufacturers cooperate to reduce the utilization rate to adjust to the market demand</u> during the offseason, maintaining the price level will not be difficult.  However, if all the companies increase the utilization rate, some companies will no longer be able to exist.  Also, price wars will not be avoided.

(Evidence Sogap 3-52)

---

CEO Sohn said that he would invite LG and Orion this Saturday in order to find ways to maintain the identical CDT price for everyone's benefit by discussing about the current market situation.

(Evidence Sogap 3-52)

---

Also, <u>President Ra said that he had been dispatched to Taiwan in order to do his best to maintain the price level.</u>  He wanted to have a dinner meeting with President Lin every month in order to discuss about the market situation and to exchange opinions.

(Evidence Sogap 3-52)

The two-party meeting on May 18, 1998

100     During this meeting, Chunghwa Picture Tubes, Philips, and Samsung Display Devices agreed to set the sales price of the 14″ CDT at 46 dollars and the sales price of the 15″CDT at 56 dollars, as they had discussed on the previous Tuesday.  Also, the defendants confirmed to adhere to the agreements and to draw up a system to check adherence to the agreements.  The meeting participants were Mr. Moon and Mr. Kang of Orion and Chi-Chun Liu, Shen-jen Yang, and Ching-wien Du of Chunghwa Picture Tubes.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

> Director Liu explained that based on the results of the meeting held between President Lin of CPT, Mr. David Zhang of PH, and Mr. Ra of SDD, there would be <u>no price decreases for the 14″/15″ CDT's and the May prices would be strictly maintained as follows: 14″ MPRII: USD 46.0/pc, 15″ MPRII: USD 56.0/pc </u>(If any special prices were offered to the major customers, such prices have to be maintained, but no further price decreases should be allowed.)                                    (Evidence Sogap 3-53)

> Therefore, <u>everyone should be faithful in maintaining the prices</u>.  If we hear from the customers that SDD and PH are competing in price in secret in violation of the resolution, this information should be provided to CPT.  Then, CPT will appeal to SDD and PH.                                    (Evidence Sogap 3-53)

The multi-party meeting on June 1, 1998

101     The sales directors and employees from the 4 companies who participated in this meeting agreed to reduce production as follows in order to jointly maintain the CDT prices, which were falling due to the reduction in market size. On Saturday of the previous week, the Korean CDT manufacturers had held a meeting to agree on prices, had planned to discuss further on production cutbacks, and had planned to meet with Mr. Kim of Samsung Display Devices, Chunghwa Picture Tubes, and Philips on June 3 and June 8 to inform them of the details of the agreements.  The meeting participants were Mr. Ra, Mr. Ha, and another person from Samsung SDD's Taiwanese subsidiary company, Mr. Moon and another person from Orion, and Chi-Chun Liu and 2 other people from Chunghwa Picture Tubes.  This can be confirmed in Chunghwa Picture Tube's "Customer Contact Report."

> In order to solve the current situation in which the CDT prices are continuing to drop, all the manufacturers have to not only maintain their prices but also <u>reduce the production level to change the market situation characterized by excess supply to allow the prices to rebound.</u>
> Also, Mr. Ha of SDD and Mr. Moon of Orion believe that the only way to succeed is for the top management to start to decide on <u>additional cooperative measures</u> to reduce production to <u>change the supply and demand situation</u> regardless of the utilization rate (different from the current situation in which production naturally decreases due to the slow market)                 (Evidence Sogap 3-54)

> Last Saturday, <u>SDD, LG, Orion, and other manufacturers held a meeting and have already reached a</u> <u>common understanding regarding the price guidelines.</u>  Today (June 1, 1998), the companies will have a meeting at 2 to continue to reach agreements on production reduction.
> <u>SDD's Mr. Lin Kim</u> (top business unit director) will visit Taiwan on June 2, 1998 and will meet directly with <u>Mr. Lin on June 3 and with Mr. David Jang of PH on June 8 to explain about the resolution and to</u> <u>discuss about it.</u>                                                                        (Evidence Sogap 3-54)

The two-party meeting on July 9, 1998

102      According to Chunghwa Picture Tube's Customer Contact Report below, we can see that 15″ and 17″ products started to become major products instead of 14″ and 15″ products.  Also, while the Japanese manufacturers were cutting back their production, Chunghwa Picture Tubes, Samsung Display Devices, LG Electronics, and Philips confirmed with each other that they could jointly influence the market prices, agreeing to check each other in order to prevent any of the four companies from breaching the details of the agreements.

> <u>The other companies that can impact the market are CPT, PH, SDD, and LG.</u>  As long as these 4 manufacturers cooperate on the price policy, we will be able to lead the market.
> He wanted to be able to communicate with L″G employees fact to face in the future.  If <u>LG heard the</u> <u>rumor that CPT is offering low prices, you can ask CPT to confirm the rumor.</u>  If a close cooperative relationship can be formed, they will be able to lead CPT in the right business direction to ensure profitability.                                                                        (Evidence Sogap 3-55)

The multi-party meeting on July 18, 1998

103      This meeting was a multi-party meeting held by the sales directors and employees of Samsung Display Devices, Chunghwa Picture Tubes, LG Electronics, Philips, and Orion in order to agree on the CDT prices in Korea.  According to the report prepared by Mr. Lee of Samsung Display Devices titled "The Results of the 7th (July 18) CDT Industry Meeting" and inferring from the statements made by the participants, the following can be confirmed.

> Sales of B products that can distort the market prices should be stopped.
> The prices should be increased for all customers starting August 1 of the same year.
> The 2nd price increase should be implemented within October of the same year.
> Different prices should be applied for major customers and other customers.
> Production should be cut back
> The details of the agreements should be provided to the Japanese companies
> A system to check whether the companies are implementing the agreement should start (production volume: once a month, price: once a week)                                                (Evidence Sogap 4-1)

Answer 19) "Sales stop of class B" among the agreement is below 1% in the output, but sales are to be stopped because, in the case that the goods of class B are to be distributed in the market as honest goods, it has an adverse effect on the overall market price. The agreement that does not acknowledge "Buffer Period" means that it was agreed to increase the price immediately because the company that implemented the price increase first can be damaged in the case that puts a grace period by customers after the agreement on a price increase is obtained.

Additionally, we had come to an agreement to review the second price increase around Oct., and I remember that actually at the time after the agreement the price was increased. We had come to an agreement "to apply Bottom price that is already agreed to main customers and to apply the increased price of 1~2 dollar with comparison to Bottom price to the other customers," and this means an agreement that applies the bottom price (the minimum agreed price) to main customers to which a lot of quantity is supplied but applies a slightly higher price with comparison to the bottom price to the customers that are not main customers to their own. ...

Looking the information that estimated the demand/supply of third quarter in 1998, the total supply quantity of five companies that were participated in the meeting of cartel was 3,920K and the total supply quantity of Japanese companies was 3,500K, and we had underwent a process that reduce and adjust by the five(5) companies that participated in the meeting of cartel in order to meeting the remaining demand quantity after deducting the supply quantity part of Japanese companies after estimating the total demand quantity in order to adjust the supply quantity jointly. (Evidence Sogap Number 2-2)

□ Multi-party meeting on July 31, 1998

104    This meeting is a multi-party meeting for the price increase agreement of CDT that is conducted in the office of Philips Taiwan as agreed in the previous meeting by the executives and staff in charge of CDT sales of Samsung Display Devices, Chunghwa Picture Tubes, LG Electronics, Philips, Orion, and according to "the result report of 8th (July 31) meeting of CDT business circles" made by ** Lee of Samsung Display Devices, who participated in the time of meeting, the fact of agreement to the following is confirmed.

Agreement of reducing the production of 17″ CDT: 25% is reduced during third quarter, 1998
Maintaining the price of 17″ as 93 dollars
Price is increased to the case that the shipping is also delayed without exception
Prohibition of class B sales                    (Evidence Sogap Number 4-2)

105    Additionally, it is a fact that the defendants compared the production ability, production plan, size of reducing production by each company by making the following table and came to an agreement pertaining to the reduction of output. This is applied to the act that reduces the output of each company artificially by adjusting to the CDT demand in order to prevent price decrease because of an oversupply. According to the following 17″ CDT reduction agreement, it is possible to know that the production ability (capability) of five companies in the third quarter 1998 was 5.4 million unit but the real production was adjusted to 3.7million unit, and they have come to an agreement to hold a meeting of hands-on staff class, respectively, in Taiwan on Sept. 2 and in Seoul on Sept. 20 of the same year.

|  | CAPA | Original Production Plan | Reduce Production | Production Plan (Unit: 1,000) |
|---|---|---|---|---|
| SDD | 1,800 | 1,500 | △60 | 1,440 |
| LG | 1,830 | 800 | △30 | 770 |
| Orion | 100 | 10 | - | 10 |
| Chunghwa | 900 | 810 | △30 | 780 |
| Philips | 840 | 800 | △30 | 770 |
| Total sum | 5,470 | 3,920 | △150 | 3,770 |

□ Two-party meeting on Aug. 21, 1998

106  In the two-party meeting between Hitachi and Chunghwa Picture Tubes, Liu of Chunghwa Picture Tubes had confirmed that the CDT manufacturers of China and Korea had succeeded in a price increase (as in following) according to the previous agreement, and indicated that there was a plan to increase the price again around October of the same year.

> Director Liu confirmed that the manufacturers of China and Korea had adjusted the price from the first quarter to Aug. successfully, as in the following.
>
> 14" MPRE      USD 50.0
> 15" MPRE      USD 60.0
> 17" MPRE      USD 93.0
>  TCD          USD 96.0
>
> Additionally, there is an intention to increase the price again in October due to market development and because the current price is barely maintained with the level of price that does not incur a loss. (These can decide the range of price increase in late August or early September.)
>
> (Evidence Sogap Number 3-56)

107      The fact of a mutual confirmation as to whether or not Samsung Display Devices had increased the price targeting Samsung Electronics as the agreement is confirmed from the written contents of "(3) the other" clause of customer contact report of Chunghwa Picture Tubes, and consequently it is possible to know that Samsung Electronics is included as one of the objectives to the implementation of the agreed contents among the CDT manufacturers.

> Therefore, he has a question as to whether or not SDD had already increased the SEC price. Mr. Jang said the main concern that he is considering is that Taiwanese manufacturers do not have the largest loss because of a small action of Korean manufacturers after this one-time CDT price increase. Based on several meetings, Director Liu explained that the position of SDD regarding the price increase is very strong. Additionally, he said that he would raise an objection and request to confirm to SDD about the matter of the increase in the SEC price. Both of the parties agreed to pay attention to the deployment of the market situation and to maintain information exchange. (Evidence Sogap Number 3-56)

□ Multi-party meeting on Sept. 2, 1998

108  In this meeting, the defendants, in the same year, agreed to the reduction plan of fourth-quarter output and confirmed it by making the quantity of reduction by each company with the following table. It is a fact that it was to be carried out from November of the same year. Also, the participants agreed to maintain the price of 14″ with 52 dollars, which was increased by three dollars, the price of 15″ with 65 dollars for an increase of five dollars, and maintain the price of 17″ with the same price from Oct. 1, 1998 after grasping the information of increase request by each company with relevance to the price-increase plan by the standard. This meeting was held in Taiwan by the executives and staff in charge of sales and marketing of five CDT manufacturers such as Samsung Display Devices, Chunghwa Picture Tubes, LG Electronics, Philips, Orion, etc. This is confirmed by the "Record of meeting result (Sept. 2, 1998)" of * * Lee, Samsung Display Devices.

| <Capacity Reduction of Q4> | | Original | Adjustment | Balance | Remarks |
|---|---|---|---|---|---|
| 14″ | LG | 250 | 200 | 50 | |
| | Philips | 420 | 370 | 50 | |
| | Chunghwa | 1450 | 1420 | 30 | |
| | SDD | 1090 | 1060 | 30 | ☞Japanese companies also need to reduce their Capacity of 17″ Reduction Q'ty ≒ 200K/4Q |
| | Total | 3210 | 3050 | 160 | |
| 17″ | LG | 1440 | 1360 | 80 | |
| | Philips | 750 | 710 | 40 | ☞The capacity reduction start from Nov. 1998 |
| | Chunghwa | 1210 | 1140 | 70 | |
| | SDD | 1710 | 1620 | 90 | |
| | | 105 | 105 | 0 | |
| | Total | 5215 | 4935 | 280 | |

| <Price Increasing System> | Original Request | | | Agreement |
|---|---|---|---|---|
| | 14″ | 15″ | 17″ | |
| CPT | 5 | 6~7 | 4 | ☞Agreement 14″: 3USD↑ = 52USD |
| Orion | 2~3 | 5 | Follow | 15″: 5USD↑ = 65USD |
| Samsung | Zero | 5 | Zero | 17″: "Zero" |
| Philips | Follow | 5 | ? | From Oct. 1, 1998 |
| LG | Follow | 6~7 | ? | |

□ Multi-party meeting on Oct. 9, 1998

109     The defendants confirmed the success or failure of the second price increase that was agreed in the previous meeting, and they discussed the reduction scenario that Philips had prepared as the center. This imparted a strong signal about the price increase to customers, specifically through the easy implementation and establishment of the reduction plan, that monitoring is possible and that the reduction and composition of sales product is decided by each company, while the price guideline should be kept.

Additionally, it was agreed that 1) the part of excess supply should be the target of reduction after comparing demand/supply, 2) adjust the days of operation with a reduction method but to reduce five days in the total CDT plants, including overseas plants, on Dec. 1998, and seven days on Jan. and Feb., 1999 with relevance to the reduction scenario. This made it possible to confirm whether or not to carry out the agreement by making up the monitoring team to comprise several regions, including Korea.

---

Answer 23) In the same meeting they shared the reduction background and reduction scenario for the reduction agreement, and agreed to stop the operation days of the total CDT plants, including overseas plant, for five days in Dec. 1998 and to stop seven days in Jan. and Feb. 1999. Additionally, it was agreed to make up a monitoring team by region and to submit a reduction plan for the effective carrying out.                                                    (Evidence Sogap Number 2-2)

---

    1)   Reduction background
□ Easy Implement G Monitoring
□ Sending Strong Signal
□ Start Exercise G Fine by Each Company
□ Product Mix Manage by Each Company
However, Price Guideline Stick Follow                                  (Evidence Sogap Number 4-5)

---

    2)   Reduction scenario
□ Reduce the part of excess supply by comparison of demand/supply
□ Reduce by adjusting the operation days
□ Dec. 1998: Reduction for five days (total CDT plant, including overseas plant)
□ Two months of Jan. and June, 1999: Reduction for seven days
3) Action item
□ Make-up of Monitoring Team by region (Korea, Taiwan, Malaysia, China, England, Austria, Mexico)
                                                                       (Evidence Sogap Number 4-5)

---

110      Executives and staff in charge of sales and marketing of five CDT manufacturers such as Samsung Display Devices, Chunghwa Picture Tubes, LG Electronics, Philips, Orion, etc., participated in the meeting. This is confirmed by "the data of meeting result of CDT business circles" made by * * Lee of Samsung Display Devices.

□ Multi-party meeting on Oct. 20, 1998

111      In this meeting, the executives and staff in charge of sales and marketing of five CDT manufacturers such as Samsung Display Devices, Chunghwa Picture Tubes, LG Electronics, Philips, Orion, etc. held a multi-party meeting in Taiwan and agreed to the output reduction of CDT product and sales-price increase. According to the data of "meeting result of CDT business circles (Oct. 20)" that is made by * * Lee of Samsung Display Devices, with relevance to the sales price, the defendants agreed to maintain the price of 14", and to increase the price of 17" by going along with the five companies when Japanese company increases, and it is possible to know that Samsung Display Devices was to deliver the meeting result to Matsushita.

2. Agreement
1) Price increase of 14″: ☞The price of 14″ CDT shall be maintained as the present (52$)
2) Opinion to the Japan's price increase of 17″: If Japan increases the price first, the price shall be increased by going along with the five companies. The opinion of five companies shall be delivered by Samsung (to Matsushita).
3) Indication of the price in 1999 (the first half): ☞The price of the first half of 1999 shall be maintained as the present price.

(Evidence Sogap Number 4-6)

□ Multi-party meeting on Nov. 4, 1998

112   This meeting is a multi-party meeting that was held in Taiwan by the executives and staff in charge of sales and marketing of five CDT manufacturers such as Samsung Display Devices, Chunghwa Picture Tubes, LG Electronics, Philips, Orion, etc., and confirmed CDT reduction plan that was agreed in the previous meeting and whether or not of carrying out of mutual checking system again, and there is a fact that exchanged the sales price information. According to the data of business diary that * * Lee of Samsung Display Devices made the meeting result with memoirs, the fact that it was agreed to make up a monitoring team comprising several regions, including Korea, and to carry it out was confirmed in the meeting.

● ACTION (Regional monitoring team -> Malaysia, Mexico, Austria nk, China, tail***, Korea -set up monitoring team, to do it the implementation

(Evidence Sogap Number 4-7)

□ Multi-party meeting on Nov. 23, 1998

113   There is a fact that the executives and staff in charge of sales and marketing of five CDT manufacturers such as Samsung Display Devices, Chunghwa Picture Tubes, LG Electronics, Philips, Orion, etc. held multi-party meeting in Taiwan and discussed about the present condition and sales price of each company. According to the e-mail data that an employee of Samsung Display Devices who participated in the meeting at the time sent the report of meeting result, it is a report of Taiwanese cartel meeting result, and it is possible to know the fact that reported the CDT meeting result that was held in Taiwan and a fact to maintain the present price until adjustment by the top-level meeting.

The following is the report of meeting result of five CDT companies that was held in Taiwan on Nov. 23. "In general, we are in a very difficult situation because the sales quantity of 14″ has been rapidly reduced, but the situation will not improve with the decrease of price. Therefore, the current price shall be kept until there will be a separate adjustment by the top-level meeting, even though the situation is difficult."

(Evidence Sogap Number 4-8)

□ Multi-party meeting on Nov. 28~29, 1998

114    In this meeting, the executives and staff in charge of sales and marketing of five CDT manufacturers, namely Samsung Display Devices, Chunghwa Picture Tubes, LG Electronics, Philips, Orion etc. held a multi-party meeting in Korea for the agreement of CDT price increase, and according to the data of "CDT business circles meeting result (Nov. 28, 29)" that * * Lee of Samsung Display Devices, who participated in the meeting, personally made up for the internal report, it is possible to know there was an agreement that the defendants were to hold a top-level meeting once per quarter and were to held the next management level meeting in Taiwan on Jan. 20, 1999 and were to increase five dollars following Japanese business circles with relevance to the price of 17″ CDT, and were to establish the reduction plan of the first quarter of 1999.

> Top-level meeting: One time per quarter, the next top-level meeting: Early Mar. Chunghwa (Malaysia)
> The next management meeting: Jan. 20 (Taiwan)
> Case of 17 inch price increase
> Agreement: The five companies are to increase 5$ within one month in the case that the Japanese companies increase the price as of Dec. 1, 1998.
>     The five companies also discussed again to increase the price within one month but within 5$ on the premise of the increase by the Japanese companies.
> At the time of top-level meeting, not only 14″ but also the reduction plan for the first quarter of 1999 should be established through information exchange to demand/capa/real production of first quarter of 1999, and to be operated as a practical meeting through the attendance of staff in charge.
>                                                                  (Evidence Sogap Number 4-9)

(5) Meeting among competitors, 1999

<Table 21>    Outline of CDT cartel meeting during the period of 1999

| Serial Number | Date of opening | Agreement | Attended company | Evidence data |
|---|---|---|---|---|
| 1 | Jan. 13, 1999 | Increase of 17″ price and time(Jan. 16) | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap Number 3-58 p.983 of evaluation report |
| 2 | Jan. 18, 1999 | Confirm the success of 17″ price increase, reduction of output, the minimum price of 19″ ($185), maintaining the gap of sales price ($10) among defendants | Chunghwa, SDI, LG, Orion, Philips | p.347 of Evidence Sogap Number 2-2 p. 1002, p. 1006 of Evidence Sogap Number 3-59 Evidence Sogap Number 4-10 p. 2773~5 of evaluation report |
| 3 | Feb. 10, 1999 | Include 19″ in the object of agreement, output reduction | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap Number 3-60 p. 1023, p. 1027 of evaluation report |
| 4 | Mar. 1, 1999 | Output reduction, keeping confidential | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap Number 3-61 p. 1045, p. 1047, p. 1056 of evaluation report |
| 5 | Mar. 5~6, 1999 | Days operated (25 days operated), increase the price of 17″ $5 | Chunghwa, SDI, LG, Orion, Philips | p.348 of Evidence Sogap Number 2-2 Evidence Sogap Number 4-10-1 p. 2777 of evaluation report |
| 6 | Mar. 15, 1999 | Increase the price of 17″, plan of operation stop | Chunghwa, SDI, LG, Orion, Philips | p.348 of Evidence Sogap Number 2-2 Evidence Sogap Number 3-63 p. 1103~4 of evaluation report Evidence Sogap Number 4-11 |

| 7 | Apr. 10, 1999 | Monitoring plan of refraining from selling with low price, production reduction | Chunghwa, SDI, Philips | Evidence Sogap Number 4-12<br>p. 1781 of evaluation report |
|---|---|---|---|---|
| 8 | Apr. 14, 1999 | Sales price (17": $98, 19": $185),<br>Days of operating plant | Chunghwa, SDI, LG, Orion, Philips | p.349 of Evidence Sogap Number 2-2<br>p. 1118 of Evidence Sogap Number 3-64<br>Evidence Sogap Number 4-14<br>p. 2794 of evaluation report |
| 9 | Apr. 28, 1999 | Plan of operation stop | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap Number 4-15<br>p. 2803 of evaluation report |
| 10 | May 12, 1999 | Sales price, plan of production reduction | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap Number 3-65<br>Evidence Sogap Number 4-16 |
| 11 | June 23, 1999 | Sales price (15": $5 increase, 17": $95, 19": $170), plan of operation stop | Chunghwa, SDI, LG, Orion, Philips<br>(Top-level meeting) | p. 1149, p. 1156, p. 1160 of Evidence Sogap Number 3-67<br>p. 2813, p. 2817 of evaluation report<br>Evidence Sogap Number 4-19 |
| 12 | July 23, 1999 | Price increase, plan of operation stop | Chunghwa, SDI, LG, Orion, Philips<br>(Top-level meeting) | Answer 39) of Evidence Sogap Number 2-2<br>p. 1183, p. 1185, p. 1187 of Evidence Sogap Number 3-68<br>Evidence Sogap Number 4-20<br>p. 2826 of evaluation report<br>Evidence Sogap Number 4-21 |
| 13 | July 28, 1999 | Sales price (17": $92~93), price increase in Korea market, plan of operation stop | Chunghwa, SDI, LG, Orion, Philips | p. 1210 of Evidence Sogap Number 3-70<br>Evidence Sogap Number 4-22<br>p. 2850~1 of evaluation report |
| 14 | Aug. 4, 1999 | Confirm the carrying out of price increase and operation stop agreement | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap Number 3-71<br>p. 1223, p. 1226, p. 1227 of evaluation report |
| 15 | Aug. 10, 1999 | Maintaining sales price and keeping confidential | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap Number 3-72<br>p. 1240 of evaluation report |
| 16 | Aug. 20, 1999 | Maintaining the sales price of 14", 15"", 17", 19",<br>Plan of operation stop | Chunghwa, SDI, LG, Orion, Philips<br>(Top-level meeting) | p. 1250 of Evidence Sogap Number 3-73<br>p. 2854 of Evidence Sogap Number 4-23<br>Evidence Sogap Number 4-24<br>p. 2859 of evaluation report |
| 17 | Sept. 2, 1999 | Price increase in the Korean market | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap Number 3-74<br>p. 1260, p. 1263 of evaluation report |
| 18 | Sept. 20, 1999 | Price increase of 15", price increase of 17", plan of operation stop | Chunghwa, SDI, LG, Orion, Philips<br>(Top-level meeting) | p. 1281 of Evidence Sogap Number 3-75<br>Evidence Sogap Number 3-76<br>Evidence Sogap Number 4-26<br>Answer 41) of Evidence Sogap Number 2-2 |
| 19 | Sept. 28, 1999 | Agreement of supply quantity matching to the demand quantity of the whole world | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap Number 3-77<br>p. 1337 of evaluation report |
| 20 | Oct. 13, 1999 | Output reduction, maintaining the minimum price | Chunghwa, SDI, LG, Orion, Philips<br>(Top-level meeting) | p. 1351, p. 1357 of Evidence Sogap Number 3-78<br>Evidence Sogap Number 3-79 |
| 21 | Nov. 9, 1999 | Confirming the result of agreement performance | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap Number 3-80<br>p. 1385 of evaluation report |
| 22 | Nov. 26, 1999 | Green meeting | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap Number 3-81<br>p. 1385 of evaluation report |

| 23 | Dec. 22, 1999 | Maintaining the current sales price | Chunghwa, SDI, LG, Orion, Philips | Evidence Sogap Number 3-82 p. 1397 of evaluation report |

□ Multi-party meeting on Jan. 13, 1999

115     In this meeting, the defendants discussed about the detailed plan of price increase of 17″ CDT that was scheduled from Jan. 16, the same year, and then decided to increase the price on schedule. The participants of the meeting were the executives and staff in charge of sales and marketing such as Mr. * * Ha of Samsung Display Devices and plus one person, Frank Shao of Philips, Mr. * * Mun of Orion, Mr. Park of LG Electronics, Wen-Chun Cheng, Chun-Mey Sie of Chunghwa Picture Tubes, etc. This is confirmed by the "visit report" of Chun-Mey Sie of Chunghwa Picture Tubes.

> There is a need to strengthen the effort for the price increase of 17″ by several manufacturers. For example, SDD did not give an official written notice to its customer. We hope that SDD shall have a basis such as something that specifically matches the rate with several manufacturers when customers are doing price negotiation with OEM.
> The result of progress that a variety of manufacturers achieved in the price increase of 17″ CDT: [Underline by hand] Several manufacturers showed a smooth progress and will increase the price from Jan. 16.                                              (Evidence Sogap Number 3-58)

□ Multi-party meeting on Jan. 18, 1999

116     The defendants confirmed the case of price increase of 17″ CDT that is the previous agreement, and agreed to the output reduction of 14″ CDT, and discussed the production quantity and price that is to be applied to the first quarter 1999 after reviewing CDT supply and demand of the whole world in 1998.

> Answer 29) In the same meeting, confirmed that "the total companies has completed the price increase successfully with relevance to the case of price increase of 17-inch," as was agreed in the previous meeting, and agreed to sale the normal standard price of 19″(the minimum price) with $185 that is decreased 10% in comparison to the price of Japanese company and to get $10 more for the price of short length in comparison to the normal price.                     (Evidence Sogap Number 2-2)

117     First, the defendants confirmed that all of defendants increased the price successfully as the agreement with relevance to the agreement that is to increase the price of 17″ CDT two days after the opening of the meeting. Such information is confirmed also in the data of "case of 17-inch" price increase => All the companies completed the price increase successfully" that is listed in the report of meeting result of Samsung Display Devices.

> SDD: All of the customers of SDD accepted the price increase on 17″.
> L/G: The price increase on 17″ was achieved smoothly.
> Orion: Most of the 17″ is for internal supply, and the quantity for external sales is very small. The customers also did not refuse the price increase.
> <u>Result of the price increase of 17″ CDT: It was progressed smoothly. Each manufacturer increased the price after Jan. 16</u>. [Underline with memoirs]
>
> (Evidence Sogap Number 4-10)

118     Second, Discussion that is related to 14″ CDT was made with China as the center regionally, the defendants agreed to reduce all of the output of each CDT plant for the price stabilization.

> SDD: Mr. D. Y. Kim also added that the output was already reduced in order to stabilize the price of 14″. In order to promote the price increase of CDT, in the case of necessary, <u>must reduce all of the output, and even must close the production line.</u> [Under with memoirs]          (Evidence Sogap Number 3-59)

119     Third, with relevance to the price of 19″ CDT, the defendants agreed to the suggestion of Samsung Display Devices that established $185 as the lowest price, and agreed to increase the price of short tube $10 in comparison to the normal price, and to get for the product of Chunghwa Picture Tubes with cheap of %10 in comparison to the agreed price.

> SDD urged to each manufacturers to observe the lowest price of TCO[27], $185 in the meeting. <u>In addition,</u> SDD <u>requested to CPT to follow the market after the launch of 19″, and to maintain the price gap below $10</u>. [Under with memoirs]
>
> (Evidence Sogap Number 3-59)

> Normal standard price of 19″(The minimum price): 185USD (0.260, TCO)
> Short length: Normal price + $10                               (Evidence Sogap Number 4-10)

120     Finally, the participants decided to hold the next working level meeting in Taiwan on Feb. 10 the same year and to hold the next top-level meeting on Mar. 5~6 the same year together with golf meeting after discussing to attempt the price increase again in 2/4 quarter 1999.

> Mr. David (of Philips) showed that the opportunity of price increase must be got again in 2/4 quarter. Mr. David requested, in order to achieve the control of a more improved production ability than that of 1998, to each manufacturer to make an effort together continuously for the reduction of output. President Lin of CPT said that he hopes everybody can maintain the price together.
>
> (Evidence Sogap Number 3-59)

---

[27] TCO: It is a more strengthened regulation for electronic wave block than MPRII and its base is a numerical value that is measured at the point of 30cm of monitor surroundings.

---

1) The next meeting
□ Working level meeting
Date: Feb. 10 14:00
Place: SDD Taiwan branch
Agenda: Demand/supply 1999

□ Top-level meeting
Management meeting: Mar. 5, 1999 14:00~
 Green meeting: Mar. 6, 1999

(Evidence Sogap Number 4-10)

---

121     This meeting is a multi-party meeting that was held in Taiwan and five companies such as Samsung Display Devices, LG Electronics, Orion, Philips, Chunghwa Picture Tubes, etc., attended. This is confirmed by the "contact report" of Chunghwa Picture Tubes and the data of "meeting result CDT business circles (Jan. 18, 1999)" of Samsung Display Devices.

□ Multi-party meeting on Feb. 10, 1999

122     In this meeting, the defendants agreed to adjust the sales quantity by cooperating in advance for the maintaining and increase of sales price according to the expanding market of 19″ CDT. And decided to do the best in order to maintain the balance of market's demand and supply, after exchanging the forecast information with relevance to the supply quantity and demand quantity of CDT in order to adjust the output in order the CDT supply does not exceed demand.

---

The thing that he (Mr. Ha of Samsung Display Devices) fears was the thing that if several manufacturers enter into the market of 19″ one by one and the control of price and production ability is not improved, the decreasing speed of the sales price of 19″ will not be slower than that of 17″ of last year. …There is no need for several manufacturers to suggest too low a sales price. They should avoid anything that affects the future price trend of 19″.

Mr. Lin (of Philips) discussed 19″ as a main title of the next information exchange meeting and agreed with Mr. Ha on the suggestion to include 19-inch as the formal discussion title of top-level meeting at first time from the next meeting, which was to be held in CPTM.

(Evidence Sogap Number 3-60)

---

Mr. Lin appealed to do the utmost in order to maintain the balance of market's demand and supply by telling several manufacturers to think of something that make progress in terms of a production-line change.

The total sum of CDT supply quantity 1999 (including Japanese manufacturers, for which the supply estimates is 27.9M on the basis of a load factor 70%) shall be 104.1M. The output of the five CMT manufacturers will be 76.2M.

(Evidence Sogap Number 3-60)

---

123     * * Ha, * * Lee of Samsung Display Devices, Mr. Park of LG Electronics plus one person, Mr. Mun of Orion plus one person, Mr. Jerry Lin of Philips plus one person, Wen-Chun Cheng of Chunghwa Picture Tubes plus one person attended. This is confirmed by the "visit report" for the internal report of Chunghwa Picture Tubes.

□ Multi-party meeting on Mar. 1, 1999

124     The information on the delivery quantity and expected order quantity for February of the same year was disclosed in this meeting, there is a fact that Chunghwa Picture Tubes and Philips complained that Korean manufacturer should report the whole sales quantity of Korea, etc., to the thing that the Korean manufacturers reported only information on delivery quantity to Taiwanese customer. From this it is possible to know that the purpose of the cartel of this case is the control of output and artificial maintenance and an increase in the price of CDT product that is supplied to the whole world. Also, a member company (LG electronics), in which the days of production reduction was lacking, promised to supplement henceforward with discussing about the issue that the agreement of output reduction is performed well. In order to secure the effectiveness of output reduction agreement performance, Mr. Lin of Philips showed that he was to personally visit the production lines of the participants.

125     Additionally, the defendants discussed the matter of difficulties in the performance of the agreement because the information that was agreed at the time of the CDT meeting had been leaked to customers, so it was decided to maintain security to the agreement of CDT meeting thoroughly. Finally, the participants decided to hold the next CDT meeting at Chunghwa Picture Tubes, in Taiwan, at 2:00 p.m. on Mar. 8 of the same year.

---

Korean manufacturers reported only the sum quantity that was actually delivered to Taiwanese customer. CPT and PH respectively claimed that Korean manufacturers also should report the total sales quantity of the world.

(Evidence Sogap Number 3-61)

---

Looking fast performance of CPT than another participated manufacturers and a bigger output reduction rate than another manufacturers in production reduction, Mr. Lin expressed admiration to the wisdom and devotion of our arbiter for the stabilization of demand and supply in the CDT market. However, LG announced that it was ready to supplement the continuous lack days of production reduction on the following months (April to June). Mr. Lin said he would check in detail the plan of production reduction of production line of several manufacturers by investing time personally from Mar. (Underline with memoirs)

(Evidence Sogap Number 3-61)

---

He asked several participants to pay attention and to confirm whether or not the information had been leaked by the staff in charge of sales of several manufacturers. Regardless of it, the communication path with customer with relevance to such information must be controlled.
Date of the next CDT regular meeting-
It is scheduled to be held at Taoyuan on Mar. 8 (Wednesday) 2:00PM

(Evidence Sogap Number 3-61)

---

126     The executives and staff in charge of sales and marketing such as * * Yun of Samsung Display Devices, Me. Song of LG Electronics, Justin Park of Orion, Jerry Lin of Philips, Ching-Yuan Du, Chun-Mey Sie of Chunghwa Picture Tubes, etc., participated in the meeting for the agreement of CDT output reduction and price increase. This is confirmed by the "visit report" of Chunghwa Picture Tubes.

(5) Multi-party meeting on Mar. 5~6, 1999

127     The defendants decided to reduce 10% of the CDT output from April 1999 and to check it by making up a monitoring team, and agreed to increase the sales price at least five dollars to 17″ from May 1999, and that Philips takes charge the role of single window in order to induce the participation of agreement of Japanese companies, and that the next management level meeting is to be held by the supervision of Orion on April 14.

> Answer 31) The same meeting was the first top-level meeting of CDT business circles that was held according to the result of agreement on Nov. 28, 1998 and held in a hotel that has a golf course and is located in Malaysia. I remember that around four people respectively including the representative director level of five companies such as Chunghwa Picture Tubes, LG Electronics, Philips Electronics, Orion Electric, etc., participated in the same meeting.
> In the same meeting, "to adjust the operation day with 25 days in order to reduce the output of 17″ CDT 10% on the next month (April, 1999) and "to increase the sales price five dollars from May 1999" and "to induce the participation of agreement performance by unifying the communication window with Japanese company to Philips" and "to answer within 24 hours in the case of mutual problem rise", etc., was agreed. Additionally, exchanged and shared the present condition with relevance to the sales of each company, market information, etc.                                    (Evidence Sogap Number 2-2)

> 1.  Main agreements
> 1)  <u>Reduction of 17″ CDT 10% in April 1999 (Operation of 25 days)</u>
> ➔  Adjust/check the production by submitting the reduction plan (operation plan of 25 days) by each company and by making up a separate monitoring team.
> 2)  <u>Increase the price minimum five dollars from May, 1999 (MPRII base $98 -> $103)</u>
> 3)  Making the communication window with Japanese company to be unified into Philips and transfer the mood of business circles and induce participation.
> 5)  Submit results regarding all items/problems within 24 hours. (Evidence Sogap Number 4-10-1)

128     This meeting was held in Malaysia from Mar. 5 to Mar. 6 and was a meeting that the executives and staff including CEO of each company such as Chairman * Son, managing director * Kim, * * Kim, * * Lee, * * Park of Samsung Display Devices, vice chairman * * Jo, * * Jeon, * * Go of LG Electronics, Chairman Young Nam Kim, managing director * * Mun, * * Gang, * * Kim of Orion, Jang David of Philips, president Chieng-Yuan Lin, director Chi-Chun Liu, Ching-Yuan Du of Chunghwa Picture Tubes, etc., participated. This is confirmed by the data of internal report of Chunghwa Picture Tubes and Samsung Display Devices and the statement of * * Lee of Samsung Display Devices.

□ Multi-party meeting on Mar. 15, 1999

129     The defendants confirmed a fact that transferred to Hitachi and Mitsubishi through Philips as previously agreed and requested a support because the cooperation of Japanese companies is necessary condition with relevance to the price increase of17″ on May the same year. Additionally, they disclosed the fact that SDD Headquarters had notified the price increase to Samsung Electronics as per the agreement of the CDT cartel participants was disclosed to the public. Also, submitted the plan of operation stop of 17″ CDT by production plant of each company and agreed by making it with a table.

---

Mr. Ha of SDD said that if the price increase cannot succeed to get a support from Japanese manufacturers it would not succeed. Mr. Lin answered that Mr. David Chang disclosed the agreement of Malaysia to HTC/MEC and requested support.

Mr. Ha asserted that the headquarters of SDD had notified of the price increase to SEC. SEC also notified the customers that the price is to be increased again.

(Evidence Sogap Number 3-63)

---

Answer 32)   In the same meeting, a specific schedule for the reduction plan in April 1999 that was agreed in the previous management level meeting was established and a plan for mutual monitoring was established. Each participant distributed the plan of operation stop that the present line conditions of the whole world's CDT plants that each company possesses and the days of operation stop were indicated to another participant in the meeting. Additionally, the present condition of sales by model of each company at the time was confirmed. Since then, on Mar. 31, 1999, Korean companies like our company, LG Electronics and Orion Electric sent the result of discussion with fax to C. C. Liu, M. Du of Chunghwa Picture Tubes, Jerry Lin of Philips after discussing the reduction plan and mutual checking plan in April 1999.

(Evidence Sogap Number 2-2)

---

Unit: Kpcs

| Company | Plant | Line | Non business day | Total output | 990210 Output that is planned in 2/4 quarter |
|---|---|---|---|---|---|
| CPT | Taoyuan Yangmei Malaysia | 2 2 2 | 4/4, 4/5, 4/18, 4/24, 4/25 4/4, 4/5, 4/18, 4/24, 4/25 4/10, 4/11, 4/28, 4/29, 4/30 | 810 | 2240 |
| SDD | Suwon Busan | 2 2 | 4/4, 4/11, 4/18, 4/25, 4/26 4/4, 4/11, 4/18, 4/25, 4/26 | 640 | 2100 |
| LG | Gumi Changwon Wales | 3 1 1 | 4/4, 4/11, 4/17, 4/18, 4/25 4/4, 4/11, 4/17, 4/18, 4/25 4/4, 4/11, 4/17, 4/18, 4/25 | 630 | 2040 -> 1850 |
| Orion | Gumi | 1 | 4/4, 4/18, 4/27, 4/28, 4/29, 4/30 | 70 | 430 |
| PH | Chupei Dapon Lebring | 1 3 1 | Refer to annexed paper for detailed information | 278 | 950 |

(Evidence Sogap Number 3-63)

130     In this meeting, * * Ha, * * Lee of Samsung Display Devices, Mt. * * Lim plus 3 people of LG Electronics, Mr. * * Mun plus one person of Orion, Jerry Lin plus one person of Philips, Yuan-Chun Cheng plus one person of Chunghwa Picture Tubes participated. This is confirmed by the meeting result report of Chunghwa Picture Tubes, the internal report and reduction plan of Samsung Display Devices and the statement of * * Lee.

☐ Multi-party phone conference on April 10, 1999

131    In the meeting, Chi-Chun Liu of Chunghwa Picture Tubes requested to * * Kim to stop the sales of low price of LG Electronics, and decided to confirm in the other party's plant by making up monitoring manpower after agreeing the closing days of production line and decided to cooperate mutually.

---

Chunghwa
-There is a concern of market price confusion because LG is offering the price of 15″ by decreasing $3~4 relative to the market price. -> Also wants Samsung to block it.
Philips
-Gratitude to the monitoring open of Samsung's Busan plant: Thank you for Samsung's active cooperation to the monitoring of Philips in difficulties and anticipate the participation of LG (Gumi plant's open).

(Evidence Sogap Number 4-12)

---

132    In the meeting, * * Kim of Samsung Display Devices, Chi-Chun Liu of Chunghwa Picture Tubes , Jerry Lin of Philips checked the performance of agreement with relevance to CDT price and output reduction through phone conference. This is confirmed by the office e-mail data that * * Lee of Samsung Display Devices reported the result of the phone call internally.

□ Multi-party meeting on April 14, 1999

133    The defendants agreed the sales price after discussing the price gap by the detailed specification of 17″ CDT and decided to promote the price increase on around July of the same year, and decided to maintain the existing agreed price (185 dollars) for the price of 19″ CDT because the market situation is not good.

---

Answer 33)   In the same meeting, it was agreed to "promote the price increase of 17-inch" CDT that was agreed to be increased from May 1999 on around July again," and "to maintain the price of 19″ CDT with the present level but discuss it the next meeting again," "to make holiday at least five days for the CDT plant operation on May 1999."
CDT product has a variety of standard, and typically there is a gap of about three dollars in price according to the quality of coating even though in the same model. Outside of that, we discussed standard by departmentalizing it in order to reduce the price gap that is occurred according to model that each company produces even in the performance with the agreed standard price category because production cost gap was occurred according to frequency, dot, quality of material of mask etc. After meeting, in April 1999, I grasped the monitor manpower of other company and date, location and informed it to the Busan and Suwon plants of our company and took a step so that the mutual checking of whether or not plant operation stop is to be realized smoothly.

(Evidence Sogap Number 2-2)

---

Agreed price by 17″ specification
-107Ω MPRII $98.0
-Non-including of aluminum tape 105Ω $99.0
-Including of aluminum tape 105Ω $101.0[28]

(Evidence Sogap Number 3-64)

---

[28] Including/non-including of aluminum tape. According to whether or not attach aluminum tape for helping the discharge of static to the outskirt of coated product, difference occurs in sales price as well.

-The price increase of 17″ CDT that was agreed to be increased from May was decided to promote again (around July) while observing the later condition.
-In the case of 19″ CDT price: Maintain the current level ($185) but discuss again at the meeting on May.

(Evidence Sogap Number 4-14)

134      Also, the defendants agreed to make holiday five days of operation days on May the same year, and to operate during 26 days and decided to submit the operation plan by production line of the whole world in the meeting that is scheduled to be held in Taiwan on April 28. Finally, the defendants decided the next management level meeting and the opening date and place of top-level meeting, and this is confirmed in the report of Samsung Display Devices as the following.

□ Operation days on May, 1999: 26 days (holyday during five days)
Submission of plan at the meeting in Taiwan on April 28 (Including line/present condition of production of 2Q, 3Q 1999).
In the case that there is a change I line operation, inform to each company in advance through fax etc.
□ The next top/management meeting
Management meeting: May 21 09:30 ~ Chunghwa Taoyan plant
Top-level meeting: Jun 25/26 (Supervision of LG Electronics)           (Evidence Sogap Number 4-14)

135      In the meeting, the executives and staff in charge of CDT of Samsung Display Devices, LG Electronics, Orion, Philips, Chunghwa Picture Tubes participated and agreed to the sales price and days of production operation. This is confirmed by the internal report of Samsung Display Devices and Chunghwa Picture Tubes, the business diary and statement of * * Lee of Samsung Display Devices.

□ Mutual checking whether or not the stop of production line on April 18, 1999

136      There is a fact that the participants of this case's joint action visited personally the other party's production facility in order to confirm whether or not the reduction plan is performed as the previous agreement. This is confirmed in the data of "case of monitoring schedule notice on April 18th" of Samsung Display Devices.

     1.   Monitoring to our company
□ Busan plant
Manpower: Chunghwa Michael Du(Marketing manager)
Time: 08:00 ~ 09:00 arrival and monitoring
     09:00 ~ Movement to Changwon plant of LG
     2.   Monitoring to other company
□ Monitoring schedule of Chunghwa Malaysia plant
Schedule and line; Both days of April 17/18 (#5 line)
Manpower of our company: Manager Jae Gyeong Kim of production technology department, manager Jae Young Shin

(Evidence Sogap Number 4-15)

□ Multi-party meeting on Apr. 28, 1999

137   In the meeting, it was agreed to reduce the output jointly in order to prevent a price decrease after forecasting the demand and supply quantity of the CDT market, and it was promised to make a closing schedule table of the whole world's production facility of each company and to carry out during May. The participants in the meeting were * * Yun of Samsung Display Devices, Mr. Lee plus two people of LG Electronics, Mr. * * Mun plus one person of Orion, Mr. Frank Shao plus one person of Philips, Chi-Chun Liu plus two people of Chunghwa Picture Tubes. This is confirmed by the report of the meeting results for the internal report of Samsung Display Devices and Chunghwa Picture Tubes. (Evidence Sogap Number 3-65, Number 4-16)

□ Multi-party meeting on May 12, 1999

138     The defendants shared the information on the sales quantity and sales price of each company and discussed the setting of the sales price, and it has been confirmed that Chunghwa Picture Tubes, Philips, Orion, Samsung Display Devices agreed on the sales price to the customer ADC that is selling CDT. Additionally, the minimum price with $50 was agreed upon in the case of selling to the other customer besides ADC, and meanwhile it was agreed as the internal transaction with 48 dollars (a decrease of two dollars). It is possible to know that the transaction price among the affiliates was also the joint-action agreement object of this case.

| Sales price of ADC MPR2 | | NOR[29] | | SKD[30] | | | |
|---|---|---|---|---|---|---|---|
| Chunghwa Picture Tubes | | $50 | | $48 | | $47 | O/A TERM |
| PHIL/SDD | $49 | | $47 | $46 | L/C OR COD | | |
| The other customer: MPR2 $50(RMB520) is the minimum price. (However, the $2 decrease is permitted in case of the internal transaction.) | | | | | | | |
| | | | | | (Evidence Sogap Number 4-17) | | |

139     In the meeting, * * Kim, Mr. * * Yun of Samsung Display Devices, Jerry Lin, Rosa Hu, Frank Shao of Philips, Mr. * * Jo of Orion, Mr. Lin, Mr. Park, Mr. Ru of LG Electronics, Ching-Yuan Du, Chung-Cheng Ye and Chun-Mei Sie participated and agreed to the adjustment of production days for the output reduction after exchanging information on output and sales price. This is confirmed by the data of "result report of competitor working meeting" made by * * Yun of Samsung Display Devices.

□ Multi-party meeting on June 23, 1999

140     In the meeting, the defendants exchanged information on customer response, condition of demand and supply, etc., that each company had collected in order to confirm whether or not the conditions of price increase of CDT by model had been prepared.

---

[29] NOR: This means "normal." It refers not to a slim model but to a model of the maximum length.
[30] SKD: This is the abbreviation of Semi-Complete Knock-Down and refers to the product in the state of the temporary adjustment of ITC.

They also discussed the output reduction and the present condition of price increase of each company, etc.

> CPT emphasized that <u>the production line of 17″ should be reduced by an average of 12 days</u> in several plants in June. Additionally, the customer demand with relevance to 15″/14″ is stable. It is thought that Q3 is the optimum period for the price increase of 15″.
> With relevance to the pricing of Japanese manufacturers, it is said that <u>Mr. Kim personally visited HTC(J) in order to understand the present condition with relevance to pricing and production/sales</u>.
> Mr. Jo of LG said that <u>the demand of 15″exceeded already supply, and LG hopes to increase the price through this opportunity, but</u> on the other hand, there is a concern that it can be an opportunity to Japanese companies to start the production of 15″ CDT again in the case that the price of 15″ CDT is to be increased over $70.                                          (Evidence Sogap Number 3-67)

141   And agreed to increase the sales price of 15″ CDT 5 dollars from Aug. 1 the same year and Samsung Display Devices decided to notice the agreement to Toshiba and to request the performance of it. In the case of 17″ CDT, it was agreed to sell with 95 dollars on the base of MPRII, and agreed to maintain the price of 19″ CDT with 170 dollars. On the other hand, agreeing the price of 14″, 15″, 17″ CDT and agreed the internal transaction price ("Internal price") separately, and Additionally, agreed to the operation day's adjustment of 17″ CDT and also to build a hot line that can communicate among competitors within 24 hours.

> [15″] Result: <u>At the end of extensive discussion, the price of 15″ CDT is to be increased $5 from Aug. 1</u>. Additionally, Mr. Kim of SDD would send a notice to TSB and request to abide by such decision.
> [17″] After having detailed review with manufacturers, Mr. David concluded as the following: 1. <u>17″ MPRII - $95, TCD $96</u> (The price difference reduced to $1); This will put an end to the problem that customers choose as they like to their advantage.
> [19″] Mr. David of Philips concluded temporarily to the price condition of 19″ as the following: The market price of 19″ CDT decreased. <u>Several manufacturers must maintain the price of $170 for a while.</u>
>                                                                       (Evidence Sogap Number 3-67)

> 3. Main agreement
> 1) With relevance to price adjustment
> □ 14″ price: Applied as of Aug. 1
> -Internal price: $2 gap
> □ 15″ price: Applied as of Aug. 1
> -Bottom price: $67 (internal price: $65)
> □ 17″ price
> -Reference price: $98
> -Actual price: $95 (MPRII base, <u>including internal price</u>)
> 2) Operation days adjustment of 17″ CDT on July
> -July: Confirm whether or not "the closing of 5 days + additional 1 day of closing" at the meeting in Taiwan on June 30.
> 3) Composition of hot line: Replay within 24 hours (selecting staff in charge by each company)
>                                                                       (Evidence Sogap Number 4-18)

142     Additionally, with relevance to the operation stop for output reduction, the defendants agreed to reduce the operation days by 12 days during July ~ Aug., including the reduction of 5 days during July the same year. And it was agreed to hold the next top-level meeting on Aug. 20 the same year, and the management-level meeting on July 23 the same year in Taiwan from 9:30 a.m.

> Result: According to the recommendation of Korean manufacturers, a external announcement is scheduled to state that there will be a <u>reduction of total 12 days in July ~ Aug., including a five-day reduction in July</u>.                                         (Evidence Sogap Number 3-67)

> 4) The next top level/management-level meeting schedule
> -Top-level meeting: It is postponed from July 24 to Aug. 20
> -Management-level meeting: July 23 09:30 ~ (Taiwan)                     (Evidence Sogap Number 4-18)

143     In the meeting, * Kim plus three people of Samsung Display Devices, * * Jo plus three people of LG Electronics, * * Mun plus three people of Orion, Jerry Lin plus one person of Philips, C. Y. Lin plus three people of Chunghwa Picture Tubes participated. This is confirmed by the "report of business meeting" of Chunghwa Picture Tubes and the data of "management-level meeting result of CDT 5 companies (June 23)," information that is listed in the business diary of * * Lee, etc.

□ Multi-party meeting on July 23, 1999

144     In the meeting, it was progressed with the order that "to check mutually whether or not the result that is agreed in the previous meeting is performed," "to agree to the price increase of 14-inch, 15-inch CDT," "to agree to the quantity of production reduction necessary in order to increase the price jointly and arbitrarily after forecasting the demand and supply of the CDT market." The defendants also confirmed the agreed price by model that was to be applied from Aug. 1 the same year and checked whether or not the progress of price increase was working.

> Agenda
> Review of last meeting
> Market update - 17″ Japanese movement - 14″/15″ price-up
> 19″ pricing position
> Supply and demand
> Output (or capacity) control
> A.D.B.                                                       (Evidence Sogap Number 4-20)

> -Price adjustment: Applied on Aug. 1
> 14″: $52, the price increase work is progressing smoothly
> 15″: $70 (Bottom price: $67), the price increase work is progressing smoothly
> 17″: Official $98, Bottom $95 (TCD: $96)                     (Evidence Sogap Number 4-20)

145     It is a fact that, at the meeting, Orion and Samsung Display Devices referred to the following with relevance to the market sales in Korea, and it is possible to know that this was openly discussed in the meeting at the time because there was a need that the sales price to the demanding company in Korea should be decided as agreed for the smooth realization of agreement of the same cartel organized among the main CDT manufacturers worldwide.

That is, Chi-Chun Liu of Chunghwa Picture Tubes expressed discontent to the fact that the domestic demand price of Orion had not increased, which was because it would affect the planned price increase of Chunghwa Picture Tubes, which provides to Korean buyers.

146     Additionally, it is possible to know that the side of Samsung Electronics had a position that the external purchase rate must be expanded by 40% to the rate that is provided to Samsung Electronics from Samsung Display Devices, and from this it is confirmed that the quantity of Samsung Display Devices that is provided to Samsung Electronics is not set in advance but was variable according to the market situation and supply price.

> OEC showed that Korean customers are still strongly resistant to the price increase to the 15″ product for Korean domestic demand . . . . Moreover, Director Liu think that Taiwan manufacturers has doubt that the reason that Korean monitor manufacturers cannot increase the price is because it was impossible to increase the sales price of CDT in the [Korean] domestic demand market . . . .
> Mr. * Kim and D. Y. Kim of SDD said the supply quantity from SDD to SEC was merely 60% of the demand level of SEC. (Originally the internal group transaction is decided at the level of 70%). SEC already raised a complaint to top-level management that 40% of SEC demand quantity must be met with an external purchase.                    (Evidence Sogap Number 3-68)

147     The defendants agreed to implement a production stop of at least seven days in August of the same year, and decided to send the stop plan of each company's production line to Rosa of Philips one week prior to the end of the month with relevance to the procedure for the production reduction. According to the agreement result of the meeting Samsung Display Devices sent the plan of production day's adjustment to Rosa of Philips on July 29, 1999. Finally, the participants decided to hold a multi-party meeting together with golf in Korea on Aug. 20 of the same year.

> Finally, reached the resolution to carry out the production stop of at least seven days in Aug.
>                    (Evidence Sogap Number 3-68)
>
> Output (or Capacity) Control Principle
> Earlier notice –stop plan send to Rosa 1 week before month-end          (Evidence Sogap Number 3-69)

> Green meeting (a.m.: meeting; p.m.: golf) on Aug. 20 will be held in Korea as agreed previously.
>                    (Evidence Sogap Number 3-68)

148     The meeting was a top-level meeting for the CDT price increase and the agreement of output reduction, and * Kim, * * Kim, * * Ha, * * Lee of Samsung Display Devices, * * Choi, * * Jeon, Joney Song (* * Song), * * Go of LG Electronics, * * Mun, * * Gang of Orion, Chang David, Lin Jerry, Rosa Hu of Philips, Chieng-Yuan Lin, Chichun Liu, Wen-Chun Cheng, Ching-Yuan Du of Chunghwa Picture Tubes participated.

This fact is confirmed by "visit report" of Chunghwa Picture Tubes, the meeting result report that has the title of "Meeting Agenda" of Samsung Display Devices, the meeting data at the time of Chunghwa Picture Tubes and Samsung SDI, the statement of * * Lee of Samsung Display Devices, etc.

□ Multi-party meeting on July 28, 1999

149    In the meeting, the defendants discussed an adjustment of the price of 17″ CDT to match the market situation and a thing that the price increase of 15″ CDT in Korea must be come true immediately, and it is confirmed in the information on report of the Chunghwa Picture Tubes side that there was a structure that whether or not the price increase of 15″ CDT in Korean market would affect the agreement performance of other defendants. In response to the discontent suggestion of other defendants, Samsung Display Devices, LG Electronics, Orion, Korean companies promised to increase the price immediately.

| 1.  Summary of working meeting |
| --- |
| 1) Adjust the price of 17″ practically: The level of $92~93 |
| 2) The price of Taiwanese 15″ was increased most but the price increase of Korean companies was not completed so discontent is rising high |
| 3) The price decrease of 17″ is to be decided at the time of working meeting of next week after top level report (Aug. 4 14:00, Dowon plant, Chunghwa)          (Evidence Sogap Number 4-22) |

Director Liu said that because Korean companies occupy a considerable market share at the time worldwide, if the price increase is not progressed successfully in Korean market then it will certainly produce a big increase in the current price. Additionally, according to the current understanding, a variety of manufacturers announced the price increase, but the price increase was not accepted. Director Liu wanted that all of the other manufacturers that participated in the meeting should request to Korean manufacturers to accept the price increase. [Underline with memoirs] Otherwise, the big action of price increase of Taiwanese manufacturers is also affected. Along with this, the order of Taiwanese manufacturers can also go to Korean manufacturers. [Underline with memoirs] Orion/PH, Additionally, it was thought that the price increase of Korean manufacturers was not certain until now, but if SEC accepts the price increase then the other Korean manufacturers will follow it. Several manufacturers agreed to ask the headquarters of their company to progress the same procedure strongly for the price increase of Korean manufacturers.          (Evidence Sogap Number 3-70)

| 5. Strong discontent to the delay of price increase of 15″ of Korean manufacturers |
| --- |
| ➔ Immediate increase promise of Korean manufacturers          (Evidence Sogap Number 4-22) |

150    Additionally, for the workable agreement price setting, opened the production quantity, sales quantity, the inventory of each company by the public standard on July and Aug., 1999 and exchanged it after producing a table, and each company submitted the present condition of the production line stop of August the same year.

Also, it is a fact that the defendants also agreed to the detailed procedure for mutual checking of whether or not the production line stopped.

| | July | | | | Aug. | | | |
|---|---|---|---|---|---|---|---|---|
| | 14″ | 15″ | 17″ | 19″ | 14″ | 15″ | 17″ | 19″ |
| | P/S/I | P/S/I | P/S/I | P/S/I | P/S/I | P/S/I | P/S/I | P/S/I |
| SDD | 280/290/30 | 810/830/80 | 650/670/60 | 90/90/- | 300/310/- | 860/850/- | 700/710/- | 90/90/- |
| PH | 65/50/- | 420/340/290 | 260/280/180 | 35/20/60 | 35/45/- | 310/420/- | 310/340/- | 40/30/- |
| CPT | 330/370/130 | 880/950/130 | 650/620/140 | 14/18/16 | 340/280/- | 1000/1000/- | 650/650/- | 20/25/- |
| Orion | 90/80/30 Underline with memoirs | 335/330/40 | 130/135/75 | | 60/90/- Underline with memoirs | 345/365/20 | 125/145/55 | 10/5/5 |
| LG | 90/95/0 | 600/620/130 | 580/540/200 | 75/70/40 | 0/10/. | 550/650/. | 550/530/. | 70/60/. |

Date of production stop of 17″ CDT to the production line of several manufacturers in August: Several manufacturers reported the date of production stop as the attached paper. There was a need for manufacturers to verify the inspection plan, and a need to send it to PH for an edition before Friday. Additionally, manufacturers must notify employees who are doing visits/preparation and must indicate the time of the plant visit in detail two days prior to the performance of inspection.

(Evidence Sogap Number 3-80)

151    Five companies of Samsung Display Devices, LG Electronics, Orion, Philips, Chunghwa Picture Tubes participated in the meeting. This is confirmed by the "visit report" of Chunghwa Picture Tubes and "result report of competitor working meeting on July 28th" of Samsung Display Devices.

□ Multi-party meeting on Aug. 4, 1999

152    The defendants checked mutually whether or not the progress of price increase of 14″ and 15″ CDT on Aug. 14, 1999, as agreed in the previous meeting, was occurring. Particularly, Samsung Display Devices and Orion Electric of Korea increased the transaction price between affiliates successfully, and it is known that the purpose that the defendants increased the price at the same time was to maximize the profit without violating the other party's market share. It is also known that the purpose of the same meeting was to cope with the consumer jointly by refraining from competition in terms of price and quality among the defendants and the CDT manufacturer, and opened the fact to the public that they mutually requested to stop the act that suggested a lower price than the agreed price, and reduced output for the maintenance of the agreed price. Samsung Display Devices, LG Electronics, Orion, Philips, Chunghwa Picture Tubes participated in the meeting. This is confirmed through the "contact report" of Chunghwa Picture Tubes.

It was mentioned that with relevance to the price increase of 14″/15″ that started in August, generally speaking, it was progressing effectively with all the manufacturers. All of Mr. Yun of SDD and Mr. Mun of Orion asserted, in the case of their internal transaction (SEC and Orion), SDD and Orion progressed the price increase effectively because there is their own ultimate will regardless of whether or not the other party neglects to implement the CRT cost difference of five dollars in a timely manner. Mr. Yun requested to PH to progress an immediate price increase with D/W through Mr. Millan Baton of PH. (Mr. Yun referred to that the price was progressed to 67 dollars smoothly in the case of SDD. The price to other Korean customer was also increased to 67-68 dollars.)

All of manufacturers urged to avoid violating the market share of other companies surely by applying the price increase at the same time.

(Evidence Sogap Number 3-71)

---

SDD suggested holding a quasi-top-level meeting in SDD Taipei on the next Tuesday (Aug. 10) 02:00 p.m. in order to prevent the manufacturers are to be taken to the rumor of market and to prevent the customers apply a strategy that makes the situation to be out from the control range by using the low price of Japan. This is an intention to make sure promptly the pricing of 17″ CDT that all of manufacturers can follow.

(Evidence Sogap Number 3-71)

---

Manager Cheng of CPT requested to Orion that "Do not compete to the order of 17″ with customer who is not the original (14″/15″) Taiwanese customer. This is to prevent general practices that cause confusion by suggesting a slightly lower price than that of other manufacturers with the reason being the low quality of Orion. Additionally, manager Cheng said that CPT stopped the operation of 2 lines to maintain the fixed price (an average of 12 days' closing).

(Evidence Sogap Number 3-71)

☐ Multi-party meeting on Aug. 10, 1999

153     During the meeting, the defendants confirmed the price increase in Korea with relevance to 15″ CDT and agreed the sales price of 17″ CDT again, and decided to maintain the secret to the fact of the same meeting to customers more thoroughly. Samsung Display Devices, LG Electronics, Orion, Philips, Chunghwa Picture Tubes participated in the meeting. This is confirmed by the "visit report" of Chunghwa Picture Tubes.

---

When Chunghwa Picture Tubes asked whether or not the same price increase in Korea market, Samsung SDI said, Samsung Electronics, Hyundai, Daewoo had accepted, and said it would take some time to shift the price increase from the monitor companies to PC manufacturers.

Mr. Mun of Orion urged that the price increase of 15″ in Korea market was successful. Philips pointed out that the price increase to Samsung Electronics, Daewoo Electronics had not yet been performed and said it would not ship without the acceptance of a new price.

Jerry Lin of Philips suggested to use the lowest price of 17″ to $93, and Samsung Display Devices and LG Electronics agreed.

(Evidence Sogap Number 3-72)

☐ Multi-party meeting on Aug. 20~22, 1999 and inspection of production line

154    The defendants checked the situation of performance of the agreement in the previous meeting, and set the agreed price after confirming whether or not the price increase of CDT according to the market situation and discussed also about the control plan of supply quantity. Moreover, it has been confirmed that they checked the performance condition of agreed price of CDT by standard and agreed on the sales price that was to be applied henceforth.

> Agenda
> Review of last meeting
> Market update
> -14″/15″ price increase - 17″ price development - 19″ status
> Capacity (or output) control
> Glass supply and demand update
> Green meeting
> A.O.B.
>
> (Evidence Sogap Number 4-24)

> □ 1. Agenda
> 14″/15″ price increase – Oppose to the additional price increase
> 17″ price development – Maintain the level of $93. It is necessary to maintain the piece even though the days of closing would have to be adjusted.
> 19″ status: Difficulty continues according to the delay in demand recovery, but maintain the agreed price level.
>
> (Evidence Sogap Number 4-23)

155    Looking at the contents of the related meeting result report of Chunghwa Picture Tubes, the defendants confirmed the fact of price increase to consumers in Korea, and decided the place and date that the next meeting would be held after agreeing on the sales price by standard and days of operation stop. Additionally, it has been confirmed that * Kim of Samsung Display Devices delivered the discussions with relevance to the setting of the sales price, which was done together with Matsushita management before the opening of the meeting to other participants. It is a fact that on Aug. 22, 1999, two days after the above meeting,  Ching-Yuan Du and Chu Ciangguo of Chunghwa Picture Tubes visited the Gumi plant of LG, the Suwon plant of Samsung Display Devices and Gumi plant of Orion, and confirmed personally whether or not the stop of production line as agreed during the previous meeting.

> According to OEC, it said that customers are still resistant to the price increase of 15″ tube of Daewoo. However, OEC reduced the supply quantity 20% by sticking to the position. SDD said that the increase in the supply quantity to Daewoo was successful. Orion got requests to stick to the position of price increase by mobilizing all means for success.
> In order to prevent the continuous decrease of market price, all agreed to maintain the lowest price of 93 dollars [in the case of 17″ CDT].
> The participants agreed to maintain the price of [19″ CDT] with 160 dollars and 150 dollars and must keep an eye on the change of market demand continuously.
> The participants in the meeting said that the period of 17″ tube production stop should be at least five days in September in order to guarantee the price level effectively.
> It was agreed that the next glass meeting is to be held at Taoyuan plant, CPT on Sept. 20 at 9:30 a.m.
> Mr. * Kim explained the result of meeting with top MEC management.
>
> (Evidence Sogap Number 3-73)

156      The meeting was a top-level CDT multi-party meeting, and * Kim, * * Kim, * * Lee, * * Ha of Samsung Display Devices, * * Choi, * * Jeon, * * Go of LG Electronics, * Mun, * * Jo, * * Gang, * * Kim of Orion, David Chang, J.M. Smith, Jerry Lin, Jae Ho Bae of Philips, Chieng-Yuan Lin, Chi-Chun Liu, Ching Yuan Du of Chunghwa Picture Tubes participated. This is confirmed by the result report that has the title of "top-level/management meeting　(Aug. 20)" of Samsung Display Devices, the "visit report" of Chunghwa Picture Tubes, the meeting data of Samsung SDI at the time, etc.

□ Multi-party meeting on Sept. 2, 1999

157      In the meeting, the defendants show the structure where the sales price applied by Korean CDT manufacturers to Korean buyers has an important effect on the profit of other participants very well. That is, in the case that Samsung Display Devices cannot increase the price as agreed to Samsung Electronics, affiliate, it was concerned that a large customer, including Samsung Electronics, becomes to request the price decrease to other companies that are participating in the cartel. Additionally, with relevance to sales quantity, the defendants were reluctant to change the market share that was maintained by customer at the time, and this is because that in the case that Samsung Display Devices provides to Samsung Electronics over the fixed rate, it then affects to Toshiba, other supplier, and if Toshiba provides the remaining quantity to other customer then competition is to be triggered among the total CDT manufacturers. * * Yun of Samsung Display Devices, * * Lim, * * Song of LG Electronics, * * Mun of Orion, Jerry Lin of Philips, Chi-Chun Liu, Wen-Chun Cheng, Ching-Yuan Du, Chun-Mei Si of Chunghwa Picture Tubes participated in the meeting. This is confirmed by the "visit report" of Chunghwa Picture Tubes.

---

b) [* mark with memoirs] Price increase issue of 15″ in Korea
CPT and PH inquired respectively to Orion whether or not Orion increased the price successfully to Korean monitor manufacturers such as D/W. Director Liu said as follows that the message that we got through the transaction with Korean customers such as D/W, Hyundai was that they would not purchase if we increase the price. If Korean CRT manufacturers cannot increase the price successfully to the Korean monitor manufacturers, it will affect severely to the Taiwanese monitor manufacturers, particularly in the off-season (when supply exceeds demand). They will worry about suffering difficulty as a result of being deprived of orders to the large-scale system manufacturers. Ultimately, it will be impossible for Taiwanese manufacturers experience pressure from our price increase. I hope that Korean CRT manufacturers will face such matters and quickly eliminate the rumor in the market that the price increase of 15″ in Korea will not yet come true.

(Evidence Sogap Number 3-74)

---

CPT – Director Liu inquired as to why the decrease part of supply to D/W was not changed to an increase of supply to SEC. Mr. Yun replied as follows: It is not difficult <u>to increase the supply to SEC,</u> but a lot of problems may be caused. For example, <u>such increase will directly affect the Japanese manufacturer (TSB), and this will make TSB switch to the Taiwanese manufacturer or other customers for SEC supply</u>.

<div align="right">(Evidence Sogap Number 3-74)</div>

☐ Multi-party meeting on Sept. 20, 1999

158    This meeting was progressed with the order of "checking whether or not the performance of the agreement of the previous meeting" -> "checking the market situation and demand and supply quantity of the whole world" -> "agreement of the price increase" -> "agreement of output control" etc., and the defendants decided to maintain the previous agreed price for 14″ CDT after sharing information with relevance to the market situation and the response of customer that were collected respectively. In 15″ CDT, the fact that the increase of five dollars that is the previous agreement was come true successfully and the fact that Korean manufacturers increased the price to Korean customers were confirmed. Additionally, agreed to decrease the price of 17″ CDT in order to promote the demand relocation to the 17″ CDT, and decided to stop the production line of 17″ CDT during at least seven days in October of the same year with relevance to output control, and decided to report the plan of production stop by Chunghwa Picture Tubes on Sept. 28 of the same year 2:00 p.m. This meeting is a top-level meeting that was held in Taoyuan, Taiwan, and * Kim, * * Kim, * * Lee, * * Ha of Samsung Display Devices, * * Choi, * * Jeon, * * Lim, * * Go of LG Electronics, * * Jo, Jimmy Kim, * * Gang, * * Gang, * * Mun of Orion, Jim Smith, Jerry Lim, Losa Hu of Philips, Chieng-Yuan Lin, Chi-Chun Liu, Wen-Chun Cheng, Sheng-Jen Yang, Ching-Yuan Du of Chunghwa Picture Tubes participated. This is confirmed by the "visit report" of Chunghwa Picture Tubes, the business diary of * * Lee and statement of Samsung Display Devices, meeting data that was distributed at the time of meeting, etc.

1.  14″: Must pay close attention to the problem that increases the price of 14″ henceforward. Mr. * Kim of SDD also agreed to it. Therefore <u>the price increase of 14″ was not considered in this meeting</u>.
2.  15″: Market demand to 15″ tube is maintained strongly. All of manufacturers are still in good state at present production and sales quantity and revealed that <u>the price of Aug. also increased without problem according to the agreed price</u>. All of manufacturers are believe that the demand to 15″ product is to be weak from Dec., President Lin also revealed that the <u>price of 15″ tube would be increased, and would decrease the price of 17″ tube slightly from August in order to narrow the price gap between two products and promote that the market demand is to be moved to 17″</u>. ...<u>All of SDD/LG/Orion revealed that they increased the price to Korean Manufacturers according to the agreed price</u>.
3.  17″: With relevance to the control of production ability of 17″ in October, all of PH/SDD/CPT suggested that there is a need for production line to be stopped during at least seven days... Additionally, LG and Orion prepared the agreement to <u>stop production during seven days</u> at first time after a long discussion. ..Additionally, <u>it was decided that the report to the plan of production stop that each manufacturer does would be done in CPT on Sept. 28 at 2:00 p.m.</u>

<div align="right">(Evidence Sogap Number 3-75)</div>

☐ Multi-party meeting on Sept. 28, 1999

159     During the meeting, the defendants opened the predictive value of each company's supply quantity and demand quantity of the whole world 2000 to the public and exchanged opinions to the market situation, and then estimated the demand quantity of CDT monitor by standard as the following, and agreed to stop the production line of 17″ CDT that is the main items at the time during seven days in October 1999 in order to adjust the production quantity according to it. Explaining concretely, because the total demand of the year 2000 is forecasted with 111,500,000("111.5M") the defendants decided the supply quantity with 117,000,000("117.15M") according to it and agreed the operation rate by inch. * * Kim, * * Yun of Samsung Display Devices, * * Jeon, Mr. Park, * * Go of LG Electronics, * * Mun, * * Gang, * * Kim of Orion, Jerry Lin, Losa Hu, Li Mei of Philips, Wen-Chun Cheng, Ching-Yuan Du, Chun-Mei Ci of Chunghwa Picture Tubes participated. This is confirmed by the "contact report" of Chun-Mei Ci of Chunghwa Picture Tubes.

---

Each manufacturer agreed to use the quantity of 111.5M as the criteria of total demand quantity of C-monitor 2000. Demand situation prospect by each size is as the following:
14″ 6.35M (5.7%), 15″ 43.15M (38.7%), 17″ 51.3M (46%), 19″ 8.35M (7.5%), 21″ 2.35M (2.1%)
Scheduled production quantity by size 2000 of 5 manufacturers will follow the operation plan of 14″/15″ 90%, 17″/19″ 85% according to the prospect of market demand. The prospect of the total output of 5 manufacturers 2000 is 91.15M, and 14″ is 5.25M, 15″ is 37.0M, 17″ is 41.65M, and 19″ is 7.25M among the total.
Supply/demand 2000
5 manufacturers & Japan supply = 91.25M + 26M = 117.15M
Manufacturers agreed to reduce production to 17″ continuously through the line stop during 7 days in October. ... Manufacturers must suggest the inspection plan to each other in order to promote the inspection performance of each manufacturer.                              (Evidence Sogap Number 3-77)

---

□ Multi-party meeting on Oct. 13, 1999

160     In the meeting, the discussion was progressed with the following order: 1. market update; 2. 17″ price problem; 3. demand/supply 2000; 4. Other problems; and with relevance to "market update," it is possible to know that the defendants discussed that the price of CDT in Korea is not performed as the agreed price, and arrived at the result of urging the performance in order to correct it and meanwhile reducing the output because other companies are consequently suffering damage. Also, with relevance to the price problem of 17″ CDT, there is a fact that the defendants agreed to the suggestion of Chieng-Yuan Lin of Chunghwa Picture Tubes to interrogate the responsibility to a seceder and to find solution at top-level meeting after pointing out the previously agreed price was not abided by, and deciding the agreed price at top-level meeting henceforward and reviewing the market price actually by working employees.

This meeting is a CDT top-level meeting, and * * Lee of Samsung Display Devices, Mr. Lin, Mr. Charles Lu of LG Electronics, * * Mun of Orion, Jerry Lin, Limei Liu of Philips, Chieng-Yuan Lin, Chi-Chun Liu, Ching-Yuan Du, Chun-Mei Sie of Chunghwa Picture Tubes participated. This is confirmed by the "contact report" of Chunghwa Picture Tubes and the meeting data at the time.

---

There was suspicion as to whether or not the CDT price in Korea was the rational price [Underline with memoirs] that is agreed by each manufacturer. If not so, the actual situation will be that the CDT price of Taiwanese monitor manufacturers is higher than the price of Korean monitor manufacturers. Mr. Lin said with a disappointed image that "I hope that the glass meeting will not be a destructive factor that induces a loss in the market competitiveness of Taiwanese manufacturers." At the same time as the chairperson of the glass meeting, I could not acknowledge the fact that it was impossible to stabilize the original delivery quantity that was supplied to local customers in Korea by Philips.

b) CPT: Some production line must be stopped for a long period . . . . However, because of the above factors (the strong situation of Korean monitor manufacturers) that Jerry pointed out, the sales expansion is not so much admirable with a continuous disturbance situation because of an unknown low-price attack that is suggested to Taiwanese monitor manufacturers. In order to contribute to the market price stabilization, CPT has been reducing the production of 17″ the maximum for quite a long time. Each manufacturer must strictly abide by the minimum price.    (Evidence Sogap Number 3-78)

---

It was revealed that working employees must review the market price situation actually every meeting and must find the actual price when an abnormal point is appeared after arriving at the result in top level to price problem. The destroyer will be investigated thoroughly. The problem will be reviewed in the top-level meeting in order to find a solution.

Manufacturers expressed agreement to the request of president Lin. Additionally, they decided unanimously to review and discuss once again the actual price of 17″ at CPT tomorrow (Oct. 14 17:00 p.m.) by director Liu of CPT, Mr. Lin or Mr. Park of LG, Mr. Ha of SDD, Mr. Lin of PH, Mr. Mun of Orion, etc.

(Evidence Sogap Number 3-78)

---

□ Multi-party meeting on Nov. 9, 1999[31]

160   The defendants exchanged information on the sales price and quantity of CDT by standard of Oct. and Nov. 1999, and confirmed the point that they enjoyed profit because of the same cartel meeting and decides to strengthen contact by holding a timely cartel meeting during the off-season, and decided to hold a meeting including golf (green meeting) at Chunghwa Picture Tubes of Taoyuan, Taiwan on Nov. 22 the same year. In the meeting, * * Ha, * * Yun of Samsung SDI, * * Lim, Mr. Charles Lu of LG Electronics, Milan Baran of Philips, Chi-Chun Liu, Ching-Yuan Du of Chunghwa Picture Tubes participated. This is confirmed by the "visit report" of Chunghwa Picture Tubes.

---

[31] Samsung Display Devices exchanged its company name with Samsung SDI on Nov. 1999, so it is listed as Samsung SDI in the evidence data after this meeting.

> Review the practice method of weekly working level meeting. <u>Each manufacturer revealed that all had enjoyed this year's sales because of the success of glass meeting. According to this, the weekly meeting must be held in a timely manner.</u> The next meeting was tentatively scheduled to be held on Nov. 22.
> 1. Schedule: Meeting in morning, green meeting in afternoon
> 2. Place: CPT Taoyuan plant. For the place of green meeting, CPT will hold at this time and will prepare for it.
>
> (Evidence Sogap Number 3-80)

□ Meeting on Nov. 26, 1999

162     The meeting is a CDT top level multi-party meeting and golf meeting that was held at Taoyuan, Taiwan, and top level executives and staff in charge of CDT of Samsung SDI, LG Electronics, Orion, Philips, Chunghwa Picture Tubes participated. This is confirmed by the document that was made by Philips that conducted the meeting at the time for the confirmation of whether or not of participation to other participating companies before meeting.

□ Multi-party meeting on Dec. 22, 1999

163     In the meeting, the defendants exchanged mutually the closed business information such as the delivery quantity and the price and the current condition of inventory by standard, by customer, and discussed to refrain from the low price attack among defendants and agreed to maintain the present price. Additionally, they looked for the consent of applicable company in advance in the case of expanding the supply quantity to the existing customers of other defendants, and decided to adjust the price downward only in the case of not affecting to other member company in the case of supplying CDT to one customer by plural supplier. Such agreement was done for the purpose of the participants of the meeting to prevent the decrease of CDT price and to maintain the market share by the member company artificially by adjusting the supply quantity of adequate amount. Working-level employees of Samsung SDI, Philips, Orion, LG Electronics, Chunghwa Picture Tubes participated in the meeting. This is confirmed by the "visit report" of Chunghwa Picture Tubes.

1. The current condition of product delivery of several manufacturers Dec.
    a) SDI: Additionally, it is said that Mr. Yun said that some customer such as Sampo requested to decrease the price of 15″/17″ $1 respectively recently, and <u>said that it is hoped that LG would not suggest a low price by approaching too hurriedly</u>.
    b) CPT:  With relevance to the problem that some customers recently repeatedly hints to us that if the price in not good then we will not order henceforward, <u>we hope to maintain the price in a stable manner together with several manufacturers that provide product</u>.
2. Price problem
<u>The result of several manufacturers: The most important thing is to make sure the current price maintaining by several manufacturers</u>.
L/G: In this stage, there is no product to supply actually even though they suggest the low price of $88. Therefore <u>there is no concern that this may affect to the product supply of CPT and SDI</u> before February.
SDI: Mr. Yun answered that CPT could not meet Compal's demand on the delivery of 15″ one or two months ago, and <u>Mr. Ha increased the delivery quantity to Compal by obtaining the consent of CPT</u>.

(Evidence Sogap Number 3-82)

(6) Meeting among competitors in 2000

<Table 22>          Outline of CDT cartel meeting in 2000[32]

| Serial No. | Date of opening | Agreement | Participated company | Evidence data |
|---|---|---|---|---|
| 1 | Jan. 24, 2000 | Price increase of 17″($90), plan of operation stop | Chunghwa Picture Tubes, SDI, LG, Orion, Philips (top-level meeting) | p.1413, p. 1416, p.1417 of Evidence Sogap Number 3-83 Evidence Sogap Number 4-27 p.2875 of evaluation report |
| 2 | Feb. 24, 2000 | Sales price(15″: $67/66, 17″: $90/89), plan of operation stop | Chunghwa Picture Tubes, SDI, LG, Orion, Philips (top-level meeting) | p.1432, p.1434, p.1436 of Evidence Sogap Number 3-85 Evidence Sogap Number 3-84 Evidence Sogap Number 3-86 Evidence Sogap Number 4-28 |
| 3 | Apr. 2000 | Control and inspection of production quantity | Chunghwa Picture Tubes, SDI, LG, Orion, Philips | Evidence Sogap Number 3-87 p.1456 of Evidence Sogap Number 3-88 |
| 4 | May 26, 2000 | Sales price(15″: $67, 17″: $88, 19″: the present price), plan of operation stop | Chunghwa Picture Tubes, SDI, LG, Orion, Philips (top-level meeting) | p.1473, p.1475 of Evidence Sogap Number 3-89 Evidence Sogap Number 3-90 p.2888 of Evidence Sogap Number 4-29 |
| 5 | June 20, 2000 | Sales price(14″: $54, increase of $2, 15″: $67, increase of $2, 17″: The present price), plan of operation stop | Chunghwa Picture Tubes, SDI, LG, Orion, Philips (top-level meeting) | p.1503, p.1505, p.1507 of Evidence Sogap Number 3-92 p.2893 of Evidence Sogap Number 4-30 |
| 6 | June 28, 2000 | Confirm whether or not the performance of price increase | Chunghwa Picture Tubes, SDI, LG, Orion, Philips | p.1516 of Evidence Sogap Number 3-93 |
| 7 | July 13, 2000 | Price increase in Korea market, plan of operation stop | Chunghwa Picture Tubes, SDI, LG, Orion, Philips | p.1537 of Evidence Sogap Number 3-95 Evidence Sogap Number 4-32~3 |

---

[32] In the CDT cartel meeting by month from 2000 to April 2001 hereinafter, the agreement is a thing by the meeting that only 5 companies of Chunghwa Picture Tubes, SDI, LG, Orion, Philips participated, and do not write it on the resolution on duplication because they are the same participated companies and participants.

| 8 | Sep. 21, 2000 | Estimating the size of CDT market with comparison to LCD, plan of operation stop | Chunghwa Picture Tubes, SDI, LG, Orion, Philips | p.1553~4 of Evidence Sogap Number 3-96 Evidence Sogap Number 3-97 Evidence Sogap Number 4-34 |
| 9 | Sep. 27, 2000 | Plan of operation stop and inspection method | Chunghwa Picture Tubes, SDI, LG, Orion, Philips | p.1573 of Evidence Sogap Number 3-98 |
| 10 | Oct. 25, 2000 | Setting of the bottom price of sales(15″: $66, 17″:$85), plan of operation stop | Chunghwa Picture Tubes, SDI, LG, Orion, Philips (Management level meeting) | p.1588, p.1592, p.1593 of Evidence Sogap Number 3-99 Evidence Sogap Number 3-100~2 p.2934 of Evidence Sogap Number 4-35 p.354 of Evidence Sogap Number 2-2 |

□ Multi-party meeting on Jan. 24, 2000

164      In the meeting, * Kim of Samsung SDI requested that all of the participants should abide by the agreement and suggested also to Matsushita, Hitachi to persuade the abidance of agreement, and the defendants collected the price increase requests that was received from the glass suppliers and then agreed to maintain the basic price of 17″ CDT with $90 and agreed to maintain also the sales price targeting main customer with $90 from Mar.

Mr. Inn Kim requested to show the faith of the main 5 companies by abiding by the agreed price. Japanese manufacturers are to be cooperated to the price maintaining naturally through this. Mr. Inn Kim requested that anyone who visits Malaysia should seek the opportunity to have conversation with managers who are the staff in charge of sales of MEC Malaysia by obtaining a schedule. He has a schedule to have additional conversation with MEC members on Mar. by opening a meeting again. Additionally, Me. Choi requested to chairperson to get the meeting schedule with HTC top-level management.                                                    (Evidence Sogap Number 3-83)

Working employees suggested adjusting the basic price of 17″ tube to $89 downward. But, they consented to maintain the lowest price of $90 as the idea of president Lin after discussion among meeting participants. It is scheduled that the price that is to be suggested to main customers is to be increased to $90 because of the increase of glass price from Mar.

                                                    (Evidence Sogap Number 3-83)

165      Additionally, during Feb. 2000, with relevance to the production reduction days of 15″, 17″, it was agreed to stop production with 9 days of Chunghwa Picture Tubes, seven days of Samsung SDI, Orion, Philips. Finally, it was decided to hold the schedule of the next multi-party meeting at the office of Korea Orion on Feb. 24 at 2:00 p.m. the same year and decided to get golf meeting on Mar. 25.

All manufacturers agreed to reduce the production of 15″/17″ continuously in February.
Chunghwa Picture Tubes decided to put nine days of production reduction period, and all of SDI/OEC/PH decided to plan production reduction period of at least seven days.
Date of the next CDT CSM: Feb. 24 02:00 PM  (Thursday). Place: OEC office, Seoul. Agreed temporarily to hold a green meeting in Seoul on Mar. 25.

(Evidence Sogap Number 3-83)

<Samsung SDI>
LG: 4 days' closing  (New Year) -> five days 17″/15″
Orion: 4 days (New Year) -> seven days okay
S/S: Seven days (5 days)

(Evidence Sogap Number 4-27)

166 The meeting is a top-level meeting and * * Kim, * * Kim, * * Ha, * * Ha of Samsung SDI, * * Choi, * * Lee, * * Go, * * Lim of LG Electronics, * * Jo, * * Lee, * * Lee, * * Mun, * * O of Orion, Jim Smith, Jerry Lin, Limay Liu of Philips, Chieng-Yuan Lin, Chi-Chun Liu, Wen-Chun Cheng, Ching-Yuan Du of Chunghwa Picture Tubes participated. This is confirmed by the "visit report" of Chunghwa Picture Tubes and the business diary of * * Lee of Samsung SDI.

□ Multi-party meeting on Feb. 24, 2000

167     The defendants opened the information of first-quarter production quantity of 14″, 15″, 17″, 19″ CDT the same year and confirmed by making it with a table whether or not the adequate supply quantity is maintained. It is also a fact that Chunghwa Picture Tubes and Philips, among the defendants, raised discontent about the fact that they were being pressured into a price decrease by Taiwanese monitor companies based on the fact that Korean companies such as Samsung SDI, Orion, LG Electronics, etc., supplied CDT to Korean monitor manufacturers at a lower price than was agreed. It is possible to know from this that the transaction price in Korea, which would mutually affect other defendants as well as the sales quantity and sales price worldwide, including Korea, was the target of agreement of the same cartel. Additionally, it is possible to know that the meeting among Korean CDT manufacturers was continued in Korea, also agreed to deliver the meeting result that was held in Korea to the CDT working-level meeting of Taiwan for the effective agreement performance. Also, the defendants agreed to decide the price of Mar., 2000 with 66~67 dollars for 15″, 89~90 dollars for 17″ after the end of the discussion and, with relevance to the days of operation stop, agreed to do with 10 days for 15″, five days for 17″ in March 2000. Finally, agreed to hold the next meeting including golf meeting on Mar. 25 of the same year in Seoul with the hosting of Samsung SDI.

PH and CPT referred that Korean monitor manufacturers are in better condition than Taiwanese manufacturers, and Taiwanese customers raised discontent that Korean companies had more competitiveness than Taiwanese manufacturers because they receive a special support from Korean CDT manufacturer. Jerry insisted that PH had no sales in Korea.  (The original production quantity was approximately 140k/m.)      (Evidence Sogap Number 3-85)

Additionally, CSM of Korea side working employee is opening from time to time. The employees of PH and CPT also can get invitation to participate regularly in the case of necessary. In order to report at the working employee level meeting that is held in Taiwan, the plan to have Korean manufacturers deliver the related market information to the employee who is in Taiwan was decided later.
(Evidence Sogap Number 3-85)

After the end of an extensive discussion among the meeting participants, the price of March and message were decided to be done as follows: 15″ 67/66 USD, 17″ 90/89 USD
Reduction of operation days: On Mar., 2000, the meeting participants decided as follows:
17″ five days, 15″ 10 days                                          (Evidence Sogap Number 3-85)

Green meeting was decided to be held in Seoul on Mar. 25 (Saturday) by SDI.
AM 8:30-11:30: High-level management meeting
AM 12:00: Start of green meeting                             (Evidence Sogap Number 3-85)

168      The meeting is a top-level CDT multi-party meeting that was held in Korea, and * Kim, * * Kim, * * Lee of Samsung SDI, S. Y. Choi, S. K. Lee (* * Lee), K. Y. Go (* * Go), Mr. Lim (* * Lim) of LG Electronics, * * Jo, J. H. Mun (* * Mun), S. G. O (* * O), Jimmy Kim of Orion, Jim Smith, Jerry Lin, J. K. Park of Philips, Chi-Chun Liu, Ching-Yuan Du of Chunghwa Picture Tubes participated. This is confirmed by the "visit report" that was made by Ching-Yuan Du of Chunghwa Picture Tubes, meeting data that was distributed at the time of meeting, the 'application form of leaving a country' of participants of Chunghwa Picture Tubes, the information of business diary of * * Lee of Samsung SDI, etc.

□ Control inspection of production quantity on April, 2000

169      It is a fact that Samsung SDI, LG Electronics, Orion, Philips and Chunghwa Picture Tubes shared the production control and inspection plan of 15″ and 17″ CDT at the each company's plant worldwide by making a table by date, and agreed to confirm the operation stop by having an employee of each company personally visit the other party's production facility. This is confirmed by the internal approval document and the table of control and inspection of Chunghwa Picture Tubes, which dispatched its employee to confirm the stop of the Samsung SDI production line in Shenzhen, China.

◆ Plan of 15″ CMT production control & inspection –April, 2000 (X10)

| | CPT X 6 | | SDD X 5.5 | | LG X 4 | | ORION X 2.75 | | PHILIPS X 5 | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Place | Inspection | Place | Inspection | Place | Inspection | Place | Inspection | Place | Inspection |
| Sat 4/1 | CPTT #1 #2 CPTY #3 CPTM #8 CPTM #2 | | Suwon #4 Pusan #3 #6 M'sia #6 | | Changwon #H3 #5 Wales #1 | | Kumi 09 BSA Mex #2 | | Chupei #3, 4, 5 (Relocated to China) | |
| Sun 4/2 | CPTT #1 #2 CPTY #3 CPTM #8 CPTF #2 | | Suwon #4 Pusan #3 #6 M'sia #6 | | Kumi #G1 Changwon #H3 #5 Wales #1 | | Kumi 09 BSA Mex #2 | | Chupei #3, 4, 5 (Relocated to China) | |
| Mon 4/3 | CPTT #1 #2 CPTY #3 CPTM #8 CPTF #2 | | Suwon #4 Pusan #3 #6 | | ChangwonH3 H3 0.5 days | | | | Chupei #3, 4, 5 (Relocated to China) | |
| Tue 4/4 | CPTT #1 #2 CPTY #3 CPTM #8 | | Pusan #3 #6 | | | | | | Chupei #3, 4, 5 (Relocated to China) | |
| Wed 4/5 | CPTT #2 CPTY #3 CPTM #8 | | Pusan #3 #6 | | | | | | Chupei #3, 4, 5 (Relocated to China) | |
| Thur 4/6 | CPTT #2 CPTY #3 CPTM #8 | | Pusan #3 #6 | | | | | | Chupei #3, 4, 5 (Relocated to China) | |
| Fri 4/7 | CPTT #2 CPTY #3 CPTM #8 | | | | | | | | Chupei #3, 4, 5 (Relocated to China) | |
| Sat 4/8 | CPTT #2 CPTY #3 CPTM #8 | | [Illegible] #2 | PH | | | Kumi 09 BSA Mex #2 | | Chupei #3, 4, 5 (Relocated to China) | |
| Sun 4/9 | CPTT #2 CPTY #3 CPTM #8 | | Suwon #4 Pusan #3 #6 T (illegible) #2 | PH | Kumi #G1 #G2 Changwon #H3 #5 | | Kumi 09 Mex #2 | | Chupei #3, 4, 5 (Relocated to China) | |
| Mon 4/10 | CPTY #3 CPTM #8 | | Pusan #3 #6 T (illegible) #2 | PH | ChangwonH3 /H5 0.5 days | | | | Chupei #3, 4, 5 (Relocated to China) | |

□ Multi-party meeting on May 26, 2000

170 The defendants agreed to the sales price as the following and decided to notice the price increase to customers immediately, and the defendants agreed to stop the production line of 15″ and 17″ CDT at least over six days for the production quantity reduction and decided to submit the plan until May 30 the same year. The defendants decided to limit the number of participant to two or three people per each company for the way to maintain the confidential of the meeting, and agreed to hold the next meeting in Malaysia on June 20 the same year including golf meeting. This is confirmed by the "visit report" of Chunghwa Picture Tubes and the information that was written with hand on the hotel memo pad of Shanghai international convention center.

> With relevance to the price problem, there was a review to the market condition and the price of Japanese manufacturer. The participants decided as the following after discussion.
> Date of enforcement: July 1, 2000
> Guideline of price: 15″ MPRII: $67 (Core item:$66), 17″ MPRII: $88 (Core item: $87)
> There was a decision that the price of 19″ is necessary to be maintained with the previous agreed price.
> All manufacturers will deliver the agreed price to each customer immediately in order to gain time and to give lead time to customers for a smooth start after July 1.
>
> (Evidence Sogap Number 3-89)

> The participants decided to follow the suggestion of director Liu at the end of discussion.
> -17″ and 15″: At least six days respectively; submittal of the plan by May 30
>
> (Evidence Sogap Number 3-89)

> 1) Jerry requested to all participants <u>not to make a minutes but to keep only the related marketing investigation data</u> because the information of CSM meeting is frequently leaked to outside . . . . All the participating manufacturers <u>agreed to reduce the number of participant from four people to two or three people</u> after discussion.
> 2) Resolution that green meeting is to be held in Malaysia on June 20 (Tuesday) was passed. The meeting schedule is as the following.
> 07:30-12:00 Golf game  (Limited to four people per each manufacturer)
> 12:00-13:00 Lunch  (Brief lunch at Jin Ma Palace)
> 13:00-14:30 Report of SDI marketing investigation
> 14:30-17:30 All the participating president shall visit CPTM that president Lin hosts
>    CDT management meeting
> 17:30-18:00 Dinner (brief dinner at Jin Ma Palace)
> 18:00-21:00 CDT management meeting          (Evidence Sogap Number 3-89)

171     On the other hand, the defendants agreed to increase the price by two dollars for 14″ CDT, 3 dollars for 15″ CDT respectively and to do 87~88 dollars for the sales price for 17″ CDT. Additionally, with relevance to the notice of price increase, agreed to increase to customers until the late May and to decide the production quantity reduction plan until the following week. This is confirmed by the business diary of * * Lee of Samsung SDI.

> <u>Notice of the price increase until the late May capacity control next week confirm</u>
> Price: +2$ 14″, +3$ 15″, 17″: 88$~87$
> Day off: Philips seven days, LG 4 days, Orion & days, Chunghwa six days
> (Evidence Sogap Number 4-29)

□ Multi-party meeting on June 20, 2000

172     The defendants checked mutually whether or not of the possibility of price increase through the sales quantity and increase or decrease rate by each company of 14″, 15″, 17″, 19″ CDT, and LG Electronics confirmed that it had noticed the price increase on May including the customers within the Group, and Philips confirmed that it had sent the price-increase letter to the customer. Additionally, Samsung SDI also revealed that the order condition became good because Samsung Electronics demanded a quick delivery because of the price increase and referred that the price increase will be successful in the case of not attempting to expand the market share among the participating company. Also, the defendants agreed to the guideline of CDT price by standard, and decided to submit the plan until June 28 the same year after deciding the days of production stop on July, 2000 at least six days in the case of 15″, 17″ CDT, and agreed to hold the next management level meeting on July 13 the same year by LG Electronics. This is confirmed by the "visit report" of Chunghwa Picture Tubes and the business diary of * * Lee of Samsung SDI.

> LG notified the price increase of May to customers (Customers local and within Group).
> PH sent a letter that informs the price increase to customers already. On the base of the negotiation condition of customers, there may be no problem to increase the price of 14″. There is also no severe opposition to 15″ . . . . In the case of 17″, the situation is not as optimistic.
> SDI explained that the order of June is a little better than reservation because SEC requested a quick delivery last week because of the problem of price increase mainly. Customers (Including Korean companies) received notice already about price increase, and [SDI] believes that the price increase will be successful surely unless to attempt to touch other company's customers or to attempt to expand the market share, and when it is firm in regard to the price increase.
>
> (Evidence Sogap Number 3-92)

> The meeting participants decided as the following after considering the market condition and the current and actual enforcement price, the acceptability of customers with relevance to price adjustment, the original market share balance:
> (1)  Guideline of 14″/15″ price:
> 14″ MPRII: $54  (Core quantity:$53) and increase at least $2.0/pcs.
> 15″ MPRII $67  (Core quantity:$66) and increase at least $2.0/pcs.
> Date of effect generation: July 1, 2000
> (2)  Price of 17″ normal tube: Maintain the present price. The originally agreed price is delayed by one month and will be enforced from Aug. 1.
>
> (Evidence Sogap Number 3-92)

> Reduction of business day: July 2000
> All of LG, PH, CPT requested the production stop of 15″/17″ of six days. SDI suggested five days. OEC hoped five days for 15″, seven days for 17″. The meeting participants decided as the following after discussion: At least six days for 17″/15″ respectively, -submit the plan until June 28.
> Additionally, the manager-level meeting would in Seoul on July 13 (Tuesday), and it was decided that LG would prepare.
>
> (Evidence Sogap Number 3-92)

173     The meeting participants agreed to apply the price of 14″, 15″ CDT with the price that was agreed on July, 2007 and to delay the price of 17″ one month by saying, "Let's abide by the agreement and delay the time of increase and do not trust the word of customer." This is confirmed by the business diary and statement of * * Lee of Samsung SDI.

> SDI: Keep agreement --> delay price increase➔ do not trust
> 14″/15″ July and agreed price, 17″ delay of one month
>     ➔   Monitoring system: July/Aug.                 (Evidence Sogap Number 4-30)

□ Multi-party meeting on June 28, 2000

174     The defendants checked mutually whether or not of customer notice of the agreed price increase and checked the response of customer with cross. It is possible to know from such fact that the purpose of the meeting was to draw the agreed price after checking whether or not of the price increase on the basis of the information on market demand and supply, which was not to be opened to the public, and to make the performance of agreement to be come true effectively by doing mutual confirmation of the competitor supply price that the customer suggests while also urgently requesting performance from the companies that were delaying the performance of the agreement.

This is confirmed by the "visit report" of Chunghwa Picture Tubes.

> According to Mr. Ha of SDI, ...all of Compal/Delta/KFC/ADI argued that the estimated value of LG is lower. Because of the high price of SDI the above customers canceled the order of SDI.
>
> Mr. Lim of LG made it clear that the total order quantity of LG on June is the same with the numerical value (15″ – 682k, 17″ – 711k, 19″ - 175k) that was opened to the public in the meeting of last week. LG has confidence that SDI was competing with a low price and so LG lost its order, and raised an objection . . . . LG did not win a contract clearly because of a low price.
>
> According to the PH sales information of China, SDI Shenzhen was hesitating and did not show any movement of increasing domestic customer price. Mr. Ha was supported to do investigation and checking work, and was requested to press for the price increase.
>
> (Evidence Sogap Number 3-93)

☐ Multi-party meeting on July 13, 2000

175  In the meeting, with relevance to the Korean market, the participant from Philips discussed with other participants the matters related to the price increase that was requested to Samsung Electronics and Daewoo Electronics, the possibility of price increase through a control of supply quantity, etc. This is confirmed by the "visit report" of Chunghwa Picture Tubes, "meeting preparation data on July 13" that was made just before the meeting opening in the business headquarters of Samsung SDI Digital Display, the meeting data that was distributed at the time of meeting.

> According to each resolution of the last meeting, PH and Hwafei will attempt to adjust the price with $53 (itc/cif) from Aug. 1. Mr. Park of PH said that he demanded the price increase to SEC and Daewoo respectively but had not yet received a definite answer.... The recent supply quantity to SEC/Daewoo is 20-25k/m respectively, and the total sum is about 50k/m. SDI and OEC answered that there may be no other supplier that can supply the above 50k to themselves. PH can ease suppression and can increase the price.
>
> (Evidence Sogap Number 3-95)

☐ Multi-party meeting on Sept. 21, 2000

176     The defendants collected and shared the information that is related to the demand and supply condition of CDT (14″, 15″, 17″, 19″) by standard in the worldwide market and sales trend and discussed the sales quantity and setting plan of sales price henceforward. Additionally, one can conclude, according to the substitution of CDT monitor with TFT-LCD, that Samsung SDI explained on the price plan which could be acceptable to Samsung Electronics, and agreed to set the CDT price with the level that can have competitiveness according to the price change of TFT-LCD.

177     One can conclude from this that the purpose of each company was not to set the production and price by the independent judgment but to adjust the supply quantity jointly and artificially and to adjust also the sales price jointly according to the supply expansion condition of alternative product. The defendants decided to stop the production line of 15″, 17″ CDT during 14 days on Oct., 2000, and agreed to hold the next meeting in Seoul on the afternoon of Oct. 25 for the CDT meeting and on the morning of Oct. 26 for the green meeting, meaning a golf meeting. This is confirmed by the "visit report" of Chunghwa Picture Tubes as well as the meeting data and the business diary of * * Lee of Samsung SDI.

---

( C ) Rational price and TFT substitution trend of 17″ flat tube:

The following is a prospect data that * * Kim of SDI has provided with relevance to the competitiveness of 17″ flat monitor and the market price expected to 15″ TFT LCD:

| 15″ TFT monitor | | | 17″ CDT flat monitor | | |
|---|---|---|---|---|---|
| Item | Present | Prospect | Item | Present | Prospect |
| Module cost | $450~480 | $300 | CDT cost | $110 | $90 |
| Other cost | $100 | $90 | Other cost | $80 | $75 |
| FOB price | $550~580 | $390 | FOB price | $190 | $165 |
| Whole price (FOB*1.2~1.3) | $660~725 | $470 | Whole price (FOB*1.3~1.4) | $247~260 | $214~231 |
| Retail price | $799 | $499 | Retail price | $249~279 | $216~250 |

Currently $799 is higher about 3.2 times than $249 with comparison to the retail price. If we use 2.5 as a factor instead of it, and the price of 15″ TFT monitor is $499, then the price of 17″ CDT monitor should be $499/25 = $199. Therefore, SEC judges that the price of 17″ flat tube should be low than $80, and if not so nobody will purchase it . . . . Therefore, SEC judges that $350 is the ultimate target price to the monitor . . . . However, if the price of TFT is to be decreased, then the price of CDT should also be decreased in order to maintain competitiveness.          (Evidence Sogap Number 3-96)

---

Reduction of operation days: Qct [as the writing of the original] 2000
Resolution: 14 days stop of 15″/17″ production line   (17″ 8 days, 15″ 6 days, 15″/17″: seven days respectively)
Resolution: The next meeting shall be held in Seoul, Korea.
Oct. 25 PM Management level meeting  (AM CPT meeting), Oct. 26 AM Green meeting
                                                                    (Evidence Sogap Number 3-96)

---

□ Multi-party meeting on Sept. 27, 2000

178     In the meeting, the defendants agreed to make a stop plan of 15″, 17″ production line that is in the plant of the whole world during Oct. 2000, and to notice the inspection method to the other party two days prior to the inspection day. Additionally, decided to hold the next meeting at the Taiwanese Taoyuan office of Chunghwa Picture Tubes from 2:00 p.m. on Oct. 4 of the same year. This is confirmed by the "visit report" that was made by Pang-Yi Lin of Chunghwa Picture Tubes.

> Plan of line stop and inspection that each manufacturer reported is annexed. <u>Two days before the inspection day, it was agreed that the manufacturers must provide notice to the other party and to the one that would visit/sponsor.</u>
>
> Mr. Ha said that he hopes that top level management of each manufacturer can participate in the next meeting to discuss the price of Oct. <u>The date of the next meeting is 2:00 p.m., Oct. 4 (3) at the CPT Taoyuan plant</u>.
>
> <div align="right">(Evidence Sogap Number 3-98)</div>

□ Multi-party meeting on Oct. 25, 2000

179   During the discussion of the agreement of the previous meeting by the defendants, the participant of Chunghwa Picture Tubes raised an objection at the point that the operation stop was not performed as the agreement that was agreed at the Wales plant, England, and Mr. Choi of LG Electronics answered that he would reply after confirmation, and the defendants agreed to control the supply and stabilize the price by cooperating to the price decrease request of customers. Additionally, the defendants, in order to prevent the nonperformance of the agreement, agreed to set the price guideline after submitting the minimum price, the average price that were applied to 15″, 17″ CDT product by each company and to produce a table for comparison. They agreed that there was a need to more strictly control the production quantity for the stabilization of price of Nov. 2000 and decided to stop the operation of production line over nine days. Additionally, agreed to hold the next meeting, CDT multi-party meeting at Chunghwa Picture Tubes Malaysia from 9:00 a.m. on Nov. 29 of the same year. This is confirmed by the visit report" and meeting data of Chunghwa Picture Tubes, the application form of leaving a country and a statement of accounts for business trip, a receipt for hotel accommodations at the time of business trip in Korea of the participant of Chunghwa Picture Tubes, the information that is written in the business diary and statement of * * Lee of Samsung SDI, etc.

> (A)  Checking after the last meeting:
> Inspection control: CPT looked back on the inspection to the condition of production stop at the LG Wales plant. CPT employees found that LG had not performed the production stop according to the original plan. Mr. Choi of LG answered that he would answer after their inspection and LG had stopped the production over eight days due to the negative condition of obtaining orders in that month.
> <u>The five main companies must control the balance of demand and supply through close cooperation in order to maintain stable pricing.</u>
>
> <div align="right">(Evidence Sogap Number 3-99)</div>

(C ) Price guideline:

All manufacturers anonymously provided the current prices of 15″/17″ as follows:

|  | Lowest price | | Average price | | Price guideline | |
|---|---|---|---|---|---|---|
|  | 15″ | 17″ | 15″ | 17″ | 15″ | 17″ |
| 1 | $63 | $82 | $64 | $83 | $64 | $83 |
| 2 | $63 | $83 | $64 | $84 | $63 | $83 |
| 3 | $64 | $84 | $65 | $85 | $63-64 | $83-84 |
| 4 | $63 | $82 | $64 | $83 | $64 | $83 |
| 5 | $62 | $81 | $64 | $83 | $64 | $83 |
| Average | $63 | $82.5 | $64.2 | $83.6 | | |
| Lowest price | $62 | $81 | $64 | $83 | $63 | $83 |
| Japan | $58 | $76 | $60 | $81 | | |

After an extended discussion, all the participants agreed that the price must not decreased more on the original price guideline in order to prevent a continuous price decrease: 15″ - $66, 17″ - $85. Until now the price decrease of two dollars each could be permitted. [Written with memoirs] To the main customer (key account), everybody agreed to the point that increasing the price discount was inappropriate.

(Evidence Sogap Number 3-99)

---

Answer 49) It progressed with a similar method as that of the previous management-level meeting in the meeting too. Peculiarity was, at the time of setting price guideline, that one person among the participants who judged that the cheating of participants was disturbing the effective price agreement and its performance suggested to write the current sales price by model without names and to submit those and drew the "lowest price – average price – guideline" on the basis of the result. As a guideline by model, it was agreed at $66 for 15″, $85 for 17″. Additionally, the number of operation stop days of Nov. 2000 was agreed at nine.

(Evidence Sogap Number 2-2)

---

Resolution: The market demand of Nov. is worse than that of Oct., and for the maintenance of price stability there is a need to control the production quantity more strictly. Therefore, the days of production stop to the production line of 15″/17″ must be increased to nine days from seven days on Oct.

The next meeting is scheduled to be held at CPTM: 3:00 p.m. Nov. 28 – CPT management meeting, Nov. 29 a.m. ) (:00  CDT management meeting

(Evidence Sogap Number 3-99)

(7) Meeting among competitors on 2001

<Table 23>        Outline of CDT cartel meeting, 2001

| Serial No. | Date of opening | Agreement | Participated company | Evidence data |
|---|---|---|---|---|
| 1 | Feb. 23, 2001 | Price guideline by each company (15″: 59±2, 17″: 76±2, Flat: 91±3, 19″: 108±3), plan of operation stop | Chunghwa Picture Tubes, SDI, LG, Orion, Philips | p. 2940 of Evidence Sogap Number 4-36 |
| 2 | Mar. 19, 2001 | Price guideline by each company, plan of operation stop | Chunghwa Picture Tubes, SDI, LG, Orion, Philips | p. 1643, p. 1645 of Evidence Sogap Number 3-103 Evidence Sogap Number 4-37 |
| 3 | Mar.28, 2001 | Confirmation of current price, exchange of information | Chunghwa Picture Tubes, SDI, LG, Orion, Philips | p. 1656 of Evidence Sogap Number 3-104 |
| 4 | Apr. 19, 2001 | Price guideline by model (14″: 47±1, 15″: 57±2, 17″: 74±2, 19″: 100±3), plan of operation stop | Chunghwa Picture Tubes, SDI, LG, Orion, Philips | p. 1666 of Evidence Sogap Number 3-105 Evidence Sogap Number 4-38 |
| 5 | June 27, 2001 | Refraining from selling with low price, price guideline by model, plan of operation stop | Chunghwa Picture Tubes, SDI, LPD, Orion (Management level meeting) | p. 1682, p. 1685 of Evidence Sogap Number 3-106 Evidence Sogap Number 3-107 Evidence Sogap Number 4-39 |

| 6 | July 24, 2001 | Price guideline by model, plan of operation stop | Chunghwa Picture Tubes, SDI, LPD, Orion | p. 1721 of Evidence Sogap Number 3-108<br>Evidence Sogap Number 4-40<br>Evidence Sogap Number 2-2 Answer 50) |
| 7 | Aug. 13, 2001 | Refraining from selling with low price | Chunghwa Picture Tubes, SDI, LPD, Orion | p. 1731 of Evidence Sogap Number 3-109 |
| 8 | Oct. 15, 2001 | Price guideline by model, plan of production line stop | Chunghwa Picture Tubes, SDI, LPD, Orion | p. 1731, p. 1739, p. 1741, p. 1744 of Evidence Sogap Number 4-41 |
| 9 | Oct. 23, 2001 | Price increase (Oct. 1: $10, Nov.:$15, Dec.: $5), refraining from selling with low price | Chunghwa Picture Tubes, SDI, LPD (Top level meeting) | p. 1731, p. 1739, p. 1741, p. 1744 of Evidence Sogap Number 3-110 |
| 10 | Dec. 17, 2001 | Price guideline by model (15": 44, 17": 58, 17" Flat: 67, 19": 85, 19" Flat: 100) | Chunghwa Picture Tubes, SDI, LPD, Orion | p. 1759 of Evidence Sogap Number 3-111<br>p. 2970 of Evidence Sogap Number 4-42 |
| 11 | Dec. 28, 2001 | Sales price by model, price difference by detailed specification | Chunghwa Picture Tubes, SDI, LPD | p. 1768~1770 of Evidence Sogap Number 3-112 |

☐ Multi-party meeting on Feb. 23, 2001

180    It is a fact that the defendants set the price guideline after comparing the application price of 15", 17", 19" CDT product by each company at the time, and agreed to stop the operation of production line during 12 days on Mar. the same year. This is confirmed by the business diary of * * Lee of Samsung SDI.

| Price Guide Line | | | | | | |
|---|---|---|---|---|---|---|
| | Orion | SDI | LG | CPT | Philips | |
| <u>15"</u> | 60 | 59 | 57 | 57 | 57 | <u>59±2</u> |
| <u>17"</u> | 76 | 75 | 75 | 74 | 75 | <u>76±2</u> |
| <u>Flat</u> | - | 15 | 10 (?) | 15 | 15 → 13 | <u>91±3</u> |
| <u>19" Con</u> | - | *108 | 108 | 103 | (105±5) S/L | <u>108±3</u> |
| Capa control | | | | | | |

Chunghwa Picture Tubes: 15 days, LG: 14 days, Philips: 14 days, Orion: 6~7 days, SDI: 10 days
12 days (Circle)                         (Evidence Sogap Number 4-36)

181    The defendants exchanged the sales result of Feb. and the estimation of Mar.,2001, and exchanged the information of production change plan of each company. It is possible to know the relationship of Samsung SDI and Samsung Electronics from the statement of the participant of Samsung SDI. That is, it is grasped that Samsung Electronics was being provided 40% from CDT manufacturer besides Samsung SDI, and in the case of not keeping the agreement of CDT multi-party meeting, Samsung SDI may take away the quantity that is provided to Samsung Electronics.

In the meeting, the defendants drew the agreed price by putting together the opinion of each company to the price of 14″, 15″, 17″, 19″ CDT product on Apr. 2000, and agreed the days of operation stop of the production line during April 2001 with 14 days.

182     Additionally, the defendants decided to hold the next meeting in Shanghai, China on Apr. 19 the same year, and decided to hold green meeting, that is a meeting for golf, on Apr. 20. This is confirmed by the "visit report" of Chunghwa Picture Tubes and the information that is stated in the business diary of * * Lee of Samsung SDI.

> Currently, SDI is delivering 60% to SEC, and Taiwanese companies are occupying 20%, and the other Korean companies and the companies of Asia Pacific region are occupying 20%.  SDI referred that the internal transaction quantity became o actually because TSB sold 15″ Minineck to SEC with a low price.
>
> (Evidence Sogap Number 3-103)

| (B) New price guideline of Apr.<br>Opinion and resolution of each manufacturer to the price decision for Apr. is as follows: | | | | | | |
|---|---|---|---|---|---|---|
| | CPT | LG | Orion | PH | SDI | Conclusion |
| 14″ | 47±1 | -- | 47±1 | 47±1 | 48±1 | 47±1 |
| 15″ | 58±2 | 57±2 | 57±2 | 58±2 | 58±2 | 57±1 |
| 17″ | 75±2 | 75±2 | 75±2 | 75±2 | 75±2 | 75±2 |
| 17″ RF | 89±2 | 89±2 | 89±2 | -- | 89±2 | 89±2 |
| 19″ 85khz | 101±3 | 100±3 | 101±3 | 103±3 | 101±3 | 100±3 |
| 19″ 95khz | 106±3 | 105±3 | 106±3 | 108±3 | 106±3 | 105±3 |
| (E) Days of line stop of Apr.<br>Each manufacturer reported to the planned days of operation stop: CPT – 14 days, Philips – 14 days, LG – 14 days, SDI – 12 days. It was finally decided to make the days of operation stop during one month of Apr. to be 14 days.<br><br>(Evidence Sogap Number 3-103) | | | | | | |

□ Multi-party meeting on Mar. 28, 2001

183     The defendants exchanged the information that is related to the sales quantity of 14″, 15″, 17″, 19″ product and the customer response in market. Especially, there is a fact that other participants requested for the participants of Samsung SDI to report and correct to the thing that Samsung Electronics and Hansol Electronics, the customers of Korea suggested a low estimated value. This is confirmed in the "visit report" of Chunghwa Picture Tubes.

> SEC suggested a low price of $111 for 17″ at the international information communication fair, and Hansol suggested an estimated value of $108 for 17″ in order to obtain order. With relevance to the irrational pricing such as that SEC suggests $80 to 17″ RF tube for the obtaining order, all companies want that SDI Taipei should report to headquarters the above act that disturbs the market practices.
>
> (Evidence Sogap Number 3-104)

☐ Multi-party meeting on Apr. 19, 2001

184     The defendants exchanged the information that is related to the changes of sales quantity, the sales price by standard and the trend of customers, the present condition of production line change before the opening of meeting. Additionally, agreed to the new guideline of May 2001 as follows and decided the days of operation stop of production line during May for 14 days. And, they decided to hold the next meeting at Chunghwa Picture Tubes of Taoyuan of Taiwan from May 22 the same year AM 09. The above information is the same with the information that was stated in the business diary of * * Lee of Samsung SDI. This is confirmed by the 'interview report' that was made by Ling-Yun Cheng of Chunghwa Picture Tubes and the information of the business diary of * * Lee of Samsung SDI.

---

(B) New price guideline:
All manufacturers....were wanting to put every effort to maintain the price in order to avoid a condition of big scale adjustment that can disturb market. <u>Manufacturers decided to the price of May as follows</u>.

|  | Result |
|---|---|
| 14″ | 47±1 |
| 15″ | 57±2 |
| 17″ | 74±2 |
| 17″ RF | 87±2 |
| 19″ 85khz | 100±3 |
| 19″ 95khz | 105±3 |

(E) Days of line closing on May
Manufacturers <u>decided to the days of line closing on May with 14 days</u>.
(F) AOB:
It was decided to hold the next meeting at CPT of Taoyuan. (May 22 9:00 AM) CPT will preside the meeting.

(Evidence Sogap Number 3-105)

---

☐ Multi-party meeting on June 27, 2001

185     The defendants exchanged information to the present condition of CDT sales before the opening of meeting. The participant of LG Electronics expressed complaint to the point that Orion intercepted the CDT order of its own company's inside with a low price, and Chi-Chun Liu (chairperson) of Chunghwa Picture Tubes requested to refrain from an aggressive act because such act only expands the loss of member companies.

186     Additionally, the defendants agreed with the sales price guideline of 14″, 15″, 17″, 19″ CDT and the days of production line stop (14 days) on July, 2001, and agreed to hold a meeting at Taiwan Samsung SDI on June 29 the same year for the inspection of production line stop, and agreed to hold the next meeting at Taiwan LPD on July 24 the same year.

Each company agreed with the regulation that the plan of stop by specific production plant, including Suwon, Pusan, Gumi of Korea, and inspection are to be implemented always before 3 days after notice. * * Kim, * * Park, * * Lee of Samsung SDI, * * Choi, * * Lee, * * Go of LPD[33], * * Jo, * * Gang of Orion, Chi-Chun Liu, Sheng-Jen Yang, Wen-Chun Cheng, Ling-Yun Cheng of Chunghwa Picture Tubes were participated in the meeting. This meeting is confirmed by the "visit report" of Chunghwa Picture Tubes, the meeting data that was distributed at the time of meeting, the 'business diary' of * * Lee of Samsung SDI.

LG expressed a strong complaint to Orion to the point that Orion intercepted the order from LG monitor by using the low price of $58 in 17″. Orion denied such suspicion and argued that Orion has concrete evidence that LG suggested estimated value to Taiwanese customers with $61.  VP Liu, chairperson said that in the case that market is poor, to decrease the price to attract sales does not increase sales, and this only expands each company's loss. .. It is hopes that Orion should refrain from aggressive act of intercepting order from LG.                                    (Evidence Sogap Number 3-106)

(D) Price guideline
Several companies agreed to adopt a numerical value that is close to the present condition as a guideline to price estimate.

| 14″ | $43 |
| 15″ | $49 |
| 17″ | $65 |
| 17″ Flat | $78 |
| 19″ 85khz | $90 |
| 19″ 95khz | $95 |

(E) Days of Jul(Quoting the original word as it is) line stop
Several companies agreed to maintain 14 days of line stop on July, and several manufacturers will hold a meeting at SDI Taipei on June 29 PM 02:00 in order to confirm and investigate the implementation of plan.
(F) The next meeting will be held at LG Philips Taipei. (July 24, 13:30)
                                    (Evidence Sogap Number 3-106)

□ Multi-party meeting on July 24, 2001

187     The defendants agreed to do the days of CDT production line stop during Aug. 2001 with 15 days and set the standard price of 14″, 15″, 17″, 19″ CDT. Additionally, agreed to hold the next meeting at the office of Korean Samsung SDI from Aug. 21 PM 01:00 the same year. * * Kim, * * Park, * * Lee of Samsung SDI, * * Choi, * * Lee, * * Go of LPD[34], * * Jo, * * Gang of Orion, Chi-Chun Liu, Sheng-Jen Yang, Wen-Chun Cheng, Ling-Yun Cheng were participated in the meeting, and held CDT multi-party meeting at the LPD office of Taipei, Taiwan according to the agreement of previous meeting. This is confirmed by the "visit report" that was made by Ling-Yun Cheng of Chunghwa Picture Tubes and the information of business diary and statement of * * Lee of Samsung SDI.

[33] LG Electronics and Philips combined the CRT business part of each company as of July 1, 2001 and established a joint venture of LG Philips Display(LPD), and after the time, the executives and staff in charge of CDT sales and business of LG Electronics and Philips were participated in the cartel meeting on behalf of LPD.
[34] LG Electronics and Philips Electronics established LPD (LG Philips Displays Korea Co., Ltd) on June 11, 2001 by the LPD Holdings that was established as a joint venture of CRT business part of each company, and acquired CRT business part from LG Electronics on June 30, 2001 and from Philips Electronics on July 1, 2001 by transfer. After this time, the executives and staff in charge of CRT sales and business of LG Electronics and Philips were participated in the cartel meeting on behalf of LPD.

| (C) Days of production stop during Aug. | |
| :--- | :--- |
| Several manufacturers <u>decided to do the days of production stop during Aug</u>. for the adjustment of production quantity instead of implementing plant closing. | |
| (D) Price guideline: Manufacturers agreed to do the standard price as follows. | |

| | |
| :--- | :--- |
| 14″ | $42 |
| 15″ | $48 |
| 17″ | $64 |
| 17″ Flat | $76 |
| 19″ 85khz | $87 |
| 19″ 95khz | $92 |

(E) AOB. The next meeting is decided to be held at SDI, Korea. (Aug. 21 PM 01:00)

(Evidence Sogap Number 3-108)

□ Multi-party meeting on Aug. 13, 2001

188    Chunghwa Picture Tubes requested to Samsung SDI to stop to supply with a low price in the meeting, and about it Samsung SDI denied this fact. This is confirmed by the "visit report" of Chunghwa Picture Tubes.

> CPT revealed that the current sales quantity increased and <u>requested to SDI not to expand market share by suggesting a low price</u>. <u>If not so, all manufacturers will decrease the sales price henceforward in order to maintain market share and then such vicious circle will damage market severely</u>. SDI argued and protected itself that it did not suggest a low price to new customers and now is transacting business with Philips/AOC of only 19″ flat and do not have relationship absolutely to the product of other size.
> <u>Two manufacturers(Samsung, LPD) were urged to lead to protect the price decrease and to adjust the price of each company</u>.
>
> (Evidence Sogap Number 3-109)

□ Multi-party meeting on Oct. 15, 2001

189    The defendants checked the plan of line operation stop of the production facility("shutdown plan") of each company in the whole world and agreed with the price guideline of 14″, 15″, 17″, 19″ CDT, after exchanging of information such as the increase or decrease of sales-production quantity. This is confirmed by the 'business diary' of * * Lee of Samsung SDI.

> Shutdown plan
> SDI – 2nd stage Suwon - #1 O.K. Malaysia - #4 not yet - 3rd stage: Pusan #5 scheduled
> LPD – 3rd stage O.K. → Lebring & Hwafei – 1 line stop
> Orion: Time is necessary for 3rd stage
> CPT: FOLLOWED THE SKDL
> Price guideline
> 14" $42 15" $43-45 17" $58 Flat $68 19" FST[35] $85          (Evidence Sogap Number 4-41)

□ Multi-party meeting on Oct. 23, 2001

190      According to the sales price increase of TFT-LCD that is the replacement product of CDT, the defendants judged it for the opportunity of price increase and agreed to increase the CDT price with 10 dollars for Oct., 15 dollars for Nov., 5 dollars for Dec. the same year respectively. Additionally, they raised objection to the thing that Samsung SDI expands market share and takes other participants' order quantity by leaving from the agreed price and supplying with a low price in the time of transaction with Samsung Electronics. About to this, Samsung SDI suggested a specific numerical value and denied the fact that secured the order with a low price.

191      Additionally, it is confirmed that the defendants decided the price that is supplied to main customer with a certain rate(2.5 ~ 4%) of low level than the agreed price, and it is possible to know that the price is to be changed connecting with the agreed price. This is confirmed by the "visit report" of Chunghwa Picture Tubes.

> The part that was reached to a common agreement was to increase $10 on Oct. 1 and to increase $15 on Nov. and to increase $5 again on Dec.
>
> (Evidence Sogap Number 3-110)

> The information that CPT raised objection was that Samsung occupied a high market share in a downward market by doing a supportive internal transaction with a low price, and especially tries to secure the order of Taiwanese company with a low price.  SDI refuted it strongly by saying that its own company is not securing the order with a low price but rather losing market share to Taiwanese company is a fact.
> SDI revealed about the internal transaction of group that it was implemented at the level of 3% low than market price, and CPT also revealed that discount rate is 3%. LG discounted 4%, and PH expanded the discount rate from 1% to 2.5%.                          (Evidence Sogap Number 3-110)

192      And, Samsung SDI informed the price of 17", 19" CDT that is to be applied henceforward to the participants and urged to refrain from the price decrease competition even though losing order, and about this, the participants decided to grope a method that can stop competition.

---

[35] FST is the abbreviation of Full Square Tube, and means a product that the corner part of Braun tube display is not round but square.

With relevance to the selecting standard of supply line of CDT customer, it is possible to know that the transaction relationship is maintained in the case that the price gap among suppliers is feeble but it can be changed anytime to the lowest supplier in the case that the price gap among suppliers is big. This is confirmed by the "visit report" of Chunghwa Picture Tubes.

> He requested to all companies to devise a method to improve the current condition and to stop improper competition. LPD agreed and...
> SDI revealed to maintain market with the following price. 17″: $55-57, RF: $66-68, 19″: $85-88. Additionally, SDI urged, in order to avoid a situation that is to be fighting each other by customers, to three manufacturers <u>to agree to a thing that instructs a prohibition of price decrease for obtaining order even though losing order</u>.
>
> (Evidence Sogap Number 3-110)

> Visited AOC after the meeting. The employee of AOC said with laugh that if the gap of price is small we can purchase CPT tube more but <u>if the gap of price is big we of course will purchase from the place that offers the lowest price</u>. Which executive in charge of purchase is not looking for the lowest price and is to waste money intentionally! Chen Wei of Compal, not giving any commitment, revealed that <u>every assignment should be done according to the price</u>.
>
> (Evidence Sogap Number 3-110)

□ Multi-party meeting on Dec. 17, 2001

193    It is possible to know that the defendants sympathized on the thing that CDT market is to be deprived by LCD and agreed to increase the price with a joint action among CDT manufacturers, and the guideline of 15″, 17″, 19″ CDT that are to be applied henceforward is listed in the business diary of * * Lee of Samsung SDI, and discussions   ('internal price increase') to the price increase of internal transaction is also listed in it. This is confirmed by the "visit report" of Chunghwa Picture Tubes and the information of business diary of * * Lee of Samsung SDI.

> The price increase of CDT will accelerate the CDT replacement by LCD, and it may be difficult to acquire it. CPT pointed out the fact that there will always be a lack of time without immediate action and said that the price of the LCD had increased 30 dollars and the CDT plants suffered loss with production.
>
> (Evidence Sogap Number 3-111)

LPD
-Internal: Price increase of 60% for Philips, 95% LG monitor on Dec. 27
Response to price increase: The price increase depends on our response.
Price guideline

|  | Market | New guideline |
|---|---|---|
| 15″ | 41-42 | 44 |
| 17″ | 56-57 | 58 |
| 17″ Flat | 64-65 | 67 |
| 19″ | 82-84 | 85 |
| 19″ Flat | 98 | 100 |
| Internal price increase | | (Evidence Sogap Number 4-42) |

□ Multi-party meeting on Dec. 28, 2001

195    In the meeting, the defendants sympathized to the point that the price should be increased according to the price increase of LCD that is the substitutes of CDT, and discussed to the time of price increase. They discussed the price increase to the internal transaction line and agreed also to the level of price application. To put it concretely, LPD informed the fact that notified the price increase to Philips to other participants, and Samsung SDI revealed the plan to increase the supply price for Samsung Electronics in the case that other member companies agree to the price increase. Searching it concretely, the unit price of transaction within group was agreed to decide at the level that is discounted 2.5% than the agreed price, and agreed to the price difference of tube kinds and terms of payment in order to make the agreement of price increase to be performed effectively. This is confirmed by the "visit report" made by Ling-Yun Cheng of Chunghwa Picture Tubes.

The price of LCD increased with 3 times since Oct. and it is scheduled to be increased $10 additionally on the next month. There must be an opportunity to increase the price during the market condition of CDT is in the state of sustainability still. Besides, because newspapers in Taiwan had already reported to the schedule of price increase of CDT, if failed to increase the price this time, the weak point of CDT manufacturers is to be revealed, and finally the wind of sales price decrease is to blow once more.
(Evidence Sogap Number 3-112)

LPD said that the price increase was a policy that was decided according to the instruction of CEO, and LPD already noticed to AOC/Philips that the price is to be increased.

SDI implied that it is expected that difficulties may follow to the performance of actual increase plan because SEC and other customers do not want to accept the price increase of CDT. However, if manufacturers are to agree to the price plan, then SDI will perform it at the same time.... All the manufacturers agreed to abide by the following principle of estimated value.

(2) Principle of CDT estimated value:

(a) Date of effectuation: Feb. 1, 2002

(b) Unit price of CDT:  (Net-back price, excluding rebate)

| Kind of CDT | Unit price | Unit price of transaction within group (Discount of 2.5%) |
|---|---|---|
| 15" MPRII ITC | $44 | $42.9 |
| 17" FST MPRII ITC | $57 | $55.6 |
| 17" Flat TCO ITC | $67 | $65.3 |
| 19" FST TCO ITC | $82 | $80.0 |
| 19" Flat TCO ITC | $98 | $95.6 |

(Evidence Sogap Number 3-112)

| Price difference by tube kind | | |
|---|---|---|
| | Non ITC → ITC | MPR II → TCO |
| 15" | +1 | -- |
| 17" & 17 Flat | +1.5 | +1 |
| 19" | +2 | +2 |

Terms of payment: Local delivery OA 45 days (end of month), Export delivery: L/C or D/A 60 days

The next top management level meeting will be held at CPT Taoyuan on Jan. 24 12:00.

(Evidence Sogap Number 3-112)

(8) Meeting among competitors in 2002

<Table 24>        Outline of CDT cartel meeting in 2002

| Serial No. | Date of opening | Agreement | Participating company | Evidence data |
|---|---|---|---|---|
| 1 | Jan. 11, 2002 | Confirm whether or not performing the agreed price | Chunghwa Picture Tubes, SDI, LPD, Orion | p. 1778 of Evidence Sogap Number 3-113 |
| 2 | Jan. 18, 2002 | Confirm the performance of price increase again | Chunghwa Picture Tubes, SDI, LPD, Orion | p. 1788 of Evidence Sogap Number 3-114 |
| 3 | Jan. 23, 2002 | Confirm the performance of price increase, increase of sales price | Chunghwa Picture Tubes, SDI, LPD, Orion | p. 1795 of Evidence Sogap Number 3-115 |
| 4 | Jan. 30, 2002 | Agreement of price increase (Apr. $3) | Chunghwa Picture Tubes, LPD | p. 1798 of Evidence Sogap Number 3-116 |
| 5 | Feb. 22, 2002 | Increase of sales price | Chunghwa Picture Tubes, SDI, LPD, Orion | P.1804, p. 1806 of Evidence Sogap Number 3-116-1 p. 1822 of Evidence Sogap Number 3-117 |
| 6 | Mar. 20, 2002 | Increase of sales price targeting Korean customer | Chunghwa Picture Tubes, SDI, LPD, Orion | p. 1826 of Evidence Sogap Number 3-118 |
| 7 | Apr. 22, 2002 | Maintaining the current sales price | Chunghwa Picture Tubes, SDI, LPD, Orion | p. 2971 of Evidence Sogap Number 4-43 |

| 8 | Nov. 28–29, 2002 | Maintaining the current sales price, assignment of market share by customer, penalties in the case of nonperformance | Chunghwa Picture Tubes, SDI, LPD | p. 2974 of Evidence Sogap Number 4-44<br>p. 314 of Evidence Sogap Number 2-1 |
| 9 | Dec, 2002 | Information exchange, maintaining the system of cooperation | Chunghwa Picture Tubes, SDI, LPD, Orion | Evidence Sogap Number 4-45 |

□ Multi-party meeting on Jan. 11, 2002

195      The defendants confirmed mutually whether or not of the performance of price increase that was agreed just before. In the case of Samsung SDI, informed to the participants to take a step to accept the price increase of Samsung Electronics with rapidity, and there is a fact that confirmed whether or not of performance to the participants of LPD who were succeeded to the price increase in the same condition of internal transaction. This is confirmed by the "visit report" of Chunghwa Picture Tubes.

> SEC cannot accept the increase of CDT price. Therefore, SEC is still facing a condition that the price increase is difficult. Additional discussion shall be held for a rapid acceptance of price increase. Additionally, SDI raised a question to LGE that had obtained the order of Gateway 17″ F/19″ F with a very low price. How is it possible for LPD to increase the price successfully to LGE.
>
> (Evidence Sogap Number 3-113)

□ Multi-party meeting on Jan. 18, 2002

196      The defendants exchanged the information of the present condition of production and sales and the response of customer, and then promised to perform the plan of price increase that was agreed, and decided to review the information of price increase again on Jan. 23 the same year. This is confirmed by the "visit report" of Chunghwa Picture Tubes.

> (B) <u>Problem of CDT price increase</u>: In spite of the continuous objection of customers to the price increase of CDT, customers started to understand that such increase is inevitable. <u>With the volition and trust of each CDT manufacturers that are participating in the meeting. The price increase of monitor plant should be progressed without problem this time. Each manufacturer is to participate in the meeting that is scheduled to be held at SDI Taipei on Jan. 23 a.m. 09:30 and will update the information of price increase and review it</u>.
>
> (Evidence Sogap Number 3-114)

□ Multi-party meeting on Jan. 23, 2002

197      The defendants checked mutually the condition of progress of price increase agreement on Feb., and especially, Samsung SDI confirmed the progress status of the price increase to Samsung Electronics for other participants. Additionally, decided to increase the price of CDT 3 dollars on Apr. the same year because demand exceeds supply. This is confirmed by the 'report of meeting result' of Chunghwa Picture Tubes.

---

(A) The price increase and the present condition of manufacturers on Feb. was reported as the following respectively.

(a) SDI

1. SEC: SDI revealed that it would follow the result of discussion that increases the price to SEC, and said that it knows well that all manufacturers are worrying about this issue. Besides, the original estimated value is already higher 60% than the discussed price.   (The price within group is discounted 2.5%); There may be no problem to the price increase.

(B) Subject of 2<sup>nd</sup> price increase of CDT:

<u>In order to shift the price increase of CDT for monitor plant to customer more efficiently in the situation that demand exceeds supply, it is said that CPT would increase the price one more time on Apr. The first stage is to decide with 3 dollars temporarily</u>.                    (Evidence Sogap Number 3-115)

---

□ Two-party meeting on Jan. 30, 2002

198     The participants of the meeting discussed to perform the agreement of the previous meeting, and especially confirmed mutually again to the agreement of 'increase of 3 dollars on Apr.' This is confirmed by the "visit report" that was made by Ling-Yun Cheng of Chunghwa Picture Tubes.

---

<u>LPD will follow certainly the agreement to the overall price increase</u>. Amid demand shows a strong shape, an opinion that the intention should be a thing that increases the price of the models of a variety of size with 3 dollars respectively on Apr. once more again in promoting the monitor manufacturers to shift the part of price increase of CDT to customers effectively was suggested in the meeting of last week (Jan. 23). LPD said that it agrees to the opinion basically.

(Evidence Sogap Number 3-116)

---

□ Multi-party meeting on Feb. 22, 2002

199     It is confirmed that, in the meeting, Samsung SDI discussed with other defendants to the transaction of main customer, and then decided to adjust the sales price of 17″ CDT for Samsung Electronics upward 2 dollars. Additionally, agreed to increase the sales price of a certain CDT size 3 dollars respectively on Apr. the same year and decided to do a final decision about whether or not of performance in the next top level meeting. And, decided to hold the next meeting at the office of Seoul LPD on Mar. 20 p.m. 01:30 the same year. And, as the following, the plan of operation stop of production line ("CDT Line Shutdown Plan") that was established to reduce the supply quantity of CDT jointly was suggested by region. With relevance to Korea market, it is confirmed that the plan of production line stop of the plant of Suwon, Pusan, Gumi of member company is reflected. This is confirmed by the "visit report" that was made by Ling-Yun Cheng of Chunghwa Picture Tubes and the data that was distributed at the time of meeting.

SDI shipped 2-3k of 17″ high definition flat tube to SEC. Currently SDI has no other customers. <u>After discussion of manufacturers, SDI agreed to use the estimate value that is higher $2 than the original price of 17″ flat tube.</u>

(Evidence Sogap Number 3-116-1)

CPT said that the price increase of $2 this time was a thing that the monitor manufacturers can shift the part of price increase of CDT to customers. <u>CPT will increase the price of a certain size $3 respectively again on Apr.</u> CPT hopes that manufacturers prepare a base of mutual understanding and to perform according to it. All of SDI/LPD may not object, but CPT hopes to progress through discussion and <u>can make a final decision at the CEO meeting that is to be held on the next month.</u>
The next meeting will be held at Seoul LPD on Mar. 20 p.m. 01:30.

(Evidence Sogap Number 3-116-1)

| CDT Line Shutdown Plan | | | | GSM/Feb. '02 | |
|---|---|---|---|---|---|
| Maker | Total line | Shutdown line | Original plan | Current situation | Remarks |
| SDI | 16.5 | 5 | Suwon #4, #5, Busan #6 Malaysia #4 (0.5 line) Suwon #1 (0.4 line) Busan #5 | Suwon #4, #5, Busan #6 Malaysia #4 (0.5 line) Suwon #1 (0.4 lines) Busan #5 | *Suwon #4 (17F) restart in SZ (02, 2Q) *M'sia #4 plan to shut down *Plan to shut down |
| LPD | 19 | 6 | Gumi (G1, G2), Dapon (4 lines) Dapon (1 line), Wales #2 (0.5 lines) Wales #2 (0.5 lines), Lebring 0.5 lines (1 line) | Gumi G1 Dapon 2.5 line (5 lines) Wales 0.5 lines Lebring 0.5 lines (1 line) Hwafei 0.5 lines (1 line) | *LPD T line plan to shut down  *Lebrig (?) *Hwafei plan to shut down |
| Orion | 5 | 1.5 | Mexico 1 line Kumi BSA | MXC 1 LINE Kumi 1 line | |
| CPT | 16 | 5 | CPTT #3, #4 CPTM #2 (0.5 LINES), #7 (0.5 LINES), CPTM #6 CPTM #7 (0.5 LINES), CPTY #1 (0.5 LINES) | CPTT #3/#4, CPTY #1/#2 CPTM #2 (0.5 LINES), #7 (0.5 LINES), #8 (1 LINE) | *CTTT #3/#4 will restart in the end of '02 |

□ Multi-party meeting on Mar. 20, 2002

200     The defendants checked the present condition of production and sales by standard and the performance condition of price increase that was previously agreed. Samsung SDI imparted the information that 250,000 units among Toshiba's current sales quantity of 300,000 units are supplied to Samsung Electronics to other participants and Toshiba also informed the plan to increase the price 1 dollar for 17″ CDT, 0.5 dollars for 15″ CDT from Mar. 2002. This is confirmed by the "visit report" of Chunghwa Picture Tubes.

SDI says that the present sales quantity of TSB is 300K and 250K among it is a thing that was supplied to SEC. TSB also will increase the price of CDT $1.0 for 17″, $0.5 for 15″ from Mar.

(Evidence Sogap Number 3-118)

□ Multi-party meeting on Apr. 22, 2002

201     The defendants agreed to maintain the previously agreed price to the price of 3/4 quarter 2002 after exchanging the information of market condition. Additionally, the fact that to induce Thai CRT to participate in the CRT multi-party meeting and discussed to establish a consultative group for the large CDT price discussion apart from the 3 CDT company of Korea is also confirmed. This is confirmed by the data that Seong Deok Park of Samsung SDI transmitted the meeting result through the office e-mail ("secret").

---

3. Plan of 3Q price
-Each company agrees to the idea that should raise the price, but it seems difficult to increase the price actually. Therefore, the opinion is that maintaining the present price may be the best.
4. A.O.B
-Controlling Thai-CRT: Induce to participate in the meeting continuously to Thai-CRT
-Request to establish a consultative group that includes Large/FLAT apart from domestic three companies of CRT

(Evidence Sogap Number 4-43)

---

(8) Multi-party meeting on Nov. 28~29, 2002

202     In the meeting, there is a fact that Chunghwa Picture Tubes urged to reduce the production quantity as the agreement because the market share of Samsung SDI 2002 increased, and Mr. Jo of LPD urged to maintain the present price ("Let's keep the price"). Additionally, agreed to set a targeting market share by main customers and to check performance every week or every month, and the staff in charge and manager shall be replaced in the case of not performing the agreed price and to put penalty of a content that other two companies attack the main customer of the member company that does not perform according to the suggestion of LPD. This is confirmed by the business diary and statement that recorded the information of the meeting by * * Song of Samsung SDI.

---

CPT: Only Samsung didn't reduce lines. Only Samsung saw an increase in M/S in '02 against '01.
LPD: Mr. Cho, "Let's keep the price"
LPD Proposal
-Negotiate on the target M/S and fix it for important customers
-Review every month or week
-Penalty: If company cheat the agreed price
Person in charge and his/her manager will be dispelled.
Other two companies will attack trouble maker's major customers with a low price.

(Evidence Sogap Number 4-44)

---

Answer 28-1) "Only Samsung didn't reduce lines" is a thing that lists the contents stated by the representative of Chunghwa Picture Tubes, and it is a content of discontent that only Samsung SDI is not performing the previous agreement to reduce a production line. "Not fair to CPT" that was recorded in succession is a content that such act of Samsung SDI is not fair in the position of Chunghwa Picture Tubes (CPT) that performed the reduction agreement of production line.

And, "CPT: Each company sets a reduced share target in troubled customers' is a content that Chunghwa Picture Tubes referred, and its meaning is to reduce sales quantity to customers that maximized negotiating power by comparing the price among CDT suppliers. (Evidence Sogap Number 2-1)

☐ Multi-party meeting on Dec. 26 or 29, 2002

203     The fact that the defendants shared the information of 17″, 19″ CDT sales quantity by each company from May, 2002 to Dec., 2002, and established the sales plan of 2003 jointly, and on the other hand decided to have more discussion at the meeting of Taiwan working level ("Need more discussion in Taiwan Working Level MTG") is confirmed in the meeting data.

(9) Meeting among competitors 2003

<Table 25>     Outline of CDT cartel meeting[36]

| Serial No. | Date of opening | Agreement | Participated company | Evidence data |
|---|---|---|---|---|
| 1 | Jan. 2, 2003 | Refraining from the price decrease, assignment of market share by each company (Chunghwa Picture Tubes: 25%, LPD: 305, SDI: 34%), prohibition of the option price | Chunghwa Picture Tubes, SDI, LPD (Working level meeting) | p.1839 of Evidence Sogap Number 3-119 |
| 2 | Feb. 2003 | Agreement of market share assignment and checking its performance | Chunghwa Picture Tubes, SDI, LPD | p.1848 of Evidence Sogap Number 3-120 p.2985 of Evidence Sogap Number 4-46 p.2993 of Evidence Sogap Number 4-47 |
| 3 | Mar. 21, 2003 | Agreement of market share assignment and checking its performance | Chunghwa Picture Tubes, SDI, LPD, Orion | p.1857 of Evidence Sogap Number 3-121 |
| 4 | Apr. 29, 2003 | Agreement of production quantity reduction, market share by customer | Chunghwa Picture Tubes, SDI, LPD | p.1863, p.1866 of Evidence Sogap Number 3-122 |
| 5 | May, 2003 | Refraining from the price decrease targeting Korean customer | Chunghwa Picture Tubes, SDI, LPD | p.1871 of Evidence Sogap Number 3-123 |
| 6 | May 20, 2003 | Agreement of market share assignment and checking its performance | Chunghwa Picture Tubes, SDI, LPD | p.3006 of Evidence Sogap Number 4-48 p.318 of Evidence Sogap Number 2-1 |
| 7 | May 30, 2003 | Agreement of market share assignment and checking its performance, surveillance plan of whether or not performing the agreement of production reduction | Chunghwa Picture Tubes, SDI, LPD | p.1884, p.1889, p.1893 of Evidence Sogap Number 3-124 |
| 8 | June 2003 | Agreement of the sales price by Korean customer of 17″ CDT | Chunghwa Picture Tubes, SDI, LPD | p.1896 of Evidence Sogap Number 3-125 |
| 9 | June 12, 2003 | Refraining from the price decrease targeting Korean customer | Chunghwa Picture Tubes, SDI, LPD | p.3014, p.3016 of Evidence Sogap Number 4-49 |
| 10 | June 17, 2003 | Agreement of market share assignment and checking its performance, assignment of market share targeting Korean customer, maintaining the difference of sales price among customers of major and small scale | Chunghwa Picture Tubes, SDI, LPD (Top level meeting) | p.1912, p.1915, p.1919 of Evidence Sogap Number 3-126 |
| 11 | July 29, 2003 | Agreement of market share assignment and checking its performance, assignment of market share targeting Korean customer | Chunghwa Picture Tubes, SDI, LPD (Management level meeting) | p.1937, p.1939 of Evidence Sogap Number 3-127 Evidence Sogap Number 4-50 p.1951 of Evidence Sogap Number 3-128 |

---

[36] Hereinafter, in the cartel meeting by year and by month, do not list most of the participated companies and participants separately because only three companies of Chunghwa Picture Tubes, Samsung SDI, LPD, the defendants of this case participated in the meeting and agreed.

| 12 | Aug. 28, 2003 | Agreement of market share assignment, closing of production line | Chunghwa Picture Tubes, SDI, LPD | Evidence Sogap Number 3-129 p.1991, p.1974 of evaluation report p.1997 of Evidence Sogap Number 3-130 |
| 13 | Sep. 24, 2003 | Price difference by detailed specification, refraining from obtaining order with a low price | Chunghwa Picture Tubes, SDI, LPD | p.2036, p.2038 of Evidence Sogap Number 3-131 Evidence Sogap Number 3-132 |
| 14 | Oct., 2003 | Refraining from the price decrease targeting Korean customer, price difference by detailed specification | Chunghwa Picture Tubes, SDI, LPD | Evidence Sogap Number 3-133 p.2077, p.2079 of evaluation report |
| 15 | Oct. 28, 2003 | Agreement of market share assignment and checking its performance | Chunghwa Picture Tubes, SDI, LPD (Top level meeting) | p.356 of Evidence Sogap Number 2-2 Evidence Sogap Number 4-51~3 Evidence Sogap Number 3-134 |
| 16 | Nov. 12, 2003 | Agreement of market share assignment and checking its performance, closing of production line | Chunghwa Picture Tubes, SDI, LPD | p.2100 of Evidence Sogap Number 3-135 |
| 17 | Nov. 26~27, 2003 | Sales price by major customer, including Korean customer | Chunghwa Picture Tubes, SDI, LPD | Evidence Sogap Number 3-136 p.2123 of Evidence Sogap Number 3-137 |
| 18 | Dec. 2, 2003 | The whole world market and market share by customer | Chunghwa Picture Tubes, SDI, LPD | p.2125, p.2127, p.2128 of Evidence Sogap Number 3-138 |

□ Multi-party meeting on Jan. 2, 2003

204   The defendants agreed to improve the rate of return by taking action jointly against the request of monitor companies' price decrease after exchanging the information of rate of return of each company. Additionally, assigned market share on the basis of the information of sales quantity of each company 2002, and decided the sales quantity by applying market share that was assigned to the total demand quantity of CDT in the whole world 2003 that was expected according to it.

205   And, the fact that the defendants agreed to the lowest price to the main customer unanimously, and that the defendants decided to maintain the agreed price to the request of customer's price decrease for the achievement of yearly profit target is confirmed. This is confirmed by the report of meeting result of Chunghwa Picture Tubes that has the title of "CDT market analysis."

> With comparison to the situation that the monitor manufacturers of downward industry part are still getting a considerable profit in the production of CRT monitor (For example, the business profit of AOC is about USD 40M in 2002), the sales of CDT is facing loss. This is harmful to the business circles extremely. Henceforward, can it be possible that how 3 manufacturers show their earnestness mutually, and remove the extreme price competition and resist jointly to the price decrease of PC brand manufacturers and monitor OEM manufacturers. Getting profit as a business target is the focal point of our cooperation henceforward.                    (Evidence Sogap Number 3-119)

The market share of 3 manufacturers is to be 28%, 32%, 24% respectively, in the case that the total quantity of CDT in the whole world this year is 82.5M, after classifying the data of real delivery of several manufacturers with 23.2M for LPD, 26.2M for SDI (Excluding 21″), in spite of the response by CPT in the meeting that there is a difference between the real result of the total sales quantity of each manufacturer 2002 and the numerical value that was reported at the CEO meeting on Nov. Additionally, <u>according to the resolution of CEO, sales is to be reduced 7% respectively in 2003</u>, and LPD is to be 21.5M, SDI is to be 24.4M, CPT is to be 18.2M, and among it, the total quantity of CPT in 2003 will be low 400K than the quantity that was decided by CEO. Therefore, it was suggested that the total system must be changed. However, LPD/SDI argued that it must follow the criteria that CEO had decided on Nov., and the result was not changed. <u>This means that market share of each manufacturer of the next year is to be 25% for CPT, 30% for LPD, 34% for SDI.</u>

(Evidence Sogap Number 3-119)

Each manufacturer, openly between each other, <u>came to an agreement unanimously about the level of lowest price to the main customer</u>.
Assuming that the goal of 3 manufacturers is getting profit, the attitude of them is firm very much to the customer's price decrease request. <u>All of them must keep their own price, and have the same interest that should not have an option price more to each customer.</u>
<u>3 manufacturers must keep the price together in order to achieve the yearly profit goal of each manufacturer.</u>

(Evidence Sogap Number 3-119)

□ Multi-party meeting during Feb. 2003

206    In the meeting, according to the following data of sales result of Samsung SDI, Korean monitor manufacturers like Samsung Electronics, LG Electronics, Hansol Electronics, and Hyundai Electronics are included in the 12 big customers, it is possible to know that it is a main target of collusion through a cartel meeting from it.

| 3. Sales result by customer  (Suggestion) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 2002 | | | | | 2003 | |
| | | 1Q | 1Q | 3Q | 4Q | Total | Jan. | Feb. |
| 12 big customers | AOC | 186 | 188 | 203 | 230 | 307 | 65 | 45 |
| | BenQ | 248 | 155 | 151 | 146 | 700 | 23 | 22 |
| | Compal | 151 | 108 | 132 | 201 | 592 | 49 | 46 |
| | Delta | 328 | 118 | 182 | 232 | 860 | 34 | 65 |
| | Lite-On | 184 | 102 | 146 | 92 | 524 | 68 | 20 |
| | Philips | 310 | 265 | 460 | 116 | 1,151 | 46 | 30 |
| | Proview | 658 | 1,010 | 1,077 | 972 | 3,717 | 305 | 325 |
| | Tatung | 33 | 14 | 28 | 22 | 97 | 10 | 6 |
| | SEC | 3,373 | 3,269 | 3,343 | 3,816 | 13,801 | 1,107 | 1,080 |
| | LGE | 28 | 31 | - | 15 | 72 | - | - |
| | Hansol | 104 | 85 | 85 | 85 | 359 | 35 | 27 |
| | Hyundai | 207 | 141 | 186 | 209 | 823 | 52 | 50 |
| | Total | 5,808 | 5,406 | 5,993 | 5,216 | 23,503 | 1,794 | 1,716 |
| 8 Customers | | 516 | 405 | 468 | 598 | 1,987 | 165 | 147 |
| Other companies | | 159 | 161 | 143 | 313 | 777 | 49 | 40 |
| G. total | | 6,483 | 6,052 | 6,604 | 7,128 | 26,257 | 2,008 | 1,905 |

(Unit: 1,000)

Note) Detailed breakdown by customer/model is annexed

Moreover, we know the fact that the participants of Samsung SDI had decided to instruct to the internal employees not to sell at lower price to Korean customers.

We also know that since 2003, the defendants of this case had assigned the worldwide market share based upon the sales data, and during the year of 2003, they checked out each other if there were any occurrences of differences between the monthly sales and the agreed market shares by each company. This has been confirmed by "Meeting Preparation Material" of Samsung SDI and the result report of "CDT Market Review" by CPT  (Chunghwa Picture Tubes Ltd).

> Additionally, Samsung had instructed to its internal employees arbitrarily not to sell bare tubes to the domestic customers or offer the estimate at lower prices.       (Evidence *Sogap* number 3-230)

|       |      | Agreed M/S |      |      |       | Actual |      |      |      |
|-------|------|------|------|------|-------|------|------|------|------|
|       | '02  | (M/S) | Real | '03  | (M/S) | '03.Jan | | Feb | |
| CPT   | 19.2 | 28%  | 19.5 | 17.8 | **28%** | 1.4 | 26% | 1.0 | 22% |
| LPD   | 23.3 | 34%  | 23.2 | 21.7 | **34%** | 1.9 | 36% | 1.7 | 37% |
| SDI   | 26.3 | 38%  | 26   | 24.4 | **38%** | 2 | 38% | 1.9 | 41% |
| Total | 68.8 | 100% | 68.7 | 63.9 | **100%** | 5.3 | 100% | 4.6 | 100% |

(Evidence *Sogap* 4-47)

Multi-party meeting on March 21, 2003

*207*    In this meeting, it is a fact that each company had coordinated the sales information on 14″, 15″, 17″, and 19″ CDTs, and they confirmed if the worldwide market share by each company had been enforced, which was agreed based upon the sales of the year of 2002. It is also true that they checked out each other if they enforced the agreed matters. This is confirmed by the meeting data, which was distributed to the participating companies before the meeting was held.

|       |      | Agreed M/S |      |      |       | Actual |      |      |      |      |      |
|-------|------|------|------|------|-------|------|------|------|------|------|------|
|       | '02  | (M/S) | Real | '03  | (M/S) | '03.Jan | | '03.Feb | | '03.Mar | |
| CPT   | 19.2 | 28%  | 19.5 | 17.8 | **28%** | 1.4 | 26% | 1.1 | 23% | 1.4 | 27% |
| LPD   | 23.3 | 34%  | 23.2 | 21.7 | **34%** | 1.9 | 36% | 1.7 | 36% | 1.7 | 33% |
| SDI   | 26.3 | 38%  | 26   | 24.4 | **38%** | 2 | 38% | 1.9 | 40% | 2.1 | 40% |
| Total | 68.8 | 100% | 68.7 | 63.9 | **100%** | 5.3 | 100% | 4.7 | 100% | 5.2 | 100% |

(Evidence *Sogap* 3-121)

Multi-party meeting on April 29, 2003

*208*    After the defendants had made and exchanged the sales result table of each company, they had modified 72 million CDTs  (Color Display Tubes) which were agreed upon by the CEOs of each company in November 2002 regarding on the worldwide CDT demand to 68 million. They also agreed to cut the production lines and the days operated in order to meet the supply. Moreover, they had checked whether they were abided by till the first quarter of 2003 before the meeting with the table of market share of each company (CPT 28%, LPD 34%, Samsung 38%), which was agreed to apply in 2003.

The included Korean customers among those major 12 companies are Samsung Electronics Co. Ltd. (SEC), LG Electronics Co. Ltd. (LGE), Hansol Electronics Inc, and Hyundai Electronics Industries Co. Ltd., and it has been confirmed that there was a formation of understanding that they do not violate each other with the major customers by each company in the checked-up contents on whether the share per each client company was enforced, which was agreed upon in the CEO meeting. This has been confirmed by the meeting data, which was recorded as the meeting held date ("04/29/2003") and "confidential" in CPT.

---

03 CMT demand lower than previous estimation: 72M (Nov. 2002 CED)→ 68M
Suggestion:
   ☐ Reduction of each maker's sales target to match the reality:
   ■ <u>Reduce 7% of CEO decision  (Reduce 7% of CEO decision)</u>
   ☐ 3 Makers Supply Control:  (Makers supply control)
   ■ Shutdown 0.5 or 1 line in 2H 03  <u>(Shutdown 0.5 or 1 line in 2H 03)</u>
   ■ <u>Decrease working day  (Decrease working day)</u>

                                         (Evidence *Sogap* 3-122)

---

M/S by CEO MTG Decision  (NOTE: Compiled mainly with regard to the Korean customers)

|       | SEC | LGE | HANSOL | HYUNDAI |
|-------|-----|-----|--------|---------|
| CPT   | 8%  | -   | -      | -       |
| LPD   | 5%  | 92% | 60%    | 20%     |
| SDI   | 80% | 4%  | 20%    | 30%     |

2003I CDT M/S (based on CDT shipment)

|       | SEC   | LGE   | HANSOL | HYUNDAI |
|-------|-------|-------|--------|---------|
| CPT   | 0.7%  | 0%    | 0%     | 0%      |
| LPD   | 0%    | 96.7% | 49.4%  | 20.8%   |
| SDI   | 84.8% | 0.8%  | 19.7%  | 49.9%   |

Multi-party meeting during May

*209*  In this meeting they mutually exchanged information on the markdown requests of their customers, thus the fact has been confirmed that Samsung SDI had declined the request for lower price supply of SEC in order to avoid short revenues. This can be confirmed by the result report under the title "CDT market review" of CPT.

---

SDI mentioned that <u>SEC had made inquiries on the willingness of acceptance for lower price orders</u>. <u>SDI had declined the SEC's request</u> due to the fact that 17″ FST had no comfortable production capability and Korea was not acquiring profits from the production of regular tubes. If SDI had accepted the lower price, for instance, $40 USD  (at the current level, $46 ~ $47 USD were offered as estimates), SDI would have shut down earlier than that of the production lines as well as a lot more losses. (Evidence *Sogap* 3-123)

---

Multi-party meeting on May 20, 2003

*210*    The defendants had confirmed the assigned market share to each company in 2003, and they checked out if they were abided by the agreement based upon the sales result values of May of the same year. They held the next meeting on May 27 of the same year, and assured the restriction plan for production in the next meeting. They also decided to discuss on revealing the price and quantity information in a transparent fashion, and organizing to conduct surveillance on deviation of the agreement. This can be confirmed by business handbook and statement of Mr. ▽▽ Song of Samsung SDI.

| * Quantity of May | | | | |
|---|---|---|---|---|
| | Quantity | M/S(%) | Agreed M/S | (Agreed Market Share) |
| **SDI** | 1.68 | 38.6 | **38.2%** | **+0.4%** |
| **LPD** | 1.40 | 32.1 | **34%** | **-1.9%** |
| **CPT** | 1.27 | 29.1 | **27.9%** | **+1.2%** |
| | | | | (Evidence *Sogap* 4-48) |

* Tuesday of Next Week MTG    5/27 09:00
1) June capacity reduction confirmation  (June capacity reduction confirmation)
2) Price/quantity record open under sun  (Price/quantity record open under sun)
3) Committee
 □Financial person check □retired people  □ Making a policing organization
(Evidence *Sogap* 4-48)

Answer 35) Next, CPT had informed in advance regarding on the meeting topic of next Tuesday 1) June capacity reduction confirmation" was the content for confirming whether the contents of production reduction agreement were executed; 2) "Price/quantity record open under sun" was the contents of revealing in a more transparent fashion than the revealing price/quantity by each participant in the same meeting. Finally, 3) □"Financial person check" was presenting the scheme to guide employees in financial affairs division to reveal more accurate information by making them to confirm mutually and "Making a policing organization" was the contents discussed as one of the measures, which guarantee reliably in terms of the enforcement of the agreed contents.
(Evidence *Sogap* 2-1)

        □ Multi-party meeting on May 30, 2003

*211*  This meeting was proceeded in the order of "sales updates of the three companies -> the market share by the group members between January and May in 2001 -> prediction on monitor demands ->discussion on the meeting results of working group from Taiwan -> suspension plan of production lines -> other matters." While they were doing so, the defendants had compared the values of sales results between January and May in order to confirm whether the market shares were abided by, which were agreed upon in 2003. Based upon those results, it was confirmed that CPT had decreased to 1.2%, in case of LPD, the decrease was 0.1%, and Samsung had 1.4% of increase. Moreover, the defendants had agreed upon to assign the market shares by the 12 major CDT customers including SEC, LGE, Hansol Electronics Inc, and Hyundai Electronics Industries Co. Ltd., and

Henceforth, the persons who were in charge of financial affairs of each company had proceeded the auditing, and consolidated the production regulation determining the price tags to assure. This can be confirmed by meeting data reported as held date ("05-30/2003") and "confidential" at that time of the meeting.

| | Agreed M/S | | | | | Actual | | |
|---|---|---|---|---|---|---|---|---|
| | '02 | (M/S) | Real | '03 | (M/S) | Jan~May | | M/S Diff. |
| CPT | 19.2 | 28% | 19.5 | 17.8 | 28% | 6.5 | 27% | -1.2% |
| LPD | 23.3 | 34% | 23.2 | 21.7 | 34% | 8.3 | 34% | -0.1% |
| SDI | 26.3 | 38% | 26 | 24.4 | 38% | 9.7 | 40% | 1.4% |
| Total | 68.8 | 100% | 68.7 | 63.9 | 100% | 24.5 | 100% | |

Further Discussion
- Policy to made:
a) Audit (audit): suggested by Financial personnel in each company
b) Capacity control (capacity control)
c) Settle price matrix (settle price matrix)                     (Evidence *Sogap* 3-124)

*212*     The defendants as they had discussed in the previous meeting, had adjusted by decreasing the sales target in 2003, which was targeted at the outset, reflecting the reality. Hence, they agreed upon to shut down the production lines or cut down the days operated. According to the specific "shutdown plan," it has been confirmed that Samsung SDI had submitted the plan for shutting down 2 of Korean production lines during June in 2003. Finally, the next multi-party meeting by Top management will be held on June 17 in Malaysia, in this meeting, they decided to discuss matters such as the production suspension plan, audit method, and market share finalization.

SDI: Jun. 2003 Korea: 2-line
TOP Meeting (TOP Meeting) – 17th. June in Malaysia
Issues to decide:
a. Shut-down Plan (Shut-down Plan)
b. Audit Method (Audit Method) c. Market Share Finalize (Market Share Finalize)
                     (Evidence *Sogap* 3-124)

☐ Multi-party meeting during June, 2003

*213*     The defendants had agreed to adjust the market share by each company in the CDT market, which was agreed upon at the early 2003, partly reflecting the reality. It has also been confirmed that they agreed upon reflecting the modified values with the shares of each of 12 customers agreeing to maintain the June price fundamentally relating to the July price of the same year, and targeting to maintain the existing market shares, they agreed the prices specifically on the major supply lines.

They also agreed upon to increase the price as much $0.5 USD on the secondary supply line. This can be confirmed by the "CDT market report" of Chunghwa PT.

○ The price was maintained as the June price basically. The prices on the major suppliers were determined, and to the secondary suppliers, it was maintained by adding $0.5 USD. This is for the purpose of strengthening the existing market shares.

○ Newly negotiated prices of each manufacturer in July are as follows.[NOTE: Edited to be centered around the Korean customers]

- 17" FST

| Customer | Type | CPT | LPD | SDI |
|---|---|---|---|---|
| SEC | MPR, ITC | | | ? |
| | TCO, ITC | | | ? |
| LGE | MPR, ITC | | 47 | |

- 17" Flat

| Customer | Type | CPT | LPD | SDI |
|---|---|---|---|---|
| SEC | MPR, ITC | | | ? |
| | TCO, ITC | | | ? |
| | HBT, ITC | | | ? |
| LGE | TCO, ITC | 54.0 | 54.0 | |
| Hansol | 85K, TCO, ITC | | 53.5 | 55.0 |
| Hyundai | MPR, ITC | | 53.5 | 54.0 |

(Evidence *Sogap* 3-125)

☐ Multi-party meeting on June 12, 2003

*214*   The defendants had exchanged the related information on the sales and the prices, and the customers' responses by each customer, and in particular, Samsung SDI relating to the Korean demand vendor, SEC and the participants of CPT had discussed mutually and decided to propose the prices. Moreover, in case of LPD supplying to SEC, there was a danger of the agreed price for SEC being collapsed. Thus, they discussed to refrain from the supplying. Moreover, relating to the general prices, Tony Cheng of CPT had proposed his opinion that at the time of price increase, it should start from the customers with smaller market shares and on the other hand, at the time of price decrease, it should begin from the customers with larger market shares. The defendants proposed the opinion if the price difference was set as $0.2 USD between the major and small scale customers, it would be adequate. This can be confirmed in the recorded contents in the business handbook of Mr. ▽▽ Song of Samsung SDI.

○SEC
- Chunghwa: First, we will follow SDI's price for SEC for now. – Do not come LPD. SEC is tricky. There is a danger of price collapse.

(Evidence *Sogap* 4-49)

> \* The price increase can start from smaller M/S, and the price decrease should be done in a bigger M/S, then M/S can be adjusted.  (Tony Cheng's opinion)
> ○ How are we going to do with the price differences?
>   - It is reasonable to set the price differences as <u>$0.20</u> between major and minor ones.
>   <div align="right">(Evidence <em>Sogap</em> 4-49)</div>

☐ Multi-party meeting on June 17

*215*  This meeting was the TOP management meeting, which was attended by the persons in charge of CDT sales, and the defendants had confirmed the market share differences reflected the actual sales between January and June during the same year with the assigned market share by each company in 2003. CPT had decided to shut down the production lines in Malaysia regarding on the shut-down of the each production line during the third quarter of the same year, and Samsung SDI decided to shut down the production line of Korean Plant. Consequentially, they had predicted that the excessive supply of CDT products in the second half of the year of 2003 would be reduced. Moreover, relating to the agreement on the market share by the 12 major customer companies, they agreed upon to follow the principle of the agreed results among the TOP management and they also made the market share possible by the supply company to adjust.

> Capacity in 2nd half after line shutdown
> - Total supply 34.3M > demand 32.5M
> Principle: Obey the agreement of TOP management decision  (Principle: Obey the agreement of TOP management decision)
> (1) <u>Global M/S → CPT:LPD:SDI = 27.8%:34%:38.2%</u>
> (2) <u>M/S in individual customer is revisable.</u>
> <div align="right">(Evidence <em>Sogap</em> 4-49)</div>

*216*    Moreover, the defendants had submitted the opinions of each company regarding on the assignment of the market shares by each customer company. We can see that this had made the suppliers simplified on one customer company ("simplify suppliers in one customer") to avoid from competition. After they did coordinate the opinions of each company, five customer companies including SEC and LGE, etc. with the occurrence of different views, they agreed upon the supply ratio by each company after they did tuning the opinions. According to the results, in case of SEC, Samsung SDI would supply 80%, and CPT would do that with 10%, 3% by LPD, in case of LGE, LPD was 96%, and Samsung SDI decided to supply 2%. The defendants empathized that it was necessary to have the differences of market shares between the main force company and small scale supplier for price stability; therefore, they decided to put differences of minimum $0.5 USD. This is confirmed in the meeting data of CPT.

| Y2003 (Kpc/m) | Original TTL Prod | M/S (%) | | | Q'ty | | | Revised TTL Prod |
|---|---|---|---|---|---|---|---|---|
| | | CPT | LPD | SDI | CPT | LPD | SDI | |
| AOC | 11000 | 60% | 30% | 5% | 6600 | 3300 | 550 | 10300 |
| BenQ | 2200 | 66% | 17% | 17% | 1452 | 374 | 374 | 1625 |
| Compal | 2000 | 28% | 48% | 23% | 560 | 960 | 460 | 1500 |
| Delta | 1500 | 0% | 50% | 40% | 0 | 750 | 600 | 1300 |
| Lite-On | 2900 | 92.5% | 0% | 7.5% | 2683 | 0 | 218 | 3500 |
| Philips | 7700 | 18% | 74% | 0% | 1386 | 5698 | 0 | 6750 |
| Proview | 4500 | 0% | 0% | 95% | 0 | 0 | 4275 | 4100 |
| Tatung | 1700 | 95% | 0% | 5% | 1615 | 0 | 85 | 1100 |
| Samsung | 16000 | 8% | 5% | 80% | 1280 | 800 | 12800 | 15300 |
| LGE | 8300 | 0% | 92% | 4% | 0 | 7636 | 332 | 9000 |
| Hansol | 1000 | 0% | 60% | 20% | 0 | 600 | 200 | 700 |
| Hyundai | 1000 | 0% | 20% | 30% | 0 | 200 | 300 | 1000 |
| 12 Total | 59800 | | | | 15576 | 20318 | 20194 | 56175 |
| Others | 12200 | | | | | | | |
| Overall | 72000 | | | | 15576 | 20318 | 20194 | 56175 |
| M/S in 12 | | | | | 26.0% | 34.0% | 33.8% | |

Concept: (1) to simplify suppliers in one customer  (to simplify suppliers in one customer)
(2) Major with high portion (above 80%), minor with low portion (below 20%)
(3) less noise & price trouble  (less noise & price trouble)                    (Evidence *Sogap* 3-126)

-In order to have stable price it is necessary to have big difference of share and reasonable price gap between major and minor suppliers
-At least US$0.5 price gap between Major & minor supplier.  (At least US$0.5 price gap between Major & minor supplier)                    (Evidence *Sogap* 3-126)

☐ Multi-party meeting on June 29, 2003

*211*  The defendants had exchanged the related information to the sales status and operation status of production lines, and they discussed the necessity of consolidating the regulation of the market shares. In particular, in case of the defendants supplying at a lower price than an agreed price on one customer, we can see the structure, which can be influenced by the entire CDT market prices. That is, CPT said they would supply at a lower price to LGE and Phillips on the fact that LPD had supplied at a lower price on Compal. There is also the fact that SEC had pressured Samsung SDI for price decrease by citing the price for Compal.

UPD had insisted that the estimation offered to the HP project by Compal was $40.5 USD. If we all considered the price gap among ITC, Glare/Mpr2, and canceling coil, the above price is not at the level of massively low level than that of the current market prices. CPT insisted that glare  (in terms of price cut) should be considered only as $2.0 USD. They criticized that canceling coil should not be used as the cause of price cut and that point was a debated matter at numerous times already. The calculated price by this method is at the comparable level to that of AOC as $44.0 USD. If this is the market price, CPT will propose the above price as an estimate to LGE/PHS. SDI also showed their quite discomfort on this, and it had been criticized for a long time for this in Korea. Perhaps, it seems like SEC had used the Compal price to receive the equal treatment from SDI. After all, LPD made clear that they would try to increase the price, and report it hereafter again.

(Evidence *Sogap* 3-127)

*218*  Moreover, relating to the sales for SEC, Samsung SDI let the participants of CPT know that Toshiba did appreciate for the smooth supply on SEC resulted from the price support by CPT.

Moreover, regarding on the 7% upward adjustment of sales market share for SEC by CPT, they agreed to achieve the 7% market share in the next meeting at the working level.

> TSB will continue to produce through September. For SEC supply, it will be continued during December. Hence, we appreciate for having the smooth supply to SEC by the price support of CPT. Relating to the market share request of 7% by CPT, in the next meeting at the working level; we will propose the plans to determine the assignment by plant and model to let CPT achieve the market share of 7%.
>
> (Evidence *Sogap* 3-127)

*219*  Also, the defendants had agreed upon CPT to shut down one line of plant located in Malaysia, and Samsung SDI to do so with one production line of plant located in Korea till the third quarter of 2003. Moreover, it is a fact that they agreed upon the market shares by each major customer company at the second half of 2003.

**2H '03 M/S Adjustment (finalized by TPE Working Level MTG)**

| M/S% | CPT | LPD | SDI | Others | Total |
|------|-----|-----|-----|--------|-------|
| **SEC** | 7% | 3% | 82% | 8% | 100% |
| **LGE** | - | 96% | 2% | 2% | 100% |
| **Hyundai** | - | 20% | 50% | 30% | 100% |
| **Hansol** | - | 40% | 20% | 40% | 100% |
| 2H Total | 9.7M(28.7%) | 11.5M(34.1%) | 12.6M(37.3%) | 3.6M | 37.4M |

*220*  This meeting was a CDT multi-party meeting at the management level, which was held in Samsung SDI office in Seoul, and attended by Chun Cheng Ye from CPT, and employees in charge of CDT sales-marketing of Mr. ▽▽ Lee from Samsung SDI. This can be confirmed by the "CDT market report" of CPT, and business handbook of Mr. ▽▽ Lee of Samsung SDI, and the distributed data at that time of the meeting.

☐ Multi-party meeting on August 28, 2003

*221*  In this meeting, resulted from checking out if it was executed in terms of the market shares by each company agreed upon at the second half of 2003  (Samsung SDI 37.3%, LPD 34.1%, CPT 28.7%), the participants had agreed upon to add or subtract the market shares reflecting the amount of materials, which was not meet or exceeded portion, relating to the sales plan in 2004 on the facts that Samsung SDI had exceeded 0.5%, and LPD and CPT had the shortages of 0.1% and 0.4%, respectively. Moreover, the defendants had decided to assign the sales of each company to adapt the predicted 2004's demands based upon the market survey institutions and the market analysis data of each company, and

they agreed upon the shut-down schedule during the 3rd quarter of 2003. Relating to the same shut-down schedule of the production lines, we can see that Samsung SDI decided to continually apply pressure to decide upon the shut-down schedule of LPD production lines.

| M; % | Sales target | 2003 | | Sales plan for 2004 – sales target + 2003' gap failing to achieve the target |
|---|---|---|---|---|
| | | Achievable quantity | gap | |
| CPT (27.8%) | 16.8 | X | A=X-16.8 | 14.5 + A |
| LPD (34.0%) | 20.6 | Y | B=Y-20.6 | 17.7 + B |
| SDI (38.2%) | 23.1 | Z | C=Z-23.1 | 19.9 + C |
| Others | 6.5 | | | 2 |
| Total | | | | 54 |

(Evidence *Sogap* 3-129)

| Company | '02.End | '03.Mar | | '03.Jun | | 03.30 | | Capa. |
|---|---|---|---|---|---|---|---|---|
| | | Lines# | Shutdown Line | Lines# | Shutdown Line | Lines# | Shutdown Line | Per line |
| CPT | 11 | 10 | Taiwan: 1Line | 9 | Malaysia: 1Line | 8.0 | Malaysia: 1Line | 200K/m |
| LPD | 11.5 | 11.5 | | 10.5 | Huafei: 1Line Wales: 1Line Changsa:+1Line | 9.5 | ? | 200K/m |
| SDI | 11.5 | 11.5 | | 9.5 | Korea: 1Line | 8.5 | Korea: 1Line | 240K/m |
| Total | 34 | 33 | | 29 | | 26 | | |

It is difficult to deal with the line shut-down schedule of LPD in Hwafei due to the fact that there has been the exchange of opinions between internal divisions, although the LG group, PH group, and the venture partner in the actual place in Mainland China were all related. SDI will continually put pressure on them.

(Evidence *Sogap* 3-130)

☐ Multi-party meeting on September 24, 2003

*222*    In this meeting, the participants from LPD had informed other participants that they would determine the sales price of 17" CDT in accordance with the agreed rules in the previous meeting, and they also agreed upon the price difference by detailed items of 17" CDT products. Furthermore, the defendants decided to share the information related to the precedent supply at the lower price breaking away from the agreed items of understanding, and refrain from the lower orders, which cause confusion of market price.

✤ PD had explained that the 17″ regular tube had been developed, and the amount of cost reduction was approximately $3.00 USD (DY said that it was approximately $1.00 USD). They can enter into mass production in October. <u>The proposed price will follow the rules agreed on in the previous meeting</u>, and this is only $1.00 USD lower than the price of old model.

✤ <u>The price difference between ITC and N-ITC</u>[37]: <u>LPD had proposed to decrease from at the outset of $1.50 USD to $0.50 USD in terms of the price gap between 17″ ITC and N-ITC</u>. However, the sudden decrease of the $1.00 USD gap could be the actual price increase to the customers; therefore, would there be any difficulty in implementation? SDI did hint that this may be successful if we notify the customers regarding the US SI increase. <u>It was decided to start the run.</u>

<div align="right">(Evidence <em>Sogap</em> 3-131)</div>

---

Lastly, the Chairman of the meeting pressed everyone <u>not to try to secure at the scene of the OEM orders, and they said that this kind of behavior would give rise to the confusion of the market prices</u>.

<div align="right">(Evidence <em>Sogap</em> 3-131)</div>

☐ Multi-party meetings around October, 2003

*223*     In this meeting, Samsung SDI had been concerned that the behavior of CPT supplying at lower prices to SEC could have effects on the pressure of price cuts in their company, and CPT had promised not to break away from the agreed on prices regarding this. Furthermore, they had judged that the price differences, which can occur following the detailed specification of CDP products, could obstruct the execution of the agreed prices; therefore, we can see the fact that they decided to allot the prices as a collaboration regarding the detailed price difference by agreeing to make a table of price differences by detailed specification. It was agreed that the next meeting would be the meeting of TOP management on November 26 under the supervision of LPD in Korea.

---

SDI is very concerned with the matter of price and delivery conditions agreed upon between SEC and Chunghwa on the 17″ FS N-ITC. SDI and SEC have been in transactions of ITC tubes only; therefore, <u>if the ITC price becomes cut to $0.50 USD lower than that of the standard price on SEC by CPT, there is no doubt that this is another tactic for the price cut for SEC. As a result, because it could have an effect on the sales price of SDI to SEC</u>, CPT requests strongly not to adjust to $0.50 USD with the price difference to SEC or make the delivery of goods of N-ITC. Our reply was that we could follow the resolution of the meeting, and <u>we had already replied verbally that the $1.50 USD difference will be decreased to $0.50 USD. We also guaranteed that it would not break away from the agreed on price</u>.

<div align="right">(Evidence <em>Sogap</em> 3-133)</div>

---

[37] ITC means that it is a product of complete adjustment in terms of its purity and convergence to make the quality of Braun Tube as in optimal condition, and in the case of N-ITC, it means that it has not been adjusted to the ITC condition.

| Item | | Current Price Standard | New Price Standard | Note |
|---|---|---|---|---|
| TCO -> MPR2 (TCO standard) | 15″ | 0 | 0 | |
| | 17″ | -1 | -0.5 | |
| | 17″F | -1 | -0.5 | |
| | 19″ | -2 | -1 | |
| | 19″F | -2 | -1 | |
| MPR2 -> glazing/non-reflective (MPR2 standard) | 15″ | -2 | -1/0.5 | |
| | 17″ | -2 ~3 | -1/0.5 | |
| | 17″F | -2 ~3 | -1/0.5 | |
| ITC -> N-ITC (ITC standard) | 15″ | -1 | -0.5 | |
| | 17″/F | -1.5 | -1 | Besides SEC – 0.5 |
| | 19″/F | -2 | -1.5 | |
| Frequency | 15″ (48K -> 57K) | +1 | +1 | |
| | 19″/F (95K -> 85K) | -2 ~3 | -1.5 | |

---

III. TOP meeting
 - Time: The meeting will be held in the afternoon of November 26th, and golf will be played in the morning of November 27th.
- Location: Jeju Island, Korea
- LPD will host the meeting
Main agenda:
A. <u>To determine the worldwide market shares in 2004 regarding the 3 companies and manufacturers for individual major monitors. (SEC/LG/ADC/PHS/EMC, etc.) percent.</u>
B. <u>The market demand situations and plans for enforcing the production line suspension.</u>

(Evidence *Sogap* 3-133)

---

☐ Multi-party meeting on October 28, 2003

*224*     The defendants had checked out by making a table if the agreed market shares were well implemented, which were agreed upon by each company at the 2nd half of 2003, and they also agreed upon the option prices by detailed specifications. Relating to the worldwide market scale in 2004, they agreed upon 54 million, and they decided to discuss this by taking the submission of the market shares (proposals) by the customer until the next meeting regarding the 51 million besides the remaining 3 million of customers' demands, with the exception of the 12 major customers. They also decided to hold the next TOP multi-party meeting in Jeju Island on November 26 of the same year. This can be confirmed by the meeting materials of CPT and Samsung SDI, the business handbook and statement of Mr. ▽▽ Lee of Samsung SDI, and "The result report of the CDT Glass Meeting."

---

Reply 53) In the same meeting, they checked on how well they had been following the market shares in 2003 (SDI: 24.4%, LPD: 21.7%, CPT: 17.8%) agreed upon by each company. Furthermore, in the same meeting, the participants discussed the option prices, and they then consulted to show the effects of the increased prices by decreasing the price gap according to coating, DY attachment, and frequency, etc.

(Evidence *Sogap* 2-2)

---

☐ Multi-party meeting on November 12, 2003

225    The defendants discussed 'the present sales conditions by each company in 2003 -> pre-estimate of worldwide CDT demands -> quota simulations of the market shares -> shut-down schedules for production lines,' and decided upon the market shares in 2004 as Samsung SDI 37.7%, LPD 34.0%, and CPT 28.3% after reflecting the actual sales as standards Samsung SDI 38.2%, LPD 34.0%, and CPT 27.8% relating to specifically the market share quota in 2004. They also agreed upon the line shut-down schedule for production lines in 2004 in order to dissolve the excessive demands fitting to the predicted demands of the markets. This can be confirmed by the distributed data at the time of the meeting.

|  | Sales | Original Target | M/S | Reflect of Reality | M/S | Plan | M/S |
|---|---|---|---|---|---|---|---|
| Mpcs;% | Y2002 | Y2003 |  | Y2003 |  | Y2004 |  |
| **CPT** | 19.2 | 17.8 | 27.8 | 16.5 | 27.1 | 15.0 | **28.3** |
| **LPD** | 23.3 | 21.7 | 34.0 | 20.6 | 33.8 | 18.0 | **34.0** |
| **SDI** | 26.3 | 24.4 | 38.2 | 23.8 | 39.1 | 20.0 | **37.7** |
| 3sub-ttl | 68.8 | 63.9 | 100 | 60.9 | 100 | 53.0 | **100** |
| Others | 15.0 | 8.0 |  | 5.7 |  | 3.0 |  |
| Grand-ttl | 82.0 | 72.0 |  | 66.6 |  | 56.0 |  |

(Evidence *Sogap* 3-135)

☐ Multi-party meeting between November 26th and 27th, 2003

226    In this meeting, they discussed the quota of market shares to the major customer companies (SEC, AOC, BenQ, and Compal, etc.), which could not be agreed upon in the minutes before the meeting on the date of 11.12.2003, and relating to the price of the 17″ flat CDT, the member companies, which were agreed upon as the major supply line of large size customers including SEC, had agreed upon the prices, which would be proposed by each company by the customer companies to be enable to propose them as cheaper prices than the supply price of other member companies. This fact can be confirmed by the meeting hosting plan and the meeting data.

| Unit: US$ | CPT | LPD | SDI | Remark |
|---|---|---|---|---|
| AOC | 47 | 47 | 48 | Agreed $0.5 price gap advantage is gone |
| LiteOn | 47.5 | No offer | 48.5 | Price gap advantage is gone |
| Philips | 49.5 | 49 | 48.5 | Though SDI offer the lowest price among all, but no order. LPD price under suspicion. |
| Proview | 48→47 | 47 | 48 | |
| SEC | 51.3→50 | 51.5 | | |
| Compal | No offer | 49.5 | 49 | |

(Evidence *Sogap* 3-137)

☐ Multi-party meeting on December 2, 2003

*227*    After exchanging the information of the current sales situation at the time of the meeting, while the defendants were discussing the decrease of production lines, they reported that LPD decided to shut down 5 lines in Hwafei in Chia until the first half of 2004, and Samsung SDI also announced the facts that they had shut down 1 production line in Suwon and Busan at the beginning of 2003, and at the beginning of 2004 they would shut down 1 production line in Busan.

⊕ PD explained that <u>they decided to shut down</u> at the 1st quarter of 2004, during <u>the beginning of the same yea</u>r, <u>5 lines in Hwafei in China (approximately 80K/m of the production capability of each line)</u>
⊕ DI already <u>shut down one production line in Suwon and another Busan</u> at the beginning of this year, and in the 3rd quarter they converted 1/2 lines in Shenzhen into 21″F CPT production according to the new TV tube demand. Currently, there are a total of 9 lines, and they have internal plans to decrease the production capability by converting 1 line in Busan for TV tube production at the beginning of the year.
          (Evidence *Sogap* 3-138)

*228*    Furthermore, it has been confirmed that Samsung SDI had agreed on the market shares by each company by subtracting the exceeding market shares in 2004 regarding the exceeding fixed market shares in 2003, and they agreed as below in the market share quota by each customer. By the defendants agreeing upon the prices by option, it seems that they tried to prevent the effects of an actual price cut. This can be confirmed in the 'CDT market report" of CPT.

However, this year, the total performance record <u>exceeded 39.1%, which was a quota from SDI</u>. According to the previous proposal, <u>the quantity of SDI sales for next year should be restricted with this year's excess quantity</u>. Therefore, regarding the quantity as indicated clearly in the following table, it became <u>CPT 15M (28.3%), LPD 18M (33.9%), and SDI 20M (37.8%).</u>

(Evidence *Sogap* 3-138)

| M/S % | CPT | LPD | SDI | Others | Total |
|---|---|---|---|---|---|
| SEC | 7% | 4% | 82% | 7% | 14,500 |
| LGE | - | 98% | 1% | 1% | 10, 958 |
| Hyundai | - | 20% | 55% | 25% | 717 |
| Hansol | - | 40% | 10% | 50% | 461 |

[Note: Compiled mainly with regard to the Korean customers]            (Evidence *Sogap* 3-138)

The aim is maintaining the ITC conversion costs of the CDT manufacturers. In principle, LPD/SDI had agreed upon this aim. However, <u>the supply products of SDI -> SEC and LPD -> LGE are mainly ITC tubes. That kind of measure would apply correspondingly to the price cuts on each customer within the group.</u> Even if in the case of CPT, which could not manage its internal production capability, the method of sales as the form of B + D tubes is possible. Consequently, they emphasized that this would not have any effect on the prices, and they urged a review of the possibility of execution.

(Evidence *Sogap* 3-138)

(10) Assembly between competitors in 2004

< Table 26>        Summary of the CDT Cartel Meeting in 2004

| Series Number | Holding Date | Agreed Contents | Participating Companies | Evidence Data |
|---|---|---|---|---|
| 1 | 01.27.2004 | Maintenance of the current sales price, agreement on the market shares by each company and check-up on the enforcement | CPT, SDI, LPD | Evidence *Sogap* 3-138 Page 2155<br>Evidence *Sogap* 3-140 Page 2181<br>Evidence *Sogap* 4-54~5 |
| 2 | 02.23.2004 | Agreement on the market shares by each company and check-up on the enforcement | CPT, SDI, LPD | Evidence *Sogap* 4-56 Page 3047<br>Evidence *Sogap* 4-57 |
| 3 | 03.02.2004 | Agreement on the market shares by each company and check-up on the enforcement, production reduction | CPT, SDI, LPD | Evidence *Sogap* 3-141 pages 2180, 2181, 2184<br>Evidence *Sogap* 4-58 Pages 3053, 3054, 3057 |
| 4 | 03.15.2004 | Increase in the sales price (5% increase after notifying 10% increase) | CPT, SDI, LPD | Evidence *Sogap* 4-61 Page 3074<br>Evidence *Sogap* 2-1 Page 324 |
| 5 | 03.25.2004 ~ 03.27.2004 | Increase in the sales price (every customer, every kind of machine: $2 ~ 3 USD), price differences by detailed specifications, schemes for specific price increase | CPT, SDI, LPD | Evidence *Sogap* 3-142 Pages 2186, 2192<br>Evidence *Sogap* 3-143 Pages 2197, 2200<br>Evidence *Sogap* 4-62 Page 3078 |
| 6 | 04.26.2004 ~ 04.27.2004 | Agreement on the market shares by each company and check-up on the enforcement, price increase by machine type (15″, 17″, 19″ CDT) | CPT, SDI, LPD (TOP meeting) | Evidence *Sogap* 3-144 Pages 2229, 2234<br>Evidence *Sogap* 3-145 Page 2226<br>Evidence *Sogap* 4-63 |
| 7 | 05.06.2004 | Check-up on price the increase in April and increase plan in May (15″, 17″: $2, 19″: $3), the price differences between 6 large and other transaction lines ($1.00 USD) | CPT, SDI, LPD | Evidence *Sogap* 4-64 Page 3085 |
| 8 | 05.24.2004 | 1st and 2nd price increases by machine type | CPT, SDI, LPD | Evidence *Sogap* 4-65 Page 3088<br>Evidence *Sogap* 4-66 ~7<br>Evidence *Sogap* 3-146 Page 2254 |

| 9 | 06.02.2004 | Transactions between affiliates and regular increase in the sales prices | CPT, SDI, LPD | Evidence *Sogap* 3-147 Page 2257 |
|---|---|---|---|---|
| 10 | 06.28.2004 ~ 06.29.2004 | 3rd price increase | CPT, SDI, LPD (TOP meeting) | Evidence *Sogap* 3-148 Page 2267 |
| 11 | 07.26.2004 ~ 07.27.2004 | Agreement on the market shares by each company and check-up on the enforcement, maintenance of the current sales price, and maintenance of confidentiality | CPT, SDI, LPD (Management meeting) | Evidence *Sogap* 3-149 ~ 50 Evidence *Sogap* 4-69 Page 3105 Evidence *Sogap* 4-68 |
| 12 | 08.17.2004 ~ 08.18.2004 | Maintenance of transaction prices among the affiliates, maintenance of the current sales price, and production reduction | CPT, SDI, LPD | Evidence *Sogap* 3-152 Page 2300 Evidence *Sogap* 3-151 Evidence *Sogap* 4-70 Page 3115 |
| 13 | 09.21.2004 | Agreement on the market shares by each company and check-up on the enforcement, production reduction | CPT, SDI, LPD (Management meeting) | Evidence *Sogap* 3-153 Page 2313 Evidence *Sogap* 3-154 ~ 6 |
| 14 | 10.26.2004 | Agreement on the market shares by each company and check-up on the enforcement, supply cut, maintenance of the current sales price | CPT, SDI, LPD (Management meeting) | Evidence *Sogap* 3-157 Evidence *Sogap* 4-71 Page 3120 |
| 15 | 11.2004 | Sales prices by each company with the Korean customers as subject | CPT, SDI, LPD | Evidence *Sogap* 3-158 Page 2356 |
| 16 | 11.15.2004 | Schemes for maintaining confidentiality, promoting the enforcement of previous agreed upon matters, agreement on the market shares by each company and check-up on the enforcement, and production reduction | CPT, SDI, LPD | Evidence *Sogap* 3-159 Evidence *Sogap* 3-160 Pages 2375, 2378, 2381 |
| 17 | 11.24.2004 | Prevention schemes for price cuts | CPT, SDI, LPD | Evidence *Sogap* 3-161 Evidence *Sogap* 3-162 Pages 2406, 2410 |
| 18 | 12.01.2004 | Agreement on the sales prices by each company and the quota of the market shares | CPT, SDI, LPD | Evidence *Sogap* 3-163 Pages 2435, 2430 |
| 19 | 12.29.2004 | Agreement on the sales prices by each company and shut-down scheme for production lines | CPT, SDI, LPD | Evidence *Sogap* 3-164 Pages 2452, 2455 Evidence *Sogap* 4-72 |

☐ Multi-party meeting on January 27, 2004

*229*     In this meeting, we can see that the defendants exchanged information on the current sales and the present operational conditions, and they had agreed to maintain the prices. This resulted from the confirmation of whether or not the market shares by each company in 2004 had been abided to by comparing with the actual sales, it had appeared that Samsung SDI and LPD had exceeded by 0.5% and 1.2%, respectively and that CPT could not achieve 1.7%. Furthermore, it has been confirmed that they had been operating the numbers of the worldwide production lines of each company at the time of the meeting, as Samsung SDI 9, LPD 11.5, and CPT 8 lines, and agreed to cut the lines by 7.5, 8.5, and 7 lines each relating to the agreement on the production cuts. They decided to hold the next meeting by the supervision of LPD in Taiwan on May 2 of the same year. This can be confirmed with the 'report for overseas business trips' of CPT, the business handbook of Mr. ▽▽ Lee of Samsung SDI, and the presentation data at the time of the meeting.

○ LPD mentioned that they have still been making a business loss, and hope to maintain the original conditions with all the prices. <u>SDI also insisted on the importance of the price maintenance</u>
○ Relations between the partners was very good. Considering the price rise of the raw materials, the tube prices should be maintained for the time being.          (Evidence *Sogap* 3-139)

| company | Line Control Plan & Status | | | | | | |
|---------|--------|--------|--------|----------------|---------|------|---------------|
|         | 02.End | 03.0`1 | 03.02  | 03.03 Target   | Current | Gap  | 04.01 Target  |
| CPT     | 11.0   | 10.0   | 9.0    | 8.0            | 8.0     | 0.0  | 7.0           |
| LPD     | 11.5   | 11.5   | 10.5   | 9.5            | 11.5    | 2.0  | 8.5           |
| SDI     | 11.5   | 11.5   | 9.5    | 8.5            | 9.0     | 0.5  | 7.5           |
| Total   | 34.0   | 33.0   | 29.0   | 26.0           | 28.5    |      | 23.0          |

☐ Multi-party meeting on December 23, 2004

*230*   In this meeting, with resulted from checking out the enforcement matters of the market shares by each company, which were agreed upon in the previous meeting, the defendants have no differences of opinion approaching closely to the agreed upon numerical values of the sales. They had agreed upon the adjustment after reconfirmation of the numerical values of the sales of the transactions lines, which were problematic until February 26th of the same year, and they held the next meeting in the LPD office between March 2 and March 3 of the same year. This can be confirmed by the data from "the DDM's working level meeting result report of Samsung SDI, and '3 company meeting at 14:00 on 02.23.2004 (LG)' recorded in the schedule of Mr. ▽▽ Song of Samsung SDI.

3. Meeting Contents
  - <u>Overall, there was no loud noise as M/S had come close to the agreed value and the 3 companies are in fact showing favorable sales performance, and also there was no loud noise as M/S had come close to the agreed value.</u>
1) January results and forecast for February

|                | CPT   | LPD   | SDI   | TOTAL |
|----------------|-------|-------|-------|-------|
| January result | 1,284 | 1,644 | 1,793 | 4,721 |
| M/S            | 27.2% | 34.8% | 38.0% |       |
| February result | 1,370 | 1,694 | 1,900 | 4,964 |
| M/S            | 27.6% | 34.1% | 38.3% |       |

=> Decided to adjust after re-checking on the figures of the problematic accounts by 2/26 (AOC, EMC, SEC, COMPAL)

(Evidence *Sogap* 4-56)

③ Multi-party meeting on March 2 ~ 3 in 2004

*231*   The defendants checked out mutually how great the differences of sales results were between January and February of the same year, against the market shares of each company (Samsung SDI 37.7%, LPD 34.0%, CPT 28.3%), which were agreed upon in 2004.

As a consequence, it was confirmed that Samsung SDI and LPD exceeded 0.3%, and 0.4%, respectively, and CPT were unable to achieve 0.7%. In addition, relating to the agreement "04's Line Control Plan" for production lines, they agreed upon cutting the fixed numbers of lines additionally in order to maintain the optimal production lines by each company during the 1st quarter of 2004. After agreeing upon those market shares and the production cuts, the defendants had agreed upon the CDT prices from the 2nd quarter of 2004 in order to prevent the profit decreases. This can be confirmed by the presentation data from CPT and Samsung SDI, 'CDT Top Meeting (3/2)' prepared by Mr. ▽▽ Lee of Samsung SDI, and the business handbook of Mr. ▽▽ Lee of Samsung SDI.

| Mpcs;% | '04.Jan | | | '04.Feb | | | '04.Jan~Feb | | |
|---|---|---|---|---|---|---|---|---|---|
| | Sales | M/S | M/S Gap | Sales | M/S | M/S Gap | Sales | M/S | M/S Gap |
| CPT | 1.3 | 27.2% | -1.1% | 1.4 | 27.9% | -0.4% | 2.7 | 27.5% | -0.7% |
| LPD | 1.6 | 34.8% | 0.8% | 1.7 | 34.0% | 0.0% | 3.4 | 34.4% | 0.4% |
| SDI | 1.8 | 38.0% | 0.3% | 1.9 | 38.2% | 0.4% | 3.7 | 38.1% | 0.3% |
| 3sub-ttl | 4.7 | 100% | 0.0% | 5.0 | 100% | 0.0% | 9.8 | 100% | 0.0% |
| Others | 0.2 | | | 0.2 | | | 0.4 | | |
| Grand-ttl | 4.9 | | | 5.2 | | | 10.2 | | |

(Evidence *Sogap* 3-141)

| Company | Additional Line Shutdown Plan (Additional Line Shutdown Plan) | | | |
|---|---|---|---|---|
| | Factory | Schedule | **Line Reduction** | After # of Line |
| **CPT** | Fuzhou 1L | Q1.'04(?) | 1L | 7.0L |
| **LPD** | Nanjing 2.5L Changwon 0.5L | Q1.'04 Q1.'04 | **3L** | 8.5L |
| **SDI** | Busan 1L Another 0.5L | Q1.'04(?) ? | **1.5L** | 7.5L |

(Evidence *Sogap* 3-141)

So, to prevent from profit loss, **CDT price has to be increase[d] from Q2, '04.**

☐ Multi-party meeting on March 15, 2004

*232*    We can see that the defendants had exchanged the sales information at the time of the meeting and agreed to increase the prices from the shipment of April 1st of the same year and notify the customers of the 10% increase in collaboration, pushing through to a 5% increase. This can be confirmed by the business handbook of Mr. ▽▽ Song of Samsung SDI.

- CPT's opinion ☐ Even if we lower the prices, we cannot prevent the CDT market decreases.
☐ If we lose this opportunity, then it would be more difficult.
- LPD's opinion ☐ Price increase
☐ How are we going to cooperate for price decrease after increasing it?  -> It is necessary to prepare for the method of avoiding this
☐ Timing wise: The only option is doing it as soon as possible (ASAP)
4. The method for price increase
- <u>Say we will increase by 10%, but increase by 5%</u> (LPD)
- <u>Everyone announces to our customer at the same time.</u>
- <u>April 1st Shipment increase price</u>

(Evidence *Sogap* 4-61)

---

Reply 43) We discussed the method of the price increase, where it says "say we will increase by 10%, but increase by 5%," it meant that will notify the customers of 10% price increase, but will actually increase only by 5%. 'Everyone announces to our customer at the same time' is the record of the agreed contents to set equally between the participating companies in terms of the notifying time for the price increase, which the customer companies try to avoid. As far as I remember, there was a forecast that in the wider markets at that period of 2004, the prices would go up. Therefore, the feeling was that increasing the prices altogether among the participating companies would not be that difficult. Relating to the time point of the price increase, "April 1st shipment increase price' was the record of the discussions for increase to be applied from the shipment of April 1st.

(Evidence *Sogap* 2-1)

⑤ Multi-party meeting on March 25th ~ 27th, 2004

233    We can see that the defendants had discussed increasing the price of CDT to $2~3 USD with every type and size, and they had decided to proceed with the preparation work in collaboration in order to succeed with the price increase. The defendants had agreed upon the specific prices of 15″, 17″, and 19″ of CDTs by 6 big customers and other customers, and it has been confirmed that they asked the enterprises, which were not the major suppliers regarding the 6 big customers, to offer the price of $0.50 USD higher than that of the major suppliers, and agreed upon the new optional prices.

---

Considering the price increase of the major materials and flexibility of the glass supply, <u>we have a plan to increase the prices of every type and size to $2-3 USD for all the customers.</u> Each applicable account manager will submit the proposals for the price set-up for each customer. Furthermore, with the responses from the customers, we should closely scrutinize the movements of the competing brands, and should determine if we are going to take the venture opportunity of the 2nd price increase. On the market situations, we recommend submitting the suitable news data.

(Evidence *Sogap* 3-142)

---

On April 1, the prices of the current new standards will be adjusted.

| Size | Tube Type | The customers of the world's 6 large CDT monitor | | | Other customers |
|------|-----------|---------|-----|-----|-----|
| 15" | 48K | MPR2 | B+D | 37 | 38 |
| 17"FS | | MPR2 | B+D | 44 | 45 |
| 17"RF | | MPR2 | B+D | 49 | 50 |
| 19"FS | 85K | MPR2 | B+D | 65 | 66 |
| 19"RF | 95K | TCO | B+D | 76 | 77 |

Those 6 large major customers are AOC, Philips, ECM, LightOn, SEC and LGE.

(Evidence *Sogap* 3-143, 4-62)

To the large customers, the 2nd-rank suppliers should propose higher prices of $0.50 USD. This is aimed at stabilizing the market shares, and this is to utilize the opportunities to emphasize the price differences between the large and small scale customers. Because the series of price increases can occur without any warning, the price will rise by only $2-3 USD at the 1st step. We also have to inform the customers on the Z steps of potential price increase. Thereupon, we must give DEM customers a certain amount of delivery time. In addition, the simultaneous option prices will be enforced. The specific items will be as follows:

Item          Size          Current Price          Adjusted Price

| | | | | |
|---|---|---|---|---|
| MPR2→ TCO | 15" | | 0 | 0 |
| | 17"/17"F | | +1 | +0.5 |
| | 19"/19"F | | +2 | +1 |
| MPR2→ Glare/Anti-glare | 15"/17"/17"F | | -2 | -1/0.5 |
| [prepared as a note: "B+D"] N-ITC → ITC | 15" | | +1 | +0.5 |
| | 17"/17"F | | +1.5 | +1 |
| | 19"/19"F | | +2 | +1.5 |
| Frequency | 15" (48K→57K) | | +1 | +1 |
| | 19"/F (95K→85K) | | -2~3 | -1.5 |

234      Furthermore, according to the presentation data at that time of the meeting, they had also agreed upon the enforcement plan for the price increase by the specific time points. Specifically, on March 29, 2004, they had notified the customers about the official price increase, and they decided to distribute news materials of the price increase between March 30th and 31st of the same year. In addition, they decided to explain the background for the price increases and the reasons by having contact with the customers between April 1st and 10th, and after that time, to check out the enforcement situations in the meeting in Taiwan. The next TOP meeting was decided to be held on April 26, 2004 in Shanghai in China under the supervision of Samsung SDI. This can be confirmed in the "report for business trips' of CPT, the business handbook of Mr. ∇∇ Lee of Samsung SDI, and the presentation data, which was distributed during the meeting.

| ///. CDT Price Increase | | |
|---|---|---|
| Date | Acts | Note |
| March 26 | Meeting of the management - discussion | |
| | - Price differences? | |
| | The price gap by size and type including the new option prices | |
| | - When? | |
| | The starting point for applying the new prices | |
| | - Who will notify to whom? | |
| | The major and minor market sharers | |
| | | |
| March 29 | Sending out the official letters to the customers | |
| | | |
| March 30 ~ 31 | News materials | |
| | - CPT of Taiwan, LPD of Korea, SDI | |
| | | |
| April 1 – 10 | Meeting with the customers | |
| | - The explanations on the backgrounds and the reasons for the price increase | |
| | | |
| April - | Talk at the working level in Taipei - confirm | |
| | - Feedback from the customers | Twice/Monday |
| | 5/10 | |

```
Top Meeting Schedule
- Date: Apr. 26(16:00~18:30) Top meeting
         Apr. 27(morning) Green meeting
- Place: Shanghai, China
- Host: SDI
                                    (Evidence Sogap 3-142)
```

⑥ Multi-party meeting on April 26th ~ 27th, 2004

*235*    The defendants had checked out, based on the actual sale information, if the market shares of quota by each company in 2004 were abided by after sharing the information on the sales data and the current increase and decrease situations of each company at that time of the meeting. They agreed upon the guidelines for the price increases in April in 2004 with 15″, 17″, 19″ CDTs allowing the supply at lower prices of the 1 US dollar difference to the main force supplier to the main customers ("1st Tier") including SEC and LGE. Furthermore, it has been confirmed that they decided in collaboration by making a table of the applicable prices to the new optional prices. This can be confirmed by the presentation data, which was distributed at the time of the meeting, '4/26 (Monday) CDT TOP MTG in Shanghai' among the business handbooks of Mr. ▽▽ Lee of Samsung SDI, and the emails exchanged among the participants before the meeting.

| Mpcs;% | '04.○1 | | | '04. Apr | | |
|---|---|---|---|---|---|---|
| | Sales | M/S | M/S Gap | Sales | M/S | M/S Gap |
| **CPT** | 4.1 | 27.7% | -0.6% | 1.3 | 27.6% | -0.7% |
| **LPD** | 5.4 | 34.4% | 0.4% | 1.6 | 33.2% | -0.7% |
| **SDI** | 5.7 | 37.9% | 0.2% | 1.8 | 39.2% | 1.4% |
| **3sub-ttl** | 14.9 | 100% | 0.0% | 4.7 | 100% | 0.0% |
| **Others** | 0.7 | | | 0.2 | | |
| **Grand-ttl** | 15.7 | | | 4.9 | | |

(Evidence Sogap 3-144)

| Size | Type | SPEC. | Suggested increase |
|---|---|---|---|
| 15" | CV | 48kHz, MPR, N-ITC | **38.0** |
| 17" | CV | MPR, N-ITC | **45.0** |
| 17" | SMF | MPR, N-ITC | **50.0** |
| 19" | CV | 85kHz, MPR, N-ITC | **66.0** |
| 19" | SMF | 95kHz[38], TCO, N-ITC | **77.0** |

※US\$ Favor for 1st Tier is allowed only for 1 Major vendor
 * 1st Tier: SEC, AOC, LG, Philips, EMC, Lite-on

(Evidence Sogap 3-144)

---

[38] This means that the products with the horizontal frequencies are a maximum of 85khz and 95khz, respectively among the individual monitors of the 19″ 85khz and 19″ 95khz, and the horizontal frequencies are the numerical values showing how many times per 1 second it can display the horizontal lines. The higher the horizontal frequency support is, the higher the technology that has been applied to the product.

☐ Multi-party meeting on May 6, 2004

*236*     The defendants at the time of the check-up of whether there was any price increase in April during the same year, LPD had confirmed whether or not Samsung SDI had enforced the price increase, and after discussing the price increase in May after that time, the defendants had increased by 2 dollars with 17″ CDT and 3 dollars with 19″ CDT, and they had determined the quantity of the goods by company and agreed to maintain the 1 dollar price difference with 6 big transaction lines including SEC and LG, and other transaction lines. This can be confirmed by the report for the meeting results prepared by Mr. Hoon Choi of Samsung SDI.

---

3. Relating to the price increase in April and May
 (1) The price increase review in April
  -  LPD: Challenged SDI by mentioning one after another specifically saying that <u>SDI did not maintain the price</u>
<u>increase in Delta, Compal, ADC, and SEC</u>
  - SDI: Explained that prices were actually all increased by explaining on the price difference between DFT/DF and the unchanged L/C prices which were already opened for some accounts
 (2) The price increase in May
  - LPD: <u>At the time of the price increase in April, there was a part that SDI did not abide by. In the case of May, we will increase when we confirm whether or not SDI and CPT has increased.</u>
  - CPT: The price increase of the 19″ Flat is difficult. It can kill the 19″ Flat market. In the case of the 19″ FST, let's increase it by +$2 USD, and keep the Flat.                                   (Evidence *Sogap* 4-64)

---

☐ Proceeding scheme for the price increase in May
 ☐ The price increase in May (15″/17″ +$2 USD, 19″ +$3.0)
 ☐ The quantity of the price increase
  - CPT: 6 big transaction lines + BenQ, the amount of materials in May 50%
  - LPD: 6 big transaction lines + Delta, the amount of materials in May 50%
  ☐ The price difference of 6 big transaction lines (9SEC, ADC, PHS, LGE, Proview, L/on) and other transaction lines: $1.00 USD

                                                                                (Evidence *Sogap* 4-64)

---

☐ Multi-party meeting on May 24, 2004

*237*     In this meeting, they had debated that CPT would stop the shipment before the price increase for SEC of Samsung SDI, or the price increases of Phillips and LGE should be returned for protection of the affiliates. Hereof, Samsung SDI had promised to increase the price at the earliest stage possible, and at the time of the next price increase, they had agreed that they would increase the price for SEC going first and do that for the other customers. Furthermore, we know that they had checked out whether they had enforced this after the defendants had confirmed by making a table to see if the assigned market shares had been abided by at the time of the meeting by each company in 2004 and they had confirmed the prices of 15″, 17″, and 19″ CDTs, which were agreed upon to increase in April and May in 2004, respectively.

This can be confirmed by the report for meeting results, which were reported to the Headquarters through SDI Mr. Hoon Choi's emails, the business handbook of Mr. ▽▽ Song of Samsung SDI, and the 'CDT Management Meeting (5/24)', which was prepared in order to help them to decide their stance before the meeting at the Sales Headquarters, and the presentation data distributed at the time of the meeting.

---

3. Relating to the SEC 2nd price increase
   - CPT: The new P/O(6/11) price on 60K of non-shipped quantity among the total quantity of 90K in June
did not reflect the 2nd increased prices -> The suspension of the shipment from 6/14
   While they were requesting to SDI for the settlement at the early stage for the 2nd price increase, simultaneously, they had requested to LPD to suspend all the shipments with CPT
   - LPD: According to the market survey of LGE, there was no increase of the set street price of SEC. In accordance with this, they are pressuring LPD. If the price of SEC does not increase, in order to protect the Captive customers, plans to pay back the increased price of PHS and LGE at the second price increase on 6/1
   - SDI: 6/15 coerced closing (15"/17"+ $2.0 USD). They had explained that they are in the process of continually negotiating with SEC, and would settle at the earliest possible stage
4. Relating to the 3rd price increase
   - They said that as long as the price increase of SEC has not been accomplished, the 3rd price increase would be difficult, and they made it clear that from the 3rd price increase, after SEC's price increase first, they would push forward with the price increase with other transaction lines
(Evidence *Sogap* 4-65)

---

I. 1st, 2nd Price-up

| Size | Type | SPEC. | Apr(A) | May(B) | Gap(B-A) |
|------|------|-------|--------|--------|----------|
| 15" | CV | 48kHz, MPR, N-ITC | 38.0 | 40.0 | 2.0 |
| 17" | CV | MPR, N-ITC | 45.0 | 47.0 | 2.0 |
| 17" | SMF | MPR, N-ITC | 50.0 | 52.0 | 2.0 |
| 19" | CV | 85kHz, MPR, N-ITC | 66.0 | 66.0 | - |
| 19" | SMF | 95kHz, TCO, N-ITC | 77.0 | 77.0 | - |

☐ Multi-party meeting on June 2, 2004

*238*   In this meeting, the participants of the CPT side criticized that both Samsung SDI and LPD delayed the supplying price increase to the affiliates, saying that this is not keeping up with the agreement, and the defendants had agreed to increase by 1 dollar to the 6 top-tier companies, and 2 dollars each to other customers regarding on the product prices of 15" and 17" CDTs from July 1 of the same year. This can be confirmed by the 'CDT market report" prepared by Ibon Yun of CPT.

> 3. We have had <u>criticism pointing out in the meetings at numerous times that such delaying behaviors are unfair to our major customers of</u> both <u>SDI and LPD regarding delaying the price increase to the internal customers of the groups</u>.
>
> 4. When we analyze the supply and demand situations, it seems that the market will maintain fertile continually, and this is also another opportunity for the price increases. <u>The 3 companies had taken the shared stances with July 1 as the enforcement date. It is scheduled that the price increases for 15″ and 17″ regarding the 6 top-tier companies as $1.00 USD, and $2.00 USD on the other customers.</u> By doing this, the differences between the 1<sup>st</sup> and 2<sup>nd</sup> class customers will become bigger. (Evidence *Sogap* 3-147)

☐ Multi-party meeting between June 28 ~ 29, 2004

239     We can see that the defendants had confirmed by making a table of the gap among the market shares in 2004 by coordinating the actual sales information, which was achieved in the first half of 2004. Furthermore, they had checked out if the agreements on the 1st price increase in April and the 2nd price increase in May of the same year had been enforced on the CDT products of 15″, 17″, and 19″, and they agreed to increase the prices of 15″ and 17″ CDT products by 1 dollar from July 15 of the same year after executing the 2nd price increase regarding SEC by Samsung SDI. This can be confirmed by the presentation data at the time of the meeting.

> 3. 3rd Price-up (3rd Price-up)
> - Conclusion: Only increase 15″, 17″F
> (Effects from July 15th after succeeding from SDI to SEC 2nd time price-up)
> - Price Difference: 15″ + USI, 17″ + USI
>
> (Evidence *Sogap* 3-148)

*240*     The defendants had agreed to hold the next CDT Management meeting on July 26~27 in Shanghai in China under the supervision of Samsung SDI, and the TOP meeting on August 19~20 in Gonmyung in China under the supervision of CPT.

☐ Multi-party meeting between July 26~27, 2004

*241*     In this meeting, the employees in charge of CDT business-marketing for Samsung SDI, LPD, and CPT held the CDT multi-party meeting at the management level as they had agreed in the previous meeting. Furthermore, according to the 'Report for the CDT Meeting Results" of Samsung SDI, the defendants had agreed to maintain the CDT sales prices at the level at that time and the sales in August of 2004 at the level of June preparing for the LCD price falls, and they also discussed taking care not to get caught in the investigation regarding on the Anti-Trust Law.

This can be proved by the agreed fact in terms of the items mentioned in the "CDT market report" of CPT. This can be confirmed by the business handbook of Mr. ▽▽ Lee of Samsung SDI, 'CDT Meeting Result Report' reported to the Headquarters of Samsung SDI, 'CDT market report' of CPT, and the presentation data at that time of the meeting.



2) Agreed items
   ☐ LCD price is falling sharply, but even if price gets reduced, the effect on the CDT demand will be small -> watch the LCD price situation, but <u>maintain the current price level for a while</u>
   ☐ <u>Maintain sales in August to the level of June</u>
   ☐ We should make an effort not to conflict with the Anti-Trust Law (rumors of an LCD investigation) with Glass MTG

(Evidence *Sogap* 4-69)

☐ Multi-party meeting between August 17~18, 2004

*242*   It has been confirmed that the defendants had agreed to stabilize the CDT prices in collaboration due to the fact that CPT would become pressured for price cuts from the customers and they could influence the same effect on other defendants. This can be confirmed by the email that notifies the location change by ☐☐ Kim of LPD before the meeting, and the "returning report from overseas traveling" prepared by Cheng Chun of CPT, etc.

○ We could have made the market prices reasonably and uniformly by the price adjustment at the 2nd quarter. <u>However, SDI/LPD did not state the market prices to the internal customers for the groups (that is, SEC/LGE). When they compared the market prices, the current prices are $2.00~$3.00 USD lower per product.</u>
○ The CPT price is relatively higher than the price of SDI/LPD. When the market falls, the pressure from the customers will be the greatest. To make a profit, CPT will endeavor to find a suitable method of market price stability. <u>The first thing we have to do is request SDL/LPD to regulate their yield.</u> Otherwise, after supply exceeds demand, it would be difficult to maintain the prices.
○ <u>Due to the fact that SEC has been seeing the loss, if rumors circulate of the CDT price cut, then obviously, SDI will receive the request for big price cuts in that year and it will have more effect on SDI. Consequently, SDI agrees to make the price stability their priority.</u>          (Evidence *Sogap* 3-152)

243   Furthermore, the defendants had decided to maintain the current prices in August in 2004 while they were debating the price adjustment scheme in the second half of the year in 2004 and 2005, and after September to adjust the price guidelines. In addition, it has been confirmed that they would take the method of the main force supplier leading and other defendants following for the price control during off-peak, and checking on the prices weekly; however, they decided to introduce a penalty system for the time of defaults. The defendants had also recognized that it would be necessary to reduce production, and as a short term measure they decided to reduce the manufacturing days, and for the long term to shut down the production lines. This can be confirmed in the presentation data of Samsung SDI.

   ✓  Aug. '04: Maintain the current price (maintain the current price)
   ✓  From Sep. '04: Adjustment of Price Guideline (From Sep. '04: Adjustment of Price Guideline)
   ✓  How to control in slow season

☐  Multi-party meeting on September 21, 2004

244      The dependents examined the differences in the market share of 2004 for each company individually by the third quarter of 2004, which was previously agreed upon, based on the sales reports made by them. Regarding the reduction of output, they agreed to reduce additionally one production line of each company, respectively in the fourth quarter of 2004 and the first quarter of 2005 on the basis of the production lines of each company agreed upon in June 2004. This resulted from their intentions to reduce the production lines artificially in order to minimize the excessive supplies of Color Display Tubes (CDTs), assuming that the demands of CDT worldwide in 2005 would be approximately 50 million. This can be verified through documents such as, 'Market Report on CDTs' made by Chunghwa Picture Tubes, Ltd., the hotel receipts for Chunghwa Picture Tubes and the documents on travel expenses to Korea.

**·'04 Capacity control guideline review**

| company | Plan & Current Status | | | '04.04(C) | Gap(B-C) | '05.01(D) | Gap(B-D) |
|---|---|---|---|---|---|---|---|
| | '03 Top meeting(A) | Current(B) | Gap(B-A) | | | | |
| CPT | 8.0 | 8.0 | 0.0 | 7.0 | 1.0 | 6.0 | 2.0 |
| LPD | 9.5 | 9.5 | 0.0 | 8.5 | 1.0 | 7.5 | 2.0 |
| SDI | 8.5 | 9.5 | 1.0 | 8.5 | 1.0 | 7.5 | 2.0 |
| Total | 26.0 | 27.0 | 1.0 | 24.0 | 3.0 | 21.0 | 6.0 |

'05 Capacity control suggestion
- reduce the CDT capacity among 3 makers to 50M in '05

(Evidence *Sogap* number 3-153)

☐  Multi-party meeting on October 26, 2004

245      It is found that the defendants examined documents to see if the sales volume of each company matched up with the market share assigned for each company in October 2004, and they discussed the agreement on reduction of the market share and additional production line in the market of CDT for the future. In addition, they agreed to reduce the supplies from November 2004 and to maintain the sale prices until the end of the year. This can be verified through the presentations at meetings at that time and the 'Report on CDT MTG' by Samsung SDI.

2. Prospects and countermeasures for November
- In November, they agreed to reduce the supplies for each company (100K/month individually in comparison with the previous month)
☞ 3 Company Total 5.5M in October, 5.2M in November, 4.8M in December and to 4.5M in January.
3. Agenda on sale prices
- They agreed to maintain the sale prices until the end of the year.        (Evidence *Sogap* number 4-71)

☐  CDT multi-party meeting held around November 2004

246     The defendants compared the sale prices of 17″ CDTs for the main customers of each company at the meeting at that time, to ensure that there were the correct differences among the prices applied by each company to their main customers. In other words, when the sale prices that were applied were too low even to the main customers approved by the other companies, this could lead to pressure for price cutting. This can be understood by examining the report on the meetings by CPT.

| | SDI | LPD | CPT |
|---|---|---|---|
| 1. SEC 17″ RF | $48.90 | $50.50 | $50.50 |
| 3. PHS & LGE 17″ RF | LPD $50.00 | | |

(Evidence *Sogap* number 3-158)

☐  Multi-party meeting on November 15, 2004

247     In this meeting, it is found that the defendants realized certain violations from the top at the first page of the document written by hand by examining it, and then that they even tried to hide the evidence. They exchanged information on the CDT market, or more specifically, the sales volume and price information for each customer, which is the main concern. Particularly, Samsung SDI had certain disputes with Proview, its primary customer, over LPD's sale expansion. However, you can see that there was an (implied) agreement that the defendants admitted their own primary suppliers among them for certain specific customers and that they had a principle of cartel (so called 'Matching Behavior'), meaning that if one of them expands its sales to its primary customer without prior consent among them, the others will retaliate it in the same way. They also agreed to check the market shares assigned to them in the CDT market and to execute the specific shutdown plan of production lines in January 2005. You verify this through the emails sent to the other participants of the meeting by Gyung Seop Han from LPD to confirm the meeting date and place and from the 'Business Report' by CPT.

Taking into account that it is against the free market system to hold a meeting with the partners in the industry, it is not appropriate to leave any documents as evidence.

(Evidence *Sogap* number 3-160)

LPD gradually expanded its sales to Proview without giving any notice to SDI. This means that it violated the implied agreement on sales assignment. SDI expressed its regret and strongly requested LPD to explain its follow-up and future plan for Proview. However, LPD argued that it merely maintained a relationship with Proview as the market demands were decreasing in 2005. They said that they had no choice regarding the company policy. SDI was still uncomfortable with LPD and it continued requesting LPD to suggest reasonable explanations and follow-up to it. If it failed to do this, SDI said that it would make LPD's customers its own customers.

(Evidence *Sogap* number 3-160)

☐  Multi-party meeting on December 1, 2004

248     The defendants assigned the specific market shares for each customer and check jointly to see if all of them followed this smoothly. Particularly, they found that the sale prices applied to six customers including SEC and LG Electronics were different from the previously agreed prices for each company. Therefore, they agreed to increase the sale prices based on the prices of Samsung SDI's products supplied to SEC. In addition, Sheng Boyang from CPT put in the report of evidences the strategies on how to get LPD to comply with the agreement by retaliating to LPD in the same way, which violated the agreed prices. This can be verified from the emails and the meeting report sent to the participants and from the 'CDT Market Report' made by Sheng Boyang from CPT.

As the results of the increase of the agreed prices in the past three executions, the standard prices from Taiwanese manufacturers were higher than those from Korean manufacturers. At the meeting, CPT suggested to the three manufacturers that the standard prices for the top six customers should be settled at the same level in order to secure the competitiveness of Taiwanese manufactures. The recommended approach is to adjust the prices to Taiwanese manufacturers step by step until they come to the unified standard prices by making SDI's prices to SEC the lowest prices and, hereunder, lowering the prices to prevent a temporary drop in prices, which can lead to market collapse. SDI/LPD are not concerned about suggesting the same prices to the top six customers, and they have higher prices in mind. The specific prices will be settled in the management meeting.

(Evidence *Sogap* number 3-162)

Regarding LPD's repetitive hindrances to the implied agreement by the three manufacturers on CDT M/S, CPT will respond to them by taking advantage of a small amount of low price strategies in dealing with LGE, and it will also make efforts to keep LPD from damaging the market prices at the same time as it uses this opportunity to discover the actual prices of LPD from the internal group.

(Evidence *Sogap* number 3-162)

☐  Multi-party meeting on December 1, 2004

249     The defendants found that during the processes for three increases in prices agreed upon in 2004, there was a gap in the prices applied among them, and they also found that in order to adjust the standard prices to the top six customers, the standard price of 17″ CDT made by CPT was agreed to be set at $50. In addition, they agreed to the market share assigned for each customer, which was to be applied in 2005, based on the actual deliveries to the top six customers in 2004. Accordingly, agreed to 85% with Samsung SDI, 12% with CPT and 4% with LPD for SEC, and agreed to 96% with LPD and 2% with Samsung SDI and Chunghwa, respectively, for LGE. This can be verified through the 'Report after Business Travel Overseas' by CPT.

With three increases in the prices irregularly, the standard prices from Taiwanese manufacturers became higher than those from Korean manufacturers. <u>To guarantee the competitiveness and fairness in the market for Taiwanese manufacturers, CPT suggested that they should make the standard prices at the same level for the top six customers.</u> At the present level, Samsung SDI has raised its standard price for SEC to $49 only once, and this is $2 lower than the $51 paid by Taiwanese manufacturers such as ADC/Lite-On. However, LPD/SDI think that December is not a good time for decreasing the price, and they want to maintain these prices by the end of the year. CPT agreed to decrease the price by $0.50 per month of the standard price up to $50 starting from January next year.

Official standard price

| 17" (MPR, B+D) | SEC | EMC | LGE | PHS | AOC | L-On |
|---|---|---|---|---|---|---|
| SDI | $48.9 | $51 | $51.5 | $51.5 | $52.5 | $51.5 |
| LPD | $49.5 | $51 | $50 | $50 | $51.5 | - |
| CPT | $49.5 | $50.5 | $51.5 | $51.5 | $51 | $51 |

(Evidence *Sogap* number 3-163)

| 제조사 | 2004 실제 인도분 | | | | 2005 가정 | | | |
|---|---|---|---|---|---|---|---|---|
| | CPT | LPD | SDI | Total | CPT | LPD | SDI | 총계 |
| SEC | 9.3% | 2.4% | 88.3% | | 12% | 4% | 84% | |
| | 1,407 | 383 | 13,461 | 15,251 | 1,572 | 524 | 11,006 | 13,102 |
| AOC | 61.6% | 28.3% | 10.1% | | 74% | 24% | 2% | |
| | 8,060 | 3,748 | 1,329 | 13,137 | 8,363 | 2,717 | 226 | 11,301 |
| LGE | 0.0% | 99.9% | 0.1% | | 2% | 96% | 2% | |
| | - | 9,784 | 7 | 8,794 | 169 | 8,110 | 169 | 8,448 |
| 프로뷰 | 8.8% | 0.3% | 90.8% | | 8% | 5% | 87% | |
| | 541 | 23 | 5,541 | 6,105 | 567 | 283 | 4,815 | 5,665 |
| 필립스 | 10.2% | 88.1% | 1.7% | | 14% | 84% | 2% | |
| | 500 | 4,252 | 55 | 4,807 | 574 | 8,442 | 82 | 4,098 |
| 라이트온 | 98.8% | 0.0 | 1.2% | | 99% | 0 | 1% | |
| | 2,620 | - | 30 | 2,650 | 1,683 | - | 17 | 1,700 |
| 기타 | 25.0% | 35.6% | 39.4% | | 20% | 32.3% | 47.7% | |
| | 1,350 | 2,193 | 3,232 | 6,775 | 678 | 1,094 | 1,616 | 3,388 |
| 시장 점유율 & 총수량 | 24.7% | 34.8% | 40.4% | | 28.5% | 33.9% | 37.6% | |
| | 14,478 | 20,382 | 23,654 | 58,514 | 13,605 | 16,166 | 17,931 | 47,702 |

Highlights in yellow show the items that the three manufacturers have disputes over.

☐ Multi-party meeting on December 29 2004

250   The defendants compared the tables with the present applied prices for the top six customers, and after discussing the possibility of changes of the applied prices, they agreed to maintain the prices that they agreed on in December 2004 even in January 2005. They also agreed with the plans for jointly monitoring the implementation of agreement on decreasing the production lines. Specifically, Jay Jeong and J. H. Choi were appointed as auditors by Samsung SDI, J. H. Oh and ○○ Kim by LPD, Bruce Lu and Eddie Mei by CPT, and they agreed to conduct audits by visiting each factory in several regions once a month. This can be verified from both CDT's market reports by CPT and the data on the sales volume and the plan for monitoring the shut-down of the production lines by each company, which were saved in the USB device of ○○ Lee of Samsung SDI and exchanged at the meeting.

|     | CPT    | LPD    | SDI    |
| --- | ------ | ------ | ------ |
| AOC | $50    | $51    | $51.5  |
| EMC | $50.5  | $51    | $50.5  |
| SEC | $49.5  | $49.5  | $49    |
| PCE | $51    | $50    | $51.5  |
| LGE | --     | $50    | --     |
| LON | $50.5  |        | $52.5  |

The above data is the 17″ F standard prices of the top six customers. LPD suggested that the main suppliers could propose the adjustments of the standard prices for the customer concerned. In this case, LPD meant that the other two CDT manufacturers could adjust their prices in accordance with the new standard prices and that could make it possible to maintain the differences in the prices. CPT and SDI also agreed with this in principle, but this kind of agreement should be made on the assumption of the actual standard prices.

The three manufacturers agreed to maintain the prices of December even in January effectively, and they wanted to hold a supreme meeting as soon as possible to clarify the present confusing market trends.

(Evidence *Sogap* number 3-164)

---

1. Plan for closing the production lines
CPT representatives: Bruce Lu (Fuzhou), Eddie Mai (Fuzhou), LPD representative: J. H. Oh (Shenzhen), J. S. Kim (Seoul), SDI representatives: Jay Jeong (Tianjin), J. H. Choi (Seoul)
For the plan for closing the production lines, each company assigned two auditors (1 main auditor and 1 assistant) to hold responsible for it, starting from January 1.
They would visit each of their factories irregularly to examine the situation of closed production lines. The preparation for audit is shown in the table as follows: O Main auditor, Δ Assistant.

|     | Factories | CPT | LPD | SDI |
| --- | --------- | --- | --- | --- |
| CPT | Fuzhou    |     | Δ   | O   |
| LPD | Gumi      | Δ   |     | O   |
|     | Changsha  | O   |     | Δ   |
|     | Nanjing   | Δ   |     | O   |
| SDI | Korea     | Δ   | O   |     |
|     | Tianjin   | Δ   | O   |     |
|     | Shenzhen  | O   | Δ   |     |
|     | Malaysia  | O   | Δ   |     |
|     | Brazil    | Δ   | O   |     |

(Evidence *Sogap* number 3-164)

(11) Meetings among the competitors for 2005

&lt;Table 27&gt;          Overview of CDT Cartel Meeting for 2005

| No. | Dates     | Descriptions of Agreements | Participants | Evidences |
| --- | --------- | -------------------------- | ------------ | --------- |
| 1   | 1.19.2005 | Guidelines for Sales Prices for Models, Shut-down and Audit Plans of Production Lines | CPT, SDI, LPD | Evidence *Sogap* number 2-1, Page 326<br>Evidence *Sogap* number 3-165, Page 2467<br>Evidence *Sogap* number 4-73, Page 3129 |
| 2   | 2.24.2005 | Price reduction level (15″: $1, 17/19″: $2).<br>Examination of assignment and implementation of the market share by each company. Reduction of production lines | CPT, SDI, LPD | Evidence *Sogap* number 3-166<br>Evidence *Sogap* number 3-167, Page 2541<br>Evidence *Sogap* number 3-168, Page 2522 and 2523<br>Evidence *Sogap* number 4-74, Page 3135 |

| 3 | 3.29.2005 -3.30 | Plans for maintaining the current sale prices, reducing the production lines and making audits. Sales prices for each small customer | CPT, SDI, LPD | Evidence *Sogap* number 3-169 - 70<br>Evidence *Sogap* number 3-171, Page 2456-7<br>Evidence *Sogap* number 4-75, Page 3145<br>Evidence *Sogap* number 4-76, Page 3448-9 |
|---|---|---|---|---|
| 4 | 4.13.2005 | Sales prices by customers and suppliers | CPT, SDI, LPD | Evidence *Sogap* number 3-172, Page 2548 |
| 5 | 4.26.2005 | Examination of the assignment and implementation of the market share by each company | CPT, SDI, LPD (Manager-level meeting) | Evidence *Sogap* number 3-173 - 4<br>Evidence *Sogap* number 3-176 - 7, Page - 2587<br>Evidence *Sogap* number 4-77, Page 3157 |
| 6 | 5.24.2005 | Plans for maintaining the current sale prices and reducing the production volume | CPT, SDI, LPD (Manager-level meeting) | Evidence *Sogap* number 2-1, Page 329<br>Evidence *Sogap* number 3-176 - 7<br>Evidence *Sogap* number 4-78 and 4 - 80<br>Evidence *Sogap* number 4-79, Page 3161 |
| 7 | 6.28.2005 | Plans for maintaining the current sale prices and reducing the production volume | CPT, SDI, LPD (Manager-level meeting) | Evidence *Sogap* number 3-178 - 180<br>Evidence *Sogap* number 4-81, Page 3172<br>Evidence *Sogap* number 4-82 |
| 8 | 7.20.2005 | Plans for information exchange and top-level management meeting | CPT, SDI, LPD | Evidence *Sogap* number 4-83<br>Evidence *Sogap* number 4-84, Page 3185<br>Evidence *Sogap* number 4-85 |
| 9 | 9.28.2005 | Examination of the assignment and implementation of the market share by each company. Methods on how to raise sales prices, reduction of the production volume | CPT, SDI, LPD (Top-level management meeting) | Evidence *Sogap* number 3-181, Page 2625<br>Evidence *Sogap* number 3-182<br>Evidence *Sogap* number 4-86 and 4 - 88<br>Evidence *Sogap* number 4-87, Page 3197 and 3199 |
| 10 | 11.2.2005 | Agreement on rise in the sales price ($1) and plan for its implementation | CPT, SDI, LPD | Evidence *Sogap* number 3-183, Page 2641 |
| 11 | 11.21.2005 | Examination of the agreement implementation of the previous increases in prices | CPT, SDI, LPD (Manager-level meeting) | Evidence *Sogap* number 2-1, Answer 59)<br>Evidence *Sogap* number 3-184, Page 2701<br>Evidence *Sogap* number 4-89 - 90 |
| 12 | 12.20-12.21.2005 | Examination of the agreement implementation of the assignment on market share, and restraints of decreases in prices | CPT, SDI, LPD (Manager-level meeting) | Evidence *Sogap* number 1-1, Page 295<br>Evidence *Sogap* number 2-1, Page 332<br>Evidence *Sogap* number 3-185 and 187<br>Evidence *Sogap* number 3-186, Page 2709<br>Evidence *Sogap* number 4-91 - 92 |

☐  Multi-party meeting on January 19 2005

251    At this meeting held on December 15, 2004, ○○ Kim from LPD proposed to the other participants at the meeting to hold a Manager-level CDT meeting in Taiwan around January 12–18, 2005. In addition, ○○ Jeong from LPD sent the participants an email on January 13, 2005 proposing that they would play golf from 7:30 AM to 12:00 PM on January 19 and then a manager-level meeting at Howard Plaza Hotel in Taiwan from 2:30 PM to 7:00 PM. According to the emails sent to the participants by ○○ Jeong from LPD, they limited the number of the participants for the golf match to two people per company and to three people per company for the manager-level meeting in order to keep this Cartel meeting secret.

As for the participants in the management meeting, I would like to explain what we previously agreed; we had better have <u>limited attendance considering securing the confidentiality</u> and the value of the management meeting. (The number of participants is limited by taking into account the values of the manager-level meeting and confidentiality).

Therefore, the following is each companies' mutual understanding so far
- Green meeting: 2 people per company
- Meeting attendants: 3 people per company

(Evidence *Sogap* number 3-165)

252    In addition, the defendants agreed to sell the products until February, 2005 in compliance with a new price guideline as specified below, and they also agreed to follow the plan for auditing the shut-down of production lines and checking whether the lines are closed or not. This can be verified by the 'Report on G/S MTG' by Samsung SDI and the statement made by △△ Song.

| Classification | Existing Guideline(A) | New Guideline (B) | (A) – (B) | IQ Management Sale Prices |
|---|---|---|---|---|
| 15" MPR2, SKD | $39 | $38 | $1 | $34.8 |
| 17" MPR2, SKD | $46 | $44 | $2 | $41.9 |
| 17 Flat TCD, SKD | $51 | $49 | $2 | $44.3 |
| 19 Flat TCD SKD | $72 | $70 | $2 | $63.7 |

5. Capa control
- Strengthening a line audit to make a follow-up of the Capa Control plan
☞ Two people per company <u>agreed to conduct audits by free pass without prior notice</u>

| | Number of Lines | Shut-Down Plan | |
|---|---|---|---|
| | End of 2004 → End of 2005 | - Beginning of 2005 | - June, 2005 |
| CPT | 8 → 6.5 | Bokju #1 or 2 (1.0) | Bokju #1 or 2 (0.5) |
| LPD | 9.5 → 7.5 | Changwon #2 (1.0) | Hwafei #1, #7 (1.0) |
| SDI | 9.5 → 7.5 | Busan #1 (0.5), Shenzhen #1 (0.5) | Suwon (1.0) |

(Evidence *Sogap* number 4-73)

Answer 40-1) In this meeting, they agreed to readjust the sales prices by December to January as every company reduced its own sales price due to sharp decreases in demand, and to accept the previously-reduced prices as their new guideline sales prices until February. Specifically, for 15″ MPR2 and SKD sizes, they set the price at $38, which reflected a $1 reduction from the previously existing price of $39, and for 17″ MPR2 and SKD sizes, they set the new guideline price at $44, which reflected a $2 reduction from $46. For 17″ Flat, TCO and SKD sizes, they agreed to sell them at $49, which reflected a $2 reduction from $51, and for 19″ Flat, TCO and SKD sizes, they agreed to sell them at $70, which reflected a $2 reduction from $72.

In addition, regarding the agreement on control of the production volume, I remember that we agreed to have an audit carried out without prior notice by two people from each company to check if the production lines were operated under Free Pass.

(Evidence *Sogap* number 2-1)

☐  Multi-party meeting on February 24 2005

253      Regarding CDT sales prices, the defendants agreed to apply a $1 reduction to 15″ and a $2 reduction to 17″ and 19″. The agreed upon CDT prices for each size are $38 for 15″, $44 for 17″ FST, $49 for 17″, and $70 for 19″, as shown below. The defendants also agreed to discuss the market prices among the affiliates to discover if they are too low and to discuss the plan for production line reduction and its execution. This can be verified through the emails sent by △△ Jeong from LPD on February 12 of the same year before the meeting and the 'Report on CDT Market' by CPT.

Due to decreases in the market demand, the manufacturers are cutting the prices to the other customers to secure their orders. Particularly, 17″ Flats are the most controversial products. To guarantee fair competition among the key business operators in the market, they decided on the price quotation again to the main six customers, which is to be issued in February. The prices after adjustment are $1 FOR 15″ AND $2 FOR 17″/19″. As the market condition is still unclear, they agreed to maintain the current prices above all on the matter of decrease in prices in March and then keep in touch and decide on the prices when they receive orders from the customers or when they obtain the market share.

(Evidence *Sogap* number 3-168)

| USD | Specifications | Standard prices before 1 month | New standard prices after February updates | Differences |
|-----|----------------|-------------------------------|--------------------------------------------|-------------|
| 15″ | B+D, MPR2 | $39 | $38 | -$1 |
| 17″ FST | B+D, MPR2 | $46 | $44 | -$2 |
| 17″ | B+D, MPR2 | $51 | $49 | -$2 |
| 19″ | B+D, TCO | $72 | $70 | -$2 |

(Evidence *Sogap* number 3-168)

- Each manufacturer superficially adjusts the prices for its customers based on the standard price. However, according to certain information from a SEC/Philips customer, the actual prices of the competitor were much lower than the other prices, due to internal trading within the group. <u>SDI/LPD suggests prices of the group's internal customers that are lower by at least $2-3 from the announced standard prices for 17″. For 15″, the differences in the prices can be up to $4-5.</u> Nonetheless, CPT cannot escape the reality of being the company ranking number 2. Tendency of decreasing orders might be accelerated.

- Plan and execution of shut-down: <u>According to the resolution approved in the previous meeting, each manufacturer will close down 1 production line, starting from January.</u> At present, customers are continuously asking for a decrease in the prices by being aware of serious oversupply of CDT. At the meeting, LPD suggested moving up the execution of shut-down of the 2nd production line to effectively control the gap between supply and demand. (At the meeting) <u>it was decided to temporarily conduct the shut-down before June.</u>

(Evidence *Sogap* number 3-168)

254    According to the presentation evidence at the meeting, it was confirmed that they played golf in Palm Garden from 8:00 AM to 12:00 PM before the meeting and they then held a CDT multi-party meeting in Mariette Hotel in Taiwan from 2:00 PM to 5:00 PM. In addition, the participants examined the differences between the CDT market share worldwide, which they had agreed upon previously, and the actual sales volume from January to February 2005.

| 2005 | | 05.Jan | | | 05.Feb | | |
|---|---|---|---|---|---|---|---|
| Mpcs;% | Agreed M/S | Sales | M/S | M/S Gap | Sales | M/S | M/S Gap |
| CPT | 28.5% | 0.9 | 24.0% | -4.5% | 0.8 | 24.1% | -4.4% |
| LPD | 33.9% | 1.4 | 35.1% | 1.2% | 1.2 | 35.7% | 1.8% |
| SDI | 37.6% | 1.6 | 41.0% | 3.4% | 1.3 | 40.1% | 2.5% |
| 3sub-ttl | 100.0% | 3.9 | 100% | 0.0% | 3.2 | 100% | 0.0% |
| Others | | 0.1 | | | 0.1 | | |
| Grand-ttl | | 4.0 | | | 3.3 | | |

(Evidence *Sogap* number 3-167, 4-74 )

(3) Multi-party meeting on March 29-30, 2005

255    You can see that the defendants exchanged the data on the sales and inventory reports by each company with each other. They agreed to maintain the sales prices in April 2005 after the predictions on the second quarter of 2005 and to strengthen the working-level meetings in which the sales prices are mostly discussed twice each month in the future. Furthermore, they agreed to tighten the audits to the production lines and to close down another single production line in addition to the two-level plan of the production line reduction, which was agreed upon previously. This can be verified from the 'Report on G/S MTG' by Samsung SDI.

4. Agenda on sales prices
- Agreed to basically maintain the sales prices of April
☞ For a solution, strengthen the working-level meeting, starting from April (discussions limited to sales prices twice/month)
5. Capa Control
- Strengthening a line audit to make a follow-up of the Capa Control plan
☞Conduct a line audit under Free Pass without any prior notice, starting from April
- Agreed to examine the shut-down of an additional production line with the exception of the 2nd step shut-down, which was agreed previously.

|  | Production Lines | Shut-Down Plan | |
|---|---|---|---|
|  | End of 2004 → End of 2005 | 1st Step (January) | 2nd Step (- June) |
| CPT<br>LPD<br>SDI | 8 → 6.5<br>9.5 → 7.5<br>9.5 → 7.5 | Completed by each company | An additional production line other than the line examined by each company |

(Evidence *Sogap* number 4-75)

256   The defendants checked to see if each company complied with the market share assigned to it in 2005. After appointing an audit manager in each company for agreement on production control, they agreed to give a day's notice to the companies both in Korea and China and check with each other freely to see if the other companies' factories are operating. In addition, they agreed as below by breaking down the prices into the standard prices on 15", 17" and 19" CDT, the sales prices to the six customers by small vendors, and the sales prices to their own key customers out of the six customers. This can be verified through the notices on meeting schedules by CPT, 'CDT Report' by CPT, and the presentations at the meetings with CPT and Samsung SDI.

◆ Guideline on Production Capacity Control for 2005  (1 Unit: M)

| Manufactures | By January 2005 (1st Step) | | | By June 2005 (2nd Step) | | |
|---|---|---|---|---|---|---|
|  | Number of Lines | Line Reductions | Factories | Number of Lines | Line Reductions | Factories |
| CPT | 7.0 | -1 | - Fuzhou #1 or #2(?) | 6.5 | -0.5 | - Fuzhou # (?) |
| LPD | 8.5 | -1 | - C/W #2 0.7L #5 0.2L | 7.5 | -1 | 7 |
| SDI | 8.5 | -1 | - Busan #1 (0.5L)<br>- S/Z #3 (0.5L) | 7.5 | -1 | - Suwon #1-2 #1-3 |
| Total | 28.0 | -3.0 |  | 21.5 | -2.5 |  |

- How was the internal decision for reaching the 2nd production capacity control made?

- It seems that the 2nd step started earlier than previously agreed.

◆ They need to operate an audit system to re-examine the 1st production capacity control

- Audit list (free admission)

Korea   SDI ⟷ LPD
    J.H. Choi    J.S. Kim
China   CPT ⟷ LPD
    Bruce Lu    J.H. Oh
Eddie Mei



    SDI
    J Jeong

- Mutual auditing is strongly recommended

- A day's notice of auditing can be made

(Evidence *Sogap* number 3-171, 4-76)

◆ Examination of the price guideline (based on February)

| Sizes | Specifications | Six customers excluded (Market prices) | Small companies → Six key companies | Key companies → Six key companies |
|-------|----------------|------------------------------------------|--------------------------------------|--------------------------------------|
| 15″ | 48kHz, N-ITC, MPR | U$39 | U$38.5 | U$38 |
| 17″ FS | N-ITC, MPR | U$45 | U$44.5 | U$44 |
| 17″F | N-ITC, MPR | U$50 | U$49.5 | U$49 |
| 19″F | 96kHz, N-ITC, TCO | U$71 | U$70.5 | U$70 |

❖ Six key companies: SEC, AOC, LGE, Proview, Philips, Lite-On

(Evidence *Sogap* number 3-171, 4-76)

☐ Multi-party meeting on April 13 2005

At this meeting, the defendants disclosed the sales prices of 15″ and 17″ CDT for their key customers as shown below. This was carried out in order to adjust their own sales prices by taking into account the sales prices applied to the key customers of the other defendants. This can be verified through the meeting report written by Weilong Lu from CPT.



(Evidence *Sogap* number 3-172)

☐ Multi-party meeting on April 26 2005

258    The defendants checked with each other to see if each company complied with the market shares agreed upon in 2005, and they also conducted an audit to check if they followed the agreement on reduction of the production volume. In addition, regarding the price of 17″ CDI, they disclosed the prices applied to the six customers such as SEC and LG Electronics, etc. and they agreed to set a new price guideline for each customer at the next working-level meeting.

This can be verified through the emails notifying the meeting schedules before the meeting, the 'CDT Report' and the presentations that were made at the meetings.



(Evidence *Sogap* number 3-175, 4-77)

☐  Multi-party meeting on May 24 2005

259      Regarding the sales prices, the defendants agreed to comply with the previous agreements until July 2005. For production volume control, CPT agreed to keep 5 production lines, while LPD and Samsung SDI agreed to keep 6.5 production lines, respectively. According to the presentation data and the statements of the participants at the meeting, they checked the sales volume information of each company and the accomplishment of the market shares, which were agreed in 2005, as they did at the previous manager-level CDT multi-party meeting. In addition, they tried to maintain the proper differences in the prices of 17″ CDT among the defendants and maintain the market share for each company by disclosing the sales prices of the primary suppliers for six customers. This can be verified from the statements and the diary of △△ Song from Samsung SDI, the "CDT G/S MTG Report," the "CDT Market Report" from CPT and the presentations from Samsung SDI and CPT.

2. Agenda on sales prices
- Agreed to basically maintain the sales prices until April
- 'Price increase' in June was proposed, but negative responses from each company due to 'excessive capacity'.
☞ They will discuss the increase in sales prices for July at the end of June.
3. Capa Control
- They agreed to conduct the 3rd step by the 3rd quarter of the year

|  | Production Lines | Shut-Down Plan | | |
|---|---|---|---|---|
|  | End of 2004 | 1st Step | 2nd Step | 3rd Step |
|  |  | - 1Q | - 2Q | - 3Q |
| CPT | 8.0 (4,000 people) | 7.0 (3,100 people) | 6.0 (2,600 people) | 5.0 (2,200 people) |
| LPD | 9.5 | 8.5 (Changwon △) | 7.59 (Gumi △) | 6.5 (Hwafei △) |
| SDI | 9.5 | 8.5 (Busan/Shenzhen △.5 | 8.0 (Malian △5) | 6.5 (Suwon △5) |
| (Submitted) | 11.3 | respectively) |  |  |
| (Actual) |  | 10.3 (Busan △) |  |  |

(Evidence *Sogap* number 4-79)

Answer 54-1) At the time of 'I. CDT Sales Update' and 'II. Market Share Review,' we checked the data of the CDT sales volume of each company at the time of the meeting and discussed to what extend it failed to meet the market share that was agreed upon in 2005. If the agreed upon market share has a big difference in the sales volume, the companies concerned explained the reasons to the other companies. For the 'III. Market Information,' they made a table of the prices of 17″ CRT/Flat monitors supplied by the primary suppliers to six customers such as SEC, LGE, ADC, Lite-On, Proview and Philips), and they discussed whether or not they would continue maintaining those prices in the future. Samsung SDI was mostly connected to SEC and Proview, LPD to LGE and Philips, and CPT to ADC and Lite-on. (Evidence *Sogap* number 2-1)

☐ Multi-party meeting on May 28 2005

260     The defendants were forced maintain the previously agreed upon prices by July 2005 after exchanging the sales information for each company and discussing the sales prices, and they agreed to control the production volume in accordance with the forecast for market demand in the second half of the same year. They also checked the supply of 15″, 17″ and 19″ CDTs worldwide by exchanging the monthly information on sales, and they also checked to make sure that they exchanged the sale information for the key customers. Based on this information, they checked to see if they failed to meet the market share agreed upon for 2005, and they agreed with the implementation of decreasing the CDT production lines of each company and the plans for decreases of the production lines in future. This can be verified through the notes written in the calendar of Ling Yuenyun from CPT and the 'CDT G/S MTG Report,' the 'G/S MTG Report' from Samsung SDI and the presentations that were made at the meeting.

2. Agenda on sales prices
- Agreed to basically maintain the sales prices by July
- Partial discussions on price increase, although they still had negative responses due to increases in 'LCD Capa' in the second half of the year.
3. Capa Control
- They agreed to conduct the 3rd step by the 3rd quarter of the year

| | Production Lines | Shut-Down Plan | | |
|---|---|---|---|---|
| | End of 2004 | 1st Step | 2nd Step | 3rd Step |
| | | - 1Q | - 2Q | - 3Q |
| CPT | 8.0 (4,000 people) | 7.0 (3,100 people) | 6.0 (2,600 people) | 5.0 (2,200 people) |
| LPD | 9.5 | 8.5 (Changwon △) | 7.59 (Gumi △) | 6.5 (Hwafei △) |
| SDI | 9.5 | 8.5 (Busan/Shenzhen | 8.0 (Malian/Suwon△5) | 6.5 (Suwon △5) |
| (Submitted) | 11.3 | △.5 respectively) | | |
| (Actual) | | 10.3 (Busan △) | | |

(Evidence *Sogap* number 4-81)

☐  Multi-party meeting on July 20 2005

261      The defendants agreed to hold a 'Top Meeting' in August of 2005 to reach an agreement on the necessity of production line adjustment in the second half of the same year after exchanging the information on the sales, inventory and production lines of each company. This can be verified from the schedules of △△ Song from Samsung SDI, the 'G/S MTG Report' and the presentations that were made at the meeting.

5. Top Meeting
- With unclear prospects for demand recovery in the second half of the year, the three companies gradually came to the common understanding that they needed the reconstruction of the companies/production lines.
- They had a discussion to come to a common understanding about reconstruction through the Top Meeting at the end of August

(Evidence *Sogap* number 4-84)

☐  Multi-party meeting on September 28 2005

262      It is shown that the defendants agreed to assign 38.1% to Samsung SDI, 34.4% to LPD and 25.8% to CPT for the market share of 2006. These are the numbers that reflect the differences between the market shares of each company agreed for 2005 and the actually accomplished numbers. They also agreed to reduce the number of the competitors for each customer by supplying only two companies for each customer to coexist with each other.

2. M/S Allocation for 2006
☐ Based on a total of 33.4M for three companies in 2006, they agreed to assign 38% to SDI, 35% to LPD, and 26% M/S to CPT

|  | M/S in 2005 | | | M/S in 2006 | |
|---|---|---|---|---|---|
|  | Original agreement | Actual | Differences | Agreement | Quantities |
| SDI | 37.7% | 41.0% | +3.3% | 38.1% | 12.8M |
| LPD | 34.0% | 34.4% | +0.4% | 34.8% | 11.6M |
| CPT | 28.3% | 24.6% | △7% | 25.8% | 8.6M |

☞ They agreed to introduce 2 vendors for each customer from 2006 to coexist with each other
(Evidence *Sogap* number 4-87)

263     In addition, the defendants agreed to establish the price standards from CDT detailed specifications clearly for increases in sales prices, minimize the inventory, mutually persuade the customers to justify the causes of price increases and maintain the balance in the price differences for each customer. They also agreed to reduce 0.5 – 1 production line for each company by the first half of 2006 by adding the agreement on the reduction of the production volume to the existing agreement.

☐ Three companies' discussions on how to increase the sales prices
 ⮡ Establish the processes for determining the prices
 ☞ Due to unclear price standards such as Bare/ITC, they can be put into an unfavorable situation when they have negotiations with monitor manufacturers
 ⮡ Minimize the inventory for CDT manufacturers and supplies
 ⮡ Make the monitor manufacturers form an understanding on the causes of price increases
 ☞ They will persuade the monitor manufacturers by saying that they may be on the road to ruin due to supply-chain collapses from price decreases.
 ⮡ Maintain the price balances for each monitor manufacturer
 ☞ They will commence with this from ADC, which applies low prices, and gradually expand it
(Evidence *Sogap* number 4-87)

4. Capa Control
☐ Beside the plans discussed previously, they agreed to close down 0.5-1 production line additionally for the first step in 2005
☐ They strengthened the line audit for each company to follow-up the arranged plans for implementation
(Evidence *Sogap* number 4-87)

264     In addition, Samsung SDI and CPT had certain disputes over the sales volume to SEC. The message said that when CPT increased the sales volume to SEC without prior approval from Samsung SDI, Samsung SDI warned CPT that it would shrink the sales volume of CPT with price dumping to ADC and Lite-On, which are the primary customers of CPT if CPT did not stop doing this.

Samsung SDI strongly protested CPT's expansion of orders to SEC. It also warned that it would retaliate against CPT regarding its primary customers such as ADC/Lite-On if it did not receive a positive response from CPT. CPT clearly revealed that it would not compete in advance to increase the orders to SEC. It was SEC that assigned the orders in advance.
(Evidence *Sogap* number 3-181)

265     This meeting was a Top-level CDT multi-party meeting held in Taiwan.

The participants were 口口 Kim and 口口 Park from Samsung SDI, S. D. Han and 口口 Lee from LPD and Mr. Zhong and Jing-Song Lu from CPT. This can be verified from the schedules and the 'G/S MTG Report' of 口口 Song from Samsung SDI, the 'GSM Top-level Management Meeting' from CPT and the presentations that were made by Samsung SDI and CPT.

☐  Multi-party meeting on November 2 2005

266     At this meeting, the defendants agreed to increase the price by $1 from the current CDT prices, regardless of their customers, and facts were revealed that each member company notified its primary customers of the increases in prices and the other defendants agreed to follow. In addition, it is found that there were disputes over the attacks with price dumping to the primary customers of the other defendants. Through this, you can determine that there were both explicit and implied agreements that they should not attack the primary customers of the other defendants with price dumping among CDT cartel member companies. This can be verified through the 'Contact Report' from CPT.

---

◇ Due to the causes stated above and the supply of masks, the expenses increased sharply. Three parties had common understanding on the current standard of prices as follows: The prices increased to USD $1, regardless of the customers.

   2.  This week, Samsung SDI will be responsible for official notification of the increases in prices on SEC/EMC, and LPD/CPT will follow.
   3.  LPD also promised that it would notify LGE/PHS, which are its internal customers, of increases in prices this week.
   4.  With Samsung SDI harassing Lite-On over price dumping, CPT professed serious oppositions to this behavior and requested a return to its original prices. Otherwise, it would not cooperate regarding SEC.

(Evidence *Sogap* number 3-183)

---

☐  Multi-party meeting on November 21 2005

267     The defendants mutually confirmed with the other participants the implementation of a $1 increase in all the CDT prices agreed in the previous meeting, and from the defendants who were suspicious about the implementation, they obtained promises that they would follow the increases in prices in the future. This can be verified from the schedules and statements of 口口 Song from Samsung SDI, the presentations at the meeting and the Report on the Result with the title of 'GSM Meeting' from CPT.

1. Originally, the three parties had common understanding on all of the customers. This means that they will increase their delivery prices of SL/PC from November, regardless of tube types. However, only CPT and LPD increased the prices to ADC. Therefore, there were strong complaints on SDI, as it failed to follow the increases in prices.

2. SDI strenuously insisted that there were certain oppositions to increases in the sales prices to the primary customers (ADC/SEC and Proview) that were higher than those to CPT/LPD. After active discussions, SDI agreed to follow the increases in prices to ADC. SEC/Proview will also make efforts to increase the prices starting from the delivery the following week. CPT and LPD will follow this adjustment after SDI sees that it is successful.

3. In addition, LPD argued that LGE had already accepted the request for increases in prices starting from November.

(Evidence *Sogap* number 3-184)

☐  Multi-party meeting on December 20-21 2005

268   It is seen that the defendants took an average of the market share by each company of the first and second half of 2005 and calculated the whole market share for 2005, and finally compared these figures mutually with the market share agreed upon previously. As the result of the comparison, the market shares for 2005 by each defendant worldwide were 25.5% by CPT, 335% by LPD and 41% by Samsung SDI. In addition, they agreed not to compete for CDT sales prices, as shown below. This can be verified from the schedules and statements from △△ Song from Samsung SDI, the emails on the meeting schedules sent to the other participants by 口口 Kim from LPD, the 'CDT GSM Meeting in December' from CPT, and the presentations that were made by Samsung SDI and CPT.

I. Actual M/S results by each manufacturer in 2005

|      | First half of 2005 | Second half of 2005 | Total |
|------|--------------------|---------------------|-------|
| CPT  | 23.9%              | 27.4%               | 25.5% |
| LPD  | 35.5%              | 31.1%               | 33.5% |
| SDI  | 40.5%              | 41.5%               | 41%   |

III. Price guarantees
Continuously decreasing the quantities of CDT has already been irretrievable. The three manufacturers have a common understanding that the decreases in prices cannot create demand, but instead, it can lead the vicious circle of flame wars. The above manufacturers hope that they will each control themselves and not enter into price competitions.

(Evidence *Sogap* number 3-186)

Answer 60-1) Similarly to the statements made at the meeting held just before this, the discussion went along in the order of 'CDT Sales Update' for checking the sales volume of each company, 'Market Share Review' for checking to see if the sales reports are consistent with the market share already agreed upon by each company, and 'Market Information' for discussing the necessity of predicting the future prices in accordance with market changes and to check the market prices.

(Evidence *Sogap* number 2-1)

Answer 25-1) Above all, the participants checked to see if the market shares worldwide by each company are implemented as agreed. They calculated the market shares on the first half and the second half of 2005, respectively and the whole market share of 2005 from CPT, LPD, and Samsung SDI. As a result, the whole market share of 2005 was 41% by Samsung SDI, 33.5% by LPD, and 25.5% by CPT. However, we understated our sales to avoid criticism from the other participants. According to the meeting report, our market share in the second half of 2005 was actually closer to that of LPD. With the customers' demands dropping sharply, there were certain changes in the market share of 2005, but if the participants had not agreed to maintain the existing market share, we think that they would have seen the steeper changes in the market share. In addition, despite the situation that CDT market was shrinking at that time, the participants had a common understanding that they needed to avoid flame wars resulting from decreases in prices.

(Evidence *Sogap* number 1-1)

(12) Meetings among the competitors for 2006

I. Multi-party meeting on March 13-14 2006

269     It is seen that the defendants checked the monthly sales and market shares by each company and confirmed the differences with the assigned market shares previously agreed upon for 2006. In addition, they again confirmed the control agreement on the production volume by each company, which was agreed upon in Top-level CDT multi-party meeting held in September 2005. It is also found that the defendants adjusted the supply to SEC through agreement and checked to see if the previously agreed production line shut-down plan was implemented. In other words, the defendants had disputes over AOC, a Taiwanese customer, for imbalance in supply, and they agreed that in return for CPT and LPD, which reduce the supply to SEC, Samsung SDI would terminate business to AOC. They also confirmed that LPD would close down the Hwafei factory in China and Samsung SDI would close down the Suwon factory in Korea. This can be verified from the 'Visit Report (GSM Meeting)' and statements made by Jing-Song Lu from CPT and the result report under the title of 'Key items for discussion' by □□Ha from Samsung SDI.

1.  Competitors' sales status and M/S
2.  Capa Control by each company
☐ The discussion over Capa Control for three companies completed at the Top-level meeting in September 2005
4.  About the meeting operations of three companies
☐ Change of meeting chairman by three companies ☞ SDI in 2005 → CPT in 2006
☐ How to operate the meetings ☞ current once per month holding to either quarterly or bimonthly holding
☐ Security enhancement and schedules for future meetings
☞ Discussion on meeting security reinforcement and future meeting schedules (places)

(Evidence *Sogap* number 4-93, page 3223)

0 SDI stated that it merely supplied the order for OPTVx20K by ADC, which is seeking Brazil's support. This is very unfair to SDI. <u>SDI proposed to completely terminate business dealings with ADC on the condition that LPD gives up the SEC order and CPTF drastically reduces M/S regarding SEC.</u> Both CPTF and LPD expressed their willingness to consider this proposal.

III. Hwafei Plant
0 <u>[LPD]'s Hwafei expected CDT production to completely cease in 5/E.</u>
V. Miscellaneous
0 <u>SDI's Suwon plant will completely cease production of CRT in the near future.</u>

(Evidence Sogap number 3-188, page 2722)

---

Answer 26-1) This meeting was the last CDT multi party meeting with competitors that I attended. <u>How much of the sales portion would be allocated to Samsung Electronics was discussed at this meeting among the participating companies.</u> First, Samsung SDI criticized LPD and our company for supplying CDT to ADC at low prices. In addition, [they] stated that sales will stop for ADC on the condition that LPD gives up the order regarding Samsung Electronics and Chunghwa Picture Tubes reduces sales share regarding Samsung Electronics. I did state to the Samsung SDI participant that our company was willing to consider the proposal but it was to cordially reject the proposal. Chunghwa Picture Tubes could not give up the CDT sales to Samsung Electronics... Additionally, the meeting participants reviewed the status of its plan to shut down the production line, in detail, the LPD representative stated that the company planned to shut down the Hwafei, China plant by end of May, 2006 and the Samsung SDI representative stated that SDI wanted to shut down the Suwon, Korea plant by the end of the year.

(Evidence Sogap number 1-1, page 296)

4) Implementation facts

A) Implementation structure

270     The defendants of the common actions in this case agreed on the sales price, production volume reduction plan, allocation of the market share rate by market customer, etc. through CDT cartel meetings held regularly for over 10 years and did in fact implement these agreements in markets such as Korea, etc.

271     The items agreed on at the cartel meetings were implemented under the control of the main office of the participating groups. The CDT cartel meeting participants received orders to attend the meetings and the instructions regarding the meeting contents from the main office regardless of whether or not the employee was from the main office's sales, marketing department, or foreign branch office. In addition, the foreign branch office employee reported the agreed results either by email or in the form of a result report after the conclusion of the meeting. The detailed implementation structure according to the agreed measure is as follows:

272     Initially, the agreement regarding the fixed sales price used at the CDT cartel meetings was established among each company's main office or branch office employees, and

the main office or the branch office decided on the sales price to be used in the next negotiation cycle. The negotiation cycle with customers for CDT customarily took place to decide sales price and sales volume. The fixing of the sales price showed up in different forms, i) special price (scope) agreement by cycle, ii) agreement on the lowest price iii) agreement on the price difference by detailed specifications, iv) price agreement considering the quality difference by defendants, v) agreement on the price increase (decrease) range, vi) agreement on the price difference between major customers and small scale customers, vii) agreement on maintaining the previously agreed price etc. Additionally, defendants selected the company to notify customers in connection with the fixing sales price agreement and also agreed on the collateral conditions such as the notification date and reason for the price increase etc.

> Answer 10) Firstly, to tell you on the price, agreements were made on the price increase and the lowest price (minimum, floor, bottom price). Also, a price agreement was made regarding separate customers, and there was an agreement on the detailed prices to be offered by major (primary) suppliers to 6 large customers. There also existed an agreement on the detailed prices to be offered by 2nd (secondary) suppliers to 6 large customers, as well as an agreement on the difference in price to be offered to 6 large customers and minor customers. The decision was jointly made regarding the selection of a company to notify customers, the timing of the price increase and the price increase background to be provided to the customers, and these were also made at the CDT cartel meetings.
>
> (Evidence Sogap number 1-1)

273     The implementation of the agreement was assured by reviewing whether or not to implement the agreed sales price, since they were mostly reviewed at these meetings as noted above. The meeting participants that represented the defendants confirmed the status of implementation for the previous agreement turn by turn, and if a particular company's sale volume had increased based on the information obtained from customers or the market by each company, that company became the target of criticism. Each time, whether the volume increased or decreased was confirmed with a prepared table for items such as each company's production volume, sales volume and inventory volume, etc. and the increased sales volume for a particular customer was recognized as strong evidence of a sale at a low price.

274     Secondly, the defendants agreed on the need for artificial reduction for the overall production volume and also agreed on the detailed measures for the reduced production volume as well in the initial stages of common action of this case. Initially, defendants agreed on non-operation days by month, exchanged plans with each other and secured implementation of the agreement by visiting other party's production facilities and confirming whether or not operation had ceased. Monitoring methods also advanced to be more thorough by the parties agreeing to visit other companies unexpectedly without notice from time to time. In addition, defendants also agreed to shut down worldwide production lines according to the common plans possessed by each company, since operation termination can be faked and costs are involved in monitoring.

Yearly shut down plans were jointly established and the implementation of the agreement was reviewed monthly and quarterly.

Answer 10) There was an agreement on the production volume and worldwide CDT demand was estimated, and then each company's supply amount was designated accordingly in order to prevent a CDT price decrease. The cartel member companies submitted monthly operation termination plans to the head company before the meeting and the days of operation termination was set at the meeting. Also, an agreement was made to shut down the worldwide CDT plants' production lines themselves when the CDT market gradually contracted. The reason for agreeing to reduce production was with the agreement on price, it was not easy to monitor if there was deviation from the agreement due to products' different specifications and difference in quality. The participating companies even sent their employees to other companies to directly inspect whether or not operation ceased or lines were shut down.

(Evidence Sogap number 1-1)

275      Thirdly, the defendants also agreed on the allocation of the market share and sales volume share by customer in order to avoid mutual competition. The defendants do not have to compete in production technology and sales activities if shares are allocated by each company, and therefore they agreed to the allocation of market shares. The defendants agreed on market share rates based on previous sales volume materials for each company in order to allocate CDT market share rates and reviewed the implementation of the agreement based on the actual sales volume during each meeting. The agreement took place without many issues at most meetings, and they also adjusted the allocated share for the defendant that had more sales than the agreed share. They also compensated the member companies that had an actual sales figure of less than the allocate share and tried to implement the agreement depending on the market situation changes by readjusting the market share rates, etc.

Answer 10) Also, an agreement was made regarding the market share rate, and so there was an agreement on the sales share rate for each member company for the worldwide CDT market and for the sales share rate by customer, which was reviewed to check whether there was compliance at each meeting.

(Evidence Sogap number 1-1)

276      In addition, these methods were also used for sales volume allocation for customers in a similar situation and members decided on the main suppliers and the 2nd suppliers by customers and mutually selected each sale's share rate. If sales did not take place according to the agreement, share rates were readjusted or encouraged implementation of the agreement through mutual discussions and further agreement and thus they were able to come to an agreement on the allocation of shares by customers. Each company enjoyed the benefit of not having to compete with other defendants for major customers with the allocation of the sales volume shares by customers. It was simple to monitor and check to see if other companies had supplied certain company's major customer with a low price, since its order would decrease and

the affected company would mention that it would use the same method to cause damage to the competitor at the cartel meeting and thus smooth implementation of the agreement on the mutual share rate could take place.

> Answer 16) The member company that had discovered non-compliance with the agreement would make threatening statements to the effect that it could also cause damage to the other company with similar methods .
> Answer 28) "Penalty: ⬚The other 2 companies will attack the trouble maker's major customers" is a suggested penalty for the participant that does not carry out the agreement … ⬚'s meaning is "let the 2 companies supply the non-compliant company's major customers with low prices and take away the volume.
>
> (Evidence Sogap number 2-1)

277    We know for a fact from these details that the defendants used various agreement methods and operated monitoring and control system to effectively implement the agreement made at the CDT cartel meetings.

B) Agreement's Implementation

278    Looking at the above 2. A), this case's common actions took place over a period of more than 10 years through cartel meetings that were held at least once every month. The items agreed on by the defendants from each meeting were reviewed at the next meeting to see if they were implemented and control rules were also established. The fact that this case's common action defendants disclosed the implemented items at each cartel meeting themselves and received confirmation from other defendants is confirmed based on statements made by the participants who attended each of these meetings as well as evidentiary materials.

B. Applicable Legal Provisions

Monopoly Regulation and Fair Trade Act related laws (prior to being amended as Act No. 7492 on April 1, 2006) Article 2-2 (applicable to acts in other countries) will apply even if the act occurred in a foreign country if the domestic market is affected. < This article was established in December 31, 2004>

Article 19 (Prohibition of Improper Common Actions) ⊡ A business person shall not improperly limit competition by entering into an agreement to carry out any 1 of the following items (herein below referred to as "Improper common actions") or cause other business persons to carry out such acts by the use of agreement, negotiation, decision or any other methods.
1. Actions to set, maintain or change the price
2. (Omitted)
3. Actions to limit the product's production, release, transport or transactions or limit services

C. Determination of Illegality

1) Requirements to establish illegality

279    In order to establish improper common action under Act Article 19 Section 1, a business person enters into an agreement with another business person with agreement, negotiations or decisions and other methods regarding the acts specified in Act Article 19 Section 1 and such action does improperly limit competition. This Act applies even if these improper common actions took place in foreign countries if the actions affect the domestic market.

2) Applicability of requirements for illegality

A) Whether an agreement exists

(1) Meaning of the agreement

280      There must be an agreement between the business persons through contract, negotiations, decision or any other method to carry out common actions in order to establish improper common action. Agreement that establishes improper common action not only includes explicit agreements such as agreement and negotiations, etc. but also implicit agreements such as understanding between business persons. Agreement from the improper common action perspective means exchange of intent between the business persons and includes not only explicit agreement but also cases of implicit agreement or tacit understanding.[39]

281      Improper common action under Act Article 19 Section 1 means agreeing to carry out acts covered under any 1 item under the said section to actually limit competition for a particular transaction by a business person mutually with another business person and it does not require actually carrying out the act according to the agreement, and even if one business person did not intend to carry out the actions according to the agreement and agreed without any actual intention, this does not prevent the establishment of improper common action, since the other business person believes the unintended business person to act according to the agreement and the unintended business person also uses the fact that the other business person would act according to the agreement as established and thus this is equivalent to acts that limit competition. The above agreement need not take place among all the business persons participating in certain transactional area or a particular bidding and the act will be deemed an improper common action even if the act occurred only among some business persons if such an act is viewed as actions to limit competition.[40]

282      However, business persons continuously engage in common actions such as price decision, maintaining or changing prices, etc. in future with the purpose of limiting competition, designating certain standards such as principal agent for decision and decision method, etc. and further agree on the basic rules regarding the agreement such as to meet regularly in the future in order to implement these rules, and does meet multiple times during the implementation stage of the above agreement and carries out the agreement on detailed price decisions etc., This series of meetings may constitute improper common action overall, even if details of certain meetings or agreements change or there are changes to the membership composition. Additionally, in the case that agreements were made on pricing decisions and implementation actions based on such decisions, the expiration date of the improper common action is not the date of such agreement but rather the conclusion date of the actual

---

[39] Refer to Seoul High Court December 11, 2001 Announcement 2000Noo16830 decision
[40] Refer to Supreme Court February 23, 1999 Announcement 98Doo15849 decision

actions based on such agreement.[41]

283     Regarding "Whether it can be concluded that an agreement had been established regarding the basic rules and if price collusion had taken place", the following are important factors in making such determination: are there circumstances that show that price collusion was planned for a long term when the initial price collusion took place, if each price collusion took place regularly and at a certain interval, if the principal agent that determined the price increase at each price collusion was the same, if the effect from each price collusion continued to the next collusion and if a new collusion took place based on the agreed upon price from the previous collusion, etc. [42]

(2) Whether the action is subject to Act Article 19 Section 1 Clause 1

284     "Act that sets, maintains or changes the price" as specified by Article 19 Section 1 Clause 1 refers to the action taken by business person mutually with another business person to set, maintain or change the price of a product or service. The "price" referred to in this statement means the price received by business person in return for providing a product or service, namely, it refers to all economic benefits received by the business person from the other party to the transaction as a consideration and includes all products or service regardless of name if it is something that should be paid to the business person by the other party for the transaction in light of an applicable product, service characteristic, transaction details and method, etc. as compensation for a product or service.[43]

285     This price derived from "price determining action" does not only mean the final price itself that is related to the concluded transaction, but also includes the actions that determine the final transaction price, as well as actions that determine the factors necessary to determine the said final price such as the final price, average price, normal price, standard price, highest/lowest prices, etc.[44]

286     The case of two or more business people engaged in acts under Article 19 Section 1 refers not only to cases where business people determine the same final transaction prices for the same products, but also includes all acts that set the price's compositional factors' level or limit, such as acts in setting the basis for price determination such as the average price, normal price, standard price, highest or lowest price, etc. regarding the same or similar products, acts in setting the price increase or price decrease rate (range), profit rate or discount rate, etc. (Seoul High Court January 17, 2007 Announcement 2004Noo17060 decision)

---

[41] Refer to Supreme Court March 24, 2006 Announcement 2004Doo11275 decision
[42] Refer to Seoul High Court August 20, 2008 Announcement 2007Doo2939 decision
[43] Refer to Supreme Court May 8, 2001 Announcement 2000Doo10212 decision
[44] Refer to Supreme Court June 14, 2002 Announcement 2000Doo8905 decision, Seoul High Court October 10, 2000 Announcement 2000Noo1180 decision

In addition, mutual agreement as to the price guidelines is also deemed to be an improper common action designated by Article 19 Section 1 Clause 1.[45]

287     Accordingly, as seen in the actions of the above section 2.1., this case's defendants agreed on the lowest price, price guideline, sale price range, sale price increase and decrease range, price differentiation by detailed specification, etc. for CDT and also agreed on the price increase cause to be sent to the customer, notification person by customer, timing of the price increase notification and timing of the price, increase etc. and therefore, these actions are deemed to be an "Act that sets, maintains or changes the price" specified by Article 19 Section 1 Clause 1.

(3) Whether the action is subject to Article 19 Section 1 Clause 3

288     "Act that limits the product's production, release, transport or transaction or limits service" specified by Article 19 Section 1 Clause 3 refers to acts that bring about price maintenance or increase by each party business person limiting the production volume or sales volume to a certain level or reducing it to a certain share. In the case that the market share was set previously by agreement, the participating business persons must limit the product sales volume to maintain the agreed upon market share and thus this action constitutes acts that limit the product's production, release or transaction.[46]

289     Accordingly, as seen in the actions of the above section 2.1., this case's defendants attempted to prevent a price decrease by removing excess supply in response to the overall reduction of demand worldwide for CDT and thus they agreed to allocate the CDT market share by business or allocate the sales share by customer and implemented the agreement. In the case that the market share was set by previous agreement, the production volume must be limited to comply with the market share level in order to maintain the market share that was agreed to and ultimately, this leads to reduced competition regarding the market price, quality and service [47]and therefore such common acts

---

[45] Refer to Supreme Court July 12, 2002 Announcement 2000Doo10311 decision
[46] Refer to Supreme Court May 8, 2001 Announcement 2000Doo10212 decision, Seoul High Court November 16, 2000 Announcement 99Noo6226 decision
[47] Supreme Court May 8, 2001 Announcement 2000Doo10212 decision

regarding market share are deemed to be an "Act that limits the product's production, release, transport or transaction or limits service" specified by Article 19 Section 1 Clause 3. Additionally, the defendants agreed to days of non-operation of production lines and to shut down production lines in order to reduce the production volume and monitored whether or not operations ceased and mutually inspected the implementation of such acts in order to reduce the production volume, and thus these acts are applicable to Article 19 Section 1 Clause 3.

(4) Common action as one

290     Not only the case where defendants agree on the basic rules regarding improper common action and coming to an agreement on multiple occasions during the implementation stage, but also cases where multiple agreements were made over a long period of time without agreement on such basic rules and holding such meetings in series will be deemed to be an improper common action overall if those meetings continued without interruption based on the same intent and were carried out for the same purpose, even if there were some changes to each detailed content's agreement or membership composition, etc. without extenuating circumstances. [48]

291     As seen in the above 2. A) actions, this case's defendants conducted several cartel meetings and also agreed continuously on detailed sales price, the market share and production volume reduction, etc. during the common action period, thus this action is deemed to be one of common action considering the following:[49]

292     Firstly, defendants tried to bring about CDT's stable sales price (increase, maintain or prevent rapid decrease) during the common action period and participated in cartel meetings in order to carry out the same purpose with the same intent in order to maintain commercial viability and prevent mutual destruction from price competition in the CDT market, and to adjust to the market demand situation with agreement on the allocation of the market share and production volume reduction, etc.

---

[48] Refer to Supreme Court September 25, 2008 Announcement 2007Doo3756 decision
[49] In this case, it could be determined that the basic agreement was established at the first multi-party meeting on November 23, 1996. That is, this meeting was attended by the CEO of the defendants and there were agreements on information exchange for production status and planning, sales price decrease control, as well as price agreement and reduction of the production volume, and these discussion details and agreement methods had a mutual relationship with later cartel meetings attended by staff members in that they became more detailed and continued during the common action period. In addition, this point is reinforced by the fact that they agreed to involve other competitors that had not attended the meeting and thereby displayed their intention of prolonging these cartel meetings over a long period of time.

293     Secondly, the defendants repeated the agreements and implementations without interruption during the common action period in order to achieve the cartel meeting's purpose. During this process, the defendants not only agreed on the sales price, but also consistently agreed and implemented the market shares by customers and production volume reduction, and also maintained the agreement method's same quality continuously by having the CEO to middle managers and staff members attend the meetings in a layered structure and by holding the meetings over a period of some 10 years in a regular cycle with more than 1 meeting per month, etc.

294     In particular, there was mutual connection of intention without interruption during the process of yearly repeated and routine agreements and implementation of this case's cartel meetings. That is, defendants discussed the implementation of previously discussed items and the feasibility of a price increase agreement, etc. after exchanging each company's production/sales status, future demand estimates and current prices, etc. at each cartel meeting.

295     In addition, each company readjusted in each quarter by incorporating the changed circumstances after agreeing on the yearly shares by each company based on the previous year's sales volume materials regarding the market shares. Additionally, the defendants continuously agreed on the production volume reduction at each meeting in order to prevent a price decrease in line with the defendants' estimated demand volume regarding the production volume reduction, and the implementation of such measures was confirmed by the defendants actually visiting each other companies to check on operation termination.

296     Thirdly, considering the fact that the participants in the meetings were composed mainly of the defendants and that this was maintained even though certain changes were made during common action period[50], this case's common action constitutes one common action.

---

[50] LPD, among the defendants, initially attended as LG Electronics and Phillips Electronics, but later attended as an LPD member when attending relevant meetings related to this case's common action meetings when LPD was established as a joint venture by merging the CRT business divisions of both companies and thus there is no difference in the consistency of the participants.

B) Determination on the limitation on competitiveness

297     The act of business people mutually deciding or changing the price leads to a situation where their intention affects the freely determined price or causes concern over such a situation by reducing the price determination within such a range and therefore this type of common action by business people is improper without any extenuating circumstances. [51]

298     Allocation of the sales volume or market share of the Asian market, etc. including the Korean market, and the price of the Korean market's product import/sales price formation and being maintained at a higher level than it would usually be under general factors by use of actual limitation of competition among business people as a result of an agreement on sales price maintenance and decision, etc. must be deemed to be a limitation of competition. [52]

299     In the case that the market share was set by previous agreement, the production volume must be limited to comply with the market share level in order to maintain the market share that was agreed to and ultimately, this leads to reduced competition regarding the market price, quality and service and therefore such common acts regarding the market share are limiting acts regarding the applicable product's production, release or transaction and thus this is deemed to be an improper common action under Article 19 Section 1 Clause 3, which controls the transactional market's competition. [53]

300     The actions reviewed in above 3. A., the common actions of the defendants in this case, constitute a common action that clearly causes only limitation on competition when considering the following: [54]

301     Firstly, this case's common actions are actions that resulted in agreements and implementations by agreeing on the market share allocation and production volume reduction, etc. through cartel meetings to artificially increase and maintain CDT's price that are sold in Korea and other markets and "price", "production volume" and "market allocation", etc. are inter-related and therefore these acts are deemed to be actions that are intended to limit competition and not for any other purposes.

---

[51] Refer to Supreme Court March 26, 2009 Announcement 2008Doo2058 decision
[52] Refer to Seoul High Court November 24, 2004 Announcement 2003Noo9000 decision
[53] Refer to Supreme Court May 8, 2001 Announcement 2000Doo10212 decision
[54] According to the Review Standard for common action (Amended August 12, 2009, Fair Trade Commission Established Rule No. 71, IV. Review of Illegality of Common Action), price, decision or limitation of production volume or allocation of the market or customer, etc. is considered to be clear cases with only limiting effects on competition.

302     Secondly, the defendants' agreement on the CDT price or production volume makes it clear that competition is completely excluded by monopolizing the market, since they exercised complete dominance due to their holding of almost 100% of the CDT market from around 2002. It also cannot be said that defendants intended to encourage competition when they selected the amount of the price decrease while the market size was shrinking and the price was decreasing due to the demand changing from CDT to flat displays. Price agreement is not limited to an agreement regarding price stabilization or price increase, but includes all common actions that impede promotion of non-price competition, such as quality or service, etc. and impede a faster price decrease while the market is experiencing a price decline trend without common and artificial price selection.

303     Thirdly, it is also clear that the defendants fundamentally participated in this case's common actions with intent to restrict competition. Firstly, the information exchanged by the defendants at the cartel meetings was generally information that is difficult to obtain from the market such as each company's production and sales volume, production line conversion plans, each company's orders and inventory status, each company's current prices and each company's future pricing plans, etc.[55] In addition, the defendants encouraged agreement by continuing with the argument that mutual competition can lead to mutual damage and thus it should be controlled at the actual cartel meetings. The defendants reviewed other companies' compliance with the agreed upon items and insisted on implementing the agreed upon items if any violations were discovered, such as excessive discounting, taking away another company's order, or not reducing the production volume or sales volume as agreed.

304     Fourthly, this case's common action does not have any relationship with the economic result that increases efficiency. The CDT cartel organized by the defendants is simply a communication system for adjusting and reaching an agreement on the sales price, allocation of the market share, reduction of the production volume and does not constitute an Economic Association that improves efficiency such as production, sale, purchase and research & development, etc.

---

[55] Actually, this fact is further supported by agreeing to not maintain evidence of meeting materials and limiting the number of people that may attend the meeting from each company to maintain the secrecy of the cartel meetings and the fact that meeting materials and the result reports are marked "secret" or "confidential", etc.

305    Accordingly, the defendants' decision on the sales price, production volume restriction and market allocation, etc. for the CDT market are clearly intended to limit competition, since these were actions that were taken mutually by agreement on CDT's sales price and limit on the production volume, etc. even though these decisions were to be made separately by the business people independently and these actions lead to reduced competition or cause competition to disappear among the business people in the CDT market and thus constitute actions that improperly restrict competition.

3) Conclusion

306    The defendants' CDT sales price setting actions violate Article 19 Section 1 Clause 1 and the actions to reduce the production volume and allocate market shares violate Article 19 Section 1 Clause 3.

4. Disposition

A.    Corrective measures and assessment of fines

307    As seen previously, the defendants have almost 100% market dominance in the domestic CDT sales market and the economic restrictive effect and the ripple effect severity is deemed to be substantial, and therefore a fine will be imposed pursuant to the Laws related to Monopoly Control and Fair Trade[56] Article 22 and Article 55-3, Enforcement Regulations of the said Act[57] Article 9 and Article 61 Section 1 [Asterisk2], Announcement on Imposition of Fine and Criteria[58] (herein below referred to as "Announcement of Imposition of Fine) 2. C. (1)[59].

---

[56] April 1, 2005 Enforcement Regulation (Provision No. 7315) supplemental Provision Article 8 (Interim Measure related to Fine for Improper Common Action) provides; "Those actions that took place prior to the effective date of this law and were concluded prior to the effect of this law or even after this provision goes into effect, the portion consisting of the continuous act  shall be subject to the previous regulation." In addition, April 1, 2005 Enforcement Regulation Enforcement Order (No. 18768) Supplemental Provision Article 4 (Interim Measure related to Fine for Improper Common Action) provides; "Those actions that took place prior to the effective date of this provision and concluded prior to the effect of this provision or even after this provision goes into effect, the portion consisting of the continuous act shall be subject to the previous regulation." However, the common action of this case consists of November 23, 1996-March 14, 2006 and thus the imposition of a fine pursuant to Article 22 refers to the fine that was in effect prior to the amendment by April 1, 2005 Enforcement Regulation No. 7315. Same as below.

[57] Refers to the fine prior to the amendment by April 1, 2005 Executive Order No. 18768. Same as below.

[58] Apply April 1, 2004 Fair Trade Commission Announcement No. 2004-7 pursuant to July 13, 2005 Fair Trade Commission Announcement No. 200-15 Supplemental Provision Article 2.

[59] Pursuant to Announcement of the fine 2. C. (1), the fine is imposed as a principle for improper common action.

However, corrective measures designed to prevent future illegal actions will not be imposed, since the defendants are not engaged in the CDT business due to the disappearance of the domestic CRT industry and there is no actual benefit of any corrective measures as of the date of the decision.

B. Calculation of the fine

1) Calculation of the basic fine

A) relevant sales amount

   (1) Range of relevant products

308      A CDT for computer color monitors is the product that was affected directly or indirectly by the common action of this case. Products of 14″, 15″, 17″ and 19″ are decided as the related products for which agreement is to be sought.

   (2) The dates the violation acts were initiated and terminated

309      For defendant Samsung SDI, defendant Chunghwa Picture Tubes, defendant Chunghwa Picture Tubes  Malaysia[60] and Chunghwa Picture Tubes Fuzhou [CPTF Optronics Co. Ltd.], the commencement of a common action is November 23, 1996. On the same date, Samsung SDI, defendant Samsung SDI, defendant Chunghwa Picture Tubes, defendant Chunghwa Picture Tubes Fuzhou and Orion held a highest level CDT cartel meeting, which was attended by each company's CEO, and exchanged information related to production status and future plans, which are essential for a CDT multi-party meeting, and agreed on production volume reduction, sales price decrease control and also agreed to each take on the roles of encouraging the participation of the other CRT business people. Thereafter, the CDT cartel continued for more than 10 years and thus November 23, 1996, the date on which defendant Samsung SDI, defendant Chunghwa Picture Tubes, defendant Chunghwa Picture Tubes Malaysia and Chunghwa Picture Tubes Fuzhou agreed on improper common action will be deemed to be the commencement date of the common action.

310      For defendant LPD, June 30, 2001 will be deemed to be the commencement date of the common action of this case.

---

[60] Refer to footnote 5) and footnote 14) as seen previously

As seen previously, LPD was established on June 11, 2001 by a holding company LPD by merging CRT business divisions of LG Electronics and Phillips Electronics, and the CRT business division was transferred to LPD by LG Electronics in the same year on June 30 and by Phillips Electronics in the same year on July 1. It participated for the first time at the cartel meeting on July 24, 2001 and received major sales materials/personnel information from the parent companies LG Electronics and Phillips Electronics. Considering that there was agreement with multi party meeting participants on the sales price by standard, production line termination, etc. on April 19, 2001 and June 27, 2001 when the parent company participated in the common action of this case as well as continuing with collusion regarding the foregoing on July 24, 2001 as a participant by the newly formed company on sales price guidelines establishment and maintaining termination of the production line, etc. with the same participants, thus there is a finding of restriction of competition and continuity of its effect, and therefore the date of the transfer of business of June 30, 2001 will be deemed to be the commencement date of the violation.

311     In addition, the date of conclusion of the common action refers to the date from which these agreements no longer took place and the fact that agreement no longer exists means engaging in actions that are clearly contrary to the agreed upon actions and thus it is difficult to determine if the agreement is being maintained. Examples of such actions are: if there were designated conditions or a deadline related to the agreement, these conditions were satisfied or the deadline had expired; or the applicable business person withdrew; there was an agreement to terminate the existing agreement or return the increased price to its original position by agreement between business people, etc.[61]

312     Accordingly, the termination date of this case's common actions is March 14, 2006. There is no evidence of any new meetings by the defendants after this date and it is unclear whether or not actual common action existed further. The fact is that the CEO of Chunghwa Picture Tubes testified that [it] was the last multi party meeting with the competitors. The fact is that the defendants discussed the plans to close Chinese, Korean and other plants and cease production lines at the last meeting on March 14, 2006 as well as the fact that it is difficult to acknowledge the common actions of this continuing under the condition of rapid contraction of the CDT market's demand and rapid conversion to the flat display market all lead to the conclusion that this case's common action's termination is March 14, 2006.

(3) Range of the relevant sales amount

---

[61] Refer to Seoul High Court November 24, 2004 Announcement 2003Noo9000 decision

The relevant sales amount refers to "The sales amount from the sale of products or service in a particular transaction area during the violation period by the violating business person or the same amount.[62] Accordingly, Samsung SDI and Chunghwa Picture Tubes' relevant sales amount is the amount that the defendants exported to Korea or sold domestically for all CDT products from November 23, 1006~March 14, 2006 and for LPD's relevant sales amount, the period is from June 30, 2001~March 14, 2006. However, while 14″ and 15″ CDT products were included as the subject of agreement for the entire period of the common action, 17″ CDT product was included as a collusion product starting from July 31, 1998 and 19″ CDT product was included as a collusion product starting from January 18, 1999, thus the relevant sales amount for those products will be the amount of the sales of CDT products within Korea from the aforementioned dates until March 14, 2006.

B) Criteria for the imposition rate

314     Under the Announcement of Fine rule of 1. C. (1). (A)[63], the fine is to be set according to the violation act's severity, and thus the calculated point is 3.0[64] according to the Guidelines on Determination of Severity of Violations IV. 2. C. (1) relevant [Asterisk3], and a calculated point that is over 2.2 is deemed to be a very severe violation and therefore the imposition rate is 3.5%~5%. However, the 3.5% criteria imposition rate will be applied considering the fact that [acts] were carried out to ease and maintain the sales price's decrease amount during the collusion period of this case, the fact that most of the violations took place prior to the Announcement of Fine of April of 2004 and the fact that the acts were carried out to ease the deterioration of profit due to the CDT market's rapid changes and rapid demand reduction.

C) Basic fine amount

315     The basic fine total per defendant is as noted below pursuant to the criteria for the imposition rate <Table 28>.

---

[62] Enforcement Regulation Article 9 (Calculation method for fine) Section 1
[63] Announcement of Fine 1. C. (1) Improper common action
   (A) The basic fine amount is calculated by multiplying the imposition criteria rate by the severity of the violation to the relevant sales amount.

| Degree of Severity | Imposition Criteria Rate |
|---|---|
| Very severe violation acts | 3.5%~5.0% |

[64] This case's violation details according to the Guidelines for determination of the severity of the violation act and calculation of the relevant sales amount when imposing fines: 0.5 (weight) x 3 points (Imposition level: High) = 1.5 points, market dominance rate among factors to consider for severity of violation act: 0.2 (weight) x 3 points (imposition level: High) =0.6 point. Ripple effect of violation acts: 0.3 (weight) x 3 points (Imposition level: High) = 0.9 point. The total of calculated points is 1.5 points + 0.6 points + 0.9 points = 3 points and is thus higher than 2.2 and therefore qualifies as a very serious violation act.

<Table 28>                          <u>Basic Fine Amount</u>

(Won)

| By Defendant | Relevant Sales Amount | Imposition Criteria Rate | Basic Imposition Amount |
|---|---|---|---|
| Samsung (SDI) | 2,079,129,417,703 | 3.5% | 72,769,529,619 |
| LPD (LPD) | 621,349,000,000 | 3.5% | 21,747,215,000 |
| Chunghwa Picture Tubes | TWD 6,039,799,493 (232,592,678,475) | 3.5% | TWD 211,392,982 (8,140,743,746) |
| Chunghwa Picture Tubes Malaysia | TWD 89,488,243 (3,446,192,237) | 3.5% | TWD 3,132,088 (120,616,728) |
| Chunghwa Picture Tubes Fuzhou | TWD 79,677,374 (3,068,375,672) | 3.5% | TWD 2,788,708 (107,393,148) |
| Total | 2,939,585,664,087 | - | 102,885,498,241 |

*3 companies of Chunghwa Picture Tube's Taiwan dollar (TWD) is derived as the commission decision date (January 26, 2011). Converted to won by applying the Korea Foreign Exchange Bank's initially announced sales basis rate (1 TWD – 38.51 won)

D) Calculation of the mandatory adjusted fine amount

316     The defendants do not have any basis for mandatory adjustments and therefore the basic fine amount is adopted as the adjusted fine amount.

E) Calculation of discretionary adjusted fine amount

317     (1) There was participation by high level executives who are directors or occupy a higher position who directly participated in the violation acts during the defendants' common actions of this case, and therefore 10% of the mandatory adjusted fine amount is added pursuant to the Announcement of Fine IV. 3. B.[65].

318     (2) Defendant Chunghwa Picture Tube, defendant Chunghwa Picture Tube Malaysia, and defendant Chunghwa Picture Tube Fuzhou had consecutive negative profits for years 2008 and 2009 and LPD[66] had negative profit for the years 2007 and 2008 and therefore,

---

[65] Announcement of Fine IV. 3. B. Grounds for additional amount and weight
     (5) In the case that the director or a higher position officer of the violating business has directly participated in the violation acts:  less than 10 of 100
     (6) In case of causes that come under above miscellaneous items (1) to (5): Less than 10 of 100
[66] Determination was made with only 2007 and 2008 quarterly profit statements, since LPD had transferred the CRT business and assets in 2009 and it is currently not in operation and therefore there are no business reports for the year 2009.

20% of the mandatory adjusted fine amount is reduced pursuant to Announcement of Fine IV. 3. (C). (8). (B)[67].  The discretionary adjusted amount of the fine per defendant is as noted below <Table 29>.

<Table 29>                           Discretionary Adjusted Fine Amount

(Won)

| Defendant | Mandatory Adjusted Fine Amount | Additional/Reduction Rate | Amount of Adjustment | Discretionary Adjusted Fine Amount |
|---|---|---|---|---|
| Samsung (SDI) | 72,769,529,619 | 10% | 7.276,952,961 | 80,046,482,580 |
| LPD (LPD) | 21,747,215,000 | ⚠ | 2,174,721,500 | 19,572,493,500 |
| Chunghwa Picture Tubes | TWD 211,392,982 (8,140,743,746) | ⚠ | TWD 21,139,298 (814,074,374) | TWD 190,253,684 (7,326,669,372) |
| Chunghwa Picture Tubes Malaysia | TWD 3,132,088 (120,616,728) | ⚠ | TWD 313,208 2,061,672 | TWD 2,818,880 (108,555,056) |
| Chunghwa Picture Tubes Fuzhou | TWD 2,788,708 (107,393,148) | ⚠ | TWD 278,870 10,739,314 | TWD 2,509,838 (96,653,834) |
| Total | | - | | 107,150,854,342 |

F) Determination of the Imposed Fine Amount

319     (1) The defendant LPD[68] transferred the CRT business division to Meridian Solar & Display Co. Ltd. on June 8, 2009 and it is currently closed and its asset is only 15 million won with liabilities of over 30 billion won, and therefore it is objectively deemed to be unable to pay the fine and therefore the fine is waived for this entity.

320     (2) Considering the fact that defendant Samsung SDI, defendant Chunghwa Picture Tubes, defendant Chunghwa Picture Tubes  Malaysia, and Chunghwa Picture Tubes Fuzhou experienced deterioration of profitability due to industry re-structuring arising from the rapid price decrease and rapid decrease of demand for the applicable year in the CDT market, the fact is that the improper profit is small due to the actual loss of quarterly profits related to relevant products over the last 3~4 years, the fact is that there is no record of illegal activities over the past 3 years and [they] have introduced CP and are implementing them to prevent re-occurrence of violations, the fact is that there exists decisions by the Fair Trade Commission that had mitigated for management difficulties related to the market/industry for the applicable year,

---

[67] Announcement of Fine IV. 3. C. (8)
   (A) In the case that previous year's profit is negative: less than 10 of 100
   (B) In the case that recent quarterly profit is consecutively negative for more than 2 years: less than 20 of 100
[68] Parent company LPD Holdings (Netherlands company) is currently in bankruptcy and in the process of liquidation.

the fact is that the domestic and foreign market or the industry's objective circumstances or conditions' rapidly change and therefore the CDT market has disappeared, it is deemed that imposition of the discretionary adjusted fine amount is excessive and therefore 70% of the discretionary adjusted fine amount is reduced pursuant to Announcement of Fine 4. A. (2)'s regulation. However, any amount less than 1 million won is removed pursuant to Announcement of Fine 4. E.'s regulation. The imposed fine amount per defendant is as noted below in <Table 30>.

<Table 30>           Imposed Fine Amount           (1000 Won, %)

| Defendant | Discretionary Adjusted Fine Amount | Reduction Rate | Imposed Fine Amount | Limits on Imposed Fine Amount | |
|---|---|---|---|---|---|
| | | | | 5% of 3 year average sales amount | 3 year average sales amount |
| Samsung (SDI) | 80,046,482 | 70 | 24,013,944 | 276,998,000 | 5,539,965,000 |
| LPD (LPD) | 19,572,493 | 100 | 0 | 42,371,000 | 847,437,000 |
| Chunghwa Picture Tubes | 7, 326, 669 (TWD 190, 253, 684) | 70 | 2,198,000 (TWD 57, 076, 105) | 110,111,000 | 2,202,227,000 |
| Chunghwa Picture Tubes Malaysia | 108,555 (RWD 2, 818, 880) | 70 | 32,566 (TWD 845, 664) | 19,981,000 | 399,636,000 |
| Chunghwa Picture Tubes Fuzhou | 96,653 (TWD 2, 509, 838) | 70 | 28,996 (TWD 752, 951) | 34,472,000 | 689,442,000 |

*Taiwan dollar (TWD) is converted at the amount of 1 TWD = 38.51 won

5. Conclusion

321     The defendants' actions of above 2. A. are in violation of Article 19 Section 1 Clause 1 and Clause 3, and therefore the decision is hereby rendered as contained in the main text by applying the regulations of  Article 22 for the order to pay a fine.

The Fair Trade Commission hereby renders its decision as noted above.

March 11, 2011

| | | |
|---|---|---|
| Chairperson | Commission Chairman | Dong Soo Kim |
| | Chief Commissioner | Hak Hyun Kim |
| | Commissioner | Young Ho Ahn |
| | Commissioner | Myung Cho Yang |
| | Commissioner | Hong Kwon Lee |
| | Commissioner | Sung Hoon Chun |
| | Commissioner | Jong Won Choi |