Eliot A. Adelson (SBN 205284)
James Maxwell Cooper (SBN 284054)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: eadelson@kirkland.com
Email: max.cooper@kirkland.com

James H. Mutchnik, P.C. (*pro hac vice*)
Barack Echols (*pro hac vice*)
Kate Wheaton (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: jmutchnik@kirkland.com
Email: bechols@kirkland.com
Email: kate.wheaton@kirkland.com

Attorneys for Defendants
HITACHI, LTD., HITACHI DISPLAYS, LTD.
(n/k/a JAPAN DISPLAY INC.), HITACHI
AMERICA, LTD., HITACHI ASIA, LTD.,
AND HITACHI ELECTRONIC DEVICES
(USA), INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. Master File No. 3:07-cv-05944-SC |
| | MDL NO. 1917 |
| This Document Relates to: | **HITACHI DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT BASED UPON WITHDRAWAL AND THE STATUTES OF LIMITATIONS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| *All Indirect Purchaser Actions* | |
| *Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.*, No. 3:11-cv-01656-SC; | **ORAL ARGUMENT REQUESTED** |
| *Alfred H. Siegel as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al.*, No. 3:11-cv-05502-SC; | Date: February 6, 2015<br>Time: 10:00 a.m.<br>Before: Hon. Samuel Conti |

### REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.,*
   No. 3:11-cv-05513-SC;

2

3    *Target Corp, et al. v. Chunghwa Picture Tubes,*
   *Ltd., et al.,* No. 3:11-cv-05514-SC;

4

5    *Sears, Roebuck and Co. and Kmart Corp. v.*
   *Chunghwa Picture Tubes, Ltd.,* No. 3:11-cv-
   05514-SC

6

7    *Interbond Corporation of America, d/b/a*
   *BrandsMart USA v. Hitachi, et al.,*
   No. 3:11-cv-06275-SC;

8

9    *Office Depot, Inc. v. Hitachi, Ltd., et al.,*
   No. 3:11-cv-06276-SC;

10

11    *CompuCom Systems, Inc. v. Hitachi, Ltd.,*
   *et al.,* No. 3:11-cv-06396-SC;

12

13    *Costco Wholesale Corporation v. Hitachi*
   *Ltd., et al.,* No. 3:11-cv-06397-SC;

14

15    *P.C. Richard & Son Long Island Corporation, et*
   *al. v. Hitachi, Ltd., et al.,* No. 3:12-cv-02648-SC;

16    *Schultze Agency Services, LLC on behalf of*
   *Tweeter OPCO, LLC and Tweeter Newco, LLC v.*
   *Hitachi,*

17

18    *Ltd., et al.,* No. 3:12-cv-02649-SC;

19    *Tech Data Corporation, et al. v. Hitachi,*
   *Ltd., et al.,* No. 3:13-cv-00157-SC

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 6, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Samuel Conti, Hitachi, Ltd. ("HTL"), Hitachi Displays, Ltd. ("HDP"), Hitachi Asia, Ltd. ("HAS"), Hitachi America, Ltd. ("HAL") and Hitachi Electronic Devices (USA), Inc. ("HED(US)") (collectively, the "Hitachi Defendants") will and hereby do move the Court, under Rule 56(a) of the Federal Rules of Civil Procedure, for an Order for summary judgment in the Hitachi Defendants' favor as to all of above-captioned plaintiffs' claims for relief as those claims are time-barred for the reasons set forth in the accompanying Memorandum of Points and Authorities.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities in support thereof, the declaration of Eliot A. Adelson, any materials attached thereto or otherwise found in the record, along with the argument of counsel and such other matters as the Court may consider.

DATED: November 7, 2014

By: /s/ Eliot A. Adelson

Eliot A. Adelson
James Maxwell Cooper
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: eadelson@kirkland.com
Email: max.cooper@kirkland.com

Attorneys for Defendants
HITACHI, LTD., HITACHI DISPLAYS,
LTD. (n/k/a JAPAN DISPLAY INC.),
HITACHI AMERICA, LTD., HITACHI
ASIA, LTD., AND HITACHI
ELECTRONIC DEVICES (USA), INC.

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

QUESTIONS PRESENTED.............................................................................................................1

SUMMARY OF ARGUMENT .......................................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ...............................................................2

I.     THE HITACHI DEFENDANTS EXITED THE CRT INDUSTRY BY MARCH
       2003......................................................................................................................................3
       A.      Hitachi, Ltd. ("HTL") ...............................................................................................3
       B.      Hitachi Displays, Ltd. ("HDP") ...............................................................................3
       C.      Hitachi Asia, Ltd. ("HAS").......................................................................................3
       D.      Hitachi America, Ltd. ("HAL") ................................................................................4
       E.      Hitachi Electronic Devices (USA), Inc. ("HED(US)") ...........................................4

II.    THE CRT CONSPIRATORS WERE WELL AWARE THAT THE HITACHI
       DEFENDANTS EXITED THE CRT INDUSTRY. ............................................................5

LEGAL STANDARD.....................................................................................................................7

I.     THE UNDISPUTED EVIDENCE SHOWS THAT THE HITACHI DEFENDANTS
       WITHDREW FROM THE ALLEGED CONSPIRACY NO LATER THAN MARCH
       20, 2003................................................................................................................................9

II.    THE WITHDRAWAL WAS CLEAN AND PERMANENT. ...........................................10
       A.      It is undisputed that the Hitachi Defendants ceased all manufacturing
               and sales of CDTs and CPTs by March 2003...........................................................10
       B.      The Hitachi Defendants did not and could not engage in any of the
               cartel activities after March 2003. ..........................................................................11
       C.      HDP's Twenty-Five Percent, Minority, Non-Controlling Ownership
               Stake in SEG Does Not Disprove Withdrawal. .......................................................12

III.   PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS,
       WHICH RAN BY MARCH 2007—FOUR YEARS AFTER THE HITACHI
       DEFENDANTS WITHDREW FROM THE ALLEGED CONSPIRACY. ......................15

CONCLUSION..............................................................................................................................18

1

## TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC,*
148 F.3d 1080 (D.C. Cir. 1998) ................................................................................. 12

5

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ....................................................................................................... 7

6

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.,*
858 F.2d 499 (9th Cir. 1988) ...................................................................................... 16

7

8

*In re Alstom SA,*
406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................................................ 13

9

10

*In re ATM Fee Antitrust Litigation,*
686 F.3d 741 (9th Cir. 2012) ...................................................................................... 14

11

*In re Lithium Ion Batteries Antitrust Litigation,*
No. 13-MD-2420. 2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ................................. 14

12

13

*In re Multidistrict Vehicle Air Pollution,*
591 F.2d 68 (9th Cir. 1979) .................................................................................... 9, 16

14

15

*In re Sulfuric Acid Antitrust Litig.,*
743 F. Supp. 2d 827 (N.D. Ill. 2010) ......................................................................... 17

16

*In re TFT-LCD (Flat Panel) Antitrust Litig. ("TFT-LCD"),*
820 F. Supp. 2d 1055 (N.D. Cal. 2011) ................................................................... 7, 8

17

18

*Klehr v. A.O. Smith Corp.,*
521 U.S. 179 (1997) ................................................................................................. 8, 16

19

20

*Levine v. United States,*
383 U.S. 265 (1966) ....................................................................................................... 7

21

*Long v. Walt Disney Co.,*
116 Cal. App. 4th 868 (2004) ...................................................................................... 17

22

23

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ....................................................................................................... 7

24

25

*MedioStream Inc. v. Microsoft Corp.,*
869 F. Supp. 2d 1095 (N.D. Cal. 2012) ..................................................................... 16

26

*Monstanto Co. v. Spray-Rite Service Corp.,*
465 U.S. 752 (1984) ..................................................................................................... 12

27

28

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999)
    *amended in part*, 211 F.3d 1224 (11th Cir. 2000)............................................................. *passim*

*Motus v. Pfizer Inc. (Roerig Div.)*,
    358 F.3d 659 (9th Cir. 2004).................................................................................................. 7

*Motus v. Pfizer Inc.*,
    196 F. Supp. 2d 984 (C.D. Cal. 2001).................................................................................... 7

*Pace Indus., Inc. v. Three Phoenix Co.*,
    813 F.2d 234 (9th Cir. 1987).................................................................................................. 8

*Parth v. Pomona Valley Hosp. Med. Ctr.*,
    630 F.3d 794 (9th Cir. 2010).................................................................................................. 7

*Reno-W. Coast Distrib. Co. v. Mead Corp.*,
    613 F.2d 722 (9th Cir. 1979)................................................................................................ 12

*Rutledge v. Boston Woven Hose & Rubber Co.*,
    576 F.2d 248 (9th Cir. 1978)................................................................................................ 16

*Spanish Broadcasting System of Florida, Inc. v. Clear Channel*
    *Communications, Inc.*,
    376 F.3d 1065 (11th Cir. 2004)...................................................................................... 13, 14

*United States v. Antar*,
    53 F.3d 568 (3d Cir. 1995).................................................................................................... 8

*United States v. Cont'l Group*,
    603 F.2d 444 (3d Cir. 1979).................................................................................................. 9

*United States v. Greenfield*,
    44 F.3d 1141 (2d Cir. 1995)............................................................................................. 8, 17

*United States v. Lash*,
    937 F.2d 1077 (6th Cir. 1991).............................................................................................. 10

*United States v. Lothian*,
    976 F.2d 1257 (9th Cir. 1992)......................................................................................... 1, 7, 8

*United States v. Read*,
    658 F.2d 1225 (7th Cir. 1981)........................................................................................... 8, 15

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978)......................................................................................................... 9, 11

*Virginia v. McKesson Corp.*,
    No. C 11-02782 SI, 2013 WL 1287423 (N.D. Cal. Mar. 28, 2013).................................. 8, 10

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ............................................................. 17

**Statutes**

15 U.S.C. § 15b ..................................................................................................... 1, 16

Vt. Stat. Ann. tit. 12, § 511 .................................................................................... 1, 16

Wis. Stat. Ann. § 893.18 ......................................................................................... 1, 16

**Rules**

Fed. R. Civ. P. 56(c) ............................................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### QUESTIONS PRESENTED

1.    Whether the Hitachi Defendants are entitled to a judgment that they are not subject to joint and several liability for any acts of the alleged Cathode Ray Tube ("CRT") conspiracy after March 20, 2003, when the Hitachi Defendants exited the CRT industry and therefore withdrew from the alleged conspiracy.[1]

2.    Whether Plaintiffs' price-fixing claims[2] against the Hitachi Defendants are barred by the statute of limitations and should be dismissed because they were filed more than four years after the Hitachi Defendants exited the CRT industry and withdrew from the alleged conspiracy.

### SUMMARY OF ARGUMENT

A defendant's withdrawal from a price-fixing conspiracy has two distinct effects: (1) it cuts off its joint and several liability for any subsequent acts by members of the conspiracy; and, (2) it triggers the statute of limitations. Exiting an industry—publicly and in a manner that is recognized by its former conspirators—is sufficient to show a cartel member's "disassociation from the conspiracy." *United States v. Lothian*, 976 F.2d 1257, 1261 (9th Cir. 1992). That is precisely what the Hitachi Defendants did by March 2003, when they ceased all production and sales of CRTs in their complete exit from the CRT business.

Because the Hitachi Defendants exited the CRT business—and thus withdrew from the alleged conspiracy—by March 2003, the four-year statute of limitations began running at that time and expired in March 2007. But no antitrust actions were filed against any of the Hitachi Defendants

---

[1]    For purposes of this summary judgment motion, which pertains to the legal and evidentiary standards demonstrating withdrawal from a conspiracy, the Hitachi Defendants proceed as if they concede that there was a CRT conspiracy and that they were participants in the CRT conspiracy. For all other purposes, the Hitachi Defendants dispute that any of them participated in any CRT cartel. Moreover, HAL, HDP and HED(US) are simultaneously moving for summary judgment as to Plaintiffs' conspiracy claims. *See* November 7, 2014 HAL, HDP and HED(US) Motion for Summary Judgment Based Upon Lack of Evidence Supporting Participation in the Alleged Cartel and Memorandum of Points and Authorities in Support Thereof.

[2]    15 U.S.C. § 15b. The Hitachi Defendants bring this motion for summary judgment against all claims in the operative complaints of the Indirect Purchaser Plaintiffs and each of the Direct Action Plaintiffs in the above-captioned cases. With respect to the state-law claims under Wisconsin and Vermont law, which are subject to six-year statutes of limitations, the Hitachi Defendants move for judgment as to all such claims arising outside the limitations period. Wis. Stat. Ann. § 893.18; Vt. Stat. Ann. tit. 12, § 511.

1    until November 2007—more than six months after the statute of limitations expired.   Thus, all

2    Plaintiffs' conspiracy claims should be dismissed.

3           Accordingly, the Hitachi Defendants respectfully request that the Court:

4           1)      Enter an order and judgment that none of the Hitachi Defendants is liable for any acts

5    of, or injuries or damages caused by, the CRT conspiracy after March 20, 2003; and,

6           2)      Enter an order that Plaintiffs' claims against all of the Hitachi Defendants are

7    dismissed as barred by the statute of limitations, and enter judgment in the Hitachi Defendants'

8    favor.

9                      **STATEMENT OF UNDISPUTED MATERIAL FACTS**

10          Plaintiffs allege a price-fixing conspiracy in the CRT industry, which consists of Color

11   Display Tubes ("CDTs") and Color Picture Tubes ("CPTs"), beginning in 1996 and continuing until

12   2007.   Direct Action Plaintiffs *Best Buy, Co., Inc., et al. v. Hitachi, Ltd., et al.*, Case No. 3:07-cv-

13   05513-SC (N.D. CA) First Amended Complaint ("FAC") ¶ 1 filed on October 3, 2013, ECF No. 47.

14   They have sued, and named among the defendants, five Hitachi companies: Hitachi, Ltd. ("HTL"),

15   Hitachi Displays, Ltd. ("HDP"), Hitachi Asia, Ltd. ("HAS"), Hitachi America, Ltd. ("HAL") and

16   Hitachi Electronic Devices (USA), Inc. ("HED(US)") (collectively, the "Hitachi Defendants").   The

17   Hitachi Defendants dispute that any of them participated in the CRT cartel.   Regardless, the

18   undisputed facts demonstrate that each and all of them ceased producing or selling CRTs and exited

19   the CRT industry no later than March 2003.

20

21

22

23

24

25

26

27

28

**I.   THE HITACHI DEFENDANTS EXITED THE CRT INDUSTRY BY MARCH 2003.**

    **A.   Hitachi, Ltd. ("HTL")**

HTL is a Japanese company with its principal place of business in Japan.  FAC ¶ 25.  It began manufacturing and selling CDTs "as early as 1979 at its factories located in Japan." Declaration of Eliot A. Adelson, Ex. 1, Kawamura Decl. ¶ 5.[3]  But it stopped selling CDTs into the United States as far back as 1998.  *Id.* ¶ 7.  It ceased manufacturing CDT computer monitors in 2000, and CDT tubes in December 2001.  Ex. 2, Yokoo Decl. ¶ 7; Ex. 1, Kawamura Decl. ¶ 6.

    **B.   Hitachi Displays, Ltd. ("HDP")**

HDP is a Japanese company *that never manufactured or sold CPTs or CDTs at all*.  HTL's Display Group was spun off to HDP in October 2002.  Ex. 1, Kawamura Decl. ¶ 3.

    **C.   Hitachi Asia, Ltd. ("HAS")**

HAS is chartered and has its principal place of business in Singapore.  FAC ¶ 28.  "HAS never manufactured color display tubes [CDTs]."  Ex. 8, Teng Decl. ¶ 5.

---

[3]   All exhibits cited herein are attached to the Declaration of Eliot A. Adelson, and will be referenced in the remainder of this brief as "Ex."

**D.      Hitachi America, Ltd. ("HAL")**

HAL is a New York company with its principal place of business in New York.  FAC ¶ 27.

**E.      Hitachi Electronic Devices (USA), Inc. ("HED(US)")**

HED(US) is a Delaware corporation with its principal place of business in South Carolina. FAC ¶ 29.  HED(US) never manufactured CDTs, but "sold CDT tubes beginning in November 1998." Ex. 10, Heiser Decl. ¶ 16.

*   *   *

1 ████████████████████████████████████████████████████

2 ████████████████████████████████

3          It also is undisputed that after March 2003 the Hitachi Defendants had no ability to take part

4 in any of the unlawful activities in which the alleged CRT cartel engaged. ████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12 ██

13  **II.      THE CRT CONSPIRATORS WERE WELL AWARE THAT THE HITACHI**

14          **DEFENDANTS EXITED THE CRT INDUSTRY.**

15          The Hitachi Defendants' decisions to exit the CRT industry were not secret; they were

16 publicly announced and widely known—including by the members of the alleged CRT cartel. ████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28 ████████████████████████████████

[REDACTED]

The Hitachi Defendants' plans to exit the CRT industry were also covered by industry press. The cover story on the July 30, 2001 industry circular "Display Monitor" read that "Hitachi last week confirmed that it has decided to withdraw from the business of manufacturing CRTs for PC monitors" by the end of 2001. Ex. 18, HEDUS-CRT00169116. These exit plans were also widely reported by business press across the United States. Ex. 19, *Hitachi Will Exit PC Display-Tube Business,*" L.A. Times, July 27, 2001, § 3, at 4 (announcing that "Hitachi . . . will exit the conventional desktop computer display-tube business"). [REDACTED]

[REDACTED] Ex. 21, *Hitachi Sharpens Focus,* Warren Communications News, Inc., March 11 2002 (announcing that "Hitachi Electron Devices will focus on LCDs . . . as result of its decision to scrap production of direct-view CRTs"); Ex. 22, *Hitachi to Withdraw from CRT TV Production in China,* Jiji Press Ticker Service, March 25, 2002 ("Japan's Hitachi Ltd. will pull out of the production of color television sets using cathode-ray tubes in China at the end of March."). [REDACTED]

[REDACTED] In short, the entire industry, not just the members of the alleged CRT cartel, were fully aware of the Hitachi Defendants' exit from the CRT business.

Thus, it is beyond dispute that the alleged CRT cartel members were entirely aware of the Hitachi Defendants exit from the industry, knew that the Hitachi Defendants would no longer be producing or selling any additional CRTs, knew that they would not, and could not be part of any

1    conspiracy after that, and actually were analyzing how Hitachi's departure could work to the

2    advantage of the alleged cartel members.

3                                   **LEGAL STANDARD**

4         Summary judgment is appropriate when there is no genuine issue as to any material fact and

5    the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Motus v. Pfizer*

6    *Inc.*, 196 F. Supp. 2d 984, 989-90 (C.D. Cal. 2001) ("*Motus I*"), *aff'd sub nom. Motus v. Pfizer Inc.*

7    *(Roerig Div.)*, 358 F.3d 659 (9th Cir. 2004). Where, as here, the moving party meets its initial

8    burden of demonstrating the absence of a genuine issue of material fact, "[t]he burden then shifts to

9    the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."

10    *Motus I* at 990 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

11         A party opposing a motion for summary judgment must establish that there is a *material*

12    issue for trial, which requires "more than simply show[ing] that there is some metaphysical doubt as

13    to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

14    (1986). Where a party who will bear the burden of proof at trial fails, after adequate time for

15    discovery, to make a showing sufficient to establish the existence of an element essential to its case,

16    "the plain language of Rule 56(c) mandates the entry of summary judgment . . . ." *Parth v. Pomona*

17    *Valley Hosp. Med. Ctr.*, 630 F.3d 794, 798-99 (9th Cir. 2010) (quoting *Celotex*, 477 U.S. at 322)).

18    "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure

19    of proof concerning an essential element of the nonmoving party's case necessarily renders all other

20    facts immaterial." *Celotex*, 477 U.S. at 322-23.

21         The law is well settled that a defendant's joint and several liability for actions taken in

22    furtherance of a conspiracy ends when the defendant withdraws from the conspiracy. *See Levine v.*

23    *United States*, 383 U.S. 265, 266 (1966); *see also Lothian*, 976 F.2d at 1262 ("a defendant cannot be

24    held liable for substantive offenses committed . . . after withdrawing from a conspiracy); *In re TFT-*

25    *LCD (Flat Panel) Antitrust Litig.* ("*TFT-LCD*"), 820 F. Supp. 2d 1055, 1059 (N.D. Cal. 2011) (joint

26    and several liability only "continues until . . . the defendant withdraws from the conspiracy"). To

27    withdraw, it is sufficient for the defendant to "take 'definite, decisive, and positive' steps to show

28    [its] disassociation from the conspiracy." *Lothian*, 976 F.2d at 1261; *see also United States v.*

1    *Greenfield*, 44 F.3d 1141, 1149-1150 (2d Cir. 1995) (withdrawal occurs when a defendant

2    "abandons the combination and agreement").   "Withdrawal negates the element of agreement."

3    *Lothian*, 976 F.2d at 1261.   A plaintiff's "bare allegation of a continued conspiracy" is not enough

4    to preclude summary judgment in the face of evidence demonstrating a clear withdrawal.   *See*

5    *Virginia v. McKesson Corp.*, No. C 11-02782 SI, 2013 WL 1287423 at *4 (N.D. Cal. Mar. 28,

6    2013).

7        A defendant's withdrawal from a conspiracy also triggers the running of the statute of

8    limitations for a plaintiff's claim.   *See Lothian*, 976 F.2d at 1262; *United States v. Antar,* 53 F.3d

9    568, 584 (3d Cir. 1995); *United States v. Read,* 658 F.2d 1225, 1233 (7th Cir. 1981); *TFT-LCD*, 820

10   F. Supp. 2d at 1059.   The four-year[4] limitations period runs from the "last overt act" taken in

11   furtherance of the conspiracy.   *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997); *Virginia v.*

12   *McKesson*, No. C 11-02782 SI, 2013 WL 1287423 at *3 (N.D. Cal. Mar. 28, 2013).   The limitations

13   period is renewed only if the defendant commits (1) a "new and independent act that is not merely a

14   reaffirmation of a previous act," and (2) the act must "inflict new and accumulating injury on the

15   plaintiff." *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987).

16       Just as a defendant's withdrawal cuts off joint and several liability because the withdrawal is

17   the end of participation in the conspiracy, withdrawal represents the last time the defendant can take

18   any "overt acts" to support the cartel.   *See Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d

19   823, 837 (11th Cir. 1999) *amended in part*, 211 F.3d 1224 (11th Cir. 2000).   Accordingly, if a

20   plaintiff sues for a price-fixing conspiracy more than four years after a defendant's withdrawal from

21   a conspiracy, it cannot recover any damages from that defendant, and its claim must be dismissed.

22   *See Morton's Mkt.*, 198 F.3d at 837 (a defendant can neither be "be held liable for the acts of the

23   other conspirators after he withdrew . . . [n]or can he be sued for the damages caused by his previous

24   participation because the limitations period has elapsed"); *see also In re Multidistrict Vehicle Air*

25

26   [4]   The statute of limitations for federal antitrust claims and most state law antitrust claims is four years. *See Klehr v.*
     *A.O. Smith Corp.*, 521 U.S. 179, 189 (1997).   Here two state law claims relating to Kansas and Mississippi statutes

27   have a three year limitations period instead of four. (*See* Defendants' Joint Notice of Motion and Motion to Dismiss
     and for Judgment on the Pleadings as to Certain Direct Action Plaintiffs' Claims, ECF. No. 1317-2 filed on Aug. 17,

28   2012 in In Re Cathode Ray Tube (CRT) Antitrust Litigation, N.D. CA, Case No. 07-5944). Vermont and Wisconsin
     have six year limitations periods. (*See supra* Note 2).

1   *Pollution*, 591 F.2d 68, 71 (9th Cir. 1979) (no recovery for overt acts that occurred outside the

2   limitations period).

3   **I.     THE UNDISPUTED EVIDENCE SHOWS THAT THE HITACHI DEFENDANTS**
        **WITHDREW FROM THE ALLEGED CONSPIRACY NO LATER THAN MARCH**
4       **20, 2003.**

5           The undisputed facts are that each and every one of the Hitachi Defendants ceased any

6   production or sales of CRTs and did not participate in the CRT industry after March 2003. A

7   defendant demonstrates its withdrawal from a conspiracy through "[a]ffirmative acts inconsistent

8   with the object of the conspiracy" that are "communicated in a manner reasonably calculated to

9   reach co conspirators." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464-65 (1978); *see also*

10  *United States v. Cont'l Group*, 603 F.2d 444, 466 (3d Cir. 1979) (Withdrawal involves "a definite

11  and decisive step of some kind which shows complete disassociation.").   Leaving an industry

12  entirely, as the Hitachi Defendants did here, is certainly "inconsistent with the idea of continued

13  participation in the alleged scheme." *Cont'l Group*, 603 F.2d at 466.

14          Here, the Hitachi Defendants not only disassociated from the conspiracy, they completely

15  removed themselves from the CRT industry. *See supra* Statement of Undisputed Facts ("SOF") Part

16  I. This exit from the industry constitutes an effective withdrawal. *See Morton's Mkt., Inc.*, 198 F.3d

17  at 839.  The Eleventh Circuit's decision in *Morton's Market* is directly on point.  There, the court

18  found that a dairy owner who sold his business and retired had effectively withdrawn from a price-

19  fixing conspiracy because his co-conspirators knew of the retirement.  *Id.*  The owner had "totally

20  severed [his] ties" to the conspiracy, and thus, "deprived the remaining conspirator group of the

21  services which he provided to the conspiracy." *Id.*

22          Like the defendant in *Morton's Market*, the Hitachi Defendants exited the CRT industry and

23  could no longer provide any "services" or support to the conspiracy.   They closed all CDT

24  production lines in December 2001 and ended all CDT sales by October 2002. *See supra* SOF Part

25  I. Similarly, they closed all CPT production lines in April 2002 and stopped selling CPTs by March

26  2003. *See id.*  This exit was publicly announced and widely known throughout the industry. *See id.*

27  Members of the alleged cartel knew of Hitachi's exit from the CRT industry, documented the fact

28  that they knew it in notes of their alleged cartel meetings, and even discussed how Hitachi's exit

1   would benefit the members of the alleged conspiracy.  *See supra,* SOF Part II.  In short, this

2   undisputed evidence demonstrates that all of the Hitachi Defendants exited the CRT industry by

3   March 20, 2003, and thus effectively withdrew from the CRT conspiracy.

4   **II.     THE WITHDRAWAL WAS CLEAN AND PERMANENT.**

5          A "conspirator's break with the other conspirators . . . must be both clean and permanent."

6   *Morton's Mkt.*, 198 F.3d at 839.  Summary judgment is appropriate where, as here, there is no

7   evidence that the defendant "acquiesced in the conspiracy" after withdrawal.  *See United States v.*

8   *Lash*, 937 F.2d 1077, 1084 (6th Cir. 1991).  While Plaintiffs here allege generically that all

9   defendants, including the Hitachi Defendants, continued to participate in the conspiracy after March

10  2003 (FAC ¶ 1), they have not adduced and cannot cite any evidence to support that claim.  Bare

11  allegations like these, lacking any evidentiary support, cannot preclude summary judgment.  *See*

12  *McKesson*, 2013 WL 1287423 at *4.

13         **A.     It is undisputed that the Hitachi Defendants ceased all manufacturing and sales
                    of CDTs and CPTs by March 2003.**

14

15         It is undisputed that the Hitachi Defendants ceased the manufacturing and sales of CRTs by

16  March 20, 2003.  *See supra* SOF Part II.  The exit of the Hitachi Defendants from the CRT business

17  was well known across the industry, and the remaining CRT manufacturers, and alleged co-

18  conspirators, in the industry no longer viewed the Hitachi Defendants as working with them.  *See id.*

19  Indeed, even Plaintiffs' experts do not dispute that the Hitachi Defendants ceased all production and

20  sales of CRTs:



28  Ceasing production and sales of both CDTs and CPTs is inherently inconsistent with the object of

the conspiracy; rather, it is an affirmative act by the Hitachi Defendants that effectively severed any of their alleged ties to the CRT industry.  *See U.S. Gypsum*, 438 U.S. at 464-65; *Morton's Mkt.*, 198 F.3d at 839.

**B.     The Hitachi Defendants did not and could not engage in any of the cartel activities after March 2003.**

The permanence of the Hitachi Defendants' withdrawal from the CRT industry is further evidenced by their lack of production and sales capacity, and thus inability to impact the alleged conspiracy.  Where, unlike here, an entity stops participating in the conspiracy but continues to follow the cartel's pricing or production controls, it has not fully withdrawn from the conspiracy. *See Morton's Mkt.*, 198 F.3d at 839.  Here, however, the Hitachi Defendants did not—and could not—continue to follow the alleged CRT cartel's pricing or production controls. ████████████

██████████████████████████████████████████████████████████

███████████████

**C.     HDP's Twenty-Five Percent, Minority, Non-Controlling Ownership Stake in SEG Does Not Disprove Withdrawal.**

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████   SEG is itself

named as a defendant in these actions, is not affiliated with the Hitachi Defendants, has not appeared in this case and is not represented here.  Yet, Plaintiffs argue that the minority shareholder position that one Hitachi entity held in SEG after March 2003, without more, justifies a finding that the Hitachi Defendants' failed to withdraw from the alleged cartel.

Owning stock in a company, however, does not suffice as evidence of "participation" in a conspiracy.  For a defendant to be found liable of conspiracy there must be proof that it had a "*conscious commitment* to a common scheme to achieve an unlawful objective." *Monstanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752 (1984) (emphasis added).  To be a conspirator, a defendant must have participated "knowingly" in the conspiracy.  *Reno-W. Coast Distrib. Co. v. Mead Corp.*, 613 F.2d 722, 725, n.3 (9th Cir. 1979).  Liability for conspiracy cannot be based on merely the holding of an ownership interest.  *See Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC,* 148 F.3d 1080, 1088 (D.C. Cir. 1998) (27% "minority ownership interest in another company is not sufficient by itself to" convert parent corporation into a "competitor" at level of subsidiary for antitrust purposes).  If that were the case, then every stockholder in a company engaged in price-fixing, and every parent company of a conspiring subsidiary, would become a "participant" in the illegal conspiracy.  ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

Rather, the anticompetitive conduct of a company can only be attributed to its minority shareholder where the minority shareholder has "control over day-to-day operations or general corporate policies" of that company. *Spanish Broadcasting System of Florida, Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1065, 1075 (11th Cir. 2004) (holding that such "control over the affairs and policies of the subsidiary" must be "substantial").

Here, it is undisputed that HAS, HAL, or HED(US) never held *any* ownership interest in SEG, and there are no allegations (nor evidence) that any of these Hitachi Defendants exercised any level of control over SEG.  Plaintiffs instead focus on HDP and its minority ownership position in SEG.

But there is no evidence whatsoever that HTL or HDP had the "control over day-to-day operations or general corporate policies" required for HTL or HDP to be considered a "participant" in the CRT markets through its minority interest in SEG. *Spanish Broadcasting*, 376 F.3d at 1075.  All the evidence is to the contrary.

"Minority stock ownership and the ability to appoint a minority of the board do not create power to direct management and policies." *In re Alstom SA*, 406 F. Supp. 2d 433, 492 (S.D.N.Y. 2005) (holding 24% shareholder had no control over alleged Securities and Exchange Act Section 20(a) violator).

1 ██████████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3    HTL and HDP's roles were equally limited with regard to the day-to-day operations and

4 general corporate policies of SEG's CRT business.  There is *no* evidence that HDP had the ability to

5 control or direct the pricing or production decisions of SEG either before or after the Hitachi

6 Defendants exited the CRT industry.  Indeed, the undisputed facts are to the contrary: █████████

7 ████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ██████████    Thus, the ability of HTL and HDP to participate in any of the mechanisms of the

13 cartel through SEG—that is, to pull any of the "economic levers" necessary to support the cartel—

14 was nonexistent.  Accordingly, HTL or HDP's minority interest in SEG cannot possibly raise an

15 issue of material fact to rebut the undisputed *evidence* that the Hitachi Defendants no longer

16 participated in the CRT industry after March 2003.  *Spanish Broadcasting*, 376 F.3d at 1075 ("There

17 is no question that [26% shareholder parent] does not participate in [the subsidiary's] market" based

18 on share ownership.); *cf. In re ATM Fee Antitrust Litigation*, 686 F.3d 741, 757 (9th Cir. 2012)

19 (control means "to have the 'power or authority to guide or manage'"); *In re Lithium Ion Batteries*

20 *Antitrust Litigation*, No. 13-MD-2420. 2014 WL 309192 at *6-*8 (N.D. Cal. Jan. 21, 2014)

21 (minority stock ownership is insufficient to establish "ownership and control").

22    Moreover, while Plaintiffs' experts opine that the Hitachi Defendants had an "incentive" to

23 continue participating in the alleged conspiracy because of HTL/HDP's minority ownership stake in

24 SEG, they fail to explain how that "incentive" possibly can serve as evidence that any Hitachi

25 Defendant made a "conscious commitment" to participate in the conspiracy after March 2003, when

26 HDP *never produced or sold CRTs at all* and none of the other Hitachi Defendants had any

27 production or sales of CRTs. ████████████████████████████████

28 ████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████   In short,

4 the existence of the type of "incentive" or "economic interest," such as that on which Plaintiffs rely

5 here, in no way disproves that the Hitachi Defendants cleanly and completely withdrew from the

6 cartel. And Plaintiffs have, by their own admission, nothing else to point to otherwise.

*   *   *

8 Accordingly, Plaintiffs and their experts agree with the undisputed facts that prove the

9 Hitachi Defendants' withdrawal from the alleged conspiracy.   The Hitachi Defendants had no

10 production, no production capacity, no inventory, and no sales of CRTs after March 2003.   Thus,

11 they thus had no "economic levers" they could pull to support the conspiracy.   Moreover, their exit

12 from the CRT industry was public, was broadcast across the industry, and was recognized by all

13 other CRT manufacturers, including those Plaintiffs allege were co-conspirators.   Summary

14 judgment as to the Hitachi Defendants' withdrawal—and lack of any liability for actions

15 post-withdrawal—is therefore warranted.

16 **III.   PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS,**
   **WHICH RAN BY MARCH 2007—FOUR YEARS AFTER THE HITACHI**
17    **DEFENDANTS WITHDREW FROM THE ALLEGED CONSPIRACY.**

18

19 The Hitachi Defendants' clean and permanent withdrawal from the conspiracy not only cuts

20 off any liability after that withdrawal, it also triggers the running of the statute of limitations.   A

21 "defendant's withdrawal from the conspiracy starts the running of the statute of limitations as to"

22 that defendant.   *Read*, 658 F.2d at 1233.   Withdrawal becomes a complete defense "when coupled

23 with the defense of the statute of limitations." *Morton's Mkt.*, 198 F.3d at 837; *see also Read*, 658

24 F.2d at 1233 (claims brought outside the limitations period against defendants who withdrew "are

25 time-barred").

26

27

28

1        The statute of limitations for antitrust conspiracy claims is four years.  15 U.S.C. § 15b.[5]

2   That four-year limitations period runs from the "last overt act" taken in furtherance of the

3   conspiracy.  *See Klehr*, 521 U.S. at 189.  Such an overt act must be (1) a "new and independent act

4   that is not merely a reaffirmation of a previous act," and (2) "the act must inflict new and

5   accumulating injury on the plaintiff."  *MedioStream Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095,

6   1102 (N.D. Cal. 2012).

7        Here, the Hitachi Defendants exited the CRT industry and withdrew from the alleged

8   conspiracy no later than March 20, 2003.  (*See supra* Argument Part II-III).  Upon withdrawal, the

9   Hitachi Defendants did not have any production, inventory, or sales of CRTs and had no ability to

10  affect the prices of CRTs or otherwise take any actions in furtherance of the conspiracy.  *See id.*

11  They, therefore, did not—indeed, could not—engage in any "new and independent act" that could

12  cause injury to Plaintiffs, and thus, restart the limitations period.  *See MedioStream*, 869 F. Supp. 2d

13  at 1102.  Where, as here, a company has exited an industry, "[n]o forbidden 'overt acts' occur[]

14  thereafter."  *Multidistrict Vehicle Air Pollution*, 591 F.2d at 71.  They had no "economic levers" to

15  pull.

16       Accordingly, the limitations period applicable to Plaintiffs' antitrust claim began to run no

17  later than March 20, 2003 and expired on March 21, 2007.  As the first of Plaintiffs' complaints was

18  not filed until November 2007, all their claims are barred by the statute of limitations, and the

19  plaintiffs cannot recover any damages from the Hitachi Defendants.  *See Klehr*, 521 U.S. at 189.

20       Nor can Plaintiffs salvage their barred claims by claiming fraudulent concealment.  To

21  support a claim for fraudulent concealment, Plaintiffs "must allege facts showing affirmative

22  conduct" by the Hitachi Defendants to mislead plaintiffs as to the existence of their antitrust claim.

23  *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978).  "Passive

24  concealment of information is not enough to toll the statute of limitations."  *Conmar Corp. v. Mitsui*

25  *& Co. (U.S.A.), Inc.*, 858 F.2d 499, 505 (9th Cir. 1988).  The Hitachi Defendants had withdrawn

26  from the cartel and exited the entire CRT industry, and therefore, did not have any affirmative

27  _____

28  [5]   State-law claims under Wisconsin and Vermont law are subject to six-year statutes of limitations.  Wis. Stat. Ann. § 893.18; Vt. Stat. Ann. tit. 12, § 511.

1    actions to take to keep the alleged conspiracy "concealed"—they were no longer participating in the

2    industry at all. And Plaintiffs do not identify any specific acts of concealment that any of the Hitachi

3    Defendants took after March 2003.

4        It is not the case, as Plaintiffs have suggested, that it was incumbent on the Hitachi

5    Defendants to report the existence of the cartel from which they had withdrawn to the authorities.

6    The point is "to make sure that a withdrawal did occur" rather than "compel a conspirator to inform

7    on his or her co-conspirators or to warn-off possible victims." *Greenfield*, 44 F.3d at 1150.

8    ██████████████████████████████████████████████████████████

9    ██████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████ "Failure to

11   actively disclose illegal conduct, or mere denial of wrongdoing, does not qualify as an affirmative

12   act of concealment." *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 854 (N.D. Ill. 2010);

13   *see also Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (C.D. Cal. 2010)

14   ("'[N]ondisclosure is not fraudulent concealment—affirmative deceptive conduct is required.'"

15   (quoting *Long v. Walt Disney Co.*, 116 Cal. App. 4th 868, 874 (2004)).

16       Because no tolling doctrine applies to salvage Plaintiffs' late-filed suits, their claims against

17   the Hitachi Defendants are barred by the statute of limitations, and should be dismissed.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

**CONCLUSION**

2      The evidence is undisputed that the Hitachi Defendants completely exited the CRT industry

3   in 2003 and thus made a clean and permanent break, and effective withdrawal, from the alleged CRT

4   conspiracy.  Accordingly, they cannot be found liable for the acts of any conspirators after that date.

5   And, because the four-year statute of limitations began running in March 2003 and expired in March

6   2007—over six months before any of Plaintiffs' Complaints were filed—Plaintiffs' claims are

7   barred.  For these reasons, and the reasons set forth above, the Hitachi Defendants respectfully

8   request that the Court grant summary judgment in their favor.

9   DATED: November 7, 2014            By:  /s/ Eliot A. Adelson

10                                       Eliot A. Adelson
                                        James Maxwell Cooper
11                                      KIRKLAND & ELLIS LLP
                                        555 California Street, 27th Floor
12                                      San Francisco, CA 94104
                                        Telephone: (415) 439-1400
13                                      Facsimile: (415) 439-1500
                                        Email: eadelson@kirkland.com
14                                      Email: max.cooper@kirkland.com

15                                      Attorneys for Defendants
                                        HITACHI, LTD., HITACHI DISPLAYS, LTD. (n/k/a
16                                      JAPAN DISPLAY INC.), HITACHI AMERICA,
                                        LTD., HITACHI ASIA, LTD., AND HITACHI
17                                      ELECTRONIC DEVICES (USA), INC.

18

19

20

21

22

23

24

25

26

27

28