Eliot A. Adelson (SBN 205284)
James Maxwell Cooper (SBN 284054)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: eadelson@kirkland.com
Email: max.cooper@kirkland.com

James H. Mutchnik, P.C. (*pro hac vice*)
Barack Echols (*pro hac vice*)
Kate Wheaton (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: jmutchnik@kirkland.com
Email: bechols@kirkland.com
Email: kate.wheaton@kirkland.com

Attorneys for Defendants
HITACHI DISPLAYS, LTD. (n/k/a JAPAN
DISPLAY INC.), HITACHI AMERICA, LTD.,
AND HITACHI ELECTRONIC DEVICES
(USA), INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. Master File No. 3:07-cv-05944-SC |
| | MDL NO. 1917 |
| This Document Relates to: | **HITACHI PARTIES' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT BASED UPON THE LACK OF EVIDENCE OF PARTICIPATION IN THE ALLEGED CONSPIRACY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| *All Indirect Purchaser Actions* | |
| *Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.*, No. 3:11-cv-01656-SC; | |
| *Alfred H. Siegel as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al.*, No. 3:11-cv-05502-SC; | **ORAL ARGUMENT REQUESTED** |
| | Date:   February 6, 2015 |
| | Time:   10:00 a.m. |
| | Before: Hon. Samuel Conti |
| *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 3:11-cv-05513-SC; | |

### REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  *Target Corp, et al. v. Chunghwa Picture Tubes,*
    *Ltd., et al.,* No. 3:11-cv-05514-SC;
2

3  *Sears, Roebuck and Co. and Kmart Corp. v.*
    *Chunghwa Picture Tubes, Ltd.,* No. 3:11-cv-
4  05514-SC

5  *Interbond Corporation of America, d/b/a*
    *BrandsMart USA v. Hitachi, et al.,*
6  No. 3:11-cv-06275-SC;

7  *Office Depot, Inc. v. Hitachi, Ltd., et al.,*
    No. 3:11-cv-06276-SC;
8

9  *CompuCom Systems, Inc. v. Hitachi, Ltd.,*
    *et al.,* No. 3:11-cv-06396-SC;
10

11  *Costco Wholesale Corporation v. Hitachi*
     *Ltd., et al.,* No. 3:11-cv-06397-SC;
12

13  *P.C. Richard & Son Long Island Corporation, et*
     *al. v. Hitachi, Ltd., et al.,* No. 3:12-cv-02648-SC;

14  *Schultze Agency Services, LLC on behalf of*
15  *Tweeter OPCO, LLC and Tweeter Newco, LLC v.*
     *Hitachi, Ltd., et al.,* No. 3:12-cv-02649-SC;
16

17  *Tech Data Corporation, et al. v. Hitachi,*
     *Ltd., et al.,* No. 3:13-cv-00157-SC

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 6, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Samuel Conti, Hitachi America Limited ("HAL"), Hitachi Displays LTD ("HDP"), and Hitachi Electronic Devices (USA) ("HED(US)") (collectively, the "Hitachi Parties") will and hereby do move the Court, under Rule 56(a) of the Federal Rules of Civil Procedure, for an Order for summary judgment in the Hitachi Parties favor as to all of above-captioned plaintiffs' claims for relief as the Hitachi Parties did not participate in the alleged conspiracy for the reasons set forth in the accompanying Memorandum of Points and Authorities.

This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities in support thereof, the declaration of Eliot A. Adelson, any materials attached thereto or otherwise found in the record, along with the argument of counsel and such other matters as the Court may consider.

DATED: November 7, 2014

By: /s/ Eliot A. Adelson

Eliot A. Adelson
James Maxwell Cooper
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: eadelson@kirkland.com
Email: max.cooper@kirkland.com

Attorneys for Defendants
HITACHI DISPLAYS, LTD. (n/k/a JAPAN
DISPLAY INC.), HITACHI AMERICA,
LTD., AND HITACHI ELECTRONIC
DEVICES (USA), INC.

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

QUESTION PRESENTED .....................................................................................1

SUMMARY OF ARGUMENT ...............................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS .................................................2

I.     THE COMPLETE FAILURE OF ANY EVIDENCE OF CONSPIRACY WITH
       RESPECT TO HTL, HDP AND HED(US)......................................................2
       A.     Hitachi Displays, Ltd. ("HDP") ..................................................3
       B.     Hitachi America, Ltd. ("HAL") ...................................................3
       C.     Hitachi Electronic Devices (USA), Inc. ("HED(US)") ......................4
       D.     The Unrebutted Witness Testimony Denying Participation in Any
              Conspiracy .............................................................................4
       E.     Plaintiffs' Reliance on "Hitachi" ................................................5

II.    THE HITACHI PARTIES' COMPETITIVE CONDUCT .....................................5

III.   MEMBERS OF THE ALLEGED CARTEL DENY THAT THE HITACHI PARTIES
       PARTICIPATED IN A CRT CONSPIRACY .....................................................6

LEGAL STANDARD............................................................................................9

ARGUMENT ....................................................................................................11

I.     THERE IS NO DIRECT EVIDENCE THAT ANY OF THE HITACHI PARTIES
       PARTICIPATED IN THE CRT CONSPIRACY. ...............................................11

II.    THERE IS NO CIRCUMSTANTIAL EVIDENCE THAT "TENDS TO EXCLUDE
       THE POSSIBILITY" OF NON-CONSPIRATORIAL CONDUCT BY THE
       HITACHI PARTIES............................................................................12
       A.     Bare Allegations of Information-Sharing at Trade Association or Other
              Meetings Are Not Evidence of Conspiracy. ..................................13
       B.     The Hitachi Parties' Limited Participation in the CRT Market Belies
              Any Conspiratorial Inference Against Them..................................15

CONCLUSION..................................................................................................16

1

## **TABLE OF AUTHORITIES**

2                                                                                          **Page**

3    **Cases**

4    *AD/SAT, A Div. of Skylight, Inc. v. Associated Press,*
        181 F.3d 216 (2d Cir. 1999) ................................................................................ 1, 12
5

6    *Anderson v. Liberty Lobby, Inc.,*
        477 U.S. 242 (1986) ............................................................................................. 10
7

8    *Bisaccia v. Attorney Gen. of State of N. J.,*
        623 F.2d 307 (3d Cir. 1980) ................................................................................. 15

9    *Celotex Corp. v. Catrett,*
        477 U.S. 317 (1986) .......................................................................................... 9, 10
10

11   *Cnty. of Tuolumne v. Sonora Cnty. Hosp.,*
        236 F.3d 1148 (9th Cir 2001) ............................................................................... 11

12   *Eliason Corp. v. Nat'l Sanitation Found.,*
        485 F. Supp. 1062 (E.D. Mich. 1977) aff'd, 614 F.2d 126 (6th Cir. 1980)................... 12
13

14   *Esco Corp. v. United States,*
        340 F.2d 1000 (9th Cir. 1965) .............................................................................. 12
15

16   *Fisher v. City of Berkeley, Cal.,*
        475 U.S. 260 (1986) ............................................................................................. 10

17   *Fragale & Sons Beverage Co. v. Dill,*
        760 F.2d 469 (3d Cir. 1985) ................................................................................. 14
18

19   *Harlem River Consumers Co-op., Inc. v. Associated Grocers of Harlem, Inc.,*
        408 F. Supp. 1251 (S.D.N.Y. 1976) ...................................................................... 13
20

21   *In re Baby Food Antitrust Litig.,*
        166 F.3d 112 (3d Cir. 1999) ................................................................................. 14

22   *In re Citric Acid Litig,*
        191 F.3d 1090 (9th Cir. 1999) ................................................................... 10, 12, 14
23

24   *In re Fresh & Process Potatoes Antitrust Litig.,*
        834 F. Supp. 2d 1141 (D. Idaho 2011) ..................................................................... 1
25

26   *In re Linerboard Antitrust Litig.,*
        504 F. Supp. 2d 38 .............................................................................................. 14

27   *In re Lithium Ion Batteries Antitrust Litig.,*
        13-MD-2420 YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014)........................... 1, 2, 13
28

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) ................................................................................. 10, 15

*In re Vitamins Antitrust Litig.*,
    320 F. Supp. 2d 1 (D.D.C. 2004) ................................................................................. 12

*Indep. Iron Works, Inc. v. U.S. Steel Corp.*,
    177 F. Supp. 743 (N.D. Cal. 1959) *aff'd*, 322 F.2d 656 (9th Cir. 1963) ......................... 10

*Mag Instrument, Inc. v. Dollar Tree Stores Inc.*,
    No. CV 03-6215 RSWL SHX, 2005 WL 5957825 (C.D. Cal. Apr. 14, 2005)............... 15

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................. 1, 10, 11

*Monsanto Co. v. Spray-Rite Service Corp.*,
    465 U.S. 752 (1984) ................................................................................. 1, 2, 11

*Motus v. Pfizer Inc. (Roerig Div.)*,
    358 F.3d 659 (9th Cir. 2004) ................................................................................. 9

*Motus v. Pfizer Inc.*,
    196 F. Supp. 2d 984 (C.D. Cal. 2001) ................................................................. 9

*Parth v. Pomona Valley Hosp. Med. Ctr.*,
    630 F.3d 794 (9th Cir. 2010) ................................................................................. 10

*Tanaka v. Univ. of S. Cal.*,
    252 F.3d 1059 (9th Cir. 2001) ................................................................................. 10

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................. 9, 10

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### QUESTION PRESENTED

3      Whether Hitachi America, Ltd ("HAL"), Hitachi Displays, Ltd. ("HDP"), and Hitachi

4  Electronic Devices (USA), Inc. ("HED(US)") (collectively, the "Hitachi Parties") are entitled to

5  summary judgment on Plaintiffs' federal Sherman Act and related state law antitrust claims[1] alleging

6  an illegal price-fixing conspiracy, given that (1) there is no affirmative evidence tending to show

7  their participation in the alleged CRT conspiracy, and (2) the lack of any evidence that tends to

8  exclude the possibility that they were engaged in non-conspiratorial conduct during the alleged

9  conspiracy period.[2]

10

### SUMMARY OF ARGUMENT

11      The law is well settled that in order to survive summary judgment on an antitrust conspiracy

12  claim, Plaintiffs must adduce evidence that "tends to exclude the possibility" of non-conspiratorial

13  conduct. *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984). Evidence that is

14  "consistent with permissible competition" and a company's unilateral business interests is

15  insufficient. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 597, n.21

16  (1986). In addition, the evidence must be evaluated as to *each defendant. See In re Lithium Ion

17  Batteries Antitrust Litig.*, 13-MD-2420 YGR, 2014 WL 309192 at *13 (N.D. Cal. Jan. 21, 2014)

18  (requiring plaintiffs "to allege that each individual defendant joined the conspiracy"); *see also In re

19  Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1150 (D. Idaho 2011) (recognizing

20  that "for each individual defendant, plaintiffs must allege that *that* defendant had 'a conscious

21  commitment to a common scheme'" (quoting *Monsanto*, 465 U.S. at 764)); *AD/SAT, A Div. of

22  Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999) (requiring "a factual showing

23  that each defendant conspired in violation of the antitrust laws"). This is no different when the

24  companies involved include corporate affiliates—each company must be evaluated on its own. *See*

25

26  [1]   The Hitachi Parties bring this motion for summary judgment against all claims in the operative complaints of the
      Indirect Purchaser Plaintiffs and each of the Direct Action Pplaintiffs in the above-captioned cases.

27  [2]   The Hitachi Parties, joined by Hitachi, Ltd. and Hitachi Asia, Ltd., are simultaneously filing a Motion for Summary
28      Judgment as to all Plaintiffs' conspiracy claims based on the undisputed facts demonstrating their withdrawal from
      the alleged conspiracy and the operation of the statute of limitations, which bars their claims.

1   *Lithium Ion Batteries*, 2014 WL 309192 at *13 (requiring that plaintiffs "demonstrate that the

2   American subsidiaries *themselves* made a conscious decision to conspire").   If the evidence of

3   conspiracy is lacking as to any of them, summary judgment is proper with respect to that defendant.

4   *See Monsanto*, 465 U.S. at 764.

5          Two of the companies Plaintiffs have sued here—HAL and HED(US)—produced or sold

6   Cathode Ray Tubes ("CRTs") for only a very brief time during the alleged CRT conspiracy.  The

7   third, HDP, never produced or sold any CRTs at any time during the alleged conspiracy period.  No

8   witness from any defendant, the putative plaintiff class, or any third party has testified that any of

9   these Hitachi Parties were involved in the alleged conspiracy.  Every witness from HAL, HED(US)

10  and HDP, including executives with the corporate authority to direct pricing and production

11  decisions, has testified unequivocally that they were not.  Nor are there any documents that suggest,

12  let alone tend to prove, that the Hitachi parties participated in the alleged conspiracy.  Rather, the

13  evidence all is to the contrary—that the Hitachi Parties did *not* take part in the alleged CRT

14  conspiracy.  And the evidence that has been adduced tends to show instead that the Hitachi Parties

15  were aggressive competitors.  Accordingly, summary judgment with respect to the Hitachi Parties is

16  warranted.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

18         As set forth more fully below, the evidence is undisputed with respect to the

19  non-participation of HAL, HDP and HED(US) in the alleged CRT conspiracy.  Every witness with

20  firsthand knowledge has testified that these companies were not part of the conspiracy.  No witness

21  has testified that they were.  And there is no documentary or other evidence to the contrary.

22  **I.     THE COMPLETE FAILURE OF ANY EVIDENCE OF CONSPIRACY WITH
23          RESPECT TO HTL, HDP AND HED(US)**

24         Three companies that have been sued in this case are HTL, HDP and HED(US).  To the

25  extent that they sold CRTs at all (HDP did not), they sold CRTs for only a small part of the twelve-

26  year "long running" conspiracy Plaintiffs allege.  There is no evidence that any employees from any

27  of these companies participated in the CRT cartel.  And executives from these companies have

28  testified under oath that the companies did not participate in any CRT price-fixing conspiracy.

### A.    Hitachi Displays, Ltd. ("HDP")

HDP is a Japanese company that never manufactured CRTs at any time, including during the alleged conspiracy period.  Declaration of Eliot A. Adelson, Ex. 1, Kawamura Decl. ¶ 3.[3]

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████         ████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

### B.    Hitachi America, Ltd. ("HAL")

HAL is a New York company with its principal place of business in New York.  Direct Action Plaintiffs *Best Buy, Co., Inc., et al. v. Hitachi, Ltd., et al.*, Case No. 3:07-cv-05513-SC (N.D. CA) First Amended Complaint ("FAC") ¶ 1 filed on October 3, 2013, ECF No. 47. ("FAC") ¶ 27.[4] HAL never manufactured CDTs or CPTs. Ex. 7, Heiser Decl. ¶¶ 13, 15; *see also* Ex. 8, Lim Decl. ¶ 2. ██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████  "In April 1998, HAL's ELT Division was merged into HED(US)."  Ex. 7, Heiser Decl. ¶ 8.  There is no evidence of any anticompetitive behavior on HAL's part at any time, including during the short period of time that HAL sold CRTs during the alleged conspiracy period.

---

[3]  All exhibits cited herein are attached to the Declaration of Eliot A. Adelson, and will be referenced in the remainder of this brief as "Ex."

[4]  The Hitachi Parties bring this motion for summary judgment against all claims in the operative complaints of the Indirect Purchaser Plaintiffs and each of the Direct Action Plaintiffs in the above-captioned cases.

C.      **Hitachi Electronic Devices (USA), Inc. ("HED(US)")**

HED(US) is a Delaware corporation with its principal place of business in South Carolina.
FAC ¶ 29. ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████   There is no record evidence that HED(US) participated in the CRT cartel and, as
set forth above, the record supports HED(US)'s efforts to compete, rather than collude, with respect
to CRT sales.

D.      **The Unrebutted Witness Testimony Denying Participation in Any Conspiracy**

Every one of the current and former employees and executives of the Hitachi Parties who has
testified has denied that he or anyone in their companies agreed to fix the prices of CRTs with any
competitor.

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████   In sum,

1    there is no testimony from any current or former employee of any of the Hitachi Parties that even

2    suggests, let alone admits, participation in the alleged CRT cartel.

3        **E.**      **Plaintiffs' Reliance on "Hitachi"**

4        Because they have not and cannot point to evidence sufficient to survive summary judgment

5    for any of the Hitachi Parties, Plaintiffs prefer to blur the lines between any one Hitachi entity and

6    any other—accusing the composite "Hitachi" of participating in the CRT conspiracy. ███████

7    ███████████████████████████████████████████████████████

8    ███████████████████████████████████████████████████████

9    █████████████████████████████████ But "Hitachi" as

10    Plaintiffs describe it, is an entity of Plaintiffs' own creation. It has not ever existed as or operated as

11    Plaintiffs would lead the Court to believe. As discussed above, each of the Hitachi Parties operated

12    as its own company; it was not the case that all these entities operated as some single,

13    undifferentiated corporate entity.

14    ███████████████████████████████████████████████████████

15    ███████████████████████████████████████████████████████

16    ███████████████████████████████████████████████████████

17    ███████████████████████████████████████████████████████

18    ███████████████ Nonetheless, Plaintiffs choose to ignore these facts by persisting in

19    levying their allegations against "Hitachi" globally, in an apparent effort to leverage what little

20    circumstantial evidence of conspiracy they can muster against any and all Hitachi companies,

21    including the Hitachi Parties.

22    **II.**     **THE HITACHI PARTIES' COMPETITIVE CONDUCT**

23        Not only is there no evidence that any of the Hitachi Parties participated in the CRT cartel,

24    the evidence of record reflects *competition*, not collusion, on the part of the Hitachi Parties. Record

25    documents and testimony confirm that when the Hitachi Parties were involved in the sale of CRTs,

26    they were vicious competitors.

27    ███████████████████████████████████████████████████████

28    ███████████████████████████████████████████████████████



There is no evidence suggesting that any of the Hitachi Parties was engaged in anything other than competitive conduct during the alleged conspiracy period.

## III.   MEMBERS OF THE ALLEGED CARTEL DENY THAT THE HITACHI PARTIES PARTICIPATED IN A CRT CONSPIRACY

It is true that, from 2008 through 2012, a number of government competition enforcement agencies from a variety of countries opened investigations, handed down indictments, and imposed fines on a number of major companies and individuals for participating in an illegal conspiracy to fix and raise the prices of CRTs.  FAC ¶¶ 172, 176-179.  And, some companies pleaded guilty and agreed to cooperate with government investigations of the CRT industry.  *Id.* ¶¶ 181-182.

Executives from a number of companies admitted that a conspiracy existed and that they had taken part in it.  They explained how the conspiracy was carried out by competitor meeting in China, Taiwan, South Korea, Thailand, Indonesia, Malaysia, the U.K. and Europe to discuss and agree to fix production levels, prices and price increases for CRTs at a series of what were called "Glass Meetings."  FAC ¶¶ 6, 116-129.  These Glass Meetings took place on a regular basis and involved employees with varying levels of responsibility in the competing CRT manufacturers, including those at the highest level with the authority to direct their company's pricing and production strategies.  *Id.* ¶¶ 117-119.

But *none* of the Hitachi Parties—HAL, HDP and HED(US)—or any of their employees was ever indicted or fined in connection with any of these CRT investigations or prosecutions.  None of the enforcement actions by the DOJ or any of the foreign competition authorities was brought against these companies.  And none of these government investigations claimed that any of the Hitachi Parties took part in the alleged CRT conspiracy.  The Hitachi Parties were not named, did

1   not plead guilty, and were not assessed any fines or penalties by any competition authority from any

2   nation for any alleged participation in the CRT cartel.   Moreover, as noted above, HDP never

3   manufactured CRTs *at any time*, including during the alleged conspiracy period.

4          Notwithstanding these facts, beginning in November 2007, a number of direct and indirect

5   purchasers of CRTs filed class and individual lawsuits against a number of major CRT

6   manufacturers, including the Hitachi Parties.   From 2007 through 2014, substantial discovery took

7   place in these suits.   More than five million pages of documents were produced.   And more than 250

8   depositions were taken, including depositions of witnesses who were current or former employees of

9   those defendants that pled guilty to the conspiracy and who personally had participated in the "Glass

10  Meetings."

11         Despite this enormous amount of discovery, not a single witness from any of the various

12  defendants has testified that any Hitachi Party employee, let alone a Hitachi Party executive with

13  pricing authority, agreed to fix the prices of CRTs.   In fact, just the opposite—the witness testimony

14  uniformly was that the Hitachi Parties did *not* agree to fix prices or production levels with any

15  competitors:



1   ████████████████████████████████████████████████████
2   ████████████████████████████████████████████████████
3   ████████████████████████████████████████████████████
4   ██████████████████████████████████
5   █ ███████████████████████████████████████████████████
6   ████████████████████████████████████████████████████
7   ████████████████████████████████████████████████████
8   ████████████████████

The testimony further uniformly reflects that no employee of any of the Hitachi Parties ever attended any of the conspiratorial "Glass Meetings" at which prices were discussed and agreed upon:

11   ████████████████████████████████████████████████████
12   ████████████████████████████████████████████████████
13   ████████████████████████████████████████████████████
14   ████████████████████████████████████████████████████
15   ████████████████████████████████████████████████████
16   ████████████████████████████████████████████████████
17   ████████████████████████████████████████████████████
18   ████████████████████████████████████████████████████
19   ████████████████████████████████████████████████████
20   ████████████████████████████████████████████████████
21   █████████████ ████████████████ ████████████████
22   ████████████████████████████████████████████████████
23   ████████████████████████████████████████████████████
24   ████████████████████████████████████████████████████
25   ████████████████████████████████████████████████████
26   ████████████████████████████████████████████████████
27   ██████████████████████████████████████



Not only was this testimony uniform from witnesses from other CRT makers, including those that admit taking part in the conspiracy, but Plaintiffs' own experts similarly agree that none of the Hitachi Parties attended the Glass Meetings that were the centerpiece of the CRT conspiracy.



\*   \*   \*

In sum, the extensive factual record in this case does not contain the testimony of a single witness that supports, or a single document that evidences, that any of the Hitachi Parties participated in the alleged CRT cartel.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Motus v. Pfizer Inc.*, 196 F. Supp. 2d 984, 989-90 (C.D. Cal. 2001) ("*Motus I*"), aff'd sub nom. *Motus v. Pfizer Inc. (Roerig Div.)*, 358 F.3d 659 (9th Cir. 2004). Where, as here, the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, "[t]he burden then shifts to

1    the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."

2    *Motus I* at 990 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

3         To avoid summary judgment, the non-moving party (Plaintiffs here) must identify *facts*

4    showing that a genuine issue for trial exists. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th

5    Cir. 2010) (citing *Celotex*, 477 U.S. at 323).  The non-moving party may not rely on the pleadings or

6    bare allegations but must come forward with admissible *evidence*—affidavits, depositions, answers

7    to interrogatories, or admissions—from which a jury could reasonably render a verdict in its favor.

8    *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  "The nonmoving party must

9    show more than the mere existence of a scintilla of evidence" or "some 'metaphysical doubt' as to

10   the material facts at issue." *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

11   U.S. 574, 586 (1986)).

12        When a party who will bear the burden of proof at trial fails, after adequate time for

13   discovery, to make a showing sufficient to establish the existence of an element essential to its case,

14   "the plain language of Rule 56(c) mandates the entry of summary judgment . . . ." *Parth v. Pomona*

15   *Valley Hosp. Med. Ctr.*, 630 F.3d 794, 798-99 (9th Cir. 2010) (quoting *Celotex*, 477 U.S. at 322).

16   "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure

17   of proof concerning an essential element of the nonmoving party's case necessarily renders all other

18   facts immaterial." *Celotex*, 477 U.S. at 322-23 (citation omitted).

19        A Section One Sherman Act claim requires three elements: an (1) agreement, combination,

20   or conspiracy; (2) the agreement unreasonably restrained trade, and (3) the restraint affected

21   interstate commerce.  *See Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1062 (9th Cir. 2001).  "[T]here

22   can be no liability under § 1 in the absence of agreement." *Fisher v. City of Berkeley, Cal.*, 475 U.S.

23   260, 266 (1986).  Courts must be especially vigilant about finding inferences of agreement where a

24   conspiracy among competing businesses is alleged, because "antitrust laws were not meant to

25   prohibit businessmen from adopting sound business policies merely because competitors had already

26   adopted the same or a similar policy." *Indep. Iron Works, Inc. v. U.S. Steel Corp.*, 177 F. Supp. 743,

27   747 (N.D. Cal. 1959) *aff'd*, 322 F.2d 656 (9th Cir. 1963); *see also In re Citric Acid Litig*, 191 F.3d

28   1090, 1094 (9th Cir. 1999).

1    What constitutes a reasonable inference in the context of an antitrust conspiracy case is

2    unique in that "antitrust law limits the range of permissible inferences from ambiguous evidence in a

3    § 1 case." *Matsushita*, 475 U.S. at 597.   As the Supreme Court has held, "conduct [that is]

4    consistent with permissible competition as with illegal conspiracy does not, standing alone, support

5    an inference of antitrust conspiracy." *Id.* (citing *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S.

6    752, 764 (1984)).   Thus, to withstand a motion for summary judgment "a plaintiff seeking damages

7    for a violation of § 1 must present evidence that 'tends to exclude the possibility' that the alleged

8    competitors acted independently." *Id.*   Regardless of its purpose or effect on competition,

9    independent action by a single entity is not proscribed by Section 1 of the Sherman Act. *Monsanto*,

10   465 U.S. at 761.  Proof of concerted action—that is, proof of "a conscious commitment to a common

11   scheme designed to achieve an unlawful objective"—is therefore essential to any Section 1 claim.

12   *Id.* at 768.

13                                         **ARGUMENT**

14   **I.     THERE IS NO DIRECT EVIDENCE THAT ANY OF THE HITACHI PARTIES
             PARTICIPATED IN THE CRT CONSPIRACY.**

15

16   Despite over 250 depositions and the production of over 5 million pages of documents in

17   discovery, and despite the confessions of, and cooperation from, admitted members of the alleged

18   CRT cartel, there is no direct evidence that any of the Hitachi Parties participated in the alleged CRT

19   conspiracy.  The law is well-settled that direct evidence is "evidence that is explicit and requires no

20   inferences to establish the proposition or conclusion being asserted." *Cnty. of Tuolumne v. Sonora*

21   *Cnty. Hosp.*, 236 F.3d 1148, 1155 (9th Cir 2001) (internal quotation marks omitted).  Here, all the

22   direct evidence in the record *refutes* the hypothesis that the Hitachi Parties engaged in the alleged

23   CRT conspiracy.  Current and former Hitachi executives and employees of the Hitachi Parties have

24   testified based on their own firsthand knowledge that neither they, nor the Hitachi companies they

25   worked for participated in any agreement to fix the prices of CRTs.  *See supra* Statement of

26   Undisputed Facts ("SOF") Part I.

27   The testimony of other defendants, including admitted participants in the CRT cartel was

28   similar.  Not a single one of any of the employees of any of the defendants testified that any

1   employee of a Hitachi Party was present at any of the Glass Meetings that formed the cornerstone of

2   the alleged CRT conspiracy. *See supra*, SOF Part III.  In fact, numerous of these witnesses testified

3   unequivocally that Hitachi did *not* attend any of those meetings. *See id.*  Further, there is no other

4   direct evidence, such as recordings of meetings, admissions of witnesses, or journals of price-fixing

5   activity, that even suggests, let alone establishes, that any of the Hitachi Parties was a part of the

6   alleged CRT cartel. *See id.*

7          Accordingly, Plaintiffs' claims of direct evidence of conspiracy fail with respect to the

8   Hitachi Parties.

9   **II.    THERE IS NO CIRCUMSTANTIAL EVIDENCE THAT "TENDS TO EXCLUDE**
    **THE POSSIBILITY" OF NON-CONSPIRATORIAL CONDUCT BY THE HITACHI**
10  **PARTIES.**

11         As set forth above, Plaintiffs' evidence of conspiracy with respect to all three of the Hitachi

12  Parties is entirely lacking.  To the extent that Plaintiffs will attempt to point to any evidence at all, it

13  can only be circumstantial, at best.  In order to survive summary judgment, courts in this Circuit

14  require plaintiffs to provide "specific evidence tending to show that the defendant was not engaging

15  in permissible competitive behavior." *Citric Acid*, 191 F.3d at 1094-1095.  This framework applies

16  "whenever the plaintiff cannot establish every element of its case without asking the court to draw an

17  inference in his favor." *Id.*

18         In a multi-defendant case, plaintiffs must prove participation in the conspiracy by each

19  individual defendant.  *Esco Corp. v. United States*, 340 F.2d 1000, 1009 (9th Cir. 1965) (A

20  defendant's "participation must be proved by evidence relating to its participation"); *see also*

21  *AD/SAT, A Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999) (proving

22  conspiracy "require[s] a factual showing that *each defendant* conspired in violation of the antitrust

23  laws") (emphasis added).  "The scope of each defendant's participation in [the unlawful] agreement,

24  if any, *must be determined individually* from the evidence proved *as to that defendant*." *Eliason*

25  *Corp. v. Nat'l Sanitation Found.*, 485 F. Supp. 1062, 1075 (E.D. Mich. 1977) *aff'd*, 614 F.2d 126

26  (6th Cir. 1980) (emphasis added).  Moreover, to survive summary judgment with respect to a

27  particular defendant's motion for summary judgment, plaintiffs must demonstrate by admissible

28  evidence that that specific defendant had knowledge of the conspiracy and took some overt acts in

1   support of the conspiracy.  *See In re Vitamins Antitrust Litig.*, 320 F. Supp. 2d 1, 15 (D.D.C. 2004)

2   ("In order to establish the requisite knowledge of the conspiracy, Plaintiffs must prove that *each*

3   *defendant* was united in a common unlawful goal or purpose, or knew of the conspiracy's general

4   scope and purpose.") (emphasis added);  *Harlem River Consumers Co-op., Inc. v. Associated*

5   *Grocers of Harlem, Inc.*, 408 F. Supp. 1251, 1269 (S.D.N.Y. 1976) ("In analyzing [a] mass of

6   circumstantial evidence" of conspiracy one finding that should be evaluated is "the consistency of

7   the *overt acts of each defendant* with acts of the others) (emphasis added).

8        This requirement is no different where, as here, corporate affiliates are alleged to have taken

9   part in a conspiracy.  The burden of coming forward with evidence demonstrating the "conscious

10  commitment" to an unlawful scheme applies to each parent, subsidiary or corporate affiliate.

11  *Lithium Ion Batteries*, 2014 WL 309192 at *13 ("Nothing in either complaint suggests that the

12  defendant subsidiaries consciously agreed to participate in, or could be charged with knowledge of,

13  an alleged price-fixing conspiracy conceived and undertaken in Korea and Japan").  That there may

14  be circumstantial evidence suggesting a parent corporation's or affiliate's participation in a cartel in

15  no way relieves plaintiffs from the burden of proving the requisite knowledge, intent and

16  participation in the conspiracy by a particular corporate subsidiary.  *Id.* at 15 (Plaintiffs must

17  "demonstrate that the American subsidiaries *themselves* made a conscious decision to conspire with

18  their Korean or Japanese parents.").

19        Plaintiffs' case against the Hitachi Parties here rests solely on circumstantial evidence—and

20  scarcely any of that.  They may not avoid summary judgment with respect to these corporate

21  affiliates and subsidiaries—the Hitachi Parties here—by relying on purported circumstantial

22  evidence of participation in a conspiracy by any parent corporation or corporate affiliate.  Viewed

23  critically, Plaintiffs' claims against the Hitachi Parties here reveal themselves for what they truly

24  are—allegations, speculation and innuendo, and nothing more.

25  **A.      Bare Allegations of Information-Sharing at Trade Association or Other**
26          **Meetings Are Not Evidence of Conspiracy.**

27        Plaintiffs allege generically that the CRT cartel's activities were "furthered by trade

28  associations and trade events that provided opportunities to conspire and share information."  FAC ¶

192.   They cite, for instance, the "Korea Display Conference" as an organization whose meetings a representative of "Hitachi" attended and allege "on information and belief" that at such meetings "Defendants shared what would normally be considered proprietary and competitively sensitive information . . . which was used to implement and monitor the conspiracy." *Id.* ¶¶ 194, 196.  They, however, have not—and cannot—identify any employee of any of the Hitachi Parties who attended these or any other meetings or any specific "competitively sensitive" information that they shared.

Conclusory allegations such as these are no more than speculation that defendants had an "opportunity" to conspire.  The law is well-settled that mere evidence of an *opportunity* to collude is insufficient "to sustain an antitrust plaintiff's burden, and, without more, does not create a jury question on the issue of concerted action." *In re Linerboard Antitrust Litig.*, 504  F. Supp. 2d 38, 53 (*quoting Fragale & Sons Beverage Co. v. Dill*, 760 F.2d 469, 473 (3d Cir. 1985)).   Rather, participation in trade associations is a common and legitimate activity that, standing alone, cannot raise any inference of conspiracy.  "As the Supreme Court has recognized, . . . trade associations often serve legitimate functions, such as providing information to industry members, conducting research to further the goals of the industry, and promoting demand for products and services." *Citric Acid*, 191 F.3d at 1098.

Similarly, sporadic communications among employees of competitors—for both social and business purposes—are found in every industry, are not necessarily anticompetitive, and therefore, are themselves not probative of conspiracy. *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 133 (3d Cir. 1999) (finding that "evidence of social contacts and telephone calls among representatives of the defendants was insufficient to exclude the possibility that the defendants acted independently").   "[C]ommunications between competitors do not permit an inference of an agreement to fix prices unless 'those communications rise to the level of an agreement, tacit or otherwise.'" *Id.* at 126.  Here, there is no evidence that the trade association activities of any of the Hitachi Parties were in furtherance of the CRT cartel.  Nor is there any evidence that any competitor communications the Hitachi Parties engaged in "rose to the level of an agreement." *Id.* [5]

---

[5]   Plaintiffs make much of the fact that there were a number of government investigations and indictments relating to the CRT cartel (*see, e.g.,* FAC ¶¶ 8, 172-183), but conveniently ignore the fact, however, that *no* Hitachi company

**B.      The Hitachi Parties' Limited Participation in the CRT Market Belies Any Conspiratorial Inference Against Them.**

Moreover, Plaintiffs' claim that these companies—the Hitachi Parties—participated in the "long-running conspiracy extending at a minimum from at least March 1, 1995, through at least November 25, 2007" simply fails as a matter of common sense, given their very limited production and sales of CRTs during the alleged conspiracy period.  FAC ¶ 1.  ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

And HDP never manufactured or sold "CDT tubes or CPT tubes" at all.  Ex. 1, Kawamura Decl. ¶ 3;

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

was indicted or prosecuted in any of these investigations and *no* allegations of unlawful behavior in the CRT markets have ever been lodged against any of the Hitachi Parties or any of their employees in all these years. Regardless, none of the facts concerning these investigations of other companies in the CRT industry amounts to "admissible evidence" as is required to avoid summary judgment.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 368, 387 (9th Cir. 2010) (non-moving party must come forward with admissible evidence); *see also Bisaccia v. Attorney Gen. of State of N. J.*, 623 F.2d 307, 312 (3d Cir. 1980) ("conviction of an alleged fellow conspirator after a trial is not admissible against one now being charged"); *Mag Instrument, Inc. v. Dollar Tree Stores Inc.*, No. CV 03-6215 RSWL SHX, 2005 WL 5957825, at *1 (C.D. Cal. Apr. 14, 2005) (reference to government investigation is inadmissible where the introducing party could not show that the other party "actually participated in any of the acts that resulted in the conviction").

1     █████████     Accordingly, Plaintiffs' insistence on including the Hitachi Parties as defendants

2 here is unjustified and simply defies common sense.

3

4 **CONCLUSION**

5         Plaintiffs have failed to come forward with any direct or circumstantial evidence that tends to

6 prove that any of the Hitachi Parties participated in the CRT conspiracy, and certainly no evidence

7 that "tends to exclude" that these companies were operating non-conspiratorially and in their own

8 interests.  Indeed, all the evidence adduced in the massive fact record in this case is to the contrary.

9 For these reasons, and the reasons set forth above, the Hitachi Parties respectfully request that the

10 Court grant summary judgment in their favor.

11

12 DATED: November 7, 2014           By: */s/ Eliot A. Adelson*

13                                 Eliot A. Adelson

14                                 James Maxwell Cooper
                                KIRKLAND & ELLIS LLP

15                                 555 California Street, 27th Floor
                                San Francisco, CA  94104

16                                 Telephone: (415) 439-1400
                                Facsimile: (415) 439-1500

17                                 Email: eadelson@kirkland.com
                                Email: max.cooper@kirkland.com

18                                 Attorneys for Defendants

19                                 HITACHI DISPLAYS, LTD. (n/k/a JAPAN
                                DISPLAY INC.), HITACHI AMERICA,

20                                 LTD., AND HITACHI ELECTRONIC
                                DEVICES (USA), INC.

21

22

23

24

25

26

27

28