| | | |
|---|---|---|
| 1 | Kathy L. Osborn (*pro hac vice*) | Stephen M. Judge (*pro hac vice*) |
| 2 | Ryan M. Hurley (*pro hac vice*)<br>Faegre Baker Daniels LLP | FAEGRE BAKER DANIELS LLP<br>202 S. Michigan Street, Suite 1400 |
| 3 | 300 N. Meridian Street, Suite 2700<br>Indianapolis, IN  46204 | South Bend, IN  46601<br>Telephone: +1 574-234-4149 |
| 4 | Telephone: +1-317-237-0300<br>Facsimile: +1-317-237-1000 | Facsimile:  +1 574-239-1900<br>steve.judge@FaegreBd.com |
| 5 | kathy.osborn@FaegreBD.com<br>ryan.hurley@FaegreBD.com | |
| 6 | Jeffrey S. Roberts (*pro hac vice*) | Calvin L. Litsey (SBN 289659) |
| 7 | Faegre Baker Daniels LLP<br>3200 Wells Fargo Center | Faegre Baker Daniels LLP<br>1950 University Avenue, Suite 450 |
| 8 | 1700 Lincoln Street<br>Denver, CO  80203 | East Palo Alto, CA  94303-2279<br>Telephone: +1-650-324-6700 |
| 9 | Telephone: +1-303-607-3500<br>Facsimile:  +1-303-607-3600 | Facsimile: +1-650-324-6701<br>calvin.litsey@FaegreBD.com |
| 10 | jeff.roberts@FaegreBD.com | |
| 11 | ***Attorneys for Defendant Thomson Consumer Electronics, Inc.*** | |

| | |
|---|---|
| 12 | **UNITED STATES DISTRICT COURT** |
| 13 | **NORTHERN DISTRICT OF CALIFORNIA** |
| 14 | **SAN FRANCISCO DIVISION** |

| | | |
|---|---|---|
| 15 | IN RE CATHODE RAY TUBE (CRT)<br>ANTITRUST LITIGATION, | No. 07-cv-5944-SC<br>MDL No. 1917 |
| 16 | | |
| 17 | This Document Relates to: | **THOMSON CONSUMER'S NOTICE OF** |
| 18 | *Sharp Electronics Corp., et al. v. Hitachi,* | **MOTION AND MOTION FOR<br>SUMMARY JUDGMENT AND PARTIAL** |
| 19 | *Ltd., et. al., No. 13-cv-01173* | **SUMMARY JUDGMENT** |
| 20 | *Electrograph Systems, Inc. et al. v.<br>Technicolor SA, et al., No. 13-cv-05724;* | Date:  February 6, 2015<br>Time:  10:00 a.m. |
| 21 | *Alfred H. Siegel, as Trustee of the Circuit* | Place:  Courtroom 1, 17th Floor<br>Judge: Hon. Samuel Conti |
| 22 | *City Stores, Inc. Liquidating Trust v.<br>Technicolor SA, et al., No. 13-cv-00141;* | |
| 23 | | |
| 24 | *Best Buy Co., Inc., et al. v. Technicolor SA,<br>et al., No. 13-cv-05264;* | |
| 25 | | |
| 26 | *Interbond Corporation of America v.<br>Technicolor SA, et al., No. 13-cv-05727;* | |
| 27 | *Office Depot, Inc. v. Technicolor SA, et al.,* | |
| 28 | *No. 13-cv-05726;* | |

1   *Costco Wholesale Corporation v.*
2   *Technicolor SA, et al., No. 13-cv-05723;*

3   *P.C. Richard & Son Long Island*
    *Corporation, et al. v. Technicolor SA, et al.,*
4   *No. 31:cv-05725;*

5   *Schultze Agency Services, LLC, o/b/o*
    *Tweeter Opco, LLC, et al. v. Technicolor SA,*
6   *Ltd., et al., No. 13-cv-05668;*

7   *Sears, Roebuck and Co. and Kmart Corp. v.*
8   *Technicolor SA, No. 3:13-cv-05262;*

9   *Target Corp. v. Technicolor SA, et al., No.*
    *13-cv-05686;*
10
    *Tech Data Corp., et al. v. Hitachi, Ltd., et*
11  *al., No. 13-cv-00157*

12  *ViewSonic Corporation, v. Chunghwa*
    *Picture Tubes, Ltd., et al., 3:14cv-02510;*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THOMSON CONSUMER'S MOTION FOR                    No. 07-5944-SC; MDL No. 1917
SUMMARY JUDGMENT

1    **<u>NOTICE OF MOTION AND MOTION TO DISMISS</u>**

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3        PLEASE TAKE NOTICE that on February 6, 2015 at 10:00 a.m. or as soon thereafter as

4    this matter may be heard before the Honorable Samuel P. Conti, U.S. District Court Judge, U.S.

5    District Court for the Northern District of California, Courtroom No. 1, 17th Floor, 450 Golden

6    Gate Avenue, San Francisco, California 94102, the moving Defendant listed on the signature

7    page below will and hereby does move this Court, in accord with Federal Rule of Civil Procedure

8    56, for an Order granting summary judgment to the moving Defendant on the following claims

9    for relief:

10       1.    Electrograph's First and Fourth Claims for Relief;

11       2.    Tech Data's First Claim for Relief; and

12       3.    ViewSonic's First Claim for Relief.

13   In addition, the moving Defendant will and hereby does move this Court, for an Order granting

14   partial summary judgment to the moving Defendant on the following claims for relief:

15       4.    Best Buy's First Claim for Relief;

16       5.    Circuit City's First Claim for Relief;

17       6.    Costco's First Claim for Relief;

18       7.    Interbond's First Claim for Relief;

19       8.    Office Depot's First Claim for Relief;

20       9.    P.C. Richard, Marta, and ABC Appliance's First and Second Claims for Relief;

21       10.    Sears and Kmart's First and Second Claims for Relief;

22       11.    Sharp's First Claim for Relief;

23       12.    Target's First Claim for Relief; and

24       13.    Tweeter's First Claim for Relief.

25       This Motion is based on this Notice of Motion and Motion, the accompanying

26   Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on

27   file with the Court, and such arguments and authorities as may be presented at or before the

28   hearing.

**TABLE OF CONTENTS**

I.    MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

II.   ISSUES TO BE DECIDED ............................................................. 1

III.  INTRODUCTION ....................................................................... 1

IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS.............................. 3

V.    LEGAL STANDARDS................................................................... 8

VI.   ARGUMENT ............................................................................ 10

      A.    DAPs Must Present Specific Evidence Establishing that Thomson
            Consumer Knowingly Participated in a Conspiracy Involving CDTs. ............... 10

      B.    There Is No Evidence That Thomson Consumer Knowingly Participated In
            the Alleged CDT Conspiracy. ................................................. 16

      C.    Thomson Consumer is not Improperly Dismembering the Alleged
            Conspiracy. ..................................................................... 18

CONCLUSION ................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Altman v. Bayer Corp.*,
125 F.Supp.2d 666 (S.D.N.Y. 2000)......................................................................... 14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................... 8

*Beltz Travel Service, Inc. v. Int'l Air Trans. Assoc.*,
620 F.2d 1360 (9th Cir. 1980) ....................................................................... 18, 19, 20

*Bologna v. Allstate Insurance Co.*,
138 F.Supp.2d 310 (E.D.N.Y. 2001) ...................................................................... 14

*Continental Ore Co. v. Union Carbide & Corp.*,
370 U.S. 690 (1962) ....................................................................................... 18, 19, 20

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999) ................................................................................. 9

*In re TFT Antitrust Litigation*,
No. 07-cv-1827 (N.D. Cal. Sept. 4, 2014), 2014 U.S. Dist. LEXIS 124319 ...................... 8, 9

*In re Vitamins Antitrust Litig.*,
320 F.Supp.2d 1 (D.D.C. 2004) .....................................................................Passim

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)............................................................................................ 9, 19

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
608 F.Supp. 2d 1166 (N.D. Cal. 2009)....................................................................... 9

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
809 F.2d 626 (9th Cir. 1987) ........................................................................... 8, 9, 19

*United States v. Durades*,
607 F.2d 818 (9th Cir. 1979) .......................................................................Passim

*United States v. Duran*,
189 F.3d 1071 (9th Cir. 1999) ......................................................................Passim

*United States v. Portela*,
167 F.3d 687 (1st Cir. 1999) ................................................................................. 12

**STATE CASES**

*People v. Kaatsiz,*
595 N.Y.S.2d 648 (1992).................................................................................. 15

*People v. Leisner,*
73 N.Y.2d 140 (1989)....................................................................... 14, 15, 16

*People v. Ruiz,*
496 N.Y.S.2d 612 (1985).................................................................................. 14

*X.L.O. Concrete Corp. v. Rivergate Corp.,*
83 N.Y.2d 513 (1994)........................................................................................ 14

**STATE STATUTES**

New York General Business Law § 340 (the "Donnelly Act")................................... 14

**RULES**

Fed. R. Civ. P. 56................................................................................................... 1

Fed. R. Civ. P. 56(a) ............................................................................................. 8

Rule 56(c) ............................................................................................................ 20

## I.    MEMORANDUM OF POINTS AND AUTHORITIES

In accordance with Fed. R. Civ. P. 56 Thomson Consumer Electronics, Inc. ("Thomson Consumer") respectfully moves for summary judgment on the Direct Action Plaintiffs' ("DAPs'") claims that it violated Section 1 of the Sherman Act and New York's Donnelly Act by knowingly participating in a conspiracy to fix the price of Cathode Display Tubes ("CDTs").

## II.    ISSUES TO BE DECIDED

Whether summary judgment summary judgment and partial summary judgment should be entered on DAPs' claims against Thomson Consumer under Section 1 of the Sherman Act and New York's Donnelly Act because there is no evidence that Thomson Consumer had knowledge of and participated in a conspiracy to fix the price of CDTs?

## III.    INTRODUCTION

Headquartered in Indianapolis, Indiana, Thomson Consumer was a television and cathode picture tube ("CPT") manufacturer that stopped manufacturing and selling televisions in 2004 and CPTs in 2005.  Critically, it is undisputed and all DAPs have admitted, that from March 1995 to November 2007 ("Relevant Period") Thomson Consumer never manufactured CDTs or products containing CDTs such as computer monitors.  (*See infra*, Statement of Facts at ¶12.)  In short, Thomson Consumer made televisions and other components used to manufacture televisions, but it never manufactured computer monitors or the CDTs used to make them.

In spite of this, in 2013, six years after these actions began, DAPs filed claims against Thomson Consumer alleging that it knowingly participated in a single, vast, global conspiracy to fix the price of all CDTs and CPTs sold in the world during the Relevant Period.  DAPs' claims against Thomson Consumer are based solely on their allegations that Thomson Consumer exchanged competitively sensitive information regarding CPTs with other CPT manufacturers.[1] There is no evidence that Thomson Consumer knew of, let alone participated in, the alleged CDT cartel or the so-called "glass meetings" in Asia where the CDT cartel was allegedly effectuated.  According to DAPs, however, the CDT cartel that was organized and operated in

---

[1] Although Thomson Consumer vigorously denies that it knowingly participated in a conspiracy to fix the price of CPTs, it does not seek summary judgment on that issue.

Asia and the information exchanges in the United States regarding CPTs in which Thomson Consumer allegedly participated were part of a single, overarching conspiracy to fix the price of all CDTs and CPTs sold in the world during the Relevant Period, so Thomson Consumer is liable for CDT-related damages caused by this conspiracy.  Indeed, DAPs such as Electrograph, Tech Data, and ViewSonic, whose claims are based *solely* on their alleged purchases of CDTs or computer monitors, seek to recover hundreds of millions of dollars from Thomson Consumer even though: (1) Thomson Consumer never manufactured or sold CDTs or computer monitors and (2) they can present no evidence establishing that Thomson Consumer knew of or participated in anticompetitive conduct regarding CDTs or computer monitors.[2]

DAPs' unsubstantiated claims that Thomson Consumer participated in a CDT conspiracy cannot survive summary judgment.  To establish a disputed issue of fact about whether Thomson Consumer participated in a single, overarching conspiracy to fix the prices of both CDTs and CPTs DAPs must present evidence establishing that Thomson Consumer: (1) had knowledge of the alleged CDT conspiracy; (2) intended to join the alleged CDT conspiracy; and (3) believed that the success of the CPT conspiracy in which it allegedly participated was dependent upon the success of the other defendants' alleged CDT cartel.  *See United States v. Duran*, 189 F.3d 1071, 1081 (9th Cir. 1999); *United States v. Durades*, 607 F.2d 818, 819-20 (9th Cir. 1979); *see also In re Vitamins Antitrust Litig.,* 320 F.Supp.2d 1, 19-20 (D.D.C. 2004) (granting summary judgment where plaintiffs failed to present evidence establishing that defendant knowingly participated in portion of alleged global, multi-product antitrust conspiracy regarding products defendant did not sell or manufacture).  The DAPs have failed to adduce evidence that satisfies these elements.  Accordingly, there is no genuine dispute of material fact that Thomson Consumer did not knowingly participate in a conspiracy to fix the price of CDTs and it is entitled to summary

---

[2] Electrograph, Tech Data, and ViewSonic only seek damages based on their purchases of CDTs or products containing CDTs.  Accordingly, Thomson Consumer is entitled to summary judgment disposing of their claims in their entirety.  Because the remaining DAPs seek damages based, at least in part, on their purchases of CPTs or products containing CPTs, Thomson Consumer is entitled to partial summary judgment on these DAPs' claims to the extent these DAPs seek to recover damages related to their purchase of CDTs or products containing CDTs.

judgment on DAPs' claims that it participated in a single, overarching conspiracy involving both CDTs and CPTs.

## IV.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    A Cathode Ray Tube ("CRT") is a funnel-shaped glass device that translates electronic video signals into visual images. **Ex. 1**, 1995 ITC Report, at 1.

2.    There are at least two different general types of CRTs – CDTs and CPTs.  *Id*. at 1; ViewSonic Complaint, Case No. 3:14cv-02510 [Dkt. 1] at ¶ 80.

3.                                    REDACTED


ViewSonic Compl. at ¶ 80; **Ex. 2**, Tobinaga Depo. at 142:19-143:23; **Ex. 3**, C.C. Liu Depo. at 29:2-8.

4.    CPTs are used primarily in televisions and produce a brighter image than CDTs because the images displayed on a television are typically moving pictures viewed from a distance.  *See* **Ex. 4**, SDCRT-0021279 at 88.

5.                                    REDACTED

        **Ex.  5**, Elzinga  Depo.  at  256:12-15        REDACTED



6.                                    REDACTED

                                    **Ex. 2**, Tobinaga Depo. at 142:19-145:15.

7.                                    REDACTED

                        *Id*.

8.                                    REDACTED

                *Id*.

9.                                    REDACTED

            *Id.*

10.                                    REDACTED

                                **Ex. 3**, C.C. Liu Depo. at 502:14-17.

11.                                        REDACTED

*See* **Ex. 6**, SDCRT-0201291.

12.     During the Relevant Period Thomson Consumer never manufactured or sold CDTs.  *See* **Ex. 7**, Best Buy's Obj. and Resp. to Thomson Defendants' First Set of Requests for Admission ("RFAs"); **Ex. 8**, Circuit City's Obj. and Resp. to Thomson Defendants' First Set of RFAs; **Ex. 9**, Costco's Obj. and Resp. to Thomson Defendants' First Set of RFAs at 7; **Ex. 10**, Electrograph's Obj. and Resp. to Thomson Defendants' First Set of RFAs at 7; **Ex. 11**, Interbond's Obj. and Resp. to Thomson Defendants' First Set of RFAs at 7; **Ex. 12**, Office Depot's Obj. and Resp. to Thomson Defendants' First Set of RFAs at 7; **Ex. 13**, P.C. Richards, MARTA, and ABC Appliance's Obj. and Resp. to Thomson Defendants' First Set of RFAs at 7; **Ex. 14**, Sears and Kmart's Obj. and Resp. to Thomson Defendants' First Set of RFAs at 10; **Ex. 15**, Sharp's Obj. and Resp. to Thomson Defendants' First Set of RFAs at 6; **Ex. 16**, Target's Obj. and Resp. to Thomson Defendants' First Set of RFAs at 7; **Ex. 17**, Tech Data's Obj. and Resp. to Thomson Defendants' First Set of RFAs at 7; **Ex. 18**, Tweeter's Obj. and Resp. to Thomson Defendants' First Set of RFAs at 7; **Ex. 19**, ViewSonic's Obj. and Resp. to Thomson Defendants' First Set of RFAs at 6-9.

13.     During the Relevant Period, Thomson Consumer did not manufacture or sell products containing CDTs.  *Id.*

14.     During the Relevant Period, Thomson Consumer's parent company, Thomson SA, never manufactured or sold CDTs.  *Id.*

15.     During the Relevant Period, Thomson SA never manufactured or sold products containing CDTs.  *Id.*

16.     Thomson Consumer did not own or operate CRT manufacturing facilities in Asia during the Relevant Period.  Instead, it only manufactured CPTs at facilities in the United States and Mexico.  *See* **Ex. 20**, Brunk Depo. at 87:12-23.

17.     DAPs claim that the alleged all-CRT conspiracy began in 1995 when "representatives from Daewoo and Hitachi and Defendants LG Electronics and Samsung visited the other Defendant manufacturers, including Philips, Chunghwa, Thai CRT, Toshiba and Panasonic, to

discuss increasing prices for CRTs in general and to specific customers.  These meetings took place in Taiwan, South Korea, Thailand, Japan, Malaysia, Indonesia and Singapore." ViewSonic Compl. at ¶ 106.

18.      DAPs allege that "in 1997, Defendants began to meet in a more organized, systematic fashion, and a formal system of multilateral and bilateral meetings was put in place."  *Id*. at ¶ 108.

19.      DAPs allege that these "group meetings among the participants in the CRT price-fixing conspiracy were referred to as 'glass meetings' or 'GSM.'"  *Id*. at ¶ 108.

20.      DAPs allege that the CRT manufacturing companies that participated in these glass meetings formed agreements to fix the price of CPTs and/or CDTs.  *Id*. at ¶ 123.

21.                                   REDACTED




                                           **Ex. 3**, C.C. Liu Depo. at 20:13-21:15; 49:1-15; 367:17-25.

22.                                   REDACTED


                          **Ex. 3**, C.C. Liu Depo. at 49:19-50:22.

23.                                   REDACTED


                              *See  e.g.*  **Ex.  21E**,   CHU00030816E-00030818E

                          REDACTED

           **Ex. 22E**, CHU00031006E-00031009E                REDACTED

                                                                           **Ex.  23E,**

CHU00031150E-00031152E                REDACTED


24.                                   REDACTED

1     REDACTED

2     *See  e.g.,*  **Ex. 24E**, CHU00029235E-00029237E          REDACTED

3                                                              **Ex. 25E**, CHU000029144E-

4     CHU00029146E                        REDACTED

5                                              **Ex. 26E**,  CHU00029108E-00029109E

6                          REDACTED

7          **Ex. 27E**, CHU00036410E-CHU00036411E          REDACTED

8                                                                              **Ex.**

9     **28E**,  CHU00036392E-00036393E              REDACTED

10

11    25.     There is no evidence that anyone employed by Thomson Consumer had knowledge of the

12    CPT or CDT Asian Glass Meetings. *See supra*, Statement of Facts ¶¶ 23-24.

13    26.                          REDACTED

14

15                                    *See e.g,* **Ex. 24E**   REDACTED

16                                              **Ex. 25E** REDACTED

17

18                                                          **Ex. 26E**

19                          REDACTED

20                                                          **Ex. 27E**

21          REDACTED                        **Ex. 28E** REDACTE
                                                              D

22

23

24

25

26    27.                          REDACTED

27

28

REDACTED

**Ex. 3**, Liu Depo. at 545:12-546:9.

28.                                                REDACTED

R
E
D
A
C
T
E

**Ex**. **29**, S.J. Yang Depo. at 462:22-463:22; *see also id*. at 288:7-10          REDACTED

### V.     LEGAL STANDARDS

Summary judgment is properly granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The defendant moving for summary judgment in an antitrust case under § 1 bears the initial burden of demonstrating the absence of a genuine issue of material fact with regard to its participation in the conspiracy alleged.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 632 (9th Cir. 1987).  "The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden at trial.  The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case."  *In re TFT Antitrust Litigation*, No. 07-cv-1827 (N.D. Cal. Sept. 4, 2014), 2014 U.S. Dist. LEXIS 124319 *69 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial."  *T.W. Elec. Serv.,* 809 F.2d 630.  The "nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment."  *Id*.  In addition, the "mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).  In other words, the nonmoving party must produce "significant probative evidence tending to support the complaint."  *T.W. Elec. Serv.,* 809 F.2d at 630 (internal quotation omitted).

A defendant's participation in an antitrust conspiracy may be established by direct or circumstantial evidence.  "Direct evidence in a Section 1 conspiracy must be evidence that is

explicit and requires no inferences to establish the proposition or conclusion being asserted." *In re Citric Acid Litig.,* 191 F.3d 1090, 1094 (9th Cir. 1999) (internal citation omitted). "Where there is no direct evidence of a conspiracy, the defendant may discharge its summary judgment burden by proffering a plausible and justifiable alternative interpretation of its conduct that rebuts the plaintiff's allegation of conspiracy." *T.W. Elec. Serv.,* 809 F.2d at 632 (internal quotation omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (conduct that is as consistent with lawful, independent action as illegal conspiracy "does not, standing alone, support an inference of antitrust conspiracy.") The burden then shifts to plaintiff to "produce evidence tending to exclude the possibility that defendants acted independently." *In re Citric Acid Litig.,* 191 F.3d at 1094-96.

Moreover, "a corporate entity's actions cannot be imputed to another corporate entity." *Sun Microsystems Inc. v. Hynix Semiconductor Inc.,* 608 F.Supp. 2d 1166, 1193-94 (N.D. Cal. 2009). Thus, to survive summary judgment a plaintiff must present evidence establishing the specific moving defendant's participation in the alleged conspiracy and may not rely on "undifferentiated" evidence regarding related corporations that does not allow the court to "fully evaluate the strength of the evidence as to any particular entity." *Id.* (granting summary judgment where despite having sued three different Mitsubishi entities, plaintiff failed to "credit any of the evidence . . . to any particular entity" and instead relied generally on evidence regarding "Mitsubishi"); *In re TFT Antitrust Litigation*, No. 07-cv-1827 (N.D. Cal. Sept. 4, 2014), 2014 U.S. Dist. LEXIS 124319 *74 (granting summary judgment because "plaintiffs make no distinction between the two IBM entities it alleges engaged in the conspiratorial activity, referring to them both interchangeably as 'IBM.' . . . . Lacking information regarding what each alleged conspirator is alleged to have done, the court cannot evaluate whether either IBM Corp. or IBM Japan, Ltd. ever individually engaged in anti-competitive behavior.")

## VI.   ARGUMENT

### A.   DAPs Must Present Specific Evidence Establishing that Thomson Consumer Knowingly Participated in a Conspiracy Involving CDTs.

DAPs have admitted that Thomson Consumer did not manufacture or sell CDTs at any time during the Relevant Period. (*See supra*, Statement of Facts at ¶ 12.)   Despite this, they allege that Thomson Consumer participated in a vast global conspiracy to fix the price of all CPTs *and* CDTs sold in the world from 1995 to 2007 ("all-CRT conspiracy").   Thomson Consumer is unaware of any published Ninth Circuit legal authority in the antitrust context that sets forth the standards DAPs must satisfy to establish that Thomson Consumer participated in an all-CRT conspiracy even though Thomson Consumer never manufactured or sold CDTs. However, whether plaintiffs had adduced evidence sufficient to defeat summary judgment where they alleged that defendants participated in a single, overarching antitrust conspiracy involving multiple, separate products – some of which they did not manufacture or sell – was comprehensively analyzed in *In re Vitamins Antitrust Litigation*, 320 F.Supp.2d 1 (D.D.C. 2004).

In that case, plaintiffs claimed that numerous defendants operated a single, overarching global conspiracy to fix the price of different vitamin products including Vitamins A, B1 – B6, B9, B12, C, D, and H ("all-vitamins conspiracy").   Five of the defendants moved for summary judgment arguing that they only manufactured or sold one vitamin product during the relevant period, Vitamin B4 ("choline"), and did not sell or manufacture any other type of vitamin allegedly involved in the all-vitamins conspiracy.  *Id*. at 7-11.   Like CDTs and CPTs here, choline and the other vitamins allegedly involved in the conspiracy were not substitutes for each other and constituted separate product markets.  *Id*. at 8.   For purposes of summary judgment, the defendants did not contest their participation in a choline conspiracy and the court noted that evidence existed which showed each moving defendant did participate in anticompetitive activities regarding choline.   Instead, each defendant argued that it was entitled to summary judgment because there was no evidence linking them to an alleged conspiracy involving products other than choline. *Id*.

Relying on fundamental principles of conspiracy law, the *Vitamins* court held that to survive summary judgment on their claim that defendants participated in a single, overarching conspiracy involving products the moving defendants did not make or sell, plaintiffs had to produce evidence establishing: (1) each defendant had knowledge of an all-vitamins conspiracy; (2) each defendant intended to join an all-vitamins conspiracy; and (3) by joining the all-vitamins conspiracy, each defendant was interdependent with its other alleged co-conspirators "in that their respective benefit depended on the success of the 'all-vitamins' venture." *In re Vitamins Antitrust Litig.,* 320 F.Supp.2d at 15 (citing *United States v. Tarantino*, 846 F.2d 1384, 1392 (D.C. Cir. 1988)).   The court provided a detailed explanation of each of these three elements.

### 1.   Knowledge of a Single, Overarching Conspiracy.

To establish the requisite knowledge, the *Vitamins* court explained that plaintiffs had to prove that "each Defendant was united in a common unlawful goal or purpose, or knew of the conspiracy's general scope and purpose." *Id*. at 15.  "A single conspiracy may be established when each conspirator knows of the existence of the larger conspiracy and the necessity for other participants, even if he is ignorant of their precise identities." *Id*. (quoting *Tarantino,* 846 F.2d at 1392).

The Ninth Circuit requires the same showing.  To establish that a defendant participated in a single, overarching conspiracy involving multiple branches a plaintiff must establish that the defendant had knowledge of the full scope of the alleged overarching conspiracy. *United States v. Duran*, 189 F.3d 1071, 1081 (9th Cir. 1999) (defendants did not participate in single overarching conspiracy where "record was bereft of evidence that either [defendant] . . . was aware of the conspiracy in which he did not participate."); *United States v. Durades*, 607 F.2d 818, 819-20 (9th Cir. 1979) (defendant did not participate in single, overarching conspiracy where there was no evidence that he was ever made aware of prior conspiracy involving co-defendant).

### 2.      Intent to Join the Single, Overarching Conspiracy.

The *Vitamins* court explained that "[k]nowledge alone is not sufficient to prove that any particular Defendant intended to join the all-vitamins conspiracy." *In re Vitamins Antitrust Litig.,* 320 F.Supp.2d at 16 (citing *United States v. Townsend*, 924 F.2d 1385, 1391 (7th Cir. 1991)). Instead, the "Supreme Court has explained that a party progresses from mere knowledge of a conspiracy to intent to join it when there is 'informed and interested cooperation, stimulation, instigation. And there is also a 'stake in the venture' which, even if it may not be essential, is not irrelevant to the question of conspiracy.'" *Id.* (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 713 (1943)). In other words, to establish that a defendant participated in a single, overarching conspiracy the plaintiff must prove that each defendant acted with intent to advance the unlawful purpose of the alleged single conspiracy. *In re Vitamins Antitrust Litig.,* 320 F.Supp.2d at 16; *see also Duran*, 189 F.3d at 1080 (recognizing that a defendant's participation in a "single conspiracy can only be demonstrated by proof that an overall agreement existed among the conspirators" and that the defendant acted to advance this single objective).

### 3.      Interdependence between the Various Branches of the Conspiracy.

Finally, a plaintiff must prove the interdependence between the various branches of the alleged common conspiracy. *Id.* Interdependence can be established "where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme." *United States v. Portela*, 167 F.3d 687, 695 (1st Cir. 1999).

To satisfy this element Ninth Circuit law requires that the plaintiff prove that the defendant was aware that the success of the branch of the alleged overarching conspiracy in which the defendant participated "was dependent on the success of the other" branches of the alleged conspiracy. *Duran*, 189 F.3d at 1081 (defendants did not participate in single, overarching conspiracy where there was no evidence that they were aware that "success of [their] venture was in anyway dependent upon the success of the other."); *Durades*, 607 F.2d at 819-20 (finding two different drug distribution conspiracies existed, not single overarching conspiracy because the success of one drug ring did not depend upon the activities of the other).

Applying the legal standards set forth above, the *Vitamins* court evaluated whether a genuine issue of material fact existed with respect to each moving defendant's participation in an all-vitamins conspiracy. *In re Vitamins Antitrust Litig.,* 320 F.Supp.2d at 19 (quoting *United States v. United States Gypsum Co.*, 438 U.S. 422, 463 (1978) ("Liability [can] only be predicated on the knowing involvement of each defendant, considered individually, in the conspiracy charged.") ). For example, plaintiffs presented evidence that one of the defendants, UCB, attended a meeting in Mexico City with other vitamin producers where the participants "discussed choline market allocation." *In re Vitamins Antitrust Litig.,* 320 F.Supp.2d at 19. This evidence generated fact issues with respect to UCB's participation in "price fixing and allocation of the choline market." *Id.*

The court found, however, that plaintiffs had failed to produce evidence that supported "even an inference of UCB's knowledge of or participation in an all-vitamins conspiracy." *Id.* at 20. Although plaintiffs presented evidence that UCB participated in meetings with other vitamin producers, including admitted participants in the all-vitamins conspiracy, these meetings related to either: (1) potentially anticompetitive communications regarding the choline market or (2) UCB's efforts to sell choline to an alleged ringleader of the all-vitamins conspiracy. *Id.* at 19-20. Plaintiffs argued that "[t]hrough these relationships with companies involved in other aspects of the conspiracy, UCB knew of the full scope and implication of [the all-vitamins conspiracy]." *Id.* The court rejected this argument. The fact that UCB had close relationships with other alleged members of the all-vitamins conspiracy and participated in a potentially anticompetitive meeting regarding choline, "even viewed in the light most favorable to Plaintiffs, does not indicate even an inference of UCB's knowledge of or participation in an all-vitamins conspiracy. The Plaintiffs have provided no evidence that can satisfy even a very low burden of establishing that UCB at least knew of and possibly participated in an all-vitamins conspiracy." *Id.* at 20. Accordingly, the court granted UCB summary judgment.[3]

---

[3] By contrast, the *Vitamin* plaintiffs presented evidence that generated fact issues about whether other moving defendants knew of the all-vitamins conspiracy. A memo authored by an employee of defendant Bioproducts regarding a meeting with BASF indicated that at the meeting, the Bioproducts employee learned that BASF was "trying to push vitamin and choline prices up." *Id.* at 22. The court found that this document supported an inference that

1          **4.     *DAPs must make the same showing under New York law.***

2          To defeat summary judgment on their  claim that Thomson Consumer participated an all-

3  CRT conspiracy under New York General Business Law § 340 (the "Donnelly Act"), DAPs

4  must satisfy the same elements required by the Ninth Circuit and the *Vitamins* court.     The

5  Donnelly Act is modeled after federal antitrust statutes and "require[s] identical basic elements

6  of proof." *Altman v. Bayer Corp.*, 125 F.Supp.2d 666, 672 (S.D.N.Y. 2000).  "The New York

7  Court of Appeals has held that the Donnelly Act should generally be construed in light of federal

8  precedent and given a different interpretation only where State policy, differences in statutory

9  interpretation or the legislative history justify such a result." *Bologna v. Allstate Insurance Co.*,

10  138 F.Supp.2d 310, 320 (E.D.N.Y. 2001) (internal citations and quotations omitted); *see also*

11  *X.L.O. Concrete Corp. v. Rivergate Corp.*, 83 N.Y.2d 513, 518 (1994).

12          New York authority regarding the elements that must be satisfied to prove a defendant

13  participated in a single, overarching conspiracy is fully consistent with the federal law set forth

14  above. For example, in *People v. Leisner*, 73 N.Y.2d 140 (1989) and *People v. Ruiz*, 496

15  N.Y.S.2d 612 (1985) the defendants included 12 landlords who owned various apartment

16  buildings that were charged with conspiring to force their tenants out of over 20 rent controlled

17  apartment buildings in New York County through a coordinated program of threats, assaults, and

18  burglaries led by defendants Lender and Lambert.     The *Ruiz* court found that there "was

19  insufficient evidence to link 12 of the landlords together in a single conspiracy." *Ruiz*, 496

20  N.Y.S.2d at 613.  It emphasized that each landlord "dealt directly and separately with Lender

21  and Lambert, according to building" and there was no evidence that "any landlord was motivated

22  by anything other than his own economic interest or shared any intent to commit crimes against

23

24  "Bioproducts was aware of the vitamins conspiracies in general."  *Id*. at 22-23.  Similarly,

25  defendant Chinook's motion for summary judgment failed because one of its employee's had
testified that during a meeting with BASF he had learned European producers "had a cartel
related to vitamins other than choline."  *Id*. at 23.  This fact, viewed in the light most favorable to

26  plaintiffs, created a genuine issue as to whether it "knew of, intended to join, and was
interdependent on an all-vitamins conspiracy."  *Id*.  Here, Thomson Consumer is like UCB, not

27  Bioproducts or Chinook, because Thomson Consumer had no knowledge of and did not
participate in the alleged CDT conspiracy.

28

1    tenants other than those as to whom he had such an interest." *Id.*  Moreover, interdependence

2    among the different branches of the alleged conspiracy was lacking because "no one aspect of

3    the operation depended upon or even related to the success of any other." *Id.*  In short, because

4    the evidence did not establish that each landlord (1) "knew the full scope of the operation" and

5    (2) "shared all of its purposes" the 12 landlords did not participate in a single conspiracy. *Id.*

6         By contrast, the trial court stated that the evidence indicated that two other landlords

7    were not only aware of each other's use of Lender and Lambert to vacate buildings, but "they

8    also jointly purchased and employed Lender-Lambert to vacate a series of six buildings." *Id.* at

9    614.  The trial court found that these two defendants' coordinated use of Lender and Lambert to

10   serve their joint economic interests was sufficient to "bring them together with the Lender-

11   Lambert group in a single conspiracy." *Id.*   On appeal, these two defendants asserted that the

12   trial court had erred by refusing to charge the jury "on the possibility of multiple conspiracies."

13   *Leisner*, 73 N.Y.2d at 148.  The New York Court of Appeals agreed.  It emphasized that in

14   circumstances where the "prosecution combines a number of seemingly related criminal

15   agreements into a single integrated conspiracy . . . the all too real danger" exists that "jury

16   confusion may arise" and "the jury will find guilt by association." *Id.* at 149.  The court noted

17   that evidence existed showing that one of the defendants did not participate in vacating buildings

18   owned by the other defendant, the success of vacating this defendant's buildings did not depend

19   on what happened at the other defendant's buildings,  and there was no agreement between the

20   two defendants regarding the relocation of tenants from their buildings.  *Id.*  Accordingly, the

21   trial court erred by failing to instruct the jury on the possibility of multiple conspiracies.  *Id.*; *see*

22   *also People v. Kaatsiz*, 595 N.Y.S.2d 648, (1992) (stating that to establish that defendant

23   participated in common, overarching conspiracy there must be evidence that the defendant had

24   knowledge of and participated in the acts giving rise to the broader conspiracy).

25        In sum, like under federal law, to establish that Thomson Consumer participated in a

26   single, overarching conspiracy under the Donnelly Act, DAPs must present evidence

27   establishing that Thomson Consumer knowingly participated in the alleged CDT conspiracy and

28   believed the success of the CPT conspiracy was dependent on the success of the alleged CDT

1   conspiracy.   Because Thomson Consumer did not manufacture or sell CDTs and had no

2   knowledge of other defendants' alleged anticompetitive meetings regarding them, requiring the

3   plaintiffs to make such a showing is critically important because it ensures that "individual

4   justice" is not sacrificed by the "all too real danger" that in a complex conspiracy case such as

5   this one "a jury will find guilt by association."   *Leisner*, 73 N.Y.2d at 149 (recognizing that "the

6   danger of sacrificing individual justice arises most often wherein questions are raised as to

7   whether there was one single conspiracy or several minor conspiracies" (quoting *United States v.*

8   *Eubanks,* 591 F.2d 513, 522 (9th Cir. 1979)).

9          **B.      There Is No Evidence That Thomson Consumer Knowingly Participated In
                   the Alleged CDT Conspiracy.**
10

11          The Court should grant Thomson Consumer summary judgment on DAPs' claims that it

12   participated in a single, overarching conspiracy to fix the price of CDTs and CPTs because

13   DAPs have failed to adduce *any* evidence that it: (1) had knowledge of the alleged CDT

14   conspiracy; (2) knowingly participated in activities that advanced its unlawful purpose; and (3)

15   believed the success of the alleged CPT conspiracy was dependent upon the success of the

16   alleged CDT conspiracy.   *Duran*, 189 F.3d at 1081; *Durades*, 607 F.2d at 819-20; *In re Vitamins*

17   *Antitrust Litig.,* 320 F.Supp.2d at 19-20.

18          As explained above, DAPs have admitted and it is undisputed that Thomson Consumer

19   never manufactured or sold CDTs or products containing CDTs during the Relevant Period.

20   (*See* Statement of Facts at ¶ 12.)   It is also undisputed that Thomson Consumer did not attend

21   any of the Asian Glass Meetings during which companies that manufactured CDTs allegedly

22   conspired to fix the prices and/or reduce the output of CDTs.   (*Id.* at ¶¶ 27-28.)   Instead,

23   Thomson Consumer manufactured separate and distinct products on a different continent – it

24   manufactured and sold televisions and the CPTs used to make them in North America.  In other

25   words, Thomson Consumer: (1) did not make CDTs; (2) had no incentive to join a CDT

26   conspiracy; and (3) did not know about or participate in the Asian Glass Meetings where the

27   alleged CDT conspiracy was effectuated.

28

1    In interrogatories it served on DAPs, Thomson Consumer asked them to identify "all

2  DOCUMENTS or EVIDENCE that support YOUR contention that Thomson Consumer

3  participated in" a conspiracy "to fix the price of and/or reduce the output of CDTs during the

4  relevant period." *E.g.*, **Ex**. **30**, Target's Responses to Thomson Defendants' First Set of

5  Interrogatories at 18.  In response, DAPs made the conclusory assertion "that Defendants'

6  unlawful CRT conspiracy encompassed both CPT and CDT." *Id.*  They also referred Thomson

7  Consumer to DAPs' responses to prior interrogatories identifying documents that DAPs assert

8  support their claims that Thomson Consumer participated in a price-fixing conspiracy with the

9  other defendants. *Id.*   However, even when interpreted in the light most favorable to DAPs,

10  these documents relate solely to CPTs and/or televisions.  *See e.g.* **Ex. 31**   REDACTED

11                                                                    **Ex. 32**   REDACTED

12                                                        Not a single one of these documents even

13  suggests, let alone establishes, that Thomson Consumer had knowledge of or participated in the

14  Asian Glass Meetings or any other anticompetitive meetings regarding CDTs.

15    Just as UCB was entitled to summary judgment on the claim that it participated in an all-

16  vitamins conspiracy because plaintiffs in *In re Vitamins* failed to adduce evidence that supported

17  "even an inference of UCB's knowledge of or participation in an all-vitamins conspiracy,"

18  Thomson Consumer is entitled to summary judgment on DAPs' claim that it participated in an

19  all-CRT conspiracy.  *In re Vitamins Antitrust Litig.,* 320 F.Supp.2d at 20.  DAPs' responses

20  demonstrate that they can point to no specific evidence which establishes that Thomson

21  Consumer: (1) had knowledge of the alleged CDT conspiracy, (2) took actions to advance its

22  unlawful purpose, and (3) believed the success of the alleged CPT conspiracy in which it

23  allegedly participated was dependent upon the success of the alleged CDT conspiracy.  *Duran*,

24  189 F.3d at 1081; *Durades*, 607 F.2d at 819-20; *In re Vitamins Antitrust Litig.,* 320 F.Supp.2d at

25  19-20.  Accordingly, no reasonable juror could find that Thomson Consumer participated in a

26  single, overarching conspiracy involving all CRTs and the Court should enter summary

27  judgment against DAPs on their claims that Thomson Consumer participated in a conspiracy to

28  fix the price of CDTs.  *Anderson*, 477 U.S. at 252.

**C.      Thomson Consumer is not Improperly Dismembering the Alleged Conspiracy.**

Unable to point to specific evidence establishing that Thomson Consumer: (1) knew of the alleged CDT conspiracy and (2) believed the success of the alleged CPT conspiracy was dependent on the success of the CDT conspiracy, DAPs will instead argue that Thomson Consumer is improperly attempting to dismember the global, twelve year all-CRT conspiracy alleged in their complaints.   DAPs will cite to *Continental Ore Co. v. Union Carbide & Corp.*, 370 U.S. 690, 699 (1962) and *Beltz Travel Service, Inc. v. Int'l Air Trans. Assoc.,* 620 F.2d 1360, 1366-67 (9th Cir. 1980) for the general principle that a conspiracy is not to be judged "by viewing its separate parts, but only by looking at it as a whole."   They will then argue that because they have alleged that Thomson Consumer participated in a single, overarching conspiracy involving all CRTs and can present evidence that they claim shows Thomson Consumer participated in information exchanges with its CPT competitors, a disputed issue of material fact exists regarding whether Thomson Consumer participated in the alleged single, overarching all-CRT conspiracy.   DAPs are incorrect and their argument is not supported by *Continental Ore*, *Beltz Travel Service,* or other Ninth Circuit law.

Neither *Continental Ore* nor *Beltz Travel Service* support DAPs' argument that they can overcome summary judgment even without specific evidence establishing that Thomson Consumer knowingly participated in the alleged CDT conspiracy.  In *Continental Ore*, the plaintiff claimed that the defendants conspired to monopolize the market for vanadium oxide and ultimately controlled 99% of the market.  370 U.S. at 693-4.   The plaintiff, an independent vanadium oxide producer and distributor who relied on access to a supply of vanadium oxide to operate several business ventures, asserted that by preventing plaintiff from obtaining a sufficient supply of the compound, defendants caused plaintiffs' business ventures to fail.  *Id*. After the jury returned a verdict for the defendants the plaintiff filed a motion for a directed verdict.  *Id*. at 695-96.  The Ninth Circuit affirmed the judgment, "holding there was insufficient evidence to justify a jury finding that the defendants' illegal acts were in fact the cause of [plaintiff's] failure in the vanadium business." *Id*.

1    The Supreme Court vacated the judgment.  It noted that it was undisputed that the

2    defendants had conspired to monopolize the vanadium market.  Instead, the issue before it was

3    whether there was sufficient evidence that the defendants' conduct caused plaintiff's business

4    ventures to fail, so that the "damages issue" should have gone to the jury.  *Id*. at 699-700.  The

5    Court explained that in analyzing this question the Ninth Circuit improperly evaluated each of

6    plaintiff's failed business ventures independently and determined that plaintiff's "demands for

7    oxide from [defendants] were not sufficiently contemporaneous with the failure of these ventures

8    to subject [defendants] to liability."  *Id*. at 698.   The Court found that the Ninth Circuit erred by

9    evaluating the impact of the vanadium  supply restrictions on plaintiff's businesses individually

10   and noted that the "character and effect of a conspiracy are not to be judged by dismembering it

11   and viewing its separate parts, but only by looking at it as a whole."  *Id.* at 699.  Because the

12   evidence as a whole established that by restricting the supply of vanadium defendants may have

13   damaged plaintiff's business, the Court vacated the judgment and remanded the case to the

14   district court for a new trial.

15       Read in context, the *Continental Ore* Court's statement invoked by the DAPs stands for

16   the proposition that when analyzing the impact and damage caused by a conspiracy, the evidence

17   should not be artificially compartmentalized or viewed in isolation, but must be evaluated as a

18   whole.  *Id.* at 699.  *Continental Ore* does not support the proposition that an antitrust plaintiff

19   may defeat summary judgment by arguing that evidence of the conspiracy must be evaluated as a

20   whole where the plaintiff alleges the defendant participated in an antitrust conspiracy regarding a

21   product it never manufactured or sold and the plaintiff has no evidence that the defendant

22   knowingly participated in a conspiracy regarding that product.  *Id*.   To conclude otherwise

23   would permit a plaintiff to survive summary judgment even if it lacks "significant probative

24   *evidence* tending to support" the allegations plead in its complaint.  *T.W. Elec. Serv.,* 809 F.2d at

25   630 (emphasis added); *see also Matsushita*, 475 U.S. at 488 (to survive summary judgment

26   antitrust plaintiff must present specific evidence that supports its claims).

27       The Ninth Circuit's statement in *Beltz Travel Service* that a conspiracy must be viewed as

28   a whole also does not save DAPs' claims.  In that case, the plaintiff, a travel agency, claimed

1   that the defendants, a group of airlines, two airline trade associations, and individual airline

2   members of the associations, conspired to exclude the plaintiff from the travel tour packaging

3   market.  620 F.2d at 1362-64.  Two of the defendants filed a motion to dismiss, which the trial

4   judge treated as a motion for summary judgment, arguing that they were immune from antitrust

5   liability for actions taken with the approval of the Civil Aeronautics Board ("CAB").  *Id*. at

6   1364.  The trial court granted the moving defendants summary judgment, finding that they were

7   immune from antitrust liability for actions authorized by the CAB.  *Id*.  The Ninth Circuit

8   reversed.  It found that the defendants had failed to "set forth any facts negating th[e] allegation

9   in the complaint that [defendants] were part of the overall conspiracy," so they failed to meet

10  their burden under Rule 56(c) of showing that there was no genuine issue of material fact about

11  their participation in the conspiracy.  *Id*. at 1365.  Moreover, the trial court erred by only

12  evaluating the actions of the defendants that were arguably immune under the CAB, not the

13  other allegations that could support plaintiff's claims, and thus failed to assess the allegations

14  regarding defendants' alleged participation "as a whole."  *Id*. at 666.

15      *Beltz Travel Service* is inapplicable here.  There is no evidence that Thomson Consumer

16  knowingly participated in a CDT conspiracy.  *See supra* at ¶¶ 22-28.  In addition, Thomson

17  Consumer is not asking the Court to ignore certain types of evidence that arguably establishes it

18  knowingly participated in a CDT conspiracy.  Even when the record is evaluated as a whole,

19  there is no evidence that Thomson Consumer knowingly participated in a CDT conspiracy and

20  believed the success of the CPT conspiracy in which it did allegedly participate was dependent

21  upon the success of the CDT conspiracy.  *Id*.

22      Consistent with Ninth Circuit precedent, Thomson Consumer is simply asking the Court

23  to evaluate the evidence – or lack thereof – that supports DAPs' unsubstantiated allegation that

24  Thomson Consumer knowingly participated in a conspiracy involving CDTs.  *Duran*, 189 F.3d

25  at 1081; *Durades*, 607 F.2d at 819-20.  DAPs have failed to adduce such evidence, so the Court

26  should grant Thomson Consumer summary judgment on DAPs' § 1 Sherman Act and Donnelly

27  Act claims that it participated in a CDT conspiracy.  *See In re Vitamins Antitrust Litig.,* 320

28  F.Supp.2d at 16, 19-20 (recognizing that *Continental Ore* requires that evidence of conspiracy be

1  viewed as a whole, but granting summary judgment where plaintiffs failed to present evidence

2  that defendant knowingly participated in all-vitamins conspiracy).

3  **CONCLUSION**

4      The DAPs have filed claims alleging that Thomson Consumer participated in a vast,

5  overarching, global conspiracy to fix the price of CDTs – products Thomson Consumer never

6  manufactured or sold.  DAPs have failed to put forth evidence that establishes Thomson

7  Consumer: (1) knew about the alleged CDT Conspiracy; (2) actually participated in

8  anticompetitive activities regarding CDTs; and (3) believed the success of the alleged

9  anticompetitive agreements regarding CPTs that it allegedly formed were dependent upon the

10  success of the CDT conspiracy.  Accordingly, there is no genuine issue of material fact that

11  Thomson Consumer did not knowingly participate in a single, overarching conspiracy to fix the

12  price of both CDTs and CPTs.  The court should enter summary judgment for Thomson

13  Consumer on DAPs' claims that it participated in a CDT conspiracy and find that DAPs may not

14  recover CDT-related damages from it.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Dated:  November 7, 2014                        Respectfully submitted,

2

3                                                    */s/ Kathy L. Osborn*
                                                     Kathy L. Osborn (*pro hac vice*)
4                                                    Ryan M. Hurley (*pro hac vice*)
                                                     Faegre Baker Daniels LLP
5                                                    300 N. Meridian Street, Suite 2700
                                                     Indianapolis, IN  46204
6                                                    Telephone: +1-317-237-0300
                                                     Facsimile: +1-317-237-1000
7                                                    kathy.osborn@FaegreBD.com
                                                     ryan.hurley@FaegreBD.com
8
                                                     Jeffrey S. Roberts (*pro hac vice*)
9                                                    Faegre Baker Daniels LLP
                                                     3200 Wells Fargo Center
10                                                   1700 Lincoln Street
                                                     Denver, CO  80203
11                                                   Telephone: +1-303-607-3500
                                                     Facsimile:  +1-303-607-3600
12                                                   jeff.roberts@FaegreBD.com

13                                                   Stephen M. Judge (*pro hac vice*)
                                                     Faegre Baker Daniels LLP
14                                                   202 S. Michigan Street, Suite 1400
                                                     South Bend, IN  46601
15                                                   Telephone: +1 574-234-4149
                                                     Facsimile:  +1 574-239-1900
16                                                   steve.judge@FaegreBd.com

17                                                   Calvin L. Litsey (SBN 289659)
                                                     Faegre Baker Daniels LLP
18                                                   1950 University Avenue, Suite 450
                                                     East Palo Alto, CA  94303-2279
19                                                   Telephone: +1-650-324-6700
                                                     Facsimile: +1-650-324-6701
20                                                   calvin.litsey@FaegreBD.com

21                                                   ***Attorneys for Defendant Thomson Consumer***
                                                     ***Electronics, Inc.***
22

23

24

25

26

27

28