Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,
Toshiba America, Inc., Toshiba America
Information Systems, Inc., Toshiba America
Consumer Products, L.L.C., and Toshiba America
Electronic Components, Inc.*

Additional Counsel On Signature Pages

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02648;<br><br>*P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al.*, No. 13-cv-05725; | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO MARTA**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:        February 6, 2015<br>Time:        10:00 a.m.<br>Before:      Hon. Samuel Conti |

**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    ISSUES PRESENTED ........................................................................................ 1

4    II.   INTRODUCTION ............................................................................................. 1

5
6    III.  UNDISPUTED MATERIAL FACTS .............................................................. 3

7    IV.   STANDARD OF REVIEW ............................................................................. 9

8    V.    ARGUMENT ................................................................................................. 10

9
           A.   The Motion For Summary Judgment Should Be Granted Because
10              MARTA Lacks Antitrust Standing With Respect To Its Sherman
11              Act Claim ........................................................................................... 10

12         B.   The Motion For Summary Judgment Should Be Granted Because
13              MARTA Does Not Have Standing With Respect To Its Arizona
                And Illinois Antitrust Claims ............................................................ 15
14
15         C.   The Motion For Summary Judgment Should Be Granted Because
                The Customer Control Exception To *Illinois Brick* Bars MARTA's
16              Claims ................................................................................................ 16

17              1.    MARTA Was Owned And Controlled By Its Members ..................... 18
18
19              2.    MARTA Was A Purchasing Agent For Its Members ......................... 20

20              3.    The Court Should Not Follow The Court's Decision In
                      TFT-LCD ............................................................................... 21
21
22   VI.   CONCLUSION ............................................................................................... 23

23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*American Ad Management, Inc. v. General Telephone Co. of California*,
    190 F.3d 1051 (9th Cir. 1999) ........................................................................ 10, 13, 14

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)) .................................................................................................... 9

*Andrx Pharmaceuticals, Inc. v. Biovail Corp. Int'l*,
    256 F.3d 799 (D.C. Cir. 2001)............................................................................... 10-11, 15

*Associated General Contractors of California v. California State Council
of Carpenters*,
    459 U.S. 519 (1983)......................................................................................... 10, 11

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
    182 F.3d 1096 (9th Cir. 1999) ................................................................................ 13

*Bunker's Glass Co. v. Pilkington, PLC*,
    206 Ariz. 9 (2002).......................................................................................... 15, 16

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.*,
    141 F.R.D. 144 (N.D. Cal. 1991) ............................................................................ 17

*Cargill, Inc. v. Monfort of Colorado, Inc.*,
    479 U.S. 104 (1986)....................................................................................... 14

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.*,
    392 U.S. 481 (1968)....................................................................................... 13

*Hawaii v. Standard Oil Co.*,
    405 U.S. 251 (1972)....................................................................................... 10

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977).................................................................................. 1, 17, 19

*In re ATM Fee Antitrust Litig.*,
    686 F.3d 741 (9th Cir. 2012) .................................................................. 3, 17, 18, 21-22

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
    MDL No. 1917, Case No. C-07-5944-SC, 2013 WL 4505701 (N.D. Cal.
    Aug. 21, 2013) ....................................................................................... 15-16

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    202 F.R.D. 12 (D.D.C. 2001) .................................................................................. 20

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................................. 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    Nos. M 07-1827 SI, 2011 WL 3738968 (N.D. Cal. Aug. 24, 2011) ........................... 20

*In re: TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, MDL No. 1827 (N.D. Cal. Sept. 4, 2014) .................................... 21

*In re Toilet Seat Antitrust Litig.*,
    No. 75-184, 1977 WL 1453 (E.D. Mich. Aug. 24, 1977).......................................... 20

*Kinetic Systems, Inc. v. Federal Financing Bank*,
    Case No. 12-cv-01619-SC, 2014 WL 3964952 (N.D. Cal. Aug. 13, 2014).................. 9

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)................................................................................. 13

*Obron v. Union Camp Corp.*,
    355 F. Supp. 902 (E.D. Mich. 1972) .................................................... 13-14

*O'Regan v. Arbitration Forums, Inc.*,
    121 F.3d 1060 (7th Cir. 1977) ................................................................ 16

*Royal Printing Co. v. Kimberly-Clark Corp.*,
    621 F.2d 323 (9th Cir. 1980) ............................................................ 17, 19

*Sun Microsystems, Inc. v. Hynix Semiconductor Inc.*,
    608 F. Supp. 2d 1166 (N.D. Cal. 2009)..........................................17-18, 18-19


**Federal**

Fed. R. Civ. P. 56(a) .................................................................................. 9

15 U.S.C. § 15(a) ..................................................................................... 10

**Statutes**

Ariz. Rev. Stat. § 44-1408(B).......................................................... 2, 15, 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on February 6, 2015, or as soon thereafter as this matter may be heard before the Honorable Samuel Conti, Senior District Judge in the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California 94102, the undersigned defendants in this action will and hereby do move this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure with respect to all claims asserted by plaintiff, MARTA Cooperative of America, Inc. ("MARTA").

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the declaration of Lucius B. Lau, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      ISSUES PRESENTED**

1.      Whether the Court should grant summary judgment with respect to MARTA's First Claim for Relief (Violation of Section 1 of the Sherman Act) because MARTA lacks antitrust standing.

2.      Whether the Court should grant summary judgment with respect to MARTA's Second Claim for Relief (Violation of State Antitrust Laws) because MARTA lacks antitrust standing pursuant to the laws of Arizona and Illinois.

3.      Whether the Court should grant summary judgment with respect to MARTA's First Claim for Relief (Violation of Section 1 of the Sherman Act) because that claim is barred by the customer control exception of *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

**II.     INTRODUCTION**

MARTA is a buying cooperative whose ████████████████████ ████████████████████  MARTA was  ██████  owned and controlled by its members.  Although MARTA nominally ████████████████████████ ████████████████████  MARTA was, in reality, simply a conduit between the vendors and the members.  MARTA was never harmed by any alleged conspiracy because ████████████████████████████ ████████████████████████████████████████ ██████████.  Thus, MARTA actually benefitted from any alleged conspiracy because ████████████████████████████████████████ ████████████████████.  Given these facts, there are different arguments as to why MARTA's case should be dismissed, but these different arguments all lead to one inescapable conclusion:  MARTA is not the proper plaintiff to bring this case.  Rather, this is a case that should have been brought by MARTA's members.

1.      MARTA lacks antitrust standing to pursue its Sherman Act claims because MARTA did not suffer any antitrust injury.  Antitrust injury is a necessary, but not sufficient,

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    element of antitrust standing.   The undisputed facts of this case reveal that ████

2    ████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████████████████

4    ████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████.

14   An entity that actually benefits from an alleged overcharge does not suffer antitrust injury.

15   Because MARTA could only benefit from overcharges through ████████████████,

16   it lacks antitrust standing to assert its Sherman Act claim.

17         2.      MARTA also lacks standing to assert the claims it brings under the Arizona

18   Antitrust Act and the Illinois Antitrust Act.

19         This Court has already held that the Arizona Supreme Court would not follow the

20   standing requirements set forth in *Associated General Contractors*.   Nonetheless, MARTA

21   does not have standing under the Arizona Antitrust Act because, pursuant to that Act, only a

22   person who has been "injured in his business or property" may bring an action for damages.

23   Ariz. Rev. Stat. § 44-1408(B).   MARTA has not been injured by any alleged conspiracy

24   because ████████████████████████████████████████████████

25   ████████████████████████.   The fact that MARTA's members may have been

26   injured through the payment of increased prices does nothing to establish standing for

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    MARTA — per the Arizona Antitrust Act, a person must have suffered injury to "his business

2    or property," not some other entity's business or property.

3           As to the Illinois Antitrust Act, this Court has already indicated that it found no

4    convincing evidence that the Illinois Supreme Court would not apply *Associated General*

5    *Contractors*.   Given that the federal standing rules apply to MARTA's claims under the

6    Illinois Antitrust Act, MARTA's Illinois claims fail for the same reasons that its federal claim

7    fails.

8           3.      MARTA's federal claim fails for a separate reason: ███████████████

9    ███████████████       and, as a result, MARTA's claims are barred by the customer

10   control exception to *Illinois Brick*.   In circumstances where an indirect purchaser owns or

11   controls the direct purchaser, only the indirect purchaser may assert a claim under the

12   Sherman Act.   Here, MARTA was both owned and controlled by its members.   ████

13   ████████████████████████████████████████████

14   ████████████████████████████████████████████

15   ████████████████████████████████████████████

16   ███████████████████   Through this ownership and control, MARTA's members

17   dominated, regulated, and commanded MARTA, and had the power and authority to guide

18   and manage that group. *Accord In re ATM Fee Antitrust Litig.*, 686 F.3d 741 at 757.   The fact

19   that ████████████████████████████       provides additional

20   grounds to reach the conclusion that only MARTA's members (and not MARTA itself) have

21   standing to assert a claim under the Sherman Act.   The relationship between MARTA and its

22   members is that of agent and principal, not seller and buyer.   It is a long-established rule that

23   only the indirect purchaser has standing if there exists a principal-agent relationship that

24   supersedes market forces.

25   **III.     UNDISPUTED MATERIAL FACTS**

26          MARTA filed its action in the Eastern District of New York on November 14, 2011.

27   By its amended complaint, MARTA asserted claims against numerous defendants under the

28



White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    Sherman Act, the Arizona Antitrust Act, and the Illinois Antitrust Act.  MARTA First Am.

2    Compl. ¶¶ 233-38, 245, 246.

3         During the relevant period, MARTA was a ███████████████████████

4    ████████████.  Declaration of Lucius B. Lau, dated November 7, 2014 ("Lau Decl."),

5    Ex. A (CRT-MARTA-0043911 at CRT-MARTA-0043912, "MARTA Overview").  ████

6    ███████████████████████████████████████████.  Lau Decl., Ex. B (Dep. Tr.

7    of Robert Thompson at 37:19-22).  █████████████████████████████████████

8    ████████████████████████████████████████████████████████████████.

9    *Id.* at 39:8-11.  █████████   Lau Decl., Ex. A (CRT-MARTA-0043911 at CRT-MARTA-0043936,

10   "MARTA Overview").  ████████████████████████████████.  Lau Decl.,

11   Ex. B (Dep. Tr. of Robert Thompson at 49:19-21).

12   

13        MARTA was also controlled by its members.  ████████████████████████

14   ████████████████████████████████████████████████.  *Id.* at

15   40:2-3, 48:9-23; *see also* Lau Decl., Ex. C (CRT-MARTA-0043944 at CRT-MARTA-

16   0043956, "MARTA Cooperative Plan") ("███████████████████████████████████

17   ████████████████████████████████████████████████████████████████

18   █████████████████████████.").  ████████████████████████████████

19   ████████████████████████████████████.  Lau Decl., Ex.

20   B (Dep. Tr. of Robert Thompson at 49:8-15).

21        ████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████.  *See id.*

23   at 41:14-17 ("████████████████████████████████████████████████████

24   ████████████████████████████████████████████.."); Lau Decl.,

25   Ex. A (CRT-MARTA-0043911 at CRT-MARTA-0043913, "MARTA Overview") ("██

26   ████████████████████████████████████████████████████████████████

27   ██████████..").

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   ███████████████████████████████████████. Lau Decl., Ex. B (Dep. Tr.

2   of Robert Thompson at 46:16-18); *see also* Lau Decl., Ex. A (CRT-MARTA-0043911 at

3   CRT-MARTA-0043913, "MARTA Overview") ████████████████████████

4   ████████████████████████████████████████"). It was ████████

5   ██████████████████████████ (Lau Decl., Ex. B (Dep. Tr. of Robert Thompson

6   at 46:19-21)) and, as such, █████████████████████████████████████

7   █████████████████████████████████████████████████████████████████

8   ██████. Lau Decl., Ex. D (CRT-MARTA-0000089 at CRT-MARTA-0000096, "MARTA

9   Audited Financial Statements"). █████████████████████████████████████

10  ████████████████████████████████████. Lau Decl., Ex. B (Dep. Tr. of Robert

11  Thompson at 47:21-24). ████████████████████████████████████████████

12  ██████████████████████████████████. *Id.* at 122:3-6.

13       According to its own charter, MARTA ████████████████████████████

14  ██████████████████████████. Lau Decl., Ex. C (CRT-MARTA-

15  0043944 at CRT-MARTA-0043944, "MARTA Cooperative Plan"); *see also* Lau Decl., Ex. B

16  (Dep. Tr. of Robert Thompson at 83:20-23). █████████████████████████████

17  █████████████████████████████████████████████████████████████████

18  ████████████████████████████ Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at

19  41:23-25, 42:5-23); *see also* Lau Decl., Ex. D (CRT-MARTA-0000089 at CRT-MARTA-

20  0000096, "MARTA Audited Financial Statements") ("████████████████████████

21  ██████████████████████████████."). The members, ████████████████

22  ███████████████████████████. Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at

23  42:1-4).

24       As the principal and the owner, the membership exercised ultimate control over

25  MARTA's purchasing decisions.   The cooperative counts ████████████████████

26  ██████████████████████████████. Lau Decl., Ex. A (CRT-MARTA-

27  0043911 at CRT-MARTA-0043929, "MARTA Overview").   This was done in large part

28



White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  through

2  . Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at 56:20-23).

3

4  . Lau Decl., Ex. A (CRT-MARTA-0043911 at CRT-MARTA-0043929,

5  "MARTA Overview").

6  . *Id.*

7

8  . Lau Decl., Ex. B (Dep. Tr.

9  of Robert Thompson at 54:3-11).

10

11  . *Id.* at 57:20-24, 58:21-59:3.

12

13  *Id.* at 67:9-12.

14  . *Id.* at 56:24-57:2.

15

16

17  . *Id.* at 84:15-85:1.

18

19

20  . *Id.* at 67:13-68:21, 69:9-12, 69:20-70:10; *see*

21  *also* Lau Decl., Ex. E (Dep. Tr. of Aimee Fields at 91:9-92:6).

22

23  . Lau Decl., Ex.

24  B (Dep. Tr. of Robert Thompson at 86:11-19); *see also* Lau Decl., Ex. E (Dep. Tr. of Aimee

25  Fields at 82:25-83:4).

26

27  . Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at 86:20-24).

28



White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1 ████████████████████████████████████████████████████████████████

2 ██████████████████████. *Id.* at 87:15-22, 88:7-10. ██████████████

3 ████████████████████████████████████████████████████. *Id.* at

4 60:11-14; *see also* Lau Decl., Ex. A (CRT-MARTA-0043911 at CRT-MARTA-0043933,

5 "MARTA Overview"). ████████████████████████

6 ████████████.   Lau Decl., Ex. A (CRT-MARTA-0043911 at CRT-MARTA-0043933,

7 "MARTA Overview"); *see also* Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at 60:16-18).

8 ████████████████████████████████████████████████████████████████

9 ████████████████████████████████████████. Lau Decl., Ex. B (Dep.

10 Tr. of Robert Thompson at 110:18-25). ████████████████████

11 ████████████████████████. Lau Decl., Ex. C (CRT-MARTA-0043944 at CRT-

12 MARTA-0043944, "MARTA Cooperative Plan") ("██████████████████████████

13 █████████████████████████████████████████████████")

14 (emphasis added).

15 ████████████████████████████████████████████████████████████████

16 ████████████. Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at 88:17-89:4). ██████

17 ████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████. *Id.* at 100:5-12. ██

19 ████████████████████████████████████. *See*, *e.g.*, Lau Decl., Ex. F (CRT-MARTA-0005185

20 at CRT-MARTA-0005187).

21 ████████████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████████████

23 ████████████████████████. Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at 95:15-23).

24 ████████████████████████████████████████████████████████████████.

25 *Id.* at 96:7-9.

26 ████████████████████████████████████████████. *Id.* at

27 77:13-16.

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005



1    ███████████.  *See* Lau Decl., Ex. G (CRT-MARTA-0044008 at CRT-MARTA-0044020,

2    "MARTA Business Plan").  ████████████████████████████

3    ████████████████████████████████████████████.  Lau

4    Decl., Ex. E (Dep. Tr. of Aimee Fields at 88:3-10).

5    ████████████████████████████████████.

6    Lau Decl., Ex. G (CRT-MARTA-0044008 at CRT-MARTA-0044020, "MARTA Business

7    Plan").  ████████████████████████████

8    ██████████████████.  Lau Decl., Ex. B (Dep. Tr. of Robert

9    Thompson at 78:18-24).  ████████████████████

10   ██████████████████████████████

11   █████████.  *See id.* at 187:25-188:3.  ████████████

12   ██████████████████████████."  *See id.* at

13   79:1-2, 81:13-15, 126:15-19.

14   ████████████████████████████

15   ████████████████████████████

16   ██████████████████████.  *Id.* at 126:10-15, 131:2-10.

17   ████████████████████████████

18   ██████████████████████.  *Id.* at 186:11-12.

19   ████████████████████████████

20   ████████████████████████████.  *Id.* at

21   131:11-20.  ████████████████████

22   ████████████████████████████

23   █████████.  *See id.* at 131:22-132:5, 132:24-133:8.

24   ████████████████████.  *Id.* at 133:10-14.

25   ████████████████████████████

26   ████████████████████████████

27   ████████████████████████████.  *Id.*

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   at 91:15-17, 93:8-11. ███████████████████████████████████████

2   ████████████████████████████████████████████████████████████

3   ███████████████████████████████████████████. *Id.* at 91:2-7, 94:1-

4   15; Lau Decl., Ex. H (Dep. Tr. of Warren Mann at 122:23-123:9); Lau Decl., Ex. E (Dep. Tr.

5   of Aimee Fields at 57:18-23). ██████████████████████████████

6   ████████████████████████████████████████████████████████████

7   ██████████████████████████████████. Lau Decl., Ex. B (Dep. Tr. of Robert

8   Thompson at 90:4-7).

9   ████████████████████████████████████████████████████████

10  █████████████. Lau Decl., Ex. E (Dep. Tr. of Aimee Fields at 155:23-156:12). ██

11  ████████████████████████████████████████████████████████████

12  ██████. *Compare* Lau Decl., Ex. I (CRT-MARTA-0043860, "Resource Plus Membership

13  List") *with* Lau Decl., Ex. J (CRT-MARTA-0043895, "MARTA Common Stock

14  Reconciliation List").

15  ## IV.    STANDARD OF REVIEW

16  A court "shall" grant summary judgment "if the movant shows that there is no genuine

17  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

18  Fed. R. Civ. P. 56(a).  "Summary judgment should be granted if the evidence would require a

19  directed verdict for the moving party."  *Kinetic Systems, Inc. v. Federal Financing Bank*, Case

20  No. 12-cv-01619-SC, 2014 WL 3964952, at *3 (N.D. Cal. Aug. 13, 2014) (Conti, J.) (citing

21  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  "The mere existence of a

22  scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

23  evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at

24  252.

25

26

27

28



White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## V.    ARGUMENT

### A.    The Motion For Summary Judgment Should Be Granted Because MARTA Lacks Antitrust Standing With Respect To Its Sherman Act Claim

By its First Claim for Relief, MARTA seeks to recover damages for a purported violation of the Sherman Act.  This claim should be dismissed because MARTA is a buying cooperative that lacks antitrust standing.

In relevant part, Section 4 of the Clayton Act provides that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court in the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."  15 U.S.C. § 15(a).  Notwithstanding the potentially broad scope of this provision, numerous courts have concluded that "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation."  *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 534 (1983) (quoting *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263 n.14 (1972)) (internal quotation marks omitted).  Consequently, the question whether a plaintiff may recover for the injury it has allegedly suffered by reason of a defendant's conduct "requires us to evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them."  *Id.* at 535.  Although there is no "black letter rule" applicable to every case (*id.* at 536), certain factors are considered:  "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity of apportioning damages."  *American Ad Management, Inc. v. General Telephone Co. of California*, 190 F.3d 1051, 1054 (9th Cir. 1999) (citation omitted).  "In evaluating standing, courts also consider whether there exists a more directly injured plaintiff to vindicate the public's interest."  *Andrx Pharmaceuticals, Inc.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1  *v. Biovail Corp. Int'l*, 256 F.3d 799, 816 (D.C. Cir. 2001) (citing *Associated General*

2  *Contractors*, 459 U.S. at 544).  Courts "are more likely to find no standing if the plaintiff's

3  injury both derives from and is measured by another's more direct injury."  *Id.* (citation

4  omitted).

5    Applying these standards, it is apparent that MARTA does not have antitrust standing

6  to assert a claim under the Sherman Act.   According to its own charter, ████████████

7  ████████████████████████████████████.  Lau Decl., Ex. C (CRT-

8  MARTA-0043944 at CRT-MARTA-0043944, "MARTA Cooperative Plan").  ████████

9  ███████████████████████████████████████████████████

10 ███████████████████████████████████████████████████

11 ██████████████████.  Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at 41:23-25, 42:5-

12 23); Lau Decl., Ex. D (CRT-MARTA-0000089 at CRT-MARTA-0000096, "MARTA

13 Audited Financial Statements").  ██████████████████████████████

14 ███████████████████████████████████████████████████

15 ███████████████████████████████████████████████████

16 ███████████████████████████████████████████████████

17 ███████████████████████████████████████████████████

18 ███████████████████████████████████████████████████

19 ███████████████████████████████████████████████████

20 ████████████████████████████████████████████████.  Lau

21 Decl., Ex. B (Dep. Tr. of Robert Thompson at 84:15-85:1).  ████████████████

22 ███████████████████████████████████████████████████

23 ████████████████████████████████████████.  *Id.* at 86:20-24,

24 87:15-22, 88:7-10.  ███████████████████████████████.  *Id.* at 77:13-16.

25 ███████████████████████████████████████████████████

26 ███████████████████████████████████████████████████

27 ███████████████████████████████████████████████████

28

1   ████████████████████████████████████████. Lau Decl., Ex. E (Dep. Tr. of Aimee

2   Fields at 88:3-10).

3         The relationship between ████████████████████████████████████████████

4   ████████████████████████████ was confirmed by MARTA's 30(b)(6) witness, Robert

5   Thompson, who testified as follows:

6                     Q.   ███████████████████████████████

7         ████████████████████████████████████████████

8         ████████████████████████████████████████████

9         ████████████████████████████████████████████

10        ████████████████████████████████.

11                    A.   ███.

12                    Q.   █████

13                    A.   ██.

14                    Q.   ███████████████████████████████

15        ████████████████████████████████████████████

16        ████████████████████████████████████████████

17        ████████████████████████████████████████████

18        ████████████████████████████

19                    MR. SHAW:   ███████████.

20                    THE WITNESS:   ████████████████

21        ████████████████████████████████████████████.

22        BY MR. LAU:

23                    Q.   ███████████████████████████████

24        ████████████████████████████ ██████████████

25        ████████████████████████████████████████████

26        ██████████████████████████

27                    MR. SHAW:   ███████████.

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    MR. DIEL:        ███████████████████.

2    THE WITNESS:     ███████████████████.

3    Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at 131:2-132:5).

4         A plaintiff cannot establish antitrust injury (and, thus, does not have antitrust standing)

5    if that plaintiff actually benefits from the alleged antitrust violation.   For example, the

6    plaintiffs in *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096 (9th Cir. 1999),

7    were lodge operators and lodging referral services in a ski resort area.   With respect to alleged

8    price-fixing of ski packages and lodging accommodations, the Ninth Circuit held that the

9    plaintiffs had not alleged antitrust injury because the plaintiffs "are competitors to, rather than

10   customers of, Defendants in the sale of these services."   *Id.* at 1102.   In reaching its holding,

11   the Ninth Circuit observed that "Plaintiffs stand to benefit from the fact that prices for those

12   services are inflated."   *Id.* (citation omitted)).   MARTA is akin to the plaintiffs in *Big Bear* in

13   that it benefited from any overcharge that occurred because ███████████████████████████

14   ████████████████████████████████████.   Thus, it suffered no antitrust injury.

15   *Accord American Ad Management*, 190 F.3d at 1056 ("There can be no antitrust injury if the

16   plaintiff stands to gain from the alleged unlawful conduct.") (citation omitted); *see also*

17   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 584 n.8 (1986) (noting

18   respondents may not complain about conspiracies that "would actually benefit respondents by

19   raising market prices").

20        MARTA is also like the plaintiff in *Obron v. Union Camp Corp.*, 355 F. Supp. 902

21   (E.D. Mich. 1972).   The plaintiff in that case was a "jobber," or wholesale dealer who

22   purchased mesh window bags from the defendant.   The plaintiff alleged that the defendant and

23   others conspired to create a monopoly through the enforcement of invalid patents.   The *Obron*

24   Court reviewed the cases that might bear upon the issue before it, including *Hanover Shoe,*

25   *Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), which held that the defendant was

26   not entitled to a pass-on defense, but which noted that such a defense might be available if

27   there were a pre-existing cost-plus contract.   *Obron*, 355 F. Supp. at 905-06.   Reviewing the

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   facts before it, the *Obron* Court stated that "[i]t appears to this Court that if there is not a 'pre-

2   existing cost-plus contract' present here the situation is so strikingly similarly to such a

3   contract as to dictate the allowance of the 'passing-defense.'" *Id.* at 906.  The *Obron* Court

4   then explained why:

5               The plaintiff, as a matter of fact, did not even see the product since

6               it was shipped directly from Union to plaintiff's customers.  The

7               price plaintiff charged to his customers was the list price set by

8               Union and the arrangement plaintiff had with Union throughout

9               their years of dealing was that Union charged plaintiff 5% less than

10              the list price.  Actually, the arrangement more closely approaches a

11              sales commission than a buyer-seller relationship.  The only

12              reasonable inference is that the plaintiff himself profited by any

13              increase in prices set by defendant Union.

14  *Id.*   These facts led the *Obron* Court to conclude that the plaintiff had not suffered any

15  antitrust injury.  *See id.* at 908 (noting that a finding of injury in this case "would subvert the

16  plain language of Section 4 of the Clayton Act which gives a cause of action to 'any person

17  who shall be injured in his business or property . . .'").  MARTA, of course, is exactly like the

18  plaintiff in *Obron* in all material respects:  ███████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ███████████████████████████████████████████.

22          The fact that MARTA never suffered any injury is enough to conclude that MARTA

23  lacks antitrust standing.  *See American Ad Management, Inc.*, 190 F.3d at 1055 ("the Supreme

24  Court has noted that '[a] showing of antitrust injury is necessary, but not always sufficient, to

25  establish standing under § 4.'") (quoting *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S.

26  104, 110 n.5 (1986)).  There are other considerations, however, that support the conclusion

27  that MARTA does not possess antitrust standing.  Paramount among these is the fact that

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   there exists "a more directly injured plaintiff" than MARTA itself.  *Andrx*, 256 F.3d at 816.  If

2   there were a conspiracy that resulted in overcharges, such a conspiracy would result in harm

3   to the membership of MARTA.  It was that membership (█████████████████████) that

4   purchased the televisions and monitors at inflated prices (if, in fact, the prices were inflated at

5   all).  MARTA serves as a poor proxy for its membership.  ███████████████████████

6   ████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████

9   ██████.  Thus, allowing MARTA to proceed as a plaintiff in this action could potentially result

10   in a windfall for companies never harmed by the alleged conspiracy.

   **B.  The Motion For Summary Judgment Should Be Granted Because MARTA Does Not Have Standing With Respect To Its Arizona And Illinois Antitrust Claims**

13   By its Second Claim for Relief, MARTA seeks recovery under the antitrust laws of

14   Arizona and Illinois.   MARTA's state law claims, however, also fail for lack of antitrust

15   standing.

   **1.  MARTA Has Not Been "Injured" Within The Meaning Of The Arizona Antitrust Act**

18   The Arizona Antitrust Act provides that "[a] person . . .  injured in his business or

19   property by a violation of this article may bring an action for . . . damages sustained."  Ariz.

20   Rev. Stat. § 44-1408(B).  The statute contains a clause that provides that courts "may" look to

21   interpretations of federal courts of comparable federal antitrust statutes to guide their own

22   interpretations of the Arizona Antitrust Act.  *See* Ariz. Rev. Stat. 44-1412 ("It is the intent of

23   the legislature that in construing this article, the courts may use as a guide interpretations

24   given by the federal courts to comparable federal antitrust statutes.").  Relying upon the

25   Supreme Court of Arizona's decision in *Bunker's Glass Co. v. Pilkington, PLC*, 206 Ariz. 9

26   (2002), this Court has already held that "the Arizona Supreme Court would not apply *AGC*."

27   *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, Case No. C-07-5944-SC,

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

2013 WL 4505701, at *9 (N.D. Cal. Aug. 21, 2013).   Nonetheless, the Court should still conclude that MARTA does not have standing under the Arizona Antitrust Act.

In its decision, the *Bunker's Glass* Court stated that, "[g]enerally, the best indicator of the meaning of a statute is its plain language."   206 Ariz. at 12 (citation omitted).   The Arizona Antitrust Act provides that only a person who has been "injured in his business or property" may bring an action for damages.  Ariz. Rev. Stat. § 44-1408(B).  As demonstrated above, however, MARTA could not have suffered any injury by reason of any alleged overcharge.  Rather, MARTA would have benefited from any overcharge through ██████ ████████████████.  The fact that MARTA's members may have suffered an injury does not help MARTA's standing here.  The statute plainly states that a person must suffer injury to "his business or property," not some other entity's business or property.

Applying the plain meaning rule, MARTA has not been injured within the meaning of the Arizona Antitrust Act and, as a result, does not have standing to bring an action under that Act.

> **2.       MARTA Does Not Satisfy The Standing Requirements Of The Illinois Antitrust Act**

Previously, this Court stated that it found "no convincing evidence that the Illinois Supreme Court would not apply *AGC*."  2013 WL 4505701, at *10; *see also O'Regan v. Arbitration Forums, Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1977) (federal antitrust standing rules apply under the Illinois Antitrust Act).   Given that the federal standing rules apply to MARTA's claims under the Illinois Antitrust Act, MARTA's Illinois claims fail for the same reason that its federal claims fail.

> **C.       The Motion For Summary Judgment Should Be Granted Because The Customer Control Exception To *Illinois Brick* Bars MARTA's Claims**

There is a separate reason why the motion for summary judgment should be granted with respect to MARTA's federal claim — the customer control exception to *Illinois Brick* bars that claim.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1    Pursuant the rule announced by the Supreme Court in *Illinois Brick*, indirect

2  purchasers are generally barred from recovering, under the federal antitrust laws, damages for

3  their antitrust injury.  *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 735, 745-46 (1977).  The

4  Court has recognized a limited number of exceptions to the direct-purchaser rule, including

5  one allowing an indirect purchaser to sue when it "own[s] or control[s]" the direct purchaser,

6  because, under those conditions, "market forces have been superseded."  *Id.* at 736 n.16.  The

7  Ninth Circuit elaborated that the indirect purchaser's owning or controlling the direct

8  purchaser is illustrative of a situation in which "the effect of the overcharge is essentially

9  determined in advance, without reference to the interaction of supply and demand that

10  complicates the determination in the general case," and the arrangement "circumvent[s]

11  complex market interactions."  *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323,

12  326 n.4 (9th Cir. 1980) (quoting *Illinois Brick*, 431 U.S. at 736).  Put slightly differently, the

13  ownership or control exception "encompass[es] relationships involving such functional

14  economic or other unity between the direct purchaser and either the defendant or the indirect

15  purchaser, that there effectively has been only one sale."  *Sun Microsystems, Inc. v. Hynix*

16  *Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1180 (N.D. Cal. 2009).  Where the indirect

17  purchaser is the owning or controlling party, the exception describes a circumstance "where

18  an indirect purchaser is clearly the party sustaining the injury caused by the fixing of prices."

19  *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 148 (N.D. Cal. 1991).

20  Critically, "[o]nly one purchaser of any specific good whose price has allegedly been fixed

21  may state a claim for damages under the Clayton Antitrust Act" *Id.* at 151 (holding that only

22  the indirect purchaser, not the direct purchaser, had standing to pursue a Sherman Act claim).

23    The Ninth Circuit has defined "control" to mean "to exercise restraint or direction

24  over; dominate, regulate, or command," or "to have the power or authority to guide or

25  manage."  *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 757 (9th Cir. 2012).  The Northern

26  District has described "ownership of a majority of the [allegedly controlled party's] common

27  stock," "interlocking directorates, minority stock ownership, loan agreements . . . , [or] trust

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    agreements" as "examples of the types of facts that would satisfy the control exception." *Sun*

2    *Microsystems*, 608 F. Supp. 2d at 1180.

3            **1.**        **MARTA Was Owned And Controlled By Its Members**

4         By any measure, MARTA fits comfortably in the ownership or control exception.

5    ████████████████████████████████████████████. Lau

6    Decl., Ex. B (Dep. Tr. of Robert Thompson at 39:8-11). The members' control permeated

7    every aspect of MARTA's operations. ████████████████████████████████████

8    ████████████████████████████████████. *Id.* at 40:2-3, 48:9-23.

9    ████████████████████████████████████. *Id.* at 49:8-15. ████████

10   ████████████████████████████████████████████████████

11   ████ (*id.* at 58:25-59:3), ████████████████████████████████████

12   ████████████████████████████████████. Lau Decl., Ex. A (CRT-

13   MARTA-0043911 at CRT-MARTA-0043929, "MARTA Overview"). ████████

14   ████████████████████████████████████████████████████

15   ████████████████████████████████ (Lau Decl., Ex. B (Dep. Tr.

16   of Robert Thompson at 54:3-11)), ████████████████████ (*id.* at 58:21-24 ("Q.

17   ████████████████████████████████████████████████████

18   ████████████████████████████████████ A. ██.")).

19         Through their ████████████████████████████████████████

20   ████████████████████████████, MARTA's members

21   "dominate[d], regulate[d], [and] command[ed]" the cooperative, and had "the power or

22   authority to guide or manage" the group. *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 757

23   (9th Cir. 2012). Those factors also set the instant situation apart from the cases in which

24   courts in the Ninth Circuit have ruled against the applicability of the ownership or control

25   exception. *See, e.g.*, *id.* at 757-58 (finding no ownership or control where the banks owned

26   merely ten percent of the publicly held corporation that in turn owned the ATM network, and

27   did not control the intermediary corporation's board of directors); *Sun Microsystems*, 608 F.

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  Supp. 2d at 1180-1182 (finding the ownership or control exception inapplicable because the

2  indirect purchaser failed to show it had structural control — such as interlocking directorates

3  or officers, stock ownership, or loan or trust agreements — over the direct purchasers, or that

4  the latter were its purchasing agents).

5       Being a ███████████████████████████████████████

6  ██████████████████████████████████████████ (Lau Decl., Ex. A

7  (CRT-MARTA-0043911 at CRT-MARTA-0043913, "MARTA Overview"), the economic

8  unity between MARTA and its member shareholders is undeniable. ████████████████

9  ████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  ████████████████████████. It is little wonder that MARTA itself proclaimed that

13  "█████████████████████" *Id.* at CRT-MARTA-0043936. The unity in interest between

14  MARTA and its members was such that, when merchandise flowed from the vendors to

15  MARTA's member dealers through MARTA, "there effectively has been only one sale." *Sun*

16  *Microsystems*, 608 F. Supp. 2d at 1180.

17       Because █████████████████████████████████████████

18  ██████████████████████████ (Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at

19  131:11-132:5, 132:24-133:8)), "the effect of the overcharge is essentially determined in

20  advance, without reference to the interaction of supply and demand that complicates the

21  determination in the general case." *Royal Printing*, 621 F.2d at 326 n.4. Thus, in MARTA's

22  transactions with its member shareholders, "market forces have been superseded." *Illinois*

23  *Brick*, 431 U.S. at 736 n.16. To the extent that MARTA absorbed any cost increase for its

24  members in order to maintain the price competitiveness of select core models, it did so as an

25  agent of, and on behalf of, its members. *See* Lau Decl., Ex. H (Dep. Tr. of Warren Mann at

26  94:11-23) (explaining, when asked whether it was MARTA or the members who absorbed the

27  cost increases for core models, "I don't think there was anything that MARTA did that

28

MARTA's members didn't do . . . Any money that I spent, I spent on behalf of all the members.").

### 2.    MARTA Was A Purchasing Agent For Its Members

Courts have recognized that, "where a particular industry structure includes a principal-agent relationship between the indirect and direct purchasers such that the two are not distinct economic entities in the purchase chain, the indirect purchaser has standing under *Illinois Brick*." *In re NASDAQ Mkt.-Makers Antitrust Litig*., 169 F.R.D. 493, 505 (S.D.N.Y. 1996); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827 SI, 2011 WL 3738968, at *2-3 (N.D. Cal. Aug. 24, 2011) (recognizing that entities on whose behalf purchasing entities made purchases from the defendants may sue under *Illinois Brick*'s control exception); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 25 (D.D.C. 2001) (finding that plaintiff hospitals have made a sufficient showing of standing where they show that they are members and owners of a group purchasing organization which purchased as their agent the allegedly price-fixed products from the defendants); *In re NASDAQ*, 169 F.R.D. at 506 (recognizing the standing of indirect purchasers who "transacted through non-Defendant owned brokers where those brokers did not function as a distinct economic entity in the chain of purchase or sale"). In *In re Toilet Seat Antitrust Litig.*, the court interpreted the relationship between the indirect purchaser and the direct purchaser "as that of principal and agent rather than buyer and seller," and determined that the ownership or control exception therefore applied. *In re Toilet Seat Antitrust Litig.*, No. 75-184, 1977 WL 1453, at *2 (E.D. Mich. Aug. 24, 1977). In that case, the direct purchaser was a purchasing concern which purchased for the indirect purchaser at a price approved by the indirect purchaser for a flat monthly fee, and which kept no inventory. *Id.* In some instances, the direct purchaser would be billed first for the purchases and, in turn, would bill the indirect purchaser. *Id.*

This case calls for the same conclusion. MARTA defined itself in its charter as a ███████████████████████████. Lau Decl., Ex. C (CRT-MARTA-0043944 at CRT-MARTA-0043944, "MARTA Cooperative Plan"). As such, ████████████████████

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005



1    ██████████████████ (Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at 41:23-25)), ██

2    █████████████████████████████████████████████████████████████████████████.

3    *See, e.g.*, Lau Decl., Ex. A (CRT-MARTA-0043911 at CRT-MARTA-0043929, "MARTA

4    Overview"); Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at 54:3-11, 58:21-24).   In the

5    individual transactions, too, ████████████████████████████████████████████

6    █████████.   Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at 67:13-68:21,

7    69:9-12, 69:20-70:10). ███████████████████████████████████████████████████

8    ██████████████████████████████████████████████████████.   *Id.* at

9    91:2-7, 94:1-15; Lau Decl., Ex. H (Dep. Tr. of Warren Mann at 122:23-123:9); Lau Decl., Ex.

10   E (Dep. Tr. of Aimee Fields at 57:18-23). ████████████████████████████████

11   █████████.   Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at 91:15-17, 93:8-11).   As

12   an entity which was █████████████████████████ (*id.* at 39:8-11), whose purpose was

13   ███████████████████████████████████████ (*id.* at 46:16-18), and which ███████

14   ███████████████ (*id.* at 131:11-132:5, 132:24-133:8), MARTA did not function as a

15   distinct entity in the chain of distribution.

16          **3.    The Court Should Not Follow The Court's Decision In
17                  TFT-LCD**

18          In the *TFT-LCD* case, the defendants filed a motion for summary judgment in which

19   they argued (as we argue here), that MARTA lacks standing based upon the customer control

20   exception to *Illinois Brick*.   On September 4, 2014, the *TFT-LCD* Court denied this motion.

21   *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, MDL No. 1827 (N.D. Cal.

22   Sept. 4, 2014) ("*TFT-LCD* Order") (order denying defendants' motion for summary judgment

23   on Plaintiff MARTA's lack of standing under *Illinois Brick*).   In this order, the *TFT-LCD*

24   Court stated that it was "satisfied that MARTA's members did not exercise such control over

25   it that the exception to *Illinois Brick* should apply to them."   *TFT-LCD* Order at 5.   For the

26   following reasons, we believe that the *TFT-LCD* Court erred in reaching this conclusion.

27          Citing to *In re ATM Fee Antitrust Litigation*, 686 F.3d 741, 757 (9th Cir. 2012), the

28   *TFT-LCD* Court stated that, "[a]lthough each of MARTA's members owned stock in the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    entity, the individual amounts that each member owned were *de minimis*, worth a mere

2    $4,000." *TFT-LCD* Order at 5.  This observation, however, ignores the fact that ███████

3    ████████████████████████████████████████.  The fact that the value of each share was

4    relatively small does not change this fact.  The facts of *ATM Fee* do not support the *TFT-LCD*

5    Court's reasoning.  The Bank Defendants in that case had a "small ownership percentage" of

6    Concord, which itself had a "widely dispersed" ownership.  *ATM Fee*, 686 F.3d at 757.  These

7    facts lead the *ATM Fee* Court to conclude that "Bank Defendants had insufficient ownership

8    interests to control Concord and thus STAR."  *Id.*  In contrast, because the MARTA members

9    ████████████████████████████████, they collectively had the ability to control MARTA.

10        The *TFT-LCD* Court also stated that "MARTA's members participated in committees

11   that then made suggestions to the Executive Director, but it was the Executive Director who

12   ultimately negotiated for the programs."  *TFT-LCD* Order at 5.  In this case, however,

13   ████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████████

15   ████████████████████.  Lau Decl., Ex. B (Dep. Tr. of Robert Thompson at 57:20-24, 58:21-

16   59:3).  ████████████████████████████████████

17   ████████████████████████████████.  *Id.* at 67:9-12.

18        According to the *TFT-LCD* Court, "MARTA independently calculated and set the

19   resale price."  *TFT-LCD* Order at 5.  In this case, however, ████████████████████████

20   ████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████

22   ███████████████████████████████████████████████████.  Lau Decl.,

23   Ex. B (Dep. Tr. of Robert Thompson at 126:10-15, 131:2-132:5, 132:24-133:14).

24        According to the *TFT-LCD* Court, "MARTA was run not by its members, but by its

25   Board of Directors."  *TFT-LCD* Order at 5.  ████████████████████████████████

26   ████████████████████████████████████████████████████.  Lau Decl., Ex.

27   B (Dep. Tr. of Robert Thompson at 40:2-3, 48:9-23).

28

DEFENDANTS' NOTICE OF MOTION AND MOTION
FOR SUMMARY JUDGMENT WITH RESPECT TO MARTA
Case No. 07-5944 SC
MDL No. 1917
22

Examining the undisputed facts of this case, the Court should conclude that MARTA's members both owned and controlled MARTA. In the event that the Court is inclined to follow the *TFT-LCD* Order, we note that the *TFT-LCD* Order only addressed application of the customer control exception to *Illinois Brick*. That order did not address the standing arguments addressed in Sections V.A and V.B of this motion.

## VI.   CONCLUSION

For these reasons, the Court should grant this motion and dismiss MARTA's complaint in its entirety.

Respectfully submitted,

Dated:  November 7, 2014           **WHITE & CASE**LLP

By:  _/s/ Lucius B. Lau_
     Christopher M. Curran (*pro hac vice*)
     ccurran@whitecase.com
     Lucius B. Lau (*pro hac vice*)
     alau@whitecase.com
     Dana E. Foster (*pro hac vice*)
     defoster@whitecase.com
     701 Thirteenth Street, N.W.
     Washington, DC  20005
     tel.: (202) 626-3600
     fax: (202) 639-9355


     *Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America   Electronic Components, Inc.*

BAKER BOTTS LLP

By:  /s/ John M. Taladay
        JOHN M. TALADAY (*pro hac vice*)
        john.taladay@bakerbotts.com
        JOSEPH OSTOYICH (*pro hac vice*)
        joseph.ostoyich@bakerbotts.com
        ERIK T. KOONS (*pro hac vice*)
        erik.koons@bakerbotts.com
        CHARLES M. MALAISE (*pro hac vice*)
        Charles.malaise@bakerbotts.com
        BAKER BOTTS LLP
        1299 Pennsylvania Avenue, N.W.
        Washington DC 20004-2400
        Telephone:  (202) 639-7700
        Facsimile:  (202) 639-7890

        JON V. SWENSON (SBN 233054)
        jon.swenson@bakerbotts.com
        BAKER BOTTS LLP
        1001 Page Mill Road
        Building One, Suite 200
        Palo Alto, CA 94304
        Telephone:  (650) 739-7500
        Facsimile:  (650) 739-7699
        E-mail:  jon.swenson@bakerbotts.com

        *Attorneys for Defendants Koninklijke Philips
        N.V., Philips Electronics North America
        Corporation, Philips Taiwan Ltd., and
        Philips do Brasil, Ltda.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

By: */s/ Jeffrey L. Kessler*
    WINSTON & STRAWN LLP
    Jeffrey L. Kessler (*pro hac vice*)
    A. Paul Victor (*pro hac vice*)
    Aldo A. Badini Cal. Bar No. 257086
    Eva W. Cole (*pro hac vice*)
    Molly M. Donovan (*pro hac vice*)
    200 Park Avenue
    New York, NY 10166
    Telephone:(212) 294-4692
    Facsimile: (212) 294-4700
    Email:    jkessler@winston.com
              abadini@winston.com
              pvictor@winston.com
              ewcole@winston.com
              mmdonovan@winston.com


    WEIL, GOTSHAL & MANGES LLP
    Steven A. Reiss (*pro hac vice*)
    David L. Yohai (*pro hac vice*)
    Adam C. Hemlock (*pro hac vice*)
    767 Fifth Avenue
    New York, NY 10153-0119
    Telephone:(212) 310-8000
    Facsimile: (212) 310-8007
    Email:    steven.reiss@weil.com
              david.yohai@weil.com
              adam.hemlock@weil.com

    *Attorneys for Defendants Panasonic*
    *Corporation (f/k/a Matsushita Electric*
    *Industrial Co., Ltd.), Panasonic Corporation*
    *of North America, and MT Picture Display*
    *Co., Ltd.*

1

2       By: /s/ Michael W. Scarborough

3          SHEPPARD MULLIN RICHTER &
           HAMPTON LLP
4          Gary L. Halling, Cal. Bar No. 66087
           James L. McGinnis, Cal. Bar No. 95788
5          Michael W. Scarborough, Cal. Bar No.
           203524
6          Four Embarcadero Center, 17th Floor
           San Francisco, CA  94111-4109
7          Telephone:(415) 434-9100
           Facsimile: (415) 434-3947
8          E-mail:  ghalling@sheppardmullin.com
9                    jmcginnis@sheppardmullin.com
                     mscarborough@sheppardmullin.com
10
           *Attorneys for Defendants Samsung SDI*
11         *America, Inc.; Samsung SDI Co., Ltd.;*
           *Samsung SDI (Malaysia) SDN. BHD.;*
12         *Samsung SDI Mexico S.A. DE C.V.; Samsung*
           *SDI Brasil Ltda.; Shenzen Samsung SDI Co.,*
13         *Ltd. and Tianjin Samsung SDI Co., Ltd.*

14

15

16      By: /s/ Eliot A. Adelson

17         KIRKLAND & ELLIS LLP
           Eliot A. Adelson Cal. Bar. No. 205284
18         555 California Street, 27th Floor
           San Francisco, CA 94104
19         Telephone:(415) 439-1413
           Facsimile: (415) 439-1500
20         Email:    eadelson@kirkland.com

21
           *Attorneys for Defendants Hitachi, Ltd.,*
22         *Hitachi Displays, Ltd. (n/k/a Japan Display*
           *Inc.), Hitachi Asia, Ltd., Hitachi America,*
23         *Ltd., and Hitachi Electronic Devices (USA),*
           *Inc.*
24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

By: /s/ Rachel S. Brass

GIBSON, DUNN & CRUTCHER LLP
Rachel S. Brass Cal. Bar. No. 219301
Joel S. Sanders Cal. Bar. No. 107234
Austin V. Schwing Cal. Bar. No. 211696
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:(415) 393-8200
Facsimile: (415) 393-8306
Email:     rbrass@gibsondunn.com
           jsanders@gibsondunn.com
           aschwing@gibsondunn.com

*Attorneys for Defendants Chunghwa Picture
Tubes, Ltd. and Chunghwa Picture Tubes
(Malaysia)*

By: /s/ Hojoon Hwang

MUNGER, TOLLES & OLSON LLP
Hojoon Hwang, Cal. Bar. No. 184950
William D. Temko, Cal. Bar. No. 98858
Laura K. Lin, Cal. Bar. No. 281542
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Facsimile: (415) 512-4077

*Attorneys For Defendants LG Electronics,
Inc. and LG Electronics U.S.A., Inc.*

1

2 By: /s/ Kathy L. Osborn

3  FAEGRE BAKER DANIELS LLP
  Kathy L. Osborn (*pro hac vice*)

4  Ryan M. Hurley (*pro hac vice*)

5  300 N. Meridian Street, Suite 2700
  Indianapolis, IN 46204

6  Telephone: (317) 237-0300
  Facsimile: (317) 237-1000

7  kathy.osborn@FaegreBD.com

8  ryan.hurley@FaegreBD.com

9  Calvin L. Litsey (SBN 289659)

10  Faegre Baker Daniels LLP
  1950 University Avenue, Suite 450

11  East Palo Alto, CA 94303-2279

12  Telephone: (650) 324-6700
  Facsimile: (650) 324-6701

13  calvin.litsey@FaegreBD.com

14

15  *Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.*

16

17

18 By: /s/ Michael T. Brody

19  JENNER&BLOCK LLP
  Terrence J. Truax (*pro hac vice*)

20  Michael T. Brody (*pro hac vice*)
  353 North Clark Street

21  Chicago, Illinois 60654-3456

22  Telephone: (312) 222-9350
  Facsimile: (312) 527-0484

23  ttruax@jenner.com

24  mbrody@jenner.com

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DEFENDANTS' NOTICE OF MOTION AND MOTION
FOR SUMMARY JUDGMENT WITH RESPECT TO MARTA
Case No. 07-5944 SC
MDL No. 1917
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Brent Caslin (Cal. Bar. No. 198682)
JENNER&BLOCK LLP
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
bcaslin@jenner.com

*Attorneys for Defendants Mitsubishi Electric
Corporation, Mitsubishi Electric US, Inc.
and, Mitsubishi Electric Visual Solutions
America, Inc.*

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Nathan Lane, III*
    Mark Dosker
    Nathan Lane, III
    275 Battery Street, Suite 2600
    San Francisco, CA  94111
    Telephone:  415.954.0200
    Facsimile:  415.393.9887
    Email:  mark.dosker@squirepb.com
    nathan.lane@squirepb.com

Donald A. Wall (*Pro Hac Vice*)
SQUIRE PATTON BOGGS (US) LLP
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone:  602.528.4000
Facsimile:  602.253.8129
Email:  donald.wall@squirepb.com

*Attorneys for Defendant Technologies
Displays Americas LLC with respect to all
cases except Office Depot, Inc. v.
Technicolor SA, et al. and Sears, Roebuck
and Co., et al v. Technicolor SA, et al.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

By: /s/ Jeffrey I. Zuckerman

Jeffrey I. Zuckerman (Pro Hac Vice)
Ellen Tobin (Pro Hac Vice)
101 Park Avenue
New York, New York 10178
Telephone: 212.696.6000
Facsimile: 212.697.1559
Email: jzuckerman@curtis.com
etobin@curtis.com

Arthur Gaus (SBN 289560)
DILLINGHAM & MURPHY, LLP
601 California Street, Suite 1900
San Francisco, California 94108
Telephone: 415.397.2700
Facsimile: 415.397.3300
Email: asg@dillinghammurphy.com

*Attorneys for Defendant Technologies Displays Americas LLC with respect to Office Depot, Inc. v. Technicolor SA, et al. and Sears, Roebuck and Co. et al. v. Technicolor SA, et al.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## CERTIFICATE OF SERVICE

On November 7, 2014, I caused a copy of the "DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO MARTA" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

By:   __/s/ Lucius B. Lau_____
      Lucius B. Lau (*pro hac vice*)

DEFENDANTS' NOTICE OF MOTION AND MOTION
FOR SUMMARY JUDGMENT WITH RESPECT TO MARTA
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION

This Document Relates to:

*P.C. Richard & Son Long Island Corp., et al. v.
Hitachi, Ltd., et al.*, No. 12-cv-02648;

*P.C. Richard & Son Long Island Corp., et al. v.
Technicolor SA, et al.*, No. 13-cv-05725.

Case No. 07-5944 SC
MDL No. 1917

**[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT WITH
RESPECT TO MARTA**

1    Upon consideration of Defendants' Motion for Summary Judgment With Respect to

2  MARTA and any responses and replies thereto, it is hereby:

3    ORDERED that the motion is GRANTED; and it is further

4    ORDERED that MARTA Cooperative of America, Inc.'s First Amended Complaint

5  is dismissed with prejudice.

6

7    **IT IS SO ORDERED.**

8

9

10  Dated: _____    _____

11                                      HONORABLE SAMUEL CONTI
                                        UNITED STATES DISTRICT JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

[PROPOSED] ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO MARTA
Case No. 07-5944-SC
MDL No. 1917

1   Christopher M. Curran (*pro hac vice*)
    ccurran@whitecase.com
2   Lucius B. Lau (*pro hac vice*)
    alau@whitecase.com
3   Dana E. Foster (*pro hac vice*)
    defoster@whitecase.com
4
5   White & Case LLP
    701 Thirteenth Street, N.W.
6   Washington, DC  20005
    Telephone:  (202) 626-3600
7   Facsimile:  (202) 639-9355
8
9   *Counsel to Defendants Toshiba Corporation,*
    *Toshiba America, Inc., Toshiba America Consumer Products, LLC, Toshiba America*
10  *Information Systems, Inc., and Toshiba America Electronic Components, Inc.*
11
12              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
13                (SAN FRANCISCO DIVISION)
14

15   IN RE: CATHODE RAY TUBE (CRT)              Case No. 07-5944 SC
     ANTITRUST LITIGATION                       MDL No. 1917
16

17   This Document Relates To:
18
     *P.C. Richard & Son Long Island Corp., et al.*
19   *v. Hitachi, Ltd., et al.*, No. 12-cv-02648;          **DECLARATION OF**
                                                          **LUCIUS B. LAU IN SUPPORT OF**
20                                                        **DEFENDANTS' MOTION FOR**
     *P.C. Richard & Son Long Island Corp., et al.*       **SUMMARY JUDGMENT WITH**
21   *v. Technicolor SA, et al.*, No. 13-cv-05725.         **RESPECT TO MARTA**
22

23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

I, Lucius B. Lau, hereby declare as follows:

1.      I am an attorney with the law firm of White & Case LLP, counsel for Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Consumer Products, LLC, Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc.

2.      I submit this declaration in support of the Defendants' Motion For Summary Judgment With Respect to MARTA, filed contemporaneously herewith.  I have personal knowledge of the facts stated herein, and I could and would competently testify thereto if called as a witness.

3.      Attached hereto as Exhibit A is a true and correct copy of a document produced by MARTA, bearing the bates numbers CRT-MARTA-0043911 through CRT-MARTA-0043943 ("MARTA Overview").

4.      Attached hereto as Exhibit B is a true and correct copy of excerpts from the Deposition Transcript of Robert Thompson, dated February 14, 2014.

5.      Attached hereto as Exhibit C is a true and correct copy of a document produced by MARTA, bearing the bates numbers CRT-MARTA-0043944 through CRT-MARTA-0044004 ("MARTA Cooperative Plan").

6.      Attached hereto as Exhibit D is a true and correct copy of a document produced by MARTA, bearing the bates numbers CRT-MARTA-0000089 through CRT-MARTA-0000101 ("MARTA Audited Financial Statements").

7.      Attached hereto as Exhibit E is a true and correct copy of excerpts from the Deposition Transcript of Aimee Fields, dated June 4, 2014.

8.      Attached hereto as Exhibit F is a true and correct copy of a document produced by MARTA, bearing the bates numbers CRT-MARTA-0005185 through CRT-MARTA-0005189.

9.      Attached hereto as Exhibit G is a true and correct copy of a document produced by MARTA, bearing the bates numbers CRT-MARTA-0044008 through CRT-MARTA-0044042 ("MARTA Business Plan").

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    10.    Attached hereto as Exhibit H is a true and correct copy of excerpts from the

2  Deposition Transcript of Warren Mann, dated July 25, 2014.

3    11.    Attached hereto as Exhibit I is a true and correct copy of a document produced

4  by MARTA, bearing the bates numbers CRT-MARTA-0043860 through CRT-MARTA-

5  0043861 ("Resource Plus Membership List").

6    12.    Attached hereto as Exhibit J is a true and correct copy of a document

7  produced by MARTA, bearing the bates numbers CRT-MARTA-0043895 through CRT-

8  MARTA-0043897 ("MARTA Common Stock Reconciliation List").

9

10    I declare under penalty of perjury under the laws of the United States of America that

11  the foregoing is true and correct.

12

13

14    Executed this 7th day of November, 2014, in Washington, D.C.

15

16

17    _____

18    Lucius B. Lau

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

Filed Under Seal

EXHIBIT B

Filed Under Seal

EXHIBIT C

Filed Under Seal

EXHIBIT D

Filed Under Seal

EXHIBIT E

Filed Under Seal

EXHIBIT F

Filed Under Seal

EXHIBIT G

Filed Under Seal

EXHIBIT H

1           IN THE UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                 SAN FRANCISCO DIVISION

4    ----------------------------------x

5    IN RE:  CATHODE RAY TUBE (CRT)
     ANTITRUST LITIGATION
6
          No.:  3:07-cv-05944 SC--MDL No. 1917
7         Individual Action No.:  3:11-cv-05514

8    ----------------------------------x

9

10

11                 FRIDAY, JULY 25, 2014

12                     9:08 a.m.

13

14

15

16      Video Deposition of WARREN MANN, III, held

17   at the offices of WHITE & CASE, LLP, 1155

18   Avenue of the Americas, New York, New York

19   10036, before Suzanne J. Stotz, a Certified

20   Court Reporter, and a Notary Public of the

21   State of New York.

22

23

24

25

                          1

BARKLEY
Court Reporters

11:12  1    then you've got to sell it to him at 280 to go

11:12  2    399.99.  You don't want it to be 409.  And if

11:12  3    the manufacturer has a $5 price increase,

11:12  4    you're either going to shorten their margin or

11:12  5    you're going to lose the price point.

11:12  6              But we had a third option.  And the

11:12  7    third option was you know what, we'll raise the

11:12  8    price a dollar on six other items, but we'll

11:12  9    hold this critical price point because it's an

11:12  10   important part of our business.

11:12  11        Q.    You're making reference to the

11:12  12   so-called core models; is that correct?

11:12  13        A.    Yes.

11:12  14        Q.    Okay.  When you talked about

11:12  15   absorbing the cost, would that be something

11:12  16   that MARTA would do or MARTA's members would

11:12  17   do?

11:12  18        A.    I don't think there was anything

11:12  19   that MARTA did that MARTA's members didn't do.

11:12  20   MARTA was still a cooperative.  We were a

11:13  21   not-for-profit organization owned by the

11:13  22   members.  Any money that I spent, I spent on

11:13  23   behalf of all the members.

11:13  24              By the way, a good reason to have a

11:13  25   committee because at least I could say, the

94

BARKLEY
Court Reporters

12:00  1          And except for a brief period, we

12:00  2  didn't even have a warehouse.  Our job was to

12:00  3  help the members get better pricing, net

12:00  4  pricing, programs, sometimes other advantages

12:00  5  like availability, because we operated as an

12:00  6  entity.

12:00  7          At one time MARTA was the second

12:00  8  largest Toshiba dealer in the country, best by

12:00  9  being the largest; but that was only made

12:00 10  possible because of the way we had to do the

12:01 11  billing.  Had the members purchased on their

12:01 12  own, they would have been all splintered out;

12:01 13  and I don't think the largest MARTA member

12:01 14  would have been in the top 50 Toshiba.

12:01 15      Q.    You said that except for a brief

12:01 16  period MARTA had no warehouses.  During what

12:01 17  period did MARTA have a warehouse?

12:01 18      A.    I don't know when it started; but

12:01 19  when I was brought in, they had a warehouse in

12:01 20  Chicago.

12:01 21      Q.    And what was the purpose of that

12:01 22  Chicago warehouse?

12:01 23      A.    I speak now only from my

12:01 24  understanding of what was explained to me.  So,

12:01 25  you know, I didn't make the decision.  But it's

122

BARKLEY
Court Reporters

12:01  1    often thought that if you have a place to

12:01  2    source stuff, you can make a great buy and

12:01  3    bring it even if you don't have somebody

12:01  4    willing to take it.

12:01  5                  If I can move 2000 of these

12:01  6    tomorrow, well, it will take my a while to get

12:01  7    orders.  I don't have a while.  Buy them now or

12:02  8    I'll sell them someplace else.  Oh, bring them

12:02  9    in the warehouse.  We'll sell them.  The

12:02  10   trouble is it's too volatile a business, and it

12:02  11   would be a good buy at the time.  Then you find

12:02  12   out that the reason it was a good buy was there

12:02  13   was something better in the wings, and now

12:02  14   you're stuck with the product.

12:02  15                  And when I came to the company,

12:02  16   there was inventory that had been lingering in

12:02  17   that warehouse for a while.  So we liquidated

12:02  18   it and shut down and eliminated the overhead.

12:02  19        Q.      When was the warehouse shut down?

12:02  20        A.      I'm going to guess within a year of

12:02  21   my arrival, so maybe the middle of 2000.

12:02  22                  MR. LAU:  Mr. Mann, thank you for

12:02  23        your time today.  I have no further

12:02  24        questions.

12:02  25                  I believe we have one defense

123

BARKLEY
Court Reporters

# EXHIBIT I

# Filed Under Seal

EXHIBIT J

Filed Under Seal