JEFFREY L. KESSLER (*pro hac vice*)
Email: jkessler@winston.com
A. PAUL VICTOR (*pro hac vice*)
Email: pvictor@winston.com
ALDO A. BADINI (257086)
Email: abadini@winston.com
EVA W. COLE (*pro hac vice*)
Email: ewcole@winston.com
MOLLY M. DONOVAN (*pro hac vice*)
Email: mmdonovan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-4692
Facsimile: (212) 294-4700

*Attorneys for Defendants Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.) and Panasonic Corporation of North America*

Additional Counsel Listed on Signature Pages

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION**<br><br>This Document Relates to:<br><br>INDIRECT-PURCHASER ACTIONS<br><br>*Sharp Electronics Corp., et. al. v. Hitachi Ltd., et al.*, No. 13-cv-01173<br><br>*Electrograph Sys., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-01656;<br><br>*Electrograph Sys., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05724;<br><br>*Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502;<br><br>*Siegel v. Technicolor SA, et al.*, No. 13-cv-05261;<br><br>*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, | **Case No. 07-5944 SC**<br>**MDL No. 1917**<br><br>**DEFENDANTS PANASONIC CORPORATION OF NORTH AMERICA'S AND PANASONIC CORPORATION'S (F/K/A MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD.) NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>[Proposed] Order Granting Defendants' Dispositive Motion<br><br>Judge: Hon. Samuel P. Conti<br>Court: Courtroom 1, 17th Floor<br>Date: February 6, 2015 10 a.m.<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

No. 11-cv-05513;

*Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05264;

*Target Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514;

*Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686;

*Sears, Roebuck & Co., et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514;

*Sears, Roebuck & Co., et al. v. Technicolor SA, et al.*, No. 13-cv-05262;

*Interbond Corp. of Am. v. Hitachi, Ltd., et al.*, No. 11-cv-06275;

*Interbond Corp. of Am. v. Technicolor SA, et al.*, No. 13-cv-05727;

*Office Depot, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06276;

*Office Depot, Inc. v. Technicolor SA, et al.*, No. 13-cv-05726;

*CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06396;

*P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02648;

*P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al.*, No. 13-cv-05725;

*Schultze Agency Servs., LLC v. Hitachi, Ltd., et al.*, No. 12-cv-02649;

*Schultze Agency Servs., LLC v. Technicolor SA, et al.*, No. 13-cv-05668;

*Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, No. 13-cv-00157

*Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 14-cv-02510.

DEFS.' PNA'S AND PANASONIC CORP.'S
NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT

Case No. 07-5944 SC
MDL NO. 1917

**NOTICE OF MOTION AND MOTION**

To all parties and their attorneys of record:

Please take notice that on February 6, 2015, at 10 a.m. or as soon thereafter as this matter may be heard before the Honorable Samuel P. Conti, Senior U.S. District Court Judge, U.S. District Court for the Northern District of California, Courtroom No. 1, 17th Fl., 450 Golden Gate Avenue, San Francisco, California 94102, the moving Defendants listed on the signature pages below will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 56(a), for summary judgment in Defendants' favor based upon Plaintiffs' failure to put forth sufficient evidence to establish that Panasonic Corporation and Panasonic North America participated in the alleged conspiracy.

This Motion is based upon this Notice and Motion, the Statement of the Issue, the accompanying Memorandum of Points and Authorities, the accompanying declarations and exhibits thereto and other materials in the record, argument of counsel, and such other matters as the Court may consider.

**STATEMENT OF THE ISSUE**

Whether Panasonic Corporation ("Panasonic Corp.") and Panasonic North America ("PNA") are entitled to summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure against Plaintiffs' federal antitrust claims and claims brought under the laws of Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin, because the evidence presented fails to create a genuine issue of material fact as to Panasonic Corp.'s and PNA's participation in the alleged conspiracy to fix or stabilize prices of cathode ray tubes.

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUE .................................................................................................. iii

PRELIMINARY STATEMENT ................................................................................................ 1

    A.    There Is No Direct Evidence that Panasonic Corp. or PNA Participated in the Alleged CRT Conspiracy Where Target Prices for CRTs Allegedly Were Fixed ............................................................................................. 2

    B.    Plaintiffs' Circumstantial Evidence Is Insufficient To Permit A Reasonable Jury To Conclude That Panasonic Corp. or PNA Participated In The Alleged CRT Conspiracy .................................................................................. 3

STATEMENT OF UNDISPUTED FACTS ............................................................................... 4

    A.    Panasonic Corp. and PNA's CRT Businesses ........................................................ 4

    B.    No Direct Evidence Of Panasonic Corp.'s or PNA's Participation in The Alleged Conspiracy ................................................................................................. 4

        1.    The Undisputed Evidence Shows That Panasonic Corp. and PNA Did Not Participate in Any ███████████████ ██████████████████████ .................................................. 4

        2.    There Is No Other Direct Evidence that Panasonic Corp. or PNA Joined the Alleged CRT Cartel ................................................................. 7

    C.    Similarly, There Is No Circumstantial Evidence to Support an Inference That Panasonic Corp. or PNA Participated In the Alleged CRT Conspiracy and, In Fact, the Undisputed Circumstantial Evidence Shows Panasonic Corp. and PNA Competed With Other Defendants in the Sale of CRTs ................ 7

        1.    The Undisputed Evidence Shows That t████████ ████████████████ That Could Not Even Circumstantially Tie Panasonic Corp. or PNA to the Broad-Ranging Conspiracy That Plaintiffs Allege ...................................................................................... 7

        2.    The Undisputed Evidence Shows That Panasonic Corp.'s and PNA's Pricing of CRTs Was More Consistent with Competition Than With  Participation in the Alleged Conspiracy .................................... 9

        3.    The Undisputed Evidence Shows That Panasonic Corp.'s and PNA's Market Share For CPTs and CDTs Was Very Low ...................... 10

        4.    The Undisputed Evidence Shows That Panasonic Corp.'s and PNA's Capacity Decisions Were Competitive ........................................... 10

        5.    The Undisputed Evidence Shows That Panasonic Corp. and PNA Did Not Have an Economic Motive to Participate in the Alleged Twelve-Year CRT Conspiracy ................................................................. 11

ARGUMENT ........................................................................................................................... 12

I.    SUMMARY JUDGMENT STANDARD ........................................................................ 12

II.     THERE IS NO DIRECT EVIDENCE THAT PANASONIC CORP. OR PNA
        PARTICIPATED IN THE ALLEGED CONSPIRACY ..................................................... 13

III.    THERE IS ALSO NO CIRCUMSTANTIAL EVIDENCE SUFFICIENT TO
        SUPPORT AN INFERENCE THAT PANASONIC CORP. OR PNA
        PARTICIPATED IN THE ALLEGED CONSPIRACY ..................................................... 15

        A.      The Undisputed Evidence Shows That ███████████████
                ████████████████████ Were At Least as Consistent with an
                Inference of Independent Behavior as With Participation in the Alleged
                Conspiracy ......................................................................................................... 15

        B.      Plaintiffs' Conspiracy Claims Against Panasonic Corp. and PNA Make No
                Economic Sense and Plaintiffs Have Failed to Come Forward with
                Significant Probative Evidence to Exclude the Possibility that Panasonic
                Corp. and PNA Acted Independently of the Alleged CRT Conspiracy ................. 18

**CONCLUSION** ....................................................................................................................... 20

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
    181 F.3d 216 (2d Cir. 1999) ................................................................................. 1

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................... 12

*City of Moundridge v. Exxon Mobil Corp.*,
    No. 04-940 (RWR), 2009 WL 5385975 (D.D.C. Sept. 30, 2009), aff'd 409 Fed. App'x.
    362 (D.C. Cir. 2011) ...................................................................................... 16

*Fed. Agr. Mortg. Corp. v. It's a Jungle Out There, Inc.*,
    No. C 03-3721 VRW 2005 WL 3325051 (N.D. Cal. Dec. 7, 2005) ....................................... 15

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999) ................................................................ 13, 16, 18

*In re Citric Acid Litig.* ("*Citric Acid II*"),
    191 F.3d 1090 (9th Cir. 1999) ..................................................... 12, 13, 16, 18

*In re Citric Acid Litig.* ("*Citric Acid I*") ,
    996 F. Supp. 951 (N.D. Cal. 1998), *aff'd*, 191 F.3d 1090 (9th Cir. 1999) ...................... *passim*

*In re Optical Disk Drive Antitrust Litig.*,
    No. 3:10-md-2143 RS, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011) .................................... 18

*Market Force Inc. v. Wauwatosa Realty Co.*,
    906 F.2d 1167 (7th Cir. 1990) ........................................................................ 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................. *passim*

*Mitchael v. Intracorp, Inc.*,
    179 F.3d 847 (10th Cir. 1999) ........................................................................ 17

*Oreck Corp. v. Whirlpool Corp.*,
    639 F.2d 75 (2d Cir. 1980) ........................................................................... 16

*Sancap Abrasives Corp. v. Swiss Indus. Abrasives*,
    19 F. App'x 181 (6th Cir. 2001) ...................................................................... 16

*Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*,
    786 F.2d 1400 (9th Cir. 1986) ........................................................................ 17

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978) ............................................................................. 1, 13, 18

*Williamson Oil Co., Inc. v. Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003) ................................................................................ 17

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*,
    513 F. Supp. 1100 (E.D. Pa. 1981) ............................................................................ 2

**STATUTES AND RULES**

Clayton Act ..................................................................................................................... 1

Sherman Act ......................................................................................................... *passim*

Fed. R. Civ. P. 56(a) ............................................................................................. 3, 12

DEFS.' PNA'S AND PANASONIC CORP.'S                                    Case No. 07-5944 SC
NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT                          MDL NO. 1917

## PRELIMINARY STATEMENT

The indirect purchaser class plaintiffs ("IPPs") and direct action plaintiffs ("DAPs") (collectively, "Plaintiffs") allege a global, twelve-year price-fixing conspiracy among manufacturers of cathode ray tubes, also known as "CRTs."  Plaintiffs assert both federal and state claims against Panasonic Corporation ("Panasonic Corp.") and Panasonic North America ("PNA") for their alleged involvement in that conspiracy, which purportedly involved both computer monitor tubes ("CDTs") and television tubes ("CPTs").[1]  But Plaintiffs have failed to set forth sufficient evidence tying either Panasonic Corp. or PNA to that claimed conspiracy, under any law.[2]  To the contrary, the record is absent any evidence capable of raising a genuine issue of material fact that it was more likely than not that either Panasonic Corp. or PNA participated in the alleged conspiracy.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) (holding that "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy").  Absent such evidence, both Panasonic Corp. and PNA are entitled to summary judgment in their favor regardless of whether Plaintiffs come forward with evidence sufficient to create a triable issue of fact that *other* Defendants did.  *See, e.g.*, *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 463 (1978) (liability for price-fixing "c[an] only be predicated on the *knowing involvement of each defendant, considered individually*, in the conspiracy charged") (emphasis added); *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999) (per curiam) ("There must . . . be some evidence of actual knowledge of, and participation in, the illegal scheme in order to establish a violation of the antitrust laws by a particular association member.").

In assessing the record evidence on this issue, Panasonic Corp. and PNA recognize that the Court must assess all of the evidence together and not compartmentalize Plaintiffs' purported

---

[1] ViewSonic, Target, Circuit City, Sharp and Tech Data only assert claims under the Sherman Act and Clayton Act and do not assert any state law claims.

[2] This motion does not seek summary judgment on behalf of MT Picture Display Co., Ltd. ("MTPD"), a joint venture formed by Panasonic Corp. and Toshiba Corporation in April 2003, when Panasonic Corp. left the CRT business entirely (having already left the CDT business by 2001).

proof.  However, as in the landmark *Zenith* litigation, "[n]othing plus nothing times nothing still equals nothing."  *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 513 F. Supp. 1100, 1311 (E.D. Pa. 1981).  As shown below, Plaintiffs here have failed to provide any basis for a fact finder to reasonably conclude that either Panasonic Corp. or PNA ███████████████████ ████████████████████████████████████████████████████████████████████[3] participated in the conspiracy that has been alleged in this case.

**A.     There Is No Direct Evidence that Panasonic Corp. or PNA Participated in the Alleged CRT Conspiracy Where Target Prices for CRTs Allegedly Were Fixed**

There is no direct evidence – documentary or testimonial – that Panasonic Corp. or PNA reached agreements with competitors involving CRTs sold in the U.S.  Nor have Plaintiffs adduced any evidence that Panasonic Corp. or PNA attended ████████████████████ ████████████████████████████████████████████████████████████████████ To the contrary, the undisputed evidence demonstrates that no employee of either Panasonic Corp. or PNA attended a single multilateral competitor meeting involving CDTs or CPTs. ████████████████ ████████████████████████████████████████████████████████████████████ These facts are not disputed and, as a consequence, neither Panasonic Corp. nor PNA were ever charged by the Department of Justice ("DOJ") nor implicated in the plea agreement entered into by Samsung SDI.

Instead, Plaintiffs' evidence with respect to Panasonic Corp. and PNA, as discussed below, is entirely circumstantial and, when this evidence is evaluated together, it becomes clear that it is at least equally, if not more, consistent with the conclusion that Panasonic Corp. and PNA were competing, and did not participate in the alleged CRT cartel.

---

[3] Declaration of Eva Cole, dated Nov. 7, 2014 ("Cole Decl."), Ex. 1, Expert Report of Dr. Darrell Williams on Behalf of Defendants Panasonic Corporation, Matsushita Toshiba Picture Display Co. Ltd., and Panasonic Corporation of North America, dated Aug. 5, 2014 (hereinafter, "Williams Report"), ¶¶ 7-8, Exs. C-1, C-2.

**B.**     **Plaintiffs' Circumstantial Evidence Is Insufficient To Permit A Reasonable Jury To Conclude That Panasonic Corp. or PNA Participated In The Alleged CRT Conspiracy**

The circumstantial evidence regarding Panasonic Corp. and PNA does not support an inference of their claimed participation in the alleged conspiracy.

Further, the economic evidence is most consistent with the conclusion that Panasonic Corp. and PNA were competing with the other Defendants in the sale of CRTs as the market was collapsing, not participating in the alleged conspiracy.

Considering all of this evidence together, Plaintiffs have simply failed to meet their burden under Rule 56(a) to come forward with admissible and probative evidence capable of raising a

3

genuine issue of material fact that Panasonic Corp. or PNA participated in the CRT conspiracy that has been alleged.

## STATEMENT OF UNDISPUTED FACTS

### A.     Panasonic Corp. and PNA's CRT Businesses

Panasonic Corp. was a manufacturer of CRTs based in Osaka, Japan.  At the time of the alleged CRT conspiracy, Panasonic Corp. operated under the name Matsushita Electric Industrial Co., Ltd. ("MEI").[4]  Panasonic Corp. stopped manufacturing and selling CDTs in 2001[5] and exited the CPT business in April of 2003.[6]

PNA was the CRT sales subsidiary of Panasonic Corp. in the U.S. until Panasonic Corp. exited the CRT business in 2003.[7]  PNA (then Matsushita Electric Corporation of America ("MECA")) also owned a tube factory in the United States, called Matsushita Display Devices Company of America ("MDDA"), which manufactured CPTs in the U.S. through 2003.[8]  PNA never manufactured CDTs.[9]

### B.     No Direct Evidence Of Panasonic Corp.'s or PNA's Participation in The Alleged Conspiracy

#### 1.     The Undisputed Evidence Shows That Panasonic Corp. and PNA Did Not Participate in Any ███████████████████████████████████

Plaintiffs' experts, Dr. Janet Netz and Prof. Kenneth Elzinga, identified ███████████

---

[4] *See, e.g.*, Defendant MTPD's Answer to the Best Buy Plaintiffs' First Amended Cmplt., No. 07-cv-05944, Dkt. No. 2172 (N.D. Cal. Nov. 4, 2013), ¶ 40.

[5] *See* Cole Decl., Ex. 2, Muramatsu (Panasonic) Tr. 69:18-20 ████████████████████████ ; *id.*, Ex. 3, Kinoshita (Panasonic) Tr. 40:13-14 ████████████████ .  Further, witnesses from other companies have similarly confirmed Panasonic Corp.'s exit from the CDT business by 2001.  *See id.*, Ex. 4, Liu (Chunghwa) Tr. 530:22-533:17.

[6] *Id.*, Ex. 5, TSB-CRT-00018162, at Art. 3(1)(3)(i).

[7] *See id.*, Ex. 6, PC-0020552.

[8] *See id.*, Ex. 7, MTPD-0176401.

[9] *Id.*, Ex. 1, Williams Report, ¶ 8 n.6.

4



[10] *Id.*, Ex. 8, Sur-Rebuttal Report of Dr. Darrell Williams, dated Nov. 6, 2014 (hereinafter, "Williams Rebuttal Report"), Ex. 1A.

[11] *Id.*, Ex. 9, Rebuttal Expert Report of Janet S. Netz, Ph.D., dated Sept. 26, 2014 (hereinafter, "Netz Rebuttal Report"), RR-85, RR-86.



[13] *Id.*, Ex. 4, Liu Tr. (Chunghwa) 530:22-531:6, 533:16.



---

[14] *Id.*, Ex. 13, Kim (SDI) Tr. 149:9-150:11; *see also id.*, Ex. 14, Yang (Chunghwa) Tr. 61:16-62:14

[15] *See id.*, Ex. 15, CHU00028755.

[16] *See id.*, Ex. 16, Chang (Panasonic) Tr. 221:8-11

[17] *Id.*, Ex. 16, Chang (Panasonic) Tr. 115:13-117:21.

[18] *Id.*, Ex. 16, Chang (Panasonic) Tr. 219:16-25.

[19] *Id.*, Ex. 16, Chang (Panasonic) Tr. 218:21-219:1.

**2. There Is No Other Direct Evidence that Panasonic Corp. or PNA Joined the Alleged CRT Cartel**

In addition to not participating in the CRT competitor group meetings, Panasonic Corp. and PNA have not entered into any criminal plea agreement in the United States and none of their employees have been indicted.  Moreover, although Samsung SDI pled guilty to a conspiracy for conduct relating to certain CDTs,[20] and the DOJ has issued six indictments against executives from Chunghwa, LPD, and SDI,[21] there is no direct evidence that any of the behavior that was the subject of these pleas or indictments had anything to do with Panasonic Corp. or PNA,[22] who have never been charged with any violation of United States antitrust laws relating to CRTs.

**C. Similarly, There Is No Circumstantial Evidence to Support an Inference That Panasonic Corp. or PNA Participated In the Alleged CRT Conspiracy and, In Fact, the Undisputed Circumstantial Evidence Shows Panasonic Corp. and PNA Competed With Other Defendants in the Sale of CRTs**

**1. The Undisputed Evidence Shows That** ███████████████ **That Could Not Even Circumstantially Tie Panasonic Corp. or PNA to the Broad-Ranging Conspiracy That Plaintiffs Allege**

Plaintiffs have no circumstantial evidence sufficient to support any reasonable inference that Panasonic Corp. or PNA participated in the alleged conspiracy. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[20] *United States v. Samsung SDI Co., Ltd.*, No. 11-cr-00162, Dkt. No. 1 (N. D. Cal. Aug. 8, 2011).

[21] *United States v. Cheng Yuan Lin*, No. 09:cr-00131, Dkt. No. 1 (N.D. Cal. Feb. 10, 2009); *United States v. Chung Cheng Yeh*, No 10-cr-00231, Dkt. No. 1 (N.D. Cal. March 30, 2010); *United States v. Seung-Kyu Lee, et. al*, No. 10-cr-00817, Dkt. No. 1 (N.D. Cal. Nov. 9, 2010); *United States v. Wen Jun Cheng*, No. 09-cr-00836, Dkt. No. 1 (N.D. Cal. Aug. 18, 2009).

[22] *See* Cole Decl., Ex. 8, Williams Rebuttal Report, ¶27 n.29 (████████████████████ ████████████████████).

7



[24] *Id.*, Ex. 8, Williams Rebuttal Report, Exs. 1A, 1B, C-4.

[25] *See id.*

[26] *See id.*

[27] *See id.*, Williams Rebuttal Report, Exs. 1A, C-2.

[28] *See id.*, Ex. 16, Chang (Panasonic) Tr. 221:22-222:16

DEFS.' PNA'S AND PANASONIC CORP.'S
NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT

Case No. 07-5944 SC
MDL NO. 1917

1

2

       **2.**       **The Undisputed Evidence Shows That Panasonic Corp.'s and PNA's Pricing of CRTs Was More Consistent with Competition Than With Participation in the Alleged Conspiracy**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   [29] *See id.*, Ex. 8, Williams Rebuttal Report, Ex. 1B.

24   [30] *See id.*, Ex. 1, Williams Report, Ex. 12A.

25   [31] *See id.*, Williams Report, Ex. 13A.

26   *Id.*, Williams Report, Ex. 12.

   [32] *See id.*, Williams Report, Ex. 23.

27

28   [33] *See id.*, Williams Report, Ex. 24.  PNA only sold CRTs in the U.S.

[REDACTED]

3. **The Undisputed Evidence Shows That Panasonic Corp.'s and PNA's Market Share For CPTs and CDTs Was Very Low**

[REDACTED]

4. **The Undisputed Evidence Shows That Panasonic Corp.'s and PNA's Capacity Decisions Were Competitive**

[REDACTED]

---

[34] *See id.*, Williams Report, ¶ 54 n.50; ¶ 111; Exs. 7B, 18B.

[35] *See id.*, Williams Report, Ex. C-1.

[36] *See id.*, Williams Report, Ex. C-2.

[37] *See id.*, Williams Report, ¶¶ 6-8, 10.

[38] *See id.*, Williams Report, ¶ 77.

[39] *See id.*, Williams Report, Ex. 10B.

[40] *See id.*, Williams Report, Ex. 10A.



**5.      The Undisputed Evidence Shows That Panasonic Corp. and PNA Did Not Have an Economic Motive to Participate in the Alleged Twelve-Year CRT Conspiracy**

_____

[41] *See id.*, Williams Report, Ex. C-2.

[42] *See id.*, Ex. 3, Kinoshita (Panasonic) Tr. 40:13-40:14.  PNA never manufactured CDTs.

[43] *See id.*, Ex. 1, Williams Report, ¶ 23.

[44] *See id.*, Williams Report, ¶¶ 96-100.

[45] *See id.*, Ex. 5, TSB-CRT-00018162, at Art. 28(1).

[46]

DEFS.' PNA'S AND PANASONIC CORP.'S
NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT

Case No. 07-5944 SC
MDL NO. 1917

## ARGUMENT

## I.     SUMMARY JUDGMENT STANDARD

This Court must grant summary judgment where, as here, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Supreme Court has made clear that "antitrust law limits the range of permissible inferences from ambiguous evidence in a [Sherman Act] § 1 case." *Matsushita*, 475 U.S. at 588 ("conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy").  To survive a motion for summary judgment, a non-moving party cannot simply raise "some metaphysical doubt as to the material facts," but must instead come forward with "specific facts showing that there is a *genuine issue for trial*." *Id*. at 586-87 (emphasis in original); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (plaintiff cannot merely rest on its pleadings; but rather must affirmatively demonstrate that there is a genuine issue for trial by producing evidence that is more than "merely colorable").

In light of this Supreme Court precedent, the Ninth Circuit has adopted a particular framework for deciding motions for summary judgment in antitrust conspiracy cases.  *See In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999) ("*Citric Acid II*").  Where, as here, the plaintiffs' case is based on circumstantial evidence, the defendant can "rebut an allegation of conspiracy by showing a plausible and justifiable reason for its conduct that is consistent with proper business practice." *Id*. at 1094.  To avoid summary judgment – under federal and/or state law – the plaintiff must then "provide specific evidence tending to show that the defendant was not engaging in permissible competitive behavior." *Id*.; *see also Matsushita*, 475 U.S. at 588 (holding that plaintiffs "must present evidence that tends to exclude the possibility that the alleged conspirators acted independently") (internal quotation marks omitted).

Here, Plaintiffs have alleged a twelve-year global conspiracy against all Defendants, including Panasonic Corp. and PNA, that covered all CDTs and CPTs during that time.  In order to avoid summary judgment, Plaintiffs must now come forward with evidence capable of raising a

12

1  genuine issue of material fact establishing that Panasonic Corp. and PNA participated in this

2  sweeping CRT price-fixing conspiracy as alleged by Plaintiffs.  *See Citric Acid II*, 191 F.3d at

3  1098 n.4.  Critically, Plaintiffs must present evidence that Panasonic Corp. and PNA – *considered*

4  *separately from the other Defendants in this case* – participated in the alleged cartel.  *See*

5  *Gypsum*, 438 U.S. at 463 (holding that liability for price-fixing "c[an] only be predicated on the

6  *knowing involvement of each defendant, considered individually*, in the conspiracy charged")

7  (emphasis added).

8         Plaintiffs allege both federal antitrust claims under the Sherman Act as well as state law

9  claims in their complaints against Panasonic Corp. and PNA – all based on the alleged CRT

10  conspiracy.  If there is no genuine issue of material fact to establish the participation of Panasonic

11  Corp. and PNA in the alleged conspiracy, then all of these state law conspiracy claims also

12  necessarily fail.[47]

13         Plaintiffs thus have the burden of establishing a genuine issue of material fact through

14  either: (i) direct evidence that Panasonic Corp. and PNA joined the alleged CRT price-fixing

15  conspiracy; or (ii) circumstantial evidence tending to exclude the possibility that Panasonic Corp.

16  and PNA acted independently of the alleged CRT conspiracy.  As demonstrated below, Plaintiffs

17  have failed to do either.

18  **II.    THERE IS NO DIRECT EVIDENCE THAT PANASONIC CORP. OR PNA
        PARTICIPATED IN THE ALLEGED CONSPIRACY**

19

20         Under the summary judgment standard for antitrust cases in this District, "direct evidence"

21  is evidence that "establishes, *without requiring any inferences*, that [the defendant] participated in

22  the conspiracy . . . ."  *Citric Acid II*, 191 F.3d at 1093-94 (emphasis added); *In re Baby Food*

23  *Antitrust Litig.*, 166 F.3d 112, 118 (3d Circ. 1999).  As in *In re Citric Acid Litig.*, 996 F. Supp.

24  951, 954 (N.D. Cal. 1998) *aff'd*, 191 F.3d 1090 (9th Cir. 1999) ("*Citric Acid I*"), the record

25  arguably in this case contains some "direct evidence of a conspiracy" of some type by some

26  _____

[47] In each of the states at issue, the legislature has passed a "harmonization statute" or the courts have decided that the state antitrust laws should be interpreted in accordance with federal antitrust laws.  The relevant state statutes and harmonization case law are set forth in Exhibit A to this memorandum.

27

28

1   competitors.  *See Citric Acid I*, 996 F. Supp. at 956.  But critically, there is no such direct

2   evidence as to Panasonic. Corp. or PNA.  *See supra* pp. 4-7.

3        The purported evidence against Panasonic Corp. and PNA is similar to the evidence that

4   could not withstand summary judgment against defendant Cargill in *Citric Acid I*, a ruling

5   affirmed by the Ninth Circuit, 191 F.3d 1090 (9th Cir. 1999).  In *Citric Acid I*, there was arguably

6   evidence of an alleged price-fixing conspiracy amongst certain manufacturers.  But, the plaintiffs

7   failed to adduce evidence that *all of the defendants* participated in such a conspiracy, specifically

8   failing to do so with respect to defendant Cargill, who, like Panasonic Corp. and PNA, did not

9   attend the alleged conspiracy group meetings that served as the crux of the plaintiffs' conspiracy

10   evidence, did not plead guilty to criminal conspiracy charges, and was not implicated by the

11   criminal pleas entered into by other defendants.  *Citric Acid I*, 996 F. Supp. at 956.  In granting

12   summary judgment against the plaintiffs, the *Citric Acid I* court found that the lack of evidence of

13   Cargill's participation in any of the alleged conspiracy meetings, in combination with the other

14   record evidence, led to the conclusion that plaintiffs could not meet their burden of proof on

15   summary judgment against Cargill.

16        The same conclusion must be reached in favor of Panasonic Corp. and PNA here.  Like in

17   *Citric Acid I*,

18

19

20

21                                                                        *See supra* pp. 4-6; *Citric*

22   *Acid I*, 996 F. Supp. at 955, 962 (finding "most persuasive" "direct testimonial evidence" by

23   admitted co-conspirator that defendant never attended multilateral cartel meetings in granting

24   summary judgment against Sherman Act conspiracy claim).

25

26                                                                        *See supra* pp. 4-6.

27        Neither Panasonic Corp. nor PNA have entered into any criminal plea agreement in the

28   United States nor have any of their employees been indicted.  Further, the only criminal plea that

                                                14

1    is at issue, by Defendant Samsung SDI, does not implicate Panasonic Corp. or PNA.  *See supra* p.

2    7.  The complete absence of this, or any other, direct evidence of conspiracy participation against

3    Panasonic Corp or PNA is a heavy factor supporting the grant of summary judgment.  *Citric Acid*

4    *I*, 996 F. Supp. at 956 (holding that the "utter lack of any direct evidence" that Cargill was

5    involved in the alleged conspiracy is "quite probative").

6           Indeed, under controlling Ninth Circuit law, the absence of any direct evidence that

7    Panasonic Corp. or PNA participated in the alleged conspiracy, means that summary judgment

8    must be granted in their favor unless there is circumstantial evidence that raises a genuine issue of

9    material fact that it was more likely than not that they did so participate.  *See Matsushita*, 475

10   U.S. at 588 ("conduct as consistent with permissible competition as with illegal conspiracy does

11   not, standing alone, support an inference of antitrust conspiracy"); *see also Fed. Agr. Mortg.*

12   *Corp. v. It's a Jungle Out There, Inc*., No. C 03-3721 VRW 2005 WL 3325051, at *26 (N.D. Cal.

13   Dec. 7, 2005) (same).

14   **III.    THERE IS ALSO NO CIRCUMSTANTIAL EVIDENCE SUFFICIENT TO
          SUPPORT AN INFERENCE THAT PANASONIC CORP. OR PNA**
15        **PARTICIPATED IN THE ALLEGED CONSPIRACY**

16          In the absence of any direct evidence that Panasonic Corp. and PNA participated in the

17   alleged conspiracy, Plaintiffs must identify circumstantial evidence of Panasonic Corp.'s and

18   PNA's involvement in the conspiracy that is more consistent with an inference of participation in

19   the alleged conspiracy than with an inference of independent or competitive behavior.  *See, e.g*.,

20   *Matsushita*, 475 U.S. at 588.  Here, the undisputed facts establish that Plaintiffs cannot meet this

21   burden as the circumstantial evidence is at least as consistent with the inference that Panasonic

22   Corp. and PNA were engaging in independent competitive behavior rather than participating in

23   the alleged conspiracy.  Plaintiffs thus cannot satisfy the "special rule" governing the use of

24   circumstantial evidence in antitrust conspiracy cases.  *Citric Acid I*, 996 F. Supp. at 954.

25          **A.    The Undisputed Evidence Shows That** ███████████████████
                 ███████████████████████████████ **Were At Least as Consistent with an**
26          **Inference of Independent Behavior as With Participation in the Alleged**
            **Conspiracy**

27

28   ████████████████████████████████████████████████████



*See, e.g.*, *City of Moundridge v. Exxon Mobil Corp.*, No. 04-940 (RWR), 2009 WL 5385975, at *9 (D.D.C. Sept. 30, 2009) ("Evidence that competitors had contact with each other or exchanged information does not establish a conspiracy."), aff'd 409 Fed. App'x. 362 (D.C. Cir. 2011).

*Citric Acid II*, 191 F.3d at 1105 (evidence of some bilateral price exchanges "is neither sufficient to survive summary judgment under *Baby Food* nor probative of the industry-wide conspiracy alleged . . .").

Indeed, numerous courts have held that a showing of even "frequent meetings between alleged conspirators will not survive summary judgment without additional evidence that would permit an inference that the meetings led to an illegal agreement." *See Sancap Abrasives Corp. v. Swiss Indus. Abrasives,* 19 F. App'x 181, 190-91 (6th Cir. 2001) (citing *Oreck Corp. v. Whirlpool Corp.*, 639 F.2d 75, 79 (2d Cir. 1980)). This is particularly true because, as courts have recognized, there are legitimate, non-conspiratorial reasons, for exchanging competitive intelligence with competitors at various times so that participation in an alleged conspiracy cannot be inferred from such exchanges alone, without additional evidence to support participation in the alleged conspiracy. *See, e.g., Citric Acid I*, 996 F. Supp. at 959 ("With regard to all of these meetings [with competitors], *the fact that [the defendant] discussed prices does not necessarily mean that it agreed to fix prices, or that it improperly exchanged price information*.") (emphasis added); *Baby Food*, 166 F.3d at 118 (noting that competitors may exchange price information for

16

legitimate business reasons); *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1407 (9th Cir. 1986) (same); *Market Force Inc. v. Wauwatosa Realty Co.*, 906 F.2d 1167, 1173 (7th Cir.1990) ("[I]t is well established that evidence of informal communications among several parties does not unambiguously support an inference of a conspiracy."); *see also Matsushita*, 475 U.S. at 588 (1986) (granting summary judgment despite evidence of, among other things, numerous meetings between competing defendants to exchange information).[48]

████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

And at least one of the Plaintiffs in this case admitted as much when a defendant in *In Re TFT-LCD (Flat Panel) Antitrust Litigation*.  Specifically, in that litigation, Sharp expressly argued at the summary judgment stage that sporadic information exchanges were not enough to support the inference of participation in a conspiracy.[50] ███████████

████████████████████████████████████████████████████████████████████████████

---

[48] *See also Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1313 (11th Cir. 2003) ("It plainly was economically beneficial for each individual appellee to keep tabs on the commercial activities of its competitors, *so the receipt of information concerning their sales does not tend to exclude the possibility of independent action or to establish anticompetitive collusion*.") (emphasis added); *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999).

████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████

[50] Sharp's Motion for Partial Summary Judgment That the Japanese Defendants Did Not Participate in the Crystal Conspiracy, 07-md-01827, Dkt. No. 3436 (N.D. Cal. Sept. 2, 2011).

DEFS.' PNA'S AND PANASONIC CORP.'S                                  Case No. 07-5944 SC
NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT                        MDL NO. 1917

*See Citric Acid I*, 996 F. Supp. at 959 (finding that alleged conspiracy meetings had "even less probative value when viewed in light of the way the conspiracy admittedly functioned[,]" i.e., through formal meetings involving top executives from conspiring companies.); *Gypsum*, 438 U.S. at 463 (proof of participation in price-fixing agreement "c[an] only be predicated on the *knowing involvement of each defendant, considered individually*, in the conspiracy charged.") (emphasis added).[52]

Here again, *Citric Acid I* is instructive: There, the plaintiff presented evidence that an employee from an admitted price-fixer had discussions with an employee of the defendant regarding the bidding price for specific citric acid accounts. The Ninth Circuit held that such evidence of some bilateral price exchanges "is neither sufficient to survive summary judgment under *Baby Food* nor probative of the industry-wide conspiracy alleged . . . ." *Citric Acid II*, 191 F.3d at 1105.

**B. Plaintiffs' Conspiracy Claims Against Panasonic Corp. and PNA Make No Economic Sense and Plaintiffs Have Failed to Come Forward with Significant Probative Evidence to Exclude the Possibility that Panasonic Corp. and PNA Acted Independently of the Alleged CRT Conspiracy**

[51] *See* Cole Decl., Ex. 1, Williams Report, ¶ 43; *id.*, Ex. 9, Netz Rebuttal Report, at 35; *id.*, Ex. 20, Expert Rebuttal Report of Dr. Kenneth G. Elzinga, dated Sept. 26, 2014, at 20; *id.*, Ex. 21, Expert Report of Jerry A. Hausman, dated April 15, 2014, at 11-12.

[52] Even assuming, arguendo, that such evidence could give rise to a question of material fact as to Panasonic Corp.'s and PNA's participation in some discrete price-fixing agreements for certain CRTs on a handful of occasions, it fails entirely to raise a question of material fact as to Panasonic Corp.'s and PNA's participation in the twelve-year price-fixing conspiracy alleged by Plaintiffs. *See In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS, 2011 WL 3894376, at *9 (N.D. Cal. Aug. 3, 2011) (granting motion to dismiss and finding that three separate instances of bid-rigging, even if proven, were "a far cry from establishing plausibility for a broad six year continuing agreement among all defendants to fix the prices of all ODDs sold through innumerable other channels").

Where, as here, a conspiracy claim "is one that simply makes no economic sense," Plaintiffs "*must come forward with more persuasive evidence to support their claim than would otherwise be necessary*." *Matsushita*, 475 U.S. at 587 (emphasis added). Plaintiffs have failed to satisfy this evidentiary burden here. To the contrary, the evidence shows that Panasonic Corp.'s and PNA's interests were not aligned with the alleged twelve-year cartel and their alleged participation thus made no economic sense.

Moreover, the other undisputed economic evidence is at least as consistent with a conclusion that Panasonic Corp. and PNA were competing with the other CRT Defendants as with participating in the alleged conspiracy:



In sum, Plaintiffs have failed to produce sufficient evidence circumstantial or otherwise to

---

[53] *See* Cole Decl., Ex. 1, Williams Report, ¶ 26-27.

1   exclude the possibility that Panasonic Corp. and PNA acted independently of any alleged CRT

2   price-fixing conspiracy.   Summary judgment is thus required under the governing antitrust

3   standards.  *See, e.g.*, *Matsushita*, 475 U.S. at 588; *Citric Acid I*, 996 F. Supp. at 954.

4                                   **CONCLUSION**

5          For all of the foregoing reasons, this Court should grant Panasonic Corp.'s and PNA's

6   motion for summary judgment as Plaintiffs have failed to meet their burden to come forward with

7   significant probative evidence to raise a genuine issue of material fact that these particular

8   Defendants participated in the conspiracy that has been alleged.

9   Dated: November 7, 2014              By:  ___/s/ Jeffrey L. Kessler_____

10                                           JEFFREY L. KESSLER (*pro hac vice*)
                                            Email: jkessler@winston.com

11                                          A. PAUL VICTOR (*pro hac vice*)
                                            Email: pvictor@winston.com

12                                          ALDO A. BADINI (257086)
                                            Email: abadini@winston.com

13                                          EVA W. COLE (*pro hac vice*)
                                            Email: ewcole@winston.com

14                                          MOLLY M. DONOVAN (*pro hac vice*)
                                            Email: mmdonovan@winston.com

15                                          MARTIN C. GEAGAN (*pro hac vice*)
                                            Email:  mgeagan@winston.com

16
                                            **WINSTON & STRAWN LLP**

17                                          200 Park Avenue
                                            New York, New York 10166-4193

18                                          Telephone: (212) 294-4692
                                            Facsimile: (212) 294-4700

19

20                                          STEVEN A. REISS (*pro hac vice*)
                                            E-mail: steven.reiss@weil.com

21                                          DAVID L. YOHAI (*pro hac vice*)
                                            E-mail: david.yohai@weil.com

22                                          ADAM C. HEMLOCK (*pro hac vice*)
                                            E-mail: adam.hemlock@weil.com

23
                                            **WEIL, GOTSHAL & MANGES LLP**

24                                          767 Fifth Avenue
                                            New York, New York 10153-0119

25                                          Telephone: (212) 310-8000
                                            Facsimile: (212) 310-8007

26

27                                          *Attorneys for Defendants Panasonic Corporation*
                                            *(f/k/a Matsushita Electric Industrial Co., Ltd.) and*

28                                          *Panasonic Corporation of North America*

                                            20