1   JON V. SWENSON (SBN 233054)
    **BAKER BOTTS LLP**
2   1001 Page Mill Road
    Building One, Suite 200
3   Palo Alto, CA 94304
    Telephone: (650) 739-7500
4   Facsimile: (650) 739-7699

5
    JOHN M. TALADAY (pro hac vice)
6   ERIK T. KOONS (pro hac vice)
    **BAKER BOTTS LLP**
7   1299 Pennsylvania Avenue, N.W.
    Washington, DC 20004-2400
8   Telephone: (202) 639-7700
    Facsimile: (202) 639-7890
9

10  *Attorneys for Defendants Koninklijke Philips N.V., and*
    *Philips Electronics North America Corporation*

11  Additional Moving Defendants and Counsel Listed on Signature Pages

12              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
13                 **SAN FRANCISCO DIVISION**

14  | **In re: CATHODE RAY TUBE (CRT)** | **Case No. Master File No. 3:07-cv-5944-SC** |
    | **ANTITRUST LITIGATION** | |
15  | | **MDL No. 1917** |
    | This Document Relates to: | |
16  | | **DEFENDANTS' JOINT NOTICE OF** |
    | *Dell Inc. and Dell Products L.P.  v.* | **MOTION AND MOTION FOR SUMMARY** |
17  | *Hitachi Ltd. et al.,* No. 13-cv-02171 | **JUDGMENT BASED UPON PLAINTIFFS'** |
    | | **FOREIGN TRANSACTIONS BARRED BY** |
18  | | **THE FTAIA** |

19  Judge:  Hon. Samuel P. Conti
    Court:  Courtroom 1, 17th Floor
20  Date:   February 6, 2015, 10 a.m.

21

22

23

24

25

26

27

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT ......................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 2

I.     STATEMENT OF THE ISSUE ............................................................................................ 2

II.    INTRODUCTION .................................................................................................................. 2

III.   UNDISPUTED MATERIAL FACTS .................................................................................. 3

IV.    STANDARD OF REVIEW .................................................................................................. 4

V.     ARGUMENT .......................................................................................................................... 5

       A.  The FTAIA Bars Plaintiffs' Claims Based on Wholly Foreign Transactions ................ 5

       B.  The Import Exclusion Does Not Apply to the Transactions at Issue .............................. 6

       C.  The Domestic Effects Exception Does Not Apply to the Transactions at Issue ............. 7

            1.  Plaintiffs' Foreign Purchases Fail the "Direct Effects" Test ................................... 7

            2.  Plaintiffs' Purely Foreign Purchases Do Not "Give Rise To" Their Antitrust
                Claims .......................................................................................................................... 10

VI.    CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)..........................................................4

*Animal Sci. Prods., Inc. v. China Minmetals Corp.*,
  654 F.3d 462 (3rd Cir. 2011) ....................................................................................................6

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)..........................................................4

*Empagran S.A. v. F. Hoffmann–LaRoche, Ltd.*,
  417 F.3d 1267 (D.C. Cir. 2005)..............................................................................................10

*F. Hoffman-La Roche v. Empagran*,
  542 U.S. 155, 124 S. Ct. 2359, 159 L. Ed. 2d 226 (2004)...........................4, 5, 6, 8, 9, 10, 11

*In Re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  546 F.3d 981 (9th Cir. 2008) ...............................................................................................9, 10

*In re Intel Corp. Microprocessor Antitrust Litig.*,
  452 F. Supp. 2d 555 (D. Del. 2006) .........................................................................................8

*In re Intel Corp. Microprocessor Antitrust Litig.*,
  476 F. Supp. 2d 452 (D. Del. 2007) .......................................................................................11

*In re Monosodium Glutamate Antitrust Litig.*,
  477 F.3d 535 (8th Cir. 2007) ...............................................................................................9, 10

*Japan Line, Ltd. v. Cnty. of Los Angeles*,
  441 U.S. 434 (1979) ................................................................................................................11

*Lotes Co, Ltd. v. Hon Hai Precision Indus. Co.*,
  753 F.3d 395 (2d Cir. 2014) ...................................................................................................10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)..........................................................4

*McLafferty v. Deutsche Lufthansa A.G.*,
  No. 08-CV-1706, 2009 WL 3365881 (E.D. Pa. Oct. 16, 2009) ...............................................8

*Minn-Chem, Inc. v. Agrium, Inc.*,
  683 F.3d 845 (7th Cir. 2012) ................................................................................................6, 7

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,
  210 F.3d 1099 (9th Cir. 2000) ..................................................................................................4

*Papst Motoren GMBH & Co. KG v. Kanematsu-Goshu (U.S.A.), Inc.,*
  629 F. Supp. 864 (S.D.N.Y. 1986) ................................................................7

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.,*
  No. CV-08-42 JG VVP, 2013 WL 6481195 (E.D.N.Y. Sept. 20, 2013)..................8

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.,*
  608 F. Supp. 2d 1166 (N.D. Cal. 2009) ........................................................8, 9

*Triton Energy Corp. v. Square D Co.,*
  68 F.3d 1216 (9th Cir. 1995) ......................................................................4

*United Phosphorus, Ltd. v. Angus Chem. Co.,*
  131 F. Supp. 2d 1003 (N.D. Ill. 2001).............................................................7

*United Phosphorus, Ltd. v. Angus Chem. Co.,*
  322 F.3d 942 (7th Cir. 2003) ......................................................................5

*United States v. Hsiung,*
  758 F.3d 1074 (9th Cir. 2014) ...................................................................6, 7

*United States v. LSL Biotechnologies,*
  379 F.3d 672 (9th Cir. 2004) ......................................................................7


STATUTES

Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a ("FTAIA")...............1, 2, 4, 5, 7, 8, 9


OTHER AUTHORITIES

Federal Rule of Civil Procedure 56 ...............................................................1, 4, 11

H.R. Rep. No. 97-686, *reprinted in* 1982 U.S.C.C.A.N. 2487 (1982) ......................5, 9

Local Rule 5-1(i)(3)...................................................................................16

1    **<u>NOTICE OF MOTION AND JOINT MOTION FOR SUMMARY JUDGMENT</u>**

2    TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

3         PLEASE TAKE NOTICE that on February 6, 2015, at 10 a.m., or as soon thereafter as

4    this matter may be heard before the Honorable Samuel P. Conti, Senior U.S. District Court

5    Judge, U.S. District Court for the Northern District of California, Courtroom No. 1, 17th Fl.,

6    450 Golden Gate Avenue, San Francisco, California 94102, the moving Defendants listed on the

7    signature pages below will and hereby do move this Court, pursuant to Federal Rule of Civil

8    Procedure 56, for summary judgment in Defendants' favor as to the Sherman Act claims that

9    Plaintiff Dell Inc. and Dell Products L.P.'s (collectively, "Dell' or "Plaintiffs") claims based on

10   purchases by Dell Asia Pacific (Malaysia) Sdn, Dell Company Ltd., Dell (China) Company

11   Ltd., Dell Products (Europe) BV, and Dell Computadores do Brazil, Ltda (collectively, "Dell

12   Foreign Affiliates" or "Foreign Affiliates") of monitors manufactured outside the United States

13   that incorporated foreign manufactured Cathode Ray Tubes ("CRT-Monitors"), which were

14   then shipped to locations outside the United States.  These transactions constitute foreign injury

15   claims that are barred by the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a

16   ("FTAIA").

17        This Motion is based upon this Notice and Motion, the following Memorandum of

18   Points and Authorities, the Declaration of Tiffany Gelott, and any materials attached thereto or

19   otherwise found in the record, along with the argument of counsel and such other matters as the

20   Court may consider.

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF THE ISSUE

Whether summary judgment should be entered against Dell as the FTAIA bars its antitrust claims that are based on alleged overcharges on CRT-Monitors that their Foreign Affiliates purchased that were shipped to them from outside the United States, and that were then shipped by those same Foreign Affiliates to locations outside the United States.

### II.   INTRODUCTION

Plaintiffs are seeking to use this Court as a forum to recover alleged overcharges for products and transactions that bear no connection to the United States.  The products at issue were not purchased in, shipped to or from, or incorporated into finished products in the United States.  These claims are barred by the plain language of the FTAIA and are not subject to either of the FTAIA's narrow exceptions.  The FTAIA provides that the Sherman Act, on which Plaintiffs entirely rely, "shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations."  Plaintiffs' claims as to their wholly-foreign transactions fall squarely within the FTAIA's exemption and should therefore be dismissed.

There is no material factual dispute that a substantial portion of the products for which Plaintiffs seek to recover alleged overcharges never touched U.S. soil.  At issue here are CRT-Monitors that the Plaintiffs' Foreign Affiliates purchased abroad, took control of abroad, and resold abroad.  There is no connection to the U.S., making these purchases the kind of "commerce with foreign nations" that the FTAIA precludes.  Plaintiffs have lumped these purchases in with U.S. purchases in an attempt to inflate their damage claim, but have no basis under the law for seeking recovery in this Court.

The FTAIA is clear that such wholly-foreign transactions cannot form the basis for a U.S. claim.  This rule has only two narrow exceptions, neither of which is implicated here. Plaintiffs' claims neither qualify as "import commerce"—which should be obvious as they were never "imported" into the U.S., nor do they meet the "domestic effects" exception as their wholly-foreign character had no "direct, substantial and reasonably foreseeable effect" on U.S.

2

1  commerce.

2       Removing these wholly-foreign purchases from Plaintiffs' claims will properly

3  circumscribe those claims to the permissible scope of U.S. law. Thus, summary judgment

4  should be granted.

5  **III.  UNDISPUTED MATERIAL FACTS**

6       All of Dell's foreign affiliates and subsidiaries ("Dell Foreign Affiliates" or "Foreign

7  Affiliates") assigned their claims to Dell's U.S. entity, Dell, Inc. Dell First Amended Compl.

8  ¶ 22. Dell accuses the Defendants of conspiring in violation of the antitrust laws to fix the

9  prices at which the Dell Foreign Affiliates purchased monitors incorporating the allegedly price-

10  fixed CRTs. *Id.* at ¶ 20. This motion is directed at the allegedly price-fixed CRTs incorporated

11  into monitors that were manufactured in overseas factories, and purchased by the Dell Foreign

12  Affiliates, but never shipped to the United States.

13

14

15      . Gelott Decl. Ex. A - Dell Suppl. Resp. to Int. No. 8 (June 16, 2014).

16

17

18

19      *Id.* Ex. A - Dell Suppl. Resp. to Int. No. 8 (June 16, 2014); Gelott Decl.

20  Ex. B - Julie French 30(b)(6) Dep. 47:13-17, June 2, 2014 ("French 30(b)(6) Dep.").

21

22

23      Gelott Decl. Ex. A - Dell Suppl. Resp. to Int. No. 8 (June 16,

24  2014); Gelott Decl. Ex. B - French 30(b)(6) Dep. 47:13-17.

25

26      Gelott Decl. Ex. B - French

27  30(b)(6) Dep. 175:12-18,176:3-5; 178:19-180:8, 199:15-22. Those monitor manufacturers

28  either used their own CRTs or purchased the component tube from a foreign CRT supplier. *Id.*

3

Ex. B at 71:21-72:23.

*Id.* at 175:20-22.

*Id.* Ex. B at 201:14-18.

*Id*. Ex. B at 160:24-161:9.

## IV.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citing Fed. R. Civ. P. 56(c)).   A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.  *Id.* at 323.   To carry its burden on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted).  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to a material fact actually does exist.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The party opposing summary judgment, however, cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts."  *Id.*; *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

4

## V.      ARGUMENT

### A.      The FTAIA Bars Plaintiffs' Claims Based on Wholly Foreign Transactions

Plaintiffs argue that the Sherman Act should apply to their foreign purchases and shipments of CRT-Monitors.  The Supreme Court posed a question and provided an answer in *Empagran* directly pertinent to these claims: "[w]hy is it reasonable to apply [the Sherman Act] to conduct that is significantly foreign *insofar as that conduct causes independent foreign harm and that foreign harm alone gives rise to the plaintiff's claim?*  We can find no good answer to the question."  *F. Hoffman-La Roche v. Empagran*, 542 U.S. 155, 166, 124 S. Ct. 2359, 159 L. Ed. 2d 226 (2004).

There is equally no good answer to why the Sherman Act should apply to Dell's wholly foreign claims.  This is apparent from the plain meaning of the FTAIA text.  The general rule set forth in the FTAIA is that the Sherman Act "shall not apply to conduct involving trade or commerce . . . with foreign nations."  15 U.S.C. § 6a.  The Supreme Court summed up this language as "a general rule placing all (nonimport) activity involving foreign commerce outside the Sherman Act's reach."  542 U.S. at 162.  There seems little doubt that the conduct at issue constitutes "conduct involving trade or commerce . . . with foreign nations" under the plain meaning of the FTAIA as the allegedly price-fixed CRTs *never entered the United States*.

This logical outcome reaffirms the underlying purpose behind the FTAIA to reduce the extra-territorial application of the Sherman Act.  The "ultimate purpose" of the FTAIA is to "promote certainly in assessing the applicability of American antitrust law to international business transactions and proposed transactions."  H.R. Rep. No. 97-686 (1982), at 9, reprinted in 1982 U.S.C.C.A.N. 2487, 2494.  Congress principally enacted the FTAIA to "assure foreign countries and their citizens that they would not be swept into a U.S. court to answer under U.S. law for actions that were of no legitimate concern to the United States."  *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 960-62 (7th Cir. 2003).  The FTAIA, therefore, was designed to strike a balance between foreign sovereignty and the enforcement of U.S. antitrust laws—with the guiding principle being that the FTAIA was intended to "redress domestic injury."  *Empagran*, 542 U.S. at 165.  Any other type of injury was left to foreign nations to

5

DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT
BASED UPON PLAINTIFFS' FOREIGN TRANSACTIONS BARRED BY THE FTAIA

Case No. 07-5944
MDL No. 1917

1  regulate under their own laws.  With the CRTs in question *never crossing the borders of the*
2  *United States*, it is hard to conceive of any domestic injury, let alone any domestic injury
3  sufficient to shift the FTAIA's balance towards applying the U.S. antitrust laws to this conduct.

4  **B.      The Import Exclusion Does Not Apply to the Transactions at Issue**

5          The Supreme Court explained that the "technical" language of the Act allows for a
6  minor exception to the general FTAIA rule that the Sherman Act does not apply to nonimport
7  activity involving foreign commerce.  *Empagran*, 542 U.S. at 162.  The FTAIA says that the
8  Sherman Act "shall not apply to conduct involving trade or commerce (other than import trade
9  or import commerce) with foreign nations . . . ."  15 U.S.C. § 6a.  This exception remains
10 narrow to ensure that it does not conflict with the FTAIA's "basic purposes" in that it "properly
11 reflects considerations of comity, and is consistent with Sherman Act history."  *Id*. at 175.

12         Courts have strictly interpreted the import exclusion to apply only "to transactions in
13 which a good or service is being sent directly into the United States, with no intermediate
14 stops."  *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 854 (7th Cir. 2012).  The Ninth Circuit
15 likewise has interpreted the import exclusion to apply only to "transactions that are directly
16 between the plaintiff purchasers and the defendant cartel members."  *United States v. Hsiung*,
17 758 F.3d 1074, 1090 (9th Cir. 2014) (citing *Minn-Chem*, 683 F.3d at 855); *see also Animal Sci.*
18 *Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 470 (3rd Cir. 2011) ("[T]he import trade
19 or commerce exception 'must be given a relatively strict construction'") (citation omitted).
20 Such an interpretation is necessary to avoid the exception swallowing the rule with the Sherman
21 Act applying to such foreign commerce.  Defendants only seek summary judgment as to CRT-
22 Monitors manufactured and sold abroad that were shipped directly to locations outside the
23 United States.  By definition, such sales involve no U.S. "imports" and thus the "import
24 exclusion" cannot apply to the CRT-Monitors subject to this motion.

25         Plaintiffs' Foreign Affiliates, not the Plaintiffs themselves, ordered and received
26 shipments of the products.  Any effect of the alleged price fixing on Plaintiffs' Foreign
27 Affiliates is not actionable under U.S. antitrust law.  To hold otherwise grants the Sherman Act
28 unfettered extraterritorial application and contradicts the comity principles emphasized by the

6

Supreme Court in *Empagran*.  This is exactly what the Court warned against when it explained that extraterritorial application of U.S. antitrust laws "creates a serious risk of interference with a foreign nation's ability independently to regulate its own commercial affairs." *Empagran*, 543 U.S. at 165.

      **C.**     **The Domestic Effects Exception Does Not Apply to the Transactions at Issue**

Nor can Plaintiffs contort these foreign sales to fit within the domestic effects exception. In order to establish this exception, Plaintiffs must show both:  (1) a "direct, substantial, and reasonably foreseeable effect on [U.S.] trade or commerce," and (2) that the effect on U.S. commerce "gives rise to" their antitrust claims.  15 U.S.C. § 6a.  Plaintiffs cannot meet either prong of the domestic effects exception.

      *1.*     ***Plaintiffs' Foreign Purchases Fail the "Direct Effects" Test***

The alleged overcharges on Plaintiffs' Foreign Affiliate purchases do not implicate any effect on U.S. commerce, let alone the "direct effect" necessary to satisfy the first prong of the FTAIA domestic effects exclusion.  The Ninth Circuit recently reiterated its consistent view that "[c]onduct has a 'direct' effect for purposes of the domestic effects exception to the FTAIA 'if it follows as an immediate consequence of the defendant[s'] activity.'"  *Hsiung*, 758 F.3d at 1094 (citing *United States v. LSL Biotechnologies*, 379 F.3d 672, 680-81 (9th Cir. 2004)).  But here there is no "immediate consequence" on domestic U.S. commerce that follows from the wholly foreign transactions.  Indeed, any immediate consequence of Defendants' alleged price-fixing on Plaintiffs' Foreign Affiliates, and the CRT-Monitors they bought and sold in those foreign jurisdictions necessarily occurred somewhere other than the United States.

Even if these CRT-Monitors somehow later entered the United States further downstream in the distribution chain, which Plaintiffs do not allege, that cannot possibly satisfy the "direct effect" prong of the domestic effect test.  This was recognized in *Minn-Chem*, where the court described such later downstream entry as the "situation in which action in a foreign country filters through many layers and finally causes a few ripples in the United States."  683 F.3d at 860.   Many other courts have reached a similar conclusion.  *See, e.g.*, *United Phosphorus, Ltd. v. Angus Chem. Co.*, 131 F. Supp. 2d 1003, 1014 (N.D. Ill. 2001) ("The

7

1   FTAIA explicitly bars antitrust actions alleging restraints in foreign markets for inputs . . . that

2   are used abroad to manufacture downstream products . . . that may later be imported into the

3   United States."); *Papst Motoren GMbH & Co. KG v. Kanematsu-Goshu (U.S.A.), Inc.*, 629 F.

4   Supp. 864, 869 (S.D.N.Y. 1986) (holding that the "alleged restraint on [plaintiff] in Japan

5   cannot be said to have an anticompetitive effect upon United States commerce based upon [the]

6   later sale of [plaintiff's] manufactured motors in the United States").  Under the facts of this

7   case, however, there is no evidence that these CRTs or CRT-Monitors ever entered the United

8   States.

9           Plaintiffs cannot argue that mere involvement by some U.S.-based procurement

10  executives somewhere in the process satisfies the direct effect nexus.  Involvement by U.S.-

11  based procurement executives in the Foreign Affiliates' purchasing procedures, even if it did

12  occur, cannot be considered as an effect on U.S. "trade or commerce," and certainly does not

13  constitute a "direct effect" with "immediate consequence" on U.S. commerce.  *See, e.g.,*

14  *Precision Assocs., Inc. v. Panalpina World Transp., (Holding) Ltd.*, No. CV-08-42 JG VVP,

15  2013 WL 6481195, at *26 n. 24 (E.D.N.Y. Sept. 20, 2013) *report and recommendation*

16  *adopted*, 08-CV-00042 JG VVP, 2014 WL 298594 (E.D.N.Y. Jan. 28, 2014) ("the court is

17  reluctant to place any particular weight on the geographical location of the source of payment

18  for goods or services as evidence of an effect on domestic commerce"); *McLafferty v. Deutsche*

19  *Lufthansa A.G.*, No. 08-CV-1706, 2009 WL 3365881, at *4 (E.D. Pa. Oct. 16, 2009) ("[t]he fact

20  that the supra-competitive prices were paid by persons in the United States does not establish, or

21  even intimate, that the conspiracy directly affected United States commerce"); *In re Intel Corp.*

22  *Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 561 (D. Del. 2006) ("AMD places great

23  weight on its allegations that it is an American company engaged in a world-wide market;

24  however, such allegations do not create jurisdiction without substantial, direct effects on the

25  domestic market.") (citation omitted).  This issue is central to the FTAIA's statutory purpose of

26  exempting U.S. exporters from U.S. antitrust law should they meet in the United States to

27  discuss anticompetitive arrangements that "adversely affect only foreign markets."  *Empagran*,

28  542 U.S. at 161 ("The FTAIA seeks to make clear to American exporters (and to firms doing

8

1   business abroad) that the Sherman Act does not prevent them from entering into business

2   arrangements (say, joint-selling arrangements), however anticompetitive, as long as those

3   arrangements adversely affect only foreign markets.").

4       The principle is well accepted that it is not the location of the allegedly unlawful

5   conduct that determines whether the FTAIA applies—but rather where the direct effects of that

6   conduct occur.  For example, in *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, Sun's

7   global procurement team based in California established a single worldwide price at which its

8   subsidiaries ordered Dynamic Random Access Memory ("DRAM") from DRAM suppliers for

9   delivery to Sun's subsidiaries.  *See Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F.

10  Supp. 2d 1166, 1173 (N.D. Cal. 2009).  But the court found that Sun's foreign subsidiaries,

11  rather than Sun itself, suffered any alleged injury.  *Id.* at 1190.  Any injury that Sun may have

12  suffered itself was only derivative of the injuries suffered by its foreign subsidiaries and Sun's

13  evidence was deemed insufficient to establish the necessary proximate cause required by the

14  FTAIA.  *Id.*

15      Unlike DRAM, Dell's Foreign Affiliates did not even purchase CRTs, they were sold

16  monitors by overseas monitor manufacturers, which they shipped to foreign locations.  Thus,

17  any alleged injury was suffered directly by the Foreign Affiliates, not by Dell, and fails to

18  establish the effect required to satisfy the first prong the FTAIA.  *See also In Re Dynamic*

19  *Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 988-89 (9th Cir. 2008) ("The

20  defendants' conspiracy may have fixed prices in the United States and abroad, and maintaining

21  higher U.S. prices might have been necessary to sustain the higher prices globally, but

22  [plaintiff] has not shown that the higher U.S. prices proximately caused its foreign injury of

23  having to pay higher prices abroad. . .  [plaintiff's] indirectly linked foreign injury is not of the

24  type that Congress intended to bring within the Sherman Act's reach when it enacted the

25  FTAIA.") (citation omitted); *In re Monosodium Glutamate Antitrust Litig.*, 477 F.3d 535, 539-

26  40 (8th Cir. 2007) ("The domestic effects of the price fixing scheme (increased U.S. prices)

27  were not the direct cause of the appellant's injuries.  Rather, it was the foreign effects of the

28  price fixing scheme (increased prices abroad).");  H.R. Rep. No. 97-686, *reprinted in* 1982

9

U.S.C.C.A.N. 2487, 2490 ("it is the *situs* of the effects as opposed to the conduct, that determines whether United States antitrust law applies.").

**2.    *Plaintiffs' Purely Foreign Purchases Do Not "Give Rise To" Their Claims***

In addition to failing to prove that their purely foreign purchases had any direct domestic effect, Plaintiffs cannot establish that any purported domestic effect "gives rise" to their claims. 15 U.S.C. § 6a(2).  The Supreme Court explained in *Empagran* that the statutory phrase "gives rise to a claim" is a causal test.  542 U.S. at 173.  Plaintiffs must show that the alleged domestic effect caused their foreign injury.  The Ninth Circuit, consistent with the interpretation of other courts of appeal, has held that the domestic effect must be the "proximate cause" of the plaintiff's injury.  *DRAM,* 546 F.3d at 987 ("Like the D.C. Circuit and the Eighth Circuit, we . . . adopt a proximate causation standard."); *Accord In re Monosodium Glutamate*, 477 F.3d at 538 ("[T]he statutory 'gives rise to' language requires a direct or proximate causal relationship. . . .") (citation omitted); *Empagran S.A. v. F. Hoffmann–LaRoche, Ltd.*, 417 F.3d 1267, 1271 (D.C. Cir. 2005) ("The statutory language—'gives rise to'—indicates a direct causal relationship, that is, proximate causation. . . .") (citation omitted).  Most recently, the Second Circuit followed suit. *Lotes Co, Ltd. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 414 (2d Cir. 2014) (". . . the domestic effect must proximately cause the plaintiff's injury.").

Plaintiffs cannot argue that possibly higher prices on CRTs in the U.S. "g[a]ve rise to" allegedly higher prices on CRTs abroad that harmed the Dell Foreign Affiliates.  The Ninth, Eighth, Second, and DC courts of appeal have unanimously held that higher prices in the United States cannot be found to have "proximately caused" higher prices abroad.  *In re Monosodium Glutamate*, 477 F.3d at 539-40; *Empagran*, 417 F.3d at 1270; *DRAM*, 546 F.3d at 988-89; *Lotes*, 753 at 414.  Instead, it was the higher prices abroad that were the "proximate cause" of the super-competitive pricing overseas.  *Id.*  Accordingly, allegedly U.S. higher prices were at best an indirect cause that was not significant enough to constitute a "proximate" cause of the foreign injury. *Id.*

This case is not different in any respect.  To the extent that prices of CRTs were allegedly higher in the U.S., those higher U.S. prices could not have "proximately" caused harm

10

1   to the Dell Foreign Affiliates.  The opposite is also true.  Any effects resulting from the Dell

2   Foreign Affiliates' transactions overseas did not proximately cause harm to U.S. commerce.  As

3   one court noted, "[i]ndeed, any such effect is not even a factual, 'but for' cause of [Plaintiffs'

4   injury."  *Lotes*, 753 F.3d at 415.  Plaintiffs are basing their U.S. antitrust claims on the effect of

5   the alleged price fixing relating to Plaintiffs' Foreign Affiliates, which is not actionable under

6   U.S. antitrust law.  Plaintiffs' affiliates are foreign customers fully subject to the laws of their

7   own countries where they may seek redress if they are so entitled.  This is consistent with and

8   upholds the comity principles emphasized by the Supreme Court in *Empagran*, where the Court

9   warned that the "extraterritorial application of U.S. law creates a serious risk of interference

10  with a foreign nation's ability independently to regulate its own commercial affairs."  542 U.S.

11  at 165.[1]

12       Furthermore, Plaintiffs cannot argue "[t]he alleged conduct here did have domestic

13  effects, and those effects were harmful enough to rise to 'a' claim."  *Id. at* 173.  That theory was

14  litigated and lost in *Empagran*.  The Supreme Court required that each plaintiff must show how

15  "the plaintiff's claim" or "the claim at issue" resulted from a domestic injury.  *Id.*  In other

16  words, Dell's Foreign Affiliates must show how their claims are a result of an injury in the

17  United States.  Because the effect that gives rise to Plaintiffs' claims related to the Dell Foreign

18  Affiliates' transactions is foreign—not domestic—Plaintiffs cannot satisfy the "gives rise to"

19  prong of the domestic effects exception by pointing to some domestic effect resulting from U.S.

20  purchases.  *In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457 (D. Del.

---

[1] The proximate cause standard requires that an effect on U.S. commerce cause the harm that "gives rise" to the Plaintiffs' claims.  Here, the Dell Foreign Affiliates were allegedly harmed when they bought the CRT-Monitors abroad.  Therefore, there was no effect on U.S. commerce that allegedly harmed the Plaintiffs and the FTAIA bars those claims.  This means that the Dell Foreign Affiliates do not have a Sherman Act claim based on their purchases of CRT-Monitors--even if they were later shipped to the United States--as the proximate cause of their alleged harm occurred when they bought the CRT-Monitors abroad. *See Lotes*, 753 F.3d at 414 (explaining that where foreign injury later results in domestic effects, such effects do not give rise to a claim).  This confirms that Plaintiffs cannot claim for any damages they allegedly incurred for CRT-Monitors they purchased abroad even if they were later shipped to the United States.

11

1   2007) (quoting *Japan Line, Ltd. v. Cnty. of Los Angeles*, 441 U.S. 434, 448 (1979)).[2]

2   **VI.    CONCLUSION**

3          For the foregoing reasons, Defendants respectfully request that summary judgment be

4   entered under Fed. R. Civ. P. 56 against all of Plaintiffs' antitrust claims to the extent that they

5   are based on alleged overcharges on CRT-Monitors their Foreign Affiliates ordered that were

6   shipped to them from outside the United States, and that were then shipped by those same

7   Foreign Affiliates to locations outside the United States.

8                                                    Respectfully submitted,

9   DATED:  November 7, 2014                          BAKER BOTTS LLP

10                                                    By: /s/ *Erik T. Koons*
11                                                    JON V. SWENSON (SBN 233054)
                                                      Email: jon.swenson@bakerbotts.com
12                                                    **BAKER BOTTS LLP**
13                                                    1001 Page Mill Road
                                                      Building One, Suite 200
14                                                    Palo Alto, CA 94304
                                                      Telephone: (650) 739-7500
15                                                    Facsimile: (650) 739-7699

16                                                    JOHN M. TALADAY (*pro hac vice*)
                                                      Email: john.taladay@bakerbotts.com
17                                                    ERIK T. KOONS (*pro hac vice*)
                                                      Email: erik.koons@bakerbotts.com
18                                                    **BAKER BOTTS LLP**
19                                                    1299 Pennsylvania Avenue, N.W.
                                                      Washington, DC 20004-2400
20                                                    Telephone: (202) 639-7700
                                                      Facsimile: (202) 639-7890
21
22                                                    SHEPPARD MULLIN RICHTER & HAMPTON
23   _____

24   [2] Plaintiffs have failed to put forth competent evidence that would permit the trier of fact to distinguish between
     alleged damages based on claims that are barred by the FTAIA and those that do not.  The failure by Plaintiffs to
25   individually analyze the transactions and to consider the FTAIA means that Plaintiffs have no evidence that the
     domestic effects of the alleged conspiracy "g[a]ve rise to" any particular claim.  Even if some transactions remain
26   unaffected by the FTAIA, Plaintiffs cannot recover on *all* of their purchase claims on the basis that *some* or even *most*
     of the claims are unaffected by the FTAIA and remain subject to the Sherman Act.  This issue is the subject of
27   another motion.  *See* Defendants' Joint Notice of Motion and Motion for Summary Judgment Based Upon Plaintiffs'
     Failure to Distinguish Between Actionable and Non-Actionable Damages Under the FTAIA, Nov. 7, 2014.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ *Gary L. Halling*
GARY L. HALLING (SBN 66087)
Email: ghalling@sheppardmullin.com
JAMES L. MCGINNIS (SBN 95788)
Email: jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH, (SBN 203524)
Email: mscarborough@sheppardmullin.com
**SHEPPARD MULLIN RICHTER &
HAMPTON**
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947

*Attorneys for Defendants Samsung SDI America,
Inc.; Samsung SDI Co., Ltd.; Samsung SDI
(Malaysia) SDN. BHD.; Samsung SDI Mexico S.A.
DE C.V.; Samsung SDI Brasil Ltda.; Shenzen
Samsung SDI Co., Ltd. and Tianjin Samsung SDI
Co., Ltd.*



JENNER & BLOCK LLP

By: /s/ *Terrence J. Truax*
JENNER & BLOCK LLP
Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
ttruax@jenner.com
mbrody@jenner.com

Brent Caslin (Cal. Bar. No. 198682)
JENNER & BLOCK LLP
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
bcaslin@jenner.com

*Attorneys for Defendants Mitsubishi Electric
Corporation, Mitsubishi Electric US, Inc. and,
Mitsubishi Electric Visual Solutions America, Inc.*

13

GIBSON, DUNN & CRUTCHER LLP
By: */s/ Rachel S. Brass*
GIBSON, DUNN & CRUTCHER LLP
Joel S. Sanders Cal. Bar. No. 107234
Rachel S. Brass Cal. Bar. No. 219301
Austin V. Schwing Cal. Bar. No. 211696
555 Mission Street, Suite 3000
San Francisco, CA 94105-2933
Telephone:      (415) 393-8200
Facsimile:      (415) 393-8306
Email: jsanders@gibsondunn.com
            rbrass@gibsondunn.com
            aschwing@gibsondunn.com

*Attorneys for Defendants Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) SDN. BHD.*

Pursuant to Local Rule 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.

14