Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Consumer Products, LLC, Toshiba America*
*Information Systems, Inc., and Toshiba*
*America Electronic Components, Inc.*

Additional Counsel On Signature Pages

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC MDL No. 1917 |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS<br><br>*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-05513<br><br>*Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, Case No. 13-cv-05264<br><br>*CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06396<br><br>*Costco Wholesale Corp. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06397 | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:     February 6, 2015<br>Time:    10:00 a.m.<br>Before:  Hon. Samuel Conti |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*White & Case LLP*
*701 Thirteenth Street, NW*
*Washington, DC 20005*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-01656

*Electrograph Systems, Inc., et al. v. Technicolor SA, et al.*, Case No. 3:13-cv-05724

*Interbond Corp. of America v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06275

*Interbond Corp. of America v. Technicolor SA, et al.*, Case No. 3:13-cv-05727

*Office Depot, Inc. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06276

*Office Depot, Inc. v. Technicolor SA, et al.*, Case No. 3:13-cv-05726

*P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, Case No. 3:12-cv-02648

*P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al.*, Case No. 3:13-cv-05725

*Sears, Roebuck & Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, Case No. 3:11-cv-05514

*Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, Case No. 3:13-cv-00157

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES**
Case No. 07-5944 SC, MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................2

I.     STATEMENT OF THE ISSUE..................................................................................2

II.    INTRODUCTION .......................................................................................................2

III.   FACTUAL BACKGROUND......................................................................................2

IV.    STANDARD OF REVIEW ........................................................................................4

V.     ARGUMENT...............................................................................................................4

       A.     State Law Claims Are Governed By The Extraterritorial Limitations
              Imposed By The FTAIA .................................................................................4

              1.     The Relevant States' Competition Laws Are Harmonized With
                     Federal Antitrust Law ........................................................................5

              2.     The Supremacy Clause Prevents Plaintiffs' State Law Claims
                     From Extending Farther Than The FTAIA Allows ....................6

              3.     The Commerce Clause Similarly Limits The Ability Of State
                     Laws To Regulate Foreign Commerce ...........................................8

              4.     Comity Concerns Bar State Law Claims From Reaching
                     Beyond The Territorial Restrictions Of The FTAIA ..................9

       B.     Plaintiffs Cannot Establish That Their Foreign Commerce Claims
              Satisfy Either The Import Commerce Exclusion Or The Domestic
              Injury Exception To The FTAIA ................................................................10

              1.     The FTAIA's Import Commerce Exclusion Does Not Apply
                     Because The Alleged Conspirators Did Not Import The CRT
                     Products Underlying Plaintiffs' Foreign Commerce Claims....................11

              2.     The Domestic Injury Exception Does Not Apply To Plaintiffs'
                     Foreign Commerce Claims .............................................................12

VI.   CONCLUSION................................................................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## **TABLE OF AUTHORITIES**

Page

### CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................4

*Animal Science Products, Inc. v. China Minmetals Corp.*,
654 F.3d 462 (3d Cir. 2011) .......................................................................12

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)...................................................................................6

*CSR Ltd. v. CIGNA Corp.*,
405 F. Supp. 2d 526 (D.N.J. 2005) ........................................................5, 12

*Dee-K Enters., Inc. v. Heveafil Sdn. Bhd.*,
299 F.3d 281 (4th Cir. 2002) .....................................................................10

*Den Norske Stats Oljeselskap AS v. Heeremac VOF*,
241 F.3d 420 (5th Cir. 2001) .....................................................................13

*Empagran S.A. v. F. Hoffmann-La Roche, Ltd.*,
417 F.3d 1267 (D.C. Cir. 2005).................................................9, 13, 16, 17

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
542 U.S. 155 (2004)...................................................... 7, 9, 10, 11, 12-13

*Global Reinsurance Corp. U.S. Branch v. Equitas Ltd.*,
969 N.E.2d 187 (N.Y. 2012)......................................................................7

*'In' Porters, S.A. v. Hanes Printables, Inc.*,
663 F. Supp. 494 (M.D.N.C. 1987) ............................................................5

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
546 F.3d 981 (9th Cir. 2008) .....................................................................9

*In re Hydrogen Peroxide Antitrust Litig.*,
702 F. Supp. 2d 548 (E.D. Pa. 2010).........................................................12

*In re Intel Corp. Microprocessor Antitrust Litig.*,
476 F. Supp. 2d 452 (D. Del. 2007)............................................................5

*In re Monosodium Glutamate Antitrust Litig.*,
477 F.3d 535 (8th Cir. 2007) ................................................................13, 17

*In re Potash Antitrust Litig.*,
667 F. Supp. 2d 907 (N.D. Ill. 2009)...........................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
No. 3:07-md-01819, 2010 WL 5477313 (N.D. Cal. Dec. 31, 2010)...............................5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 3:07-md-1827, 2012 WL 6709621 (N.D. Cal. Dec. 26, 2012)................................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 3:07-md-1827, 2014 WL 4652145 (N.D. Cal. Sept. 18, 2014) ..............................15

*Japan Line, LTD v. County of Los Angeles*,
441 U.S. 434 (1979)..............................................................................................6, 8

*Kinetic Systems, Inc. v. Federal Financing Bank*,
No. 12-cv-01619-SC, 2014 WL 3964952 (N.D. Cal. Aug. 13, 2014)............................4

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
753 F.3d 395 (2d Cir. 2014) ................................................................................16, 17

*Major League Baseball v. Crist*,
331 F.3d 1177 (11th Cir. 2003) ............................................................................. 6-7

*Minn-Chem, Inc. v. Agrium, Inc.*,
683 F.3d 845 (7th Cir. 2012) .........................................................................5, 10, 11

*Pac. Nw. Venison Producers v. Smitch*,
20 F.3d 1008 (9th Cir. 1994) ......................................................................................8

*United States v. Hsiung*,
758 F.3d 1074 (9th Cir. 2014) ...................................................................10, 11, 12

*United States v. LSL Biotechnologies*,
379 F.3d 672 (9th Cir. 2004) ...................................................................................11

*United Phosphorus, Ltd. v. Angus Chem. Co.*,
131 F. Supp. 2d 1003 (N.D. Ill. 2001) ................................................................ 13-14

## FEDERAL RULES

Fed. R. Civ. P. 56(a) .............................................................................................5

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. VI, cl. 2...........................................................................................2

U.S. Const. art. I, § 8, cl. 3 ......................................................................................8

**STATUTES AND PUBLIC LAWS**

Fla. Stat. § 501.204 .................................................................................................5

Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a, 15 U.S.C. § 45(a)(3) ......... *passim*

Pub. L. No. 97-290, §§ 401-03 (1982) ....................................................................7

**OTHER AUTHORITIES**

H.R. Rep. 97-6863 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2487 ..........................................7

Webster's Third New International Dictionary 640 (1982) ....................................13

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 6, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Samuel Conti, the undersigned Defendants will and hereby do move the Court for an order granting partial summary judgment in favor of Defendants and dismissing with prejudice Plaintiffs' state claims to the extent they involve CRTs incorporated into finished products or CRT Products that were first sold to a non-conspirator outside the United States.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declaration of Lucius B. Lau and accompanying exhibits, the complete files and records in this action, oral argument of counsel, authorities that may be presented at or before the hearing, and such other and further matters as this Court may consider.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF THE ISSUE

1.      Whether the Foreign Trade Antitrust Improvements Act ("FTAIA") applies to the state claims asserted by the Direct Action Plaintiffs ("DAPs") and Indirect Purchaser Plaintiffs ("IPPs") (collectively, "Plaintiffs") such that the Plaintiffs' state claims are barred to the extent they involve either CRTs incorporated into finished products or products containing CRTs ("CRT Products") that were first sold to a non-conspirator outside the United States.

### II.   INTRODUCTION

Plaintiffs' indirect purchaser claims are based on purchases of CRT Products from entities other than the alleged conspirators.  These entities, in turn, either purchased the CRT Products from other entities upstream in the chain of distribution, or purchased CRTs from the alleged conspirators and incorporated those CRTs into CRT Products.  Although some of these initial purchases of either CRTs or CRT Products from the alleged conspirators occurred in the United States, many of them took place abroad.  All indirect purchases of CRT Products based on these initial foreign purchases from the alleged conspirators are barred by the FTAIA.

As indirect purchasers, Plaintiffs' claims derive from and are entirely dependent upon purchases made by non-conspirators that preceded them in the chain of distribution, including a significant amount of foreign purchases that the FTAIA excludes from the reach of the U.S. antitrust laws.  Because the FTAIA prohibits non-conspirators from bringing damages claims based on their purchases of CRTs and CRT Products from the alleged conspirators in foreign commerce, the FTAIA also prohibits Plaintiffs from bringing damages claims under state law based on their indirect purchases of these CRT Products. First, all of the relevant states' competition laws have been harmonized with either the federal antitrust laws or the Federal Trade Commission Act ("FTC Act"), to which the FTAIA expressly applies.  Second, the Supremacy Clause forbids state laws from applying in a manner inconsistent with federal law, including the FTAIA.  Third, the Commerce Clause

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  restricts the states' ability to regulate foreign commerce.  Fourth, and finally, comity requires
2  that the states not interfere with the sovereignty of foreign nations and compels construing
3  the relevant state laws consistently with that purpose.

4        This motion is directed solely at Plaintiffs' indirect purchaser claims that involve either
5  CRTs incorporated into finished products or CRT Products that were first sold to a non-
6  conspirator outside the United States (the "Foreign Commerce Claims").  The FTAIA bars
7  such claims because they are neither "import commerce" nor the result of any "direct,
8  substantial, and reasonably foreseeable effect" on domestic commerce that "gives rise to" the
9  Plaintiffs' state law claims.  15 U.S.C. § 6a.  For these reasons and the reasons stated below,
10  the Court should grant partial summary judgment as to Plaintiffs' state law claims based on
11  purchases of CRT Products that involve foreign sales of CRTs or CRT Products to non-
12  conspirators.

13  **III.  FACTUAL BACKGROUND**

14        Plaintiffs seek damages for their indirect purchases of CRT Products under the laws of
15  Arizona, California, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota,
16  Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota,
17  South Dakota, Tennessee, Vermont, Washington, D.C., West Virginia and Wisconsin.
18  Declaration of Lucius B. Lau, dated November 7, 2014 ("Lau Decl."), Ex. A.  IPPs' damages
19  expert, Dr. Janet S. Netz, has acknowledged ███████████████████████████████████
20  ████████████████████████████████████████████████████████████████████████████
21  ████████████████████████████████████.  Lau Decl. Ex. B at 72 (Expert
22  Report of Janet S. Netz, Ph.D., April 15, 2014 ("Netz Report")).  DAPs' damages expert, Dr.
23  Alan S. Frankel, ██████████████████████████████████████████████████████████
24  ██████████████████████████████ Lau Decl. Ex. C ¶ 19 (Report of Alan
25  S. Frankel, Ph.D., April 15, 2014).  Finally, Defendants' expert Dr. Janusz Ordover has
26  ████████████████████████████████████████████████████████████████████████████
27  ████████████████████████████████████████████████████████████████████████████
28  ███████████████████████████████████████████ Lau Decl. Ex. D ¶ 60

1  (Expert Report of Janusz A. Ordover, Ph.D., August 5, 2014).  Plaintiffs do not challenge ███

2  ████████████████████████████████████████████████ Thus, IPPs',

3  DAPs' and Defendants' experts are in complete agreement, and there is no genuine issue of

4  material fact: ████████████████████████████████████████████████████

5  ████████████████ and as set forth below, they are barred by the FTAIA.

6      Plaintiffs purchased CRT Products, not the CRTs that are the target of the alleged

7  conspiracy. ████████████████████████████████████████████

8  ████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████

10  ████



24  *Id.* Figure 1.  Plaintiffs in this litigation occupy different steps along this complicated

25  distribution chain. ████████████████████████████████

26  ████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████

28  ████████████████████████████████████ *Id.* ¶¶ 11-13 & n.12.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1 ████████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████████

3 ███████████████████████████. *Id.* ¶ 13. ████████████████████████

4 ████████████████████████████████████████████████████████████████

5 █████████████████████████ *Id.*

## IV.   STANDARD OF REVIEW

A court "shall" grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment should be granted if the evidence would require a directed verdict for the moving party."  *Kinetic Systems, Inc. v. Federal Financing Bank*, No. 12-cv-01619-SC, 2014 WL 3964952, at *3 (N.D. Cal. Aug. 13, 2014) (Conti, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

## V.   ARGUMENT

The Court should grant this motion for partial summary judgment and dismiss those state claims made by the Plaintiffs that involve either CRTs incorporated into finished products or CRT Products that were first sold to a non-conspirator outside the United States because such claims are barred by the FTAIA.

### A.      State Law Claims Are Governed By The Extraterritorial Limitations Imposed By The FTAIA

States are restricted from applying their laws to foreign conduct that is excluded from regulation under federal law.  State antitrust laws must be implemented in accordance with the Sherman Act or FTC Act, both of which are limited in their applicability to foreign commerce by the FTAIA.  To allow states to circumvent the restrictions placed by the FTAIA would undermine Congress's purpose in enacting the FTAIA, violate the Supremacy

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

and Commerce Clauses of the U.S. Constitution, and offend principles of comity.  Thus, courts consistently hold that the FTAIA limits state antitrust laws.  *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 3:07-md-01819, 2010 WL 5477313, at *4 (N.D. Cal. Dec. 31, 2010) (finding that indirect purchasers of computer memory were barred from recovering for foreign market transactions under state laws unless plaintiffs could prove "jurisdictional facts" bringing their claims within the FTAIA's domestic injury exception); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 927  (N.D. Ill. 2009) ("[T]here could potentially be conflict with certain constitutional provisions if state antitrust laws reached foreign commercial activity that [the FTAIA] did not"), *rev'd on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012); *In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457 (D. Del. 2007) (finding that plaintiffs' state law antitrust claims are limited "by the reach of their applicable federal counterparts" and dismissing claims based on foreign conduct); *CSR Ltd. v. CIGNA Corp.*, 405 F. Supp. 2d 526, 552 (D.N.J. 2005) (barring state law antitrust claims under the harmonization provision for New Jersey's antitrust law and under decisional law); *'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 n.8 (M.D.N.C. 1987) (noting "the anomaly that would be created if [North Carolina's Unfair Trade Practices Act] were construed to have a greater extraterritorial reach than the Sherman Act").  Accordingly, this Court should also find that the relevant states' antitrust laws are similarly restricted by the contours of the FTAIA.

### 1.    The Relevant States' Competition Laws Are Harmonized With Federal Antitrust Law

Recognizing the need for a uniform approach between federal and state antitrust laws, certain states have explicitly enacted harmonization statutes to maintain consistency.  For example, Florida has harmonized its Deceptive and Unfair Trade Practices Act ("FDUTPA") with the FTC Act and federal courts' interpretation of the FTC Act.  *See* Fla. Stat. § 501.204 (stating that the courts, when construing the FDUTPA, shall grant "due consideration and great weight … to the interpretations of the Federal Trade Commission and the federal courts

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  related to … the Federal Trade Commission Act").  Of the states whose laws form the basis

2  for Plaintiffs' indirect purchaser claims, Arizona, Florida, Hawaii, Iowa, Massachusetts,

3  Michigan, Nebraska, Nevada, New Mexico, South Dakota, Washington, D.C. and West

4  Virginia have enacted harmonization statutes.  *See* Lau Decl. Ex. E (Chart of state

5  harmonization statutes and cases supporting harmonization).  For states that do not have

6  explicit harmonization statutes, principles of federal antitrust law nevertheless apply to the

7  states' antitrust laws.  *See Id.*  Thus, state antitrust laws are subject to the same limitations

8  applicable to the federal antitrust laws.

9              **2.      The Supremacy Clause Prevents Plaintiffs' State Law Claims From**

10                       **Extending Farther Than The FTAIA Allows**

11         The Supremacy Clause restricts Plaintiffs' indirect purchaser claims that originate

12  with foreign purchases of CRTs or CRT Products.  Allowing state antitrust laws to extend

13  beyond the restrictions that Congress imposed through the FTAIA would constitute

14  regulation of foreign commerce in direct contravention to the intent of Congress.

15         The Supremacy Clause instructs that federal law "shall be the supreme Law of the

16  Land . . . any Thing in the Constitution or Laws of any State to the Contrary

17  notwithstanding."  U.S. Const. art. VI, cl. 2.  Thus, it prohibits the application of any state

18  law that "stands as an obstacle to the accomplishment and execution of the full purposes and

19  objectives of Congress."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)

20  (citations and internal quotation marks omitted).

21         The Supremacy Clause thus preempts state laws that are inconsistent with the goals of

22  Congress.  In the area of foreign commerce, allowing individual states to separately regulate

23  foreign commerce would undermine the federal government's desire to speak with "one

24  voice."  *Japan Line, LTD v. County of Los Angeles*, 441 U.S. 434, 448 (1979); *Crosby*, 530

25  U.S. at 385 (finding that the Massachusetts Burma Law "stands as an obstacle in addressing

26  the congressional obligation to devise a comprehensive, multilateral strategy" in the United

27  States' commercial transactions with Burma).

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1     Applying the principles of preemption established by the Supremacy Clause, both

2  federal and state courts have denied various state antitrust laws from extending beyond the

3  reach of federal law.  *See, e.g.*, *Major League Baseball v. Crist*, 331 F.3d 1177, 1186, 1118

4  (11th Cir. 2003) (invalidating civil investigative demands issued under the Florida Antitrust

5  Act by the Florida Attorney General because "federal law establishes a universal exemption

6  [from the antitrust laws for the business of baseball] in the name of uniformity"); *In re Intel*,

7  476 F. Supp. 2d at 457 (finding that California state law claims were precluded by the

8  FTAIA because "Congress' intent would be subverted if state antitrust laws were interpreted

9  to reach conduct which the federal law could not."); *Global Reinsurance Corp. U.S. Branch*

10  *v. Equitas Ltd.*, 969 N.E.2d 187, 195-96 (N.Y. 2012) (finding that New York's Donnelly Act

11  "cannot reach foreign conduct deliberately placed by Congress beyond the Sherman Act's

12  jurisdiction," and noting that "if states remained free to authorize 'little Sherman Act' claims

13  that went beyond it" the federal power to regulate foreign commerce would be undone).

14     In enacting the FTAIA, Congress sought to limit the reach of federal antitrust claims

15  to the extent that such claims implicate foreign commerce.  *See* Pub. L. No. 97-290, §§ 401-

16  03 (1982).   Thus, the FTAIA bars the application of the Sherman and FTC Acts to

17  "anticompetitive conduct that causes only foreign injury" unless the conduct "*both* (1)

18  sufficiently affects American commerce, *i.e.*, it has a 'direct substantial, and reasonable

19  effect' on American domestic, import, or (certain) export commerce,' *and* (2) has an effect of

20  a kind that antitrust law considers harmful, *i.e.*, the 'effect' must giv[e] rise to a [Sherman

21  Act] claim."   *F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 158 (2004)

22  ("*Empagran I*") (emphases and alterations in original); *see also* 15 U.S.C. § 6a; 15 U.S.C. §

23  45(a)(3).

24     The FTAIA was also enacted with the intent to resolve problems caused by

25  inconsistent tests used by the courts in determining the application of U.S. antitrust laws to

26  international transactions.   *See* H.R. Rep. 97-686, at 3 (1982), *reprinted in* 1982

27  U.S.C.C.A.N. 2487, 2487 ("House Report").  The FTAIA was adopted to serve as a "single,

28  objective test — the 'direct, substantial, and reasonably foreseeable effect' test" to serve as a

"clear benchmark . . . for businessmen, attorneys and judges as well as our trading partners." *Id.* at 2487-88.

Because federal law preempts state laws that undermine Congressional intent, it follows that the FTAIA, which Congress intended to limit the scope of federal antitrust laws, would also limit the scope of state antitrust laws. A contrary result would render the FTAIA meaningless. For example, any plaintiff could circumvent the FTAIA's restrictions by only bringing state law claims instead of federal antitrust claims. And the states — rather than being limited to the "single, objective test" that Congress established — could create a patchwork of state antitrust laws applicable to various types of foreign commerce. In essence, unless the FTAIA is applied equally to state antitrust laws as it is to federal antitrust laws, Congress's intent to speak with "one voice" and set a "clear benchmark" for "our trading partners" regarding the applicability of U.S. antitrust law would be subverted. Importantly in this case, such a result would allow Plaintiffs' indirect purchaser claims to have a further reach in foreign commerce than the direct purchasers in the same litigation. Such a result cannot be permitted, and the various states' laws under which Plaintiffs base their indirect claims must be subject to the FTAIA.

### 3. The Commerce Clause Similarly Limits The Ability Of State Laws To Regulate Foreign Commerce

The Commerce Clause gives Congress the power "[t]o regulate commerce with foreign Nations." U.S. Const. art. I, § 8, cl. 3. As noted by the Supreme Court, foreign commerce is "'pre-eminently a matter of national concern' on which the federal government has historically spoke with 'one voice.'" *SRAM*, 2010 WL 5477313, at *4 (quoting *Japan Line,* 441 U.S. at 448). Thus, "when state regulations affect foreign commerce, additional scrutiny is necessary to determine whether the regulations 'may impair uniformity in an area where federal uniformity is essential.'" *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1014 (9th Cir. 1994) (quoting *Japan Line*, 441 U.S. at 448).

Indeed, Congress enacted the FTAIA in order to ensure that antitrust laws were applied uniformly to claims based on foreign commerce. Thus, in *SRAM*, Judge Wilken held

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  that "the United States Constitution vests Congress with the express power to 'regulate
2  Commerce with foreign Nations." *SRAM*, 2010 WL 5477313, at *4 (finding indirect
3  purchaser plaintiffs' argument that the FTAIA does not apply to their state law claims
4  unpersuasive); *see also In re Intel*, 476 F. Supp. 2d at 457 (applying the FTAIA to plaintiffs'
5  California law claims because "Congress' intent would be subverted if state antitrust laws
6  were interpreted to reach conduct which the federal law could not.")

7       Clearly, allowing the antitrust regimes of the 50 states to speak independently to
8  determine the scope of foreign commerce in antitrust cases would undermine Congress's
9  intent to speak with "one voice" in enacting the FTAIA. The Commerce Clause specifically
10 proscribes this type of discord and confusion by empowering Congress with the ability to
11 regulate foreign commerce both at the federal and state level.

### 4. Comity Concerns Bar State Law Claims From Reaching Beyond The Territorial Restrictions Of The FTAIA

12
13
14       Principles of comity further limit Plaintiffs' state law claims from extending into
15  foreign commerce. "America's antitrust laws, when applied to foreign conduct, can interfere
16  with a foreign nation's ability independently to regulate its own commercial affairs."
17  *Empagran I*, 542 U.S. at 165. Thus, the "legitimate sovereign interests of other nations" was
18  one of Congress's considerations in drafting the FTAIA. *Id.* at 164-65, 167-68. Applying
19  state antitrust laws to transactions that never touch the United States would undermine efforts
20  to avoid "interference with other nations' prerogative to safeguard their own citizens from
21  anticompetitive activity within their own borders" and add unnecessary complications to the
22  analysis of applying American antitrust laws to foreign commerce. *Empagran S.A. v. F.
23  Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267, 1271 (D.D.C. 2005) ("Empagran II"); *see also In
24  re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 987 (9th Cir.
25  2008). By adhering to the principles of comity, such conflict can be avoided.

26       Based upon these reasons, the FTAIA limits the application of state antitrust laws to
27  foreign commerce. Plaintiffs therefore may not recover damages for their Foreign Commerce
28  Claims unless they can establish that the FTAIA does not bar those claims.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**B.** **Plaintiffs Cannot Establish That Their Foreign Commerce Claims Satisfy Either The Import Commerce Exclusion Or The Domestic Injury Exception To The FTAIA**

The Court should enter partial summary judgment in favor of Defendants because the FTAIA prohibits Plaintiffs from recovering under state or federal law for activity involving foreign commerce that is outside the reach of the Sherman Act. Plaintiffs cannot recover for their Foreign Commerce Claims unless they establish either that (1) the transactions at issue amount to import commerce excluded from the restrictions of the FTAIA, or (2) that Defendants' conduct had "a direct, substantial, and reasonably foreseeable effect" on domestic commerce that "gives rise to" their claims. 15 U.S.C. § 6a; *United States v. Hsiung*, 758 F.3d 1074, 1088 (9th Cir. 2014) (holding that the FTAIA "provides substantive elements under the Sherman Act in cases involving nonimport trade with foreign nations"). These tests are commonly referred to as the "import commerce exclusion" and the "domestic injury exception," respectively. *See Minn-Chem*, 683 F.3d at 855 ("import commerce exclusion"); *DRAM*, 546 F.3d at 985 (9th Cir. 2008) ("domestic injury exception"). Because Plaintiffs cannot establish either the import commerce exclusion or the domestic injury exception, their Foreign Commerce Claims must be rejected.

First, although import commerce is "excluded at the outset from the coverage of the FTAIA," Plaintiffs' Foreign Commerce Claims do not involve import commerce because they are not based on direct sales by the alleged conspirators to Plaintiffs in the United States. *Minn-Chem*, 683 F.3d at 854-55 (noting that the "import commerce exclusion" applies only to "transactions that are directly between the plaintiff purchasers and the defendant cartel members"); *see also Hsiung*, 758 F.3d at 1091 (holding that the import commerce exclusion was satisfied where the alleged conspirators "earned over $600 million from the importation of TFT-LCDs into the United States").

Second, because Plaintiffs' Foreign Commerce Claims are not import commerce, they are subject to the FTAIA's "general rule placing *all* (nonimport) activity involving foreign commerce outside the Sherman Act's reach." *Empagran I*, 542 U.S. at 162 (emphasis in

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    original); *see also Dee-K Enters., Inc. v. Heveafil Sdn. Bhd.,* 299 F.3d 281, 287 (4th Cir.

2    2002) (applying the FTAIA to allegations that are of "a largely foreign conspiracy with some

3    domestic elements, aimed at a global market").   Plaintiffs' claims are therefore only

4    actionable "*provided that* the conduct *both* (1) sufficiently affects American commerce, *i.e.*,

5    it has a 'direct, substantial, and reasonably foreseeable effect' on American domestic, import,

6    or (certain) export commerce, *and* (2) has an effect of a kind that antitrust law considers

7    harmful, *i.e.,* the 'effect' must 'giv[e] rise to a [Sherman Act] claim.'" *Empagran I*, 542 U.S.

8    at 162 (emphases and alterations in original).

9        Plaintiffs cannot prove that the harm they allegedly suffered was due to a "direct" effect

10   on domestic commerce, because any relevant effects on U.S. commerce did not "follow[] as

11   an immediate consequence of the [Defendants'] activity" due to significant, intervening

12   actions taken by non-conspirators. *United States v. LSL Biotechnologies*, 379 F.3d 672, 680

13   (9th Cir. 2004).   Similarly, the foreign harm allegedly suffered by non-conspirators

14   purchasing CRTs or CRT Products abroad did not "give rise to" Sherman Act claims by the

15   non-conspirators because such harm, if any, was caused by "the overall price-fixing

16   conspiracy itself," and not by any effects that the alleged conspiracy had in the United States.

17   *DRAM*, 546 F.3d at 988 (affirming dismissal of Sherman Act claims based on foreign

18   purchases).   Thus, no domestic effects of the alleged conspiracy "proximately caused"

19   actionable injury to the foreign purchasers. *Id.*   Because Plaintiffs' Foreign Commerce

20   Claims are entirely derivative of harm purportedly suffered by the foreign purchasers, and no

21   domestic effects of the alleged conspiracy "proximately caused" actionable injury to such

22   purchasers, Plaintiffs cannot establish a "direct causal link between the anticompetitive

23   practice and [Plaintiffs'] damages." *Id.*   Accordingly, the Court should grant partial

24   summary judgment as to Plaintiffs' Foreign Commerce Claims.

25        **1.    The FTAIA's Import Commerce Exclusion Does Not Apply**
              **Because The Alleged Conspirators Did Not Import The CRT**
26            **Products Underlying Plaintiffs' Foreign Commerce Claims**

27   None of the Foreign Commerce Claims involve direct sales by Defendants or alleged

28   conspirators to Plaintiffs in the United States.   As the Ninth Circuit recently confirmed, the

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

import commerce exclusion applies only to "transactions that are directly between the [U.S.] plaintiff purchasers and the defendant cartel members" for products sold into the United States. *See Hsiung*, 758 F.3d at 1090 (alteration in original (quoting *Minn-Chem*, 683 F.3d at 855).  Because Plaintiffs' Foreign Commerce Claims do not involve imports by the alleged conspirators to Plaintiffs, partial summary judgment is warranted.

To the extent Plaintiffs argue that the import commerce exclusion is satisfied because the alleged conspiracy targeted domestic markets or U.S. companies, they are mistaken.  *See Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 470 (3d Cir. 2011) (stating, in dicta, that "the import trade or commerce exception requires that the defendants' conduct target import goods or services").  "Targeting is not a legal element for import trade under the Sherman Act."  *Hsiung*, 758 F.3d at 1091; *see also CSR Ltd.*, 405 F. Supp. 2d at 542 (holding that even if defendants "targeted the importation" of services to the United States, this fact was irrelevant where plaintiffs brought such services into the United States; to hold otherwise would be an "extremely broad and extraordinary view of 'import trade or import commerce'").  Thus, whether the alleged conspiracy targeted U.S. markets is irrelevant to the applicability of the import commerce exclusion.  Even if it had, Defendants' foreign sales of CRTs are not import commerce.

### 2. The Domestic Injury Exception Does Not Apply To Plaintiffs' Foreign Commerce Claims

Because the Foreign Commerce Claims do not involve import commerce, Plaintiffs must prove that Defendants' conduct had a "direct, substantial, and reasonably foreseeable effect" on domestic commerce that "gives rise to" the Plaintiffs' claims.  *Empagran I*, 542 U.S. at 161, 173-74 (holding that domestic effects must give rise to "the plaintiff's claim" or "the claim at issue").  In other words, Plaintiffs must point to direct, substantial and reasonably foreseeable domestic effects of Defendants' conduct that are the proximate cause of their antitrust claims.  *In re Hydrogen Peroxide Antitrust Litig.*, 702 F. Supp. 2d 548, 551 (E.D. Pa. 2010) (agreeing with defendants that the "FTAIA mandates that two events occur *seriatim* for us to have jurisdiction: (1) there are *first* domestic effects of the defendants'

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

12

antitrust conduct, and (2) those domestic effects *then* proximately cause an antitrust claim") (emphasis in original).

Both pre- and post-enactment of the FTAIA, the Supreme Court and all federal appeals courts that have considered the issue have held that the Sherman Act does not apply to purchases of price-fixed goods abroad. *Empagran I*, 542 U.S. at 159, 169 (noting that the parties identified no cases "in which any court applied the Sherman Act to redress foreign injury in such circumstances"); *DRAM*, 546 F.3d at 988 ("In particular, that the conspiracy had effects in the United States and abroad does not show that the effect in the United States, rather than the overall price-fixing conspiracy itself, proximately caused the effect abroad."); *In re Monosodium Glutamate Antitrust Litig.*, 477 F.3d 535, 539-40 (8th Cir. 2007) ("The domestic effects of the price fixing scheme (increased U.S. prices) were not the direct cause of the appellants' injuries. Rather, it was the foreign effects of the price fixing scheme (increased prices abroad)."); *Empagran II*, 417 F.3d at 1270-71 & n.5 (D.C. Cir. 2005) (rejecting plaintiff's argument that the setting of "a single global price" satisfied the FTAIA, because even under this theory "it was the foreign effects of price-fixing outside of the United States that directly caused, or 'g[a]ve rise to,' their losses when they purchased vitamins abroad at super-competitive prices") (alteration in original); *Den Norske Stats Oljeselskap AS v. Heeremac VOF*, 241 F.3d 420, 426-27 (5th Cir. 2001) (explaining that "the FTAIA requires more than a 'close relationship' between the domestic injury and the plaintiff's claim; it demands that the domestic effect 'gives rise' to the claim"). The same result is warranted here because Plaintiffs cannot point to any direct, domestic effects of Defendants' conduct that proximately caused their antitrust claims.

***First***, Plaintiffs' Foreign Commerce Claims rely entirely on purported indirect effects of Defendants' conduct — not direct effects on U.S. commerce. The Ninth Circuit has held that an effect is "direct" only if it "follows as an immediate consequence of [Defendants'] activity." *LSL*, 379 F.3d at 680 (noting that a dictionary published when the FTAIA was enacted defined "direct" as "proceeding from one point to another in time or space without deviation or interruption") (quoting Webster's Third New International Dictionary 640

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1    (1982)).  "An effect cannot be 'direct' where it depends on . . . uncertain intervening

2    developments."  *Id.* at 681.  All of Plaintiffs' Foreign Commerce Claims depend upon effects

3    that do not follow "as an immediate consequence" of *Defendants'* conduct and that are

4    subject to numerous "uncertain intervening developments."  *Id.* at 680-81; *see also United*

5    *Phosphorus, Ltd. v. Angus Chem. Co.*, 131 F. Supp. 2d 1003, 1014 (N.D. Ill. 2001) ("The

6    FTAIA explicitly bars antitrust actions alleging restraints in foreign markets for inputs . . .

7    that are used abroad to manufacture downstream products . . . that may later be imported into

8    the United States.  Clearly, the domestic effects in such a case, if any, would obviously not

9    be 'direct,' much less 'substantial' and 'reasonably foreseeable.'").

10        Each of the indirect purchaser claims relies on proving that ███████████████

11   ████████████████████████████████████████████████████████████████████████

12   ███████████████████████████  Lau Decl. Ex. B at 82 (Netz Report).  To the extent

13   any purported overcharges are passed-through, ████████████████████████████

14   ████████████████████████████████████  *Id.* at 88.  Of course, ██████████

15   ████████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████  *Id.*  In order to calculate any

19   harm allegedly caused to Plaintiffs, ███████████████████████████████████

20   █████████████████████  *Id.*

21        Given the complexity of the distribution process for CRT Products, any calculation of

22   harm purportedly suffered by an indirect purchaser necessarily "depends on . . . uncertain

23   intervening developments" — namely, whether upstream firms changed their downstream

24   prices in response to the alleged overcharges on CRTs at the top of the distribution chain.

25   *LSL*, 379 F.3d at 681.  As Dr. Netz admits, ████████████████████████████████

26   ███████████████████████████  Lau Decl. Ex. B at 82 (Netz Report).  Each of the

27   decisions made by these non-conspirator firms about whether to pass-through any

28   overcharges, when to pass them through, and by how much, constitute a "deviation" and an

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

1   "interruption" between the alleged conspirators' activity and the supposed effects on

2   Plaintiffs. *LSL*, 379 F.3d at 680. Even at the final step in the distribution chain — the direct

3   sale from DAPs (and others) to the IPPs — the decision about whether to increase CRT

4   Product prices depends on multiple factors other than cost, ███████████████████████

5   ██████████████████████████████████████████████ Lau Decl. Ex. F

6   (Costco 30(b)(6) Dep. Tr. at 106:4-14, 109:1-110:21 (even when faced with a cost change,

7   whether Costco changed retail pricing depended on the magnitude of the change, Costco's

8   margins, pricing in the market and demand for the product)); Lau Decl. Ex. G (█████████

9   ███████████████████████████████████████████████████

10  ███████████████████████████████████████████████████

11  ███████████████████████████████████████████████████

12  ███████████████████████████████████████████████████

13  ██████████████████████████████████)); Lau Decl. Ex. H (Rebecca

14  Smith (Best Buy) Dep. Tr. at 137:24-138:17 (███████████████████████████

15  ███████████████████████████████████████████████████

16  ████████████████████)). Thus, any domestic effect on IPPs was not an

17  "immediate consequence" of Defendants' conduct, and therefore is not a "direct" effect

18  sufficient to recover for their antitrust claims.

19      The alleged harm suffered by DAPs is similarly dependent upon "intervening

20  developments," including their own decisions as to how to price the CRT Products they sold.

21  Even if the DAPs were otherwise permitted to recover for their indirect purchases, they can

22  do so only to the extent that they prove the amount of overcharges on CRTs that were

23  passed-through to them, as well as the portion of those overcharges that the DAPs did not

24  pass-through to their customers. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No.

25  3:07-md-1827, 2012 WL 6709621, at *1-7 (N.D. Cal. Dec. 26, 2012) (holding that

26  downstream pass-through from Best Buy, Electrograph, Kmart and Sears to their customers

27  must be considered with respect to claims brought under the laws of California, Illinois,

28  Michigan, Minnesota and New York); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

md-1827, 2014 WL 4652145, at *2 (N.D. Cal. Sept. 18, 2014) (holding that downstream pass-through from Interbond, Office Depot and Tech Data to their customers must be considered with respect to claims brought under Florida law).  Thus, any effect on DAPs is also not the "immediate consequence" of Defendants' conduct, but rather dependent upon intervening actions taken by other upstream firms, as well as the DAPs' own decisions about whether to adjust their retail prices, when to adjust them and by how much.  If Defendants' conduct had any effect on DAPs in the United States at all, this effect is plainly not "direct."

**_Second_**, no effects of Defendants' conduct on domestic commerce gave rise to Plaintiffs' claims.  The Ninth Circuit and numerous other courts have held that effects give rise to a claim only where they have "proximately caused" the Plaintiffs' injury.  *DRAM*, 546 F.3d at 988; *see also Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 414 (2d Cir. 2014); *Empagran II*, 417 F.3d at 1271.  It is not enough for Plaintiffs to prove that Defendants' conduct created domestic effects that were a "but for" cause of Plaintiffs' purported injuries.  *DRAM*, 546 F.3d at 988.  Rather, they must prove a "direct causal link between the anticompetitive practice and [Plaintiffs'] damages."  *Id.*  With respect to the Foreign Commerce Claims, no "direct causal link" exists.

For example, Plaintiffs may argue that the alleged conspirators increased prices on CRTs that they manufactured and sold in the United States.  Any domestic effect due to higher prices on these CRTs is irrelevant, however, because this motion is directed at Plaintiffs' Foreign Commerce Claims, which are premised entirely upon foreign CRT sales to non-conspirators.

Plaintiffs may also contend that the alleged conspirators intended to increase prices for CRT Products sold by non-conspirators in the United States.  This contention is similarly unavailing.  As an initial matter, ████████████████████████████████████
████████████████████████████████████████████████.  *See, e.g.*, Lau Decl. Ex. I (Pls.' Sears, Roebuck and Co. & Kmart Corp.'s Objections and Responses to Def. Hitachi Displays, Ltd.'s First Set of Requests for Admission, August 4, 2014, at 56 ("Plaintiffs are not proceeding on the theory of a finished-product conspiracy.")); Order re:

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  Voluntary Withdrawal of Indirect Purchaser Pls.' Claims as to Alleged Conspiracy Directed

2  Towards CRT Finished Products (N.D. Cal. Apr. 22, 2011), ECF No. 904.  Thus, any intent

3  argument would rely on proving that (1) the alleged conspirators raised prices of CRTs sold

4  abroad, (2) intending that the purchasers of those CRTs would pass-on the alleged

5  overcharges by raising their prices for CRT Products, (3) intending that all subsequent

6  purchasers of the CRT Products would also raise their prices, and (4) intending that

7  ultimately this chain of events would result in higher CRT Product prices in the United

8  States.  Even if Plaintiffs could prove such allegations, the fact that Defendants "knew or

9  could foresee the effect of their allegedly anti-competitive activities in the United States . . .

10  or had as a purpose to manipulate United States trade does not establish that 'U.S. effects'

11  proximately caused the [plaintiff's] harm." *Empagran II*, 417 F.3d at 1271.

12         ***Third***, any effects on the domestic market that occurred after the CRTs were first

13  purchased abroad are insufficient to give rise to Plaintiffs' claims.  The proximate cause

14  standard embodied in the "gives rise to" requirement demands that direct, domestic effects of

15  Defendants' conduct cause harm giving rise to Plaintiffs' claims — not that the foreign harm

16  allegedly suffered by the initial purchasers of CRTs abroad subsequently causes domestic

17  effects.  *See Lotes*, 753 F.3d at 414 (noting that where foreign injury later results in domestic

18  effects, such effects do not give rise to a claim because "the direction of causation runs the

19  wrong way").   With respect to the Foreign Commerce Claims, the direct effect of

20  Defendants' conduct was allegedly the injury suffered by entities other than the Plaintiffs that

21  purchased CRTs abroad.  This foreign effect is the only potential cause of Plaintiffs' injuries,

22  albeit not a proximate cause of their alleged injuries.  But Plaintiffs cannot recover unless the

23  "domestic effects of the price fixing scheme" were the "direct cause" of their injuries.

24  *Monosodium Glutamate*, 477 F.3d at 539.   Accordingly, Plaintiffs' Foreign Commerce

25  Claims are barred by the FTAIA.

26         Sharp Electronics Corporation ("SEC"), a direct action plaintiff in this litigation that

27  directly purchased CRTs from Defendants, has admitted in parallel litigation that the FTAIA

28  prohibits Plaintiffs from recovering for foreign purchases under state law.  Lau Decl. Ex. J

(Defendants' Joint Notice of Motion and Motion to Dismiss Amended Complaint Under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) at 15-18, *In re TFT-LCD (Flat Panel) Antitrust Litig.* (N.D. Cal. Feb. 19, 2010), ECF No. 1559 (arguing that "state law claims based on foreign injuries are barred to the same extent as . . . Sherman Act claims" and seeking dismissal of all indirect claims based on foreign purchases by non-parties)).  Indeed, in this case SEC has agreed to abandon its indirect purchaser claims, which were based exclusively on foreign CRT purchases made by its foreign affiliates.  Lau Decl. Ex. K (letter from Craig A. Benson, counsel for Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc., to counsel for the Defendants, dated October 14, 2014).  This Court should require the other Plaintiffs to abandon their Foreign Commerce Claims and adhere to the clear limits of the FTAIA.

*   *   *

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## VI.  CONCLUSION

For these reasons, Defendants' motion for partial summary judgment should be granted and the Court should dismiss Plaintiffs' state claims to the extent they involve CRTs incorporated into finished products or CRT Products that were first sold to a non-conspirator outside the United States.

Respectfully submitted,

Dated:  November 7, 2014                **WHITE & CASE** LLP

By: */s/ Lucius B. Lau*
                                 Christopher M. Curran (*pro hac vice*)
                                 ccurran@whitecase.com
                                 Lucius B. Lau (*pro hac vice*)
                                 alau@whitecase.com
                                 Dana E. Foster (*pro hac vice*)
                                 defoster@whitecase.com
                                 701 Thirteenth Street, N.W.
                                 Washington, DC  20005
                                 tel.: (202) 626-3600
                                 fax: (202) 639-9355

                                 *Counsel to Defendants Toshiba*
                                 *Corporation, Toshiba America, Inc.,*
                                 *Toshiba America Information Systems,*
                                 *Inc., and Toshiba America Electronic*
                                 *Components, Inc.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER BOTTS LLP

By:  _/s/ John M. Taladay_____

JOHN M. TALADAY (*pro hac vice*)
john.taladay@bakerbotts.com
JOSEPH OSTOYICH (*pro hac vice*)
joseph.ostoyich@bakerbotts.com
ERIK T. KOONS (*pro hac vice*)
erik.koons@bakerbotts.com
CHARLES M. MALAISE (*pro hac vice*)
Charles.malaise@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Avenue, N.W.
Washington DC 20004-2400
Telephone:  (202) 639-7700
Facsimile:  (202) 639-7890


JON V. SWENSON (SBN 233054)
jon.swenson@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone:  (650) 739-7500
Facsimile:  (650) 739-7699
E-mail:  jon.swenson@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips
N.V., Philips Electronics North America
Corporation, Philips Taiwan Ltd., and
Philips do Brasil, Ltda.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

By: */s/ Jeffrey L. Kessler*

WINSTON & STRAWN LLP
Jeffrey L. Kessler (*pro hac vice*)
A. Paul Victor (*pro hac vice*)
Aldo A. Badini Cal. Bar No. 257086
Eva W. Cole (*pro hac vice*)
Molly M. Donovan (*pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone:(212) 294-4692
Facsimile: (212) 294-4700
Email:    jkessler@winston.com
          abadini@winston.com
          pvictor@winston.com
          ewcole@winston.com
          mmdonovan@winston.com


WEIL, GOTSHAL & MANGES LLP
Steven A. Reiss (*pro hac vice*)
David L. Yohai (*pro hac vice*)
Adam C. Hemlock (*pro hac vice*)
767 Fifth Avenue
New York, NY 10153-0119
Telephone:(212) 310-8000
Facsimile: (212) 310-8007
Email:    steven.reiss@weil.com
          david.yohai@weil.com
          adam.hemlock@weil.com

*Attorneys for Defendants Panasonic
Corporation (f/k/a Matsushita Electric
Industrial Co., Ltd.), Panasonic Corporation
of North America, and MT Picture Display
Co., Ltd.*

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2   By: /s/ Michael W. Scarborough

3   SHEPPARD MULLIN RICHTER &
    HAMPTON LLP
    Gary L. Halling, Cal. Bar No. 66087
4   James L. McGinnis, Cal. Bar No. 95788
    Michael W. Scarborough, Cal. Bar No.
5   203524
    Four Embarcadero Center, 17th Floor
6   San Francisco, CA  94111-4109
    Telephone:(415) 434-9100
7   Facsimile: (415) 434-3947
    E-mail:  ghalling@sheppardmullin.com
8            jmcginnis@sheppardmullin.com
9            mscarborough@sheppardmullin.com

10  *Attorneys for Defendants Samsung SDI*
    *America, Inc.; Samsung SDI Co., Ltd.;*
11  *Samsung SDI (Malaysia) SDN. BHD.;*
    *Samsung SDI Mexico S.A. DE C.V.; Samsung*
12  *SDI Brasil Ltda.; Shenzen Samsung SDI Co.,*
13  *Ltd. and Tianjin Samsung SDI Co., Ltd.*

14

15

16  By: /s/ Eliot A. Adelson

17  KIRKLAND & ELLIS LLP
    Eliot A. Adelson Cal. Bar. No. 205284
18  555 California Street, 27th Floor
    San Francisco, CA 94104
19  Telephone:(415) 439-1413
    Facsimile: (415) 439-1500
20  Email:    eadelson@kirkland.com

21  *Attorneys for Defendants Hitachi, Ltd.,*
22  *Hitachi Displays, Ltd. (n/k/a Japan Display*
    *Inc.), Hitachi Asia, Ltd., Hitachi America,*
23  *Ltd., and Hitachi Electronic Devices (USA),*
    *Inc.*
24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917
22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

By: */s/ Rachel S. Brass*
  GIBSON, DUNN & CRUTCHER LLP
  Rachel S. Brass Cal. Bar. No. 219301
  Joel S. Sanders Cal. Bar. No. 107234
  Austin V. Schwing Cal. Bar. No. 211696
  555 Mission Street, Suite 3000
  San Francisco, CA 94105
  Telephone:(415) 393-8200
  Facsimile: (415) 393-8306
  Email: rbrass@gibsondunn.com
     jsanders@gibsondunn.com
     aschwing@gibsondunn.com

  *Attorneys for Defendants Chunghwa Picture*
  *Tubes, Ltd. and Chunghwa Picture Tubes*
  *(Malaysia) as to Direct Action Plaintiffs Best*
  *Buy entities, Target, Sears, Interbond, Office*
  *Depot, CompuCom, P.C. Richards, MARTA,*
  *ABC Appliance, Schultze Agency Services,*
  *and ViewSonic Only*

By: */s/ Kathy L. Osborn*
  FAEGRE BAKER DANIELS LLP
  Kathy L. Osborn (*pro hac vice*)
  Ryan M. Hurley (*pro hac vice*)
  300 N. Meridian Street, Suite 2700
  Indianapolis, IN 46204
  Telephone: (317) 237-0300
  Facsimile: (317) 237-1000
  kathy.osborn@FaegreBD.com
  ryan.hurley@FaegreBD.com

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303-2279
Telephone: (650) 324-6700
Facsimile: (650) 324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.*


By: */s/ Michael T. Brody*
JENNER&BLOCK LLP
Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
ttruax@jenner.com
mbrody@jenner.com

Brent Caslin (Cal. Bar. No. 198682)
JENNER&BLOCK LLP
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
bcaslin@jenner.com

*Attorneys for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc. and, Mitsubishi Electric Visual Solutions America, Inc.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Nathan Lane, III*
    Mark Dosker
    Nathan Lane, III
    275 Battery Street, Suite 2600
    San Francisco, CA  94111
    Telephone:  415.954.0200
    Facsimile:  415.393.9887
    Email:  mark.dosker@squirepb.com
    nathan.lane@squirepb.com

    Donald A. Wall (*Pro Hac Vice*)
    SQUIRE PATTON BOGGS (US) LLP
    1 East Washington Street, Suite 2700
    Phoenix, Arizona 85004
    Telephone:  602.528.4000
    Facsimile:  602.253.8129
    Email:  donald.wall@squirepb.com

    *Attorneys for Defendant Technologies*
    *Displays Americas LLC with respect to all*
    *cases except Office Depot, Inc. v.*
    *Technicolor SA, et al. and Sears, Roebuck*
    *and Co., et al v. Technicolor SA, et al.*

CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP

By: */s/  Jeffrey I. Zuckerman*
    Jeffrey I. Zuckerman (Pro Hac Vice)
    Ellen Tobin (Pro Hac Vice)
    101 Park Avenue
    New York, New York 10178
    Telephone: 212.696.6000
    Facsimile: 212.697.1559
    Email:  jzuckerman@curtis.com
    etobin@curtis.com

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  Arthur Gaus (SBN 289560)
2  DILLINGHAM & MURPHY, LLP
   601 California Street, Suite 1900
3  San Francisco, California 94108
   Telephone: 415.397.2700
4  Facsimile: 415.397-3300
5  Email: asg@dillinghammurphy.com

6
7  *Attorneys for Defendant Technologies
   Displays Americas LLC with respect to
8  Office Depot, Inc. v. Technicolor SA, et al.
   and Sears, Roebuck and Co. et al. v.
9  Technicolor SA, et al.*

10 FRESHFIELDS BRUCKHAUS DERINGER
11 US LLP

12
13 By: */s/ Michael Lacovara*
14     Michael Lacovara (209279)
       Freshfields Bruckhaus Deringer US LLP
15     601 Lexington Avenue, 31st Floor
       New York, NY 10022
16     Telephone: 212 277 4000
17     Facsimile: 212 277 4001
       Email: michael.lacovara@freshfields.com
18
19     Terry Calvani (53260)
       Richard Snyder (*pro hac vice*)
20     Christine Laciak (*pro hac vice*)
21     Freshfields Bruckhaus Deringer US LLP
       700 13th Street, NW, 10th Floor
22     Washington, DC 20005
23     Telephone: 202 777 4500
       Email: terry.calvani@freshfields.com
24     Email: richard.snyder@freshfields.com
25     Email: christine.laciak@freshfields.com

26
   *Attorneys for Defendant Beijing Matsushita
27  Color CRT Co., Ltd.*

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

26

1    **<u>CERTIFICATE OF SERVICE</u>**

2           On November 7, 2014, I caused a copy of "DEFENDANTS' NOTICE OF MOTION

3    AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' INDIRECT

4    PURCHASER CLAIMS BASED ON FOREIGN SALES" to be electronically filed via the

5    Court's Electronic Case Filing System, which constitutes service in this action pursuant to

6    the Court's order of September 29, 2008.

7

8                                          */s/ Lucius B. Lau*

9                                         Lucius B. Lau

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917