# Exhibit J

1  Richard S. Taffet (*pro hac vice*)
   Kenneth I. Schacter (*pro hac vice*)
2  Jon R. Roellke (*pro hac vice*)
   Colin C. West (SBN 184095)
3  BINGHAM MCCUTCHEN LLP
   Three Embarcadero Center
4  San Francisco, CA 94111-4067
   (415) 393-2000 (telephone)
5  (415) 393-2286 (facsimile)
   colin.west@bingham.com
6
   *Attorneys for Defendants*
7  Sharp Corporation
   Sharp Electronics Corporation
8
   [additional parties and counsel listed in signature block]
9
10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13  IN RE TFT-LCD (FLAT PANEL) ANTITRUST          Case No. M-07-1827-SI
    LITIGATION                                    MDL No. 1827
14  _____
15  This Document Relates To: Case No.:09-5840 SI  **DEFENDANTS' JOINT**
                                                   **NOTICE OF MOTION**
16  MOTOROLA, INC.,                                **AND MOTION TO**
                                                   **DISMISS AMENDED**
                                                   **COMPLAINT UNDER**
17              Plaintiff,                         **FED. R. CIV. P. 12(b)(1)**
        v.                                         **AND FED. R. CIV. P.**
                                                   **12(b)(6)**
18  AU OPTRONICS CORPORATION; AU OPTRONICS
    CORPORATION AMERICA, INC.; CHI MEI
19  CORPORATION; CHI MEI OPTOELECTRONICS          Date:  May 21, 2010
    CORPORATION; CHI MEI OPTOELECTRONICS          Time:  9:00 a.m.
20  CORPORATION USA, INC.; CMO JAPAN CO. LTD.;    Place: Courtroom 10, 19th
    NEXGEN MEDIATECH, INC.; CHUNGHWA PICTURE             Floor
21  TUBES LTD.; TATUNG COMPANY OF AMERICA, INC.;  Judge: The Hon. Susan Illston
    HANNSTAR DISPLAY CORPORATION; LG DISPLAY
22  CO. LTD.; LG DISPLAY AMERICA, INC.; SAMSUNG
    ELECTRONICS CO., LTD.; SAMSUNG
23  SEMICONDUCTOR, INC.; SAMSUNG ELECTRONICS
    AMERICA, INC.; SHARP CORPORATION; SHARP
24  ELECTRONICS CORPORATION; TOSHIBA
    CORPORATION; TOSHIBA AMERICA ELECTRONIC
25  COMPONENTS, INC.; TOSHIBA MOBILE DISPLAY CO.,
    LTD.; TOSHIBA AMERICA INFORMATION SYSTEMS,
26  INC.; EPSON IMAGING DEVICES CORPORATION;
    EPSON ELECTRONICS AMERICA, INC.,
27
                Defendants.
28  _____

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1  **NOTICE OF MOTION AND MOTION TO DISMISS**

2  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on May 21, 2010 at 9:00 a.m. or as soon thereafter as the

4  matter may be heard in Courtroom 10, 19th Floor, San Francisco, California, before the

5  Honorable Susan Illston, the moving defendants listed in the signature block below

6  ("Defendants") will and hereby do move the Court, pursuant to Rules 12(b)(1) and 12(b)(6) of

7  the Federal Rules of Civil Procedure, for an Order dismissing the Complaint filed by Motorola,

8  Inc. ("Motorola") to the extent it asserts:  (a) claims based on alleged foreign injuries; (b) state

9  law claims insufficient to satisfy the United States Constitution's Due Process Clause; and (c)

10  claims based on insufficient allegations that the alleged conspiracy encompassed technology

11  other than thin-film transistor ("TFT") technology.

12      This motion is based upon this Notice and Motion, the Statement of the Issues, the

13  accompanying Memorandum of Points and Authorities, argument of counsel, and such other

14  matters as the Court may consider.

15  **STATEMENT OF THE ISSUES**

16      1.      Whether Motorola's federal and state law claims based on alleged foreign injuries

17  should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

18  Procedure because the Complaint fails to allege facts sufficient to establish subject matter

19  jurisdiction or state a claim upon which relief can be granted with respect to such claims under

20  the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a.

21      2.      Whether Motorola's state law claims should be dismissed pursuant to Rules

22  12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because Motorola has failed to

23  allege contacts with the states whose laws it seeks to invoke sufficient to satisfy the United States

24  Constitution's Due Process Clause.

25      3.      Whether Motorola's claim that the alleged conspiracy encompassed non-TFT

26  technology should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil

27  Procedure because the Complaint fails to allege a plausible basis for relief on that claim under

28  Rule 8 of the Federal Rules of Civil Procedure.

1

2                                    **TABLE OF CONTENTS**

3                                                                              <u>Page</u>

4   SUMMARY OF ARGUMENT ................................................................................ 1

5   THE ALLEGED FOREIGN INJURIES ............................................................... 4

6   ARGUMENT ...................................................................................................... 6

7        I.      THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
                 MOTOROLA'S FOREIGN INJURY CLAIMS. ................................... 6
8
9                A.    The FTAIA's General Rule Barring Foreign Injury Claims Applies
                       To Motorola's Complaint. ....................................................... 7

10               B.    Motorola Must Plead Facts Sufficient To Show That Domestic
                       Effects Proximately Caused The Alleged Foreign Injuries ................. 9
11
12               C.    The Alleged Foreign Injuries Were Not Proximately Caused By
                       The Domestic Effects Of The Alleged Conspiracy ............................ 12

13               D.    Motorola's State Law Claims Based On Foreign Injuries Also Are
                       Barred. ......................................................................... 15
14
15       II.     MOTOROLA'S STATE LAW CLAIMS SHOULD BE DISMISSED
                 FOR FAILURE TO ALLEGE SUFFICIENT CONTACTS WITH
16               RELEVANT STATES. ...................................................................... 18

17       III.    MOTOROLA'S COMPLAINT FAILS TO ALLEGE ANY FACTS IN
                 SUPPORT OF ITS EXPANDED NON-TFT CONSPIRACY CLAIM. ............. 22

18   CONCLUSION .................................................................................................. 25

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Allstate Ins. Co. v. Hague*,
449 U.S. 302 (1981) ............................................................................................ 18, 19

*Amarel v. Connell*,
202 Cal. App. 3d 137 (1988) ...................................................................................... 17

*Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*,
2008 U.S. Dist. LEXIS 107311 (D.N.J. Dec. 30, 2008) .............................................. 9

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ................................................................................... 22, 23, 25

*Bassidji v. Goe*,
413 F.3d 928 (9th Cir. 2005) ..................................................................................... 13

*Basso v. Utah Power & Light Co.*,
495 F.2d 906, 909 (10th Cir. 1974) ........................................................................... 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................... 25

*Bergstram v. Noah*,
974 P. 2d 520 (Kan. 1999) .......................................................................................... 18

*Bowman v. Chicago & N.W. Ry. Co.*,
125 U.S. 465 (1888) ................................................................................................... 16

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) ....................................................................................... 24

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ................................................................................................... 21

*Buttfield v. Stanahan*,
192 U.S. 470 (1904) ................................................................................................... 16

*CSR Ltd. v. CIGNA Corp.*,
405 F. Supp. 2d 526 (D.N.J. 2005) ......................................................................... 8, 18

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ................................................................................................... 16

*Dee-K Entrs., Inc. v. Heveafil Snd. Bhd.*,
299 F.3d 281 (4th Cir. 2002) ....................................................................................... 7

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

*Den Norske Stats Oljeselskap AS v. HeereMac Vof,*
  241 F.3d 420 (5th Cir. 2001) .................................................................................................. 10

*eMag Solutions LLC v. Toda Kogyo Corp.,*
  2005 WL 1712084 (N.D. Cal. July 20, 2005) ........................................................................ 8

*Emerson Elec. Co. v. LeCarbone Lorraine, S.A.,*
  500 F. Supp. 2d 437 (D.N.J. 2007) ............................................................................... passim

*Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.,*
  417 F.3d 1267 (D.C. Cir. 2005) ..................................................................................... passim

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.,*
  542 U.S. 155 (2004) ....................................................................................................... passim

*Ford Motor Co. v. Lyons,*
  405 N.W.2d 354 (Wis. Ct. App. 1987) ................................................................................ 18

*Galavan Supplements, Ltd. v. Archer Daniels Midland Co.,*
  1997 WL 732498 (N.D. Cal. Nov. 19, 1997) ....................................................................... 15

*Georgine v. Amchem Prods.,*
  83 F.3d 610 (3d Cir. 1996) ................................................................................................... 20

*Gerling Global Reinsurance Corp. of Am. v. Quackenbush,*
  2000 WL 777978 (E.D. Cal. June 9, 2000) .......................................................................... 16

*Health Prof'ls, Ltd. v. Johnson,*
  791 N.E.2d 1179 (Ill. App. Ct. 2003) .................................................................................. 17

*Herrera v. Michelin N. Am., Inc.,*
  2009 U.S. Dist. LEXIS 21022 (S.D. Tex. Mar. 16, 2009) .................................................. 21

*Hines v. Davidowitz,*
  312 U.S. 52 (1994) ............................................................................................................... 16

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
  2006 WL 515629 (N.D. Cal. Mar. 1, 2006) ......................................................................... 15

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
  546 F.3d 981 (9th Cir. 2008) ......................................................................................... passim

*In re Graphics Processing Units Antitrust Litig.,*
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) ......................................................................... 19, 21

*In re Intel Corp. Microprocessor Antitrust Litig.,*
  452 F. Supp. 2d 555 (D. Del. 2006) ................................................................................. 8, 15

*In re Intel Corp. Microprocessor Antitrust Litig.,*
  476 F. Supp. 2d 452 (D. Del. 2007) ................................................................................. 9, 16

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

*In re Monosodium Glutamate Antitrust Litig.*,
  2005 WL 2810682 (D. Minn. Oct. 26, 2005) ...................................................... 12

*In re Monosodium Glutamate Antitrust Litig.*,
  477 F.3d 535 (8th Cir. 2007) ........................................................................... 10

*In re Nat'l Mortgage Equity Corp. Mortgage Pool Certs. Sec. Litig.*,
  636 F. Supp. 1138 (C.D. Cal. 1986) ................................................................ 14

*In re Relafen Antitrust Litig.*,
  221 F.R.D. 260 (D. Mass. 2004) ................................................................ 19, 22

*In re Rubber Chems. Antitrust Litig.*,
  504 F. Supp. 2d 777 (N.D. Cal. 2007) ........................................................ passim

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2008 WL 2219837 (N.D. Cal. May 27, 2008) ..................................................... 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  599 F. Supp. 2d 1179 (N.D. Cal. 2009) ........................................................... 24

*Japan Line, Ltd. v. County of L.A.*,
  441 U.S. 434 (1979) .................................................................................. 15, 16

*Keating v. Philip Morris, Inc.*,
  417 N.W.2d 132 (Minn. Ct. App. 1987) ........................................................... 18

*Kendall v. Visa U.S.A. Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ......................................................................... 22

*Knott v. McDonald's Corp.*,
  147 F.3d 1065 (9th Cir. 1998) ......................................................................... 13

*Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.*,
  2005 WL 2207017 (S.D.N.Y. Sept. 8, 2005) ..................................................... 11

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ............................................................................ 19

*Metro Indus., Inc. v. Sammi Corp.*,
  82 F.3d 839 (9th Cir. 1996) ............................................................................. 17

*Nat'l Foreign Trade Council v. Natsios*,
  181 F.3d 38 (1st Cir. 1999) ............................................................................. 16

*Orr v. Beamon*,
  77 F. Supp. 2d 1208 (D. Kan. 1999) ................................................................ 18

*Padilla v. Yoo*,
  633 F. Supp. 2d 1005 (N.D. Cal. 2009) ............................................................ 25

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

*Papst Motoren GmbH v. Kanematsu-Goshu, Inc.*,
629 F. Supp. 864 (S.D.N.Y. 1986) ........................................................................ 9

*Pecover v. Elecs. Arts Inc.*,
633 F. Supp. 2d 976 (N.D. Cal. 2009) ................................................................ 19

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ............................................................................ 18, 20, 21

*Rose v. Vulcan Materials Co.*,
194 S.E. 2d 521 (N.C. 1973) .............................................................................. 18

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........................................................................... 15

*Silvers v. Sony Pictures Entm't, Inc.*,
402 F.3d 881 (9th Cir. 2005) ......................................................................... 14, 20

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ............................................................................. 12

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
2007 WL 1056783 (N.D. Cal. Apr. 5, 2007) ....................................................... 6

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
534 F. Supp. 2d 1101 (N.D. Cal. 2007) ......................................................... 6, 10

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
608 F. Supp. 2d 1166 (N.D. Cal. 2009) ..................................................... passim

*Tennessee et rel. Leech v. Levi Strauss & Co.*,
1980 WL 4946 (Tenn. Ch. Ct. Sept. 25, 1980) ................................................. 18

*The 'In' Porters, S.A. v. Hanes Printables, Inc.*,
663 F. Supp. 494 (M.D.N.C. 1987) ................................................................... 18

*Tidenberg v. Bidz.com, Inc.*,
2009 U.S. Dist. LEXIS 21916 (C.D. Cal. Mar. 4, 2009) .................................... 21

*Tidwell v. Thor Indus.*,
2007 U.S. Dist. LEXIS 21819 (S.D. Cal. Mar. 26, 2007) .................................. 19

*Tosco Corp. v. Cmtys. for a Better Env't*,
236 F.3d 495 (9th Cir. 2001) .............................................................................. 6

*Turicentro, S.A. v. Am. Airlines Inc.*,
303 F.3d 293 (3d Cir. 2002) ............................................................................... 8

*U.S. v. LSL Biotechnologies*,
379 F.3d 672 (9th Cir. 2004) .............................................................................. 6

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

*United Phosphorus Ltd. v. Angus Chem. Co.*,
    131 F. Supp. 2d 1003 (N.D. Ill. 2001) ................................................................ 9

*Vinci v. Waste Mgmt., Inc.*,
    43 Cal. Rptr. 2d 337 (Cal. Ct. App. 1995) ......................................................... 17

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ............................................................................. 19

**STATUTES**

15 U.S.C. § 1 ................................................................................................................ 1

15 U.S.C. § 6a .................................................................................................... 1, 10

ARIZ. REV. STAT. ANN. § 44-1412 (2008) ................................................................ 18

D.C. CODE § 28-4515 (2008) ...................................................................................... 18

740 ILL. COMP. STAT. 10. ............................................................................................ 17

IOWA CODE § 553.2 (2008) ......................................................................................... 18

NEV. REV. STAT. § 598A.050 (2008) ......................................................................... 18

N.M. STAT. § 57-1-15 (2008) ...................................................................................... 18

**OTHER AUTHORITIES**

Fed.R.Civ.P. 12(b)(1) ........................................................................................... passim

Fed.R.Civ.P. 12(b)(6) ........................................................................................... passim

Fed.R.Civ.P. 8 ....................................................................................................... 7, 25

Restatement (Third) Foreign Relations Law, § 403 ................................................... 17

U.S. CONST. art. I, § 8, cl. 3 ........................................................................................ 15

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    <u>**SUMMARY OF ARGUMENT**</u>

3    Motorola's Amended Complaint ("Complaint") is flawed and should be dismissed to the

4    extent it asserts:  (a) federal and state law claims based on alleged foreign injuries over which

5    this Court lacks subject matter jurisdiction; (b) state law claims that fail to allege contacts with

6    the particular states sufficient to meet the standards of Due Process; and (c) claims based on

7    insufficient allegations that the alleged conspiracy encompassed technology other than thin film

8    transistor ("TFT") technology.[1]

9    *First*, this Court lacks subject matter jurisdiction under the Foreign Trade Antitrust

10   Improvements Act ("FTAIA"), 15 U.S.C. § 6a, over claims based on the foreign injuries alleged

11   in the Complaint.  Specifically, the Complaint alleges injuries arising not only from Motorola's

12   own purchases of liquid crystal display panels ("LCD Panels") in the United States but also from

13   purchases abroad, including:  (a) Motorola's own foreign purchases; (b) all purchases by

14   Motorola's foreign affiliates (on whose behalf Motorola purports to sue as an assignee),

15   including its affiliates based in China and Singapore; and (c) foreign purchases by certain

16   unspecified "others," which appears to refer to foreign non-party entities who purchased LCD

17   Panels abroad for use in finished products subsequently sold to Motorola and its foreign

18   affiliates.  Properly analyzed as separate and distinct from any claims based on transactions in

19   the United States, such foreign injury claims are beyond the reach of the Sherman Act and barred

20   as a matter of law under the FTAIA.

21   Motorola tries to avoid this necessary conclusion by invoking the FTAIA's "domestic

22   injury exception," which requires allegations sufficient to establish that the conspiracy's effects

23   in the United States "gave rise to" (or "proximately caused") the foreign injuries for which

24   Motorola seeks relief.  The Complaint, however, fails to plead such facts and, instead, repeats the

25   _____

26   [1]    This motion is limited to grounds for dismissal not previously considered by this Court in
     these MDL proceedings.  Moreover, it does not seek the dismissal of Motorola's entire
27   Complaint, but only those claims over which this Court lacks subject matter jurisdiction as a
     matter of law or for which insufficient facts are pled.

28

1    same conclusory allegations that this and other courts have uniformly rejected as insufficient to

2    establish subject matter jurisdiction under the FTAIA.

3         The Complaint, for example, alleges a "global market" for LCD Panels and a "worldwide

4    conspiracy" that, according to Motorola, impacted prices both here and abroad.  But settled

5    precedent holds that such allegations do not meet the FTAIA's proximate cause requirement as a

6    matter of law, even when coupled with further allegations that domestic and foreign markets are

7    interrelated or that prices paid abroad were established pursuant to a single fixed global price.

8    *See*, *e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 989-90

9    (9th Cir. 2008) ("*DRAM*") (an alleged "direct correlation between the U.S. price and the prices

10   abroad" is insufficient to establish FTAIA exception); *Empagran S.A. v. F. Hoffmann-LaRoche,*

11   *Ltd.*, 417 F.3d 1267, 1271 (D.C. Cir. 2005) ("*Empagran II*") (global conspiracy allegations

12   insufficient to establish that increased U.S. prices "give rise" to foreign injury claim);  *In re*

13   *Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 786 (N.D. Cal. 2007) ("*Rubber*

14   *Chemicals*") (allegations of "inextricably linked" global prices insufficient to establish that

15   domestic effects "give rise" to Plaintiffs' foreign injuries).

16        Similarly deficient are Motorola's allegations that its foreign affiliates and other non-

17   party entities abroad paid LCD Panel prices negotiated by Motorola's "supply chain

18   organization" allegedly based in the United States and responsible for Motorola's "worldwide

19   purchasing processes."  Virtually identical allegations of a "global procurement strategy" and

20   "integrated purchasing operations" have "already been discredited" and do not support "a viable

21   legal theory" on which to establish the causal nexus required under the FTAIA.  *Sun*

22   *Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1186 (N.D. Cal. 2009)

23   ("*Sun III*") (citing *DRAM*); *see also Emerson Elec. Co. v. LeCarbone Lorraine, S.A.*, 500 F.

24   Supp. 2d 437, 446 (D.N.J. 2007) ("*Emerson Electric*") ("integrated purchasing operations" are

25   "merely a complex description" of a causation theory that courts have uniformly rejected).

26        These legal principles apply equally to Motorola's state law claims based on foreign

27   injuries.  The Commerce and Supremacy Clauses require that state antitrust laws be construed in

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1  accord with the FTAIA's jurisdictional limitations.  Principles of prescriptive comity likewise

2  require that state laws be so construed to respect the sovereign authority of foreign nations to

3  regulate their commercial affairs.  The state laws of California (upon which Motorola principally

4  relies) and Illinois (upon which Motorola seeks to rely "in the alternative"), as well as other state

5  laws alleged in the Complaint (upon which Motorola seeks to rely in the "further alternative"),

6  also require that they be interpreted consistently with federal antitrust law.  Accordingly, the

7  Court should dismiss for lack of subject matter jurisdiction the Complaint's federal and state law

8  claims based directly or indirectly on purchases of LCD Panels abroad.

9      _Second_, all of Motorola's state law claims should be dismissed because the Complaint

10  does not allege contacts between the respective states and either the alleged purchases or the

11  parties sufficient to satisfy Due Process.  Indeed, the Complaint fails even to identify any state in

12  which Motorola, its foreign affiliates or the unspecified "others" alleged in the Complaint

13  purchased LCD Panels, which is the single most important factor in a price fixing case in

14  assessing whether a plaintiff has alleged contacts sufficient to meet Due Process standards.  Nor

15  does Motorola explain why or under what circumstances the Court would apply Illinois law "in

16  the alternative" to California law, or the laws of other states in the "further alternative" to _any_ of

17  the claims alleged in the Complaint, much less the claims that Motorola purports to assert on

18  behalf of foreign affiliates based in China or Singapore who purchased panels abroad from

19  Defendants based in Korea, Taiwan, or Japan.

20      _Third_, Motorola's Complaint should be dismissed to the extent it seeks to expand the

21  scope of the alleged conspiracy to encompass non-TFT display technologies.  Motorola alleges

22  no facts at all to support the assertion that Defendants conspired to fix prices for not only TFT-

23  LCD panels but also color and monochrome super-twist nematic panels.  Instead, Motorola's

24  Complaint relies verbatim on precisely the same factual allegations as the amended class

25  complaints and the guilty pleas resulting from the government's criminal investigation, all of

26  which describe conduct involving only TFT-LCD panels.  Nothing in Motorola's Complaint

27  provides any plausible basis to support any alleged conspiracy beyond that technology.

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

**THE ALLEGED FOREIGN INJURIES**

1    Motorola purports to bring this action on behalf of itself and as an assignee of its foreign

2    affiliates, "including Motorola Asia Limited, Motorola (China) Investment Limited, Hangzhou

3    Motorola Cellular Equipment Co. Ltd., Motorola (China) Electronics Limited, Motorola

4    Electronics Pte. Ltd., [and] Motorola Trading Center Pte. Ltd."  Amended Complaint for

5    Damages and Injunctive Relief ("Compl.") ¶¶ 1, 24.  Although the Complaint's substantive

6    allegations refer only to "Motorola," each such reference actually includes Motorola, Inc. and all

7    of the foreign affiliates on whose behalf it purports to sue.  Compl. ¶ 1.

8    The Complaint alleges a global conspiracy by suppliers of LCD Panels used in mobile

9    wireless handsets, two-way radios, computer monitors, televisions and other electronic products.

10   Compl. ¶ 1.  It asserts that Defendants "collectively controlled the market for LCD Panels, both

11   globally and in the United States," largely as the result of foreign conduct that allegedly caused

12   injury abroad.  *See* Compl. ¶ 64; Compl. ¶¶ 81, 85 (alleging foreign Defendants participated in

13   "'Crystal Meetings' [that] occurred in Taiwan," and other purported acts in furtherance of the

14   alleged conspiracy in Japan, Taiwan and South Korea); Compl. ¶¶ 2, 10 (alleging foreign

15   Defendants sold LCD Panels "to Motorola in the United States and around the world"); Compl.

16   ¶¶ 2, 24, 27 (alleging that the "global conspiracy" impacted "global prices" and that Motorola's

17   foreign affiliates "suffered injury as a result of defendants' antitrust violations").

18   Attempting to invoke jurisdiction under the FTAIA for its foreign injury claims,

19   Motorola alleges that Defendants' conduct "involved U.S. import trade or commerce and/or were

20   within the flow of, were intended to, and did have a direct, substantial, and reasonably

21   foreseeable effect on U.S. domestic and import trade or commerce."  Compl. ¶ 15.  It alleges that

22   "[i]n particular, defendants' and their co-conspirators' conspiracy directly and substantially

23   affected the price of LCD Panels and products which contained LCD Panels ('LCD

24   Products') purchased in the United States."  *Id.*  And it asserts that "[t]hese effects give rise

25   to Motorola's antitrust claims."  *Id.*; *see also* Compl. ¶ 166 (asserting that the injuries alleged

26   in the Complaint were a "proximate and reasonably foreseeable result of defendants' conspiracy

27   to fix the price of LCD Panels.").

1      Beyond these legal conclusions, Motorola does not allege any facts to show that the

2  conspiracy's averred effects in the United States "gave rise" to, or proximately caused, the

3  alleged foreign injuries. *See, e.g.*, Compl. ¶¶ 2, 3, 10, 15, 27, and 166. The Complaint, instead,

4  claims only that Motorola, from its Illinois headquarters, "directed and approved the prices and

5  quantities of LCD Panels purchased throughout the world and incorporated into Motorola

6  wireless devices and two-way radios." Compl. ¶ 25. According to the Complaint, Motorola

7  accomplished this via a "supply chain organization" that oversaw both "domestic and worldwide

8  purchasing" by its foreign affiliates and certain other non-party, unnamed "original design

9  manufacturers" ("ODMs") and "electronic manufacturing services" ("EMS") providers "who

10  assembled mobile devices for delivery to Motorola." Compl. ¶¶ 25-26. The Complaint,

11  however, does not allege any facts about how any claimed injury suffered by Motorola, its

12  foreign affiliates or any alleged non-party ODMs or EMS providers in connection with

13  transactions abroad arose, even theoretically, from the conspiracy's alleged effects in the United

14  States.

15      Motorola also alleges that its foreign affiliates who allegedly suffered injury abroad

16  "assigned to Motorola, Inc., all of [their] rights, title, and interest in and to all claims, demands,

17  and causes of action arising out of or relating to the conduct and transactions that are the subject

18  of this action." Compl. ¶ 24. But other than the purported assignment and a general description

19  of the affiliates as "subsidiaries," the Complaint does not allege any facts about Motorola's

20  relationship with its foreign affiliates, much less any facts about any transactions through which

21  those foreign affiliates obtained LCD Panels abroad and allegedly suffered injury as a result.

22  Nor does it allege any facts indicating any connection between any of Motorola's foreign

23  affiliates (or the claims they purportedly assigned to Motorola), or any non-party ODMs or EMS

24  providers, and any state whose laws Motorola invokes directly, "in the alternative," or "in the

25  further alternative."

26

27

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

**ARGUMENT**

I.  **THE COURT LACKS SUBJECT MATTER JURISDICTION OVER**
    **MOTOROLA'S FOREIGN INJURY CLAIMS.**

Whether the FTAIA bars Motorola's foreign injury claims is a question of subject matter jurisdiction under Rule 12(b)(1).  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2008 WL 2219837, at *1 (N.D. Cal. May 27, 2008) (Court lacks subject matter jurisdiction under the FTAIA to enjoin a Japanese joint venture).[2]  Thus, the Complaint must plead "affirmatively and distinctly, the existence of whatever is essential" to meet the FTAIA's jurisdictional requirements, *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), and its failure to do so requires dismissal as a matter of law.[3]

The Complaint here does not meet this burden.  Instead, it affirmatively pleads its foreign injury claims straight into the FTAIA's jurisdictional bar.  The Court, therefore, should enter an order dismissing: (a) Motorola's own claims based on foreign transactions; (b) claims Motorola purports to assert on behalf of its foreign affiliates; and (c) any claims based on foreign transactions with any of the unidentified non-party ODMs and EMS providers referred to in the Complaint (*i.e.*, where the non-party ODMs and EMS providers purchased LCD Panels in foreign commerce).[4]

---

[2]  *See also U.S. v. LSL Biotechnologies,* 379 F.3d 672, 677 (9th Cir. 2004) (evaluating foreign injury claims as a question of subject matter jurisdiction under the FTAIA); *Empagran II,* 417 F.3d at 1268-69 (same); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 534 F. Supp. 2d 1101 (N.D. Cal. 2007) ("*Sun II*") (same).

[3]  Indeed, Courts routinely dismiss claims at the pleading stage under Rule 12(b)(1) where the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See, e.g., DRAM*, 546 F.3d at 984-85, 990-91 (affirming dismissal and denial of leave to amend where the "complaint, considered in its entirety, on its face fails to allege facts sufficient" to overcome the FTAIA's jurisdictional bar); *Rubber Chemicals*, 504 F. Supp. 2d at 781-787 (dismissing complaint under the FTAIA without leave to amend at the pleading stage).

[4]  Dismissal of Motorola's foreign injury claims is also warranted for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See DRAM*, 546 F.3d at 985 n.3 (affirming dismissal under FTAIA where the "result and analysis are the same" whether the statute is viewed as jurisdictional under Rule 12(b)(1) or establishing an element of the claim under Rule 12(b)(6)); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 2007 WL 1056783, at *4 (N.D. Cal. Apr. 5, 2007) ("*Sun I*") (dismissing complaint under

(Footnote Continued on Next Page.)

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

**A.**     **The FTAIA's General Rule Barring Foreign Injury Claims Applies To**

**Motorola's Complaint.**

The FTAIA "lays down a general rule placing *all* (nonimport) activity involving foreign commerce outside the Sherman Act's reach." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004) ("*Empagran I*") (emphasis in original). "It then brings such conduct back within the Sherman Act's reach *provided that* the conduct *both* (1) sufficiently affects American commerce, *i.e.*, it has a 'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or (certain) export commerce, *and* (2) has an effect of a kind that antitrust law considers harmful, *i.e.,* the 'effect' must 'giv[e] rise to a [Sherman Act] claim.'" *Id.* (emphasis in original). This narrow, two-pronged exception to the FTAIA's general bar of foreign injury claims is known as the statute's "domestic injury" exception. *DRAM*, 546 F.3d at 985. Here, the FTAIA's general rule applies and Motorola fails to plead facts sufficient to establish the statute's domestic injury exception.

*First*, Motorola's claims are "in significant part foreign" and, therefore, are subject to the FTAIA's general rule barring foreign injury claims. *Empagran I*, 542 U.S. at 158. Specifically, Motorola asserts claims on behalf of itself and its foreign affiliates based on an alleged global conspiracy that supposedly "controlled the market for LCD Panels," both in the United States and in foreign countries. Compl. ¶¶ 2, 24, 64. And it expressly seeks recovery for foreign transactions, claiming that its foreign affiliates "suffered injury as a result of the defendants' antitrust violations." Compl. ¶ 24; *see also* Compl. ¶ 27 (the alleged conspiracy "was the proximate cause of Motorola and its affiliates paying artificially-elevated prices for LCD Panels delivered throughout the United States and around the world."). Because the Complaint unambiguously seeks to recover for alleged foreign injuries caused by alleged foreign conduct, the FTAIA's general exclusion of foreign injury claims applies. *See Dee-K Entrs., Inc. v.*

---

(Footnote Continued from Previous Page.)

Rule 8 because it failed to allege facts sufficient "to provide fair notice of the entire basis – *i.e.*, foreign harm versus domestic harm – for the plaintiffs' claims" under the FTAIA).

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1   *Heveafil Snd. Bhd.*, 299 F.3d 281, 287 (4th Cir. 2002) (FTAIA applies to allegations of "a largely

2   foreign conspiracy with some domestic elements, aimed at a global market").

3       *Second,* Motorola's allegations of domestic injuries do not spare from dismissal under the

4   FTAIA its claims based on foreign injuries.  Where both foreign and domestic injury claims are

5   alleged, the foreign injury claims are analyzed separately for jurisdictional purposes.  *See, e.g.,*

6   *Sun III*, 608 F. Supp. 2d at 1184 (analyzing foreign injury claims separately from plaintiffs'

7   domestic injury claims); *Rubber Chemicals*, 504 F. Supp. 2d at 781-84 (FTAIA does not "extend

8   jurisdiction over foreign injury independent of domestic effects merely because the same

9   plaintiff is also able to allege domestic injury caused by the same anticompetitive conduct."); *In*

10  *re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 562 (D. Del. 2006)

11  (retaining domestic injury claims and dismissing foreign injury claims); *CSR Ltd. v. CIGNA*

12  *Corp.*, 405 F. Supp. 2d 526, 549, 551-52 (D.N.J. 2005) (same); *eMag Solutions LLC v. Toda*

13  *Kogyo Corp.*, 2005 WL 1712084 (N.D. Cal. July 20, 2005) (same).

14      *Third*, and similarly, Motorola's foreign injury claims must also be analyzed separately

15  from any claims based on conduct allegedly involving "import trade or import commerce."

16  Although the Complaint alleges that some Defendants engage in some import commerce with

17  respect to LCD Panels or LCD Products (*see, e.g.*, Compl. ¶ 137), such allegations do not confer

18  jurisdiction over claims based on Defendants' *nonimport* activity in foreign commerce.  *See*

19  *Empagran I*, 542 U.S. at 162 (the FTAIA excludes from the scope of the Sherman Act "*all*

20  (nonimport) activity involving foreign commerce") (emphasis in original).  For that reason, the

21  FTAIA's exclusion for "import trade or import commerce" is inapplicable for purposes of this

22  motion and does not salvage Motorola's claims based on transactions abroad.[5]

23  _____

24  [5]     Alleged purchases of LCD Panels from defendants abroad do not become "import

25  commerce" under the FTAIA merely because *Motorola*, one of its affiliates, or any non-party
    ODMs or EMS providers subsequently brought such products into the United States.  *See*

26  *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 303 (3d Cir. 2002) ("dispositive inquiry is
    whether the conduct of defendants, not plaintiffs, involves 'import trade or import commerce'" and fact

27  that entities other than defendants may have subsequently imported product into the United
    States is immaterial).

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1      **B.      Motorola Must Plead Facts Sufficient To Show That Domestic Effects**
2               **Proximately Caused The Alleged Foreign Injuries.**

3          Because the FTAIA's general rule barring foreign injury claims applies, Motorola must

4  allege facts sufficient to establish that its claims based on foreign commerce meet both prongs of

5  the FTAIA's "domestic injury" exception.

6          The first prong of the "domestic injury exception" requires Motorola to identify a "direct,

7  substantial, and reasonably foreseeable" domestic effect of Defendants' alleged foreign

8  conspiracy.  The only potential domestic effect alleged in the Complaint is higher prices for LCD

9  Panels the Defendants shipped directly into the United States.  *See, e.g.,* Compl. ¶ 154.  Although

10  Motorola asserts that the alleged conspiracy also elevated prices in the United States for "LCD

11  Products" (*i.e.*, finished products containing LCD Panels as components) or for panels shipped

12  into the United States by entities other than the Defendants (Compl. ¶¶ 15, 132-33, 135-37), any

13  such domestic effects "would not be 'direct,' much less 'substantial' and 'reasonably

14  foreseeable.'"  *United Phosphorus Ltd*. *v. Angus Chem. Co.,* 131 F. Supp. 2d 1003, 1013-14

15  (N.D. Ill. 2001) ("[t]he FTAIA explicitly bars antitrust actions alleging restraints in foreign

16  markets for inputs … that are used abroad to manufacture downstream products … that may later

17  be imported into the United States"); *see also, Animal Sci. Prods., Inc. v. China Nat'l Metals &*

18  *Minerals Imp. & Exp. Corp.*, 2008 U.S. Dist. LEXIS 107311, at *48 (D.N.J. Dec. 30, 2008)

19  (alleged domestic effects are not sufficiently direct with respect to products brought into and sold

20  in the United States by persons *other than defendants*); *Papst Motoren GmbH v. Kanematsu-*

21  *Goshu, Inc.*, 629 F. Supp. 864, 869 (S.D.N.Y. 1986); *In re Intel Corp. Microprocessor Antitrust*

22  *Litig.*, 476 F. Supp. 2d 452, 456-57 (D. Del. 2007).

23          The Court, however, need not address whether *any* of the domestic effects alleged in the

24  Complaint were sufficiently "direct," "substantial" or "reasonably foreseeable" under the first

25  prong of the domestic injury exception because Motorola fails to plead facts sufficient to show

26  —under the second prong of the exception—that any such domestic effects "gave rise to" the

27  alleged foreign injuries.

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    Following the Supreme Court's decision in *Empagran I*, federal courts (including the

2    Ninth Circuit) have uniformly held that "the 'gives rise to' language of §6a … requires a plaintiff

3    to establish a direct or proximate causal relationship" between the alleged anticompetitive effects

4    in the United States and the plaintiff's alleged foreign injury. *DRAM*, 546 F.3d at 987 (relying

5    on *Empagran II*, 417 F.3d at 1271); *see also In re Monosodium Glutamate Antitrust Litig.*, 477

6    F.3d 535, 539 (8th Cir. 2007) ("a causation standard less than that of proximate cause would

7    effectively expand the Sherman Act's scope beyond that contemplated by the FTAIA").[6]

8    This "direct or proximate" cause requirement is not satisfied by allegations showing a

9    mere "but for" nexus. *DRAM*, 546 F. 3d at 987. It is not, therefore, enough to allege that U.S.

10   and foreign prices are higher for the same reason or that "higher prices abroad were triggered as

11   a result of higher prices in the U.S." *Sun II*, 534 F. Supp. 2d at 1114 (citing *Empagran I*); *see*

12   *also Den Norske Stats Oljeselskap AS v. HeereMac Vof*, 241 F.3d 420, 427 (5th Cir. 2001)

13   (worldwide conspiracy allegations are insufficient to meet plaintiff's "burden of alleging that its

14   injury arose from the conspiracy's proscribed effects on United States commerce").

15   The plaintiffs in both *DRAM* and *Empagran II,* for example, attempted to rescue their

16   foreign injury claims based on allegations of a global conspiracy to set supra-competitive prices

17   both domestically and abroad. In both cases, the plaintiffs alleged that defendants could not have

18   accomplished their price fixing overseas unless they also fixed prices in the U.S. These

19   allegations were rejected as insufficient to establish proximate cause. *See DRAM*, 546 F.3d at

20   988 (plaintiff's "but for" causation theory that "[t]he United States prices were the source of, and

21   substantially affected the worldwide DRAM prices" insufficient to establish jurisdiction under

22   the FTAIA); *Empagran II,* 417 F.3d at 1270 (rejecting plaintiffs' arbitrage theory that defendants

23   "were able to sustain super-competitive prices abroad only by maintaining super-competitive

---

25   [6]    This "proximate cause standard is consistent with principles of comity—'the respect
26   sovereign nations afford each other by limiting the reach of their laws.'" *DRAM*, 546 F.3d at 987
     (quoting *Empagran II*). "To interpret the FTAIA broadly as requiring only 'but for' causation
27   would risk the very sort of interference [with the sovereign authority of other nations] that we
     ordinarily seek to avoid." *Id.* (citing *Empagran I*).

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1  prices in the United States"); *Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.,* 2005 WL

2  2207017, at *12 (S.D.N.Y. Sept. 8, 2005) (mere allegations of the "inter-dependence of markets

3  cannot be sufficient to satisfy the requirement that a domestic effect 'gives rise to' the plaintiff's

4  claim").

5       This Court's decision in *Rubber Chemicals* is also instructive.  The plaintiffs there

6  alleged a conspiracy to bring about a "single worldwide price increase" by fixing prices in both

7  domestic and foreign markets, and like Motorola here, sued on behalf of their "subsidiaries and

8  affiliates" who purchased products abroad.  504 F. Supp. 2d at 779, 786.  The plaintiffs argued

9  that the "same fixed prices and pricing relationship" gave rise to both the domestic and foreign

10  injuries and that foreign prices were "inextricably linked and correlated" with U.S. prices.  *Id.* at

11  785-86.  Judge Jenkins rejected that argument, finding that although the foreign and domestic

12  prices resulted from the same anticompetitive conduct, the domestic effect of that conduct (*i.e.*,

13  higher prices in U.S. commerce) did not give rise to the foreign injury (*i.e.*, higher prices in

14  foreign commerce) on which plaintiffs based part of their claims.  *Id.* at 782.

15       Based on these principles, allegations that a domestic plaintiff managed a "global

16  procurement process" from the United States are likewise insufficient to establish proximate

17  cause.  The plaintiff in *Sun III*, for example, alleged that its foreign affiliates "purchased

18  [products abroad] at prices set, from vendors chosen, and amounts determined by [plaintiff at its]

19  headquarters in California."  608 F. Supp. 2d at 1186-189.  Judge Hamilton found that such

20  allegations "had already been discredited" and failed to meet the domestic injury exception,

21  noting that "[b]oth this Court and the Ninth Circuit have held that, to the extent plaintiff's

22  proximate causation theory rests on proof of a global procurement strategy, this is *not a viable*

23  *legal theory*."  *Id.* at 1186 (citing *DRAM*; emphasis added).

24       In *Emerson Electric*, plaintiffs similarly alleged that they were "multi-national

25  corporations, with unitary purchasing organizations, [with] headquarters and/or significant

26  operations located in the U.S." and that product purchases were "generally made . . . at a global

27  level by a single purchasing unit at each company."  500 F. Supp. 2d at 445.  The court held that

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    "this is merely a complex description" of the worldwide price-fixing theory "that other courts

2    have rejected as a basis for subject matter jurisdiction over claims related to foreign commerce."

3    *Id.* at 446.

4          As discussed below, Motorola's Complaint offers the very same conclusory allegations of

5    causation that these courts uniformly have rejected as insufficient as matter of law.  Indeed,

6    based on allegations identical to those alleged here, these courts held that no causal link between

7    higher U.S. prices and foreign injuries was established; instead, it was "the foreign effects of

8    price-fixing outside of the United States that directly caused, or 'gave rise to,' [plaintiffs'] losses

9    outside of the United States when they purchased [products] abroad at super-competitive prices."

10   *Empagran II*, 417 F.3d at 1271; *see also In re Monosodium Glutamate Antitrust Litig.,* 2005 WL

11   2810682, at *3 (D. Minn. Oct. 26, 2005), *aff'd*, 477 F.3d 535 (8th Cir. 2007) (a "global price-

12   fixing cartel theory establishes only an indirect relationship between United States prices and the

13   prices paid in foreign markets").  The Court should reach the same conclusion here.

14         **C.**    <u>**The Alleged Foreign Injuries Were Not Proximately Caused By The**</u>

15                <u>**Domestic Effects Of The Alleged Conspiracy.**</u>

16         Here, Motorola tries to meet the FTAIA's proximate cause requirement in three ways.

17   *First*, Motorola pleads the FTAIA itself, parroting its language as conclusion, not fact.  *Second*,

18   Motorola alleges that it negotiated a "global price" affected by the conspiracy.  *Third*, Motorola

19   appears to rely on the assignment of foreign claims by foreign companies to a domestic plaintiff.

20   Each of these approaches are legally insufficient.

21         *First*, the Complaint asserts the boilerplate legal conclusion that the alleged domestic

22   effects of the averred conspiracy "give rise to Motorola's antitrust claims."  Compl. ¶ 15; *see*

23   *also* Compl. ¶ 156 (the alleged conspiracy "had a direct, substantial, and reasonably foreseeable

24   effect on U.S. domestic and import trade or commerce that resulted in injuries suffered by

25   Motorola and gave rise to Motorola's antitrust claims").  These conclusory allegations are void

26   of any *facts* that Motorola must plead to survive this motion and do not supply the required

27   proximate cause.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    (court need not accept as true "allegations that are merely conclusory, unwarranted deductions of

2    fact, or unreasonable inferences"); *DRAM*, 546 F.3d. at 984-85 (complaint must allege "*facts*

3    sufficient to establish subject matter jurisdiction" under the FTAIA).  To hold otherwise would

4    allow any plaintiff to circumvent the FTAIA's jurisdictional limitations without any supporting

5    facts, an outcome contrary to the precedent set forth above.

6          *Second*, Motorola's allegations that its "supply chain organization" based in Illinois

7    "directed and approved the prices and quantities of LCD Panels purchased throughout the world"

8    are equally deficient.  *See* Compl. ¶¶ 25, 26.  As noted above, the plaintiff in *Sun III* sought to

9    invoke the domestic injury exception with similar allegations of a "global procurement strategy"

10   managed by a "global procurement team" based in the United States.  608 F. Supp. 2d at 1186-

11   189.  Judge Hamilton rejected that assertion of jurisdiction, explaining that "this Court and the

12   Ninth Circuit" have held such allegations do not support "a viable legal theory" under the

13   FTAIA.  *Id.* at 1186.  And, as noted above, Motorola's "supply chain organization" allegations

14   are no different in substance from those rejected in *Emerson Electric*, where the plaintiff alleged

15   that purchases were made at a "global level" at the "best price available worldwide" through a

16   "unitary purchasing organization[]" located in the United States.  500 F. Supp. 2d at 446; *see*

17   *also Rubber Chemicals*, 504 F. Supp. 2d at 786 (plaintiff's allegations of a "single worldwide

18   price" held "insufficient to establish the requisite direct causal relationship").[7]

19         *Third*, Motorola cannot circumvent the FTAIA through the alleged assignment of claims

20   by its foreign affiliates.  Any such assignment is "governed by federal law," *Knott v.*

21   *McDonald's Corp.*, 147 F.3d 1065, 1068 n.4 (9th Cir. 1998), and as the purported assignee of its

22   foreign subsidiaries' antitrust claims, Motorola "does not sue in its own right, but rather stands in

23   the shoes of its assignor[s]."  *Bassidji v. Goe*, 413 F.3d 928, 939 (9th Cir. 2005).  And it is

24   _____

25   [7]       The fact that foreign purchases may have been made by subsidiaries of a U.S. company is
     irrelevant to the FTAIA analysis.  The statute's legislative history confirms this:  "A transaction
26   between two foreign firms, even if American-owned, should not, merely by virtue of the
     American ownership, come within reach of our antitrust laws."  1982 U.S.C.C.A.N. 2487, 2494.
27   Indeed, federal and state law antitrust claims based on foreign purchases by a U.S.-based
     company are equally barred by the FTAIA.

28

Case No. M-07-1827-SI  MDL No. 1827

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    "hornbook law that an assignee can acquire no greater right, title or interest than that enjoyed by

2    its assignor." *In re Nat'l Mortgage Equity Corp. Mortgage Pool Certs. Sec. Litig.*, 636 F. Supp.

3    1138, 1149 n.17 (C.D. Cal. 1986); *see also Silvers v. Sony Pictures Entm't, Inc.,* 402 F.3d 881,

4    897 (9th Cir. 2005) (holding "all defenses against the assignor were valid against the assignee").

5    The alleged intra-corporate assignment is, therefore, irrelevant to the jurisdictional analysis.

6    Motorola stands in no better position than any of its foreign subsidiaries who purportedly

7    assigned their claims to their U.S. parent.

8        *Rubber Chemicals* is directly on point. There, the plaintiff attempted to establish

9    jurisdiction under the FTAIA by means of an intra-corporate assignment from foreign

10    subsidiaries to the U.S. parent company. Judge Jenkins rejected that tactic, holding that a

11    plaintiff "cannot convert a non-justiciable claim, originally accrued by a foreign affiliate or

12    subsidiary and asserting only independent foreign injury, into a justiciable claim merely by

13    assigning it to another plaintiff that holds a justiciable claim." 504 F. Supp. 2d at 784 n.3; *see*

14    *also Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (subject matter

15    jurisdiction "cannot be conferred upon a federal court by consent, inaction or stipulation").

16    Indeed, to allow a mere assignment of claims to circumvent the FTAIA's jurisdictional

17    limitations would undermine the very purposes of the statute and the principles of prescriptive

18    comity on which it is based.[8]

19        In sum, Motorola fails entirely to plead any facts sufficient to show that the conspiracy's

20    alleged domestic effects were the direct and proximate cause of any alleged foreign injuries,

21    including those allegedly arising from purchases by Motorola's foreign affiliates and any non-

22    party ODMs and EMS providers.[9] Motorola's allegations are, therefore, "insufficient on their

23

24    [8]    The assignment and Motorola's alleged "worldwide purchasing process" also are
unavailing to the extent Motorola relies on such allegations to assert the "single enterprise"

25    theory that Judge Hamilton rejected in *Sun III*, holding that the legal authority for such a theory
was "less than compelling." 608 F. Supp. 2d at 1186. Here, in any event, Motorola pleads no

26    facts sufficient to support any such "single enterprise" theory.

27    [9]    Any federal claims the Complaint purports to assert based on purchases by Motorola or
its foreign affiliates from entities other than Defendants (including Motorola's alleged ODMs

28                    (Footnote Continued on Next Page.)

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1  face to invoke federal jurisdiction," *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th

2  Cir. 2004), and its federal claims based on foreign purchases should be dismissed.[10]

3  **D.**    **Motorola's State Law Claims Based On Foreign Injuries Also Are Barred.**

4  Motorola's state law claims based on foreign injuries are barred to the same extent as its

5  Sherman Act claims.  The Supremacy Clause elevates federal law in areas of foreign commerce

6  and the Commerce Clause limits state law in the same arena.  Even aside from these

7  constitutional commands, principles of prescriptive comity require that state laws be interpreted

8  to avoid interfering with the laws of foreign sovereigns.  Furthermore, the state laws on which

9  Motorola bases its claims model themselves upon federal antitrust law, including its

10  jurisdictional limitations.

11  *First*, the U.S. Constitution requires that state law be applied consistently with the

12  FTAIA.  Where a state law undermines a clear federal policy to speak with one voice on a matter

13  affecting foreign commerce, applying that law beyond what is permitted by the federal policy

14  violates the Commerce Clause.  *Japan Line, Ltd. v. County of L.A.*, 441 U.S. 434, 448 (1979).

15  More specifically, the Commerce Clause gives Congress the sole power "[t]o regulate

16  commerce with foreign Nations . . ."  U.S. CONST. art. I, § 8, cl. 3.  Foreign commerce is

17  _____

18  (Footnote Continued from Previous Page.)

19  and EMS providers) should be dismissed for an additional reason.  Motorola and its foreign
    affiliates are, at most, only indirect purchasers with respect to panels obtained by others that
20  were incorporated as components in devices later sold to Motorola or its foreign affiliates.  Any
    claims by Motorola or its foreign affiliates based on such indirect purchases are not actionable
21  under the Sherman Act.  *See, e.g.*, *Sun III*, 608 F. Supp. 2d at 1177-80 (dismissing claims based
    on purchases made by plaintiff's alleged external manufacturers).

22  [10]    Motorola's claims based on foreign purchases also should be dismissed under Rule
23  12(b)(6) for the separate reason that it lacks standing to assert such claims.  *See In re Dynamic
    Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 515629, at *5 (N.D. Cal. Mar. 1,
24  2006) ("Antitrust standing is an issue separate from the [FTAIA's] jurisdictional question").
    "[P]laintiffs who incur antitrust injury outside of the United States as a result of entirely foreign
25  anticompetitive conduct do not have standing to sue for damages in U.S. courts."  ANTITRUST
    LAW DEVELOPMENTS (Sixth) at 1188; *see In re Intel*, 452 F. Supp. 2d at 563 (no standing where
26  alleged foreign injuries resulted from "foreign conduct" that "occurred in foreign markets");
    *Galavan Supplements, Ltd. v. Archer Daniels Midland Co.*, 1997 WL 732498, at *4 (N.D. Cal.
27  Nov. 19, 1997) (no standing under the antitrust laws for injuries incurred "entirely outside of
    United States commerce") (citation omitted).

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1     "preeminently a matter of national concern." *Japan Line*, 441 U.S. at 448. State laws

2     "prevent[ing] the Federal Government from speaking with one voice" in such matters are

3     unconstitutional because they are "inconsistent with Congress'[s] power to 'regulate Commerce

4     with foreign Nations.'" *Id.* at 453-54; *see also Buttfield v. Stanahan*, 192 U.S. 470, 492-93

5     (1904) (recognizing the "exclusive and absolute" power of Congress over foreign commerce);

6     *Bowman v. Chicago & N.W. Ry. Co.*, 125 U.S. 465, 482 (1888) ("The organization of our state

7     and Federal system of government is such that people of the several States can have no relations

8     with foreign powers in respect to commerce, or any other subject, except through the government

9     of the United States, and its laws and treaties.") (internal citation omitted).

10        Here, the FTAIA deliberately excluded certain conduct from the reach of U.S. antitrust

11     laws. *Empagran I*, 542 U.S. at 158. This deliberate calculation cannot be contravened by state

12     legislation. *See Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 68-69 (1st Cir. 1999)

13     (Massachusetts "anti-Burma" law violated, *inter alia*, Commerce Clause, by undermining need

14     for U.S. to speak with one voice with respect to commerce with Myanmar), *aff'd on other*

15     *grounds sub nom. Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000); *Gerling Global*

16     *Reinsurance Corp. of Am. v. Quackenbush*, 2000 WL 777978, at *12 (E.D. Cal. June 9, 2000)

17     (state law requiring disclosure of insurance claims sold to Europeans prior to World War II

18     prevented U.S. from speaking with one voice on compensating Holocaust victims), *aff'd on other*

19     *grounds sub. nom. American Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003).

20        The Supremacy Clause also prohibits applying state laws that "stand[] as an obstacle to

21     the accomplishment and execution of the full purposes and objectives of Congress." *Crosby*, 530

22     U.S. at 373; *see also Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1994). Congress intended the

23     FTAIA to accommodate the antitrust regulatory schemes of other nations and to provide a clear

24     and uniform standard for determining the application of American antitrust law to foreign

25     commerce. Those purposes would be frustrated if each state were permitted *ad hoc* to reach

26     beyond the boundaries established by the FTAIA to adjudicate matters involving foreign

27     commerce as it sees fit. *See In re Intel*, 476 F. Supp. 2d at 457 ("Congress' intent [in enacting

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1  the FTAIA] would be subverted if state antitrust laws were interpreted to reach conduct which

2  the federal law could not.").  Thus, for purposes of this case, to comport with the Supremacy

3  Clause, a state statute can go no further than the FTAIA in regulating foreign commerce.  *See,*

4  *e.g.*, *Amarel v. Connell*, 202 Cal. App. 3d 137, 149 (1988) (reconciling the FTAIA with state law

5  as applied to foreign conduct).

6      *Second*, principles of prescriptive comity, which provide that domestic statutes should be

7  construed to avoid unreasonable interference with the sovereign authority of foreign nations, also

8  preclude state law claims inconsistent with the FTAIA's jurisdictional limitations.  *See*

9  *Empagran I*, 542 U.S. at 164-65, 174 (courts should "assume that legislators take account of the

10  legitimate sovereign interests of other nations when they write American laws" so that

11  "potentially conflicting laws of different nations work together in harmony—a harmony

12  particularly needed in today's highly interdependent commercial world"); Restatement (Third)

13  Foreign Relations Law, § 403 (describing prescriptive comity and factors involved); *see also*

14  *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 846 (9th Cir. 1996) (describing comity factors).

15      *Third,* the state antitrust laws invoked by Motorola follow federal antitrust laws and the

16  federal judiciary's construction of those laws.  California's Cartwright Act, the principal state

17  antitrust law Motorola asserts, "has objectives identical to the federal antitrust acts" and thus

18  "California courts look to cases construing the federal antitrust laws for guidance in interpreting

19  the Cartwright Act."  *Vinci v. Waste Mgmt., Inc.*, 43 Cal. Rptr. 2d 337, 338 n.1 (Cal. Ct. App.

20  1995).  The Illinois antitrust statute, which Motorola pleads "in the alternative," is the same.  *See*

21  *Health Prof'ls, Ltd. v. Johnson*, 791 N.E.2d 1179, 1189 (Ill. App. Ct. 2003) (Illinois Antitrust

22  Act should be construed "consistent[ly] with the Sherman Act").  And the Illinois statute

23  expressly adopts to the FTAIA's territorial limitations by banning state law claims unless the

24  challenged conduct has a "direct, substantial, and reasonably foreseeable" domestic effect and

25  such "effect gives rise to a claim" under the statute.  740 ILL. COMP. STAT. 10/5(14).[11]

26  _____

27  [11]      The Illinois statute states that when "the wording of this Act is identical or similar to that
of a federal antitrust law, the courts of this State shall use the construction of the federal law by

28                                                    (Footnote Continued on Next Page.)

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    The laws of other states which Motorola pleads "in the further alternative" also follow

2    federal antitrust law pursuant to harmonization statutes and judicial decisions.  *See, e.g.,* ARIZ.

3    REV. STAT. ANN. § 44-1412 (2008); D.C. CODE § 28-4515 (2008); IOWA CODE § 553.2 (2008);

4    *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211-12 (D. Kan. 1999) (citing *Bergstram v. Noah*, 974

5    P.2d 520, 531 (Kan. 1999)); MICH. COMP. LAWS § 445-784 (2008); NEV. REV. STAT. § 598A.050

6    (2008); N.M. STAT. § 57-1-15 (2008); *Keating v. Philip Morris, Inc.*, 417 N.W.2d 132, 136

7    (Minn. Ct. App. 1987); *Rose v. Vulcan Materials Co.*, 194 S.E. 2d 521, 530 (N.C. 1973);

8    *Tennessee et rel. Leech v. Levi Strauss & Co.*, 1980 WL 4946 (Tenn. Ch. Ct. Sept. 25, 1980);

9    *Ford Motor Co. v. Lyons*, 405 N.W.2d 354, 367 (Wis. Ct. App. 1987).[12]

10   For all of these reasons, Motorola's federal and state law claims based directly or

11   indirectly on foreign purchases of LCD Panels from Defendants should be dismissed for lack of

12   subject matter jurisdiction and failure to state a claim upon which relief can be granted, including

13   all federal and state law claims based on: (a) Motorola's own foreign purchases, (b) all purchases

14   by Motorola's foreign affiliates, and (c) all foreign purchases by non-party ODMs and EMS

15   providers.

16   II.   **MOTOROLA'S STATE LAW CLAIMS SHOULD BE DISMISSED FOR**

17         **FAILURE TO ALLEGE SUFFICIENT CONTACTS WITH RELEVANT STATES.**

18   Principles of Due Process require significant contacts or a significant aggregation of

19   contacts between the state whose laws are invoked and both (i) the plaintiff's claims, *and* (ii) the

20   parties to the suit.  *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310-11 (1981) (application of a

21   _____

22   (Footnote Continued from Previous Page.)

23   the federal courts as a guide in construing this Act."  740 ILL. COMP. STAT. 10/11.  Plainly,
     therefore, the Illinois statute cannot be construed to permit a state law claim that is barred under
24   the FTAIA.

25   [12]   *See also CSR Ltd.,* 405 F. Supp. 2d at 552 (where the FTAIA bars Sherman Act claims,
     state antitrust claims are likewise barred by New Jersey's harmonization statute and decisional
26   law); *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 501 (M.D.N.C. 1987)
27   (dismissing federal and state law claims because extraterritorial effect of North Carolina's
     antitrust statute is coextensive with federal law).

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1     state's laws violates Due Process unless the "parties *and* the occurrence or transaction" giving

2     rise to plaintiff's claim have significant contacts with the state) (emphasis added); *Phillips*

3     *Petroleum Co. v. Shutt*s, 472 U.S. 797, 821-22 (1985) (Due Process requires a "significant

4     contact or significant aggregation of contacts" between the plaintiff's claims and the state at

5     issue). It is Plaintiffs' burden to show such contacts. *See Zinser v. Accufix Research Inst., Inc.*,

6     253 F.3d 1180, 1187 (9th Cir. 2001) ("[p]laintiff does not show how application of California

7     law satisfies constitutional due process requirements in this case"); *Tidwell v. Thor Indus.,* 2007

8     U.S. Dist. LEXIS 21819, at *24-25 (S.D. Cal. Mar. 26, 2007) (plaintiffs must "show how

9     application of California law satisfies due process requirements in this case") (citing *Zinser*).

10         Specifically, to establish the requisite contacts with a plaintiff's claim, the key inquiry is

11     whether the "occurrence or transaction" giving rise to plaintiff's claim has contacts with a

12     relevant state. *Allstate*, 449 U.S. at 310-11. In a price-fixing case, the relevant "occurrence or

13     transaction" is the plaintiff's purchase of the relevant product at an allegedly inflated price. *See*

14     *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1028-29 (N.D. Cal.

15     2007) ("*GPU*"); *In re Relafen Antitrust Litig*., 221 F.R.D. 260, 277 (D. Mass. 2004).

16         Motorola's Complaint fails to allege such requisite contacts, and its state law claims

17     should be dismissed under Rule 12(b)(6). *See Pecover v. Elecs. Arts Inc.*, 633 F. Supp. 2d 976,

18     984 (N.D. Cal. 2009) (dismissing state law claims under Rule 12(b)(6) where complaint failed to

19     allege requisite contacts between its claims and those states); *GPU*, 527 F. Supp. 2d at 1028

20     (striking California state law claims under 12(b)(6) where complaint failed to allege the requisite

21     contacts between absent class members and California).[13]

22         Most significantly, Motorola fails to allege that it or its foreign affiliate assignors

23     purchased any products sold pursuant to the alleged price fixing conspiracy in any of the states

---

25     [13]     Since application of the laws of a state that lacks significant contacts with the claims at
26     issue would violate Due Process, a court would also lack subject matter jurisdiction over such
        claims. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly
27     dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or
        constitutional power to adjudicate it."). Thus, dismissal also is warranted under Rule 12(b)(1).

28

1  whose laws it seeks to invoke either directly, "in the alternative," or "in the further alternative."

2  The Complaint only alleges that Motorola and its foreign affiliates purchased such products in

3  the United States and overseas.  Compl. ¶ 2.  This failing alone requires dismissal of all of the

4  state claims as constitutionally unsound.[14]

5       The Complaint's general allegations that prices were affected in the relevant states (*see*,

6  *e.g.*, Compl. ¶ 165), or that certain Defendants sold TFT-LCD products to purchasers in

7  California (Comp. ¶ 10), provide no cure; still missing is any allegation that *Motorola* (or any of

8  its foreign affiliates) made any purchases in those states at allegedly supra-competitive prices.[15]

9  Likewise, the allegations referencing the plea agreements of certain Defendants, stating that

10 those Defendants sold TFT-LCD panels to purchasers in California (Compl. ¶ 10), are of no

11 moment.  Again, there are no allegations that such sales were made to *Motorola*, much less any

12 of its foreign affiliates, in California, and it is not enough that some third party claimants might

13 have the requisite contacts.  *Shutts*, 472 U.S. at 818-22.

14      Motorola's conclusory allegations of conspiracy meetings in California also do nothing to

15 establish the requisite connection between its claims and that state.  Compl. ¶¶ 10, 161.

16 Dispositively, no allegations are made that Motorola (or any of its foreign affiliates) purchased

17 any relevant products directly or indirectly in California.  Moreover, the Complaint makes no

18 allegations that any of those meetings involved any discussions concerning Motorola or any of

19 its foreign affiliates.  Nor does it identify any details regarding those meetings, such as when

20 they supposedly occurred, who participated in them, what product(s) or subjects they concerned,

21 _____

22 [14]    The claims assigned to Motorola are not spared from dismissal because, as an assignee,
   Motorola is "subject to all the defenses that could be offered" against its assignors.  *See Silvers*,
23 402 F.3d at 897 ("all defenses against the assignor were valid against the assignee").  The
   constitutional choice of law analysis, moreover, must be applied individually to the claims
24 asserted by each plaintiff.  *Shutts*, 472 U.S. at 823; *see also Georgine v. Amchem Prods*., 83 F.3d
   610, 627 (3d Cir. 1996) (Due Process requires the court to apply "an individualized choice of law
25 analysis to each plaintiff's claims") (citing *Shutts*).

26 [15]    This pleading defect highlights an important difference between Motorola's Complaint
   and the class purchasers' complaints because, here, Motorola is the only plaintiff and it cannot
27 rely on purchases by other unnamed class members to establish the requisite nexus with a state
   whose laws are invoked.

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1   how many such meetings occurred in California, or where they allegedly occurred within the

2   state, rendering the assertion of California law claims even more deficient.  *See GPU*, 527 F.

3   Supp. 2d at 1028 (refusing to apply California's Cartwright Act to claims of class members who

4   allegedly bought relevant products outside of California, when the complaint failed to allege "the

5   specific locations of any of the [conspiracy] meetings between defendants" within California).

6        Motorola's allegations that it sold products containing LCD Panels in the relevant states

7   and that it otherwise conducted "substantial business" in those states (*see*, *e.g.*, Compl. ¶¶ 160,

8   166), are also of no significance for this inquiry.  Again, the relevant constitutional inquiry is not

9   where Motorola may have sold products or where it transacts business, but whether the

10  "occurrence or transaction" giving rise to its claim—*i.e., purchases* by Motorola and its foreign

11  affiliates of allegedly price-fixed products—occurred in a relevant state.

12       Motorola's further allegations that certain Defendants are headquartered in or otherwise

13  do business in California are likewise misdirected.[16]  Compl. ¶ 10.  Such contacts are insufficient

14  to support any claim under California law, even as against those specifically-identified

15  Defendants.  *See Tidenberg v. Bidz.com, Inc.*, 2009 U.S. Dist. LEXIS 21916, at *12-13 (C.D.

16  Cal. Mar. 4, 2009) (dismissing plaintiff's claims under California law finding "Plaintiff does not

17  allege any specific facts linking Defendants' contacts with California to the claims Plaintiff

18  asserts against them.  Instead, she only alleges that [defendant's] principal place of business is in

19

20

21  _____

22  [16]    This constitutional choice of law inquiry is analytically distinct from the inquiry relevant
     to issues of personal jurisdiction.  *See Shutts*, 472 U.S. at 821 (personal jurisdiction is "entirely

23  distinct from the question of the constitutional limitations on choice of law").  In appropriate
     circumstances, a state may exercise personal jurisdiction over a party who conducts substantial

24  business within a state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  But where,
     as here, the party does not allege that its business in the state gave rise to its claims, then the

25  conduct of business in the state is an insufficient ground upon which to apply that state's laws.
     *See Herrera v. Michelin N. Am., Inc.*, 2009 U.S. Dist. LEXIS 21022, at *34 (S.D. Tex. Mar. 16,

26  2009) ("In determining whether a substantial connection exists [to satisfy Due Process], *a court
     must focus on whether a state has a connection to the specific transaction or event giving rise to

27  the litigation, not whether the Defendant generally has ties to the state*.").

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1  California").[17]  That Motorola is headquartered in Illinois (Compl. ¶ 24), also is immaterial

2  because this allegation does not address where the relevant "occurrence or transaction"

3  occurred—*i.e.*, where Motorola or its foreign affiliates bought allegedly price-fixed products.

4        For all of these reasons, Motorola fails to allege the requisite contact(s) between its

5  claims (and those of its foreign affiliates) and the states whose laws it seeks to invoke, thereby

6  requiring dismissal of its state law claims as contrary to Due Process.

7  **III.**    **MOTOROLA'S COMPLAINT FAILS TO ALLEGE ANY FACTS IN SUPPORT**

8          **OF ITS EXPANDED NON-TFT CONSPIRACY CLAIM.**

9        Motorola's Complaint alleges a much broader conspiracy than those seen in other actions

10  consolidated in this MDL proceeding.  Instead of alleging a conspiracy to artificially inflate only

11  TFT-LCD technologies, as the class plaintiffs and the DOJ do, Motorola asserts a price-fixing

12  conspiracy involving two other technologies:  color super-twist nematic panels ("CSTN panels"),

13  and monochrome super-twist nematic panels ("MSTN panels").  Compl. ¶ 19.  These two super-

14  twist nematic panel technologies (also referred to as "STN" or "passive matrix") are older

15  technologies with slower response times than TFT-LCD panels (referred to as "active matrix").

16  *See* Third Amended Direct Purchaser Plaintiffs' Consolidated Compl. ¶¶ 85-90 (Dkt. 1416).

17  Defendants move to dismiss this non-TFT price fixing claim on the ground it fails to meet

18  applicable pleading requirements.

19        To survive a motion to dismiss its non-TFT conspiracy claim, Motorola's Complaint

20  must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

21  plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic*

22  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kendall v. Visa U.S.A. Inc.*, 518 F.3d

23  1042, 1047 (9th Cir. 2008) ("To state a claim under Section 1 of the Sherman Act, . . . claimants

24  must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which if true, will

25

26  [17]    *See also In re Relafen Antitrust Litig.*, 221 F.R.D. at 277 (refusing to apply Pennsylvania

27  law where defendant was a Pennsylvania manufacturer who sold and distributed from that state
but plaintiff purchased the product at issue outside that state).

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    prove" a conspiracy).  Allegations that "are no more than conclusions … are not entitled to the

2    assumption of truth" and should be disregarded.  *Iqbal*, 129 S. Ct. at 1950.

3         Here, Motorola does not support its broader conspiracy claims with any factual

4    allegations that are separately and specifically directed to STN panels.  Instead, Motorola has

5    simply redefined the term "LCD Panels" (referred to in the Direct Purchaser Class Plaintiffs'

6    complaint as "*TFT*-LCD Panels"), to include not just TFT-LCD panels, but also MSTN-, and

7    CSTN-LCD panels.  Compl. ¶ 19.  It then adopts nearly verbatim as applicable to these

8    technologies all of the other allegations asserted by both the Direct and Indirect Purchaser Class

9    Plaintiffs regarding the alleged TFT-LCD panel conspiracy.  Indeed, the Motorola Complaint

10   alleges the same pricing practices and public statements of Defendants (Compl. ¶¶ 117, 120-21,

11   123-24, 126-29, 145-47), the same group and bilateral meetings (Compl. ¶¶ 81-115), the same

12   time frame for the alleged conspiracy (Compl. ¶ 79), and the same government investigation and

13   guilty pleas involving TFT-LCD panels (Compl. ¶¶ 131-137), as do class plaintiffs in connection

14   with their alleged TFT-LCD panel conspiracy claim.  As a result, Motorola in effect pleads that

15   the same TFT-LCD panel price fixing conspiracy investigated by the DOJ and alleged by the

16   class plaintiffs also encompassed agreements by the Defendants to fix prices for STN panels.[18]

17        Motorola's pleading slight of hand, however, is plainly insufficient to meet the applicable

18   pleading standards.  Specifically, when Motorola describes the alleged price fixing conspiracy, it

19   does not make a single reference to any facts related to fixing prices for "MSTN panels" or

20   "CSTN panels."  It would have been a straightforward matter for Motorola to plead such facts if

21   they existed, but it does not.  Motorola's Complaint is utterly devoid of the required "factual

22   content" that would allow the Court to draw a reasonable inference that the same conspiracy pled

23   by class plaintiffs also encompassed STN panels and products.  *Iqbal*, 129 S. Ct. at 1950.

24   _____

25   [18]    In adopting its own, expanded definition of "LCD Panels" and applying that definition to
     the same conspiracy pled by class plaintiffs, it is impossible to tell if the price fixing allegations

26   that Motorola has lifted from the class plaintiffs' complaint are alleged to have involved an
     agreement to fix prices for TFT-LCD, MSTN-LCD, CSTN-LCD, or some combination thereof.

27   For example, if a meeting allegedly involved fixing prices for TFT-LCD panels but *not* MSTN-
     or CSTN-LCD panels, it would still meet Motorola's "LCD Panel" definition.

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    Motorola has simply side-stepped its pleading burden, relying instead on speculation and wishful

2    thinking. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184 (N.D.

3    Cal. 2009) (plaintiff's complaint must "contain sufficient allegations 'to raise a right to relief

4    above the speculative level'").

5         Motorola's reliance in its Complaint on the DOJ investigation and prior pleadings filed in

6    the MDL completely ignores the fact that this record exclusively concerns *TFT*-LCD

7    technologies, not STN. The DOJ has been investigating conduct relating to the LCD industry for

8    several years now. The DOJ has secured several guilty pleas, as well as the cooperation of four

9    Defendants. But these very guilty pleas—incorporated by reference in Motorola's Complaint—

10   relate *solely* to TFT-LCD panels. Importantly, even the guilty pleas that specifically reference

11   panel sales to Motorola—also incorporated in Motorola's Complaint by reference—exclusively

12   involve sales of *TFT*-LCD panels.[19] The DOJ has never even suggested that Defendants fixed

13   the prices of STN panels, much less charged any of them with doing so.

14        Likewise, for years the class plaintiffs have been pursuing allegations of price-fixing

15   involving LCD panels. Class action discovery has been proceeding for over 18 months, and the

16   class plaintiffs have obtained and reviewed millions of documents. Class plaintiffs also have had

17   the benefit of the cooperation of one defendant, Chunghwa, for a year. Chunghwa has provided

18   class plaintiffs with a "detailed . . . proffer of how the TFT-LCD conspiracy operated," including

19   "an overview of the conspiracy, identification of corporate and individual participants in the

20   conspiratorial meetings, identification of dates and locations of conspiratorial meetings, and

21

22

23   _____

24   [19]      More specifically, those pleas involve only TFT-LCD panels for use in Razr mobile

25   phones sold to Motorola from fall of 2005 to the middle of 2006. *See* Sharp Plea Agreement
     (Dkt. 750-1) at 4; Epson Imaging Devices Corporation Plea Agreement  (Dkt. 1351) at 3-4.

26   "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party
     questions, but which are not physically attached to the pleading, may be considered in ruling on a

27   Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    reading from conspiratorial documents."[20]  With all this evidence in hand, class plaintiffs have

2    never alleged an expanded conspiracy that encompassed non-TFT panels, despite having

3    amended their pleadings several times.  Moreover, their failure to do so is particularly notable

4    given the scope and breadth of the conspiracy the class plaintiffs *have* alleged, which goes well

5    beyond the conduct alleged by the DOJ.

6          Finally, permitting Motorola to proceed with its unsupported and expanded STN

7    conspiracy claim, without first complying with applicable pleading standards, will result in an

8    unjustified expansion of protracted, costly discovery.  As the Supreme Court has explained, "it is

9    only by taking care to require allegations that reach the level suggesting conspiracy that we can

10   hope to avoid the potentially enormous expense of discovery in cases with no reasonably

11   founded hope that the discovery process will reveal relevant evidence to support a § 1 claim."

12   *Twombly*, 550 U.S. at 559 (quotation omitted).  In this MDL, millions of documents have already

13   been produced, and document discovery is substantially complete.  If Motorola were permitted to

14   proceed on its expanded price fixing allegations it would effectively result in discovery starting

15   anew in order to account for documents relating to STN panels.  Rule 8 "does not unlock the

16   doors of discovery for a plaintiff armed with nothing more than conclusions," *Iqbal*, 129 S. Ct. at

17   1950, yet that is all Motorola has provided in its Complaint.

18         In sum, regarding non-TFT panels, Motorola's Complaint does not contain sufficient

19   allegations of price fixing to raise a right to relief above the speculative level, and should be

20   dismissed.

21                                      **CONCLUSION**

22         For the foregoing reasons, the moving Defendants respectfully request that the Court

23   grant Defendants' Joint Motion to Dismiss Complaint under Rules 12(b)(1) and 12(b)(6).

24

25   _____

26   [20]    *See* Decl. of Eric Fastiff in Support of Motion for Prelim. Approval of Class Settlement
     With Defendant Chunghwa Picture Tubes, Ltd. (Dkt. 1441), Ex. A.  The Court can take judicial
27   notice of its own records on a motion to dismiss.  *Padilla v. Yoo*, 633 F. Supp. 2d 1005, 1019
     (N.D. Cal. 2009).

28

1    DATED:  February 19, 2010

2

3                                        By:                    */s/ Colin C. West*
                                                        Colin C. West (SBN 184095)
4                                                       BINGHAM MCCUTCHEN LLP
                                                        Three Embarcadero Center
5                                                       San Francisco, CA 94111-4067
                                                        (415) 393-2000 (telephone)
6                                                       (415) 393-2286 (facsimile)
                                                        colin.west@bingham.com
7
                                                        Richard S. Taffet (*pro hac vice*)
8                                                       Kenneth I. Schacter (*pro hac vice*)
                                                        BINGHAM MCCUTCHEN LLP
9                                                       399 Park Avenue
                                                        New York, NY 10022-4689
10                                                      (212) 705-7000 (telephone)

11                                                      Jon R. Roellke (*pro hac vice*)
                                                        BINGHAM MCCUTCHEN LLP
12                                                      2020 K Street, NW
                                                        Washington, DC 20006-1806
13                                                      (202) 373-6000 (telephone)

14                                                      *Attorneys for Defendants*
                                                        Sharp Corporation
15                                                      Sharp Electronics Corp.

16   DATED:  February 19, 2010

17

18                                       By:                   */s/ Melvin R. Goldman*
                                                        Melvin R. Goldman
19                                                      Stephen P. Freccero
                                                        Derek F. Foran
20                                                      MORRISON & FOERSTER LLP
                                                        425 Market Street
21                                                      San Francisco, CA  94105
                                                        (925) 295-3482 (telephone)
22
                                                        David L. Meyer
23                                                      MORRISON & FOERSTER LLP
                                                        2000 Pennsylvania Avenue, NW
24                                                      Suite 6000
                                                        Washington, DC 20006-1888
25
                                                        *Attorneys for Defendants*
26                                                      Epson Imaging Devices Corporation, Epson
                                                        Electronics America, Inc.
27

28
                                              26            Case No. M-07-1827-SI  MDL No. 1827

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1   DATED:  February 19, 2010

2

3                                   By:_____ /s/ Michael R. Lazerwitz _____
                                        Michael R. Lazerwitz (*pro hac vice*)
4                                       Jeremy J. Calsyn (SBN 205062)
                                        Lee F. Berger (SBN 222756)
5                                       CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                        2000 Pennsylvania Ave., NW
6                                       Washington, DC  20006
                                        (202) 974-1500 (telephone)
7                                       (202) 974-1999 (facsimile)
                                        mlazerwitz@cgsh.com
8
                                        *Attorneys for Defendants*
9                                       LG Display Co., Ltd. and LG Display America, Inc.

10  DATED:  February 19, 2010

11

12                                  By:_____ /s/ Carl L. Blumenstein _____
                                        Carl L. Blumenstein
13                                      Christopher A. Nedeau
                                        Bryan B. Barnhart
14                                      NOSSAMAN LLP
                                        50 California Street, 34th Floor
15                                      San Francisco, CA  94111
                                        (415) 438-7274 (telephone)
16
                                        *Attorneys for Defendants*
17                                      AU Optronics Corporation and AU Optronics
                                        Corporation America, Inc.
18
    DATED:  February 19, 2010
19

20
                                    By:_____ /s/ Steven F. Cherry _____
21                                      Steven F. Cherry (*pro hac vice*)
                                        Gordon Pearson (*pro hac vice*)
22                                      WILMER CUTLER PICKERING HALE AND
                                        DORR LLP
23                                      1875 Pennsylvania Avenue, NW
                                        Washington, DC  20006
24                                      (202) 663-6000 (telephone)

25                                      *Attorneys for Defendants*
                                        Chi Mei Corporation, Chi Mei Optoelectronics
26                                      Corporation, Chi Mei Optoelectronics USA, Inc.
                                        CMO Japan Co. Ltd., Nexgen Mediatech, Inc. and
27                                      Nexgen Mediatech USA, Inc.

28

1   DATED:  February 19, 2010

2

3                                         By:                    /s/ Wayne A. Cross
                                                Wayne A. Cross (*pro hac vice*)
4                                               John H. Chung (*pro hac vice*)
                                                WHITE & CASE LLP
5                                               1155 Avenue of the Americas
                                                New York, NY  10036
6                                               (212) 819-8200 (telephone)

7                                               Christopher M. Curran (*pro hac vice*)
                                                Kristen J. McAhren (*pro hac vice*)
8                                               701 Thirteenth Street, NW
                                                Washington, DC 20005-3807
9                                               (202) 626-3600 (telephone)

10                                              *Attorneys for Defendants*
                                                Toshiba Corporation, Toshiba Mobile Display Co.,
11                                              Ltd., Toshiba America Electronic Components, Inc.
                                                and Toshiba America Information Systems, Inc.

12  DATED:  February 19, 2010

13

14

                                          By:                    /s/ Gary L. Halling
15                                              Gary L. Halling (SBN 66087)
                                                James L. McGinnis (SBN 95788)
16                                              Michael W. Scarborough (SBN 203524)
                                                SHEPPARD MULLIN RICHTER & HAMPTON
17                                              LLP
                                                Four Embarcadero Center, 17th Floor
18                                              San Francisco, CA 94111-4106
                                                (415) 434-9100 (telephone)
19
                                                *Attorneys for Defendants*
20                                              Samsung Electronics Co., Ltd.,
                                                Samsung Semiconductor, Inc. and
21                                              Samsung Electronics America, Inc.

22

23

24

25

26

27

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    DATED:  February 19, 2010

2

3                              By:_____/s/ Patrick J. Ahern_____

4                                        Patrick J. Ahern
                                 BAKER & MCKENZIE, L.L.P.
5                                130 East Randolph Drive
                                 Chicago, Illinois  60601
6                                (312) 861-3735 (telephone)

7                                *Attorneys for Defendant*
                                 Tatung Company of America, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. M-07-1827-SI  MDL No. 1827

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT