Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Consumer Products, LLC, Toshiba America*
*Information Systems, Inc., and Toshiba*
*America Electronic Components, Inc.*

Additional Counsel On Signature Pages

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS<br><br>*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-05513<br><br>*Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, Case No. 13-cv-05264<br><br>*CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06396<br><br>*Costco Wholesale Corp. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06397 | **DEFENDANTS'  NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:      February 6, 2015<br>Time:     10:00 a.m.<br>Before:  Hon. Samuel Conti |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

*White & Case LLP*
*701 Thirteenth Street, NW*
*Washington, DC  20005*

1
2

*Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-01656

3
4

*Electrograph Systems, Inc., et al. v. Technicolor SA, et al.*, Case No. 3:13-cv-05724

5

*Interbond Corp. of America v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06275

6
7

*Interbond Corp. of America v. Technicolor SA, et al.*, Case No. 3:13-cv-05727

8
9

*Office Depot, Inc. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06276

10
11

*Office Depot, Inc. v. Technicolor SA, et al.*, Case No. 3:13-cv-05726

12
13

*P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, Case No. 3:12-cv-02648

14

*P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al.*, Case No. 3:13-cv-05725

15
16
17

*Sears, Roebuck & Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, Case No. 3:11-cv-05514

18

*Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, Case No. 3:13-cv-00157

19
20
21

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

22
23
24
25
26
27
28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

1

**TABLE OF CONTENTS**

2

Page

NOTICE OF MOTION AND MOTION ..................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................2

I.      STATEMENT OF THE ISSUE.............................................................2

II.     INTRODUCTION ...................................................................................2

III.    FACTUAL BACKGROUND..................................................................2

IV.     STANDARD OF REVIEW .....................................................................4

V.      ARGUMENT............................................................................................4

        A.      State Law Claims Are Governed By The Extraterritorial Limitations
                Imposed By The FTAIA ................................................................4

                1.      The Relevant States' Competition Laws Are Harmonized With
                        Federal Antitrust Law ........................................................5

                2.      The Supremacy Clause Prevents Plaintiffs' State Law Claims
                        From Extending Farther Than The FTAIA Allows ...................6

                3.      The Commerce Clause Similarly Limits The Ability Of State
                        Laws To Regulate Foreign Commerce .......................................8

                4.      Comity Concerns Bar State Law Claims From Reaching
                        Beyond The Territorial Restrictions Of The FTAIA .................9

        B.      Plaintiffs Cannot Establish That Their Foreign Commerce Claims
                Satisfy Either The Import Commerce Exclusion Or The Domestic
                Injury Exception To The FTAIA ................................................10

                1.      The FTAIA's Import Commerce Exclusion Does Not Apply
                        Because The Alleged Conspirators Did Not Import The CRT
                        Products Underlying Plaintiffs' Foreign Commerce Claims.................11

                2.      The Domestic Injury Exception Does Not Apply To Plaintiffs'
                        Foreign Commerce Claims .....................................................12

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

1

VI.   CONCLUSION...........................................................................................................19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917
ii

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...........................................................................................4

*Animal Science Products, Inc. v. China Minmetals Corp.*,
654 F.3d 462 (3d Cir. 2011) .............................................................................12

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)............................................................................................6

*CSR Ltd. v. CIGNA Corp.*,
405 F. Supp. 2d 526 (D.N.J. 2005) ...............................................................5, 12

*Dee-K Enters., Inc. v. Heveafil Sdn. Bhd.*,
299 F.3d 281 (4th Cir. 2002) ............................................................................10

*Den Norske Stats Oljeselskap AS v. Heeremac VOF*,
241 F.3d 420 (5th Cir. 2001) ............................................................................13

*Empagran S.A. v. F. Hoffmann-La Roche, Ltd.*,
417 F.3d 1267 (D.C. Cir. 2005).......................................................9, 13, 16, 17

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
542 U.S. 155 (2004)........................................................ 7, 9, 10, 11, 12-13

*Global Reinsurance Corp. U.S. Branch v. Equitas Ltd.*,
969 N.E.2d 187 (N.Y. 2012)..............................................................................7

*'In' Porters, S.A. v. Hanes Printables, Inc.*,
663 F. Supp. 494 (M.D.N.C. 1987) ....................................................................5

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
546 F.3d 981 (9th Cir. 2008) ..............................................................................9

*In re Hydrogen Peroxide Antitrust Litig.*,
702 F. Supp. 2d 548 (E.D. Pa. 2010)................................................................12

*In re Intel Corp. Microprocessor Antitrust Litig.*,
476 F. Supp. 2d 452 (D. Del. 2007)....................................................................5

*In re Monosodium Glutamate Antitrust Litig.*,
477 F.3d 535 (8th Cir. 2007) .......................................................................13, 17

*In re Potash Antitrust Litig.*,
667 F. Supp. 2d 907 (N.D. Ill. 2009) ..................................................................5

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
     No. 3:07-md-01819, 2010 WL 5477313 (N.D. Cal. Dec. 31, 2010)................................5

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
     No. 3:07-md-1827, 2012 WL 6709621 (N.D. Cal. Dec. 26, 2012)................................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
     No. 3:07-md-1827, 2014 WL 4652145 (N.D. Cal. Sept. 18, 2014) ............................15

*Japan Line, LTD v. County of Los Angeles,*
     441 U.S. 434 (1979)...........................................................................................6, 8

*Kinetic Systems, Inc. v. Federal Financing Bank,*
     No. 12-cv-01619-SC, 2014 WL 3964952 (N.D. Cal. Aug. 13, 2014)............................4

*Lotes Co. v. Hon Hai Precision Indus. Co.,*
     753 F.3d 395 (2d Cir. 2014) ...........................................................................16, 17

*Major League Baseball v. Crist,*
     331 F.3d 1177 (11th Cir. 2003) ......................................................................... 6-7

*Minn-Chem, Inc. v. Agrium, Inc.,*
     683 F.3d 845 (7th Cir. 2012)......................................................................5, 10, 11

*Pac. Nw. Venison Producers v. Smith,*
     20 F.3d 1008 (9th Cir. 1994) ...............................................................................8

*United States v. Hsiung,*
     758 F.3d 1074 (9th Cir. 2014) ..................................................................10, 11, 12

*United States v. LSL Biotechnologies,*
     379 F.3d 672 (9th Cir. 2004) ..............................................................................11

*United Phosphorus, Ltd. v. Angus Chem. Co.,*
     131 F. Supp. 2d 1003 (N.D. Ill. 2001) ........................................................... 13-14

## FEDERAL RULES

Fed. R. Civ. P. 56(a) ........................................................................................................5

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. VI, cl. 2...................................................................................................2

U.S. Const. art. I, § 8, cl. 3 ..............................................................................................8

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## STATUTES AND PUBLIC LAWS

Fla. Stat. § 501.204 ................................................................................................5

Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a, 15 U.S.C. § 45(a)(3) .........*passim*

Pub. L. No. 97-290, §§ 401-03 (1982) ...................................................................7

## OTHER AUTHORITIES

H.R. Rep. 97-6863 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2487 ..........................................7

Webster's Third New International Dictionary 640 (1982) ...................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 6, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Samuel Conti, the undersigned Defendants will and hereby do move the Court for an order granting partial summary judgment in favor of Defendants and dismissing with prejudice Plaintiffs' state claims to the extent they involve CRTs incorporated into finished products or CRT Products that were first sold to a non-conspirator outside the United States.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declaration of Lucius B. Lau and accompanying exhibits, the complete files and records in this action, oral argument of counsel, authorities that may be presented at or before the hearing, and such other and further matters as this Court may consider.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2  **I.   STATEMENT OF THE ISSUE**

3     1.     Whether the Foreign Trade Antitrust Improvements Act ("FTAIA") applies to
4  the state claims asserted by the Direct Action Plaintiffs ("DAPs") and Indirect Purchaser
5  Plaintiffs ("IPPs") (collectively, "Plaintiffs") such that the Plaintiffs' state claims are barred
6  to the extent they involve either CRTs incorporated into finished products or products
7  containing CRTs ("CRT Products") that were first sold to a non-conspirator outside the
8  United States.

9  **II.   INTRODUCTION**

10    Plaintiffs' indirect purchaser claims are based on purchases of CRT Products from
11  entities other than the alleged conspirators.  These entities, in turn, either purchased the CRT
12  Products from other entities upstream in the chain of distribution, or purchased CRTs from
13  the alleged conspirators and incorporated those CRTs into CRT Products.  Although some of
14  these initial purchases of either CRTs or CRT Products from the alleged conspirators
15  occurred in the United States, many of them took place abroad.  All indirect purchases of
16  CRT Products based on these initial foreign purchases from the alleged conspirators are
17  barred by the FTAIA.

18    As indirect purchasers, Plaintiffs' claims derive from and are entirely dependent upon
19  purchases made by non-conspirators that preceded them in the chain of distribution,
20  including a significant amount of foreign purchases that the FTAIA excludes from the reach
21  of the U.S. antitrust laws.  Because the FTAIA prohibits non-conspirators from bringing
22  damages claims based on their purchases of CRTs and CRT Products from the alleged
23  conspirators in foreign commerce, the FTAIA also prohibits Plaintiffs from bringing
24  damages claims under state law based on their indirect purchases of these CRT Products.
25  First, all of the relevant states' competition laws have been harmonized with either the
26  federal antitrust laws or the Federal Trade Commission Act ("FTC Act"), to which the
27  FTAIA expressly applies.  Second, the Supremacy Clause forbids state laws from applying in
28  a manner inconsistent with federal law, including the FTAIA.  Third, the Commerce Clause

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   restricts the states' ability to regulate foreign commerce.  Fourth, and finally, comity requires

2   that the states not interfere with the sovereignty of foreign nations and compels construing

3   the relevant state laws consistently with that purpose.

4       This motion is directed solely at Plaintiffs' indirect purchaser claims that involve either

5   CRTs incorporated into finished products or CRT Products that were first sold to a non-

6   conspirator outside the United States (the "Foreign Commerce Claims").  The FTAIA bars

7   such claims because they are neither "import commerce" nor the result of any "direct,

8   substantial, and reasonably foreseeable effect" on domestic commerce that "gives rise to" the

9   Plaintiffs' state law claims.  15 U.S.C. § 6a.  For these reasons and the reasons stated below,

10  the Court should grant partial summary judgment as to Plaintiffs' state law claims based on

11  purchases of CRT Products that involve foreign sales of CRTs or CRT Products to non-

12  conspirators.

13  **III.  FACTUAL BACKGROUND**

14      Plaintiffs seek damages for their indirect purchases of CRT Products under the laws of

15  Arizona, California, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota,

16  Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota,

17  South Dakota, Tennessee, Vermont, Washington, D.C., West Virginia and Wisconsin.

18  Declaration of Lucius B. Lau, dated November 7, 2014 ("Lau Decl."), Ex. A.  IPPs' damages

19  expert, Dr. Janet S. Netz, has acknowledged ████████████████████████████████

20  ██████████████████████████████████████████████████████████████████████

21  ██████████████████████████████████████████.  Lau Decl. Ex. B at 72 (Expert

22  Report of Janet S. Netz, Ph.D., April 15, 2014 ("Netz Report")).  DAPs' damages expert, Dr.

23  Alan S. Frankel, ████████████████████████████████████████████████████

24  ██████████████████████████████████████ Lau Decl. Ex. C ¶ 19 (Report of Alan

25  S. Frankel, Ph.D., April 15, 2014).  Finally, Defendants' expert Dr. Janusz Ordover has

26  ██████████████████████████████████████████████████████████████████████

27  ██████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████ Lau Decl. Ex. D ¶ 60

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   (Expert Report of Janusz A. Ordover, Ph.D., August 5, 2014).  Plaintiffs do not challenge ████

2   ████████████████████████████████████████████████  Thus, IPPs',

3   DAPs' and Defendants' experts are in complete agreement, and there is no genuine issue of

4   material fact: ████████████████████████████████████████████████

5   ████████████████  and as set forth below, they are barred by the FTAIA.

6       Plaintiffs purchased CRT Products, not the CRTs that are the target of the alleged

7   conspiracy.  ████████████████████████████████████████

8   ████████████████████████████████████████████████

9   ████████████████████████████████████████████████

10  ████



24  *Id.* Figure 1.   Plaintiffs in this litigation occupy different steps along this complicated

25  distribution chain. ████████████████████████████████

26  ████████████████████████████████████████████████

27  ████████████████████████████████████████████████

28  ████████████████████████████████████  *Id.* ¶¶ 11-13 & n.12.

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 ███████████████████████████████████. *Id.* ¶ 13. ██████████████

4 ████████████████████████████████████████████████████████████

5 ██████████████████████████ *Id.*

## IV.   STANDARD OF REVIEW

A court "shall" grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Summary judgment should be granted if the evidence would require a directed verdict for the moving party."  *Kinetic Systems, Inc. v. Federal Financing Bank*, No. 12-cv-01619-SC, 2014 WL 3964952, at *3 (N.D. Cal. Aug. 13, 2014) (Conti, J.) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

## V.   ARGUMENT

The Court should grant this motion for partial summary judgment and dismiss those state claims made by the Plaintiffs that involve either CRTs incorporated into finished products or CRT Products that were first sold to a non-conspirator outside the United States because such claims are barred by the FTAIA.

### A.      State Law Claims Are Governed By The Extraterritorial Limitations Imposed By The FTAIA

States are restricted from applying their laws to foreign conduct that is excluded from regulation under federal law.  State antitrust laws must be implemented in accordance with the Sherman Act or FTC Act, both of which are limited in their applicability to foreign commerce by the FTAIA.  To allow states to circumvent the restrictions placed by the FTAIA would undermine Congress's purpose in enacting the FTAIA, violate the Supremacy

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   and Commerce Clauses of the U.S. Constitution, and offend principles of comity.  Thus,

2   courts consistently hold that the FTAIA limits state antitrust laws.  *See, e.g.*, *In re Static*

3   *Random Access Memory (SRAM) Antitrust Litig.*, No. 3:07-md-01819, 2010 WL 5477313, at

4   *4 (N.D. Cal. Dec. 31, 2010) (finding that indirect purchasers of computer memory were

5   barred from recovering for foreign market transactions under state laws unless plaintiffs

6   could prove "jurisdictional facts" bringing their claims within the FTAIA's domestic injury

7   exception); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 927  (N.D. Ill. 2009) ("[T]here

8   could potentially be conflict with certain constitutional provisions if state antitrust laws

9   reached foreign commercial activity that [the FTAIA] did not"), *rev'd on other grounds by*

10  *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012); *In re Intel Corp.*

11  *Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457 (D. Del. 2007) (finding that

12  plaintiffs' state law antitrust claims are limited "by the reach of their applicable federal

13  counterparts" and dismissing claims based on foreign conduct); *CSR Ltd. v. CIGNA Corp.*,

14  405 F. Supp. 2d 526, 552 (D.N.J. 2005) (barring state law antitrust claims under the

15  harmonization provision for New Jersey's antitrust law and under decisional law); *'In'*

16  *Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 n.8 (M.D.N.C. 1987) (noting

17  "the anomaly that would be created if [North Carolina's Unfair Trade Practices Act] were

18  construed to have a greater extraterritorial reach than the Sherman Act").  Accordingly, this

19  Court should also find that the relevant states' antitrust laws are similarly restricted by the

20  contours of the FTAIA.

21          **1.      The Relevant States' Competition Laws Are Harmonized With**
                         **Federal Antitrust Law**
22

23          Recognizing the need for a uniform approach between federal and state antitrust laws,

24  certain states have explicitly enacted harmonization statutes to maintain consistency.  For

25  example, Florida has harmonized its Deceptive and Unfair Trade Practices Act ("FDUTPA")

26  with the FTC Act and federal courts' interpretation of the FTC Act.  *See* Fla. Stat. § 501.204

27  (stating that the courts, when construing the FDUTPA, shall grant "due consideration and

28  great weight … to the interpretations of the Federal Trade Commission and the federal courts

related to … the Federal Trade Commission Act").  Of the states whose laws form the basis for Plaintiffs' indirect purchaser claims, Arizona, Florida, Hawaii, Iowa, Massachusetts, Michigan, Nebraska, Nevada, New Mexico, South Dakota, Washington, D.C. and West Virginia have enacted harmonization statutes.  *See* Lau Decl. Ex. E (Chart of state harmonization statutes and cases supporting harmonization).  For states that do not have explicit harmonization statutes, principles of federal antitrust law nevertheless apply to the states' antitrust laws.  *See Id.*  Thus, state antitrust laws are subject to the same limitations applicable to the federal antitrust laws.

> **2.     The Supremacy Clause Prevents Plaintiffs' State Law Claims From Extending Farther Than The FTAIA Allows**

The Supremacy Clause restricts Plaintiffs' indirect purchaser claims that originate with foreign purchases of CRTs or CRT Products.  Allowing state antitrust laws to extend beyond the restrictions that Congress imposed through the FTAIA would constitute regulation of foreign commerce in direct contravention to the intent of Congress.

The Supremacy Clause instructs that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  Thus, it prohibits the application of any state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (citations and internal quotation marks omitted).

The Supremacy Clause thus preempts state laws that are inconsistent with the goals of Congress.  In the area of foreign commerce, allowing individual states to separately regulate foreign commerce would undermine the federal government's desire to speak with "one voice."  *Japan Line, LTD v. County of Los Angeles*, 441 U.S. 434, 448 (1979); *Crosby*, 530 U.S. at 385 (finding that the Massachusetts Burma Law "stands as an obstacle in addressing the congressional obligation to devise a comprehensive, multilateral strategy" in the United States' commercial transactions with Burma).

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    Applying the principles of preemption established by the Supremacy Clause, both

2  federal and state courts have denied various state antitrust laws from extending beyond the

3  reach of federal law.  *See, e.g.*, *Major League Baseball v. Crist*, 331 F.3d 1177, 1186, 1118

4  (11th Cir. 2003) (invalidating civil investigative demands issued under the Florida Antitrust

5  Act by the Florida Attorney General because "federal law establishes a universal exemption

6  [from the antitrust laws for the business of baseball] in the name of uniformity"); *In re Intel*,

7  476 F. Supp. 2d at 457 (finding that California state law claims were precluded by the

8  FTAIA because "Congress' intent would be subverted if state antitrust laws were interpreted

9  to reach conduct which the federal law could not."); *Global Reinsurance Corp. U.S. Branch*

10 *v. Equitas Ltd.*, 969 N.E.2d 187, 195-96 (N.Y. 2012) (finding that New York's Donnelly Act

11 "cannot reach foreign conduct deliberately placed by Congress beyond the Sherman Act's

12 jurisdiction," and noting that "if states remained free to authorize 'little Sherman Act' claims

13 that went beyond it" the federal power to regulate foreign commerce would be undone).

14    In enacting the FTAIA, Congress sought to limit the reach of federal antitrust claims

15 to the extent that such claims implicate foreign commerce.  *See* Pub. L. No. 97-290, §§ 401-

16 03 (1982).   Thus, the FTAIA bars the application of the Sherman and FTC Acts to

17 "anticompetitive conduct that causes only foreign injury" unless the conduct "*both* (1)

18 sufficiently affects American commerce, *i.e.*, it has a 'direct substantial, and reasonable

19 effect' on American domestic, import, or (certain) export commerce,' *and* (2) has an effect of

20 a kind that antitrust law considers harmful, *i.e.*, the 'effect' must giv[e] rise to a [Sherman

21 Act] claim."   *F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 158 (2004)

22 ("*Empagran I*") (emphases and alterations in original); *see also* 15 U.S.C. § 6a; 15 U.S.C. §

23 45(a)(3).

24    The FTAIA was also enacted with the intent to resolve problems caused by

25 inconsistent tests used by the courts in determining the application of U.S. antitrust laws to

26 international transactions.   *See* H.R. Rep. 97-686, at 3 (1982), *reprinted in* 1982

27 U.S.C.C.A.N. 2487, 2487 ("House Report").  The FTAIA was adopted to serve as a "single,

28 objective test — the 'direct, substantial, and reasonably foreseeable effect' test" to serve as a

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   "clear benchmark . . . for businessmen, attorneys and judges as well as our trading partners."

2   *Id.* at 2487-88.

3        Because federal law preempts state laws that undermine Congressional intent, it

4   follows that the FTAIA, which Congress intended to limit the scope of federal antitrust laws,

5   would also limit the scope of state antitrust laws.  A contrary result would render the FTAIA

6   meaningless.  For example, any plaintiff could circumvent the FTAIA's restrictions by only

7   bringing state law claims instead of federal antitrust claims.  And the states — rather than

8   being limited to the "single, objective test" that Congress established — could create a

9   patchwork of state antitrust laws applicable to various types of foreign commerce.   In

10  essence, unless the FTAIA is applied equally to state antitrust laws as it is to federal antitrust

11  laws, Congress's intent to speak with "one voice" and set a "clear benchmark" for "our

12  trading partners" regarding the applicability of U.S. antitrust law would be subverted.

13  Importantly in this case, such a result would allow Plaintiffs' indirect purchaser claims to

14  have a further reach in foreign commerce than the direct purchasers in the same litigation.

15  Such a result cannot be permitted, and the various states' laws under which Plaintiffs base

16  their indirect claims must be subject to the FTAIA.

17       **3.**      **The Commerce Clause Similarly Limits The Ability Of State Laws To Regulate Foreign Commerce**

18

19       The Commerce Clause gives Congress the power "[t]o regulate commerce with

20  foreign Nations."  U.S. Const. art. I, § 8, cl. 3.  As noted by the Supreme Court, foreign

21  commerce is "'pre-eminently a matter of national concern' on which the federal government

22  has historically spoke with 'one voice.'"   *SRAM*, 2010 WL 5477313, at *4 (quoting *Japan*

23  *Line,* 441 U.S. at 448).  Thus, "when state regulations affect foreign commerce, additional

24  scrutiny is necessary to determine whether the regulations 'may impair uniformity in an area

25  where federal uniformity is essential.'" *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008,

26  1014 (9th Cir. 1994) (quoting *Japan Line*, 441 U.S. at 448).

27       Indeed, Congress enacted the FTAIA in order to ensure that antitrust laws were

28  applied uniformly to claims based on foreign commerce.  Thus, in *SRAM*, Judge Wilken held

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

that "the United States Constitution vests Congress with the express power to 'regulate Commerce with foreign Nations."   *SRAM*, 2010 WL 5477313, at *4 (finding indirect purchaser plaintiffs' argument that the FTAIA does not apply to their state law claims unpersuasive); *see also In re Intel*, 476 F. Supp. 2d at 457 (applying the FTAIA to plaintiffs' California law claims because "Congress' intent would be subverted if state antitrust laws were interpreted to reach conduct which the federal law could not.")

Clearly, allowing the antitrust regimes of the 50 states to speak independently to determine the scope of foreign commerce in antitrust cases would undermine Congress's intent to speak with "one voice" in enacting the FTAIA.  The Commerce Clause specifically proscribes this type of discord and confusion by empowering Congress with the ability to regulate foreign commerce both at the federal and state level.

### 4.    Comity Concerns Bar State Law Claims From Reaching Beyond The Territorial Restrictions Of The FTAIA

Principles of comity further limit Plaintiffs' state law claims from extending into foreign commerce.  "America's antitrust laws, when applied to foreign conduct, can interfere with a foreign nation's ability independently to regulate its own commercial affairs." *Empagran I*, 542 U.S. at 165.  Thus, the "legitimate sovereign interests of other nations" was one of Congress's considerations in drafting the FTAIA.  *Id.* at 164-65, 167-68.  Applying state antitrust laws to transactions that never touch the United States would undermine efforts to avoid "interference with other nations' prerogative to safeguard their own citizens from anticompetitive activity within their own borders" and add unnecessary complications to the analysis of applying American antitrust laws to foreign commerce.  *Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267, 1271 (D.D.C. 2005) ("Empagran II"); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 987 (9th Cir. 2008).  By adhering to the principles of comity, such conflict can be avoided.

Based upon these reasons, the FTAIA limits the application of state antitrust laws to foreign commerce.  Plaintiffs therefore may not recover damages for their Foreign Commerce Claims unless they can establish that the FTAIA does not bar those claims.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**B.      Plaintiffs Cannot Establish That Their Foreign Commerce Claims Satisfy Either The Import Commerce Exclusion Or The Domestic Injury Exception To The FTAIA**

The Court should enter partial summary judgment in favor of Defendants because the FTAIA prohibits Plaintiffs from recovering under state or federal law for activity involving foreign commerce that is outside the reach of the Sherman Act.  Plaintiffs cannot recover for their Foreign Commerce Claims unless they establish either that (1) the transactions at issue amount to import commerce excluded from the restrictions of the FTAIA, or (2) that Defendants' conduct had "a direct, substantial, and reasonably foreseeable effect" on domestic commerce that "gives rise to" their claims.  15 U.S.C. § 6a; *United States v. Hsiung*, 758 F.3d 1074, 1088 (9th Cir. 2014) (holding that the FTAIA "provides substantive elements under the Sherman Act in cases involving nonimport trade with foreign nations").  These tests are commonly referred to as the "import commerce exclusion" and the "domestic injury exception," respectively.  *See Minn-Chem*, 683 F.3d at 855 ("import commerce exclusion"); *DRAM*, 546 F.3d at 985 (9th Cir. 2008) ("domestic injury exception").  Because Plaintiffs cannot establish either the import commerce exclusion or the domestic injury exception, their Foreign Commerce Claims must be rejected.

First, although import commerce is "excluded at the outset from the coverage of the FTAIA," Plaintiffs' Foreign Commerce Claims do not involve import commerce because they are not based on direct sales by the alleged conspirators to Plaintiffs in the United States.  *Minn-Chem*, 683 F.3d at 854-55 (noting that the "import commerce exclusion" applies only to "transactions that are directly between the plaintiff purchasers and the defendant cartel members"); *see also Hsiung*, 758 F.3d at 1091 (holding that the import commerce exclusion was satisfied where the alleged conspirators "earned over $600 million from the importation of TFT-LCDs into the United States").

Second, because Plaintiffs' Foreign Commerce Claims are not import commerce, they are subject to the FTAIA's "general rule placing *all* (nonimport) activity involving foreign commerce outside the Sherman Act's reach."  *Empagran I*, 542 U.S. at 162 (emphasis in

1    original); *see also Dee-K Enters., Inc. v. Heveafil Sdn. Bhd.,* 299 F.3d 281, 287 (4th Cir.

2    2002) (applying the FTAIA to allegations that are of "a largely foreign conspiracy with some

3    domestic elements, aimed at a global market").    Plaintiffs' claims are therefore only

4    actionable "*provided that* the conduct *both* (1) sufficiently affects American commerce, *i.e.*,

5    it has a 'direct, substantial, and reasonably foreseeable effect' on American domestic, import,

6    or (certain) export commerce, *and* (2) has an effect of a kind that antitrust law considers

7    harmful, *i.e.,* the 'effect' must 'giv[e] rise to a [Sherman Act] claim.'" *Empagran I*, 542 U.S.

8    at 162 (emphases and alterations in original).

9        Plaintiffs cannot prove that the harm they allegedly suffered was due to a "direct" effect

10   on domestic commerce, because any relevant effects on U.S. commerce did not "follow[] as

11   an immediate consequence of the [Defendants'] activity" due to significant, intervening

12   actions taken by non-conspirators. *United States v. LSL Biotechnologies*, 379 F.3d 672, 680

13   (9th Cir. 2004).    Similarly, the foreign harm allegedly suffered by non-conspirators

14   purchasing CRTs or CRT Products abroad did not "give rise to" Sherman Act claims by the

15   non-conspirators because such harm, if any, was caused by "the overall price-fixing

16   conspiracy itself," and not by any effects that the alleged conspiracy had in the United States.

17   *DRAM*, 546 F.3d at 988 (affirming dismissal of Sherman Act claims based on foreign

18   purchases).    Thus, no domestic effects of the alleged conspiracy "proximately caused"

19   actionable injury to the foreign purchasers. *Id.*  Because Plaintiffs' Foreign Commerce

20   Claims are entirely derivative of harm purportedly suffered by the foreign purchasers, and no

21   domestic effects of the alleged conspiracy "proximately caused" actionable injury to such

22   purchasers, Plaintiffs cannot establish a "direct causal link between the anticompetitive

23   practice and [Plaintiffs'] damages." *Id.*    Accordingly, the Court should grant partial

24   summary judgment as to Plaintiffs' Foreign Commerce Claims.

25              **1.    The FTAIA's Import Commerce Exclusion Does Not Apply**
              **Because The Alleged Conspirators Did Not Import The CRT**
26              **Products Underlying Plaintiffs' Foreign Commerce Claims**

27       None of the Foreign Commerce Claims involve direct sales by Defendants or alleged

28   conspirators to Plaintiffs in the United States.  As the Ninth Circuit recently confirmed, the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

import commerce exclusion applies only to "transactions that are directly between the [U.S.] plaintiff purchasers and the defendant cartel members" for products sold into the United States.  *See Hsiung*, 758 F.3d at 1090 (alteration in original (quoting *Minn-Chem*, 683 F.3d at 855).  Because Plaintiffs' Foreign Commerce Claims do not involve imports by the alleged conspirators to Plaintiffs, partial summary judgment is warranted.

To the extent Plaintiffs argue that the import commerce exclusion is satisfied because the alleged conspiracy targeted domestic markets or U.S. companies, they are mistaken.  *See Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 470 (3d Cir. 2011) (stating, in dicta, that "the import trade or commerce exception requires that the defendants' conduct target import goods or services").  "Targeting is not a legal element for import trade under the Sherman Act."  *Hsiung*, 758 F.3d at 1091; *see also CSR Ltd.*, 405 F. Supp. 2d at 542 (holding that even if defendants "targeted the importation" of services to the United States, this fact was irrelevant where plaintiffs brought such services into the United States; to hold otherwise would be an "extremely broad and extraordinary view of 'import trade or import commerce'").  Thus, whether the alleged conspiracy targeted U.S. markets is irrelevant to the applicability of the import commerce exclusion.  Even if it had, Defendants' foreign sales of CRTs are not import commerce.

## 2.    The Domestic Injury Exception Does Not Apply To Plaintiffs' Foreign Commerce Claims

Because the Foreign Commerce Claims do not involve import commerce, Plaintiffs must prove that Defendants' conduct had a "direct, substantial, and reasonably foreseeable effect" on domestic commerce that "gives rise to" the Plaintiffs' claims.  *Empagran I*, 542 U.S. at 161, 173-74 (holding that domestic effects must give rise to "the plaintiff's claim" or "the claim at issue").  In other words, Plaintiffs must point to direct, substantial and reasonably foreseeable domestic effects of Defendants' conduct that are the proximate cause of their antitrust claims.  *In re Hydrogen Peroxide Antitrust Litig.*, 702 F. Supp. 2d 548, 551 (E.D. Pa. 2010) (agreeing with defendants that the "FTAIA mandates that two events occur *seriatim* for us to have jurisdiction: (1) there are *first* domestic effects of the defendants'

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1  antitrust conduct, and (2) those domestic effects *then* proximately cause an antitrust claim")

2  (emphasis in original).

3      Both pre- and post-enactment of the FTAIA, the Supreme Court and all federal appeals

4  courts that have considered the issue have held that the Sherman Act does not apply to

5  purchases of price-fixed goods abroad.  *Empagran I*, 542 U.S. at 159, 169 (noting that the

6  parties identified no cases "in which any court applied the Sherman Act to redress foreign

7  injury in such circumstances"); *DRAM*, 546 F.3d at 988 ("In particular, that the conspiracy

8  had effects in the United States and abroad does not show that the effect in the United States,

9  rather than the overall price-fixing conspiracy itself, proximately caused the effect abroad.");

10  *In re Monosodium Glutamate Antitrust Litig.*, 477 F.3d 535, 539-40 (8th Cir. 2007) ("The

11  domestic effects of the price fixing scheme (increased U.S. prices) were not the direct cause

12  of the appellants' injuries.  Rather, it was the foreign effects of the price fixing scheme

13  (increased prices abroad)."); *Empagran II*, 417 F.3d at 1270-71 & n.5 (D.C. Cir. 2005)

14  (rejecting plaintiff's argument that the setting of "a single global price" satisfied the FTAIA,

15  because even under this theory "it was the foreign effects of price-fixing outside of the

16  United States that directly caused, or 'g[a]ve rise to,' their losses when they purchased

17  vitamins abroad at super-competitive prices") (alteration in original); *Den Norske Stats*

18  *Oljeselskap AS v. Heeremac VOF*, 241 F.3d 420, 426-27 (5th Cir. 2001) (explaining that "the

19  FTAIA requires more than a 'close relationship' between the domestic injury and the

20  plaintiff's claim; it demands that the domestic effect 'gives rise' to the claim").  The same

21  result is warranted here because Plaintiffs cannot point to any direct, domestic effects of

22  Defendants' conduct that proximately caused their antitrust claims.

23      ***First***, Plaintiffs' Foreign Commerce Claims rely entirely on purported indirect effects

24  of Defendants' conduct — not direct effects on U.S. commerce.  The Ninth Circuit has held

25  that an effect is "direct" only if it "follows as an immediate consequence of [Defendants']

26  activity."  *LSL*, 379 F.3d at 680 (noting that a dictionary published when the FTAIA was

27  enacted defined "direct" as "proceeding from one point to another in time or space without

28  deviation or interruption") (quoting Webster's Third New International Dictionary 640

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    (1982)).  "An effect cannot be 'direct' where it depends on . . . uncertain intervening

2    developments."  *Id.* at 681.  All of Plaintiffs' Foreign Commerce Claims depend upon effects

3    that do not follow "as an immediate consequence" of *Defendants'* conduct and that are

4    subject to numerous "uncertain intervening developments."  *Id.* at 680-81; *see also United*

5    *Phosphorus, Ltd. v. Angus Chem. Co.*, 131 F. Supp. 2d 1003, 1014 (N.D. Ill. 2001) ("The

6    FTAIA explicitly bars antitrust actions alleging restraints in foreign markets for inputs . . .

7    that are used abroad to manufacture downstream products . . . that may later be imported into

8    the United States.  Clearly, the domestic effects in such a case, if any, would obviously not

9    be 'direct,' much less 'substantial' and 'reasonably foreseeable.'").

10        Each of the indirect purchaser claims relies on proving that ████████████████

11   ████████████████████████████████████████████████████████████████████████████

12   ████████████████████████████  Lau Decl. Ex. B at 82 (Netz Report).  To the extent

13   any purported overcharges are passed-through, ███████████████████████████████████

14   ███████████████████████████████████████  *Id.* at 88.  Of course, ████████████

15   ████████████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████  *Id.*  In order to calculate any

19   harm allegedly caused to Plaintiffs, ████████████████████████████████████████

20   ██████████████████████████  *Id.*

21        Given the complexity of the distribution process for CRT Products, any calculation of

22   harm purportedly suffered by an indirect purchaser necessarily "depends on . . . uncertain

23   intervening developments" — namely, whether upstream firms changed their downstream

24   prices in response to the alleged overcharges on CRTs at the top of the distribution chain.

25   *LSL*, 379 F.3d at 681.  As Dr. Netz admits, ████████████████████████████████████

26   ████████████████████████████████  Lau Decl. Ex. B at 82 (Netz Report).  Each of the

27   decisions made by these non-conspirator firms about whether to pass-through any

28   overcharges, when to pass them through, and by how much, constitute a "deviation" and an

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    "interruption" between the alleged conspirators' activity and the supposed effects on

2    Plaintiffs. *LSL*, 379 F.3d at 680.  Even at the final step in the distribution chain — the direct

3    sale from DAPs (and others) to the IPPs — the decision about whether to increase CRT

4    Product prices depends on multiple factors other than cost, ███████████████████

5    ████████████████████████████████████ Lau Decl. Ex. F

6    (Costco 30(b)(6) Dep. Tr. at 106:4-14, 109:1-110:21 (even when faced with a cost change,

7    whether Costco changed retail pricing depended on the magnitude of the change, Costco's

8    margins, pricing in the market and demand for the product)); Lau Decl. Ex. G (████████

9    ████████████████████████████████████████████

10   ████████████████████████████████████████████

11   ████████████████████████████████████████████

12   ████████████████████████████████████████████

13   ██████████████████████████████)); Lau Decl. Ex. H (Rebecca

14   Smith (Best Buy) Dep. Tr. at 137:24-138:17 (█████████████████████████

15   ████████████████████████████████████████████

16   ██████████████████████)).  Thus, any domestic effect on IPPs was not an

17   "immediate consequence" of Defendants' conduct, and therefore is not a "direct" effect

18   sufficient to recover for their antitrust claims.

19       The alleged harm suffered by DAPs is similarly dependent upon "intervening

20   developments," including their own decisions as to how to price the CRT Products they sold.

21   Even if the DAPs were otherwise permitted to recover for their indirect purchases, they can

22   do so only to the extent that they prove the amount of overcharges on CRTs that were

23   passed-through to them, as well as the portion of those overcharges that the DAPs did not

24   pass-through to their customers.  *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No.

25   3:07-md-1827, 2012 WL 6709621, at *1-7 (N.D. Cal. Dec. 26, 2012) (holding that

26   downstream pass-through from Best Buy, Electrograph, Kmart and Sears to their customers

27   must be considered with respect to claims brought under the laws of California, Illinois,

28   Michigan, Minnesota and New York); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-

md-1827, 2014 WL 4652145, at *2 (N.D. Cal. Sept. 18, 2014) (holding that downstream pass-through from Interbond, Office Depot and Tech Data to their customers must be considered with respect to claims brought under Florida law).  Thus, any effect on DAPs is also not the "immediate consequence" of Defendants' conduct, but rather dependent upon intervening actions taken by other upstream firms, as well as the DAPs' own decisions about whether to adjust their retail prices, when to adjust them and by how much.  If Defendants' conduct had any effect on DAPs in the United States at all, this effect is plainly not "direct."

**Second**, no effects of Defendants' conduct on domestic commerce gave rise to Plaintiffs' claims.  The Ninth Circuit and numerous other courts have held that effects give rise to a claim only where they have "proximately caused" the Plaintiffs' injury.  *DRAM*, 546 F.3d at 988; *see also Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 414 (2d Cir. 2014); *Empagran II*, 417 F.3d at 1271.  It is not enough for Plaintiffs to prove that Defendants' conduct created domestic effects that were a "but for" cause of Plaintiffs' purported injuries.  *DRAM*, 546 F.3d at 988.  Rather, they must prove a "direct causal link between the anticompetitive practice and [Plaintiffs'] damages."  *Id.*  With respect to the Foreign Commerce Claims, no "direct causal link" exists.

For example, Plaintiffs may argue that the alleged conspirators increased prices on CRTs that they manufactured and sold in the United States.  Any domestic effect due to higher prices on these CRTs is irrelevant, however, because this motion is directed at Plaintiffs' Foreign Commerce Claims, which are premised entirely upon foreign CRT sales to non-conspirators.

Plaintiffs may also contend that the alleged conspirators intended to increase prices for CRT Products sold by non-conspirators in the United States.  This contention is similarly unavailing.  As an initial matter, █████████████████████████████████████████████████████████████████████████████████████████████.  *See, e.g.*, Lau Decl. Ex. I (Pls.' Sears, Roebuck and Co. & Kmart Corp.'s Objections and Responses to Def. Hitachi Displays, Ltd.'s First Set of Requests for Admission, August 4, 2014, at 56 ("Plaintiffs are not proceeding on the theory of a finished-product conspiracy.")); Order re:

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Voluntary Withdrawal of Indirect Purchaser Pls.' Claims as to Alleged Conspiracy Directed Towards CRT Finished Products (N.D. Cal. Apr. 22, 2011), ECF No. 904.  Thus, any intent argument would rely on proving that (1) the alleged conspirators raised prices of CRTs sold abroad, (2) intending that the purchasers of those CRTs would pass-on the alleged overcharges by raising their prices for CRT Products, (3) intending that all subsequent purchasers of the CRT Products would also raise their prices, and (4) intending that ultimately this chain of events would result in higher CRT Product prices in the United States.  Even if Plaintiffs could prove such allegations, the fact that Defendants "knew or could foresee the effect of their allegedly anti-competitive activities in the United States . . . or had as a purpose to manipulate United States trade does not establish that 'U.S. effects' proximately caused the [plaintiff's] harm." *Empagran II*, 417 F.3d at 1271.

**Third**, any effects on the domestic market that occurred after the CRTs were first purchased abroad are insufficient to give rise to Plaintiffs' claims.  The proximate cause standard embodied in the "gives rise to" requirement demands that direct, domestic effects of Defendants' conduct cause harm giving rise to Plaintiffs' claims — not that the foreign harm allegedly suffered by the initial purchasers of CRTs abroad subsequently causes domestic effects.  *See Lotes*, 753 F.3d at 414 (noting that where foreign injury later results in domestic effects, such effects do not give rise to a claim because "the direction of causation runs the wrong way").  With respect to the Foreign Commerce Claims, the direct effect of Defendants' conduct was allegedly the injury suffered by entities other than the Plaintiffs that purchased CRTs abroad.  This foreign effect is the only potential cause of Plaintiffs' injuries, albeit not a proximate cause of their alleged injuries.  But Plaintiffs cannot recover unless the "domestic effects of the price fixing scheme" were the "direct cause" of their injuries.  *Monosodium Glutamate*, 477 F.3d at 539.   Accordingly, Plaintiffs' Foreign Commerce Claims are barred by the FTAIA.

Sharp Electronics Corporation ("SEC"), a direct action plaintiff in this litigation that directly purchased CRTs from Defendants, has admitted in parallel litigation that the FTAIA prohibits Plaintiffs from recovering for foreign purchases under state law.  Lau Decl. Ex. J

(Defendants' Joint Notice of Motion and Motion to Dismiss Amended Complaint Under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) at 15-18, *In re TFT-LCD (Flat Panel) Antitrust Litig.* (N.D. Cal. Feb. 19, 2010), ECF No. 1559 (arguing that "state law claims based on foreign injuries are barred to the same extent as . . . Sherman Act claims" and seeking dismissal of all indirect claims based on foreign purchases by non-parties)).  Indeed, in this case SEC has agreed to abandon its indirect purchaser claims, which were based exclusively on foreign CRT purchases made by its foreign affiliates.  Lau Decl. Ex. K (letter from Craig A. Benson, counsel for Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc., to counsel for the Defendants, dated October 14, 2014).  This Court should require the other Plaintiffs to abandon their Foreign Commerce Claims and adhere to the clear limits of the FTAIA.

\*     \*     \*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1  **VI.   CONCLUSION**

2       For these reasons, Defendants' motion for partial summary judgment should be granted

3  and the Court should dismiss Plaintiffs' state claims to the extent they involve CRTs

4  incorporated into finished products or CRT Products that were first sold to a non-conspirator

5  outside the United States.

6

7                                          Respectfully submitted,

8  Dated:  November 7, 2014               **WHITE & CASE** LLP

9

10                                  By:  _/s/ Lucius B. Lau_
                                         Christopher M. Curran (*pro hac vice*)
11                                       ccurran@whitecase.com
                                         Lucius B. Lau (*pro hac vice*)
12                                       alau@whitecase.com
                                         Dana E. Foster (*pro hac vice*)
13                                       defoster@whitecase.com
                                         701 Thirteenth Street, N.W.
14                                       Washington, DC  20005
                                         tel.: (202) 626-3600
15                                       fax: (202) 639-9355
16
                                         *Counsel to Defendants Toshiba*
17                                       *Corporation, Toshiba America, Inc.,*
18                                       *Toshiba America Information Systems,*
                                         *Inc., and Toshiba America Electronic*
19                                       *Components, Inc.*

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

BAKER BOTTS LLP

By: _/s/ John M. Taladay_____
JOHN M. TALADAY (*pro hac vice*)
john.taladay@bakerbotts.com
JOSEPH OSTOYICH (*pro hac vice*)
joseph.ostoyich@bakerbotts.com
ERIK T. KOONS (*pro hac vice*)
erik.koons@bakerbotts.com
CHARLES M. MALAISE (*pro hac vice*)
Charles.malaise@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Avenue, N.W.
Washington DC 20004-2400
Telephone:  (202) 639-7700
Facsimile:  (202) 639-7890


JON V. SWENSON (SBN 233054)
jon.swenson@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone:  (650) 739-7500
Facsimile:  (650) 739-7699
E-mail:  jon.swenson@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips*
*N.V., Philips Electronics North America*
*Corporation, Philips Taiwan Ltd., and*
*Philips do Brasil, Ltda.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Jeffrey L. Kessler*
　　WINSTON & STRAWN LLP
　　Jeffrey L. Kessler (*pro hac vice*)
　　A. Paul Victor (*pro hac vice*)
　　Aldo A. Badini Cal. Bar No. 257086
　　Eva W. Cole (*pro hac vice*)
　　Molly M. Donovan (*pro hac vice*)
　　200 Park Avenue
　　New York, NY 10166
　　Telephone:(212) 294-4692
　　Facsimile: (212) 294-4700
　　Email:　jkessler@winston.com
　　　　　　abadini@winston.com
　　　　　　pvictor@winston.com
　　　　　　ewcole@winston.com
　　　　　　mmdonovan@winston.com


　　WEIL, GOTSHAL & MANGES LLP
　　Steven A. Reiss (*pro hac vice*)
　　David L. Yohai (*pro hac vice*)
　　Adam C. Hemlock (*pro hac vice*)
　　767 Fifth Avenue
　　New York, NY 10153-0119
　　Telephone:(212) 310-8000
　　Facsimile: (212) 310-8007
　　Email:　steven.reiss@weil.com
　　　　　　david.yohai@weil.com
　　　　　　adam.hemlock@weil.com

*Attorneys for Defendants Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of North America, and MT Picture Display Co., Ltd.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By: */s/ Michael W. Scarborough*
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Gary L. Halling, Cal. Bar No. 66087
James L. McGinnis, Cal. Bar No. 95788
Michael W. Scarborough, Cal. Bar No.
203524
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone:(415) 434-9100
Facsimile: (415) 434-3947
E-mail: ghalling@sheppardmullin.com
jmcginnis@sheppardmullin.com
mscarborough@sheppardmullin.com

*Attorneys for Defendants Samsung SDI
America, Inc.; Samsung SDI Co., Ltd.;
Samsung SDI (Malaysia) SDN. BHD.;
Samsung SDI Mexico S.A. DE C.V.; Samsung
SDI Brasil Ltda.; Shenzen Samsung SDI Co.,
Ltd. and Tianjin Samsung SDI Co., Ltd.*

By: */s/ Eliot A. Adelson*
KIRKLAND & ELLIS LLP
Eliot A. Adelson Cal. Bar. No. 205284
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone:(415) 439-1413
Facsimile: (415) 439-1500
Email:   eadelson@kirkland.com

*Attorneys for Defendants Hitachi, Ltd.,
Hitachi Displays, Ltd. (n/k/a Japan Display
Inc.), Hitachi Asia, Ltd., Hitachi America,
Ltd., and Hitachi Electronic Devices (USA),
Inc.*

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ Rachel S. Brass
    GIBSON, DUNN & CRUTCHER LLP
    Rachel S. Brass Cal. Bar. No. 219301
    Joel S. Sanders Cal. Bar. No. 107234
    Austin V. Schwing Cal. Bar. No. 211696
    555 Mission Street, Suite 3000
    San Francisco, CA 94105
    Telephone:(415) 393-8200
    Facsimile: (415) 393-8306
    Email:   rbrass@gibsondunn.com
             jsanders@gibsondunn.com
             aschwing@gibsondunn.com

    *Attorneys for Defendants Chunghwa Picture
    Tubes, Ltd. and Chunghwa Picture Tubes
    (Malaysia) as to Direct Action Plaintiffs Best
    Buy entities, Target, Sears, Interbond, Office
    Depot, CompuCom, P.C. Richards, MARTA,
    ABC Appliance, Schultze Agency Services,
    and ViewSonic Only*

By: /s/ Kathy L. Osborn
    FAEGRE BAKER DANIELS LLP
    Kathy L. Osborn (*pro hac vice*)
    Ryan M. Hurley (*pro hac vice*)
    300 N. Meridian Street, Suite 2700
    Indianapolis, IN 46204
    Telephone: (317) 237-0300
    Facsimile: (317) 237-1000
    kathy.osborn@FaegreBD.com
    ryan.hurley@FaegreBD.com

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303-2279
Telephone: (650) 324-6700
Facsimile: (650) 324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Defendants Thomson SA and
Thomson Consumer Electronics, Inc.*


By: */s/ Michael T. Brody*
JENNER&BLOCK LLP
Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
ttruax@jenner.com
mbrody@jenner.com

Brent Caslin (Cal. Bar. No. 198682)
JENNER&BLOCK LLP
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
bcaslin@jenner.com

*Attorneys for Defendants Mitsubishi Electric
Corporation, Mitsubishi Electric US, Inc.
and, Mitsubishi Electric Visual Solutions
America, Inc.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Nathan Lane, III*
    Mark Dosker
    Nathan Lane, III
    275 Battery Street, Suite 2600
    San Francisco, CA  94111
    Telephone:  415.954.0200
    Facsimile:  415.393.9887
    Email:  mark.dosker@squirepb.com
    nathan.lane@squirepb.com

    Donald A. Wall (*Pro Hac Vice*)
    SQUIRE PATTON BOGGS (US) LLP
    1 East Washington Street, Suite 2700
    Phoenix, Arizona 85004
    Telephone:  602.528.4000
    Facsimile:  602.253.8129
    Email:  donald.wall@squirepb.com

    *Attorneys for Defendant Technologies*
    *Displays Americas LLC with respect to all*
    *cases except Office Depot, Inc. v.*
    *Technicolor SA, et al. and Sears, Roebuck*
    *and Co., et al v. Technicolor SA, et al.*

CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP

By: */s/  Jeffrey I. Zuckerman*
    Jeffrey I. Zuckerman (Pro Hac Vice)
    Ellen Tobin (Pro Hac Vice)
    101 Park Avenue
    New York, New York 10178
    Telephone: 212.696.6000
    Facsimile: 212.697.1559
    Email:  jzuckerman@curtis.com
    etobin@curtis.com

Arthur Gaus (SBN 289560)
DILLINGHAM & MURPHY, LLP
601 California Street, Suite 1900
San Francisco, California 94108
Telephone: 415.397.2700
Facsimile: 415.397-3300
Email: asg@dillinghammurphy.com

*Attorneys for Defendant Technologies
Displays Americas LLC with respect to
Office Depot, Inc. v. Technicolor SA, et al.
and Sears, Roebuck and Co. et al. v.
Technicolor SA, et al.*

FRESHFIELDS BRUCKHAUS DERINGER
US LLP

By: */s/ Michael Lacovara*
Michael Lacovara (209279)
Freshfields Bruckhaus Deringer US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022
Telephone: 212 277 4000
Facsimile: 212 277 4001
Email: michael.lacovara@freshfields.com

Terry Calvani (53260)
Richard Snyder (*pro hac vice*)
Christine Laciak (*pro hac vice*)
Freshfields Bruckhaus Deringer US LLP
700 13th Street, NW, 10th Floor
Washington, DC 20005
Telephone: 202 777 4500
Email: terry.calvani@freshfields.com
Email: richard.snyder@freshfields.com
Email: christine.laciak@freshfields.com

*Attorneys for Defendant Beijing Matsushita
Color CRT Co., Ltd.*

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917
26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

### <u>CERTIFICATE OF SERVICE</u>

On November 7, 2014, I caused a copy of "DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

*/s/ Lucius B. Lau*
Lucius B. Lau

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
|---|---|

This Document Relates to:

ALL INDIRECT PURCHASER ACTIONS

*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-05513

*Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, Case No. 13-cv-05264

*CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06396

*Costco Wholesale Corp. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06397

*Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-01656

*Electrograph Systems, Inc., et al. v. Technicolor SA, et al.*, Case No. 3:13-cv-05724

*Interbond Corp. of America v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06275

*Interbond Corp. of America v. Technicolor SA, et al.*, Case No. 3:13-cv-05727

*Office Depot, Inc. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06276

*Office Depot, Inc. v. Technicolor SA, et al.*, Case No. 3:13-cv-05726

*P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, Case No. 3:12-cv-02648

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES**

*P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al.*, Case No. 3:13-cv-05725

*Sears, Roebuck & Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, Case No. 3:11-cv-05514

*Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, Case No. 3:13-cv-00157

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

1
2
3

Upon consideration of Defendants' Notice of Motion and Motion for Partial Summary Judgment on Plaintiffs' Indirect Purchaser Claims Based on Foreign Sales, as well as well as any responses and replies thereto, it is hereby:

4

ORDERED that the motion is GRANTED; and it is further

5
6
7
8

ORDERED that all state law claims asserted by plaintiffs in the above-titled actions are hereby dismissed with prejudice to the extent that such claims involve CRT Products or CRTs incorporated in such products that were first sold to a non-conspirator outside the United States.

9
10

**IT IS SO ORDERED.**

11
12
13

Dated: _____

14
15

HONORABLE SAMUEL CONTI
UNITED STATES DISTRICT JUDGE

16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DECLARATION OF DANA E. FOSTER IN OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL DEFENDANTS TO PRODUCE ENGLISH TRANSLATIONS
Case No. 07-5944 SC
MDL No. 1917

Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Consumer Products, LLC, Toshiba America*
*Information Systems, Inc., and Toshiba*
*America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS<br><br>*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-05513<br><br>*Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, Case No. 13-cv-05264<br><br>*CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06396<br><br>*Costco Wholesale Corp. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06397<br><br>*Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-01656 | **DECLARATION OF LUCIUS B. LAU IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES** |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Electrograph Systems, Inc., et al. v. Technicolor SA, et al.*, Case No. 3:13-cv-05724

*Interbond Corp. of America v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06275

*Interbond Corp. of America v. Technicolor SA, et al.*, Case No. 3:13-cv-05727

*Office Depot, Inc. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06276

*Office Depot, Inc. v. Technicolor SA, et al.*, Case No. 3:13-cv-05726

*P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, Case No. 3:12-cv-02648

*P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al.*, Case No. 3:13-cv-05725

*Sears, Roebuck & Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, Case No. 3:11-cv-05514

*Tech Data Corp., et al. V. Hitachi, Ltd., et al.*, Case No. 3:13-cv-00157

DECLARATION OF LUCIUS B. LAU IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944-SC, MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

I, Lucius B. Lau, hereby declare as follows:

1.      I am an attorney with the law firm of White & Case LLP, counsel for Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Consumer Products, LLC, Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc.

2.      I submit this declaration in support of Defendants' Notice of Motion and Motion for Partial Summary Judgment on Plaintiffs' Indirect Purchaser Claims Based on Foreign Sales ("Defendants' Motion"), filed contemporaneously herewith.  Except for those matters stated on information and belief, which I believe to be true, I have personal knowledge of the facts stated herein, and I could and would competently testify thereto if called as a witness.

3.      Attached hereto as **Exhibit A** is a table setting forth the state law claims subject to this motion in each of the relevant actions.

4.      Attached hereto as **Exhibit B** is a true and correct copy of the Expert Report of Janet S. Netz, Ph.D., dated April 15, 2014, and served on behalf of the Indirect Purchaser Plaintiffs.

5.      Attached hereto as **Exhibit C** is a true and correct copy of the Report of Alan S. Frankel, Ph.D., dated April 15, 2014, and served on behalf of Plaintiffs Best Buy Co., Inc., Best Buy Purchasing, LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., BestBuy.com, L.L.C., and Magnolia Hi-Fi, Inc.  On information and belief, Dr. Frankel presents the same type of arguments and analysis with respect to the portions of his report cited in Defendants' Motion in his expert reports served in the CompuCom, Costco, Electrograph, Interbond, Office Depot, P.C. Richard, Sears, Kmart and Tech Data actions.

6.      Attached hereto as **Exhibit D** is a true and correct copy of the Expert Report of Janusz A. Ordover, Ph.D., dated August 5, 2014, and served on behalf of Defendants LG Electronics, Inc., LG Electronics USA, Inc., LG Electronics Taiwan Taipei Co., Ltd., Koninklijke Philips N.V., Philips Electronics North America Corporation, Philips Taiwan Limited, Philips do Brasil Ltda., Hitachi, Ltd. , Hitachi Displays, Ltd. (n/k/a Japan Display Inc.), Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc.,

Toshiba America Electronic Components, Inc., Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba Corporation, Panasonic Corporation (f/k/a Matsushita Electrical Industrial Co.), Panasonic Corporation of North America, MT Picture Display Co., Ltd. ("MTPD"), Technicolor SA (f/k/a Thomson SA), Technicolor USA, Inc. (f/k/a Thomson Consumer Electronics, Inc.), Mitsubishi Electric Corporation, Mitsubishi Electric & Electronics USA, Inc., and Mitsubishi Electric Visual Solutions America, Inc. in the Best Buy actions.  On information and belief, Dr. Ordover presents the same type of arguments and analysis with respect to the portions of his report cited in Defendants' Motion in his expert reports served in the CompuCom, Costco, Electrograph, Interbond, Office Depot, P.C. Richard, Sears, Kmart and Tech Data actions.

7.      Attached hereto as **Exhibit E** is a table setting forth citations regarding the harmonization of the relevant state laws with federal antitrust law.

8.      Attached hereto as **Exhibit F** is a true and correct copy of excerpts from the transcript of the Rule 30(b)(6) deposition of Costco Wholesale Corporation, taken December 7, 2012.

9.      Attached hereto as **Exhibit G** is a true and correct copy of excerpts from the transcripts of the Rule 30(b)(6) deposition of Best Buy Co., Inc., Best Buy Purchasing, LLC, Best Buy Enterprise Service, Inc., Best Buy Stores, L.P., Bestbuy.com, LLC, and Magnolia Hi-Fi, taken on December 3, 2012 and May 22, 2014.

10.     Attached hereto as **Exhibit H** is a true and correct copy of excerpts from the transcript of the deposition of Rebecca Smith, taken August 27, 2014.

11.     Attached hereto as **Exhibit I** is a true and correct copy of excerpts from Plaintiffs Sears, Roebuck and Co. & Kmart Corp.'s Objections and Responses to Defendant Hitachi Displays, Ltd.'s First Set of Requests for Admission, dated August 4, 2014.

12.     Attached hereto as **Exhibit J** is a true and correct copy of Defendants' Joint Notice of Motion and Motion to Dismiss Amended Complaint Under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6), *In re TFT-LCD (Flat Panel) Antitrust Litig.* (N.D. Cal. Feb. 19, 2010), ECF No. 1559 filed on behalf of multiple entities including Sharp Electronics Corporation.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

13.     Attached hereto as **Exhibit K** is a true and correct copy of a letter from Craig A. Benson, counsel for Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc., to counsel for the Defendants, dated October 14, 2014.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of November, 2014, in Washington, D.C.


_____
Lucius B. Lau

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

# Exhibit A

**Table of Remaining State Law Claims Asserted in the Relevant Actions**

| Action | Citation | State Law Claims |
|---|---|---|
| Best Buy | First Am. Compl. ¶¶ 236-49 (N.D. Cal. filed Oct. 3, 2013), ECF No. 1978 | Minnesota |
| CompuCom | First Am. Compl. ¶¶ 226-55 (N.D. Cal. filed Oct. 3, 2013), ECF No. 1975 | California, New York |
| Costco | First Am. Compl. ¶¶ 187-216 (N.D. Cal. filed Oct. 3, 2013), ECF No. 1982 | Arizona, California, Florida, Illinois (Costco's Washington claims have been dismissed, *see* Order at 27:12-28 (N.D. Cal. Aug. 21, 2013), ECF No. 1856) |
| Electrograph | Second Am. Compl. ¶¶ 246-284 (N.D. Cal. filed Oct. 3, 2013), ECF No. 1976 | California, New York |
| Interbond | First Am. Compl. ¶¶ 226-40 (N.D. Cal. filed Oct. 3, 2013), ECF No. 1974 | Florida |
| Office Depot | First Am. Compl. ¶¶ 237-68 (N.D. Cal. filed Oct. 3, 2013), ECF No. 1977 | California, Florida |
| P.C. Richard | P.C. Richard et al. First Am. Compl. ¶¶ 232-48 (N.D. Cal. filed Oct. 3, 2013), ECF No. 1979 | Arizona, Illinois, Michigan, New York |
| Sears and Kmart | Second Am. Compl. ¶¶ 230-65 (N.D. Cal. filed Oct. 3, 2013), ECF No. 1973 | Arizona, California, Florida, Illinois, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, Wisconsin (Sears and Kmart have agreed to dismiss their Massachusetts claims, *see* Stipulation Voluntarily Dismissing Sears and Kmart's Massachusetts Consumer Protection Act Claim (N.D. Cal. Nov. 6, 2014), ECF No. 2962) |
| Tech Data | First Am. Compl. ¶¶ 245-76 (N.D. Cal. filed Sept. 9, 2013), ECF No. 1911 | California, Florida |
| IPPs | Report and Recommendation Regarding Indirect Purchaser Pls.' Mot. for Class Certificated (N.D. Cal. June 20, 2013), ECF No. 1742; Order Adopting Special Master's Reports and Recommendations on Defs.' Mot. to Exclude Expert Test. and Indirect-Purchaser Pls. Mot. for Class Certification (N.D. Cal. Sept. 24, 2013), ECF No. 1950 | Arizona, California, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont,  Washington, D.C., West Virginia, Wisconsin |

# Exhibit B

**Filed Under Seal**

# Exhibit C

**Filed Under Seal**

# Exhibit D

**Filed Under Seal**

# Exhibit E

**Table Regarding Harmonization of Relevant State Laws with Federal Antitrust Law**

| State | Actions | Citation |
|---|---|---|
| Arizona | Costco, P.C. Richard, Sears and Kmart, Indirect Purchaser Plaintiffs | Ariz. Rev. Stat. Ann. § 44-1412 |
| California | CompuCom, Costco, Electrograph, Office Depot, Sears and Kmart, Tech Data, Indirect Purchaser Plaintiffs | *Vinci v. Waste Mgmt., Inc.*, 43 Cal. Rptr. 2d 337, 338 & n.1 (Cal. Ct. App. 1995) (applying federal standing principles to California state law claims because "the California courts look to cases construing the federal antitrust laws for guidance in interpreting the Cartwright Act") |
| District of Columbia | Indirect Purchaser Plaintiffs | D.C. Code § 28-4515 |
| Florida | Costco, Interbond, Office Depot, Sears and Kmart, Tech Data,  Indirect Purchaser Plaintiffs | Fla. Stat. § 501.204 |
| Hawaii | Indirect Purchaser Plaintiffs | Haw. Rev. Stat. § 480-3 |
| Illinois | Costco, P.C. Richard, Sears and Kmart | *O'Regan v. Arbitration Forums, Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1997) ("Federal antitrust standing rules apply under the Illinois Antitrust Act.") |
| Iowa | Indirect Purchaser Plaintiffs | Iowa Code § 553.2 |
| Kansas | Indirect Purchaser Plaintiffs | *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211-12 (D. Kan. 1999) (citing *Bergstram v. Noah*, 974 P.2d 520, 531 (Kan. 1999)) (applying federal standing principles to antitrust claims under Kansas law and granting summary judgment for defendants) |
| Maine | Indirect Purchaser Plaintiffs | *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 149 (1st Cir. 2000) ("'Maine antitrust statutes parallel the Sherman Act,' and thus have analyzed claims thereunder according to the doctrines developed in relation to federal law." (quoting *Tri-State Rubbish, Inc. v. Waste Mgmt., Inc.*, 998 F.2d 1073, 1081 (1st |

| | | |
|---|---|---|
| | | Cir. 1993))) |
| Michigan | P.C. Richard, Sears and Kmart, Indirect Purchaser Plaintiffs | Mich. Comp. Laws § 445.784 |
| Minnesota | Best Buy, Sears and Kmart, Indirect Purchaser Plaintiffs | *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 626, 632 (Minn. 2007) (declining to apply certain federal standing principles even though "Minnesota law is generally interpreted consistently with federal antitrust law," but adding that standing would not exist for plaintiffs who "did not purchase, directly or indirectly, any product or service provided by or manufactured with components from [the defendants]") |
| Mississippi | Sears and Kmart, Indirect Purchaser Plaintiffs | *Futurevision Cable Sys. of Wiggins, Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760, 778-80 (S.D. Miss. 1992) (dismissing Mississippi state law claims because the court concluded that plaintiff failed to allege facts sufficient to prove injury to competition with respect to its Sherman Act claims) |
| Nebraska | Sears and Kmart, Indirect Purchaser Plaintiffs | Neb. Rev. Stat. § 59-829 |
| Nevada | Sears and Kmart, Indirect Purchaser Plaintiffs | Nev. Rev. Stat. § 598A.050 |
| New Mexico | Sears and Kmart, Indirect Purchaser Plaintiffs | N.M. Stat. Ann. §§ 57-1-15, 57-12-4 |
| New York | CompuCom, Electrograph, P.C. Richard, Sears and Kmart, Indirect Purchaser Plaintiffs | *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007) (noting that New York courts "generally construe the Donnelly Act in light of federal antitrust law," unless state policy or differences in statutory language or legislative history justify treating them differently) |

| North Carolina | Sears and Kmart,  Indirect Purchaser Plaintiffs | *Microsoft Corp. v. Computer Support Servs. of Carolina, Inc.*, 123 F. Supp. 2d 945, 950-51, 954-55 (W.D.N.C. 2000) (dismissing federal claims because plaintiff did not have federal antitrust standing due to lack of antitrust injury, and also dismissing claims under North Carolina law because "the North Carolina Supreme Court has described the Sherman Act as 'instructive in determining the full reach' of the statutes") (quoting *Rose v. Vulcan Materials Co.*, 194 S.E.2d 521, 530 (N.C. 1973)) |
|---|---|---|
| North Dakota | Indirect Purchaser Plaintiffs | *Westgo Indus., Inc. v. W. J. King Co.*, No. A3-75-82, 1981 WL 2064, at *6 (D.N.D. Mar. 31, 1981) ("A reading of the statute discloses that it offers no broader protection than [that] offered by the federal antitrust statutes.") |
| South Dakota | Indirect Purchaser Plaintiffs | S.D. Codified Laws § 37-1-22 |
| Tennessee | Indirect Purchaser Plaintiffs | *Spahr v. Leegin Creative Leather Prods., Inc.*, No. 2:07-CV-187, 2008 WL 3914461, at *13-14 (E.D. Tenn. Aug. 20, 2008) (dismissing claim under the Tennessee Trade Practices Act ("TTPA") due to finding "no good reason" why federal precedent should not be followed when "every Tennessee case decided under the TTPA has relied heavily on federal precedent") |
| Vermont | Indirect Purchaser Plaintiffs | Vt. Stat. Ann. tit. 9, § 2453(b) |
| West Virginia | Indirect Purchaser Plaintiffs | W. Va. Code § 47-18-16 |
| Wisconsin | Sears and Kmart | *Strang v. Visa U.S.A., Inc.*, No. 03 CV 011323, 2005 WL 1403769, at *3-5 (Wis. Cir. Feb. 8, 2005) (applying federal standing principles and dismissing antitrust claims under Wisconsin law) |

# Exhibit F

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


IN RE: CATHODE RAY TUBE (CRT) )
ANTITRUST LITIGATION           )
                               )
_____)
                               ) No. 07-5944 SC
                               ) MDL No. 1917
This Document Relates to:      )
                               )
ALL ACTIONS                    )
                               )
_____)

VIDEOTAPED 30(B)(6) DEPOSITION UPON ORAL EXAMINATION

OF

COSTCO WHOLESALE CORPORATION

GEOFFREY SHAVEY


9:04 A.M.

DECEMBER 7, 2012

1209 THIRD AVENUE, SUITE 4800

SEATTLE, WASHINGTON


REPORTED BY: JULIE R. HEAD, CRR, RPR, CCR No. 3119

11:48  1    the cost of -- of the goods that it purchases?

11:48  2              MR. WEISS:  Objection.  Vague.

11:48  3              THE WITNESS:  What do you mean by that?

11:48  4        Q.  (BY MR. EMANUELSON:)  Okay.  Let's start

11:48  5    with -- if -- If a cost of a television were to go up,

11:48  6    how does Costco decide how to price that product?

11:48  7        A.   Well, you mean -- it depends on the percent

11:48  8    increase.  Is it something that -- First of all, is it

11:48  9    something we agree to, is there a basis for it.  Second

11:48 10    of all, is it modest, where it's, you know, one percent

11:48 11    where we can still adhere to our pricing or is it to the

11:48 12    magnitude of where a retail price adjustment is

11:48 13    necessary.  So, again, everything's looked at on a

11:48 14    case-by-case basis.  There's no general rule.

11:48 15        Q.   So, the first thing you say, is it a cost that

11:49 16    we could agree to.  Your -- Are you referring to the

11:49 17    manufacturer tries to sell at a higher price and Costco,

11:49 18    through negotiation, will resist that increase?

11:49 19        A.   Yeah.  I mean, with any negotiation -- or any

11:49 20    conversation with a manufacturer, it's a negotiation.

11:49 21    So, if they're going to come to us with a raised cost,

11:49 22    we'd want to know what are the drivers of that.  I mean,

11:49 23    it's different if you're talking about commodity

11:49 24    products where you can see that the price of cotton is

11:49 25    going up or something like that, but if it's a

11:52  1            You mentioned that one factor of how -- of

11:52  2    whether cost -- of Costco's pricing response would be

11:52  3    the magnitude of the cost increase; is that right?

11:52  4        A.   Yes.

11:52  5        Q.   And can you give -- give me an idea of a

11:52  6    typical magnitude where it would be -- You mentioned one

11:52  7    percent.  I mean, what -- what would the magnitude -- a

11:52  8    higher magnitude be that --

11:52  9            MR. WEISS:  Objection.

11:52 10        Q.   (BY MR. EMANUELSON:)  -- would affect Costco's

11:52 11    decisions?

11:52 12            MR. WEISS:  Objection.  Vague.

11:52 13            MR. GRALEWSKI:  Join.

11:52 14            THE WITNESS:  If you're selling something for

11:52 15    $300 and you're making ten percent and you have a one

11:52 16    percent cost increase and let's say I'm at 299, I'm not

11:52 17    going to go up in price.  If I am making five percent on

11:52 18    an item and the cost increase is six percent, there's a

11:52 19    problem.  I can't sustain that retail price.

11:53 20        Q.   (BY MR. EMANUELSON:)  And what -- what other

11:53 21    factors would affect Costco's ability to -- to increase

11:53 22    prices in response to cost changes, besides the

11:53 23    magnitude of the increase?

11:53 24            MR. GRALEWSKI:  Object to the form.  Lacks

11:53 25    foundation.

11:53   1                THE WITNESS:  Can you state that again?

11:53   2        Q.   (BY MR. EMANUELSON:)  Sure.

11:53   3                You said that -- whether Costco could increase

11:53   4   prices in response to cost changes varies on a

11:53   5   case-by-case basis, right?

11:53   6        A.   Um-hum.

11:53   7        Q.   So, what other factors besides magnitude?

11:53   8                MR. GRALEWSKI:  Object to the form.  Lacks

11:53   9   foundation.

11:53  10                THE WITNESS:  It is -- Is the competition

11:53  11   reflected a price change or are you seeing, you know,

11:53  12   pricing going up in the market?  If competition hasn't

11:53  13   changed price, that's going to limit my flexibility to

11:53  14   change price, also, because the -- again, the premise of

11:53  15   us carrying an item is offering value to our member.

11:53  16   So, you have to look at the market conditions, too,

11:53  17   which your competitors are doing.

11:53  18        Q.   (BY MR. EMANUELSON:)  Is the demand -- Would

11:54  19   the demand for the product also be an element of the

11:54  20   market conditions?

11:54  21        A.   Yeah, I mean, that's -- that's a factor.

11:54  22                MR. EMANUELSON:  So, I'd like to mark a

11:54  23   document.

       24                (Deposition Exhibit 611 was marked for

       25                identification.)

# Exhibit G

**Filed Under Seal**

# Exhibit H

**Filed Under Seal**

# Exhibit I

**Filed Under Seal**

# Exhibit J

| | |
|---|---|
| 1 | Richard S. Taffet (*pro hac vice*) |
| | Kenneth I. Schacter (*pro hac vice*) |
| 2 | Jon R. Roellke (*pro hac vice*) |
| | Colin C. West (SBN 184095) |
| 3 | BINGHAM MCCUTCHEN LLP |
| | Three Embarcadero Center |
| 4 | San Francisco, CA 94111-4067 |
| | (415) 393-2000 (telephone) |
| 5 | (415) 393-2286 (facsimile) |
| | colin.west@bingham.com |
| 6 | |
| | *Attorneys for Defendants* |
| 7 | Sharp Corporation |
| | Sharp Electronics Corporation |
| 8 | |
| | [additional parties and counsel listed in signature block] |
| 9 | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| 13 | IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Case No. M-07-1827-SI |
| 14 | | MDL No. 1827 |
| 15 | This Document Relates To: Case No.:09-5840 SI | **DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND FED. R. CIV. P. 12(b)(6)** |
| 16 | MOTOROLA, INC., | |
| 17 | Plaintiff,  v. | |
| 18 | AU OPTRONICS CORPORATION; AU OPTRONICS CORPORATION AMERICA, INC.; CHI MEI | |
| 19 | CORPORATION; CHI MEI OPTOELECTRONICS CORPORATION; CHI MEI OPTOELECTRONICS | |
| 20 | CORPORATION USA, INC.; CMO JAPAN CO. LTD.; NEXGEN MEDIATECH, INC.; CHUNGHWA PICTURE | Date: May 21, 2010 Time: 9:00 a.m. |
| 21 | TUBES LTD.; TATUNG COMPANY OF AMERICA, INC.; HANNSTAR DISPLAY CORPORATION; LG DISPLAY | Place: Courtroom 10, 19th Floor |
| 22 | CO. LTD.; LG DISPLAY AMERICA, INC.; SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG | Judge: The Hon. Susan Illston |
| 23 | SEMICONDUCTOR, INC.; SAMSUNG ELECTRONICS AMERICA, INC.; SHARP CORPORATION; SHARP | |
| 24 | ELECTRONICS CORPORATION; TOSHIBA CORPORATION; TOSHIBA AMERICA ELECTRONIC | |
| 25 | COMPONENTS, INC.; TOSHIBA MOBILE DISPLAY CO., LTD.; TOSHIBA AMERICA INFORMATION SYSTEMS, | |
| 26 | INC.; EPSON IMAGING DEVICES CORPORATION; EPSON ELECTRONICS AMERICA, INC., | |
| 27 | | |
| 28 | Defendants. | |

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1                        **NOTICE OF MOTION AND MOTION TO DISMISS**

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that on May 21, 2010 at 9:00 a.m. or as soon thereafter as the

4   matter may be heard in Courtroom 10, 19th Floor, San Francisco, California, before the

5   Honorable Susan Illston, the moving defendants listed in the signature block below

6   ("Defendants") will and hereby do move the Court, pursuant to Rules 12(b)(1) and 12(b)(6) of

7   the Federal Rules of Civil Procedure, for an Order dismissing the Complaint filed by Motorola,

8   Inc. ("Motorola") to the extent it asserts: (a) claims based on alleged foreign injuries; (b) state

9   law claims insufficient to satisfy the United States Constitution's Due Process Clause; and (c)

10   claims based on insufficient allegations that the alleged conspiracy encompassed technology

11   other than thin-film transistor ("TFT") technology.

12          This motion is based upon this Notice and Motion, the Statement of the Issues, the

13   accompanying Memorandum of Points and Authorities, argument of counsel, and such other

14   matters as the Court may consider.

15                       **STATEMENT OF THE ISSUES**

16         1.      Whether Motorola's federal and state law claims based on alleged foreign injuries

17   should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

18   Procedure because the Complaint fails to allege facts sufficient to establish subject matter

19   jurisdiction or state a claim upon which relief can be granted with respect to such claims under

20   the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a.

21         2.      Whether Motorola's state law claims should be dismissed pursuant to Rules

22   12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure because Motorola has failed to

23   allege contacts with the states whose laws it seeks to invoke sufficient to satisfy the United States

24   Constitution's Due Process Clause.

25         3.      Whether Motorola's claim that the alleged conspiracy encompassed non-TFT

26   technology should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil

27   Procedure because the Complaint fails to allege a plausible basis for relief on that claim under

28   Rule 8 of the Federal Rules of Civil Procedure.

1

2                    <u>**TABLE OF CONTENTS**</u>

3                                                                      <u>Page</u>

4  SUMMARY OF ARGUMENT ...................................................................... 1

5  THE ALLEGED FOREIGN INJURIES...................................................... 4

6  ARGUMENT ........................................................................................... 6

7      I.    THE COURT LACKS SUBJECT MATTER JURISDICTION OVER
             MOTOROLA'S FOREIGN INJURY CLAIMS. .................................... 6
8
9            A.    The FTAIA's General Rule Barring Foreign Injury Claims Applies
                   To Motorola's Complaint.......................................................... 7

10           B.    Motorola Must Plead Facts Sufficient To Show That Domestic
11                 Effects Proximately Caused The Alleged Foreign Injuries...................... 9

12           C.    The Alleged Foreign Injuries Were Not Proximately Caused By
                   The Domestic Effects Of The Alleged Conspiracy................................. 12

13           D.    Motorola's State Law Claims Based On Foreign Injuries Also Are
14                 Barred. ........................................................................... 15

15     II.   MOTOROLA'S STATE LAW CLAIMS SHOULD BE DISMISSED
             FOR FAILURE TO ALLEGE SUFFICIENT CONTACTS WITH
16           RELEVANT STATES. ........................................................................ 18

17     III.  MOTOROLA'S COMPLAINT FAILS TO ALLEGE ANY FACTS IN
             SUPPORT OF ITS EXPANDED NON-TFT CONSPIRACY CLAIM. ............. 22

18  CONCLUSION ........................................................................... 25

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allstate Ins. Co. v. Hague*,
449 U.S. 302 (1981) ........................................................................................................ 18, 19

*Amarel v. Connell*,
202 Cal. App. 3d 137 (1988) ................................................................................................. 17

*Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*,
2008 U.S. Dist. LEXIS 107311 (D.N.J. Dec. 30, 2008) .......................................................... 9

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ............................................................................................... 22, 23, 25

*Bassidji v. Goe*,
413 F.3d 928 (9th Cir. 2005) ................................................................................................. 13

*Basso v. Utah Power & Light Co.*,
495 F.2d 906, 909 (10th Cir. 1974) ........................................................................................ 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................ 25

*Bergstram v. Noah*,
974 P. 2d 520 (Kan. 1999) ..................................................................................................... 18

*Bowman v. Chicago & N.W. Ry. Co.*,
125 U.S. 465 (1888) ................................................................................................................ 16

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) .................................................................................................... 24

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ................................................................................................................ 21

*Buttfield v. Stanahan*,
192 U.S. 470 (1904) ................................................................................................................ 16

*CSR Ltd. v. CIGNA Corp.*,
405 F. Supp. 2d 526 (D.N.J. 2005) ................................................................................... 8, 18

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ................................................................................................................ 16

*Dee-K Entrs., Inc. v. Heveafil Snd. Bhd.*,
299 F.3d 281 (4th Cir. 2002) ................................................................................................... 7

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

*Den Norske Stats Oljeselskap AS v. HeereMac Vof,*
  241 F.3d 420 (5th Cir. 2001) ................................................................................. 10

*eMag Solutions LLC v. Toda Kogyo Corp.,*
  2005 WL 1712084 (N.D. Cal. July 20, 2005) .......................................................... 8

*Emerson Elec. Co. v. LeCarbone Lorraine, S.A.,*
  500 F. Supp. 2d 437 (D.N.J. 2007) ............................................................... passim

*Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.,*
  417 F.3d 1267 (D.C. Cir. 2005) ................................................................... passim

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.,*
  542 U.S. 155 (2004) ................................................................................... passim

*Ford Motor Co. v. Lyons,*
  405 N.W.2d 354 (Wis. Ct. App. 1987) ................................................................. 18

*Galavan Supplements, Ltd. v. Archer Daniels Midland Co.,*
  1997 WL 732498 (N.D. Cal. Nov. 19, 1997) ........................................................ 15

*Georgine v. Amchem Prods.,*
  83 F.3d 610 (3d Cir. 1996) ................................................................................. 20

*Gerling Global Reinsurance Corp. of Am. v. Quackenbush,*
  2000 WL 777978 (E.D. Cal. June 9, 2000) ........................................................... 16

*Health Prof'ls, Ltd. v. Johnson,*
  791 N.E.2d 1179 (Ill. App. Ct. 2003) ................................................................. 17

*Herrera v. Michelin N. Am., Inc.,*
  2009 U.S. Dist. LEXIS 21022 (S.D. Tex. Mar. 16, 2009) ..................................... 21

*Hines v. Davidowitz,*
  312 U.S. 52 (1994) .............................................................................................. 16

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
  2006 WL 515629 (N.D. Cal. Mar. 1, 2006) .......................................................... 15

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
  546 F.3d 981 (9th Cir. 2008) ....................................................................... passim

*In re Graphics Processing Units Antitrust Litig.,*
  527 F. Supp. 2d 1011 (N.D. Cal. 2007) .......................................................... 19, 21

*In re Intel Corp. Microprocessor Antitrust Litig.,*
  452 F. Supp. 2d 555 (D. Del. 2006) .................................................................. 8, 15

*In re Intel Corp. Microprocessor Antitrust Litig.,*
  476 F. Supp. 2d 452 (D. Del. 2007) .................................................................. 9, 16

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

*In re Monosodium Glutamate Antitrust Litig.*,
2005 WL 2810682 (D. Minn. Oct. 26, 2005) ....................................................... 12

*In re Monosodium Glutamate Antitrust Litig.*,
477 F.3d 535 (8th Cir. 2007) ............................................................................. 10

*In re Nat'l Mortgage Equity Corp. Mortgage Pool Certs. Sec. Litig.*,
636 F. Supp. 1138 (C.D. Cal. 1986) .................................................................... 14

*In re Relafen Antitrust Litig.*,
221 F.R.D. 260 (D. Mass. 2004) ................................................................. 19, 22

*In re Rubber Chems. Antitrust Litig.*,
504 F. Supp. 2d 777 (N.D. Cal. 2007) .......................................................... passim

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2008 WL 2219837 (N.D. Cal. May 27, 2008) ...................................................... 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
599 F. Supp. 2d 1179 (N.D. Cal. 2009) ............................................................... 24

*Japan Line, Ltd. v. County of L.A.*,
441 U.S. 434 (1979) .................................................................................... 15, 16

*Keating v. Philip Morris, Inc.*,
417 N.W.2d 132 (Minn. Ct. App. 1987) ............................................................. 18

*Kendall v. Visa U.S.A. Inc.*,
518 F.3d 1042 (9th Cir. 2008) ......................................................................... 22

*Knott v. McDonald's Corp.*,
147 F.3d 1065 (9th Cir. 1998) ......................................................................... 13

*Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.*,
2005 WL 2207017 (S.D.N.Y. Sept. 8, 2005) ...................................................... 11

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ............................................................................. 19

*Metro Indus., Inc. v. Sammi Corp.*,
82 F.3d 839 (9th Cir. 1996) ............................................................................. 17

*Nat'l Foreign Trade Council v. Natsios*,
181 F.3d 38 (1st Cir. 1999) ............................................................................. 16

*Orr v. Beamon*,
77 F. Supp. 2d 1208 (D. Kan. 1999) .................................................................. 18

*Padilla v. Yoo*,
633 F. Supp. 2d 1005 (N.D. Cal. 2009) .............................................................. 25

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

*Papst Motoren GmbH v. Kanematsu-Goshu, Inc.*,
    629 F. Supp. 864 (S.D.N.Y. 1986) ........................................................................ 9

*Pecover v. Elecs. Arts Inc.*,
    633 F. Supp. 2d 976 (N.D. Cal. 2009) ................................................................. 19

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................. 18, 20, 21

*Rose v. Vulcan Materials Co.*,
    194 S.E. 2d 521 (N.C. 1973) ............................................................................. 18

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ........................................................................... 15

*Silvers v. Sony Pictures Entm't, Inc.*,
    402 F.3d 881 (9th Cir. 2005) ....................................................................... 14, 20

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................................. 12

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
    2007 WL 1056783 (N.D. Cal. Apr. 5, 2007) ....................................................... 6

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
    534 F. Supp. 2d 1101 (N.D. Cal. 2007) ......................................................... 6, 10

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
    608 F. Supp. 2d 1166 (N.D. Cal. 2009) ..................................................... passim

*Tennessee et rel. Leech v. Levi Strauss & Co.*,
    1980 WL 4946 (Tenn. Ch. Ct. Sept. 25, 1980) .................................................. 18

*The 'In' Porters, S.A. v. Hanes Printables, Inc.*,
    663 F. Supp. 494 (M.D.N.C. 1987) .................................................................... 18

*Tidenberg v. Bidz.com, Inc.*,
    2009 U.S. Dist. LEXIS 21916 (C.D. Cal. Mar. 4, 2009) ..................................... 21

*Tidwell v. Thor Indus.*,
    2007 U.S. Dist. LEXIS 21819 (S.D. Cal. Mar. 26, 2007) .................................... 19

*Tosco Corp. v. Cmtys. for a Better Env't*,
    236 F.3d 495 (9th Cir. 2001) .............................................................................. 6

*Turicentro, S.A. v. Am. Airlines Inc.*,
    303 F.3d 293 (3d Cir. 2002) ............................................................................... 8

*U.S. v. LSL Biotechnologies*,
    379 F.3d 672 (9th Cir. 2004) ............................................................................... 6

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

*United Phosphorus Ltd. v. Angus Chem. Co.,*
    131 F. Supp. 2d 1003 (N.D. Ill. 2001) ................................................................. 9

*Vinci v. Waste Mgmt., Inc.,*
    43 Cal. Rptr. 2d 337 (Cal. Ct. App. 1995) ......................................................... 17

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) ............................................................................ 19

**STATUTES**

15 U.S.C. § 1 ............................................................................................................. 1

15 U.S.C. § 6a ..................................................................................................... 1, 10

ARIZ. REV. STAT. ANN. § 44-1412 (2008) ............................................................... 18

D.C. CODE § 28-4515 (2008) ................................................................................... 18

740 ILL. COMP. STAT. 10. ........................................................................................ 17

IOWA CODE § 553.2 (2008) ..................................................................................... 18

NEV. REV. STAT. § 598A.050 (2008) ....................................................................... 18

N.M. STAT. § 57-1-15 (2008) .................................................................................. 18

**OTHER AUTHORITIES**

Fed.R.Civ.P. 12(b)(1) ...................................................................................... passim

Fed.R.Civ.P. 12(b)(6) ...................................................................................... passim

Fed.R.Civ.P. 8 .............................................................................................. 7, 25

Restatement (Third) Foreign Relations Law, § 403 ................................................ 17

U.S. CONST. art. I, § 8, cl. 3 .................................................................................... 15

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1                    **MEMORANDUM OF POINTS AND AUTHORITIES**

2                          **SUMMARY OF ARGUMENT**

3        Motorola's Amended Complaint ("Complaint") is flawed and should be dismissed to the

4 extent it asserts: (a) federal and state law claims based on alleged foreign injuries over which

5 this Court lacks subject matter jurisdiction; (b) state law claims that fail to allege contacts with

6 the particular states sufficient to meet the standards of Due Process; and (c) claims based on

7 insufficient allegations that the alleged conspiracy encompassed technology other than thin film

8 transistor ("TFT") technology.[1]

9        *First*, this Court lacks subject matter jurisdiction under the Foreign Trade Antitrust

10 Improvements Act ("FTAIA"), 15 U.S.C. § 6a, over claims based on the foreign injuries alleged

11 in the Complaint. Specifically, the Complaint alleges injuries arising not only from Motorola's

12 own purchases of liquid crystal display panels ("LCD Panels") in the United States but also from

13 purchases abroad, including: (a) Motorola's own foreign purchases; (b) all purchases by

14 Motorola's foreign affiliates (on whose behalf Motorola purports to sue as an assignee),

15 including its affiliates based in China and Singapore; and (c) foreign purchases by certain

16 unspecified "others," which appears to refer to foreign non-party entities who purchased LCD

17 Panels abroad for use in finished products subsequently sold to Motorola and its foreign

18 affiliates. Properly analyzed as separate and distinct from any claims based on transactions in

19 the United States, such foreign injury claims are beyond the reach of the Sherman Act and barred

20 as a matter of law under the FTAIA.

21        Motorola tries to avoid this necessary conclusion by invoking the FTAIA's "domestic

22 injury exception," which requires allegations sufficient to establish that the conspiracy's effects

23 in the United States "gave rise to" (or "proximately caused") the foreign injuries for which

24 Motorola seeks relief. The Complaint, however, fails to plead such facts and, instead, repeats the

25 _____

26 [1]       This motion is limited to grounds for dismissal not previously considered by this Court in
these MDL proceedings. Moreover, it does not seek the dismissal of Motorola's entire

27 Complaint, but only those claims over which this Court lacks subject matter jurisdiction as a
matter of law or for which insufficient facts are pled.

28

1  same conclusory allegations that this and other courts have uniformly rejected as insufficient to

2  establish subject matter jurisdiction under the FTAIA.

3      The Complaint, for example, alleges a "global market" for LCD Panels and a "worldwide

4  conspiracy" that, according to Motorola, impacted prices both here and abroad.  But settled

5  precedent holds that such allegations do not meet the FTAIA's proximate cause requirement as a

6  matter of law, even when coupled with further allegations that domestic and foreign markets are

7  interrelated or that prices paid abroad were established pursuant to a single fixed global price.

8  *See*, *e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 989-90

9  (9th Cir. 2008) ("*DRAM*") (an alleged "direct correlation between the U.S. price and the prices

10  abroad" is insufficient to establish FTAIA exception); *Empagran S.A. v. F. Hoffmann-LaRoche,*

11  *Ltd.*, 417 F.3d 1267, 1271 (D.C. Cir. 2005) ("*Empagran II*") (global conspiracy allegations

12  insufficient to establish that increased U.S. prices "give rise" to foreign injury claim);  *In re*

13  *Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 786 (N.D. Cal. 2007) ("*Rubber*

14  *Chemicals*") (allegations of "inextricably linked" global prices insufficient to establish that

15  domestic effects "give rise" to Plaintiffs' foreign injuries).

16      Similarly deficient are Motorola's allegations that its foreign affiliates and other non-

17  party entities abroad paid LCD Panel prices negotiated by Motorola's "supply chain

18  organization" allegedly based in the United States and responsible for Motorola's "worldwide

19  purchasing processes."  Virtually identical allegations of a "global procurement strategy" and

20  "integrated purchasing operations" have "already been discredited" and do not support "a viable

21  legal theory" on which to establish the causal nexus required under the FTAIA.  *Sun*

22  *Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1186 (N.D. Cal. 2009)

23  ("*Sun III*") (citing *DRAM*); *see also Emerson Elec. Co. v. LeCarbone Lorraine, S.A.*, 500 F.

24  Supp. 2d 437, 446 (D.N.J. 2007) ("*Emerson Electric*") ("integrated purchasing operations" are

25  "merely a complex description" of a causation theory that courts have uniformly rejected).

26      These legal principles apply equally to Motorola's state law claims based on foreign

27  injuries.  The Commerce and Supremacy Clauses require that state antitrust laws be construed in

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    accord with the FTAIA's jurisdictional limitations.  Principles of prescriptive comity likewise

2    require that state laws be so construed to respect the sovereign authority of foreign nations to

3    regulate their commercial affairs.  The state laws of California (upon which Motorola principally

4    relies) and Illinois (upon which Motorola seeks to rely "in the alternative"), as well as other state

5    laws alleged in the Complaint (upon which Motorola seeks to rely in the "further alternative"),

6    also require that they be interpreted consistently with federal antitrust law.  Accordingly, the

7    Court should dismiss for lack of subject matter jurisdiction the Complaint's federal and state law

8    claims based directly or indirectly on purchases of LCD Panels abroad.

9         *Second*, all of Motorola's state law claims should be dismissed because the Complaint

10   does not allege contacts between the respective states and either the alleged purchases or the

11   parties sufficient to satisfy Due Process.  Indeed, the Complaint fails even to identify any state in

12   which Motorola, its foreign affiliates or the unspecified "others" alleged in the Complaint

13   purchased LCD Panels, which is the single most important factor in a price fixing case in

14   assessing whether a plaintiff has alleged contacts sufficient to meet Due Process standards.  Nor

15   does Motorola explain why or under what circumstances the Court would apply Illinois law "in

16   the alternative" to California law, or the laws of other states in the "further alternative" to *any* of

17   the claims alleged in the Complaint, much less the claims that Motorola purports to assert on

18   behalf of foreign affiliates based in China or Singapore who purchased panels abroad from

19   Defendants based in Korea, Taiwan, or Japan.

20        *Third*, Motorola's Complaint should be dismissed to the extent it seeks to expand the

21   scope of the alleged conspiracy to encompass non-TFT display technologies.  Motorola alleges

22   no facts at all to support the assertion that Defendants conspired to fix prices for not only TFT-

23   LCD panels but also color and monochrome super-twist nematic panels.  Instead, Motorola's

24   Complaint relies verbatim on precisely the same factual allegations as the amended class

25   complaints and the guilty pleas resulting from the government's criminal investigation, all of

26   which describe conduct involving only TFT-LCD panels.  Nothing in Motorola's Complaint

27   provides any plausible basis to support any alleged conspiracy beyond that technology.

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1          **THE ALLEGED FOREIGN INJURIES**

2          Motorola purports to bring this action on behalf of itself and as an assignee of its foreign

3    affiliates, "including Motorola Asia Limited, Motorola (China) Investment Limited, Hangzhou

4    Motorola Cellular Equipment Co. Ltd., Motorola (China) Electronics Limited, Motorola

5    Electronics Pte. Ltd., [and] Motorola Trading Center Pte. Ltd."  Amended Complaint for

6    Damages and Injunctive Relief ("Compl.") ¶¶ 1, 24.  Although the Complaint's substantive

7    allegations refer only to "Motorola," each such reference actually includes Motorola, Inc. and all

8    of the foreign affiliates on whose behalf it purports to sue.  Compl. ¶ 1.

9          The Complaint alleges a global conspiracy by suppliers of LCD Panels used in mobile

10   wireless handsets, two-way radios, computer monitors, televisions and other electronic products.

11   Compl. ¶ 1.  It asserts that Defendants "collectively controlled the market for LCD Panels, both

12   globally and in the United States," largely as the result of foreign conduct that allegedly caused

13   injury abroad.  *See* Compl. ¶ 64; Compl. ¶¶ 81, 85 (alleging foreign Defendants participated in

14   "'Crystal Meetings' [that] occurred in Taiwan," and other purported acts in furtherance of the

15   alleged conspiracy in Japan, Taiwan and South Korea); Compl. ¶¶ 2, 10 (alleging foreign

16   Defendants sold LCD Panels "to Motorola in the United States and around the world"); Compl.

17   ¶¶ 2, 24, 27 (alleging that the "global conspiracy" impacted "global prices" and that Motorola's

18   foreign affiliates "suffered injury as a result of defendants' antitrust violations").

19         Attempting to invoke jurisdiction under the FTAIA for its foreign injury claims,

20   Motorola alleges that Defendants' conduct "involved U.S. import trade or commerce and/or were

21   within the flow of, were intended to, and did have a direct, substantial, and reasonably

22   foreseeable effect on U.S. domestic and import trade or commerce."  Compl. ¶ 15.  It alleges that

23   "[i]n particular, defendants' and their co-conspirators' conspiracy directly and substantially

24   affected the price of LCD Panels and products which contained LCD Panels ('LCD

25   Products') purchased in the United States."  *Id.*  And it asserts that "[t]hese effects give rise

26   to Motorola's antitrust claims."  *Id.*; *see also* Compl. ¶ 166 (asserting that the injuries alleged

27   in the Complaint were a "proximate and reasonably foreseeable result of defendants' conspiracy

28   to fix the price of LCD Panels.").

1   Beyond these legal conclusions, Motorola does not allege any facts to show that the

2   conspiracy's averred effects in the United States "gave rise" to, or proximately caused, the

3   alleged foreign injuries.  *See, e.g.*, Compl. ¶¶ 2, 3, 10, 15, 27, and 166.  The Complaint, instead,

4   claims only that Motorola, from its Illinois headquarters, "directed and approved the prices and

5   quantities of LCD Panels purchased throughout the world and incorporated into Motorola

6   wireless devices and two-way radios."  Compl. ¶ 25.  According to the Complaint, Motorola

7   accomplished this via a "supply chain organization" that oversaw both "domestic and worldwide

8   purchasing" by its foreign affiliates and certain other non-party, unnamed "original design

9   manufacturers" ("ODMs") and "electronic manufacturing services" ("EMS") providers "who

10   assembled mobile devices for delivery to Motorola."  Compl. ¶¶ 25-26.  The Complaint,

11   however, does not allege any facts about how any claimed injury suffered by Motorola, its

12   foreign affiliates or any alleged non-party ODMs or EMS providers in connection with

13   transactions abroad arose, even theoretically, from the conspiracy's alleged effects in the United

14   States.

15   Motorola also alleges that its foreign affiliates who allegedly suffered injury abroad

16   "assigned to Motorola, Inc., all of [their] rights, title, and interest in and to all claims, demands,

17   and causes of action arising out of or relating to the conduct and transactions that are the subject

18   of this action."  Compl. ¶ 24.  But other than the purported assignment and a general description

19   of the affiliates as "subsidiaries," the Complaint does not allege any facts about Motorola's

20   relationship with its foreign affiliates, much less any facts about any transactions through which

21   those foreign affiliates obtained LCD Panels abroad and allegedly suffered injury as a result.

22   Nor does it allege any facts indicating any connection between any of Motorola's foreign

23   affiliates (or the claims they purportedly assigned to Motorola), or any non-party ODMs or EMS

24   providers, and any state whose laws Motorola invokes directly, "in the alternative," or "in the

25   further alternative."

26

27

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1  **ARGUMENT**

2  I.  **THE COURT LACKS SUBJECT MATTER JURISDICTION OVER**

3  **MOTOROLA'S FOREIGN INJURY CLAIMS.**

4  Whether the FTAIA bars Motorola's foreign injury claims is a question of subject matter

5  jurisdiction under Rule 12(b)(1).  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2008 WL

6  2219837, at *1 (N.D. Cal. May 27, 2008) (Court lacks subject matter jurisdiction under the

7  FTAIA to enjoin a Japanese joint venture).[2]  Thus, the Complaint must plead "affirmatively and

8  distinctly, the existence of whatever is essential" to meet the FTAIA's jurisdictional

9  requirements, *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), and

10  its failure to do so requires dismissal as a matter of law.[3]

11  The Complaint here does not meet this burden.  Instead, it affirmatively pleads its foreign

12  injury claims straight into the FTAIA's jurisdictional bar.  The Court, therefore, should enter an

13  order dismissing: (a) Motorola's own claims based on foreign transactions; (b) claims Motorola

14  purports to assert on behalf of its foreign affiliates; and (c) any claims based on foreign

15  transactions with any of the unidentified non-party ODMs and EMS providers referred to in the

16  Complaint (*i.e.*, where the non-party ODMs and EMS providers purchased LCD Panels

17  in foreign commerce).[4]

18  _____

19  [2]  *See also U.S. v. LSL Biotechnologies,* 379 F.3d 672, 677 (9th Cir. 2004) (evaluating foreign injury claims as a question of subject matter jurisdiction under the FTAIA); *Empagran*

20  *II,* 417 F.3d at 1268-69 (same); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 534 F. Supp. 2d 1101 (N.D. Cal. 2007) ("*Sun II*") (same).

21  [3]  Indeed, Courts routinely dismiss claims at the pleading stage under Rule 12(b)(1) where

22  the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. *See, e.g., DRAM*, 546 F.3d at 984-85, 990-91 (affirming dismissal and denial of leave to amend

23  where the "complaint, considered in its entirety, on its face fails to allege facts sufficient" to overcome the FTAIA's jurisdictional bar); *Rubber Chemicals*, 504 F. Supp. at 781-787

24  (dismissing complaint under the FTAIA without leave to amend at the pleading stage).

25  [4]  Dismissal of Motorola's foreign injury claims is also warranted for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

26  *See DRAM*, 546 F.3d at 985 n.3 (affirming dismissal under FTAIA where the "result and analysis are the same" whether the statute is viewed as jurisdictional under Rule 12(b)(1) or establishing

27  an element of the claim under Rule 12(b)(6)); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 2007 WL 1056783, at *4 (N.D. Cal. Apr. 5, 2007) ("*Sun I*") (dismissing complaint under

28  (Footnote Continued on Next Page.)

6

1    A.    **The FTAIA's General Rule Barring Foreign Injury Claims Applies To**

2    **Motorola's Complaint.**

3    The FTAIA "lays down a general rule placing *all* (nonimport) activity involving foreign

4    commerce outside the Sherman Act's reach."  *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542

5    U.S. 155, 162 (2004) ("*Empagran I*") (emphasis in original).  "It then brings such conduct back

6    within the Sherman Act's reach *provided that* the conduct *both* (1) sufficiently affects American

7    commerce, *i.e.*, it has a 'direct, substantial, and reasonably foreseeable effect' on American

8    domestic, import, or (certain) export commerce, *and* (2) has an effect of a kind that antitrust law

9    considers harmful, *i.e.,* the 'effect' must 'giv[e] rise to a [Sherman Act] claim.'"  *Id.* (emphasis in

10   original).  This narrow, two-pronged exception to the FTAIA's general bar of foreign injury

11   claims is known as the statute's "domestic injury" exception.  *DRAM*, 546 F.3d at 985.  Here, the

12   FTAIA's general rule applies and Motorola fails to plead facts sufficient to establish the statute's

13   domestic injury exception.

14   *First*, Motorola's claims are "in significant part foreign" and, therefore, are subject to the

15   FTAIA's general rule barring foreign injury claims.  *Empagran I*, 542 U.S. at 158.  Specifically,

16   Motorola asserts claims on behalf of itself and its foreign affiliates based on an alleged global

17   conspiracy that supposedly "controlled the market for LCD Panels," both in the United States

18   and in foreign countries.  Compl. ¶¶ 2, 24, 64.  And it expressly seeks recovery for foreign

19   transactions, claiming that its foreign affiliates "suffered injury as a result of the defendants'

20   antitrust violations."  Compl. ¶ 24; *see also* Compl. ¶ 27 (the alleged conspiracy "was the

21   proximate cause of Motorola and its affiliates paying artificially-elevated prices for LCD Panels

22   delivered throughout the United States and around the world.").  Because the Complaint

23   unambiguously seeks to recover for alleged foreign injuries caused by alleged foreign conduct,

24   the FTAIA's general exclusion of foreign injury claims applies.  *See Dee-K Entrs., Inc. v.*

25   _____

26   (Footnote Continued from Previous Page.)

27   Rule 8 because it failed to allege facts sufficient "to provide fair notice of the entire basis – *i.e.*, foreign harm versus domestic harm – for the plaintiffs' claims" under the FTAIA).

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1   *Heveafil Snd. Bhd.*, 299 F.3d 281, 287 (4th Cir. 2002) (FTAIA applies to allegations of "a largely

2   foreign conspiracy with some domestic elements, aimed at a global market").

3        *Second,* Motorola's allegations of domestic injuries do not spare from dismissal under the

4   FTAIA its claims based on foreign injuries.  Where both foreign and domestic injury claims are

5   alleged, the foreign injury claims are analyzed separately for jurisdictional purposes.  *See, e.g.,*

6   *Sun III*, 608 F. Supp. 2d at 1184 (analyzing foreign injury claims separately from plaintiffs'

7   domestic injury claims); *Rubber Chemicals*, 504 F. Supp. 2d at 781-84 (FTAIA does not "extend

8   jurisdiction over foreign injury independent of domestic effects merely because the same

9   plaintiff is also able to allege domestic injury caused by the same anticompetitive conduct."); *In*

10  *re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 562 (D. Del. 2006)

11  (retaining domestic injury claims and dismissing foreign injury claims); *CSR Ltd. v. CIGNA*

12  *Corp.*, 405 F. Supp. 2d 526, 549, 551-52 (D.N.J. 2005) (same); *eMag Solutions LLC v. Toda*

13  *Kogyo Corp.*, 2005 WL 1712084 (N.D. Cal. July 20, 2005) (same).

14       *Third*, and similarly, Motorola's foreign injury claims must also be analyzed separately

15  from any claims based on conduct allegedly involving "import trade or import commerce."

16  Although the Complaint alleges that some Defendants engage in some import commerce with

17  respect to LCD Panels or LCD Products (*see, e.g.*, Compl. ¶ 137), such allegations do not confer

18  jurisdiction over claims based on Defendants' *nonimport* activity in foreign commerce.  *See*

19  *Empagran I*, 542 U.S. at 162 (the FTAIA excludes from the scope of the Sherman Act "*all*

20  (nonimport) activity involving foreign commerce") (emphasis in original).  For that reason, the

21  FTAIA's exclusion for "import trade or import commerce" is inapplicable for purposes of this

22  motion and does not salvage Motorola's claims based on transactions abroad.[5]

23  _____

24  [5]      Alleged purchases of LCD Panels from defendants abroad do not become "import
25  commerce" under the FTAIA merely because *Motorola*, one of its affiliates, or any non-party
    ODMs or EMS providers subsequently brought such products into the United States.  *See*
26  *Turicentro, S.A. v. Am. Airlines Inc.*, 303 F.3d 293, 303 (3d Cir. 2002) ("dispositive inquiry is
    whether the conduct of defendants, not plaintiffs, involves 'import trade or commerce'" and fact
27  that entities other than defendants may have subsequently imported product into the United
    States is immaterial).

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

**B.**   **Motorola Must Plead Facts Sufficient To Show That Domestic Effects Proximately Caused The Alleged Foreign Injuries.**

Because the FTAIA's general rule barring foreign injury claims applies, Motorola must allege facts sufficient to establish that its claims based on foreign commerce meet both prongs of the FTAIA's "domestic injury" exception.

The first prong of the "domestic injury exception" requires Motorola to identify a "direct, substantial, and reasonably foreseeable" domestic effect of Defendants' alleged foreign conspiracy.  The only potential domestic effect alleged in the Complaint is higher prices for LCD Panels the Defendants shipped directly into the United States.  *See, e.g.,* Compl. ¶ 154.  Although Motorola asserts that the alleged conspiracy also elevated prices in the United States for "LCD Products" (*i.e.*, finished products containing LCD Panels as components) or for panels shipped into the United States by entities other than the Defendants (Compl. ¶¶ 15, 132-33, 135-37), any such domestic effects "would not be 'direct,' much less 'substantial' and 'reasonably foreseeable.'"  *United Phosphorus Ltd. v. Angus Chem. Co.,* 131 F. Supp. 2d 1003, 1013-14 (N.D. Ill. 2001) ("[t]he FTAIA explicitly bars antitrust actions alleging restraints in foreign markets for inputs … that are used abroad to manufacture downstream products … that may later be imported into the United States"); *see also, Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 2008 U.S. Dist. LEXIS 107311, at *48 (D.N.J. Dec. 30, 2008) (alleged domestic effects are not sufficiently direct with respect to products brought into and sold in the United States by persons *other than defendants*); *Papst Motoren GmbH v. Kanematsu-Goshu, Inc.*, 629 F. Supp. 864, 869 (S.D.N.Y. 1986); *In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 456-57 (D. Del. 2007).

The Court, however, need not address whether *any* of the domestic effects alleged in the Complaint were sufficiently "direct," "substantial" or "reasonably foreseeable" under the first prong of the domestic injury exception because Motorola fails to plead facts sufficient to show —under the second prong of the exception—that any such domestic effects "gave rise to" the alleged foreign injuries.

1    Following the Supreme Court's decision in *Empagran I*, federal courts (including the

2    Ninth Circuit) have uniformly held that "the 'gives rise to' language of §6a … requires a plaintiff

3    to establish a direct or proximate causal relationship" between the alleged anticompetitive effects

4    in the United States and the plaintiff's alleged foreign injury. *DRAM*, 546 F.3d at 987 (relying

5    on *Empagran II*, 417 F.3d at 1271); *see also In re Monosodium Glutamate Antitrust Litig.*, 477

6    F.3d 535, 539 (8th Cir. 2007) ("a causation standard less than that of proximate cause would

7    effectively expand the Sherman Act's scope beyond that contemplated by the FTAIA").[6]

8    This "direct or proximate" cause requirement is not satisfied by allegations showing a

9    mere "but for" nexus. *DRAM*, 546 F.3d at 987. It is not, therefore, enough to allege that U.S.

10   and foreign prices are higher for the same reason or that "higher prices abroad were triggered as

11   a result of higher prices in the U.S." *Sun II*, 534 F. Supp. 2d at 1114 (citing *Empagran I*); *see*

12   *also Den Norske Stats Oljeselskap AS v. HeereMac Vof*, 241 F.3d 420, 427 (5th Cir. 2001)

13   (worldwide conspiracy allegations are insufficient to meet plaintiff's "burden of alleging that its

14   injury arose from the conspiracy's proscribed effects on United States commerce").

15   The plaintiffs in both *DRAM* and *Empagran II*, for example, attempted to rescue their

16   foreign injury claims based on allegations of a global conspiracy to set supra-competitive prices

17   both domestically and abroad. In both cases, the plaintiffs alleged that defendants could not have

18   accomplished their price fixing overseas unless they also fixed prices in the U.S. These

19   allegations were rejected as insufficient to establish proximate cause. *See DRAM*, 546 F.3d at

20   988 (plaintiff's "but for" causation theory that "[t]he United States prices were the source of, and

21   substantially affected the worldwide DRAM prices" insufficient to establish jurisdiction under

22   the FTAIA); *Empagran II*, 417 F.3d at 1270 (rejecting plaintiffs' arbitrage theory that defendants

23   "were able to sustain super-competitive prices abroad only by maintaining super-competitive

---

25   [6]    This "proximate cause standard is consistent with principles of comity—'the respect
26   sovereign nations afford each other by limiting the reach of their laws.'" *DRAM*, 546 F.3d at 987
     (quoting *Empagran II*). "To interpret the FTAIA broadly as requiring only 'but for' causation
27   would risk the very sort of interference [with the sovereign authority of other nations] that we
     ordinarily seek to avoid." *Id.* (citing *Empagran I*).

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1     prices in the United States"); *Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.,* 2005 WL

2     2207017, at *12 (S.D.N.Y. Sept. 8, 2005) (mere allegations of the "inter-dependence of markets

3     cannot be sufficient to satisfy the requirement that a domestic effect 'gives rise to' the plaintiff's

4     claim").

5        This Court's decision in *Rubber Chemicals* is also instructive.  The plaintiffs there

6     alleged a conspiracy to bring about a "single worldwide price increase" by fixing prices in both

7     domestic and foreign markets, and like Motorola here, sued on behalf of their "subsidiaries and

8     affiliates" who purchased products abroad.  504 F. Supp. 2d at 779, 786.  The plaintiffs argued

9     that the "same fixed prices and pricing relationship" gave rise to both the domestic and foreign

10    injuries and that foreign prices were "inextricably linked and correlated" with U.S. prices.  *Id.* at

11    785-86.  Judge Jenkins rejected that argument, finding that although the foreign and domestic

12    prices resulted from the same anticompetitive conduct, the domestic effect of that conduct (*i.e.*,

13    higher prices in U.S. commerce) did not give rise to the foreign injury (*i.e.*, higher prices in

14    foreign commerce) on which plaintiffs based part of their claims.  *Id.* at 782.

15        Based on these principles, allegations that a domestic plaintiff managed a "global

16    procurement process" from the United States are likewise insufficient to establish proximate

17    cause.  The plaintiff in *Sun III*, for example, alleged that its foreign affiliates "purchased

18    [products abroad] at prices set, from vendors chosen, and amounts determined by [plaintiff at its]

19    headquarters in California."  608 F. Supp. 2d at 1186-189.  Judge Hamilton found that such

20    allegations "had already been discredited" and failed to meet the domestic injury exception,

21    noting that "[b]oth this Court and the Ninth Circuit have held that, to the extent plaintiff's

22    proximate causation theory rests on proof of a global procurement strategy, this is *not a viable*

23    *legal theory*."  *Id.* at 1186 (citing *DRAM*; emphasis added).

24        In *Emerson Electric*, plaintiffs similarly alleged that they were "multi-national

25    corporations, with unitary purchasing organizations, [with] headquarters and/or significant

26    operations located in the U.S." and that product purchases were "generally made . . . at a global

27    level by a single purchasing unit at each company."  500 F. Supp. 2d at 445.  The court held that

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    "this is merely a complex description" of the worldwide price-fixing theory "that other courts

2    have rejected as a basis for subject matter jurisdiction over claims related to foreign commerce."

3    *Id.* at 446.

4         As discussed below, Motorola's Complaint offers the very same conclusory allegations of

5    causation that these courts uniformly have rejected as insufficient as matter of law.  Indeed,

6    based on allegations identical to those alleged here, these courts held that no causal link between

7    higher U.S. prices and foreign injuries was established; instead, it was "the foreign effects of

8    price-fixing outside of the United States that directly caused, or 'gave rise to,' [plaintiffs'] losses

9    outside of the United States when they purchased [products] abroad at super-competitive prices."

10   *Empagran II*, 417 F.3d at 1271; *see also In re Monosodium Glutamate Antitrust Litig.,* 2005 WL

11   2810682, at *3 (D. Minn. Oct. 26, 2005), *aff'd,* 477 F.3d 535 (8th Cir. 2007) (a "global price-

12   fixing cartel theory establishes only an indirect relationship between United States prices and the

13   prices paid in foreign markets").  The Court should reach the same conclusion here.

14        **C.**    **The Alleged Foreign Injuries Were Not Proximately Caused By The**

15             **Domestic Effects Of The Alleged Conspiracy.**

16        Here, Motorola tries to meet the FTAIA's proximate cause requirement in three ways.

17   *First*, Motorola pleads the FTAIA itself, parroting its language as conclusion, not fact.  *Second*,

18   Motorola alleges that it negotiated a "global price" affected by the conspiracy.  *Third*, Motorola

19   appears to rely on the assignment of foreign claims by foreign companies to a domestic plaintiff.

20   Each of these approaches are legally insufficient.

21        *First*, the Complaint asserts the boilerplate legal conclusion that the alleged domestic

22   effects of the averred conspiracy "give rise to Motorola's antitrust claims."  Compl. ¶ 15; *see*

23   *also* Compl. ¶ 156 (the alleged conspiracy "had a direct, substantial, and reasonably foreseeable

24   effect on U.S. domestic and import trade or commerce that resulted in injuries suffered by

25   Motorola and gave rise to Motorola's antitrust claims").  These conclusory allegations are void

26   of any *facts* that Motorola must plead to survive this motion and do not supply the required

27   proximate cause.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1   (court need not accept as true "allegations that are merely conclusory, unwarranted deductions of

2   fact, or unreasonable inferences"); *DRAM*, 546 F.3d. at 984-85 (complaint must allege "*facts*

3   sufficient to establish subject matter jurisdiction" under the FTAIA).  To hold otherwise would

4   allow any plaintiff to circumvent the FTAIA's jurisdictional limitations without any supporting

5   facts, an outcome contrary to the precedent set forth above.

6          *Second*, Motorola's allegations that its "supply chain organization" based in Illinois

7   "directed and approved the prices and quantities of LCD Panels purchased throughout the world"

8   are equally deficient.  *See* Compl. ¶¶ 25, 26.  As noted above, the plaintiff in *Sun III* sought to

9   invoke the domestic injury exception with similar allegations of a "global procurement strategy"

10  managed by a "global procurement team" based in the United States.  608 F. Supp. 2d at 1186-

11  189.  Judge Hamilton rejected that assertion of jurisdiction, explaining that "this Court and the

12  Ninth Circuit" have held such allegations do not support "a viable legal theory" under the

13  FTAIA.  *Id.* at 1186.  And, as noted above, Motorola's "supply chain organization" allegations

14  are no different in substance from those rejected in *Emerson Electric*, where the plaintiff alleged

15  that purchases were made at a "global level" at the "best price available worldwide" through a

16  "unitary purchasing organization[]" located in the United States.  500 F. Supp. 2d at 446; *see*

17  *also Rubber Chemicals*, 504 F. Supp. 2d at 786 (plaintiff's allegations of a "single worldwide

18  price" held "insufficient to establish the requisite direct causal relationship").[7]

19         *Third*, Motorola cannot circumvent the FTAIA through the alleged assignment of claims

20  by its foreign affiliates.  Any such assignment is "governed by federal law," *Knott v.*

21  *McDonald's Corp.*, 147 F.3d 1065, 1068 n.4 (9th Cir. 1998), and as the purported assignee of its

22  foreign subsidiaries' antitrust claims, Motorola "does not sue in its own right, but rather stands in

23  the shoes of its assignor[s]."  *Bassidji v. Goe*, 413 F.3d 928, 939 (9th Cir. 2005).  And it is

_____

25  [7]      The fact that foreign purchases may have been made by subsidiaries of a U.S. company is
    irrelevant to the FTAIA analysis.  The statute's legislative history confirms this:  "A transaction
26  between two foreign firms, even if American-owned, should not, merely by virtue of the
    American ownership, come within reach of our antitrust laws."  1982 U.S.C.C.A.N. 2487, 2494.
27  Indeed, federal and state law antitrust claims based on foreign purchases by a U.S.-based
    company are equally barred by the FTAIA.

28

Case No. M-07-1827-SI  MDL No. 1827

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    "hornbook law that an assignee can acquire no greater right, title or interest than that enjoyed by

2    its assignor." *In re Nat'l Mortgage Equity Corp. Mortgage Pool Certs. Sec. Litig.*, 636 F. Supp.

3    1138, 1149 n.17 (C.D. Cal. 1986); *see also Silvers v. Sony Pictures Entm't, Inc.,* 402 F.3d 881,

4    897 (9th Cir. 2005) (holding "all defenses against the assignor were valid against the assignee").

5    The alleged intra-corporate assignment is, therefore, irrelevant to the jurisdictional analysis.

6    Motorola stands in no better position than any of its foreign subsidiaries who purportedly

7    assigned their claims to their U.S. parent.

8         *Rubber Chemicals* is directly on point.  There, the plaintiff attempted to establish

9    jurisdiction under the FTAIA by means of an intra-corporate assignment from foreign

10   subsidiaries to the U.S. parent company.  Judge Jenkins rejected that tactic, holding that a

11   plaintiff "cannot convert a non-justiciable claim, originally accrued by a foreign affiliate or

12   subsidiary and asserting only independent foreign injury, into a justiciable claim merely by

13   assigning it to another plaintiff that holds a justiciable claim."  504 F. Supp. 2d at 784 n.3; *see

14   also Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (subject matter

15   jurisdiction "cannot be conferred upon a federal court by consent, inaction or stipulation").

16   Indeed, to allow a mere assignment of claims to circumvent the FTAIA's jurisdictional

17   limitations would undermine the very purposes of the statute and the principles of prescriptive

18   comity on which it is based.[8]

19        In sum, Motorola fails entirely to plead any facts sufficient to show that the conspiracy's

20   alleged domestic effects were the direct and proximate cause of any alleged foreign injuries,

21   including those allegedly arising from purchases by Motorola's foreign affiliates and any non-

22   party ODMs and EMS providers.[9]  Motorola's allegations are, therefore, "insufficient on their

23   _____

24   [8]    The assignment and Motorola's alleged "worldwide purchasing process" also are
     unavailing to the extent Motorola relies on such allegations to assert the "single enterprise"
25   theory that Judge Hamilton rejected in *Sun III*, holding that the legal authority for such a theory
     was "less than compelling."  608 F. Supp. 2d at 1186.  Here, in any event, Motorola pleads no
26   facts sufficient to support any such "single enterprise" theory.

27   [9]    Any federal claims the Complaint purports to assert based on purchases by Motorola or
     its foreign affiliates from entities other than Defendants (including Motorola's alleged ODMs
28

                                              (Footnote Continued on Next Page.)
                         14                   Case No. M-07-1827-SI  MDL No. 1827

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1  face to invoke federal jurisdiction," *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th

2  Cir. 2004), and its federal claims based on foreign purchases should be dismissed.[10]

3       **D.      Motorola's State Law Claims Based On Foreign Injuries Also Are Barred.**

4            Motorola's state law claims based on foreign injuries are barred to the same extent as its

5  Sherman Act claims.  The Supremacy Clause elevates federal law in areas of foreign commerce

6  and the Commerce Clause limits state law in the same arena.  Even aside from these

7  constitutional commands, principles of prescriptive comity require that state laws be interpreted

8  to avoid interfering with the laws of foreign sovereigns.  Furthermore, the state laws on which

9  Motorola bases its claims model themselves upon federal antitrust law, including its

10  jurisdictional limitations.

11           *First*, the U.S. Constitution requires that state law be applied consistently with the

12  FTAIA.  Where a state law undermines a clear federal policy to speak with one voice on a matter

13  affecting foreign commerce, applying that law beyond what is permitted by the federal policy

14  violates the Commerce Clause.  *Japan Line, Ltd. v. County of L.A.*, 441 U.S. 434, 448 (1979).

15           More specifically, the Commerce Clause gives Congress the sole power "[t]o regulate

16  commerce with foreign Nations . . ."  U.S. CONST. art. I, § 8, cl. 3.  Foreign commerce is

17  _____

18  (Footnote Continued from Previous Page.)

19  and EMS providers) should be dismissed for an additional reason.  Motorola and its foreign
   affiliates are, at most, only indirect purchasers with respect to panels obtained by others that
20  were incorporated as components in devices later sold to Motorola or its foreign affiliates.  Any
   claims by Motorola or its foreign affiliates based on such indirect purchases are not actionable
21  under the Sherman Act.  *See, e.g., Sun III*, 608 F. Supp. 2d at 1177-80 (dismissing claims based
   on purchases made by plaintiff's alleged external manufacturers).

22  [10]      Motorola's claims based on foreign purchases also should be dismissed under Rule
   12(b)(6) for the separate reason that it lacks standing to assert such claims.  *See In re Dynamic*
23  *Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 515629, at *5 (N.D. Cal. Mar. 1,
   2006) ("Antitrust standing is an issue separate from the [FTAIA's] jurisdictional question").
24  "[P]laintiffs who incur antitrust injury outside of the United States as a result of entirely foreign
   anticompetitive conduct do not have standing to sue for damages in U.S. courts."  ANTITRUST
25  LAW DEVELOPMENTS (Sixth) at 1188; *see In re Intel*, 452 F. Supp. 2d at 563 (no standing where
   alleged foreign injuries resulted from "foreign conduct" that "occurred in foreign markets");
26  *Galavan Supplements, Ltd. v. Archer Daniels Midland Co.*, 1997 WL 732498, at *4 (N.D. Cal.
   Nov. 19, 1997) (no standing under the antitrust laws for injuries incurred "entirely outside of
27  United States commerce") (citation omitted).

28

1    "preeminently a matter of national concern." *Japan Line*, 441 U.S. at 448.  State laws

2    "prevent[ing] the Federal Government from speaking with one voice" in such matters are

3    unconstitutional because they are "inconsistent with Congress'[s] power to 'regulate Commerce

4    with foreign Nations.'"  *Id.* at 453-54; *see also Buttfield v. Stanahan*, 192 U.S. 470, 492-93

5    (1904) (recognizing the "exclusive and absolute" power of Congress over foreign commerce);

6    *Bowman v. Chicago & N.W. Ry. Co.*, 125 U.S. 465, 482 (1888) ("The organization of our state

7    and Federal system of government is such that people of the several States can have no relations

8    with foreign powers in respect to commerce, or any other subject, except through the government

9    of the United States, and its laws and treaties.") (internal citation omitted).

10          Here, the FTAIA deliberately excluded certain conduct from the reach of U.S. antitrust

11   laws.  *Empagran I*, 542 U.S. at 158.  This deliberate calculation cannot be contravened by state

12   legislation.  *See Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 68-69 (1st Cir. 1999)

13   (Massachusetts "anti-Burma" law violated, *inter alia*, Commerce Clause, by undermining need

14   for U.S. to speak with one voice with respect to commerce with Myanmar), *aff'd on other*

15   *grounds sub nom. Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000); *Gerling Global*

16   *Reinsurance Corp. of Am. v. Quackenbush*, 2000 WL 777978, at *12 (E.D. Cal. June 9, 2000)

17   (state law requiring disclosure of insurance claims sold to Europeans prior to World War II

18   prevented U.S. from speaking with one voice on compensating Holocaust victims), *aff'd on other*

19   *grounds sub. nom. American Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003).

20          The Supremacy Clause also prohibits applying state laws that "stand[] as an obstacle to

21   the accomplishment and execution of the full purposes and objectives of Congress."  *Crosby*, 530

22   U.S. at 373; *see also Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1994).  Congress intended the

23   FTAIA to accommodate the antitrust regulatory schemes of other nations and to provide a clear

24   and uniform standard for determining the application of American antitrust law to foreign

25   commerce.  Those purposes would be frustrated if each state were permitted *ad hoc* to reach

26   beyond the boundaries established by the FTAIA to adjudicate matters involving foreign

27   commerce as it sees fit.  *See In re Intel*, 476 F. Supp. 2d at 457 ("Congress' intent [in enacting

28

1   the FTAIA] would be subverted if state antitrust laws were interpreted to reach conduct which

2   the federal law could not."). Thus, for purposes of this case, to comport with the Supremacy

3   Clause, a state statute can go no further than the FTAIA in regulating foreign commerce. *See,*

4   *e.g.*, *Amarel v. Connell*, 202 Cal. App. 3d 137, 149 (1988) (reconciling the FTAIA with state law

5   as applied to foreign conduct).

6        *Second*, principles of prescriptive comity, which provide that domestic statutes should be

7   construed to avoid unreasonable interference with the sovereign authority of foreign nations, also

8   preclude state law claims inconsistent with the FTAIA's jurisdictional limitations. *See*

9   *Empagran I*, 542 U.S. at 164-65, 174 (courts should "assume that legislators take account of the

10   legitimate sovereign interests of other nations when they write American laws" so that

11   "potentially conflicting laws of different nations work together in harmony—a harmony

12   particularly needed in today's highly interdependent commercial world"); Restatement (Third)

13   Foreign Relations Law, § 403 (describing prescriptive comity and factors involved); *see also*

14   *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 846 (9th Cir. 1996) (describing comity factors).

15        *Third,* the state antitrust laws invoked by Motorola follow federal antitrust laws and the

16   federal judiciary's construction of those laws. California's Cartwright Act, the principal state

17   antitrust law Motorola asserts, "has objectives identical to the federal antitrust acts" and thus

18   "California courts look to cases construing the federal antitrust laws for guidance in interpreting

19   the Cartwright Act." *Vinci v. Waste Mgmt., Inc.*, 43 Cal. Rptr. 2d 337, 338 n.1 (Cal. Ct. App.

20   1995). The Illinois antitrust statute, which Motorola pleads "in the alternative," is the same. *See*

21   *Health Prof'ls, Ltd. v. Johnson*, 791 N.E.2d 1179, 1189 (Ill. App. Ct. 2003) (Illinois Antitrust

22   Act should be construed "consistent[ly] with the Sherman Act"). And the Illinois statute

23   expressly adopts to the FTAIA's territorial limitations by banning state law claims unless the

24   challenged conduct has a "direct, substantial, and reasonably foreseeable" domestic effect and

25   such "effect gives rise to a claim" under the statute. 740 ILL. COMP. STAT. 10/5(14).[11]

26   _____

27   [11]     The Illinois statute states that when "the wording of this Act is identical or similar to that
of a federal antitrust law, the courts of this State shall use the construction of the federal law by

28

17

(Footnote Continued on Next Page.)
Case No. M-07-1827-SI  MDL No. 1827

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1      The laws of other states which Motorola pleads "in the further alternative" also follow

2   federal antitrust law pursuant to harmonization statutes and judicial decisions.  *See, e.g.,* ARIZ.

3   REV. STAT. ANN. § 44-1412 (2008); D.C. CODE § 28-4515 (2008); IOWA CODE § 553.2 (2008);

4   *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211-12 (D. Kan. 1999) (citing *Bergstram v. Noah*, 974

5   P.2d 520, 531 (Kan. 1999)); MICH. COMP. LAWS § 445-784 (2008); NEV. REV. STAT. § 598A.050

6   (2008); N.M. STAT. § 57-1-15 (2008); *Keating v. Philip Morris, Inc.*, 417 N.W.2d 132, 136

7   (Minn. Ct. App. 1987); *Rose v. Vulcan Materials Co.*, 194 S.E. 2d 521, 530 (N.C. 1973);

8   *Tennessee et rel. Leech v. Levi Strauss & Co.*, 1980 WL 4946 (Tenn. Ch. Ct. Sept. 25, 1980);

9   *Ford Motor Co. v. Lyons*, 405 N.W.2d 354, 367 (Wis. Ct. App. 1987).[12]

10     For all of these reasons, Motorola's federal and state law claims based directly or

11   indirectly on foreign purchases of LCD Panels from Defendants should be dismissed for lack of

12   subject matter jurisdiction and failure to state a claim upon which relief can be granted, including

13   all federal and state law claims based on: (a) Motorola's own foreign purchases, (b) all purchases

14   by Motorola's foreign affiliates, and (c) all foreign purchases by non-party ODMs and EMS

15   providers.

16   **II.    MOTOROLA'S STATE LAW CLAIMS SHOULD BE DISMISSED FOR**

17          **FAILURE TO ALLEGE SUFFICIENT CONTACTS WITH RELEVANT STATES.**

18     Principles of Due Process require significant contacts or a significant aggregation of

19   contacts between the state whose laws are invoked and both (i) the plaintiff's claims, *and* (ii) the

20   parties to the suit.  *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 310-11 (1981) (application of a

21   _____

22   (Footnote Continued from Previous Page.)

23   the federal courts as a guide in construing this Act."  740 ILL. COMP. STAT. 10/11.  Plainly,
     therefore, the Illinois statute cannot be construed to permit a state law claim that is barred under
24   the FTAIA.

25   [12]    *See also CSR Ltd.,* 405 F. Supp. 2d at 552 (where the FTAIA bars Sherman Act claims,
     state antitrust claims are likewise barred by New Jersey's harmonization statute and decisional
26   law); *The 'In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 501 (M.D.N.C. 1987)
27   (dismissing federal and state law claims because extraterritorial effect of North Carolina's
     antitrust statute is coextensive with federal law).

28

1   state's laws violates Due Process unless the "parties *and* the occurrence or transaction" giving

2   rise to plaintiff's claim have significant contacts with the state) (emphasis added); *Phillips*

3   *Petroleum Co. v. Shutt*s, 472 U.S. 797, 821-22 (1985) (Due Process requires a "significant

4   contact or significant aggregation of contacts" between the plaintiff's claims and the state at

5   issue).  It is Plaintiffs' burden to show such contacts.  *See Zinser v. Accufix Research Inst., Inc.*,

6   253 F.3d 1180, 1187 (9th Cir. 2001) ("[p]laintiff does not show how application of California

7   law satisfies constitutional due process requirements in this case"); *Tidwell v. Thor Indus.,* 2007

8   U.S. Dist. LEXIS 21819, at *24-25 (S.D. Cal. Mar. 26, 2007) (plaintiffs must "show how

9   application of California law satisfies due process requirements in this case") (citing *Zinser*).

10       Specifically, to establish the requisite contacts with a plaintiff's claim, the key inquiry is

11   whether the "occurrence or transaction" giving rise to plaintiff's claim has contacts with a

12   relevant state.  *Allstate*, 449 U.S. at 310-11.  In a price-fixing case, the relevant "occurrence or

13   transaction" is the plaintiff's purchase of the relevant product at an allegedly inflated price.  *See*

14   *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1028-29 (N.D. Cal.

15   2007) ("*GPU*"); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 277 (D. Mass. 2004).

16       Motorola's Complaint fails to allege such requisite contacts, and its state law claims

17   should be dismissed under Rule 12(b)(6).  *See Pecover v. Elecs. Arts Inc.*, 633 F. Supp. 2d 976,

18   984 (N.D. Cal. 2009) (dismissing state law claims under Rule 12(b)(6) where complaint failed to

19   allege requisite contacts between its claims and those states); *GPU*, 527 F. Supp. 2d at 1028

20   (striking California state law claims under 12(b)(6) where complaint failed to allege the requisite

21   contacts between absent class members and California).[13]

22       Most significantly, Motorola fails to allege that it or its foreign affiliate assignors

23   purchased any products sold pursuant to the alleged price fixing conspiracy in any of the states

24   _____

25   [13]     Since application of the laws of a state that lacks significant contacts with the claims at
26   issue would violate Due Process, a court would also lack subject matter jurisdiction over such
     claims.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly
27   dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or
     constitutional power to adjudicate it.").  Thus, dismissal also is warranted under Rule 12(b)(1).

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    whose laws it seeks to invoke either directly, "in the alternative," or "in the further alternative."

2    The Complaint only alleges that Motorola and its foreign affiliates purchased such products in

3    the United States and overseas.  Compl. ¶ 2.  This failing alone requires dismissal of all of the

4    state claims as constitutionally unsound.[14]

5         The Complaint's general allegations that prices were affected in the relevant states (*see*,

6    *e.g.*, Compl. ¶ 165), or that certain Defendants sold TFT-LCD products to purchasers in

7    California (Comp. ¶ 10), provide no cure; still missing is any allegation that *Motorola* (or any of

8    its foreign affiliates) made any purchases in those states at allegedly supra-competitive prices.[15]

9    Likewise, the allegations referencing the plea agreements of certain Defendants, stating that

10   those Defendants sold TFT-LCD panels to purchasers in California (Compl. ¶ 10), are of no

11   moment.  Again, there are no allegations that such sales were made to *Motorola*, much less any

12   of its foreign affiliates, in California, and it is not enough that some third party claimants might

13   have the requisite contacts.  *Shutts*, 472 U.S. at 818-22.

14        Motorola's conclusory allegations of conspiracy meetings in California also do nothing to

15   establish the requisite connection between its claims and that state.  Compl. ¶¶ 10, 161.

16   Dispositively, no allegations are made that Motorola (or any of its foreign affiliates) purchased

17   any relevant products directly or indirectly in California.  Moreover, the Complaint makes no

18   allegations that any of those meetings involved any discussions concerning Motorola or any of

19   its foreign affiliates.  Nor does it identify any details regarding those meetings, such as when

20   they supposedly occurred, who participated in them, what product(s) or subjects they concerned,

---

22   [14]    The claims assigned to Motorola are not spared from dismissal because, as an assignee,
Motorola is "subject to all the defenses that could be offered" against its assignors.  *See Silvers*,
23   402 F.3d at 897 ("all defenses against the assignor were valid against the assignee").  The
constitutional choice of law analysis, moreover, must be applied individually to the claims
24   asserted by each plaintiff.  *Shutts*, 472 U.S. at 823; *see also Georgine v. Amchem Prods.*, 83 F.3d
610, 627 (3d Cir. 1996) (Due Process requires the court to apply "an individualized choice of law
25   analysis to each plaintiff's claims") (citing *Shutts*).

26   [15]    This pleading defect highlights an important difference between Motorola's Complaint
and the class purchasers' complaints because, here, Motorola is the only plaintiff and it cannot
27   rely on purchases by other unnamed class members to establish the requisite nexus with a state
whose laws are invoked.

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1   how many such meetings occurred in California, or where they allegedly occurred within the

2   state, rendering the assertion of California law claims even more deficient.  *See GPU*, 527 F.

3   Supp. 2d at 1028 (refusing to apply California's Cartwright Act to claims of class members who

4   allegedly bought relevant products outside of California, when the complaint failed to allege "the

5   specific locations of any of the [conspiracy] meetings between defendants" within California).

6        Motorola's allegations that it sold products containing LCD Panels in the relevant states

7   and that it otherwise conducted "substantial business" in those states (*see, e.g.*, Compl. ¶¶ 160,

8   166), are also of no significance for this inquiry.  Again, the relevant constitutional inquiry is not

9   where Motorola may have sold products or where it transacts business, but whether the

10  "occurrence or transaction" giving rise to its claim—*i.e., purchases* by Motorola and its foreign

11  affiliates of allegedly price-fixed products—occurred in a relevant state.

12       Motorola's further allegations that certain Defendants are headquartered in or otherwise

13  do business in California are likewise misdirected.[16]  Compl. ¶ 10.  Such contacts are insufficient

14  to support any claim under California law, even as against those specifically-identified

15  Defendants.  *See Tidenberg v. Bidz.com, Inc.*, 2009 U.S. Dist. LEXIS 21916, at *12-13 (C.D.

16  Cal. Mar. 4, 2009) (dismissing plaintiff's claims under California law finding "Plaintiff does not

17  allege any specific facts linking Defendants' contacts with California to the claims Plaintiff

18  asserts against them.  Instead, she only alleges that [defendant's] principal place of business is in

19

20

21  _____

22  [16]      This constitutional choice of law inquiry is analytically distinct from the inquiry relevant
    to issues of personal jurisdiction.  *See Shutts,* 472 U.S. at 821 (personal jurisdiction is "entirely
23  distinct from the question of the constitutional limitations on choice of law").  In appropriate
    circumstances, a state may exercise personal jurisdiction over a party who conducts substantial
24  business within a state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  But where,
    as here, the party does not allege that its business in the state gave rise to its claims, then the
25  conduct of business in the state is an insufficient ground upon which to apply that state's laws.
    *See Herrera v. Michelin N. Am., Inc*., 2009 U.S. Dist. LEXIS 21022, at *34 (S.D. Tex. Mar. 16,
26  2009) ("In determining whether a substantial connection exists [to satisfy Due Process], *a court
    must focus on whether a state has a connection to the specific transaction or event giving rise to
27  the litigation, not whether the Defendant generally has ties to the state*.").

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1  California").[17]  That Motorola is headquartered in Illinois (Compl. ¶ 24), also is immaterial

2  because this allegation does not address where the relevant "occurrence or transaction"

3  occurred—*i.e.*, where Motorola or its foreign affiliates bought allegedly price-fixed products.

4      For all of these reasons, Motorola fails to allege the requisite contact(s) between its

5  claims (and those of its foreign affiliates) and the states whose laws it seeks to invoke, thereby

6  requiring dismissal of its state law claims as contrary to Due Process.

7  **III.    MOTOROLA'S COMPLAINT FAILS TO ALLEGE ANY FACTS IN SUPPORT**

8  **OF ITS EXPANDED NON-TFT CONSPIRACY CLAIM.**

9      Motorola's Complaint alleges a much broader conspiracy than those seen in other actions

10  consolidated in this MDL proceeding.  Instead of alleging a conspiracy to artificially inflate only

11  TFT-LCD technologies, as the class plaintiffs and the DOJ do, Motorola asserts a price-fixing

12  conspiracy involving two other technologies:  color super-twist nematic panels ("CSTN panels"),

13  and monochrome super-twist nematic panels ("MSTN panels").  Compl. ¶ 19.  These two super-

14  twist nematic panel technologies (also referred to as "STN" or "passive matrix") are older

15  technologies with slower response times than TFT-LCD panels (referred to as "active matrix").

16  *See* Third Amended Direct Purchaser Plaintiffs' Consolidated Compl. ¶¶ 85-90 (Dkt. 1416).

17  Defendants move to dismiss this non-TFT price fixing claim on the ground it fails to meet

18  applicable pleading requirements.

19      To survive a motion to dismiss its non-TFT conspiracy claim, Motorola's Complaint

20  must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

21  plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic*

22  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kendall v. Visa U.S.A. Inc.*, 518 F.3d

23  1042, 1047 (9th Cir. 2008) ("To state a claim under Section 1 of the Sherman Act, . . . claimants

24  must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which if true, will

25  _____

26  [17]    *See also In re Relafen Antitrust Litig.*, 221 F.R.D. at 277 (refusing to apply Pennsylvania

27  law where defendant was a Pennsylvania manufacturer who sold and distributed from that state
but plaintiff purchased the product at issue outside that state).

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    prove" a conspiracy).  Allegations that "are no more than conclusions … are not entitled to the

2    assumption of truth" and should be disregarded.  *Iqbal*, 129 S. Ct. at 1950.

3         Here, Motorola does not support its broader conspiracy claims with any factual

4    allegations that are separately and specifically directed to STN panels.  Instead, Motorola has

5    simply redefined the term "LCD Panels" (referred to in the Direct Purchaser Class Plaintiffs'

6    complaint as "*TFT*-LCD Panels"), to include not just TFT-LCD panels, but also MSTN-, and

7    CSTN-LCD panels.  Compl. ¶ 19.  It then adopts nearly verbatim as applicable to these

8    technologies all of the other allegations asserted by both the Direct and Indirect Purchaser Class

9    Plaintiffs regarding the alleged TFT-LCD panel conspiracy.  Indeed, the Motorola Complaint

10   alleges the same pricing practices and public statements of Defendants (Compl. ¶¶ 117, 120-21,

11   123-24, 126-29, 145-47), the same group and bilateral meetings (Compl. ¶¶ 81-115), the same

12   time frame for the alleged conspiracy (Compl. ¶ 79), and the same government investigation and

13   guilty pleas involving TFT-LCD panels (Compl. ¶¶ 131-137), as do class plaintiffs in connection

14   with their alleged TFT-LCD panel conspiracy claim.  As a result, Motorola in effect pleads that

15   the same TFT-LCD panel price fixing conspiracy investigated by the DOJ and alleged by the

16   class plaintiffs also encompassed agreements by the Defendants to fix prices for STN panels.[18]

17        Motorola's pleading slight of hand, however, is plainly insufficient to meet the applicable

18   pleading standards.  Specifically, when Motorola describes the alleged price fixing conspiracy, it

19   does not make a single reference to any facts related to fixing prices for "MSTN panels" or

20   "CSTN panels."  It would have been a straightforward matter for Motorola to plead such facts if

21   they existed, but it does not.  Motorola's Complaint is utterly devoid of the required "factual

22   content" that would allow the Court to draw a reasonable inference that the same conspiracy pled

23   by class plaintiffs also encompassed STN panels and products.  *Iqbal*, 129 S. Ct. at 1950.

24   _____

25   [18]    In adopting its own, expanded definition of "LCD Panels" and applying that definition to
     the same conspiracy pled by class plaintiffs, it is impossible to tell if the price fixing allegations
26   that Motorola has lifted from the class plaintiffs' complaint are alleged to have involved an
     agreement to fix prices for TFT-LCD, MSTN-LCD, CSTN-LCD, or some combination thereof.
27   For example, if a meeting allegedly involved fixing prices for TFT-LCD panels but *not* MSTN-
     or CSTN-LCD panels, it would still meet Motorola's "LCD Panel" definition.

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    Motorola has simply side-stepped its pleading burden, relying instead on speculation and wishful

2    thinking.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184 (N.D.

3    Cal. 2009) (plaintiff's complaint must "contain sufficient allegations 'to raise a right to relief

4    above the speculative level'").

5            Motorola's reliance in its Complaint on the DOJ investigation and prior pleadings filed in

6    the MDL completely ignores the fact that this record exclusively concerns *TFT*-LCD

7    technologies, not STN.  The DOJ has been investigating conduct relating to the LCD industry for

8    several years now.  The DOJ has secured several guilty pleas, as well as the cooperation of four

9    Defendants.  But these very guilty pleas—incorporated by reference in Motorola's Complaint—

10   relate *solely* to TFT-LCD panels.  Importantly, even the guilty pleas that specifically reference

11   panel sales to Motorola—also incorporated in Motorola's Complaint by reference—exclusively

12   involve sales of *TFT*-LCD panels.[19]  The DOJ has never even suggested that Defendants fixed

13   the prices of STN panels, much less charged any of them with doing so.

14           Likewise, for years the class plaintiffs have been pursuing allegations of price-fixing

15   involving LCD panels.  Class action discovery has been proceeding for over 18 months, and the

16   class plaintiffs have obtained and reviewed millions of documents.  Class plaintiffs also have had

17   the benefit of the cooperation of one defendant, Chunghwa, for a year.  Chunghwa has provided

18   class plaintiffs with a "detailed . . . proffer of how the TFT-LCD conspiracy operated," including

19   "an overview of the conspiracy, identification of corporate and individual participants in the

20   conspiratorial meetings, identification of dates and locations of conspiratorial meetings, and

21

22

23   _____

24   [19]      More specifically, those pleas involve only TFT-LCD panels for use in Razr mobile
     phones sold to Motorola from fall of 2005 to the middle of 2006.  *See* Sharp Plea Agreement
25   (Dkt. 750-1) at 4; Epson Imaging Devices Corporation Plea Agreement  (Dkt. 1351) at 3-4.
     "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party
26   questions, but which are not physically attached to the pleading, may be considered in ruling on a
     Rule 12(b)(6) motion to dismiss."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).
27

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    reading from conspiratorial documents."[20]  With all this evidence in hand, class plaintiffs have

2    never alleged an expanded conspiracy that encompassed non-TFT panels, despite having

3    amended their pleadings several times.  Moreover, their failure to do so is particularly notable

4    given the scope and breadth of the conspiracy the class plaintiffs *have* alleged, which goes well

5    beyond the conduct alleged by the DOJ.

6          Finally, permitting Motorola to proceed with its unsupported and expanded STN

7    conspiracy claim, without first complying with applicable pleading standards, will result in an

8    unjustified expansion of protracted, costly discovery.  As the Supreme Court has explained, "it is

9    only by taking care to require allegations that reach the level suggesting conspiracy that we can

10   hope to avoid the potentially enormous expense of discovery in cases with no reasonably

11   founded hope that the discovery process will reveal relevant evidence to support a § 1 claim."

12   *Twombly*, 550 U.S. at 559 (quotation omitted).  In this MDL, millions of documents have already

13   been produced, and document discovery is substantially complete.  If Motorola were permitted to

14   proceed on its expanded price fixing allegations it would effectively result in discovery starting

15   anew in order to account for documents relating to STN panels.  Rule 8 "does not unlock the

16   doors of discovery for a plaintiff armed with nothing more than conclusions," *Iqbal*, 129 S. Ct. at

17   1950, yet that is all Motorola has provided in its Complaint.

18         In sum, regarding non-TFT panels, Motorola's Complaint does not contain sufficient

19   allegations of price fixing to raise a right to relief above the speculative level, and should be

20   dismissed.

21   **<u>CONCLUSION</u>**

22         For the foregoing reasons, the moving Defendants respectfully request that the Court

23   grant Defendants' Joint Motion to Dismiss Complaint under Rules 12(b)(1) and 12(b)(6).

24

25   _____

26   [20]    *See* Decl. of Eric Fastiff in Support of Motion for Prelim. Approval of Class Settlement
      With Defendant Chunghwa Picture Tubes, Ltd. (Dkt. 1441), Ex. A.  The Court can take judicial
27   notice of its own records on a motion to dismiss.  *Padilla v. Yoo*, 633 F. Supp. 2d 1005, 1019
      (N.D. Cal. 2009).

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    DATED:  February 19, 2010

2

3                                            By:          /s/ Colin C. West
                                                   Colin C. West (SBN 184095)
4                                                  BINGHAM MCCUTCHEN LLP
                                                   Three Embarcadero Center
5                                                  San Francisco, CA 94111-4067
                                                   (415) 393-2000 (telephone)
6                                                  (415) 393-2286 (facsimile)
                                                   colin.west@bingham.com
7
                                                   Richard S. Taffet (*pro hac vice*)
8                                                  Kenneth I. Schacter (*pro hac vice*)
                                                   BINGHAM MCCUTCHEN LLP
9                                                  399 Park Avenue
                                                   New York, NY 10022-4689
10                                                 (212) 705-7000 (telephone)

11                                                 Jon R. Roellke (*pro hac vice*)
                                                   BINGHAM MCCUTCHEN LLP
12                                                 2020 K Street, NW
                                                   Washington, DC 20006-1806
13                                                 (202) 373-6000 (telephone)

14                                                 *Attorneys for Defendants*
                                                   Sharp Corporation
15                                                 Sharp Electronics Corp.

16   DATED:  February 19, 2010

17

18                                           By:          /s/ Melvin R. Goldman
                                                   Melvin R. Goldman
19                                                 Stephen P. Freccero
                                                   Derek F. Foran
20                                                 MORRISON & FOERSTER LLP
                                                   425 Market Street
21                                                 San Francisco, CA  94105
                                                   (925) 295-3482 (telephone)
22
                                                   David L. Meyer
23                                                 MORRISON & FOERSTER LLP
                                                   2000 Pennsylvania Avenue, NW
24                                                 Suite 6000
                                                   Washington, DC 20006-1888
25
                                                   *Attorneys for Defendants*
26                                                 Epson Imaging Devices Corporation, Epson
                                                   Electronics America, Inc.
27

28
                                            26                      Case No. M-07-1827-SI  MDL No. 1827

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1   DATED:  February 19, 2010

2

3                         By: _____ */s/ Michael R. Lazerwitz*

4                                 Michael R. Lazerwitz (*pro hac vice*)
                                 Jeremy J. Calsyn (SBN 205062)

5                                 Lee F. Berger (SBN 222756)
                             CLEARY GOTTLIEB STEEN & HAMILTON LLP

6                               2000 Pennsylvania Ave., NW
                               Washington, DC  20006

7                               (202) 974-1500 (telephone)
                               (202) 974-1999 (facsimile)

8                               mlazerwitz@cgsh.com

9                               *Attorneys for Defendants*
                               LG Display Co., Ltd. and LG Display America, Inc.

10  DATED:  February 19, 2010

11

12                        By: _____ */s/ Carl L. Blumenstein*

13                                Carl L. Blumenstein
                               Christopher A. Nedeau

14                               Bryan B. Barnhart
                               NOSSAMAN LLP

15                               50 California Street, 34th Floor
                               San Francisco, CA  94111

16                               (415) 438-7274 (telephone)

17                               *Attorneys for Defendants*
                               AU Optronics Corporation and AU Optronics

18                               Corporation America, Inc.

19  DATED:  February 19, 2010

20

21                        By: _____ */s/ Steven F. Cherry*

22                                Steven F. Cherry (*pro hac vice*)
                               Gordon Pearson (*pro hac vice*)

23                               WILMER CUTLER PICKERING HALE AND
                               DORR LLP

24                               1875 Pennsylvania Avenue, NW
                               Washington, DC  20006

25                               (202) 663-6000 (telephone)

26                               *Attorneys for Defendants*
                               Chi Mei Corporation, Chi Mei Optoelectronics

27                               Corporation, Chi Mei Optoelectronics USA, Inc.
                               CMO Japan Co. Ltd., Nexgen Mediatech, Inc. and

28                               Nexgen Mediatech USA, Inc.

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    DATED:  February 19, 2010

2

3                                      By:                    */s/ Wayne A. Cross*
                                              Wayne A. Cross (*pro hac vice*)
4                                             John H. Chung (*pro hac vice*)
                                              WHITE & CASE LLP
5                                             1155 Avenue of the Americas
                                              New York, NY  10036
6                                             (212) 819-8200 (telephone)

7                                             Christopher M. Curran (*pro hac vice*)
                                              Kristen J. McAhren (*pro hac vice*)
8                                             701 Thirteenth Street, NW
                                              Washington, DC 20005-3807
9                                             (202) 626-3600 (telephone)

10                                            *Attorneys for Defendants*
                                       Toshiba Corporation, Toshiba Mobile Display Co.,
11                                     Ltd., Toshiba America Electronic Components, Inc.
                                        and Toshiba America Information Systems, Inc.

12   DATED:  February 19, 2010

13

14

15                                     By:                    */s/ Gary L. Halling*
                                              Gary L. Halling (SBN 66087)
16                                            James L. McGinnis (SBN 95788)
                                              Michael W. Scarborough (SBN 203524)
17                                            SHEPPARD MULLIN RICHTER & HAMPTON
                                              LLP
18                                            Four Embarcadero Center, 17th Floor
                                              San Francisco, CA 94111-4106
19                                            (415) 434-9100 (telephone)

20                                            *Attorneys for Defendants*
                                              Samsung Electronics Co., Ltd.,
21                                            Samsung Semiconductor, Inc. and
                                              Samsung Electronics America, Inc.

22

23

24

25

26

27

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

1    DATED:  February 19, 2010

2

3                                              By:_____*/s/ Patrick J. Ahern*_____

4                                                                    Patrick J. Ahern
                                                            BAKER & MCKENZIE, L.L.P.
5                                                              130 East Randolph Drive
                                                             Chicago, Illinois  60601
                                                             (312) 861-3735 (telephone)
6

7                                                            *Attorneys for Defendant*
                                                      Tatung Company of America, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT

# Exhibit K

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

LLOYD K. GARRISON  (1946-1991)
RANDOLPH E. PAUL  (1946-1956)
SIMON H. RIFKIND  (1950-1995)
LOUIS S. WEISS  (1927-1950)
JOHN F. WHARTON  (1927-1977)

1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE (212) 373-3000

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU, CHAOYANG DISTRICT
BEIJING 100020, PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

PARTNERS RESIDENT IN WASHINGTON
DAVID J. BALL
CRAIG A. BENSON
PATRICK S. CAMPBELL
CHARLES E. DAVIDOW
KENNETH A. GALLO
MARK F. MENDELSOHN

JANE B. O'BRIEN
ALEX YOUNG K. OH
JOSEPH J. SIMONS
ALEXANDRA M. WALSH
BETH A. WILKINSON

PARTNERS NOT RESIDENT IN WASHINGTON
MATTHEW W. ABBOTT*
ALLAN J. ARFFA
ROBERT A. ATKINS*
JOHN F. BAUGHMAN*
LYNN B. BAYARD*
DANIEL J. BELLER
MITCHELL L. BERG*
MARK S. BERGMAN
BRUCE BIRENBOIM*
H. CHRISTOPHER BOEHNING*
ANGELO BONVINO*
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN*
SUSANNA M. BUERGEL*
JESSICA S. CAREY*
JEANETTE K. CHAN*
YVONNE Y. F. CHAN*
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH*
CHRISTOPHER J. CUMMINGS*
DOUGLAS R. DAVIS*
THOMAS V. DE LA BASTIDE III*
ARIEL J. DECKELBAUM*
ALICE BELISLE EATON*
ANDREW J. EHRLICH*
GREGORY A. EZRING*
LESLIE GORDON FAGEN
MARC FALCONE*
ROSS A. FIELDSTON*
ANDREW C. FINCH
BRAD J. FINKELSTEIN*
BRIAN P. FINNEGAN*
PETER E. FISCH*
ROBERTO FINZI*
PETER E. FISCH*
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY*
HARRIS B. FREIDUS*
MANUEL S. FREY*
ANDREW L. GAINES*
MICHAEL E. GERTZMAN*
ADAM M. GIVERTZ*
SALVATORE GOGLIORMELLA*
ROBERT D. GOLDBAUM*
NEIL GOLDMAN*
ERIC GOODISON*
CHARLES H. GOOGE, JR.*
ANDREW G. GORDON*
UDI GROFMAN*
NICHOLAS GROOMBRIDGE*
BRUCE A. GUTENPLAN*
GAINES GWATHMEY, III
ALAN S. HALPERIN*
JUSTIN G. HAMILL*
CLAUDIA HAMMERMAN*
GERARD E. HARPER
BRIAN S. HERMANN*
ROBERT M. HIRSH
MICHELE HIRSHMAN*
MICHAEL S. HONG*
DAVID S. HUNTINGTON*
LORETTA A. IPPOLITO*
JAREN JANGHORBANI*
MEREDITH J. KANE*

ROBERTA A. KAPLAN*
BRAD S. KARP*
PATRICK N. KARSNITZ*
JOHN C. KENNEDY*
BRIAN KIM*
ALAN W. KORNBERG
DANIEL J. KRAMER*
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL*
XIAOYU GREG LIU*
JEFFREY D. MARELL*
MARCO V. MASOTTI
EDWIN S. MAYNARD*
DAVID W. MAYO*
ELIZABETH R. McCOLM*
WILLIAM B. MICHAEL*
TOBY S. MYERSON*
CATHERINE NYARADY*
BRAD R. OKUN*
KELLEY D. PARKER*
MARC E. PERLMUTTER*
VALERIE E. RADWANER*
CARL L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN*
RICHARD A. ROSEN
ANDREW N. ROSENBERG*
JACQUELINE P. RUBIN*
RAPHAEL M. RUSSO*
JEFFREY D. SAFERSTEIN*
JEFFREY B. SAMUELS*
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER*
ROBERT B. SCHUMER*
JAMES H. SCHWAB*
JOHN M. SCOTT*
STEPHEN J. SHIMSHAK*
DAVID R. SICULAR*
MOSES SILVERMAN
STEVEN SIMKIN*
MARILYN SOBEL
AUDRA J. SOLOWAY*
SCOTT M. SONTAG*
TARUN M. STEWART*
ERIC ALAN STONE*
AIDAN SYNNOTT*
ROBYN F. TARNOFSKY*
MONICA K. THURMOND*
DANIEL J. TOAL*
LIZA M. VELAZQUEZ*
MARIA T. VULLO*
LAWRENCE G. WEE*
THEODORE V. WELLS, JR.*
STEVEN J. WILLIAMS*
LAWRENCE I. WITDORCHIC*
MARK B. WLAZLO*
JULIA TM. WOOD
JORDAN E. YARETT*
KAYE N. YOSHINO*
TONG YU*
TRACEY A. ZACCONE*
T. ROBERT ZOCHOWSKI, JR.*

*NOT AN ACTIVE MEMBER OF THE DC BAR

WRITER'S DIRECT DIAL NUMBER
202-223-7343

WRITER'S DIRECT FACSIMILE
202-204-7343

WRITER'S DIRECT E-MAIL ADDRESS
cbenson@paulweiss.com

October 14, 2014

**By Email**

Jeffrey L. Kessler
Eva W. Cole
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
*JKessler@winston.com*
*EWCole@winston.com*

David L. Yohai
Adam Hemlock
WEIL, GOTSHAL, & MANGES, LLP
767 Fifth Ave.
New York, NY 10153
*adam.hemlock@weil.com*
*david.yohai@weil.com*

William D. Temko
MUNGER, TOLLES & OLSON
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA 90071-1560
*William.Temko@mto.com*

John M. Taladay
Erik Koons
BAKER BOTTS L.L.P.
The Warner
1299 Pennsylvania Ave., NW
Washington, DC 20004
*john.taladay@bakerbotts.com*
*erik.koons@bakerbotts.com*

Hojoon Hwang
MUNGER, TOLLES & OLSON
560 Mission Street
Twenty-Seventh Floor
San Francisco, CA 94105-2907
*Hojoon.Hwang@mto.com*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Letter to Counsel re: Withdrawal of Claims Relating to Finished Product Purchases      2

Christopher M. Curran
Lucius B. Lau
WHITE & CASE LLP
701 13th Street, NW
Washington, DC 20005
*ccurran@whitecase.com*
*alau@whitecase.com*

James H. Mutchnik, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
*jmutchnik@kirkland.com*

Eliot A. Adelson
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
*eadelson@kirkland.com*

James L. McGinnis
Michael Scarborough
SHEPPARD MULLIN RICHTER &
HAMPTON, LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
*jmcginnis@sheppardmullin.com*
*mscarborough@sheppardmullin.com*

Kathy L. Osborn
FAEGRE BAKER DANIELS LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
*kathy.osborn@faegrebd.com*

Jeffrey S. Roberts
FAEGRE BAKER DANIELS LLP
3200 Wells Fargo
1700 Lincoln Street
Denver, CO 80203
*jeff.roberts@faegrebd.com*

Nathan Lane, III
SQUIRE SANDERS (US) LLP
275 Battery Street
Suite 2600
San Francisco, CA 94111
*nathan.lane@squirepb.com*

Donald A. Wall
SQUIRE SANDERS (US) LLP
Suite 2700
1 E. Washington St.
Phoenix, AZ 85004
*donald.wall@squirepb.com*

*Sharp Elecs. Corp. et al. v. Hitachi, Ltd. et al.*, No. 13-cv-01173-SC;
*Sharp Elecs. Corp. et al. v. Koninklijke Philips Elecs. N.V. et al.*, No. 13-cv-2776-SC;
MDL No. 1917, No. 07-cv-5944-SC

<u>Withdrawal of Claims Relating to Finished Product Purchases</u>

Dear Counsel:

   We hereby notify all defendants that Sharp Electronics Corporation and
Sharp Electronics Manufacturing Company of America, Inc. do not intend to pursue, and
hereby withdraw, any claims relating only to their purchases of CRT televisions
containing CRTs that had been purchased by Sharp Roxy Electronics Corporation and
Nanjing Sharp Electronics Co., Ltd., as referred to in paragraph 28 of their Second
Amended Complaint in *Sharp Elecs. Corp. et al. v. Hitachi, Ltd. et al.*, No. 13-cv-01173-

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Letter to Counsel re: Withdrawal of Claims Relating to Finished Product Purchases      3

SC.  Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. accordingly hereby also withdraw all claims under state law (Claims 2-7).

Very truly yours,

*/s/ Craig A. Benson*

Craig A. Benson