1  JEFFREY L. KESSLER (*pro hac vice*)
   ALDO A. BADINI (257086)
2  EVA COLE (*pro hac vice*)
   MOLLY M. DONOVAN (*pro hac vice*)
3  WINSTON & STRAWN LLP
   200 Park Avenue
4  New York, New York 10166-4193
   Telephone: (212) 294-6700
5  Facsimile: (212) 294-4700
   Email: jkessler@winston.com
6
   STEVEN A. REISS (*pro hac vice*)
7  DAVID L. YOHAI (*pro hac vice*)
   ADAM C. HEMLOCK (*pro hac vice*)
8  WEIL, GOTSHAL & MANGES LLP
   767 Fifth Avenue
9  New York, New York 10153-0119
   Telephone: (212) 310-8000
10 Facsimile: (212) 310-8007
   Email: steven.reiss@weil.com
11
   *Attorneys for Defendants Panasonic Corporation (f/k/a Matsushita Electric Industrial*
12 *Co., Ltd.), Panasonic Corporation of North America, MT Picture Display Co., Ltd.*

13 Additional Moving Defendants and Counsel Listed on Signature Pages

14            UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF CALIFORNIA
15            SAN FRANCISCO DIVISION

| | |
|---|---|
| 16 **In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | **Case No. 07-5944 SC** |
| 17 | **MDL No. 1917** |
| This Document Relates to: 18 | |
| ALL INDIRECT-PURCHASER ACTIONS 19 | **DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT BASED UPON PLAINTIFFS' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA** |
| *Electrograph Sys., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-01656; 20 | |
| 21 *Electrograph Sys., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05724; | |
| 22 *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502; 23 | [Proposed] Order Granting Defendants' Dispositive Motion Directed at Plaintiffs' Inclusion of Non-Actionable Claims Based on Foreign Sales |
| 24 *Siegel v. Technicolor SA, et al.*, No. 13-cv-05261; | |
| 25 *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513; 26 | Judge: Hon. Samuel P. Conti Court: Courtroom 1, 17th Floor Date: February 6, 2015 10:00 a.m. |
| 27 *Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05264; | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |
| 28 *Target Corp. v. Chunghwa Picture Tubes,* | |

1 | *Ltd., et al.*, No. 11-cv-05514;

2 | *Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686;

3
4 | *Sears, Roebuck & Co., et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514;

5 | *Sears, Roebuck & Co., et al. v. Technicolor SA, et al.*, No. 13-cv-05262;

6
7 | *Interbond Corp. of Am. v. Hitachi, Ltd., et al.*, No. 11-cv-06275;

8 | *Interbond Corp. of Am. v. Technicolor SA, et al.*, No. 13-cv-05727;

9 | *Office Depot, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06276;

10
11 | *Office Depot, Inc. v. Technicolor SA, et al.*, No. 13-cv-05726;

12 | *CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06396;

13
14 | *Costco Wholesale Corp. v. Hitachi, Ltd., et al.*, No. 11-cv-06397;

15 | *Costco Wholesale Corp. v. Technicolor SA, et al.*, No. 13-cv-05723;

16
17 | *P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02648;

18 | *P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al.*, No. 13-cv-05725;

19
20 | *Schultze Agency Servs., LLC v. Hitachi, Ltd., et al.*, No. 12-cv-02649;

21 | *Schultze Agency Servs., LLC v. Technicolor SA, et al.*, No. 13-cv-05668;

22
23 | *Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, No. 13-cv-00157

24 | *Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 14-cv-02510;

25
26 | *Dell Inc., et al. v. Hitachi Ltd. et al.*, No. 13-cv-02171.

27
28

## NOTICE OF MOTION AND MOTION

To all parties and their attorneys of record:

Please take notice that on February 6, 2015, at 10:00 a.m. or as soon thereafter as this matter may be heard before the Honorable Samuel P. Conti, Senior U.S. District Court Judge, U.S. District Court for the Northern District of California, Courtroom No. 1, 17th Fl., 450 Golden Gate Avenue, San Francisco, California 94102, the moving Defendants listed on the signature pages below will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 56, for summary judgment in Defendants' favor based upon Plaintiffs' failure to put forth competent evidence from which a jury could fairly estimate actionable damages consistent with the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a ("FTAIA").

This Motion is based upon this Notice and Motion, the Statement of the Issues, the accompanying Memorandum of Points and Authorities, the accompanying declarations and exhibits thereto and other materials in the record, argument of counsel, and such other matters as the Court may consider.

## STATEMENT OF THE ISSUES

Whether Defendants are entitled to summary judgment because Plaintiffs' sole evidence of damages is incompetent as a matter of law because it does not segregate damages according to whether Defendants' foreign sales are actionable or not actionable under the standards set forth in the FTAIA, 15 U.S.C. § 6a.

DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT
BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

1

## <u>TABLE OF CONTENTS</u>

2                                                                            **Page**

3   NOTICE OF MOTION AND MOTION..........................................................................iii

4   STATEMENT OF THE ISSUES ................................................................................iii

5   TABLE OF AUTHORITIES....................................................................................... v

6   PRELIMINARY STATEMENT ................................................................................. 1

7   STATEMENT OF UNDISPUTED FACTS................................................................. 4

8          A.   The IPPs' Damages Model ....................................................................... 5

9          B.   The DAPs' Damages Model....................................................................... 7

10  LEGAL STANDARD ............................................................................................... 10

11  ARGUMENT............................................................................................................ 11

12  I.    The FTAIA Indisputably Establishes that Some of the Damages Inextricably
            Lumped Together by Plaintiffs' Experts Are Not Actionable as a Matter of Law ........... 11
13

14  II.   There Is No Competent Evidence from Which a Jury Could Reasonably
            Determine Which Portion of Plaintiffs' Damages Evidence Meets FTAIA
15          Requirements and Which Portion Does Not......................................................... 15

16  III.  The FTAIA Dooms Plaintiffs' Damages Evidence for Both Federal and State
            Law Claims............................................................................................................ 18

17  CONCLUSION ........................................................................................................ 20

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

CASES                                                                                            PAGE(S)

*'In' Porters, S.A. v. Hanes Printables, Inc.*,
    663 F. Supp. 494 (M.D.N.C. 1987) ........................................................................ 20

*American Ins. Ass'n v. Garamendi*,
    539 U.S. 396 (2003) ............................................................................................... 19

*Animal Sci. Prods., Inc. v. China Minmetals Corp.*,
    654 F.3d 462 (3d Cir. 2011) .................................................................................. 12

*Bowman v. Chicago & N.W. Ry. Co.*,
    125 U.S. 465 (1888) ............................................................................................... 18

*Butler v. Sears, Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014) ............................ 4

*Buttfield v. Stanahan*,
    192 U.S. 470 (1904) ............................................................................................... 18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................... 10

*City of Vernon v. S. Cal. Edison Co.*,
    955 F.2d 1361 (9th Cir. 1992) ................................................................. 10, 11, 17

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)................................................................................... *passim*

*Costco Wholesale Corp. v. AU Optronics Corp.*,
    No. C13-1207RAJ, 2014 WL 4718358 (W.D. Wash. Sept. 22, 2014) ...................... 13

*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000) ............................................................................................... 19

*CSR Ltd. v. CIGNA Corp.*,
    405 F. Supp. 2d 526 (D.N.J. 2005).......................................................................... 20

*Den Norske Stats Oljeselskap A.S. v. HeereMac VOF*,
    241 F.3d 420 (5th Cir. 2001) ................................................................................. 19

*Empagran S.A. v. F. Hoffmann-LaRoche, Ltd. ("Empagran II")*,
    417 F.3d 1267 (D.C. Cir. 2005)............................................................................... 19

*F. Hoffmann-La Roche Ltd. v. Empagran S.A. ("Empagran I")*,
    542 U.S. 155 (2004) ..................................................................................... *passim*

*Flood v. Kuhn*,
    407 U.S. 258 (1972) ........................................................................................... 19

*Gerling Global Reinsurance Corp. of Am. v. Quackenbush*,
    No. Civ. S-00-0506WBSJFM, 2000 WL 777978 (E.D. Cal. June 9, 2000)................................ 19

*Ginsburg v. Comcast Cable Commc'ns Mgmt. LLC*,
    No. C11-1959RAJ, 2013 WL 1661483 (W.D. Wash. Apr. 17, 2013) ......................................... 4

*Hines v. Davidowitz*,
    312 U.S. 52 (1941) ............................................................................................. 19

*In re Indep. Serv. Orgs. Antitrust Litig.*,
    85 F. Supp. 2d 1130 (D. Kan. 2000)......................................................................... 17-18

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    476 F. Supp. 2d 452 (D. Del. 2007) .............................................................. 12, 14, 22

*In re Potash Antitrust Litig.*,
    667 F. Supp. 2d 907 (N.D. Ill. 2009)......................................................................... 19-20

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. 07-md-01819 CW, 2010 WL 5477313 (N.D. Cal. Dec. 31, 2010) ...................................... 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    Nos. M 07-1827 SI, C 09-5840 SI, 2010 WL 2610641 (N.D. Cal. June 28, 2010) ................... 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, MDL. No. 1827, 2011 WL 4634031 (N.D. Cal. Oct. 5, 2011) ................... 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    Civ. Nos. 10-CV-4572, 12-CV-4114, MDL No. 1827 (N.D. Cal. Sept. 3, 2013)........................ 3

*Intimate Bookshop v. Barnes & Noble, Inc.*,
    No. 98 Civ. 5564, 2003 WL 22251312 (S.D.N.Y. Sept. 30, 2003)........................................... 18

*Japan Line, Ltd. v. County of L.A.*,
    441 U.S. 434 (1979) ............................................................................................. 18

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
    753 F.3d 395 (2d Cir. 2014) ...................................................................... 12, 13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................. 12

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ............................................................... 1, 10, 17

*Minn-Chem, Inc. v. Agrium, Inc.*,
    683 F.3d 845 (7th Cir. 2012) ................................................................................. 11

vi

*Morgan Creek Prods., Inc. v. Capital Cities/ABC, Inc.*,
    No. 89-5463, 1991 WL 352619 (C.D. Cal. Oct. 28, 1991) ....................................................... 10

*Nat'l Foreign Trade Council v. Natsios*,
    181 F.3d 38 (1st Cir. 1999).................................................................................................................. 18

*Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*,
    No. C 06-1665 PJH, 2007 WL 1056783 (N.D. Cal. Apr. 5, 2007) ........................................... 12

*Turicentro, S.A. v. American Airlines, Inc.*,
    303 F.3d 293 (3d Cir. 2002) ................................................................................................................ 16

*United Phosphorus, Ltd. v. Angus Chem. Co.*,
    131 F. Supp. 2d 1003 (N.D. Ill. 2001).................................................................................... 12, 13

*United States v. Hui Hsiung*,
    758 F.3d 1074 (9th Cir. 2014) ................................................................................................. 12, 13

*United States v. LSL Biotechs.*,
    379 F.3d 672 (9th Cir. 2004) ................................................................................................... 13, 15

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
    No. CV 11-5858 CAS, 2013 WL 3200500 (C.D. Cal. June 17, 2013) ......................................... 4

**U.S. CONSTITUTION**

U.S. Const. art. I, § 8, cl. 3 (Commerce Clause) .............................................................................. 18

U.S. Const. art. VI, § 2 (Supremacy Clause)............................................................................ 18, 19

**STATUTES AND RULES**

15 U.S.C. § 6a (Foreign Trade Antitrust Improvements Act "FTAIA").................................. *passim*

15 U.S.C. § 6a(1) ...................................................................................................................................... 12

Fed. R. Civ. P. 56(a) ................................................................................................................................ 10

Fed. R. Civ. P. 56(c) ................................................................................................................................ 12

**OTHER AUTHORITIES**

ABA Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic Issues
    57 (2d ed. 2010)...................................................................................................................................... 11

Federal Judicial Center, Reference Manual on Scientific Evidence 432 (3d ed. 2011) .................... 17

H.R. Rep. No. 97-686 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2487, 2494.3 ................................. 19

DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT
BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

**PRELIMINARY STATEMENT**

The indirect purchaser class plaintiffs ("IPPs") and direct action plaintiffs[1] ("DAPs") (collectively, "Plaintiffs") are seeking billions of dollars in antitrust damages from Defendants,[2] but both groups of Plaintiffs have failed to present competent evidence of damages that would enable a jury reasonably to distinguish between damages from Defendants' sales that are actionable under the FTAIA and damages from Defendants' sales that are not. This inextricable intertwining of both damages from an actionable legal theory and damages from a theory that cannot support a valid claim requires that summary judgment be entered in favor of Defendants against all of Plaintiffs' claims. *See, e.g.*, *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802 (9th Cir. 1988) (plaintiffs must establish at summary judgment that there is "competent evidence from which a jury could fairly estimate damages").

It is undisputed that the Plaintiffs' damages claims are based on a mixture of two separate categories of sales by Defendants, each with different liability elements:  (i) claims based on U.S. purchases of cathode ray tubes ("CRTs") or finished products containing a CRT that Defendants first sold to a third party in the United States, and (ii) claims based on purchases of finished products containing CRTs in the United States that Defendants first sold, in the form of a CRT or a finished product, to a third party overseas and a non-defendant then subsequently imported into the United States. The first category of sales is not within the scope of the FTAIA and may be the basis for a damages claim in this case. The second category of sales, however, is subject to the requirements of the FTAIA, which Plaintiffs have the burden of satisfying as a substantive element of this type of claim. 15 U.S.C. § 6a (the Sherman Act "shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless . . . such conduct has a direct, substantial, and reasonably foreseeable effect" on United States markets).

Indeed, even if Plaintiffs were able to establish that foreign sales once-removed from Defendants—*e.g.*, a CRT sold to a foreign purchaser who then immediately resells it as part of a

---

[1] "Direct action plaintiffs" in this motion refers to the plaintiffs in the above-captioned DAP cases.

[2] "Defendants" refers to those defendants that remain in the above-captioned actions and that are signatories to this motion.

1

DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT
BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

finished product in the United States—were to satisfy the FTAIA, Plaintiffs here have unquestionably included far more complicated or attenuated versions of that scenario that are plainly beyond the scope of U.S. antitrust laws. But, by the undisputed admissions of their own damages experts, Plaintiffs have done nothing to segregate damages attributable to the sales that definitely would fail to satisfy the FTAIA, let alone the sales that are subject to its requirements. *See infra* pp. 3-9. Each of Plaintiffs' damages experts has instead presented as Plaintiffs' sole evidence of antitrust damages one lump sum of damages that in no way permits a jury to reasonably distinguish the amounts that relate to actionable sales from those that relate to sales that are not actionable under either federal or state antitrust laws under the FTAIA.



1

2

3

4

5

6

7

8

9

10    Plaintiffs, however, were well aware of the need to satisfy the FTAIA's requirements when

11   they instructed their experts on preparing their damages evidence.  Defendants first raised this issue

12   with the IPPs in Defendants' motion to dismiss the IPP complaint, and this Court ruled that

13   satisfaction of the FTAIA's requirements would be an issue to be decided after the development of

14   a factual record.  *See* Order Approving and Adopting Special Master's Report, Recommendations

15   and Tentative Rulings re Defs.' Mot. to Dismiss at 17-18, Mar. 30, 2010 (Dkt. No. 665).  For its

16   part, plaintiff Best Buy went to trial just last year in *LCD*, where the jury was asked whether Best

17   Buy proved, as required by the FTAIA, that the conspiracy involving LCD panels and/or finished

18   LCD products sold overseas produced direct, substantial, and reasonably foreseeable effects on U.S.

19   trade or commerce.  The jury's answer was "no."  Special Verdict at 3, *In re TFT-LCD (Flat Panel)*

20   *Antitrust Litig.*, Civ. Nos. 10-CV-4572, 12-CV-4114, MDL No. 1827 (N.D. Cal. Sept. 3, 2013)

21   (Dkt. No. 8562).  Plaintiffs have nevertheless decided to ignore the FTAIA's requirements by

22   having their experts submit damages models that mix together claims for both import commerce

23   sales and *all* overseas sales, without any effort being made to exclude damages for those overseas

24   sales by Defendants that indisputably would not meet the FTAIA test.

25    The Supreme Court in *Comcast Corp. v. Behrend* specifically rejected what Plaintiffs have

26   done here, *i.e.*, rely upon expert damages models that lump together damages based on multiple

27   theories of liability, and that do not "isolate damages resulting from any one theory of antitrust

28   impact."  133 S. Ct. 1426, 1431 (2013).  This renders Plaintiffs' models for damages incompetent

3

1  as a matter of law, as they do not provide the fact finder with any reasoned basis to distinguish

2  between actionable and non-actionable claims.  *See, e.g*., *Butler v. Sears, Roebuck & Co.*, 727 F.3d

3  796, 799 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014) (*Comcast* holds that damages sought

4  must be attributable to the operable theory of liability); *Vaccarino v. Midland Nat'l Life Ins. Co.*,

5  No. CV 11-5858 CAS (MANx), 2013 WL 3200500, at *14 (C.D. Cal. June 17, 2013) ("plaintiffs

6  must still offer a method that tethers their theory of liability to a methodology for determining the

7  damages"); *Ginsburg v. Comcast Cable Commc'ns Mgmt. LLC*, No. C11-1959RAJ, 2013 WL

8  1661483, at *7 (W.D. Wash. Apr. 17, 2013) ("Even at the class certification stage, a plaintiff must

9  demonstrate a damages methodology that has some potential to reasonably assess damages.")

10  In sum, summary judgment is required against Plaintiffs because they have not presented the

11  Court with any damages evidence that can be segregated between actionable and non-actionable

12  claims.  Indeed, neither the IPP class, nor the DAPs, have even offered *any* evidence to delineate

13  which of the sales they purchased meet the requirements of the FTAIA and which do not.  As a

14  result, they have not presented any reliable evidence of actionable antitrust damages at all.

15  **STATEMENT OF UNDISPUTED FACTS**

16  The material facts relevant to this motion are undisputed.  The IPPs are indirect purchasers

17  of finished products that contain CRTs supposedly manufactured and sold by Defendants in the

18  United States and elsewhere, the prices of which IPPs allege Defendants conspired to fix, raise,

19  maintain and/or stabilize.  IPPs' Fourth Consol. Am. Compl. ¶¶ 1-2, Jan. 10, 2013 (Dkt. No. 1526).

20  The DAPs are retailers and distributors of finished products containing CRTs allegedly

21  manufactured and sold by Defendants in the United States and elsewhere.  Both the IPPs and DAPs

22  have submitted expert reports as the sole evidence in support of their damages claims.  *See* Expert

23  Report of Janet S. Netz, Ph.D., Apr. 15, 2014 ("Netz Report"); Expert Report of Dr. James T.

24  McClave, Apr. 15, 2014 ("McClave Report"); Expert Report of Alan S. Frankel, Ph.D., Apr. 15,

25  2014 ("Frankel Report").[3]

26

27  [3] The relevant excerpts of the Netz Report and McClave Report are attached to the Stewart Declaration as Exhibits 2 and 3, respectively.  Dr. McClave submitted a near-identical report in the *Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 14-cv-02510, action.  *See* Stewart

28  Decl. Ex. 7, McClave Tr. 144:10-17, June 25, 2014.  Dr. Frankel submitted near-identical reports in

4

## A.      The IPPs' Damages Model

The IPPs' expert, Dr. Janet Netz, was tasked with evaluating the impact of the alleged cartel and quantifying the damages, if any, suffered by members of the IPP consumer class.  Stewart Decl. Ex. 2, Netz Report at 5. ███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████  The damages that Dr. Netz attributes to those overseas sales to third parties were indisputably lumped together by Dr. Netz with the damages she calculated attributable to all other sales of CRTs or CRT products by Defendants.

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███   In other words, her overcharge calculation is based both on tubes sold by Defendants into or within the United States, as well as those CRTs manufactured and sold by Defendants in foreign commerce, including those to third parties who subsequently imported finished products into the United States, where they made their way to some of the IPP class members:

████████████████████████████████████████████
███████████

███████████

---

each of the above-captioned DAP actions, the relevant excerpts of an example of this report filed in the cases *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513, and *Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05264, are attached as Exhibit 4 to the Stewart Declaration.

DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT                    Case No. 07-5944
BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE                   MDL No. 1917
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT
BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

1

2

3

4

5

6

7

8

9

10

11



12    It is thus indisputable that there is no way for a jury, based on the evidence presented by Dr.

13    Netz, to distinguish those damages which were attributable to overseas CRT sales that do not satisfy

14    the requirements of the FTAIA.  In fact, there is no way for the jury, Dr. Netz, or anyone else to

15    determine if a particular IPP class member even purchased a TV or monitor that contained a CRT

16    that was sold under circumstances that did or did not meet FTAIA requirements.

17    **B.    The DAPs' Damages Model**

18

19

20

21

22

23



24    Dr. McClave's and Dr. Frankel's damages estimate methodologies are the same regardless of the

25    identity of the DAP at issue.  *See, e.g.*, Stewart Decl. Ex. 3, McClave Report at 4, n.1, 12, Table 1;

26    Stewart Decl. Ex. 6, Frankel Tr. 42:22-43:13, July 10, 2014.

27    Like Dr. Netz, in calculating the overcharge on Defendants' CRT sales, Dr. McClave relied

28    solely upon Defendants' *global* sales data for CRTs.

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT
BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917



\*       \*       \*

It is thus undisputed that both IPPs' and DAPs' damages experts included both U.S. and foreign tube sales without distinction in calculating the tube overcharges applied in their damages models; they did nothing to try to separate out which of Defendants' tubes were sold into foreign commerce; they have not investigated and have no way of knowing, according to IPPs' expert, which of the finished CRT products on which Plaintiffs base their claims contain CRTs that were manufactured and sold entirely in foreign commerce; nor have they presented any way to

_____

[4] Similarly, Dell presented a separate report, by Dr. Mohan Rao, regarding the alleged overcharges and Dell's damages. Dr. Rao's analysis suffers from the same failure to segregate U.S. and tube sales in calculating the alleged overcharge or determining damages.

9

1  distinguish which of those foreign CRT sales would or would not satisfy the "direct, substantial and

2  reasonably foreseeable" effect test of the FTAIA.

3  ## LEGAL STANDARD

4  Summary judgment is granted when "there is no genuine dispute as to any material fact"

5  and the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving

6  party should be granted summary judgment where its opponent "fails to make a showing sufficient

7  to establish the existence of an element essential to that party's case, and on which that party will

8  September 26, 2014 Reply Report of Mohan Rao to Janusz Ordover bear the burden of proof at

9  trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Under this standard, the moving party

10  need not negate an opponent's claims, but only need show an absence of probative evidence to

11  support an essential element of the non-movant's claim in order to prevail.  *Id.* at 323.

12  With respect to damages, plaintiffs must establish at summary judgment that there is

13  "competent evidence from which a jury could fairly estimate damages."  *McGlinchy*, 845 F.2d at

14  808-09 (affirming summary judgment where plaintiff "submitted no specific facts on which a finder

15  of fact could reasonably conclude that appellants actually suffered damages, caused by []

16  defendants, in any quantifiable amount"); *Morgan Creek Prods., Inc. v. Capital Cities/ABC, Inc.*,

17  No. 89-5463, 1991 WL 352619, at *16 (C.D. Cal. Oct. 28, 1991) ("The summary judgment

18  requirements outlined in *Celotex* and *Anderson* apply equally to the issue of damages.").  An

19  antitrust plaintiff must come forward with evidence of damages "such that the jury is not left to

20  'speculation or guesswork'" in determining the award.  *McGlinchy*, 845 F.2d at 808 (citation

21  omitted).  This means not only that plaintiffs' damages estimate must be more than "speculative,"

22  but also that it must identify the damages amount attributable to plaintiffs' actionable theory or

23  theories of liability.  *City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1371 (9th Cir. 1992)

24  ("courts have been consistent in requiring plaintiffs to prove in a reasonable manner the link

25  between the injury suffered and the *illegal* practices of the defendant").

26  These legal requirements for competent evidence of damages are consistent with *Comcast*,

27  where the Supreme Court held that even at the class certification phase, "any model supporting a

28  'plaintiff's damages case must be consistent with its liability case, particularly with respect to the

10

DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT
BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

1    alleged anticompetitive effect of the violation.'"  *Comcast*, 133 S. Ct. at 1433 (citing ABA Section

2    of Antitrust Law, Proving Antitrust Damages: Legal and Economic Issues 57, 62 (2d ed. 2010)).

3    As explained in *Comcast*, antitrust plaintiffs may not rely upon an expert's damages model unless

4    the plaintiffs have "'tie[d] each [actionable] theory of antitrust impact' to a calculation of damages."

5    133 S. Ct. at 1433.  In that case, an expert damages study was held to be legally insufficient because

6    it mixed together damages based on liability theories that plaintiffs were not pursuing with the one

7    liability theory that was being pursued.  *Id.*  The failure to segregate valid liability theories from

8    invalid ones in the damages model rendered the entire study speculative and unreliable.  It is thus

9    well established that where there is no "competent evidence from which a jury could fairly estimate

10   damages," defendants are entitled to summary judgment.  *Vernon*, 955 F.2d at 1372-73 (affirming

11   grant of summary judgment and finding "no proper proof of damages").

12                                              **ARGUMENT**

13   **I.    THE FTAIA INDISPUTABLY ESTABLISHES THAT SOME OF THE DAMAGES**
         **INEXTRICABLY LUMPED TOGETHER BY PLAINTIFFS' EXPERTS ARE NOT**
14       **ACTIONABLE AS A MATTER OF LAW**

15          As shown above, it is undisputed by Plaintiffs' experts that their damages studies do not

16   distinguish, or provide any basis for distinguishing, between damages attributable to the importation

17   or sale by Defendants of CRTs in the United States and the sales by Defendants of CRTs overseas.

18   As a result, it is clear, as a matter of law, that some unidentified portion of these overseas sales,

19   which were made to third parties but then imported as finished products by the third parties into the

20   United States, would not meet the requirements of the FTAIA.  15 U.S.C. § 6a (the Sherman Act

21   "shall not apply to conduct involving trade or commerce (other than import trade or import

22   commerce) with foreign nations unless . . . such conduct has a direct, substantial, and reasonably

23   foreseeable effect" on United States markets).

24          The FTAIA establishes a two-step test for determining whether a defendant's foreign

25   conduct falls within the scope of U.S. antitrust laws.  First, the threshold inquiry is whether the

26   defendant's foreign conduct involves U.S. "import trade or import commerce."  If so, the conduct

27   falls within the scope of U.S. antitrust laws.  If not, the conduct falls outside the scope of our laws

28   *unless* it satisfies both prongs of the FTAIA's "domestic effects" exception, *i.e.*, (1) the foreign

                                                     11

conduct has a "direct, substantial, and reasonably foreseeable effect" on U.S. domestic or import commerce, or on the export commerce of a U.S.-based exporter; and (2) that effect "gives rise to" the plaintiff's claim. *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004) ("*Empagran I*"); 15 U.S.C. §§ 6a(1), (2). There can be no debate that when plaintiffs assert claims based on CRT sales by a foreign defendant to a foreign third-party which subsequently imports a product into the United States, the FTAIA's domestic effects test applies on its face. *See, e.g.*, *Sun Microsystems, Inc. v. Hynix Semiconductor, Inc.*, No. C 06-1665 PJH, 2007 WL 1056783 (N.D. Cal. Apr. 5, 2007) (the FTAIA's application is triggered by allegations of foreign "conduct," and is primarily meant to redress "wholly foreign transactions"); *see also Empagran I*, 542 U.S. at 155 (noting that "the House Judiciary Committee changed the bill's original language from "export trade or export commerce," H.R. 5235, to "trade or commerce (other than import trade or import commerce)" deliberately to include commerce that did not involve American exports but was wholly foreign").

The Ninth Circuit has recently held that the FTAIA is not jurisdictional in nature, but "provides substantive elements under the Sherman Act in cases involving nonimport trade with foreign nations." *United States v. Hui Hsiung*, 758 F.3d 1074, 1088 (9th Cir. 2014); *see also id.* at 1092 (rejecting argument that FTAIA is an "affirmative defense"); *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403-08 (2d Cir. 2014); *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462 (3d Cir. 2011). Plaintiffs thus bear the burden of proof to establish that all of their damages claims based on foreign sales of CRTs qualify for the domestic effects exception. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (noting that when the moving party has carried its burden under Rule 56(c), "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*'").

In this regard, the FTAIA has been held to bar antitrust actions alleging restraints in foreign markets for inputs that are used abroad to manufacture downstream products that are later imported into the United States unless there is evidence to establish that the "domestic effects" test has been met. *See United Phosphorus, Ltd. v. Angus Chem. Co.*, 131 F. Supp. 2d 1003, 1014 (N.D. Ill. 2001) (noting that the domestic effects, if any, of such inputs "would obviously not be 'direct,' much less

12

DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT
BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

1    'substantial' and 'reasonably foreseeable.'"); *In re Intel Corp. Microprocessor Antitrust Litig.*, 476

2    F. Supp. 2d 452, 456 (D. Del. 2007).  And, as the Ninth Circuit recently affirmed in *Hui Hsiung*, an

3    effect on domestic commerce from overseas conduct is "direct" only if it follows as an "immediate

4    consequence" of defendants' activity; an effect on domestic commerce that depends on "uncertain

5    intervening developments" cannot be direct by definition.  *Hui Hsiung*, 758 F.3d at 1094 (quoting

6    *United States v. LSL Biotechs.*, 379 F.3d 672, 680-81 (9th Cir. 2004)).

7    　　　Plaintiffs are likely to rely on a decision in the *LCD* indirect purchaser case in which the

8    court noted the Ninth Circuit's literal definition of "direct effect" under the FTAIA as an

9    "immediate consequence," but nonetheless held that an indirect U.S. purchase of a foreign-sold

10   component satisfied that test.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI,

11   MDL. No. 1827, 2011 WL 4634031, at *10 (N.D. Cal. Oct. 5, 2011).[5]  That decision predated the

12   Second and Seventh Circuit's restrictive interpretation of the Ninth Circuit test as specifically

13   precluding claims based on such indirect purchases.[6]   Moreover, the *LCD* court's holding is

14   _____

15   [5] Further, the Western District of Washington's recent decision *Costco Wholesale Corp. v. AU
     Optronics Corp.* is not binding on this Court, nor is it relevant to this motion.  No. C13-1207RAJ,

16   2014 WL 4718358 (W.D. Wash. Sept. 22, 2014).  The *Costco* court's decision denying summary
     judgment turned not on its interpretation of the FTAIA, but rather on whether Panasonic, a non-

17   defendant in the case, was a co-conspirator, an intensely disputed issue among the parties.  *Id.* at *3
     ("If the jury finds that Panasonic was a conspirator, then the jury can conclude that the FTAIA does

18   not apply because Panasonic's sales of finished products to Costco were import trade.").  The
     court's subsequent speculative and superfluous interpretation of the FTAIA was not the basis for

19   denying Defendants' motion and should not be followed here.  *Id.* at *4 (hypothesizing "how the
     FTAIA would apply (or not) to Costco's Panasonic purchases if the jury were to conclude that

20   Panasonic did not conspire with Defendants").  Indeed, even before delving into the disputed issues
     of fact, the court recognized that defendants' failure to bring their motion before the MDL court

21   was reason enough to deny the motion.  *Id.* at *3 ("even if the court were to disregard Defendants'

22   evasion of the MDL court . . . disputed facts would nonetheless prevent summary judgment").

23   [6] *See Lotes*, 753 F.3d at 412-13 (Ninth Circuit's "'immediate consequence' standard focuses
     narrowly on a single factor – the spatial and temporal separation between the defendant's conduct

24   and the relevant effect.  Herein lies the error of the decision below, which placed near-dispositive
     weight on the fact that USB 3.0 connectors are manufactured and assembled into finished computer

25   products 'in China' before being sold in the United States."); *Minn-Chem, Inc. v. Agrium, Inc.*, 683

26   F.3d 845, 857 (7th Cir. 2012) (noting "stricter" nature of Ninth Circuit test).  The meaning of
     "direct effect" under the FTAIA was also addressed recently in *Motorola Mobility LLC v. AU

27   Optronics Corp.*, 746 F.3d 842 (7th Cir. 2014), *reh'g granted and opinion vacated* (July 1, 2014), in
     which the court held that such indirect purchases could not satisfy *either* prong of the FTAIA.

28   However, soon after the opinion was issued, the Seventh Circuit vacated the opinion and set the

                                                      13

1    contrary to the more persuasive reasoning in *In re Static Random Access Memory (SRAM) Antitrust*

2    *Litig.*, another recent MDL litigated in this district, in which the court held that the plaintiffs could

3    only satisfy the FTAIA's "domestic effect" exception in an indirect purchase context by making a

4    detailed factual showing—which Plaintiffs have not come close to even attempting in this case.

5    No. 07-md-01819 CW, 2010 WL 5477313, at *7 (N.D. Cal. Dec. 31, 2010) ("*SRAM*") (domestic

6    effect exception only applies in indirect purchase scenario if it can be proved "that Defendants

7    produced certain types of SRAM products specifically designed to be sold to a particular

8    manufacturer, to be incorporated into a product in turn specifically designed for the United States

9    market, and actually sold in the United States. . . . IP Plaintiffs' evidence is thus far insufficient to

10   prove that all or any particular subset of SRAM sold abroad and then imported would meet this

11   test").

12          Perhaps most importantly for purposes of this motion, the *SRAM* court specifically required

13   the plaintiffs to "segregate" their damages claims based on foreign commerce from their damages

14   claims based on domestic commerce—*i.e.*, exactly what Plaintiffs have failed to do here.  *See id.* at

15   *8 ("If IP Plaintiffs are unable to present sufficient evidence of this nature, and are unable to

16   segregate foreign from domestic transactions, all of their damage claims would fail.  Accordingly,

17   they would be well-advised to be prepared to segregate the claims.").

18          Moreover, even if Plaintiffs could establish that the *simplest* version of an indirect purchase

19   scenario—*i.e.*, a component is sold to a foreign purchaser, who then immediately resells it as a

20   finished product in the United States—satisfies the FTAIA, it would still be indisputable that more

21   complicated or attenuated versions of that scenario are beyond the scope of U.S. antitrust laws.  For

22   example, Plaintiffs have not disavowed claims based on U.S. purchases of finished products where

23   the underlying CRT was sold *multiple* times in foreign commerce—*e.g.*, from a CRT manufacturer

24   to a distributor, from a distributor to a contract manufacturer, and from a contract manufacturer to

25   an OEM—before ever reaching the United States.  *See, e.g.*, Stewart Decl. Ex. 6, Frankel Tr. 210:6-

26   212:3.  There is no plausible argument that such an attenuated scenario would meet the Ninth

27
28   _____
     case for rehearing.  Order, *Motorola Mobility LLC v. AU Optronics Corp.*, No. 14–8003 (7th Cir.
     July 1, 2014).

1   Circuit's narrowly defined FTAIA "domestic effects" test, yet such sales are included

2   indiscriminately in Plaintiffs' damages analysis.

3        In this regard, a debate over the precise contours of the "domestic effects" test is of no help

4   to Plaintiffs here.  The issue on this motion is not whether some of Defendants' overseas CRTs

5   sales might meet the FTAIA test or even what specific percentage of such sales would meet that

6   test.[7]  Rather, the issue on this motion is that Plaintiffs and their experts have made "no effort" to

7   distinguish between different overseas sales by Defendants and it cannot be disputed that at least

8   some portion of those overseas sales by Defendants would not meet the FTAIA test.

9        This, in short, is the fatal problem for Plaintiffs.  They have the burden of proof to show that

10  *all* of their damages claims satisfy FTAIA requirements and they have simply done nothing to even

11  attempt to identify which portion of their lumped together damages studies meet FTAIA

12  requirements and which ones do not.  This failure, by itself, requires that summary judgment be

13  granted against all of Plaintiffs' unreliable and legally defective damages evidence.

14  **II.     THERE IS NO COMPETENT EVIDENCE FROM WHICH A JURY COULD
         REASONABLY DETERMINE WHICH PORTION OF PLAINTIFFS' DAMAGES**
15  **      EVIDENCE MEETS FTAIA REQUIREMENTS AND WHICH PORTION DOES
         NOT**
16

17        As established above, there is at least *some* portion of Defendants' foreign CRT sales that

18  must be excluded under *any* application of the FTAIA.  Yet, there is not a shred of evidence offered

19  by any of these experts, or Plaintiffs, to identify which of Defendants' CRT sales used in the

20  experts' analyses were to third parties whose subsequent resale of products and importation into the

21  United States could not possibly satisfy the "domestic effects" test of the FTAIA.  ███████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████

27  _____

28  [7] That question is the subject of another motion.  *See* Defendants' Motion for Summary Judgment
    on Plaintiffs' Indirect Claims Based on Foreign Sales, Nov. 7, 2014 ("Foreign Sales Motion").

1 ████████████████████████████████████

2     This is not surprising, as the undisputed facts indicate that Plaintiffs' experts did nothing to

3 distinguish (or even try to separate out) any damages attributable to tubes sold in foreign versus

4 U.S. markets, and have instead lumped all finished product purchases together regardless of where

5 the tubes were sold. ████████████████████████████████

6 ████████████████████████████████████████

7 ████████████████████████████████████████

8 ████████████████████████████████████████

9 ████████████████████████████████████████

10 ████████████████████████████████████████

11 ████████████████████████████████████████

12 ████████████████████████████████████████

13 ████████████████████████████████████████

14 ██████████

15     Whether this choice to lump together all of Defendants' global CRT sales in the various

16 damages analyses of Plaintiffs was made based on instructions from counsel or simply because,

17 like Dr. Netz, Plaintiffs' other experts decided that the task could not be done, the decision not to

18 distinguish between an actionable and non-actionable theory of legal liability is fatal.[8]  Either way,

19 Plaintiffs have set forth no evidence purporting to show which damages are attributable to

20 Plaintiffs' claims based on U.S. sales or sales qualifying for the import exception,[9] as opposed to

21 ████████████████████████

22 ████████████████████████████████████████

23 ████████████████████████████████████████

24 ████████████████████████

25 [9] It is well-established in this district that only products imported by defendants, not third parties,

26 can qualify for the " import exception" to the FTAIA.  *Turicentro, S.A. v. Am. Airlines, Inc.*, 303 F.3d 293, 305 n.13 (3d Cir. 2002) ("[T]he analysis of the 'trade or commerce . . . with foreign nations' prong focuses exclusively on defendants' conduct."); *In re TFT-LCD (Flat Panel) Antitrust

27 Litig.*, No. C 09-5840 SI, 2010 WL 2610641, at *5 (N.D. Cal. June 28, 2010) (the FTAIA's so-called "import exclusion" applies only where the defendant itself imported the price-fixed goods

28 into the United States).  *See also* Defs.' Foreign Sales Motion at Section V.B.1, Nov. 7, 2014.

1  those based on foreign sales that are not subject to the Sherman Act *unless* the FTAIA's domestic
2  effects exception is met.

3      This failure renders it impossible for Plaintiffs to satisfy their burden at summary judgment
4  to present "competent evidence from which a jury could fairly estimate damages." *McGlinchy*, 845
5  F.2d at 808.  A jury cannot fairly estimate damages where Plaintiffs have lumped together all global
6  sales of CRTs despite the fact that all global CRT sales will, as a matter of law, not be capable of
7  meeting the "domestic effect" requirements of the FTAIA.  *See Vernon*, 955 F.2d at 1372 (summary
8  judgment granted where damages study "failed to segregate the losses, if any, caused by acts which
9  were not antitrust violations from those that were").

10      Ironically, it was Dr. McClave who made this same type of fatal error in *Comcast*.  There,
11 Dr. McClave sought to establish damages based on a "but for" price that he calculated under the
12 assumption that each of four of Plaintiffs' theories of antitrust impact in that case were valid.
13 *Comcast*, 133 S. Ct. at 1431-35.  He thus "expressly admitted that the model calculated damages
14 resulting from 'the alleged anticompetitive conduct as a whole' and did not attribute damages to
15 any one particular theory of anticompetitive impact." *Id.*  The Supreme Court held the model to be
16 legally invalid because it failed to "isolate damages resulting from any one theory of antitrust
17 impact," and the plaintiffs were, in fact, not pursuing damages based on all of these theories,
18 resulting in a damages calculation that was speculative and consequently, could not be presented to
19 a jury.  *Comcast*, 133 S. Ct. at 1431, 1433 (citing Federal Judicial Center, Reference Manual on
20 Scientific Evidence 432 (3d ed. 2011)).  That is the exact same legal defect that Plaintiffs' experts,
21 including Dr. McClave, face here—their damages study does not distinguish between those
22 damages attributable to a valid legal theory—either import commerce or overseas sales of CRTs
23 that meet the "domestic effects" test—and those attributable to an invalid theory:  overseas CRT
24 sales to third parties that cannot possibly meet FTAIA requirements.

25      Finally, it is no answer for Plaintiffs' experts to state that, if required by the court, they will
26 try to segregate their damages between actionable and non-actionable overseas sales at trial.  It is
27 Plaintiffs' burden now at summary judgment to present a competent damages model that is tied
28 exclusively to an actionable claim.  *See, e.g.*, *In re Indep. Serv. Orgs. Antitrust Litig.*, 85 F. Supp.

17

2d 1130, 1153-57 (D. Kan. 2000) (granting summary judgment where plaintiff failed to disaggregate damages and denying plaintiff opportunity to revise damages calculation at a subsequent time); *Intimate Bookshop v. Barnes & Noble, Inc.*, No. 98 Civ. 5564, 2003 WL 22251312, at *7-8 (S.D.N.Y. Sept. 30, 2003) (granting summary judgment where evidence attempting to prove damages caused by violation of antitrust laws was insufficient and speculative).

### III.   THE FTAIA DOOMS PLAINTIFFS' DAMAGES EVIDENCE FOR BOTH FEDERAL AND STATE LAW CLAIMS

The FTAIA also prevents Plaintiffs from invoking state law to regulate foreign commerce that federal law cannot reach.  The Supremacy Clause elevates federal law in areas of foreign commerce and the Commerce Clause limits state law in the same arena.  Even aside from these Constitutional commands, the principle of prescriptive comity requires state laws to be interpreted to avoid interfering with the laws of foreign sovereigns.  Furthermore, the state laws on which IPPs base their claims model themselves upon federal antitrust law, which of course includes the FTAIA.  *First*, the Commerce Clause gives Congress the sole and exclusive power "[t]o regulate commerce with foreign nations . . . ."  U.S. Const. Art. I, § 8, cl. 3.  Foreign commerce is "preeminently a matter of national concern."  *Japan Line, Ltd. v. County of L.A.*, 441 U.S. 434, 448 (1979).  State laws "prevent[ing] the Federal Government from speaking with one voice" in such matters are unconstitutional because they are "inconsistent with Congress'[s] power to 'regulate Commerce with foreign Nations.'"  *Id.* at 453-54; *see also Buttfield v. Stanahan*, 192 U.S. 470, 492-93 (1904) (recognizing the "exclusive and absolute" power of Congress over foreign commerce); *Bowman v. Chicago & N.W. Ry. Co.*, 125 U.S. 465, 482 (1888) ("The organization of our state and federal system of government is such that people of the several states can have no relations with foreign powers in respect to commerce, or any other subject, except through the government of the United States, and its laws and treaties.").

The FTAIA deliberately excluded certain conduct from the reach of U.S. antitrust laws. *Empagran I*, 542 U.S. at 158.  This deliberate calculation cannot be contravened by state legislation. *See Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 68-69 (1st Cir. 1999) (Massachusetts "anti-Burma" law violated, *inter alia*, Commerce Clause, by undermining need for U.S. to speak

18

DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT
BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

1   with one voice with respect to commerce with Myanmar), *aff'd on other grounds sub nom. Crosby*

2   *v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000); *Gerling Global Reinsurance Corp. of Am. v.*

3   *Quackenbush*, No. Civ. S-00-0506WBSJFM, 2000 WL 777978, at *12 (E.D. Cal. June 9, 2000)

4   (state law requiring disclosure of insurance claims sold to Europeans prior to World War II

5   prevented U.S. from speaking with one voice on compensating Holocaust victims), *aff'd on other*

6   *grounds sub. nom. American Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003); *Flood v. Kuhn*, 407

7   U.S. 258, 284 (1972) (dismissing state antitrust claims because "state antitrust regulation would

8   conflict with federal policy" and because of the need for national uniformity in the regulation of

9   baseball).

10          *Second*, the Supremacy Clause also prohibits the application of state laws that "stand[] as an

11   obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

12   *Crosby*, 530 U.S. at 373; *see also Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1941) (state laws should

13   not be allowed to interfere with federal laws "which concern the exterior relation of this whole

14   nation with other nations and governments").  The FTAIA's foundational purpose was to "more

15   clearly establish when antitrust liability attaches to international business activities" by articulating

16   "the precise legal standard to be employed in determining whether American antitrust law is to be

17   applied to a particular transaction."  *Den Norske Stats Oljeselskap A.S. v. HeereMac VOF*, 241 F.3d

18   420, 428 (5th Cir. 2001) (quoting H.R. Rep. No. 97-686, at 5, 8).  The FTAIA's enactment of a

19   "single, objective test" for determining the geographical scope of American antitrust laws, H.R.

20   Rep. No. 97-686, further serves to avoid "interference with other nations' prerogative to safeguard

21   their own citizens from anti-competitive activity within their own borders."  *Empagran S.A. v. F.*

22   *Hoffmann-LaRoche, Ltd. ("Empagran II")*, 417 F.3d 1267, 1271 (D.C. Cir. 2005).  These purposes

23   require the FTAIA to be interpreted as precluding American courts from entertaining antitrust

24   claims based on foreign injury "*across the board*," *Empagran I*, 542 U.S. at 168-69, regardless of

25   whether a plaintiff elects to bring such claims under federal or state antitrust laws.  *See, e.g.*, *Intell*,

26   476 F. Supp. 2d at 457 ("Congress' intent [in enacting the FTAIA] would be subverted if state

27   antitrust laws were interpreted to reach conduct which the federal law could not.");  *In re Potash*

28   *Antitrust Litig.*, 667 F. Supp. 907, 927 (N.D. Ill. 2009) ("[T]here could potentially be conflict

19

1    with certain constitutional provisions if state antitrust laws reached foreign commercial activity that

2    [the FTAIA] did not.").

3         *Finally*, in each of the states at issue, the legislature has passed a "harmonization statute" or

4    the courts have decided that the state antitrust laws should be interpreted in accordance with federal

5    antitrust laws.[10]   Those state law claims must therefore be interpreted in accordance with the

6    requirements of the FTAIA.   *See, e.g.*, *Intel*, 476 F. Supp. 2d at 457; *CSR Ltd. v. CIGNA Corp.*,

7    405 F. Supp. 2d 526, 552 (D.N.J. 2005) (state law antitrust claims were barred both under the

8    harmonization provision for New Jersey's antitrust law and under decisional law); *'In' Porters, S.A.*

9    *v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 n.8 (M.D.N.C. 1987) (noting "the anamoly [sic]

10   that would be created if [North Carolina's Unfair Trade Practices Act] were construed to have a

11   greater extraterritorial reach than the Sherman Act").

12        For all of these reasons, the FTAIA bars Plaintiffs' state law claims based on foreign

13   conduct to the same extent as Plaintiffs' federal law claims.

14                                      **CONCLUSION**

15        For all of the foregoing reasons, it is undisputed that Plaintiffs' damages models lump

16   together all of Defendants' sales of CRTs—whether foreign or domestic—without distinction and

17   regardless of whether and which of Defendants' overseas CRT sales meet the requirements of the

18   FTAIA.   The result is that Plaintiffs have failed to meet their burden of proof on damages and

19   summary judgment should be granted against all of their damages claims.

20

21   DATED:  November 7, 2014                   WINSTON & STRAWN LLP

22                                              By: /s/ *Jeffrey L. Kessler*
                                                JEFFREY L. KESSLER (*pro hac vice*)
23                                              Email: JKessler@winston.com
                                                ALDO A. BADINI (SBN 257086)
24                                              Email: ABadini@winston.com
                                                EVA W. COLE (*pro hac vice*)
25                                              Email: EWCole@winston.com
                                                MOLLY M. DONOVAN
26                                              Email: MMDonovan@winston.com

27   _____
     [10]  The relevant state statutes and harmonization case law are set forth in Exhibit A to this
28   memorandum.

                                          20

JENNIFER M. STEWART
Email: Jstewart@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

STEVEN A. REISS (*pro hac vice*)
Email: steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
Email: david.yohai@weil.com
ADAM C. HEMLOCK (*pro hac vice*)
Email: adam.hemlock@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Defendants Panasonic Corporation
(f/k/a Matsushita Electric Industrial Co., Ltd.),
Panasonic Corporation of North America, MT Picture
Display Co., Ltd.*

**WHITE & CASE LLP**

By: /s/ *Lucius B. Lau*
CHRISTOPHER M. CURRAN (*pro hac vice*)
Email: ccurran@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
Email: alau@whitecase.com
DANA E. FOSTER (*pro hac vice*)
Email: defoster@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Defendants Toshiba Corporation,
Toshiba America, Inc., Toshiba America Information
Systems, Inc., Toshiba America Consumer Products,
L.L.C., and Toshiba America Electronic Components,
Inc. (with respect to all of the above-captioned cases
except for Dell Inc., et al. v. Hitachi, Ltd., et al., No.
13-cv-0271)*

BAKER BOTTS LLP

By: /s/ *John M. Taladay*
JOHN M. TALADAY (*pro hac vice*)
Email: john.taladay@bakerbotts.com
JOSEPH OSTOYICH (*pro hac vice*)
Email: joseph.ostoyich@bakerbotts.com

21

ERIK T. KOONS (*pro hac vice*)
Email: erik.koons@bakerbotts.com
CHARLES M. MALAISE (*pro hac vice*)
Email: charles.malaise@bakerbotts.com
**BAKER BOTTS LLP**
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

JON V. SWENSON (SBN 233054)
Email: jon.swenson@bakerbotts.com
**BAKER BOTTS LLP**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

*Attorneys for Defendants Koninklijke Philips N.V. and Philips Electronics North America Corporation*

MUNGER, TOLLES & OLSON LLP

By: /s/ *Hojoon Hwang*
JEROME C. ROTH (State Bar No. 159483)
jerome.roth@mto.com
HOJOON HWANG (State Bar No. 184950)
hojoon.hwang@mto.com
MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

WILLIAM D. TEMKO (SBN 098858)
William.Temko@mto.com
**MUNGER, TOLLES & OLSON LLP**
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendants LG Electronics, Inc.; LG, LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd.*

KIRKLAND & ELLIS LLP

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ *Eliot A. Adelson*
ELIOT A. ADELSON (SBN 205284)
Email: eadelson@kirkland.com
**KIRKLAND & ELLIS LLP**
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1413
Facsimile: (415) 439-1500

JAMES H. MUTCHNIK, P.C. (*pro hac vice*)
KATE WHEATON (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Tel: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendants Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display Inc.), Hitachi Asia, Ltd., Hitachi America, Ltd., and Hitachi Electronic Devices (USA), Inc.*

SHEPPARD MULLIN RICHTER & HAMPTON

By: /s/ *Gary L. Halling*
GARY L. HALLING (SBN 66087)
Email: ghalling@sheppardmullin.com
JAMES L. MCGINNIS (SBN 95788)
Email: jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH, (SBN 203524)
Email: mscarborough@sheppardmullin.com
**SHEPPARD MULLIN RICHTER & HAMPTON**
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947

*Attorneys for Defendants Samsung SDI America, Inc.; Samsung SDI Co., Ltd.; Samsung SDI (Malaysia) SDN. BHD.; Samsung SDI Mexico S.A. DE C.V.; Samsung SDI Brasil Ltda.; Shenzen Samsung SDI Co., Ltd. and Tianjin Samsung SDI Co., Ltd.*

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Rachel S. Brass*
JOEL S. SANDERS (Cal. Bar. No. 107234)
Email: jsanders@gibsondunn.com
RACHEL S. BRASS (Cal. Bar. No. 219301)
Email: rbrass@gibsondunn.com
AUSTIN V. SCHWING (Cal. Bar. No. 211696)
Email: aschwing@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**

23

DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT
BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone:     (415) 393-8200
Facsimile:     (415) 393-8306

*Attorneys for Defendants Chunghwa Picture Tubes,*
*Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn.*
*Bhd. as to Direct Action Plaintiffs Best Buy entities,*
*Target, Sears, Interbond, Office Depot, CompuCom,*
*P.C. Richards, MARTA, ABC Appliance, Schultze*
*Agency Services, and ViewSonic only*

FAEGRE BAKER DANIELS LLP

By: /s/ *Kathy L. Osborn*_____
KATHY L. OSBORN (*pro hac vice*)
Email: kathy.osborn@FaegreBD.com
RYAN M. HURLEY (*pro hac vice*)
Email: ryan.hurley@FaegreBD.com
**FAEGRE BAKER DANIELS LLP**
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000

JEFFREY S. ROBERTS (*pro hac vice*)
Email: jeff.roberts@FaegreBD.com
**FAEGRE BAKER DANIELS LLP**
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: (303) 607-3500
Facsimile: (303) 607-3600

STEPHEN M. JUDGE (*pro hac vice*)
Email: steve.judge@FaegreBd.com
**FAEGRE BAKER DANIELS LLP**
202 S. Michigan Street, Suite 1400
South Bend, IN 46601
Telephone: (574) 234-4149
Facsimile: (574) 239-1900

*Attorneys for Defendants Thomson SA and Thomson*
*Consumer Electronics, Inc.*

JENNER & BLOCK LLP

By: /s/ *Terrence J. Traux*_____

24

DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT
BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

Terrence J. Truax (*pro hac vice*)
Email: ttruax@jenner.com
Michael T. Brody (*pro hac vice*)
Email: mbrody@jenner.com
**JENNER & BLOCK LLP**
353 North Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

BRENT CASLIN (Cal. Bar. No. 198682)
Email: bcaslin@jenner.com
**JENNER & BLOCK LLP**
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

*Attorneys for Defendants Mitsubishi Electric*
*Corporation, Mitsubishi Electric US, Inc. and,*
*Mitsubishi Electric Visual Solutions America, Inc.*

FRESHFIELDS BRUCKHAUS DERINGER US LLP

By: /s/ *Michael Lacovara*
Michael Lacovara (209279)
**FRESHFIELDS BRUCKHAUS**
**DERINGER US LLP**
601 Lexington Avenue, 31st Floor
New York, NY 10022
Telephone: 212 277 4000
Facsimile: 212 277 4001
Email: michael.lacovara@freshfields.com

TERRY CALVANI (SBN 53260)
Email: terry.calvani@freshfields.com
CHRISTINE LACIAK(pro hac vice)
Email: christine.laciak@freshfields.com
RICHARD SNYDER (pro hac vice)
Email: richard.snyder@freshfields.com
**FRESHFIELDS BRUCKHAUS**
**DERINGER US LLP**
700 13th Street, NW, 10th Floor
Washington, DC  20005
Telephone: (202) 777-4565
Facsimile: (202) 777-4555

*Attorneys for Beijing-Matsushita Color CRT*

25

DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT
BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

1          *Company, Ltd.*

2
           SQUIRE PATTON BOGGS (US) LLP
3
           By: /s/ *Nathan Lane, III*
4          MARK C. DOSKER
           Email: mark.dosker@squirepb.com
5          NATHAN LANE, III
           Email: nathan.lane@squirepb.com
6          275 Battery Street, Suite 2600
           San Francisco, CA  94111
7          Telephone: (415) 954-0200
           Facsimile: (415) 393-9887
8
           DONALD A. WALL (*pro hac vice*)
9          Email: donald.wall@squirepb.com
           **SQUIRE PATTON BOGGS (US) LLP**
10         1 East Washington Street, Suite 2700
           Phoenix, Arizona 85004
11         Telephone: (602) 528-4000
           Facsimile: (602) 253-8129
12
           *Attorneys for Defendant Technologies Displays*
13         *Americas LLC with respect to all cases except Office*
           *Depot, Inc. v. Technicolor SA, et al. and Sears,*
14         *Roebuck and Co., et al. v. Technicolor SA, et al.*

15         CURTIS, MALLET-PREVOST, COLT & MOSLE
           LLP
16
           By: /s/ *Jeffrey I. Zuckerman*
17         Jeffrey I. Zuckerman (*pro hac vice*)
           Ellen Tobin (*pro hac vice*)
18         101 Park Avenue
           New York, New York 10178
19         Telephone: 212.696.6000
           Facsimile: 212.697.1559
20         Email: jzuckerman@curtis.com
           etobin@curtis.com
21
           Arthur Gaus (SBN 289560)
22         **DILLINGHAM & MURPHY, LLP**
           601 California Street, Suite 1900
23         San Francisco, California 94108
           Telephone: 415.397.2700
24         Facsimile: 415.397-3300
           Email: asg@dillinghammurphy.com
25
           *Attorneys for Defendant Technologies Displays*
26         *Americas LLC with respect to Office Depot, Inc. v.*
           *Technicolor SA, et al. and Sears, Roebuck and Co.,  et*
27         *al. v. Technicolor SA, et al.*

28
                              26

1

2

      Pursuant to Local Rule 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' JOINT NOTICE OF MOT. AND MOT. FOR SUMMARY JUDGMENT
BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917