Jon V. Swenson (SBN 233054)
BAKER BOTTS LLP
620 Hansen Way
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: jon.swenson@bakerbotts.com

John M. Taladay (*pro hac vice*)
Joseph Ostoyich (*pro hac vice*)
Erik T. Koons (*pro hac vice*)
Charles M. Malaise (*pro hac vice*)
BAKER BOTTS LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
Email: john.taladay@bakerbotts.com
Email: joseph.ostoyich@bakerbotts.com
Email: erik.koons@bakerbotts.com
Email: charles.malaise@bakerbotts.com

*Attorneys for Philips Electronics North America Corporation, Philips Taiwan Limited, and Philips do Brasil Ltda.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br>*Electrograph Sys., Inc. v. Hitachi, Ltd.*, No. 11-cv-01656;<br><br>*Electrograph Sys., Inc. v. Technicolor SA*, No. 13-cv-05724;<br><br>*Siegel v. Hitachi, Ltd.*, No. 11-cv-05502;<br><br>*Siegel v. Technicolor SA*, No. 13-cv-05261; | ) Case No. 07-5944-SC<br>)<br>) MDL No. 1917<br>)<br>) **DEFENDANTS PHILIPS ELECTRONICS**<br>) **NORTH AMERICA CORPORATION'S,**<br>) **PHILIPS TAIWAN LIMITED'S, AND**<br>) **PHILIPS DO BRASIL LTDA.'S NOTICE OF**<br>) **MOTION AND MOTION FOR PARTIAL**<br>) **SUMMARY JUDGMENT**<br>)<br>) Date:        February 6, 2015<br>) Time:        10:00 a.m.<br>) Place:       Courtroom 1, 17th Floor<br>)<br>) Hon. Samuel P. Conti<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

| | |
|---|---|
| 1 | *Best Buy Co., Inc. v. Hitachi, Ltd.,* )<br>No. 11-cv-05513; ) |
| 2 | ) |
| 3 | *Best Buy Co., Inc. v. Technicolor SA,* )<br>No. 13-cv-05264; ) |
| 4 | ) |
| 5 | *Interbond Corp. of Am. v. Hitachi, Ltd.,* )<br>No. 11-cv-06275; ) |
| 6 | ) |
| 7 | *Interbond Corp. of Am. v. Technicolor SA,* )<br>No. 13-cv-05727; ) |
| 8 | )<br>*Office Depot, Inc. v. Hitachi, Ltd.,* )<br>No. 11-cv-06276; ) |
| 9 | ) |
| 10 | *Office Depot, Inc. v. Technicolor SA,* )<br>No. 13-cv-05726; ) |
| 11 | )<br>*CompuCom Sys., Inc. v. Hitachi, Ltd.,* ) |
| 12 | No. 11-cv-06396; ) |
| 13 | *P.C. Richard & Son Long Island Corp. v.* ) |
| 14 | *Hitachi, Ltd.,* )<br>No. 12-cv-02648; ) |
| 15 | )<br>*P.C. Richard & Son Long Island Corp. v.* ) |
| 16 | *Technicolor SA,* )<br>No. 13-cv-05725; ) |
| 17 | ) |
| 18 | *Schultze Agency Servs., LLC v. Hitachi, Ltd.,* )<br>No. 12-cv-02649; ) |
| 19 | )<br>*Schultze Agency Servs., LLC v. Technicolor SA,* ) |
| 20 | No. 13-cv-05668; ) |
| 21 | *Tech Data Corp. v. Hitachi, Ltd.,* ) |
| 22 | No. 13-cv-00157; ) |
| 23 | *Dell Inc. v. Hitachi Ltd.,* )<br>No. 13-cv-02171; ) |
| 24 | ) |
| 25 | *Sears, Roebuck and Co. and Kmart Corp. v.* )<br>*Technicolor SA,* ) |
| 26 | No. 13-cv-05262 ) |
| 27 | *Sears, Roebuck and Co. and Kmart Corp. v.* )<br>*Chunghwa Picture Tubes, Ltd.,* ) |
| 28 | No. 11-cv-05514 ) |

DEFENDANTS PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, PHILIPS TAIWAN LIMITED, AND PHILIPS DO BRASIL LTDA.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (3:07-CV-05944 SC, MDL NO. 1917)

1  |  *Sharp Electronics Corp. v. Hitachi Ltd.,*  ) 
2  |  No. 13-cv-1173 SC  ) 
   |  ) 
3  |  *Sharp Electronics Corp. v. Koninklijke Philips*  ) 
   |  *Elecs., N.V.,*  ) 
4  |  No. 13-cv-2776 SC  ) 
   |  ) 
5  |  *ViewSonic Corp. v. Chunghwa Picture Tubes,*  ) 
   |  *Ltd.,*  ) 
6  |  No. 14-cv-2510 SC  ) 
   |  ) 
7  |  *All Indirect Purchaser Actions*  ) 
8  |  )

1

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................2

STATEMENT OF UNDISPUTED FACTS ........................................................................4

   I.   THE DEFENDANTS AND THEIR ROLE IN THE CRT MARKET ........................4

   II.  AFTER JUNE 2001, THERE IS NO EVIDENCE THAT PENAC, PTL,
      OR PDBL PARTICIPATED IN THE ALLEGED CONSPIRACY ...........................5

   III. AFTER JUNE 2001, PENAC, PTL, AND PDBL SOUGHT TO OBTAIN
      LOWER CRT PRICES AND WOULD ONLY HAVE BEEN INJURED
      BY AN ALLEGED CRT CONSPIRACY ..............................................................7

ARGUMENT ......................................................................................................................8

   I.   JUDGMENT SHOULD BE GRANTED IN FAVOR OF PENAC, PTL,
      AND PDBL FOR ALL PLAINTIFFS' CLAIMS FOR LIABILITY AND
      DAMAGES AFTER JUNE 2001 BECAUSE EACH OF THESE
      DEFENDANTS INDISPUTABLY WITHDREW FROM THE
      ALLEGED CONSPIRACY UPON LPD'S FORMATION ........................................9

      A.   Legal Standards For Withdrawal .............................................................. 11

      B.   PENAC, PTL, and PDBL Indisputably Withdrew From The
           Alleged Conspiracy in June 2001 .............................................................. 13

           1.   After June 2001, PENAC, PTL, and PDBL did not attend
               any meetings of the alleged conspiracy and could no longer
               allegedly benefit from the alleged conspiracy..................................... 13

           2.   After June 2001, PENAC, PTL, and PDBL were purchasers
               of CRTs and affirmatively acted to defeat the very purpose
               of the alleged conspiracy by successfully negotiating for
               lower CRT prices............................................................................... 16

           3.   After June 2001, PENAC, PTL, and PDBL would have
               been victims of the alleged conspiracy............................................... 18

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ......................................................................................................... 9

*Celotex Corp. v. Cattrett*,
    477 U.S. 317 (1986) ....................................................................................................... 8, 9

*Drug Mart Pharmacy Corp. v. American Home Prods. Corp.*,
    288 F. Supp. 2d 325 (E.D.N.Y. 2003) ............................................................................. 9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    911 F. Supp. 2d 857 (N.D. Cal. 2012) ............................................................................. 5

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
    768 F. Supp. 2d 961 (N.D. Iowa 2011) ..................................................................... 12, 13

*Kam Koon Wan v. E.E. Black, Ltd.*,
    188 F.2d 558 (9th Cir. 1951) ........................................................................................... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ......................................................................................................... 9

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999), *amended by* 211 F.3d 1224 (2000) ............ 3, 12, 13, 15, 16, 19

*N. Telecom Ltd. v. Samsung Electronics Co.*,
    C-95-449 MHP, 1996 WL 532122 (N.D. Cal. Sept. 16, 1996) .................................... 9

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
    210 F.3d 1099 (9th Cir. 2000) ......................................................................................... 9

*Smith v. United States*,
    133 S. Ct. 714 (2013) ................................................................................................ 10, 11

*Triton Energy Corp. v. Square D Co.*,
    68 F.3d 1216 (9th Cir. 1995) ........................................................................................... 9

*United States v. Granados*,
    962 F.2d 767 (8th Cir. 1992) ......................................................................................... 11

*United States v. Lothian*,
    976 F.2d 1257 (9th Cir. 1992) ....................................................... 3, 11, 14, 15, 18, 19

*United States v. Lowell*,
    649 F.2d 950 (3d Cir. 1981) ..................................................................................... 12, 15

-i-

*United States v. Loya*,
    807 F.2d 1483 (9th Cir. 1987) ................................................................................. 11

*United States v. Nerlinger*,
    862 F.2d 967 (2d Cir. 1988) ................................................................................... 15

*United States v. Nippon Pape Indus. Co.*,
    62 F. Supp. 2d 173 (D. Mass. 1999) ................................................................. 12, 18

*United States v. Steele*,
    685 F.2d 793 (3d Cir. 1982) ................................................................................... 15

*United States v. Swiss Valley Farms Co.*,
    912 F. Supp. 401 (C.D. Ill. 1995) ......................................................................... 12

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978) ............................................................... 3, 11, 12, 16, 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 ................................................................................................ 1, 9

1

## **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3   PLEASE TAKE NOTICE that on February 6, 2015, at 10:00 a.m. or as soon thereafter as this

4   matter may be heard before the Honorable Samuel P. Conti, U.S. District Court Judge, U.S. District

5   Court for the Northern District of California, Courtroom No. 1, 17th Fl., 450 Golden Gate Avenue, San

6   Francisco, California 94102, Defendants Philips Electronics North America Corporation ("PENAC"),

7   Philips Taiwan Limited (f/k/a Philips Electronics Industries (Taiwan) Ltd.) ("PTL"), and Philips do

8   Brasil Ltda. (f/k/a Philips da Amazonia Industria Electronica Ltda.) ("PDBL") (collectively, the

9   "Defendants") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 56 and

10  Local Rule of Civil Procedure 56, for an Order granting judgment in favor of PENAC, PTL, and PDBL

11  on Plaintiffs' claims for liability and damages after June 2001 because there is no issue of material fact

12  as to whether these defendants withdrew from the alleged conspiracy at that point.[1]

13  This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of

14  Points and Authorities in support thereof, the Declaration of Tiffany B. Gelott and related exhibits, the

15  pleadings and correspondence on file with the Court, and such arguments and authorities as may be

16  presented at or before the hearing.

17

18

19

20

21

22

_____

23  [1] This motion relates to all actions and Plaintiffs listed in the caption above.  Only PENAC is named as
a defendant in all of the Plaintiffs' actions.  This motion is submitted on behalf of the relevant
24  Defendants for each action.  Further, as stated in Defendant Koninklijke Philips N.V.'s ("KPNV")
concurrently filed motion for summary judgment, KPNV does not need to establish withdrawal
25  because there is no evidence that it ever joined or participated in the alleged conspiracy.  However, to
the extent KPNV's motion for summary judgment is denied, Defendants' motion for partial summary
26  judgment would also apply to KPNV and warrants the grant of partial summary judgment in favor of
KPNV as well.
27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

PENAC, PTL, and PDBL submit this memorandum of points and authorities in support of their motion for partial summary judgment.

**ISSUE TO BE DECIDED**

1.     Whether partial summary judgment should be granted in favor of PENAC, PTL, and PDBL on Plaintiffs' claims for liability and damages after June 2001—whether based on direct or joint and several liability—because there is no disputed issue of material fact regarding whether PENAC, PTL, and PDBL withdrew from the alleged conspiracy by June 2001.

**INTRODUCTION**

It is undisputed that, in June 2001, PENAC, PTL, and PDBL transferred all of their CRT manufacturing and sales operations to LG.Philips Displays B.V. ("LPD"), a joint venture of KPNV and LG Electronics Industries ("LGEI").[2]  This divestment of all CRT operations with the creation of LPD in June 2001 has major ramifications for PENAC, PTL, and PDBL, cutting off their liability for any of Plaintiffs' claims after that point.  Regardless of the accuracy of Plaintiffs' allegations that these defendants participated in the alleged conspiracy as CRT manufacturers for some period between 1995 and June 2001, there is no issue of material fact as to whether these defendants could have possibly remained members of the alleged conspiracy after the creation of LPD.  After that point, each of these defendants ceased manufacturing and selling CRTs and thus could not have continued to participate in an alleged conspiracy whose goal was to raise the price of a product they no longer manufactured or sold.  Plaintiffs have pointed to no evidence that any employee of PENAC, PTL, or PDBL participated in any meeting of the alleged CRT conspiracy after June 2001 or ever agreed to fix the price of CRTs among competitors after that time.  Nor is there any evidence that PENAC, PTL, or PDBL could have benefited in some way from the alleged conspiracy after June 2001.

---

[2] *See, e.g.*, Best Buy 1st Am. Compl. (Dkt. No. 1978, Oct. 3, 2013) ("Best Buy Compl."), ¶ 45 ("In 2001, Royal Philips transferred its CRT business to a 50/50 joint venture with Defendant LGEI, forming Defendant LGPD (n/k/a LP Displays)."). For ease of reference, Defendants have included an appendix to this motion (Appendix A), which provides a cross-reference guide between the allegations in Plaintiffs' complaints that are cited in this brief and the similar allegations made by other plaintiffs.

1    Instead, PENAC's, PTL's, and PDBL's sole connections to the CRT industry after the

2  formation of LPD were as ***purchasers*** of CRTs from LPD and other alleged conspirators for

3  incorporation into CRT products such as televisions and computer monitors ("CRT Finished

4  Products").  In this role, PENAC, PTL, and PDBL consistently fought for and obtained ***lower prices***

5  for the CRTs they purchased—acts clearly antithetical to the very purpose of the alleged conspiracy to

6  increase CRT prices.  Further, if Plaintiffs' allegations are true, then PENAC, PTL, and PDBL would

7  have been injured by the alleged conspiracy by having to pay super-competitive prices for CRTs—just

8  like any of the Plaintiffs.

9    PENAC's, PTL's, and PDBL's divestment of their CRT businesses in June 2001 and their sole

10  role as purchasers of CRTs thereafter constitute clear withdrawal from the alleged conspiracy.

11  Withdrawal can be satisfied by the "resumption of competitive behavior," "[a]ffirmative acts

12  inconsistent with the object of the conspiracy," or divesting a business and communicating to

13  competitors that you will do "nothing more to assist or participate in the price-fixing activities" of the

14  alleged conspiracy.[3]  In this case, all of these methods for establishing withdrawal are satisfied:

15  PENAC, PTL, and PDBL resumed "competitive behavior" by solely purchasing CRTs and fighting for

16  and receiving lower prices on these CRTs—"affirmative acts [clearly] inconsistent with the object of

17  the [alleged] conspiracy" to increase CRT prices.  Further, by divesting their CRT manufacturing

18  businesses, PENAC, PTL, and PDBL made clear to all of the alleged conspirators that they would do

19  "nothing more to assist or participate in the [alleged] price-fixing activities" and this message was

20  publicly pronounced—including to the alleged conspirators—in the news media and Philips' corporate

21  statements.  By these actions, PENAC, PTL, and PDBL openly withdrew from the alleged conspiracy.

22  Such an open withdrawal eliminates any liability for the alleged post-withdrawal acts of the alleged

23  conspiracy and summary judgment should be granted in favor of PENAC, PTL, and PDBL on

24  Plaintiffs' claims for liability and damages after June 2001.

25

26  [3] *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464–65 (1978), *United States v. Lothian*, 976 F.2d
    1257, 1261 (9th Cir. 1992); *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th
27  Cir. 1999), *amended by* 211 F.3d 1224 (2000).

28

**STATEMENT OF UNDISPUTED FACTS**

**I.      THE DEFENDANTS AND THEIR ROLE IN THE CRT MARKET**

1)      From March 1995 through June 2001, PENAC, PTL, and PDBL manufactured CRTs and CRT Finished Products.[4]

2)      In June 2001, KPNV and LGEI entered into a Joint Venture Agreement creating LPD.[5]

3)      As part of the Joint Venture Agreement, KPNV and LGEI agreed to transfer the entire CRT operations of their respective corporate groups to LPD. ███████████████

████████████████████████████████████████████████████

██████████████████████████████████

4)      After the divestment of their CRT operations in June 2001, PENAC, PTL, and PDBL all stopped manufacturing CRTs.[7]

5)      PENAC, PTL, and PDBL continued to manufacture and sell CRT Finished Products after the formation of LPD in June 2001. ██████████████████████

---

[4] *See, e.g.*, Best Buy Compl. ¶¶ 46–48; *see also* Appendix A.

[5] Ex. 1, Joint Venture Agreement by and between LG Electronics Inc. and Koninklijke Philips Electronics N.V. dated as of June 11, 2001, LGE0000054 ("JV Agreement").  All exhibits in this motion refer to exhibits to the accompanying Declaration of Tiffany B. Gelott.

[6] Ex. 1, JV Agreement, Art. 2; Ex. 2, Objections and Responses of Defendant Koninklijke Philips N.V. to Direct Action Plaintiffs' First Set of Requests for Admission (July 10, 2014) ("KPNV Responses to DAPs' First RFAs"), Response to Request No. 10; Ex. 3, Declaration of Franciscus Spaargaren (Apr. 10, 2014) ("Spaargaren Decl.") ¶ 11; Best Buy Compl. ¶ 45 ("In 2001, Royal Philips transferred its CRT business to a 50/50 joint venture with Defendant LGEI, forming Defendant LGPD n/k/a LP Displays."); *see also* Appendix A.

[7] *See, e.g.*, Best Buy Compl. ¶ 45; *see also* Appendix A; Ex. 4, Objections and Responses of Defendant Philips Electronics North America Corporation to Indirect Purchaser Plaintiffs' First Set of Interrogatories (September 3, 2014), p. 11, Response to Interrogatory No. 2 ("[U]pon the formation of LPD, all subsidiaries of KPNV, including PDBL, divested their CRT manufacturing, distribution, and selling assets."); Ex. 5, Objections and Responses of Defendant Philips Taiwan Limited to Indirect Purchaser Plaintiffs' First Set of Interrogatories (September 3, 2014), p. 11, Response to Interrogatory No. 2 (same for PTL); Ex. 6, Objections and Responses of Defendant Philips do Brasil, Ltda. to Indirect Purchaser Plaintiffs' First Set of Interrogatories (September 3, 2014), p. 11, Response to Interrogatory No. 2 (same for PDBL).

1 ███████████████████████████████████████████████████████████

2 ████████████████[8]

## II. AFTER JUNE 2001, THERE IS NO EVIDENCE THAT PENAC, PTL, OR PDBL PARTICIPATED IN THE ALLEGED CONSPIRACY

6) Plaintiffs allege that from March 1, 1995 through November 2007,[9] multiple CRT manufacturers conspired to fix the price of CRTs, which resulted in inflated prices for CRTs.[10]

7) Plaintiffs allege that various individuals employed by PENAC, PTL, and PDBL attended meetings of the alleged CRT conspiracy and agreed to fix prices from March 1995 through June 2001.[11]

8) █████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
███████████████████████████████████.[12]

9) After June 2001, Plaintiffs assert that LPD participated in the alleged conspiracy by attending meetings of the alleged conspiracy and allegedly agreeing to fix prices.[13]

---

[8] Ex. 7, Deposition of Roger De Moor (July 31, and August 1, 2012) ("De Moor Dep.") at 37:4–6, 41:12–17.

[9] The Sharp and Tech Data Complaints assert that the alleged conspiracy extended "through at least December 2007," but all other complaints assert that the alleged conspiracy ended in November 2007. This distinction is irrelevant for this motion.

[10] See, e.g., Best Buy Compl. ¶ 1; see also Appendix A.

[11] See, e.g., Best Buy Compl. ¶ 147; see also Appendix A.

[12] See, e.g., Ex. 8, Deposition of Chih Chun Liu (Chunghwa) (February 19–21, 2013) ("Liu Dep.") at 528:6–14 █████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
████████████████████████████ Indeed, Plaintiffs have withdrawn any allegation of a "conspiracy encompassing [CRT] Finished Products," after Special Master Legge recommended that the Court grant the Defendants' Rule 11 motion because of the lack of any evidence of such a conspiracy. In re Cathode Ray Tube (CRT) Antitrust Litig., 911 F. Supp. 2d 857, 863 (N.D. Cal. 2012); see also Stipulation and Order Concerning Pending Motions Re: Finished Products (Dkt. No. 996, Aug. 26, 2011) ("The DPPs hereby withdraw their CRT Finished Products Conspiracy Claims stated in the Direct [Consolidated Amended Complaint] . . . .").

[13] See, e.g., Best Buy Compl. ¶ 147; see also Appendix A.

10) ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
█████████████████████.14

11) ████████████████████████████████████████
████████████████████████████████████████
█████████████████████.15

12) ████████████████████████████████████████
████████████████████████████████████████████
█████████████████████.16

13)     PENAC's, PTL's, and PDBL's divestment of their CRT manufacturing and sales

operations—and the creation of LPD—was widely reported in the press as well as in KPNV's and its

subsidiaries' own press releases and public filings.17

_____

14 Ex. 8, Liu (Chunghwa) Dep. at 527:24–528:4 ████████████████████

████████████████████████████████; Ex. 9, Deposition of In Hwan Song (SDI) (Dec. 12–14, 2012) ("Song Dep.") at

391:1–7 ████████████████████████████████████████████

██████████████████████████████████); Ex. 10, Deposition of Kazuhiro

Nishimaru (Toshiba) (June 26–28, 2013) ("Nishimaru Dep.") at 520:19–23 ████████████████

████████████████████████████████████; Ex. 11, Deposition of Yasuki Yamamoto

(Toshiba) (July 1–3, 2013) ("Yamamoto Dep.") at 497:2–7 ██████████████████████████

████████████████████████████████; Ex. 12, Deposition of Masaki Sanogawaya (MTPD) (July 31–

Aug. 2, 2013) ("Sanogawaya Dep.") at 498:18–500:3.

15 Ex. 13, Deposition of Ayuma Kinoshita (MTPD) (Feb. 5–6, 2013) ("Kinoshita Dep.") at 402:6–9

(█

16 Ex. 13, Kinoshita (MTPD) Dep. at 402:18–23 █████████████████████████████

████████████████████████████████████████████████████. Ex. 14,

Deposition of Shinichi Iwamoto (MTPD) (Feb. 7–8, 2013) ("Iwamoto Dep.") at 404:3–8; Ex. 15,

Deposition of Nobuhiko Kobayashi (Hitachi) (May 15–17, 2013) ("Kobayashi Dep.") at 488:22–489:4.

17 Ex. 16, PHLP-CRT-048011; Ex. 17, PHLP-CRT-051463; Ex. 18, PHLP-CRT-051470; Ex. 19,

FOX00015812; Ex. 20, FOX00385164; Ex. 21, HDP-CRT00026035; Ex. 22, HEDUS-CRT00001609;

Ex. 23, HEDUS-CRT00152790; Ex. 24, HEDUS-CRT00167890 at 93; Ex. 25, TAEC-CRT-00069443;

(Continued...)

14) ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████.[18]

## III. AFTER JUNE 2001, PENAC, PTL, AND PDBL SOUGHT TO OBTAIN LOWER CRT PRICES AND WOULD ONLY HAVE BEEN INJURED BY AN ALLEGED CRT CONSPIRACY

15)    After the formation of LPD in June 2001, PENAC, PTL, and PDBL and other parts of the Philips Consumer Electronics product division continued to purchase CRTs as part of their manufacture and sale of CRT Finished Products.[19]

_____

(...Continued)

Ex. 26, TAEC-CRT-00073598; Koninklijke Philips Electronics N.V.'s Annual Report for the Fiscal Year Ended December 31, 2001, available at: http://www.sec.gov/Archives/edgar/data/313216/000115697302000178/0001156973-02-000178.txt; Koninklijke Philips Electronics N.V.'s Quarterly Report for the Period Ending June 20, 2001, available at: http://www.sec.gov/Archives/edgar/data/313216/000089183601500194/0000891836-01-500194.txt; Koninklijke Philips Electronics N.V.'s Annual Report for the Fiscal Year Ended December 31, 2000, available at: http://www.sec.gov/Archives/edgar/data/313216/000095012301501898/0000950123-01-501898.txt; Koninklijke Philips Electronics N.V.'s Quarterly Report for the Period Ending March 31, 2001, available at: http://www.sec.gov/Archives/edgar/data/313216/000089183601500033/0000891836-01-500033.txt.

[18] Ex. 9, Song Dep. at 388:13–18 (████████████████████████████████████████ ███████████████████████████████████████████████████ Ex. 11, Yamamoto Dep. at 496:11–17 (███████████████████████ ███████████████████████████████████████████████████████ ████████████████████████ Ex. 15, Kobayashi Dep. at 488:14–20 (██████ ███████████████████████ Ex. 27, LG.Philips Displays Holding B.V. US $2,000,000,000 Senior Term Loan and Revolving Credit Facility Confidential Information Memorandum (May 2001) ("Information Memorandum"), T00019542, at 589 ████████████████████████████████████████ ████; *id.* at 609 ████████████████████████ *see also supra* n. 17.

[19] Ex. 7, De Moor Dep. at 37:4–6, 41:12–17; Ex. 28, Deposition of Patrick Canavan (Jan. 30-31, 2014) at 73:14–74:3 ████████████████████████████████ █████████████████████████████████████████████████████ █████████████████████).



16)

.20

17)

.21

**ARGUMENT**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file show, together with the affidavits, if any, that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Id.* at 323.  To carry its burden on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to a material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

---

20 Ex. 29, Deposition of Jan de Lombaerde (Oct. 9, 2014) ("Lombaerde Oct. 9 Dep.") at 49:14-50:5 (                                              ); *id.* at 101:9-15                          ; *id.* at 139:12-141:8                                              ).

21 *See, e.g., id.*; Ex. 29, Lombaerde Oct. 9 Dep. at 41:3-18 (                                              ; *id.* at 111:24-112:10 (                                              Ex. 30, PHLP-CRT-033780; Ex. 31, JLJ-00001890; Ex. 32, PHLP-CRT-012618; Ex. 33, PHLP-CRT-026877; Ex. 34, Deposition of Wiebo Vaartjes (Dec. 18–19, 2013) ("Vaartjes Dep.") at 96:20–97:13, 370:4–6.

1   U.S. 574, 586 (1986).  The party opposing summary judgment, however, cannot defeat summary

2   judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts."

3   *Id.*; *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere

4   existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."

5   (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986))).

6          PENAC, PTL, and PDBL seek partial summary judgment on Plaintiffs' claims for liability and

7   damages after June 2001 because each of these companies necessarily withdrew from the alleged

8   conspiracy at that time.  While withdrawal is an affirmative defense, summary judgment should be

9   granted on such a defense where there exists "no genuine issue as to any material fact."  *Kam Koon*

10  *Wan v. E.E. Black, Ltd.*, 188 F.2d 558, 562 (9th Cir. 1951) (citing Fed. R. Civ. P. 56(c)); *see also* Fed.

11  R. Civ. P. 56(a) (allowing summary judgment on any "claim or defense").  Thus, summary judgment

12  on withdrawal is appropriate where the defendant can "show that the undisputed facts establish every

13  element of the . . . defense."  *See N. Telecom Ltd. v. Samsung Electronics Co.*, C-95-449 MHP, 1996

14  WL 532122, at *4 (N.D. Cal. Sept. 16, 1996); *Drug Mart Pharmacy Corp. v. American Home Prods.*

15  *Corp.*, 288 F. Supp. 2d 325 (E.D.N.Y. 2003) (granting summary judgment based on affirmative

16  defense of withdrawal).

17         Applying these standards, partial summary judgment should be granted in favor of PENAC,

18  PTL, and PDBL on Plaintiffs' claims for liability and damages arising after the divestment of these

19  companies' CRT operations to LPD in June 2001 because there is no issue of material fact as to

20  whether these defendants withdrew from the alleged conspiracy upon the formation of LPD.

21  **I.      JUDGMENT SHOULD BE GRANTED IN FAVOR OF PENAC, PTL, AND PDBL FOR
           ALL PLAINTIFFS' CLAIMS FOR LIABILITY AND DAMAGES AFTER JUNE 2001
22         BECAUSE EACH OF THESE DEFENDANTS INDISPUTABLY WITHDREW FROM
           THE ALLEGED CONSPIRACY UPON LPD'S FORMATION.**

23         There is no issue of material fact as to whether PENAC, PTL, or PDBL had any involvement in

24  the alleged conspiracy after the creation of LPD.  There is no evidence after June 2001 that any of

25  these defendants attended meetings of the alleged conspiracy or that they communicated with the

26  alleged members of the alleged conspiracy for the purpose of fixing CRT prices among competitors.

27  The reason is simple: these defendants were no longer competitors in the manufacture and sale of

28

1  CRTs and thus could not reach agreements on the price of a product they did not sell.  Instead, these

2  defendants' role in the CRT market after the creation of LPD was only as purchasers of CRTs.  In this

3  role, PENAC, PTL, PDBL, and other KPNV subsidiaries successfully sought to *decrease* the price of

4  CRTs that they purchased and would have been just as much victims of the alleged conspiracy as any

5  of the Plaintiffs because—based on Plaintiffs' allegations—these companies would have paid super-

6  competitive prices for CRTs.

7         This departure from the CRT manufacturing business and the resumption of competitive

8  behavior—indeed, taking actions directly adverse to the alleged conspiracy's purpose—was

9  communicated to the other members of the alleged cartel, and indeed the public at large and

10  constituted an open and notorious withdrawal by these defendants from the alleged conspiracy.  SOF

11  ¶¶ 13, 14.  As the Supreme Court has recognized, such a clear withdrawal from the alleged conspiracy

12  cuts off PENAC's, PTL's, and PDBL's liability for any acts of the alleged conspiracy after June 2001.

13  *See Smith v. United States*, 133 S. Ct. 714, 719 (2013).  Therefore, partial summary judgment must be

14  granted in these defendants' favor for all of the Plaintiffs' claims for liability and damages after June

15  2001.[22]

16

17

18

19  _____

20  [22] PENAC, PTL, and PDBL recognize that the Court previously denied KPNV's and PENAC's Rule
12(b)(6) motion to dismiss the Direct Action Plaintiffs' ("DAPs") claims based on withdrawal.  *See*
21  Order Adopting in Part and Modifying in Part Special Master's Report and Recommendation on
Defendants' Motion to Dismiss the Direct Action Plaintiffs' Complaints, Dkt. No. 1856, at 32–37
22  (Aug. 21, 2013).  The record in this litigation, however, has resolved the factual issues that prevented
the Court from adopting the Special Master's recommendation to dismiss all claims on the pleadings
23  against KPNV and PENAC.  The Court noted that there were "factual disputes about Philips and LG's
stakes in LPD, the actual involvement of Philips and LG in LPD and the conspiracy, and so forth."  *Id.*
24  at 34.  At this progressed stage of the litigation, however, the record has made clear that PENAC, PTL,
and PDBL did not have any "stake" or role in LPD and could not benefit from LPD's alleged
25  involvement in the alleged conspiracy—they could only be harmed by LPD's participation.  *See infra*
pp. 15, 18–19.  Further, the record has also made clear that PENAC, PTL, and PDBL played no role in
26  the alleged conspiracy after divesting their CRT operations in June 2001.  *See infra* Section I.B.1.
Thus, partial summary judgment is appropriate based upon this advanced record.

27

28

1        **A.     Legal Standards For Withdrawal**

2        Withdrawal from a conspiracy "terminates the defendant's liability for postwithdrawal acts of

3  his co-conspirators."  *Smith*, 133 S.Ct. at 719; *see also Lothian*, 976 F.2d at 1262 ("[A] defendant

4  cannot be held liable for substantive offenses committed before joining or after withdrawing from a

5  conspiracy.").  Withdrawal from a conspiracy can be accomplished by any number of means, including

6  "disavow[al of] the unlawful goal of the conspiracy, affirmatively act[ing] to defeat the purpose of the

7  conspiracy, or tak[ing] definite, decisive, and positive steps to show . . . the defendant's disassociation

8  from the conspiracy."  *Lothian*, 976 F.2d at 1261 (quoting *United States v. Loya*, 807 F.2d 1483, 1493

9  (9th Cir. 1987) (internal quotation marks and brackets omitted)).  The Supreme Court made clear in

10 *Gypsum* that withdrawal can also be satisfied through "[a]ffirmative acts inconsistent with the object of

11 the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators."  438

12 U.S. at 464–65.[23]  Affirmative acts that are inconsistent with a conspiracy's object include the

13 "'resumption of competitive behavior . . . [which is] sufficient to communicate withdrawal or general

14 abandonment of a price-fixing conspiracy.'"  *See United States v. Nippon Pape Indus. Co.*, 62 F. Supp.

15 2d 173, 190 (D. Mass. 1999) (quoting *Gypsum*, 438 U.S. at 464–65); *see also United States v. Swiss*

16 *Valley Farms Co.*, 912 F. Supp. 401, 402 (C.D. Ill. 1995) ("resumption of competitive activity can be

17 used to show an affirmative act by Defendants to withdraw from the charged conspiracy").

18       The public divestiture of a business can constitute effective withdrawal from an alleged

19 antitrust conspiracy.  *Morton's Mkt.*, 198 F.3d at 837–39.  In *Morton's Market*, the court found as a

20 matter of law that a defendant withdrew from an alleged milk price-fixing conspiracy by selling its

21 dairy, after which it no longer sold milk and thus could not agree to fix the price of milk.  *Id.* at 837–

---

23 [23] *Accord* Ninth Circuit Pattern Jury Instructions (Criminal), Instruction No. 8.24 (2013) ("One may
24 withdraw [from a conspiracy] by doing acts which are inconsistent with the purpose of the conspiracy
   and by making reasonable efforts to tell the co-conspirators about those acts.  You may consider any
25 definite, positive step that shows that the conspirator is no longer a member of the conspiracy to be
   evidence of withdrawal."); *United States v. Granados*, 962 F.2d 767, 773 (8th Cir. 1992) (To withdraw
26 from a conspiracy, a conspirator "must take affirmative action, either making a clean breast to the
   authorities or communicating his withdrawal in a manner reasonably calculated to reach co-
27 conspirators.").

28

39.  While the court recognized that the defendant's sale was "not a disavowal of the conspiracy so much as a business decision not to produce milk anymore[,]" *id.* at 838, the court nonetheless found withdrawal because the defendant had "severed its ties" to the conspiracy and "did nothing more to assist or participate in the price-fixing activities of the other dairies." *Id.* at 839.  The court further noted that the end of the defendant's involvement was "communicated to the other dairies by the media" and thus the withdrawal was effective because the former co-conspirators knew that the defendant "would not lend its services to the conspiracy" any more.  *Id.*; *see also United States v. Lowell*, 649 F.2d 950, 955 (3d Cir. 1981) ("'[A]ffirmative action' sufficient to show withdrawal as a matter of law from the conspiracy . . . may be demonstrated by the retirement of a coconspirator from the business, severance of all ties to the business, and consequent deprivation to the remaining conspirator group of the services that constituted the retiree's contribution to the fraud."); *cf. In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 976 n.4 (N.D. Iowa 2011) (holding that pleadings were inadequate "to show that the antitrust conspiracy claim can be asserted against VS Holding, where VS Holding has divested itself of its ready-mix concrete business").

Like *Morton's Market*, the court in *Nippon Paper* found withdrawal as a matter of law.  In that case, the court granted a motion for judgment of acquittal because it found that the defendant's resumption of competitive activity constituted ample evidence of withdrawal from the alleged conspiracy.  62 F Supp. 2d at 189–90.  In *Nippon Paper*, the government charged that certain manufacturers of thermal facsimile paper had agreed to fix prices.  *Id.* at 177.  The defendant sought acquittal based in part on the argument that the defendant was no longer a member of the conspiracy as of the necessary start of the statute of limitations.  *Id.* at 189–90.  In granting the motion for acquittal, the court relied upon the fact that the defendant had conveyed to the other conspirators that it "was no longer going to coordinate any prices with other members of the conspiracy."  *Id.* at 190–91.  Instead, the defendant had resumed "competitive behavior" by engaging in "individualized, customer-by-customer price negotiations," the "mechanism by which real competition takes place."  *Id.*

Applying these standards to PENAC, PTL, PDBL, it is clear that these companies withdrew from the alleged conspiracy when they divested their CRT operations to LPD in June 2001.

**B.    PENAC, PTL, and PDBL Indisputably Withdrew From The Alleged Conspiracy In June 2001**

**1.    *After June 2001, PENAC, PTL, and PDBL did not attend any meetings of the alleged conspiracy and could no longer allegedly benefit from the alleged conspiracy.***

It is undisputed—and indeed affirmatively alleged in Plaintiffs' complaints—that all of the CRT manufacturing and sales operations previously performed by PENAC, PTL, and PDBL, and all of their CRT assets, were transferred to LPD upon that company's formation in June 2001.  SOF ¶ 3; Best Buy Compl. ¶ 45 ("In 2001, Royal Philips transferred its CRT business to a 50/50 joint venture with Defendant LGEI, forming Defendant LGPD (n/k/a LP Displays)."); *see also* Appendix A.  After June 2001, PENAC, PTL, and PDBL all stopped manufacturing CRTs.  SOF ¶ 4.  By this act of divesting the entirety of these companies' CRT businesses, PENAC, PTL, and PDBL "severed their ties" with the alleged conspiracy and thus withdrew from the alleged conspiracy once LPD was formed.  *See Morton's Market*, 198 F.3d at 839.  Just like the defendant who sold its dairy in *Morton's Market*, PENAC, PTL, and PDBL "did nothing more to assist or participate" in the alleged CRT conspiracy following the June 2001 divestiture of their CRT businesses as they no longer sold CRTs and thus could not agree to fix the price of CRTs.  *Id.* at 837–39.

Indeed, after June 2001, Plaintiffs have presented no evidence that PENAC, PTL, or PDBL employees attended any meetings of the alleged conspiracy or agreed to fix CRT prices among competitors.[24] █████████████████████████████████████████████████████████

---

[24] This lack of evidence is exposed by Plaintiffs' Supplemental Attachment A, in which Plaintiffs list the alleged meetings of the alleged conspiracy and the individuals or companies that allegedly participated in each meeting.  *See, e.g.*, Ex. 35, Objections and Responses by Plaintiffs Dell Inc. and Dell Products L.P. to Defendant KPNV's First Set of Interrogatories, Supplemental Attachment A (September 11, 2014). ████████████████████████████████████████

█████████████████████████████████████████████ *See, e.g.*, *id.* at 80 ███████████████████████████████████████████

███████████, *see* Ex. 29, Lombaerde Oct. 9 Dep. at 36:24-40:16).  Such meetings clearly cannot establish PENAC's, PTL's, or PDBL's continuing involvement in an alleged conspiracy to fix the price of CRTs.

███████████████████████████████████.  *See, e.g.*, *id.* at 66 (listing a meeting on
(Continued...)



1  ███████████████████████████████████████████████ SOF ¶¶ 10,

2  11.  Mr. Song, an SDI employee during the relevant time period, testified that ████████

3  ██████████████████████████████████████████.  Ex. 9,

4  Song Dep. at 391:1–7.  Mr. Liu of Chunghwa similarly testified that, ███████████████

5  ████████████████████████████████████████████████

6  ████████.  Ex. 8, Liu Dep. at 527:24–528:4.  Individuals employed by Toshiba and MTPD also

7  testified that, ████████████████████████████████████████

8  ████████████████████.  See Ex. 10, Nishimaru (Toshiba) Dep. at 520:19–23 (████████

9  ████████████████████████████████████████████████

10  █████████████████████████████████ Ex. 11, Yamamoto (Toshiba)

11  Dep. at 497:2–7; Ex. 12, Sanogawaya (MTPD) Dep. at 498:18–500:3.

12        This complete termination of PENAC's, PTL's, and PDBL's participation at alleged conspiracy

13  meetings constitutes "definite, decisive, and positive steps to show . . . the defendant's disassociation

14  from the conspiracy." *Lothian*, 976 F.2d at 1261.  Plaintiffs have asserted that the alleged conspiracy

15  was implemented and enforced through competitor meetings at which pricing agreements were made

16  and compliance with previous agreements was monitored and enforced.[25]  PENAC, PTL, and PDBL

17  clearly could not "assist or participate" in the alleged conspiracy if they did not attend any of the

18  alleged meetings after June 2001.  *Morton's Mkt.*, 198 F.3d at 839.  Instead, these defendants deprived

19  the remaining alleged conspirators of the "services that constituted [these defendants' alleged]

20  contribution to the [conspiracy];" they no longer attended meetings and thus could no longer enter into

21  alleged pricing agreements.  *Lowell*, 649 F.2d at 955; *see also United States v. Nerlinger*, 862 F.2d

22  967, 974 (2d Cir. 1988) (holding that the defendant's closing of a financial account used to effectuate

23  _____

24  (...Continued)

25  ████████████████████████████████████████ Ex. 36, Deposition of Kris Mortier (June 9-10, 2014) at

26  50:13–23, 249:14–251:13).

27  [25] *See, e.g.*, Best Buy Compl. ¶¶ 125, 130; *see also* Appendix A.

28

1  the conspiracy constituted effective withdrawal because it "disabled him from further participation [in

2  the conspiracy] and made that disability known to [conspirators]"); *United States v. Steele*, 685 F.2d

3  793, 803–04 (3d Cir. 1982) (holding that the defendant withdrew from bribery conspiracy when he

4  "resigned and permanently severed his employment relationship" with the conspiring company).

5      Further, it cannot be argued that PENAC, PTL, and PDBL benefited from the alleged

6  conspiracy after they divested their CRT operations in June 2001.  *See Lothian*, 976 F.2d at 1263–64

7  (finding a "prima facie showing of withdrawal" where defendant left the enterprise and received no

8  further benefit from the enterprise).  Plaintiffs have presented no evidence that PENAC, PTL, and

9  PDBL could somehow benefit from LPD's alleged participation in the alleged conspiracy.  While

10 Plaintiffs have contended that "Philips' and LG's ownership of LPD is one fact indicating they did not

11 effectively withdraw from the conspiracy,"[26] only KPNV held shares in LPD—not PENAC, PTL, or

12 PDBL.  These companies had zero ownership interest in LPD and thus could not benefit from LPD's

13 alleged participation in the alleged conspiracy.  To the contrary, as explained below, PENAC, PTL,

14 and PDBL would have been directly harmed by LPD's alleged participation.  *See infra* Section I.B.3.

15     Finally, like the defendant in Morton's Market, PENAC's, PTL's, and PDBL's "sever[ance of

16 their] ties" to the alleged conspiracy was communicated to the alleged members of the alleged

17 conspiracy.  *Morton's Mkt.*, 198 F.3d at 839; *see also Gypsum*, 438 U.S. at 464–65 (holding that

18 withdrawal can be established by "[a]ffirmative acts inconsistent with the object of the conspiracy and

19 communicated in a manner reasonably calculated to reach co-conspirators").  The divestment of

20 PENAC's, PTL's, and PDBL's CRT operations and the creation of LPD in June 2001 was widely

21 reported in the press and would have been known by all of the competitors attending meetings of the

22 alleged conspiracy.  SOF ¶¶ 13,14; *see also Morton's Mkt.*, 198 F.3d at 839 (noting that the

23 defendant's withdrawal from the dairy industry was "communicated to the other dairies by the

24 media").  ██████████████████████████████████████

25

26 [26] *See* Direct Action Plaintiffs' ("DAPs") Reply Brief in Support of Their Objections to the Special
   Master's Report and Recommendations Regarding Philips' and LG's Motion to Dismiss Certain Direct

27 Action Plaintiffs' Complaints, p. 6, n.4 (Dkt. No. 1800, July 26, 2013)).

28

1

2 ████████████████.27 ████████████████████

3 ███████████████████████████████████████████

4 ██████████████████████████████. SOF ¶¶ 13, 14. ████████████

5 ███████████████████████████████████████████████

6 ████████████ SOF ¶ 13 n.17.  Thus, the publicly reported divestment of PENAC's, PTL's, and

7 PDBL's CRT businesses effectively communicated to the alleged co-conspirators that these companies

8 would no longer be "lend[ing their] services to the [alleged] conspiracy."  *Morton's Mkt.*, 198 F.3d at

9 839.  Withdrawal is thus established as a matter of law.

10         **2.      *After June 2001, PENAC, PTL, and PDBL were purchasers of CRTs and***
           ***affirmatively acted to defeat the very purpose of the alleged conspiracy by***
11         ***successfully negotiating for lower CRT prices.***

12         Not only did PENAC, PTL, and PDBL no longer attend meetings of the alleged conspiracy

13 after LPD was formed, but their actions would have actively undermined the very purpose of the

14 alleged conspiracy: to raise the price of CRTs.  After June 2001, these defendants' only connection to

15 the CRT industry was as purchasers of CRTs through PCE divisions in each of these companies.  Thus,

16 the only discussions these defendants would have had with the alleged conspirators about the price of

17 CRTs would have been as CRT *customers*—not CRT *manufacturers* or competitors. ████████

18 ███████████████████████████████████████

19 ████████████████████████████. SOF ¶¶ 16, 17.  Jan de Lombaerde

20 testified that ████████████████████████████████

21 Ex. 29, Lombaerde Oct. 9 Dep. at 41:3–18. ██████████████████

22 ███████████████████████████████████████

23 ████████████ SOF ¶ 17.  The record is filled with examples of these demonstratively price-

24 reducing negotiations.

25 _____

26 27 Ex. 37, Q&A "From the Management Kickoff," July 4, 2001, PHLP-CRT-032285, at 307

27 ████████████████████████████████████████

28



- ████████████████████████████████
████████████████████████████████████
████████████████. Ex. 30, PHLP-CRT-033780. ████████████
████████████████████████████████████." *Id.* at
781.

- Bob O'Brien of LPD indicated ████████████████████
████████████████████████████████████
████████████████████████████████." Ex. 31,
JLJ-00001890.

- ████████████████████████████████████████
████████████████████████████████
████████████████ Ex. 32, PHLP-CRT-012618.

- ████████████████████████████████
████████████████████████ Ex. 33, PHLP-CRT-
026877 at 78.

- Wiebo Vaartjes of LPD testified ████████████████
████████████████████████████████
████████ Ex. 34, Vaartjes Dep. at 370:4–6.  Mr. Vaartjes further testified ████
████████████████████████████████████
████████████████████████████" *Id.* at 96:24–
97:2.

This demonstratively price-decreasing activity constitutes the "resumption of competitive behavior," which is "sufficient to communicate withdrawal or general abandonment of a price-fixing conspiracy." *See Nippon Paper*, 62 F. Supp. 2d at 190.  By successfully seeking to obtain lower prices for the CRTs they purchased—a goal that was directly contrary to the purported goal of the alleged conspirators to raise the price of CRTs—PENAC, PTL, and PDBL unequivocally "disavow[ed] the unlawful goal of the [alleged] conspiracy." *Lothian*, 976 F.2d at 1261.  Instead, by engaging in these

1   price-lowering negotiations, PENAC, PTL, and PDBL "affirmatively acted to defeat the purpose of the

2   conspiracy." *Id.*; *see also Gypsum*, 438 U.S. at 464–65 (holding that withdrawal can be established by

3   "[a]ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner

4   reasonably calculated to reach co-conspirators").  Further, like these entities' absence from any alleged

5   conspiracy meetings, PENAC's, PTL's, and PDBL's attempt to obtain lower CRT prices would have

6   been communicated to the alleged conspirators, especially LPD and other CRT manufacturers with

7   whom PENAC, PTL, and PDBL were negotiating.  *See Gypsum*, 438 U.S. at 464–65 (holding that

8   withdrawal can be satisfied through "[a]ffirmative acts inconsistent with the object of the conspiracy

9   and communicated in a manner reasonably calculated to reach co-conspirators").

10          **3.     After June 2001, PENAC, PTL, and PDBL would have been victims of the
                  alleged conspiracy.**

11

12          After June 2001, PENAC, PTL, and PDBL were solely purchasers of CRTs and, therefore, if

13   Plaintiffs' allegations are true, PENAC, PTL, and PDBL would have been directly harmed by the

14   alleged conspiracy.

15          As solely purchasers of CRTs after June 2001, any increase in the price of CRTs caused by the

16   alleged conspiracy would have increased the price that these defendants paid for CRTs, thereby

17   decreasing their profit margins on the sale of CRT Finished Products.  Further, because PENAC, PTL,

18   and PDBL directly purchased CRTs—not just CRT Finished Products—these companies would have

19   been more directly injured by the alleged conspiracy than were the retailer DAPs or the consumer

20   IPPs, as they would have borne the full cost of any alleged inflation in the price of CRTs, a cost that

21   they likely could not pass on to secondary purchasers.  *See* <u>Ex. 38</u>, Deposition of Jan de Lombaerde

22   (Oct. 10, 2014) ("Lombaerde Oct. 10 Dep.") at 43:3–6 (██████████████████████████████

      ████████████████████████████████████████████████████████████████████████████████

23   ██).  Thus, after June 2001, it makes no more sense to consider PENAC, PTL, and PDBL to be

24   members of the alleged conspiracy than any of the DAP Plaintiffs.  Such an absurdity was recognized

25   by the Court in holding that a CRT purchaser's participation in the alleged conspiracy is "counter-

26   indicated, since [the defendant] was a purchaser of tubes and could be adversely impacted by higher

27

28

1  tube prices." Order Adopting Special Master's Report & Recommendation re: Pls.' Motion for Further

2  Discovery from Defendant Samsung Electronics Company at 4 (Dkt. No. 1410, Oct. 18, 2012).

3      Therefore, based on the undisputed evidence in this action, withdrawal is established as a

4  matter of law. Indeed, withdrawal in this case is even more pronounced than the conduct found to

5  constitute withdrawal as a matter of law in *Morton's Market* and *Lothian*. In *Morton's Market*,

6  withdrawal was established by the mere sale of the allegedly conspiring dairy business. 198 F.3d at

7  839. In *Lothian*, withdrawal was found where the defendant resigned from the defrauding business,

8  left the region, and ceased receiving a financial benefit from the fraud. *See* 976 F.2d at 1263–64.

9  Here, however, not only did PENAC, PTL, and PDBL simply stop selling CRTs and allegedly

10 benefiting from the alleged conspiracy (as in *Morton's Market* and *Lothian*), but they actively sought

11 to lower the price they paid for CRTs and—based on Plaintiffs' allegations—would have become

12 victims of the alleged conspiracy as purchasers of CRTs. Thus, as withdrawal was found as a matter of

13 law in *Morton's Market* and *Lothian*, withdrawal should also be found as a matter of law here and

14 partial summary judgment should be granted in favor of PENAC, PTL, and PDBL on all of the

15 Plaintiffs' claims for liability and damages after June 2001.

16                                    **CONCLUSION**

17      For the foregoing reasons, the Court should enter an Order granting judgment on behalf of

18 PENAC, PTL, and PDBL on all of the Plaintiffs' claims for liability and damages after June 2001.

19

20 Dated: November 7, 2014              By:  /s/ Erik T. Koons
                                        John M. Taladay (*pro hac vice*)
21                                       Joseph Ostoyich (*pro hac vice*)
                                        Erik T. Koons (*pro hac vice*)
22                                       Charles M. Malaise (*pro hac vice*)
                                        BAKER BOTTS LLP
23                                       1299 Pennsylvania Ave., N.W.
                                        Washington, DC 20004-2400
24                                       Telephone: (202) 639-7700
                                        Facsimile: (202) 639-7890
25                                       Email: john.taladay@bakerbotts.com
                                        Email: joseph.ostoyich@bakerbotts.com
26                                       Email: erik.koons@bakerbotts.com
                                        Email: charles.malaise@bakerbotts.com
27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jon V. Swenson (SBN 233054)
BAKER BOTTS LLP
620 Hansen Way
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: jon.swenson@bakerbotts.com

*Attorneys for Defendants Philips Electronics North America Corporation, Philips Taiwan Limited, and Philips do Brasil Ltda.*

DEFENDANTS PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, PHILIPS TAIWAN LIMITED, AND PHILIPS DO BRASIL
LTDA.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (3:07-CV-05944 SC, MDL NO. 1917)