Jon V. Swenson (SBN 233054)
BAKER BOTTS LLP
620 Hansen Way
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: jon.swenson@bakerbotts.com

John M. Taladay (*pro hac vice*)
Joseph Ostoyich (*pro hac vice*)
Erik T. Koons (*pro hac vice*)
Charles M. Malaise (*pro hac vice*)
BAKER BOTTS LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
Email: john.taladay@bakerbotts.com
Email: joseph.ostoyich@bakerbotts.com
Email: erik.koons@bakerbotts.com
Email: charles.malaise@bakerbotts.com

*Attorneys for Koninklijke Philips N.V., Philips Electronics North America Corporation, Philips Taiwan Limited, and Philips do Brasil Ltda.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*All Indirect Purchaser Actions* | ) Case No. 07-5944-SC<br>)<br>) MDL No. 1917<br>)<br>) **KONINKLIJKE PHILIPS N.V.'S, PHILIPS**<br>) **ELECTRONICS NORTH AMERICA**<br>) **CORPORATION'S, PHILIPS TAIWAN**<br>) **LIMITED'S, AND PHILIPS DO BRASIL**<br>) **LTDA.'S NOTICE OF MOTION AND**<br>) **MOTION FOR SUMMARY JUDGMENT**<br>) **AGAINST INDIRECT PURCHASER**<br>) **PLAINTIFFS WHO ARE NATURAL**<br>) **PERSONS RESIDING IN CALIFORNIA**<br>) **AND MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT**<br>)<br>) Date:          February 6, 2015<br>) Time:          10:00 a.m.<br>) Place:          Courtroom 1<br>)<br>) Hon. Samuel P. Conti |

1

**TABLE OF CONTENTS**

2    ISSUE TO BE DECIDED ............................................................................................1

3    INTRODUCTION .....................................................................................................1

4    STATEMENT OF UNDISPUTED FACTS ...............................................................3

5    ARGUMENT ...........................................................................................................5

6        I.      THE AG'S *PARENS PATRIAE* ACTION PRECLUDES THIS
                 DUPLICATIVE ACTION AS TO NATURAL CITIZENS OF
7                CALIFORNIA WHO DID NOT OPT OUT OF THE *PARENS
                 PATRIAE* ACTION. ......................................................................................5

8
                 A.      The Cartwright Act does not permit individuals to pursue
9                        private claims after declining to opt out of *parens patriae*
                         claims.......................................................................................6
10
                 B.      The Act's legislative history also supports that *parens
11                       patriae* actions and private actions are alternatives, not
                         cumulative entitlements...........................................................10
12
     CONCLUSION .......................................................................................................12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

CASES

5

*ACLU v. Deukmejian*,
6     32 Cal. 3d 440 (1982) ...........................................................................................11

7

*Celotex Corp. v. Cattrett*,
8     477 U.S. 317 (1986) ...............................................................................................5

*Clayworth v. Pfizer, Inc.*,
9     233 P.3d 1066 (Cal. 2010) ...................................................................................11

10

*In re Bellucci*
11     119 B.R. 763 (Bankr. E.D.Cal 1990) ....................................................................9

12

*Nathanson v. Hecker*,
    121 Cal. Rptr. 2d 773 (Cal. Ct. App. 2002)...........................................................9

13

*People v. Harrison*,
14     312 P.3d 88 (Cal. 2013).........................................................................................10

15

*People v. Murphy*,
16     19 P.3d 1129 (Cal. 2001).......................................................................................10

17

*Prieto v. U.S. Bank Nat'l Ass'n*,
    No. Civ S-09-901-KJM-EFB, 2011 WL 2181459 (E.D. Cal. June 03, 2011) ........8

18

*Reppert v. Marvin Lumber and Cedar Co.*,
19     359 F.3d 53 (1st Cir. 2004) ....................................................................................8

20

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
21     442 F.3d 741 (9th Cir. 2006)..................................................................................8

22

*Richardson-Merrell, Inc. v. Koller*,
    472 U.S. 424 (1985) ...............................................................................................7

23

*San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys.*,
24     568 F.3d 725 (9th Cir. 2009)..................................................................................8

25

*Sosa v. DirecTV*,
    437 F.3d 923 (9th Cir. 2006)..................................................................................9

26

STATUTES

27

Cal Bus. & Prof. Code § 16750(a) .................................................................................6

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cal Bus. & Prof. Code § 16760(a)(1) ................................................. 6

Cal Bus. & Prof. Code § 16760(b)(1) ................................................. 6

Cal. Bus. & Prof. Code § 16760(b)(2) ........................................ 2, 6, 7

Cal. Bus. & Prof. Code, § 16760(b)(3) ............................................... 7

Cartwright Act, Cal. Bus. & Prof. Code, §§ 16720 *et seq.* ............... 3, 6

**OTHER AUTHORITIES**

Assembly Office of Research, third reading analysis of Assembly Bill No. 1162 (1977–1978 Reg. Sess.) ...................................................................................... 11

Assembly Committee on Judiciary, <u>Bill Digest</u>, AB 1162 ...................... 10

Federal Rule of Civil Procedure 56 ............................................... 1, 5

House Rep. No. 94-499(I) (1975) ..................................................... 11

Local Rule of Civil Procedure 56 ...................................................... 1

-iii-

PHILIPS DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AGAINST INDIRECT PURCHASER
PLAINTIFFS WHO ARE NATURAL PERSONS RESIDING IN CALIFORNIA (3:07-CV-05944 SC, MDL NO. 1917)

1    <u>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**</u>

2    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE that on February 6, 2015 at 10:00 a.m. or as soon thereafter as this

4    matter may be heard before the Honorable Samuel P. Conti, U.S. District Court Judge, U.S. District

5    Court for the Northern District of California, Courtroom No. 1, 17th Fl., 450 Golden Gate Avenue, San

6    Francisco, California 94102, Defendants Koninklijke Philips N.V. (f/k/a Koninklijke Philips

7    Electronics N.V.) ("KPNV"), Philips Electronics North America Corporation ("PENAC"), Philips

8    Taiwan Limited (f/k/a Philips Electronics Industries (Taiwan) Ltd.) ("PTL"), and Philips do Brasil

9    Ltda. (f/k/a Philips da Amazonia Industria Electronica Ltda.) ("PDBL") (collectively, the "Philips

10   defendants") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 56 and

11   Local Rule of Civil Procedure 56, for an Order Granting Summary Judgment Against Indirect

12   Purchaser Plaintiffs Who Are Natural Persons Residing In California.  This Motion is based on this

13   Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support

14   thereof and related exhibits, the pleadings and correspondence on file with the Court, and such

15   arguments and authorities as may be presented at or before the hearing.

16   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

17   The Philips defendants submit this memorandum of points and authorities in support of its

18   motion.

19
20   **ISSUE TO BE DECIDED**

21   Whether summary judgment should be granted in favor of the Philips defendants as to the

22   claims of persons who did not opt out of an action brought on their behalf by the Attorney General of

23   California as *parens patriae* asserting the same claims as those asserted here.

24
25   **INTRODUCTION**

26   Under the Cartwright Act, each resident of California is entitled to seek redress for harm

27   stemming from an antitrust violation—but each resident has only one claim that it may bring.  In this

28

-1-

PHILIPS DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AGAINST INDIRECT PURCHASER
PLAINTIFFS WHO ARE NATURAL PERSONS RESIDING IN CALIFORNIA (3:07-CV-05944 SC, MDL NO. 1917)

1    case, under plain authority granted to it by the California legislature, the California Attorney General

2    ("California AG" or "AG") has exercised this claim on behalf of all California residents as *parens*

3    *patriae* to those residents.  Residents who opt out of the AG's *parens patriae* action may bring their

4    own claim, but residents who have not opted out, which include members of the Indirect Purchaser

5    Plaintiff ("IPP") class in this case, are barred from asserting the same claim over which the California

6    AG has exercised statutory dominion.

7            The California AG sued the Philips defendants in state court concerning the exact subject

8    matter of this case, not in an enforcement capacity but rather, pursuant to California law, "as *parens*

9    *patriae* on behalf of natural persons residing in the state who are consumers that purchased CRTs or

10   CRT-containing products, or both."  The suit sought treble damages, restitution, and pre-and-post

11   judgment interest, among other things, in connection with the harm allegedly suffered by the

12   consumers.  Members of the IPP class in this action who are California natural persons were all among

13   the individuals on whose behalf the AG brought suit, and all had the opportunity to opt out of the AG's

14   action.  The California AG and the Philips defendants settled the *parens patriae* action.[1]  The

15   settlement received approval at the Superior Court of California, and the settlement is on appeal.  As

16   part of that settlement, the Philips defendants placed funds in escrow to be paid into a settlement fund,

17   and was fully released by the AG from the *parens patriae* claims.

18           This motion seeks to dismiss the California claims advanced by the IPP class against the

19   Philips defendants because those exact claims have been assumed by the California AG as *parens*

20   *patriae* to those same California residents.  Defendants respectfully request that this Court dismiss the

21   claims of members of the IPP class who are natural persons residing in California who did not opt out

22   of the AG's *parens patriae* suit.

23

24

25   ─────────────────────

26   [1] To the extent natural persons in California decided to opt out of the Attorney General's *parens*
     *patriae* settlement with PENAC pursuant to Cal. Bus. & Prof. Code § 16760(b)(2), the Philips
27   defendants do not seek the dismissal of those persons' IPP claims.

28

1

2

## STATEMENT OF UNDISPUTED FACTS

3      On December 11, 2010, IPPs filed their Third Consolidated Amended Complaint in this Court,

4  alleging the existence of a conspiracy to fix the prices of Cathode Ray Tubes ("CRTs").  *See* IPP 3d.

5  Am. Cplt [Dkt. No. 827].  Approximately one year later, the California AG, as *parens patriae* on

6  behalf of natural persons residing in the State who purchased CRTs or CRT-containing products, filed

7  a Complaint in the Superior Court of the State of California alleging the existence of the exact same

8  conspiracy to fix the prices of CRTs.  *See* Cal. Cplt, Case. No. CGC-11-515784 (Nov. 8, 2011)

9  (hereafter "Cal. Cplt") (Exhibit A to the Declaration of Tiffany B. Gelott in support of this motion

10 ("Gelott Decl.")).  This action was brought under the Cartwright Act, Cal. Bus. & Prof. Code,

11 §§ 16720 *et seq.  See id.*  The Philips defendants were not named as defendants in the original action,

12 but rather in an Amended Complaint on May 11, 2012, which named KPNV, PENAC, PTL, and

13 PDBL.  *See* Cal. Am. Cplt, Case. No. CGC-11-515786 (May 11, 2011) (hereafter "Am. Cal. Cplt")

14 ¶¶ 19, 21, 23, and 24 (Gelott Decl. Ex. B).

15     It is undisputed that the causes of action alleged in the IPP lawsuit, which now has a Fourth

16 Consolidated Amended Complaint, *see* IPP 4th. Am. Cplt [Dkt. No. 1526], are essentially identical to

17 those alleged in the California action:

18

19     •    **Same allegation.**  *See* IPP 3d. Am. Cplt, at ¶¶ 1 ("conspired to fix, raise, maintain

20          and/or stabilize prices of CRT Products sold in the United States"), 248(b) (same

21          allegation as to California Plaintiffs); IPP 4th. Am. Cplt at ¶¶ 1 ("conspired to fix, raise,

22          maintain and/or stabilize prices of CRT Products sold in the United States"), 259(b)

23          (same allegation as to California Plaintiffs); Cal. Cplt, at ¶ 97 ("raise, fix, maintain

24          and/or stabilize the prices at which [Defendants] sold CRTs to artificially inflated

25          levels"); Am. Cal. Cplt, at ¶ 105 ("raise, fix, maintain and/or stabilize the prices at

26          which [Defendants] sold CRTs to artificially inflated levels").

27

28

- • **Substantially same time period.** *See* IPP 3d. Am. Cplt, at ¶¶ 16 (relevant period from March 1, 1995 through at least November 25, 2007), 248(a) (same as to California Plaintiffs); IPP 4th. Am. Cplt, at ¶¶ 16 (relevant period from March 1, 1995 through at least November 25, 2007), 259(a) (same as to California Plaintiffs); Cal. Cplt, at ¶ 97 (March 1, 1995 through at least June 30, 2007); Am. Cal. Cplt, at ¶ 105 (March 1, 1995 through at least June 30, 2007).

- • **Identical Philips defendants.** All four of the Philips defendants named in the IPP complaint were also named in the AG's *parens patriae* action. *Compare* IPP 3d. Am. Cplt, at ¶¶ 55–59 *and* IPP 4th. Am. Cplt, at ¶¶ 54–58, *with* Am. Cal. Cplt, at ¶¶ 19–25.

- • **Same factual allegations.** *Compare* IPP 3d. Am. Cplt, at ¶¶ 111-213 *and* IPP 4th. Am. Cplt, at ¶¶ 119–224, *with* Cal. Cplt, at ¶¶ 75–161 *and* Am. Cal. Cplt, at ¶¶ 83–173.

On April 11, 2012, PENAC and the AG entered into a Settlement Agreement. *See* Settlement Agreement dated April 11, 2012 (Gelott Decl. Ex. C). The agreement, together with proposed notices of the action and settlement thereof, were filed in California Superior Court and Judge Kramer approved the notices for distribution and preliminarily approved the Settlement Agreement on June 12, 2013. *See* Order Granting Preliminary Approval of Settlement, Certifying Class, and Approving Form of Class and Parens Notices and Setting Final Fairness Hearing Date (Gelott Decl. Ex. D), at 2. The "Notice of Settlement to Individuals and Sole Proprietors in California" in the *parens patriae* action specifically notified its recipients that "if you do not exclude yourself from this settlement, you may not be able to bring a claim under California law in the federal lawsuit, and the IPPs may not be able to bring a claim under California law on your behalf in the federal lawsuit." *Id.* at 15.

The Settlement Agreement was finally approved by Judge Kramer on December 9, 2013, and is presently on appeal. Order Granting Final Approval of the Chunghwa and Philips Settlements and Awarding Attorneys' Fees (Gelott Decl. Ex. E). In his order approving the settlement, Judge Kramer

1   reaffirmed that the notices provided in the AG's action were fully compliant with the Act and with due

2   process.  *See* Gelott Decl. Ex. E at 2.  Pursuant to the Settlement Agreement, the AG as *parens patriae*

3   on behalf of California citizens fully released and covenanted not to sue the Philips defendants for any

4   and all causes of action (whether known or unknown) related to the alleged conspiracy to fix the price

5   of CRTs during the period March 1, 1995 through November 25, 2007.  *See* Gelott Decl. Ex. C at ¶¶

6   15–16.  The Settlement Agreement specifically and expressly released the Philips defendants named in

7   the IPP Complaint.  *See id.* at ¶ 1; IPP 4th. Am. Cplt at ¶¶ 54–58.  The Attorney General takes the

8   position that this settlement released those *parens patriae* claims of all natural persons in California,

9   except for those persons who have validly and timely excluded themselves pursuant to California law.

10  *See id.* at ¶ 18.

11
                                        **ARGUMENT**
12

13          Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and

14  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

15  material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v.*

16  *Cattrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  Here, summary judgment should be

17  granted because there are no facts in dispute regarding the *parens patriae* action, and as a matter of

18  law, California natural citizens who did not opt out of that action are precluded from recovering here.

19      **I.      THE AG'S *PARENS PATRIAE* ACTION PRECLUDES THIS DUPLICATIVE**

20              **ACTION AS TO NATURAL CITIZENS OF CALIFORNIA WHO DID NOT OPT**

21              **OUT OF THE *PARENS PATRIAE* ACTION.**

22          The issue presented by this motion is one of straightforward statutory application.  The

23  California legislature—in the Cartwright Act itself and in the Act's legislative history—has made plain

24  that it did not intend that individual complainants could maintain private claims after the AG has

25  brought suit on their behalf, unless they opted out of the AG's action.

26

27

28

1

   **A.     The Cartwright Act does not permit individuals to pursue private claims**

2

   **after declining to opt out of *parens patriae* claims.**

3       Indirect purchasers who bought CRTs from the Philips defendants have a single claim to

4   recover treble damages stemming from alleged overcharges under the state's Cartwright Act.  *See* Cal.

5   Bus. & Prof. Code, §§ 16720 *et seq.*  Those purchasers who have been allegedly injured may bring suit

6   themselves in a private action seeking treble damages.  *Id.* § 16750(a).  Alternately, the State of

7   California may bring suit for the same alleged overcharges on behalf of citizens of California who have

8   been injured by the same alleged Cartwright Act violations.  *Id.* § 16760(a)(1).

9
            The Attorney General may bring a civil action in the name of the people
10          of the State of California, as parens patriae on behalf of natural persons
            residing in the state . . . to secure monetary relief . . . for injury sustained
11          by those natural persons to their property by reason of any violation of
            this chapter.
12
     *Id.*
13
            Injured purchasers are not required to have claims asserted on their behalf by the AG.  Indeed,
14
    the law requires the AG to provide notice of its *parens patriae* action, and all putative plaintiffs are
15
    allowed to opt out of having their claims for monetary relief adjudicated in that action if they so choose
16
    by filing notice of that election.  Cal Bus. & Prof. Code § 16760(b)(1)–(2).
17
            (1)  In any action brought under this section, the Attorney General shall,
18          at any time, in any manner, and with any content as the court may direct,
            cause notice thereof to be given by publication. . . . [T]he court may
19          direct further notice . . . according to the circumstances of the case.

20          (2)  Any person on whose behalf an action is brought under [the parens
21          patriae provision] may elect to exclude from adjudication the portion of
            the claim for monetary relief attributable to him or her by filing notice of
22          that election with the court within the time as specified in the notice
            given pursuant to paragraph (1).
23
    *Id.*  Thus, if a putative plaintiff does not opt out of the *parens patriae* action, his or her claim for
24
    monetary relief will be adjudicated in the *parens patriae* action.
25
            Once the California AG acts in its *parens patriae* capacity, the forum court implements the
26
    procedures that determine who remains in the action, and who has opted out of the action: a person
27

28

1   may elect to exclude their claim "by filing notice of that election with *the* court within the time

2   specified in *the* notice given . . . ."  *Id.* (emphasis added).

3         In this case, there is no dispute that those procedures were rigorously followed.  California

4   residents received notice of the settlement between the Philips defendants and the Attorney General,

5   and had an opportunity to object to, opt out of, or intervene in the proceeding as prescribed and

6   approved by the Superior Court.  The notice was determined to be adequate by the Superior Court and

7   the adequacy of notice to California residents is not being appealed by the objector in that proceeding.

8   Thus, there is no question that California residents had adequate opportunity to remove themselves

9   from the *parens patriae* proceeding and pursue separate claims if they chose to do so.

10        To allow the IPPs to continue to pursue a claim on behalf of those residents would not only run

11  afoul of the legislated process for administering *parens patriae* claims, but it also would offend

12  fundamental due process.  The notice of the *parens patriae* action that was approved by the Superior

13  Court contained a full disclosure of the IPP class action case and notified parties that "if you do not

14  exclude yourself from this settlement, you may not be able to bring a claim under California law in the

15  federal lawsuit, and the IPPs may not be able to bring a claim under California law on your behalf in

16  the federal lawsuit."  Gelott Decl. Ex. D, at 15.   Thus, those residents who did not opt out and who

17  made a willing election to remain a part of the Attorney General's *parens patriae* action have chosen

18  to have their rights asserted by the Attorney General, ***not*** the IPP class.  To permit the IPPs, instead, to

19  assert the claims of those residents in this action would undermine their fundamental right to be

20  represented by the counsel of their choice.  *Cf. Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 438

21  (1985) (noting also that establishing a violation of the right to counsel of one's choice does not require

22  a showing of prejudice).

23        The *parens pariae* statute, furthermore, is express and unambiguous that where there is a "final

24  judgment" in a *parens pariae* action, that judgment "shall be res judicata as to any claim under this

25  section by any person on behalf of whom the action was brought and who fails to give notice within

26  the period specified . . . ."  Cal. Bus. & Prof. Code § 16760(b)(3).  Thus, the statute provides that

27

28

1   would-be plaintiffs must opt out if they do not want their claims adjudicated, and once adjudicated,

2   they may not reassert them in another action.

3      The statutory res judicata provision would (and will) specifically apply to this action as soon as

4   there is a "final judgment" in the *parens patriae* action.  There is no dispute that the claims brought

5   against the Philips defendants in the *parens patriae* suit are the same claims being pursued in the IPP

6   private litigation as they alleged the same conspiracy perpetrated by the same defendants against the

7   same California natural persons over the same period of time.  *Compare* IPP 3d. Am. Cplt *and* IPP 4th

8   Am. Cplt, *with* Cal. Cplt *and* Am. Cal. Cplt.[2]  Further, the full release entered into by Plaintiffs in the

9   California settlement—pursuant to which the Philips defendants have been "completely released,

10  acquitted, and forever discharged from any and all claims, demands, actions, suits, [and] causes of

11  action" for its alleged conspiratorial conduct that California natural persons "ever had, now has, or

12  hereafter can, shall, or may have"—would and will unquestionably release the Philips defendants from

13  all claims in this action.  Gelott Decl. Ex. C at ¶¶ 6, 9, and 15.[3]

14

15  ─────────────────

16  [2] Consistent with the statutory provision, res judicata traditionally applies if three requirements are met:  "(1) the second lawsuit must involve the same 'cause of action' as the first one, (2) there must have been a final judgment on the merits in the first lawsuit and (3) the party to be precluded must

17  itself have been a party, or in privity with a party, to that first lawsuit."  *San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009).  Prongs (1) and (3)

18  are undeniably met here.

19  [3] In the typical matter of prior settlement, "[i]t is beyond cavil that a suit can be barred . . . in either of two ways: res judicata or release."  *Reppert v. Marvin Lumber and Cedar Co.*, 359 F.3d 53, 56 (1st Cir.

20  2004) (*cited with approval in Prieto v. U.S. Bank Nat'l Ass'n*, No. Civ S-09-901-KJM-EFB, 2011 WL

21  2181459, at *6 (E.D. Cal. June 3, 2011).  These issues typically arise after a final judgment, s*ee, e.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746–749 (9th Cir. 2006), and will no doubt

22  be conclusive here.

23  However, in the *parens patriae* context, for all the reasons identified in this motion, the decision not to opt out is the trigger for extinguishment of all private claims predicated on the same injury.  The

24  legislature gave the AG the authority to bring claims on behalf of residents of the state, and the authority to release those claims on behalf of them.  The AG is the state's highest legal officer, is

25  entrusted with the responsibility of protecting the residents of California and acting in the public good, and is funded by resources of the state.  Once a resident elects to have his or her claim handled by the

26  AG, by declining the option to opt out, the statutory regime simply does not contemplate or permit duplicative and wasteful separate state law actions based on the same injury.

27

28

1        Indeed, Plaintiffs' counsel has acknowledged that the AG settlement will have preclusive

2   effect, arguing that the decision of the San Francisco Superior Court to grant final approval of the

3   settlement of the AG action would result in "my claims hav[ing] been given up in the District Court in

4   the MDL case."  Declaration of Erik T. Koons in Support of PENAC's Memorandum Regarding

5   Parallel State Litigation, Ex. 1, Final Approval Hrg. Tr. at 71:12–15, *State of California v. Chunghwa*

6   *Picture Tubes Ltd.*, No. CGC-11-515786 (Cal. Supr. Ct. San Francisco December 5, 2013) [Dkt. No.

7   2861-2]; *see also id.* at 41:11-14 ("Judge Conti is going to look at Your Honor's order, at the face of

8   the order, and he's going to say this is what the order says, Mr. Alioto, your claims are barred.").  He

9   also noted that "this settlement of California claims has a very, very substantial impact" on the IPP

10  class action.  *Id.* at 5:14–19.

11       To be clear, the Philips defendants are not asserting that res judicata applies at this stage of the

12  proceedings to the IPP claims, given California law regarding when a case is "final" for res judicata

13  purposes.  *See Sosa v. DirecTV*, 437 F.3d 923, 928 (9th Cir. 2006); *Nathanson v. Hecker*, 121 Cal.

14  Rptr. 2d 773, 776 n.1 (Cal. Ct. App. 2002) (quoting *In re Bellucci* 119 B.R. 763, 768–769 (Bankr. E.D.

15  Cal. 1990)).  Rather, the fact that res judicata is so clearly applicable to *parens patriae* actions by the

16  Attorney General reinforces the mutual exclusivity of its claims and the claims of those who do not opt

17  out of the *parens patriae* action.  Indeed, an opposite reading would yield an untenable result:

18  plaintiffs could simultaneously litigate in a private action the identical claims to those asserted on their

19  behalf in an ongoing *parens patriae* action which they had elected not to opt out of.  This would result

20  in duplicative recoveries and potentially conflicting results in that if the *parens patriae* action became

21  final before the private action, the private action would be adjudicating claims that had been

22  extinguished.  Moreover, it would make no sense to infer that the legislature, which mandated that

23  *parens patriae* plaintiffs opt out if they did not want their claims adjudicated in the AG's action, and

24  which provided that once adjudicated, no second bite at the apple would be available, would

25  nonetheless have allowed individuals to choose to stay in a *parens patriae* action yet also pursue the

26  identical claims separately in a private action.  Put differently, it is clear that the legislature intended

27

28

1   that once the AG brings a *parens patriae* action, the residents may elect to stay in the *parens patriae*

2   action, or to choose to pursue a separate action, but not both.

### B.    The Act's legislative history also supports that *parens patriae* actions and private actions are alternatives, not cumulative entitlements.

5   "'[I]n any case involving statutory interpretation, [a court's] fundamental task . . . is to

6   determine the Legislature's intent so as to effectuate the law's purpose.'" *People v. Harrison*, 312

7   P.3d 88, 95 (Cal. 2013) (quoting *People v. Murphy*, 19 P.3d 1129, 1133 (Cal. 2001)).  The court begins

8   the process of statutory interpretation by (1) giving the statute's words their plain meaning and (2)

9   examining the statutory language in context to determine the statute's scope and purpose.  *Murphy*, 19

10  P.3d at 1133.  The California court will "construe the words in question in context, keeping in mind the

11  nature and obvious purpose of the statute."  *Id*. (internal quotation marks and citation omitted).   In

12  context, reading the statute to allow a plaintiff who does not opt out of the *parens patriae* action to

13  nonetheless maintain a private action simultaneously, only to cut off its right to do so once the *parens*

14  *patriae* action is final, makes no sense.  This point only becomes more apparent in the legislative

15  history.

16  The Act's legislative history provides additional support for the position that a plaintiff who

17  does not opt out of a *parens patriae* action cannot then still maintain his or her own suit.

> If a person has a claim against the same defendant based
> upon the same act, he can elect to have adjudication of his
> claim excluded from the action by filing notice of his election
> within the time specified in the notice.  Any person who
> does not exclude his claim from the action is precluded
> from later bringing his own action.

22  John J. Miller, Chairman, Assembly Committee on Judiciary, <u>Bill Digest</u>, AB 1162 (1977).  As

23  explained, the would-be plaintiff may either opt out of the *parens patriae* suit or accept whatever

24  remedy the State's enforcement action provides.  The legislature mandated that an individual who

25  wished to maintain a private action should opt out of a later-filed *parens patriae* suit.

26  Legislative history for a provision of the Clayton Act allowing states to bring *parens patriae*

27  actions in federal court, a provision on which California's statute is based, also explains that Congress

28

1   never intended to expose defendants to multiple separate actions brought on behalf of the same

2   plaintiff.  "The establishment of an alternative [*parens patriae*] remedy does not increase any

3   defendant's liability.  To the extent an antitrust violator was liable to an individual, H.R. 8532 would

4   make the violator liable to **either** the individual **or** the State."  Hart-Scott-Rodino Antitrust

5   Improvements Act of 1976, House Rep. No. 94-499(I) (1975), *reprinted in* 1976 U.S.C.C.A.N. 2572,

6   at *2579 (emphasis added).  That California modeled its own *parens patriae* statute on the Clayton Act

7   makes the legislative history only more persuasive.  *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1079

8   (Cal. 2010) (California enacted "a statute that precisely tracked the federal act and authorized the

9   Attorney General to sue for Cartwright Act violations on behalf of consumers"); Assembly Office of

10  Research, third reading analysis of Assembly Bill No. 1162 (1977–1978 Reg. Sess.) as amended May

11  17, 1977, page 1 ("The bill is modeled directly on federal law"); *see also ACLU v. Deukmejian*, 32

12  Cal. 3d 440, 447 (1982) (the legislative history of a federal statute may be used to interpret a statute

13  based on it).

14        In short, the legislative history supports the plain reading of the statute advanced above:

15  plaintiffs who do not opt out of *parens patriae* actions may not simultaneously maintain private

16  actions.

17

18

19

20

21

22

23

24

25

26

27

28

1

2
## CONCLUSION

3      For all of these reasons, there is no genuine issue of material fact and the Philips defendants are

4 entitled to judgment as a matter of law as to the IPP claims of natural persons resident in California

5 who did not opt out of the AG's action.

6

7

8 Dated: November 7, 2014                    By:  /s/ Charles M. Malaise___
                                            John M. Taladay (*pro hac vice*)
9                                           Joseph Ostoyich (*pro hac vice*)
                                            Erik T. Koons (*pro hac vice*)
10                                          Charles M. Malaise (*pro hac vice*)
                                            BAKER BOTTS LLP
11                                          1299 Pennsylvania Ave., N.W.
                                            Washington, DC 20004-2400
12                                          Telephone: (202) 639-7700
                                            Facsimile: (202) 639-7890
13                                          Email: john.taladay@bakerbotts.com
                                            Email: joseph.ostoyich@bakerbotts.com
14                                          Email: erik.koons@bakerbotts.com
                                            Email: charles.malaise@bakerbotts.com
15

16                                          Jon V. Swenson (SBN 233054)
                                            BAKER BOTTS LLP
17                                          620 Hansen Way
                                            Palo Alto, CA 94304
18                                          Telephone: (650) 739-7500
                                            Facsimile: (650) 739-7699
19                                          Email: jon.swenson@bakerbotts.com

20

21                                          *Attorneys for Defendants Koninklijke Philips N.V.,*
                                            *Philips Electronics North America Corporation, Philips*
22                                          *Taiwan Limited, and Philips do Brasil Ltda.*

23

24

25

26

27

28