SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by and between Philips Electronics North America Corporation ("Philips") on the one hand, and the Attorney General of California ("Attorney General"), on behalf of the State of California and its state agencies, its political subdivisions and public agencies (including the Class of Government Entities as defined below), and as *parens patriae* on behalf of all natural persons (collectively the "State"), on the other hand.

WHEREAS, the Attorney General alleges that Philips participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of Cathode Ray Tubes ("CRTs") at artificially high levels, and to restrict output of CRTs in violation of the California Cartwright Act, the California Unfair Competition Law, and/or the doctrine of unjust enrichment; and

WHEREAS, Attorney General is conducting an investigation into the facts and the law regarding the participation of Philips and other companies in an unlawful price fixing conspiracy of CRTs and believes her claims against Philips are valid, but nevertheless believes that resolving her claims against Philips according to the terms set forth below at this point in time in her investigation are in the best interest of the State in materially advancing her investigation and ultimately prosecuting claims against other companies participating in this conspiracy; and

WHEREAS, Philips, despite the belief that it is not liable for any claims arising from allegations that it participated in an unlawful price fixing conspiracy of CRTs, and that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Philips Releasees, as defined below, based on the allegations to be made in a complaint or complaints against Philips and any of its other co-conspirators, as more particularly set out below;

1

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the relevant claims be settled, compromised, and dismissed on the merits with prejudice as to Philips Releasees and except as hereinafter provided, without costs as to the Attorney General, Philips, and Philips Releasees, subject to the approval of the Court, on the following terms and conditions, and incorporating the preceding clauses:

A.    <u>Definitions</u>

1.  "Philips Releasees" refers to Philips, Koninklijke Philips Electronics, N.V., and to all of their past and present, direct and indirect, parents, subsidiaries, and/or affiliates; the predecessors, successors, and assigns; and each and all of their present and former principals, partners, officers, directors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns.  "Philips Releasees" include, without limitation: (1) any shareholding or other ownership interest of Koninklijke Philips Electronics N.V., including but not limited to its ownership of shares relating to LG Philips Displays; (2) Philips Electronics Industries (Taiwan), Ltd.; and (3) Philips da Amazonia Industria Electronica Ltda.

a.  "Philips Releasees" does not include LP Displays International (f/k/a LG Philips Displays) ("LP"); LG Electronics, Inc., LG Electronics USA, Inc.; or LG Electronics Taiwan Taipei Co., Ltd. (collectively "LG"); or any of their respective past and present, direct and indirect, subsidiaries, and/or affiliates; the predecessors, successors, and assigns of LP or LG and each and all of the present and former principals, partners, officers, directors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of LP or LG, except for

2

Koninklijke Philips Electronics N.V.; Philips Electronics North America Corporation; Philips Electronics Industries (Taiwan), Ltd.; and Philips da Amazonia Industria Electronica Ltda. and each and all of the present and former principals, partners, officers, directors, supervisors, employees, representatives, insurers, attorneys, heirs, executors, administrators, and assigns thereof.

2. "Government Entities" refers to all political subdivisions and public agencies in California (i.e., counties, cities, K-12 school districts, and utilities), the University of California, and the State Bar of California that have purchased CRTs and/or CRT products during the Relevant Period. Excluded from this definition are all state agencies that either constitute an arm of the State of California under the Eleventh Amendment of the U.S. Constitution or are not otherwise treated under California law as being autonomous from the State of California itself.

3. "Settlement Class of Government Entities" refers to all political subdivisions and public agencies in California (i.e., counties, cities, K-12 school districts, and utilities), the University of California, and the State Bar of California that have purchased CRTs and/or CRT products during the Relevant Period. Excluded from this definition are all state agencies that either constitute an arm of the State of California under the Eleventh Amendment of the U.S. Constitution or are not otherwise treated under California law as being autonomous from the State of California itself.

4. The "MDL" refers to the Multidistrict Litigation entitled *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, Master File No. 3:07-cv-5944 SC, MDL No. 1917, which includes direct and indirect purchaser class actions, and related actions,

3

currently pending in the United States District Court for the Northern District of California.

5. "Releasor" refers to (1) the State of California in its own behalf and on behalf of all state agencies that constitute an arm of the State of California; (2) the State acting *parens patriae* on behalf of all natural persons resident in California at any time during the Relevant Period; and (3) the Settlement Class of Government Entities.

6. "Relevant Conduct" refers to Philips's alleged participation in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of CRTs at artificially high levels and maintain the quantities of CRTs at artificially low levels during the Relevant Period.

7. "Relevant Period" refers to the period beginning March 1, 1995, and continuing through November 25, 2007.

8. The "Settlement Fund" refers to the $500,000.00 (U.S.) payment to be made by Philips within sixty (60) days of the final day of the month in which the Effective Date takes place.

9. "Released Claims" refers to any claims arising from the Relevant Conduct, including those arising under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, or trade practice law.

10. "Effective Date" is the first date upon which the Attorney General and Philips, through the undersigned counsel, have signed this Agreement.

B. Approval of this Agreement and Dismissal of Claims against Philips.

11. The Attorney General and Philips (the "Settling Parties"), and the Settling Parties' counsel, shall use their best efforts to effectuate this Agreement and its purpose, including cooperating in seeking any necessary court approvals, filing a

4

settlement complaint against Philips Electronics North America Corporation and any of its alleged co-conspirators in the Superior Court of California, San Francisco Division solely for the purpose of effectuating this Agreement, and staying any litigation filed after the execution of this agreement, and shall jointly secure the prompt, complete, and final dismissal with prejudice of any settlement complaint filed as to the Philips Releasees, but not as to any party that is not a Philips Releasee. The Settling Parties agree to take whatever further steps, if any, may be reasonably necessary to effectuate the dismissal of the settlement complaint with prejudice.  For purposes of this agreement only, Philips Electronics North America Corporation agrees to accept service of the to-be filed settlement complaint against it, and any related summons, through its undersigned attorneys.

12. The Settling Parties shall jointly seek any orders and final judgment necessary to effectuate this Agreement, the text of which the Settling Parties shall agree upon. The terms of such orders and final judgment will include, at a minimum, the substance of the following provisions:

a.     any complaint filed shall be dismissed with prejudice as to Philips, and, except as provided for in this Agreement, without recovery of costs to any party to that complaint except as set forth in this agreement;

b.     reserving exclusive jurisdiction over this settlement and this Agreement, including the administration and consummation of this settlement, to whichever court Attorney General files a settlement complaint against Philips;

c.     Philips shall pay to the Attorney General, for the benefit of the State, a Settlement Fund amount of $500,000 sixty (60) days after the last day of the month in which the Effective Date takes

5

place, which may be used for any of the following purposes, subject to applicable legal limitations:

      1)      Reimbursement of the State's attorneys' fees and expenses;

      2)      Compensation for damages suffered by the State for, *inter alia*, harm to the general California economy caused by the Relevant Conduct;

      3)      Deposit into an antitrust or consumer protection account (e.g., revolving account, trust account, special fund) for use in accordance with the laws governing such an account;

      4)      Antitrust or consumer protection enforcement by the Attorney General.

d.    enjoining and restraining Philips for a period of three years from the date of final approval of this Agreement, from engaging in price fixing, market allocation, and/or bid rigging relating to CRTs for incorporation into monitors or to other display screens incorporated into monitors, which constitute horizontal conduct that are *per se* violations of sections 16700 *et seq.* of the Cartwright Act;

e.    requiring Philips to certify that it has an antitrust compliance program and that it does not manufacture or sell CRTs. In the event that it manufactures or sells CRTs within three (3) years of the date of execution of this Agreement, it shall (1) establish, if not already established, and maintain a program to provide relevant antitrust compliance education to their officers and employees with responsibility for pricing and sales of products in and to the United States regarding the legal standards imposed by federal and state antitrust laws, and Philips shall have ninety (90) days from final approval of this Agreement to establish this program if one has not already been established; and (2) for three (3) years from that date, on an annual basis, Philips shall certify in writing to the Attorney General that it is fully compliant with the provisions of this paragraph by describing the nature of the program it has implemented or is maintaining pursuant to this sub-paragraph. The Attorney General is required to provide notice to Philips that the certification is due thirty (30) days prior to the deadline for its submission. Nothing in this provision shall cause, require or affect a waiver of any privileges

otherwise applicable to the content or conduct of any antitrust compliance training;

f.      Philips shall provide cooperation to the Attorney General as described in paragraph 19 of this Agreement within a reasonable time frame from the Effective Date of this Agreement; and

g.      certifying solely for purposes of this Agreement the Class of Government Entities.

13. This Agreement shall become final when (i) the Court has entered an order and final judgment that dismisses as to Philips and all Philips Releasees the to-be-filed settlement complaint against Philips with prejudice against the State, and (ii) the time for appeal or to seek permission to appeal has expired, or (iii) if appealed, approval of this Agreement and the order and final judgment dismissing as to Philips the to-be-filed complaint against Philips with prejudice have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  This Agreement shall be deemed executed as of the later date of signature by either party.  As of the date of execution of this Agreement, the Settling Parties shall be bound by the terms of this Agreement and this Agreement shall not be rescinded except in accordance with paragraphs 27 or 28 of this Agreement.

14. Neither this Agreement (whether or not it should become final) nor the resulting final judgment, nor any and all negotiations, documents, and discussions associated with such negotiation, shall be deemed or construed to be an admission by, or form the basis of an estoppel by a third party against, Philips or any of the Philips Releasees; or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Philips or any of the Philips

7

Releasees; or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed by the Attorney General in any action. Evidence thereof shall not be discoverable, or used directly or indirectly, in any way, in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any action taken to carry out this Agreement by the Attorney General or Philips shall be referred to, offered into evidence, or received in evidence in any pending or future civil, criminal or administrative action or proceeding, except in a proceeding to enforce and solely for the purpose of enforcing this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law. This provision shall not apply to cooperation or materials received by the Attorney General pursuant to paragraph 19 herein.

C.    Release, Discharge, and Covenant Not to Sue.

15. In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in paragraph 13 of this Agreement, and in consideration of payment of the Settlement Fund as specified in paragraphs 8 and 20 through 26 of this Agreement, and for other valuable consideration, the Philips Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action for the Released Claims, that Releasor ever had, now has, or hereafter can, shall, or may have.

16. In addition to the provisions of paragraph 15 of this Agreement, Releasor hereby expressly waives and releases, upon this Agreement becoming final, any and all

8

provisions, rights, and benefits conferred by § 1542 of the California Civil Code
which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE.  A
> GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common

law, which is similar, comparable, or equivalent to § 1542 of the California Civil

Code.  Each Releasor may hereafter discover facts other than or different from

those which he, she, or it knows or believes to be true with respect to the claims

which are the subject matter of the provisions of paragraph 15 of this Agreement.

Each Releasor hereby expressly waives and fully, finally, and forever settles and

releases, upon this Agreement becoming final, any known or unknown, suspected

or unsuspected, contingent or non-contingent claim with respect to the subject

matter of the provisions of paragraph 15 of this Agreement, whether or not

concealed or hidden, without regard to the subsequent discovery or existence of

such different or additional facts.

17. The release, discharge, and covenant not to sue set forth in paragraph 15 of this
    Agreement does not include claims by the Releasor other than the Released
    Claims, including without limitation any claims as to other time periods outside
    of the Relevant Period and/or Released Claims, such as those solely arising out
    of product liability, breach of warranty, or breach of contract claims in the
    ordinary course of business.

18. The Attorney General agrees and covenants that it will not challenge preliminary
    or final approval of any settlement by any Philips Releasee with the indirect

9

purchaser plaintiffs (the "IPPs"), the direct purchaser plaintiffs (the "DPPs"), or any individual action/opt-out plaintiffs ("IAPs") in the MDL, except that the Attorney General may weigh in on any proposal or decision in the MDL pertaining to the allocation or distribution of any settlements' funds, in an IPP, IAP, or DPP settlement with any Philips Releasee, to natural persons in California either directly or via *cy pres*. If requested by Philips, the Attorney General will submit a statement that (1) this settlement released those *parens patriae* claims of all natural persons in California, except for those persons who have validly and timely excluded themselves pursuant to California law; and (2) this settlement has substantial value, warranting the release of these *parens patriae* claims by the Attorney General. The Attorney General shall take no position in any motion or opposition brought by Philips in the MDL proceeding or elsewhere that is inconsistent with any of the agreements and covenants of this paragraph;

D.   <u>Philips Cooperation</u>

19. Philips agrees to cooperate with the Attorney General by:

a.      Beginning within thirty (30) days after the Effective Date of the Agreement and continuing thereafter to be substantially completed within one hundred twenty (120) days after the execution of the Agreement, unless the Settling Parties mutually agree on a different date, providing a full accounting to the Attorney General via a detailed proffer of facts known to Philips that are relevant to the Released Claims including, without limitation, proffers of all witnesses who testified or provided information to the United States Department of Justice Antitrust Division in connection with its antitrust investigation into the CRTs industry, documents, witnesses, meetings, communications, and events not covered by privilege or other protections available under any applicable United States or foreign law, plus reasonable follow-up conversations including, but not limited to, identifying individuals such as current or former employees, who may provide information or potential testimony relevant to the Released Claims. If any document protected by the attorney-client privilege, attorney work-product

10

protection, joint-defense or any other protection, privilege, or immunity, is accidentally or inadvertently produced under this paragraph 19, the document shall promptly be returned to Philips, and its production shall in no way be construed to have waived any privilege or protection attached to such document;

b.      Beginning within thirty (30) days after  the Effective Date of the Agreement and continuing thereafter to be substantially completed within one hundred twenty (120) days after the execution of the Agreement, unless the Settling Parties mutually agree on a different date, producing to the Attorney General relevant documents (including previously-prepared English translations that will be treated as investigative materials pursuant to California Government Code section 6254(f) relating to any evidence any collusive meetings among CRT makers (and/or their subsidiaries and/or their employees) and how any alleged conspiracy was formed, implemented, and enforced, to the extent known by Philips, including documents relating to sales, pricing, capacity, production, damages, and liability;

c.      Meeting and conferring in good faith about making the appropriate current employees, including employees based in Europe, available for deposition and trial according to a reasonable schedule, including making available at a mutually agreed-upon time and place for deposition such key employees as are reasonably identified by the Attorney General;

d.      Making available other appropriate employees, located  in the United States or abroad, in person as reasonably practical, by video conference, or by such other means as the Settling Parties may agree to, for such interviews and affidavits as reasonably required by the Attorney General;

e.      Coordinating the production of any Philips employees for purposes of depositions and interviews with any other plaintiffs in the MDL or related actions (e.g., including but not limited to, any other states, or as part of Philips's cooperation obligations under any DPP, IAP, or IPP settlements) in order to avoid duplication to the extent reasonably possible.  The Attorney General likewise agrees to coordinate in good faith with any other plaintiffs in the MDL or related actions in order to avoid such duplication;

f.      Upon request, providing the last-known contact information for any potentially relevant former employees; and

g.      Producing at trial in person, by deposition, or by affidavit, whichever is legally necessary, representatives to establish for admission into evidence the amount of their respective relevant sales and to testify as to the genuineness, status as business records, and authenticity of documents.

Any cooperation by Philips pursuant to this paragraph 19 will be consistent with its continuing obligations to the United States Department of Justice; and such cooperation shall not be contingent upon the filing of actions against Philips and/or any of its co-conspirators.  In the event that this Agreement fails to receive final approval by the court as contemplated in paragraph 12, or in the event that it is terminated by either party under any provision herein, the parties agree that the Attorney General  (or the parties that she represents) shall not be permitted to introduce into evidence, at any hearing, or in support of any motion, opposition or other pleading in this action or in any other federal or state action alleging a violation of any antitrust or unfair competition law relating to the subject matter of the Released Claims, the unsworn, oral or written, statements provided by the Philips Releasees, their counsel, or any individual made available by the Philips Releasees pursuant to the cooperation provisions of this paragraph 19 and no information, whether written or oral, sworn or unsworn, provided by Philips Releasees pursuant to this paragraph, shall be deemed an admission of any Philips Releasee.  However, if this Agreement fails to receive final approval by the Court as contemplated in paragraph 12 herein or is terminated by either party under any provision herein, then the Attorney General may be permitted to offer into evidence any sworn statements, oral or written, whether made in a formal or informal setting, including deposition or trial, by any individual made available by the Philips Releasees pursuant to the cooperation provisions of this paragraph 19.

E.      Settlement Fund

20. Subject to the provisions hereof, and in full, complete and final settlement of the to be filed complaint as provided herein, Philips shall pay a Settlement Fund in the amount of $500,000 (U.S.) by wire transfer, within sixty (60) days of the last day of the month in which the Effective Date of this agreement takes place.

12

Philips shall have no responsibility for, no right in, nor authority over, the allocation of the Settlement Fund as provided herein. The Settling Parties shall agree on escrow provisions applicable to the Settlement Fund. The Attorney General will provide wire instructions to Philips within three (3) business days after the Effective Date of this Agreement.

21. Philips agrees that any costs incurred by the Attorney General in providing any notice of the proposed settlement and in claims administration may be paid from the Settlement Fund, which amounts shall not be recoverable by Philips in the event that this settlement does not become final. After this Agreement becomes final within the meaning of paragraph 12, all court ordered disbursements, including attorneys' fees and litigation costs, may be made from the Settlement Fund.

22. Releasor shall look solely to the Settlement Fund for settlement and satisfaction against Philips Releasees of all Released Claims, and shall have no other recovery against Philips or any other Philips Releasee.

23. The Attorney General shall be responsible for distribution of the Settlement Fund in accordance with California state law and related orders of the Court in which it files a settlement complaint against Philips. In no event shall any Philips Releasee have any responsibility, financial obligation, tax liability, or other liability whatsoever with respect to the distribution or administration of the Settlement Fund, including but not limited to the costs and expenses of such distribution and administration.

24. The Philips Releasees shall not be liable for any costs, fees, or expenses of the State, or its attorneys, experts, advisers, agents, or representatives, but all such costs, fees, and expenses shall be paid out of the Settlement Fund.

13

25. After this Agreement becomes final within the meaning of paragraph 12, the Settlement Fund shall be distributed in accordance with plans for direct distributions, *cy pres*, or as otherwise permitted by law, all to be submitted at the appropriate time by the Attorney General and approved by the Court. Neither Philips nor any other Philips Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to, or shall file any opposition to, the proposed or actual plan(s) for distribution of the Settlement Fund by the Attorney General and/or any other person or entity who may assert some claim to the Settlement Fund.

26. It is contemplated that the Attorney General may seek attorneys' fees award(s) and reimbursement of costs and expenses (including expert witness fees and expenses) in whole or in part from the Settlement Fund. The Attorney General reserves all rights regarding the propriety of any request for or award of attorneys' fees or reimbursement of costs. Philips shall take no position on any application for attorneys' fees or reimbursement of costs. Subject to the foregoing reservation of rights, and subject to Court approval, any amounts awarded or distributed by the Court to the Attorney General as a fee award and reimbursement of costs may be used for any of the following purposes, within the limits of applicable law:

a.    Reimbursement of attorneys' fees and expenses incurred in the investigation and prosecution of the to-be-filed settlement action against Philips;

b.    Deposit into a state antitrust or consumer protection account (e.g., revolving account, trust account) for use in accordance with the laws governing the account;

c.    Deposit into a fund exclusively dedicated to assisting the State of California to defray the costs of experts, economists and consultants in multistate antitrust investigations and litigations; or

14

        d.     Antitrust or consumer protection enforcement by the Attorney General.

F.    Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.

27. If the Court refuses to approve this Agreement or any material part thereof, or if such approval is materially modified or set aside on appeal, or if the Court does not enter the final judgment provided for in paragraph 12 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Philips and the Attorney General shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made by email and overnight courier and by filing a copy of such notice with the Court no later than the twentieth day from the day on which the Settling Parties receive notice that the Agreement has not been approved in whole or in material part or that it has been reversed or modified in whole or in material part on appeal, or that final judgment has not been entered as provided for in paragraph 12 of this Agreement, or that the final judgment has not been affirmed in its entirety on appeal. A modification or reversal on appeal of any amount of the fees for counsel for the State shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

28. In the event that this Agreement does not become final, or in the event that the Attorney General shall fail to file any actions against Philips and/or one or more of its co-conspirators in state or federal court within a reasonable period of time from execution of this Agreement, then this Agreement shall be of no force or effect (except for this paragraph 28 and paragraphs 14 and 19) and any and all parts of the Settlement Fund, including all interest earned on such accounts, shall be returned forthwith to Philips less only disbursements of notice costs and/or

claims administration expenses made in accordance with paragraph 21 of this Agreement. The Settling Parties expressly reserve all of their rights if this Agreement does not become final.

29. This Agreement shall be construed and interpreted to effectuate the intent of the Settling Parties, which is to provide, through this Agreement, for a complete resolution of the Released Claims with respect to the Philips Releasees as provided in this Agreement.

30. The Settling Parties contemplate and agree that, prior to final approval of the Agreement as provided for in paragraph 12 of this Agreement, appropriate notice shall be given to the Settlement Class of Government Entities of this Agreement and the complaint that is filed against Philips. The Class will further be notified that there will be a hearing at which the Court will consider the approval of this Agreement; and that members of that Class may opt out of the Class under this Agreement.

G.   Miscellaneous

31. This Agreement does not settle or compromise any claim by the Attorney General against any defendant or alleged co-conspirator other than Philips and Philips Releasees. All rights against such other defendant or alleged co-conspirator are specifically reserved by the Attorney General. The Settling Parties intend that joint and several liability against defendants other than Philips and the Philips Releasees shall include the volume of CRT sales of Philips during the Relevant Period.

32. Neither this Agreement, nor any act performed or document executed pursuant to, or in furtherance of this Agreement is, or may be deemed to be, or may be used as an admission of, or evidence of (i) the validity of any claim or defense,

16

or (ii) the appropriateness or inappropriateness of any class or other
representational capacity whether contemporaneously with this Agreement or at
any time in the future.

33. Except as otherwise set forth herein, this Agreement shall not affect whatever
rights Releasor may have (i) to participate in or benefit from, where appropriate,
any relief or other recovery as part of a settlement or judgment in any action on
behalf of any direct or indirect purchasers of CRTs against any party named as a
defendant, other than Philips or any Philips Releasee, in the MDL or in civil
action No. CGC-11-515784, filed November 8, 2011, in the Superior Court of
California, County of San Francisco, captioned *The State of California et al. v.
Samsung SDI, Co. Ltd. et al.* or (ii) to assert any product liability, breach of
warranty, breach of contract, or other claims in the ordinary course of business.

34. The court in which the Attorney General files an action against Philips and one
or more of its co-conspirators shall retain jurisdiction over the implementation,
enforcement, and performance of this Agreement, and shall have exclusive
jurisdiction over any suit, action, proceeding, or dispute arising out of or relating
to this Agreement or the applicability of this Agreement that cannot be resolved
by negotiation and agreement by the Settling Parties.  This Agreement shall be
construed according to the laws of the State of California without regard to its
choice of law or conflict of laws principles.

35. This Agreement constitutes the entire, complete, and integrated agreement
between the Settling Parties pertaining to the settlement against Philips, and
supersedes all prior and contemporaneous undertakings of the Settling Parties in
connection herewith.  This Agreement may not be modified or amended, except

17

in writing executed by the Settling Parties and approved by the Court in which an action is filed against Philips.

36. This Agreement may be executed in counterparts by the Attorney General and Philips or its counsel, and an email or facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

37. Neither the Attorney General nor Philips shall be considered to be the drafters of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafters of this Agreement.

38. The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience only and do not constitute part of this Agreement.

39. Where this Agreement requires either Settling Party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by email, facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

40. Each Settling Party and their counsel agree to take all actions reasonably necessary to effectuate the performance of, and uphold the validity and enforceability of, this Agreement.

41. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement on behalf of the Settling Parties he or she represents, subject to the approval of the Court in which an action is filed against Philips.

42. Philips agrees that any person signing this Settlement Agreement on its behalf is authorized by Philips to do so.

18

43. Philips hereby waives any and all of its rights:

(a)     to appeal any order or final judgment arising out of and consistent with the terms of this Agreement; and

(b)     unless this Agreement does not become final within the meaning of paragraph 12, to remove to federal court any complaint that may be filed in state court against it under jurisdiction that includes, but is not limited to, the Class Action Fairness Act of 2005 ("CAFA").

Dated:   *11 April 2012*

John Taladay
Baker Botts LLP
1299 Pennsylvania Ave. NW
Washington, DC  20004
Tel: (202) 639-7909
Email: john.taladay@bakerbotts.com
Attorney for
Philips Electronics North America Corporation

KAMALA D. HARRIS
Attorney General of California

Dated:   *4/11/12*     By:

Nicole S. Gordon
Deputy Attorney General
Office of the Attorney General of California
455 Golden Gate Ave., Suite 11000

19

San Francisco, CA 94102
Tel: (415) 703-5702
Fax: (415) 703-5480
email: nicole.gordon@doj.ca.gov
Attorneys for State of California *et al.*