Brent Caslin (Cal. Bar. No. 198682)
JENNER & BLOCK LLP
633 West Fifth Street
Suite 3600
Los Angeles, California 90071
Telephone:   213 239-5100
Facsimile:    213 239-5199
bcaslin@jenner.com

Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
Telephone:   312 222-9350
Facsimile:    312 527-0484
ttruax@jenner.com
mbrody@jenner.com

*Attorneys for Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc., and Mitsubishi Electric Visual Solutions America, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION <br><br> This Document Relates to: <br><br> *Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05264; <br><br> *Electrograph Systems, Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-06325; <br><br> *Interbond Corporation of America v. Mitsubishi Electric & Electronics USA, Inc., et al.*, No. 13-cv-05727; <br><br> *Office Depot, Inc. v. Technicolor SA, et al.*, No. 13-cv-81174; | Case No. 3:07-cv-05944-SC <br><br> MDL No. 1917 <br><br> **MITSUBISHI ELECTRIC CORPORATION'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT BASED UPON ABSENCE OF EVIDENCE OF LIABILITY.** <br><br> [[Proposed] Order and Declaration of Michael T. Brody filed herewith.] <br><br> Judge:  Hon. Samuel P. Conti <br> Court:  Courtroom 1, 17th Floor <br> Date:    10 a.m., February 6, 2015 |

MITSUBISHI ELECTRIC CORPORATION'S  NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
BASED UPON ABSENCE OF EVIDENCE OF LIABILITY.
Case No. 3:07-cv-05944-SC; MDL No. 1917

2314132.11

*P.C. Richard & Son Long Island Corporation, et al. v. Technicolor SA, et al.*, No. 13-cv-06327;

*Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686;

*Costco Wholesale Corporation v. Technicolor SA, et al.*, No. 13-cv-02037;

*Schultze Agency Services, LLC v. Technicolor SA, Ltd., et al.*, No. 13-cv-05668;

*Sears, Roebuck and Co., et al. v. Technicolor SA*, No. 13-cv-05262;

*Dell Inc., et al. v. Phillips Electronics North America Corporation, et al.* No. 13-cv-00141;

*Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, No.13-cv-00157;

*Siegel v. Technicolor SA, et al.,* No.13-cv-05261;

*Viewsonic Corporation v. Chunghwa Picture Tubes Ltd., et al.,* No.13-cv-02510.

## <u>NOTICE OF MOTION AND MOTION</u>

To all parties and their attorneys of record:

Please take notice that on February 6, 2015 at 10 a.m. or as soon thereafter as this matter may be heard before the Honorable Samuel P. Conti, Senior U.S. District Court Judge, U.S. District Court for the Northern District of California, Courtroom No. 1, 17th Fl., 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Mitsubishi Electric Corporation ("Mitsubishi Electric") hereby moves this Court, pursuant to Federal Rule of Civil Procedure 56, for summary judgment in Mitsubishi Electric's favor based upon the absence of evidence of liability in this matter.

1   This Motion is based upon this Notice and Motion, the Statement of the Issues, the
2   accompanying Memorandum of Points and Authorities, the accompanying declarations and
3   exhibits thereto and other materials in the record, argument of counsel and such other matters as
4   the Court may consider.

## STATEMENT OF THE ISSUE

5   Whether Mitsubishi Electric is entitled to summary judgment in view of the absence of
6   evidence that it participated in the conspiracy alleged in the DAPs' Complaints.[1]

---

[1] DAPs refers to the Plaintiffs in the above-captioned actions.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARDS .................................................................................................... 2

ARGUMENT .................................................................................................................... 4

I.  PLAINTIFFS HAVE ADDUCED NO DIRECT EVIDENCE OF MITSUBISHI
    ELECTRIC'S PARTICIPATION IN THE ALLEGED SECTION 1 CONSPIRACY. ...... 4

    A.  The SDI Interrogatory Answers Are Inadmissible at Trial, and Plaintiffs
        Developed No Evidence to Indicate They Are Prepared to Offer
        Admissible Evidence of the Substance of Those Answers. ................................... 5

        1.  Under Rule 56, Plaintiffs Cannot Avoid Summary Judgment by
            Relying on an Inadmissible Discovery Response Where They
            Cannot Show They Could Produce Admissible Evidence, at Trial,
            of Its Substance and Content ..................................................................... 6

        2.  The Discovery Record Does Not Include Any Suggestion That
            Plaintiffs Could Produce Admissible Evidence at Trial to
            Corroborate the SDI Discovery Responses ............................................... 7

    B.  No Direct Evidence of Conspiracy Emerged from Mitsubishi Electric or
        Chunghwa Picture Tubes. ...................................................................................... 8

II. PLAINTIFFS' CIRCUMSTANTIAL EVIDENCE IS NOT ENOUGH TO AVOID
    SUMMARY JUDGMENT ON THEIR CONSPIRACY CLAIMS AGAINST
    MITSUBISHI ELECTRIC ....................................................................................... 9

    A.  Mitsubishi Electric's Contacts with Other CRT Producers Had Lawful,
        Pro-Competitive Purposes. .................................................................................. 10

        1.  Mitsubishi Electric and Other CRT Producers Shared Production
            Information at Trade Association Meetings. .............................................. 10

        2.  Mitsubishi Electric Had Lawful Purposes in Discussing Pricing,
            Supply, and Cost Information. ................................................................... 11

    B.  Plaintiffs' Circumstantial Evidence of Competitor Communications Does
        *Not* Show That Mitsubishi Electric Participated in an Unlawful Price-
        Fixing Conspiracy. ................................................................................................ 12

i

1.    Mitsubishi Electric Did Not Participate in the "Glass Meetings"
      Upon Which Plaintiffs Rely So Heavily for Their Evidence of
      Conspiracy. ................................................................................................13

2.    Evidence of Mitsubishi Electric's Having Met with Chunghwa
      Picture Tubes in the Late 1990s Does Not Implicate Mitsubishi
      Electric in the "Glass Meetings" or Any Aspect of the Alleged
      Conspiracy. ................................................................................................14

3.    Plaintiffs' Evidence of Mitsubishi Electric's Involvement in
      Bilateral Meetings with CRT Producers Other Than Chunghwa
      Fails To Establish Mitsubishi Electric's Participation in the
      Alleged Conspiracy.....................................................................................16

      a.    The Competitor Contacts to Which Mitsubishi Electric
            Admitted Do Not Constitute Sufficient Evidence of
            Participation in the Conspiracy.......................................................16

      b.    Mitsubishi Electric's Contacts with SDI Do Not Establish
            Mitsubishi Electric's Participation in the Alleged
            Conspiracy. ....................................................................................17

      c.    Plaintiffs Are Not Aided ██████████████████████
            ████████████████████████████████████████████████
            ██████████████████████████ .......................................................20

      d.    Plaintiffs' Expert Opinion Does Not Change the Summary
            Judgment Calculus. .......................................................................21

CONCLUSION.............................................................................................................23

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*7-Up Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*,
191 F.3d 1090 (9th Cir. 1999) ........................................................ passim

*Alexander v. CareSource*,
576 F.3d 551 (6th Cir. 2009) ...................................................................6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................2

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)...........................................................................21, 22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................2

*Jardine v. Md. Cas. Co.*,
823 F. Supp. 2d 955 (N.D. Cal. 2011) ....................................................1

*Krehl v. Baskin-Robbins Ice Cream Co.*,
664 F.2d 1348 (9th Cir. 1982) ................................................................3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)...............................................................................2, 3

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
2013 U.S. Dist. LEXIS 21744 (N.D. Cal. 2013) ...........................2, 3, 16

OTHER AUTHORITIES

11-56 Moore's Federal Practice – Civil § 56.91 .........................................6

Fed. R. Civ. P. 56(a) ...................................................................................2

Fed R. Civ. P. 56(c)(1)(A) ..........................................................................6

Fed. R. Civ. P. 56(c)(1)(B) .........................................................1, 3, 5, 6, 7

Fed. R. Evid. 801(c) ....................................................................................6

Fed. R. Evid. 802 ........................................................................................6

Rule 30(b)(6)...................................................................................... passim

Rule 56 ................................................................................................ passim

iii

## INTRODUCTION

In the absence of sufficient admissible evidence of Mitsubishi Electric's participation in the antitrust conspiracy alleged in the Complaint, the Court should grant Mitsubishi Electric summary judgment on all of the liability issues in the case.[1]  Plaintiffs claim that Mitsubishi Electric participated in a conspiracy to fix the prices of cathode ray tubes ("CRTs") and products containing them ("CRT Products) from January 1, 1995 through November 1, 2007.  (*See*, *e.g.*, Tech Data First Amended Compl., ECF No. 1911 (Sept. 9, 2013), ¶1.)  But Plaintiffs have failed to develop enough admissible evidence to allow their uncorroborated and highly circumstantial claims to survive summary judgment.  Plaintiffs' efforts to adduce direct evidence of Mitsubishi Electric's participation in the alleged conspiracy failed completely, leaving only faint and insufficient circumstantial evidence of competitor meetings that do not rise to the level of an agreement.  *See 7-Up Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*, 191 F.3d 1090, 1103 (9th Cir. 1999).

Having developed, at most, no more than a mere scintilla of evidence of Mitsubishi Electric's participation, and having failed to show that they will be able to carry their burden at trial with admissible evidence of Mitsubishi Electric's liability, Plaintiffs may not avoid summary judgment on their claims against Mitsubishi Electric.  Fed. R. Civ. P. 56(c)(1)(B); *see also Jardine v. Md. Cas. Co.*, 823 F. Supp. 2d 955, 959-60 (N.D. Cal. 2011) ("'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Mitsubishi Electric sets forth below the applicable legal standards for summary judgment and then argues the reasons why summary judgment should be granted in its favor on all the liability issues.

---

[1] Defendants Mitsubishi Electric Visual Solutions America, Inc. ("MEVSA") and Mitsubishi Electric US, Inc. ("MEUS") join in the instant motion, as there can be no basis for liability of MEVSA and MEUS in the absence of liability of Mitsubishi Electric on the substantive conspiracy allegations.  MEVSA and MEUS separately have joined other subsidiary defendants in a joint motion to summary judgment based on the absence of any evidence indicating their involvement in the alleged conspiracy.

## **LEGAL STANDARDS**

This motion is governed by four legal standards.

*Summary judgment standard:*  As this Court noted in *Jardine*, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be granted if the evidence would require a directed verdict for the moving party. *Anderson,* 477 U.S. at 251.  Thus, "Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255. Nonetheless, such inferences "are not drawn out of the air; the nonmoving party must provide a factual predicate from which the inference may justifiably be drawn."  *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 2013 U.S. Dist. LEXIS 21744, at *10 (N.D. Cal. 2013).  In a case involving price-fixing allegations, in order for the plaintiff to avoid summary judgment, the evidence must tend to exclude the possibility that the defendant acted independently, and the existence of a "mere scintilla" of evidence that a defendant conspired is not enough to avoid summary judgment.  *See In re Citric Acid*, 191 F.3d at 1106.

*Requirement of direct or circumstantial evidence to prove a price-fixing conspiracy:*  In a Section 1 conspiracy case, a plaintiff seeking to avoid summary judgment must produce either direct evidence that the defendant conspired to fix prices, or circumstantial evidence from which a reasonable fact-finder could conclude that the defendant so conspired.  *Id.* at 1093.  Direct evidence of participation in such a conspiracy "'must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted.'"  *Id.* at 1094, quoting *Jacob In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999).

*Requirement that circumstantial evidence must tend to exclude independent action:* When  the Section 1 conspiracy claim is based entirely on circumstantial evidence, the evidence considered as a whole must "tend[] to exclude the possibility that the alleged conspirator[] acted

2

independently." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). Summary judgment for the defendant is then appropriate if the plaintiff cannot show that the inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed the plaintiff.  *Id.*; *see also In re Citric Acid*, 191 F.3d at 1097 ("[T]he crucial question [on summary judgment] is whether all the evidence considered as a whole can reasonably support the inference that [the defendant] conspired [to restrain trade].").

The Ninth Circuit has described a two-part approach on summary judgment for Section 1 Sherman Act claims based entirely on circumstantial evidence:  First, the defendant can rebut a conspiracy allegation by showing a plausible and justifiable reason for its conduct, and a defendant's possession of a competitor's pricing information does not, in itself, tend to exclude legitimate competitive behavior.  *Id.* at 1094, 1103.  Then, the burden shifts back to the plaintiff "to provide specific evidence tending to show that the defendant was not engaging in permissible competitive behavior."  *Id.* at 1094.

Moreover, evidence of communication with competitors, even about pricing, does not permit an inference of an agreement to fix prices unless they rise to the level of an agreement, as the possession of a competitor's pricing information "does not, at least in itself, tend to exclude legitimate competitive behavior."  *Id.* at 1103.  Importantly, evidence of price information exchange is not enough to defeat summary judgment in a price-fixing case without evidence that the exchanges of information actually had an impact on pricing.  *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1357 (9th Cir. 1982); *Stanislaus Food Prods. Co.*, 2013 U.S. Dist. LEXIS 21744, at *34, citing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 125 (3d Cir. 1999).

*A limited role for experts:*  Finally, conclusory statements by an expert do not prove the existence of facts cited or asserted by the expert; the expert report is not a substitute for evidence that would be admissible at trial and would carry Plaintiffs' trial burden to produce sufficient facts to allow a reasonable fact-finder to find in Plaintiffs' favor.  *Id.* at 1102, 1105 & n.9.

## ARGUMENT

Mitsubishi Electric is entitled to summary judgment in the absence of any direct evidence, much less sufficient circumstantial evidence, of its participation in the alleged conspiracy.  In Part I below, Mitsubishi Electric confirms that there is no direct evidence of its participation in the alleged conspiracy, notwithstanding Plaintiffs' efforts to rely on an

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████  As Plaintiffs have been forced to concede in this litigation, Plaintiffs were never able to substantiate that assertion and failed to develop even a single piece of testimony or other evidence to suggest that the substance or content of SDI's assertion will be supported at trial by any admissible evidence.  In Part II, Mitsubishi Electric establishes that the circumstantial evidence in the discovery record is insufficient to allow a jury to infer that Mitsubishi Electric entered into any illegal agreement to violate anti-competition laws.  Plaintiffs' isolated examples of price-information exchange are not supported by evidence that the exchanges tended to exclude independent action, affected pricing, or rose to the level of an agreement.

## I.    PLAINTIFFS HAVE ADDUCED NO DIRECT EVIDENCE OF MITSUBISHI ELECTRIC'S PARTICIPATION IN THE ALLEGED SECTION 1 CONSPIRACY.

The discovery record contains no direct evidence supporting the proposition that Mitsubishi Electric conspired with any other CRT producer to fix the prices of CRTs or CRT Products during the alleged conspiracy period or at any other time – notwithstanding ████████

█████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████████████  Although the Court relied on SDI's discovery response in granting Plaintiffs' motion to add Mitsubishi Electric as a defendant in this case, at the completion of discovery in this matter, Plaintiffs have failed to elicit even a single piece of evidence, in testimony or documents, █████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

1 ███████████████████████████████████████████████████████

2 ███[2]

3    Not only has ████████████████████████████████████████

4 ███████████████████████████████████████████████████████

5 ██████████████████████████████████ but Plaintiffs have failed to develop

6 any admissible evidence that ███████████████████████████████████

7 ████████████████████████ Accordingly, Plaintiffs can point to no direct

8 evidence to carry their burden at trial, and summary judgment on the liability claims against

9 Mitsubishi Electric must be granted as a result. *See* Fed. R. Civ. P. 56(c)(1)(B).

> **A.  The SDI Interrogatory Answers Are Inadmissible at Trial, and Plaintiffs Developed No Evidence To Indicate They Are Prepared To Offer Admissible Evidence of the Substance of Those Answers.**

12 ████████████████████████████████████████████████████

13 ███████████████████████████████████████████████████████

14 ███████████████████████████████████████████████████████

15 ███████████████████████████████████████████████████████

16 ███████████████████████████████████████████████████████

17 ███████████████████████████████████████████████████████

18 ████████████████ The SDI interrogatory responses fall short of direct evidence of Mitsubishi

19 Electric's participation in the alleged conspiracy, not only because they are hearsay statements

20 that are not admissible at trial, but because the discovery record yields no indication that at trial,

21 Plaintiffs can offer any admissible evidence of the substance or content of the responses as they

22 relate to Mitsubishi Electric.  Plaintiffs acknowledged as much in their unsuccessful effort to

23 conduct a Rule 30(b)(6) deposition of SDI on the subject of its interrogatory answers. ████████

24 ███████████████████████████████████████████████████████

---

[2] In granting Plaintiffs' motion to amend the complaint to add Mitsubishi Electric (and MEVSA as well as MEUS) as defendants, the Court specifically referred to new allegations against Mitsubishi Electric based entirely upon the SDI interrogatory responses.  (Order Granting In Part And Denying In Part Mitsubishi's Motion to Dismiss, Dkt. 2439 at 5-6.)  The Court's order thus suggests that without the SDI interrogatory responses – which, as shown below, have no admissible substance – Mitsubishi Electric would never have been added as a defendant.

█████████████████████████████████████████████████████████

████████████ .

    **1.**    **Under Rule 56, Plaintiffs Cannot Avoid Summary Judgment By Relying on an Inadmissible Discovery Response Where They Cannot Show They Could Produce Admissible Evidence, at Trial, of Its Substance and Content.**

Rule 56 permits the Court to consider, on summary judgment, evidence that takes the form of an interrogatory answer, Fed R. Civ. P. 56(c)(1)(A).  However, Plaintiffs still must show that they will be able to produce admissible evidence at trial of the substance or content of the information they contend establishes a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(B).  This subtle but important point bears elaboration:  It is not enough for Plaintiffs to rely on an uncorroborated interrogatory answer to carry their burden.  Instead, to survive summary judgment, Plaintiffs must have developed evidence during discovery that is admissible at trial and that tends to corroborate or support the substance of the discovery response.  Plaintiffs have failed to do so here.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████  They are hearsay statements, as out-of-court assertions offered for their truth (to establish that Mitsubishi Electric conspired).  *See* Fed. R. Evid. 801(c), 802.  While such evidence may be admissible against SDI as an admission of a party opponent, it is not admissible against Mitsubishi Electric.  And Plaintiffs cannot show, from the discovery record, that at trial they will produce admissible evidence of the substance and content of those discovery responses.   "The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form."  11-56 Moore's Federal Practice, Civil § 56.91.  It is not enough for a plaintiff to survive summary judgment by promising in the pleadings that it will produce admissible evidence creating a genuine issue – the plaintiff must show that it "*can* make good on the promise of the pleadings by laying out enough evidence that

*will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Alexander v. CareSource*, 576 F.3d 551, 565 (6th Cir. 2009) (emphasis in original).

Rule 56 states that a summary judgment movant can support its assertion of no genuine issue of material fact by showing that the non-movant "cannot produce admissible evidence to support that fact." Fed. R. Civ. P. 56(c)(1)(B).  The commentary to the Rule makes clear that "a party who does not have the trial burden of production" – in this case, Mitsubishi Electric – "may rely on a showing that a party who does have the trial burden" – in this case, Plaintiffs – "cannot produce admissible evidence to carry its burden as to the fact [in dispute]." *Id.*, advisory committee's notes.  Accordingly, the SDI discovery responses themselves are not direct evidence; rather, Plaintiffs needed to develop admissible evidence of the substance and content of those answers.  As is explained further below, they failed to do so, as they themselves have acknowledged.

> **2.    The Discovery Record Does Not Include Any Suggestion That Plaintiffs Could Produce Admissible Evidence at Trial To Corroborate the SDI Discovery Responses.**

The record is bereft of testimony supporting or even explaining ███████████ ████████████████████████████████████████████████████████  Plaintiffs themselves put it best, in arguing unsuccessfully for an additional Rule 30(b)(6) deposition of SDI on the subject of its guilty plea and related discovery responses:

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████
██████████████████████████████
██████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████

8 ██████

9 Not surprisingly, then, Plaintiffs sought additional discovery ████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████ Regardless of Plaintiffs' frustrations at the

12 discovery process,[3] they cannot now be heard to say that they developed any direct evidence

13 from SDI of the participation of Mitsubishi Electric – ████████████████████████

14 ██████████████████████████████ – in any CRT-related conspiracy.

**B.    No Direct Evidence of Conspiracy Emerged from Mitsubishi Electric or Chunghwa Picture Tubes.**

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

---

23 [3] Plaintiffs' discovery response identified a ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

28 ████████████████████████ It reflects an intent to compete, not collude.

1

2

3

4

5

6          A similar lack of conspiracy evidence emerged from

7

8

9

10

11         In short, Plaintiffs' efforts to corroborate the SDI discovery responses with admissible

12    evidence failed, leaving no basis at all for the Court to believe that Plaintiffs can present

13    admissible evidence as to the substance and content of the SDI discovery responses at trial.

14

15

16    **II.     PLAINTIFFS' CIRCUMSTANTIAL EVIDENCE IS NOT ENOUGH TO AVOID**
        **SUMMARY JUDGMENT ON THEIR CONSPIRACY CLAIMS AGAINST**
17    **MITSUBISHI ELECTRIC.**

18         Once the SDI interrogatory responses are set aside, the remaining smattering of

19    circumstantial evidence does not justify an inference that Mitsubishi Electric conspired with any

20    CRT producer to fix prices or restrain trade.

21

22

23

24                                          Nor is there evidence from any witness to the effect that any of the

25    communications rose to the level of an agreement, affected pricing, or otherwise would justify an

26    inference of conspiracy by Mitsubishi Electric.   Plaintiffs therefore cannot show that the

27    circumstantial evidence tends to exclude the possibility of independent action by Mitsubishi

28

9

2314132.11

1  Electric.  Furthermore, the evidence of competitor contacts has no demonstrable connection to

2  price or to Plaintiffs' conspiracy allegations.

3    **A.    Mitsubishi Electric's Contacts with Other CRT Producers Had Lawful, Pro-Competitive Purposes.**

4

5    **1.    Mitsubishi Electric and Other CRT Producers Shared Production Information at Trade Association Meetings.**

27  Plaintiffs invite the Court to draw the most nefarious inference possible from the trade

28  association meetings, but they have failed to adduce sufficient admissible evidence to support

10

such inferences.  In particular, Plaintiffs have focused █████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████

     No evidence was presented to suggest that ████████████████████████
██████████████████████████████████ affected pricing.  No evidence was presented to suggest that this activity equated to an agreement of any kind, either to fix prices, or to allocate customers or markets.  No evidence was presented to show ████████████████████████ tended to exclude independent action.   Thus, the limited circumstantial evidence regarding ██████████████████████████████ fails to tip the scales in favor of inferring that Mitsubishi Electric's conduct was *more* consistent with unlawful conduct than lawful conduct.

        **2.**     **Mitsubishi Electric Had Lawful Purposes in Discussing Pricing, Supply, and Cost Information.**

████████████████████████████████████████████████████████████████████
████████████████████████████   ████████████████████████████████████████
████████████████████████████████████████████████████████████████████

2314132.11



Again, Plaintiffs ask the Court to draw an inference that Mitsubishi Electric's contacts with competitors had a strictly unlawful purpose, but Plaintiffs cannot show that the contacts tend to exclude the inference that Mitsubishi Electric was acting independently. The record provides a substantial basis to infer that Mitsubishi Electric had a lawful purpose, and, as explained further below, that the communications in the record were as consistent, if not more consistent, with a lawful purpose than an unlawful one. Accordingly, summary judgment should be granted.

**B.      Plaintiffs' Circumstantial Evidence of Competitor Communications Does _Not_ Show That Mitsubishi Electric Participated in an Unlawful Price-Fixing Conspiracy.**

Without direct evidence of Mitsubishi Electric's participation in the alleged price-fixing conspiracy, and with Mitsubishi Electric having advanced lawful reasons for it conduct,  it is Plaintiffs' burden to provide specific evidence tending to show that Mitsubishi Electric was engaged in unlawful price-fixing. *In re Citric Acid*, 191 F.3d at 1094. Plaintiffs cannot do so, as

the circumstantial evidence itself does *not* point to conspiracy any more than it points to a competitive intent.

### 1.   Mitsubishi Electric Did Not Participate in the "Glass Meetings" Upon Which Plaintiffs Rely So Heavily for Their Evidence of Conspiracy.

Plaintiffs mapped out their conspiracy allegations by referring to the alleged "Glass Meetings." However, Mitsubishi Electric never participated in such meetings and Plaintiffs failed to adduce a single piece of evidence even suggesting that Mitsubishi Electric did so. Mitsubishi Electric's absence from the "Glass Meetings" distinguishes it from the other defendants in the case and cuts away a huge swath of the alleged conspiracy for the Court's consideration on this Motion.

In summary, Plaintiffs allege that the "Glass Meetings" formed a prototypical framework for a price-fixing conspiracy. (Tech Data Am. Compl. ¶ 122.) They included*:* (1) high-level meetings among top executives of competing CRT producers to discuss long-term agreements, their enforcement, and dispute resolution among the conspirators; (2) second-tier "management" meetings at which top sales managers discussed the implementation of the agreements reached at the higher level; and (3) "working-level" meetings at which lower-level sales and marketing employees exchanged information and discussed pricing, all as a part of the implementation of the agreements reached at the higher levels. (*Id.* ¶¶ 122-24.) Plaintiffs alleged that the "Glass Meetings" provided the framework through which the participating CRT producers agreed upon prices, controlled price reductions, made various other related agreements, and enforced compliance with such agreements. (*Id.* ¶¶ 130-35.) Plaintiffs described these meetings as having occurred from about 1998 onward, tailing off in frequency from 2005-2007. (*Id.* ¶¶ 125, 135.)

Setting aside whatever evidence Plaintiffs developed to support those allegations, there is no question that they found absolutely no evidence of Mitsubishi Electric attending even a single one of these meetings. The absence of evidence of Mitsubishi Electric's attendance at the "Glass Meetings" is highly significant because it represents not only a failure by Plaintiffs to develop direct evidence of Mitsubishi Electric's involvement in the alleged conspiracy, but also a powerful piece of circumstantial evidence indicating that Mitsubishi Electric was ***not*** involved in

13

the alleged conspiracy. The complete absence of evidence of Mitsubishi Electric's attendance at meetings so pivotal to the alleged conspiracy also undercuts the weight of all other evidence indicating Mitsubishi Electric's involvement in information exchanges, which, as explained below, fall of their own weight in any event.

> **2.** **Evidence of Mitsubishi Electric's Having Met with Chunghwa Picture Tubes in the Late 1990s Does Not Implicate Mitsubishi Electric in the "Glass Meetings" or Any Aspect of the Alleged Conspiracy.**

Evidence that ███████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████ does not suggest that Mitsubishi Electric was a member of the "Glass Meetings" or the conspiracy the meetings allegedly supported. Simply put, Plaintiffs failed to develop any evidence to support such a proposition.

Plaintiffs never obtained any evidence from the Chunghwa witnesses that Mitsubishi Electric joined the alleged "Glass Meetings" conspiracy or that Chunghwa held bilateral discussions ___with Mitsubishi Electric___ to, as Plaintiffs alleged, "communicat[e] whatever CRT pricing agreements and/or output agreements had been reached" during a top-level or management level "Glass Meeting." (*See* Tech Data Compl. ¶ 141.) Nor did any evidence of Mitsubishi Electric's connection to the Complaints' "Glass Meetings" conspiracy emerge from documents discovered (and relied upon by Plaintiffs) in the case:



- ███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████

- ███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████ connected to the conspiracy alleged in the Complaints or to any of the "Glass Meetings."

- ███████████████████████████████████████████

2314132.11



Had Mitsubishi Electric actually participated in even one of the "Glass Meetings," perhaps Plaintiffs might have a basis to allege that bilateral meetings between Mitsubishi Electric and a company attending the "Glass Meetings" constituted evidence of Mitsubishi Electric's having joined the alleged conspiracy.  But that simply is not the case.  Nor did Mitsubishi Electric conspire by osmosis as Plaintiffs have alleged in a way that now, at the close of discovery, has been revealed to be without any evidentiary support at all.  Moreover, Plaintiffs' evidence as to the purpose of meetings between Mitsubishi Electric and Chunghwa points in a completely different direction:  conduct consistent with lawful behavior.  For example, the

The Chunghwa deposition testimony and documents demonstrate that Plaintiffs' theory of Mitsubishi Electric's liability hangs on a painfully thin reed, namely, that because Mitsubishi

As demonstrated by the Chunghwa evidence, Plaintiffs' allegations concerning Mitsubishi Electric are precisely the kind of insufficiently supported allegations that led the drafters of Rule 56 to develop the summary judgment mechanism in order to prevent trials on claims lacking enough admissible evidence for a reasonable jury to consider.

3. **Plaintiffs' Evidence of Mitsubishi Electric's Involvement in Bilateral Meetings with CRT Producers Other Than Chunghwa Fails To Establish Mitsubishi Electric's Participation in the Alleged Conspiracy.**

Plaintiffs allege a single conspiracy that was centered around the "Glass Meetings" with allegedly facilitating bilateral meetings "used to coordinate prices with CRT manufacturers that did not ordinarily attend the group meetings, such as Defendant Mitsubishi." (Tech Data Am. Compl. ¶¶ 121-35, 149.)[4]   However, as with the Chunghwa meetings discussed above, the scattered evidence of Mitsubishi Electric's participation in bilateral meetings with other CRT producers also falls short and fails to rescue Plaintiffs from summary judgment.   Plaintiffs' circular reasoning that because competitors met, they did so for an unlawful purpose, and therefore the mere fact of their having met is enough to avoid summary judgment on Plaintiffs' claims, is not the law.   Rather, circumstantial evidence like this (there is no direct evidence to indicate that _**any**_ of these meetings or contacts included discussion of an agreement) is insufficient if it does not tend to exclude the possibility of independent conduct by Mitsubishi Electric.   *See In re Citric Acid*, 191 F.3d at 1094. ████████████████████████████

████████████████   information is not enough.   *Id.* at 1103. ████████████████████████

███████████████████████████████   is not enough, unless there is evidence that the information exchanges actually had an impact on pricing.   *Stanislaus Food Prods. Co.*, 2013 U.S. Dist. LEXIS 21744, at *34, citing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 125 (3d Cir. 1999).

a. **The Competitor Contacts To Which Mitsubishi Electric Admitted Do Not Constitute Sufficient Evidence of Participation in the Conspiracy.**

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████   ████████████████████████

---

[4] Whether the evidence of Mitsubishi Electric's involvement in bilateral meetings with SDI or any other entity might suggest that Mitsubishi Electric somehow was involved in some separate conspiracy or set of conspiracies is irrelevant.  Plaintiffs would not be entitled to seek damages stemming from a conspiracy other than the one they claim injured them, which is focused on the Glass Meetings in which Mitsubishi Electric did not participate.  In short, and despite Plaintiffs' unsupported protestations to the contrary, Mitsubishi Electric simply cannot be connected to the conspiracy alleged in the pleadings.

16

Plaintiffs have failed to establish, from any witness or any document, that any of these contacts affected the ultimate price or were part of the alleged price-fixing conspiracy arising from the "Glass Meetings."

As discussed above, Plaintiffs were not able to show that any of these trade association contacts related to the "Glass Meetings" or to the alleged conspiracy surrounding those meetings.

Witnesses for Mitsubishi Electric denied that of any of those communications related to an unlawful agreement, and Plaintiffs failed to present any evidence to the contrary.  It is not enough to assert, as Plaintiffs are doing here, that the mere fact of the communications establishes Mitsubishi Electric's participation in the alleged conspiracy.

Some of the admitted communications in and as noted above, Plaintiffs have no evidence to support claims that those meetings related to the alleged conspiracy.   Other competitor contacts are discussed in greater detail below, in view of Plaintiffs' repeated reliance on them.

> **b.   Mitsubishi Electric's Contacts with SDI Do Not Establish Mitsubishi Electric's Participation in the Alleged Conspiracy.**

Plaintiffs have focused on alleged meetings between Mitsubishi Electric and SDI, but none of these meetings, and no evidence surrounding them, rises to a level that would avert summary judgment on Plaintiffs' conspiracy claims against Mitsubishi Electric.

But this document does not establish sufficient evidence of a conspiracy so as to avoid summary judgment.

1   First, the ██████████████ on its face, does not create a genuine issue of fact as to

2   Mitsubishi Electric's participation in the alleged conspiracy. ████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████    ███

9   ████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  Second, on its face, the document does not evidence any kind of discussion indicating

17  that the parties were agreeing to fix prices or to collude in any way.   Far from evidencing

18  collusion between SDI and Mitsubishi Electric, the ████████████████ instead suggests a

19  competitive intent:

20      •  ████████████████████████████████████████████████████████

21         ████████████████████████████████████████████████████████

22         ████████████████████

23      •  ████████████████████████████████████████████████████████

24         ████████████████████████████████████████████████

25      •  ████████████████████████████████████████████████████████

26         ████████████████████████████████████████████████████████

27         ████████████████████

28

18

1    As a whole, the document contains no *quid pro quo*, pricing agreement, or customer or

2    supply allocation of any kind, much as Plaintiffs wish to characterize it as such.  Accordingly,

3    despite Plaintiffs' effort to infer that the ████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████ Minimally, then, this document, on

7    which the entire SDI interrogatory is apparently based, is more consistent with competition than

8    conspiracy.

9    Third, the person probably in the best position to put flesh on the bone of Plaintiffs'

10   inferences of conspiracy from ████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████

21   ██████████████████████████████████████████████████████████

22        ██████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████████████

26   ████, is insufficient to present a genuine issue of material fact as to Sherman Act conspiracy

27   allegations.  Plaintiffs needed more, as they recognized in their unsuccessful effort to compel an

28   additional Rule 30(b)(6) deposition of SDI, and they have failed to deliver.

19

c.      **Plaintiffs Are Not** ██████████████████

████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ But the document does not get Plaintiffs

over the hump on summary judgment, ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ But the key element of Plaintiffs'

case, namely an agreement on price or a connection to the alleged conspiracy, is missing. ███

████████████████████████████████████████████████████████

██████████████████████████████████████████████ ███

██████████████████████████████████████████ Far from

reflecting collusion, the document reflects competition among the market participants.

Moreover, the 2004 timing of these meetings puts them at near the end of Mitsubishi

Electric's involvement in the CRT business: ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

do not support an inference that Mitsubishi Electric was actively conspiring with either of these

companies, or any other company. ██████████████████████████████

███████████████████████████████████████ it does not evidence Mitsubishi Electric's involvement in price-fixing.

> **d.** **Plaintiffs' Expert Opinion Does Not Change the Summary Judgment Calculus.**

Mitsubishi Electric's expert, Dr. Dov Rothman, advanced several logical, economic reasons that would explain how Mitsubishi Electric's alleged conduct in this case is consistent with lawful behavior.  Plaintiffs' expert, Dr. Kenneth Elzinga, neither refutes Dr. Rothman's opinion nor provides a basis for concluding that Mitsubishi Electric's conduct in this case tends to exclude lawful behavior.  Rather, Dr. Elzinga appears to have examined selected communications and, based on his reading of those communications, ████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████  An expert, though, is not needed to aid the Court's understanding of the communications themselves.

As is evident from the above discussion concerning Mitsubishi Electric's communications with other CRT producers, those communications do not relate to the conspiracy alleged in this matter, to the "Glass Meetings" at the center of that alleged conspiracy, or to any unlawful agreement of any kind.  Additionally, ████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ █████████████████████  The issue in the case, though, is whether lawful purposes existed for these communications (and Mitsubishi Electric established in Part II(A) above that they did), and whether Plaintiffs can show that their circumstantial evidence tends to exclude independent conduct by Mitsubishi Electric (which Plaintiffs have not done).  ████████████ ███████████████████████████████████████████████████████ ██████████████████████████, but in attempting to shift the burden to Mitsubishi Electric to prove that ████████████████████████████████████████████, Dr. Elzinga failed to rule out pro-competitive explanations for the alleged information exchanges.

Burden-shifting aside, Dr. Elzinga's report provides no basis upon which to deny summary judgment. An expert report "cannot be used to prove the existence of facts set forth therein" in opposition to summary judgment. *In re Citric Acid Litig*., 191 F.3d at 1101; *see Brooke Group Ltd. v. Brown & Williamson Tobacco Corp*., 509 U.S. 209, 242 (1993) ("Expert testimony is useful as a guide to interpreting market facts, but it is not a substitute for them."). In *In re Citric Acid*, the Ninth Circuit affirmed the trial court's grant of summary judgment against a Sherman Act claim for defendant Cargill. Although other defendants concededly formed a cartel, the plaintiffs' case against Cargill was based on circumstantial evidence, such as its participation in a trade association and evidence of information exchanges. *Id*. at 1097, 1102. The plaintiffs argued that the trial court should have denied summary judgment because their economist concluded that Cargill's participation in a price-fixing conspiracy could be inferred from the evidence. *Id*. at 1105 n.9. The court rejected the economist's "conclusory statement" that the evidence permitted an inference of conspiracy, conducted its own review of the evidence, and found that the plaintiffs' evidence was lacking. *Id*.

As in *In re Citric Acid*, this Court should evaluate the liability evidence without deference to the inferences drawn by Plaintiffs' expert economist. This is particularly true where the expert's inferences are based on a simple reading of underlying documents and evidence, which the Court is equally if not better prepared to judge, and where incriminating testimony is wholly lacking. Dr. Elzinga's opinions do not help Plaintiffs avoid summary judgment on their liability claims against Mitsubishi Electric.

2314132.11

## **CONCLUSION**

For the foregoing reasons, Mitsubishi Electric respectfully requests that summary judgment be entered in its favor on all of Plaintiffs' Sherman Act conspiracy claims.  Plaintiffs are asking the Court to infer conspiracy evidence from conduct that cannot be shown to be anticompetitive or that has not been shown to tend to exclude independent action.  The mere fact that competitors met to exchange information about production and pricing does not establish a conspiracy.  Without any testimony or documentary evidence that Mitsubishi Electric's conduct was anything more than that, summary judgment should be granted.

DATED:  November 7, 2014                    JENNER & BLOCK LLP


By: /s/ *Terrence J. Truax*
JENNER & BLOCK LLP
Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
ttruax@jenner.com
mbrody@jenner.com

Brent Caslin (Cal. Bar. No. 198682)
JENNER & BLOCK LLP
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
bcaslin@jenner.com

*Attorneys for Defendants Mitsubishi Electric*
*Corporation, Mitsubishi Electric US, Inc. and,*
*Mitsubishi Electric Visual Solutions America, Inc.*

2314132.11