1   JEROME C. ROTH (State Bar No. 159483)
    Jerome.roth@mto.com
2   HOJOON HWANG (State Bar No. 184950)
    hojoon.hwang@mto.com
3   MIRIAM KIM (State Bar No. 238230)
    miriam.kim@mto.com
4   MUNGER, TOLLES & OLSON LLP
    560 Mission Street
5   Twenty-Seventh Floor
    San Francisco, California 94105-2907
6   Telephone:     (415) 512-4000
    Facsimile:      (415) 512-4077
7
    WILLIAM D. TEMKO (State Bar No. 98858)
8   william.temko@mto.com
    MUNGER, TOLLES & OLSON LLP
9   355 South Grand Avenue
    Thirty-Fifth Floor
10  Los Angeles, CA 90071-1560
    Telephone:     (213) 683-9100
11  Facsimile:      (213) 687-3702

12  *Attorneys for Defendants LG Electronics, Inc.,*
    *and LG Electronics U.S.A., Inc., LG Electronics*
13  *Taiwan Taipei Co., LTD*

14  *Additional Moving Defendants and Counsel*
    *Listed on Signature Pages*

15              UNITED STATES DISTRICT COURT
16    NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

17  | | |
    |---|---|
    | IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-SC |

18  | | MDL No. 1917 |

19  | This Document Related to: | LG AND MITSUBISHI ELECTRIC SUBSIDIARIES' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - Redacted |

20  | DIRECT PURCHASER ACTIONS | |

21

22  | | [Declaration of Jessica Barclay-Strobel, Declaration of Mavis Chou, Declaration of Matthew Kim, Declaration of Richard C. Wingate, Declaration of Michael T. Brody, Declaration of Lindsay McCaskill and [Proposed] Order filed concurrently herewith] |

23

24  | | Judge:   Hon. Samuel Conti |
    | | Date:    February 6, 2015 |
25  | | Time:    10:00 AM |
    | | Crtrm.:  1, 17th Floor |
26

27

28

LG AND MITSUBISHI ELECTRIC SUBSIDIARIES' NOTICE OF MOT. AND MOT. FOR SUMM. J.;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
25078051.1

1

## NOTICE OF MOTION AND MOTION

2 TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

3      PLEASE TAKE NOTICE THAT on February 6, 2015 at 10:00 a.m. or as soon thereafter as

4 counsel may be heard, in the Courtroom of the Honorable Samuel Conti, located at 450 Golden

5 Gate Avenue, 17th Floor, Courtroom 1, San Francisco, California, 94102.  Defendants LG

6 Electronics U.S.A., Inc. ("LGEUSA"), LG Electronics Taiwan Taipei Co., Ltd. ("LGETT"),

7 Mitsubishi Electric US, Inc. ("MEUS") and Mitsubishi Electric Visual Solutions America, Inc.

8 ("MEVSA") (collectively, "Subsidiary Defendants") will and hereby do move for summary

9 judgment on all claims asserted by Direction Action Plaintiffs Electrograph Systems, Inc. and

10 Electrograph Technologies Corp.; Alfred H. Siegel, solely as trustee of the Circuit City Stores, Inc.

11 Liquidating Trust; Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services,

12 Inc., Best Buy Stores, L.P., Bestbuy.Com, L.L.C., and Magnolia Hi-Fi, Inc.; Target Corp., Sears,

13 Roebuck, and Co., Kmart Corp.; Interbond Corporation of America; Office Depot, Inc.;

14 CompuCom Systems, Inc.; Costco Wholesale Corporation; P.C. Richard & Son Long Island

15 Corporation, Marta Cooperative of America, Inc., and ABC Appliance, Inc.; Schultze Agency

16 Services, LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC; and Tech Data

17 Corporation and Tech Data Product Management, Inc.; Dell Inc. and Dell Products L.P.; and Sharp

18 Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc.[1]; and

19 ViewSonic Corporation (collectively, the "DAPs").

20      Defendants bring this motion pursuant to Federal Rule of Civil Procedure 56 on the grounds

21 set forth in the attached Memorandum of Points and Authorities because the undisputed evidence,

22 even when viewed in the light most favorable to the DAPs, fails to show that Defendants: (1)

23 participated in the alleged conspiracy to fix CRT prices; or (2) are the alter egos of any other

24 defendants that are alleged to have fixed CRT prices.

25

26

---

27 [1] Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. have not named MEUS and MEVSA as Defendants in this litigation; therefore MEUS and MEVSA

28 do not move for summary judgment as to the Sharp Entities.

1

3:07-cv-05944-SC; MDL 1917
LG AND MITSUBISHI ELECTRIC SUBSIDIARIES' NOTICE OF MOT. AND MOT. FOR SUMM. J.;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

25078051.1

This Motion is based on this Notice, the Memorandum of Points and Authorities attached hereto, the Declarations of Jessica Barclay-Strobel, Mavis Chou, Matthew Kim, Richard C. Wingate, Michael T. Brody, and Lindsay D. McCaskill, filed herewith and the exhibits thereto, the Proposed Order filed herewith, any reply papers Defendants may submit, oral argument of counsel, the complete files and records in this case, and such additional matters as the Court may consider.

DATED:  November 7, 2014                    Respectfully submitted,

MUNGER, TOLLES & OLSON LLP
HOJOON HWANG
WILLIAM D. TEMKO
MIRIAM KIM

By:            /s/  *Miriam Kim*
          MIRIAM KIM
*Attorneys for Defendants LG Electronics, Inc., and LG Electronics U.S.A., Inc., LG Electronics Taiwan Taipei Co., LTD.*

JENNER & BLOCK LLP

By: /s/ *Terrence J. Truax*

Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
ttruax@jenner.com
mbrody@jenner.com

Brent Caslin (Cal. Bar. No. 198682)
JENNER & BLOCK LLP
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
telephone:  (213) 239-5100
Facsimile:  (213) 239-5199
bcasling@jenner.com

*Attorneys for Defendants Mitsubishi Electric US, Inc. and Mitsubishi Electric Visual Solutions America, Inc.*

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED ....................................................................................1

SUMMARY OF ARGUMENT ...............................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................................2

    A.    Subsidiary Defendants Did Not Manufacture CRTs Or CRT Finished Products.................................................................................................................2

        1.    LGEUSA .......................................................................................2

        2.    LGETT ..........................................................................................3

        3.    MEUS ...........................................................................................3

        4.    MEVSA .........................................................................................4

    B.    There Is No Evidence Subsidiary Defendants Entered Into Price-Fixing Agreements .............................................................................................................4

        1.    None of Subsidiary Defendants nor their employees attended the over 2,200 meetings at which the DAPs contend CRT price-fixing occurred.........................................................................................4

        2.    Neither Subsidiary Defendants' 30(b)(6) witnesses nor the employees of entities related to Subsidiary Defendants implicate them in any CRT price-fixing conspiracy.............................................5

        3.    Co-defendants have denied Subsidiary Defendants' involvement in any CRT price-fixing conspiracy...................................................5

    C.    Subsidiary Defendants Are Separate Entities From Their Corporate Parents....................................................................................................................6

LEGAL STANDARD..............................................................................................................6

ARGUMENT ...........................................................................................................................7

    A.    There Is No Evidence That Subsidiary Defendants Joined Any Conspiracy To Fix CRT Prices ...........................................................................................7

    B.    Subsidiary Defendants Are Not Liable For Their Corporate Parents' Actions ................................................................................................................10

        1.    There is no evidence that Subsidiary Defendants share a unity of interest with their corporate parents............................................11

        2.    Respecting the corporate identity of Subsidiary Defendants will not result in fraud or injustice. .......................................................13

    C.    There Is No Evidence Against LGETT, Which Is Why Every DAP Except Sears/Kmart Has Voluntarily Dismissed This Defendant .....................................14

CONCLUSION.......................................................................................................................14

LG AND MITSUBISHI ELECTRIC SUBSIDIARIES' NOTICE OF MOT. AND MOT. FOR SUMM. J.;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

25078051.1

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ...................................................................................................7

*Brennan v. Concord EFS, Inc.,*
369 F. Supp. 2d 1127 (N.D. Cal. 2005) ..................................................................12

*Celotrex Corp. v. Catrett,*
477 U.S. 317 (1986) ...................................................................................................7

*Collins v. Associated Pathologists, Ltd.,*
676 F. Supp. 1388 (C.D. Ill. 1987)
*aff'd on same grounds,* 844 F.2d 473 (7th Cir. 1988).............................................8

*Continental Ore Co. v. Union Carbide & Carbon Corp.,*
370 U.S. 690 (1962) ...................................................................................................8

*Doe v. Unocal Corp.,*
248 F.3d 915 (9th Cir. 2001) ..................................................................................11

*Dole Food Co. v. Patrickson,*
538 U.S. 468 (2003)...........................................................................................11, 13

*Fears v. Wilhelmina Model Agency, Inc.,*
02 CIV. 4911(HB), 2004 WL 594396 (S.D.N.Y. Mar. 23, 2004) .........................10

*Hickory Travel Sys., Inc. v. TUI AG,*
213 F.R.D. 547 (N.D. Cal. 2003) .....................................................................12, 13

*In re Citric Acid Litig.,*
191 F.3d 1090 (9th Cir. 1999) .............................................................................7, 10

*In re Citric Acid Litigation,*
996 F. Supp. 951 (N.D. Cal. 1998) ......................................................................9, 10

*In re Oracle Corp. Sec. Litig.,*
627 F.3d 376 (9th Cir. 2010) .....................................................................................7

*In re Thomson McKinnon Sec., Inc.,*
149 B.R. 61 (Bankr. S.D.N.Y. 1992)......................................................................11

*In re Vitamins Antitrust Litig.,*
320 F. Supp. 2d 1 (D.D.C. 2004) ..............................................................................8

*In re W. States Wholesale Natural Gas Litig.,*
605 F. Supp. 2d ...............................................................................................13, 14

LG AND MITSUBISHI ELECTRIC SUBSIDIARIES' NOTICE OF MOT. AND MOT. FOR SUMM. J.;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
25078051.1

1
2

**TABLE OF AUTHORITIES**
(continued)

<u>Page</u>

3
4
*Kirk-Mayer, Inc. v. Pac Ord, Inc.*,
    626 F. Supp. 1168 (C.D. Cal. 1986) ........................................................................8

5
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...................................................................................................7

6
7
*Ministry of Def. of the Islamic Rep. of Iran v. Gould, Inc.*,
    969 F.2d 764 (9th Cir. 1992) ..................................................................................11

8
*The Sample Inc. v. Pendleton Woolen Mills, Inc.*,
    704 F. Supp. 498 (S.D.N.Y. 1989).........................................................................8

9
10
*Trans-World Int'l, Inc. v. Smith-Hemion Prods.*, Inc.,
    972 F. Supp. 1275 (C.D. Cal. 1997) ......................................................................11

11
12
*United States v. Bestfoods*,
    524 U.S. 51 (1998).................................................................................................11

13
*United States v. Jon-T Chems., Inc.*,
    768 F.2d 686 (5th Cir. 1985) .................................................................................12

14
15
*United States v. Pangang Grp. Co.*,
    879 F. Supp. 2d 1052 (N.D. Cal. 2012) ...........................................................12, 14

16
17
*United States v. United States Gypsum Co.*,
    438 U.S. 422 (1978)............................................................................................7, 8

18
**STATE CASES**

19
*In re Lithium Ion Batteries Antitrust Litig.*,
    13-MD-2420 YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ...........................10

20
**STATE STATUTES**

21
22
Sherman Act § 1...........................................................................................................7, 8

23
**FEDERAL RULES**

24
Fed. R. Civ. P. 30(B)(6)...................................................................................................6

25
Fed. R. Civ. P. 56(a) .......................................................................................................6

26
27
28

3:07-cv-05944-SC; MDL 1917

LG AND MITSUBISHI ELECTRIC SUBSIDIARIES' NOTICE OF MOT. AND MOT. FOR SUMM. J.;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

25078051.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES PRESENTED

1.      Whether Defendants LG Electronics U.S.A., Inc. ("LGEUSA"), LG Electronics Taiwan Taipei Co., Ltd. ("LGETT"), Mitsubishi Electric US, Inc. ("MEUS") and Mitsubishi Electric Visual Solutions America, Inc. ("MEVSA") (collectively, "Subsidiary Defendants") are entitled to judgment as a matter of law because the Direct Acton Plaintiffs ("DAPs") have adduced no evidence that Subsidiary Defendants or their employees participated in any anticompetitive conduct related to cathode ray tubes ("CRTs")?

2.      Whether Subsidiary Defendants cannot be held liable for the actions of their respective parent companies, LG Electronics, Inc. ("LGEI") and Mitsubishi Electric Corporation ("MELCO"), given that they adhered to corporate formalities and were not undercapitalized?

### SUMMARY OF ARGUMENT

This motion will streamline the DAPs' sprawling antitrust suits by excising four parties that do not belong in this case.  The DAPs' blunderbuss Complaints lump the Subsidiary Defendants in with 32 other defendants in a purported conspiracy by CRT manufacturers to raise the price of CRTs.  However, Subsidiary Defendants have never manufactured or sold CRTs, entered into any agreement to fix CRT prices, or otherwise participated in any of the anticompetitive conduct alleged by the DAPs.  Instead, after years of discovery, the undisputed facts demonstrate that:

- Neither Subsidiary Defendants nor their employees attended or participated in any of the allegedly anti-competitive communications identified by the DAPs;

- The DAPs fail to identify any other price-fixing or other anticompetitive communications by Subsidiary Defendants; and

- Alleged co-conspirators deny Subsidiary Defendants' involvement in any CRT price-fixing conspiracy.

Nor is there any basis for holding Subsidiary Defendants liable for their co-defendant parent companies' purported antitrust violations under an alter ego theory.  The DAPs cannot satisfy the first prerequisite of alter ego liability – a unity of interest between the subsidiary and its parent – because there is no evidence that Subsidiary Defendants commingled assets with their parent

1  companies or otherwise failed to adhere to corporate formalities.  Nor can the DAPs establish the

2  second prong of alter ego liability – a showing that fraud or injustice would result if the corporate

3  form is respected – because Subsidiary Defendants were never undercapitalized.

4     Because there is no evidence that Subsidiary Defendants participated in any alleged CRT

5  price-fixing conspiracy and there is no ground for imposing alter ego liability, this Court should

6  grant summary judgment in favor of Subsidiary Defendants and dismiss all claims brought by the

7  DAPs against them.

8              **STATEMENT OF UNDISPUTED MATERIAL FACTS**

9     **A.**     **Subsidiary Defendants Did Not Manufacture CRTs Or CRT Finished Products**

10              **1.**     **LGEUSA**

11     LGEUSA, a Delaware corporation headquartered in New Jersey,[1] never manufactured,

12  marketed, sold, or distributed CRTs.[2]  Nor has LGEUSA manufactured CRT finished products,

13  such as televisions or computer monitors.[3]

14     Instead, LGEUSA distributed certain CRT finished products that were manufactured by its

15  parent company, LGEI, or LGEI's wholly owned subsidiaries.[4]  LGEI is also a defendant in this

16  action and is organized under the laws of the Republic of Korea.[5]  From March 1, 1995, through

17  December 31, 1999, LGEI owned a majority interest in LGEUSA and thereafter LGEUSA has been

18  a wholly owned subsidiary of LGEI.[6]

---

[1] Declaration of Richard Wingate ("Wingate Decl.") (LGEUSA) ¶ 1; *See also, e.g.*, Best Buy First Amended Complaint, ECF No. 1978 (Oct. 3, 2013) ("Best Buy Am. Compl."). ¶ 37.

[2] *See* Declaration of Jessica Barclay-Strobel in support of LGEUSA's Motion for Summary Judgment (hereinafter "Barclay-Strobel Decl.") Ex. A (Mok Hyeon Seong (LGEI & LGEUSA) 30(b)(6) Dep. 40:3-7); Wingate  Decl. ¶ 3.

[3] Barclay-Strobel Decl. Ex. B (Kyung Tae Kwon (LGEI & LGEUSA) 30(b)(6) Dep. 59:14-17); Wingate Decl. ¶ 3.

[4] Wingate Decl. ¶ 3.

[5] *See, e.g.*, Best Buy Am. Compl. ¶ 36.

[6] Wingate Decl. ¶ 4.

LG AND MITSUBISHI ELECTRIC SUBSIDIARIES' NOTICE OF MOT. AND MOT. FOR SUMM. J.;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

25078051.1

2.    **LGETT**

LGETT, a Taiwanese corporation headquartered in Taiwan,[7] never manufactured, marketed, sold, or distributed CRTs.[8]  During discovery, all of the DAPs stipulated to the dismissal of LGETT from this action and agreed to provide notice before filing similar claims against LGETT in the future.[9]  Despite this stipulation and in violation of the parties' agreement, however, Sears and Kmart named LGETT as a defendant in their Second Amended Complaint.[10]  Sears and Kmart failed to identify any evidence explaining their decision to re-file claims against LGETT, but have refused to dismiss their claims as to LGETT.[11]

3.    **MEUS**

MEUS, a Delaware corporation headquartered in California, never manufactured, marketed, sold, or distributed CRTs, nor manufactured CRT Products.[12]  Instead, MEUS distributed certain CRT finished products that were manufactured by its parent company, MELCO, or MELCO's wholly owned subsidiaries.[13]  MELCO is also a defendant in this action and is a Japan-based public corporation.[14]  MELCO wholly owns MEUS, indirectly through Mitsubishi Electric US Holdings, Inc. ("MEUH").[15]

---

[7] Declaration of Mavis Chou ("Chou Decl.") (LGETT) Decl. ¶ 2.

[8] *Id.* ¶ 4.

[9] 5/22/12 Corrected Stipulation And Order Dismissing Defendant LG Electronics Taiwan Taipei Co., LTD. (ECF No. 1202); 9/12/14 Stipulation And Order Dismissing Defendant LG Electronics Taiwan Taipei Co., LTD. (ECF No. 2839).

[10] *See* Sears and Kmart Second Amended Complaint ("Sears & Kmart Compl.") (ECF No. 1973), ¶ 26.

[11] *See id.*; Answer of LG Defendants to Sears and Kmart Am. Compl., (ECF No. 2093) (Nov. 4, 2013) ¶ 26.

[12] McCaskill Decl. ¶ 5.

[13] Declaration of Michael T. Brody in Support of MEUS and MEVSA's Motion for Summary Judgment (hereinafter "Brody Decl.") Ex. A. (Highly Confidential Mitsubishi Electric Corp. R. 30(b)(6) Tsukamoto Dep. Vol. I Tr. at 40:9-41:16).

[14] *See, e.g., Tech Data First Amended Complaint*, ECF No. 1911 (Sept. 9, 2013), ¶ 38.

[15] McCaskill Decl. ¶ 3.

### 4.   MEVSA

MEVSA, a Delaware corporation headquartered in California, never manufactured, marketed, sold, or distributed CRTs.[16]

Instead, MEVSA's predecessor in interest, Mitsubishi Digital Electronics America, Inc. ("MDEA"), distributed certain CRT finished products that were manufactured by its Japan-based parent company, MELCO, or MELCO's wholly owned subsidiaries.[17]

### B.   There Is No Evidence Subsidiary Defendants Entered Into Price-Fixing Agreements

Subsidiary Defendants have consistently and expressly denied their involvement in the alleged CRT price-fixing agreements,[18] and the DAPs have produced no evidence to the contrary.

### 1.   None of Subsidiary Defendants nor their employees attended the over 2,200 meetings at which the DAPs contend CRT price-fixing occurred

In response to discovery requests, the DAPs produced a chart that they contend ████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Over the course of two months, the DAPs revised and added to that chart, ultimately producing a supplemental Exhibit A ("Supplemental Exhibit A") listing over 2,200 allegedly anticompetitive communications.[20]  Then, the evening before Defendants' motions for summary judgment were due—and again on the day Defendants filed their summary judgment motions—some of the DAPs produced additional versions of Exhibit A (collectively, "November 2014 Supplemental Exhibit A").[21]  None of

---

[16] McCaskill Decl. ¶¶ 2, 5.

[17] Brody Decl. Ex. A at 41.

[18] Barclay-Strobel Decl. Ex. C (2/10/2012 Supplemental Resp. by LGEI to DPPs' First Set of Interrogs. p. 4:23-27, 9:6-11); Brody Decl. Ex. B (Highly Confidential Mitsubishi Electric Corp. R. 30(B)(6) Tsukamoto Dep. Vol. II Tr. at 260:9-17.).

[19] Barclay-Strobel Decl. Ex. D (8/14/14 DAPs' Letter to Hon. Vaughn R. Walker p. 3-4)

[20] Barclay-Strobel Decl. ¶ 6.

[21] Id.

1   Subsidiary Defendants nor their employees appear on the September or November 2014

2   Supplemental Exhibit A.[22]

### 2.   Neither Subsidiary Defendants' 30(b)(6) witnesses nor the employees of entities related to Subsidiary Defendants implicate them in any CRT price-fixing conspiracy

5   The DAPs deposed three LGEUSA 30(b)(6) witnesses and several current or former

6   employees of LG-related entities.[23]  Even when viewed in the light most favorable to DAPs, these

7   witnesses' testimony does not identify any price-fixing or other anticompetitive communications by

8   Subsidiary Defendants.  Likewise, even when viewed in the light most favorable to DAPs, no

9   exhibits were introduced suggesting unlawful communications or agreements by Subsidiary

10  Defendants.[24]  As to MEVSA and MEUS, no evidence of such illegal activity was developed at all,

11  since the DAPs did not conduct any depositions of MEUS or MEVSA.[25]

### 3.   Co-defendants have denied Subsidiary Defendants' involvement in any CRT price-fixing conspiracy

14  Subsidiary Defendants served discovery requests on the DAPs in an attempt to identify what

15  evidence the DAPs contend supports their allegations that Subsidiary Defendants participated in the

16  alleged conspiracy.[26]  The DAPs responded by citing to the same evidence they identified to

17  support their conspiracy allegations overall, making no attempt to identify conduct allegedly

18  performed by Subsidiary Defendants specifically.[27]  The DAPs' responses to these discovery

19  requests incorporate dozens of documents containing citations to tens of thousands of documents.[28]

20  Despite the sheer volume of documents cited by the DAPs, none of these citations identify or

21  reference allegedly anticompetitive conduct by Subsidiary Defendants.  Indeed, the few references

22

---

23  [22] Declaration of Matthew Kim (hereinafter "Kim Decl.") ¶ 2; McCaskill Decl. ¶ 7; Barclay-Strobel Decl. ¶ 6.

24  [23] Barclay-Strobel Decl. ¶ 2.

25  [24] *Id.*

    [25] Brody Decl. ¶ 2.

26  [26] Barclay-Strobel Decl. ¶ 7 Brody Decl. ¶ 5, Ex. C..

27  [27] Barclay-Strobel Decl. ¶ 8; Brody Decl. ¶ 6, Ex. D.

28  [28] Barclay-Strobel Decl. ¶ 8; Brody Decl. ¶ 6, Ex. D.

1  to Subsidiary Defendants' discovery responses contain unequivocal denials that they participated in

2  any CRT price-fixing conspiracy.[29]  LGEUSA's discovery responses – cited by the DAPs

3  purportedly in support of their claims against LGEUSA – explicitly *deny* that LGEUSA participated

4  in any conspiracy to fix the prices of CRTs.[30]  Moreover, MEUS and MEVSA's parent

5  corporation's Rule 30(B)(6) testimony also denied MEUS' or MEVSA's involvement in the alleged

6  conspiracy.[31]

7     **C.   Subsidiary Defendants Are Separate Entities From Their Corporate Parents**

8          Subsidiary Defendants do not commingle financial assets with their corporate parents.[32]

9  Rather, Subsidiary Defendants maintain separate corporate bank accounts, maintain independent

10  financial records, and report their annual profits and losses separately from their corporate parents.[33]

11  Subsidiary Defendants hold regular board meetings.[34]  They do not share office space with their

12  corporate parents.[35]  Their respective corporate parents are not involved in the day-to-day

13  operations of Subsidiary Defendants.[36]  Nor are there any allegations, much less evidence, that

14  Subsidiary Defendants were undercapitalized.

15     **LEGAL STANDARD**

16          Summary judgment is appropriate when there is no genuine issue of material fact and the

17  moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The party moving

18  for summary judgment has the initial burden of identifying the absence of a genuine issue of

19

20

21  [29] *See, e.g.*, Barclay-Strobel Decl. Ex. F (11/25/13 Samsung SDI Co., Ltd.'s Responses to Dell's
22  First Set of Requests for Admission Response pp. 31:4-35:17) (cited in 8/21/14 Best Buy's Objs.
    and Responses to LGEUSA's Third Set of Interrogs. p. 7:15-16).

23  [30] *See, e.g.*, Barclay-Strobel Decl. Ex. C (2/10/2012 Supplemental Resp. by LGEI to DPPs' First Set
    of Interrogs. p. 4:23-27, 9:6-11).

24  [31] Brody Decl., Ex. B at 260:9-17.

25  [32] Wingate Decl. ¶ 5; Chou Decl. ¶ 5; McCaskill Decl. ¶¶ 8. 9.

26  [33] Wingate Decl. ¶ 6; Chou Decl. ¶ 6; McCaskill Decl. ¶¶ 8, 9.

27  [34] Wingate Decl. ¶ 7; Chou Decl. ¶ 7; McCaskill Decl. ¶ 10.

    [35] Wingate Decl. ¶ 8; Chou Decl. ¶ 8; McCaskill Decl. ¶ 11.

28  [36] Wingate Decl. ¶ 9; Chou Decl. ¶ 9; McCaskill Decl. ¶ 12.

1  material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *In re Oracle Corp.*
2  *Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

3        Where, as here, the moving party meets its burden, the non-moving party must identify facts
4  showing that a genuine issue for trial exists.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing
5  *Celotrex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The non-moving party may not rely on the
6  pleadings but must come forward with evidence – affidavits, depositions, answers to
7  interrogatories, or admissions – from which a jury could reasonably render a verdict in its favor.  *Id.*
8  (citing *Anderson*, 477 U.S. at 252).  "The nonmoving party must show more than the mere
9  existence of a scintilla of evidence" or "some 'metaphysical doubt' as to the material facts at issue."
10  *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  As
11  applied to antitrust claims, this summary judgment standard bars a court from inferring
12  "conspiratorial behavior from evidence consistent with both lawful and unlawful conduct" because
13  doing so "would deter pro-competitive conduct – an especially pernicious danger in light of the fact
14  that the very purpose of the antitrust laws is to promote competition."  *In re Citric Acid Litig.*, 191
15  F.3d 1090, 1094 (9th Cir. 1999).

16  **ARGUMENT**

17        The Court should grant Subsidiary Defendants' motion for summary judgment because the
18  DAPs have failed to meet their burden to produce evidence that Subsidiary Defendants:
19  (1) participated in the alleged conspiracy to fix CRT prices; or (2) are the alter egos of their
20  respective parent corporations, who are also defendants in this case.

21      A.    **There Is No Evidence That Subsidiary Defendants Joined Any Conspiracy To**
22            **Fix CRT Prices**

23        As plaintiffs bringing claims under Section 1 of the Sherman Act, the DAPs have the burden
24  of proving an agreement to fix prices.  *See In re Citric Acid Litig.*, 191 F.3d 1090, 1093, 1094 n.2
25  (9th Cir. 1999).  Participation in a price-fixing agreement "c[an] only be predicated on the knowing
26  involvement of each defendant, considered individually, in the conspiracy charged."  *United States*

27
28

7

1   *v. United States Gypsum Co*., 438 U.S. 422, 463 (1978).  The DAPs' failure to meet this standard

2   under the Sherman Act requires that their state law claims fail as well.[37]

3         Baffled by their inclusion in this litigation, Subsidiary Defendants served discovery requests

4   on the DAPs to identify evidence showing that each one of the Subsidiary Defendants, *considered*

5   *individually*, participated in the alleged conspiracy.[38]  In their responses, which are substantively

6   identical, the DAPs made no attempt to distinguish between Subsidiary Defendants and the 32 other

7   defendants in this case, instead taking the position that doing so was an impermissible attempt to

8   focus on the separate parts of a conspiracy rather than "looking at it as a whole" under *Continental*

9   *Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962).[39]  Regardless of the propriety of

10  that objection with respect to other discovery, *Continental Ore* has no application to the present

11  inquiry, namely, whether each one of Subsidiary Defendants participated in the conspiracy charged.

12  As the Supreme Court has made clear, that inquiry requires that each defendant by "considered

13  individually."  *United States Gypsum Co.*, 438 U.S. at 463; *In re Vitamins Antitrust Litig.*, 320 F.

14  Supp. 2d 1, 19 (D.D.C. 2004) (granting defendant UCB summary judgment on antitrust claim

15  because evidence did not show that "defendant, considered individually," had "participated in an

16  all-vitamins conspiracy").

17        Despite the DAPs' obfuscation, there is no evidence that any of Subsidiary Defendants

18  participated in anticompetitive conduct or engaged in the price fixing alleged in the DAPs'

19  complaints.  Rather, the evidence shows:

---

21  [37] *See e.g. The Sample Inc. v. Pendleton Woolen Mills, Inc.*, 704 F. Supp. 498, 505 (S.D.N.Y. 1989)
22  (granting summary judgment to defendant because plaintiff's failure to adduce evidence of a price-
    fixing "conspiracy under the Sherman Act [Section 1]" meant "plaintiff failed to make the requisite
23  showing under the Donnelly Act"); *Collins v. Associated Pathologists, Ltd.*, 676 F. Supp. 1388,
    1406 (C.D. Ill. 1987) (granting summary judgment to defendants because "the analysis" under
24  Section 1 of the Sherman Act "is fully applicable under the Illinois Antitrust Statute") *aff'd on same
    grounds*, 844 F.2d 473, 480 (7th Cir. 1988); *Kirk-Mayer, Inc. v. Pac Ord, Inc.*, 626 F. Supp. 1168,
25  1172 (C.D. Cal. 1986) (granting summary judgment to defendants on plaintiff's Cartwright Act
    claim "because the issue is identical to the Sherman Act § 1 issue previously decided" in
26  defendants' favor).

27  [38] Barclay-Strobel Decl. ¶ 7.

28  [39] *See, e.g.*, Barclay-Strobel Decl. Ex. E (8/21/14 Best Buy's Objs. and Responses to LGEUSA's
    Third Set of Interrogs. p. 5:9-10).

- None of Subsidiary Defendants nor any of their employees appear on any of the versions of the Supplemental Exhibit A,[40] which the DAPs contend ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████[41]

- None of Subsidiary Defendants' 30(b)(6) witnesses nor the current or former employees of LG- or Mitsubishi-related entities deposed in this case identified a price-fixing or other anticompetitive communication by Subsidiary Defendants, and no exhibits were introduced suggesting such a communication by Subsidiary Defendants.[42]  In the case of MEUS and MEVSA, no such depositions even took place and MELCO's 30(b)(6) deponent explicitly denied involvement of MEUS or MEVSA in the alleged conspiracy.[43]

- The documents that the DAPs identified in their discovery responses as evidence of Subsidiary Defendants' participation in the alleged conspiracies undermine the DAPs' case rather than support it.  These documents, such as LGEUSA's and its co-defendants' discovery responses, flatly *deny* that LGEUSA participated in a CRT price-fixing conspiracy.[44]

Courts routinely grant motions for summary judgment where, as here, the plaintiff's evidence fails to show that the defendant attended any alleged price-fixing meeting, the defendant's witnesses deny involvement in a conspiracy, and the alleged co-conspirators deny the defendant's involvement in the conspiracy.  In *In re Citric Acid Litigation*, the court granted summary judgment to Cargill, which was one of five major citric acid producers, on the grounds that it was not a member of a citric acid price-fixing conspiracy.  996 F. Supp. 951, 953 (N.D. Cal. 1998) (Smith, J.) (hereinafter "*Citric Acid I*").  The other four producers had pled guilty to criminal charges and

---

[40] Kim Decl. ¶ 2; McCaskill Decl. ¶ 7; Barclay-Strobel Decl. ¶ 6.

[41] Barclay-Strobel Decl. Ex. D (8/14/14 DAPs' Letter to Hon. Vaughn R. Walker p. 3-4)

[42] Barclay-Strobel Decl. ¶ 2.

[43] Brody Decl. ¶ 2, Ex. B at 260:9-17.

[44] *See, e.g.*, Barclay-Strobel Decl. Ex. F (11/25/13 Samsung SDI Co., Ltd.'s Responses to Dell's First Set of Requests for Admission Response pp. 31:4-35:17); Barclay-Strobel Decl. Ex. C (2/10/2012 Supplemental Resp. by LGEI to DPPs' First Set of Interrogs. p. 4:23-27, 9:6-11).

25078051.1

1   settled civil damages actions for conspiring to "divide the market among them and to raise the price

2   of citric acid by limiting sales." *Id*.  The court found "[m]ost persuasive" that "no one from Cargill

3   attended any of the meetings at which the conspirators allocated market share." *Citric Acid I* at

4   955.  The court also found telling that one of Cargill's co-defendants "did not mention Cargill"

5   when asked to identify fellow "conspirators" and that "Cargill employees who were deposed denied

6   that Cargill was involved in a price-fixing conspiracy." *Id*.  The Ninth Circuit affirmed on the same

7   basis, reasoning that "Cargill was not present" at the meetings where price-fixing occurred and none

8   of Cargill's co-defendants "identified Cargill as a coconspirator." *In re Citric Acid Litig.*, 191 F.3d

9   1090, 1098 (9th Cir. 1999) (hereinafter "*Citric Acid II*").

10          The same is true here: the DAPs have failed to produce evidence that Subsidiary Defendants

11   ever attended an alleged price-fixing meeting, Subsidiary Defendants deny involvement in any CRT

12   price-fixing conspiracy, and the alleged co-conspirators also deny Subsidiary Defendants'

13   involvement.  In short, the DAPs have failed to identify any evidentiary support for their inflated

14   allegations that Subsidiary Defendants participated in the alleged conspiracy.  *See also Fears v.*

15   *Wilhelmina Model Agency, Inc.*, 02 CIV. 4911(HB), 2004 WL 594396 (S.D.N.Y. Mar. 23, 2004)

16   (granting summary judgment on antitrust claims because defendant had "never even attended a

17   meeting of" the conspirators); *In re Lithium Ion Batteries Antitrust Litig.*, 13-MD-2420 YGR, 2014

18   WL 309192, *13 (N.D. Cal. Jan. 21, 2014) (dismissing antitrust claim against foreign defendants'

19   United States subsidiaries because nothing showed the subsidiaries "consciously agreed to

20   participate in, or could be charged with knowledge of, an alleged price-fixing conspiracy").

21          **B.**     **Subsidiary Defendants Are Not Liable For Their Corporate Parents' Actions**

22          To the extent that the DAPs' Complaints invoke an alter ego theory in an attempt to hold

23   Subsidiary Defendants liable for purported antitrust violations of their respective corporate parents,

24   this attempt must fail.[45]  The DAPs have offered no reason to disregard the well-established

25   "principle of corporate law deeply ingrained in our economic and legal systems" that a subsidiary

26   and its parent corporation are distinct entities which cannot be held liable for each other's acts.

27

28

---

[45] *See, e.g.*, Best Buy Am. Compl. ¶ 36 (alleging that "LGEI dominated and controlled the finances, policies and affairs of LGEUSA relating to the antitrust violations alleged").

*United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  The alter ego doctrine by which a court "holds a subsidiary liable for obligations of its parent" is a "rare" exception to this general rule.  *In re Thomson McKinnon Sec., Inc.*, 149 B.R. 61, 73 (Bankr. S.D.N.Y. 1992); *cf. Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).  The DAPs have failed to justify invocation of that rare exception here.

"[T]o satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist; and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'"  *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001).[46]  The DAPs cannot establish either of these two requirements for alter ego liability, and thus cannot hold Subsidiary Defendants liable for the actions of their corporate parents.

### 1.    There is no evidence that Subsidiary Defendants share a unity of interest with their corporate parents

The unity-of-interest prong of the alter ego test examines whether "sufficient respect was paid to corporate formalities."  *Ministry of Def. of the Islamic Rep. of Iran v. Gould, Inc.*, 969 F.2d 764, 769 (9th Cir. 1992).  This prong cannot be satisfied by activities that "are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures."  *United States v. Bestfoods*, 524 U.S. 51, 72 (1998).  Nor can this prong be satisfied by an overlap in officers or directors, given that it is "entirely appropriate" and "normal" for a parent and subsidiary to "have identical directors and officers."  *Id.* at 69.  Nor is an entity's status as a wholly owned subsidiary sufficient to establish an alter ego relationship with its parent.  *See Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1137 (N.D. Cal. 2005); *see also United States*

---

[46] Because the DAPs have insufficient evidence to establish an alter ego relationship under any potentially applicable state law, this Court need not decide which law applies here.  The alter ego "tests do not differ in any material way" between Delaware, where LGEUSA, MEUS, and MEVSA are incorporated, and California.  *Trans-World Int'l, Inc. v. Smith-Hemion Prods.*, Inc., 972 F. Supp. 1275, 1291 (C.D. Cal. 1997).

3:07-cv-05944-SC; MDL 1917
LG AND MITSUBISHI ELECTRIC SUBSIDIARIES' NOTICE OF MOT. AND MOT. FOR SUMM. J.;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
25078051.1

*v. Jon-T Chems., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985) ("[O]ne-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil.")

Instead, the DAPs must produce evidence of the following factors to establish a unity of interest: (1) the parent and subsidiary commingle funds; (2) the two entities disregard corporate formalities; (3) one entity holds itself out as liable for the debts of the other; (4) the entities share the same offices and employees; and (5) the parent "dictates every facet of the subsidiary's business," including "routine matters of day-to-day operation." *United States v. Pangang Grp. Co.*, 879 F. Supp. 2d 1052, 1067 (N.D. Cal. 2012).

The DAPs have no evidence to establish these factors. Subsidiary Defendants do not commingle financial assets with their corporate parents.[47] Rather, Subsidiary Defendants maintain separate corporate bank accounts, maintain independent financial records, and report their annual profits and losses separately from their corporate parents.[48] Subsidiary Defendants have diligently adhered to corporate formalities, such as regular board meetings.[49] Subsidiary Defendants do not share office space with their corporate parents.[50] Nor are their respective corporate parents involved in the day-to-day operations of Subsidiary Defendants.[51]

In *Hickory Travel Sys., Inc. v. TUI AG*, this Court held that there was no alter ego relationship between a parent and its subsidiary even though the plaintiff had developed stronger evidence of a close parent-subsidiary relationship than DAPs offer here. 213 F.R.D. 547, 554 (N.D. Cal. 2003) (Conti, J.) In *Hickory Travel*, the parent referred to its wholly owned subsidiaries "as divisions and not separate companies, report[ed] their earnings in annual statements, boast[ed] of corporate integration, and … made decisions about restructuring the businesses of some of those subsidiaries." *Id.* However, this Court reasoned that these facts did "not suffice to make a prima

---

[47] Wingate Decl. ¶ 5; Chou Decl. ¶ 5; McCaskill Decl. ¶ 8.

[48] Wingate Decl. ¶ 6; Chou Decl. ¶ 6; McCaskill Decl. ¶¶ 8, 9.

[49] Wingate Decl. ¶ 7; Chou Decl. ¶ 7; McCaskill Decl. ¶ 10.

[50] Wingate Decl. ¶ 8; Chou Decl. ¶ 8; McCaskill Decl. ¶ 11.

[51] Wingate Decl. ¶ 9; Chou Decl. ¶ 9; McCaskill Decl. ¶ 12.

LG AND MITSUBISHI ELECTRIC SUBSIDIARIES' NOTICE OF MOT. AND MOT. FOR SUMM. J.;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

25078051.1

1   facie case of alter ego relationships" because a "parent corporation may even direct some of the

2   activities of the subsidiary, and report the subsidiary's income as its own, without having separate

3   corporate identities be disregarded."  *Id.* at 553-54.

4        Following similar reasoning, other courts have dismissed antitrust claims on the grounds

5   that no alter ego relationship existed between a parent and subsidiary even though the plaintiff

6   established some factors showing a unity of interest.  In *In re W. States Wholesale Natural Gas*

7   *Litig.*, for example, the court dismissed antitrust claims because the parent and its wholly owned

8   subsidiary were not alter egos, but rather entities that acted in a manner "consistent with [the

9   parent's] investor oversight role."  605 F. Supp. 2d 1118, 1133-34 (D. Nev. 2009).

10  Notwithstanding that the "two companies shared office space and staff," there was "daily reporting

11  of information from [the subsidiary] to" the parent, and the parent "provided financing to" the

12  subsidiary and "in return received loan repayments and/or dividends," the court found that no alter

13  ego relationship existed.  *Id.*

14       In sum, like the plaintiffs in *Hickory Travel* and *In re W. States Wholesale Natural Gas*

15  *Litig.*, the DAPs have failed to establish a unity of interest between Subsidiary Defendants and their

16  parent corporations.  On this basis alone, any alter ego theory must fail.

17            **2.   Respecting the corporate identity of Subsidiary Defendants will not
                     result in fraud or injustice.**

18

19       Alter ego liability is also inappropriate here for the independent reason that the DAPs lack

20  evidence showing that holding Subsidiary Defendants liable for the acts of their corporate parents is

21  necessary to avoid fraud or injustice.  *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).

22  This showing requires proof of "some fraudulent intent at [the subsidiaries'] inception or some later

23  abuse of the corporate form such that failing to treat the entities as one would be inequitable"; for

24  example, where the subsidiary is "undercapitalized at its inception."  *In re W. States Wholesale*

25  *Natural Gas Litig.*, 605 F. Supp. 2d at 1133-34 (dismissing antitrust claims due to plaintiff's failure

26

27

28

LG AND MITSUBISHI ELECTRIC SUBSIDIARIES' NOTICE OF MOT. AND MOT. FOR SUMM. J.;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
25078051.1

1  to show an injustice would result if parent and subsidiaries' corporate forms were respected);

2  *United States v. Pangang Grp. Co.*, 879 F. Supp. 2d 1052, 1067 (N.D. Cal. 2012).[52]

3       Here, there is no evidence or even the allegation that Subsidiary Defendants were

4  undercapitalized.  Nor is there any other basis to conclude that an injustice will result if this Court

5  follows the general rule that a subsidiary's corporate separateness from its parent must be respected.

6       **C.**    <u>**There Is No Evidence Against LGETT, Which Is Why Every DAP Except**</u>

7  <u>**Sears/Kmart Has Voluntarily Dismissed This Defendant**</u>

8       Every DAP except Sears and Kmart has voluntarily dismissed LGETT from this litigation

9  because there was and is no evidence against this entity.[53]  Despite a contractual obligation to

10  inform LGETT before pursing allegations against it, Sears and Kmart failed to do so.  Moreover,

11  Sears and Kmart have failed to identify any basis for their allegations against LGETT, despite

12  repeated requests from LGETT's counsel.  For this additional reason, as well as the arguments set

13  forth above with respect to the other Subsidiary Defendants, summary judgment should be granted

14  in LGETT's favor.

15       <u>**CONCLUSION**</u>

16       There is no evidence that Subsidiary Defendants, who neither manufactured, marketed, sold,

17  or distributed CRTs, were part of the alleged conspiracies among CRT manufacturers to fix CRT

18  prices.  Nor are Subsidiary Defendants the alter egos of their parent corporations.  Defendants

19  therefore request that the Court grant motion for summary judgment on all claims in favor of

20  LGEUSA, LGETT, MEUS, and MEVSA.

21

22

23

24

25  [52] The purported "illegal price manipulation [in an antitrust case] cannot itself constitute the fraud

26  or injustice necessary to pierce the corporate veil."  *In re W. States Wholesale Natural Gas Litig.*, 605 F. Supp. 2d at 1133-34.

27  [53] See 5/22/12 Corrected Stipulation And Order Dismissing Defendant LG Electronics Taiwan Taipei Co., LTD. ECF No. 1202; and, 9/12/14 Stipulation And Order Dismissing Defendant LG

28  Electronics Taiwan Taipei Co., LTD. ECF No. 2839.

LG AND MITSUBISHI ELECTRIC SUBSIDIARIES' NOTICE OF MOT. AND MOT. FOR SUMM. J.;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

25078051.1

DATED:  November 7, 2014

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP
HOJOON HWANG
WILLIAM D. TEMKO
MIRIAM KIM
LAURA K. LIN
CLAIRE YAN
JESSICA BARCLAY-STROBEL


By:   /s/  Miriam Kim
          MIRIAM KIM
*Attorneys for Defendants LG Electronics, Inc., and LG Electronics U.S.A., Inc., LG Electronics Taiwan Taipei Co., LTD*


JENNER & BLOCK LLP


By:   /s/  Terrence J. Truax

Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
mbrody@jenner.com

Brent Caslin (Cal. Bar. No. 198682)
**JENNER & BLOCK LLP**
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
telephone:  (213) 239-5100
Facsimile:  (213) 239-5199
bcasling@jenner.com

*Attorneys for Defendants Mitsubishi Electric US, Inc. and Mitsubishi Electric Visual Solutions America, Inc.*

LG AND MITSUBISHI ELECTRIC SUBSIDIARIES' NOTICE OF MOT. AND MOT. FOR SUMM. J.;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

25078051.1