DAVID L. YOHAI *(pro hac vice)*
ADAM C. HEMLOCK *(pro hac vice)*
DAVID E. YOLKUT *(pro hac vice)*
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
E-mail: david.yohai@weil.com

JEFFREY L. KESSLER *(pro hac vice)*
A. PAUL VICTOR *(pro hac vice*)
EVA W. COLE *(pro hac vice)*
MOLLY M. DONOVAN *(pro hac vice)*
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-7400
E-mail:  jkessler@winston.com

*Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)*

[Additional Moving Defendants and Counsel Listed on Signature Pages]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **In re CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master No.:  3:07-cv-05944 SC |
| This Document Relates to: | MDL No. 1917 |
| ALL INDIRECT-PURCHASER ACTIONS | **DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST INDIRECT PURCHASER PLAINTIFFS AND CERTAIN DIRECT ACTION PLAINTIFFS FOR LACK OF ANTITRUST INJURY AND ANTITRUST STANDING UNDER FEDERAL AND CERTAIN STATE LAWS** |
| *Electrograph Sys., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-01656; | |
| *Electrograph Sys., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05724; | |
| *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502; | |
| *Siegel v. Technicolor SA, et al.*, No. 13-cv-05261; | Date:      January 16, 2015 |
| *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513; | Time:      10:00 a.m. |
| *Best Buy Co., Inc., et al. v. Technicolor SA, et* | Place:     Courtroom 1, 17th Floor |
| | Judge:    Hon. Samuel Conti |

1   *al.*, No. 13-cv-05264;

2   *Target Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514;

3   *Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686;

4

5   *Sears, Roebuck & Co., et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514;

6   *Sears, Roebuck & Co., et al. v. Technicolor SA, et al.*, No. 13-cv-05262;

7

8   *Interbond Corp. of Am. v. Hitachi, Ltd., et al.*, No. 11-cv-06275;

9   *Interbond Corp. of Am. v. Technicolor SA, et al.*, No. 13-cv-05727;

10

11   *Office Depot, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06276;

12   *Office Depot, Inc. v. Technicolor SA, et al.*, No. 13-cv-05726;

13

14   *CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06396;

15   *Costco Wholesale Corp. v. Hitachi, Ltd., et al.*, No. 11-cv-06397;

16

17   *Costco Wholesale Corp. v. Technicolor SA, et al.*, No. 13-cv-05723;

18   *P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02648;

19

20   *P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al.*, No. 13-cv-05725;

21   *Schultze Agency Servs., LLC v. Hitachi, Ltd., et al.*, No. 12-cv-02649;

22   *Schultze Agency Servs., LLC v. Technicolor SA, et al.*, No. 13-cv-05668;

23

24   *Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, No. 13-cv-00157

25   *Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd,. et al.*, No. 14-cv-02510

26

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

27   ## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 16, 2015 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Samuel Conti, the undersigned Defendants ("Defendants") will and hereby do move for partial summary judgment in Defendants' favor under Federal Rule of Civil Procedure 56.

Defendants seek partial summary judgment under Federal Rule of Civil Procedure 56 on the basis that Plaintiffs[1] that purchased finished televisions and computer monitors that incorporate cathode ray tubes ("CRT Finished Products") lack antitrust injury and antitrust standing to pursue their claims under federal law and the antitrust laws of California, Illinois, Iowa, Maine, Michigan, Nebraska, New Mexico, New York, Vermont, West Virginia, and the District of Columbia.[2]

This motion is based upon this Notice of Motion, the following Memorandum and Points of Authorities, the materials in the record in these actions, argument of counsel, and such other matters as the Court may consider.

---

[1] "Plaintiffs" is defined here to include (i) Indirect Purchaser Plaintiffs ("**IPPs**") and (ii) Direct Action Plaintiffs ("**DAPs**") that bought televisions and/or computer monitors containing a CRT, rather than CRT tubes themselves.

[2] The following Plaintiffs assert claims based upon their purchases of CRT Finished Products under the laws of the following jurisdictions: **District of Columbia**: IPPs; **California**: IPPs, CompuCom Systems, Inc. ("**CompuCom**"); **Costco** Wholesale Corporation ("**Costco**"); Electrograph Systems, Inc. and Electrograph Technologies Corp. ("**Electrograph**"); Office Depot, Inc. ("**Office Depot**"); P.C. Richard & Son Long Island Corporation, MARTA. Cooperative of America, Inc. and ABC Appliance, Inc. ("**P.C. Richard**"); Tech Data Corporation and Tech Data Product Management, Inc. ("**Tech Data**"); **Illinois**: Costco, P.C. Richard, Sears Roebuck and Co. ("**Sears**"), Kmart Corp. ("**Kmart**"); **Iowa**: IPPs; **Maine**: IPPs; **Michigan**: IPPs, P.C. Richard, Kmart; **Nebraska**: IPPs; **New Mexico**: IPPs; **New York**: IPPs, CompuCom, Electrograph, P.C. Richard; **Vermont**: IPPs; **West Virginia:** IPPs; **Section 1 of the Sherman Act (for injunctive relief and damages):** Interbond Corporation of America, d/b/a BrandsMart USA ("**BrandsMart**"); Best Buy Co., Inc.; Best Buy Purchasing LLC; Best Buy Enterprise Services, Inc.; Best Buy Stores, L.P.; BestBuy.com, L.L.C.; and Magnolia Hi-Fi, LLC ("**Best Buy**"); CompuCom; Costco; Electrograph; Office Depot; P.C. Richard; Sears, Kmart; Target Corporation ("**Target**"); Tech Data; Schultze Agency Services, LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC ("**Tweeter**"); ViewSonic Corporation ("**ViewSonic**"); **Section 1 of the Sherman Act (for damages only):** Alfred H. Siegel, as the Trustee of the Circuit City Stores, Inc. Liquidating Trust ("**Circuit City Trust**"); **Section 1 of the Sherman Act (for injunctive relief only):** IPPs.

## TABLE OF CONTENTS

1
2
Page

3   I.    INTRODUCTION ....................................................................................................1

4   II.   STATEMENT OF UNDISPUTED FACTS ..........................................................4

5         A.   Plaintiffs Purchased CRT Finished Products, Not CRTs Themselves, Yet
               Plaintiffs' Conspiracy Allegations Only Concern CRTs .........................................4
6
          B.   The Separate and Distinct CRT and CRT Finished Products Markets ....................6
7
          C.   Plaintiffs' Experts Have Provided No Opinion that the CRT Finished
8              Products Plaintiffs Purchased Are in the Same Relevant Market As CRT
               Tubes ........................................................................................................................8
9
    III.  PROCEDURAL BACKGROUND...........................................................................8
10
    IV.   STANDARD OF REVIEW ....................................................................................10
11
    V.    ARGUMENT ..........................................................................................................11
12
          A.   Antitrust Injury Is A Requirement For Antitrust Standing Under the
13             Federal Antitrust Laws and the Antitrust Laws of California, Illinois, Iowa,
               Maine, Michigan, Nebraska, New Mexico, New York, Vermont, West
14             Virginia, and the District of Columbia....................................................................11

15        B.   Summary Judgment is Appropriate Because Plaintiffs Have Not and
               Cannot Demonstrate Antitrust Injury, and Thus Do Not Have Antitrust
16             Standing ...................................................................................................................14

17  VI.   CONCLUSION .......................................................................................................21
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

1

2

**Page(s)**

3

**Cases**

4

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.,*
  190 F.3d 1051 (9th Cir. 1999).............................................................. 2, 15, 17

5

6

*Amarel v. Connell,*
  102 F.3d 1494 (9th Cir. 1997) ....................................................................... 2

7

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .................................................................................... 10

8

9

*Aryeh v. Canon Bus. Solutions, Inc.,*
  292 P.3d 871 (Cal. 2013) ............................................................................ 12

10

11

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.,*
  241 F.3d 696 (9th Cir. 2001)......................................................................... 2

12

*Associated Gen. Contractors v. Cal. State Council of Carpenters,*
  459 U.S. 519 (1983)............................................................................*passim*

13

14

*Bhan v. NME Hosps., Inc.,*
  772 F.2d 1467 (9th Cir. 1985).............................................................*passim*

15

16

*Blue Shield of Va. v. McCready,*
  457 U.S. 465 (1982)................................................................................17-18

17

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
  429 U.S. 477 (1977).............................................................................*passim*

18

19

*Cargill, Inc. v. Monfort of Colo., Inc.,*
  479 U.S. 104 (1986)........................................................................... 2, 11, 14

20

21

*Carter v. Variflex, Inc.,*
  101 F. Supp. 2d 1261 (C.D. Cal. 2000)........................................................ 15

22

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986).................................................................................... 11

23

24

*Clayworth v. Pfizer, Inc.,*
  233 P.3d 1066 (Cal. 2010) .......................................................................... 12

25

26

*Crimpers Promotions, Inc. v. Home Box Office, Inc.,*
  724 F.2d 290 (2nd Cir. 1983)...................................................................... 18

27

*In re CRT Antitrust Litig.,*
  No. C-07-5944-SC, 2013 WL 4505701 (N.D. Cal. Aug. 21, 2013) ............ 3, 10, 12, 15

28

*In re CRT Antitrust Litig.*,
    738 F. Supp. 2d 1011 (N.D. Cal. 2010) ............................................................... 9, 12

*Datel Holdings, Ltd. v. Microsoft Corp.*,
    712 F. Supp. 2d 974 (N.D. Cal. 2010) .................................................................... 17

*In re DRAM Antitrust Litig.*,
    516 F. Supp. 2d 1072 (N.D. Cal. 2007) .......................................................... 13, 21

*In re DRAM Antitrust Litig.*,
    536 F.Supp.2d 1129 (N.D. Cal. 2008) ........................................... 14, 16, 18–19, 21

*Exhibitors' Serv. Inc. v. Am. Multi-Cinema, Inc.*,
    788 F.2d 574 (9th Cir. 1986) ................................................................................. 15

*Fieger v. Pitney Bowes Credit Corp.*,
    251 F.3d 386 (2d Cir. 2001) .................................................................................. 13

*Fucile v. Visa U.S.A. Inc.*,
    No. S1560-03, 2004 WL 3030037 (Dec. 27, 2007) ................................................ 13

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
    352 F.3d 367 (9th Cir. 2003) ..................................................................... 2, 15, 19

*Hairston v. Pac. 10 Conference*,
    101 F.3d 1315 (9th Cir. 1996) ............................................................................... 10

*Harbor Drug Co., Inc. v. Medco Containment Servs., Inc.*,
    No. C 95-01949 CW, 1996 WL 441018 (N.D. Cal. July 15, 1996) ................... 18-19

*Hayes v. Cnty. of San Diego*,
    658 F.3d 867 (9th Cir. 2011) ................................................................................. 12

*Ho v. Visa U.S.A. Inc.*,
    No. 112316/00, 2004 WL 1118534 (N.Y. Sup. Ct. Apr. 21, 2004) ....................... 13

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ......................................................................................... 3-4, 11

*Knowles v. Visa U.S.A. Inc.*,
    No. CV-03-707, 2004 WL 2475284 (Me. Super. Ct. Oct. 20, 2004) ..................... 13

*Legal Econs. Evaluators, Inc. v. Metro. Life Ins. Co.*,
    39 F.3d 951 (9th Cir. 1994) ............................................................................... 17-18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    --- U.S. ----, 134 S. Ct. 1377 (2014) ...................................................................... 2

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    935 F. Supp. 2d 666 (S.D.N.Y. 2013) ................................................................ 14-15

[REDACTED] MEMO OF POINTS AND AUTHORITIES ISO MOT. FOR P. SUMM. J.    MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING    Master No. 3:07-cv-05944-SC
iii

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ................................. 12

*Lorenzo v. Qualcomm Inc.*,
    603 F. Supp. 2d 1291 (S.D. Cal. 2009) .......................................................................... 18–19

*Lucas Auto. Eng'g., Inc. v. Bridgestone/Firestone, Inc.*,
    140 F.3d 1228 (9th Cir. 1998) .............................................................................................. 11

*Nass-Romero v. Visa U.S.A., Inc.*,
    279 P.3d 772 (N.M. Ct. App. 2012) ...................................................................................... 13

*Oksanen v. Page Mem'l Hosp.*,
    945 F.2d 696 (4th Cir. 1991) ................................................................................................ 14

*Ostrofe v. H.S. Crocker Co.*,
    740 F.2d 739 (9th Cir. 1984) .......................................................................................... 17–18

*Paladin Assocs. v. Mont. Power Co.*,
    328 F.3d 1145 (9th Cir. 2003) ....................................................................................... 16, 21

*Peterson v. Visa U.S.A. Inc.*,
    No. 03-8080, 2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005) ...................................... 14

*Princeton Ins. Agency, Inc. v. Erie Ins. Co.*,
    690 S.E.2d 587 (2009) .......................................................................................................... 14

*Romero v. Philip Morris, Inc.*,
    109 P. 3d 768 (N.M. Ct. App. 2005) .................................................................................... 10

*Sterling Merch., Inc. v. Nestle, S.A*,
    656 F.3d 112 (1st Cir. 2011) ................................................................................................ 10

*State of California ex rel. Van de Kamp v. Texaco, Inc.*,
    46 Cal. 3d 1147 (1988) ......................................................................................................... 10

*Taylor v. List*,
    880 F.2d 1040 (9th Cir. 1989) .............................................................................................. 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 3:07-MD-01827-SI (N.D. Cal.  Dec. 7, 2011), ECF No. 4301 .................................. 18-19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 3:07-MD-01827-SI (N.D. Cal. Oct. 9, 2012), ECF No. 6931 .................................... 18-19

*Toscano v. PGA Tour, Inc.*,
    201 F. Supp. 2d 1106 (E.D. Cal. 2002) ........................................................................... 2, 15

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.*,
    249 F.3d 958 (9th Cir. 2001) ................................................................................................ 13

*Vinci v. Waste Mgmt., Inc.*,
    36 Cal. App. 4th 1811 (1995)......................................................................................... 12-13


**Statutes**

Cartwright Act,
    Cal. Bus. & Prof. Code § 16720 (West 2008)........................................................... 12

Clayton Antitrust Act of 1914,
    § 4, 15 U.S.C. § 15 (2012) ...................................................................................... 2, 11
    § 16, 15 U.S.C. § 26 (2012) .......................................................................................... 11

Donnelly Act,
    N.Y. Gen. Bus. Law §§ 340–347 (McKinney  2012). ................................................ 13

Lanham Trademark Act of 1946,
    60 Stat. 441, codified at 15 U.S.C. § 1125(a) (West 2012) ...................................... 2

New Mexico Antitrust Act,
    1979 N.M. Laws, ch. 374, § 16 (codified at N.M. Stat. Ann. §57-1-15 (Supp. 1979)) .......... 13

Sherman Act, 15 U.S.C. § 1 (2012)  ........................................................................... 11

Wash. Rev. Code § 19.86.920 (1985) ......................................................................... 12


**Other Authorities**

Fed. R. Civ. P. 11 .........................................................................................................4-5

Fed. R. Civ. P. 56 ........................................................................................................... 10

Dept. of Justice & Federal Trade Commission Merger Guidelines, Aug. 19, 2010 .................... 16

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**STATEMENT OF THE ISSUE PRESENTED**

3

Whether Plaintiffs lack antitrust injury, and thus antitrust standing, to pursue their federal

4

and certain state law claims based on their purchases of televisions and/or computer monitors that

5

contain CRTs.

6

**I.   INTRODUCTION**

7

Both the Indirect Purchaser Plaintiffs ("IPPs") and Direct Action Plaintiffs ("DAPs," and

8

together with the IPPs, "Plaintiffs") have long since conceded that their conspiracy allegations in

9

this case solely center on Defendants' alleged price-fixing of CRT tubes.[1]  Plaintiffs' massive

10

damages claims, however, concern their purchases of televisions and computer monitors that

11

merely contain CRTs as one of many component parts ("CRT Finished Products").  This is

12

because the Plaintiffs subject to this motion never purchased CRTs standing alone (*i.e.*, the

13

allegedly price-fixed product).  Instead, they bought distinct products—CRT Finished Products—

14

in *separate markets* at the end of a long and complex distribution and supply chain.  Within that

15

distribution chain stand other companies, such as Sharp, Sony and IBM, that purchased CRT

16

tubes directly; it is these companies that are more properly situated, as a matter of antitrust

17

standing, to bring claims against Defendants.  Indeed, these companies have either brought their

18

own action or recovered as members of the Direct Purchaser Plaintiff class.  Because the

19

Plaintiffs subject to this motion did not participate in the market for CRT tubes and cannot show

20

antitrust injury on this record, these Plaintiffs lack antitrust standing under federal and certain

21

state laws.

22

In *Associated General Contractors v. California State Council of Carpenters*, 459 U.S.

23

519 (1983) ("*AGC*"), the Supreme Court limited recovery to antitrust plaintiffs who can establish

24

"antitrust standing," separate and apart from Article III standing.  The first and most important

25

criterion in this inquiry is "whether the nature of the plaintiff's alleged injury is of the type the

26

---

[1] As discussed below, both the IPPs and DAPs had previously pleaded a conspiracy regarding

27

"CRT Products," an artificial term of art that purportedly included both CRT tubes and CRT
Finished Products.  Plaintiffs, however, withdrew all allegations regarding any conspiracy about

28

CRT Finished Products.  *See infra* §§ II.A–B.

[REDACTED] MEMO OF POINTS AND AUTHORITIES ISO MOT. FOR P. SUMM. J.                    MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING       Master No. 3:07-cv-05944-SC

1

antitrust laws were intended to rectify"—*i.e.*, "antitrust injury."[2]  *See Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1054 (9th Cir. 1999); *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1997).  As the U.S. Supreme Court has repeatedly held, both before and after *AGC*, antitrust plaintiffs must show more than simply an "injury causally linked" to particular conduct, but rather "must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977) (emphasis added); *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n.5 (1986) (finding that "[a] showing of antitrust injury is necessary, but not always sufficient, to establish standing" under the Clayton Act).  Indeed, the "absence of antitrust injury is fatal." *Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1116 (E.D. Cal. 2002).  Moreover, the Supreme Court has recently held, in the context of the Lanham Act, that in order to satisfy "statutory standing," plaintiffs must prove that they have suffered an injury that is both (i) within the "zone of interests" sought to be statutorily protected, and (ii) "proximately caused by violation[] of the statute" at issue.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, --- U.S. ----, 134 S. Ct. 1377, 1390–91 (2014).

As purchasers of finished products containing CRTs, and not CRTs themselves, Plaintiffs cannot demonstrate on a now fully developed record that they have sustained an antitrust injury. In the Ninth Circuit, it is well settled that a showing of antitrust injury requires "that the injured party be a participant in the same market as the alleged malefactors." *Am. Ad Mgmt.*, 190 F.3d at 1055 (internal quotation marks omitted); *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 372 (9th Cir. 2003); *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 705 (9th Cir. 2001); *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985).  Because Plaintiffs lack any evidence to show participation in the relevant market (*i.e.*, the primary market

---

[2] While Defendants maintain that Plaintiffs *also* lack antitrust standing under the remaining factors addressed in *AGC*—because their claims are indirect, remote from any alleged "injurious conduct" in the CRT tube market, and because Plaintiffs' competing and highly speculative damages claims present a likelihood of duplicative recovery and complexity in ascertaining damages—this motion is limited to Plaintiffs' failure to show antitrust injury, which is clear from undisputed facts in the record and is alone dispositive.

1   for CRT tubes), and have indisputably failed to even analyze this issue during extensive expert

2   discovery, Plaintiffs' federal and certain state-law claims concerning their indirect purchases of

3   CRT Finished Products must fail.  As this Court has already recognized, there is "a real *market*

4   distinction, and hence a real *legal* distinction, between the finished products and just the CRTs."[3]

5          Moreover, Plaintiffs have not met their burden of demonstrating antitrust injury because

6   they have not shown, as they must at the summary-judgment stage, that the CRT Finished

7   Products that they bought are either "reasonably interchangeable," or experience "cross-elasticity

8   of demand," with CRT tubes.  Notably, *none* of Plaintiffs' numerous experts offer an opinion or

9   evidence suggesting that CRT Finished Products and CRT tubes share a common market.  Nor

10  could they, as the undisputed record demonstrates that (i) no consumer would choose to switch to

11  a CRT tube in response to an increase in the price of a television or monitor, which is the

12  definition of "cross-elasticity" provided by Plaintiffs' own experts, and (ii) a CRT tube cannot be

13  used to watch television programming or display a computer game, which undermines any notion

14  of "reasonable interchangeability," or "substitutability," between these wholly different products.

15  *See infra* § V.B.3.

16         In light of this failure, Defendants are thus entitled to summary judgment as to DAPs'

17  federal claims for damages and/or injunctive relief, as well as IPPs' federal claims for injunctive

18  relief.[4]  For the same reasons, IPPs and DAPs' state law claims for damages under the laws of

19  California, Illinois, Iowa, Maine, Michigan, Nebraska, New Mexico, New York, Vermont, West

20  Virginia, and the District of Columbia also fail for lack of antitrust injury.  Even though these

21  jurisdictions have repealed the categorical bar on indirect purchaser suits set forth in *Illinois Brick*

22  *Co. v. Illinois,* 431 U.S. 720 (1977), the fact that a party claims to have purchased a product

---

[3] *See* Order Adopting in Part & Modifying in Part Special Master's Report & Recommendation on Defendants' Motion to Dismiss the DAPs' Complaints at 22–23, *In re CRT Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 4505701 at *10 (N.D. Cal. Aug. 21, 2013), ECF No. 1856 [hereinafter Order Adopting R&R] (quoting Special Master's Report & Recommendation on Defs.' Mot. to Dismiss DAPs' Compls., at 10, May 2, 2013, ECF No. 1664) (emphasis in original)).

[4] Defendants Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. move only as to the following DAPs: Best Buy, Target, Sears, Interbond, Office Depot, CompuCom, P.C. Richard, Schultze Agency Services, and ViewSonic.

---

1  indirectly does not answer the "analytically distinct . . . question of which persons have sustained

2  injuries too remote to give them standing to sue . . . ." *Id.* at 728 n.7.  As detailed below, as to

3  this "analytically distinct" question, these jurisdictions, as a matter of state law, all require a

4  showing of antitrust injury as a prerequisite for antitrust standing.  *See infra* § V.A.

5  **II.     STATEMENT OF UNDISPUTED FACTS**

6      **A.     Plaintiffs Purchased CRT Finished Products, Not CRTs Themselves, Yet
7          Plaintiffs' Conspiracy Allegations Only Concern CRTs**

8        The Plaintiffs subject to this motion are the IPPs—end-consumer purchasers of CRT

9  Finished Products—as well as certain DAPs, who are retailers and distributors of CRT Finished

10  Products (as well as various others goods and products).[5]  Both groups of Plaintiffs allege that

11  Defendants conspired to fix the prices of various sizes and types of *CRT tubes*, which were later

12  allegedly incorporated, as one of many component parts, into the CRT Finished Products that

13  Plaintiffs actually purchased (and, in the case of the DAPs, then sold).[6]

14        Plaintiffs' initial pleadings in this case purposefully perpetuated a fiction that there was an

15  overarching conspiracy that also involved CRT Finished Products.[7]  Defendants thus served

16  interrogatories on class plaintiffs that sought the factual basis for Plaintiffs' nebulous allegations

17  in this regard, but received wholly deficient responses.[8]  Defendants then sent a letter to class

18  plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure, enclosing a draft motion

19  that detailed the lack of any evidentiary basis to support Plaintiffs' allegations of a single, unitary

20

21  [5] Defendants do not bring this motion against Plaintiffs Sharp Electronics Corporation and Sharp
22  Electronics Manufacturing Company of America, Inc. (together, "Sharp") since Sharp has
recently withdrawn "any claims relating only to their purchases of CRT televisions containing
23  CRTs," including "all claims under state law."  *See* Exhibit ("Ex.") 1 to the Declaration of David
L. Yohai, dated Nov. 7, 2014 (the "Yohai Decl.") (Letter from Craig A. Benson to Counsel for
24  Defendants (Oct. 14, 2014)).  (All exhibits referenced herein refer to the Yohai Decl.)  Likewise,
Defendants do not bring this motion against Plaintiffs Dell, Inc. and Dell Products L.P. ("Dell").

25  [6] *See* IPPs' 4th Consol. Am. Compl., at ¶¶ 15, 154, 156–57, 227, Jan. 10, 2013, ECF No. 1526;
26  *see, e.g.*, Best Buy 1st Am. Compl., at ¶¶ 1, 4–6, 111–13, Oct. 3, 2013, ECF No. 1978.

27  [7] *See* IPPs' Consol. Am. Compl., at ¶¶ 10–15, Mar. 16, 2009, ECF No. 437.

28  [8] *See* Ex. 2 (Letter from Jeffrey L. Kessler to Mario Alioto and Guido Saveri (Feb. 25, 2011)).

conspiracy to fix the prices of both CRTs and CRT Finished Products.[9]  The IPPs thereafter withdrew their "CRT Finished Products Conspiracy Claims" from their Complaint by stipulation dated April 20, 2011.[10]  The DAPs followed suit, and similarly conceded that they do not allege any such multifaceted conspiracy affecting multiple markets.[11]

Despite their ambiguous Complaints,[12] it is now undisputed that the Plaintiffs subject to this motion (i) never purchased CRT tubes standing alone and (ii) bring damages claims that are based solely upon their purchases of CRT Finished Products.[13]  As DAP expert Kenneth Elzinga testified, the DAPs ███████████████████████████████████████████████████████ but rather ███████████████████████████████████████████████████████████████ ████████████  *See* Ex. 6 at 13:22–15:14 (Dep. Tr. of Kenneth Elzinga, July 17, 2014).

---

[9] *Id.*

[10] *See* Stipulation & Order Re: Voluntary Withdrawal of IPPs' Claims as to Alleged Conspiracy Directed Towards CRT Finished Prods., Apr. 22, 2011, ECF No. 904.  Special Master Legge ultimately recommended Rule 11 sanctions against the direct purchaser class for pleading a "Finished Product Conspiracy" without an evidentiary basis for doing so.  *See* Report & Recommendations on Mots. Regarding Finished Prods., at 12, June 15, 2011, ECF No. 947.

[11] *See* Ex. 3 (Letter from Philip J. Iovieno to Eva W. Cole and Molly M. Donovan (July 17, 2012)).

[12] For example, while Target pleaded in its Complaint that it "purchased *CRTs*" and that it "brings this action to recover the overcharges paid for the *CRTs* it purchased during the Relevant Period," Target admitted during discovery that it has never purchased CRTs standing alone.  *Compare* Target 2d Am. Compl., at ¶ 9, Oct. 3, 2013, ECF No. 1981 (emphasis added) *with* Ex. 19 at 39:24–40:15 (30(b)(6) Dep. Tr. of Target) (Nikhil Nayar).

[13] *See* Ex. 5 at 96 (Report of IPP Expert Janet S. Netz, dated Apr. 15, 2014) ("Netz Report"). Similarly, DAP Expert Alan Frankel admitted that Circuit City, CompuCom, Costco, Electrograph, Office Depot, P.C. Richard, Sears, Kmart, Target and Tech Data all "purchased CRT Products, not CRTs by themselves." *See, e.g.*, Ex. 8 at ¶ 13 (Report of DAP Expert Alan Frankel for CompuCom, dated Apr. 15, 2014); *see also* Ex. 18 at 73:21–74:15 (Dep. Tr. of DAP Expert James McClave); Ex. 6 at 15:5–16:19 (Dep. Tr. of DAP Expert Kenneth Elzinga, July 17, 2014).  The fact deposition testimony on this point is also undisputed. *See, e.g.*, Ex. 11 at 24:19–25:3 (30(b)(6) Dep. Tr. of Circuit City) (Brandy Fose); Ex. 21 at 18:16–22 (30(b)(6) Dep. Tr. of CompuCom (John O'Donnell); Ex. 24 at 64:17–65:3 (30(b)(6) Dep. Tr. of Costco) (Geoffrey Shavey); Ex. 26 at 46:16–17 (30(b)(6) Dep. Tr. of Kmart) (James A. Smith, July 18, 2014); Ex. 29 at 39:14–22 (30(b)(6) Dep. Tr. of Office Depot) (Randall Wick); Ex. 25 at 19:25–20:3 (30(b)(6) Dep. Tr. of Sears) (James A. Smith, July 11, 2014); Ex. 19 at 39:24–40:15 (30(b)(6) Dep. Tr. of Target) (Nikhil Nayar); Ex. 16 at 89:24–90:1, 90:7–10, 90:20–23 (30(b)(6) Dep. Tr. of Tech Data) (Wendy Linsky); Ex. 22 at 50:4–51:6 (30(b)(6) Dep. Tr. of P.C. Richard) (Thomas P. Pohmer); Ex. 32 at 36:13-15 (30(b)(6) Dep. Tr. of ViewSonic) (Bonny Cheng); Ex. 33 at 3-4 (Plaintiff ViewSonic Corporation's Supplemental Responses and Objections to Defendants Mitsubishi Electric Corporations, Mitsubishi Electric US, Inc., and Mitsubishi Electric Visual Solutions America, Inc.'s First Set of Interrogatories, Oct. 7, 2014).

[REDACTED] MEMO OF POINTS AND AUTHORITIES ISO MOT. FOR P. SUMM. J.          MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING     Master No. 3:07-cv-05944-SC

5

1       **B.**     **The Separate and Distinct CRT and CRT Finished Products Markets**

2       IPPs' expert Dr. Janet Netz has acknowledged that there are several layers between the

3 primary market for CRT tubes and the downstream, retail markets for CRT Finished Products.

4 See Ex. 5 at 4, 22–25, 73 (Netz Report) ███████████████████████

5 ████████████████████████████████████████

6 ██████████████████████████ ███████████, ██████████████

7 ████████████████████████████████████████

8 ██████████████████████████████████████

9 ████████████████████████████████████████

10 ██████████████████████████████████████

11 ████████████████████████████████████████████

12 ████████████████████████████████████████████

13 ████████████   *See id.* at 22–25.  Thus, as both a practical and analytical matter, there are

14 several intermediary markets that separate both the DAPs, and, to an even greater degree, the IPP

15 "final consumers," from any alleged wrongdoing in the primary, CRT market.  *See id.* at 4, 25,

16 73; *see also* Ex. 4 at 7–9  (Expert Report of Janusz A. Ordover, Ph.D., dated August 5, 2014)

17 ("The distribution channels for CRT products are long and complex"); *id.* at 9 fig. 1 (graphic

18 representation of "the complexity of the CRT supply chain" that includes several intermediaries at

19 every step along the chain).

20       Plaintiffs' fact witnesses have likewise conceded that they did not participate in the

21 upstream market for CRT tubes, and accordingly paid no attention to details regarding the

22 components contained in the products they were purchasing:

23 ███████████████████████████████

24 ███████████████████

25 ██████████████

26 █████

27 ███████████████████

28 ██████████████

Ex. 19 at 40:20–41:9 (30(b)(6) Dep. Tr. of Target) (Nikhil Nayar) (emphasis added); *see also* Ex.

30 at 48:7–49:7 (Dep. Tr. of Todd Williams, Target Senior Buyer) ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████; Ex. 16 at 90:14–92:25

(30(b)(6) Dep. Tr. of Tech Data) (Wendy Linsky) ████████████████████████

████████████████████████████████████████████████████████

████████████████████████    Plaintiffs' witnesses were also unaware of the percentage of

the purchase price they paid for a CRT finished product that was attributable to the CRT tube

component,[14] and further admitted that there was no way to determine that information. *See* Ex. 9

at 61:23–62:5 (30(b)(6) Dep. Tr. of Circuit City) (Steven Deason).

As the final link in the distribution chain, the lack of knowledge regarding the CRT tube

market displayed by the IPP end-consumer plaintiffs is even more striking. *See, e.g.*, Ex. 13 at

13:7–11 (Dep. Tr. of Barry Kushner) ("Q.  Do you know anything about a CRT other than its

name?  A.  No."); *id.* at 46:7–19; Ex. 34 at 17:19–18:4 (Dep. Tr. of Janet Ackerman) ("Q.  Was

the brand of the CRT inside the TV an important feature to you?  A.  I can't say about that.  I

know nothing about—anything about that inside.  Q.  So at the time of the purchase, you didn't

know the company that manufactured the CRT inside your TV?  A.  No.  Q.  Was the fact that the

product contained a CRT important to you when you purchased it?  A.  I never thought about

it.").[15]

---

[14] *See* Ex. 27 at 105:8–11 (Dep. Tr. of Constantin Tanas) (ABC Warehouse); Ex. 9 at 61:23–62:5 (30(b)(6) Dep. Tr. of Circuit City) (Steven Deason); Ex. 21 at 148:21–149:1 (30(b)(6) Dep. Tr. of CompuCom) (John O'Donnell); Ex. 15 at 159:3–7 (30(b)(6) Dep. Tr. of Electrograph) (Frank Lincks);  Ex. 26 at 140:23–141:3 (30(b)(6) Dep. Tr. of Kmart) (James A. Smith, July 18, 2014); Ex. 28 at 129:4–8 (30(b)(6) Dep. Tr. of MARTA) (Robert Thompson);  Ex. 22 at 180:17–181:2 (30(b)(6) Dep. Tr. of P.C. Richard) (Thomas P. Pohmer);  Ex. 25 at 256:13–23 (30(b)(6) Dep. Tr. of Sears) (James A. Smith, July 11, 2014);  Ex. 23 at 129:22–130:2 (30(b)(6) Dep. Tr. of Tweeter) (Christopher Re).

[15] *See also* Ex. 31 at 84:22–85:5 (Dep. Tr. of Louise Wood); Ex. 12 at 78:13–15 (30(b)(6) Dep. Tr. of D.C. IPP class rep. Lawyer's Choice Suites, Inc.) (Alvin Guttman); Ex. 10 at 69:25–70:16 (Dep. Tr. of Jeffrey Figone); Ex. 17 at 49:11–13 (Dep. Tr. of Brian Luscher).

C.   **Plaintiffs' Experts Have Provided No Opinion that the CRT Finished Products Plaintiffs Purchased Are in the Same Relevant Market As CRT Tubes**

Plaintiffs' experts offer no opinion that CRT Finished Products share a common market with CRT tubes, and provide no evidence that these separate products are either "reasonably interchangeable" or experience any cross-elasticities. *See*, *e.g.*, Ex. 5 (Netz Report); Ex. 7 (Expert Report of Kenneth Elzinga, April 15, 2014) ("Elzinga Report").  Plaintiffs' experts' failure in this regard is particularly notable given their recognition that ██████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████  *See* Ex. 6 at 18:8–22:18 (Dep. Tr. of Kenneth Elzinga, July 17, 2014).  Plaintiffs' experts further recognize that to be in the same relevant market, ████ ████████████████████████████████  *Id.*; *see also* Ex. 5 at 32 n.119 (Netz Report) ██████████████████████████████████████████████; Ex. 20 at 62:18-63:14 (Dep. Tr. of Janet S. Netz, June 27, 2014) ██████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████.

Under their own specified criteria, Plaintiffs' experts do not assert that CRT tubes are in the same market as CRT Finished Products.  In fact, the record attests that the products in such separate markets—CRT tubes and CRT Finished Products—cannot reasonably be substituted for one another.  Among other things, no consumer would buy a CRT tube in response to an increase in the price of a finished television or computer monitor, nor can a CRT tube be used to watch a movie or prime-time television programming, order a program on demand, or display a computer game.  *See*, *e.g.*, Ex. 14 at 72:19–73:11 (30(b)(6) Dep. Tr. of LG) (Yun Seok Lee).

III.   **PROCEDURAL BACKGROUND**

In May 2009, Defendants moved to dismiss the IPPs' Consolidated Amended Complaint for failure to satisfy *AGC*'s requirements for antitrust standing, among other deficiencies.  *See* Defs.' Jt. Notice of Mot. & Mot. to Dismiss IPPs' Consol. Am. Comp., May 18, 2009, ECF No. 485.  On February 5, 2010, Special Master Legge recommended that Defendants' motion based

on antitrust standing be denied primarily because "the Special Master interprets the complaints as

alleging a conspiracy as to CRT [Finished] Products as well." Report, Recommendations &

Tentative Rulings Regarding Defs.' Mots. to Dismiss, at 18, Feb. 5, 2010, ECF No. 597.  On

March 30, 2010, the Court issued an Order adopting the findings of Special Master Legge in this

regard, which was similarly premised on the fiction perpetuated by the class plaintiffs at that time

that Plaintiffs had pleaded the existence of a "finished products conspiracy."  *See In re CRT*

*Antitrust Litig.*, 738 F. Supp. 2d 1011, 1016 (N.D. Cal. 2010) ("Judge Legge recommends that

both the Direct Complaint and the Indirect Complaint allege conspiracies regarding both CRTs

and CRT Products . . . . Having reviewed both complaints, the Court agrees[.]"); *see also id.* at

1017 ("Judge Legge considered whether the complaints contain enough factual allegations to give

rise to plausible conspiracy claims regarding both CRTs and CRT Products . . .").

      As discussed above, Plaintiffs had no evidence of any "CRT Finished Products"

conspiracy, and withdrew all such allegations from their Complaints.  Following this withdrawal,

Defendants moved to dismiss DAPs' complaints, including for lack of antitrust standing under

*AGC*.  *See* Defs.' Jt. Notice of Mot. & Mot. to Dismiss & for J. on the Pleadings as to Certain

DAPs' Claims & Memorandum of Law in Support, Aug. 17, 2012, ECF No. 1317.  Recognizing

that the DAPs had by now abandoned their initial obfuscations about the scope of the alleged

conspiracy, Special Master Legge found a "simple reason" why the DAPs had not shown antitrust

standing notwithstanding the Court's prior Order as to the IPPs' Complaint:

> The complaints that were before your Honor . . . were ones in which *both* cathode ray
> *tubes* and *finished products* were the alleged subjects of the conspiracy.  However, the
> present direct action complaints concern *only the CRTs themselves.*  That creates a clear
> differentiation between the allegations of these direct action complaints and those that
> were before Your Honor in the prior motion.

Report & Recommendations Regarding Defs.' Mots. to Dismiss Direct Action Compls., at 9–11,

May 2, 2013, ECF No. 1664 (emphases in original).  Because the DAPs were "purchasers and

retailers of finished products containing CRTs and are *not* purchasers or sellers of the *CRTs*

themselves," Special Master Legge found that DAPs were not participants in the "allegedly

[REDACTED] MEMO OF POINTS AND AUTHORITIES ISO MOT. FOR P. SUMM. J.
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING

MDL No. 1917
Master No. 3:07-cv-05944-SC

9

1    restrained market" and therefore did not suffer antitrust injury.  *Id.* at 10–11 (emphases in

2    original).

3          In its subsequent Order, this Court cited the Special Master's observation that there is "a

4    real *market* distinction, and hence a real *legal* distinction, between the finished products and just

5    the CRTs,"[16] but determined that "for purposes of the present motion," the DAPs had for pleading

6    purposes "sufficiently pled an antitrust injury, and that this factor *slightly* favors standing."  *See*

7    Order Adopting R&R, at 20–23, ECF No. 1856 (emphasis added).  This Court thus declined to

8    dismiss DAPs' claims for lack of antitrust standing "absent a more fully developed record."  *Id.* at

9    25 (internal quotation marks omitted).  On the now-complete factual record, Defendants submit

10   that Plaintiffs cannot demonstrate antitrust injury, and therefore antitrust standing, as a matter of

11   law.

12   **IV.   STANDARD OF REVIEW**

13         Summary judgment is appropriate with respect to any claim when there are no genuine

14   issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.

15   Fed. R. Civ. P. 56(c).  Plaintiffs bear the burden of establishing both antitrust injury and antitrust

16   standing.  *See Brunswick Corp.*, 429 U.S. at 489 (the burden rests on the plaintiff to prove

17   antitrust injury); *Sterling Merch., Inc. v. Nestle, S.A*, 656 F.3d 112, 121 (1st Cir. 2011) ("The

18   plaintiff bears the burden of proving antitrust injury."); *Hairston v. Pac. 10 Conference*, 101 F.3d

19   1315, 1321 (9th Cir. 1996) (Trott, J., concurring) ("[A]ntitrust standing is an essential threshold

20   element of an antitrust case," and a plaintiff must therefore prove "that he or she is an appropriate

21   antitrust plaintiff").

22         The party moving for summary judgment bears the initial burden of showing that there are

23   no genuine issues of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

24   Where the moving party has met this initial burden, the nonmoving party must go beyond the

25   pleadings and, by record evidence, affidavits, depositions, and written discovery, identify facts

26

27   [16] Order Adopting R&R, at 22–23, 2013 WL 4505701 at *10, ECF No. 1856 (quoting Special
     Master's Report & Recommendation on Defs.' Mot. to Dismiss DAPs' Compls., at 20, ECF No.
28   1664 (emphasis in original)).

1   showing a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Here,

2   Defendants meet this initial burden, as the undisputed evidence demonstrates that Plaintiffs did

3   not participate in the allegedly restrained market for CRT tubes.

4   **V.      ARGUMENT**

5          **A.      Antitrust Injury Is A Requirement For Antitrust Standing Under the Federal
               Antitrust Laws and the Antitrust Laws of California, Illinois, Iowa, Maine,**
6   **Michigan, Nebraska, New Mexico, New York, Vermont, West Virginia, and**
               **the District of Columbia**
7

8          There is no doubt that the federal antitrust laws require proof of antitrust injury and

9   antitrust standing, as set forth in well-settled U.S. Supreme Court caselaw.  *See Brunswick Corp.*,

10  429 U.S. at 489 ("Plaintiffs must prove antitrust injury, which is to say injury of the type the

11  antitrust laws were intended to prevent and that flows from that which makes defendants' acts

12  unlawful.");  *AGC*, 459 U.S. at 521 (requiring antitrust injury as first of several antitrust standing

13  principles under Section 4 of the Clayton Act).  Here, the IPPs have brought a claim for injunctive

14  relief for violation of Section 1 of the Sherman Act, pursuant to Section 16 of the Clayton Act.

15  *See* IPPs' 4th Consol. Am. Compl., at ¶¶ 247–56, Jan. 10, 2013, ECF No. 1526.  Even though

16  they, too, are indirect purchasers of CRT Finished Products, the DAPs nonetheless purportedly

17  seek damages under Section 1 of the Sherman Act under the narrow "ownership-or-control

18  exception" to the bright-line rule identified in *Illinois Brick* that only direct purchasers of a price-

19  fixed product have standing to pursue damages under federal antitrust laws (a doctrine that is

20  "analytically distinct" from the issue of *AGC* antitrust standing).  As to these federal claims—

21  including Plaintiffs' claims for injunctive relief—it is well settled that Plaintiffs have the burden

22  of demonstrating antitrust injury and antitrust standing.  Indeed, in *Cargill*, 479 U.S. at 111–13,

23  the Supreme Court held that plaintiffs seeking injunctive relief under Section 16 of the Clayton

24  Act, 15 U.S.C. § 26, must demonstrate, *inter alia*, that they have suffered antitrust injury "of the

25  type the antitrust laws were designed to prevent."  *See Lucas Auto. Eng'g, Inc. v.*

26  *Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1234–35 (9th Cir. 1998) (citing *Cargill* as holding

27  that "threatened antitrust injury was a prerequisite to equitable relief").

28

1    Moreover, Plaintiffs must also prove that they have antitrust injury and antitrust standing

2    as to the majority of their state-law claims.  Specifically, *AGC* antitrust standing principles—

3    including, most prominently, the requirement of antitrust injury—govern antitrust standing under

4    the antitrust laws of California, Illinois, Iowa, Maine, Michigan, Nebraska, New Mexico, New

5    York, Vermont, West Virginia, as well as the District of Columbia.  This Court has already

6    expressly found that *AGC* applies as to five of these states—namely, California,[17] Illinois, Iowa,

7    Michigan, and Nebraska.  *See In re CRT Antitrust Litig.*, 738 F. Supp. 2d at 1023 ("The *AGC*

8    factors apply . . . under Iowa, Nebraska, and California antitrust laws.");  Order Adopting R&R at

9    20–22, 2013 WL 4505701 at *9, ECF No. 1856 (adopting Special Master's finding that *AGC*

10   applies to DAPs' Illinois and Michigan claims).[18]

11   As this Court recognized, "on questions of state law, federal courts are bound by that

12   state's highest court's decision."  Order Adopting R&R at 19, 2013 WL 4505701 at *9, ECF No.

13   1856.  Where there has been no express guidance from a state's highest court*,* federal courts must

14   "predict" how the state high court would rule.  *See, e.g., Hayes v. Cnty. of San Diego*, 658 F.3d

15   867, 871 (9th Cir. 2011).  As this Court has previously recognized, if intermediate appellate

16   authority in the state exists, the federal court is to follow relevant intermediate appellate

17   precedent, unless the federal court finds convincing evidence that the state's supreme court would

18   not follow it.  *See* Order Adopting R&R at 19, 2013 WL 4505701 at *9, ECF No. 1856; *Vestar*

19   _____

20   [17] Although one district court opinion recently suggested that it "cannot conclude" that the
     California Supreme Court would apply *AGC*, *see In re Lithium Ion Batteries Antitrust Litig.*, No.
     13-MD-2420 YGR, 2014 WL 4955377, at *10–11 (N.D. Cal. Oct. 2, 2014), the decision that it

21   cites for that "uncertainty," *Aryeh v. Canon Bus. Solutions, Inc.*, 292 P.3d 871, 877–78 (Cal.

22   2013), does not even concern *AGC*.  Rather, *Aryeh* merely notes, consistent with long-standing
     California law, that "[i]nterpretations of federal antitrust law" are "instructive" but "not
     conclusive [] when construing the Cartwright Act."  *Id.* (citing *State of California ex rel. Van de*

23   *Kamp v. Texaco, Inc.*, 46 Cal. 3d 1147, 1164 (1988)).  *Aryeh* does not imply that *AGC* would not
     continue to be applied under California law, especially in light of *Vinci v. Waste Mgmt., Inc.*, 36

24   Cal. App. 4th 1811, 1814 (1995) (applying *AGC* factors), and *Clayworth v. Pfizer, Inc.*, 233 P.3d
     1066, 1077 (Cal. 2010) (citing *AGC* and *Vinci* approvingly in dicta as consistent with prior

25   California law).

26   [18] Although this Court previously found that *AGC* applied to Washington State law, *In re CRT
     Antitrust Litig.*, 2013 WL 4505701, at *8, it proceeded to dismiss DAPs' Washington State law claims

27   without leave to amend because Washington State bars indirect purchaser actions as a threshold
     matter.  *See id.* at *12; Wash. Rev. Code § 19.86.920.  There are thus no Washington State law

28   claims remaining in this action.

[REDACTED] MEMO OF POINTS AND AUTHORITIES ISO MOT. FOR P. SUMM. J.          MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING          Master No. 3:07-cv-05944-SC

12

1    *Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (citation omitted).

2    Additionally, if no such authority exists, federal courts often look to the opinions of state trial

3    courts for guidance. *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 399 (2d Cir. 2001) ("In

4    predicting how a state's highest court would rule on an issue, it is helpful to consider the

5    decisions of the state's trial and appellate courts."); *In re DRAM Antitrust Litig.*, 516 F. Supp. 2d

6    1072, 1085–96 (N.D. Cal. 2007) (*DRAM I*).  As set forth below, the antitrust standing principles

7    set forth in *AGC* also apply under the laws of New Mexico, New York, Maine, Vermont, and

8    Washington D.C.:

9    •    **New Mexico**:  *See Nass-Romero v. Visa U.S.A., Inc.*, 2012-NMCA-058, 279 P.3d
10        772 (N.M. Ct. App. 2012) (applying *AGC* and stating that "the state and federal
         antitrust statutes should be read in harmony . . . New Mexico courts therefore look
11        to federal antitrust law to determine the meaning of provisions of the [New Mexico
         Antitrust Act]"); *Romero v. Philip Morris, Inc.*, 2005-NMCA-035, 109 P.3d 768
12        (N.M. Ct. App. 2005) ("We interpret the Antitrust Act in harmony with federal
         antitrust laws when, as here, we have no New Mexico authority on point to guide
13        us"); *see also* N.M. Stat. Ann. § 57-1-15 (New Mexico's Harmonization Provision
         which states that "the Antitrust Act shall be construed in harmony with judicial
14        interpretations of the federal antitrust laws"). The Court of Appeals of New
         Mexico has thus applied *AGC*, and there is no evidence that the state's highest
15        court would hold otherwise.

16   •    **New York**:  *See Ho v. Visa U.S.A. Inc.*, No. 112316/00, 2004 WL 1118534, at *3
17        (N.Y. Sup. Ct. Apr. 21, 2004), *aff'd*, 16 A.D.3d 256 (N.Y. App. Div. 2005)
         (applying *ACG* factors to Gen. Bus. Law § 340 claim and denying indirect
18        purchaser standing).  No higher New York court has spoken to this issue and there
         is thus no "convincing evidence" that the New York Court of Appeals would not
19        apply *AGC* in determining antitrust standing.
20
21   •    **Maine**:  *See Knowles v. Visa U.S.A. Inc.*, No. CV-03-707, 2004 WL 2475284, at
         *5 (Me. Super. Ct. Oct. 20, 2004) ("*Associated General Contractors* has remained
22        the template for determining standing under the federal antitrust laws for the past
         20 years . . . It is probable that the Maine Law Court [the Supreme Judicial Court],
23        if presented with this issue, would look to the *Associated General Contractors*
         factors in determining standing under Maine's antitrust laws and would apply
24        those factors . . ."").  No other court in Maine has provided "convincing evidence"
         that the Maine Supreme Judicial Court would hold otherwise.
25
26   •    **Vermont**:  The Superior Court of Vermont has applied *AGC* and has expressly
         stated that the Vermont Supreme Court would likely do so as well.  *Fucile v. Visa*
27        *U.S.A. Inc.*, No. S1560-03, 2004 WL 3030037, *3 (Vt. Super. Ct. Dec. 27, 2004)
         (applying *AGC* and stating that the court "believes that the Vermont Supreme
28

[REDACTED] MEMO OF POINTS AND AUTHORITIES ISO MOT. FOR P. SUMM. J.                          MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING                        Master No. 3:07-cv-05944-SC

13

Court would also draw upon the standing factors in *Associated General Contractors* for guidance").

- **District of Columbia**:  *See Peterson v. Visa U.S.A. Inc.*, No. 03-8080, 2005 WL 1403761, at \*4–6 (D.C. Super. Ct. Apr. 22, 2005) (applying *AGC* and finding that the alleged "causal connection" between defendants' antitrust violation and plaintiff's injury "is so difficult to prove that it results in speculation" and thus plaintiff's claim failed for lack of standing under the District of Columbia Antitrust Act).

In addition to these ten jurisdictions (which apply the *AGC* factors in their entirety), West Virginia's highest court has required that antitrust plaintiffs demonstrate antitrust injury and relevant market participation:

- **West Virginia:** *See Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 690 S.E.2d 587, 590, 598–600 (2009) (reversing circuit court decision and "conclud[ing] that Appellees failed to introduce sufficient evidence to demonstrate an antitrust injury" where "they failed to introduce evidence to prove that competition among insurers in the relevant . . . market was harmed" (citations omitted)).  Thus in West Virginia, antitrust plaintiffs must "prove injury of the type that antitrust laws were designed to protect against," *id.* at 598 (citing *Brunswick Corp.*, 429 U.S. at 489), which requires a showing that "the alleged conspiratorial conduct adversely affected competition in the relevant . . . market," *id.* at 599 (citing *Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 709 (4th Cir. 1991)).

Accordingly, and as further set forth below, Defendants submit that they are entitled to summary judgment under the federal antitrust laws as well as those of each of the above eleven jurisdictions.

**B.      Summary Judgment is Appropriate Because Plaintiffs Have Not and Cannot Demonstrate Antitrust Injury, and Thus Do Not Have Antitrust Standing**

The most critical element of antitrust standing is an "antitrust injury" (*i.e.*, whether the plaintiff's injury is "of the type which the antitrust statute was intended to forestall").  *See Bhan*, 772 F.2d at 1470 n.3 (whether the plaintiff has suffered an antitrust injury is of "tremendous significance"); *In re DRAM Antitrust Litig.*, 536 F. Supp. 2d 1129, 1141 (N.D. Cal. 2008) ("*DRAM II*") (finding "antitrust injury" dispositive of *AGC* standing inquiry).  Indeed, a showing of antitrust injury is *necessary*—although not always sufficient—to establish antitrust standing.  *Cargill*, 479 U.S. at 110 n.5 ("[a] showing of antitrust injury is necessary . . . to establish standing").  Consequently, in the absence of a showing of antitrust injury, no further analysis is

[REDACTED] MEMO OF POINTS AND AUTHORITIES ISO MOT. FOR P. SUMM. J. AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING

MDL No. 1917
Master No. 3:07-cv-05944-SC

14

1    necessary or required.  *See*, *e.g.*, *DRAM II*, 536 F. Supp. 2d at 1136 ("[A] plaintiff may only

2    pursue an antitrust action if it can show antitrust injury"); *Carter v. Variflex, Inc.*, 101 F. Supp.

3    2d. 1261, 1268 (C.D. Cal. 2000) ("[P]roof of antitrust injury is often a dispositive issue in

4    antitrust litigation."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666,

5    686 (S.D.N.Y. 2013) (finding that plaintiffs "have not plausibly alleged that they suffered

6    antitrust injury, thus, on that basis alone, they lack standing").  In short, "the absence of antitrust

7    injury is fatal." *Toscano*, 201 F. Supp. 2d at 1116.

8                    **1.      Plaintiffs Did Not Participate in the Allegedly Restrained Market**

9            The Ninth Circuit has repeatedly held that in order to prove an "antitrust injury," a

10   plaintiff must have "suffered its injury *in the market where competition is being restrained*." *Am.*

11   *Ad Mgmt.*, 190 F.3d at 1057 (emphasis added).  As the *AGC* Court affirmed, the antitrust laws

12   were created to "protect[] the economic freedom of participants in the *relevant market.*" *AGC*,

13   459 U.S. at 538 (emphasis added).  Thus, it is a necessary condition of antitrust injury that the

14   "injured party be a participant in the same market as the alleged malefactors." *Bhan*, 772 F.2d at

15   1470; *Glen Holly Entm't*, 352 F.3d at 372 (same).  It is not enough at summary judgment that

16   Plaintiffs' injuries could potentially be construed as connected to the alleged wrongdoing.  As the

17   Ninth Circuit has held, "[p]arties whose injuries, though flowing from that which makes the

18   defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury."

19   *Am. Ad Mgmt., Inc.*, 190 F.3d at 1057.  Typically, an antitrust plaintiff can satisfy the antitrust

20   injury prong of *AGC* as a consumer or competitor in the "market in which trade was restrained."

21   *AGC*, 459 U.S. at 539; *Exhibitors' Serv., Inc. v. Am. Multi-Cinema, Inc.*, 788 F.2d 574, 578–79

22   (9th Cir. 1986).

23           It is undisputed that both DAPs and IPPs merely purchased CRT Finished Products—not

24   the CRT tubes themselves.  *See supra* Statement of Undisputed Facts § II.A.  Plaintiffs have now

25   conceded—indeed, it is the law of the case—that the conspiracy alleged in this case focuses

26   solely on the CRT market.  *Id.*; *see also* Order Adopting R&R, at 22, 2013 WL 4505701 at *10,

27   ECF No. 1856 ("the DAPs' complaints concern only the CRTs themselves").  Accordingly,

28   neither the IPPs nor the DAPs have suffered a cognizable antitrust injury because neither group

1   participated in the *only* market purportedly affected by Defendants' allegedly anticompetitive

2   conduct:  the market for CRT tubes.

3        As the undisputed record makes plain, Plaintiffs were never participants in the separate

4   market for CRTs.  *See*, *e.g.*, Ex. 19 at 40:20–41:9 (30(b)(6) Dep. Tr. of Target) (Nikhil Nayar)

5   ███████████████████████████████████████████████████████

6   ███████████████████████████████████████████████████████

7   ████████████████████████  (emphasis added)).  The record further confirms that the retailer

8   Plaintiffs paid no attention to details regarding the CRT tubes contained within the products that

9   they purchased, including as to their price, types, features and specifications.  *See*, *e.g.*, *id*. at

10  36:2–37:8 ██████████████████████████████████████████

11  ████████████████████████████████████████; Ex. 27 at 72:23–73:5 (Dep.

12  Tr. of Constantin Tanas) (ABC Warehouse) ███████████████████████

13  ████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████

15  ████████████████████████████████████████████

16  ██████████████.  The IPP end-user consumers' lack of knowledge regarding the CRT component

17  is even yet more pronounced.  *See supra* note 15 and accompanying text.

18       Nor do Plaintiffs meet either category for market participation enumerated by the Ninth

19  Circuit—*i.e.*, that the televisions and computer monitors bought by the plaintiffs are "reasonably

20  interchangeable," or experience "cross-elasticity of demand," with CRTs.  *See, e.g.*, *Bhan*, 772

21  F.2d at 1470–71; *DRAM II*, 536 F. Supp. 2d at 1139–41.  "For antitrust purposes, a 'market is

22  composed of products that have reasonable interchangeability for the purposes for which they are

23  produced—price, use and qualities considered.'"  *Paladin Assocs. v. Mont. Power Co.*, 328 F.3d

24  1145, 1163 (9th Cir. 2003) (quoting *Int'l Boxing Club of N.Y., Inc. v. United States*, 358 U.S. 242,

25  250 (1959)); *see also* U.S. Dep't of Justice & FTC, *Horizontal Merger Guidelines*, at 7, Aug. 19,

26  2010, http://www.justice.gov/atr/public/guidelines/hmg-2010.pdf ("Market definition focuses

27  solely on demand substitution factors, *i.e.*, on customers' ability and willingness to substitute

28  away from one product to another in response to a price increase or a corresponding non-price

1   change such as a reduction in product quality or service.").  As set forth below, neither Plaintiffs

2   nor their experts have provided any evidence that the "price, use and qualities" of CRT tubes are

3   at all "reasonably interchangeable" with CRT Finished Products.  *See infra* § V.B.3.

### 2.      Plaintiffs Do Not Fit into the Narrow "Inextricably Intertwined" Exception to the Market Participant Requirement

6        Under Ninth Circuit law, "a narrow exception [exists] to the market participant

7   requirement," which provides that a claimant can be considered the "direct victim of a

8   conspiracy" where the party's injury is "inextricably intertwined" with the injuries of market

9   participants.  *Am. Ad Mgmt.*, 190 F.3d at 1057 n.5 (citing *Blue Shield of Va. v. McCready*, 457

10  U.S. 465, 482–83 (1982), *Ostrofe v. H.S. Crocker Co.*, 740 F.2d 739, 744–47 (9th Cir. 1984)); *see*

11  *also Datel Holdings, Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 993–94 (N.D. Cal. 2010).

12  Plaintiffs may seek to invoke this "narrow exception" by attempting to demonstrate the truth of

13  the allegations in their Complaints that the separate markets for CRT tubes and CRT Finished

14  Products were "inextricably linked" or "intertwined."  *See*, *e.g.*, IPPs' 4th Consol. Am. Compl., at

15  ¶ 230, ECF No. 1526; Costco 1st Am. Compl., at ¶ 75, ECF No. 1982.

16       Any such argument must fail, as Plaintiffs misconstrue the nature of this narrow

17  exception.  It is not met by simply contending that the *markets* are intertwined, but rather by a

18  showing that the Plaintiffs' *alleged injury* is inextricably intertwined with the harm caused in the

19  primary market.  *McCready*, 457 U.S. at 482–83; *Am. Ad Mgmt.*, 190 F.3d at 1057 n.5.  In *AGC*,

20  the Supreme Court twice emphasized that McCready, unlike Plaintiffs here, had been *directly*

21  harmed by the defendants' actions. 459 U.S. at 529 n. 19, 541 ("[McCready] was directly harmed

22  by the defendants' unlawful conduct"; "in the *McCready* case, [] the plaintiff was the direct

23  victim of unlawful coercion").  Specifically, Plaintiff McCready was a "direct victim" because

24  she was a health-plan subscriber who sued Blue Shield, her health-plan provider, for refusing to

25  reimburse subscribers for psychotherapy treatment conducted by psychologists, even though it

26  did reimburse subscribers for the same treatment provided by psychiatrists.  As a consumer of

27  psychotherapy services—and thus a participant in the very market that Defendant was allegedly

28  restraining—Plaintiff McCready's injury was "inextricably intertwined" with the injury Blue

1    Shield sought to inflict on psychologists. *See Legal Econ. Evaluators, Inc. v. Metro. Life Ins.*

2    *Co.*, 39 F.3d 951, 956 (9th Cir. 1994) (noting that McCready was "a *consumer* in the market for

3    psychotherapy services" and "[her] harm would have been borne in the *same* market") (emphases

4    in original). The Court thus found her injury was a "necessary step" and "means" by which the

5    alleged restraint of trade was carried out. *McCready*, 457 U.S. at 479.

6        In the few other circuit court cases where the "inextricably intertwined" exception was

7    found to have been met, the injuries were likewise direct or the plaintiff was the instrument by

8    which the conspiracy was carried out. *See, e.g., Crimpers Promotions, Inc. v. Home Box Office,*

9    *Inc.*, 724 F.2d 290, 294–95 (2d Cir. 1983); *Ostrofe*, 740 F.2d at 744–47. In *Ostrofe*, for example,

10   plaintiff was an employee who was discharged by the defendant employer when he refused to

11   participate in fixing the price of paper lithograph labels. The Ninth Circuit found plaintiff's

12   injury to be "direct" because he was the "necessary means" through which anticompetitive

13   conduct was taken, even though he was neither a consumer nor competitor in the allegedly

14   restrained market. *See* 740 F.2d at 745. Under this narrow caselaw, therefore, the inextricably

15   intertwined exception applies only when "the claimant can be considered the 'direct victim' of a

16   conspiracy or the 'necessary means' by which the conspiracy was carried out." *Lorenzo v.*

17   *Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1300–01 (S.D. Cal. 2009) (citing *Ostrofe*, 740 F.2d at

18   744–47); *DRAM II*, 536 F. Supp. 2d at 1139–40 ("Both *McCready* and *Ostrofe* . . . stand for the

19   proposition that antitrust injury can be satisfied when a plaintiff is the direct victim of a

20   conspiracy, or the actual means by which the defendants' allegedly anticompetitive conduct is

21   carried out."); *Harbor Drug Co., Inc. v. Medco Containment Servs., Inc.*, No. C 95-01949 CW,

22   1996 WL 441018, at *4 (N.D. Cal. July 15, 1996) (plaintiff must be an "essential participant" in

23   an antitrust conspiracy or be "directly impacted" by such a conspiracy).

24       Neither condition of the exception is satisfied here, as Plaintiffs are neither direct victims

25   nor essential instruments of Defendants' alleged conduct in the CRT tube market.[19] Defendants'

---

[19] Only one court appears to have applied this narrow exception to a component case on summary
judgment. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-MD-01827-SI (N.D. Cal.
Dec. 7, 2011), ECF No. 4301; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-
MD-01827-SI (N.D. Cal. Oct. 9, 2012), ECF No. 6931. Defendants respectfully contend that
Judge Illston misapplied the narrow *McCready* exception, and, in any event relied on the notion,

[REDACTED] MEMO OF POINTS AND AUTHORITIES ISO MOT. FOR P. SUMM. J.                      MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING        Master No. 3:07-cv-05944-SC

18

1    alleged price-fixing of CRT tubes occurred well before either the DAPs, or, even more so, the

2    IPPs, purchased CRT Finished Products in separate markets.  Plaintiffs thus could not have been a

3    "necessary means" of carrying out any alleged conspiracy, as there were intermediate purchasers

4    (*e.g.*, Sharp, Sony, or IBM) that bought the CRT tubes directly.  *See Lorenzo*, 603 F. Supp. 2d at

5    1301–02 (finding that finished cell phone purchaser's injury was not a "necessary means" of

6    defendants' alleged scheme because occurred too far down the distribution chain from cell phone

7    "chipset manufacturers," to "device manufacturers," to "vendors," to "end consumers").  Nor can

8    these Plaintiffs be considered the "direct victims" of any alleged conspiracy in the CRT market,

9    as they "did not purchase any price-fixed product, *i.e.*, a CRT, from anyone."  Report &

10   Recommendation Regarding Defs.'s Jt. Mot. for Summ. J., at 9, May 31, 2012, ECF No. 1221;

11   *see also DRAM II*, 536 F. Supp. 2d at 1140 (rejecting exception in component case where, as

12   here, "plaintiffs do not allege either that they are direct victims of defendants' alleged conspiracy,

13   or that they were the necessary means by which defendants' conspiracy was effectuated").

14            Quite simply, the "inextricably intertwined" exception cannot be met merely by asserting

15   that two separate *markets* are "linked," as Plaintiffs here have alleged.  *First*, accepting Plaintiffs'

16   theory would fully eviscerate the Ninth Circuit's oft-cited requirement that "the injured party be a

17   participant in the *same* market as the alleged malefactors."  *See Glen Holly Entm't*, 352 F.3d at

18   372; *Bhan*, 772 F.2d at 1470.  *Second*, it "runs the risk of opening the floodgates to potential

19   litigation," as "all markets that service one another can be said to be 'related' . . . regardless

20   whether the ultimately injured plaintiffs themselves have tenuous ties with the alleged

21   malefactors and even the allegedly restrained market itself."  *DRAM II*, 536 F. Supp. 2d at 1141.

22   *Third*, at the summary-judgment stage, the "simple invocation of the phrase 'inextricably

23   intertwined' . . . will not allow a plaintiff to avoid the fundamental requirement [of antitrust

24   injury]."  *Lorenzo*, 603 F. Supp. 2d at 1301 (omission in original) (brackets omitted) (internal

25

26   distinguishable here, that "[*LCD*] Defendants took into account the prices of the [*LCD*] finished
     products in setting the prices of the component."  *In re TFT-LCD*, No. 3:07-MD-01827-SI, ECF

27   No. 4301, at 2.

28

1    quotation marks omitted).  Rather, Plaintiffs must have evidence to support their conclusory

2    claims.  *See, e.g.*, *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

3                    **3.      Neither Plaintiffs Nor Their Experts Can Show Proof of Antitrust
                            Injury**

4

5             Critically, although it is Plaintiffs' burden to show proof of antitrust injury, *Brunswick*

6    *Corp.*, 429 U.S. at 489, Plaintiffs' experts have offered no opinion or analysis that CRT Finished

7    Products are either "reasonably interchangeable," or experience a "cross-elasticity of demand,"

8    with CRT tubes.  DAP expert Dr. Elzinga defined a █████████████████████████

9    ████████████████████████████████████████████████████████████████████████

10   ████████████   and also noted that ██████████████████████████████████████

11   ██████████████████████████████████   *See* Ex. 6 at 18:8–22:18 (Dep. Tr. of

12   Kenneth Elzinga, July 17, 2014) (emphasis added).[20]  Dr. Elzinga also testified that in

13   determining whether or not two products were in the same product market, he would look to

14   ████████████████████████████████████   *Id.*; *see also* Ex. 5 at 32 n.119 (Netz Report)

15   ███████████████████████████████████████████████████; Ex. 20 at

16   62:18–63:14 (Dep. Tr. of Janet S. Netz, June 27, 2014) ████████████████████████

17   ████████████████████████████████████████████████

18   ████████████████████   However, neither Dr. Elzinga, nor Dr. Netz, nor any other Plaintiff

19   expert, purports to offer any opinion as to whether CRT Finished Products and CRT tubes in fact

20   experience any such "cross-elasticity" or "substitutability."  *See, e.g.*, Ex. 5 (Netz Report); Ex. 7

21   (Elzinga Report).  Nor, for that matter, do Plaintiffs' experts provide any analysis to define the

22   relevant product markets.  *Id.*  Having failed to provide such evidence, Plaintiffs have failed to

23   meet their burden of showing a cognizable antitrust injury under *Bhan*.  772 F.2d at 1470–71.

24   ─────────────────────
     [20]  Using these criteria, Dr. Elzinga suggests that ███████████████████████

25   █████████████████████████████████████████████████ *Id.* at 17:20–18:1. ████

26   ████████████████████████████████████████████████████████████████████████

27   ███████████████████████████████████████   as the present record confirms that no
     consumer would purchase a CRT tube if the price of a CRT computer monitor or television went

28   up.

Plaintiffs' experts' failure is not surprising, as the undisputed record makes clear that there is no "reasonable interchangeability" or "cross-elasticity of demand" between CRTs and CRT Finished Products.  Indeed, televisions and computer monitors cannot reasonably be substituted for CRTs, as no consumer would choose to switch to a CRT tube in response to an increase in the price of a television or monitor.  *See supra* Statement of Undisputed Facts § II.B.  Moreover, a DAP retailer would not sell a CRT standing alone, and no IPP consumer would buy a CRT standing alone in order to play a computer game or watch television.  *Id.*  In sum, there is simply no evidence that the "price, use, and qualities" of a CRT tube and a CRT Finished Product are at all interchangeable with one another. *See Paladin Assocs.*, 328 F.3d at 1156.  Thus, it is clear that Plaintiffs here are merely consumers in secondary markets that are "incidental" to the "market for [the CRT] itself."  *See DRAM I*, 516 F. Supp. 2d at 1091; *DRAM II*, 536 F. Supp. 2d at 1136.

## VI.    CONCLUSION

For all of the foregoing reasons, the Court should grant partial summary judgment to Defendants as to Plaintiffs' federal and each of the state antitrust claims identified above because Plaintiffs cannot show antitrust injury and therefore lack antitrust standing to pursue these claims as a matter of law.

Dated:    November 7, 2014

By:    */s/ Adam C. Hemlock*
DAVID L. YOHAI *(pro hac vice)*
E-mail: david.yohai@weil.com
ADAM C. HEMLOCK *(pro hac vice)*
E-mail: adam.hemlock@weil.com
DAVID E. YOLKUT *(pro hac vice)*
E-mail: david.yolkut@weil.com
LARA E. VEBLEN TRAGER *(pro hac vice)*
E-mail:  lara.trager@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone:    (212) 310-8000
Facsimile:    (212) 310-8007


BAMBO OBARO (267683)
E-mail: bambo.obaro@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway

Redwood Shores, California 94065-1175
Telephone:      (650) 802-3000
Facsimile:      (650) 802-3100

JEFFREY L. KESSLER *(pro hac vice)*
E-mail:  jkessler@winston.com
A. PAUL VICTOR (*pro hac vice*)
E-mail: pvictor@winston.com
EVA W. COLE *(pro hac vice)*
E-mail: ewcole@winston.com
MOLLY M. DONOVAN *(pro hac vice)*
E-mail:  mmdonovan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166-4193
Telephone:      (212) 294-6700
Facsimile:      (212) 294-7400

***Attorneys for Defendants Panasonic Corporation
of North America, MT Picture Display Co., Ltd.,
and Panasonic Corporation (f/k/a Matsushita
Electric Industrial Co., Ltd.)***


By: /s/ *Lucius B. Lau*
CHRISTOPHER M. CURRAN *(pro hac vice)*
E-mail: ccurran@whitecase.com
LUCIUS B. LAU *(pro hac vice)*
E-mail: alau@whitecase.com
DANA E. FOSTER *(pro hac vice)*
E-mail: defoster@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

***Attorneys for Defendants Toshiba Corporation,
Toshiba America, Inc., Toshiba America
Information Systems, Inc., Toshiba America
Consumer Products, L.L.C., and Toshiba America
Electronic Components, Inc.***


By: /s/ *John M. Taladay*
JOHN M. TALADAY *(pro hac vice)*
E-mail: john.taladay@bakerbotts.com
JOSEPH OSTOYICH *(pro hac vice)*
E-mail: joseph.ostoyich@bakerbotts.com

ERIK T. KOONS *(pro hac vice)*
E-mail: erik.koons@bakerbotts.com
CHARLES M. MALAISE *(pro hac vice)*
E-mail: charles.malaise@bakerbotts.com
**BAKER BOTTS LLP**
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

JON V. SWENSON (SBN 233054)
E-mail: jon.swenson@bakerbotts.com
**BAKER BOTTS LLP**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

***Attorneys for Defendants Koninklijke Philips N.V.,
Philips Electronics North America Corporation,
Philips Taiwan Limited, and Philips do Brasil Ltda.***

By: */s/ Hojoon Hwang*
JEROME C. ROTH (State Bar No. 159483)
jerome.roth@mto.com
HOJOON HWANG (State Bar No. 184950)
hojoon.hwang@mto.com
MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

WILLIAM D. TEMKO (SBN 098858)
William.Temko@mto.com
**MUNGER, TOLLES & OLSON LLP**
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

***Attorneys for Defendants LG Electronics, Inc.;
LG Electronics USA, Inc.; and LG Electronics
Taiwan Taipei Co., Ltd.***

[REDACTED] MEMO OF POINTS AND AUTHORITIES ISO MOT. FOR P. SUMM. J.
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING

MDL No. 1917
Master No. 3:07-cv-05944-SC

23

By: /s/ Eliot A. Adelson
ELIOT A. ADELSON (SBN 205284)
JAMES MAXWELL COOPER (SBN 284054)
**KIRKLAND & ELLIS LLP**
555 California Street, 27th Floor
San Francisco, California 94104
Tel: (415) 439-1400
Facsimile: (415) 439-1500
E-mail: eadelson@kirkland.com
E-mail: max.cooper@kirkland.com

JAMES H. MUTCHNIK, P.C. (*pro hac vice*)
KATE WHEATON (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Tel: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendants Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display, Inc.), Hitachi Asia, Ltd., Hitachi America, Ltd., and Hitachi Electronic Devices (USA), Inc.*

By: /s/ Gary L. Halling
GARY L. HALLING (SBN 66087)
E-mail: ghalling@sheppardmullin.com
JAMES L. MCGINNIS (SBN 95788)
E-mail: jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH, (SBN 203524)
E-mail: mscarborough@sheppardmullin.com
**SHEPPARD MULLIN RICHTER & HAMPTON**
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947

*Attorneys for Defendants Samsung SDI America, Inc.; Samsung SDI Co., Ltd.; Samsung SDI (Malaysia) SDN. BHD.; Samsung SDI Mexico S.A. DE C.V.; Samsung SDI Brasil Ltda.; Shenzen Samsung SDI Co., Ltd. and Tianjin Samsung SDI Co., Ltd.*

By: /s/ Rachel S. Brass
JOEL S. SANDERS (Cal. Bar. No. 107234)
E-mail: jsanders@gibsondunn.com
RACHEL S. BRASS (Cal. Bar. No. 219301)

---

[REDACTED] MEMO OF POINTS AND AUTHORITIES ISO MOT. FOR P. SUMM. J.
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING

MDL No. 1917
Master No. 3:07-cv-05944-SC

24

1

E-mail: rbrass@gibsondunn.com
AUSTIN V. SCHWING (Cal. Bar. No. 211696)
E-mail: aschwing@gibsondunn.com
2
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
3
San Francisco, CA 94105
Telephone:     (415) 393-8200
4
Facsimile:     (415) 393-8306

5

6

*Attorneys for Defendants Chunghwa Picture*
*Tubes, Ltd. and Chunghwa Picture Tubes*
7
*(Malaysia) (Only as to Direct Action Plaintiffs Best*
*Buy, Target, Sears, Interbond, Office Depot,*
8
*CompuCom, P.C. Richard, MARTA, ABC Appliance,*
*Schultze Agency Services, and ViewSonic)*
9

10

By: /s/ *Kathy L. Osborn*
11
KATHY L. OSBORN *(pro hac vice)*
E-mail: kathy.osborn@FaegreBD.com
12
RYAN M. HURLEY *(pro hac vice)*
E-mail: ryan.hurley@FaegreBD.com
13
**FAEGRE BAKER DANIELS LLP**
300 N. Meridian Street, Suite 2700
14
Indianapolis, IN 46204
Telephone: (317) 237-0300
15
Facsimile: (317) 237-1000

16

17
JEFFREY S. ROBERTS *(pro hac vice)*
E-mail: jeff.roberts@FaegreBD.com
18
**FAEGRE BAKER DANIELS LLP**
3200 Wells Fargo Center
19
1700 Lincoln Street
Denver, CO 80203
20
Telephone: (303) 607-3500
Facsimile: (303) 607-3600
21

22
STEPHEN M. JUDGE *(pro hac vice)*
E-mail: steve.judge@FaegreBd.com
23
**FAEGRE BAKER DANIELS LLP**
202 S. Michigan Street, Suite 1400
24
South Bend, IN 46601
Telephone: (574) 234-4149
25
Facsimile: (574) 239-1900

26

*Attorneys for Defendants Thomson SA and*
27
*Thomson Consumer Electronics, Inc.*

28

By: /s/ *Michael T. Brody*

Terrence J. Truax *(pro hac vice)*
E-mail: ttruax@jenner.com
Michael T. Brody *(pro hac vice)*
E-mail: mbrody@jenner.com
**JENNER & BLOCK LLP**
353 North Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

BRENT CASLIN (Cal. Bar. No. 198682)
E-mail: bcaslin@jenner.com
**JENNER & BLOCK LLP**
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

*Attorneys for Defendants Mitsubishi Electric*
*Corporation, Mitsubishi Electric US, Inc. and,*
*Mitsubishi Electric Visual Solutions America, Inc.*

By: /s/ *Michael Lacorcara*

Michael Lacovara (209279)
Freshfields Bruckhaus Deringer US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022
Telephone:  212 277 4000
Facsimile: 212 277 4001

TERRY CALVANI (Cal. Bar. No. 53260)
E-mail: terry.calvani@freshfields.com
CHRISTINE LACIAK *(pro hac vice)*
E-mail: christine.laciak@freshfields.com
RICHARD SNYDER *(pro hac vice)*
E-mail: richard.snyder@freshfields.com
**FRESHFIELDS BRUCKHAUS**
**DERINGER US LLP**
701 Pennsylvania Avenue NW, Suite 600
Washington, DC 20004
Telephone: (202) 777-4565
Facsimile: (202) 777-4555

*Attorneys for Beijing-Matsushita Color CRT*
*Company, Ltd.*

By: */s/   Nathan Lane, III*

Mark Dosker
Nathan Lane, III
275 Battery Street, Suite 2600
San Francisco, CA  94111
Telephone: 415.954.0200
Facsimile: 415.393.9887
E-mail: mark.dosker@squirepb.com
nathan.lane@squirepb.com

Donald A. Wall (*pro hac vice*)
**SQUIRE PATTON BOGGS (US) LLP**
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: + 1 602 528 4000
Facsimile: +1 602 253 8129
E-mail: donald.wall@squirepb.com

*Attorneys for Defendant Technologies Displays
Americas LLC with respect to all cases except
Office Depot, Inc. v. Technicolor SA, et al.
and Sears, Roebuck and Co. et al. v. Technicolor
SA, et al.*

*/s/ Jeffrey I. Zuckerman*

Jeffrey I. Zuckerman (*pro hac vice*)
Ellen Tobin (*pro hac vice*)
101 Park Avenue
New York, New York 10178
Telephone: 212.696.6000
Facsimile: 212.697.1559
E-mail: jzuckerman@curtis.com
E-mail: etobin@curtis.com

Arthur Gaus (SBN 289560)
**DILLINGHAM & MURPHY, LLP**
601 California Street, Suite 1900
San Francisco, California 94108
Telephone: 415.397.2700
Facsimile: 415.397-3300
E-mail: asg@dillinghammurphy.com

*Attorneys for Defendant Technologies Displays
Americas LLC with respect to Office Depot, Inc. v.
Technicolor SA, et al. and Sears, Roebuck and Co. et
al. v. Technicolor SA, et al.*

1          Pursuant to General Order, § X-B, the filer attests that concurrence in the filing of this

2     document has been obtained from each of the above signatories.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28