# Exhibit 2

Dewey & LeBoeuf LLP
1301 Avenue of the Americas
New York, NY 10019-6092

# Dewey & LeBoeuf

T    +1 212 259 8050
F    +1 212 632 0845
jkessler@dl.com

February 25, 2011

**BY EMAIL**

Guido Saveri, Esq.
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111

Mario N. Alioto, Esq.
Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123

Re:    *In Re Cathode Ray Tube (CRT) Antitrust Litigation*

Dear Guido and Mario:

I am writing this letter on behalf of the companies listed below.[1]  We have reviewed Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs (collectively, "Plaintiffs") responses to several of Defendants' interrogatories seeking the factual basis for Plaintiffs' conspiracy allegations concerning finished CRT products. We do not believe those responses to be adequate to establish a good faith basis for Plaintiffs conspiracy allegations concerning finished CRT products as set forth in their consolidated amended complaints.

We have no desire to engage in contentious motion practice and no wish to criticize Plaintiffs or their counsel. The situation must be addressed, however, so that our clients are not prejudiced and burdened with allegations and attendant discovery for which there was no good faith support. Accordingly, we are hereby providing you with the requisite notice under Rule 11 seeking that you withdraw the finished CRT product conspiracy allegations and agree to

---

[1] Panasonic Corporation of North America, MT Picture Display Co., Ltd., Panasonic Corporation ( f/k/a Matsushita Electric Industrial Co.); Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc., and Hitachi Displays, Ltd.; Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

Dewey & LeBoeuf LLP is a New York limited liability partnership.

NEW YORK | LONDON | WASHINGTON, DC | ABU DHABI | ALBANY | ALMATY | BEIJING | BOSTON | BRUSSELS
CHICAGO | DOHA | DUBAI | FRANKFURT | HONG KONG | HOUSTON | JOHANNESBURG (PTY) LTD. | LOS ANGELES
MADRID | MILAN | MOSCOW | PARIS | RIYADH AFFILIATED OFFICE | ROME | SAN FRANCISCO | SILICON VALLEY | WARSAW

February 25, 2011
Page 2

limit CRT product discovery accordingly to the issues of impact and pass-through. This would seem the most sensible course for everyone and would avoid burdening Judge Legge (and in turn Judge Conti) with a motion that we are sure they would prefer not to have to resolve.

In order that you understand completely our position, we enclose a draft of the motion that would be filed on behalf of a number of the Defendants should you be unwilling to withdraw the allegations and agree to limit discovery accordingly. Under the applicable rules, you have 21 days to respond. We would hope that you could respond more promptly than that, but will await a response or for the period to elapse before filing the motion. We truly hope filing the motion will be unnecessary and that the matter can be resolved between counsel in an amicable way.

Very Truly Yours,

Jeffrey Kessler

CC:

Diane L. Webb (197851)
Email: dwebb@morganlewis.com
MICHELLE PARK CHIU (248421)
Email: mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

*Attorneys for Defendants Hitachi, Ltd.,*
*Hitachi Asia, Ltd., Hitachi America, Ltd.,*
*Hitachi Electronic Devices (USA), Inc.,*
*and Hitachi Displays, Ltd.*

IAN SIMMONS (*pro hac vice*)
Email: isimmons@omm.com
BEN BRADSHAW (189925)
Email: bbradshaw@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006

February 25, 2011
Page 3


Telephone: (202) 383-5300
Facsimile: (202) 383-5414

***Attorneys for Defendants Samsung
Electronics Co., Ltd. and Samsung
Electronics America, Inc.***

ALDO A. BADINI (257086)
DEWEY & LEBOEUF LLP
1950 University Avenue
East Palo Alto, CA 94303
Telephone: (650)845-7000
Facsimile: (650) 845-7333
Email: abadini@dl.com

JEFFREY L. KESSLER (*Admitted Pro Hac Vice*)
A. PAUL VICTOR (*Admitted Pro Hac Vice*)
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 259-8000
Facsimile: (212) 259-7013
Email: jkessler@dl.com

STEVEN A. REISS (*Admitted Pro Hac Vice*)
DAVID L. YOHAI (*Admitted Pro Hac Vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: steven.reiss@weil.com

Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co.,
Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co.)

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | No. 07-5944-SC |
| | MDL. No. 1917 |
| This Document Relates to:  ALL ACTIONS | **MOTION FOR SANCTIONS PURSUANT TO RULE 11** |
| | The Honorable Charles A. Legge |

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

**MEMORANDUM OF POINTS AND AUTHORITIES**

Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs (collectively, "Plaintiffs") have both filed consolidated complaints alleging not only a conspiracy involving Cathode Ray Tubes ("CRTs"), but also a conspiracy purportedly fixing the price or allocating the sale of "CRT Products." *See* Direct Purchaser Plaintiffs Consolidated Amended Complaint at ¶¶ 1, 3, March 16, 2009, Dkt. 436 ("DP-CAC"); Indirect Purchaser Plaintiffs Third Consolidated Amended Complaint at ¶ 1, December 13, 2010, Dkt. 827 ("IP-TCAC") (collectively, "Complaints").  The Complaints define "CRT Products" to include both CRTs and "products containing CRTs, such as television sets and computer monitors" (hereinafter, products containing CRTs are referred to as "Finished Products").  DP-CAC at ¶ 1; IP-TCAC at ¶ 15. Defendants[1] submit that Plaintiffs have violated Rule 11 by filing these allegations of a conspiracy encompassing Finished Products without the required evidentiary basis.[2]

For practically a year, Defendants have sought to determine the factual basis for the allegations in Plaintiffs' Complaints' allegations that Defendants participated in a conspiracy encompassing the price-fixing of Finished Products.[3]  Defendants have sought this discovery in order to determine whether the facts Plaintiffs purportedly knew at the time they filed their complaints supported their allegations of a conspiracy including Finished Products, and therefore satisfied their burdens under Rule 11.  Plaintiffs summarily refused Defendants' requests to disclose this information, characterizing the requests as premature and improper "contention

---

[1] As used herein, "Defendants" refers to the undersigned defendants who have joined in this motion..

[2] This motion is directed only at Plaintiffs' allegations regarding a conspiracy to fix prices or otherwise restrain competition in the sale of Finished Products, and allegations that Defendants conspired to fix prices or restrain trade in Finished Products as part of a "unitary conspiracy" that involved both CRTs and Finished Products.  Defendants are not seeking to strike Plaintiffs' allegations of a purported conspiracy involving CRTs, nor allegations that the purported CRT conspiracy may have had an effect on prices of Finished Products.

[3] On March 8, 2010, LG Electronics, Inc. and Defendant MT Picture Display Co. Ltd served Interrogatories and Requests for Production on Direct Purchaser Plaintiffs.  On May 7, 2010, Defendants Samsung Electronics America, Inc. and Samsung SDI America, Inc. served Interrogatories on Indirect Purchaser Plaintiffs.  Defendants Interrogatories specifically asked Plaintiffs to state the factual basis for their allegations that Defendants conspired to fix the prices of Finished Products.

1  discovery" which was not justified on the basis that the responses could expose the basis for a

2  Rule 11 motion.  Defendants moved the Court to compel proper responses and after full briefing

3  and hearing on this issue, Special Master Legge ordered Plaintiffs to respond to these discovery

4  requests, recognizing that "even apart from whether the discovery responses will result in a Rule

5  11 motion, the requested information is important to the Special Master and to the District Court

6  in defining the permissible scope of discovery, the time necessary for discovery, the respective

7  burdens on the parties, and the scope of the trial." Report and Recommendations Regarding

8  Discovery Motions at 6, November 18, 2010, Dkt. 810 ("Report").

9              On January 31, 2011, Plaintiffs served their responses.[4]  In these responses,

10 Plaintiffs continue to allege that Defendants participated in a "unitary conspiracy" that

11 encompassed color picture tubes ("CPTs"), color display tubes ("CDTs") and electronic devices

12 containing CPTs (such as televisions) or CDTs (such as computer monitors, *see* Direct Purchaser

13 Plaintiffs' Supplemental Responses to Defendant MT Picture Display Co., Ltd.'s First Set of

14 Interrogatories at 10, January 31, 2011 ("DP-Resp.") and that "Defendants conspired to fix the

15 prices of CRT Finished Products as part of a single conspiracy to fix prices of CRTs and CRT

16 Finished Products." Indirect Purchaser Plaintiffs' Responses and Objections to Samsung

17 Electronics America, Inc.'s First Set of Interrogatories at 7, January 31, 2011 ("IP-Resp.").

18             However, Plaintiffs provide no evidentiary basis in their interrogatory responses

19 to support their allegations of a single, unitary conspiracy to fix the prices of both CRTs and

20 Finished Products, or to meet the requirements of Rule 11.[5]  Specifically, most of the purported

21

---

22 [4] Direct Purchaser Plaintiffs' Supplemental Responses to Defendant MT Picture Display Co.,
   Ltd.'s First Set of Interrogatories, January 31, 2011; Direct Purchaser Plaintiffs' Supplemental
23 Responses to Defendant MT Picture Display Co., Ltd.'s First Set of Interrogatories, January
   31, 2011; Direct Purchaser Plaintiffs' Supplemental Responses to Defendant LG Electronics,
24 Inc.'s First Set of Interrogatories, January 31, 2011; Direct Purchaser Plaintiffs' Supplemental
   Responses to Defendant LG Electronics, Inc.'s First Set of Requests for Production, January 31,
25 2011; Indirect Purchaser Plaintiffs' Responses and Objections to Samsung Electronics America,
   Inc.'s First Set of Interrogatories, January 31, 2011; Indirect Purchaser Plaintiffs' Responses and
26 Objections to Samsung SDI America, Inc.'s First Set of Interrogatories, January 31, 2011

27 [5] Consistent with Rule 11(c)(2), Defendants served Plaintiffs with a copy of this motion on
   February 25, 2011, 21 days prior to filing it with the Court.

28                                          - 2 -

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

sources cited by Plaintiffs as a basis for their allegations of a conspiracy that includes fixing the prices of Finished Products were from an *oral proffer* from Chunghwa Picture Tubes, Ltd. ("Chunghwa") – a company that only manufactured and sold CRTs, not Finished Products. Critically, the Chunghwa proffer cannot provide a Rule 11 basis for Plaintiffs' claims about a Finished Products conspiracy, since Chunghwa has admitted that it had no information or knowledge of any Finished Products conspiracy. *See* Defendant Chunghwa Picture Tubes, Ltd.'s Responses and Objections to Defendant LG Electronics USA Inc.'s First Set of Request for Admissions at 3-4, May 10, 2010. Indeed, while Plaintiffs claim that Chunghwa proffered "specific examples of agreements among Defendants with respect to CPTs," DP-Resp. at 41, Plaintiffs do not assert that Chunghwa proffered any such specific factual information that there were agreements involving Finished Products.

Further, as discussed *infra*, a review of the documents from which Chunghwa read during the proffer, copies of which the Plaintiffs now have, confirms that they do not support the allegations in Plaintiffs' Complaints of a "unitary conspiracy" that encompasses Finished Products. Rather, the documents only report on alleged meetings directed at exchanging CRT price information and potentially reaching agreement on CRT prices. The only references to Finished Products in these documents do not in any way support or provide a basis for Plaintiffs to allege in good faith an agreement on the prices of Finished Products.

The other information Plaintiffs purportedly relied on for their Finished Products conspiracy allegations are Department of Justice, European Union, and other government investigations, known to Plaintiffs at the time they filed their original complaints, and which purportedly triggered the filing of these Complaints. But these investigations involved an alleged conspiracy related only to CRTs, not Finished Products, and did not involve many of the Defendant entities Plaintiffs name in the Complaints. Plaintiffs do not dispute that these government investigations only related to CRTs, not to Finished Products, but assert without any support that "they interpreted" the information about these investigations to indicate that there was an overarching conspiracy that included televisions and computer monitors. *See* DP-Resp.

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

- 3 -

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1    at 64.  Plaintiffs' additional allegations, that certain of the Defendants were involved in other

2    alleged conspiracies not involving CRTs (even if characterized by Plaintiff as "Related

3    Conspiracies"), *see* DP-Resp. at 62-64, are also insufficient as a factual basis under Rule 11 to

4    support the allegations of a Finished Products conspiracy.  Nor do mere assertions that some (but

5    not all) of the Defendants were vertically integrated manufacturers of both CRTs and Finished

6    Products, *see* DP-Resp. at 51-61, provide any factual basis under Rule 11 to support their claims

7    that Defendants were part of a conspiracy that included Finished Products.

8           Plaintiffs' interrogatory responses thus confirm that they had no evidentiary basis

9    to allege an antitrust conspiracy encompassing Finished Products.  This violates Rule 11.  In this

10   Circuit, Rule 11 has been consistently applied to require attorneys to conduct reasonable pre-

11   complaint investigations and to have a good faith factual basis for all of the contentions in a

12   complaint.  Defendants have already incurred hundreds of thousands of dollars in legal fees and

13   costs in contesting allegations of a unitary conspiracy including Finished Products for which

14   Plaintiffs have no support.  Rule 11 requires the imposition of sanctions that are sufficient to

15   deter this type of conduct.

16          Accordingly, Defendants respectfully request that all of the allegations that

17   Finished Products were part of a unitary conspiracy be stricken from the Complaints.  The case

18   can proceed solely on the basis of the alleged conspiracy involving CRTs, including claims that

19   prices of CRTs had effects on the prices of Finished Products.  This sanction will streamline the

20   case to focus on the only claims that Plaintiffs have plausibly asserted.

21                                        **ARGUMENT**

22   **I.     RULE 11 REQUIRES A REASONABLE INVESTIGATION**

23   **        AND A FACTUAL BASIS FOR ALL CONTENTIONS**
     **        ASSERTED IN A COMPLAINT**

24          The central purpose of Rule 11 is "to deter baseless filings in district court" and,

25   to that end, it "imposes a duty on attorneys to certify that they have conducted a reasonable

26   inquiry and have determined that any papers filed with the court are well grounded in fact."

27   *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990) (holding that an attorney's pre-

28                                            - 4 -

---

1   filing inquiry must be reasonable under the circumstances).  Rule 11 requires that all factual

2   contentions in a signed complaint have "evidentiary support" even *before the complaint is filed*.

3   Fed. R. Civ. P. 11(b)(3); s*ee also Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169,

4   174-75 (C.D. Cal. 2002) (Under Rule 11, "the question is whether, at the time the paper was

5   presented to the Court . . . it lacked evidentiary support or contained 'frivolous' legal

6   arguments."); *Herships v. Maher*, No. C-97-3114, 1998 WL 164943, at *2 (N.D. Cal. Mar. 10,

7   1998) (Rule 11 imposes "an affirmative duty to conduct a reasonable inquiry into the facts and

8   the law *before filing*") (emphasis in original).  Under the Rule, attorneys are not permitted to rely

9   on suspicion or speculation as a basis for factual allegations.  *MGIC Indemnity Corp. v.*

10  *Weisman*, 803 F.2d 500, 505 (9th Cir. 1986); *Elan Microelectronics Corp. v. Apple, Inc.*, No. C-

11  09-01531, 2009 WL 2972374, at *4 (N.D. Cal. Sept. 14, 2009) ("Simply guessing or speculating

12  that there may be a claim is not enough.").[6]

13          In assessing whether an attorney has satisfied his Rule 11 obligations, the court

14  must consider "factual questions regarding the nature of the attorney's pre-filing inquiry and the

15  factual basis of the pleading."  *Cooter & Gell*, 496 U.S. at 399.  When an attorney signs and

16  submits a complaint without first conducting a reasonable investigation, sanctions are

17  appropriate.  *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 541

18  (1991).

19  **II.     PLAINTIFFS VIOLATED RULE 11 BY ASSERTING ALLEGATIONS IN THEIR**
20          **COMPLAINTS OF A FINISHED PRODUCTS CONSPIRACY THAT LACKED**
        **ANY GOOD FAITH FACTUAL SUPPORT**

21          Plaintiffs' discovery responses confirm that their Complaints include allegations

22  not just of an alleged conspiracy involving CRTs, but of a "unitary conspiracy that encompasses

23  both CRTs and CRT Products (including finished products, primarily televisions and computer

24  monitors)." DP-Resp. at 8; *see also* IP-Resp. at 6.  Indeed, this is the primary argument Plaintiffs

25  ───────────────

26  [6] Further, pleading allegations "on information and belief does not relieve litigants from the
    obligation to conduct an appropriate investigation into the facts that is reasonable under the
27  circumstances; it is not a license to . . . make claims . . . without any factual basis or
    justification."  Fed. R. Civ. P. 11(b)(3) advisory committee's note to the 1993 amendments.

28

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1    made in opposition to Defendants' motions to dismiss the Complaints, both before Special

2    Master Legge and Judge Conti.[7]   For example in his Report, Special Master Legge expressly

3    relied upon the fact that Plaintiffs had made numerous assertions, throughout the Complaints,

4    regarding a conspiracy allegedly directed at CRT Products, which the Complaints define to

5    include both CRTs and products incorporating CRTs as a component.  Report at 4-5; *see also*

6    DP-CAC at ¶ 1; IP-TCAC at ¶ 15.  Plaintiffs are also using this allegation of a conspiracy

7    involving Finished Products to justify the inclusion of certain Defendants who only make

8    Finished Products, to demand far reaching global discovery covering a twenty-year time period,

9    and to seek information about such an alleged Finished Products conspiracy in their discovery

10   requests, which include both CRTs and finished products containing CRTs.  *See, e.g*, Direct

11   Purchaser Plaintiffs' First Set of Request for Production of Documents at 2, 6-10.

12          Plaintiffs' allegations of a Finished Products conspiracy have been made without

13   any proper Rule 11 foundation.  In their most recent discovery responses, Plaintiffs confirm that

14   they have no sufficient Rule 11 support for their allegations of any unitary conspiracy including

15   Finished Products.  Plaintiffs identify some 453 bilateral and so-called "Glass Meetings" about

16   which Chunghwa provided information to Plaintiffs in their proffer. *See* DP-Resp. at 16-41.

17   These alleged meetings, however, all focus on the prices of CRTs – the CRT or CDT tubes – and

18   not Finished Products.  Many of them are bi-lateral and involve only Chunghwa, which

19   manufactured CRTs and did not even make Finished Products, and one other manufacturer.

20   Plaintiffs have not identified a single one of these meetings about which they allege Chunghwa

21   told them that the participants had agreed to the prices of Finished Products.  Nor could

22   Chunghwa have done so in view of the fact that it is not a manufacturer of Finished Products and

23   it has admitted that it has no knowledge of any agreement among manufacturers of Finished

24

25   _____

[7] *See, e.g.*, Direct Purchaser Plaintiffs' Combined Opposition to Defendants' Motions to Dismiss at 5-7, 14-19, Aug. 3. 2009, Dkt. 531; Indirect Purchaser Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss at 66-71, Aug. 4, 2009, Dkt. 536; Direct Purchaser Plaintiffs' Opposition to Defendants' Objections to the Special Master's Report & Recommendations at 5-7, Feb. 26, 2010, Dkt. 633; Indirect Purchaser Plaintiffs' Response to Defendants' Joint Objections to the Special Master's Report & Recommendations at 2-5, Feb. 26, 2010, Dkt. 641.

26

27

28                                                          - 6 -

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1   Products to fix or set the prices at which such Finished Products are sold.  *See* Defendant

2   Chunghwa Picture Tubes, Ltd.'s Responses and Objections to Defendant LG Electronics USA

3   Inc.'s First Set of Request for Admissions at 3, May 10, 2010.

4          In their effort to support their allegations of a Finished Products conspiracy,

5   Plaintiffs offer quotes from the Chunghwa proffer about a number of these meetings.  Plaintiffs

6   contend that these quotes support their allegations and led them to believe that, in addition to

7   fixing prices or limiting output for CRTs, the Defendants also fixed prices and limited output for

8   the Finished Products (TVs and monitors), all as part of a single conspiracy.  *See* DP-Resp. at 8,

9   46; IP-Resp. at 8.  However, especially when reviewed in the context of a proffer from a

10  company that was only a manufacturer of CRTs (a fact known to the Plaintiffs at the time of the

11  proffer and filing of the Complaints) that has also admitted to having <u>no knowledge</u> of any

12  Finished Products conspiracy, these quotations, and the documents they are from, provide no

13  such support.

14         The excerpts of the Chunghwa reports in which Plaintiffs refer to prices or output

15  for Finished Products are only in the context of discussions about CRT tubes, not concerning any

16  agreement about the price of Finished Products.  The quotations containing references to low

17  monitor prices,[8] or reflecting discussions among CRT manufacturers about the prices of TVs or

18  monitors, are clearly in the context of whether such prices will allow their customers, the

19  Finished Product manufacturers, to pass on CRT prices increases.[9]  On their face, none of these

20  excerpts report on discussions of an agreement to fix prices or limit output for the Finished

21  Products themselves.  These alleged discussions only address the CRT manufacturers'

---

[8] See CHU 29238E (April 13, 1999 Report quoted by DP Resp. at 48); CHU 30787.01E (June 23, 1999 Report quoted by IP-Resp. at 9, 23; DP-Resp. at 45, 48-49)

[9] CHU 28933.01E (May 29, 1995 Report quoted by IP-Resp. at 8, 22; DP-Resp. at 47); CHU 28909E (October 24, 1996 Report quoted by IP-Resp. at 8, 22-23; DP- Resp at 47-48); CHU 28749.01E (March 19, 1997 Report quoted by IP-Resp. at 9, 23; DP-Resp. at 48); CHU 31013.01E (June 28, 2000 Report quoted by IP Resp. at 9, 23; DP-Resp. at 49); CHU 31051E (September 21, 2000 Report quoted by IP-Resp. at 9-10, 23-24; DP Resp. at 49-50); CHU 31183.01E (February 22, 2002 Report quoted by IP-Resp. at 10, 24; DP Resp. at 50); CHU 31240.01E (March 25-27 Report quoted by IP-Resp. at 10, DP Resp. at 50);. CHU 31254.01E (July 2, 2004 Report quoted by IP-Resp. at 10-11, 25; DP-Resp. at 50).

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

MOTION FOR SANCTIONS PURSUANT TO                    Case No. 07-5944-SC
RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS        MDL No. 1917

1  considerations of whether possible CRT price increases were going to be viable based on the

2  Finished Product prices.

3         For example, Plaintiffs cite to an excerpt regarding a June 23, 1999 bilateral

4  meeting in which LG allegedly provided information about its monitor business to Chunghwa,

5  and characterize it as an "exchange of confidential competitive information regarding the

6  production volume and future pricing for LG's monitors." DP-Resp. at 48.  However, this

7  completely mischaracterizes the content of the excerpt.  There is no "exchange" of monitor

8  information, which is only to be expected since Chunghwa did not make monitors.  And while

9  LG allegedly does provide its "estimate" of future monitor production, it does not provide

10 information about LG's future monitor pricing.  LG simply indicates what prices certain of its

11 customers have requested ("IBM's 17 inch price request for year 1997 is USD 325. Compaq's

12 requests 14 inch price for year 1997 is USD 139") without any indication of what LG actually

13 plans to charge these customers.  There is no information that could possibly be read as any

14 indication that LG has agreed with anyone else on what monitor prices to charge.  The mere

15 presence in a document of monitor price information is simply not a sufficient basis to support

16 allegations of a conspiracy encompassing the prices of Finished Products.

17        The other examples provided by Plaintiffs are similarly deficient, and none of the

18 quotations from documents regarding alleged conspiratorial meetings that Chunghwa read to

19 Plaintiffs' counsel as part of the proffer can support a good faith claim that the bilateral

20 meetings, Glass Meetings, or other alleged conspiratorial behavior related to fixing the prices of

21 Finished Products (as opposed to being information that may indicate that an alleged CRT

22 conspiracy could affect the prices of Finished Products).  Chunghwa has admitted that it was not

23 aware of any conspiracy among manufacturers of Finished Products to fix or set the prices of

24 Finished Products, and thus could not have represented to Plaintiffs that they were aware of any

25 Finished Products conspiracy.  *See id.* at 3.

26        Plaintiffs have not identified any other source of factual information to support

27 their allegations of a conspiracy to fix prices or market shares in the sale of Finished Products, as

28                                                    - 8 -

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1  opposed to the sale of CRTs.  Plaintiffs continue to rely on their pre-filing knowledge of

2  government investigations.  However, every one of the government investigations cited, in their

3  discovery responses, *id.*; the complaints, IP-TCAC at ¶¶195-213, DP-CAC at ¶¶ 122-133; and in

4  their other court filings, *see*, *e.g.*, Direct Purchaser Plaintiffs' Opposition to Defendants'

5  Objections to the Special Master's Report & Recommendations at 14, Feb. 26, 2010, Dkt. 633,

6  only involve an alleged conspiracy directed at CRTs and, thus, the investigations provide no

7  basis for Plaintiffs to assert a broader or different conspiracy including Finished Products.

8       The discovery responses also rely on the DOJ announcement of the "indictment of

9  . . .C.Y Lin of Chunghwa PT in connection with a conspiracy to fix the price of CDTs and

10  CPTs," DP-Resp. at 64, even though this DOJ announcement relates only to an alleged

11  conspiracy involving tubes – CDTs and CPTs, *see* DP-Resp. at 65 (citing

12  http://www.justice.gov/opa/pr/2009/February/09-at-110.html).  The DOJ has confirmed in this

13  very announcement that the indictment was for participation in a conspiracy to "fix the prices of

14  two types of CRTs."  *Id.* (charging that Mr. Lin and co-conspirators took various steps to:

15  "discuss the prices, output and market shares of CDTs"; "charge prices of CDTs at certain target

16  levels or ranges"; "reduce output of CDTs by shutting down CDT production lines"; "discuss the

17  prices of CPTs"; and "charge prices of CPTs at certain target levels or ranges"); *see also* IP-

18  Resp. at 19.

19       The Plaintiffs cite to the portion of this press release that indicates that the tubes

20  conspiracy for which Mr. Lin plead "harmed countless Americans who purchased computers and

21  televisions using cathode ray tubes sold at fixed prices" and claim they "reasonably interpreted

22  that press release" as indicating that the alleged conspiracy "encompassed televisions and

23  computer monitors sold in the United States." DP-Resp. at 65.  While, arguably, one could

24  interpret this statement to support an allegation that the CRT conspiracy for which Mr. Lin plead

25  had an effect on the prices of Finished Products, in light of the fact that Mr. Lin did not plead to

26  a conspiracy encompassing the prices of Finished Products, Plaintiffs had no good faith basis to

27  assert that the DOJ's investigation or Mr. Lin's indictment has anything to do with an alleged

28

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

- 9 -

MOTION FOR SANCTIONS PURSUANT TO                    Case No. 07-5944-SC
RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS          MDL No. 1917

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1    conspiracy encompassing the prices of Finished Products. Thus, neither the various government

2    investigations, nor the indictment of Mr. Lin, nor the cooperation that Chunghwa has provided to

3    Plaintiffs, provide any Rule 11 support for a conspiracy claim encompassing Finished Products.

4            Likewise, the foreign investigations referred to in the discovery responses do not

5    involve any allegations about a conspiracy involving Finished Products.  For example, Plaintiffs

6    assert that (i) the investigation by the European Commission and the Japanese Fair Trade

7    Commission involves production facilities of "CRTs"; (ii) the Korean Fair Trade Commission is

8    investigating a company's "CRT subsidiary"; and (iii) the Hungarian CRT investigation involves

9    "the manufacturing and distribution of cathode-ray tubes." DP-Resp. at 65-66.  As was the case

10   at the time they filed their complaints, Plaintiffs in their discovery responses cite no evidence

11   that in any way indicates that these government investigations involve a conspiracy

12   encompassing Finished Products as well as CRTs.

13           The information describing the vertical integration of certain Defendants (*see* DP-

14   Resp. at 51-61) similarly does not set forth any facts sufficient to support a good faith allegation

15   that these vertically integrated Defendants, merely by virtue of being vertically integrated,

16   participated in a conspiracy including Finished Products. Even vertically integrated businesses

17   would have to reach an agreement to fix the prices of Finished Products in order for this claim to

18   be actionable.  And references to the involvement of certain Defendants in certain other alleged

19   conspiracies not involving CRTs or Finished Products (*see* DP-Resp. at 62-64), are insufficient

20   to meet Plaintiffs' burden under Rule 11.

21           In sum, there is simply no good faith basis that Plaintiffs have identified to

22   support their claims that Defendants engaged in a conspiracy encompassing the sale of Finished

23   Products, as opposed to CRTs.  In the absence of any factual basis, Plaintiffs' claims of a unitary

24   conspiracy in which the Defendants fixed the prices of both CRTs and Finished Products

25   conspiracy fails the test of Rule 11 and should be sanctioned by this Court.

26   **III.    RULE 11 SANCTIONS ARE WARRANTED**

27           Courts impose sanctions under Rule 11 to the degree necessary "to deter

28                                                   - 10 -

---

MOTION FOR SANCTIONS PURSUANT TO                                    Case No. 07-5944-SC
RULE 11, 28 U.S.C. § 1927, AND THE COURT'S INHERENT POWERS          MDL No. 1917

1    repetition of such conduct," and such sanctions may take the form of monetary and/or

2    nonmonetary sanctions.  Fed. R. Civ. P. 11(c)(2).  Nonmonetary sanctions should, in an

3    appropriate case, include striking the offending filings or allegations.  *See, e.g.*, *Jimenez v.*

4    *Madison Area Technical Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (dismissing the complaint

5    where it was founded on the very allegations that violated Rule 11).  The egregiousness and

6    severity of the Rule 11 violation should be considered in determining what sanctions are

7    warranted.  *See, e.g.*, *Kendrick v. Zanides*, 609 F. Supp. 1162, 1173 (N.D. Cal. 1985) ("Because

8    of the egregiousness of the conduct involved, the sanctions imposed will not be limited to

9    expenses and attorneys' fees . . . ."); *Mellow v. Sacramento Cnty.*, 365 Fed. App'x. 57, at *1 (9th

10   Cir. 2010) ("The district court has wide discretion in determining the appropriate sanction for a

11   Rule 11 violation.").  Here, Defendants request that Plaintiffs' unsupported allegations of a

12   conspiracy that encompasses Finished Products be stricken from both the DP-CAC and IP-

13   TCAC.  This remedy is warranted because it is the only effective means to prevent Plaintiffs

14   from using unsupported allegations to seek to engage in a massive discovery fishing expedition.

15   Striking such claims is an appropriate Rule 11 remedy and especially warranted here to mitigate

16   the effects of Plaintiffs assertion of claims that they had no basis to assert in the first place.

17   Continued inclusion of the Plaintiffs' Finished Product claims will unduly complicate and

18   prolong this case, while striking these unsupported claims will have the effect of reducing the

19   Court's case management burdens.

20          Defendants also request an additional sanction in the form of a monetary award

21   equal to the amount of the reasonable attorneys' fees and costs that Defendants have incurred in

22   defending against the unfounded allegations of a conspiracy encompassing Finished Products,

23   including the cost of this motion and engaging in discovery requests involving Plaintiffs'

24   allegations of a Finished Products conspiracy.  Monetary sanctions are often the reasonable

25   attorneys' fees and costs incurred as a result of the violation.  *See, e.g.*, *Truesdell v. S. Cal.*

26   *Permanente Med. Grp.*, 209 F.R.D. 169, 178 (C.D. Cal. 2002); *Evans v. Allied Barton Sec.*

27   *Servs., LLP*, No. C-08-4993, 2010 WL 1644250, at *2 (N.D. Cal. Apr. 21, 2010).  Plaintiffs'

28                                              - 11 -

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1   actions merit these sanctions because of their assertion of overbroad conspiracy claims, without

2   any factual support, to stave off a motion to dismiss and to engage in a massive, global discovery

3   fishing expedition, in the hope that the costs of defending such claims will force an unjust

4   settlement by Defendants.

5

6                              IV.    **CONCLUSION**

7              For all the foregoing reasons, Defendants respectfully request that the Court:  (i)

8   declare Plaintiffs and their counsel to be in violation of Rule 11 and strike all allegations in the

9   DP-CAC and IP-TCAC asserting Finished Products were included as a part of a "CRT Products"

10  conspiracy, leaving only the allegations of a CRT conspiracy; and (ii) award Defendants

11  monetary sanctions in the amount of the reasonable attorneys' fees and costs they have incurred

12  in defending against Plaintiffs' allegations of a conspiracy encompassing Finished Products.

13  Defendants will submit a separate request for fees associated with briefing and discovery

14  responses related to the claims of a conspiracy encompassing Finished Products.

15  DATED: March XX, 2011              By:  ___/s/ Jeffrey L. Kessler___
                                       JEFFREY L. KESSLER (*pro hac vice*)
16                                     Email: jkessler@dl.com
                                       A. PAUL VICTOR (*pro hac vice*)
17                                     Email: pvictor@dl.com
                                       **DEWEY & LEBOEUF LLP**
18                                     1301 Avenue of the Americas
                                       New York, New York 10019
19                                     Telephone: (212) 259-8000
                                       Facsimile: (212) 259-7013
20

21                                     ALDO A. BADINI (257086)
                                       Email: abadini@dl.com
22                                     **DEWEY & LEBOEUF LLP**
                                       1950 University Avenue
23                                     East Palo Alto, California 94303
                                       Telephone: (650) 845-7000
24                                     Facsimile: (650) 845-7333
25

26                                     STEVEN A. REISS (*pro hac vice*)
                                       Email: steven.reiss@weil.com
27                                     DAVID L. YOHAI (*pro hac vice*)
28                                     - 12 -

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

Email: david.yohai@weil.com
DAVID E. YOLKUT (*pro hac vice*)
Email: david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

GREGORY D. HULL (57367)
Email: greg.hull@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

*Attorneys for Defendants Panasonic Corporation
of North America, MT Picture Display Co., Ltd.,
Panasonic Corporation (f/k/a Matsushita Electric
Industrial Co.)*

By: /s/ Diane L. Webb
Diane L. Webb (197851)
Email:  dwebb@morganlewis.com
MICHELLE PARK CHIU (248421)
Email:  mchiu@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, California 94105-1126
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

*Attorneys for Defendants Hitachi, Ltd., Hitachi
Asia, Ltd., Hitachi America, Ltd., Hitachi
Electronic Devices (USA), Inc., and Hitachi
Displays, Ltd.*
By:    /s/ Ian Simmons
IAN SIMMONS (*pro hac vice*)
Email: isimmons@omm.com
BEN BRADSHAW (189925)
Email: bbradshaw@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

- 13 -

Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Defendants Samsung Electronics*
*Co., Ltd. and Samsung Electronics America, Inc.*

**Dewey & LeBoeuf LLP**
**One Embarcadero Center, Suite 400**
**San Francisco, CA 94111**

- 14 -