JEROME C. ROTH (State Bar No. 159483)
jerome.roth@mto.com
HOJOON HWANG (State Bar No. 184950)
hojoon.hwang@mto.com
MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

WILLIAM D. TEMKO (State Bar No. 98858)
william.temko@mto.com
MUNGER, TOLLES & OLSON LLP
355 S. Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

*Attorneys for Defendants LG Electronics, Inc.,*
*LG Electronics U.S.A., Inc., and LG Electronics*
*Taiwan Taipei Co., LTD.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-md-05944-sc (N.D. Cal) <br><br> MDL No. 1917 |
| This Document Related to: <br><br> DIRECT PURCHASER ACTIONS <br><br> *Best Buy Co., et al. v. Hitachi, LTD, et al.*, Individual Case No. 11-cv-05513 <br><br> *Circuit City, et al. v. Hitachi, LTD., et al.*, Individual Case No. 11-cv-05502 <br><br> *Costco Wholesale Corporation v. Hitachi, Ltd., et al.*, Individual Case No. 11-cv-06397 <br><br> *Electrograph Systems, Inc., et al. v. Hitachi, LTD., et al.*, Individual Case No. 11-cv-01656 | **CORRECTED LGE DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT ON STANDING GROUNDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (Correction of ECF No. 3035 and 3049) - Redacted** <br><br> [Declaration of Hojoon Hwang ISO LGE Defendants' Mot. for Partial Summary Judgment and [Proposed] Order filed concurrently] |

1
2
*Interbond Corporation of America d/b/a
BrandsMart USA v. Hitachi, Ltd., et al.*,
Individual Case No. 11-cv-06275

3
4
*Office Depot Inc. v. Hitachi Ltd., et al.*,
Individual Case No. 11-cv-06276

5
6
*P.C. Richard & Son Long Island Corporation
et al. v. Hitachi Ltd., et al.*, Individual Case
No. 12-cv-02648

7
8
*Schultze Agency Services, LLC on behalf of
Tweeter OPCO, LLC, et al., v. Technicolor SA,
et al.*, Individual Case No. 13-cv-05668

9
10
*Sears, Roebuck and Co. and Kmart Corp v.
Chunghwa Picture Tubes, Ltd., et al.*,
Individual Case No. 11-cv-05514

11
*Target Corp. v. Chunghwa Picture Tubes,
LTD., et al.,* Individual Case No. 11-cv-05514

12
13
*Tech Data Corp., et al. v. Hitachi, LTD., et al.*,
Individual Case No. 13-cv-00151

14
*ViewSonic Corp. v. Chunghwa Picture Tubes,
Ltd., et al.*, Individual Case No. 14-02510

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    **<u>NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

2    TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

3         PLEASE TAKE NOTICE THAT on February 6, 2015 at 10:00 a.m., or as soon thereafter

4    as counsel may be heard, in the Courtroom of the Honorable Samuel Conti, located at 450 Golden

5    Gate Avenue, 17th Floor, Courtroom 1, San Francisco, California, 94102, defendants LG

6    Electronics, Inc. ("LGE"), LG Electronics USA, Inc. ("LGEUSA")  and LG Electronics Taiwan

7    Taipei Co., LTD. ("LGETT") (collectively, "LGE Defendants") will move the Court, pursuant to

8    Federal Rule of Civil Procedure 56, for partial summary judgment as to all Sherman Act damage

9    claims by the Direct Action Plaintiffs ("DAPs")[1] based on purchases of finished products that

10   incorporate CRTs ("CRT Products") from the LGE Defendants on or after July 1, 2001 when LGE

11   stopped manufacturing or selling CRTs.

12        As explained in the accompanying Memorandum of Points & Authorities, Plaintiffs'

13   purchases of CRT Products from the LGE Defendants that contain CRTs manufactured by other

14   entities and purchased by LGE in the first instance are indirect, and Plaintiffs' Sherman Act claims

15   based on such purchases are barred by *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  No

16   exception to *Illinois Brick*'s bar on indirect purchaser standing applies to such claims.

17        This motion is based on this Notice of Motion, the following Memorandum of Points and

18   Authorities, the Declaration of Hojoon Hwang ("Hwang Decl."), and any materials attached

19   thereto or otherwise found in the record, along with the argument of counsel and such other

20   matters as the Court may consider.

---

[1] The Direct Action Plaintiffs whose claims are at issue in this Motion are the following groups of plaintiffs who claim "direct purchase" damages based on purchases from LGE or its subsidiaries, namely, ABC Appliance; Best Buy; Circuit City; Costco; Electrograph; Interbond; Kmart; Office Depot; Marta Cooperative of America, Inc.; P.C. Richard; Shultze Agency Services, LLC on behalf of Tweeter; Sears; Target; Tech Data; and ViewSonic (collectively "Plaintiffs").

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF THE ISSUE PRESENTED

Whether Plaintiffs have standing to assert Sherman Act damage claims for indirect purchases of CRT Products from direct purchaser LGE and its subsidiaries on or after July 1, 2001 when LGE ceased manufacturing or selling CRTs.

### SUMMARY OF ARGUMENT

On July 1, 2001, LGE exited the CRT business by divesting its CRT assets to LG.Philips Displays ("LPD"), an independent joint venture company majority-owned by Koninklijke Philips Electronics N.V. ("Philips").  After that date, LGE did not manufacture or sell CRTs.  Instead, LGE became solely a purchaser of CRTs – from LPD and other CRT manufacturers – for incorporation into televisions and computer monitors, which were in turn purchased by some of the DAPs.  The DAPs are therefore indirect purchasers of CRTs and may not assert damage claims under the Sherman Act under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) unless they can satisfy one of the limited exceptions to the bar on indirect purchaser standing.  Plaintiffs have invoked the ownership-and-control exception, recognized in the Ninth Circuit under *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), and will likely assert that LGE's ownership interest in LPD, an alleged conspirator, supports standing for their indirect purchases of CRTs that LGE directly purchased.  Plaintiffs are wrong.

First, the ownership and control exception does not apply because LPD, the seller of the allegedly price-fixed product, does not own or control LGE, the direct purchaser, which is the only circumstance in which the Ninth Circuit has applied this exception.  *See In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 757 (9th Cir. 2012) ("*ATM Fee*").  Plaintiffs' attempt to apply the exception to a reverse situation where, as here, the seller (LPD) is purportedly owned or controlled by the direct purchaser (LGE) represents precisely the type of ad hoc expansion of exceptions to the rule of *Illinois Brick* that the Ninth Circuit squarely rejected in *ATM Fee*.

Second, even if Plaintiffs were permitted to apply the exception where the direct purchaser owns or controls the conspirator, the undisputed facts in this case leave no genuine issue for trial as to the issues of ownership or control.  It is undisputed that LGE was a minority shareholder of

1  LPD; did not appoint a majority of the members of LPD's Supervisory Board; and did not

2  otherwise control the operations or management of LPD.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

3

4  **I.      LGE's Relationship to LPD**

5          Prior to 2001, LGE produced CRTs as well as CRT Products.  *See* Hartge Decl.[2] Ex. 6

6  (Duk Chul Ryu (LGE) Dep. at 22:1–24:1).  On July 1, 2001, LGE sold its CRT business to LPD, a

7  joint venture with Philips.  *See, e.g.*, Best Buy First Amended Complaint ("Best Buy Am.

8  Compl.") Oct. 3, 2013, ECF No. 1978, at ¶ 36.  LGE transferred all of its CRT factories, *see*

9  Hartge Decl. Ex. 19 (P.J. Lee (LGE) Dep. at 48:21–49:11); Hartge Decl. Ex. 23 (Young Bae Na

10  (LGE) Dep. at 35:9–20), the properties on which the factories were located, its CRT technology,

11  *id.*; Ex. 23 (Young Bae Na (LGE) Dep. at 37:15-24), as well as its electronic informational assets,

12  such as email and other electronic data to LPD.  *See* Hartge Decl. Ex. 14 (K.T. Kwon (LGE) Dep.

13  at 27:25–28:25).

14          In exchange for its CRT assets, LGE received fifty percent of LPD's shares, minus one

15  share, becoming a non-controlling shareholder of LPD.  *See* Hartge Decl. Ex. 10 (Spaargaren Dep.

16  Ex. 6000 [Art. 2.1]); Ex. 22 (Frans Spaargaren (Philips) Dep. at 25:14-25; 139:10-142:8); Ex. 23

17  (Young Bae Na (LGE) Dep. at 38:9–25); Ex. 9 (Spaargaren Dep. Ex. 4001 at ¶ 27).  Once formed,

18  LPD was an independent legal entity distinct from LGE or Philips, and kept its own books,

19  records, and assets separately from those of either of its shareholders.  Hartge Decl. Ex. 22 (Frans

20  Spaargaren (Philips) Dep. at 142:10–143:11).

21          LGE exerted no day-to-day control over LPD.  *Id.* at 143:19-23; Hartge Decl. Ex. 23

22  (Young Bae Na (LGE) Dep. at 46:19-47:8); *see also* Hartge Decl. Ex. 22 (Frans Spaargaren

23  (Philips) Dep. at 142:5-8) (confirming that "the joint venture structure in no way gave LG

24  Electronics influence or control over LPD").  Any influence that LGE had in LPD's business was

25  ───────────────────

26  [2]  In order to avoid duplication, the LGE Defendants rely on evidence submitted in connection
    with other motions for summary judgment to the extent applicable to this Motion, including the
27  exhibits submitted with Declaration of Cathleen Hartge in support of LGE's Motion for Partial
    Summary Judgment on Withdrawal Grounds.

28

1   limited to its right to appoint three members to LPD's six-member Supervisory Board.  Hartge

2   Decl. Ex. 23 (Young Bae Na (LGE) Dep. at 48:20-49:3); Hartge Decl. Ex. 22 (Frans Spaargaren

3   (Philips) Dep. at 28:2-7, 29:2-4).  This body had a circumscribed role in LPD's management

4   structure, limited to "provid[ing] high-level strategic advice to LPD's management and aid[ing]

5   LPD in determining its business policies and how to implement those policies."  Hartge Decl. Ex.

6   9 (Spaargaren Dep. Ex. 4001 at ¶ 41); *see also* Hartge Decl. Ex. 22 (Frans Spaargaren (Philips)

7   Dep. at 26:19-27:4) (explaining that the Supervisory Board was not "the top level of management,

8   because it [was]n't actually the management of LPD").  The Supervisory Board "did not have

9   management responsibilities over the price that LPD charged for CRTs, or the volume of CRTs

10  that LPD produced, or the customers that LPD sold to."  Hartge Decl. Ex. 9 (Spaargaren Dep. Ex.

11  4001 at ¶ 43).  Moreover, the members of the Supervisory Board had a fiduciary duty to LPD to

12  act in its best interests, independent of the interests of LGE or Philips.  *See* Hartge Decl. Ex. 22

13  (Frans Spaargaren (Philips) Dep. at 28:2–17); Hartge Decl. Ex. 9 (Spaargaren Dep. Ex. 4001 at

14  ¶ 45).

15        The responsibilities for the management of the joint venture belonged to LPD's Group

16  Management Team, which consisted of ten LPD officers and employees.[3]  Hartge Decl. Ex. 10

17  (Spaargaren Dep. Ex. 6000 [Art. 6.3.8 [JVA]]; Hartge Decl. Ex. 4 (Spaargaren Dep. Ex. 4001 at ¶¶

18  31, 36).  The Group Management Team's purview included "the financial and business affairs of

19  LPD's operational headquarters," Hartge Decl. Ex. 9 (Spaargaren Dep. Ex. 4001 at ¶ 38),

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████ *see also* Ex. 23 (Young Bae Na (LGE) Dep. at

22  70:3-14).  ████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████; *see* Hartge Decl. Ex. 9 (Spaargaren Dep. Ex. 4001

25  _____

26  
27  [3] In September 2002, the Group Management Team was restructured to include only four high-level LPD officials rather than ten.  It was then renamed the Executive Board.  Hartge Decl. Ex. 9 (Spaargaren Dep. Ex. 4001 at ¶ 32); Ex. 23(Young Bae Na (LGE) Dep. at 77:24-78:3).

28

1    at ¶ 42).  Once these plans were approved by the Supervisory Board, it was the Group

2    Management Team that was responsible for actually implementing these plans.  Hartge Decl. Ex.

3    10 (Spaargaren Dep. Ex. 6000 [Art. 6.3.8 [JVA]]); *see* Hartge Decl. Ex. 9 (Spaargaren Dep. Ex.

4    4001 at ¶ 41).

5        **II.**      **Plaintiffs' Indirect Purchases of CRT Products from LGE and LGEUSA**

6          Plaintiffs are retailers, distributors, and original equipment manufacturers who purchased

7    CRT Products. ███████████████████████████████████

8    ███████████████████████████████████████████████

9    ███████████████████████████████████████████████

10   ███████████████████████████████

11                             **ARGUMENT**

12       **I.**      **The Court Must Determine Whether Plaintiffs Have Standing**

13         "Standing is a question of law for the district court to decide."  *ATM Fee*, 686 F.3d at 747.

14   Where, as here, there is no genuine dispute as to the material facts, the issue of standing can be

15   decided as a matter of law on a motion for summary judgment.  *See e.g.*, *Del. Valley Surgical*

16   *Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1119 (9th Cir. 2008).[4]

17         The party moving for summary judgment has the initial burden of identifying the absence

18   of a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986);

19   *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Where, as here, the moving

20   party meets its burden, the non-moving party must identify facts showing that a genuine issue for

21   trial exists.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Celotex Corp. v. Catrett*, 477

22   U.S. 317, 324 (1986)).  The non-moving party may not rely on the pleadings but must come

23   forward with evidence—affidavits, depositions, answers to interrogatories, or admissions—from

24   which a jury could reasonably render a verdict in its favor.  *Id.* (citing *Anderson*, 477 U.S. at 252).

25

26   [4] If the Court were to find that any of the material facts are disputed, the Court must resolve any

27   such disputes.  *ATM Fee*, 686 F.3d at 747 ("the district court must decide issues of fact necessary
     to make the standing determination.").

28

1   "The nonmoving party must show more than the mere existence of a scintilla of evidence" or

2   "some 'metaphysical doubt' as to the material facts at issue." *Id.* (quoting *Matsushita Elec. Indus.*

3   *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

4       **II.     The Ownership-Or-Control Exception Does Not Apply To LGE's Sales Of**
            **CRT Products To Plaintiffs Where LGE Was The Direct Purchaser**

5

6           All of the cases from the Ninth Circuit addressing the ownership and control exception

7   have defined the ownership-or-control exception to *Illinois Brick* as applicable when "a conspiring

8   seller owns or controls the direct purchaser." *ATM Fee*, 686 F.3d at 749.  The purchases at issue

9   in this Motion present a reverse situation.  Plaintiffs do not assert that LPD, the alleged

10  "conspiring seller," owns or controls LGE, the direct purchaser.  Plaintiffs' attempt to apply the

11  *Royal Printing* exception thus depends on a theory that LGE allegedly owned or controlled LPD.

12  The case law simply does not support this expansion of the ownership-or-control exception.

13          Dispositive in this respect is the Ninth Circuit's decision in *ATM Fee*, which expressly

14  rejected the notion that the exception confers standing on indirect purchasers whenever it is argued

15  that there is no realistic possibility of suit between the direct purchaser and the conspiring seller.

16  In *ATM Fee*, the Ninth Circuit acknowledged its prior statement in *Freeman v. San Diego Ass'n of*

17  *Realtors*, 322 F.3d 1133 (9th Cir. 2003), that "indirect purchasers can sue for damages if there is

18  no realistic possibility that the direct purchaser will sue its supplier over its antitrust violation."

19  *Freeman*, 322 F.3d at 1145-46.  However, the *ATM Fee* court disavowed any implication that

20  *Freeman* had "create[d] a new variation of the *Royal Printing* exception" and clarified that

21  "*Freeman* relied on ownership and control to find standing." *ATM Fee*, 686 F.3d at 756; *see also*

22  *id.* ("in *Freeman*, we found no realistic possibility of suit, because the associations owned and

23  controlled the direct purchaser.").

24          Thus, even though the district court had found that there was in fact a possibility that the

25  defendant banks (the direct purchasers) might sue STAR (the seller), the Ninth Circuit expressly

26  declined to rely on that factual finding.  *See id.* at 756 n.9 ("[w]e do not rely on the same reasoning

27  as the district court . . .")  Instead, the court held *as a matter of law* that, in order for the exception

28  to apply, the lack of the realistic possibility of a suit by the direct purchaser must arise from the

1   seller's ownership and control of the direct purchaser.  *Id.* at 757 ("this case does not involve a

2   lack of realistic possibility of suit *because of* the seller (STAR) prohibiting the direct purchaser

3   (Bank Defendants) from suing *through its ownership or control*. . .") (emphasis added).  The court

4   further noted that extending the exception beyond that particular circumstance would run afoul of

5   the Supreme Court's admonition that "[t]he possibility of allowing an exception, even in rather

6   meritorious circumstances, would undermine the rule" of *Illinois Brick*.  *Id.* (*quoting Kansas v.*

7   *Utilicorp United, Inc.*, 497 U.S. 199, 216 (1960)).

8        *ATM Fee* thus establishes that the *Royal Printing* exception applies only where the seller

9   owns or controls the direct purchaser so as to be able to prohibit the direct purchaser from suing

10  the seller, and that expansion of the exception beyond those boundaries would be contrary to

11  Supreme Court jurisprudence.  As a result, Plaintiffs lack standing as a matter of law with respect

12  to the indirect purchases at issue here.

13       **III.    There Is No Triable Issue As To LGE's Alleged Ownership Or Control Of**

14              **LPD**

15       Even assuming that LGE's ownership or control of LPD could confer standing here, the

16  undisputed evidence shows that LGE did not own or control LPD to the extent necessary to

17  support the application of the exception.

18       First, it is undisputed that LGE did not own a majority share of LPD.  Hartge Decl. Ex. 10

19  (Spaargaren Dep. Ex. 6000 [Art. 2.1 (Joint Venture Agreement between LGE and Philips,

20  specifying that Philips owned 50 percent plus one share of LPD's shares)]).  Nor did LGE have

21  the power to appoint a majority of the members of LPD's Supervisory Board.  Hartge Decl. Ex. 23

22  (Young Bae Na (LGE) Dep. at 48:20–49:3); Hartge Decl. Ex. 22 (Frans Spaargaren (Philips) Dep.

23  at 28:2–7, 29:2-4).  *Cf. ATM Fee*, 686 F.3d at 758 ("type of control necessary to meet the

24  exception to *Illinois Brick*" is not present absent "control of [the seller's] board of directors").

25       Nor is there any evidence that, despite lack of majority ownership or dominion over LPD's

26  Supervisory Board, LGE had the power to determine the prices that LPD charged for CRTs.  As

27  the *ATM Fee* emphasized, minority ownership or representation on an advisory board "does not

28  create control [without] power to set interchange fee or to control [the seller's] board." 686 F.3d

1    at 758.  Here, the evidence is undisputed that LGE did not have the power to set the allegedly

2    fixed prices of CRTs through its representation on the Supervisory Board or otherwise.  In fact,

3    not only did LGE lack any control over the prices LPD charged for its products, LGE negotiated

4    the prices of the CRTs it purchased from LPD at arm's length.  Declaration of Duk Chul Ryu in

5    Support of LGE Defendants' Motion for Partial Summary Judgment on Withdrawal Grounds, ¶ 5;

6    Hartge Decl. Ex. 22 (Frans Spaargaren (Philips) Dep. at 66:1–68:7; 145:11–16).

7                                              **CONCLUSION**

8              For the foregoing reasons, LGE respectfully requests that the Court enter partial summary

9    judgment in its favor as to any of DAPs' damages associated with purchases of CRT Products

10   from LGE or its subsidiaries after LGE ceased manufacturing CRTs on July 1, 2001.

11

12   DATED:  November 7, 2014               MUNGER, TOLLES & OLSON LLP
                                                    JEROME C. ROTH
13                                                  HOJOON HWANG
                                                    MIRIAM KIM
14                                                  WILLIAM D. TEMKO

15

16
                                            By:       */s/ Jerome C. Roth*
17                                                 _____
                                                   JEROME C. ROTH
18
                                            Attorneys for Defendants LG ELECTRONICS, INC.,
19                                          LG ELECTRONICS U.S.A., INC., and LG
                                            ELECTRONICS TAIWAN TAIPEI CO., LTD.
20

21

22

23

24

25

26

27

28