GIBSON, DUNN & CRUTCHER LLP
JOEL S. SANDERS, SBN 107234
JSanders@gibsondunn.com
RACHEL S. BRASS, SBN 219301
RBrass@gibsondunn.com
AUSTIN SCHWING, SBN 211696
ASchwing@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, California 94105-2933
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendants
CHUNGHWA PICTURE TUBES, LTD. and
CHUNGHWA PICTURE TUBES (MALAYSIA)
SDN. BHD.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*ViewSonic Corporation v. Chunghwa Picture Tubes, Ltd., et al.*, No. 3:14-cv-02510-SC | Master File No. 3:07-CV-5944 SC<br>MDL No. 1917<br><br>**[PROPOSED] ORDER GRANTING DEFENDANTS CHUNGHWA PICTURE TUBES, LTD. AND CHUNGHWA PICTURE TUBES (MALAYSIA) SDN. BHD.'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF STANDING AS TO VIEWSONIC**<br><br>Date:      February 6, 2015<br>Time:     10:00 a.m.<br>Judge:    Hon. Samuel Conti |

1    On February 6, 2015, the Court held a hearing on Defendants Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.'s (collectively "CPT") Motion for Partial Summary Judgment for Lack of Standing as to ViewSonic Corporation.  The Court, having considered all papers filed in support of and in opposition to said Motion and having entertained argument of counsel, and good cause appearing, HEREBY ORDERS that the Motion is GRANTED in its entirety.  Judgment on ViewSonic Corporation's ("ViewSonic") Sherman Act claim against CPT is HEREBY ENTERED to the extent it is based on purchases from Tatung Company ("TCO"), Tatung Company of America, Inc. ("TUS"), and Jean Co., Ltd. ("Jean").

## BACKGROUND

ViewSonic has asserted a claim under Section 1 of the Sherman Act against CPT and other defendants based on an alleged conspiracy involving price-fixing of cathode ray tubes ("CRTs"). During the alleged conspiracy period, ViewSonic purchased computer monitors containing CRTs and distributed them to various resellers.  ViewSonic claims that it suffered damages in the form of overcharges for computer monitors containing CRTs.

CPT is a publicly held Taiwanese corporation headquartered in Taipei, Taiwan that previously manufactured CRTs.  ViewSonic admits that it did not purchase CRTs or finished products containing CRTs directly from CPT during the alleged conspiracy period.  Rather, ViewSonic purchased computer monitors containing CRTs from OEMs and other finished goods makers, including TCO, TUS, and Jean.

ViewSonic asserts that its purchases of computer monitors from certain companies—including, TCO, TUS, and Jean—constitute direct purchases.  As relevant here, ViewSonic contends that it is entitled to recover damages from CPT "based on the ownership or control relationship among CPT, CPTM, the Tatung entities, and the Jean entities, and other entities."  Brass Decl. Ex. C (ViewSonic Interrog. Resp. Nos. 11 & 17).  ViewSonic does not contend that any other exception to the *Illinois Brick* rule applies.

## LEGAL STANDARD

This Court should grant a motion for summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To defeat a motion for summary judgment, a non-moving party bearing the burden of proof "must do more than simply show that there is some metaphysical doubt as to the material facts" by identifying "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986); *see Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) ("[A] moving defendant may shift the burden of producing evidence to the nonmoving plaintiff merely by 'showing'—that is, pointing out through argument— the absence of evidence to support plaintiff's claim."). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

Standing is a question of law for the Court to decide, and the Court must decide issues of fact necessary to make the standing determination. *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 747-748 (9th Cir. 2012) ("*In re ATM*"). Where there is no genuine issue of material fact, summary judgment on the issue of standing is appropriate. *Id.*

### DISCUSSION

ViewSonic's federal antitrust claim against CPT is based solely on indirect purchases of CRTs since it did not buy CRTs or finished products directly from CPT. As such, its claim is barred by *Illinois Brick*, which established a bright-line rule that only direct purchasers of a price-fixed product have standing to pursue damages under federal antitrust laws. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 734-735 (1977).

ViewSonic's claim based on purchases from TCO, TUS, and Jean is not subject to the *Royal Printing* exception to the bar on indirect purchaser claims. The *Royal Printing* exception allows an indirect purchaser to sue only if the co-conspirator owns or controls the direct purchaser from which the plaintiff purchased the price-fixed good. *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980). The exception exists "when the direct purchaser is a subsidiary or division

of a co-conspirator," because to hold otherwise would "effectively immunize the [anti-competitive] transactions . . . from private antitrust liability." *Id.*; *see also In re ATM*, 686 F.3d at 749 (the *Royal Printing* "ownership and control" exception applies "when a conspiring seller owns or controls the direct purchaser").

"Control" is a term of art that requires "parental control" over "litigation decisions." *Royal Printing*, 621 F.2d at 326; *see In re ATM*, 686 F.3d at 756 ("*Royal Printing* created an exception when parental control existed."). Because exceptions to the *Illinois Brick* rule must be narrowly construed, *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 207, 217 (1990), the Ninth Circuit has defined when "control" exists in plain terms: "Control means to 'exercise restraint, or direction over; dominate, regulate or command' or to have 'the power or authority to guide or manage.'" *In re ATM*, 686 F.3d at 757 (citing *United States v. Bennett*, 621 F.3d 1131, 1139 n.2 (9th Cir. 2010) (quoting Webster's College Dictionary (Random House 1991) and Webster's New Collegiate Dictionary (9th ed. 1983)). Accordingly, this Court has previously ruled that "indirect purchasers may have federal antitrust standing under the 'ownership or control' exception by establishing that they were harmed by a price-fixing conspiracy between a manufacturer *and an entity it owns or controls*." Order re Defs.' Mot. to Dismiss at 4-5, ECF No. 1856 (emphasis added).

ViewSonic's Sherman Act claim—to the extent it is based on purchases from TCO, TUS, and Jean—does not qualify for the *Royal Printing* exception because ViewSonic's evidence falls short of establishing that CPT owns or controls TCO, TUS, or Jean. As an initial matter, the relevant time period for evaluating ownership and control in this case is November 25, 2007 to the present, during which it would have been possible for TCO, TUS, or Jean to bring suit. ViewSonic alleges that defendants concealed the alleged conspiracy until at least November 25, 2007. Compl. ¶¶ 1, 220-236, 238 (alleging fraudulent concealment during the conspiracy). Thus, only ownership or control by CPT after the alleged conspiracy was exposed is relevant with respect to the *Royal Printing* exception. *See Royal Printing*, 621 F.2d at 326 (the purpose of the exception is to vindicate private antitrust enforcement where the direct purchaser *cannot bring litigation itself* due to ownership or control by a conspirator); *In re ATM*, 686 F.3d at 758 n.10 ("[T]he concern in *Royal Printing* of a controlling party *prohibiting the direct purchaser from suing* is not present here.") (emphasis added).

3

### 1. TCO

There is no question of fact regarding whether CPT owns or controls TCO. TCO is a publicly held Taiwanese corporation headquartered in Taipei, Taiwan. Currently, CPT owns 3.02% of TCO's shares. During the period from 2007 to the present, CPT held at most 3.73% of TCO's shares. Thus, CPT has "insufficient ownership interests to control" TCO. *In re ATM*, 686 F.3d at 757 (approximately 10% ownership of direct purchaser was a "small ownership percentage" insufficient to control direct purchaser); *id.* ("Stock ownership alone, at least when it amounts to less than a majority, is not sufficient proof of domination or control." (quoting *Kaplan v. Centex Corp.*, 284 A.2d 119, 122-23 (Del. Ch. 1971)); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 7062366, at *4 (N.D. Cal. Dec. 26, 2012) ("*In re TFT-LCD*") (stating general principle that summary judgment is warranted when a plaintiff offers nothing beyond a less-than-50% ownership interest).

There is also no material question of fact regarding whether CPT has the ability to control TCO. With such a small ownership percentage, CPT does not have parental control over TCO, including over its litigation decisions. *See Royal Printing*, 621 F.2d at 326. CPT also lacks a sufficient presence on TCO's board of directors to exercise control. During the period from 2007 to the present, only two CPT directors concurrently served on TCO's nine- to thirteen-member board of directors. This falls far short of demonstrating control. *See, e.g.*, *In re ATM*, 686 F.3d at 757-58 (because the board has the power, authority, and responsibility to manage the company, control of the board must be demonstrated); *In re TFT-LCD*, 2012 WL 7062366, at *4 (the existence of 3-4 interlocking directors out of an eight-member board was insufficient to withstand summary judgment).

Finally, there is no question of fact regarding whether CPT otherwise had the ability to actually "dominate, regulate or command" or "guide or manage" TCO. *In re ATM*, 686 F.3d at 757. CPT is not involved in any of TCO's day-to-day business decisions. None of CPT's witnesses in this litigation have testified regarding any level of control over TCO.

ViewSonic has failed to produce evidence establishing that CPT owned or controlled TCO. Accordingly, the Court grants summary judgment as to purchases made from TCO.

4

[PROPOSED] ORDER GRANTING CPT AND CPTM'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF STANDING AS TO VIEWSONIC - MASTER CASE NO. 07-CV-5944 SC

### 2. TUS

There is also no material question of fact regarding whether CPT owns or controls TUS. CPT has never held any shares of TUS. At most, it had a slight indirect ownership in TUS by virtue of its approximately 3% interest in TCO, which in turn owns 50% of the shares of TUS. CPT has not had any role in the management or operation of TUS. TUS is and has always been independently managed by its board of directors and officers; CPT has never been involved in the day-to-day operation of TUS.

In addition, contradicting any notion that purchases from TUS should fall under the *Royal Printing* exception is the fact that TUS submitted a claim as a member of the direct purchaser class in the *In re TFT-LCD Antitrust Litigation* in which CPT was a defendant. Brass Decl. Ex. D (April 4, 2012 Claim Form). TUS has indicated that it intends to submit a claim as a member of the direct purchaser class in this litigation as well, at such time as the Court permits absent class members to do so.

ViewSonic has failed to produce evidence establishing that CPT owned or controlled TUS or otherwise to create any material question of fact. Accordingly, the Court grants summary judgment as to purchases made from TUS.

### 3. Jean

There is also no evidence before the Court suggesting that a jury could find Jean owns or controls CPT. Jean is a publicly held company headquartered in Taipei, Taiwan. CPT has never held any shares of Jean. No CPT directors or officers have ever concurrently held a position with Jean. Although certain CPT directors had personal connections to officers or directors of Jean, these connections fall short of establishing any control by CPT over Jean for purposes of the *Royal Printing* exception, which requires a showing of "such functional economic or other unity between the direct purchaser and . . . the defendant . . . that there effectively has been only one sale." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 371-72 (3d Cir. 2005); *In re ATM*, 686 F.3d at 757 (defining "control" as to "dominate, regulate or command" or "guide or manage").

Accordingly, the Court grants summary judgment as to purchases made from Jean.

5

[PROPOSED] ORDER GRANTING CPT AND CPTM'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF STANDING AS TO VIEWSONIC - MASTER CASE NO. 07-CV-5944 SC

**4.     TCO's Ownership or Control Over CPT**

The Court rejects ViewSonic's argument that the *Royal Printing* should apply because TCO, which purchased CRTs from CPT, allegedly controls CPT. The *Royal Printing* exception is premised explicitly on a conspirator owning or controlling a direct purchaser; not the other way around. *E.g.*, *Royal Printing*, 621 F.2d 232 at 326 ("*Illinois Brick* does not bar an indirect purchaser's suit where the *direct purchaser is a division or subsidiary of a co-conspirator*.") (emphasis added). The latest Ninth Circuit case regarding the *Royal Printing* exception, *In re ATM*, also expressly stated that the exception applies when "a conspiring seller *owns or controls the direct purchaser*." *In re ATM*, 686 F.3d at 749 (emphasis added). In *In re ATM*, the Ninth Circuit "decline[d] to extend the exception . . . to situations where the seller does not own or control the direct purchasers." *Id.* at 757.

The *Royal Printing* exception is meant to address the situation where a conspirator owns or controls a direct purchaser because the conspirator "will forbid its subsidiary or division to bring a lawsuit that would only reveal the parent's own participation in the conspiracy." *Royal Printing*, 621 F.2d at 326; *In re ATM*, 686 F.3d at 758 n.10 ("[T]he concern in *Royal Printing* of a controlling party prohibiting the direct purchaser from suing is not present here."). In such cases, the direct purchaser's "litigation decisions will usually be subject to parental control" of the co-conspirator parent. *Royal Printing*, 621 F.2d at 326; *see also*, *e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857, 867 (N.D. Cal. 2012) ("*Royal Printing* created an exception when parental control existed, because applying *Illinois Brick* would eliminate the threat of private enforcement.").

The rationale underlying the rule—to vindicate antitrust rights—would not apply to a direct purchaser that owned or controlled a conspirator. In that situation, the direct purchaser could vindicate its rights by seeking redress from the conspirators, and with the benefit of joint-and-several liability could seek full recovery from any conspirator, and the conspiring subsidiary could not prevent the direct purchaser from doing so.

Courts have consistently declined to expand and carve out new exceptions to *Illinois Brick*'s bar on indirect purchaser standing. The Supreme Court has recognized that the rationale underlying *Illinois Brick* "will not apply with equal force in all cases." *Kansas v. Utilicorp United, Inc.*, 497

6

[PROPOSED] ORDER GRANTING CPT AND CPTM'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF STANDING AS TO VIEWSONIC - MASTER CASE NO. 07-CV-5944 SC

U.S. 199, 207, 216-217 (1990).  But "even assuming that any economic assumptions underlying the *Illinois Brick* rule might be disproved in a specific case, . . . it [is] an unwarranted and counterproductive exercise to litigate a series of exceptions."  *Id*.  Following this guidance, the Ninth Circuit has previously refused to expand the *Royal Printing* exception even where there was "no realistic possibility of suit" because "[t]he possibility of allowing an exception, even in rather meritorious circumstances, would undermine the rule."  *In re ATM*, 686 F.3d at 756-757 (citing *Utilicorp*, 497 U.S. at 216).

Even if the *Royal Printing* exception were to apply to a direct purchaser owning or controlling a conspirator, ViewSonic has failed to submit evidence sufficient to raise a question of facts regarding whether TCO owns or controls CPT.  TCO owns a small number of CPT's shares—currently only 8.46%.  From 2007 to the present, TCO owned at most 11.22% of CPT shares.  Nor did TCO have a sufficient presence on CPT's board of directors to control CPT during the entire relevant period.  From 2009 to the present, TCO representatives have not constituted a majority of CPT's board.  Currently, there are only three TCO representatives on CPT's eight-member board.

In addition, the only evidence before the Court confirms that TCO does not assert actual control over CPT.  CPT and TCO are each publicly held corporations that must each be managed in the interests of their respective shareholders.  CPT is independently managed by its board and officers, and TCO is not involved in the day-to-day operation of CPT.

To the extent that ViewSonic argues that it has standing with regard to purchases from TUS because both TUS and CPT are partially owned by TCO, that situation is even further outside the *Royal Printing* exception.  In any event, ViewSonic fails to submit evidence from which it could ever be established that TCO owns or controls TUS within the meaning of the exception.  TUS is 50 percent owned by TCO, but TCO does not assert any actual control over TUS.  TUS is independently managed and operated by its own board of directors and officers.  TCO is not involved in the day-to-day operations of TUS.  TCO members on TUS's board of directors have never constituted a majority of TUS's six- to seven-member board of directors.  Thus, judgment should be entered on this claim.

7

[PROPOSED] ORDER GRANTING CPT AND CPTM'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF STANDING AS TO VIEWSONIC - MASTER CASE NO. 07-CV-5944 SC

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion for Partial Summary Judgment for Lack of Standing as to ViewSonic Corporation as to ViewSonic's purchases from TCO, TUS, and Jean.

**IT IS SO ORDERED.**

DATED: _____

_____
Honorable Samuel Conti
U.S. District Judge

8

[PROPOSED] ORDER GRANTING CPT AND CPTM'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF STANDING AS TO VIEWSONIC - MASTER CASE NO. 07-CV-5944 SC