Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: +1-303-607-3500
Facsimile: +1-303-607-3600
jeff.roberts@FaegreBD.com

Stephen M. Judge (*pro hac vice*)
FAEGRE BAKER DANIELS LLP
202 S. Michigan Street, Suite 1400
South Bend, IN 46601
Telephone: +1 574-234-4149
Facsimile: +1 574-239-1900
steve.judge@FaegreBd.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Defendant Thomson SA*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | No. 07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Sharp Electronics Corp., et al. v. Hitachi, Ltd., et. al., No. 13-cv-01173*<br><br>*Electrograph Systems, Inc. et al. v. Technicolor SA, et al., No. 13-cv-05724;*<br><br>*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Technicolor SA, et al., No. 13-cv-00141;*<br><br>*Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264;*<br><br>*Interbond Corporation of America v. Technicolor SA, et al., No. 13-cv-05727;*<br><br>*Office Depot, Inc. v. Technicolor SA, et al., No. 13-cv-05726;* | **THOMSON SA'S OPPOSITION TO DIRECT ACTION PLAINTIFFS' MOTION TO ENFORCE THE COURT'S ORDER RE: THOMSON DISCOVERY** |

1  *Costco Wholesale Corporation v. Technicolor SA, et al.*, No. 13-cv-05723;
2  
3  *P.C. Richard & Son Long Island Corporation, et al. v. Technicolor SA, et al.*, No. 31:cv-05725;
4  
5  *Schultze Agency Services, LLC, o/b/o Tweeter Opco, LLC, et al. v. Technicolor SA, Ltd., et al.*, No. 13-cv-05668;
6  
7  *Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA*, No. 3:13-cv-05262;
8  
9  *Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686;
10  
11  *Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, No. 13-cv-00157
12  
13  *ViewSonic Corporation, v. Chunghwa Picture Tubes, Ltd., et al.*, 3:14cv-02510.

THOMSON SA'S OPPOSITION TO DAPS' MOTION TO ENFORCE THE COURT'S ORDER RE: THOMSON DISCOVERY

No. 07-5944-SC; MDL No. 1917

I. **INTRODUCTION**

Thomson SA has committed to make every effort to comply with the Court's October 23, 2014 Order (Dkt. No. 2945) compelling it to produce documents subject to the French Blocking Statute. Faced with limited time and resources to review and produce potentially responsive documents, many of which are in French and relate to a business it exited nearly a decade ago, Thomson SA has offered DAPs significant concessions not required by the Court's order so that it may provide DAPs the most relevant documents as quickly as possible and eliminate the need for the production and review of other categories of documents. Specifically, Thomson SA has offered to produce all non-privileged documents it produced to the European Commission. In addition, to eliminate the need for it to produce documents responsive to DAPs' most overbroad and burdensome requests, Thomson SA has offered to waive its personal jurisdiction arguments as well. DAPs, however, have met Thomson SA's good-faith efforts with bombastic rhetoric, illogical claims, and unreasonable demands. Worse still, DAPs now drag the matter back before the Court in a motion laced with distortions, half-truths, and outright misrepresentations. DAPs' Motion to Enforce the Court's Order re: Thomson Discovery ("DAPs' Motion") is unfounded and should be denied.

II. **BACKGROUND AND ARGUMENT**

**A.  Thomson SA Has Offered Realistic Solutions and Concessions to Focus Limited Time and Resources on the Most Important Documents.**

DAPs originally sought four categories of documents from Thomson SA: (1) those related to communications or meetings with competitors; (2) those related to the Court's general or specific jurisdiction over Thomson SA; (3) those related to the disposition of Thomson's CRT business; and (4) those produced to the EC. (*See* DAPs' Motion to Compel, attached hereto as **Ex. A**, at 3). DAPs represented to the Court, however, that "[i]f Thomson SA concedes that this court has personal jurisdiction over it, then the [category 2] documents are unnecessary." (*Id.* at 4 & n.9.) The Special Master recommended that the Court order the production of the first three categories but not the fourth, recognizing Thomson SA's concern that "producing such documents would be tantamount to invading the confidential processes of the EC and an end run

around the March 26 order [denying discovery of the EC's confidential decision]."[1] He further recommended that the parties be directed to confer and cooperate to work out a schedule "so as not unduly to prolong the taking of discovery." (*See* September 2, 2014, Recommended Order of the Special Master at 7–8 (Dkt. No. 2812).) The Court confirmed the scope of the Special Master's recommended order—recognizing that it had not granted full relief—and granted DAPs an additional 60 days to complete discovery. (*See* Order at 5 n. 5).

Recognizing that a complete review and production of all potentially responsive documents in these three categories might not be possible in the 60 days allotted, Thomson SA promptly offered two significant concessions to speed up the process. First, Thomson SA offered to produce the entirety of its EC production, which it was not obligated to do, subject only to an expeditious privilege review. Based on its understanding of the EC's document requests, Thomson SA explained to DAPs that these documents likely contain all preserved documents responsive to DAPs' category 1 requests. (*See* DAPs' Motion, Ex. 2 at 6.) In addition, document searches on the EC production reveal over 1700 documents related to the disposition of the Thomson Defendants' CRT-business to Videocon in 2005—category 4 of DAPs' requests. Thomson Consumer already produced all Videocon related documents, including the transaction documents themselves, located in the United States, and Thomson SA expects to be able to produce any additional transaction documents that were not already in the United States in relatively short order. (Declaration of Jeffrey Roberts in Support of Thomson SA's Opposition to Direct Action Plaintiffs' Motion to Enforce the Court's Order re: Thomson Discovery ("Roberts Decl.") ¶ 9.) Second, Thomson SA offered to waive its personal jurisdiction arguments on appeal to eliminate the need for the documents in the second category, because it is this category of documents that likely was not fully contemplated by the EC production and requires expending an additional $2 to $4 million to process and review. (*See* Roberts Decl. ¶ 4). In return, Thomson SA ultimately asked only for assurances that DAPs would consider in good faith accepting this

---

[1] Thomson SA does not argue at this juncture that it may refuse to turn over otherwise responsive documents solely because the documents were also produced to the EC.

compromise as a complete production under the Order. (Declaration of Kathy L. Osborn in Support of Thomson SA's Opposition to Direct Action Plaintiffs' Motion to Enforce the Court's Order re: Thomson Discovery ("Osborn Decl.") ¶ 4; DAPs' Motion, Ex. 2).

Rather than cooperate with Thomson SA as the Special Master directed, DAPs have responded with rhetoric and unrealistic demands. With regard to Thomson SA's first offer, DAPs simply demanded immediate production five days after the Order was entered, without even the most cursory privilege review, of the entire EC production. Further, despite Thomson SA's repeated insistence that this category of documents was not subject to the Order,[2] DAPs only revealed their position to the contrary in the instant motion (*see* Osborn Decl. ¶ 3), depriving Thomson SA of any opportunity to meet and confer on this issue. *See* N.D. Cal. Civil L.R. 37-1 ("The Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to Fed. R. Civ. P. 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues.") Moreover, by failing to object to this recommendation within 14 days, DAPs waived any argument that Thomson SA should be required to produce these documents. *See* Fed. R. Civ. P. 72(a). Nevertheless, Thomson SA has now produced to DAPs all non-privileged documents produced to the EC.

With regard to Thomson SA's offer to waive its personal jurisdiction defense, DAPs now claim, for the first time and contrary to *specific representations to the Court*, that the documents related to personal jurisdiction are still necessary because they might also be relevant for other purposes. But having premised their motion to compel these documents on personal jurisdiction grounds, and having specifically disclaimed the need for these documents in the absence of this

---

[2] For example, counsel for Thomson SA explained in an initial phone conference on October 27 that it considered its offer of the entirety of the EC production with only minimal review a compromise to which DAPs were not otherwise entitled. (*See* Osborn Decl. ¶ 2.) Counsel then reiterated this position in subsequent written communication, consistently referring to its offer of compromise production and reiterating that DAPs were not entitled to this entire production on October 30 (*see* DAPs' Motion, Ex. 2 at 5 ("[M]y client has offered the proposed document production *compromise* I outlined to you . . . ."), and again on November 3 (*see id.* at 3 ("[I]t appears to us that DAPs might be intending to take advantage of Thomson SA's offer and, after having received the EC document production *to which DAPs are not otherwise entitled*, refuse to agree to accept them as a complete production . . . .")).

defense, DAPs have waived this argument and should be estopped from raising it now.[3] Insisting on production of these documents in the face of Thomson SA's willingness to waive its personal jurisdiction defense serves no purpose other than to abuse and harass Thomson SA and impose needless delay and costs that prevent Thomson SA from preparing for the fast approaching March 9, 2014 trial.

### B. Thomson SA Has Not "Refused" to Comply with the Court's Order.

DAPs repeatedly claim that Thomson SA is "refusing" and "does not intend" to produce documents subject to the Court's Order in a timely fashion.[4] This is simply false. Thomson SA is moving as quickly as possible to identify potentially responsive documents in Europe (where they have remained due to Thomson SA's attempts to comply with the blocking statute), move them to a platform from which its attorneys in the United States can evaluate the extent and nature of the documents preserved and arrange for expeditious review and production of those documents, many of which are in French. (*See* Roberts Decl. ¶ 2.) Discovery service vendors have estimated that the total documents in the files preserved at the time of the EC production alone is between 200,000 and 550,000 documents. (*See* Roberts Decl. ¶ 4; DAPs' Motion, Ex. 2 at 1.) The expense of processing, reviewing, and producing these documents will be substantial—likely between $2 and $4 million—and Thomson SA is still working to understand just how many potentially responsive documents have been preserved. (*See* Roberts Decl. ¶ 4). Thomson SA has, realistically, informed DAPs that it does not know whether it will be humanly possible to review potentially hundreds of thousands of documents (many of which likely have no

---

[3] *See Carr v. Liberty Life Assur. Co.*, No. C05-3190 TEH, 2009 WL 224943, at *2 (N.D. Cal. Jan. 29, 2009) aff'd, 390 F. App'x 694 (9th Cir. 2010) ("[A] party generally will be judicially estopped to assert a certain position when: 1) the party's current position is "clearly inconsistent" with its earlier position, 2) the party was successful in persuading a court to accept its earlier position, and 3) the party would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." (quoting *Williams v. Boeing Co.,* 517 F.3d 1120, 1134 (9th Cir.2008)).

[4] *See* DAPs' Motion at 2. *Compare* Sharp's Statement re: Pending Discovery Motions against Thomson SA (Dkt. No. 2949) at 3 ("Thomson SA is refusing to produce those witnesses, either voluntarily or pursuant to the Court's Order.") *with* Thomson SA's Response to Sharp's Statement re: Discovery Motions (Dkt. No. 2950) ("Thomson SA is in no way "refusing" . . . . in reality it has no more ability to produce (or to "refuse" to produce) these witnesses than do the Sharp Plaintiffs themselves.").

relevance to this litigation) that are believed to be in multiple foreign languages, and produce those documents to DAPs within sixty days, much less by November 21 as DAPs demand. (DAPs' Motion, Ex. 2 at 5, Ex. 3 at 2). Thomson SA also has been clear that it is not "refusing" to work out a production schedule with DAPs and will tell DAPs when it thinks particular documents can be produced—as it did for the EC documents as soon as it was able. But Thomson SA is simply unable to provide "dates certain" in a non-arbitrary manner until it has the data in a state for review and has a better understanding of how much potentially responsive data it will need to review.

At this point, Thomson SA has also completed an efficient privilege review of the documents previously produced to the European Commission ("EC"), which were more readily available and which almost certainly contain the vast majority of documents responsive to DAPs' requests. Thomson SA has now produced to DAPs over 78,000 imaged pages and 9,700 files that were produced in native format with a coversheet stamped with a single bates number. Because many of these native files are twenty pages or longer the EC Production likely contains hundreds of thousands of pages of documents. (Roberts Decl. ¶ 6.) Thus, while Thomson SA has recognized the possibility that its best efforts may in the end fall short of reviewing and producing every conceivably responsive document by December 22, it is in no way "refusing" to comply with the Order in a timely manner and has already produced the most important documents. Thomson SA has moved expeditiously to comply with the Court's order while at the same time recognizing the practical limitations that exist at this stage in the litigation.

Moreover, DAPs' argument that Thomson SA has somehow "waived" the ability to claim that it cannot locate, review, and produce all potentially responsive documents within 60 days is fundamentally unsound. First, to reiterate, the issue is not one of Thomson SA's *willingness* to produce documents, but of its *ability* to do so in the allotted time frame. And it is illogical to suggest that the fact that Thomson SA did not specifically take issue with the 60-day timeframe somehow makes the impossible possible. Second, DAPs fault Thomson SA for not arguing to the Special Master or in its Objections that 60 days was insufficient to complete document production. But there is a simple reason for that: nowhere in their Motion did DAPs argue that 60

1   days was sufficient—it was only in their *administrative* motion to extend discovery (Dkt. No.
2   2773), hardly the place for comprehensive substantive argument), that the DAP requested "60
3   additional days *after Thomson SA completes its document production* to take [the requested]
4   depositions." (*Id.*).  And nowhere in the Recommended Order did the Special Master state that all
5   responsive documents could be produced within 60 days. Indeed, the Special Master recognized
6   that "diligent efforts and cooperation between the parties" would be necessary and recommended
7   that the parties be "directed to confer and, to the extent possible, work out a schedule for the
8   prompt completion of the foregoing discovery." (Recommended Order at 7–8.)  Clearly, the
9   posture of the litigation at this point necessitates not only diligence from Thomson SA, but
10  reasonableness from DAPs in prioritizing and focusing their requests where appropriate.
11  Nowhere was it suggested or requested that Thomson SA would be able to complete an
12  exhaustive search, review, and production within a matter of weeks.  Finally, Thomson SA *did*
13  argue, both to the Special Master and the Court, that granting DAPs' broad discovery requests
14  would extend discovery for "months" and even threaten preparations for the March 2015 trial.
15  The Court may not have accepted those arguments as a reason to limit discovery, but it can hardly
16  be said that Thomson SA "waived" any ability to realistically advise DAPs and the Court
17  regarding what it can and cannot accomplish within 60 days.

18  **C.   DAPs' Argument that Thomson SA Should Have Been Prepared to Produce**
19  **French Documents Immediately Is Nonsensical.**

20  Perhaps recognizing that simply demanding a potentially massive production of
21  documents virtually overnight is neither reasonable nor realistic, incredibly, DAPs argue that
22  Thomson SA should have *already* collected, reviewed and prepared responsive French documents
23  for production while the discovery dispute was pending before the Court.  First, DAPs argue that
24  Thomson SA should have simply turned over the EC production wholesale, without any review
25  whatsoever.  Setting aside that this was beyond the scope of the Court's order and that Thomson
26  SA would have been justified in carefully reviewing each document and producing only those
27  responsive to category 1 or category 3 requests, this argument would deprive Thomson SA of any
28  ability to withhold attorney-client communications, attorney work-product, confidential

1    communications with the EC, or even sensitive personal information.  The mere fact that
2    Thomson SA previously turned these documents over to the EC does not mean it has no right to
3    withhold certain documents in this United States civil litigation.  For example, blind production
4    of the documents in question may reveal confidential communications to or from the EC, in
5    addition to Thomson SA's own documents.  Further, the EC has a different view of the attorney-
6    client privilege that do American courts in some instances and, in any event, involuntary,
7    confidential production in response to a government investigation does not automatically waive
8    privilege in subsequent civil litigation.  *See In re Pac. Pictures Corp.*, 679 F.3d 1121, 1130 (9th
9    Cir. 2012) ("Involuntary disclosures do not automatically waive the attorney-client privilege.").

10           Second, DAPs' argument that Thomson SA should have invested its limited resources in
11   preparing to produce documents while it exercised its legal rights to challenge DAPs' pleadings
12   and object to their discovery requests is preposterous.  While the Court ultimately overruled
13   Thomson's objections regarding the burden of responding to DAPs' broad discovery requests and
14   the French Blocking Statute, it hardly considered those objections meritless: it carefully weighed
15   Thomson SA's arguments regarding the French Blocking Statute and noted that "[s]everal of
16   Thomson's complaints have merit" and that certain requests were "likely to capture a significant
17   amount of irrelevant language." (Order at 11.)   Elsewhere the Court noted that it was not
18   "unsympathetic to Thomson's complaints" and recognized the burden of the requested discovery.
19   (*Id.* at 17–19.) Thomson SA cannot be faulted for fully litigating its position and requiring a
20   Court order before expending the estimated $2 to $4 million that review and production of the
21   contested documents will cost.  (*See* Roberts Decl. ¶ 2.) Indeed, under the French Blocking
22   Statute, Thomson SA's external and internal attorneys are prohibited from "request[ing]," or
23   "seek[ing]" the requested information documents, not merely from disclosing them. *See Societe*
24   *Nat'l Indus. Aérospatiale v. United States District Court*, 482 U.S. 522, 526 n.6 (1987).  The
25   Court itself recognized that "a court order compelling production under protest" was a factor that
26   might mitigate against the risk of enforcement of the Blocking Statute in France.  (*See* Order at
27   15.)
28           Unsurprisingly, DAPs cite no authority for the illogical proposition that a defendant must

THOMSON SA'S OPPOSITION TO DAPS'                     7                    No. 07-5944-SC; MDL No. 1917
MOTION TO ENFORCE THE COURT'S ORDER
RE: THOMSON DISCOVERY

1 undertake the burden and expense of gathering and reviewing documents that it believes it is not
2 legally obligated (or in this case permitted) to produce.  Nor is Thomson SA aware of any
3 precedent that suggests a party must *anticipate* a Court's ruling on a discovery motion and begin
4 preparing discovery responses while that motion still pends—particularly where, like here, the
5 objection is based in part on the burden and expense, and preparing the production would render
6 those objections moot.  DAPs' lone authority for this entire line of argument is a Florida decision
7 that made the unremarkable observation that when a *plaintiff* initiates litigation, it should identify
8 and gather discoverable information; the case says nothing about requiring any party (much less a
9 defendant) to prepare documents for production despite its legal objections. *See U & I Corp. v.*
10 *Advanced Medical Design, Inc.*, 251 F.R.D. 667, 675 (M.D. Fla. 2008).  It does not follow that a
11 *defendant* must undertake the considerable burden of preparing discovery that it may never need
12 to produce and to which it has in fact objected based on that very burden.

**D.     The Time Crunch Is of DAPs' Own Making.**

14 After waiting years to bring Thomson SA into this litigation and placing it in the
15 untenable position of choosing to play catch up in discovery or proceed on a different trial track,
16 DAPs now suggest that Thomson SA should also have forfeited its rights to challenge DAPs'
17 pleadings or assert legitimate objections to their discovery requests.  But the delay is of DAPs'
18 own making, and whether or not DAPs have been diligent since they have brought Thomson SA
19 into the case, Thomson SA cannot be blamed for exercising its legal rights—rights that other
20 defendants had ample time to assert over the course of several years.

21 DAPs' first attempt to bring Thomson SA into this sprawling litigation was in March
22 2013—four years after class claims against Thomson SA had been dropped and over two years
23 after the first DAP claim was filed. (*See Electrograph Systems, Inc. et al. v. Hitachi Ltd., et al.*,
24 No. 11-cv-01656 (filed in E.D.N.Y. on Feb. 18, 2011 as No. 2:11-cv-00831)).  The Court
25 rebuffed DAPs on all fronts, holding that the delay in suing the Thomson Defendants was
26 unwarranted and prejudicial.[5]  When DAPs reasserted their claims in separate suits, without

---

[5] The Court denied most of DAPs' attempts to amend their 2011 complaints to add Thomson SA
28 as a defendant on March 26, 2013. (Dkt. No. 1609.)   Sharp had filed in first complaint against

THOMSON SA'S OPPOSITION TO DAPS'                    8                    No. 07-5944-SC; MDL No. 1917
MOTION TO ENFORCE THE COURT'S ORDER
RE: THOMSON DISCOVERY

1   offering any additional explanation regarding their delay, Thomson Defendants naturally pressed
2   the same arguments again in the form of a laches defense, as well as statute of limitations and
3   personal jurisdiction defenses.  Given their arguments that they were not proper parties to the case
4   or, in the case of Thomson SA, subject to the Court's jurisdiction, the Thomson Defendants
5   reasonably sought to stay discovery against them while their motions to dismiss were pending.
6   (*See* Special Master's August 1, 2013 Order Staying Discovery (Dkt. No. 1820).)  As the Special
7   Master noted at the time, it is hardly atypical for parties or courts to postpone discovery until after
8   motions to dismiss have been resolved. *See Netflix Antitrust Litigation,* 506 F. Supp. 2d. 308
9   (N.D. Cal. 2007); *Jarvis v. Regan,* 833 F.2d. 149 (9th Cir. 1987); *Rutman Wine Co. v. E. and S.*
10  *Gallo Winery,* 329 F.2d. 729 (9th Cir. 1987).  Had DAPs named the Thomson Defendants in a
11  timely manner, their motions would not have delayed discovery at all.
12          After the Court later allowed DAPs' claims to proceed, the Thomson Defendants
13  immediately began the unenviable task of catching up to the massive discovery that was already
14  drawing towards a close.  They agreed to "make their best efforts to complete discovery on the
15  existing schedule, including, on the part of Thomson, by making their best efforts to make
16  documents and witnesses available, *in compliance with the law in the jurisdiction where those*
17  *documents are located*, and, *if legally possible*, without resort to Hague Convention procedures."
18  (Dkt. No. 2550 at 4.)  Thomson SA has done just that and the claim that it has "reneged" on its
19  agreement is spurious.  As it promptly informed DAPs in response to their initial requests for
20  production, and has repeatedly explained in correspondence and in filings, *it is not legally*
21  *possible* for Thomson SA to produce French documents outside of the Hague Convention without
22  violating the French Blocking Statute.  DAPs' claim that there is "ample law to the contrary" is
23  either misinformed or duplicitous: while courts in this country have unfortunately given short
24  shrift to the interests of France in controlling discovery within its sovereign territory and the risk
25  of prosecution, what this Court has ordered (like some, but not all courts before it) is that

---

any defendant in March 2013. On September 26, 2013, the Court denied the DAPs' motion to file an amended complaint as it pertained to Thomson and dismissed Sharp's original complaint with regard to Thomson. (Dkt. Nos. 1958 & 1960.)

1    Thomson SA must produce its French documents *notwithstanding the fact that such production*
2    *plainly violates the French Blocking Statute*.  (*See* Order at 8.)  Thomson SA simply exercised its
3    legal options in an attempt to comply both with French law and its discovery obligations.  Once
4    again, this legitimate objection could have been resolved (or Hague Convention proceedings
5    followed) with plenty of time to spare had DAPs not unjustifiably delayed naming the Thomson
6    Defendants.

7    Further, DAPs' representation that Thomson SA is now "unilaterally trying to postpone
8    producing documents" is simply not true. (Motion at 5).  Thomson SA has now reviewed and
9    produced hundreds of thousands of pages of documents in three weeks and has taken steps to
10   identify and process other potentially responsive documents. (*See* Roberts Decl. ¶ 6.)  Over 1,700
11   of the documents produced contain some reference to Videocon, making them likely responsive
12   to DAPs' category 3 requests as well. (*See* Roberts Decl. ¶ 8.)  At the same time, recognizing that
13   the undertaking is extensive and the time limited, Thomson SA has sought to negotiate a solution
14   that will provide DAPs with the core documents they have requested as quickly as possible while
15   minimizing the burden on *all* parties.

16   Moreover, DAPs' claim that "Thomson also has not agreed to produce witnesses for
17   deposition" is not only gratuitous, as it has no bearing on the Motion, but false as well.  As
18   explained over and over,[6] Thomson SA can no more "agree" to produce former employees for
19   depositions than it can "refuse" to produce them.  It is true that that three of the four French
20   witnesses that DAPs wish to depose agreed that the undersigned counsel could represent them—
21   Thomson SA has made it abundantly clear that it has not been able to locate Christian
22   Lissorgues—in the event they agree or are compelled under the Hague Convention to sit for a
23   deposition.  But the insinuation that Thomson SA or its counsel are somehow responsible for
24   these French nationals' refusal to voluntarily sit for deposition is unjustified and, frankly,
25   unprofessional.  Despite their prior indication that they were unwilling to volunteer for a

---

[6] *See* Dkt. No. 2950 & Ex B ("Thomson SA . . . . has no more ability to produce (or to "refuse" to produce) these witnesses than do the Sharp Plaintiffs themselves."); DAPs' Motion, Ex. 2 at 3 ("We can't promise, however, that any of the witnesses will agree to appear voluntarily as you have proposed or that they will be comfortable testifying in English.").

THOMSON SA'S OPPOSITION TO DAPS'                10                No. 07-5944-SC; MDL No. 1917
MOTION TO ENFORCE THE COURT'S ORDER
RE: THOMSON DISCOVERY

deposition, Thomson SA has agreed to contact its former employees and convey an offer by DAPs to limit the time and scope of any deposition and has already made efforts to contact these former employees. But neither Thomson SA nor its counsel has any control over these former employees or any ability to expedite (or delay) their depositions.

Finally, although DAPs insist that they need documents to be produced within days to enable them to depose the four former-employee fact witnesses before the expiration of the extended discovery deadline, Thomson SA is unaware of any attempts by the DAPs to initiate the Hague Convention process—a process that could take months—despite receiving this Court's order issuing the requested letters rogatory on November 3 (Dkt. No. 2954). In the event that these witnesses will not volunteer for a deposition, it appears that Thomson SA's production of documents will not be the main factor regarding the timing of these depositions.

### III. CONCLUSION

Thomson SA therefore asks the Court to deny DAPs' Motion to Enforce the Court's Order re: Thomson Discovery. Further, Thomson SA asks to Court to declare that DAPs are estopped from seeking production of category 3 documents if Thomson SA agrees to withdraw its personal jurisdiction defense.

Dated: November 14, 2014

Respectfully submitted,

*/s/ Kathy L. Osborn*
Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: +1-303-607-3500
Facsimile: +1-303-607-3600
jeff.roberts@FaegreBD.com

Stephen M. Judge (*pro hac vice*)
Faegre Baker Daniels LLP
202 S. Michigan Street, Suite 1400
South Bend, IN 46601
Telephone: +1 574-234-4149
Facsimile: +1 574-239-1900
steve.judge@FaegreBd.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303-2279
Telephone: +1-650-324-6700
Facsimile: +1-650-324-6701
calvin.litsey@FaegreBD.com

***Attorneys for Defendant Thomson SA***