IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Order Relates To:<br><br>ALL DIRECT ACTION PLAINTIFF ACTIONS | MDL No. 1917<br><br>Case No. C-07-5944-SC<br><br>ORDER DENYING DIRECT ACTION PLAINTIFFS' RENEWED MOTION TO COMPEL PRODUCTION OF THE EUROPEAN COMMISSION DECISION |

## I. INTRODUCTION

Now before the Court is Direct Action Plaintiffs' ("DAPs") renewed motion to compel Defendants to produce a confidential decision (the "Decision") by the European Commission ("EC") reflecting its investigation into allegations of a global conspiracy to fix the prices for cathode ray tubes ("CRTs") and color picture tubes ("CPTs"). The motion is fully briefed[1] and appropriate for resolution without oral argument under Civil Local Rule 7-1(b). For the reasons set forth below, the motion is

---

[1] ECF Nos. 2843 ("Mot."); 2873 ("Opp'n"); 2896 ("Reply"); 2919 ("Notice").

DENIED. DAPs also request, in the alternative, that the Court request the Decision directly from the EC. This request is DENIED without prejudice.

## II. BACKGROUND

In this motion, DAPs renew their earlier request for an order compelling Defendants to produce the EC's Decision. The EC has not yet published a public or redacted version of the Decision, but various public documents confirm its broad contours. The Decision found the existence of two highly organized cartels comprised of, generally speaking, the same defendants here, which were aware of the illegality of their activities and ultimately successful in imposing price increases on consumers in the CRT and CPT industries. See ECF No. 2446 at Exs. 2-3. Based on these findings, the EC imposed a collective fine of more than € 1.47 billion. Id. at Ex. 2. When the EC issued the Decision, it said it was working with the companies involved to prepare a public, redacted version of the Decision "with a view to a quick publication," although such a version has not been published to date. Id. at Ex. 4.

The Decision has been the target of discovery in this litigation since 2010, but Defendants have refused to produce the Decision citing their belief that European Union ("EU") law and EC policy prohibit the disclosure of such decisions. DAPs disagree, and in March 2014 moved to compel production of the Decision before the Special Master. Id. at 1. The Court withdrew the reference and denied the motion without prejudice, finding that the interests of international comity outweighed the interest of disclosure. ECF

No. 2463 ("Prior Order") at 8.  In doing so, the Court noted "Defendants seem optimistic about the EC's publication of a public version of the Decision before the close of discovery in this case. They are advised to assist in that task."  Id.

Now that discovery has closed and the Decision has still not been published publicly, DAPs renew their motion.  In support of the motion, DAPs argue that because discovery has now closed and the trial date is rapidly approaching, the balance between comity and the importance of the Decision to this litigation has so shifted as to now justify production.  Furthermore, DAPs point out that in another proceeding, Vichi v. Koninklijke Philips Electronics, N.V., 85 A.3d 725 (Del. Ch. 2014), the EC made a partially redacted version of the Decision available in response to a request for assistance from the Delaware Chancery Court.  Id. at 751 & n.180.  As a result, DAPs submit that the balance of the relevant factors has changed such that the Court should order Defendants to produce a copy of the decision or, in the alternative, formally request the assistance of the EC in obtaining the Decision.  Mot. at 2-3.  Defendants oppose both requests.

Shortly after this motion was fully briefed, the Court received a notice from the California Attorney General's (the "AG") office including official correspondence from the EC's Directorate General for Competition ("DG Competition") regarding the AG's efforts to obtain a redacted public version of the Decision. Notice at 2; Ex. 2 ("DG Competition Ltr.").  In that correspondence, the EC explains its publication process and the variables that may impact the publication schedule.  While the EC states that due to these variables "no precise publication date can

3

be given," "the case team gives its best effort in completing a public version of the decision still during this autumn or at least publishing a provisional version before the European Commission Christmas holidays break."  DG Competition Ltr. at ¶ 15.

### III. LEGAL STANDARD

As it did with DAPs' earlier motion to compel, the Court applies the factors identified by the Supreme Court in <u>Société Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa</u>, 482 U.S. 522 (1987).  In <u>Aerospatiale</u>, the Supreme Court held that courts assessing whether foreign law excuses noncompliance with a United States court's discovery orders should consider:

> (1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

<u>Id.</u> at 544 n.28; <u>see also</u> <u>Richmark Corp. v. Timber Falling Consultants</u>, 959 F.2d 1468, 1474-75 (9th Cir. 1992).  This list is not exhaustive.  The Ninth Circuit has also considered other factors, including "the extent and the nature of the hardship that inconsistent enforcement would impose upon the person, . . . [and] the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state."  <u>United States v. Vetco, Inc.</u>, 691 F.2d 1281, 1287 (9th Cir. 1981); <u>Richmark</u>, 959 F.2d at 1475.

4

## IV. DISCUSSION

As a preliminary matter, the weight of several of the Aerospatiale factors is unchanged from the Court's ruling on DAPs' earlier motion to compel. For example, the fact that the Decision originated in the EU still weighs against production. Prior Order at 5; see also In re Rubber Chems. Antitrust Litig., 486 F. Supp. 2d 1078, 1083 (N.D. Cal. 2007). Additionally, specificity once again weighs in favor of production. Prior Order at 4.

Despite Defendants' arguments to the contrary, the Decision also remains important to this litigation. While Defendants argue that subtle differences in the cartel conduct at issue in the Decision and the allegations here, as well as the extensive discovery already completed, render the Decision only minimally important, the Court's earlier findings on this factor need not be disturbed: "the Decision is relevant, because DAPs' and other plaintiffs' allegations in this case have always concerned the international character of the alleged CRT conspiracy." Prior Order at 5. In short, regardless of how the EC refers to the conspiracies in the Decision, the underlying conduct -- price fixing in the CRT and CPT markets -- indisputably overlaps with the conduct at issue here. Furthermore, the EC's decision is over 350 pages long, DG Competition Ltr. at ¶ 12, and includes a "comprehensive recitation of facts that are determined through lengthy and thorough investigative and adjudicatory processes." Mot. at 3. While extensive discovery has taken place to date, the factual detail contained in the Decision is likely to be of significant value in helping Plaintiffs organize their case and may

identify previously undiscovered competitor contacts or other highly relevant conduct. Accordingly, this factor continues to weigh in favor of disclosure.

Despite the Decision's importance to this litigation and the rapidly approaching trial date, the Court remains convinced that denying the motion to compel is the right course for three reasons. First, EU law and EC policy remain unchanged: "disclosure of the Decision would violate foreign law, frustrate the EC's investigations of antitrust cases, and subject Defendants to harsh sanctions at home and abroad." Prior Order at 7; see also id. at 7-8 (reviewing specific EU law and EC regulations and the importance of the DG Competition to the EU's antitrust enforcement). These concerns are not insignificant, as they threaten to undermine the DG Competition, "the European Union's primary antitrust law enforcer." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 250 (2004). Furthermore, as the Court previously found, the importance of the EC's leniency program, and cooperation between the EC and United States law enforcement agencies including the Department of Justice, also militate against disclosure. Prior Order at 7-8. Second, and relatedly, having reviewed the DG Competition's letter, the Court sees no reason to short-circuit the EC's publication process when the EC appears confident that at least a provisional version of the Decision may be published in approximately one month. Even if, as the DG Competition speculates, the EC is only able to publish a provisional version prior to the EC's Christmas holiday break, that will still obviate any need to offend EU law and EC policy by ordering production of the Decision.

1      The final reason for denying the motion, the availability of
2 the Decision outside this demand for production, merits separate
3 consideration.  Since the Court's prior decision, DAPs point out
4 that the EC made a partially redacted version of the Decision
5 available in response to a request for assistance from the Delaware
6 Chancery Court.  See Vichi, 85 A.3d at 751 & n.180.  In the Court's
7 view this actually cuts against granting the motion to compel
8 because it suggests that, contrary to the Court's previous
9 conclusion, there actually is a means of accessing the Decision
10 "without contravening EU law and policy."  Prior Order at 6.
11 Accordingly, the Court finds this factor now weighs against
12 granting the motion to compel.
13     Considering the factors identified in Aerospatiale, the Court
14 concludes that comity, the origin of the Decision, and the
15 availability of the Decision through other means outweigh the other
16 factors.  Additionally, the Court does not envision that the weight
17 of these factors will change significantly enough to justify
18 compelling the disclosure of the Decision directly from Defendants
19 regardless of the status of this case.  Accordingly, the motion to
20 compel is DENIED with prejudice.
21     Nonetheless, the Court must still address Plaintiffs'
22 alternative proposal that the Court request the Decision directly
23 from the EC as in the Vichi case.  Defendants suggest the procedure
24 adopted in Vichi would be inappropriate here for two reasons: (1)
25 the EC already sent a letter to Defendants here opposing the
26 disclosure of the Decision, thus suggesting that it would oppose a
27 request from the Court, and (2) the Decision was more central to
28 the Vichi litigation.  The Court disagrees with these arguments.

7

First, the letter Defendants refer to, ECF No. 2449-4 ("Van Ginderachter Ltr."), sent by the DG Competition was intended "to draw your attention to the fact that any such disclosure of [the Decision on a motion to compel] would be made in contravention of Commission rules and state policy on this issue." Id. at 1 (emphasis added). In other words, the letter was intended to inform the parties and the Court that disclosure of the Decision by the Defendants would contravene EC policy and EU law. Given the contrary evidence in Vichi and the fact that this letter was specifically targeted at disclosure of the Decision by the Defendants, there is no reason to conclude the EC's response would be the same if the Court were to request the EC provide the Decision directly. Second, even though, unlike Vichi, this case does not involve the question of whether the Decision has any collateral estoppel effect, the Decision still is "directly relevant to U.S. liability issues." Opp'n at 8. After all, the Decision details conduct that Plaintiffs argue is actionable under United States antitrust laws. Furthermore, there simply is no basis on the face of the Vichi opinion for speculating as to why the EC agreed to provide a version of the Decision. Without more, the Court cannot conclude that the EC would refuse to provide the Decision here.

Nevertheless, the Court believes issuing such a request at this time would be inappropriate in light of the EC and DG Competition's statements that they should be able to publish at least a provisional version of the Decision by their Christmas holiday. As a result, the Court DENIES Plaintiffs' request without prejudice. If at least a provisional version of the Decision has

still not been published following the EC's Christmas holiday, Plaintiffs may file a motion seeking the issuance of such a request.

### V.  CONCLUSION

For the reasons set forth above, the Court finds that the factors identified in Aerospatiale weigh against granting Plaintiffs' the motion to compel. Because the Court does not envision that the weight of these factors will change significantly enough to justify compelling the disclosure of the Decision directly from Defendants, the motion to compel is DENIED with prejudice.

Plaintiffs' alternative request that the Court seek the Decision directly from the EC is DENIED without prejudice. If at least a provisional version of the Decision has still not been published following the EC's "Christmas holidays break," Plaintiffs may file a motion seeking the issuance of such a request.

IT IS SO ORDERED.

Dated: November 20, 2014

UNITED STATES DISTRICT JUDGE

9