Guido Saveri (22349)
    *guido@saveri.com*
R. Alexander Saveri (173102)
    *rick@saveri.com*
Geoffrey C. Rushing (126910)
    *grushing@saveri.com*
Cadio Zirpoli (179108)
    *cadio@saveri.com*
Travis Manfredi (281779)
    *travis@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Interim Lead Counsel for the
Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV- 07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| **ALL DIRECT PURCHASER ACTIONS** | **DIRECT PURCHASER PLAINTIFFS' RESPONSE TO SHARP'S ADMINISTRATIVE MOTION FOR STATUS CONFERENCE** |
| | Judge: Honorable Samuel Conti<br>Courtroom: 1 |

## I. INTRODUCTION

Direct Purchaser Plaintiffs ("DPPs") submit this statement in response to the Court's Order Requesting Supplemental Briefing dated November 20, 2014 (Dkt. No. 3134) ("Order"). DPPs respectfully submit that (1) pursuant to the broad discretion afforded by Federal Rule of Civil Procedure 23(d), the Court may order a second round of notice and opportunity to opt-out before ruling on the merits of DPPs' final approval motion with regard to the proposed settlements with the Samsung SDI and Hitachi Defendants; and (2) the Court has discretion to allow Sharp Corporation ("Sharp") to pay for it. Neither of these actions is precluded by the terms of its settlement agreements.

Through no fault of their own, DPPs find themselves in an extraordinary and unjust predicament. DPPs negotiated valuable settlements with the Samsung SDI and Hitachi Defendants providing, *inter alia*, over $46 million in immediate and certain cash payments to the class and cooperation in the prosecution of DPPs' case against the remaining conspirators. The settlements were the product of thorough, informed, and prolonged negotiations between sophisticated and experienced counsel, with the assistance of the Hon. Vaughan Walker (ret.). The parties, moreover, were in possession of detailed information about the likely make-up of the contemplated settlement classes because in each of the five previous settlements virtually identical groups of putative class members had opted out, and several "Direct Action Plaintiffs" ("DAPs") including Sharp had filed their own actions. For this reason, as DPPs have previously explained, the cash component of the settlements did not include payment for the DAPs' claims.

Now, however, as a result of (1) Sharp's failure to timely opt-out; (2) the Hitachi defendants' insistence on claiming a windfall to which they are not entitled—i.e., the eventual dismissal of Sharp's case against them;[1] and (3) this Court's ruling that Sharp failed to make an adequate showing in support of its request to be allowed to submit a late request for exclusion, DPPs face the loss of a substantial part—and perhaps all—of the settlement benefits. As Sharp has explained (Sharp's Mo. for Case Mgmt. Conf. at 2–3 (Dkt. No. 3127) (Nov. 18, 2014)), its

---

[1] Samsung SDI did not oppose Sharp's (or Dell's) motion to opt-out. Instead, Samsung SDI took "no position." Benson Decl. in Supp. of Sharp's Mo. to Confirm Opt-Out Status or Enlarge Time ¶ 9 (Dkt. No. 2698-1) (July 23, 2014).

1

challenge to the adequacy of the settlements and appeal of the Court's orders denying enlargement of its time to opt-out will likely delay the finality of the settlements for many months or years, and may result in their disapproval. Thus, DPPs will lose one of the chief benefits of settlement—certain and immediate payment. In addition, even if, one or two years hence, Sharp's appeal is unsuccessful, DPPs may also be deprived of defendants' promised cooperation in DPPs' case against the remaining conspirators, at least during the pendency of Sharp's appeal.

In short, DPPs are innocent bystanders held hostage to a dispute between the wrongdoers in this case who seek an undeserved windfall, on the one hand, and a large and sophisticated corporation represented by a large and sophisticated law firm that (in good faith) missed a simple and obvious deadline, on the other. In addition, as Sharp also points out, its appeal will almost certainly result in inefficient and piecemeal trials in this MDL proceeding, and therefore also creates many unanticipated and difficult problems for the Court and the other parties. In this context, DPPs address the questions posed by the Court.

## II. THE COURT MAY ORDER A SECOND ROUND OF NOTICE AND OPPORTUNITY TO OPT-OUT

The first question the Court poses is whether it may order a "second round of notice and opportunity to opt-out" under Rule 23(d) without first ruling on "the merits of DPPs' and the Settling Defendants' final approval motion" despite "the requirement that on final approval a class settlement must stand or fall in its entirety." Order 2–3 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The answer is that the Court has discretion to do so, for two reasons.

First, the question presupposes that the Settlement Agreements between DPPs and the Settling Defendants preclude such an order. They do not. In fact, the Settlement Agreements make clear that it is up to the Court to determine the manner in which notice to the class will be given, including the procedures for opting out and objecting. Thus, while the agreements require DPPs and Settling Defendants to work together to propose a notice procedure, it is clear that the Court has final authority. Nowhere do the Settlement Agreements specify a particular procedure for notice or determining opt-outs, or limit the process to a single notice and opt-out deadline.

1       The Settlement Agreements address the question of notice and final approval in paragraphs 8–11, and 32. Paragraph 8 sets forth no specific procedures, but provides only that DPPs and defendants shall "use their best efforts to effectuate [the] agreement[s]" including cooperating to "secure the prompt, complete, and final" dismissal of DPPs' actions against the settling defendants. Hitachi Settlement Agreement ¶ 8; Samsung SDI Settlement Agreement ¶ 8.[2]

Paragraph 9 requires the parties to agree on and jointly propose a notice procedure to the Court. It states in relevant part: "The Motion shall include (i) a proposed form of, method for and date of dissemination of notice, and (ii) a proposed form of order." It is clear, however, that the Court is not bound by what the parties "propose."

Paragraphs 10 and 11 address final approval. Paragraph 10 sets forth the minimum requirements of the order of final approval and judgment. However, beyond certain minimum requirements—which do not mention the notice procedure, or deadlines for opting out of or objecting to the settlements—it entrusts the form of the final order to the Court's discretion. Thus, while Paragraph 10 requires the parties to agree on a form of order, Paragraph 11 requires only that the Court enter "a final order certifying the class . . . and approving this Agreement . . . and a judgment dismissing the Action with prejudice." In other words, the Court need not enter the order agreed upon by the parties. Indeed, that the Court is expected to exercise its discretion as regards the notice plan—and other aspects of the Settlements—is made clear by paragraph 10 which provides that the final order of approval and judgment shall provide that this Court have continuing exclusive jurisdiction over the settlements, including their "administration and consummation."

Finally, paragraph 32 again sets forth no specific requirements: "The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in paragraphs 8-11 hereof, appropriate notice 1) of the settlement and 2) of a hearing at which final approval of this Settlement Agreement will be considered by the Court will be given to Class Members." Again, the question of "appropriate notice" is plainly for the Court.

---

[2] The Settlement Agreements are attached as Exhibits 1 and 2 to the Declaration of R. Alexander Saveri in Support of Final Approval of Class Action Settlements with Hitachi and Samsung SDI Defendants (Dkt. No. 2728-1) (Aug. 1, 2014).

3

Secondly, the text of Rule 23(d) (and 23(e)) affords the Court broad discretion regarding notice. Numerous cases acknowledge the Court's broad discretion in this regard. *See, e.g.*, *Wang v. Chinese Daily News*, 623 F.3d 743, 756 (9th Cir. 2010) *vacated on other grounds*, 132 S. Ct. 74 (2011), *remanded on other grounds*, 737 F.3d 538 (9th Cir. 2013); *Hoston v. U.S. Gypsum Co.*, 67 F.R.D. 650, 658 (E.D. La. 1975). The Court's discretion includes the issuance of supplemental notices. *In re Jevic Holding Corp.*, No. 08-11006 BLS, 2010 WL 3431985, at *3 (Bankr. D. Del. Aug. 27, 2010); *see also Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 353–54 (6th Cir. 2009) ("reasonable" for trial court to afford disputed opt-outs second opportunity to opt-out; not required to provide a third opportunity). As *Jevic* and *Moulton* show, in cases of disputed opt-outs, as here, it is within the court's discretion to provide supplemental notice and an opportunity to opt-out solely to the class members whose opt-outs are in question. *See Jevic*, 2010 WL 3431985, at *3; *Moulton*, 581 F.3d at 354.[3]

### III. THE COURT MAY ORDER SHARP TO PAY THE COST OF A SECOND NOTICE.

The second question posed by the Court is whether it may order Sharp to pay the costs of notice which are ordinarily "borne by the proponent of class certification." Again, the answer is yes. The Settlements do not require that notice costs be paid in any particular way. Rather, payment from the settlement funds is expressly optional. Each Settling Defendant "agrees to ***permit*** use of a maximum of $300,000 toward notice to the class and settlement administration" (for a total of $600,000). Hitachi Settlement Agreement ¶ 19(a); Samsung SDI Settlement Agreement ¶ 19(a) (emphasis added). Accepting Sharp's offer to pay for a second round of notice, therefore, would not violate the settlements. In any event, the settlements require class members to bear the costs of notice if the settlements are approved. Defendants are liable for advanced costs of notice only if the settlements do not receive final approval. Hitachi Settlement Agreement ¶ 19(a); Samsung SDI Settlement Agreement ¶ 19(a).

---

[3] Sharp is incorrect to suggest that the previous notice was defective because it did not set forth the precise amount of the attorneys fees DPPs will seek, or the specific basis therefor—i.e., DPPs' fee motion. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) does not hold that such information is required for final approval. It holds only that class members must have the opportunity to object to a fee request after the motion for a fee award is filed. *Id.*

Moreover, DPPs do not expect that the cost of a second round of notice would be substantial. The first round of notice for these settlements cost approximately $30,000.[4]

Dated: November 26, 2014

                                                           Respectfully submitted,

/s/ *Guido Saveri*
Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)
Travis L. Manfredi (281779)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*

---

[4] It is well-established that a Court may reconsider its own rulings at any time before judgment is rendered. *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982); *United States v. Vittaly*, No. C 04 3186 MHP, 2006 WL 3834229, at *2 (N.D. Cal. Dec. 28, 2006). *See also* Fed. R. Civ. P. 54(b). DPPs respectfully submit that the Court would be well within the scope of its discretion to grant Sharp's original motion based solely on the lack of prejudice to Defendants. In addition, the further substantial prejudice to DPPs discussed above, as well as the inconvenience to the Court and other parties to the MDL, provides more than ample grounds to reconsider the Court's rulings now. Moreover, the effects of an appeal by Sharp of the Court's rulings on the class settlements were not fully apparent at the time of Sharp's first motion.