SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GARY L. HALLING, Cal. Bar No. 66087
JAMES L. McGINNIS, Cal. Bar No. 95788
MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
DYLAN I. BALLARD, Cal. Bar No. 253929
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:     415-434-9100
Facsimile:      415-434-3947
E-mail:           ghalling@sheppardmullin.com
                     jmcginnis@sheppardmullin.com
                     mscarborough@sheppardmullin.com
                     dballard@sheppardmullin.com

Attorneys for Defendants
SAMSUNG SDI AMERICA, INC.,
SAMSUNG SDI CO., LTD.,
SAMSUNG SDI (MALAYSIA) SDN. BHD.,
SAMSUNG SDI MEXICO S.A. DE C.V.,
SAMSUNG SDI BRASIL LTDA.,
SHENZHEN SAMSUNG SDI CO., LTD. and
TIANJIN SAMSUNG SDI CO., LTD.

*Additional Counsel Listed on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br><br>MDL No. 1917<br><br>**SDI AND HITACHI DEFENDANTS' JOINT OPPOSITION TO SHARP'S ADMINISTRATIVE MOTION FOR CASE MANAGEMENT CONFERENCE; RESPONSE TO NOVEMBER 20 ORDER REQUESTING SUPPLEMENTAL BRIEFING** |
| This Document Relates to:<br><br>DIRECT PURCHASER ACTIONS | |

SMRH:435093255.5
MDL No. 1917

SDI AND HITACHI DEFENDANTS' JOINT OPP'N TO SHARP ADMIN. MOTION FOR CMC;
RESPONSE TO NOV. 20 ORDER REQUESTING SUPPLEMENTAL BRIEFING

The SDI and Hitachi Defendants ("Defendants") jointly oppose Direct Purchaser Class Member Sharp's self-styled Administrative Motion for Case Management Conference (MDL Dkt. No. 3127) and respond to the questions posed by the Court in its November 20, 2014 Order Requesting Supplemental Briefing (MDL Dkt. No. 3134).

## I. SHARP'S MOTION IS ANOTHER ATTEMPT TO RELITIGATE ITS FAILURE TO COMPLY WITH THE OPT OUT DEADLINE.

Courts routinely admonish litigants that a motion for reconsideration may not be used to obtain a "*second* bite at the apple"—that is, to relitigate issues already considered and decided by the Court. *See In re Cathode Ray Tube Antitrust Litig.*, 2014 WL 4446294, at *7 (N.D. Cal. Sept. 8, 2014) (emphasis added); Civ. L.R. 7-9(c). Here, despite styling its latest attempt as a request for "administrative relief" (which would also be improper, *see* Civ. L.R. 7-11) —and despite its claim to "fully respect" the Court's prior orders on this issue—Sharp now seeks what amounts to a *fourth* attempt to litigate the Court's rejection of its untimely opt out request, with no end in sight.

Sharp initially litigated this issue in its motion for enlargement of time to opt out, then again in its first motion for reconsideration, then again in an improper and recently-dismissed interlocutory appeal, and now a fourth time in the motion at issue. This time Sharp employs a new strategy, couching its renewed request as a "solution" to an entirely unrelated issue regarding the attorney fee notice to be provided to class members (an issue that does not remotely justify giving Sharp another opt out period, as explained below). Sharp's wordplay changes nothing. The Court has already *twice* rejected Sharp's attempts to avoid the consequences of its failure to comply with the opt out deadline, on an identical factual and legal record. It should do so again.

## II. THE COURT MAY NOT ORDER A SECOND SETTLEMENT NOTICE OR IMPOSE A NEW OPT OUT PERIOD WITHOUT THE PARTIES' CONSENT.

The Court has asked whether it may "order a second round of notice and opportunity to opt out in the exercise of its discretion under Federal Rule of Civil Procedure 23(d) without addressing the merits of DPPs' and the Settling Defendants' final approval motion?" (MDL Dkt. No. 3134 at 2-3). The answer is that the Court may not order a second settlement notice or impose a second opt out period without the parties' consent, and must instead reject the settlements. To be clear, Defendants do not consent to a second settlement notice or opt out period.

SMRH:435093255.5
MDL No. 1917

SDI AND HITACHI DEFENDANTS' JOINT OPP'N TO SHARP ADMIN. MOTION FOR CMC; RESPONSE TO NOV. 20 ORDER REQUESTING SUPPLEMENTAL BRIEFING

As the Court observes, courts lack discretion to rewrite, alter, or modify any provision of a proposed class action settlement. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Jeff D. v. Andrus*, 899 F.2d 753, 758 (9th Cir. 1989) (Rule 23 "does not authorize the court to require the parties to accept a settlement to which they have not agreed.") (internal quotations omitted).  Here, ordering a second settlement notice or opt out period would alter the terms of the DPP Settlements and the parties' expectations in entering into them, without the parties' consent.  And it would do so solely for the benefit of one class member, Sharp.  *See* MDL Dkt. No. 2753 at 3 (DPP Opp'n to Sharp Motion to File Late Objections) ("any dilutive effect of adding only Sharp to the settlement class in no way renders the proposed settlements unfair or unreasonable.").  The settlements contemplate distribution of a single settlement notice, the form, content, and method of which must be previously agreed to between the parties.  *See* DPP Settlements, ¶¶ 8, 9.  In addition, the settlements require Defendants to pay a portion of the costs of notice and claims administration, in amounts that "are not recoverable if this settlement does not become final." *Id.*, ¶19(a); *see also* ¶19(b) (requiring class counsel to use "best efforts" to provide "a single notice" for multiple settlements).  Similarly, the parties negotiated the DPP Settlements with the understanding that there would be a single, clearly defined opt out period, consistent with the approach followed for past settlements in this litigation and the vast majority of class action settlements generally.  *See, e.g.,* Decl. Michael W. Scarborough, ¶2; Decl. Eliot A. Adelson, ¶2.  Indeed, the identity and number of opt outs is relevant to the fundamental issue of whether the Settlements may be rescinded.  *See id.*, ¶18(a) ("blow-up" provision based on nature of opt outs).

Rule 23 contemplates the possibility of a second opt out period only in a specific, inapplicable context:  where a settlement is reached *after* a litigation class has already been certified under Rule 23(b)(3).  *See* Fed. R. Civ. Proc. 23(e)(4).  Even in that situation, courts have refused to grant a second opt out opportunity as unnecessary and inefficient.  *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 634-635 (9th Cir. 1982) ("We have found no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out").  And while a few courts have imposed new opt out periods

under Rule 23(d), they have done so only to address the extreme case of secret coercive or abusive communications to class members during the first opt out period.  *See In re Community Bank of Northern Virginia*, 418 F.3d 277, 310-311 (3d Cir. 2005) (collecting cases).  No abusive or coercive conduct has occurred here.  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981) (courts' discretion under Rule 23(d) designed to prevent "abuse" of class action procedures).

Here, the settlement notice already sent to class members fully complies with the requirements of Rule 23.  The form and content of that notice was submitted to and approved by the Court and is consistent with the settlement notices issued for all previous settlements in this litigation.  Indeed, not a single class member has properly objected to any aspect of the notice— not even Sharp.  While Sharp sought leave to file untimely objections to the settlements nearly two months after the objection deadline, those purported objections made no mention of notice issues. *See* MDL Dkt. No. 2751-2.  Nor did Sharp make any mention of notice issues at the fairness hearing.  To the extent Sharp's reference to "notice" issues in its administrative motion is to be construed as an additional untimely objection, it comes *five months* after the objection deadline imposed on every other class member.

Even more importantly, contrary to Sharp's belated suggestion that class members were not notified about attorney fees, the settlement notice clearly identified the maximum amount of fees that could be sought by class counsel, just like the previous notices sent out in this litigation. *See* MDL Dkt. No. 2430-1 (proposed settlement notice) at 9 ("Interim Lead Counsel will ask the Court for attorneys' fees not to exceed one-third (33.3%) of this or any future Settlement Fund").

And this is not the only attorney fee notice the class will receive.  Pursuant to Rule 23(h), all class members will receive notice of class counsel's fee motion at the time it is filed, followed by an opportunity to object after the motion is fully briefed (which is not a second opportunity to opt out).  *See, e.g.,* Fed. R. Civ. Proc. 23(h)(1), (2); *In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (fee objection deadline must allow "class members an opportunity thoroughly to examine counsel's fee motion").  Thus, if Sharp or any other class member has concerns about class counsel's fee request—concerns that were not raised at the fairness hearing despite the fact that the settlement notice clearly identified the maximum possible

-3-

SMRH:435093255.5
MDL No. 1917

SDI AND HITACHI DEFENDANTS' JOINT OPP'N TO SHARP ADMIN. MOTION FOR CMC;
RESPONSE TO NOV. 20 ORDER REQUESTING SUPPLEMENTAL BRIEFING

1  fee request—it will have yet another opportunity to bring those concerns to the Court's attention.

2        In addition to being unnecessary and contrary to the settlements negotiated by the parties,
3  imposing a second notice or opt out period would not serve the interests of the Court, the parties,
4  or the class members (with the sole exception of Sharp) and would inject needless chaos into a
5  process that all but two class members (Sharp and Dell) successfully navigated the first time.
6  Receiving a second, substantially similar notice could confuse class members as to whether their
7  response to the original notice was effective.  Some who opted out the first time may fail to do so
8  the second time, whether intentionally or otherwise.  Indeed, at least one plaintiff, ViewSonic, has
9  already attempted to reverse an earlier opt out decision, which the Court rejected.  *See* MDL Dkt.
10  No. 2517 at 7 (granting untimely opt-in request "in this particular MDL could up-end the existing
11  settlements and derail those to come…[and] encourage uncertainty and disrupt the class action
12  process").  Conversely, some members who did not opt out may now seek to do so, upsetting the
13  parties' expectations as to the scope of the release they bargained for, as well as forcing
14  Defendants to conduct new or further opt out litigation.  *See* MANUAL FOR COMPLEX LITIGATION,
15  Fourth, §21.321 ("The state of the class at the end of the opt out period should be fixed enough to
16  allow parties to conduct their affairs.").

17        Perhaps most importantly, to the extent the Court believes that a further attorney fee notice
18  should be provided to class members *before* class counsel's fee motion is filed, that can be
19  accomplished without imposing an improper second notice and opt out period.  Instead, the DPPs
20  can simply revise the proposed claim notice, which has not yet been approved by the Court or
21  distributed, to include an additional statement of the maximum attorney fees that may be sought
22  by class counsel.  This solution, which requires no modification of the DPP Settlements, is exactly
23  what the Court proposed at the August 22, 2014 fairness hearing.  *See* MDL Dkt. No. 2759,
24  (Hearing Tr. at 23:19-25:11).  A revised claim notice can be distributed in short order and, if the
25  Court deems it necessary, can include notice of a further fairness hearing at which class members
26  may have an additional opportunity to object to the fairness of the settlement.

27        Defendants submit that this approach is far preferable to the nuclear option of rejecting the
28  DPP Settlements.  As an initial matter, those settlements should be approved if "taken as a whole,

-4-

rather than the individual component parts" the settlements are "fair, reasonable, and adequate." *Hanlon*, 150 F.3d at 1026-1027.  Similarly, fairness is to be assessed based on the interests of "the class as a *whole*," rather than of a few—or, in this case, single—class member.  *See, e.g., Lane v. Facebook, Inc.*, 696 F.3d 811, 824 (9th Cir. 2012) (emphasis in original); *E.E.O.C. v. McDonnell Douglas Corp.*, 894 F.Supp. 1329, 1335 (E.D. Mo. 1995) ("Objections based purely upon individual claims of loss do not warrant disapproval of the proposed settlement.").  Procedural issues concerning class notice are not among the factors relevant to the fairness determination.  *See Hanlon*, 150 F.3d at 1026 (outlining relevant factors).

Terminating the settlements at this late stage would also force the parties to resume litigating at a particularly disadvantageous time.  Consistent with the parties' obligations not to engage in litigation while the settlements are pending, *see* DPP Settlements, ¶26, the DPP cases have been at a standstill since the settlements were finalized.  No class certification order has been issued.  No further fact discovery was conducted.  No dispositive motions have been filed.  No expert reports have been served, and no expert depositions have occurred.  Rejecting the DPP Settlements now would force the parties to propose a new schedule for all of these crucial pretrial tasks, which could not possibly be completed in time to allow the DPP case to be included in the trial scheduled to begin on March 9, 2015.  Respectfully, this litigation should not be turned upside down to allow a single class member to avoid the straightforward and repeatedly litigated consequences of its failure to comply with an opt out deadline.

### III. THE COURT MAY NOT ALLOW SHARP TO BEAR THE COSTS OF CLAIM NOTICE WITHOUT THE PARTIES' CONSENT.

The Court has asked whether it may order Sharp, consistent with its offer, to bear the costs of a second notice to class members.  Because this would constitute a modification of the notice procedures set forth in the DPP Settlements, Sharp may only bear the costs of notice if the parties agree.  NEWBERG ON CLASS ACTIONS, §13:46, pp. 447-449 (5th Ed.) (2014) (court may not rewrite settlement agreement, but may accept modifications agreed to by the parties).  Defendants expect, however, that Sharp's offer is contingent on the Court's ordering a second opt out period.  As discussed, Defendants do not agree to modify their settlement agreements on those terms.

-5-

SMRH:435093255.5
MDL No. 1917

SDI AND HITACHI DEFENDANTS' JOINT OPP'N TO SHARP ADMIN. MOTION FOR CMC; RESPONSE TO NOV. 20 ORDER REQUESTING SUPPLEMENTAL BRIEFING

1 | Dated:  November 26, 2014

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By */s/ Michael W. Scarborough*
MICHAEL W. SCARBOROUGH

Attorneys for Defendants
SAMSUNG SDI AMERICA, INC.,
SAMSUNG SDI CO., LTD.,
SAMSUNG SDI (MALAYSIA) SDN. BHD.,
SAMSUNG SDI MEXICO S.A. DE C.V.,
SAMSUNG SDI BRASIL LTDA.,
SHENZEN SAMSUNG SDI CO., LTD. and
TIANJIN SAMSUNG SDI CO., LTD.


KIRKLAND & ELLIS LLP

By */s/ Eliot A. Adelson*
ELIOT A. ADELSON

Attorneys for Defendants
HITACHI AMERICA, LTD.
HITACHI ASIA, LTD.
HITACHI DISPLAYS, LTD.
HITACHI ELECTRONIC DEVICES (USA)
HITACHI LTD.


Pursuant to Local Rule 5-1(i), the filer attests that concurrence in the filing of this document has been obtained from the above signatory.

-6-

SMRH:435093255.5
MDL No. 1917

SDI AND HITACHI DEFENDANTS' JOINT OPP'N TO SHARP ADMIN. MOTION FOR CMC; RESPONSE TO NOV. 20 ORDER REQUESTING SUPPLEMENTAL BRIEFING