1  Michael P. Kenny, Esq. (admitted pro hac vice)
   mike.kenny@alston.com
2  Debra D. Bernstein, Esq. (admitted pro hac vice)
   debra.bernstein@alston.com
3  Matthew D. Kent, Esq. (admitted pro hac vice)
   matthew.kent@alston.com
4  **ALSTON & BIRD LLP**
5  1201 West Peachtree Street
   Atlanta, Georgia 30309-3424
6  Tel: (404) 881-7000
   Fax: (404) 881-7777
7
8  James M. Wagstaffe, Esq. (SBN 95535)
   wagstaffe@kerrwagstaffe.com
9  **KERR & WAGSTAFFE LLP**
   100 Spear Street, 18th Floor
10 San Francisco, California 94105-1576
   Tel: (415) 371-8500
11 Fax: (415) 371-0500

12 *Attorneys for Plaintiffs Dell Inc. and Dell Products L.P.*

13 **[Additional Counsel Listed on Signature Page]**

14                    **UNITED STATES DISTRICT COURT**

15                   **NORTHERN DISTRICT OF CALIFORNIA**

16                      **SAN FRANCISCO DIVISION**

17

18 | In re: CATHODE RAY TUBE (CRT) | Master File No. 3:07-md-05944-SC (N.D. |
19 | ANTITRUST LITIGATION | Cal.) |

20                                      MDL No. 1917

21 This Document Relates to: Individual Cases:

22 *Dell Inc., et al. v. Hitachi Ltd. et al.*, No. 13-    **MOTION TO PARTIALLY EXCLUDE**
   cv-02171;                                              **CERTAIN OPINIONS AND TESTIMONY**
                                                          **OF DESIGNATED EXPERT DANIEL L.**
23                                                        **RUBINFELD**
   *Sharp Electronics Corporation, Sharp*
24 *Electronics Manufacturing Company of*                 Date:   February 27, 2015
   *America, Inc. v. Hitachi, Ltd., et al.*, No. 13-      Time:   10:00 a.m.
25 cv-1173;                                               Courtroom:    1
                                                          Judge:  Honorable Samuel Conti
26 *Sharp Electronics Corporation, Sharp*
   *Electronics Manufacturing Company of*                 **REDACTED VERSION OF DOCUMENT**
27 *America, Inc. v. Koninklijke Philips*
   *Electronics N.V., et al.,*  No. 13-cv-2776;
28

                                             1

*Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.*, No. 3:11-cv-01656;

*Electrograph Systems, Inc., et al. v. Technicolor SA, et al.*, No. 3:13-cv-05724;

*CompuCom Sys., Inc. v. Hitachi, Ltd., et al.*, No. 3:11-cv-06396;

*Interbond Corp. of Am. v. Hitachi, Ltd. et al.*, No. 3:11-cv-06276-SC

*Interbond Corp. of America v. Technicolor SA, et al.*, No. 3:13-cv-05727;

*Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA*, No. 3:13-cv-05262;

*Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514;

*Siegel v. Hitachi, Ltd.*, No. 11-cv-05502;

*Siegel v. Technicolor SA*, No. 13-cv-05261;

*Target Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514;

*Target Corp. v. Technicolor SA*, No. 13-cv-05686;

*Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 14-cv-02510;

*Office Depot, Inc. v. Hitachi, Ltd. et al*, No. 3:11-cv-06276-SC

*Office Depot, Inc. v. Technicolor SA, et al.*, No. 3:13-cv-05726;

*P.C. Richard & Son Long Island Corp., et al., v. Hitachi, Ltd., et al.¸* No. 3:12-cv-02648;

*P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al.*, No. 3:13-cv-05725;

*Schultze Agency Services, LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC v. Hitachi, Ltd., et al.*, No. 3:12-cv-2649;

*Schultze Agency Services, LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC v. Technicolor SA., et al.*, No. 3:13-cv-05668;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Tech Data Corporation; Tech Data Product*
*Management, Inc.; v. AU Optronics Corp., et*
*al.,* No. 13-cv-00157

MOTION TO EXCLUDE CERTAIN
OPINIONS OF DANIEL L. RUBINFELD

MASTER FILE NO. 3:07-CV-05944-SC
MDL NO. 1917 │ IND. CASE NO. 3:13-cv

## TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION AND MOTION TO PARTIALLY EXCLUDE CERTAIN
      OPINIONS AND TESTIMONY OF DESIGNATED EXPERT DANIEL
      L. RUBINFELD.........................................................................................................7

MEMORANDUM OF POINTS AND AUTHORITIES .............................................8

ISSUES TO BE DECIDED ........................................................................................8

INTRODUCTION ......................................................................................................8

ARGUMENT AND CITATION TO AUTHORITIES..............................................10

      1.     Legal Standard .........................................................................................10

      2.     Dr. Rubinfeld's Opinions Regarding SDI's Guilty Plea Should
                Be Excluded .............................................................................................12

      3.     Dr. Rubinfeld's Opinions Regarding the "Potential Impact of
                SDI's Conduct on Prices and Output Sold to U.S. Customers"
                Should be Excluded ..................................................................................16

CONCLUSION...........................................................................................................19

MOTION TO EXCLUDE CERTAIN
OPINIONS OF DANIEL L. RUBINFELD

MASTER FILE NO. 3:07-CV-05944-SC
MDL NO. 1917 │ IND. CASE NO. 3:13-cv

## TABLE OF AUTHORITIES

CASES

Page(s)

*Andrews v. Metro North Commuter R.R. Co.,*
    882 F.2d 705 (1989).............................................................................................11

*Aventis Envtl. Sci. USA LP v. Scotts Co.,*
    383 F. Supp. 2d 488 (S.D.N.Y. 2005)................................................................18

*Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993)..............................................................................9,11, 16

*Carapellucci v. Town of Winchester,*
    707 F. Supp. 611 (D. Mass. 1989).....................................................................18

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993).............................................................................11, 12, 17

*DSU Med. Corp. v. JMS Co.,*
    296 F. Supp. 2d 1140 (N.D. Cal. 2003) ............................................................12

*In re Scrap Metal Antitrust Litig.,*
    527 F.3d 517 (6th Cir. 2008) .............................................................................13

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
    No. 07-md-01819 CW, 2010 WL 5071694 (N.D. Cal. Dec. 7, 2010)...................13

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
    MDL No. 1827 (N.D. Cal. Aug. 29, 2013) .........................................................18

*J. Truett Payne Co., Inc. v. Chrysler Motors Corp.,*
    451 U.S. 557 (1981)...........................................................................................16

*Justice v. Carter,*
    972 F.2d 951 (8th Cir. 1992) .............................................................................18

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999)...........................................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986)...........................................................................................11

*MySpace, Inc. v. Graphon Corp.,*
    756 F. Supp. 2d 1218 (N.D. Cal. 2010), *aff'd*, 672 F.3d 1250 (Fed. Cir. 2012)....................11

*Primiano v. Cook,*
    598 F.3d 558 (9th Cir. 2010) ...............................................................................11

*United States v. Binder,*
    769 F.2d 595 (9th Cir.1985) ...............................................................................11

*United States v. Freeman*,
    498 F.3d 893 (9th Cir. 2007) ..............................................................................12

**RULES**

Fed. R. Evid. 401 .......................................................................................................11

Fed. R. Evid. 702 ..................................................................................................11, 12

**NOTICE OF MOTION AND MOTION TO PARTIALLY EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DESIGNATED EXPERT DANIEL L. RUBINFELD**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 27, 2015 or as soon thereafter as this matter may be heard before the Honorable Samuel P. Conti, U.S. District Court Judge, U.S. District Court for the Northern District of California, Courtroom No. 1, 17th Fl., 450 Golden Gate Avenue, San Francisco, California, 94102, the above-captioned Plaintiffs ("Plaintiffs") will and hereby do move this Court for an Order excluding certain testimony of SDI's designated expert, Daniel L. Rubinfeld, Ph.D. Specifically,  Plaintiffs seek to exclude Dr. Rubinfeld from opining on the plain and unambiguous terms of SDI's Guilty Plea or from providing speculative testimony about the "potential impact of SDI's conduct on prices and output of CRTs sold to U.S. customers."

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs in the above-captioned matters submit this Memorandum of Points and Authorities in support of their motion to partially exclude the expert report and opinions of Daniel L. Rubinfeld.

**ISSUES TO BE DECIDED**

Whether SDI's designated expert, Dr. Daniel L. Rubinfeld, should be precluded from (1) giving opinions that purport to interpret, characterize, and narrow, the plain and unambiguous terms of SDI's Guilty Plea, and (2) speculating about the "potential impact" of SDI—[a single conspirator's conduct]—"on prices and output of CRTs sold to U.S. customers."

**INTRODUCTION**

Counsel for Defendant SDI retained Dr. Daniel Rubinfeld, an economist, "to evaluate its conduct with respect to an alleged conspiracy to fix the prices of cathode ray tubes ('CRTs')." Expert Report of Daniel L. Rubinfeld dated August 5, 2014 at ¶8 (attached as Exhibit A to the Declaration of Debra Bernstein filed herewith, hereinafter "Report"). Prior to this lawsuit, SDI voluntarily entered into a criminal Guilty Plea and admitted that it participated in a CDT price-fixing conspiracy with other major producers for more than 10 years which adversely affected a substantial amount of U.S. commerce. SDI Guilty Plea, Case No. CR 11-0162, Dkt. No. 29 at ¶4(c), filed May, 17, 2011 (attached as Exhibit B to the Declaration of Debra Bernstein filed herewith, hereinafter "SDI Guilty Plea"). Dr. Rubinfeld has formed several opinions about this admitted conduct,[1] two of which are at issue in the instant motion.

***First***, Dr. Rubinfeld purports to interpret, and narrow, the scope of SDI's Guilty Plea. Dr. Rubinfeld is an economist and, of course, has no expertise in interpreting plea agreements. Although SDI admitted that it fixed prices for more than 10 years with other major CDT producers, Dr. Rubinfeld intends to offer a textual analysis of SDI's Guilty Plea that characterizes it as "limited" to

---

[1] Although Dr. Rubinfeld also intends to provide additional opinions at trial, including opinions regarding the effectiveness of the alleged conspiracy, those opinions are not at issue in this motion.

"fixing the prices of a relatively small volume of commerce in color display tubes ('CDTs') sold in the U.S. during a portion of Plaintiffs' claimed 'conspiracy period.'" *Id.* at ¶10.  On its face, SDI's Guilty Plea is broad in both time and scope, and states exactly how much U.S. commerce was affected by SDI's sales alone: $89 million.  SDI Guilty Plea at ¶4(d). The jury can decide whether $89 million is a "relatively small volume of commerce" without Dr. Rubinfeld's help.  The Guilty Plea is not limited to certain customers, yet Dr. Rubinfeld somehow surmises that it only applies to "a small number of U.S. customers, including Princeton Display Technologies, Inc., Telco International Corporation, UTI Technology, Inc., and Video Display Corporation."  Conveniently, none of these customers are "among the remaining plaintiffs in this litigation."  *Id.* at ¶10.

Dr. Rubinfeld's textual interpretation and conjectures about SDI's Guilty Plea are not based on any specialized expertise or methodology, and are inconsistent with the undisputed evidence in this case.  The explicit terms of SDI's Guilty Plea coupled with SDI's own transactional data show that Dr. Rubinfeld cannot possibly be correct.  Dr. Rubinfeld should not be allowed to speculate about SDI's Guilty Plea, much less give testimony that contradicts it, at trial.  *See, e.g.*, *Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (rejecting expert opinion "when indisputable record facts contradict or otherwise render the opinion unreasonable").

Dr. Rubinfeld also opines that, based on the DOJ's policy of including all potential offenses in a plea agreement, it must be the case that the DOJ did not believe any additional antitrust violations were committed.  Dr. Rubinfeld did not have any involvement in negotiating SDI's Guilty Plea, and admitted at his deposition that the SDI Guilty Plea refers only to criminal conduct, and therefore says nothing about the DOJ's views concerning the validity of broader civil claims against SDI.  Thus, Dr. Rubinfeld's speculation regarding the import of what was left out of the DOJ plea agreement is both inappropriate expert testimony and irrelevant.

**Second**, Dr. Rubinfeld intends to opine that Redacted . Dr. Rubinfeld's opinion is not based on any economic analysis beyond reviewing certain documents supplied by SDI's attorneys.  *Id.*  But, as SDI's designated damages expert, Dr. Dennis Carlton, acknowledges, determining the effect of alleged price-fixing Redacted

Redacted

(attached as Exhibit C to the Declaration of Debra Bernstein filed herewith, hereinafter "Carlton Report").  Dr. Rubinfeld did not study relevant industry conditions, the market structure, the cartel behavior as a whole, or comparable cartels and their impact on pricing.

Vague conjectures about the potential "impact of *SDI's conduct*" would not help the jury.  The jury will not be asked to assess the impact of *SDI's conduct* on prices to U.S. customers, but rather, the impact of the ***overall conspiracy*** among SDI and "other major CDT producers" on individual Plaintiffs' prices.  *See* SDI Guilty Plea at ¶4(c) (pleading guilty to having "participated in a conspiracy among major CDT producers").  Dr. Rubinfeld's tentative opinion about the Redacted

is not based on reliable economic analysis and would not help   the jury understand anything about the effectiveness of the conspiracy alleged by Plaintiffs Redacted [2]

For these and the reasons set forth more fully below, the Court should not allow Dr. Rubinfeld to give expert testimony interpreting the scope of SDI's Guilty Plea or to speculate on the Redacted

## ARGUMENT AND CITATION TO AUTHORITIES

### 1. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony, and provides that, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto."  Fed. R. Evid. 702.  For expert testimony to be admissible, it must be relevant.  Rule 401 defines relevant evidence "as that which has 'any tendency to make the existence of any fact that is of consequence to

---

[2] Dr. Rubinfeld has also provided opinions about the alleged conspiracy's impact on color picture tubes ("CPTs"), which were primarily used in televisions.  *See* Report at ¶10, 15.  Dell is only seeking damages related to its purchase of color display tubes ("CDTs") used in computers.  Since CPTs are not at issue in Dell's case, Dell does not anticipate that Dr. Rubinfeld would attempt to provide expert opinions related to CPTs in its case.  However, any such opinions should be excluded on relevancy grounds.

the determination of the action more probable or less probable than it would be without the evidence.'" *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993) (quoting Fed. R. Evid. 401). Expert testimony that would not help the jury "understand the evidence or to determine a fact in issue" is not admissible. *Daubert*, 509 U.S. at 591. Similarly, expert testimony would not assist the jury and is not admissible when directed "to lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro North Commuter R.R. Co.,* 882 F.2d 705, 708 (1989); *see United States v. Binder,* 769 F.2d 595, 602 (9th Cir.1985); *Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010) (quoting Fed. R. Evid. 702). Finally, an expert opinion must be excluded if is not supported by sufficient facts or data or is otherwise contradicted by undisputed record evidence. *See, e.g.*, *Brooke Group*, 509 U.S. at 242 (rejecting expert opinion where "not supported by sufficient facts to validate it in the eyes of the law" and "when indisputable record facts contradict or otherwise render the opinion unreasonable"); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 n.19 (1986) (affirming district court's finding that expert report was inadmissible because it contained assumptions that were "both implausible and inconsistent with the record evidence").

It is the duty of the trial court to ensure that expert testimony is "not only relevant, but reliable." *Daubert* at 589. The testimony must be: (1) based on sufficient facts or data; (2) the product of reliable principles and methods; and (3) the witness must have applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147-48 (1999); *DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1146 (N.D. Cal. 2003). The Court stands as "gatekeeper," and must bar the introduction of conjecture and proffered expert testimony that is not supported by "appropriate validation" and reliable scientific method. *Id.* at 590. This gatekeeper role is particularly important because expert witnesses have the potential to "be both powerful and quite misleading." *Id*. at 595 (citations omitted). "The proponent of expert testimony has the burden of proving admissibility pursuant to Rule 702 by a preponderance of the evidence." *MySpace, Inc. v. Graphon Corp.*, 756 F. Supp. 2d 1218, 1234 (N.D. Cal. 2010), *aff'd*, 672 F.3d 1250 (Fed. Cir. 2012).

### 2.  Dr. Rubinfeld's Opinions Regarding SDI's Guilty Plea Should Be Excluded

Dr. Rubinfeld does not have any "scientific, technical, or other specialized knowledge" that qualifies him to interpret the terms of SDI's Guilty Plea.  *See* Deposition of Daniel L. Rubinfeld dated Sept. 8, 2014 at 133:24-134:1 (attached as Exhibit D to the Declaration of Debra Bernstein filed herewith, hereinafter "Rubinfeld Dep."); *see also* Rubinfeld Dep. at 134:18-20 Redacted

SDI's Guilty Plea is the best evidence of its terms, which are broad, plain, and unambiguous. It provides, in pertinent part, as follows:

From the "period from at least as early as January 1997, until at least as late as March 2006," SDI "participated in a conspiracy among major CDT producers, the primary purpose of which was to fix prices, reduce output, and allocate market shares of CDTs sold in the United States and elsewhere." SDI Guilty Plea at ¶4(d).  SDI admitted that "its officers and employees[] engaged in discussions and attended meetings with representatives of other major CDT producers," and that "[d]uring these discussions and meetings, agreements were reached to fix prices, reduce output, and allocate market shares of CDTs to be sold in the United States and elsewhere."  SDI Guilty Plea at ¶4(a) and (c).  SDI admitted that its "CDT sales, directly affected by the conspiracy, to customers in the United States totaled approximately $89 million."  *Id.* at ¶4(d).

Dr. Rubinfeld intends to provide a number of opinions designed to mischaracterize, blunt, and retreat from the express admissions in the Guilty Plea.  ***First,*** Dr. Rubinfeld intends to opine Redacted This inference is not only unwarranted, but it is also beyond any expertise of an economist.

Where, as here, an expert "cease[s] to apply his specialized knowledge," he is "no longer testifying as an expert but rather as a lay witness."  *United States v. Freeman*, 498 F.3d 893, 902 (9th Cir. 2007).  Dr. Rubinfeld is an economist — he does not have any specialized expertise that qualifies him to "infer" what the Department of Justice ("DOJ") found in its investigation or believed to be

12

actionable in court.  He was not personally involved in the DOJ's investigation and is not a mind reader.  *See* Rubinfeld Dep. at 132:16-20 ("I can't tell you what was in their mind because I just read the plea agreement."); *see In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5071694, at *4 (N.D. Cal. Dec. 7, 2010) (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 531 (6th Cir. 2008)) (noting that the district court must determine whether expert opinion "rests upon a reliable foundation, as opposed to, say, unsupported speculation.").

Dr. Rubinfeld's textual divinations, moreover, would not assist the jury in individual Plaintiffs' cases.  Dr. Rubinfeld admitted in his deposition that the DOJ's guidelines for SDI's *criminal* plea required the ability to prove criminal conduct beyond a reasonable doubt, while SDI's civil liability would need to be shown only by a preponderance of the evidence.  Rubinfeld Dep. at 151:19-152:1. Dr. Rubinfeld further admitted that the SDI plea agreement referred only to criminal conduct – which he failed to note in his Report – and not to what could be separately pursued in a civil case, and agreed to clarify his Report.  Redacted

Dr. Rubinfeld did not even consider whether the DOJ could have pursued a broader civil suit for price fixing, like Plaintiffs, or anticompetitive information exchange, like the claim asserted against SDI by the Sharp Plaintiffs.  *Id.* at 154:10-15.  In addition, millions of documents have been produced in this litigation that were not available to the DOJ when SDI entered its Guilty Plea in 2011, more than three years ago.  Allowing Dr. Rubinfeld to speculate about what the DOJ found to be actionable based on the available evidence at that time would not help the jury decide if SDI participated in the conspiracy alleged by Plaintiffs based on the evidence available today, under either a price-fixing or an information exchange theory.  Such speculative and irrelevant testimony should be excluded.

***Second,*** Dr. Rubinfeld intends to opine that Redacted This opinion depends on a blatant misreading of the actual words of SDI's Guilty Plea, which does not foreclose the possibility Redacted Rather, it

13

specifically acknowledges that the conspiracy could be broader.  It states that the conspiracy lasted "from *at least as early as* January 1997, until *at least as late as* March 2006."  Guilty Plea at ¶4(a) (emphasis added).  In other words, it could have started before January 1997 and ended later than March 2006.  During his deposition Dr. Rubinfeld admitted as much:

Redacted

Redacted SDI should therefore not be allowed to use Dr. Rubinfeld as a foil to present a misleading textual argument to the jury.

**Finally,** Dr. Rubinfeld intends to opine that the conspiracy to which SDI pled guilty was limited and only involved four U.S. customers Redacted Dr. Rubinfeld notes that each of those companies produced Redacted If allowed, Dr. Rubinfeld would have the jury believe that the conspiracy to which SDI pled guilty was not only limited to certain customers and certain time periods, but only involved certain small, specialized displays—not the more common types of CDTs purchased by Plaintiffs.  This opinion should be excluded for a number of separate and independent reasons.

First, it contradicts the plain language of the Guilty Plea.  Although it is not uncommon for guilty pleas in price-fixing cases to be limited to specific products or customers, SDI's Guilty Plea contains no such limitations.  It never mentions Princeton Display Technologies, Inc., Telco International Corporation, UTI Technology, Inc. or Video Display Corporation.  Nor does it indicate that SDI only conspired to fix the price of small displays for use in specialized applications.  At his deposition, Dr. Rubinfeld essentially conceded that his opinion is not reliable and that he was just guessing Redacted

1 Redacted

2 ████

3   Dr. Rubinfeld claims that he was nevertheless able to identify the victims of SDI's admitted

4 price fixing, as set forth in SDI's Guilty Plea, by reviewing SDI's transactional data and determining

5 the customers to which SDI **shipped** CDTs in the United States during the Guilty Plea period.  Report

6 at ¶37, ¶28 and Ex. 5A to Report.  Dr. Rubinfeld did not, however, include customers that purchased

7 and paid for CDTs in the United States.  Report at ¶28 and Ex. 5A to Report; Redacted

8 ████████████████████████████████████████████

9 ████   Dr. Rubinfeld could not explain why sales that were billed to and paid for by U.S.

10 customers would not qualify as Redacted

11 ██████████ SDI Guilty Plea at ¶4(d), and further testified that he is Redacted

12 ████████████████████████████████████████████

13 ████████████████████████████████████████████

14 ██████

15   Yet, Dr. Rubinfeld did draw a line by ignoring CDT sales that were billed to, but not shipped

16 to, the United States.  *See* Rubinfeld Dep. at 123:6-11.  Based on this improper line-drawing, Dr.

17 Redacted

18 ████████████████████████████████████████████

19 ████████████████████████████████████████████

20 ████████████   Dr. Rubinfeld's opinions are premised on a plain misunderstanding of the

21 relevant legal standard, and would not only confuse and mislead the jury, but are demonstrably wrong.

22   SDI's own transactional data [3] shows that the four companies identified by Dr. Rubinfeld are

23 **not** the only companies which purchased CDTs from SDI in the United States during the 10-year

24 Guilty Plea period.  Redacted

25 ████████████████████████████████████████████

26 ████   Basic math shows that sales to Redacted were

27 _____

28 [3] SDI's transactional data is summarized in Exhibit 5A to Dr. Rubinfeld's Report.

necessarily part of the "CDT sales, directly affected by the conspiracy, to customers in the United States" implicated by SDI's Guilty Plea.  *See* SDI Guilty Plea at ¶4(d).

Dr. Rubinfeld's Report shows that SDI's sales to Redacted

Yet SDI admitted that its "CDT sales, directly affected by the conspiracy, to customers in the United States totaled approximately **$89 million**" during the Guilty Plea period.  SDI Guilty Plea at ¶4(d).  Thus, SDI's Guilty Plea necessarily involved sales to customers other than the four identified by Dr. Rubinfeld.  To the extent SEC and other purchasers of SDI's price-fixed CDTs passed overcharges on, downstream purchasers may be able to recover damages directly from SDI.[4]

Dr. Rubinfeld's opinion that SDI's Guilty Plea only involved four companies that purchased small, specialized displays cannot be squared with the plain language of SDI's Guilty Plea, SDI's transactional data or Dr. Rubinfeld's own purported methodology.  *See   Brooke Group*, 509 U.S. at 242 ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable records facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.") (citing *J. Truett Payne Co., Inc. v. Chrysler Motors Corp.*, 451 U.S. 557, 564-65 (1981)).

**3.  Dr. Rubinfeld's Opinions Regarding the "Potential Impact of SDI's Conduct on Prices and Output Sold to U.S. Customers" Should be Excluded**

Dr. Rubinfeld also intends to offer the unsupported opinion that Redacted

Dr. Rubinfeld's opinion is not based on the application of any scientific, technical, or other specialized knowledge.  Rather, Dr. Rubinfeld reviewed a subset of documents that were supplied by SDI's attorneys, and from this limited review, speculates about the "likely" impact of *SDI's* conduct on prices to U.S. customers.  In his opinion, the evidence was consistent with defendants' generally

---

[4]  Since these CDTs were first sold to a U.S. customer, they would fall squarely within the FTAIA's import commerce exception.

having had limited success.  Report at ¶11.  For example, there were many instances where SDI appeared to have "violated price and/or output limits that other codefendants may have believed were agreed to."  *Id.*

To be admissible, expert testimony must help the jury "understand the evidence or to determine a fact in issue."  *Daubert*, 509 U.S. at 591.  In this case, there is no question that SDI "participated in a conspiracy among major CDT producers, the primary purpose of which was to fix prices, reduce output, and allocate market shares of CDTs sold in the United States and elsewhere."  SDI Guilty Plea at ¶4(d).  Thus, the question before the jury is not whether SDI engaged in price-fixing or what impact SDI's individual conduct had, but whether and to what extent the overall price-fixing conspiracy resulted in overcharges to Plaintiffs.

As SDI's damages expert, Dr. Dennis Carlton, acknowledges, opining on the effects of a price-fixing conspiracy cannot be answered by simply reviewing documents; it requires Redacted
Dr. Rubinfeld did not engage in any sort of deeper economic analysis.  He did not study the structure or conditions of the CRT industry.  He did not review economic literature related to cartels.  Although he did review some documents, he was not looking at the behavior of the cartel as a whole, but rather, focused solely on SDI.  Finally, he did not perform any empirical analysis to measure the effect of the conspiracy, much less to measure the effect on particular Plaintiffs.  Redacted

Dr. Rubinfeld's opinion should also be excluded because it is based on a misapplication of the appropriate legal standard.  The jury will not be asked to decide what effect SDI's conduct, in isolation, had on prices to U.S. customers.  SDI is alleged to—and has admitted to— participating in a conspiracy "among major CDT producers" to fix the prices of CDTs.  SDI Guilty Plea at ¶4(c).  Thus, the relevant inquiry is not what effect ***SDI's conduct*** had on prices to U.S. customers, but instead, what effect the ***overall conspiracy*** "among major CDT producers" had on particular Plaintiffs' prices.

Redacted

MOTION TO EXCLUDE CERTAIN
OPINIONS OF DANIEL L. RUBINFELD

MASTER FILE NO. 3:07-CV-05944-SC
MDL NO. 1917 │ IND. CASE NO. 3:13-cv



If Plaintiffs prove that SDI was a member of the alleged conspiracy and that they purchased CDTs at artificially inflated prices from one of SDI's co-conspirators, SDI would be liable for those joint and several sales, even if it did not make the particular sale.  *See* Transcript of Final Jury Instructions at 3402, *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal. Aug. 29, 2013) ("each conspirator is fully liable for all of the damages caused by the acts of any other member of the conspiracy done pursuant to, or in furtherance of the conspiracy during the time it was a member of the conspiracy.").   As a professor of antitrust law, Dr. Rubinfeld should know this, yet nevertheless proceeded to analyze the impact of a single conspirator's conduct.

Allowing Dr. Rubinfeld to suggest that SDI's conduct had a limited or temporary effect, while ignoring the impact of the SDI's co-conspirators' conduct, would obfuscate the appropriate legal standard and confuse and mislead the jury.  *See Aventis Envtl. Sci. USA LP v. Scotts Co.*, 383 F. Supp. 2d 488, 515 (S.D.N.Y. 2005) ("At trial, Dr. Ordover must testify in a manner that does not run . . . the risk of confusing the jury as to the appropriate legal tests."); *Justice* v. *Carter*, 972 F.2d 951, 956 (8th Cir. 1992) ("The district court did not abuse its discretion in not admitting expert testimony which was based upon an inapplicable interpretation of the law."); *Carapellucci v. Town of Winchester*, 707 F. Supp. 611, 619-620 (D. Mass. 1989) (refusing to consider

18

an expert's opinion, which was based on a "faulty legal premise").  Dr. Rubinfeld's speculation about the *"likely" impact* of "SDI's conduct" on U.S. customers is based on any meaningful economic analysis and, moreover, ignores the legal standards that apply to this case.  Accordingly, his opinions are irrelevant, would not assist the jury and should be excluded. Fed. R. Evid. 702.

## CONCLUSION

For the reasons set forth above, Dr. Rubinfeld should not be permitted to give expert testimony at trial regarding the scope of SDI's Guilty Plea or "[t]he impact of SDI's conduct on prices to U.S. customers."

MOTION TO EXCLUDE CERTAIN
OPINIONS OF DANIEL L. RUBINFELD

MASTER FILE NO. 3:07-CV-05944-SC
MDL NO. 1917 │ IND. CASE NO. 3:13-cv

1

2

Respectfully submitted,

By:     /s/ Debra D. Bernstein
        Michael P.  Kenny, Esq. (*pro hac vice*)
        mike.kenny@alston.com
        Debra D.  Bernstein, Esq. (*pro hac vice*)
        debra.bernstein@alston.com
        Rodney J.  Ganske, Esq. (*pro hac vice*)
        rod.ganske@alston.com
        Matthew D.  Kent, Esq. (*pro hac vice*)
        matthew.kent@alston.com
        Elizabeth Helmer, Esq. (*pro hac vice*)
        elizabeth.helmer@alston.com

**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia  30309-3424
Tel: (404) 881-7000
Facsimile: (404) 881-7777

James M. Wagstaffe, Esq. (SBN 95535)
wagstaffe@kerrwagstaffe.com
**Kerr & Wagstaffe LLP**
100 Spear Street, 18th Floor
San Francisco, California 94105-1576
Tel: (415) 371-8500
Facsimile: (415) 371-0500

*Attorneys for Plaintiffs Dell Inc. and Dell Products L.P.*

/s/ Kenneth A. Gallo
Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON  LLP**
2001 K Street, NW
Washington, DC  20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kgallo@paulweiss.com
jsimons@paulweiss.com
cbenson@paulweiss.com

*Attorneys for Plaintiffs Sharp Electronics Corporation
and Sharp Electronics Manufacturing Company of
America, Inc.*

MOTION TO EXCLUDE CERTAIN
OPINIONS OF DANIEL L. RUBINFELD

MASTER FILE NO. 3:07-CV-05944-SC
MDL NO. 1917 | IND. CASE NO. 3:13-cv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Jason C. Murray*
Jason C. Murray (CA Bar No. 169806)
Robert B. McNary (CA Bar No. 253745)
**CROWELL & MORING LLP**
515 South Flower St., 40th Floor
Los Angeles, CA  90071
Telephone:  213-443-5582
Facsimile:  213-622-2690
jmurray@crowell.com
rmcnary@crowell.com

Jerome A. Murphy (*pro hac vice*)
Matthew J. McBurney (*pro hac vice*)
Astor H.L. Heaven *(pro hac vice)*
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  202-624-2500
Facsimile:  202-628-5116
jmurphy@crowell.com
mmcburney@crowell.com
aheaven@crowell.com

*Counsel for Plaintiffs Target Corporation and
ViewSonic Corporation*

*/s/ Samuel J. Randall*
Richard Alan Arnold
William J. Blechman
Kevin J. Murray
Samuel J. Randall
**KENNY NACHWALTER, P.A.**
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel: 305-373-1000
Fax: 305-372-1861
Email: rarnold@knpa.com
Email: wblechman@knpa.com
Email: kmurray@knpa.com

*Attorneys for Plaintiff Sears, Roebuck and Co. and
Kmart Corp*

MOTION TO EXCLUDE CERTAIN
OPINIONS OF DANIEL L. RUBINFELD

MASTER FILE NO. 3:07-CV-05944-SC
MDL NO. 1917 | IND. CASE NO. 3:13-cv

By: */s/ Kenneth S. Marks*
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
John P. Lahad
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email: kmarks@susmangodfrey.com
        jross@susmangodfrey.com
        jcarter@susmangodfrey.com
        dpeterson@susmangodfrey.com
        jlahad@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883
Email: pfolse@susmangodfrey.com
        rblack@susmangodfrey.com
        jconnors@susmangodfrey.com

*Attorneys for plaintiff Alfred H. Siegel, solely in his capacity as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

/s/  *Philip J. Iovieno*
Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY  12207
Telephone:  (518) 434-0600
Facsimile:  (518) 434-0665
Email:  piovieno@bsfllp.com
        anardacci@bsfllp.com

MOTION TO EXCLUDE CERTAIN
OPINIONS OF DANIEL L. RUBINFELD

MASTER FILE NO. 3:07-CV-05944-SC
MDL NO. 1917 ｜ IND. CASE NO. 3:13-cv

William A. Isaacson
Kyle Smith
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131
Email: wisaacson@bsfllp.com
Email: ksmith@bsfllp.com

Stuart Singer
**BOIES, SCHILLER & FLEXNER LLP**
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022
Email:  ssinger@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs and Attorneys for Plaintiffs Electrograph Systems, Inc., Electrograph Technologies, Corp., Office Depot, Inc., Compucom Systems, Inc., Interbond Corporation of America, P.C. Richard & Son Long Island Corporation, MARTA Cooperative of America, Inc., ABC Appliance, Inc., Schultze Agency Services LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC, and Tech Data Corporation and Tech Data Product Management, Inc.*

s/  *Scott N. Wagner*
Robert W. Turken
Scott N. Wagner
Mitchell E. Widom
**BILZIN SUMBERG MAENA PRICE & AXELROD   LLP**
1450 Brickell Ave, Suite 2300
Miami, FL 33131-3456
Tel:  305-374-7580
Fax:  305-374-7593
Email:   rturken@bilzin.com
            swagner@bilzin.com
            mwidom@bilzin.com

*Counsel for Plaintiffs Tech Data Corporation and Tech Data Product Management, Inc.*

MOTION TO EXCLUDE CERTAIN
OPINIONS OF DANIEL L. RUBINFELD

MASTER FILE NO. 3:07-CV-05944-SC
MDL NO. 1917 | IND. CASE NO. 3:13-cv