Vaughn R Walker
Law Office of Vaughn R Walker
P O Box 26250
San Francisco, CA  94126
Tel:  (415) 871-2888
Fax:  (415) 871-2890
vrw@judgewalker.com

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No 1917 |
| | Master Case No 3:07-cv-05944SC |
| This Relates to: | **SPECIAL MASTER'S REPORT AND RECOMMENDATION RE SETTLEMENT** |
| Order Filed 11/17/2014 | |

In accordance with the mandate of the *Manual for Complex Litigation 4th*, ¶10.13 at 12 (Federal Judicial Center 2004) "periodically [to] monitor[] the progress of the litigation" and the court's case management authority to "facilitat[e] settlement" pursuant to FRCP 16(a)(5), the court has directed the undersigned to report on the status of settlement efforts in the above litigation and to make such recommendations that may assist the parties in reaching settlements where appropriate. Order filed 11/17/14, Doc 3118. This responds to that directive.

Presently, the court and parties face imminent dates for hearing and reaching decisions on a large number of summary judgment motions accompanied by voluminous submissions as well as pretrial and trial dates shortly after the first of the year. Many additional pretrial motions, such as motions *in limine*, trial scheduling and bifurcation of issues and parties can be expected and, if filed, will have to be argued and decided. In addition, numerous discovery issues remain to be resolved and discovery continues even though the discovery cut-off has passed. The task ahead for both the parties and the court is daunting. Although settlements are unlikely to resolve all claims and issues in this massive litigation, settlements of some claims should streamline the litigation that remains.

Some significant settlements have already been achieved. The direct purchaser plaintiff ("DPP") class have resolved substantially all their claims. Final approval for all but two defendants and the claims process has been granted by the court. Unfortunately, some of the DPP settlements have been complicated by uncertainty about membership in the class, an issue now before the court and one that could lead to appellate review. Nonetheless, the DPP settlements have materially reduced the scope of this litigation. For purposes of this report, the significance of the DPP settlements is that despite the complex fact issues in the DPP litigation and the legal uncertainties the parties in all the CRT cases face, about which more will be said presently, experienced and highly competent counsel on both sides of the DPP cases have been able to work through these difficult issues to a resolution.

In addition, some of the direct action plaintiff ("DAP") cases have settled and counsel in a number of DAP cases are fruitfully engaged in settlement discussions. Achieving settlements of the indirect purchaser plaintiff ("IPP") class cases has proven more difficult. Two

problems, in particular, have been obstacles to settlement in the IPP cases.  Both issues are matters that have already come to the court's attention, although perhaps in different contexts and, therefore, the implications of these developments for settlement may not have been apparent to the court.

First, as previously related directly to the court, there has been a lack of "meaningful coordination" of fact and expert discovery by the IPPs' lead counsel and the California Attorney General's Office ("Cal AG").  *See e g, In re CRT Antitrust Litigation*, No 3:07-cv-5944-SC, MDL No 1917, Varanini Declaration, Doc 2859 at 2-3, filed September 18, 2014 (ND Cal).  The Cal AG is pursuing *parens patriae* claims on behalf of California "natural persons" in San Francisco superior court against essentially the same defendants as are named in this court by the IPPs.  *See* Cal Bus & Prof Code, §16760.  In most instances, where there has been parallel *parens patriae* litigation brought by the Cal AG and indirect purchaser class litigation, the Cal AG has been able to coordinate her litigation in state court with litigation on behalf of the IPPs in federal court thereby avoiding duplication of effort and unnecessary expense.[1]

In this litigation, however, the Cal AG and IPPs' lead counsel have been unable to reach an accommodation to avoid these difficulties.  Hence the extent of releases afforded by settlement of the Cal AG's claims is a matter in dispute.  The Cal AG and IPPs' lead counsel are presently litigating these issues in state court with attendant distraction of their respective efforts.[2]  These issues have already been presented to this court.  But the point for purposes of this report is that the inability of IPP lead counsel and counsel for the Cal AG to resolve their respective responsibilities has opened up a new front of conflict that in most cases involving indirect purchaser and *parens patriae* claims has been avoided.

Coordination of the *parens patriae* action would assist not only this court, but would assist the state court, as well.  See, e g, the state court's case management order, dated

---

[1] *See e g, In re TFT-LCD (Flat Panel) Antitrust Litigation*, No 3:07-md-1827SI, Indirect Purchaser Plaintiffs' and Settling States' Joint Motion to Appoint Fund Administrator and Distribute Settlement Fund, Doc 9217, filed 9/12/14 (ND Cal 2014), Attachment A.

[2] *See e g, The State of California et al v Chungwha Picture Tubes Ltd*, No CGC-11-515786, Sur-Reply of Objector Figone in Opposition to Motion for Final Approval of Philips Settlement, filed 11/27/13 (Superior Court for the State of California), Attachment B.

November 12, 2014, Attachment C.  Uncertainty about the relationship of the *parens patriae* claims and the IPP claims has been exacerbated by the Ninth Circuit's recent decision in *California v Intelligender, LLC*, __ F3d __, 2014 WL 5786718 (9 Cir 2014), thus compounding the difficulties created by the lack of coordination between IPP lead counsel and the Cal AG.

Second, preparing for trial of the IPP claims is particularly complex, involving as it does the sometimes inconsistent laws of many states and the problems of tracing alleged damages through the distribution chain to the indirect purchasers.  It is understandable that attention of IPP lead counsel to settlement may have taken a back seat to trial preparation.  By the same token, fast approaching pretrial and trial dates, as those in this litigation, are usually conducive to settlements or, at least, serious settlement discussions.  With one notable exception, however, IPP lead counsel has made little progress in the face of these looming deadlines.  Furthermore, the IPP settlement discussions that the undersigned has been privy to do not appear to have been pursued with the degree of earnestness required to produce results.  This most likely is the product not of a lack of good intentions, but rather of the IPP settlement team being understaffed in the face of the demands of getting ready for trial.

Hence, the undersigned recommends that the IPP team be augmented to explore settlement and to resolve the outstanding issues with the Cal AG.  Although IPP lead counsel should welcome the needed assistance, he may well oppose this recommendation as it would represent a dilution of his hitherto undiluted authority over the IPP cases.  Should that occur, the court should most certainly fully hear IPP lead counsel and consider his views thoughtfully.  A prior draft of this recommendation was furnished IPP lead counsel on November 19, 2014.  All other parties should also be invited to weigh in on this recommendation.

Notwithstanding possible opposition by IPP lead counsel and possibly others, the undersigned believes that the appointment of a committee of IPP counsel to deal with settlement is warranted.  Such a committee is particularly called for where, as here, "group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making." *Manual for Complex Litigation, 4th*, ¶10.221 at 25.  Perhaps as many as fifty counsel have brought IPP claims.  Achieving consensus among that number of lawyers with

widely disparate client interests requires coordination beyond the time and capability of any one lawyer, despite that lawyer's capability and dedication.  This recommendation does not entail replacing lead IPP counsel, but rather calls for augmenting the IPP team so that adequate attention and effort can be devoted to settlement.

Accordingly, in order for the settlement process to move forward, the undersigned RECOMMENDS that the court appoint additional lawyers from the ranks of those who represent IPPs to assume the laboring oar in seeking to coordinate IPP claims with the *parens patriae* claims of the Cal AG and in settlement negotiations.  Because of the obvious need to coordinate settlement efforts with trial preparation and because of the substantial experience and efforts of IPP lead counsel, the undersigned RECOMMENDS that two experienced and able counsel representing indirect purchaser plaintiffs be assigned to work with IPP lead counsel.  Two such counsel have presented themselves and expressed willingness to assume these responsibilities:  Francis O Scarpulla and Josef D Cooper.  Both are well known to the undersigned through many years of experience in the antitrust bar and have already done substantial work in this litigation.  Messrs Scarpulla and Cooper participated constructively and effectively in negotiating settlements on behalf of indirect purchasers in the TFT-LCD litigation before Judge Illston, which the undersigned mediated and in the DRAM Litigation before Judge Hamilton.  It is recommended that Messrs Scarpulla and Cooper work with IPP lead counsel as a three-person committee to deal with settlement and coordination with the Cal AG.

The undersigned has considered alternatives to this recommendation.  One such alternative would be for the court to order the parties to mediation.  While that sometimes proves effective in other cases, its effectiveness in this litigation is questionable.  The number of lawyers who play important roles and their various client interests would make omnibus mandated mediation sessions unwieldy and not likely to prove fruitful.  Furthermore, of course, a mandated mediation will not likely resolve the lack of coordination between IPP lead counsel and the Cal AG.  Another alternative would be for the court simply to push ahead with trial preparation and let settlements take their own course.  In addition to complicating the court's case management tasks, such an approach would disserve the parties.  The claims at bar are

substantial, the facts out of which they arose are complex and the applicable laws are manifold and, in some significant respects, unsettled.  Compare, *Motorola Mobility LLC v AU Optronics Corp*, ___ F3d ___ 2014 WL 6678622 (7 Cir 2014) with *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2012-2 Trade Cases ¶78,031, 2012 WL 3276932 (N D Cal 2012).  These are circumstances that often make settlement sensible for parties on both sides of a case.  Hence, I believe there are realistic prospects for significant settlements in this litigation.  It would be unfortunate for those prospects not to be energetically pursued by lawyers who have demonstrated the capability to achieve significant settlements in similar litigation and to work cooperatively with the Cal AG.

IT IS THEREFORE RECOMMENDED that Francis O Scarpulla and Josef D Cooper be designated as co-lead counsel for the IPPs to work with IPPs' lead counsel as a committee for the purpose of assisting in the coordination of this litigation with related state court litigation and in negotiation of settlement of such actions as appropriate and to assist IPPs' lead counsel in his trial preparation efforts.  The court should invite IPP lead counsel and any party that wishes to do so to comment on or oppose this recommendation within a time period convenient to the court's schedule and, of course, to consider any such views that are presented.

IT IS SO RECOMMENDED.

DATED:  December 12, 2014

_____
Vaughn R Walker
Special Master, United States District Judge (Ret)