# EXHIBIT 15

# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE (212) 373-3000

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU, CHAOYANG DISTRICT
BEIJING 100020, PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
PO BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(202) 223-7343

WRITER'S DIRECT FACSIMILE
(202) 223-7410

WRITER'S DIRECT E-MAIL ADDRESS
cbenson@paulweiss.com

PARTNERS RESIDENT IN WASHINGTON

DAVID J. BALL / JANE B. O'BRIEN
CRAIG A. BENSON / ALEX YOUNG K. OH
PATRICK S. CAMPBELL / JOSEPH J. SIMONS
CHARLES E. DAVIDOW / ALEXANDRA M. WALSH
KENNETH A. GALLO / BETH A. WILKINSON
MARK F. MENDELSOHN

PARTNERS NOT RESIDENT IN WASHINGTON

MATTHEW W. ABBOTT*, ALLAN J. ARFFA, ROBERT A. ATKINS*, JOHN F. BAUGHMAN*, LYNN B. BAYARD*, DANIEL J. BELLER, MITCHELL L. BERG*, MARK S. BERGMAN, BRUCE BIRENBOIM*, H. CHRISTOPHER BOEHNING*, ANGELO BONVINO*, JAMES L. BROCHIN, RICHARD J. BRONSTEIN, DAVID W. BROWN*, SUSANNA M. BUERGEL*, JESSICA S. CAREY*, JEANETTE K. CHAN*, YVONNE Y. F. CHAN*, LEWIS R. CLAYTON, JAY COHEN, KELLEY A. CORNISH*, CHRISTOPHER J. CUMMINGS*, DOUGLAS R. DAVIS*, THOMAS V. DE LA BASTIDE III*, ARIEL J. DECKELBAUM*, ALICE BELISLE EATON*, ANDREW J. EHRLICH*, GREGORY A. EZRING*, LESLIE GORDON FAGEN, MARC FALCONE*, ROSS A. FIELDSTON*, ANDREW C. FINCH, BRAD J. FINKELSTEIN*, BRIAN P. FINNEGAN*, ROBERTO FINZI, PETER E. FISCH*, ROBERT C. FLEDER, MARTIN FLUMENBAUM, ANDREW J. FOLEY*, HARRIS B. FREIDUS*, MANUEL S. FREY*, ANDREW L. GAINES*, MICHAEL E. GERTZMAN*, ADAM M. GIVERTZ*, SALVATORE GOGLIORMELLA*, ROBERT D. GOLDBAUM*, NEIL GOLDMAN*, ERIC S. GOLDSTEIN*, ERIC GOODISON*, CHARLES H. GOOGE, JR.*, ANDREW G. GORDON*, UDI GROFMAN*, NICHOLAS GROOMBRIDGE*, BRUCE A. GUTENPLAN*, GAINES GWATHMEY III, ALAN S. HALPERIN*, JUSTIN G. HAMILL*, CLAUDIA HAMMERMAN*, GERARD E. HARPER, BRIAN S. HERMANN*, ROBERT M. HIRSH, MICHELE HIRSHMAN*, MICHAEL S. HONG*, DAVID S. HUNTINGTON*, LORETTA A. IPPOLITO*, JAREN JANGHORBANI*

MEREDITH J. KANE*, ROBERTA A. KAPLAN*, BRAD S. KARP*, PATRICK N. KARSNITZ*, JOHN C. KENNEDY*, BRIAN KIM*, ALAN W. KORNBERG, DANIEL J. KRAMER*, DAVID K. LAKHDHIR*, STEPHEN P. LAMB*, JOHN E. LANGE, DANIEL J. LEFFELL*, XIAOYU GREG LIU*, JEFFREY D. MARELL*, MARCO V. MASOTTI*, EDWIN S. MAYNARD*, DAVID W. MAYO*, ELIZABETH R. McCOLM*, WILLIAM B. MICHAEL*, TOBY S. MYERSON*, CATHERINE NYARADY*, BRAD R. OKUN*, KELLEY D. PARKER*, MARC E. PERLMUTTER*, VALERIE E. RADWANER*, CARL L. REISNER, WALTER G. RICCIARDI*, WALTER RIEMAN*, RICHARD A. ROSEN, ANDREW N. ROSENBERG*, JACQUELINE P. RUBIN*, RAPHAEL M. RUSSO*, JEFFREY D. SAFERSTEIN*, JEFFREY B. SAMUELS*, DALE M. SARRO, TERRY E. SCHIMEK, KENNETH M. SCHNEIDER*, ROBERT B. SCHUMER*, JAMES H. SCHWAB*, JOHN M. SCOTT*, STEPHEN J. SHIMSHAK*, DAVID R. SICULAR*, MOSES SILVERMAN, STEVEN SIMKIN*, MARILYN SOBEL, AUDRA J. SOLOWAY*, SCOTT M. SONTAG*, TARUN M. STEWART*, ERIC ALAN STONE*, AIDAN SYNNOTT*, ROBYN F. TARNOFSKY*, MONICA K. THURMOND*, DANIEL J. TOAL*, LIZA M. VELAZQUEZ*, MARIA T. VULLO*, LAWRENCE G. WEE*, THEODORE V. WELLS, JR., STEVEN J. WILLIAMS*, LAWRENCE I. WITDORCHIC*, MARK B. WLAZLO*, JULIA TM WOOD, JORDAN E. YARETT*, KAYE N. YOSHINO*, TONG YU*, TRACEY A. ZACCONE*, T. ROBERT ZOCHOWSKI, JR.*

*NOT AN ACTIVE MEMBER OF THE DC BAR

July 28, 2014

By Email

Hon. Vaughn R. Walker (Ret.)
c/o Mr. Jay Weil
Federal Arbitration, Inc.
288 Hamilton Avenue, 3rd Floor
Palo Alto, California 94301
jay.weil@fedarb.com

*In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, Master Case No. 3:07-cv-05944-SC

Dear Judge Walker:

        Plaintiffs[1] seek here to compel production of certain responsive documents from Thomson SA that are located in France and for Thomson SA to produce a competent 30(b)(6) deposition witness educated on the basis of information residing in France. Thomson SA, a known participant in a worldwide conspiracy to fix the prices of

---

[1] Plaintiffs as used herein refers to all Direct Action Plaintiffs (except Dell and CompuCom, which have not named Thomson SA as a defendant).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Vaughn R. Walker                                                                                          2

CRTs, is withholding documents and testimony on the basis of a rarely enforced French "Blocking Statute" designed specifically to frustrate U.S. discovery efforts.[2] Numerous courts have rejected Thomson's position and this one should too.

**Background.** In December 2012, the European Commission fined Thomson SA millions of Euros for participating in what the EC referred to as one of the most organized global cartels it had ever observed, to fix the price for color picture tubes. After months and months of litigation, Sharp successfully brought Thomson SA and its U.S. subsidiary, Thomson Consumer, into this case on March 13, 2014. At that time, the Court ruled that Sharp had established personal jurisdiction over Thomson SA by demonstrating that it specifically participated in anticompetitive conduct aimed at the U.S. CRT industry. Thereafter, numerous other plaintiffs also sued Thomson SA and Thomson Consumer.

As of April 29, 2014 – a mere 129 days from the September 5, 2014 fact discovery deadline – neither Thomson SA nor its U.S. subsidiary had produced a single document in response to a discovery request in this case.[3] Nonetheless, Thomson lobbied to be placed on the same case schedule as other defendants, which meant plaintiffs' experts had to opine on Thomson's liability and damages with scarcely any discovery from Thomson. As part of this arrangement, Thomson had committed that it would produce its documents in short order and that it would specifically seek to cooperate with plaintiffs with respect to facilitating discovery from France – an issue that the plaintiffs had raised affirmatively. Eager themselves to proceed with a prompt trial – so long as they were not getting shortchanged in discovery – plaintiffs stipulated to add Thomson SA and Thomson Consumer to the current case schedule on the strength of Thomson's representation that discovery would be prompt and efficient. Dkt. No. 2550. This stipulation memorialized Thomson's representations that it would make "best efforts to make documents and witnesses available . . . if legally possible, without resort to Hague Convention procedures, as soon as is reasonably possible . . . ." *Id.* at 4.

It did not take long for Thomson to change its tune on its French documents. After getting access to plaintiffs' full complement of expert materials, counsel for Thomson took the position that it was barred from producing a single document in France due to the French Blocking Statute. (It appears that the basis for this position is, in part, a March 2008 letter from the Ministry of French Foreign Affairs, which was specifically elicited by Thomson's counsel in February 2008, in connection with discovery requests from this very MDL.) Ex. 1 (July 22 letter from counsel for Thomson SA). As a result, counsel for Thomson SA has not even familiarized itself with the documents located in France. To wit, as of July 22, it could not make a representation to counsel for Sharp regarding how many responsive documents there were in France or the extent to which they were duplicative of materials in the United States. *Id.*

---

[2] Law No. 68-678 of 27 July 1968, amended by Law No. 80-538.

[3] Thomson had produced some limited transactional data, pursuant to subpoena.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Vaughn R. Walker                                                                                     3

Furthermore, Thomson SA has taken the position that it will only provide a 30(b)(6) witness to testify about any information not barred by the French Blocking Statute. *Id.* To the extent that Thomson SA purports that the statute prevents the disclosure of any "information of an economic, commercial or technical nature," the testimony of such a witness would be meaningless.

Counsel for plaintiffs met and conferred with Thomson SA about their refusal to produce documents or information from France and are at impasse. We thus request an order compelling Thomson SA to produce a competent 30(b)(6) witness and documents regarding four basic categories of information, tailored to plaintiffs' most pressing needs in the litigation. Those are, specifically, documents and testimony that:

(1) relate to communications or meetings between Thomson SA and competitors;[4]

(2) relate to the Court's general or specific personal jurisdiction over Thomson SA;[5]

(3) relate to the disposition of Thomson SA's CRT business;[6] or

(4) were produced to the European Commission in the course of its investigation of a global CRT conspiracy.[7]

Each of these categories of documents is crucial to the plaintiffs' ability to demonstrate Thomson's role in the CRT conspiracy and the Court's jurisdiction over Thomson SA.

## I.     The Federal Rules Require Thomson SA to Produce Relevant, Responsive Documents and a Competent 30(b)(6) Witness

The materials plaintiffs seek are properly discoverable under the generous standards of Rule 26. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery for any nonprivileged matter that is relevant to any party's claim or defense . . . .").[8]

---

[4] DAPs' First Set of Requests for Production to Thomson SA ("Requests") Nos. 3-5; Notice of Deposition of Thomson SA Pursuant to Fed. R. Civ. P. 30(b)(6) ("Notice") Nos. 1, 2, 5, 6, 9.

[5] Requests Nos. 36-37, 46-60; Notice Nos. 13, 14, 20, 21, 24, 25, 31.

[6] Requests Nos. 33, 35; Notice Nos. 34, 35.

[7] Requests No. 42. While this request also asked for production of documents to Thomson SA from the European Commission, plaintiffs do not seek to compel production of those documents at this time. This motion seeks only those documents that Thomson SA produced to the European Commission. Notice No. 4.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Vaughn R. Walker 4

Plaintiffs seek here production of two categories of information relating specifically to the substance of their antitrust claims: (1) documents that Thomson produced to the European Commission in connection with its investigation of the CRT conspiracy; and (2) documents relating to communications and meetings between Thomson SA and other members of the conspiracy. Courts regularly hold these types of documents to be relevant in antitrust cases like this one. *See In re Urethane*, 261 F.R.D. at 574-75 (compelling production of documents "relating to meetings or communications with any of the other defendants" over relevance and overbreadth objections). Other defendants have already produced any such documents that they have located, in their possession. *See, e.g.*, Samsung SDI's Second Supplemental Responses to Direct Plaintiffs' First Set of Interrogatories, Nos. 4 and 5, Response No. 5.

Additionally, plaintiffs seek information showing the relationship between Thomson SA and Thomson Consumer. This information is discoverable under the Federal Rules of Civil Procedure because it is relevant to any defense that Thomson SA plans to raise regarding the Court's jurisdiction over Thomson SA. In particular, the information sought is relevant to the extent Thomson SA was related to or controlled Thomson Consumer and/or to the extent that Thomson SA acted through Thomson Consumer in the United States, including whether and how Thomson SA personnel acted in the United States. The requested categories of documents are relevant to rebut any arguments that Thomson SA did not have sufficient minimum contacts within the United States for the court to exercise general or specific personal jurisdiction.[9]

Finally, plaintiffs seek information regarding the disposition of Thomson SA's business to its successor – including Thomson SA's retention of an ownership interest in that successor. This information bears directly on Thomson SA's defense that

---

[8] Broad discovery is "particularly appropriate" in antitrust cases because "'broad discovery may be needed to uncover evidence of invidious design, pattern, or intent.'" *In re Urethane Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009) (quoting *B–S Steel of Kan., Inc. v. Tex. Indus., Inc.*, No. 01–2410, 2003 WL 21939019, at *3 (D. Kan. July 22, 2003)); *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL–1426, 2004 U.S. Dist. Lexis 29160, at *8 (E.D. Pa. Oct. 29, 2004) ("Broad discovery is permitted because direct evidence of an anticompetitive conspiracy is often difficult to obtain, and the existence of a conspiracy frequently can be established only through circumstantial evidence, such as business documents and other records").

[9] In its Answer to Sharp's First Amended Complaint, Thomson SA states that plaintiffs' claims should be dismissed "because this Court lacks personal jurisdiction over Thomson SA." Answer of Thomson SA to Sharp's First Amended Complaint at 17, *Sharp Electronics Corporation, et al. v. Technicolor SA, et al.*, 13-cv-01173 (Dkt. No. 114). If Thomson SA concedes that this court has personal jurisdiction over it, then the requested documents are unnecessary; however, to the extent that Thomson SA intends to rely on a jurisdictional defense based on materials in the record, these materials are clearly discoverable under Federal Rule of Civil Procedure 26.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Vaughn R. Walker 5

it withdrew from and did not fraudulently conceal the existence of this massive global conspiracy. *See* Dkt. 2440 at 19-22 (rejecting Thomson SA's arguments that it had withdrawn from the conspiracy and did not fraudulently conceal the conspiracy); *In re Rubber Chemicals Antitrust Litig.*, 504 F. Supp. 2d 777, 788 n.9 (N.D. Cal. 2007) (stating that fraudulent concealment is best addressed at the summary judgment stage).

As with the documents sought by plaintiffs, Fed. R. Civ. P. 30(b)(6) provides that a deposition notice may name a corporation as a deponent and that "named organization must designate one or more" individuals to competently testify as to "information known or reasonably known to the organization." Fed. R. Civ. P. 30(b)(6). Thomson SA's representation that its 30(b)(6) will not testify as to any "economic, commercial, or technical" information in France is a dereliction of its duty to provide an educated 30(b)(6) witness. *See* Ex. 1 (July 22 letter from counsel for Thomson SA).

## II. Foreign Law Does Not Override Thomson SA's Discovery Obligations

Thomson SA has taken the position that the French Blocking Statute prevents it from producing responsive documents located in France or permitting testimony about information originating in France, and that, in order to get any such documents or testimony, the plaintiffs must seek redress under the Convention on the Taking of Evidence Abroad in Civil and Commercial Matters ("Hague Convention"). Courts have rejected this argument time and again. *See, e.g.*, *In re Air Cargo Shipping Svcs. Antitrust Litig.*, 278 F.R.D. 51, 55 (E.D.N.Y. 2010) (granting a motion to compel production of documents despite French Blocking Statute); *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 310 (N.D. Ill. 1997) (same). This one should too. Foreign companies that subject themselves to personal jurisdiction in the United States by targeting United States consumers for price-fixing should not be entitled to special treatment because they are from a country that has passed laws designed to interfere with appropriate U.S. litigation.

As a threshold matter, Thomson bears the burden of demonstrating that Hague Convention procedures should supplant the Federal Rules of Civil Procedure. *See, e.g.*, *Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 300, 305 (3d Cir. 2004); *Schindler Elevator Corp. v. Otis Elevator Co.*, 657 F. Supp. 2d 525, 529 (D.N.J. 2009); *In re Vitamins Antitrust Litig.*, 120 F. Supp. 2d 45, 51 (D.D.C. 2000) ("most courts have placed this burden on the party seeking to require first-use of the Convention"); *Valois of Am., Inc. v. Risdon Corp.*, 183 F.R.D. 344, 346 (D. Conn. 1997); *Doster v. Schenk A.G.*, 141 F.R.D. 50, 51–52 (M.D.N.C.1991) ("[I]t is more practical, if not logical, to place the burden of persuasion on the proponent of using the Hague Convention."). It has not – and cannot – do so here.

Of course, the mere existence of the Hague Convention procedures does not "require American courts to engraft a rule of first resort onto the Hague Convention." *Société Nationale Industrielle Aérospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 544 n.29 (1987). Instead, courts facing conflict

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Vaughn R. Walker                                                                                                          6

between the discovery obligations of Rule 26 and foreign law apply the five-factor test set forth in *Aérospatiale* to determine which procedures govern, which examines:

> (1) The importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Aérospatiale*, 482 U.S. at 544 n.28. The third factor is not relevant here, because Sharp is only seeking materials that are not already in the United States. All other factors weigh heavily in favor of compelling Thomson SA to produce responsive documents and testimony under U.S. law and procedure.

***Prong 1: Plaintiffs have requested only information central to their case.*** Where, as here, "information and testimony sought by plaintiffs are highly relevant and important to the claims and defenses in th[e] action . . . this first factor weighs heavily in [movant's] favor." *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429, 440 (E.D.N.Y. 2008). As noted above, plaintiffs cannot thoroughly prosecute their antitrust claims against Thomson SA without the information that they have requested. First, documents reflecting or relating to communications or meetings between Thomson SA and other CRT manufacturers (and testimony on the same subject) bear directly on Thomson SA's liability for harm plaintiffs suffered as a result of the conspiracy. Plaintiffs have alleged that Thomson SA participated in a global CRT conspiracy by meeting and/or communicating with competitors. Although plaintiffs know about many such meetings and communications from documents produced by other defendants, they cannot be certain that their information is complete, because, for example, many documents bore instructions to "destroy after reading." *E.g.*, TSB-CRT-00041746, MTPD-0410018.

Second, documents and information relating to Thomson SA's relationship with Thomson Consumer is crucial should Thomson SA again seek to argue that the Court lacks personal jurisdiction over it. Without discovery of documents from Thomson SA regarding its relationship with Thomson Consumer and the U.S. market, plaintiffs' ability to demonstrate the Court's jurisdiction over Thomson SA would be unfairly restricted.

Third, documents and information regarding Thomson's disposition of its CRT business is critical. Thomson SA sold its CRT business in 2005 to an Indian company called Videocon; that company – though properly served by Sharp – has defaulted and has not produced any discovery. Its U.S. CRT business was sold to

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Vaughn R. Walker                                                                                                 7

Technologies Displays Americas – a company that has since exited the CRT business entirely and whose entire production in this case totaled 56 documents.

And fourth, documents and information that Thomson SA produced to the European Commission relates to the same CRT actors and conduct alleged in this case. *See* Ex. 2 (Summary of European Commission decision); *In re Payment Card Interchange*, No. 05-MD-1720 (JG)(JO), 2010 WL 3420517 at *5 (E.D.N.Y. Aug. 27, 2010) (finding documents from a European Commission investigation "plainly relevant" to U.S. antitrust claims); *In re Air Cargo*, 278 F.R.D. at 52 (finding that documents produced during a government investigation were likely to "prove to be important to the prosecution of the plaintiffs' claims").

Accordingly, this first factor weighs heavily in favor of production.

***Prong 2: Plaintiffs request specific information.*** We seek only documents and testimony related to four specific categories: (1) Thomson SA's meetings with competitors regarding CRTs, (2) facts related to personal jurisdiction over Thomson SA, (3) the disposition of Thomson SA's CRT business, and (4) Thomson SA's production to the European Commission. Courts have held that each of these categories is adequately narrow such that production should be compelled. *See In re Rubber Chemicals Antitrust Litig.*, 486 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (holding that a request for documents related to investigations by foreign bodies was sufficiently specific); *Credit Lyonnais*, 249 F.R.D. at 441 (holding that "[i]nformation [necessary] to establish liability" was narrowly tailored and specific); *Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. De Equip. Medico*, No. 07-CV-309-L, 2008 WL 81111, at *5 (S.D. Cal. Jan. 8, 2008) (holding that jurisdictional discovery was adequately narrow and even less intrusive than merits discovery). Accordingly, this factor weighs in favor of compelled production.

***Prong 4: Alternative means of acquiring the information are not feasible.*** It is well understood that in antitrust cases such as this, "the proof is largely in the hands of the alleged conspirators." *Poller v. CBS*, 368 U.S. 464, 473 (1962). Plaintiffs therefore have no practical means of acquiring the information they require to prosecute their claims against Thomson SA except through the procedures set forth in Rule 26.

With the fast-approaching discovery deadline of September 5, the Hague Convention procedures are effectively unavailable to plaintiffs as an alternative means. As courts have recognized, "the outcome of a request pursuant to the Convention is by no means certain, and making the request will undeniably result in delays of unknown, and perhaps considerable, duration." *In re Air Cargo*, 278 F.R.D. at 53; *see also In re Aircrash Disaster*, 172 F.R.D. at 310 (describing Hague Convention procedures as "an

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Vaughn R. Walker 8

unnecessary, complicated, time consuming, and expensive means of discovery, thus thwarting the interests of our court system.").[10]

**Prong 5: Enforcing U.S. antitrust laws against a known conspirator outweighs any legitimate purpose of the Blocking Statute.** The Supreme Court has observed that enforcement of antitrust laws is of "fundamental importance to American democratic capitalism." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985). Civil antitrust cases brought by private litigants are a "critical tool for encouraging compliance with the country's antitrust laws." *In re Air Cargo*, 278 F.R.D. at 54. Plaintiffs' effective prosecution of their antitrust claims, therefore, reflect significant U.S. interests.

The Blocking Statute, on the other hand, has been described by courts as a means of providing French citizens with "tactical weapons and bargaining chips in foreign courts." *Bodner v. Banque Paribas*, 202 F.R.D. 370, 375 (E.D.N.Y. 2000). Accordingly, "[c]ourts that have addressed the issue have held that the Hague Evidence Convention is inapplicable to a French defendant resisting document production in an American lawsuit." *Crystal Cruises, Inc. v. Rolls-Royce PLC*, No. 10-24607, 2011 WL 11555506, at *1 (S.D. Fla. Nov. 8, 2011). And the fact that Thomson SA appears to have gratuitously elicited a letter from the French authorities does not suggest that they have discharged any burden of showing that French law should supplant U.S. law regarding discovery here. The court in *Strauss v. Credit Lyonnais, S.A.*, 249 F.R.D. 429 (E.D.N.Y. 2008), examined and rejected a similar letter. It commented that, like here, the letter from the French authority did "little more than generally state its interest in sovereignty and . . . that French civil and criminal laws prohibit [defendants] from disclosing at least some of the information in dispute here." *Id.* at 448. It thus ordered that the documents be produced from France without recourse to the Hague Convention. *Id.* at 456. The same result is appropriate here. Here, the French Blocking Statute serves an even more insidious purpose, since the relevant regulators in Europe have already concluded that Thomson SA participated in a worldwide conspiracy to fix the prices of CRTs.

---

[10] Conscious of the upcoming discovery deadline and Thomson SA's position that the Hague Convention governs Direct Action Plaintiffs' Requests for Production of Documents, plaintiffs have alternatively moved this Court for an order permitting the commencement of Hague Procedures to acquire the evidence necessary to effectively prosecute its case against Thomson SA. That request is without prejudice to this positions taken here that the Federal Rules of Civil Procedure should apply, and with full knowledge that resorting to the Hague Procedures "is by no means certain, and making the request will undeniably result in delays of unknown, and perhaps considerable, duration." *In re Air Cargo*, 278 F.R.D. at 53. Out of an abundance of caution, however, plaintiffs have made that alternative request.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Vaughn R. Walker                                                                                       9

          **Conclusion.** Fact discovery is set to close in this case on September 5, 2014. The time for playing games must end. For the reasons explained above, plaintiffs respectfully request that the Court order Thomson SA to produce a competent 30(b)(6) witness that will testify as to topics 1, 2, 4, 5, 6, 9, 13, 14, 20, 21, 24, 25, 31, 34, and 35; and also produce all documents in France located based on reasonable search, responsive to requests 3-5, 33, 35-37, 42, and 46-60.

          Very truly yours,

          */s/ Craig A. Benson*

          Craig A. Benson

          *Counsel for Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. on behalf of Direct Action Plaintiffs*