# EXHIBIT 17

FaegreBD.com   **FAEGRE BAKER DANIELS**   USA ᐧ UK ᐧ CHINA

**Kathy L. Osborn**
*Partner*
kathy.osborn@FaegreBD.com
Direct **+1 317 237 8261**

Faegre Baker Daniels LLP
300 North Meridian Street ᐧ Suite 2700
Indianapolis ᐧ Indiana 46204-1750
Phone **+1 317 237 0300**
Fax **+1 317 237 1000**

November 25, 2014

**VIA ELECTRONIC MAIL**

Mr. Craig Benson
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street NW
Washington, DC 20006-1047
(202) 223-7343
cbenson@paulweiss.com

Re:   Document production and search terms in MDL No. 1917

Craig:

I am responding to your letter from yesterday requesting additional information in order to assist Thomson SA with identifying reasonable supplemental search terms. I also respond to Norman Pentelovitch's email from yesterday concerning Thomson SA's production from earlier this month.

Response to your November 24, 2014 letter

You asked for additional detail regarding the size and content of the Working Data Set so that you might help Thomson SA develop reasonable searches to apply to the data. Thomson SA's vendor processed approximately 16 million items. Of these, approximately 3.4 million (or 880 GB) are productivity files (PDF, Word, PowerPoint, Excel, and email messages). Limiting documents to the Relevant Period minimally reduced the universe of documents to 3.35 million files (870 GB). Finally, de-duplication brought the Working Data Set down to approximately 2.35 million files (670 GB). Please note that these counts include parent-level documents only. So an email and three attachments count as a single item. Let me also emphasize again that this universe of documents contains enormous quantities of CRT non-relevant data as well as documents already produced.

You also asked about the source of files in the Working Data Set. I understand documents in the Working Data Set were collected from a very large file store used generally by Thomson SA employees, a Microsoft Exchange Server, a Lotus email server, and from Agnes Martin, Didier Trutt, Emeric

Craig Benson -2- November 25, 2014

Charamel, Xavier Bonjour, Christian Lissorgues, Christian Bozzi, Olivier Cassanova, Fredric Jarsaillon, and the CRT group generally.

Now that you have this additional detail regarding the Working Data Set, I look forward to your suggestions regarding search terms or strings regarding Category 1 and 3 documents.

I do not intend to address the other comments in your letter other than to emphasize that while Thomson SA remains willing to waive objections to personal jurisdiction in this lawsuit, it will not agree to waive any other rights. Thomson SA is willing to consider a narrowly-tailored stipulation that reflects a waiver of personal jurisdiction for this lawsuit only, but it will not waive all rights to contest enforceability of an adverse judgment as that issue is distinct and separate from the issue of personal jurisdiction.

Response to November 24, 2014, email from Norman Pentelovitch

Mr. Pentelovitch asked Thomson SA to provide an "overlay load file" to address what he assumed to be a failure by Thomson SA to properly maintain family relationships between parent emails and children attachments. Thomson SA did not, however, omit such information from the production. Instead, Thomson SA produced to DAPs, as promised, the same files it provided to the European Commission, many of which were simple PDFs (rather than native emails messages) without load files identifying family groups.[1] As Mr. Pentelovitch noted, it is usually obvious which attachments go with which parent emails because the attachments sequentially follow the parents. Thus, in the two examples provided by Mr. Pentelovitch, the child attachments TSA-CRT00016411 and TSA-CRT00016617 sequentially follow their parent emails (TSA-CRT00016410 and TSA-CRT00016616, respectively) in the production.

In the course of investigating Mr. Pentelovitch's concerns, Thomson SA did identify one potential issue with the production that it can resolve for DAPs. In some instances, these PDF emails and their children were produced out of sequential order because they were reviewed at different times. This happened when, for example, different individuals reviewed a French email and its English attachments or when there was a technical issue with a document. I have provided the attached spreadsheet to allow DAPs to see which PDFs followed which in the production to the EC. The rows of the spreadsheet proceed sequentially based on the European Commission production. The beginning and ending bates number is listed for each document as well as the production volume in which the document was produced. Thus, the bates numbers generally flow in large sequential chunks, but breaks in the order show where a document was reviewed later than neighboring documents.

To give a specific example from the first page of the spreadsheet, the email beginning at TSA-CRT00074769 (row 11 in the spreadsheet), is in French and was produced out of sequence from the documents around it. And that email's attachment (TSA-CRT00078570) contained no data and was produced later still, as Thomson SA worked to confirm that the attachment was produced in the same

---

[1] The production to the European Commission also included many native email messages with attachments. Those documents were scrupulously produced as family groups, with the appropriate load files.

Craig Benson                                  -3-                          November 25, 2014

form to the European Commission. TSA-CRT00034178 (row 13 in the spreadsheet) is in English and returns to the sequence, followed by its attachment, TSA-CRT00034179.

Although somewhat cumbersome to explain in a letter, I think you will see that once you spend a few minutes with the spreadsheet, it is quite intuitive and allows you to quickly identify any attachments that may have been separated from parent emails. If you have any lingering questions after having worked with the spreadsheet, my team and I are happy to answer those questions.

With respects to Thomson Defendants' responses to DAPs' first set of RFAs, we will provide supplemental responses next week.

Sincerely,

*/s/ Kathy L. Osborn*

Kathy L. Osborn