**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 |
| | Case No. C-07-5944-SC |
| This Order Relates To: | ORDER GRANTING MOTION TO COMPEL ARBITRATION |
| Case No. 3:14-cv-02510 | |
| VIEWSONIC CORP. | |
| Plaintiff | |
| v. | |
| CHUNGHWA PICTURE TUBES, LTD., et al, | |
| Defendants. | |

I.   **INTRODUCTION**

Now before the Court is Panasonic's[1] motion to dismiss and compel arbitration of Direct Action Plaintiff ViewSonic Corporation's claims against Panasonic.  ECF No. 2767 ("Mot."). ViewSonic opposes, ECF No. 2867 ("Opp'n"), and Panasonic filed a reply, ECF No. 2899 ("Reply").  After briefing was complete, ViewSonic sought leave to file a surreply, ECF No. 2916 ("Surreply

---

[1] For simplicity the Court refers to the movants as "Panasonic," although in fact the movants are Panasonic Corporation, Panasonic Corporation of North America, and MT Picture Display Company, Ltd.

1  Mot."), <u>see also</u> ECF No. 2916-2 ("Surreply"), which Panasonic

2  opposes, ECF No. 2921 ("Surreply Opp'n").[2]  Both motions are now

3  fully briefed and appropriate for disposition without oral argument

4  under Civil Local Rule 7-1(b).  For the reasons set forth below,

5  the motion for leave to file a surreply is GRANTED and the motion

6  to dismiss and compel arbitration is GRANTED.

7

8  **II.**   **BACKGROUND**

9     This is an antitrust case alleging price fixing in the Cathode

10  Ray Tube (CRT) market.  ViewSonic is a relatively late entrant to

11  the case, and filed its complaint in May of 2014.  ViewSonic

12  alleges that Panasonic, among several other defendants,

13  participated in a price fixing conspiracy in the CRT market between

14  March 1, 1995 and November 25, 2007.

15     ViewSonic and Panasonic entered into an Original Equipment

16  Manufacturer, or OEM, supply agreement in 1999 ("the Agreement").

17  ECF No. 2768 ("Hemlock Decl.") at Ex. A ("Agreement").  In the

18  Agreement, the parties agreed to submit to arbitration "[a]ll

19  disputes, controversies, claims or differences which may arise

20  between the parties, out of or in relation to or in connection with

21  this Agreement, or for the breach thereof . . . except as otherwise

22

23  ―――――――――――

[2] Panasonic's arguments against granting leave to file a surreply

24  are well taken.  The arguments in Panasonic's reply brief simply
"respond[ed] to legal arguments made in opposition." <u>Heil Co. v.</u>

25  <u>Curotto Can Co.</u>, No. 04-cv-1590 MMC, 2004 WL 2600134, at *1 n.1
(N.D. Cal. Nov. 16, 2004).  Nonetheless, in the interests of

26  completeness and judicial efficiency, the Court GRANTS leave to
file the surreply.  Had ViewSonic not filed its surreply, the Court

27  would have simply requested supplemental briefing on the very
issues it addressed, therefore there is no reason to deny leave to

28  file the surreply only to then request additional briefing on these
issues.

**United States District Court**
For the Northern District of California

1   provided herein."[3]  Agreement at § 17.3.

2       Neither party argues that the Agreement or the arbitration

3   clause is invalid.  Instead, both sides disagree over the length of

4   time covered by the Agreement and the scope of the arbitration

5   clause, as well as whether those issues should be resolved by the

6   Court or in arbitration.

7

8   **III.  <u>LEGAL STANDARD</u>**

9       Section 4 of the Federal Arbitration Act ("FAA") permits "a

10  party aggrieved by the alleged failure, neglect, or refusal of

11  another to arbitrate under a written agreement for arbitration [to]

12  petition any United States district court . . . for any order

13  directing that . . . arbitration proceed in the manner provided for

14  in [the arbitration] agreement."  9 U.S.C. § 4.

15      The FAA embodies a policy that generally favors arbitration

16  agreements.  <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>,

17  460 U.S. 1, 24-25 (1983).  Federal courts must enforce arbitration

18

19  [3] The Court notes that the Agreement along with numerous other
20  portions of the parties' submission have been filed under seal.
    While the Court has previously expressed a liberal attitude toward
21  motions for leave to file under seal in this matter, citing the
    enormous administrative burden that would be required if the Court
    were to review and closely analyze every claim of sealability, <u>see</u>
22  ECF No. 1512, some of the parties' submissions on this motion,
    particularly ViewSonic's, stretch the bounds of even that leeway.
23  For instance, the Court cannot imagine any reason why the words
    "arbitration clause" would be sealable or why the existence of an
24  arbitration clause should be treated as confidential given that
    this is quite obviously a motion to compel arbitration.  <u>See</u> Opp'n
25  at 2:15, 2:23.  Furthermore, even sealing the entire text of the
    arbitration clause seems overly broad given that (1) the terms of
26  the arbitration clause itself are largely unremarkable boilerplate,
    and (2) the Court has to analyze the text of the clause in the
27  context of the motion anyway.  In short, the Court wishes to
    reminds the parties that while the Court has taken a liberal
28  attitude towards motions to file under seal thus far, that leeway
    should not be abused.

**United States District Court**
For the Northern District of California

1  agreements rigorously.  See Hall St. Assoc., L.L.C. v. Mattel,

2  Inc., 552 U.S. 576, 581 (2008).  Courts must also resolve any

3  "ambiguities as to the scope of the arbitration clause itself . . .

4  in favor of arbitration."  Volt Info. Scis., Inc. v. Bd. of Trs. of

5  Leland Stanford Jr. Univ., 489 U.S. 468, 476 (1989).  These

6  policies all "appl[y] with special force in the field of

7  international commerce."  Mitsubishi Motors Corp. v. Soler

8  Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985).

9

10  **IV.  DISCUSSION**

11      The parties agree that the Agreement and the arbitration

12  clause are valid and cover at least some set of ViewSonic's claims.

13  The remaining issues relate to the scope and interpretation of the

14  Agreement, and the threshold question of whether those scope and

15  interpretation issues should be resolved by the Court or in

16  arbitration.

17      Borrowing somewhat from the Supreme Court's rubric in First

18  Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995), the

19  parties have three types of disagreements in this case.  First,

20  ViewSonic and Panasonic disagree about whether Panasonic is liable

21  to ViewSonic for price fixing in the CRT market.  "That

22  disagreement makes up the merits of the dispute."  Id. (emphasis

23  omitted).  Second, they disagree about what portion of the merits

24  they agreed to arbitrate.  In arbitration parlance, this is a

25  disagreement about the "arbitrability" of the dispute.  Id.

26  (emphasis omitted).  Finally, they disagree about whether the Court

27  or the arbitrator has the power to decide the second matter.  In

28  other words, who decides how much of this dispute the parties

4

**United States District Court**
For the Northern District of California

1   agreed to arbitrate, the Court or the arbitrator?  This is

2   sometimes referred to as "jurisdiction to determine arbitrability."

3   See Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 738 (9th

4   Cir. 2014).

5       Because the Court finds the arbitrator and not the Court has

6   jurisdiction to determine arbitrability, the Court only addresses

7   that point.

8       **A.   Jurisdiction to Determine Arbitrability**

9       "Both the arbitrability of the merits of a dispute and the

10  question of who has the primary power to decide arbitrability

11  depend on the agreement of the parties." Goldman, Sachs, 747 F.3d

12  at 738 (citing First Options, 514 U.S. at 943).  However, "unlike

13  the arbitrability of claims in general, whether the court or the

14  arbitrator decides arbitrability is 'an issue for judicial

15  determination unless the parties clearly and unmistakably provide

16  otherwise.'"  Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069,

17  1072 (9th Cir. 2013) (quoting Howsam v. Dean Witter Reynolds, Inc.,

18  537 U.S. 79, 83 (2002)) (emphasis in original).  The rule seeks to

19  avoid "forc[ing] unwilling parties to arbitrate a matter they

20  reasonably would have thought a judge, not an arbitrator, would

21  decide.  First Options, 514 U.S. at 945 (citing United Steelworkers

22  v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583 (1960)).

23      Panasonic makes two arguments in favor of leaving the question

24  of arbitrability to the arbitration panel.  First, Panasonic points

25  to cases suggesting that "as a matter of federal law, any doubts

26  concerning the scope of arbitral issues should be resolved in favor

27  of arbitration, whether the problem at hand is the construction of

28  contract language itself . . . or a like defense to arbitrability."

1    Second, Panasonic argues that the arbitration clause's references

2    to the rules of procedure of the American Arbitration Association's

3    ("AAA") and the Japan Commercial Arbitration Association

4    ("JCAA") -- rules that (in Panasonic's view) expressly provide for

5    arbitrators to decide arbitrability -- indicate the parties

6    unmistakably intended the arbitrators, not the Court to decide

7    arbitrability.

8        Panasonic's first argument is a non-starter.  For the most

9    part, Panasonic misses or ignores the applicable case law and

10   instead seizes on a few out-of-context passages from cases that do

11   not address the question of who decides arbitrability.  Instead,

12   the rule is clear: unless the parties clearly and unmistakably

13   provide otherwise, the Court decides who determines questions of

14   arbitrability.  See Goldman, Sachs, 747 F.3d at 738.  As a result,

15   Panasonic's points about the Court "ignor[ing] the Arbitration Act

16   and . . . 'becom[ing] entangled in the construction' of the OEM

17   Agreement," Reply at 2, are entirely misplaced unless Panasonic

18   shows the parties' intent to resolve those questions in

19   arbitration.

20       Panasonic's second argument, that the reference in the

21   arbitration clause to the rules of procedure for the AAA and JCAA

22   evince the parties' intent to arbitrate arbitrability, fares far

23   better.  Cases hold that "where the parties' agreement to arbitrate

24   includes an agreement to follow a particular set of arbitration

25   rules -- such as the AAA Rules -- that provide for the arbitrator

26   to decide questions of arbitrability, the presumption that courts

27   decide arbitrability falls away, and the issue is decided by the

28   arbitrator." Bank of Am., N.A. v. Micheletti Family P'ship, No.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  08-02902 JSW, 2008 WL 4571245, at *6 (N.D. Cal. Oct. 14, 2008)

2  (collecting cases).   The arbitration clause at issue here provides

3  that if Panasonic initiates arbitration, it will be governed by the

4  AAA rules and take place in California.   If, on the other hand,

5  ViewSonic initiates the arbitration, it will be governed by the

6  JCAA rules and take place in Osaka, Japan.   As Panasonic points

7  out, both the AAA and JCAA rules allow arbitrators to determine

8  their own jurisdiction.[4]

9       Nonetheless, ViewSonic raises three arguments to the contrary.

10  First, relying on <u>Howsam v. Dean Witter Reynolds, Inc.</u>, ViewSonic

11  argues that the question of whether it intended to arbitrate claims

12  based on purchases made prior to the March 12, 1999 execution of

13  the Agreement is "a gateway dispute about whether the parties are

14  bound by a given arbitration clause [that] raises a 'question of

15  arbitrability' for a court to decide."  537 U.S. at 84.  This

16  argument misses Panasonic's point.   Panasonic is arguing that by

17  referring to the AAA and JCAA rules in the arbitration clause, the

18  parties clearly and unmistakably indicated that the arbitrator, not

19  the Court should resolve questions of arbitrability.   If that is

20  true, the result is obvious.   "The question whether the parties

21  have submitted a particular dispute to arbitration, i.e., the

22  'question of arbitrability,' is 'an issue for judicial

23  determination <u>[u]nless the parties clearly and unmistakably provide</u>

24

---

25  [4] AAA Rule 7 states that "[t]he arbitrator shall have the power to
26  rule on his or her own jurisdiction, including any objections with
    respect to the existence, scope, or validity of the arbitration
    agreement or to the arbitrability of any claim or counterclaim."
27  Similarly, JCAA Rule 41 states that "[t]he arbitral tribunal may
    make a determination on any objection as to the existence or
28  validity of an Arbitration Agreement and any other matters
    regarding its own jurisdiction."

**United States District Court**
For the Northern District of California

1  otherwise.'"  See id. at 83 (quoting AT&T Techs., Inc. v. Commc'ns

2  Workers, 475 U.S. 643, 649 (1986)) (original emphasis omitted and

3  emphasis added).  Put another way, only if the Court determines

4  that it, and not the arbitrators, has jurisdiction to determine

5  what parts of the dispute are arbitrable does the Court actually

6  resolve what claims the parties intended to submit to arbitration.

7      Second, ViewSonic relies on United Parcel Service v. Lexington

8  Insurance Group, No. 12 Civ. 7961 (SAS), 2013 WL 1897777, at *2

9  (S.D.N.Y. May 7, 2013), which found that because the parties'

10 agreement only incorporated the AAA's procedural rules, there was

11 no clear and unmistakable evidence the parties intended to

12 arbitrate arbitrability, because "[t]he primary question of

13 arbitrability is a substantive one."  Here, the arbitration clause

14 provides that the arbitration will take place "in accordance with

15 the rule [sic] of procedure of the [AAA]."  Agreement at § 17.3.

16 Admittedly, this clause is less clear than in other cases finding

17 intent to arbitrate arbitrability in arbitration clauses that

18 incorporated a third party's arbitration rules (including those on

19 jurisdiction).  See, e.g., Oracle, 724 F.3d at 1071 (designating

20 that the arbitration shall take place "in accordance with the rules

21 of the United Nations Commission on International Trade Law

22 (UNCITRAL)"); Poponin v. Virtual Pro, Inc., No. C 06-4019 PJH, 2006

23 WL 2691418, at *9 (N.D. Cal. Sept. 20, 2006) (addressing an

24 agreement that incorporated the rules of the International Chamber

25 of Commerce Court of Arbitration).  Further complicating matters,

26 as far as the Court can determine, there is no set of exclusively

27 "procedural" (or exclusively "substantive") AAA rules.

28 Nonetheless, another court has found that Rule 7, which governs

**United States District Court**
For the Northern District of California

1  jurisdiction to determine arbitrability, <u>is</u> a procedural rule of

2  the AAA.  <u>See</u> <u>Citifinancial, Inc. v. Newton</u>, 359 F. Supp. 2d 545,

3  551-52 (S.D. Miss. Mar. 4, 2005).  In light of that case and the

4  substantial weight of authority finding that incorporating AAA or

5  other arbitration rules constitutes "clear and unmistakable"

6  evidence of intent to resolve arbitrability before the arbitral

7  panel, the Court finds <u>United Parcel Service</u> unpersuasive.  <u>See</u>

8  <u>Oracle</u>, 724 F.3d at 1071 ("Virtually every circuit to have

9  considered the issue has determined that incorporation of the

10 American Arbitration Association's (AAA) arbitration rules

11 constitutes clear and unmistakable evidence that the parties agreed

12 to arbitrate arbitrability.") (collecting cases).

13      Finally, ViewSonic argues that the relevant AAA rule, Rule 7,

14 only came into existence in 2000, after the Agreement was executed.

15 As a result, ViewSonic believes it would be inappropriate to infer

16 any intent to arbitrate arbitrability from the parties' arbitration

17 clause.  <u>See</u> <u>Yahoo! Inc. v. Iversen</u>, 836 F. Supp. 2d 1007, 1011-12

18 (N.D. Cal. 2011) (discussing the rules in effect when the parties

19 entered into their agreement).  In support of this proposition,

20 ViewSonic cites <u>Gilbert Street Developers, LLC v. La Quinta Homes,</u>

21 <u>LLC</u>, 174 Cal. App. 4th 1185 (Cal. Ct. App. 2009), which stated that

22 "in 1998 . . . the American Arbitration Association had no rule

23 providing that arbitrators had jurisdiction to rule on their own

24 jurisdiction.  However, in September 2000, the American Arbitration

25 Association adopted a new rule, R-8(a), that provided arbitrators

26 could rule on their own jurisdiction."  <u>Id.</u> at 1187-88 (citing

27 <u>Hasbro, Inc. v. Amron</u>, 419 F. Supp. 2d 678, 685 (E.D. Pa. 2006)).

28 For whatever reason, the <u>Gilbert Street</u> Court was mistaken about

those facts.  As Panasonic points out, providing copies of the
relevant rules, the precursor to Rule 7 was in effect as of at
least January 1, 1999 -- prior to the execution of the Agreement.
<u>See</u> ECF No. 2921-1 ("Supp. Hemlock Decl.") at Exs. A-B.  As a
result, there is no temporal issue with concluding that the
parties' decision to incorporate the AAA and JCAA rules reflected
their intent to arbitrate questions of arbitrability.

Because ViewSonic's arguments are unavailing, the Court finds
that jurisdiction to determine arbitrability lies with the
arbitrator.

**V.    <u>CONCLUSION</u>**

Accordingly, the Court finds that by incorporating the rules
of procedure of the AAA and JCAA, the parties "clearly and
unmistakably" provided for arbitration of arbitrability, and as a
result Panasonic's motion is GRANTED.  Furthermore, because the
Court lacks jurisdiction to determine arbitrability, and the
parties agreed to resolve such issues before the arbitrators and
pursuant to the AAA or JCAA rules, the Court lacks jurisdiction
even to sever ViewSonic's claims against the co-conspirators from
its claims against Panasonic.  <u>See</u> Reply at 6 n.3.  As a result,
the Court DISMISSES ViewSonic's complaint WITHOUT PREJUDICE, and
leaves those questions to the arbitrators.

IT IS SO ORDERED.

Dated: December 18, 2014       _____

UNITED STATES DISTRICT JUDGE