Michael P. Kenny, Esq. (admitted *pro hac vice*)
mike.kenny@alston.com
Debra D. Bernstein, Esq. (admitted *pro hac vice*)
debra.bernstein@alston.com
Matthew D. Kent, Esq. (admitted *pro hac vice*)
matthew.kent@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

James M. Wagstaffe, Esq. (SBN 95535)
wagstaffe@kerrwagstaffe.com
**KERR & WAGSTAFFE LLP**
101 Mission Street, 18th Floor
San Francisco, California 94105-1576
Tel: (415) 371-8500
Facsimile: (415) 371-0500

*Attorneys for Plaintiffs Dell Inc. and Dell Products L.P.*

**[Additional Counsel Listed on Signature Page]**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-md-05944-SC (N.D. Cal.) |
| | MDL No. 1917 |
| This Document Relates to: Individual Case No. 13-cv-2171 (SC) | **DELL INC.'S AND DELL PRODUCTS L.P.'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DELL AND SHARP PLAINTIFFS ON STATUTE OF LIMITATIONS GROUNDS [MDL DKT NO. 3044] [FILED UNDER SEAL]** |
| DELL INC. AND DELL PRODUCTS L.P., | |
| PLAINTIFFS, | |
| v. | |
| HITACHI, LTD., *ET AL.*, | Date:  February 6, 2015 |
| DEFENDANTS. | Time:  10:00 a.m. |
| | Place:  Courtroom 1, 17th Floor Honorable Samuel Conti |

# TABLE OF CONTENTS

**PAGE**

I.  STATEMENT OF THE ISSUES TO BE DECIDED ........................................................1

II.  INTRODUCTION.......................................................................................................1

III.  STATEMENT OF FACTS ...........................................................................................2

IV.  ARGUMENT AND AUTHORITIES ...........................................................................7

      A.  Summary Judgment Is Not Appropriate on Fraudulent Concealment
          Because There Are Genuine Issues of Material Facts in Dispute...................7

             1.  ████████████████████████ ...................8

             2.  There is "no uncontroverted evidence [that] irrefutably
                 demonstrates" that Dell had actual knowledge...................8

                 a.  *Defendants' Motion requires critical documentary
                    inferences that are not supported by the record* ...............10

             3.  There is no "uncontroverted evidence [that] irrefutably
                 demonstrates" that Dell had constructive knowledge of an illegal
                 price-fixing conspiracy ...................17

             4.  Defendants' Motion establishes that Dell was diligent in its
                 efforts to uncover any illegal activities ...................21

V.  CONCLUSION.......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Advanced Micro Devices, Inc. v. Intel Corp.,*
No. 91-20541, 1992 U.S. Dist. LEXIS 21529 (N.D. Cal. July 24, 1992)............................9, 19

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)..................................................................................................7, 8, 17

*Beneficial Standard Life Ins. Co. v. Madariaga,*
851 F.2d 271 (9th Cir. 1988) ..........................................................................................9, 18

*Carrier Corp. v. Outokumpu Oyj,*
673 F.3d 430 (6th Cir. 2012) ................................................................................................22

*Cline v. Indus. Maint. Eng'g & Contracting Co.,*
200 F.3d 1223 (9th Cir. 2000) ...............................................................................................7

*Conmar Corp. v. Mitsui & Co.,*
858 F.2d 499 (9th Cir. 1988) ...................................................................................... passim

*Dayco Corp. v. Goodyear Tire & Rubber Co.,*
523 F.2d 389 (6th Cir. 1975) ................................................................................................22

*E.W. French & Sons, Inc. v. Gen. Portland, Inc.,*
885 F.2d 1392 (9th Cir. 1984) .........................................................................................7, 24

*Falstaff Brewing Corp. v. Philip Morris Inc.,*
No. C-77-2733 WWS, 1979 WL 1665 (N.D. Cal. May 10, 1979) .................................7, 9, 20

*Fenerjian v. Nongshim Co., Ltd.,*
No. 13-cv-4115, 2014 U.S. Dist. LEXIS 156229, (N.D. Cal. Nov. 4, 2014) ...................12, 25

*Gaston v. N.Y.C. Dep't of Health Office of Chief Med. Exam'r,*
432 F. Supp. 2d 321 (S.D.N.Y. 2006)....................................................................................19

*Go Computer, Inc. v. Microsoft Corp.,*
437 F. Supp. 2d 497 (D. Md. 2006) ..................................................................................8, 20

*GO Computer, Inc. v. Microsoft Corp.,*
508 F.3d 170 (4th Cir. 2007) ...........................................................................................9, 20

*Hennegan v. Pacifico Creative Serv., Inc.,*
787 F.2d 1299 (9th Cir. 1986) ................................................................................................7

*Hexcel Corp. v. Ineos Polymers, Inc.,*
681 F.3d 1055 (9th Cir. 2012) .........................................................................................9, 19

ii

*Hobson v. Wilson*,
   737 F.2d 1 (D.C. Cir. 1984), *overruled in part on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) ................................19

*In re Aluminum Phosphide Antitrust Litig.*,
   905 F. Supp. 1457 (D. Kan. 1995)...................................................................................24

*In re Aspartame Antitrust Litig.*,
   No. 2:06-CV-1732, 2008 WL 4724094 (E.D. Pa. Aug. 11, 2008) .....................................24

*In re Beef Industry Antitrust Litig.*,
   600 F.2d 1148 (5th Cir. 1979) .........................................................................................12

*In re Bulk Extruded Graphite Prods. Antitrust Litig.*,
   No. 02-6030, 2007 WL 1062979 (D.N.J. Apr. 4, 2007).....................................................18

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
   782 F. Supp. 487 (C.D. Cal. 1991) ............................................................................ passim

*In re Mirant Corp.*,
   No. 03-46590, 2005 WL 6443618 (Bankr. N.D. Tex. Nov. 22, 2005)...................................24

*In re Rubber Chems. Antitrust Litig.*,
   504 F. Supp. 2d 777 (N.D. Cal. 2007) ..............................................................................18

*In re TFT LCD (Flat Panel) Antitrust Litig.*,
   2012 Trade Case (CCD) 78161 (N.D. Cal. 2012).......................................................13, 20, 21

*King & King Enters. v. Champlin Petroleum Co.*,
   657 F.2d 1147 (10th Cir. 1981) .......................................................................................19

*M.D. Rutledge v. Boston Woven Hose and Rubber Co.*,
   576 F.2d 248 (9th Cir. 1978) ..........................................................................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).........................................................................................................7

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999) *amended in part*, 211 F.3d 1224 (11th Cir. 2000) .....................
   ...............................................................................................................13, 17, 18, 22

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
   210 F.3d 1099 (9th Cir. 2000) ..........................................................................................7

*Re/Max Int'l, Inc. v. Realty One, Inc.*,
   173 F.3d 995 (6th Cir. 1999) ..........................................................................................19

*Spectrum Financial Companies v. Marconsult, Inc.*,
   608 F.2d 377 (9th Cir. 1979) ..........................................................................................10

iii

*Sterlin v. Biomune Sys.*,
   154 F.3d 1191 (10th Cir. 1998) ................................................................22

*Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*,
   71 F.3d 119 (4th Cir. 1995) ...................................................................21

*United States v. Diebold, Inc.*,
   369 U.S. 654 (1962) .........................................................................10, 14

*United States v. Samsung SDI Co., Ltd.*,
   No. 3:11-CR-00162, Dkt. No. 29 (N.D. Cal.) .........................................2

*Volk v. D.A. Davidson & Co.*,
   816 F.2d 1406 (9th Cir. 1987) .......................................................1, 7, 8

*Western Shoe Gallery, Inc. v. Duty Free Shoppers, Ltd.*,
   593 F. Supp. 348 (N.D. Cal. 1984) .........................................................20

*Westman Comm'n Co. v. Hobart Corp.*,
   541F. Supp. 307 (D. Colo. 1982) ............................................................25

**RULES**

Fed. R. Civ. P. 56 ............................................................................................8

N.D. Cal. Local Rule 7-3(d)(1) ......................................................................21

Fed. R. Civ. P. 11 ..........................................................................................25

iv

## I.   STATEMENT OF THE ISSUES TO BE DECIDED

1.    Whether there is "uncontroverted evidence [that] 'irrefutably demonstrates that [Dell] discovered or should have discovered [its CRT claims]'"[1] before November 27, 2003, when the record is replete with material facts showing that:

## II.   INTRODUCTION

The Defendants' defense in this case is inherently contradictory and self-defeating. On the one hand, Defendants all filed answers denying Dell's price-fixing claim and the facts in support thereof. But, on the other hand, they argue that their conspiracy was so well known before 2003 that Dell should have filed a lawsuit many years before.  Indeed, Defendants have filed multiple motions for summary judgment, arguing: (1) that they and their co-conspirators did not conspire to fix the prices of CRTs; (2) that the Defendant parent corporations were not involved in a CRT price-fixing conspiracy; and (3) that those parent companies had no knowledge of a CRT conspiracy.  It is simply not credible for some Defendants to argue that, after extensive discovery, there are *NO* facts to even present Dell's conspiracy claim to the jury, and yet Dell nonetheless had enough evidence long ago to file a meritorious price-fixing case against them.

In support of their Motion, Defendants have misrepresented both the law and the facts. Defendants' Motion fails to recite the applicable legal standard for summary judgment on fraudulent concealment set forth by the Ninth Circuit in *Conmar*.  And factually, Defendants have cherry-picked a handful of ambiguous documents from a massive record, arguing that these documents are "undisputed" and conclusively show that Dell had actual (or at least constructive) knowledge of Defendants' price-fixing. Noticeably absent from Defendants' brief is any mention of the sworn

---

[1] *Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499, 502 (9th Cir. 1988) (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987)).

deposition testimony of the three current and seven former Dell employees—each of whom was

exhaustively examined on the topic— ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████ Defendants cannot, on this record, establish the high bar required for summary judgment on

fraudulent concealment. Simply put, there is no "uncontroverted evidence [that] irrefutably

demonstrates that [Dell] discovered or should have discovered [its CRT claims]" before November 27,

2003.

To the contrary, there is a genuine issue of material fact as to each element of fraudulent

concealment based on the substantial evidence that undermines Defendants' asserted defense. ████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████

### III.   STATEMENT OF FACTS

Despite Defendants' continued denials, the major CRT manufacturers conspired to fix the

prices of CRT tubes.  *See United States v. Samsung SDI Co., Ltd.*, No. 3:11-CR-00162, Dkt. No. 29

(N.D. Cal.). ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████

2



2 *See* Ex. 1 to Declaration of Debra Bernstein (all exhibits referenced herein are attached to the Bernstein Declaration).

3



DELL RESPONSE IN OPP. TO DEFS.' JOINT MOT.
FOR PARTIAL S. J. ON STATUTE OF LIMITATIONS

MASTER FILE NO. 3:07-CV-05944-SC
MDL NO. 1917 │ IND. CASE NO. 3:13-cv-02171-SC



The fact that Dell's employees did not suspect a CRT price-fixing conspiracy is also not surprising given (1) the logistics of the buyer/seller relationship and (2) Dell's position in the supply chain and Dell's monitor specifications. *See* Figure 1.

DELL RESPONSE IN OPP. TO DEFS.' JOINT MOT.                    MASTER FILE NO. 3:07-CV-05944-SC
FOR PARTIAL S. J. ON STATUTE OF LIMITATIONS          MDL NO. 1917 │ IND. CASE NO. 3:13-cv-02171-SC

*see also* MDL Dkt. No. 1664 (recommending that DAPs' complaints as to SEC and SEA be dismissed).

```
┌────────────────┐      ┌──────────────┐      ┌──────────────┐
│   CRT Tube     │ ──►  │   Monitor    │ ──►  │     Dell     │
│ Manufacturers  │      │    Makers    │      │              │
└────────────────┘      └──────────────┘      └──────────────┘
```

**Figure 1**

Despite Dell's diligent efforts to secure better pricing, Dell did not discover the facts giving rise to its claims until after the Department of Justice ("DOJ") began investigating price fixing in the CRT industry, which was publicly announced in November 2007.  Dell asserts only direct-purchaser price-fixing claims under Section One of the Sherman Act, and in November 2007, the Direct Purchaser Plaintiffs filed a class action lawsuit which tolled all of Dell's claims.  *See* Ex. 37.  Dell filed its own lawsuit on February 17, 2013.  *See* Ex. 38.  To prevail on their Motion, Defendants must show that "uncontroverted evidence irrefutably demonstrates" that Dell actually discovered or should have discovered the conspiracy prior to November 27, 2003.

6

# IV.    ARGUMENT AND AUTHORITIES

## A.   Summary Judgment Is Not Appropriate on Fraudulent Concealment Because There Are Genuine Issues of Material Facts in Dispute

Fraudulent concealment is an "equitable doctrine" under which "the applicable statute of limitations is tolled 'if the plaintiff proves the defendant fraudulently concealed the existence of the cause of action so that the plaintiff, acting as a reasonable person, did not know of its existence.'" *E.W. French & Sons, Inc. v. Gen. Portland, Inc.*, 885 F.2d 1392, 1399 (9th Cir. 1989) (quoting *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1302 (9th Cir. 1986)).

In the Ninth Circuit there is a very high bar "[a]t the summary judgment stage, '[o]rdinarily, a defendant has an extremely difficult burden to show that [fraudulent concealment allegations are] barred as a matter of law.'" *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 487, 489 (C.D. Cal. 1991) (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987)). To grant summary judgment on fraudulent concealment, *"uncontroverted evidence [must] 'irrefutably demonstrate[] that a plaintiff discovered or should have discovered the cause of action but failed to file a timely complaint.'"* *Conmar*, 858 F.2d at 502 (quoting *Volk*, 816 F.2d at 1417) (emphasis supplied).[5] As the moving party, Defendants "must either produce evidence negating an essential element of [fraudulent concealment] or show that [Dell] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If Defendants satisfy this burden, the burden shifts to Dell to "identify facts which show a genuine issue for trial." *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). In considering Defendants' Motion, the Court may not make credibility determinations or weigh the evidence, and it must draw all inferences in the light most favorable to Dell. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary

---

[5] Notably, Defendants failed to provide the Court with the correct standard for summary judgment on fraudulent concealment issues in the Ninth Circuit. Indeed, rather than cite the appropriate standard —"uncontroverted evidence 'irrefutably demonstrat[ing] that a plaintiff discovered or should have discovered,'" which is set forth by *Conmar*—Defendants selectively quote from *Falstaff Brewing Corp.*, a district court case decided nearly a decade before *Conmar*.

judgment is appropriate only if the pleadings and discovery demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).   A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson*, 477 U.S. at 248.

Here, Defendants' Motion must be denied because a reasonable juror could conclude that: (1) Defendants and their co-conspirators took affirmative steps to conceal the conspiracy; and (2) before November 27, 2003, Dell did not have actual or constructive knowledge of Defendants' price-fixing activities.

### 2. There is no "uncontroverted evidence [that] irrefutably demonstrates" that Dell had actual knowledge

Tellingly, Defendants have not cited a single case in support of their argument that Dell had "actual knowledge" of the CRT makers' price-fixing conspiracy.   *See* Def. Motion at 19-20. Typically, "whether a plaintiff knew or should have known of a cause of action presents a question for the trier of fact." *Volk*, 816 F.2d at 1417; *see also Petroleum Prods.*, 782 F. Supp. at 491 (same); *Go Computer, Inc. v. Microsoft Corp.*, 437 F. Supp. 2d 497, 500 (D. Md. 2006) ("***Factual disputes concerning the extent of a plaintiff's knowledge cannot be resolved on summary judgment***." (emphasis added)).   Because the issue of "whether a plaintiff knew or should have known of a cause of action presents a question for the trier of fact," *Volk*, 816 F.2d at 1417, courts generally deny summary

8

judgment motions premised on arguments that a plaintiff had actual knowledge of its claims.  *See, e.g.*, *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 276 (9th Cir. 1988); *Petroleum Prods.*, 782 F. Supp. at 498.

The high bar for summary judgment on fraudulent concealment cannot be understated and is best displayed through the facts of those cases where summary judgment has been granted.  *See, e.g.*, *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1061 (9th Cir. 2012) (finding constructive knowledge where plaintiff, **"[b]y its own admission**, . . . knew of two specific anticompetitive agreements," and may have participated in the conspiracy) (emphasis added); *Advanced Micro Devices, Inc. v. Intel Corp.*, No. 91-20541, 1992 U.S. Dist. LEXIS 21529, 10 (N.D. Cal. July 24, 1992) (finding no fraudulent concealment when the plaintiffs' attorneys and corporate officers made statements during an arbitration hearing demonstrating that they knew about the challenged conduct); *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 178 (4th Cir. 2007) (plaintiff was advised by Federal Trade Commission attorneys that: "This looks like a textbook case of abuse of monopoly power"); *Falstaff Brewing Corp. v. Philip Morris Inc.*, No. C-77-2733 WWS, 1979 WL 1665, at *2-3 (N.D. Cal. May 10, 1979) (finding no fraudulent concealment when plaintiff **admitted in discovery responses** that it knew of the illegal acts).

In stark contrast,

9

### a. Defendants' Motion requires critical documentary inferences that are not supported by the record

A review of the documents cited by Defendants underscores the critical disputes of fact that are presented by Defendants' Motion.

See *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (holding all inferences to be drawn from the underlying affidavits, exhibits, interrogatory responses and deposition testimony must be viewed in the light most favorable to the party opposing the motion); *see also Spectrum Fin. Cos. v. Marconsult, Inc.*, 608 F.2d 377, 380 (9th Cir. 1979) (same).

---

[6] Because Dell's claims were tolled by the complaint filed on November 26, 2007, by the Direct Purchaser Plaintiffs, the statute of limitations allows Dell to recover for damages it incurred as a result of the illegal conspiracy during the four-year period preceding November 26, 2007, regardless of whether Dell successfully proves fraudulent concealment.

[7]

---

10



DELL RESPONSE IN OPP. TO DEFS.' JOINT MOT.
FOR PARTIAL S. J. ON STATUTE OF LIMITATIONS

MASTER FILE NO. 3:07-CV-05944-SC
MDL NO. 1917 │ IND. CASE NO. 3:13-cv-02171-SC

Accordingly, Defendants' efforts to impute knowledge of their illegal conspiracy to Dell based on these documents are futile and rife with material disputes of fact.

Indeed, even the existence of earlier filed, similar lawsuits (or news articles of illegal activities) does not bar application of fraudulent concealment.  In *Conmar*, the Ninth Circuit found a material issue of fact as to fraudulent concealment where an indictment covering the same subject matter as plaintiffs' complaint was covered by "two articles in the San Francisco Chronicle . . . The Los Angeles Times . . . The New York Times . . . Business Week . . . and the San Jose Mercury-News."  *Conmar*, 858 F.2d at 500-01; *see also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. at 493 (holding "public access to information does not incontrovertibly establish constructive knowledge of one's claims."); *Fenerjian v. Nongshim Co., Ltd.*, No. 13-cv-4115, 2014 U.S. Dist. LEXIS 156229, (N.D. Cal. Nov. 4, 2014) ("I cannot conclude, as a matter of law, that newspaper articles published in Korean-language newspapers . . . gave Plaintiffs sufficient reason in 2008 to inquire into the existence of a conspiracy."); *In re Beef Indus. Antitrust*

---

[8] Even if the article Defendants found is from the Commercial Times, there were 204 news articles published in the Commercial Times and four of the articles published that day contained references to cathode ray tubes.  *See* Declaration of Li Xu.

DELL RESPONSE IN OPP. TO DEFS.' JOINT MOT.                    MASTER FILE NO. 3:07-CV-05944-SC
FOR PARTIAL S. J. ON STATUTE OF LIMITATIONS         MDL NO. 1917 | IND. CASE NO. 3:13-cv-02171-SC

*Litig.*, 600 F.2d 1148, 1171 (5th Cir. 1979) (holding that "[t]he mere filing of a similar lawsuit, without more, does not necessarily give 'good ground' because that suit might well be frivolous or baseless"); *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 832-37 (11th Cir. 1999), *amended in part*, 211 F.3d 1224 (11th Cir. 2000) (reversing district court's grant of summary judgment on fraudulent concealment, holding that newspaper articles of defendants' illegal bid-rigging activities were insufficient to show plaintiffs were on notice of the conspiracy).

---

9 The testimony about Dell employees' use of the word "cartel" was also litigated extensively in the LCD case where the court noted that "according to Dell, the evidence shows that employees used the term 'cartel' loosely to refer to the fact that a heavy concentration of LCD business resided with a handful of companies." *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 6000154, at *1 (N.D. Cal. Nov. 30, 2012).

13



Finally, Defendants' Motion cites to documents that are facially ambiguous which do not—and cannot—establish the "uncontroverted" evidence required to establish Dell's knowledge.  The "evidence" Defendants' cite requires a cynical interpretation to reach Defendants' desired conclusion, and is unsupported by any testimony.  Courts uniformly deny summary judgment when a motion is predicated on the moving party's interpretation of documents. *See Diebold, Inc.*, 369 U.S. at 655.

DELL RESPONSE IN OPP. TO DEFS.' JOINT MOT.                    MASTER FILE NO. 3:07-CV-05944-SC
FOR PARTIAL S. J. ON STATUTE OF LIMITATIONS              MDL NO. 1917 │ IND. CASE NO. 3:13-cv-02171-SC



DELL RESPONSE IN OPP. TO DEFS.' JOINT MOT.
FOR PARTIAL S. J. ON STATUTE OF LIMITATIONS

MASTER FILE NO. 3:07-CV-05944-SC
MDL NO. 1917 │ IND. CASE NO. 3:13-cv-02171-SC



DELL RESPONSE IN OPP. TO DEFS.' JOINT MOT.          MASTER FILE NO. 3:07-CV-05944-SC
FOR PARTIAL S. J. ON STATUTE OF LIMITATIONS        MDL NO. 1917 │ IND. CASE NO. 3:13-cv-02171-SC

[black and yellow redaction bars]

### 3.   There is no "uncontroverted evidence [that] irrefutably demonstrates" that Dell had constructive knowledge of an illegal price-fixing conspiracy

The record also shows that Dell did not have constructive knowledge of Defendants' price fixing.  Constructive knowledge exists if a plaintiff "should have been alerted to *facts* that, following duly diligent inquiry, could have advised it of its claim."  *Conmar*, 858 F.2d at 502 (emphasis added).  "It is not enough for summary judgment to point to facts which *might* have caused a plaintiff to inquire, or *could* have led to evidence supporting his claim. A defendant who does this has succeeded in demonstrating only that there is a jury question regarding the tolling of the statute of limitations by fraudulent concealment.  To award summary judgment on such a showing is error."  *Morton's Mkt.,* 198 F.3d at 832-33 (emphasis in original).  The key inquiry in evaluating constructive knowledge is not whether the plaintiff had suspicions about defendants' activities, but whether it knew *facts* that required a diligent inquiry.  *See Petroleum Prods.*, 782 F. Supp. at 493 ("Even where a plaintiff actually knows of public speculation, constructive knowledge cannot be established absent 'awareness of some evidence tending to support it.'") (*quoting Conmar*, 858 F.2d at 504).  A majority of courts, including the Ninth Circuit, have held "that the issue of when a plaintiff is on 'notice' of his claim is a question of fact for the jury."  *Morton's Mkt.*, 198 F.3d at 832 (citing cases from the Eighth, Ninth, Tenth, and Eleventh Circuits).

Because "[t]he requirement of diligence is only meaningful . . . when facts exist that would excite the inquiry of a reasonable person," *Conmar*, 858 F.2d at 504, courts have concluded that when defendants affirmatively conceal their actions, there are no facts that would "give rise to any information that would 'excite the inquiry of a reasonable person' and thereby require [p]laintiffs to

engage in affirmative steps to attempt to discover the conspiracy." *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 788 (N.D. Cal. 2007); *see also Beneficial Standard Life Ins. Co.*, 851 F.2d at 276 ("If [plaintiff] carries this burden [of proving defendants actively concealed their actions], defendants' actions provide a defense to a claim of constructive knowledge because these actions, by definition, prevented a reasonable person from discovering the fraud through the exercise of due diligence.").



Even if the story Defendants have concocted is determined by this Court to constitute "suspicions," suspicions do not establish actual knowledge. *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1021 (6th Cir. 1999) ("Mere suspicion of a conspiracy is not enough . . . without evidence that the defendants acted in concert."); *Hobson v. Wilson*, 737 F.2d 1, 35 (D.C. Cir. 1984) ("By 'notice,' we refer to an awareness of sufficient facts to identify a particular cause of action . . . . We do not mean the kind of notice—based on hints, suspicions, hunches or rumors—that requires a plaintiff to make inquiries in the exercise of due diligence, but not to file suit."), *overruled in part on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993); *Gaston v. N.Y.C. Dep't of Health Office of Chief Med. Exam'r*, 432 F. Supp. 2d 321, 327 (S.D.N.Y. 2006) ("[A] claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim. Rather, accrual occurs when the plaintiff has discovered the critical facts of both his injury and its cause.").

The case here is easily distinguishable from the cases relied upon by Defendants. A review of the facts presented in each case cited by Defendants highlights the existence of material factual disputes here. In *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055 (9th Cir. 2012), the Ninth Circuit concluded the plaintiff had constructive knowledge of its claims where the plaintiff, *"[b]y its own admission*, . . . knew of two specific anticompetitive agreements," may have participated in the conspiracy, had been subpoenaed to appear before a grand jury investigating the same conduct, and had been advised by counsel that the subpoena triggered the running of the statute of limitations. *Id.* at 1061 (emphasis supplied). Similarly, in *Advanced Micro Devices, Inc. v. Intel Corp.*, No. 91-20541, 1992 U.S. Dist. LEXIS 21529, *7 (N.D. Cal. July 24, 1992), the district court concluded plaintiffs had constructive knowledge after finding: (1) plaintiff failed to provide "factual support to its allegations of Intel's affirmative mislead conduct" and (2) the record demonstrated that plaintiffs' attorneys and corporate officers made statements during an arbitration hearing demonstrating that they knew about the challenged conduct.

Defendants' citations to *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170 (4th Cir. 2007) and *Falstaff Brewing Corp. v. Philip Morris Inc.*, No. C-77-2733 WWS, 1979 WL 1665 (N.D. Cal. May 10, 1979), similarly miss the mark. In *GO Computer*, the plaintiff met with a Federal Trade

19

Commission attorney twice and the attorney investigator told him that: "This looks like a textbook case of abuse of monopoly power." *GO Computer*, 508 F.3d at 178.  Plaintiff even provided a declaration to the FTC that set forth the rumors of Microsoft's anticompetitive activity.  Finally, plaintiff went to a law firm to discuss filing a lawsuit against Microsoft, but declined to pursue it due to cost and the distraction of a legal battle.  *Id.* at 178.  In *Falstaff Brewing*, the plaintiff **admitted in discovery responses** that it was told by another distributor that he was receiving illegal payments from the defendant.  Moreover, the principal officer and shareholder of the plaintiff "describe[ed] himself as the 'father of the discovery of black bagging' and claimed to have been fully informed of these activities by his competitors for years."  *Id.* at *2.  With clear admissions both in discovery responses and through plaintiff's own testimony, actual knowledge of the harms alleged was facially apparent.

The cases where summary judgment has been granted on fraudulent concealment have a distinct theme: **clear proof of knowledge** that was established through plaintiff's own admissions or attorney action (*e.g.*, sending a demand letter or filing a lawsuit).  *See, e.g.*, *Western Shoe Gallery, Inc. v. Duty Free Shoppers, Ltd.*, 593 F. Supp. 348, 350 (N.D. Cal. 1984) (holding that plaintiff had actual knowledge of operative facts when plaintiff's attorney "wrote a letter to one of the defendants . . . outlin[ing] the very conspiracy alleged in this action and threaten[ing] to file suit"); *see also M.D. Rutledge v. Boston Woven Hose and Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978) (affirming grant of summary judgment on fraudulent concealment when plaintiff expressed suspicions to the DOJ and filed a lawsuit and litigated similar issues against other defendants).

Judge Illston denied a similar motion for summary judgment on fraudulent concealment that was filed by Defendants in the LCD MDL. *In re TFT-LCD*, 2012 WL 6000154, at *1. In the *LCD* case, Defendants filed a motion against Dell, arguing that Dell employees knew or had suspicions of cartel activity among TFT-LCD suppliers.  In support of the motion, Defendants cited to the use of the word "cartel" in Dell documents[14] and even obtained a declaration from a former Dell employee stating that



DELL RESPONSE IN OPP. TO DEFS.' JOINT MOT.
FOR PARTIAL S. J. ON STATUTE OF LIMITATIONS

MASTER FILE NO. 3:07-CV-05944-SC
MDL NO. 1917 | IND. CASE NO. 3:13-cv-02171-SC

in 2001 he learned that "TFT-LCD suppliers were meeting to exchange market information and set prices of TFT-LCD panels."   Even in the face of the declaration and numerous documents, Judge Illston denied Defendants' motion for summary judgment explaining that "[w]hile defendants have submitted powerful evidence suggesting that Dell knew about defendants' alleged price-fixing activities prior to December 2002, the Court concludes that summary judgment is not appropriate **_because the parties submitted conflicting evidence regarding what Dell employees knew and when they knew it._**"   *Id.* at *2.   This case warrants the same result, ███████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████   The facts necessary to establish the required **_"uncontroverted evidence [that] irrefutably demonstrates"_** knowledge were not present in the LCD case and are not present here. *See Conmar*, 858 F.2d at 502.

### 4.   Defendants' Motion establishes that Dell was diligent in its efforts to uncover any illegal activities

██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████.   Indeed, a plaintiff's failure to investigate is not fatal "if reasonable further inquiry would not have revealed the basis for the antitrust claim."  *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 128 (4th Cir. 1995); *see also Morton's Mkt.*, 198 F.3d at 836 ("The actual exercise of diligence is irrelevant because the standard is an objective one."); *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1202 n.20 (10th Cir. 1998) ("[T]he plaintiff need not show the actual exercise of diligence in order to 'toll' the limitations period. Rather, in deciding whether the statute should be tolled, it must be determined whether a reasonably diligent plaintiff would have discovered the fraud.") (internal citation omitted).

---

███████████████████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████

DELL RESPONSE IN OPP. TO DEFS.' JOINT MOT.                    MASTER FILE NO. 3:07-CV-05944-SC
FOR PARTIAL S. J. ON STATUTE OF LIMITATIONS        MDL NO. 1917 | IND. CASE NO. 3:13-cv-02171-SC

"[A]s a general rule, the issue of when a plaintiff in the exercise of due diligence should have known of the basis for his claims is not an appropriate question for summary judgment." *Morton's Mkt.*, 198 F.3d at 832.



DELL RESPONSE IN OPP. TO DEFS.' JOINT MOT. MASTER FILE NO. 3:07-CV-05944-SC
FOR PARTIAL S. J. ON STATUTE OF LIMITATIONS MDL NO. 1917 │ IND. CASE NO. 3:13-cv-02171-SC



16 Because Dell's employees had neither actual knowledge nor suspicions of CRT price-fixing, no Dell employee testified that they "investigated" whether such a cartel existed. An investigation, however, is not required when facts do not exist that would "excite the inquiry of a reasonable person." *Conmar*, 858 F.2d at 504. Moreover, as set forth below, there is testimony and documentary evidence confirming Dell's diligent actions to secure competitive pricing from monitor makers (and CRT tube makers).

DELL RESPONSE IN OPP. TO DEFS.' JOINT MOT.
FOR PARTIAL S. J. ON STATUTE OF LIMITATIONS

MASTER FILE NO. 3:07-CV-05944-SC
MDL NO. 1917 | IND. CASE NO. 3:13-cv-02171-SC

1

2

3

4

5      Significantly, courts have found that steps similar to those taken by Dell create a question for

6  the jury regarding whether a plaintiff was diligent. *See, e.g., E.W. French & Sons, Inc. v. Gen.*

7  *Portland Inc.*, 885 F.2d at 1400 (9th Cir. 1989).

8

9

10

11

12      At the very least, a material question of fact exists as to whether any Dell employee ever

13  discovered evidence of antitrust violations.  Accordingly, this case is distinguishable from those where

14  a plaintiff merely asserts it was diligent without pointing to evidence demonstrating its diligence.  *See,*

15  *e.g., In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457, 1471 (D. Kan. 1995) ("[P]laintiffs

16  fail to create a genuine issue with respect to due diligence; they conclusively declare, without

17  evidentiary support, that they have at all times diligently pursued their claims."); *see also In re*

18  *Aspartame Antitrust Litig.*, No. 2:06-CV-1732, 2008 WL 4724094, at *5 (E.D. Pa. Aug. 11, 2008)

19  (holding no due diligence when plaintiff failed to point to an investigation of alternative sources for the

20  impacted product or any attempt to track or monitor prices of the impacted product).

21

22

23

24

25      Indeed, had Dell brought a complaint before November 2003, it could

26  have been subject to a motion to dismiss for failure to allege sufficient facts to set forth a claim or even

27  Rule 11 sanctions. *See Fenerjian v. Nongshim Co., Ltd.*, 2014 U.S. Dist. LEXIS 156229, at *46 ("[A]

28  fact is not deemed 'discovered' until a reasonably diligent plaintiff would have sufficient information

1    about that fact to plead it in a complaint . . . [that would] survive a motion to dismiss.") (internal

2    citation omitted).  Despite Samsung SDI's guilty plea and numerous government investigations, to this

3    day, SDI and its co-conspirators continue to claim that the meetings and contacts they had with

4    competitors were procompetitive meetings to merely exchange information.  *See, e.g.*, Hitachi Mot. for

5    Summ. J. on Liab., MDL Dkt. No. 2976; Mitsubishi Mot. for Summ. J. on Liab.; MDL Dkt. No. 3037;

6    ████████████████████████████████████████

7    ████████████████████████████████████████

8    ████████████████████████████████████████

9    ████████████████████████████████████████

10   ████████████████████████████████████████

11   ████████████████████████████

12   ████████████████████████████████████

13   ████████████████████████████████████████

14   ████████████████████████████   *See, e.g.*, *Westman*

15   *Comm'n Co. v. Hobart Corp.*, 541 F. Supp. 307, 314-15 (D. Colo. 1982) (holding defendants'

16   argument plaintiff failed to mitigate by not filing an injunction "ridiculous").  Similarly, Defendants'

17   implication that a complaint to the DOJ, in the absence of any proof of the Defendants' illegal

18   activities, would have: (1) started a government investigation; (2) uncovered Defendants' activities;

19   and (3) stopped Defendants' illegal price-fixing—conduct that many Defendants still deny to this very

20   day—is pure speculation.

21                              **V.    CONCLUSION**

22        For the foregoing reasons and the authorities cited, Dell respectfully requests the Court deny

23   Defendants' Joint Motion for Partial Summary Judgment Against Dell on Statute of Limitations

24   Grounds.

25        Date:  December 21, 2014                Respectfully submitted,

26                              By:    /s/ *Debra D. Bernstein*

27                                     Michael P.  Kenny, Esq. (GA Bar No. 415064)
                                       mike.kenny@alston.com

28                                     Debra D.  Bernstein, Esq. (GA Bar No. 054998)

                              25

debra.bernstein@alston.com
Rodney J.  Ganske, Esq. (GA Bar No. 283819)
rod.ganske@alston.com
Matthew D.  Kent, Esq. (GA Bar No. 526272)
matthew.kent@alston.com
Elizabeth Helmer, Esq. (GA Bar No. 415161)
elizabeth.helmer@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia  30309-3424
Tel: (404) 881-7000
Facsimile: (404) 881-7777

James M. Wagstaffe, Esq. (SBN 95535)
wagstaffe@kerrwagstaffe.com
**Kerr & Wagstaffe LLP**
101 Mission Street, 18th Floor
San Francisco, California 94105-1576
Tel: (415) 371-8500
Facsimile: (415) 371-0500

*Attorneys for Plaintiffs Dell Inc. and Dell Products L.P.*

26