Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone:  (415) 563-7200
Facsimile:   (415) 346-0679
malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-SC<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>ALL INDIRECT-PURCHASER ACTIONS | **INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO PHILIPS AND TOSHIBA DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT AGAINST INDIRECT PURCHASER PLAINTIFFS WHO ARE NATURAL PERSONS RESIDING IN CALIFORNIA**<br><br>Date: February 6, 2015<br>Time: 10:00 a.m.<br>Place: Courtroom 1<br><br>The Honorable Samuel Conti |

**ISSUES TO BE DECIDED**

Whether the Court should grant partial summary judgment in favor of Philips and Toshiba against California consumers who purchased CRTs in California, where: (1) this Court has certified a California class that includes California consumers; (2) the Attorney General of California ("AG"), in her *parens patriae* action, does not seek to recover compensatory damages for California consumers; (3) the AG and Philips dispute whether their settlement includes a release of the class claims of California consumers; and (4) Philips seeks to bar the claims of California consumers based on the res judicata effect of a California judgment that is not final, and which left crucial issues undecided.

**INTRODUCTION**

***The Philips Motion***

Philips' summary judgment motion must be denied.

Preliminarily, the Court should not countenance Philips' latest tactic to seek dismissal of the IPP claims. Philips has taken the position that, when it settled the *parens patriae* claims brought by the AG in state court, for a mere $500,000, it also settled the claims of individual consumers who are members of the IPP California class in the MDL (the "Class Claims"). That position is at odds with the position of the AG, who asserts that she "did not and could not" release these claims. Philips did not inform this Court of its interpretation of the settlement, even after the Court certified the IPP California class, and even though Philips' settlement strategy could seriously interfere with the management of this MDL. Instead, Philips hoped to obtain a quick and very cheap settlement of the Class Claims: (1) by asserting that the AG has released those claims (despite her insistence to the contrary); (2) by seeking settlement approval from a state court with no investment in the MDL and no experience with the IPP class action litigation; and (3) by obtaining a settlement that would not be subject to Rule 23 scrutiny. *See* Fed. R. Civ. P. 23 subd. (e) (requiring federal court approval of settlements of the claims of a federally-certified class).

Philips did not get the immediate results it had counted on. Two representatives of

1   the IPP California class objected in state court that the settlement did not release the Class

2   Claims.  The superior court approved the settlement and entered judgment, but without

3   ever ruling on the scope of the AG's release, so the issue remains undecided.  And in any

4   event, as the judgment following settlement approval is now on appeal, there is no final

5   judgment yet.

6       Following its initial end-run around *this* Court and Rule 23 requirements, Philips,

7   undeterred, now makes an end-run around the *state* courts to obtain the judgment it is

8   seeking.  Indeed, Philips brings a summary judgment motion, which—despite Philips'

9   protestations—is nothing but a thinly-veiled res judicata motion:  It asks the Court to bar

10   individuals who did not opt out of the AG's action from pursuing the Class Claims.  The

11   Court should not condone Philips' actions.

12       Furthermore, the motion itself has no merit.

13       *First*, the motion is not ripe. Philips concedes that it has not yet obtained a final

14   judgment in the *parens patriae* action.  Nor is there is any guarantee that the judgment will

15   be affirmed.  Even if it were, as a matter of law a judgment on the AG's claims for

16   restitution would not be res judicata as to the IPPs' similar class action claims, so in any

17   event there could be no res judicata effect as to all claims.

18       *Second*, material issues of law and fact remain concerning the scope and fairness of

19   the settlement.  Although Philips maintains that the *parens patriae* action and the IPP class

20   action are duplicative, whether that is so is a disputed issue.  The settling parties

21   themselves disagree on the scope of the AG's release under the terms of the settlement

22   agreement: Philips contends that the AG's release includes a release of the Class Claims,

23   while the AG contends that it does not.  In addition, the AG's position is that, as *parens*

24   *patriae*, she could not release the Class Claims because she lacks power to release the

25   Cartwright Act claims of a certified class.  Lastly, the IPP representatives agree with the

26   AG that, as a contractual matter, the settlement did not extinguish their claims; but if it did

27   do so, the IPPs have objected that the settlement would be fundamentally unfair to the

28

1   consumers and could not stand.

2       The settling parties agreed that the interpretation of their agreement would be

3   within the exclusive jurisdiction of the state court.  Accordingly, all these disputed issues

4   will be determined by the California Court of Appeal.  Until such time as that court makes

5   a ruling, Philips' argument that the actions are duplicative is premature.

6       ***The Toshiba Motion***

7       Toshiba raises no arguments of its own.  Further, not only is Toshiba not a party to

8   the settlement agreement between the AG and Philips; Toshiba does not have a settlement

9   with the AG, and it is not even a named defendant in the same state action as Philips.  If

10  Philips' motion is denied, Toshiba's motion must be denied as well.

11                          **STATEMENT OF FACTS**

12      On May 2012, following execution of a settlement, the AG filed a First Amended

13  Complaint naming Philips and alleging the same price-fixing conspiracy involving CRTs

14  that the IPPs have alleged.  The AG's claims included class action claims on behalf of

15  governmental entities, and *parens patriae* claims on behalf of "natural persons" residing in

16  California.  These "natural persons" are members of the California class in the MDL.

17      Under the parties' agreement, Philips paid $500,000 (all of which will be

18  distributed via *cy pres* rather than to the consumers), in exchange for the AG's release of

19  both the governmental class action claims and the *parens patriae* claims.[1]

20      The settling parties disagree on the scope of the AG's release.  According to the

21  AG's briefings in state court, her release of *parens patriae* claims did not release the

22  Class Claims, and she has no power to release the claims of a certified class:  "[T]he

23  release as to Philips cannot and in fact does not cover the Class Claims."  Declaration of

24

25  ─────────────────
    [1] In fact, because the $500,000 was not allocated between the *parens patriae* claims and
26  the governmental claims, it is impossible to know what Philips actually paid to settle the
    *parens patriae* claims. *See* Declaration of Tiffany B. Gelott in Support of [Philips] Notice
27  of Motion and Motion for Summary Judgment against Indirect Purchaser Plaintiffs Who
    Are Natural Persons Residing in California ("Gelott Decl."), Ex. C (Settlement
28  Agreement).

                                    3

1 Sylvie K. Kern in Support of Indirect Purchaser Plaintiffs' Opposition to Philips and

2 Toshiba Defendants' Motions for Partial Summary Judgment Against Indirect Purchaser

3 Plaintiffs Who Are Natural Persons Residing in California ("Kern Decl."), Ex. A.[2]

4 　　　　According to Philips, the release extinguished both the *parens patriae* claims and

5 the Class Claims.  Philips has stated in briefings that it "recognizes the Plaintiffs [the

6 State of California] maintain an opposite view."  *Id.,* Ex. B.  Nonetheless, Philips has

7 entirely omitted from its summary judgment motion briefing any reference to this

8 fundamental disagreement between the settling parties over the terms of the release.

9 　　　　During proceedings in state court, Jeffrey Figone, a representative of the IPP

10 California class in this MDL, appeared and objected to the settlement.  He argued that the

11 settlement terms were contrary to Philips' interpretation of the release and that the

12 settlement did not extinguish the Class Claims.[3]  He asked the court to determine the

13 scope of the release.  He also objected to the settlement as grossly unfair; and he argued

14 that the settlement could not be approved if it released the claims of the California class.

15 *See generally* Kern Decl., Ex. C.  Mr. Figone also objected to the notice of settlement.

16 　　　　On September 5, 2013, Mr. Figone filed a timely objection to final settlement

17 approval on his own behalf and on behalf of "all individuals residing in the State of

18 California, including unincorporated sole proprietors doing business in their own name."

19 *Id.,* Ex. D.  Steven Ganz, another representative of the California class in the MDL who

20 had objected to the settlement, filed a timely *exclusion* on behalf of himself and "all

21

22 [2] The IPPs request that the Court take judicial notice of court filings referenced in their
brief.  *See* Fed. R. Evid. 201(b); *Barkett v. Sentosa Properties LLC*, No. 1:14–cv–01698–
23 LJO–JLT, 2014 WL 6885991, at *6 n.1 (E.D. Cal. Dec. 4, 2014) (judicial notice may be
taken of court records).  The filings are offered to show that disputed issues exist, not for
24 the truth of the matters contained therein.

25 [3] For example, Section C.18 of the Settlement Agreement states:  "The Attorney General
agrees and covenants that it [sic] will not challenge *preliminary or final approval of any*
26 *settlement by any Philips Releasee with the indirect purchaser plaintiffs (the "IPPs"), the*
*direct purchaser plaintiffs (the "DPPs"), or any individual action/opt-out plaintiffs*
27 *("IAPs") in the MDL. . . ."*  Gelott Decl., Ex. C (emphasis added).  This language shows
that Philips contemplated a separate settlement with the IPPs.  It would not have included
28 that language if it were releasing the IPPs' Class Claims.

1   individuals residing in the State of California, including unincorporated sole proprietors

2   doing business in their own name." *Id.*  Other consumers also elected to object or opt-

3   out.

4          On September 24, 2013, this Court certified a class of California indirect

5   purchasers.  The Court appointed Messrs. Figone and Ganz as representatives of the

6   California class.  *See* Dkt. Nos. 1950, 1742.

7          At the final hearing on settlement approval in state court, held on December 5,

8   2013, Mr. Figone appeared again to object to the Philips settlement.  The trial court

9   approved the settlement but declined to decide the scope of the release.  Kern Decl., Ex.

10  E-1.  The court never ruled on who opted out of the settlement.[4]

11         Mr. Figone has appealed.  *See The State of California, et al. v. Philips Electronics*

12  *North America Corp.,* Court of Appeal, First Appellate District, No. A140908.  The

13  appeal has not yet been briefed.  It is undisputed that there is currently no final judgment.

## ARGUMENT

14

15  **I.     PHILIPS' MOTION IS NOT RIPE BECAUSE THERE IS NO FINAL**
        **JUDGMENT.**
16

17         Philips contends that res judicata will apply "as soon as there is a 'final judgment'

18  in the *parens patriae* action."  Mot. at 8.  It concedes that res judicata does not apply "at

19  this stage of the proceedings to the IPP claims, given California law regarding when a case

20  is 'final' for res judicata purposes." *Id.* at 9.  Yet, Philips seeks judgment "as to the claims

21  of persons who did not opt out" of the AG's action.  *Id.* at 1.

22         Philips' position seems to be that because "res judicata is so clearly applicable," the

23  Court should grant summary judgment even though there is no final judgment.  *Id.*  The

24  argument is frivolous.  Under well-settled law (which Philips acknowledges), the Court

25  must deny the motion precisely *because* the state court judgment is not final.  There is no

26

27  _____

28  [4] The court stated:  "What about the opt-out, the effect of a purported opt-out on behalf of a
    class and the argument, perhaps by the litigant here, that that's not effective under the
    *parens patriae* statute? I'm not going to determine that now."  Kern Decl., Ex. E-2.

guarantee that the judgment will be affirmed, let alone that it would operate as res judicata as to the Class Claims.

## II.   PHILIPS' MOTION IS ALSO PREMATURE BECAUSE DISPUTED ISSUES REMAIN CONCERNING THE SCOPE AND FAIRNESS OF THE SETTLEMENT

### A.   A Disputed Issue Exists Over the Scope of the AG's Release.

According to Philips, individuals who did not opt out of the *parens patriae* settlement are now barred from pursuing their claims in the MDL.  *See* Mot. at 2.  Philips asks the Court to dismiss their claims because "those exact claims have been assumed by the California AG as *parens patriae* to those same California residents."  *Id.*  As established above, the AG disagrees with Philips.  She asserts that she did not release the Class Claims.  *See, e.g.,* Kern Decl., Ex. A p.1:14-15 ("the language of the release itself does not, on its face, encompass class claims, should a class be certified in another case, as has happened here"); p.15:7-8 (the AG's settlement "does not cover class claims under [her causes of action] where, as here, there is a certified class").  The IPPs, like the AG, contend that the settlement terms themselves do not support Philips' position.

### B.   A Disputed Issue Exists Over the AG's Ability to Release Class Claims.

But even if the settlement terms are construed to release the Class Claims, the settling parties dispute the AG's power to extinguish these claims.

The AG and the IPPs allege claims for restitution pursuant to the Unfair Competition Law and unjust enrichment principles.  A judgment on the AG's claims would not bar the IPP claims.  *See Payne v. Nat'l Collection Sys., Inc.* 91 Cal. App. 4th 1037, 1047 (2001) "(a judgment for restitution secured by the Attorney General does not have any collateral estoppel effect on private actions for restitution.").[5]

---

[5] It is unclear from the Motion whether Philips disputes this point.  Philips' statement of the issue to be decided is not limited to Cartwright Act claims.  Its motion focuses on the Cartwright Act, yet Philips seeks the dismissal of all "claims of the members of the IPP class who are natural persons residing in California who did not opt out of the AG's *parens patriae* suit."  Mot. at 2.

6

1    The AG and the IPPs both also allege Cartwright Act claims.  The AG has declared

2  that the Cartwright Act does not permit the AG, in her *parens patriae* capacity, to release

3  the claims of a certified class.  During final approval proceedings on the Philips settlement

4  in the state action, the AG informed the state court: "[T]here is nothing in the statute [Cal.

5  Bus. & Prof. Code § 16760] itself or in the legislative history that provides the Attorney

6  General with the power to release class claims in the event that a class is certified solely

7  through her *parens* representative role."  Kern Decl., Ex. A (p.16:17-20).  In her view, this

8  is because "a class action serves a different function and role than does a *parens patriae*

9  action with neither having the power to supplant the other."  *Id.* at 16:20-22.  "The release

10  as to Philips *cannot* and in fact does not cover the Class Claims."  *Id.* at 10:6-7 (emphasis

11  added).

12    **C.    Disputed Issues Exist Concerning the Fairness the Settlement.**

13    If the state court were to conclude nonetheless that the settlement released the Class

14  Claims, other material disputed issues would remain.  Mr. Figone contends that the

15  consideration given for such a release was grossly inadequate.  In addition, the settlement

16  would raise due process concerns about the adequacy of representation afforded the

17  individual consumers.  The settlement would be fundamentally unfair to the consumers,

18  and would not warrant approval.[6]

19    **D.    The California Courts, Not This Court, Must Decide These Issues.**

20    Philips' assertion that the settlement released the Class Claims requires

21  interpretation of the parties' agreement, and that interpretation raises a question of law.

22  *See, e.g., Nelson v. County of Kern,* 190 Cal. App. 4th 252, 276 (2010) ("the interpretation

23

24  ───────────────
[6] Mr. Figone raised these issues at the hearings on settlement approval and will do so on
appeal.  He has not yet filed his opening appellate brief because the parties are waiting for

25  an order from the superior court concerning the redaction of confidential matters raised in
the record.  On a related point, the IPPs briefly respond to Philips' assertion that "the

26  adequacy of notice to California residents is not being appealed by the objector in that
proceeding.  Thus, there is no question that California residents had adequate opportunity

27  to remove themselves from the *parens patriae* proceeding and pursue separate claims if
they chose to do so."  Mot. at 7.  The IPPs dispute these statements.  Mr. Figone will be

28  arguing on appeal that the notice was deficient because consumers were unable to make
informed decisions about whether to opt out.  Kern Decl., ¶ 8.

of a written instrument presents a question of law which is reviewed de novo"). But, it is not up to *this* Court to render that interpretation. Likewise, it is not for this Court to opine on the ability of the AG to release certified class claims, or to determine whether the settlement should be approved. Under the terms of the agreement, these are issues within the exclusive jurisdiction of the *state* court. Paragraph G. 34 of the Settlement Agreement approved by court order (Gelott Decl., Ex. C) states:

> The court in which the Attorney General files an action against Philips and one or more of its co-conspirators shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by the Settling Parties. This Agreement shall be construed according to the laws of the State of California without regard to its choice of law or conflict of laws principles.

## III.   *PARENS PATRIAE* ACTIONS AND CLASS ACTIONS EMBODY DIFFERENT INTERESTS.

Philips argues that the California legislature "did not intend that individual complainants could maintain private claims after the AG has brought suit on their behalf, unless they opted out of the AG's action." Mot. at 5. This argument is baseless.

First, the state courts did not rule on who has opted out of the AG's action. A disputed fact exists concerning the validity of Mr. Ganz's opt-out on behalf of the California class. Philips cited no California law in support of its position in state court. If the California Court of Appeal determines under California law that the opt-out was valid, these consumers' claims cannot be barred.

Second, Philips' motion contains fundamental misconceptions about the interplay between *parens patriae* actions and class actions. These two types of actions have different purposes; the ultimate use of monies recovered makes this clear. Here, for example, the AG contemplates a *cy pres* distribution of the settlement proceeds.

1    Consumers will receive no money from the AG's settlement.[7]  By contrast, the IPP class

2    action will compensate individual purchasers for the damages they incurred.  There have

3    already been settlements in the IPP class action totaling millions of dollars.

4         The *parens patriae* doctrine allows an Attorney General to sue on behalf of her

5    citizens when she "alleges injury to a sufficiently substantial segment of its population,

6    articulates *an interest apart from the interests of particular private parties*, and expresses a

7    quasi-sovereign interest."[8]  *Washington State v. Chimei Innolux Corp.,* 659 F.3d 842, 847

8    (9th Cir. 2011) (emphasis added).  The *Chimei* court, in holding that *parens patriae* actions

9    are not "class actions" within the meaning of the Class Action Fairness Act,[9] observed:

10                  As the California Supreme Court also noted, a statutory
                    *parens patriae* action may well result in a settlement that
11                  does not include restitution to victims of the fraud, but only
                    results in penalties paid to the public treasury.  [Internal
12                  citation omitted.]  *This fact highlights the great distinction
                    between a* parens patriae *lawsuit and a true class action.*
13

14   *Id.* at 848 (citing *People v. Pacific Land Research Co.,* 20 Cal.3d 10, 18 (1977) (emphasis

15   added)).  In fact, an Attorney General's "role as a protector of the public may be

16   inconsistent with the welfare of the class so that [s]he could not adequately protect their

17   _____

18   [7] The settlement agreement states that the funds obtained are to be used for the following
     purposes: (1) attorney's fees and expenses; (2) compensation for harm to the general
19   California economy caused by Chunghwa and Philips; (3) deposit into an antitrust or
     consumer protection account (e.g., revolving account, trust account, special fund) for use in
20   accordance with the laws governing such an account; and (4) antitrust or consumer
     protection enforcement by the Attorney General.  *See* Gelott Decl., Ex. C ¶ B.12.c.  The
21   final approval order states that amounts recovered will be placed in a *cy pres* fund for
     technology-related grants to the *governmental-entity* class members and charitable and
22   non-profit organizations.  *Id.,* Ex. E ¶10.  No consumers will be getting any money.

23   [8] *Parens patriae* actions are often pursued where (unlike here) there is a low likelihood that
     individual claimants will seek relief.  *See, e.g., Connecticut v. Physicians Health Servs. of
24   Conn.,* 287 F.3d 110, 120 n.14 (2d Cir. 2002) cert. denied *Connecticut v. Physicians
     Health Services of Connecticut, Inc.,* 537 U.S. 878 (2002) (listing decisions finding
25   *parens patriae* standing appropriate for that reason); *In re Tobacco/Gov't Health Care
     Costs Litig.* 83 F. Supp. 2d 125, 134 (D.D.C. 1999) ("'*Parens patriae* standing appears to
26   be most justifiable in those instances where undeniable harm has been done, but for some
     reason the individual injuries are not legally cognizable.' [Internal citation omitted.]  After
27   all, the theoretical underpinning of *parens patriae* standing is to 'prevent [] . . . injury to
     those who cannot protect themselves.'") (citations omitted).

28   [9] Pub. L. No. 109–2, 119 Stat. 4 (codified at 28 U.S.C. §§ 1332(d), 1453, 1711–15).

9

1   interests." *Pacific Land Research Co.*, 20 Cal. 3d at 18.  By contrast, in class actions, "the

2   Due Process Clause of course requires that the named plaintiff at all times adequately

3   represent the interests of the absent class members." *Phillips Petroleum Co. v. Shutts* 472

4   U.S. 797, 812 (1985), citing *Hansberry v. Lee*, 311 U.S. 32, 42-43, 45 (1940).

5           In the antitrust setting, legislators and courts have recognized that *parens patriae*

6   actions and class actions operate in tandem.  *See United States v. Borden,* 347 U.S. 514,

7   518 (1954) ("These private and public [antitrust] actions were designed to be cumulative,

8   not mutually exclusive. . . 'Different policy considerations govern each of these.  They

9   may proceed simultaneously or in disregard of each other.'"  *Id*. at 518-519 (citation

10  omitted).  And in instances when the AG has settled claims under California's Unfair

11  Competition Law (UCL)—claims similar to *parens patriae* claims because they are

12  brought on behalf of the public—courts have permitted plaintiffs in a subsequent class

13  action to recover damages.  "[B]ecause an unlawful competition law lawsuit commenced

14  by a prosecutor is brought fundamentally for the benefit of the public and as a law

15  enforcement action," a defendant in such a lawsuit is not entitled to the same safeguards

16  normally affording protection against multiple lawsuits.  *Payne,* 91 Cal. App. 4th at 1046.

17  Consequently, a judgment on a UCL claim filed by the AG does not bar individual

18  plaintiffs in a later class action from obtaining relief.  *Id.* at 1047 ("res judicata effect is not

19  to be accorded to a judgment in an unlawful competition law lawsuit commenced by a

20  prosecutor in a subsequent lawsuit by persons defrauded by a defendant").

21          Here, the AG as *parens patriae* has not sued to obtain compensatory damages for

22  private individuals.  The AG herself has determined that she may not, under the Cartwright

23  Act, release certified class claims of individuals in her role as *parens patriae*.[10]  Plaintiffs'

24  class claims are not barred.  The motion must be denied.

25

26  [10]  The AG's interpretation of her own powers is accorded great weight.  "[B]oth [the
    California Supreme Court] and the United States Supreme Court have recognized on
27  numerous occasions that '[t]he construction of a statute by the officials charged with its
    administration must be given great weight.'"  *Harrott v. County of Kings*, 25 Cal. 4th 1138,
28  1154-1155 (2001). quoting *Highland Ranch v. Agricultural Labor Relations Bd.*, 29 Cal.
    3d 848, 859 (1981).

1

**CONCLUSION**

2          For the foregoing reasons, the motions for summary judgment should be denied.

3

4     Dated:  December 23, 2014              By:   /s/ Mario N. Alioto

5                                            Mario N. Alioto (56433)
                                             Lauren C. Capurro (241151)
6                                            TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
                                             2280 Union Street
7                                            San Francisco, CA 94123
                                             Telephone:     (415) 563-7200
8                                            Facsimile:     (415) 346-0679
                                             malioto@tatp.com
9                                            laurenrussell@tatp.com

10                                           *Lead Counsel for Indirect*
                                             *Purchaser Plaintiffs*
11
                                             *On the brief:*
12
                                             Sylvie K. Kern (111751)
13                                           KAG LAW GROUP
                                             P.O. BOX 210135
14                                           San Francisco, CA 94121
                                             Telephone:     (415) 221-5763
15                                           sylviekern@yahoo.com

16

17

18

19

20

21

22

23

24

25

26

27

28

IPPS' OPPOSITION TO PHILIPS & TOSHIBA DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY
JUDGMENT AGAINST IPPS WHO ARE NATURAL PERSONS RESIDING IN CALIFORNIA
MASTER FILE NO. CV-07-5944-SC, MDL NO. 1917