William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:  (202) 237-6131
Email:  wisaacson@bsfllp.com

Philip J. Iovieno
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY  12207
Telephone:  (518) 434-0600
Facsimile:  (518) 434-0665
Email: piovieno@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs and Counsel for Plaintiffs ABC Appliance, Inc., CompuCom Systems, Inc., Electrograph Systems, Inc., and Electrograph Technologies Corp., Interbond Corporation of America, MARTA Cooperative of America, Inc., Office Depot, Inc., P.C. Richard & Son Long Island Corporation, Schultze Agency Services LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC, Tech Data Corporation and Tech Data Product Management, Inc.*

[additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 07-5944 SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| ALL INDIRECT-PURCHASER ACTIONS | **PLAINTIFFS' OPPOSITION TO DEFENDANTS PANASONIC CORPORATION OF NORTH AMERICA AND PANASONIC CORPORATION'S (F/K/A MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD.) MOTION FOR SUMMARY JUDGMENT** |
| *Sharp Electronics Corp., et. al. v. Hitachi Ltd., et al.*, No. 13-cv-01173 | |
| *Electrograph Sys., Inc., et al. v. Hitachi, Ltd., et al.* No. 11-cv-01656; | |
| *Electrograph Sys. Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05724; | The Honorable Samuel Conti |
| *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502; | |
| *Siegel v. Technicolor SA, et al.*, No. 13-cv-05261; | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |
| *Best Buy Co., Inc., et. al. v. Hitachi, Ltd., et al.*, No 11-cv-05513; | |

*Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05264;

*Target Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514;

*Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686;

*Sears, Roebuck & Co., et al. v. Chunghwa Picture Tubes, Ltd., et al., No. 11-cv-05514;*

*Sears, Roebuck & Co., et al. v. Technicolor SA, et al., No. 13-cv-05262;*

*Interbond Corp. of Am. v. Hitachi, Ltd., et al., No.11-cv-06275;*

*Interbond Corp. of Am. v. Technicolor SA, et al., No.13-cv-05727;*

*Office Depot, Inc. v. Hitachi, Ltd., et al., No. 11-cv-06276;*

*Office Depot, Inc. v. Technicolor SA, et al., No. 13-cv-05726;*

*CompuCom Systems, Inc. v. Hitachi, Ltd., et al., No. 11-cv-06396;*

*P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al., No. 12-cv-02648;*

*P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al., No. 13-cv-05725;*

*Schultze Agency Servs., LLC v. Hitachi, Ltd., et al., No. 12-cv-02649;*

*Schultze Agency Servs., LLC v. Technicolor SA, et al., No. 13-cv-05668;*

*Tech Data Corp., et al. v. Hitachi, Ltd., et al., No. 13-cv-00157*

## TABLE OF CONTENTS

I.      STATEMENT OF ISSUE ............................................................................... 1

II.     PRELIMINARY STATEMENT ................................................................... 1

III.    STATEMENT OF UNDISPUTED FACTS ................................................. 3

        A.      The Undisputed Facts Show a Massive, Decade-Long Global
                Conspiracy to Fix CRT Prices ......................................................... 3

                1.      There is direct evidence of a longstanding, global conspiracy
                        to fix CRT prices. ................................................................ 3

                2.      ██████████████████████████████████
                        ███ █████ ███ ████ █████ ████ █████
                        █████ .................................................................. 4

        B.      ████████████████████████████████
                █████████████████ ................................................... 5

                1.      ██████████████████████████
                        ██████████ ........................................................... 5

                2.      ████████ ███ ██ █ ████ ██ ███ ████
                        ████████████████████ ........................................... 6

                3.      ████████████████████████████
                        ███ ..................................................................... 9

                4.      ████████████████████████████
                        █████████ ............................................................ 10

                5.      ██████████████████████████ ................... 11

        C.      ██████████████████████████████████
                █████████████████ ............................................... 14

IV.     SUMMARY JUDGMENT STANDARD ..................................................... 15

V.      ARGUMENT AND AUTHORITIES ........................................................... 16

        A.      Summary judgment should be denied because overwhelming
                evidence shows that Panasonic actively participated in the global
                conspiracy. ............................................................................... 16

                1.      Direct Evidence Shows that Panasonic Participated in the
                        Conspiracy. ........................................................................ 16

2. ███████ ████ ███ █████ █████ ██████
█████ .................................................................................. 18

B.   **Panasonic's excuses** ████████████████████
████████████████████ **do not meet the summary judgment standard.** ......................................... 20

C.   **Panasonic's contested economic evidence cannot support summary judgment** ........................................................................................ 23

VI.   **CONCLUSION** .................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# <u>TABLE OF AUTHORITIES</u>

2

3      Cases

4      *Anderson v. Liberty Lobby, Inc.*,
           477 U.S. 242 (1986) ................................................................................................ 15

5

6      *Beltz Travel Serv., Inc. v. Int'l Air. Transp. Ass'n*,
           620 F.2d 1360 (9th Cir. 1980) ................................................................ 15, 16, 17

7
       *City of Long Beach v. Standard Oil. Co.*,
8          872 F.2d 1401 ......................................................................................................... 16

9      *Continental Ore Co. v. Union Carbide Corp.*,
           370 U.S. 690 (1962) ............................................................................................... 16
10
       *In re Baby Food Antitrust Litig.*,
11         166 F.3d 112 (3d Cir. 1999) ................................................................................. 16

12
       *In re Citric Acid Litigation*,
13         996 F.Supp. 951 (N.D. Cal. 1998) ............................................................. 17, 21

14
       *In re Flat Glass Antitrust Litigation*,
15         385 F.3d 350 (3rd Cir. 2004 ) ...................................................................... 19, 20

16     *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,
           210 F.3d 1099 (9th Cir. 2000) .............................................................................. 15
17
       *Sedima, S.P.R.L. v. Imrex Co., Inc.*,
18         741 F.2d 482(2d Cir. 1984), ................................................................................. 18

19
       *In re TFT-LCD (Flat Panel) Antitrust Litigation*,
20         2013 WL 3387652 (N.D. Cal. July 8, 2013) .................................... 17, 20, 21, 22

21     Rules

22     Fed. R. Civ. P. 56(a) ......................................................................................................... 14

23

24

25

26

27

28

## I.      STATEMENT OF ISSUE

Whether Panasonic Corporation ("Panasonic Corp.") and Panasonic Corporation of North America ("PNA") have established as a matter of law that they did not participate in the well-documented conspiracy to raise prices of cathode ray tubes.

## II.      PRELIMINARY STATEMENT

The overwhelming evidence adduced in this case shows that Panasonic Corp. and Panasonic Corporation of North America combined and conspired with other defendants and co-conspirators, to fix, raise, and stabilize prices for CRTs and to reduce production of CRTs.



The evidence readily proves Panasonic's participation in the wide-ranging, decade-long CRT antitrust conspiracy:



---

[1] Plaintiffs Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. maintain that Panasonic conspired to fix, raise, maintain and stabilize the price at which CRTs were sold in the United States, constituting a *per se* violation of antitrust law, and/or to exchange competitively sensitive information which caused prices for CRTs sold in the United States to be at anticompetitive levels, constituting a violation of antitrust law under a rule of reason analysis.

1



2

The evidence that Panasonic participated in the global conspiracy to fix CRT prices is staggering and is more than sufficient to allow a reasonable jury to find that Panasonic did participate.  The Court should deny Panasonic's motion for summary judgment.

### III. STATEMENT OF UNDISPUTED FACTS

**A.  The Undisputed Facts Show a Massive, Decade-Long Global Conspiracy to Fix CRT Prices**

**1.  There is direct evidence of a longstanding, global conspiracy to fix CRT prices.**

For a period of approximately 11 years, major CRT manufacturers engaged in a regular program of multilateral and bilateral meetings, at which the conspirators shared competitor information and engaged in negotiations to set prices and allocate market share, both generally and for specific customers, for CRT sales.  Against a backdrop of declining demand for CRTs in the face of burgeoning market for LCDs, the conspiracy artificially inflated CRT prices in two major ways: through direct agreement on specified prices, and by tightening supply through agreed production shutdowns.

The evidence of this conspiracy is overwhelming.

3

On page five of its motion, Panasonic concedes the existence of this CRT conspiracy and acknowledges the volume of evidence that plaintiffs have amassed in support of their allegations: ███████ ███████ ██ ████ ████ ████ ████ ██████ █████ ████████

█████████████████████████████████████████████████████████████

Panasonic does not dispute that ████████████████████████████████

███████████████████████████████████████████████████████ One of the

co-conspirators and regular meeting attendees, Samsung SDI Company Ltd., agreed to plead

guilty and pay a $32 million criminal fine to the United States Department of Justice for its

admitted role in the "global conspiracy to fix prices, reduce output and allocate market shares of

color display tubes (CDTs)."[3] ███████████████████████████████████

████████████████████████████

█ ████████████████████████████████████
████████████████████████████

████████████████████████████████████████

█████████████████████████ ██████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████ █ █████████████████████████████

████████████████████████████████████████████████████████████

---

[3] Ex. 1, Department of Justice Press Release, Friday March 18, 2011 "Samsung SDI Agrees to Plead Guilty in Color Display Tube Price-Fixing Conspiracy" *available at* http://www.justice.gov/atr/public/press_releases/2011/268592.htm █.
█ ████████████████████

4



5



Opposition to Panasonic MSJ on Cospiracy
MDL No. 1917



7







10



11



Opposition to Panasonic MSJ on Cospiracy
MDL No. 1917



13



*See* Panasonic MSJ Mot. at 1 n.2.

14

1

2

3

4

## IV. SUMMARY JUDGMENT STANDARD

5

6

Summary judgment is proper "if the movant shows that there is no genuine dispute as to

7

any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R.

8

Civ. P. 56(a).  "A moving party without the ultimate burden of persuasion at trial, – usually, but

9

not always, a defendant – has both the initial burden of production and the ultimate burden of

10

persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

11

*Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of

12

production, the moving party must either produce evidence negating an essential element of the

13

nonmoving party's claim or defense or show that the nonmoving party does not have enough

14

evidence of an essential element to carry its ultimate burden of persuasion at trial. *Id.*  "In order

15

to carry its ultimate burden of persuasion on the motion, the moving party must persuade the

16

court that there is no genuine issue of material fact."

17

18

In deciding a summary judgment motion, the Court must view the evidence in light most

19

favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson v.*

20

*Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  "Credibility determinations, the weighing of the

21

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of

22

a judge . . . ruling on a motion for summary judgment." *Id.*

23

24

 "In antitrust cases, these general standards are applied even more stringently and

25

summary judgments granted more sparingly." *Beltz Travel Serv., Inc. v. Int'l Air. Transp. Ass'n*,

26

620 F.2d 1360, 1364 (9th Cir. 1980).  Separate pieces of antitrust conspiracy must be considered

27

28

58

15

together.  A court should not tightly compartmentalize the non-movant's evidence, but instead examine it as a whole for proof of concerted action.  *Continental Ore Co. v. Union Carbide Corp.*, 370 U.S. 690, 699 (1962).  Plaintiffs raise a genuine issue of material fact by "present[ing] significant evidence of an antitrust conspiracy that tends to exclude the possibility of independent action."  *City of Long Beach v. Standard Oil. Co.*, 872 F.2d 1401, 106-07 (9th Cir. 1989).

## V.  ARGUMENT AND AUTHORITIES

Panasonic has not met and cannot meet its burden to establish as a matter of law that it did not participate in the global conspiracy to fix prices.  The evidence here is identical in kind to that which courts in the Ninth Circuit and throughout the country have previously found sufficient to allow a jury to determine participation in a conspiracy.

### A. Summary judgment should be denied because overwhelming evidence shows that Panasonic actively participated in the global conspiracy.

#### 1.  Direct Evidence Shows that Panasonic Participated in the Conspiracy.

There is substantial direct evidence that Panasonic participated in the global conspiracy to fix CRT prices.  "Direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted."  *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999).  "A conspiracy (is) not be judged by dismembering it and viewing its separate parts, but only by looking it as a whole."  *Beltz Travel Service v. Int'l Air Transport Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980).  Plaintiffs' ample evidence, viewed in light of the decades-long conspiracy to fix CRT prices, does not require any inferences to support the conclusion that Panasonic participated in that conspiracy:

16

1

2 ███ ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████
  ████████████████████████████████████████████

4 ███ ████████████████████████████████████████████████████████

5 ████████████████████

6       ████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████

9

10 ████████████████ *Cf. In re Citric Acid Litigation*, 996 F.Supp. 951, 955 (N.D. Cal. 1998) (finding

11 that there was no direct evidence of conspiracy because "although Cargill met with the

12 conspirators in this case, there is no evidence that conspiratorial action was ever discussed at

13 those meetings.").

14       Instead of disputing this significant evidence, Panasonic argues that it should not be held

15 liable as matter of law ████████████████████████████████████████

16

17 ████████████████████████████████████████   ███████████████████████

18 ████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████

20

21 ████████████████████████████████████ "Participation by each conspirator in every

22 detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator

23 may be performing different tasks to bring about the desired result." *Beltz Travel Service v. Int'l

24 Air Transport Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980). ███████████████████████

25 ████████████████████████████████████████████████████████████

26

27 ████████████████████████████████████████████████████████████

28 *See In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 12-CV-4114, 2013 WL 3387652 (N.D.

Cal. July 8, 2013); *see also* (N.D. Cal. December 10, 2010); *In re Static Random Access Memory (SRAM) Antitrust Litigation*, No. 07-md-01819CW 2010 WL 5138859 at *9 (N.D. Cal. December 10, 2010).[59]

### 2. Panasonic has not disproved plaintiffs' circumstantial evidence.

The circumstantial evidence alone in the case precludes any finding, as a matter of law, that Panasonic did not participate in the conspiracy. Even assuming that the *Matsushita* and *Citric Acid* tests for indirect evidence apply, Panasonic still would not be entitled to summary judgment ███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████ ████ █ ██ █ ███ █████ ████ ███ █████ ███ ██ ███

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████ There is absolutely no evidence of record that in any way conclusively excludes the possibility of Panasonic's culpability in the conspiracy as a matter of law.

---

[59] That no Panasonic employee has pled guilty to criminal conspiracy is irrelevant. The nature and scope of the guilty criminal pleas are not determinative of the plaintiffs' potential claims in a civil antitrust suit. "[Sherman Act] civil actions may be brought in cases in which criminal prosecution may not have been justified . . . . Thus, a civil action may succeed . . . [even] if the government [does] not show that the violation constituted a criminal act." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 741 F.2d 482, 501 n.51 (2d Cir. 1984), rev'd on other grounds, *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985). Moreover, the European Commission found that Panasonic participated in the CRT conspiracy both directly and through its joint venture MTPD and levied fines against Panasonic. *See* Press Release, December 5, 2012: "Antitrust: Commission fines producers of TV and computer monitor tubes €1.47 billion for decade long cartels. *Available at* http://europa.eu/rapid/press-release_IP-12-1317_en.htm

Contrary to Panasonic's suggestion, ample evidence reflects that Panasonic had an incentive to participate in the conspiracy to fix CRT prices. ████████████████

████████████████████████████████████████████████████

████████████████ As numerous courts have recognized, the motivation for participating in such a conspiracy is clear:

> Here, like in *Petruzzi's*, plaintiffs' theory of conspiracy – an agreement among oligopolists to fix prices as a supracompetitive level – makes perfect economic sense. In addition, absent increases in marginal cost or demand, raising prices generally does not approximate – and cannot be mistaken as – competitive conduct.

*In re Flat Glass Antitrust Litigation*, 385 F.3d 350, 358 (3rd Cir. 2004). Where, as here, a plaintiffs' theory of the conspiracy "is not implausible," but rather, "makes perfect sense," and when "the challenged activities could not reasonably be perceived as procompetitive," "more liberal inferences from the evidence should be permitted than in *Matsushita* because the attendant dangers from drawing inferences are not present." *Id.*

████████████████████████████████████████

████████████████████████████    ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████ *See In re Static Random Access Memory (SRAM) Antitrust Litigation* 2010 WL 5138859 at *9. ("The exchange of current and future price information and sales information about specific customers has no plausible pro-competitive benefit and benefits a firm that provides such information only if it facilitates

---

[60] Ex. 3, Liu Depo at 50:24-17.

collusion.").  Panasonic has not even attempted to offer a procompetitive explanation for its conduct.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████  In *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 12-CV-4114, 2013 WL 3387652 (N. D. Cal. July 8, 2013), this Court held that Toshiba's participation in bilateral meetings was sufficient to defeat summary judgment:  "There was ample circumstantial evidence from which a jury could conclude that 'Toshiba was informed of the decisions reached at crystal meetings through bilateral communications with other TFT-LCD manufacturers."  *Id.*  Similarly, in *In re Static Random Access Memory (SRAM) Antitrust Litigation* 2010 WL 5138859 at *9, this Court determined that evidence of confidential information exchanges between Samsung, the alleged leader of the SRAM conspiracy, and Cypress, was sufficient to create a genuine issue of material fact even absent direct evidence of price fixing:

> Cypress further argues that because there is no evidence it communicated with competitors apart from Samsung and Etron, there is insufficient proof that it agreed to engage in a market-wide conspiracy.  Cypress' characterization of the record overlooks some evidence that ends to show that it communicated with Defendant competitors other than Samsung or Etron.  Furthermore, Plaintiffs' need not produce evidence that Cypress communicated with many or all Defendant competitors to show that it engaged in a conspiracy to fix prices in the SRAM market.  There is evidence that Samsung played a substantial role in leading the conspiracy, and that Cypress exchanged critical price and production information with Samsung.

*Id.*

**B. Panasonic's excuses** ████████████████████████████████
████████  ██████████  ████  ████████  **do not meet the summary judgment standard.**

Panasonic's reliance on *In re Citric Acid*, to support the proposition that – as a matter of law – Panasonic did not participate in the conspiracy, is misplaced.   That case involved clear

20

and unequivocal testimony from the conspirators that Cargill did not participate in the conspiracy:

> Most persuasive is the testimony of Hans Hartmann, the President of H&R GmbH, who pled guilty to being a member of the conspiracy.  He stated that no one from Cargill attended any of the meetings at which the conspirators allocated market shares, _and that he never received sales figures from Cargill_.  When asked whom he meant by 'the conspirators,' he listed JBL, HLR, ADM, and H&R, and did not mention Cargill.

_In re Citric Acid Litigation_, 996 F.Supp. 951, 955 (N.D. Cal. 1998) (emphasis added).

There is no such testimony here. ████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████  ████████████████████████████

████████████████████████████████████████

Also affecting the court's decision in _In re Citric Acid_ was that plaintiffs in that case had pointed to only four occasions where Cargill shared price information, all of which were either public or had benign explanations.   _Id._ at 956. ████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████  ██  ████████████████████████████████████████

████████████████████████████████████████████████████

_____

61 ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████  ████████████

██████████████████████████████████████████████████████████████

21

This Court has already distinguished *Citric Acid* under similar circumstances.  In *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Toshiba sought summary judgment because Chunghwa's witnesses testified that Toshiba had not participated in <u>any</u> of the group meetings in the LCD conspiracy.  2013 WL 3387652 at at *1.  The Court disagreed:

> Contrary to Toshiba's argument, this evidence does not demonstrate, unequivocally, as was the case in *Citric Acid*, that Toshiba did not participate in the crystal conspiracy.  While the evidence may demonstrate that Toshiba did not itself attend any meetings, there remains sufficient evidence for a jury to find that Toshiba participated in the overarching conspiracy through discussions with conspirators, outside of crystal meetings, to fix prices.

*Id.*

22

1

2

3

### C. Panasonic's contested economic evidence cannot support summary judgment

Panasonic also argues that the "economic evidence" is consistent with Panasonic's claim that it did not participate in the alleged conspiracy.[64]   But Panasonic's arguments rely only on flawed analyses and contested conclusions.    They cannot support summary judgment. Moreover, Dr. Williams' analyses suffer various flaws and cannot trump (much less disprove as a matter of law) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮    At most, Panasonic's economic arguments create a jury question ▮▮▮▮▮▮

---

[64] Panasonic MSJ at 9-11, 19.
[65] Panasonic MSJ at 9.
[66]

23



[67]

[68] *In re Static Random Access Memory (SRAM) Antitrust Litigation* 2010 WL 5138859 at *9 ("Nor does evidence that Cypress sold SRAM at prices lower than its competitors disprove that it conspired to fix prices.  That Cypress may have cheated on the alleged conspiracy, angering other competitors, still leaves open the possibility that it would have sold SRAM at even lower prices absent critical knowledge about competitors' pricing and production").

[69]

[70]

[71]



## VI. CONCLUSION

There is substantial evidence that both Panasonic Corp. and PNA participated in the global CRT conspiracy, and Panasonic has not conclusively established that they did not.  The Court should deny Panasonic's motion.


Dated:  December 23, 2014                    /s/  Philip J. Iovieno

                                             Philip J. Iovieno
                                             Anne M. Nardacci

_____

[72] 

[73] Panasonic MSJ at 10-11;

[74] 

[75] 

[76] 

[77] 

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY  12207
Telephone:  (518) 434-0600
Facsimile:  (518) 434-0665
Email:  piovieno@bsfllp.com
anardacci@bsfllp.com

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:  (202) 237-6131
Email:  wisaacson@bsfllp.com

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone:  (954) 356-0011
Facsimile:  (954) 356-0022
Email:  ssinger@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs and Attorneys for Plaintiffs Electrograph Systems, Inc., Electrograph Technologies, Corp., Office Depot, Inc., Compucom Systems, Inc., Interbond Corporation of America, P.C. Richard & Son Long Island Corporation, MARTA Cooperative of America, Inc., ABC Appliance, Inc., Schultze Agency Services LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC and Tech Data Corporation and Tech Data Product Management, Inc.*

/s/  Scott N. Wagner

Robert W. Turken
Scott N. Wagner
Mitchell E. Widom
BILZIN SUMBERG MAENA PRICE &
AXELROD  LLP
1450 Brickell Ave, Suite 2300

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Miami, FL 33131-3456
Tel:     305-374-7580
Fax:     305-374-7593
Email:   rturken@bilzin.com
            swagner@bilzin.com
            mwidom@bilzin.com

*Counsel for Plaintiffs Tech Data Corporation and Tech Data Product Management, Inc.*

*/s/ Mario N. Alioto*

Mario N. Alioto
Lauren C. Capurro
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
Email: malioto@tatp.com
laurenrussell@tatp.com

*Interim Lead Counsel*
*For the Indirect Purchaser Plaintiffs*

*/s/  David Martinez*

Roman M. Silberfeld
David Martinez
Jill S. Casselman
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:  (310) 552-0130
Facsimile:   (310) 229-5800
Email:  rmsilberfeld@rkmc.com
dmartinez@rkmc.com
jscasselman@rkmc.com

Elliot S. Kaplan
K. Craig Wildfang
Laura E. Nelson
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

27

800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
Telephone:  (612) 349-8500
Facsimile:  (612) 339-4181
Email:  eskaplan@rkmc.com
kcwildfang@rkmc.com
lenelson@rkmc.com

*Counsel For Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, Inc.*

/s/  *William J. Blechman*

Richard Alan Arnold
William J. Blechman
Kevin J. Murray
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel:     305-373-1000
Fax:    305-372-1861
Email:   rarnold@knpa.com
            wblechman@knpa.com
            kmurray@knpa.com

*Counsel for Plaintiff Sears, Roebuck and Co. and Kmart Corp.*

/s/  *Kenneth S. Marks*

H. Lee Godfrey
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email:  lgodfrey@sumangodfrey.com
kmarks@susmangodfrey.com

28

Opposition to Panasonic MSJ on Cospiracy
MDL No. 1917

jross@susmangodfrey.com
jcarter@susmangodfrey.com
dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883
Email:  pfolse@susmangodfrey.com
rblack@susmangodfrey.com
jconnors@susmangodfrey.com

*Counsel for Plaintiff Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

/s/  *Jerome A. Murphy*

Jerome A. Murphy (*pro hac vice*)
Matthew J. McBurney (*pro hac vice*)
Astor H.L. Heaven (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  202-624-2500
Facsimile:  202-628-5116
E-mail:  jmurphy@crowell.com
mmcburney@crowell.com
aheaven@crowell.com

Jason C. Murray (CA Bar No. 169806)
Robert B. McNary (CA Bar No. 253745)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA  90071
Telephone:  213-443-5582
Facsimile:  213-622-2690
Email:  jmurray@crowell.com
rmcnary@crowell.com

*Counsel for Target Corp.*

29

1

2                                          /s/  *Craig Benson*

3                                          Kenneth A. Gallo (*pro hac vice*)
                                           Joseph J. Simons (*pro hac vice*)
4                                          Craig A. Benson (*pro hac vice*)
                                           PAUL, WEISS, RIFKIND, WHARTON &
5                                          GARRISON LLP
                                           2001 K Street, NW
6                                          Washington, DC 20006
                                           Telephone: (202) 223-7300
7                                          Facsimile: (202) 223-7420
                                           Email: kgallo@paulweiss.com
8                                          jsimons@paulweiss.com
                                           cbenson@paulweiss.com
9

10

11                                         Stephen E. Taylor (SBN 058452)
                                           Jonathan A. Patchen (SBN 237346)
12                                         Taylor & Company Law Offices, LLP
                                           One Ferry Building, Suite 355
13                                         San Francisco, California 94111
                                           Telephone: (415) 788-8200
14                                         Facsimile: (415) 788-8208
                                           Email: staylor@paulweiss.com
15                                         jpatchen@paulweiss.com

16

17                                         *Attorneys for Sharp Electronics Corporation
                                           and Sharp Electronics Manufacturing
18                                         Company of America, Inc.*

19

20

21

22

23

24

25

26

27

28

30