Jerome A. Murphy (*pro hac vice*)
Matthew J. McBurney *(pro hac vice)*
Astor H.L. Heaven (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  202-624-2500
Facsimile:  202-628-5116
Email: jmurphy@crowell.com
        mmcburney@crowell.com
        aheaven@crowell.com

Jason C. Murray (CA Bar No. 169806)
Robert B. McNary (CA Bar No. 253745)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone:  213-443-5582
Facsimile:  213-622-2690
Email: jmurray@crowell.com
        rmcnary@crowell.com

*Counsel For ViewSonic Corporation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-SC<br>MDL No. 1917 |
| | The Honorable Samuel Conti |
| This Document Relates to: | Individual Case No. 3:14-cv-02510 |
| *ViewSonic Corporation  v. Chunghwa Picture Tubes, Ltd. et al.,* No. 14-cv-02510 | **PLAINTIFF VIEWSONIC CORPORATION'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT BASED UPON FAILURE TO PROVIDE EVIDENCE TO AVOID FTAIA BAR ON FOREIGN COMMERCE** |
| | Judge:  Hon. Samuel P. Conti<br>Court:  Courtroom 1, 17th Floor<br>Date:     Feb. 6, 2015 at 10 a.m. |

CROWELL
& MORING LLP
ATTORNEYS AT LAW

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE

1

**TABLE OF CONTENTS**

2

**Page**

3  INTRODUCTION ................................................................................................................. 1

4  STATEMENT OF FACTS ................................................................................................... 2

5  LEGAL STANDARD .......................................................................................................... 6

6  ARGUMENT ....................................................................................................................... 7

7  I.     Defendants' First Theory Fails Because It Is Premised On An Inaccurate
        Recitation Of The Facts ........................................................................................... 7

8

9  II.    Defendants' Second Theory Fails Because There Is A Genuine Issue Of Material
        Fact As To Whether The FTAIA Applies To Defendants' Conduct ................................. 7

10         A.    Defendants' conduct was domestic in nature or, at the very least, had a
              "direct, substantial, and reasonably foreseeable" effect on domestic

11            commerce ..................................................................................................... 8

12         B.    Defendants' conduct "involved" import commerce or, at the very least, had
              a "direct, substantial, and reasonably foreseeable" effect on import

13            commerce ................................................................................................... 10

14 III.   Defendants' Third Theory Is Moot ......................................................................... 12

15 CONCLUSION .................................................................................................................. 13

16

17

18

19

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Alioto v. United States,*
  593 F. Supp. 1402 (N.D. Cal. 1984) ................................................................................6

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ..........................................................................................................6

*Animal Sci. Products, Inc. v. China Minmetals Corp.,*
  654 F.3d 462 (3d Cir. 2011) .......................................................................................10, 11

*Avalos v. Baca,*
  No. 05-cv-07602, 2006 WL 2294878 (C.D. Cal. Aug. 7, 2006) ......................................6

*Beltz Travel Serv., Inc. v. Intl Air Transport Ass'n,*
  620 F.2d 1360 (9th Cir. 1980) ..........................................................................................6

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
  No. 07-5944, 2010 WL 9543295 (N.D. Cal. Feb. 5, 2010) ..............................................8

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
  No. 07-cv-5944, 2014 WL 1091589 (N.D.Cal. Mar. 13, 2014) ......................................10

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ..........................................................................................................6

*Conn v. City of Reno,*
  591 F.3d 1081 (9th Cir. 2010) ..........................................................................................6

*Datagate, Inc. v. Hewlett-Packard Co.,*
  672 F. Supp. 1288 (N.D. Cal. 1987) .................................................................................6

*Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.,*
  417 F.3d 1267 (D.C. Cir. 2005) ......................................................................................10

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.,*
  542 U.S. 155 (2004) ..........................................................................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ..........................................................................................................6

*Motorola Mobility LLC v. AU Optronics Corp., et al.,*
  -- F.3d --, 2014 WL 6678622 (7th Cir. Nov. 26, 2014) ...................................................9

*Sun Microsystems, Inc. v. Hynix Semiconductor Inc.,*
  534 F. Supp. 2d 1101 (N.D. Cal. 2007) ...........................................................................9

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-ii-

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 07-md-1827, 2014 WL 4652126 (N.D. Cal. Sept. 18, 2014)..............................................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 09-cv-5840, 2012 WL 3276932 (N.D. Cal. Aug. 9, 2012) .....................................................8

*United States v. Hsiung*,
  758 F.3d 1074 (9th Cir. 2014)..........................................................................................8, 11

*United States v. LSL Biotechnologies*,
  379 F.3d 672 (9th Cir. 2004)..................................................................................................9

**Statutes**

15 U.S.C. §6a ................................................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 56 ......................................................................................................................6, 8

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-iii-

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE

1    Plaintiff ViewSonic Corporation ("ViewSonic") hereby opposes Defendants' Joint Motion

2    for Summary Judgment Based Upon Failure to Provide Evidence to Avoid FTAIA Bar On

3    Foreign Commerce (the "Motion") (Dkt. No. 3108).  For the reasons set forth below, Defendants'

4    Motion should be denied.

5                                                        **INTRODUCTION**

6          Defendants claim that summary judgment is warranted because the Foreign Trade

7    Antitrust Improvements Act of 1982, 15 U.S.C. § 6a (the "FTAIA"), serves as a complete bar to

8    ViewSonic's Sherman Act claim.  They base their argument on three distinct theories, all of

9    which should be rejected.

10          First, Defendants argue that ViewSonic's claim should be dismissed because, for some of

11    the monitor purchases at issue in this case, there is "uncontested evidence" that the product was

12    first "paid for and received in Taiwan" by ViewSonic International Corporation ("VSI"), a

13    Taiwanese subsidiary of ViewSonic.  That theory, however, is premised on an inaccurate

14    portrayal of the facts.  ViewSonic seeks damages only for those purchases that were ordered and

15    paid for by ViewSonic in the United States.  ViewSonic witnesses made clear at deposition that

16    purchases by ViewSonic in the United States are separate and apart from those made by VSI, and

17    that none of the products for which damages are sought in this litigation were first "acquired" by

18    VSI before coming into ViewSonic's possession.  As a result, Defendants' theory at best raises an

19    issue of fact, and at worst misleads the Court about the discovery record.  Either way, this theory

20    fails.

21          Second, Defendants argue that ViewSonic's claim should be dismissed because, for some

22    of the monitor purchases at issue in this case, ViewSonic may have taken possession of the

23    monitors free on board ("F.O.B.") in Asia during importation into the United States.  Defendants'

24    theory completely ignores, however, that ViewSonic ordered and paid for all of these monitors

25    from the United States, and that Defendants were aware that the monitors would be imported to

26    and sold in the United States.  As a result, a reasonable jury could – and should – conclude either

27    that the FTAIA does not apply in the first place, or that one of its enumerated exceptions is met.

28    Either way, this theory fails.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-1-

1    Third, Defendants argue that ViewSonic's claim should be dismissed, because they are

2   unable to tell from the transactional data produced by ViewSonic in this case which ViewSonic

3   corporate entity made the purchases at issue.  Although ViewSonic contests the veracity of that

4   assertion, it has nonetheless provided a declaration clarifying the information contained in the

5   data and addressing the concerns raised by Defendants.  As a result, this argument is moot.

6                                   **STATEMENT OF FACTS**

7    ViewSonic Corporation is a U.S. company with its headquarters in Brea, California.[1]

8   During the conspiracy period, ViewSonic purchased computer monitors containing price-fixed

9   CRTs from Defendants and their co-conspirators for resale in the United States and elsewhere.[2]

10   A purchasing team based at ViewSonic corporate headquarters in California determined the

11   vendors used and models purchased and negotiated prices paid for all the monitors that are the

12   subject of this litigation.[3]

13    After ViewSonic's purchasing team in California finalized its negotiations with a monitor

14   supplier, a different group based at ViewSonic corporate headquarters in California would then

15   order the selected monitors at the negotiated price based on customer demand in the United

16   States.[4]  These are the only purchases at issue in this case.  Often referred to as "ViewSonic

17   America" or "VSA," this group ordered, paid for, and took title of monitors to be sold in the

18

19   [1] Declaration of Matthew J. McBurney ("McBurney Decl."), Ex. 1, Bonny Cheng
Deposition ("Cheng Dep.") at 286:1-5 (Oct. 9, 2014); *id.*, Ex. 2, Bodil Chen-Kao Deposition
("Chen-Kao Dep.") at 41:24-25 (Nov. 6, 2014).  During conspiracy period, ViewSonic was
20   headquartered down the road in Walnut, California.  *Id.*, at Ex. 1, Cheng Dep. at 38:4-5; 52:17-
20; 55:13-20; 168:24-169:1; *Id.*, at Ex. 2, Chen-Kao Dep. at 41:17-25; *Id.*, at Ex. 3, Rose Yang
21   Deposition ("Yang Dep.") at 106:16-22 (Nov. 7, 2014).

22   [2] *Id.*, at Ex. 1, Cheng Dep. at 55:21-56:7; 91:16-24; 168:12-17; 172:21-25; 231:17-232:10;
*id.*, Ex. 3, Yang Dep. at 15:2-6.

23   [3] *Id.*, at Cheng Dep. 55:2-58:20; 86:17-20; 119:23-121:5; 153:23-154:7; *Id.*, at Ex. 3,
Yang Dep. at 24:15-25:4; 42:5-12; *see also* Declaration of Rose Yang ¶¶ 4-5 (Dec. 19, 2014)
24   ("Yang Decl.").  Defendants make much of the fact that ViewSonic's purchasing team eventually
moved to Taiwan.  However, Defendants ignore that all damages sought by ViewSonic is this
25   litigation stem from monitor purchases made prior to that move – 2004 and earlier – when the
purchasing team was based in California.  *See* McBurney Decl., Ex. 4, Report of Alan S. Frankel
26   Ph.D. ("Frankel Report") at Exs. 16a, 17 (June 6, 2014).

27   [4] *Id.*, at Cheng Dep. at 76:4-12; 110:22-24; 111:19-112:2; 117:4-18, *Id.*, at Ex. 3, Yang
Dep. at 24:23-25:15; 42:5-12; 43:6-15; 59:1-12; 60:15-19; 73:3-7.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-2-

1   United States.[5]  ViewSonic America issued its purchase orders for monitors from the United

2   States, was invoiced for those monitors in the United States, and paid for the monitors from the

3   United States.[6]  Those purchase orders all listed ViewSonic's California corporate headquarters in

4   the "ship to" and "bill to" fields.[7]  As a result, when ViewSonic America ordered a shipment from

5   a supplier, the supplier was aware that the monitors would be imported into and sold in the United

6   States.[8]

7        The negotiations between ViewSonic's purchasing team in California and the monitor

8   suppliers often culminated in the signing of OEM Agreements that dictated the overall business

9   relationship between the parties.[9]  Pursuant to at least some of those OEM Agreements, risk of

10  loss/damage for the monitors while in transit from Asia was shifted to ViewSonic America by

11  requiring shipment F.O.B. the monitor supplier's location in Asia.[10]  In those situations,

12  ViewSonic America took title of the monitors abroad during importation into the United States.[11]

13  However, all other aspects of the transactions – vendor and model selection, pricing

14  determinations, ordering, invoicing, and payment – occurred in the United States.

15       ViewSonic's foreign subsidiaries – VSI, ViewSonic China Ltd. ("VSCN"), and

16  ViewSonic Europe Ltd. ("VSE") – followed a similar process in connection with monitors to be

17

18
     [5] *Id*., Ex. 1, Cheng Dep. at 76:7-17; 166:2-3; *Id.,* at Ex. 3, Yang Dep. at 59:5-8; 59:13-16;
19  Yang Decl. ¶ 4.

        [6] *Id.,* at Ex. 1, Cheng Dep. at 73:6-24; 74:12-23; 75:16-76:17; *Id.,* at Ex. 3, Yang Dep. at
20  59:5-8; 59:13-16; Yang Decl. ¶ 4.

21       [7] Yang Decl. ¶ 4.

        [8] *See, e.g.*, McBurney Decl., Ex. 5, VIEW_CRT00002328 (listing Walnut, California as
22  the bill-to and ship-to address even though Taiwan is listed as the F.O.B.); *Id.,* at Ex. 6,
    VIEW_CRT00016574 (listing Walnut, California as the bill-to and ship-to address even though
23  Xiamen, China is listed as the F.O.B.); s*ee also Id.,* at Ex. 1, Cheng Dep. at 73:6-16; *Id.,* at Ex. 3,
    Yang Dep. 59:5-8,13-16.  These purchase orders contrast with those issued by VSI, which, as
24  Defendants explain in their brief, "reflect[] VSI in Taiwan as the bill-to and a ship-to address."
    Motion at 12.
25
        [9] *Id.,* at Ex. 1, Cheng Dep. at 55:2-18; 85:21-87:1; 99:10-15; 153:20-154:2; 264:24-
26  265:22; 267:21-268:10; *Id.,* at Ex. 2, Yang Dep. at 24:17-22; 95:8-15; 106:1-107:12.

        [10] *Id.,* at Ex. 1, Cheng Dep. at 270:21-271:14; 283:3-25.
27
        [11] *Id.,* at Ex. 1, Cheng Dep. at 171:17-20; 283:12-25.
28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-3-

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE

1   resold in parts of Asia and Europe.[12]  Pursuant to the vendor, model, and pricing decisions made

2   by ViewSonic's purchasing team in California, those entities ordered and paid for monitors

3   abroad based on customer demand in their particular geographic regions outside of the United

4   States.[13]  ViewSonic has made clear from the beginning of this litigation that it seeks damages

5   only for those monitor purchases that were ordered and paid for by ViewSonic America in the

6   United States; it does not seek to recover for monitor purchases by its foreign subsidiaries.[14]

7          Despite what Defendants assert in their Motion, none of the monitor purchases for which

8   ViewSonic seeks damages in this case were first "paid for and received in Taiwan" by VSI before

9   being sent to ViewSonic in the United States.[15]  Rose Yang, ViewSonic's global planning

10   manager during the conspiracy period, was clear about this during her deposition:

11   Q:   And then as to purchases of monitors from Jean, before those monitors arrived in
          the United States did ViewSonic International take possession of them at least
12        temporarily before they were shipped here?

13   A:   The products, the [CRT] monitors purchase orders issued by ViewSonic
          International, they don't come to the U.S., if that's what you're asking.  They are
14        delivered to ViewSonic International.  It's ViewSonic America who issues its own
          purchase order will have the shipment come into Long Beach.  So it's two separate
15        transactions.  So for a supplier, they would receive every month four purchase
          orders from each of ViewSonic's four (sales) regions and they will ship the
16        shipments separately to each region.  So for ViewSonic America, they will issue
          its own PO and the shipment will go to Long Beach, delivered to ViewSonic
17        America at Long Beach.

18        ***

19   Q:   So just to make sure I understand, there were some purchases of monitors with
          CRTs in them in which ViewSonic International issues the purchase order and
20        takes possession before shipment to the United States?

21   A:   No.

22

23        _____

          [12] *Id.,* at Ex. 1, Cheng Dep. at 76:4-6; 166:2-5; *Id.,* at Ex. 3, Yang Dep. at 23:23-25; 43:8-
     15; 44:2-12; 58:10-12.
24
          [13] *See id*.
25
          [14] *See* Complaint for Damages and Injunctive Relief (Dkt. No. 1) at ¶ 13 ("Defendants and
     their co-conspirators' conspiracy affected the prices of the CRTs ViewSonic purchased in the
26   United States."); ¶ 17 ("invoices for CRTs and consumer electronics products containing CRTs
     were sent to ViewSonic in the United States, and paid for by ViewSonic in the United States").
27
          [15]  McBurney Decl., Ex. 3, Yang Dep. at 59:21-60:24; 75:2-10; *see also* Yang Decl. ¶ 5.
28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-4-

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE

1        \*\*\*

2   Q:   Yeah. So you described a process in which ViewSonic International issues
3        purchase orders and takes possession of goods and in which ViewSonic America
         issues purchase orders and takes possession of goods.  You are describing two
4        separate processes, right?

5   A:   No.  They are actual the same process.  Each region issues their own PO and they
         receive the products against those POs they issue.  Then they sell those products
6        within their own region.

7   Q:   And as for products that are destined for the United States, does ViewSonic
         International also issue purchase orders for any of those purchased monitors?

8   A:   No, they don't.

9        \*\*\*

10  Q:   Okay.  Is there anything at all in any of these pages of Exhibit 7256 that indicates
         to you that any of the products would ultimately be sold in the United States?
11

12  A:   If the purchase order is issued by ViewSonic International, they would only be
         going to VSI's coverage.  It would not come to the U.S.[16]

13      The testimony of Bonny Cheng, ViewSonic's Global Sourcing Director during the

14  conspiracy period, corroborates Ms. Yang's testimony:

15  Q:   How about for VSA, when VSA ordered product, where [sic] there occasions
         when VSA ordered product from a supplier and the supplier shipped the product
16       first to a ViewSonic location outside of the United States?

17  A:   For VSA it's always VSA receive the products in the U.S.

18  Q:   Were there occasions when VSA product was first shipped to VSI Taiwan and
         then shipped to VSA?
19
         \*\*\*
20
    A:   I don't recall any.
21
         \*\*\*
22
    Q:   And once that buying plan was -- scratch that.  When the supplier delivered the
23       product did the supplier deliver the product separately to each of the regions, or
         did the supplier deliver all the product for all regions at one time?
24
    A:   Okay.  Supplier delivered the product based on the P.O., not the buying plan.
25       Okay?  They ship it according to each region's request.  So it's not necessarily it's
         [sic] the same time.
26

27      [16] McBurney Decl., Ex. 3, Yang Dep. at 58:19-23; 59:1-16; 59:21-60:1; 60:8-24; 75:2-5;
    75:7-10.
28

1

2
    Q:      Do suppliers sometimes combine shipments for regions to a single location?

3
    A:      Rarely, never.[17]

4
## LEGAL STANDARD

5
Defendants are entitled to summary judgment only if they "show that there is no genuine

6
issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

7
Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In antitrust cases, these

8
general standards are applied even more stringently and summary judgments granted more

9
sparingly.  *Beltz Travel Serv., Inc. v. Intl Air Transport Ass'n*, 620 F.2d 1360, 1364 (9th Cir.

10
1980).  Because of its "drastic" nature in cutting off plaintiffs' right to a trial, defendants bear a

11
"'heavy burden' of demonstrating the absence of any triable issue of material fact."  *Avalos v.*

12
*Baca*, No. 05-cv-07602, 2006 WL 2294878, at *1 (C.D. Cal. Aug. 7, 2006) (citation omitted).

13
Only if this requirement is satisfied, does the burden then shift to plaintiffs to "set out specific

14
facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

15
In making its decision on summary judgment, a court cannot weigh evidence or make

16
credibility determinations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also*

17
*Conn v. City of Reno*, 591 F.3d 1081, 1094 (9th Cir. 2010).  The court is tasked only with

18
determining whether the evidence is such that a reasonable jury could return a verdict for

19
plaintiffs.  *Anderson,* 477 U.S. at 248; *Datagate, Inc. v. Hewlett-Packard Co.*, 672 F. Supp. 1288,

20
1290 (N.D. Cal. 1987).  Summary judgment is not appropriate where "contradictory inferences,

21
one of which supports the non-moving party's position, can be drawn from the facts."  *Alioto v.*

22
*United States*, 593 F. Supp. 1402, 1405 (N.D. Cal. 1984).  Moreover, the evidence presented by

23
plaintiffs is to be believed, and all justifiable inferences are to be drawn in plaintiffs' favor.

24
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

25

26

27
    [17] *Id*., Ex. 1, Cheng Dep. at 76:7-17; 111:19-112:5.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-6-

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**I.     Defendants' First Theory Fails Because It Is Premised On An Inaccurate Recitation Of The Facts.**

Defendants' first theory – that ViewSonic's Sherman Act claim should be dismissed in its entirety under the FTAIA, because there is "uncontested evidence" that some monitors containing price-fixed CRTs were first delivered to VSI in Taiwan before being shipped to ViewSonic in the United States – fails because it is premised on an inaccurate version of the facts.  As set forth above, ViewSonic witnesses made clear at their depositions that this was not the case. *See, e.g.,* McBurney Decl., Ex. 3, Yang Dep. at 59:21-60:1, 60:20-24 ("Q: So just to make sure I understand, there were some purchases of monitors with CRTs in them in which ViewSonic International issues the purchase order and takes possession before shipment to the United States?  A: No.")  ("Q: And as for products that are destined for the United States, does ViewSonic International also issue purchase orders for any of those purchased monitors?  A: No, they don't."); *Id.,* at Ex. 1, Cheng Dep. at 76:7-17 (Q:  How about for VSA, when VSA ordered product, where there occasions when VSA ordered product from a supplier and the supplier shipped the product first to a ViewSonic location outside of the United States?  A:  For VSA it's always VSA receive the products in the U.S.) (Q:  Were there occasions when VSA product was first shipped to VSI Taiwan and then shipped to VSA?  A:  I don't recall any.").  To the extent Defendants attempt to present evidence to the contrary,[18] at most, that evidence serves to defeat summary judgment by establishing a genuine issue of material fact.  For these reasons, Defendants' first theory should be rejected.

**II.    Defendants' Second Theory Fails Because There Is A Genuine Issue Of Material Fact As To Whether The FTAIA Applies To Defendants' Conduct.**

Defendants' second theory – that ViewSonic's Sherman Act claim should be dismissed in its entirety under the FTAIA, because ViewSonic took title to some monitors F.O.B. in Asia

---

[18] In support of this theory, Defendants cite to a few lines of testimony at the very beginning of Ms. Yang's deposition that appear to be the result of some confusion on the part of the witness.  However, when later asked additional questions on the same topic, Ms. Yang clarified her answers, as set forth above.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-7-

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE

1    during importation into the United States – fails because a reasonable jury could – and should –

2    conclude that the FTAIA does not serve as a bar to ViewSonic's claim.

3           Although the FTAIA declares that conduct involving wholly-foreign commerce generally

4    falls outside of the Sherman Act, it makes clear that certain such conduct remains within the reach

5    of the U.S. antitrust laws.  First, "conduct involving . . . import trade or import commerce"

6    remains subject to the Sherman Act.  15 U.S.C. §6a (introductory clause).  Under the so-called

7    "import exclusion," conduct "involving" U.S. import trade or commerce is not subject to the

8    special requirements of the FTAIA.  *See United States v. Hsiung*, 758 F.3d 1074, 1086 (9th Cir.

9    2014).  Second, conduct involving wholly-foreign commerce nonetheless remains subject to the

10    Sherman Act if it "has a direct, substantial and reasonably foreseeable effect" on *either* U.S.

11    import *or* domestic commerce, and that effect "gives rise to a [Sherman Act] claim."  15 U.S.C.

12    §6a(1)-(2).[19]  Under the so-called "direct effects exception," even purely foreign commerce falls

13    under the Sherman Act if it has a sufficiently proximate, anticompetitive effect on U.S. markets.

14    *See Hsiung*, 758 F.3d at 1086.

15           As Defendants note, the Ninth Circuit has recognized that the FTAIA is a substantive

16    element of a Sherman Act claim.  *See id.* at 1087 ("We hold that the FTAIA is not a subject-

17    matter jurisdiction limitation on the power of the federal courts but a component of the merits of a

18    Sherman Act claim involving nonimport trade or commerce with foreign nations.").  As such, its

19    application generally raises questions that must be determined by the trier of fact.  *See* Fed. R.

20    Civ. P. 56(a); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 09-cv-5840, 2012 WL

21    3276932 *2 (N.D. Cal. Aug. 9, 2012).

22        **A.**    **Defendants' conduct was domestic in nature or, at the very least, had**
23                **a "direct, substantial, and reasonably foreseeable" effect on domestic**
            **commerce.**

24           It must first be determined whether Defendants' conduct even qualifies as "conduct that is

25    significantly foreign" such that the FTAIA applies.  *See F. Hoffmann-La Roche Ltd. v. Empagran*

26     

27           [19] Defendants' recitation of the FTAIA's direct effects exception neglects to mention that the relevant effect can be on either U.S. domestic commerce <u>or</u> U.S. import commerce for the exception to apply.

28     

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-8-

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE

1   *S.A.*, 542 U.S. 155, 166 (2004); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-

2   5944, 2010 WL 9543295, at *8 (N.D. Cal. Feb. 5, 2010) ("The underlying principle is that the

3   U.S. antitrust laws are for the regulation of American commerce, including American sellers and

4   consumers, and not for the regulation of wholly foreign commerce.").  With respect to the

5   transactions at issue in this case (i.e., those made by ViewSonic America), the monitors to be

6   purchased and prices to be paid were determined in the United States pursuant to negotiations

7   between ViewSonic and Defendants; ViewSonic America issued the purchase orders from the

8   United States; Defendants invoiced ViewSonic America in the United States; and ViewSonic

9   America paid for the monitors from the United States.  *See supra*, Stmt. of Facts at 2-6.  That title

10  to some of the monitors may have transferred to ViewSonic America abroad during importation

11  into the United States does not change these core facts, and should not serve to remove

12  Defendants' anticompetitive conduct from the reach of the U.S. antitrust laws.[20]

13      But even if the mere transfer of title abroad somehow warrants application of the FTAIA,

14  as Defendants suggest, a reasonable jury could – and should – conclude that Defendants' conduct

15  had a "direct, substantial, and reasonably foreseeable" effect on U.S. domestic commerce such

16  that the FTAIA's "direct effects exception" applies.

17      An effect on U.S. commerce is "direct" if it "proceed[s] from one point to another in time

18  or space without deviation or interruption." *United States v. LSL Biotechnologies*, 379 F.3d 672,

19  680 (9th Cir. 2004).  It is "substantial" if it involves a sufficient volume of U.S. commerce and

20  not merely a "spillover effect." *Sun Microsystems, Inc. v. Hynix Semiconductor Inc.*, 534 F.

21  Supp. 2d 1101, 1110 (N.D. Cal. 2007).  And it is "reasonably foreseeable" if it "would have been

22  evident to a reasonable person making practical business judgments." *Animal Sci. Products, Inc.*

23  *v. China Minmetals Corp.*, 654 F.3d 462, 471 (3d Cir. 2011).  Such an effect "gives rise to a

24

25      [20] In their reply brief, Defendants may cite the Seventh Circuit's recent opinion in
    *Motorola Mobility LLC v. AU Optronics Corp., et al.*, -- F.3d --, 2014 WL 6678622 (7th Cir.
26  Nov. 26, 2014), as support for their position.  However, that case involves an entirely different set
    of facts.  In *Motorola*, foreign subsidiaries of a U.S. company ordered, paid for, and took delivery
27  of product abroad.  Here, a U.S. company directly ordered and paid for products from the United
    States.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-9-

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE

1    Sherman Act claim" if it was the "proximate" cause of that claim.  *See Empagran S.A. v. F.*

2    *Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267, 1270-71 (D.C. Cir. 2005).

3            Defendants' conduct had an effect on U.S. domestic commerce in the form of ViewSonic

4    America paying inflated prices for monitors containing price-fixed CRTs in the United States.

5    That effect was the direct and foreseeable result of Defendants invoicing ViewSonic America at

6    those amounts in the United States, and was substantial, as the monitors paid for by ViewSonic

7    America contained over $240 million worth of price-fixed CRTs.[21]  Moreover, it was precisely

8    this payment of inflated prices in the United States that gave rise to the Sherman Act claim now

9    being asserted by ViewSonic in this case.  As a result, a reasonable jury could – and should –

10   determine that the requirements of the direct effects exception are met, and that Defendants'

11   conduct is not protected by the FTAIA.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No.

12   07-cv-5944, 2014 WL 1091589, at *14-15 (N.D. Cal. Mar. 13, 2014) (rejecting application of the

13   FTAIA where plaintiff purchased in the United States and alleged that defendants engaged in

14   anticompetitive conduct abroad directed at the U.S. market).

15          **B.      Defendants' conduct "involved" import commerce or, at the very
                      least, had a "direct, substantial, and reasonably foreseeable" effect on**
16                    **import commerce.**

17          Defendants' second theory also falls flat because their illegal conduct involved – or at the

18   very least affected – U.S. import commerce.

19          Defendants' conduct in selling monitors containing price-fixed CRTs directly to

20   ViewSonic America for importation and sale in the United States "involved" U.S. import

21   commerce and, therefore, falls outside of the FTAIA's reach under the statute's "import

22   exclusion."  Contrary to what Defendants claim, that exclusion is not limited to only those

23   situations where a defendant itself serves as an importer.  *See* Motion at 13.  Courts that have

24   recently addressed the issue have applied the exclusion more broadly.  For example, in *Animal*

25   *Sci. Products, Inc.*, at 654 F.3d 462, the Third Circuit made clear that "[f]unctioning as a physical

26   importer *may* satisfy the import trade or commerce exception, *but* it is not a necessary

27
            [21] *See* McBurney Decl., Ex. 7, Frankel Report at Ex. 20b.

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-10-

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE

1    prerequisite." *Id.* at 470 (emphasis added).  Instead, the exclusion "requires that the defendants'

2    conduct target import goods or services," or that the conduct "is directed at a U.S. import

3    market." *See id.*at 470-71.  Likewise, the Ninth Circuit recently endorsed the stance that a

4    defendant need not be the physical importer for the exclusion to apply.  *See Hsiung*, 758 F.3d at

5    1091 (the fact that the defendants at issue "was not an 'importer' misses the point" when applying

6    the exclusion).[22]

7            Defendants sold computer monitors containing price-fixed CRTs directly to ViewSonic

8    America knowing that those monitors would be imported into the United States.  *See supra*, Stmt.

9    of Facts at 2-6.  When the monitors were for resale in the United States, the purchase orders and

10   payments for those monitors came from ViewSonic America in the United States, and title for the

11   monitors transferred directly from Defendants to ViewSonic America.  *Id.* at 2-3.  When the

12   monitors were for resale in Asia or Europe, the orders and payments came from ViewSonic's

13   foreign subsidiaries ( VSI, VSCN, and VSE), and title transferred directly to those subsidiaries.

14   *Id.* at 3-4.  As a result, even when title transferred to ViewSonic America abroad, Defendants

15   were aware that the monitors would be imported into the United States.  In this respect,

16   Defendants targeted and directed their illegal conduct at U.S. import commerce such that the

17   FTAIA should not apply.

18           But even if it is determined that Defendants must be the physical importers of the

19   monitors for the import exclusion to attach, a reasonable jury could – and should – conclude that

20   Defendants' conduct here at least had a "direct, substantial, and reasonably foreseeable" effect on

21   U.S. import commerce such that the FTAIA's direct effects exception applies.  Defendants'

22   delivery of monitors containing price-fixed CRTs to ViewSonic America was just one small step

23   removed from direct importation into the United States.  As discussed above, Defendants were

24

25         [22] Further, Judge Illston, in a related MDL in this District, recently held that the import
     exclusion is satisfied even where the defendants, themselves, did not import the particular product
26   that forms the basis of the plaintiff's claim, because the defendants' underlying conduct involved
     at least some direct sales to the United States and was intended to "suppress and eliminate
27   competition" in the United States. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-
     1827, 2014 WL 4652126, at *2 (N.D. Cal. Sept. 18, 2014) (citing *Hsiung*, 758 F.3d at 1091).

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-11-

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE

1    aware that those monitors would be imported into the United States when title was transferred to

2    ViewSonic America.  As a result, their price-fixed deliveries to ViewSonic America had an effect

3    on U.S. import commerce that was both direct and foreseeable, and, because of the large number

4    of monitors purchased by ViewSonic America, it was also substantial.  Moreover, it was the

5    payment for these price-fixed deliveries that gave rise to the Sherman Act claim now being

6    asserted by ViewSonic in this case.  Indeed, if the FTAIA's direct effects exception does not

7    apply in these circumstances, it hard to see when it ever would in the case of U.S. import

8    commerce.

9    **III.    Defendants' Third Theory Is Moot.**

10       Defendants' third theory – that ViewSonic's Sherman Act claim should be dismissed in its

11   entirety under the FTAIA, because Defendants are unable to tell which ViewSonic corporate

12   entity made the purchases reflected in the transaction data produced by ViewSonic in the

13   litigation – fails because it is now moot.  ViewSonic has attached the Declaration of Rose Yang to

14   this opposition, which provides additional background regarding its transactional data production.

15   *See* Yang Decl.  That declaration explains that the transactions reflected in the data are all

16   instances where ViewSonic ordered and paid for monitors from the United States, and where

17   ViewSonic took title of the monitors directly from the monitor suppliers.  *See id*. ¶ 4.  ViewSonic

18   is prepared to present similar evidence at trial.

19    ///

20     ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE

1

**CONCLUSION**

2       Based on the foregoing, ViewSonic respectfully requests that the Court deny Defendants'

3  Motion in its entirety.

4

5  Dated:  December 23, 2014                    Respectfully submitted,

6

7                                              /s/ Jerome A. Murphy_____

8                                              Jerome A. Murphy (*pro hac vice*)
                                               Matthew J. McBurney (*pro hac vice*)
9                                              Astor H.L. Heaven *(pro hac vice)*
                                               CROWELL & MORING LLP
10                                             1001 Pennsylvania Avenue, N.W.
                                               Washington, D.C. 20004
11                                             Telephone:  202-624-2500
                                               Facsimile:  202-628-5116
12                                             E-mail:  jmurphy@crowell.com
                                                       mmcburney@crowell.com
13                                                     aheaven@crowell.com

14                                             Jason C. Murray (CA Bar No. 169806)
                                               Robert B. McNary (CA Bar No. 253745)
15                                             CROWELL & MORING LLP
                                               515 South Flower St., 40th Floor
16                                             Los Angeles, CA  90071
                                               Telephone:  213-443-5582
17                                             Facsimile:  213-622-2690
                                               Email: jmurray@crowell.com
18                                                    rmcnary@crowell.com

19                                             *Counsel for Plaintiff ViewSonic Corporation*

20

21

22

23

24

25

26

27

28

CROWELL
& MORING LLP
ATTORNEYS AT LAW

-13-

VIEWSONIC'S OPP'N TO DEFS' JOINT MSJ BASED
UPON FAILURE TO PROVIDE EVIDENCE TO AVOID
FTAIA BAR ON FOREIGN COMMERCE