**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131
Email:  wisaacson@bsfllp.com

Philip J. Iovieno
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY  12207
Telephone:  (518) 434-0600
Facsimile:   (518) 434-0665
Email: piovieno@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs and Counsel for Plaintiffs ABC Appliance, Inc., CompuCom Systems, Inc., Electrograph Systems, Inc., and Electrograph Technologies Corp., Interbond Corporation of America, MARTA Cooperative of America, Inc., Office Depot, Inc., P.C. Richard & Son Long Island Corporation, Schultze Agency Services LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC, Tech Data Corporation and Tech Data Product Management, Inc.*

[additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-SC<br><br>MDL No. 1917 |
| This document relates to:<br><br>*Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, No.13-cv-00157;<br><br>*Siegel v. Technicolor SA, et al.*, No.13-cv-05261;<br><br>*Sears, Roebuck and Co., et al. v. Technicolor SA*, No. 13-cv-05262;<br><br>*Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05264;<br><br>*Schultze Agency Services, LLC v. Technicolor SA, Ltd., et al.*, No. 13-cv-05668; | **PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DIRECT ACTION PURCHASERS' SHERMAN ACT DAMAGES CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NEC CORPORATION AND NEC-MITSUBISHI ELECTRIC VISUAL SYSTEMS CORPORATION**<br><br>Judge:  Hon. Samuel P. Conti<br>Court:  Courtroom 1, 17th Floor<br>Date:  February 6, 2015<br>Time: 10:00 A.M. |

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

1  *Costco Wholesale Corporation v.*
   *Technicolor SA, et al.*, No. 13-cv-05723;

2  *Electrograph Systems, Inc., et al. v.*
3  *Technicolor SA, et al.*, No. 13-cv-05724;

4  *P.C. Richard & Son Long Island*
   *Corporation, et al. v. Technicolor SA, et al.*,
5  No. 13-cv-05725;

6  *Office Depot, Inc. v. Technicolor SA, et al.*,
   No. 13-cv-05726;

7  *Interbond Corp. of Am. v. Technicolor SA,*
8  *et al.*, No. 13-cv-05727;

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ..............................................................................................................i

TABLE OF AUTHORITIES ......................................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

I.      INTRODUCTION................................................................................................................ 1

        A.      DAPs Have Sherman Act Standing for Purchases From NMV. ........................ 2

        B.      DAPs Have Sherman Act Standing With Respect to Purchases From Other
                NEC Entities.......................................................................................................... 3

II.     RELEVANT PRIOR ORDERS.......................................................................................... 4

III.    STATEMENT OF MATERIAL FACTS............................................................................ 5

        A.      Mitsubishi Participated in the CRT Price-Fixing Conspiracy............................ 5

        B.      Mitsubishi and NEC Formed NMV in 2000, and Together Owned and
                Controlled NMV. .................................................................................................. 5

        C.      DAPs Purchased CRT Finished Products From NMV. .................................... 10

        D.      DAPs Purchased CRT Finished Products From NEC Entities. ........................ 11

IV.     LEGAL STANDARD ........................................................................................................ 11

        A.      Summary Judgment Standard of Review. ......................................................... 11

        B.      Legal Standards Governing the Ownership or Control Exception to *Illinois
                Brick*. ................................................................................................................... 12

V.      ARGUMENT ..................................................................................................................... 14

        A.      Purchases From NMV Fall Squarely Within the Ownership or Control
                Exception to *Illinois Brick*................................................................................. 14

        B.      DAPs Have Standing for Damages Flowing From Purchases From Mitsubishi's
                Joint Venture Partner, NEC, Under the Ownership or Control Exception. ...... 23

CONCLUSION .....................................................................................................................25

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................... 11

*Freeman v. San Diego Ass'n of Realtors*,
  322 F.3d 1133 (9th Cir. 2012) .................................................................. 12, 21, 23

*Howard Hess Dental Laboratories Inc. v. Dentsply International, Inc.*,
  424 F.3d 363 (3d Cir. 2005) ............................................................................... 13

*In re ATM Fee Antitrust Litigation*,
  686 F.3d 741 (9th Cir. 2012) ...................................................................... passim

*In re Brand Name Prescription Drugs Antitrust Litigation*,
  123 F.3d 599 (7th Cir. 1997) ................................................................. 13, 16, 17

*In re Lithium Ion Batteries Antitrust Litigation*,
  No. 13-md-2420, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ........................... 16

*In re TFT-LCD (Flat Panel) Antitrust Litigation ("TFT-LCD I")*,
  No. 07-md-1827, 2012 WL 5869588 (N.D. Cal. Nov. 29, 2012) .................... 4, 19

*In re TFT-LCD (Flat Panel) Antitrust Litigation ("TFT-LCD II")*,
  No. 07-md-1827, 2012 WL 7062366 (N.D. Cal. Dec. 26, 2012)................... passim

*In re Vitamin C Antitrust Litigation*,
  279 F.R.D. 90 (E.D.N.Y. 2012) ............................................................. 20, 21, 22

*Kloth v. Microsoft Corp.*,
  444 F.3d 312 (4th Cir. 2006) ............................................................................... 21

*Loeb Indus., Inc. v. Sumitomo Corp.*,
  306 F.3d 469 (7th Cir. 2002) ............................................................................... 23

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,
  210 F.3d 1099 (9th Cir. 2000) ............................................................................. 11

*Perma Life Mufflers, Inc. v. International Parts Corp.*,
  392 U.S. 134 (1968) ........................................................................................... 23

*Royal Printing Co. v. Kimberly Clark Co.*,
  621 F.2d 323 (9th Cir. 1980) ....................................................................... passim

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
  608 F. Supp. 2d 1166 (N.D. Cal. 2009) ....................................... 13, 16, 17, 21

ii

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

**RULES**

Fed. R. Civ. P. 56(a) ............................................................................................................ 11

**OTHER AUTHORITIES**

Principles of Corporate Governance § 1.10(a) (1994) ............................................................ 18

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

The undersigned Direct Action Plaintiffs (collectively, "DAPs") hereby oppose Defendants' Motion for Partial Summary Judgment as to DAPs' Sherman Act Damages Claims Based on CRT Product Purchases from NEC Corporation and NEC-Mitsubishi Electric Visual Systems Corporation [Dkt. 3020-4] (the "Motion").

## I.   **INTRODUCTION**

At the motion to dismiss stage, this Court discussed the significant evidence of Mitsubishi's participation in the CRT price-fixing conspiracy—including admissions from coconspirator Samsung SDI which directly implicate Mitsubishi as a participant in the illegal price-fixing cartel.  Defendants' Motion is an effort to evade liability for millions of dollars in Sherman Act damages caused by Mitsubishi's participation in the CRT price-fixing conspiracy—damages which flowed through two channels of distribution relating to Mitsubishi's owned and controlled joint venture.

Specifically, Defendants contend that the long-established ownership or control exception to *Illinois Brick*, recognized over thirty years ago in *Royal Printing Co. v. Kimberly Clark Co.*, 621 F.2d 323 (9th Cir. 1980), does not apply to two categories of purchases—(1) CRT finished product purchases from a joint venture (NMV) between Mitsubishi (a Defendant and alleged conspirator in this action) and NEC; and (2) CRT finished product purchases from various entities undisputedly owned by NEC.  Defendants' Motion applies the wrong legal standard and largely ignores the undisputed facts evidencing Mitsubishi's ownership stake and control over NMV.

With respect to the legal standard, Defendants conspicuously fail to acknowledge the binding Ninth Circuit cases establishing the contours of the ownership or control exception.  Instead, Defendants inexplicably seek to rely on and apply a decision from the Eastern District of New York which neither cited nor applied any Ninth Circuit precedents on the meaning of ownership or control (and itself has never been cited by any other court on this point).  Absent

1

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

from Defendants' brief is any meaningful discussion of the Ninth Circuit's holding in *In re ATM Fee Antitrust Litigation*, 686 F.3d 741 (9th Cir. 2012) ("*ATM Fee*"), the decisions of Judge Illston in the *In re TFT-LCD (Flat Panel) Antitrust Litigation*, or even this Court's own opinion regarding Defendants' earlier motion for summary judgment on the application of the exception in this very case.

Under binding Ninth Circuit precedent, DAPs must show "an ownership or control relationship between each challenged vendor and an alleged conspirator." *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-md-1827, 2012 WL 7062366, at *3, *4 (N.D. Cal. Dec. 26, 2012) ("*TFT-LCD II*") (relying on *ATM Fe*e as the governing legal standard). As shown below, the evidence adduced in this case plainly supports the conclusion that the exception is satisfied with respect to these purchases.

### A.    DAPs Have Sherman Act Standing for Purchases From NMV.

Of the Sherman Act damage claims addressed in Defendants' Motion, the majority is attributable to purchases DAPs made from NMV ████████████████████████████ ██████████████████████████ This ownership stake, standing alone, satisfies the ownership or control exception as set forth by the Ninth Circuit in *ATM Fee* and *Royal Printing*. In addition, this ownership interest allowed Mitsubishi to exercise control over all of NMV's business decisions, thus providing separate grounds for satisfying the control prong of the exception.

Even setting aside Defendants' errors regarding the proper governing legal standard regarding the ownership or control exception, the facts of this case clearly demonstrate that Mitsubishi did in fact own and control NMV. ████████████████████████████ ██████████ Mitsubishi owned NMV and was also able to exercise control over NMV, as evidenced by the following undisputed facts:

█ ████████████████████████

2



**B.      DAPs Have Sherman Act Standing With Respect to Purchases From Other NEC Entities.**

DAPs also purchased CRT products from wholly- or majority-owned subsidiaries of NEC—Mitsubishi's joint venture partner in NMV.  The Motion also seeks to improperly preclude DAPs from recovering any Sherman Act damages with respect to these purchases from NEC entities.

The ownership or control exception, the Ninth Circuit has stated, is designed to ensure that a Sherman Act remedy exists where an ownership or control relationship between a conspirator and a purchaser of price-fixed goods creates a situation in which there is no realistic possibility of suit.  *See ATM Fee*, 686 F.3d at 756.  Under the facts of this case, it is quite clear that NEC's ownership and control relationship with its joint venture partner, Mitsubishi, would preclude it from bringing suit to recover for the CRT price-fixing conspiracy.  At the very least, DAPs have shown that there is a genuine dispute of material fact such that summary judgment should be denied.

Defendants include only a cursory seven lines of argument in support of their incorrect

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

1  contention that there is no ownership or control relationship such that DAPs' Sherman Act
2  standing is precluded with respect to NEC purchases.  Motion at 6.  Tellingly, the only evidence
3  set forth in support of Defendants' position is the fact that Mitsubishi "has no ownership
4  interest in [NEC]."  *Id.*  But there has never been any dispute about this fact, and DAPs have
5  never relied on this fact as the basis for standing under the ownership and control exception.

6        To the contrary, the relevant legal inquiry, ignored by Defendants, is whether an
7  ownership or control relationship involving Mitsubishi forecloses any "realistic possibility of
8  suit."  *ATM Fee*, 686 F.3d at 756; *see also In re TFT-LCD (Flat Panel) Antitrust Litigation*, No.
9  07-md-1827, 2012 WL 5869588, at *3 (N.D. Cal. Nov. 29, 2012) ("*TFT-LCD I*"); *TFT-LCD II*,
10  2012 WL 7062366, at *3.  Directly bearing on this point is the ownership and control
11  relationship between Mitsubishi and NEC ████████████████████ in the CRT and
12  LCD industries which precludes any "realistic possibility of suit," and, as such, provides DAPs
13  standing.  *ATM Fee*, 686 F.3d at 756.

14        Moreover, DAPs have presented evidence that this ownership and control relationship
15  has indeed resulted in this precise outcome.  There is no evidence that NEC has, over the course
16  of seven years since the CRT cartel's illegal activities came to light, sued anyone to recover
17  damages caused by the CRT conspiracy.  Thus, Mitsubishi's baseless claims about NEC being
18  a victim who was "duped" by Mitsubishi's participation in the CRT conspiracy, Motion at 7,
19  ring utterly hollow.  Defendants have not rebutted this evidence (much less met their burden on
20  summary judgment), and the Motion should be denied.

21  **II.      RELEVANT PRIOR ORDERS**

22        Defendants have already moved for summary judgment regarding the application of the
23  ownership or control exception to Sherman Act claims in this case.  Dkts. 1013 (Dec. 12, 2011),
24  1274 (July 24, 2012).  The Court denied Defendants' motion.  Dkt. 1470 (Nov. 29, 2012).  In so
25  doing, the Court held that Sherman Act standing exists so long as a plaintiff "paid a passed-on
26  overcharge to a non-conspiring direct purchaser owned or controlled by any alleged

4

1   conspirator." *Id.* at 16.  Underpinning this ruling was the conclusion that *ATM Fee* "affirmed

2   and applied" the *Royal Printing* ownership or control exception.  *Id.* at 21.  Purchasers of CRT

3   finished products, the Court held, "have standing to sue insofar as they purchased FPs [finished

4   products] incorporating the allegedly price-fixed CRTs from an entity owned or controlled by

5   any allegedly conspiring defendant." *Id.* at 16.

6          This prior order unequivocally establishes the governing legal standards regarding the

7   exception—a standard that is ignored or, at best, incorrectly applied in Defendants' Motion.

8   Based on these standards, along with binding Ninth Circuit precedent, summary judgment

9   should again be denied.

10  **III.   STATEMENT OF MATERIAL FACTS**

11         **A.     Mitsubishi Participated in the CRT Price-Fixing Conspiracy.**

12         As demonstrated by DAPs' concurrently filed opposition to Mitsubishi's motion for

13  summary judgment on liability[1] and this Court's prior ruling on Mitsubishi's motion to

14  dimsmiss DAPs' complaints, the evidence in this case shows that "Mitsubishi executives

15  participated directly in the conspiracy, and that they agreed to keep their participation secret,

16  including by using coded references to the participating companies."  Dkt. 2439 (Mar. 13,

17  2014) at 6.  ██████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ██████████████████████████████████████████████

21         **B.     Mitsubishi and NEC Formed NMV in 2000, and Together Owned and
              Controlled NMV.**

22

23         Defendants' Motion correctly sets forth a few of the fundamental facts surrounding

24  ─────────────────────

    [1] Mitsubishi has moved for summary judgment on this liability issue in a separate motion for
25  summary judgment.  *See* Dkt. 3026.  DAPs are opposing that motion, and refer to and
    incorporate that opposition herein.

26

27                                             5

Mitsubishi's and NEC's combined ownership of their joint venture, NMV.  For example, Defendants expressly acknowledge the following undisputed facts regarding Mitsubishi's ownership and control over NMV:

These basic facts standing alone, which are openly acknowledged and admitted by Defendants, establish that Mitsubishi and NEC jointly owned and controlled NMV.  Yet, the facts which Defendants chose to present to the Court and address in their Motion only scratch the surface of the evidence that demonstrates the wide scope of the ownership and control relationship that existed between Mitsubishi and NMV.

[2] Citations of "Exh." refer to exhibits attached to the Iovieno Declaration submitted herewith. For clarity's sake, in contrast to Defendants' exhibits (which are labeled alphabetically), exhibits to the Iovieno Declaration are labeled numerically.

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917



7

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917



PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917



9

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917



The record in this MDL litigation plainly reflects that neither NEC nor any of its subsidiaries have initiated any lawsuit relating to the CRT conspiracy.  Indeed, there is no evidence that NEC or its subsidiaries have ever sued for the CRT conspiracy in any forum—not in the United States, not in Japan, not in Europe, not anywhere.

**C.   DAPs Purchased CRT Finished Products From NMV.**

DAPs purchased CRT computer monitors from NMV

Defendants' Motion

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

1    correctly treats these purchases as having been made from NMV itself.[4]   Consistent with

2    Defendants' concession, DAPs refer to these purchases as having been made from NMV itself.

3              **D.      DAPs Purchased CRT Finished Products From NEC Entities.**

4              The second category of purchases addressed in the Motion involve DAPs' purchases of

5    CRT products from various majority- or wholly-owned subsidiaries of NEC Corp (collectively,

6    the "NEC Vendors").   The NEC Vendors are indisputably owned by NEC Corp., and

7    Defendants do not address and thus properly concede for purposes of this Motion that so long

8    as DAPs establish a sufficient ownership or control relationship between NEC and Mitsubishi,

9    they have Sherman Act standing for their purchases from the NEC Vendors.

10   **IV.    LEGAL STANDARD**

11             **A.      Summary Judgment Standard of Review.**

12             Entry of summary judgment is proper "if the movant shows that there is no genuine

13   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

14   R. Civ. P. 56(a).  Summary judgment should be granted if the evidence would require a directed

15   verdict for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  "A

16   moving party without the ultimate burden of persuasion at trial—usually, but not always, a

17   defendant—has both the initial burden of production and the ultimate burden of persuasion on a

18   motion for summary judgment."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,

19   210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of production, the moving

20   party must either produce evidence negating an essential element of the nonmoving party's

21   claim or defense or show that the nonmoving party does not have enough evidence of an

22   essential element to carry its ultimate burden of persuasion at trial."  *Id.*  "In order to carry its

23   ────────────────

24   [4] In other words, Defendants do not address (and thus correctly concede) the fact that for
     purposes of Sherman Act standing analysis under *Illinois Brick*, a purchase from NEC-
     Mitsubishi Electronics Display of America, Inc. is effectively the same thing as a purchase
25   from NMV.

26

27                                                    11

ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Id.*

**B.      Legal Standards Governing the Ownership or Control Exception to *Illinois Brick*.**

At issue in the Motion is whether the long-established ownership or control exception to *Illinois Brick* applies to DAPs' claims based upon purchases from NMV and NEC.

Initially, it is appropriate to address one apparent misconception held by Defendants, who claim that DAPs seek to hold Mitsubishi "responsible for sales made by [NEC]."  Motion at 1.  Contrary to Defendants' characterization, DAPs are not singling out Mitsubishi for liability with respect to these purchases.  Instead, DAPs are pursuing Sherman Act damages *from all Defendants*, pursuant to joint and several liability, with respect to purchases from NMV and NEC.  The Motion is not, as Defendants misguided assertion seems to indicate, about vicarious liability, alter ego liability, corporate veil piercing, or any other such doctrine.[5]

The ownership or control exception was first recognized over thirty years ago by the Ninth Circuit in *Royal Printing*, 621 F.2d 323 (9th Cir. 1980) (as this Court held in its prior summary judgment order, Dkt. 1470), and was recently reaffirmed in *ATM Fee*, 686 F.3d 741 (9th Cir. 2012).  Under the ownership or control exception, a plaintiff establishes Sherman Act standing so long as it shows "an ownership or control relationship between each challenged vendor and an alleged conspirator."  *TFT-LCD II*, at *4 (citing and relying on *ATM Fee*); *see also* Dkt. 1470 at 22 ("Defendants have not carried their summary judgment burden of showing an absence of evidence in support of applying the ownership and control exception.").  The policy underlying the ownership or control exception established in *Royal Printing* (and affirmed in *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133 (9th Cir. 2012) and *ATM*

---

[5] Because the application of the ownership or control exception relates to the scope of each and every coconspirator's joint and several liability—not just Mitsubishi's liability—all Defendants are parties in interest to the Motion.

*Fee*) is to prevent price-fixers from shielding themselves from liability by making sales through a non-conspiring subsidiary or affiliate.   Barring plaintiffs that purchased directly from subsidiaries or affiliates of the conspirators from bringing suit "would eliminate the threat of private enforcement," by "clos[ing] off every avenue for private enforcement of the antitrust laws in such cases," *Royal Printing*, 621 F.2d at 326 n.7, 327.   In the words of the Ninth Circuit, "[t]his would be intolerable." *Id.* at 327.

The test of ownership or control is, by its very terms, disjunctive—*i.e.*, if either ownership *or* control is established, DAPs may proceed with their claims.   *See, e.g.*, *ATM Fee*, 686 F.3d at 756-57 (analyzing control separate from ownership).[6]  As to the ownership prong of the exception, the analysis of *ATM Fee* firmly indicates that anything more than a minority ownership interest inherently satisfies the test.   In *ATM Fee*, when the Ninth Circuit considered the "control" prong of the exception, it specifically observed that *minority* stock ownership is relevant to that inquiry.   *Id.*  Given that a minority ownership interest relates to control, the inescapable implication is that a greater-than-minority stake shows ownership.

As to the control prong of the exception—which is separate from and independent of the ownership inquiry—"modes of control that might qualify for the control exception include 'interlocking directorates, minority stock ownership, loan agreements that subject the wholesalers to the manufacturers' operating control, [or] trust agreements.'" *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1182 (N.D. Cal. 2009) (quoting *Howard Hess Dental Laboratories Inc. v. Dentsply International, Inc.*, 424 F.3d 363, 372 (3d Cir. 2005) (in turn quoting *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 605 (7th Cir. 1997))).

---

[6] This disjunctive test is a sensible one and is fully consistent with the ordinary definition of ownership, which operates "regardless of any actual or constructive control."   Black's Law Dictionary (Tenth Ed.) at 1280.

13

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

## V.    ARGUMENT

### A.    Purchases From NMV Fall Squarely Within the Ownership or Control Exception to *Illinois Brick*.

In order to have standing for their purchases from NMV, DAPs will need to prove at trial two fundamental facts: (1) that Mitsubishi conspired; and (2) that Mitsubishi was in an ownership or control relationship with NMV which satisfies the exception to *Illinois Brick*. DAPs have presented the Court with a mountain of evidence on both points—essentially all of which is unrebutted by Defendants—and summary judgment should thus be denied.

#### 1.    *Mitsubishi conspired.*

The first step of the ownership or control analysis asks whether Mitsubishi actually participated in the CRT conspiracy.  On that count, the evidence in this case plainly shows that Mitsubishi participated in the CRT price-fixing cartel.  Indeed, as the Court found in its order regarding Mitsubishi's motion to dismiss the DAPs' complaints, "[o]ne defendant in this case [Samsung SDI] recently gave extensive details regarding Mitsubishi's participation in the conspiracy, which had, until November 2013, been kept secret."  Dkt. 2439 at 6.  As the Court further stated, "[t]he defendant [Samsung SDI] stated very specifically that Mitsubishi executives participated directly in the conspiracy, and that they agreed to keep their participation secret, including by using coded references to the participating companies."  *Id.*

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

As demonstrated in DAPs' opposition to Mitsubishi's motion on liability, the evidence

---

[7] As stated in Section III.A, *supra*, a full recitation of the evidence of Mitsubishi's participation in the conspiracy is set forth in DAPs' opposition to Mitsubishi's motion on this issue.

14

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

in this case plainly supports the finding that Mitsubishi participated in the conspiracy.  As a result, the only remaining issue to be decided for purposes of this Motion is whether Defendants have met their burden of showing that there is no dispute of material fact regarding the existence of an ownership or control relationship which satisfies the exception to *Illinois Brick*.  As established below, they have not.

### 2.    *Mitsubishi's ownership interest in NMV satisfies* **ATM Fee***.*

Defendants do not contest the fact that Mitsubishi held ███████ ownership interest in NMV.  Motion at 3.  Defendants do, however, misstate the relevant legal standard by asserting that DAPs can only succeed if they show that Mitsubishi (1) has "a majority or controlling interest in NMV"; *and* (2) that Mitsubishi "had the power to exercise control over NMV's pricing decisions."  Motion at 7.  This is simply not the law; instead, Defendants are improperly trying to convert the exception from one of ownership *or* control to one of ownership *and* control.[8]

Contrary to Defendants' unsupported assertions, Mitsubishi's ownership interest, standing alone ████████████████████████████████████ and is sufficient to satisfy the ownership prong of the ownership or control exception.[9]  This conclusion is mandated by the analysis in *ATM Fee*.  In *ATM Fee*, the Ninth

---

[8] Without any explanation or support from the numerous Ninth Circuit cases that apply the *Royal Printing* exception, Defendants are apparently asking the Court to conduct an analysis that would completely ignore Mitsubishi's ████ ownership interest in NMV (which on its own satisfies the ownership prong of the exception), and also to overlook the numerous indicia of control (*e.g.*, stock ownership, overlapping directorates, and the power to appoint board members) that the Ninth Circuit has deemed pertinent to the control inquiry.

[9] Defendants themselves expressly acknowledge that ownership and control during the conspiracy period is highly relevant to this determination.  *See* Defendants' Motion for Partial Summary Judgment With Respect to DAPs' Alleged Direct Damages Claims Based on Purchases From Sanyo [Dkt. 3009-4] (arguing that "evidence of ownership or control during the relevant period is critical to whether the ownership or control exception applies to the *Illinois Brick* rule") (quotations omitted) (emphasis omitted).  Defendants go on to incorrectly (continued . . .)

15

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

1    Circuit recently held that minority stock ownership (totaling approximately 10%), without

2    more, was insufficient to satisfy the ownership exception.  *ATM Fee*, 686 F.3d at 757 (*minority*

3    *stock ownership relevant also to the control inquiry*); *see also In re Lithium Ion Batteries*

4    *Antitrust Litigation*, No. 13-md-2420, 2014 WL 4955377, at *25 n.24 (N.D. Cal. Oct. 2, 2014)

5    (same); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1180 (N.D.

6    Cal. 2009) (same); *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599,

7    605 (7th Cir. 1997) (same).

8         If the Ninth Circuit felt that greater-than-minority stock ownership (*i.e.*, 50%) might not

9    qualify as sufficient ownership, it would have said so—or it at least would have excluded the

10   word "small" when holding that a "small ownership percentage" relates to *control*.  *See ATM*

11   *Fee*, 686 F.3d at 757.  Simply put, the Ninth Circuit's holding in *ATM Fee* undeniably supports

12   the conclusion that an ownership interest of 50% or greater ███████████████████████████

13   ████████████████████████████████████████████████████████████████████████████████

14   ██████████ satisfies the exception.

15        *ATM Fee*'s analysis is no accident, ████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████     ██████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████     *Cf. ATM Fee*, 686

22   F.3d at 756 ("[W]hether a realistic possibility of suit exists[] depends on the existence of

23   ────────────────────────────────────────────────────────────────────

(. . . continued)

24   argue in that brief that ownership or control during the conspiracy period is the *only* relevant
     fact for the trier of fact to consider.  What no one disputes, however, is that ownership or

25   control during the conspiracy period suffices.

26

27                                              16

ownership or control between the direct purchaser and the seller.").

████████████████████████████████████████████ DAPs submit that the ownership prong of the ownership or control exception to *Illinois Brick* is satisfied, and that for this reason alone they have established standing to pursue their Sherman Act claims with respect to purchases from NMV.  As a result, the Court need not address the issue of Mitsubishi's control over NMV.  In any event, as set forth below, the record evidence unequivocally shows that Mitsubishi *did* control NMV.

### 3. Mitsubishi exerted sufficient control over NMV to satisfy **ATM Fee**.

Even if the Court does address the control prong of the exception, the relevant indicia of control are all present here and fully support the conclusion that Mitsubishi did in fact exert sufficient control over NMV to satisfy the requirements of *ATM Fee*.  Factors relevant to the control inquiry include interlocking directorates, minority stock ownership, and loan agreements that subject the wholesalers to the manufacturers' operating control.  *Sun Microsystems*, 608 F. Supp. 2d at 1180 (quoting *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 605 (7th Cir. 1997)).  "[O]ther modes of control separate from ownership of a majority of . . . stock" are also relevant.  *Sun Microsystems*, 608 F. Supp. 2d at 1180.  DAPs have set forth a plethora of evidence which establishes material issues of fact concerning the presence in this case of these indicia of control.

Starting with interlocking directorates, it is hard to fathom a starker example.

████████████████████████████████████████████████████████
██████████████████   ██████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

17

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

1   ██████████████████████████████████████████████████████████

2   ██████████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████

5   As to minority stock ownership, there is also really no question: ████████████

6   ██████████████████████████████████████████████████████████

7   ████████████████   This alone granted Mitsubishi the ability to control NMV.  *See* American Law

8   Institute, *Principles of Corporate Governance* § 1.10(a) (1994) ("A 'controlling shareholder'

9   means a person . . . who, either alone or pursuant to an arrangement or understanding with one

10   or more other persons . . . exercises a controlling influence over the management or policies of

11   the corporation or the transaction or conduct in question by virtue of the person's position as a

12   shareholder.").

13   This ████ ownership interest had a very real effect on Mitsubishi's ability to control

14   NMV: ████████████████████████████████████████████████

15   ██████████████████████████████████████████████████████████

16   ████████████████████   ██████████████████████████████████

17   ██████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████

19   ████████████████████████

20   ██████████████████████████████████████████████████

21   ████████████████████████████████████████████████████

22   ████  ████  ████  ████  ████  ████  ████  ██  ████  ████

23   _____

24   █  ████████████████████████████████████████████████████

25   ████████████████████████████████████████

26

27                                          18

1 ██████████████████████████████████████████████

2 ██████████████████████████████████████████████

3 ██████████████████████████████████████████████

4 ████████████   ██████████████████████████████

5 ██████████████████████████████████████████████

6 ████████████████████████████████████████████

7 ██████████████████████████████████████

8     Mitsubishi's ownership and control over NMV has a precise analog to an ownership or

9 control situation that was argued and decided in *TFT-LCD I*, 2012 WL 5869588.  In *TFT-LCD*

10 *I*, a vendor of finished goods (LG Electronics) held a 50% ownership interest in a joint venture

11 which conspired to fix the prices of LCD panels.  *Id.*, at *4.  The court assumed that the other

12 50% owner (Royal Philips) was not a conspirator.[11]  *Id.*  In addition to the 50% ownership

13 interest held by each of the two parent companies (one conspirator and one assumed not to be a

14 conspirator), plaintiffs presented the court with evidence regarding maintenance of joint patents

15 between LG Electronics and the joint venture, as well as overlapping directorates between the

16 joint venture and its two 50% owners.  *Id.*  In view of those facts, Judge Illston ruled that the

17 evidence "supports plaintiffs' contention that LG Electronics owns/controls LG Display" and

18 held that the evidence "is sufficient to establish standing to present these claims at trial."  *Id.*

19 ██████████████████████████████████████   ████████████

20 ██████████████████████████████████████████████

21 ██████████████████████████████████████████████

22 ██████████████████████████████████████████████

23 ███████████████████████████

24

25 ────────────────────────

[11]  Although Royal Philips was alleged to be a coconspirator in certain LCD actions, for purposes of Judge Illston's ruling, it was assumed that Philips was not a conspirator.

26

27 <center>19</center>

28
PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

1   Yet, with respect to this Motion, DAPs have presented far *more* evidence regarding the

2   ownership or control relationship between Mitsubishi and NMV than was relied upon by Judge

3   Illston in *TFT-LCD I*.   For instance:



13  This evidence shows that Mitsubishi not only had the *ability* to control NMV, but that it

14  *did in fact* control NMV.  Thus, the absolute most Defendants can offer on the control question

15  is a genuine dispute of fact about the degree to which each indicia of control is reflected by the

16  facts of this case.  The mere possibility that Defendants may (at most) be able to create a

17  dispute of fact as to certain elements of the control inquiry only serves to show why summary

18  judgment should be denied.

19  Ignoring binding Ninth Circuit precedent and numerous cases interpreting that

20  precedent, Defendants erroneously contend that DAPs are required to "show that Mitsubishi

21  Electric had the power to set NMV's prices."  Motion at 6.  Without citing any Ninth Circuit

22  precedent, the primary authority relied upon by Defendants to support this patently incorrect

23  legal standard for ownership or control is *In re Vitamin C Antitrust Litigation*, 279 F.R.D. 90,

24  101 (E.D.N.Y. 2012).  Mitsubishi's reliance on *Vitamin C* misses the mark.  The most obvious

25  problem with Defendants' reliance on this case is that it blatantly ignores the legal standard for

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

ownership or control established by binding decisions of the Ninth Circuit—*i.e.*, *Freeman* and *ATM Fee*.  It also pays no mind to the persuasive decisions of Judge Illston in *TFT-LCD I* and *TFT-LCD II*, as well as that of Judge Hamilton in *Sun Microsystems*, both of whom rejected a bright line rule that converts the ownership or control exception to one requiring the plaintiff to show that it was the defendant who actually set the prices paid by plaintiffs.[12]  Simply put, the unwavering analysis in the Ninth Circuit is that what matters is the power *to oversee and exercise control* over the business decisions of an owned or controlled company.  That power, binding Ninth Circuit authority holds, is evaluated through an analysis of the degree to which ownership interests or ability to control are present.

Moreover, Defendants ignore the fact that *Vitamin C* relied on a Fourth Circuit decision, *Kloth v. Microsoft Corp.*, 444 F.3d 312 (4th Cir. 2006), which had concluded that the ownership or control exception applies where the antitrust defendant has a "sufficient ownership interest in or control over the intermediary sellers to set prices along the chain of distribution."  *Kloth*, 444 F.3d at 321.  Thus, under *Kloth* (another non-binding authority) the question is not whether there is particular evidence that shows that the defendant *actually* "set prices along the chain of distribution," but rather whether the defendant held an ownership or control interest sufficient to allow it to do so.  Thus, to the extent *Vitamin C* suggests that the Court should inquire into how prices were actually set, it is inconsistent with decisions applying the ownership or control exception, including *Kloth*, *ATM Fee*, *Freeman*, *TFT-LCD I*, *TFT-LCD II*, and *Sun Microsystems*.

In any event, even if the Court were to consider Defendants' confounding reliance on

_____

[12] The circumstance of a defendant conspiring with a middleman to fix the prices paid by a plaintiff is the subject of the separate and distinct "coconspirator exception" to *Illinois Brick*.  That exception is not at issue in this case.  Yet if Defendants' proposed construction of the ownership or control standard were correct, it would mean that the coconspirator exception and ownership or control exception are one in the same, which is of course incorrect.

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

1   *Vitamin C,* ████████████████████████████████████████████████

2   ████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ██████   ██████   ██████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████   ██████████████████████████

15  ████████████████████████████████████████████████████████████

16  Thus, even if the Court were to apply *Vitamin C* in the manner suggested by Defendants, DAPs

17  have put forth evidence which plainly shows that the ownership or control exception is

18  satisfied, as construed by the Eastern District of New York in that sole decision.

19      The record evidence in this case clearly shows that Mitsubishi both owned and

20  controlled NMV.  Defendants expressly concede facts which on their own warrant this

21  conclusion, *see* Motion at 3, and omit without any discussion many others, *see* Section III.B,

22  *supra*.  Thus, Defendants have failed to meet their burden on summary judgment with respect to

23  DAPs' Sherman Act standing for purchases from NMV, and DAPs respectfully submit that

24  Defendants' Motion should be denied.

25

26

27

28  PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR            3:07-cv-5944-SC
    PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES             MDL No. 1917
    CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

**B.    DAPs Have Standing for Damages Flowing From Purchases From Mitsubishi's Joint Venture Partner, NEC, Under the Ownership or Control Exception.**

The purpose of the ownership or control inquiry is to permit standing where that relationship creates "no realistic possibility of suit" by the first purchaser of price-fixed goods. *ATM Fee*, 686 F.3d at 756.[13]   *Freeman*, as construed by *ATM Fee*, established that standing exists where there is no realistic possibility of suit *that results from an ownership or control relationship between the first purchaser of price-fixed goods and an alleged conspirator*. *ATM Fee*, 686 F.3d at 756 (emphasis added).[14]   As the Ninth Circuit observed in *Freeman*, "Defendants can't turn a horizontal agreement to fix prices into something innocuous just by changing the way they keep their books."  322 F.3d at 1146.  This is exactly what Defendants are trying to do here.  NEC (the first purchaser of price-fixed goods) entered into a jointly owned and controlled venture with one of the CRT conspirators, Mitsubishi, ███████████ ███████████   and that ownership and control relationship had the effect of precluding any "realistic possibility of suit" by NEC with respect to the CRT conspiracy.

---

[13] The basis for this well-established exception is deeply rooted in long-settled case law of the Supreme Court, Ninth Circuit, and other courts of appeal: Immunizing price-fixers from federal antitrust liability would be flatly inconsistent with *Illinois Brick* and would be contrary to the well-established public policy underlying antitrust enforcement. *See Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 139 (1968) ("[T]he purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws."); *Royal Printing*, 621 F.2d at 325 ("The threat of private treble-damages suits is vital to the enforcement of the antitrust laws.") (citing *Illinois Brick*); *see also Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 483 (7th Cir. 2002) (the Supreme Court's pass-on jurisprudence "at times favors plaintiffs (*Hanover Shoe*) and at times defendants (*Illinois Brick*), but it never operates entirely to preclude market recovery for an injury").

[14] Judge Illston's analysis in *TFT-LCD II* is also instructive on this point.  There, Defendants argued on summary judgment that certain of the plaintiffs' purchases were not made from vendors that had an ownership or control relationship with an alleged conspirator. *TFT-LCD II*, 2012 WL 7062366, at *3.  Judge Illston concluded that summary judgment was appropriate only with respect to vendors as to which plaintiffs failed to make "any showing that the vendor and the seller have an ownership/control relationship." *Id.*, at *4.

---

23

1      DAPs' assertion that the ownership and control relationship precluded any "realistic

2  possibility of suit" is fully supported by the evidentiary record. ███████████████████

3  ████████████████████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████████████████████████

6  ████████████████        ████████████████        ████████████████████████████████

7  ████████████████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████        The lack of a "realistic possibility of

10 suit" is not mere supposition or conjecture, but reality: over the past seven years since the CRT

11 conspiracy was first made public, NEC has not sued Mitsubishi or any other conspirator for the

12 CRT price-fixing conspiracy.  Not in the United States, not in Asia, not in Europe—nowhere.

13 Thus, any suggestion by Defendants that there is a "realistic possibility of suit" by NEC rings

14 utterly hollow, and is simply inconsistent with the record evidence surrounding the ownership

15 and control relationship between Mitsubishi and NEC, as well as NEC's own undisputed

16 actions.

17      Defendants also conveniently ignore the fact that NEC—like Mitsubishi—was a

18 participant in the LCD conspiracy and benefited from the LCD conspiracy through the joint

19 ownership and control relationship over NMV.  *See* Costco LCD trial verdict (Exh. 10) at 2;

20 Best Buy LCD post-trial decision (Exh. 11) at 4 n.3.  Indeed, NMV manufactured and sold

21 LCD monitors that incorporated LCD panels that NEC and others price-fixed, and just as with

22 NMV's CRT product sales, NEC and Mitsubishi both reaped the profits ███████████████.

23 Moreover, the LCD cartel—which spawned litigation resulting in billions of dollars in civil suit

24 settlements plus over one billion dollars in fines by the DOJ alone (to say nothing of fines

25 imposed by foreign governmental bodies)—involved many of the same participants as the CRT

26 cartel.  The LCD case involves precisely the same legal issues as this case and features similar

24

28

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

damages analyses.  In addition, the plaintiffs in the LCD civil lawsuits are claiming Sherman Act standing based upon their purchases from NEC, Mitsubishi, and NMV.  As a result, the same ownership or control relationship (*i.e.*, Mitsubishi and NEC's joint ownership and control over NMV) is implicated as to the prosecution of both the LCD and CRT cartels.  In light of this backdrop, it is hardly credible for Defendants to suggest that NEC somehow might be willing to sue its LCD and CRT joint venture partner for the CRT conspiracy.

Simply put, whether the ownership and control relationship between Mitsubishi and NEC was such that there was a "realistic possibility of suit" is an issue to be decided by the trier of fact.  Defendants may dispute the precise amount of weight that should be assigned to the record evidence that DAPs have presented (*e.g.*, ████████████████████████ ██████████████████████████████████████████████████████ or the fact that NEC fixed the prices of LCD panels—████████████████████ ██████████████  But the existence of such a question of fact as to how the evidence should be weighed, or how factual disputes should be resolved, only serves to highlight that summary judgment is inappropriate.  Defendants will have their opportunity to argue to the trier of fact how to weigh and interpret the evidence put forth by DAPs.  They will also have an opportunity to put forth evidence of their own—evidence that is notably absent from their Motion—which they may argue supports a contrary factual conclusion.  But such a factual dispute is not one that can be resolved on summary judgment, and Defendants' Motion should be denied.

## **CONCLUSION**

For the foregoing reasons, DAPs respectfully request that the Court deny Defendants' Motion.

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

1    Dated:  December 23, 2014

2                                                    Respectfully submitted,

3                                                    */s/ Philip J. Iovieno*

4                                                    Philip J. Iovieno
                                                     Anne M. Nardacci
5                                                    BOIES, SCHILLER & FLEXNER LLP
                                                     30 South Pearl Street, 11th Floor
6                                                    Albany, NY  12207
                                                     Telephone:  (518) 434-0600
7                                                    Facsimile:   (518) 434-0665
                                                     Email:      piovieno@bsfllp.com
8                                                                anardacci@bsfllp.com

9                                                    William A. Isaacson
                                                     Kyle Smith
10                                                   BOIES, SCHILLER & FLEXNER LLP
                                                     5301 Wisconsin Ave. NW, Suite 800
11                                                   Washington, D.C.  20015
                                                     Telephone:  (202) 237-2727
12                                                   Facsimile:   (202) 237-6131
                                                     Email:      wisaacson@bsfllp.com
13
                                                     Stuart Singer
14                                                   BOIES, SCHILLER & FLEXNER LLP
                                                     401 East Las Olas Blvd., Suite 1200
15                                                   Fort Lauderdale, FL 33301
                                                     Telephone:  (954) 356-0011
16                                                   Facsimile:   (954) 356-0022
                                                     Email:      ssinger@bsfllp.com
17
                                                     *Liaison Counsel for Direct Action Plaintiffs*
18                                                   *and Counsel for Plaintiffs ABC Appliance,*
                                                     *Inc.,    CompuCom    Systems,    Inc.,*
19                                                   *Electrograph    Systems,    Inc.,    and*
                                                     *Electrograph Technologies Corp., Interbond*
20                                                   *Corporation    of    America,    MARTA*
                                                     *Cooperative of America, Inc.,Office Depot,*
21                                                   *Inc.,    P.C. Richard & Son Long Island*
                                                     *Corporation, Schultze Agency Services LLC*
22                                                   *on behalf of Tweeter Opco, LLC and*
                                                     *Tweeter    Newco,    LLC,    Tech    Data*
23                                                   *Corporation   and   Tech   Data   Product*
                                                     *Management, Inc.*
24
                                                     /s/  Scott N. Wagner
25
                                                     Robert W. Turken
26                                                   Scott N. Wagner

27                                          26

28    PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR                3:07-cv-5944-SC
      PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES                 MDL No. 1917
      CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

Mitchell E. Widom
BILZIN SUMBERG MAENA PRICE &
AXELROD LLP
1450 Brickell Ave, Suite 2300
Miami, FL 33131-3456
Tel:       305-374-7580
Fax:       305-374-7593
Email:   rturken@bilzin.com
             swagner@bilzin.com
             mwidom@bilzin.com

*Counsel for Plaintiffs Tech Data
Corporation and Tech Data Product
Management, Inc.*

/s/  *Cori G. Moore*

David J. Burman (pro hac vice)
Cori G. Moore (pro hac vice)
Eric J. Weiss (pro hac vice)
Nicholas H. Hesterberg (pro hac vice)
Steven D. Merriman (pro hac vice)
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  (206)359-8000
Facsimile:  (206)359-9000
Email:  DBurman@perkinscoie.com
             CGMoore@perkinsncoie.com
             EWeiss@perkinscoie.com
             NHesterberg@perkinscoie.com
             SMerriman@perkinscoie.com

Joren Bass, Bar No. 208143
Perkins Coie LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131
Telephone:  (415)344-7120
Facsimile:  (415)344-7320
Email: JBass@perkinscoie.com

*Counsel for Plaintiff Costco Wholesale
Corporation*

/s/  *David Martinez*

Roman M. Silberfeld
David Martinez
Jill S. Casselman
ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.
2049 Century Park East, Suite 3400

27

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Los Angeles, CA  90067-3208
Telephone:  (310) 552-0130
Facsimile:   (310) 229-5800
Email:  rmsilberfeld@rkmc.com
          dmartinez@rkmc.com
          jscasselman@rkmc.com

Elliot S. Kaplan
K. Craig Wildfang
Laura E. Nelson
ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
Telephone:  (612) 349-8500
Facsimile:   (612) 339-4181
Email:  eskaplan@rkmc.com
          kcwildfang@rkmc.com
          lenelson@rkmc.com

*Counsel For Plaintiffs Best Buy Co., Inc.,
Best Buy Purchasing LLC, Best Buy
Enterprise Services, Inc., Best Buy Stores,
L.P., Bestbuy.com, L.L.C., and Magnolia
Hi-Fi, Inc.*

/s/  William J. Blechman

Richard Alan Arnold
William J. Blechman
Kevin J. Murray
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel:        305-373-1000
Fax:        305-372-1861
Email:   rarnold@knpa.com
          wblechman@knpa.com
          kmurray@knpa.com

*Counsel for Plaintiff Sears, Roebuck and
Co. and Kmart Corp.*

/s/  Kenneth S. Marks

H. Lee Godfrey
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.

28

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email:  lgodfrey@sumangodfrey.com
          kmarks@susmangodfrey.com
          jross@susmangodfrey.com
          jcarter@susmangodfrey.com
          dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883
Email:  pfolse@susmangodfrey.com
          rblack@susmangodfrey.com
          jconnors@susmangodfrey.com

*Counsel for Plaintiff Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

29

PLAINTIFFS' OPPOSITION TO MITSUBISHI'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING DAPS' DAMAGES
CLAIMS BASED ON CRT PRODUCT PURCHASES FROM NMV AND NEC

3:07-cv-5944-SC
MDL No. 1917