Stuart H. Singer
BOIES, SCHILLER, & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: ssinger@bsfllp.com

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
Email: wisaacson@bsfllp.com

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665
Email: piovieno@bsfllp.com
Email: anardacci@bsfllp.com

*Counsel for Plaintiffs Interbond Corporation of America, and Office Depot, Inc.*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: Cathode Ray Tube (CRT) ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Office Depot Inc. v. Hitachi, Ltd., et al.*, Individual Case No. 11-cv-05514<br><br>*Interbond Corporation of America d/b/a BrandsMart USA v. Hitachi, Ltd., et al.*, Individual Case No. 11-cv-06275 | Master File No. 3:07-md-05944-SC<br><br>MDL No. 1917<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON STATE LAW CLAIMS LIMITED TO INTRASTATE ACTIVITY**<br><br>Date: February 6, 2014<br>Time: 10:00am<br>Judge: Honorable Samuel Conti<br>Courtroom 1 |

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT ON STATE
LAW CLAIMS LIMITED TO INTRASTATE ACTIVITY

Master File No. 3:07-md-05944-SC

# STATEMENT OF ISSUE TO BE DECIDED

Whether Florida law permits Office Depot, Inc. ("Office Depot") and Interbond Corporation of America d/b/a BrandsMart USA ("Brandsmart") (collectively, "Plaintiffs") to recover under the Florida Deceptive and Unfair Trade Practices Act, § 501.201 *et seq.*, Florida Statutes ("FDUTPA"), for the antitrust activity of Defendants, regardless of whether acts of the illegal price-fixing conspiracy occurred within the state of Florida.

# INTRODUCTION

In their Motion for Partial Summary Judgment Against Certain Direct Action Plaintiffs on State Law Claims Limited to Intrastate Activity ("Motion" or "Mot."), Defendants state that "Plaintiffs have not identified evidence of any purportedly anticompetitive conduct by Defendants within Florida." Mot. at 3. In the absence of such evidence and in reliance upon a solitary state appellate court decision, *Millenium Commc'ns & Fulfillment, Inc. v. Office of Att'y Gen.,* 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000) ("*Millennium*"), Defendants represent to this Court that Florida law bars FDUTPA claims.

Not only did Judge Illston reject the precise argument now raised by Defendants in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2014 WL 2905131 (N.D. Cal. June 26, 2014) ("*LCD*"), controlling Florida Supreme Court precedent expressly permits a FDUTPA claim under facts materially identical to those at issue here. *See Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., Ltd.*, 752 So. 2d 582 (Fla. 2000) ("*Execu-Tech*").

# STATEMENT OF MATERIAL FACTS

1. Sometime in or about November 2007, the United States Department of Justice began investigating certain foreign corporations for involvement in an overseas illegal cathode ray tube ("CRT") price-fixing conspiracy, which impacted the prices paid by American businesses and consumers from at least March 1, 1995 through at least November 25, 2007 (the "Relevant Period"). Indirect Purchaser Plaintiff's Fourth Consolidated Am. Compl. ¶ 206.

2. On or about February 10, 2009, the Department of Justice indicted C.Y. Lin, the former Chairman and CEO of Defendant Chunghwa Picture Tubes, Ltd. for his role in the

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT ON STATE
LAW CLAIMS LIMITED TO INTRASTATE ACTIVITY

1

Master File No. 3:07-md-05944-SC

1  CRT price-fixing conspiracy.  [Singer Decl., Ex. D, Feb. 10, 2009 Indictment, located at
2  (http://www.justice.gov/atr/cases/f243500/243521.pdf)].

3        3.  In or about March 2011, Defendant Samsung SDI Company, Ltd. pleaded guilty
4  to fixing the pricing of color display tubes ("CDTs") from January 1997 to March 2006.
5  [Singer Decl., Ex. E, Amended Plea Agreement, located at http://www.justice.gov/atr/cases/
6  f272100/272150.pdf)]. Defendant Samsung SDI paid a $32 million criminal fine to the United
7  States. *Id.*

8        4.  After its own four-year investigation into CRT price-fixing, the European
9  Commission in December 2012 levied a fine of €38.6 against Defendant Technicolor SA f/k/a
10  Thomson SA for its participation in a conspiracy to fix CRT prices. Office Depot Compl. ¶¶ 2,
11  135, 136.

12        5.  Brandsmart was headquartered in Hollywood, Florida and/or Miami, Florida
13  during the Relevant Period. Singer Decl., Ex. A and Ex. B (Johnson Deposition at 24:16-22;
14  Bryan Deposition 18:24-19:2).

15        6.  Brandsmart placed its purchase orders for each CRT product that is the subject
16  of Brandsmart's claims in this action from its headquarters in Hollywood, Florida and/or
17  Miami, Florida during the Relevant Period. Singer Decl., Ex. C (Sinewitz Deposition at 117:4-
18  7).

19        7.  Brandsmart received all CRT invoices at its headquarters in Hollywood, Florida
20  and/or Miami, Florida during the Relevant Period. Singer Decl., Ex. C (Sinewitz Deposition at
21  125:13-15).

22        8.  Brandsmart made payments for each CRT product that is the subject of
23  Brandsmart's claims in this action from its headquarters in Hollywood, Florida and/or Miami,
24  Florida during the Relevant Period. Singer Decl., Ex. C (Sinewitz Deposition at 126:21-
25  127:15).

26        9.  Office Depot is a Florida corporation headquartered in Delray Beach, Florida
27  and/or Boca Raton, Florida during the Relevant Period. (Wick Decl. at ¶ 2).

28

10. Office Depot placed its purchase orders for each CRT product that is the subject of Office Depot's claims in this action from its headquarters in Delray Beach, Florida and/or Boca Raton, Florida during the Relevant Period. (Wick Decl. at ¶ 3).

11. Office Depot received all CRT invoices at its headquarters in Delray Beach, Florida and/or Boca Raton, Florida during the Relevant Period. (Wick Decl. at ¶ 4).

12. Office Depot made payments for each CRT product that is the subject of Office Depot's claims in this action from its headquarters in Delray Beach, Florida and/or Boca Raton, Florida during the Relevant Period. (Wick Decl. at ¶ 5).

## LEGAL STANDARD

Summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 325 (1986); *see also Avalos v. Baca*, No. CV.05-07602 at *1 (C.D. Cal. Aug. 7, 2006) ("[B]ecause summary judgment is a drastic device cutting off Plaintiffs' right to trial, the moving party bears the burden of demonstrating the absence of any triable issue of material fact."). This is a heavy burden for the moving party, particularly in antitrust cases, where these general standards are applied even more stringently and summary judgment granted more sparingly. *Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*, 620 F.2d 1360, 1364 (9th Cir. 1980).

In deciding a summary judgment motion, the evidence is to be viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] ruling on a motion for summary judgment." *Id.*

## ARGUMENT

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of ***any trade or commerce.***" §

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT ON STATE LAW
CLAIMS LIMITED TO INTRASTATE ACTIVITY

3

Master File No. 3:07-md-05944-SC

1  501.204(1), Fla. Stat. (emphasis added). The Florida Legislature mandated that FDUTPA
2  "shall be construed liberally to … protect the consuming public." *Id.*

3  Though Defendants cite to *Millennium*, *Millennium* is a wholly inapposite case because
4  it involved no injury under FDUTPA to any Florida consumer, resident or corporation.
5  Because "Millennium is a Florida corporation which is licensed by a Nevada company . . . to
6  advertise and promote . . . in all states except Florida . . .," the appellate-level court reversed a
7  temporary injunction issued in relation to FDUTPA claims, noting that there were no
8  allegations that the defendant had "marketed its products to Florida residents ***or that any***
9  ***Florida consumers had been injured or affected by its alleged activities***." *Id.* at 1257, 1259
10 (emphasis added). By contrast, in this case, Office Depot and Brandsmart are Florida
11 corporations, injured in Florida, and properly bringing their claims under FDUTPA.

12 The controlling authority on this issue, *Execu-Tech*, was decided by the Florida
13 Supreme Court on facts ***materially identical to those at issue here***. *Execu-Tech* involved a
14 federal investigation into overseas price-fixing regarding thermal facsimile paper, a product
15 used primarily by small businesses and private consumers. The investigation focused on the
16 price-fixing conspiracy as it related to the following supply chain:

17  Manufacturers sell jumbo rolls [of the facsimile paper] to trading houses, which
   in turn sell the product to converters who cut and repackage the rolls into
18  smaller, eight and one-half inch wide rolls suitable for retail sale. Converters
   then sell the rolls to wholesalers and retailers.
19

20 752 So. 2d at 583. The federal investigation determined that the price-fixing conspiracy
21 increased "the wholesale price of [the defendants'] product throughout the United States,
22 including Florida." *Id.* at n.2. The government brought charges against certain manufacturers
23 and trading houses, some of which later pled guilty and were fined. Subsequently, a Florida
24 company filed a FDUTPA claim on behalf of a class of indirect purchasers against the same
25 manufacturers implicated by the federal investigation, alleging that they "conspired to fix the
26 wholesale price of jumbo rolls sold throughout the nation and that this paper ultimately was
27 sold to Florida consumers at a correspondingly inflated price." *Id.* at 583. One of the
28

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT ON STATE LAW
CLAIMS LIMITED TO INTRASTATE ACTIVITY

4

Master File No. 3:07-md-05944-SC

defendants, New Oji, a Japan-based corporation, moved to dismiss the plaintiff's FDUTPA claim, arguing that

> New Oji is a Japanese corporation; New Oji sells jumbo rolls of thermal fax paper in only Japan, not the United States; New Oji maintains no office in Florida; and Execu-Tech has not shown that any New Oji paper was sold in Florida during the class period.

*Id.* at 584.  Therefore, New Oji contended, because none of the conspiratorial activity had occurred in Florida, Florida courts had no jurisdiction and no FDUTPA claim existed.

The Florida Supreme Court rejected New Oji's limitation of FDUTPA's reach.  While discussing its holding in terms of personal jurisdiction, the Court noted that an action that occurs outside of Florida still gives rise to a FDUTPA action where the manufacturers "deliberately conspired to fix the wholesale price of their production throughout the United States, including Florida."  Indeed, the Court held that, even in the absence of anti-competitive conduct in Florida, the defendants' foreign antitrust actions "constitute[] a violation of [FDUTPA]" because the plaintiff suffered injury in Florida arising from the defendants' price-fixing conspiracy. *Id.* at 585.

It is thus *Execu-Tech*, decided by the Florida Supreme Court in the context of an injured Florida plaintiff, which controls Plaintiffs' FDUTPA claims.  *Millenium*, which involved no allegations "that any Florida consumers had been injured or affected by [the defendant's] alleged [FDUTPA] activities," is simply inapplicable.  *Accord Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1346 (S.D Fla. 2002) (recognizing that while some federal courts have sought to engraft a requirement that certain actions must take place in-state, Florida law as expressed in *Execu-Tech* announces no such requirement).

Furthermore, Judge Illston in *LCD* rejected the same narrow application of FDUTPA espoused by Defendants here.  There, the federal government investigated certain companies and individuals for their role in an overseas illegal price-fixing conspiracy directed at LCD products.  Some of the defendants pleaded guilty to criminal charges and/or were fined.  The *LCD* plaintiffs then filed suit against many of the same defendants, alleging, *inter alia*, a FDUTPA claim because the foreign conspiracy impacted the prices they paid as indirect

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON STATE LAW CLAIMS LIMITED TO INTRASTATE ACTIVITY

5

Master File No. 3:07-md-05944-SC

purchasers in Florida. Defendants moved for summary judgment on the FDUTPA claim, contending that Florida courts lacked jurisdiction over them because they were foreign corporations that had never maintained offices in Florida and had never "directly sold, or attempted to sell, anything to any of the plaintiffs." 2009 WL 2905131 at *1. They also argued that FDUPTA applied "only to conduct occurring within Florida" and that, in the absence of intrastate anti-competitive activity, there could be no FDUTPA violation. *Id.* at *3.

Judge Illston rejected the *LCD* defendants' interpretation. Observing that "[n]owhere in the text of the FDUTPA does the statute restrict application to acts occurring entirely in the state of Florida," she held that "FDUTPA, by its own terms, can be applied to plaintiffs' claims." *Id.*

So, too, here. Plaintiffs' evidence is materially identical to that which was upheld in *Execu-Tech* and *LCD*. As in those cases, a federal investigation into an anti-competitive price-fixing conspiracy led to criminal charges and subsequent criminal pleas and fines against foreign corporations and residents. And, like in those cases, Florida companies were injured by the illegal price fixing conspiracy, paying inflated prices for CRT products as indirect purchasers. And, just as in *Execu-Tech* and *LCD*, Plaintiffs filed civil suits – including FDUTPA claims – against many of the same foreign defendants.

The fact that no anti-competitive conduct occurred within Florida is irrelevant to whether a FDUTPA claim exists, so long as the anti-competitive conduct led to higher prices paid and injury suffered in Florida. *Execu-Tech*, 752 So. 2d at 585 (recognizing that the "conspirators introduced a 'defective' price into the Florida market," supporting a FDUTPA claim); *LCD*, 2009 WL 2905131 at *3. As Plaintiffs have overwhelming evidence of having paid higher prices during the Relevant Period and consequently suffering injury, that is all that FDUTPA requires. Any argument to the contrary is contrary to Florida law.

## **CONCLUSION**

Binding Florida Supreme Court case law rejects Defendants' argument that FDUTPA's reach is limited to acts that take place in Florida. Moreover, Judge Illston considered and

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT ON STATE LAW
CLAIMS LIMITED TO INTRASTATE ACTIVITY

6

Master File No. 3:07-md-05944-SC

1  denied the same argument in *LCD*. For these reasons and others as discussed above,
2  Defendants' Motion should be denied.

4  Dated: December 23, 2014                    /s/ *Stuart H. Singer*

   Stuart Singer
   BOIES, SCHILLER & FLEXNER LLP
   401 East Las Olas Blvd., Suite 1200
   Fort Lauderdale, FL 33301
   Telephone: (954) 356-0011
   Facsimile: (954) 356-0022
   Email: ssinger@bsfllp.com

   William A. Isaacson
   BOIES, SCHILLER & FLEXNER LLP
   5301 Wisconsin Ave. NW, Suite 800
   Washington, D.C. 20015
   Telephone: (202) 237-2727
   Facsimile: (202) 237-6131
   Email: wisaacson@bsfllp.com

   Philip J. Iovieno
   Anne M. Nardacci
   BOIES, SCHILLER & FLEXNER LLP
   30 South Pearl Street, 11th Floor
   Albany, NY 12207
   Telephone: (518) 434-0600
   Facsimile: (518) 434-0665
   Email: piovieno@bsfllp.com
   anardacci@bsfllp.com

   *Attorneys for Plaintiffs Office Depot, Inc., and Interbond Corporation of America*

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT ON STATE LAW
CLAIMS LIMITED TO INTRASTATE ACTIVITY

7

Master File No. 3:07-md-05944-SC