Exhibit 35

**Messina Janet**

*Jack Brunk*

*Voluntary Termination 7/31/2006*

| | |
|---|---|
| **From:** | Brunk Jack [Jack.Brunk@ttdco.com] |
| **Sent:** | Friday, July 28, 2006 4:54 PM |
| **To:** | *TDA Managers; Marszalek Jacek (TGDC); Messina Janet; Dunn Pat (TGDC); Arballo Ramon; Ortuno Kim; May Stacey; Hanrahan James; Wetzel Karen; Serafinski Pawel; Charamel Emeric; Carender Carl (Marion); Gilbert Ron (Marion); Hulse Steve; Bozzi Christian; Fields Judy; Lim Kok Hing (TGDC); Liang Bing, Alice (TGDC); Zhou Min (TGDC); Huang Ke Yan (TGDC); Konuma Akira; Konuma Akira; Lescoublet Sebastien; Olivares Gustavo; Flores Josefina; Han Tadeusz (TGDC); Knoph Richard; Li Geng (TGDC); Opinska Elzbieta; Serafinski Pawel; Reeder Mike (TGDC); Veras Airton; Dejoie Xavier ; Jack Hirschler; Kuldeep Drabu |

**Subject:** Farewell

All,

As many of you already know, Monday will be my last day with Thomson.  I will not bother any of you with a long farewell message. I will simply say that I have many fond memories of Thomson and of the professional people I have worked with during the last 17 years. As with any business there have been good times and challenging times. Thankfully, I move to this next phase of my career with many more good memories than bad.

Given the current business climate, there will no doubt be short term challenges but I remain confident the future will be a positive one for TDM.  It is clear that Videocon management has an aggressive plan for introducing future products and growing the business presence in NAFTA.  It will be sad not playing a part in this exciting period for TDM.

I sincerely wish all of you the best of success in your careers and look forward to the day when our paths may cross again.

I can be reached at my cell phone number 619-247-9060 or by home email Brunkj@cox.net

My business email (from August 1st) will be Jack.Brunk@TVguide.com

With warm regards,

Jack

7/28/2006

TDA03754

**Messina Janet**

| | |
|---|---|
| **From:** | Messina Janet |
| **Sent:** | Thursday, March 20, 2008 7:37 PM |
| **To:** | Lee Key; 'Key Lee (GeaWol)' |
| **Subject:** | Layoff Documents |

**Attachments:** K. Lee Severance release agreement 4-4-08.DOC; PowerStartMarket Readiness (June 2006) Thomson.doc; TDA Prework- Preparing to Write Your Resume.doc; TDA Client Guide to Transition updated April 07.doc; TDA 2008 Salaried Layoff Benefits Summary.DOC

Hi Key~

As we discussed today, attached are the documents for you to review relating to your layoff on April 4, 2008:

- Agreement & General Release – You may keep this agreement up to 21 days. However, if you choose to sign and return the agreement prior to the 21 day period, please sign in both places indicated on the last page. Remember, I must have 7 days from the date you sign the agreement (revocation period) before severance pay can be issued. Payroll is run on Tuesday, April 1 to be received on Friday April 4. Therefore, I will process your severance either for April 4 pay (if received by 3/25 – 7 days prior to the payroll run) or the next salary payroll after the signed Agreement is received.

  Please mail the signed Agreement to:
  Janet Messina
  280 Blue Moon Crossing #502
  Pooler, GA  31322
  912-450-0402

- Outplacement will be provided by Drake Beam Morin (DBM).  As requested, I will wait to initiate this service after April 4, 2008.  I will instruct DBM to contact you at the above home email or 619-757-6843 (cell) or 619-482-3252 (home).  I have attached some preliminary reading material to help prepare for this process.

- 2008 Layoff Benefit Continuation Information

- You will be contacted by WageWorks after your layoff date of April 4, 2008.  They will send you the paperwork to continue your insurance benefits as outlined in the attached document.

I am available to assist you with this process.  Please do not hesitate to contact me at any time.

I wish you all the best and am confident you will have a rich and fulfilling career.

All the best!

Janet

3/20/2008

## AGREEMENT AND GENERAL RELEASE

I, Key J. Lee, the undersigned employee or former employee of Technologies Displays Americas, LLC ("TDA") enter into this Agreement and General Release ("this Agreement"), effective as of the date of my signature below:

1.  I acknowledge that I received this Agreement on or before March 21, 2008.

2.  I understand that my last day of employment with TDA shall be April 4, 2008, after which TDA will place me on layoff.

3.  I understand that, in consideration for my execution of this Agreement and compliance with the promises made herein, TDA will pay me a lump sum severance payment, in accordance with the terms of the TDA Severance Allowance Plan ("the Severance Plan") in the amount of $37,692.34, less applicable taxes (the "Severance Payment").

4.  I understand and agree that, to receive the Severance Payment, I must remain employed by TDA until such time as TDA releases me from employment and changes my status to "layoff."

5.  I further understand that TDA will pay me for accrued but unused vacation (if any).  I understand and agree that I will not be eligible for and will not receive any other payments pursuant to TDA's vacation program or any other program that provides paid time for employees.

6.  In consideration for TDA's agreement to provide the Severance Payment, I hereby knowingly and voluntarily release and forever discharge TDA, Thomson, Inc. and the parent corporations, subsidiaries, divisions, business units partners, affiliates, officers, directors, agents and employees of such entities (hereafter the "Releasees") of and from any and all claims, known and unknown, that I, my heirs, executors, administrators, successors or assigns have or may have against any of the Releasees as of the date of execution of this Agreement, including, but not limited to (a) any alleged violation of the Age Discrimination in Employment Act of 1967; the Older Workers Benefit Protection Act; the National Labor Relations Act; Title VII of the Civil Rights Act of 1964; Sections 1981 through 1988 of Title 42 of the United States Code; the Employee Retirement Income Security Act of 1974; the Immigration Reform Control Act; the Americans with Disabilities Act of 1990; the Fair Labor Standards Act; the Occupational Safety and Health Act; the Family and Medical Leave Act of 1993; the Worker Adjustment and Retraining Notification Act ("WARN Act"); the California Fair Employment and Housing Act; the California Minimum Wage Law; the California Equal Pay Law; the California Family Rights Act, any other local, state or federal law, regulation or ordinance; any public policy, contract, tort, or common law; or any claim for costs, fees, or other expenses including attorneys' fees incurred in these matters; (b) any alleged violation of the Mexico Federal Labor Law or any other law, rule, regulation of Mexico or any state, city or province in Mexico; and (c) any other matters arising prior to the date that I signed this Agreement.

7.  I understand and agree that the preceding paragraph includes not only claims presently known to me, but also include all unknown or unanticipated claims, rights, demands, actions, obligations, liabilities, and causes of action of every kind and character that would otherwise come within the scope of the previous paragraph.  I understand that I may hereafter discover facts different from what I now believe to be true, which if known, could have materially affected this Agreement.  I nevertheless waive any claim or right based on such different or additional facts.  I

knowingly and voluntarily waive any and all rights or benefits that I may now have, or in the future may have, under the terms of Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

8.  I understand and acknowledge that I am not eligible to receive the Severance Payment except for my execution of this Agreement and the fulfillment of the promises contained herein.

9.  I understand that this Agreement is not intended to and shall not be construed to release any claim for vested benefits under TDA's Savings Plan for which I may otherwise be eligible.  Under no circumstances, however, does this Agreement provide or create greater rights under any benefit plan for me than any such rights existing on the date TDA places me on layoff.

10. I acknowledge that this Agreement constitutes written notice and advice from the Releasees that:

(a) I have the right to consult with an attorney prior to executing this Agreement.

(b) I have up to twenty-one (21) days from my receipt of this Agreement to consider this agreement and to sign it if I choose to do so.  If I do not sign this Agreement and return it to the Company within twenty-one (21) days, it will be null and void and I will not receive the Severance Payment.  I understand, however, that I may elect to sign and return this Agreement prior to the expiration of such period.

(c) I have seven (7) days (the "Revocation Period") following the date I sign this Agreement during which I may revoke my acceptance of this Agreement.  I understand that this Agreement shall not become effective or enforceable and the Severance Payment shall not be paid until the revocation period has expired.  I understand and agree that any such revocation must be in writing, sent by certified mail (return receipt requested) and addressed to **Janet Messina in TDA's Human Resources organization at 280 Blue Moon Crossing #502, Pooler, GA  31322.**  I acknowledge and agree that, to be effective, such revocation must be postmarked no later than seven (7) days after the date I executed this Agreement.

(d) This Agreement does not waive rights or claims that may arise after the date I sign it.

11. I understand and agree that any modifications, material or otherwise, made to this Agreement do not restart or affect in any manner the original twenty-one (21) day consideration period set forth in the previous section.

12. I confirm that no claim, charge, complaint, or action filed or submitted by me against TDA exists in any forum or form.  In the event that I file any such claim, charge, complaint or action based upon events occurring prior to my execution of this Agreement, I agree that I shall not be entitled to any relief or recovery therefrom, including costs and attorney's fees.

13. I covenant and agree that I will treat as confidential and will not, without the prior written approval of TDA, disclose or communicate any "Confidential Information" (as defined below) to any third party or make any use of such information on my own behalf or that of any third party, unless ordered to do so by a court of law. "Confidential Information" means information that is treated by TDA as confidential and which has not been made generally available to the public or to competitors of TDA (other than through my actions), and includes but is not limited to all of TDA's trade secrets, technical information, business information, employee information, marketing information or strategies, technologies, engineering or operation methods or techniques, research data, formulas, test results, marketing plans, service plans, patent applications, patents pending, names of customers or potential customers, customer files, vendor lists, vendor files, contracts, pricing information, cost information, bidding information, sales information, profit or loss information, proprietary or financial information, licensing agreements, potential licensing agreements, the identity of and information about actual or potential business partners, merger candidates or acquisition candidates, legal strategies, pending or potential lawsuits, settlements or other legal matters and any other information the use of disclosure of which might be adverse to the best interests of TDA or its business and any other information relating to the TDA's business that is treated by the TDA as confidential, and any document, tangible article, program or electronic medium that embodies such confidential or proprietary information.

14. I understand and agree that all tapes, disks, printouts, records, notes, files, memoranda, reports, drawings, plans, sketches, documents, equipment, apparatus, physical manifestations of programs and like items, and all copies thereof, containing or relating to any Confidential Information, which were prepared by me or which otherwise come into my possession during the course of my employment with TDA, shall remain the exclusive property of TDA. I agree that prior to my layoff, I shall deliver to TDA the originals and all copies of any of the foregoing that are in my possession, custody or control, and any other property belonging to TDA.

15. I understand and acknowledge that I will not be eligible to receive and TDA will not pay the Severance Payment until I have returned to TDA all property belonging to TDA including specifically files, papers, documents, computers, access cards, keys, credit cards, pagers, mobile telephones and office equipment.

16. I acknowledge that I previously executed an Employee Innovation and Proprietary Information Agreement with TDA. I hereby affirm the agreement and promises I made in that agreement and acknowledge and agree that nothing contained in this Agreement shall be construed to supersede or nullify any portion of the Employee Innovation and Proprietary Information Agreement. Specifically, I agree to execute all necessary papers and otherwise provide assistance (at TDA's expense), during and subsequent to my employment, to enable TDA to obtain, for itself or its nominees, patents, copyrights or other legal protection in any and all countries for all inventions and innovations or contributions, including computer software, developed or conceived by me solely or jointly during my employment with TDA, as described in the Employee Innovation and Proprietary Information Agreement.

17. I agree that I will cooperate with TDA and its attorneys in connection with any and all legal matters, lawsuits, investigations or audits involving matters that occurred during my employment with TDA.

TDA03758

18. I agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at anytime for any purpose as an admission by TDA of any liability or unlawful conduct of any kind.

19. This Agreement may not be modified, altered or changed except upon TDA's and my express written consent wherein specific reference is made to this Agreement.

20. Except as provided in Section 16 above, this Agreement sets forth the entire agreement between TDA and me with regard to my layoff and separation, and fully supersedes any prior agreements or understandings between us with regard to the same subjects. I acknowledge that I have not relied on any representations, promises, or agreements of any kind made to me in connection with my decision to sign this Agreement, except for those set forth in this Agreement.

**HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES SET FORTH HEREIN, AND TO RECEIVE THEREBY THE SEVERANCE PAYMENT, I FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS I HAVE OR MIGHT HAVE AGAINST THE RELEASEES.**

I have knowingly and voluntarily executed this Agreement, effective as of the date of my signature below:

_____          _21_ March_ _2008_
Key J. Lee                                                      Date*


                                           *If this date is less than 21 days from the date I
                                           received this release, I have signed below
                                           indicating that I voluntarily chose not to utilize
                                           the full time allowed by law for consideration
                                           of this Agreement.

                                           _____
                                           Employee's signature

TDA03759