# Exhibit 40

HIGHLY CONFIDENTIAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | |
| BEST BUY CO., INC., BEST BUY PURCHASING LLC; BEST BUY ENTERPRISE SERVICES, INC.; BEST BUY STORES, L.P.; BESTBUY.COM, L.L.C.; and MAGNOLIA HI-FI, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>HITACHI, LTD., et al.,<br><br>    Defendants. | Case No.  3:11-cv-05513-SC<br><br>Master File No. 3:07-cv-05944-SC<br><br>MDL No. 1917 |
| BEST BUY CO., INC., BEST BUY PURCHASING LLC; BEST BUY ENTERPRISE SERVICES, INC.; BEST BUY STORES, L.P.; BESTBUY.COM, L.L.C.; and MAGNOLIA HI-FI, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>Technicolor SA (f/k/a Thomson SA), et al.,<br><br>    Defendants. | Case No. 13-cv-05262<br><br>Master File No. 3:07-cv-05944-SC<br><br>MDL No. 1917 |

**REPORT OF ALAN S. FRANKEL, Ph.D.**

April 15, 2014

HIGHLY CONFIDENTIAL

1. Introduction

   1.1. Assignment

   1. Best Buy[1] is a "specialty retailer of consumer electronics, home office products, entertainment software, appliances and related services."[2] Headquartered in Richfield, Minnesota, by 2007, Best Buy was the nation's largest specialty electronics retailer and the twelfth largest retailer overall.[3]

   2. Best Buy alleges that the Defendants and alleged co-conspirators colluded in setting prices of cathode ray tubes ("CRTs") and that this caused Best Buy to pay higher prices for "CRT Products" – computer monitors and televisions that contained CRTs – than it would have paid absent the conspiracy.[4]

   3. I have been asked by counsel for Best Buy to: (1) calculate damages under the assumption that the Defendants are found to be liable in this litigation; (2) assume that the alleged conspiracy resulted in anticompetitive overcharges for CRTs – the tubes incorporated into the CRT Products purchased by Best Buy – as determined by Dr. James McClave, another expert retained by Best Buy; (3) compute damages to account for the possibility that some overcharges resulting from the conspiracy might not be recoverable to the extent that they reflect CRTs manufactured by non-conspirators; and (4) calculate damages for Best Buy's

---

[1] For simplicity, I refer to the captioned plaintiffs collectively as "Best Buy" or "Plaintiff."
[2] Best Buy SEC Form 10-K for the year ended March 1, 2008, p. 4.
[3] Stores, "Top 100 Retailers," Stores, July 2008, http://www.stores.org/sites/default/files/08Top100Chart.pdf.
[4] See, e.g., First Amended Complaint, Best Buy et al. v. Hitachi, Ltd., et al., October 3, 2013, ("Amended Complaint"), ¶216. The conclusions and computations that I present in this report would either be unaffected by changes to the current Defendants and co-conspirators or could be modified through simple adjustments as described in this report to account for such changes.

"direct" purchases of CRT Products from conspirators or their affiliates separately from its "indirect" purchases of CRT Products from other suppliers.

## 1.2. Qualifications

4. I am Director of Coherent Economics, LLC. Since 1985, I have been a full-time economic consultant. From 1985 until 1996, and from 2004 until I founded Coherent in 2008, I was an employee of Compass Lexecon (formerly Lexecon), most recently as a Senior Vice President.[5] Between 1996 and 2004, I was an employee of LECG (formerly Law and Economics Consulting Group). I am also a Senior Editor of the Antitrust Law Journal, the leading law review devoted to economic and legal issues arising in antitrust, competition and consumer protection disputes. I have served on the Editorial Board of the Journal since 1996. I received a B.A. in economics (with honors) in 1982, an M.A. in economics in 1985, and a Ph.D. in economics in 1986, each from the University of Chicago. My primary field of concentration in the Ph.D. program was Industrial Organization, which includes the analysis of competitive issues which arise in antitrust disputes. I have analyzed economic issues arising in hundreds of legal, regulatory and public policy disputes. I have been engaged as an expert economist by governmental agencies including the United States Department of Justice, the Canadian Competition Bureau, the United Kingdom Office of Fair Trading, and the New Zealand Commerce Commission, as well as by many private parties. I have appeared as an expert witness in the United States District Courts for the Northern District of California, the Northern District of Illinois, the Eastern District of Pennsylvania, the Eastern District of Virginia, the District of Columbia, the U.S. Court of Federal Claims, and in California Superior Court in

---

[5] I remain affiliated with Compass Lexecon as a Senior Advisor. Compass Lexecon, however, has had no involvement with my work in this engagement.

### 4.2. Best Buy's Unit Purchases of CRT Products

#### 4.2.1. Analysis of Best Buy Database Records

34.     Best Buy has provided me with all of its available database records covering the alleged conspiracy period, and I have extracted records identifying purchases of individual models of CRT Products (TVs and monitors).[26] I use these data starting with the second quarter of 1996 because the earlier periods are either unavailable or appear to be incomplete. I therefore estimate its purchases of CRT Products for the portion of the period at issue in this case for which it no longer possesses detailed database information, as I describe in Part 4.2.3.[27]

35.     Exhibit 15 lists the CRT Product vendors appearing in Best Buy's data that Best Buy contends represent "direct" purchases as defined or to be defined legally. I designate CRT Products purchased from any other vendors to be "indirect." Exhibits 16a-b show, respectively, Best Buy's purchases of CRT TVs and monitors.

#### 4.2.2. Matching CRT Product Sizes to CRT Sizes

36.     TV and monitor purchases are tracked by size and are matched to the appropriate CRT size. Monitors and the CDTs incorporated within each monitor are generally the same size. Thus, the major CDT sizes are the same as the major monitor sizes: 14", 15", 17", and 19" (and 21" to a lesser extent). Stated TV screen sizes are typically one inch smaller

---

[26] I use Best Buy's "POS" database.
[27] The absence of definitive data from which to compute damages, and the resulting need to make reasonable estimates, is a common occurrence in the analysis of antitrust damages. This arises naturally in the estimation of overcharges, because the "but-for" prices by definition cannot be directly observed, and also because the defendants' conduct itself makes precision more difficult. *See, e.g.*, American Bar Association, Proving Antitrust Damages (2nd ed. 2010), pp. 55-56. In this case, the long period of time during which Defendants and their co-conspirators are alleged to have engaged in unlawful, anticompetitive conduct and concealed that conduct, and in some cases their own lack of production of comprehensive sales records of finished products (which in any event would not encompass "indirect" purchases by Best Buy), means that a portion of the actual quantities purchased by Best Buy needs to be estimated.

Exhibit 15 - Vendors Designated as "Direct" Purchases

| Plaintiff | Conspirator | Direct Vendor Names Appearing in Data |
|---|---|---|
| Best Buy | Daewoo | DAEWOO ELEC AMER INC<br>DAEWOO ELECTRONIC AMER INC<br>WEI HAI DAEWOO ELECTRONICS |
| | Hitachi | HITACHI HOME ELECTRONICS |
| | LGE | LG ELECTRONICS USA INC |
| | Mitsubishi | MITSUBISHI DIGITAL ELEC CEG<br>NEC DISPLAY SOLUTION AMERICA<br>PACKARD BELL-NEC |
| | Panasonic | JVC<br>PANASONIC COMM SYSTEMS CO<br>PANASONIC CORP OF N AMERICA<br>SANYO MANUFACTURING CORP<br>SANYO NORTH AMERICA |
| | Philips | MAGNAVOX<br>MAGNAVOX DOMESTIC<br>PHILIPS CONSUMER ELE IMPORT<br>PHILIPS CONSUMER ELECTRONIC<br>PHILIPS MX |
| | Samsung | SAMSUNG COMPUTER<br>SAMSUNG INC |
| | Toshiba | TOSHIBA AMERICA INC<br>TOSHIBA - ISD<br>TOSHIBA COMPUTER SYSTEMS |
| | Thomson | RCA |