# Exhibit 43

HIGHLY CONFIDENTIAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | |
| COSTCO WHOLESALE CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>HITACHI, LTD., et al.,<br><br>    Defendants. | Master File No. 3:07-cv-05944<br><br>MDL No. 1917<br><br>Individual Case No. 3:11-cv-06397-SC |
| COSTCO WHOLESALE CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>TECHNICOLOR SA, et al.,<br><br>    Defendants. | Master File No. 3:07-cv-05944<br><br>MDL No. 1917<br><br>Individual Case No. 3:13-cv-05723-SC |

**REPORT OF ALAN S. FRANKEL, Ph.D.**

April 15, 2014

**HIGHLY CONFIDENTIAL**

1. Introduction

    1.1. Assignment

    1.  Plaintiff Costco Wholesale Corporation ("Costco") is a membership, large-format "warehouse club" style retailer. Headquartered in Issaquah, Washington, as of September 2, 2007, Costco operated 383 stores throughout the United States.[1] In 2007, Costco was the nation's fifth largest retailer.[2] Among the products sold by Costco are "hardlines," including consumer electronics products.[3]

    2.  Costco alleges that the Defendants and alleged co-conspirators colluded in setting prices of cathode ray tubes ("CRTs") and that this caused Costco to pay higher prices for "CRT Products" – computer monitors and televisions that contained CRTs – than it would have paid absent the conspiracy.[4]

    3.  I have been asked by counsel for Costco to: (1) calculate damages under the assumption that the Defendants are found to be liable in this litigation; (2) assume that the alleged conspiracy resulted in anticompetitive overcharges for CRTs – the tubes incorporated into the CRT Products purchased by Costco – as determined by Dr. James McClave, another expert retained by Costco; (3) compute damages to account for the possibility that some overcharges resulting from the conspiracy might not be recoverable to the extent that they reflect CRTs manufactured by non-conspirators; and (4) calculate damages for Costco's "direct"

---

[1] Costco SEC Form 10-K for the year ended September 2, 2007, p. 13.
[2] Stores, "Top 100 Retailers," Stores, July 2008, http://www.stores.org/sites/default/files/08Top100Chart.pdf.
[3] Costco SEC Form 10-K for the year ended September 2, 2007, p. 4.
[4] First Amended Complaint, Costco Wholesale Corporation v. Hitachi, Ltd., et al., October 3, 2013, ¶167; Complaint, Costco Wholesale Corporation v. Technicolor SA, et al., November 12, 2013, ¶215. The conclusions and computations that I present in this report would either be unaffected by changes to the current Defendants and co-conspirators or could be modified through simple adjustments as described in this report to account for such changes.

purchases of CRT Products from conspirators or their affiliates separately from its "indirect" purchases of CRT Products from other suppliers.

### 1.2. Qualifications

4.  I am Director of Coherent Economics, LLC.  Since 1985, I have been a full-time economic consultant.  From 1985 until 1996, and from 2004 until I founded Coherent in 2008, I was an employee of Compass Lexecon (formerly Lexecon), most recently as a Senior Vice President.[5]  Between 1996 and 2004, I was an employee of LECG (formerly Law and Economics Consulting Group).  I am also a Senior Editor of the Antitrust Law Journal, the leading law review devoted to economic and legal issues arising in antitrust, competition and consumer protection disputes.  I have served on the Editorial Board of the Journal since 1996.  I received a B.A. in economics (with honors) in 1982, an M.A. in economics in 1985, and a Ph.D. in economics in 1986, each from the University of Chicago.  My primary field of concentration in the Ph.D. program was Industrial Organization, which includes the analysis of competitive issues which arise in antitrust disputes.  I have analyzed economic issues arising in hundreds of legal, regulatory and public policy disputes.  I have been engaged as an expert economist by governmental agencies including the United States Department of Justice, the Canadian Competition Bureau, the United Kingdom Office of Fair Trading, and the New Zealand Commerce Commission, as well as by many private parties.  I have appeared as an expert witness in the United States District Courts for the Northern District of California, the Northern District of Illinois, the Eastern District of Pennsylvania, the Eastern District of Virginia, the District of Columbia, the U.S. Court of Federal Claims, and in California Superior Court in

---

[5] I remain affiliated with Compass Lexecon as a Senior Advisor.  Compass Lexecon, however, has had no involvement with my work in this engagement.

estimate its purchases of CRT Products for the portion of the period at issue in this case for which it no longer possesses detailed database information, as I describe in Part 4.2.3.[26]

35.  Exhibit 15 lists the CRT Product vendors appearing in Costco's data that Costco contends represent "direct" purchases as defined or to be defined legally.[27] I designate CRT Products purchased from any other vendors to be "indirect." Exhibits 16a-b show, respectively, Costco's purchases of CRT TVs and monitors.

### 4.2.2. Matching CRT Product Sizes to CRT Sizes

36.  TV and monitor purchases are tracked by size and are matched to the appropriate CRT size. Monitors and the CDTs incorporated within each monitor are generally the same size. Thus, the major CDT sizes are the same as the major monitor sizes: 14", 15", 17", and 19" (and 21" to a lesser extent). Stated TV screen sizes are typically one inch smaller than the CPTs incorporated within each TV for TVs up to 25 inches (diagonal size). The TV screen sizes are typically two inches smaller for larger TV sizes. I understand that this results from the masking that was used around the perimeter of the TV. The pattern is apparent when comparing the tube sizes in data provided to me by Dr. McClave with the TV and monitor sizes

---

[26] The absence of definitive data from which to compute damages, and the resulting need to make reasonable estimates, is a common occurrence in the analysis of antitrust damages. This arises naturally in the estimation of overcharges because the "but-for" prices by definition cannot be directly observed, and also because the defendants' conduct itself makes precision more difficult. *See, e.g.*, American Bar Association, Proving Antitrust Damages (2nd ed. 2010), pp. 55-56. In this case, the long period of time during which Defendants and their co-conspirators are alleged to have engaged in unlawful, anticompetitive conduct and concealed that conduct, and in some cases their own lack of production of comprehensive sales records of finished products (which in any event would not encompass "indirect" purchases by Costco), means that a portion of the actual quantities purchased by Costco needs to be estimated. As explained below, in the absence of actual purchase data for Plaintiffs for some years, I estimate Plaintiffs' CRT Product purchases based on data that I regard as reliable and the best available data. I apply extrapolation methods to that data which are generally accepted in economic modeling and which generate results that I regard as reliable.

[27] I've been instructed by Costco's counsel that Costco does not seek to recover damages for its small number of purchases from Mitsubishi, NEC, and Zenith. That decision does not affect any entity's status as an alleged conspirator or as being owned or controlled by, or owning or controlling, an alleged conspirator.

Exhibit 15 - Vendors Designated as "Direct" Purchases

| Plaintiff | Conspirator | Direct Vendor Names Appearing in Data |
|---|---|---|
| Costco | Daewoo | DAEWOO ELECTRONICS AM |
| | Panasonic | JVC<br>PANASONIC CORPORATION<br>PANASONIC HAWAII<br>PANASONIC WESTERN GROUP<br>SANYO ENERGY USA CORP |
| | Philips | PHILIPS CONSUMER |
| | Samsung | SAMSUNG ELECTRONICS |
| | Thomson | THOMSON CONSUMER ELEC |
| | Toshiba | TOSHIBA AM CONSUMER PROD<br>TOSHIBA HAWAII |