# Exhibit 6

GIBSON, DUNN & CRUTCHER LLP
JOEL S. SANDERS, SBN 107234,
jsanders@gibsondunn.com
RACHEL S. BRASS, SBN 219301,
rbrass@gibsondunn.com
AUSTIN V. SCHWING, SBN 211696,
aschwing@gibsondunn.com
JOEL WILLARD, SBN 247899,
jwillard@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-2933
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendant
TATUNG COMPANY OF AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION<br><br>This Document Related to Individual Case Nos. 3:10-cv-4572 SI; 3:11-cv-00058 SI; 10-cv-4945 SI<br><br>BEST BUY CO., INC., ET AL.,<br>    Plaintiffs,<br> v.<br>AU OPTRONICS CORPORATION, ET AL.,<br>    Defendants.<br><br>COSTCO WHOLESALE CORP.,<br>    Plaintiff,<br> v.<br>AU OPTRONICS CORPORATION, ET AL.,<br>    Defendants. | Master File No. 3:07-md-1827 SI<br><br>Individual Case Nos. 3:10-cv-4572 SI; 3:11-cv-00058 SI; 10-cv-4945 SI<br><br>**TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Date: June 1, 2012<br>Time: 9:00 a.m.<br>Place: Courtroom 10, 19th Floor<br>Hon. Susan Illston |

Gibson, Dunn & Crutcher LLP

TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

|   |   |
|---|---|
| 1 |   |
| 2 | TARGET CORP., ET AL., |
|   |               Plaintiffs, |
| 3 |   v. |
| 4 | AU OPTRONICS CORPORATION, ET AL., |
|   |               Defendants. |

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

PLEASE TAKE NOTICE that on June 1, 2012, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10, 19th Floor, San Francisco, California, before the Honorable Susan Illston, Defendant Tatung Company of America, Inc. ("TUS") will and hereby does move for summary judgment under Federal Rule of Civil Procedure 56 because there is no genuine dispute that TUS did not participate in the alleged conspiracy at issue and is not liable for the alleged participation of Chunghwa Picture Tubes, Ltd., a separate and distinct corporation.

TUS seeks an order granting summary judgment in its favor on all claims. This motion is based on this Notice of Motion; the following Memorandum of Points and Authorities; the accompanying Declaration of Rachel Flipse; the files in these actions; argument of counsel; and such other matters as the Court may consider.[1]

---

[1] We understand that TUS is filing a substantially similar motion in *Motorola Mobility Inc. v. AU Optronics Corporation, et al.*, 09-CV-5840 SI, and *AT&T Mobility LLC, et al. v. AU Optronics Corporation, et al.*, 09-cv-4997 SI. TUS is represented by a different law firm in those matters.

Gibson, Dunn & Crutcher LLP

TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................2

    A. TUS Does Not Manufacture LCDs; It Manufactures Finished Goods .....................2

    B. TUS Is A Separate Company From TCO ..................................................................3

    C. CPT Is An Independent Company That Manufactures LCD Panels..........................4

    D. As An LCD Panel Purchaser, TUS Is A Victim Of Any Price-Fixing .....................4

III. ARGUMENT ..........................................................................................................................5

    A. There Is No Evidence That TUS Joined Any Conspiracy To Fix The Prices of LCD Panels ..................................................................................................6

    B. TUS Is Not Liable For The Actions Of CPT .............................................................9

        1. Plaintiffs cannot demonstrate "such unity of interest and ownership" between TUS and CPT that their separate corporate forms should be ignored..............................................................................11

        2. Respecting the corporate identity of TUS will not result in fraud or injustice. .........................................................................................14

IV. CONCLUSION.....................................................................................................................14

i

TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Ad Mgmt., Inc. v. GTE Corp.*,
  92 F.3d 781 (9th Cir. 1996) .................................................................................................... 6

*Barnes v. Arden Mayfair, Inc.*,
  759 F.2d 676 (9th Cir. 1985) .................................................................................................. 8

*Becker Family Builders Co-Plaintiffs Grp. v. FDIC*,
  No. 9-5477 RJB, 2010 U.S. Dist. LEXIS 95692 (W.D. Wash. Sept. 14, 2010) .................... 13

*Bowoto v. Chevron Texaco Corp.*,
  312 F. Supp. 2d 1229 (N.D. Cal. 2004) ................................................................................ 11

*Brennan v. Concord EFS, Inc.*,
  369 F. Supp. 2d 1127 (N.D. Cal. 2005) ................................................................................ 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................................ 5

*Chan v. Soc'y Expeditions, Inc.*,
  123 F.3d 1287 (9th Cir. 1997) .............................................................................................. 13

*In re Citric Acid Litig.*,
  191 F.3d 1090 (9th Cir. 1999), *cert. denied*, 529 U.S. 1037 (2000) ............................... 6, 7, 8

*In re Citric Acid Litig.*,
  996 F. Supp. 951 (N.D. Cal. 1998) .................................................................................... 7, 8

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) .......................................................................................... 10, 11

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) .............................................................................................................. 14

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
  394 F.3d 1143 (9th Cir. 2004) .............................................................................................. 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................................................ 6

*Ministry of Def. of the Islamic Rep. of Iran v. Gould, Inc.*,
  969 F.2d 764 (9th Cir. 1992) ................................................................................................ 10

*Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*,
  854 F.2d 1538 (9th Cir. 1988) .............................................................................................. 11

*Royal Printing Co. v. Kimberly-Clark Corp.*,
  621 F.2d 323 (9th Cir. 1980) ................................................................................................ 10

*Taylor v. Ron's Liquors, Inc.*,
  No. 10-694 SI, 2010 U.S. Dist. LEXIS 64497 (N.D. Cal. June 29, 2010) ........................... 13

*United States v. Bestfoods*,
  524 U.S. 51 (1998) .......................................................................................................... 10, 13

ii

Tatung Company Of America, Inc.'s Notice Of Motion And Motion For Summary Judgment
Case Nos.: 3:07-md-1827 SI; 3:10-cv-4572 SI; 3:11-cv-00058 SI; 10-cv-4945 SI

Gibson, Dunn & Crutcher LLP

*United States v. Jon-T Chems., Inc.*,
   768 F.2d 686 (5th Cir. 1985) .................................................................................................... 13

*United States v. United States Gypsum Co.*,
   438 U.S. 422 (1978) .................................................................................................................. 6

*Vieste, LLC v. Hill Redwood Dev.*,
   No. C-09-4024 JSW, 2011 U.S. Dist. LEXIS 29137 (N.D. Cal. Mar. 9, 2011) ............................ 11

**Rules**

Fed. R. Civ. P. 56(c) ......................................................................................................................... 5

Gibson, Dunn &
Crutcher LLP

iii

TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Tatung Company of America, Inc. ("TUS") previously moved to dismiss certain plaintiffs' claims against it at the pleading stage, but the Court allowed the claims to proceed, indicating that plaintiffs should have the ability to take discovery. March 3, 2009 Order, MDL Dkt. No. 873 (denying TUS's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) regarding the adequacy of the direct purchaser class plaintiffs' allegations as to TUS's participation in the alleged conspiracy); July 19, 2010 Order, MDL Dkt. No. 1885, Direct Action Case Nos. 09-5840 and 09-4997 Dkt. Nos. 43 and 64 (denying TUS's motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) regarding the sufficiency of Motorola and AT&T's allegations related to TUS). Plaintiffs have now completed their discovery and have found no evidence to support a claim against TUS. TUS moves for summary judgment with respect to the claims brought against it because it was not a party to any alleged conspiracies and it cannot be held liable for the acts of other defendants.

After more than five years of litigation, there is not one shred of evidence that TUS entered into any of the alleged LCD manufacturers' conspiracies. Indeed, TUS, an LCD purchaser, does not manufacture LCDs at all and simply was named as a defendant because Tatung Company ("TCO"), TUS's parent company, owns some stock in defendant Chunghwa Picture Tubes, Ltd. ("CPT"), or because Plaintiffs thought it would be easier to effectuate service on an entity in the United States. The undisputed evidence demonstrates that TUS was not a party to the conspiracies alleged in this case and is not liable for the alleged conduct of other defendants.

Plaintiffs in these cases and the related class cases have reviewed millions of documents, deposed hundreds of witnesses, served countless interrogatories, and left no stone unturned. This exhaustive discovery is now complete in these actions. Yet, Plaintiffs have discovered no evidence that TUS was a party to the conspiracies alleged in these cases. The undisputed facts demonstrate:

- TUS did not attend a single Crystal Meeting or bilateral meeting;
- TUS did not engage in any other conspiratorial meeting or discussion;
- None of the millions of documents produced in this case indicate that TUS entered into any conspiracy;

Gibson, Dunn & Crutcher LLP

1
TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

- Numerous witnesses, including people who themselves admitted to having entered into agreements to fix prices and who have either pleaded guilty or entered cooperation agreements with the government that require them to tell the truth or face criminal sanctions, have testified that TUS had nothing to do with any conspiracy; and

- No witness has testified that TUS had any involvement with any conspiracy.

These facts are not surprising because Plaintiffs' allegations against TUS make no sense. Plaintiffs allege various conspiracies by LCD panel manufacturers to raise the price of panels. But *TUS does not manufacture or sell LCD panels*. To the contrary, TUS purchased LCD panels for use in manufacturing finished products. TUS, a *purchaser* of LCD panels, is a *victim* of any LCD price-fixing conspiracy and nothing more. Indeed, TUS is a member of the direct purchaser plaintiff class and has submitted a claim to recover from the class settlement fund. There is no evidentiary basis for different treatment in these direct action cases.

Nor is there any basis for holding TUS liable for any other defendant's conduct. Plaintiffs' operative complaints suggest that TUS should be held liable for the conduct of CPT. But TUS and CPT are wholly separate companies. TUS does not have any ownership interest in CPT (or vice versa). Nor does the fact that TUS's parent company TCO owns some of CPT's stock create liability for TUS. This attenuated connection cannot form the basis of liability in this case. There simply is no factual or legal basis for treating CPT as the alter ego of TCO, let alone the alter ego of TUS.

Because there is no evidence that TUS participated in any of the alleged conspiracies and there is no ground for treating CPT and TUS as alter egos, this Court should grant summary judgment in TUS's favor.

## II. FACTUAL BACKGROUND

### A. TUS Does Not Manufacture LCDs; It Manufactures Finished Goods

TUS is a California corporation with its headquarters in Long Beach, California. *See, e.g.,* Best Buy's First Amended Complaint, June 7, 2011, MDL Dkt. No. 2878, ¶ 48. TUS has never manufactured LCD panels of any kind. *See* Declaration of Rachel Flipse in support of Tatung Company's Motion for Summary Judgment (hereinafter "Flipse Decl.") Exh. C (E. Chen Dep. Tr. at 43:7-8); Declaration of Edward Chen in Support of TUS's Motion to Dismiss the Direct Purchaser Plaintiffs' Consolidated Complaint at ¶ 2, Feb. 19, 2008, MDL Dkt. No. 471. Instead, TUS manufactures end products at its factory in Long Beach, California, some of which contain LCD

Gibson, Dunn & Crutcher LLP

2
TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

panels. *See* Flipse Decl. Exh. C (E. Chen Dep. Tr. 55:18-56:16). TUS's primary LCD product is an open-frame LCD monitor that is sold without any external housing for use in industrial displays, such as displays used in the retail, medical, and gaming industries. *See id*. at 8:24-10:24. TUS purchased the panels it used to manufacture LCD products from panel manufacturers such as AUO, CMO, CPT, LG, Samsung and Sharp. Flipse Decl. Exhs. A (Lai Decl.) at ¶ 19 and C (E. Chen Dep. Tr. 36:18-37:7). TUS does not sell LCD panels, other than panels purchased and resold for replacement and repair of TUS products. Flipse Decl. Exh. A (Lai Decl.) at ¶ 21.

**B.     TUS Is A Separate Company From TCO**

TUS is partially owned by TCO, a Taiwanese corporation with its headquarters in Taipei, Taiwan. *See, e.g.*, Best Buy's First Amended Complaint at ¶ 47; Flipse Decl. Exh. A (Lai Decl.) at ¶ 11. TCO owns fifty percent of TUS and has consistently maintained that level of ownership since TUS's formation. Decl. of Michael Lai in Support of TUS's Motion to Dismiss the Direct Purchaser Plaintiffs' Consolidated Complaint (hereinafter "Lai MTD Decl.") at ¶ 2, Feb. 19, 2008, MDL Dkt. No. 472; Flipse Decl. Exh. D (M. Lai Dep. Tr. 7:12-19).

Lun Kuan Lin served as Chairman of TUS's Board of Directors from 1998 until she passed away in 2007. Flipse Decl. Exh. A (Lai Decl.) at ¶ 16. Chairman Lin owned forty-six percent of TUS for most of the time she served as Chairman. Flipse Decl. Exh. D (M. Lai Dep. Tr. 7:20-8:6). Andrew Sun, the son of Lun Kuan Lin, has served on TUS's board since 2005. Flipse Decl. Exh. A (Lai Decl.) at ¶ 17; Flipse Decl. Exh. D (M. Lai Dep. Tr. 24:11-15). Neither Ms. Lin nor Mr. Sun ever worked for TCO or CPT. Flipse Decl. Exh. A (Lai Decl.) at ¶¶ 16-17; *see also* Flipse Decl. Exh. D (M. Lai Dep. Tr. 22:15-21).

Since Lun Kuan Lin became Chairman in 1998, TCO has had two representatives on the TUS Board of Directors. Flipse Decl. Exh. A (Lai Decl.) at ¶ 18. One of these representatives is W.S. Lin, the Chairman of TCO. Flipse Decl. Exh. D (M. Lai Dep. Tr. 19:19-20:4).[2] The two TCO

---

[2] In 2007, after the end of the conspiracy period alleged in Plaintiffs' complaints, W.S. Lin also became Chairman of the Board of CPT. *See* Flipse Decl. Exh. B (Yang Decl.) at ¶ 15. He has not had any other executive position at CPT, and is not actively involved in the day-to-day business of the company. *Id.*

Gibson, Dunn & Crutcher LLP

3
TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

representatives never comprised a majority of TUS's six- to seven-member Board of Directors during this period. Flipse Decl. Exh. A (Lai Decl.) at ¶ 18; Lai MTD Decl. at ¶ 3.

TUS functions separately from TCO and CPT. TCO and CPT are not involved in TUS's day-to-day business operations. Flipse Decl. Exh. A (Lai Decl.) at ¶ 15; Flipse Decl. Exh. B (Yang Decl.) at ¶ 7. TUS is independently managed and operated by its own Board of Directors and officers. Flipse Decl. Exh. A (Lai Decl.) at ¶ 15. TUS maintains its own corporate offices and manufacturing facilities in Long Beach, California, and shares no office or manufacturing space with TCO or CPT. *Id.* at ¶¶ 2, 8, 12; Flipse Decl. Exh. B (Yang Decl.) at ¶ 10. TUS's assets are not commingled with those of TCO or CPT, and it keeps separate corporate accounts and independent financial records. Flipse Decl. Exh. A (Lai Decl.) at ¶¶ 7, 9-10, 13-14; Flipse Decl. Exh. B (Yang Decl.) at ¶¶ 8, 11-12.

### C. CPT Is An Independent Company That Manufactures LCD Panels

Defendant CPT is an LCD panel manufacturer located in Taoyuan, Taiwan. *See, e.g.*, Best Buy's First Amended Complaint, ¶ 47. Throughout the alleged conspiracy period, CPT has been an independent, publicly traded company with numerous shareholders. Flipse Decl. Exh. B (Yang Decl.) at ¶ 2. Historically, TCO was CPT's largest shareholder. *Id.* at ¶ 9. Over the years, TCO's ownership interest in CPT steadily declined, and today, it owns less than 25% of CPT's publicly traded shares. *Id.* TUS, however, has never owned any of CPT's stock. Flipse Decl. Exh. A (Lai Decl.) at ¶ 5; Flipse Decl. Exh. B (Yang Decl.) at ¶ 4.

CPT is also an independent entity, distinct from TCO. CPT is independently managed and operated by its own Board of Directors and managers. Flipse Decl. Exh. B (Yang Decl.) at ¶ 13. It does not share any office space or manufacturing facilities with TCO. *Id.* at ¶ 10. None of CPT's assets are commingled with those of TCO, and CPT maintains its own corporate bank accounts and financial records. *Id.* at ¶ 11-12.

### D. As An LCD Panel Purchaser, TUS Is A Victim Of Any Price-Fixing

During the alleged conspiracy period, TUS purchased $15.5 million in LCD panels from various suppliers. Flipse Decl. Exh. A (Lai Decl.) at ¶ 19; s*ee also* Flipse Decl. Exh. C (E. Chen Dep. Tr. 36:18-37:7). CPT sold LCD panels to TUS, but CPT was not TUS's biggest supplier during the alleged conspiracy period. Flipse Decl. Exh. A (Lai Decl.) at ¶ 20. During the conspiracy period,

Gibson, Dunn & Crutcher LLP

4
TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

1   TUS's first and second largest suppliers of LCD panels were LG Display America, Inc. and Vihonor
2   Opto-Electronics. *Id.* CPT, the third largest supplier, sold 27.11% of the panels purchased by TUS
3   measured by volume, and only 16.8% of those panels measured by value. *Id.*

4         While CPT had a business interest in higher LCD panel prices, as a customer, TUS's business
5   interest was the exact opposite: obtaining lower LCD panel prices. Flipse Decl. Exh. C (E. Chen
6   Dep. Tr. 78:12-21). To the extent that LCD purchasers overpaid for LCD panels during the relevant
7   period, TUS did as well. TUS submitted a claim for recovery in connection with the direct purchaser
8   class settlements. *See* Flipse Decl. Exh. E.

9         The LCD direct purchaser class plaintiffs initially named TUS as a defendant. *See* Direct
10  Purchaser Plaintiffs' Consolidated Complaint, Nov. 5, 2007, MDL Dkt. No. 366. After discovery, in
11  recognition that there was no basis for the claims against TUS, the direct purchaser plaintiffs
12  voluntarily dismissed TUS for no compensation. Stipulation and Order Dismissing Tatung Company
13  of America, Inc., July 21, 2011, MDL Dkt. No. 3155. TUS was never named as a defendant in the
14  LCD indirect purchaser consolidated class case. *See, e.g.*, Indirect-Purchaser Plaintiffs' Consolidated
15  Amended Complaint, Nov. 5, 2007, MDL Dkt. No. 367.[3]

16  **III.  ARGUMENT**

17        The Court should grant TUS's motion for summary judgment because there is absolutely no
18  evidence that TUS participated in any of the alleged conspiracies and there is no basis to hold TUS
19  liable for the actions of CPT.

20        Summary judgment should be granted when there are no genuine issues of material fact in
21  dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he
22  plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for
23  discovery and upon motion, against a party who fails to make a showing sufficient to establish the
24  existence of an element essential to that party's case, and on which that party will bear the burden of
25  proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat a motion for summary

---

[3] Although TUS was also originally named as a defendant in the consolidated class cases in *In re Cathode Ray Tube Litig.*, No. 3:07-cv-5944 SC (N.D. Cal.); both the direct and indirect purchasers have since voluntarily dismissed TUS. *See id.*, MDL Dkt. Nos. 1146; 1165.

Gibson, Dunn & Crutcher LLP

5
TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

judgment, a non-moving party bearing the burden of proof "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must set out "specific facts showing that there is a genuine issue for trial." *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

To establish a violation of Section 1 of the Sherman Act, Plaintiffs must prove, among other things, that the defendant participated in a conspiracy that unreasonably restrained trade. *See, e.g.*, *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 788 (9th Cir. 1996). There is no evidence that TUS participated in any alleged conspiracy, so judgment should be entered for TUS.

### A. There Is No Evidence That TUS Joined Any Conspiracy To Fix The Prices of LCD Panels

In an action under Section 1 of the Sherman Act, the plaintiff has the burden of proving an agreement to fix prices. *In re Citric Acid Litig.*, 191 F.3d 1090, 1093, 1094 n.2 (9th Cir. 1999), *cert. denied*, 529 U.S. 1037 (2000) (hereinafter "*Citric Acid II*"). Participation in a price-fixing agreement "c[an] only be predicated on the knowing involvement of each defendant, considered individually, in the conspiracy charged." *United States v. United States Gypsum Co.*, 438 U.S. 422, 463 (1978).

Despite extensive and protracted discovery, there is no evidence that TUS joined any conspiracy, much less one of the conspiracies Plaintiffs allege in their individual cases. There is no evidence that TUS entered into any agreement to fix prices, or that it participated in any of the Crystal Meetings, bilateral meetings, or other communications between panel manufacturers that form the basis for the alleged conspiracies.[4] As a result, Plaintiffs are unable to satisfy their burden of demonstrating that TUS was a party to the alleged conspiracies to fix the prices of TFT-LCD panels.

Without exception, witnesses from manufacturers who have admitted to violations of the Sherman Act have testified that TUS did not participate in any competitor contacts or other collusive

---

[4] Direct Purchaser Plaintiffs acknowledged this lack of evidence and did not contend that "Tatung America attended any Crystal Meetings" or that "Tatung America attended or participated in any group or bilateral discussions." *See* Flipse Exh. R (Direct Purchaser Plaintiffs' Amended Objections and Responses to TUS's First Set of Interrogatories, Response Nos. 4 & 5).

Gibson, Dunn &
Crutcher LLP

6

TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

activity. For example, Brian Lee, CPT's former Vice President of Sales and Marketing and current Chief Strategy Officer, testified that no TUS employee ever attended a Crystal Meeting or participated in CPT's communications with competitors, and that he never told anyone at TUS about the Crystal Meetings. Flipse Decl. Exh. F (B. Lee Dep. Tr. 419:25-420:13). He further testified that TUS did not participate in the alleged conspiracy in any way. *Id.* at 420:25-421:7. To his knowledge, TUS did not know about the Crystal Meetings or about CPT's communications with its competitors. *Id.* at 420:14-24. Similarly, CPT's former Executive Vice President of Sales C.C. Liu, who also testified about extensive competitor contacts, explained why CPT did not inform TUS about those contacts. Flipse Decl. Exh. G (C.C. Liu Dep. Tr. 263:19-264:1). When asked if he ever talked to anyone at Tatung about the Crystal Meetings, Mr. Liu explained that he did not because it "would cause unhappiness for my customer, so, of course, we would not talk to them about this." *Id.*; *see also* Flipse Decl. Exh. H (C.H. Lin Dep. Tr. 128:9-14).

Other defendant companies' witnesses, many of whom have acknowledged entering agreements or understandings with their competitors regarding LCD panel pricing, unequivocally testified that TUS had no involvement in any of those discussions. For example, Stanley Park, who served as a manager of notebook panel sales at LPL, testified that he had never communicated with anyone at TUS regarding TUS's prices for LCD finished products. Flipse Decl. Exh. I (S. Park Dep. Tr. at 11:12-17; 610:12-611:13). He further testified that he was unaware of any Crystal Meetings that TUS attended. *Id.* at 608:22-609:6. Irine Chen, who acknowledged attending competitor group meetings on behalf of both HannStar and CMO, similarly denied that TUS ever attended any of those competitor meetings. Flipse Decl. Exh. J (I. Chen Dep. Tr. 207:13-208:4; 290:11-15).

In similar circumstances, courts in this Circuit have granted motions for summary judgment. In *In re Citric Acid Litigation*, four of the five major producers of citric acid "admittedly conspired to divide the market among them and to raise the price of citric acid by limiting sales." 996 F. Supp. 951, 953 (N.D. Cal. 1998) (hereinafter "*Citric Acid I*"). All four pleaded guilty to criminal charges and settled civil damages actions. *Id.* The fifth producer, Cargill, sought summary judgment on the ground "that it was never a member of the conspiracy." *Id.* The district court granted Cargill's motion, and the Ninth Circuit affirmed. *Citric Acid II.* "Most persuasive," in the view of Judge

Gibson, Dunn &
Crutcher LLP

7

TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

Smith, was the testimony of the president of one of the four admitted conspirators that "no one from Cargill attended any of the meetings at which the conspirators allocated market share . . . ." *Citric Acid I* at 955. Judge Smith found persuasive the contrast between the strong evidence of a conspiracy among the other defendants and the lack of direct evidence against Cargill:

> There was abundant direct evidence of a conspiracy among four companies . . . . In fact, all four companies pled guilty to criminal charges and have been sentenced. None now have any reason to shield Cargill. The utter lack of any direct evidence that Cargill was involved in that conspiracy is therefore quite probative.

*Id.* at 956; *see also Citric Acid II* at 1106 ("[w]e note that all four major citric acid manufacturers admitted to conspiring to fix prices but none identified Cargill as a coconspirator"); *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 684 (9th Cir. 1985) (affirming summary judgment where "the dairies have admitted their participation in a conspiracy, while simultaneously exonerating [the moving defendant] with nothing to gain for their exculpatory statements"). The same is true here: the witnesses have consistently testified that TUS was not a part of any conspiracy relating to LCDs.

Indeed, in the over 75 depositions from witnesses who testified as current or former employees of companies that have acknowledged participating in competitor communications, including 14 witnesses from Samsung Electronics Corporation, 12 witnesses from LG Display Co., Ltd. and LG Display America, Inc., 11 witnesses from Chi Mei Optoelectronics Corporation, 1 witness from HannStar Display Corporation, 12 witnesses from Epson Imaging Devices Corporation, 16 witnesses from Sharp Corporation, 3 witnesses from Chunghwa Picture Tubes, Ltd., and 7 witnesses from Hitachi Displays Ltd*.,* not one witness identified a single meeting, conversation, phone call or email with TUS in which TUS was anything other than a customer, nor did any witness testify that he or she viewed TUS as anything other than a customer. Flipse Decl. at ¶ 2.

In addition, two TUS witnesses were deposed in this action: Edward Chen, Executive Vice President of the Commercial Division, and Michael Lai, Chief Financial Officer. Neither identified a single price-related or other potentially anticompetitive communication in their depositions, and no exhibits were introduced suggesting such a communication. Instead, those depositions focused solely on the question of TUS's corporate structure and relationship with CPT. After those depositions, the direct purchaser class plaintiffs dismissed their claims against TUS—claims that the indirect

8
TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

Gibson, Dunn & Crutcher LLP

1  purchaser class never brought. Stipulation and Order Dismissing Tatung Company of America, Inc., July 21, 2011, MDL Dkt. No. 3155. In his declaration in support of this motion, Michael Lai explicitly denies that TUS participated in any conspiracy to fix the prices of LCD panels. *See* Flipse Decl. Exh. A (Lai Decl.) at ¶ 22. Plaintiffs have no evidence with which to dispute this fact.

Defendants served Plaintiffs with interrogatories demanding that they identify the evidence they have to support their allegations that each defendant participated in the alleged conspiracies. *See, e.g.*, Flipse Decl. Exhs. O-Q. The anemic response with respect to TUS is telling. The handful of documents, deposition excerpts, and websites that Plaintiffs have identified in interrogatory responses as supposed evidence of TUS's participation in the alleged conspiracies simply confirm that TUS is a victim of the very wrongdoing Plaintiffs pursue. *See id*. For example, the majority of the identified documents show that TUS or TCO were LCD purchasers, not co-conspirators. *See, e.g.*, Flipse Decl. Exh. K (TUSE0162677) (July 2006 email exchange in which LPL's Sales Team solicits a meeting with Edward Chen of TUS); Flipse Decl. Exh. L (CMOCIV-267607) (Exhibit 2522) (email from CMO to TCO requesting an appointment after having sent TCO CMO's "latest product roadmap of TFT-LCD products"). Other documents identified by Plaintiffs contain no reference to TUS or any other Tatung entity whatsoever. *See, e.g.*, Flipse Decl. Exh. M (AU-MDL-04707095) (email containing May 6, 2004 Crystal Meeting summary, reflecting CPT's attendance); Flipse Decl. Exh. N (SAML-276884) (internal Samsung email from February 1999 regarding pricing to Dell and listing prices quoted by some competitors). Plaintiffs have failed to identify any evidentiary support for the allegation that TUS participated in the alleged conspiracies.

### B. TUS Is Not Liable For The Actions Of CPT

Plaintiffs have exaggerated the ties between TUS and CPT, presumably for the purpose of establishing that TUS is liable as the alter ego of CPT. *See, e.g.*, Best Buy's First Amended Complaint, ¶ 49. There is, however, no support for an alter ego theory. To pierce the corporate veil here would require the Court not only to ignore the corporate separation between TUS and TCO, but also to ignore the corporate separation between TCO and CPT. There is no basis for doing so.

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's

Gibson, Dunn & Crutcher LLP

9
TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation marks omitted). "To demonstrate that the parent [corporation] and subsidiary are 'not really separate entities' and satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist; and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). "The first prong of this test has alternately been stated as requiring a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id.* (internal citations and quotations omitted). Stated another way, the question is whether "sufficient respect was paid to corporate formalities." *Ministry of Def. of the Islamic Rep. of Iran v. Gould, Inc.*, 969 F.2d 764, 769 (9th Cir. 1992). The second prong of the test prevents abusive attempts to pierce the corporate veil. As the Ninth Circuit explained: "Alter ego is a limited doctrine, invoked only where recognition of the corporate form would work an *injustice* to a third person." *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) (internal citations omitted).

This standard is far from established in this case, where TUS and CPT are not even in a parent/subsidiary relationship—which the Supreme Court emphasizes is wholly insufficient to establish alter ego liability—but merely have limited common ownership. There is no evidence to support a theory of alter ego liability such that TUS could be held liable for the actions of CPT.[5]

---

[5] Nor does *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), support an action against TUS. *Royal Printing* stands for the proposition that a company engaged in price-fixing cannot use *Illinois Brick* to insulate itself from Sherman Act liability to direct purchasers by interposing a subsidiary between itself and third party purchasers. *Royal Printing* did not involve the issue of whether the otherwise innocent subsidiary can be held liable simply by selling price-fixed goods that it purchased from the parent conspirator. The plaintiffs here, however, would turn *Royal Printing* on its head by applying it, not to recover from the alleged price-fixer, but to establish liability on the part of a non-conspiring subsidiary. *Royal Printing* does not provide any such affirmative basis for liability against an innocent subsidiary of a conspirator, much less a company such as TUS, which is neither a parent nor subsidiary of CPT.

Gibson, Dunn & Crutcher LLP

10
TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

1. **Plaintiffs cannot demonstrate "such unity of interest and ownership" between TUS and CPT that their separate corporate forms should be ignored.**

A court may disregard the corporate form only if "there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist." *Unocal*, 248 F.3d at 926; *see also Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1246 (N.D. Cal. 2004). "[A] host of factors relevant to finding a unity of interest" may be considered. *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1544 (9th Cir. 1988). To determine whether corporate entities function as separate personalities, courts consider the following nine factors:

> (1) commingling of funds and other assets; (2) failure to segregate funds of the separate entities; (3) the unauthorized diversion of corporate funds or assets to other than corporate uses; (4) the total absence of corporate assets; (5) the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; (6) concealment of personal business activities; (7) the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of the creditors; (8) the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; and (9) the use of a corporation as a subterfuge of illegal transactions.

*Vieste, LLC v. Hill Redwood Dev.*, No. C-09-4024 JSW, 2011 U.S. Dist. LEXIS 29137, at *13-14 (N.D. Cal. Mar. 9, 2011) (internal citations and quotations omitted). None of these factors are present here.

There is no evidence in the record that CPT is, or was, a "mere instrumentality" of TUS, or vice versa. Neither TUS nor CPT owned any portion of the other. Flipse Decl. Exh. B (Yang Decl.) at ¶¶ 4, 6; Flipse Decl. Exh. A (Lai Decl.) at ¶¶ 3, 5. Neither has had any role in the management of the other. Flipse Decl. Exh. B (Yang Decl.) at ¶¶ 5, 7; Flipse Decl. Exh. A (Lai Decl.) at ¶¶ 4, 6. There has been no sharing, commingling, manipulation, or diversion of assets between them. Flipse Decl. Exh. B (Yang Decl.) at ¶¶ 8, 11; Flipse Decl. Exh. A (Lai Decl.) at ¶¶ 7, 9. Although TUS touted CPT as a reliable panel supplier in sales pitches to potential customers, TUS has not owned or operated CPT's factories. Flipse Decl. Ex. C (E. Chen Dep. Tr. 43:9-43:12; 46:22-47:2). These facts alone are dispositive of the alter ego theory.

Plaintiffs' theory apparently is that TCO's ownership interest in both TUS and CPT somehow creates an alter ego relationship between TUS and CPT. To accept this theory, the Court must not

Gibson, Dunn & Crutcher LLP

11
TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

Case 4:07-cv-05944-JST Document 3263-6 Filed 12/23/14 Page 18 of 20
Case 3:07-md-01827-SI Document 5547 Filed 04/27/12 Page 17 of 19

only ignore the corporate separation between TUS and TCO, but also ignore the corporate separation between TCO and CPT. There is no evidence to demonstrate that either CPT or TUS is an alter ego of TCO, much less both. No court has ever found an alter ego relationship on facts similar to these.

TCO has never held more than fifty percent ownership interest in TUS. Lai MTD Decl. at ¶ 2; Flipse Decl. Exh. D (M. Lai Dep. Tr. 7:12-19). TUS has been independently managed and operated by its own Board of Directors and corporate officers. Flipse Decl. Exh. A (Lai Decl.) at ¶ 15. TCO has not been involved in TUS's daily business operations. *Id*. For example, TCO has had no input in TUS's pricing decisions regarding its LCD products. Flipse Decl. Exh. C (E. Chen Dep. Tr. 58:24-59:4). TUS has had its own corporate offices and manufacturing facilities located in Long Beach, California, and TUS has not shared any office space or manufacturing facilities with TCO. Flipse Decl. Exh. A (Lai Decl.) at ¶¶ 2, 12. TUS has maintained separate corporate bank accounts and has not commingled its financial assets with TCO. *Id.* at ¶ 13. TUS also has maintained independent financial records and reported its annual profits and losses separately from TCO. *Id.* at ¶ 14.

Likewise, the evidence establishes that CPT has functioned as a separate entity from TCO. CPT has been independently managed and operated by its own Board of Directors and corporate officers. Flipse Decl. Exh. B (Yang Decl.) at ¶ 13. As a publicly traded company, CPT has been accountable to its stockholders and regularly reported to those stockholders at annual meetings. *Id.* at ¶ 14. Neither TUS nor TCO has been involved in CPT's daily business operations. *Id.* at ¶ 13. CPT has at all times been based in Taoyuan, Taiwan, and has not shared any office space or manufacturing facilities with TUS or TCO. *Id.* at ¶¶ 3, 10. CPT has maintained separate corporate bank accounts and has not commingled its financial assets with TUS or TCO. *Id.* at ¶ 11. CPT also has maintained independent financial records, and calculated and reported its annual profits and losses separately from TUS and TCO. *Id.* at ¶ 12. While TCO has historically been CPT's largest shareholder, TCO's ownership interest in CPT steadily declined during the alleged conspiracy period. *Id*. at ¶ 9. TCO and its subsidiaries owned a majority of CPT's stock until 2003, although its ownership percentage fell to approximately thirty-one percent by the end of the alleged conspiracy period. *Id.* TCO and its

Gibson, Dunn & Crutcher LLP

12
TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

subsidiaries currently own less than twenty-five percent of CPT's publicly traded stock. *Id*. TUS does not own any CPT stock. *Id*. at ¶ 4; Flipse Decl. Exh. A (Lai Decl.) at ¶ 5.

While TCO owns a share of both CPT and TUS, that common investment is not enough to establish alter ego liability. *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997) ("Common ownership alone is insufficient to support disregard of the corporate form."). Indeed, even if TUS or CPT were a wholly owned subsidiary, that would not be enough to establish alter ego liability. *See, e.g.*, *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1137 (N.D. Cal. 2005) (allegation that subsidiary is wholly owned is "plainly" insufficient to state a claim for alter ego liability against parent); *see also United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985) ("[O]ne-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil.") (citations omitted). And evidence that a shareholder engages in active supervision of its investment alone does not establish an alter ego relationship. "Monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures" is "consistent with the parent's investor status." *Bestfoods*, 524 U.S. at 72.

Nor does evidence of shared directors signify the requisite unity of interest and ownership. As the Supreme Court has explained, "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary." *Id.* at 69. The fact that TCO chairman W.S. Lin, or any other TCO director, has served on TUS's board is insufficient to demonstrate alter ego liability, as is the fact that he has been a board member of TCO, TUS and CPT. Neither does the fact that some members on the boards of TUS and CPT are members of the Lin family allow Plaintiffs to pierce the corporate veil. *See, e.g.*, *Taylor v. Ron's Liquors, Inc.*, No. 10-694 SI, 2010 U.S. Dist. LEXIS 64497, at *6-7 (N.D. Cal. June 29, 2010) (finding a familial relationship, without more, insufficient to justify piercing the corporate veil); *see also Becker Family Builders Co-Plaintiffs Grp. v. FDIC*, No. 9-5477 RJB, 2010 U.S. Dist. LEXIS 95692, at *10 (W.D. Wash. Sept. 14, 2010) ("A corporation's separate legal identity is not lost merely because all of its stock is held by a single corporation, members of a single family, or by one person."). The personal relationships and familial connections between directors and officers of CPT, TCO and TUS provide no greater basis for imputing a unity of interest

Gibson, Dunn & Crutcher LLP

13
TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI

and ownership between TUS and CPT than the fact that these two companies share a common investor.

There is no evidence that TUS was a "mere instrumentality" of CPT or vice versa, much less that TUS, TCO and CPT all disregarded corporate formalities. Plaintiffs therefore cannot support a finding of alter ego liability.

### 2. Respecting the corporate identity of TUS will not result in fraud or injustice.

Alter ego liability is also not appropriate here for the independent reason that Plaintiffs have not, and cannot, put forth any facts that would demonstrate that piercing the corporate veils between TUS, CPT and TCO is necessary to avoid fraud or injustice. *See, e.g.*, *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) (noting that "piercing the corporate veil . . . is the rare exception, applied in the case of fraud or certain other exceptional circumstances"). CPT is a named defendant in these lawsuits. Plaintiffs can pursue their claims against CPT directly. Respecting TUS's separate corporate identity and granting summary judgment in its favor will not affect Plaintiffs' claims against those that actually participated in the alleged conspiracy.

## IV. CONCLUSION

There is no evidence that TUS, a purchaser of LCD panels, was part of the alleged conspiracies among LCD manufacturers to raise LCD prices. Nor was TUS the alter ego of CPT. TUS therefore requests that the Court grant its motion for summary judgment.

DATED: April 27, 2012

    GIBSON, DUNN & CRUTCHER LLP

    By:    /s/ Rachel S. Brass

    Joel S. Sanders (SBN 107234)
    Rachel S. Brass (SBN 219301)
    Austin Schwing (SBN 211696)
    Joel Willard (SBN 247899)
    GIBSON, DUNN & CRUTCHER LLP
    555 Mission Street, Suite 3000
    San Francisco, CA 94105
    (415) 393.8200 (Phone)
    (415) 393.8306 (Facsimile)
    rbrass@gibsondunn.com

    *Attorneys for Defendant*
    *TATUNG COMPANY OF AMERICA, INC.*

Gibson, Dunn & Crutcher LLP

14

TATUNG COMPANY OF AMERICA, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
CASE NOS.: 3:07-MD-1827 SI; 3:10-CV-4572 SI; 3:11-CV-00058 SI; 10-CV-4945 SI