# Exhibit 58

William A. Isaacson (admitted *pro hac vice*)
Melissa Felder (admitted *pro hac vice*)
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
Email: wisaacson@bsfllp.com
 mfelder@bsfllp.com

Philip J. Iovieno (admitted *pro hac vice*)
Anne M. Nardacci (admitted *pro hac vice*)
Luke Nikas (admitted *pro hac vice*)
Christopher V. Fenlon (admitted *pro hac vice*)
BOIES, SCHILLER & FLEXNER LLP
10 North Pearl Street, 4th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665
Email: piovieno@bsfllp.com
 anardacci@bsfllp.com
 lnikas@bsfllp.com
 cfenlon@bsfllp.com

Counsel for Plaintiff Electrograph Systems, Inc. and
Electrograph Technologies Corp.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*AT&T Mobility, LLC, et al. v. AU Optronics Corp., et al.*, No. 09-cv-4997-SI<br><br>*Electrograph Systems, Inc., et al. v. Epson Imaging Devices Corp., et al.*, No. 10-cv-0117-SI<br><br>*Best Buy Co., Inc., et al. v. AU Optronics Corp., et al.*, No. 10-cv-04572-SI<br><br>*Target Corp., et al. v. AU Optronics Corp., et al.*, No. 10-cv-4945-SI<br><br>*Costco Wholesale Corp. v. AU Optronics Corp., et al.*, No. 11-cv-00058-SI | Master File No. 3:07-md-01827-SI (N.D. Cal.)<br><br>Case Nos. 09-cv-4997; 10-cv-0117; 10-cv-4572; 10-cv-4945; 11-cv-00058<br><br>MDL No. 1827<br><br>**DECLARATION OF PHILIP J. IOVIENO IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF STANDING UNDER *ILLIONIS BRICK* AND *ATM FEE*<br><br>DOCUMENT SUBMITTED UNDER SEAL** |

I, **PHILIP J. IOVIENO**, declare as follows:

1. I am a partner at the law firm of Boies, Schiller & Flexner LLP, counsel for Plaintiffs Electrograph Systems, Inc. and Electrograph Technologies Corp. ("Electrograph"), and am licensed to practice law in the State of New York. Except for those matters stated on information and belief, which I believe to be true, I have personal knowledge of the facts stated herein, and, if called as a witness, I could and would competently testify thereto.

## DEFENDANT AND CO-CONSPIRATOR CORPORATE FAMILIES

**EPSON**

1. Attached hereto as Exhibit 1 is a true and correct copy of Seiko Epson Corporation's 2003 Annual Report. During the conspiracy period Epson America, Inc. was a wholly owned subsidiary of co-conspirator Seiko Epson Corporation. *Id.* at 60.

2. Attached hereto as Exhibit 2 is a true and correct copy of Seiko Epson Corporation's 2011 Annual Report. Epson America, Inc. is a wholly owned subsidiary of co-conspirator Seiko Epson Corporation. *Id.* at 88.

**HITACHI**

**Hitachi America Ltd.**

3. Attached hereto as Exhibit 3 is a true and correct copy of 2002 Hitachi, Ltd.'s Form 20-F. During the conspiracy period, Hitachi America Ltd. was a wholly owned subsidiary of Defendant Hitachi, Ltd. *Id.* at 19.

4. Attached hereto as Exhibit 4 is a true and correct copy of 2011 Hitachi, Ltd.'s Form 20-F. Hitachi America Ltd. is a wholly owned subsidiary of Defendant Hitachi, Ltd. *Id.* at 24

**Hitachi High Technologies America, Inc.**

5. During the conspiracy period, Defendant Hitachi, Ltd. owned a majority of the shares of Hitachi High-Technologies Corporation, a Japanese corporation. Exh. 3 at 18.

6. Attached hereto as Exhibit 5 is a true and correct copy of Hitachi High-Technologies America, Inc.'s Fed. R. App. P. 26.1 Corporate Disclosure Statement in *Ta Chong Bank Ltd. v. Hitachi High Technologies America, Inc.*, Case No. 08-17007, Dkt. No. 6814323 (9th Cir. Feb. 19,

1  2009). Hitachi High-Technologies America, Inc. is a wholly owned subsidiary of Hitachi High-
2  Technologies Corporation. *Id.*

**Hitachi Software Engineering America, Ltd.**

4  7. During the conspiracy period, Defendant Hitachi, Ltd. owned a majority of the shares
5  of Hitachi Software Engineering Co., Ltd. Exh. 3 at 18.

6  8. Attached hereto as Exhibit 6 is a true and correct copy of a brochure issued titled
7  Hitachi in North America – Group Companies and Affiliates, available at
8  http://www.hitachi.ca/jsp/hcl/supportingdocs/en/about/hitachi_north_america_brochure.pdf
9  (retrieved on Aug. 19, 2012). Hitachi Software Engineering America, Ltd. is a wholly owned
10 subsidiary of Hitachi Software Engineering Co., Ltd. *Id.*

**LGE**

12 9. Attached hereto as Exhibit 7 is a true and correct copy of LG Electronics Inc.'s Audit
13 Report on Consolidated Financial Statements for the year ended December 31, 1999. During the
14 conspiracy period LG Electronics USA, Inc. was a wholly owned subsidiary of co-conspirator LG
15 Electronics Inc. *Id.* at 13.

16 10. Attached hereto as Exhibit 8 is a true and correct copy of LG Electronics Inc.'s
17 Interim Consolidated Financial Statements through March 31, 2012. LG Electronics USA, Inc. is
18 a wholly owned subsidiary of co-conspirator LG Electronics Inc. *Id.* at 13.

**MITSUBISHI**

**Mitsubishi Digital Electronics America, Inc.**

21 11. Attached hereto as Exhibit 9 is a true and correct copy of a letter from Mitsubishi
22 Digital Electronics America, Inc. to the Federal Communications Commission dated October 30,
23 2003. During the conspiracy period, Mitsubishi Digital Electronics America, Inc. was an
24 indirectly wholly owned subsidiary of co-conspirator Mitsubishi Electric Corporation. *Id.*

25 12. Attached hereto as Exhibit 10 is a true and correct copy of Mitsubishi Digital
26 Electronics America, Inc.'s Rule 7.1 Corporate Disclosure Statement in *Genoa Color*
27 *Technologies, Ltd. v. Mitsubishi Electric Corp., et al.*, Case No. 07-cv-6233, Dkt. No. 15
28 (S.D.N.Y. Sept. 5, 2007). Mitsubishi Digital Electronics America, Inc. is a wholly owned

subsidiary of Mitsubishi US Holdings, which is a wholly owned subsidiary of co-conspirator Mitsubishi Electric Corporation. *Id.*

### Mitsubishi Electronics America, Inc.

13. Attached hereto as Exhibit 11 is a true and correct copy of a 1999 Mitsubishi brochure, available at http://icwic.cn/icwic/data/pdf/cd/cd035/Image%20Sensor/a/118868.pdf (retrieved on Aug. 19, 2012). During the conspiracy period, Mitsubishi Electronics America, Inc. was a wholly owned subsidiary of co-conspirator Mitsubishi Electric Corporation. *Id.* at 2.

### Mitsubishi Wireless Communications Inc.

14. Attached hereto as Exhibit 12 is a true and correct copy of a press release issued by Mitsubishi on November 25, 1998, available at http://www.mitsubishielectric-usa.com/news/1998/112598.html (retrieved on Aug. 19, 2012). During the conspiracy period, Mitsubishi Wireless Communications Inc. was a joint venture between co-conspirator Mitsubishi Electric Corporation and the trading company Mitsubishi Corporation. *Id.*

15. Attached hereto as Exhibit 13 is a true and correct copy of a press release issued by Mitsubishi on September 14, 2001, available at http://www.mitsubishielectric.com/news/news_releases/2001/mel0520.html (retrieved on Aug. 19, 2012). During the conspiracy period, co-conspirator Mitsubishi Electric Corporation owned 86.7 percent of the shares of Mitsubishi Wireless Communications Inc. *Id.* Mitsubishi Wireless Communications Inc. was dissolved on March 31, 2002. *Id.*

## NEC

### NEC Display Solutions of America, Inc. (f/k/a NEC-Mitsubishi Electronics Display of America, Inc.)

16. Attached hereto as Exhibit 14 is a true and correct copy of 2000 NEC Corporation's 20-F filing. In January 2000, NEC Corp. transferred its display monitor systems to a joint venture, NEC-Mitsubishi Electric Visual Systems Corporation ("NM Visual"), established by co-conspirators NEC Corp. and Mitsubishi Electric Corporation. *Id.* at 5.

17. Attached hereto as Exhibit 15 is a true and correct copy of a European Commission Article 6(1)(b) Decision dated March 4, 2000, regarding the NM Visual joint venture. During the conspiracy period, NM Visual was managed by a board of directors that consisted of an equal

number of directors from co-conspirators NEC Corp. and Mitsubishi Electric Corporation. *Id.* at 2. Decisions on key issues such as business plans, budgets and share transfers required approval from two-thirds of all directors present. *Id.*

18. Attached hereto as Exhibit 16 is a true and correct copy of 2003 NEC Corporation's 20-F filing. During the conspiracy period, co-conspirator NEC Corp. had a 50 percent share in equity and 50 percent ownership of voting shares in NM Visual. *Id.* at F-15.

19. Attached hereto as Exhibit 17 is a true and correct copy of a press release issued by NEC issued on February 21, 2005, available at http://www.necdisplay.com/documents/PressReleases/PressReleaseNMDA_022105.pdf (retrieved on Aug. 19, 2012). NM Visual was the parent company of NEC-Mitsubishi Electronics Display of America.

20. Attached hereto as Exhibit 18 is a true and correct copy of a press release issued by NEC on April 1, 2005, available at http://www.necdisplay.com/press-release/nec-mitsubishi-begins-operations-as-nec-display-so/413 (retrieved on Aug. 19, 2012). In 2005, NEC-Mitsubishi Electronics Display of America was renamed NEC Display Solutions of America, Inc., became a wholly owned subsidiary of co-conspirator NEC Corporation, and sold NEC's finished products, including monitors and projectors, in the U.S. under the name NEC Display Solutions. *Id.*

**NEC Technologies Inc.**

21. During the conspiracy period, NEC Technologies Inc. was a wholly owned subsidiary of co-conspirator NEC Corporation. Exh. 14 at F-15.

**NEC Solutions (America), Inc.**

22. Attached hereto as Exhibit 19 is a true and correct copy of a press release issued by NEC dated April 1, 2002, available at http://www.nec.co.jp/press/en/0204/0102.html (retrieved on Aug. 19, 2012). NEC Solutions (America), Inc. was formed in April 2002 by the merger of NEC Technologies Inc., NEC Computers Inc., and NEC Systems, Inc. *Id.*

23. During the conspiracy period, co-conspirator NEC Corp. had a 100 percent ownership interest in NEC Solutions, (America) Inc. Exh. 16 at 24.

1     **NEC America, Inc.**

2     24.    During the conspiracy period, NEC America Inc. was a wholly owned subsidiary of

3 NEC Corporation. *Id.* at 24.

4     **NEC Corporation of America**

5     25.    Attached hereto as Exhibit 20 is a true and correct copy of a press release issued by

6 NEC on April 26, 2006, available at http://www.nec.co.jp/press/en/0604/2602.html (retrieved on

7 Aug. 19, 2012). NEC Corporation of America was formed in 2006 by the merger of NEC

8 America, Inc., NEC Solutions (America), Inc., and NEC USA, Inc. *Id.*

9     26.    Attached hereto as Exhibit 21 is a true and correct copy of a press release issued by

10 co-conspirator NEC Corp. of America on July 3, 2006, available at

11 http://www.necunifiedsolutions.com/main/NewsEvents/NewPressPage.asp?release=2006070301.x

12 ml (retrieved on Aug. 19, 2012). NEC Corporation of America was the North American

13 subsidiary of NEC Corporation. *Id.*

14     27.    Attached hereto as Exhibit 22 is a true and correct copy of a press release issued by

15 NEC Corporation of America on March 13, 2012, available at

16 http://www.necam.com/About/read.cfm?ID=9c1e04a3-80b8-481f-9370-be6ed51393f3 (retrieved

17 on Aug. 19, 2012). NEC Corporation of America is a wholly owned subsidiary of co-conspirator

18 NEC Corp. *Id.*

19     **Packard Bell NEC, Inc.**

20     28.    During the conspiracy period, co-conspirator NEC Corp. held a majority of the voting

21 shares of Packard Bell NEC, Inc. Exh. 14 at F-16.

22 **PANASONIC**

23     **Panasonic Corporation of North America**

24     29.    Attached hereto as Exhibit 23 is a true and correct copy of a Panasonic Corporation's

25 (f/k/a Matsushita Electrical Industrial Co., Ltd.) 2003 Form 20-F. During the conspiracy period,

26 Panasonic Corporation of North America (f/k/a Matsushita Electric Corporation of America) was a

27 wholly owned subsidiary of co-conspirator Panasonic Corporation. *Id.* at 29.

28

IOVIENO DECL. ISO PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MPSJ FOR LACK OF STANDING     - 5 -      Master File No. 3:07-md-01827-SI
UNDER *ILLINOIS* BRICK AND *ATM FEE*

**Panasonic Broadcast and Television Systems Company**

30. Attached hereto as Exhibit 24 is a true and correct copy of a warranty issued by Panasonic Corporation of North America, available at ftp://ftp.panasonic.com/pub/Panasonic/drivers/pbts/manuals/WT_PBTS.pdf (retrieved on Aug. 19, 2012). Panasonic Broadcast and Television Systems Company is a unit of Panasonic Corporation of North America. *Id.*

**Panasonic Consumer Electronics (Panasonic CE)**

31. Attached hereto as Exhibit 25 is a true and correct copy of Panasonic Corporation of North America's Rule 7.1 Corporate Disclosure Statement in *Hughes v. Panasonic Consumer Electronics Co.*, Case No. 10-cv-00846, Dkt. No. 11 (D.N.J. Apr. 27, 2010). Panasonic Consumer Electronics Company is a division of Panasonic Corporation of North America. *Id.*

**Panasonic Communications & Systems Co.**

32. Attached hereto as Exhibit 26 is a true and correct copy of *O'Brien v. Matsushita Elec. Corp. of America*, 1997 WL 764553 (W.D. Mo. 1997). Panasonic Corporation of North America (f/k/a Matsushita Electric Corporation of America) did business as Panasonic Communications and Systems Company. *Id.*

**Panasonic Document Imaging Company**

33. Attached hereto as Exhibit 27 is a true and correct copy of a 2001 press release issued by Panasonic, available at http://www.panasonic.com/MECA/press_releases/access_081501.pdf (retrieved on Aug. 19, 2012). Panasonic Document Imaging Company was a "Business Unit" of Panasonic Corporation of North America (f/k/a Matsushita Electric Corporation of America). *Id.*

34. Attached hereto as Exhibit 28 is a true and correct copy of a Panasonic Service Information Guide dated October 18, 2001, available at http://www.panasonic.com/business/office/pub/techguide_dvd/service_info_guide4a.pdf (retrieved on Aug. 19, 2012). Panasonic Document Imaging Company was a division of Panasonic Corporation of North America (f/k/a Matsushita Electric Company of America). *Id.* at ii.

**Quasar**

35. Panasonic's products were marketed under the Quasar brand name during the conspiracy period. Exh. 23 at 149.

**PHILIPS**

**Philips Electronics North America Corporation**

36. Co-conspirator Koninklijke Philips Electronics N.V. ("Royal Philips") is the ultimate parent company of Philips Electronics North America Corporation ("PENAC"). Dkt. No. 4427, Dec. 23, 2011 (Philips Electronics North America Corporation Answer to Target Corp., et al.'s Second Amended Complaint) at ¶ 65.

**Philips Consumer Electronics Company/Philips Accessories and Computer Peripherals/Philips Business Solutions**

37. Attached hereto as Exhibit 29 is a true and correct copy of PENAC's Responses and Objections to Motorola Mobility, Inc. and Jaco Electronics, Inc.'s First Set of Interrogatories, dated Oct. 29, 2011. Philips Consumer Electronics Company/Philips Accessories and Computer Peripherals/Philips Business Solutions were run by PENAC as its divisions. *Id.* at 34-38.

**Magnavox**

38. Magnavox is a trademark and tradename owned by PENAC. *Id.*

**SAMSUNG**

**Samsung Electronics America**

39. Samsung Electronics America is wholly owned by Defendant Samsung Electronics Co. Ltd. Dkt. No. 1608, Mar. 15, 2010 (Samsung's Answer to Electrograph Complaint) at ¶ 49.

**Samsung Digital Information Technology Division**

40. Attached hereto as Exhibit 30 is a true and correct copy of a press release issued by Samsung issued on July 6, 2004, available at http://www.samsung.com/us/news/newsRead.do?news_seq=2248 (retrieved on Aug. 19, 2012). Samsung Digital Information Technology Division is a division of Samsung Electronics America. *Id.*

**SANYO**

  **SANYO Fisher Corporation**

  41. Attached hereto as Exhibit 31 is a true and correct copy of co-conspirator SANYO Electric Co., Ltd.'s 2010 Annual Report. SANYO North America Corporation is a subsidiary of Sanyo Electric Co. *Id.* at 73.

  42. Attached hereto as Exhibit 32 is a true and correct copy of a SANYO webpage titled Corporate Information, available at http://us.sanyo.com/Commercial-Projectors/Corporate-Information (retrieved on Aug. 19, 2012). SANYO Fisher Company is a division of SANYO North America Corporation. *Id.*

**SHARP**

  **Sharp Electronics Corporation**

  43. Attached hereto as Exhibit 33 is a true and correct copy of Sharp Electronics Corporation's Rule 7.1 Corporate Disclosure Statement in *Weingarten v. AU Optronics Corp., et al.*, Case No. 07-cv-04931-SI, Dkt. No. 1-14 (N.D. Cal. Sept. 24, 2007). Sharp Electronics Corporation was a wholly owned subsidiary of Defendant Sharp Corporation. *Id.*

  44. Attached hereto as Exhibit 34 is a true and correct copy of Sharp Corporation's 2012 Annual Report. Sharp Electronics Corporation is a consolidated subsidiary of Defendant Sharp Corporation. *Id.* at 68.

**TOSHIBA**

  **Toshiba America Inc.**

  45. During the conspiracy period, Toshiba America Inc. was a wholly owned subsidiary of Defendant Toshiba Corporation. Dkt. No. 3521, Sept. 9, 2011 (Toshiba Entities' Motion for Partial Summary Judgment Under *Illinois Brick*) at 4-5.

  **Toshiba America Information Systems, Inc.**

  46. Attached hereto as Exhibit 35 is a true and correct copy of Toshiba Corporation's 1999 Annual Report. In 1999, Toshiba America Information Systems, Inc. was a wholly owned subsidiary of Defendant Toshiba Corporation. *Id.* at 45.

47. During the conspiracy period, Toshiba America Information Systems, Inc. was a wholly owned subsidiary of Toshiba America Inc. Dkt. No. 3521, Sept. 9, 2011 (Toshiba Entities' Motion for Partial Summary Judgment Under *Illinois Brick*) at 4-5.

**Toshiba America Consumer Products**

48. In 1999, Toshiba America Consumer Products was a wholly owned subsidiary of Defendant Toshiba Corporation. Exh. 35 at 45.

49. Attached hereto as Exhibit 36 is a true and correct copy of a statement by Toshiba America Inc. on its website, available at http://www.toshiba.com/tai/about_us.jsp (retrieved on Aug. 20, 2012). Toshiba America Inc. is the holding company of Toshiba America Consumer Products. *Id.*

## ENTITIES WITH OWNERSHIP OR CONTROL AFFILIATION
## WITH DEFENDANTS AND CO-CONSPIRATORS

**BENQ/AUO**

**BenQ America Corporation (f/k/a Acer Peripherals America Inc.)**

50. Attached hereto as Exhibit 37 is a true and correct copy of excerpts of AU Optronics Corp.'s 2004 Form 20-F/A dated May 7, 2004. BenQ owned 14.38 percent of Defendant AUO's outstanding shares in 2004. *Id.* at 63. BenQ was Defendant AUO's "major shareholder." *Id.* at 62-63. BenQ accounted for 19.9 percent of Defendant AUO's sales in 2004. *Id.* at 14. BenQ's influence as Defendant AUO's "largest shareholder" and one of its "largest customers" caused AUO to issue a warning to other shareholders that "BenQ's substantial interest in [AUO] may lead to conflicts of interest affecting [AUO's] sales decisions or allocations." *Id.* at 14. K.Y. Lee served as Chairman of AUO and Chairman and CEO of BenQ. *Id.* at 58. His-Hua Sheaffer Lee served as a Director of AUO and President and COO of BenQ. *Id.* Ko-Yun Yu served as a Supervisor of AUO and CFO of BenQ. *Id.* BenQ had three representative directors on AUO's board. *Id.*

51. Attached hereto as Exhibit 38 is a true and correct copy of AUO's 2005 Form 20-F dated September 12, 2005. "In 2004, [Defendant AUO] purchased 126,600,000 shares of BenQ representing a 5.47% equity interest in BenQ. As [AUO] and BenQ share a common chairman

1 and chief executive officer, a second officer board member, and have other commercial relationships, [AUO is] deemed to have significant influence over BenQ." *Id.* at 37.

52. Attached hereto as Exhibit 39 is a true and correct copy of BenQ Corporation's Non-Consolidated Financial Statement for 2002, 2003 and 2004. BenQ was "the stockholder which own[ed] the highest percentage of voting shares in AU[O]," and "exercise[d] significant influence over AU[O]'s operating and financial policies." *Id.* at 13.

53. BenQ America Corporation is a wholly owned subsidiary of BenQ (L) Corp., *id.* at 32, which is a wholly owned subsidiary of BenQ Corporation, *id.* at 10.

**CHIMEI/NEXGEN**

**NEXGEN Mediatech USA, Inc.**

54. Attached hereto as Exhibit 40 is a true and correct copy of a Chi Mei webpage, available at http://www.chimei.com.tw/en/news-detail.asp?news_id=13 (retrieved on Aug. 20, 2012). NEXGEN Mediatech Inc. is jointly owned by Chi Mei Corporation and Defendant Chi Mei Optoelectronics Corp. (c/k/a Chimei Innolux Corp.). "NEXGEN Mediatech Inc., a member of the CHIMEI Group, was established as part of CHIMEI Group's vertical integration strategy for optoelectronics investment. Led by CHIMEI Group Chairman Ho Jau-Yang and President Shi Chia-chang." *Id.*

55. Attached hereto as Exhibit 41 is a true and correct copy of a Chi Mei webpage titled Directors and Supervisors, available at http://atlas.pristine.com.tw/~mcclay/clients/cmo/directors_supervisors.php (retrieved on Aug. 20, 2012). Ching-siang Liao is the Chairman of the Board of Defendant CMO and chairman of Chi Mei Corporation and Nexgen Mediatech Inc. *Id.* Jau-yang Ho is Vice-Chairman of the Board of Defendant CMO, Chairman of Defendant CMO Japan Co., Ltd., and a director of Chi Mei Corporation and Nexgen Mediatech Inc. *Id.* Biing-seng Wu is a director of Defendant CMO and a member of the board of Nexgen Mediatech Inc. *Id.* Jack Lin is a director of Defendant CMO, a supervisor at Nexgen Mediatech Inc. and Defendant CMO Japan, and a member of the board of Chi Mei Corporation. *Id.* Chun Hwa-Hsu is a director and senior vice president at Defendant CMO and a supervisor at Nexgen Mediatech Inc. *Id.*

IOVIENO DECL. ISO PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MPSJ FOR LACK OF STANDING           - 10 -           Master File No. 3:07-md-01827-SI
UNDER *ILLINOIS* BRICK AND *ATM FEE*

56. Attached hereto as Exhibit 42 is a true and correct copy of Nexgen Mediatech U.S.A., Inc.'s Rule 7.1 Corporate Disclosure Statement in *Custom Audio Video v. Sharp Electronics Corporation, et al.*, Case No. 07-cv-00963, Dkt. No. 19-1 (D.N.J. Apr. 24, 2007). Nexgen Mediatech U.S.A., Inc. is a wholly owned subsidiary of Nexgen Mediatech Inc. *Id.*

**SAMSUNG/SAMSUNG OPTO-ELECTRONICS**

**Samsung Opto-Electronics America, Inc.**

57. Attached hereto as Exhibit 43 is a true and correct copy of Samsung Techwin Co., Ltd.'s Non-Consolidated Financial Statements for 2006. Defendant Samsung Electronics Co., Ltd. was the majority shareholder of Samsung Techwin Co., Ltd. with a 25.46% ownership. *Id.* at 10. During the conspiracy period, Samsung Opto-Electronics America, Inc. was a consolidated subsidiary of Samsung Techwin Co., Ltd. *Id.* at 39.

58. Attached hereto as Exhibit 44 is a true and correct copy of a Samsung press release dated January 6, 2009, available at http://www.samsungpresenterusa.com/board/news_detail.asp?NewsID=13&Type=1 (retrieved on Aug. 19, 2012). "Samsung Techwin America is the U.S. subsidiary of Samsung Techwin Co., Ltd. in Sungnam Kyungki-Do, Korea. Samsung is the world's 11th largest company." *Id.*

**HANNSTAR/HANNSPREE**

**Hannspree California, Inc.**

59. Attached hereto as Exhibit 45 is a true and correct copy of Hannspree Inc.'s Rule 7.1 Corporate Disclosure Statement in *Semiconductor Energy Laboratory Co. v. Hannstar Display Corp., et al.*, Case No. 06-cv-0190, Dkt. No. 37 (E.D. Tex. Oct. 11, 2006). Defendant HannStar Display Corp. owned more than 10% of Hannspree, Inc.'s shares. *Id.*

60. Attached hereto as Exhibit 46 is a true and correct copy of Hannspree Inc.'s Answer to Plaintiff's Second Amended Complaint and Counterclaims in *Semiconductor Energy Laboratory Co. v. Hannstar Display Corp., et al.*, Case No. 06-cv-0190, Dkt. No. 33 (E.D. Tex. Oct. 11, 2006). Defendant HannStar held a minority stake of Hannspree, Inc.'s shares. *Id.* at ¶ 3. Hannspree California Inc. is an indirect subsidiary of Hannspree Inc. *Id.* at ¶ 4.

61. Attached hereto as Exhibit 47 is a true and correct copy of Hannspree California Inc.'s Rule 7.1 Corporate Disclosure Statement in *Semiconductor Energy Laboratory Co. v. Hannstar Display Corp., et al.*, Case No. 06-cv-0190, Dkt. No. 36 (E.D. Tex. Oct. 11, 2006). Hannspree California's parent corporations were Hannspree USA Inc., Hannspree North America Holdings Limited, Hannspree International Holdings Limited, and Hannspree Inc. *Id.*

**CHUNGHWA/TATUNG**

**Tatung Company of America**

62. Attached hereto as Exhibit 48 is a true and correct copy of Tatung Co., Ltd.'s 2011 Annual Report. Tatung Co., Ltd. owns 50 percent of the outstanding shares of Tatung Company of America, *id.* at 133, and Tatung Company of America operates as a subsidiary of Tatung Co., Ltd. *Id.* at 130. Tatung Co., Ltd., together with its directors, supervisors, and management, currently owns 24.22 percent of Defendant Chunghwa Picture Tubes, Ltd. *Id.* at 131. Tatung and Chunghwa have overlapping officers and directors. Dkt. No. 5547.

**THIRD-PARTY DECLARATIONS**

63. Attached hereto as Exhibit 49 is a true and correct copy of the Declaration of Joongmoo Byun of LG Electronics USA, Inc., sworn to on October 6, 2011.

64. Attached hereto as Exhibit 50 is a true and correct copy of the Declaration of Mark Wayne Fillers of Philips Electronics North America Corporation, sworn to on October 12, 2011.

65. Attached hereto as Exhibit 51 is a true and correct copy of the Declaration of Chris White of Acer America Corporation, sworn to on November 3, 2011.

66. Attached hereto as Exhibit 52 is a true and correct copy of the Declaration of William Brinkerhoff of Gateway, Inc., sworn to on November 3, 2011.

67. Attached hereto as Exhibit 53 is a true and correct copy of the Declaration of Antoine Simonnet of Hewlett-Packard Company, sworn to on November 18, 2011.

68. Attached hereto as Exhibit 54 is a true and correct copy of the Declaration of Arthur B. Moore of Westinghouse Digital, LLC, sworn to on November 18, 2011.

69. Attached hereto as Exhibit 55 is a true and correct copy of the Declaration of Seymour Liebman of Canon U.S.A. Inc., sworn to on November 29, 2011.

70. Attached hereto as Exhibit 56 is a true and correct copy of the Declaration of Siranush Arabian of Epson America, Inc., sworn to on December 7, 2011.

71. Attached hereto as Exhibit 57 is a true and correct copy of the Declaration of Jordan A. Matthews of JVC Americas Corporation, sworn to on December 12, 2011.

72. Attached hereto as Exhibit 58 is a true and correct copy of the Declaration of Mark Buckley of Apple Inc., sworn to on December 15, 2011.

### DEPOSITIONS

73. Attached hereto as Exhibit 59 is a true and correct copy of excerpts of the Deposition of Scott Birnbaum, taken on February 19, 2009.

74. Attached hereto as Exhibit 60 is a true and correct copy of excerpts of the Deposition of Bob Scaglione, dated March 4, 2009.

75. Attached hereto as Exhibit 61 is a true and correct copy of excerpts of the Deposition of Masahiro Yokota, dated March 11, 2009.

76. Attached hereto as Exhibit 62 is a true and correct copy of excerpts of the Deposition of Junnosuke Tojo, dated March 31, 2009.

77. Attached here to as Exhibit 63 is a true and correct copy of excerpts of the Deposition of Frank Lincks, dated May 11, 2011.

78. Attached hereto as Exhibit 64 is a true and correct copy of excerpts of the Deposition of Dr. Leslie Marx, dated June 11, 2012.

79. Attached hereto as Exhibit 65 is a true and correct copy of excerpts of the Deposition of Rabih Chikhani, dated June 20, 2012.

### DISCOVERY RESPONSES

80. Attached hereto as Exhibit 66 is a true and correct copy of excerpts of the Samsung Defendants' Responses to Indirect Purchaser Plaintiffs' Fifth Set of Requests for Production of Documents to Samsung Defendants, dated May 4, 2011.

### EXPERT REPORTS

81. Attached hereto as Exhibit 67 is a true and correct copy of excerpts of the Expert Report of Edward A. Snyder, Ph.D., dated August 10, 2009, as to Indirect Purchaser Plaintiffs.

82. Attached hereto as Exhibit 68 is a true and correct copy of excerpts of the Expert Report of B. Douglas Bernheim, Ph.D., dated December 15, 2011, as to Electrograph.

83. Attached hereto as Exhibit 69 is a true and correct copy of excerpts of the Expert Report of B. Douglas Bernheim, Ph.D., dated December 15, 2011, as to Target, et al.

84. Attached hereto as Exhibit 70 is a true and correct copy of excerpts of the Expert Report of B. Douglas Bernheim, Ph.D., dated December 15, 2011, as to Best Buy.

85. Attached hereto as Exhibit 71 is a true and correct copy of excerpts of the Expert Report of B. Douglas Bernheim, Ph.D., dated December 15, 2011, as to Costco.

86. Attached hereto as Exhibit 72 is a true and correct copy of excerpts of the Expert Report of B. Douglas Bernheim, Ph.D., dated December 21, 2011, as to AT&T.

87. Attached hereto as Exhibit 73 is a true and correct copy of the excerpts of the Expert Report of Lorin M. Hitt, Ph.D, dated February 23, 2012, as to AT&T, Electrograph, Motorola, Nokia, and Target, et al.

88. Attached hereto as Exhibit 74 is a true and correct copy of excerpts of the Rebuttal Expert Report of Leslie Marx, Ph.D, dated May 11, 2012, as to Electrograph.

## LG DISPLAY

89. Attached hereto as Exhibit 75 is a true and correct copy of LG Display's (f/k/a LG.Philips LCD Co., Ltd.) Form F-1 Registration Statement dated June 24, 2004, which states the following:
- LG Electronics and Philips entered into a Joint Venture Agreement for the ownership and operation of LG Display on July 26, 1999, at which time LG Display issued 50 percent of its stock to Philips (LG Electronics continued to hold the other 50%). *Id.* at F-7.
- LG Electronics and Philips had "ultimate responsibility for the management of [LG Display's] business affairs." *Id.* at 107.
- LG Display's Board of Directors had six members, one of whom was the Senior Vice President and Chief Financial Officer of LG Display, and the other five of whom were senior executives or board members of LG Electronics or Philips. *Id.* at 108. Three of these directors had served on the Board since 1999. *Id.*
- LG Electronics and Philips agreed to terminate the Joint Venture Agreement and enter into a shareholders' agreement prior to the initial public offering. *Id.* at 83.
- LG Electronics and Philips entered into a shareholders' agreement "to reflect certain corporate governance agreements between them as controlling shareholders." *Id.* at 118.

IOVIENO DECL. ISO PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MPSJ FOR LACK OF STANDING — - 14 - — Master File No. 3:07-md-01827-SI
UNDER *ILLINOIS* BRICK AND *ATM FEE*

- LG Electronics and Philips owned all of the voting stock in the joint venture and "may continue to influence corporate decisions after the completion" of the stock offering. *Id.* at 24.
- The Joint Representative Directors, who jointly had the authority to act on behalf of LG Display, were Bon Joon Koo (LG CEO) and Ron Wirahadiraksa (Philips CFO). *Id.* at 107-8.

[redacted]

91. Attached hereto as Exhibit 77 is a true and correct copy of LG Display's Articles of Incorporation, which state that the CEO and CFO must serve as Joint Representative Directors of LG Display. *Id.* at Art. 29.

[redacted]

93. Attached hereto as Exhibit 79 is a true and correct copy of LG Display's Form 20-F, dated April 11, 2005, which states the following:
- LG Electronics and Philips had "significant influence over" LG Display's "corporate decisions." *Id.* at 16.
- Three of LG Display's five outside directors had prior connections to LG or Philips: Bart van Halder (former director and group controller for Philips and CFO of Philips Medical Systems); Doug Dunn (former CEO of the Philips' Consumer Electronics Division and Semiconductor Division); and Dongwoo Chun (former Executive Vice President of LG Semicon). *Id.* at 64.
- After LG Display's initial public offering in July 2004 and as of December 31, 2004, LG Electronics and Philips each owned 44.57% of LG Display, and the public owned 10.86%. *Id.* at F-6.

94. Attached hereto as Exhibit 80 is a true and correct copy of LG Display's Form 20-F, dated June 21, 2006, which states the following:

IOVIENO DECL. ISO PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MPSJ FOR LACK OF STANDING     - 15 -     Master File No. 3:07-md-01827-SI
UNDER *ILLINOIS* BRICK AND *ATM FEE*

- LG Electronics and Philips Electronics had "significant influence over" LG Display's "corporate decisions." *Id.* at 17.
- Three of LG Display's five outside directors had prior connections to LG or Philips: Bart van Halder (former director and group controller for Philips and CFO of Philips Medical Systems); Doug Dunn (former CEO of the Philips' Consumer Electronics Division and Semiconductor Division); and Dongwoo Chun (former Executive Vice President of LG Semicon). *Id.* at 70.
- As of December 31, 2005, LG Electronics owned 37.90%, Philips owned 32.87%, and the public owned 29.23% of LG Display. *Id.* at F-7.

95. Attached hereto as Exhibit 81 is a true and correct copy of LG Display's Form 20-F, dated April 11, 2007, which states the following:

- LG Electronics and Philips Electronics had "significant influence over" LG Display's "corporate decisions." *Id.* at 16.
- Three of LG Display's five outside directors had prior connections to LG or Philips: Bart van Halder (former director and group controller for Philips and CFO of Philips Medical Systems); Doug Dunn (former CEO of the Philips' Consumer Electronics Division and Semiconductor Division); and Dongwoo Chun (former Executive Vice President of LG Semicon). *Id.* at 59.
- As of December 31, 2006, LG Electronics owned 37.90%, Philips owned 32.87%, and the public owned 29.23% of LG Display. *Id.* at F-9.

96. Attached hereto as Exhibit 82 is a true and correct copy of LG Displays' Registration for its Secondary Offering dated July 21, 2005, which states that "persons with ties to LG Electronics and Philips Electronics may account for as many as four directors on [the] board and will continue to exert substantial influence over the operation of [the] business." *Id.* at 26.

## OTHER EXHIBITS

[redacted]

IOVIENO DECL. ISO PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MPSJ FOR LACK OF STANDING - 16 - Master File No. 3:07-md-01827-SI
UNDER *ILLINOIS* BRICK AND *ATM FEE*



IOVIENO DECL. ISO PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MPSJ FOR LACK OF STANDING — - 17 - — Master File No. 3:07-md-01827-SI
UNDER *ILLINOIS* BRICK AND *ATM FEE*

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of August, 2012, at Albany, New York.

                                                                              /s/ Philip J. Iovieno
                                                                            Philip J. Iovieno