David J. Burman (admitted *pro hac vice*)
Cori G. Moore (admitted *pro hac vice*)
Eric J. Weiss (admitted *pro hac vice*)
Nicholas H. Hesterberg (admitted *pro hac vice*)
Steven D. Merriman (admitted *pro hac vice*)
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:     206.359.8000
Facsimile:     206.359.9000

Joren Ayala-Bass, State Bar No. 208143
JBass@perkinscoie.com
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111-4131
Telephone:     415.344.7120
Facsimile:     415.344.7320

*Attorneys for Plaintiff*
*Costco Wholesale Corporation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Costco Wholesale Corporation v. Hitachi, Ltd., et al.*, No. 3:11-cv-06397-SC | Case No. 3:07-cv-05944-SC<br>MDL No. 1917<br><br>**COSTCO WHOLESALE CORPORATION'S OPPOSITION TO (1) DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CERTAIN DIRECT ACTION PLAINTIFFS ON DUE PROCESS GROUNDS AND (2) DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST COSTCO ON CHOICE OF LAW GROUNDS**<br><br>Date:       February 6, 2015<br>Time:       10:00 a.m.<br>Before:    Hon. Samuel Conti<br><br>**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]** |

COSTCO WHOLESALE CORPORATION'S OPPOSITION TO
DEFENDANTS' JOINT MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ON DUE PROCESS AND CHOICE-OF-LAW GROUNDS

Case No. 3:07-cv-05944-SC
Individual Case No.: 3:11-cv-06397-SC

# TABLE OF CONTENTS

**Page**

I. SUMMARY OF ARGUMENT ........................................................................... 1

II. STATEMENT OF FACTS ............................................................................... 2

    A.    Costco's Purchases of Defendants' CRT Products in California........................... 2

    B.    Defendants' Conspiratorial Activities in California ............................. 4

        1.    LG Defendants .................................................................... 4

        2.    Hitachi Defendants ............................................................... 7

III. ARGUMENT ................................................................................................... 8

    A.    Defendants Bear a Substantial Burden to Prevail on Summary Judgment ............. 8

    B.    Due Process Does Not Bar Costco's California Claims ......................... 8

        1.    Due Process Is Satisfied by Costco's Purchases of Defendants' Price-Fixed CRTs in California. ............................................... 9

        2.    Defendants' Conspiratorial Conduct Also Satisfies Due Process............. 12

            a.    LG Defendants ........................................................... 12

            b.    Hitachi Defendants..................................................... 16

    C.    Choice of Law Permits Costco to Seek Relief under California Law.................. 18

IV. CONCLUSION ............................................................................................... 22

COSTCO WHOLESALE CORPORATION'S OPPOSITION TO
DEFENDANTS' JOINT MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ON DUE PROCESS AND CHOICE-OF-LAW GROUNDS

i

Case No. 3:07-cv-05944-SC
Individual Case No.: 3:11-cv-06397-SC

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Allstate Ins. Co. v. Hague*,
5    449 U.S. 302 (1981)............................................................................................9, 10, 16

6

*Anderson v. Liberty Lobby, Inc.*,
7    477 U.S. 242 (1986).........................................................................................................8

*AT&T Mobility LLC v. AU Optronics Corp.*,
8    707 F.3d 1106 (9th Cir. 2013)...............................................................9, 10, 15, 16

9

*Blewett v. Abbott Labs.*,
10    86 Wash. App. (1997).....................................................................................................21

*Classic Concepts, Inc. v. Linen Source, Inc.*,
11    No. CV 04-8088GPSMANX, 2006 WL 4756377 (C.D. Cal. Apr. 27, 2006) .........11

12

*Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.*,
13    41 Wash. App. 26 (1985)...............................................................................................21

14

*Dean Foods Co. v. Brancel*,
15    187 F.3d 609 (7th Cir. 1999).........................................................................................11

16

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001)......................................................................12, 13, 14, 16

17

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
18    328 F.3d 1122 (9th Cir. 2003).......................................................................................13

19

*Helm v. Alderwoods Grp., Inc.*,
    696 F. Supp. 2d 1057 (N.D. Cal. 2009) .......................................................................13

20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
21    911 F. Supp. 2d 857 (N.D. Cal. 2012) ...........................................................................8

22

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
23    No. C-07-5944-SC, 2013 WL 4505701 (N.D. Cal. Aug. 21, 2013) ....................9, 10

24

*In re Flash Memory Antitrust Litig.*,
    643 F. Supp. 2d 1133 (N.D. Cal. 2009) .......................................................................17

25

*In re Phenylpropanolamine (PPA) Products Liab. Litig.*,
26    344 F. Supp. 2d 686 (W.D. Wash. 2003)....................................................................13

27

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
28    No. 11-2225 SI, 2014 WL 2905105 (N.D. Cal. June 26, 2014) .............................10

COSTCO WHOLESALE CORPORATION'S OPPOSITION TO
DEFENDANTS' JOINT MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ON DUE PROCESS AND CHOICE-OF-LAW GROUNDS

ii

Case No. 3:07-cv-05944-SC
Individual Case No.: 3:11-cv-06397-SC

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 11-2225 SI, 2014 WL 2905131 (N.D. Cal. June 26, 2014) ................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. C 11-0058 SI, 2011 WL 3809767 (N.D. Cal. Aug. 29, 2011) ...........................19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SL, 2013 WL 4175253 (N.D. Cal. July 11, 2013) ........................21

*Indep. Iron Works, Inc. v. U.S. Steel Corp.*,
   177 F. Supp. 743 (N.D. Cal. 1959), *aff'd*, 322 F.2d 656 (9th Cir. 1963)..................8

*Johnson v. Spider Staging Corp.*,
   87 Wash. 2d 577 (1976) ...............................................................................18, 19

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
   210 F.3d 1099 (9th Cir. 2000) .......................................................................8

*Paulsen v. CNF Inc.*,
   559 F.3d 1061 (9th Cir. 2009) ......................................................................18

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ..............................................................................9, 12

*Real v. Driscoll Strawberry Assoc., Inc.*,
   603 F.2d 748 (9th Cir. 1979) ..........................................................................8

*Rice v. Dow Chem. Co.*,
   124 Wn.2d 205 (1994) ................................................................................18

*Singh v. Edwards Lifesciences Corp.*,
   151 Wash. App. 137 (2009) ...........................................................................20

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
   556 F.2d 406 (9th Cir. 1977) ........................................................................12

*Zenaida-Garcia v. Recovery Sys. Tech., Inc.*,
   128 Wash. App. 256 (2005) ..........................................................................21

**STATUTES**

UCC § 1-201(b)(29) ........................................................................................11

UCC § 2-401 ................................................................................................11

Wash. Rev. Code § 19.86.080 .............................................................................21

COSTCO WHOLESALE CORPORATION'S OPPOSITION TO
DEFENDANTS' JOINT MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ON DUE PROCESS AND CHOICE-OF-LAW GROUNDS

iii

Case No. 3:07-cv-05944-SC
Individual Case No.: 3:11-cv-06397-SC

1

**OTHER AUTHORITIES**

2

Restatement (Second) of Conflict of Laws § 6 (1971) ..............................................................18, 19

3

Restatement (Second) of Conflict of Laws § 145 (1971) ............................................18, 19, 20, 21

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COSTCO WHOLESALE CORPORATION'S OPPOSITION TO
DEFENDANTS' JOINT MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ON DUE PROCESS AND CHOICE-OF-LAW GROUNDS

iv

Case No. 3:07-cv-05944-SC
Individual Case No.: 3:11-cv-06397-SC

1

## I.     SUMMARY OF ARGUMENT[1]

Costco Wholesale Corporation's ("Costco") claim for relief under the California

Cartwright Act arises from injuries it sustained when it purchased more products containing

price-fixed cathode-ray tube ("CRT") products in California than in any other state, as well as

from Defendants' conspiratorial activity within and directed at California.  Defendants LG and

Hitachi contend that they are immune from California liability under theories of due process and

choice of law.[2]  The Northern District has repeatedly rejected those arguments and the Court

should do the same here.

Costco's California-law claim comports with due process for two reasons.  First, Costco

received Defendants' price-fixed CRT products at Costco's warehouses and depots in the state of

California, which alone is sufficient to satisfy due process.  But even if Costco had not purchased

Defendants' goods within California, LG and Hitachi nevertheless are accountable under the

Cartwright Act because each engaged in anticompetitive conduct within California.  Contrary to

their assertion, the evidence of LG's and Hitachi's misconduct in California is substantial and,

taken as a whole, creates genuine factual issues that cannot be resolved on summary judgment.

Nor do choice-of-law principles immunize Defendants from Costco's claims under

California law.  Every step of Washington's choice-of-law analysis favors the application of

---

[1] This Opposition responds to: (1) Defendants' Joint Motion for Partial Summary Judgment Against Costco On Choice of Law Grounds [Dkt. 2997] ("Choice of Law Motion"), and (2) Defendants Joint Motion for Partial Summary Judgment Against Certain Direct Action Plaintiffs on Due Process Grounds [Dkt. 3029] ("Due Process Motion").  Defendants' Due Process Motion initially encompassed: (1) CompuCom's claims for relief under California and New York state law, (2) Office Depot's claims under California law, and, finally, (3) Costco's claims under California, Arizona, Florida, and Illinois state law.  *See* Due Process Motion at 1.  However, CompuCom and Office Depot subsequently dismissed their claims under the state laws at issue [Dkt. 3198] and Costco dismissed its claims under all remaining state laws except California [Dkt. 3181], rendering moot much of Defendants' Motion.  Thus, the only issue that remains for purposes of these Motions is whether Costco may pursue its California claims consistent with due process and choice of law.  Given the overlap between the relevant facts, Costco opposes both motions by way of this submission.

[2] Only the Hitachi Defendants (Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi America, Ltd., Hitachi Asia, Ltd., and Hitachi Electronic Devices (USA), Inc.) and the LG Defendants (LG Electronics, Inc., LG Electronics, U.S.A., Inc., LG Electronics Taiwan Taipei Co., Ltd.) challenge Costco's California claims on due process grounds.  Other defendants join the choice-of-law motion filed by the LG Defendants.

---

1   California law to Costco's indirect purchases:  most of Costco's injuries occurred in California;

2   Defendants' conspired in both Asia and California; several Defendants maintained operations in

3   California; and Costco received far more CRT Products in California than in any other state.

4         Simply put, the instant Motions are another attempt by the Defendants to escape liability

5   for the worldwide conspiracy they effectuated in California and perpetrated on purchasers of CRT

6   products in California.  California law applies to *all* of Costco's purchases of CRT products

7   affected by the conspiracy, not just its purchases in California, and the Court should deny both

8   motions.

9   **II.    STATEMENT OF FACTS**

10  **A.    Costco's Purchases of Defendants' CRT Products in California**

11        Costco Wholesale Corporation is the result of the combination of two companies: Costco

12  and Price Club.  Shavey Decl. ¶ 5.  Price Club was founded in San Diego in 1976, and grew to

13  include 76 United States stores by 1992, with over half in California.  *Id.*  Costco was founded in

14  1983 in Washington and by 1992 had over 90 stores nationwide, with nearly half in California.

15  *Id.*  In 1993, Costco and Price Club merged, and Price/Costco, Inc. was formed and incorporated

16  in Delaware.  *Id.*  As this new name suggested, the two companies were not fully integrated for

17  many years, and the company had two principal executive offices: one in San Diego, California,

18  and the other in Kirkland, Washington.  *Id.*  Many headquarters functions, including purchasing,

19  continued in California for many years.  *Id.*  Other functions, such as accounting, continued in

20  San Diego before transferring to Costco's Washington headquarters.  *Id.*  By 1999, the company

21  changed its name to Costco Wholesale Corporation and reincorporated in Washington.  *Id.*

22        During the Relevant Period, Costco operated 109 retail warehouse stores in California.  *Id.*

23  From these warehouses, Costco purchased and sold more CRT products than it sold in any other

24  state, with the total cost of CRT products sold in California surpassing $1,000,000,000.  *Id.* ¶ 6.

25  Costco's California operations were categorized into three geographic regions, encompassing (1)

26  the Northern California Region, (2) the Los Angeles Region, (3) and the San Diego Region.  *Id.*

27  ¶ 7.  A corporate office charged with certain buying and other functions is located in each of these

28

1   geographic regions and services the retail warehouses located there.  *Id.*  Costco utilizes two

2   large-scale distribution centers located in California (the "California depots") to service these

3   geographic regions and its retail warehouses located within California.  *Id.* ¶ 8.  The California

4   depots serve as hubs for transmitting purchase orders and distributing the high volumes of

5   products that are sold from Costco's California retail warehouses.  *Id.*

6        Defendants' cursory description of Costco's purchasing process is misleading.  Costco's

7   purchasing of CRT products involved buyers based out of Costco's Washington corporate office;

8   employees stationed at Costco's regional corporate offices located in Livermore, Garden Grove,

9   and San Diego, California; and employees stationed at the California depots.  *Id.* ¶ 11.  As a

10  threshold step, a buyer located in Washington engaged in price negotiations with the vendor and

11  made an initial determination with respect to Costco's anticipated needs regarding the product's

12  price, quantity, and time of delivery.  *Id.* ¶ 12.  Though Costco acted from its headquarters in

13  Washington to choose vendors, purchase orders for CRT products were created in and issued

14  directly to the vendor from Costco's regional offices located in multiple states, including

15  California.  *Id.* ¶ 12.  And regardless of where a purchase order originated, buyers and supply-

16  chain personnel located in California regularly coordinated anticipated deliveries and shipments,

17  expenses, logistics, and other issues related to purchasing.  *Id.*

18       Once a purchase order was issued for a California-destined product, the product was

19  delivered at one of the California depots located in either Mira Loma or Tracy, California, or

20  directly to one of Costco's more than 100 California retail warehouses.  *Id.* ¶ 13.  When products

21  were received at either the depot or the warehouse, personnel, if satisfied that the product

22  shipment met the specifications set forth in the purchase order, signed a bill of lading or other

23  shipping document and accepted delivery.  *Id.*  Pursuant to Costco's Basic Vendor Agreement

24  and Standard Terms, title to the product passed to Costco, and Costco's payment obligation arose

25  when a California employee signed the bill of lading acknowledging receipt of the product.  *Id.*

26  ¶ 14.

27

28

COSTCO WHOLESALE CORPORATION'S OPPOSITION TO
DEFENDANTS' JOINT MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ON DUE PROCESS AND CHOICE-OF-LAW GROUNDS

-3-

Case No. 3:07-cv-05944-SC
Individual Case No.: 3:11-cv-06397-SC

1    During the Relevant Period, Costco purchased, received, inspected, and inventoried more

2    than 4 million CRT products in California via the process set forth above, an amount far

3    exceeding the CRT products Costco purchased in any other state.  *Id.* ¶ 15.

4    **B.     Defendants' Conspiratorial Activities in California**

5         Substantial evidence confirms Defendants' conspiratorial conduct in California.

6         **1.     LG Defendants**

7    Prior to 2001, LG Electronics, Inc. ("LGE") manufactured and sold CRTs.

1

2

3

4

5

6

7

8

9          LG's involvement in LPD's sales strategy and conspiratorial activities was not restricted

10    to Asia.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COSTCO WHOLESALE CORPORATION'S OPPOSITION TO
DEFENDANTS' JOINT MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ON DUE PROCESS AND CHOICE-OF-LAW GROUNDS

-6-

Case No. 3:07-cv-05944-SC
Individual Case No.: 3:11-cv-06397-SC

**2.**     **Hitachi Defendants**

COSTCO WHOLESALE CORPORATION'S OPPOSITION TO        -7-        Case No. 3:07-cv-05944-SC
DEFENDANTS' JOINT MOTIONS FOR PARTIAL SUMMARY        Individual Case No.: 3:11-cv-06397-SC
JUDGMENT ON DUE PROCESS AND CHOICE-OF-LAW GROUNDS

1

2

3
### III.   ARGUMENT

4
**A.    Defendants Bear a Substantial Burden to Prevail on Summary Judgment**

5
As the Court has previously explained, Defendants bear a substantial burden to prevail on

6
a motion for summary judgment:

7
> Entry of summary judgment is proper "if the movant shows that there is no
8
> genuine dispute as to any material fact and the movant is entitled to judgment as a
> matter of law." Fed. R. Civ. P. 56(a).  Summary judgment should be granted if the
> evidence would require a directed verdict for the moving party.  *Anderson v.*
9
> *Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  "A moving party without the
> ultimate burden of persuasion at trial—usually, but not always, a defendant—has
10
> both the initial burden of production and the ultimate burden of persuasion on a
> motion for summary judgment."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*
11
> *Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of
> production, the moving party must either produce evidence negating an essential
12
> element of the nonmoving party's claim or defense or show that the nonmoving
> party does not have enough evidence of an essential element to carry its ultimate
13
> burden of persuasion at trial."  *Id.*  "In order to carry its ultimate burden of
> persuasion on the motion, the moving party must persuade the court that there is
14
> no genuine issue of material fact."  *Id.*

15
*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F.Supp.2d 857, 864 (N.D. Cal. 2012).

16
Moreover, Plaintiffs are "entitled to and must receive the benefit of all favorable

17
inferences which can be drawn from the evidence."  *Indep. Iron Works, Inc. v. U.S. Steel Corp.*,

18
177 F. Supp. 743, 746 (N.D. Cal. 1959), *aff'd*, 322 F.2d 656 (9th Cir. 1963).  And because

19
summary judgment is an "extreme remedy," it is "not to be entered unless the movant has

20
established its right to judgment with such clarity as to leave no room for controversy and that the

21
other party is not entitled to recover under any discernable circumstances."  *Real v. Driscoll*

22
*Strawberry Assoc., Inc.*, 603 F.2d 748, 753 (9th Cir. 1979) (internal quotation marks and citation

23
omitted).

24
**B.    Due Process Does Not Bar Costco's California Claims**

25
Defendants seek to resurrect the same due process arguments that this Court has

26
repeatedly rejected.  There are two independent bases on which the Due Process Clause is

27
satisfied: *first*, Costco purchased products containing price-fixed CRTs in California, and, *second*,

28

1    the moving Defendants—specifically LG and Hitachi—engaged in conspiratorial conduct within

2    the State.

3         Due process prohibits the application of a state's law only if the state lacks "a significant

4    contact or significant aggregation of contacts, creating state interests, such that choice of its law is

5    neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981).

6    To determine whether the application of a particular state's law comports with due process, a

7    court examines the state's contacts "with the parties and with the occurrence or transaction giving

8    rise to the litigation." *Id.* at 308.  However, *Allstate* creates only "'modest restrictions on the

9    application of forum law'" and is commonly viewed "as setting a highly permissive standard."

10   *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1111 (9th Cir. 2013) (quoting

11   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985)).

12        In the antitrust context in particular, due process is satisfied in (1) any state where the

13   allegedly price-fixed goods were purchased, or (2) any state where defendants engaged in

14   anticompetitive conduct that was more than "slight and casual." *Id.* at 1111-14 ("The relevant

15   transaction or occurrence in a price-fixing case involves both the conspiracy to illegally fix prices

16   and the sale of price-fixed goods.").  Indeed, this Court has confirmed the necessity "to consider

17   more than just the place where an allegedly price-fixed product" was purchased in holding that

18   "Defendants' direction of price-fixed goods into certain states renders Defendants subject to those

19   states' antitrust and consumer protection laws." *In re Cathode Ray Tube (CRT) Antitrust Litig.*,

20   No. C-07-5944-SC, 2013 WL 4505701, at *6-7 (N.D. Cal. Aug. 21, 2013).

21        Here, all roads lead to California.  Costco not only purchased more CRT products at issue

22   within California than within any other single state but Defendants also implemented the

23   conspiracy within California's borders.  Either of these facts satisfies due process individually;

24   together, they leave no doubt that due process permits application of California law.

**1.    Due Process Is Satisfied by Costco's Purchases of Defendants' Price-Fixed
         CRTs in California.**

27        Applying California law to Defendants' wrongdoing comports with due process on

28   account of Costco's significant purchases of products containing price-fixed CRTs in California.

1   It is undisputed that Costco maintained buying offices in California during the Relevant Period;

2   that it issued purchase orders from these offices, its warehouses, and its depots located in

3   California; and that title of Defendants' price-fixed CRT products passed to Costco in California.

4   *See* Shavey Decl. ¶¶ 6, 12-14 & Ex. A.  California, therefore, is a forum in which "the transaction

5   giving rise to the litigation" occurred and where Defendants may rightfully be held accountable.

6   *Allstate*, 449 U.S. at 308.

7           Defendants' arguments to the contrary have been rejected on multiple occasions by this

8   Court and the MDL court in the related LCD litigation.  In each instance, the courts have held that

9   Defendants cannot avoid liability under state law where the plaintiff's purchases of allegedly

10  price-fixed goods occurred in the state in question.  *See, e.g.*, *In re CRT Antitrust Litig.*, 2013 WL

11  4505701, at *6 ("*AT&T* did not hold that an in-state sale alone could not satisfy due process."); *In*

12  *re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 11-2225 SI, 2014 WL 2905105, at *3 (N.D. Cal.

13  June 26, 2014) (application of Florida law to plaintiffs' claims did not violate defendants' due

14  process rights where purchases of LCD products occurred in the state); *In re TFT-LCD (Flat*

15  *Panel) Antitrust Litig.*, No. 11-2225 SI, 2014 WL 2905131, at *3 (N.D. Cal. June 26, 2014) ("The

16  effect of an anticompetitive conspiracy is to alter the price of all goods of a certain type—here,

17  LCD panels and products. The scope and nature of this alleged conspiracy led to plaintiffs'

18  purchase of price-fixed goods in Florida.").

19          Defendants' attempt to avoid this rule by claiming that Costco did not "purchase" CRTs in

20  California is untenable.  *See* Due Process Motion at 8−9.  Defendants reason that, while Costco

21  issued purchase orders and received products in California, Costco's "purchases" occurred in

22  Washington because it was in Washington that Costco made its "purchasing decisions" and

23  engaged in "negotiations" and "forecasting."  Due Process Motion at 3.  Yet defining actionable

24  purchases in this manner and limiting the applicable state law to one state ignores both the actual

25  contractual mechanics by which Costco's purchases took place and established principles of

26  commercial law dictating that a purchase occurs at the time a buyer takes possession—and title—

27  of a product.

28

1    *First*, the contracts under which Costco purchased CRT products define California as the

2    location of the purchase.  Defendants do not dispute that Costco issued purchase orders for

3    Defendants' price-fixed CRTs from its warehouses and depots in California.  *See* Due Process

4    Motion at 9.  And Defendants *cannot* dispute that, pursuant to the governing Standard Terms and

5    Vendor Agreements, title of Defendants' CRTs passed to Costco upon a Costco employees'

6    signing the bill of lading.  *See* Shavey Decl. Ex. A (Costco Standard Terms) ¶ 7 ("Sales are on a

7    delivered basis and Vendor's delivery of Merchandise will occur and risk of loss will pass only

8    when and to the extent conforming Merchandise has been received at the Costco Wholesale

9    warehouse or depot designated in the Purchase Order and a Costco Wholesale employee has

10   signed the bill of lading or other shipping document acknowledging that receipt."); *id.* ¶ 6

11   ("Unless otherwise agreed in writing, Costco Wholesale shall not be obligated to pay any invoice

12   until after delivery is completed under Section 7 below.").  Costco employees executed the

13   requisite documents within California and accepted delivery of the relevant CRT products at

14   Costco's California depots and warehouses. *See id.* ¶¶ 13-14.

15   *Second*, the Uniform Commercial Code (which governed Costco's purchases) and

16   supporting case law establish that Costco's purchases took place in California.  Under the UCC, a

17   "purchase" is defined as "taking title by sale."  *See* UCC § 1-201(b)(29).  And the "passing of

18   title" occurs "at the time and place at which the seller completes his performance with reference

19   to the physical delivery of the goods"  UCC § 2-401; *see also Dean Foods Co. v. Brancel*, 187

20   F.3d 609, 617 (7th Cir. 1999) ("Under the UCC, a sale occurs upon the passing of title to the

21   goods from the buyer to the seller.  Title passes from the seller to the buyer at the time and place

22   at which the seller completes his performance with reference to the physical delivery of the

23   goods." (internal quotation marks and citation omitted)); *Classic Concepts, Inc. v. Linen Source,*

24   *Inc.*, No. CV 04-8088GPSMANX, 2006 WL 4756377, at *17 (C.D. Cal. Apr. 27, 2006) (applying

25   UCC principles to determine delivery obligations under the Copyright Act).

26

27

28

Costco's purchases of Defendants' CRT products thus took place, by law, in the state of California and therefore application of California law on this basis alone is neither "arbitrary nor fundamentally unfair." *Shutts*, 472 U.S. at 818 (internal quotation marks and citation omitted).

## 2.   Defendants' Conspiratorial Conduct Also Satisfies Due Process.

Defendants' anticompetitive conduct in California independently supports application of California law consistent with due process.  Defendants' contacts with and activities in California are abundant, and their illegal price-fixing activities within the state are egregious.  No attempt to gloss over this conduct can survive in light of the direct evidence that both LG and Hitachi agreed to fix prices and took other action in furtherance of the conspiracy within California.

### a.   LG Defendants

Contrary to Defendants' claim that there is "no evidence" indicating that LGE participated in anticompetitive conduct in California, ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ██████

As a threshold matter, LPD's conduct in California is imputed to LGE because LPD acted as LGE's agent in implementing the conspiracy.  To establish specific personal jurisdiction over a defendant based on the contacts of its subsidiary on an agency theory, a plaintiff need only establish that "the subsidiary functions as the parent corporation's representative." *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001); *see also Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 419 (9th Cir. 1977) ("There appears to be no reason why a completely independent, in-state corporation cannot be held to have acted as an agent for another, out-of-state corporation in performing activities giving rise to a cause of action, and establishment of the requisite 'agency' control may be even easier when a parent-subsidiary relationship is involved.") (citations omitted).  The actions of the subsidiary are imputed to the parent corporation where the subsidiary "performs services that are 'sufficiently important to the foreign corporation that if it

1   did not have a representative to perform them, the corporation's own officials would undertake to

2   perform substantially similar services.'" *Doe*, 248 F.3d at 928 (internal quotation marks and

3   citation omitted); *see also Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d

4   1122, 1135 (9th Cir. 2003) ("The agency test permits the imputation of contacts where the

5   subsidiary was 'either established for, or is engaged in, activities that, but for the existence of the

6   subsidiary, the parent would have to undertake itself.'" (citations omitted)).  Consequently, "the

7   question to ask is whether, in the truest sense, the subsidiary's presence substitutes for the

8   presence of the parent." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 344 F. Supp. 2d

9   686, 691 (W.D. Wash. 2003) (internal quotation marks and citations omitted).

10       Applying these principles, ██████████ ████ ██████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████

13  ████████████████████████████████████  This considerable and all-encompassing

14  function distinguishes LPD from a subsidiary that merely holds assets and performs no services

15  or activities for the parent company in the forum state.  *See Helm v. Alderwoods Grp., Inc.*, 696 F.

16  Supp. 2d 1057, 1069, 1070 (N.D. Cal. 2009) (applying agency theory and distinguishing between

17  subsidiaries performing "important services" and subsidiaries "that merely hold assets and

18  perform no services or activities for the parent company in the forum state").

19       Moreover, ████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26  ████████████████████

27  ██████████████████████████████  *See PPA Products Liab. Litig.*, 344 F. Supp. 2d at 691 n. 4
    ("Whether an alleged agent is a subsidiary or independently owned is irrelevant to this

28  analysis.").

As discussed above, there is ample evidence that

COSTCO WHOLESALE CORPORATION'S OPPOSITION TO
DEFENDANTS' JOINT MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ON DUE PROCESS AND CHOICE-OF-LAW GROUNDS

-14-

Case No. 3:07-cv-05944-SC
Individual Case No.: 3:11-cv-06397-SC

1

2

Defendants select one of many California meetings attended by LG (or LPD) to claim that the arguable absence of conspiratorial activity at that particular meeting establishes, as a matter of law, that LGE engaged in no anticompetitive conduct within California.  Yet even that meeting evinces anticompetitive conduct.

A jury could easily conclude that the meeting involved LPD and was collusive,

Of course,

In sum, LGE cannot establish that its conspiratorial conduct in California was, as a matter of law, only "slight and casual."  *AT&T Mobility*, 707 F.3d at 1113 (internal quotation marks and citation omitted).  To the contrary, the evidence of LGE's conspiratorial conduct occurring in

California by way of LPD exceeds that required by *AT&T Mobility* and renders the application of California law to LG "neither arbitrary nor fundamentally unfair." *Allstate*, 449 U.S. at 312-13.

### b.    Hitachi Defendants

Like LGE, the Hitachi Defendants[6] conspired within California.



Other examples abound.

<hr />

[6] Defendants' Due Process Motion implicitly concedes that the Hitachi Defendants' connections to California should be addressed in tandem and that HTL is responsible for actions undertaken by its wholly owned U.S. subsidiaries, HEDUS and HAL.  *See* Due Process Motion at 11-12. Even assuming that Defendants had not conceded this point, however, HEDUS' and HAL's actions would nevertheless be properly imputed to HTL pursuant to the agency theory discussed in Section III (B)(2)(a), *supra*.  *See Doe*, 248 F.3d at 928; DAPs' Opposition to Hitachi Parties' Motion for Summary Judgment Based Upon the Lack of Evidence of Participation in the Alleged Conspiracy (discussing HTL's relationship with HEDUS and HAL).

Also like LG, the Hitachi Defendants selectively discuss only one of many meetings attended by HEDUS in California to claim that this particular meeting establishes, as a matter of law, that the Hitachi Defendants did not engage in anticompetitive conduct in California.  Here again, the Hitachi Defendants not only disregard other evidence of their conspiratorial conduct in California but also ignore the reasonable inference that the self-selected meeting itself reveals collusion.

The lone meeting to which the Hitachi Defendants point ███████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ The Hitachi Defendants claim that this meeting cannot have involved anticompetitive discussions because (1) the meeting occurred at a trade show and "[p]articipation in trade association . . . is a legitimate activity" and (2) "[t]he meeting minutes and presentations confirm that the topics . . . fall squarely within the legitimate functions of trade associations."  Due Process Motion at 12.  But trade association meetings are notorious for off-topic discussions, ██████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ A jury could and should reject Defendants' attempt to gloss over the opportunity to conspire presented by such trade-association meetings and determine that the discussions that took place at the meeting involved illegal exchanges between at least Nishimaya and Hirai, if not others.  *See, e.g.*, *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1148 (N.D. Cal. 2009) ("Indeed, trade associations serve a beneficial and legitimate function.  That notwithstanding, courts have recognized that trade association affiliations and attendance at industry events may be alleged to show that putative conspirators had the opportunity and means to develop and/or further their alleged collusive

1   scheme." (citations omitted));

2

3

4

5          As with LGE, the Hitachi Defendants' conspiratorial conduct within California satisfies

6   due process.

7   **C.     Choice of Law Permits Costco to Seek Relief under California Law**

8          Assuming due process is satisfied, Defendants resort to arguing that the Court must still

9   enter summary judgment on Costco's California Cartwright Act claim because Costco is now

10  headquartered in Washington and issued a portion of its purchase orders from there. *See* Choice

11  of Law Motion at 1.  But "residency in the forum state alone has not been considered a sufficient

12  relation to the action to warrant application of forum law," and "the fact that one of the parties is

13  domiciled in a given state will usually carry little weight of itself." *Rice v. Dow Chem. Co.*, 124

14  Wn.2d 205, 216 (1994) (quoting Restatement (Second) of Conflict of Laws ("Restatement")

15  § 145 cmt. e (1971)).  Applying proper choice-of-law analysis, Washington law dictates that

16  California's law applies to all Costco purchases, not just those in California.

17         "In a federal question action that involves supplemental jurisdiction over state law claims,

18  [the court applies] the choice of law rules of the forum state"—here, Washington. *Paulsen v.*

19  *CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009).  Under Washington's choice-of-law rules, courts

20  apply the "most significant relationship" test, as outlined in the Restatement (Second) of Conflict

21  of Laws ("Restatement") § 145 (1971). *Johnson v. Spider Staging Corp.*, 87 Wash. 2d 577, 580

22  (1976).

23         To determine which state has the most significant relationship to the occurrence and the

24  parties, courts consider the following contacts: (a) the place where the injury occurred; (b) the

25  place where the conduct causing the injury occurred; (c) the domicile, residence, nationality,

26  place of incorporation and place of business of the parties; and (d) the place where the

27  relationship, if any, between the parties is centered.  Restatement § 145(2).  "These contacts are to

28

1    be evaluated according to their relative importance with respect to the particular issue" and are to

2    be considered while applying the principles of the Restatement (Second) of Conflict of Laws § 6.

3    *Id.*  The correct "approach is not merely to count contacts, but rather to consider which contacts

4    are most significant and to determine where these contacts are found."  *Johnson*, 87 Wash.2d at

5    580.

6           Every Restatement factor favors application of California law.  The Restatement initially

7    contemplates "the place where the injury occurred."  Restatement § 145(2)(a).  As discussed

8    above, the injury at issue—that is, "the occurrence or transaction giving rise to the litigation"—is

9    Plaintiffs' "purchase of allegedly price-fixed goods."  *In re TFT-LCD (Flat Panel) Antitrust*

10   *Litig.*, No. C 11-0058 SI, 2011 WL 3809767, at *2 (N.D. Cal. Aug. 29, 2011) (citing prior

11   orders).  Costco purchased and sold more of Defendants' price-fixed goods in California than in

12   any other state.  *See* Shavey Decl. ¶ 6.  And pursuant to Costco's Basic Vendor Agreement and

13   Standard Terms, title to the purchased product passes to Costco and Costco's payment obligation

14   arises when the product has been received and when a Costco employee signs the bill of lading

15   acknowledging that receipt.  *Id.* ¶¶ 13-14 & Ex. A.

16          Additionally, Costco made substantial indirect purchases of CRT products from

17   California-based vendors, and Costco regional offices both in and outside of California

18   transmitted purchase orders to California.  *See id.* ¶¶ 12. 15.  As the Restatement holds, "Persons

19   who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that

20   state on account of the injury." Restatement § 145 cmt. e.

21          The second Restatement factor—"the place where the conduct causing the injury

22   occurred," Restatement § 145(2)(b)—likewise supports application of California law.

23   Defendants' conspiratorial conduct occurred worldwide but, importantly, was focused in

24   California, where Defendants LG and Hitachi maintained corporate offices.  *See* Section II(B),

25   *infra*; *see also* Restatement § 145 cmt. e ("[T]he place where the conduct occurred is given

26   particular weight in the case of torts involving . . . unfair competition.").  Defendants suggest only

27   that their activities occurred primarily in Asia.  But even so, the record gives California a stronger

28

1    interest in terms of Defendants' conduct, even assuming *arguendo* that the majority of

2    Defendants' conduct occurred abroad, because several Defendants also colluded in California.

3    *See, e.g.*, Restatement § 145 cmt. d ("[A] state has an obvious interest in regulating the conduct of

4    persons within its territory . . . .").

5           With respect to the third Restatement factor—"the domicile, residence, nationality, place

6    of incorporation and place of business of the parties," Restatement § 145(2)(c)—Defendants'

7    conveniently ignore the fact that during the early years of the Relevant Period, Costco maintained

8    executive functions in both California and Washington and was incorporated in Delaware, as the

9    company integrated the pre-merger companies of Costco and Price Club.  *See* Shavey Decl. ¶ 5.

10   Additionally, and perhaps more importantly, Costco does extensive business in California; Costco

11   purchased and sold more CRT products in California than in any other state during the Relevant

12   Period.  *Id.* ¶ 6.  And where the interest affected "is a business or financial one, such as in the

13   case of unfair competition, . . . the place of business is the more important contact" than

14   "domicile, residence and nationality."  Restatement § 145 cmt. e.

15          Moreover, the relevant consideration here is "the domicile, residence, nationality, place of

16   incorporation and place of business of the *parties*," not just Costco.  Restatement § 145(2)(c)

17   (emphasis added).  And here, the record establishes that at least Defendants Hitachi and LG,

18   though domiciled abroad, maintained subsidiary and joint-venture corporations that were at all

19   times domiciled in California.  *See* Section II(B), *infra*.  Taking all parties into account, therefore,

20   this factor supports application of California law.  "[A] state has an obvious interest in regulating

21   the conduct of persons within its territory," *id.* § 145 cmt. d, and more Defendants are

22   incorporated or headquartered in California than in any other jurisdiction.  *See also Singh v.*

23   *Edwards Lifesciences Corp.*, 151 Wash. App. 137, 144 (2009) ("'California has an interest in

24   deterring fraudulent activities by corporations having a substantial business presence within its

25   borders.  Washington has no interest in protecting persons who commit fraud.'" (citations

26   omitted)).

27

28

COSTCO WHOLESALE CORPORATION'S OPPOSITION TO
DEFENDANTS' JOINT MOTIONS FOR PARTIAL SUMMARY
JUDGMENT ON DUE PROCESS AND CHOICE-OF-LAW GROUNDS

-20-

Case No. 3:07-cv-05944-SC
Individual Case No.: 3:11-cv-06397-SC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

As to the final Restatement factor—"the place where the relationship, if any, between the parties is centered," Restatement § 145(2)(d)—Costco purchase orders for CRT products were created in and issued from regional offices located in multiple states, including California, and Costco issued more purchase orders for CRT products from California than from any other state. Shavey Decl. ¶¶ 6, 12.  Moreover, Defendants sent price-fixed CRT products to Costco's distribution centers in multiple states, and Costco received far more CRT Products in California than in any other state. *Id.* ¶¶ 6, 13, 15.  Given that the relevant relationship here is Costco's purchase of CRT products from Defendants and that Costco purchased and received more CRT products from Defendants in California than in any other state, this factor supports applying California law.  *See, e.g., Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 41 Wash. Ct. App. 26, 30 (1985) ("Washington has held the law of the state with the most significant relationship *to the transaction* applies." (emphasis added)).

In total, every Restatement factor favors California.  California's strong interest in regulating the conduct set forth in this action outweighs Washington's interest.  The deterrent and punitive purposes of California antitrust law should be given effect where much of the anticompetitive conduct occurred.  And Costco should not, as Defendants would hope, be denied the opportunity to recover for its indirect purchases nationwide by the sheer fact of its incorporation in Washington.[7]

---

[7] If the Court concludes that the Restatement factors are evenly balanced, it must evaluate "the interests and public policies of the concerned states, to determine which state has the greater interest in determination of the particular issue."  *Zenaida-Garcia v. Recovery Sys. Tech., Inc.*, 128 Wash. App. 256, 260 (2005).  California "has an articulated interest in applying its law.  The Cartwright Act included as important goals deterrence and full disgorgement of ill-gotten gains, especially in the context of price fixing cartels; *that deterrence and full disgorgement includes extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California.*"  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SL, 2013 WL 4175253, at *2 (N.D. Cal. July 11, 2013) (emphasis added).  To be sure, Washington does not shield antitrust conspirators from liability for damage to indirect purchasers; it merely authorizes its state attorney general to recover those overcharges *parens patriae* on behalf of its citizens.  *See Blewett v. Abbott Labs.*, 86 Wash. App. 782, 790 (1997) (holding that although Washington law does not authorize private indirect purchasers to initiate suit, they are "not entirely without a remedy" under Washington law because the Washington Attorney General may initiate claims (citing Wash. Rev. Code § 19.86.080)).  Because both California and Washington allow recovery to indirect purchasers but California has expressly permitted private actions for that recovery, California's interests outweigh those of Washington.

1

## IV.    CONCLUSION

2        For the foregoing reasons, Costco respectfully request that the Court deny Defendants'

3   Motions for Partial Summary Judgment on Due Process and Choice of Law Grounds.

4

5   DATED:  December 23, 2014                **PERKINS COIE** LLP

6

                                            By: *s/David J. Burman*
7                                               David J. Burman *(pro hac vice)*
                                                DBurman@perkinscoie.com
8                                               Cori G. Moore *(pro hac vice)*
                                                CGMoore@perkinscoie.com
9                                               Eric J. Weiss *(pro hac vice)*
                                                EWeiss@perkinscoie.com
10                                              Nicholas H. Hesterberg *(pro hac vice)*
                                                NHesterberg@perkinscoie.com
11                                              Steven D. Merriman *(pro hac vice)*
                                                SMerriman@perkinscoie.com
12
                                                *Attorneys for Plaintiff*
13                                              *Costco Wholesale Corporation*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28