# Exhibit 8

# MARTA COOPERATIVE OF AMERICA, INC.

## COOPERATIVE PLAN
(including all amendments through June 1, 1998)

WHEREAS, Marta Cooperative of America, Inc. (hereinafter called the "Company") has been duly incorporated under the provisions of Act No. 327; and

WHEREAS, the purposes of the Company as set forth in the Articles of Incorporation are as follows:

To provide shareholders with means of cooperative purchasing and to distribute all earnings in connection therewith to the shareholders in proportion to the sales of the property sold to the shareholders. All sales to shareholders shall be of a wholesale nature and the Company shall not engage in retail sales. The Company shall have all other powers necessary and incidental to carrying out its lawful purpose; and

WHEREAS, the shareholders of the Company wish to adopt and ratify a Cooperative Plan, in accordance with Section 450.99 of the Compiled Laws of Michigan, 1948, as amended, which shall be referred to herein and may be referred to hereafter as the Cooperative Plan, establishing a mode of operation whereby the earnings of the Company shall be distributed to the shareholders and setting forth certain rules and regulations for cooperative purchasing.

NOW, THEREFORE, BE IT RESOLVED that the following Cooperative Plan is hereby adopted and ratified and the Board of Directors of the Company, itself, or by and through the duly elected officers of the Company, is hereby authorized, empowered and directed to carry out the intent and purposes of the Cooperative Plan:

A. <u>COMPANY AS PURCHASING AGENT.</u>

The Company shall act as, and shall be, a non-exclusive purchasing agent for each and every shareholder of the Company. The placing of an order with or through the Company shall be binding upon the shareholder placing such order and shall require the shareholder to purchase such merchandise from the Company and the Company to sell such merchandise to the shareholder; provided, however, that said obligations shall be void if said order cannot be completed with less than a reasonable variance therefrom.

B. <u>CREDIT.</u>

(1) Each shareholder shall, from time to time, submit to the Company proposed credit limits. Said proposed credit limit for each shareholder, individually, shall be investigated and approved by the Board of Directors of the Company. The credit limit as approved, shall be called "Approved Credit". The Board of Directors may reduce or increase that Approved Credit or may revoke its approval of any shareholder's Approved Credit at any time.

(2) Each shareholder shall submit to the Board of Directors, each year, within 90 days of the end of the Company's fiscal year, complete and acceptable financial statements, including a balance sheet and income statement. In the event satisfactory financial information from the shareholder is not received by the Board of Directors, the Board of Directors may reduce, suspend, or eliminate the shareholder's Approved Credit.

(3) Each shareholder shall be entitled to an Approved Credit limit of $12,500, subject to the discretion of the Board as set forth in this Co-Operative Plan. A shareholder shall have Approved Credit in excess of $12,500 only to the extent that creditor has provided an irrevocable straight letter of credit, an agreement to guarantee financing, accounts receivable insurance, or other agreement acceptable to the Board of Directors. The maximum amount of Approved Credit shall be $12,500 plus the amount covered by the irrevocable straight letter of credit, agreement to guarantee financing, insurance, or other acceptable agreement.

(4) All sales to any shareholder shall be:

(a) for cash; or

(b) on open account up to the limit of the shareholder's Approved Credit; or

(c) pursuant to authorization received by Marta from an acceptable inventory financing company which has agreed to pay Marta the amount of the order for the shareholder's account.

C. **PAYMENT FOR PURCHASES**.

(1) Each shareholder promises to pay Marta for all merchandise purchased by the shareholder from or through Marta, and to pay all other obligations to Marta according to the terms of the applicable invoice.

(2) The agreement of an inventory financing company, bank, or other organization to finance or pay Marta for merchandise on a shareholder's behalf does not relieve the shareholder of the obligation to pay any obligation to Marta according to its terms.

(3) Each shareholder further agrees that it is obligated to pay Marta for any deficiencies or other costs incurred by Marta as the result of any repurchase, required by agreement with an inventory finance company or other company or institution, of merchandise which has been repossessed from shareholder. Shareholder shall have this obligation to pay for any deficiency and costs without regard to whether Marta has first been paid for such goods by the inventory finance company, and whether or not the inventory finance company or other entity repossessing the merchandise from shareholder has assigned its claim to Marta.

(4) Each shareholder which finances purchases through an inventory financing company, or some other similar company, shall provide to MARTA a letter of credit in an amount not less than $50,000. This letter of credit shall be for the purpose of covering costs of repossession or collection, deficiencies on repurchases from financing companies and any other losses incurred by Marta as a result of shareholder's purchase of merchandise, and to pay any other obligations of shareholder to Marta. Each such letter of credit shall be issued by a bank or financial institution acceptable to the Company and shall be in such form as the Company, with the advice of the attorney for the Company, shall determine to be acceptable. The Company may, but is not required to, accept an assignment of funds under an agreement acceptable to the attorney for the Company, in place of a letter of credit.

D. TIME OF PAYMENT AND SERVICE CHARGE FOR LATE PAYMENT.

All payments required pursuant to Paragraph C which are over and above the Approved Credit shall be made with the placement of the shareholder's order. All other payments shall be due in accordance with the statements to be issued by the officers of the Company from time to time. The time set for payment by the officers may be modified by the Board of Directors in their discretion; provided, however, that the terms and conditions of payment shall not be discriminatory. Upon withdrawal from membership or termination of membership, all obligations of the member shall become immediately due and payable, without regard to the terms of payment provided in the invoice, statement, or elsewhere. Each shareholder agrees to pay a service charge for late payment of two (2%) percent, or the highest amount permitted by law (but not exceeding said two (2%) percent), whichever is greater, on all amounts due and owing to the Company after the monthly due date. Each shareholder agrees to pay to the Company all costs incurred by the Company in collecting accounts from that member, including actual attorneys' fees.

E. REQUIRED DOCUMENTS.

No orders for merchandise shall be accepted from a shareholder unless each of the following documents is in full force and effect with respect to said shareholder:

    (1)    Marta Membership Agreement

    (2)    Letter of Credit (or acceptable substitute)

    (3)    Financing Statement (Form UCC-1)

Each of said documents shall be in such form as the Company may determine to be appropriate, or as may be changed or modified by the Company from time to time.

F. PAYMENT FOR STOCK, INITIATION FEE AND ANNUAL CHARGES.

(1) *Shares of Stock.* Upon acceptance of membership, each new shareholder shall purchase Four Thousand (4,000) shares of the common stock of the Company, One ($1.00) Dollar par value, for the sum of Four Thousand ($4,000.00) Dollars, and said stock shall be transferable only in accordance with that certain Redemption Agreement to which the shareholder shall consent as a condition of membership.

(2) *Initiation Fee.* Upon acceptance for membership, each new shareholder shall pay to the Company an initiation fee in such amount as the Board of Directors shall have determined to be applicable for all new members during the period of time in which such new shareholder is accepted for membership. This fee shall be in addition to the amount paid for shares of stock. The initiation fee is not refundable, except to a member which voluntarily resigns its membership during the first year, in which case the initiation fee shall be prorated over the length of time resigning member was a member of Marta, and the prorated portion corresponding to the balance of the first year following the resignation shall be refunded.

(3) *Annual Charges.* Each shareholder shall pay to the Company an annual charge for expenses in the sum of Six Thousand ($6,000.00) Dollars. Said annual charge shall be payable in four (4) installments of One Thousand Five Hundred ($1,500.00) Dollars each in the first four (4) months of the fiscal year of the Company. No portion of the annual charges shall be refunded to any member which voluntarily withdraws from membership. In the event the Company has earnings to be distributed to the members for any fiscal year, Five Hundred ($500.00) Dollars of

Confidential MARTA-0130270

each member's annual charges paid for that fiscal year shall be refunded to each member before any other distributions are made.

G.  SUSPENSION AND EXPULSION.

The Board of Directors shall promulgate in writing rules and regulations stating grounds for suspension or expulsion.

(1)  *Suspension.* Any shareholder who fails to perform any of his obligations, financial or otherwise, which constitute grounds for suspension, may be suspended by vote of the Board of Directors upon receipt of written notice of such vote. A suspended shareholder shall not be allowed to participate in the Co-Operative Plan during the term of his suspension. Any orders already placed on behalf of said suspended shareholder, but not yet delivered at the time of the suspension, may be completed or cancelled by the Board of Directors in the discretion of the Board. Any earnings to be distributed to such shareholder shall be reduced by a fraction, the numerator of which is the number of days said shareholder has been suspended and the denominator of which is three hundred sixty-five (365). Such defaulted earnings shall be distributed pro rata among the other shareholders.

(2)  *Expulsion.* Any shareholder who fails to perform any of his obligations, financial or otherwise, which constitute grounds for expulsion, may be expelled by vote of the Board of Directors and the consent of three-quarters (3/4) of the issued and outstanding common stock of the Company, One ($1.00) Dollar par value (not including treasury stock). Such consent may be given at a meeting of shareholders or in writing. Any such expulsion shall be in accordance with the then existing Redemption Agreement of the Company and its shareholders.

H.  REINSTATEMENT.

The suspension of a shareholder shall be ended by either: (1) the payment of his delinquent financial obligations plus penalties, if any, so long as financial obligations are the only cause for his suspension; or (2) the vote of the Board of Directors and the written consent of three-quarters (3/4) of the issued and outstanding common stock of the Company, $1.00 par value (not including treasury stock). The Board of Directors may, in its discretion, reinstate any or all of a suspended shareholder's defaulted earnings which have not already been paid and/or allocated to the other shareholders.

I.  TRANSSHIPPING.

Any and all merchandise ordered pursuant to this Cooperative Plan shall not be transshipped without a favorable vote of the Board of Directors and the written consent of three-quarters (3/4) of the issued and outstanding common stock of the Company, $1.00 par value (not including treasury stock) or as approved by the Board of Directors pursuant to an agreement executed under the Marta Master Dealer Program. Penalties for the violation of this paragraph may be determined from time to time by the Board of Directors.

J.  BOOKS AND RECORDS - INTERMINGLING OF FUNDS.

The Company shall keep and maintain complete books and records of all proceedings and financial transactions. No funds, whether paid to, received by, or deposited with the Company, unless otherwise specifically provided to the contrary, shall be held pursuant to an actual or constructive trust, said funds to be available for the satisfaction of all obligations of the Company;

provided, however, that any sums received by the Company for the payment of specific merchandise ordered, or to be ordered, for and on behalf of a shareholder shall be held by the Company in a separate account for and on behalf of said shareholder to be released only upon the following conditions: (i) payment for said merchandise, or (ii) payment to the Company as a set-off under Paragraph L of this Cooperative Plan.

K.   DISTRIBUTION OF EARNINGS.

All earnings of the Company whether arising from charges for Monthly Expenses, Additional Expenses, sales of merchandise, cash discounts, advertising credits, or otherwise, shall be distributed to the shareholders by first refunding to each shareholder an equal amount of its annual charges paid for the fiscal year up to the amount of Five Hundred ($500.00) Dollars per shareholder, and then by distributing the balance of the earnings in proportion to the value of all the purchases made from the Company which are reflected in the Company's taxable year for the purpose of federal income tax. The allocation of said earnings shall be made within the period ending on the fifteenth day of the second month following the end of the taxable year and the distribution of said earnings shall be made within the period ending on the fifteenth day of the ninth month following the end of the taxable year.

L.   SET-OFF.

The Company may, in its discretion, apply and set off any and all allocations, distributions, or other amounts owed to a given shareholder against any and all financial indebtedness and obligations owed by said shareholder to the Company.

M.   SHAREHOLDER ASSENT.

All of the Company's present shareholders and any person, corporation, other entity, or groups thereof who shall hereafter become shareholders shall file with the Company a Notice of Consent which shall contain their representations as to their acceptance and ratification of this Cooperative Plan.

N.   MINIMUM PURCHASE REQUIREMENT.

It shall be a condition of continuing membership that each member shall make at least fifty (50%) percent or at least $2 million in applicable purchases from or through the Company, during each fiscal year of the Company.

Annual review will be made as of July 31 of each year.

Any member not meeting this requirement will be required to show cause to the Board of Directors why such member should not be expelled, and unless the Board of Directors affirmatively determines to extend the member's time for compliance or take some other appropriate action, the member shall be expelled without requirement of further approval of such action by the general membership.

O.   FRANCHISED MERCHANDISE.

The Company shall not be required to accept an order from any shareholder for merchandise which is franchised and which the manufacturer or distributor requires to be sold exclusively to franchised dealers unless said shareholder is a franchised dealer.

P. AMENDMENT.

This Cooperative Plan may be amended in accordance with Article VIII of the By-Laws of the Company and any amendments or successor provisions thereto.

0493589.01

- 6 -

Confidential    MARTA-0130273