David J. Burman (admitted *pro hac vice*)
Cori G. Moore (admitted *pro hac vice*)
Eric J. Weiss (admitted *pro hac vice*)
Nicholas H. Hesterberg (admitted *pro hac vice*)
Steven D. Merriman (admitted *pro hac vice*)
**PERKINS COIE** LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:     206.359.8000
Facsimile:     206.359.9000

Joren Ayala-Bass, State Bar No. 208143
JBass@perkinscoie.com
**PERKINS COIE** LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111-4131
Telephone:     415.344.7120
Facsimile:     415.344.7320

*Attorneys for Plaintiff*
*Costco Wholesale Corporation*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-cv-05944-SC<br>MDL NO. 1917 |
| This Document Relates to: | **PLAINTIFFS' OPPOSITION TO HITACHI DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED UPON WITHDRAWAL AND THE STATUTES OF LIMITATIONS** |
| *All Indirect Purchaser Actions* | |
| *Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.,* No. 3:11-cv-01656-SC | Date:     February 6, 2015<br>Time:     10:00 a.m.<br>Before:   Hon. Samuel Conti |
| *Alfred H. Siegel as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al.,* No. 3:11-cv-05502-SC | **[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]** |
| *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.,* No. 3:11-cv-05513-SC; | |
| *Target Corp, et al. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 3:11-cv-05514-SC | |

*Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd.,* No. 3:11-cv-05514-SC

*Interbond Corporation of America, d/b/a BrandsMart USA v. Hitachi, et al.,* No. 3:11-cv-06275-SC;

*Office Depot, Inc. v. Hitachi, Ltd., et al.,* No. 3:11-cv-06276-SC;

*CompuCom Systems, Inc. v. Hitachi, Ltd., et al.,* No. 3:11-cv-06396-SC

*Costco Wholesale Corporation v. Hitachi, Ltd., et al.,* No. 3:11-cv-06397-SC;

*P.C. Richard & Son Long Island Corporation, et al. v. Hitachi, Ltd., et al.,* No. 3:12-cv-02648-SC;

*Schultze Agency Services, LLC on behalf of Tweeter OPCO, LLC and Tweeter Newco, LLC v. Hitachi, Ltd., et al.,* No. 3:12-cv-02649-SC;

*Tech Data Corporation, et al. v. Hitachi, Ltd., et al.,* No. 3:13-cv-00157-SC

PLAINTIFFS' OPPOSITION TO HITACHI'S MOTION FOR SUMMARY JUDGMENT RE WITHDRAWAL AND STATUTES OF LIMITATIONS

Case No. 3:07-cv-05944-SC

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

    A. ███████████████████████ .................................................... 2

        1. ███████████████████████████████
             ..................................................................................... 3

        2. ██████████████████████████████
             .......................................................................... 5

        3. ████████████████████████████████
             .............................................................................. 7

    B. ████████████████████████████
        ............................................................................................... 9

ARGUMENT ......................................................................................................................... 11

    A. Hitachi Cannot Meet the Substantial Burden to Establish That It Withdrew
        As A Matter of Law ............................................................................................ 11

    B. Hitachi's Purported Exit from the CRT Industry Cannot Establish
        Withdrawal from the Conspiracy ....................................................................... 12

        1. Cessation of Manufacturing and Sales, Without More, Does Not
            Establish Withdrawal ............................................................................... 12

        2. ██████████████████████████████████
            ..................................................................................... 15

    C. Even if Hitachi Could Establish Withdrawal, Material Issues of Fact
        Prevent Summary Judgment on the Statute of Limitations ................................... 17

CONCLUSION ...................................................................................................................... 21

# TABLE OF AUTHORITIES

CASES                                                                    Page

*American Pipe and Construction Co. v. Utah*,
    414 U.S. 538 (1974) ................................................................18

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................11

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*,
    858 F.2d 499 (9th Cir. 1988) ................................................19

*Hyde v. United States*,
    225 U.S. 347 (1912) ................................................................11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    911 F.Supp.2d 857 (N.D. Cal. 2012) .....................................11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. C-07-5944-SC, 2014 WL 1091589 (N.D. Cal. Mar. 13, 2014) .....................................2, 18

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*,
    782 F. Supp. 487 (C.D. Cal. 1991) ........................................19

*In re Rubber Chems. Antitrust Litig.*,
    504 F. Supp. 2d 777 (N.D. Cal. 2007) ..................................18

*In re TFT-LCD Antitrust Litig.*,
    No. M-07-1827-SI, 2012 WL 6000154 (N.D. Cal. Nov. 30, 2012) .........................................19

*In re TFT-LCD Antitrust Litig.*,
    No. M-07-1827-SI 2012, WL 6126144 (N.D. Cal. Dec. 10, 2012) .....................................19, 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    820 F. Supp. 2d 1055 (N.D. Cal. 2011) ....................................11, 12, 18

*Indep. Iron Works, Inc. v. U.S. Steel Corp.*,
    177 F. Supp. 743 (N.D. Cal. 1959), *aff'd* 322 F.2d 656 (9th Cir. 1963)................................11

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.*,
    198 F.3d 823 (11th Cir. 1999), *amended in part*, 211 F.3d 1224
    (11th Cir. 2000) ........................................................ *passim*

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,
    210 F.3d 1099 (9th Cir. 2000)................................................11

*Reisman v. United States*,
    409 F.2d 789 (9th Cir. 1969)................................................15

*Shakur v. Schriro*,
    514 F.3d 878 (9th Cir. 2008)................................................12

# TABLE OF AUTHORITIES
(continued)

**Page**

*Smith v. United States*,
  133 S. Ct. 714 (2013) ...........................................................................................................11

*United States v. Antar*,
  53 F.3d 568 (3d Cir. 1995).........................................................................................11, 14, 15

*United States v. Eisen*,
  974 F.2d 246 (2d Cir. 1992).................................................................................................13, 15

*United States v. Finestone*,
  816 F.2d 583 (11th Cir. 1987)...............................................................................................13

*United States v. Hitachi Displays, Ltd.*,
  Case No. 3:09-cr-00247-SI, Dkt. 6 (May 17, 2009) ..............................................................8

*United States v. Lothian*,
  976 F.2d 1257 (9th Cir. 1992)...............................................................................12, 13, 14, 16

*United States v. Lowell*,
  649 F.2d 950 (3d Cir. 1981)..................................................................................................14

*United States v. Patel*,
  879 F.2d 292 (7th Cir. 1989).................................................................................................17

*United States v. Sax*,
  39 F.3d 1380 (7th Cir. 1994).........................................................................................13, 14, 17

*Volk v. D.A. Davidson & Co.*,
  816 F.2d 1406 (9th Cir. 1987)...............................................................................................19

**RULES**

Fed. R. Civ. P. 56(a).................................................................................................................11

**OTHER AUTHORITIES**

Moore's Federal Practice, *Civil* § 56.13 ..................................................................................12

1

2   The undersigned Direct Action Plaintiffs and the Indirect Purchaser Plaintiffs

3   ("Plaintiffs") hereby submit this Opposition to Hitachi Defendants' Motion for Summary

    Judgment Based Upon Withdrawal and the Statutes of Limitations ("Motion") [Dkt. No. 2972],

4   filed with this Court on November 7, 2014.

5                            **SUMMARY OF ARGUMENT**

6          Hitachi cannot avoid liability for years of anticompetitive conduct merely because certain

7   Hitachi entities ceased manufacturing and selling CRTs in March 2003.[1]  Far from establishing

8   Hitachi's affirmative defense of withdrawal from the conspiracy as a matter of law, ███████████

9   ████████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████████████

15  ████████████████████████████.  Hitachi also continued to participate in and benefit from the

16  CRT market through its ownership of SEG Hitachi Shenzhen Color Display Devices Co., Ltd.

17  ("Hitachi Shenzhen"), a named defendant that itself was an active member of the cartel. ████████

18  ████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████

20

21   _____

22        [1] Five of the six Hitachi entities named as Defendants bring the instant motion:  Hitachi,
    Ltd. ("HTL"), Hitachi Asia, Ltd. ("HAS"), Hitachi Displays, Ltd. ("HDP"), Hitachi Electronic
    Devices USA, Inc., ("HED(US)"), and Hitachi America, Ltd. ("HAL") (collectively, "Hitachi").

23  ███████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████

    ██████████████████████████████.  The sixth Hitachi Defendant—

26  SEG Hitachi Shenzhen Color Display Devices Co., Ltd. ("Hitachi Shenzhen")—was 25% owned
    by the Hitachi corporate family until November 7, 2007.  *See id.* Ex. 1 (Deposition of Patrick

27  Barrett at 28:10–29:21 (Nov. 4, 2014)).  Hitachi Shenzhen has not appeared in these proceedings
    and thus does not join the instant motion.  Its relationship to the Hitachi family is detailed herein.

28

1

2

Even if Hitachi could satisfy its burden of proving withdrawal, it could not escape liability for damages incurred by the plaintiffs prior to that withdrawal.  Hitachi's argument that the statutes of limitations begin running on the date of withdrawal ignores this Court's prior rulings to the contrary.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 1091589, at *8-9 (N.D. Cal. Mar. 13, 2014) ("[E]ven if a defendant argues that it had withdrawn from the conspiracy at the relevant time, it could still be liable for its pre-withdrawal price-fixing activity if the plaintiff adequately pled fraudulent concealment.").

—an issue on which Hitachi does not even attempt to move for summary judgment—there are, at minimum, material factual disputes regarding the tolling of Plaintiffs' claims.  And because Hitachi did not withdraw prior to November 26, 2003—four years from the filing of the first class action complaint—the plaintiffs' claims would be timely even if the conspirators had not fraudulently concealed their conspiracy.  In either case, Hitachi cannot avoid joint-and-several liability for the damages it caused.  The Court should deny Hitachi's motion for summary judgment on its affirmative defense of withdrawal.

## STATEMENT OF FACTS

Hitachi does not dispute in its Motion that the CRT manufacturing and sales entities within the Hitachi family participated in the conspiracy.  Indeed, neither the Hitachi parent company (HTL) nor its Asian CRT sales subsidiary (HAS) joined their family members' motion for summary judgment on the issue of liability, reflecting their acknowledgement that the evidence against them is sufficient to proceed to trial.



Hitachi's claim that it effectively withdrew from the conspiracy just by ceasing to manufacture and sell CRTs in March of 2003 is baseless.

Hitachi's sale of some CRT production equipment to co-conspirator Thomson in April 2003 furthered the cartel's efforts to concentrate control over the industry,

Hitachi's sale to another member of the conspiracy only served to benefit the cartel, which was left with the same total market share now concentrated in fewer manufacturers.  Indeed, Hitachi readily concedes that its sale of its CRT lines worked to the benefit of the CRT conspirators.  *See*

Motion at 6 (recognizing that CRT cartel members "discussed how [Hitachi's partial exit]

advantaged them").





Hitachi does not dispute that Hitachi Shenzhen was an active member of the CRT conspiracy, nor does Hitachi suggest that Hitachi Shenzhen withdrew in March 2003.



Moreover, Hitachi was actively involved in management and oversight of Hitachi Shenzhen's CRT operations. At all times during the conspiracy, either HTL or HDP had the authority to appoint three members to Shenzhen's seven member board of directors. *Id.* Ex. 1 (Deposition of Patrick Barrett at 30:2–13; 36:10–21 (Nov. 4, 2014)).



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19        Hitachi benefitted financially from Hitachi Shenzhen's participation in the conspiracy.  As

20   a result of its ownership interest in the company, Hitachi necessarily profited when Hitachi

21   Shenzhen sold price-fixed CRTs.  And when the Hitachi corporate family sold its 25 percent

22   equity stake in November 2007, the transaction necessarily reflected Hitachi Shenzhen's cartel

23   profits, thus furnishing Hitachi with one last ill-gotten gain from its conspiratorial conduct.  *See*

24   *id.* Ex. 35 (Shenzhen SEG Co. Ltd. Notice Number 2007-074) (confirming HDP's sale of its

25   ownership interest in Hitachi Shenzhen for RMB 175 million).

26

27

28



Hitachi's participation in the parallel LCD panel price-fixing conspiracy provided it

further motivation to see that the CRT cartel continued to succeed.  Like many of its fellow CRT

conspirators, Hitachi has pleaded guilty to participating in the LCD conspiracy from April 2001

to March 2004.[4]  *See id.* Ex. 41 (Joint Sentencing Memorandum and Plea Agreement in *United*

*States v. Hitachi Displays, Ltd.*, Case No. 3:09-cr-00247-SI, Dkt. 6 (May 17, 2009

At a minimum, Hitachi's role in the LCD cartel provided it yet another

_____

[3] MTPD (Matsushita Toshiba Picture Display Co., Ltd.) is the Panasonic & Toshiba joint
venture that was formed in 2003 and convicted by the European Commission and the Korean Fair
Trade Commission for its role in the CRT cartel.

[4]

1    reason to maintain the secrecy of the parallel CRT conspiracy in which it participated.  Indeed,

2    the CRT conspiracy did not come to light until after the LCD conspiracy was exposed.

3    

4            From the outset of its participation in the cartel, Hitachi took affirmative steps to conceal

5    its misconduct.



1
2
3

4

## ARGUMENT

5

### A.  Hitachi Cannot Meet the Substantial Burden to Establish That It Withdrew As A Matter of Law

6

As the Court has previously explained, Defendants bear a substantial burden to prevail on

7

a motion for summary judgment:

8
9
10
11
12
13
14
15

> Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be granted if the evidence would require a directed verdict for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Id.*  "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact."  *Id.*

16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F.Supp.2d 857, 864 (N.D. Cal. 2012).

17

Moreover, Plaintiffs are "entitled to and must receive the benefit of all favorable inferences which

18

can be drawn from the evidence."  *Independent Iron Works, Inc. v. U.S. Steel Corp.*, 177 F. Supp.

19

743, 747 (N.D. Cal. 1959), *aff'd* 322 F.2d 656 (9th Cir. 1963).

20

Hitachi's burden is particularly high here because it seeks to meet the "rigorous standard

21

for demonstrating withdrawal."  *United States v. Antar*, 53 F.3d 568, 581 (3d Cir. 1995),

22

*overruled on other grounds, Smith v. Berg*, 247 F.3d 432 (3d Cir. 2001) (citing *Hyde v. United*

23

*States*, 225 U.S. 347, 369 (1912)); *see also Smith v. United States*, 133 S. Ct. 714, 719 (2013)

24

("Establishing individual withdrawal was a burden that rested firmly on the defendant regardless

25

of when the purported withdrawal took place."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820

26

F. Supp. 2d 1055, 1060 (N.D. Cal. 2011) ("[W]ithdrawal is an affirmative defense on which

27

defendants bear the burden of proof . . . .  Because [Hitachi] bears the burden of proof on this

28

issue, it must meet a high standard to obtain summary judgment").  Indeed, "when the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that 'the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (quoting Moore's Federal Practice, *Civil* § 56.13). As such, summary judgment on withdrawal is rarely granted.  *See, e.g. In re TFT-LCD*, 820 F. Supp. 2d at 1060-61 (denying LG Display's motion for summary judgment despite evidence including a letter from the U.S. Department of Justice confirming that LGD reported the conspiracy to DOJ and cooperated in the government's LCD investigation). Because Hitachi utterly fails to meet this high burden, its motion for summary judgment should be denied.

**B.     Hitachi's Purported Exit from the CRT Industry Cannot Establish Withdrawal from the Conspiracy**

**1.     Cessation of Manufacturing and Sales, Without More, Does Not Establish Withdrawal**

Even if it had not continued its activities through Hitachi Shenzhen, Hitachi's cessation of CRT manufacturing and sales would be insufficient to meet the high standard for withdrawal. Hitachi does not contend—nor can it—that it took any affirmative action to defeat the purpose of the conspiracy, such as by notifying law enforcement or informing its customers of the price-fixing cartel.  Instead, it claims that its business decision to cease manufacturing and selling CRTs amounted to withdrawal.  Hitachi relies entirely on decisions from outside the Ninth Circuit for this proposition because no court within this Circuit has found a company's mere exit from an industry establishes withdrawal from the industry's conspiracy.  But even the out-of-circuit cases upon which Hitachi relies confirm that a defendant has not withdrawn if it continues to receive *any* financial benefit from its former participation in the conspiracy.  They also confirm that mere resignation from a business, with nothing else, is insufficient to establish withdrawal.  Hitachi's continued ties to the industry and to its co-conspirators—through the sale of its CRT business to Thomson and its continued relationship with Hitachi Shenzhen—belie Hitachi's claimed "clean and permanent break" from the conspiracy.  At a minimum, these ties create genuine issues of fact on the issue of withdrawal that require resolution by the jury.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"To withdraw from a conspiracy a defendant must either disavow the unlawful goal of the conspiracy, affirmatively act to defeat the purpose of the conspiracy, or take 'definite, decisive, and positive' steps to show that the [defendant's] disassociation from the conspiracy is sufficient.'" *United States v. Lothian*, 976 F.2d 1257, 1261 (9th Cir. 1992) (internal citations omitted); *see also United States v. Sax*, 39 F.3d 1380, 1386 (7th Cir. 1994) ("Merely ceasing participation in the conspiracy, *even for extended periods of time*, is not enough to evidence withdrawal.  Instead, the conspirator must take affirmative steps to *defeat* or *disavow* the conspiracy's purpose.  Until he does so, he is presumed to continue in the conspiracy." (emphasis in original) (internal citations omitted)); *United States v. Finestone*, 816 F.2d 583, 589 (11th Cir. 1987) ("To establish that he withdrew from a conspiracy, the defendant must prove that he undertook affirmative steps, inconsistent with the objects of the conspiracy, to disavow or to defeat the conspiratorial objectives, and either communicated those acts in a manner reasonably calculated to reach his co-conspirators or disclosed the illegal scheme to law enforcement authorities.").

Relying on the Eleventh Circuit's decision in *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823 (11th Cir. 1999), *amended in part*, 211 F.3d 1224 (11th Cir. 2000), Hitachi claims that the sale of its CRT business to alleged conspirator Thomson was a sufficient "affirmative action" to shield it from liability for the price-fixing cartel it had helped put in motion.  In *Morton's Market*, the court concluded that, unlike here, the defendant made a "clean and permanent" break from the milk price-fixing conspiracy by selling its dairy and "totally sever[ing] its ties to the milk price-fixing conspiracy." *Id.* at 838-39.  The court held that withdrawal can be found "*only* where the conspirator can demonstrate that he retired from the business, severed *all ties* to the business, *and* deprived the remaining conspirator group of the services which he provided to the conspiracy." *Id.* at 838-39 (emphasis added).   Where, as here, any of these conditions are unmet, withdrawal is not effective. *See United States v. Eisen*, 974 F.2d 246, 269 (2d Cir. 1992) (concluding that there was ineffective withdrawal where an attorney resigned from a conspiratorial enterprise but continued to be entitled to receive some proceeds from the conspiracy); *see also Lothian*, 976 F.2d at 1264 (holding defendant's resignation from

his employment was sufficient withdrawal because defendant *did not have* continued contact with his former employer and *did not* gain a financial benefit from that employer).

Accordingly, courts have confirmed that "resignation from the enterprise does not, in and of itself, constitute withdrawal from a conspiracy as a matter of law." *Antar*, 53 F.3d at 583. "[E]ven if the defendant completely severs his or her ties with the enterprise, the defendant still may remain a part of the conspiracy if he or she continues to do acts in furtherance of the conspiracy and continues to receive benefits from the conspiracy's operations." *Id.* The *Antar* court rejected a withdrawal defense where the defendant resigned from the conspiratorial enterprise but "retained stock in the enterprise" and thus "continued to receive the fruits of the fraud." *Id.* The court emphasized the lack of "evidence that [the defendant] acted inconsistently with the goals of the conspiracy." *Id.* at 584; *see also id.* ("There is nothing to indicate that he would have exposed the fraud. To the contrary, his failure to say anything about the fraud indicates otherwise."); *United States v. Lowell*, 649 F.2d 950, 956-57 (3d Cir. 1981) ("Having helped set the illegal transactions in motion, a jury could find that Schneider's post-retirement behavior disclosed an attitude insufficiently repudiatory to constitute 'withdrawal' notwithstanding (a) Schneider no longer derived any income from the transactions; (b) he no longer continued to be employed by the principals; and (c) he had given the Government a report on the fraud.").

Courts have also rejected claims of withdrawal where conspirators knowingly sell the offending business to fellow conspirators—precisely what occurred here. *See United States v. Sax*, 39 F.3d 1380, 1386 (7th Cir. 1994) ("Sax's sale can hardly be characterized as 'some act to disavow or defeat the purpose [of the conspiracy].' On the contrary, the evidence demonstrates that Sax continued to wholeheartedly endorse the purpose of the marijuana conspiracy—making profits from drug sales—by passing it along to Eichorn. Payment to Sax for the business was contingent on future drug sales . . . . the law will not let you wash your hands of a dangerous scheme *you have set in motion that can continue to operate and cause great harm without your continued participation*." (emphasis in original) (internal citations omitted)).

1
2
3
4
5
6
7
8

The Ninth Circuit has also held that mere exit from a conspiratorial enterprise, without additional affirmative action to defeat the conspiracy's purpose, is insufficient to establish withdrawal.  *See Reisman v. United States*, 409 F.2d 789, 793 (9th Cir. 1969) ("Although appellant Reisman resigned as president and director of the Gamble Land Company and ceased to participate in the company's day-to-day business operations, he remained a major stockholder and took no affirmative action to disavow or defeat the promotional activities which he had joined in setting in motion.  We think more was required to terminate his liability for the continuing conduct of his confederates.").

9
10
11
12
13

.  Particularly when viewed in the light most favorable to Plaintiffs, multiple undisputed facts preclude Hitachi's withdrawal defense.

14
15
16
17
18
19
20
21

First, Hitachi's ownership stake in and role in the operation of conspirator Hitachi Shenzhen doom Hitachi's affirmative defense of withdrawal—or at the very least, creates genuine issues of fact.  Until November 2007, Hitachi's 25-percent ownership interest in Hitachi Shenzhen entitled it to a share of any gains illegally obtained through the cartel's misconduct.  *See* Burman Decl. Ex. 1 (Deposition of Patrick Barrett at 28:10–29:21 (Nov. 4, 2014)).  Under the law of the Ninth Circuit and its sister circuits, Hitachi's right to continue benefiting from the cartel's activities is alone sufficient to defeat its claim of withdrawal.  *See Reisman*, 409 F.2d at 793; *Eisen*, 984 F.2d at 269; *Antar*, 53 F.3d at 583; *Morton's Market*, 198 F.3d at 839.

22
23
24
25
26
27
28



Moreover, the event that Hitachi claims effectuated its exit from the industry—the sale of a CRT production line to co-conspirator Thomson—served only to further concentrate CRT production within the cartel and enhance the conspiracy's effectiveness, a fact that Hitachi openly acknowledges. *See* Motion at 6. Given that the unlawful goal of the CRT cartel was to avoid price competition, Hitachi's affirmative decision to give Thomson, a co-conspirator, permanent and exclusive control over a portion of its production capacity *assisted* the cartel's unlawful purpose of maintaining supracompetitive prices for CRTs. "To accept [Hitachi's] argument that

[it] had withdrawn from this conspiracy at the moment [it] sold [its] business to [Thomson] would turn the doctrine of withdrawal on its head." *See Sax*, 39 F.3d at 1387.

Finally, Hitachi can point to no evidence that it took any affirmative action to thwart or otherwise undermine the efficacy of the price-fixing cartel it had helped create. *See United States v. Patel,* 879 F.2d 292, 294 (7th Cir. 1989) ("You do not absolve yourself of guilt of bombing by walking away from the ticking bomb. And similarly the law will not let you wash your hands of a dangerous scheme that you have set in motion and that can continue to operate and cause great harm without your continued participation.").  To be sure, Hitachi never disclosed the existence of the CRT conspiracy to any competition authorities.   Given Hitachi's admission of participation in the LCD panel cartel with at least eight of the CRT Defendants, a rational jury could easily conclude that Hitachi purposely continued to conceal the CRT cartel's existence after 2003 to ensure the supracompetitive pricing of the closest substitute to LCDs.  Similarly, Hitachi's obvious desire to maintain the secrecy of the LCD cartel undoubtedly influenced its decision not to blow the whistle on or otherwise draw attention to its participation in the CRT conspiracy.  In sum, Hitachi's interest in maintaining the cartel's success—or at a minimum of preventing its detection—continued well after its purported exit from the conspiracy.

For all of these reasons, the factual record—particularly when viewed in the light most favorable to Plaintiffs—provides no basis to conclude that Hitachi withdrew as a matter of law.

**C.     Even if Hitachi Could Establish Withdrawal, Material Issues of Fact Prevent Summary Judgment on the Statute of Limitations**

Hitachi contends that the applicable statutes of limitations started to run when Hitachi "withdrew" from the conspiracy by ending its manufacture and sale of CRTs in March 2003.  But even if Hitachi withdrew at that time, which it did not, Hitachi ignores the well-established rule recognized by this Court that fraudulent concealment prevents the statute of limitations from

running upon withdrawal. ████████████████████████████

██████████████████████████████████████████████████████

A conspirator is jointly and severally liable for all damages caused prior to that defendant's withdrawal from the conspiracy. *See, e.g., In re TFT-LCD*, 820 F. Supp. 2d at 1059 (joint and several liability "continues until . . . the defendant withdraws from the conspiracy"). Incredibly, Hitachi ignores the law of the case and relies on a superseded version of *Morton's Market* to inaccurately claim that withdrawal shields it from *all* liability on account of the running of the applicable statutes of limitations.  But as this Court has already recognized, withdrawal "is a fact-sensitive affirmative defense, and even if a defendant argues that it had withdrawn from the conspiracy at the relevant time, *it could still be liable for its pre-withdrawal price-fixing activity if the plaintiff adequately pled fraudulent concealmen*t."  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 1091589, at *8-9 (N.D. Cal. Mar. 13, 2014) (emphasis added); *see also Morton's Mkt.*, 211 F.3d 1224 (2000) (amending the decision on which Hitachi relies and clarifying that claims against a withdrawing defendant "are not timely-filed *unless the statute was equitably tolled by fraudulent concealment.  If so, Pet would be liable for any price-fixing activity prior to its withdrawal.*" (emphasis in original)); *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 777, 789-90 (N.D. Cal. 2007) ("Even if Eisenberg could establish . . . that he withdrew from the conspiracy at the end of 2001 . . . Plaintiffs' allegations of fraudulent

---

[5] Of course, if Hitachi fails to establish that it withdrew from the conspiracy as a matter of law prior to the end of  2003, Plaintiffs' claims are timely regardless of fraudulent concealment because Plaintiffs filed their complaints in November and December 2007, within the four year statute of limitations.  *See* Dkt. No. 1 (direct purchaser plaintiff complaint dated Nov. 26, 2007, naming Hitachi Ltd., Hitachi America Ltd., and Hitachi Asia Ltd. as defendants); Dkt. No. 13 (motion to relate indirect purchaser complaint filed December 7, 2007, naming Hitachi Ltd., Hitachi America Ltd., and Hitachi Asia, Ltd. as defendants).  With respect to the complaints of the opt-out direct action  plaintiffs filed in 2011, this Court has recognized that "*American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974), held that commencement of a class action suspends the statute of limitation as to all putative members of the class up to and until class certification is denied or the plaintiff opts out of the class." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C–07–5944–SC, 2014 WL 1091589, *10 (N.D. Cal. Mar. 13, 2014).  As detailed above, ample evidence confirms that Hitachi continued to conspire well after the end of 2003, including via the market allocation agreement with Thomson that continued in force until November 30, 2003.  Accordingly, Plaintiffs' need not rely on fraudulent concealment tolling to establish the timeliness of their claims.

concealment would prevent the statute of limitations as to Eisenberg's conduct from beginning to run until October 2002").

Hitachi also incorrectly asserts that evidence of *post-withdrawal* fraudulent concealment is necessary for the tolling doctrine to apply.  To the contrary, so long as the conspirators took measures to actively conceal the conspiracy while Hitachi was a participant, the statute of limitations was tolled until Plaintiffs were on notice of their claims.  *See Morton's Mkt.*, 211 F.3d at 1224.  Indeed, because affirmative acts of concealment would almost certainly defeat a claim of withdrawal, it is difficult to imagine how a defendant could even engage in post-withdrawal concealment.  As such, so long as there are genuine issues of material fact regarding fraudulent concealment that occurred during Hitachi's participation in the conspiracy, summary judgment on the statute of limitations grounds must be denied regardless of whether and when Hitachi withdrew.

Tellingly, Hitachi does not challenge the sufficiency of evidence showing that Hitachi and the conspirators acting on its behalf fraudulently concealed the existence of the conspiracy.  And even if it had tried to make such an argument, Hitachi would have "an extremely difficult burden to show that [fraudulent concealment allegations are] barred as a matter of law.'"  *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 782 F. Supp. 487, 489 (C.D. Cal. 1991) (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987)).  Courts within the Ninth Circuit regularly deny summary judgment on statute of limitations grounds because of evidence of fraudulent concealment.  *See, e.g., Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 504 (9th Cir. 1988) (finding genuine issues of material fact whether public information was enough to put plaintiff on notice of its claim despite defendant's effort to conceal the conspiracy); *In re TFT-LCD Antitrust Litig.*, No. M-07-1827-SI, 2012 WL 6000154, *2 (N.D. Cal. Nov. 30, 2012) ("While defendants have submitted powerful evidence suggesting that Dell knew about defendants' alleged price-fixing activities prior to December 2002, the Court concludes that summary judgment is not appropriate because the parties have submitted conflicting evidence regarding what Dell employees knew and when they knew it."); *In re TFT-LCD Antitrust Litig.,* No. M-07-1827-SI 2012, WL 6126144, *1 (N.D. Cal. Dec. 10, 2012) ("The

1   Court concludes that summary judgment is not appropriate because defendants have not shown

2   with uncontroverted evidence that Best Buy discovered or should have discovered its antitrust

3   claims prior to October 2006.").



1

2

3

4

5

6

**CONCLUSION**

7

8          For the foregoing reasons, the Court should deny Hitachi's motion for summary judgment

9     as to withdrawal.

10                                         /s/  David J. Burman

11                                         David J. Burman (*pro hac vice*)
                                          Cori G. Moore (*pro hac vice*)
12                                         Eric J. Weiss (*pro hac vice*)
                                          Nicholas H. Hesterberg (*pro hac vice*)
13                                         Steven D. Merriman (*pro hac vice*)
                                          PERKINS COIE LLP
14                                         1201 Third Avenue, Suite 4900
                                          Seattle, WA 98101-3099
15                                         Telephone:  (206)359-8000
                                          Facsimile:   (206)359-9000
16                                         Email: DBurman@perkinscoie.com
                                                 CGMoore@perkinsncoie.com
17                                                 EWeiss@perkinscoie.com
                                                 NHesterberg@perkinscoie.com
18                                                 SMerriman@perkinscoie.com

19                                         Joren Ayala-Bass, Bar No. 208143
                                          PERKINS COIE LLP
20                                         Four Embarcadero Center, Suite 2400
                                          San Francisco, CA 94111-4131
21                                         Telephone:  (415)344-7120
                                          Facsimile:  (415)344-7320
22                                         Email:  JBass@perkinscoie.com

23                                         *Counsel for Plaintiff Costco Wholesale Corporation*

24

25                                         /s/  Philip J. Iovieno

26                                         Philip J. Iovieno
                                          Anne M. Nardacci
27                                         BOIES, SCHILLER & FLEXNER LLP
                                          30 South Pearl Street, 11th Floor
28                                         Albany, NY  12207

PLAINTIFFS' OPPOSITION TO HITACHI'S
MOTION FOR SUMMARY JUDGMENT RE
WITHDRAWAL AND STATUTES OF LIMITATIONS          - 21 -          Case No. 3:07-cv-05944-SC

Telephone:  (518) 434-0600
Facsimile:  (518) 434-0665
Email:   piovieno@bsfllp.com
             anardacci@bsfllp.com

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C.  20015
Telephone:  (202) 237-2727
Facsimile:   (202) 237-6131
Email:  wisaacson@bsfllp.com

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Telephone:  (954) 356-0011
Facsimile:   (954) 356-0022
Email:  ssinger@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs and
Attorneys for Plaintiffs Electrograph Systems, Inc.,
Electrograph Technologies, Corp., Office Depot, Inc.,
Compucom Systems, Inc., Interbond Corporation of
America, P.C. Richard & Son Long Island Corporation,
MARTA Cooperative of America, Inc., ABC Appliance,
Inc., Schultze Agency Services LLC on behalf of
Tweeter Opco, LLC and Tweeter Newco, LLC, and
Tech Data Corporation and Tech Data Product
Management, Inc.*


/s/  Mario N. Alioto
_____

Mario N. Alioto
Lauren C. Russell
TRUMP, ALIOTO, TRUMP & PRESSCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone:  415-563-7200
Facsimile:   415-346-0679
Email:  malioto@tatp.com
             laurenrussell@tatp.com

*Lead Counsel for Indirect Purchaser Plaintiffs*


/s/  Scott N. Wagner
_____

Robert W. Turken
Scott N. Wagner
Mitchell E. Widom
BILZIN SUMBERG MAENA PRICE & AXELROD

LLP
1450 Brickell Ave, Suite 2300
Miami, FL  33131-3456
Tel:  305-374-7580
Fax: 305-374-7593
Email:  rturken@bilzin.com
swagner@bilzin.com
mwidom@bilzin.com

*Counsel for Plaintiffs Tech Data Corporation and Tech Data Product Management, Inc.*

/s/  *David Martinez*

Roman M. Silberfeld
Bernice Conn
David Martinez
Jill S. Casselman
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:  (310) 552-0130
Facsimile:   (310) 229-5800
Email:  rmsilberfeld@rkmc.com
dmartinez@rkmc.com
jscasselman@rkmc.com

Elliot S. Kaplan
K. Craig Wildfang
Laura E. Nelson
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN  55402
Telephone:  (612) 349-8500
Facsimile:   (612) 339-4181
Email:  eskaplan@rkmc.com
kcwildfang@rkmc.com
lenelson@rkmc.com

*Counsel For Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, Inc.*

/s/  *William J. Blechman*

Richard Alan Arnold (*pro hac vice*)
William J. Blechman (*pro hac vice*)
Kevin J. Murray (*pro hac vice*)
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL  33131
Tel: 305-373-1000

Fax: 305-372-1861
Email:   rarnold@knpa.com
            wblechman@knpa.com
            kmurray@knpa.com

*Counsel for Plaintiff Sears, Roebuck and Co. and
Kmart Corp.*

/s/  *Kenneth S. Marks*

Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:   (713) 654-6666
Email: kmarks@susmangodfrey.com
            jross@susmangodfrey.com
            jcarter@susmangodfrey.com
            dpeterson@susmangodfrey.com


Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington  98101-3000
Telephone:  (206) 516-3880
Facsimile:   (206) 516-3883
Email:  pfolse@susmangodfrey.com
            rblack@susmangodfrey.com
            jconnors@susmangodfrey.com

*Counsel for Plaintiff Alfred H. Siegel, as Trustee of the
Circuit City Stores, Inc. Liquidating Trust*


/s/ *Jerome A. Murphy*

Jerome A. Murphy (*pro hac vice*)
Matthew J. McBurney (*pro hac vice*)
Astor H.L. Heaven (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

PLAINTIFFS' OPPOSITION TO HITACHI'S
MOTION FOR SUMMARY JUDGMENT RE
WITHDRAWAL AND STATUTES OF LIMITATIONS        - 24 -        Case No. 3:07-cv-05944-SC

Telephone:  202-624-2500
Facsimile:  202-628-5116
E-mail:  jmurphy@crowell.com
          mmcburney@crowell.com
          aheaven@crowell.com

Jason C. Murray (CA Bar No. 169806)
Robert B. McNary (CA Bar No. 253745)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA  90071
Telephone:  213-443-5582
Facsimile:  213-622-2690
Email:  jmurray@crowell.com
         rmcnary@crowell.com

*Counsel for Target Corp.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

I, David J. Burman , do hereby declare pursuant to Civ. L.R. 5-1(i)(3) that concurrence in the filing of the foregoing document has been obtained from the attorneys listed as signatories above on this 23rd day of December, 2014.


/s/  *David J. Burman*
David J. Burman