William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
Email: wisaacson@bsfllp.com

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665
Email: piovieno@bsfllp.com
       anardacci@bsfllp.com

*Counsel for Plaintiffs CompuCom Systems, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: Cathode Ray Tube (CRT) ANTITRUST LITIGATION<br><br>This Document Relates To Individual Case No. 11-cv-06396<br><br>COMPUCOM SYSTEMS, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>HITACHI, LTD., *et al.*,<br><br>    Defendants. | Master File No. 3:07-md-05944-SC<br><br>MDL No. 1917<br><br>**JOHN O'DONNELL DECLARATION IN SUPPORT OF DIRECT ACTION PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED UPON PLAINTIFFS' PURPORTED FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA**<br><br>Judge: Hon. Samuel P. Conti<br>Court: Courtroom 1, 17th Floor<br>Date: February 6, 2015<br>Time: 10:00 a.m. |

I, John O'Donnell, hereby declare as follows:

1. I am currently the Director of the Infrastructure Solutions Groups, Information Technology at CompuCom Systems, Inc. ("CompuCom"). I make this declaration based on my personal knowledge.

2. I gave corporate representative testimony on behalf of CompuCom in this action, and testified on CompuCom's behalf as to its practices for purchasing and acquiring CRT Products during the Relevant Period of 1995 through 2007.

3. During the Relevant Period, CompuCom made its purchases of CRT Products exclusively from locations in the United States, as reflected at pages 140 and 245 to 246 of CompuCom's corporate representative deposition testimony, a true and correct copy of which is attached hereto as Exhibit 1.

4. During the Relevant Period, CompuCom purchased CRT Products exclusively from vendors which were within the United States, as reflected at pages 102 to 103 of CompuCom's corporate representative testimony, a true and correct copy of which is attached hereto as Exhibit 2.

5. During the Relevant Period, CompuCom purchased CRT Products directly from Defendants, co-conspirators and their affiliates, all of which were located in the United States, as reflected in the purchase data CompuCom produced in this litigation.

6. CompuCom's vendors, including Defendants, co-conspirators and their affiliates, shipped these CRT Products to CompuCom's locations or customers in the United States, as reflected at pages 143 to 144 of CompuCom's corporate representative testimony, a true and correct copy of which is attached hereto as Exhibit 3.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19 day of December, 2014, at DALLAS, TX

By: _____
John O'Donnell

JOHN O'DONNELL DECL. IN SUPPORT OF DAPS' OPP.
DEFS' MSJ BASED UPON PLAINTIFFS' PURPORTED
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE
AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

- 2 -

Case No. 11-cv-06396
Master File No. 3:07-md-05944-SC

# Exhibit 1

Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN FRANCISCO DIVISION
 4   In re:  CATHODE RAY TUBE    ) Case No. 07-5944 (SC)
     (CRT) ANTITRUST LITIGATION, )
 5   _____) MDL No. 1917
                                  )
 6   This Document Relates to:    )
                                  )
 7   ALL ACTIONS                  )
 8
 9
10           ORAL AND VIDEOTAPED DEPOSITION OF
11                    JOHN O'DONNELL
12                    MAY 20, 2014
13
14
15           VIDEOTAPED DEPOSITION of JOHN
16   O'DONNELL, produced as a witness at the instance of
17   the Defendants LG Electronics, Inc. and LG Electronics
18   U.S.A., Inc., and duly sworn, was taken in the
19   above-styled and numbered cause on the 20th of May,
20   2014, from 8:57 a.m. to 6:50 p.m., before Audra B.
21   Paty, CSR in and for the State of Texas, reported by
22   machine shorthand, at the offices of Susman Godfrey
23   LLP, 901 Main Street, Suite 5100, in the City of
24   Dallas, County of Dallas, State of Texas, pursuant to
25   Notice and the Federal Rules of Civil Procedure.
```

Page 140

1    our suppliers to our way of thinking.  Do you think
2    that's an accurate way of thinking?
3         A.   Yes.                                           14:18:29
4         Q.   Great.  You can place this exhibit aside.
5         A.   I would like to say that the word suppliers
6    is really distributors because manufacturers don't get
7    swayed.  I mean, they are -- it is take it or leave
8    it.  It's -- all of CompuCom's negotiating ability is
9    with distributors and not manufacturers.
10        Q.   When CompuCom purchased CRT monitors, did it   14:18:59
11   issue purchase orders for those monitor purchases?
12        A.   Yes.
13        Q.   Where did CompuCom issue those purchase
14   orders from?
15        A.   Dallas, Texas.
16        Q.   Did it issue purchase orders from any other
17   location?
18        A.   No.
19        Q.   Which entities would issue -- strike that.
20             Did CompuCom receive invoices for the CRT      14:19:28
21   monitors or televisions that it purchased?
22        A.   Yes.
23        Q.   Which entities would issue those invoices for
24   CRT products?
25             MR. SMITH:  Objection.

Page 245

1  way just to filter it down to only CRT.  18:04:28
2      Q.  After filtering the data by CRT vendor
3  identification codes, would it be accurate to delete
4  any products where the product description says LCD if
5  I wanted to end up with a purchasing data set that
6  only included CRT products?
7      A.  I would not want to dictate how your experts
8  handle the data to get to the solution you're looking
9  for.  There are various ways to pare down data,  18:04:55
10 keyword searches and other analysis, but I would
11 certainly not want to offer any advice on how to do
12 that because your experts would know how to do that.
13     Q.  Well, does CompuCom have any capacity to pare
14 down its own purchasing data to include only CRT
15 product purchases?
16     A.  The process that we would take would be the
17 same process that your experts would take.  It's just
18 a very long, slow slog through the data to -- to parse  18:05:29
19 that information out.
20     Q.  Do you know if CompuCom's procurement --
21 strike that.
22         Do you know if CompuCom's purchasing data
23 includes any transactions related to locations other
24 than the United States?
25             MR. SMITH:  Objection, form.  18:05:54

Page 246

1       A.  Are you asking, do we purchase from other
2   than the United States?
3       Q.  (BY MS. LIN)  That's a clearer question.  Why
4   don't we ask that.  Do you know if the purchasing data
5   includes purchases from locations other than the
6   United States?
7       A.  To the best of my knowledge, it does not and
8   should not because we do not purchase outside the
9   United States.
10      Q.  And I think you said earlier that purchases
11  intended for sale in Canada are not included in                18:06:28
12  CompuCom's purchase data; is that right?
13              MR. SMITH:  Objection to form.
14      A.  That's correct.  Canada is separate.
15      Q.  (BY MS. LIN)  Do you know if the ship-to
16  fields in CompuCom's purchasing data list the location
17  where the product will be shipped to?
18      A.  Yes, it does with a very high degree of
19  accuracy, but we noticed in the data there's -- in the        18:06:57
20  hundreds and hundreds of thousands of lines, there are
21  a scattering of weird ship-to locations in there that
22  are some data anomalies.
23      Q.  What would strike you as a weird ship-to
24  location?
25      A.  I know that in a couple of instances in all

# Exhibit 2

Page 1

```
1           IN THE UNITED STATES DISTRICT COURT
2              NORTHERN DISTRICT OF CALIFORNIA
3                   SAN FRANCISCO DIVISION
4   In re:  CATHODE RAY TUBE    ) Case No. 07-5944 (SC)
            (CRT) ANTITRUST LITIGATION, )
5   _____) MDL No. 1917
                                    )
6   This Document Relates to:       )
                                    )
7   ALL ACTIONS                     )
8
9
10              ORAL AND VIDEOTAPED DEPOSITION OF
11                        JOHN O'DONNELL
12                        MAY 20, 2014
13
14
15              VIDEOTAPED DEPOSITION of JOHN
16   O'DONNELL, produced as a witness at the instance of
17   the Defendants LG Electronics, Inc. and LG Electronics
18   U.S.A., Inc., and duly sworn, was taken in the
19   above-styled and numbered cause on the 20th of May,
20   2014, from 8:57 a.m. to 6:50 p.m., before Audra B.
21   Paty, CSR in and for the State of Texas, reported by
22   machine shorthand, at the offices of Susman Godfrey
23   LLP, 901 Main Street, Suite 5100, in the City of
24   Dallas, County of Dallas, State of Texas, pursuant to
25   Notice and the Federal Rules of Civil Procedure.
```

Page 102

| | | |
|---|---|---|
| 1 | headquartered in the suburbs of Tampa, Florida. | 11:46:58 |
| 2 | Q. Did CompuCom ever receive shipments of CRT | |
| 3 | products from outside of the country? | |
| 4 | A. No. | |
| 5 | Q. In the drop-ship context, did CompuCom ever | |
| 6 | facilitate the purchase of CRT products that were | 11:47:28 |
| 7 | shipped to the customer from outside of the country? | |
| 8 | MR. SMITH: Objection. | |
| 9 | A. No. And I want to make one correction. | |
| 10 | Actually, I think Ingram Micro might be headquartered | |
| 11 | in Southern California. So I'm unclear on their exact | |
| 12 | location of their headquarters. | |
| 13 | Q. (BY MS. LIN) Okay. Thank you. | |
| 14 | Is it accurate to say that CompuCom's | |
| 15 | suppliers for CRT products were all based in the | |
| 16 | United States? | |
| 17 | MR. SMITH: Objection. | 11:47:59 |
| 18 | A. Can you refer to -- clarify what you mean by | |
| 19 | based in the United States? | |
| 20 | Q. (BY MS. LIN) Were the companies that | |
| 21 | CompuCom was purchasing CRT products from, were those | |
| 22 | domestic companies? | |
| 23 | MR. SMITH: Objection. | |
| 24 | A. We did not source products from overseas. We | |
| 25 | dealt with the U.S. entities of companies that may or | |

Page 103

1  may not have been from overseas or headquartered                11:48:27
2  overseas, but we always dealt with the U.S. entity of
3  those companies.
4          MS. LIN:  So I would be inclined to take
5  a break for lunch if our food is here.  Does that
6  sound good to others?
7          MR. SMITH:  Uh-huh.
8          THE WITNESS:  That's agreed.
9          MS. LIN:  Okay.  Let's go ahead and go
10 off the record.
11         THE VIDEOGRAPHER:  We are off the record
12 at 11:48, end of tape number 2.                                  11:48:51
13         (Recess 11:48 to 12:57.)
14         (Videotape 3.)
15         THE VIDEOGRAPHER:  We are back on the
16 record at 12:57, beginning of tape 3.
17     Q.  (BY MS. LIN)  Welcome back.
18     A.  Thank you.
19     Q.  Did CompuCom have a vendor qualification
20 process that it used for its CRT product vendors?                12:57:23
21     A.  Not a formal process, no.
22     Q.  Was there any kind of informal process for
23 vendor qualification?
24     A.  Yes.
25     Q.  And what was that?

# Exhibit 3

Page 1

1           IN THE UNITED STATES DISTRICT COURT
2              NORTHERN DISTRICT OF CALIFORNIA
3                   SAN FRANCISCO DIVISION
4    In re:  CATHODE RAY TUBE    ) Case No. 07-5944 (SC)
     (CRT) ANTITRUST LITIGATION, )
5    _____) MDL No. 1917
                                  )
6    This Document Relates to:    )
                                  )
7    ALL ACTIONS                  )
8
9
10             ORAL AND VIDEOTAPED DEPOSITION OF
11                      JOHN O'DONNELL
12                      MAY 20, 2014
13
14
15           VIDEOTAPED DEPOSITION of JOHN
16   O'DONNELL, produced as a witness at the instance of
17   the Defendants LG Electronics, Inc. and LG Electronics
18   U.S.A., Inc., and duly sworn, was taken in the
19   above-styled and numbered cause on the 20th of May,
20   2014, from 8:57 a.m. to 6:50 p.m., before Audra B.
21   Paty, CSR in and for the State of Texas, reported by
22   machine shorthand, at the offices of Susman Godfrey
23   LLP, 901 Main Street, Suite 5100, in the City of
24   Dallas, County of Dallas, State of Texas, pursuant to
25   Notice and the Federal Rules of Civil Procedure.

Page 143

1    purchase orders pre-2000 was issued?
2         A.   No.
3         Q.   Can you approximate a year when you think
4    that order would have been issued?
5         A.   Other than years ago, but I don't know
6    exactly when that occurred.                                   14:22:58
7         Q.   Do you expect it would have occurred prior to
8    2007?
9         A.   No.
10        Q.   Do you think it would have happened prior to
11   2008?
12        A.   I don't want to walk down the calendar so I
13   don't know.  I don't recall.                                  14:23:25
14        Q.   Okay.  Where were the CRT products that
15   CompuCom purchased shipped to when they were going
16   directly to -- strike that.
17             Where were CRT products that CompuCom
18   purchased shipped to if they were not going to be
19   drop-shipped directly to a customer?
20        A.   Almost exclusively they would go to our
21   Paulsboro, New Jersey configuration and distribution
22   facility.  There's a chance also that they may have           14:24:00
23   gone to one of our colo facilities.  That would be
24   about it.
25        Q.   If a product was dropped-shipped to a

Page 144

1  customer, it would go directly from CompuCom CRT
2  product supplier to the customer without going through
3  CompuCom's own hands, if you will; is that right?          14:24:29
4             MR. SMITH:  Objection.
5        A.  Yes.
6        Q.  (BY MS. LIN)  Were CompuCom monitors --
7  strike that.  Were CompuCom products -- sorry.  I'm
8  getting tired.  Strike that.
9             Were CRT products that CompuCom purchased
10 ever drop-shipped to customers outside of the United
11 States?
12       A.  Not to my knowledge, no.
13       Q.  Were CRT products ever shipped from              14:25:04
14 CompuCom's Paulsboro facility to customers located
15 outside of the United States?
16       A.  If Puerto Rico is considered within the
17 United States, we did have a customer with facilities
18 in Puerto Rico, but not to my knowledge outside the       14:25:27
19 United States.
20       Q.  Did CompuCom have any business in Canada?
21       A.  Yes.
22       Q.  Would customers in Canada have purchased CRT
23 products?
24       A.  Yes.
25       Q.  Would those have been sold by -- strike that.