ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Roman M. Silberfeld, Bar No. 62783
RMSilberfeld@rkmc.com
Bernice Conn, Bar No. 161594
BConn@rkmc.com
David Martinez, Bar No. 193183
DMartinez@rkmc.com
Lucas A. Messenger, Bar No. 217645
LAMessenger@rkmc.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone:     310-552-0130
Facsimile:     310-229-5800

Attorneys for Plaintiffs

BEST BUY CO., INC.; BEST BUY PURCHASING LLC; BEST
BUY ENTERPRISE SERVICES, INC.; BEST BUY STORES,
L.P.; BESTBUY.COM, LLC

Additional Counsel Listed Below

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>ALL ACTIONS | **OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO DAPS' ALLEGED DIRECT DAMAGE CLAIMS BASED ON PURCHASES FROM SANYO**<br><br>**[Declaration of Lucas A. Messenger submitted concurrently herewith]**<br><br>Date:     February 6, 2015<br>Time:     10:00 a.m.<br>Judge:    Hon. Samuel Conti |

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I.    Statement of Issue ............................................................................................ 1

II.   Introduction ...................................................................................................... 1

III.  Factual Background ........................................................................................ 2

IV.   Argument .......................................................................................................... 4

    A.    The Standard On Summary Judgment ................................................ 4

    B.    The Court Should Deny The Motion Because The Panasonic Defendants'
        Ownership Of The Sanyo Entities Establishes The Ownership/Control
        Exception To *Illinois Brick* .................................................................. 4

        1.    The Panasonic Defendants' Ownership Since December 21, 2009
            Has Made It Unrealistic That Sanyo Would Sue ..................... 4

        2.    Defendants' Proposed "Relevant Period Rule" Is Squarely At Odds
            With *Royal Printing* and *ATM Fee* ..................................... 8

    C.    Defendants' Authorities In Support Of The "Relevant Period Rule" Are
        Inapposite .............................................................................................. 9

    D.    The Absence Of Litigation Between Sanyo And The Panasonic Defendants
        Establishes That The Panasonic Defendants' Ownership Of Sanyo Has
        Eliminated Any Realistic Possibility Of Private Antitrust Enforcement By
        Sanyo ................................................................................................... 12

V.    Conclusion ...................................................................................................... 13

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................4

*Costco Wholesale Corp. v. AU Optronics Corp.(In re TFT-LCD (Flat Panel)
    Antitrust Litig.)*, 2012 U.S. Dist. LEXIS 183751 (N.D. Cal. Dec. 26, 2012) ................... 1, 5, 7

*Costco Wholesale Corp. v. AU Optronics Corp.*, 2014 U.S. Dist. LEXIS 127727
    (W.D. Wash. Sept. 11, 2014) .................................................................................... passim

*Freeman v. San Diego Ass'n of Realtors*,
    322 F.3d 1133 (9th Cir. 2003) ....................................................................... 1, 6, 9, 12

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ............................................................................................ passim

*In re ATM Fee Antitrust Litig.*,
    686 F.3d 741 (9th Cir. 2012) ................................................................................ passim

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    911 F. Supp. 2d 857 (N.D. Cal. 2012) (J. Conti) .................................................. 5, 7

*In re Mercedes-Benz Antitrust Litig.*,
    225 F.R.D. 498 (D.N.J. 2005) .................................................................................. 10

*Jewish Hospital Ass'n v. Stewart Mechanical Enterprises, Inc.*,
    628 F.2d 971 (6th Cir. 1980) .................................................................................. 11

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies,Inc.*,
    210 F.3d 1099 (9th Cir. 2000) ................................................................................... 4

*P.C. Richard & Son Long Island Corp. v. AU Optronics Corp. (In re TFT-LCD
    (Flat Panel) Antitrust Litig.)*,
    2014 U.S. Dist. LEXIS 125356 (N.D. Cal. Sept. 4, 2014) .................................... 11

*Perma Life Mufflers, Inc. v. International Parts Corp.*,
    392 U.S. 134 (1968) ................................................................................................. 8

*Proview Technology Inc., et al. v. AU Optronics Corp. (In re TFT-LCD (Flat
    Panel) Antitrust Litig.)*,
    2013 U.S. Dist. LEXIS 39606 (N.D. Cal. Mar. 20, 2013) ..................................... 11

*Royal Printing Co. v. Kimberly-Clark Corp.*,
    621 F.2d 323 (9th Cir. 1980) .............................................................................. passim

1

**Other Authorities**

Fed. R. Civ. P. 30(b)(6)...................................................................................... 2

Fed. R. Civ. P. 37 ........................................................................................... 10

Fed. R. Civ. P. 56(a)......................................................................................... 4

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Master Case No. 3:07-cv-05944-SC

60871566

- iii -

OPPOSITION TO MOTION FOR PARTIAL SUMMARY
JUDGMENT WITH RESPECT TO CLAIMS BASED ON
PURCHASES FROM SANYO

I. **STATEMENT OF ISSUE**

Whether Plaintiffs[1] have raised a genuine issue of material fact concerning the ownership/control relationship between Panasonic and Sanyo, and therefore may pursue federal claims for their purchases of CRT Finished Products from the Sanyo Entities[2] notwithstanding *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

II. **INTRODUCTION**

Defendants seek to impose a time limitation on the ownership/control exception to *Illinois Brick*'s direct-purchaser rule. They do so to prevent Plaintiffs from recovering any damages for claims based on purchases of CRT Finished Products from Sanyo. Contrary to binding Ninth Circuit authority in *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), and *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012), Defendants argue that the only relevant period to be analyzed by the Court – for purposes of determining ownership/control of Sanyo by the Panasonic Defendants – is the "relevant period" defined by the operative complaint: March 1, 1995, through November 25, 2007 (the "Conspiracy Period").

Just as the defendants in LCD did before them, Defendants attempt to draw a bright-line rule unsupported and irreconcilable with Ninth Circuit precedent. Instead, the relevant inquiry is whether ownership or control at any point in time – from the beginning of the conspiracy through the present – eliminates any realistic possibility of suit.[3] This conclusion is consistent with *ATM Fee* and *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133 (9th Cir. 2003), and reflects the

---

[1] The term "Plaintiffs" refers to the following Direct Action Plaintiffs: Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., and Bestbuy.com, LLC; Interbond Corporation of America, d/b/a BrandsMart USA; Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust; Costco Wholesale Corporation; Sears, Roebuck and Co. & Kmart Corp. Defendants therefor have not moved for summary judgment against all Direct Action Purchasers as indicated by their caption that the Motion is applicable at to "ALL ACTIONS."

[2] Unless otherwise indicated, defined terms shall have the same meaning as set forth in Defendants' moving papers, which defines "Sanyo" and "Sanyo Entities" as consisting of Sanyo Electric Co., Ltd., Sanyo North America Corporation, Sanyo Manufacturing Corporation, Sanyo Energy USA Corporation, and Sanyo Fisher (USA) Corporation. (Mot. at 1:24-26 n.1.)

[3] *See Costco Wholesale Corp. v. Au Optronics Corp.*, 2014 U.S. Dist. LEXIS 127727, at 21 (W.D. Wash. Sept. 11, 2014) ("*Costco (W.D. Wash.)*"); *Costco Wholesale Corp. v. AU Optronics Corp.(In re TFT-LCD (Flat Panel) Antitrust Litig.)*, 2012 U.S. Dist. LEXIS 183751, at 58-59 (N.D. Cal. Dec. 26, 2012) ("*Costco (N.D. Cal.)*").

---

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO CLAIMS BASED ON PURCHASES FROM SANYO

*(sidebar)* ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  policy goals articulated by the Ninth Circuit in *Royal Printing.*  *See ATM Fee*, 686 F.3d at 756;

2  *Freeman*, 322 F.3d at 1146; *Royal Printing*, 621 F. 2d at 326.

3      Indeed, the fact "that Sanyo was neither owned nor controlled by Panasonic Defendants

4  during the [Conspiracy Period]" does not magically end the ownership/control analysis.  The

5  overwhelming evidence shows that the Panasonic Defendants combined and conspired, along

6  with other defendants and coconspirators, to fix, raise, and stabilize prices for CRTs during the

7  Conspiracy Period.[4]  Defendants' proposed "relevant period rule" effectively would ensure that

8  the Panasonic Defendants would escape antitrust liability under the Sherman Act for their sales to

9  Sanyo during the Conspiracy Period.  This result would be contrary to the express purpose of the

10  ownership/control exception, which is to ensure that application of *Illinois Brick* does not

11  effectively immunize Defendants from private antitrust enforcement.  *Royal Printing*, 621 F. 2d at

12  326.

13      There is no dispute that the Panasonic Defendants have owned a majority interest in

14  Sanyo Electric Co., Ltd. since December 21, 2009, and acquired the remaining interest on April 1,

15  2011.  Based on *Royal Printing* and *ATM Fee*, the central inquiry for the Court in determining

16  whether ownership has been demonstrated should *not* be when that ownership existed.  Rather,

17  the Court should focus on whether the Panasonic Defendants' ownership of Sanyo Electric Co.,

18  Ltd. at any point in time has eliminated any realistic possibility of suit by Sanyo Electric Co., Ltd.

19  or its subsidiaries—the Sanyo Entities.  Since December 21, 2009, the answer to that question is

20  indisputably yes.  For the foregoing reasons, and as will be shown in greater detail below, the

21  Court should deny Defendants' motion for partial summary judgment (the "Motion").

22  **III.    FACTUAL BACKGROUND**

23      On December 21, 2009, Panasonic Corp. acquired a 50.2% ownership interest in Sanyo

24  Electric Co., Ltd.[5]

---

25  [4] (*See* Plaintiffs' opposition to Defendants Panasonic Corporation of North America's and
   Panasonic Corporation's (f/k/a Matsushita Electric Industrial Co., Ltd.) Motion for Summary

26  Judgment (Docket No. 3001) filed concurrently herewith.)

27  [5] (*See* Docket No. 3014-2 at 9:17-20 [Rule 30(b)(6) Deposition of Panasonic Defendants (Robert
   L. Nowicki)]; Declaration of Lucas A. Messenger ("Messenger Declaration"), Ex. A [Response to

28  Request for Admission No. 55].)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    Prior to Panasonic Corp.'s 50.2% acquisition in December 2009, Sanyo Electric Co.,

2   Ltd.'s principal subsidiaries included Sanyo North America Corporation, Sanyo Manufacturing

3   Corporation, and Sanyo Energy USA Corporation,[6] as follows:



4                          *Sanyo Electric Co., Ltd.*

5

6

7   *Sanyo North America Corporation*                *Sanyo Manufacturing Corporation*

8   *Sanyo Energy USA Corporation*                   *Sanyo Fisher (USA) Corporation*

9    After the December 21, 2009 acquisition, Sanyo Electric Co., Ltd. and its subsidiaries,

10  including the remaining Sanyo Entities, were added to the "Panasonic Group" and became

11  "consolidated subsidiaries" of Panasonic Corp.[7]  On April 1, 2011, Panasonic Corp. acquired the

12  remaining 49.8% interest in Sanyo Electric Co., Ltd.[8]  The corporate relationship between

13  Panasonic Corp. and the Sanyo Entities therefore was as follows:

14

15                          *Panasonic Corp.*

16

17                    *Sanyo Electric Co., Ltd. (SEC)*

18

19

20  *Sanyo North America Corporation*                *Sanyo Manufacturing Corporation*

21  *Sanyo Energy USA Corporation*                   *Sanyo Fisher (USA) Corporation*

22

23

24  ---
    [6] (Messenger Decl. ¶ 7, Exs. F, G at 36-37, H at 35, I at 34, J at 35, K at 43, M at 53, N at 4, O at
25  59, P at 66, Q at 66, R at 1.)
    [7] (Messenger Decl. ¶¶ 8-9, Exs. S at 4, 22 n.1, 34, 53, 58, 68, T at 20 n.3, 54, U at 23 n.4, 58, V at
26  33, W at 51, X at 5, 11, 12, 16, 21, 30, 33, Y at 2 n.4, 11, 12, 17, 18, 31, 34, 35, 37, 38, Z at 2 n.4,
    11, 13, 18, 39, 41.)
27  [8] (*See* Docket No. 3014-2 at 9:21-25; Messenger Decl., Ex. A at [Panasonic Response to RFA No.
28  56], Ex. Y at 5, 12.)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Since December 2009, none of the Sanyo Entities and the Panasonic Defendants has ever initiated a lawsuit against each other.[9]

## IV.   ARGUMENT

### A.   The Standard On Summary Judgment

As previously stated by this Court, entry of summary judgment is only proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment should only be granted if the evidence would require a directed verdict for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  "A moving party without the ultimate burden of persuasion at trial -- usually, but not always, a defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id*.  "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Id*.

### B.   The Court Should Deny The Motion Because The Panasonic Defendants' Ownership Of The Sanyo Entities Establishes The Ownership/Control Exception To *Illinois Brick*

#### 1.   The Panasonic Defendants' Ownership Since December 21, 2009 Has Made It Unrealistic That Sanyo Would Sue

Defendants argue for a "relevant period rule" where evidence of ownership or control only matters if it existed during the Conspiracy Period.  (Mot. at 9:2-13:18.)  The Ninth Circuit, however, has never articulated a timing rule of any kind or "elevated the timing of control to the make-or-break factor" that Defendants advocate here. *See Costco (W.D. Wash.)*, 2014 U.S. Dist.

---

[9] (Messenger Decl., Ex. A [Response to Requests for Admission Nos. 57 & 58].)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    LEXIS 127727, at 21 ("But because no court has elevated the timing of control to the make-or-

2    break factor that Defendants advocate, this court will not do so either."). Indeed, Defendants fail

3    to provide any authority holding that ownership/control may *only* be measured during the relevant

4    period and rely instead on factually distinguishable cases. (*See infra* Section IV.C. at 9-12.)

5    Defendants' proposed rule would effectively immunize them from private antitrust enforcement

6    under the Sherman Act.

7            As first explained by the Ninth Circuit in *Royal Printing*, and confirmed most recently in

8    *ATM Fee*, the "indirect-purchaser rule" established by *Illinois Brick* does not prevent a plaintiff's

9    federal claim where it purchased a product containing a price-fixed component from a vendor that

10   had an ownership/control relationship with one or more conspirators. *ATM Fee*, 686 F.3d at 756;

11   *Royal Printing*, 621 F. 2d at 326-27. Otherwise, *Illinois Brick* "would eliminate the threat of

12   private enforcement" and "close off every avenue for private enforcement" where there is

13   ownership or control because the "co-conspirator parent will forbid its subsidiary or division to

14   bring a lawsuit...." *Royal Printing*, 621 F. 2d at 326, 326 n.7, 327; *see also In re Cathode Ray

15   Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857, 867 (N.D. Cal. 2012) (J. Conti) (discussing

16   *Royal Printing*'s rationale behind ownership/control exception to *Illinois Brick*).[10]

17           Thus, for purposes of the Motion, the central question for the Court is the one posed by

18   the Ninth Circuit in *ATM Fee*:  "whether, *because of control* between a direct purchaser and a

19   price fixer, there is no realistic possibility that the direct purchaser will sue the price fixer."

20   *Costco (W.D. Wash.)*, 2014 U.S. Dist. LEXIS 127727, at 21 (citing *ATM Fee*, 686 F.3d at 756).[11]

21   If so, an indirect purchaser may sue "when a conspiring seller owns or controls the direct

22   purchaser." *ATM Fee* 686 F.3d at 749 (finding "an indirect purchaser may sue if the direct

23   purchaser is a division or subsidiary of the price-fixing seller"). A less nuanced approach

24   focusing on a specific point in time would lead to results directly at odds with Ninth Circuit

25   authority where, as a result of a change in ownership, threat of private enforcement would be

---

26   [10] The Court previously has described this holding regarding the ownership/control exception as
     "law of the case." (*See* Docket No. 1856 at 5:5-7.)

27   [11] *See also Costco MDL*, 2012 U.S. Dist. LEXIS 183751, at 58-59 (citing *ATM Fee*, 686 F. 3d at
28   756; *Royal Printing*, 621 F.3d at 326 n.7).

1    eliminated. *See Royal Printing*, 621 F. 2d at 327 (finding it would be "intolerable" to "close off

2    every avenue for private enforcement of the antitrust laws" where ownership/control prevents any

3    lawsuit by direct purchasers); *Costco (W.D. Wash.)*, 2014 U.S. Dist. LEXIS 127727, at 21-23

4    (finding "date-of-suit rule" lacks nuance and could allow price fixers to escape civil liability).

5    Moreover, "[a]lthough Ninth Circuit authority is silent as to a catchall rule for the timing of

6    control, it is explicit that no price fixer should be allowed to evade civil liability by manipulating

7    its corporate umbrella." *Costco (W.D. Wash.)*, 2014 U.S. Dist. LEXIS 127727, at 22-23.

8          Here, as soon as the Panasonic Defendants acquired 50.2% of Sanyo Electric Co., Ltd. on

9    December 21, 2009, there no longer was a realistic possibility that any of the Sanyo Entities

10   would bring suit against any of them. *See ATM Fee*, 686 F.3d at 756 ("*Freeman* outlines that,

11   whether a realistic possibility of suit exists, depends on the existence of ownership or control

12   between the direct purchaser and the seller."). Thus, under the specific facts of this case, the

13   Panasonic Defendants' acquisition of Sanyo Electric Co., Ltd. resolves the "central question" for

14   the Court in Plaintiffs' favor.

15         Significantly, Judge Illston addressed a factually similar situation in the LCD litigation

16   (the "LCD MDL").[12]  Defendants argued, among other things, that even proof of former

17   ownership was irrelevant because only control over current ligation decisions can satisfy the

18   ownership/control exception.[13]  As Plaintiffs do here, Costco argued that ownership/control at any

19   time is sufficient.[14]  In denying summary judgment with respect to Panasonic, Judge Illston relied,

20   in part, on evidence of its majority ownership of IPS Alpha Technology Ltd. ("IPS Alpha") after

21   the relevant period[15] to conclude that there was sufficient evidence of ownership/control to create

22   a genuine issue of material fact based on lack of standing under *Illinois Brick*:

[12] (United States District Court for the Northern District of California, No. M 07-1827 SI, MDL No. 1827.)

[13] (*See* Messenger Decl., Ex. B [Docket No. 5979 at 8:7-20 (Case No. 3:07-md-01827-SI (N.D. Cal)].)

[14] (*See* Messenger Decl., Exs. C [Docket No. 6370 at 17:14-21:8 (Case No. 3:07-md-01827-SI (N.D. Cal)], D [Docket No. 498 at 11:33-37, 12:1-44 (Case No. 2:13-cv-01207-RAJ (W.D. Wash.)].)

[15] In the LCD MDL, the "relevant period" ran from "at least January 1, 1996 until approximately December 11, 2006." (*See* Messenger Decl., Ex. E [Docket No. 7366 ¶ 1 (Case No. 3:07-md-

Master Case No. 3:07-cv-05944-SC          - 6 -          OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO CLAIMS BASED ON PURCHASES FROM SANYO

60871566

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1

> From 2004, when IPS Alpha was formed as a joint venture, through the
> end of the conspiracy, and until 2009, Panasonic owned less than a
> 50% share of IPS Alpha.  However, in 2009, Panasonic bought out
> other shareholders to acquire a 92% share in IPS Alpha, and as of this
> time, owned and controlled IPS Alpha.  Based on this ownership and
> control, Panasonic was in a position to dictate whether or not IPS
> Alpha could bring a lawsuit.

2

3

4

5   *Costco (N.D. Cal.)*, 2012 U.S. Dist. LEXIS 183751, 58-59 (internal citations omitted).

6      Similarly, the Panasonic Defendants here did not purchase a majority ownership interest

7   in Sanyo Electric Co., Ltd. until December 21, 2009, and later acquired the remaining 49.8%

8   interest on April 1, 2011.  And as of December 21, 2009, the remaining Sanyo Entities became

9   consolidated subsidiaries of Panasonic Corp.  Based on that ownership interest, the Panasonic

10  Defendants were in a position to dictate whether or not the Sanyo Entities could bring a lawsuit.

11  Thus, just as Judge Illston did in *Costco (N.D. Cal.)*, the Court should conclude that, viewing the

12  evidence in the light most favorable to Plaintiffs, there is sufficient evidence of ownership to

13  create a genuine issue of material fact preventing summary judgment.  *See Costco (N.D. Cal.)*,

14  2012 U.S. Dist. LEXIS 183751, 59-60; *ATM Fee* 686 F.3d at 749 (finding "an indirect purchaser

15  may sue if the direct purchaser is a division or subsidiary of the price-fixing seller").

16      Finally, Defendants argue that while the first lawsuits in this MDL were filed in

17  November 2007, more than two years later Sanyo still had not filed suit.  (Mot. at 5:3-4, 12:21-

18  13:2.)  There could be any number of reasons why Sanyo elected not to file suit after November

19  2007 and before the Panasonic Defendants acquired a majority interest.  But such speculation is

20  irrelevant because, as of December 21, 2009, there no longer was a realistic possibility that Sanyo

21  would file suit.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d at 870

22  (rejecting interpretation of *Royal Printing* that "would deny antitrust standing to any private

23  plaintiff so long as the antitrust defendant could point to some other person who also could sue"

24  because "[t]hat result cannot be squared with the goal of vigorous private antitrust enforcement,"

25  which is "a policy objective which both *Illinois Brick* and *Royal Printing* explicitly seek to

26  vindicate").  Consequently, the Panasonic Defendants effectively eliminated the threat of private

27

28  01827-SI (N.D. Cal).)].)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Master Case No. 3:07-cv-05944-SC                   - 7 -                 OPPOSITION TO MOTION FOR PARTIAL SUMMARY
                                                                         JUDGMENT WITH RESPECT TO CLAIMS BASED ON
60871566                                                                 PURCHASES FROM SANYO

1  antitrust enforcement for purchases made by Sanyo. *See Royal Printing*, 621 F. 2d at 326, 326

2  n.7, 327.  Thus, sufficient evidence of ownership exists to create a genuine issue of material fact

3  whether the Plaintiffs possess standing because they satisfy the ownership/control exception to

4  *Illinois Brick*.

5        **2.      Defendants' Proposed "Relevant Period Rule" Is Squarely At Odds**

6                **With *Royal Printing* and *ATM Fee***

7        In *Royal Printing*, the Ninth Circuit explained that "[t]he threat of private treble-damages

8  suits is vital to the enforcement of the antitrust laws" and therefore accepted the risk of multiple

9  recovery in order to eliminate the risk of effectively immunizing transactions from private

10  antitrust liability.  *Id.* at 325-26; *see also Perma Life Mufflers, Inc. v. International Parts Corp.*,

11  392 U.S. 134, 139 (1968) ("the purposes of the antitrust laws are best served by insuring that the

12  private action will be an ever-present threat to deter any one contemplating business behavior in

13  violation of the antitrust laws").  This goal is only achieved by considering the entirety of the

14  parties' relationship from the beginning of the conspiracy through the present instead of artificial

15  and arbitrary time frames.  This prevents conspirators from evading liability by achieving

16  ownership/control at some other point in time that allows them to dictate whether a lawsuit is

17  filed.

18        For example, under Defendants' "relevant period rule," a conspirator could purchase a

19  majority ownership interest in multiple direct purchasers shortly after the alleged relevant period

20  and successfully evade any liability based on *Illinois Brick* for sales to those direct purchasers.

21  That is clearly not the law in the Ninth Circuit according to *Royal Printing* and *ATM Fee*.  *See*

22  *Royal Printing*, 621 F. 2d at 326, 326 n.7, 327; *ATM Fee*, 686 F.3d at 756.

23        Notably, Defendants previously argued for an entirely different artificial time frame in

24  *Costco (W.D. Wash.)*.  There, Defendants argued for a "date-of-suit-rule" because Philips "owned

25  a successively decreasing minority interest until March 2009, and thereafter owned no portion of

26  LG Display" at the time the initial lawsuit was filed.  *Costco (W.D. Wash.)*, 2014 U.S. Dist.

27  LEXIS 127727, at 10.  This arbitrary time frame was similarly designed to avoid Sherman Act

28  liability.  The district court rejected the artificial time frame of the "date-of-suit-rule" because it

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO MOTION FOR PARTIAL SUMMARY
JUDGMENT WITH RESPECT TO CLAIMS BASED ON
PURCHASES FROM SANYO

1    "ignores any nuance," finding "[a]lthough Ninth Circuit authority is silent as to a catchall rule for

2    the timing of control, it is explicit that no price fixer should be allowed to evade civil liability by

3    manipulating its corporate umbrella." *Costco (W.D. Wash.)*, 2014 U.S. Dist. LEXIS 127727, at

4    22-23.

5            Defendants' "relevant period rule" is similarly flawed because it arbitrarily elevates the

6    importance of certain points in time over others and dictates that price-fixers can avoid liability so

7    long as they wait until after the relevant period to achieve ownership/control. *See id.*, 2014 U.S.

8    Dist. LEXIS 127727, at 24 n.4 ("The logic underlying Defendants' date-of-suit rule dictates that

9    whether control changes before a plaintiff sues or after, a price-fixer can avoid liability to indirect

10   purchasers so long as there is any period of time where a direct purchaser could have sued.  The

11   date of suit is no more significant than any other day.").  In short, Defendants' arbitrary and

12   artificial proposed "relevant period rule" is contrary to the fundamental policy underlying *Royal*

13   *Printing* and *ATM Fee* and should be rejected.

14           C.      **Defendants' Authorities In Support Of The "Relevant Period Rule" Are**

15                   **Inapposite**

16           Defendants' citation to *Freeman*, 322 F.3d at 1146, and *Royal Printing*, 621 F.2d at 324-

17   25, does not compel a different conclusion.  (Mot. at 9:22-23.)  Defendants argue that these cases

18   support their "relevant period rule" because they involved corporate relationships that existed at

19   the time of the relevant sales.  Neither case comes even remotely close to holding what

20   Defendants assert. *See Freeman*, 322 F.3d at 1140-41; *Royal Printing*, 621 F.2d at 324.

21           For example, in *Royal Printing*, the Ninth Circuit said nothing about the timing of

22   ownership/control and held "that Illinois Brick does not bar an indirect purchaser's suit where the

23   direct purchaser is a division or subsidiary of a co-conspirator." *Id.* at 326; *Costco (W.D. Wash.)*,

24   2014 U.S. Dist. LEXIS 127727, at 22-23 ("Although Ninth Circuit authority is silent as to a

25   catchall rule for the timing of control, it is explicit that no price fixer should be allowed to evade

26   civil liability by manipulating its corporate umbrella.").  Moreover, as set forth in detail above

27   and in *Costco (W.D. Wash.)*, both *Freeman* and *Royal Printing* support the conclusion that the

28   relevant inquiry is "whether, *because of control* between a direct purchaser and a price fixer, there

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   is no realistic possibility that the direct purchaser will sue the price fixer." *Costco (W.D. Wash.)*,

2   2014 U.S. Dist. LEXIS 127727, at 16-17, 21-22 (citing *ATM Fee*, 686 F.3d at 756; *Royal*

3   *Printing*, 621 F.3d at 326-27; *Freeman*, 322 F.3d at 1146).[16]

4          The other cases relied on by Defendants to support their "relevant period rule" fail to

5   move the needle.  For example, Defendants cite *In re Mercedes-Benz Antitrust Litig.*, 225 F.R.D.

6   498, 503, 506–07 (D.N.J. 2005), for the proposition that "evidence of ownership or control during

7   the relevant period is 'critical' to whether the 'ownership or control' exception applies to the

8   *Illinois Brick* rule." (Mot. at 9:24-26.)  Defendants again greatly overreach.  Significantly, in

9   *Mercedez-Benz*, the district court only addressed the ownership/control exception to *Illinois Brick*

10  in the context of resolving a discovery dispute:  whether to grant a motion to strike two affidavits

11  submitted in support of a motion for summary judgment pursuant to Federal Rules of Civil

12  Procedure 26 and 37.  *Id.* at 501-05.  It appears from the decision that:  (a) defendants' motion for

13  summary judgment argued, inter alia, that plaintiff lacked standing under *Illinois Brick*; and (b)

14  defendants submitted an affidavit describing their ownership relationship during the class period.

15  In order to resolve the discovery dispute, the district court was required "to consider the

16  importance of the evidence to the proffering party's case."  *Id.* at 507.  The district court

17  described the affidavit addressing the ownership relationship as "critical" to whether the

18  ownership/control exception to *Illinois Brick* applied.  *Id.* at 507-08.  But that does not mean, as

19  Defendants imply, that the district court concluded:  (a) *only* evidence of ownership or control

20  during the "relevant period" is critical; or (b) that evidence of control outside the "relevant

21  period" is *not* critical or event relevant.[17]  Quite simply, the district court did not, as Defendants

22  assert, tie "the relevant time-period for ownership or control to the class period" because it was

23  not at issue.  (Mot. at 12:10-11.)

---

24  [16] *See also ATM Fee*, 686 F.3d at 756 ("*Freeman* outlines that, whether a realistic possibility of
25  suit exists, depends on the existence of ownership or control between the direct purchaser and the
    seller.").

26  [17] Indeed, while *Mercedez-Benz* has been cited nineteen times, not a single court has cited it for
    the proposition that Defendants have advanced here.  Review of these decisions demonstrates that
27  *Mercedez-Benz* is a discovery decision that does nothing more than provides the appropriate
    standard under Rule 37 in the Third Circuit for determining whether a failure to disclose the
28  identity of a witness was harmless.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    Other cases are also inapposite and do not stand for the proposition for which they are

2    cited by Defendants.  Insofar as *Sun Microsystems, Inc.* found that "the ownership and control

3    exception has been construed to encompass relationships involving such functional economic or

4    other unity between the direct purchaser and either the defendant or the indirect purchaser, that

5    there effectively has been only one sale," Defendants are correct.  (Mot. at 11:10-13.)

6    Defendants, however, attempt to transform this characterization of the ownership/control

7    exception into a rule that "functional economic unity" must exist at the time of the "relevant

8    sales." (Mot. at 11:27-12-2.)   But neither *Sun Microsystems*, nor any of the other cases cited by

9    Defendants, place a timing restriction on when the functional unity of interest must exist.  (Mot.

10   at 11:12-27.)

11       For example, *Sun Microsystems* discusses only "the types of facts that would satisfy the

12   control exception" and whether a control finding may be based on evidence of control over the

13   procurement of price-fixed items, as opposed to "whether [control] is exercised in connection

14   with structural day to day control of an entity."  *See Id.* at 1180-82 (finding facts that have been

15   found to satisfy control include "'interlocking directorates, minority stock ownership, loan

16   agreements that subject the wholesalers to the manufacturers' operating control, trust agreements,

17   or other modes of control separate from ownership of a majority of the wholesalers' common

18   stock.'").  And, in any event, Defendants' interpretation of *Sun Microsystems* cannot be

19   reconciled with *ATM Fee* or *Royal Printing*.

20       Defendants' reliance on *Proview Technology Inc., et al. v. AU Optronics Corp. (In re

21   TFT-LCD (Flat Panel) Antitrust Litig.)*, 2013 U.S. Dist. LEXIS 39606 (N.D. Cal. Mar. 20, 2013),

22   *P.C. Richard & Son Long Island Corp. v. AU Optronics Corp. (In re TFT-LCD (Flat Panel)

23   Antitrust Litig.)*, 2014 U.S. Dist. LEXIS 125356 (N.D. Cal. Sept. 4, 2014), and *Jewish Hospital

24   Ass'n v. Stewart Mechanical Enterprises, Inc.*, 628 F.2d 971 (6th Cir. 1980), suffers from the

25   same flaw.  There simply is no discussion of any time limitations whatsoever, let alone the one

26   argued by Defendants here.  *See Jewish Hospital*, 628 F.2d at 975 (rejecting plaintiff's control

27   arguments because they did not allege functional economic unity sufficient to satisfy the

28   ownership/control exception); *P.C. Richard*, 2014 U.S. Dist. LEXIS 125356, at 79-80, 82

---

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  (finding no evidence of control where stock ownership was de minimis and defendants did not

2  "exercise such control over the entity that they should properly be considered direct purchasers");

3  *Proview Technology*, 2013 U.S. Dist. LEXIS 39606, at 49 (finding plaintiffs' allegations of

4  agency failed to adequately allege facts to satisfy control exception).

5          **D.**     **The Absence Of Litigation Between Sanyo And The Panasonic Defendants**

6                 **Establishes That The Panasonic Defendants' Ownership Of Sanyo Has**

7                 **Eliminated Any Realistic Possibility Of Private Antitrust Enforcement By**

8                 **Sanyo**

9          Defendants incorrectly assert that "the absence of litigation between the Panasonic

10  Defendants and Sanyo proves nothing."  (Mot. at 12:11-12.)  This assertion misstates *Freeman*

11  and *ATM Fee*.  While *Freeman* did not create a new *Illinois Brick* exception based solely on lack

12  of realistic possibility of suit, the Ninth Circuit "found no realistic possibility of suit, because the

13  association owned and controlled the direct purchaser."  *ATM Fee*, 686 F.3d at 741 (finding

14  *Freeman* relied on evidence of ownership and control to find standing); *Costco (W.D. Wash.)*,

15  2014 U.S. Dist. LEXIS 127727, at 17 (finding *Freeman* articulated a different way of expressing

16  the ownership/control exception that included lack of possibility of suit).  Thus, the absence of

17  litigation since December 2009, combined with evidence of the Panasonic Defendants' ownership

18  of Sanyo since December 2009, amply supports the application of the ownership/control

19  exception to *Illinois Brick* here.

20  ///

21  ///

22  ///

23

24

25

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1

## V.   **CONCLUSION**

2      For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants'

3  motion for partial summary judgment in all respects.

4

5  DATED:  December 23, 2014          /s/  *David Martinez*
                                      _____

6                                     Roman M. Silberfeld
                                      Bernice Conn
7                                     David Martinez
                                      Lucas A. Messenger
8                                     ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
                                      2049 Century Park East, Suite 3400
9                                     Los Angeles, CA  90067-3208
                                      Telephone:  (310) 552-0130
10                                    Facsimile:   (310) 229-5800
                                      Email:  rmsilberfeld@rkmc.com
11                                            bconn@rkmc.com
                                              dmartinez@rkmc.com
12                                            lamessenger@rkmc.com

13                                    Elliot S. Kaplan
                                      K. Craig Wildfang
14                                    Laura E. Nelson
                                      ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
15                                    800 LaSalle Avenue
                                      2800 LaSalle Plaza
16                                    Minneapolis, MN 55402
                                      Telephone:  (612) 349-8500
17                                    Facsimile:  (612) 339-4181
                                      Email:  eskaplan@rkmc.com
18                                            kcwildfang@rkmc.com
                                              lenelson@rkmc.com
19
                                      *Counsel For Plaintiffs Best Buy Co., Inc., Best Buy*
20                                    *Purchasing LLC, Best Buy Enterprise Services, Inc.,*
                                      *Best Buy Stores, L.P., and Bestbuy.com, L.L.C., and*
21                                    *on behalf of the Direct Action Plaintiffs*

22                                    /s/  *Cori G. Moore*
                                      _____

23                                    David J. Burman (*pro hac vice*)
                                      Cori G. Moore (*pro hac vice*)
24                                    Eric J. Weiss (*pro hac vice*)
                                      Nicholas H. Hesterberg (*pro hac vice*)
25                                    Steven D. Merriman (*pro hac vice*)
                                      PERKINS COIE LLP
26                                    1201 Third Avenue, Suite 4900
                                      Seattle, WA 98101-3099
27                                    Telephone:  (206)359-8000
                                      Facsimile:  (206)359-9000
28                                    Email:  DBurman@perkinscoie.com

CGMoore@perkinscoie.com
EWeiss@perkinscoie.com
NHesterberg@perkinscoie.com
SMerriman@perkinscoie.com

Joren Bass, Bar No. 208143
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131
Telephone: (415)344-7120
Facsimile: (415)344-7320
Email: JBass@perkinscoie.com

*Counsel for Plaintiff Costco Wholesale Corporation*


/s/ *Philip J. Iovieno*_____

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665
Email:   piovieno@bsfllp.com
         anardacci@bsfllp.com

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
Email: wisaacson@bsfllp.com

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: ssinger@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs and
Attorneys for Plaintiffs Electrograph Systems, Inc.,
Electrograph Technologies, Corp., Office Depot, Inc.,
Compucom Systems, Inc., Interbond Corporation of
America, P.C. Richard & Son Long Island
Corporation, MARTA Cooperative of America, Inc.,
ABC Appliance, Inc., Schultze Agency Services LLC
on behalf of Tweeter Opco, LLC and Tweeter Newco,
LLC, and Tech Data Corporation and Tech Data
Product Management, Inc.*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

/s/ *William J. Blechman*

Richard Alan Arnold (*pro hac vice*)
William J. Blechman (*pro hac vice*)
Kevin J. Murray (*pro hac vice*)
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel: 305-373-1000
Fax: 305-372-1861
Email:  rarnold@knpa.com
          wblechman@knpa.com
          kmurray@knpa.com

*Counsel for Plaintiff Sears, Roebuck and Co. and Kmart Corp.*

/s/  *Kenneth S. Marks*

Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email: kmarks@susmangodfrey.com
          jross@susmangodfrey.com
          jcarter@susmangodfrey.com
          dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883
Email:  pfolse@susmangodfrey.com
          rblack@susmangodfrey.com
          jconnors@susmangodfrey.com

*Counsel for Plaintiff Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

60871566

- 15 -

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO CLAIMS BASED ON PURCHASES FROM SANYO

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES