Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 204-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
**TAYLOR & COMPANY LAW OFFICES, LLP**
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone:  (415) 788-8200
Facsimile:  (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and*
*Sharp Electronics Manufacturing Company of America, Inc.*

[additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-cv-5944 SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| ALL INDIRECT PURCHASER ACTIONS | **PLAINTIFFS' OPPOSITION TO THE TOSHIBA DEFENDANTS' MOTION FOR SUMMARY JUDGMENT CONCERNING WITHDRAWAL** |
| *Electrograph Systems, Inc. et al. v. Hitachi, Ltd., et al.*, No. 11-cv-01656; | |
| *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502; | Date:   February 6, 2015 |
| *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513; | Time:   10:00 a.m. Place:   Courtroom 1, 17th floor Judge:   Hon. Samuel Conti |
| *Target Corp., et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514; | **[REDACTED PUBLIC VERSION]** |
| *Sears, Roebuck and Co., et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514-SC; | |
| *Interbond Corporation of America v. Hitachi, et al.*, No. 11-cv-06276; | |

1

2
*Office Depot, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06276;

3
*Sharp Elecs. Corp. v. Hitachi, Ltd.*, No. 13-cv-01173;

4

5
*CompuCom Systems, Inc. v. Hitachi, Ltd. et al.*, No. 11-cv-06396;

6
*Costco Wholesale Corp. v. Hitachi, Ltd., et al.*, No. 11-cv-06397;

7

8
*P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02648;

9
*Schultze Agency Services, LLC v. Hitachi, Ltd., et al.*, No. 12-cv-02649;

10

11
*Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, No. 13-cv-00157;

12
*ViewSonic Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 3:14-cv-02510

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## TABLE OF CONTENTS

**Page**

3

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

4

COUNTER-STATEMENT OF THE ISSUES ...................................................................... 1

5

PRELIMINARY STATEMENT ....................................................................................... 1

6

COUNTER-STATEMENT OF MATERIAL FACTS .............................................................. 4

7

A.    Toshiba's Participation in the CRT Conspiracy ........................................... 4

8

B.    Toshiba's Formation and Control of MTPD with Matsushita ......................... 6

9

ARGUMENT ........................................................................................................... 12

10

I.    LEGAL STANDARD ......................................................................................... 12

11

II.   TOSHIBA HAS FAILED TO DEMONSTRATE AS A MATTER OF
      LAW THAT IT WITHDREW FROM THE CRT CONSPIRACY ................................. 12

12

13          A.    Toshiba Bears a Heavy Burden of Establishing Withdrawal, Which
                  Is a Fact-Intensive Inquiry Generally Not Suitable for Summary
14                Judgment ........................................................................................ 12

15          B.    The Jury Must Resolve Material Factual Issues To Determine
                  Whether Toshiba's Formation of MTPD Constitutes a Withdrawal
16                from the CRT Conspiracy .................................................................. 13

17                1.    Toshiba's Continued Ownership Stake and Control Over
                        MTPD Precludes a Finding of Withdrawal As a Matter of
18                      Law .................................................................................... 14

19                2.    Toshiba Did Not Adequately Communicate a Withdrawal to
                        Its Co-Conspirators ............................................................. 18

20

III.  BECAUSE TOSHIBA AND ITS CO-CONSPIRATORS

21    FRAUDULENTLY CONCEALED THE CRT CONSPIRACY, THERE IS
      A MATERIAL FACTUAL ISSUE AS TO WHETHER PLAINTIFFS'
22    CLAIMS AGAINST TOSHIBA ARE BARRED BY THE STATUTE OF
      LIMITATIONS ................................................................................................. 19

23

IV.   SUMMARY JUDGMENT ON THE REMAINING STATE LAW

24    CLAIMS IS LIKEWISE NOT WARRANTED .......................................................... 22

25    CONCLUSION ................................................................................................. 22

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).................................................................................12

*United States v. Antar*,
  53 F.3d 568 (3d Cir. 1995)...............................................................12, 14

*In re Catfish Antitrust Litig.*,
  908 F. Supp. 400 (N.D. Miss. 1995).................................................13

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. C-07-5944 SC, 2014 WL 1091589 (N.D. Cal. Mar. 13, 2014)..........................20

*Conmar Corp. v. Mitsui & Co. (USA), Inc.*,
  858 F.2d 499 (9th Cir. 1988)...............................................19, 20, 21

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
  782 F. Supp. 487 (C.D. Cal. 1991)....................................................20

*United States v. Eisen*,
  974 F.2d 246 (2d Cir. 1992)...............................................................15, 17

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977).............................................................................16

*Kirsch Co. v. Bliss & Laughlin Indus., Inc.*,
  495 F. Supp. 488 (W.D. Mich. 1980) ..................................................9

*Law v. Nat'l Collegiate Athletic Ass'n*,
  5 F. Supp. 2d 921 (D. Kan. 1998)........................................................13

*In re Lithium Ion Batteries Antitrust Litig.*,
  No. 13-MD-2420 YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014)....................16

*United States v. Lothian*,
  976 F.2d 1257 (9th Cir. 1992)..........................................................14, 15

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
  198 F.3d 823 (11th Cir. 1999), *amended*, 211 F.3d 1224 (11th Cir. 2000)........................19, 20

*Mt. Hood Stages, Inc. v. Greyhound Corp.*,
  555 F.2d 687 (9th Cir. 1977)..............................................................20

*United States v. Nerlinger*,
  862 F.2d 967 (2d Cir. 1988).................................................................15

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
  210 F.3d 1099 (9th Cir. 2000)...........................................................12

*In re Potash Antitrust Litig.*,
   954 F. Supp. 1334 (D. Minn. 1997) ...................................................................................19

*Reisman v. United States*,
   409 F.2d 789 (9th Cir. 1969) .................................................................................14, 16, 17

*United States v. Sax*,
   39 F.3d 1380 (7th Cir. 1994) ...............................................................................................17

*Shakur v. Schriro*,
   514 F.3d 878 (9th Cir. 2008) ...............................................................................................13

*Smith v. United States*,
   133 S. Ct. 714 (2013) ....................................................................................................12, 13

*Spanish Broad. Sys. of Florida, Inc. v. Clear Channel Commc'ns, Inc.*,
   376 F.3d 1065 (11th Cir. 2004) ...........................................................................................16

*United States v. Steele*,
   685 F.2d 793 (3d Cir. 1982) ................................................................................................15

*In re TFT-LCD Antitrust Litig.*,
   Nos. M 07-1827 SI, 10-1064 SI, 2012 WL 6000154 (N.D. Cal. Nov. 30, 2012) ....................20

*In re TFT-LCD Antitrust Litig.*,
   Nos. M 07-1827 SI, 10-4572 SI, 2012 WL 6126144 (N.D. Cal. Dec. 10, 2012) ....................20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   820 F. Supp. 2d 1055 (N.D. Cal. 2011) ...............................................................................13

*United States v. U.S. Gypsum Co.*,
   438 U.S. 422 (1978) .....................................................................................................13, 18

**OTHER AUTHORITIES**

Brad E. Muniz & Elizabeth Harper, *2012 U.S. Master GAAP Guide* 3061 (2011).........................9

Fed. R. Civ. P. 56(a) ........................................................................................................12

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2      The Direct Action Plaintiffs and Indirect Purchaser Plaintiffs ("plaintiffs") hereby

3   respectfully submit this Opposition to the Toshiba Defendants' Motion for Summary Judgment

4   Concerning Withdrawal ("Motion"), as follows:

5   **COUNTER-STATEMENT OF THE ISSUES**

6   1.    Whether Toshiba demonstrated as a matter of law that it withdrew from the CRT

7         conspiracy by collaborating with one of its co-conspirators to form a joint venture that

8         consolidated their respective CRT businesses.

9   2.    Notwithstanding the substantial evidence that Toshiba and its co-conspirators fraudulently

10        concealed their participation in the CRT conspiracy, whether plaintiffs' claims are time-

11        barred because they were filed more than four years after Toshiba formed a joint venture

12        with one of its co-conspirators.

13  **PRELIMINARY STATEMENT**

14     Toshiba seeks to avoid liability for years of unlawful price-fixing and information

15  sharing by asserting that it withdrew from the Cathode Ray Tube ("CRT") conspiracy by forming

16  the Matsushita Toshiba Picture Display Co., Ltd. ("MTPD") venture in March 2003, and that this

17  event renders plaintiffs' claims barred by the four-year statute of limitations.  But in order to

18  establish that plaintiffs' claims are barred as a matter of law, Toshiba must show that there are no

19  genuine factual issues as to whether (i) restructuring its business into a CRT joint venture with a

20  co-conspirator constitutes a legally cognizable withdrawal; and (ii) the limitations period began to

21  run upon MTPD's formation despite Toshiba's meticulous efforts to conceal the CRT conspiracy

22  from the plaintiffs.  Courts have routinely held that these issues are unsuitable for summary

23  judgment, and plaintiffs respectfully submit that they are here as well.

24     First, to prove withdrawal, Toshiba must establish that it (i) engaged in affirmative

25  acts to completely and permanently disassociate itself from the conspiracy and (ii) communicated

26  to its co-conspirators its withdrawal from the conspiracy.  But Toshiba fails to show that it took

27  "definite, decisive and positive" steps to make a "clean and permanent break" from the CRT

28

1  conspiracy, or that it severed all ties to the business and thus deprived the remaining co-

2  conspirators of the services that it provided to the conspiracy.

3            In fact, Toshiba was not withdrawing from the conspiracy that had dominated its

4  CRT business for years; rather, it was merely restructuring its involvement to work even closer

5  with one of its co-conspirators.  Toshiba's public statements in 2003 make clear that it and one of

6  its co-conspirators, Matsushita, formed the MTPD joint venture to "consolidate the CRT

7  business" and to provide a "revitalization." ███████████████████████████████

8  ████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████

10 ████████████████████████████████████████████████████

11 ████████████████████████

12           Toshiba cannot credibly contend that it severed all ties with the CRT conspiracy

13 merely by restructuring a business that continued to participate in the scheme.  Although Toshiba

14 argues that it did not have day-to-day control over MTPD's operations, merely ceding day-to-day

15 control in a conspiring entity is insufficient to establish withdrawal.  Moreover, the record

16 evidence shows substantial involvement by Toshiba to ensure that MTPD was acting in its

17 interest. █████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████

21 ██████████████████████████████████████████████████

22 ██████████████████████████████████████████████████

23 ████████████████████████

24           Second, Toshiba's public statements regarding the formation of MTPD only raise

25 further material questions of fact.  The announcements to the industry hardly "mark Toshiba's

26 exit from the CRT business" – if anything, they reflect Toshiba's restructured CRT business

27 model that enabled it to coordinate even more effectively with one of its co-conspirators.  There is

28 also no evidence that Toshiba ever disavowed to its co-conspirators its continued participation in

1   the CRT conspiracy. ███████████████████████████

2   ████████████████████████████████████████ On this

3   record, the jury can readily conclude that Toshiba's announcement of a joint venture in which it

4   retained a 35% interest and multiple board seats does not satisfy the withdrawal standard.

5          Third, Toshiba has no legal basis to assert that the limitations period began to run

6   when MTPD was established in 2003.  There is substantial evidence that Toshiba and the other

7   defendants took affirmative steps to conceal the conspiracy.  This alone creates a question of

8   material fact that defeats summary judgment.

9          Absent extraordinary circumstances, the issues of withdrawal and fraudulent

10  concealment are purely fact questions that must be resolved by the jury.  Here, in view of

11  Toshiba's ongoing multi-faceted role in the MTPD joint venture that continued to engage in

12  unlawful conspiratorial conduct, and the wealth of evidence regarding secret meetings and

13  destroyed documents, there can be no question that Toshiba has failed to satisfy its very high

14  burden of demonstrating that it is entitled to summary judgment.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNTER-STATEMENT OF MATERIAL FACTS

**A.      Toshiba's Participation in the CRT Conspiracy**

Toshiba Corporation is a Japanese company, which through its affiliated companies manufactured and sold CRTs globally, including in the United States.  It maintained several CRT production facilities worldwide, ███████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

For purposes of its motion, Toshiba does not deny that prior to 2003 it participated in a worldwide anticompetitive conspiracy to share information and/or fix, coordinate and stabilize the prices of CRTs in the United States. ███████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

---

[1] True and correct copies of documents in support of plaintiffs' opposition brief will be attached to the accompanying Declaration of Gary R. Carney and denoted as "Ex. ___, [bates number]." Excerpts of deposition transcripts will also be attached to the Carney Declaration and denoted as "Ex. ___, [name] Dep. [volume], [Page:line]."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18        Throughout this period, Toshiba and its co-conspirators took purposeful steps to

19   conceal their joint activity.

20

21

22

23

24

25

26

27

28

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 █████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6 ████████████████████████████████

7        Nor were Toshiba's conspiratorial activities limited to Asia; they directly impacted

8 its sales of CRTs in the United States. █████████████████████████████

9 ████████████████████████████████████████████████

10 ████████████████████████████████████████████

11 █████████████████████████████████████████████████

12 █████████████████████████████████████████████████

13 ██████████████████████████████████████████████

14 ████████████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 █████████████████████████████████████████████████

18 ██████████████████

19 **B.**     **Toshiba's Formation and Control of MTPD with Matsushita**

20        In 2003, faced with an increasingly difficult market for CRTs, Toshiba

21 strategically restructured the bulk of its CRT business into the MTPD joint venture. ██████████

22 ████████████████████████████████████

23 ███████████████████████████████████████

24 ███████████████  At bottom, this simply formalized the coordination between Toshiba and

25 ──────────────────────

26 ████████████████████████████████████████████████

27 ████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████

1   Matsushita, one of Toshiba's co-conspirators in the CRT price-fixing consortium, and confirmed

2   the absence of competition.  In joining forces with Matsushita, Toshiba did not "divest" itself of

3   its CRT business.  Rather, as is demonstrated by the very evidence Toshiba offers in support of its

4   motion, it created the MTPD joint venture to make "optimum use of the synergies and efficiency

5   enhancement expected from unification" and "bring[] together the product development

6   capabilities and manufacturing technologies of Matsushita and Toshiba" to "withstand the

7   competition and assume a leading position in the global CRT market."  (Lau Decl. Ex. A, at 1.)



24              Toshiba's public announcement of its combination with Matsushita was consistent

25   with its internal communications.  Toshiba did not publicly announce that it was exiting the CRT

26   business.  Instead, it informed the public that Toshiba and Matsushita were "consolidating their

1  cathode ray tube (CRT) business into a single joint venture company." (Lau Decl. Ex. A, at 1.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                                              Toshiba

accounted for its interest in MTPD using the equity method of accounting (*see* Lau Decl. Ex. K,

at 44), which corporations use when they exercise substantial control over the subsidiary entity.[5]



Lau Decl.

Ex. K, at 44 (listing MTPD in Toshiba annual report section titled "Investments in and Advances

to Affiliates").)

[5] *See*, *e.g.*, Ex. 35, Brad E. Muniz & Elizabeth Harper, *2012 U.S. Master GAAP Guide* 3061
(2011) ("[I]f an investor company owns 20% or more of the voting stock . . . of the investee
company, the investment qualifies for equity method accounting because the presumption is that
the investor company can exert significant influence over the operating or financial policies of the
investee."); *Kirsch Co. v. Bliss & Laughlin Indus., Inc.*, 495 F. Supp. 488, 504 (W.D. Mich.
1980).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18        Although Toshiba contends that MTPD was not profitable, Toshiba benefitted

19   from its involvement in MTPD in a variety of ways.  Initially, Toshiba was able to post a gain of

20   $52,242,000 as a result of the joint venture's formation.  (Lau Decl. Ex. K, at 54.)

21

22

23                                                                              Moreover,

24   as a shareholder in MTPD, Toshiba stood to profit should its investment in MTPD succeed.

25

26

27

28

1   Clearly, Toshiba *expected* to profit from its joint venture with co-conspirator Matsushita. ███

2   ████████████████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████████

5                                                **ARGUMENT**

6   **I.      LEGAL STANDARD**

7               Summary judgment is only proper if Toshiba "shows that there is no genuine

8   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

9   Civ. P. 56(a).  Toshiba has both the initial burden of production and the ultimate burden of

10  persuasion on a motion for summary judgment.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210

11  F.3d 1099, 1102 (9th Cir. 2000).  To carry its production burden, Toshiba must "produce

12  evidence negating an essential element of [the plaintiffs'] claim or defense or show that [the

13  plaintiffs do] not have enough evidence of an essential element to carry [their] ultimate burden of

14  persuasion at trial."  *Id.*  For its ultimate burden of persuasion, Toshiba  must establish "that there

15  is no genuine issue of material fact."  *Id.* In determining whether a genuine issue of material fact

16  exists, the Court must view the evidence in the light most favorable to the plaintiffs and draw all

17  justifiable inferences in their favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

18  **II.     TOSHIBA HAS FAILED TO DEMONSTRATE AS A MATTER OF LAW THAT
        IT WITHDREW FROM THE CRT CONSPIRACY**
19
        **A.      Toshiba Bears a Heavy Burden of Establishing Withdrawal, Which Is a Fact-
20               Intensive Inquiry Generally Not Suitable for Summary Judgment**

21              To support its summary judgment motion asserting that plaintiffs' claims are time-

22  barred, Toshiba must first establish that the limitations period began to run in 2003 when it

23  purportedly withdrew from the CRT conspiracy by forming MTPD.  The burden of demonstrating

24  withdrawal is squarely on Toshiba, *see Smith v. United States*, 133 S. Ct. 714, 719 (2013), and the

25  standard is "rigorous."  *See United States v. Antar*, 53 F.3d 568, 582 (3d Cir. 1995), *overruled on

26  other grounds by Smith v. Berg*, 247 F.3d 532, 534 (3d Cir. 2001).

27              Toshiba's burden is particularly heavy on summary judgment.  Indeed, "[w]hen

28  the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it

---

1    must show that 'the evidence is so powerful that no reasonable jury would be free to disbelieve

2    it.'" *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (quoting 6 James Wm. Moore et al.,

3    *Moore's Federal Practice* ¶ 56.13 (3d ed. 1997)).  Consequently, courts rarely grant summary

4    judgment on the basis of withdrawal.  *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820

5    F. Supp. 2d 1055, 1060 (N.D. Cal. 2011) (summary judgment on withdrawal denied even where

6    U.S. Department of Justice confirmed in a letter that defendant LG Displays had reported the

7    conspiracy to DOJ and cooperated in the LCD investigation); *Law v. Nat'l Collegiate Athletic*

8    *Ass'n*, 5 F. Supp. 2d 921, 933-34 (D. Kan. 1998) (summary judgment on withdrawal denied even

9    where NCAA formally rescinded salary cap rule that formed the basis for plaintiffs' claims); *In re*

10   *Catfish Antitrust Litig.*, 908 F. Supp. 400, 414-15 (N.D. Miss. 1995) (summary judgment on

11   withdrawal denied even where defendant announced to co-conspirators that it would cease

12   attending group meetings unless an attorney was present "to insure no improper

13   questions/discussions were initiated concerning pricing, etc. of finished products").  Nor should

14   this Court grant Toshiba's motion here.

15       **B.**    **The Jury Must Resolve Material Factual Issues To Determine Whether**
16                   **Toshiba's Formation of MTPD Constitutes a Withdrawal from the CRT**
                     **Conspiracy**

17           Initially, Toshiba does not dispute that it participated in a CRT conspiracy prior to

18   2003.  Nor can it, given the extensive testimonial and documentary evidence of Toshiba's

19   involvement.  (*See supra* at 4-7.)  Nor does Toshiba contend that the conspiracy itself ceased in

20   2003 when it formed MTPD with Matsushita.  Its argument depends entirely upon a showing that

21   it legally withdrew from the CRT conspiracy simply by forming MTPD with a co-conspirator.

22           A defendant, however, does not withdraw from a conspiracy through "[p]assive

23   nonparticipation in the continuing scheme." *Smith*, 133 S. Ct. at 720.  Instead, to effectively

24   withdraw from a conspiracy, a defendant must undertake "[a]ffirmative acts inconsistent with the

25   object of the conspiracy [] communicated in a manner reasonably calculated to reach co-

26   conspirators." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464 (1978).  In the Ninth Circuit,

27   this means that the defendant must "disavow the unlawful goal of the conspiracy, affirmatively

28   act to defeat the purpose of the conspiracy, or take 'definite, decisive and positive' steps to show

1   [] the [defendant's] disassociation from the conspiracy." *United States v. Lothian*, 976 F.2d 1257,

2   1261 (9th Cir. 1992) (quoting *United States v. Loya*, 807 F.2d 1483, 1493 (9th Cir. 1987)).

3           Toshiba contends that it meets its burden by (i) transferring its CRT business into a

4   separate joint venture in which it held only a minority 35.5% share, and (ii) sufficiently

5   communicating its "withdrawal" to the public and its co-conspirators by announcing that it would

6   be shifting its CRT operations to MTPD in 2003.  But a jury will have to decide whether Toshiba

7   "definitively and decisively" withdrew, or merely restructured its CRT business into a joint

8   venture with a co-conspirator in which it retained an ownership stake, board oversight and

9   communications with its former employees who continued to conduct the conspiratorial activities.

10  These fact questions are only compounded by the issue of whether Toshiba adequately

11  communicated its withdrawal through a series of public statements asserting that it was joining

12  with Matsushita to "consolidate [the] CRT business."  (Lau Decl. Ex. A, at 1.)  In short, the

13  undisputed factual record here only leads to the conclusion that summary judgment on withdrawal

14  cannot lie.

### 1. Toshiba's Continued Ownership Stake and Control Over MTPD Precludes a Finding of Withdrawal As a Matter of Law

15          Authority in the Ninth Circuit and around the country makes clear that a

16  conspirator does not withdraw if it retains a continued interest in an entity that participates in the

17  conspiracy.  For example, in *Reisman v. United States*, 409 F.2d 789 (9th Cir. 1969), the court

18  held that where a defendant resigned from a fraudulent land sale enterprise "and ceased to

19  participate in the company's day-to-day business operations," but "remained a major stockholder

20  and took no affirmative action to disavow or defeat the promotional activities which he had joined

21  in setting in motion," he had not effectively withdrawn from the conspiracy. *Id.* at 793.  Other

22  cases are in accord.  In *Antar*, the court rejected a withdrawal defense where the defendant

23  resigned from a conspiratorial enterprise but "retained stock in the enterprise" and thus

24  "continued to receive the fruits of the fraud." 53 F.3d at 583-84.  The court also emphasized the

25  lack of "evidence that [the defendant] acted inconsistently with the goals of the conspiracy." *Id.*

1  at 584.[7]  *See also United States v. Eisen*, 974 F.2d 246, 269 (2d Cir. 1992) (no withdrawal where

2  attorney resigned from a conspiratorial enterprise but continued to be entitled to receive proceeds

3  from the conspiracy).

4          Toshiba relies on non-controlling authority indicating that the sale of a business

5  can constitute an affirmative act inconsistent with the conspiracy's objectives.  (*See* Mot. at 5-7

6  (citing *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823 (11th Cir. 1999), *amended*,

7  211 F.3d 1224 (11th Cir. 2000)).)  In *Morton's Market*, the court concluded that the defendant

8  made a "clean and permanent" break from a milk price-fixing conspiracy by selling its dairy and

9  "totally sever[ing] its ties to the milk price-fixing conspiracy."  *Id.* at 838-39.  But the court held

10  that withdrawal can be found "*only* where the conspirator can demonstrate that he retired from the

11  business, severed all ties to the business, *and* deprived the remaining conspirator group of the

12  services which he provided to the conspiracy."  *Id.* at 839 (emphasis added).  Thus, according to

13  *Morton's Market*, to effectively withdraw from a conspiracy by selling a business, the seller must

14  "[do] nothing more to assist or participate" in the illegal activities of the other conspirators.  *Id.*

15          Toshiba cannot meet its own standard as set out in *Morton's Market*.  There is a

16  genuine issue of material fact as to whether this restructuring of Toshiba's CRT business by

17  collaborating with one of its co-conspirators constituted a "clean and permanent" break from the

18  CRT conspiracy.  Although Toshiba protests that it "severed [its] ties with the [CRT] industry,"[8]

19  (*see* Mot. at 6), the undisputed factual record unequivocally says otherwise.  It did not sell its

20  CRT business—it restructured it to consolidate operations with a co-conspirator. ████

21  ████████████████████████████████████████████

22  ████████████████████████████████████████

23  _____

24  [7] In contrast, in *Lothian*, upon which Toshiba relies, the Ninth Circuit noted that a defendant who did not retain an ownership interest upon his resignation from a conspiring business had made a

25  *prima facie* showing of withdrawal.  976 F.2d at 1264.  The court in *Lothian* distinguished *Reisman* by stressing that "Lothian retained no such ownership interest upon his resignation" and that "[a]ll indications were that Lothian would [not] have returned to" the relevant entity but for

26  the failure of his new enterprise.  *Id.*

27  [8] Both of the cases that Toshiba cites in support of this point—*United States v. Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988), and *United States v. Steele*, 685 F.2d 793, 803-04 (3d Cir. 1982)—

28  are inapposite, because the defendants in those cases did not continue to stand to gain from a conspiracy through an ownership interest in a participating entity.

1 ██████████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████████

3 ████████████████████████████████████ Given Toshiba's continued relationship with MTPD,

4 the jury may easily find that the "purposes of the conspiracy" were not "defeated" as to Toshiba

5 after the formation of MTPD.

6      Toshiba nonetheless contends that its 35.5% "minority interest in MTPD gave it

7 no control over the day-to-day operations of MTPD such that the Toshiba Defendants could be

8 deemed to continue participating in the CRT industry." (*See* Mot. at 9.) *Reisman*, however,

9 recognizes that a defendant need not have control over a conspiring entity's day-to-day operations

10 to remain liable for a conspiracy's illegal acts. 409 F.2d at 793. And the antitrust cases that

11 Toshiba cites to support this argument, *Spanish Broadcasting System of Florida, Inc. v. Clear*

12 *Channel Communications, Inc.*, 376 F.3d 1065, 1075 (11th Cir. 2004) and *In re Lithium Ion*

13 *Batteries Antitrust Litigation*, No. 13-MD-2420 YGR, 2014 WL 309192, at *6-9 (N.D. Cal. Jan.

14 21, 2014), are not withdrawal cases and thus are inapplicable: *Spanish Broadcasting* addressed

15 whether a minority owner of a corporation was a competitor in a relevant market and thus

16 potentially liable for attempted monopolization, and *Lithium Ion Batteries* considered the level of

17 control required to establish the applicability of the ownership-and-control exception to the

18 indirect purchaser rule in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

19      In any event, there is substantial record evidence from which a jury could conclude

20 that Toshiba played a critical role in managing MTPD's operations. ████████████████

21 ████████████████████████████████████████████████████████████

22 ████████████████████████████████ (*See supra* at 10.) Although Toshiba now claims

23 that it never exercised that veto authority (Mot. at 3), that misses the point. ███████████

24 ████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████ Toshiba

28 cannot credibly maintain that it was making a "clean break" from the CRT conspiracy.

1            The fact that Toshiba may not have made an actual profit from this restructuring is

2    also irrelevant.  As *Reisman* shows, plaintiffs do not need to show that Toshiba made an actual

3    profit from a conspiracy in order to defeat a summary judgment motion based on withdrawal.  *See*

4    *Reisman*, 409 F.2d at 793.  The case Toshiba cites in support of this argument, *United States v.*

5    *Eisen*, 974 F.2d at 269, only supports plaintiffs' position.  In *Eisen*, the court found that a

6    defendant attorney had not successfully withdrawn from a conspiracy even after resigning from

7    the conspiring law firm when the attorney continued to be entitled to a percentage of the recovery

8    obtained in his cases.  *Id.*  The relevant question, then, was not whether the party claiming to have

9    withdrawn ultimately made a profit, but whether the defendant continued to stand to gain some

10   benefit from the conspiracy, financial or otherwise, after his purported withdrawal.

11           Here, the jury could reasonably find that Toshiba continued to stand to gain from

12   the conspiracy through its ownership stake in MTPD.

13   

14   

15   

16   

17   

18   

19   

20   

21   

22           Thus, a jury could reasonably conclude that MTPD was a

23   vehicle for Toshiba and Matsushita to further the goals of the CRT conspiracy by reducing

24   capacity.[9]

25   

26   [9] Even if the Court were to conclude that Toshiba "sold" the business, the fact that it was sold to a
     co-conspirator that Toshiba knew remained engaged in the conspiracy precludes withdrawal.  *See,*

27   *e.g.*, *United States v. Sax*, 39 F.3d 1380, 1386 (7th Cir. 1994).  In *Sax*, the defendant sold his
     interest in a marijuana conspiracy to an individual that Sax knew would continue to participate in

28   unlawful activity.  *Id.* at 1387.  The court explained that "Sax's sale can hardly be characterized
     as some act to disavow or defeat the purpose [of the conspiracy].  On the contrary, the evidence

1

2

### 2.    Toshiba Did Not Adequately Communicate a Withdrawal to Its Co-Conspirators

3

4    To establish a legally effective withdrawal, Toshiba must also demonstrate that

5    there is no genuine issue of fact surrounding its communication of its withdrawal "in a manner

6    reasonably calculated to reach co-conspirators."  *U.S. Gypsum Co.*, 438 U.S. at 464-65.  Here,

Toshiba's purported communication of its purported withdrawal only raises further fact questions.

7    There is no dispute that Toshiba did not expressly communicate to its co-conspirators that it was

8    disavowing the conspiracy and no longer intended to participate.  Rather, Toshiba contends that

9    its mere announcement of the formation of MTPD also satisfies the communication requirement.

10   But the record itself reflects that Toshiba's co-conspirators—like plaintiffs—only viewed the

MTPD announcement as a means by which Toshiba was restructuring its CRT business.

11

12        The evidence of communications regarding MTPD does not reflect a public

13   pronouncement that Toshiba was severing all ties with the CRT cartel.  The press releases and

annual reports that Toshiba cites state instead that Toshiba and Matsushita were "consolidating

14   their cathode ray tube (CRT) business into a single joint venture company."  (Lau Decl. Ex. A, at

15   1.) ████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████

19

20        Toshiba's competitors did not see the creation of MTPD as a move by Toshiba to

21   exit the CRT industry.  Substantial evidence reflects that they just considered Toshiba and

Matsushita to be consolidating to strengthen their businesses.  (*See supra* at 8-9.)  Because

22   Toshiba's co-conspirators did not perceive the formation of MTPD as a signal that Toshiba was

23   ending its participation in the scheme, it can hardly be argued that Toshiba's press releases

24   communicated withdrawal "in a manner reasonably calculated to reach co-conspirators."

25

26   demonstrates that Sax continued to wholeheartedly endorse the purpose of the marijuana
conspiracy—making profits from drug sales—by passing it along to Eichorn. . . . [T]he law will

27   not let you wash your hands of a dangerous scheme *you have set in motion that can continue to
operate and cause great harm without your continued participation.*"  *Id.* (alteration and

28   emphasis in original) (citations and internal quotation marks omitted).

1    Even under the standard argued by Toshiba, withdrawal can be communicated

2    through media reports or trade or financial publications only where those reports state that the

3    defendant is actually exiting an industry.  *Morton's Mkt.*, 198 F.3d at 839; *In re Potash Antitrust*

4    *Litig.*, 954 F. Supp. 1334, 1391 (D. Minn. 1997), *aff'd sub nom. Blomkest Fertilizer, Inc. v.*

5    *Potash Corp. of Saskatchewan, Inc.*, 203 F.3d 1028 (8th Cir. 2000).  Here, the reports Toshiba

6    cites simply state that two conspirators are joining forces to act as a single entity.  This can only

7    generate a material factual question as to whether in fact Toshiba did exit the industry.  It will be

8    up to the jury to weigh the evidence.  Summary judgment is not warranted.

9    **III.   BECAUSE TOSHIBA AND ITS CO-CONSPIRATORS FRAUDULENTLY**
     **CONCEALED THE CRT CONSPIRACY, THERE IS A MATERIAL FACTUAL**
10   **ISSUE AS TO WHETHER PLAINTIFFS' CLAIMS AGAINST TOSHIBA ARE**
     **BARRED BY THE STATUTE OF LIMITATIONS**

11

12          Toshiba's statute of limitations motion also fails for the independent reason that it

     cannot establish as a matter of law the date that the limitations period began to run.  Although
13
     Toshiba contends that the applicable four-year statute of limitations started to run in March 2003
14
     upon the formation of MTPD—thus barring the claims filed more than four years later in late
15
     2007—it deliberately over-simplifies the analysis.  Substantial record evidence demonstrates that
16
     Toshiba and the other defendants fraudulently concealed the CRT conspiracy, which tolled the
17
     statute of limitations well beyond March 2003.  (*See supra* at 5-6.)  Toshiba does not dispute—
18
     nor could it—that it engaged in affirmative acts of fraudulent concealment to hide the conspiracy
19
     from plaintiffs.  Accordingly, there is a genuine issue of material fact as to whether the limitations
20
     period began to run in 2003.
21
            The Ninth Circuit has long held that a statute of limitations may be tolled if the
22
     defendant "fraudulently concealed the existence of the cause of action so that [plaintiff], acting as
23
     a reasonable person, did not know of its existence."  *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*,
24
     858 F.2d 499, 502 (9th Cir. 1988) (quoting *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d
25
     1299, 1302 (9th Cir. 1986)).  In such cases the burden is on the plaintiff(s) to plead and
26
     demonstrate "facts showing that [defendants] affirmatively misled it, and that [plaintiff] had
27

28

1   neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence

2   in trying to uncover those facts." *Id*.

3            Because a claim of fraudulent concealment necessarily involves numerous factual

4   questions, including the extent to which plaintiffs knew or reasonably should have known of the

5   misconduct, California federal courts have stated that "'[o]rdinarily, a defendant has an extremely

6   difficult burden to show that [fraudulent concealment allegations are] barred as a matter of law.'"

7   *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 782 F. Supp. 487,

8   489 (C.D. Cal. 1991) (alteration in original) (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d

9   1406, 1417 (9th Cir. 1987)); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-

10  5944 SC, 2014 WL 1091589, at *9 (N.D. Cal. Mar. 13, 2014) (fraudulent concealment is a "fact-

11  sensitive affirmative defense").  Summary judgment thus may only be granted where

12  "uncontroverted evidence 'irrefutably demonstrates that a plaintiff discovered or should have

13  discovered [the cause of action] but failed to file a timely complaint.'"  *Conmar*, 858 F.2d at 502

14  (alteration in original) (quoting *Volk*, 816 F.2d at 1417).[10]   Because of the weighty burden on

15  defendants to justify summary judgment when plaintiffs have brought forth evidence of

16  fraudulent concealment, courts within the Ninth Circuit regularly deny summary judgment when

17  a plaintiff has put such facts at issue.  *See, e.g.*, *Conmar Corp.*, 858 F.2d at 504; *In re TFT-LCD

18  Antitrust Litig.*, Nos. M 07-1827 SI, 10-1064 SI, 2012 WL 6000154, at *2 (N.D. Cal. Nov. 30,

19  2012); *In re TFT-LCD Antitrust Litig.*, Nos. M 07-1827 SI, 10-4572 SI, 2012 WL 6126144, at *1

20  (N.D. Cal. Dec. 10, 2012).

21           The Ninth Circuit has further explained that a showing of "suspicion" that a claim

22  exists "will not substitute for knowledge of facts from which fraud could reasonably be inferred."

23  *Mt. Hood Stages, Inc. v. Greyhound Corp.*, 555 F.2d 687, 698 (9th Cir. 1977) (quoting *Friedman

24  v. Meyers*, 482 F.2d 435, 439 (2d Cir. 1973)), *vacated on other grounds*, 437 U.S. 322 (1978).

25  Likewise, the Eleventh Circuit has stated that it is not enough  to point to facts "which *might* have

26

_____

27  [10] Other courts have also noted that a majority of circuits, including the Ninth Circuit, have held
    "that the issue of when a plaintiff is on 'notice' of his claim is a question of fact for the jury."
    *Morton's Mkt.*, 198 F.3d at 832 (collecting cases from the Eighth, Ninth, Tenth, and Eleventh
28  Circuits).

1    caused a plaintiff to inquire, or *could* have led to evidence supporting his claim." *Morton's Mkt.*,

2    198 F.3d at 832-33.  This succeeds in "demonstrating only that there is a jury question regarding

3    the tolling of the statute of limitations by fraudulent concealment.  To award summary judgment

4    on such a showing is error." *Id.* at 833.  Moreover, when there is a genuine issue of material fact

5    as to whether the facts publicly available were sufficient to "excite the inquiry of a reasonable

6    person," a demonstration of due diligence is not required for the plaintiff to survive summary

7    judgment.  *Conmar*, 858 F.2d at 504-05.

8                    Here, plaintiffs submit that there is substantial record evidence that Toshiba and its

9    co-conspirators took affirmative steps to conceal the CRT conspiracy. ████████████

10   ████████████████████████████████████████████████

11   ████████████████████████████████████████████████████

12   ████████████████████████████████████████████████

13   ████████████████████████████████████████

14   ████████████████████████████████████████████████████

15   ████████████████████████████████████████████████

16   ████████████████████████████████████████████████

17   ████████████████████████████████████████████

18   ██████████████

19                   Furthermore, Toshiba makes no effort to demonstrate that plaintiffs were, or

20   reasonably could have been, on inquiry notice of the conspiracy, or that they did not undertake a

21   reasonable investigation to uncover the conspiracy.  Toshiba has abandoned all efforts to suggest

22   that any plaintiff other than the Dell plaintiffs or the Sharp plaintiffs was on constructive or actual

23   notice of the conspiracy.  Defendants in this case have filed only one summary judgment motion,

24   against the Dell plaintiffs and the Sharp plaintiffs, asserting those challenges.  (ECF No. 3044.)

25   For the reasons set forth in the oppositions to that motion, whether Dell or Sharp were on inquiry

26   notice of the CRT conspiracy poses a separate question of material fact.  Accordingly, because a

27   genuine issue of material fact remains as to whether Toshiba fraudulently concealed the CRT

28   conspiracy, summary judgment cannot be granted on the basis of the statute of limitations.

1

## IV.    SUMMARY JUDGMENT ON THE REMAINING STATE LAW CLAIMS IS LIKEWISE NOT WARRANTED

2            With respect to the remaining state law claims for which Toshiba is not asserting a

3    limitations bar, summary judgment must also be denied.  There is substantial evidence that

4    Toshiba continued to participate in the CRT conspiracy after March 2003 through the auspices of

5    MTPD.  (*See supra* at 12.)

6                                              **<u>CONCLUSION</u>**

7            For the foregoing reasons, plaintiffs respectfully submit that the Court should deny

8    the Toshiba Defendants' Motion for Summary Judgment Concerning Withdrawal.

9

10    DATED:  December 23, 2014            By:  /s/ *Craig A. Benson*
                                                _____

11                                          Kenneth A. Gallo (*pro hac vice*)
                                            Joseph J. Simons (*pro hac vice*)
12                                          Craig A. Benson (*pro hac vice*)
                                            **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
13                                          2001 K Street, NW
                                            Washington, DC  20006
14                                          Telephone:  (202) 223-7300
                                            Facsimile:  (202) 204-7420
15                                          Email: kgallo@paulweiss.com
                                            Email: jsimons@paulweiss.com
16                                          Email: cbenson@paulweiss.com

17                                          Stephen E. Taylor (SBN 058452)
                                            Jonathan A. Patchen (SBN 237346)
18                                          **TAYLOR & COMPANY LAW OFFICES, LLP**
                                            One Ferry Building, Suite 355
19                                          San Francisco, California 94111
                                            Telephone:  (415) 788-8200
20                                          Facsimile:  (415) 788-8208
                                            Email: staylor@tcolaw.com
21                                          Email: jpatchen@tcolaw.com

22                                          *Attorneys for Plaintiffs Sharp Electronics*
                                            *Corporation and Sharp Electronics Manufacturing*
23                                          *Company of America, Inc.*

24
                                            By:  /s/ *Mario N. Alioto*
25                                               _____

                                            Mario N. Alioto (56433)
26                                          Lauren C. Capurro (241151)
                                            **TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP**
27                                          2280 Union Street
                                            San Francisco, CA 94123
28                                          Telephone: (415) 563-7200

1   Facsimile: (415) 346-0679 Email: malioto@tatp.com
    Email: laurenrussell@tatp.com

2   *Interim Lead Counsel*
    *For the Indirect Purchaser Plaintiffs*
3

4   By: /s/ *David J. Burman*

5   David J. Burman (pro hac vice)
    Cori G. Moore (pro hac vice)
6   Eric J. Weiss (pro hac vice)
    Nicholas H. Hesterberg (pro hac vice)
7   Steven D. Merriman (pro hac vice)
    **PERKINS COIE LLP**
8   1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
9   Telephone: 206.359.8000
    Facsimile: 206.359.9000
10  Email: DBurman@perkinscoie.com
    Email: CGMoore@perkinscoie.com
11  Email: EWeiss@perkinscoie.com
    Email: NHesterberg@perkinscoie.com
12  Email: SMerriman@perkinscoie.com

13  Joren Bass, Bar No. 208143
    **PERKINS COIE LLP**
14  Four Embarcadero Center, Suite 2400
    San Francisco, CA 94111-4131
15  Telephone: 415.344.7120
    Facsimile: 415.344.7320
16  Email: JBass@perkinscoie.com

17  *Attorneys for Plaintiff Costco Wholesale Corporation*

18
    By: /s/ *Philip J. Iovieno*
19

20  William A. Isaacson
    **BOIES, SCHILLER & FLEXNER LLP**
21  5301 Wisconsin Ave. NW, Suite 800
    Washington, D.C. 20015
    Telephone: (202) 237-2727
22  Facsimile: (202) 237-6131
    Email: wisaacson@bsfllp.com
23
    Stuart Singer
24  **BOIES, SCHILLER & FLEXNER LLP**
    401 East Las Olas Blvd., Suite 1200
25  Fort Lauderdale, FL 33301
    Telephone: (954) 356-0011
26  Facsimile: (954) 356-0022
    Email: ssinger@bsfllp.com
27
    Philip J. Iovieno
28  Anne M. Nardacci

PLAINTIFFS' OPPOSITION TO TOSHIBA'S MOTION FOR SUMMARY JUDGMENT CONCERNING WITHDRAWAL
CASE NO. 07-5944-SC; MDL NO. 1917

23

| | |
|---|---|
| 1 | **BOIES, SCHILLER & FLEXNER LLP**<br>30 South Pearl Street, 11th Floor<br>Albany, NY 12207 |
| 2 | Telephone: (518) 434-0600<br>Facsimile: (518) 434-0665 |
| 3 | Email: piovieno@bsfllp.com<br>Email: anardacci@bsfllp.com |
| 4 | |
| 5 | *Liaison Counsel for Direct Action Plaintiffs and Attorneys for Plaintiffs Electrograph Systems, Inc., Electrograph* |
| 6 | *Technologies Corp., Office Depot, Inc., Interbond Corporation of America, P.C. Richard & Son Long Island* |
| 7 | *Corporation, MARTA Cooperative of America, Inc., ABC Appliance, Inc., Schultze Agency Services LLC on behalf of* |
| 8 | *Tweeter Opco, LLC and Tweeter Newco, LLC and Tech Data Corporation and Tech Data Product Management,* |
| 9 | *Inc.* |
| 10 | By:  /s/ *Scott N. Wagner* _____ |
| 11 | Robert W. Turken<br>Scott N. Wagner |
| 12 | Mitchell E. Widom<br>**BILZIN SUMBERG BAENA PRICE & AXELROD LLP** |
| 13 | 1450 Brickell Ave, Suite 2300<br>Miami, FL 33131-3456 |
| 14 | Tel: 305-374-7580<br>Fax: 305-374-7593 |
| 15 | Email: rturken@bilzin.com<br>Email: swagner@bilzin.com |
| 16 | Email: mwidom@bilzin.com |
| 17 | *Attorneys for Plaintiffs Tech Data Corporation and Tech Data Product Management, Inc.* |
| 18 | |
| 19 | By:  /s/ *David Martinez* _____ |
| 20 | Roman M. Silberfeld, (SBN 62783)<br>David Martinez, (SBN 193183) |
| 21 | Jill Casselman<br>**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.** |
| 22 | 2049 Century Park East, Suite 3400<br>Los Angeles, CA 90067-3208 |
| 23 | Telephone: (310) 552-0130<br>Facsimile: (310) 229-5800 |
| 24 | Email: RMSilberfeld@rkmc.com<br>Email: DMartinez@rkmc.com |
| 25 | Email: jcasselman@rkmc.com |
| 26 | Elliot S. Kaplan<br>K. Craig Wildfang |
| 27 | Laura E. Nelson<br>**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.** |
| 28 | 800 LaSalle Avenue |

---

2800 LaSalle Plaza
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
Email: eskaplan@rkmc.com
Email: kcwildfang@rkmc.com
Email: lenelson@rkmc.com

*Attorneys For Plaintiffs Best Buy Co., Inc, Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, Inc.*

By:  /s/ *Lee Godfrey*
_____

H. Lee Godfrey
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: lgodfrey@susmangodfrey.com
Email: kmarks@susmangodfrey.com
Email: jross@susmangodfrey.com
Email: jcarter@susmangodfrey.com
Email: dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: pfolse@susmangodfrey.com
Email: rblack@susmangodfrey.com
Email: jconnors@susmangodfrey.com

*Attorneys for Plaintiff Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

By:  /s/ *Jason Murray*
_____

Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213-443-5582
Facsimile: 213-622-2690

Email: jmurray@crowell.com

Jerome A. Murphy (pro hac vice)
Astor H.L. Heaven (pro hac vice)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-624-2500
Facsimile: 202-628-5116
E-mail: jmurphy@crowell.com
Email: aheaven@crowell.com

*Attorneys for Target Corp.*

By:  /s/ *Richard Arnold*

Richard Alan Arnold
William J. Blechman
Kevin J. Murray
**KENNY NACHWALTER, P.A.**
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel: 305-373-1000
Fax: 305-372-1861
Email: rarnold@knpa.com
Email: wblechman@knpa.com
Email: kmurray@knpa.com

*Attorneys for Plaintiff Sears, Roebuck and Co. and Kmart Corp.*

## E-FILING ATTESTATION

I, Craig A. Benson, am the ECF user whose ID and password are being used to file the

**PLAINTIFFS' OPPOSITION TO THE TOSHIBA DEFENDANTS' MOTION FOR SUMMARY JUDGMENT CONCERNING WITHDRAWAL**  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each listed counsel above has concurred in this filing.

Dated:  December 23, 2014            /s/ *Craig A. Benson*
                                     Craig A. Benson

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

On December 23, 2014, I caused a copy of Plaintiffs' Opposition to the Toshiba Defendants' Motion for Summary Judgment Concerning Withdrawal to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.


DATED:  December 23, 2014            By: */s/ Craig A. Benson*
                                             Craig A. Benson