1  Kenneth A. Gallo (*pro hac vice*)
   Joseph J. Simons (*pro hac vice*)
2  Craig A. Benson (*pro hac vice*)
   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
3  2001 K Street, NW
   Washington, DC  20006-1047
4  Telephone:  (202) 223-7300
   Facsimile:  (202) 223-7420
5  Email: kgallo@paulweiss.com
   Email: jsimons@paulweiss.com
6  Email: cbenson@paulweiss.com

7  Stephen E. Taylor (SBN 058452)
   Jonathan A. Patchen (SBN 237346)
8  TAYLOR & COMPANY LAW OFFICES, LLP
   One Ferry Building, Suite 355
9  San Francisco, California  94111
   Telephone:  (415) 788-8200
10 Facsimile:  (415) 788-8208
   Email: staylor@tcolaw.com
11 Email: jpatchen@tcolaw.com

12 *Attorneys for Plaintiffs Sharp Electronics Corporation and*
   *Sharp Electronics Manufacturing Company of America, Inc.*

13

14                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
15                     SAN FRANCISCO DIVISION

16 | In re: CATHODE RAY TUBE (CRT) ANTITRUST | Case No. 07-cv-5944 SC |
   | LITIGATION                              | MDL No. 1917           |

17 This Document Relates to:

18                                           **SHARP ELECTRONICS**
   *Sharp Electronics Corp.*, et al. v. *Hitachi Ltd.*, et al.,   **CORPORATION AND SHARP**
19 Case No. 13-cv-1173 SC;                   **ELECTRONICS**
                                             **MANUFACTURING COMPANY OF**
20 *Sharp Electronics Corp.*, et al. v. *Koninklijke Philips*   **AMERICA, INC.'S OPPOSITION**
   *Elecs., N.V.*, et al., Case No. 13-cv-2776 SC.   **TO DEFENDANTS' MOTION FOR**
21                                           **PARTIAL SUMMARY JUDGMENT**
                                             **ON STATUTE OF LIMITATIONS**
22                                           **GROUNDS**

23                                           DATE:  February 6, 2015
                                             TIME:   10:00 a.m.
24                                           PLACE:  Courtroom 1, 17th Floor
                                             JUDGE:  Hon. Samuel Conti
25
                                             **[REDACTED PUBLIC VERSION]**
26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    STATEMENT OF THE ISSUES ................................................................................... 1

II.   PRELIMINARY STATEMENT .................................................................................... 1

III.  COUNTER-STATEMENT OF MATERIAL FACTS ................................................... 2

      A.    Defendants Took Affirmative Steps to Conceal the Conspiracy ........................ 3

      B.    Sharp's Alleged Inquiry Notice of the Conspiracy .............................................. 5

            1.    Exhibit 3620 .............................................................................................. 5

            2.    Exhibits 3621 and 3622 ............................................................................. 7

IV.   ARGUMENT ................................................................................................................... 8

      A.    Summary Judgment Standard ............................................................................... 8

      B.    Issues of Fraudulent Concealment and Constructive Notice are
            Inappropriate for Summary Judgment .................................................................. 9

      C.    Sharp Plaintiffs SEMA and SEC Were Not on Notice of the
            Conspiracy ........................................................................................................... 10

            1.    Sharp Witnesses Had No Knowledge of Any Conspiracy ....................... 11

            2.    Exhibit 3620 Did Not Place Sharp on Inquiry Notice ............................. 11

            3.    Exhibits 3621 and 3622 Did Not Place Sharp on Inquiry
                  Notice. ...................................................................................................... 13

      D.    Courts Regularly Deny Summary Judgment Where the Factual
            Evidence of Notice Was More Extensive ............................................................ 15

      E.    The Adequacy of Any Investigation By Sharp Further Raises Fact
            Questions .............................................................................................................. 17

V.    CONCLUSION .............................................................................................................. 18

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Advanced Micro Devices, Inc. v. Intel Corp.*,
   No. C-91-20541 JW, 1992 U.S. Dist. LEXIS 21529 (N.D. Cal. July 24, 1992) .....................16

*American Pipe & Construction Co. v. Utah*,
   414 U.S. 538 (1974)......................................................................................................................3

*Anderson v. Liberty Lobby*,
   477 U.S. 242 (1986)......................................................................................................................9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   738 F. Supp. 2d 1011 (N.D. Cal. 2010) .................................................................................3, 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No., 07-CV-5944, 2014 WL 1091589 (N.D. Cal. Mar. 13, 2014).........................................10

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*,
   858 F.2d 499 (9th Cir. 1988)..........................................................................1, 9, 10, 15, 17

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*,
   782 F. Supp. 487 (C.D. Cal. 1991).......................................................................................10, 17

*In re Copper Antitrust Litig.*,
   436 F.3d 782 (7th Cir. 2006)......................................................................................................16

*Falstaff Brewing Corp. v. Philip Morris Inc.*,
   No. C-77-2733 WWS, 1979 WL 1665 (N.D. Cal. May 10, 1979) ......................................9, 16

*GO Computer, Inc. v. Microsoft Corp.*,
   508 F.3d 170 (4th Cir. 2007)......................................................................................................17

*Hennighan v. Insphere Ins. Solutions, Inc.*,
   No. 13-CV-00638-JST, 2013 WL 1758934 (N.D. Cal. Apr. 24, 2013)...................................14

*Hexcel Corp. v. Ineos Polymers, Inc.*,
   681 F.3d 1055 (9th Cir. 2012).....................................................................................................16

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999), *amended in part*, 211 F.3d 1224 (11th Cir.
   2000) ...............................................................................................................................10, 16, 17

*Mt. Hood Stages, Inc. v. Greyhound Corp.*,
   555 F.2d 687 (9th Cir. 1977), *vacated on other grounds*, 437 U.S. 322 (1978).......................9

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*,
   6210 F.3d 1099 (9th Cir. 2000)................................................................................................8, 9

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
   930 F. Supp. 68 (S.D.N.Y. 1996)...............................................................................................10

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

ii

*Rutledge v. Boston Woven Hose & Rubber Co.*,
  576 F.2d 248 (9th Cir. 1978)................................................................................10

*Smith v. Marsh*,
  194 F.3d 1045 (9th Cir. 1999)...............................................................................14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 10-4572 SI, 2012 WL 6126144 (N.D. Cal. Dec. 10, 2012) .............................15

*In re Titanium Dioxide Antitrust Litig.*,
  959 F. Supp. 2d 799 (D. Md. 2013) ......................................................................16


**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 ....................................................................................................2, 8

15 U.S.C. § 16(i) .........................................................................................................3

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Sharp Electronics Corporation ("SEC") and Sharp Electronics Manufacturing Company of America, Inc. ("SEMA") (collectively, "Sharp") hereby respectfully submit this Opposition to Defendants' Motion for Partial Summary Judgment on Statute of Limitations Grounds.

## I.   STATEMENT OF THE ISSUES

1.   Whether disputed evidence contained in three pages cited by defendants "irrefutably" placed Sharp on inquiry notice of a multi-year, global CRT conspiracy and triggered the commencement of the applicable statute of limitations before November 2003 as a matter of law, where the record reflects substantial evidence of defendants' concealment of the conspiracy, and where Sharp's witnesses testified consistently that they had no knowledge of the scheme.

## II.   PRELIMINARY STATEMENT

Defendants cannot establish any basis for a partial summary judgment dismissing Sharp's claims on statute of limitations grounds.  Defendants contend that claims based on conduct prior to November 27, 2003 are time-barred because they accrued more than four years prior to November 27, 2007, when the first direct purchaser plaintiffs class lawsuits were filed challenging the cathode ray tube ("CRT") conspiracy.  To prevail, however, defendants must show that "uncontroverted evidence irrefutably demonstrates" that Sharp actually discovered or should have discovered the conspiracy prior to November 27, 2003.  *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988) (internal quotation marks omitted).  Defendants have not come close to meeting this burden.

Sharp was not on notice of the existence of any CRT conspiracy in 2002—or at any time prior to the public disclosure of the government actions in 2007—because defendants took painstaking measures to conceal the conspiracy from their customers.  In their motion, defendants nowhere dispute that there is substantial record evidence that they engaged in affirmative acts of fraudulent concealment.  Instead, they contend that out of over a million documents and hundreds of depositions, there are three pages that should reasonably have put both SEC and SEMA on notice of a 12-year global conspiracy to raise the prices of CRTs.

Sharp Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment
Case Nos. 13-cv-1173; 13-cv-2776; MDL No. 1917

1

1       The inference defendants seek to draw from one of the pages is flatly contradicted

2  by the only Sharp witness with any knowledge of that document, and there is no evidence that

3  anyone from SEC or SEMA even saw the other two documents, which were produced by a non-

4  party and not from SEC's or SEMA's files.  Moreover, even if one could establish that any of

5  these documents were seen and considered by employees at SEC or SEMA, they could not

6  reasonably have put SEC or SEMA on actual or constructive notice of a sweeping 12-year CRT

7  conspiracy involving all of the defendants named in this action.

8       Defendants cannot have it all ways.  On one hand, they have denied Sharp's

9  antitrust conspiracy claims and the facts supporting them.  On the other, they argue that their

10  conspiracy was so obvious before 2003 that Sharp should have known enough to file a lawsuit

11  many years before 2007, when the conspiracy was made public by global government raids.

12  Particularly in a posture where all reasonable inferences must be resolved in Sharp's favor,

13  defendants cannot legitimately hold the inherently contradictory position that there is no evidence

14  of their participation in the CRT conspiracy, while at the same time arguing that on the basis of

15  three pages in unconnected documents Sharp had enough evidence twelve years ago to file an

16  antitrust complaint.

17       In short, defendants' evidence of inquiry notice is far too thin to justify a judgment

18  dismissing all of Sharp's pre-November 2003 claims.  At most, it reveals genuine issues of

19  material fact as to each element of inquiry notice that is further complicated by the significant

20  steps taken by defendants to keep their conspiracy secret.  In view of the myriad fact issues at

21  play, defendants' statute of limitations defense is wholly unsuitable for partial summary judgment

22  under Fed. R. Civ. P. 56.

23  **III.     COUNTER-STATEMENT OF MATERIAL FACTS**

24       In November 2007, antitrust authorities in Europe, Japan, South Korea and the

25  United States publicly announced investigations into a global conspiracy among manufacturers of

26  CRTs to share information, fix prices and/or share markets, including for CRTs sold into the

27  United States.  This led to a series of putative class actions against the defendants here, and

28  subsequent individual actions brought by purchasers of CRTs—including Sharp—that chose to

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

2

1  "opt-out" of the class litigation.  *E.g., Crago, Inc. v. Chunghwa Picture Tubes, Ltd., et al.*, No.

2  07-cv-5944 (N.D. Cal. filed Nov. 26, 2007); *Sharp Electronics Corp. v. Hitachi, Ltd., et al.*, No.

3  13-cv-1173 (N.D. Cal. filed Mar. 15, 2013).  Sharp, which was unaware of any potential claims

4  due to the concealment of the conspiracy prior to 2007, commenced the first of its actions on

5  March 15, 2013, which was a timely filing in view of the equitable tolling afforded by the

6  government investigations and class action filings.  *See American Pipe & Construction Co. v.*

7  *Utah*, 414 U.S. 538 (1974); 15 U.S.C. § 16(i); *see generally In re Cathode Ray Tube (CRT)*

8  *Antitrust Litig.*, 738 F. Supp. 2d 1011, 1024-25 (N.D. Cal. 2010).  Defendants concede that

9  Sharp's claims were tolled beginning on at least November 27, 2007 as a result of government

10  investigation and class action tolling.  (Mot. at 2 n.1.)

11  **A.      Defendants Took Affirmative Steps to Conceal the Conspiracy**

12  Sharp executives involved in purchasing CRTs from defendants testified

13  unequivocally that they did not suspect any unlawful concerted activity among defendants, and

14  were not aware of anyone else at Sharp who knew of any conspiracy.  Toshihito Nakanishi,

15  plaintiff SEMA's manager of CRT purchasing, testified that he had no knowledge of a potential

16  conspiracy among CRT makers and that "I've never heard anybody say that."  (Declaration of

17  Gary R. Carney ("Carney Decl."), Exh. A, Nakanishi Dep. 147:2-25.)  Vincent Sampietro,

18  associate director of procurement for plaintiff SEC's former CRT television manufacturing

19  division in Memphis and a witness offered pursuant to Rule 30(b)(6), likewise testified that he

20  had no knowledge of a possible conspiracy among CRT makers, that "I had no belief that they

21  were conspiring" and that he was not aware of anyone else at Sharp who had such a belief.

22  (Carney Decl., Exh. B, Sampietro Dep. 271:16-19.)

23  Sharp's inability to detect this conspiracy is unsurprising.  Significant evidence in

24  the discovery record shows that defendants affirmatively concealed their conspiracy and

25  destroyed evidence of it.  To note but a few examples:

26

27  

28

Sharp Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment
Case Nos. 13-cv-1173; 13-cv-2776; MDL No. 1917

3

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

4



**B.    Sharp's Alleged Inquiry Notice of the Conspiracy**

Against this backdrop, defendants nonetheless assert that Sharp had information that should have triggered an obligation to investigate the potential conspiracy and file this lawsuit years ago.  Among millions of pages produced in this case, defendants have identified three pages from documents and associated metadata that they contend reasonably placed both SEC and SEMA on notice of a global 12-year CRT conspiracy.

**1.    Exhibit 3620**

Exhibit 3620 is a document dated June 2002 from SEMA's files compiling the prices that suppliers had requested for certain products.  Unrebutted testimony from a witness

---

[1] *See also* Dell Plaintiffs' Opp. to Mot. for Summary Judgment (MDL Dkt. No. 3231) at 2-4.

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

5

1    with personal knowledge shows that defendants' interpretation of this document is wrong because

2    the document would not have (and did not) put SEMA on notice of its antitrust claims.

3              The document is 15 pages with thousands of data points pertaining to over a dozen

4    companies.  The document is written in Japanese.  Of the 15 pages in Exhibit 3620, defendants

5    point to *one* page, and on that page *two* lines of the 28 separate line entries, that they contend

6    should have put Sharp on notice of a possible conspiracy.  (Yan Decl., Exh. 2 (Sampietro Dep.

7    Exh. 3620 at SHARP-CRT-00212458).)  The two lines in question pertain to price bids submitted

8    by "Samsung" and "LGPD."  The line for "Samsung" describes a "Landed" 25V "CPT Price" of

9    "$83.0," and the line for "LGPD" describes a "FOB" 25V "CPT Price" of "$83.0."  $83.0 is

10   circled on both lines, and to the right of both lines appears the notation, "There is a possibility

11   that Samsung and LGPD are conspiring."  The top of the comments column shows the source of

12   this information:  "Material Department Global Purchasing Planning GR."

13             Sharp's witness testimony establishes that the language defendants identify reflects

14   a misunderstanding of the facts at the time that would not have put Sharp on notice.  Toshihito

15   Nakanishi, who at the time headed CRT procurement at SEMA in San Diego, is the only witness

16   with any knowledge of the document.  (There is no evidence suggesting that anyone from Sharp

17   plaintiff SEC ever saw the document, and defendants do not contend that anyone at SEC did see

18   it.)  Nakanishi's unrebutted testimony is that the two listed prices were ***not*** the same (contrary to

19   the apparent understanding of the individual in Japan who authored the lines in question).  One

20   price was "Landed" and the other was "FOB."  Those were two different prices:

21        Q:  Why wouldn't this language in the column associated with 25V tubes have
22        caused you to believe that SDI and LPD might possibly have been conspiring in
          June of 2002?

23        A:  Well, here, it's true, at 25V, where you can see "$83," where it's circled, and
24        the term is "landed in FOB San Diego."  So that means that in fact, in reality, it
          would be a different price.  As I said this morning, if it was FOB San Diego, there
          will be a cost associated with bringing from San Diego to Mexico.  So my
25        understanding is that the actual cost would be different.  I believe that would have
          been my understanding.  (Carney Decl., Exh. A, Nakanishi Dep. 354:10-25.)
26
          The document was prepared by non-party Sharp affiliates in Japan and not by
27
     Sharp plaintiffs SEMA or SEC.  (Carney Decl., Exh. A, Nakanishi Dep. 142:24-143:4.)
28

Sharp Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment
Case Nos. 13-cv-1173; 13-cv-2776; MDL No. 1917

6

1   Nakanishi's undisputed testimony is that the individuals in Japan who prepared the document

2   would not have understood the difference between "FOB" and "Landed" costs.  (*Id.* at 355:11-17

3   ("But such term was used, but people in Japan do not know the situation with the border, for

4   example.  They have no knowledge regarding how things go back and forth between San Diego

5   and Mexico.").)

6           Nakanishi testified that he would have read the document when he received it and,

7   because the interpretation of the prices in Japan was wrong, it would not have put him on notice

8   of a conspiracy.  (*Id.* at 144:24-146:2.)  There would have been no reason for Nakanishi or SEMA

9   to investigate whether a conspiracy existed.  (*Id.* at 355:22-356:1.)  Moreover, SEMA continued

10  to do business with both SDI and LPD after November 2002 and their conduct gave Nakanishi no

11  reason to think the companies were conspiring.  (*Id.* at 356:3-14.)

12          **2.      Exhibits 3621 and 3622**

13          Defendants next point to Exhibits 3621 and 3622.  (Yan Decl., Exh. 3 (Sampietro

14  Dep. Exhs. 3621 and 3621-E at SHARP-CRT-00002848-50); Yan Decl., Exh. 4 (Sampietro Dep.

15  Exh. 3622 at SHARP-CRT-00002869.03).)  Exhibit 3621 appears to be a 24-page monthly report

16  from November 2002, originally written in Japanese, with metadata that suggests it was authored

17  by Panasonic/Matsushita CRT sales employee Ayumu Kinoshita, projecting demand and

18  production for televisions and CRTs.  Exhibit 3622 is an Excel file that includes the same type of

19  chart containing estimates of production for CRT suppliers in the NAFTA market, also with

20  metadata that suggests it was authored by Ayumu Kinoshita.  Exhibits 3621 and 3622 were

21  produced from the custodial files of an individual located outside of the United States who never

22  worked for either SEC or SEMA.[2]  Defendants wrongly assert that "Sharp" received these

23  documents, and that "Sharp's" receipt of these documents put it on notice that defendants were

24  improperly colluding.  There is, in fact, no evidence that either document was ever in SEC's or

25  _____

26  [2] The documents were produced from the custodial files of a non-party Sharp affiliate employee
    only because SEC had originally asserted claims relating to a small number of intercompany
27  purchases of CRT televisions manufactured in Asia, which included CRTs that had been
    indirectly purchased abroad by Sharp Corporation.  SEC is no longer pursuing these claims.
28  (Carney Decl., Exh. S (October 14, 2014 Letter from C. Benson to Counsel).)

Sharp Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment
Case Nos. 13-cv-1173; 13-cv-2776; MDL No. 1917

7

SEMA's files or that anyone from SEC or SEMA ever saw them.  The two individuals who were in charge of CRT purchasing at SEC (Vincent Sampietro) and SEMA (Toshihito Nakanishi) had never seen these documents.  (Carney Decl., Exh. B, Sampietro Dep. 274:2-276:8; Carney Decl., Exh. A, Nakanishi Dep. 157:13-158:13.)

Rather, the evidence defendants cite makes clear that these two documents were from the files of Yasuhiro Kawaguchi from non-party Sharp Corporation in Japan.  Mr. Kawaguchi was involved in the procurement of CRTs for certain facilities in Asia.  He did not work in the United States, did not procure tubes for NAFTA manufacturing, and did not communicate with the individuals who did procure CRTs for SEC and SEMA.  (*See* Yan Decl., Exh. 5 (Sampietro Dep. Exhs. 3623 and 3623-E); Yan Decl. Exh. 6 (Sampietro Dep. Ex. 3624) (Custodian:  "Kawaguchi, Yasuhiro"); Carney Decl., Exh. A, Nakanishi Dep. 48:19-49:23 (Kawaguchi was the "manager at the procurement department of the Tochigi plant of Sharp Corporation.") ("Q: Did you ever communicate with Kawaguchi-san regarding the subject of CRT procurement?  A: Not that I recall.").)

Moreover, the specific pages cited by defendants do not list a source, and other parts of the documents say that information in them comes from customers or trade associations, not competitors.  (*Compare* Yan Decl. Exh. 3 at SHARP-CRT-00002834 ("Data courtesy of EECA") *and* SHARP-CRT-00002838 ("Source: Customers & EECA") *and* SHARP-CRT-00002839 ("Data courtesy of customers") *with* SHARP-CRT-00002849 (no source listed).)

## IV.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is only proper if defendants show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Defendants "[have] both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  To carry their production burden, defendants must "produce evidence negating an essential element of [the Plaintiffs'] claim or defense or show that [the Plaintiffs do] not have enough evidence of an essential element to carry

Sharp Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment
Case Nos. 13-cv-1173; 13-cv-2776; MDL No. 1917

8

1    [their] ultimate burden of persuasion at trial." *Id.* For their ultimate burden of persuasion,

2    defendants must establish "that there is no genuine issue of material fact." *Id.* In determining

3    whether a genuine issue of material fact exists, the Court must view the evidence in the light most

4    favorable to the plaintiffs and draw all justifiable inferences in their favor. *Anderson v. Liberty*

5    *Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B.    Issues of Fraudulent Concealment and Constructive Notice are Inappropriate for Summary Judgment

8    Defendants contend that their scant evidence compels an award of summary

9    judgment dismissing as time-barred Sharp's claims based on conduct prior to November 27,

10   2003. Defendants' reliance on three pieces of paper is insufficient, and at most only suggests the

11   existence of genuine issues of material fact surrounding the commencement of the limitations

12   period. When coupled with the substantial evidence of fraudulent concealment that Sharp has

13   identified, defendants' failure to meet their heavy burden under Rule 56 is laid bare.

14   Where, as here, plaintiffs identify proof of fraudulent concealment, summary

15   judgment may be granted only "if uncontroverted evidence 'irrefutably demonstrates that plaintiff

16   discovered or should have discovered the cause of action but failed to file a timely complaint.'"

17   *Conmar*, 858 F.2d at 502 (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir.

18   1987)).[3] Mere suspicion of a conspiracy is not enough to show notice. *Mt. Hood Stages, Inc. v.*

19   *Greyhound Corp.*, 555 F.2d 687, 698 (9th Cir. 1977), *vacated on other grounds*, 437 U.S. 322

20   (1978). Thus, "[i]t is not enough for summary judgment to point to facts which *might* have

21   caused a plaintiff to inquire, or *could* have led to evidence supporting his claim. A defendant who

22   does this has succeeded in demonstrating only that there is a jury question regarding the tolling of

23   the statute of limitations by fraudulent concealment. To award summary judgment on such a

---

25   [3] In their motion, defendants did not cite the correct standard for summary judgment on
     fraudulent concealment issues in the Ninth Circuit. Instead of citing the applicable *Conmar*

26   standard – "uncontroverted evidence irrefutably demonstrat[ing] that a plaintiff discovered or
     should have discovered the cause of action" – defendants quote from *Falstaff Brewing Corp. v.*

27   *Philip Morris Inc.*, No. C-77-2733 WWS, 1979 WL 1665 (N.D. Cal. May 10, 1979), an
     unpublished district court case decided nearly a decade before the Ninth Circuit's decision in

28   *Conmar*.

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

9

1    showing is error." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 832-33 (11th

2    Cir. 1999), *amended in part*, 211 F.3d 1224 (11th Cir. 2000) (emphasis in original).

3            Indeed, "[o]rdinarily, a defendant has an extremely difficult burden to show that

4    [fraudulent concealment allegations are] barred as a matter of law." *In re Coordinated Pretrial*

5    *Proceedings in Petroleum Products Antitrust Litig.*, 782 F. Supp. 487, 489 (C.D. Cal. 1991).

6    Courts within the Ninth Circuit and elsewhere thus regularly deny summary judgment where

7    inquiry notice and fraudulent concealment are at issue. *See, e.g.*, *Conmar*, 858 F.2d at 504;

8    *Morton's Mkt.*, 198 F.3d at 832 ("the issue of when a plaintiff is on 'notice' of his claim is a

9    question of fact for the jury" (citing cases from the Eighth, Ninth, Tenth, and Eleventh Circuits));

10   *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 930 F. Supp. 68, 76 (S.D.N.Y. 1996)

11   (defendants' burden is "extraordinary" and summary judgment therefore is appropriate only in

12   "extreme circumstances" (citations omitted).)

13           If a plaintiff is on actual or constructive notice of facts giving rise to the claim,

14   "there can be no fraudulent concealment where he 'could have then confirmed his earlier

15   suspicion by a diligent pursuit' of further information." *Conmar*, 858 F.2d at 504 (quoting

16   *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978)). "The

17   requirement of diligence is only meaningful, however, when facts exist that would excite the

18   inquiry of a reasonable person." *Id.; see also Volk*, 816 F.2d at 1416. Where there is a genuine

19   issue of material fact about *whether* the facts publicly available were sufficient to put plaintiff on

20   inquiry notice, "no due diligence need be demonstrated for [the plaintiff] to survive summary

21   judgment." *Id.* at 504-05; *accord In re Coordinated Pretrial Proceedings in Petroleum Products*

22   *Antitrust Litig.*, 782 F. Supp. at 497-98 ("Due diligence is not required in the abstract. Plaintiffs

23   are not under a duty continually to scout around to uncover claims which they have no reason to

24   suspect they might have.").

25       **C.    Sharp Plaintiffs SEMA and SEC Were Not on Notice of the Conspiracy**

26           This Court already determined that plaintiffs sufficiently alleged fraudulent

27   concealment through at least November 2007. *In re Cathode Ray Tube (CRT) Antitrust Litig.*,

28   738 F. Supp. 2d at 1024-25 (N.D. Cal. 2010); *In re Cathode Ray Tube (CRT) Antitrust Litig.,* No.

Sharp Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment
Case Nos. 13-cv-1173; 13-cv-2776; MDL No. 1917

10

07-CV-5944-SC, 2014 WL 1091589, at *9 (N.D. Cal. Mar. 13, 2014).  Now a more developed discovery record firmly supports plaintiffs' allegations of fraudulent concealment.  (*See*, *supra*, at 3-5.)  The factual record shows substantial evidence that the defendants actively concealed their conspiracy, eradicating defendants' ability to demonstrate that there is no genuine issue of fact as to whether Sharp was on notice.

Notwithstanding this purposeful effort to maintain the secrecy of the conspiracy, defendants contend that a total of three pages placed Sharp on inquiry notice of a 12-year global conspiracy.  None of defendants' exhibits, however, is "uncontroverted evidence [that] irrefutably demonstrates" that Sharp had actual knowledge of any potentially unlawful conduct that it reasonably should have investigated.

### 1.    Sharp Witnesses Had No Knowledge of Any Conspiracy

First, there is no evidence that anyone from Sharp was actually aware of a CRT conspiracy.  The two individuals who were in CRT procurement at SEC and SEMA (Sampietro and Nakanishi, respectively) both testified that they were unaware that the CRT makers were meeting with each other or conspiring.  (*See*, *supra*, at 3.)  There is no evidence cited by defendants that rebuts this undisputed fact witness and Rule 30(b)(6) witness testimony.  Indeed, defendants do not even attempt to argue that Nakanishi or Sampietro was aware of the conspiracy.

Instead, defendants cull through millions of pages produced in this case to identify three pages that they contend alone should have put Sharp on inquiry notice.  But the thin proof they rely upon can at most merely raise fact questions that must be resolved by the jury at trial, not on a summary judgment motion.

### 2.    Exhibit 3620 Did Not Place Sharp on Inquiry Notice

Defendants cannot credibly rely on a snippet of a reference to a potential conspiracy between Samsung SDI and LPD in one line of a voluminous chart.  For Exhibit 3620 to put Sharp on constructive notice of a conspiracy as a matter of law, someone at SEMA (and SEC, although there is no evidence anyone from SEC ever saw this document) reading Exhibit 3620 must have necessarily come away from the document aware of a global conspiracy

Sharp Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment
Case Nos. 13-cv-1173; 13-cv-2776; MDL No. 1917

11

involving all CRTs or reasonably with sufficient notice of the potential for such a conspiracy to impose an obligation to investigate further.  Exhibit 3620 could not support such a conclusion for at least three reasons:

*The CRT prices listed for Samsung SDI and LPD are different.*  Exhibit 3620 was authored by people in Japan who were not employed by plaintiffs SEC or SEMA and were unfamiliar with the uniqueness of the NAFTA market.  There is no evidence that either Samsung SDI or LPD told individuals at Sharp that Samsung SDI and LPD were "conspiring" – that word was written by individuals at a non-party Sharp affiliate in Japan who would not have understood the difference between "FOB" and "Landed" costs.  The only witness who received Exhibit 3620 testified that he did *not* believe the two defendants mentioned in the document (Samsung SDI and LPD) were conspiring, because he understood what the Japanese authors of the document did not: that the two prices reflected in the chart (one "FOB" and one "Landed") were not actually the same.  (*See*, *supra*, at 6-7.)  This testimony is unrebutted.  Since the Japanese authors had misunderstood the meaning of the prices, Nakanishi understood that the reference to "conspiring" manufacturers was a mistake, and thus would have seen no reason to investigate further.  At a minimum, there is a factual dispute between the head of CRT procurement at SEMA (Nakanishi) and the understanding of non-party affiliate employees in Japan, which cannot be resolved on summary judgment.

*The document lists only two defendants, and there is no evidence it was ever seen by anyone at plaintiff SEC*.  Even if defendants' interpretation of Exhibit 3620 is believed, the document was sent only to SEMA, not SEC, and only pertains to two of the defendants— Samsung SDI and LPD.  At best, the language in this document creates a question of fact as to whether SEMA was on notice of Samsung SDI and LPD conspiring.  There is no evidence suggesting that this document should have put SEMA on notice of *other* defendants conspiring (and defendants do not argue that any such evidence exists).  Defendants likewise point to no evidence that plaintiff SEC ever saw or heard about this document.  Plaintiff SEC cannot lose its ability to present its claims to the jury on the basis of a document that was not in its files and was never seen by any of its personnel.

Sharp Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment
Case Nos. 13-cv-1173; 13-cv-2776; MDL No. 1917

12

1    *Additional interactions between Samsung SDI, LPD and SEMA belied a*

2    *conspiracy.*  Both before and after November 2002, SEMA purchased CRTs from Samsung SDI

3    and LPD, and nothing in those interactions before or after November 2002 caused SEMA's CRT

4    purchasing manager, Nakanishi, to suspect a conspiracy.  (Carney Decl., Exh. A, Nakanishi Dep.

5    at 139:4-15; 356:3-14.)  Absent any additional evidence of questionable activity, the snippet from

6    Exhibit 3620 does not warrant summary judgment.

7            **3.      Exhibits 3621 and 3622 Did Not Place Sharp on Inquiry Notice.**

8            There is also a substantial factual question as to whether Exhibits 3621 and 3622

9    could or would have placed Sharp on notice of any conspiracy.  First, as a threshold matter there

10   is no evidence that anyone from SEMA or SEC ever received the documents, or saw or heard

11   anything about them.  Defendants are intentionally blurring the lines between the plaintiffs in this

12   case – SEC and SEMA – and other non-party Sharp affiliate entities, by arguing that "Sharp"

13   received these documents.  This is not true.  Exhibits 3621 and 3622 were not produced from the

14   files of any party to this case, and these documents were not even found in the files of either SEC

15   or SEMA.

16           Second, even if someone at SEMA or SEC had received Exhibits 3621 and 3622

17   and was told that the documents were authored by someone at Matsushita/Panasonic, the

18   documents could have been probative to the inquiry notice issue only if the recipients reasonably

19   would have understood the source of the information to be the competing CRT manufacturers

20   from which Sharp was purchasing.  Yet the documents say nothing on their face to that effect.

21   There is no source listed other than customers and trade associations, suggesting that the data is

22   not the product of information from other defendants actually provided to Matsushita/Panasonic,

23   but rather just estimates made by Kinoshita from public information.

24   ████████████████████████████████████████████████

25   ████████████████████████████████████████████

26   ██████████████████████████████████████████████████

27   ████████████████████████████████████████████

28   ██████████████████████████████  Panasonic could have submitted a

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

13

1   declaration by Kinoshita explaining the source of the information in Exhibits 3621 and 3622, and

2   with whom he shared it at Sharp.  Panasonic did nothing of the sort and has now waived its ability

3   to do so.  *Hennighan v. Insphere Ins. Solutions, Inc.*, No. 13-CV-00638-JST, 2013 WL 1758934,

4   at *3 n.4 (N.D. Cal. Apr. 24, 2013); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

5           Defendants also suggest that Sharp should have known the information in Exhibits

6   3621 and 3622 was the product of a conspiracy because Sharp identified in discovery a second,

7   substantially similar document ███████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████

9   ██████████████████████████████████████████████████████████████████████

10  ███████████████████████████████████████████████████████████████████

11  ██████████████████████████████████████████████████████████████████████

12  █████████████████████████████████████████████████████████████████████

13  ██████████

14          Nor does Sharp witness testimony support defendants' strained contention that

15  Sharp personnel would necessarily have known that the information in Exhibits 3621 and 3622

16  came from competitors.  Merely seeing this information alone would not reasonably have put

17  anyone at Sharp on notice of a conspiracy.  (*See* Carney Decl., Exh. B, Sampietro Dep. 274:19-

18  276:8 ("Q. Have you seen this document before? A. I've never seen it . . . . Q. Okay.  Now, do

19  you know who would have -- where could somebody get information like this?  A. I have no

20  personal knowledge.  Q. Do you recall ever seeing information reflecting various tube sizes and

21  how much was being produced in those sizes by various CRT tube competitors?  A. No, I have

22  not seen this before or have no information where this would be obtained."); *see also* Carney

23  Decl., Exh. A, Nakanishi Dep. at 157:13-158:13.)  Sharp at the time would have had no reason to

24  think that any competitively sensitive information in the document was anything other than

25  Panasonic's internal estimates.

26          Rather, the fact testimony and Rule 30(b)(6) testimony in the record make clear

27  that nobody at Sharp believed CRT suppliers were conspiring.  (Carney Decl., Exh. B, Sampietro

28  Dep. 279:20-280:25 ("In my experience, I was not aware of any CRT supplier providing

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

14

information concerning another CRT supplier . . . . I have no information they were aware of any

conversation between suppliers."); Carney Decl., Exh. A, Nakanishi Dep. at 139:4-15 ("Q:

[D]uring the time that you were involved in the procurement of CRT tubes, did you ever hear that

CRT tube manufacturers were meeting or having communications with one another?  A: No.  Q:

Okay.  And did you ever have any suspicion or belief that CRT manufacturers were meeting or

having communications with one another?  A: No.").)

### D.   Courts Regularly Deny Summary Judgment Where the Factual Evidence of Notice Was More Extensive

Placed in proper context, the defendants' limited evidence is insufficient to

establish inquiry notice under Rule 56 and at most raises a genuine question of fact that precludes

summary judgment.  *See, e.g.*, *Conmar*, 858 F.2d at 500-04 (prolonged coverage in national

newspapers still insufficient for a finding of constructive notice at summary judgment); *In re*

*TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-4572 SI, 2012 WL 6126144 (N.D. Cal. Dec. 10,

2012) (denying motion for summary judgment alleging constructive notice based on minimal

evidence).  Courts have denied summary judgment in the face of much stronger proof of notice

than the evidence here.

For example, in *Conmar*, 858 F.2d at 500-01, the plaintiffs alleged conspiratorial

conduct to keep prices artificially low by violating dumping laws.  More than four years before

the suit was filed, multiple articles in the New York Times, the Los Angeles Times, the San

Francisco Chronicle, and the Wall Street Journal were published detailing the dumping scheme

and the subsequent federal investigation.  One of the defendants had even pled guilty to falsifying

customs documents regarding the true price of the product more than four years before the filing

of the complaint, which was reported in the Wall Street Journal.  Even in the face of this

evidence, the court denied the motion for summary judgment and held that whether the plaintiff

had notice of its antitrust claim was a fact issue for trial.  *Id.* at 504.

Similarly, in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-4572 SI, 2012

WL 6126144, at *1-2, defendants pointed to three documents in plaintiff's possession.  These

three documents explicitly mentioned a "panel cartel" driving prices up.  The plaintiff claimed

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

15

that the "panel cartel" was considered to be an excuse by one of its suppliers for being unable to meet the plaintiff's laptop demand.  Judge Illston concluded that the record was disputed and that summary judgment was not appropriate.  *Id.* at *3.

Other cases are in accord.  *See Morton's Mkt.*, 198 F.3d at 832-37 (newspaper articles of defendants' bid-rigging and related government investigations and indictments insufficient to support summary judgment); *In re Copper Antitrust Litig.*, 436 F.3d 782, 789-92 (7th Cir. 2006) (summary judgment reversed even though defendant had been publicly identified as the financier of anticompetitive actions under investigation by regulators); *In re Titanium Dioxide Antitrust Litig.*, 959 F. Supp. 2d 799, 832 (D. Md. 2013) (summary judgment denied although defendants had publicly announced parallel price increases and class representative testified to having suspected a conspiracy).

In contrast, the cases cited by defendants where summary judgment was appropriate show *extensive* knowledge, discussion, and deliberation about the conspiracy.  There is nothing of the sort here.

For instance, in *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1058-59 (9th Cir. 2012), the plaintiff knew about specific anticompetitive distribution and licensing agreements between the defendant and another carbon fiber producer, and met with its general counsel regarding the legality of these agreements.  In addition, undisputed evidence indicated that the plaintiff was aware of carbon fiber industry-wide anticompetitive practices and knew that executives met once a month in Tokyo to discuss production and pricing.  Similarly, in *Advanced Micro Devices, Inc. v. Intel Corp.*, No. C-91-20541 JW, 1992 U.S. Dist. LEXIS 21529 at *2-3 (N.D. Cal. July 24, 1992), the plaintiff's corporate officers and counsel had specifically and repeatedly noted a concern that the defendant was seeking to attain market dominance and exclude the plaintiff from the microprocessor market.  Finally, in *Falstaff Brewing Corp. v. Philip Morris Inc.*, No. C-77-2733 WWS, 1979 WL 1665, at *2-3  (N.D. Cal. May 10, 1979), the plaintiff alleged that the defendant was secretly using bribes and kickbacks in violation of the Clayton Act.  The plaintiff admitted in interrogatory responses, however, that it had been told by a distributor for both parties that the distributor was receiving illegal payments from the

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

16

defendant.  Moreover, the principal officer and shareholder of the plaintiff claimed to have been fully informed of these activities by his competitors for years.  Nothing comparable exists in this case.[4]

**E.    The Adequacy of Any Investigation By Sharp Further Raises Fact Questions**

Because nothing in the record would have put Sharp on either actual or constructive notice of the CRT conspiracy, the Court is not required to assess Sharp's diligence in investigating the conspiracy.  *Conmar*, 858 F.2d at 504-05; *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 782 F. Supp. at 498.  In addition, a plaintiff's failure to investigate is not fatal "if, even upon investigating, plaintiffs might reasonably be unable to uncover their claims."  *Id.* at 493; *see also Morton's Mkt.,* 198 F.3d at 836.  Here, even if the Court were to find that a duty of inquiry on Sharp was triggered by virtue of these three pages, any concern was swept away by a long course of dealing with defendants, both before and after the date of the documents, that did not suggest to any Sharp witness that it was being victimized by a conspiracy.  (Carney Decl., Exh. B, Sampietro Dep. at 279:20-280:25; Carney Decl., Exh. A, Nakanishi Dep. at 139:4-15.)  No summary judgment order can be predicated on this disputed factual record.  *Conmar*, 858 F.2d at 502.

---

[4] In *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170 (4th Cir. 2007), the FTC independently investigated Microsoft and contacted plaintiff GO Computer.  After a meeting with the FTC where an FTC economist told GO Computer that Microsoft's conduct "look[ed] like a textbook case of abuse of monopoly power," GO Computer contacted a law firm to discuss a possible lawsuit against Microsoft, and GO Computer's president said he understood that GO Computer's claims might be barred by the statute of limitations if GO Computer did not sue promptly.  *Id.* at 178.  The facts here share nothing in common with this case.

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

17

1

**V.      CONCLUSION**

2

For the foregoing reasons, Sharp respectfully requests that the Court deny

3

defendants' motion for partial summary judgment as to Sharp's claims relating to conduct before

4

November 27, 2003.

5

DATED:  December 23, 2014          By: */s/ Craig A. Benson*

6

7

Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)

8

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW

9

Washington, DC  20006
Telephone:  (202) 223-7300

10

Facsimile:  (202) 223-7420
Email:  kgallo@paulweiss.com

11

Email:  jsimons@paulweiss.com
Email:  cbenson@paulweiss.com

12

13

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)

14

TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355

15

San Francisco, California  94111
Telephone:  (415) 788-8200

16

Facsimile:  (415) 788-8208
Email: staylor@tcolaw.com

17

Email: jpatchen@tcolaw.com

18

*Attorneys for Plaintiffs Sharp Electronics Corporation
and Sharp Electronics Manufacturing Company of
America, Inc.*

19

20

21

22

23

24

25

26

27

28

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

18

1

## CERTIFICATE OF SERVICE

2        On December 23, 2014, I caused a copy of **SHARP ELECTRONICS**

3 **CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF**

4 **AMERICA, INC.'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL**

5 **SUMMARY JUDGMENT ON STATUTE OF LIMITATIONS GROUNDS** to be

6 electronically filed via the Court's Electronic Case Filing System, which constitutes service in

7 this action pursuant to the Court's order of September 29, 2008.

8

9 DATED:  December 23, 2014     By: */s/ Craig A. Benson*

10                           Craig A. Benson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHARP PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NOS. 13-CV-1173; 13-CV-2776; MDL NO. 1917

19