Vaughn R Walker
Law Office of Vaughn R Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA  94111
Tel:  (415) 871-2888
Fax:  (415) 871-2890
vrw@judgewalker.com

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Order Relates To:<br><br>DAPs v Thomson | MDL No 1917<br><br>Master Case No 3:07-cv-05944SC<br><br>**ORDER RE THOMSON'S MOTION TO COMPEL DISCOVERY FROM DAPs** |

    This order addresses two motions to compel filed by Thomson SA and Thomson Consumer Electronics, Inc ("Thomson") on September 12 and 19, 2014, seeking to compel the Direct Action Plaintiffs ("DAPs") to provide further responses to certain interrogatories and requests for production, set forth below.

    Thomson seeks additional responses regarding (1) the nature and timing of the DAPs' investigations into their potential claims against Thomson, arguing that such information may lead to information relevant to Thomson's laches and statute of limitations defenses, (2) the DAPs' intent to opt-out of the Direct Purchaser Plaintiff ("DPP") class and (3) the alleged

conspiracy regarding CDTs.[1]  Thomson contends that the timing and nature of investigations that led the DAPs to sue Thomson would be vital to prove its laches and statute of limitations defenses and cannot be obtained through any other means.  Thomson cites to the March 13, 2014 Order on its motion to dismiss,[2] in which the court stated:

> In examining Sharp's FAC [first amended complaint], it is difficult not to find some delay, but the Court cannot find that Sharp's delay was unreasonable based only on the FAC's allegations.  As noted above, some of Sharp's claims are time-barred, but some are tolled, and there is a 'strong presumption' that laches is inapplicable to claims brought within a statutory period.  See Jarrow, 304 F.3d at 835-36.  Thomson SA is, of course, not barred from raising laches on a more developed record." 3/13/14 Order at 30.

Thomson asserts that the DAPs have waived any attorney client or work product privilege by contesting Thomson's statute of limitations defense, citing the *Hearn* test for implied waiver and *Rambus Inc v Samsung Elec Co, Ltd*, 2007 WL 3444376 (ND Cal Nov 13, 2007).

Finally, Thomson asserts that the DAPs refused to provide basic information on their allegations that Thomson participated in a conspiracy concerning both color display tubes (CDTs) and color picture tubes (CPTs).  Because it never manufactured or sold CDTs during the relevant period, Thomson contends it is entitled to know the basis for the DAPs' allegation that Thomson participated in a conspiracy to fix prices of CDTs (Interrogatories 13 and 14).

---

[1] Thomson's first (9/12/14) motion to compel seeks further responses to Interrogatories 10-12, 15-16 and RFPs 3-4 of its first Sets of Interrogatories and Requests for Production (substantively, DAPs' investigation into claims against Thomson and scope of conspiracy).  Thomson's second (9/19/14) motion, addresses Interrogatory 1 and RFP 2 of its Second Set of Interrogatories and Second Set of Requests for Production (substantively, the DAPs' intentions to opt-out of the DPP class).

[2] *In re CRT Antitrust Litigation*, No 3:07-cv-05944SC, Dkt 2440, Order (ND Cal Mar 13, 2014)("3/13/14 Order").

In response, the DAPs contend that (1) the discovery sought is not relevant to any Thomson defense; (2) certain DAPs have provided adequate responses; (3) the documents and information sought are protected by the attorney-client privilege and work-product doctrine; (4) there is no implied waiver of privilege; and (5) Thomson misinterprets the scope of the CRT conspiracy.

**I.      The DAPs' Investigation of Claims against Thomson**

Thomson contends that its discovery related to the timing and nature of the DAPs' investigation into the claims against Thomson is vital to its statute of limitations and laches defenses and is uniquely discoverable from the DAPs.  The specific discovery requests are set forth below.[3]

**Interrogatory No 10**:  IDENTIFY each PERSON employed or controlled by YOU who participated in YOUR investigation into whether the Thomson Defendants participated in the conspiracy that is the subject of YOUR COMPLAINT.

**Interrogatory No 11**:  IDENTIFY all DOCUMENTS each PERSON IDENTIFIED in Response to Interrogatory No. 10 reviewed during YOUR investigation into whether the Thomson Defendants participated in the conspiracy that is the subject of YOUR COMPLAINT.

**Interrogatory No 12**:  IDENTIFY when YOU first learned of the existence of the conspiracy that is the subject of YOUR COMPLAINT.

---

[3]  Thomson's Interrogatories 10-12, 15-16 and RFPs 3-4 are from its first Sets of Interrogatories and Requests for Production.

**Interrogatory No. 15**:  IDENTIFY the EVIDENCE and DOCUMENTS YOU discovered and the date YOU discovered the EVIDENCE and DOCUMENTS that caused YOU to file YOUR COMPLAINT against the Thomson Defendants.

**Interrogatory No 16**:  Explain why YOU did not name Thomson Consumer as a defendant in your original complaint [name of complaint and case number] filed by YOU on or about [date complaint filed] in the [name of court in which complaint was originally filed].

**Request for Production No. 3**:  All DOCUMENTS related to when YOU investigated, or attempted to investigate, the existence of the alleged antitrust conspiracy that is the subject of YOUR COMPLAINT.

**Request for Production No. 4**:  All DOCUMENTS related to when YOU learned of the existence of the alleged antitrust conspiracy that is the subject of YOUR COMPLAINT.

With the exception of Interrogatories 12 and 15, these requests appear to encompass attorney-client privileged communications and attorney work product.  In balancing the interests of protecting privileged communications, potential relevance and burden, the undersigned recommends granting the motion with respect to Interrogatories 12 and 15 and denying the motion without prejudice as to Interrogatories 10-11, 16 and Requests for Production 3 and 4.

Accordingly, any DAP that has failed to provide substantive responses to Thomson's Interrogatories 12 and 15 should provide updated discovery responses.  The date of first learning of the existence of the conspiracy and evidence causing the filing of the complaint should not be protected by the attorney-client privilege or the work product doctrine.  If these responses do implicate confidential and privileged attorney client communications and attorney work product, any DAP claiming such a privilege should comply with FRCP 26(b)(5)(A).

If the DAPs' responses to Interrogatories 12 and 15 create a sufficient basis, then Thomson may file a renewed motion on Interrogatories 10-11, 16 and Requests for Production 3 - 4.

## A. Thomson's Statute of Limitations Defense

The DAPs assert that the discovery sought is not relevant because it cannot support a valid statute of limitations defense and laches is not an available defense.  Both parties rely on the court's 3/13/14 Order, which addresses in detail these two Thomson defenses and makes relevant determinations that the undersigned must consider, including the following:

1. "the Court has held that parties to this case knew or should have known of the possibility of bringing suit by November 2007, when various governments issued press releases concerning the CRT price-fixing conspiracy and lawsuits were filed around the world."[4]

2. "the Court finds that Sharp's claims are tolled under the doctrine of fraudulent concealment until November 14, 2007, the latest date on which the Court has found such tolling appropriate given worldwide press releases and lawsuits concerning this alleged conspiracy;"[5]

3. "*American Pipe* tolls Sharp's federal claims against Thomson SA between January 28, 2008, and March 16, 2009;"[6]

4. "[t]he Court holds that [15 USC] §16(i) tolls Sharp's federal claims from February 10, 2009, when the first indictment issued, until today.  The same reasoning applies to Plaintiffs' claims under the Donnelly Act, which the parties do not fully address in

---

[4] 3/13/14 Order at 18.
[5] 3/13/14 Order at 22.
[6] 3/13/14 Order at 24.

their briefing.  Since the Donnelly Act's tolling provision maps to the federal law, Sharp's Donnelly Act claim is tolled for the pendency of the federal criminal proceedings."[7]

5.   "[A]ll of the DAPs' state law claims against the Thomson Defendants are DISMISSED WITH PREJUDICE as untimely, except any Donnelly Act claims, which are tolled by governmental action.  The federal claims are also tolled by governmental action."

Thus, the DAPs' federal and Donnelly Act claims survived the Thomson motion to dismiss but the state law claims were time-barred.  According to the court, the federal and Donnelly Act claims were not barred by the four-year statute of limitations because the fraudulent concealment doctrine tolled the claims until November 14, 2007, class action tolling applied from 1/28/08 to 3/16/09, and governmental action tolling applied from 2/10/09 to the present.  See Attachment A, Tolling Timeline.  There is only about a two-month period after the end of fraudulent concealment tolling to the start of class action tolling which extends into the government action tolling period.  As a result, it appears that the only evidence relevant to Thomson's statute of limitations defense would be any DAP investigations that push the fraudulent concealment tolling back to around January 2004, which may establish that the DAPs' actions were not timely.

The Federal Rules allow discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense."  FRCP 26(b).  Thomson's Interrogatories 12 and 15 are directed to the timing of the DAPs' first awareness of claims against Thomson and may lead to relevant information if any of the DAPs answer Interrogatory No 12 with a date sufficiently before November 14, 2007 to invoke the four-year statute of limitations.

---

[7] 3/13/14 Order at 29.

To the extent any DAP responds to Interrogatories 12 and 15 by stating that its earliest knowledge of the existence of a claim against Thomson was on or after a date within the four-year statute of limitations period, there would be no need for or relevance of any further discovery into the timing and nature of the DAPs' investigation into claims against Thomson. Given the court's determinations on the class action and governmental action tolling periods, it appears that discovery into the nature of the DAPs' investigation of claims against Thomson after November 2007 and within the statute of limitations period would not be relevant to a statute of limitations defense. Arguably, only evidence of investigation predating the four-year statute of limitations would be relevant and warrant further discovery.

### B.  Thomson's Laches Defense

Thomson next contends that the requested discovery is vital to its laches defense.

As the court noted, there is a 'strong presumption' that laches is inapplicable to claims brought within the statutory period.  3/13/14 Order at 30 (citing *Jarrow*, 304 F.3d at 835-36).  In light of the court's determination that the DAPs' federal and Donnelly Act claims were filed within the relevant statute of limitations, the discovery sought would not establish an unreasonable delay in bringing suit, as required for proving laches.

The DAPs also rely on the Supreme Court decision, *Petrella v Metro-Goldwyn Mayer, Inc*, 132 S Ct 1962, 1974 (2014), for the proposition that "in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief."  *Petrella* held that the equitable defense of laches "cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window [of the Copyright Act's three-year statute of limitations, 17 USC 507(b)]."  132 S Ct at 1967.  The majority noted that the dissent did not cite a single case in which this Court has approved the application of laches to bar a claim for damages brought within the time allowed by a federal statute of limitations.  132 S Ct at 1974.

Thomson distinguishes *Petrella* because it involved the unique rules of the Copyright Act, whereas the Clayton Act, so Thomson contends, lacks analogous provisions.  But the Clayton Act, like the Copyright Act, provides a clear statute of limitations.  *Agency Holding Corp v Malley-Duff & Assoc*, 483 US 143, 156 (1987) (applying four-year statute of limitations of the Clayton Act, 15 USC §15b: "Any action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued").  The language of the Clayton Act statute of limitations is very similar to that of the Copyright Act:  "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).

In light of existing Ninth Circuit case law and the Supreme Court's *Petrella* decision, it appears highly unlikely that laches would be a viable defense if the claims were filed within the applicable statute of limitations.  Thus the discovery Thomson seeks would not lead to evidence relevant to a laches defense.

II.     **The DAPs' Intention to Opt Out of the DPP Class**

Thomson's second motion seeks further responses to the following discovery from Thomson's second set of interrogatories and requests for production of documents:

**Interrogatory No 1**:  If You contend that the statute of limitations on the claims in Your Complaint were tolled under any tolling agreement between Thomson SA, Thomson Consumer Electronics, Inc. (n/k/a Technicolor USA, Inc.) ("Thomson Consumer"), and the Direct Purchaser Plaintiffs in Case No. 3:07-cv-5944, MDL No. 1917, describe in detail and in narrative form (including by Identifying each Document, Person, or other evidentiary source that You rely upon) the factual basis for your contention, including:

a) The dates on which You contend tolling began and ended;

b) Any period during which You contend You were a member of the putative Direct Purchaser Plaintiff Class (the "Class"); and

c) Any communications with counsel for the Class, Defendants, or alleged Conspirators regarding your intention to opt out of the Class with regard to any settlement or litigation Class involving any Defendant or alleged Conspirator.

**Request For Production No. 2:**  All Documents which reflect communications between You and the Direct Purchaser Plaintiffs, any class action administrator, any Defendant or Conspirator in this litigation, or any other Person regarding your intention to exclude Yourself from any putative or certified Direct Purchaser Plaintiff Class, including copies of any opt-out or exclusion notices sent by You in this litigation.

Thomson claims that the DAPs have stated that they are entitled to rely on a November 2011 tolling agreement between Thomson and the DPPs because at the time, the DAPs were members of the DPP class, had not yet opted out and were entitled to rely on the benefit of the Thomson/DPP tolling agreement.  Thomson asserts that because the DAPs have put this into issue, it is entitled to discovery on the DAPs' intention to opt-out of the DPP class.  Thomson states that "[i]f a particular DAP communicated to counsel for the DPP class that it wished to opt-out of the DPP class in its entirety that DAP may not rely on a tolling agreement that only applies to members of the DPP class."  9/19/14 Osborn letter at 4.  But Thomson concedes there is little or no case law directly on point.  Instead, Thomson cites to California cases describing waiver as "the intentional relinquishment of a known right."

But the cases cited do not support Thomson's focus on intent alone.  Waiver must be a knowing and intentional act, not an inadvertent statement or a mere expression of intent.  An act as important as opting out of a class and waiving any rights to benefits of the class should

only be achieved by a clear and knowing opt-out notice.  Accordingly, it is hard to imagine how the discovery Thomson seeks on the DAPs' "intention" can be relevant to a waiver of rights.

Additionally, the DPP/Thomson tolling agreement overlaps with the government action tolling period,[8] indicating that reliance on the DPP/Thomson tolling agreement is unnecessary and discovery into the DAPs' intent to opt-out of the DPP class is neither relevant nor reasonably calculated to lead to admissible evidence.

All the DAPs except TechData have agreed to provide Thomson with their official opt-out notices.  The undersigned finds that the official opt-out notices are sufficient responses to these discovery requests.  If TechData has not yet produced its official opt-out notice to Thomson, it should do so promptly.

## III.    Scope of the CRT Conspiracy

Thomson also seeks further responses to Interrogatories 13 and 14:

**Interrogatory No. 13**:  Do YOU contend that Thomson Consumer participated in the alleged conspiracy to fix the price of and/or reduce the output of CDTs during the relevant period?  If you do so contend, IDENTIFY all DOCUMENTS or EVIDENCE that support YOUR contention that Thomson Consumer participated in such a conspiracy regarding CDTs.

**Interrogatory No. 14**:  Do YOU contend that Thomson SA participated in the alleged conspiracy to fix the price of and/or reduce the output of CDTs during the relevant period?  If YOU do so contend, IDENTIFY all DOCUMENTS or EVIDENCE that

---

[8] See Attachment A, Tolling Timeline.

support YOUR contention that Thomson SA participated in such a conspiracy regarding CDTs.

The DAPs assert that they have identified the documents and evidence requested, including an enumerated list of documents. 10/3/14 Benson letter at 11. Thomson does not contest that the DAPs provided answers, but challenges the form of the answers: "Rather than respond to the discovery served, DAPs' interrogatory answers pointed to an undifferentiated mass of documents and information concerning the Thomson Defendants' alleged contacts with its former CPT competitors." 10/10/14 Osborn letter at 3. Thomson asserts entitlement to "show that they did not participate in a conspiracy concerning a product [CDTs] they did not make." *Id.*

Apparently, Thomson seeks (a) identification of documents that evidence its participation in a CDT conspiracy; and (b) an admission by DAPs that they cannot identify any such evidence. *Id.* But Thomson has already received documents satisfying prong (a). And Thomson has already received admissions from the DAPs that they have no evidence that Thomson manufactured or sold CDTs or CDT Products during the Relevant Period. 10/10/14 Osborn letter at 2, n 2. Since Thomson has already obtained adequate responses to Interrogatories 13 and 14, its motion to compel further responses to Interrogatories 13 and 14 should be denied.

Accordingly, the undersigned ORDERS as follows:

**Thomson's motion to compel is GRANTED with respect to Interrogatories 12 and 15 and DENIED without prejudice with respect to Interrogatories 1-11, 16 and Requests for Production 3-4. All DAPs shall serve updated responses to Interrogatories 12 and 15 no later than January 9, 2015. If, after receipt of the DAPs' responses to Interrogatories 12 and 15, Thomson can articulate sufficient basis for discovery into the DAPs' investigation into claims against Thomson (Interrogatory Nos 10-11, 16 and Requests for Production Nos 3-4), Thomson may renew its motion as to those requests no later than January 16, 2015.**

1    Thomson's motions to compel are DENIED with respect to the remaining discovery

2    requests because they are not relevant, not likely to lead to admissible evidence, protected

3    by the attorney-client privilege or work product doctrine or have already received adequate

4    responses.

5    IT IS SO ORDERED.

6

7    Date:  December 24, 2014

8

9    _____

     Vaughn R Walker

10   United States District Judge (Ret)

11

12   The Recommended Order of the Special Master is Accepted and Ordered / Denied / Modified.

13

     Date:  _____

14

15

16   _____

     Honorable Samuel Conti

17   United States District Judge

18

19

20

21

22

23

24

25

26

27

28

ORDER RE THOMSON'S MOTION TO COMPEL DISCOVERY FROM DAPS                    PAGE 12 OF 12

# TOLLING TIMELINE

## Pre-2007 to Present



1. See 3/13/14 Order at 22, No. 3:07-cv-05944SC, Dkt 2440 (ND Cal 2014).
2. See 3/13/14 Order at 24 (tolling federal claims).
3. See 3/13/14 Order at 29 (tolling federal and Donnelly Act claims from 2/10/09 to present).
4. DPP Thomson tolling agreement not addressed in 3/13/14 Order.

**Attachment A**