# Exhibit 1



**Kathy L. Osborn**
*Partner*
kathy.osborn@FaegreBD.com
Direct **+1 317 237 8261**

Faegre Baker Daniels LLP
2200 Wells Fargo Center ▾ 90 South Seventh Street
Minneapolis ▾ Minnesota 55402-3901
Phone **+1 612 766 7000**
Fax **+1 612 766 1600**

September 12, 2014

*Highly Confidential*

**VIA E-MAIL (JAY.WEIL@FEDARB.COM)**

Hon. Vaughn R. Walker
c/o Mr. Jay Weil
Federal Arbitration, Inc.
288 Hamilton Avenue, 3rd Floor
Palo Alto, California  94301

Re:   *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, Master Case No. 3:07-cv-05944-SC — Motion to Compel Interrogatory Responses and Document Production

Dear Judge Walker:

   Thomson SA and Thomson Consumer Electronics, Inc. ("Thomson Consumer" and, collectively with Thomson SA, "Thomson Defendants") hereby move to compel the Direct Action Plaintiffs ("DAPs")[1] to respond fully to certain interrogatories and requests for production ("RFPs") served on them by the Thomson Defendants. The Thomson Defendants certify that they have conferred with counsel for the DAPs in an effort to obtain the information sought, but have reached an impasse requiring Court intervention.[2] As described below, the Thomson Defendants seek to compel information and document production related to their laches and statute of limitations defenses and the scope of the Thomson Defendants' alleged participation in the alleged conspiracy.

---

[1] This motion is directed at the following DAPs: ABC Appliance, Inc., Electrograph Systems, Inc. and Electrograph Technologies Corp., Interbond Corporation of America, MARTA Cooperative of America, Inc., Office Depot, Inc., P.C. Richard & Son Long Island Corporation, Schultze Agency Services, LLC ("Tweeter"), Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., BestBuy.com, L.L.C., Magnolia Hi-Fi, Inc., Costco Wholesale Corporation, Sears, Roebuck, and Co., Kmart Corp., Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc., Alfred H. Siegel, as trustee of the Circuit City Stores, Inc., Target Corporation, Tech Data Corporation and Tech Data Product Management, Inc.

[2] *E.g.,* September 12, 2014, Declaration of Jeffrey Roberts ("Roberts Decl.") ¶ 3, Exs. 1–2 (August 28, 2014, letter summarizing results of discovery meet and confer; September 9, 2014, letter describing scope of motion to compel).

US.54858283.02

Hon. Vaughn R. Walker                        -2-                        September 12, 2014

## LEGAL STANDARDS

The Federal Rules of Civil procedure authorize broad discovery "regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Federal Rules authorize motions to compel production to remedy an opposing party's evasive or incomplete answers or disclosures. Fed. R. Civ. P. 37(a)(1), (3)–(4). Under the "liberal discovery principles" codified in the Federal Rules, a party opposing discovery "carr[ies] a heavy burden of showing why discovery was denied." *Blankenship v. Hearst Corp*, 519 F.2d 418, 429 (9th Cir. 1975). The party seeking to compel discovery need only show that its request complies with the broad relevancy requirements of Rule 26(b)(1) to put the opposing party to its heavy burden. *Colavo v. ASIC Advantage Simplified Pension Plan*, ___ F.R.D. ___, 2014 WL 3592806, at *2 (N.D. Cal. 2014).

## ARGUMENT

A.  **DAPs should be compelled to provide complete answers and disclosures regarding the nature and timing of the investigations they conducted into their potential claims against the Thomson Defendants, because these facts are directly relevant to the Thomson Defendants' laches and statute of limitations defenses.**

Inexplicably, the DAPs waited until 2013—approximately 8 years after the Thomson Defendants exited the CRT business and 6 years after these actions began—to first file claims against the Thomson Defendants. The DAPs' unjustified delay has severely and irremediably prejudiced the Thomson Defendants. Accordingly, in motions to dismiss the DAPs' complaints, the Thomson Defendants argued that laches and the applicable statutes of limitation barred the DAPs' claims. In response, the DAPs contended that: (1) the statutes of limitation have been tolled based on the defendants' fraudulent concealment and (2) laches does not bar their claims because their multi-year delay in bringing suit against the Thomson Defendants was justified. [Dkt. No. 2377 at 19-23.] The DAPs cannot take these positions and then refuse to produce evidence regarding the nature and timing of the investigations that led them to sue Thomson. Moreover, in its March 13, 2014 Order denying the Thomson Defendants' motions to dismiss, the Court expressly stated that "it is difficult not to find some delay" and the Thomson Defendants could re-assert their laches arguments after discovery "on a more developed record." [Dkt. No. 2440 at 30].

To discover facts relating to these defenses, the Thomson Defendants propounded the following interrogatories and document requests ("RFPs"):

**Interrogatory No. 10:** IDENTIFY each PERSON employed or controlled by YOU who participated in YOUR investigation into whether the Thomson Defendants participated in the conspiracy that is the subject of YOUR COMPLAINT.

**Interrogatory No. 11**: IDENTIFY all DOCUMENTS each PERSON IDENTIFIED in Response to Interrogatory No. 10 reviewed during YOUR investigation into whether the Thomson Defendants participated in the conspiracy that is the subject of YOUR COMPLAINT.

Hon. Vaughn R. Walker -3- September 12, 2014

> **Interrogatory No. 12:** IDENTIFY when YOU first learned of the existence of the conspiracy that is the subject of YOUR COMPLAINT.
>
> **Interrogatory No. 15:** IDENTIFY the EVIDENCE and DOCUMENTS YOU discovered and the date YOU discovered the EVIDENCE and DOCUMENTS that caused YOU to file YOUR COMPLAINT against the Thomson Defendants.
>
> **Interrogatory No. 16:** Explain why YOU did not name Thomson Consumer as a defendants in your original complaint, [name of complaint and case number] filed by YOU on or about [date complaint filed] in the [name of court in which complaint originally filed].[3]
>
> **RFP No. 3:** All DOCUMENTS related to when YOU investigated, or attempted to investigate, the existence of the alleged antitrust conspiracy that is the subject of YOUR COMPLAINT.
>
> **RFP No. 4:** All DOCUMENTS related to when YOU learned of the existence of the alleged antitrust conspiracy that is the subject of YOUR COMPLAINT.

The DAPs have refused to provide substantive responses to these discovery requests,[4] claiming that these facts are protected from disclosure by the attorney-client privilege and work product doctrine.

The evidence sought by these discovery requests is vital to the Thomson Defendants' ability to prove their laches and statute of limitations defenses and cannot be obtained via any other means. In communications with DAPs, the Thomson Defendants have clarified that they only seek information regarding the nature and timing of the investigations the DAPs conducted prior to filing their complaints against the Thomson Defendants. As explained below, the Court should order the DAPs to provide complete responses to the Thomson Defendants' requests because there is a substantial need for this information, it is central to Thomson Defendants' defenses, and the DAPs have waived any potential attorney-client privilege.

> 1. *The Attorney-Client Privilege and Work-Product Doctrine Do Not Shield Underlying Facts from Discovery.*

The Interrogatories and RFPs at issue here overwhelmingly concern the underlying facts related to DAPs' investigation of their claims against the Thomson Defendants, including who conducted the investigation, when, and what documents were consulted. It is hornbook law that underlying facts are not shielded from disclosure by the attorney-client privilege or work-product doctrines. *E.g., Upjohn*

---

[3] The Thomson Defendants did not serve Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. with Interrogatory No. 16 because these plaintiffs included the Thomson Defendants in their original complaint.

[4] The discovery requests and relevant excerpts from the DAPs' answers and responses are attached as Exhibits 3 – 26 to the declaration of Jeffrey Roberts submitted in conjunction with this motion.

*Co. v. U.S.*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."); *Moore v. Dollar Tree Stores, Inc.,*1:13–cv–01336–LJO–BAM, 2014 WL 2039995, at *5 (E.D. Cal. May 16, 2014) ("The plain language of Rule 26 limits the scope of the attorney work product doctrine to documents and tangible things, not the underlying facts."); *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 165 (N.D. Cal. 2011) ("Although the work-product doctrine protects documents, it does not protect factual information within the documents."); *see also Parker v. Kitzhaber*, No. 88-1089, 1989 WL 69960, at * 1 (D. Or. June 8, 1989) ("The attorney-client privilege is inapplicable to the extent that the interrogatory seeks the names, addresses, telephone numbers, titles, and dates of contact with client representatives."). Furthermore, "the work product doctrine does not protect discovery of the underlying facts of a particular dispute, even if [the] response to a particular factual question is based upon information provided by counsel." *Barrett Indus. Trucks, Inc. v. Old Republic Ins. Co.*, 129 F.R.D. 515, 518 (N.D. Ill. 1990). Indeed, "courts [have] consistently held that the work product concept furnishe[s] no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she ha[s] learned such facts, or the existence or nonexistence of documents," even in instances where those documents may not be subject to discovery." RICHARD L. MARCUS, 8 FED. PRAC. & PROC. CIV. § 2023 (3d. ed.).

### 2. By Suing the Thomson Defendants (at the Eleventh Hour), DAPs Have Impliedly Waived the Attorney-Client Privilege as to Laches and the Statutes of Limitation.

Moreover, to the extent the attorney-client privilege even arguably applies to information responsive to the relevant discovery requests, DAPs have impliedly waived the privilege.[5] Courts in the Ninth Circuit apply the test for implied waiver set forth in *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975). *E.g., Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). "Under *Hearn*, an implied waiver of the attorney-client privilege occurs when (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." *Id.*

Judge Whyte of the Northern District has explained how implied waiver of the attorney-client privilege under the *Hearn* test occurs by a party seeking to avoid a statute of limitations defense— exactly what has occurred here. In *Rambus Inc. v. Samsung Elecs. Co., Ltd.*, Nos. C-05-02298, C-05-00334, 2007 WL 3444376 (N.D. Cal. Nov. 13, 2007), Samsung claimed Rambus aided and abetted its former employee to improperly disclose confidential information to Rambus, both while the employee worked for Samsung and after he left Samsung. Samsung also alleged that its ability to investigate its potential claims was impeded by fraudulent concealment, so Rambus served RFPs concerning Samsung's basis for avoiding the statute of limitations. *Id.* at *1-2. Addressing the first prong of the

---

[5] Despite promising they would do so, most DAPs have failed to provide the Thomson Defendants with privilege logs cataloging which responsive documents have been withheld on the basis of privilege making it impossible for the Thomson Defendants to further analyze the DAPs' assertions of privilege. *Cf. Rambus Inc. v. Samsung Elecs. Co., Ltd.*, Nos. C-05-02298, C-05-00334, 2007 WL 3444376, at * 1 (N.D. Cal. Nov. 13, 2007) (discussing and analyzing privilege logs in course of considering privilege waiver dispute).

Case 4:07-cv-05944-JST   Document 3374-3   Filed 01/07/15   Page 6 of 10

Hon. Vaughn R. Walker                                    -5-                              September 12, 2014

*Hearn* test, Judge Whyte explained that "the *Hearn* test explicitly contemplates allowing a party's pleadings to raise an issue giving rise to an implied privilege waiver." *Id.* at *3. Judge Whyte further explained that "alleging a basis for avoiding a statute of limitations constitutes an affirmative act under the *Hearn* test," emphasizing that leading treatises concerning privilege issues concur. *Id.* (citing EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE, at 544 (5${}^{th}$ ed. 2007) ("[E]ach time a plaintiff brings a suit, he tacitly puts into issue the question of whether the statute of limitations [has] run.").

Here, by waiting 6 years until after the first suits were filed by plaintiffs in these actions to first file claims against the Thomson Defendants, the DAPs have placed their inexcusable delay, and their basis for avoiding the Thomson Defendants' statute of limitations and laches defenses, at issue. *Id.*; *e.g.,* Dkt. No. 2377-3 (DAPs Opposition to Thomson Consumer's Motion to Dismiss Complaints) at 19-23. This satisfies the first prong of *Hearn.*

As to the second prong, Judge Whyte explained that a party's subjective knowledge of its claims is relevant to fraudulent concealment and equitable tolling and puts related protected information at issue. *Rambus*, at *4. To avoid the statute of limitations and laches defenses asserted by the Thomson Defendants, the DAPs have asserted fraudulent concealment and claimed that their delay in filing claims against the Thomson Defendants was justified. When the DAPs knew or should have known of their claims against the Thomson Defendants is an element of laches. *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001) ("Laches is an equitable defense that prevents a plaintiff, who with full knowledge of the facts . . . sleeps upon his rights.") (quotations and citation omitted). Accordingly, facts regarding the nature and timing of the DAPs' investigation into their claims, including facts regarding their subjective knowledge of their potential claims, are relevant and discoverable. Therefore, the second prong of *Hearn* is satisfied.

Finally, analyzing the third prong, Judge Whyte affirmed the Special Master's determination that information concerning "the timing and scope of … [Samsung's] investigation" and evidence concerning Samsung's allegation that it "could not investigate potential claims until 2005" was vital to Rambus. *Id.* at 2, 4-5. Judge Whyte explained that when the evidence necessary to a party's defense is held solely by the opposing party, that information is "vital" under *Hearn*: "Only Samsung knows what information it claims Steinberg misused; it cannot conceal what allegedly 'confidential' information Steinberg misappropriated while simultaneously accusing Rambus of misusing it. The Special Master's findings that both categories of information are vital to Rambus' case was not clearly erroneous; far from it, the Special Master's findings were correct." *Rambus*, at *5. Here, Thomson finds itself in a similar position. Only DAPs possess information regarding what investigations of potential claims against the Thomson Defendants they did or did not undertake and when those investigations occurred. Whether their multi-year delay was justified can be proven only by information currently in DAPs' possession. Without the discovery sought, the Thomson Defendants have no way of effectively pursuing their laches and statute of limitations defenses and no way of obtaining the facts needed to test

Hon. Vaughn R. Walker -6- September 12, 2014

the factual accuracy of the DAPs' assertions as to why these defenses do not bar their claims.[6] *See Bittaker v. Woodford*, 331 F.3d 715, 720-21 (9th Cir. 2003) (en banc)) ("If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it.").

Because all elements of the *Hearn* test have been satisfied, the attorney client privilege does not shield information relevant to the Thomson Defendants' laches and statute of limitations defenses. Unless DAPs would prefer to dismiss their claims against the Thomson Defendants, the Court should order DAPs to provide fulsome answers to Interrogatories 10-12, 15-16 and RFPs 3-4. *Id.* at *6 ("Courts that find an implied waiver "[do] not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claims implicating them.") (citing *Bittaker*, 331 F.3d at 720-21).

   3.  ***The Thomson Defendants' Substantial Need for the Materials Sought and Inability to Obtain Equivalent Information by Other Means Overrides DAPs' Work-Product Assertion.***

DAPs may not hide behind the work-produce doctrine because there is a substantial need for the information the Thomson Defendants have requested and it is not available from any source other than DAPs.

The work-product doctrine shields from discovery, on a qualified basis, "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). The privilege is qualified, however, because Rule 26 explicitly authorizes disclosure of work product when "a party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* at 26(b)(3)(A)(ii).

The discovery sought by the Thomson Defendants easily satisfies these standards. Information concerning the timing and scope of the DAPs' investigation into their claims is central to the Thomson Defendants' laches and statute of limitations defenses and is not available from any other source. Even in instances where work product is, at least theoretically, independently available to a party, courts order its production. *See Vallabharpurapu*, 276 F.R.D. at 617-18 (finding substantial need and ordering production of surveys that Plaintiffs could have independently replicated themselves at an excessive cost). Here, the only source of information concerning DAPs' investigation is the DAPs themselves and documents in their possession. By discovering this information, the Thomson Defendants are neither trying to avoid expenses they should rightfully incur, nor are they trying to piggyback on the work of DAPs' counsel. Rather, the Thomson Defendants simply seek essential facts that cannot be obtained from any other source.

---

[6] [redacted]

US.54858283.02

Hon. Vaughn R. Walker -7- September 12, 2014

As noted above, when denying the Thomson Defendants' motions to dismiss, the Court stated that the Thomson Defendants could re-assert their laches arguments "on a more developed record" following discovery. (Dkt. No. 2440 at 30.) Thus far, DAPs have improperly impeded the Thomson Defendants' attempts to develop that record. Accordingly, the Court should order the DAPs (1) to provide complete, non-evasive responses to the Thomson Defendants' relevant interrogatories and RFPs or (2) dismiss their claims against the Thomson Defendants.

**B.     DAPs Cannot Withhold Discovery Regarding the Thomson Defendants' Alleged Participation in Alleged CDT Price Fixing Agreements.**

Finally, DAPs have refused to provide basic information regarding their allegations that the Thomson Defendants have participated in a conspiracy regarding both color display tubes (CDTs) and color picture tubes (CPTs). As the Court is likely aware, CDTs are a kind of cathode ray tube (CRT) used in computer monitors. While the Thomson Defendants were at one time involved in the production and sale of CPTs, the type of CRTs used in televisions, they *never* manufactured or sold CDTs during the Relevant Period (1995 – 2007). Indeed, each DAP has admitted—as it must—that there is no evidence that either Thomson SA or Thomson Consumer ever manufactured or sold CDTs or products containing CDTs during the Relevant Period.[7]

Notwithstanding that the Thomson Defendants never manufactured CDTs or CDT-containing products, DAPs have alleged that the Thomson Defendants participated in a conspiracy to fix the prices of CDTs.[8] Indeed, DAPs such as Electrograph and Tech Data, who only seek damages from defendants related to their purchase of computer monitors containing CDTs, seek tens of millions of dollars in damages from the Thomson Defendants. Therefore, Thomson Defendants asked the following basic questions regarding DAPs' allegations[9]:

**Interrogatory No. 13:** Do YOU contend that Thomson Consumer participated in the alleged conspiracy to fix the price of and/or reduce the output of CDTs during the relevant period? If you do so contend, IDENTIFY all DOCUMENTS or EVIDENCE that support YOUR contention that Thomson Consumer participated in such a conspiracy regarding CDTs.

**Interrogatory No. 14:** Do YOU contend that Thomson SA participated in the alleged conspiracy to fix the price of and/or reduce the output of CDTs during the relevant period? If YOU do so contend, IDENTIFY all DOCUMENTS or EVIDENCE that

---

[7] Specifically, DAPs all admitted the following Requests for Admission: (1) Admit that You have no Evidence that Thomson SA manufactured or sold CDTs during the Relevant Period; (2) Admit that You have no Evidence that SA manufactured or sold CDT Products during the Relevant Period; (3) Admit that You have no Evidence that Thomson Consumer manufactured or sold CDTs during the Relevant Period; (4) Admit that You have no Evidence that Thomson Consumer manufactured or sold CDT Products during the Relevant Period. (Roberts Decl. ¶ 5.)

[8] *See, e.g.,* Complaint of Alfred H. Siegel as Trustee for Citcuit City Stores, Inc. at ¶ 3("Defendants and their co-conspirators are or were among the leading manufacturers of … (b) color display tubes ("CDTs") ….")

Hon. Vaughn R. Walker                           -8-                         September 12, 2014

      support YOUR contention that Thomson SA participated in such a conspiracy regarding CDTs.

      DAPs did not answer these questions. Rather, they merely referred to documents and prior discovery responses concerning the Thomson Defendants' alleged contacts with its former *CPT* competitors. This information has nothing to do with CDTs. DAPs have refused to identify CDT-specific evidence (or admit the lack thereof) because they claim it is their theory that the Thomson Defendants participated in an overarching conspiracy concerning all CRTs. This is not an appropriate basis for opposing discovery.

      A party cannot resist discovery by imposing its theory of the case on its opponent, thereby constricting the scope of discovery authorized by Federal Rule of Civil Procedure 26. Instead, each party "is entitled to inquire and to examine upon its theory of the facts and law of the case and is not limited to the … [opponent's] theory." *United States v. 216 Bottles, More or Less, of Sudden Change*, 36 F.R.D. 695, 700 (E.D.N.Y. 1965); *accord Humphreys v. Regents of the Univ. of Cali.*, No. C 04-03808, 2006 WL 870963, at *2 (N.D. Cal. Apr. 3, 2006) ("Clearly … defendants are not allowed to limit discovery based merely upon their theory of the case."); RICHARD L. MARCUS, 8 FED. PRAC. & PROC. CIV. § 2011 (3d. ed.) ("[A] party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the opponent's theory.") Moreover, failing to respond to discovery based upon one's theory of the case attempts to improperly turn discovery objections into "a vehicle for deciding the merits of a case." *Clark Motor Co, Inc. v. Manufacturers & Traders Trust*, *Co.*, Case No. 4:07-CV-856, 2008 WL 2498252, at *1–3 (M.D. Penn. June 18, 2008) (parties served with discovery must provide factual answers, not litigation arguments). Ordering DAPs to specifically answer the interrogatories, as served, will allow the Thomson Defendants to fully understand the allegations against them and will have no impact on DAPs' ability to present their case as they see fit under whatever theory they choose.

      DAPs made the choice to allege that Thomson Defendants participated in a conspiracy to fix the prices of CDTs—products the Thomson Defendants did not sell or manufacture. Having made these allegations, DAPs must explain the factual basis for them.

## **CONCLUSION**

      For the reasons set forth above, the Court should order the DAPs to fully respond to the discovery requests at issue in this motion.

Hon. Vaughn R. Walker -9- September 12, 2014

        Respectfully submitted,

        /s/ Kathy L. Osborn

        Kathy L. Osborn

        Faegre Baker Daniels LLP
        *Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.*

US.54858283.02