# **Exhibit 5**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW
WASHINGTON, DC 20006-1047

TELEPHONE (202) 223-7300

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER
(202) 223-7343

WRITER'S DIRECT FACSIMILE
(202) 223-7410

WRITER'S DIRECT E-MAIL ADDRESS
cbenson@paulweiss.com

1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE (212) 373-3000

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU, CHAOYANG DISTRICT
BEIJING 100020, PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

PARTNERS RESIDENT IN WASHINGTON

DAVID J. BALL
CRAIG A. BENSON
PATRICK S. CAMPBELL
CHARLES E. DAVIDOW
KENNETH A. GALLO
MARK F. MENDELSOHN
JANE B. O'BRIEN
ALEX YOUNG K. OH
JOSEPH J. SIMONS
ALEXANDRA M. WALSH
BETH A. WILKINSON

PARTNERS NOT RESIDENT IN WASHINGTON

MATTHEW W. ABBOTT*
ALLAN J. ARFFA
ROBERT A. ATKINS*
JOHN F. BAUGHMAN*
LYNN B. BAYARD*
DANIEL J. BELLER
MITCHELL L. BERG*
MARK S. BERGMAN
BRUCE BIRENBOIM*
H. CHRISTOPHER BOEHNING*
ANGELO BONVINO*
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN*
SUSANNA M. BUERGEL*
JESSICA S. CAREY*
JEANETTE K. CHAN*
YVONNE Y. F. CHAN*
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH*
CHRISTOPHER J. CUMMINGS*
DOUGLAS R. DAVIS*
THOMAS V. DE LA BASTIDE III*
ARIEL J. DECKELBAUM*
ALICE BELISLE EATON*
ANDREW J. EHRLICH*
GREGORY A. EZRING*
LESLIE GORDON FAGEN
MARC FALCONE*
ROSS A. FIELDSTON*
ANDREW C. FINCH
BRAD J. FINKELSTEIN*
BRIAN P. FINNEGAN*
ROBERTO FINZI
PETER E. FISCH*
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY*
HARRIS B. FREIDUS*
MANUEL S. FREY*
ANDREW L. GAINES*
MICHAEL E. GERTZMAN*
ADAM M. GIVERTZ*
SALVATORE GOGLIORMELLA*
ROBERT D. GOLDBAUM*
NEIL GOLDMAN*
ERIC GOODISON*
CHARLES H. GOOGE, JR.*
ANDREW G. GORDON*
UDI GROFMAN*
NICHOLAS GROOMBRIDGE*
BRUCE A. GUTENPLAN*
GAINES GWATHMEY, III
ALAN S. HALPERIN*
JUSTIN G. HAMILL*
CLAUDIA HAMMERMAN*
GERARD E. HARPER
BRIAN S. HERMANN*
ROBERT M. HIRSH
MICHELE HIRSHMAN*
MICHAEL S. HONG*
DAVID S. HUNTINGTON*
LORETTA A. IPPOLITO*
JAREN JANGHORBANI*
MEREDITH J. KANE*
ROBERTA A. KAPLAN*
BRAD S. KARP*
PATRICK N. KARSNITZ*
JOHN C. KENNEDY*
BRIAN KIM*
ALAN W. KORNBERG
DANIEL J. KRAMER*
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL*
XIAOYU GREG LIU*
JEFFREY D. MARELL*
MARCO V. MASOTTI*
EDWIN S. MAYNARD*
DAVID W. MAYO*
ELIZABETH R. McCOLM*
WILLIAM B. MICHAEL*
TOBY S. MYERSON*
CATHERINE NYARADY*
BRAD R. OKUN*
KELLEY D. PARKER*
MARC E. PERLMUTTER*
VALERIE E. RADWANER*
CARL L. REISNER
LORIN L. REISNER*
WALTER G. RICCIARDI
WALTER RIEMAN*
RICHARD A. ROSEN
ANDREW N. ROSENBERG*
JACQUELINE P. RUBIN*
RAPHAEL M. RUSSO*
ELIZABETH M. SACKSTEDER*
JEFFREY D. SAFERSTEIN*
JEFFREY B. SAMUELS*
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER*
ROBERT B. SCHUMER*
JAMES H. SCHWAB*
JOHN M. SCOTT*
STEPHEN J. SHIMSHAK*
DAVID R. SICULAR*
MOSES SILVERMAN
STEVEN SIMKIN*
MARILYN SOBEL
AUDRA J. SOLOWAY*
SCOTT M. SONTAG*
TARUN M. STEWART*
ERIC ALAN STONE*
AIDAN SYNNOTT*
ROBYN F. TARNOFSKY*
MONICA K. THURMOND*
DANIEL J. TOAL*
LIZA M. VELAZQUEZ*
MARIA T. VULLO*
LAWRENCE G. WEE*
THEODORE V. WELLS, JR.
STEVEN J. WILLIAMS*
LAWRENCE I. WITDORCHIC*
MARK B. WLAZLO*
JULIA T.M. WOOD
JORDAN E. YARETT*
KAYE N. YOSHINO*
TONG YU*
TRACEY A. ZACCONE*
T. ROBERT ZOCHOWSKI, JR.*

*NOT AN ACTIVE MEMBER OF THE DC BAR

October 3, 2014

By Email and Federal Express

Hon. Vaughn R. Walker (Ret.)
c/o Mr. Jay Weil
Federal Arbitration, Inc.
288 Hamilton Avenue, 3rd Floor
Palo Alto, California 94301
jay.weil@fedarb.com

Re: *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-5944-SC, MDL No. 1917 – Direct Action Plaintiffs' Letter Brief in Opposition to Thomson's Motions to Compel Dated 9/12/2014 and 9/19/2014

Dear Judge Walker:

In an effort to support meritless statute of limitations and laches defenses, Thomson SA and Thomson Consumer Electronics, Inc. (together, "Thomson") have filed two separate motions to compel Direct Action Plaintiffs ("DAPs") to respond to certain discovery requests. The first motion seeks documents and information concerning the basis for DAPs' respective assessments of potential legal claims against Thomson. The second motion seeks information and communications regarding DAPs' "intentions" to opt out of the Direct Purchaser Plaintiff ("DPP") putative class. Both motions should be denied in full because: (i) the discovery Thomson seeks is not relevant to any valid

defense; (ii) the documents and information are protected from disclosure by either the attorney-client privilege or the work-product doctrine; and (iii) Thomson cannot establish any implied waiver of any privilege by DAPs. Moreover, Thomson's fundamental misunderstanding of DAPs' conspiracy allegations does not require DAPs to provide additional discovery responses.

**Background**

**Thomson's defenses.** Both of Thomson's motions to compel seek discovery purportedly related to Thomson's statute of limitations and laches defenses. Thomson argued in its prior motion to dismiss the complaints that DAPs' federal and state claims were untimely under the applicable statutes of limitations and were barred by the equitable doctrine of laches. DAPs responded that their claims were timely because the limitations periods were tolled initially by operation of the fraudulent concealment doctrine, and thereafter because of the filing of legal actions triggering class-action and governmental-action tolling.

In addressing Thomson's motions to dismiss, the Court held that DAPs' federal and New York state claims were timely under these tolling doctrines. Specifically, the Court found that: (i) defendants' fraudulent concealment of the conspiracy tolled the limitations period through November 14, 2007; (ii) class-action tolling tolled the limitations period between January 28, 2008 and March 16, 2009; and (iii) governmental-action tolling tolled the limitations period from February 10, 2009 through at least the date of the order. *See* Order Granting in Part and Denying in Part the Thomson Defendants' Motions to Dismiss at 22, 24, 29 (Mar. 13, 2014), Dkt. No. 2440 ("Order"). The Court then rejected Thomson's laches defense given the "'strong presumption' that laches is inapplicable to claims brought within a statutory period." *Id.* at 30.

**The instant motions.** In its first motion, Thomson seeks documents responsive to five interrogatories and two requests for production, which it justifies by contending that they are relevant to Thomson's statute of limitations or laches defenses:

> **Interrogatory No. 10:** IDENTIFY each PERSON employed or controlled by YOU who participated in YOUR investigation into whether the Thomson Defendants participated in the conspiracy that is the subject of YOUR COMPLAINT.
>
> **Interrogatory No. 11:** IDENTIFY all DOCUMENTS each PERSON IDENTIFIED in Response to Interrogatory No. 10 reviewed during YOUR investigation into whether the Thomson Defendants participated in the conspiracy that is the subject of YOUR COMPLAINT.

> **Interrogatory No. 12:** IDENTIFY when YOU first learned of the existence of the conspiracy that is the subject of YOUR COMPLAINT.[1]
>
> **Interrogatory No. 15:** IDENTIFY the EVIDENCE and DOCUMENTS YOU discovered and the date YOU discovered the EVIDENCE and DOCUMENTS that caused YOU to file YOUR COMPLAINT against the Thomson Defendants.
>
> **Interrogatory No. 16:** Explain why YOU did not name Thomson Consumer as a defendants [sic] in your original complaint, [name of complaint and case number] filed by YOU on or about [date complaint filed] in the [name of court in which complaint originally filed].[2]
>
> **RFP No. 3:** All DOCUMENTS related to when YOU investigated, or attempted to investigate, the existence of the alleged antitrust conspiracy that is the subject of YOUR COMPLAINT.
>
> **RFP No. 4:** All DOCUMENTS related to when YOU learned of the existence of the alleged antitrust conspiracy that is the subject of YOUR COMPLAINT.

In the same motion, Thomson seeks information and documents responsive to two interrogatories regarding DAPs' conspiracy allegations:

> **Interrogatory No. 13:** Do YOU contend that Thomson Consumer participated in the alleged conspiracy to fix the price of and/or reduce the output of CDTs during the relevant period? If you do so contend, IDENTIFY all DOCUMENTS or EVIDENCE that support YOUR contention that Thomson Consumer participated in such a conspiracy regarding CDTs.
>
> **Interrogatory No. 14:** Do YOU contend that Thomson SA participated in the alleged conspiracy to fix the price of and/or reduce the output of CDTs during the relevant period? If YOU do so contend, IDENTIFY all

---

1 Certain DAPs have already provided a substantive response to this interrogatory and, as set forth by the case management order, need not provide responses to duplicative requests.

2 As Thomson acknowledges in its motion, this Interrogatory was not served on Sharp Electronics Corporation or Sharp Electronics Manufacturing Company of America, Inc. because they did name Thomson Consumer and Thomson SA as defendants in their original complaint.

DOCUMENTS or EVIDENCE that support YOUR contention that Thomson SA participated in such a conspiracy regarding CDTs.

In its second motion, Thomson seeks documents and information responsive to the following interrogatory and request for production:

**Interrogatory No. 1:** If You contend that the statute of limitations on the claims in Your Complaint were tolled under any tolling agreement between Thomson SA, [Thomson Consumer], and the Direct Purchaser Plaintiffs in Case No. 3:07 -cv-5944, MDL No. 1917, describe in detail and in narrative form (including by Identifying each Document, Person, or other evidentiary source that You rely upon) the factual basis for your contention, including:

a) The dates on which You contend tolling began and ended;
b) Any period during which You contend You were a member of the putative Direct Purchaser Plaintiff Class (the "Class"); and
c) Any communications with counsel for the Class, Defendants, or alleged Conspirators regarding your intention to opt out of the Class with regard to any settlement or litigation Class involving any Defendant or alleged Conspirator.

**RFP No. 2:** All Documents which reflect communications between You and the Direct Purchaser Plaintiffs, any class action administrator, any Defendant or Conspirator in this litigation, or any other Person regarding your intention to exclude Yourself from any putative or certified Direct Purchaser Plaintiff Class, including copies of any opt-out or exclusion notices sent by You in this litigation.

In response, DAPs objected that these requests are not relevant to Thomson's available defenses and that they seek information and materials protected by the attorney-client privilege and the work-product doctrine. Additionally, DAPs stated that because they were putative DPP class members, any claims subject to the DPP tolling agreement with Thomson also tolled DAPs' claims until they filed suit against Thomson.

## Argument

### I. The Requested Discovery Is Irrelevant to Any Thomson Defense.

#### A. The Discovery Cannot Support a Valid Statute of Limitations Defense.

Thomson seeks to justify its first motion by asserting that the discovery is vital to support Thomson's statute of limitations defense. But the additional discovery

Thomson seeks does not bear on the doctrines that the Court has recognized to impede that defense. *See* Order at 22, 29, 36-37, 39. The Court held that DAPs' claims were timely because of fraudulent concealment and then the operation of legal tolling doctrines tied to the commencement of class actions and government legal proceedings. Thomson already has access to the documents and information relevant to fraudulent concealment and to the proceedings underlying application of these tolling doctrines, and has not identified how additional discovery could or would be relevant.

As to fraudulent concealment, DAPs have already produced, or agreed to produce, documents, to the extent that responsive documents exist, related to (i) whether there was a suspicion or belief that any other defendant was engaged in anticompetitive conduct before November 26, 2007, (ii) fraudulent concealment by Thomson, and (iii) steps or actions taken to discover the facts alleged in the complaint prior to November 26, 2007.[3] Therefore, the only documents and information that Thomson could be seeking are those *after* the fraudulent concealment tolling period.

This means that the only conceivable relevant discovery must pertain to the class-action and governmental-action tolling relied upon by DAPs. The limitations period was tolled between January 2008 and March 2009 by the operation of the class-action tolling doctrine set out in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). *See* Order at 22-25, 37. Specifically, because DAPs were members of a putative class raising overlapping allegations against Thomson, their individual claims were tolled during the pendency of the class action until certification was denied or they opted out. *See Am. Pipe & Constr. Co.*, 414 U.S. at 554. Further, the government issued its first criminal indictment regarding the alleged CRT conspiracy on February 10, 2009. Thus, DAPs' claims are further tolled from that date under 15 U.S.C. § 16(i), which provides for tolling of any private antitrust action during the pendency of a government proceeding and for one year thereafter. Since there is no dispute that the government's cases remain open, DAPs' claims remain tolled under this statutory framework. *See* Order at 25-29, 36-37, 39. New York law recognizes a parallel state government-action tolling provision. Thus, through the combination of both legal tolling mechanisms, the limitations period on DAPs' federal claims have been tolled since 2008 and, through government-action tolling, the limitations period on DAPs' New York claims have been tolled since February 2009. Order at 39.

Thomson's motions to compel accordingly must be denied because the information they seek is wholly irrelevant to the issue of the proper applicability of those legal tolling doctrines. As to its first motion, Thomson does not and cannot explain how discovery into the basis of DAPs' legal analysis and decisions to sue Thomson could bear in any way on the independent operation of tolling doctrines in 2008 and 2009 that were merely triggered by legal filings that are publicly available or on the court docket. Thomson cites no case to suggest that information from any of the DAPs as to their

---

3 *See* Benson Decl. Exs. A-N; Randall Decl.; Heaven Decl.

internal investigations or deliberations could suspend the tolling at issue, and we are aware of no such case. If anything, information on the investigation of claims could bear only on fraudulent concealment up through November 2007, and DAPs have already produced any responsive information relating to that issue.

Thomson's second motion to compel fails for the same reason. Even assuming that there existed communications between DAPs and the class plaintiffs or others regarding DAPs' "intention to opt out," any such communications would be irrelevant to the operation of the tolling doctrines that bar Thomson's statute of limitations defense. All potential class members benefit from class-action tolling until they opt out of the class, and therefore are no longer class members. *Am. Pipe & Constr. Co.*, 414 U.S. at 554. Thomson points to no case law to support its contention that plaintiffs who were indisputably members of a putative class lose the benefit of that tolling due to communications with class counsel. In any event, the existence of a tolling agreement between the putative class and Thomson—while providing yet another basis for tolling the limitations period—is not necessary for DAPs' claims to be considered timely because of the class-action and statutory tolling mechanisms described above. Finally, even if the tolling agreement provided additional coverage, Thomson's requested discovery into DAPs' "intention to opt out" could have no relevance to the operation of that agreement under any circumstance.

**B. Laches Is Not an Available Defense Because DAPs' Claims Fall Within a Prescribed Statute of Limitations.**

Thomson asserts in both of its motions that this discovery is also relevant to its laches defense. But Thomson never explains why it believes the equitable defense of laches could have any bearing on a legal claim for damages under federal and New York antitrust law where those claims are timely under the statutes of limitations. In this regard, Thomson wholly ignores and fails to even mention *Supreme Court precedent that is directly on point.* In *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014), the Supreme Court held that "in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief." *Id.* at 1974. The Court noted that it has never "approved the application of laches to bar a claim for damages brought within the time allowed by a federal statute of limitations." *Id. Petrella* is authoritative here.

Even before *Petrella*, the Ninth Circuit clearly held—and this Court recognized in denying Thomson's previous motion to dismiss—that there was a "strong presumption" that laches is inappropriate where a suit was filed within a statutory limitations period. Order at 30; *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). Congress has set both a limitations period in which a Sherman Act claim may be filed, 15 U.S.C. § 15b, and a mechanism by which that period is tolled, 15 U.S.C. § 16(i). As discussed above, because DAPs filed their claims within the statute of limitations and "courts are not at liberty to jettison Congress' judgment on the timeliness of suits," Thomson has no viable laches defense. *Petrella*, 134 S. Ct. at 1967; *see also Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 586 (9th Cir. 1993) ("[T]he doctrine

of laches is inapplicable when Congress has provided a statute of limitations to govern the action."); *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 798 (4th Cir. 2001) (holding that the court was precluded "from applying the judicially created doctrine of laches" to a claim that was timely under the statute of limitations); *United States v. RePass*, 688 F.2d 154, 158 (2d Cir. 1982) ("Laches is not a defense to an action filed within the applicable statute of limitations."). Accordingly, the discovery sought by Thomson is not relevant to any available defense and Thomson's motion should be denied.

**II. Even If Documents and Information Regarding DAPs' Decision-Making Process Regarding the Filing of This Action Were Relevant, They Are Protected by the Attorney-Client Privilege and Work-Product Doctrine.**

Even if this Court were to find the discovery Thomson seeks relevant to any viable defense, the information sought in both motions is protected by both the attorney-client privilege and the work-product doctrine. Thomson's requests seek materials and communications that are at the core of these protections.

The attorney-client privilege protects confidential communications between an attorney and client for the purpose of giving or soliciting legal advice. *United States v. Bauer*, 132 F.3d 504, 507-08 (9th Cir. 1997). The work-product doctrine protects from discovery documents and tangible things created in anticipation of litigation – unless a party can show substantial need for those documents or things and an inability to obtain an equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3); *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 906 (9th Cir. 2003). Work product that reflects an attorney's mental processes, however, "enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Kandel v. Brother Int'l Corp*., 683 F. Supp. 2d 1076, 1084 n.5 (C.D. Cal. 2010) (quoting *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000)).

Thomson's interrogatories requesting information about DAPs' respective internal investigations and assessments of whether and when to bring claims against Thomson seek legal analyses and advice protected by the attorney-client privilege and work-product doctrine. Where counsel and client undertake an effort to examine the facts underlying a possible claim and evaluate the next legal course of action, those communications "are presumed to be confidential." *AMCO Ins. Co. v. Madera Quality Nut LLC*, No. 1:04-cv-06456, 2006 WL 931437, at *6 (E.D. Cal. Apr. 11, 2006). Likewise, DAPs' "assessments of the litigation at hand or evaluations of the tentative options to the litigation at hand are work-product protected." EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE 956 (5th ed. 2007); *accord Resilient Floor Cover Pension Fund v. Michael's Floor Covering, Inc.*, No. C11-5200 JSC, 2012 WL 3062294, at *6 (N.D. Cal. July 26, 2012) (holding that a document constitutes "'opinion' work product to the extent that it represents counsel's interpretation, analysis, and legal theories regarding the then-potential case").

Thomson seeks to justify its requests by suggesting that it merely seeks "underlying facts." But this ignores the nature and purpose of Thomson's requests, which actually require DAPs to lay out their internal mechanisms and communications regarding the investigation of potential claims against Thomson. For instance, Thomson requests the "EVIDENCE and DOCUMENTS that *caused*" DAPs to file their complaints. Interrogatory No. 15 (emphasis added). This inherently seeks opinion work product; Thomson plainly wants DAPs to identify the evidence they and counsel legally analyzed and communicated about. Thomson is not entitled to gain access to evidence that counsel assessed in determining to file a claim, as that squarely reveals his or her deliberative process and mental impressions. *See Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) (holding that "selection and compilation of documents by counsel" may reveal an attorney's thought processes and fall within the protection of the work-product doctrine); *see also U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 564 (C.D. Cal. 2003) (holding that the "subjective and analytical process of culling, organizing, and summarizing" of factual information is protected as opinion work product).

The communications between DAPs and DPPs regarding the "intentions" of any potential opt-out are also protected. Communications with counsel for the purposes of evaluating whether to retain that counsel are privileged. *See Barton v. U.S. Dist. Court for Cent. Dist. of Cal.*, 410 F.3d 1104, 1111 (9th Cir. 2005). The privilege attaching to those specific communications remains intact irrespective of whether that counsel is ever retained. Communications concerning whether to opt out or to pursue a class case would be communications in which a DAP was soliciting or receiving information to assess whether to permit DPP counsel to represent it in these suits. That is classic protected communication.

Additionally, because DAPs were absent putative class members, DAPs' and DPPs' counsel had a common legal interest in the prosecution of the litigation against Thomson unless and until an opt-out occurred. Where parties share such a common legal interest, their attorney/client and attorney/attorney communications remain protected from disclosure under settled Ninth Circuit law. *See United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012). Under the "common interest" privilege, "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *Id.* (quoting *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990)). This privilege applies equally to both plaintiffs and defendants. *See id.*; *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 685 (S.D. Cal. 1996); *Sedlacek v. Morgan Whitney Trading Grp., Inc.*, 795 F. Supp. 329, 331 (C.D. Cal. 1992). Similarly, the sharing between counsel of any documents reflecting legal strategy as to whether to opt out is pure work product and must also be protected under the common interest privilege. *See Brill v. Walt Disney Pictures & Television*, 243 F.3d 546, 546 (9th Cir. 2000) (holding that the common interest privilege expands both the attorney-client privilege and work-product doctrine). Finally, DAPs have already produced, or have agreed to produce, opt-out letters submitted to the class administrator during any tolling period, which mark the points at which each DAP was no longer a class member for each settlement class.

**III. DAPs Have Not Impliedly Waived Privilege.**

Thomson further argues that by bringing claims against Thomson, DAPs impliedly waived attorney-client privilege "as to laches and the statutes of limitation." Sept. 12 Letter Brief at 4. Not so.

A party impliedly waives privilege only when: (1) the party asserts privilege through some affirmative act; (2) that act puts the privileged information at issue; and (3) denying access to the privileged information "would deny the opposing party access to information vital to its defense." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). For information to be deemed "vital," it must have a probative value "significantly greater than mere relevance." *Rambus Inc. v. Samsung Elecs. Co.*, Nos. C-05-02298, C-05-00334, 2008 WL 2944892, at *1 (N.D. Cal. July 16, 2008). Here, even assuming that the mere fact that DAPs filed suit satisfies the first prong, Thomson has failed to satisfy the second and third factors of this test.

Initially, as explained above, to the extent that Thomson is relying on plaintiffs' allegations of fraudulent concealment for its implied waiver argument, plaintiffs have already produced materials supporting their argument that they were unaware of the conspiracy due to fraudulent concealment until November 2007. As a result, the only remaining information for which DAPs assert privilege is information after the fraudulent concealment period.

But Thomson does not explain how invocation of class-action or government-action tolling places the privileged information that it seeks "at issue," as required for implied waiver. *Home Indem. Co.*, 43 F.3d at 1326. The only information at issue for the purposes of Thomson's statute of limitations defense is the timing and nature of the class claims against Thomson and the government indictments against participants in the CRT conspiracy. DAPs' reliance on those doctrines does not place at issue the wholly unrelated analyses that DAPs undertook regarding whether to file individual opt-out suits.

Nor does Thomson illustrate how its requests are "vital to its defense." *Home Indem. Co.*, 43 F.3d at 1326. Again, all information relevant to Thomson's defenses has either been produced or is publicly available. No privileged communications between DAPs and their counsel would aid Thomson's available statute of limitations defenses, let alone be "vital." *Id.* To the extent that Thomson argues that its laches defense grants it unfettered access to privileged materials, Thomson is wrong and has cited no authority supporting this position.

The cases that Thomson cites dealing with statute of limitations defenses are inapposite. Thomson relies heavily on *Rambus Inc. v. Samsung Elecs. Co, Ltd.*, Nos. C-05-02298, C-05-00334, 2007 WL 3444376 (N.D. Cal. Nov. 13, 2007), in which the court required a party alleging fraudulent concealment to produce documents related to that allegation despite privilege. But that case is irrelevant here, because DAPs have

already produced any documents bearing on fraudulent concealment. *Rambus* does not address the operation of the other legal tolling doctrines at play in the instant action. Likewise, *Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001), dealt only with the issue of when the plaintiff knew or should have known of its claims. It is inapposite for the same reason *Rambus* is: DAPs have already provided information regarding when they learned of the conspiracy, and *Danjaq* says nothing about any other tolling doctrine. There has been no implied waiver here.

**IV. Thomson Has Not Supported Overturning the Work-Product Protection.**

Thomson also argues that the materials it seeks are not protected by the work-product doctrine because Thomson has a "substantial need for the information" and "it is not available from any source other than DAPs." Sept. 12 Letter Brief at 6.

To be sure, the work-product doctrine is not absolute, and materials may still be subject to discovery if "a party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* Where the material sought is opinion work product, however, it is discoverable only if it is "at issue in the case and the need for the material is compelling." *S.E.C. v. Roberts*, 254 F.R.D. 371, 375 (N.D. Cal. 2008) (quoting *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992)). Accordingly, "opinion work product enjoys almost absolute immunity." *See Kandel*, 683 F. Supp. 2d at 1084 n.5.

For the same reasons discussed above, Thomson has failed to show any need, much less a compelling need, sufficient to overcome the heavy presumption against disclosure of the opinion work product of the type Thomson seeks in its discovery requests. Consequently, the work-product doctrine protects the sought materials from disclosure here.

**V. Thomson Misinterprets the Scope of the CRT Conspiracy.**

Thomson's final argument complains about DAPs' responses to certain contention interrogatories regarding "the alleged conspiracy to fix the price of and/or reduce the output of CDTs during the relevant period." Because DAPs make no such contention, but rather contend that Thomson fixed the price and reduced the output of CRTs, which includes both CPTs and CDTs, DAPs' references to their responses to Interrogatories Nos. 2 and 4, which asked about DAPs' CRT conspiracy allegations, were appropriate. DAPs have set forth the evidence supporting their contentions regarding Thomson's participation in the only conspiracy alleged. Thomson is entitled to no more, as your Honor has previously found in determining, in a different context, the impropriety of attempting to carve the alleged conspiracy into a number of mini-conspiracies.

### A. DAPs Do Not Allege a CDT-Only Conspiracy.

In these actions DAPs allege that the defendants participated in one joint conspiracy to both fix prices and constrain output of cathode ray tubes, or CRTs. There are two types of CRTs: color picture tubes used in televisions, and color display tubes used in computer monitors. DAPs allege one general conspiracy involving both types of CRT products.

In its Interrogatories, Thomson asked DAPs about this allegation. *See* Thomson Interrogatories Nos. 2 and 3:

> IDENTIFY all DOCUMENTS and EVIDENCE that form the basis of YOUR allegation that [Thomson Entity] participated in a conspiracy with the DEFENDANTS and/or other CONSPIRATORS to fix the price and/or reduce the output of CRTs sold in the United States during the RELEVANT PERIOD.

In response, DAPs identified the documents and evidence requested, including the following types of documents that evidence Thomson's participation:

- specific documents produced by defendants;
- various discovery responses by defendants;
- the findings of the European Commission; and
- the admissions of participation in the alleged conspiracy made by Technicolor SA (the successor firm to Thomson) in its 2011 and 2012 Annual Reports.[4]

Thomson does not move to compel further response to these interrogatories. Rather, Thomson directs the Court's attention to Interrogatory Nos. 13 and 14, which are two-part questions. First, they ask if DAPs contend that the Thomson entity participated "in the alleged conspiracy to fix the price of and/or reduce the output of CDTs during the relevant period." If yes, they ask for the identification of evidence. DAPs responded by referring Thomson to the list of evidence regarding its participation in a CRT conspiracy. DAPs did so precisely because they do not believe, and have never alleged, that there was a separate CDT conspiracy, or a separate CPT conspiracy. Rather, they have alleged, and continue to believe, that there was one CRT conspiracy.

Thomson does not like this response. Its view of the case is that there were two conspiracies, and thus it wishes to require that DAPs go through the evidence and make a determination of what supports the un-alleged "CDT-only" conspiracy. The allegations made and evidence identified by DAPs, however, necessarily involve both

---

4 Thomson also asked, in Interrogatories Nos. 4 & 5, a similar question with regard to their participation after selling CRT assets to Videocon in July 2005, and DAPs similarly provided a list of evidence.

CPTs and CDTs. Many meetings discussed both. To the extent that Thomson wants to posit only a CDT-only conspiracy, it can go through the identified evidence and make its own determinations of what was discussed, and what might support its CDT-only conspiracy. But nothing under the federal rules requires DAPs to undertake that task.

**B. The Law Does Not Require DAPs to Sub-Divide the Alleged Conspiracy.**

Thomson improperly seeks, in contravention of well-established legal principles, to dismember the overall conspiracy in which they participated to focus on its separate parts, instead of looking at it as a whole. *See Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *Beltz Travel Service, Inc. v. Int'l Air Trans. Assoc.*, 620 F.2d 1360, 1366-67 (9th Cir. 1980) (citing *United States v. Patten,* 266 U.S. 524, 544 (1913)); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Master Docket No. M:07-1827-SI, Order Denying Defendants' Motions for Partial Summary Judgment Regarding Production and Capacity, MDL Dkt. No. 4097, Nov. 4, 2011, at 1-2.

This is not the first time in this case that defendants have tried to do this, and your Honor and Judge Conti have denied them the opportunity. *See In re CRT Antitrust Litigation*, Master Docket No. 3:07-cv-05944-SC, Order Adopting Report and Recommendations, MDL Dkt. No. 2747, Aug. 20, 2014 (adopting Special Master's finding that discovery aimed at "compartmentalizing" an alleged conspiracy is inappropriate). The same reasoning applied to that dispute holds for this one.

Nor do the cases cited by Thomson provide any support for its requested relief. In *United States v. 216 Bottles, More or Less, of Sudden Change*, 36 F.R.D. 695, 699-700 (E.D.N.Y. 1965), the defendants refused to disclose the chemical ingredients or formula for a particular product because they took the position that the law at issue did not cover that product. As to whether the law did or did not cover the product at issue, the court rightly noted that the defendants could not hide behind their legal position to refuse to produce facts relevant to deciding that issue. Of course, in this dispute, DAPs are not refusing to produce anything: they have responded to the contention interrogatory based on their contention, not Thomson's contentions. The facts are in the possession of the defendants, not DAPs. *216 Bottles* is not applicable. *See also Humphrey v. Regents of the Univ. of California*, No. C 04-03808, 2006 WL 870963, at *2 (N.D. Cal. Apr. 3, 2006) (ordering production of information relevant to plaintiff's claims because defendants cannot limit discovery based on their legal positions). Notably, neither of these cases involved the kind of contention interrogatories at issue here.

Finally, Thomson's reliance on *Clark Motor Co., Inc. v. Manufacturers & Traders Trust, Co.*, No. 4:07-CV-856, 2008 WL 2498252, at *1-3 (M.D. Pa. June 18, 2008), is unavailing. In *Clark Motor* the defendant refused to respond to discovery regarding its practices and procedures based on its view that the law plaintiffs asserted applied to defendants' conduct did not, in fact, apply. The court rightly held that the defendant could not use objections to discovery as a vehicle for deciding the merits of the

case. That is not this case. DAPs have identified the evidence that supports Thomson's participation in the conspiracy, evidence produced by Thomson and the other defendants. Nothing in *Clark Motor* requires any further identification or subdivision of that evidence.

Simply put, Thomson has neither factual nor legal support for its motion. It should be denied.

Very truly yours,

*/s/ Craig A. Benson*

Craig A. Benson