# **<u>Exhibit 7</u>**

**Kathy L. Osborn**
*Partner*
kathy.osborn@FaegreBD.com
Direct **+1 317 237 8261**

**Faegre Baker Daniels LLP**
2200 Wells Fargo Center ▾ 90 South Seventh Street
Minneapolis ▾ Minnesota 55402-3901
Phone **+1 612 766 7000**
Fax **+1 612 766 1600**

October 10, 2014

**VIA E-MAIL (JAY.WEIL@FEDARB.COM)**

Hon. Vaughn R. Walker
c/o Mr. Jay Weil
Federal Arbitration, Inc.
288 Hamilton Avenue, 3rd Floor
Palo Alto, California 94301

Re:   *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, Master Case
        No. 3:07-cv-05944-SC — Reply Supporting Thomson Defendants' Motions to Compel

Dear Judge Walker:

Thomson SA and Thomson Consumer Electronics, Inc. (collectively "Thomson Defendants") have moved to compel the Direct Action Plaintiffs ("DAPs") to produce limited interrogatory answers and document production.[1] The Thomson Defendants seek facts regarding: (1) the DAPs' investigation (or lack thereof) into their potential claims against the Thomson Defendants; (2) their basis for alleging tolling of the statute of limitations; and (3) their allegation that the Thomson Defendants joined a conspiracy involving CDTs. This evidence is critical to the Thomson Defendants' ability to establish their defenses regarding laches, the statute of limitations, and the scope of the alleged conspiracy. Accordingly, the Thomson Defendants' motions to compel should be granted.

**I.      DAPs Cannot Avoid Discovery Because They Believe the Thomson Defendants' Defenses Will Be Unsuccessful.**

DAPs primarily oppose the motions by arguing the merits of the Thomson Defendants' affirmative defenses and their own views of the scope of the conspiracy. DAPs' merits arguments miss the mark.

F.R.C.P. 26(b)(1) broadly authorizes discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." DAPs seek to escape this broad relevancy standard by arguing the merits of the Thomson Defendants' defenses. In particular, DAPs assert that the discovery at issue is

---

[1] This reply addresses the Thomson Defendants' two pending motions to compel, filed on September 12th and September 19th.

Hon. Vaughn R. Walker                    -2-                    October 10, 2014

"not relevant to Thomson's *available* defenses." (Br. in Opp. 4 (emphasis added).) In other words, DAPs seek to limit discovery by arguing that the relevant defenses will not be successful. Courts routinely reject such efforts. *Humphreys v. Regents of the Univ. of Cali.*, No. C 04-03808, 2006 WL 870963, at *2 (N.D. Cal. Apr. 3, 2006) ("Clearly … defendants are not allowed to limit discovery based merely upon their theory of the case."); RICHARD L. MARCUS, 8 FED. PRAC. & PROC. CIV. § 2011 (3d. ed.) ("[A] party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the opponent's theory."). Courts specifically preclude litigants from trying to substitute discovery objections and discovery motion practice for motions on the merits. *Clark Motor Co, Inc. v. Manufacturers & Traders Trust, Co.*, Case No. 4:07-CV-856, 2008 WL 2498252, at *1–3 (M.D. Penn. June 18, 2008) (discovery disputes are not "a vehicle for deciding the merits of a case").  Only after claims or defenses have been dismissed or resolved via summary judgment are those claims beyond the scope of discovery.

DAPs also ignore that the Court has already ruled that the Thomson Defendants could raise their laches argument following discovery:

> In examining Sharp's FAC, it is difficult not to find some delay, but the Court cannot find that Sharp's delay was unreasonable based only on the FAC's allegations.… *Thomson SA is, of course, not barred from raising laches on a more developed record.*

(See [Dkt. 2440] at 30 (emphasis added).)  Consistent with this ruling, DAPs may not preclude the Thomson Defendants from developing the record on their laches defense.

## II.    DAPs' Merits Arguments are Improper and Incorrect.

DAPs' arguments regarding the merits of the Thomson Defendants' defenses are improper in the context of a motion to compel and should be disregarded.  Nevertheless, the Thomson Defendants briefly address them below to demonstrate the relevance of the information sought by their discovery requests.

### A.    The Thomson Defendants Are Entitled to Discovery Regarding DAPs' Contention that the Thomson Defendants Participated in a CDT Conspiracy.

Throughout this litigation, DAPs have repeatedly sought to tie the Thomson Defendants to a conspiracy involving CDTs—a product the Thomson Defendants never manufactured.  Indeed, DAPs alleged that the Thomson "Defendants and their co-conspirators are or were among the leading manufacturers of … color display tubes." (Circuit City Compl. at ¶ 3.)  During discovery, however, DAPs have admitted that the Thomson Defendants did not manufacturer CDTs at all.[2]

---

[2] Specifically, DAPs all admitted the following Requests for Admission: (1) Admit that You have no Evidence that Thomson SA manufactured or sold CDTs during the Relevant Period; (2) Admit that You have no Evidence that SA manufactured or sold CDT Products during the Relevant Period; (3) Admit that You have no Evidence that Thomson Consumer manufactured or sold CDTs during the Relevant Period; (4) Admit that You have no Evidence that Thomson Consumer manufactured or sold CDT Products during the Relevant Period. (Roberts Decl. ¶ 5.)

Hon. Vaughn R. Walker                          -3-                          October 10, 2014

Undaunted, DAPs continue to insist that the Thomson Defendants participated in a conspiracy to fix the price of CDTs. Against this backdrop, the Thomson Defendants served discovery requests aimed at understanding what evidence DAPs rely on to support their allegations that the Thomson Defendants participated in a conspiracy that included CDTs. Rather than respond to the discovery served, DAPs' interrogatory answers pointed to an undifferentiated mass of documents and information concerning the Thomson Defendants' alleged contacts with its former *CPT* competitors. DAPs refuse to answer further, and thus have failed to respond to the interrogatories, claiming that the discovery improperly seeks to sub-divide or compartmentalize the conspiracy. *E.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 281 F.R.D. 1, 6 (D.D.C. 2011) (discovery response that answers different question than posed does "not comply [with] that person's obligation to answer the question").

DAPs may not like it, but the Thomson Defendants are entitled to pursue their theory of the case, including by showing that they did not participate in the full scope of the conspiracy alleged by DAPs. For example, in the *In re: Vitamins Antitrust Litigation* lawsuit, the plaintiffs alleged an "All-Vitamins Conspiracy" covering over a dozen vitamins and vitamin premix. 320 F. Supp. 2d 1 (D.D.C. 2004). A group of defendants in that lawsuit sold only one of the vitamins at issue, Vitamin B4. On summary judgment, "[t]he issue before the Court … [was] the viability of Plaintiffs' alleged all-vitamins conspiracy." *Id.* at 5. To resolve the summary judgment motion, the court analyzed the documents claimed by plaintiffs to evidence that the Vitamin B4 defendants knew of and participated in the alleged "all-vitamins conspiracy." *Id. at* 19–20. As to one defendant, the court determined that the "Plaintiffs have provided no evidence that can satisfy even a very low burden of establishing that [it] at least knew of and possibly participated in an all-vitamins conspiracy" and granted summary judgment to that defendant. *Id. at* 20, 23.

Like the successful defendant in the *Vitamins* litigation, the Thomson Defendants are entitled to show that they did not participate in a conspiracy concerning a product they did not make. The Thomson Defendants' discovery does not require DAPs to "tightly compartmentaliz[e] the various factual components and wip[e] the slate clean after scrutiny of each." *Cont'l Ore Co v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). It simply requires them to identify whether any evidence exists showing that the Thomson Defendants knew about or played any role in conspiratorial conduct concerning CDTs.

Finally, just last week, in support of their motion for separate trials, DAPs argued that the scope of the alleged conspiracy will be a key trial issue: "A trial of just the DAP cases admittedly will be complex. There may be as many as seven plaintiffs and as many as nine groups of defendants, each with its own counsel. … *Each defendant group will argue its own perspective on the scope and effect of the CRT conspiracy and its role in the CRT market and the conspiracy*." (Dkt. No. 2897 (emphasis added).) DAPs can hardly be allowed to preclude discovery on an issue they themselves admit is central to the lawsuit. The Thomson Defendants are entitled to identification of the documents that supposedly evidence the Thomson Defendants' participation in a CDT conspiracy. Alternatively, the Thomson Defendants are entitled to an admission by DAPs that they cannot identify any such evidence.

Hon. Vaughn R. Walker                    -4-                    October 10, 2014

**B.      The Thomson Defendants Have Viable Laches and Statute of Limitations Defenses.**

DAPs do not dispute that a four-year statute of limitations applies to their claims. Nor do DAPs dispute that they failed to assert claims against the Thomson Defendants until more than six years after these CRT lawsuits began and approximately eight years after the Thomson Defendants exited the CPT business. Thus, DAPs' claims are timely only if they can establish tolling and simultaneously avoid the Thomson Defendants' laches defense.  Accordingly, the Thomson Defendants served a series of discovery requests designed to elicit facts relevant to their laches defense and the DAPs' assertion that tolling applies.

DAPs do not contest that the discovery is relevant to the parties' claims and defenses.  Instead, they argue the *merits* of the claims and defenses as a barrier to discovery.[3]  Merits issues should be resolved at trial or on summary judgment – not in a motion to compel.  Nevertheless, to further demonstrate the relevance of the discovery sought, the Thomson Defendants briefly outline below why their laches and statute of limitations defenses are viable.

First, the *Petrella* case, so heavily relied upon by DAPs, resolves an issue concerning the Copyright Act, which has unique rules governing the length of copyright protection and remedies for continuing violations, which guided the Court's reasoning. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1968 (2014). The Clayton Act lacks analogous provisions.

Second, nowhere does *Petrella* purport to overrule decades of Supreme Court and other precedent broadly applying "equitable doctrines [to] … limit the time period" set forth in various statutes of limitations. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002) (refusing to "preclude[] a court from applying equitable doctrines that may toll or limit" very specific time periods set forth in Title VII); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, *like a statute of limitations, is subject to waiver, estoppel and equitable tolling."* (emphasis added)); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1030–1032, 1041 (Fed. Cir. 1992) (laches available in patent suit for damages).

---

[3] DAPs' merits arguments are also inappropriate as to the Thomson Defendants' laches defense because DAPs never raised these arguments during the meet and confer process. Instead, the parties' discussions focused on privilege issues, and involved, among other things, the Thomson Defendants providing DAPs with much of the authority cited in their motions to compel. (*See* Sept. 12, 2014, Decl. of Jeffrey S. Roberts ("Roberts Decl."), Ex. 1 (Aug. 28, 2014, letter from counsel for Thomson Defendants to DAPs memorializing discovery conference).) "When initiating an informal conference the parties must present to each other the merits of their respective positions with the same specificity with which they would brief the discovery dispute." *Wilson v. Aargon Agency, Inc.,* 262 F.R.D. 561, 564 (D. Nev. 2010). DAPs should not be allowed raise arguments in response to a motion to compel that they did not press during the meet and confer process.  *See Whiting v. Hogan*, No. 12-CV-08039-PHX-GMS, 2013 WL 1047012 (D. Ariz. Mar. 14, 2013) (sanctioning party that "did not present to Defendants the merits of their positions with nearly the same candor and specificity they provide in their discovery motion to the Court"); *cf., e.g., Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) ("The district court has wide discretion in controlling discovery.").

Hon. Vaughn R. Walker                          -5-                          October 10, 2014

Third, absent tolling, DAPs sued the Thomson Defendants several years after the Clayton Act's four-year limitation period expired. Given DAPs' reliance on tolling—an inherently equitable concept—to save their claims, asserting laches as a defense is even more appropriate than in the usual statute of limitations context. Moreover, the Court has ample power to consider whether DAPs unreasonably delayed bringing suit against the Thomson Defendants. *See Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) ("Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction").

Finally, the Thomson Defendants are entitled to discover facts relevant to DAPs' assertion that they may rely on a tolling agreement between the Thomson Defendants and the direct purchaser class. DAPs, not the Thomson Defendants, have put their relationship with the class at issue by claiming the right to rely on this agreement. The Thomson Defendants are entitled to discover when DAPs first manifested their intent to opt out of the class, which intent, as explained in the Motion, is directly relevant to whether the tolling agreement applies to DAPs' claims and, if so, for how long.

## III.   The Discovery Sought Is Not Protected From Disclosure by the Attorney Client Privilege or Work Product Doctrine.

According to DAPs, a party asserting laches cannot discover facts regarding the timing and adequacy of the opposing party's investigation into its claims because such facts are protected by the attorney-client privilege and work product doctrine.  This is incorrect.  The Thomson Defendants have not asked DAPs to recount communications with counsel.[4] They seek to discover *facts* regarding the nature, scope, and timing of the DAPs' investigations. As such, the discovery sought is neither privileged nor subject to work product protections. *E.g., Upjohn Co. v. U.S.*, 499 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."); RICHARD L. MARCUS, 8 FED. PRAC. & PROC. CIV. § 2023 (3d. ed.) ("[C]ourts [have] consistently held that the work product concept furnishe[s] no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she ha[s] learned such facts, or the existence of nonexistence of documents."). This black letter authority resolves the dispute.

DAPs are also wrong when they argue that communications regarding their intention to opt out of the class are privileged.  The Thomson Defendants seek to discover facts regarding when (1) tolling began and ended and (2) DAPs manifested an intent to opt out of the DPP class.[5]   These facts are also not protected from discovery by the attorney-client privilege or the work product doctrine.

---

[4] The Thomson Defendants have sought limited communications between DAPs' counsel and class counsel (namely, communications by DAPs to class counsel of DAPs' intention to not participate in the class) but such communications were not concerning a request for legal advice and did not concern an issue as to which DAPs shared any joint interest with the class.

[5] To be clear, the Thomson Defendants only seek to discover information regarding DAPs' communication of their intention to opt out of the class. They do not seek information or documents concerning why DAPs choose to opt out or what legal strategy or communication with counsel convinced them to do so. DAPs' straw man argument suggesting otherwise should be ignored. (Opp. at 8.)

Hon. Vaughn R. Walker                         -6-                         October 10, 2014

**A.      DAPs Have Waived the Protections of the Privilege and Work Product Doctrine by Failing to Produce Privilege Logs.**

As a threshold matter, even if a privilege is applicable, the DAPs have waived its projections by failing to provide the Thomson Defendants with privilege logs despite, in the case of most DAPs, promising to do so and repeated notice from the Thomson Defendants' of this failing.[6]  Because of their repeated failure to provide the Thomson Defendants with the information needed to assess DAPs' privilege claims, DAPs have waived any privilege or work product protection. *E.g., Burlington N. & Santa Fe Ry. Co. v. United States District Court for the District of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005) (upholding waiver of privilege following party's failure to provide logs for five months); *E.E.O.C. v. Braun Elec. Co.*, Case No. 1:12-cv-01592-LJO-JLT, 2014 WL 356998, at *6 n.3 (E.D. Cal. Jan. 24, 2014) ("[A]ny objection based upon privilege is waived given the failure to provide a privilege log or to sufficiently detail the materials withheld such that the EEOC could evaluate the propriety of the objection.").

**B.      DAPs Have Impliedly Waived the Attorney-Client Privilege by Putting At-Issue the Reasonableness of Their Delay.**

DAPs have also impliedly waived the privilege by claiming that their *six year* delay in suing the Thomson Defendants was not unreasonable.  In the Ninth Circuit, the *Hearn* test governs implied waiver. Under the test, an implied waiver of the attorney-client privilege occurs when (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995).

Alleging any basis for avoiding the statute of limitations constitutes and affirmative act that satisfies the first prong of *Hearn*. *See Rambus Inc. v. Samsung Elecs. Co., Ltd.*, Nos. C-05-02298, C-05-00334, 2007 WL 3444376, at *3 (N.D. Cal. Nov. 13, 2007.[7] As to the second prong, by first filing claims against the Thomson Defendants eight years after they entirely exited the CPT industry and six years after the existence of the alleged conspiracy was indisputably made public, DAPs have put at issue privileged information regarding the adequacy and timing of the investigation into their claims. Application of the third prong here is obvious: the Thomson Defendants have only one source of information about DAPs' investigation including what they knew about their claims and when they knew it—DAPs themselves. Allowing DAPs to withhold this information on the basis of privilege would make it impossible for the Thomson Defendants to discover the facts needed to prove their laches

---

[6] *See, e.g.,* Sept, 12, 2014 Mot. to Compel at 4 n.5 (highlighting failure to provide privilege logs); Roberts Decl. Ex. 1 at 4–5, 7 (August 28, 2014, letter memorializing meet and confer; highlighting failure to provide privilege logs), Ex. 4 at 4 (discovery requests instructing DAPs to provide privilege logs).

[7] *See also* EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE, at 544 (5th ed. 2007) ("[E]ach time a plaintiff brings a suit, he tacitly puts into issue the question of whether the statute of limitations [has] run.").

Hon. Vaughn R. Walker                          -7-                          October 10, 2014

defense or to challenge the DAPs' tolling theories.  Likewise, to the extent DAPs continue to rely on the tolling agreement between class counsel and the Thomson Defendants, this puts at issue their communications with class counsel regarding DAPs' exclusion from the class.  These communications are vital to determining whether and for how long DAPs may benefit from that agreement.  In sum, if DAPs want to litigate stale claims against the Thomson Defendants, they have to give the Thomson Defendants a fair chance to defend against them.  *Bittaker v. Woodford*, 331 F.3d 715, 720–21 (9th Cir. 2003) (en banc) ("If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it.").

### C.    The Thomson Defendants' Substantial Need Overcomes Claims of Work-Product Protection.

DAPs forget that their work-product objections apply only to documents prepared in anticipation of litigation. The doctrine provides no basis for refusing to answer interrogatories. RICHARD L. MARCUS, 8 FED. PRAC. & PROC. CIV. § 2023 (3d. ed.); *Barrett Indus. Trucks, Inc. v. Old Republic Ins. Co.*, 129 F.R.D. 515, 518 (N.D. Ill. 1990) ("[T]he work product doctrine does not protect discovery of the underlying facts of a particular dispute, even if [the] response to a particular factual question is based upon information provided by counsel."). And again, even if the facts necessary to respond to an interrogatory are contained in work-product protected document, those facts must be disclosed when responding to the interrogatory, even if the document itself may be withheld from production. *E.g., Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011) ("Although the work-product doctrine protects documents, it does not protect factual information within the documents."); Fed. R. Civ. P. 26(b)(3) advisory committee's note (1970) ("[O]ne party may discover relevant facts known or available to the other party, even though such facts are contained in a document which is not itself discoverable.").

As for any responsive documents that might otherwise be protected by the work-product doctrine, the Thomson Defendants have established a compelling need for the documents.  Despite the Thomson Defendants' best efforts, the information related to DAPs' investigation of their claims cannot be obtained in any other manner and is critical to the Thomson Defendants' laches defense. (*See* Mot. at 6–7 and authority cited therein).

### IV.    Conclusion

Under the "liberal discovery principles" codified in the Federal Rules, a party opposing discovery "carr[ies] a heavy burden of showing why discovery was denied." *Blankenship v. Hearst Corp*, 519 F.2d 418, 429 (9th Cir. 1975). The party seeking to compel discovery need only show that its request complies with the broad relevancy requirements of Rule 26(b)(1) to put the opposing party to its heavy burden. *Colavo v. ASIC Advantage Simplified Pension Plan*, ___ F.R.D. ___, 2014 WL 3592806, at *2 (N.D. Cal. July 18, 2014).  The Thomson Defendants have met their burden, while DAPs have failed to meet theirs. The Court should order the DAPs to fully respond to the discovery requests at issue.

Hon. Vaughn R. Walker                    -8-                    October 10, 2014

Respectfully submitted,

/s/ Kathy L. Osborn

Kathy L. Osborn

Faegre Baker Daniels LLP
*Attorneys for Defendants Thomson SA and Thomson
Consumer Electronics, Inc.*