1  JEROME C. ROTH (State Bar No. 159483)
   jerome.roth@mto.com
2  HOJOON HWANG (State Bar No. 184950)
   hojoon.hwang@mto.com
3  MIRIAM KIM (State Bar No. 238230)
   miriam.kim@mto.com
4  MUNGER, TOLLES & OLSON LLP
   560 Mission Street
5  Twenty-Seventh Floor
   San Francisco, California 94105-2907
6  Telephone:     (415) 512-4000
   Facsimile:      (415) 512-4077
7
   WILLIAM D. TEMKO (State Bar No. 98858)
8  william.temko@mto.com
   MUNGER, TOLLES & OLSON LLP
9  355 South Grand Avenue
   Thirty-Fifth Floor
10 Los Angeles, CA 90071-1560
   Telephone:     (213) 683-9100
11 Facsimile:      (213) 687-3702

12 *Attorneys for Defendant LG Electronics, Inc.*

13 *Additional Opposing Defendants and Counsel*
   *Listed on Signature Pages*
14

15               UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                 SAN FRANCISCO DIVISION

18 In re: CATHODE RAY TUBE (CRT)          Case No. Master File No. 3:07-cv-05944-SC
   ANTITRUST LITIGATION
19                                         MDL NO. 1917
   This Document Relates to:
20                                         **DEFENDANTS' OPPOSITION TO**
   *Dell Inc., et al. v. Hitachi Ltd. et al.*, No. 13-   **PLAINTIFFS' MOTION TO PARTIALLY**
21 cv-02171                                **EXCLUDE THE EXPERT REPORT AND**
                                           **OPINIONS OF JANUSZ A. ORDOVER –**
22 *Sears, Roebuck and Co. and Kmart Corp. v.*
   *Technicolor SA,* No. 3:13-cv-05262     **REDACTED**
23
                                           [Declaration of Laura K. Lin filed herewith]
24 *Sears, Roebuck and Co. and Kmart Corp. v.*
   *Chunghwa Picture Tubes, Ltd.,* No. 11-cv-   Judge:  Hon. Samuel Conti
25 05514-SC                                Date:   February 27, 2015
                                           Time:   10:00 a.m.
26 *Siegel v. Hitachi, Ltd.*, No. 11-cv-05502   Ctrm:   1, 17th Floor

27 *Siegel v. Technicolor SA,* No. 13-cv-05261

28

1  *Target Corp. v. Chunghwa Picture Tubes,*
   *Ltd.*, No. 11-cv-05514
2  *Target Corp. v. Technicolor SA*, No. 13-cv-
   05686
3

4  *ViewSonic Corporation v. Chunghwa Picture*
   *Tubes Ltd.*, No. 14-cv-2510
5

6  *Electrograph Systems, Inc., et al. v. Hitachi,*
   *Ltd., et al.*, No. 3:11-cv-01656-SC
7

8  *Electrograph Systems, Inc., et al. v.*
   *Technicolor SA, et al.*, No. 3:13-cv-05724-SC
9

10 *CompuCom Sys., Inc. v. Hitachi, Ltd., et al.*,
   No. 3:11-cv-06396-SC

11 *Interbond Corp. of Am. v. Hitachi, Ltd. et al.*,
   No. 3:11-cv-06276-SC
12

13 *Interbond Corp. of America v. Technicolor SA,*
   *et al.*, No. 3:13-cv-05727-SC

14 *Office Depot, Inc. v. Hitachi, Ltd. et al*, No.
   3:11-cv-06276-SC
15

16 *Office Depot, Inc. v. Technicolor SA, et al.*,
   No. 3:13-cv-05726-SC
17

18 *P.C. Richard & Son Long Island Corp., et al.,*
   *v. Hitachi, Ltd., et al.¸* No. 3:12-cv-02648-SC
19

20 *P.C. Richard & Son Long Island Corp., et al.*
   *v. Technicolor SA, et al.*, No. 3:13-cv-05725-
   SC
21

22 *Schultze Agency Services, LLC on behalf of*
   *Tweeter Opco, LLC and Tweeter Newco, LLC*
23 *v. Hitachi, Ltd., et al.*, No. 3:12-cv-2649-SC

24 *Schultze Agency Services, LLC on behalf of*
   *Tweeter Opco, LLC and Tweeter Newco, LLC*
25 *v. Technicolor SA., et al.*, No. 3:13-cv-05668-
   SC
26

27 *Tech Data Corporation; Tech Data Product*
   *Management, Inc.; v. AU Optronics Corp., et*
28 *al.*, No. 13-cv-00157

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

1 | *Best Buy Co, Inc., et al v. Hitachi, Ltd.*,
2 | Individual Case No. 11-cv-05513
3 | *Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05264-SC
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

1

**TABLE OF CONTENTS**

2

**Page**

3

QUESTION PRESENTED ................................................................................- 1 -

SUMMARY OF ARGUMENT .........................................................................- 1 -

BACKGROUND................................................................................................- 3 -

LEGAL STANDARD ........................................................................................- 4 -

ARGUMENT .....................................................................................................- 5 -

I.      The DAPs Do Not, and Cannot, Contest Dr. Ordover's Qualifications ......................- 5 -

II.     The DAPs' Argument Concerning The "Unreliability" of the Defense Experts' Analyses Is Both Misleading And Inaccurate ...............................................- 5 -

        A.    Defendants' Experts Did Not Offer Affirmative Calculations As "Reliable" Estimates of Overcharges or Damages—and Were Under No Obligation to Do So ..........................................................- 5 -

        B.    Defendants' Position That *Plaintiffs'* Experts Offer Unreliable Overcharge Estimates Does Not Render Defendants' Critiques of Those Estimates Unreliable ......................................................- 7 -

III.    Dr. Ordover Permissibly Incorporated, but Does Not "Vouch" for, Dr. Carlton's Calculations .................................................................- 9 -

IV.     The DAPs' Objections to Dr. Ordover's FTAIA-Related Opinions Are Unfounded ...........................................................................- 12 -

        A.    Dr. Ordover's Analysis of Industry-Wide Data to Reach Industry-Wide Conclusions Is Reliable ......................................................- 12 -

        B.    Dr. Ordover's Critique of Dr. Rao's ███████████████ ██████ Is Reliable ..................................- 14 -

        C.    Dr. Ordover's FTAIA-Related Opinions Are Helpful ........................- 15 -

        D.    Dell's Critique of Dr. Ordover's FTAIA-Related Opinions Is Inapplicable to Other DAPs ...........................................................- 16 -

V.      Plaintiffs' Objections Are Properly Addressed at Cross-Examination ....................- 16 -

CONCLUSION .................................................................................................- 17 -

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*1st Source Bank v. First Res. Fed. Credit Union*,
  167 F.R.D. 61 (N.D. Ind. 1996) ...................................................................... 8

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
  738 F.3d 960 (9th Cir. 2013) ................................................................... 14, 15

*Allen v. Brown Clinic, P.L.L.P.*,
  531 F.3d 568 (8th Cir. 2008) ............................................................... 2, 3, 16

*Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*,
  135 F. Supp. 2d 1031 (N.D. Cal. 2001) .......................................................... 15

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) .......................................................................... 17

*Atl. Richfield Co. v. Farm Credit Bank of Wichita*,
  226 F.3d 1138 (10th Cir. 2000) ..................................................................... 15

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
  829 F. Supp. 2d 802 (D. Minn. 2011) .......................................................... 2, 8

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996) .............................................................................. 15

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993) ...................................................................................... 15

*Buck v. Ford Motor Co.*,
  810 F. Supp. 2d 815 (N.D. Ohio 2011) .......................................................... 10

*Daubert v. Merrell Dow Pharm., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ........................................................................... 4

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) .............................................................................. 5, 9, 17

*Digital Reg. of Tex., LLC v. Adobe Sys., Inc.*,
  No. C 12-1991 CW, 2014 WL 4090550 (N.D. Cal. Aug. 19, 2014) .................... 15

*Dorn v. Burlington N. Sante Fe R.R. Co.*,
  397 F.3d 1183 (9th Cir. 2005) ...................................................................... 16

*Elcock v. Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000) .......................................................................... 13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Estate of Cape v. United States*,
No. 11-cv-0357, 2013 WL 4522933 (E.D. Wis. Aug. 27, 2013) ........................................... 10

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ........................................................................................................ 13

*In re Chocolate Confectionary Antitrust Litig.*,
289 F.R.D. 200 (M.D. Pa. 2012) ...................................................................................... 11

*In re Flonase Antitrust Litig.*,
907 F. Supp. 2d 637 (E.D. Pa. 2012) ................................................................................ 16

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ............................................................................... 10

*Leese v. Lockheed Martin Corp.*,
6 F. Supp. 3d 546, 553 (D.N.J. 2014) ............................................................................... 10

*Loudermill v. Dow Chem. Co.*,
863 F.2d 566 (8th Cir. 1988) ........................................................................................... 16

*McPhail v. First Command Fin. Planning, Inc.*,
247 FRD 598 (S.D. Cal. 2007) ......................................................................................... 13

*MDG Int'l, Inc. v. Australian Gold, Inc.*,
No. 1:07-cv-1096-SEB-TAB, 2009 WL 1916728 (S.D. Ind. June 29, 2009) ...................... 13

*Mercedes-Benz USA, Inc. v. Coats Auto. Grp., Ltd.*,
362 F. App'x 332 (3d Cir. 2010) ...................................................................................... 15

*Motorola Mobility LLC v. AU Optronics Corp.*,
--- F.3d ---, 2014 WL 6678622 (7th Cir. Nov. 26, 2014) .................................................. 15

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) .............................................................................................. 7

*Quinones-Pacheco v. Am. Airlines, Inc.*,
979 F.2d 1 (1st Cir. 1992) ................................................................................................ 13

*Robinson v. Mo. Pac. R.R. Co.*,
16 F.3d 1083 (10th Cir. 1994) .......................................................................................... 17

*Simon v. Weissman*,
301 F. App'x 107 (3d Cir. 2008) ....................................................................................... 13

*Tunis Bros. Co. v. Ford Motor Co.*,
124 F.R.D. 95 (E.D. Pa. 1989) ......................................................................................... 10

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United States v. Chischilly*,
    30 F.3d 1144 (9th Cir. 1994) ..................................................... 17

*Warford v. Indus. Power Sys., Inc.*,
    553 F. Supp. 2d 28 (D.N.H. 2008) ............................................. 17

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*,
    571 F.3d 206 (2d Cir. 2009) ...................................................... 15

STATE CASES

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. 07-md-01819 CW, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010) ................................... 11

FEDERAL RULES

Federal Rule of Evidence 702 ....................................................... 4, 9

Federal Rule of Evidence 703 ....................................................... 5, 11

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

1 | **MEMORANDUM OF POINTS AND AUTHORITIES**

2 | **QUESTION PRESENTED**

3 | Whether the Court should decline to exclude portions of the expert report and opinions of

4 | Dr. Ordover where Dr. Ordover is qualified as an expert by knowledge, skill, experience, training,

5 | or education; his testimony is based on sufficient facts or data; his reasoning and methodology are

6 | scientifically reliable; and his testimony will assist the trier of fact.

7 | **SUMMARY OF ARGUMENT**

8 | In their reports, Defendants' experts Dr. Carlton and Dr. Ordover identify the flaws in

9 | Plaintiffs' experts' damages reports and offer opinions that cast doubt on the conclusions in those

10 | reports.  Rather than offering an affirmative damages model, they critique Plaintiffs' experts'

11 | models and—by offering partial corrections to those models—offer a ceiling on the possible

12 | damages that Plaintiffs may recover.  Defendants' experts were not asked to (and did not in fact)

13 | construct affirmative calculations of overcharges for the purpose of providing a "reliable"

14 | calculation of damages, which is not, of course, the Defendants' burden at trial.

15 | Plaintiffs' efforts to exclude portions of Dr. Ordover's report hinge on an implicit—and

16 | legally unfounded—objection to this approach.  Plaintiffs have asked the Court to exclude the

17 | report and opinions of Dr. Ordover to the extent they (1) incorporate the overcharge corrections

18 | offered by Dr. Carlton in response to Plaintiffs' experts' calculations; or (2) relate to Plaintiffs'

19 | ███████████████████████████████████████████████████

20 | ████████████████████  Both arguments depend on the flawed presumption that Defendants

21 | bear the burden to provide a reliable damages estimate.  Because Defendants bear no such

22 | obligation, Plaintiffs' motion has no merit and should be rejected.

23 | ***First***, Plaintiffs' objection to Dr. Ordover's reliance on Dr. Carlton's overcharge

24 | calculations is based solely on Dr. Carlton's purported "admission" at his deposition that his

25 | overcharge calculations are not reliable.  This testimony was not the stunning "admission"

26 | Plaintiffs suggest it is.  Dr. Carlton's supposed "admission" was nothing more than his expert

27 | opinion that the corrections he believes must be made to Plaintiffs' flawed damages models still

28 | did not render *Plaintiffs' models* sufficiently reliable to be capable of providing accurate or

- 1 -

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

1   "reliable" damages estimates.  *See* Ex. 1 to the Declaration of Laura K. Lin in Support of

2   Defendants' Opposition to Dell's Motion ("Lin Decl."), Expert Report of Dennis Carlton (Dell)

3   ("Carlton Report") ¶ 121 at 72, Aug. 5, 2014.  What Plaintiffs fail to acknowledge is that any

4   unreliability is due to fundamental errors ***in Dr. Rao's approach to estimating overcharges***, not to

5   any errors by Dr. Carlton.  While Dr. Carlton improved upon Plaintiffs' overcharge estimates with

6   his modifications, he still could not cure all of their defects and was under no legal obligation to

7   do so.  *See, e.g.*, *Allen v. Brown Clinic, P.L.L.P.*, 531 F.3d 568, 574-75 (8th Cir. 2008) (to require

8   the defense expert to prove an alternative scenario "would unduly tie a defendant's hand in

9   rebutting a plaintiff's case . . . [which] is much more than what should be required of a

10  defendant") (citation omitted); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d

11  802, 834-35 (D. Minn. 2011) ("the proper role of rebuttal experts [is] to critique plaintiffs'

12  expert's methodologies and point out potential flaws in the plaintiff's experts' reports").  The

13  unreliability of Plaintiffs' underlying model, however, does not render Dr. Carlton's corrections,

14  nor Dr. Ordover's use of those corrections, unreliable.

15      ***Second***, Dr. Ordover did not "vouch" for Dr. Carlton's improvements to Plaintiffs'

16  overcharge calculations as an accurate estimate of the alleged overcharge.  Instead, Dr. Ordover

17  used Dr. Carlton's calculations as an improvement to Dr. Rao's overcharges to study the extent to

18  which any claimed overcharges would have been passed on to various DAPs such as Dell.  He was

19  able to provide his analysis of this issue, and illustrate the maximum extent to which any pass-

20  through would occur, without requiring that the overcharge improvements made by Dr. Carlton be

21  reliable overcharge estimates, as neither of Defendants' experts were using these improvements

22  for the purpose of offering an affirmative damages analysis.

23      ***Finally***, Plaintiffs' objections to Dr. Ordover's opinions related to the FTAIA misconstrue

24  the content of Dr. Ordover's conclusions and again impermissibly seek to shift the burden of proof

25  to Defendants.  Contrary to Plaintiffs' claim, ████████████████████████████████████

26  ████████████████   Dr. Ordover applies industry-wide data to reach a specific conclusion as to

27  *industry-wide purchases* that may be subject to exclusion pursuant to the FTAIA.  He further

28  opines that in light of this industry-wide finding, ███████████████████████████████

1 ███████████████████████████████████.  As with Dr.

2 Ordover's critiques to Plaintiffs' damages model overall, his critiques related to Dr. Rao's FTAIA

3 analysis need not quantify Dr. Rao's exact errors in order to be admissible.  *See, e.g.*, *Allen*, 531

4 F.3d at 574-75.

5      In sum, Dr. Ordover's opinions reliably identify flaws in Plaintiffs' models and, as a result,

6 are helpful to the jury's assessment of whether Plaintiffs have satisfied their burden of proof.

7 **BACKGROUND**

8      Defendants retained Dr. Carlton and Dr. Ordover to analyze Plaintiffs' experts' opinions

9 regarding damages.  Defendants divided this task by asking Dr. Carlton (whose report has not

10 been challenged via a *Daubert* motion) to analyze Plaintiffs' overcharge calculations and by

11 asking Dr. Ordover to analyze Plaintiffs' pass-through estimates and damages calculations.  Dr.

12 Carlton and Dr. Ordover's ensuing opinions identified significant flaws in Plaintiffs' experts'

13 approaches and offered certain corrections to Plaintiffs' models.  In so doing, Defendants' experts

14 have not attempted to construct an alternative "reliable" calculation of damages.  Instead, their

15 opinions challenge the reliability of Plaintiffs' own models and show how those models result in

16 an overstated and unreliable damages calculation.

17      The present motion concerns two aspects of Dr. Ordover's report.[1]  *First*, Plaintiffs object

18 that Dr. Ordover relied on Dr. Carlton's corrections to Plaintiffs' overcharge calculations instead

19 of conducting an independent critical assessment of the overcharge rate.  *See, e.g.*, Mot. at 5

20 (criticizing Dr. Ordover for "uncritically appl[ying]" Dr. Carlton's corrections); *but see also id.* at

21 9 (criticizing Dr. Ordover for explaining that he found Dr. Carlton's corrections persuasive).

22 *Second*, Plaintiffs object that Dr. Ordover offers an opinion on the effects of the FTAIA on

23 Plaintiffs' damages claims when it was not possible for Dr. Ordover to quantify precisely these

24 effects given the data available to him.  *See id.*; *see also* Ordover (Dell) Report ¶ 52 at 30

25 (attached as Exhibit B to the Declaration of Matthew Kent and referred to hereinafter as "Ordover

26 ─────────────────────

27 [1] Plaintiffs have not identified exactly which sentences or sections of Dr. Ordover's report and opinions they seek to excise.  Defendants reserve the right to put forth additional arguments or

28 evidence should Plaintiffs later clarify their position.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

1    Report").  Dr. Ordover analyzed the industry-wide implications of the FTAIA and opined that

2    given the substantial implications he observed, ███████████████████████

3    ████████████████████████████████████████████████████████

4    ███████    *See, e.g.*, Ordover Report ¶ 53 at 31.  Dr. Ordover critiques Plaintiffs experts' damages

5    calculations for ███████████████████████████████████    *Id*.

6          Notably, the division of labor between Defendants' experts mirrors the approach taken by a

7    substantial majority of the DAPs.  For example, DAP expert Dr. McClave was charged with

8    ████████████████████████████████████████████████

9    ████████████████████████████████████████████████

10   ███████████████████████████████████████    *See* Lin Decl.

11   Ex. 2, Expert Report of Dr. James McClave ("McClave Report") at 4, 12, Apr. 15, 2014.  Next,

12   Dr. Frankel, another DAP expert, was tasked with ████████████████████████

13   ████████████████████████████████████████████████

14   █████████████████    *See, e.g.*, Lin Decl. Ex. 3, Expert Report of Alan Frankel (Best Buy)

15   ("Frankel Report") ¶ 3 at 1, Apr. 15, 2014.  As part of his damages calculation, Dr. Frankel also

16   estimated the rate at which any alleged conspiratorial overcharges were passed-through to the

17   DAPs.  *Id*.  Only Dell and Sharp retained single experts to undertake both of these assessments in

18   a single report.

19                                          **LEGAL STANDARD**

20         Federal Rule of Evidence 702 permits qualified experts to give an opinion based on

21   "scientific, technical, or other specialized knowledge," if that knowledge will "help the trier of fact

22   to understand the evidence or determine a fact in issue."  Fed. R. Evid. 702.  Expert testimony

23   must therefore meet two basic requirements to be admissible: (1) the testimony must be based on

24   the special expertise of the expert; and (2) it must be helpful to the trier of fact, *i.e.*, must

25   "logically advance[ ] a material aspect of the proposing party's case."  *Daubert v. Merrell Dow*

26   *Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*").  The party offering the proposed

27   expert testimony must prove that the testimony satisfies the requirements for admissibility by a

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

1   preponderance of the evidence.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10

2   (1993).

3                                              **ARGUMENT**

4       **I.        The DAPs Do Not, and Cannot, Contest Dr. Ordover's Qualifications**

5           Dr. Ordover is a Professor of Economics and former Director of the Masters in Economics

6   Program at New York University, where he has taught since 1973.  *See* Ordover Report at 1.  He

7   has previously served as Deputy Assistant Attorney General for Economics at the Antitrust

8   Division of the United States Department of Justice.  *Id.*  The DAPs implicitly concede that Dr.

9   Ordover is qualified as an expert by knowledge, skill, experience, training, or education pursuant

10  to Federal Rule of Evidence 703.[2]

11      **II.       The DAPs' Argument Concerning The "Unreliability" of the Defense Experts'
              Analyses Is Both Misleading And Inaccurate**

12          Plaintiffs attack the reliability of Dr. Ordover's opinion by criticizing his use of Dr.

13  Carlton's purportedly "unreliable" calculations.  This theory twists Dr. Carlton's conclusion that

14  Plaintiffs' *own expert's model* is unreliable into an argument that Dr. Carlton's calculations to

15  correct certain flaws in Plaintiffs' expert's model are themselves unreliable.  This logical leap

16  finds no support in the record and cannot sustain Plaintiffs' effort to discredit Dr. Ordover's

17  opinions incorporating Dr. Carlton's work.

18      **A.        Defendants' Experts Did Not Offer Affirmative Calculations As
                 "Reliable" Estimates of Overcharges or Damages—and Were Under
19               No Obligation to Do So**

20          Plaintiffs repeatedly mischaracterize Dr. Ordover's report as presenting an "alternative

21  damages opinion" based on Dr. Carlton's "alternative" overcharge analysis.  *See* Mot. at 5-6, 8.  In

22  reality, as Plaintiffs know from the unequivocal testimony of Dr. Carlton and Dr. Ordover, these

23  experts did not, in fact, construct their own alternatives for calculating overcharges or damages.

24

25

---

26  [2] Plaintiffs likewise point to nothing unsound or unreliable about the methodologies employed in
    Dr. Ordover's pass-through analyses.  *See* Mot. at 5 ("Dell is not seeking to exclude Dr. Ordover's
27  pass-through or opinions on revised damages totals arising from his pass-through analysis.  Dell
    will challenge those opinions on cross examination at trial.").
28

                  DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
                          EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

1   For example, Dr. Carlton testified as follows in explaining that he did not conduct an affirmative

2   overcharge estimate:

3   ████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████

6   *See* Lin Decl. Ex. 4, Deposition of Dennis Carlton ("Carlton Dep.") 312:20-313:3, Sept. 17, 2014.

7       Rather than preparing his own alternative model, Dr. Carlton's assignment was to

8   ██████████████████████████████████████████ *see* Carlton Report ¶ 4

9   at 5, as well as that of Dr. McClave.  Based on this evaluation, Dr. Carlton concluded ████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████  *See* Carlton Dep. 313:19-23.

12      In the course of illustrating some of the many problems with Dell's overcharge estimates,

13  ██████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████

18  ██████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ██████████████████████████████████████████████████████

21  ██████████████████████████████████████████████████████████

22  ██████████████████████████████████████████████████████████

23  ██████████████████████████████████████████

24

25

26  [3] ████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28  ████████████████████████  *See* Carlton Report at 67-69.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

1    Although Plaintiffs try to ignore this critical fact, Dr. Carlton testified that even his

2    "corrected" overcharge calculations remain unreliable because they are based on the inherently

3    flawed model *that is advocated by Dr. Rao (or Plaintiffs' other experts):*



18   Carlton Dep. 387:7-388:14.[4]

19          **B.      Defendants' Position That *Plaintiffs'* Experts Offer Unreliable
                      Overcharge Estimates Does Not Render Defendants' Critiques of Those
20                    Estimates Unreliable**

21          Plaintiffs' complaint seems to be that Dr. Carlton did not completely disregard Dr. Rao's

22   flawed approach in favor of constructing his own model that would reliably estimate the alleged

23   overcharge.  As Plaintiffs know, however, it is their burden to prove injury and damages, and

24   Defendants' experts need not put forth an affirmative model in order to offer admissible

25   testimony.  *See, e.g., Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010) ("The 'will assist'

26   _____

27   [4] Importantly, Dr. Carlton's testimony regarding the reliability of his overcharge calculations was made in response to questions about his opinions and analyses in the Dell case only.  To the extent the Court finds Plaintiffs' motion persuasive, any such exclusion of Dr. Ordover's testimony should accordingly be limited to the Dell action.

1  requirement, under *Daubert*, goes primarily to relevance . . . [and] [w]hat is relevant depends on

2  what must be proved.") (citation omitted).  Because Defendants do not bear the burden of proof,

3  Defendants' experts may reliably critique Plaintiffs' models without attempting to replace them.

4  *See 1st Source Bank v. First Res. Fed. Credit Union*, 167 F.R.D. 61, 65-66 (N.D. Ind. 1996)

5  ("[R]ebuttal expert witness [] may criticize [plaintiff's] damages theories and calculations without

6  offering alternatives." ); *see also Aviva Sports*, 829 F. Supp. 2d at 834-35 (finding that defendants'

7  "rebuttal experts sufficiently applied their expertise to the facts and methodologies used by each of

8  [plaintiff's] experts in forming their conclusions").

9       Dr. Ordover, like Dr. Carlton, also does not present any affirmative calculation of what

10  damages Plaintiffs allegedly incurred.  Instead, Dr. Ordover opines that ███████████████

11  ████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ███████ █ ████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24

25

26  ⁵ In fact, Dr. Ordover calculates many estimates of what damages would have been under
   Plaintiffs' experts' methodologies if certain modifications were made to their overcharge, pass-

27  through, and volume of commerce estimates.  *See, e.g.*, Ordover Report at Fig. 12; Lin Decl. Ex.
   10, Ordover (Best Buy) Report at App'x 5; Lin Decl. Ex. 11, Ordover Reply Report at App'x 4.1-
   4.16, Nov. 6, 2014.

28

1 ████████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████

4 ██████████████████████████████████

5     Dr. Ordover's damages calculations, which incorporate his improved pass-through

6 analyses and Dr. Carlton's adjusted overcharge calculations, are thus designed to critique and

7 demonstrate some of the flaws and over-estimates contained in the unreliable damages model of

8 Dr. Rao.  Dr. Ordover's critiques, moreover, are based on the application of sound economic

9 principles—a matter Plaintiffs do not dispute.  As a result, there is no basis to exclude Dr.

10 Ordover's expert testimony in critique of Plaintiffs' experts from this case.  *See* Fed. R. Evid. 702;

11 *see also Daubert*, 509 U.S. at 595.

12     **III.    Dr. Ordover Permissibly Incorporated, but Does Not "Vouch" for, Dr.
         Carlton's Calculations**

13     Plaintiffs also wrongly assert that Dr. Ordover "vouch[es]" for Dr. Carlton's overcharge

14 analysis without independent investigation and improperly adopts Dr. Carlton's work.  Mot. at 7-

15 8.  In fact, Dr. Ordover's analyses and opinions in critique of Plaintiffs' experts in no way depend

16 on whether Dr. Carlton's calculations provide reliable estimates of the overcharges incurred by

17 Plaintiffs (which Dr. Carlton does not claim to be the case).  Rather, as explained above, Dr.

18 Ordover is well aware that Dr. Carlton's calculations are just illustrative improvements to the

19 flawed overcharge estimates of Dr. Rao and do not purport to be sufficient to render Dr. Rao's

20 methodology reliable.

21 ████████████████████████████████████████████████████

22 █████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████████

24 ███████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████

26 [6] *See also* Ordover Dep. 149:23-149 ██████████████████████

27 ███████████████████████*Id.* at 160:1-6 █████████████████████████

28 ███████████████████████████████████████████████████████████

1 ██████████████████████████████████████████

2 ██████████████████████████████████████████████

3 Dr. Ordover need not reach such conclusions because he does not offer an affirmative opinion

4 quantifying the damages any of the Plaintiffs' allegedly incurred.

5       Nor was Dr. Ordover required to conduct any analysis to assess the reliability of Dr.

6 Carlton's overcharge estimate corrections as neither he nor Dr. Carlton are offering them for the

7 purpose of creating an affirmative model. There is simply nothing improper about an expert report

8 that considers and incorporates the analyses of another expert for purposes of offering an opinion

9 about another subject in the case. *See, e.g.*, *Buck v. Ford Motor Co.*, 810 F. Supp. 2d 815, 844

10 (N.D. Ohio 2011) ("[T]he process of analyzing assembled data while using experience to interpret

11 the data is not illicit; an expert need not actively conduct his or her own tests to have a valid

12 methodology. Rather, an expert's testimony may be formulated by the use of the facts, data and

13 conclusions of other experts.") (citations and quotations omitted). Indeed, "[w]hile experts may

14 not simply 'parrot' ideas of other experts, they are permitted to rely on materials used by other

15 experts in developing their own opinions." *Leese v. Lockheed Martin Corp.*, 6 F. Supp. 3d 546,

16 553 (D.N.J. 2014) ("Experts may use a mix of objective data and subjective analysis from another

17 expert to create an admissible report.") (citations and quotations omitted).

18       Plaintiffs' cases are inapposite as they address very different scenarios in which multiple

19 experts opined on the same issue and reached the same ultimate conclusion, with no additional

20 analyses or findings. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 550 (S.D.N.Y.

21 2004) (excluding additional expert testimony that merely recited facts or repeated opinions of

22 another expert); *Tunis Bros. Co. v. Ford Motor Co.*, 124 F.R.D. 95, 98 (E.D. Pa. 1989) (excluding

23 additional expert testimony offered after trial had begun as "cumulative" where "the same

24 calculations and theory of damages will be presented to the jury through [plaintiff's first expert]").

25       Plaintiffs' other authority, *Estate of Cape v. United States*, No. 11-cv-0357, 2013 WL

26 4522933, at *2 (E.D. Wis. Aug. 27, 2013), is similarly unhelpful. There, plaintiff's expert relied

27 upon an expert report filed in a separate but related litigation as the primary basis for his opinion

28 on precisely the same issue, the overstatement of certain income. *Id.* at *3-4. The court held that

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

1   because plaintiff's expert had not personally observed the underlying facts and data, and the prior

2   report was not the type of evidence that "experts in [that] particular field would reasonably rely

3   on" under Federal Rule of Evidence 703, the report should be excluded.  It is commonplace, by

4   contrast, for damages experts examining the issue of pass through to conduct such analyses using

5   the overcharge calculations by a second expert in the litigation without determining whether such

6   overcharge estimates are themselves reliable measures.  *See, e.g.*, *In re Static Random Access*

7   *Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5094289, at *2 (N.D. Cal. Dec.

8   8, 2010) ("Dr. Dwyer determined overcharges and pass-through rates . . . .  Dr. Harris, IP

9   Plaintiffs' other expert, determined IP Plaintiffs' alleged damages based on Dr. Dwyer's

10  overcharge and pass-through analysis."); *In re Chocolate Confectionary Antitrust Litig.*, 289

11  F.R.D. 200, 209-10 (M.D. Pa. 2012).

12          The majority of DAPs' own experts in this case ████████████████████████████

13  ████████████████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████████████████

23  ██████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████████████████

28  ██████████████████████████████████

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

1    It follows, a fortiori, that if it was proper for Dr. Frankel to offer affirmative damages

2  testimony based on Dr. McClave's overcharge calculations without independently reviewing the

3  reliability of such overcharge estimates, it was proper for Dr. Ordover, who did not offer an

4  affirmative damage study, to incorporate in his critique of plaintiffs' damages study what he found

5  to be the "reasonable changes" to Dr. Rao's model made by Dr. Carlton.

6    **IV.    The DAPs' Objections to Dr. Ordover's FTAIA-Related Opinions Are Unfounded**

7
8    **A.    Dr. Ordover's Analysis of Industry-Wide Data to Reach Industry-Wide Conclusions Is Reliable**

9    In its effort to cast doubt on Dr. Ordover's FTAIA-related opinions, Dell argues that an

10 expert cannot reliably apply industry-wide data to reach a specific conclusion concerning which of

11 Dell's purchases may be subject to exclusion pursuant to the FTAIA.  This argument is a valiant

12 attack on a straw man.  Dr. Ordover neither opines on a Dell-specific FTAIA calculation nor

13 assumes that industry-wide data is representative of Dell's purchasing.[7]  Instead, Dr. Ordover

14 applies industry-wide data to reach a specific conclusion as to *industry-wide purchases* that may

15 be subject to exclusion pursuant to the FTAIA.

16    In light of the opinion actually offered by Dr. Ordover, Dell's reliability objections are

17 unpersuasive.  Dr. Ordover examined ████████████████████████████████████

18 ████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████

20 ███████████████████████████  *See* Ordover Report ¶¶ 49-53 at 29-31.  He applied these

21 figures to estimate that ████████████████████████████████████████

22 ███████████████████  These are not "ipse dixit" figures concocted by Dr. Ordover,

23 but reasoned calculations premised on relevant and available data.  Dr. Ordover's estimations

24 about the CRT monitor industry thus bear nothing in common with the "purely hypothetical

25

26 ―――――――――――――――――
[7]  *See* Ordover Dep. 221:4-8 ("I don't believe I have calculated that number specific to Dell");
27 Ordover Report ¶ 52 at 30 ("It is not possible to tell from the available data which CRT monitors
   purchased in the U.S. contained CDTs that were manufactured by alleged cartel members or which
28 were imported (much less who the importer was).").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

1    assumptions" at issue in the cases cited by Dell.  *See McPhail v. First Command Fin. Planning,*

2    *Inc.*, 247 FRD 598, 605 (S.D. Cal. 2007) (rejecting an expert's "purely hypothetical assumptions"

3    about the number of user accounts that were cancelled, dormant, or inactive); *MDG Int'l, Inc. v.*

4    *Australian Gold, Inc.*, No. 1:07-cv-1096-SEB-TAB, 2009 WL 1916728, at *4 (S.D. Ind. June 29,

5    2009) (rejecting expert's testimony concerning sales markup and growth projection percentages

6    that found no support in the record); *Elcock v. Kmart Corp.*, 233 F.3d 734, 740-41 (3d Cir. 2000)

7    (rejecting expert's attempt to calculate damages based on the assumption that the plaintiff suffered

8    from a total disability where the underlying record showed that she was, at most, partially

9    disabled); *Quinones-Pacheco v. Am. Airlines, Inc.*, 979 F.2d 1 (1st Cir. 1992) (same).  Unlike the

10   expert calculations in all of these cases, Dr. Ordover's industry-wide conclusions are reliable

11   because they are premised on hard data—not hypotheticals or unfounded assumptions.  *See, e.g.*,

12   *Simon v. Weissman*, 301 F. App'x 107, 116 (3d Cir. 2008) (rejecting a party's effort to exclude an

13   expert's estimations and distinguishing the export report in *Elcock* as involving "blatantly

14   incorrect factual assumptions").

15        Indeed, Dell's own expert, Dr. Rao, likewise ███████████████████

16   ██████████████████████████████████████  *See, e.g.*, Rao

17   Report at 25-31.  *Cf. Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (causation testimony was

18   "ipse dixit" of expert where expert relied on scientific studies unrelated to the question at hand to

19   reach his conclusion).  Dr. Rao admitted ██████████████████████████

20   ██████████████████████  *See* Lin Decl. Ex. 7, Deposition of Mohan

21   Rao, Ph.D. ("Rao Dep.") 88:5-89:6, June 10, 2014.  The same is true of Dr. McClave, ██████

22   ██████████████████████████████████████████

23   █████████████  *See* Lin Decl. Ex. 8, Deposition of James McClave ("McClave Dep.")

24   181:3-184:4, 210:3-213:10, Dec. 3, 2014.  When confronted with the fact that his model, ██████

25   ██████████████████████████████████

26   ██████████████████████████████████  *See* Lin

27   Decl. Ex. 9, Rebuttal Expert Report of James McClave Rebuttal Report ¶¶ 9.0, 10.0 at 24-26.  The

28   choices made by each of these experts to use industry-wide analysis in examining particular

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER



1    DAP's damages may be subject to critiques and cross-examination at trial.  But they do not render

2    the opinions inadmissible.

3                    **B.      Dr. Ordover's Critique of Dr. Rao's** ███████████

4                    ███████ **Is Reliable**

5        In addition to his industry-wide calculations, Dr. Ordover concludes ███████

6    ████████████████████████████████████████████████████████████████

7    ███████████████████████████████████████████  *See* Ordover Report ¶ 49

8    at 29; Ordover Dep. 221:10-13.  Dr. Ordover explains that ████████████████████

9    ████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ██████████   *See* Ordover Report ¶ 53 at 31.

12      ████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15       ███████████████████████████████  *See* Ordover Report ¶¶ 43-53 at 29-31; Ordover

16   Dep. 222:3-14 (noting that ████████████████████████████████

17   ████████████████████████████████.  In concluding that ███████████████

18   ████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ██████████████████████████████

25       Dr. Ordover's assumptions are reasonable inferences, not the type of illogical leaps for

26   which an expert's conclusions may be excluded.  *See, e.g.*, *Alaska Rent-A-Car, Inc. v. Avis Budget*

27   *Grp., Inc.*, 738 F.3d 960, 968-70 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 644 (2013) (district court

28   properly admitted expert opinion extrapolating from market data to reach conclusions about the

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

facts of the case; challenges to this approach "all go to the weight of the testimony and its credibility, not its admissibility").  The Court should exclude expert evidence if it is "unreliable nonsense," *id*. at 970, or "speculative or conjectural or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison."  *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (internal citations and quotations omitted).  "Other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony."  *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213-14 (2d Cir. 2009) (citation omitted).

Each of the purportedly contrary cases cited by Dell is factually distinguishable.  *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) concerned a motion for judgment notwithstanding a jury verdict—not the admissibility of an expert's opinion.  Plaintiffs' remaining citations concern a *plaintiff*'s failure to put forth a reliable estimate in support of its own damages claim.  *See Digital Reg. of Tex., LLC v. Adobe Sys., Inc.*, No. C 12-1991 CW, 2014 WL 4090550, at *1 (N.D. Cal. Aug. 19, 2014) (plaintiff's expert's damages-related calculations unreliable because he failed to justify assumptions related to industry data); *Am. Booksellers Ass'n, Inc. v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1041-42 (N.D. Cal. 2001) (same); *Mercedes-Benz USA, Inc. v. Coats Auto. Grp., Ltd.*, 362 F. App'x 332, 334 (3d Cir. 2010) (counterclaimant's damages figures based on unsubstantiated assumptions); *see also Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1164 (10th Cir. 2000) (faulting counterclaimant's expert for his *failure* to analyze industry data).  These citations, like the bulk of Dell's arguments, are inapposite here where Defendants have no obligation to put forth an alternative damages model to help Plaintiffs prove their case.

### C.    Dr. Ordover's FTAIA-Related Opinions Are Helpful

Plaintiffs attempt to characterize Dr. Ordover's FTAIA-related opinions as unhelpful on the ground that Dr. Ordover opines about the industry as a whole and did not calculate the exact extent to which Plaintiffs' damages claims should be reduced to comply with the FTAIA.  But Plaintiffs—not Defendants—bear the burden to satisfy the requirements of the FTAIA and to put forth a concrete, reliable damages figure.  *See, e.g., Motorola Mobility LLC v. AU Optronics*

*Corp.*, --- F.3d ---, 2014 WL 6678622, at *2-3 (7th Cir. Nov. 26, 2014).  Dr. Ordover's FTAIA

opinion is helpful to the jury because it assists the jurors in holding Plaintiffs to their burden to

provide a reliable damages estimate that complies with the requirements of the FTAIA.  *See, e.g.*,

*Allen*, 531 F.3d at 574-75 (to require the defense expert to prove an alternative scenario "would

unduly tie a defendant's hand in rebutting a plaintiff's case . . . [which] is much more than what

should be required of a defendant") (citation omitted); *In re Flonase Antitrust Litig.*, 907 F. Supp.

2d 637, 645-46 (E.D. Pa. 2012) (finding expert testimony on industry practices helpful and

admissible even when not specific to the FDA petition at issue).

### D.   Dell's Critique of Dr. Ordover's FTAIA-Related Opinions Is Inapplicable to Other DAPs

Even if Plaintiffs' objections to Dr. Ordover's FTAIA-related opinions were persuasive

with respect to Dell—which they are not—these objections carry no weight when parroted by the

remaining DAPs.  Dell contends that its own purportedly unique purchasing practices render Dr.

Ordover's analysis of industry data inapplicable as to Dell.  But neither Dell nor any of the other

DAPs offer any argument that the other DAPs had any unique purchasing practices such that Dr.

Ordover's analysis of industry-wide data is somehow unreliable or unhelpful with respect to their

claims.  Nor do these DAPs offer any other argument to suggest that Dr. Ordover's analysis of

industry data is inapplicable as to them.  For this reason, as well as the additional reasons set forth

above, the other DAPs' attempt to exclude Dr. Ordover's FTAIA-related opinion should be

rejected.

### V.   Plaintiffs' Objections Are Properly Addressed at Cross-Examination

Cross-examination, not exclusion, is the proper means to address Plaintiffs' purported

objections to Dr. Ordover.  *See Dorn v. Burlington N. Sante Fe R.R. Co.*, 397 F.3d 1183, 1196 (9th

Cir. 2005) (noting the "liberal standard of admissibility set forth in" *Daubert*); *see also Loudermill

v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988) ("As a general rule, the factual basis of an

expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the

opposing party to examine the factual basis for the opinion in cross-examination.").

1   Any concerns Plaintiffs may have with respect to whether Dr. Ordover should have

2   selected different data or conducted a different analysis should be presented to the jury via cross-

3   examination.  "[O]ur adversary system provides the necessary tools for challenging reliable, albeit

4   debatable, expert testimony."  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d

5   Cir. 2002).  *See also, e.g.*, *United States v. Chischilly*, 30 F.3d 1144, 1154 (9th Cir. 1994),

6   *overruled on other grounds by United States v. Preston*, 741 F.3d 1008 (9th Cir. 2014) ("[L]ower

7   courts are not to confuse the role of judge and jury by forgetting that vigorous cross-examination,

8   presentation of contrary evidence, and careful instruction on the burden of proof, rather than

9   exclusion, are the traditional and appropriate means of attacking shaky but admissible evidence.")

10  (internal citation marks omitted) (citing *Daubert*, 509 U.S. at 596); *Warford v. Indus. Power Sys.,*

11  *Inc.*, 553 F. Supp. 2d 28, 35 (D.N.H. 2008) ("When an expert relies on the opinion of another,

12  such reliance goes to the weight, not to the admissibility of the expert's opinion.").

13  Likewise, any doubts about the helpfulness of Dr. Ordover's opinions should be left for the

14  jury.  *See Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) ("Doubts about

15  whether an expert's testimony will be useful should generally be resolved in favor of admissibility

16  unless there are strong factors such as time or surprise favoring exclusions.  The jury is intelligent

17  enough . . .  to ignore what is unhelpful in its deliberations.") (internal citation omitted).

18  **CONCLUSION**

19  For the foregoing reasons, Defendants respectively request that this Court deny Plaintiffs'

20  Motion and admit the challenged sections of Dr. Ordover's report and opinions.

21

22  Dated:  January 16, 2015                    Respectfully submitted,

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

1

2 MUNGER, TOLLES & OLSON LLP

By: */s/ Hojoon Hwang*
3

JEROME C. ROTH (State Bar No. 159483)
4 jerome.roth@mto.com
HOJOON HWANG (State Bar No. 184950)
5 hojoon.hwang@mto.com
MIRIAM KIM (State Bar No. 238230)
6 miriam.kim@mto.com
**MUNGER, TOLLES & OLSON LLP**
7 560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
8 Telephone: (415) 512-4000
Facsimile: (415) 512-4077
9

WILLIAM D. TEMKO (SBN 098858)
10 William.Temko@mto.com
**MUNGER, TOLLES & OLSON LLP**
11 355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA 90071-1560
12 Telephone: (213) 683-9100
Facsimile: (213) 687-3702
13

*Attorneys for Defendant LG Electronics, Inc.*
14

15 WINSTON & STRAWN LLP

16 By: */s/ Jeffrey L. Kessler*
JEFFREY L. KESSLER (*pro hac vice*)
17 JKessler@winston.com
A. PAUL VICTOR (*pro hac vice*)
18 PVictor@winston.com
ALDO A. BADINI (SBN 257086)
19 ABadini@winston.com
EVA W. COLE (*pro hac vice*)
20 EWCole@winston.com
MOLLY M. DONOVAN
21 MMDonovan@winston.com
**WINSTON & STRAWN LLP**
22 200 Park Avenue
New York, NY 10166
23 Telephone: (212) 294-6700
Facsimile: (212) 294-4700
24

STEVEN A. REISS (*pro hac vice*)
25 steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
26 david.yohai@weil.com
ADAM C. HEMLOCK (*pro hac vice*)
27 adam.hemlock@weil.com
**WEIL, GOTSHAL & MANGES LLP**
28 767 Fifth Avenue

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

1    New York, New York 10153-0119
     Telephone: (212) 310-8000
2    Facsimile: (212) 310-8007

3    *Attorneys for Defendants Panasonic Corporation
     (f/k/a Matsushita Electric Industrial Co., Ltd.), MT*
4    *Picture Display Co., Ltd.*

5
     KIRKLAND & ELLIS LLP
6
     By: */s/ Eliot A. Adelson*
7    ELIOT A. ADELSON (SBN 205284)
     JAMES MAXWELL COOPER (SBN 284054)
8    **KIRKLAND & ELLIS LLP**
     555 California Street, 27th Floor
9    San Francisco, California 94104
     Tel: (415) 439-1400
10   Facsimile: (415) 439-1500
     E-mail: eadelson@kirkland.com
11   E-mail: max.cooper@kirkland.com

12   JAMES H. MUTCHNIK, P.C. (*pro hac vice*)
     KATE WHEATON (*pro hac vice*)
13   **KIRKLAND & ELLIS LLP**
     300 North LaSalle
14   Chicago, Illinois 60654
     Tel: (312) 862-2000
15   Facsimile: (312) 862-2200

16   *Attorneys for Defendants Hitachi, Ltd., Hitachi
     Displays, Ltd. (n/k/a Japan Display Inc.), Hitachi Asia,*
17   *Ltd., Hitachi America, Ltd., and Hitachi Electronic
     Devices (USA), Inc.*

18

19   SHEPPARD MULLIN RICHTER & HAMPTON LLP

20   By: */s/ Gary L. Halling*
     GARY L. HALLING (SBN 66087)
21   ghalling@sheppardmullin.com
     JAMES L. MCGINNIS (SBN 95788)
22   jmcginnis@sheppardmullin.com
     MICHAEL W. SCARBOROUGH (SBN 203524)
23   mscarborough@sheppardmullin.com
     **SHEPPARD MULLIN RICHTER & HAMPTON**
24   **LLP**
     Four Embarcadero Center, 17th Floor
25   San Francisco, California 94111
     Telephone: (415) 434-9100
26   Facsimile: (415) 434-3947

27   *Attorneys for Defendants Samsung SDI America, Inc.;
     Samsung SDI Co., Ltd.; Samsung SDI (Malaysia)*
28   *SDN. BHD.; Samsung SDI Mexico S.A. DE C.V.;*

1    Samsung SDI Brasil Ltda.; Shenzen Samsung SDI Co.,
     Ltd. and Tianjin Samsung SDI Co., Ltd.

2

3    WHITE & CASE LLP

4    By: /s/ Lucius B. Lau
     Christopher M. Curran (pro hac vice)
5    ccurran@whitecase.com
     Lucius B. Lau (pro hac vice)
6    alau@whitecase.com
     Dana E. Foster (pro hac vice)
7    defoster@whitecase.com
     701 Thirteenth Street, N.W.
8    Washington, DC  20005
     tel.: (202) 626-3600
9    fax: (202) 639-9355

10   Attorneys for Defendants Toshiba Corporation, Toshiba
     America, Inc., Toshiba America Information Systems,
11   Inc., Toshiba America Consumer Products, L.L.C., and
     Toshiba America Electronic Components, Inc. (joining
12   with respect to all of the above-captioned cases except
     for Dell Inc., et al. v. Hitachi Ltd. et al., No. 13-cv-
13   02171; Siegel v. Hitachi Ltd., et al, No. 11-cv-5502;
     Target Corp. v. Chunghwa Picture Tubes, Ltd., et al., No.
14   11-cv-05514; and ViewSonic Corp. v. Chunghwa Picture
     Tubes Ltd., No. 14-cv-2510)

15

16   BAKER BOTTS LLP

17   By: /s/ John M. Taladay
     John M. Taladay (pro hac vice)
18   Joseph Ostoyich (pro hac vice)
     Erik T. Koons (pro hac vice)
19   Charles M. Malaise (pro hac vice)
     BAKER BOTTS LLP
20   1299 Pennsylvania Ave., N.W.
     Washington, DC 20004-2400
21   Telephone: (202) 639-7700
     Facsimile: (202) 639-7890
22   Email: john.taladay@bakerbotts.com
     Email: joseph.ostoyich@bakerbotts.com
23   Email: erik.koons@bakerbotts.com
     Email: charles.malaise@bakerbotts.com

24   Jon V. Swenson (SBN 233054)
     BAKER BOTTS LLP
25   620 Hansen Way
     Palo Alto, CA 94304
26   Telephone: (650) 739-7500
     Facsimile: (650) 739-7699
27   Email: jon.swenson@bakerbotts.com

28

1                                Attorneys for Defendants Koninklijke Philips N.V., Philips Electronics North America Corporation, Philips

2                                Taiwan Limited, and Philips do Brasil Ltda. (joining with respect to all of the above-captioned cases except

3                                for Dell Inc., et al. v. Hitachi Ltd. et al., No. 13-cv-02171)

4

5                                FAEGRE BAKER DANIELS LLP

6                                By: */s/ Kathy L. Osborn*

7                                Kathy L. Osborn (pro hac vice)
Ryan M. Hurley (pro hac vice)

8                                Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700

9                                Indianapolis, IN  46204
Telephone: +1-317-237-0300

10                              Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com

11                              ryan.hurley@FaegreBD.com

12                              Jeffrey S. Roberts (pro hac vice)
Email: jeff.roberts@FaegreBD.com

13                              Faegre Baker Daniels LLP
3200 Wells Fargo Center

14                              1700 Lincoln Street
Denver, CO 80203

15                              Telephone: (303) 607-3500
Facsimile: (303) 607-3600

16                              Stephen M. Judge (pro hac vice)
Email: steve.judge@FaegreBd.com

17                              Faegre Baker Daniels LLP
202 S. Michigan Street, Suite 1400

18                              South Bend, IN 46601
Telephone: (574) 234-4149

19                              Facsimile: (574) 239-1900

20                              Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.

21

22                              SQUIRE PATTONBOGGS (US) LLP

23                              By: */s/ Donald A. Wall*
Donald A. Wall

24                              Mark Dosker
Nathan Lane, III

25                              275 Battery Street, Suite 2600
San Francisco, CA 94111

26                              Telephone: 415.954.0200
Facsimile: 415.954.0200

27                              Email: Mark.Dosker@squirepb.com
Nathan.Lane@squirepb.com

28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER

Donald A. Wall (Pro Hac Vice)
Squire Patton Boggs (US) LLP
1 East Washington Street, Suite 2700
Phoenix, AZ 85004
Telephone: 602.528.4000
Facsimile: 602.253.8129
Email: Donald.Wall@squirepb.com

Attorneys for Defendant Technologies Displays
Americas LLC with respect to all cases except Office
Depot, Inc. v. Technicolor SA and Sears, Roebuck & Co.
v. Technicolor SA

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

By: */s/ Jeffrey I. Zuckerman*
Jeffrey I. Zuckerman (Pro Hac Vice)
Ellen Tobin (Pro Hac Vice)
101 Park Avenue
New York, New York 10178
Telephone: 212.696.6000
Facsimile: 212.697.1559
Email: jzuckerman@curtis.com
etobin@curtis.com

Arthur Gaus (SBN 289560)
Dillingham & Murphy, LLP
601 California Street, Suite 1900
San Francisco, California 94108
Telephone: 415.397.2700
Facsimile: 415.397-3300
Email: asg@dillinghammurphy.com

Attorneys for Defendant Technologies Displays
Americas LLC with respect to Office Depot, Inc. v.
Technicolor SA, and Sears, Roebuck & Co. v.
Technicolor SA

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE
EXPERT REPORT AND OPINIONS OF JANUSZ A. ORDOVER