Michael P. Kenny, Esq. (*admitted pro hac vice*)
mike.kenny@alston.com
Debra D. Bernstein, Esq. (*admitted pro hac vice*)
debra.bernstein@alston.com
Matthew D. Kent, Esq. (*admitted pro hac vice*)
matthew.kent@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

James M. Wagstaffe, Esq. (SBN 95535)
wagstaffe@kerrwagstaffe.com
**KERR & WAGSTAFFE LLP**
101 Mission Street, 18th Floor
San Francisco, California 94105-1576
Tel: (415) 371-8500
Fax: (415) 371-0500

***Attorneys for Plaintiffs Dell Inc. and Dell Products L.P.***
**[Additional Counsel Listed on Signature Page]**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-md-05944-SC (N.D. Cal.) |
| | MDL No. 1917 |
| This Document Relates to: | **DIRECT ACTION PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE CERTAIN TESTIMONY OF PROFESSOR KENNETH ELZINGA** |
| *Best Buy Co., Inc. v. Hitachi, Ltd.*, No. 11-cv-05513; | |
| *Best Buy Co., Inc. v. Technicolor SA*, No. 13-cv-05264; | |
| *CompuCom Sys., Inc. v. Hitachi, Ltd.*, No. 11-cv-06396; | Date:   February 20, 2015 Time:  10:00 a.m. Courtroom:    1 Judge:  Honorable Samuel Conti |
| *Costco Wholesale Corp. v. Hitachi, Ltd.*, No. 11-cv-06397; | **REDACTED VERSION** |
| *Dell Inc. and Dell Products L.P., v. Hitachi, Ltd.*, No. 13-cv-02171; | |

i

*Electrograph Sys. v. Hitachi, Ltd.*,
No. 11-cv-01656;

*Electrograph Sys., Inc. v. Technicolor SA*,
No. 13-cv-05724;

*Interbond Corp. of Am. v. Hitachi, Ltd.*,
No. 11-cv-06275;

*Interbond Corp. of Am. v. Technicolor SA*,
No. 13-cv-05727;

*Office Depot, Inc. v. Hitachi Ltd.*,
No. 11-cv-06276;

*Office Depot, Inc. v. Technicolor SA*,
No. 13-cv-05726;

*P.C. Richard & Son Long Island Corp. v. Hitachi, Ltd.*, No. 12-cv-02648;

*P.C. Richard & Son Long Island Corp. v. Technicolor SA*, No. 13-cv-05725;

*Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd.*,
No. 11-cv-05514;

*Tech Data Corp. v. Hitachi, Ltd.*, No. 13-cv-00157;

*ViewSonic Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 14-02510.

# **TABLE OF CONTENTS**

I. STATEMENT OF ISSUE TO BE DECIDED ................................................................. 1

II. INTRODUCTION ............................................................................................................. 1

III. BACKGROUND ............................................................................................................... 2

      A.    Professor Elzinga's Economic Analysis, Opinions and Proposed Testimony ......................................................................................... 2

IV ARGUMENT AND CITATION OF AUTHORITIES .................................................... 3

      A.    Professor Elzinga Is Entitled To Testify About the Factual Bases for His Opinions ............................................................... 5

            1.    *Professor Elzinga's Review and Analysis of the CRT Suppliers' Conduct and the CRT Industry's Conditions Falls Squarely Within Permitted Expert Economic Testimony* ................................................. 5

            2.    *Professor Elzinga is Not Acting as a Conspiracy-ologist* ........................................................................................ 10

      B.    The Factual Bases for Professor Elzinga's Opinion Would Not Intrude on the Jury's Role or Improperly State Legal Conclusions .................................................................. 11

            1.    *Professor Elzinga's Factual Bases Do Not Improperly Contain Legal Conclusions or Impinge on the Jury's Fact Finding* ....................................... 12

            2.    *Professor Elzinga's Opinion is the Result of Economic Principles Carefully Applied to the Factual Record* .................................................................. 14

V. CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aguilar v. Int'l Longshoremen's Union Local No. 10,*
   966 F.2d 443 (9th Cir. 1992)................................................................................ 13

*Am. Ad Mgmt., Inc. v. GTE Corp.,*
   92 F.3d 781 (9th Cir. 1996).................................................................................... 6

*Amorgianos v. Nat'l R.R. Passenger Corp.,*
   137 F. Supp. 2d 147 (E.D.N.Y. 2001) *aff'd*, 303 F.3d 256 (2d Cir. 2002) ........................... 10

*Brooke Grp., Ltd. v. Brown & Williamson Tobacco Corp.,*
   509 U.S. 209 (1992) .............................................................................................. 6

*Crow Tribe of Indians v. Racicot,*
   87 F.3d 1039 (9th Cir. 1992).................................................................................. 13

*Daubert v. Merrell Dow Pharm., Inc.,*
   509 U.S. 579 (1993) ....................................................................................... 3, 4, 9

*Daubert v. Merrell Down Pharm., Inc.,*
   43 F.3d 1311 (9th Cir. 1995).................................................................................. 4

*DSU Med. Corp. v. JMS Co.,*
   296 F. Supp. 2d 1140 (N.D. Cal. 2003) .................................................................. 4

*Gen Elec. Co. v. Joiner,*
   522 U.S. 136 (1997) ............................................................................................ 14

*Guidroz-Brault v. Mo. Pac. R.R. Co.,*
   254 F.3d 825 (9th Cir. 2001) ................................................................................ 9

*Hangarter v. Provident Life and Accident Ins. Co.,*
   373 F.3d 998 (9th Cir. 2004).................................................................................. 13

*Highland Capital Mgmt. L.P. v. Scheider,*
   379 F. Supp.2d 461 (S.D.N.Y. 2005)..................................................................... 2, 7

*Hygh v. Jacobs,*
   961 F.2d 359 (2d Cir. 1992).................................................................................. 13

*In re High Fructose Corn Syrup Antitrust Litig.,*
   295 F.3d 651 (7th Cir. 2002)................................................................................. 6

*In re Polypropylene Carpet Antitrust Litig.,*
   93 F. Supp. 2d 1348 (N.D. Ga. 2000)..................................................................... 6

iv

*In re Scrap Metal Antitrust Litig.*,
   527 F.3d 517 (6th Cir. 2008).................................................................................. 4

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   No. 07-md-01819, 2010 WL 5071694 (N.D. Cal. Dec. 7, 2010) ........................... 4

*In re Sulfuric Acid Antitrust Litig.*,
   235 F.R.D. 646 (N.D. Ill. 2006) ............................................................................. 6

*Inc. v. Realty One, Inc.*,
   173 F.3d 995 (6th Cir. 1999).................................................................................. 6

*Johns v. Bayer Corp.*,
   No. 09-CV-1935, 2013 WL 1498965 (S.D. Cal. April 10, 2013)........................... 8

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)............................................................................................... 9

*Littleton Gas Co v. U.S. Dep't of Energy*,
   300 F. Supp. 2d 21 (D.D.C. 2003) ...................................................................... 14

*Lloyd v. Conseco Fin. Corp.*,
   No. CV00-10452 MMM, 2001 WL 36097624 (C.D. Cal. Oct. 19, 2011) ............. 9

*McHugh v. United Serv. Auto Ass'n*,
   164 F.3d 451 (9th Cir. 1999)................................................................................ 13

*Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*,
   877 F.2d 1333 .........................................................................................................5

*Ohio v. Louis Trauth Dairy, Inc.*,
   925 F. Supp. 1247 (S.D. Ohio 1996)...................................................................... 6

*Oracle Am., Inc. v. Google, Inc.*,
   798 F. Supp. 2d 1111 (N.D. Cal. 2011) ................................................................. 9

*Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*,
   346 U.S. 537 (1954)............................................................................................. 12

*Tubar v. Clift*,
   No. C05-1154-JCC, 2009 U.S. Dist. LEXIS 44201 (W.D. Wash. May 12, 2009)............... 8

*U.S. Info. Sys., Inc. v. Int'l. Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*,
   313 F. Supp. 2d 213 (S.D.N.Y. 2004) .................................................. 1, 6, 11

*United States v. AU Optronics Corp.*,
   No. CR 09-110-SI, 2011 U.S. Dist. LEXIS 148035 (N.D. Cal. Dec. 22, 2011)...................... 2

*United States v. Brodie*,
   858 F.2d 492 (9th Cir. 1988)............................................................................... 14

v

*United States v. Curtis,*
　782 F.2d 593 (6th Cir. 1986) ........................................................................... 14

*United States v. Sandoval-Mendoza,*
　472 F.3d 645 (9th Cir. 2006) ........................................................................... 4

**RULES**

Fed. R. Civ. P. 26 ........................................................................................... 7, 10

Fed. R. Evid. 702 ........................................................................................... passim

Fed. R. Evid. 703 ........................................................................................... 5, 7

Fed. R. Evid. 704 ........................................................................................... 12

# I.    STATEMENT OF ISSUE TO BE DECIDED

Whether Professor Kenneth Elzinga should be precluded from testifying about the factual bases and the materials he reasonably relied upon to form his expert economic opinions, despite the clear language of Federal Rule of Evidence 702(b) and (c) which requires that his expert testimony be "based on sufficient facts or data."

# II.    INTRODUCTION

Professor Elzinga is the Robert C. Taylor Professor of Economics at the University of Virginia. Defendants ***do not challenge Professor Elzinga's qualifications, nor do they challenge a single one of his opinions, much less his methodology or the actual facts and data upon which his opinions are based***. Instead, Defendants seek to prelude Professor Elzinga from explaining to the jury the factual bases of his economic opinions, arguing that it constitutes an improper narrative and that it would usurp the role of the jury. The Defendants' Motion is misguided because it fundamentally misapprehends the basic precepts of the Federal Rules of Evidence as they apply to expert testimony.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████ As courts routinely hold, an expert's testimony about the factual bases for his expert opinion is the very analysis that is required by Federal Rule of Evidence 702. *See, e.g., U.S. Info. Sys., Inc. v. Int'l. Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*, 313 F. Supp. 2d 213, 240 (S.D.N.Y. 2004) ("Economists often explain whether conduct is indicative of collusion.") Moreover, Defendants (including Toshiba, the author of this motion) made these same arguments to

exclude Plaintiffs' experts in the TFT-LCD litigation, which Judge Illston correctly rejected.[1]

Defendants' argument is so weak that the very cases cited in their brief undermines it− "an expert must of course rely on facts or data in formulating an expert opinion." *See Highland Capital Mgmt. L.P. v. Scheider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) (citations omitted).  And Defendants admit as much when they affirmatively concede that they "do not dispute that Professor Elzinga may rely upon the documentary record—and even a limited chronology of events—as may be relevant to the application of economic theory to the facts of this case." *See* Def. Mot. at 8.  Defendants' real gripe is that Professor Elzinga relies on ***too much evidence*** and provides ***too much detail*** in support of his opinions based on the massive paper trail of incriminating evidence in the Defendants' own documents.

Defendants' efforts to taint Professor Elzinga's opinion as usurping the jury's role fares no better.  Professor Elzinga's careful application of economic principles to the conditions in the CRT industry and the CRT suppliers' behavior would be helpful to the jury as they seek to understand the complex structural and behavioral elements of cartel theory. The Court should not limit Professor Elzinga's testimony on these matters.[2]

## III.   BACKGROUND

### A. Professor Elzinga's Economic Analysis, Opinions and Proposed Testimony

Professor Elzinga is the Robert C. Taylor Professor of Economics at the University of Virginia.  He has devoted his nearly 50-year career to teaching and research in the field of

---

[1] *See* Ex. 1 to Declaration of Debra Bernstein (all exhibits referenced herein are attached to the Bernstein Declaration), *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, Final Pretrial Scheduling Order in all DPP Actions, 07-md-1827-SI, MDL Dkt. No. 5597 (May 4, 2012) at 6 (denying LG/Toshiba Motion in Limine No. 1, Dkt. No. 5175 (Ex. 2), to exclude expert testimony without prejudice pending specific objections to specific questions at trial, despite argument that Plaintiffs' experts would offer opinions about the intent, motive or state of mind of defendants, as well as personal interpretations of documents and deposition testimony).

[2] The proposed testimony of Professor Elzinga should not be considered in a vacuum; any decision to exclude certain facts should be reviewed within the context of the evidence adduced at trial.  *See, e.g., United States v. AU Optronics Corp.*, No. CR 09-110-SI, 2011 U.S. Dist. LEXIS 148035, at *3-4 (N.D. Cal. Dec. 22, 2011) ("The general *Daubert*/FRE 702 motions to exclude are denied, without prejudice to specific objections at the time of trial").

antitrust economics and has been admitted as an economic expert in numerous antitrust cases, including on behalf of the Antitrust Division of the Department of Justice, Federal Trade Commission, and even as a special consultant to Judge Lewis A. Kaplan in the United States District Court for the Southern District of New York.  *See e.g., In re: Auction Houses Antitrust Litigation (Sotheby's and Christie's)* (S.D.N.Y. 2001); *In re: Urethane Antitrust Litig.,* No. 04-d-1616 (D. Kan. 2014).

Defendants are not challenging any of these opinions.

## IV.    ARGUMENT AND CITATION OF AUTHORITIES

A witness qualified as an expert is permitted to testify if his or her testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  To be admissible, expert testimony must be both relevant and reliable.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  In *Daubert*, the Supreme Court

---

[3] DAPs have retained other economists (Dr. Mohan Rao for Dell, and Dr. McClave for the majority of the DAPs) who have developed econometric models that accurately and reliably estimate the degree of overcharges resulting from Defendants' conspiracy to fix worldwide CRT prices.  Notably, Defendants have not moved to exclude the testimony of any of these experts.

specifically cautioned against the "wholesale exclusion" of expert testimony, and reiterated that the ultimate assessment of the weight to be accorded to an expert's opinion should be made by the jury at trial after "[the] presentation of contrary evidence . . . [v]igorous cross-examination . . . and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. The rejection of expert testimony under Rule 702 is "the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee notes to the 2000 amendments.

Reliability is assessed by looking at whether "the reasoning or methodology underlying the testimony is scientifically valid" and whether it "can properly be applied to the facts at issue." *DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1146 (N.D. Cal. 2003) (quoting *Daubert*, 509 U.S. at 592-93). In assessing the reliability of Professor Elzinga's opinions, the Court need not be convinced that Professor Elzinga's opinions are correct or even persuasive, only that they are sufficiently reliable to assist the jury. *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819, 2010 WL 5071694, at *4 (N.D. Cal. Dec. 7, 2010); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-530, 531 (6th Cir. 2008) ("The task for the district court in deciding whether an expert's opinion is reliable [under *Daubert*] is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation.")).

As the Supreme Court explained in *Daubert*, the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached. 509 U.S. at 595; *see also Daubert v. Merrell Down Pharm., Inc.* (*Daubert II*), 43 F.3d 1311, 1318 (9th Cir. 1995) (on remand) ("[T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology."); *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (holding that expert opinion "is reliable if the knowledge underlying it 'has a reliable basis in the knowledge and experience of [the relevant] discipline'").

Defendants are not challenging the methodology or reliability of any of Professor Elzinga's opinions.

**A. Professor Elzinga Is Entitled To Testify About the Factual Bases for His Opinions**

Defendants also **do not challenge Professor Elzinga's expert qualifications, nor do they challenge his ability to "rely upon the documentary record**." Def. Mot. at 8. Instead, Defendants complain that Section VII of Professor Elzinga's Expert Report[4] (which sets forth the underlying factual basis for his expert economic analyses) is **too detailed** and provides **too much evidence**, supposedly making it a "narrative." Under the ruse of this pejorative labeling, and in contravention of Rule 702(b), Defendants seek to prohibit Professor Elzinga from testifying about the very foundation and predicate for his expert economic opinions.

See Fed. R. Evid. 702 (explaining that an expert witness must apply "the principles and methods reliably **to the facts of the case**" (emphasis added)); *see also Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1339 (reasoning that "[a]n opinion has a significance proportioned to the sources that sustain it. An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process") (internal citations omitted).

> *1. Professor Elzinga's Review and Analysis of the CRT Suppliers' Conduct and the CRT Industry's Conditions Falls Squarely Within Permitted Expert Economic Testimony*

Professor Elzinga did exactly what an economic expert is supposed to do—he reviewed factual evidence of the CRT suppliers' conduct and the structure of the industry and applied well established economic principles to reach each of his conclusions. Professor Elzinga's approach is consistent with both the case law (which routinely allows testimony of the nature and quality offered by Professor Elzinga) and economic literature and textbooks.

---

[4] Defendants claim that Professor Elzinga's rebuttal report also contains a "narrative" because it provides a detailed discussion of the factual bases of his rebuttal report. Defendants' complaint on the rebuttal report is the same and should be rejected for the reasons enumerated herein.

1    The case law is clear: expert economists in antitrust cases are routinely permitted to

2    review behavior and testify about what facts are consistent—or inconsistent—with cartel

3    behavior, including whether: the alleged conduct harms competition, the conditions in a

4    specific market are conducive to conspiratorial activity, and underlying behavior was

5    consistent with collusive activity.  *See, e.g., Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781,

6    790-91 (9th Cir. 1996) (conduct "has major anti-competitive consequences"); *Re/Max lnt'l*

7    *Inc. v. Realty One, Inc.*, 173 F.3d 995, 1010 (6th Cir. 1999) (allowing expert to opine on

8    whether action was consistent with conspiracy theory after evaluation of market conditions

9    and market behavior); *U.S. Info. Sys., Inc. v. Int'l. Bhd. of Elec. Workers Local Union No. 3,*

10   *AFL-CIO*, 313 F. Supp. 2d 213, 240 (S.D.N.Y. 2004) (noting that "[e]conomists often explain

11   whether conduct is indicative of collusion"); *Ohio v. Louis Trauth Dairy, Inc.*, 925 F. Supp.

12   1247, 1253-54 (S.D. Ohio 1996) (permitting expert testimony regarding factors that facilitate

13   collusion); *In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d. 1348, 1355 (N.D. Ga.

14   2000) (finding that "climate of the polypropylene market . . . was consistent with a finding

15   that Defendants engaged in a conspiracy to fix prices"); *In re High Fructose Corn Syrup*

16   *Antitrust Litig.*, 295 F.3d 651, 660-61 (7th Cir. 2002); *In re Sulfuric Acid Antitrust Litig.*, 235

17   F.R.D. 646, 659-60 (N.D. Ill. 2006).[5]

18   Notably, certain Defendants (including Toshiba, the author of the instant Motion)

19   made identical arguments in an effort to exclude the factual bases of Plaintiffs' economic

20   experts in the TFT-LCD litigation.  Judge Illston denied their motions and ultimately rejected

21   Defendants' objections at trial.  *See* Ex. 1, *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, Final

22   Pretrial Scheduling Order in all DPP Actions, Dkt. No. 5597 (May 4, 2012) at 6 (denying

23   LG/Toshiba Motion in Limine No. 1, Dkt. No. 5175 (attached hereto as Ex. 2), to exclude

24   expert testimony without prejudice pending specific objections to specific questions at trial,

25   _____

26   [5]  Similarly, economists commonly evaluate how rational economic actors make choices.  *See*
     Ex. 11 (II Areeda & Hovenkamp, *Antitrust Law*) ¶ 309; *Brooke Grp., Ltd. v. Brown &*

27   *Williamson Tobacco Corp.*, 509 U.S. 209 (1992) (holding that a rational firm will undertake
     predatory pricing only if the anticipated recoupment, or pay off, from predation is

28   sufficiently certain or sufficiently large).

despite argument that plaintiffs' experts would offer opinions about the intent, motive or state of mind of defendants, as well as personal interpretations of documents and deposition testimony). *See also* Ex. 5, *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, Trial Transcript from Toshiba Trial (June 12-14, 2012) at 1835 (overruling objection that question called for Professor Flamm's "interpretation of a legal document"); p. 1843 (overruling objection that question called for Professor Flamm to "improperly interpret this document"); p. 1874 (overruling motion to strike Professor Flamm's testimony "about what the Crystal Meeting participants believed"); p. 1765-1777 (overruling objection to preclude Professor Flamm from testifying about Samsung interrogatory responses on which he relied); p. 1784-1785 (overruling request to strike alleged inappropriate "commentary on these business documents" from Professor Flamm).

The very cases cited by Defendants in their Motion gut their unsupported claim that Professor Elzinga should not be permitted to explain the factual bases of his opinions.  For example, Defendants cite *Highland Capital*, arguing that "an expert cannot be presented to the jury ***solely for the purpose of constructing a factual narrative*****."** *Highland Capital Mgmt. L.P.*, 379 F. Supp. 2d at 461 (emphasis added).  But a review of the full quote from the court undermines Defendants' point: "While ***an expert must of course rely on facts or data in formulating an expert opinion,*** an expert cannot be presented to the jury ***solely*** for the purpose of constructing a factual narrative based upon record evidence." *Id.* (emphasis added).  Defendants do not challenge a single one of Professor Elzinga's opinions, and they cannot credibly argue that the DAPs are attempting to present Professor Elzinga "solely for the purpose of constructing a factual narrative."  In essence, Defendants' real complaint is that Professor Elzinga is too thorough and transparent, going beyond the requirements of Fed. R. Evid. 703 and Fed. R. Civ. P. 26 by disclosing in exacting detail the bases for his opinion

1    ████████       Defendants can describe Professor Elzinga's Report as "simply rehashing"

2    evidence, *see* Def. Mot. at 8, only by ignoring its actual content.[6]

3    ████████████████████████████████████████████████████████

4    ████████████████       Indeed, in his Report, Professor Elzinga explains the market

5    factors that can facilitate or inhibit the functioning of a cartel.  *See* Ex. 3, Elzinga Report at

6    21-38.  He reviews the economic literature and behavior uncovered in other cartels, including:

7    (i) lysine; (ii) vitamins; (iii) citric acid; and (iv) liquid crystal displays.  *Id.* at 38-54.  H███

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████

12   ████████████████       Simply put, Professor Elzinga "explains how he interprets the facts

13   and data, based on his training and experience, to reach his specific opinions."  *Tubar v. Clift*,

14   Case No. C05-1154-JCC, 2009 U.S. Dist. LEXIS 44201, at *6 (W.D. Wash. May 12, 2009).

15   The conclusions Professor Elzinga reaches are admissible, as is the factual basis for those

16   opinions.

17        Professor Elzinga's review and analysis of the factual record is also in accord with

18   numerous economic textbooks and peer-reviewed articles which examine cartel conduct.

19   Relating the documentary record of cartel conduct to the economic theory of cartels is an

20   established and well-accepted approach to teaching the economics of cartels and to scholarly

21   research on the economics of cartels.  In fact, *Modern Industrial Organization*, an economics

22   textbook cited by numerous experts in this case and co-authored by Defendants' damages

---

[6] Defendants' reliance on *Johns v. Bayer Corp.* similarly misses the mark.  *Johns v. Bayer Corp.*, No. 09-CV-1935, 2013 WL 1498965, at *28 (S.D. Cal. April 10, 2013).  There, the court appropriately excluded an "expert" opinion as an impermissible narrative because "11 ½ pages of [the expert's] 12 page report is nothing more than a synopsis of Bayer's marketing of the Vitamin Products during and before the Class Period."  *Id.* at *28.  The expert there was not a trained economist that recounted the industry conditions conducive to cartelization, reviewed cartel examples and then applied that learning to the facts of the present case as Professor Elzinga has done here.

expert, Professor Dennis Carlton, provides a detailed account of supplier's behavior in the Vitamins Cartel and applies economic principles to the behavior. *See* Ex. 6, Excerpts from *Modern Industrial Organization*. Other economics textbooks and scholarly publications contain similar discussions and applications of economic principles to specific cartel behavior.[7] Thus, the purpose of *Daubert*—assuring that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"—is satisfied here. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Given the requirements of Rule 702, Professor Elzinga would have been criticized had he ***not*** reviewed the factual evidence and provided a detailed explanation of how economic principles are applied to the facts present in this case. *See Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830-31 (9th Cir. 2001) (excluding expert testimony based on "assumption" with "no factual basis"); *Lloyd v. Conseco Fin. Corp.*, No. CV00-10452 MMM, 2001 WL 36097624, at *5-6 (C.D. Cal. Oct. 19, 2011) (excluding expert testimony because it was not "sufficiently tied to the facts of the case"); *Oracle Am., Inc. v. Google, Inc.*, 798 F. Supp. 2d

---

[7] There are numerous examples of textbooks and articles providing detailed facts of particular cartels and applying economic principles to those facts. *See, e.g.,* Ex. 7 David Genesove and Wallace P. Mullin, "Rules, Communication, and Collusion: Narrative Evidence from the Sugar Institute Case," *American Economic Review*, Vol. 91 No. 3, at 379-98 ("Our window into the inner workings of a cartel is a remarkable series of notes on the weekly; Meetings of the Sugar Institute."); Ex. 8, Perloff, Jeffrey M. (2006) "Cartels," *Journal of Industrial Organization Education*: 1(1), Article 6 (using the lysine cartel as an example); Ex. 9, Pepall, Lynne, and Daniel Jay Richards. *Industrial Organization: Contemporary Theory and Empirical Applications*. 4th ed. Malden, MA, Blackwell Pub., 2008, Section 15.3 (describing collusion on the NASDAQ Exchange); Ex. 10, Waldman, Don E., and Elizabeth Jane Jensen. *Industrial Organization: Theory and Practice*. 2nd ed. Boston, Addison Wesley Longman, 2001 (using documents from the Gypsum cartel case to describe the agreements and their intended effects); Ex. 17 Scherer, F. M., and David Ross. *Industrial Market Structure and Economic Performance*, 3rd ed. Boston: Houghton Mifflin, 1990 (discussing electric equipment cartel, including agreed to prices, systems designed to set specific prices, and actual implementation schedules along with problems faced by the cartel and the methods the cartel used to overcome those problems); George W. Stocking and Myron W. Watkins (1946), *Cartels in Action*, The Twentieth Century Fund, Inc., New York; George W. Stocking and Myron W. Watkins (1948), *Cartels or Competition?*, The Twentieth Century Fund, Inc., New York; Connor, John M. *Global Price Fixing*, 2nd ed. Berlin: Springer, 2008 ("[T]he goal of this book is to describe and analyze in depth the origins, operations, and impacts of global cartels in the markets for lysine, citric acid, and vitamins.").

1111, 1115 (N.D. Cal. 2011) (excluding expert testimony because it was "not based on sufficient facts"); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 137 F. Supp. 2d 147, 175 (E.D.N.Y. 2001) (excluding expert testimony because it was "based . . . on an assumption that contradicts plaintiffs' own evidence" and thus was not based on "sufficient facts or data" (internal citation omitted) *aff'd*, 303 F.3d 256 (2d Cir. 2002)).

Professor Elzinga's disclosure of the factual bases for his opinions is in full compliance with Federal Rule of Civil Procedure 26(a)(2)(B), which expressly **requires** that an expert report contain a "complete statement" of the expert's opinions, the "basis and reasons therefor," and the "facts or data considered by the witness in [forming the opinions]." Notably, each of the paragraphs cited by Defendants as an improper narrative opinion are included within the section of Professor Elzinga's Report that is the application of

### 2.   *Professor Elzinga is Not Acting as a "Conspiracy-ologist"*

Defendants' effort to cast Professor Elzinga as a "conspiracy-ologist" does not change the nature or character of the conventional expert testimony he seeks to offer the jury in this case.  The use of this belittling moniker is based on a fundamental misunderstanding of the term and a misrepresentation of the opinions and factual bases for Professor Elzinga's conclusions here.

In the *Urethane* trial, Professor Elzinga explained that a "conspiracy-ologist" is: "where someone who claims to be an economist looks at evidence of. . . 'he said/she said,' or I was at this – I saw that they played golf together, or it was this luncheon, and infers from this that this was a conspiracy."  *See* Ex. 12, *Urethane* Trial Trans. at 4523:5-12.  And he explained that he does not "go down that road because. . . [a]s an economist there's nothing in my graduate training . . . that gives [him] an advantage or special insight into learning about a conversation that might have taken place when people played golf or when they were at lunch with one another."  *Id*. at 4524:1-8.  And the reason such an opinion would be inappropriate

"conspiracy-ology" is that an economist has no special training to ascertain who is truthfully

reporting on what occurred at the meeting.[8]

In stark contrast to the example he provided,



Of course, an economist can apply

textbook economic principles to the undisputed facts to explain that such behavior is

consistent with cartel conduct. *U.S. Info. Sys., Inc.*, 313 F. Supp. 2d at 240 ("Economists

often explain whether conduct is indicative of collusion.") Professor Elzinga's testimony can

be helpful to a jury trying to understand the economics of a price-fixing case. The Court

should not limit his testimony on these matters.

**B. The Factual Bases for Professor Elzinga's Opinion Would Not Intrude on
the Jury's Role or Improperly State Legal Conclusions**

Professor Elzinga is not attempting to intrude upon the jury's role as the finder of fact,

nor does his review of the record contain impermissible legal conclusions. Defendants

concede that "[e]xpert evidence is not inadmissible merely because it embraces an ultimate

[8]



issue to be decided by the trier of fact." Def. Mot. at 10.  Federal Rule of Evidence 704 could not be clearer when it states that expert witnesses may offer opinions as to factual issues, even where those factual opinions "embrace an ultimate issue" to be decided in the case.  Thus, Professor Elzinga's opinions, even if they did "embrace an ultimate issue," would not be improper.

Here, however, Professor Elzinga made clear that he expresses no opinion as

And again, Defendants have not challenged a single opinion that Professor Elzinga is offering.  Defendants' entire discussion is premised on the portion of his Report that provides the factual bases for his ultimate conclusions.  Given Defendants have no quarrel with his ultimate opinions, there can be no finding that Professor Elzinga is trying to usurp the role of the jury or improperly state legal conclusions by reviewing the factual record and applying economics principles to that record.

       1.     *Professor Elzinga's Factual Bases Do Not Improperly Contain Legal Conclusions or Impinge on the Jury's Fact Finding*

Defendants' objection rests entirely on a series of quotes taken out of context from Professor Elzinga's Expert Report and deposition.  *See* Def. Mot. at 3-5. But those quotes are perfectly proper, given the opinions that Professor Elzinga is offering in this case.

---

[9] *See supra* footnote 1.
[10] Defendants claim that: "Whether Defendants formed agreements in restraint of trade is *the* first **legal conclusion the jury will be asked to determine**." Def. Mot. at 11 (emphasis added).  Juries, however, do not make "legal conclusions."  The jury makes findings of fact applying the law provided by the judge.  *See* e.g., *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954) ("business behavior is admissible circumstantial evidence from which the **fact finder** may infer agreement.").

1

2

3

4        The cases Defendants cite highlight the distinction between "legal conclusions" and

5   "factual" issues.  *See e.g., McHugh v. United Serv. Auto Ass'n*, 164 F.3d 451, 454 (9th Cir.

6   1999) (holding "expert testimony cannot be used to provide legal meaning to interpret"

7   insurance policies); *see also Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir.

8   1992) (excluding expert testimony on legal interpretation of statute); *see also Aguilar v. Int'l*

9   *Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (rejecting proposed

10   expert testimony on whether reliance was "reasonable and foreseeable").  Expert testimony on

11   true legal issues is rejected because: "The danger is that the jury may think that the 'expert' in

12   the particular branch of the law knows more than the judge—surely an inadmissible inference

13   in our system of law."  *See Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992).

14        Expert testimony of the type provided by Professor Elzinga is not excluded because it

15   is grounded in economic theory and is factual in nature.

16

17   It does not contain perfunctory legal

18   conclusions about how to interpret ultimate issues of law nor does it purport to do so.

19   Professor Elzinga was clear in his deposition that:

20   The Ninth Circuit has rejected the

21   very argument Defendants make here.  *See Hangarter v. Provident Life and Accident Ins. Co.*,

22   373 F.3d 998, 1016-17 (9th Cir. 2004) (not only may an expert refer to legal terms but "a

23   witness may properly be called upon to aid the jury in understanding the facts in evidence

24   *even though references to those facts is couched in legal terms"*). (emphasis added) (citation

25   omitted).

26

27

28

13

2.       *Professor Elzinga's Opinion is the Result of Economic Principles Carefully Applied to the Factual Record*

Finally, Defendants argue that Professor Elzinga has no basis to infer "agreements" between the Defendants and that he cannot provide testimony on motive or intent.  *See* Def. Mot at 10-12.

Defendants curiously accuse Professor Elzinga of applying his "intellectual filter" that he brings to his review of the record, *see* Def. Mot. at 4, 12, but that is precisely what an expert does.  It is an expert's "scientific, technical or other specialized knowledge"—as applied to the facts of a particular case—that yields reliable, admissible opinions.  *See* Fed R. Evid. 702(a); *see also Littleton Gas Co v. U.S. Dep't of Energy*, 300 F. Supp. 2d 21, 31 (D.D.C. 2003) (holding "[e]xpert testimony based on personal experience and opinion may be sufficient to prove a point as long as the expert possesses the specialized knowledge on which to base his opinion").  Courts universally recognize that experts discuss, ***interpret, analyze and present*** the factual evidence that supports their opinions.  *See United States v. Brodie*, 858 F.2d 492, 496-97 (9th Cir. 1988) ("Experts '***interpret and analyze factual evidence***.'") (citing *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986)) (emphasis added). Such disclosure is limited only when the information at issue would "otherwise be inadmissible." *Id.*[11]

Defendants' bald assertion that Professor Elzinga's opinions are "connected to existing data ***only*** by the *ipse dixit* of the expert" is demonstrably false.  *See* Def. Mot. at 12 (citing *Gen Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  First, Defendants are not challenging any of Professor Elzinga's opinions.  Second, contrary to Defendants' suggestion,

---

[11] Here, Defendants do not contend that any of the factual evidence Professor Elzinga reviewed "would otherwise be inadmissible."

14

no "interpretation" or "speculation" is needed here, when the record in this case shows those intentions without question.[12] The plea agreements, deposition testimony, and contemporaneous documents provide complete clarity:

- **Guilty Plea.** Samsung SDI Co., Ltd. ("SDI") entered a guilty plea in which it admitted that for nearly 10 years it "participated in a conspiracy among major CDT producers, the primary purpose of which was to fix prices, reduce output, and allocate market shares of CDTs sold in the United States and elsewhere." SDI confessed in its Plea Agreement that in furtherance of the conspiracy, its employees had "discussions and attended meetings with representatives of other major CDT producers" where "agreements were reached to fix prices, reduce output, and allocate market shares of CDTs." *See* Ex. 14, Transcript of the Change of Plea Hearing, *United States v. Samsung SDI Co., Ltd.*, No. 3:11-CR-00162-WHA, Dkt. No. 35 (N.D. Cal. May 24, 2011); Ex. 15, Amended Plea Agreement, *United States v. Samsung SDI Co., Ltd.*, No. 3:11-CR-00162-WHA, Dkt. No. 40-1 (N.D. Cal. Aug. 8, 2011).

- **Amnesty Applicant.** Chunghwa (another co-conspirator) has admitted its role in the CRT price-fixing conspiracy by virtue of its status as the amnesty applicant in the DOJ's leniency program. *See* Ex. 16, MDL Dkt. No. 3395, Defendants Chunghwa Picture Tubes, Ltd. Notice of Limitation of Damages Pursuant to ACPERA.



---

[12] Defendants' citation to *Stigler* and *Hovenkamp* are inapposite. *See* Def. Mot. at 11. Professor Elzinga's opinion is not predicated on a finding of "agreement" in the legal sense. Professor Elzinga's proposed testimony would provide the jury with an understanding of the market conditions that facilitate collusion and the behavior mechanisms that make collusion successful. He then applies those to the structure and conduct of the CRT case yielding his ultimate opinions, which Defendants concede are admissible.

1 ████████████████████████████████████ ████████████████████
2 ████████████████████████

## V.  CONCLUSION

For the reasons stated above, Defendants' Joint Motion to Exclude Certain Expert Testimony of Professor Kenneth Elzinga should be denied.

Respectfully submitted this 16th day of January, 2015.

By:   */s/ Debra D. Bernstein*
      Michael P. Kenny, Esq. (*pro hac vice*)
      mike.kenny@alston.com
      Debra D. Bernstein, Esq. (*pro hac vice*)
      debra.bernstein@alston.com
      Matthew D. Kent, Esq. (*pro hac vice*)
      matthew.kent@alston.com
      Elizabeth Helmer, Esq. (*pro hac vice*)
      elizabeth.helmer@alston.com
      **ALSTON & BIRD LLP**
      1201 West Peachtree Street
      Atlanta, Georgia  30309-3424
      Tel: (404) 881-7000
      Facsimile: (404) 881-7777

      James M. Wagstaffe, Esq. (SBN 95535)
      wagstaffe@kerrwagstaffe.com
      **KERR & WAGSTAFFE LLP**
      101 Mission Street, 18th Floor
      San Francisco, California 94105-1576
      Tel: (415) 371-8500
      Facsimile: (415) 371-0500

      *Counsel for Plaintiffs Dell Inc. and Dell
      Products L.P.*

      /s/  *Philip J. Iovieno*
      Philip J. Iovieno
      Anne M. Nardacci
      BOIES, SCHILLER & FLEXNER LLP
      30 South Pearl Street, 11th Floor
      Albany, NY  12207
      Telephone:  (518) 434-0600

[13] ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████

16

1

Facsimile:   (518) 434-0665
Email:   piovieno@bsfllp.com

2

anardacci@bsfllp.com

3

William A. Isaacson

4

BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800

5

Washington, D.C.  20015
Telephone:  (202) 237-2727

6

Facsimile:   (202) 237-6131

7

Email:  wisaacson@bsfllp.com

8

Stuart Singer

9

BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200

10

Fort Lauderdale, FL  33301
Telephone:  (954) 356-0011

11

Facsimile:   (954) 356-0022
Email:  ssinger@bsfllp.com

12

*Liaison Counsel for Direct Action Plaintiffs*

13

*and Attorneys for Plaintiffs Electrograph*
*Systems, Inc., Electrograph Technologies,*

14

*Corp., Office Depot, Inc., Compucom Systems,*

15

*Inc., Interbond Corporation of America, P.C.*
*Richard & Son Long Island Corporation,*

16

*MARTA Cooperative of America, Inc., ABC*
*Appliance, Inc., and Tech Data Corporation*

17

*and Tech Data Product Management, Inc.*

18

/s/  *Robert W. Turken*

19

Robert W. Turken
Scott N. Wagner

20

Mitchell E. Widom

21

BILZIN SUMBERG MAENA PRICE &
AXELROD  LLP

22

1450 Brickell Ave, Suite 2300
Miami, FL  33131-3456

23

Tel:  305-374-7580
Fax:  305-374-7593

24

Email:   rturken@bilzin.com

25

swagner@bilzin.com
mwidom@bilzin.com

26

*Counsel for Plaintiffs Tech Data Corporation*

27

*and Tech Data Product Management, Inc.*

28

---

17

1                               */s/  Roman M. Silberfeld*

Roman M. Silberfeld
Bernice Conn
David Martinez
Jill S. Casselman
ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:  (310) 552-0130
Facsimile:   (310) 229-5800
Email:  rmsilberfeld@rkmc.com
           dmartinez@rkmc.com
           jscasselman@rkmc.com

Elliot S. Kaplan
K. Craig Wildfang
Laura E. Nelson
ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN  55402
Telephone:  (612) 349-8500
Facsimile:   (612) 339-4181
Email:  eskaplan@rkmc.com
           kcwildfang@rkmc.com
           lenelson@rkmc.com

*Counsel For Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, Inc.*

*/s/  David J. Burman*

David J. Burman (*pro hac vice*)
Cori G. Moore (*pro hac vice*)
Eric J. Weiss (*pro hac vice*)
Nicholas H. Hesterberg (*pro hac vice*)
Steven D. Merriman (*pro hac vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone:  (206)359-8000
Facsimile:   (206)359-9000
Email:  DBurman@perkinscoie.com
        CGMoore@perkinsncoie.com
        EWeiss@perkinscoie.com

DAPS' OPP. TO DEFENDANTS' MOTION TO EXCLUDE      MASTER FILE NO. 3:07-CV-05944-SC
CERTAIN TESTIMONY OF PROFESSOR KENNETH ELZINGA      MDL NO. 1917

NHesterberg@perkinscoie.com
SMerriman@perkinscoie.com

Joren Bass, Bar No. 208143
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131
Telephone:  (415)344-7120
Facsimile:  (415)344-7320
Email:  JBass@perkinscoie.com

*Counsel for Plaintiff Costco Wholesale Corporation*

/s/  Richard Alan Arnold
Richard Alan Arnold (*pro hac vice*)
William J. Blechman (*pro hac vice*)
Kevin J. Murray (*pro hac vice*)
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL  33131
Tel:  305-373-1000
Fax:  305-372-1861
Email:   rarnold@knpa.com
            wblechman@knpa.com
            kmurray@knpa.com

*Counsel for Plaintiff Sears, Roebuck and Co. and Kmart Corp.*

/s/  Kenneth S. Marks
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email: kmarks@susmangodfrey.com
            jross@susmangodfrey.com
            jcarter@susmangodfrey.com
            dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors

19

SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: pfolse@susmangodfrey.com
        rblack@susmangodfrey.com
        jconnors@susmangodfrey.com

*Counsel for Plaintiff Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

/s/ *Jason C. Murray*
Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213-443-5582
Facsimile: 213-622-2690
Email: jmurray@crowell.com

Jerome A. Murphy (*pro hac vice*)
Astor H.L. Heaven (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-624-2500
Facsimile: 202-628-5116
E-mail: jmurphy@crowell.com
        aheaven@crowell.com

*Counsel for ViewSonic Corp.*

Pursuant to General Order No. 45, § X-B, the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.