# EXHIBIT 2

| | |
|---|---|
| Brad D. Brian (State Bar No. 079001) | Holly A. House (State Bar No. 136045) |
| Stuart N. Senator (State Bar No. 148009) | Paul Hastings LLP |
| Jonathan E. Altman (State Bar No. 170607) | 55 Second Street |
| Truc T. Do (State Bar No. 191845) | Twenty-Fourth Floor |
| Hailyn J. Chen (State Bar No. 237436) | San Francisco, CA 94105 |
| MUNGER, TOLLES & OLSON LLP | Telephone: (415) 856-7000 |
| 355 South Grand Avenue | Facsimile: (415) 856-7100 |
| Los Angeles, CA 90071-1560 | *hollyhouse@paulhastings.com* |
| Telephone: (213) 683-9100 | |
| Facsimile: (213) 687-3702 | Lee F. Berger (State Bar No. 222756) |
| *Brad.Brian@mto.com* | Paul Hastings LLP |
| | 875 15th Street, N.W. |
| Jerome C. Roth (State Bar No. 159483) | Washington, DC 20005 |
| MUNGER, TOLLES & OLSON LLP | Telephone: (202) 551-1700 |
| 560 Mission Street, 27th Floor | Facsimile: (202) 551-1705 |
| San Francisco, CA 94105-2907 | *leeberger@paulhastings.com* |
| Telephone: (415) 512-4000 | |
| Facsimile: (415) 512-4077 | |

Attorneys for Defendants
LG DISPLAY AMERICA, INC. AND LG DISPLAY CO., LTD

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | CASE NO. 3:07-MD-1827 SI |
| | MDL No. 1827 |
| THIS DOCUMENT RELATES TO: | |
| *All Indirect Purchaser Actions* | **DEFENDANT LG DISPLAY'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE PURPORTED EXPERT TESTIMONY** |
| | Date: March 27, 2012 |
| | Time: 3:30 p.m. |
| | Courtroom: 10 |
| | Judge: Honorable Susan Illston |

**TABLE OF CONTENTS**

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 2 |
| II. | ARGUMENT | | 4 |
| | A. | This Court Should Preclude Any So-Called "Expert" Opinions About Defendants' Intent or the "Correct" Interpretation of Documents and Deposition Testimony | 4 |
| | | 1. Opinions About Defendants' Intent, Motive and State of Mind Should Be Excluded | 4 |
| | | 2. Neither Expert Has Any Foundation to Opine About the Meaning of Documents and Testimony | 6 |
| | | 3. The IPP Experts' Improper Opinions Set Forth Above Are The Basis For Their Conclusion Of Common Impact | 8 |
| | B. | This Court Should Also Exclude The IPP Experts' Damage Estimates As Lacking Foundation | 9 |
| | | 1. Dr. Netz Has Failed to Remove Cross-Border Purchases from Her Volume of Commerce Calculations | 9 |
| | | 2. Dr. Netz Failed to Exclude DPP Class Member Transactions from the Volume of Commerce | 10 |
| | | 3. The Court Should Exclude Dr. Comanor's Damages Estimates, Which Are Inflated Even Beyond Dr. Netz's by the Inclusion of Non-Defendant Co-conspirator Panels, As Lacking Foundation | 11 |
| | C. | Because Dr. Comanor's Testimony Is Cumulative of Dr. Netz's Testimony, This Court Should Not Permit Both Experts to Testify and Should Order Plaintiffs to identify Which Expert Will Testify On Common Subjects | 12 |
| | D. | In the Alternative, LG Display Requests an Evidentiary Hearing Outside the Jury's Presence Prior to Either Expert's Testimony | 13 |
| III. | CONCLUSION | | 14 |

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Biocore v. Khosowshahi*,
    183 F.R.D. 695 (D. Kan. 1998) ............................................................................................ 11, 12

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
    564 F. Supp. 2d 322 (D.N.J. 2008) ............................................................................................ 4

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
    627 F. Supp. 2d 384 (D.N.J. 2009) ........................................................................................ 4, 7

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ........................................................................................................ 2, 3, 4, 8

*DePaepe v. Gen. Motors Corp.*,
    141 F.3d 715 (7th Cir. 1998) .............................................................................................. 2, 3, 4

*In re Diet Drugs Prods. Liab. Litig.*,
    No. MDL 1203, 2000 WL 876900 (E.D. Pa. June 20, 2000) .................................................... 5

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004) ............................................................................ 4, 5, 6, 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2011 WL 4501223 (N.D. Cal. Sept. 28, 2011) ........................................................................ 10

*Jaramillo v. Ford Motor Co.*,
    116 Fed. Appx. 76 (9th Cir. 2004) ........................................................................................... 11

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ................................................................................................................... 8

*Lippe v. Bairnco Corp.*,
    288 B.R. 678 (S.D.N.Y. 2003), aff'd, 99 Fed. Appx. 274 (2d Cir. 2004) .................................. 7

*Lowe v. City of Monrovia*,
    775 F.2d 998 (9th Cir. 1985) ................................................................................................. 2, 4

*People of Territory of Guam v. Turner*,
    No. 91-10612, 1992 WL 371316 (9th Cir. Dec. 16, 1992) .................................................... 8, 9

*Sassafras Enters., Inc. v. Roshco, Inc.*,
    915 F. Supp. 1 (N.D. Ill. 1996) .................................................................................................. 5

**TABLE OF AUTHORITIES**
(continued)

Page

*SEC v. Lipson*,
    46 F. Supp. 2d 758 (N.D. Ill. 1998) .................................................................................... 4

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996) ................................................................................................ 10

*United Nat'l Ins. Co. v. Aon Ltd.*,
    No. 04-539, 2008 WL 3819865 (E.D. Pa. Aug. 8, 2008) ...................................................... 4

*United States v. Crabbe*,
    556 F. Supp. 2d 1217 (D. Colo. 2008) ............................................................................... 13

*United States v. Freeman*,
    498 F.3d 893 (9th Cir. 2007) ................................................................................................ 8

*United States v. Trainor*,
    477 F.3d 24 (1st Cir. 2007) ................................................................................................ 11

**STATE CASES**

*Frullo v. Landenburger*,
    814 N.E. 2d 1105 (Mass. App. Ct. 2004) ........................................................................... 10

*Sheth v. N.Y. Life Ins. Co.*,
    709 N.Y.S.2d 74 (N.Y. App. Div. 2001) ........................................................................... 10

**STATE STATUTES**

D.C. Code § 28-3901(a)(2) ...................................................................................................... 10

Haw. Rev. Stat. Ann. § 480-1 .................................................................................................. 10

Mass. Gen. Laws Ann. ch. 93A, § 9 ........................................................................................ 10

Mo. Rev. Stat. § 407.025.1 ...................................................................................................... 10

N.Y. Gen. Bus. Law § 349 ....................................................................................................... 10

R.I. Gen. Laws § 6-13.1-5.2(a) ................................................................................................ 10

Vt. Stat. tit. 9, § 2451(a) ........................................................................................................... 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**FEDERAL RULES**

Fed. R. Evid
    402 .................................................................................................................................... 11
    403 ............................................................................................................................... 12, 13
    702 ...................................................................................................................................... 8

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 27, 2012, at 3:30 p.m., or as soon as may be heard thereafter, in the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 10, 19th Floor, San Francisco, California, before the Honorable Susan Illston, defendants LG Display, Co., Ltd. and LG Display America, Inc. (collectively "LG Display") will and hereby do move the Court for an order *in limine* to exclude the following potential testimony and evidence from the designated economics/damages experts of the indirect purchaser class plaintiffs ("Plaintiffs"):

(1) purported "expert" evidence regarding non-expert issues, such as the intent of Defendants and the meaning of particular documents;

(2) expert damage estimates that rely in part on transactions that the Court has previously removed from consideration in this case; and

(3) cumulative expert testimony, in which both of Plaintiffs' experts offer opinions on the very same subject.

LG Display also requests an evidentiary hearing outside the presence of the Jury prior to the testimony of either of Plaintiffs' expert to determine whether and to what degree the expert's testimony remains admissible.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities; the concurrently-filed Declaration of Stuart N. Senator; any reply memorandum that is filed, any argument of counsel; and such other materials as the Court may consider. As set forth in the accompanying Memorandum of Points and Authorities, the basis for the motion is that the testimony at issue would be beyond the scope of admissible expert opinions, without foundation, and cumulative.

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3    By this motion, LG Display request that the Court exclude purported expert testimony of the economists/damages experts retained by the indirect purchaser class plaintiffs ("Plaintiffs"), Janet Netz and William Comanor ("IPP Experts"), as follows:

(1) Dr. Netz's and Dr. Comanor's opinion about the intent, motive or state of mind of Defendants, as well as these experts' personal interpretations of documents and deposition testimony contained in the record and opinions based upon the foregoing.

(2) Dr. Netz's and Dr. Comanor's damage estimates that rely in part on transactions that the Court has previously removed from consideration in this case and

(3) Cumulative expert testimony, in which both of Plaintiffs' experts offer opinions on the very same subject.

On the first issue, a defendant's intent and state of mind have *never* been a permissible subject of expert testimony. *Lowe v. City of Monrovia*, 775 F.2d 998, 1008-09 (9th Cir. 1985); *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998). Moreover, it is impossible to tell from Dr. Netz's report where her mind reading effort ends and her potentially legitimate analysis begins. Because Dr. Netz's improper "expert" opinions about the underlying evidence in this case irrevocably taint her conclusion that direct purchasers suffered common impact, this Court should bar that conclusion.[1] Without evidence of direct impact, Dr. Netz's opinions with regard to *indirect* purchaser impact lose foundation as well, because common impact to the direct purchasers is a necessary prerequisite to common indirect purchaser impact.

LG Display acknowledges of course that the Court denied Defendants' recent *Daubert* motion to exclude Janet Netz's and William Comanor's (the "IPP Experts") testimony that their "before-and-after" regression models establish common impact to direct purchasers. But the

---

[1] Dr. Comanor conducts a similarly impermissible analysis, and his testimony regarding common impact to direct purchasers should be excluded on the same basis.

- 2 -    DEF. LG DISPLAY'S MIL NO. 1 TO EXCLUDE
         PURPORTED EXPERT TESTIMONY.
         CASE NO.: 3:07-MD-1827 SI

1  Court acknowledged that Defendants' concerns about the models were "not wholly without
2  merit" and held that "[w]hen the experts' specific testimony is before the Court, defendants may
3  renew their objections." Order Denying Defendants' Motion to Exclude Expert Testimony of
4  Janet S. Netz and William S. Comanor at 7:19 , 8:9-10 (Feb. 21, 2012) (Dkt. No. 4848) ("Order
5  (Dkt. No. 4848)"). The Court also based its denial of the *Daubert* motion on the fact that Dr.
6  Netz relied on her "analysis of evidence in this case" to prove common impact to direct
7  purchasers. *Id.* at 9:17-18 & 10:18-20. As shown below, Dr. Netz's "analysis" in this regard is
8  itself inadmissible because it is no more than reading documents and testimony; it is not *expert*
9  analysis.

10  On the second issue, the IPP Experts estimated damages in this case by attempting to
11  calculate the volume of LCD product sales to class members (the "volume of commerce" or
12  "VOC") during the class period. In doing so, they ignored this Court's prior rulings by including
13  in their VOC estimates transaction categories that the Court has expressly removed from this
14  case. Because the IPP Experts use their VOC estimates to establish the amount of the Indirect
15  Purchaser Plaintiffs' total damages, the overstated VOC calculations have necessarily inflated the
16  IPP Experts' damage calculations. Despite ample opportunity, the IPP Experts have never
17  corrected their calculations, and with trial only five weeks away it is now too late. This Court
18  should therefore exclude Dr. Netz's and Dr. Comanor's damage estimates as lacking foundation.

19  On the third issue, Dr. Netz and Dr. Comanor's opinions also significantly overlap. The
20  Court should preclude the introduction of such cumulative evidence and require that the IPPs
21  immediately pick which expert will testify on which subjects.

22  Finally, because the IPP Experts' opinions that the indirect purchasers' paid an overcharge
23  depend on their inadmissible direct purchaser impact opinions; and because the IPP Experts'
24  damages opinions should likewise be precluded, a serious question arises as to exactly what either
25  expert could actually testify about. LG Display requests an evidentiary hearing outside the
26  presence of the jury before either expert is permitted to testify to determine whether and to what
27  extent the expert's opinions remain admissible.
28

- 3 -

DEF. LG DISPLAY'S MIL NO. 1 TO EXCLUDE
PURPORTED EXPERT TESTIMONY.
CASE NO.: 3:07-MD-1827 SI

II. ARGUMENT

### A. This Court Should Preclude Any So-Called "Expert" Opinions About Defendants' Intent or the "Correct" Interpretation of Documents and Deposition Testimony

#### 1. Opinions About Defendants' Intent, Motive and State of Mind Should Be Excluded

Intent issues are a "pure question of fact" left for the jury to decide. *Lowe v. City of Monrovia*, 775 F.2d 998, 1008-09 (9th Cir. 1985). A witness may "not testify *as an expert* that [the defendant] had a particular motive" because experts "lack[] any scientific basis for an opinion about [such] motives." *DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998). Courts routinely exclude expert opinions "on the intent, motives or states of mind of corporations." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (rejecting expert testimony as to "the 'real motive' behind certain business transactions").[2]

Notwithstanding this law, Dr. Netz's report shows that she is prepared to testify in this litigation on the subject of defendants' "intent" and "purpose" in order to support her opinion that direct purchasers suffered common impact. For example, in the section of her report titled "The cartel increased prices to direct purchasers," Senator Decl., Ex. A (Netz Report at 29), Dr. Netz states that "the meetings between Defendants were held ***with the intent*** of either increasing prices for TFT-LCD panels or keeping prices from falling." *Id.* at 40 (emphasis added). Likewise, in the same section Dr. Netz states that "***the intent of Defendants' meetings was*** to have an effect on the prices for the TFT-LCD panels used in all the products at issue." *Id.* at 41 (emphasis added). At other places in her report, Dr. Netz likewise purports to opine on Defendants' intent, even though she does not use the word "intent." For example:

- "Defendants ***purposefully*** re-allocated inputs in order to change *[that is, with*

---

[2] *See also*, *e.g.*, *SEC v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ("[An expert's] years of training and experience as an accountant . . . do not specially equip him to divine what Defendant truly believed about the reliability of [his employer's internal financial] reports."); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 440 (D.N.J. 2009) (expert cannot "purport[] to divine what GEH was 'trying' to do with its marketing strategy"); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 564 F. Supp. 2d 322, 358 (D.N.J. 2008) (expert "does not have a reliable basis from which to testify about the assumptions and attitudes that motivated the NCAA's decisions"); *United Nat'l Ins. Co. v. Aon Ltd.*, No. 04-539, 2008 WL 3819865, at *13 (E.D. Pa. Aug. 8, 2008) (expert's experience does not give him "license to theorize on what may have been in the arbitrators' heads with the level of reliability that *Daubert* requires").

*the intent of changing]* the product mix to reduce the supply of specific types of panels, or increased their inventories to reduce the supply of panels on the market." *Id.* at 39-40 (emphasis added).

- "Defendants communicated . . . *to* engage *[that is, with the intent of engaging]* Co-conspirators to follow the agreements they reached at the meetings." *Id.* at 37 (emphasis added).[3]

Dr. Netz also purports to offer opinions on Defendants' state of mind to support her conclusion of common impact to direct purchasers: "Defendants were aware that reductions in supply and in capacity would result in increased prices and greater profitability." *Id.* at 38.

In each instance, the stated basis for Dr. Netz's assertion is merely a reading of certain deposition testimony and documents produced in discovery. There is no economic analysis that might be argued to be within Dr. Netz's purported expertise as an economist.

This is improper. Neither Dr. Netz nor Dr. Comanor is a "mindreader." *Sassafras Enters., Inc. v. Roshco, Inc.*, 915 F. Supp. 1, 8 (N.D. Ill. 1996). The Experts' conclusions are not appropriate expert testimony. "If the witnesses' bases for the opinions concerning improper intent come from other evidence such as letters, admissions of [the defendant's] officers or employees, or other admissible evidence, *that* is what the jury should hear and the question of [the defendant's] intent would flow from such evidence to be determined by the jury." *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2000 WL 876900, at *9 (E.D. Pa. June 20, 2000) (emphasis in original).

While all of this would be true for any expert's conclusion based on analysis (or lack thereof) that is not within the expert's area of purported expertise, it is especially true with respect to conclusions regarding a person or company's intent. The "question of intent is a classic jury question and not one for the experts." *In re Rezulin*, 309 F. Supp. 2d at 547 (prohibiting expert from testifying that a drug was taken off the market for safety reasons because company's chairman allegedly said so in a letter). Dr. Netz and Dr. Comanor "propose improperly to assume

---

[3] Dr. Comanor does the same thing: Defendants "form[ed] a cartel whose apparent purpose *[that is, intent]* was to limit the pace of capital formation sufficiently to achieve higher prices." Senator Decl., Ex. B (Comanor Report at 13).

- 5 -

DEF. LG DISPLAY'S MIL NO. 1 TO EXCLUDE PURPORTED EXPERT TESTIMONY.
CASE NO.: 3:07-MD-1827 SI

the role of advocates for the plaintiffs' case by arguing as to the intent or motives." *Id.* at 546. The Court should exclude testimony of this sort.

### 2. Neither Expert Has Any Foundation to Opine About the Meaning of Documents and Testimony

The IPP experts' reports also suggests that at trial Plaintiffs plan to use their experts to explain the meaning of various documents and testimony that counsel sees as the most important evidence in the case. Dr. Netz's report is replete with such statements:

- "Defendants used the information they learned to set their own prices for current or future periods." The only stated basis for this statement is certain deposition testimony and a particular email. Senator Decl., Ex. A (Netz Report at 29 & n.109).

- "[T]here are indications that the Defendants and Co-conspirators were communicating regarding prices, production, and capacity before 1999." The only stated basis for this statement is certain deposition testimony. *Id.* at 30.

- "Defendants continued to meet regularly from 2001 through 2006." The only stated basis for this statement, and related characterization of what happened at certain meetings is deposition testimony and company documents produced in discovery. *Id.* at 31 & nn.112-115.

- Dr. Netz describes the so-called Crystal Meetings, including frequency, who attended, what was done at the meetings or in response to information obtained at the meetings. The basis for the descriptions is not economic analysis but instead deposition testimony and documents produced in discovery. *Id.* at 32 & nn.116-119.

- Dr. Netz places the Crystal meetings "in three 'tiers.'" She states that she does this "[b]ased on my reading of the documents." *Id.* at 32.

- Dr. Netz asserts that certain individuals "met once a month" for particular purposes and discussed particular subjects. Dr. Netz's only stated basis for this assertion is her reading of deposition testimony and documents. *Id.* at 33.

- Dr. Netz asserts that lower-level employees "met once a month" and exchanged shipment data and discussed future pricing. The only stated basis for the assertion is Dr. Netz's reading of an email. *Id.* at 34 & n.125.

- Dr. Netz asserts that attendees at certain meetings "had direct influence on the pricing and production levels of LCD panels." Dr. Netz's only asserted basis for this statement is her reading of cited deposition testimony and documents. *Id.* at 34 & n.126.

- Dr. Netz asserts that communications among defendants were "regularly" and "throughout the class period to discuss pricing, production, shipments, and

- 6 -
DEF. LG DISPLAY'S MIL NO. 1 TO EXCLUDE
PURPORTED EXPERT TESTIMONY.
CASE NO.: 3:07-MD-1827 SI

capacity information as well as product roadmaps." Dr. Netz's only asserted basis for this statement is a list of documents produced in discovery. *Id.* at 35 & Exhibits 23 and 24 thereto.

- Dr. Netz asserts that defendants use a "Hot Line to ensure that the target prices were implemented." Dr. Netz's only asserted basis for this assertion is her reading of certain deposition testimony and documents. *Id.* at 36 & nn.129-131.

- Dr. Netz asserts that "[t]here is also evidence that Japanese Defendants were able to pass on information during cross-supply meetings" and "to obtain competitor pricing to aid them in making their price decisions." *Id.* at 36. The cited "evidence" is not economic analysis that Netz has conducted, but instead merely Dr. Netz's reading of certain deposition testimony and documents.

- Dr. Netz asserts that attendees at meetings "admit that they agreed on actual prices for products or agreed to price movements" and "generally discussed prices for mainstream panels since those were the products with most market shares." Further, Dr. Netz asserts that the supposedly "[a]greed upon prices were to hold to all customers." The basis for Dr. Netz's assertions is, once again, her reading of depositions and documents from discovery. *Id.* at 37-38 & n.135.

None of these characterizations or conclusions is appropriate testimony by a purported expert. Proposed testimony by an expert that is no more than argument based upon deposition testimony and documents of which the expert has no personal knowledge is inadmissible. *Bracco Diagnostics*, 627 F. Supp. 2d at 442. As another federal court has explained:

> Plaintiffs envisioned that [their expert] would testify to and summarize the relevant facts (as to which he had no personal knowledge) and then opine – or, more accurately, argue – that defendants were intending to defraud [claimants] . . . . But this is what a lawyer does in his or her summation to the jury. This is not the function of an expert witness.

*Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003), *aff'd*, 99 Fed. Appx. 274 (2d Cir. 2004). Indeed, Dr. Netz admitted at deposition that she is no more able than a jury to make the sorts of factual determinations that she purports to make from documents and testimony:

Q. My question for you about this particular assertion is, do you believe you're anymore qualified than the individuals who will sit on the jury in this case to make a determination that the documents and testimony you're referring to here show. . . that communication between the attendants of the Crystal meetings . . . and the Japanese Defendants themselves was frequent?

A. Do I think I'm more able to make that judgment than a jury member?

- 7 -  
DEF. LG DISPLAY'S MIL NO. 1 TO EXCLUDE PURPORTED EXPERT TESTIMONY.
CASE NO.: 3:07-MD-1827 SI

| | | |
|---|---|---|
| 1 | Q. | Correct. |
| 2 | A. | Not more able. I believe the way a trial will work is there's no way all those documents and testimony will be presented to the jury, but whatever is presented to them, I don't think that I'm any more capable of not evaluating that particular question. |
| 3 | | |
| 4 | Q. | . . . . You're not holding yourself out as an expert in, for example, evaluating the meaning of an e-mail summarizing a meeting, correct? |
| 5 | | |
| 6 | A. | Correct. |
| 7 | | * * * |
| 8 | Q. | And again, this is, I'm going to ask you the same question I asked you earlier, you don't believe you're any more qualified than the members of the – the people that will sit on the jury to read these documents that you've identified and make a conclusion whether or not they suggest the Japanese Defendants were discussing prices with other Defendants, is that correct? |
| 9 | | |
| 10 | | |
| 11 | A. | That's correct. |

Senator Decl., Ex. C (8/26/2001 Netz Tr. at 182:17-183:14; 187:5-13).

The Federal Rules "grant expert witnesses testimonial latitude unavailable to other witnesses on the 'assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993)). When an expert "cease[s] to apply his specialized knowledge," he is "no longer testifying as an expert but rather as a lay witness.'" *United States v. Freeman*, 498 F.3d 893, 902 (9th Cir. 2007). An expert who simply reiterates fact witness testimony will not "assist the trier of fact," as required by Rule 702, and instead would just be cumulative. *People of Territory of Guam v. Turner*, No. 91-10612, 1992 WL 371316, at *2 (9th Cir. Dec. 16, 1992) ("expert testimony would have been cumulative [of fact witness testimony] and of little additional assistance to the jury").

> **3.** The IPP Experts' Improper Opinions Set Forth Above Are The Basis For Their Conclusion Of Common Impact.

In its Order denying Defendants' *Daubert* motion, the Court found that even if Plaintiffs' experts' overcharge models "are not enough, standing alone, to establish classwide impact," Order (Dkt. No. 4848) at 8:2, Dr. Netz's use of economic theory and "*analysis of evidence in this case*" sufficiently support a conclusion that "the cartel effectively raised prices for direct

1  purchasers." *Id.* at 9:17-18 (citing Expert Report of Janet Netz ("Netz Report") at 28-87

2  (emphasis added). As shown above, however, Dr. Netz's "analysis of evidence in this case" is

3  not an expert analysis at all. Instead, it is merely an inadmissible personal interpretation of a self-

4  serving selection of documents and deposition excerpts. Even worse, Dr. Netz's expert report

5  offers no means to separate those portions of her impact opinion lacking foundation from those

6  portions of her impact opinion that may have foundation. Because Dr. Netz cannot be allowed to

7  testify to her ultimate conclusion that all direct purchasers suffered injury based in part on a series

8  of inadmissible "lay" opinions about Defendants' intent and the meaning of documents, this

9  Court should exclude not just the personal opinions set forth above, but also Dr. Netz's direct

10 purchaser impact opinions in their entirety. Furthermore, because the direct purchaser impact

11 opinions, in turn, are the basis for the IPP Experts' opinions about impact on the indirect

12 purchaser class members, the IPP experts' impact opinions should be excluded in their entirety.

**B.     This Court Should Also Exclude The IPP Experts' Damage Estimates As Lacking Foundation**

**1.     Dr. Netz Has Failed to Remove Cross-Border Purchases from Her Volume of Commerce Calculations**

16       On a wholly separate basis, Dr. Netz's damage estimates should also be excluded. Since

17 the Court first certified the IPP classes, those classes have not included cross-border purchases in

18 which the resident of one state bought an LCD product in a different state. *See* Order Granting

19 Indirect Purchaser Plaintiffs' Motion for Class Certification at 36 (Mar.28, 2010) (Dkt. No. 1642)

20 ("Class Cert. Order") (class includes persons who "*as residents of [the class state],*" purchased

21 LCD products *in [the class state]* indirectly from one or more of the named Defendants . . . ")

22 (emphasis added). For example, a resident of Rhode Island who purchased a TV in

23 Massachusetts is not a member of either state's class and cannot recover.

24       Nevertheless, Dr. Netz failed to subtract cross-border transactions from her estimated

25 volume of commerce. *See* Senator Decl., Ex. D (6/29/11 Netz Tr. at 92:4-9) ("I did no such

26 adjustment [for cross-border transactions]."); *Id.*, Ex. A (Netz Report at 111-115)7. This

27 necessarily renders her final damage estimate inflated by some unknown, but significant amount.

28 Obviously, Dr. Netz has no foundation to testify about either the estimated VOC or class

- 9 -

members' estimated damage when Dr. Netz admittedly relied on irrelevant foundational facts—transactions of persons outside the class—to arrive at her estimates. *See Trevino v. Gates,* 99 F.3d 911, 922 (9th Cir. 1996) ("[W]here foundational facts demonstrating relevancy ... are not sufficiently established, exclusion of proffered expert testimony is justified.").[4]

### 2. Dr. Netz Failed to Exclude DPP Class Member Transactions from the Volume of Commerce

Dr. Netz compounded her error when she failed to adjust her calculations after this Court redefined the IPP class to exclude members of the DPP class. *Compare* Order Granting Defendants' Motion to Alter or Amend the Indirect Purchaser Classes at 3 (Jan. 26, 2012) (Dkt. No. 4684) (excluding from IPP class "persons and entities whose purchases bring them within the definition of the certified direct purchaser product class in this Multidistrict Litigation No. 1827 and who did not opt-out of that class"), *with* Senator Decl., Ex. A (Netz Report at 111-15).

In the same Order, the Court also redefined the Missouri and Rhode Island damages classes to exclude purchases made for business purposes, yet Dr. Netz again failed to recalculate damages.[5] *Id.* On a related note, the District of Columbia, Hawaii, Massachusetts, New York and Vermont consumer protection statutes also restrict application of the statutes to exclude purchases made for business or resale purposes.[6] As a consequence, Dr. Netz should be precluded from testifying on damages as to Plaintiffs' consumer protection claims in each of those states as well.

---

[4] Dr. Comanor also did not subtract cross-border transactions from his volume of commerce estimate, and this Court should exclude his damage estimate on the same basis.
[5] The same is also true of Dr. Comanor.
[6] *See In re TFT-LCD (Flat Panel) Antitrust Litig.,* 2011 WL 4501223, at *6-7 (N.D. Cal. Sept. 28, 2011) (citing Mo. Rev. Stat. § 407.025.1 and R.I. Gen. Laws § 6-13.1-5.2(a)); D.C. Code § 28-3901(a)(2) (defining "consumer" "which is primarily for personal, household, or family use"); Haw. Rev. Stat. Ann. § 480-1 ("'Consumer' means a natural person who, primarily for personal, family, or household purposes, purchases . . ."); Mass. Gen. Laws Ann. ch. 93A, § 9; *Frullo v. Landenburger*, 814 N.E. 2d 1105, 1112 (Mass. App. Ct. 2004) (plaintiffs have sued under § 9, "a plaintiff who acts in a business context has a cause of action exclusively under § 11."); N.Y. Gen. Bus. Law § 349; *Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (N.Y. App. Div. 2001) (§ 349 "is intended to protect consumers, that is, those who purchase goods and services for personal, family or household use"); Vt. Stat. tit. 9, § 2451(a) ("'Consumer' means any person who purchases . . . goods . . . not for resale in the ordinary course of his or her trade or business but for his or her use or benefit or the use or benefit of a member of his or her household . . ."). Nonetheless, Dr. Netz and Dr. Comanor failed to factor these restrictions into their damages calculations.

1    In short, Dr. Netz's VOC estimates rely on some unknown number (to her or anyone else)
2 of excluded transactions worth an unknown number of dollars. Nor does Dr. Netz offers any
3 quantification of the size of these overstatements, nor data that could be used to quantify that
4 overage. This Court should not permit Dr. Netz to testify to damages that have been exaggerated
5 by the unjustifiable addition of inadmissible evidence. Dr. Netz's facially over-inclusive opinions
6 concerning the volume of commerce or overall damage to the IPP classes should be excluded.
7 *See United States v. Trainor*, 477 F.3d 24, 37 (1st Cir. 2007) (including prices outside the relevant
8 time period "would be misleading and improper.") (internal quotations excluded); *Jaramillo v.*
9 *Ford Motor Co.*, 116 Fed. Appx. 76, 79 (9th Cir. 2004) (case remanded because expert testimony
10 should have been excluded as irrelevant under Rule 402, when that testimony included
11 comparative accident statistics beyond the question before the Court); *Biocore v. Khosowshahi*,
12 183 F.R.D. 695, 700 (D. Kan. 1998) (excluding aspects of expert damages analysis that
13 overstated value of claims).

### 3. The Court Should Exclude Dr. Comanor's Damages Estimates, Which Are Inflated Even Beyond Dr. Netz's by the Inclusion of Non-Defendant Co-conspirator Panels, As Lacking Foundation

16    Because Dr. Comanor relies on the same inadmissible evidence to reach his volume of
17 commerce estimate as Dr. Netz—the inclusion of cross-border purchases, direct purchaser class
18 members, and certain business purchases— the Court should preclude his testimony with regard
19 to volume of commerce and estimated damages as well. Indeed, Dr. Comanor's conduct with
20 regard to his damage estimates is particularly cavalier. On March 28, 2010, the Court defined the
21 classes to include only persons who indirectly purchased LCD panels "from one or more of the
22 *named defendants* or Quanta Display Inc." Class Cert. Order at 36 (emphasis added). A year
23 later, the Court explicitly denied the IPPs' request to expand the class definitions to include
24 purchasers of coconspirator-made panels. Order Granting in Part and Denying in Part IPPs' Mot.
25 to Amend Class Cert. Order at 5-6 (July 28, 2011) (Dkt. No. 3198). Dr. Comanor's reply report
26 came out more than three weeks after the Court's order described above. Yet he failed to remove
27 nondefendant panel purchasers from his damages calculation. *See generally* Senator Decl., Ex. B
28 (Comanor Report, Appendix G); Declaration of Hailyn J. Chen in Support of Defendants' Motion

- 11 -

DEF. LG DISPLAY'S MIL NO. 1 TO EXCLUDE
PURPORTED EXPERT TESTIMONY.
CASE NO.: 3:07-MD-1827 SI

to Exclude Expert Testimony of Janet S. Netz and William S. Comanor (Dec. 16, 2011) (Dkt. No. 4380-01), Ex. 20 (Comanor Reply Report (Aug. 21, 2011)). When confronted at deposition, Dr. Comanor inexplicably insisted that he was "correct" to include damages to nondefendant-panel purchasers in his calculations despite the Court's order excluding them from the class. *Id.*, Ex. E (Comanor Tr. 302:5-21, 347:24-349:11). But it is manifestly *not* correct to include purchases made by *nonmembers* of the class in the estimate of damages to the *members* of the class. Dr. Comanor's testimony regarding volume of commerce and damages should likewise be excluded as lacking foundation.

### C. Because Dr. Comanor's Testimony Is Cumulative of Dr. Netz's Testimony, This Court Should Not Permit Both Experts to Testify and Should Order Plaintiffs to identify Which Expert Will Testify On Common Subjects

In their portion of the Pre-Trial Conference Statement, IPP Plaintiffs describe the subjects on which their two econometric experts will testify in terms that make absolutely clear that the testimony would be largely duplicative:

> Janet S. Netz, Ph.D. . . . Dr. Netz has opined extensively on impact and damages to the Indirect Purchaser Plaintiffs. As part of Dr. Netz's analyses, she performed empirical and regression studies of the available data from this case, as described in her reports, showing an overcharge rate for the time period 1999 to 2006 applicable to the 24 statewide monetary relief classes of 12.1%, or $3.226 billion, and in a separate analysis, an overcharge rate for those classes of 10.9% or $2.662 billion. Dr. Netz has also calculated that the rate of pass-through of the overcharge (that is, the amount of Defendants' conspiratorial overcharge on LCD panels that was "passed through" from Defendants to members of the 24 statewide monetary relief classes) was at least 100%.
>
> William S. Comanor, Ph.D. . . . Dr. Comanor has also opined on impact and damages to the IPPs. As part of his analyses, he performed regression studies of the available data from this case, as described in his reports, showing an overcharge rate for the time period 1999 to 2006 applicable to the 24 statewide monetary relief classes of 8.9%, or $2.27 billion. Dr. Comanor also opined on pass-through, concluding that the rate of pass-through to the IPPs was at least 100%. As part of his analysis, he reviewed and agreed with Dr. Netz's work and opinions regarding pass-through.

Draft of Joint Pre-Trial Conference Statement, draft circulated on March 9, 2012, at 25-26) ("Pre-Trial Conference Statement"). Under Rule 403, the Court has the express authority to limit presentation of cumulative evidence. The Court should exercise that authority here. There is no

- 12 -
DEF. LG DISPLAY'S MIL NO. 1 TO EXCLUDE
PURPORTED EXPERT TESTIMONY.
CASE NO.: 3:07-MD-1827 SI

basis for the indirect purchaser plaintiffs to present opinions on the same subject from two experts. Indeed, the issue is not just that the testimony would be cumulative, but also that it would be inconsistent, as both experts have opinions on the appropriate overcharge rate and VOC, but their respective estimates of the overcharge rates and VOC vary significantly, resulting in damages numbers that differ by hundreds of millions of dollars—as shown directly by counsel's own characterizations of the putative experts' opinions, quoted above. Fed. R. Evid. 403.[7]

Fundamental fairness dictates that the Court should require the indirect purchaser plaintiffs to specify *now* which expert they will call, so that defendants do not need to continue to prepare for trial without knowing which expert will testify. Especially because the substance of the two experts' opinions differs, the trial preparation will be different depending on which expert testifies.

### D. In the Alternative, LG Display Requests an Evidentiary Hearing Outside the Jury's Presence Prior to Either Expert's Testimony

The Experts' opinions regarding common impact to direct purchasers lack foundation. That necessarily deprives their opinions regarding *indirect* purchaser impact of foundation as well. And the experts' damage estimates also lack foundation. Under these circumstances, the Court should preclude the IPP Experts from testifying altogether. In the alternative, LG Display requests that the Court hold an evidentiary hearing outside the presence of the Jury prior to either expert witness's testimony to determine the parameters of that testimony, and whether the testimony has sufficient foundation for presentation to the Jury. *See, e.g., United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008) ("[D]etermination of the sufficiency of the

---

[7] Of course, this is even more true of the DPP experts, who have never been disclosed as witnesses in the IPP case, and therefore cannot testify against IPP Defendants. In particular, LG Display is not even a *party* to the DPP case, barring the use of DPP expert testimony against LG Display in any event. The indirect purchaser plaintiffs rely only on the expert opinions of Dr. Janet Netz and Dr. William Comanor. *See* Pre-Trial Conference Statement at 25-26. The direct purchaser plaintiffs rely on three different experts, Dr. Edward Leamer, Adam Fontecchio, and Dr. Kenneth Flamm. *See id.* In addition to being untimely and cumulative, admitting the DPPs' expert testimony in the IPP case would be prejudicial because their testimony—which LG Display in particular has never tested—presents conflicting and substantially different findings than the IPP experts. For example, Dr. Leamer claims to have found an average overcharge of 18.9%, Expert Reply Report of Edward E. Leamer, Ph.D. (Aug. 29, 2011), which is nearly 80 percent higher than IPPs' experts' overcharge estimates.

- 13 -
DEF. LG DISPLAY'S MIL NO. 1 TO EXCLUDE
PURPORTED EXPERT TESTIMONY.
CASE NO.: 3:07-MD-1827 SI

foundation for admission of expert testimony requires factual findings, preferably after an evidentiary hearing.").

## III. CONCLUSION

For the foregoing reasons, the Court should exclude testimony by Plaintiffs' experts as discussed above.

DATED: March 13, 2012

By: */s/Jerome C. Roth*
Brad D. Brian (State Bar No. 079001)
Jerome C. Roth (State Bar No. 159483)
Stuart N. Senator (State Bar No. 148009)
Jonathan E. Altman (State Bar No. 170607)
Truc T. Do (State Bar No. 191845)
Hailyn J. Chen (State Bar No. 237436)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
*Brad.Brian@mto.com*

Holly A. House (State Bar No. 136045)
Lee F. Berger (State Bar No. 222756)
Paul Hastings LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
*hollyhouse@paulhastings.com*
*leeberger@paulhastings.com*

*Attorneys for Defendants LG Display Co., Ltd. and LG Display America, Inc.*

- 14 -

DEF. LG DISPLAY'S MIL NO. 1 TO EXCLUDE
PURPORTED EXPERT TESTIMONY.
CASE NO.: 3:07-MD-1827 SI