# EXHIBIT 5

Volume 13

Pages 1710 - 1831

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SUSAN ILLSTON

In Re:  TFT-LCD (Flat Panel)           )
Antitrust Litigation.                  )
_____)   No. M. 07-01827 SI
                                            San Francisco, California
                                            Tuesday
                                            June 12, 2012
                                            8:37 a.m.

**AMENDED TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**
**For Direct**              Lieff, Cabraser, Heimann & Bernstein
**Purchaser**               275 Battery Street, 30th Floor
**Plaintiffs**              San Francisco, CA  94111
                            (415) 956-1000
                            (415) 956-1008 (fax)
                   BY:  **RICHARD HEIMANN**
                        **BRENDAN GLACKIN**


**For Direct**              Pearson, Simon, Warshaw & Penny, LLP
**Purchaser**               44 Montgomery Street
**Plaintiffs**              Suite 2450
                            San Francisco, CA 94104
                            (415) 433-9000
                            (415) 433-9008 (fax)
                   BY:  **BRUCE LEE SIMON**
                        **AARON SHEANIN**
                        **ROBERT G. RETANA**
                        **VERONICA W. GLAZE**


**For Plaintiff**           Polsinelli Shughart, PC
**Crago Corporation**       Twelve Wyandotte Plaza
                            120 West 12th Street
                            Kansas City, MO  64105-1929
                            (816) 421-3355
                   BY:  **DANIEL D. OWEN**

(Appearances continued on next page)

Lydia Zinn, CSR #9223 and Belle Ball, CSR #8785
Official Reporters - U.S. District Court
(415) 531-6587

```
 1              THE COURT:  Is this a document that was on the

 2    stipulation?

 3              MR. GLACKIN:  No.  It is not stipulated to, Your

 4    Honor.

 5              THE COURT:  Well, then, I sustain the objection.

 6    BY MR. GLACKIN:

 7    Q    All right.  Dr. Flamm, did your review of evidence in this

 8    1998-to-1999 time period include evidence of collusive activity

 9    by Toshiba?

10    A    Yes.

11    Q    Can you briefly tell us the form that that evidence takes

12    or that that collusion took in the 1999 -- 1998-to-1999 time

13    period?

14    A    So, I believe the jury may have heard testimony from

15    Mr. Suh, of Samsung, that he was exchanging price and quantity

16    information -- price and production information with Toshiba,

17    beginning back in 1998.

18         And there are -- there's, in this -- anyway, so that's --

19    that would be one example.

20    Q    Okay.  Well, you were just about to start referring to

21    Samsung interrogatory responses.

22              MR. GLACKIN:  Your Honor, we could take a break now,

23    or go for another ten or 15 minutes.  Whatever you'd like.

24              THE COURT:  It's up to you.

25
```

1  **BY MR. GLACKIN:**

2  **Q**    Can you proceed, Dr. Flamm?

3  **A**    Sure.

4  **Q**    Okay.  So --

5         **MR. TOTO:**  Your Honor, sorry.  We're going to object

6  to and I would like to voir dire the witness on the Samsung

7  interrogatories, if we are going to go down that road.

8         **THE COURT:**  All right.  Let's take our break now.

9         **MR. GLACKIN:**  Great.

10        **THE COURT:**  Ladies and gentlemen, if you would be

11 ready to come back, please, at ten minutes after 11:00.  In the

12 meantime, don't communicate in any way about the case, or make

13 up your minds.

14        (Jury excused)

15        (The following proceedings were held outside of the

16         presence of the Jury)

17        **THE COURT:**  So, I read the -- the pleading that was

18 -- you can sit down or take off.

19        **MR. GLACKIN:**  You can take a break.

20        **THE COURT:**  -- that was filed about the Samsung

21 interrogatory responses.  And I'm not persuaded that you are

22 correct in your objection.

23        So, tell me what you mean by "voir dire the witness

24 on the Samsung interrogatories."

25        **MR. TOTO:**  Well, I would like to understand -- you

Case 4:07-cv-05944-JST Document 2404-6 Filed 01/16/15 Page 5 of 21
Case 3:07-md-01827-SI Document 2204-2 Filed 12/01/12 Page 5 of 21    1767
PROCEEDINGS

 1  know, he relied on this document.  It's double-hearsay, as you

 2  know, Your Honor.

 3          I want to make sure the witness understands the lack

 4  of force that this document has.

 5          **THE COURT:**  That, I think, is an appropriate question

 6  for cross-examination.  But it is not an appropriate question

 7  for voir dire at this time.

 8          **MR. TOTO:**  Okay.  Well, Your Honor, I think under

 9  Rule 703, there is case law that says it could be an improper

10  factual predicate for an expert to rely on things like this,

11  rank hearsay that --

12          **THE COURT:**  And you have made your motion, and it's

13  been rejected by the Court.

14          So, I don't see how voir dire of the witness at this

15  time is going to do anything except interrupt the flow of his

16  testimony, and throw him off his stride, which I think is what

17  you would like to do.  And I don't think that is appropriate at

18  this time.

19          So, I don't think that there's any need for voir dire

20  at this time.

21          **MR. GLACKIN:**  Your Honor, as long as we're outside

22  the presence of the jury, can we just briefly address the issue

23  of Exhibit 106, which I had moved into evidence and which you

24  rejected?

25          **THE COURT:**  Yes.

Case 4:07-cv-05944-JST   Document 3404-6   Filed 01/16/15   Page 6 of 21
Case 3:07-md-01827-SI   Document 3404-6   Filed 12/07/12   Page 6 of 21
PROCEEDINGS                                    1768

 1          **MR. GLACKIN:**  I have a binder here that -- I meant to

 2  give you this before, not that you don't have enough binders.

 3          (Document handed up to the Court)

 4          **THE COURT:**  Okay.

 5          **MR. GLACKIN:**  Your Honor, it's Tab 2 in the binder.

 6  I'm not going to make a long argument.  I'll just say that the

 7  document's been authenticated as produced by LG Display.

 8          **THE COURT:**  By whom?  By the witness.

 9          **MR. GLACKIN:**  By the witness.

10          **THE COURT:**  Because it was stamped "LG Display."  He

11  can't authenticate a document.  How can he get a document into

12  evidence if you haven't got some other witness who did?

13          He can rely on it, if he wants.  That's up to him.

14  He's an expert.  But he can't get it into evidence, unless

15  you've got something else.

16          **MR. GLACKIN:**  Well, Your Honor, I think he is

17  knowledgeable enough about the document production in this case

18  to know where the documents come from.

19          And to the extent this is -- I mean, to the extent

20  there's a hearsay objection to the document, and we're talking

21  about a hearsay foundation, I would move it as a statement

22  against interest, or under the residual exception.

23          And, I'll submit it on that.

24          **THE COURT:**  Okay.  No, I'm not going to admit it.

25          **MR. GLACKIN:**  Okay.

Case 4:07-cv-05944-JST   Document 3404-6   Filed 01/16/15   Page 7 of 21
Case 3:07-md-01827-SI   Document 6129   Filed 07/07/12   Page 7 of 21   1769
PROCEEDINGS

 1          **THE COURT:**  He may refer to it, but I'm not going to

 2     admit it.

 3          **MR. TOTO:**  Just so it's clear, it wasn't a hearsay

 4     objection.  It may be hearsay as well, but it was a

 5     foundational objection.

 6          **THE COURT:**  Yeah.  And, I sustained it on that.

 7          (Recess taken from 10:50 to 11:14 a.m.)

 8          (Witness resumes stand)

 9          **THE COURT:**  All right.  Mr. Glackin, you may proceed.

10          And you're still under oath from this morning, sir.

11                    **DIRECT EXAMINATION RESUMED**

12     **BY MR. GLACKIN**

13     **Q.**   So, Dr. Flamm, when we went off the record, we were

14     talking about the Samsung interrogatory responses.  First of

15     all, how many pages long are these interrogatory responses?

16     **A.**   Well, the entire response is about a hundred pages long.

17     There's maybe 80, 85 pages of stuff that isn't sort of notes

18     and text, that's introductory text.

19     **Q.**   Is there an affirmation on page 100 of the responses?

20     **A.**   Yes.

21     **Q.**   Could you read that affirmation slowly into the record,

22     please?

23     **A.**   Sure.  It says,

24               "Verification.  I am an employee of

25               Samsung Semiconductor, Inc.  And I'm

                 Lydia Zinn, CSR #9223 and Belle Ball, CSR #8785
                    Official Reporters - U.S. District Court
                              (415)  531-6587

1           authorized to act on its behalf and make

2           that verification for Samsung Electronics

3           Company, Limited, Samsung Semiconductor,

4           Inc., and Samsung Electronics America,

5           Inc., parties to the above-captioned

6           action.  I affirm, based upon the facts and

7           information that have been supplied to me

8           by counsel and others, that Defendants

9           Samsung Electronics Company, Limited,

10          Samsung Semiconductor, Inc., and Samsung

11          Electronics America, Inc.'s, responses to

12          Direct and Indirect Purchaser Class

13          Plaintiffs' witness and contention

14          interrogatories to all Defendants are true

15          and correct, to the best of my knowledge,

16          information, and belief.  Signed,

17          K. W. Kim, dated March 7th, 2011."

18  **Q.**   Okay.  Now, you mentioned that these interrogatories

19  contained responses contain information about bilateral

20  communications among manufacturers.  What are some of the

21  manufacturers mentioned in these interrogatory responses?

22  **A.**   They include LG.  They include Hitachi.  They include

23  Sharp.  They include AUO.  They include CPT.  They include CMO.

24  They include Toshiba.  They include -- I'd have to look to give

25  you -- but there are a lot of names.

1  **Q.**   Okay.  What time period do the interrogatory responses

2  cover, in terms of their information, approximately?

3         **MR. TOTO:**  Objection, your Honor.  It's overbroad.

4         **THE COURT:**  I'm sorry?

5         **MR. TOTO:**  It's a one-page interrogatory response.

6  He's asking what time period it covers.  There are multiple

7  questions and multiple answers.  It's an overbroad question.

8         **MR. GLACKIN:**  I can ask it in a different way.  It

9  would make it more pleasing.

10        **THE COURT:**  All right.

11 **BY MR. GLACKIN**

12 **Q.**   Dr. Flamm, approximately what is the beginning and ending

13 point of the overall set of collusive activity that is

14 disclosed in these responses?

15 **A.**   It begins in 1998.  And it ends at the beginning of 2006;

16 for the most part, through 2005.

17 **Q.**   Okay.  Approximately, total, across all companies, what's

18 a ballpark estimate of the number of contacts --

19       Well, let me backup.

20       Have you gone through and counted up every single

21 bilateral contact that is mentioned in these interrogatories?

22 **A.**   At one point, I looked at it for that purpose.  It's

23 very -- it's difficult.

24 **Q.**   Why is it difficult?

25 **A.**   These are recollections of individuals.  And oftentimes,

Case 4:07-cv-05944-JST Document 3404-6 Filed 01/16/15 Page 10 of 21
Case 3:07-md-01827-SI Document 7977-2 Filed 02/16/13 Page 10 of 21
FLAMM - DIRECT EXAMINATION / GLACKIN                    1772

1  they're vague.  And they cover periods of time.  And they're

2  approximate.  They'll say,

3                "Well, I talked to so-and-so.  You

4          know, I met with them two or three or four

5          or five times a year; something on that

6          order of magnitude,"

7          -- or,

8                "I've called them roughly, you know,

9          one to five times a week, or one to six

10         times a week."

11              And so that's kind of tough to pin down a precise

12 number over a precise period.

13 **Q.**   And do these interrogatory responses say anything about

14 the content of these bilateral communications; what people were

15 talking about?

16 **A.**   Yes.

17 **Q.**   What do they say about that?

18 **A.**   Well, generally, all of these contacts are about prices

19 and production.

20 **Q.**   That's fine.  Now, Samsung, of course, is one of the

21 companies who was engaging in bilateral contacts, as described

22 here.  Correct?

23 **A.**   Yes.  It's the company that produced this (indicating).

24 **Q.**   Right.  How many, approximately, Samsung employees have

25 included or have had their information included in these

Case 4:07-cv-05944-JST Document 3404-6 Filed 01/16/15 Page 11 of 21
Case 3:07-md-01827-SI Document 7404-6 Filed 01/06/15 Page 11 of 21   1773
FLAMM - DIRECT EXAMINATION / GLACKIN

 1   Samsung interrogatory --

 2       You know what?  I withdraw that.  I'm going to ask that

 3   differently.

 4       Do the Samsung interrogatories -- interrogatory responses

 5   contain information about contacts by Mr. Suh, Mr. Arai, and

 6   Mr. Hanson?

 7   **A.**   Yes.

 8   **Q.**   Do they contain information about contacts by other

 9   employees?

10   **A.**   Yes, they do.

11   **Q.**   Can you tell me approximately how many Samsung employees,

12   in addition to those gentlemen are discussed in these

13   responses?

14   **A.**   There's in excess of 40 employees who are discussed --

15   Samsung employees who are listed, along with their contacts, in

16   this document.

17   **Q.**   Okay.  Is Samsung, to your knowledge, a publicly traded

18   company?

19   **A.**   Yes, it is.

20   **Q.**   How would you characterize the picture of Samsung that is

21   painted by these interrogatory responses?

22       **MR. TOTO:**  Objection, your Honor.  I don't think it's

23   an economist's job to paint a picture based on facts.

24       **THE COURT:**  Sustained.

25

Case 4:07-cv-05944-JST  Document 3404-6  Filed 01/16/15  Page 12 of 21
Case 3:07-md-05944-JST  Document 2974-2  Filed 10/16/14  Page 13 of 21
FLAMM - DIRECT EXAMINATION / GLACKIN                    1774

**BY MR. GLACKIN**

**Q.**    Now, focusing on the years 19 -- well, I take that back.

     Focusing on Toshiba, have you made any effort to estimate
the number of contacts to discuss price and quantity that are
disclosed by these responses with respect to Samsung and
Toshiba?

**A.**    Yes.

**Q.**    Can you tell us the result of that attempt?

**A.**    So this --

          **MR. TOTO:**  Again, sorry to interrupt.  I think the
number is fine, if he's counted the number; but his commentary
on what they say, I object to.

          **THE COURT:**  I don't think he'd gotten to that, but --

          **MR. TOTO:**  Okay.  Well, I don't know what he's going
to say.

          **THE COURT:**  You were asking about how many.  Right?

          **MR. GLACKIN:**  Correct.  That's all I wanted to know.

          I'll reask the question.

          **THE COURT:**  Okay.

**BY MR. GLACKIN**

**Q.**    Dr. Flamm, what was the result of your attempt, given the
constraints you outlined, to estimate the number of contacts
between Samsung employees and Toshiba employees concerning
price and quantity that are disclosed in these responses?

Case 4:07-cv-05944-JST   Document 3404-6   Filed 01/16/15   Page 13 of 21
Case 3:07-md-05944-JST   Document 4073-1   Filed 09/17/15   Page 13 of 21

FLAMM - DIRECT EXAMINATION / GLACKIN                    1775

 1  **A.**    So this document shows 9 Samsung employees -- excuse me --

 2  out of the 44 -- or I'm sorry -- the excess of 40 -- I think

 3  it's 44, but -- but it shows 9 Samsung employees contacting

 4  somewhere between -- having contact with somewhere between 8

 5  and 10 Toshiba employees.

 6  **Q.**    And did you make any attempt to estimate the number of

 7  contacts or the frequency of --

 8      I'll back up.

 9      Did you make any effort to calculate or estimate the

10  frequency of contacts between Samsung and Toshiba, as disclosed

11  here?

12          **MR. TOTO:**    Objection.  Again, there's -- there's

13  eight or nine different people.  And decide whatever the

14  numbers are.  And to say what the frequency is -- it's

15  overbroad.

16          **THE COURT:**    Well, actually, this was a "Yes" or "No"

17  question:  Did he make an effort to estimate it?  Right?

18          **MR. GLACKIN:**    That was the question.

19          **THE COURT:**    So you can ask -- answer that.

20          **THE WITNESS:**    Yes.

21  **BY MR. GLACKIN**

22  **Q.**    Were you able to estimate the frequency of the contacts

23  between Samsung and Toshiba that are disclosed in these

24  responses?

25  **A.**    Very roughly.

Case 4:07-cv-05944-JST Document 3404-6 Filed 01/16/15 Page 14 of 21
Case 3:07-md-05944-SC Document 2972-2 Filed 10/10/14 Page 14 of 21   1776
FLAMM - DIRECT EXAMINATION / GLACKIN

1  Q.   And what is your very rough estimate, Dr. Flamm?

2          MR. TOTO:   I'll renew my objection.

3          THE COURT:   All right.   Overruled.

4          You may answer.

5          THE WITNESS:   Very, very roughly, because of the

6  imprecision I referred to earlier, there was -- it appears that

7  there was a meeting between Samsung and Toshiba employees in

8  excess -- more or less, three or four times a year, or more.

9  During some periods, there may have been more meetings than

10 that, but it generally seems to have started from a base of

11 about three or four times per year.

12          In addition, there were meetings or telephone

13 contacts, generally, at least once a month; and in some -- over

14 some subperiods here, it looks like more like two or three

15 times a month.

16 BY MR. GLACKIN

17 Q.   And, according to the responses, each of these contacts

18 involved a discussion of price or quantity.   Right?

19 A.   That's what the question that Samsung is answering here in

20 the interrogatory was.

21          MR. GLACKIN:   Okay.   You can put that aside.   Thank

22 you.

23          Now, Jeff, would you mind bringing up Exhibit 109,

24 please?   And I'd like us to go to the second-to-last page,

25 which is 109-006.

Case 4:07-cv-05944-JST Document 3404-6 Filed 01/16/15 Page 15 of 21
Case 3:07-md-05827-JST Document 2897-2 Filed 02/16/14 Page 15 of 21   1777
FLAMM - DIRECT EXAMINATION / GLACKIN

```
1              Oh, and this is exactly the same document, dated
2    January 18th of 2000, that was shown during Mr. Kwon's
3    deposition video clip at the end.
4              THE COURT:  So this is in evidence.  Right?
5              MR. GLACKIN:  Oh, yes.
6              Actually, Jeff, would you mind going back to the
7    first page, and just highlighting the very top of it, so
8    that -- no.  The second page.  First page was content.  There
9    we go.  Just bring that up so everyone remembers what this
10   document is.
11             (Document displayed)
12             MR. GLACKIN:  Okay.  Now, Jeff, would you mind going
13   to -006?  Now, that passage -- do you see above that, where
14   there's a sentence beginning, "Ultimately"?
15   Q.   Okay.  Now, Dr. Flamm, is this a document you've reviewed?
16   A.   Yes.
17   Q.   Okay.  Is this part of the basis for your report?
18   A.   Yes.
19   Q.   Okay.  Could you read the passage that is -- has been now
20   been highlighted, and that I've identified on the screen,
21   please?
22   A.   Yes.
23   Q.   Please do so out loud.
24   A.   Okay.  It says,
25             "Ultimately, even with the painful
```

Case 4:07-cv-05944-JST Document 3404-6 Filed 01/16/15 Page 16 of 21
Case 3:07-md-05944-JST Document 3404-6 Filed 01/16/15 Page 16 of 21
FLAMM - DIRECT EXAMINATION / GLACKIN                    1784

```
 1              THE COURT:   Okay.  Thank you.  All right.  You can
 2   take that down, Jeff.
 3   Q.   So, again, prior to the beginning of the Crystal Meetings
 4   in September 14th of 2001, you know, what do you observe about
 5   the nature of collusion in this industry, in, say, the 2000 up
 6   to that September 14th, 2001, time period?
 7   A.   I believe it largely consists of sort of bilateral and
 8   occasional multilateral contacts up until that point.
 9   Q.   Dr. Flamm, could I ask you to turn to Tab 8 in your
10   binder, please?
11   A.   Okay.
12   Q.   Okay.  Are you familiar with this document?
13   A.   Yes, I am familiar with this document.
14   Q.   Okay.  Could you start out by just telling us whether this
15   is something that you reviewed and considered in formulating
16   your opinions?
17   A.   Yes.  It is something I considered.
18   Q.   Okay.  Do you consider this to be an important document?
19   A.   Yes, I think it is.
20   Q.   Okay.  Why don't you just tell us, without telling us the
21   contents of it, just generally what it is?
22   A.   It's a document describing a trip to Japan and Taiwan by
23   LG, the TFT-LCD panel maker.
24   Q.   Well, what's significant about the fact that LG took a
25   trip to Japan and Taiwan?
```

Case 4:07-cv-05944-JST  Document 3404-6  Filed 01/16/15  Page 17 of 21
Case 3:07-md-05923-SI  Document 1846  Filed 01/04/12  Page 17 of 21

TEAMM  DIRECT EXAMINATION / GLACKIN                        1785

 1          **MR. TOTO:**  Objection, your Honor.  Again, his

 2  commentary on these business documents is inappropriate, as an

 3  economist.

 4          **THE COURT:**  Overruled.

 5          You may answer.

 6          **MR. GLACKIN:**  You may answer.

 7          **THE WITNESS:**  Thank you.

 8          It shows LG having discussions of future price and

 9  production trends with individual -- with individual -- with

10  other competitors about individual product prices and -- in

11  particular, and volumes and transactions that would be

12  undertaken in the future, as well as in the present.

13  **BY MR. GLACKIN**

14  **Q.**  What was the time frame of this trip?

15  **A.**  The trip occurred over the period from September 4th

16  through September 7th.

17          I should actually say the conversations occurred over the

18  period from September 4th through September 7th.

19  **Q.**  With what competing manufacturers --

20          Strike that.

21          What were the competing manufacturers that LG visited on

22  this trip?

23  **A.**  So on the 4th of September, it consulted with Toshiba.

24          On the 5th of September, it consulted with Hitachi.

25          On the 6th of September, it consulted with CMO:  Chi Mei.

```
                                        Volume  14

                                        Pages 1832 - 2054

                     UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

                BEFORE THE HONORABLE SUSAN ILLSTON

In Re:  TFT-LCD (Flat Panel)        )
Antitrust Litigation.               )
_____    )  No. M. 07-01827 SI
                                       San Francisco, California
                                       Wednesday
                                       June 13, 2012
                                       8:37 a.m.
```

### TRANSCRIPT OF PROCEEDINGS

```
APPEARANCES:
For Direct                 Lieff, Cabraser, Heimann & Bernstein
Purchaser                  275 Battery Street, 30th Floor
Plaintiffs                 San Francisco, CA  94111
                           (415) 956-1000
                           (415) 956-1008 (fax)
                  BY:  RICHARD HEIMANN
                       BRENDAN GLACKIN


For Direct                 Pearson, Simon, Warshaw & Penny, LLP
Purchaser                  44 Montgomery Street
Plaintiffs                 Suite 2450
                           San Francisco, CA 94104
                           (415) 433-9000
                           (415) 433-9008 (fax)
                  BY:  BRUCE LEE SIMON
                       AARON SHEANIN
                       ROBERT G. RETANA
                       VERONICA W. GLAZE




(Appearances continued on next page)
```

Case 4:07-cv-05944-JST Document 3404-6 Filed 01/16/15 Page 19 of 21
Case 3:07-md-01827-SI Document 7604-2 Filed 01/16/12 Page 19 of 21   1835
FLAMM - DIRECT EXAMINATION / GLACKIN

```
 1  Q.   Dr. Flamm, I'd like to go back briefly for a moment to a

 2  topic we discussed yesterday; specifically, Samsung's

 3  interrogatory responses.

 4       Dr. Flamm, in those interrogatory responses, did Samsung

 5  admit that it reached price-fixing agreements with other

 6  manufacturers?

 7  A.   Yes, it does.

 8            MR. TOTO:  Objection.  Calls for a legal conclusion.

 9            THE COURT:  Overruled.

10  BY MR. GLACKIN

11  Q.   Can you tell us some of the manufacturers that Samsung

12  admits price-fixing with?

13  A.   Yes.

14  Q.   What are some of those manufacturers?

15  A.   So I can't do an exhaustive list from memory, but that

16  would include Sharp, Hitachi, AUO, NEC, Epson, Sanyo, and

17  Toshiba -- are the ones that come into mind.

18  Q.   Can you tell us the -- any of the specific employees of

19  either company that are mentioned as participating in

20  price-fixing agreements between Samsung and Toshiba?

21            MR. TOTO:  Objection.  Again, that calls for his

22  interpretation of a legal document, your Honor.

23            THE COURT:  Overruled.

24            You may answer.

25            THE WITNESS:  Mr. Chiba and Mr. Amano are
```

PEARL: DIRECT EXAMINATION / GLACKIN                    1843

Case 4:07-cv-05944-JST  Document 3404-6  Filed 01/16/15  Page 20 of 21
Case 3:07-md-01827-SI  Document 7227-1  Filed 03/10/13  Page 20 of 21

1  overview.  There's a point referencing an eight-day shutdown, a

2  little further up.

3      Can you offer any enlightenment about -- based on your

4  understanding of the industry, about what it means to talk

5  about an eight-day shutdown during the holidays next year for

6  an Asian high-tech manufacturer?

7  **A.**   Yes.

8           **MR. TOTO:**  Objection, your Honor.  Again, it calls

9  for him to improperly interpret this document.

10          **THE COURT:**  Overruled.

11          You may answer.

12          **THE WITNESS:**  So -- so, as you point out, this -- the

13  passage that you're highlighting here -- there's a discussion

14  of a shared feeling regarding loading rate, more or less

15  20 percent.  And then it says,

16              "And a decision will be made at a

17          Top Meeting on October 19th."

18          And it was suggested that there be an eight-day

19  shutdown during the holidays next year.

20          So what that's about is, typically in Japanese

21  electronics industry, in the -- in Asian electronics industry

22  in general, around the Lunar New Year, which is a big holiday,

23  generally, manufacturers will do a holiday shutdown for a few

24  days, a day or two, to do maintenance -- routine maintenance --

25  and sort of free up employees for holidays.

Case 4:07-cv-05944-JST  Document 3404-6  Filed 01/16/15  Page 21 of 21
Case 3:07-md-05944-JST  Document 3067-2  Filed 11/07/12  Page 2 of 21
FLAMM - DIRECT EXAMINATION / GLACKIN                1874

1          **MR. GLACKIN:**  That's okay.

2  **Q.**   Dr. Flamm, I'm putting something that you selected for us.

3  Can you tell us where you found this, and what its significance

4  is to you?

5  **A.**   So this is a reference to an index item in the

6  Crystal Meeting notes of June 11, 2003.  And it -- basically,

7  it reports -- you know, this is conversations among the

8  participants in these meetings.  And it basically says,

9               "17-inch is the index item" --

10          And I think -- I believe they're referring -- I have

11  to look at it precisely.  I believe this is referring to

12  monitor panels.

13               "17-inch is the index item whose price

14               can effect the overall TFT sales price

15               significantly."

16          So this is basically showing that the participants

17  believed that when they set the index prices, that this was

18  going to affect other prices, as well.  And I believe we've

19  also heard some testimony about that.

20          **MR. TOTO:**  Your Honor, I move to strike his testimony

21  about what the Crystal Meeting participants believed.

22          **THE COURT:**  Overruled.

23          **MR. GLACKIN:**  Okay.

24  **Q.**   Well, Dr. Flamm, is this something that you're referring

25  to when you talk about testimony we've heard?