# EXHIBIT 11

Case 4:07-cv-05944-JST   Document 3404-12   Filed 01/16/15   Page 2 of 4
Case 3:07-md-01827-SI   Document 7507-6   Filed 12/07/12   Page 2 of 11

## ASPEN PUBLISHERS

**Phillip E. Areeda**
*Late Langdell Professor of Law*
Harvard University

**Herbert Hovenkamp**
*Ben V. & Dorothy Willie*
*Professor of Law*
University of Iowa

**Volume II**
**Third Edition**

# Antitrust Law

## An Analysis of Antitrust Principles and Their Application


Wolters Kluwer
Law & Business

AUSTIN   BOSTON   CHICAGO   NEW YORK   THE NETHERLANDS

This publication is designed to provide accurate and authoritative information in regard to the subject matter covered. It is sold with the understanding that the publisher is not engaged in rendering legal, accounting, or other professional services. If legal advice or other professional assistance is required, the services of a competent professional person should be sought.

—From a *Declaration of Principles* jointly adopted by a Committee of the American Bar Association and a Committee of Publishers and Associations

© 2007 President and Fellows of Harvard College
Published by Aspen Publishers. All Rights Reserved.

No part of this publication may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopy, recording or any information storage and retrieval system, without permission in writing from the publisher. Requests for permission to reproduce content should be directed to the Aspen Publishers website at www.aspenpublishers.com, or a letter of intent should be faxed to the permissions department at 212-771-0803.

Printed in the United States of America

1 2 3 4 5 6 7 8 9 0

Library of Congress Control Number: 2006930321

ISBN 978-0-7355-6428-2 (Set)
978-0-7355-6767-2 (Volume II)

In any event, the critique of economics as being less empirical than the other social sciences may carry little weight in antitrust economics as it is used in litigation — for several reasons. *First*, the branch of economics most frequently employed in antitrust analysis is industrial organization, where the volume of empirical analysis is significant although much of it is subject to the criticism that the testing really amounts to rather minimal consistency verification rather than rigorous attempts to falsify. *Second*, it clearly was not *Daubert*'s purpose to change the way that any discipline goes about its own business. To be sure, the empirical content of economics may be less than the empirical content of, say, psychology; but nothing in *Daubert* suggests that economists as a group must behave more the way psychologists behave if they want their testimony to be admissible. Rather, the standards for empirical testing, peer review, and acceptance must be standards that are generally regarded as acceptable within the discipline in question — a proposition that the Supreme Court's subsequent *Kumho* decision made clear.[51] *Daubert*'s purpose is not to question or undermine economics' domain as the study of how rational economic actors make choices any more than it is to undermine psychology's domain as consisting in part of the study of why some actors fail to make choices that seem rational to the rest of us. For this reason it would be an inappropriate use of *Daubert* to exclude the testimony of an economist who was using methodologies and assumptions that are acceptable within the discipline of economics — even though these same methodologies or assumptions might not satisfy the practitioner of a different expert discipline.

Several antitrust decisions have applied *Daubert* to testimony offered by an economist, statistician, or other expert.[52] In

---

economic, statistical or econometric methodologies and reasoning that can properly be applied to the facts of this case.

Id. at 1252.

51. *Kumho*, note 10, 526 U.S. at 151.

52. In addition to the decisions discussed in the text, see the following:

On the use of regression analysis in particular, see *Polypropylene Antitrust Litig.*, 93 F. Supp. 2d 1348 (N.D. Ga. 2000), which noted that the Supreme Court's pre-*Daubert* decision in *Bazemore v. Friday*, 478 U.S. 385 (1986), held that an economist's statistical analysis could be admissible even if it did not incorporate every conceivable relevant variable. Id. at 393 n.4. However, the Supreme Court acknowledged that regression models omitting salient variables could be so "incomplete as to be inadmissible." Id. at 400 n.10. See also *People Who Care v. Rockford Board of Educ.*, 111 F.3d 528, 537-538 (7th Cir. 1997) (non-antitrust decision; "study that fails to correct for salient explanatory variables, or even to make the most elementary comparisons, has no value as causal explanation and is therefore inadmissible in a federal court"); *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir.), cert.