1   SHEPPARD MULLIN RICHTER & HAMPTON LLP
    Gary L. Halling, Cal. Bar No. 66087
2   James L. McGinnis, Cal. Bar No. 95788
    Michael W. Scarborough, Cal. Bar No. 203524
3   Mona Solouki, Cal. Bar No. 215145
    Four Embarcadero Center, 17th Floor
4   San Francisco, CA  94111-4109
    Telephone:     (415) 434-9100
5   Facsimile:     (415) 434-3947
    E-mail: ghalling@sheppardmullin.com
6           jmcginnis@sheppardmullin.com
7           mscarborough@sheppardmullin.com
            msolouki@sheppardmullin.com
8

9   Attorneys for Defendants
    SAMSUNG SDI AMERICA, INC.,
10  SAMSUNG SDI CO., LTD.,
    SAMSUNG SDI (MALAYSIA) SDN. BHD.,
11  SAMSUNG SDI MEXICO S.A. DE C.V.,
    SAMSUNG SDI BRASIL LTDA.,
12  SHENZEN SAMSUNG SDI CO., LTD. and
    TIANJIN SAMSUNG SDI CO., LTD.
13

14                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
15
                        (SAN FRANCISCO DIVISION)
16

17  IN RE: CATHODE RAY TUBE (CRT)          Case No. 3:07-md-05944 SC
    ANTITRUST LITIGATION                   MDL No. 1917
18

19  This Document Relates to:

20  *CompuCom Systems, Inc. v. Hitachi, Ltd., et al.,*   **SDI'S OPPOSITION TO CERTAIN**
    Case No. 3:11-cv-06396;                              **PLAINTIFFS' MOTION TO**
21                                                       **PARTIALLY EXCLUDE**
    *Dell Inc., et al. v. Hitachi, Ltd., et al.*, Case   **TESTIMONY OF DESIGNATED**
22  No. 13-cv-02171;                                     **EXPERT DANIEL L. RUBINFELD**

23  *Sharp Electronics Corporation, Sharp               Oral Argument Requested
    Electronics Manufacturing Company of*
24  *America, Inc. v. Hitachi, Ltd., et al.*, Case No.   Date:   February 27, 2015
    13-cv-1173;                                          Time:   10:00 a.m.
25                                                       Courtroom:  1
    *Sharp Electronics Corporation, Sharp*              Judge:  Hon. Samuel Conti
26  *Electronics Manufacturing Company of
    America, Inc. v. Koninklijke Philips Electronics
27  N.V., et al.*, Case No. 13-cv-2776;

28  *Electrograph Systems, Inc., et al. v. Hitachi,
    Ltd., et al.*, Case No. 3:11-cv-01656;

1    *Electrograph Systems, Inc., et al. v. Technicolor SA, et al.*, Case No. 3:13-cv-05724;

2

3    *Interbond Corp. of America v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06275;

4    *Interbond Corp. of America v. Technicolor SA, et al.*, Case No. 3:13-cv-05727;

5    *Office Depot, Inc. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06276;

6

7    *Office Depot, Inc. v. Technicolor SA, et al.*, Case No. 3:13-cv-05726;

8    *P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, Case No. 3:12-cv-02648;

9

10    *P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al.*, Case No. 3:13-cv-05725;

11    *Sears, Roebuck & Co. and Kmart Corp. v. Technicolor SA.*, Case No. 3:13-cv-05262;

12    *Sears, Roebuck & Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, Case No. 3:11-cv-05514;

13

14    *Siegel v. Hitachi, Ltd.*, Case No. 11-cv-05502;

15

16    *Siegel v. Technicolor SA.*, Case No. 13-cv-05261;

17

18    *Target Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, Case No. 11-cv-05514;

19

20    *Target Corp. v. Technicolor SA*, Case No. 13-cv-05686;

21    *Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, Case No. 3:13-cv-00157;

22

23    *Viewsonic Corporation v. Chunghwa Picture Tubes, Ltd., et al.*, Case No. 3:14-cv-002510;

24

25

26    **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

27

28

SDI's Opp. to Plfs' Mot. to Exclude Certain
Opinions of Daniel L. Rubinfeld

1

# TABLE OF CONTENTS

2

Page

3

4

I. INTRODUCTION ............................................................................................................... 1

5

II. LEGAL STANDARDS ..................................................................................................... 4

6

III. ARGUMENT .................................................................................................................. 4

7

    A.    Professor Rubinfeld's Testimony Related to SDI's Plea Rests on Ample Foundation to be Admissible, Notwithstanding Plaintiffs' Mischaracterizations of His Opinions. ................................................................... 4

8

9

        1.    The Plea's Monitor Tube Limitation ............................................................ 5

10

        2.    The Plea's Limited Period. ........................................................................... 7

11

        3.    The Civil-Criminal Distinction. ................................................................... 8

12

        4.    Professor Rubinfeld Provides an Analysis of "Billed to" U.S. Sales Not Only for CDTs but also for CPTs........................................................... 9

13

        5.    Professor Rubinfeld Appropriately Relied on His Specialized Experience and Knowledge of the Division's Policies Related to Pleas. ......................................................................................................... 10

14

    B.    Professor Rubinfeld's Opinions Analyzing SDI's Conduct Are Appropriate Responses to Plaintiffs' Experts' Affirmative Analyses that Ignore the Impact of Such Conduct on the Effectiveness of the Alleged Conspiracy. ............ 11

15

16

        1.    Although Plaintiffs' Experts Acknowledge that the Existence of Certain Economic Behavior by the Alleged Cartel Members Could Reduce the Effectiveness of the Alleged Conspiracy, They Ignore Evidence of such Conduct by SDI. ........................................................... 12

17

18

19

        2.    Because Plaintiffs Have the Burden of Proving Both the Fact and Measure of Impact, Professor Rubinfeld Was Not Required to Conduct an Independent  Quantitative Analysis of Impact........................ 16

20

IV. CONCLUSION ............................................................................................................. 19

21

22

23

24

25

26

27

28

SMRH:435590041.7

SDI's Opp. to Plfs' Mot. to Exclude Certain
Opinions of Daniel L. Rubinfeld

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Federal Cases</u>

*ATA Airlines, Inc. v. Fed. Exp. Corp.*
  665 F.3d 882 (7th Cir. 2011) ................................................................. 2

*Bible v. Ryan*
  571 F.3d 860 (9th Cir. 2009) ............................................................... 17

*Cascade Health Solutions v. PeaceHealth*
  515 F.3d 883 (9th Cir. 2008) ................................................................. 2

*Concord Boat Corp. v. Brunswick Corp.*
  207 F.3d 1039 (8th Cir. 2000) ................................................... 3, 14, 16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
  509 U.S. 579 (1993) ......................................................................... 4, 9

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*
  2006 WL 1390416 (N.D. Cal. May 18, 2006) ....................................... 2

*Guardian Pipeline, LLC v. 950.80 Acres of Land*
  525 F.3d 554 (7th Cir. 2008) ................................................................. 2

*Judge v. Quinn*
  612 F.3d 537 (7th Cir. 2010) ................................................................. 1

*Kumho Tire v. Carmichael*
  526 U.S. 137 (1999) .................................................................... 3, 9, 11

*Larson v. Kempker*
  414 F.3d 936 (8th Cir. 2005) ..................................................... 3, 4, 8, 14

*Malaney v. UAL Corp.*
  2010 WL 3790296 (N.D. Cal. Sept. 27, 2010), *aff'd*, 434 F. App'x 620 (9th Cir. 2011) ......... 2

*Monsanto Co. v. Scruggs*
  2004 WL 5545027 (N.D. Miss. July 6, 2004) ....................................... 2

*Morgan v. United Parcel Serv. of Am., Inc.*
  380 F.3d 459 (8th Cir. 2004) ................................................................. 2

*New York v. Kraft Gen. Foods, Inc.*
  926 F. Supp. 321 (S.D.N.Y. 1995) ........................................................ 2

*Nimely v. City of New York*
  414 F.3d 381 (2d Cir. 2005) ................................................................. 4

-ii-

*Obrey v. Johnson*
    400 F.3d 691 (9th Cir. 2005)..................................................................................... 3, 4

*In re Paoli R.R. Yard PCB Litig.*
    35 F.3d 717 (3d Cir. 1994)....................................................................................... 4, 7

*Primiano v. Cook*
    598 F.3d 558 (9th Cir. 2010).................................................................................. 4, 19

*S.M. v. J.K.*
    262 F.3d 914 (9th Cir. 2001)....................................................................................... 17

*In re Scrap Metal Antitrust Litigation*
    527 F.3d 517 (6th Cir. 2008)...................................................................................... 4, 8

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
    2010 WL 5071694 (N.D. Cal. Dec. 7, 2010) ......................................... 3, 7, 14, 15

*Super. Bev. Co. v. Owens-Illinois, Inc.*
    1987 WL 9901 (N.D. Ill. Jan. 30, 1987) ..................................................................... 2

*In re Titanium Dioxide Antitrust Litig.*
    2013 WL 1855980 (D. Md. May 5, 2013) ........................................................... 14, 17

*Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*
    959 F.2d 468 (3d Cir. 1992)........................................................................................... 2

*U.S. v. Garcia-Guizar*
    160 F.3d 511 (9th Cir. 1998)....................................................................................... 17

*United States v. Stoterau*
    524 F.3d 988 (9th Cir. 2008)......................................................................................... 1

*Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*
    153 F. Supp. 2d 1231 (D. Colo. 2001) ......................................................................... 2

*Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*
    216 F. Supp. 2d 1188 (D. Colo. 2002), *aff'd*, 342 F.3d 1298 (Fed. Cir. 2003).......................... 2

State: Statutes, Rules, Regulations, Constitutional Provisions

Rule 702 ................................................................................................................................ 4

Other Authorities

Damodar N. Gujarati & Dawn C. Porter, BASIC ECONOMETRICS
    (5th ed. McGraw Hill 2009), at 20 .......................................................................... 18

Daniel L. Rubinfeld, Reference Guide on Multiple Regression, in REFERENCE MANUAL ON
    SCIENTIFIC EVIDENCE, at 310 (3d ed. 2011) ........................................................ 18

SDI's Opp. to Plfs' Mot. to Exclude Certain
Opinions of Daniel L. Rubinfeld

# I.
## INTRODUCTION

Certain Plaintiffs have moved to exclude "portions of the testimony of SDI's[1] designated expert, Daniel L. Rubinfeld." Motion at 7. More specifically, they seek to exclude what they argue are Professor Rubinfeld's (1) "interpretation" of allegedly "plain and unambiguous terms of SDI's guilty plea," and (2) "speculative testimony about potential impact of SDI's conduct on prices and output of CRTs sold to U.S. customers." *Id.* To be clear, Plaintiffs do not challenge the bulk of Professor Rubinfeld's testimony, including testimony related to the effectiveness of the alleged cartel as a whole. To the contrary, they expressly note that "[a]lthough Dr. Rubinfeld also intends to provide additional opinions at trial, ***including opinions regarding the effectiveness of the alleged conspiracy***, those opinions are not at issue in this motion." *Id.* at 8 n.1 (emphasis added).[2] Neither do Plaintiffs challenge Professor Rubinfeld's qualification as an expert economist in light of the many cases in which courts have recognized Professor Rubinfeld's expertise and rejected contrary arguments.[3] Instead, Plaintiffs seek to challenge isolated portions of his testimony divorced from their context and then mischaracterize his opinions.

---

[1] "SDI" collectively refers to Defendants SDI collectively refers to Defendants Samsung SDI America, Inc., Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Sdn. Bhd., Samsung SDI Mexico S.A. De C.V., Samsung SDI Brasil Ltda., Shenzen Samsung SDI Co., Ltd. and Tianjin Samsung SDI Co., Ltd.

[2] In a footnote, Dell Plaintiffs assert that to the extent Professor Rubinfeld intends to offer opinions related to CPTs in Dell's case, which involves CDTs, those opinions should be excluded. Motion at 10 n.2. First, this is not a proper motion, as it provides no context or authority to permit the Court to evaluate Dell's basis for this motion, made in a mere footnote. *United States v. Stoterau*, 524 F.3d 988, 1003 n.7 (9th Cir. 2008) (general contentions "mentioned only in passing, and … unsupported by meaningful argument[] … are waived."); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (internal quotation marks and citation omitted). Second, what evidence SDI will put on (including expert testimony) in Dell's case is going to depend, in part, on how Dell presents its case. For example, to the extent that Dell relies on CPT-related conduct or evidence, SDI reserves the right to respond with appropriate expert testimony and other evidence, including with respect to CPTs.

[3] The following are examples of cases recognizing Professor Rubinfeld's qualification and/or rejecting motions to exclude his testimony:

---

-1-

1   ***First***, focusing on a six-paragraph discussion of the plea in the "Factual Background"

2   section of Professor Rubinfeld's report, they attack Professor Rubinfeld's view that the plea is

3   more "limited" in scope than Plaintiffs' broad conspiracy claims.   *See Motion at 12-16.*  Professor

4   Rubinfeld noted that the plea:  (i) covers only color display tubes ("CDTs") but not color picture

5   tubes ("CPTs"), (ii) encompasses a smaller volume of affected commerce, and (iii) involves a

6   shorter "conspiracy" period than alleged by Plaintiffs.[4]  Plaintiffs also challenge Professor

7   Rubinfeld's conclusion that, in light of its more limited scope, the plea ***itself*** does not support

8   Plaintiffs' broad claims of a single global conspiracy to fix the prices and production of both

9   CDTs and CPTs over a 12-year period.

10       Plaintiffs contend that Professor Rubinfeld lacks "scientific, technical or other specialized

11   knowledge" to make these observations or draw any inferences based on his understanding of the

12   plea's terms.  Motion at 12.  Plaintiffs, however, fail to mention the critical aspect of Professor

- ***Courts holding that Professor Rubinfeld is qualified as an expert and that his testimony is persuasive and reliable***:  *Malaney v. UAL Corp.*, 2010 WL 3790296, at *11 (N.D. Cal. Sept. 27, 2010), *aff'd*, 434 F. App'x 620 (9th Cir. 2011); *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 216 F. Supp. 2d 1188, 1201 (D. Colo. 2002), *aff'd*, 342 F.3d 1298 (Fed. Cir. 2003); *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 153 F. Supp. 2d 1231, 1245 (D. Colo. 2001); *New York v. Kraft Gen. Foods, Inc.*, 926 F. Supp. 321, 343 (S.D.N.Y. 1995).

- ***Courts denying Daubert challenges to Rubinfeld***:  *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 WL 1390416 (N.D. Cal. May 18, 2006); *Monsanto Co. v. Scruggs*, 2004 WL 5545027 (N.D. Miss. July 6, 2004).

- ***Courts citing to Professor Rubinfeld's publications as authority***:  *ATA Airlines, Inc. v. Fed. Exp. Corp.*, 665 F.3d 882, 889-90 (7th Cir. 2011); *Guardian Pipeline, LLC v. 950.80 Acres of Land*, 525 F.3d 554, 559 (7th Cir. 2008); *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 900 (9th Cir. 2008); *Morgan v. United Parcel Serv. of Am., Inc.*, 380 F.3d 459, 466 (8th Cir. 2004); *Town Sound & Custom Tops, Inc. v. Chrysler Motors Corp.*, 959 F.2d 468, 489 (3d Cir. 1992).

- ***Court selecting Selected Rubinfeld as court-appointed expert***:  *Super. Bev. Co. v. Owens-Illinois, Inc.*, 1987 WL 9901 (N.D. Ill. Jan. 30, 1987).

[4] Decl. of Debra D. Bernstein i/s/o Plfs' Mot. to Partially Exclude Certain Ops. and Expert Testimony of Daniel L. Rubinfeld ("Bernstein Decl."), previously filed on 12/5/14, Dkt. # 3176-1, Ex. A, Expert Report of Daniel L. Rubinfeld dated Aug. 5, 2014 ("Rubinfeld Report") at 11-12.

1    Rubinfeld's expertise:  as a former Deputy Assistant Attorney General of the U.S. Department of

2    Justice ("DOJ") Antitrust Division, he served as the Antitrust Division's Chief Economist, and

3    was centrally  involved in the economic analysis of cartel behavior and cartel prosecution.  That

4    experience provides Professor Rubinfeld with ample background in understanding the plea's

5    terms, as does his expertise in economic theory.  *Kumho Tire v. Carmichael*, 526 U.S. 137, 156

6    (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based

7    on extensive and specialized experience.").  More importantly, neither the factual basis nor the

8    correctness of an expert's opinion is an appropriate ground for exclusion.  *See, e.g.*, *Larson v.*

9    *Kempker*, 414 F.3d 936, 941 (8th Cir. 2005); *In re Static Random Access Memory (SRAM)*

10   *Antitrust Litig.*, 2010 WL 5071694, *4 (N.D. Cal. Dec. 7, 2010).  As demonstrated below,

11   Professor Rubinfeld's testimony has ample foundation to meet the "flexible" standard for

12   admissibility.  *Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005).

13          ***Second***, while stating that their Motion does not target Professor Rubinfeld's "additional

14   opinions at trial, including opinions regarding the effectiveness of the alleged conspiracy," Motion

15   at 8 n.11, Plaintiffs nonetheless take issue with Professor Rubinfeld's opinions analyzing the

16   "impact of SDI's conduct on prices to U.S. customers," *id.* at 9.  But, as Plaintiffs' own expert

17   indicates, ███████████████████████████████████████████████████████████████████ .

18   Accordingly, many – if not all – of the factors that tend to undermine the claimed impact of SDI's

19   conduct on prices of CRTs sold to U.S. customers also would tend to undermine the "effectiveness

20   of the alleged conspiracy" as a whole.  Plaintiffs' argument that Professor Rubinfeld needed to

21   perform a quantitative analysis of the "measure" of any impact on Plaintiffs misapprehends both

22   the nature of Professor Rubinfeld's testimony, which ***responds*** to their experts' incomplete

23   affirmative analyses, and the burden of proof with respect to both the existence and measure of

24   any impact in this case, which lies with Plaintiffs.  *Concord Boat Corp. v. Brunswick Corp.*, 207

25   F.3d 1039, 1055, 1058 (8th Cir. 2000) (burden of proving causation and damages rests on

26   plaintiff).

27          For the reasons that follow, and because Plaintiffs' Motion lacks merit as to both

28   categories of testimony they seek to exclude, the Court should deny the Motion.

## II.
## LEGAL STANDARDS

"[Federal Rule of Evidence] 702 embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005).  And, the inquiry is a "flexible one," where even "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993)); *see also Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005) (Rule 702 standard is "flexible").  Thus, "[r]ejection of expert testimony is the exception rather than the rule."  Advisory Committee Notes to the 2000 Amendments to Fed. R. Evid. 702.

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Larson v. Kempker*, 414 F.3d 936, 941 (8th Cir. 2005).  Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking" expert evidence.  *Daubert* 509 U.S. at 596.

Importantly, a party responding to a motion to exclude need not show that their experts' testimony is correct or even persuasive, only that it is sufficiently relevant and reliable that it may assist the jury.  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994); *see also In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529-30 (6th Cir. 2008) ("The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation.").

## III.
## ARGUMENT

**A.    Professor Rubinfeld's Testimony Related to SDI's Plea Rests on Ample Foundation to be Admissible, Notwithstanding Plaintiffs' Mischaracterizations of His Opinions.**

It is critical to understand at the outset that, Professor Rubinfeld has ***not*** "opined" on what Plaintiffs call "unambiguous" and "plain" language of the plea, nor has he attempted to "narrow"

-4-

1  the scope of the plea, as they claim.

2        As with any economic expert, Professor Rubinfeld began his economic analysis with his

3  understanding of the factual underpinnings of the case – one of which was SDI's guilty plea – and

4  what he understood to be the scope of the charges to which SDI pled guilty versus Plaintiffs'

5  broad liability, impact and damages claims.[5]  It is undisputed that Plaintiffs intend to rely heavily

6  on SDI's plea in an effort to establish their liability and impact case.  *See, e.g.*, Motion at 13

7  (challenging his opinion that "SDI's Plea does not support plaintiffs' allegations of a broader

8  conspiracy…"); *see also id.* at 17 (citing to SDI's plea related to ***CDTs***, and claiming, "The

9  question before the jury is not whether SDI engaged in price-fixing" even though Plaintiffs'

10  claims, at a minimum, also involve CPT products not the subject of SDI's plea).  Put simply,

11  Professor Rubinfeld would have been remiss to overlook the plea and would have been attacked

12  on that basis if he had done so.

13        **1.    The Plea's Monitor Tube Limitation**

14        Indeed, it is critical to understand how the plea fits into this case.  Plaintiffs allege a wide-

15  ranging global conspiracy to fix the prices and output of both CDTs and CPTs, of all sizes and

16  types, over a 12-year period.[6]  In contrast, SDI's plea covers ***only*** CDTs.  The plea refers to no

17  wrongdoing by SDI in connection with CPTs, and Plaintiffs point to no language in the plea to the

18  contrary – this, despite the fact that the DOJ's investigation in fact encompassed both CDTs and

19

20  _____

21  [5] Bernstein Decl., Ex. A, Rubinfeld Report at 11- 12.

22  [6] *See, e.g.*, Compucom First Amended Complaint, Dkt. No. 1975 (Oct. 3, 2013) at ¶¶ 1-2, Dell
    First Amended Complaint, Dkt. No. 1726 (June 10, 2013) at ¶¶ 1,3, Sharp Second Amended

23  Complaint, Dkt. No. 2621 (June 3, 2013) at ¶¶ 2-3,  Electrograph Second Amended Complaint,
    Dkt. No. 1976 (Oct. 3, 2013) at ¶1-2, Interbond First Amended Complaint, Dkt. No. 1974 (Oct. 3,

24  2013) at ¶¶ 1-2, Office Depot First Amended Complaint, Dkt. No. 1977 (Oct. 3, 2013) at ¶¶ 1-2,
    P.C. Richard, Marta Cooperative, ABC Appliance's First Amended Complaint, Dkt. No. 1979

25  (Oct. 10, 2013) at ¶¶ 1-2, Sears, Kmart Second Amended Complaint, Dkt. No. 1973 (Oct. 3, 2013)
    at ¶1, Circuit City First Amended Complaint, Dkt. No. 1972 (Oct. 3, 2013) at ¶¶1-2, Target's

26  Second Amended Complaint, Dkt. No. 1981 (Oct. 3, 2013) at ¶ 1, Tech Data First Amended
    Complaint, Dkt. No. 1911 (Sept. 9, 2013) at ¶¶ 1-2.

27

28

1    CPTs.[7]  Their own experts – Drs. Rao, Elzinga, and Netz – ████████████████████

2    ████.[8]  Moreover, the only dates the plea specifically references as the beginning and ending

3    dates of the conspiracy covered by the plea are January 1997 and March 2006.[9]  Furthermore, in

4    contrast to the billions of dollars in single damages Plaintiffs collectively claim to have suffered

5    (implying even a larger volume of affected U.S. commerce),[10] SDI's plea refers to "approximately

6    $89 million" in total affected CDT sales by SDI (as opposed to damages) directly to customers in

7    the United States.[11]  Setting aside the factual foundation for the specific sales figure referenced in

8    the plea, that figure nowhere compares to the billions of dollars in sales plaintiffs claim were

9    affected by the alleged conspiracy.

10

11    _____

12    [7] Bernstein Decl., Ex. B, SDI Amended Plea Agmt, ¶ 12 (referring to "the current federal
      investigation of violations of federal antitrust and related criminal laws involving manufacture or
13    sale of CDTs and CPTs in the United States and elsewhere").

14    [8] Decl. of Mona Solouki i/s/o SDI's Opp. to Plfs' Mot. to Partially Exclude Certain Ops. and
      Expert Testimony of Daniel L. Rubinfeld ("Solouki Decl."), Ex. A, Expert Report of Mohan Rao,
15    Ph.D. dated April 15, 2014 ("Rao Report"), at 7
      ███████████████████████████████████████ id., Ex. B, Expert Report of Kenneth G.
16    Elzinga dated April 15, 2014 ("Elzinga Report"), at 54 █████████████████████████
      ██████████████████ id., Ex. C, Expert Report of Janet S.
17    Netz, Ph.D. dated April 15, 2014 ("Netz Report"), at 4 (██████████████████████████
18    ██████████████████████).

19    [9] Bernstein Decl., Ex. B, SDI Amended Plea Agmt, ¶ 4.

20    [10] With respect to ABC/MARTA/PC Richard, Best Buy, Circuit City, CompuCom, Costco,
      Electrograph, Interbond, Kmart/Sears, Office Depot, Target, TechData, Tweeter, and Viewsonic,
21    Dr. Frankel ████████████████████████████████████████████████████████████████████
      ████████████████████████████████████████████ Solouki Decl., Ex. D, Exhibit 1 to Rebuttal Reports of
22    Alan S. Frankel dated Sept. 26, 2014.  According to Dr. Rao, ████████████████████████
23    ████████████████████████████████████████████████████████ Solouki Decl., Ex.
      A, Rao Report, at 4. ███████████████████████████████████████
24    ██████████████████████ Id.  Dr. Hausman estimated that "██████████████████████████
25    ████████████████████████ Solouki Decl., Ex. E, Supplemental Expert Report
      of Jerry A. Hausman dated July 3, 2014, at 4.
26

27    [11] Bernstein Decl., Ex. B at ¶4(d); Motion at 12.

28

-6-

1    Under these circumstances, Professor Rubinfeld's observation that SDI's plea is "limited"

2    in its scope as compared to the massive scope of Plaintiffs' claims is far from surprising; it is

3    indeed the only fair conclusion on the facts.  More importantly, this unremarkable conclusion in

4    no way "narrows" the plea's supposed "plain" and "unambiguous" language through subjective

5    "interpretation," as Plaintiffs claim.  It simply reflects Professor Rubinfeld's understanding of the

6    plea's terms as compared with Plaintiffs' broad claims.  If they contend that this opinion is

7    "incorrect" then their remedy is cross-examination, not exclusion.  *Paoli R.R. Yard PCB Litig.*, 35

8    F.3d at 744 (test for exclusion of expert testimony is not "correctness"); *SRAM*, 2010 WL

9    5071694, at *4.

10          **2.    *The Plea's Limited Period.***

11    Plaintiffs take issue with Professor Rubinfeld's understanding of the plea's conspiracy

12    period as encompassing January 1997 through March 2006, as compared to the twelve-year period

13    they allege.[12]  *See* Motion at 9, 12.  Yet Dell's own expert, ██████████████████████████

14    ███████████████████████████████████████████████████████████████████████████████

15    ██████████[13]  Dr. Rao further explains, ████████████████████████████████████████

16    ███████████████████████████████████████████████████████████████████████████████

17    ███████████████████████████████████████████████████████████████

18    ████████████████████████████████████████████████████████

19    ██████████████████████████████████████████████

20    Other Plaintiff experts' views of the "conspiracy" period also comports with Professor

21    Rubinfeld's reading of SDI's plea.  For example, Professor Hausman has concluded that ████

22    _____

23    [12] Bernstein Decl., Ex. A, Rubinfeld Report, at 11-12, ¶ 33 ("The plea further provides that SDI

24    reached agreements with certain unnamed CDT manufacturers ***during the time period January 1997 through March 2006*** ('Plea Period')…." (emphasis added).

25    [13] Solouki Decl., Ex. A, Rao Report, at 7 (emphasis added).  In fact, Professor Rubinfeld's claimed

26    "interpretation" of the "conspiracy period" covered by the plea is broader than that espoused by Dell's expert, Dr. Rao.

27    [14] *Id.* at 22.

28

1 ██████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ██████████████████████████████[16]

5    Far from relying on unsupported speculation, Professor Rubinfeld's understanding of the

6 plea language is in fact consistent with what other experts – including plaintiffs' experts – have

7 said about the plea. *In re Scrap Metal*, 527 F. 3d at 529-530 ("The task for the district court in

8 deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather

9 to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported

10 speculation."). If Plaintiffs now disagree with Professor Rubinfeld's conclusion – despite some of

11 their own experts' apparent agreement – they can present contrary evidence at trial. *Larson v.*

12 *Kempker*, 414 F.3d 936, 941 (8th Cir. 2005) ("As a general rule, the factual basis of an expert

13 opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing

14 party to examine the factual basis for the opinion in cross-examination.").

15    ***3.    The Civil-Criminal Distinction.***

16    Plaintiffs also challenge Professor Rubinfeld's conclusion that the plea does not support

17 their broader conspiracy claims by arguing that his analysis and understanding of the plea's scope

18 ignore the differences between criminal and civil cases and the lower burden of proof governing

19 civil suits like theirs, or one that the DOJ could have brought. Motion at 13. That the DOJ ***could***

20 ***have*** brought civil claims beyond those encompassed by the plea is beside the point and irrelevant

21 to whether the ***plea*** could be used to support such claims. *See* Motion at 13. The DOJ did not, in

22 fact, bring any such claims, and the plea does not cover them. Plaintiffs' additional arguments that

23 their civil claims can be broader than the plea and are governed by a lower standard of proof also

24 miss the mark. *Id.* at 13-14. Professor Rubinfeld never claimed that Plaintiffs' civil claims are

25 

---

26 [15] Solouki Decl., Ex. F, Rebuttal Report of Jerry A. Hausman dated Sept. 26, 2014, at 14 (emphasis added).

27 [16] *Id.*

28

governed by the burden of proof governing criminal cases.  Neither has Professor Rubinfeld

opined on whether Plaintiffs can bring broader or different claims than those covered by the plea.

He merely observed that, based on his understanding of the factual underpinnings of the plea, the

***plea*** "does not support plaintiffs' allegations of a broader conspiracy."[17]

Contrary to Plaintiffs' contention, as an economist and a former Assistant Deputy Attorney

General with the Antitrust Division, Professor Rubinfeld certainly is well-qualified to opine on the

scope of the Plaintiffs' conspiracy claims, and whether those claims comport with the factual basis

of the charges stated in the plea or the conspiracy theory stated therein.  *Kumho Tire*, 526 U.S. at

156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on

extensive and specialized experience.").  If they are concerned with the disparity in the burden of

proof, Plaintiffs can cross examine Professor Rubinfeld on this point, as they did in his

deposition[18].  *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means

of attacking" expert evidence).

### 4.    *Professor Rubinfeld Provides an Analysis of "Billed to" U.S. Sales Not Only for CDTs but also for CPTs.*

Because the plea is silent with respect to the identity of the U.S. customers affected by the

conduct referenced in the plea, Professor Rubinfeld has undertaken an analysis of the data to allow

the jury to understand what customers and sales were implicated by the plea.  To be clear,

Plaintiffs do not claim that Professor Rubinfeld misrepresented SDI's sales data, or that his actual

analysis of the data is in some way erroneous.  Instead, Plaintiffs incorrectly assert that Professor

Rubinfeld "ignore[s] CDT sales that were billed to, but not shipped to, the United States" and

allegedly limited his analysis to ███████████████.  Motion at 14-16.  Not so.

In paragraph 37 of his report, Professor Rubinfeld identified ████████████████████

████████████████████████████████████████████████  He also separately

---

[17] Bernstein Decl., Ex. A, ¶ 34 at 12.

[18] Bernstein Decl., Ex. D, September 8, 2014 Daniel L. Rubinfeld Deposition Transcript ("Rubinfeld Tr."), at 151.

SDI's Opp. to Plfs' Mot. to Exclude Certain
Opinions of Daniel L. Rubinfeld

1    identified SDI's "billed or shipped to" U.S. sales.  Indeed, whether "billed to, but not shipped to,

2    United States" sales can be included in plaintiffs' damages is a disputed issue under the Foreign

3    Trade Antitrust Improvement Act ("FTAIA").  Should the Court or the jury – as appropriate –

4    ultimately side with Plaintiffs, Professor Rubinfeld has provided the necessary analysis of SDI's

5    "billed or shipped to U.S." sales, which also identify the relevant additional customers.

6            In fact, Plaintiffs actually cite to Exhibit 5A to Professor Rubinfeld's expert report to show

7    that SDI's "billed or shipped to" U.S. sales included other customers, including ████████

8    ████████████████████████████  Motion at 15.  In addition to the exhibit they cite,

9    Professor Rubinfeld's report contains an analysis of SDI's "billed or shipped to the U.S. sales."[19]

10   That analysis includes an examination of SDI's sales data, which indicates ████████████

11   ██████████████████████████████████████████████████

12   ████████  – which Plaintiffs actually parrot in their Motion, although they fail to expressly

13   attribute it to Professor Rubinfeld.  Motion at 15.  Plaintiffs may not challenge an isolated

14   paragraph from Professor Rubinfeld's report.  His testimony must be evaluated based on the

15   totality of the opinions he proffers.

16       **5.    Professor Rubinfeld Appropriately Relied on His Specialized Experience and
             Knowledge of the Division's Policies Related to Pleas.**

17           As a former Deputy Assistant Attorney General, Professor Rubinfeld's conclusions based

18   on the factual record (including the plea's terms) are informed not only by economic theory and

19   his experience as an economist, but also by his experience at the Antitrust Division.  In his role as

20   a Deputy Assistant Attorney General with the Antitrust Division, he "was involved in discussions

21   of prosecutions of criminal [antitrust] cases,"[20] and possessed personal knowledge of the Antitrust

22   Division's long-standing policy that the "plea should reflect the totality of a defendant's

23   conduct."[21]

24   _____

25   [19] Bernstein Decl., Ex. A, ¶¶ 27-31.

26   [20] Bernstein Decl., Ex. D, at 134:19-20.

27   [21] Bernstein Decl., Ex. A, ¶ 34 at 12.

28

-10-

Plaintiffs nonetheless argue that Professor Rubinfeld had no "scientific, technical, or other specialized knowledge" regarding plea agreements.  Motion at 12.  This is certainly not true in light of his experience at the DOJ and involvement in DOJ's criminal sentencing process related to fines, which Plaintiffs fail to mention in their Motion.  *Kumho Tire*, 526 U.S. at 155  ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").  As Professor Rubinfeld has testified,

> I'm very comfortable for purposes – for the purposes for which I interpreted this agreement because of the experience I've had at DOJ. So if your question is, you know, is this something I spend my career doing primarily? No.  But I have been involved in enough discussions of plea agreements, and I'm very comfortable with the testimony I gave.[22]

Professor Rubinfeld was not required somehow to divorce his experience – directly on point to the issue – from his opinions.  Plaintiffs cannot have it both ways – attempt to rely on the plea for their broad claims, while at the same time avoiding any testimony shedding light on its scope and proper place in the case.  Their argument that the plea's terms are "plain" and "unambiguous" is simply incorrect.  As already demonstrated, the plea leaves open several important issues, including the identity of the U.S. customers covered by the plea, and the magnitude of SDI's actual CPT and CDT sales to those customers, setting aside what proportion of those sales allegedly may have been "affected."

**B.     Professor Rubinfeld's Opinions Analyzing SDI's Conduct Are Appropriate Responses to Plaintiffs' Experts' Affirmative Analyses that Ignore the Impact of Such Conduct on the Effectiveness of the Alleged Conspiracy.**

Plaintiffs also attack Professor Rubinfeld's opinions regarding the factors that likely limited the impact of SDI's alleged conduct, claiming: (1) he improperly analyzes only SDI's conduct, as opposed to the conduct of all alleged conspirators, by basing his opinions on his review of only "a subset of documents that were supplied by SDI's attorneys"; and (2) offers "speculative" opinions regarding the "likely impact" of SDI's conduct without offering his own

---

[22] Bernstein Decl., Ex. D, at 135:20-136:1.

independent analysis of "the measure" of any potential impact.  Motion at 16-19.  These arguments misapprehend the nature and purpose of Professor Rubinfeld's opinions and are uniquely suited to cross-examination, not exclusion.

       **1.**     **_Although Plaintiffs' Experts Acknowledge that the Existence of Certain Economic Behavior by the Alleged Cartel Members Could Reduce the Effectiveness of the Alleged Conspiracy, They Ignore Evidence of such Conduct by SDI._**

      There is no dispute that Professor Rubinfeld is entitled to other opinions regarding the effectiveness of the alleged conspiracy.  Motion at 8 n.1.  Moreover, Plaintiffs agree ███████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████ ██ ████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████[24]

Therefore, factors that lessened the impact of SDI's conduct on prices and output – such as, for example, SDI's deviations from the alleged cartel agreements,[25] increased market share,[26] and increased production capacity,[27] – all would tend to also lessen the "effectiveness of the alleged cartel."

      Although Plaintiffs' own experts acknowledge the economic factors that could destabilize a cartel (and thus reduce its effectiveness), they did not analyze record evidence demonstrating the existence of such factors in the CRT industry.  For example, in his opening expert report, Dr. Elzinga ██████████████████████████████████████████████████

---

[23] Solouki Decl., Ex. G, Expert Sur-rebuttal Report of Daniel L. Rubinfeld dated Nov. 6, 2014 ("Rubinfeld Sur-Rebuttal"), ¶ 36 at 16; Ex. B, Exhibit 2 to Elzinga Report.

[24] *Id.* at ¶ 37 at 16 & Exhibit 4.

[25] Bernstein Decl., Ex. A, ¶¶ 43-53 at 14-22.

[26] Bernstein Decl., Ex. A, ¶¶ 56-58 at 23-24 & Exhibit 8.

[27] Bernstein Decl., Ex. A, ¶¶ 59-60 at 24 & Exhibits 9A, 9B.



28.

Moreover, Dr. Elzinga admits in his deposition that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮.[29]  Yet, completely absent from Dr. Elzinga's analysis was any reference to or analysis of record evidence of cheating in the CRT industry, particularly by SDI.  In fact, the first time he addressed the issue at all – albeit briefly – was in his *rebuttal* report *after* Professor Rubinfeld (and other experts) identified this failing in Dr. Elzinga's analysis.[30]

Professor Hausman similarly admits, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[32]
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ At his deposition,

---

[28] Solouki Decl., Ex. B, Elzinga Report, at 20 (emphasis added).

[29] Solouki Decl., Ex. H, July 17, 2014 Kenneth Elzinga Deposition Transcript ("Elzinga Tr."), at 228; *see also id.* at 231 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮.

[30] *See, e.g.*, Solouki Decl., Ex. I, Expert Rebuttal Report of Dr. Kenneth G. Elzinga dated September 26, 2014, at 124-128.

[31] Solouki Decl., Ex. J, Expert Report of Jerry A. Hausman dated April 15, 2014, ¶ 21 at 11.

[32] *Id.*

-13-

1 ███████████████████████████████████

2 ███████████████████████████████████

3 █████████████████████████

4      Professor Rubinfeld simply filled the hole in Plaintiffs' experts' analyses by examining

5 what SDI actually did.  His testimony, therefore, is both relevant and admissible to rebut

6 Plaintiffs' experts' incomplete opinions of widespread impact in light of their failure to analyze

7 evidence of cheating, shifting market shares and SDI's capacity expansions – all of which they

8 admit could destabilize a cartel.

9      Moreover, Professor Rubinfeld was not required to march through all of the evidence of

10 record to show the failings of Plaintiffs' experts' affirmative analyses.  He needed only to illustrate

11 the types of evidence and economic factors that Plaintiffs' experts ignored which, among other

12 things, bear on the credibility and weight of their opinions – not lay out an affirmative case

13 disproving Plaintiffs' impact claims.  *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039,

14 1055, 1058 (8th Cir. 2000) ("Antitrust plaintiffs must prove an antitrust violation …. Antitrust

15 injury, causation, and damages all are necessary parts of the proof").  If Plaintiffs take issue with

16 Professor Rubinfeld's extent of evidentiary review, their remedy is cross-examination, not

17 exclusion.  As one court aptly put it:

18     [T]he extent to which an expert considered the entirety of the evidence in the case

19     is a matter for cross-examination … In this case, where there are over fourteen

20     million pages of documents in the discovery record, the experts cannot be expected

21     to review all of the materials. If important portions of the record were overlooked,

22     then the [opposing party] may address that issue at trial.

23 *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980, at *9 (D. Md. May 5, 2013).

24 Similarly, if they contend his analysis is incorrect, they can attempt to demonstrate otherwise on

25 _____

26 [33] Solouki Decl., Ex. K, July 23, 2014 Jerry Hausman Deposition Transcript ("Hausman Tr."), at 211:16-22.

27 [34] *Id.* at 211:2-5.

28

-14-

SDI's Opp. to Plfs' Mot. to Exclude Certain
Opinions of Daniel L. Rubinfeld

1   cross-examination, or by presentation of contrary evidence.  *SRAM,* 2010 WL 5071694, at *4 (test

2   for exclusion is not "correctness")

3        Finally, their argument that Professor Rubinfeld selectively reviewed documents only

4   provided by counsel that allegedly related only to SDI is both irrelevant to their motion, and

5   wrong.  "As a general rule, the factual basis of an expert opinion goes to the credibility of the

6   testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for

7   the opinion in cross-examination."  *Larson v. Kempker*, 414 F.3d 936, 941 (8th Cir. 2005).  This,

8   Plaintiffs can do at trial.  Moreover, Professor Rubinfeld testified that he and his staff had broad

9   access to the discovery record in this case, although he worked with counsel and staff to determine

10  the universe of documents he believed to be helpful.[35]  Professor Rubinfeld never testified that

11  counsel dictated the documents to which he was required to limit his review and analysis.  Neither

12  did he testify that he *exclusively* reviewed SDI-related documents. To the extent Plaintiffs take

13  issue with counsel's involvement, it is not clear how else Plaintiffs would have expected Professor

14  Rubinfeld to have gained access to the confidential discovery material, other than through

15  involvement by counsel.

16       Importantly, Professor Rubinfeld was not required to list or disclose any of the documents

17  that he reviewed on which he did not in fact rely in forming his expert opinions.  Stipulation and

18  Order Regarding Procedures Governing Expert Discovery, Dkt. # 583 at 1 (requiring disclosure of

19  only those materials "relied upon by the expert witness in forming the expert witness's opinions").

20  As he testified, "I presume there may be other documents that were not listed.  But if I didn't rely

21  on it, it's not something I would remember."[36]  Nonetheless, in response to a specific and direct

22  question from counsel asking, "Did you also review all the documents cited in [Dr. Elzinga's]

23  report?" he confirmed that he did:  "Yes, I believe I did review them all. Certainly a large number

24  of them. I can't swear it's all of them. But I think the answer is yes."[37]  Plaintiffs did not ask

25  _____

    [35] Bernstein Decl., Ex. D, Rubinfeld Tr. at 21:16-22.

26
    [36] *Id.* at 22:9-12.

27
    [37] *Id.* at 146:17-24.

28

-15-

whether Professor Rubinfeld also reviewed documents relied on by other of Plaintiffs' experts.

**2. Because Plaintiffs Have the Burden of Proving Both the Fact and Measure of Impact, Professor Rubinfeld Was Not Required to Conduct an Independent Quantitative Analysis of Impact.**

Plaintiffs argue that Professor Rubinfeld's testimony is "speculative," insofar as it pertains to the impact of SDI's alleged conduct, apparently because he did not quantify "any measure of overcharges."  Motion at 17-18.  Once again, Plaintiffs misapprehend both the nature of Professor Rubinfeld's testimony and the burden of proof as to both the alleged existence and "measure" of any impact, which lays squarely on them, not SDI.  *Concord Boat*, 207 F.3d at 1054.

As a responding expert, Professor Rubinfeld was not required to quantify any measure of overcharges, nor disprove Plaintiffs' claimed impact theory.  To the extent Plaintiffs' experts ignored SDI's actual economic behavior that tends to undermine Plaintiffs' impact theory, it was entirely appropriate for him to observe them and note their tendency to undermine Plaintiffs' claimed impact.  It was for Plaintiffs to ensure that their impact analysis reflected the relevant economic factors and to quantify them.

Additionally, Plaintiffs cannot claim that Professor Rubinfeld's conclusions regarding the likely effect of SDI's economic behavior is "speculative" in light of their own expert's intended testimony regarding his ███████████████████████████████████████████ ███████████████████████████████████ [38]  Despite his statement that he ███████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ■  This, also despite the fact that he simply ignores the effect of SDI's economic behavior – demonstrated by record evidence – ████████████████████████████████████. [40]  If nothing else, Plaintiffs and their experts opened

---

[38] Solouki Delc., Ex. B, Elzinga Report, at 3 (under "Assignment and Summary of Conclusions")

[39] *Id.* (emphasis added).

[40] *Id.* at 20.

1  the door for the type of testimony they now seek to exclude.  *S.M. v. J.K.*, 262 F.3d 914, 920 (9th

2  Cir. 2001) ("By introducing the evidence herself, Plaintiff opened the door to the admission of

3  further related evidence."); *see also Bible v. Ryan*, 571 F.3d 860, 871 (9th Cir. 2009) ("testimony

4  would have opened the door to other damaging evidence"); *U.S. v. Garcia-Guizar*, 160 F.3d 511

5  (9th Cir. 1998) ("where the defendant opens the door to an argument, it is fair advocacy for the

6  prosecution to enter") (internal quotation marks and citation omitted).

7          Plaintiffs also point to SDI's plea and claim that "the question before the jury is not

8  whether SDI engaged in price- fixing conspiracy or what impact SDI's individual conduct had, but

9  whether and to what extent the overall price-fixing conspiracy resulted in overcharges to

10  Plaintiffs."  Motion at 17.  To the contrary, one major disputed fact question in this case ***is*** whether

11  and to what extent SDI engaged in the conspiracy that ***Plaintiffs*** allege, as opposed to the conduct

12  covered by the plea, which ██████████████████ involved only CDTs and a shorter

13  timeframe.  *See* Section III.A.2, *supra*.  Accordingly, testimony by Professor Rubinfeld tending to

14  show that SDI's conduct is inconsistent with the type of broad collusion Plaintiffs allege is both

15  relevant and admissible.  *Titanium Dioxide*, 2013 WL 1855980, *4 (expert testimony held

16  admissible as to "whether conduct is indicative of collusion" and "whether economic indicia of

17  collusion were present during the class period.  These opinions are not determinations of purely

18  legal issues; rather, they are admissible testimony concerning mixed questions of fact and law.")

19  (internal quotation marks and citation omitted).  Similarly, whether SDI's individual conduct

20  tended to lessen the impact of the alleged conspiracy is certainly a fact issue for the jury's

21  consideration, and should have been accounted for – but was either ignored or summarily

22  dismissed – by Plaintiffs' experts in their impact analysis (both as to liability and damages).

23          Plaintiffs apparently also take issue with Professor Rubinfeld's conclusion regarding the

24  "likely" effect of SDI's conduct on prices and output – as opposed to making a more absolute

25  statement of "actual" effect.  Motion at 16.  However, even a statistical analysis does not

26

27

28

-17-

SDI's Opp. to Plfs' Mot. to Exclude Certain
                                              Opinions of Daniel L. Rubinfeld

1   necessarily imply causation.[41]  As Professor Rubinfeld has cautioned,

2        Causality cannot be inferred by data analysis alone; rather, one must infer that a

3        causal relationship exists on the basis of an underlying causal theory that explains

4        the relationship between the two variables…  Conversely, the fact that two

5        variables are correlated does not guarantee the existence of a relationship; ***it could***

6        ***be that the model—a characterization of the underlying causal theory—does not***

7        ***reflect the correct interplay among the explanatory variables.***[42]

8        Finally, Plaintiffs incorrectly claim that Professor Rubinfeld "did not study the structure

9   and conditions of the CRT industry" and failed to perform a "deeper economic analysis."  Motion

10  at 17.  To the contrary, Professor Rubinfeld does analyze the market structure of the CRT industry,

11  and the economic factors and market conditions that tend to undermine Plaintiffs' simplistic

12  "umbrella" liability and impact theory.  Professor Rubinfeld's market analysis describes the

13  economic reasons (1) why CPTs and CDTs belong in separate relevant markets and require

14  separate analyses; (2) supporting the regionalization of competition in the CPT markets; and (3)

15  distinguishing the North American CPT market, such that alleged conduct either related solely to

16  CDTs, or to CPTs sold elsewhere in the world, would not be expected to impact prices of CPTs

17  sold in North America (and vice versa).[43]  That analysis is based on an in-depth evaluation of the

18  factual record (both testimony and documents), including industry reports utilized both by industry

19  participants and ████████████████[44]  Plaintiffs are free, again, to challenge Professor

20  Rubinfeld's testimony through "cross examination, contrary evidence, and attention to the burden

---

21  [41] Solouki Decl., Ex. L, Damodar N. Gujarati & Dawn C. Porter, BASIC ECONOMETRICS (5th ed.

22  McGraw Hill 2009), at 20 ("[A] statistical relationship in itself cannot logically imply
    causation."); *see also id.* at 19 ("Although regression analysis deals with the dependence of one

23  variable on other variables, it does not necessarily imply causation.").

24  [42] Solouki Decl., Ex. M, Daniel L. Rubinfeld, Reference Guide on Multiple Regression, in

25  REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, at 310 (3d ed. 2011) (emphasis added).

26  [43] *See, e.g.*, Bernstein Decl., Ex. A, Rubinfeld Report, ¶¶ 19-28 & ¶¶ 67-90.

27  [44] *See id.*; *See also, e.g.*, Solouki Decl., Ex. G, Rubinfeld Sur-Rebuttal, at ¶¶ 18-40 (under heading
    Competition for CPT Sales in North America was Regional in Nature")

28

SDI's Opp. to Plfs' Mot. to Exclude Certain
Opinions of Daniel L. Rubinfeld

1   of proof, not exclusion." *Primiano,* 598 F.3d at 564.

2

3                                    **IV.**
                                **CONCLUSION**

4

5        Because Plaintiffs' twisted characterization of Professor Rubinfeld's opinions provides no

6   basis for excluding his highly relevant expert testimony, the Court should deny Plaintiffs' Motion.

7

8   Dated:  January 16, 2015              Respectfully submitted,

9

10                                   By:   */s/  Gary L. Halling*

11                                   SHEPPARD MULLIN RICHTER & HAMPTON LLP
                                     Gary L. Halling, Esq.
12                                   James L. McGinnis, Esq.
                                     Michael W. Scarborough, Esq.
13                                   Mona Solouki, Esq.
                                     Four Embarcadero Center, 17th Floor
14                                   San Francisco, California  94111-4106
                                      Telephone:  415-434-9100
15                                    Facsimile:  415-434-3947
                                     ghalling@sheppardmullin.com
16                                   jmcginnis@sheppardmullin.com
                                     mscarborough@sheppardmullin.com
17                                   msolouki@sheppardmullin.com

18

19                                   *Counsel for Defendants Samsung SDI Co., Ltd.,*
                                     *Samsung SDI America, Inc., Samsung SDI (Malaysia)*
20                                   *SDN. BHD., Samsung SDI Mexico S.A. de C.V.,*
                                     *Samsung SDI Brasil Ltda., Shenzen Samsung SDI Co.,*
21                                   *Ltd., and Tianjin Samsung SDI Co., Ltd.*

22

23

24

25

26

27

28

                                       -19-