DAVID L. YOHAI (pro hac vice)
ADAM C. HEMLOCK (pro hac vice)
DAVID E. YOLKUT (pro hac vice)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
E-mail: david.yohai@weil.com

JEFFREY L. KESSLER (pro hac vice)
A. PAUL VICTOR (pro hac vice)
EVA W. COLE (pro hac vice)
MOLLY M. DONOVAN (pro hac vice)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166-4193
Telephone:  (212) 294-6700
Facsimile:   (212) 294-7400
E-mail:  jkessler@winston.com

*Attorneys for Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.)*
[Additional Moving Defendants and Counsel Listed on Signature Pages]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re CATHODE RAY TUBE (CRT) <u>ANTITRUST LITIGATION</u> | Master No.:  3:07-cv-05944 SC<br>MDL No. 1917 |
| This Document Relates to: | |
| ALL INDIRECT-PURCHASER ACTIONS | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST INDIRECT PURCHASER PLAINTIFFS AND CERTAIN DIRECT ACTION PLAINTIFFS FOR LACK OF ANTITRUST INJURY AND ANTITRUST STANDING UNDER FEDERAL AND CERTAIN STATE LAWS** |
| *Electrograph Sys., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-01656; | |
| *Electrograph Sys., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05724; | |
| *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502; | |
| *Siegel v. Technicolor SA, et al.*, No. 13-cv-05261; | Date:      February 6, 2015<br>Time:      10:00 a.m.<br>Place:     Courtroom 1, 17th Floor<br>Judge:    Hon. Samuel Conti |
| *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513; | |
| *Best Buy Co., Inc., et al. v. Technicolor SA,* | |

[REDACTED] REPLY MEMO IN FURTHER SUPPORT OF MOT. FOR P. SUMM. J.
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING

MDL No. 1917
Master No. 3:07-cv-05944-SC

1    *et al.*, No. 13-cv-05264;    )

2    *Target Corp. v. Chunghwa Picture Tubes,*    )
     *Ltd., et al.*, No. 11-cv-05514;    )

3    *Target Corp. v. Technicolor SA, et al.*, No.    )

4    13-cv-05686;    )

5    *Sears, Roebuck & Co., et al. v. Chunghwa*    )
     *Picture Tubes, Ltd., et al.*, No. 11-cv-05514;    )

6    *Sears, Roebuck & Co., et al. v. Technicolor*    )

7    *SA, et al.*, No. 13-cv-05262;    )

8    *Interbond Corp. of Am. v. Hitachi, Ltd., et*    )
     *al.*, No. 11-cv-06275;    )

9    *Interbond Corp. of Am. v. Technicolor SA, et*    )

10   *al.*, No. 13-cv-05727;    )

11   *Office Depot, Inc. v. Hitachi, Ltd., et al.*, No.    )
     11-cv-06276;    )

12   *Office Depot, Inc. v. Technicolor SA, et al.*,    )

13   No. 13-cv-05726;    )

14   *CompuCom Systems, Inc. v. Hitachi, Ltd., et*    )
     *al.*, No. 11-cv-06396;    )

15   *Costco Wholesale Corp. v. Hitachi, Ltd., et*    )

16   *al.*, No. 11-cv-06397;    )

17   *Costco Wholesale Corp. v. Technicolor SA,*    )
     *et al.*, No. 13-cv-05723;    )

18   *P.C. Richard & Son Long Island Corp., et*    )

19   *al. v. Hitachi, Ltd., et al.*, No. 12-cv-02648;    )

20   *P.C. Richard & Son Long Island Corp., et*    )
     *al. v. Technicolor SA, et al.*, No. 13-cv-    )

21   05725;    )

22   *Schultze Agency Servs., LLC v. Hitachi, Ltd.,*    )

23   *et al.*, No. 12-cv-02649;    )

24   *Schultze Agency Servs., LLC v. Technicolor*    )
     *SA, et al.*, No. 13-cv-05668;    )

25   *Tech Data Corp., et al. v. Hitachi, Ltd., et*    )

26   *al.*, No. 13-cv-00157    )

27   *Viewsonic Corp. v. Chunghwa Picture*    )

28   *Tubes, Ltd,. et al.*, No. 14-cv-02510    )

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT .................................................................................................... 3

    A.   Plaintiffs Concede That They Did Not Participate in the Allegedly
Restrained Market, As Required For A Showing of Antitrust Injury ................... 3

        1.   Antitrust Injury Is a Dispositive Requirement for Antitrust Standing ........ 3

        2.   Plaintiffs' Opposition Confirms That CRT Finished Products Do
Not Share a Common Market With CRTs ................................................... 4

    B.   Plaintiffs' Interpretation of the Narrow "Inextricably Intertwined"
Exception is Contrary to Well-Established Ninth Circuit Law ............................. 7

    C.   Plaintiffs Have Failed to Rebut That Each of the 11 States Subject to
Defendants' Motion Require a Showing of Antitrust Injury ............................... 12

        1.   Iowa, Nebraska, California, Illinois and Michigan ................................... 13

        2.   New Mexico, New York, Maine, Vermont, West Virginia, and
Washington D.C. ....................................................................................... 14

III.  CONCLUSION ............................................................................................... 15

[REDACTED] REPLY MEMO IN FURTHER SUPPORT OF MOT. FOR P. SUMM. J.          MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING    Master No. 3:07-cv-05944-SC

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co of Cal.*,
190 F.3d 1051 (9th Cir. 1999).......................................................................................*passim*

*Aryeh v. Canon Bus. Solutions, Inc.*,
292 P.3d 871 (Cal. 2013) ....................................................................................... 13, 14

*Ass'n of Wash. Pub. Hosp. Districts v. Philip Morris Inc.*,
241 F.3d 696 (9th Cir. 2001).......................................................................................... 4, 8

*Associated General Contractors v. California State Council of Carpenters*,
459 U.S. 519 (1983) .................................................................................................*passim*

*Balaklaw v. Lovell*,
14 F.3d 793 (2d Cir.1994).................................................................................................. 15

*Bhan v. NME Hosp., Inc.*,
772 F. 2d 1467 (9th Cir. 1999)........................................................................................ 1, 4

*Blue Shield of Va. v. McCready*,
457 U.S. 465 (1982) ...................................................................................................... 7, 8

*Cargill, Inc. v. Monfort of Colo., Inc.*,
479 U.S. 104 (1986) ............................................................................................................ 4

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......................................................................................................... 12

*Clayworth v. Pfizer, Inc.*,
233 P.3d 1066 (Cal. 2010) ................................................................................................ 14

*In re CRT Antitrust Litig.*,
738 F. Supp. 2d 1011 (N.D. Cal. 2010) ....................................................................... 3, 12

*In re CRT Antitrust Litig.*,
911 F. Supp. 2d 857 (N.D. Cal. 2012) ................................................................................ 7

*In re CRT Antitrust Litig.*,
No. C-07-5944-SC, 2013 WL 4505701 (N.D. Cal. Aug. 21, 2013) ...............................*passim*

*In re DRAM Antitrust Litig.*,
536 F. Supp. 2d 1129 (N.D. Cal. 2008) .......................................................................*passim*

*Exhibitors' Serv., Inc. v. Am. Multi-Cinema*,
788 F.2d 574 (9th Cir. 1986)............................................................................................... 6

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009) ............................................................................ 11

*Hayes v. Cnty. of San Diego*,
658 F.3d 867 (9th Cir. 2011) ................................................................................................. 13

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) ............................................................................................................... 7

*Kanne v. Visa U.S.A., Inc.*,
723 N.W.2d 293 (Neb. 2006) ............................................................................................... 14

*Legal Econ. Evaluations, Inc. v. Metro. Life Ins. Co.*,
39 F.3d 951 (9th Cir. 1994) ................................................................................................... 6

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ........................... *passim*

*Lorenzo v. Qualcomm Inc.*,
603 F. Supp. 2d 1291 (S.D. Cal. 2009) .............................................................................. 2, 8

*Ostrofe v. H.S. Crocker Co.*,
740 F.2d 739 (9th Cir. 1984) .............................................................................................. 8, 9

*Peterson v. Visa U.S.A. Inc.*,
No. 03-8080, 2005 WL 1403761 (D.C. Super. Ct. Apr. 22, 2005) ....................................... 15

*Princeton Ins. Agency, Inc. v. Erie Ins. Co.*,
690 S.E.2d 587 (W. Va. 2009) ............................................................................................. 15

*Romero v. Philip Morris Inc.*,
2005-NMCA-035, 109 P.3d 768 (N.M. Ct. App. 2005) ....................................................... 15

*Southard v. Visa USA, Inc.*,
734 N.W.2d 192 (Iowa 2007) ............................................................................................... 14

*In re Sugar Indus. Antitrust Litig.*,
579 F.2d 13 (3d Cir. 1978) ..................................................................................................... 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 3:07-MD-01827-SI, 2011 U.S. Dist. LEXIS 140831 (N.D. Cal.  Dec. 7, 2011) ............ 11

*Toscano v. PGA Tour, Inc.*,
201 F. Supp. 2d 1106 (E.D. Cal. 2002) .................................................................................. 4

*State of California ex rel. Van de Kamp v. Texaco, Inc.*,
46 Cal. 3d 1147 (1988) ........................................................................................................ 14

*Vinci v. Waste Mgmt., Inc.*,
36 Cal. App. 4th 1811 (1995) ............................................................................................... 14

*Weil Ins. Agency, Inc. v. Mfrs. Life Ins. Co.*,
815 F. Supp. 1320 (N.D. Cal. 1992) ....................................................................................... 3

## I.    INTRODUCTION

The present motion is predicated on a fundamental deficiency in both the IPP and DAP cases:  as retailers and end-purchasers of finished products containing CRTs ("CRT Finished Products"), and not CRTs themselves, both sets of Plaintiffs have failed to show that they have suffered "antitrust injury," which is a required element of their claim under *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*").  Plaintiffs' combined Opposition concedes that neither the IPPs nor DAPs *ever* participated in the market for CRTs—the only market in this case that was the subject of alleged price-fixing.  Instead, it is undisputed that they bought *separate products* in *separate markets* at the end of a long and complex distribution and supply chain that included many other entities that directly purchased CRT tubes.  Notably, Plaintiffs' Opposition completely fails to recognize the existence of these other, more properly-situated plaintiffs, including companies that have either brought their own action or recovered as members of the Direct Purchaser Plaintiff class.

It is further undisputed that the CRT Finished Products that Plaintiffs bought are not substitutes for CRTs, and have no cross-elasticity of demand with CRTs.  Plaintiffs thus admit that the "lynchpin of Defendants' argument is . . . true."  Opp. at 13.  This admission is critical, given that decades of Ninth Circuit precedent, as well as *AGC* itself, clearly require that a plaintiff be a participant *in the allegedly restrained market* in order to show that it sustained an "antitrust injury"—which is, in and of itself, a dispositive requirement under *AGC*.  *See Bhan v. NME Hosp., Inc.*, 772 F. 2d 1467, 1470 (9th Cir. 1999) ("the injured party [must] be a participant in the *same* market as the alleged malefactors") (emphasis added); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("[p]arties whose injuries . . . are experienced in another market *do not suffer antitrust injury*") (emphasis added).

Plaintiffs instead argue that even though they are admittedly not participants in the CRT market, *See* Opp. at 1, their claims fall within a narrow exception to the market participation requirement, because the markets for stand-alone CRTs and the markets for CRT Finished Products are purportedly "woven together" and/or "inextricably intertwined."  Opp. at 12-13. Plaintiffs argue for a wildly-expansive reading of this exception to the market-participant

[REDACTED] REPLY MEMO IN FURTHER SUPPORT OF MOT. FOR P. SUMM. J.                    MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING        Master No. 3:07-cv-05944-SC

1

requirement despite well-established Ninth Circuit precedent that the exception is "narrow" and merely confers antitrust standing where "a plaintiff is the direct victim of a conspiracy, or the actual means by which the defendants' allegedly anticompetitive conduct is carried out."[1]   In short, the exception focuses on an inextricable linking of a plaintiff's *injury* with the anticompetitive conduct in question – for example, where a plaintiff is *directly* injured, or where innocent bystanders are used as pawns by a conspirator to carry out its conspiracy – but does not apply to inter-related *markets*.  Plaintiffs do not fall within either category of the exception, as they have failed to prove that they were either the "direct" victims of a conspiracy that allegedly took place in a market separated by myriad intervening companies along the distribution chain, or the "actual means" by which it was allegedly effectuated.  *See infra* pp. 9-10.  On the contrary, it is undisputed that the CRT Finished Products market was "subject to vigorous price competition." IPPs' 4th Consol. Am. Complt. ¶ 230 (Dkt. 1526).

Moreover, Plaintiffs can no longer merely rest on allegations that "slightly" favored standing at the motion to dismiss stage; they must now come forward with evidence to show that they have satisfied the narrow exception beyond the "simple invocation of the phrase 'inextricably intertwined.'"  *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1301 (S.D. Cal. 2009).   They have failed.  Among other deficiencies, Plaintiffs cite to no evidence from their experts, or anyone else, as to whether CRT Finished Products are priced on a "'cost-plus' basis," and cite only internally contradictory figures as to whether CRT tubes make up a "substantial and identifiable portion" of the costs of CRT Finished Products.[2]  It is not nearly enough to show that Defendants' "monitored the retail prices . . . of CRT televisions and monitors," and "provided incentives" to CRT Finished Product retailers.  Opp. at 5-6.  If that were the test, "nearly all markets that service one another can be said to be 'related' to such a degree that the impact of one upon another could allegedly be 'proven' with the use of econometrics."  *DRAM II*, 536 F. Supp. 2d at 1141.  Because Plaintiffs have not established that the exacting and narrow exception to the

---

[1] *In re DRAM Antitrust Litig.*, 536 F. Supp. 2d 1129, 1139-40 (N.D. Cal. 2008) ("*DRAM II*").

[2] *Compare* IPPs' 4th Consol. Am. Compl. ¶¶ 231-232 (Dkt. 1526) *with* Opp. at 4 and n. 9.

[REDACTED] REPLY MEMO IN FURTHER SUPPORT OF MOT. FOR P. SUMM. J.
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING

MDL No. 1917
Master No. 3:07-cv-05944-SC

2

market-participant rule applies to plaintiffs that have, at most, "tenuous ties with the alleged malefactors and even the allegedly restrained market itself," *see id.*, their massive claims must fail for lack of antitrust injury.

Plaintiffs' arguments that *AGC* does not apply under the laws of the 11 states at issue fare no better.  Plaintiffs baldly ask this Court to overturn its holding that *AGC* applies in five of the 11 states at issue—Iowa, Nebraska, California, Illinois[3] and Michigan—based on a non-binding, district court decision that simply "arrived at an opposite conclusion."  Opp. at 22-23 (citing *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ("*Batteries*")).  This is not nearly enough to upset the careful analysis and conclusions already reached by this Court as to *AGC*'s applicability in those five states.  *See* Moving Br. at 12-13 (citing *In re CRT Antitrust Litig.*, 738 F. Supp. 2d 1011, 1023 (N.D. Cal. 2010); *In re CRT Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 4505701 at *9 (N.D. Cal. Aug. 21, 2013).  As to the other six states at issue, Defendants have applied the framework provided by this Court for how those states' highest courts would rule, *see id.*, and Plaintiffs' Opposition provides no basis to depart from that framework.  Accordingly, Plaintiffs must show that they have suffered antitrust injury under the state laws of New Mexico, New York, Maine, Vermont, West Virginia, and Washington D.C., as well as under federal law (which Plaintiffs concede).

## II.    ARGUMENT

### A.    Plaintiffs Concede That They Did Not Participate in the Allegedly Restrained Market, As Required For A Showing of Antitrust Injury

#### 1.    Antitrust Injury Is a Dispositive Requirement for Antitrust Standing

"The dispositive issue on this motion is whether [plaintiff] itself has suffered any antitrust injury."  *Weil Ins. Agency, Inc. v. Mfrs. Life Ins. Co.*, 815 F. Supp. 1320, 1324-25 (N.D. Cal. 1992) (Conti, J.).  Contrary to Plaintiffs' claim that "no one [*AGC*] factor is dispositive in

---

[3] Defendants note that only Plaintiffs Sears and Kmart currently assert a claim under Illinois state law, and that these Plaintiffs stipulated to the dismissal of their Illinois claims with prejudice on January 14, 2015 [Dkt. No. 3394].  Because the Court has not yet so-Ordered that stipulation, however, this reply brief includes a discussion of relevant Illinois state authority.  IPPs have not asserted a claim under Illinois law.

determining antitrust standing," Opp. at 10,[4] both U.S. Supreme Court and Ninth Circuit precedents firmly hold that it is "necessary" – although not always sufficient – for a plaintiff to establish antitrust injury. *See Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n. 5 (1986); *Am. Ad Mgmt., Inc.*, 190 F.3d at 1055; *DRAM II*, 536 F. Supp. 2d at 1136 ("[A] plaintiff may only pursue an antitrust action if it can show antitrust injury"). Thus, "the absence of antitrust injury is fatal" by itself. *Toscano v. PGA Tour, Inc.*, 201 F. Supp. 2d 1106, 1116 (E.D. Cal. 2002). To establish antitrust injury, a plaintiff must "be a participant in the *same market* as the alleged malefactors." *Ass'n of Wash. Pub. Hosp. Districts v. Philip Morris Inc.*, 241 F.3d 696, 704 (9th Cir. 2001) (emphasis added); *Am. Ad Mgmt., Inc.*, 190 F.3d at 1057 (same). "[T]he focus is upon the reasonable interchangeability of use or the cross elasticity of demand" between the plaintiff's market and the market of the alleged malefactors. *Bhan*, 772 F.2d at 1470-71.

### 2. Plaintiffs' Opposition Confirms That CRT Finished Products Do Not Share a Common Market With CRTs

Plaintiffs all but admit that they do not meet the above requirements. Indeed, they concede that it is "true" that (i) CRT tubes and CRT Finished Products are not substitutes for one another and (ii) they do not experience a cross elasticity of demand with one another. *See* Opp. at 13. Plaintiffs' candid admission in this regard is unsurprising, as there is a complete absence of any evidence to show that either IPPs or DAPs bought products in the relevant market (*i.e.*, the market for CRT tubes). On the contrary, the substantial, undisputed evidence presented by Defendants in their moving brief – which Plaintiffs' Opposition completely ignores – confirms that Plaintiffs were never participants in the separate market for CRTs. *See* Moving Br. at 4-7; 15-17. Among other things, Plaintiffs' witnesses uniformly admitted that they paid no attention to details regarding the CRTs contained within the products that they purchased, including as to their price, types, features and specifications. *Id.* at 6-7; 15-16 (*citing, e.g.*, Hemlock Decl. Ex. 30

---

[4] Plaintiffs cite *Am. Ad. Mgmt.*, 190 F.3d at 1054-55, for this assertion, but neglect to cite the next two sentences in that opinion: "Nevertheless, we give great weight to the nature of the plaintiff's alleged injury. In fact, the Supreme Court has noted that '[a] showing of antitrust injury is necessary, but not always sufficient, to establish standing under [Section] 4.'" *Id.* (internal citations omitted).

[REDACTED] REPLY MEMO IN FURTHER SUPPORT OF MOT. FOR P. SUMM. J. AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING

MDL No. 1917
Master No. 3:07-cv-05944-SC

4

1   at 48:7-49:7) █████████████████████████████████████████

2   █████████████████████████████████████████████████████████

3   █████████████████████████████████████████████████████

4   ████████████████████████████████████████████████

5   ████████████   Thus, plaintiffs have failed to produce evidence to prove up their allegations that that

6   they participated in the market for CRTs.  *See, e.g.*, Target 2nd Am. Complt. ¶ 81 (Dkt. 1981)

7   (alleging that "Target has participated in the market for CRTs through its" purchases of CRT

8   Products).

9       Plaintiffs do not even attempt to explain away their experts' failure to opine that CRT

10  Finished Products and CRT tubes share a common market.  *See* Moving Br. at 20-21.  While

11  Plaintiffs' multiple experts acknowledged the concepts of "substitutability" and "cross

12  elasticity,"[5] they never applied those concepts to the multiple markets that they admit exist as part

13  of the long and complex CRT distribution chain.  *See, e.g.*, Hemlock Decl. Ex. 5 at 4, 22–25, 73

14  (Netz Report) ███████████████████████████████████████████████

15  ████████████████████████████████████████████████████

16  ████████████████████████   Instead, Plaintiffs' experts merely conjured up purported

17  overcharges that allegedly flowed through these separate markets by using "econometric tools."

18  Opp. at 7-8 and n. 24-25.  Wholly missing from Plaintiffs' experts' reports, however, is any

19  analysis as to whether CRT Finished Products and CRT tubes actually experience any

20  "substitutability" such that they reside in the same market for purposes of meeting the market-

21  participation test.

22      Instead, Plaintiffs offer a series of meritless arguments to gloss over their failure to show

23  market participation.  *First*, Plaintiffs disparage the market-participant test as "prudential" and

24  _____

25  [5] *See* Hemlock Decl. Ex. 6 at 18:8–22:18 (Dep. Tr. of Kenneth Elzinga, July 17, 2014) ████████

26  ████████████████████████; Ex. 5 at 32 n. 119 (Netz Report) ██████████████████

27  ████████████████████████; Ex. 20 at 62:18–63:14 (Dep. Tr. of Janet S.
    Netz, June 27, 2014) █████████████████████████

28  ██████████████████████████████

1   "highly untenable."  Opp. at 13 n. 43.  The Ninth Circuit disagrees.  It has been the law of this

2   Circuit for decades that market participation is necessary to a showing of antitrust injury.  *See*,

3   *e.g.*, *Legal Econ. Evaluations, Inc. v. Metro. Life Ins. Co.*, 39 F.3d 951, 954–56 (9th Cir. 1994)

4   (affirming summary judgment ruling that dismissed consultants' case against insurance

5   companies for failure to pass market participant test); *Exhibitors' Serv., Inc. v. Am. Multi-Cinema*,

6   788 F.2d 574, 577–81 (9th Cir. 1986) (reversing district court finding of antitrust injury to film

7   exhibition licensing agent, as film licensing agent failed to pass market participant test).

8       *Second*, Plaintiffs maintain that they have purportedly suffered harm as a result of the

9   allegations they make against Defendants.  *See* Opp. at 1, 14, 25.  As noted above, though,

10  Plaintiffs' allegations *solely* concern CRTs, as they were forced to withdraw any allegations of a

11  "finished products conspiracy" given the lack of any evidentiary basis for same.  Moving Br. at 4-

12  5.  While Plaintiffs attempt to minimize this withdrawal as a mere "procedural distinction," Opp.

13  at 9, it is well-settled that simply showing *some* form of injury in separate downstream retail and

14  consumer markets is not enough to establish ***antitrust*** injury:  "[p]arties whose injuries, though

15  flowing from that which makes the defendant's conduct unlawful, are experienced in another

16  market do not suffer antitrust injury." *Am. Ad Mgmt., Inc.*, 190 F.3d at 1057.[6]

17      *Third*, Plaintiffs argue that "there is but one way to purchase CRTs – as a component of

18  CRT products."  *Id.* at 25.  This is demonstrably false.  As Defendants have shown, a myriad of

19  companies (such as Sharp,[7] Sony and IBM) participated in the primary CRT market by

20  purchasing CRTs from certain Defendants directly.  It is these companies – including companies

21

22  _____

    [6] Plaintiffs further argue that the antitrust injury requirement is satisfied if harm from one market
23  is "traceable" downstream.  However, "the judicial remedy cannot encompass every conceivable
    harm that can be traced to alleged wrongdoing."  *AGC*, 459 U.S. at 536.  Moreover, the purported
24  "traceability" of the CRT component throughout the distribution chain does not relate to the
    antitrust injury factor of *AGC*, but rather to secondary factors that Defendants have expressly *not*
25  moved-upon.  *See* Moving Br. at 2 n. 2.  Indeed, Plaintiffs concede this point during the course of
    extraneous argument as to additional *AGC* factors that are irrelevant to this motion. Opp. at 18
26  (describing "fourth and fifth factors of the *AGC* test" as "dealing with issues of traceability and
    apportionment").
27

28  [7] Accordingly, Sharp is not the subject of this motion.  *See* Moving Br. at 4 n.5.  Defendants have
    also not moved against Plaintiffs Dell Inc. and Dell Products L.P.  *Id.*

such as Sharp that have brought their own action or recovered as members of the Direct Purchaser Plaintiff class – that are more properly situated, as a matter of antitrust standing, to bring claims against Defendants.  Tellingly, Plaintiffs never once mention the existence of these other companies in their Opposition.  To the extent Plaintiffs are arguing that there is only one, over-arching "CRT market," that argument is flatly contrary to their own expert reports, as well as this Court's previous recognition that CRTs and CRT Products exist in two separate markets.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 4505701, at *10 (describing "the markets for CRTs themselves and CRT Products" and quoting Special Master's observation that there is "a real *market* distinction, and hence a real *legal* distinction, between the finished products and just the CRTs") (emphasis in original); *see also* Hemlock Decl. Ex. 5 at 4, 22–25, 73 (Netz Report).

Plaintiffs' argument essentially boils down to one of equity: that it would be unfair to apply the market participant test to purchasers of finished products that contain allegedly price-fixed components.[8]  But the Ninth Circuit's test is clear: to pass the market participant test, the plaintiff and defendant must participate in the same market.  If they do not, then there is no antitrust injury and no antitrust standing.

**B.    Plaintiffs' Interpretation of the Narrow "Inextricably Intertwined" Exception is Contrary to Well-Established Ninth Circuit Law**

As established above, if a plaintiff is not in the same market as the defendant, then it cannot establish antitrust injury as a matter of law.  However, "a "narrow exception [exists] to the market participant requirement" in circumstances where a plaintiff's injury is "inextricably intertwined" with the injuries of market participants.  *Am. Ad Mgmt.*, 190 F.3d at 1057 n. 5 (citing

---

[8] For this proposition, Plaintiffs cite a Third Circuit decision that pre-dates both *AGC* and the Ninth Circuit's market participant test.  *See* Opp. at 17 (quoting *In re Sugar Indus. Antitrust Litig.*, 579 F.2d 13, 19 (3d Cir. 1978) ("*Sugar*").  *Sugar* concerns standing under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which is a separate, analytically distinct doctrine.  *See, e.g.*, *Batteries,* 2014 WL 4955377, at *27 ("*Illinois Brick* and *AGC* address different issues and therefore require distinct analyses.").  *Sugar*, moreover, is a 37-year-old Third Circuit decision that has already been found in this case to "conflict with Ninth Circuit law" in other respects.  *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857, 871 (N.D. Cal. 2012).

[REDACTED] REPLY MEMO IN FURTHER SUPPORT OF MOT. FOR P. SUMM. J.                    MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING          Master No. 3:07-cv-05944-SC

7

*Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982); *Ostrofe v. H.S. Crocker Co.*, 740 F.2d 739, 745–46 (9th Cir. 1984)).  Plaintiffs seek to invoke this narrow exception by claiming that the CRT market and CRT Finished Product market are "linked" to such a degree that Plaintiffs "are the primary businesses and end-consumers injured by Defendants' conspiracy."  Opp. at 12-14.  Plaintiffs' arguments misconstrue this exception, and once again ignore that numerous companies bought CRTs directly from Defendants or their subsidiaries.

It is telling that Plaintiffs do not respond to Defendants' recitation of the facts and narrow holdings of *McCready* and *Ostrofe, see* Moving Br. at 17-19, other than to say, in a footnote, that these cases "support a broad view of what constitutes an antitrust injury."  Opp. at 17 n. 55.  Plaintiffs' shallow analysis does not hold up to scrutiny.  *McCready* and *Ostrofe* only confer an exception to the market-participant requirement where "the claimant can be considered the 'direct victim' of a conspiracy or the 'necessary means' by which the conspiracy was carried out."  *See Lorenzo*, 603 F. Supp. 2d at 1300–01; *DRAM II*, 536 F. Supp. 2d at 1139–40 ("Both *McCready* and *Ostrofe* . . . stand for the proposition that antitrust injury can be satisfied when a plaintiff is the direct victim of a conspiracy, or the actual means by which the defendants' allegedly anticompetitive conduct is carried out.").  Contrary to Plaintiffs' presentation, neither *McCready* nor *Ostrofe* confers an exception in circumstances where two *markets* are intertwined with one another, but rather only where a plaintiff's *alleged injuries* are intertwined with the harm caused in the primary market.  *See*, *e.g.*, *Lorenzo*, 603 F. Supp. 2d. at 1301.  Certainly, the exception does not "dispense with the general requirement that antitrust . . . plaintiffs must be directly harmed by the defendant's wrongful conduct."  *Ass'n of Wash. Pub. Hosp. Districts*, 241 F.3d at 704 (rejecting hospital plaintiffs' claims arising from treating tobacco-related illnesses because alleged injuries were not experienced in primary, nicotine delivery market, but rather the general health-care market).

In *McCready*, a health insurance company allegedly sought to freeze out psychologists from the market for mental health services by only reimbursing psychiatrists. 457 U.S. at 468.  McCready, a psychologist's patient who was not reimbursed for treatment conducted by her psychologist, sued her insurer for violation of the Sherman Act.  *Id*. at 468-69.  The Supreme

[REDACTED] REPLY MEMO IN FURTHER SUPPORT OF MOT. FOR P. SUMM. J.                     MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING          Master No. 3:07-cv-05944-SC

8

1    Court found that because McCready participated in the market that defendant was allegedly

2    restraining, her injury was "inextricably intertwined" with the injury that the defendant insurer

3    sought to inflict on psychologists.  *Id.* at 484.  In other words, she "was the *direct* victim of

4    unlawful coercion."  *AGC*, 459 U.S. at 540 n. 19 (emphasis added).  In *Ostrofe*, label

5    manufacturers were allegedly conspiring to rig bids, fix prices, and allocate markets on the sale of

6    labels.  *See* 740 F.2d at 742.  A marketing director at one label maker who refused to cooperate

7    with the conspiracy was forced to resign and was later barred from obtaining employment in the

8    industry.  *Id.*  Although neither a consumer nor competitor in the relevant market, the Ninth

9    Circuit found that the plaintiff's claim satisfied the "inextricably intertwined" exception because

10   his termination was the "necessary means" for the conspirators to carry out their conspiracy.  *Id.*

11   at  746.

12          By contrast, Plaintiffs here have failed to show, first, that they are the "direct victim" of

13   any alleged conspiracy, or alternatively, the "necessary means" by which any alleged conspiracy

14   was carried out.  It is beyond dispute that Plaintiffs' alleged injuries, if any, were *not* "direct," as

15   reflected by the extensive econometric efforts in which Plaintiffs' experts engage in order to show

16   that alleged overcharges were purportedly passed on to them through a multi-layered chain of

17   distribution that included *actual consumers* in the CRT primary market (*e.g.*, finished product

18   manufacturers such as Sharp that bought CRTs directly).  As Plaintiffs admit, "Indirect purchaser

19   retailers and end-user consumers are almost always several levels removed from manufacturer

20   price-fixers."  Opp. at 15.

21          Nor do Plaintiffs constitute the "necessary means" of any alleged conspiracy.  By their

22   own admission, Plaintiffs allege that Defendants conspired "to fix the prices of CRTs," but not

23   CRT Finished Products.  Opp. at 6.  It is undisputed that numerous other intermediary purchasers

24   bought CRTs from Defendants directly; if such direct purchasers absorbed the entirety of any

25   purported overcharge, then Defendants' alleged "CRT conspiracy" would be successful, without

26   the involvement of any downstream Plaintiffs.  Given that any wrongdoing was undertaken in a

27   primary market several steps removed from these Plaintiffs, it should be self-evident that

28

[REDACTED] REPLY MEMO IN FURTHER SUPPORT OF MOT. FOR P. SUMM. J.                    MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING          Master No. 3:07-cv-05944-SC

9

1    Plaintiffs were neither the "necessary" nor "actual means by which the defendants' allegedly

2    anticompetitive conduct [was] carried out." *DRAM II*, 536 F. Supp. 2d at 1139–40.

3            Indeed, Plaintiffs do not even attempt to put forward evidence showing that they were

4    either direct victims or the necessary means of a conspiracy.  *See* Opp. at 3-8.  The only evidence

5    that Plaintiffs muster in support of their allegations shows that Defendants, at most, "monitored

6    the retail prices . . . of CRT televisions and monitors," and "provided incentives and information

7    to makers and retailers of CRT products to promote sales at retail."  Opp. at 5-6.  Plainly, these

8    facts alone (including that Defendants actually offered "Market Development Funds" to facilitate

9    retail sales) do not establish a sufficient connection between these two separate markets for

10   purposes of antitrust injury.  *See DRAM II*, 536 F. Supp. 2d at 1136.

11           The "extensive, learned and careful"[9] treatment of this issue in *DRAM II* is instructive.

12   *DRAM II* is a component-case like this one, where Plaintiffs attempted to show antitrust injury via

13   the "inextricably intertwined" exception.  Judge Hamilton rejected Plaintiffs' arguments, noting

14   that "plaintiffs have not cited any controlling legal authority . . . that found the market

15   participation requirement satisfied for plaintiffs who are neither consumers nor competitors in the

16   restrained market, and who do not have a direct relationship with, or are the direct victims of, the

17   alleged conspiracy."  536 F. Supp. 2d at 1140.  Judge Hamilton's finding of no antitrust injury is

18   particularly significant given the *DRAM II* Plaintiffs' allegations of extreme interdependence of

19   markets, including allegations in that regard that surpass those of this case.  For example, the

20   *DRAM II* Plaintiffs alleged that "increases in the price of DRAM 'lead to quick, corresponding

21   price increases at the OEM and retail levels for [c]omputers.'"  *Id*. at 1141.  Here, by contrast, the

22   fact record is silent as to whether any price increases in CRTs led to "quick, corresponding price

23   increases" for CRT Finished Products.  *See* Moving Br. at 6-8.

24   _____
     [9] This description of *DRAM II* comes not from Defendants, but from *Batteries*, 2014 WL

25   4955377, at *13, on which Plaintiffs heavily rely.  While Plaintiffs argue that *DRAM II* is a
     "notable outlier," Opp. at 6, *Batteries* itself held that that "it is not entirely accurate to say, as

26   plaintiffs do, that [*DRAM's*] reasoning has been 'rejected.'  Truer to say that some cases from
     outside this District have followed it and some other cases have declined to engage with its

27   reasoning[.]"  *Id.* (internal citations omitted).  Thus, Plaintiffs are wrong that district courts have
     "rejected" *DRAM's* careful analysis, Opp. at 16, which faithfully applied the well-established

28   market participant test articulated by the Ninth Circuit.

1   Plaintiffs repeatedly suggest that this Court has already "explicitly rejected" Defendants'

2   antitrust standing argument at the motion to dismiss stage.  Opp. at 1.  The Court, however, was

3   ruling on a pleadings issue, not one of proof, and was not as definitive as Plaintiffs would have it.

4   In fact, the Court held at the pleading stage that this factor "*slightly* favors standing," and

5   declined to follow the Special Master's opinion that there is a legal market distinction between

6   the separate markets for CRTs and CRT Finished Products.  *See In re CRT Antitrust Litig.*, 2013

7   WL 4505701, at *10.  Defendants submit that on the full factual record, and given the

8   overwhelming evidence that Plaintiffs are not market participants in the primary CRT market, this

9   Court should not apply the narrow and inapposite *McCready* exception, based on controlling

10  Ninth Circuit authority that has "time and again . . . reiterated the 'same market' language in

11  discussing the market participation requirement." *See DRAM II*, 536 F. Supp. 2d at 1141.[10]

12  At bottom, even crediting Plaintiffs' strained reading of the inextricably intertwined

13  exception, Plaintiffs present no evidence in their opposition to show they meet that exception, and

14  instead only offer conclusory argument.  For example, Plaintiffs cite to their expert reports in

15  arguing that "the cost of the CRT makes up a substantial and identifiable portion of the cost of

16  CRT products[,]" and that Defendants' alleged conduct "impacted Plaintiffs." *See*, *e.g.*, Opp. at

17  4, 7.  But Plaintiffs have not shown that merely because a CRT makes up a percentage of the CRT

18  Finished Product means that the two separate markets are, as there are alleged to be, *inextricably*

19  intertwined.   Nor have Plaintiffs even proven that "the cost of the CRT in a computer monitor is

20

21  [10] Neglecting *DRAM II*, Plaintiffs also have cited to other cases from this District that similarly
    misapply the *McCready* exception, including *LCD*. *See* Opp. at 14 and n. 48 (citing, *inter alia*, *In
22  re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-MD-01827-SI, 2011 U.S. Dist. LEXIS
    140831 (N.D. Cal.  Dec. 7, 2011)).  Most of these cases, however, are motion to dismiss rulings
23  that expressly note that the ultimate question of "whether indirect purchasers are 'participants' in
    the same 'relevant market' for purposes of antitrust standing is better suited to resolution upon a
24  fuller record." *See In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1154 (N.D. Cal.
    2009); *see also Batteries*, 2014 WL 4955377, at *28 (denying a motion to dismiss on the grounds
25  that "factual questions about market definition counsel against granting defendants' motion *in the
    context of a Rule 12(b)(6) motion*.") (emphasis added).  Here, by contrast, there is no dispute that
26  CRTs and CRT Products exist in two separate markets.  Additionally, as noted in their Moving
    Brief, Defendants respectfully contend that Judge Illston in her summary *LCD* decisions
27  misapplied *McCready* by relying on the same linked-markets theory that Plaintiffs argue now.
    *See* Moving Br. at 18 n. 19.
28

[REDACTED] REPLY MEMO IN FURTHER SUPPORT OF MOT. FOR P. SUMM. J.                    MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING          Master No. 3:07-cv-05944-SC

11

approximately 60% of the total cost to manufacture the computer monitor," as their Opposition

█████████████████████████████████████████████████████████████████

*Compare* IPPs' 4th Consol. Am. Complt. ¶ 232 (Dkt. 1526) *with* Opp. at 4 n. 9.  As noted above,

Plaintiffs' allegations – even if proven (and they have not been) – do not rise to those in *DRAM*

*II*, where Judge Hamilton found no antitrust injury even though "90% of the DRAM sold during

the class period was used for computers."  536 F. Supp. 2d at 1141.  Further highlighting the

absence of an "inextricable link of markets," Plaintiffs concede (and there has been no contrary

evidence submitted) that the CRT Finished Product market was "subject to vigorous price

competition."  IPPs' 4th Consol. Am. Complt. ¶ 230 (Dkt. 1526).  Without evidence to support

their allegations, Plaintiffs instead posit that "logic dictates that these markets are inextricably

intertwined."  Opp. at 12.  But Plaintiffs' burden at summary judgment is to produce *evidence* to

support their claims, not merely circular argumentation.  *See Celotex Corp. v. Catrett,* 477 U.S.

317, 324 (1986) (once moving party meets initial burden, non-moving party must go beyond to

pleadings with evidence to show genuine issue for trial).

### C.   Plaintiffs Have Failed to Rebut That Each of the 11 States Subject to Defendants' Motion Require a Showing of Antitrust Injury

Defendants' Moving Brief established that proof of antitrust injury and antitrust standing

is a requirement in the 11 states that are the subject of this motion, and also applies to Plaintiffs'

federal claims (which Plaintiffs do not contest).  *See* Moving Br. at 12-14.  In response, Plaintiffs

claim that not only must a federal court consider *whether* a state has or would adopt *AGC*, but

also "*how* the state would apply *AGC's* factors," since "any [*Illinois Brick*] repealer state . . .

would presumably place some limits on *AGC*'s reach."  Opp. at 20.  Plaintiffs' argument fails.

As an initial matter, it is flatly contrary to the law of the case, as well as all other cases

from this District save for *Batteries.*  As Plaintiffs acknowledge, this Court has already held that

*AGC* applies under the laws of Iowa, Nebraska, California, Illinois and Michigan.  *See In re CRT*

*Antitrust Litig.*, 738 F. Supp. 2d at 1023; *In re CRT Antitrust Litig.*, 2013 WL 4505701, at *9-10.

This Court has provided a straightforward framework for determining whether *AGC* applies

where there has been no express guidance from a state's highest court, and Defendants carefully

[REDACTED] REPLY MEMO IN FURTHER SUPPORT OF MOT. FOR P. SUMM. J.
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING

12

MDL No. 1917
Master No. 3:07-cv-05944-SC

followed that framework in analyzing *AGC*'s applicability in the remaining six states at issue. *See* Moving Br. at 12-13.

Contrary to this Court's prior holdings, Plaintiffs now suggest – based solely on the *Batteries* decision – that this Court may only consider state court opinions that provide "clear guidance on whether or how a state's highest court would apply *AGC*" to the *specific factual scenario* of "indirect purchaser claims arising from the purchase of price-fixed goods in the chain of distribution." Opp. at 20-21 (emphasis added). Governing caselaw from the Ninth Circuit and this Court simply do not require what Plaintiffs demand. Moreover, Defendants' motion solely concerns the dispositive, first element of antitrust injury, which is required in *all* of the 11 states at issue. *See* Moving Br. at 12-14. Because Defendants have already made that showing, there is no need to determine whether each of these states also "import[] *AGC* wholesale into their laws," or whether they place "some limits on *AGC's* reach," as Plaintiffs suggest. Opp. at 20. Instead, the *only* relevant determination for this Court is whether these states apply *antitrust injury* – the sole *AGC* factor at issue on this motion – as a prerequisite to recovery in antitrust cases such as this one. The answer is yes.

### 1. Iowa, Nebraska, California, Illinois and Michigan

Plaintiffs concede that this Court has previously held that Iowa, Nebraska, California, Illinois and Michigan each apply the *AGC* test to determine antitrust standing. Opp. at 20 n. 67. Nonetheless, and on the flimsiest of reeds, Plaintiffs ask this Court to "revisit its prior rulings." *Id.* at 24. As to Illinois and Michigan, Plaintiffs do not cite to any intervening state court decisions since this Court's prior ruling, but rather merely point out that *Batteries* reviewed the "same state court authorities . . . but arrived at an opposite conclusion." *Id.* at 23. This is of no moment, since this Court's role is to predict, using relevant *state court* rulings, "how the state high court would resolve it." *Hayes v. Cnty. of San Diego*, 658 F.3d 867, 871 (9th Cir. 2011). That is exactly what this Court has already done in Illinois and Michigan. *See In re CRT Antitrust Litig.*, 2013 WL 4505701, at *9-10 (citing Illinois and Michigan caselaw).

As to California, Plaintiffs argue that a recent California Supreme Court decision undermines this Court's prior holding that California would apply *AGC*. Opp. at 22-23 (citing

*Aryeh v. Canon Bus. Solutions, Inc.*, 292 P.3d 871 (Cal. 2013).  Yet Plaintiffs completely ignore that Defendants already addressed and distinguished *Aryeh* in their initial motion.  *See* Moving Br. at 12 n. 17.  As Defendants have already noted, *Aryeh* does not address *AGC* or the concept of antitrust injury.  Consistent with long-standing California law, *Aryeh* merely holds that "[i]nterpretations of federal antitrust law" are "instructive" but "not conclusive [] when construing the Cartwright Act."  *Id.* (citing *State of California ex rel. Van de Kamp v. Texaco, Inc.*, 46 Cal. 3d 1147, 1164 (1988)).  *Aryeh* does not imply that *AGC* would not continue to be applied under California law, especially in light of *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 (1995) (applying *AGC* factors), and *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1077 (Cal. 2010) (citing *AGC* and *Vinci* approvingly in dicta as consistent with prior California law).

As to Iowa and Nebraska, Plaintiffs ignore that the highest courts in both states have expressly held that *AGC* applies to their antitrust laws.  *See Southard v. Visa USA, Inc.,* 734 N.W.2d 192, 198–99 (Iowa 2007) (applying *AGC* and holding that "plaintiffs are not 'participants in the relevant market,' and their injuries are not of the type sought to be compensated by antitrust laws"); *Kanne v. Visa U.S.A., Inc.*, 723 N.W.2d 293, 302–03 (Neb. 2006) (same).  Given these holdings, there is no doubt as to how Iowa and Nebraska's "highest court[s] would apply *AGC* to this case," which is the very standard that Plaintiffs offer.  Opp. at 21.

### 2. New Mexico, New York, Maine, Vermont, West Virginia, and Washington D.C.

For the remaining six states, Plaintiffs do not dispute that Defendants have cited to state authority that require a showing of antitrust injury.  Instead, Plaintiffs contend these citations are somehow insufficient to determine *how* those states would apply *AGC* to the precise facts of this case*.*  Regardless of whether the factual scenario before a state court involved "indirect purchaser claims arising from the purchase of price-fixed goods in the chain of distribution," however, this Court may predict if a state would apply *AGC* based on current state caselaw.  As to New York, Maine and Vermont, Plaintiffs attempt to distinguish nearly a dozen cases that squarely address antitrust standing solely on the grounds that they do not involve the precise factual scenario "in a case such as this."  Plaintiffs' crabbed reading of Defendants' extensive state-law authority must

be rejected.[11]  As to New Mexico, West Virginia, and Washington DC, Plaintiffs' arguments are similarly unavailing:

- **New Mexico:** Plaintiffs do not dispute that New Mexico courts interpret New Mexico's antitrust statute "in harmony with federal antitrust laws when, as here, we have no New Mexico authority on point to guide us." *Romero v. Philip Morris Inc.*, 2005-NMCA-035, 109 P.3d 768, 771 (N.M. Ct. App. 2005).  Moreover, Plaintiffs ignore *Romero*'s holding that "[a]ntitrust injury" is a "necessary part[] of the proof because 'Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation.'" *Id.*

- **West Virginia:** West Virginia's highest court has in fact held that a plaintiff must prove antitrust injury, and it is thus wholly immaterial whether it "expressly adopt[ed] [*AGC's*] balancing test." *See Princeton Ins. Agency, Inc. v. Erie Ins. Co.*, 690 S.E.2d 587, 590, 598–600 (W. Va. 2009) ("conclud[ing] that Appellees failed to introduce sufficient evidence to demonstrate an antitrust injury" where "they failed to introduce evidence to prove that competition among insurers in the relevant . . . market was harmed" (citations omitted)).  While *Princeton Ins. Agency, Inc.* does not directly cite to *AGC*, it does cite to a Second Circuit opinion on antitrust injury, which itself relies on *AGC* to describe the concept of antitrust injury.  *See id.* at 597 (citing *Balaklaw v. Lovell*, 14 F.3d 793, 799 (2d Cir.1994)).

- **Washington DC**: Relevant case law from the District of Columbia confirms that its courts apply *AGC*.  *See Peterson v. Visa U.S.A. Inc.*, No. 03-8080, 2005 WL 1403761, at *4–6 (D.C. Super. Ct. Apr. 22, 2005) (holding that "[a]pplication of [*AGC's*] factors convinces the Court that D.C. plaintiff lacks standing under [the District of Columbia Antitrust Act].").  Although Plaintiffs suggest that other District of Columbia trial courts "refused to apply the *AGC* test," Opp. at 21 n. 70, neither of their cited cases discuss *AGC* or even the concept of antitrust injury.  In fact, *Peterson* rejected the approach proposed in the Plaintiffs' cases, noting that District of Columbia Antitrust Act contains "identical" language to its federal counterpart.  2005 WL 1403761, at *4.

## III.  CONCLUSION

For all of these reasons, and those set forth in Defendants' moving brief, Defendants respectfully request that the Court grant Defendants' motion as to Plaintiffs' federal claims (for injunctive relief and/or damages), as well as each of the state antitrust claims identified above.

Dated:    January 23, 2015                  By:____/s/ Adam C. Hemlock_____
                                            DAVID L. YOHAI *(pro hac vice)*
                                            E-mail: david.yohai@weil.com

---

[11] Specifically, Plaintiffs assert that the entire line of VISA debit card indirect cases are distinguishable because they did not concern a physical, component good.  *See* Opp. at 21, 23 and 24.  But as *DRAM II* found, these cases are directly "instructive."  *See* 516 F. Supp. 2d at 1090.  In those cases, numerous state courts applied *AGC* and found that "although an artificially raised price had been passed down from defendants to merchants in the market for credit card services," the indirect purchasers were not participants in that market, and thus failed to show antitrust standing.  *Id.*  So too here.

[REDACTED] REPLY MEMO IN FURTHER SUPPORT OF MOT. FOR P. SUMM. J.         MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING     Master No. 3:07-cv-05944-SC

15

ADAM C. HEMLOCK *(pro hac vice)*
E-mail: adam.hemlock@weil.com
DAVID E. YOLKUT *(pro hac vice)*
E-mail: david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153-0119
Telephone:      (212) 310-8000
Facsimile:      (212) 310-8007

BAMBO OBARO (267683)
E-mail: bambo.obaro@weil.com
**WEIL, GOTSHAL & MANGES LLP**
201 Redwood Shores Parkway
Redwood Shores, California 94065-1175
Telephone:      (650) 802-3000
Facsimile:      (650) 802-3100

JEFFREY L. KESSLER *(pro hac vice)*
E-mail:  jkessler@winston.com
A. PAUL VICTOR *(pro hac vice)*
E-mail: pvictor@winston.com
EVA W. COLE *(pro hac vice)*
E-mail: ewcole@winston.com
MOLLY M. DONOVAN *(pro hac vice)*
E-mail:  mmdonovan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, New York 10166-4193
Telephone:      (212) 294-6700
Facsimile:      (212) 294-7400

***Attorneys for Defendants Panasonic Corporation
of North America, MT Picture Display Co., Ltd.,
and Panasonic Corporation (f/k/a Matsushita
Electric Industrial Co., Ltd.)***


By: /s/ *Lucius B. Lau*                      
CHRISTOPHER M. CURRAN *(pro hac vice)*
E-mail: ccurran@whitecase.com
LUCIUS B. LAU *(pro hac vice)*
E-mail: alau@whitecase.com
DANA E. FOSTER *(pro hac vice)*
E-mail: defoster@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone: (202) 626-3600

Facsimile: (202) 639-9355

***Attorneys for Defendants Toshiba Corporation,
Toshiba America, Inc., Toshiba America
Information Systems, Inc., Toshiba America
Consumer Products, L.L.C., and Toshiba America
Electronic Components, Inc.***


By: */s/ John M. Taladay*
JOHN M. TALADAY *(pro hac vice)*
E-mail: john.taladay@bakerbotts.com
JOSEPH OSTOYICH *(pro hac vice)*
E-mail: joseph.ostoyich@bakerbotts.com
ERIK T. KOONS *(pro hac vice)*
E-mail: erik.koons@bakerbotts.com
CHARLES M. MALAISE *(pro hac vice)*
E-mail: charles.malaise@bakerbotts.com
**BAKER BOTTS LLP**
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

JON V. SWENSON (SBN 233054)
E-mail: jon.swenson@bakerbotts.com
**BAKER BOTTS LLP**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

***Attorneys for Defendants Koninklijke Philips N.V.,
Philips Electronics North America Corporation,
Philips Taiwan Limited, and Philips do Brasil Ltda.***

By: */s/ Hojoon Hwang*
JEROME C. ROTH (State Bar No. 159483)
jerome.roth@mto.com
HOJOON HWANG (State Bar No. 184950)
hojoon.hwang@mto.com
MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

1

2

WILLIAM D. TEMKO (SBN 098858)
William.Temko@mto.com
**MUNGER, TOLLES & OLSON LLP**

3

355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA 90071-1560

4

Telephone: (213) 683-9100
Facsimile: (213) 687-3702

5

6

*Attorneys for Defendants LG Electronics, Inc.;*
*LG Electronics USA, Inc.; and LG Electronics*

7

*Taiwan Taipei Co., Ltd.*

8

9

By: */s/ Eliot A. Adelson*
ELIOT A. ADELSON (SBN 205284)
JAMES MAXWELL COOPER (SBN 284054)

10

**KIRKLAND & ELLIS LLP**

11

555 California Street, 27th Floor
San Francisco, California 94104

12

Tel: (415) 439-1400
Facsimile: (415) 439-1500

13

E-mail: eadelson@kirkland.com
E-mail: max.cooper@kirkland.com

14

15

JAMES H. MUTCHNIK, P.C. (*pro hac vice*)
KATE WHEATON (*pro hac vice*)

16

**KIRKLAND & ELLIS LLP**

17

300 North LaSalle
Chicago, Illinois 60654

18

Tel: (312) 862-2000
Facsimile: (312) 862-2200

19

20

*Attorneys for Defendants Hitachi, Ltd., Hitachi*
*Displays, Ltd. (n/k/a Japan Display, Inc.), Hitachi*

21

*Asia, Ltd., Hitachi America, Ltd., and Hitachi*
*Electronic Devices (USA), Inc.*

22

23

By: */s/ Gary L. Halling*

24

GARY L. HALLING (SBN 66087)
E-mail: ghalling@sheppardmullin.com

25

JAMES L. MCGINNIS (SBN 95788)
E-mail: jmcginnis@sheppardmullin.com

26

MICHAEL W. SCARBOROUGH, (SBN 203524)
E-mail: mscarborough@sheppardmullin.com

27

**SHEPPARD MULLIN RICHTER & HAMPTON**
Four Embarcadero Center, 17th Floor

28

San Francisco, CA 94111

[REDACTED] REPLY MEMO IN FURTHER SUPPORT OF MOT. FOR P. SUMM. J.                    MDL No. 1917
AGAINST IPPS & CERTAIN DAPS FOR LACK OF ANTITRUST INJURY STANDING       Master No. 3:07-cv-05944-SC

18

1
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947

2

3
*Attorneys for Defendants Samsung SDI America,*
*Inc.; Samsung SDI Co., Ltd.; Samsung SDI*
*(Malaysia) SDN. BHD.; Samsung SDI Mexico S.A.*
*DE C.V.; Samsung SDI Brasil Ltda.; Shenzen*
*Samsung SDI Co., Ltd. and Tianjin Samsung SDI*
*Co., Ltd.*

4

5

6
By: /s/ *Rachel S. Brass*

7
JOEL S. SANDERS (Cal. Bar. No. 107234)
E-mail: jsanders@gibsondunn.com

8
RACHEL S. BRASS (Cal. Bar. No. 219301)
E-mail: rbrass@gibsondunn.com

9
AUSTIN V. SCHWING (Cal. Bar. No. 211696)
E-mail: aschwing@gibsondunn.com

10
**GIBSON, DUNN & CRUTCHER LLP**

11
555 Mission Street, Suite 3000
San Francisco, CA 94105

12
Telephone:     (415) 393-8200
Facsimile:      (415) 393-8306

13

14
*Attorneys for Defendants Chunghwa Picture*
*Tubes, Ltd. and Chunghwa Picture Tubes*
*(Malaysia)* (Only as to Direct Action Plaintiffs Best
Buy, Target, Sears, Interbond, Office Depot,
CompuCom, P.C. Richard, MARTA, ABC Appliance,
Schultze Agency Services, and ViewSonic)

15

16

17

18
By: /s/ *Kathy L. Osborn*

19
KATHY L. OSBORN *(pro hac vice)*
E-mail: kathy.osborn@FaegreBD.com

20
RYAN M. HURLEY *(pro hac vice)*
E-mail: ryan.hurley@FaegreBD.com

21
**FAEGRE BAKER DANIELS LLP**

22
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204

23
Telephone: (317) 237-0300
Facsimile: (317) 237-1000

24

25
JEFFREY S. ROBERTS *(pro hac vice)*
E-mail: jeff.roberts@FaegreBD.com

26
**FAEGRE BAKER DANIELS LLP**
3200 Wells Fargo Center

27
1700 Lincoln Street
Denver, CO 80203

28
Telephone: (303) 607-3500

Facsimile: (303) 607-3600

STEPHEN M. JUDGE *(pro hac vice)*
E-mail: steve.judge@FaegreBd.com
**FAEGRE BAKER DANIELS LLP**
202 S. Michigan Street, Suite 1400
South Bend, IN 46601
Telephone: (574) 234-4149
Facsimile: (574) 239-1900

*Attorneys for Defendants Thomson SA and*
*Thomson Consumer Electronics, Inc.*

By: /s/ *Michael T. Brody*
Terrence J. Truax *(pro hac vice)*
E-mail: ttruax@jenner.com
Michael T. Brody *(pro hac vice)*
E-mail: mbrody@jenner.com
**JENNER & BLOCK LLP**
353 North Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

BRENT CASLIN (Cal. Bar. No. 198682)
E-mail: bcaslin@jenner.com
**JENNER & BLOCK LLP**
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

*Attorneys for Defendants Mitsubishi Electric*
*Corporation, Mitsubishi Electric US, Inc. and,*
*Mitsubishi Electric Visual Solutions America, Inc.*

By: /s/  *Nathan Lane, III*
Mark Dosker
Nathan Lane, III
**SQUIRE PATTON BOGGS (US) LLP**
275 Battery Street, Suite 2600
San Francisco, CA  94111
Telephone: 415.954.0200
Facsimile: 415.393.9887
E-mail: mark.dosker@squirepb.com
nathan.lane@squirepb.com

1

Donald A. Wall (*pro hac vice*)
**SQUIRE PATTON BOGGS (US) LLP**
1 East Washington Street, Suite 2700

2

Phoenix, Arizona 85004
Telephone: + 1 602 528 4000

3

Facsimile: +1 602 253 8129
E-mail: donald.wall@squirepb.com

4

5

*Attorneys for Defendant Technologies Displays*

6

*Americas LLC with respect to all cases except*
*Office Depot, Inc. v. Technicolor SA, et al.*

7

*and Sears, Roebuck and Co. et al. v. Technicolor*
*SA, et al.*

8

9

*/s/ Jeffrey I. Zuckerman*

10

Jeffrey I. Zuckerman (*pro hac vice*)
Ellen Tobin (*pro hac vice*)

11

**CURTIS, MALLET-PREVOST, COLT &**
**MOSLE LLP**

12

101 Park Avenue

13

New York, New York 10178
Telephone: 212.696.6000

14

Facsimile: 212.697.1559
E-mail: jzuckerman@curtis.com

15

E-mail: etobin@curtis.com

16

Arthur Gaus (SBN 289560)

17

**DILLINGHAM & MURPHY, LLP**
601 California Street, Suite 1900

18

San Francisco, California 94108
Telephone: 415.397.2700

19

Facsimile: 415.397-3300
E-mail: asg@dillinghammurphy.com

20

21

*Attorneys for Defendant Technologies Displays*
*Americas LLC with respect to Office Depot, Inc. v.*

22

*Technicolor SA, et al. and Sears, Roebuck and Co. et*
*al. v. Technicolor SA, et al.*

23

24

Pursuant to General Order, § X-B, the filer attests that concurrence in the filing of this

25

document has been obtained from each of the above signatories.

26

27

28

---