Mark C. Dosker (State Bar # 114789)
Nathan Lane III (State Bar # 50961)
SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, CA  94111
Telephone: +1 415 954 0200
Facsimile: +1 415 393 9887
Email: mark.dosker@squirepb.com
nathan.lane@squirepb.com

Attorneys for Defendant
Technologies Displays Americas LLC with respect to all cases
except *Office Depot, Inc. v. Technicolor SA, et al.* and *Sears,
Roebuck and Co., et al. v. Technicolor SA, et al.*
(*additional counsel on signature page*)

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 3:07-CV-5944-SC MDL No. 1917 |
| This Document Relates to | |
| *Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05264; | |
| *Costco Wholesale Corporation v. Technicolor SA, et al.*, No. 13-cv-005723; | **DEFENDANT TECHNOLOGIES DISPLAYS AMERICAS LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [ECF No. 2984]** |
| *Crago, d/b/a Dash Computers, Inc., et al., v. Mitsubishi Electric Corporation, et al.*, No. 14-cv-02058; | |
| *Electrograph Systems, Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05724; | Date:    February 6, 2015 |
| *Interbond Corporation of America v. Technicolor SA, et al.*, No. 13-cv-05727; | Time:   10:00 a.m. Judge:   Hon. Samuel Conti |
| *Office Depot, Inc. v. Technicolor SA, et al.*, No. 13-cv-05726; | |
| *P.C. Richard & Son Long Island Corporation, et al. v. Technicolor SA, et al.*, No. 13-cv-05725; | |
| *Schultze Agency Services, LLC v. Technicolor SA, et al.*, No. 13-cv-05668; | |
| *Sears, Roebuck and Co., et al. v. Technicolor SA, et al.*, No. 13-cv-05262; | |
| *Sharp Electronics Corp., et al. v. Hitachi, Ltd., et al.*, No. 13-cv-01173; | |
| *Siegel v. Technicolor SA, et al.*, No. 13-cv-05261; | |
| *Target Corp., v. Technicolor SA, et al.*, No. 13-cv-05686. | |

1

**TABLE OF CONTENTS**

2

**Page**

3    I.    INTRODUCTION ........................................................................................................... 1

4    II.   LEGAL STANDARDS.................................................................................................... 1

5    III.  THERE IS NO EVIDENCE THAT TDA PARTICIPATED IN A CONTRACT, COMBINATION, OR CONSPIRACY IN RESTRAINT OF THE CRT TRADE ............ 3

6          A.    Allegations Regarding Thomson's Conduct Do Not Support An Inference Of TDA Participation In The Alleged Conspiracy ................................................ 6

7          B.    Videocon Provides No Basis For TDA Liability ................................................. 8

8          C.    There Is No Withdrawal Issue ............................................................................. 9

9    IV.   TDA IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO CLAIMS BASED ON COLOR DISPLAY TUBES BECAUSE TDA HAS NEVER BEEN IN THAT MARKET .............................................................................. 10

10   V.    TDA IS ENTITLED TO SUMMARY JUDGMENT AS TO CERTAIN CLAIMS BASED ON THE ILLINOIS BRICK STANDING REQUIREMENT.......................... 11

11   VI.   TDA IS ENTITLED TO SUMMARY JUDGMENT ON STATE LAW CLAIMS ON THE BASES OF DUE PROCESS AND STATUTES OF LIMITATIONS.............. 13

12   VII.  CONCLUSION.............................................................................................................. 13

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AD/SAT, Div. of Skylight, Inc. v. Associated Press*,
    181 F.3d 216 (2d Cir. 1999)........................................................................................2

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................2

*In re ATM Antitrust Litig.*,
    686 F.3d 741 (9th Cir. 2012)..................................................................................12

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d. Cir. 1999)..............................................................................3, 7

*Baker's Carpet Gallery, Inc. v. Mohawk Industries, Inc.*,
    942 F. Supp. 1464 (N.D. Ga. 1996) ........................................................................8

*In re Brand Name Prescription Drugs Antitrust Litigation*,
    123 F.3d 599 (7th Cir. 1997)...........................................................................9, 10

*In re Citric Acid Litig.*,
    996 F. Supp. 951 (N.D. Cal. 1998), *aff'd*, 191 F.3d 1090 (9th Cir. 1999)............................3, 7

*City of Moundridge v. Exxon Mobil Corp.*,
    No. 04-940, 2009 WL 5385975 (D.D.C. Sept. 30, 2009), *aff'd*, 409 Fed. App'x
    362 (D.C. Cir. 2011) ................................................................................................7

*In re Elec. Carbon Prods. Antitrust Litig.*,
    333 F.Supp.2d 303 (D.N.J. 2004) ..........................................................................3

*Esco Corp. v. United States*,
    340 F.2d 1000 (9th Cir. 1965)................................................................................2

*First National Bank of Arizona v. Cities Service Co.*,
    391 U.S. 253, 288-89 (1968)..................................................................................2

*Fragale & Sons Beverages Co. v. Dill*,
    760 F.2d 469 (3d Cir. 1985)....................................................................................3

*In re Fresh & Process Potatoes Antitrust Litig.*,
    834 F. Supp.2d 1141 (D. Idaho 2011)....................................................................2

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ..............................................................................................12

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

*Jardine v. Md. Cas. Co.*,
   823 F. Supp.2d 955 (N.D. Cal. 2011) .......................................................................2

*Kansas v. Utilicorp United, Inc.*,
   497 U.S. 199 (1990) ....................................................................................................12

*In re Linerboard Antitrust Litig.*,
   504 F. Supp.2d 38 ........................................................................................................3

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-2420 YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014).........................2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ............................................................................................1, 2, 7

*Microsystems, Inc. v. Hynix Semiconductor*,
   608 F. Supp.2d 1160 (N.D. Cal. 2009) ......................................................................9

*Monsanto Co. v. Spray-Rite Service Corp.*,
   465 U.S. 752 (1984) ....................................................................................................2

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010)........................................................................................2

*Royal Printing v. Kimberly Clark Corp.*,
   621 F.2d 323 (9th Cir. 1980)......................................................................................12

*Sancap Abrasives Corp. v. Swiss Indus. Abrasives*,
   19 Fed. App'x 181 (6th Cir. 2001)..............................................................................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp.2d 1109 (N.D. Ca. 2008) ..................................................................2, 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 11-0058, MDL No. 1827, 2012 WL 7062366 (N.D. Cal. Dec. 26, 2012) ........12

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ......................................................................................................9

*United States v. U.S. Gypsum Co.*,
   438 U.S. 422 (1978) ....................................................................................................2

*United States v. Vaquero*,
   997 F.2d 78 (5th Cir. 1993) (Opposition ) ...............................................................10

*In re Vitamins Antitrust Litig.*,
   320 F. Supp.2d 1 (D.D.C. 2004) ...............................................................................11

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

## I.      INTRODUCTION.

Defendant Technologies Displays Americas LLC ("TDA") moved for summary judgment because there is no evidence that TDA joined or participated in the cathode ray tube ("CRT") price-fixing conspiracy alleged by plaintiffs. It is undisputed that TDA was formed in July of 2005, TDA supplied color picture tubes ("CPTs") during the Relevant Period only from the fall of 2005 through 2007, TDA never sold color display tubes ("CDTs"), and TDA shut down its limited CPT operation in 2008 and since then has been a small glass recycler with one employee and one small office in Calexico, California. TDA was a complete stranger to the CRT litigation until March 2013, when it was sued by Sharp, followed by multiple "copycat" cases. Despite extensive discovery, there is simply no evidence that TDA joined or participated in any CRT conspiracy or agreed with competitors to fix prices, and no basis for forcing TDA to participate in lengthy and complex trials in these cases. TDA is entitled to summary judgment on all of the claims against it.[1]

## II.     LEGAL STANDARDS.

Plaintiffs allege a massive, global CRT price-fixing conspiracy starting in 1995, a decade before TDA existed, and seek to hold TDA jointly and severally liable for hundreds of millions, if not billions, of dollars despite the complete absence of evidence that TDA participated in the alleged conspiracy or agreed with competitors to fix prices. The record is devoid of any evidence against TDA, much less evidence sufficient to raise a genuine issue of material fact that it is more likely than not that TDA participated in the alleged conspiracy or acted improperly in any way.

Plaintiffs must come forward with "specific facts showing that there is a genuine issue for trial"; plaintiffs may not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

---

[1] Although they responded substantively to TDA's motion and attached a lengthy declaration and 50 exhibits to their Opposition, plaintiffs also assert that they need additional time to complete discovery with regard to Thomson and request that, in the alternative, the Court defer ruling on TDA's motion to allow plaintiffs to supplement the record with potential additional evidence which may be obtained from Thomson. TDA is entitled to summary judgment due to the complete absence of evidence against it. Moreover, plaintiffs have not made a sufficient showing to justify a continuance under Rule 56(d). In particular, plaintiffs have not shown that discovery from Thomson will yield any information regarding TDA, much less that such information will create an issue of material fact regarding TDA and the alleged conspiracy. TDA reserves the right to object to any further submittals by plaintiffs regarding TDA's motion.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

there is no 'genuine issue for trial.'" *Id.* at 587 (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). Plaintiffs cannot rely on pleadings or bare allegations but must provide admissible evidence. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citations omitted). The evidence must be more than a scintilla. *Id.* (*quoting Matsushita*, 475 U.S. at 586). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Jardine v. Md. Cas. Co.*, 823 F. Supp.2d 955, 959-60 (N.D. Cal. 2011) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

To avoid summary judgment, plaintiffs must provide evidence that "tends to exclude the possibility" of non-conspiratorial conduct by TDA. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). *See also Matsushita*, 475 U.S. at 588 ("conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy").

Plaintiffs must come forward with evidence that <u>TDA</u> knowingly participated in such conspiracy. *See, e.g.*, *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 463 (1978) (price-fixing liability "c[an] only be predicated on the knowing involvement of *each defendant, considered individually*, in the conspiracy charged" (emphasis added); *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999) ("There must . . . be some evidence of actual knowledge of, and participation in, the illegal scheme in order to establish a violation of the antitrust laws by a particular association member."); *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp.2d 1141, 1150 (D. Idaho 2011) (*quoting Monsanto*, 465 U.S. at 764, and recognizing requirement that each defendant have a "conscious commitment to a common scheme"); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 309192 at *13 (N.D. Cal. Jan. 21, 2014) (requiring plaintiffs "to allege that each individual defendant joined the conspiracy"). Participation by each defendant must be proven by evidence relating to that defendant's participation. *Esco Corp. v. United States*, 340 F.2d 1000, 1009 (9th Cir. 1965).

Plaintiffs must prove "that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F.

<div style="float:left">

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

</div>

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

Supp.2d 1109, 1117 (N.D. Ca. 2008) (*quoting In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp.2d 303, 311-12 (D.N.J. 2004)). *See also In re Citric Acid Litig.*, 996 F. Supp. 951, 954 (N.D. Cal. 1998) (summary judgment entered for defendant where plaintiffs failed to submit evidence that the particular defendant participated in the alleged conspiracy), *aff'd*, 191 F.3d 1090 (9th Cir. 1999). Evidence merely of an opportunity to collude cannot "sustain an antitrust plaintiff's burden, and, without more, does not create a jury question on the issue of concerted action." *In re Linerboard Antitrust Litig.*, 504 F. Supp.2d 38, 53 (*quoting Fragale & Sons Beverages Co. v. Dill*, 760 F.2d 469, 473 (3d Cir. 1985)). Attending trade meetings is also insufficient.  *Citric Acid*, 191 F.3d at 1098.

Employees of competitors in every industry communicate in various ways; such communications are not necessarily anticompetitive and do not show participation in a conspiracy. *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 133 (3d. Cir. 1999) ("evidence of social contacts and telephone calls among representatives of the defendants was insufficient to exclude the possibility that the defendants acted independently"). "[C]ommunication between competitors do not permit an inference of an agreement to fix prices unless 'those communications rise to the level of an agreement, tacit or otherwise.'" *Id.* at 126. Here, there is no evidence that the minimal alleged communications involving TDA rose anywhere near that level.

Plaintiffs must show more than just that a few TDA employees may have talked with employees of a few competitors a few times. They must provide evidence that TDA joined and participated in the alleged conspiracy. Plaintiffs have not done so here and thus their claims fail.

### III.   THERE IS NO EVIDENCE THAT TDA PARTICIPATED IN A CONTRACT, COMBINATION, OR CONSPIRACY IN RESTRAINT OF THE CRT TRADE.

The evidence here is far short of that required to create a genuine issue of material fact as to whether TDA joined the alleged conspiracy and actively participated in it. The scant TDA conduct alleged here is at least as consistent with permissible competition as with participation in an illegal conspiracy. Even with all the years of CRT litigation, millions of pages of documents produced, hundreds of days of depositions, and many comprehensive expert reports, the evidence is insufficient to create a genuine dispute of material fact as to TDA. In their Opposition to Defendant Technologies Displays Americas LLC's Motion for Summary Judgment

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

("Opposition"), plaintiffs argue for inferences not supported by the evidence. There is simply no evidence that would allow a jury to infer that TDA knowingly joined and participated in the alleged conspiracy.

Plaintiffs have proffered no evidence that TDA participated in the alleged price-fixing conspiracy. TDA did not even exist at the times that most of the meetings, in which prices were allegedly set, took place, nor is there evidence that TDA ever agreed with any competitor regarding the price of TDA's CPTs.[2] Plaintiffs allege that many hundreds of meetings occurred among competitors to set prices and production levels. However, as identified on plaintiffs' composite "Supplemental Exhibit A," TDA is not alleged to have attended a single one of those meetings, and there is not even a column for TDA in this huge chart purporting to list all of the known communications among the alleged conspirators. TDA was not formed until July 12, 2005 and did not acquire assets and commence operations until September 30, 2005, the day of the closing of the acquisition transaction with Thomson.[3]  The overwhelming majority of the conduct of which plaintiffs complain occurred long before TDA existed. Furthermore, not a single document includes any purported agreement by TDA with a competitor to fix prices or production levels, and plaintiffs have offered no evidence that any TDA prices were the result of an agreement by TDA with a competitor.

None of the documents plaintiffs cite that relate to that portion of the Relevant Time Period when TDA was in the CPT business (October 2005 to November 2007) support an inference that TDA participated in a price-fixing conspiracy. After voluminous discovery and the production of millions of pages, the only documents in this time period relied on by plaintiffs in their Opposition are the following:[4]

---

[2] TDA was not even in business during the first 83% of the Relevant Period, did not attend the alleged conspiracy meetings, and was not implicated in any criminal charges or pleas in connection with the CRT trade.

[3] Exhibits to plaintiffs' Opposition are identified herein as "Opp. Ex. __." Opp. Exhibit 39 states that Thomson completed the transfer to Eagle Corporation on September 30, 2005. While certain of plaintiffs' exhibits are subject to multiple evidentiary objections, TDA assumes, solely for purposes of this motion, that they are all admissible, and reserves the right to object to the admissibility of such documents at trial.

[4] Plaintiffs cite a few other documents purporting to reflect Thomson communications earlier in 2005. Opp. Ex. 7, 8, 9. None of the Thomson people listed in these communications were TDA employees, and none of those exhibits support plaintiffs' claim against TDA.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- July 31, 2006 departure email from Jack Brunk, a former Thomson sales person who was TDA's sales director for approximately ten months. Opp. Ex. 23 & 35. This was Mr. Brunk's email announcing his departure to take another job and does not in any way support plaintiffs' claim against TDA. The forwarding email that is part of Exhibit 23 says nothing about TDA's participation in a conspiracy, or any other activity by TDA after it was created.

- March 22, 2006 internal Samsung email allegedly reporting information Thomson conveyed to Sharp. Opp. Ex. 31. At most, this hearsay email shows that Samsung may have obtained information from someone at Sharp which Sharp may have obtained from someone at Thomson (not TDA) about Thomson's production at some unidentified facility for some unidentified market (Turkey, Brazil and China are mentioned). The email expresses skepticism as to the accuracy of the information, which does not relate to prices and which Sharp could reasonably have obtained as a CRT customer. The only reference to a TDA person is the statement that Mr. Brunk was scheduled for a business trip to China and Japan to visit customers. That information was not confidential, had nothing to do with prices, and could reasonably have been told to Sharp, one of the customers Mr. Brunk is said to be planning to visit. Nothing in this document justifies an inference that TDA knowingly participated in a price-fixing conspiracy.

- December 15, 2005 internal Panasonic email and the author's purported notes of a meeting in Korea. Opp. Ex. 33 & 34. These hearsay exhibits do not mention TDA, do not identify who attended the meeting, do not mention the United States but reference European markets, Asia and China, and do not contain any actual pricing or production information. At most, there is hearsay information that an unidentified person said an unidentified Indian person expressed opinions. Nothing here supports an inference that TDA knowingly participated in a price-fixing conspiracy.

- March 31, 2006 internal Panasonic email allegedly reporting information compiled by Panasonic groups from unidentified sources. Opp. Ex. 34. The document does not

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1   mention TDA or support an inference of TDA participation in any price-fixing

2   conspiracy.

3   • March 20, 2008 severance agreement with TDA employee Key Lee. Opp. Ex. 35. This

4       document has nothing whatsoever to do with plaintiffs' price-fixing allegations and

5       supports no relevant inferences of any kind.

6       This is the totality of the purported evidence of TDA's alleged participation in a price-

7   fixing conspiracy. None of these documents, individually or collectively, come close to creating a

8   fact issue as to TDA participation or supporting an inference of such participation. Inferences

9   must be based on facts, and there are no facts here that allow the inference plaintiffs want to

10  draw.

11          **A.     Allegations Regarding Thomson's Conduct Do Not Support An
                      Inference Of TDA Participation In The Alleged Conspiracy.**

12      In the absence of direct evidence that TDA knowingly participated in a price-fixing

13  conspiracy, plaintiffs argue that an inference of TDA participation may be drawn from

14  Thomson's alleged prior conduct. Plaintiffs contend that because Thomson allegedly participated

15  in a price-fixing conspiracy, and TDA acquired part of Thomson's North American CPT

16  operations in 2005, a jury could infer that TDA participated in such alleged conspiracy. Plaintiffs

17  rely on the facts that some Thomson sales people became employees of TDA, Thomson assisted

18  TDA in administrative matters during a transition period, TDA used the Thomson name for a

19  period in transition, and TDA continued Thomson's human relations policies. None of these facts

20  support the inference plaintiffs want to draw, and none allow a conclusion that TDA engaged in a

21  price-fixing conspiracy. Notably, none of these facts bear directly on how TDA set its prices, and

22  none of the exhibits plaintiffs cite show that TDA reached any pricing agreement with any

23  competitor. That there was a transition period after formation of a new start-up company is not

24  surprising and does not support an inference of anticompetitive activity. That a new company

25  would continue similar human resources policies is also hardly surprising and is not

26  anticompetitive in any sense, let alone with regard to TDA's product prices.

27      Plaintiffs contend that two Thomson sales people--Jack Brunk and Key Lee--were hired

28  by TDA, that they may in former years have talked with employees of competitors, and that the

San Diego office was close to some competitors' offices.[5] None of these facts support an inference that TDA agreed with competitors to fix prices. That CPT suppliers had offices close to their Mexican *maquiladora* manufacturing facilities and customers proves nothing relevant to this lawsuit. Attending an annual consumer electronics show, along with thousands of other people in the electronics industry, or speaking with competitor personnel, likewise proves nothing relevant here.[6]

There is no dispute that J.P. Hanrahan was in charge of sales and marketing for Thomson, that he did not become a TDA employee, and that Thomson's sales personnel reported up to Didier Trutt of Thomson. Opp. Ex. 5, ¶ 13; Opp. Ex. 12 at 46; Opp. Ex. 19. There is also no dispute that Mr. Brunk, who had been only one of several sales people for Thomson, became the sales director for TDA, reporting to Terry Moody, who had previously been in the manufacturing operation in Mexico and who became president of TDA, or that Mr. Moody reported to a new person in India. Opp. Ex. 15 at 132; Opp. Ex. 12 at 138; Opp. Ex. 27 at TDA 00358. TDA's relevant sales and marketing personnel and reporting relationships thus were not the same as Thomson's had been. Mr. Brunk also made clear that he left Thomson and changed employers, and that his responsibilities then changed. Opp. Ex. 15 at 90-92.

Plaintiffs cite Mr. Brunk's deposition statement that the pricing and negotiation process at TDA was not changed from the Thomson process. Opp. Ex. 15 at 132. Plaintiffs ignore his testimony as to what the process was: Mr. Brunk did not have a price target in mind when he

---

[5] Another Thomson sales person, Mr. Oglesby, was located in Indianapolis, Indiana and did not become a TDA employee. Opp. Ex. 18 at 36-37.

[6] *See, e.g.*, *City of Moundridge v. Exxon Mobil Corp.*, No. 04-940, 2009 WL 5385975, at *9 (D.D.C. Sept. 30, 2009) ("Evidence that competitors had contact with each other or exchanged information does not establish a conspiracy."), *aff'd*, 409 Fed. App'x 362 (D.C. Cir. 2011); *Sancap Abrasives Corp. v. Swiss Indus. Abrasives*, 19 Fed. App'x 181, 190-91 (6th Cir. 2001) (even "frequent meetings between alleged conspirators will not survive summary judgment without additional evidence that would permit an inference that the meetings led to an illegal agreement."); *Citric Acid*, 996 F. Supp. at 959 (fact that prices were discussed does not mean defendant agreed to fix prices); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999) (competitors may exchange price information for legitimate business reasons). In *Matsushita*, 475 U.S. at 588, the Court granted summary judgment despite meetings among competitors to exchange information. TDA's argument here is even more compelling, as there is no evidence whatsoever of improper TDA communications, and no evidence that the few alleged communications involving TDA included confidential pricing information.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

approached a customer to begin price negotiations, the customer "provided us with what their price targets were," and he reported the information internally. *Id.* at 125-26. Notably, this process related to dealings with customers, not competitors. Nothing in Mr. Brunk's testimony supports an inference that TDA agreed on prices with competitors. Plaintiffs also cite Mr. Brunk's testimony, "For me, it was the same company." Opposition at 7, 13. That statement referred to his use of a work laptop and does not support plaintiffs' argument. *See* Opp. Ex. 15 at 28.

*Baker's Carpet Gallery, Inc. v. Mohawk Industries, Inc.*, 942 F. Supp. 1464 (N.D. Ga. 1996), does not support for plaintiffs' argument. That case involved an exclusive distributor agreement between Fieldcrest and the plaintiff, with retail price requirements and a prohibition of selling to other dealers.  Mohawk purchased assets from Fieldcrest on July 30, 1993 and promptly terminated the plaintiff as a dealer. It was Mohawk, the asset purchaser, that actually enforced the agreement by terminating plaintiff's distributorship arrangement.  The court granted Mohawk's summary judgment motion as to Fieldcrest's conduct before the sale, but denied the motion as to Mohawk's own subsequent conduct. The court found that there was sufficient evidence that Mohawk had adopted Fieldcrest's policies toward its dealers (the very basis for the lawsuit), had enforced the policies against plaintiff, had retained the same executive personnel, and had made no significant changes to sales and marketing operations. *Id.* at 1480. Here, in contrast, there is no evidence that TDA adopted or enforced a price-fixing agreement, adopted any price-fixing policies of Thomson, or even retained the same executive personnel and sales and marketing operations. In fact, sales and marketing personnel and reporting relationships changed with TDA.[7]

### B.    Videocon Provides No Basis For TDA Liability.

Plaintiffs also argue that TDA was an ultimate subsidiary of Videocon Industries, Inc. ("Videocon"), that Videocon allegedly participated in anticompetitive meetings, and that a jury could infer that Videocon dominated TDA's pricing decisions such that TDA should be presumed to have participated in a price-fixing conspiracy. Once again, plaintiffs make only conclusory assertions that find no support in the evidence. Plaintiffs rely on the statements that Albino Bessa,

---

[7] As noted above, Thomson's head of sales and marketing, Mr. Hanrahan, did not work for TDA, Mr. Brunk, who had been a sales person, assumed greater responsibility for TDA, and the reporting relationship went to Mr. Moody.

since 2008 the sole employee of TDA, reports to an employee of a Videocon entity in India, and that Mr. Bessa did not have authority to make pricing decisions. Plaintiffs fail to point out, however, that, until TDA's CPT business was shut down, Mr. Bessa, an engineer, worked only in manufacturing and was not involved in any way in sales or marketing. Opp. Ex. 5 ¶ 1; Opp. Ex. 29 at 31, 36, 39-41. That a manufacturing engineer was not involved in product pricing is neither surprising nor relevant. Likewise, the mere fact that TDA reports to its parent organization supports no relevant inference. Furthermore, there is no evidence that the Videocon person to whom Mr. Bessa reports suggested pricing or made any suggestions about how to run TDA's business, and Videocon played no role in setting CRT prices. Opp. Ex. 29 at 119-20, 151-52.

It is well established that a corporate parent and subsidiary are separate entities which normally cannot be held liable for one another's acts. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  *See also Microsystems, Inc. v. Hynix Semiconductor*, 608 F. Supp.2d 1160, 1193-94 (N.D. Cal. 2009) ("[A] corporate entity's actions cannot be imputed to another corporate entity.")[8] Plaintiffs offer no evidence that Videocon and TDA operated as a single enterprise in a price-fixing conspiracy. The evidence is just the opposite. *See* Opp. Ex. 29 at 119-20, 151-52.

In addition, plaintiffs have offered no evidence that Videocon participated in any way in a price-fixing arrangement in the United States market, and the few speculative and ambiguous documents mentioning Videocon fall short of showing Videocon was a conspiracy participant. *See* Opp. Ex. 32-34.

### C.      There Is No Withdrawal Issue.

Plaintiffs also contend (Opposition at 16-17) that TDA can be liable because Thomson allegedly participated in the price-fixing conspiracy, and TDA did not affirmatively withdraw. Plaintiffs ask the Court to find as a matter of law that a non-participant in a price-fixing conspiracy can be vicariously liable unless it takes affirmative action to withdraw from a conspiracy in which it did not participate and of which it may even be unaware. There is no authority for such an expansive claim of liability. *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599 (7th Cir. 1997), is factually and legally different from this case. Evidence

---

[8] Plaintiffs cite several cases (Opposition at 14-15) in which motions to dismiss were denied, but which are not applicable to the summary judgment facts here.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

had been presented that drug manufacturers and wholesalers had agreed to exclude pharmacies from discount arrangements, resulting in higher prices paid by the pharmacies for drug products. Two of the defendant drug companies, DuPont and Merck, formed a joint venture called DuPont Merck to take over DuPont's drug division. The trial court granted summary judgment for DuPont Merck, apparently because it had changed its pricing policies to charge the same amount for other customers as for pharmacies. DuPont Merck was "conceded to be the successor to DuPont Pharma so that it was "liable under standard principles of successor liability even if cleaned up its predecessor's act upon taking over." *Id.* at 615. The court further found that DuPont Merck's adoption of the single-price policy did not end the antitrust violation, but rather merely created "an additional class of plaintiffs." *Id.* The facts here are quite different.

*United States v. Vaquero*, 997 F.2d 78 (5th Cir. 1993) (Opposition at 17), is also inapposite. *Vaquero* was a criminal cocaine conspiracy case in which a defendant who was deeply involved in the conspiracy failed to demonstrate his withdrawal. *Id.* at 82-83.

Thus, there is no direct evidence that TDA agreed with competitors to fix CPT prices, and there is no circumstantial evidence from which a jury could draw the inference that TDA entered into any such agreement. Any inference must be supported by facts that make it more likely than not that an anticompetitive agreement was reached, and that TDA did not act independently of its competitors. There is no such evidence here.

Plaintiffs' argument that an innocent acquirer of assets can be vicariously liable for virtually limitless damages flowing from the misconduct of others is also contrary to the very concept of a conspiracy and to the well-established rule that plaintiff must prove each defendant joined the conspiracy and played a role in it. *See* cases cited on page 2 above. As noted *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp.2d at 1117, "at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." Plaintiffs cannot prevail against TDA unless plaintiffs show that TDA made the decision and joined the alleged price-fixing conspiracy. There is no evidence that TDA did so.

## IV.   TDA IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO CLAIMS BASED ON COLOR DISPLAY TUBES BECAUSE TDA HAS NEVER BEEN IN THAT MARKET.

There is no dispute that TDA never manufactured or distributed color display tubes, which

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1 | are used primarily in computer monitors, as opposed to color picture tubes, which are used

2 | primarily in television sets. TDA's brief involvement in the CRT market was limited to color

3 | picture tubes only. Just as there is no evidence that TDA participated in any price-fixing

4 | conspiracy with regard to CPTs, there is also no evidence that TDA participated in any conspiracy

5 | with regard to CDTs.

6 | In its motion, TDA relied upon the authorities and analysis in Thomson Consumer's

7 | motion for summary judgment regarding the same issue. The main case relied upon was *In re*

8 | *Vitamins Antitrust Litig.*, 320 F. Supp.2d 1 (D.D.C. 2004). Plaintiffs, in their Opposition to the

9 | Thomson motion, also relied upon *In re Vitamins*. Applying the legal standard, the issue with

10 | regard to TDA becomes whether there is any evidence that TDA engaged in the conduct and had

11 | the knowledge required for plaintiffs to take TDA to trial on this over-arching global conspiracy

12 | theory involving both color picture tubes and color display tubes. Since there is no evidence to

13 | support TDA's alleged participation in any price-fixing conspiracy, it follows that there is no

14 | evidence supporting any TDA liability with regard to CDTs. Consistent with this fact, plaintiffs

15 | have brought forth no documents showing any TDA involvement in any aspect of the CDT

16 | business or market.

17 | In their Opposition, plaintiffs did not argue or provide evidence to satisfy the requirements

18 | for TDA liability with regard to the CDT sales by others who were in that market. Rather,

19 | plaintiffs simply defer to their response to the Thomson motion, which addressed only Thomson's

20 | alleged knowledge and documents with regard to the CDT market. Thus, there is no evidence

21 | supporting any TDA liability with regard to the CDT sales by others. TDA's motion for summary

22 | judgment with regard to this issue should be granted.

23 | **V.    TDA IS ENTITLED TO SUMMARY JUDGMENT AS TO CERTAIN CLAIMS BASED ON THE *ILLINOIS BRICK* STANDING REQUIREMENT.**

24 | It is undisputed that plaintiffs[9] never purchased color picture tubes from TDA. Rather,

25 | plaintiffs bought finished products—television sets—from third parties and are at most indirect

26 | purchasers from TDA. Consequently, absent an exception, plaintiffs' claims are barred by the

27 | *Illinois Brick* rule that only direct purchasers of a price-fixed product may pursue damages claims

28 |

[9] This argument does not apply to the Sharp plaintiffs.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

under federal antitrust law. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 734-35 (1977). Exceptions to this rule must be narrowly construed. *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199, 207, 217 (1990).

Plaintiffs' joint and several liability argument (Opposition at 18) fails because it is contingent upon TDA's having participated in the alleged conspiracy. As discussed above, that is not the case.

Plaintiffs next contend (Opposition at 18-20) that there are fact issues as to whether the ownership/control exception to *Illinois Brick* applies, and that some plaintiffs purchased from entities owned or controlled by co-conspirators.  Assuming plaintiffs are correct on the legal theory, the relevant time period for evaluating the ownership/control exception commences in November 2007, when it would have been possible for the direct purchasers to bring suit, had they desired to do so. *See Royal Printing v. Kimberly Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980); *In re ATM Antitrust Litig.*, 686 F.3d 741, 758 n. 10 (9th Cir. 2012) (concern of the exception is with the controlling party preventing the direct purchaser from bringing suit). Plaintiffs do not contend that they purchased from entities owned or controlled by TDA, but argue only that some plaintiffs purchased from entities owned or controlled by other alleged conspirators. First, as discussed above, since TDA was not part of any CRT conspiracy, it had no co-conspirators and the ownership/control exception does not apply to plaintiffs' purchases with regard to TDA.

Second, plaintiffs have not shown that all of the relevant direct purchasers from TDA, from which some plaintiffs allegedly made purchases, were actually owned or controlled by the alleged co-conspirators during the relevant period, from November 2007 to the present. It is clear that a minority stock ownership interest is not sufficient for *Royal Printing* control. *In re ATM*, 686 F.3d at 757; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 11-0058, MDL No. 1827, 2012 WL 7062366, at *4 (N.D. Cal. Dec. 26, 2012) (summary judgment warranted when ownership interest less than 50%). Minority board of director membership is also insufficient. *See, e.g., In re ATM*, 686 F.3d at 757-58 (control of board must be demonstrated); *In re TFT-LCD (Flat Panel)*, No. 11-0058, MDL No. 1827, 2012 WL 7062366, at *4 (fact of minority on board was not sufficient to defeat summary judgment).

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

With regard to TTE Technologies, one of TDA's customers, plaintiffs contend only that Thomson S.A. owned a 29-33% minority interest. Opposition at 20 n. 79. Plaintiffs do not allege that Thomson S.A. owned a majority interest at any relevant time, and TDA is entitled to summary judgment with regard to all plaintiffs' claims based on purchases from TTE Technologies. With regard to JVC Industrial, another of TDA's customers, plaintiffs contend only that Panasonic owned a 38.6% minority interest after August 2007, the relevant period for this purpose. Opposition at 19 n. 75. TDA is thus entitled to summary judgment with regard to all plaintiffs' claims based on purchases from JVC Industrial. Plaintiffs set forth no evidence that the Sears/Kmart or Crago plaintiffs purchased any CPTs from any customer of TDA, and TDA's motion should be granted as to those plaintiffs based on *Illinois Brick*. As to Sanyo Manufacturing, Samsung International, and Daewoo Electronics, which were additional TDA color picture tube customers, there appear to be fact issues with regard to plaintiffs' purchases from those entities.[10]

## VI.   TDA IS ENTITLED TO SUMMARY JUDGMENT ON STATE LAW CLAIMS ON THE BASES OF DUE PROCESS AND STATUTES OF LIMITATIONS.

Plaintiffs did not respond to TDA's state law arguments so to the extent plaintiffs have not already stipulated to dismiss their state law claims, TDA's motion on these grounds should be granted.

## VII.   CONCLUSION.

For the foregoing reasons, this Court should grant summary judgment in favor of TDA as set forth above.

RESPECTFULLY SUBMITTED this 23rd day of January, 2015.

SQUIRE PATTON BOGGS (US) LLP

*/s/ Donald A. Wall*
Mark Dosker
Nathan Lane, III
275 Battery Street, Suite 2600
San Francisco, CA  94111
Telephone: 415.954.0200
Facsimile: 415.393.9887

---

[10] Plaintiffs provided pages from an expert's reports regarding CompuCom and Tech Data (Opp. Ex. 42 & 48), but those plaintiffs never served TDA and TDA is not a defendant in those cases.

1

2

Email: mark.dosker@squirepb.com
nathan.lane@squirepb.com

3

Donald A. Wall (*Pro Hac Vice*)
SQUIRE PATTON BOGGS (US) LLP
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: + 1 602 528 4000
Facsimile: +1 602 253 8129
Email: donald.wall@squirepb.com

4

5

6

7

Attorneys for Defendant Technologies Displays
Americas LLC with respect to all cases except *Office
Depot, Inc. v. Technicolor SA, et al.* and *Sears, Roebuck
and Co., et al. v. Technicolor SA, et al.*

8

9

CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP

10

11

*/s/* Jeffrey I. Zuckerman
Jeffrey I. Zuckerman (*Pro Hac Vice*)
Ellen Tobin (*Pro Hac Vice*)
101 Park Avenue
New York, New York 10178
Telephone: 212.696.6000
Facsimile: 212.697.1559
Email: jzuckerman@curtis.com
etobin@curtis.com

12

13

14

15

16

Arthur Gaus (SBN 289560)
DILLINGHAM & MURPHY, LLP
601 California Street, Suite 1900
San Francisco, California 94108
Telephone: 415.397.2700
Facsimile: 415.397-3300
Email: asg@dillinghammurphy.com

17

18

19

20

Attorneys for Defendant Technologies Displays
Americas LLC with respect to *Office Depot, Inc. v.
Technicolor SA, et al.* and *Sears, Roebuck and Co.,
et al. v. Technicolor SA, et al.*

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

**DECLARATION OF SERVICE**

The undersigned certifies and declares as follows:

I am employed in the County of Maricopa, State of Arizona; I am over the age of eighteen years and am not a party to this action; my business address is 1 East Washington Street, Suite 2700, Phoenix, Arizona 85004, in said County and State.  On the date below, I served:

**DEFENDANT TECHNOLOGIES DISPLAYS AMERICAS LLC'S**
**REPLY MEMORANDUM IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT [ECF No. 2984]**

to all named counsel of record as follows:

☒ BY ECF (ELECTRONIC CASE FILING): I e-filed the above-detailed document(s) utilizing the United States District Court, Northern District of California's mandated ECF (Electronic Case Filing) service on January 23, 2015. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I certify and declare under penalty of perjury that the foregoing is true and correct.

Executed on January 23, 2015, at Phoenix, Arizona.

/s/ *Sara Ramirez*