Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., Toshiba America*
*Consumer Products, L.L.C., and Toshiba America*
*Electronic Components, Inc.*

Additional Counsel On Signature Pages

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC MDL No. 1917 |
| This Document Relates to: *P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02648; *P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al.*, No. 13-cv-05725. | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO MARTA** **ORAL ARGUMENT REQUESTED** Date:          February 6, 2015 Time:          10:00 a.m. Before:        Hon. Samuel Conti |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**<u>TABLE OF CONTENTS</u>**

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT.................................................................................................. 3

     A.     MARTA Lacks Antitrust Standing With Respect To Its Sherman
          Act Claim............................................................................................... 3

     B.     Because MARTA Has Dismissed Its State-Law Claims, The Court
          Does Not Need To Determine Whether MARTA Lacks Standing
          Under The Arizona Antitrust Act And The Illinois Antitrust Act...................... 9

     C.     The Ownership Or Control Exception To *Illinois Brick* Bars
          MARTA's Claims................................................................................ 10

III.   CONCLUSION............................................................................................. 14

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT WITH RESPECT TO MARTA
Case No. 07-5944 SC
MDL No. 1917

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>                                                                    <u>Page(s)</u>

3
4
*American Ad Management, Inc. v. General Telephone Co. of California*,
 190 F.3d 1051 (9th Cir. 1999) .............................................................. 1, 3, 9

5
*Associated General Contractor of California, Inc. v. California State*
6
 *Council of Contractors*, 459 U.S. 519 (1983) ........................................ 6, 7

7
*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
 182 F.3d 1096 (9th Cir. 1999) ................................................................ 8, 9

8
*Bryant v. Mattel, Inc.*,
9
 No. CV 04-09049 SGL (RNBx), 2007 WL 5430885 (C.D. Cal. July 2,
10
 2007) ........................................................................................................ 5

11
*Burkhalter Travel Agnecy v. MacFarms Int'l, Inc.*,
 141 F.R.D. 144 (N.D. Cal. 1991) ............................................................. 2

12
*County of Oakland v. City of Detroit*,
13
 866 F.2d 839 (6th Cir. 1989) ................................................................... 8

14
*Del. Valley Surgical Supply Inc. v. Johnson & Johnson*,
 523 F.3d 1116 (9th Cir. 2008) ................................................................. 7, 8
15

16
*Illinois Brick v. Illinois*,
 431 U.S. 720 (1977) ................................................................................. 11

17
*In re Mushroom Direct Purchaser Antitrust Litigation*,
18
 No. 06-cv-3523, 2008 WL 583906 (E.D. Pa. March 3, 2008) ................. 12

19
*In re Toilet Seat Antitrust Litigation*,
 No. 75-184, 1977 WL 1453, (E.D. Mich. Aug. 24, 1977)........................ 13

20
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
21
 475 U.S. 574 (1986) ................................................................................. 9

22
*Obron v. Union Camp Corp.*,
 355 F. Supp. 902 (E.D. Mich. 1972), *aff'd*, 477 F.2d 542 (6th Cir.
23
 1973) ........................................................................................................ 8

24
*Prentice v. Fund For Public Interest Research, Inc.*,
25
 No. C-06-7776 SC, 2007 WL 2729187 (N.D. Cal. Sept. 18, 2007)........... 10

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT WITH RESPECT TO MARTA
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## I.      INTRODUCTION

1.      <u>MARTA Lacks Antitrust Standing</u>     Robert Thompson, the Rule 30(b)(6) witness for MARTA, testified that MARTA would follow a "formula" when setting prices to its members.  Specifically, the price charged by MARTA to its members would equal the price charged by vendors to MARTA, with the exception of a two-percent administrative fee and a "roundup" (whereby the price of merchandise would simply be raised "up to the next dollar" or two).  Mr. Thompson acknowledged that, if the price charged by the vendor to MARTA increased from $100 to $110, then the price charged by MARTA to its members would also increase from $100 to $110 (taking into account the two-percent administrative fee and the roundup).  Mr. Thompson also acknowledged that, if the price charged by the vendor to MARTA dropped from $100 to $90, then the price charged by MARTA to its members would also drop from $100 to $90 (taking into account the two-percent administrative fee and the roundup).  Because of this formula, MARTA would actually benefit from any price increase (whether caused by an illegal overcharge or otherwise).  "There can be no antitrust injury if the plaintiff stands to gain from the alleged unlawful conduct."  *American Ad Management, Inc. v. General Telephone Co. of California*, 190 F.3d 1051, 1056 (9th Cir. 1999) (citation omitted).

By its brief, MARTA attempts to obfuscate the issue by discussing a variety of facts, some of which are irrelevant to this issue and others of which are simply contradicted by the sworn testimony of MARTA's corporate representative.  As to the law, MARTA argues that we are trying to use *Associated General Contractors* to defeat the direct purchaser standing rules articulated in *Hanover Shoe* and *Illinois Brick*, but that is not the case.  *Hanover Shoe* and *Illinois Brick* each involved the question of who should be the plaintiff when damages are passed on from a direct purchaser to an indirect purchaser.  *Associated General Contractors* involved the more general question of what parties have antitrust standing pursuant to Section 4 of the Clayton Act.  Such standing does not exist where, as here, the plaintiff stands to gain from the allegedly unlawful conduct.  MARTA did not suffer any harm by reason of any

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    purported overcharge.  Thus, it lacks standing to bring this lawsuit because it has not suffered

2    any antitrust injury.

3         2.    MARTA Has Dismissed Its State-Law Claims   Since the filing of our motion

4    to dismiss, MARTA has dismissed its state-law claims.  Thus, the Court no longer needs to

5    determine whether MARTA lacks standing under the Arizona Antitrust Act and the Illinois

6    Antitrust Act.

7         3.    MARTA's Federal Claim Is Barred By The Ownership Or Control Exception

8    Of *Illinois Brick*   In its brief, MARTA concedes key facts surrounding the relationship

9    between MARTA and its members:  (1) all of MARTA's members were shareholders of

10   MARTA (MARTA Br. at 4); (2) MARTA operated for the purpose of utilizing the collective

11   volume of its members to purchase product at the most favorable acquisition cost possible for

12   its members (*id.*); (3) MARTA's business and affairs were managed by a "twelve-person

13   Board of Directors selected from, and elected by, its membership" (*id.* at 5); and (4)

14   "MARTA acted as a 'non-exclusive purchasing agent' for every member of MARTA" (*id.* at

15   6).

16        The existence of these undisputed material facts (as well as other facts that are

17   uncontested) provides a separate reason why MARTA's federal claim should be dismissed.

18   Where an indirect purchaser owns or controls the direct purchaser, only the indirect purchaser

19   may sue because only the indirect purchaser is "the party sustaining the injury caused by the

20   fixing of prices."  *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 148

21   (N.D. Cal. 1991).  This exception to *Illinois Brick* applies here because MARTA was both

22   owned and controlled by its members, the entities to whom MARTA sold merchandise

23   containing the allegedly price-fixed CRTs.

24        MARTA's main argument is that Judge Illston considered this issue in the TFT-LCD

25   matter and ruled against the defendants.  In our motion to dismiss, however, we provided an

26   extensive discussion of Judge Illston's ruling and explained why the Court should not follow

27   that ruling here.   In any event, Judge Illston did not consider the antitrust standing arguments

28   that we make in our current motion to dismiss.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## II.   ARGUMENT

### A.   MARTA Lacks Antitrust Standing With Respect To Its Sherman Act Claim

In its brief, MARTA does not contest the fact that every plaintiff seeking recovery under the Sherman Act needs to have antitrust standing (Mot. at 10) and that one element of antitrust standing is whether the plaintiff has suffered antitrust injury. *See American Ad Management*, 190 F.3d at 1055 ("the Supreme Court has noted that '[a] showing of antitrust injury is necessary, but not always sufficient, to establish standing under § 4'") (citation omitted).

We demonstrated in our motion for summary judgment that MARTA did not suffer antitrust injury because the prices that MARTA charged its members were ***identical*** to the prices that vendors charged MARTA, with the exception of a two-percent administrative fee and a "roundup" (whereby the price of merchandise would simply be raised "up to the next dollar" or two). Part of the administrative fee and roundup was used to cover MARTA's expenses while another part was used to develop "core model" discounts for MARTA's members. *See generally* Def. Mot. at 8 (discussing the administrative fee and roundup), 12 (MARTA Rule 30(b)(6) testimony of Robert Thompson discussing the relationship between the price charged by vendors to MARTA and the price charged by MARTA to its members).

Notwithstanding the fact that the Rule 30(b)(6) testimony of Robert Thompson was displayed prominently in our motion for summary judgment (at pages 12-13), MARTA only addresses this key issue in a footnote. MARTA Br. at 9 n.8. Although MARTA acknowledges the existence of a price formula, MARTA asserts (without citation to the record), that "this 'formula' was formulated in the sole discretion of MARTA on a product by product basis, and different 'formulas' applied to different products." *Id.* The word "discretion," however, is not mentioned once in the transcript of MARTA's Rule 30(b)(6) deponent. MARTA Ex. 2 at 60-96 (word index for Rule 30(b)(6) deposition of Robert Thompson). On the contrary, when discussing MARTA's pricing policy, Mr. Thompson

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    repeatedly made reference to a single formula, such as the following when asked how

2    MARTA would respond when its vendors reduced the price:

3          Q.     For the reduction in price, would it always be the case that

4          the reduced price from the vendor to MARTA, whatever the

5          reduction would be, that would be the same reduction that

6          MARTA would provide to the member, taking into account the

7          roundup, which includes the administrative fee?

8          MR. SHAW:  Object to the form.

9          MR. DIEL:     Objection.  Lack of foundation.

10         THE WITNESS:    ***It would follow the same formula***.

11         Q.     You're aware of no exceptions to this formula, correct?

12         MR. SHAW:  Object to the form.

13         MR. DIEL:     Same objection.

14         THE WITNESS:     No.

15    Def. Ex. B (Dep. Tr. of Robert Thompson at 132:24-25, 133:1-14) (emphasis added).

16       Elsewhere, Mr. Thompson confirmed the pricing formula used by MARTA as follows:

17         Q.     Okay.  So it would be fair to say that the only difference

18         between the price charged by the vendor to MARTA, the price

19         charged by MARTA to the member, the only difference would be

20         this roundup factor that we've discussed?

21         A.     Yeah.  In the roundup, the admin fee was also in that

22         roundup.

23    Def. Ex. B. (Dep. Tr. of Robert Thompson at 126:10-16).

24       MARTA attempts to distance itself from the pricing formula described by its Rule

25    30(b)(6) deponent by arguing that "[t]here was no formula for determining the exact level of

26    MARTA's pricing to its members."  MARTA Br. at 9.  But in support of this proposition,

27    MARTA relies on the testimony of one of its fact witnesses who testified about an entirely

28    separate question — whether there existed a formula to determine whether *discounts* provided

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  by vendors would be provided to members.  *See* MARTA Ex. 4 (Dep. Tr. of Aimee Fields at

2  125:12-25, 126:1-3).  That testimony does nothing to detract from the testimony of MARTA's

3  Rule 30(b)(6) deponent, Robert Thompson.  The purpose of a Rule 30(b)(6) deposition "is to

4  create testimony that will bind the corporation."  *Bryant v. Mattel, Inc.*, No. CV 04-09049

5  SGL (RNBx), 2007 WL 5430885, at *2 (C.D. Cal. July 2, 2007) (citation and internal

6  quotation marks omitted).  By his testimony, Mr. Thompson unequivocally stated that there

7  existed a single formula that MARTA used for determining prices to its members.  Aside from

8  being the Rule 30(b)(6) designee for MARTA, who was responsible to "testify about

9  information known or reasonably available to the organization" (Fed. R. Civ. P. 30(b)(6)), Mr.

10  Thompson was also the Executive Director for MARTA.  Thus, he was in the very best

11  position to understanding MARTA's pricing policy.

12       MARTA also argues that the "roundup" discussed by Mr. Thompson could actually be

13  a *negative* number (MARTA Br. at 9 n.8), but the testimony cited by MARTA does not

14  support this assertion.  Mr. Thompson consistently testified that the "roundup" was a positive

15  amount, one that was used as part of MARTA's pricing formula:

16            Q.    Remember we had a discussion earlier today about

17            holdbacks –

18            A.    Yes.

19            Q.    -- or core models?  I was a little confused as to how the

20            mechanics of that worked.  I was wondering if  your could run it

21            through me again and maybe start by explain to me what the term

22            "holdback" means.

23            A.    "Holdback" and "roundup," those terms could probably be

24            interchangeable.  *I think we've talked at great length about the*

25            *formula, of how we got to the pricing*.  We can get to the AP net

26            and then you would get to the roundup.  And we had a couple of

27            examples of that where there was a roundup formula.  Generally it

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    *rounded up* to the next dollar but not always.  ***It might round up a***

2    ***couple of dollars or two.***

3    MARTA Ex. 2 (Dep. Tr. of Robert Thompson at 185:1-15) (emphasis added).

4    The record is clear that MARTA, consistent with its self-professed role as a "non-

5    exclusive purchasing agent," was simply a conduit between vendors and members.  The only

6    difference between the price vendors charged MARTA and the price MARTA charged

7    members was a two-percent administrative fee and a "roundup."  Thus, MARTA actually

8    benefitted from any alleged overcharge because such an overcharge would simply mean that

9    MARTA could generate more administrative fees and more roundups.

10    In its brief, MARTA asserts that it has suffered antitrust injury because it is "a direct

11    purchaser of finished goods containing price-fixed components."  MARTA Br. at 15.  This

12    simplistic analysis has never been the rule.  Rather, the rule of antitrust standing articulated in

13    *Associated General Contractors* is a case-specific analysis that requires, among other things, a

14    "focus on the nature of the plaintiff's alleged injury."  *Associated General Contractor of*

15    *California, Inc. v. California State Council of Contractors*, 459 U.S. 519, 538 (1983).

16    MARTA also asserts that our motion is an attempt to use *Associated General*

17    *Contractors* "to turn the firm direct purchaser standing doctrine, long-established by Supreme

18    Court cases (*Illinois Brick* and *Hanover Shoe*), on its head and reinvigorate pass-on as a

19    defense to Sherman Act claims."  MARTA Br. at 15-16.  MARTA is incorrect.  In reaching its

20    decision, the *Associated General Contractors* Court specifically discussed both *Hanover Shoe*

21    and *Illinois Brick*, noting that "[t]hese cases have stressed the importance of avoiding either

22    the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of

23    damages on the other."  459 U.S. at 543-44.  But, whereas *Hanover Shoe* and *Illinois Brick*

24    both involved the question of entities that were admittedly damaged (the only question being

25    who should recover those damages, the direct purchaser or the indirect purchaser), *Associated*

26    *General Contractors* involved the separate question of whether an entity is harmed at all.  To

27    illustrate, in holding that a labor union did not have antitrust standing, the *Associated General*

28    *Contractors* Court noted that the union merely alleged "consequential harm resulting from a"

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT WITH RESPECT TO MARTA
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  violation of the antitrust laws," which was insufficient to confer standing under Section 4 of
2  the Clayton Act. 459 U.S. at 545.

3         The antitrust standing inquiry of *Associated General Contractors* is a threshold inquiry
4  applicable to all plaintiffs, whether they are direct purchasers, indirect purchasers, or some
5  other type of plaintiff seeking relief under federal antitrust law.   Pursuant to MARTA's
6  interpretation, a direct purchaser has *per se* antitrust standing.   But such an interpretation
7  would confer standing upon agents, like MARTA, that will actually benefit from overcharges.
8  Thus, it is MARTA (not the defendants) who seeks to reformulate well-accepted standing
9  rules.

10        MARTA tries to compare itself to the independent distributor discussed in *Del. Valley*
11 *Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116 (9th Cir. 2008) (MARTA Br. at
12 15), but that effort is unsuccessful.   *Del. Valley* merely involved the question of standing
13 between a direct purchaser (an independent distributor named Owens & Myer) and an indirect
14 purchaser (Bamberg) of certain medical products.   The plaintiffs alleged that the defendant
15 created a monopoly for these products that resulted in artificially inflated prices.   There are
16 key differences between the independent distributor and MARTA.   First and foremost,
17 MARTA is not (and was not) a distributor.   Rather, as described in its Cooperative Plan,
18 MARTA was a "non-exclusive purchasing agent."  Def. Ex. C at 1.   The independent
19 distributor paid the manufacturer "directly" for the goods it purchased.   523 F.3d at 1122.
20 MARTA, in contrast, would only pay its vendors after it received payment from its members.
21 Def. Ex. B (Dep. Tr. of Robert Thompson at 95:15-23).   MARTA did not hold inventory. *See*
22 MARTA Br. at 7 ("MARTA generally did not take physical possession of the products it
23 purchased ....").   In contrast, the independent distributor discussed in *Del. Valley* held
24 merchandise in inventory.   523 F.3d at 1122.   The defendant in *Del. Valley* (Johnson &
25 Johnson) "did not ship any goods directly to Bamberg."  *Id.* at 1119.   But that is precisely
26 what occurred here — MARTA's vendors would ship merchandise directly to MARTA's
27 members.   Finally, in contrast to this case, there is no indication in *Del. Valley* that the direct
28 purchaser actually benefited from paying artificially inflated prices.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    In our motion for summary judgment, we relied upon *Obron v. Union Camp Corp.*,

2    355 F. Supp. 902 (E.D. Mich. 1972), *aff'd*, 477 F.2d 542 (6th Cir. 1973), demonstrating that,

3    like the "jobber" at issue in that case, MARTA did not suffer any antitrust injury.  MARTA

4    asserts that "*Obron*'s key holdings were expressly overturned in light of *Illinois Brick*"

5    (MARTA Br. at 17), but that is not correct.  *Obron* relied upon the pre-existing cost-plus

6    exception set forth in *Hanover Shoe*.  That exception continued in subsequent cases, up to and

7    including *Del. Valley*.  Relying upon dicta, MARTA contends that the Sixth Circuit's decision

8    in *County of Oakland v. City of Detroit*, 866 F.2d 839 (6th Cir. 1989), supports its position.

9    But the actual holding of that case supports the defendants' position here.  In *County of*

10   *Oakland*, the City of Detroit sold sewer services to the County of Oakland, Michigan, which

11   then billed individual municipalities for those services.  In holding that the County of Oakland

12   (not the municipalities) was the proper plaintiff, the Sixth Circuit noted that the City sold

13   sewer services to numerous counties and that "the counties attempted to pass their costs on to

14   the municipalities under a confusing array of formulae . . . ."  *Id.* at 849.  The Sixth Circuit

15   further noted that "[w]e are not dealing here with a situation in which an antitrust violator has

16   sold a single item to a single middleman who has resold the items under a pre-existing cost-

17   based contract to a single consumer."  *Id.*  "In a situation of that sort it might well be easy to

18   prove that the burden of the overcharge had been borne solely by the consumer — and in the

19   absence of other consumers, there could not be any problem in determining how to allocate

20   the overcharge at the consumer level."  *Id.*  In contrast to the facts of *County of Oakland*, there

21   were not an "array of formulae" used by MARTA to determine prices to its members; instead,

22   there was a single formula.  This single formula was applied to each purchase made by a

23   member (which MARTA was required to fulfill pursuant to the terms of MARTA's

24   Cooperative Plan).  Consequently, there is no problem in determining how to allocate any

25   overcharge at the consumer level.

26   MARTA's attempt to distinguish *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182

27   F.3d 1096 (9th Cir. 1999) (MARTA Br. at 18), also falls flat.  We relied upon *Big Bear* for the

28   simple proposition that a plaintiff does not establish antitrust injury if that plaintiff will itself

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1 benefit from the alleged antitrust violation. *See id.* at 1102 ("Plaintiffs stand to benefit from
2 the fact that prices for those services are inflated"). *Big Bear* was not an isolated case in this
3 regard — the Ninth Circuit reached the same conclusion in *American Ad Management, Inc.*,
4 190 F.3d 1051, and the Supreme Court reached the same conclusion in *Matsushita Elec.*
5 *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), both of which were cited in our
6 initial brief at page 13. MARTA responds to neither case. Nor does MARTA respond to our
7 argument that "an increase in the price of monitors and televisions simply meant that MARTA
8 collected more administrative fees and 'roundups' for itself." Def. Br. at 1. If there were a
9 conspiracy that resulted in overcharges, MARTA was a beneficiary.

10       Without citation to the record, MARTA asserts that "MARTA would generate revenue
11 on 'non-core' products to fund below-cost sales on other goods." MARTA Br. at 19. The
12 record, however, does not support the existence of below-cost sales. What the record does
13 support is that MARTA would provide certain discounts to "core" models. As we noted in
14 our initial brief, the administrative fees and roundups collected from the vendors were used
15 discounts for MARTA's members. Def. Br. at 8 (citing Def. Ex. G (CRT-MARTA-0044020,
16 "MARTA Business Plan"), Def. Ex. B. (Dep. Tr. of Robert Thompson at 78:18-24)). It is
17 undisputed that MARTA funded its "core model" discounts from the roundups that it
18 collected. *See* Def. Ex. B. at (Dep. Tr. of Robert Thompson at 79:11-13) (noting that the
19 "roundup money would go into a merchandizing budget that we would utilize to put a core
20 model discount to our members"). Given the existence of the separate administrative fees
21 (which were not used to fund "core model" discounts), MARTA was insulated from the
22 effects of any overcharge. Whatever overcharge may have existed was systematically passed
23 on to its members. Indeed, MARTA benefited from any overcharge.

24       **B.    Because MARTA Has Dismissed Its State-Law Claims, The Court Does
25              Not Need To Determine Whether MARTA Lacks Standing Under The
               Arizona Antitrust Act And The Illinois Antitrust Act**

26       In our motion for summary judgment, we argued that the Court should dismiss
27 MARTA's claims that are based upon the Arizona Antitrust Act and the Illinois Antitrust Act.
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   Def. Br. at 15-16.  Since that time, MARTA has stipulated to the dismissal of these claims

2   (docket no. 3198), which has been entered as an order of the Court (docket no. 3226).

3   Pursuant to the terms of that stipulation and order, Defendants have withdrawn their summary

4   judgment motion as it pertains to the MARTA's now-withdrawn Arizona and Illinois state law

5   claims.

6       **C.**    **The Ownership Or Control Exception To *Illinois Brick* Bars MARTA's**

7               **Claims**

8           MARTA's main argument is that Judge Illston denied a similar argument made in the

9   LCD case, her analysis and conclusion were "correct," and the defendants have offered "no

10  valid basis in fact or law for this Court to reach a contrary conclusion." MARTA Br. at 1.  To

11  the extent that MARTA is arguing that this Court must somehow defer to Judge Illston's

12  ruling, that position is unsupported by the caselaw.   The Court is free to reach its own

13  conclusions about this issue without deferring to decisions rendered by other judges on the

14  Court. *Accord Prentice v. Fund For Public Interest Research, Inc.*, No. C-06-7776 SC, 2007

15  WL 2729187, at *3 (N.D. Cal. Sept. 18, 2007) (Conti, J.) ("The Court respectfully disagrees

16  with Judge Patel's approach.").

17          In its response, MARTA discusses a great number of facts, most of which are

18  irrelevant to the issue presented by our summary judgment motion.  According to MARTA,

19  "the evidence and facts set forth herein establish that there is at the very least a genuine

20  dispute of material fact regarding many of the assertions in Defendants' Motion."  MARTA

21  Br. at 4.  In reality, MARTA and the Defendants agree on many facts that are actually material

22  to the summary judgment motion.   The only real dispute concerns the legal significance of

23  these facts.

24          In our motion, we demonstrated that MARTA was owned by its members.  Def. Br. at

25  18.  MARTA agrees that all of MARTA's members were shareholders of MARTA.  *See*

26  MARTA Br. at 4 ("All of MARTA's many members were also MARTA shareholders . . . .

27  Each MARTA member owned the same amount of MARTA stock . . . .").  In our motion, we

28  also demonstrated that MARTA was created by its members in order to aggregate the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    members' collective purchasing power to obtain the most favorable pricing from MARTA's

2    vendors. Def. Br. at 4. MARTA agrees. *See* MARTA Br. at 4 ("MARTA operated for the

3    purpose of 'utiliz[ing] the collective volume of its members to purchase product at the most

4    favorable acquisition cost possible for its members' to enable them to compete with larger

5    retailers.'") (citation omitted). In our motion, we demonstrated that MARTA was governed

6    by a board of directors, which consisted exclusively of MARTA's members. Def. Br. at 4.

7    Again, MARTA agrees. *See* MARTA Br. at 5 (describing MARTA's "twelve-person Board

8    of Directors selected from, and elected by, its membership"). We also demonstrated in our

9    motion that MARTA acted as a "non-exclusive purchasing agent" for its members. Def. Br.

10    at 11. Here, too, MARTA agrees. *See* MARTA Br. at 6 ("MARTA acted as a 'non-exclusive

11    purchasing agent' for every member of MARTA . . . .").

12         Aside from these key facts where MARTA agrees with the defendants, there are other

13    material facts set forth in the defendants' summary judgment motion that are uncontested by

14    MARTA. The membership's ownership of MARTA was exclusive (*i.e.*, no other entity held

15    an ownership interest in MARTA). Def. Br. at 4. MARTA's own corporate documents

16    professed a unity of interest between MARTA and its members. *See id.* (quoting MARTA

17    corporate overview stating that "MARTA is the membership!"); *id.* at 5 (quoting MARTA

18    corporate overview stating that "the cooperative exists solely to promote profitability and

19    capability of its owners — the retail stores themselves!"). MARTA's members would decide

20    which vendors MARTA would use and what products MARTA would buy through the use of

21    committees comprised of MARTA's members. *Id.* at 5-6. MARTA's Executive Director

22    would never select a vendor or negotiate a vendor program contrary to the wishes of the

23    membership. *Id.* at 6. All of these facts are uncontested by MARTA.

24         When the agreed-upon facts and uncontested facts are considered, it is apparent that

25    the membership of MARTA owned *and* controlled MARTA, superseding market forces. Per

26    *Illinois Brick v. Illinois*, 431 U.S. 720, 736 n.16 (1977), even ownership *or* control of the

27    direct purchaser by the indirect purchaser qualifies for an exception to the direct purchaser

28    rule.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    MARTA asserts that "no court" has found that "multiple and diverse shareholders"

2 can own or control a company under an *Illinois Brick* exception (MARTA Br. at 29), but that

3 argument fails to recognize *In re Mushroom Direct Purchaser Antitrust Litigation*, No. 06-cv-

4 3523, 2008 WL 583906 (E.D. Pa. March 3, 2008). The plaintiff in that case, Gold Eagle, was

5 an indirect purchaser of mushrooms that it purchased through Topco, a buying cooperative

6 that provided services to its member-owners (such as Gold Eagle). One of the defendants

7 filed a motion to dismiss, arguing that Gold Eagle was an indirect purchaser and that none of

8 the *Illinois Brick* exceptions applied. In denying the motion to dismiss, the court held as

9 follows: "Because plaintiffs' amended complaint sufficiently alleges that Topco acted as

10 Giant Eagle's agent in purchasing mushrooms from defendants and that there existed

11 economic unity between Topco and its 'member-owners,' I will not grant defendant

12 Basciani's motion to dismiss on standing grounds." *Id.* at *3. The fact that the Topco was

13 owned by multiple "member-owners" did not foreclose the applicability of the *Illinois Brick*

14 ownership or control exception. The same holds true here.

15    Citing to the transcript of its Rule 30(b)(6) deponent, MARTA asserts that it was the

16 Executive Director of MARTA (not the MARTA members) who had ultimate authority to

17 decide all parameters of the vendor relationships. MARTA Br. at 23. These citations are

18 inapposite because the Rule 30(b)(6) deponent was very clear that all of his actions were done

19 in accordance with the wishes of MARTA's membership. *See* Def. Ex. B (Dep. Tr. of Robert

20 Thompson at 57:20-24) ("Q. Can you recall an instance where the executive director

21 negotiated a program that was contrary to the wishes of the membership? ... A. No."); Def.

22 Ex. B. (Dep. Ex. of Robert Thompson at 67:9-12) ("Q. Can you think of an instance where the

23 executive director selected a vendor contrary to the wishes of a committee? ... A. No.").

24    MARTA's efforts to distinguish itself from "the purchasing agent in *In re Toilet Seat*"

25 (MARTA Br. at 23) fail because, as set forth in its cooperative plan, MARTA "shall act as,

26 and shall be, a non-exclusive purchasing agent for each and every shareholder of the

27 Company." Def. Ex. C at 1. MARTA's assertion that it is a wholesaler is incorrect. Its

28 articles of incorporation merely state that "[a]ll sales *to shareholders* shall be of a wholesale

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   nature and the Cooperative shall not engage in retail sales." MARTA Ex. 3 at CRT-MARTA-

2   0043967 (emphasis added).  The articles of incorporation do not suggest (nor is there any

3   indication in the record) that MARTA acted a wholesaler with respect to companies who were

4   not members of MARTA.  In concluding that Biddle's actions were controlled by Harvey

5   (such that the ownership or control exception to *Illinois Brick* applied), the *In re Toilet Seat*

6   court relied upon the following key fact:  "The Court interprets the relationship between

7   Harvey and Biddle as that of principal and agent rather than buyer and seller." *In re Toilet*

8   *Seat Antitrust Litigation*, No. 75-184, 1977 WL 1453, at *2 (E.D. Mich. Aug. 24, 1977).

9   Thus, the holding of *In re Toilet Seat* applies with full force here because MARTA was

10   unquestionably a "non-exclusive purchasing agent" for its members.

11        MARTA's final argument is readily dismissed.  According to MARTA, "[r]egardless

12   of whether MARTA's corporate structure qualifies for the 'ownership or control' exception,

13   the exception cannot apply here because calculating damages incurred by MARTA's members

14   would necessarily require the Court to ascertain the amount of damages that were 'passed on'

15   from MARTA to its members." MARTA Br. at 24.  This argument is a non sequitur.  There is

16   no need to calculate any damages passed on from MARTA to its members *because MARTA*

17   *was never damaged in the first instance*.

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**III.    CONCLUSION**

For these reasons and the reasons contained in our motion for summary judgment, the Court should grant our motion and dismiss MARTA's complaint in its entirety.

Respectfully submitted,

Dated:  January 23, 2015              **WHITE & CASE** LLP

By:  /s/ Lucius B. Lau
    Christopher M. Curran (*pro hac vice*)
    ccurran@whitecase.com
    Lucius B. Lau (*pro hac vice*)
    alau@whitecase.com
    Dana E. Foster (*pro hac vice*)
    defoster@whitecase.com
    701 Thirteenth Street, N.W.
    Washington, DC  20005
    tel.: (202) 626-3600
    fax: (202) 639-9355

    *Counsel to Defendants Toshiba Corporation,*
    *Toshiba America, Inc., Toshiba America*
    *Information Systems, Inc., Toshiba America*
    *Consumer Products, L.L.C., and Toshiba*
    *America Electronic Components, Inc.*

701 Thirteenth Street, NW
Washington, DC 20005
White & Case LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER BOTTS LLP

By:  /s/ John M. Taladay
     JOHN M. TALADAY (*pro hac vice*)
     john.taladay@bakerbotts.com
     JOSEPH OSTOYICH (*pro hac vice*)
     joseph.ostoyich@bakerbotts.com
     ERIK T. KOONS (*pro hac vice*)
     erik.koons@bakerbotts.com
     CHARLES M. MALAISE (*pro hac vice*)
     Charles.malaise@bakerbotts.com
     BAKER BOTTS LLP
     1299 Pennsylvania Avenue, N.W.
     Washington DC 20004-2400
     Telephone:  (202) 639-7700
     Facsimile:  (202) 639-7890

     JON V. SWENSON (SBN 233054)
     jon.swenson@bakerbotts.com
     BAKER BOTTS LLP
     1001 Page Mill Road
     Building One, Suite 200
     Palo Alto, CA 94304
     Telephone:  (650) 739-7500
     Facsimile:  (650) 739-7699
     E-mail:  jon.swenson@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips
N.V., Philips Electronics North America
Corporation*

By: /s/ Jeffrey L. Kessler

WINSTON & STRAWN LLP
Jeffrey L. Kessler (*pro hac vice*)
A. Paul Victor (*pro hac vice*)
Aldo A. Badini Cal. Bar No. 257086
Eva W. Cole (*pro hac vice*)
Molly M. Donovan (*pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-4692
Facsimile: (212) 294-4700
Email:   jkessler@winston.com
         abadini@winston.com
         pvictor@winston.com
         ewcole@winston.com
         mmdonovan@winston.com

WEIL, GOTSHAL & MANGES LLP
Steven A. Reiss (*pro hac vice*)
David L. Yohai (*pro hac vice*)
Adam C. Hemlock (*pro hac vice*)
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email:   steven.reiss@weil.com
         david.yohai@weil.com
         adam.hemlock@weil.com

*Attorneys for Defendants Panasonic*
*Corporation (f/k/a Matsushita Electric*
*Industrial Co., Ltd.), Panasonic Corporation*
*of North America, and MT Picture Display*
*Co., Ltd.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ Michael W. Scarborough
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Gary L. Halling, Cal. Bar No. 66087
James L. McGinnis, Cal. Bar No. 95788
Michael W. Scarborough, Cal. Bar No.
203524
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111-4109
Telephone:(415) 434-9100
Facsimile: (415) 434-3947
E-mail: ghalling@sheppardmullin.com
              jmcginnis@sheppardmullin.com
              mscarborough@sheppardmullin.com

*Attorneys for Defendants Samsung SDI
America, Inc.; Samsung SDI Co., Ltd.;
Samsung SDI (Malaysia) SDN. BHD.;
Samsung SDI Mexico S.A. DE C.V.; Samsung
SDI Brasil Ltda.; Shenzen Samsung SDI Co.,
Ltd. and Tianjin Samsung SDI Co., Ltd.*

By: /s/ Eliot A. Adelson
KIRKLAND & ELLIS LLP
Eliot A. Adelson Cal. Bar. No. 205284
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone:(415) 439-1413
Facsimile: (415) 439-1500
Email:   eadelson@kirkland.com

*Attorneys for Defendants Hitachi, Ltd.,
Hitachi Displays, Ltd. (n/k/a Japan Display
Inc.), Hitachi Asia, Ltd., Hitachi America,
Ltd., and Hitachi Electronic Devices (USA),
Inc.*

1
2
3
4
5
6
7
8
9
10
11

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By: */s/ Rachel S. Brass*
   GIBSON, DUNN & CRUTCHER LLP
   Rachel S. Brass Cal. Bar. No. 219301
   Joel S. Sanders Cal. Bar. No. 107234
   Austin V. Schwing Cal. Bar. No. 211696
   555 Mission Street, Suite 3000
   San Francisco, CA 94105
   Telephone:(415) 393-8200
   Facsimile: (415) 393-8306
   Email:   rbrass@gibsondunn.com
            jsanders@gibsondunn.com
            aschwing@gibsondunn.com

   *Attorneys for Defendants Chunghwa Picture*
   *Tubes, Ltd. and Chunghwa Picture Tubes*
   *(Malaysia)*

By: */s/ Hojoon Hwang*
   MUNGER, TOLLES & OLSON LLP
   Hojoon Hwang, Cal. Bar. No. 184950
   William D. Temko, Cal. Bar. No. 98858
   Laura K. Lin, Cal. Bar. No. 281542
   560 Mission Street
   Twenty-Seventh Floor
   San Francisco, California 94105-2907
   Facsimile: (415) 512-4077

   *Attorneys For Defendants LG Electronics,*
   *Inc. and LG Electronics U.S.A., Inc.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By: /s/ Kathy L. Osborn
      FAEGRE BAKER DANIELS LLP
      Kathy L. Osborn (*pro hac vice*)
      Ryan M. Hurley (*pro hac vice*)
      300 N. Meridian Street, Suite 2700
      Indianapolis, IN 46204
      Telephone: (317) 237-0300
      Facsimile: (317) 237-1000
      kathy.osborn@FaegreBD.com
      ryan.hurley@FaegreBD.com

      Calvin L. Litsey (SBN 289659)
      Faegre Baker Daniels LLP
      1950 University Avenue, Suite 450
      East Palo Alto, CA 94303-2279
      Telephone: (650) 324-6700
      Facsimile: (650) 324-6701
      calvin.litsey@FaegreBD.com

      *Attorneys for Defendants Thomson SA and
      Thomson Consumer Electronics, Inc.*


By: /s/ Michael T. Brody
      JENNER&BLOCK LLP
      Terrence J. Truax (*pro hac vice*)
      Michael T. Brody (*pro hac vice*)
      353 North Clark Street
      Chicago, Illinois 60654-3456
      Telephone: (312) 222-9350
      Facsimile: (312) 527-0484
      ttruax@jenner.com
      mbrody@jenner.com

Brent Caslin (Cal. Bar. No. 198682)
JENNER&BLOCK LLP
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
bcaslin@jenner.com

*Attorneys for Defendants Mitsubishi Electric
Corporation, Mitsubishi Electric US, Inc.
and, Mitsubishi Electric Visual Solutions
America, Inc.*

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Nathan Lane, III*
    Mark Dosker
    Nathan Lane, III
    275 Battery Street, Suite 2600
    San Francisco, CA  94111
    Telephone:  415.954.0200
    Facsimile:  415.393.9887
    Email:  mark.dosker@squirepb.com
    nathan.lane@squirepb.com

Donald A. Wall (*Pro Hac Vice*)
SQUIRE PATTON BOGGS (US) LLP
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone:  602.528.4000
Facsimile:  602.253.8129
Email:  donald.wall@squirepb.com

*Attorneys for Defendant Technologies
Displays Americas LLC with respect to all
cases except Office Depot, Inc. v.
Technicolor SA, et al. and Sears, Roebuck
and Co., et al v. Technicolor SA, et al.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT WITH RESPECT TO MARTA
Case No. 07-5944 SC
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

By: /s/ Jeffrey I. Zuckerman
    Jeffrey I. Zuckerman (Pro Hac Vice)
    Ellen Tobin (Pro Hac Vice)
    101 Park Avenue
    New York, New York 10178
    Telephone: 212.696.6000
    Facsimile: 212.697.1559
    Email: jzuckerman@curtis.com
    etobin@curtis.com

    Arthur Gaus (SBN 289560)
    DILLINGHAM & MURPHY, LLP
    601 California Street, Suite 1900
    San Francisco, California 94108
    Telephone: 415.397.2700
    Facsimile: 415.397.3300
    Email: asg@dillinghammurphy.com

    *Attorneys for Defendant Technologies
    Displays Americas LLC with respect to
    Office Depot, Inc. v. Technicolor SA, et al.
    and Sears, Roebuck and Co. et al. v.
    Technicolor SA, et al.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

On January 23, 2015, I caused a copy of the "DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO MARTA" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

By: ___/s/ Lucius B. Lau_____
Lucius B. Lau (*pro hac vice*)