Eliot A. Adelson (SBN 205284)
James Maxwell Cooper (SBN 284054)
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone:   (415) 439-1400
Facsimile:   (415) 439-1500
Email: eadelson@kirkland.com
Email: max.cooper@kirkland.com

James H. Mutchnik, P.C. (*pro hac vice*)
Barack Echols (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email: jmutchnik@kirkland.com
Email: bechols@kirkland.com

Attorneys for Defendants
HITACHI, LTD., HITACHI DISPLAYS, LTD.
(n/k/a JAPAN DISPLAY INC.),
HITACHI AMERICA, LTD.,
HITACHI ASIA, LTD., AND
HITACHI ELECTRONIC DEVICES (USA), INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. Master File No. 3:07-cv-05944-SC<br><br>MDL NO. 1917 |
| This Document Relates to:<br><br>*All Indirect Purchaser Actions*<br><br>*Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.*, No. 3:11-cv-01656-SC;<br><br>*Alfred H. Siegel as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al.*, No. 3:11-cv-05502-SC; | **HITACHI DEFENDANTS' REPLY TO MOTION FOR SUMMARY JUDGMENT BASED UPON WITHDRAWAL AND THE STATUTES OF LIMITATIONS**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:     February 6, 2015<br>Time:    10:00 a.m.<br>Before:  Hon. Samuel Conti |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.,*
2  No. 3:11-cv-05513-SC;

3  *Sears, Roebuck and Co. and Kmart Corp. v.*
   *Chunghwa Picture Tubes, Ltd.,* No. 3:11-cv-
4  05514-SC

5  *Interbond Corporation of America, d/b/a*
   *BrandsMart USA v. Hitachi, et al.,*
6  No. 3:11-cv-06275-SC;

7  *Office Depot, Inc. v. Hitachi, Ltd., et al.,*
8  No. 3:11-cv-06276-SC;

9  *CompuCom Systems, Inc. v. Hitachi, Ltd.,*
   *et al.,* No. 3:11-cv-06396-SC;
10

11 *Costco Wholesale Corporation v. Hitachi,*
   *Ltd., et al.,* No. 3:11-cv-06397-SC;
12

13 *P.C. Richard & Son Long Island Corporation, et*
   *al. v. Hitachi, Ltd., et al.,* No. 3:12-cv-02648-SC;

14 *Schultze Agency Services, LLC on behalf of*
15 *Tweeter OPCO, LLC and Tweeter Newco, LLC v.*
   *Hitachi, Ltd., et al.,* No. 3:12-cv-02649-SC;
16
   *Tech Data Corporation, et al. v. Hitachi,*
17 *Ltd., et al.,* No. 3:13-cv-00157-SC

18

19

20

21

22

23

24

25

26

27

28

HITACHI'S REPLY MOTION FOR SUMMARY                                    CASE NO.: 3:07-cv-05944-SC
JUDGMENT RE WITHDRAWAL AND STATUTES OF                                               MDL NO.: 1917
LIMITATIONS

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

I. THE HITACHI DEFENDANTS' DISASSOCIATION FROM THE CRT INDUSTRY AND ALLEGED CONSPIRACY ARE SUFFICIENT TO ESTABLISH AN EFFECTIVE WITHDRAWAL. ..........................................................2

   A. Undisputed facts demonstrate the Hitachi Defendants' complete and permanent withdrawal from the CRT industry. ..............................................2

      1. The Hitachi Defendants ceased all production and sales of CRTs no later than March 20, 2003. ......................................................................2

      2. The Hitachi Defendants' withdrawal from the CRT industry was public, widely communicated and recognized by all the alleged co-conspirators. ...............................................................................................2

      3. There is no evidence that after 2003 any of the Hitachi Defendants took affirmative actions to conceal the alleged conspiracy from Plaintiffs. ..................................................................................................3

   B. Contrary to Plaintiffs' assertion, the Hitachi Defendants' well-publicized, complete exit from the CRT industry was an effective withdrawal. ................3

II. HDP'S MINORITY INTEREST IN SEG DOES NOT NEGATE WITHDRAWAL ...............6

   A. HDP is the only Hitachi Defendant that held any interest in SEG after 2002. ..............6

   B. Absent evidence of control, minority stock ownership in a company is insufficient to attribute antitrust liability. ................................................................7

III. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS BECAUSE PLAINTIFFS HAVE NO EVIDENCE OF FRAUDULENT CONCEALMENT BY ANY OF THE HITACHI DEFENDANTS. .........................10

CONCLUSION ....................................................................................................................12

# TABLE OF AUTHORITIES

**Page**

**Cases**

Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.,
  148 F.3d 1080 (D.C. Cir. 1998) .................................................................................. 7

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) .................................................................................................. 10

Citadel Holding Corp. v. Roven,
  26 F.3d 960 (9th Cir. 1994) ...................................................................................... 10

Conerly v. Westinghouse Elec. Corp.,
  623 F.2d 117 (9th Cir. 1980) .................................................................................... 10

Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.,
  858 F.2d 499 (9th Cir. 1988), cert. denied, 488 U.S. 1010 (1989) .......................... 11

In re Alstom SA,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................................................ 7

In re Am. Apparel, Inc. S'holder Litig.,
  No. CV 10-06352 MMM JCGX, 2013 WL 174119 (C.D. Cal. Jan. 16, 2013) ........ 8

In re Gupta Corp. Sec. Litig.,
  900 F. Supp. 1217 (N.D. Cal. 1994) ........................................................................... 8

Intel Corp. v. Hartford Accident & Indemnity Co.,
  952 F.2d 1551 (9th Cir.1991) ................................................................................... 10

Morton's Market, Inc. v. Gustafson's Dairy, Inc.,
  198 F.3d 823 (11th Cir. 1999) ......................................................................... 4, 5, 10

Reisman v. U.S.,
  409 F.2d 789 (9th Cir. 1969) ...................................................................................... 4

Rutledge v. Boston Woven Hose & Rubber Co.,
  576 F.2d 248 (9th Cir. 1978) .................................................................................... 10

Shaw v. Santa Monica Bank,
  920 F. Supp. 1080 (D. Haw. 1996) ........................................................................... 10

Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.,
  376 F.3d 1065 (11th Cir. 2004) .................................................................................. 7

Taylor v. List,
  880 F.2d 1040 (9th Cir. 1989) .................................................................................. 10

*U.S. v. Antar,*
  53 F.3d 568 (3d Cir. 1995) ................................................................................................ 4

*U.S. v. Eisen,*
  974 F.2d 246 (2d Cir. 1992) ............................................................................................... 4

*U.S. v. Finestone,*
  816 F.2d 583 (11th Cir. 1987) ............................................................................................ 4

*U.S. v. Lothian,*
  976 F.2d 1257 (9th Cir. 1992) ........................................................................................ 3, 4

*U.S. v. Sax,*
  39 F.3d 1380 (7th Cir. 1994) .............................................................................................. 5

*U.S. v. United States Gypsum Co.,*
  438 U.S. 422 (1978) ........................................................................................................... 4

*United States v. Greenfield,*
  44 F.3d 1141 (2d Cir. 1995) ............................................................................................... 4

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................................................. 10

### REPLY MEMORANDUM OF POINTS AND AUTHORITIES

Hitachi, Ltd. ("HTL"), Hitachi Displays, Ltd. ("HDP"), Hitachi Asia, Ltd. ("HAS"), Hitachi America, Ltd. ("HAL") and Hitachi Electronic Devices (USA), Inc. ("HED(US)") (collectively, the "Hitachi Defendants") respectfully submit this Reply Memorandum of Points and Authorities in response to Plaintiffs' Opposition to Hitachi Defendants' Motion for Summary Judgment Based Upon Withdrawal and the Statutes of Limitations ("Opp."). For the reasons set forth in their opening memorandum ("Mem."), and those set forth below, Plaintiffs' Opposition must fail, and the Hitachi Defendants respectfully submit that they should be granted an order that: (1) adjudges that none of the Hitachi Defendants is liable for any injuries or damages caused by the alleged CRT conspiracy after March 20, 2003; and, (2) adjudges that Plaintiffs' claims against all the Hitachi Defendants are barred by the statute of limitations and therefore are dismissed.

### INTRODUCTION

Plaintiffs fail to rebut the well-established law holding that, on the undisputed facts here, the Hitachi Defendants cannot be found liable for any injuries or damages caused by the alleged CRT conspiracy after March 20, 2003, when the Hitachi Defendants openly and publicly withdrew from the CRT market, and thus from the alleged conspiracy.[1] Plaintiffs' sole response is to repeatedly misstate the governing legal standard, and argue that proving effective withdrawal takes more than the relevant authorities require. ████████████████████████████████████████

Similarly, Plaintiffs ignore their burden at this summary judgment stage of coming forward with *admissible evidence* to support their fraudulent concealment allegations. Absent any evidence that the Hitachi Defendants engaged in affirmative actions to conceal the alleged CRT conspiracy, the statute of limitations began to run when the Hitachi Defendants withdrew entirely from the CRT

---

[1] As noted in the Hitachi Defendants' opening memorandum, the Hitachi Defendants do not concede that any of them participated in the alleged CRT cartel. For purposes only of this withdrawal motion, however, the Hitachi Defendants proceed as if the alleged CRT cartel existed and that—contrary to fact—the Hitachi Defendants were participants in it.

industry in 2003. The statute of limitations thus expired in March 2007. Plaintiffs' claims, which were not filed until November 2007, are therefore time-barred.

## ARGUMENT

### I. THE HITACHI DEFENDANTS' DISASSOCIATION FROM THE CRT INDUSTRY AND ALLEGED CONSPIRACY ARE SUFFICIENT TO ESTABLISH AN EFFECTIVE WITHDRAWAL.

#### A. Undisputed facts demonstrate the Hitachi Defendants' complete and permanent withdrawal from the CRT industry.

Plaintiffs' Opposition ignores the facts that establish that the Hitachi Defendants withdrew entirely from the CRT industry, and thus from the alleged conspiracy, no later than March 2003. Because the facts *relevant* to the Hitachi Defendants' motion are not contested by Plaintiffs, it merits briefly recapping them here.

1. **The Hitachi Defendants ceased all production and sales of CRTs no later than March 20, 2003.**



(*See* Mem. at 3-4).

2. **The Hitachi Defendants' withdrawal from the CRT industry was public, widely communicated and recognized by all the alleged co-conspirators.**



- In July 2001, the Los Angeles Times reported on the Hitachi Defendants' plan to withdraw from the CRT industry;

- The July 30, 2001 industry magazine 'Display Monitor' reported on these same exit plans;

- In March 2002, numerous stories were published in other industry and wire press, reporting on the Hitachi Defendants' withdrawal from the industry.

(Mem. at 5-6).

3. **There is no evidence that after 2003 any of the Hitachi Defendants took affirmative actions to conceal the alleged conspiracy from Plaintiffs.**

- There is no such evidence and Plaintiffs cite none in their Opposition.

Despite the length of Plaintiffs' Opposition and its exposition of numerous "facts" that are irrelevant to the Hitachi Defendants' motion, Plaintiffs nowhere dispute these facts—facts that, under the applicable legal standards, mandate that the Hitachi Defendants cannot be held liable for any acts of the alleged conspiracy after March 20, 2003, and should be dismissed from this case entirely because Plaintiffs' suits were filed outside the statute of limitations.

B. **Contrary to Plaintiffs' assertion, the Hitachi Defendants' well-publicized, complete exit from the CRT industry was an effective withdrawal.**

Put simply, the law is not what Plaintiffs say it is. To withdraw from a conspiracy, a conspirator does *not* need to take steps to destroy the cartel by turning in other conspirators. While a conspirator *may* withdraw by reporting the conspiracy to authorities, it does not need to do so in order for withdrawal to be effective under the law. Under the settled law of this Circuit, a party can "*either* disavow the unlawful goal of the conspiracy, affirmatively act to defeat the purpose of the conspiracy, *or* take 'definitive, decisive, and positive' steps to show that the [defendant's] disassociation from the conspiracy is sufficient." *U.S. v. Lothian*, 976 F.2d 1257, 1261 (9th Cir. 1992) (emphasis added). The rule in the Ninth Circuit is no different than what the Supreme Court has held, and that the cases Plaintiffs cite acknowledge:

> "[T]he Supreme Court has cautioned against placing 'confining blinders' on the jury's consideration of evidence of withdrawal and has held that '[a]ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to

> reach co-conspirators have generally been regarded as sufficient to establish withdrawal or abandonment.'"

*U.S. v. Antar*, 53 F.3d 568, 582 (3d Cir. 1995) (quoting *U.S. v. United States Gypsum Co.*, 438 U.S. 422, 464-465 (1978)).[2] *See also Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 838 (11th Cir. 1999) (holding same).

To the extent that *Reisman v. U.S.*, 409 F.2d 789 (9th Cir. 1969) suggests that any greater showing is required, the Ninth Circuit in *Lothian* (23 years after *Reisman*) rejected that position:

> "Citing *Reisman v. U.S.*, 409 F.2d 789 (9th Cir. 1969) however, the government argues that Lothian's withdrawal showing was insufficient because he did nothing to defeat or disavow BNGA's fraudulent purposes. We disagree. . . . Withdrawal . . . may also be accomplished by taking 'definitive, decisive, and positive steps' to show . . . the conspirator's disassociation from the conspiracy."

*Lothian*, 976 F.2d at 1264.

"Withdrawal negates the element of agreement to the conspiracy's unlawful objective because it marks the conspirator's disavowal or abandonment of the conspiratorial agreement." *Id.* at 1261 (internal quotation marks omitted). An affirmative act of withdrawal does not, therefore, need to destroy the conspiracy to be effective. *See United States v. Greenfield*, 44 F.3d 1141, 1150 (2d Cir. 1995) ("The point of such 'affirmative evidence' requirements, though, is not to compel a conspirator to inform on his or her co-conspirators or to warn-off possible victims, admirable as those actions might be. It is rather to make sure that a withdrawal did occur and is not simply being invented *ex post*.").

Because this is the rule, *Morton's Market* is directly on point: Where, as here, an alleged "conspirator can demonstrate that he retired from the business, severed all ties to the business, and

---

[2] *See U.S. v. Finestone*, 816 F.2d 583, 589 (11th Cir. 1987) (cited in Opp. at 13) (To withdraw, "the defendant must prove that he undertook affirmative steps inconsistent with the objects of the conspiracy, to disavow or to defeat the conspiratorial objectives, *and either communicated those acts in a manner reasonably calculated to reach* his co-conspirators or disclosed the illegal scheme to law enforcement authorities."). *U.S. v. Eisen*, 974 F.2d 246, 269 (2d Cir. 1992) (emphasis added) is inapposite. There, there was evidence the attorney that resigned from the conspiratorial enterprise 'continued to be entitled to a percentage of the recovery on all cases he tried, including those giving rise to his pre-1985 racketeering acts.' Indeed, a co-defendant testified that the attorney told him he "was getting 'a piece of action on the cases he tried'" apparently after his alleged withdrawal.

deprived the remaining conspirator group of the services which he provided to the conspiracy," that is an effective withdrawal. *Morton's Market*, 198 F.3d at 838-39.

Indeed the parallels between the defendant dairy's exit from the business and withdrawal from the milk price-fixing conspiracy are so close to the Hitachi Defendants' withdrawal here that one could simply substitute "Hitachi Defendants" and "CRTs" for "dairy" and "milk" and get the same exact holding:

> "With the sale of its [CRT business], [the Hitachi Defendants] certainly 'retired' and totally severed its ties to the [CRT] price-fixing conspiracy. It did nothing more to assist or participate in the price-fixing activities of the other [manufacturers]. This retirement was communicated to the other [manufacturers] by the media. They knew that from that time on, [the Hitachi Defendants] would not lend its services to the conspiracy. Thus, the purposes of the conspiracy were defeated at least as to [Hitachi]. We conclude, therefore, that [the Hitachi Defendants] did effectively withdraw from the price-fixing conspiracy upon the sale of its [CRT business]."

(*Id.* at 839.)

Thus, by their complete exit from the CRT industry, the Hitachi Defendants can no longer be held liable for any subsequent acts of the alleged conspiracy. *See id.* at 838 ("a conspirator may avoid further liability for his actions if he affirmatively and completely dissociates himself from the continued operation of the conspiracy").[3]

Plaintiffs can point to no specific action that any of the Hitachi Defendants took post-withdrawal to support the alleged conspiracy. For good reason. As Plaintiffs' experts agree, [REDACTED]

(*See* Mem. at 10-11.)

---

[3] Plaintiffs claim that the Seventh Circuit's decision in *U.S. v. Sax*, 39 F.3d 1380 (7th Cir. 1994) supports their argument that "the sale of a CRT production line to [alleged] co-conspirator Thomson" negates withdrawal. (*See* Opp. at 16-17). But *Sax* is entirely inapposite. The Seventh Circuit found there that, after selling his business, the defendant Sax (1) reserved the right to take back his illegal drug distribution business; (2) continued to police the conspiracy and ensure compliance; and (3) continued to launder the proceeds of the conspiracy. *Id.* at 1383. Based on these findings, the court held that "Sax simply sold the marketing and distribution end of the business, and then redirected his efforts toward the investment side of the company." *Id.* at 1387. No similar facts are even arguably present here.

To the extent that Plaintiffs continue to rely on their economic experts' opinions that the Hitachi Defendants' "incentive" to report the conspiracy to the authorities, but failure to do so, is "evidence" that they did not withdraw (*see* Opp. at 12-15), that is of no moment. As set forth above, that is legally irrelevant—the law does not require the Hitachi Defendants to do that.

Accordingly, the governing law is clear. The relevant facts are not in dispute. The Hitachi Defendants exited the CRT industry and thus completely disassociated themselves from the alleged conspiracy when they ceased all manufacturing and sales of CRTs no later than March 20, 2003. That is effective withdrawal under the law. And, as discussed below, there is no evidence that negates the effectiveness of the Hitachi Defendants' withdrawal from the industry and the alleged conspiracy.

## II. HDP'S MINORITY INTEREST IN SEG DOES NOT NEGATE WITHDRAWAL.

At the end of the day, Plaintiffs' sole argument that the Hitachi Defendants' withdrawal was ineffective boils down to this: "Hitachi"—as the Plaintiffs would frame it (despite the fact that there are five separate moving parties here), still owned a minority interest in the Chinese company Shenzen SEG Hitachi Color Display Devices, Ltd. ("SEG") and, therefore, the withdrawal was not "clean and permanent." That, however, is not only inaccurate as a factual matter, it is insufficient under the law to negate the Hitachi Defendants' effective withdrawal from the alleged CRT conspiracy.

### A. HDP is the only Hitachi Defendant that held any interest in SEG after 2002.

As a threshold matter, "Hitachi" did not hold an interest in SEG. There is no entity or party in this lawsuit known as "Hitachi." [redacted] Plaintiffs provide no justification for why this limited, continuing interest in SEG, [redacted] negates the open and highly publicized withdrawals from the CRT industry, and thus the alleged conspiracy, by HTL, HAL, HAS and HED(US).

**B. Absent evidence of control, minority stock ownership in a company is insufficient to attribute antitrust liability.**

[REDACTED] does not convert the owner of that interest into "the company" for any purpose, let alone for purposes of assigning potential liability under the antitrust laws. As courts have found addressing other antitrust claims, "one company's [27%] minority ownership interest in another company is not sufficient by itself to make the owner a competitor, for purposes of the antitrust laws, of the subsidiary's rivals. To be a competitor at the level of the subsidiary, the parent must have **substantial control** over the affairs and policies of the subsidiary." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1088 (D.C. Cir. 1998). Absent proof of "**significant control** over the policies of a subsidiary, a minority ownership share does not convert a parent corporation into a competitor"—a market participant—for purposes of the antitrust laws. *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1075 (11th Cir. 2004). Without "control over day-to-day operations or general corporate policies," it simply is not the case that, under the law, Plaintiffs can attribute to HDP, or any of the Hitachi Defendants, any actions by SEG. *Id.*

And the undisputed evidence is that there was no such control. [REDACTED] (Mem. at 14.)

Moreover, none of the purported evidence Plaintiffs cite demonstrates that any of the Hitachi Defendants exercised the type of control over SEG's day-to-day operations or decision making such as would allow Plaintiffs to bootstrap all the Hitachi Defendants into SEG's shoes. [REDACTED] But absent evidence that HDP exercised control over SEG's operations, that is legally insufficient. *cf. In re Alstom SA*, 406 F. Supp. 2d 433, 492 (S.D.N.Y. 2005) ("Minority stock ownership and the

1 | ability to appoint a minority of the board do not create power to direct management and policies, and
2 | thus do not constitute sufficient control" under securities laws.); *In re Am. Apparel, Inc. S'holder*
3 | *Litig.*, No. CV 10-06352 MMM JCGX, 2013 WL 174119, at *34 (C.D. Cal. Jan. 16, 2013) ("The
4 | fact that a company has representatives on another company's board, and that it holds a minority
5 | stock interest are also insufficient to establish control person liability.") (citing *In re Gupta Corp.*
6 | *Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994)).
7 |    Plaintiffs further point to some of the Hitachi Defendants' customer correspondence that
8 | purportedly characterizes SEG as part of "Hitachi." Indeed, some documents cited are from prior to
9 | March 2003, before the Hitachi Defendants withdrew from the CRT industry. *See, e.g.*, Opp. Ex. 17,
10 | [REDACTED]
11 | [REDACTED]
12 | [REDACTED] (*See* Opp. Ex. 18, [REDACTED]
13 | Opp. Ex. 19, [REDACTED]. That again is not evidence of "control."
14 | Plaintiffs' additional assertion that HED(US) President Thomas Heiser testified [REDACTED]
15 | [REDACTED]
16 | [REDACTED]
17 | [REDACTED]
18 | [REDACTED]
19 | [REDACTED]
20 | [REDACTED]
21 | [REDACTED]
22 | [REDACTED] This is hardly *admissible evidence* of the type of "control" over SEG decision-making or
23 | policies as the law requires for any of the Hitachi Defendants to be responsible or liable for SEG's
24 | conduct.[4]
25 |
26 | _____
27 | [4] Indeed, much of the "evidence" Plaintiffs rely upon is not admissible evidence that is properly considered on summary judgment. The Hitachi Defendants have submitted a separate document listing the evidence to which they object and the basis for their objections.
28 |

1  The final category of purported evidence Plaintiffs cite for the proposition that the Hitachi
2  Defendants continued to participate in the alleged conspiracy through SEG is equally as specious.
3  ██████████████████████████████████████████████████████████████████████████████
4  ████████████████████████ This type of general reporting is standard practice between a company
5  and its shareholders, and is not indicative of "control."
6  They also cite documents reflecting ████████████████████████████████████████
7  ████████████████████████████████████ As a threshold matter, Plaintiffs nowhere
8  establish that *in fact* SEG was a member of the CRT cartel at this time or that, *in fact*, any of the
9  Hitachi Defendants knew this. ████████████████████████████████████████████████
10 ██████████████████████████████████████████████████████████████████████████████
11 ██████████████████████████████████████████████████████████████████████████████
12 But more fundamentally, it never happened. ██████████████████████████████████
13 ███████████████████████████████████████████████████ As HED(US) President Tom Heiser
14 testified, ████████████████████████████████████████████████████████████████████
15 ██████████████████████████████████████████████████████████████████████████████
16 ████████████████████████████████████ And Plaintiffs cite no evidence whatsoever that
17 any of the Hitachi Defendants knew, believed, thought or even hypothesized ████████ effort was
18 somehow in furtherance of some conspiratorial goal. No evidence *at all*.
19       There is no evidence, let alone admissible evidence, that negates the Hitachi Defendants'
20 clean and permanent withdrawal from the alleged CRT cartel. Accordingly, they may not be held
21 liable for any injuries, or damages caused by the cartel after March 20, 2003.[5]

---

[5] Plaintiffs' experts, moreover, agree that attributing alleged ████████████████████████
███████████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████ Obviously, that is not the law.

### III. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS BECAUSE PLAINTIFFS HAVE NO EVIDENCE OF FRAUDULENT CONCEALMENT BY ANY OF THE HITACHI DEFENDANTS.

Plaintiffs acknowledge that their claims against the Hitachi Defendants "are not timely filed unless the statute [of limitations] was equitably tolled by fraudulent concealment." (Opp. at 18); *see also Morton's Market*, 211 F.3d 1224 (2000) (holding same). What Plaintiffs neglect to address, however, is that—at this summary judgment stage—they are required to produce *evidence* to support their allegations of fraudulent concealment.

"The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory." *Shaw v. Santa Monica Bank*, 920 F. Supp. 1080, 1084 (D. Haw. 1996) (citing *Intel Corp. v. Hartford Accident & Indemnity Co.*, 952 F.2d 1551, 1558 (9th Cir.1991)). "There is no genuine issue of fact if the party opposing the motion 'fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "Where a claim requires proof of multiple elements"—such as Plaintiffs' fraudulent concealment claims here—"Fed. R. Civ. P. 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

Accordingly, at summary judgment, Plaintiffs were required to come forward with evidence that specifically proves "the circumstances surrounding the concealment." *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978). In order to toll the statute of limitations, "the plaintiff must plead with particularity"—and at summary judgment offer admissible proof of—"the facts which give rise to the claim of fraudulent concealment." *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980).

Plaintiffs also must show that the Hitachi Defendants' fraudulent concealment *caused* their failure to discover their claim. "A plaintiff alleging fraudulent concealment must establish that its

1 failure to have notice of its claim *was the result of the affirmative conduct by the defendant.*"
2 *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 505 (9th Cir. 1988), cert. denied, 488
3 U.S. 1010 (1989) (emphasis added).

   Plaintiffs have made no such showing here. Their purported "proof" of fraudulent concealment boils down to the assertions that: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ [redacted]

   Further, Plaintiffs also do not offer any evidence that (1) they diligently tried to uncover the facts, or (2) their inability to discover the alleged conspiracy was caused by the Hitachi Defendants conduct. Thus, even if they could establish the requisite acts of concealment, they cannot meet the standard required to toll the statute of limitations.[6]

   In sum, Plaintiffs were required at this summary judgment stage to come forward with some *evidence* to support their fraudulent concealment claims against the Hitachi Defendants. They have not. As a result, the statute of limitations was not tolled. It ran on March 20, 2007. Plaintiffs' claims—filed in November 2007—were filed six months too late and are barred as a matter of law.

---

[6] The sole piece of "evidence" Plaintiffs cite to support their contention that they could not have discovered the alleged conspiracy prior to November 2007 is what they describe as an "admission" by "Hitachi" in a response to an interrogatory propounded by the Indirect Purchaser Plaintiffs—Hitachi Ltd.'s Second Supplemental Objection and Response to IPP Interrogatory No. 22. Opp. at 21. But that response contains no such "admission." Instead, the interrogatory at issue asked Hitachi Ltd. to "identify all Evidence" upon which it intended to rely to disprove any allegation of fraudulent concealment by the Indirect Purchaser Plaintiffs. As Hitachi Ltd. specifically noted in its response, however, it is Plaintiffs who bear the burden to prove fraudulent concealment, not the other way around. (*See* Opp. Ex. 54 (Supplemental Response: "It is Plaintiffs' burden to prove their claims, and Responding Party cannot provide all facts to prove a negative.")). Regardless, Hitachi Ltd.'s response regarding the ability of the *Indirect Purchaser Plaintiffs*, who are largely individual retail purchasers of TVs and monitors, to discover the alleged conspiracy says nothing about the diligence of the *Direct Action Plaintiffs*, a group of sophisticated manufacturers and retailers.

# CONCLUSION

Plaintiffs do not contest the facts that: (1) none of the Hitachi Defendants manufactured or sold any CRTs after March 2003 or even had the ability to do so, (2) the Hitachi Defendants' exit and withdrawal from the CRT industry was widely publicized and well known by all alleged co-conspirators, and (3) there is no specific, affirmative act of concealment of the alleged conspiracy that Plaintiffs have identified or can identify with respect to any of the Hitachi Defendants after 2003. Accordingly, the well-settled law is that there was a clean and permanent break and effective withdrawal from the alleged CRT conspiracy, and the Hitachi Defendants cannot be found liable for any of the acts of the cartel after March 20, 2003. And, because the four-year statute of limitations began running in March 2003 and expired in March 2007—over six months before any of Plaintiffs' complaints were filed—Plaintiffs' claims are barred as untimely. For these reasons, and the reasons set forth in their opening memorandum, the Hitachi Defendants respectfully request that the Court grant judgment in their favor.

DATED: January 23, 2015

By: /s/ Eliot A. Adelson

Eliot A. Adelson
James Maxwell Cooper
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone:  (415) 439-1400
Facsimile:  (415) 439-1500
Email: eadelson@kirkland.com
Email: max.cooper@kirkland.com

Attorneys for Defendants
HITACHI, LTD., HITACHI DISPLAYS, LTD. (n/k/a JAPAN DISPLAY INC.), HITACHI AMERICA, LTD., HITACHI ASIA, LTD., AND HITACHI ELECTRONIC DEVICES (USA), INC.