Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*The Indirect Purchaser Action*<br><br>*Electrograph Systems, Inc. et al. v. Hitachi, Ltd. et al.*, No. 11-cv-01656;<br><br>*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513;<br><br>*Sears, Roebuck and Co., et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514; | **THE TOSHIBA DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT CONCERNING WITHDRAWAL**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:         February 6, 2015<br>Time:        10:00 a.m.<br>Before:      Hon. Samuel Conti |

1   *Interbond Corporation of America v. Hitachi, et al.*, No. 11-cv-06275;

2

3   *Office Depot, Inc. v. Hitachi, Ltd., et al.*, No.11-cv-06276;

4

5   *CompuCom Systems, Inc. v. Hitachi, Ltd. et al.*, No. 11-cv-06396;

6

7   *Costco Wholesale Corporation v. Hitachi, Ltd., et al.*, No. 11-cv-06397;

8

9   *P.C. Richard & Son Long Island Corporation, et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02648;

10

11

12  *Schultze Agency Services, LLC v. Hitachi, Ltd., et al.*, No. 12-cv-02649;

13

14  *Tech Data Corporation, et al. v. Hitachi, Ltd., et al.*, No. 13-cv-00157;

15

16  *Sharp Electronics Corp., et al. v. Hitachi, Ltd., et al.*, No. 13-cv-01173.

17

18

19

20

21

22

23

24

25

26

27

28

THE TOSHIBA DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT CONCERNING WITHDRAWAL
Case No. 07-5944 SC
MDL No. 1917

ii

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................... 1

II. ARGUMENT ........................................................................................................... 2

    A. The Toshiba Defendants Withdrew From The Alleged CRT Conspiracy Upon The Transfer Of Their Business To MTPD ........................... 2

        1. The Toshiba Defendants' Minority Share Of MTPD Does Not Preclude Withdrawal ........................................................................ 2

        2. The Toshiba Defendants Clearly Communicated Their Withdrawal To Industry Participants ...................................................... 7

    B. Fraudulent Concealment Does Not Toll The Statute of Limitations From Running As Of The Toshiba Defendants' Date Of Withdrawal ............................................................................................... 9

    C. The Toshiba Defendants Are Not Liable For The Acts Of Other Defendants After March 31, 2003 .................................................................. 10

    D. The Plaintiffs' Opposition Contains Several Misstatements Of Non-Material Facts Related To The Toshiba Defendants' Pre-Withdrawal Conduct .................................................................................... 10

        1. The Plaintiffs' Attempt To Prove Toshiba's Alleged Participation In A CRT Conspiracy Obfuscates The Relevant Issues Raised By The Toshiba Defendants' Withdrawal Argument ......................................................................... 10

        2. The Plaintiffs' Attempt To Demonstrate Pre-Withdrawal Fraudulent Concealment Is Flawed ....................................................... 13

III. CONCLUSION ...................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases** Page

*Angel v. Seattle-First National Bank,*
   653 F.2d 1293 (9th Cir. 1981) .................................................................................. 6

*Brooks v. Gomez,*
   No. C 10-01873, 2010 WL 5141862 (N.D. Cal. Dec. 13, 2010) ................................. 9

*Hartford Life Ins. Co. v. Banks,*
   No. 08-cv-1279 WQH (LSP), 2009 WL 863267 (S.D. Cal. 2009) .............................. 9

*In re Catfish Antitrust Litig.,*
   908 F. Supp. 400 (N.D. Miss. 1995) ........................................................................ 11

*In re Lithium Ion Batteries Antitrust Litig..,*
   No. 13-MD-2420, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014) .................................. 6

*In re Potash Antitrust Litig.,*
   954 F. Supp. 1334 (D. Minn. 1997) ........................................................................... 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
   820 F. Supp. 2d 1055 (N.D. Cal. 2011) ................................................................... 10

*Levine v. United States,*
   383 U.S. 265 (1966) ................................................................................................. 10

*Maple Flooring Mfrs.' Ass'n v. United States,*
   268 U.S. 563, (1925) ................................................................................................ 11

*Morton's Market, Inc. v. Gustafson's Dairy, Inc.,*
   198 F.3d 823 (11th Cir. 1999) ............................................................................. 8, 11

*O.S.C. Corp. v. Apple Computer, Inc.,*
   792 F.2d 1464 (9th Cir. 1986) ................................................................................... 5

*Reisman v. United States,*
   409 F.2d 789 (9th Cir. 1969) ................................................................................. 2, 3

*Rutledge v. Electric Hose and Rubber Co.,*
   327 F. Supp. 1267 (C.D. Cal. 1971) ........................................................................ 12

*Spanish Broadcasting System of Florida, Inc. v. Clear Channel Communications, Inc.,*
   376 F.3d 1065 (11th Cir. 2004) ................................................................................. 6

*United States v. Antar,*
   53 F.3d 568 (3d Cir.1995) ..................................................................................... 3, 9

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*United States v. Eisen*,
    974 F.2d 246 (2d Cir. 1992) ....................................................................................... 5

*United States v. Nerlinger*,
    862 F.2d 967 (2d Cir. 1988) ..................................................................................... 11

*United States v. Read*,
    658 F.2d 1225 (7th Cir. 1981) ................................................................................... 9

*United States v. Sax*,
    39 F.3d 1380 (7th Cir. 1994) ..................................................................................... 7

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978) ............................................................................................. 3, 11

*Woodman v. WWOR-TV,* Inc.,
    411 F.3d 69 (2d Cir. 2005) ........................................................................................ 5

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

THE TOSHIBA DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT CONCERNING WITHDRAWAL
Case No. 07-5944 SC
MDL No. 1917
iii

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## I. INTRODUCTION

In their Opposition, the Plaintiffs do not challenge the central facts relevant to the Toshiba Defendants' withdrawal from the alleged CRT conspiracy: the Toshiba Defendants' transferred their CRT business to a new company named MTPD on March 31, 2003 (Opp. at 6); the Toshiba Defendants held only a minority stake in MTPD (Opp. at 2, 8); and other CRT industry participants were aware of MTPD's formation through press releases and news articles (Opp. at 2, 7-8, 18). The Plaintiffs do not suggest that the Toshiba Defendants ever reentered the CRT industry, met with competitors after forming MTPD, or committed acts of fraudulent concealment after forming MTPD. To distract from these key concessions, the Plaintiffs attempt to manufacture factual disputes that are either irrelevant to the legal questions at issue or lacking support in the record. The Plaintiffs greatly inflate the Toshiba Defendants' involvement in MTPD, but do not dispute that the Toshiba Defendants had *no* control over the day-to-day operations of MTPD. Opp. at 2, 16. The Plaintiffs also misstate the law in their Opposition when they try to employ a "defeat the purpose of the conspiracy" standard that has been rejected by the Supreme Court. Opp. at 14, 16, 17, n.9.

The Toshiba Defendants deny participating in a conspiracy to fix the prices of CRTs and do not by their motion concede participation. Their motion for summary judgment is based upon the recognized principle that a defendant who effectively exits from an industry necessarily withdraws from any conspiracy in that industry. The Plaintiffs' inaccurate factual assertions regarding pre-withdrawal participation are irrelevant as a matter of law.

The Toshiba Defendants' withdrawal terminated their liability for any pre-withdrawal conduct for nearly all of the Plaintiffs' claims because the statute of limitations began to run more than four years before any plaintiffs brought suit. The Plaintiffs have not presented a genuine issue of material fact on the question of fraudulent concealment. No evidence suggests that the Toshiba Defendants engaged in post-withdrawal acts of fraudulent concealment. In fact, it is hard to imagine how a company that exited the industry and was prohibited from re-entering it could conceal an alleged conspiracy in that industry.

## II. ARGUMENT

### A. The Toshiba Defendants Withdrew From The Alleged CRT Conspiracy Upon The Transfer Of Their Business To MTPD

#### 1. The Toshiba Defendants' Minority Share Of MTPD Does Not Preclude Withdrawal

In their Opposition, the Plaintiffs accept that a defendant can effectively withdraw from a conspiracy by undertaking affirmative acts "inconsistent with the object of the conspiracy" and communicating those acts "in a manner reasonably calculated to reach co-conspirators." Opp. at 13 (citing *U.S. Gypsum*, 438 U.S. at 464). As established in their motion, the Toshiba Defendants' exit from the CRT business constitutes an affirmative act inconsistent with the object of the conspiracy. It is axiomatic that, had every company exited the CRT business, a CRT price-fixing conspiracy would be impossible.

That Toshiba held a minority share in MTPD, a new, independent company that assumed ownership of Toshiba's former CRT assets, does not negate withdrawal. The Plaintiffs' reliance upon *Reisman* to the contrary is misplaced. The Ninth Circuit concluded that the defendant in *Reisman* "took no affirmative action to disavow or defeat the [conspiracy]" when he resigned from his position but continued as a "major stockholder" in a business through which he participated in a mail fraud conspiracy. 409 F.2d at 793. By contrast, the Toshiba Defendants took not one, but *many* affirmative actions that, in their totality over many months, led to the complete transfer of factories, personnel, documentation, and other businesses relating to CRTs, behavior consistent with a complete exit from the industry. Supplemental Declaration of Lucius B. Lau In Support Of The Toshiba Defendants' Motion For Summary Judgment Concerning Withdrawal ("Lau Supp. Decl.") Ex. O (Kurosawa Dep. Tr. 64:20-65:2, 150) (Toshiba's CRT factories were transferred to MTPD) Lau Decl. Ex. F (Tamba Dep. Tr. 26:11-27:12) (former Toshiba Defendant employees joined MTPD). And rather than the "major" stake at issue in *Reisman*, Toshiba Corporation's minority investment in MTPD was dwarfed by Panasonic's 64.5% stake. Lau Decl. Ex. C, at 13.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

More importantly, *Reisman*, which was decided in 1969, applied a legal standard of withdrawal that predates the Supreme Court's ruling in *U.S. Gypsum* in which the Supreme Court held that acts inconsistent with the object of the conspiracy are sufficient to establish withdrawal. In *Reisman*, the Ninth Circuit applied the now-outdated rule that acts must disavow or defeat the purpose of the conspiracy to constitute withdrawal. 409 F.2d at 793. The "disavowal or defeat the purpose of" language was included in the jury instruction that the Supreme Court in *U.S. Gypsum* determined was "unnecessarily confining" and constituted reversible error. 438 U.S. at 465. The Plaintiffs double-down on this old standard by citing to *United States v. Antar*, 53 F.3d at 582, as support for a "rigorous" standard of withdrawal. Opp. at 12. But the Third Circuit in *Antar* used "rigorous" only to describe the Supreme Court's "long ago," pre-*U.S. Gypsum* standard and noted that the Court subsequently cautioned against imposing the same "disavowal or defeat the purpose of" standard that the Plaintiffs now advocate. *Antar*, 53 F.3d at 582. The Plaintiffs' resort to an outdated legal standard does not impact the Toshiba Defendants' withdrawal arguments. From the sidelines of the CRT market as a minority investor after March 31, 2003, Toshiba was actually incapable of influencing the CRT market in the manner the Plaintiffs allege. For example, Toshiba had no involvement or authority in making pricing decisions, the crux of the Plaintiffs' allegations. *See* Lau Supp. Decl. Ex. P (Nishiyama Dep. Tr. at 77:16-78:14) (testifying that pricing decisions after the formation of MTPD required approval from the head of the MTPD sales department, MTPD's head of procurement, MTPD's head of accounting, and MTPD's president).

The Plaintiffs improperly characterize MTPD as a "vehicle" to "reduce capacity" in the CRT market and cite to board of directors meeting minutes from 2004 and 2005 that contemplate the closures of MTPD's New York and Ohio factories, respectively. Opp. at 17. The Plaintiffs do not allege that these decisions to close money-losing factories were made in concert with any other defendant. Furthermore, it is undisputed that Toshiba did not profit from the CRT market after the formation of MTPD, so MTPD was not a "vehicle" for anything except Toshiba's exit from the CRT market.

To blur the line between Toshiba's former CRT business and MTPD, the Plaintiffs cite to deposition testimony of Kazuhiro Nishimaru and Yoshiaki Uchiyama in support of their claim that "Toshiba and MTPD were functionally the same." Opp. at 10. But at the time MTPD was formed, Mr. Nishimaru worked for a non-defendant Toshiba entity in Thailand, where Panasonic, MTPD's majority owner, had no employees. Thus, it is hardly surprising that when Mr. Nishimaru and all of his coworkers left Toshiba and joined MTPD, his job responsibilities and colleagues did not immediately change. Mr. Uchiyama worked for Toshiba America Consumer Products, LLC ("TACP"), which did not make CRTs and thus was not a part of MTPD. Mr. Uchiyama testified that TACP purchased CRTs from the factory in Horseheads, NY that was originally owned by the Toshiba Defendants and later owned by MTPD. Opp. Ex. 41. The fact that TACP purchased CRTs from this factory before and after its change in ownership does not prove that "Toshiba and MTPD were functionally the same." Instead, the testimony shows only that TACP would have been a victim of any alleged price-fixing activity by MTPD.

The Plaintiffs incorrectly state that Toshiba "loaned some 200 employees to MTPD," which the Plaintiffs later characterize as a "transfer." Opp. at 2, 10. Notwithstanding the Plaintiffs' initial mischaracterization of this transaction as a "loan," the undisputed facts demonstrate that Toshiba executed a complete transfer of its CRT employees to MTPD and those employees did not expect to return to Toshiba. *See* Lau Decl. Ex. F (Tamba Dep. Tr. at 26:15-27:15) (testifying that "Toshiba was no longer doing that business, so . . . for these employees there was no way to return to Toshiba. They went to that company . . . with a one-way ticket, thus their [retirement pensions] were taken over by MTPD as well"); Lau Supp. Decl. Ex. Q (Kawano Dep. Tr. 46:1-46:7). The undisputed facts also show that Toshiba Corporation was *required* to offer positions to its former employees in the event of layoffs at a company to which the employees were transferred under the terms of an agreement with a labor union executed in 2000, before the formation of MTPD and completely unrelated to its formation. Lau Supp. Decl. Ex. R (Tamba Dep. Tr. at 54:13-55:23); Opp. Ex. 39. Moreover, "because Toshiba was no longer in the CRT business, these people were assigned to work at

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  various different areas" within Toshiba Corporation and its subsidiaries. Lau Supp. Decl. Ex.
2  R (Tamba Dep. Tr. at 55:20-22).

3        The Plaintiffs do not dispute that the Toshiba Defendants neither received any benefits
4  from MTPD's allegedly conspiratorial acts nor exercised any influence or control over those
5  acts. The Plaintiffs do not challenge the fact that Toshiba Corporation never exercised a veto
6  right over MTPD's business decisions. They rely on the claim that the Toshiba Defendants
7  could appoint four employees to MTPD's board of directors without disputing testimony that,
8  in fact, only one of the ten directors was a Toshiba Corporation employee. Lau Decl. Ex. H
9  (Kurosawa Dep. Tr. at 148:16-149:17). Instead, the Plaintiffs rely on hypothetical scenarios
10 in which the Toshiba Defendants *could* have received some benefits and *could* have used its
11 minority stake to further the goals of the alleged conspiracy. Such speculation and conjecture
12 are not sufficient to defeat summary judgment. *See O.S.C. Corp. v. Apple Computer, Inc.*,
13 792 F.2d 1464, 1467 (9th Cir. 1986) (affirming grant of summary judgment against Sherman
14 Act Section 1 claims and stating that a finding in favor of a party opposing summary
15 judgment must be "'based on more than mere speculation, conjecture, or fantasy'") (quoting
16 *Barnes v. Areden Mayfair, Inc.*, 759 F.2d 676, 681); *Woodman v. WWOR-TV,* Inc., 411 F.3d
17 69, 85 (2d Cir. 2005) ("The law is well established that conclusory statements, conjecture, or
18 speculation are inadequate to defeat a motion for summary judgment.") (internal quotations
19 omitted). Contrary to the Plaintiffs' argument, withdrawal was not negated in *United States v.*
20 *Eisen* merely by the fact that the withdrawing defendant *could* have received benefits from the
21 conspiracy; there was actual evidence that the defendant *was* receiving benefits in that case.
22 *Eisen,* 974 F.2d at 269. The Plaintiffs have not provided similar evidence against the Toshiba
23 Defendants.

24       In their Opposition, the Plaintiffs claim that Toshiba Corporation conceded in
25 interrogatory responses that it "had at least 50 meetings with MTPD employees over the life
26 of the joint venture both in Japan and in the United States. Opp. at. 9. The interrogatory in
27 question, however, called for a list of meetings ***and communications*** between Toshiba
28 Corporation and any producer of CRT or CRT products during a twelve-year time frame.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Opp. Ex. 37. Toshiba Corporation's response to this expansive interrogatory included several e-mails between Toshiba Corporation employees and MTPD employees regarding accounting issues and a number of e-mails in 2007 regarding Toshiba Corporation's decision to sell its minority stake in MTPD. *Id.* The Plaintiffs now try to characterize these e-mails as "meetings with MTPD employees" as proof that "Toshiba exercised significant operational control over MTPD throughout the life-cycle of the venture." Opp. at 9. Again, false assertions of this type are not sufficient to defeat summary judgment. *See Angel v. Seattle-First National Bank,* 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.") (citing *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978)).

The Plaintiffs seek to distinguish *Spanish Broad. Systems of Florida, Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1065 (11th Cir. 2004), and *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014), merely because they are not withdrawal cases (Opp. at 16), but the Plaintiffs' simplistic argument ignores the full import of these cases. The *Spanish Broadcasting* court noted that both Section One and Section Two of the Sherman Act require harm to competition that occurs within a "relevant" market and that defendant Clear Channel did not participate in (and, thus, could not monopolize) the relevant market, even though it held a 26 percent interest in a company that did participate in the relevant market. The *Spanish Broadcasting* court then noted that, "[a]bsent allegations of significant control over the policies of a subsidiary, a minority ownership share does not convert a parent corporation into a competitor." 376 F.3d at 1075. *In re Lithium Battery*, which is a Section One price-fixing case, reached a similar conclusion by holding that minority stock ownership was insufficient to satisfy *Royal Printing* and its progeny: "Rather, the gravamen of the inquiry is control." 2014 WL 309192, at *6. In both cases, the existence of minority stock ownership was insufficient (either to show participation in the relevant market or to confer standing); instead, an additional showing of control was required. In a withdrawal context, these principles are simply applied in reverse. Reducing one's equity interest from 100 percent to 35.5 percent is

an "affirmative act inconsistent with the object of the conspiracy" because the owner of the minority interest has no ability to direct the new company — it is simply a passive investor. In this case, that passive investment provided no benefit for Toshiba whatsoever. Nor did Toshiba have any ability to control MTPD. A finding of withdrawal under these circumstances is thus fully supported by those cases that have opined on minority stock ownership in the antitrust context.

In a footnote, the Plaintiffs cite to *United States v. Sax,* 39 F.3d 1380, 1386 (7th Cir. 1994), in support of their claim a defendant cannot withdraw from a conspiracy if he sells a business through which he participated in a conspiracy to co-conspirators. Opp. at 17-18, n.9. *Sax* supports no such rule. The Plaintiffs' selective quotes omit the crucial facts: that the defendant in *Sax* continued in the conspiracy by performing money laundering services for his co-conspirators, that the payment for that business was contingent upon future drug sales, and that he also continued to actually profit from the conspiracy. 39 F.3d at 1387. These crucial facts supported the court's determination that the defendant had not withdrawn from the conspiracy. There is no parallel between *Sax* and the Toshiba Defendants' role as a minority shareholder.

### 2. The Toshiba Defendants Clearly Communicated Their Withdrawal To Industry Participants

The Plaintiffs attempt to distinguish *Morton's Market* and *Potash* by simply claiming that the defendants in those cases were "actually exiting an industry." Opp. at 19. As described in Toshiba's motion and above, Toshiba has shown that it too "actually" exited the CRT industry. To suggest that it did *not* exit the CRT industry — when it transferred all employees, factories, equipment to another company and had no means by which to control manufacturing, sales, and pricing of CRTs — is implausible.

The Toshiba Defendants adequately communicated the fact of their withdrawal from the CRT industry to industry participants. Mot. at 7-8. The numerous press releases issued in various languages in many countries announcing the formation of MTPD acknowledge that the Toshiba Defendants and Panasonic were creating a new company comprised of the CRT

businesses previously operated by Toshiba and Panasonic. The news articles discussing the formation of MTPD are similarly sufficient to satisfy the communication requirement of legal withdrawal. *See Morton's Market,* 198 F.3d at 839 (affirming grant of summary judgment when defendants retired from a business and "this retirement was communicated to [co-defendants] by the media."); *In re Potash Antitrust Litig.* 954 F. Supp. at 1391 (recommending summary judgment in favor of defendant when defendant's exit from the industry was communicated by trade and financial publications), *aff'd sub nom. Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028 (8th Cir. 2000), *cert. denied,* 531 U.S. 815 (2000). The Plaintiffs do not present evidence that notice of the Toshiba Defendants' withdrawal failed to reach other defendants. The Court's inquiry can end there because no dispute exists as to the fact of notice.

The Plaintiffs critique some defendants' reaction to the news of withdrawal (Opp. at 8-9, 18), but they do not explain why this evidence in any way supports the argument that the Toshiba Defendants did not exit the CRT business. Aside from the fact that the defendants' reaction to Toshiba's withdrawal is irrelevant as a matter of law to whether they received notice of Toshiba's withdrawal, none of the Plaintiffs' selected documents shows that any defendant believed that Toshiba was continuing in the CRT business. As the Plaintiffs point out, the Toshiba Defendants had no means of continuing in the CRT business because, "all Toshiba employees involved in the CRT business transferred to MTPD when it was formed." Opp. at 10. As a result, the Plaintiffs are unable to identify a single meeting between a Toshiba Defendant employee and a CRT competitor after Toshiba withdrew from the CRT industry.

The public statements announcing the Toshiba Defendants' withdrawal are not inconsistent with the Toshiba Defendants' internal statements. The Plaintiffs cite to a *draft* e-mail from an employee at TAEC, an entity that did not manufacture CRTs and thus was not involved in the sale to MTPD, to the effect that "Toshiba" was not exiting the CRT business. Opp. at 7. This language is taken out of context because the e-mail's author was not involved in the strategic planning behind the formation of MTPD, and as the e-mail indicates, TAEC

1  was already scheduled to cease its CRT sales and marketing activities effective October 1, 2002, to focus on different Toshiba products. So at most, the e-mail is just additional evidence of the steps the Toshiba Defendants took to exit the CRT industry. In that sense, the e-mail is consistent with the testimony of TAEC's Rule 30(b)(6) witness that Toshiba's purpose in forming MTPD was "to get out of the CRT manufacturing in North America" because Toshiba's U.S. CRT business was losing money. Lau Supp. Decl. Ex. S (Heinecke Dep. Tr. 170:2-17).

### B. Fraudulent Concealment Does Not Toll The Statute of Limitations From Running As Of The Toshiba Defendants' Date Of Withdrawal

The statute of limitations begins to run upon a conspirator's withdrawal from a conspiracy. *Antar,* 53 F.3d at 584; *Read,* 658 F.2d at 1233. At the latest, the Toshiba Defendants withdrew from the alleged conspiracy when MTPD began operations on April 1, 2003. The Plaintiffs claim that the statute of limitations was tolled by the equitable doctrine of fraudulent concealment, but they have not presented any evidence of a Toshiba employee engaging in post-withdrawal acts of fraudulent concealment. Whatever alleged acts of fraudulent concealment may have occurred *before* withdrawal, those acts are not sufficient to toll the statute of limitations from running because the limitations period began anew on the date of withdrawal.

Furthermore, the Plaintiffs cannot rely upon the post-withdrawal acts of other defendants to establish fraudulent concealment by the Toshiba Defendants. The Plaintiffs bear the burden of providing evidence of fraudulent concealment by each individual defendant. *See Brooks v. Gomez*, No. C 10-01873, 2010 WL 5141862, at *3 (N.D. Cal. Dec. 13, 2010) ("[w]here a plaintiff asserts claims based on fraudulent conduct against multiple defendants, the plaintiff is required to 'identify the role of each defendant in the alleged fraudulent scheme.'") (quoting *Swartz v. KPMG LLP,* 476 F.3d 756, 765 (9th Cir. 2007) (internal citations omitted)); *Hartford Life Ins. Co. v. Banks,* No. 08-cv-1279 WQH (LSP), 2009 WL 863267, at *6 (S.D. Cal. 2009) (finding failure to state claim for fraudulent concealment when claims were undifferentiated as to each defendant). Thus, acts by MTPD

employees post-withdrawal are not sufficient to toll the statute of limitations that began to run for the Plaintiffs' claims against the Toshiba Defendants on April 1, 2003.

### C. The Toshiba Defendants Are Not Liable For The Acts Of Other Defendants After March 31, 2003

Even if the Court finds a genuine issue of material fact regarding fraudulent concealment, the Toshiba Defendants' withdrawal from the CRT industry still terminates their liability for the acts of other Defendants after March 31, 2003. *See Levine v. United States*, 383 U.S. 265, 266 (1966); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055, 1059 (N.D. Cal. 2011) (stating rule that joint-and-several liability "continues until the objectives of the conspiracy are completed, or the defendant withdraws from the conspiracy"). Accordingly, any of the Plaintiffs' claims against the Toshiba Defendants that are not time-barred cannot support joint-and-several liability on purchases made on or after April 1, 2003, the date on which MTPD began operations and the Toshiba Defendants' CRT operations effectively ceased. The Plaintiffs did not challenge the legal authority for this conclusion in their Opposition and thus concede it.

### D. The Plaintiffs' Opposition Contains Several Misstatements Of Non-Material Facts Related To The Toshiba Defendants' Pre-Withdrawal Conduct

#### 1. The Plaintiffs' Attempt To Prove Toshiba's Alleged Participation In A CRT Conspiracy Obfuscates The Relevant Issues Raised By The Toshiba Defendants' Withdrawal Argument

The Plaintiffs open their Opposition with an argument-laden "Counter-Statement of Material Facts" purporting to establish "Toshiba's participation in the CRT Conspiracy," which merely obfuscates the facts and issues relevant to the present motion. Opp. at 4. Toshiba has not conceded participation in the alleged conspiracy by bringing the current motion and the Plaintiffs' assertions to the contrary are of no moment. For purposes of this summary judgment motion, the Court may assume, *arguendo*, that the Toshiba Defendants participated in a conspiracy prior to exiting the CRT business as of April 1, 2003. For all other purposes, the Toshiba Defendants dispute that any of them participated in any CRT

1  cartel. The Toshiba Defendants can argue withdrawal as part of their defense in the
2  alternative without ultimately conceding any participation in an alleged conspiracy. *See, e.g.*,
3  *United States v. Nerlinger*, 862 F.2d 967 (2d Cir. 1988) (holding that the defendant proved
4  withdrawal while that defendant also denied knowing participation in the alleged conspiracy);
5  *In re Catfish Antitrust Litig.*, 908 F. Supp. 400 (N.D. Miss. 1995) (cited in the Plaintiffs'
6  Opposition and noting that "[w]hile [the defendant] does not concede involvement in
7  conspiratorial acts, it does contend that if it was ever involved in such a conspiracy, it
8  effectively withdrew from participation in it such that it has avoided at least some level of
9  liability").

10    The Toshiba Defendants' withdrawal argument is based upon the recognized principle
11  that exiting an industry can constitute withdrawal from a conspiracy. *Morton's Market,* 198
12  F.3d at 839 (citing *United States v. Lowell*, 649 F.2d 950, 955 (3d Cir. 1981)). In their
13  Opposition, the Plaintiffs go to great lengths to cite contacts that purportedly evince the
14  Toshiba Defendants' participation in a price-fixing conspiracy prior the formation of MTPD
15  (Opp. at 4-6), but these misstatements muddy the argument at issue by trying to create
16  "questions of fact" that are wholly irrelevant to this motion. Regardless of the non-material
17  nature of this evidence, the cited documents in no way demonstrate the Toshiba Defendants'
18  pre-withdrawal participation in a conspiracy to charge specific prices to CRT customers.
19  Although the Toshiba Defendants exchanged market information with competitors, the
20  exchange of information by itself is not indicative of cartel behavior. *See U.S. Gypsum,* 438
21  U.S. at 443, n.16 ("The exchange of price data and other information among competitors does
22  not invariably have anticompetitive effects; indeed such practices can in certain circumstances
23  increase economic efficiency and render markets more, rather than less, competitive."); *Maple
24  Flooring Mfrs.' Ass'n v. United States,* 268 U.S. 563, 582-83 (1925) (stating that information
25  exchanges among competitors can be beneficial when they permit companies to "avoid the
26  waste which inevitably attends the unintelligent conduct of economic enterprise" and that
27  "[c]ompetition does not become less free merely because the conduct of commercial
28  operations becomes more intelligent through the free distribution of knowledge of all the

essential factors entering into the commercial transaction."); *Rutledge v. Electric Hose and Rubber Co.*, 327 F. Supp. 1267, 1272 (C.D. Cal. 1971) ("Absent an agreement to fix prices, there is nothing unlawful about competitors meeting and exchanging price information or discussing problems common in their industry, or even exchanging information as to the cost of their product."). In fact, as Toshiba Defendant witnesses have explained, Toshiba gathered market information from a variety of source to independently set its prices at a competitive advantage so as to maximize its sales. Lau Supp. Decl. Ex. T (Fujita Dep. Tr. 455:8-456:2).

The Plaintiffs employ a variety of tactics to misconstrue documents and testimony, including their assignment of motive to the defendants' actions. For example, the Plaintiffs claim that executives from a non-defendant Toshiba entity met with Chunghwa to discuss "maintaining the price on the 21-inch tube," but the cited testimony speaks only to the parties' respective views generally about their own prices, affirms that no price increases were discussed at the meeting, and says nothing at all about maintaining prices cooperatively. Opp. at 4; Opp. Ex. 6 (Yang Dep. Tr. 203:25-206:4).

In their eagerness to link the Toshiba Defendants to so-called "Glass Meetings," the Plaintiffs claim that "[w]hen Toshiba was unable to attend" these meetings, it was informed about the agreements that the actual participants allegedly reached. First, the Plaintiffs' use of "unable" is contradicted by the record. The Toshiba Defendants did not attend the Glass Meetings because they were *unwilling* to, a fact established by Glass Meeting minutes stating that Toshiba Corporation instructed a non-defendant Toshiba entity not to attend the meetings. Lau Supp. Decl. Ex. U (CHU00029175). Second, Chunghwa employees who attended the Glass Meetings and met separately with Toshiba employees have testified that their main purpose of meeting with Toshiba was to exchange market information, not to discuss price agreements. Opp. Ex. 10 (Liu Dep. Tr. 90:17-22); Lau Supp. Decl. Ex. V (Yang Dep. Tr. 89:8-90:5, 164:9-10). Elsewhere, the Plaintiffs claim in a footnote that a Chunghwa employee testified that "Toshiba agreed to implement price increase agreed to by its co-conspirators." Opp. at 5 n.2. In reality, that testimony concerns a report of a meeting that no Toshiba entity attended. In the meeting report, a meeting attendee from a non-Toshiba entity states that he

will report back on the status of price negotiations between non-defendant "Toshiba Indonesia" and Aiwa, a customer. Neither the document nor the testimony concerning the document cited by the Plaintiffs supports any allegation that a Toshiba entity endeavored to implement a price agreement reached at a meeting that it did not attend. All mischaracterizations aside, this mass of pre-MTPD evidence remains irrelevant to the question of the Toshiba Defendants' exit from the CRT industry in 2003.

### 2. The Plaintiffs' Attempt To Demonstrate Pre-Withdrawal Fraudulent Concealment Is Flawed

The Plaintiffs are equally loose with the facts they marshal to support their fraudulent concealment allegations. They claim that meeting attendees met in hotels and wrote on blackboards to "maintain the secrecy of these meetings. . . ." Opp. at 5. But the cited testimony does not reveal an improper motive behind the parties' innocuous decision to meet at hotels and write on blackboards. The Plaintiffs contend that documents regarding "conspiratorial activities" have legends instructing recipients to destroy after reading, but these unremarkable legends appear similarly on numerous documents produced by the Toshiba Defendants that have nothing to do with competitor meetings. *See* Lau Supp. Decl. Ex. W (TSB-CRT-00040784) (asking recipients to destroy e-mail regarding internal Toshiba meeting after reading); Lau Supp. Decl. Ex. X (TSB-CRT-00042994) (asking recipients to destroy e-mail regarding meeting with customer JVC). Thus, the existence of the legends by itself does not reveal an intent to "hide the existence of anticompetitive meetings." Opp. at 6. Such misstatements of fact are altogether irrelevant to the present motion.

### III. CONCLUSION

For these reasons and the reasons presented in the Toshiba Defendants' motion for summary judgment, the motion should be granted and the Court should (1) dismiss all of the Plaintiffs' Sherman Act claims as they pertain to the Toshiba Defendants; (2) dismiss all of the Plaintiffs' state claims as they pertain to the Toshiba Defendants, with the exception of the Vermont and Wisconsin state claims brought by the Indirect Purchaser Plaintiffs ("IPPs") (the Court no longer needs to rule upon the Vermont and Wisconsin state claims brought by

Sears/Kmart because subsequent to filing of the Toshiba Defendants' motion, Sears/Kmart stipulated to the dismissal of those claims); and (3) with respect to the Vermont and Wisconsin state claims brought by the IPPs, hold that the Toshiba Defendants are not subject to joint and several liability for any illegal conduct that occurred after March 31, 2003.

Respectfully submitted,

Dated: January 23, 2015

**WHITE & CASE** LLP

By: */s/ Lucius B. Lau*
Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
701 Thirteenth Street, N.W.
Washington, DC 20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.*

## CERTIFICATE OF SERVICE

On January 23, 2015, I caused a copy of the "THE TOSHIBA DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT CONCERNING WITHDRAWAL" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

By: */s/ Lucius B. Lau*
Lucius B. Lau (*pro hac vice*)

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

THE TOSHIBA DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT CONCERNING WITHDRAWAL
Case No. 07-5944 SC
MDL No. 1917