1  Eliot A. Adelson (SBN 205284)
   James Maxwell Cooper (SBN 284054)
2  KIRKLAND & ELLIS LLP
   555 California Street, 27th Floor
3  San Francisco, CA 94104
   Telephone: (415) 439-1400
4  Facsimile: (415) 439-1500
   Email: eadelson@kirkland.com
5  Email: max.cooper@kirkland.com

6  James H. Mutchnik, P.C. (*pro hac vice*)
   Barack Echols (*pro hac vice*)
7  KIRKLAND & ELLIS LLP
   300 North LaSalle
8  Chicago, IL  60654
   Telephone: (312) 862-2000
9  Facsimile: (312) 862-2200
   Email: jmutchnik@kirkland.com
10 Email: bechols@kirkland.com

11 Attorneys for Defendants
   HITACHI DISPLAYS, LTD. (n/k/a JAPAN
12 DISPLAY INC.), HITACHI AMERICA, LTD.,
   AND HITACHI ELECTRONIC DEVICES
13 (USA), INC.

14               **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16                    **SAN FRANCISCO DIVISION**

17 | IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. Master File No. 3:07-cv-05944-SC |
   |---|---|
   | | MDL NO. 1917 |
   | This Document Relates to: | **HITACHI PARTIES' REPLY TO MOTION FOR SUMMARY JUDGMENT BASED UPON THE LACK OF EVIDENCE OF PARTICIPATION IN THE ALLEGED CONSPIRACY** |
   | *All Indirect Purchaser Actions* | |
   | *Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.*, No. 3:11-cv-01656-SC; | **ORAL ARGUMENT REQUESTED** |
   | *Alfred H. Siegel as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al.*, No. 3:11-cv-05502-SC; | Date:    February 6, 2015<br>Time:    10:00 a.m.<br>Before:  Hon. Samuel Conti |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1
2   *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 3:11-cv-05513-SC;

3   *Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 3:11-cv-
4   05514-SC

5   *Interbond Corporation of America, d/b/a BrandsMart USA v. Hitachi, et al.*,
6   No. 3:11-cv-06275-SC;

7   *Office Depot, Inc. v. Hitachi, Ltd., et al.*,
8   No. 3:11-cv-06276-SC;

9   *CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, No. 3:11-cv-06396-SC;
10

11  *Costco Wholesale Corporation v. Hitachi, Ltd., et al.*, No. 3:11-cv-06397-SC;
12

13  *P.C. Richard & Son Long Island Corporation, et al. v. Hitachi, Ltd., et al.*, No. 3:12-cv-02648-SC;

14
15  *Schultze Agency Services, LLC on behalf of Tweeter OPCO, LLC and Tweeter Newco, LLC v. Hitachi, Ltd., et al.*, No. 3:12-cv-02649-SC;

16
17  *Tech Data Corporation, et al. v. Hitachi, Ltd., et al.*, No. 3:13-cv-00157-SC

18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

Page

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

INTRODUCTION .............................................................................................................................1

ARGUMENT .....................................................................................................................................2

I.     PLAINTIFFS CANNOT AVOID THEIR OBLIGATION UNDER WELL-SETTLED LAW TO PRODUCE EVIDENCE AS TO EACH INDIVIDUAL DEFENDANT. ...........2

    A.     Rather than provide evidence of each individual Hitachi Party's participation in the alleged conspiracy, as they were required to, Plaintiffs misstate the law and improperly treat all the Hitachi Parties as one. ...................................................2

        1.     Hitachi Electronic Devices (USA), Inc. ("HED(US)") ...............................4

        2.     Hitachi America, Ltd. ("HAL") ...................................................................5

        3.     Hitachi Displays, Ltd. ("HDP") ...................................................................5

    B.     Plaintiffs rely on a "slight connection" standard for proving individual participation in a conspiracy that the Ninth Circuit has expressly rejected. .............7

II.    PLAINTIFFS FAIL TO PROVIDE ANY DIRECT OR CIRCUMSTANTIAL EVIDENCE SUFFICIENT TO AVOID SUMMARY JUDGMENT AS TO THE HITACHI PARTIES. ...................................................................................................................9

    A.     Plaintiffs fail to provide *any* evidence rebutting the Hitachi Parties' direct evidence that they did *not* participate in the alleged CRT conspiracy......................9

    B.     Plaintiffs mischaracterize the "evidence" on which they rely. ...............................10

    C.     Plaintiffs fail to offer evidence that any exchanges of market information that the Hitachi Parties engaged in were for an unlawful purpose or reflected any "agreement." ................................................................................................................11

CONCLUSION ...............................................................................................................................14

## TABLE OF AUTHORITIES

Page

### Cases

AD/SAT v. Assoc. Press,
  181 F.3d 216 (2nd Cir 1999) .................................................................................. 8, 13

Beyene v. Coleman Sec. Services, Inc.,
  854 F.2d 1179 (9th Cir. 1988) ..................................................................................... 11

Bowoto v. Chevron Texaco Corp.,
  312 F. Supp. 2d 1229 (N.D. Cal. 2004) ....................................................................... 7

Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,
  769 F.2d 919 (2d. Cir. 1985) ....................................................................................... 13

Canada v. Blain's Helicopters, Inc.,
  831 F.2d 920 (9th Cir. 1987) ....................................................................................... 11

Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC,
  148 F.3d 1080 (D.C. Cir. 1998) ................................................................................... 6

Carrier Corp. v. Outokumpu Oyj,
  673 F.3d 430 (6th Cir. 2012) ....................................................................................... 3

City of Long Beach v. Standard Oil Co. of Cal.,
  872 F.2d 1401 (9th Cir. 1989) ..................................................................................... 13

Cnty. of Tuolumne v. Sonora Cnty. Hosp.
  236 F.3d 1148 (9th Cir. 2001) ..................................................................................... 9

Cristobal v. Siegel,
  26 F.3d 1488 (9th Cir. 1994) ....................................................................................... 11

Esco Corp. v. United States,
  340 F.2d 1000 (9th Cir. 1965) ................................................................................. 4, 8

Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,
  896 F.2d 1542 (9th Cir. 1989) ..................................................................................... 11

Hamilton v. Keystone Tankship Corp.,
  539 F.2d 684 (9th Cir. 1976) ....................................................................................... 11

In re Baby Food Antitrust Litig.,
  166 F.3d 112 (3d. Cir. 1999) ....................................................................................... 13

In re Citric Acid Litig.,
  191 F.3d 1090 (9th Cir. 1999) ............................................................................ *passim*

*In re Lithium Ion Batteries Antitrust Litig.*,
   13-MD-2420, 2014 WL 309192 (N.D. Cal. Jan 21, 2014) .................................................. 2, 3, 8

*In re Optical Disk Drive Antitrust Litig.*,
   10-md-2143, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) ........................................................ 3

*In re Publ'n Paper Antitrust Litig.*,
   690 F.3d 51 (2d Cir. 2012) ........................................................................................................ 3

*In re Vitamins Antitrust Litig.*,
   320 F. Supp. 2d 1 (D.D.C. 2004) .............................................................................................. 3

*Int'l Healthcare Mgmt. v. Hawaii Coal. For Health*,
   332 F.3d 600 (9th Cir. 2003) ................................................................................................... 13

*Maple Flooring Mfrs.' Ass'n v. United States*,
   268 U.S. 563 (1925) ................................................................................................................ 12

*Mitchael v. Intracorp, Inc.*,
   179 F.3d 847 (10th Cir. 1999) ................................................................................................... 3

*Monsanto Co. v. Spray-Rite Service Corp.*,
   465 U.S. 752 (1984) .................................................................................................................. 8

*Moore v. Thomas*,
   653 F. Supp. 2d 984 (N.D. Cal. 2009) .................................................................................... 11

*Orr v. Bank of Am., NT & SA*,
   285 F.3d 764 (9th Cir. 2002) ................................................................................................... 11

*Reynolds Metals Co. v. Columbia Gas Sys.*,
   669 F. Supp. 744 (E.D. Va. 1987) ............................................................................................. 3

*RSM Prod. Corp. v. Petroleos de Venezuela Societa Anonima (PDVSA)*,
   338 F. Supp. 2d 1208 (D. Colo. 2004) ...................................................................................... 3

*Spanish Broadcasting System of Florida, Inc. v. Clear Channel Communications, Inc.*,
   376 F.3d 1065 (11th Cir. 2004) ................................................................................................. 6

*Stanislaus Food Products Co. v. USS-POSCO Indus.*,
   09-cv-00560, 2013 WL 595122 (E.D. Cal. Feb. 15, 2013) ........................................................ 9

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
   622 F. Supp. 2d 890 (N.D. Cal. 2009) ...................................................................................... 7

*Sunnyside Dev. Co. LLC v. Opsys Ltd.*,
   C 05 0553 MHP, 2007 WL 2462142 (N.D. Cal. Aug. 29, 2007) .............................................. 6

*Toscano v. Prof'l Golfers Ass'n*,
   258 F.3d 978 (9th Cir. 2001) ..................................................................................................... 8

*United States v. Dunn*,
    564 F.2d 348 (9th Cir. 1977) .................................................................................................. 8

*United States v. Tran*,
    568 F.3d 1156 (9th Cir. 2009) ................................................................................................ 8

**Rules**

Fed. R. Civ. P. 56(e) ................................................................................................................... 11

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

Hitachi America, Ltd. ("HAL"), Hitachi Displays, Ltd. ("HDP"), and Hitachi Electronic Devices (USA), Inc. ("HED(US)") (collectively, the "Hitachi Parties") respectfully submit this Reply Memorandum of Points and Authorities in response to Plaintiffs' Joint Opposition to Hitachi Parties' Motion for Summary Judgment Based Upon the Lack of Evidence of Participation in the Alleged Conspiracy. For the reasons in the Hitachi Parties' opening memorandum ("Mem."), and set forth below, Plaintiffs in their Opposition ("Opp.") have failed to come forward with any evidence that "tends to exclude the possibility of independent conduct" on the part of the Hitachi Parties. Summary judgment is therefore proper as to the Hitachi Parties with respect to Plaintiffs' federal Sherman Act and related state law antitrust claims.

## INTRODUCTION

Plaintiffs' Opposition tries to avoid, rather than address, the undisputed facts and well-settled law establishing that summary judgment is proper as to the Hitachi Parties. Plaintiffs dismiss the only direct evidence here—the sworn testimony of Hitachi witnesses that none of the Hitachi Parties was part of any conspiratorial agreement involving CRTs, and additional testimony from seven witnesses of other manufacturers, including some who admit participating in the CRT cartel, that none of the Hitachi Parties attended any conspiratorial "Glass Meetings" or entered into an illegal agreement with their companies. Instead, Plaintiffs misstate the applicable legal standards and then attack a series of straw men of their own creation, responding to arguments that have nothing to do with what the law requires on the undisputed evidence here.

*First*, Plaintiffs continue to shirk their responsibility of coming forward with *evidence* with respect to each of the individual Hitachi Parties they seek to hold liable for the alleged conspiracy. Recognizing they cannot satisfy the applicable legal standard, they misstate this Circuit's settled law that, in order to avoid summary judgment, they are required to provide proof that *each* defendant they seek to recover damages from, participated in the alleged conspiracy—evidence sufficient to raise a genuine issue of material fact.

*Second*, Plaintiffs try to obscure the fact that they have not presented this Court with evidence sufficient to avoid summary judgment by mischaracterizing the evidence they cite, or relying on evidence that is unauthenticated and inadmissible.

*Third*, Plaintiffs ignore the well-settled law that circumstantial evidence that does not "tend to exclude the possibility" of the Hitachi Parties' independent, legitimate business conduct—which is the only evidence Plaintiffs offer here—is insufficient to avoid summary judgment. And, in the face of the undisputed facts, and the Hitachi Parties' unrebutted explanations for their legitimate business practices, Plaintiffs may not rest on conclusory allegations of conspiratorial behavior.

Stripped to their core, Plaintiffs' bare *arguments* cannot refute the undisputed *evidence* establishing that summary judgment as to the Hitachi Parties is proper.

## ARGUMENT

**I.  PLAINTIFFS CANNOT AVOID THEIR OBLIGATION UNDER WELL-SETTLED LAW TO PRODUCE EVIDENCE AS TO EACH INDIVIDUAL DEFENDANT.**

**A.  Rather than provide evidence of each individual Hitachi Party's participation in the alleged conspiracy, as they were required to, Plaintiffs misstate the law and improperly treat all the Hitachi Parties as one.**

Plaintiffs' argument that the Hitachi Parties "urge this Court to ignore the body of conspiracy evidence and strictly compartmentalize the evidence it reviews on a defendant-by-defendant basis" entirely misses the mark. (*See* Opp. at 15)[1]. The Hitachi Parties' position is exactly what the law requires: Plaintiffs have the burden of proving, *with evidence* that *each* defendant participated in the alleged conspiracy. (*See* Mem. at 12-16). Plaintiffs are the ones who ask the Court to ignore well-settled law.

Antitrust plaintiffs have "[t]he burden of coming forward with evidence demonstrating the 'conscious commitment' to an unlawful scheme" for each parent, subsidiary, or corporate affiliate they allege conspired. (Mem. at 13 (quoting *In re Lithium Ion Batteries Antitrust Litig.*, 13-MD-2420, 2014 WL 309192 at *13 (N.D. Cal. Jan. 21, 2014)). "The intent that must be shown in a

---

[1] The *Cont'l Ore Cor. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) language Plaintiffs cite says nothing about the standard for proving a conspiracy, but instead relates to the determination of damages in an antitrust case. (*See* Opp. at 1, 15). Nowhere in *Cont'l Ore* does the Supreme Court suggest, let alone hold, that a plaintiff need not provide evidence of each individual defendant's participation in a conspiracy to establish liability.

conspiracy case is the intent to advance the unlawful purpose of the conspiracy." *In re Vitamins Antitrust Litig.*, 320 F. Supp. 2d 1, 16 (D.D.C. 2004). Plaintiffs were thus required at this summary judgment stage to adduce admissible evidence that each of the defendant subsidiaries or affiliates consciously agreed to participate in, or could be charged with knowledge of, the alleged price-fixing conspiracy. *See Lithium Ion Batteries*, 2014 WL 309192 at *13.[2]

When a group of related defendants is accused of wrongdoing, plaintiffs must adduce evidence demonstrating "that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *In re Optical Disk Drive Antitrust Litig.*, 10-md-2143, 2012 WL 1366718, at *7 (N.D. Cal. Apr. 19, 2012) (internal quotations omitted). "[A] subsidiary and its parent, or a subsidiary and a sister subsidiary" cannot be considered a single enterprise in an antitrust action **unless** there is "evidence that both were involved in the challenged conduct." *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 857 (10th Cir. 1999); *see also Reynolds Metals Co. v. Columbia Gas Sys.*, 669 F. Supp. 744, 750 (E.D. Va. 1987) ("ownership alone is insufficient to disregard the corporate identity" in an antitrust action). Without "specific evidence of coordinated activity" courts will not extend liability "merely because [an entity] happens to be the wholly owned subsidiary of a company." *Mitchael*, 179 F.3d at 857; *see also In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 55 (2d Cir. 2012) (granting summary judgment to parent company given lack of sufficient evidence that it "had any direct involvement in decisions regarding [its subsidiary's] marketing, sale or pricing"); *RSM Prod. Corp. v. Petroleos de Venezuela Societa Anonima (PDVSA)*, 338 F. Supp. 2d 1208, 1216 (D. Colo. 2004) ("fact that [company] is a wholly-owned subsidiary of [defendant parent], without more, does not subject [it] to liability on any basis").

Plaintiffs must prove participation in the alleged conspiracy by each individual defendant by coming forward with "specific evidence tending to show that the defendant was not engaging in permissible competitive behavior." *In re Citric Acid Litig.*, 191 F.3d 1090, 1094-1095 (9th Cir.

---

[2] Plaintiffs' reliance on *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 445-46 (6th Cir. 2012) is misplaced. The court there addresses only the showing necessary in a complaint to survive a motion to dismiss, and did not address the requirements at the summary judgment stage, where plaintiffs must produce *evidence*.

1   1999); see *Esco Corp. v. United States*, 340 F.2d 1000, 1009 (9th Cir. 1965). (*See* Mem. at 12-16).
2   But they have completely failed to come forward with any such evidence against the Hitachi Parties
3   here.
4         As a threshold matter, Plaintiffs have not adduced any evidence establishing that HTL
5   participated in the alleged CRT cartel. Accordingly, Plaintiffs' efforts to link HED(US), HAL and
6   HDP to their ultimate parent corporation can in no way *prove* participation in any cartel by any of
7   the Hitachi Parties. Regardless, none of the "evidence" Plaintiffs cite, however, supports the
8   conclusion that all the Hitachi companies may properly be treated as one single entity. Just the
9   opposite.

      **1.    Hitachi Electronic Devices (USA), Inc. ("HED(US)")**

Contrary to Plaintiffs' treatment of all the Hitachi Parties as a single "Hitachi," the undisputed evidence is that HED(US) was its own, independent company and its decision-making was not directed or controlled by its Japanese affiliates: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Mem. at 5). Plaintiffs' distortions of the record testimony cannot change these facts.

- For example, Plaintiffs rely on 

---

[3] All exhibits cited herein are attached to the Reply Declaration of Eliot A. Adelson, and will be referenced in the remainder of this brief as "Ex."



- In addition, the fact ███████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

Put in proper context, Plaintiffs' evidence reflects nothing more than legitimate business decisions made by HED(US), and not overarching control exercised by another Hitachi entity.

### 2. Hitachi America, Ltd. ("HAL")

Plaintiffs' "support" for HAL's involvement in a purported global "Hitachi" enterprise is equally specious. (Opp. at 2-4; Opp. Ex. 10). Plaintiffs describe this evidence—a single exhibit—as a ███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

### 3. Hitachi Displays, Ltd. ("HDP")

Aside from noting that HDP is a wholly-owned subsidiary of HTL, Plaintiffs offer no evidence to demonstrate that HDP was controlled by HTL or was otherwise part of any single "Hitachi" enterprise. (See Opp. at 2-4). Plaintiffs also *argue*, however, without citing any *evidence*, that ██████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████████ (See Opp. at 12, 20). Contrary to Plaintiffs' suggestion, ███████████████████████████, has not appeared in this case, and is not represented here. ████████████████████

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Moreover, the law is well established that a minority ownership interest in a company, absent proof that the shareholder exercises operational control, cannot convert a shareholder into a "market participant" —or here a purported conspirator—as a matter of law. See *Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1088 (D.C. Cir. 1998); see also *Spanish Broadcasting System of Florida, Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1065, 1075 (11th Cir. 2004). (See Mem. 12-13).[4]

Rather than offer any proof, Plaintiffs instead argue that HDP was a mere continuation of HTL's Display Group under a successor-in-interest theory. (See Opp. at 11-12, 21-22). This theory, however, is unsupported by any evidence and is nothing more than a red herring. Plaintiffs assert that HDP qualifies as a "continuation" of HTL because there was "no known consideration" paid by HDP. (Opp. at 22). But, in the very same sentence, they acknowledge that HTL became the sole shareholder in HDP—meaning that HDP's stock was indeed paid as a consideration to HTL for the transfer of certain business assets. (*See id.* at 22). As Plaintiffs' own cited cases make clear, "[f]ailure to prove inadequate consideration is fatal to plaintiff's claim of mere continuation." *Sunnyside Dev. Co. LLC v. Opsys Ltd.*, C 05 0553 MHP, 2007 WL 2462142 at *10 (N.D. Cal. Aug. 29, 2007). Plaintiffs' conclusory argument—refuted by the very evidence on which it is based—cannot relieve Plaintiffs of their burden of ***proving***, by admissible evidence, that HDP—like each other individual defendant and each of the Hitachi Parties—participated in the alleged conspiracy. Yet, despite this requirement, Plaintiffs persist in attacking their invented, composite "Hitachi," and

---

[4] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1  in attributing to all the individual Hitachi Parties purported evidence that pertains, if at all, only to
2  corporate affiliates.[5] (*See, e.g.*, Opp. at 2-4, 18).
3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮   Apart from the fact that these employees worked for various affiliates, there is no evidence
6  that they usurped the affiliates' management team and took over corporate responsibilities.
7  Moreover, this broad, generic argument goes against the long-standing corporate legal principles
8  that, despite some overlap in directors or responsibilities, parent and subsidiary corporations must be
9  treated separately as individual entities, including with respect to assigning potential liability. *See*
10 *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1234 (N.D. Cal. 2004) ("Only in unusual
11 circumstances will the law permit a parent corporation to be held either directly or indirectly liable
12 for the acts of its subsidiary."). A degree of corporate supervision or information-sharing between
13 affiliates in no way justifies treating separate corporate affiliates as one entity: "[T]he fact[s] that
14 [the companies] shared two board members, or that [they] shared some supervision of finance and
15 pricing decisions—do not justify any inference of agency as a matter of law." *Sun Microsystems*
16 *Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 901 (N.D. Cal. 2009). And this rule is no
17 different when it comes to antitrust claims against related companies. *See supra* pp. 2-3.

18  **B.    Plaintiffs rely on a "slight connection" standard for proving individual
19         participation in a conspiracy that the Ninth Circuit has expressly rejected.**

20         In an effort to camouflage their inability to adduce evidence of conspiracy with respect to the
21 Hitachi Parties, Plaintiffs flatly misstate the law. They argue that "it is well settled in this Circuit"
22 that if the existence of a conspiracy is established "an individual defendant is liable if the evidence
23 shows '*even a slight connection*'" to the conspiracy. (Opp. at 17 (internal quotations omitted,
24 emphasis added). That is not the law. In fact, the Ninth Circuit has repeatedly and expressly
25 rejected this "slight connection" standard as inapplicable to the circumstances here.

---

[5] Contrary to Plaintiffs' suggestion, neither the Hitachi Parties nor their affiliates, Hitachi Asia, Ltd. or Hitachi Limited, concede that *any* Hitachi entity participated in the alleged conspiracy. However, Plaintiffs' failure to present *any* admissible evidence demonstrating that *these* Hitachi Parties participated in the alleged conspiracy mandated that they file this motion at this time.

Courts have repeatedly held that the "slight connection" standard does *not* negate the requirement of a conscious decision to join the conspiracy and has been *disapproved as a standard* for determining whether a defendant has joined the conspiracy in the first instance. *Lithium Ion Batteries*, 2014 WL 309192, at *13, n.13; *see also United States v. Dunn*, 564 F.2d 348, 357 n.21 (9th Cir. 1977) ("[A]fter much reflection we are of the mind that the slight evidence rule may be of doubtful appellate application when the issue for review concerns whether the defendant was connected with the conspiracy at all."). The "slight connection" standard does not lessen the Plaintiff's burden to establish participation in the alleged conspiracy by each individual entity. *See United States v. Tran*, 568 F.3d 1156, 1164 (9th Cir. 2009) ("Slight connection" in this context does not mean that the government's burden of proving a connection is slight.") (internal quotations omitted).

Moreover, "[t]o the extent that Plaintiffs urge that a slight connection need not include a conscious decision to join the conspiracy, their position is *at odds with binding precedent*." *Lithium Ion Batteries* at *13, n.13 (citing *e.g.*, *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984)) (emphasis added); *see Toscano v. Prof'l Golfers Ass'n*, 258 F.3d 978, 983 (9th Cir. 2001)). As the Ninth Circuit has held, "the 'slight evidence' rule [] is a rule of criminal appellate procedure *not properly applied* to a motion for summary judgment." *In re Citric Acid Litig.*, 996 F. Supp. 951, 955 (N.D. Cal. 1998) *aff'd*, 191 F.3d 1090 (9th Cir. 1999) (emphasis added). "The proffered 'slight connection' or 'slight evidence' rule has been *disapproved as a standard* for determining whether a defendant has joined a conspiracy in the first instance, and indeed as a standard applicable in district courts *at all*." *Lithium Ion Batteries*, 2014 WL 309192, at *13, n.13 (emphasis added).

Plaintiffs' insistence that this Court should apply this lower standard—one repeatedly criticized and rejected by courts in this Circuit as entirely inapplicable here—to determine whether there is sufficient evidence of the Hitachi Parties' participation in the alleged CRT conspiracy is telling. In short, Plaintiffs' attempt to hide from the legal requirement that each defendant's individual "participation must be proved by evidence relating to *its* participation" regardless of whether it is done with direct or circumstantial evidence. *Esco Corp. v. U.S*, 340 F.2d 1000, 1009 (9th Cir. 1965); *see also AD/SAT v. Assoc. Press*, 181 F.3d 216, 234 (2nd Cir 1999) (proving

conspiracy "require[s] a factual showing that *each defendant* conspired in violation of the antitrust laws") (emphasis added). When the proper standard is applied, Plaintiffs' failure of proof becomes apparent.

## II. PLAINTIFFS FAIL TO PROVIDE ANY DIRECT OR CIRCUMSTANTIAL EVIDENCE SUFFICIENT TO AVOID SUMMARY JUDGMENT AS TO THE HITACHI PARTIES.

### A. Plaintiffs fail to provide *any* evidence rebutting the Hitachi Parties' direct evidence that they did *not* participate in the alleged CRT conspiracy.

Although the Hitachi Parties never argued that it was required, Plaintiffs attack the straw man that they need not produce a "smoking gun" to prove participation in the alleged conspiracy by each entity. (Opp. at 16). That is not the point.

Rather, the Hitachi Parties established that there is *no* direct evidence of any of these entities' participation in the conspiracy—a fact that Plaintiffs fail to refute. As set forth in the Hitachi Parties' opening brief "direct evidence is 'evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted.'" (Mem. at 11 (citing *Cnty. of Tuolumne v. Sonora Cnty. Hosp.* 236 F.3d 1148, 1155 (9th Cir. 2001))). Thus, direct evidence includes such things as express admissions that a conspiracy existed and that a party participated in it. See *Stanislaus Food Products Co. v. USS-POSCO Indus.*, 09-cv-00560, 2013 WL 595122, at *8 (E.D. Cal. Feb. 15, 2013) ("testimony from percipient witnesses that defendants agreed at a certain meeting to fix prices or not to compete" qualifies as "direct evidence"). There is no such direct evidence with respect to any of the Hitachi defendants, including the Hitachi Parties here.

Although Plaintiffs give it the back of the hand, the *only* direct evidence in this case is that the Hitachi Parties *did not* participate in the alleged conspiracy. (*See* Mem. at 11-12). [redacted]

1  This is remarkable direct evidence—from witnesses who have no stake in assisting or
2  defending the Hitachi Parties—and is the very type of evidence courts in this Circuit have noted as
3  raising the bar for plaintiffs, like Plaintiffs here, who rely only on circumstantial evidence as proof of
4  an alleged conspiracy. *See Citric Acid*, 996 F. Supp. at 955, 956 (finding testimony that a defendant
5  did not attend any meetings with conspirators from a party that pled guilty to conspiracy and thus
6  had no "reason to shield [the defendant]," to be "[m]ost persuasive" making "the utter lack of direct
7  evidence . . . quite probative").

      **B.**    **Plaintiffs mischaracterize the "evidence" on which they rely.**

9  Indeed, review of the very documents and testimony on which Plaintiffs rely demonstrates
10 that they refute, rather than support, Plaintiffs' argument that the Hitachi Parties took part in the
11 alleged conspiracy. For instance, Plaintiffs twice cite as purported evidence of HAL's participation
12 in the alleged conspiracy a memo stating that [REDACTED]

24 This is evidence of *competition*, not collusion.

25 In a similar manner, [REDACTED]

27 Plaintiffs support this argument with a citation to the 30(b)(6) Deposition of Patrick
28 Barrett. (*See* Opp. at Ex. 1 at 23:13-24:5). That testimony, however, explicitly denies Plaintiffs'

statement: "Hitachi, Ltd. did not have the ability to appoint Hitachi Displays, Ltd.'s officers during the relevant period. . . . Hitachi, Ltd. did not have the ability to appoint Hitachi Displays, Ltd.'s officers." (*Id.*).

Thus, the evidence simply does not say what Plaintiffs say it does, and it in no way supports Plaintiffs' "conspiracy theory" as to the Hitachi Parties.

### C. Plaintiffs fail to offer evidence that any exchanges of market information that the Hitachi Parties engaged in were for an unlawful purpose or reflected any "agreement."

Mistaking volume of exhibits for substance, the overwhelming majority of the purported "evidence" on which Plaintiffs rely is no more than unsupported citation and mischaracterization of numerous documents that reflect possible discussion or collection of market information involving certain Hitachi companies and others in the CRT industry, but *that Plaintiffs argue* constitute evidence of agreement.

As a threshold matter, many of these documents upon which Plaintiffs rely are no more than unauthenticated and inadmissible hearsay, as to which Plaintiffs have offered no foundation. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").[6] The law in this Circuit is clear that, "[i]n a summary judgment motion, documents authenticated through personal knowledge must be attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id.* at 773-774. Plaintiffs do not even attempt to satisfy that requirement here.[7]

---

[6] *Orr* relies on numerous Ninth Circuit cases supporting this standard: *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989); *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988); *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976). *Orr*, 285 F.3d at 773. Courts continue to follow *Orr. See, e.g., Moore v. Thomas*, 653 F. Supp. 2d 984, 991 (N.D. Cal. 2009) ("Unauthenticated documents and hearsay evidence are inadmissible, and consequently, may not be considered on summary judgment.").

[7] Indeed, much of the "evidence" Plaintiffs rely upon is not admissible evidence that is properly considered on summary judgment. The Hitachi Parties have submitted a separate document listing the evidence to which they object and the basis for their objections.

As the Hitachi Parties showed in their opening memorandum, the only competent, admissible evidence in this case is that the Hitachi Parties collected market information *to compete*, not collude. (*See* Mem. at 5-6 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (emphasis in original)). Indeed, additional record testimony and evidence that Plaintiffs cite and attach to their Opposition show exactly the same thing—that any collection and exchange of market information was for legitimate, competitive purposes:



These activities—this collection and, in some instances, sharing of market information—is precisely the type of conduct that the Supreme Court has recognized is *procompetitive*—not indicative of conspiracy. *Maple Flooring Mfrs.' Ass'n v. United States*, 268 U.S. 563, 583 (1925) ("Competition does not become less free merely because the conduct of commercial operations becomes more intelligent through the free distribution of knowledge of all the essential factors

1  entering into the commercial transaction."). Plaintiffs' experts agree that such information-sharing
2  can be competitive, not collusive. ████████████████████████████████████
3  ████████████████████████████████████████████████████████████████████
4  ████████████████████████████

5         The law is long established that, "'[a]n antitrust plaintiff may not [] in opposing a motion for
6  summary judgment, rest on conclusory assertions of conspiracy when the defendants have proffered
7  substantial evidence supporting a plausible and legitimate explanation of their conduct.'" *AD/SAT v.*
8  *Assoc. Press*, 181 F.3d 216, 235 (2d. Cir. 1999) (quoting *Burlington Coat Factory Warehouse Corp.*
9  *v. Esprit De Corp.*, 769 F.2d 919, 923 (2d. Cir. 1985)). An antitrust claim built only on inter-
10 company communications and information exchanges must fail absent some further evidence of
11 *agreement*. See *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 133 (3d. Cir. 1999) ("[C]ourts
12 generally reject conspiracy claims that seek to infer an agreement from communications despite a
13 lack of independent evidence tending to show an agreement and in the face of uncontradicted
14 testimony that only informational exchanges took place.") (quotations omitted).

15        Where, as here, "only circumstantial evidence of a conspiracy is offered, a defendant is
16 entitled to summary judgment if it provides a plausible and justifiable alternative interpretation of its
17 conduct that rebuts the alleged conspiracy." *City of Long Beach v. Standard Oil Co. of Cal.*, 872
18 F.2d 1401, 1406-07 (9th Cir. 1989); *see also Int'l Healthcare Mgmt. v. Hawaii Coal. For Health*,
19 332 F.3d 600, 607 (9th Cir. 2003) (absent evidence of agreement, "the gathering and dissemination
20 of information as to the cost and price" among association members is not anti-competitive.); *In re*
21 *Citric Acid Litigation*, 191 F.3d 1090, 1098 (9th Cir. 1999) ("Gathering information about pricing
22 and competition in the industry is standard fare for trade associations."). But such circumstantial
23 "evidence" is all that Plaintiffs offer here—their own speculation and ominous characterizations of
24 various documents. In the face of the Hitachi Parties' undisputed, plausible and justifiable reasons
25 for their conduct—namely serving their customers and *competing*, not colluding—"[t]he burden
26 then shifts back to [Plaintiff] to provide *specific evidence* tending to show that [each] defendant was
27
28

not engaging in permissible competitive behavior." *Id.* at 1094. Despite their repeated mischaracterizations of the record, Plaintiffs fail to do that here.[8]

## CONCLUSION

Plaintiffs' contortions of the law and distortions of the facts in their Opposition demonstrate that they are unable to meet their burden of adducing any evidence that "tends to exclude" that the Hitachi Parties were operating non-conspiratorially and in their own legitimate and independent interests. The law is clear. The relevant evidence here—the admissible, undisputed evidence—establishes that there is no genuine issue of material fact as to the Hitachi Parties' *lack* of participation in the alleged CRT conspiracy. For these reasons, and the reasons set forth in their opening memorandum, the Hitachi Parties respectfully request that the Court grant summary judgment in their favor.

DATED: January 23, 2015

By: */s/ Eliot A. Adelson*

Eliot A. Adelson
James Maxwell Cooper
KIRKLAND & ELLIS LLP
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: eadelson@kirkland.com
Email: max.cooper@kirkland.com

Attorneys for Defendants
HITACHI DISPLAYS, LTD. (n/k/a JAPAN DISPLAY INC.), HITACHI AMERICA, LTD., AND HITACHI ELECTRONIC DEVICES (USA), INC.

---

[8] Nor is it the case, as Plaintiffs suggest (Opp. at 10, 14), that they can rescue their mischaracterized, inadmissible "evidence" by filtering them through their expert. "The law is clear, however, that an expert report cannot be used to prove the existence of facts set forth therein." *Citric Acid*, 191 F.3d at 1102.