1   JEFFREY L. KESSLER (*pro hac vice*)
    ALDO A. BADINI (257086)
2   EVA W. COLE (*pro hac vice*)
    MOLLY M. DONOVAN (*pro hac vice*)
3   WINSTON & STRAWN LLP
    200 Park Avenue
4   New York, New York 10166-4193
    Telephone: (212) 294-6700
5   Facsimile: (212) 294-4700
    Email: jkessler@winston.com
6
    STEVEN A. REISS (*pro hac vice*)
7   DAVID L. YOHAI (*pro hac vice*)
    ADAM C. HEMLOCK (*pro hac vice*)
8   WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
9   New York, New York 10153-0119
    Telephone: (212) 310-8000
10  Facsimile: (212) 310-8007
    Email: steven.reiss@weil.com
11
12  *Attorneys for Defendants Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of North America, MT Picture Display Co., Ltd.*

13  Additional Moving Defendants and Counsel Listed on Signature Pages

14              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
15                  SAN FRANCISCO DIVISION

16  | **In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | **Case No. 07-5944 SC** |
    |---|---|

17  **MDL No. 1917**

18  This Document Relates to:

19  ALL INDIRECT-PURCHASER ACTIONS     **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT BASED UPON PLAINTIFFS' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA**

20  *Electrograph Sys., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-01656;

21  *Electrograph Sys., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05724;

22  *Siegel v. Hitachi, Ltd., et al.*, No. 11-cv-05502;

23  *Siegel v. Technicolor SA, et al.*, No. 13-cv-05261;     Judge: Hon. Samuel P. Conti
                                                              Court: Courtroom 1, 17th Floor
24                                                            Date:   February 6, 2015 10:00 a.m.

25  *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513;     **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

26  *Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05264;

27

28

1  *Target Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514;

2  *Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686;

3  *Sears, Roebuck & Co., et al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514;

4  

5  *Sears, Roebuck & Co., et al. v. Technicolor SA, et al.*, No. 13-cv-05262;

6  

7  *Interbond Corp. of Am. v. Hitachi, Ltd., et al.*, No. 11-cv-06275;

8  *Interbond Corp. of Am. v. Technicolor SA, et al.*, No. 13-cv-05727;

9  *Office Depot, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06276;

10  

11  *Office Depot, Inc. v. Technicolor SA, et al.*, No. 13-cv-05726;

12  *CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06396;

13  

14  *Costco Wholesale Corp. v. Hitachi, Ltd., et al.*, No. 11-cv-06397;

15  *Costco Wholesale Corp. v. Technicolor SA, et al.*, No. 13-cv-05723;

16  

17  *P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al.*, No. 12-cv-02648;

18  *P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al.*, No. 13-cv-05725;

19  

20  *Schultze Agency Servs., LLC v. Hitachi, Ltd., et al.*, No. 12-cv-02649;

21  *Schultze Agency Servs., LLC v. Technicolor SA, et al.*, No. 13-cv-05668;

22  

23  *Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, No. 13-cv-00157

24  *ViewSonic Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 14-cv-02510;

25  

26  *Dell Inc., et al. v. Hitachi Ltd. et al.*, No. 13-cv-02171.

27  

28  

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.' FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................... 1

ARGUMENT ............................................................................................................. 4

   I.     PLAINTIFFS DO NOT DISPUTE THE ONLY FACTS RELEVANT TO
          DEFENDANTS' MOTION ............................................................................ 4

   II.    PLAINTIFFS' INDIRECT DAMAGES CLAIMS FAIL TO
          SEGREGATE PURCHASES WHICH ARE NOT ACTIONABLE
          UNDER THE FTAIA ..................................................................................... 5

         A.     The FTAIA Applies to Plaintiffs' State Law Claims .................................... 6

         B.     Plaintiffs' Purchases of Finished CRT Products That Were Not
                Imported by Defendants Are Not Excluded As "Import"
                Commerce, and Are Therefore Subject to the FTAIA ................................... 7

         C.     Plaintiffs' Commingling of Category 1 FTAIA Purchases (Some
                Unknown Portion of Which are Non-Actionable) with Category 2
                Import Commerce Purchases Is Fatal Under *Comcast* .................................. 9

   III.   PLAINTIFFS ERRONEOUSLY ARGUE THAT THE FTAIA HAS NO
          APPLICATION TO THEIR FEDERAL DIRECT PURCHASER
          CLAIMS ....................................................................................................... 11

   IV.   DEFENDANTS HAVE PRESENTED THE PROPER DAMAGES
          STANDARD .................................................................................................. 14

CONCLUSION .......................................................................................................... 15

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'         Case No. 07-5944
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND      MDL No. 1917
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

1

## TABLE OF AUTHORITIES

2

3

CASES                                                                       PAGE(S)

4

*Animal Sci. Prods., Inc. v. China Minmetals Corp.*,
654 F.3d 462 (3d Cir. 2011)...................................................................................... 8

5

6

*City of Vernon v. S. Cal. Edison Co.*,
955 F.2d 1361 (9th Cir. 1992) ................................................................................ 14

7

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013).................................................................................*passim*

8

9

*CSR Ltd. v. CIGNA Corp.*,
405 F. Supp. 2d 526 (D.N.J. 2005) ............................................................................ 9

10

*Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*,
417 F.3d 1267 (D.C. Cir. 2005) ......................................................................... 5, 13

11

12

*In re Ebay Seller Antitrust Litig.*,
No. C 07-01882 JF (RS), 2010 WL 760433 (N.D. Cal. Mar. 4, 2010), *aff'd sub nom*, 433
F. App'x 504 (9th Cir. 2011) ................................................................................. 15

13

14

*In re Indep. Serv. Orgs. Antitrust Litig.*,
85 F. Supp. 2d 1130 (D. Kan. 2000) ........................................................................ 11

15

16

*In re Intel Corp. Microprocessor Antitrust Litig.*,
476 F. Supp. 2d 452 (D. Del. 2007) ........................................................................... 6

17

*In re Monosodium Glutamate Antitrust Litig.*,
477 F.3d 535 (8th Cir. 2007) ................................................................................. 13

18

19

*In re Rubber Chem. Antitrust Litig.*,
504 F. Supp. 2d 777 (N.D. Cal. 2007) ................................................................ 5, 10

20

21

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
No. 07-md-01819 CW, 2010 WL 5477313 (N.D. Cal. Dec. 31, 2010)...................... 6, 10

22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
Nos. 10-CV-4572, 12-CV-4114, MDL No. 1827 (N.D. Cal. Sept. 3, 2013)............................ 10

23

24

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. C 09-5840 SI, 2010 WL 2610641 (N.D. Cal. June 28, 2010)..................................... 2, 8

25

26

*Japan Line, Ltd. v. Cnty. of L.A.*,
441 U.S. 434 (1979)..................................................................................................... 6

27

28

*McGlinchy v. Shell Chem. Co.*,
     845 F.2d 802 (9th Cir. 1988) ............................................................ 4, 11, 14

*MCI Commc'ns Corp. v. Am. Tel. and Tel. Co.*,
     708 F.2d 1081 (7th Cir. 1983) ................................................................ 14

*Minn-Chem, Inc. v. Agrium, Inc.*,
     683 F.3d 845 (7th Cir. 2012) ................................................................. 13

*Montano v. First Light Fed. Credit Union*,
     493 B.R. 852 (Bankr. D.N.M. May 21, 2013) ......................................... 11

*Motorola Mobility LLC v. AU Optronics Corp.*,
     No. 14-8003, 2014 WL 6678622 (7th Cir. Nov. 26, 2014), *order amended*,
     2015 WL 137907, *reh'g en banc denied*, Dkt. 147 (Jan. 12, 2015) .................................... *passim*

*Pension Comm. v. Banc of Am. Sec., LLC*,
     685 F. Supp. 2d 456 (S.D.N.Y. 2010) ..................................................... 15

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
     282 U.S. 555 (1931) .............................................................................. 14

*Turicentro, S.A. v. Am. Airlines, Inc.*,
     303 F.3d 293 (3d Cir. 2002) .................................................................... 8

*United States v. Hui Hsiung*,
     758 F.3d 1074 (9th Cir. 2014) ........................................................... *passim*

*United States v. LSL Biotechs.*,
     379 F.3d 672 (9th Cir. 2004) .................................................................. 9

*Zubulake v. UBS Warburg LLC*,
     220 F.R.D. 212 (S.D.N.Y. 2003) ............................................................. 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(e) ................................................................................ 4

U.S. Const. Art. I, § 8, cl. 3 ....................................................................... 6

H.R. Rep. 97-686 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2487, 2494.3 ...................... 12

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

### **INTRODUCTION**

Plaintiffs' Opposition only confirms that Plaintiffs have failed to present competent evidence that would enable a jury to distinguish between damages based on sales as to which the FTAIA precludes the application of U.S. antitrust laws and those sales to which federal and state antitrust laws apply.

***First***, Plaintiffs admit that the indirect purchaser plaintiff class ("IPPs") and certain direct action plaintiffs ("DAPs") seek damages under various states' laws that lump together two distinct "categories" of indirect purchases:   (1) purchases of finished products containing CRTs that Defendants first sold overseas to a third party such as, for example, HP or Tech Data, and that a non-defendant subsequently imported into the U.S. (Category 1); and (2) purchases of finished products "first sold into the U.S. by Defendants" (Category 2).[1] Nor do Plaintiffs dispute that, in calculating indirect purchaser damages, Plaintiffs' experts did nothing to segregate the claimed indirect purchaser damages in Category 1 from those in Category 2:



---

[1] Pls.' Opp'n to Defs.' Mot. for Summ. J. Based Upon Pls.' Failure to Distinguish Between Actionable and Non-Actionable Damages Under the FTAIA at 3, Dec. 23, 2014 ("Opposition" or "Opp'n") (Dkt. 3272); *see* Netz Report at 72, Apr. 15, 2014.

[2] Exhibits not attached hereto are attached to the Declaration of Jennifer M. Stewart in Support of Defs.' Mot. for Summ. J. Based Upon Pls.' Failure to Distinguish Between Actionable and Non-Actionable Damages Under the FTAIA, Nov. 7, 2014 (Dkt. 3008-2).

[3] Attached as Exhibit A to the concurrently filed Reply Declaration of Jennifer M. Stewart in Support of Defs.' Mot. for Summ. J. Based Upon Pls.' Failure to Distinguish Between Actionable and Non-Actionable Damages Under the FTAIA, Jan. 23, 2015 ("Stewart Reply Decl.").

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

1     These admissions are fatal.  The Ninth Circuit has held that a Section 1 claim based on

2  horizontal price-fixing of non-import, foreign component sales (Category 1) is a ***separate and***

3  ***distinct theory*** from a Section 1 claim based on horizontal price-fixing of components imported

4  directly by a defendant (Category 2).  *United States v. Hui Hsiung*, 758 F.3d 1074, 1092-93 (9th Cir.

5  2014).  And, *Comcast Corp. v. Behrend* holds that Plaintiffs were required to link their claimed

6  damages only to an actionable theory of recovery.  133 S. Ct. 1426, 1431 (2013).  Plaintiffs here did

7  not do so because, under governing law, they cannot credibly dispute that some unknown portion of

8  their indirect purchaser damages claims are based on overseas sales of CRTs to third parties

9  (Category 1), and are thus not actionable under U.S. antitrust laws pursuant to the FTAIA's

10  "domestic effects" test.[4]

11     Nor can Plaintiffs avoid the application of *Comcast* by arguing that their Category 1

12  purchases of finished CRT products should escape the reach of the FTAIA as import trade, ***even if***

13  ***Defendants had nothing to do with importing those products or their components to the United***

14  ***States***.  Opp'n at 18-19 (citing *Hsiung*, 758 F.3d at 1091).  The Ninth Circuit in *Hsiung* did not hold

15  that sales by a foreign defendant to other foreign entities outside the United States constitute "import

16  commerce" so long as the products are subsequently imported by someone into the United States.

17  Instead, the *Hsiung* court upheld defendants' convictions based solely on the $600 million in LCD

18  panel sales that defendants sold ***directly into the United States***.  *Hsiung*, 758 F.3d at 1094.

19  Accordingly, Plaintiffs cannot dispute the clear authority that imports by third parties do not fall

20  within the FTAIA's import exclusion, which applies only to imports by defendants.  *See, e.g.*,

21  *Motorola Mobility LLC v. AU Optronics Corp.*, No. 14-8003, 2014 WL 6678622 (7th Cir. Nov. 26,

22  2014), *order amended*, 2015 WL 137907, *reh'g en banc denied*, Dkt. 147 (Jan. 12, 2015); *In re TFT-*

23  *LCD (Flat Panel) Antitrust Litig.*, No. C 09-5840 SI, 2010 WL 2610641, at *5 (N.D. Cal. June 28,

24  2010) (the FTAIA's so-called "import exclusion" applies only where the defendant itself imported

25  the price-fixed goods into the United States).

---

[4] Defs.' Mot. for Summ. J. Based Upon Pls.' Failure to Distinguish Between Actionable and Non-Actionable Damages Under the FTAIA at 11-15, Nov. 7, 2014 ("Motion" or "Mot.") (Dkt. 3008).

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

1    Unable to invoke the import exclusion, Plaintiffs are forced to concede that their Category 1

2    damages for indirect purchases are subject to the FTAIA and its domestic effects test.  Opp'n at 19-

3    23.  This concession requires the rejection of all of Plaintiffs' indirect damages claims, because

4    Plaintiffs were required to have segregated their Category 1 purchases that could meet the domestic

5    effects test from those which cannot do so, and then only seek damages for sales that are subject to

6    state and federal antitrust laws under the FTAIA.  Instead, Plaintiffs have lumped all of their

7    Category 1 and Category 2 purchases together and have not provided the jury any way to determine

8    which, if any, of their Category 1 damages could pass muster under the FTAIA's domestic effects

9    test.  This error requires that summary judgment be granted against all of Plaintiffs' indirect

10    purchaser claims, whether by the IPPs or DAPs.[5]

11    **Second**, Plaintiffs' Opposition also fails with respect to the DAPs' so-called "direct"

12    purchases of finished CRT products in the United States.  Among other problems, the DAPs admit

13    that, in calculating the purported overcharge on the CRTs for such purchases, Dr. McClave used

14    worldwide data, without discriminating between any overcharges paid on CRTs sold to third parties

15    purely in foreign transactions, including those that never even entered the United States, from any

16    CRT overcharges that were incurred in transactions in the United States.  The law is clear, however,

17    that foreign-to-foreign transactions are excluded from the application of U.S. antitrust laws unless

18    they meet the FTAIA's domestic effects test.[6]  Dr. McClave, therefore, was required to exclude the

19    portion of any CRT overcharges he estimated from purely overseas transactions, rather than lumping

20    them together with overcharges that would be subject to recovery under the FTAIA.  The DAPs do

21    not dispute that he has not done so and that they have failed to provide the jury with any way to

22    segregate the portion of their overcharge estimates for foreign sales of CRTs, which do not satisfy

23    the FTAIA, from the portion of the overcharge estimates attributed to CRTs that were either

24    imported by Defendants or satisfy the FTAIA domestic effects test.  Summary judgment is thus

25    required against all of the DAPs' "direct" damages claims.

26    _____

    [5] *See, e.g.*, Mot. at 11-15; *Comcast*, 133 S. Ct. at 1426.

27    [6] Mot. at 11-12.

28

1       **Finally**, there is no dispute that ***Plaintiffs—not Defendants—***have the burden of presenting

2   evidence of damages "such that the jury is not left to 'speculation or guesswork.'"  *McGlinchy v.*

3   *Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988).  Defendants are not arguing that Plaintiffs have

4   to prove damages with "mathematical certainty."  Opp'n at 27.  The issue presented by this Motion

5   is that Plaintiffs' experts have done nothing to segregate damages arising from purchases that are

6   subject to federal or state law antitrust laws under the FTAIA from those by unrelated third parties in

7   overseas transactions that are not actionable in this country.  Under such circumstances, *Comcast*

8   and *McGlinchy* require that Plaintiffs' damages studies, which fail to distinguish between actionable

9   and non-actionable theories of recovery, be rejected as a matter of law.

10                            **ARGUMENT**

11   **I.**     **PLAINTIFFS DO NOT DISPUTE THE ONLY FACTS RELEVANT TO**
          **DEFENDANTS' MOTION**

12

13       In responding to a summary judgment motion, Plaintiffs are obligated to "set forth specific

14   facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Plaintiffs have failed to

15   do so.  Indeed, despite the voluminous documentation they submitted, Plaintiffs offer no evidence to

16   dispute the only facts material to Defendants' Motion:



17   •

18

19

20

21

22   •

23

24

25

26   •

27

28

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'          Case No. 07-5944
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND      MDL No. 1917
NON-ACTIONABLE DAMAGES UNDER THE FTAIA



Plaintiffs argue that the alleged conspiracy was global in nature and thus, Plaintiffs' experts were justified in using global sales data for calculating overcharges. But, even where a global conspiracy is alleged, plaintiffs are required to limit their damages to antitrust injuries from purchases that satisfy the FTAIA.[7]

## II. PLAINTIFFS' INDIRECT DAMAGES CLAIMS FAIL TO SEGREGATE PURCHASES WHICH ARE NOT ACTIONABLE UNDER THE FTAIA

Plaintiffs admit that two separate categories of purchases make up their indirect purchaser damages claims: (i) purchases of finished CRT products that came into the United States through an unrelated non-defendant third party,[8] such as a distributor, contract manufacturer, or OEM (Category 1); and (ii) purchases of finished CRT products imported into the United States by Defendants (Category 2). Opp'n at 3. The present Motion does not dispute whether Category 2 purchases are import commerce not subject to the FTAIA.[9] The only question is whether the FTAIA

---

[7] *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 417 F.3d 1267, 1270-71 & n.5 (D.C. Cir. 2005) ("Although the appellants argue that the vitamin market is a single, global market facilitated by market division agreements so that their injuries arose from the higher prices charged by the global conspiracy (rather than from super-competitive prices in one particular market), they still must satisfy the FTAIA's requirement that the U.S. effects of the conduct give rise to their claims."); *In re Rubber Chem. Antitrust Litig.*, 504 F. Supp. 2d 777, 784 (N.D. Cal. 2007) ("Post-*Empagran*, courts vetting allegations of antitrust injury have not permitted the FTAIA to extend jurisdiction over foreign injury independent of domestic effects merely because the same plaintiffs is [sic] also able to allege domestic injury caused by the same anticompetitive conduct.").

[8] Plaintiffs' suggestion that Defendants "speculate in their Motion . . . that certain . . . 'third parties' were involved in the importation of certain CRT Products" is entirely unfounded, given Plaintiffs' experts' admissions that one route for foreign-sold tubes to enter the United States was to be "sold to foreign producers of finished goods, imported into the U.S. as TVs or monitors, and then consumed by American end-purchasers." *See, e.g.*, Netz Report at 72, Apr. 15, 2014; Stewart Reply Decl. Ex. Best Buy Frankel Report ¶ 19, Apr. 15, 2014; Opp'n at 3.

[9] Plaintiffs cannot recover for their Category 2 purchases, however, because their experts utilized overcharge calculations based on transactions that are barred by the FTAIA. *See infra* Sec. III.

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

applies to claims in Category 1.  Because the FTAIA does apply to such claims, Plaintiffs' indirect purchaser damages evidence is legally incompetent, as it does not distinguish between damages arising from those Category 1 sales that are not subject to the application of state antitrust laws under the FTAIA and those sales that are.  Mot. at 11-15.

### A.     The FTAIA Applies to Plaintiffs' State Law Claims

As a threshold matter, Plaintiffs are wrong that the FTAIA does not apply to their state law indirect purchaser claims.[10]  Plaintiffs cite to no federal authority in support of such a position, and their efforts to distinguish *In re Intel Corp. Microprocessor Antitrust Litigation* are unavailing.  476 F. Supp. 2d 452, 457 (D. Del. 2007).  Despite Plaintiffs' claims that the *Intel* decision lacked sufficient analysis, the *Intel* court addressed very similar arguments to those made here.  *Id.* ("[p]laintiffs contend that their state law claims are not limited by any statutory provisions comparable to the FTAIA," and "dispute Intel's assertion on this motion to dismiss that application of these state laws to Intel's foreign conduct would be unconstitutional"; defendants argued that "a contrary approach . . . would run afoul of both the Foreign Commerce Clause and the Supremacy Clause").  In analyzing these constitutional provisions, as well as the Supreme Court's decision in *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 448 (1979), the *Intel* court correctly held that "Congress' intent would be subverted if state antitrust laws were interpreted to reach conduct which the federal law could not."  *Id.* at 457-58.  Further, Plaintiffs ignore the well-reasoned decision in *In re Static Random Access Memory (SRAM) Antitrust Litigation*, in which this court rejected the argument that the FTAIA does not apply to state law claims.  No. 07-md-01819 CW, 2010 WL 5477313, at *4 (N.D. Cal. Dec. 31, 2010) ("*SRAM*").  As held in *SRAM*, "the United States Constitution vests Congress with the express power to 'regulate Commerce with foreign Nations,' U.S. Const. Art. I, § 8, cl. 3," making Plaintiffs' state law claims clearly subject to the FTAIA.  *Id.* (citation omitted).[11]  It would make no sense for Congress to have decided to limit the reach of

---

[10] Opp'n at 23-24; *see* Pls.' Opp'n to Defs.' Mot. for Partial Summ. J. on Indirect Purchaser Claims Based on Foreign Sales at 10-14, Dec. 23, 2014 (Dkt. 3287).

[11] *See also* Defs.' Reply ISO Their Mot. for Partial Summ. J. on Indirect Purchaser Claims Based on Foreign Sales at 1-6, Jan. 23, 2015 ("Foreign Sales Reply").

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'                                   Case No. 07-5944
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND                                       MDL No. 1917
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

1  federal antitrust law claims as a matter of international comity, but to permit the 50 individual states

2  to subvert this federal policy decision, which necessarily covers all U.S. commerce and foreign

3  relations.

4      **B.     Plaintiffs' Purchases of Finished CRT Products That Were Not Imported by**
       **Defendants Are Not Excluded As "Import" Commerce, and Are Therefore**
5      **Subject to the FTAIA**

6          Citing *Hsiung*, Plaintiffs assert that Category 1 finished products that were not imported by

7  Defendants still qualify as import commerce exempt from the FTAIA.  758 F.3d 1074; Opp'n at 18-

8  19.  Plaintiffs' reliance on *Hsiung* is misplaced.  The Ninth Circuit did not hold that sales by a

9  foreign defendant to other foreign entities outside the United States constitute "import commerce" so

10 long as the products are subsequently imported by someone into the United States.  Instead, the

11 *Hsiung* court upheld defendants' convictions based solely on the $600 million in LCD panel sales

12 that defendants sold ***directly into the United States***.  *Hsiung*, 758 F.3d at 1094 ("The evidence that

13 the defendants engaged in import trade was overwhelming and demonstrated that the defendants sold

14 hundreds of millions of dollars of price-fixed panels directly into the United States.  The evidence

15 offered in support of the import trade theory alone was sufficient to convict the defendants of price-

16 fixing in violation of the Sherman Act.").  In finding that such component part sales into the United

17 States were import commerce, the Ninth Circuit recognized that term "means precisely what it says,"

18 and encompasses "transactions between foreign ***defendant*** producers of TFT-LCDs and purchasers

19 located in the United States."  *Id.* at 1090 (emphasis added).

20         Plaintiffs' Category 1 purchases of finished products are entirely distinct from the component

21 sales at issue in *Hsiung*, as the allegedly price-fixed CRT and finished CRT products were not sold

22 by Defendants into the United States, but rather in foreign-to-foreign transactions, as Dr. Netz and

23 Plaintiffs' other experts have admitted.  As the *Hsiung* court held, "[a] transaction between two

24 foreign firms . . . should not . . . come within the reach of our antitrust laws."  *Id.* at 1090.  This is

25 precisely why the Ninth Circuit held that components that were sold wholly within foreign

26 commerce are not import commerce and thus are subject to the FTAIA and its domestic effects test.

27 *Id.* ("Finally, we address the sufficiency of the evidence under the domestic effects exception, which

28

7

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'                                    Case No. 07-5944
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND                                         MDL No. 1917
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

1  was directed at foreign sales of panels that would be incorporated overseas into finished consumer

2  products that would ultimately be sold in the United States.").

3       Plaintiffs' Category 1 purchases from non-Defendants and non-conspirators of finished

4  products including foreign sold CRTs thus do not qualify for the import exclusion, and constitute a

5  distinctly separate theory of liability which must satisfy the FTAIA's domestic effects test.  *See, e.g.*,

6  *In re TFT-LCD*, 2010 WL 2610641, at *4 (the FTAIA's "import commerce exclusion" applies only

7  where the defendant itself imported the price-fixed goods into the United States); *see also Motorola*,

8  2015 WL 137907, at *2 (plaintiff was wrong to argue that panels purchased by its foreign

9  subsidiaries overseas were "import commerce" excluded from the FTAIA); *Turicentro, S.A. v. Am.*

10  *Airlines, Inc.*, 303 F.3d 293, 305 n.13 (3d Cir. 2002) ("[T]he analysis of the 'trade or commerce . . .

11  with foreign nations' prong focuses exclusively on defendants' conduct. . . .").

12       Nor can Plaintiffs claim that this category of indirect purchases satisfies the import exclusion

13  from the FTAIA because Defendants purportedly "targeted imports of finished goods to the U.S. as

14  an express object of their conspiracy."  Opp'n at 18.  The court in *Hsiung* expressly declined to

15  adopt the Third Circuit's dicta in *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d

16  462 (3d Cir. 2011), that the import exclusion could apply to defendants "whose conduct is directed at

17  a U.S. import market, even if the defendants did not engage in importation of products into the

18  United States."  *Hsiung*, 758 F.3d at 1091 ("Targeting is not a legal element for import trade under

19  the Sherman Act . . . ."); *id.* at 1090, n.7 ("We need not determine the outer bounds of import trade

20  by considering whether commerce directed at, but not consummated within, an import market is also

21  outside the scope of the FTAIA's import provisions . . . .").[12]  This makes all of Plaintiffs' cited

22  "evidence" regarding the alleged conspiracy's purported targeting of the U.S. market immaterial to

23  whether the import exclusion to the FTAIA can apply.  *CSR Ltd. v. CIGNA Corp.*, 405 F. Supp. 2d

24  526, 542 (D.N.J. 2005) (holding that even if defendants "targeted the importation" of services to the

25  United States, this fact was irrelevant where plaintiffs brought such services into the United States;

26  ――――――――――――――――――――

27  [12] Defendants' opposition to Plaintiffs' additional arguments regarding the import exclusion are set forth more fully in their Foreign Sales Reply at 6-9.

28

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

1   to hold otherwise would be an "extremely broad and extraordinary view of 'import trade or import

2   commerce'").   And, Plaintiffs have presented no evidence that would support a claim that any

3   alleged targeting of the United States even applied to most of the Category 1 sales at issue.

4           Finally, Plaintiffs have admitted that, if the import exclusion does not apply, the Category 1

5   sales are indeed subject to the FTAIA's domestic effects test.   Which specific portion of such

6   Category 1 sales can meet this test, if any, is not relevant to the present Motion.  *See supra* Sec. I.

7   The key point is that it cannot be genuinely disputed that at least some portion of Plaintiffs'

8   Category 1 sales were made to unrelated third parties overseas and, under governing Ninth Circuit

9   law, could not satisfy the FTAIA's domestic effects test as their impact on U.S. finished product

10  prices would be indirect at best.[13]

11      **C.**     **Plaintiffs' Commingling of Category 1 FTAIA Purchases (Some Unknown**
               **Portion of Which are Non-Actionable) with Category 2 Import Commerce**
12             **Purchases Is Fatal Under *Comcast***

13          Plaintiffs assert that the Supreme Court's decision in *Comcast* has been satisfied because all

14  of their claims "are based on a single, straightforward theory of liability," *i.e.*, horizontal price-

15  fixing.  Opp'n at 24-25.  This position, however, fails on two levels.  First, it runs afoul of the Ninth

16  Circuit's decision in *Hsiung*, in which the court analyzed FTAIA claims under Section 1 separately

17  from non-FTAIA import commerce claims under Section 1.   Second, and most importantly, it

18  ignores the fact that at least some portion of Plaintiffs' Category 1 claims are non-actionable because

19  they cannot meet the domestic effects test.  Plaintiffs' experts have thus commingled damages for

20  actionable and non-actionable liability theories in the same damages model, in direct violation of

21  *Comcast*.

22          In *Hsiung*, the government was pursuing a Section 1 claim based on two alternative theories

23  of liability:  one based on defendants' import commerce, for which the government need only satisfy

24  the elements of the Sherman Act; and one based on defendants' foreign sales, for which the

---

25  [13]  *See* Mot. at 11-15; Defs.' Mot. for Partial Summ. J. on Indirect Purchaser Claims Based on
26  Foreign Sales at 9-12, Nov. 7, 2014 (Dkt. 3006); *Hsiung*, 758 F.3d at 1094; *United States v. LSL
    Biotechs.*, 379 F.3d 672, 680-81 (9th Cir. 2004) (an effect on domestic commerce from overseas
27  conduct is "direct" only if it follows as an "immediate consequence" of defendants' activity).

28

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'                          Case No. 07-5944
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND                              MDL No. 1917
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

1    government had to also satisfy the additional elements of the FTAIA.  *Hsiung*, 758 F.3d at 1092-93.

2    The court rejected defendants' complaint that the jury was improperly instructed on both of the

3    government's "theories," finding that they were alternative theories for satisfying Section 1.  *Id.*

4              Here, Plaintiffs' experts have commingled these two liability theories into one damages

5    model that includes at least some Category 1 purchases that do not satisfy the FTAIA's domestic

6    effects test.  Because there is no way presented for the jury to identify and disaggregate the non-

7    actionable purchases, Plaintiffs' damages models run directly afoul of *Comcast*, which expressly

8    held that antitrust experts cannot rely on damages models that include both actionable and non-

9    actionable claims (in that case, under liability theories which plaintiffs had abandoned).[14]  *Comcast*,

10   133 S. Ct. at 1433 ("any model supporting a 'plaintiff's damages case must be consistent with its

11   liability case, particularly with respect to the alleged anticompetitive effect of the violation'"); *see*

12   *also Rubber Chem.*, 504 F. Supp. 2d at 784 (rejecting plaintiffs' characterization of allegations under

13   the Sherman Act and FTAIA as a "single 'claim' that cannot be split or analyzed for its separate

14   domestic and foreign components" ); *SRAM*, 2010 WL 5477313, at *8 ("If IP Plaintiffs are unable to

15   present sufficient evidence of this nature, and are unable to segregate foreign from domestic

16   transactions, all of their damage claims would fail.").[15]

17             There is no dispute that Plaintiffs' experts have done nothing to distinguish between damages

18   attributable to tubes sold in foreign versus U.S. markets, and are relying upon damages models that

19   lump all finished product purchases together regardless of where the tubes were sold and whether

20   any of such tube sales made overseas can satisfy the FTAIA's domestic effects test.  *See, e.g.*, Netz

21

---

22   [14] Plaintiffs' assertion that they will present only one "simple" theory of liability to the jury is
     incorrect, as the jury will have to be instructed to consider both damages from import sales which do

23   not have to satisfy the FTAIA's direct effects test and damages from overseas sales of tubes which
     are not actionable unless they satisfy that test.  *See, e.g.*, Special Verdict at 3, *In re TFT-LCD (Flat*

24   *Panel) Antitrust Litig.*, Nos. 10-CV-4572, 12-CV-4114, MDL No. 1827 (N.D. Cal. Sept. 3, 2013)
     (Dkt. 8562).

25   [15] Plaintiffs' attempt to distinguish *SRAM* because it was decided when the FTAIA was considered

26   jurisdictional is frivolous.  The effect of the FTAIA, whether jurisdictional or as a substantive
     element of Plaintiffs' claims, is the same, *i.e.*, to bar Plaintiffs' claims based on foreign commerce

27   which do not satisfy the FTAIA's domestic effects test.

28

Tr. 39:5-19, June 27, 2014; McClave Tr. 109:7-21, June 25, 2014; Frankel Tr. 211:23-212:3, July 10, 2014.  Further, none of Plaintiffs' experts have made any attempt to conduct alternative damages analyses in which they segregate and seek damages only from U.S. tube sales and overseas CRT sales that meet the FTAIA's domestic effects test.  Netz Tr. 39:20-24, June 27, 2014; McClave Tr. 112:18-113:5, June 25, 2014; Frankel Tr. 211:23-212:3, July 10, 2014.   As in *Comcast*, this commingling of actionable and non-actionable damages theories leaves Plaintiffs with "no . . . competent evidence from which a jury could fairly estimate damages."  *McGlinchy*, 845 F.2d at 808; *Comcast*, 133 S. Ct. at 1433-34.

Finally, Plaintiffs' suggestion that there is no issue for summary judgment because their experts testified that, if required by the court, they can try to segregate their damages between actionable and non-actionable overseas sales at trial does nothing for them at the summary judgment stage, where promises to do this later do not suffice.  *See, e.g.*, *Montano v. First Light Fed. Credit Union*, 493 B.R. 852, 860 (Bankr. D.N.M. May 21, 2013) ("Plaintiffs had an obligation to come forward with evidence [of damages].  They did not, and *Comcast* does not allow them the luxury of waiting until trial."); *In re Indep. Serv. Orgs. Antitrust Litig.*, 85 F. Supp. 2d 1130, 1153-57 (D. Kan. 2000) (granting summary judgment where plaintiff failed to disaggregate damages prior to trial).

## III.   PLAINTIFFS ERRONEOUSLY ARGUE THAT THE FTAIA HAS NO APPLICATION TO THEIR FEDERAL DIRECT PURCHASER CLAIMS

The DAPs argue that the FTAIA is not implicated by their "direct purchaser" claims because Dr. Frankel calculated these federal antitrust damages based only on sales to Plaintiffs in the United States.[16]  *See* Opp'n at 15-16.  This argument fails because it ignores the undisputed testimony that

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[16] This motion assumes that sales of finished products by defendants or their affiliates in the United States would qualify under the import exclusion to the FTAIA because that issue does not affect this motion, as Plaintiffs still will have improperly commingled actionable and non-actionable sales in their damages calculations.  It is Defendants' position, however, that such sales of finished products do not fall under the FTAIA's import exclusion.  *See* Def. LG Electronics Inc.'s Reply ISO Mot. for Summ. J. on FTAIA Grounds at 3-7, Jan. 23, 2015.



For example, there is no dispute that the FTAIA bars the application of U.S. antitrust law to damages arising from tubes sold by Defendants in foreign-to-foreign CRT transactions *that never even entered the United States*.  H.R. Rep. 97-686, at 9-10 ("[a] transaction between two foreign firms . . . should not . . . come within the reach of our antitrust laws"); *Motorola*, 2015 WL 137907, at *2 ("The panels—57 percent of the total—that never entered the United States neither affected domestic U.S. commerce nor gave rise to a cause of action under the Sherman Act.").

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

███████████████████████████████████████████████████

██████

The Seventh Circuit's decision in *Motorola* is instructive.  There, Motorola's claims were based on purchases of component panels from defendants made by Motorola's foreign affiliates overseas, which the court held were not actionable under the FTAIA.  In rejecting Motorola's argument that the foreign overcharges on these LCD panels were ultimately felt by U.S. manufacturers and thus satisfied the FTAIA's domestic effects test, the court held that because Motorola was not the immediate victim of the price-fixing in the United States, the FTAIA barred its claims.  *Motorola*, 2015 WL 137907, at *4 ("as we said in the *Minn-Chem* case, 'U.S. antitrust laws are not to be used for injury to foreign customers'").  Instead, "if [defendants] were overcharging, they were overcharging other foreign manufacturers—the Motorola subsidiaries," which were "injured in foreign commerce."  *Id.* at *7-8; *see also In re Monosodium Glutamate Antitrust Litig.*, 477 F.3d 535, 539-40 (8th Cir. 2007) ("The domestic effects of the price fixing scheme (increased U.S. prices) were not the direct cause of the appellants' injuries.  Rather, it was the foreign effects of the price-fixing scheme (increased prices abroad).");  *Empagran*, 417 F.3d at 1270-71 & n.5 (defendants' setting of "a single global price" did not satisfy the FTAIA; even under this theory, "it was the foreign effects of price-fixing outside of the United States that directly caused, or 'g[a]ve rise to,' their losses").

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

██████████████████████████████████████████████

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

1 ████████████████████████████████████████████████████

2 ███████████████████████████████████   Because they fail to segregate foreign tube sales that

3 cannot support an actionable Sherman Act claim, Dr. McClave's global overcharge estimates are

4 unusable as a measure of U.S. antitrust damages for even their "direct" purchases in this case.[18]

5 **IV.    DEFENDANTS HAVE PRESENTED THE PROPER DAMAGES STANDARD**

6          As Plaintiffs acknowledge, at summary judgment, "an antitrust plaintiff must come forward

7 with evidence of damages 'such that the jury is not left to speculation or guesswork in determining

8 the award.'"   Opp'n at 27 (quoting *McGlinchy*, 845 F.2d at 808).   Plaintiffs also cite *Story*

9 *Parchment Co. v. Paterson Parchment Paper Co.* for the proposition that "once antitrust injury has

10 been established . . . antitrust plaintiffs may recover damages even where the precise amount of

11 damage cannot be fixed with mathematical certainty."   282 U.S. 555 (1931); Opp'n at 27.

12 Defendants' Motion is consistent with both standards.

13          ***First***, Defendants are not suggesting that Plaintiffs come forward with a precise amount of

14 damages fixed to a mathematical certainty; rather, they are merely asking the Court to apply the

15 standard for summary judgment in this circuit, which requires a plaintiff to present "competent

16 evidence from which a jury could fairly estimate damages." *McGlinchy*, 845 F.2d at 808.  For a

17 damages model to be reliable and not "speculative," Plaintiffs are required to ensure that all of their

18 damages are tied to an actionable claim. *Comcast*, 133 S. Ct. at 1433; *see also* Mot. at 3-4, 15-16.

19 Plaintiffs' failure to segregate such actionable damages is fatal. *See City of Vernon v. S. Cal. Edison*

20 *Co.*, 955 F.2d 1361, 1372 (9th Cir. 1992) (summary judgment granted where damages study "failed

21 to segregate the losses, if any, caused by acts which were not antitrust violations from those that

22 were"); *MCI Commc'ns Corp. v. Am. Tel. and Tel. Co.*, 708 F.2d 1081, 1163 (7th Cir. 1983) (finding

23 plaintiffs' damages model incompetent because "plaintiff assumed in the preparation of its damage

24 study that all twenty-two of AT&T's acts charged were illegal.  In fact, liability has now been

25 established with respect to only seven of the twenty-two counts of alleged monopolization").

26

27 ───────────────────────

[18] █████████████████████████████████████████████████████████████

28

14

1    **Second**, Plaintiffs wrongly suggest that it is Defendants who "argue that the IPPs' expert . . .

2    'would be forced to conduct an individualized analysis to determine the precise tube specifications

3    on a model-by-model basis in order to attempt to trace the CRT in each class member's finished

4    product to a foreign or domestic tube sale.'"  Opp'n at 28. ███████████████████████

5    ████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7    ███████████████████████████████████████  Further, even if the IPPs' damages model

8    was sufficient at the class certification stage without distinguishing non-actionable sales, this court

9    has recognized that summary judgment compels a higher level of scrutiny.  *See In re Ebay Seller

10   Antitrust Litig.*, No. C 07-01882 JF (RS), 2010 WL 760433, at *14 (N.D. Cal. Mar. 4, 2010) ("while

11   [plaintiffs' expert's model] might be sufficient to meet the 'plausible methodology' standard

12   required for class certification, it is too indefinite and speculative to enable Plaintiffs to survive

13   summary judgment"), *aff'd sub nom*, 433 F. App'x 504 (9th Cir. 2011).

14   **Finally**, Plaintiffs blame Defendants' document retention procedures for Plaintiffs' inability

15   to reasonably estimate actionable damages.  To the extent Plaintiffs are missing the requisite data to

16   reasonably estimate actionable damages, the fault and burden of proof lies with them.  Plaintiffs

17   have not alleged any bad faith by Defendants in their document retention procedures or productions,

18   nor do they suggest that, prior to these cases being filed, Defendants were under any obligation to

19   preserve 20-year-old documents that related to an obsolete business.  To the contrary, it is well-

20   established that the duty to preserve evidence arises only when a party reasonably anticipates

21   litigation. *See, e.g.*, *Pension Comm. v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 467 (S.D.N.Y.

22   2010); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003).

23                                **<u>CONCLUSION</u>**

24   For all of the foregoing reasons, and the reasons set forth in Defendants' Motion, Plaintiffs'

25   indirect and direct damages claims both fail to distinguish between actionable and non-actionable

26   damages under the FTAIA and thus must be rejected as a matter of law.

27

28

1   DATED:  January 23, 2015                WINSTON & STRAWN LLP

2                                           By: /s/ Jeffrey L. Kessler
                                            JEFFREY L. KESSLER (pro hac vice)
3                                           Email: JKessler@winston.com
                                            ALDO A. BADINI (SBN 257086)
4                                           Email: ABadini@winston.com
                                            EVA W. COLE (pro hac vice)
5                                           Email: EWCole@winston.com
                                            MOLLY M. DONOVAN
6                                           Email: MMDonovan@winston.com
                                            JENNIFER M. STEWART
7                                           Email: Jstewart@winston.com
                                            **WINSTON & STRAWN LLP**
8                                           200 Park Avenue
                                            New York, NY 10166
9                                           Telephone: (212) 294-6700
                                            Facsimile: (212) 294-4700
10
                                            STEVEN A. REISS (pro hac vice)
11                                          Email: steven.reiss@weil.com
                                            DAVID L. YOHAI (pro hac vice)
12                                          Email: david.yohai@weil.com
                                            ADAM C. HEMLOCK (pro hac vice)
13                                          Email: adam.hemlock@weil.com
                                            **WEIL, GOTSHAL & MANGES LLP**
14                                          767 Fifth Avenue
                                            New York, NY 10153-0119
15                                          Telephone: (212) 310-8000
                                            Facsimile: (212) 310-8007
16
                                            *Attorneys for Defendants Panasonic Corporation (f/k/a*
17                                          *Matsushita Electric Industrial Co., Ltd.), Panasonic*
                                            *Corporation of North America, MT Picture Display*
18                                          *Co., Ltd.*

19                                          **WHITE AND CASE LLP**

20                                          By: /s/ Lucius B. Lau
                                            CHRISTOPHER M. CURRAN (pro hac vice)
21                                          Email: ccurran@whitecase.com
                                            LUCIUS B. LAU (pro hac vice)
22                                          Email: alau@whitecase.com
                                            DANA E. FOSTER (pro hac vice)
23                                          Email: defoster@whitecase.com
                                            **WHITE & CASE LLP**
24                                          701 Thirteenth Street, N.W.
                                            Washington, DC  20005
25                                          Telephone: (202) 626-3600
                                            Facsimile: (202) 639-9355
26
                                            *Attorneys for Defendants Toshiba Corporation,*
27                                          *Toshiba America, Inc., Toshiba America Information*

28

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'                    Case No. 07-5944
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND                        MDL No. 1917
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

1  *Systems, Inc., Toshiba America Consumer Products,*
   *L.L.C., and Toshiba America Electronic Components,*
2  *Inc. (with respect to all of the above-captioned cases*
   *except for Dell Inc., et al. v. Hitachi, Ltd., et al., No.*
3  *13-cv-0271)*

4  BAKER BOTTS LLP

5  By: /s/ *John M. Taladay*
   JOHN M. TALADAY (*pro hac vice*)
6  Email: john.taladay@bakerbotts.com
   JOSEPH OSTOYICH (*pro hac vice*)
7  Email: joseph.ostoyich@bakerbotts.com
   ERIK T. KOONS (*pro hac vice*)
8  Email: erik.koons@bakerbotts.com
   CHARLES M. MALAISE (*pro hac vice*)
9  Email: charles.malaise@bakerbotts.com
   **BAKER BOTTS LLP**
10 1299 Pennsylvania Avenue, N.W.
   Washington, DC 20004-2400
11 Telephone: (202) 639-7700
   Facsimile: (202) 639-7890
12
   JON V. SWENSON (SBN 233054)
13 Email: jon.swenson@bakerbotts.com
   **BAKER BOTTS LLP**
14 1001 Page Mill Road
   Building One, Suite 200
15 Palo Alto, CA 94304
   Telephone: (650) 739-7500
16 Facsimile: (650) 739-7699

17 *Attorneys for Defendants Koninklijke Philips N.V. and*
   *Philips Electronics North America Corporation*
18
19 KIRKLAND & ELLIS LLP

20 By: /s/ *Eliot A. Adelson*
   ELIOT A. ADELSON (SBN 205284)
21 Email: eadelson@kirkland.com
   **KIRKLAND & ELLIS LLP**
22 555 California Street, 27th Floor
   San Francisco, CA 94104
23 Telephone: (415) 439-1413
   Facsimile: (415) 439-1500
24
   JAMES H. MUTCHNIK, P.C. (*pro hac vice*)
25 KATE WHEATON (*pro hac vice*)
   **KIRKLAND & ELLIS LLP**
26 300 North LaSalle
   Chicago, IL 60654
27 Tel: (312) 862-2000
   Facsimile: (312) 862-2200
28

17

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

1

2   *Attorneys for Defendants Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display Inc.), Hitachi Asia, Ltd., Hitachi America, Ltd., and Hitachi Electronic Devices (USA), Inc.*

3

4   SHEPPARD MULLIN RICHTER & HAMPTON

5   By: /s/ Gary L. Halling
GARY L. HALLING (SBN 66087)

6   Email: ghalling@sheppardmullin.com
JAMES L. MCGINNIS (SBN 95788)

7   Email: jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH, (SBN 203524)

8   Email: mscarborough@sheppardmullin.com
**SHEPPARD MULLIN RICHTER & HAMPTON**

9   Four Embarcadero Center, 17th Floor
San Francisco, CA 94111

10  Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947

11

12  *Attorneys for Defendants Samsung SDI America, Inc.; Samsung SDI Co., Ltd.; Samsung SDI (Malaysia) SDN. BHD.; Samsung SDI Mexico S.A. DE C.V.; Samsung*

13  *SDI Brasil Ltda.; Shenzen Samsung SDI Co., Ltd. and Tianjin Samsung SDI Co., Ltd.*

14

15  GIBSON, DUNN & CRUTCHER LLP

16  By: /s/ Rachel S. Brass
JOEL S. SANDERS (Cal. Bar. No. 107234)

17  Email: jsanders@gibsondunn.com
RACHEL S. BRASS (Cal. Bar. No. 219301)

18  Email: rbrass@gibsondunn.com
AUSTIN V. SCHWING (Cal. Bar. No. 211696)

19  Email: aschwing@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**

20  555 Mission Street, Suite 3000

21  San Francisco, CA 94105
Telephone:     (415) 393-8200

22  Facsimile:     (415) 393-8306

23  *Attorneys for Defendants Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.*

24  *as to Direct Action Plaintiffs Best Buy entities, Target, Sears, Interbond, Office Depot, CompuCom, P.C.*

25  *Richards, MARTA, ABC Appliance, Schultze Agency Services, and ViewSonic only*

26

27

28

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'          Case No. 07-5944
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND               MDL No. 1917
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

1

FAEGRE BAKER DANIELS LLP

2

By: /s/ *Kathy L. Osborn*_____

3

KATHY L. OSBORN (*pro hac vice*)
Email: kathy.osborn@FaegreBD.com

4

RYAN M. HURLEY (*pro hac vice*)
Email: ryan.hurley@FaegreBD.com

5

**FAEGRE BAKER DANIELS LLP**
300 N. Meridian Street, Suite 2700

6

Indianapolis, IN 46204
Telephone: (317) 237-0300

7

Facsimile: (317) 237-1000

8

JEFFREY S. ROBERTS (*pro hac vice*)

9

Email: jeff.roberts@FaegreBD.com
**FAEGRE BAKER DANIELS LLP**

10

3200 Wells Fargo Center

11

1700 Lincoln Street
Denver, CO 80203

12

Telephone: (303) 607-3500
Facsimile: (303) 607-3600

13

14

STEPHEN M. JUDGE (*pro hac vice*)
Email: steve.judge@FaegreBd.com

15

**FAEGRE BAKER DANIELS LLP**
202 S. Michigan Street, Suite 1400

16

South Bend, IN 46601
Telephone: (574) 234-4149

17

Facsimile: (574) 239-1900

18

*Attorneys for Defendants Thomson SA and Thomson*

19

*Consumer Electronics, Inc.*

20

JENNER & BLOCK LLP

21

By: /s/ *Terrence J. Truax*_____

22

Terrence J. Truax (*pro hac vice*)
Email: ttruax@jenner.com

23

Michael T. Brody (*pro hac vice*)
Email: mbrody@jenner.com

24

**JENNER & BLOCK LLP**
353 North Clark Street

25

Chicago, IL 60654-3456

26

Telephone: (312) 222-9350
Facsimile: (312) 527-0484

27

28

19

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

BRENT CASLIN (Cal. Bar. No. 198682)
Email: bcaslin@jenner.com
**JENNER & BLOCK LLP**
633 West Fifth Street, Suite 3600
Los Angeles, CA 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

*Attorneys for Defendants Mitsubishi Electric*
*Corporation, Mitsubishi Electric US, Inc. and,*
*Mitsubishi Electric Visual Solutions America, Inc.*

SQUIRE PATTON BOGGS (US) LLP

By: /s/ *Nathan Lane, III*
MARK C. DOSKER
Email: mark.dosker@squirepb.com
NATHAN LANE, III
Email: nathan.lane@squirepb.com
275 Battery Street, Suite 2600
San Francisco, CA  94111
Telephone: (415) 954-0200
Facsimile: (415) 393-9887

DONALD A. WALL (*pro hac vice*)
Email: donald.wall@squirepb.com
**SQUIRE PATTON BOGGS (US) LLP**
1 East Washington Street, Suite 2700
Phoenix, AZ 85004
Telephone: (602) 528-4000
Facsimile: (602) 253-8129

*Attorneys for Defendant Technologies Displays*
*Americas LLC with respect to all cases except Office*
*Depot, Inc. v. Technicolor SA, et al. and Sears,*
*Roebuck and Co., et al. v. Technicolor SA, et al.*

CURTIS, MALLET-PREVOST, COLT & MOSLE
LLP

By: /s/ *Jeffrey I. Zuckerman*
Jeffrey I. Zuckerman (*pro hac vice*)
Ellen Tobin (*pro hac vice*)
101 Park Avenue
New York, NY 10178
Telephone: (212) 696-6000
Facsimile: (212) 697-1559
Email: jzuckerman@curtis.com
etobin@curtis.com

20

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917

Arthur Gaus (SBN 289560)
**DILLINGHAM & MURPHY, LLP**
601 California Street, Suite 1900
San Francisco, CA 94108
Telephone: (415) 397-2700
Facsimile: (415) 397-3300
Email: asg@dillinghammurphy.com

*Attorneys for Defendant Technologies Displays Americas LLC with respect to Office Depot, Inc. v. Technicolor SA, et al. and Sears, Roebuck and Co., et al. v. Technicolor SA, et al.*

Pursuant to Local Rule 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.

DEFS.' REPLY MEM. I/S/O THEIR MSJ BASED UPON PLS.'
FAILURE TO DISTINGUISH BETWEEN ACTIONABLE AND
NON-ACTIONABLE DAMAGES UNDER THE FTAIA

Case No. 07-5944
MDL No. 1917