JEROME C. ROTH (State Bar No. 159483)
Jerome.roth@mto.com
HOJOON HWANG (State Bar No. 184950)
hojoon.hwang@mto.com
MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

WILLIAM D. TEMKO (State Bar No. 98858)
william.temko@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

*Attorneys for Defendants LG Electronics, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-SC <br><br> MDL No. 1917 |
| This Document Relates to: <br><br> *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, Individual Case No. 11-cv-05513 <br><br> *Alfred H. Siegel, As Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd, et al.*, Individual Case No. 11-cv-05502 <br><br> *CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, Individual Case No. 11-cv-06396 <br><br> *Costco Wholesale Corporation v. Hitachi, Ltd., et al.*, Individual Case No. 11-cv-06397 <br><br> *Dell Inc. et al. v. Hitachi, Ltd.*, Individual Case No. 13-cv-02171 <br><br> *Electrograph Systems, Inc. et al. v. Hitachi, Ltd.*, Individual Case No. 11-cv-01656 <br><br> *Interbond Corp. of America d/b/a BrandsMart USA v. Hitachi, Ltd.*, Individual Case No. 11-06275 | **DEFENDANT LG ELECTRONICS, INC.'S REPLY TO PLAINTIFFS' OPPOSITION [ECF NO. 3272] TO  LG ELECTRONICS, INC.'S MOTION FOR SUMMARY JUDGMENT ON FTAIA GROUNDS [ECF NO. 3032]** <br><br> Judge:    Hon. Samuel Conti <br> Date:     February 6, 2015 <br> Time:    10:00 AM <br> Crtrm.:   1, 17th Floor |

*Office Depot, Inc. v. Hitachi, Ltd.*, Individual Case No. 11-cv-06276

*P.C. Richard & Son Long Island Corp. et al. v. Hitachi, Ltd.*, Individual Case No. 12-cv-02648

*Sears, Roebuck and Co. and Kmart Corp v. Chunghwa Picture Tubes, Ltd., et al.*, Individual Case No. 11-cv-05514

*Target Corp. v. Chunghwa Picture Tubes, Ltd., et. al.*, Individual Case No. 11-cv-05514

*Schultze Agency Services, LLC on behalf of Tweeter OPCO, LLC, et al., v. Technicolor SA, et al.*, Individual Case No. 13-cv-05668

*Tech Data Corp., et al. v. Hitachi, LTD., et al.*, Individual Case No. 13-cv-00151

*ViewSonic Corp. v. Chunghwa Picture Tubes, Ltd.*, Individual Case No. 14-02510

## I. INTRODUCTION

The Direct Action Plaintiffs' ("Plaintiffs") opposition confirms that the facts material to the motion are undisputed. Plaintiffs do not contest that their experts have not put forth estimates of damages separately for the purchases for which they must demonstrate compliance with the requirements of the Foreign Trade Antitrust Improvement Act ("FTAIA"), 15 U.S.C. § 6a, and for purchases that are not subject to the statute's requirements. Nor do Plaintiffs dispute that their experts have not separately examined each purchase that constitutes a distinct "claim" within the meaning of the FTAIA to determine whether that transaction was affected by the alleged conspiracy, instead opining solely that the purchases *in the aggregate and on average* were subject to an anticompetitive overcharge that was passed through.

Conceding these material facts, Plaintiffs seek to avoid summary judgment based on erroneous assertions of law. First, Plaintiffs contend that purchases of finished products containing CRTs from a subsidiary or an affiliate of a conspirator constitute "import commerce" and are thus exempt from the requirements of the FTAIA. But Plaintiffs' attempt to expand the import commerce exclusion to encompass importation of *non-price-fixed goods by non-conspirators* has no support in the case law or the text of the statute. On the contrary, Plaintiffs' own authorities confirm that the import commerce exclusion applies only to the sale of the price-fixed goods into the U.S. by the members of the alleged conspiracy.

Because Plaintiffs' purchases do not qualify as "import commerce," Plaintiffs must demonstrate both that (1) the alleged CRT conspiracy had a "direct, substantial and reasonably foreseeable effect" on U.S. commerce and (2) that such effect "g[a]ve[] rise to" their claims. 15 U.S.C. § 6a. Plaintiffs have failed to do either. With respect to purchases of TVs and monitors that contained CRTs sold in foreign commerce, Plaintiffs cannot demonstrate a "direct" effect under the controlling standard in the Ninth Circuit, which requires that an effect on the domestic TV and monitor markets follow as an immediate consequence of the alleged overcharge on foreign-produced and foreign-sold CRTs without being subject to uncertain intervening developments. Any effect on TV or monitor prices in the U.S. is not direct because whether any overcharge on CRTs affected the price of TVs or monitors sold in domestic commerce depends on

1  a quintessentially uncertain development – the competitive decision of the TV or monitor
2  manufacturer as to whether and to what extent to reflect the cost increase on a CRT in the
3  downstream prices of TVs or monitors sold in the U.S..
4       Moreover, even assuming that Plaintiffs can show a "direct" effect on TV or monitor
5  commerce in the U.S., Plaintiffs have not shown, and lack any means to show, that such effect
6  gave rise to each of Plaintiffs' claims.  Plaintiffs do not and cannot deny that, under settled law,
7  each purchase of an allegedly price-fixed product constitutes a distinct claim, or that the FTAIA
8  requires proof that the claim arises from the domestic effects of the conspiracy.  The logical
9  consequence of these uncontroverted legal propositions, when combined, is that the domestic
10 effects test must be satisfied with respect to each claim, i.e., with respect to each purchase for
11 which Plaintiffs claim damages.  While Plaintiffs protest that this requirement has not been
12 applied in any published case, Plaintiffs cite no decision that even confronted, much less rejected,
13 this interpretation and offer no persuasive justification for rejecting it.  Because it is undisputed
14 that Plaintiffs have no evidence sufficient to demonstrate compliance with the FTAIA, summary
15 judgment must be granted.

**II.    ARGUMENT**

    **A.    Import Commerce Exclusion Does Not Encompass Sale Of Finished Products Into The United States By An Affiliate Or Subsidiary Of Alleged Conspirators.**

19      Plaintiffs first argue that the FTAIA is not implicated at all with respect to their so-called
20 "direct" purchase claims because the claims are based on purchases of finished products from
21 subsidiaries and affiliates of defendants and other conspirators and therefore constitute "import
22 commerce."  This argument seeks to expand the definition of "import commerce" in two
23 unwarranted directions and must be rejected.
24      First, Ninth Circuit case law does not support Plaintiffs' attempt to apply the exclusion to
25 importation of goods by non-conspirators.  Plaintiffs' assertion that the Ninth Circuit "held"

(Opp'n[1] at 14) that the import commerce exclusion applies to such transactions in its decision in *United States v. Hsiung*, 758 F.3d 1074 (9th Cir. 2014) is a brazen misstatement of the court's holding.  In *Hsiung*, the Ninth Circuit found that the indictment and conviction of the defendants did not violate the FTAIA because the government adequately alleged and proved that *defendants* sold the price-fixed TFT-LCD panels to customers in the United States.  758 F.3d at 1091-93.  The court recited the numerous allegations in the indictment that "***AUO and AUOA*** 'engaged in the business of producing and *selling TFT-LCDs to customers in the United States*'" and "fix[ed] the prices for panels that ***AUO and AUOA*** sold to manufacturers 'in the United States and elsewhere.'"  *Id.* at 1091 (emphases added).  The court further noted testimony "establish[ing] that *AUO* imported over one million price-fixed panels per month into the United States."  *Id.*  As the *Costco* opinion cited by Plaintiffs put it, "[t]he *Hsiung* court, which considered AU Optronics's appeal of its criminal antitrust conviction for the price-fixing conspiracy at issue in this case, found that AU Optronics's sales of *panels* directly to various finished product manufacturers in the United States were import trade."  *Costco Wholesale Corp. v. AU Optronics Corp.*, No. 13 Civ. 1207 (RAJ), 2014 WL 4718358, at *3 (W.D. Wash. Sept. 22, 2014) (citation omitted) (emphasis in original).  While the *Hsiung* court rejected AUO's protestation that it was not an "importer," that rejection was based on explicit allegations and record evidence that AUO in fact imported price-fixed panels into the United States, not on any legal conclusion that imports by affiliates or third parties qualified as import commerce for purposes of the FTAIA.  Thus, *Hsuing* was a straight-forward application of the import commerce exclusion to a situation where the defendant conspirator itself imported the price-fixed product into the United States.  *See also Minn–Chem, Inc. v. Agrium, Inc.,* 683 F.3d 845, 855 (7th Cir. 2012) ("transactions that are directly between the [U.S.] plaintiff purchasers and the defendant cartel members *are* the import commerce of the United States . . . .").

---

[1] **"Opp'n"** refers to Opposition to Defendant LG Electronics, Inc.'s Motion for Partial Summary Judgment on FTAIA Grounds, Dec. 23, 2014, ECF No. 3272-3.

In *Hsiung*, the Ninth Circuit acknowledged the more expansive reading of the import commerce exclusion in Third Circuit case law and expressly declined to adopt that view. *See Hsiung,* 758 F.3d at 1090 n.7 (discussing *Animal Science Prods. v. China Minmetals Corp.*, 654 F.3d 462 (3d Cir. 2011)). All of the district court cases within the Ninth Circuit cited by Plaintiffs also involved the importation of products by a conspirator. Thus, in Judge Illston's rulings in the *LCD* case, it was "undisputed that Defendants shipped LCD panels to Nokia in the United States." *In re TFT-LCD*, MDL No. 1827, 2012 WL 3763616, at *1 (N.D. Cal. Aug. 29, 2012). Likewise, in *Costco Wholesale Corp. v. AU Optronics Corp.*, the court held that the import commerce exclusion applied "*provided* [that] the price-fixed product ultimately moved *from a member of the conspiracy to a United States customer*." 2014 WL 4718358, at *4 (emphasis added)[2].

The fact that Plaintiffs claim to have purchased the products from defendants' affiliates or subsidiaries, as opposed to an unrelated seller, has no bearing on the result. Plaintiffs argue that this Court's prior ruling on indirect purchaser standing under the ownership or control exception somehow supports exempting these purchases from the requirements of the FTAIA. *See* Opp'n at 15. But nothing in the FTAIA or its legislative history suggests that its scope is coextensive with or even affected by the *Illinois Brick* doctrine or exceptions to that doctrine. The FTAIA and *Illinois Brick* address entirely distinct concerns and impose distinct requirements on antitrust plaintiffs. There is no indication that Congress intended exceptions to the *Illinois Brick* doctrine to operate also as exceptions to the FTAIA, and such judicially-created exceptions to a judicially-created limitation on standing cannot alter the scope of a statute enacted by Congress that does not reference them in any way.

---

[2] Plaintiffs' suggestion that the *Costco* court held that sales to U.S. customers by affiliated non-conspirators falls within the import commerce exclusion (Opp'n at 17) is refuted by the very passage Plaintiffs cite, which states that "[n]o one suggests any reason that Defendants should be able to take shelter in the FTAIA by the simple expedient of having *a conspirator* incorporate the price-fixed panels into finished products for sale in the United States." *Id.* (emphasis added). There and elsewhere, the *Costco* court referred expressly to a *conspirator's* sale of products into the United States. *See Costco,* 2014 WL 4718358, at *3 (suggesting that import commerce includes transactions where "one conspirator manufactured components then shipped them in foreign commerce *to another conspirator* who assembled them into a finished product for import into the United States").

1     Nor is there merit to Plaintiffs' suggestion that legal distinctions between corporations and
2 their subsidiaries should be disregarded for FTAIA purposes based on the doctrine of *Copperweld*
3 *Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).  Opp'n at 17 n.23.  While *Copperweld*
4 immunizes agreements among corporate subsidiaries from Section 1 scrutiny, the converse is not
5 true – corporations are not liable for the antitrust violations of their subsidiaries or vice versa
6 unless they directly participate in the wrongdoing or are alter egos, neither of which has been
7 alleged, much less proven, in this case.  See *H.J., Inc. v. Int'l Tel. & Tel. Corp.*, 867 F.2d 1531,
8 1549 (8th Cir. 1989); *see also Drinkwine v. Federated Publ'ns, Inc.*, 780 F.2d 735, 741 (9th Cir.
9 1985).  Indeed, the Seventh Circuit has recently stressed that "American law does not collapse
10 parents and subsidiaries (and sister corporations)" for purposes of the FTAIA.  *Motorola Mobility*
11 *LLC v. AU Optronics Corp.*, --- F.3d ----, 2015 WL 137907, at *4 (7th Cir. Nov. 26, 2014).

12     Case law likewise fails to support Plaintiffs' attempt to expand the import commerce
13 exclusion to import of finished products that were *not price-fixed*.  In *LCD*, as in *Hsuing*, the
14 products shipped to the United States were the price-fixed panels.  Similarly, the out-of-circuit
15 authorities on which Plaintiffs rely also involved importation of the price-fixed products, not other
16 products merely incorporating them as components.  See *Animal Science Prods.*, 654 F.3d 462
17 (price-fixed magnesite imported); *In re Vitamin C Antitrust Litig.,* 904 F. Supp. 2d 310 (E.D.N.Y.
18 2012) (price-fixed vitamins imported).  Moreover, although the *Costco* court suggested
19 willingness to extend the exclusion to sales of finished products that were not price-fixed, it only
20 did so with respect to a specific circumstance "where the panels in those televisions came from
21 conspirators and the finished products were returned to a conspirator for sale to" the plaintiff
22 pursuant to an ODM relationship.   *Costco*, 2014 WL 4718358,  at * 3.

23     To the extent that the *Costco* decision could be read more broadly, this Court should not
24 follow it because this proposed expansion is not consistent with the plain language and the
25 structure of the FTAIA.  First, the FTAIA differentiates conduct involving import commerce from
26 conduct having a direct, substantial and reasonably foreseeable effect *on* import commerce.  "To
27 give the latter provision meaning, the former must be given a relatively strict construction."
28 *Carpet Group Int'l v. Oriental Rug Importers Ass'n*, *Inc.,* 227 F.3d 62, 72 (3d Cir. 2000),

5     3:07-cv-05944-SC; MDL 1917

*abrogated on another ground by Animal Science Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462 (3d Cir. 2011).   To sweep the sale of downstream products by entities outside the conspiracy within the import commerce exclusion would conflate the distinct inquiries mandated by the statute.

With respect to products first sold in foreign commerce, the "conduct" in question – price fixing of products sold in foreign commerce – does not "involve" import commerce.  Subsequent events that result in downstream products containing the price-fixed good entering the U.S. may be said to have an "effect" on U.S. commerce.  The FTAIA elsewhere accounts for circumstances in which foreign conduct has an effect on import commerce (and domestic commerce), and it would be contrary to the structure of the statute to stretch the concept of "conduct involving import commerce" to include "conduct having an effect on import commerce."  That is precisely why the Third Circuit noted in *Carpet Group* the need to confine the import commerce exclusion to "a relatively strict construction."  *Carpet Group*, 227 F.3d at 72.

Moreover, any reasonable interpretation of the phrase "conduct involving . . . import commerce" must be grounded in the "conduct" that is alleged to be the antitrust violation.  Because the FTAIA limits the application of the Sherman Act to certain types of conduct, its parameters must logically be defined by the conduct to which the Sherman Act *would otherwise apply*.  The FTAIA provides that the Sherman Act "shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless . . . *such conduct* has a direct, substantial, and reasonably foreseeable effect . . . on trade or commerce which is not trade or commerce with foreign nations, . . . and *such effect* gives rise to a claim under the provisions of [the Sherman Act]."  15 U.S.C. § 6(a) (emphases added).

Thus, the FTAIA effectively excludes from the Sherman Act's reach conduct involving foreign commerce unless *that same conduct* (1) involves import commerce or (2) meets the domestic effects exception.  In other words, the allegedly anticompetitive conduct that a plaintiff asserts caused his injury must be the same conduct of the defendant that involves import commerce or that leads to a domestic effect.   Here, the conduct alleged is the price-fixing of CRTs, and Plaintiffs have expressly disclaimed any contention that the conduct at issue involved

1  price-fixing of any finished product.  Thus, it would make no sense to hold that the import
2  commerce exclusion encompasses the importation of non-price-fixed finished products when *that*
3  conduct is *not* the subject of the Sherman Act claim – FTAIA or no FTAIA.

      **B.**      **Plaintiffs Cannot Show A "Direct" Effect On TV Or Monitor Commerce In The U.S. When The CRT Was First Sold And Incorporated Into Finished Products Outside The U.S.**

6        The Ninth Circuit's controlling precedent, *United States v. LSL Biotechnologies*, 379 F.3d
7  672 (9th Cir. 2004) requires that, in order to satisfy the "direct" element, the effect on U.S. or
8  import commerce must follow as the "immediate consequence" of the alleged conduct without
9  being subject to "uncertain intervening developments." *Id.* at 680-81.  Plaintiffs' claims cannot, as
10 a matter of law, satisfy this standard.  Their claims are based on purchases of TVs and monitors,
11 whose prices were set competitively, that incorporate allegedly price-fixed CRTs.  In the case of
12 imported TVs and monitors, the effect of the CRT price fixing is felt on U.S. TV and monitor
13 markets only to the extent that the foreign TV or monitor manufacturers pass on the CRT
14 overcharge in the prices they charge for the TVs or the monitors.   Because the decision whether to
15 pass on an overcharge necessarily involves myriad economic and competitive considerations,
16 including the bargaining power and skills of the customer, pass on simply does not follow as an
17 "immediate consequence" of a CRT overcharge and is undoubtedly subject to "uncertain
18 intervening developments."

19       The Second Circuit's recent decision in *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co.*,
20 753 F.3d 395 (2d Cir. 2014) is particularly instructive and confirms that the *LSL Biotech* standard
21 of directness precludes Plaintiffs' claims based on the purchase of imported TVs and monitors.  In
22 *Lotes*, the plaintiff alleged that the defendant sought to restrain competition among manufacturers
23 of  USB connectors in China, and that the effect of this conduct – namely, increased prices for
24 USB connectors manufactured in China – "will 'inevitably' be passed on through each stage in the
25 production process to consumers in the United States" so as to create a direct, substantial and
26 reasonably foreseeable effect on U.S. commerce.  *Id.* at 402.  The district court applied *LSL*
27 *Biotech*'s interpretation of "direct" effects and found that any effect on U.S. commerce was
28 indirect because "'a whole host of factors other than the price of USB 3.0 connectors influence the

7                                3:07-cv-05944-SC; MDL 1917
LGE'S REPLY TO PLS' OPP'N [ECF NO. 3272] TO
LGE'S MOT. FOR SUMM. J. ON FTAIA GROUNDS [ECF NO. 3032]

price of domestic computer products.'" *Id.* at 409. On appeal, the Second Circuit found that the district court erred in applying the *LSL Biotech* standard, rather than the more lenient and flexible standard articulated by the Seventh Circuit in *Minn-Chem*. The court stated:

> [The Ninth Circuit's] "immediate consequence" standard focuses narrowly on a single factor – the spatial and temporal separation between the defendant's conduct and the relevant effect. Herein lies the error of the decision below, which placed near-dispositiery weight on the fact that USB 3.0 connectors are manufactured and assembled into finished computer products "*in China*" before being sold in the United States.

*Id.* at 412. Tellingly, the Second Circuit did not suggest in any way that the district court misapplied the standard of "direct[ness]" as articulated by the Ninth Circuit in *LSL Biotech*. On the contrary, the Second Circuit rejected the *LSL Biotech* standard precisely because it compelled the result reached by the district court, which the Second Circuit believed was erroneous.

This Court is, of course, bound by the Ninth Circuit's decision in *LSL Biotech*. As in *Lotes*, the effect of an overcharge on foreign-produced and foreign-sold CRT on the price of the TV or monitor Plaintiff purchased is uncertain and indirect. A "whole host of factors" influence whether and the extent to which that overcharge would or would not be passed on, including the TV/monitor manufacturers' competitive standing – such as its cost structure and brand value – as well as the bargaining power and skills of the particular customers who negotiate the purchase of the TVs or monitors. In these circumstances, the effect on U.S. TV or monitor markets cannot, as a matter of law, be deemed immediate or certain.[3]

---

[3] The Seventh Circuit in *Motorola Mobility* assumed without deciding that the effect of a component price-fixing conspiracy on U.S. finished product (cellphone) market was sufficiently "direct" when there was but a single "layer" of intermediate purchaser, namely, the cellphone manufacturer subsidiary of Motorola. *Motorola Mobility*, 2015 WL 137907, at *3. That discussion in no way supports finding a direct effect in this case. Not only was the decision applying the Seventh Circuit standard, which is less strict than the *LSL Biotech* standard, the single "layer" in *Motorola Mobility* was comprised of an intra-corporate transaction between subsidiaries and the parent company. Here, by contrast, TV and monitor manufacturers had to negotiate with some of the largest retailers in the U.S. with enormous bargaining power.

Plaintiffs' claims may include those based on domestic commerce or products incorporating CRTs that were imported by a conspirator that would be exempt from the requirements of the FTAIA.  But it is not disputed that their claims are also based on a substantial number of imported TVs and monitor purchases to which the "direct" effect requirement applies.  Because Plaintiffs have failed to present any evidence segregating damages based on the latter from the former, Plaintiffs have failed to adduce sufficient evidence of damages based on claims that meet the requirements of the FTAIA or are exempt from them.  As a result, summary judgment must be granted as to all of their damage claims.

### C. Plaintiffs Have Failed To Demonstrate That Their Claims Arise From Domestic Effects Of The Alleged Conspiracy

As explained in LGE's motion, the requirement that Plaintiffs prove that their claims arise from "direct, substantial and reasonably foreseeable effect" on U.S. or import commerce applies to each of their purchases for which damages are sought because each purchase constitutes a distinct "claim" within the meaning of the FTAIA.  *See* Mot. at 5.[4]  While Plaintiffs assert that LGE's position is unprecedented and "simply not the law" (Opp'n at 32), Plaintiffs concede each of the predicates that lead to that conclusion.  Plaintiffs acknowledge their burden to prove a "sufficient proximate causal nexus (between the domestic effect and the injury that plaintiff suffered)." Opp'n at 32.  Nor do they dispute the well-settled law that each purchase of a price-fixed product constitutes a distinct claim or cause of action.  *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189-90 (1997) ("in the case of . . . a price-fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years . . . each sale to the plaintiff" represents "separate accrual" of a claim for which plaintiff may recover.).  The requirement of proof of causation applies to each "claim" under the plain language of the FTAIA.  Given that each purchase is a distinct claim, it follows that the proof of proximate causation must be made with respect to each transaction.

In their opposition, Plaintiffs do not dispute that their damages analyses were conducted only at the aggregate level to determine an average overcharge across all purchases.  Furthermore,

---

[4] **"Mot."** refers to Defendant LG Electronics, Inc.'s Motion for Partial Summary Judgment on FTAIA Grounds, Nov. 7, 2014, ECF No. 3032.

1 Plaintiffs do not even attempt to argue that the aggregate analysis of their experts establishes the
2 presence of *some* amount of overcharge that was passed through to the price of the finished
3 products they purchased in *every* transaction. To the contrary, one damage study even finds
4 negative overcharges for particular products during several quarters of the damages period. *See*
5 Mot. at 7.

6 The closest thing to a substantive response Plaintiffs offer is an argument that damages
7 need not be established with precision in an antitrust case. *See* Opp'n at 33, citing *Story*
8 *Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931). But the requirements of the
9 FTAIA have nothing to do with the standard for proving damages. *Story Parchment* and its
10 progeny provide some leeway to an antitrust plaintiff in proving damages with precision on the
11 basis that the defendants' own wrongful act made it difficult to figure out the "but for" world, such
12 as the prices that would have prevailed in a competitive market unaffected by the violation. But
13 the FTAIA imposes substantive requirements that a plaintiff must establish before *any* liability or
14 damages can attach, and no court has held or suggested that a similar rationale applies to lower the
15 burden of proof on antitrust plaintiffs for demonstrating compliance with the FTAIA.

16 In short, the undisputed facts show that Plaintiffs have no sufficient evidence to
17 demonstrate that their claims arise from the domestic effects of defendants' alleged conduct, and
18 summary judgment must be granted.

19 **III.   CONCLUSION**

20 For the foregoing reasons, the Court should grant LGE's motion for summary
21 judgment based on Plaintiffs' failure to prove that their claims satisfy the requirements of the
22 FTAIA.

23
24
25
26
27
28

| | | |
|---|---|---|
| 1 | DATED:  January 23, 2015 | MUNGER, TOLLES & OLSON LLP |
| 2 | | JEROME C. ROTH |
| | | HOJOON HWANG |
| 3 | | WILLIAM D. TEMKO |
| | | MIRIAM KIM |
| 4 | | |

By: _____/s/ Hojoon Hwang_____
      HOJOON HWANG
*Attorneys for Defendants LG Electronics, Inc.*