1   JEROME C. ROTH (State Bar No. 159483)
    jerome.roth@mto.com
2   HOJOON HWANG (State Bar No. 184950)
    hojoon.hwang@mto.com
3   MIRIAM KIM (State Bar No. 238230)
    miriam.kim@mto.com
4   MUNGER, TOLLES & OLSON LLP
    560 Mission Street
5   Twenty-Seventh Floor
    San Francisco, California 94105-2907
6   Telephone:    (415) 512-4000
    Facsimile:    (415) 512-4077
7
    WILLIAM D. TEMKO (State Bar No. 98858)
8   william.temko@mto.com
    MUNGER, TOLLES & OLSON LLP
9   355 S. Grand Avenue
    Thirty-Fifth Floor
10  Los Angeles, California 90071-1560
    Telephone:    (213) 683-9100
11  Facsimile:    (213) 687-3702

12  *Attorneys for Defendant LG Electronics, Inc.*

13                  UNITED STATES DISTRICT COURT

14      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

15

16

17  IN RE: CATHODE RAY TUBE (CRT)        Master File No. 3:07-cv-05944-SC
    ANTITRUST LITIGATION
                                         MDL No. 1917
18
    This Document Related to:           **DEFENDANT LG ELECTRONICS, INC.'S
19                                       REPLY IN SUPPORT OF MOTION FOR
    DIRECT PURCHASER ACTIONS             PARTIAL SUMMARY JUDGMENT ON
20                                       WITHDRAWAL GROUNDS
                                         - Redacted**
21
                                        **[Supplemental Declaration of Cathleen H.
22                                       Hartge and Supplemental Declaration of
                                         Duk Chul Ryu filed concurrently herewith]**
23
                                        Judge:   Honorable Samuel Conti
24                                      Date:    February 6, 2015
                                        Time:    10:00am
25                                      Crtrm.:  1, 17th Floor

26

27

28
    25588714.1                          -i-                  3:07-MD-05944-SC
    LGE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON WITHDRAWAL
    GROUNDS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.      LGE Withdrew from the Alleged Conspiracy When It Publicly Exited the CRT
        Industry and Became Only a Purchaser of CRTs ................................................... 2

        A.      LGE, as a CRT Purchaser, Acted Affirmatively and Inconsistently with the
                Object of the Alleged CRT Price-Fixing Conspiracy ................................ 2

        B.      LGE's Sale of Its CRT Business Was Well-Publicized, Putting Alleged Co-
                Conspirators on Notice as to Its Withdrawal ............................................ 4

        C.      Plaintiffs' Arguments About LGE's Continuing Involvement with LPD and
                Knowledge of the Conspiracy Do Not Raise Any Material Factual Disputes
                that Could Defeat a Withdrawal Finding .................................................. 5

II.     Plaintiffs' Attempts to Hold LGE Liable for LPD's Conduct Violate Fundamental
        Notions of Corporate Separateness ....................................................................... 10

III.    At the Latest, LGE Withdrew from the Alleged Conspiracy in January 2006 .................. 12

CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*H.J. Inc. v. Int'l Tel. & Tel. Corp.*,
  867 F.2d 1531 (8th Cir. 1989) ........................................................................... 10

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) .............................................................................. 9

*In re Potash Antitrust Litig.*,
  954 F. Supp. 1334 (D. Minn. 1997), *aff'd sub nom. Blomkest Fertilizer, Inc. v. Potash*
  *Corp. of Saskatchewan*, 203 F.3d 1028 (8th Cir. 2000) ............................................ 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  820 F. Supp. 2d 1055 (N.D. Cal. 2011) ................................................................. 2

*Morton's Market, Inc. v. Gustafson's Dairy*,
  198 F.3d 823 (11th Cir. 1999) ................................................................... passim

*Motorola Mobility LLC v. AU Optronics Corp.*,
  ___ F.3d ___, 2015 WL 137907 (7th Cir. Jan. 12, 2015) ....................................... 11

*Reisman v. United States*,
  409 F.2d 789 (9th Cir. 1969) .............................................................................. 7

*United States v. Antar*,
  53 F.3d 568 (3d Cir. 1995), *abrogated by Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001) ....... 6, 7

*United States v. Bestfoods*,
  524 U.S. 51 (1998) ................................................................................. 5, 10, 12

*United States v. Boulware*,
  384 F.3d 794 (9th Cir. 2004), *cert. denied*, 546 U.S. 814 (2005) ............................... 9

*United States v. Eisen*,
  974 F.2d 246 (2d Cir. 1992) ............................................................................... 7

*United States v. Nippon Paper Indus. Co.*,
  62 F. Supp. 2d 173 (D. Mass. 1999) ................................................................... 3

*United States v. Pippin*,
  903 F.2d 1478 (11th Cir. 1990) ......................................................................... 7

*United States v. Sine*,
  493 F.3d 1021 (9th Cir. 2007) ........................................................................... 9

*United States v. U.S. Gypsum Co.*,
  438 U.S. 422 (1978) ............................................................................... passim

*Watson v. Gulf & W. Indus.*,
    650 F.2d 990 (9th Cir. 1981) ............................................................................................ 12

**STATE CASES**

*Vichi v. Koninklijke Philips Elecs., N.V.*,
    85 A.3d 725 (Del. Ch. 2014) ......................................................................................... 8, 9

**FEDERAL RULES**

Fed. R. Evid. 402 ................................................................................................................ 9

Fed. R. Evid. 802 ................................................................................................................ 9

1

## INTRODUCTION

2      Direct Action Plaintiffs ("Plaintiffs") raise no genuine issue of material fact as to whether

3 LG Electronics, Inc. ("LGE") withdrew from the alleged cathode ray tube ("CRT") price-fixing

4 conspiracy when it sold its CRT assets to LG.Philips Displays ("LPD") on July 1, 2001.  There are

5 only two relevant questions to answer in determining whether LGE withdrew: whether LGE

6 engaged in "[a]ffirmative acts inconsistent with the object of the conspiracy" and whether LGE

7 communicated its withdrawal "in a manner reasonably calculated to reach co-conspirators."

8 *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464-65 (1978).

9      The undisputed facts show that both of these requirements are satisfied.  First, LGE acted

10 inconsistently with the object of the conspiracy when it sold its CRT business to LPD and became

11 strictly a *buyer* of CRTs, negotiating with all of its vendors, including LPD, for the lowest possible

12 CRT prices.  Second, LGE communicated its withdrawal from the conspiracy because its public

13 disclosures insured that the fact of LGE's exit from the CRT business was widely communicated.

14 Once co-conspirators knew that LGE was no longer selling CRTs, they necessarily knew LGE was

15 not engaging in price fixing of CRTs.

16      In the face of this evidence, Plaintiffs make a series of irrelevant arguments.  They insist

17 that LGE's minority ownership interest in LPD precludes a withdrawal finding.  But that argument

18 relies on a legal theory that is flatly inconsistent with the withdrawal standard set forth by the

19 Supreme Court in *U.S. Gypsum*.  Moreover, their theory violates fundamental notions of corporate

20 separateness long ingrained in U.S. law.  Plaintiffs' other arguments are equally meritless.

21 Plaintiffs create no genuine issue of material fact as to LGE's knowledge of LPD's alleged

22 conspiratorial activity, nor explain why such knowledge would be legally relevant.  Nor do

23 Plaintiffs' vague allegations that LGE continued to benefit from the conspiracy defeat the clear

24 evidence of withdrawal.

25      Because the undisputed facts show that LGE withdrew from the conspiracy when it sold its

26 CRT assets to LPD, partial summary judgment should be granted in LGE's favor as to any

27 damages incurred by Plaintiffs after July 1, 2001.

28

LGE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON WITHDRAWAL
GROUNDS

**ARGUMENT**

I.    **LGE Withdrew from the Alleged Conspiracy When It Publicly Exited the CRT Industry and Became Only a Purchaser of CRTs**

The legal standard for withdrawal from a conspiracy is straightforward: a defendant must show that it took "[a]ffirmative acts" that were "[1] inconsistent with the object of the conspiracy and [2] communicated in a manner reasonably calculated to reach co-conspirators." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464-65 (1978). There are no fixed rules for how to satisfy these requirements: "When a defendant chooses to withdraw from a conspiracy, it may effectuate that withdrawal in many ways." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055, 1059 (N.D. Cal. 2011). In fact, the Supreme Court has cautioned that it is inappropriate to place "confining blinders" on the withdrawal standard by limiting the ways in which a defendant may satisfy this standard and establish withdrawal. *U.S. Gypsum*, 438 U.S. at 464.

The undisputed facts show that both of the requirements for withdrawal are satisfied. First, with the creation of LPD, LGE went from being a *seller* of CRTs to a *buyer* of CRTs. While a seller of CRTs may have an incentive to fix prices, a buyer plainly does not. Second, LGE's exit from the business of selling CRTs was widely reported and, while actual co-conspirator knowledge of withdrawal is not required, Plaintiffs do not raise an issue of fact as to whether LGE's exit actually became known to alleged co-conspirators.

A.    **LGE, as a CRT Purchaser, Acted Affirmatively and Inconsistently with the Object of the Alleged CRT Price-Fixing Conspiracy**

There is ample, undisputed evidence in the record that LGE took affirmative acts inconsistent with the object of the alleged CRT price-fixing conspiracy. It is undisputed that LGE

LGE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON WITHDRAWAL GROUNDS

sold its CRT business and ceased manufacturing or selling CRTs.  *See* Mot.[1] at 2-3; Opp'n[2] at 2-3.  At the most fundamental level, a company that stops selling a product cannot engage in price fixing of the product.

What is more, LGE became a *purchaser* of CRTs for integration into its finished products.  Its goals as a purchaser—and its purchasing conduct—were squarely at odds with the object of the price-fixing conspiracy.  Once LGE went from being a seller of CRTs to a buyer, it regularly sought the lowest CRT prices that it could.[3]  This was true when LGE purchased both from LPD[4] as well as from other CRT manufacturers.[5]  LGE's efforts to negotiate lower prices of the CRTs it purchased are, on their face, diametrically opposed to the goals of any conspiracy to raise CRT prices.

It is well-settled that "resumption of competitive behavior" establishes withdrawal from a price-fixing conspiracy.  *See U.S. Gypsum*, 438 U.S. at 464 (alteration omitted); *United States v.*

---

[1] **"Mot."** refers to Defendant LG Electronics, Inc.'s Notice of Motion and Motion for Partial Summary Judgment on Withdrawal Grounds and Memorandum of Points and Authorities in Support Thereof, Nov. 12, 2014, ECF No. 3086 (corrected version of ECF No. 3043).

[2] **"Opp'n"** refers to Opposition to Defendant LG Electronics, Inc.'s Motion for Partial Summary Judgment on Withdrawal Grounds, Dec. 23, 2014, ECF No. 3262-4.

[3] *See* Ryu Decl. in Support of Mot. ¶ 4; Hartge Decl. in Support of Mot. Ex. 7 (Duk Chul Ryu (LGE) Dep. 239:20-240:2; 284:14-19).

All references to **"Ryu Decl. in Support of Mot."** refer to the Ryu Declaration filed on November 12, 2014, ECF No. 3095.  All references to **"Suppl. Ryu Decl."** refer to the Supplemental Ryu Declaration filed in support of this reply brief.

All references to **"Hartge Decl. in Support of Mot."** refer to the Hartge Declaration and Exhibits filed on November 12, 2014, ECF. Nos. 3089, 3090, and 3092. All references to **"Suppl. Hartge Decl."** refer to the Supplemental Hartge Declaration filed in support of this reply brief.

[4] *See* Ryu Decl. in Support of Mot. ¶¶ 4-5; *id.* at Exs. H, B, D, A, I, C (LGE00075331E, LGE00068339E, LGE00069466E, LGE00084555E, LGE00065495E, LGE00077004 & LGE00077006 (attachment to LGE00077004)); Hartge. Decl. in Support of Mot. Ex. 7 (Duk Chul Ryu (LGE) Dep. 284:20-285:8, 286:15-22); *id.* at Ex. 25 (PHLP-CRT-018339).

[5] *See* Ryu Decl. in Support of Mot. ¶ 4; Suppl. Ryu Decl. Exs. 1-3 (LGE00070864E, LGE00080915E, LGE00085313E) (documents reflecting LGE's negotiations with SDI for lower CRT prices); Suppl. Hartge Decl. Exs. A, B (CHU00123358E, LGE00065498E) (same, for LGE's negotiations with Chunghwa).

LGE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON WITHDRAWAL GROUNDS

*Nippon Paper Indus. Co.*, 62 F. Supp. 2d 173, 190 (D. Mass. 1999).  By exiting the industry, and purchasing CRTs at the lowest price possible from its former alleged CRT price-fixing conspirators, LGE essentially resumed competitive behavior, establishing its withdrawal.

### B.   LGE's Sale of Its CRT Business Was Well-Publicized, Putting Alleged Co-Conspirators on Notice as to Its Withdrawal

Plaintiffs do not offer any evidence that LGE's exit from the CRT industry was not "communicated in a manner reasonably calculated to reach co-conspirators," *U.S. Gypsum*, 438 U.S. at 464, and they do not challenge the fact that LGE's divestment of its CRT business was widely reported in major news media.  *See* Mot. at 9-10 (collecting news articles from *The New York Times*, *The Wall Street Journal*, Xinhua News Agency, Reuters, and *Korea JoongAng Daily*, all of which discuss LPD's formation).  This extensive reporting by some of the world's most widely-read news organizations is more than sufficient to demonstrate that LGE's withdrawal was "communicated in a manner reasonably calculated to reach co-conspirators," *U.S. Gypsum*, 438 U.S. at 464; *see also Morton's Market, Inc. v. Gustafson's Dairy*, 198 F.3d 823, 839 (11th Cir. 1999); *In re Potash Antitrust Litig.*, 954 F. Supp. 1334, 1391 (D. Minn. 1997) (finding that the widespread, public reporting of a conspiracy defendant's sale of an ownership interest in the media is "reasonably expected to adequately notify . . . alleged co-conspirators" of withdrawal), *aff'd sub nom. Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028 (8th Cir. 2000) (en banc).  Further, numerous documents and excerpts from testimony of alleged co-conspirators demonstrate that they were in fact aware of LGE's CRT divesture that had been widely reported in these news sources.  *See* Mot. at 10-11.

LGE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON WITHDRAWAL GROUNDS

1    In addition to widely publicizing its divestment of its CRT assets, LGE regularly

2 negotiated with its alleged former co-conspirators for lower CRT prices.[6]  If alleged co-

3 conspirators had any doubt that LGE had withdrawn from their price-fixing conspiracy, LGE's

4 specific, direct, and repeated requests for lower CRT prices would have eliminated them.

5    Accordingly, Plaintiffs fail to raise any genuine issue of material fact as to whether LGE

6 "communicated [its withdrawal] in a manner reasonably calculated to reach co-conspirators," *U.S.*

7 *Gypsum*, 438 U.S. at 464.

8

9           **C.    Plaintiffs' Arguments About LGE's Continuing Involvement with LPD
                    and Knowledge of the Conspiracy Do Not Raise Any Material Factual
10                  Disputes that Could Defeat a Withdrawal Finding**

11    Plaintiffs do not dispute that LGE stopped selling CRTs when LPD was formed and

12 instead became solely a buyer of CRTs that sought the lowest possible prices.  Instead, Plaintiffs

13 make a series of arguments that are irrelevant to the key withdrawal issues.

14    Plaintiffs argue that LGE's involvement with LPD means it cannot have withdrawn from

15 the conspiracy.  This argument relies on a legal misconception.  Plaintiffs rely on *Morton's*

16 *Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823 (11th Cir. 1999), an out-of-circuit case, to

17 argue that a minority ownership interest in an allegedly conspiratorial enterprise defeats a

18 withdrawal finding, because withdrawal requires proof that a conspirator sever all ties with the

19 business.  *See* Opp'n at 18.  This is not the law.  First, for reasons discussed further below in Part

20 II, Plaintiffs' position would contradict fundamental notions of corporate separateness that protect

21 a stockholder from liability.  *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

22

23

24

25 _____

26 [6] *See* Ryu Decl. in Support of Mot. ¶ 4; Suppl. Ryu Decl. Exs. 1-3 (LGE00070864E,
   LGE00080915E, LGE00085313E) (documents reflecting LGE's negotiations with SDI for lower
27 CRT prices); Suppl. Hartge Decl. Exs. A, B (CHU00123358E, LGE00065498E) (same, for LGE's
   negotiations with Chunghwa).

28

LGE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON WITHDRAWAL
GROUNDS

Second, *Morton's Market* and the other cases Plaintiffs cite hold that severing ties with a business *shows* withdrawal; they do not hold that severing all ties is *required* to prove withdrawal. To interpret these precedents as holding that a minority equity position in a business alleged to have engaged in illegal activity automatically defeats withdrawal would contravene the clear instructions from the Supreme Court in *U.S. Gypsum* that withdrawal requires only action inconsistent with the object of the conspiracy, communicated in a manner reasonably calculated to reach co-conspirators, and that no "confining blinders" should be placed upon the withdrawal inquiry. *See* 438 U.S. at 464-65. *Morton's Market* describes a particular way in which a corporate defendant exiting the business can satisfy the *Gypsum* test. It does not and could not alter the standard set forth in *Gypsum* that expressly permits alternative methods of establishing withdrawal.

Indeed, the other authorities cited by Plaintiffs are clear that severing all ties with a conspirator is one way to show withdrawal, *but not the only way.* For example, in *United States v. Antar*, 53 F.3d 568, 582 (3d Cir. 1995), *abrogated by Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001), the Third Circuit rejected the defendant's withdrawal argument where the defendant had resigned from the company engaging in the conspiracy, but "retained stock" in the company. *Id.* at 583. The *Antar* court held that the defendant had not completely severed his relationship with the company, so as to demonstrate withdrawal on this basis. But the court specifically held that the defendant could have established withdrawal through other methods, stating that "***if*** the defendant has not completely severed his ties with the enterprise, ***then*** in order to establish a prima facie case [of withdrawal], he must demonstrate either that he gave notice to his co-conspirators that he disavows the purpose of the conspiracy or that he did acts inconsistent with the object of the conspiracy." *Id.* (emphasis added). Rather than support Plaintiffs' unduly restrictive view of

withdrawal, *Antar* actually establishes that a defendant may show withdrawal even if it does not

sever all ties with an alleged conspirator.

*Reisman v. United States*, 409 F.2d 789 (9th Cir. 1969), also cited by Plaintiffs, is similar.

There, the defendant was deemed not to have withdrawn from a conspiracy although he had

resigned as president and director of a company that was engaging in a mail fraud scheme.  *See id.*

at 793.  The court noted that, despite the defendant's resignation, he "remained a major

stockholder and *took no affirmative action* to disavow or defeat the promotional activities which

he had joined in setting in motion."  *Id.* (emphasis added).  *See also United States v. Eisen*, 974

F.2d 246, 268-69 (2d Cir. 1992) (declining to find that two defendants had withdrawn despite their

resignation from a law firm engaged in racketeering activities, because one "continued to work for

the firm on an *ad hoc* basis" and the other "continued to be entitled to a percentage of the recovery

on all cases he tried including those giving rise to his pre-1985 racketeering acts"; neither had

engaged in any conduct inconsistent with the object of the conspiracy); *United States v. Pippin*,

903 F.2d 1478, 1481-82 (11th Cir. 1990) (explicitly finding that the defendant had *not* engaged in

acts inconsistent with the object of the conspiracy).

Unlike the defendants in *Antar*, *Reisman*, *Eisen*, and *Pippin*, who took *no actions*

*inconsistent* with the object of the conspiracy, LGE did so in 2001 by ceasing to manufacture

CRTs, becoming a CRT purchaser, and consistently negotiating for lower CRT prices—all of

which are squarely inconsistent with continued support of a CRT price-fixing conspiracy.  Thus,

this was not a case, as plaintiffs allege, of "mere cessation of activity" on LGE's part, *see*

*Morton's Market*, 198 F.3d at 838.  Instead, LGE took **affirmative acts** to distance itself from the

alleged conspiracy—something that defendants in *Antar*, *Reisman*, *Eisen*, and *Pippin* had failed to

do.

LGE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON WITHDRAWAL
GROUNDS

1    Plaintiffs also argue that "LGE knew that LPD continued to participate in the CRT

2    conspiracy," Opp'n at 20.  This argument merits no consideration.  First, LGE's knowledge,

3    without more, is legally irrelevant to whether LGE withdrew.  To the extent that Plaintiffs believe

4    that LGE's knowledge of LPD's allegedly conspiratorial activity—as to which Plaintiffs raise no

5    genuine issue of material fact, as discussed below—precludes withdrawal, Plaintiffs

6    inappropriately add a requirement to the *U.S. Gypsum* standard despite the Supreme Court's

7    admonition that satisfaction of the *U.S. Gypsum* two-pronged test is sufficient to establish

8    withdrawal.  *See* 438 U.S. at 464-65.  Thus, even assuming there were some disputed fact issue

9    about LGE's knowledge, that dispute cannot defeat summary judgment.

10

11    Second, the evidence upon which Plaintiffs rely in an attempt to prove LGE's knowledge

12    are not sufficient to raise an issue of fact on that score.  Neither the European Commission ("EC")

13    decision nor *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725 (Del. Ch. 2014) (discussing

14    Philips' potential liability for LPD's conspiratorial conduct), *see* Opp'n at 20-21, found that LGE

15    was actually aware of LPD's alleged conspiratorial activities.  The *Vichi* court specifically noted

16    that "the EC decision did *not* find that Philips N.V. . . . had actual knowledge of LPD's price fixing

17    activities."  *Vichi*, 85 A.3d at 783 (emphasis added).  Accordingly, the *Vichi* court concluded that

18    "[t]he EC Decision *is not preclusive . . . as to Philips N.V.'s knowledge* of or participation in th[e]

19    CRT cartel, because the extent of the EC's findings in that regard are not clear and, more

20    importantly, *direct involvement or knowledge is not a prerequisite to holding a parent company*

21    *liable for the anticompetitive acts of its subsidiary under EU law*."  *Id.* at 783-84 (emphasis

22    added).  Thus, the proceedings before the EC were based on a legal standard that does not require

23    proof of stockholder knowledge, and there was therefore no finding, by either the EC or by the

24

25

26

27

28

LGE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON WITHDRAWAL
GROUNDS

1  *Vichi* court, that LGE had actual knowledge of illegal conduct by LPD.[7]  Plaintiffs' documentary

2  evidence on this point is similarly mischaracterized.[8]  Once Plaintiffs' inaccuracies are stripped

3  away, the remaining evidence left on the question of LGE's knowledge are the following facts: (1)

4  "LGE's current executives and employees were members of controlling boards, committees, and

5  teams"; and (2) "LGE intentionally transferred employees to LPD who participated in the CRT

6

7  conspiracy while at LGE."  Opp'n at 20.  With respect to the first point, Plaintiffs fail to cite any

8  evidence that LPD disclosed its conspiratorial activities to any LGE employee.  Plaintiffs'

9  speculation, without more, does not arise to a genuine dispute of material fact.  *See In re Oracle*

10  *Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (no triable issue where the evidence "show[s]

11  [no] more than the mere existence of a scintilla of evidence" or "some 'metaphysical doubt' as to

12  the material facts at issue").  The second point—that former LGE employees who participated in

13  the conspiracy left LGE and became LPD employees—supports a finding of withdrawal, rather

14

15  ———————————————

16  [7] LGE objects to Plaintiffs' use of the EC decision and the *Vichi* decision on the grounds that they
are inadmissible hearsay.  It is unclear from what material Plaintiffs pull their quotations of the EC

17  decision, as there is no citation provided.  *See* Opp'n at 20-21.  LGE's best guess is that the quoted
material comes from the *Vichi* decision, which, as a judicial opinion, is inadmissible hearsay under

18  Fed. R. Evid. 802.  *See United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (quoting *United
States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004), *cert. denied*, 546 U.S. 814 (2005)).  LGE

19  further objects to Plaintiffs' reliance on the *Vichi* decision as to LGE's knowledge of LPD's
conspiratorial activity on relevance grounds.  *See* Fed. R. Evid. 402.  By asserting these

20  objections, LGE does not waive objections to the numerous other exhibits submitted by Plaintiffs
in support of their opposition, and reserves the right to object to the use of those exhibits if relied

21  upon by Plaintiffs later in this litigation.

22  [8] Plaintiffs allege that ███████████████
██████████  Opp'n at 20; *see id.* n.75.  Review of all three of the cited documents—only

23  one of which is a meeting report—makes clear that this, too, is a mischaracterization.  *See*
Martinez Decl. Ex. 57 in Support of Opp'n, Dec. 23, 2014, ECF Nos. 3262-5 through 3262-29,

24  CHU00020660 ████████████████████████████████████████
████████████████████████████████████████ *; id.*, PHLP-

25  CRT-048827 ████████

26  ████████████████████████████████████████████████████

27  *id.*, CHU00064515 ██████████████████████████████████████████████

28

LGE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON WITHDRAWAL
GROUNDS

than refuting it.  Any attempt to attribute their conduct as LPD employees to LGE violates basic

principles of corporate separateness, as discussed below in Part II.

Finally, Plaintiffs argue that LGE benefitted from the alleged conspiracy, and therefore did

not withdraw from it.  *See* Opp'n at 21-22.  This is tantamount to arguing that a minority

ownership interest in an allegedly conspiratorial business precludes withdrawal, which, as

discussed in detail below in Part II, is inconsistent with basic notions of corporate separateness.

At any rate, Plaintiffs' argument does not undermine the undisputed fact that LGE exited the CRT

business and became a CRT purchaser and consistently sought lower CRT prices.  The simple fact

is that LGE switched sides.  It went from a seller that might have benefitted from higher prices, to

a buyer that plainly did not.  That well-publicized switch marked its withdrawal from the

conspiracy.

**II.      Plaintiffs' Attempts to Hold LGE Liable for LPD's Conduct Violate Fundamental Notions of Corporate Separateness**

Undergirding Plaintiffs' opposition is the theory that LGE should remain liable for the

actions of LPD because it held a minority ownership interest in the newly formed organization.

This theory conflicts with fundamental principles of corporate separateness.  "It is a general

principle of corporate law deeply ingrained in our economic and legal systems that a parent

corporation . . . is not liable for the acts of its subsidiaries."  *Bestfoods*, 524 U.S. at 61 (internal

quotation marks omitted).  This is no less true for a corporation owning a minority interest in

another company.

There are only two circumstances under which a parent company can be held liable for a

subsidiary's antitrust violations: (1) if the parent "performed acts sufficient to create liability[] or

actively influenced [the subsidiary] in its violations"; or (2) the subsidiary is an alter ego or agent

of the parent.  *See H.J. Inc. v. Int'l Tel. & Tel. Corp.*, 867 F.2d 1531, 1549 (8th Cir. 1989).

Plaintiffs make no argument in their opposition that LPD is an alter ego or agent of LGE, and thus

they have waived that argument.

1        Further, plaintiffs present no facts that could satisfy the first test for imputing liability to

2    LGE.  Accordingly, LGE cannot be held liable for LPD's conduct, and cannot be deemed to have

3    failed to withdraw on this basis.  Plaintiffs present no evidence that LGE itself was involved in the

4    alleged conspiracy after it sold its assets to LPD.  Instead, Plaintiffs argue that LGE could not have

5    withdrawn from the conspiracy because it retained a minority ownership interest in LPD, *see*

6    Opp'n at 18-20, and focus in their Statement of Undisputed Facts[9] extensively on *LPD*'s allegedly

7    conspiratorial activity, *see* Opp'n at 3-11—essentially arguing that LGE continued to participate in

8    the conspiracy because of this ownership interest.  But Plaintiffs' line of argument improperly

9    conflates *LPD*'s potential liability with LGE's potential liability.  This is legally unsound.  As

10   Judge Posner recently explained in another antitrust case in rejecting a plaintiff's attempt to seek

11   damages incurred by its subsidiaries: "[Plaintiff-]Motorola wants us to treat it and all of its foreign

12   subsidiaries as a single integrated enterprise, as if its subsidiaries were divisions rather than

13   foreign corporations.  But *American law does not collapse parents and subsidiaries* . . . . [The

14   United States insists] that corporate formalities should be respected unless one of the recognized

15   justifications for piercing the veil, or otherwise deeming a parent and subsidiary one, is present."

16   *Motorola Mobility LLC v. AU Optronics Corp.*, ___ F.3d ___, 2015 WL 137907, at *4 (7th Cir.

17   Jan. 12, 2015) (emphasis added).  If this is the state of the law for a parent-subsidiary relationship,

18   it is that much more of an overreach for Plaintiffs to attempt to "collapse" LGE with a company in

19   which it has but a minority ownership interest.

---

21   [9] LGE objects to Plaintiffs' argumentative assertions throughout their Statement of Undisputed
      Facts—especially those with no evidentiary support.  For example, Plaintiffs' Statement of

22   Undisputed Facts asserts: "By virtue of the fact that one half of the SVB's [Supervisory Board's]
      members were ▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮▮▮   Opp'n at 12.  In support of this rather sensational allegation, Plaintiffs cite but one
      document: ▮▮▮▮▮▮▮▮

24   ▮▮▮▮▮▮▮▮   *Id.* n.57 (citing

25   Martinez Decl. Ex. 42 (PHLP-CRT-052781)).  ▮▮▮▮▮▮▮▮

26   ▮▮▮▮▮▮▮▮   *See* Suppl. Hartge Decl. Ex. C (Frans Spaargaren (Philips) (Aug. 27, 2014)
      Dep. 114:15-116:19).  ▮▮▮▮▮▮▮▮

LGE'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON WITHDRAWAL
GROUNDS

1    In short, mere shareholder status cannot raise an issue of fact requiring trial.  *See*

2    *Bestfoods*, 524 U.S. at 61; *Watson v. Gulf & W. Indus.*, 650 F.2d 990, 993 (9th Cir. 1981)

3    (affirming a grant of summary judgment against parent corporations, because "[i]n the absence of

4    special circumstances, a parent corporation is not liable for the Title VII violations of its wholly

5    owned subsidiary").  A corporate defendant acting inconsistently with the object of a price-fixing

6    conspiracy through the sale of its allegedly conspiratorial assets and complete cessation of all

7    unlawful activity, coupled with effective communication to co-conspirators of that withdrawal, has

8    no further liability.  The fact that the corporation was paid for the sale of its assets in stock, rather

9    than cash, should not alter the analysis.[10]

10    As Plaintiffs have failed to raise any genuine issue of material fact as to whether LGE can

11    be held liable for LPD's allegedly conspiratorial activity, partial summary judgment should be

12    granted in LGE's favor.

13    **III.    At the Latest, LGE Withdrew from the Alleged Conspiracy in January 2006**

14    Even if this court finds that LGE did not withdraw from the conspiracy in 2001, at the very

15    latest, the undisputed facts show that it withdrew by January 2006.  As previously explained in a

16    prior motion to dismiss, *see* Philips Defs.' Mot. to Dismiss & for J. on the Pleadings as to

17    Plaintiffs' Claims, Aug 17, 2012, ECF. No. 1319, at 4; Joinder of LG Defs. in Mot. to Dismiss

18    Filed by Philips Defs., Aug. 20, 2012, ECF No. 1320, LPD declared bankruptcy in 2006, at which

19

20    time LGE's minority ownership interest cannot be said to have any relevance.  LPD was under the

21    complete control of a bankruptcy trustee.  Suppl. Hartge Decl. Ex. D (LPD's bankruptcy

22    judgment, rendered in January 2006).  Even under Plaintiffs' erroneous view that any influence

23    that LGE may have had over LPD precludes a finding of withdrawal, there is no genuine issue of

24

25    [10] It is worth noting that in *Morton's Market* itself, the case that Plaintiffs rely upon so heavily to

26    argue for suspension of the rules of shareholder liability, the court did not examine the consideration paid for the withdrawing defendant's business from which it was completely

27    "severed" by virtue of the sale to determine whether the defendant received an equity interest in return.  *Morton's Market*, 198 F.3d at 837-39.

28

1   material fact that LGE withdrew from the alleged conspiracy by January 2006, when the

2   bankruptcy trustee took control of the company.

3                                    **CONCLUSION**

4           For the foregoing reasons, LGE respectfully requests that the Court enter partial summary

5   judgment in its favor as to any of Plaintiffs' damages allegedly incurred after LGE withdrew from

6   the alleged conspiracy on July 1, 2001.

7

8                                            Respectfully submitted,

9   DATED:  January 23, 2015              MUNGER, TOLLES & OLSON LLP

10

11

12                                   By:        /s/ Jerome C. Roth
                                            JEROME C. ROTH
13
                                     Attorneys for Defendant LG ELECTRONICS, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28