JEROME C. ROTH (State Bar No. 159483)
jerome.roth@mto.com
HOJOON HWANG (State Bar No. 184950)
hojoon.hwang@mto.com
MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

WILLIAM D. TEMKO (State Bar No. 98858)
william.temko@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3707

*Attorneys for Defendants LG Electronics, Inc.*

*Additional Moving Defendants and
Counsel Listed on Signature Pages*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-md-05944-sc (N.D.Cal) MDL No. 1917 |
| This Document Related to:<br><br>Individual Case No. 3:13-cv-2171 (SC) *Dell Inc.; Dell Products L.P., v. Philips Electronics North America Corporation et al.,* | **DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION FOR SUMMARY JUDGMENT BASED UPON PLAINTIFFS' FOREIGN TRANSACTIONS BARRED BY THE FTAIA**<br><br>Judge:  Hon. Samuel Conti<br>Date:   February 6, 2015<br>Time:   10:00 a.m.<br>Crtrm.: 1, 17th Floor |

25561556.8

3:07-cv-05944-SC; MDL 1917

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION FOR SUMMARY JUDGMENT BASED UPON PLAINTIFFS' FOREIGN TRANSACTIONS BARRED BY THE FTAIA

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT ...................................................................................................................... 3

    A.    Dell's Mere Agreement to Pay a Higher Price Does Not Constitute an Effect on U.S. Commerce ................................................................................................ 3

    B.    Plaintiffs' Purely Foreign Purchases Do Not "Give Rise To" Their Claims ............ 6

    C.    Dell Provides No Persuasive Basis for Distinguishing *Motorola II* ........................ 8

III.  CONCLUSION ................................................................................................................... 9

# TABLE OF AUTHORITIES

Page

**Cases**

**FEDERAL CASES**

*Den Norske Stats Oljeselskap As v. HeereMac VOF*,
   241 F.3d 420 (5th Cir. 2001) ................................................................................................. 5

*F. Hoffmann–La Roche, Ltd. v. Empagran S.A.*,
   542 U.S. 155 (2004) ("Empagran I") ............................................................................. 3, 5, 6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   546 F.3d 981 (9th Cir. 2008) ("DRAM") ............................................................................ 6, 7

*In re Hydrogen Peroxide Antitrust Litig.*,
   702 F. Supp. 2d 548 (E.D. Pa. 2010) ..................................................................................... 7

*In re Rubber Chems. Antitrust Litig.*,
   504 F. Supp. 2d 777 (N.D. Cal. 2007) ................................................................................... 7

*In re TFT-LCD (Flat Panel) Antitrust Litig. (In re LCD (Dell))*,
   781 F. Supp. 2d 955 (N.D. Cal. 2011) ................................................................................... 1

*Minn-Chem, Inc. v. Agrium, Inc.*,
   683 F.3d 845 (7th Cir. 2012) ................................................................................................. 5

*Motorola Mobility, Inc. v. AU Optronics Corp.*,
   No. 09 C 6610, 2014 WL 258154 (N.D. Ill. Jan. 23, 2014) ........................................... passim

*Motorola Mobility LLC v. AU Optronics Corp. (Motorola II)*,
   --- F.3d ----, 2015 WL 137907 (7th Cir. Jan. 15, 2015) ................................................ passim

*Sun Microsystems Inc. v. Hynix Semiconductor, Inc.*,
   534 F. Supp. 2d 1101 (N.D. Cal. 2007) ................................................................................. 4

*Sun Microsystems Inc. v. Hynix Semiconductor, Inc.*,
   608 F. Supp. 2d 1166 (N.D. Cal. 2009) ................................................................................. 7

**STATUTES AND RULES**

15 U.S.C. § 6a ................................................................................................................................ 3

Fed. R. Civ. P. § 56 ....................................................................................................................... 9

## I. INTRODUCTION

In this Motion, Defendants ask the Court to exclude from Dell's potential recovery damages arising from entirely foreign transactions, involving products that were ordered by foreign corporations, delivered to foreign locations for resale to foreign customers, and paid for by the foreign corporations and never touched U.S. soil.  In its opposition, Dell does not contest any of these critical facts, which establish that these transactions could not possibly have affected U.S. commerce.  Undeterred, Dell seeks to extend the reach of the Sherman Act to these wholly-foreign transactions and avoid the limitation imposed by the FTAIA based on the slenderest of reeds – that Dell negotiated these purchases from its corporate headquarters in the U.S..  The only authority that supports this sweeping extraterritorial application of U.S. law, extensively relied upon in Dell's opposition, is a series of decisions by one district court that has been thoroughly debunked by the Seventh Circuit Court of Appeal in *Motorola Mobility LLC v. AU Optronics Corp. (Motorola II)*, --- F.3d ----, 2015 WL 137907 (7th Cir. Jan. 15, 2015).

In the Motorola LCD litigation, the MDL court (Illston, J.) had permitted Motorola to pursue the damage claims of its foreign affiliates under an assignment applying the same reasoning Dell urges upon this Court to facts substantially identical to those Dell asserts here, namely that the parent company's headquarters in the U.S. negotiated the prices that the foreign subsidiaries paid outside the U.S..  *See Motorola II*, 2015 WL 137907, at *8 (noting Motorola's argument that "the approval of a single, artificially-inflated LCD panel price in the United States . . . proximately caused all of Motorola's damages, because that same artificially-inflated price applied wherever and whenever a Motorola facility placed a purchase order and paid for a panel." ).  In a decision on which Dell extensively relies, the MDL court applied the same reasoning as it did to Motorola's claims in holding that Dell, too, could pursue claims based on purchases of its foreign subsidiaries.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.* (*In re LCD (Dell)*), 781 F. Supp. 2d 955 (N.D. Cal. 2011) (cited in Opp. at 2).

After the Motorola case was remanded for trial, the transferor court (N.D. IL. Gottschall, J.) found it necessary to reconsider the issue in order to "correct [a] serious error[] of the transferee court."  *Motorola Mobility, Inc. v. AU Optronics Corp.*, No. 09 C 6610, 2014 WL 258154, at *4

(N.D. Ill. Jan. 23, 2014). The Seventh Circuit affirmed, holding that the FTAIA bars Motorola's claims. With respect to the category of transactions at issue on this Motion – purchase of products that *never* made their way into the U.S. even as components of finished products – the *Motorola II* court dismissed the claims out of hand, holding that "the panels—57 percent of the total—that never entered the United States neither affected domestic U.S. commerce nor gave rise to a cause of action under the Sherman Act." 2015 WL 137907, at *2. While Dell has chosen to all but ignore this decision, mentioning it only in a footnote, *Motorola II* is the one appellate decision most directly on point and irretrievably undermines each of the arguments and authorities Dell asserts in opposition to this Motion.

      *Motorola II* and the district court opinion affirmed therein make clear that a U.S. parent company's negotiation of prices that its foreign affiliates pay produces neither the requisite effect on U.S. commerce nor proximately causes an actionable claim. First, they confirm that Dell's characterization of a mere agreement to pay higher prices -- which creates no injury and gives rise to no claim—as the requisite domestic "effect" is untenable. The setting of a single price for foreign and domestic purchases did not give rise to an injury, foreign or domestic. Rather, it is the payment of an allegedly supracompetitive price that results in an injury. Here, that injury indisputably occurred overseas when Dell's Foreign Affiliates[1] paid the allegedly supracompetitive price. Dell's theory that the agreement constitutes the effect defies common sense and would extend the reach of the Sherman Act well beyond the intent of the FTAIA given the ubiquitous use of master purchase agreements and foreign subsidiaries by U.S. businesses. The Court should decline Dell's invitation to find that any purchase in the world, regardless of their effect on U.S. commerce, are actionable as long as an allegedly fixed price was negotiated in the U.S. as part of the same agreement.

      In addition, Dell has failed to identify any evidence suggesting that the effect on U.S. commerce was the proximate cause of their foreign injury, i.e., Dell has not shown that the price

---

[1] The Dell Foreign Affiliates are (1) Dell Computadores do Brazil, Ltda. in Eldorado do Sul, Brazil; (2) Dell Products (Europe) BV in Limerick, Ireland; (3) Dell (Xiamen) Company Ltd. and Dell (China) Company Ltd. in Xiamen, China; and (4) Dell Asia Pacific Sdn in Penang, Malaysia.

of CRT monitors in wholly foreign transactions was *dependent* upon higher prices in the United States, as they must. *See F. Hoffmann–La Roche, Ltd. v. Empagran S.A.*, 542 U.S. 155, 172 (2004) ("*Empagran I*"). Contrary to Dell's suggestions, the question is not whether there is a "clear connection," *see* Opp. at 2, or "concrete link," *see id*. at 21, between higher U.S. prices and prices in wholly foreign transactions. The question is whether the agreement to pay higher U.S. prices as part a master purchase agreement was the proximate cause of the higher prices in wholly foreign transactions by Dell's Foreign Affiliates. The fact that the prices were negotiated together and at the same level says nothing about whether the domestic effects of the allegedly global conspiracy drove the level of foreign prices or vice versa, and Dell has offered no evidence to create a triable issue.

In sum, Dell wants to reap the benefits of being incorporated outside of the United States, but they also want to cloak themselves in the protection of U.S. antitrust laws for transactions involving foreign corporations in foreign commerce. Congress has expressly considered whether to extend the coverage of U.S. antitrust laws to wholly foreign transactions, and for a variety of reasons, including international relations and comity, decided against it. Dell's attempted end run around the will of Congress should be rejected.

## II. ARGUMENT

### A. DELL'S MERE AGREEMENT TO PAY A HIGHER PRICE DOES NOT CONSITUTE AN EFFECT ON U.S. COMMERCE

The FTAIA provides that section 1 of the Sherman Act "shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless . . . such conduct has a direct, substantial, and reasonably foreseeable effect . . . on trade or commerce which is not trade or commerce with foreign nations, . . . and such effect gives rise to a claim under the provisions of [section 1 of the Sherman Act]." 15 U.S.C. § 6a (emphasis added).

Dell starts from the premise that agreeing to pay a higher price itself constitutes an "effect" on domestic commerce, even where the payment of that price occurs overseas by foreign corporations to foreign corporations. Opp. at 20. Because that agreement occurred in the U.S.

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION FOR SUMMARY JUDGMENT BASED UPON
PLAINTIFFS' FOREIGN TRANSACTIONS BARRED BY THE FTAIA

where Dell is headquartered, Dell argues that this "effect" occurred in the U.S. *Id*. Dell is mistaken.

First, the FTAIA does not refer to any event caused or created by the alleged conspiracy occurring *physically in* the United States. Rather, it requires that an "effect" on U.S. or import "commerce" be shown. U.S. "commerce" is not affected by an agreement to pay unless and until a payment is actually made because an agreement by itself has no consequence. A mere agreement causes no "effect" on "commerce," foreign or domestic, if it is not carried out in the form of a purchase and a payment. Under Dell's reading, a contract entered into in the U.S. but never performed anywhere would have had an "effect" on U.S. commerce, a patently absurd proposition. The formation of the contract is an *event* that occurred *in* the U.S. but it does not constitute any "effect. . . *on*" U.S. commerce, much less a "substantial" one.

Dell relies on decisions of the LCD MDL court for this proposition[2]. In the LCD litigation, Motorola alleged that "procurement teams at Motorola based in the U.S. negotiated the prices, conditions, and quantities that governed all Motorola purchases of LCD Panels around the world for inclusion in Motorola devices," and that "[a]fter the price for LCD Panels was set, Motorola's supply chain organization (also based in Illinois) used an automatic scheduling process to determine the quantity requirements for it and its subsidiaries. . . . This process was entirely directed by Motorola from the U.S., and the foreign affiliates issued purchase orders at the price and quantity determined by Motorola in the United States." *Motorola Mobility*, 2014 WL 258154, at *3. But, as Illinois district court in *Motorola* concluded, these facts alone do not and cannot

---

[2] Dell also cites *Sun Microsystems Inc. v. Hynix Semiconductor, Inc.*, 534 F. Supp. 2d 1101 (N.D. Cal. 2007), *See* Opp. at 20. Defendants acknowledge that the *Sun Microsystems* court, in holding only that plaintiffs' had adequately alleged an effect on U.S. commerce, took the position that the domestic effect prong of the FTAIA did not require the actual payment of higher prices in the United States. *See Sun Microsystems*, 534 F. Supp. 2d at 1112–13. However, the *Sun Microsystems* court appears to have relied on a misreading of *Empagran I*. The *Sun Microsystems* court drew significance from the use of the term "higher prices" by the Supreme Court, but as discussed below, the Supreme Court was clearly focused on actual injuries arising from the allegedly improper conduct. In any event, *Sun Microsystems* ultimately supports granting the Motion because, on substantially similar facts, the court ultimately found that the "give rise to" prong of the domestic effects test was not met. *See id*. at 1115 (acknowledging that "even if the price set in the master agreement is the required domestic effect, there is still no injury that is proximately caused by the negotiation of the contract.").

qualify as a domestic effect giving rise to a Sherman Act claim because the economic consequences of the U.S. based negotiation and agreement were not felt in the U.S. economy with respect to the wholly foreign purchases. *Id.* at *9 ("Because the economic consequences of Motorola's domestic approval of LCD prices were not felt in the U.S. economy, the domestic approval cannot constitute a domestic effect that gives rise to a Sherman Act claim."); *see also Den Norske Stats Oljeselskap As v. HeereMac VOF*, 241 F.3d 420, 427 (5th Cir. 2001) ("the effect on United States commerce—in this case, *the higher prices paid by* United States companies for heavy-lift services in the Gulf Mexico—must give rise to the claim that Statoil asserts against the defendants.") (emphasis added).

Although Dell plucks a stray phrase from *Empagran I* that refers generally to "higher prices," *see* Opp. at 20 n.19, when *Empagran I* is fairly read as a whole, it is clear that the Supreme Court was discussing the actual *purchase* of goods at fixed prices, not merely the setting of fixed prices to be paid at some point in the future. *See Empagran I*, 542 U.S. at 159 (explaining that there could be instances where "a *purchaser* in the United States could bring a Sherman Act claim under the FTAIA based on domestic injury, but a *purchaser* in Ecuador could not bring a Sherman Act claim based on foreign harm.") (emphasis added); *see also id.* at 158 ("We ask two questions about the price-fixing conduct and the foreign injury that it causes."); *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 857 (7th Cir. 2012) ("If its foreign sales do not meet the threshold for 'effects' on import or domestic commerce established by cases such as *Hartford Fire* and *Summit Health,* then, for those transactions, [the defendant] has nothing to worry about.")[3].

---

[3] To the extent that Dell tries to rely on the sale of monitors directly to a Dell entity in the United States as the "effect" under FTAIA, it is irrelevant because such transactions are not within the scope of Defendants' motion. This motion seeks to exclude only wholly foreign transactions – goods ordered in foreign commerce by foreign corporation with no expectation that the goods would ever leave the foreign commerce. Plaintiff has not made any showing, or even attempt to show, that this type of transaction has any effect on U.S. commerce. Dell's attempt to reply on the SDI guilty plea to show domestic effect is likewise irrelevant and unavailing. Even assuming the SDI plea agreement is relevant to this case – which it is not – the plea only relates to the effect on U.S. commerce by fixed prices in *domestic transactions* which are not within the scope of this motion. Nothing in the plea indicates any effect on domestic commerce by the type of wholly foreign transactions which are the sole focus of this motion.

Further, Dell's proposed interpretation, where the mere consummation of an agreement would suffice to sweep in foreign transactions involving goods that never enter the U.S., runs contrary to the purpose of the FTAIA and public policy. The uses of master purchase agreements and locally-incorporated foreign subsidiaries are ubiquitous among major corporations based in the U.S., all of whom could flood the U.S. courts with Sherman Act claims based on entirely foreign transactions. As the Seventh Circuit put it, "the mind boggles at the thought of the number of antitrust suits that major American corporations could file against the multitudinous suppliers of their prolific foreign subsidiaries" if this theory were accepted. *Motorola II*, 2015 WL 137907, at *11. Dell's theory would inevitably extend the jurisdiction of the Sherman Act to impermissible levels, and eviscerate the very purpose of the FTAIA. Dell's foreign affiliates have available remedies under the laws of the countries where the transactions actually occurred, and having chosen to incorporate distinct corporate entities under those laws, Dell cannot "pick and choose from the benefits and burdens of United States corporate citizenship." *Id.* at *6; *see id.* at *4 ("Having submitted to foreign law, the subsidiaries must seek relief for restraints of trade under the law either of the countries in which they are incorporated or do business or the countries in which their victimizers are incorporated or do business."); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 988 (9th Cir. 2008) ("DRAM") ("Centerprise is a foreign consumer that made its purchases entirely outside of the United States [and] has recourse under its own country's antitrust laws.").

### B. Plaintiffs' Purely Foreign Purchases Do Not "Give Rise To" Their Claims

Even assuming that the setting of higher prices via a master purchase agreement negotiated in the U.S. can be considered an "effect" on U.S. commerce, summary judgment must be granted because Dell cannot satisfy the second prong of the domestic effects test – that the effect "give rise to" the claims asserted by Dell. While Dell asserts that the U.S. negotiated prices establish a "concrete link" between the domestic effects and the claims of its foreign affiliates, that is not the applicable standard. Instead, Dell must produce evidence that the foreign injuries of its affiliates were *dependent* upon the domestic effect. *See Empagran I*, 542 U.S. at 172.

In this case, Dell alleges a *global* conspiracy to fix prices of CRTs that purportedly inflated CRT prices in the U.S. as well as in foreign countries. The mere fact that Dell negotiated U.S. and foreign prices at the same time and at the same level says nothing about whether the foreign prices were dependent on the domestic prices. There is nothing in the record to show whether the negotiation for domestic purchases prices was a driving factor for foreign purchase prices or vice versa.

*In re Hydrogen Peroxide Antitrust Litig.*, 702 F. Supp. 2d 548, 553 (E.D. Pa. 2010) is instructive. In that case, the plaintiff sought to recover damages for purchases in Europe by claiming, as Dell does here, its "global procurement programs . . . involved the setting at one time of a single global price." In rejecting this claim, the court noted that "proximate causation is a *serial* process – i.e., one thing happens . . . and *then* another thing happens . . . *because of* the first event." *Id.* at 555 (emphasis in the original). In short, simultaneous setting of U.S. and foreign prices does not proceed as cause and effect at all. *Id.* (no proximate cause because "the plaintiffs claim that the domestic and foreign effects . . . happened at the same time.").

Likewise, the Illinois district court in *Motorola* found proximate cause lacking where "Motorola's senior procurement officers in the United States approved the prices that Motorola's foreign affiliates were to pay for LCD panels." 2014 WL 258154, at *9. In an allegedly global price-fixing conspiracy, "Motorola's domestic approval was not the direct cause of Motorola's foreign affiliates' claim; rather, that claim resulted from the overall price-fixing conspiracy itself." *Id.* (citing *DRAM*, 546 F.3d at 988). *See also Sun Microsystems Inc. v. Hynix Semiconductor, Inc.*, 608 F. Supp. 2d 1166, 1186 (N.D. Cal. 2009) ("[b]oth this court and the Ninth Circuit have held that, to the extent [that] plaintiff's proximate causation theory rests on proof of a global procurement strategy, this is not a viable legal theory."); *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 786 (N.D. Cal. 2007) (holding that domestic injury exception did not apply where plaintiffs alleged that defendants "conspired to bring about a 'single worldwide price increase'").

Furthermore, proximate causation is lacking because the fact that the foreign prices were tied to the U.S. negotiated prices is a consequence solely of Dell's own business practices – Dell

could have chosen to set or negotiate the prices separately. The mere fact that Dell chose to link the prices it pays for the two category of purchases does not mean that the foreign prices were dependent on domestic prices and therefore domestic effect *proximately caused* the foreign harm. This is not a case where a competitive restraint on U.S. commerce resulted in a competitive restraint on foreign commerce through the workings of market forces that link the two markets. Here, any linkage is provided only because of a choice made by a single economic actor in how it conducts its own purchases and pricing. Dell's own pricing decision, not the economic consequences of the domestic effects, led to Dell and its foreign subsidiaries paying the same price. That is not the sort of economic linkage that the proximate cause requirement of the FTAIA contemplates. *Cf. Motorola II*, 2015 WL 137907, at *8 ("Motorola insists that it dictates the price at which it buys cellphones from its subsidiaries, and it would be odd to think that Motorola could obtain antitrust damages on the basis of its own pricing decisions.")

### C. Dell Provides No Persuasive Basis for Distinguishing *Motorola II*

In a footnote addressing *Motorola II*, Dell seeks to distance itself from Motorola by asserting that Motorola was trying to "impute to itself the harm suffered by" the foreign entities, while Dell's Foreign Affiliates "explicitly assigned their claims to Dell." Opp. at 22 n.20. While Motorola did advance a theory that it and its foreign affiliates constituted a single economic unit for Sherman Act purposes, that theory was merely the latest in a series of attempts by Motorola to recast its claims in light of the Illinois district court's and the Seventh Circuit's earlier rejection of its original theory, which was identical to Dell's.

Like Dell, Motorola obtained assignments of claims from its foreign subsidiaries. *See Motorola Mobility*, 2014 WL 258154, at *3 ("99% of the LCD purchases at issue were purchased by Motorola's foreign affiliates who assigned their claims to Motorola"); *id.* at *9 ("[t]hat the foreign affiliates have assigned their claims to a parent company that happens to be a U.S. corporation makes it no more likely that it was a domestic effect, rather than the overall price-fixing conspiracy itself, that proximately (i.e., directly) caused" the foreign injury). Like Dell, Motorola argued that negotiation and approval of a globally-applicable price by Motorola in the U.S. constituted the domestic effects that gave rise to its foreign subsidiaries' claims. *See id.* at *3

1  (reciting allegation that "procurement teams at Motorola based in the U.S. negotiated the prices,
2  conditions, and quantities that governed all Motorola purchases of LCD Panels around the world"
3  and that Motorola's "foreign affiliates issued purchase orders at the price and quantity determined
4  by Motorola in the United States."); *see also Motorola II*, 2015 WL 137907, at *8 (quoting
5  Motorola's summary judgment brief stating that "the approval of a single, artificially inflated LCD
6  panel price in the United States . . . proximately caused all of Motorola's damages, because that
7  same artificially-inflated price applied wherever and whenever a Motorola facility placed a
8  purchase order and paid for a panel.")

9       Dell further notes that, unlike Motorola, it does not contend that "the purchases at issue in
10 the present Motion constitute import commerce." Opp. at 22, n.20. The relevance of this
11 difference is mysterious. The Illinois district court and the Seventh Circuit rejected Motorola's
12 claims based on the domestic effects test, as well as holding that the purchases did not qualify as
13 import commerce. That Dell does not assert an alternative basis for avoiding the FTAIA does
14 nothing to save its claims under the domestic effects test.

15 **III.     CONCLUSION**

16      For the foregoing reasons, Defendants respectfully request that summary judgment be
17 entered under Fed. R. Civ. P. 56 against all of Dell Plaintiffs' antitrust claims to the extent that
18 they are based on alleged overcharges on CRT Monitors Dell Foreign Affiliates ordered that were
19 shipped to them from outside the United States, and that were then shipped by those same Foreign
20 Affiliates to locations outside the United States.

21 Respectfully submitted:  January 23, 2015

By:  */s/ Hojoon Hwang*
MUNGER, TOLLES & OLSON LLP
Hojoon Hwang (SBN 184950)
William D. Temko (SBN 98858)
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone:   (415) 512-4000
Facsimile:    (415) 512-4077
Hojoon.Hwang@mto.com
William.Temko@mto.com

*Attorneys For Defendants LG Electronics, Inc.*

1
2
3
4
5
6
7
8

By: ___/s/ Michael W. Scarborough___
SHEPPARD MULLIN RICHTER & HAMPTON LLP
Gary L. Halling (SBN 66087)
James L. McGinnis (SBN 95788)
Michael W. Scarborough (SBN 203524)
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone:    (415) 434-9100
Facsimile:    (415) 434-3947
*ghalling@sheppardmullin.com*
*jmcginnis@sheppardmullin.com*
*mscarborough@sheppardmullin.com*

9
10
11

*Attorneys for Defendants Samsung SDI America, Inc.; Samsung SDI Co., Ltd.; Samsung SDI (Malaysia) SDN. BHD.; Samsung SDI Mexico S.A. DE C.V.; Samsung SDI Brasil Ltda.; Shenzen Samsung SDI Co., Ltd. and Tianjin Samsung SDI Co., Ltd.*

12
13
14
15
16
17
18

By: ___/s/ Terrence J. Truax___
JENNER&BLOCK LLP
Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
353 North Clark Street
Chicago, IL 60654-3456
Telephone:    (312) 222-9350
Facsimile:    (312) 527-0484
*ttruax@jenner.com*
*mbrody@jenner.com*

19
20
21
22

Brent Caslin (Cal. Bar. No. 198682)
JENNER&BLOCK LLP
633 West Fifth Street, Suite 3600
Los Angeles, CA 90071
Telephone:    (213) 239-5100
Facsimile:    (213) 239-5199
*bcaslin@jenner.com*

23
24

*Attorneys for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc. and, Mitsubishi Electric Visual Solutions America, Inc.*

25
26
27
28

DEFENDANTS' REPLY IN SUPPORT OF JOINT MOTION FOR SUMMARY JUDGMENT BASED UPON PLAINTIFFS' FOREIGN TRANSACTIONS BARRED BY THE FTAIA