Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Consumer Products, LLC, Toshiba America*
*Information Systems, Inc., and Toshiba*
*America Electronic Components, Inc.*

Additional Counsel On Signature Pages

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS<br><br>*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.,* Case No. 3:11-cv-05513<br><br>*Best Buy Co., Inc., et al. v. Technicolor SA, et al.,* Case No. 13-cv-05264<br><br>*Costco Wholesale Corp. v. Hitachi, Ltd., et al.,* Case No. 3:11-cv-06397<br><br>*Interbond Corp. of America v. Hitachi, Ltd., et al.,* Case No. 3:11-cv-06275 | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:    February 6, 2015<br>Time:    10:00 a.m.<br>Before:  Hon. Samuel Conti |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

*Interbond Corp. of America v. Technicolor SA, et al.*, Case No. 3:13-cv-05727

*Office Depot, Inc. v. Hitachi, Ltd., et al.*, Case No. 3:11-cv-06276

*Office Depot, Inc. v. Technicolor SA, et al.*, Case No. 3:13-cv-05726

*Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, Case No. 3:13-cv-00157

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ........................................................................................................1

II.  ARGUMENT ..............................................................................................................1

    A.   The FTAIA Applies To Plaintiffs' State Law Claims ...........................................1

        1.   The FTAIA's Lack Of Express Preemption Is Not
            Determinative ................................................................................................2

        2.   The Doctrine Of Implied Preemption Requires Applying The
            FTAIA To Plaintiffs' State Law Claims........................................................3

        3.   The Harmonization Of State And Federal Competition Law
            Strongly Suggests That The FTAIA Applies To State Laws ......................5

    B.   The FTAIA Bars Plaintiffs' Foreign Commerce Claims.......................................6

        1.   CRT Products Imported By Non-Conspirators Are Not Subject
            To The Import Commerce Exclusion To The FTAIA................................7

        2.   The Domestic Injury Exception Does Not Apply To Plaintiffs'
            Foreign Commerce Claims ........................................................................10

III. CONCLUSION.........................................................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### CASES

*Aguayo v. U.S. Bank*,
653 F.3d 912 (9th Cir. 2011) ...............................................................................2, 3, 4

*Amarel v. Connell*,
248 Cal. Rptr. 276 (Cal. Ct. App. 1988)...........................................................................6

*Animal Science Products, Inc. v. China Minmetals Corp.*,
654 F.3d 462 (3d Cir. 2011) ...........................................................................................8

*Barclays Bank PLC v. Franchise Tax Board of Cal.*,
512 U.S. 298 (1994)........................................................................................................5

*Chae v. SLM Corp.*,
593 F.3d 936 (9th Cir. 2010) ...........................................................................................3

*Cipollone v. Liggett Group, Inc.*,
505 U.S. 504 (1992) ........................................................................................................2

*Coca-Cola Co. v. Harmar Bottling Co.*,
218 S.W.3d 671 (Tex. 2006) ...........................................................................................6

*Costco Wholesale Corp. v. AU Optronics Corp.*,
No. C13-1207RAJ, 2014 WL 4718358 (W.D. Wash. Sept. 22, 2014)................8, 10, 12

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)....................................................................................................1, 2

*CSR Ltd. v. CIGNA Corp.*,
405 F. Supp. 2d 526 (D.N.J. 2005) ..............................................................................4, 5

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
542 U.S. 155 (2004)......................................................................................................4, 6

*Fenerjian v. Nongshim Co.*,
No. 3:13-cv-04115, 2014 WL 5685562 (N.D. Cal. Nov. 4, 2014)...................................8

*Fond du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*,
795 F. Supp. 2d 847 (E.D. Wisc. 2011)......................................................................8, 13

*Global Reins. Corp.-U.S. Branch v. Equitas Ltd.*,
969 N.E.2d 187 (N.Y. 2012)........................................................................................4, 6

*Hartford Fire Ins. v. California*,
509 U.S. 764 (1993)..................................................................................................12, 13

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

ii

*In re Automotive Parts Antitrust Litig.*,
   No. 12-md-02311, 2014 WL 4209588 (E.D. Mich. Aug. 26, 2014) ........................8, 13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   546 F.3d 981 (9th Cir. 2008) ...............................................................................15

*In re Hydrogen Peroxide Antitrust Litig.*,
   702 F. Supp. 2d 548 (E.D. Pa. 2010) ....................................................................6

*In re Intel Corp. Microproc. Antitrust Litig.*,
   476 F. Supp. 2d 452 (D. Del. 2007).................................................................4, 5

*In re Optical Disk Drive Antitrust Litig.*,
   No. 3:13-cv-04991, 2014 WL 3378336 (N.D. Cal. July 10, 2014) ................................4

*In re Potash Antitrust Litig.*,
   667 F. Supp. 2d 907 (N.D. Ill. 2009) ....................................................................4

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   No. 3:07-md-01819, 2010 WL 5477313 (N.D. Cal. Dec. 31, 2010).....................passim

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL No. 1827, 2010 U.S. Dist. LEXIS 65037 (N.D. Cal. June 28, 2010) ....................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   822 F. Supp. 2d 953 (N.D. Cal. 2011).................................................................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL No. 1827, 2012 WL 3763616 (N.D. Cal. Aug. 29, 2012) ....................................8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL No. 1827, 2012 WL 4513866 (N.D. Cal. Oct. 1, 2012)......................................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL No. 1827, 2013 WL 6174683 (N.D. Cal. Nov. 20, 2013) ............................13, 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL No. 1827, 2014 WL 4652126 (N.D. Cal. Sept. 18, 2014) ....................................9

*In re Vitamin C Antitrust Litig.*,
   904 F. Supp. 2d 310 (E.D.N.Y. 2012) ................................................................8, 13

*Japan Line, Ltd. v. Cnty of Los Angeles*,
   441 U.S. 434 (1979)...............................................................................................4

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
   753 F.3d 395 (2d Cir. 2014) ......................................................................10, 11, 15

*Minn-Chem, Inc. v. Agrium, Inc.*,
   683 F.3d 845 (7th Cir. 2012) ..............................................................................8, 13

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*Motorola Mobility LLC v. AU Optronics Corp.*,
  No. 14-8003, 2014 WL 6678622 (7th Cir. Nov. 26, 2014) .............................................1

*Motorola Mobility LLC v. AU Optronics Corp.*,
  No. 14-8003, 2015 WL 137907 (7th Cir. Jan. 12, 2015)...................................1, 7, 12, 15

*Pac. Nw. Venison Producers v. Smitch*,
  20 F.3d 1008 (9th Cir. 1994) ...............................................................................................4, 5

*Rivendell Forest Prods., Ltd. v. Canadian Forest Prods., Ltd.*,
  810 F. Supp. 1116 (D. Colo. 1993)...................................................................................13

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
  608 F. Supp. 2d 1166 (N.D. Cal. 2009).............................................................................9

*United States v. Aluminum Co. of Am.*,
  148 F.2d 416 (2d Cir. 1945) .............................................................................................13

*United States v. Hsiung*,
  758 F.3d 1074 (9th Cir. 2014) ...................................................................................passim

*United States v. LSL Biotechnologies*,
  379 F.3d 672 (9th Cir. 2004) ......................................................................................10, 11

*United States v. Price*,
  361 U.S. 304 (1960).............................................................................................................2

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. VI, cl. 2................................................................................................................1

U.S. Const. art. I, § 8, cl. 3...........................................................................................................4

## STATUTES AND PUBLIC LAWS

Fla. Stat. § 501.201, *et seq.*........................................................................................................6

Fla. Stat. § 542.31........................................................................................................................5, 6

Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a, 15 U.S.C. § 45(a)(3).........passim

Iowa Code § 553.2........................................................................................................................5

Minn. Stat. § 523D.66...................................................................................................................6

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**OTHER AUTHORITIES**

Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 272i1 (2013 ed.)...........................15

H.R. Rep. No. 97-686 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2487 ...................................3

H.R. Rep. No. 97-924 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2501 ...................................2

## I.  INTRODUCTION

Plaintiffs' Foreign Commerce Claims, by definition, involve CRTs that were subject to an elaborate international distribution chain: they were manufactured and sold by alleged conspirators overseas; purchased and incorporated into CRT Products by independent third parties overseas; imported by independent third parties into the United States; and, finally, sold by independent third parties to Plaintiffs in the United States.  Plaintiffs' Opposition raises no genuine issue of material fact because the FTAIA plainly bars these claims:

- The FTAIA limits the reach of state antitrust law to the same extent it limits federal antitrust law, as established by an unbroken line of case law.  Contrary to Plaintiffs' suggestion, state antitrust law may not reach foreign transactions — and potentially wreak havoc on international relations — where federal claims are prohibited.

- The FTAIA's "import commerce exclusion" does not apply because the CRTs in the Foreign Commerce Claims were not imported by the alleged conspirators.

- The FTAIA's "domestic injury exception" does not apply because the attenuated, downstream domestic effects here do not, by any stretch, follow as an "immediate consequence" of the alleged price-fixed sale of the CRTs overseas.

All told, Plaintiffs' Foreign Commerce Claims must be stricken from this case.  The Seventh Circuit's recent decision in *Motorola Mobility LLC v. AU Optronics Corp.*, No. 14-8003, 2014 WL 6678622 (7th Cir. Nov. 26, 2014), *amended by* 2015 WL 137907 (Jan. 12, 2015) — arising in what Plaintiffs concede are the "strikingly similar facts" of the parallel LCD case (Opp'n at 19) — powerfully confirms this required result.  Plaintiffs' claims must be limited to those relating to CRTs that Defendants or their alleged coconspirators imported into the United States or sold in domestic U.S. commerce.

## II.  ARGUMENT

### A.  The FTAIA Applies To Plaintiffs' State Law Claims

"A fundamental principle of the Constitution is that Congress has the power to preempt state law."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (citations omitted); U.S. Const. art. VI, cl. 2.  This is so even where Congress has not recognized or

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

contemplated that federal and state law may conflict. *Crosby*, 530 U.S. at 388. Nevertheless, Plaintiffs argue that because Congress did not expressly preempt state law in the FTAIA, or occupy the field of antitrust law generally, it must have intended to permit each state and U.S. territory to regulate foreign commerce and cartels as much as they pleased. But Plaintiffs' argument misapprehends preemption law. Every court to consider the issue has held that the FTAIA applies to state law claims and Plaintiffs are unable to identify any decision by any federal or state court adopting their view that state law applies extraterritorially beyond the reach of federal antitrust law.

### 1.    The FTAIA's Lack Of Express Preemption Is Not Determinative

Plaintiffs' argument that because Congress did not expressly preempt state law in the FTAIA it must have intended not to preempt state law (Opp'n at 10-11) is incorrect because it would make express preemption determinative, discarding the well-established concepts of field and conflict preemption. *See Aguayo v. U.S. Bank*, 653 F.3d 912, 918 (9th Cir. 2011); *Crosby*, 530 U.S. at 372-73 (citations omitted) (noting that "[e]ven without an express provision for preemption," field and conflict preemption may apply). Moreover, the "failure to provide for preemption expressly may reflect nothing more than the settled character of implied preemption doctrine that courts will dependably apply." *Crosby*, 530 U.S. at 387-88.

Plaintiffs argue that the FTAIA does not preempt state law because Congress referred to state antitrust laws in the Export Trading Company Act of 1982 (the "Export Act") and a different act passed in 2004, but not in the FTAIA. Opp'n at 10-11. Congress's acts in 2004, however, say nothing about its intent in passing the FTAIA 22 years earlier. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 520 (1992) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.") (quoting *United States v. Price*, 361 U.S. 304, 313 (1960)). Similarly, a reference to state antitrust law in the Export Act says nothing about preemption under the FTAIA. These two acts proceeded on different legislative tracks, in separate bills, until they were combined in conference days before passage. *See* H.R. Rep. No. 97-924, at 29-30 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2501, at 2513-14. Furthermore, it is illogical for Plaintiffs to argue both that the FTAIA was

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

passed solely to "encourage exports" (Opp'n at 10) and that Congress meant to "encourage exports" by granting every U.S. state and territory the right to adopt antitrust laws making exporters liable for conduct that Congress had expressly released from liability in the FTAIA.

### 2. The Doctrine Of Implied Preemption Requires Applying The FTAIA To Plaintiffs' State Law Claims

Under the doctrine of implied preemption, state law must yield where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Aguayo*, 653 F.3d at 918. Congress's intent is dispositive in preemption cases and is determined by reviewing a statute as a whole to identify its purposes and intended effects. *Aguayo*, 653 F.3d at 918; *Chae v. SLM Corp.*, 593 F.3d 936, 943 (9th Cir. 2010).

Congress passed the FTAIA to create a "single, objective test" that would serve as a "clear benchmark" as to the scope of U.S. antitrust laws. H.R. Rep. No. 97-686, at 3 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2487, 2487-88. If each state could disregard this test it would frustrate Congress's effort "to more clearly establish when antitrust liability attaches to international business activities." *Id.* at 2492. It would also frustrate the goal of reducing friction with foreign nations due to the extraterritorial application of U.S. law, which had caused "resentment at the apparent effort of the United States to act as the world's competition police officer." *Motorola*, 2015 WL 137907, at *9 (internal quotations omitted). Rather than advancing these goals, Plaintiffs' position would give each state carte blanche to act — and to permit private plaintiffs to act — as the "world's competition police officer." If Plaintiffs' position were correct, then state laws would "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Aguayo*, 653 F.3d at 918.

Plaintiffs do not identify any case law or other authority supporting their theory that state antitrust laws are unfettered by the FTAIA. Opp'n at 11. Conversely, Defendants have cited multiple decisions holding that the FTAIA applies to state law claims and are unaware of a single court that has held otherwise. Mot. at 5, 8 (citing *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 3:07-md-01819, 2010 WL 5477313, at *4 (N.D. Cal.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    Dec. 31, 2010); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 927  (N.D. Ill. 2009); *In re*
2    *Intel Corp. Microproc. Antitrust Litig.*, 476 F. Supp. 2d 452, 457 (D. Del. 2007); *CSR Ltd. v.*
3    *CIGNA Corp.*, 405 F. Supp. 2d 526, 552 (D.N.J. 2005); *Global Reins. Corp.-U.S. Branch v.*
4    *Equitas Ltd.*, 969 N.E.2d 187, 195-96 (N.Y. 2012)); *see also In re Optical Disk Drive*
5    *Antitrust Litig.*, No. 3:13-cv-04991, 2014 WL 3378336, at *3 n.2 (N.D. Cal. July 10, 2014).

6    Despite this unanimous authority, Plaintiffs insist that these court decisions do not
7    "address the plain language of the FTAIA or its legislative history."  Opp'n at 11.  But the
8    "plain language" of a statute matters only for express preemption.  *See Aguayo*, 653 F.3d at
9    918.  Numerous courts have analyzed the FTAIA's legislative history in order to discern
10   congressional intent, including a decision that Defendants cited but Plaintiffs did not address.
11   *CSR*, 405 F. Supp. 2d at 536-37.  As explained above, the FTAIA must preempt inconsistent
12   state laws in order to prevent them from becoming an obstacle to Congress's objectives.

13   Plaintiffs next argue that Defendants have not shown "an actual conflict" between state
14   and foreign laws.  Opp'n at 14.  But if state laws may extend further than the Sherman Act, it
15   would create the precise conflict with foreign law that Congress sought to avoid.  Moreover,
16   if it is unclear whether state antitrust laws apply extraterritorially, such ambiguity must be
17   construed so as "to avoid unreasonable interference with the sovereign authority of other
18   nations." *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 164 (2004).

19   Finally, state antitrust laws do not represent "exercises of traditional state policing
20   authority" (Opp'n at 13) where foreign commerce is involved.  Only Congress may "regulate
21   Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3, and "[f]oreign commerce is
22   pre-eminently a matter of national concern." *Japan Line, Ltd. v. Cnty. of Los Angeles*, 441
23   U.S. 434, 448 (1979)).  As such, "a more extensive constitutional inquiry is required" when
24   construing foreign commerce legislation.  *Id.* at 446.  And where "state regulations affect
25   foreign commerce, additional scrutiny is necessary to determine whether the regulations
26   'may impair uniformity in an area where federal uniformity is essential,' or may implicate
27   'matters of concern to the whole nation . . . such as the potential for international
28   retaliation.'" *Pac. Nw. Venison Producers v. Smitch*, 20 F.3d 1008, 1014 (9th Cir. 1994)

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

(internal citations omitted).  This Court should do as others have done and apply such additional scrutiny when holding that the FTAIA governs state law claims.  *See, e.g.*, *SRAM*, 2010 WL 5477313, at *4; *Intel*, 476 F. Supp. 2d at 457.

To support their argument that Congress deliberately chose not to apply the FTAIA to state law claims, Plaintiffs cite just one, inapposite case involving Congress's foreign commerce.  Opp'n at 12-13 (citing *Barclays Bank PLC v. Franchise Tax Board of Cal.*, 512 U.S. 298, 327 (1994)).  In *Barclays*, the Supreme Court held that Congress "implicitly has *permitted* the States" to use different tax reporting methods than those required by the federal government for foreign reporters.  512 U.S. at 326-27 (emphasis in original).  That holding was based on Congress's repeated consideration and rejection of bills to prevent California's mandatory reporting methods from applying to foreign entities, clearly indicating its intent to tolerate this long-standing practice.  *Id.*  In contrast, Plaintiffs here cite nothing to show that any state has ever applied its laws to conduct that the FTAIA exempts from liability, much less that Congress often considered preempting such state laws but elected not to do so.

### 3. The Harmonization Of State And Federal Competition Law Strongly Suggests That The FTAIA Applies To State Laws

Plaintiffs first argue — without citation to any authority — that harmonization applies only to federal and state antitrust case law, but not to state antitrust statutes themselves. Opp'n at 12.  Plaintiffs ignore, however, that harmonization provisions look to interpretations of federal law in order to ascertain what constitutes a substantive violation of state antitrust statutes.  *See, e.g.*, Iowa Code § 553.2 (stating that Iowa and federal antitrust law are harmonized in order "to achieve uniform application of the state and federal laws prohibiting restraints of economic activity and monopolistic practices"); *CSR*, 405 F. Supp. 2d at 551-52 (holding that the FTAIA barred state law claims due to a harmonization provision).

Plaintiffs next argue that harmonization does not apply where it would override "the clear terms and intent of the state statutes at issue" (Opp'n at 12), and yet Plaintiffs are unable to identify any state antitrust statutes that, by their "clear terms and intent," apply extraterritorially beyond federal antitrust law.  Plaintiffs cite Fla. Stat. § 542.31, but that

1   provision does not even apply to claims brought under Fla. Stat. § 501.201, *et seq.*, the

2   provisions under which Plaintiffs bring suit.  *See, e.g.*, IPPs' Fourth Consol. Am. Compl. ¶

3   282 (N.D. Cal. Jan. 10, 2013), ECF No. 1526.  The only other state statute Plaintiffs cite,

4   Minn. Stat. § 523D.66, merely "removes a defense to suit . . .; it does not create a basis for

5   suit" where an action involves interstate or foreign commerce.  *Cf. Coca-Cola Co. v. Harmar*

6   *Bottling Co.*, 218 S.W.3d 671, 682 (Tex. 2006) (construing a nearly identical Texas statute).

7   Of course, the FTAIA sets forth substantive elements that Plaintiffs must prove to bring their

8   claims, *United States v. Hsiung*, 758 F.3d 1074, 1088 (9th Cir. 2014), not a defense to suit.

9       At bottom, Plaintiffs simply assume — but have not established — that state antitrust

10  laws apply to extraterritorial conduct that Congress released from liability in the FTAIA.

11  And Plaintiffs simply choose to ignore state court decisions holding that the FTAIA limits

12  the reach of state antitrust law.  *E.g., Global Reins.*, 969 N.E.2d at 195-96 (holding that New

13  York law "cannot reach foreign conduct deliberately placed by Congress beyond the

14  Sherman Act's jurisdiction"); *Amarel v. Connell*, 248 Cal. Rptr. 276, 284 (Cal. Ct. App.

15  1988) (holding that the FTAIA applies to California law claims).

16  **B.       The FTAIA Bars Plaintiffs' Foreign Commerce Claims**

17      Plaintiffs concede that the FTAIA "limits the applicability of the Sherman Act to

18  nonimport trade 'unless the domestic effects exception is met.'"  Opp'n at 10 (quoting

19  *Hsiung*, 758 F.3d at 1086); *see also Empagran*, 542 U.S. at 162-63 (noting that Congress

20  used specific language in the FTAIA "deliberately to include commerce that did not involve

21  American exports").  They nevertheless argue — without citing any apposite authority —

22  that U.S. entities are automatically entitled to recover damages.  Opp'n at 15 (arguing that

23  "Defendants' cited cases are distinguishable because all dealt with *foreign* plaintiffs").  But

24  multiple courts have held that U.S. companies' claims were barred by the FTAIA.  *See, e.g.*,

25  *Motorola*, 2015 WL 137907, at *1; *In re Hydrogen Peroxide Antitrust Litig.*, 702 F. Supp. 2d

26  548 (E.D. Pa. 2010).  A plaintiff's nationality simply has no bearing on the FTAIA analysis.

27      Furthermore, the weight of authority is overwhelmingly against Plaintiffs and confirms

28  that the Foreign Commerce Claims do not satisfy the import commerce exclusion or the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   domestic injury exception.  Just as the FTAIA prohibits suits by foreign CRT purchasers, so

2   too does it prohibit suits by downstream indirect purchasers of CRT Products.

3       **1.    CRT Products Imported By Non-Conspirators Are Not Subject To**

4       **The Import Commerce Exclusion To The FTAIA**

5       The import commerce exclusion applies only to products that were directly imported by

6   conspirators.  Mot. at 11-12.  Plaintiffs ignore this rule and argue that where "global cartels

7   target the United States through a combination of direct and indirect import channels" and

8   sell any output into the United States, then all sales are "removed from the ambit of the

9   FTAIA."  Opp'n at 16-17.  But Plaintiffs' cited authorities do not support their position.

10      For example, Plaintiffs repeatedly cite the Seventh Circuit's decision in *Motorola*.

11  Opp'n at 15 n.37, 16 n.39, 20 n.46, 24 n.58.  Yet they fail to note the court's holding that

12  only direct imports by conspirators satisfy the import commerce exclusion, notwithstanding

13  *Motorola*'s argument that the defendants targeted Motorola.  *See Motorola*, 2015 WL

14  137907, at *2 (finding that Motorola imports are not import commerce because "Motorola,

15  rather than the defendants . . . imported these panels").  Circuit Judge Posner, writing for a

16  unanimous panel, held that Motorola could not recover damages for LCD panels sold abroad

17  and later imported by Motorola in finished cellphones, even though it could still recover for

18  LCD panels that had been directly imported by the defendants.  *Id.*  The same result should

19  apply here.  Whether Defendants "targeted" Plaintiffs or the United States is irrelevant.

20      Plaintiffs also fault Defendants for advocating a "narrow interpretation of import

21  commerce" that the DOJ has not endorsed.  Opp'n at 18 & n.43.  But this is the exact reading

22  of import commerce adopted by the Seventh Circuit, which explicitly rejected the broad

23  targeting theory advanced by Plaintiffs here and by the plaintiff and the DOJ in *Motorola*.

24      Similarly, although Plaintiffs cite *Hsiung* to support their argument that a single import

25  transforms all foreign sales into "import commerce" (Opp'n at 16-17), they disregard its

26  actual holding.  Like the Seventh Circuit, the Ninth Circuit in *Hsiung* did not treat imports by

27  non-conspirators as import commerce.  Instead, it held that the import commerce exclusion

28  was satisfied only as to "'transactions that are directly between the [U.S.] plaintiff purchasers

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

and the defendant cartel members,'" and that because the conspirators directly imported price-fixed goods it "need not determine the outer bounds of import trade." *Hsiung*, 758 F.3d at 1090 & n.7 (quoting *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 855 (7th Cir. 2012)). Moreover, the Ninth Circuit expressly declined to adopt the Third Circuit's suggestion in *Animal Science*, in dictum, that the exclusion may be satisfied by conduct directed at U.S. imports but not involving imports by conspirators. *Hsiung*, 758 F.3d at 1090 n.7 (referring to *Animal Science Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469-70 (3d Cir. 2011)).

Plaintiffs' reliance on two other LCD decisions also do not help them, as they involved claims based solely on direct imports by alleged conspirators. *See* Opp'n at 16-18 & nn. 40-44; *Costco Wholesale Corp. v. AU Optronics Corp.*, No. C13-1207RAJ, 2014 WL 4718358, at *3 (W.D. Wash. Sept. 22, 2014); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2012 WL 3763616, at *2 (N.D. Cal. Aug. 29, 2012). Similarly, *In re Vitamin C Antitrust Litigation* involved a motion to dismiss claims brought only by direct purchasers and the Court denied the motion because the "sales contracts provided by the parties show that defendants specifically contracted for the delivery of vitamin C to locations within the U.S." 904 F. Supp. 2d 310, 317 (E.D.N.Y. 2012). Plaintiffs here are indirect purchasers and offer no evidence that the Defendants "specifically contracted for the delivery . . . within the U.S." of any CRTs underlying Plaintiffs' Foreign Commerce Claims.

The courts also denied motions to dismiss — not summary judgment motions — in three other cases Plaintiffs cite because the complaints alleged direct imports by conspirators. *See Fenerjian v. Nongshim Co.*, No. 3:13-cv-04115, 2014 WL 5685562, at *15 (N.D. Cal. Nov. 4, 2014) ("Plaintiffs allege that the Korean Defendants . . . imported the noodles into the United States, and sold them to plaintiffs in the United States."); *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2014 WL 4209588, at *6-7 (E.D. Mich. Aug. 26, 2014) (conspirators allegedly engaged in the "domestic sale of the price-fixed product at issue"); *Fond du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 795 F. Supp. 2d 847, 850 (E.D. Wisc. 2011). Furthermore, to the extent *Fond du Lac* suggests that the exclusion applies to goods not imported by conspirators, it has been abrogated by *Motorola*. 2015 WL 137907, at *2, 6.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    None of these cases hold that plaintiffs may obtain damages for all purchases because
2    some were imported by conspirators.  In essence, Plaintiffs seek to bootstrap the Foreign
3    Commerce Claims onto their direct-import claims, ignoring their burden to produce evidence
4    from which a jury could find that *all* of their claimed damages are legally recoverable.  *See,*
5    *e.g.*, *Motorola*, 2015 WL 137907 (affirming judgment as to FTAIA-barred claims); *In re*
6    *SRAM*, 2010 WL 5477313, at *4 ("If Plaintiffs' arguments were accepted, then non-
7    justiciable claims would become justiciable simply by being combined under the rubric of a
8    single claim."); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166,
9    1184 (N.D. Cal. 2009) (agreeing with multiple courts that have severed actionable from
10   FTAIA-barred claims).  But because the Foreign Commerce Claims do not involve direct
11   imports by alleged conspirators, the import commerce exclusion is inapplicable.

12   The only decision that arguably supports Plaintiffs is based on an erroneous reading of
13   *Hsiung*, which Judge Illston interpreted as applying the exclusion where defendants
14   "targeted" U.S. companies, even though the "defendants never actually manufactured
15   products for importation."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827,
16   2014 WL 4652126, at *2 (N.D. Cal. Sept. 18, 2014).  Both conclusions are incorrect.  First,
17   the Ninth Circuit held that "[t]argeting is not a legal element for import trade under the
18   Sherman Act."  *Hsiung*, 758 F.3d at 1091.  Second, it found that the exclusion applied only
19   because the conspirators directly imported price-fixed panels.  *See id.* at 1091, 1094 ("The
20   evidence . . . demonstrated that the defendants sold hundreds of millions of dollars of price-
21   fixed panels directly into the United States.").  (Prior to *Hsiung*, Judge Illston refused to rely
22   on intent alone because it would lead to an indefensibly "expansive definition of 'import'"
23   that "would potentially sweep in much conduct excluded by the FTAIA."  *In re TFT-LCD*
24   *(Flat Panel) Antitrust Litig.*, MDL No. 1827, 2010 U.S. Dist. LEXIS 65037, at *18-19 (N.D.
25   Cal. June 28, 2010).)  Moreover, Judge Illston did not distinguish between government suits
26   and private damages suits, which require proof that all claimed damages satisfy the FTAIA.

27   Finally, Plaintiffs argue that "Defendants' knowledge and intent" is an open factual
28   issue for trial.  Opp'n at 18-19.  Here again, Plaintiffs' authorities are inapposite.  As noted

above, *Vitamin C* and *Costco* both involved direct purchasers.  And Plaintiffs' citation to *Hsiung* only references defendants' intent to fix prices for panels that they *actually sold* "in the United States."  758 F.3d at 1091.  For the reasons stated above, there are no open factual issues because none of the Foreign Commerce Claims involve direct imports by conspirators.

### 2. The Domestic Injury Exception Does Not Apply To Plaintiffs' Foreign Commerce Claims

Plaintiffs cannot establish that Defendants' conduct created "direct," "substantial" and "reasonably foreseeable" domestic effects that "give[] rise to" Plaintiffs' Foreign Commerce Claims.  15 U.S.C. § 6a.  As to whether the claims involve "direct" effects, Plaintiffs argue that *United States v. LSL Biotechnologies*, 379 F.3d 672 (9th Cir. 2004), is inapplicable.  Opp'n at 22-23.  However, Plaintiffs admitted in a different brief filed the same day that *LSL* is "binding Ninth Circuit precedent" and that an "effect is 'direct' where it 'follows as an immediate consequence of the defendant's activity.'"  *See* DAPs' & IPPs' Opp'n at 4 (N.D. Cal. Dec. 23, 2014), ECF No. 3272-3 (quoting *LSL*, 379 F.3d at 680).  Per *LSL*, the effect must proceed "from one point to another in time or space without deviation or interruption," and cannot "depend[] on . . . uncertain intervening developments."  379 F.3d at 680-81.  The Ninth Circuit has since affirmed this standard, *Hsiung*, 758 F.3d at 1094, even though other circuits have adopted a "less stringent" test: the "reasonably proximate causal nexus."  *See Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 410-11 (2d Cir. 2014).  Under the "immediate consequence" standard, Plaintiffs' Foreign Commerce Claims fail.

All of the Foreign Commerce Claims are necessarily based on *indirect* effects of the alleged cartel, including the pricing decisions of all firms between Defendants and Plaintiffs in the distribution chain.  Mot. at 13-16.  Therefore, any effect on IPPs depends on the independent pricing decisions of DAPs and upstream firms.  In turn, any effect on DAPs depends on the independent pricing decisions of upstream firms and the DAPs' own pricing decisions.  Plaintiffs cannot dispute that such upstream third parties — at least one of which was always located abroad with respect to the Foreign Commerce Claims — made independent, intervening decisions about (1) whether to modify CRTs they purchased, re-sell

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    them or use them to manufacture products, (2) how long to hold them in inventory, (3) how

2    much to charge for CRT Products given market conditions, overhead costs, the costs of other

3    components, and other relevant pricing factors, and (4) where to sell CRT Products

4    (including whether to sell any containing Defendant-made CRTs in the United States) given

5    market realities, the firms' strategic focus, shipping costs, tariffs, anti-dumping duties and

6    other trade barriers or incentives. "[I]t is difficult to assess the impact of a price increase at

7    one level of distribution on prices and profits at a subsequent level." *Motorola*, 2015 WL

8    137907, at *5. Such difficulties only multiply as links are added to the chain.

9        Similarly, even at the final step involving sales to IPPs, Plaintiffs do not dispute that

10   CRT Product price changes are dependent on numerous non-cost factors. Mot. at 14-16. Nor

11   do they deny that any effect necessarily depended on "uncertain intervening" decisions by

12   multiple upstream firms. *LSL*, 379 F.3d at 680-81. Instead, Plaintiffs attempt to collapse the

13   distinct elements of the domestic injury exception into a single test and point to "relevant

14   factors" that courts allegedly consider when analyzing the exception. Opp'n at 19-22. As

15   shown below, these factors are insufficient to bring Plaintiffs' Foreign Commerce Claims

16   within the exception and there is no genuine issue of material fact.

17       ***First***, Plaintiffs assert that "direct injury can proceed through various layers of

18   production and distribution," citing the Second Circuit's decision in *Lotes*, 753 F.3d at 412-

19   13. Opp'n at 21 & n.55. But *Lotes* adopted a "less stringent approach" than the Ninth

20   Circuit, 753 F.3d at 410, and this Court is of course bound to follow the Ninth Circuit. Under

21   *Lotes'* "reasonably proximate causal nexus" test — which Plaintiffs' Foreign Commerce

22   Claims would not satisfy — the focus is on whether a plaintiff's "injury was a *natural* or

23   *probable consequence* of the [conduct]." *Id.* at 412 (emphasis added) ("proximate causation

24   is a notoriously slippery doctrine"). In contrast, the Ninth Circuit's "'*immediate*

25   *consequence*' standard focuses narrowly on a single factor — the spatial and temporal

26   separation between the defendant's conduct and the relevant effect." *Id.* (emphasis added).

27   The district court in *Lotes* applied the immediate consequence test and dismissed the

28   plaintiff's claims because they involved allegations that components were price-fixed and

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

sold abroad, then assembled into finished products by third parties that later imported them. *See id.* at 410, 412. The same result compels summary judgment as to Plaintiffs' Foreign Commerce Claims here, where the immediate consequence test is the standard.

**Second**, Plaintiffs point to three decisions in the LCD actions, arguing that they show that foreign component price-fixing has a "direct, substantial and foreseeable" effect on U.S. finished product prices. Opp'n at 19-20 & nn. 46, 49. As explained above, however, *Costco* involved only direct imports. And *Motorola* merely assumed that such effects existed, but still found that Motorola could not prove that these effects gave rise to its antitrust claims. 2015 WL 137907, at *3. Of note, the Seventh Circuit also applied a more relaxed standard than the Ninth Circuit, yet found that component price-fixing has a "less direct" effect than where a cartel fixes the price of a commodity it directly sells to the U.S. plaintiff. *Id.*

The third decision, *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 822 F. Supp. 2d 953 (N.D. Cal. 2011), is based on a reading of "direct" that the Ninth Circuit has rejected. *Compare* 822 F. Supp. 2d at 964 (permitting indirect purchaser claims under state law because "an effect does not become 'indirect' simply because the American OEMs use a complex manufacturing process," so long as "the nature of the effect does not change in any substantial way"), *with Hsiung*, 758 F.3d at 1093-94 (finding that where components move through various supply chains before being brought here in finished products, there is "a significant question regarding whether the effects were sufficiently direct to uphold a verdict" and declining to apply the exception). If Judge Illston's logic were the law, each state could authorize plaintiffs to sue a component manufacturer located anywhere in the world, simply because a product utilizing the component eventually wound up in the state. Such a rule would "enormously increase the global reach" of U.S. antitrust law, "creating friction with many foreign countries" and "resentment at the apparent effort of the United States [plaintiff] to act as the world's competition police officer, a primary concern motivating the [FTAIA]." *Motorola*, 2015 WL 137907, at *9 (internal quotations omitted).

**Third**, Plaintiffs refer to the "importance" of an "intended" or "targeted" U.S. impact. Opp'n at 20 & n.47. But *Hsiung* mentioned intent only in reference to *Hartford Fire*'s

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

"substantial and intended effects" test, which is "displaced" where the domestic injury exception applies. *Hsiung*, 758 F.3d at 1081-84 (discussing *Hartford Fire Ins. v. California*, 509 U.S. 764 (1993)). (The Seventh Circuit has stated that the *Hartford Fire* test must be met where the import commerce exclusion applies. *Minn-Chem*, 683 F.3d at 855.) *Fond du Lac*, which has been abrogated by *Motorola*, relied on just two, inapposite decisions: (1) *Rivendell Forest Prods., Ltd. v. Canadian Forest Prods., Ltd.*, 810 F. Supp. 1116, 1119 (D. Colo. 1993) (assuming that the exception could be met but dismissing on comity grounds); and (2) *SRAM*, 2010 WL 5477313, at *6-7 (holding only that direct, U.S. purchases met the exception). *Fond du Lac*, 795 F. Supp. 2d at 851-52. The remaining decisions are also inapposite. *See In re Automotive*, 2014 WL 4209588, at *7 (discussing "intended effects" in reference to *Minn-Chem*'s analysis of the separate test adopted in *United States v. Aluminum Co. of Am.*, 148 F.2d 416 (2d Cir. 1945)); *Vitamin C*, 904 F. Supp. 2d at 319 (involving claims limited to goods "that defendants shipped . . . directly to the United States").

**Fourth**, Plaintiffs wrongly state that setting "benchmark" prices or having a high market share meets the exception. Opp'n at 21 & nn.51-52. The "benchmark prices" in *Minn-Chem* involved cartelized, foreign prices of a commodity that the cartel "almost immediately" applied to its sales of the commodity to U.S. purchasers: not component prices set abroad that allegedly influenced prices of products that independent firms built abroad and, after being re-sold in multiple supply chains over a lengthy period of time, were eventually sold by such firms here at prices they independently set. 683 F.3d at 858-59.

Plaintiffs' citation to yet another *LCD* decision, involving claims by Best Buy against certain Toshiba Defendants and others, is off base. In *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827, 2013 WL 6174683, at *5-6 (N.D. Cal. Nov. 20, 2013), a jury found one admitted conspirator liable for participating in an LCD panel conspiracy, but exonerated the Toshiba Defendants. Plaintiffs argue that Judge Illston held that the domestic injury exception applied due to the defendants' 90% market share and direct importation of billions of dollars in goods. Opp'n at 21 n.52. Instead, the jury there unanimously found that, notwithstanding such facts, the conspiracy had no "direct, substantial and reasonably

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    foreseeable effect on trade or commerce in the United States." *In re TFT-LCD*, 2013 WL

2    6174683, at *5-6. Judge Illston referenced imports only because the jury separately found

3    that the direct imports satisfied the "import commerce exclusion" and, consequently, Best

4    Buy also had to prove substantial intended effects as required by *Hartford Fire*. *Id.* at *4-6.

5        **Fifth**, Plaintiffs state that Defendants have conceded the "substantial" and "reasonably

6    foreseeable" elements of the exception. Opp'n at 19 n.45. Defendants have done no such

7    thing. Plaintiffs must prove these elements as to *all* purchases for which they seek damages

8    and cannot meet this burden. For example, ████████████████████████████

9    ███████████████████████████████████████████████████████. Decl.

10   of Lucius B. Lau, dated November 7, 2014, Ex. B at 39 & nn.134-36 (Expert Report of Janet

11   S. Netz, Ph.D., April 15, 2014), ECF No. 3005-8. ████████████████████

12   ███████████████████████████████. This is not a "substantial"

13   effect on the TV's price, but rather is remarkably similar to what Judge Posner described as a

14   "tiny" 1.33% price increase implied by a 20% overcharge on LCD panels in cellphones.

15   *Motorola*, 2015 WL 137907, at *5-6. Moreover, it is not "reasonably foreseeable" that a

16   small change in the cost of a single component (usually accounting for less than half of the

17   component costs, to say nothing of the fully-allocated cost) would be passed through or result

18   in a downstream price increase at a retail store halfway around the world.

19       **Sixth**, and finally, Plaintiffs offer no evidence to suggest that "direct, substantial, and

20   reasonably foreseeable" domestic effects of Defendants' foreign CRT sales "give[] rise to"

21   the Foreign Commerce Claims. Although Plaintiffs contend that the alleged cartel had

22   domestic features like U.S. negotiations, market-monitoring and knowledge that CRTs sold

23   abroad may arrive here (Opp'n at 20-21), they neither argue that such features constitute

24   "effects" on domestic commerce, nor demonstrate that these features increased prices of CRT

25   Products imported by independent firms. At most, this argument suggests that the alleged

26   cartel involved U.S. *conduct*, not U.S. *effects* that gave rise to Plaintiffs' alleged injuries at

27   issue in their Foreign Commerce Claims. Instead, what allegedly caused such harm was "the

28   cartel-engendered price increase in the components and in the price of [CRT Products] that

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  incorporated them [which] occurred entirely in foreign commerce." *Motorola*, 2015 WL

2  137907, at *3. Plaintiffs' purported harm is thus derivative of effects in foreign commerce,

3  not — as the FTAIA requires — any effects in domestic or import commerce. *See id.* at *5.

4       The "gives rise to" prong requires that U.S. effects proximately cause harm giving rise

5  to Plaintiffs' Foreign Commerce Claims — not that foreign harm suffered by foreign

6  purchasers eventually causes domestic effects. *See In re Dynamic Random Access Memory*

7  *(DRAM) Antitrust Litig.*, 546 F.3d 981, 987 (9th Cir. 2008); *see also Lotes*, 753 F.3d at 414

8  (noting that if foreign injury causes U.S. effects the exception does not apply because "the

9  direction of causation runs the wrong way"). Simply put, Plaintiffs have not shown that any

10  U.S. features of the alleged cartel proximately caused the harm allegedly at issue.

11       Plaintiffs next reiterate their contention that the FTAIA was meant to limit only the

12  ability of foreign plaintiffs to sue. Opp'n at 24. But the cases they cite to support this

13  argument are inapposite for the reasons stated previously. And, as noted above, Plaintiffs are

14  incorrect because the FTAIA focuses on "transactions, not on the identity or nationality of

15  the parties." Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 272i1 (2013 ed.).

16       As a last-ditch effort, Plaintiffs argue that the proximate cause inquiry raises "fact

17  issues for trial," Opp'n at 25, citing a decision by Judge Illston in which she refused to grant

18  an appeal of her order denying summary judgment in the Motorola LCD action. *In re TFT-*

19  *LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2012 WL 4513866, at *1 (N.D. Cal. Oct.

20  1, 2012). As this Court is aware, the Seventh Circuit has now confirmed that Judge Illston's

21  summary judgment order was incorrect and affirmed the dismissal of Motorola's claims

22  based on U.S. purchases of cellphones containing LCD panels first sold by the defendants

23  abroad. *Motorola*, 2015 WL 137907. Just as in *Motorola*, Plaintiffs can identify no genuine

24  issue of material fact as to whether their Foreign Commerce Claims arise from any direct,

25  substantial and reasonably foreseeable domestic effect of Defendants' foreign CRT sales.

26  **III.  CONCLUSION**

27       For these reasons, Defendants' motion for summary judgment should be granted and

28  the Court should dismiss Plaintiffs' Foreign Commerce Claims.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

15

Respectfully submitted,

Dated:  January 23, 2015

**WHITE & CASE**LLP

By: /s/ Lucius B. Lau

Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
701 Thirteenth Street, N.W.
Washington, DC  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Defendants Toshiba
Corporation, Toshiba America, Inc.,
Toshiba America Consumer Products,
LLC, Toshiba America Information
Systems, Inc., and Toshiba America
Electronic Components, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

BAKER BOTTS LLP

By:  _/s/ John M. Taladay_____
         JOHN M. TALADAY (*pro hac vice*)
         john.taladay@bakerbotts.com
         JOSEPH OSTOYICH (*pro hac vice*)
         joseph.ostoyich@bakerbotts.com
         ERIK T. KOONS (*pro hac vice*)
         erik.koons@bakerbotts.com
         CHARLES M. MALAISE (*pro hac vice*)
         Charles.malaise@bakerbotts.com
         BAKER BOTTS LLP
         1299 Pennsylvania Avenue, N.W.
         Washington DC 20004-2400
         Telephone:  (202) 639-7700
         Facsimile:  (202) 639-7890


         JON V. SWENSON (SBN 233054)
         jon.swenson@bakerbotts.com
         BAKER BOTTS LLP
         1001 Page Mill Road
         Building One, Suite 200
         Palo Alto, CA 94304
         Telephone:  (650) 739-7500
         Facsimile:  (650) 739-7699
         E-mail:  jon.swenson@bakerbotts.com

         *Attorneys for Defendants Koninklijke Philips
         N.V., Philips Electronics North America
         Corporation, Philips Taiwan Ltd., and
         Philips do Brasil, Ltda.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Jeffrey L. Kessler*
    WINSTON & STRAWN LLP
    Jeffrey L. Kessler (*pro hac vice*)
    A. Paul Victor (*pro hac vice*)
    Aldo A. Badini Cal. Bar No. 257086
    Eva W. Cole (*pro hac vice*)
    Molly M. Donovan (*pro hac vice*)
    200 Park Avenue
    New York, NY 10166
    Telephone:(212) 294-4692
    Facsimile: (212) 294-4700
    Email:   jkessler@winston.com
            abadini@winston.com
            pvictor@winston.com
            ewcole@winston.com
            mmdonovan@winston.com


    WEIL, GOTSHAL & MANGES LLP
    Steven A. Reiss (*pro hac vice*)
    David L. Yohai (*pro hac vice*)
    Adam C. Hemlock (*pro hac vice*)
    767 Fifth Avenue
    New York, NY 10153-0119
    Telephone:(212) 310-8000
    Facsimile: (212) 310-8007
    Email:   steven.reiss@weil.com
            david.yohai@weil.com
            adam.hemlock@weil.com

    *Attorneys for Defendants Panasonic*
    *Corporation (f/k/a Matsushita Electric*
    *Industrial Co., Ltd.), Panasonic Corporation*
    *of North America, and MT Picture Display*
    *Co., Ltd.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Michael W. Scarborough*

SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Gary L. Halling, Cal. Bar No. 66087
James L. McGinnis, Cal. Bar No. 95788
Michael W. Scarborough, Cal. Bar No.
203524
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111-4109
Telephone:(415) 434-9100
Facsimile: (415) 434-3947
E-mail:  ghalling@sheppardmullin.com
           jmcginnis@sheppardmullin.com
           mscarborough@sheppardmullin.com

*Attorneys for Defendants Samsung SDI*
*America, Inc.; Samsung SDI Co., Ltd.;*
*Samsung SDI (Malaysia) SDN. BHD.;*
*Samsung SDI Mexico S.A. DE C.V.; Samsung*
*SDI Brasil Ltda.; Shenzen Samsung SDI Co.,*
*Ltd. and Tianjin Samsung SDI Co., Ltd.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Eliot A. Adelson*
Eliot A. Adelson (SBN 205284)
James Maxwell Cooper (SBN 284054)
**KIRKLAND & ELLIS LLP**
555 California Street, 27th Floor
San Francisco, California 94104
Telephone:      (415) 439-1400
Facsimile:       (415) 439-1500
E-mail: eadelson@kirkland.com
E-mail: max.cooper@kirkland.com

James H. Mutchnik, P.C. (*pro hac vice*)
Kate Wheaton (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:      (312) 862-2200

*Attorneys for Defendants Hitachi, Ltd.,*
*Hitachi Displays, Ltd. (n/k/a Japan Display*
*Inc.), Hitachi Asia, Ltd., Hitachi America,*
*Ltd., and Hitachi Electronic Devices (USA),*
*Inc.*

By: */s/ Kathy L. Osborn*
FAEGRE BAKER DANIELS LLP
Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Calvin L. Litsey (SBN 289659)
Faegre Baker Daniels LLP
1950 University Avenue, Suite 450
East Palo Alto, CA 94303-2279
Telephone: (650) 324-6700
Facsimile: (650) 324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  By: */s/ Terrence J. Truax*
2      JENNER&BLOCK LLP
3      Terrence J. Truax (*pro hac vice*)
       Michael T. Brody (*pro hac vice*)
4      353 North Clark Street
       Chicago, Illinois 60654-3456
5      Telephone: (312) 222-9350
       Facsimile: (312) 527-0484
6      ttruax@jenner.com
7      mbrody@jenner.com
8
       Brent Caslin (Cal. Bar. No. 198682)
9      JENNER&BLOCK LLP
       633 West Fifth Street, Suite 3600
10     Los Angeles, California 90071
       Telephone: (213) 239-5100
11
       Facsimile: (213) 239-5199
12     bcaslin@jenner.com
13
14     *Attorneys for Defendants Mitsubishi Electric*
       *Corporation, Mitsubishi Electric US, Inc.*
15     *and, Mitsubishi Electric Visual Solutions*
       *America, Inc.*
16
17
18  By: */s/ Hojoon Hwang*
19     MUNGER, TOLLES & OLSON LLP
       Hojoon Hwang (SBN 184950)
20     William D. Temko (SBN 98858)
       560 Mission Street, 27th Floor
21     San Francisco, CA 94105-2907
       Telephone:(415) 512-4000
22     Facsimile: (415) 512-4077
23     *Hojoon.Hwang@mto.com*
       *William.Temko@mto.com*
24
25     *Attorneys for Defendants LG Electronics, Inc.*
       *and LG Electronics U.S.A., Inc.*
26
27
28

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT ON PLAINTIFFS' INDIRECT PURCHASER CLAIMS BASED ON FOREIGN SALES
Case No. 07-5944 SC, MDL No. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Nathan Lane, III*
    Mark Dosker
    Nathan Lane, III
    275 Battery Street, Suite 2600
    San Francisco, CA  94111
    Telephone:  415.954.0200
    Facsimile:  415.393.9887
    Email:  mark.dosker@squirepb.com
    nathan.lane@squirepb.com

    Donald A. Wall (*Pro Hac Vice*)
    SQUIRE PATTON BOGGS (US) LLP
    1 East Washington Street, Suite 2700
    Phoenix, Arizona 85004
    Telephone:  602.528.4000
    Facsimile:  602.253.8129
    Email:  donald.wall@squirepb.com

    *Attorneys for Defendant Technologies*
    *Displays Americas LLC with respect to all*
    *cases except Office Depot, Inc. v.*
    *Technicolor SA, et al. and Sears, Roebuck*
    *and Co., et al v. Technicolor SA, et al.*

CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP

By: */s/  Jeffrey I. Zuckerman*
   Jeffrey I. Zuckerman (Pro Hac Vice)
   Ellen Tobin (Pro Hac Vice)
   101 Park Avenue
   New York, New York 10178
   Telephone: 212.696.6000
   Facsimile: 212.697.1559
   Email:  jzuckerman@curtis.com
   etobin@curtis.com

   Arthur Gaus (SBN 289560)
   DILLINGHAM & MURPHY, LLP
   601 California Street, Suite 1900
   San Francisco, California 94108
   Telephone: 415.397.2700
   Facsimile: 415.397-3300
   Email: asg@dillinghammurphy.com

   *Attorneys for Defendant Technologies
   Displays Americas LLC with respect to
   Office Depot, Inc. v. Technicolor SA, et al.
   and Sears, Roebuck and Co. et al. v.
   Technicolor SA, et al.*

1

## **CERTIFICATE OF SERVICE**

2      On  January  23,  2015,  I  caused  a  copy  of  "DEFENDANTS'  REPLY

3   MEMORANDUM  IN  SUPPORT  OF  MOTION  FOR  PARTIAL  SUMMARY

4   JUDGMENT  ON  PLAINTIFFS'  INDIRECT  PURCHASER  CLAIMS  BASED  ON

5   FOREIGN  SALES"  to  be  electronically  filed  via  the  Court's  Electronic  Case  Filing

6   System, which constitutes service in this action pursuant to the Court's order of September

7   29, 2008.

8

9                                              */s/ Lucius B. Lau*

10                                             Lucius B. Lau

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005