JEROME C. ROTH (State Bar No. 159483)
jerome.roth@mto.com
HOJOON HWANG (State Bar No. 184950)
hojoon.hwang@mto.com
MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

WILLIAM D. TEMKO (State Bar No. 98858)
william.temko@mto.com
MUNGER, TOLLES & OLSON LLP
355 S. Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

*Attorneys for Defendants LG Electronics, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 3:07-CV-05944-SC<br><br>MDL No. 1917 |
| This Document Related to:<br><br>DIRECT PURCHASER ACTIONS<br><br>*Best Buy Co., et al. v. Hitachi, LTD, et al.*, Individual Case No. 11-cv-05513<br><br>*Alfred H. Siegel, As Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd, et al.,* Individual Case No. 11-cv-05502<br><br>*CompuCom Systems, Inc. v. Hitachi, Ltd., et al.,* Individual Case No. 11-cv-06396<br><br>*Costco Wholesale Corporation v. Hitachi, Ltd., et al.,* Individual Case No. 11-cv-06397<br><br>*Dell Inc. et al. v. Hitachi, Ltd.*, Individual Case No. 13-cv-02171 | **DEFENDANT LG ELECTRONICS, INC.'S REPLY TO PLAINTIFFS' JOINT OPPOSITION [ECF NO. 3279] TO LG ELECTRONICS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON STANDING GROUNDS [ECF NO. 3053]**<br><br>[Declaration of Hojoon Hwang filed concurrently herewith]<br><br>Judge:    Hon. Samuel Conti<br>Date:     February 6, 2015<br>Time:     10:00 AM<br>Crtrm.:   1, 17th Floor |

1  *Electrograph Systems, Inc. et al. v. Hitachi, Ltd.,* Individual Case No. 11-cv-01656

2

3  *Interbond Corp. of America d/b/a BrandsMart USA v. Hitachi, Ltd.,* Individual Case No. 11-06275

4

5  *Office Depot, Inc. v. Hitachi, Ltd.,* Individual Case No. 11-cv-06276

6  *P.C. Richard & Son Long Island Corp. et al. v. Hitachi, Ltd.,* Individual Case No. 12-cv-

7  02648

8  *Sears, Roebuck and Co. and Kmart Corp v. Chunghwa Picture Tubes, Ltd., et al.,*

9  Individual Case No. 11-cv-05514

10  *Target Corp. v. Chunghwa Picture Tubes, Ltd., et. al.,* Individual Case No. 11-cv-05514

11

12  *Schultze Agency Services, LLC on behalf of Tweeter OPCO, LLC, et al., v. Technicolor SA, et al.,* Individual Case No. 13-cv-05668

13

14  *Tech Data Corp., et al. v. Hitachi, LTD., et al.,* Individual Case No. 13-cv-00151

15  *ViewSonic Corp. v. Chunghwa Picture Tubes, Ltd.,* Individual Case No. 14-02510

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.  INTRODUCTION

This Motion seeks summary judgment on Plaintiffs' Sherman Act damage claims based on purchases of TVs or monitors from LG Electronics, Inc. ("LGE") or its subsidiaries, including LG Electronics USA, Inc. ("LGE USA"), after July 1, 2001, when LGE stopped manufacturing or selling CRTs.  Plaintiffs do not dispute that, as of that date, LGE divested its CRT assets to a distinct corporation, LG Phillips Displays BV ("LPD"), in which LGE held a 50 percent, minus one share, shareholding interest.  As a result, Plaintiffs' purchases of CRTs from LGE or its subsidiaries are indirect – and Plaintiffs lack standing to assert Sherman Act damages claims based on such purchases – unless Plaintiffs can establish that one of the exceptions to the bar on indirect purchaser standing under *Illinois Brick* applies to such purchases.

Plaintiffs advance two arguments in response: (1) that LGE had "continued its participation in the conspiracy through LPD" (Opp'n[1] at 1); and (2) that the "ownership and control" exception applies by virtue of LGE's alleged ownership and control of LPD.  Neither contention is supportable based on the undisputed facts and the law.

First, the undisputed evidence and settled law refute Plaintiffs' contention that LGE continued to participate in the conspiracy.  Plaintiffs' factual showing in this respect boils down to the proposition that LGE employees who participated in competitor meetings before LGE divested its CRT assets – including those very employees – continued to participate in the meetings *as employees of LPD*.  But Plaintiffs do not address the bedrock principle of American law that a corporation is not responsible for the anticompetitive acts of another, even one that is wholly owned, unless it directed those activities or constitutes an alter ego of the offending corporation.  Regardless of whether there was an ownership and control relationship between LGE and LPD post-2001, the undisputed evidence simply does not create a trial issue on this point, and Plaintiffs' extensive reliance on the decision of the European Commission ("EC") applying an entirely different legal standard cannot change that conclusion.

---

[1] **"Opp'n"** refers to the Opposition to Defendant LG Electronics, Inc.'s Motion for Partial Summary Judgment on Standing Grounds, Dec. 23, 2014, ECF No. 3279.

1 Second, the Court should decline Plaintiffs' invitation to expand the ownership and control
2 exception outside the limited context in which it applies – where the conspiring seller of the price-
3 fixed product owns the direct purchaser. Such an expansion is not supported by the cases or the
4 rationale for which the Ninth Circuit recognized the exception in the first place. A conspirator that
5 controls the direct purchaser can exercise that control to prevent the direct purchaser from seeking
6 remedies for antitrust violations. In the reverse situation, where the direct purchaser owns or
7 controls the conspirator, the conspirator cannot control the direct purchaser's decision whether to
8 bring a claim. Moreover, even if the exception could be applied where the direct purchaser owns
9 or controls the conspiring seller, Plaintiffs have not demonstrated that trial issues exist with
10 respect to LGE's alleged ownership and control of LPD.

**II.     ARGUMENT**

   **A.     Plaintiffs Fail To Demonstrate A Triable Issue As To Whether LGE Participated In Conspiratorial Activities After It Divested Its CRT Assets In July 2001**

14 Plaintiffs first attempt to muddy the waters by claiming that LGE continued to participate
15 in the conspiracy. Opp'n at 4-6. Upon examination, however, *all of* Plaintiffs' purported
16 "mountain of evidence" supposedly confirming this "participation" amounts to evidence showing
17 that former LGE employees who participated in the competitor meetings *before* the formation of
18 LPD continued to do so afterwards "in their new roles" as LPD employees. Opp'n at 5-6. Each of
19 the documents and testimony compiled by Plaintiffs[2] relates to LPD's, not LGE's, participation in
20 the meetings. While a few of the documents contain stray references to "LG" or "LGE," it is
21 unmistakable from the overall contents of the documents that the company participating in the
22 competitor meeting was LPD.[3] Indeed, one of the exhibits relied on by Plaintiffs actually show

---

[2] *See* Decl. of Jason C. Murray In Support Of Pls' Joint Opp'n to LGE Defs' Mot. for Partial Summ. J. On Standing Grounds ("Murray Decl.") Appendix B.

[3] For example, Murray Decl. Ex. 45 lists one of the attending companies as "LG" (*see* CHU00031150.01E) but in the body of the memorandum clarifies that the participant is actually "LG-Phillips" (CHU00031151.01E). Likewise, Murray Decl. Ex 58 refers to purported statements at the meeting by "LG" but also reflects that the "compan[y] visited" was "LPD(I)," i.e., LPD
Continued

LPD discussing with its competitors the prices to be charged to LGE as a CRT *customer* and intended *victim* of the conspiracy. Murray Decl. Appendix B at 5 & Ex. 62 (CHU00014210.02E-14211E) (discussing proposed price increase and noting that "LPD claimed that LGE had already accepted the request to increase the price in November."). Thus, while Plaintiffs misleadingly claim that this compilation "includes" evidence of former LGE employees continuing to participate in the meetings "in their new roles at LPD," that is *all* that this evidence shows. Opp'n at 6.

Plaintiffs' attempt to conflate LPD's conduct with LGE's violates the "general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). This is no less true for a corporation owning a minority interest in another company.

There are only two circumstances under which a parent company can be held liable for a subsidiary's antitrust violations: (1) if the parent "performed acts sufficient to create liability[] or actively influenced [the subsidiary] in its violations"; or (2) the subsidiary is an alter ego or agent of the parent. *See H.J., Inc. v. Int'l Tel. & Tel. Corp.*, 867 F.2d 1531, 1549 (8th Cir. 1989). Plaintiffs have not adduced any evidence sufficient to create a triable issue on these possible exceptions. They have no evidence that any LGE employee participated or directed LPD's activities or that corporate formalities were ignored as between LGE and LPD. Indeed, recognizing the absence of such evidence, Plaintiffs long ago waived these arguments by informing the court that they "do not assert" that LGE is "liable under a vicarious liability theory based on [its] ownership of LPD." *See* DAPs' Reply Br. Supp. Objections to Special Master's R&R Re: Philips' and LG's Mot. to Dismiss DAPs' Compls., July 26, 2013, ECF. No. 1800, at 6 n.4.

---

Indonesia. *See* CHU00020660.01E. The cited testimony of Pil Jae Lee and Jin Kang Jung also relates to the period after each left LGE and began working for LPD. *See, e.g.*, Murray Decl. Ex. 63-65.

Lacking any record evidence, Plaintiffs rely heavily on snippets of the decision of the EC, recited in the opinion of the Delaware Chancery Court in *Vichi v. Koninklijke Philips Electronics, N.V.*, 85 A.3d 725 (2014). But neither decision has *any* bearing on the issues in this Motion. The EC's conclusion that LGE and Philips are liable for the conduct of LPD under European law is based on a view of European Union law that squarely contradicts *Bestfoods* and its progeny. Recognizing this, the *Vichi* court specially noted that "the EC decision did *not* find that" the shareholders of LPD "*had actual knowledge of LPD's price fixing activities*," but simply "imputed to Philips N.V. both knowledge of LPD's illegal conduct and liability for LPD's price fixing" based on European law as the EC interpreted it. *See* 85 A.3d at 783 (emphasis added). Accordingly, the *Vichi* court concluded that "[t]he EC Decision *is not preclusive . . . as to Philips N.V.'s knowledge* of or participation in th[e] CRT cartel, because the extent of the EC's findings in that regard are not clear and, more importantly, *direct involvement or knowledge is not a prerequisite to holding a parent company liable for the anticompetitive acts of its subsidiar[ies] under EU law*." *Id.* at 783-84 (emphasis added). By contrast, "American law does not collapse parents and subsidiaries" but insists "that corporate formalities should be respected unless one of the recognized justifications for piercing the veil, or otherwise deeming a parent and subsidiary one, is present." *Motorola Mobility LLC v. AU Optronics Corp.*, No. 14-8003, 2015 WL 137907, at *4 (7th Cir. Jan. 12, 2015).[4]

Moreover, the EC did not cite any *evidence* of LGE's purported knowledge of LPD's activities but simply speculated that the "parent companies *must have known* about the continuing participation of" LPD. *See* Opp'n at 5, quoting *Vichi*, 85 A.3d at 753 (emphasis added). Whatever weight such speculation may carry under European law, it is not sufficient to create a triable issue under Federal Rule of Civil Procedure 56. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (no triable issue where the evidence "show[s] [no] more than the mere

---

[4] For these reasons, LGE objects to the use of the EC decision and the *Vichi* decision on the question of LGE's knowledge of LPD's collusive activities on relevance grounds. Fed. R. Evid. 402. LGE further objects to Plaintiffs' use of the decisions on the ground that they are inadmissible hearsay. Fed. R. Evid. 802.

existence of a scintilla of evidence" or "some 'metaphysical doubt' as to the material facts at issue") (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### B. The Ownership and Control Exception Does Not Apply

#### 1. Direct Purchaser's Ownership Or Control Of A Conspiring Seller Does Not Support Standing

In evaluating Plaintiffs' attempt to turn the ownership and control exception on its head, it is useful to go back to the origins of the exception. In *Royal Printing Co. v. Kimberly-Clark Corp.*, the Ninth Circuit held that the bar on indirect purchaser standing set forth in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) does not apply "when the direct purchaser is a subsidiary or a division of a co-conspirator." 621 F.2d 323, 326 (9th Cir. 1980). The court did so because, "[e]ven if the pricing decisions of such a subsidiary or division are necessarily determined by market forces, *its litigation decisions will usually be subject to parental control*" and the "co-conspirator parent will forbid its subsidiary or division to bring a lawsuit." *Id.* (emphasis added).[5]

Thus, the exception was born of a concern that the wrongdoer would prevent – through exercise of parental control – the direct purchaser from suing to remedy an antitrust violation. When the ownership and control relationship reverses direction, none of those concerns is present. The direct purchaser has control over the conspiring seller, rather than vice versa, and the conspirator does not have the ability to control the "litigation decisions" of the parent direct

---

[5] LGE submits that *Royal Printing* was wrongly decided in any event. As the Ninth Circuit acknowledged in the very opinion, where the indirect purchaser pays a competitively-determined price, rather than a price fixed by the conspirators, the rationale articulated by the Supreme Court in *Illinois Brick* for an exception does not apply. *See Royal Printing*, 621 F.2d at 326 n.4. The court acknowledged that, in such circumstances, "footnote 16" of *Illinois Brick* which first suggested an exception, "is inapplicable." *Id.* The court further recognized that the exception that *Illinois Brick* suggested relied on relationships and arrangement that "circumvent(s) complex market interactions." *Id.* Where the plaintiff purchased a competitively-priced finished product incorporating the price-fixed good as a mere component, all of the "complex market interactions" are in play. Thus, the exception adopted by the *Royal Printing* court is admittedly contrary to *Illinois Brick*. The court need not reach this issue in order to grant this Motion because Plaintiffs' claims at issue are not covered by *Royal Printing* in any event. Nonetheless, LGE expressly reserves its objection to *Royal Printing* as contrary to and unsupported by the Supreme Court's decision in *Illinois Brick*.

1  purchaser and cannot "forbid" the parent from "bring[ing] a lawsuit." The concern that mere
2  affinity between the two entities having some relationship with one another would prevent a
3  lawsuit cannot support the application of the exception. As the Ninth Circuit clarified in *In re*
4  *ATM Fee Antitrust Litigation,* standing exists based on the unlikelihood of litigation only if the
5  "lack of a realistic possibility of suit" exists "because of the seller . . . prohibiting the direct
6  purchasers . . . from suing through its ownership or control." 686 F.3d 741, 757 (9th Cir. 2012);
7  *see also* Opp'n at 18 (acknowledging that, under *ATM Fee*, the "realistic possibility of suit"
8  inquiry is "not a separate exception").

9        LGE's own history with LPD confirms the distinction between the directions of ownership
10 or control. LGE twice threatened to sue LPD, once over the latter's withholding of certain rebates
11 to which LGE was entitled, and again over the use of the "LG" trademark without paying
12 royalties. *See* Declaration of Hojoon Hwang In Support of LGE's Reply to Pls' Opp'n to LGE's
13 Mot. for Partial Summ. J. on Standing Grounds ("Hwang Decl.") Ex. 10 (Na Deposition 183:9-
14 188:13). LGE's "legal team [was] prepared to go to legal action" against LPD, which agreed to
15 pay the rebate under threat of litigation and was also forced to stop using the LG logo and brand to
16 avoid the lawsuit. *Id.* at 188:19-25. Although these disputes were resolved pre-filing by LPD's
17 acquiescing to LGE's demands, they illustrate that LPD could not exercise control over LGE to
18 stop LGE from bringing a claim.

19       Moreover, contrary to Plaintiffs' claim, the case law also does not support this expansion.
20 Judge Illston's decision in the *LCD* case stands as the lone decision that expressly held that the
21 exception can apply where the direct purchaser owns or controls the conspiring seller. *See In re*
22 *TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2012 WL 5869588 (N.D. Cal. Nov. 19,
23 2012). The court did so on the ground that the *ATM Fee* court "analyz[ed] whether direct
24 purchaser bank defendants owned/controlled seller ATM Network/STAR." *Id.* *3. But the
25 express holding of *ATM Fees* is quite different, and the Ninth Circuit clearly "decline[d] to extend
26 the exception noted in *Royal Printing* and *Freeman* to situations where the seller does not own or
27 control the direct purchasers." 686 F.3d at 757. This Court should be guided by the Ninth
28

Circuit's holding and decline to follow the *LCD* decision, particularly given that the original rationale for the exception does not apply in the reverse situation, as discussed above.[6]

### 2. The Ownership And Control Exception Does Not Apply Regardless Of Whether LGE Withdrew From The Alleged Conspiracy

Plaintiffs also argue that LGE's own participation in the alleged conspiracy prior to the formation of LPD supports their standing because LGE failed to effectively withdraw from the conspiracy. This argument fails because LGE has demonstrated that it withdrew from the conspiracy upon formation of LPD, as set forth in LGE's Motion for Partial Summary Judgment on Withdrawal Grounds (ECF 3086). Moreover, even assuming that LGE did not withdraw on July 1, 2001, and even if the exception applied to a direct purchaser's ownership or control of the conspirator, conferring standing on Plaintiffs on that basis would still require an unwarranted expansion of the ownership and control exception, which the Court should decline.

Plaintiffs' theory appears to be that, if LGE did not effectively withdraw, LGE would remain a co-conspirator for purposes of the exception. However, the critical and undisputed fact is that, withdrawal or no withdrawal, LGE did not sell any CRTs after July 1, 2001. Instead, it sold TVs or monitors incorporating allegedly price-fixed CRTs at competitive prices. Thus, LGE was the direct purchaser of the CRTs and not a conspiring *seller*, and, as a result, Plaintiffs did not purchase any price-fixed products directly from a conspiring seller.

*Royal Printing* and its progeny have never been applied to the competitive sales of downstream products by an entity who did not manufacture or sell the price-fixed product but retains the label "conspirator" solely based on its past sales of the product and a failure to establish withdrawal. As the Supreme Court stated in *Illinois Brick*, any exceptions must be limited to situations where "the interaction of supply and demand" and "market forces have been superseded." 431 U.S. at 736 & n.16. When the alleged co-conspirator is not a seller of the price-

---

[6] In the interest of brevity, LGE joins in and incorporates by reference the analysis of the case law presented in the SDI Defendants' Motion for Partial Summary Judgment for Lack of Standing as to Direct Purchase Plaintiffs' Sherman Act Damage Claims Based on CRT Product Purchases From Samsung Electronics (ECF No. 2983) and the reply papers in support of that motion, rather than repeating the analysis in full here.

1  fixed good but of downstream products whose prices are competitively determined, market forces
2  are fully operative.  Indeed, the evidence is undisputed that LGE negotiated for lower CRT prices
3  from LPD and other sellers, once it became solely a purchaser of CRTs on July 1, 2001.  *See*
4  LGE's Mot. for Partial Summ. J. on Withdrawal Grounds (ECF 3086) at 5; LGE's Reply In
5  Support of Mot. for Partial Summ. J. on Withdrawal Grounds at 2-4.  In these circumstances, the
6  Court should heed the guidance that "[t]he possibility of allowing an exception, even in rather
7  meritorious circumstances, would undermine the rule" of *Illinois Brick*.  *ATM Fees* 686 F.3d at
8  757 (*quoting Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 216 (1990)).

### 3.     LGE's Involvement In LPD Does Not Show Ownership Or Control

10      Plaintiffs do not dispute that LGE owned 50 percent minus one share of LPD and did not
11 appoint a majority of LPD's Supervisory Board ("SVB").  Plaintiffs also concede that "minority
12 shareholding or board membership supports the existence of a parental control relationship when
13 found *in combination with other factors* demonstrating" control or the "power to manage."  Opp'n
14 at 19.  The evidence Plaintiffs cite, however, is lacking in indicia of such control.

15      Although Plaintiffs provide a lengthy recitation of evidence that the SVB, of which LGE
16 did not appoint a majority in any event, had various responsibilities for supervising LPD's
17 management, this evidence fails to show that the SVB had the actual "power to manage."
18 Plaintiffs cite the provision of the joint venture agreement that describes the SVB's function as
19 "[t]he responsibility for supervising the **management, direction and control** of JVC."  Opp'n at
20 10 (emphasis in original).  The bolded emphasis on "management, direction and control" is
21 apparently intended to indicate that such functions were the SVB's responsibility.  But the key
22 phrase, de-emphasized by Plaintiffs, is "for supervising."  The SVB was responsible "for
23 supervising" LPD management who would exercise management, direction and control.  *See*
24 Murray Decl. Ex.5 at LGE0000130 (providing that the "JV Group Management Team will be
25 responsible for the control of the day-to-day management of JV, including control and
26 implementation of all matters set forth" in the budget, which is reviewed and approved by the
27 SVB).
28

Plaintiffs similarly lack evidence that the SVB participated in pricing or output decisions. The evidence cited by Plaintiffs on that issue consists entirely of the SVB's admonition to LPD management "to try to increase the sales to" its customers, and the fact that LPD (not the SVB) adjusted its budget in response to that guidance. Opp'n at 11. A generalized exhortation to "increase sales," which one would expect any advisory board of a struggling company to make, can hardly be characterized as management control or involvement in pricing decisions.

Indeed, some of the evidence Plaintiffs cite only serves to demonstrate the lack of a normal parent subsidiary relationship between LGE and LPD. In the financial statements that Plaintiffs cite for the proposition that LPD was an "LGE Company" during the relevant period (Opp'n at 8), LPD is separately listed as an "equity-method investee" and not as a "[d]omestic" or "[o]verseas subsidiar[y]" such as LGE USA. *See, e.g.*, Murray Decl. Ex. 8 (*compare* LGE00093827 *with* LGE00093824-26), Ex. 9 (LGE00092549), Ex. (10 LGE00092633), Ex. 11 (LGE00092682). The evidence thus confirms that LGE did not treat LPD as a subsidiary for which it reported consolidated financial results, but *as an investment*.

Finally, the arm's length dealings between the two companies further confirm the absence of ownership or control relationship. Outside of a parent subsidiary relationship, establishing ownership and control requires a showing of "such functional economic or other unity between the direct purchaser and either the defendant or the indirect purchaser that *there effectively has been only one sale*." *E.g., Howard Hess Dental Labs. Inc. v. Dentsply Int'l., Inc.,* 424 F.3d 363, 371-72 (3d Cir. 2005) (emphasis added). Here, the evidence is undisputed that LGE negotiated at arm's length with LPD and bargained to obtain lower prices. *See* Declaration of Duk Chul Ryu In Support of LGE's Mot. for Partial Summ. J. on Withdrawal Grounds, Nov. 6, 2014, ECF No. 3095, ¶¶ 4-5.

Thus, even if LGE's purported ownership or control of LPD were relevant to the analysis, Plaintiffs have not raised genuine dispute or triable issue on that question.

### 4. There Is No Triable Issue With Respect To Ownership Or Control After LPD's Bankruptcy

Finally, regardless of how the Court resolves the various issues addressed above, summary judgment should be granted with respect to Plaintiffs' purchases from LGE or its subsidiaries after January 2006, when LPD declared bankruptcy. As previously explained in a prior motion to dismiss,[7] LPD declared bankruptcy in January 2006, at which point LPD came under the complete control of a bankruptcy trustee. Declaration of Cathleen H. Hartge In Support of LGE's Reply In Support of Mot. for Partial Summ. J. on Withdrawal Grounds Ex. D (LPD's bankruptcy judgment, rendered in January 2006) at 5. At that point, LGE unquestionably could not exercise any control over LPD's management, which was vested in the trustee. Accordingly, any ownership or control that may have previously existed was extinguished by LPD's bankruptcy.

## III. CONCLUSION

For the foregoing reasons, the Court should enter summary judgment on Plaintiffs' claims based on purchases of TVs or monitors from LGE after July 1, 2001.

DATED: January 23, 2015            MUNGER, TOLLES & OLSON LLP
                                                                                         JEROME C. ROTH
                                                                                         HOJOON HWANG
                                                                                         MIRIAM KIM
                                                                                         WILLIAM D. TEMKO

                                                                By:     */s/ Hojoon Hwang*
                                                                                            HOJOON HWANG

                                                                   Attorneys for Defendants LG ELECTRONICS, INC.

---

[7] *See* Philips' Mot. to Dismiss & for J. on the Pleadings as to Plaintiffs' Claims, Aug 17, 2012, ECF. No. 1319, at 4; Joinder of LG Defs in Mot. to Dismiss Filed by Philips Defs, Aug. 20, 2012, ECF No. 1320, at 1-2.