1  Jon V. Swenson (SBN 233054)
   BAKER BOTTS LLP
2  620 Hansen Way
   Palo Alto, CA 94304
3  Telephone: (650) 739-7500
   Facsimile: (650) 739-7699
4  Email: jon.swenson@bakerbotts.com

5
   John M. Taladay (*pro hac vice*)
6  Erik T. Koons (*pro hac vice*)
   Charles M. Malaise (*pro hac vice*)
7  BAKER BOTTS LLP
   1299 Pennsylvania Ave., N.W.
8  Washington, DC 20004-2400
   Telephone: (202) 639-7700
9  Facsimile: (202) 639-7890
   Email: john.taladay@bakerbotts.com
10 Email: erik.koons@bakerbotts.com
   Email: charles.malaise@bakerbotts.com
11

12 *Attorneys for Defendants Philips Electronics North*
   *America Corporation, Philips Taiwan Ltd., and Philips*
13 *do Brasil Ltda.*

14                    UNITED STATES DISTRICT COURT

15                    NORTHERN DISTRICT OF CALIFORNIA

16                        SAN FRANCISCO DIVISION

17 In re:  CATHODE RAY TUBE (CRT)          ) Case No. 07-5944-SC
   ANTITRUST LITIGATION                    )
18                                         ) MDL No. 1917
                                           )
19 This Document Relates to:               ) **PHILIPS ELECTRONICS NORTH**
                                           ) **AMERICA CORPORATION, PHILIPS**
20 *Electrograph Sys., Inc. v. Hitachi, Ltd.*, ) **TAIWAN LTD., AND PHILIPS DO BRASIL**
   No. 11-cv-01656;                        ) **LTDA.'S REPLY IN SUPPORT OF**
21                                         ) **MOTION FOR PARTIAL SUMMARY**
                                           ) **JUDGMENT**
22 *Electrograph Sys., Inc. v. Technicolor SA*, )
   No. 13-cv-05724;                        ) Date:       February 6, 2015
23                                         ) Time:       10:00 a.m.
                                           ) Place:      Courtroom No. 1, 17th Floor
24 *Siegel v. Hitachi, Ltd.*,              )
   No. 11-cv-05502;                        ) Hon. Samuel Conti
25                                         )
                                           )
26 *Siegel v. Technicolor SA*,             )
   No. 13-cv-05261;                        )
27                                         )
                                           )
28 *Best Buy Co., Inc. v. Hitachi, Ltd.*,  )
   No. 11-cv-05513;                        )

| | |
|---|---|
| 1 | *Best Buy Co., Inc. v. Technicolor SA*, <br> No. 13-cv-05264; |
| 2 | |
| 3 | *Interbond Corp. of Am. v. Hitachi, Ltd.*, <br> No. 11-cv-06275; |
| 4 | |
| 5 | *Interbond Corp. of Am. v. Technicolor SA*, <br> No. 13-cv-05727; |
| 6 | *Office Depot, Inc. v. Hitachi, Ltd.*, |
| 7 | No. 11-cv-06276; |
| 8 | *Office Depot, Inc. v. Technicolor SA*, <br> No. 13-cv-05726; |
| 9 | |
| 10 | *CompuCom Sys., Inc. v. Hitachi, Ltd.*, <br> No. 11-cv-06396; |
| 11 | *P.C. Richard & Son Long Island Corp. v.* |
| 12 | *Hitachi, Ltd.*, <br> No. 12-cv-02648; |
| 13 | |
| 14 | *P.C. Richard & Son Long Island Corp. v.* <br> *Technicolor SA*, |
| 15 | No. 13-cv-05725; |
| 16 | *Schultze Agency Servs., LLC v. Hitachi, Ltd.*, <br> No. 12-cv-02649; |
| 17 | |
| 18 | *Schultze Agency Servs., LLC v. Technicolor SA*, <br> No. 13-cv-05668; |
| 19 | |
| 20 | *Tech Data Corp. v. Hitachi, Ltd.*, <br> No. 13-cv-00157; |
| 21 | *Sears, Roebuck and Co. and Kmart Corp. v.* |
| 22 | *Technicolor SA*, <br> No. 13-cv-05262; |
| 23 | |
| 24 | *Sears, Roebuck and Co. and Kmart Corp. v.* <br> *Chunghwa Picture Tubes, Ltd.*, |
| 25 | No. 11-cv-05514; |
| 26 | *Sharp Electronics Corp. v. Hitachi Ltd.*, <br> No. 13-cv-1173 SC; |
| 27 | *Sharp Electronics Corp. v. Koninklijke Philips* |
| 28 | *Elecs., N.V.*, <br> No. 13-cv-2776 SC; |

| | |
|---|---|
| 1 | |
| 2 | *ViewSonic Corp. v. Chunghwa Picture Tubes, Ltd.,* |
| 3 | No. 14-cv-2510 SC; |
| 4 | *All Indirect Purchaser Actions.* |

$\qquad$ )
)
)
)
)
)
)
)
)
)

**REDACTED VERSION OF DOCUMENT OF DOCUMENT SOUGHT TO BE SEALED**

1

## **TABLE OF CONTENTS**

2

**Page**

3

I.   INTRODUCTION ..................................................................................................... 1

4

II.   ARGUMENT ........................................................................................................... 4

5

      A.   Plaintiffs cannot *sub silentio* impute the conduct or interests of other entities, like KPNV or LPD, to the Philips Subsidiaries. ................................................. 4

6

      B.   Plaintiffs have failed to identify any evidence suggesting that the Philips Subsidiaries participated or retained an interest in the conspiracy after severing their ties to the manufacture and sale of CRTs. ................................................. 4

7

8

      C.   Plaintiffs do not meaningfully dispute that the Philips Subsidiaries informed their alleged co-conspirators of their exit from the manufacture and sale of CRTs. ................................................................................................................. 6

9

10

      D.   Plaintiffs' Evidence Shows That The Philips Subsidiaries Negotiated For The Lowest Possible CRT Price. ........................................................................ 8

11

CONCLUSION ..................................................................................................................... 10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-size:smaller">ASES</span>

*Bowoto v. Chevron Texaco Corp.*,
   312 F. Supp. 2d 1229 (N.D. Cal. 2004) ............................................................................... 3

*Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*,
   198 F.3d 823 (11th Cir. 1999) amended by 211 F.3d 1224 (2000) ....................... 4, 5, 6, 7

*NFC Collections LLC v. Deutsche Bank Aktiengesellschaft*,
   No. CV 12-10718 DDP, 2013 WL 3337800 (C.D. Cal. 2013) ........................................... 3

*United States v. Antar*,
   53 F.3d 568 (3d Cir. 1995) ................................................................................................. 4

*United States v. Bullis*,
   77 F.3d 1553 (7th Cir. 1996) .............................................................................................. 4

*United States v. Lothian*,
   976 F.2d 1257 (9th Cir. 1992) ............................................................................................ 4

*United States v. Nippon Paper Indus. Co.*,
   62 F. Supp. 2d 173 (D. Mass. 1999) ............................................................................... 4, 7

*United States v. Steele*,
   685 F.2d 793 (3d Cir. 1982) ............................................................................................... 4

*United States v. U.S. Gypsum Co.*,
   438 U.S. 422 (1978) ................................................................................................... 2, 4, 6

1 **I.      INTRODUCTION**

2        In their Motion for Partial Summary Judgment, Philips Electronics North America Corporation,

3 Philips Taiwan Ltd., and Philips do Brasil Ltda. (collectively, the "Philips Subsidiaries" or the

4 "Subsidiaries") identified unambiguous evidence showing (1) that, in June 2001, they completely and

5 permanently severed all ties to the manufacture and sale of CRTs; (2) that widespread media coverage

6 publicized their exit; (3) that no employee of the Philips Subsidiaries participated in any alleged

7 anticompetitive conduct after June 2001; and (4) that none of the Philips Subsidiaries had any interest

8 in the alleged conspiracy after June 2001.  At the same time, as manufacturers of finished products

9 using CRTs, the Philips Subsidiaries were *purchasers* of CRTs after June 2001, and the evidence

10 shows that, as purchasers of CRTs, the Subsidiaries zealously negotiated for the lowest CRT prices

11 possible from LPD as well as its other CRT suppliers, contrary to every objective of the alleged cartel.[1]

12        In response, Plaintiffs do not cite any evidence disputing those points.  Instead, they attempt to

13 shift the Court's attention away from the conduct of the Philips Subsidiaries, which is all that matters

14 for this Motion, and towards the alleged conduct of Koninklijke Philips N.V. ("KPNV") and LG

15 Philips Display ("LPD").  In doing so, they ignore the well-established principle that separately

16 incorporated legal entities cannot be held liable for each other's conduct, absent a finding of agency or

17 vicarious liability.  Because Plaintiffs do not argue that the acts of KPNV or LPD are in any way

18 attributable to any of the Philips Subsidiaries, the Court should ignore Plaintiffs' frequent detours into

19 the purported conduct of KPNV and LPD and consider only evidence relating to the conduct of the

20 Subsidiaries—and, on this score, Plaintiffs again cite none.

21        Plaintiffs attempt to argue that there are three reasons why a genuine issue of material fact

22 exists as to whether the Philips Subsidiaries withdrew from the alleged conspiracy in June 2001.  They

23 fail on all counts.

---

25 [1] Plaintiffs are not asserting claims in this action premised on an alleged price-fixing conspiracy in the
26 sale of finished products, e.g., televisions and monitors.  Therefore, the fact that the Subsidiaries sold
products containing CRTs after June 2001 has no relevance except as further evidence that the
27 Subsidiaries were not manufacturing and selling CRTs.

1    First, Plaintiffs assert that the Philips Subsidiaries did not sever all ties to the conspiracy upon

2    the formation of LPD because the Subsidiaries remained "within the global Philips corporate family,"

3    and their parent corporation (KPNV) purportedly "controlled" LPD.  *See* Opp'n at 15–19.  Not

4    surprisingly, Plaintiffs cite no authority finding a lack of severance based on such a tenuous connection

5    between the withdrawing party and the remaining alleged co-conspirators.  That is because there is

6    none.  And Plaintiffs offer no explanation as to why the Court should break new ground and find that

7    these legally separate entities (the Philips Subsidiaries) were apparently prohibited as a matter of law

8    from withdrawing until a different corporation (KPNV) divested its interest in an alleged co-

9    conspirator (LPD).[2]  Severance of participation in the conspiracy and notice to former co-conspirators

10   is all that the law requires.  *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464–65 (1978)

11   ("Affirmative acts inconsistent with the object of the conspiracy and communicated in a manner

12   reasonably calculated to reach co-conspirators have generally been regarded as sufficient to establish

13   withdrawal or abandonment.").

14   Second, Plaintiffs assert that the conduct effectuating the withdrawal of the Subsidiaries did not

15   provide sufficient notice to the other co-conspirators.  *See* Opp'n at 19–21. ███████████

16   ████████████████████████████████████████████

17   ████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████████

20   ██ .[3] ████████████████████████████████████

21   ████████████████████████ Opp'n at 20.  But, in making that argument, Plaintiffs once

22   again choose to ignore basic principles of corporate separateness by resorting to the use of "Philips."

23

24   ————————————————————

[2] Of course, a situation where the parent corporation remains a member of the conspiracy and the

25   subsidiary withdraws is not present here.  As KPNV has explained, there is no evidence in the record
     suggesting that it ever joined or participated in the alleged conspiracy.  *See* KPNV Mot. for Summ. J.

26   at 9–15 (Dkt. No. 3040).

27   [3] *See* Mot. at 6–7 (citing Exs. 9, 11, 15–27).

28

1  The evidence cited by Plaintiffs simply references the existence of a joint venture between KPNV and

2  LG, and does not evidence any intended role for the Philips Subsidiaries in the ownership or operation

3  of LPD.  Even assuming Plaintiffs' description of KPNV's role is accurate (it is not), that role is not

4  attributable to the Philips Subsidiaries as a matter of law.  Plaintiffs also highlight the testimony of Jim

5  Smith, who was an employee of Philips Taiwan at the time of the severance, because ████████████

6  ██████████████████████████████████████████████████████████ *See*

7  *id.* at 20–21.  Of █████████████████████████████████████████████████

8  █████████████████████████████████████████████████████████████

9  █████████████████████████████████████████████ *See* Ex. 1,

10  Jim Smith Dep. Tr. (12/12/2013) at 282:25–283:4 (emphasis added).  Absent the manufactured

11  connection between the Subsidiaries and LPD based on KPNV's purported control over LPD,

12  Plaintiffs have done nothing to dispute that the other alleged co-conspirators were in fact aware that the

13  Subsidiaries had withdrawn from the alleged conspiracy.

14      Third, Plaintiffs argue that the Subsidiaries purchased CRTs from LPD "regardless of whether

15  LPD offered a competitive price."  *See* Opp'n at 21–22.  Although the Subsidiaries do not need to

16  show that they engaged in a certain type of negotiations to establish withdrawal, Plaintiffs' description

17  of their purported conduct bears no connection to the actual evidence.  ███████████████

18  ██████████████████████████████████████████████████████

19  ███████████████████████████████████████████████████████████

20  ███████████████████████████████████████████████████████

21  ██████████████████████████████████████████████████████

22  █████████████████████████████████████ *See* Ex. 57 to Pls.' Opp'n to

23  Philips Subsidiaries Mot. for Summ. J., at PHLP-CRT-163389–90.  ███████████████

24  █████████████████████████████████████████████████████████████

25  ██████████.  *Id.* at PHLP-163389.  ████████████████████████

26  ██████████████████████████████████████████████████

27  ██████████████████████████████████████████████████████████

28

1   *Id.* ████████████████████████████████████████████████

2   ██████████████    *Id.* ████████████████████████████████

3   ████████████████████████████████████████████

4   **II.    ARGUMENT**

5       **A.    Plaintiffs cannot *sub silentio* impute the conduct or interests of other entities, like KPNV or LPD, to the Philips Subsidiaries.**

6

7       "[A] parent company is presumed to have an existence separate from its subsidiaries." *NFC*

8  *Collections LLC v. Deutsche Bank Aktiengesellschaft*, No. CV 12-10718 DDP (JEMx), 2013 WL

9  3337800, at *7 (C.D. Cal. 2013).  Only in "unusual circumstances," such as where a principal-agent

10  relationship exists or where one corporate entity is the alter ego of the other, will the law permit a

11  parent corporation or its subsidiary to be held liable for the other's acts.  *See Bowoto v. Chevron*

12  *Texaco Corp.*, 312 F. Supp. 2d 1229, 1234 (N.D. Cal. 2004).  Here, Plaintiffs do not contend that the

13  Court should disregard the separate corporate existence of the Philips Subsidiaries, which means that

14  Plaintiffs cannot rely on the purported acts of others, including *former* employees of the Philips

15  Subsidiaries, to defeat the Subsidiaries' Motion for Partial Summary Judgment.

16       Despite making no argument that KPNV or LPD served as the alter ego of the Subsidiaries,

17  Plaintiffs' Opposition still discusses at length the conduct of KPNV and LPD.  *See* Opp'n at 3–14.  The

18  Court should disregard Plaintiffs' attempt to muddy the factual waters and should focus on evidence

19  (or more aptly the lack thereof) showing the Philips Subsidiaries' alleged connection to the conspiracy

20  after June 2001.

21       **B.    Plaintiffs have failed to identify any evidence suggesting that the Philips Subsidiaries participated or retained an interest in the conspiracy after severing their ties to the manufacture and sale of CRTs.**

22

23       Presuming that a defendant joined the alleged conspiracy, proving withdrawal requires two

24  steps.  First, the defendant must have taken "definite, decisive, and positive steps to show . . . [their]

25  disassociation from the conspiracy."  *United States v. Lothian*, 976 F.2d 1257, 1261 (9th Cir. 1992).

26  Second, the affirmative acts showing dissociation must be "communicated in a manner reasonably

27  calculated to reach co-conspirators."  *Gypsum Co.*, 438 U.S. at 464–65.

28

1    As the Philips Subsidiaries demonstrated in their Motion, courts have consistently found

2  severing ties with an industry or retiring from an industry is sufficient to establish withdrawal.  *See*

3  Mot. at 11–12 (citing *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823 (11th Cir. 1999)

4  amended by 211 F.3d 1224 (2000), and *United States v. Nippon Paper Indus. Co.*, 62 F. Supp. 2d 173

5  (D. Mass. 1999)).[4]  Where courts have found no severance, it has been because the defendant either

6  continued to benefit directly from the conspiracy or continued to have some active role in it.[5]

7    Plaintiffs take no issue with the legal standard for withdrawal or the case law applying that

8  standard, as presented by the Philips Subsidiaries.  *See* Opp'n at 15–21.  Instead, they simply argue

9  that the Philips Subsidiaries did not sever all ties with the industry, which according to Plaintiffs,

10  distinguishes the facts of this case from those cited by the Subsidiaries.  *See id.*  The very facts relied

11  on by Plaintiffs undermine their argument.

12    For example, Plaintiffs assert that ███████████████████████████████

13  ██████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████

16  ███  *Id*. at 16–19.  ████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████

19  _____

20  [4] *See also United States v. Steele*, 685 F.2d 793, 803 (3d Cir. 1982) (holding it was error to deny
    defendant's motion for a judgment of acquittal based on withdrawal where "[t]he government has
21  pointed to no evidence that Naples participated in the conspiracy in any way following his resignation,
    but it argues that his silence thereafter could be considered by the jury as evidence of his continuing
22  participation.").

23  [5] *See, e.g.*, *United States v. Bullis*, 77 F.3d 1553, 1561–63 (7th Cir. 1996) (finding no withdrawal
    where defendant left his position, i.e., severed ties, because defendant continued to communicate with
24  co-conspirators and proposed action to cover-up the conspiracy); *United States v. Antar*, 53 F.3d 568,
    583 (3d Cir. 1995) overruled on other grounds by *Smith v. Berg*, 247 F.3d 532, 534 (3d Cir. 2001)
25  (explaining that "even if the defendant completely severs his or her ties with the enterprise, the
    defendant still may remain a part of the conspiracy if he or she continues to do acts in furtherance of
26  the conspiracy and continues to receive benefits from the conspiracy's operations" and holding that
    defendant did not withdraw because retained a direct economic interest in the conspiracy).

27

28

1    To the extent Plaintiffs are focusing only on whether anyone at the Subsidiaries had knowledge

2  of the alleged conspiracy after June 2001, *see* Opp'n at 13 (citing Ex. 56), that question has little

3  relevance to this Motion.  It is well-established that a withdrawing co-conspirator has no obligation to

4  take acts to expose and stop the conspiracy, *see Morton's Mkt.*, 198 F.3d at 839 ("In order to

5  effectively withdraw, however, it is not necessary for the conspirator to disclose the illegal scheme to

6  the authorities."), but absent efforts to expose the continuing conspiracy, the now-withdrawn defendant

7  will obviously still retain knowledge of its existence.  Plaintiffs have cited no authority holding that a

8  corporation must purge all employees with knowledge of the conspiracy before it may withdraw from

9  the conspiracy.  ████████████████████████████████

10 ████████████████████████████████████████████████

11 ███████████████████████████████████████████████

12 ███████████████████████████████████████████████

13 ████████████████████████████████████████████████

14 ██████████████████████████████████████████████

15 █████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████

18    Because Plaintiffs do not dispute that the Philips Subsidiaries completely exited from the

19 manufacture and sale of CRTs and they have failed to identify any evidence suggesting that the Philips

20 Subsidiaries continued to take action to advance the interests of the alleged conspiracy or retained an

21 interest in the alleged conspiracy, the Philips Subsidiaries have established that they severed all ties to

22 the alleged conspiracy.

23    **C.    Plaintiffs do not meaningfully dispute that the Philips Subsidiaries informed their alleged co-conspirators of their exit from the manufacture and sale of CRTs.**

24

25    Unable to show that the alleged co-conspirators were unaware that the Philips Subsidiaries

26 severed all ties to the alleged conspiracy, i.e., the manufacture and sale of CRTs, they subtlety attempt

27 to modify the notice standard set forth by the Supreme Court in *Gypsum*.  *See* Opp'n at 19–21 (stating

28

1   in heading C. that "The Philips Subsidiaries Did Not Communicate Their Alleged Withdrawal to Co-

2   Conspirators"); *id.* at 20 ("there is direct evidence that Philips did not communicate its alleged

3   withdrawal").  Contrary to Plaintiffs' apparent view, a defendant does not have to provide actual notice

4   of withdrawal from the conspiracy to his co-conspirators where they have in fact announced their

5   withdrawal from the industry—as Jim Smith explained, ███████████████████████████████

6   ██████████████████████████████████████████████████████████████████████████████

7   ██████████.[6]

8        For example, in *United States v. Nerlinger*, the Second Circuit explained that the defendant

9   established withdrawal where he closed the bank account used by him to participate in the conspiracy

10   and resigned from his position at the bank because "it disabled him from further participation and [he]

11   made that disability known to [other co-conspirators]."  862 F.2d 967, 974 (2d Cir. 1988) ("Nothing

12   . . . requires the hiring of a calligrapher to print formal notices of withdrawal to be served upon co-

13   conspirators.").  And, as explained in the Subsidiaries' Motion, *see* Mot. at 11–15, the facts of this case

14   closely resemble those of *Morton's Market*, where the plaintiffs alleged that the defendants conspired

15   to fix prices of dairy products.  198 F.3d at 839.  There, the Eleventh Circuit explained that:

16              With the sale of its dairy, Pet certainly "retired" and totally severed its

17              ties to the milk price-fixing conspiracy.  It did nothing more to assist or

18              participate in the price-fixing activities of the other dairies.    This

19              retirement was communicated to the other dairies by the media.   They

20              knew that from that time on, Pet would not lend its services to the

21              conspiracy.  Thus, the purposes of the conspiracy were defeated at least

22              as to Pet.  We conclude, therefore, that Pet did effectively withdraw from

23              the price-fixing conspiracy upon the sale of its dairy.  *Id.*

24        Plaintiffs have identified no evidence suggesting that the Philips Subsidiaries had any role in

25   the alleged conspiracy after the formation of LPD.  While Plaintiffs again resort to lazily contending

26   ────────────────────

27   [6] *See* Ex. 1, Jim Smith Dep. Tr. (12/12/2013) at 282:25–283:4.

28

1

2

3 ██████████████████████.  Similarly, reference to a press release stating that "███████

4 ████████████████████" *id.*, w████████████████████

5 █████████████████

6       Accordingly, Plaintiffs have failed to identify any evidence suggesting that the Philips

7 Subsidiaries did not provide adequate notice of their severance of all ties to the manufacture and sale

8 of CRTs and the alleged conspiracy, and cannot disprove the evidence to the contrary showing notice.

9      **D.    Plaintiffs' Evidence Shows That The Philips Subsidiaries Negotiated For The Lowest Possible CRT Price.**

10

11       Although not a necessary element of withdrawal, if the withdrawing defendant resumes

12 competitive behavior, that fact will also support a finding of withdrawal because competition is an act

13 that is inconsistent with the purpose of a price-fixing conspiracy.  *See Nippon Paper*, 62 F. Supp. 2d at

14 190.  In response to the Philips Subsidiaries' argument that they resumed competition with LPD,

15 Plaintiffs cite several documents that can only be read to show the resumption of competitive behavior.

16 We say "resumption," but in fact there is no evidence that the non-CRT businesses of the Philips

17 Subsidiaries ever behaved in a non-competitive way.  So the evidence reveals that, once the CRT

18 businesses were excised from the Philips Subsidiaries along with the alleged participants in the

19 anticompetitive conduct, the remainder of the Philips Subsidiaries acted in a fully competitive manner.

20 ████████████████████████████████████

21 ████████████████████████████████, *see*

22 Opp'n at 13 (citing Ex. 56), ████████████████████

23 ████████████████████████████████████

24 ████████████████████████████████

25 ████████████████████████████████████

26 ████████████████████████████████████

27 ████████████████████████████████

28

1 ████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████

4 ██████████████.

5    Similarly, in Exhibit 57 to Plaintiffs' Opposition, Pele Lai, a████████████████

6 ████████████████████████████████████████

7 ██████████████████████████████ *See* Opp'n at 13. █████████████

8 ████████████████████████████████████████

9 ████████████████████████████████████████

10 ████████████████████████████████████████

11 ████████████████████████████████

12    There are many other examples of the Philips Subsidiaries working diligently to obtain lower

13 CRT prices from LPD after June 2001.

14    • Ex. 2, E-mail from Jan De Lombaerde to Alain Perrot (Mar. 5, 2005, 1:04:32 P.M.) at

15       PHLP-CRT-148288 █████████████████████████████

16       ██████████████

17    • Ex. 3, E-mail from Arie Leunis, LPD, to Jan De Lombaerde (Dec. 5, 2004) at PHLP-

18       CRT-150977 (█████████████████████████████

19       ████████████████████████████████

20       █████████████████

21    • Ex. 4, E-mail from Herve Boileau, Purchasing Manager Philips Consumer Electronics,

22       to Arie Leunis, *et al.* (June 9, 2004, 04:43 P.M.) at PHLP-CRT-149178 (████████

23       ████████████████████████████████

24       ████████████████████████████████

25       ████████████████████████████████).

26    • Ex. 5, E-mail from Jan De Lombaerde to Rik Dombrecht (Nov. 29, 2005, 1:46:53 P.M.)

27       at PHLP-CRT-064967 (█████████████████████████

28

1   ███████████████████████████████████████████████

2   ███████████████████████████████████████████

3        Finally, Plaintiffs make much of the assertion that KPNV endorsed a certain level of purchases

4   from LPD.  *See* Opp'n at 21–23.  Plaintiffs, however, do not explain the significance of those facts to

5   the Subsidiaries' withdrawal argument.  The mere fact that management suggested it was the best

6   policy for a certain level of purchases to be made from LPD has nothing to do with the Philips

7   Subsidiaries, especially in an industry where using the same tube manufacturer often presented cost

8   savings to the buyer because the buyer knew the tubes would meet it specifications.[7]  Specifically, it

9   does not support the assertion that the Philips Subsidiaries had ongoing participation or interest in the

10  alleged conspiracy.

11       In sum, the Philips Subsidiaries demonstrated that they were engaging in fully competitive

12  activity regarding the pricing of CRTs after June 2001.  *See* Mot. at 16–17.  In response, Plaintiffs

13  failed to identify any evidence suggesting that the Subsidiaries did not vigorously pursue the best CRT

14  price, regardless of the identity of the supplier, after June 2001.  Those facts further support a finding

15  that, assuming arguendo, the Subsidiaries knowingly joined the alleged conspiracy at some point, they

16  withdrew from the alleged conspiracy in June 2001.

17  **CONCLUSION**

18       For the foregoing reasons, the Court should enter an Order granting partial judgment on behalf

19  of the Philips Subsidiaries of Plaintiffs' claims.

---

[7] *See* Ex. 6, Jan De Lombaerde Dep. Tr. (10/9/2014) at 120:22–123:11 ████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████

1   Dated: <u>January 23, 2014</u>                    By: <u>/s/ John M. Taladay</u>
                                                          John M. Taladay (*pro hac vice*)
2   Jon V. Swenson (SBN 233054)                         Erik T. Koons (*pro hac vice*)
                                                          Charles M. Malaise (*pro hac vice*)
3   BAKER BOTTS LLP                                      BAKER BOTTS L.L.P.
    620 Hansen Way                                       1299 Pennsylvania Ave., N.W.
4   Palo Alto, CA 94304                                  Washington, DC 20004-2400
    Telephone: (650) 739-7500                            Telephone: (202) 639-7700
5   Facsimile: (650) 739-7699                            Facsimile: (202) 639-7890
    Email: jon.swenson@bakerbotts.com                    Email: john.taladay@bakerbotts.com
6                                                        Email: erik.koons@bakerbotts.com
7                                                        Email: charles.malaise@bakerbotts.com

8

9   *Attorneys for Defendants Philips Electronics North*
    *America Corporation, Philips Taiwan Ltd., and Philips*
10  *do Brasil Ltda.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28