Brent Caslin (Cal. Bar. No. 198682)
Jenner & Block LLP
633 West Fifth Street
Suite 3600
Los Angeles, California 90071
Telephone:     213 239-5100
Facsimile:     213 239-5199
bcaslin@jenner.com

Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
Gabriel A. Fuentes (*pro hac vice*)
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
Telephone:     312 222-9350
Facsimile:     312 527-0484
ttruax@jenner.com
mbrody@jenner.com
gfuentes@jenner.com

*Attorneys for Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc., and Mitsubishi Electric Visual Solutions America, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05264;<br><br>*Electrograph Systems, Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05724;<br><br>*Interbond Corp. of Am. v. Technicolor SA, et al.*, No. 13-cv-05727;<br><br>*Office Depot, Inc. v. Technicolor SA, et al.*, No. 13-cv-05726;<br><br>*P.C. Richard & Son Long Island* | **MITSUBISHI ELECTRIC CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT BASED ON ABSENCE OF EVIDENCE OF LIABILITY [DKT. NO. 3037]**<br><br>Date:     February 6, 2015<br>Time:     10:00 a.m.<br>Place:     Courtroom 1, 17th Floor<br>Judge:    Hon. Samuel Conti |

1 | *Corporation, et al. v. Technicolor SA, et al.*, No. 13-cv-05725;
2 |
3 |
4 | *Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686;
5 |
6 | *Costco Wholesale Corporation v. Technicolor SA, et al.*, No. 13-cv-05723;
7 |
8 | *Schultze Agency Services, LLC v. Technicolor SA, Ltd., et al.*, No. 13-cv-05668;
9 |
10 | *Sears, Roebuck and Co., et al. v. Technicolor SA*, No. 13-cv-05262;
11 |
12 | *Dell Inc., et al. v. Phillips Electronics North America Corporation, et al.*, No. 13-cv-02171;
13 |
14 | *Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, No.13-cv-00157;
15 |
16 | *Siegel v. Technicolor SA, et al.*, No.13-cv-05261;
17 |
18 | *Viewsonic Corporation v. Chunghwa Picture Tubes Ltd., et al.*, No.13-cv-02510.

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ..............................................................................................................1

ARGUMENT ......................................................................................................................1

I.     ██████████████████████████████████████████
       ███████ ................................................................................................2

       A.     ██████████████████████████████████████
              ███████ .........................................................................................2

       B.     ██████████████████████████████████████
              ███████ .........................................................................................3

II.    ██████████████████████████████████████████
       ................................................................................................................4

       A.     The Law Requires the DAPs To Show that Their Evidence, No
              Matter the "Form," Will Be Admissible at Trial. .....................................4

       B.     The DAPs May Not Avoid Summary Judgment By Speculating
              that As-Yet-Undiscovered Information Will Create a Genuine
              Issue. ..........................................................................................................7

III.   ██████████████████████████████████████████
       ██████████████████████ ..........................................................7

IV.    The DAPs Adduced No Evidence that Any Meeting or Communication
       Involving Mitsubishi Electric Connected It to the Glass Meetings
       Conspiracy. ..........................................................................................................9

       A.     The DAPs' Meeting Evidence Does Not Pull Mitsubishi Electric
              into the Glass Meetings Conspiracy. ......................................................10

       B.     The DAPs' Reliance on the Law of Criminal Narcotics
              Conspiracies Is Misplaced and Betrays the Desperation of Their
              Efforts To Prevail on Summary Judgment with Only "Slight"
              Evidence..................................................................................................12

       C.     Contrary to the DAPs' Assertions, *In re Citric Acid* Is Powerful
              Authority for the Court's Entry of Summary Judgment in
              Mitsubishi Electric's Favor.....................................................................12

CONCLUSION ..................................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*7-Up Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*,
    191 F.3d 1090 (9th Cir. 1999) .................................................................................. 1, 9, 10

*Bank Melli Iran v. Pahlavi*,
    58 F.3d 1406 (9th Cir. 1995) ............................................................................................. 6

*Bhan v. NME Hosp., Inc.*,
    929 F.2d 1404 (9th Cir. 1991) ......................................................................................... 14

*Block v. City of L.A*,
    253 F.3d 410 (9th Cir. 2001) ......................................................................................... 5, 6

*City of Long Beach v. Standard Oil Co.*,
    872 F.2d 1401 (9th Cir. 1989) ......................................................................................... 13

*Coyaso v. Bradley Pac. Aviation, Inc.*,
    2012 WL 1580470 (D. Haw. May 3, 2012) ...................................................................... 5

*Fraser v. Goodale*,
    342 F.3d 1032 (9th Cir. 2003) ....................................................................................... 4, 5

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
    906 F.2d 432 (9th Cir. 1990) ........................................................................................... 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................................................ 10

*Osborn v. Butler*,
    712 F. Supp. 2d 1134 (D. Idaho 2010) .............................................................................. 5

*Taylor v. List*,
    880 F.2d 1040 (9th Cir. 1989) ........................................................................................... 6

*Wright v. Employers Reinsurance Corp.*,
    2005 WL 756618 (N.D. Cal. Mar. 31, 2005) .................................................................... 1

**OTHER AUTHORITIES**

Fed. R. Evid. 602 ........................................................................................................................ 4

Fed. R. Evid. 612 ........................................................................................................................ 5

Fed. R. Evid. 803(5) .................................................................................................................... 5

**INTRODUCTION**

The Direct Action Plaintiffs' ("DAPs") response to Mitsubishi Electric Corporation's ("Mitsubishi Electric") motion for summary judgment on liability makes clear that the plaintiffs' case rests almost entirely ████████████████████████████████████████████████████████████████████████████████████████████

The DAPs wrongly assert that they need not present a shred of evidence to back up that allegation. They wrongly argue that the evidence cobbled together about Mitsubishi Electric's meetings with other CRT producers is enough to avoid summary judgment on the Complaint's antitrust claim built on the Glass Meetings which Mitsubishi Electric never attended. Rather, the DAPs' evidence demonstrates competitive behavior by Mitsubishi Electric, and some of it even shows Mitsubishi Electric's exclusion from the alleged Glass Meetings conspiracy. Notwithstanding the DAPs' protestations, this case is very much like *7-Up Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*, 191 F.3d 1090 (9th Cir. 1999), because the DAPs' evidence, taken as a whole, does not tend to exclude lawful, independent conduct by Mitsubishi Electric. *Id.* at 1106. The Court should grant summary judgment in favor of Mitsubishi Electric in the absence of a genuine issue of fact over whether Mitsubishi Electric ever joined the alleged Glass Meetings conspiracy.

**ARGUMENT**

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ With no evidence that Mitsubishi Electric ever joined that conspiracy, and amid evidence that Mitsubishi Electric was in fact excluded from the conspiracy and competed with other CRT producers, summary judgment should be entered for Mitsubishi Electric. *See Wright v. Employers Reinsurance Corp.,* 2005 WL 756618, at *8 (N.D. Cal. Mar. 31, 2005) ("[s]ummary judgment is . . . the time to 'put up or shut up'").

**I.** ███████████████████████████

███████████████████████████



███████████████ and the DAPs' opposition papers have added nothing to change that.

In their response, the DAPs argue ███████████████

███████████████████████████

| | |
|---|---|
| 1 | ██████████████████████████████████ |
| 2 | ██████████████████████████████████ |
| 3 | ██████████████████████████████████ |
| 4 | ████ |
| 5 | **B.**   ████████████████████████████ |
| 6 | ███████████████████████████ |
| 7 | ██████████████████████████████████ |
| 8 | ██████████████████████████████████ |
| 9 | ██████  ████████████████████ |
| 10 | ██████████████████████████████████ |
| 11 | ██████████████████████████████████ |
| 12 | ██████████████████████████████████ |
| 13 | ██████████████████████████████████ |
| 14 | ████████████████████ |
| 15 | ███████████████████████████ |
| 16 | ██████████████████████████████ Mitsubishi Electric's |

plans to close its 17" CDT production line in Mexico, for example, was already public news. (*See* Ex. 25, Aff. of Mary Ruddy (attaching media reports of the line's closure, dated less than a week before the March 3, 2003 meeting).) ████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████  ████████████
████████████████████████████
███████████████████████████
████████████████████████████████████

1
2
3
4  **II.**  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The DAPs struggle to avoid the consequence of having developed no evidence to support or corroborate the ▮▮▮▮▮▮▮▮▮▮▮, but they have confused the assertions contained in the ▮▮▮▮▮▮ with the "form" ▮▮▮▮▮▮ itself. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ There is no support at all for that proposition, which is not the law.

### A. The Law Requires the DAPs To Show that Their Evidence, No Matter the "Form," Will Be Admissible at Trial.

The very cases cited by the DAPs (*see* Opp. at 7 n.2) establish that the Court looks to whether the content of a discovery response is or would be admissible before considering that content on summary judgment. Under those cases, the party opposing summary judgment must show that it can offer admissible evidence at the trial – that there is some witness whom the plaintiffs will call to testify to the content of the discovery response. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In the first of the DAPs' cited authorities, *Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003), the plaintiff sought to defeat summary judgment by relying on her own written diary, which was undoubtedly hearsay. Yet the Ninth Circuit held that the hearsay content of the diary was properly considered on summary judgment because at trial, the plaintiff's testimony about the events recited in the diary's contents would not be hearsay – the plaintiff could testify to the portions of the diary from her personal knowledge, Fed. R. Evid. 602, use the diary to refresh her

recollection, Fed. R. Evid. 612, or even read the diary into evidence as a recorded recollection, Fed. R. Evid. 803(5). *Fraser*, 342 F.3d at 1036-37. The DAPs' reliance on *Fraser* for the proposition that the form of the evidence is inconsequential to whether it may be considered on summary judgment misses the key point of the case: Even if the form is inadmissible, the contents may be considered on summary judgment *only* if they are admissible *or* if the plaintiff can show they will be admissible at trial. *Id.* at 1036.

Here, the DAPs can do neither with respect ███████████████████████████ ████████████████████████████ This matter therefore is more like the cases in which courts distinguished *Fraser* because the plaintiff could not show that the evidence relied upon to oppose summary judgment contained would be admissible at trial. *See Coyaso v. Bradley Pac. Aviation, Inc*., 2012 WL 1580470, at *12 & n.9 (D. Haw. May 3, 2012) (granting summary judgment and noting that, unlike as in *Fraser*, the plaintiff offered no basis to admit at trial a hearsay statement by another individual that plaintiff, who had brought employment discrimination-based claims, was "'not getting accepted back' at work"); and *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1146-47 (D. Idaho 2010) (granting motion to strike, on summary judgment, assertions attributed to the plaintiff from website pages where the summary judgment movant offered no verification or independent evidence confirming that the statements were actually made by the plaintiff, distinguishing *Fraser*).

A second important case – also cited by the DAPs – is *Block v. City of L.A*, 253 F.3d 410 (9th Cir. 2001), which involved municipal employees' claims for overtime wages against their city employer under the Fair Labor Standards Act. The case turned in large part on how often the city improperly suspended the plaintiffs. *See id.* at 416. The plaintiffs obtained summary judgment in the district court, and on appeal, the city argued that a declaration it had provided below ("the Menkus declaration"), from a city administrative employee, should have defeated summary judgment because it established that relatively few of the suspensions were improper. *Id.* at 416, 418. But the Ninth Circuit held that the district court had abused its discretion in even considering the Menkus declaration on summary judgment, as its author, Menkus, had no

personal knowledge of the suspensions and relied on information from others, whose sources for that information were "unclear."  *Id.* at 419.  "Rather than set forth facts that would be admissible in evidence, the affidavit was instead based on inadmissible hearsay."  *Id.*

Here, as in *Block*, ███████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████.  *See also Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (giving no weight, on review of summary judgment, to "information and belief" declarations not based on personal knowledge); *Taylor v. List*, 880 F.2d 1040, 1046 n.3 (9th Cir. 1989) (requiring that affidavit relied on to avoid summary judgment be rooted in personal knowledge, and citing Rule 56(e)).

███████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████████████████████████.

The DAPs' own authorities – *Fraser* and *Block* – establish that the DAPs cannot rely on the Samsung SDI discovery response to create a genuine issue of material fact because the DAPs have failed to show that the content of the discovery response will be admissible at trial.  In fact, the DAPs already have told the Court that they do not possess any evidence to support the ███████████████████████████ and thus it should be disregarded.

**B.     The DAPs May Not Avoid Summary Judgment By Speculating that As-Yet-Undiscovered Information Will Create a Genuine Issue.**

Nor is it an answer to claim, as the DAPs do, that if they were to receive more discovery, such discovery *might* create a genuine issue of fact as to whether Mitsubishi Electric joined the alleged conspiracy.  (*See* Opp. at 7.)  The time for the Court's fair consideration of Mitsubishi Electric's summary judgment motion has arrived.  Without having produced admissible evidence to suggest that a jury would have any basis to decide this matter against Mitsubishi Electric, the DAPs cannot avoid summary judgment as to Mitsubishi Electric.

**III.** ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

1. ██████████████████████████████████████████████████████████
2. ██████████████████████████████████████████████████████████
3. ████████████████████
4.    ████████████████████████████████████████████████████████
5. ██████████████████████████████████████████████████████████
6. ██████████████████████████████████████████████████████████
7. ██████████████████████████████████████████████████████████
8. ██████████████████████████████████████████████████████████
9. ██████████████████████████████████████████████████████████
10. ██████████████████████████████████████████████████████████
11. ██████████████████████████████████████████████████████████
12. ██████████████████████████████████████████████████████████
13. ████████████████████████████████████████████████ ████
14. ██████████████████████████████████████████████████████████
15. ██████████████████████████████████████████████████████████
16. ████████████████████
17.    ████████████████████████████████████████████████████████
18. ██████████████████████████████████████████████████████████
19. ██████████████████████████████████████████████████████████
20. ██████████████████████████████████████████████████████████
21. ██████████████████████████████████████████████████████████
22. ██████████████████████████████████████████████████████████
23. ██████████████████████████████████████████████████████████
24. ████████████████████████████████████████████████████
25.    ████████████████████████████████████████████████████████
26. ██████████████████████████████████████████████████████████
27. ██████████████████████████████████████████████████████████
28.

████████████████████████████████████

████████████████████  And, as Mitsubishi Electric noted in its opening brief, it is not enough for the plaintiffs to raise a suspicion of collusion. Nor must a defendant moving for summary judgment "prove" its conduct was lawful: Under *In re Citric Acid*, the plaintiffs must present more than a "scintilla" of evidence in support of their claims, and when they rely on circumstantial evidence in an antitrust case, it is they who must show that their evidence tends to exclude the possibility of lawful conduct. 191 F.3d at 1106.

The DAPs have failed to do so here. They have failed to rebut the reasonable inference that Mitsubishi Electric met with Samsung SDI (or other CRT makers) as part of Mitsubishi Electric's "make-buy" decisions or for other lawful reasons; it is not enough for the DAPs to claim, as they do, that the Court ought to disregard Mitsubishi Electric's lawful purposes because two other suppliers admitted to having participated in a conspiracy.[1] ████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████████

**IV.   The DAPs Adduced No Evidence that Any Meeting or Communication Involving Mitsubishi Electric Connected It to the Glass Meetings Conspiracy.**

████████████████████████████████████
████████████████████████████████████

---

[1] The DAPs miss the point on the "conflicts" between the expert reports in this case. There is no true "battle of the experts" here on the critical question of whether lawful justifications existed for Mitsubishi Electric's communications or price information exchanges with other CRT producers. ████████████
████████████████████████████████████
████. The Court is capable of applying the correct legal standard, and when it does, the DAPs' evidence falls far short of tending to exclude lawful or independent conduct.

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████  But the DAPs offer no support for that broad conclusion either.

Limited information exchange such as that evidenced in the documents cited by the DAPs are not illegal absent an illegal agreement to restrain trade, proved by evidence indicating that the meetings tended to exclude lawful conduct. *In re Citric Acid*, 191 F.3d at 1106. Again, the DAPs cannot come up with more than a "mere scintilla" of evidence, and they may not take their antitrust claims to a jury by showing only that "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### A. The DAPs' Meeting Evidence Does Not Pull Mitsubishi Electric into the Glass Meetings Conspiracy.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████[2]

Moreover, the discovery record includes substantial evidence that Chunghwa and other participants in the Glass Meetings conspiracy affirmatively *excluded* Mitsubishi Electric from the Glass Meetings conspiracy. ████████████████████████████

---

[2] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████

█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
████████████████████████████████████

Importantly, the conspiracy alleged in this matter is not a bilateral conspiracy between any two companies, nor is it an alleged conspiracy of Japanese manufacturers who attended trade association meetings in Japan. The alleged conspiracy here is said to have been built on the framework of Glass Meetings, which included three separate tiers of representatives with separate sets of roles in the conspiracy. (Mitsubishi Summary Judgment Br. at 13 (citing Tech Data Am. Compl. ¶¶ 122-24).) The Glass Meetings conspiracy is alleged as a broad, overarching conspiracy, and to include Mitsubishi Electric within that conspiracy, the DAPs must present affirmative evidence that Mitsubishi Electric knowingly joined the conspiracy. Far from presenting such evidence, the DAPs have come forth with no admissible evidence on that issue.

Without any evidence to link Mitsubishi Electric to the Glass Meetings, the DAPs point to the ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
█████████████████████████████████████ To avoid summary judgment, the DAPs must provide some evidentiary support for their allegation that Mitsubishi Electric participated in the Glass Meetings conspiracy. Yet the DAPs' evidence that a subset of manufacturers in Japan exchanged production information, after the EIAJ suggested they should not, does nothing to prove that any of the Japan-based EIAJ members had undertaken even one single act to join the Glass Meetings conspiracy. The DAPs want to draw a nefarious inference from this evidence, but there is nothing nefarious about trade association members wanting to continue to exchange production information after the association thought doing so was

"unfavorable" or created an unfavorable appearance – that evidence does not establish that any member broke the law or believed it was breaking the law. The DAPs have not come forth with a single piece of evidence to suggest that any EIAJ member conspired at any EIAJ meeting, or that EIAJ meetings at any time forged a connection between the Japan-based companies who attended them and the Glass Meetings conspiracy that is the one the DAPs must prove. In short, the EIAJ meetings and the October 1998 EIAJ communication are red herrings. Mitsubishi Electric never joined the Glass Meetings conspiracy, and the DAPs have adduced no admissible evidence that it did.

### B. The DAPs' Reliance on the Law of Criminal Narcotics Conspiracies Is Misplaced and Betrays the Desperation of Their Efforts To Prevail on Summary Judgment with Only "Slight" Evidence.

Oddly, the DAPs seek to meet their burden by citing a case about a criminal narcotics conspiracy, and the elemental proposition that all the participants in a criminal conspiracy do not have to sit in the same room in order to have joined the conspiracy. (Opp. at 19 (citing *United States v. Perry*, 550 F.2d 524 (9th Cir. 1997)).) Citing *Perry*, the DAPs argue that "only slight evidence is necessary to connect a defendant" to a conspiracy found to have existed. *Id.* While that may be the law as applied to a criminal drug conspiracy, it is a poor statement of the law concerning antitrust conspiracies. The relevant law of how "slight" circumstantial evidence may connect a defendant to a civil Sherman Act conspiracy is, as the DAPs fully know, set forth in *In re Citric Acid*. As set forth further below, the DAPs cannot escape the fact that the instant matter is very much like *In re Citric Acid*, and very unlike the cases the DAPs rely upon in their unsuccessful attempt to distinguish *In re Citric Acid*.

### C. Contrary to the DAPs' Assertions, *In re Citric Acid* Is Powerful Authority for the Court's Entry of Summary Judgment in Mitsubishi Electric's Favor.

The DAPs begin their avoidance of *In re Citric Acid* with a specious attempt to characterize their evidence as "direct" and not "circumstantial" so as to render *In re Citric Acid* inapposite. This effort, relying as it does on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and the evidence of scattered meetings in which Mitsubishi Electric participated, fails entirely. There is

no direct evidence of Mitsubishi Electric's participation in the Glass Meetings conspiracy. The DAPs are plainly relying on circumstantial evidence of information exchanges, making *In re Citric Acid* plainly on point.

The DAPs' attempt to distinguish *In re Citric Acid* and its treatment of circumstantial evidence fares no better. The DAPs mention *City of Long Beach v. Standard Oil Co.*, 872 F.2d 1401 (9th Cir. 1989), describing how the defendant oil suppliers in that case could not avoid summary judgment amid evidence of a "complicated exchange system maintained by the defendants for valuing oil." (Opp. at 21.) To call the defendants' pricing system in *Standard Oil* "complicated" is something of an understatement. What the DAPs failed to tell the Court about *Standard Oil* was that the factual evidence precluding summary judgment included evidence of complex barter transactions that kept oil prices artificially low, shortages of oil that did not result in price increases, and "conscious parallelism." *Id.* at 1406-07. In sum, *Standard Oil* was a much better plaintiff's antitrust case than the one directed at Mitsubishi Electric here.

The same is true of *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432 (9th Cir. 1990), another case involving a cartel of oil companies. The DAPs invite the Court to draw a parallel between *Petroleum Products* and the instant case by stating that the evidence defeating *Petroleum Products* consisted of "conversations concerning pricing, meetings to gain cooperation from competitors, discussions concerning the success of price moves, discussions of raising prices, and coordination of responses to the plaintiffs." (Opp. at 21 (citing *Petroleum Prods.*, 906 F.2d at 441-59).) So for the parallel the DAPs wish the Court to draw, the DAPs cited an 18-page discussion of the summary judgment evidence in the *Petroleum Products* opinion. Even the DAPs' shorthand summary of the *Petroleum Products* evidence describes cooperation, discussion, and coordination among competitors far greater than can be demonstrated by the thin evidence against Mitsubishi Electric here. *Petroleum Products* does nothing to distinguish the instant case from *In re Citric Acid* or to change the conclusion that the DAPs' evidence does not tend to exclude independent action and does not avoid summary judgment.

The DAPs then cite Judge Illston's decision in the LCD litigation and make a false syllogism between that case and this one. (Opp. at 22.) In the very paragraph that the DAPs excerpted from Judge Illston's ruling, Judge Illston described "ongoing discussions" between two LCD manufacturers, "*during which they agreed* on prices of TFT-LCD panels." *Id.* (emphasis added). In the instant case, there is no evidence at all that at any discussion, anyone from Mitsubishi Electric "agreed on prices" of CRTs or CRT products. Here, as the DAPs were forced to admit to the Special Master, there is no such testimony. The facts of the LCD case may well have made that case "a far cry from *Citric Acid*," as Judge Illston put it, but this case is a far cry from LCD.

In this case, it is not enough for the DAPs to say that bilateral or trade association meetings meant that Mitsubishi Electric *might* have joined the Glass Meetings conspiracy. It is not enough to say that such meetings support a colorable argument for a conspiracy, or an ambiguity that the Court should generously resolve in the DAPs' favor. It is not enough for the DAPs to scrape together every meeting that ever occurred with another CRT producer, note that some of them involved exchange of pricing or production information, and throw them up against the proverbial wall to see if enough sticks to avoid summary judgment. Yet that is precisely what the DAPs are doing, in an attempt to salvage their antitrust claims directed at Mitsubishi Electric, now that evidentiary support for the assertions in the Samsung SDI discovery response never materialized.

## CONCLUSION

For the foregoing reasons, and with the discovery record yielding no factual support ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mitsubishi Electric has demonstrated that the antitrust case against it should not go to trial. *See Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991) (noting that notwithstanding difficulties in resolving complex antitrust cases on summary judgment, the relief should be granted where appropriate and "may save the parties and the courts from unnecessarily spending the extraordinary

resources required for a full-blown antitrust trial."). Mitsubishi Electric respectfully requests that in the absence of a genuine issue of fact over its liability on the DAPs' Sherman Act claims, the Court grant Mitsubishi Electric's motion for summary judgment.

Dated:  January 23, 2015                         JENNER & BLOCK LLP

By:   /s/ Terrence J. Truax
JENNER & BLOCK LLP
Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
Gabriel A. Fuentes (*pro hac vice*)
353 N. Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
ttruax@jenner.com
mbrody@jenner.com
gfuentes@jenner.com

Brent Caslin (Cal. Bar. No. 198682)
JENNER & BLOCK LLP
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
bcaslin@jenner.com

*Attorneys for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc., and Mitsubishi Electric Visual Solutions America, Inc.*