Jon V. Swenson (SBN 233054)
BAKER BOTTS LLP
620 Hansen Way
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: jon.swenson@bakerbotts.com

John M. Taladay (*pro hac vice*)
Erik T. Koons (*pro hac vice*)
Charles M. Malaise (*pro hac vice*)
BAKER BOTTS LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
Email: john.taladay@bakerbotts.com
Email: erik.koons@bakerbotts.com
Email: charles.malaise@bakerbotts.com

*Attorneys for Defendant Koninklijke Philips N.V.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*Electrograph Sys., Inc. v. Hitachi, Ltd.*, No. 11-cv-01656;<br><br>*Electrograph Sys., Inc. v. Technicolor SA*, No. 13-cv-05724;<br><br>*Siegel v. Hitachi, Ltd.*, No. 11-cv-05502;<br><br>*Siegel v. Technicolor SA*, No. 13-cv-05261;<br><br>*Best Buy Co., Inc. v. Hitachi, Ltd.*, No. 11-cv-05513;<br><br>*Best Buy Co., Inc. v. Technicolor SA*, No. 13-cv-05264; | Case No. 07-5944-SC<br><br>MDL No. 1917<br><br>**KONINKLIJKE PHILIPS N.V.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:       February 6, 2015<br>Time:       10:00 a.m.<br>Place:      Courtroom No. 1, 17th Floor<br><br>Hon. Samuel Conti |

1

2 *Interbond Corp. of Am. v. Hitachi, Ltd.*,
No. 11-cv-06275;

3

4 *Interbond Corp. of Am. v. Technicolor SA*,
No. 13-cv-05727;

5 *Office Depot, Inc. v. Hitachi, Ltd.*,
No. 11-cv-06276;

6

7 *Office Depot, Inc. v. Technicolor SA*,
No. 13-cv-05726;

8

9 *CompuCom Sys., Inc. v. Hitachi, Ltd.*,
No. 11-cv-06396;

10 *P.C. Richard & Son Long Island Corp. v.*
*Hitachi, Ltd.*,

11 No. 12-cv-02648;

12

13 *P.C. Richard & Son Long Island Corp. v.*
*Technicolor SA*,
No. 13-cv-05725;

14

15 *Schultze Agency Servs., LLC v. Hitachi, Ltd.*,
No. 12-cv-02649;

16

17 *Schultze Agency Servs., LLC v. Technicolor SA*,
No. 13-cv-05668;

18

19 *Tech Data Corp. v. Hitachi, Ltd.*,
No. 13-cv-00157;

20 *Dell Inc. v. Hitachi Ltd.*,
No. 13-cv-02171;

21

22 *Sears, Roebuck and Co. and Kmart Corp. v.*
*Technicolor SA*,

23 No. 13-cv-05262

24 *Sears, Roebuck and Co. and Kmart Corp. v.*
*Chunghwa Picture Tubes, Ltd.*,

25 No. 11-cv-05514

26 *Sharp Electronics Corp. v. Hitachi Ltd.*,
No. 13-cv-1173 SC

27

28 *Sharp Electronics Corp. v. Koninklijke Philips*
*Elecs., N.V.*,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

| | | |
|---|---|---|
| 1 | No. 13-cv-2776 SC | ) |
| 2 | | ) ) |
| | *ViewSonic Corp. v. Chunghwa Picture Tubes,* | ) |
| 3 | *Ltd.,* No. 14-cv-2510 SC | ) ) |
| 4 | | ) ) |
| | *All Indirect Purchaser Actions* | ) |
| 5 | | ) |

6

7

8

9

10      **<u>REDACTED VERSION OF THE DOCUMENT SOUGHT TO BE SEALED</u>**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................... 1

II.    APPLICABLE LEGAL STANDARDS ................................................................... 3

    A.    Conspiracy to Violate Section 1 of the Sherman Act ................................. 3

    B.    Liability of Parent Corporation for Acts of Its Subsidiary .......................... 4

III.   ARGUMENT ........................................................................................................... 7

    A.    Plaintiffs have failed to identify any evidence suggesting that KPNV knew about the alleged conspiracy let alone knowingly agreed to join it. ................................. 7

        1.    Nothing about the use of business groups and subsidiaries to organize a global, multi-billion dollar corporate family implies that KPNV directly participated in the alleged conspiracy. ................................. 7

        2.    Nothing in the employment history of Gerald Kleisterlee suggests that KPNV directly participated in the alleged conspiracy. ................................. 9

        3.    Nothing about the formation and operation of LPD suggests that KPNV directly participated in the alleged conspiracy. ................................. 10

        4.    Plaintiffs cannot rely on the hearsay statements of the European Commission or the Delaware Court of Chancery to oppose summary judgment. ................................. 12

    B.    Plaintiffs have not alleged that PDC has any connection to the alleged conspiracy and have failed to identify any evidence that the Philips Subsidiaries were the agents of KPNV. ................................. 13

CONCLUSION ..................................................................................................................... 15

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3   CASES

4   *BanxCorp v. Apax Partners, L.P.*,
5   No. 10-cv-4769, 2011 WL 1253892 (D.N.J. Mar. 28, 2011) ............................................................5

6   *Bhatti v. Trustees of Boston University*,
   659 F.3d 64 (1st Cir. 2011) ................................................................................................... 12

7   *Black v. JP Morgan Chase & Co.*,
8   Civ. Action No. 10-848, 2011 WL 4102802 (W.D. Pa. Aug. 10, 2011) ............................................5

9   *Bowoto v. Chevron Texaco Corp.*,
   312 F. Supp. 2d 1229 (N.D. Cal. 2004) .................................................................................4

10

11   *Copperweld v. Independence Tube*,
   467 U.S. 752 (1984) ............................................................................................................6

12   *Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd*,
13   No. 05-60055-CIV, 2011 WL 1232986 (S.D. Fla. Mar. 30, 2011) .....................................................5

14   *Doe ex rel. Doe v. State of Hawaii Dept. of Educ.*,
   351 F. Supp. 2d 998 (D. Haw. 2004) .....................................................................................9

15
16   *E. & J. Gallo Winery v. EnCana Energy Services, Inc.*,
   No. CV F 03-5412 AWI LJO, 2008 WL 2220396 (E.D. Cal. May 27, 2008) .................... 4, 5, 8, 14

17   *In re California Title Ins. Antitrust Litig.*,
18   No. C 08-01341, 2009 WL 1458025 (N.D. Cal. May 21, 2009) ......................................................5

19   *In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999) ............................................................................................3, 4

20

21   *In re Florida Cement and Concrete Antitrust Litig.*,
   746 F. Supp. 2d 1291 (S.D. Fla. 2010) ...................................................................................6

22   *In re Fresh and Process Potatoes Antitrust Litig.*,
23   834 F. Supp. 2d 1141 (D. Idaho 2011) ..............................................................................5, 11

24   *In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010) ................................................................................................6

25
26   *In re Pressure Sensitive Labelstock Antitrust Litig.*,
   566 F. Supp. 2d 363 (M.D. Pa. 2008) ..................................................................................11

27   *In re Processed Egg Products Antitrust Litig.*,
28   821 F. Supp. 2d 709 (E.D. Pa. 2011) .....................................................................................6

*Jim v. County of Hawaii,*
  33 Fed. App'x 857 (9th Cir. 2002) ................................................... 12

*Kendall v. Visa U.S.A. Inc.,*
  No. C 04-04276 JSW, 2005 WL 2216941 (N.D. Cal. July 25, 2005) ........................ 1, 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ............................................................ 4

*Nobody in Particular Presents, Inc. v. Clear Channel Commcn's, Inc.*
  ("NIPP"), 311 F. Supp. 2d 1048 (D. Colo. 2004) ................................ 5, 6

*Oliver v. Ralph's Grocery Co.,*
  654 F.3d 903 (9th Cir. 2011) ...................................................... 2

*Perez v. State Farm Mut. Auto. Ins. Co.,*
  No. C 06-01962 JW, 2011 WL 5833636 (N.D. Cal. Nov. 15, 2011) ..................... 6

*Pickern v. Pier 1 Imports (U.S.), Inc.,*
  457 F.3d 963 (9th Cir. 2006) .............................................. 2, 13, 14

*Precision Associates, Inc. v. Panalpina World Transport, Ltd.,*
  No. CV-08-42 (JG)(VVP), 2013 WL 6481195 (E.D.N.Y. Sept. 20, 2013) ................ 8, 9

*Sun Microsystems Inc. v. Hynix Semiconductor, Inc.,*
  622 F. Supp. 2d 890 (N.D. Cal. 2009) ....................................... 5, 14

*United States v. Bestfoods,*
  524 U.S. 51 (1998) ......................................................... 7, 11

*United States v. United States Gypsum Co.,*
  438 U.S. 422 (1978) ............................................................ 3

*Vichi v. Koninklijke Philips Electronics, N.V.,*
  85 A.3d 725, 783 (Del. Ch. 2014) .............................................. 13

## STATUTES

Dutch Civil Code Art. 2:250 ......................................................... 11

# I.        INTRODUCTION

Plaintiffs allege that Defendant Koninklijke Philips N.V. (f/k/a Koninklijke Philips Electronics N.V. ("KPNV") violated section 1 of the Sherman Act by knowingly entering into an agreement with other Defendants to fix the prices of CRTs.  While Plaintiffs alleged involvement by KPNV, and survived dismissal under Rule 12(b)(6), they can no longer hide behind conjecture and speculation.  In responding to this Motion, Plaintiffs were finally required to show their cards with regard to evidence supporting their claim against KPNV—but discovery has left them empty-handed.  Plaintiffs have failed to identify evidence establishing a genuine issue of material fact with regard to whether KPNV "knowingly" joined the conspiracy.  *See Kendall v. Visa U.S.A. Inc.*, No. C 04-04276 JSW, 2005 WL 2216941, at *2 (N.D. Cal. July 25, 2005).

Like many large corporate organizations, the businesses of Philips are managed at a high level by a holding company with a small number of employees—a very small number in the case of KPNV—and then those businesses are operated around the globe through separately incorporated subsidiaries that collectively employ hundreds of thousands of individuals, as was the case with the other "Philips" defendants, Philips Electronics North America Corporation, Philips Taiwan Limited, and Philips do Brasil, Ltda. (collectively, the "Philips Subsidiaries").  In that arrangement, under fundamental corporate law principles, KPNV is a legally separate entity from the Philips Subsidiaries and cannot be held liable for their acts absent a showing of agency or vicarious liability.  Because no evidence in the record suggests that KPNV knowingly agreed to join the alleged conspiracy, KPNV moved this Court for an award of summary judgment on all claims against it.  Plaintiffs oppose KPNV's Motion on two primary grounds, neither of which can withstand scrutiny.

First, Plaintiffs essentially concede they have no direct evidence linking KPNV to the alleged conspiracy, *see* Opp'n at 14–15, but argue that KPNV's agreement can be inferred from three categories of circumstantial evidence—the general corporate structure of Philips, general interactions between employees of KPNV and employees of the Philips Subsidiaries, and the formation of LG Philips Display ("LPD").  *Id.* at 15–21.  Under Plaintiffs' theory, these points demonstrate that KPNV exercises such significant control over its subsidiaries that it would be reasonable for a fact finder to

1  infer that KPNV "must have" intentionally and voluntary joined the alleged conspiracy.  That theory,

2  divorced of any relationship to the alleged conspiracy itself, is premised on such an unsupportable leap

3  in logic that the Court should reject it out-of-hand, as acceptance of it is the admission of unadulterated

4  speculation.  Moreover, all of the circumstantial evidence that purportedly shows extreme control by

5  KPNV over its subsidiaries involves nothing more than run-of-the-mill interactions between a holding

6  company parent and its subsidiaries.

7          Second, Plaintiffs argue that, even assuming KPNV is correct that it did not knowingly join the

8  alleged conspiracy, an issue of material fact exists over whether KPNV can be held liable based on the

9  conduct of its alleged agent—Philips Display Components ("PDC").  *See* Opp'n at 22–25.[1]  Plaintiffs

10  fail, however, to note that PDC is not a named Defendant, that it is not an incorporated entity,[2] and that

11  it is not mentioned a single time in any of Plaintiffs' Complaints.[3]  In other words, on the eve of trial,

12  Plaintiffs have decided to introduce a completely new theory of liability that is premised on the

13  relationship between KPNV and (the non-entity) PDC, as opposed to the relationship between KPNV

14  and the Philips Subsidiaries.  The Ninth Circuit has made clear that this type of sandbagging violates

15

16

17  ─────────────────────────

18  [1] Plaintiffs do not argue that LPD was the agent of KPNV or that the veil protecting LPD's

19  shareholders should be pierced under an alter ego theory.  *See generally* Opp'n.  Therefore, Plaintiffs
    extended discussion about the operation of LPD is essentially irrelevant.  *See id*. at 8–12.

20  [2] ███████████████████████████████████████████████████████████████████████  *See* Ex. 1,

21  Jan De Lombaerde Dep. Tr. (10/9/2014) at 37:13–19 ██████████████████████████████

22  ████████████████████████████████████████████████████████████████████████████

23  All references to exhibits in this motion refer to exhibits attached to the accompanying Declaration of
    Tiffany B. Gelott.

24  [3] *See* Sears Roebuck and Co. and KMart Corp., 2nd Am. Compl. ¶¶ 41–45 (identifying the purportedly
    relevant Philips-related entities) (Oct. 3, 2013); Sharp Compl. ¶¶ 32–37 (June 17, 2013) (same);

25  Circuit City, 1st Am. Compl. ¶¶ 44–48 (Oct. 3, 2013) (same); Target Corp., 2nd Am. Compl. ¶¶ 39–43
    (Oct. 3, 2013) (same); Best Buy Co., Inc. *et al.*, 1st Am. Compl. ¶¶ 45–49 (Oct. 3, 2013) (same);

26  Viewsonic Corp., Compl. ¶¶ 31–35 (May 30, 2014) (same); Indirect Purchaser Plaintiffs, 4th Consol.
    Am. Compl. ¶¶ 54–58 (Jan. 10, 2013) (same).

27

28

the notice pleading requirements of Federal Rule of Civil Procedure 8.[4]  For that reason, the Court should wholly disregard Plaintiffs' agency argument.  However, even if the Court applies Plaintiffs' PDC argument to *each* of the Philips Subsidiaries, Plaintiffs have still fallen woefully short in attempting to create an issue of material fact on the issue of agency.  The touchstone consideration of whether a subsidiary is the agent of its parent corporation is day-to-day operational control.  Plaintiffs must show that KPNV "extensively controlled" its subsidiaries to the point where the subsidiaries effectively lacked their own identity.  None of the evidence identified by Plaintiffs even arguably shows that KPNV dominated the day-to-day control of its subsidiaries.  Instead, the evidence shows only a holding company setting general policies and goals with subsidiaries then responsible for applying those policies and achieving those goals.

## II.     APPLICABLE LEGAL STANDARDS

### A.     Conspiracy to Violate Section 1 of the Sherman Act

Participation in a price-fixing agreement "c[an] only be predicated on the knowing involvement of each defendant, considered individually, in the conspiracy charged." *United States v. United States Gypsum Co.*, 438 U.S. 422, 463 (1978).  Where a defendant who is alleged to have engaged in concerted price fixing moves for summary judgment, "the antitrust plaintiff must present evidence sufficient to carry its burden of proving that there was such an agreement." *In re Citric Acid Litig.*, 191 F.3d 1090, 1093 (9th Cir. 1999).  The plaintiff must show that the defendant "knowingly" joined the alleged scheme. *Kendall*, 2005 WL 2216941, at *2.[5]

---

[4] *See Oliver v. Ralph's Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011) (finding that allegations first raised in an expert report were properly not considered by district court); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006) (holding that where "the complaint gave the Appellees no notice of the specific factual allegations presented for the first time in [plaintiff's] opposition to summary judgment" such allegations could not support plaintiff's opposition).

[5] In *Serfecz v. Jewel Food Stores, Inc.*, the court granted the defendants' motion for summary judgment because plaintiffs' evidentiary showing that there was an agreement was based on "only speculation, hunch, and theory."  No. 92 C 4171, 1994 WL 478576, at *13 (N.D. Ill. Aug. 31, 1994).  The court explained that it was not enough to show that two defendants may have reaped a benefit of the allegedly anticompetitive conduct or that they had a "confluence of interest" in a certain outcome. *Id.*

(Continued...)

---

Plaintiffs "can establish a genuine issue of material fact by producing either direct evidence that [KPNV] conspired to fix [CRT] prices or circumstantial evidence from which a reasonable fact finder could conclude that [KPNV] so conspired." *In re Citric Acid*, 191 F.3d at 1093. "Direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted." *Id*. at 1094.

Where a plaintiff relies on circumstantial evidence, he is entitled to "the benefit of all reasonable inferences" from the evidence. *Id*. However, "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Id*. "Instead, an inference of conspiracy is sustainable only if reasonable in light of the competing inferences of independent action, and to survive a motion for summary judgment a plaintiff seeking damages for a violation of § 1 must present evidence that tends to exclude the possibility that the alleged conspirators acted independently." *Id*. (citations, brackets, and ellipsis omitted).[6]

### B.      Liability of Parent Corporation for Acts of Its Subsidiary

"The independence of a subsidiary from the parent corporation is to be presumed." *E. & J. Gallo Winery v. EnCana Energy Services, Inc.*, No. CV F 03-5412 AWI LJO, 2008 WL 2220396, at *5 (E.D. Cal. May 27, 2008). "Only in unusual circumstances will the law permit a parent corporation to be held either directly or indirectly liable for the acts of its subsidiary." *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1234 (N.D. Cal. 2004). One of those "unusual" situations is where a principal-agent relationship is formed.[7] To show agency, "[a]s a practical matter, the parent must be

_____

(...Continued)

Because there was not "sufficient evidence to support an inference of participation in an illegal antitrust conspiracy," defendants were entitled to an award of summary judgment. *Id*.

[6] *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case").

[7] Plaintiffs assert that agency in the context of the Sherman Act claim is governed by federal common law, and that KPNV has conceded this point. *See* Opp'n at 23 n.115. KPNV has not conceded any point, and reserves all rights regarding which law governs Plaintiffs' agency claim (assuming it has been properly raised), but will assume for the sake of argument that federal common law applies for purposes of this Motion only.

1  shown to have moved beyond the establishment of general policy and direction for the subsidiary and

2  in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy."

3  *E. & J. Gallo Winery*, 2008 WL 2220396, at *11.[8]  The "touchstone" in considering whether a

4  subsidiary is the agent of the parent is "day to day control."  *Sun Microsystems Inc. v. Hynix*

5  *Semiconductor, Inc.*, 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009).

6       In an apparent attempt to avoid that well-established construct, Plaintiffs seem to suggest that

7  there is an alternative approach to assessing whether a parent corporation can he held accountable for

8  the acts of its subsidiaries.  *See* Opp'n at 15 (citing *Nobody in Particular Presents, Inc. v. Clear*

9  *Channel Commcn's, Inc.* ("NIPP"), 311 F. Supp. 2d 1048, 1070 (D. Colo. 2004) and *BanxCorp v.*

10 *Apax Partners, L.P.*, No. 10-cv-4769, 2011 WL 1253892, at *4 (D.N.J. Mar. 28, 2011)).

11      But the Plaintiffs are relying on a standard that does not exist or, at best, is not controlling.  As

12 an initial matter, whether the Colorado district court in *NIPP* intended to depart from the standard

13 agency test is unclear, *see NIPP*, 311 F. Supp. 2d at 1069 (analogizing "control or direction" to the

14 conduct of "any principal directing the conduct of an agent"), and Plaintiffs have identified no court in

15 the Ninth Circuit that has considered direct participation under a "control or direction" theory.  In fact,

16 irrespective of *NIPP*, courts in the Ninth Circuit continuously have held a parent responsible for the

17 acts of its subsidiary only where the subsidiary is the agent or alter ego of the parent.[9]  Further, the

---

18

19 [8] *See also Black v. JP Morgan Chase & Co.*, Civ. Action No. 10-848, 2011 WL 4102802, at *32 (W.D.
   Pa. Aug. 10, 2011) (explaining that "activities that constitute standard parent-subsidiary interactions,

20 such as the parent corporation appointing the subsidiary's officers and directors, influencing executive
   compensation, approving budgets, gathering information about corporate performance, and receiving

21 distributions of subsidiary profits, do not reflect daily, operational control"); *Court-Appointed Receiver*
   *of Lancer Offshore, Inc. v. Citco Group Ltd*, No. 05-60055-CIV, 2011 WL 1232986, at *4 (S.D. Fla.

22 Mar. 30, 2011) ("In order for a parent company to be liable for its subsidiary's acts under an agency

23 theory, the parent must exercise control to the extent that the subsidiary has 'no separate corporate
   interests of its own and functions solely to achieve the purposes of the dominant corporation.'").

24 [9] *See, e.g.*, *In re Fresh and Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1171 (D. Idaho

25 2011) ("Plaintiffs have not plausibly alleged that Potandon's separate corporate status should be
   ignored under any alter ego or agency theory of liability."); *In re California Title Ins. Antitrust Litig.*,

26 No. C 08-01341, 2009 WL 1458025, at *7 (N.D. Cal. May 21, 2009) ("Thus, to state a claim against
   the Parent Corporations, Plaintiffs either must set forth facts establishing direct participation in the

27 alleged conspiracy or set forth sufficient allegations showing that the Parent Corporations are

28                                                                      (Continued...)

1  application of the *NIPP* court's logic to this case is doubtful.  The *NIPP* court considered the Supreme

2  Court's holding in *Copperweld v. Independence Tube*, 467 U.S. 752 (1984) that a parent and

3  subsidiary cannot conspire with each other for section 1 purposes because they are a single economic

4  enterprise, and then appears to have relied upon that theory in assessing the parent's direct

5  participation in the alleged conspiracy.  *NIPP*, 311 F. Supp. 2d at 1069.  If the *NIPP* court was relying

6  on *Copperweld*'s single economic entity theory to lessen the showing a plaintiff must make to hold a

7  parent liable for the conduct of its subsidiary, then that view is apparently in the distinct minority—

8  courts, in this Circuit and others, have routinely rejected such an expansion of *Copperweld*, and this

9  Court should do the same.[10]

10

11

12

13

_____

14  (...Continued)

15  vicariously liable for the acts of their subsidiary corporations."); *Sun Microsystems Inc.*, 622 F. Supp.
   2d at 901 (considering "whether, as an alternative to establishing [parent]'s liability via its relationship
16  and contacts with [its subsidiary], plaintiff has sufficient evidence to suggest that [parent]
   independently participated in any alleged DRAM conspiracy").
17

18  [10] *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010) ("Contrary to
   plaintiffs' suggestion, however, it does not follow from *Copperweld* that subsidiary entities are
19  automatically liable under § 1 for any agreements to which the parent is a party.  As a matter of well-
   settled common law, a subsidiary is a distinct legal entity and is not liable for the actions of its parent
20  or sister corporations simply by dint of the corporate relationship."); *Perez v. State Farm Mut. Auto.
   Ins. Co.*, No. C 06-01962 JW, 2011 WL 5833636, at *3 (N.D. Cal. Nov. 15, 2011) ("Nothing in the
21  *Copperweld* opinion speaks to the question of whether the fact that a plaintiff has Article III standing
   to sue a parent corporation means that the plaintiff also has Article III standing to sue a wholly owned
22  subsidiary of that corporation."); *In re Processed Egg Products Antitrust Litig.*, 821 F. Supp. 2d 709,
   749 (E.D. Pa. 2011) (rejecting expansion of *Copperweld* and explaining that "Plaintiffs' proposed basis
23  for imputing liability premised on a 'single enterprise' theory is unsupported by legal authority and
   does not provide occasion to disregard the separate corporate forms of these entities and impose
24  liability on them."); *In re Florida Cement and Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1323–
   24 (S.D. Fla. 2010) (rejecting expansion of single economic theory, in part, because "Plaintiffs do not
25  explain why, if *Copperweld* eliminated antitrust liability for cooperation between parent corporations
   and subsidiaries like VCNA and Prestige, VCNA should be held liable for Prestige's alleged
26  participation in the concrete conspiracy in this case.").

27

28

**III.    ARGUMENT**

> **A.    Plaintiffs have failed to identify any evidence suggesting that KPNV knew about the alleged conspiracy let alone knowingly agreed to join it.**

As discussed above, Plaintiffs can point to no evidence showing that any employee of KPNV had actual knowledge of the alleged conspiracy or that KPNV participated in the alleged conspiracy. Instead, Plaintiffs ask this Court to infer KPNV's agreement from circumstantial evidence, *see* Opp'n at 15–21, which limits the inferences that can be drawn from that evidence. But nothing about the evidence cited by Plaintiffs supports an inference that KPNV knowingly joined the conspiracy.

> **1.    Nothing about the use of business groups and subsidiaries to organize a global, multi-billion dollar corporate family implies that KPNV directly participated in the alleged conspiracy.**

Plaintiffs spend considerable time discussing the corporate structure of Philips, and specifically KPNV's use of a Board of Management and Product Divisions to manage its investments. *See* Opp'n at 2–7. Plaintiffs do not assert that the origination of this corporate structure had anything to do with the alleged conspiracy. Rather, Plaintiffs ask this Court to infer participation from the mere existence of a Board of Management and Product Divisions. The gist of their argument seems to be that the structure of Philips is such that KPNV exercises control over the operations of its subsidiaries, which makes it impossible to reach any conclusion except that KPNV knowingly participated in the alleged conspiracy. But all of the evidence cited is completely consistent with the legitimate operation of a large, multi-billion global corporation, and none of it suggests that the corporate structure itself is probative of whether KPNV directly participated in the alleged conspiracy.

For example, Plaintiffs rely heavily on a statement in the preamble to the Philips Company Manual ████████████████████████████████████████████████████████████ ████████████████████████████████████ Opp'n at 2 (citing Ex. 3 at 1). But that generic statement, and others like it, says ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████ Similarly, Plaintiffs do not argue that KPNV approval regarding ██████████████████████████████

1  ███████████████████████████████████████████████████████████████

2  ████████████████████████████. *See* Opp'n at 4.[11]

3       As another example, Plaintiffs cite ████████████████████████████

4  ███████████████████████████████████████████████████████████████████

5  ████████████████████████████ *See* Opp'n at 4 (citing Ex. 11). ████████ ████████████

6  ███████████████████████████████████████████████████

7  ███████.[12]

8       Plaintiffs stretch so far as to seek support from █████████████████████████

9  ███████████████████████████████████████████████████████████████████

10 ███████████████████████████████████████████████████████████████████

11 ████████████████████████████████████[13]  Yet, other than summary

12 conclusions, Plaintiffs never explain why the use of "One Philips" evidences anticompetitive behavior,

13 just as the slogan "One Thousand Philipses" would not disprove the question.[14]

14       The insufficiency of the evidence relied on by Plaintiffs is highlighted when compared to

15 allegations that were found to have stated a claim in *Precision Associates, Inc. v. Panalpina World*

16

17 ─────────────────

18 [11] *See United States v. Bestfoods*, 524 U.S. 51, 72 (1998) (explaining that appropriate parental involvement includes "monitoring of the subsidiary's performance, supervision of the subsidiary's

19 finance and capital budget decisions and articulation of general policies and procedures").

20 [12] *See* Ex. 11 at 1 to Pls.' Opp'n to KPNV Mot. for Summ. J. ████████████████

21 ██████████████████████████████████████████ *id.* ███████████████████████

22 ████████████████████████████████████████████

23 [13] *See* Ex. 2, Frans Spaargaren, Rule 30(b)(6) Deponent for KPNV, Dep. Tr. (11/5/2014) at 66:4–24

24 ████████████████████████████████████████████; *id.* at 78:20–25 ██████████

25 ███████████████████████████████

26 [14] *Cf. E. & J. Gallo Winery*, 2008 WL 2220396, at *6–*7 ("The common law of agency clearly

27 establishes that how the parties or entities refer to themselves or one another is not determinative of a principal/agent relationship.").

28



1   *Transport, Ltd.*, No. CV-08-42 (JG)(VVP), 2013 WL 6481195, at *17 (E.D.N.Y. Sept. 20, 2013).

2   There, the court held that the plaintiffs had adequately alleged direct participation by the parent

3   corporation in the anticompetitive conduct of its subsidiary by asserting that "the price-fixing

4   conspiracies alleged herein would not have worked unless there was involvement from both the parent

5   company and its subsidiaries." *Id.*

6       In sum, nothing about the standard corporate structure that KPNV employs to manage its

7   investments supports an inference that KPNV knowingly participated in the alleged conspiracy.

8       **2.**    **Nothing in the employment history of Gerald Kleisterlee suggests that**
                **KPNV directly participated in the alleged conspiracy.**

9

10       Desperate for any connection between KPNV and the alleged conspiracy, Plaintiffs turn to

11   Gerald Kleisterlee.  *See* Opp'n at 5–7.  Plaintiffs, of course, have no evidence whatsoever that

12   Kleisterlee actually knew or approved of the alleged conspiracy.  Their argument is entirely indirect

13   and, in fact, demands wholesale speculation.

14       Plaintiffs begin by comparing the fact that Kleisterlee was CEO of Philips Taiwan (a named

15   Defendant) from 1996 through 1998 with the fact that ██████████████████████████████████

16   ████████████████████████████████████   *See id.* at 6.  However, Plaintiffs do not argue that

17   ████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████[15]

19   Therefore, ████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████████   Plaintiffs "guilt by association"

22   standard is not the applicable law.

23       Plaintiffs next focus on Kleisterlee's time as an employee of KPNV, which began in January

24   1999.  *See* Opp'n at 6.  Plaintiffs seem to attribute significance to the fact that Kleisterlee selected Jim

25

26   [15] *See Doe ex rel. Doe v. State of Hawaii Dept. of Educ.*, 351 F. Supp. 2d 998, 1013 n.31 (D. Haw.

27   2004) ("Although knowledge of a public employee can be imputed to a public employer, the Court
finds no reason to extend the doctrine to impute a public employer's knowledge to its employees.").

28

1   Smith to replace David Chang as head of PDC's Asia Pacific Region. *Id.* However, again, Plaintiffs

2   fail to explain how █████████████████████████████████████████████████████

3   █████████████████████████████████████████████████████████████

4   ███████████████████████████[16]████████████████████████████████

5   ████████████████████████████████*see id.* at 7 n.33, █████████████

6   ██████████████████████████████████████████████████████

7   ████████  *See id.* at 17. By this standard, every attendee at every meeting would be charged with the

8   knowledge of every other attendee, whether the information was discussed or not. In sum, absent pure

9   speculation, Kleisterlee's one-time employment by KPNV certainly cannot be used to create an issue

10   of material fact concerning KPNV's alleged knowing agreement.

11          **3.**     **Nothing about the formation and operation of LPD suggests that KPNV**

12                     **directly participated in the alleged conspiracy.**

13       In discussing the formation and operation of LPD as evidence of KPNV's *direct* participation

14   in the conspiracy (as opposed to the participation of LPD or the Philips Subsidiaries), *see* Opp'n at 8–

15   12, Plaintiffs again lose sight of fundamental antitrust and corporate law principles: KPNV is a non-

16   controlling shareholder of LPD and therefore is presumed to be separate from LPD absent a finding of

17   vicarious liability under Dutch law. *See* Mot. at 16–25 (discussing veil piercing standards under Dutch

18   law). Ignoring that reality, Plaintiffs discuss LPD as if it were a subsidiary of KPNV. But the

19   evidence is undisputed that LPD is not a subsidiary of KPNV, *see* Mot. at 5–7 (collecting evidence),

20   and Plaintiffs do not argue that the corporate veil protecting LPD should be pierced so as to hold the

21   shareholders (KPNV and LG) liable for its acts. *See generally* Opp'n. Thus, Plaintiffs cannot simply

22

23

24 [16] *See* Ex. 3, Jim Smith Dep. Tr. (12/12/2013) at 279:5–7 ██████████████████████

25 ████████████████████████████; *see also* Ex. 2, Frans Spaargaren, Rule 30(b)(6)
Deponent for KPNV, Dep. Tr. (11/5/2014) at 135:14–25 █████████████████████████

26 ████████████████████████████████████████ Ex. 4, Roger De Moor, Rule
30(b)(6) Deponent for KPNV, Dep. Tr. (7/31/2012) at 201:10–13 ████████████████

27 ████████████████████████████████████████████████

28

1    treat the actions of LPD employees or agents as imputed to KPNV in opposing KPNV's Motion.  For

2    that reason, most of Plaintiffs' discussion concerning the formation and operation of LPD is inapposite.

3         The thrust of Plaintiffs' argument concerning LPD is continuation.  They argue that because the

4    underlying mechanics of the conspiracy did not change when the Subsidiaries divested their CRT

5    manufacturing assets, it is reasonable to assume that nothing else changed either, including KPNV's

6    knowing participation.  *See id.* at 18–21.  That argument, however, obviously assumes that KPNV had

7    already knowingly joined the conspiracy.  But there is no evidence that KPNV in fact knew about the

8    conspiracy prior to (or indeed after) the formation of LPD.  *See supra*, at 10 n.15.  ████████████

9    ██████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████████.[17]

11        Finally, Plaintiffs' reliance on KPNV's appointment of members of LPD Supervisory Board is

12   unavailing.  For similar reasons that officers who hold positions with both the parent and the subsidiary

13   "can and do change hats to represent the two corporations separately, despite their common

14   ownership," *Bestfoods*, 524 U.S. at 69–70, there is nothing inherently problematic with KPNV

15   selecting its own employees or employees of its subsidiaries to sit on the Supervisory Board, especially

16   where Dutch law requires that supervisory board members be independent.[18]  At the very least,

17

---

[17] Without citing any support, Plaintiffs assert that KPNV's decision to form LPD with LG shows an intent to participate in the alleged conspiracy.  *See* Opp'n at 18.  That unsupported assertion stands in stark contrast to the testimony of Spaargaren, ██████████████████████████████████████ ████████████████████████████████████  Ex. 2, Frans Spaargaren, Rule 30(b)(6) Deponent for KPNV, Dep. Tr. (11/5/2014) at 38:6–39:4.  In fact, as several courts have recognized, there are many legitimate reasons why two corporations would form a joint venture.  *See In re Fresh and Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d at 1174 (finding formation of joint venture was not evidence of conspiratorial agreement because of "obvious alternative explanation" for its formation); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 377 (M.D. Pa. 2008) (finding that parent's decision to sell subsidiary was "entirely consistent" with parent's pursuit of its own economic interests and did not support an inference that parent participated in wrongful conduct allegedly engaged in by subsidiary).

[18] Under Dutch law, members of the LPD Supervisory Board were required to act in the best interests of LPD.  *See* Dutch Civil Code Art. 2:250 ("In the performance of their duties the Supervisory Directors (members of the Supervisory Board) shall be guided by the interests of the Corporation and

(Continued...)

1  Plaintiffs have not explained why the appointment of members of the Supervisory Board suggests

2  knowing agreement, especially where KPNV was a non-controlling shareholder of LPD.

3          **4.     Plaintiffs cannot rely on the hearsay statements of the European
            Commission or the Delaware Court of Chancery to oppose summary
4            judgment.**

5          Although Plaintiffs discuss statements made by the European Commission and the Delaware

6  Court of Chancery concerning the alleged conspiracy, *see* Opp'n at 21, the Court should give no

7  weight to those documents.  "A trial court can only consider admissible evidence in ruling on a motion

8  for summary judgment."  *Jim v. County of Hawaii*, 33 Fed. App'x 857, 858 (9th Cir. 2002).  And "[i]t

9  is black-letter law that hearsay evidence cannot be considered on summary judgment for the truth of

10  the matter asserted."  *Bhatti v. Trustees of Boston University*, 659 F.3d 64, 71 (1st Cir. 2011).  That

11  approach "makes sense" because "[t]here is no way to test the reliability of an amorphous, out-of-court

12  statement or to gage the intentions or credibility of the person who made the statement."  *Id.*

13          As the Ninth Circuit explained in *United States v. Sine*, "judicial findings of facts are hearsay,

14  inadmissible to prove the truth of the findings unless a specific hearsay exception exists." 493 F.3d

15  1021, 1036 (9th Cir. 2007).  Likewise, in *Chevron Corp. v. Bonifaz*, a civil suit for malicious

16  prosecution, the court held that Chevron could not introduce a court order sanctioning Bonifaz for his

17  conduct in bringing certain claims.  No. 09-05371 CW, 2010 WL 1948681, at *6 (N.D. Cal. May 12,

18  2010).  After noting that findings of fact by another tribunal are hearsay in federal court, the *Bonifaz*

19

20  _____

21  (...Continued)

22  its affiliated enterprise."); *see also* Ex. 2, Frans Spaargaren, Rule 30(b)(6) Deponent for KPNV, Dep.
    Tr. (11/5/2014) at 45:8–46:7

23

24

25                              *see id.* at 120:7–15

26

27

28

1   court explained that "Chevron offers no hearsay exception or controlling authority to establish that

2   these findings are admissible for their truth. The sanctions order constitutes competent evidence that

3   Bonifaz was sanctioned, but the underlying findings made in support thereof are hearsay and not

4   admissible for their truth." *Id.* Because Plaintiffs do not offer any explanation as to why those

5   opinions of the European Commission and the Delaware Court of Chancery would be admissible for

6   the truth of the statements within them, the Court should not consider them in resolving KPNV's

7   Motion.[19]

8              **B.     Plaintiffs have not alleged that PDC has any connection to the alleged conspiracy
                        and have failed to identify any evidence that the Philips Subsidiaries were the
9                       agents of KPNV.**

10             Initially, the Court should refuse to consider Plaintiffs' agency theory. Federal Rule of Civil

11  Procedure 8(a)(2) requires that "the allegations in the complaint give the defendant fair notice of what

12  the plaintiff's claim is and the grounds upon which it rests." *Pickern*, 457 F.3d at 968 (citation

13  omitted). Plaintiffs' Complaints are by and large identical as to the Philips-related entities: Each

14  Complaint names KPNV and the three Philips Subsidiaries as Defendants, and alleges that KPNV

15

16  _____

17  [19] However, even if the Court could consider the proffered hearsay, it would not support Plaintiffs'
    theories, in part because Plaintiffs' presentation of it is less than accurate. Plaintiffs assert that "two

18  independent tribunals concluded that Royal Philips knew about the conspiracy," and that the Delaware
    Chancery Court "concluded that there was sufficient admissible evidence in the record to support a

19  reasonable inference that Royal Philips was aware of LPD's and its other subsidiaries' participation in
    an illegal price fixing cartel." Opp'n at 21. Plaintiffs fail to note that the Court of Chancery explained

20  that "the EC's findings regarding [KPNV]'s liability for LPD's actions were in fact predicated on
    theories of imputed liability unique to EU competition law," and that "the EC decision did not find that

21  [KPNV] participated in the CRT price fixing cartel directly, either before or after the formation of
    LPD, or that it had actual knowledge of LPD's price fixing activity." *Vichi v. Koninklijke Philips*

22  *Electronics, N.V.*, 85 A.3d 725, 783 (Del. Ch. 2014). Further, the Chancery Court was considering a
    completely different issue than raised here. The Chancery Court considered KPNV's knowledge of the

23  alleged conspiracy in the context of assessing whether the plaintiff had proven scienter with respect to
    the alleged fraud of KPNV, and in doing so, the court appears to have imputed knowledge of former

24  employees of subsidiaries of KPNV to KPNV without considering whether such imputation was
    appropriate. *See id.* at 809–10. But "knowing" about the conspiracy is not enough—Plaintiffs must

25  prove a knowing *agreement*. Nothing in the *Vichi* decision, or its discussion of the EC's decision,
    supports an inference that KPNV knowingly entered into an agreement to fix prices of CRTs, and

26  tellingly, Plaintiffs have not argued that *Vichi* has any preclusive effect here.

27

28

1   "dominated and controlled the finances, policies and affairs of" each of the three Subsidiaries.  *See,*

2   *e.g.*, Sears/KMart 2nd Am. Compl. ¶¶ 41–45.[20]  Although Plaintiffs do include generic agency

3   allegations as to unnamed co-conspirators and then name several entities purportedly involved in the

4   alleged conspiracy but who are not named as Defendants, *see, e.g.*, *id.* ¶¶ 67–75, none of the

5   Complaints provide any hint that Plaintiffs intend to pursue a claim against KPNV based on a

6   principal-agency relationship with PDC.

7        At the eleventh hour, however, Plaintiffs now assert that "[t]he relevant relationship for the

8   Court's agency analysis is between Royal Philips and PDC because PDC's employees, who were

9   located at various Philips subsidiaries including Defendants PENAC, Philips Taiwan, and Philips do

10  Brasil, attended conspiracy meetings and fixed CRT prices."  Opp'n at 22 n.114.  But Plaintiffs cite no

11  evidence supporting the idea that PDC had *any* employees, and that is because PDC did not have any

12  employees.  Whatever "individuals" Plaintiffs are referring to, they were not merely "located" at

13  subsidiaries, they were employees of those subsidiaries.  Why Plaintiffs did not argue that a principal-

14  agent relationship exists between KPNV and the Philips Subsidiaries is irrelevant.  The only pertinent

15  fact is that they did not make that argument.  Instead, they chose to advance a new theory that is not

16  supported by any allegations in the Complaints.  Because Plaintiffs failed to properly notice their new

17  theory, the Court should refuse to consider it.  *See Pickern*, 457 F.3d at 968–69.

18       Even assuming that the Court treated Plaintiffs' agency argument as if it had been made against

19  each individual Subsidiary, it still must fail.[21]  Plaintiffs have provided no evidence that KPNV

20  dominated the day-to-day control of the Philips Subsidiaries, and none should be assumed by the

21

22

23  ───────────────

24  [20] Sharp also names Philips Consumer Electronics Co. as a Defendant.  *See* Sharp Compl. ¶ 35.

25  [21] Plaintiffs' failure to distinguish between the Subsidiaries in making its agency argument further
    illustrates that Plaintiffs have no evidence showing day-to-day control over any entity by KPNV.

26  Plaintiffs would apparently have this Court find that their agency argument applies to every single
    subsidiary within the Philips corporate family, yet they cite no support for such a broad holding,

27  especially on these facts.

28

Court.[22]  In fact, the record demonstrates that KPNV did *not* exercise day-to-day control over its subsidiaries.[23]  Thus, the same reasons why Plaintiffs' evidence does not show direct participation are the same reasons why Plaintiffs have failed to show a genuine material fact as to their agency theory.

**CONCLUSION**

For the foregoing reasons, the Court should enter an Order granting judgment in favor of KPNV on all of Plaintiffs' claims.

Dated: <u>January 23, 2014</u>

| | |
|---|---|
| | By: <u>/s/ John M. Taladay</u> |
| | John M. Taladay (*pro hac vice*) |
| Jon V. Swenson (SBN 233054) | Erik T. Koons (*pro hac vice*) |
| BAKER BOTTS LLP | Charles M. Malaise (*pro hac vice*) |
| 620 Hansen Way | BAKER BOTTS L.L.P. |
| Palo Alto, CA 94304 | 1299 Pennsylvania Ave., N.W. |
| Telephone: (650) 739-7500 | Washington, DC 20004-2400 |
| Facsimile: (650) 739-7699 | Telephone: (202) 639-7700 |
| Email: jon.swenson@bakerbotts.com | Facsimile: (202) 639-7890 |
| | Email: john.taladay@bakerbotts.com |
| | Email: erik.koons@bakerbotts.com |
| | Email: charles.malaise@bakerbotts.com |

*Attorneys for Defendant Koninklijke Philips N.V.*

---

[22] *See E. & J. Gallo Winery*, 2008 WL 2220396, at *10 (explaining that agency finding requires "more than the supervision of finance and capital budget decisions and responsibility for the setting of general policies and procedures for the subsidiary"); *Sun Microsystems Inc.*, 622 F. Supp. 2d at 899–901 ("Thus, the degree of control exercised by the parent in order for the subsidiary to qualify as an agent must therefore exceed that which is to be expected in the normal scope of any such relationship.").

[23] *See, e.g.*, Ex. 2, Frans Spaargaren, Rule 30(b)(6) Deponent for KPNV, Dep. Tr. (11/5/2014) at 79:20–23 ██████████████████ Ex. 4, Roger De Moor, Rule 30(b)(6) Deponent for KPNV, Dep. Tr. (7/31/2012) at 30:1–32:6 ██████████████ *id*. at 33:14–34:12 ████████████ *id*. at 70:1–5 ██████████ ; *id*. at 79:2–5 ██████