# EXHIBIT 1

1  ROBERT E. FREITAS (SBN 80948)
   rfreitas@ftklaw.com
2  JASON S. ANGELL (SBN 221607)
   jangell@ftklaw.com
3  JERRY CHEN (SBN 229318)
   jchen@ftklaw.com
4
5  FREITAS TSENG & KAUFMAN LLP
   100 Marine Parkway, Suite 200
   Redwood Shores, California 94065
6  Telephone: (650) 593-6300
   Facsimile: (650) 593-6301
7
8  Attorneys for Defendant
   HannStar Display Corporation
9
   **[Additional moving parties and counsel listed**
   **on signature page]**
10

11              UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13              (SAN FRANCISCO DIVISION)

14  IN RE: TFT-LCD (FLAT PANEL)              No. 3:07-md-1827 SI
    ANTITRUST LITIGATION                     MDL No. 1827
15                                           Individual Case No.: 3:10-cv-4572 SI
16  _____

17  This Document Relates to:               **DEFENDANTS' JOINT MOTION FOR**
                                            **PARTIAL SUMMARY JUDGMENT**
18  Case No. 3:10-cv-4572 SI                **DISMISSING BEST BUY'S (1) PRE-**
                                            **OCTOBER 8, 2006 CLAIMS AS TIME**
19  BEST BUY CO. INC., et al.,              **BARRED AND (2) POST-MAY 2003**
                                            **CLAIMS FOR FAILURE TO MITIGATE**
20                          Plaintiff,      **DAMAGES**

21            v.
                                            Date:      October 5, 2012
22  AU OPTRONICS CORPORATION, et al.,
                                            Time:      9:00 a.m.
23                          Defendants.
                                            Place:     Courtroom 10, 19th Floor
24
                                            Honorable Susan Illston
25

26

27

28
   ────────────────────────────────────────────────
   **DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
   **Case No. 3:07-MD 1827 SI, Case No. 3:10-cv-4572 SI**

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF FACTS ..................................................................................................3

    A.   Best Buy's Claims and Fraudulent Concealment Allegations..........................................3

    B.   Best Buy Learns of the "Panel Cartel" from an Alleged Conspirator in 2003 ...............4

    C.   Best Buy's Management Discusses the "Panel Cartel" at Internal Presentation...............................................................................................................5

    D.   Best Buy Employees believed the "Panel Cartel" was Impacting Their Business .......................................................................................................................6

    E.   Best Buy Employees Knew that an alleged "Panel Cartel" was Cause for Action .........................................................................................................................7

    F.   Best Buy Took No Action to Investigate the "Panel Cartel" Information When It Learned of that Information In May 2003 .........................................................8

II.   ARGUMENT ....................................................................................................................8

    A.   Best Buy's Claims for Conduct Prior to October 8, 2006 Are Barred By the Statute of Limitations ...................................................................................................9

        1.   Best Buy Cannot Establish that Fraudulent Concealment Tolls the Statute of Limitations on Its Claims ...........................................................10

        2.   Best Buy Cannot Rely on Equitable Tolling Doctrines It Did Not Plead ........14

    B.   Best Buy Failed to Mitigate Any Damages It Incurred After May 2003 ....................15

        1.   Antitrust Plaintiffs Are Not Permitted to Increase Treble Damages Through Inaction ..............................................................................................16

        2.   Best Buy Failed to Take Reasonable Steps After Learning of the Alleged "Panel Cartel" ...................................................................................19

III.  CONCLUSION..................................................................................................................23

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI

-i-

1

# TABLE OF AUTHORITIES

2

**FEDERAL CASES**

3

*Al's Serv. Ctr. v. BP Prods. N. Am., Inc.,*
   599 F.3d 720 (7th Cir. 2010) ................................................................22

4

*Am. Pipe & Constr. Co. v. Utah,*
   414 U.S. 538 (1974) ................................................................14, 15

5

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ................................................................9

6

*Borger v. Yamaha,*
   625 F.2d 390 (2d Cir. 1980) ................................................................16

7

*Caudle v. Bristow Optical Co.,*
   224 F.3d 1014 (9th Cir. 2000) ................................................................15

8

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ................................................................8

9

*Conmar Corp. v. Mitsui & Co.,*
   858 F.2d 499 (9th Cir. 1988) ................................................................11

10

*Daviton v. Columbia/HCA Healthcare Corp.,*
   241 F.3d 1131 (9th Cir. 2001) ................................................................22

11

*Ellerman Lines, Ltd. v. The President Harding,*
   288 F.2d 288 (2d Cir. 1961) ................................................................15

12

*Fishman v. Estate of Wirtz,*
   807 F.2d 520 (7th Cir. 1986) ................................................................19

13

*Fleming v. Lind-Waldock & Co.,*
   922 F.2d 20 (1st Cir. 1990) ................................................................14

14

*Hanover Shoe, Inc. v. United Shoe Machinery Corp.,*
   185 F. Supp. 826 (M.D. Pa. 1960) *aff'd per curiam,* 281 F.2d 481 (3d Cir. 1960)......16, 17, 18

15

*Hennegan v. Pacifico Creative Serv., Inc.,*
   787 F.2d 1299 (9th Cir. 1986) ................................................................11

16

*Hinton v. Pac. Enters.,*
   5 F.3d 391 (9th Cir. 1993) ................................................................15

17

*Illinois Brick Co. v. Illinois,*
   431 U.S. 720 (1977) ................................................................17

18

*In re Airline Ticket Comm'n Antitrust Litig.,*
   918 F. Supp. 283 (D. Minn. 1996) ................................................................17

19

*In re Aluminum Phosphide Antitrust Litig.,*
   905 F. Supp. 1457 (D. Kan. 1995) ................................................................12, 13, 14

20

*In re Cypress Semiconductor Sec. Litig.,*
   1992 U.S. Dist. LEXIS 22480 (N.D. Cal. Sept. 23, 1992) ................................................................16

21

*In Re Fortune Sys. Sec. Litig.,*
   680 F. Supp. 1360 (N.D. Cal. 1987) ................................................................15, 16

22

*In re Milk Products Antitrust Litig.,*
   84 F.Supp.2d 1016 (D. Minn. 1997) ................................................................10

23

24

25

26

27

28

---

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No. 3:10-cv-4572 SI**

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,*
     2006 WL 6846702 (E.D.N.Y. Aug. 7, 2006) ...........................................................23

*In re TFT-LCD (Flat Panel) Antitrust Litig. ("AT&T"),*
     MDL Dkt. No. 4706 (N.D. Cal. Jan. 30, 2012) .......................................................15

*In re TFT-LCD (Flat Panel) Antitrust Litig. ("Tweeter"),*
     MDL Dkt. No. 4867 ...............................................................................................14

*In re Visa Check/MasterMoney Antitrust Litig.,*
     280 F.3d 124 (2d Cir. 2001) ...................................................................................19

*Klehr v. A.O. Smith Corp.,*
     521 U.S. 179 (1997) ...............................................................................................18

*Litton Systems v. AT&T,*
     700 F.2d 785 (2d Cir. 1983) ...................................................................................16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
     475 U.S. 574 (1986) .................................................................................................8

*MCI v. AT&T,*
     708 F.2d 1081 (7th Cir. 1983) ..........................................................................16, 20

*Miller v. Perry Corp.,*
     No. 3:05-cv-7454, 2007 U.S. Dist. LEXIS 28399 (N.D. Ohio Apr. 17, 2007) .......23

*Pierce v. Ramsey Winch Co.,*
     753 F.2d 416 (5th Cir. 1985) ...................................................................................16

*Probst v. Reno,*
     917 F. Supp. 554 (N.D. Ill. 1995) ...........................................................................22

*Rotella v. Wood,*
     528 U.S. 549 (2000).................................................................................................18

*Royal Air Properties, Inc. v. Smith,*
     312 F.2d 210 (9th Cir. 1962) ...................................................................................16

*Rutledge v. Boston Woven Hose & Rubber Co.,*
     576 F.2d 248 (9th Cir. 1978) ........................................................................10, 11, 12

*Volk v. D.A. Davidson & Co.,*
     816 F.2d 1406 (9th Cir. 1987) .................................................................................10

*Wasco Prods., Inc. v. Southwall Tech., Inc.,*
     435 F.3d 989 (9th Cir. 2005) ...................................................................................14

*Western Shoe Gallery, Inc. v. Duty Free Shoppers, Ltd.,*
     593 F. Supp. 348 (N.D. Cal. 1984) .........................................................................11

*Yonak v. Severson,*
     2005 WL 3291817 (Minn. App. 2005) ..........................................................12, 13, 14

**STATE CASES**

*Alakayak v. British Columbia Packers, Ltd.,*
     48 P.3d 432 (Alaska 2002) ........................................................................................9

*Bemidji Sales Barn, Inc. v. Chatfield,*
     250 N.W.2d 185 (Minn. 1977) .................................................................................16

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No. 3:10-cv-4572 SI**

-iii-

First Nat'l Bank of LeCenter v. Farmers Union Mktg. and Processing Ass'n,
    371 N.W.2d 22 (Minn. App. 1985) ...................................................................16

Hanna Mining Co. v. Internorth, Inc.,
    379 N.W.2d 663 (Minn. Ct. App. 1986)..........................................................11

Holstad v. Southwestern Porcelain, Inc.,
    421 N.W.2d 371 (Minn. Ct. App. 1988)..........................................................10

Hydra-Mac, Inc. v. Onan Corp.,
    450 N.W.2d 913 (Minn. 1990) ........................................................................10

Relizon Co. v. Shelly J. Corp.,
    2004 Ohio 6884 (Ohio Ct. App. 2004) ...........................................................23

Tackleson v. Abbott-Nw. Hosp., Inc.,
    415 N.W.2d 733 (Minn. Ct. App. 1987)..........................................................11

Vasek v. Warren Grain & Seed Co.,
    353 N.W.2d 175 (Minn. Ct. App. 1984)..........................................................11

Wild v. Rarig,
    234 N.W.2d 775 (Minn. 1975) ........................................................................10

Williamson v. Prasciunas,
    661 N.W.2d 645 (Minn. Ct. App. 2003).....................................................10, 12

**FEDERAL STATUTES**

15 U.S.C. § 15b...................................................................................................9

Fed. R. Civ. Proc. 56(a) ......................................................................................8

**STATE STATUTES**

Minn. Stat. § 325D.64(1).....................................................................................9

**OTHER AUTHORITIES**

ABA Section of Antitrust Law, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005
    Ed. (2005) .....................................................................................................16, 21

Charles A. Sullivan, Breaking Up the Treble Play: Attacks on the Private Treble Damage
    Antitrust Action, 14 SETON HALL L. REV. 17, 31-32 (1983) .................................19

George A. Hay & Daniel Kelley, An Empirical Survey of Price-Fixing Conspiracies, 17 J.L.
    & ECON. 13 (1974)................................................................................................21

Neil W. Hamilton & Virginia B. Cone, Mitigation of Antitrust Damages, 66 OR. L. REV. 339,
    355 (1984)...........................................................................................................19

Phillip E. Areeda & Herbert Hovenkamp, ANTITRUST LAW: AN ANALYSIS OF ANTITRUST
    PRINCIPLES AND THEIR APPLICATION, (Aspen Pub. 2011), at ¶ 320a .......................18

S. Rep. 84-619, 84th Cong. (1st Sess. 1955), reprinted in 1955 U.S.C.C.A.N. 2328, 1955 WL
    3839, at *2330 ....................................................................................................18

U.S. Dep't of Justice Antitrust Div., ANTITRUST DIVISION MANUAL, Fourth Ed. (2008).............21, 22

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

-iv-

1   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2          PLEASE TAKE NOTICE that on October 5, 2012, at 9:00 a.m., or as soon thereafter as the

3   matter may be heard, in Courtroom 10, 19th floor, San Francisco, California, before the Honorable

4   Susan Illston, the defendants listed in the signature blocks below ("Defendants") will and hereby do

5   move the Court for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil

6   Procedure, dismissing any claims under the Sherman Act and Minnesota Antitrust Law of 1971

7   relating to conduct occurring before October 8, 2006 as barred by the applicable statute of limitations,

8   and barring any claims for damages for conduct after June 1, 2003, based on Best Buy's failure to

9   mitigate its damages.

          This motion is based on this Notice of Motion, the attached Memorandum of Points and

11  Authorities, the concurrently filed declaration of Robert E. Freitas and exhibits thereto, the pleadings

12  and records on file in this action, and on any additional evidence and arguments that may be

13  presented before or at the hearing of this motion.

14                              **ISSUES PRESENTED**

15          1.      Whether, where the record shows that Best Buy was aware of the facts underlying its

16  claims in May 2003, or at least was aware of facts that should have excited its suspicions and failed

17  to exercise any diligence in investigating those facts, its claims under the Sherman Act and

18  Minnesota Antitrust Law of 1971 ("MAL") relating to conduct occurring before October 8, 2006 are

19  barred by the applicable four-year statute of limitations.

20          2.      Whether Best Buy's alleged damages relating to conduct within the limitations period

21  are barred because Best Buy failed to take reasonable steps that could have eliminated its damages

22  entirely and instead knowingly allowed alleged treble damages to accumulate for several years.

23                            **<u>PRIOR RELEVANT ORDERS</u>**

24          Pursuant to this Court's Order of April 9, 2012 (MDL Dkt. No. 5430), Defendants are not

25  aware of any prior orders of the Court related to the issues in this motion.

26

27

28

---

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

1

**INTRODUCTION**

2       It is indisputable that at least as early as May 15, 2003 Best Buy knew about a *"panel cartel"*

3   that was *"conspiring to keep supply down to drive prices up"* in relation to notebook computers Best

4   Buy was attempting to purchase for resale.   On that date, a Best Buy Merchandising Director

5   documented this "panel cartel" information, shared it by e-mail with 10 other Best Buy employees

6   (including his superior, the Director of Computing Hardware), which information was in turn

7   presented at Best Buy's Regional Vice President meeting on May 28, 2003.   After those events, Best

8   Buy took no steps to investigate, address or attempt to halt the "panel cartel" it had identified.   Best

9   Buy's own documents prove these undisputed facts.

10       Having done nothing when it could timely do so, Best Buy now seeks over $850 million in

11   alleged damages (before trebling) for overcharges it purportedly incurred as a result of a "secret

12   conspiracy" related to LCD panels.   Those damages rest on claims under the Sherman Act and MAL

13   for TFT-LCD products Best Buy purchased directly and indirectly.   Best Buy alleges that it should be

14   able to recover for periods outside the four-year statute of limitations under the Sherman Act and

15   MAL because the alleged TFT-LCD conspirators "wrongfully concealed" a "secret conspiracy" that

16   Best Buy did not discover, and could not have discovered, until *December 2006*.   First Am. Compl. at

17   ¶¶ 309, 311.   There are no facts in the undisputed record, however, to support those allegations.

18   Instead, the opposite is true.   The "panel cartel" information was known internally among at least two

19   dozen Best Buy employees in May 2003, including management at the Vice President level.   Yet,

20   Best Buy did nothing to act on this information until October 8, 2010, when Best Buy finally filed its

21   complaint.   In light of these facts, Best Buy cannot possibly establish "fraudulent concealment" and

22   cannot recover under the Sherman Act or MAL.   Judgment dismissing all of Best Buy's claims for

23   damages that accrued before October 8, 2006 should therefore be entered.

24       Moreover, because it knew of this "panel cartel" activity in May 2003, Best Buy had a duty to

25   take affirmative steps to mitigate future losses.   Best Buy instead carried on business as usual *for*

26   *three-and-a-half years* with the Defendants and TFT-LCD product vendors before the Department of

27   Justice revealed its investigation, during which Best Buy failed to alert the authorities or the public of

28

---

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

1    its knowledge of a "panel cartel."  Once the DOJ announced its investigation, Best Buy waited

2    another three years and 10 months before it finally filed this lawsuit in October 2010.  Had Best Buy

3    acted promptly, it could have avoided the overwhelming majority of the alleged damages it now

4    claims.   Allowing Best Buy to recover damages in these circumstances would encourage future

5    antitrust plaintiffs with knowledge of price-fixing activities to increase their damages through

6    deliberate inaction and to keep secret such activities from other potential plaintiffs.  This would waste

7    judicial resources, undermine the purpose of the antitrust laws, and harm the public.   Judgment

8    dismissing all of Best Buy's claims for damages arising after June 1, 2003 should also be entered as a

9    result of Best Buy's failure to mitigate.

10   **I.      STATEMENT OF FACTS**

11           **A.      Best Buy's Claims and Fraudulent Concealment Allegations**

12           Best Buy filed its complaint in this case on October 8, 2010.  *See* Individual Dkt. No. 1.  It

13   asserts claims for "direct purchases" of LCD panels or products under Sherman Act Section 1 and the

14   Clayton Act.  First Am. Compl. ¶¶ 324-331.  Best Buy separately asserts claims under the Minnesota

15   Antitrust Act for its "indirect purchases" of LCD panels or products.  *Id.* ¶¶ 332-339.  All of Best

16   Buy's claims are based on an alleged conspiracy "from at least January 1, 1996 until approximately

17   December 11, 2006." *Id.* ¶ 1.

18           Best Buy alleges that any applicable statute of limitations was tolled as to its claims "[a]s a

19   result of Defendants' fraudulent concealment of their conspiracy."  *Id.* ¶ 323.  Specifically, Best Buy

20   alleges that it "had neither <u>actual nor constructive knowledge</u> of the facts supporting its claim for

21   relief despite diligence in trying to discover the pertinent facts."  *Id.* ¶ 309 (emphasis added).  Best

22   Buy further alleges that it "<u>did not discover, and could not have discovered through the exercise of</u>

23   <u>reasonable diligence</u>, the existence of the conspiracy alleged herein <u>until December 2006</u>, when

24   investigations by the DOJ and other antitrust regulators became public."  *Id.* (emphasis added).

25   Finally, Best Buy alleges that "Defendants' secret conspiracy did not give rise to facts that would put

26   Plaintiffs on <u>inquiry notice</u> that there was a conspiracy to fix the prices of LCD panels."  *Id.*

27   (emphasis added).  As described below, discovery has proven each of these allegations false.

28
**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

-3-

**B.     Best Buy Learns of the "Panel Cartel" from an Alleged Conspirator in 2003**

In October 2011, Best Buy produced in discovery documents that unequivocally demonstrate that it had knowledge of an LCD panel cartel by at least May 15, 2003.  Among other documents, Best Buy's production included a May 15, 2003 e-mail from Best Buy Merchandising Director Kevin Winneroski to 10 other Best Buy employees and to six employees of Toshiba America Information Systems ("TAIS"), an entity that sold notebook computers containing LCD panels to Best Buy. Declaration of Robert E. Freitas In Support of Mot. for Partial Summ. J. Re Time Barred Claim and Failure to Mitigate ("Freitas Decl."), Ex. 1 (BB Dep. Ex. 80; BBYLCD0035887), Ex. 2 (Winneroski Dep. at 15:5-15).

Mr. Winneroski's e-mail included an attachment that was titled "Vendor Recap," was drafted by Best Buy, and described a meeting of the same day between Mr. Winneroski and several TAIS employees.  *Id.* (BBYLCD0035888-89).  Mr. Winneroski's notes of the TAIS meeting, which were organized in table format, include a row of information related to components for notebook computers.  *Id.*  Those notes state as follows:

| Key Issues Discussed | Decisions reached | Action (or next steps) What action by what time | Owner of action steps | Action resolution sent to | Due Date |
|---|---|---|---|---|---|
| Component Risks in Notebooks | **Panels are a spotty issue—not necessarily any real shortages, likely more of an issue of the "panel cartel" conspiring to keep supply down to drive prices up.** Real issue is hard drives—IBM exited the business two months ago, selling out to Hitachi, leaving Hitachi and Toshiba as main suppliers.  Hitachi has been unable to ramp up demand—serious ongoing issue. | *Continue to share information on component level issues and work to collaboratively anticipate potential shortages and plan far enough ahead to mitigate risk.* | Kevin/ Diane/ Kurt/ Howard / Matt | | Ongoing |

*Id.* (BBYLCD0035889) (bold and underline added).

---

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

-4-

1   Mr. Winneroski testified that the information in the "Decisions Reached" column (where the

2   "panel cartel" is referenced) constitutes the "specific conclusions from the meeting or any key

3   comments that would be helpful for the audience that I was sending it to to understand, have an

4   understanding of the meeting."  Freitas Decl., Ex. 2 (Winneroski Dep. at 58:23 to 59:12).  Such

5   comments would include information Mr. Winneroski received from Best Buy's vendors, information

6   Mr. Winneroski provided to Best Buy's vendors, and mutual understandings reached by Best Buy

7   and its vendors.  *Id.* (Winneroski Dep. at 59:13-22).

8   In the cover e-mail that forwarded the notes of this meeting to the 10 Best Buy employees and

9   six TAIS employees, Mr. Winneroski explained that, during his meeting with TAIS, "Kurt Skilling

10  [sic] had some key insights into component issues in the industry that were very helpful in

11  triangulating some of the feedback we have heard in the past few weeks from Toshiba and others."

12  *Id.*, Ex. 1 (BBYLCD0035888 at ¶ 4).  During his deposition, Mr. Winneroski asserted that "key

13  insights into component issues," including the information regarding the "panel cartel," was provided

14  to him at the May 15, 2003 meeting by TAIS employee Kurt Skillman:

15      Q.  It states "Panels are" -- I'm not going to read the whole thing, only the first sentence.
16      "Panels are a spotty issue.  Not necessarily any real shortages.  Likely more of an issue of
        the 'panel cartel' conspiring to keep supply down to drive prices up."  Do you see that?

17      A.  I do.

18      Q.  So your understanding is that that is one of the issues that Kurt Skillman had insights
19      into regarding component issues under Point Number 4 on the e-mail?

20      A.  I would tie that back to Kurt Skillman, I refer to him as Skilling, listing that as one of
        their reasons, yes.

21  Freitas Decl., Ex. 2 (Winneroski Dep. at 55:5-19).  Notably, Best Buy alleges that TAIS and several

22  other "Toshiba" entities were participants in the alleged LCD price fixing conspiracy.  First Am.

23  Compl. ¶¶ 67-71.

24  **C.   Best Buy's Management Discusses the "Panel Cartel" at Internal Presentation**

25  Mr. Winneroski's May 15, 2003 email was not the end of the discussion of the "panel cartel"

26  issue at Best Buy.  Two weeks later, on May 28, 2003, an internal Best Buy "RVP Monthly Briefing"

27  presentation was made by and to several Best Buy employees, including but not limited to Barry

28

DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE
Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI

-5-

1  Judge, Vice President of Consumer & Brand Marketing, and Wendy Fritz, a Business Group

2  Manager and Director of Computing Hardware (*i.e.*, Mr. Winneroski's supervisor).  Freitas Decl.,

3  Ex. 3 (BB Dep. Ex. 114; BBYLCD83155-83221), Ex. 5 (Fritz Dep. at 20:19-22; 59:3-14).  The

4  presentation included a PowerPoint document with a slide entitled "Notebook Inventory – June FY

5  '04." *Id.* (BBYLCD83157).  On that slide is the following statement:

6         —Components
          - Hard drives – IBM exited business, sold to Hitachi
7         - **Panels – cartel holding supply down to drive pricing**
          - Chassis for HP
8

9  *Id.* (BBYLCD83159) (emphasis added).  The notes of the "RVP Monthly Briefing" state that there

10 were at least six additional Best Buy presenters at the meeting beyond those who received

11 Mr. Winneroski's original email discussing the "panel cartel." *Id.* at BBYLCD83157).  Thus, *at least*

12 16 Best Buy employees received this "panel cartel" information, with the number of additional Best

13 Buy employees who received the information at the May 28, 2003 "RVP Monthly Briefing"

14 unknown.  *Id.*, Ex. 5 (Fritz Dep. at 61:21 to 62:15) (explaining that the presentation would have been

15 made to the Regional Vice Presidents and probably the team giving the presentation).

16         That too did not end the matter.  Best Buy procurement personnel were still discussing the

17 "cartel" related to panels at least two years later.  A March 7, 2005 e-mail authored by Best Buy's

18 Jason McClain and sent to over a dozen Best Buy employees (10 of which were not prior recipients

19 of the information), stated in reference to year-over-year inventory levels that "the industry was low

20 on . . . panels  (**cartel holding supply down to drive pricing**)." *Id.*, Ex. 4 at (BB Dep. Ex. 79;

21 BBYLCD8530-32).

22         **D.      Best Buy Employees believed the "Panel Cartel" was Impacting Their Business**

23         The Best Buy documents produced in discovery establish that Best Buy believed its business

24 was being impacted by the notebook component shortages, including the May 2003 shortage it

25 believed to have been caused in part by the "panel cartel."  Mr. Winneroski noted in his May 15,

26 2003 email that for the months "May-July [Best Buy is] receiving (11.1%) less than requested" with

27 respect to its order of notebook computers from TAIS.  *Id.*, Ex. 1.  Additionally, the text of the

28

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

-6-

1  May 28, 2003 report presented by Best Buy Business Group Manager Wendy Fritz and Inventory

2  Manager Diane Sherwood states: "There are hard drive, **panel** & Chassis **shortages**, each are

3  **plaguing our vendors and sku's in a different way**." *Id.* (emphasis added).   Finally, in

4  Mr. McClain's March 2005 e-mail, he acknowledged that in May 2003 Best Buy "hit a 7 wk period

5  of low SKU [product] count" for several reasons, including that the "industry was low on . . . panels

6  (cartel holding supply down to drive pricing)" and Best Buy was having "vendor issues," including

7  "Toshiba commits 11% below requested levels." *Id.*, Ex. 4 (BBYLCD8531).

8      **E.**   **Best Buy Employees Knew that an alleged "Panel Cartel" was Cause for Action**

9          Defendants deposed several Best Buy employees regarding their understanding of the

10  documents referencing the alleged "panel cartel" that was believed to be "conspiring to keep supply

11  down to drive prices up" and causing the "shortages" that were "plaguing [Best Buy's] vendors and

12  sku's."   At least some of those employees received antitrust training at Best Buy.   Mr. Winneroski

13  testified that he received antitrust training in the "mid 2000s." *Id.*, Ex. 2 (Winneroski Dep. at 70:20 to

14  71:7).    He was "absolutely" informed during such training "that [Best Buy] couldn't reach

15  agreements with your competitors to set the prices of products" and "couldn't agree with [Best

16  Buy's] competitors to limit the supply of certain products." *Id.*, (Winneroski Dep. at 71:12-19).

17  Mr. Winneroski also understood through his training that such agreements could be illegal and lead to

18  a lawsuit. *Id.* (Winneroski Dep. at 71:20-25).

19          Mr. Winneroski's supervisor, Business Group Manager and Director of Computing Wendy

20  Fritz, also received antitrust training, though she stated she could not recall when it occurred. *Id.*,

21  Ex. 5 (Fritz Dep. at 48:23 to 49:15).   Ms. Fritz was trained that if she suspected that Best Buy's

22  vendors were violating antitrust laws to "escalate it to our supervisor as well as a point within legal."

23  *Id.* (Fritz Dep. at 50:16-23).   Ms. Fritz also would have been aware in 2003 that it would have been a

24  basis for action for Best Buy's vendors to be part of a cartel "focused on keeping supply down in

25  order to drive up [Best Buy's] prices." *Id.* (Fritz Dep. at 51:21-23).

26

27

28

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

-7-

F.     **Best Buy Took No Action to Investigate the "Panel Cartel" Information When It Learned of that Information In May 2003**

After the meeting with TAIS where the "panel cartel" was discussed, Best Buy employees did not take action with respect to investigating or pursuing that information.   Specifically, Mr. Winneroski testified that he did not discuss with anyone at Best Buy whether there should be an investigation as to whether Best Buy was being harmed by a "panel cartel," did not contact counsel inside or outside Best Buy, did not discuss with anyone at Best Buy whether Best Buy should file a lawsuit, and did not contact law enforcement or know of anyone else at Best Buy contacting law enforcement.  *Id.*, Ex. 2 (Winneroski Dep. at 81:3 to 83:8).  Similarly, Ms. Fritz testified that she could not recall anyone at Best Buy doing anything to investigate whether there was truth to the panel cartel allegation from 2003 to 2006, did not contact law enforcement or know of anyone at Best Buy who did so, and did not discuss with anyone whether Best Buy should initiate a lawsuit against panel makers.  *Id.*, Ex. 5 (Fritz Dep. at 78:18 to 80:2).  Finally, Diane Sherwood, who was also a recipient of the May 15, 2003 email and a presenter at the May 28, 2003 Regional Vice President meeting, could not recall any investigation into the "panel cartel."   *Id.*, Ex. 6 (Sherwood Dep. at 60:22 to 61:11).  There is no evidence that anyone of the more than 20 Best Buy employees, managers, and executives who were informed of the "panel cartel" investigated those facts or took one step to limit any alleged harm occurring as a result of supply shortages or price increases.

## II.     ARGUMENT

Summary judgment must be granted if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Where the non-moving party bears the burden of proof, the moving party need only show that the non-moving party lacks evidence sufficient to create an issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Thus, Best Buy must "do more than simply show that there is some metaphysical doubt as to the material facts" to defeat summary judgment.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence [is] insufficient;

---

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No. 3:10-cv-4572 SI**

1   there must be evidence on which the jury could reasonably find for [Best Buy]." *Anderson v. Liberty*

2   *Lobby, Inc.*, 477 U.S. 242, 252 (1986).

3        Here, the record evidence shows that Best Buy received unequivocal information of the

4   existence of the "panel cartel," which was disseminated to more than 20 individuals within Best Buy.

5   Thus, Best Buy had actual knowledge of what it understood was "panel cartel" activity far in advance

6   of the statutory period, and then failed to take reasonable steps (or any steps) to seek to avoid

7   damages from such a "panel cartel." No reasonable jury could find otherwise. Best Buy therefore

8   cannot rely on "fraudulent concealment" as a basis for tolling its claims. Nor can Best Buy rely on

9   any other tolling doctrine because Best Buy did not plead such doctrines in its complaint. Best Buy's

10   claims for damages prior to October 8, 2006 are barred by the statute of limitations.

11        Additionally and independently, Best Buy's claims for damages arising after May 2003 are

12   barred as a matter of law because the undisputed facts establish that Best Buy took no action to

13   mitigate its damages. Best Buy did not investigate the "panel cartel" information, did not initiate a

14   lawsuit against any panel manufacturers, and did not convey what it knew to any government

15   enforcement officials. Judgment should therefore be entered dismissing Best Buy's claims for

16   alleged damages that arose after May 2003.

17
18       **A.**    **Best Buy's Claims for Conduct Prior to October 8, 2006 Are Barred By the Statute of Limitations**

19        The Sherman Act and Clayton Act provide for a four-year statute of limitations. 15 U.S.C.

20   § 15b. The MAL similarly provides that all claims for violations of its provisions "shall be forever

21   barred unless commenced within four years of the date upon which the cause of action arose." *See*

22   Minn. Stat. § 325D.64(1).[1] Here, Best Buy elected not to file a complaint until October 8, 2010. *See*

23   Individual Dkt. No. 1. Thus, Best Buy's claims are limited to damages arising no earlier than

24   ------

[1] The MAL further provides that "[f]or the purpose of this section, a cause of action for a continuing

25   violation is deemed to arise at any time during the period of the violation." *Id.* Although Minnesota courts have not interpreted the "continuing violation" provision, the Supreme Court of at least one

26   other state court interpreting nearly identical statutory language has held that a "suit for a continuing violation may take place at any time during which the violation was ongoing but [the plaintiff's]

27   recovery is limited to the period prior to the filing of suit prescribed by the applicable statute of limitations." *Alakayak v. British Columbia Packers, Ltd.*, 48 P.3d 432, 463 (Alaska 2002).

28
    **DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
    **Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

October 8, 2006, unless Best Buy can prove its allegation that the claim was tolled by Defendants' fraudulent concealment. Best Buy cannot do so.

        **1.**       **Best Buy Cannot Establish that Fraudulent Concealment Tolls the Statute of Limitations on Its Claims**

Best Buy cannot establish the requirements for "fraudulent concealment" tolling under federal or Minnesota law, and judgment should be entered accordingly. Best Buy cannot establish fraudulent concealment under federal law if it "discovered or should have discovered [the cause of action] but failed to file a timely complaint." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987); *see also In re Milk Products Antitrust Litig.*, 84 F.Supp.2d 1016, 1022 (D. Minn. 1997) (requiring showing of "(1) Defendants concealment of Plaintiffs' cause of action, (2) failure by Plaintiffs to discover the existence of their cause of action, and (3) due diligence by Plaintiffs in attempting to discover the claim."). Similarly, under Minnesota law, Best Buy must establish: (i) there was an affirmative act or statement which concealed a potential cause of action, (ii) that statement was known to be false, and (iii) that the concealment could not have been discovered by reasonable diligence. *See Williamson v. Prasciunas*, 661 N.W.2d 645, 650 (Minn. Ct. App. 2003). "Fraudulent concealment, if it occurs, will toll the running of the statute of limitations until discovery or reasonable opportunity for discovery of the cause of action by the exercise of due diligence." *Holstad v. Southwestern Porcelain, Inc.*, 421 N.W.2d 371, 374 (Minn. Ct. App. 1988) (emphasis added). Best Buy has the burden of proving each element of fraudulent concealment. *See Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 249 (9th Cir. 1978); *Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975) ("The party claiming fraudulent concealment has the burden of showing that the concealment could not have been discovered sooner by reasonable diligence on his part and was not the result of his own negligence."). "Merely establishing that a defendant had intentionally concealed the alleged [acts] is insufficient." *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990), *as amended* (Minn. Jan. 30, 1990).

Best Buy cannot meet its burden. First, the undisputed record establishes that Best Buy had actual knowledge—unambiguous statements received directly from an entity Best Buy now alleges

---

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No. 3:10-cv-4572 SI**

1   was a co-conspirator—that a "panel cartel" was supposedly "conspiring to keep supply down and

2   drive prices up" more than *seven years* before Best Buy filed its complaint.  Second, upon receiving

3   this information, Best Buy did nothing to exercise "reasonable diligence" in attempting to investigate

4   or assert its potential claims.

5            a.   Best Buy Had Knowledge of the Facts Underlying its Claim in May 2003

6            The documentary evidence produced by Best Buy in discovery and deposition testimony of its

7   witnesses precludes Best Buy from establishing that it did not have actual knowledge of the facts

8   underlying its claims.  Federal courts do not permit a plaintiff to rely on fraudulent concealment

9   tolling where the plaintiff had knowledge of the facts underlying the claim.  *See Hennegan v.*

10  *Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1302 (9th Cir. 1986) (finding no fraudulent concealment

11  where record indicated plaintiffs had knowledge of activities allegedly giving rise to antitrust claims

12  prior to limitations period); *Rutledge*, 576 F.2d at 249 (finding no fraudulent concealment where

13  record showed plaintiff suspected anticompetitive behavior based on competitor pricing as early as

14  ten years before filing suit); *Western Shoe Gallery, Inc. v. Duty Free Shoppers, Ltd.*, 593 F. Supp.

15  348, 350 (N.D. Cal. 1984) (plaintiff's "actual knowledge of the operative facts which are the basis of

16  his claims [. . .] prevents him from asserting fraudulent concealment.").  "Any fact that should excite

17  his suspicion is the same as actual knowledge of his entire claim."  *Conmar Corp. v. Mitsui & Co.*,

18  858 F.2d 499, 502 (9th Cir. 1988).  Minnesota courts have likewise rejected allegations of fraudulent

19  concealment where, as here, the evidence reflects that the plaintiff possessed facts that put it on

20  notice of its claim.  *See, e.g., Hanna Mining Co. v. Internorth, Inc.*, 379 N.W.2d 663 (Minn. Ct. App.

21  1986) (affirming lower court's finding that statute of limitations was not tolled by fraudulent

22  concealment where plaintiff had knowledge of the rates that it claimed were discriminatory); *Vasek v.*

23  *Warren Grain & Seed Co.*, 353 N.W.2d 175, 177 (Minn. Ct. App. 1984) (holding that fraudulent

24  concealment regarding financial condition of defendant did not toll statute of limitations where

25  plaintiff was made aware of the financial condition through the closing of defendant's business);

26  *Tackleson v. Abbott-Nw. Hosp., Inc.*, 415 N.W.2d 733, 734-35 (Minn. Ct. App. 1987) (holding that

27  fraudulent concealment regarding medical condition did not toll statute of limitations where

28

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

-11-

1  defendant provided notice of cause of action by offering to waive medical bill in exchange for release

2  of liability).

3        Here, irrefutable evidence establishes Best Buy's knowledge of the facts underlying its

4  claims. A Best Buy Merchandising Director (Kevin Winneroski) received clear information from an

5  alleged co-conspirator (TAIS) that there was a "panel cartel" that was allegedly "conspiring" to affect

6  the prices of a component in products being purchased by Best Buy. That employee immediately

7  passed on this information to at least 10 other Best Buy employees, including his supervisor Wendy

8  Fritz. Within two weeks, Ms. Fritz and others then presented the "panel cartel" information at a

9  Regional Vice President meeting, which included Barry Judge, Vice President of Consumer & Brand

10  Marketing. These uncontested facts are established by documentary evidence produced from Best

11  Buy's own records and the testimony of its own representatives. No reasonable finder of fact could

12  conclude on this record that Best Buy lacked knowledge regarding Defendants' alleged

13  anticompetitive conduct. For this reason alone, judgment should be entered for Defendants on Best

14  Buy's claims for damages prior to October 8, 2006 for failure to timely file its complaint.

15        b.   <u>Even Though It Had Knowledge of a "Panel Cartel," Best Buy Failed to
16  Reasonably Investigate Its Claims</u>

17        Even if Best Buy did not have actual knowledge of the facts underlying its claims (it did),

18  Best Buy cannot rely on fraudulent concealment to toll the statute of limitations unless it also

19  establishes that the basis for the claim could not have been discovered despite Best Buy's reasonable

20  diligence in trying to discovery the pertinent facts. *Rutledge*, 576 F.2d at 250; *Williamson*, 661

21  N.W.2d at 650. Best Buy cannot do so.

22        While the question of "reasonable diligence" is generally one of fact, federal and Minnesota

23  courts nonetheless have granted summary judgment to defendants where the undisputed record is

24  devoid of facts that could support a conclusion that the plaintiff's actions or beliefs were reasonable.

25  *See, e.g., See In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457, 1468-71 (D. Kan. 1995);

26  *Yonak v. Severson*, 2005 WL 3291817 *4 (Minn. App. 2005) (affirming grant of summary judgment

27  to defendant regarding fraudulent concealment because plaintiffs failed to exercise "reasonable

28

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No. 3:10-cv-4572 SI**

-12-

1    diligence"). For example, in *Aluminum Phosphide*, the court granted defendants' motion for partial

2    summary judgment as to the plaintiffs' "fraudulent concealment" allegations in part because there

3    was no question plaintiffs did not exercise due diligence in discovering the facts underlying their

4    claim. 905 F. Supp. at 1468-71. One of the plaintiffs conducted a marketing and purchasing survey

5    before asserting its price fixing claim and "concluded that the price of Aluminum Phosphide was high

6    and that it was similar among certain sellers," and the plaintiffs' counsel was contacted "concerning

7    antitrust issues in the Aluminum Phosphide industry." *Id.* at 1471. Although the plaintiffs stated that

8    they did not have knowledge of the price fixing scheme prior to the unsealing of criminal

9    indictments, the *Aluminum Phosphide* court concluded that this argument "misses the point . . .

10   plaintiffs were aware of or should have been aware of <u>facts which would excite inquiry</u> into their

11   claims." *Id.* (emphasis added).

12       In *Yonak*, the plaintiffs claimed that their counsel was liable for malpractice for failure to

13   disclose the terms of an employment agreement. 2005 WL 3291817, at *1-2. The plaintiffs,

14   however, were aware that some employment agreement existed. *Id.* at *1. Although the plaintiffs

15   claimed to not have discovered the *specific terms* of the agreement until after the expiration of the

16   statute of limitations period, both the lower court and appellate court concluded that the plaintiffs

17   could have discovered those terms through reasonable diligence but failed to do so. *Id.* at *2, 4.

18   Specifically, the plaintiffs failed to request copies of the relevant documents and failed to inquire as

19   to their terms. *Id.* at *4.

20       Best Buy cannot show that it exercised reasonable diligence—or any diligence—in attempting

21   to discover existence or the extent of the alleged "panel cartel" after its meeting with TAIS. As

22   described above, even though Best Buy ***received information directly from one of the alleged***

23   ***conspirators*** that the ***"panel cartel"*** that was ***"conspiring"*** to affect the prices of products Best Buy

24   was purchasing, ***it did absolutely nothing to investigate***. None of the Best Buy deponents discussed

25   concerns about a "panel cartel" with their supervisors, with other company management, or with

26   company counsel. And no one at Best Buy sought to initiate a lawsuit or report to law enforcement

27   what Best Buy had learned, despite the fact that at least some Best Buy employees who knew about a

28

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

1   "panel cartel" received internal antitrust training.  These undisputed facts require summary judgment

2   in favor of Defendants.  Indeed, the facts in this case are more compelling than those relied upon by

3   the courts in finding no fraudulent concealment in the *Aluminum Phosphide* and *Yonak*.

4        Under the undisputed circumstances of this case, no reasonable fact finder could conclude that

5   Best Buy exercised any diligence with respect to discovery of the alleged facts that underlie its

6   claims, let alone "reasonable diligence."  Summary judgment is required for this reason as well.

7        **2.      Best Buy Cannot Rely on Equitable Tolling Doctrines It Did Not Plead**

8        Defendants anticipate that Best Buy will attempt to argue that the statute of limitations was

9   equitably tolled for some period as a result of suits initiated on behalf of class plaintiffs.  *See Am.*

10  *Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) ("[T]he commencement of a class action

11  suspends the applicable statute of limitations as to all asserted members of the class who would have

12  been parties had the suit been permitted to continue as a class action.").  Best Buy would be wrong to

13  do so because Best Buy has never alleged that any class complaints—based on either direct or

14  indirect purchases—tolled the statute of limitations on its claims.  *See* First Am. Compl. ¶¶ 309-323

15  (alleging only fraudulent concealment as a basis for tolling).  Indeed, Best Buy's First Amended

16  Complaint is devoid of any mention of either the class action cases or equitable tolling on that basis.

17       The absence of any factual or legal allegations related to equitable tolling based on similar

18  class action cases prohibits Best Buy from now relying on such tolling.  The Ninth Circuit has held

19  that a plaintiff cannot newly allege the application of an equitable tolling doctrine in opposition to a

20  summary judgment motion.  *See Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 991-992

21  (9th Cir. 2005) ("federal courts have repeatedly held that plaintiffs seeking to toll the statute of

22  limitations on various grounds <u>must have included the allegation in their pleadings</u>; this rule applies

23  even where the tolling argument is raised in opposition to summary judgment") (emphasis added)

24  (citing numerous cases).  The *Wasco* court held that, "summary judgment is not a procedural second

25  chance to flesh out inadequate pleadings."  *Id.* at 992 (citing *Fleming v. Lind-Waldock & Co.*, 922

26  F.2d 20, 24 (1st Cir. 1990)).  This court has similarly ruled that claims are subject to dismissal on

27  statute of limitations grounds unless the basis for tolling has been pled in the complaint.  *See In re*

28

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

-14-

1  *TFT-LCD (Flat Panel) Antitrust Litig. ("Tweeter"),* MDL Dkt. No. 4867, at 3 (ruling that "plaintiffs

2  in this MDL proceeding <u>must plead</u> with specificity the bases for their entitlement to tolling" and

3  cannot rely on "generalized allegations") (emphasis added) (citing *Hinton v. Pac. Enters.*, 5 F.3d 391,

4  395 (9th Cir. 1993) ("The burden of alleging facts which would give rise to tolling falls upon the

5  plaintiff [and he or she] 'must plead with particularity the circumstances . . . and facts . . . .");  *In re*

6  *TFT-LCD (Flat Panel) Antitrust Litig. ("AT&T"),* MDL Dkt. No. 4706, at 4-5 (N.D. Cal. Jan. 30,

7  2012) (granting motion to dismiss where "[plaintiff] has not alleged fraudulent concealment on the

8  theory that defendants concealed their identities").

9        Best Buy has never pled that the statute of limitations was equitably tolled based on the filing

10  of class actions under *American Pipe.*  It cannot now raise a new equitable tolling doctrine for the

11  first time on summary judgment.

12      **B.**     **Best Buy Failed to Mitigate Any Damages It Incurred After May 2003**

13        Separate and apart from the legal issue of the statute of limitations—which governs when

14  claims are so stale that they cannot be brought before the Court—is the issue of mitigation of

15  damages.  Even for timely claims, a plaintiff has an affirmative obligation to take reasonable steps to

16  avoid damages.  *See Ellerman Lines, Ltd. v. The President Harding,* 288 F.2d 288 (2d Cir. 1961)

17  (Friendly, J.) ("a tort defendant is not liable for consequences preventable by action that reason

18  requires the plaintiff to take").  Where, as here, there is no genuine dispute that the plaintiff failed to

19  reasonably mitigate, summary judgment is proper.  *E.g.*, *Caudle v. Bristow Optical Co.*, 224 F.3d

20  1014 (9th Cir. 2000) (affirming summary judgment that plaintiff failed to mitigate damages); *In Re*

21  *Fortune Sys. Sec. Litig.*, 680 F. Supp. 1360, 1370-1371 (N.D. Cal. 1987) (granting partial summary

22  judgment that plaintiff failed to mitigate damages after learning of securities fraud; declining to

23  "award plaintiffs the opportunity to recover for being unreasonable").  The record shows that Best

24  Buy failed to take prompt and reasonable steps that could have eliminated its damages by curtailing

25  the existence and/or effectiveness of a "panel cartel" that now allegedly forms the basis of its claims.

26

27

28

---

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

1. **Antitrust Plaintiffs Are Not Permitted to Increase Treble Damages Through Inaction**

An antitrust plaintiff may not merely sit back and do nothing to protect itself economically when faced with the possibility that damages may result from the conduct of another. *See MCI v. AT&T*, 708 F.2d 1081, 1207 (7th Cir. 1983) (antitrust suit where failure to complain to regulatory authorities was a factor in mitigation defense); ABA Section of Antitrust Law, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES, 2005 Ed. (2005) ("Model Instructions") at F-47 ("Plaintiff may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence. Plaintiff is not entitled to increase any damages through inaction.").[2] A plaintiff must protect itself by acting in a commercially reasonable manner to minimize the amount of damages incurred. *MCI*, 708 F.2d at 1207; *Bemidji Sales Barn, Inc. v. Chatfield*, 250 N.W.2d 185, 189 (Minn. 1977) ("While the law provides the claimant with a remedy whether he seeks to avoid injurious consequences or not, the amount of damages recoverable is limited to the extent that he acted reasonably to prevent his own loss."). This duty to mitigate damages applies to antitrust plaintiffs irrespective of the specific type of antitrust violation alleged. *E.g., MCI*, 708 F.2d at 1207; *Pierce v. Ramsey Winch Co.*, 753 F.2d 416 (5th Cir. 1985) (vertical price-fixing under Section 1); *Litton Systems v. AT&T*, 700 F.2d 785, 820 n.47 (2d Cir. 1983) (willful maintenance of monopoly power under Section 2); *Borger v. Yamaha*, 625 F.2d 390, 399 (2d Cir. 1980) (refusal to deal under Section 1); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 185 F. Supp. 826, 829 (M.D. Pa. 1960) (unlawful overcharges under Section 2).[3]

---

[2] Although it appears that Minnesota's state courts have not specifically addressed the defense of a failure to mitigate under the MAL, Minnesota law generally recognizes the failure to mitigate as an affirmative defense. *See First Nat'l Bank of LeCenter v. Farmers Union Mktg. and Processing Ass'n*, 371 N.W.2d 22, 26 (Minn. App. 1985) ("Under the theory of avoidable consequences, a plaintiff with an otherwise valid claim is denied recovery [if] he failed to mitigate the consequences of a known wrong."). Defendants are aware of no Minnesota case law holding that this duty to mitigate is inapplicable to antitrust claims.

[3] The mitigation of damages defense also applies to other types of statutory claims involving intentional harm. For example, this Court has dismissed damages claims arising after investors knew of securities fraud and, therefore, were on notice that they should act to avoid further losses. *E.g., In Re Fortune*, 680 F. Supp. at 1370-1371; *In re Cypress Semiconductor Sec. Litig.*, 1992 U.S. Dist. LEXIS 22480 (N.D. Cal. Sept. 23, 1992) (citing *Royal Air Properties, Inc. v. Smith*, 312 F.2d 210, 213-14 (9th Cir. 1962) ("The purpose of the Securities Exchange Act is to protect the innocent

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No. 3:10-cv-4572 SI**

-16-

Best Buy has previously argued that private antitrust plaintiffs in *horizontal* price fixing cases are somehow exempt from this longstanding rule.  *See* Best Buy's Opp'n to Defs.' Objection to Special Master's Order Denying Mot. for Leave to Disclose Anthony Nanni as an Expert, MDL Dkt. No. 5476, at 11-13  It attempted to rely on the 16 year-old district court decision in *In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283, 286 (D. Minn. 1996) in support of this argument. But that argument is ill-founded because both Best Buy and the *In re Airline Ticket* court—a case that has never been cited in a published opinion for this proposition—overread *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), which does not address mitigation.

In *Illinois Brick*, the Supreme Court held that in cases under Section 1 of the Sherman Act seeking damages for overcharges from horizontal price fixing, a direct purchaser is not subject to a defense for any portion of any overcharge it subsequently recoups through "pass-on." *Ill. Brick*, 431 U.S. at 744 & n.29.  In this regard, the Court merely acknowledged the rule of *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968).  *Hanover Shoe* held there was no pass-on defense in monopolization cases under Sherman Act Section 2.  Its reasoning should apply to Section 1 cases as well. *Ill. Brick*, 431 U.S. at 744 ("We reject these attempts to carve out exceptions to the *Hanover Shoe* rule for particular types of markets.").  Nothing in *Illinois Brick* created a special rule regarding mitigation in horizontal price-fixing cases, or even addressed the concept of mitigation.  In *Illinois Brick*, the Supreme Court held that *Hanover Shoe* applies to horizontal price-fixing cases, but *Illinois Brick* was about an analytically distinct issue, as the procedural history of that case makes plain.

*Hanover Shoe* involved a claim by a shoe manufacturer that it was overcharged for machinery by a monopolistic supplier in violation of Section 2 of the Sherman Act.  The defendant sought to avoid the overcharge by contending that the plaintiff had passed them on after the fact.  The district court denied that pass-on defense.  But it carefully distinguished the pass-on defense from mitigation

investor, not one who loses his innocence and then waits to see how his investment turns out before he decides to invoke the provisions of the Act.")).  So too, the Sherman Act was meant to protect innocent direct purchasers, not those who learn of potential antitrust violations and then game the system to increase treble damages.

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

-17-

1   of damages, which it held unquestionably applied: "Of course, [the plaintiff] is subject to the rule of

2   avoidable consequences and cannot sit still and let damages pile up when reasonable steps would

3   have prevented further consequential damages." *Hanover Shoe, Inc.*, 185 F. Supp. at 829 (M.D. Pa.

4   1960), *aff'd per curiam*, 281 F.2d 481 (3d Cir. 1960) (calling the district court's decision "thoroughly

5   convincing"), *cert. denied*, 364 U.S. 901 (1960).   The district court recognized, in particular, a

6   distinction between the *inaction* of letting *future* damages pile up (a failure to mitigate), and the

7   *subsequent positive action* of recovering a pass-on for *existing* damages.   It was only the latter that

8   the Court said had no bearing on damages.

9      The longstanding *Hanover Shoe* ruling is supported by sound policy.   The antitrust laws do

10  not allow a customer to make a bet on treble damages.   Instead, the duty to mitigate in antitrust cases

11  prevents plaintiffs from profiting, through treble damages, from their inaction while simultaneously

12  passing on overcharges to the American public.   The purpose of the Sherman Act is to protect the

13  public, and treble damages serve that purpose by encouraging plaintiffs to diligently investigate to

14  uncover unlawful activity and then bring civil suits.   *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179,

15  195 (1997) ("private civil actions seek not only to compensate victims but also to encourage those

16  victims themselves diligently to investigate and *thereby to uncover unlawful activity*."); S. Rep. 84-

17  619, 84th Cong. (1st Sess. 1955), *reprinted in* 1955 U.S.C.C.A.N. 2328, 1955 WL 3839, at *2330

18  ("damages of 'persons' are trebled so that private persons will be encouraged to bring actions which,

19  though brought to enforce a private claim, will nonetheless serve the public interest in the

20  enforcement of the antitrust laws.").   The promise of treble damages is therefore not just an award for

21  the plaintiff, but a bargain between the plaintiff and society where "society expects to benefit by

22  having the violation suppressed."   Phillip E. Areeda & Herbert Hovenkamp, ANTITRUST LAW: AN

23  ANALYSIS OF ANTITRUST PRINCIPLES AND THEIR APPLICATION, (Aspen Pub. 2011), at ¶ 320a (citing

24  *Rotella v. Wood*, 528 U.S. 549, 558 (2000) (noting that "suppressing racketeering activity" is an

25  "object pursued the sooner the better")).

26      Absent a mitigation requirement, however, treble damages become a perverse incentive for

27  plaintiffs to sit back and accumulate alleged damages for their own benefit.   *See Klehr*, 521 U.S. at

28

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

1   187 (rejecting civil RICO limitations rule that "would permit plaintiffs who know of the defendant's

2   pattern of activity simply to wait, sleeping on their rights [. . .] as the pattern continues and treble

3   damages accumulate" (internal quotations and citation omitted)); Neil W. Hamilton & Virginia B.

4   Cone, *Mitigation of Antitrust Damages*, 66 OR. L. REV. 339, 355 (1984) (noting "the perverse impact

5   of trebling on a plaintiff's incentive to minimize damage"); Charles A. Sullivan, *Breaking Up the*

6   *Treble Play: Attacks on the Private Treble Damage Antitrust Action*, 14 SETON HALL L. REV. 17, 31-

7   32 (1983).   This perverse incentive is balanced by the duty to mitigate damages, which prevents

8   plaintiffs from profiting from their inaction.  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d

9   124, 149-50 (2d Cir. 2001) (Jacobs, C.J., dissenting) ("Enforcement of the mitigation duty may be

10  even more critical in antitrust cases than in cases sounding in contract or tort because an antitrust

11  plaintiff seeking treble damages can profit by avoiding mitigation of loss."); *Fishman v. Estate of*

12  *Wirtz*, 807 F.2d 520, 558 (7th Cir. 1986) (antitrust plaintiff should not be rewarded for "wait[ing]

13  passively for many years to collect his treble-damages award").

14      Best Buy's suggestion that it could sit knowingly idle for ***over three years*** as it incurred (and

15  passed on to U.S. consumers at rates that frequently exceeded 100%)[4] alleged overcharges from what

16  it believed to be a "panel cartel," does not promote efficient resolution of antitrust claims, and is

17  unsupported by law, contrary to the purpose of the antitrust laws, and harmful to the public.  It should

18  be rejected.

19      **2.      Best Buy Failed to Take Reasonable Steps After Learning of the Alleged**

20      **"Panel Cartel"**

21      Once Best Buy had knowledge and evidence of what it was told was a "panel cartel"—no

22  later than the end of May 2003—there were at least two steps that Best Buy could reasonably have

23  taken at relatively little expense to itself to thwart a "panel cartel's" effectiveness.  First, Best Buy

24  could have lodged a complaint with the government enforcement agencies charged with investigating

---

25  [4] *See* Defendants' Motion for Partial Summary Judgment Re Downstream Pass-On filed concurrently
    with this motion.

26

27

28

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

-19-

1  antitrust violations, the DOJ or the Minnesota Attorney General.   Second, it could have sued the

2  Defendants (or at least threatened to do so).

3       Such a lawsuit or government investigation would have stopped any alleged "panel cartel"

4  participants in their tracks, as illustrated by the reaction to the disclosure of the DOJ's investigation

5  here.   Testimony from numerous witnesses in the case establishes that LCD panel manufacturers

6  ceased communications upon learning of antitrust investigations or litigation.   *See* Declaration of

7  Craig A. Benson In Support of Defs.' Joint Motion for Partial Summ. J. Re Dell's Failure to Mitigate,

8  MDL Dkt. No. 5847-1, Ex. 49 (Sharp witness at 285:2-19); Ex. 50 (Sharp witness at 145); Ex. 51

9  (Sharp witness at 128:19-129:21); Ex. 52 (LG witness at 423:25-425:2); Ex. 54 (Samsung witness at

10  45:18-23).

11       Best Buy had these options, but Best Buy elected not to pursue any of them.   Nor did Best

12  Buy do anything else to mitigate its damages.   It did not do so on May 15, 2003 when it was told

13  about meetings among competitors.   It did not do so following the May 28, 2003 presentation of the

14  information to Best Buy's management and executives.   And it did not do so *at any point over the*

15  *next three-and-a-half years* before the DOJ disclosed its investigation.   Best Buy instead simply

16  continued its relationship with the Defendants and other LCD product vendors as usual.

17       **Best Buy could have approached the Department of Justice.**   Reporting what is believed to

18  be illegal activity is a reasonable and appropriate way to mitigate damages.   For example, in *MCI v.*

19  *AT&T*, MCI accused AT&T of violating Sections 1 and 2 of the Sherman Act, including by denying

20  MCI access to telephonic interconnections and engaging in predatory pricing.   708 F.2d at 1092,

21  1111.   Following a trial on the merits, the district court instructed the jury on plaintiff MCI's duty to

22  mitigate damages by formally objecting to the Federal Communications Commission ("FCC").   *Id.* at

23  1207.   It instructed:

24              Plaintiffs have a Duty to Mitigate Damages[.]   AT&T contends that the
               FCC had the power to resolve many of the alleged unlawful acts of
25             which MCI complains and that if MCI had filed complaints with the
               FCC, or formally objected to tariffs of AT&T, the FCC could have
26             resolved [the] disputes [. . .] If you find that MCI could have avoided
               some or all of its economic losses by complaining to the FCC and that
27             MCI acted unreasonably in failing to complain to the FCC, you cannot
               award MCI the damages it could have avoided.
28

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

*Id.*   This, of course, makes sense.   Where a government agency has power to resolve allegedly unlawful acts, the mitigation duty requires a plaintiff to report known unlawful acts if it is reasonable to do so in order to recover damages that could otherwise have been avoided.   *Id.*

Here, it would have been not only reasonable, but obvious, for Best Buy to report its knowledge to the DOJ.   *See* Model Instructions at F-48 ("Commercially reasonable measures mean those measures that a prudent businessperson in the plaintiff's position would likely have adopted, given the circumstances as they appeared at that time.").   The cost of reporting to the DOJ would have been low compared to the injury Best Buy now claims—over $850 million in alleged actual damages.

Reporting this information to the DOJ would have been easy—Best Buy could have made an unannounced visit or phone call, or submitted an anonymous complaint through the mail or internet. *See* U.S. Dep't of Justice Antitrust Div., ANTITRUST DIVISION MANUAL, Fourth Ed. (2008) ("DOJ Manual"), at III-6.   Such reports are common, with one well known study reporting that more than 50% of price-fixing conspiracies are detected through complaints by consumers, competitors, or employees.   George A. Hay & Daniel Kelley, *An Empirical Survey of Price-Fixing Conspiracies*, 17 J.L. & ECON. 13 (1974).   Best Buy cannot argue that it was unaware of the availability of this recourse.   Best Buy is one of the largest retail companies in the United States, with a sophisticated legal department, and it provides antitrust training to its employees.   Best Buy deponents aware of the "panel cartel" testified that they received antitrust training from Best Buy and were instructed that agreements among competitors to raise prices were wrong.   They were also instructed to report such conduct to their superiors or to the Best Buy legal department.

Because knowledge of a DOJ investigation (or even a threatened investigation) is sufficient to curtail activity like the competitor discussions that Best Buy alleges harmed it here, Best Buy could have mitigated any damages going forward by promptly reporting its concerns to the DOJ and presenting the DOJ with the evidence it possessed of the "panel cartel" in May 2003.   Because the DOJ initiated an investigation on the facts of this case in 2006, there is no reason the DOJ would not have also initiated an investigation in 2003 relating to the same conduct.   *See* DOJ Manual at III-7-8

---

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

1   (explaining that matters of potential significance, as determined by factors such as volume of

2   commerce and global reach, are more likely to be investigated).

3           Moreover, there is every reason to believe that, if Best Buy had made a timely disclosure to

4   the DOJ, such an investigation would have become public, and thus forced the cessation of the

5   alleged illegal activity, within a year. Specifically, Samsung approached the DOJ with allegations of

6   TFT-LCD "collusive activity" on January 27, 2006 as an amnesty applicant, and eleven months later

7   the DOJ's investigation was made public. It is reasonable to assume a schedule at least as aggressive

8   would have occurred had the DOJ launched an investigation several years earlier. "[O]ften

9   information received from a complainant provides a sufficient basis for the request [to convene a

10  grand jury] without conducting a preliminary investigation." DOJ Manual at III-87. Even where the

11  DOJ conducts preliminary investigations, they can be initiated in a matter of days after receiving a

12  complaint, and are normally completed in a "few weeks to a few months." *Id.* at III-11 (describing

13  expedited review procedures), III-21. As soon as the DOJ develops evidence confirming the alleged

14  anticompetitive conduct, the DOJ commonly seeks authority to convene a grand jury and commence

15  a formal investigation. *See id.* at III-87. The discovery tools used by the DOJ, including subpoenas,

16  interviews, and search warrants, inevitably result in public disclosure of the investigation. *See id.* at

17  III-90-97.

18          The Court should grant Defendants' motion for summary judgment as to Best Buy's failure to

19  mitigate because Best Buy chose not to exercise the option of notifying the DOJ of its knowledge of

20  the "panel cartel."

21          **Best Buy could have filed a timely lawsuit.** Appropriate efforts to mitigate damages also

22  include initiating administrative proceedings and civil litigation. *See Daviton v. Columbia/HCA

23  Healthcare Corp.*, 241 F.3d 1131, 1140 (9th Cir. 2001); *Probst v. Reno*, 917 F. Supp. 554, 562 (N.D.

24  Ill. 1995). Judge Posner explained that where a party fails to seek judicial remedies when he believes

25  his rights are being violated, such inaction may condone the perceived violation and "casts doubt on

26  its claim to have been harmed." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir.

27  2010) (commenting that plaintiff's state law breach of contract claims may be barred by plaintiff's

28

---

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

1  failure to mitigate damages by neglecting to enforce his injunction).  The failure to pursue injunctive

2  relief when available has even sometimes been considered a failure to mitigate damages.  *See Miller*

3  *v. Perry Corp.*, No. 3:05-cv-7454, 2007 U.S. Dist. LEXIS 28399, at *13-15 (N.D. Ohio Apr. 17,

4  2007) ("Because Miller did not seek injunctive relief [. . .], he cannot now request damages that he

5  failed to try to lessen."); *Relizon Co. v. Shelly J. Corp.*, 2004 Ohio 6884, at P23 (Ohio Ct. App. 2004)

6  (affirming availability of mitigation defense).  In one case on the topic, the Ohio Court of Appeals

7  reasoned that, whether or not the party seeking an injunction was successful, the mere act of pursuing

8  such relief would have expedited the proceedings and limited the damages period.  *Id.* at P22.

9      Best Buy could have simply filed a lawsuit in 2003 to mitigate its damages.  Indeed, at the

10  time Best Buy received the "panel cartel" information in May 2003, Best Buy opted-out of a class

11  action case that was asserting claims for price-fixing of "interchange fees" in the banking industry

12  and filed its own suit.  *See In re Payment Card Interchange Fee and Merchant Discount Antitrust*

13  *Litig.*, 2006 WL 6846702, at *5 (E.D.N.Y. Aug. 7, 2006) (noting that in "mid-2003" Best Buy Co.,

14  Inc., which was represented by Craig Wildfang and the Robins Kaplan firm, opted out of the

15  interchange fee class and commenced independent actions that included allegations regarding

16  interchange fees).[5]  In May 2003, Best Buy knew how to initiate a lawsuit and assert a price-fixing

17  claim.  It chose not do so for over three years before the DOJ disclosed its investigation.

18  ## III.    CONCLUSION

19      For the foregoing reasons, Defendants respectfully request that the Court enter partial

20  summary judgment in their favor as to Best Buy's claims under the Sherman Act and the Minnesota

21  Antitrust Laws of 1971 relating to conduct before October 8, 2006, as barred by the applicable statute

22  of limitations, and barring any claims for damages for conduct after June 1, 2003 based on Best

23  Buy's failure to mitigate its damages.

24  [5] Mr. Wildfang and other attorneys at the Robins Kaplan firm are also counsel of record for Best Buy

25  in this case.  *See* MDL Docket.

26

27

28

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
**Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI**

Dated:  July 16, 2012.

FREITAS TSENG & KAUFMAN LLP

By:   /s/ Robert E. Freitas
        Robert E. Freitas (SBN 80948)
        Jason S. Angell (SBN 221607)
        Jerry Chen (SBN 229318)
        100 Marine Parkway, Suite 200
        Redwood Shores, California 94065
        Telephone: (650) 593-6300
        Facsimile: (650) 593-6301
        rfreitas@ftklaw.com
        jangell@ftklaw.com
        jchen@ftklaw.com

        Attorneys for Defendant HANNSTAR
        DISPLAY CORPORATION

NOSSAMAN LLP

By:  /s/ Christopher Nedeau
        Christopher A. Nedeau

        Christopher A. Nedeau (Bar No. 81297)
        Carl L. Blumenstein (Bar No. 124158)
        50 California Street, 34th Floor
        San Francisco, CA  94111
        Tel:  (415) 398-3600
        Fax:  (415) 398-2438

        Attorneys for Defendants
        AU OPTRONICS CORPORATION AND
        AU OPTRONICS CORPORATION
        AMERICA

DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE
Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI

-24-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HILLIS CLARK MARTIN & PETERSON P.S.

By: /s/ Michael R. Scott
    Michael R. Scott (pro hac vice)
    Michael J. Ewart (pro hac vice)
    Hillis Clark Martin & Peterson P.S.
    1221 Second Avenue, Suite 500
    Seattle WA 98101-2925
    Telephone:  (206) 623-1745
    Facsimile:  (206) 623-7789
    mrs@hcmp.com; mje@hcmp.com

Attorneys for Defendants CHI MEI CORPORATION, CHIMEI INNOLUX CORPORATION (F/K/A CHI MEI OPTOELECTRONICS CORPORATION), CHI MEI OPTOELECTRONICS USA, INC., CMO JAPAN CO., LTD., NEXGEN MEDIATECH, INC. AND NEXGEN MEDIATECH USA, INC.

MORRISON & FOERSTER LLP

By:  /s/ Stephen Freccero
    Stephen P. Freccero

    Melvin R. Goldman (Bar No. 34097))
    Stephen P. Freccero (Bar No. 131093)
    Derek F. Foran (Bar No. 224569)
    425 Market Street
    San Francisco, CA  94105-2482
    Tel:  (415) 268-7000
    Fax:  (415) 268-7522

Attorneys for Defendants EPSON IMAGING DEVICES CORPORATION, EPSON ELECTRONICS AMERICA, INC.

---

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI

1

2                                          MORGAN, LEWIS & BOCKIUS LLP

3

4                                          By: /s/ Kent Roger
                                              Kent M. Roger (Bar No. 95987)
5                                             One Market, Spear Street Tower
                                              San Francisco, CA  94105
6                                             Tel: (415) 442-1140
                                              Fax: (415) 442-1001
7
                                              Attorneys for Defendants
8                                             HITACHI, LTD., HITACHI DISPLAYS,
                                              LTD. (N/K/A JAPAN DISPLAY EAST,
9                                             INC.), HITACHI ELECTRONIC
                                              DEVICES (USA), INC.
10

11                                         PAUL HASTINGS LLP

12

13                                         By: /s/ Holly House
                                              Holly House (SBN 136045)
14                                            Kevin C. McCann (SBN 120874)
                                              55 Second Street, Twenty-Fourth Floor
15                                            San Francisco, CA  94105-3441
                                              (415) 856-7000 / (415) 856-7100
16                                            hollyhouse@paulhastings.com
                                              kevinmccan@paulhastings.com
17
                                              Attorneys for Defendants
18                                            LG DISPLAY CO., LTD., and LG
                                              DISPLAY AMERICA, INC.
19

20

21

22

23

24

25

26

27

28

---

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI

1

2    PILLSBURY WINTHROP SHAW PITTMAN
     LLP

3

4    By /s/ John Grenfell
        John M. Grenfell
5

6       John M. Grenfell (State Bar No. 88500)
        Jacob R. Sorensen (State Bar No. 209134)
        50 Fremont Street
7       San Francisco, CA 94105
        Tel: (415) 983-1000
8       Fax: (415) 983-1200

9       Attorneys for Defendants
        SHARP CORPORATION AND SHARP
10      ELECTRONICS CORPORATION

11

12   GIBSON DUNN & CRUTCHER LLP

13

14   By: /s/ Rachel Brass
        Rachel S. Brass
15

16      Joel S. Sanders (Bar No. 107234)
        Rachel S. Brass (Bar No. 219301)
        555 Mission Street, Suite 3000
17      San Francisco, CA  94105-2933
        Tel:  (415) 393-8200
18      Fax:  (415) 393-8306

19      Attorneys for Defendants
        CHUNGHWA PICTURE TUBES, LTD.

20

21   **Attestation:**   The filer of this document asserts that the concurrence of the signatories

22   thereto has been obtained.

23

24

25

26

27

28

---

**DEFS.' MOT. FOR SUMM. JUDGMENT RE TIME BARRED CLAIMS AND FAILURE TO MITIGATE**
Case No. 3:07-MD 1827 SI, Case No.  3:10-cv-4572 SI

**CERTIFICATE OF SERVICE BY E-MAIL**
(Federal Rules of Civil Procedure Rule 5(b))

I declare that I am employed with the law firm of Freitas Tseng & Kaufman LLP, whose address is 100 Marine Parkway, Suite 200 Redwood Shores, California 94065.  I am not a party to the case, and I am over the age of eighteen years.

I further declare that on July 16th, 2012, I served a copy of:

**DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING BEST BUY'S PRE-OCTOBER 8, 2006  INDIRECT CLAIMS AS TIME BARRED AND FOR PARTIAL SUMMARY JUDGMENT RE FAILURE TO MITIGATE DAMAGES**

on the following by electronically mailing a true and correct copy to all parties of record through the CM-ECF system in accordance with Federal Rules of Civil Procedure Rule 5(b):

I declare under penalty of perjury that the above is true and correct.

Executed at Redwood Shores, California, this 16th day of July, 2012.

By:    /s/ Robert E. Freitas
            Robert E. Freitas (SBN 80948)
            FREITAS TSENG & KAUFMAN LLP
            100 Marine Parkway, Suite 200
            Redwood Shores, California 94065
            Telephone: (650) 593-6300
            Facsimile: (650) 593-6301