# EXHIBIT 2

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Roman M. Silberfeld, Bar No. 62783
RMSilberfeld@rkmc.com
David Martinez, Bar No. 193183
DMartinez@rkmc.com
Lauren E. Wood, Bar No. 280096
LEWood@rkmc.com
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:    310-552-0130
Facsimile:      310-229-5800

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Elliot S. Kaplan (*Pro Hac Vice*)
ESKaplan@rkmc.com
K. Craig Wildfang (*Pro Hac Vice*)
KCWildfang@rkmc.com
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN  55402
Telephone:  612-349-8500
Facsimile:  612-339-4181

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No. 3:07-MD-1827 SI<br>MDL No. 1827 |
| This Document Relates to Individual Case No. 3:10-CV-4572-SI: | Case No. 3:10-CV-4572 SI<br><br>The Honorable Susan Y. Illston |
| BEST BUY CO., INC.; BEST BUY PURCHASING LLC; BEST BUY ENTERPRISE SERVICES, INC.; BEST BUY STORES, L.P.; BESTBUY.COM, L.L.C.; and MAGNOLIA HI-FI, INC.,<br><br>          Plaintiffs,<br>   v.<br><br>AU OPTRONICS CORP.; AU OPTRONICS CORPORATION AMERICA; CHI MEI CORP.; CHI MEI OPTOELECTRONICS CORP. (N.K.A. CHIMEI INNOLUX CORPORATION); CHI MEI OPTOELECTRONICS, USA, INC.; CHUNGHWA PICTURE TUBES, LTD.; CMO JAPAN CO., LTD.; EPSON | **BEST BUY'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSING BEST BUY'S (1) PRE-OCTOBER 8, 2006 CLAIMS AS TIME BARRED AND (2) POST-MAY 2003 CLAIMS FOR FAILURE TO MITIGATE DAMAGES**<br><br>Date:  October 5, 2012<br>Time:  9:00 a.m.<br>Place:  Courtroom 10, 19th Floor |

*(sidebar, vertical)* ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  ELECTRONICS AMERICA, INC.; EPSON
   IMAGING DEVICES CORPORATION;
2  HANNSTAR DISPLAY CORP; HITACHI
   DISPLAYS, LTD.; HITACHI ELECTRONIC
3  DEVICES (USA), INC.; HITACHI, LTD.; LG
   DISPLAY CO., LTD.; LG DISPLAY
4  AMERICA, INC.; NEXGEN MEDIATECH
   USA, INC.; NEXGEN MEDIATECH, INC.;
5  SHARP CORP.; SHARP ELECTRONICS
   CORP.; TATUNG COMPANY OF
6  AMERICA, INC.,

7                    Defendants.

8          Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services,

9  Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, Inc. (collectively "Best

10 Buy") hereby submit their Opposition to Defendants' Joint Motion for Partial Summary Judgment

11 Dismissing Best Buy's (1) Pre-October 8, 2006 Claims as Time Barred and (2) Post-May 2003

12 Claims for Failure to Mitigate Damages ("Motion"), as set forth below.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................ 1

II. STATEMENT OF ISSUES TO BE DECIDED ...................................... 3

III. GENUINE ISSUES OF DISPUTED MATERIAL FACT ...................... 3

IV. PRIOR ORDERS ........................................................................................ 3

V. STATEMENT OF FACTS ........................................................................ 4

    A.    Best Buy Did Not Have Any Evidence of Defendants' Price-Fixing Conspiracy Until The DOJ's Public Disclosure Of Its Investigation ..................... 4

        1.    The TAIS-Best Buy Vendor Meeting and Recap ....................................... 5

        2.    Best Buy's Investigation ........................................................... 7

    B.    Defendants Actively Concealed Their Price-Fixing Conspiracy ........................... 9

    C.    Applicable Standards ........................................................... 10

        1.    Summary Judgment Standard of Review ................................................ 10

        2.    Constructive Notice and Fraudulent Concealment Standards ................... 11

    D.    Defendants Have Not Demonstrated That Plaintiffs Claims Are Time Barred and Have Not Met the "Extremely Difficult Burden" to Show that Best Buy's Fraudulent Concealment Claim Fails as a Matter of Law ................. 12

        1.    TAIS's Single Speculative and Unsupported Comment Regarding a "Panel Cartel" is Woefully Insufficient to Demonstrate That Best Buy Had Actual Notice of the Price-Fixing Conspiracy and, at Best, Raises Factual Issues ........................................................... 12

        2.    Defendants Fail To Establish that Best Buy had Constructive Notice of its Claims ........................................................... 15

            a.    Defendants Have Not and Cannot Demonstrate any Duty to Investigate as a Matter of Law ..................................... 15

            b.    Defendants Set Forth No Facts Showing that an Investigation Would Have Uncovered Defendants' Conspiracy ........................................................... 16

        3.    Best Buy Did Investigate and Its Investigation Revealed Nothing ........... 17

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

4.   Defendants Fraudulently Concealed Their Price-Fixing Conspiracy ........ 18

E.   Defendants' Motion Fails Because the Statute of Limitations Was Tolled
Under Government Action, *American Pipe*, and Cross-Jurisdictional
Tolling Principles ................................................................................................. 18

1.   The Limitations Period On Best Buy's Direct and Indirect Claims
Was Tolled Under *American Pipe* and Cross-Jurisdictional Tolling ......... 19

2.   The DOJ's Prosecution of Cartel Members Tolled the Limitations
Period ............................................................................................................... 19

3.   Best Buy Has Not "Waived" Government Action and/or *American
Pipe* Tolling ..................................................................................................... 20

D.   Defendants' Mitigation Argument Is Legally and Factually Meritless ................. 21

1.   There Is No Mitigation of Damages Defense In Price Fixing Cases ......... 22

2.   Defendants' Mitigation of Damages Defense Is Contrary To Law
Because It Purports To Abrogate the Statute of Limitations .................... 23

3.   Defendants Have Failed to Establish that Best Buy was Aware of
Facts Giving Rise to a Duty to Mitigate ...................................................... 24

4.   As a Matter of Law, the Duty to Mitigate Did Not Require
Notification of the  DOJ or the Filing of a Civil Action ............................ 24

VI. CONCLUSION ............................................................................................................. 25

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*3M v. New Jersey Finishing,*
    381 US 311 (1965).................................................................................................. 20

*Al's Service Ctr. v. BP Prods. N. Am., Inc.,*
    599 F.3d 720 (7th Cir. 2010)............................................................................... 25

*American Pipe & Construction. Co. v. Utah,*
    414 U.S. 538 (1974)........................................................................... 2, 3, 19, 23

*Anderson v. Liberty Lobby,*
    477 U.S. 242 (1986)............................................................................................ 11

*Bartlett v. Miller and Schroder Municipals, Inc.,*
    355 N.W.2d 435 (Minn. Ct. App. 1984).......................................................... 19

*Beltz Travel Service, Inc. v. Intern. Air Transport Asso.,*
    620 F.2d 1360 (9th Cir. 1980)........................................................................... 11

*Bemidji Sales Barn Inc. v. Chatfield,*
    250 N.W.2d 185 (Minn. 1977).......................................................................... 25

*Borger v. Yamaha Int'l Corp.,*
    625 F.2d 390 (2d Cir. 1980).............................................................................. 22

*Burdick v. Union Sec. Ins. Co.,*
    CV 07-4028 ABC(JCx), 2009 U.S. Dist. Lexis 121768 (C.D. Cal. Dec. 9, 2009)............ 21

*Cal. Franchise Tax Bd. v. Kendall,*
    657 F.3d 921 (9th Cir. 2011).............................................................................. 23

*Carson v. Independent School Dist. No. 623,*
    392 N.W.2d 216 (Minn. 1986)........................................................................... 19

*Caudle v. Bristow Optical Co.,*
    224 F.3d 1014 (9th Cir. 2000)........................................................................... 25

*Cervantes v. City of San Diego,*
    5 F.3d 1273 (9th Cir. 1993)............................................................................... 20

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.,*
    858 F.2d 499 (9th Cir. 1988)..................................................................... passim

*Crown, Cork & Seal Co. v. Parker,*
    462 U.S. 345 (1983)........................................................................................... 20

*Daviton v. Columbia/HCA Healthcare Corp.,*
    241 F.3d 1131 (9th Cir. 2001)........................................................................... 25

*E.W. French & Sons v. Gen. Portland, Inc.,*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

885 F.2d 1392 (9th Cir. 1984)................................................................ 11

*First Nat'l Bank of LeCenter v. Farmers Union Mktg. and Processing Ass'n*,
   371 N.W.2d 22 (Minn. App. 1985)..................................................... 25

*Fishman v. Estate of Wirtz*,
   807 F.2d 520 (7th Cir. 1996)............................................................. 22

*Ford Motor Credit Co. v. Hairston*,
   No. 06-cv-0004, 2006 WL 2850615 (W.D. Va. Oct. 2, 2006) .......................... 25

*Gaston v. NYC Dep't of Health Office of Chief Med. Exam'r*, 432 F. Supp. 2d 321
   (S.D.N.Y 2006) ............................................................................... 13

*Go Computer, Inc. v. Microsoft Corp.*,
   437 F. Supp. 2d 497 (D. Md. 2006)..................................................... 12

*Gorman v. University of Rhode Island*,
   646 F. Supp. 799 (D.R.I. 1986),
   *rev'd on other grounds*, 837 F.2d 7 (1st Cir. 1988)............................ 24, 25

*Great Rivers Coop. v. Farmland Industries, Inc.*,
   120 F.3d 893 (8th Cir. 1997).............................................................. 17

*Grisham v. Philip Morris, Inc.*,
   670 F. Supp. 2d 1014 (C.D. Cal. 2009) ................................................ 21

*Hannah Mining Co. v. Internorth, Inc*,
   379 N.W.2d 663 (Minn. Ct. App. 1986) ............................................... 15

*Hennegan v. Pacifico Creative Serv. Inc*,
   787 F.2d 1299 (9th Cir. 1986)............................................................ 14

*Home Indem. Co. v. Lane Powell Moss & Miller*,
   43 F.3d 1322 (9th Cir. 1995).............................................................. 24

*Illinois Brick Co.v. Illinois*,
   431 U.S. 720 (1977)......................................................................... 22

*In re Airline Ticket Comm'n Antitrust Litig.*,
   918 F. Supp. 283 (D. Minn. 1996)...................................................... 22

*In re Aluminum Phosphide Antitrust Litigation*,
   905 F. Supp. 1457 (D. Kan. 1995) ...................................................... 16

*In re Beef Industry Antitrust Litigation*,
   600 F.2d 1148 (5th Cir. 1979) (cert denied, 449 U.S. 905 (1980)............. passim

*In re Copper Antitrust Litig.*,
   436 F.3d 782 (7th Cir. 2006).............................................................. 14

*In re Fortune Sys. Sec. Litig.*,
   680 F. Supp. 1360 (N.D. Cal. 1987) .................................................... 25

*In re Linerboard Antitrust Litig.*,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

223 F.R.D. 335 (E.D. Pa. 2004) ................................................................. 19

*In re Petroleum Products Antitrust Litig.,*
782 F. Supp. 487 (C.D. Cal. 1991) ............................................ 11, 12, 15, 16

*In re Rubber Chems. Antitrust Litig.,*
504 F. Supp. 2d 777 (N.D. Cal. 2007) ......................................................... 11

*In re Urethane Antitrust Litig.,*
663 F. Supp. 2d 1067 (D. Kan. 2009) .......................................................... 19

*In re Visa Check/MasterMoney Antitrust Litig.,*
280 F.3d 124 (2d. Cir. 2011) ....................................................................... 25

*Jenson v. Allison-Williams Co.,*
1999 U.S. Dist. LEXIS 22170, 18-19 (S.D. Cal. Aug. 23, 1999) .............. 19

*Klehr v. A.O. Smith Corp.,*
521 U.S. 179 (1997) .................................................................................... 23

*Law v. Medco Research, Inc.,*
113 F.3d 781 (7th Cir. 1997) ....................................................................... 13

*Leh v. General Petroleum,*
382 U.S. 54 (1965) ...................................................................................... 20

*Litton Systems, Inc. v. American Tel. & Tel. Co.,*
700 F.2d 785 (2nd Cir. 1983) ...................................................................... 22

*Lopez v. Musinorte Entm't Corp.,*
434 Fed. Appx. 696 (9th Cir. 2011) ............................................................ 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) .................................................................................... 10

*MCI v. AT&T,*
708 F.2d 1081 (7th Cir. 1983) ..................................................................... 23

*Miller v. Perry Corp.,*
Case No. 3:05CV7454, 2007 U. S. Dist. LEXIS 28399 (N. D. Ohio April 17,
2007) ............................................................................................................ 25

*Morton's Mkt. Inc. v. Gustafson's Dairy, Inc.,*
198 F.3d 823 (11th Cir. 1999) ..................................................................... 17

*Mt. Hood Stages, Inc. v. Greyhound Corp.,*
555 F.2d 687 (9th Cir. 1977),
(*vacated on other grounds*, 437 U.S. 322) .......................................... 12, 18

*Mulvey v. AU Optronics Corp.,*
07:cv-01425-MJD-SRN (Dkt. No. 1) (March 6, 2007) .............................. 19

*Pierce v. Ramsey Winch Co.,*
753 F.2d 416 (5th Cir. 1985)........................................................................ 22

Re/MAX Int'l Inc. v. Realty One, Inc.,
   173 F.3d 995, 1021 (6th Cir. 1999).................................................................. 13

Roberts v. Arizona Bd. of Regents,
   661 F.2d 796 (9th Cir. 1981)........................................................................... 21

Royal Printing Co. v. Kimberly-Clark Corp.,
   621 F.2d 323 (9th Cir. 1980)........................................................................... 22

Rutledge v. Boston Woven Hose,
   576 F.2d 248 (9th Cir.1978)............................................................................ 14

Rywelski v. AU Optronics Corp. et al.,
   07:cv-01393-MJD-AJB (Dkt. No. 1) (March 2, 2007) ................................... 19

State of Minnesota v. Philip Morris Inc.,
   551 N.W.2d 490 (Minn. 1996)......................................................................... 22

Tackleson v. Abbot-Nw. Hosp., Inc.,
   415 N.W.2d 733 (Minn. Ct. App. 1987) .......................................................... 15

Tosti v. Los Angeles,
   754 F.2d 1485 (9th Cir. 1985).......................................................................... 19

Vasek v. Western Grain & Seed Co.,
   353 N.W. 2d 175 (Minn. Ct. App. 1984) ......................................................... 15

Volk v. D.A. Davidson & Co.,
   816 F.2d 1406 (9th Cir. 1987).......................................................................... 12

Wasco Prods. Inc. v. Southwall Tech. Inc.,
   435 F.3d 989 (9th Cir. 2006)..................................................................... 20, 21

Western Shoe Gallery, Inc. v. Duty Free Shoppers, Ltd.,
   593 F. Supp. 348 (N.D. Cal. 1984) .................................................................. 14

Westman Com. Co. v. Hobart Corp.,
   541 F. Supp. 307 (D. Colo. 1982),
   rev'd on other grounds, 409 U.S. 363 (1972)............................................. 24, 25

Williamson v. Prasciunas,
   661 N.W.2d 645 (Minn. 2003).......................................................................... 12

Yonak v. Severson,
   A05-154, 2005 Minn. App. Unpub. LEXIS 564 (Dec. 6, 2005)..................... 16

Zenith Radio Corp. v. Hazeltine Research,
   401 U.S. 321 (1971).................................................................................. 18, 20

**Statutes**

15 U.S.C. § 16(i) ...................................................................................................... 19

5 U.S.C. § 15b .................................................................................................... 18, 23

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Fed. R. Civ. P. 15(a) (2) .................................................................................... 21

Fed. R. Civ. P. 56(c) .......................................................................................... 10

Minn. Stat. 325D.64 ........................................................................................... 23

**Other Authorities**

Schwarzer et al., Federal Procedure Before Trial ............................................. 21

# I.

## INTRODUCTION

Defendants' entire motion – a crude and irrelevant cut-and-paste job from the Dell action – is based on a single speculative and unsupported passing comment made by a Toshiba America Information Systems, Inc. ("TAIS") employee to a Best Buy buyer during a May, 2003 vendor meeting regarding laptop inventory. An exhaustive top-to-bottom search of Best Buy in 2011 in this case reveals that this single speculative comment about a "panel cartel" appears in a grand total of three Best Buy documents: a memo to TAIS and Best Buy summarizing the May, 2003 meeting and two later documents where the comment was pasted, verbatim, from the initial memo. Each document is totally devoid of any facts whatsoever regarding a purported cartel, as there are no references at all to any individuals, entities, places, events, documents, dates and/or agreements. Through creative exaggerations and outright hyperbole, Defendants attempt to leverage this single speculative statement into conclusive evidence that Best Buy had actual knowledge of the conspiracy such that it should have immediately filed a complaint and contacted the Department of Justice ("DOJ"). But it is clear from the face of these three documents and from witness testimony that Best Buy never received any facts or documents supporting the existence of a panel cartel prior to the DOJ's public disclosure of the conspiracy.

### Statute of Limitations

Defendants have not and cannot establish that Best Buy had actual notice of the conspiracy as a matter of law in 2003, much less show that there are no genuine disputed issues of material fact on fraudulent concealment. This is particularly true given the overwhelming evidence of Defendants' extensive scheme to conceal their conspiracy.

Nor can Defendants establish that Best Buy had constructive notice. First, the law is clear that mere rumors are insufficient to trigger a duty to investigate. Indeed, the Ninth Circuit has explained that even the filing of public lawsuits that received "widespread industry publicity" are insufficient to establish constructive notice as a matter of law. Second, there is no constructive notice where, as here, an investigation would have revealed nothing. It is not enough for Defendants to simply point to the speculative TAIS statement and claim Best Buy did not act

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  diligently in investigating the comment.  Rather, Defendants must demonstrate that Best Buy

2  *could have* uncovered facts demonstrating the conspiracy in May, 2003.  Defendants have failed

3  to put forth any evidence to meet this high burden.  Third, contrary to Defendants' arguments, the

4  evidence demonstrates that Best Buy diligently investigated component supply issues on an

5  ongoing basis with TAIS, yet never found any evidence supporting the existence of a panel cartel.

6  In fact, component supply issues raised by TAIS in May, 2003 supposedly tied to a panel cartel

7  had disappeared by August, 2003.

8          Finally, Defendants' Motion should be denied because the limitations period was tolled,

9  pursuant to the Government Action, *American Pipe*, and Cross-Jurisdictional tolling doctrines.

10  Defendants ignore these tolling periods, which toll the limitations period even in the absence of

11  fraudulent concealment.  And Defendants' waiver argument is baseless.  Best Buy's First

12  Amended Complaint ("FAC") describes the basis for Government Action tolling in detail and

13  alleges facts demonstrating that it was a member of the Direct Purchaser Plaintiff ("DPP") and

14  two Indirect Purchaser Plaintiff ("IPP") cases originally filed in Minnesota.  And in any event, the

15  Court can take judicial notice of the pendency of the DPP and IPP cases on summary judgment.

16  In short, disputed issues of material fact preclude summary judgment.

17          **Mitigation of Damages**

18          Defendants next argue, based on the same single speculative TAIS comment, that

19  summary judgment is warranted because Best Buy "could have sued the defendants" but instead

20  "gamed the system" and made "a bet on treble damages."  Mot., at pgs. 17:27; 18:9-10, 20:1.

21  Putting aside that no such mitigation defense exists in horizontal price-fixing cases, Best Buy was

22  aware of no facts whatsoever triggering any duty to mitigate, either by filing suit or notifying the

23  DOJ.  Defendants' argument might make sense in an imaginary world – one where FRCP Rule 11

24  does not exist and where antitrust complaints need not name defendants nor identify conspirators,

25  individuals, places, events, dates, documents, and/or agreements.  For these reasons, summary

26  judgment is improper.

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

## II.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether there are genuine issue of material fact regarding Best Buy's actual or constructive notice of Defendants' conspiracy and regarding Defendants' fraudulent concealment where: (1) Best Buy had no facts about the conspiracy and no facts triggering a duty to investigate, (2) Best Buy's investigation revealed nothing, (3) there is no evidence that Best Buy could have discovered the conspiracy in 2003; and (4) Defendants concealed the existence of their global conspiracy to fix LCD prices.

2. Whether the limitations period on Best Buy's claims was tolled under the Government Action, *American Pipe*, and Cross-Jurisdictional tolling theories even in the absence of fraudulent concealment.

3. Whether Defendants' affirmative defense of mitigation of damages fails because: (1) there is no cognizable mitigation defense in this horizontal price fixing case, (2) Best Buy was aware of no facts triggering a duty to mitigate, and/or (3) Best Buy's investigation revealed nothing.

## III.

## GENUINE ISSUES OF DISPUTED MATERIAL FACT

Defendants' Motion must be denied because a reasonable juror could conclude that: (1) Best Buy lacked actual knowledge or constructive notice of Defendants' price fixing conspiracy; (2) TAIS's speculative "panel cartel" comment triggered no duty to investigate; (3) Best Buy's investigation revealed no facts regarding a panel cartel or a price-fixing conspiracy; (4) Best Buy could not have discovered facts demonstrating a conspiracy in 2003; and/or (5) Defendants and their co-conspirators took affirmative steps to conceal their conspiracy.

## IV.

## PRIOR ORDERS

1. Special Master's Amended Order Re: Defendants' Motion for Leave to Disclose Anthony Nanni as Expert Witness in the Dell and Best Buy Cases. (Dkt. 5240).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

2.     Order Denying Defendants' Objection to Special Master's Order Denying Leave To Disclose Anthony Nanni As Expert Witness In The Best Buy Case.  (Dkt. 5587).

**V.**

**STATEMENT OF FACTS**

**A.    Best Buy Did Not Have Any Evidence of Defendants' Price-Fixing Conspiracy Until The DOJ's Public Disclosure Of Its Investigation**

While making sweeping and hyperbolic declarations that Best Buy "received unequivocal information of the existence of the 'panel cartel'" (Motion at 9), Defendants fail to mention any "facts" that purportedly required Best Buy to immediately file suit and run to the DOJ in 2003 – and with good reason – the facts demonstrate that Best Buy had no actual or constructive knowledge of the LCD price fixing conspiracy in May, 2003.

- **Best Buy witnesses testified that they had no knowledge of the LCD price fixing conspiracy in May, 2003.**  Ex. 37[1], Winneroski Tr. at 62:21-63:18, 81:13-22; Ex. 38, Fritz Tr. 45:16-46:8; Ex. 40, Sherwood Tr. at 40:11-15; Ex. 39, McClain Tr. at 53:13-23.

- **The May, 2003 TAIS vendor meeting and resulting Vendor Meeting Recap memo disclosed no "facts" regarding any price fixing conspiracy.** *See* Ex. 35 (Vendor Meeting Recap memo).

- **The "panel cartel" comment was speculative and construed as an excuse.**
    - All TAIS employees testified that it had no knowledge of the price fixing conspiracy in 2003. Ex. 41, Skillman Tr. at 67:3-68:6; Ex. 42, Anderson Tr. at 97:13-99:3; and Ex. 43, Weiss Tr. at 23:11-25.
    - Vendors often made excuses.  Ex. 37, Winneroski Tr. at 74:20-75:7 and Ex. 38, Fritz Tr. at 53:9-54:11.
    - TAIS had a history of decommissioning supply in a short period of time. Ex. 41, Skillman Tr. at 34:10-23; 60:23-62:20.
    - TAIS was poor at managing inventory or meeting vendor needs.  Ex. 41, Skillman Tr. at 38:17-39:25 and Ex. 43, Weiss Tr. at 42:5-46:5.
    - The panel cartel comment was placed in quotes.  Ex. 37, Winneroski Tr. at 63:5-12; 67:10-17.
    - The "real issue" was hard drives. Ex. 37, Winneroski Tr. at 63:5-12; 67:10-17; 74:2-14; 81:13-22; Ex. 41, Skillman Tr. at 60:23-62:20; and Ex. 43, Weiss Tr. at 42:5-46:5.

---

[1] All "Ex." and "Exs." References are to the concurrently-filed Declaration of Roman Silberfeld.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

- **Best Buy acted reasonably diligently and its investigation in 2003 revealed nothing.**
  - TAIS and Best Buy continued to work closely on component and supply issues. Ex. 35 and Exs. 44-46
  - TAIS personnel were charged with keeping Best Buy informed of "additional information" on panel shortages. Ex. 35.
  - TAIS never again raised the issue of a "panel cartel." Exs. 44-46
  - TAIS reported no panel supply issues or any "panel cartel" in its next meeting with Best Buy in June, 2003. Exs. 44-46
  - TAIS reported no panel supply issues in August, 2003. Exs. 44-46

- **Best Buy's massive document search in 2011 revealed no evidence of any panel cartel.** *See* Exs. 35-36 and 47.

- **There is no evidence that Best Buy "could have" discovered any panel cartel before December, 2006.**
  - Defendants provide no such evidence to the Court and there is no evidence of any public information prior to December, 2006 regarding any panel cartel. *See* Decl. of Roman Silberfeld, ¶ 55.

### 1.    The TAIS-Best Buy Vendor Meeting and Recap

The facts are these:  On May 15, 2003, Best Buy's buyer Kevin Winneroski held a meeting with six individuals at TAIS to discuss Best Buy's procurement of laptops ahead of the "back-to-school" season. Ex. 35.  The meeting was one of several between Best Buy and TAIS designed to ensure that Best Buy would receive an adequate supply of laptops to fill its shelves for the back-to-school season, which generally runs from July through September.  Mr. Winneroski summarized the meeting that same day in a cover email and attached a 3-page memo entitled "Vendor Meeting Recap." *Id.*  He then emailed the document to Best Buy and TAIS personnel involved in laptop procurement.  The memo discussed TAIS's laptop commitments to Best Buy and described a collaborative plan through the back-to-school season.  One of the six issues discussed during the meeting was "Component Risks in Notebooks."  The second page of the document includes the following statements attributed to TAIS:

> Panels are a *spotty issue – not necessarily* any real shortages, likely more of an issue of the "panel cartel" conspiring to keep supply down to drive prices up. *Real issue* is hard drives – IBM exited the business two months ago, selling out to Hitachi and Toshiba as main suppliers. Hitachi has been unable to ramp up demand – *serious ongoing issue*. *Id.* [internal quotations in original; emphasis added].

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

This passage is the entire universe of supposed cartel "evidence" that purportedly required Best Buy to immediately file suit and run to the DOJ. Putting aside numerous disputed issues as to who said it, what was said and what it meant (no one from Best Buy knew its meaning), the "panel cartel" comment is facially speculative and unsupported by any facts. Conversely, TAIS stated that the "real issue" was "hard drives" because "IBM exited the business" and "Hitachi has been unable to ramp up demand." *Id.* Mr. Winneroski considered the speculative "panel" comment an "excuse," as contrasted with the "hard drive" statement based on the <u>fact</u> that IBM had "exited the business." *Id.* at 63:5-12; 67:10-17; 74:2-12. While the "hard drive" issue was the "real issue," and was both "serious" and "ongoing" (*Id.*, at 74:2-12; 81:13-22; 226:9-19), this was the first and only time Mr. Winneroski heard about alleged efforts to limit supply to drive pricing. *Id.* at 62:21-25; 81:17-22.

Given TAIS's history of "decommitting supply in a short window of time," (Ex. 41, Skillman Tr. at 34:10-23) and TAIS's reference to a "panel cartel" without any supporting facts, Mr. Winneroski considered the comment an excuse for TAIS's inability to meet Best Buy's laptop demand. Mr. Winneroski put the "cartel" phrase in quotes precisely for that reason:

> A.   Well I think from the fact that I put this in parentheses and the tone and the way that it was written, we likely took this as an excuse. The real issues, as I state also in this portion, that we understood was hard drives. And there was legitimate reason for hard drives to be constrained.

Ex. 37, Winneroski Tr. at 63:5-12. Further:

> Q.   And what in your notes suggests that you really believed that the issue was hard drives.
> A.   The fact that I said the real issue is hard drives. Putting ourselves back in 2003, there were two main suppliers for hard drives, Hitachi and Toshiba ... And our belief was that there was competition of this product, that we may not have been given the full story all around.

*Id.* at 74:12-75:1-2. Best Buy's Wendy Fritz, who was Mr. Winneroski's superior at the time, similarly testified that the comment appeared to be an excuse, and that vendors often made excuses for not meeting demand. Ex. 38, Fritz Tr. at 53:9-54:11.

Indeed, Kurt Skillman (to whom the component issues raised in the memo are attributed (Ex. 35 at pg. 1; *see also* Ex. 37, Winneroski Tr. at 55:13-19) testified that TAIS was not very

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    good at managing its inventory and/or meeting vendor needs during the May 2003 time frame.

2    Ex. 41, Skillman Tr. at 34:10-23; 38:17-39:25; *see also* Ex. 43, Weiss Tr. at 42:5-46:5 (same).

3    Moreover, the three deposed TAIS employees from the May 2003 meeting confirmed that they

4    were aware of no facts supporting any panel cartel (Ex. 41, Skillman Tr. at 67:3-68:6; Ex. 42,

5    Anderson Tr. at 97:13-99:3; Ex. 43, Weiss Tr. at 23:11-25), and that hard drives were the real

6    issue supported with actual facts (such as IBM exiting the business). [2]  And Mr. Skillman, while

7    not recalling the comment, confirmed it was purely speculative.  Ex. 41, Skillman Tr.  at 62:21-

8    63:13.

9           Defendants grossly overstate the evidence as to what Best Buy supposed "knew" and

10    "understood" given its employees' supposed antitrust training.  Motion, at pgs. 6-7.  Defendants

11    suggest that because of this antitrust training, Best Buy "knew" that the word "cartel" was cause

12    for action.  None of the testimony that Defendants cite to shows that the Best Buy employees at

13    issue had antitrust training before May, 2003.  Motion, at 7:8-25; *see* Ex. 37, Winneroski Tr.

14    70:20-71:7; Ex. 38, Fritz Tr. at 48:23-49:15; Ex. 40 Sherwood Tr. at 37:14-20. And all four Best

15    Buy witnesses deposed on the "panel cartel" comment testified that they did not recall the

16    comment, and that they did not understand a "cartel" to necessarily refer to illegal behavior.  Ex.

17    37, Winneroski Tr. at 67:22- 68:25; Ex. 38, Fritz Tr. at 46:9-48:4; Ex. 39, McClain Tr. at 50:22-

18    51:23; Ex. 40, Sherwood Tr. at 33:8-34:1; 37:6-13

19           **2.    Best Buy's Investigation**

20           Defendants argue that Best Buy did nothing and ignore the evidence that Best Buy took

21    specific steps to investigate TAIS's speculative "panel cartel" comment.  The immediate result of

22    the May 2003 meeting was that Best Buy monitored TAIS's ability to deliver laptops on Best

23    Buy's timetable.  Best Buy of course was highly incentivized to monitor any perceived supply

24    chain and component issues – that was one of the reasons for the ongoing discussions with TAIS

25

26    _____

      [2]   Ex. 41, Skillman Tr. at 60:23-62:20; Ex. 42, Anderson Tr. at 60:22-61:18; Ex. 43, Weiss Tr. at

27    42:24-44:18.  For example, TAIS employee Matt Weiss testified that during this 2003 time period
      he could not recall ever discussing panel supply issues, but he specifically remembered that TAIS

28    was struggling to get hard drives for lower priced computers, which were a big "volume driver" at
      the back to school time. Ex. 43, Weiss Tr. at 43:14-21.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

leading up to the back-to-school season in the first instance. [3]  As a result, TAIS personnel were specifically charged with keeping Best Buy informed of "additional information" on panel shortages. Ex. 35; Ex. 37, Winneroski Tr. at 79:12-80:6.  And the Vendor Meeting Recap memo itself specifically notes that Best Buy and TAIS agreed to "[c]ontinue to share information on component level issues and work to collaboratively anticipate potential shortages and plan far enough ahead to mitigate risk." Ex. 35, pg.3.

In fact, Best Buy continued to meet with TAIS leading up to and through the back-to-school season, including just a month later on June 17, 2003 to continue to share information and address laptop delivery issues.  Exs. 44-45  The meeting was attended by many of the same TAIS and Best Buy personnel from a month earlier.  The resulting memo discusses laptop supply chain issues in great detail, including "plastic shortages," but reflects no mention at all of any panel cartel or even of any panel supply issues. Ex. 44 at pg.14.  Best Buy continued to investigate component issues through at least August 25, 2003.  On that date, Mr. Winneroski drafted an internal email explaining as follows:

> I have made repeated requests of the HP team to get me details on the severity issues, and a plan of action for how we can partner proactively to minimize business disruption.  These requests have not been answered to my satisfaction.
>
> * * *
>
> **I am making the same request for Toshiba, however we are NOT hearing about component related issues from Toshiba at this time.**

Ex. 46 [capitalization in original; bolded added].  The evidence is clear that TAIS never again mentioned any "panel cartel," confirming Mr. Winneroski's suspicion that TAIS's earlier speculative panel cartel comment was merely an excuse for their lack of performance.  And it shows that the panel supply issued tied to a supposed panel cartel comment by TAIS in May, 2003 was resolved by August, 2003.  A massive Best Buy electronic and hard copy document search in 2011 turned up no evidence that TAIS (or anyone else) ever raised the "panel cartel" issue again, let alone any facts to support it.  The search yielded only two additional documents.

---

[3]  As is normal in the retail environment, Best Buy was dealing with product "undersupply" and "oversupply" "on a very consistent quarterly and annual basis." Ex. 38, Fritz Tr. at 38:9-12.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    The first is a 67-page PowerPoint deck dated May 28, 2003, which includes a single line

2  replicating the Vendor Meeting Recap "cartel" statement. Ex. 36 at pg. 4. The deck, which

3  reflects a single monthly meeting with certain Best Buy regional field personnel, includes the

4  following shorthand statement buried in diminutive font on page 4, line 9 of 26, in a slide (one of

5  67) entitled Notebook Inventory – June FY 04: "Panels – cartel holding supply down to drive

6  pricing." *Id.* at pg. 4. As the Court can see from reviewing the document, the buried statement

7  tracks the prior statement from the Vendor Recap Meeting and is again devoid of any factual

8  basis. Ex. 40, Sherwood Tr. at 49:24-50:10. While Defendants claim that Best Buy presented this

9  supposed "evidence" of a cartel to its regional vice presidents, the deck actually identifies eight

10  total potential attendees, including only one Best Buy field vice president. [4]

11    The second document is a March 7, 2005 email comparing notebook supply and sales in

12  2003 and 2004. Ex. 47. The document again copied – verbatim – the panel cartel comment from

13  the prior two documents, and is again devoid of any factual information whatsoever. That Best

14  Buy published these documents to its personnel is both unremarkable and irrelevant. PowerPoint

15  presentations and emails are by definition "published." But the Court can see for itself upon

16  reviewing the documents that their purpose had nothing to do with any panel cartel.

17  **B.    Defendants Actively Concealed Their Price-Fixing Conspiracy**

18    The evidence overwhelmingly establishes that the major LCD manufacturers perpetrated

19  an extensive scheme to conceal their conduct and deny its existence to its customers:

20    • **The conspiracy participants were instructed to avoid written communications,
21    "which would leave trails."** Ex. 1 at 358:12-171; *see also* Ex. 2 at 284: 15-18
      (Genichi Watanabe agreed that he did not create writings because he was "concerned
22    about the antitrust laws."); Ex. 3 at 164:7-16 (Michael Hanson agreed he
      "purposefully didn't write down a lot of things that [he] talked about so that it
23    wouldn't come to light someday."); Ex. 4 at 263:1-3; Ex. 5 at 192:7-15 (Bock Kwon
      agreed he was instructed to "avoid written communications so that they couldn't be
24    used as evidence."); Ex. 6 at 120:25-11, 199:13-200:19 (Hitachi employees avoided
      written communications.); Ex. 7 at 238:10-240:10; Ex. 8; Ex. 9; Ex. 10; Ex. 11
25    (Instructing Toshiba employees to "not release emails … Make simple correspondence
      via the telephone because if you do so by mail then there will be evidence of what you

26

27  [4] The deck confirms that the business team had been diligently "working around the clock to find
    opportunities to fill gaps in the assortment, & procure additional inventory. The team is meeting
28  each morning to touch base on the action items (see attached) and planning the priorities for the
    day." Ex. 36 at pg. 4.

have said."); Ex. 12 (instructing Toshiba employee not to forward emails "suggesting a violation of antitrust legislation.").

- **Communications that were written and sent via email were often accompanied by instructions such as "Do Not Forward" or "Destroy After Reading," in an attempt to limit widespread knowledge of the conspiracy.** *See, e.g.*, Ex. 13 at 297:9-25; Ex. 14 at 256:14-22, 267:11-21, 273:11-19; Ex. 15 at 74:7-18; Ex. 16 at 477:9-16; Ex. 17; Ex. 18; Ex. 19; Ex. 20.

- **The conspiracy participants often met in hotels instead of their own offices to avoid discovery.** *See, e.g.*, Ex. 2 at 40:6-19; Ex. 21 at 68:25-69:12; Ex. 22 at 67:18-68:1; Ex. 7 at 58:14-59:2; Ex. 23.

- **The Crystal Meeting participants insisted on keeping the number of attendees to a minimum, to avoid detection.** *See, e.g.*, Ex. 24 at 96:25-97:13; Ex. 25 at 127:12-19; Ex. 26.

- **When leaving the Crystal Meetings, the attendees were instructed to leave at staggered times, so they would not all be seen together.** *See, e.g.*, Ex. 24 at 97:14-17; Ex. 22 at 139:15-22, 361:24-362:4; Ex. 27 at 66:2-19.

- **The conspirators were instructed to keep the meetings and discussions confidential, even from others within their own companies, and participants tried to keep the meetings and discussions hidden from their customers.** *See, e.g.*, Ex. 1 at 78:1-6, 238:22-24, 242:3-9, 368:14-369:9 ("No matter it's lawful or unlawful, the existence of this kind of meeting may cause not necessary trouble with our customer."); Ex. 3 at 299:6-12; Ex. 24 at 265:11-266:7; Ex. 21 at 99:1-16, 290:19-24; Ex. 28 at 195:7-13, 278:6-13; Ex. 16 at 54:15-55:3; Ex. 29 at 1223:5-1224:9.

- **As the conspirators became more concerned that the conspiracy would be discovered, they began sending only lower-level employees, as opposed to the CEOs that previously attended the meetings.** *See, e.g.*, Ex. 1 at 360:1-20; Ex. 30 at GRN000133.

- **When submitting price increases the conspirators provided alternative, seemingly legitimate explanations for those price increases.** *See, e.g.*, Ex. 24 at 99:1-25; Ex. 6 at 205:1-206:1; Ex. 31.

- **Similarly, the conspirators attempted to stagger their price submissions and avoid submitting their prices at the same time and at exactly the same price points so as not to raise customer suspicions.** *See, e.g.*, Ex. 6 at 214:2-9, 215:7-25; Ex. 32; Ex. 33; Ex. 34.

## C.   Applicable Standards

### 1.   Summary Judgment Standard of Review

Defendants bear the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986); Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, courts are "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986), and the court views the evidence in the light most favorable to the nonmoving party (*Id.* at 255), and that evidence "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* "In antitrust cases, these general standards are applied even more stringently and summary judgment granted more sparingly." *Beltz Travel Service, Inc. v. Intern. Air Transport Asso.*, 620 F.2d 1360, 1364 (9th Cir. 1980).

### 2.     Constructive Notice and Fraudulent Concealment Standards

Constructive knowledge exists when a plaintiff "should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim." *Conmar*, 858 F.2d at 502 (citation omitted). However, "the requirement of diligence is only meaningful . . . when facts exist that would excite the inquiry of a reasonable person." *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 788 (N.D. Cal. 2007)  (quoting *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 504 (9th Cir. 1988).  Facts must first exist to excite the inquiry of a reasonable person. **And whether such facts exist, is a question for the jury.** *In re Petroleum Products Antitrust Litig.*, 782 F. Supp. 487, 489 (C.D. Cal. 1991) ("[The elements of fraudulent concealment] are all factual questions" [emphasis added]).  Moreover, even if such facts exist, "*defendants have the*e burden ... *to demonstrate conclusively that the plaintiffs, through the exercise of reasonable diligence, would have discovered adequate ground for filing suit.*"  *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148 (5th Cir. 1979) (cert denied, 449 U.S. 905 (1980) [emphasis added]).  For these reasons, "**Ordinarily, a defendant has an extremely difficult burden** to show that [fraudulent concealment allegations are] barred as a matter of law." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987) [emphasis added].  To grant summary judgment, the court must determine that the "uncontroverted evidence 'irrefutably demonstrates that a plaintiff discovered or should have discovered [the cause of action] but failed to file a timely complaint.'"  *Conmar*, 858 F.2d at 502 [brackets in original] [citation omitted].

Fraudulent concealment is an "equitable doctrine" under which "the applicable statute of limitations is tolled if the plaintiff proves the defendant fraudulently concealed the existence of the cause of action so that the plaintiff, acting as a reasonable person, did not know of its existence."  *E.W. French & Sons v. Gen. Portland, Inc.*, 885 F.2d 1392, 1399 (9th Cir. 1984).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**D.** **Defendants Have Not Demonstrated That Plaintiffs Claims Are Time Barred and Have Not Met the "Extremely Difficult Burden" to Show that Best Buy's Fraudulent Concealment Claim Fails as a Matter of Law**

Defendants' Motion must be denied because a reasonable juror could conclude that: (1) Best Buy lacked actual knowledge or constructive notice of Defendants' price fixing conspiracy; (2) TAIS's speculative "panel cartel" comment triggered no duty to investigate; (3) Best Buy's investigation revealed no facts regarding a panel cartel or a price-fixing conspiracy; (4) Best Buy could not have discovered facts demonstrating a conspiracy in 2003; and/or (5) Defendants and their co-conspirators took affirmative steps to conceal the conspiracy.

**1.** **TAIS's Single Speculative and Unsupported Comment Regarding a "Panel Cartel" is Woefully Insufficient to Demonstrate That Best Buy Had Actual Notice of the Price-Fixing Conspiracy and, at Best, Raises Factual Issues**

Defendants have not and cannot demonstrate that Best Buy had actual knowledge of any facts underlying its antitrust claims. Indeed, "whether a plaintiff knew or should have known of a cause of action presents a question for the trier of fact." *Volk*, 816 F.2d at 1417; *see also In re Petroleum Prods.*, 782 F. Supp. at 491 (same); *Go Computer, Inc. v. Microsoft Corp.*, 437 F. Supp. 2d 497, 500 (D. Md. 2006) ("Factual disputes concerning the extent of a plaintiff's knowledge cannot be resolved on summary judgment.").

TAIS's single conclusory "panel cartel" comment does not come close to establishing that Best Buy had actual knowledge of Defendants' conspiracy. *See, e.g., Mt. Hood Stages, Inc. v. Greyhound Corp.*, 555 F.2d 687, 698 (9th Cir. 1977) (*vacated on other grounds*, 437 U.S. 322) (refusing to set aside a jury determination of fraudulent concealment because "suspicion will not substitute for knowledge" of facts"); *Williamson v. Prasciunas*, 661 N.W.2d 645, 650 (Minn. 2003) (affirming judgment for plaintiff even though she suspected her claims twelve years earlier because "[m]ere suspicion, in a case of fraudulent concealment, is not sufficient to stop the tolling

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  of the statute of limitations."). [5]

2         The Ninth Circuit's *Conmar* decision is dispositive. There, the Court reasoned that the

3  following evidence was insufficient to put plaintiff on "notice" of its antitrust claims for purposes

4  of summary judgment: (1) public news reports, (2) a federal indictment, and (3) other antitrust

5  complaints filed against defendants. *Conmar*, 858 F.2d at 503-504. This was because "the leap

6  from the plaintiff's knowledge of the … complaint to actual or constructive knowledge of their

7  causes of action… involves factual issues." *Id.* at 504 (quoting *In re Beef Indus.*, 600 F.2d at

8  1171). And "[e]ven if [plaintiff] were charged with knowledge of [other antitrust complaints]

9  because it was a matter of public record, that knowledge would not necessarily justify the filing of

10 a complaint, and so the issue of whether the statute of limitation was tolled would be

11 inappropriate for summary judgment." *Id.* at 504.

12        Likewise, the Fifth Circuit also found that: (1) public articles stating that cattle farmers

13 were colluding to depress prices and, (2) the filing of an antitrust complaint that received

14 nationwide publicity did not amount to constructive or actual knowledge sufficient to start the

15 statute of limitations in light of allegations of fraudulent concealment:

16            Although the statute of limitations is not tolled simply because the
             plaintiffs lack much of the evidence supporting their potential
17            claim, they cannot have notice of a potential claim unless they are
             aware of some evidence tending to support it. The filing by others
18            of a similar lawsuit against the same defendants may in some
             circumstances suffice to give notice, but to rule that it does so as a
19            matter of law is to compel a person situated like these plaintiffs to
             file suit, on the pain of forfeiting his rights, regardless of whether
20            his attorney believes that there is 'good ground to support it.' Rule
             11, F.R.Civ.P. The mere filing of a similar lawsuit, without more,
21            does not necessarily give 'good ground' because that suit might
             well be frivolous or baseless.

22

23

24
   ─────────────────────
   [5] *See also Law v. Medco Research, Inc.*, 113 F.3d 781, 787 (7th Cir. 1997) ("[T]he running of the
25 statute of limitations would be tolled (interrupted)…until the investors had enough facts in hand
   to enable them to file a complaint that would comply with the requirements of Federal Rules of
26 Civil Procedure for pleading fraud). *Re/MAX Int'l Inc. v. Realty One, Inc.*, 173 F.3d 995 (6th Cir.
   1999) ( "Mere suspicion of a conspiracy is not enough … without evidence that the defendants
27 acted in concert."); *Gaston v. NYC Dep't of Health Office of Chief Med. Exam'r*,
   432 F. Supp. 2d 321 (S.D.N.Y 2006) ("accrual occurs when the plaintiff has discovered the
28 critical facts of both his injury and its cause.")

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

*In re Beef Indus.*, 600 F.2d at 1171. [6]

Here, as in *Conmar*, *In re Beef* and *In re Copper*, Defendants have not and cannot demonstrate that Best Buy had actual notice of Defendants' price fixing conspiracy.  If other complaints and public news articles alleging price fixing were insufficient to establish actual notice in those cases, TAIS's speculative and unsupported passing comment to Best Buy in 2003 is surely insufficient to give Best Buy "good grounds" to file an antitrust claim against Defendants in 2003 under the governing Rule 11 standard.  Indeed, unlike *Conmar*, where even complaints and news articles were insufficient, there is no evidence at all of any public reports or criminal or civil complaints in 2003 (and until December, 2006) that were available to Best Buy.

Defendants' authorities also demonstrate why summary judgment is improper.  In *Rutledge v. Boston Woven Hose*, 576 F.2d 248 (9th Cir.1978), the plaintiff had complained to the DOJ of suspected antitrust violations by a hydraulic hose manufacturer more than four years before filing his claim and had also filed and litigated identical claims against another hose manufacturer for the same antitrust conduct. *Id*. at 250.  The Court concluded that plaintiff could have discovered his claim against the defendant through diligent discovery in the prior action and could not assert fraudulent concealment.  In *Hennegan v. Pacifico Creative Serv. In*c, 787 F.2d 1299, 1302 (9th Cir. 1986), the plaintiff <u>admitted</u> knowing facts demonstrating an antitrust violation, but argued that it did not know the law.  The court concluded that "ignorance of an antitrust cause of action alone is insufficient to toll the statute of limitations." *Id*.  And in *Western Shoe Gallery, Inc. v. Duty Free Shoppers, Ltd*., 593 F. Supp. 348, 350 (N.D. Cal. 1984), summary judgment was proper because the plaintiff's counsel had written a letter to defendants alleging refusal to deal antitrust violations more

---

[6]  *See also In re Copper Antitrust Litig.*, 436 F.3d 782, 792 (7th Cir. 2006) ("it is not enough for summary judgment to point to facts which might have caused a plaintiff to inquire, or could have led to evidence supporting his claim. A defendant who does this has succeeded in demonstrating only that there is a jury question regarding the tolling of the statute of limitations by fraudulent concealment.  To award summary judgment on such a showing is error.").

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

than four years before filing suit.[7]

In short, much more than an unsubstantiated comment from TAIS regarding a "panel cartel" is necessary to establish that Best Buy had actual knowledge of the conspiracy as a matter of law. Defendants are not permitted to "leap" from the speculative "panel cartel" comment to Best Buy's actual knowledge of a price fixing conspiracy. Summary judgment cannot be granted.

### 2. Defendants Fail To Establish that Best Buy had Constructive Notice of its Claims

"Constructive knowledge exists when a plaintiff 'should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim.'" *In re Petroleum Prods.*, 782 F. Supp at 493 (*citing Conmar*, 858 F. 2d at 502). Defendants have failed to show that no genuine issues of disputed facts exist as to whether Best Buy had "facts" alerting it to its claims or giving rise to a duty to investigate. Indeed, whether facts give rise to a duty to investigate is a jury question that cannot be resolved on summary judgment.[8] And the evidence demonstrates that Best Buy discharged any duty to investigate. *See, supra*, Section IV.A.2.

#### a. Defendants Have Not and Cannot Demonstrate any Duty to Investigate as a Matter of Law

> [K]nowledge of facts relevant to [Plaintiff's] claim will not amount to constructive knowledge if those facts were not of a type to prompt investigation. Nor is there constructive knowledge if, even upon investigation, plaintiffs might reasonably be unable to uncover their claims. Further, public access to

---

[7] The Minnesota cases cited by Defendants are even more removed from the facts here. *Hannah Mining Co. v. Internorth, Inc*, 379 N.W.2d 663 (Minn. Ct. App. 1986) is a breach of contract case involving the price charged for natural gas. More than six years before filing its complaint, plaintiffs had filed a claim with the Minnesota Public Utilities Commission claiming the gas company was engaging in discriminatory pricing. The court found that the statute of limitations was not tolled during the administrative proceeding because the commission was only setting a rate for gas in the future, not remedying past discriminatory pricing practices. Id. at 669. Thus, Hannah does not even address what facts are sufficient to establish actual or constructive notice of a claim. In *Vasek v. Western Grain & Seed Co.*, 353 N.W. 2d 175 (Minn. Ct. App. 1984), the court rejected the plaintiff's fraudulent concealment claims because plaintiff was aware of the company's financial collapse. *Id.* In *Tackleson v. Abbot-Nw. Hosp., Inc.*, 415 N.W.2d 733 (Minn. Ct. App. 1987) the court found no fraudulent concealment because: (1) plaintiff knew she was injured when she fell out of a hospital bed, (2) she complained at the time it happened, and (3) the hospital had offered to waive the medical bill in exchange for a release. *Id.* at 734-35.

[8] *See, e.g., Conmar*, 858 F.2d at 504-505. ("[B]ecause . . . there is a genuine issue of material fact whether the facts publicly available were sufficient to excite [plaintiffs'] inquiry, then no due diligence need be demonstrated for [plaintiffs] to survive summary judgment."); *In re Petroleum Prods.*, 782 F. Supp. at 489 ("[i]t is impossible to declare at [summary judgment] that plaintiffs failed to exercise due diligence to follow up on that which may or may not have been sufficient to excite their suspicions.").

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

information does not incontrovertibly establish constructive knowledge of one's claims. Even where a plaintiff actually knows of public speculation; constructive knowledge cannot be established, absent awareness of some evidence tending to support it.

*In re Petroleum Prods.*, 782 F. Supp. at 489 ("[T]he availability of information in the public domain does not compel finding constructive knowledge."); *see also Conmar*, 858 F.2d at 502 (the filing of a similar lawsuit that received "widespread industry publicity" was not tantamount to constructive knowledge as a matter of law) (*quoting Beef Indus.*, 600 F.2d at 1171).

Here, TAIS's speculative and factually devoid "panel cartel" comment is much more feeble than the publicly-known information held insufficient in *Conmar*, *In re Beef* and *In re Petroleum*, and similarly requires denial of summary judgment. Defendants' cases do not compel a different result. For example, in *In re Aluminum Phosphide Antitrust Litigation*, summary judgment was proper because: (1) plaintiffs failed to "cite any specific actions by defendants to keep their meetings a secret, nor do they point to any conduct by defendants to keep price-fixing a secret from their employees"; (2) plaintiff's investigation and survey revealed something "seriously wrong in the market"; and (3) Plaintiffs' counsel received information of antitrust issues in the aluminum phosphide industry more than four years before filing the Complaint. 905 F. Supp. 1457, 1470 (D. Kan. 1995). [9] None of these facts are remotely present here. Instead, the record shows that Best Buy was presented with no facts regarding Defendants' conspiracy and that its investigation failed to reveal any basis to file suit.

### b.  Defendants Set Forth No Facts Showing that an Investigation Would Have Uncovered Defendants' Conspiracy

Even when a plaintiff conducts no investigation at all, there is no constructive notice triggering the limitations period unless defendants produce evidence demonstrating that plaintiffs *could have* discovered its antitrust action upon investigation. *In re Petroleum Prods.*, 782 F. Supp. at 493 (no constructive notice if "upon investigation, plaintiffs might reasonably be unable to uncover their claims."); *see also In re Beef Indust. Litig.*, 600 F.2d at 1171 ("Defendants have

---

[9] And in *Yonak v. Severson*, A05-154, 2005 Minn. App. Unpub. LEXIS 564 (Dec. 6, 2005) plaintiffs brought a malpractice claim against an attorney who represented four partners and did not disclose the terms of a side deal between one of the partners and a developer. Summary judgment was proper because the partners knew of the side deal and the lawyer disclosed the terms of the side deal when requested. *Id.* at *12-13.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  the burden, as the moving parties, to demonstrate conclusively that the plaintiffs, through the

2  exercise of reasonable diligence, would have discovered adequate ground for filing suit.").

3  Similarly, "[w]hen defendants are guilty or concealing their anti-competitive activities, the

4  plaintiff is not charged with knowledge of his claim until he *should have* discovered the basis for

5  his claim." *Morton's Mkt. Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 833 (11th Cir. 1999)

6  (emphasis in original). [10]

7          Here, Defendants have not, because they cannot, cite to any evidence demonstrating that

8  their price fixing conspiracy would have been discoverable by Best Buy in 2003.  As such,

9  Defendants' conspiracy remained successfully concealed.  Their motion should be denied.

10         ### 3.    Best Buy Did Investigate and Its Investigation Revealed Nothing

11         The evidence conclusively demonstrates that Best Buy continued to investigate

12  component shortages and supply chain problems through at least August, 2003. *See, Supra,*

13  Section IV.B.2.  In May, 2003, Best Buy and TAIS specifically agreed to "[c]ontinue to share

14  information on component level issues and work to collaboratively anticipate potential shortages

15  and plan far enough ahead to mitigate risk." Ex. 35.  A month later – on June 17, 2003 – TAIS

16  and Best Buy met again to discuss the laptop supply chain.  At least three TAIS employees from

17  the May, 2003 meeting – Kurt Skillman, Matt Weiss and Howard McBride – also attended the

18  June meeting. Ex. 43-44.  At that meeting, TAIS was no longer reporting any panel shortages.

19  *Id.*  The memo summarizing the meeting reflects no mention at all of any panel cartel, much less

20  any facts to support it. Exs. 43-44.  Best Buy continued to investigate component issues through

21  at least August 25, 2003 by reaching out to HP and TAIS, but learned nothing. Ex. 45 ("I am

22  making the same request for Toshiba, however we are NOT hearing about component related

23  issues from Toshiba at this time.").  And a massive recent search of Best Buy's electronic and

---

[10] *See also, e.g., Great Rivers Coop. v. Farmland Industries, Inc.*, 120 F.3d 893, 896 (8th Cir.
1997) ("inquiry notice exists when the victim is aware of facts that would lead a reasonable
person to investigate and consequently acquire actual knowledge of the defendant's
misrepresentations"); *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 128 (1st Cir. 1987)
("cause of action is deemed to accrue on the date when he should have discovered the alleged
fraud").  Put another way, "[b]oth the diligent and the non-diligent plaintiff are protected from the
expiration of claims the factual basis for which was shrouded by the veil of fraudulent
concealment." *Morton's Mkt. Inc.*, 198 F.3d at 836.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   hard copy documents shows that Best Buy learned no new information regarding any panel cartel.

2   In short, the evidence demonstrates that Best Buy pursued with reasonable diligence all

3   information it learned.  Best Buy discovered no actionable conduct because Defendants hid it so

4   well for so long.

5          In sum, Best Buy has met its burden of producing evidence demonstrating that Defendants

6   actively conspired to conceal their price fixing conspiracy.  And Defendants have neither pointed

7   to any evidence demonstrating that Best Buy had knowledge of <u>facts</u> supporting a price fixing

8   conspiracy nor cited any evidence that Best Buy had a duty to investigate or could have

9   discovered a price fixing conspiracy at an earlier time.

10         **4.     Defendants Fraudulently Concealed Their Price-Fixing Conspiracy**

11         The record is replete with evidence of Defendants' scheme to conceal their illegal

12   conspiracy.  *See supra,* Section IV(A).  This elaborate and longstanding scheme fits squarely

13   within Ninth Circuit authorities that have found material questions of fact sufficient to defeat

14   summary judgment on fraudulent concealment.  *See, e.g., Conmar,* 858 F.2d at 505 ("[a] jury

15   could believe that the filing of false customs forms was affirmative conduct sufficient for a

16   finding of fraudulent concealment").  Accordingly, sufficient evidence exists from which a jury

17   could conclude the Defendants affirmatively concealed their price-fixing activities.

18   **E.    Defendants' Motion Fails Because the Statute of Limitations Was Tolled Under
        Government Action, *American Pipe*, and Cross-Jurisdictional Tolling Principles**

19

20         Summary judgment is improper because, even without fraudulent concealment, Best

21   Buy's claims are timely pursuant to other tolling provisions, which Defendants ignore under the

22   pretext of lack of "notice."  Motion, at 14.  "The basic rule is that damages are recoverable under

23   the federal antitrust acts only if suit therefor is 'commenced within four years after which the

24   cause of action accrued,' 15 U.S.C. § 15b, plus any additional number of years during which the

25   statute of limitations was tolled."  *Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 338

26   (1971); *see also Mt. Hood Stages,* 55 F. 2d at 698, fn. 4 (tolling periods may be tacked together).

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

### 1. The Limitations Period On Best Buy's Direct and Indirect Claims Was Tolled Under *American Pipe* and Cross-Jurisdictional Tolling

It is axiomatic that the statute of limitations was also tolled during the pendency of the DPP class action until Best Buy opted out. *See, e.g., American Pipe & Construction. Co. v. Utah*, 414 U.S. 538 (1974); *Tosti v. Los Angeles*, 754 F.2d 1485, 1488 (9th Cir. 1985) (tolling continued through opt-out) .[11] Best Buy's indirect claims under the Minnesota Antitrust Act are also tolled under *American Pipe* and cross-jurisdictional tolling, which toll the statute on state law claims during the pendency of a federal class action. [12]  Cross-jurisdictional tolling applies because "[Minnesota] courts would apply the *American Pipe* class-action tolling rule in a 'cross-jurisdictional' context." *In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1080 (D. Kan. 2009); *see also Jenson v. Allison-Williams Co.*, 1999 U.S. Dist. LEXIS 22170, 18-19 (S.D. Cal. Aug. 23, 1999) (holding that federal class action tolled state law claim under Minnesota Securities Act, and citing to *Carson v. Independent School Dist. No. 623*, 392 N.W.2d 216, 223 (Minn. 1986) and *Bartlett v. Miller and Schroder Municipals, Inc.*, 355 N.W.2d 435, 439-440 (Minn. Ct. App. 1984)).  Here, Best Buy's indirect claims were tolled during the pendency of the DPP class action until Best Buy opted-out, [13] and during the pendency of the indirect purchaser class actions. [14]

### 2. The DOJ's Prosecution of Cartel Members Tolled the Limitations Period

Even without fraudulent concealment, *American Pipe* and/or cross-jurisdictional tolling, the statute of limitations was tolled under the Government Action theory. *See* 15 U.S.C. § 16(i) ("Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain

---

[11]  Ex. 51, *Crago Corporation v. Samsung Electronics, et al.*, No. C06 7644 (filed on December 13, 2006).  Best Buy opted out on December 22, 2010 after it filed its Complaint. *See* Ex. 52.
[12] *See In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 346 (E.D. Pa. 2004) ("In the antitrust context, declining to adopt cross-jurisdictional class action tolling will invite the filing of numerous protective, duplicative and in many cases, unnecessary, suits by class members that want to consider filing claims under state antitrust law not included in a federal class action complaint. [Citations].  These suits would undermine the efficiency of federal class actions.").
[13]  *See* Ex. 51, *Crago Corp. v. Samsung Electronics*, No.3:06-cv-07644-SU (Dkt. No. 1) (December 12, 2006); *See* Request for Judicial Notice, ¶ 4 (DPP's Consolidated Complaint, No. 3:07-md-01827-SI (Dkt. No. 366) (Nov. 5, 2007)); Ex. 52, Best Buy's Dec. 22, 2010 letter to LCD class action opting out of the direct purchaser litigation classes.
[14]  *See* Exs. 49-50, *Rywelski v. AU Optronics Corp. et al.*, 07:cv-01393-MJD-AJB (Dkt. No. 1) (March 2, 2007); *Mulvey v. AU Optronics Corp.*, 07:cv-01425-MJD-SRN (Dkt. No. 1) (March 6, 2007).

---

Case No. 3:10-CV-4572 SI
83272922.5

- 19 -

OPPOSITION TO DEFENDANTS' JOINT MOTION
FOR PARTIAL SUMMARY JUDGMENT

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

or punish violations of any antitrust laws…the running of the statute of limitations … shall be suspended during the pendency thereof and for one year thereafter."). This tolling provision is broadly construed. [15] Here, the DOJ filed its first indictment of Defendants on November 12, 2008, and criminal proceedings are ongoing. Ex. 48. And Best Buy filed its lawsuit on October 8, 2010, during the pendency of the DOJ's criminal proceedings. *See* FAC, Dkt. 37.

### 3. Best Buy Has Not "Waived" Government Action and/or *American Pipe* Tolling

Defendants' assertion that Best Buy's FAC fails to give them notice of Best Buy's tolling theories is legally and factually meritless. First, putting aside that Defendants are keenly aware of the DOJ's criminal indictments and AUO's conviction, Best Buy's complaint discusses the DOJ's criminal proceedings against Defendants at length. *See* FAC, Dkt. 37, at ¶¶ 178-186. These allegations are more than sufficient to give Defendants notice. Defendants are also aware of the pendency of IPP and DPP class actions. Indeed, "[a] class complaint notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350-52 (1983) (citations omitted). And Best Buy pleads abundant facts showing that it was a member of the DPP class. *See* FAC, Dkt. 37 at ¶¶ 1, 18-19. That the FAC does not articulate the word "American Pipe" is of no moment. [16]

To support their "waiver" argument, Defendants misstate the Ninth Circuit's decision in *Wasco Prods. Inc. v. Southwall Tech. Inc.*, 435 F.3d 989 (9th Cir. 2006). *Wasco* held that a plaintiff must plead a <u>fraudulent conspiracy</u> with specificity pursuant to Rule 9, and cannot defeat summary judgment by simply <u>alleging</u> the existence of fraudulent conspiracy in its opposition. Relying on cases requiring a heightened pleading standard, such as fraud and conspiracy claims,

---

[15] *See, e.g., Zenith Radio*, 401 US at 335 (naming different defendants does not defeat the tolling so long as the private suit alleges "at least in part the same conspiracy"); *3M v. New Jersey Finishing*, 381 US 311 (1965) (identity of issues not required); *Leh v. General Petroleum*, 382 U.S. 54 (1965).

[16] *See, e.g., Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993); *Burdick v. Union Sec. Ins. Co.*, 2009 U.S. Dist. Lexis 121768, n. 17 (C.D. Cal., Dec. 9, 2009 (plaintiffs need not literally raise "equitable tolling" in the complaint for the doctrine to apply; rather, "the sole issue is whether the complaint, liberally construed in light of our 'notice pleading' system, adequately alleges facts showing the potential applicability of the equitable tolling doctrine.").

- 20 -

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    the *Wasco* Court expressly limited its holding to fraudulent conspiracies. *Id.* at 992 ("[w]e also

2    express no opinion as to pleading requirements if the object of the conspiracy is non-

3    fraudulent."). The *Wasco* Court also noted that the plaintiff failed to come forth with any actual

4    evidence of fraudulent concealment in opposition to summary judgment. *Id.* at 991.

5        Cases construing *Wasco* confirm that it cannot apply here. In *Burdick Burdick v. Union*

6    *Sec. Ins. Co.,* CV 07-4028 ABC(JCx), 2009 U.S. Dist. Lexis 121768 (C.D. Cal. Dec. 9, 2009), the

7    defendant moved for summary judgment on grounds that the limitations period had expired, and

8    argued that the plaintiff had not plead the discovery rule and thus could not rely upon it. The

9    court rejected this argument, ruled that the *Wasco* "dicta" did not apply to the discovery rule. The

10   Court thus considered Plaintiff's evidence on summary judgment. *Id.* And in *Grisham v. Philip*

11   *Morris, Inc.,* 670 F. Supp. 2d 1014, 1022 (C.D. Cal. 2009), the court ruled that *Wasco* was limited

12   to conspiracy claims, and did not apply where the plaintiff comes forward with evidence (rather

13   than allegations) in opposition to summary judgment.

14       Moreover, the Court can properly construe the instant opposition as a request for leave to

15   amend to allege the term "American Pipe" in Best Buy's complaint. *See Grisham*, 670 F. Supp.

16   2d at 1022 ("In this Circuit, courts may construe other filings, including oppositions to motions, as

17   motions to amend where amendment would be proper." [citations omitted]). [17]

18   **D.    Defendants' Mitigation Argument Is Legally and Factually Meritless**

19       Defendants argue that summary judgment is warranted because Best Buy "could have

20   sued the defendants" but instead "gamed the system" and made "a bet on treble damages." Mot.,

21   at pgs. 17:27; 18:9-10, 20:1. This absurd proposition – as bold as it is – is premised on a flimsy

22   theory and on imaginary facts. As demonstrated, even after its investigation, Best Buy had no

23   facts that would have allowed it to lodge any complaint with any entity against any Defendant.

24   Best Buy had no evidence to even identify any defendants, much less formulate what they did,

---

[17] *See also, Id.* at 1022 ("Rule 15 provides that [t]he court should freely give leave [to amend the pleadings] when justice so requires. Fed. R. Civ. P. 15(a) (2). In order for a court to seek 'justice,' mere technical deficiencies should not prevent a meritorious action from going forward."); *Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 n.1 (9th Cir. 1981) (same); Schwarzer et al., Federal Procedure Before Trial, at § 14:27.1 ("courts may treat a party's raising new claims or defenses on a summary judgment motion as a motion for leave to amend the pleadings, which is normally granted absent prejudice to the opposing party.").

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

and how, where, and when they did it, or that Best Buy was damaged thereby.  Defendants point

to no such evidence, and instead resort to empty rhetoric and naked proclamations.  On this

record, summary judgment cannot be granted.

### 1.       There Is No Mitigation of Damages Defense In Price Fixing Cases

Defendants' "mitigation of damages" theory has been rejected in Sherman Act price

fixing cases as an improper attempt to limit damages to less than Defendants' illegal overcharges,

and violates U.S. and Minnesota Supreme Court precedent abolishing "pass-on."  Under *Illinois*

*Brick*, mitigation of harm by passing some all of the overcharge to indirect purchases is irrelevant.

*See, e.g., Illinois Brick Co. v. Illinois,* 431 U.S. 720, 746 (1977) (no mitigation defense when the

direct purchaser "passes on" an illegal overcharge to the indirect purchaser); *Royal Printing Co.*

*v. Kimberly-Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980) (a price fixing plaintiff is "allowed to

recover its 'full' damages even though it 'mitigated' its damages by passing part of the excessive

costs to its customers."); *In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283, 286-287

(D. Minn. 1996) (mitigation of damages defense may apply in failure to deal cases, but "[i]n a

horizontal price-fixing case, however, mitigation and offset generally do not affect the ultimate

measure of damages").  The same conclusion applies to Best Buy's claims under the Minnesota

Anti-Trust Act.  *See State of Minnesota v. Philip Morris Inc.*, 551 N.W.2d 490, 497 (Minn. 1996)

("We … conclude that it was the intent of the Minnesota legislature to abolish the availability of

the pass through defense.").

Best Buy is unaware of a single reported or unreported decision endorsing the Defendants'

proposed mitigation of damages theory in price fixing cases, and Defendants cite to none.

Instead, they cite to cases finding a duty to mitigate lost profits damages in failure to deal cases.

*See, e.g., Fishman v. Estate of Wirtz,* 807 F.2d 520, 556 (7th Cir. 1996) (expressly limiting the

mitigation of damages defense to failure to deal cases, and even then only "under the unique facts

here."); *Litton Systems, Inc. v. American Tel. & Tel. Co.*, 700 F.2d 785, 820, fn. 47 (2nd Cir.

1983) (exclusion from marketplace); *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 437 (5th Cir.

1985) (duty to mitigate in failure to deal case by:  "(1) obtaining product from another source or

(2) increasing efforts in other product lines."); *Borger v. Yamaha Int'l Corp.*, 625 F.2d 390, 399

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   (2d Cir. 1980).  And in *MCI v. AT&T*, 708 F.2d 1081 (7th Cir. 1983), the mitigation of damages

2   defense *was not at issue*.  Instead, the dissenting/concurring opinion cited to all the jury

3   instructions below "for reference purposes only." *Id.* at 1195.  There is no discussion of

4   mitigation anywhere in the 200+ page opinion.  It goes without saying that cases are not authority

5   for issues not considered or decided.

6           **2.**      **Defendants' Mitigation of Damages Defense Is Contrary To Law Because It**

7                     **Purports To Abrogate the Statute of Limitations**

8          Defendants' mitigation of damages defense would effectively eliminate the four-year

9   limitations period under the Sherman Act and the Minnesota Antitrust Act by requiring Best Buy

10  to immediately file suit irrespective of the limitations period.  *See* 15 USC § 15b; Minn. Stat. §

11  325D.64.  And it would reverse 38 years of Supreme Court jurisprudence tolling the limitations

12  period during the pendency of class actions (*American Pipe & Construction Co. v. Utah*, 414 U.S.

13  538 (1974)), while directly contravening the policies underlying the statute of limitations.  *See*

14  *Cal. Franchise Tax Bd. v. Kendall*, 657 F.3d 921, 929 (9th Cir. 2011) ("the policies underlying

15  statutes of limitations include the elimination of stale claims and a <u>guarantee of certainty for both</u>

16  <u>parties</u> regarding their rights and potential liabilities." [emphasis added]).

17         Defendants' defense also violates Supreme Court authority holding that each act of price

18  fixing "is part of the violation . . . that injures the plaintiff . . . [and] starts the statutory period

19  running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier

20  times." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (quotation omitted) (emphasis

21  added).  A plaintiff's knowledge of earlier harms cannot be a bar to recovery for violations that

22  are within the statute of limitation. *Id.*

23         Defendants' theory isn't the law.  Indeed, their proposal has far reaching implications.

24  The theory would require all plaintiffs in <u>all civil proceedings</u> to "mitigate their damages" by

25  seeking law enforcement intervention <u>and</u> bringing a civil suit (to stop the wrongful conduct)

26  immediately upon determining actual injury and irrespective of any and all applicable limitations

27  or tolling periods.  Defendants ignored these critical issues in prior briefing before the Special

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    Master and this Court related to their Motion to designate a "mitigation of damages" expert, and

2    do so again.  This Court should not be the first to create such precedent.

3         **3.    Defendants Have Failed to Establish that Best Buy was Aware of Facts
              Giving Rise to a Duty to Mitigate**

4         "The duty to mitigate damages does not arise until the party upon whom the duty is

5    impressed is aware of facts making the duty to mitigate necessary." *Home Indem. Co. v. Lane*

6    *Powell Moss & Miller*, 43 F.3d 1322, 1329 (9th Cir. 1995) (rejecting defense where plaintiff was

7    not "actually aware" of facts giving rise to duty) (emphasis added).  Such duty arises only where

8    a party "actually discover[s] the damage done to [it]." *Id.* (emphasis added); *see also Lopez v.*

9    *Musinorte Entm't Corp.*, 434 Fed. Appx. 696, 699, 2011 U.S. App. LEXIS 10793 (9th Cir. 2011)

10   (same).  Here, Defendants' hyperbole and overstatements notwithstanding, there is no evidence

11   demonstrating that Best Buy became "actually" aware of any evidence of a panel cartel, 9much

12   less any harm or injury causes to Best Buy thereby) even as it continued to meet with TAIS and

13   specifically asked for information regarding shortages.

14        Defendants' bizarre (though comical) insistence that Best Buy should have filed a civil

15   complaint on this record cannot be remotely reconciled with Rule 11.  This is best illustrated

16   when one imagines drafting a complaint with a blank caption and no factual allegations regarding

17   any conspiracy.  Nor did Best Buy have any facts (neither did TAIS apparently) to report to the

18   DOJ.  Yet Defendants nevertheless urge this Court to find that, as a matter of law, the DOJ would

19   have initiated an investigation on this record and brought down the cartel.  Rule 56 requires a

20   showing that there are no genuine issues of disputed fact.  Counsel's unsupported and illogical

21   speculation totally fails to meet this standard.

22        **4.    As a Matter of Law, the Duty to Mitigate Did Not Require Notification of the
              DOJ or the Filing of a Civil Action**

23        Even if Defendants' theory existed in price fixing cases, and even if there were any facts

24   to support it, the law imposes no burden on Best Buy to attempt to stop Defendants' wrongdoing

25   by notifying the DOJ.  In analogous contexts, courts have rejected the theory that Best Buy bore

26   responsibility for stopping defendants' conspiracy as "ridiculous."  *See Westman Com. Co. v.*

27   *Hobart Corp.*, 541 F. Supp. 307, 314-315 (D. Colo. 1982) *rev'd on other grounds*, 409 U.S. 363

28   (1972); *see also Gorman v. University of Rhode Island*, 646 F. Supp. 799, 814 (D.R.I. 1986),

*ROBINS, KAPLAN, MILLER & CIRESI L.L.P.*
ATTORNEYS AT LAW
LOS ANGELES

*rev'd on other grounds*, 837 F.2d 7 (1st Cir. 1988).  In *Westman*, an antitrust defendant claimed that the plaintiff could have mitigated its damages by seeking an injunction.  The court labeled the logic "ridiculous" and stated that the argument impermissibly placed the onus of stopping the illegal action on the plaintiff:

> Hobart's argument that Westman failed to mitigate its damages by not filing an injunction is ridiculous.  This argument implicitly assumes that Hobart was guilty of a continuing violation of the antitrust laws, yet attempts to place the onus of stopping that violation on Westman ... **a defendant can not claim immunity from damages caused by its illegal actions because a plaintiff could have stopped them by filing for an injunction.**

*Id.* [emphasis added]; *see also Gorman*, 646 F. Supp. 799, 814 (same); *Ford Motor Credit Co. v. Hairston*, No. 06-cv-0004, 2006 WL 2850615, at *3 (W.D. Va. Oct. 2, 2006) ("The deficiencies of this 'stop me before I breach contract again' defense are obvious."). [18]

Defendants' arguments here are even more absurd than those advanced by defendants in *Westman* and *Gorman*, where plaintiffs <u>actually had evidence upon which to file suit</u>. Defendants simply "cannot claim immunity from damages caused by its illegal actions" by speculating that Best Buy could have stopped them by filing a lawsuit or running to the DOJ without any evidence of its claims. [19]  As in *Westman* and *Gorman*, their fabricated theory should be rejected.

## VI.
## CONCLUSION

For the above foregoing reasons, Best Buy respectfully request that the Court deny Defendants' Motion in all respects.

Dated: August 17, 2012                     ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

                                          By:   /s/ Roman M. Silberfeld
                                                Roman M. Silberfeld

---

[18] None of the cases cited by Defendants support their argument of a duty to mitigate.  *See Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1140 (9th Cir. 2001) (mitigation not at issue); *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020-1021(9th Cir. 2000) (withdrawal from workforce); *In re Fortune Sys. Sec. Litig.*, 680 F. Supp. 1360, 1370 (N.D. Cal. 1987) (failure to sell stock after learning of fraudulent statements); *Bemidji Sales Barn Inc. v. Chatfield*, 250 N.W.2d 185,189 (Minn. 1977) (failure to take steps to prevent cattle fever); *First Nat'l Bank of LeCenter v. Farmers Union Mktg. and Processing Ass'n*, 371 N.W.2d 22, 26 (Minn. App. 1985) (mitigation not available); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124,149-150 (2d. Cir. 2011); (Dissent's *dicta* re impact of potential duty to mitigate in class cert. proceedings); *Al's Service Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720,727 (7th Cir. 2010) (stating, in *dicta*, that the failure to enforce a pending injunction may constitute failure to mitigate).

[19] *Miller v. Perry Corp.*, Case No. 3:05CV7454, 2007 U. S. Dist. LEXIS 28399 (N. D. Ohio April 17, 2007) is irrelevant.  There, the Court concluded that a plaintiff who failed to take action to challenge a non-compete agreement could not later seek to recover compensatory damages. These two facts – the absence of unlawful conduct or wrongdoing and the resulting unavailability of compensatory damages – readily distinguish *Miller* from this case.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28