# EXHIBIT 3

1   ROBERT E. FREITAS (SBN 80948)
        rfreitas@ftklaw.com
2   JASON S. ANGELL (SBN 221607)
        jangell@ftklaw.com
3   JERRY CHEN (SBN 229318)
        jchen@ftklaw.com
4   FREITAS TSENG & KAUFMAN LLP
    100 Marine Parkway, Suite 200
5   Redwood Shores, California  94065
    Telephone:     (650) 593-6300
6   Facsimile:     (650) 593-6301

7   Attorneys for Defendant
    HannStar Display Corporation

8
    [Additional moving parties and counsel
9   listed on signature page]

10

11                  UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14   IN RE: TFT-LCD (FLAT PANEL)          No. 3:07-md-1827-SI
     ANTITRUST LITIGATION
15                                         No. 3: 10-cv-04572 SI
     This Document Relates to Individual
16     Case No. 3: 10-cv-04572 SI

17   ─────────────────────────────────
18   BEST BUY CO. INC., et al.,           DEFENDANTS' REPLY IN SUPPORT
                                          OF JOINT MOTION FOR PARTIAL
19          Plaintiff,                    SUMMARY JUDGMENT DISMISSING
                                          BEST BUY'S (1) PRE-OCTOBER 8,
20   v.                                   2006 CLAIMS AS TIME BARRED AND
                                          (2) POST-MAY 2003 CLAIMS FOR
21   AU OPTRONICS CORPORATION, et al.;    FAILURE TO MITIGATE DAMAGES

22          Defendants.                   Date:      December 14, 2012
                                          Time:      9:00 a.m.
23                                        Ctrm.:     10, 19th Floor
                                          Hon. Susan Illston
24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................... 1

II.   BEST BUY'S PRE-OCTOBER 8, 2006 CLAIMS ARE BARRED BY THE
      STATUTE OF LIMITATIONS ................................................................................ 3

      A.    Best Buy Does Not Deny That It Was Told Of The Existence Of A "Panel
            Cartel" No Later Than May 2003 .............................................................. 3

      B.    The Information Provided To Best Buy Was Sufficient To Arouse The
            Suspicion Of A Reasonable Party In The Position Of Best Buy, And To
            Trigger A Duty To Investigate ................................................................... 4

      C.    Best Buy's Attempt To Create A "Rumor" Exception Fails .................... 6

      D.    Best Buy Failed To Make A Diligent Inquiry ........................................... 7

      E.    Best Buy Did Not Plead Government Action, American Pipe, Or Cross-
            Jurisdictional Tolling ................................................................................. 8

III.  BEST BUY FAILED TO MITIGATE ITS DAMAGES ....................................... 10

      A.    A Price Fixing Plaintiff, Like Any Other Plaintiff, Has A Duty To Mitigate
            Damages .................................................................................................... 10

      B.    Best Buy Does Not Justify Its Failure To Contact The Authorities When
            Advised Of The Existence Of A "Panel Cartel." ..................................... 12

      C.    Application Of A Mitigation Requirement Would Not "Abrogate The
            Statute Of Limitations." ........................................................................... 12

      D.    Best Buy Was Aware Of Information Sufficient To Impose A Duty To
            Mitigate ..................................................................................................... 13

      E.    There Is Nothing "Ridiculous" About Applying The Established Mitigation
            Doctrine In A Manner Suited To The Facts Of A Case ............................ 14

IV.   CONCLUSION ..................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*Advanced Micro Devices, Inc. v. Intel Corp.,*
1992 U.S. Dist. LEXIS 21529 (N.D. Cal. July 24, 1992) ........................................................ 4

*Al's Serv. Ctr. v. BP Prods. N. Am., Inc.,*
599 F.3d 720 (7th Cir. 2010) .................................................................................................. 14

*Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.,*
858 F.2d 499 (9th Cir. 1988) ........................................................................................... *passim*

*Dayco Corp. v. Goodyear Tire & Rubber Co.,*
523 F.2d 389, 394 (6th Cir.1975) .......................................................................................... 5

*Fishman v. Estate of Wirtz,*
807 F.2d 520 (7th Cir. 1996) ............................................................................................ 10, 11

*Hexcel Corp. v. Ineos Polymers, Inc.,*
681 F.3d 1055 (9th Cir. 2012) ............................................................................................ 4, 7

*Home Indem. Co. v. Lane Powell Moss & Miller,*
43 F.3d 1322 (9th Cir. 1995) ............................................................................................ 13, 14

*In re Airline Ticket Comm'n Litig.,*
918 F. Supp. 283 (D. Minn. 1996) .......................................................................................... 11

*In re Rubber Chems. Antitrust Litig.,*
504 F. Supp. 2d 777, 788 (N.D. Cal. 2007) .......................................................................... 4

*In re TFT-LCD (Flat Panel) Antitrust Litig. ("AT&T"),*
MDL Dkt. No. 4706 at 3 (N.D. Cal. Jan. 30, 2012) .............................................................. 9

*Klehr v. A.O. Smith Corp.,*
521 U.S. 179 (1997) ................................................................................................................ 7

*Litton Systems, Inc. v. Am. Tel & Tel. Co.,*
700 F.2d 785 (2d Cir. 1983) ................................................................................................... 11

*Lopez v. Musinorte Entm't Corp.,*
434 Fed. Appx. 696 (9th Cir. 2011) ....................................................................................... 14

*Miller v. Perry Corp.,*
2007 U.S. Dist. LEXIS 28399 (N.D. Ohio Apr. 17, 2007) .................................................... 15

-ii-

DEFS. REPLY ISO JOINT MOTION FOR SUMM. JUDG. DISM.
BEST BUY'S CLAIMS AS TIME BARRED AND FOR FAILURE
TO MITIGATE – NO. 3:10-CV-4572 SI; NO. 07-MD-1827 SI

1

## TABLE OF AUTHORITIES
### (continued)

2

3                                                                                     **Page(s)**

4   *Pierce v. Ramsey Winch Co.,*
        753 F.2d 416 (5th Cir. 1985)................................................................... 11

5

6   *Probst v. Reno,*
        917 F. Supp. 554 (N.D. Ill. 1995) ........................................................... 15

7

8   *Rutledge v. Boston Woven Hose & Rubber Co.,*
        576 F.2d 248, 250 (9th Cir.1978) ............................................................. 6

9
    *Wasco Prods., Inc. v. Southwall Techs., Inc.,*
10      435 F.3d 989 (9th Cir. 2006)................................................................... 9

11                                        **RULES**

12   Fed. Rule Civ. P. 9(b) .............................................................................. 9

13                                   **OTHER AUTHORITIES**

14   ABA Section of Antitrust Law, Model Jury instructions in Civil Antitrust Cases, F-47
        (2005 ed.) ........................................................................................... 10, 13

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.   INTRODUCTION.

Although it is undisputed that Best Buy received and repeated in multiple internal communications specific information that a "panel cartel" was "conspiring to keep supply down to drive prices up," Best Buy remarkably asserts that it did not "have any evidence" of a price-fixing conspiracy until the Department of Justice's disclosure of its investigation in December 2006. *See* Best Buy's Opposition to Defendants' Joint Motion For Partial Summary Judgment Dismissing Best Buy's (1) Pre-October 8, 2006 Claims As Time Barred And (2) Post-May 2003 Claims For Failure To Mitigate Damages ("Opp.") at 4. Of course, Best Buy "had evidence." It received a specific communication from a known source about the existence of a "panel cartel," and the disclosure was accompanied by evidence of the impact of the cartel on Best Buy's business. The evidence Best Buy received was of sufficient importance that it was recorded in a report to Best Buy regional vice presidents in 2003, and remembered or retained well enough to be recorded again in a similar document two years later. The evidence was more than sufficient to put Best Buy on notice of the existence of the specific injury of which it has belatedly complained in its complaint, and to trigger Best Buy's duty to make an investigation it did not make.

Best Buy offers a series of inaccurate perspectives on the situation it faced when it was told by one of its major suppliers in May 2003 that the activities of a "panel cartel" had curtailed the supply of laptops available to Best Buy. Best Buy tries to dismiss the specific evidence provided to it by portraying the evidence as "unsupported," Opp. at 1, or "unsubstantiated." *Id.* at 15. If the point is that the existence of a "panel cartel" was not proved by the Toshiba America Information Systems ("TAIS") disclosure, Best Buy misunderstands the governing legal standard. A plaintiff's obligation to exercise diligence arises long before it receives complete "substantiation" of its claim. The law requires nothing more than facts that would "excite the inquiry of a reasonable person," and Best Buy received facts of that character. *See Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 502 (9th Cir. 1988).

Best Buy attempts to overcome the impact of the information provided by its supplier by describing the reference to a "panel cartel" with a specific anticompetitive purpose and an impact

1    on Best Buy as "speculative."  There is nothing in the words recorded in the Best Buy documents

2    suggesting that the TAIS disclosure was based on speculation, and no basis for the description of

3    the disclosure as "speculative."  Had Best Buy inquired as it should have, it would have learned

4    of the basis for TAIS's depiction of a "panel cartel," and it cannot use the absence of a more

5    detailed contemporaneous record that is the result of its failure to inquire as a basis for describing

6    the specific information it was provided as "speculative."  The information provided by TAIS

7    ended up matching the allegations made by the government and many private parties, including

8    Best Buy.  Best Buy's assertion that TAIS was "speculating" is itself speculation, and it is not

9    sufficient to avoid Best Buy's duty to investigate and its duty to mitigate damages.

10          In a similar spirit, Best Buy asserts that the disclosure by TAIS was "pasted, verbatim,

11   from the initial memo" when it was recorded in two separate Best Buy business strategy

12   documents two years apart.  Opp. at 1.[1]  If the disclosure had been "pasted, verbatim," it would

13   still have been received, read, understood, and relied on, and verbatim pasting would not lessen

14   the significance of the disclosure for statute of limitations purposes, or absolve Best Buy of its

15   duty to mitigate damages.  The information about the "panel cartel" was recorded by Best Buy's

16   Mr. Winneroski as one of the "specific conclusions from the [Best Buy/TAIS] meeting" or "key

17   comments that would be helpful" for the recipients of Mr. Winneroski's memorandum "to

18   understand, to have an understanding of the meeting."  Freitas Decl., Ex. 2 (Winneroski Dep. at

19   58:23 to 59:12).  It was just as important when it was recorded two weeks later, in slightly

20   different language, in a "RVP Monthly Briefing," and again, two years later, also in slightly

21   different language from the original.  *See* Defendants' Joint Motion For Partial Summary

22   Judgment Dismissing Best Buy's (1) Pre-October 8, 2006 Claims As Time Barred and (2) Post-

23   May 2003 Claims For Failure To Mitigate Damages ("Mot.") at 6.

24          In another attempt to make the disclosure of a "panel cartel" go away, Best Buy calls the

25   disclosure a "single" communication and claims that the reference to the panel cartel appears in

26   "a grand total of three Best Buy documents."  Opp. at 1.  There is no volume or quantity

27
     ---
     [1]  Best Buy's claim of "verbatim" pasting is exaggerated.  *Compare* Freitas Decl., Ex. 1 at BBYLCD0035889 *with*
28   *id.*, Ex. 3 at BBYLCD0083159 *and id.*, Ex. 4 at BBYLCD0008531.

1   requirement applicable to the disclosure of information sufficient to put a plaintiff on notice of the

2   existence of a claim.  If information received by a claimant is sufficient to "excite the inquiry of a

3   reasonable person," *Conmar*, 858 F.2d at 502, the plaintiff must investigate, and it will be

4   charged with knowledge of everything it would have learned in the exercise of due diligence.  *See*

5   *id*. ("[a]ny fact that should excite his suspicion is the same as actual knowledge of his entire

6   claim").

7          Nor does it matter that the disclosure of a panel cartel was not repeated in subsequent

8   meetings with TAIS.  Best Buy cannot be excused of its duty to investigate simply because one

9   possible manifestation of the cartel activity – a failure by TAIS to meet Best Buy's needs at a

10  specific time for a specific group of products – was apparently no longer a problem.

11         Best Buy's depiction of the reference to the panel cartel as an "excuse" is similarly

12  unavailing.  Best Buy did nothing to investigate whether TAIS was offering an "excuse."  When a

13  supplier explains its failure to deliver by blaming the failure on the existence of a conspiracy

14  among an identifiable group of suppliers, the reasonable response is to ask what the supplier is

15  going to do to address the illegal activity that is disrupting its relationship with Best Buy, not to

16  label the explanation "an excuse" and move on.  Turning a blind eye to the disclosure of the

17  existence of a "panel cartel" on the assumption or belief that TAIS was offering an "excuse" is

18  the antithesis of the diligence required of one presented with information sufficient to "excite the

19  inquiry of a reasonable person."  Best Buy's failure to inquire about the basis for the mention of a

20  panel cartel, or about TAIS's response to the existence of the cartel, is far more relevant than its

21  assertion that it thought TAIS was offering an "excuse."

22         None of Best Buy's efforts to change the nature, or downplay the significance, of the

23  disclosure of the existence of a "panel cartel" succeeds, and none of Best Buy's legal arguments

24  provides any reason for the denial of defendants' motion.

25  **II.     BEST BUY'S PRE-OCTOBER 8, 2006 CLAIMS ARE BARRED BY THE
            STATUTE OF LIMITATIONS.**

26

27          **A.     Best Buy Does Not Deny That It Was Told Of The Existence Of A "Panel
                   Cartel" No Later Than May 2003.**

28  The controlling facts presented in defendants' motion are not disputed by Best Buy.  Best

-3-

1   Buy admits that Mr. Winneroski was told by TAIS of the existence of a "panel cartel," and it

2   cannot counter the documentary evidence showing that the information about the existence,

3   purpose, and effect of the "panel cartel" was communicated to multiple Best Buy officers and

4   other supervisors, and repeated in internal analyses.

5
6

> **B.    The Information Provided To Best Buy Was Sufficient To Arouse The Suspicion Of A Reasonable Party In The Position Of Best Buy, And To Trigger A Duty To Investigate.**

7        Although it does not deny that it was specifically told of the existence of a "panel cartel,"

8   Best Buy argues that it lacked "actual knowledge" of the existence of a price fixing conspiracy.

9   What Best Buy appears to mean is that it did not have all of the evidence it has today, or

10   otherwise did not have certain types of evidentiary details establishing the existence of a "panel

11   cartel." No case cited by Best Buy supports the idea that a specific disclosure of the existence of

12   a "panel cartel" accompanied by a statement that the activities of the "panel cartel" are the cause

13   of harm to the plaintiff is not sufficient to establish "actual knowledge" of the existence of

14   wrongdoing.

15        A conclusion that, despite the specific information it was provided, Best Buy did not have

16   "actual knowledge" would not be sufficient to defeat the defendants' motion because a plaintiff

17   seeking to invoke fraudulent concealment as a basis for tolling is required to prove that it lacked

18   both actual and constructive knowledge of the facts giving rise to its claim. *E.g.*, *Hexcel Corp. v.*

19   *Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012); *Conmar*, 858 F.2d at 502 (to establish

20   fraudulent concealment a plaintiff must prove that it "had neither actual nor constructive

21   knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those

22   facts."). There is no requirement that a plaintiff be aware of all of the facts that would establish

23   its claim. *See Advanced Micro Devices, Inc. v. Intel Corp.*, 1992 U.S. Dist. LEXIS 21529 *5-6

24   (N.D. Cal. July 24, 1992).

25        Best Buy acknowledges that constructive notice is sufficient to defeat a claim of

26   fraudulent concealment, and it agrees that constructive notice exists "when a plaintiff 'should

27   have been alerted to facts that, following duly diligent inquiry, could have advised it of its

28   claim.'" Opp. at 11 (quoting *Conmar*, 858 F.2d at 502). *See also id.* (quoting *In re Rubber*

DEFS. REPLY ISO JOINT MOTION FOR SUMM. JUDG. DISM.
BEST BUY'S CLAIMS AS TIME BARRED AND FOR FAILURE
TO MITIGATE – NO. 3:10-CV-4572 SI; NO. 07-MD-1827 SI

1   *Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 788 (N.D. Cal. 2007)).  All that is required, as Best

2   Buy concedes, is that "[f]acts must first exist to excite the inquiry of a reasonable person."  *Id.*

3   When that is the case, there is no reason to consider the existence or extent of the plaintiff's

4   "actual knowledge."  As *Conmar* states, "[a]ny fact that should excite his suspicion is the same as

5   actual knowledge of his entire claim."  858 F.2d at 502 (quoting *Dayco Corp. v. Goodyear Tire &*

6   *Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975)).

7        While the sufficiency of the evidence to "excite the inquiry of a reasonable person" may

8   present a factual question in some situations, that is not the case here.  A reasonable person told

9   of the existence of a "panel cartel" that was "conspiring to keep supply down to drive prices up"

10  would, as a matter of law, have his or her inquiry "excited," even if the activities of the "panel

11  cartel" were not identified as the specific cause of harm.  The impact of the evidence on a

12  reasonable person would not be countered by any of the matters asserted by Best Buy.

13       Best Buy received a specific statement about the existence of a cartel and a specific

14  statement about the nature of its activities.  The information was credibly tied to a specific impact

15  in the marketplace that was impacting Best Buy's business.  To excite the inquiry of a reasonable

16  person, it was not essential that the information about the cartel be supported by affidavits or

17  documents such as the minutes of Crystal Meetings provided to Dell, or that Mr. Winneroski of

18  Best Buy be as prolific as Mr. Korman of Dell in repeating what he was told.  The question is

19  simply whether the information was sufficient to excite the inquiry of a reasonable plaintiff in the

20  position of Best Buy, and that is unquestionably the case.

21       The other arguments made by Best Buy similarly fail to raise a genuine issue on the

22  question of whether the inquiry of a reasonable plaintiff in the position of Best Buy would have

23  been "excited."  As discussed above, it does not matter that there was but a "single" disclosure of

24  the existence of the "panel cartel."  Repetition of the fact that a cartel was "conspiring to keep

25  supply down to drive prices up" (beyond the repetition in the Best Buy documents) would have

26  added nothing critical on the question of notice.  Once was enough.

27       Nor is it necessary to hold a trial on the question of whether a reasonable person would

28  have been moved to inquire further because Best Buy calls the assertion of the existence of a

1    "cartel" speculative.  Best Buy was told there was a cartel, it was told the cartel specifically

2    involved the panel makers, it was told that the cartel members were "conspiring to keep supply

3    down to drive prices up," and it was told that the activities of the cartel had impacted Best Buy.

4    No speculation appears in these statements that Best Buy admittedly received, understood, and

5    repeated.

6           Even if it were correct to portray the information provided by TAIS as "speculative," Best

7    Buy would not prevail.  The law imposes a duty to act when a plaintiff is aware of information

8    that would "excite the inquiry of a reasonable person."  There is no requirement that the

9    information be fully substantiated, that it come from a source with direct personal knowledge, or

10   even that it be true.

11          Finally, Best Buy's protestations about what was not in the disclosure of the existence of a

12   "panel cartel" whose activities had harmed Best Buy are not sufficient to erase the disclosure, or

13   to eliminate Best Buy's duty of diligence.  A plaintiff cannot avoid responsibility for a failure to

14   discover information it could have discovered in the exercise of reasonable diligence by claiming

15   it was not given the information when the duty to investigate was triggered.

16          **C.     Best Buy's Attempt To Create A "Rumor" Exception Fails.**

17          Best Buy seeks to avoid the specific disclosure of a "panel cartel" by claiming that "mere

18   rumors are insufficient to trigger a duty to investigate," Opp. at 1, but it cites no cases addressing

19   "rumors," and does not explain why it would be appropriate to dismiss a specific report by a

20   major supplier of the existence of a "panel cartel" as a "rumor."  There is no reason to believe that

21   TAIS presented the information about the "panel cartel" as a "rumor."

22          Best Buy similarly attempts to initiate a debate as to whether mere "suspicions" are

23   sufficient to overcome a claim of fraudulent concealment.  *See* Opp. at 12. The "suspicions"

24   issue is a red herring.  It is settled that "[w]here a plaintiff's suspicions have been or should have

25   been excited, there can be no fraudulent concealment where he 'could have then confirmed his

26   earlier suspicion by a diligent pursuit' of further information."  *Conmar*, 858 F.2d at 504 (citing

27   *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir.1978)).  The evidence

28   that is relevant here does not involve a mere "suspicion."  Instead, there was a specific statement

from a credible source that there is a "panel cartel" that is controlling price and supply, and evidence of the impact of the cartel's efforts. The information provided to Best Buy was sufficient to arouse suspicion requiring a further inquiry.

   **D.    Best Buy Failed To Make A Diligent Inquiry.**

   While Best Buy appears to deny that the information about the existence, activities, and impact of the "panel cartel" was sufficient to "excite its inquiry," Best Buy also contends that it conducted an investigation of the existence of the cartel.

   In order to invoke fraudulent concealment as a basis for avoiding the statute of limitations, Best Buy must prove that it lacked both actual and constructive knowledge of the relevant facts, despite the exercise of diligence in trying to discover the facts. *Hexcel*, 681 F.3d at 1060. As the Supreme Court stated in *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 182 (1997), "a plaintiff may not rely upon 'fraudulent concealment' unless he has been reasonably diligent in trying to discover his cause of action." *See id.* at 194 ("a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'"); *id.* at 194-95 ("in the related antitrust context, where the 'fraudulent concealment' doctrine is invoked fairly often, relevant authority uniformly supports the requirement [of reasonable diligence]."). Best Buy contends that it investigated the information it received from TAIS, but the evidence confirms that is not the case. As the defendants demonstrated in their moving papers, Mot. at 8, Best Buy did nothing at all to investigate the existence of a "panel cartel."

-   Best Buy did not ask TAIS about the basis for TAIS's assertion of the existence of a panel cartel or how it knew the cartel was "conspiring to keep supply down to drive prices up."

-   Best Buy did not ask TAIS where it received the information about the existence of a "panel cartel."

-   Best Buy did not ask TAIS which panel makers were involved in the "panel cartel."

-   Best Buy claims that it considered the reference by TAIS to the existence of a "panel cartel" to be an "excuse," but Best Buy did not ask TAIS for confirmation

-7-

DEFS. REPLY ISO JOINT MOTION FOR SUMM. JUDG. DISM.
BEST BUY'S CLAIMS AS TIME BARRED AND FOR FAILURE
TO MITIGATE – NO. 3:10-CV-4572 SI; NO. 07-MD-1827 SI

1    of the kind of supply constraints that could have (a) resulted from the actions

2    described by TAIS and (b) produced the impact on Best Buy claimed by TAIS.

3    • Best Buy did not ask whether TAIS had reported the "panel cartel" to the

4      authorities.

5    • Although it was the apparent victim of conspiracy-based supply shortages, Best

6      Buy did not contact the authorities itself.

7    • There is no indication that Best Buy employees who received the information from

8      TAIS or their colleagues advised the Best Buy legal department or outside counsel.

9    • Best Buy did not ask TAIS what it was doing to cause an end to the activities of

10     the "panel cartel."

11   • Best Buy did not consult any third parties about the potential existence of a "panel

12     cartel."

13   • Best Buy did nothing else to determine whether a "panel cartel" existed.

14   As a substitute for these steps, Best Buy claims that it investigated "component shortages

15   and supply chain problems through at least August, 2003." Opp. at 17. But that is not an answer

16   to its failure to take reasonable steps to investigate the existence of a "panel cartel." The

17   defendants' motion is not based on the simple fact that Best Buy was told there were "component

18   shortages" or "supply chain problems." Best Buy was given specific information about the

19   existence of a "panel cartel," and it was told that the purpose of the cartel was "to keep supply

20   down to drive prices up." The existence and activities of the cartel were what Best Buy failed to

21   investigate. That Best Buy did not experience ongoing disruption, and then lost interest, does not

22   justify its failure to act.

23   **E.    Best Buy Did Not Plead Government Action, *American Pipe*, Or Cross-
          Jurisdictional Tolling.**

24

25   Best Buy does not respond to the defendants' argument that Best Buy pleaded only

26   fraudulent concealment as a basis for tolling by claiming that its complaint included specific

27   invocation of additional tolling theories. Best Buy claims that it alleged facts consistent with the

28   assertion of other tolling theories, but it does not claim that the theories can be found in its

-8-

1    operative complaint.  The point is not that the complaint "does not articulate the word [sic]

2    "American Pipe," Opp. at 21, but that it does not invoke *American Pipe* tolling.  Simply

3    describing oneself as a direct purchaser is not sufficient to do so.  Without specific allegations,

4    the defendants cannot know what Best Buy contends with respect to (a) the complaints that

5    triggered *American Pipe* tolling and (b) the defendants against which *American Pipe* tolling is

6    alleged.  *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig. ("AT&T")*, MDL Dkt. No. 4706 at

7    3 (N.D. Cal. Jan. 30, 2012) (governmental action).  Even in its memorandum in opposition to

8    defendants' motion, Best Buy does not provide sufficient information, merely stating that the

9    complaint shows it "was a member of the DP class," and offering comparable comments on other

10   unpleaded theories.  Opp. at 20.

11        Best Buy asserts that *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989 (9th Cir.

12   2006) stands for nothing more than a requirement that Rule 9(b) must be satisfied when the object

13   of a conspiracy is fraudulent.  The cases cited by *Wasco* are not so limited, and neither are this

14   Court's prior rulings.  The *Wasco* court noted that "federal courts have repeatedly held that

15   plaintiffs seeking to toll the statute of limitations *on various grounds* must have included the

16   allegation in their pleadings."  *Id.* at 991 (emphasis added).  The cases cited in *Wasco* include

17   "various grounds," including some not governed by Rule 9(b).  *Id.*  Nothing in *Wasco* suggests an

18   intention to ignore the non-fraud cases cited in the Ninth Circuit's approving discussion of the

19   case law.

20        Best Buy's request in its opposition brief that it be allowed to amend its complaint comes

21   far too late in the day.  Best Buy has had ample time to consider its tolling theories, and to

22   evaluate the appropriateness of an amendment under the Court's prior orders.  Having taken no

23   action until long after the close of fact discovery and the filing of defendants' motion, Best Buy is

24   in no position to ask that it be allowed to change the theory of its tolling case when confronted

25   with the inadequacy of the only theory it pleaded.

26

27

28

III.     **BEST BUY FAILED TO MITIGATE ITS DAMAGES.**

    A.     **A Price Fixing Plaintiff, Like Any Other Plaintiff, Has A Duty To Mitigate Damages.**

While Best Buy bristles at the suggestion that it made a decision to refrain from attempts to mitigate its damages to allow treble damages to accumulate, Best Buy claims a right to do just that. Best Buy argues that horizontal price fixing cases are special or unique in the law with respect to the existence of a duty to mitigate damages, but it fails to establish any rule precluding a mitigation defense in a horizontal price fixing case. The mitigation principle is a fundamental and generally applicable rule of law, *see, e.g.*, ABA Section of Antitrust Law, Model Jury instructions in Civil Antitrust Cases, F-47 (2005 ed.), and Best Buy cites no convincing authority suggesting that a price fixing plaintiff is allowed to recover for harm it reasonably could have avoided. Indeed, allowing a price fixing plaintiff to sit on the sidelines while damages to it and others continue – what the mitigation defense is designed to avoid – would be even less appropriate than allowing similar behavior in other areas, given that antitrust damages are trebled. *See* Mot. at 18-19.

Best Buy first claims that *Illinois Brick* and other cases involving pass-on issues contain or support a rule precluding a mitigation defense in price fixing cases. As the defendants explained in their moving papers, "[n]othing in *Illinois Brick* created a special rule regarding mitigation in horizontal price-fixing cases, or even addressed the concept of mitigation." Mot. at 17. *Illinois Brick*, *Hanover Shoe*, and the other pass-on cases address an "analytically distinct issue." *See id*. at 17-18.

Best Buy also searches for a limitation of the mitigation defense in cases that have addressed the defense. For example, Best Buy claims that *Fishman v. Estate of Wirtz*, 807 F.2d 520 (7th Cir. 1996) "expressly limit[ed] the mitigation of damages defense to failure to deal cases, and even then only 'under the unique facts here.'" Opp. at 22. That is not what the *Fishman* court said. Responding to the facts of the case, the Seventh Circuit expressed agreement "with both the defendants and the district court that, under facts like the ones in this case, antitrust damages may be offset by a figure that accounts for the fact that the plaintiffs actually had use of

1    money that, but for the violation, would have been tied up in the lost business opportunity.  This

2    figure can be labeled the 'plaintiffs' opportunity cost' in the context of this case."  807 F.2d at

3    556.  "Under facts like the ones in" *Fishman*, antitrust damages may be offset by opportunity cost

4    evidence.

5          There was no effort to limit the mitigation principle to facts like the *Fishman* facts, or to a

6    narrow class of cases.  To the contrary, the court recognized mitigation as a generally available

7    defense, and found the opportunity cost theory viable because, "[u]nder the unique facts here, . . .

8    this 'plaintiffs' opportunity cost' is, for all practical purposes, equivalent to mitigation, and we

9    agree that the tort rules regarding mitigation of damages can have their place in the law of

10   antitrust."  *Id.* at 556-57 (footnote omitted).

11         Best Buy tries to minimize *Litton Systems, Inc. v. Am. Tel & Tel. Co.*, 700 F.2d 785 (2d

12   Cir. 1983), in which it is stated without limitation that "[a]n antitrust plaintiff has a duty to

13   mitigate damages," *id.* at 820 n.47, by describing it as a case involving "exclusion from the

14   marketplace," but the Second Circuit said nothing supporting the idea that the mitigation principle

15   is restricted to cases involving "exclusion from the marketplace."  Best Buy takes a different

16   approach in connection with *Pierce v. Ramsey Winch Co.*, 753 F.2d 416 (5th Cir. 1985),

17   describing the specific type of mitigation required under the facts of the case, but it does not

18   explain how the application of mitigation principles in a section 1 case involving resale price

19   maintenance and termination of a price cutting dealer is indicative of a restriction of the

20   mitigation defense to a certain class of cases.

21         One of the *Illinois Brick*-based cases cited by Best Buy, *In re Airline Ticket Comm'n*

22   *Litig.*, 918 F. Supp. 283 (D. Minn. 1996), acknowledges that, "in general, an antitrust plaintiff has

23   a duty to mitigate or offset its damages," based on "the facts of each case."  *Airline Ticket* also

24   says that "[i]n a horizontal price-fixing case, however, mitigation and offset generally do not

25   affect the ultimate measure of damages," *id.*, citing only *Illinois Brick*, and likely referring only to

26   the unavailability of pass on as a defense to direct claims.  If the court meant to exclude

27   mitigation as a defense in all federal horizontal price fixing cases when it said that "mitigation

28   and offset *generally* do not affect the ultimate measure of damages" in a horizontal price fixing

case, it erred.

**B.   Best Buy Does Not Justify Its Failure To Contact The Authorities When Advised Of The Existence Of A "Panel Cartel."**

Best Buy suggests that there is doubt as to whether it had sufficient knowledge "such that it could have immediately contacted the Department of Justice" when it was told that the conspiratorial activities of a "panel cartel" were contributing to product or component shortages. Opp. at 1.  There is no doubt, and no genuine issue of material fact, on this score.

First, Best Buy does not deny that contacting the authorities when advised that one is a victim of a crime is "a reasonable and appropriate way to mitigate damages," a concept on which the *MCI v. AT&T* jury was instructed.  *See* Mot. at 20.  Second, while it suggests a deficit of some kind, Best Buy does not identify a legal or policy threshold for complaints of price fixing to the Antitrust Division, and there is none.  As defendants pointed out in their moving papers, Best Buy could have made an anonymous complaint, and there are no formalities for such complaints.  *See id.*

Best Buy was in possession of information sufficient to trigger its duty to mitigate damages no later than May 2003, and it could have avoided any post-May 2003 harm by making a report to the Antitrust Division or a state attorney general.  Because Best Buy failed to take the simple, inexpensive step of reporting the violation disclosed to it by TAIS, the defendants are entitled to summary judgment on their mitigation defenses as to all damages incurred after May 2003.

**C.   Application Of A Mitigation Requirement Would Not "Abrogate The Statute Of Limitations."**

Unable credibly to deny the existence of a mitigation defense in horizontal price fixing cases, Best Buy resorts to an illogical argument that application of the mitigation principle would "abrogate the statute of limitations."  Opp. at 23-24.  That is no more true under the antitrust laws or in a horizontal price fixing case than it is with respect to any of the multitude of claims in numerous areas of law that are subject to a rule forbidding the recovery of damages the plaintiff reasonably could have avoided.

1    Best Buy makes a basic error, confusing past damages, the recovery of which is governed

2    by the statute of limitations, and future damages, which cannot be recovered if they can

3    reasonably be avoided.  When the victim of a violation of the Sherman Act that has been

4    fraudulently concealed obtains actual or constructive knowledge of the existence of its claim, the

5    limitations period begins to run with respect to damages that have been incurred.  Independent of

6    the running of the limitations period with respect to past damages, the actual or constructive

7    knowledge obtained by the plaintiff may trigger a duty to mitigate future damages.  When the

8    plaintiff has it within its power to avoid further damages, it has a duty to do so, and it "may not

9    recover damages for any portion of its injuries that it could have avoided through the exercise of

10   reasonable care and prudence."  ABA Section of Antitrust Law, Model Jury Instructions in Civil

11   Antitrust Cases at F-47 (2005 ed.).

12        In a given case, the plaintiff's duty to mitigate damages might require that it file suit.

13   When that is the case, there is no impact on the application of the statute of limitations to past

14   damages.

15   **D.     Best Buy Was Aware Of Information Sufficient To Impose A Duty To
             Mitigate.**

16

17        Best Buy tries to escape the responsibility to mitigate by claiming that it was not "aware"

18   of facts giving rise to a duty to mitigate, but this argument is largely a repackaging of Best Buy's

19   other attempts to downplay the significance of the information it received from TAIS.  Best Buy

20   also makes a legal argument suggesting the need for a type of "knowledge" beyond that supported

21   by the case law.

22        *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322 (9th Cir. 1995), a legal

23   malpractice case decided under Alaska law, does not place the bar as high as Best Buy suggests.

24   As Best Buy notes, the Ninth Circuit observed that "[t]he duty to mitigate damages does not arise

25   until the party upon whom the duty is impressed is aware of facts making the duty to mitigate

26   necessary." *Id.* at 1329.  The court did not, however, say that the duty "arises only where a party

27   'actually discover[s] the damage done to [it].'"  Opp. at 24.

28        In *Home*, an insurance company sued its former law firm as a result of the firm's alleged

-13-

1   failure to communicate a policy limits settlement offer to the plaintiffs in the underlying

2   litigation.  The Ninth Circuit did not say that "a party" never has a duty to mitigate until the party

3   "actually discover[s] the damage done to [it]," but it did say, in the sentence modified by Best

4   Buy, that "Home had no duty to mitigate until it actually discovered the damage done to it by

5   Lane Powell."  *Id*. at 1330.  What the court meant was that because Home did not know the

6   policy limits offer was not communicated, it was not aware of a reason it should accept the

7   plaintiffs' later settlement demand to avoid liability for an excess judgment.  The point was

8   simply that "Home was not aware of circumstances creating a duty to mitigate damages at the

9   time of the plaintiffs' settlement offer."  *Id*.  Best Buy was specifically aware of such

10  circumstances when it was told that the activities of the "panel cartel" had caused or contributed

11  to a shortage of the goods it expected to receive from TAIS.[2]

12          As the Ninth Circuit said in *Home*, a party "aware of circumstances creating a duty to

13  mitigate damages" must act.  When Best Buy was told that its inventory requirements were not

14  being met because of the activities of a "panel cartel" that was "conspiring to keep supply down

15  to drive prices up," it was aware of such circumstances.  Best Buy's failure to mitigate requires

16  that the defendants' motion be granted with respect to all post-May 2003 damages.

17          **E.      There Is Nothing "Ridiculous" About Applying The Established Mitigation
                      Doctrine In A Manner Suited To The Facts Of A Case.**

18

19          Best Buy attempts to mock the defendants' argument that it could have filed suit or

20  contacted the Department of Justice, by associating the defendants' argument with a case in

21  which a court described a defendant's suggestion that the duty to mitigate required the pursuit of

22  injunctive relief as "ridiculous."  Opp. at 24-25.  The argument portrayed as "ridiculous" in one of

23  the cases cited by Best Buy has been adopted in other cases.  *See* Mot. at 22-23.

24          In *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 777 (7th Cir. 2010), Judge

25  Posner suggested that a plaintiff might have lost a state law breach of contract claim as a result of

26  ───────────────
    [2] *Lopez v. Musinorte Entm't Corp.*, 434 Fed. Appx. 696 (9th Cir. 2011), cites the same passage from *Home*, but does
    not support the rule advocated by Best Buy.  The court held that the plaintiff's cause of action did not accrue, *i.e.*, the
27  plaintiff did not know, and, in the exercise of reasonable diligence, should not have known, the facts underlying his
    claim, until he was officially expelled from a band.  *Id*. at 698.  Until he was expelled from the band, there was no
28  occasion for to plaintiff to mitigate the harm caused by his expulsion.

DEFS. REPLY ISO JOINT MOTION FOR SUMM. JUDG. DISM.
                              BEST BUY'S CLAIMS AS TIME BARRED AND FOR FAILURE
                              TO MITIGATE – NO. 3:10-CV-4572 SI; NO. 07-MD-1827 SI

1  its failure to mitigate by seeking an injunction.  In *Miller v. Perry Corp.*, Inv. No. 3:05-cv-7545,

2  2007 U.S. Dist. LEXIS 28399, at \*13-15 (N.D. Ohio Apr. 17, 2007), the court specifically relied

3  on a failure to seek injunctive relief in finding a failure to mitigate.  *See also Probst v. Reno*, 917

4  F. Supp. 554, 562 (N.D. Ill. 1995) ("Also in 1994, he mitigated his compensatory damages by

5  taking the appropriate lawful action of filing this lawsuit.").

6           There is nothing ridiculous about applying the longstanding mitigation principle to

7  preclude the recovery of damages that could have been avoided had Best Buy taken commercially

8  reasonable steps to prevent the harm for which it now seeks recovery.  It is undisputed that in

9  2006, the Antitrust Division initiated an investigation of the facts called to Best Buy's attention in

10 2003.  Best Buy cannot label "ridiculous" the idea that the Division would have done the same

11 had Best Buy reported what it learned in May 2003.

12 **IV.     CONCLUSION.**

13          Best Buy was on notice of the existence of a "panel cartel" no later than May 2003.  Best

14 Buy's knowledge and subsequent lack of diligence preclude reliance on fraudulent concealment

15 as a basis for tolling the statute of limitations.  Best Buy's failure to act in the face of knowledge

16 of the existence of the "panel cartel" requires that it be barred from recovering any damages

17 incurred after May 2003.  For these reasons, the defendants' motion should be granted.

18

19 Dated:  September 14, 2012                    FREITAS TSENG & KAUFMAN, LLP

20

21 By:*/s/ Robert E. Freitas*
         Robert E. Freitas (SBN 80948)
         Jason S. Angell (SBN 221607)
22       Jerry Chen (SBN 229318)
         FREITAS TSENG & KAUFMAN LLP
23       100 Marine Parkway, Suite 200
         Redwood Shores, California  94065
24       Telephone:  (650) 593-6300
         Facsimile:   (650) 593-6301
25           rfreitas@ftklaw.com
             jangell@ftklaw.com
26           jchen@ftklaw.com

27       *Attorneys for Defendant*
         *HannStar Display Corporation*

28

NOSSAMAN LLP


By: /s/ Carl L. Blumenstein
    Christopher A. Nedeau (SBN 81297)
    Carl L. Blumenstein (SBN 124158)
    50 California Street, 34th Floor
    San Francisco, CA 94111
    Telephone:  (415) 398-3600
    Facsimile:  (415) 398-2438
      cnedeau@nossaman.com
      cblumenstein@nossaman.com

*Attorneys for Defendants*
*AU Optronics Corporation and*
*AU Optronics Corporation America*

HILLIS CLARK MARTIN & PETERSON P.S.


By:/s/  Michael R. Scott
    Michael R. Scott (Pro Hac Vice)
    Michael J. Ewart (Pro Hac Vice)
    1221 Second Avenue, Suite 500
    Seattle, WA  98101-2925
    Telephone:  (206) 623-1745
    Facsimile:  (206) 623-7789
      mrs@hcmp.com
      mje@hcmp.com

*Attorneys for Defendants Chimei Innolux*
*Corporation (f/k/a Chi Mei Optoelectronics*
*Corporation), Chi Mei Optoelectronics USA,*
*Inc., and CMO Japan Co., Ltd.*

MORRISON & FOERSTER LLP


By: /s/ Stephen P. Freccero
    Stephen P. Freccero (SBN 131093)
    Derek F. Foran (SBN 224569)
    425 Market Street
    San Francisco, CA 94105-2482
    Telephone: (415) 268-7000
    Facsimile:  (415) 268-7522
      sfreccero@mofo.com
      dforan@mofo.com

DEFS. REPLY ISO JOINT MOTION FOR SUMM. JUDG. DISM.
BEST BUY'S CLAIMS AS TIME BARRED AND FOR FAILURE
TO MITIGATE – NO. 3:10-CV-4572 SI; NO. 07-MD-1827 SI

*Attorneys for Defendants*
*Epson Imaging Devices Corporation, Epson*
*Electronics America, Inc.*

GIBSON, DUNN & CRUTCHER LLP


By:*/s/  Rachel S. Brass*
    Rachel S. Brass (SBN 219301)
    555 Mission Street, Suite 3000
    San Francisco, California 94105-2933
    Telephone: (415) 393-8200
    Facsimile:  (415) 393-8306
      RBrass@gibsondunn.com

*Attorneys for Defendant*
*Chunghwa Picture Tubes, Ltd.*

MORGAN LEWIS & BOCKIUS LLP


By: */s/ Kent M. Roger*
    Kent M. Roger (SBN 95987)
    One Market, Spear Street Tower
    San Francisco, CA 94105-1126
    Telephone:  (415) 442-1000
    Facsimile:   (415) 442-1001
      kroger@morganlewis.com

*Attorneys for Defendants*
*Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a*
*Japan Display East, Inc.) and Hitachi*
*Electronic Devices (USA), Inc.*

PAUL HASTINGS LLP


By: */s/ Holly House*
    Holly House (SBN 136045)
    Kevin C. McCann (SBN 120874)
    55 Second Street, Twenty-Fourth Floor
    San Francisco, CA 94105-3441
    Telephone:  (415) 856-7000
    Facsimile:   (415) 856-7100
      hollyhouse@paulhastings.com
      kevinmccan@paulhastings.com

DEFS. REPLY ISO JOINT MOTION FOR SUMM. JUDG. DISM.
BEST BUY'S CLAIMS AS TIME BARRED AND FOR FAILURE
TO MITIGATE – NO. 3:10-CV-4572 SI; NO. 07-MD-1827 SI

Lee Berger
875 15th Street, N.W.
Washington, DC 20005
Telephone:  (202) 551-1772
Facsimile:   (202) 551-0172
   leeberger@paulhastings.com

*Attorneys for Defendants*
*LG Display Co., Ltd., and*
*LG Display America, Inc.*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP


By: /s/ *Craig A. Benson*
   Kenneth A. Gallo (*pro hac vice*)
   Joseph J. Simons (*pro hac vice*)
   Craig A. Benson (*pro hac vice*)
   2001 K Street, NW
   Washington, DC  20006
   Telephone: 202.223.7343
   Facsimile: 202.204.7343
      kgallo@paulweiss.com
      jsimons@paulweiss.com
      cbenson@paulweiss.com

*Attorneys for Defendants*
*Sharp Corporation and Sharp Electronics*
*Corporation*


The filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.

DEFS. REPLY ISO JOINT MOTION FOR SUMM. JUDG. DISM.
BEST BUY'S CLAIMS AS TIME BARRED AND FOR FAILURE
TO MITIGATE – NO. 3:10-CV-4572 SI; NO. 07-MD-1827 SI