Brent Caslin (Cal. Bar. No. 198682)
Jenner & Block LLP
633 West Fifth Street
Suite 3600
Los Angeles, California 90071
Telephone:     213 239-5100
Facsimile:      213 239-5199
bcaslin@jenner.com

Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
Gabriel A. Fuentes (*pro hac vice*)
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
Telephone:     312 222-9350
Facsimile:      312 527-0484
ttruax@jenner.com
mbrody@jenner.com
gfuentes@jenner.com

*Attorneys for Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc.,*
*and Mitsubishi Electric Visual Solutions America, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to: | DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR SUMMARY J UDGMENT AGAINST VIEWSONIC CORPORATION BASED UPON FAILURE TO PROVIDE EVIDENCE TO AVOID FTAIA BAR ON FOREIGN COMMERCE [DKT. 3108.] |
| *Viewsonic Corporation v. Chunghwa Picture Tubes Ltd.*, *et al.*, No.13-cv-02510. | |

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## <u>TABLE OF CONTENTS</u>

REPLY ARGUMENT ...................................................................................................1

I.   ViewSonic's Purchases Outside The United States Are Barred By The FTAIA. ....................2

   A.  ViewSonic's Foreign Purchases Do Not Involve Import Commerce. ................................2

   B.  ViewSonic's Foreign Purchases Do Not Meet the Domestic Effects Test. ........................6

II.  ViewSonic's Effort To "Correct" The Record Fails To Create A Material Issue of Fact
   Regarding Shipments To VSI. ................................................................................10

   A.  ViewSonic's Witnesses Testified That ViewSonic America ("VSA") Routed
      Monitor Purchases Through ViewSonic International ("VSI") in Taiwan.......................11

   B.  To The Extent ViewSonic's Affidavit Contradicts The Deposition Testimony, It
      Should Not Be Considered.................................................................................13

   C.  ViewSonic's Additional Evidence Is Not Related To The Parties In This Case. ..............14

   CONCLUSION.....................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

5

*Animal Sci. Prods. Inc. v. China Minmetals Corp.,*
    654 F.3d 462 (3d Cir. 2011).............................................................................2

6

7

*Clavon v. Roscoe BK Restaurant, Inc.,*
    572 Fed. Appx. 487 (9th Cir. 2014).............................................................13

8

*Empagran S.A. v. F. Hoffman LaRoche, Ltd.,*
    417 F.3d 1267 (D.C. Cir. 2005) ("*Empagran II*") ......................................7

9

10

*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.,*
    397 F.3d 1217 (9th Cir. 2005) ......................................................................13

11

12

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    546 F.3d 981 (9th Cir. 2008) ..........................................................................7

13

14

*In re Hydrogen Peroxide Antitrust Litig.,*
    702 F. Supp. 2d 548 (E.D. Pa. 2010) ............................................................7

15

*In re Monosodium Glutamate,*
    477 F.3d 535 (8th Cir. 2007) ..........................................................................7

16

17

*In re Rubber Chems. Antitrust Litig.,*
    504 F. Supp. 2d 777 (N.D. Cal. 2007) ..........................................................7

18

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    Nos. M 07-1827 ...............................................................................................3

19

20

*Motorola Mobility, Inc. v. AU Optronics Corp.,*
    --- F.3d ---, 2015 WL 137907 (7th Cir. Jan. 12, 2015)...............4, 8, 9, 10

21

22

*Motorola Mobility, Inc. v. AU Optronics Corp.,*
    Memo. Op. & Order, No. 09-C-6610,  (N.D. Ill. Jan. 23, 2014), *aff'd* --- F.3d ---,
    2015 WL 137907 (7th Cir. Jan. 12, 2015) ......................................3, 4, 8

23

24

*Rush v. Denco Enters., Inc.,*
    857 F. Supp. 2d 969 (C.D. Cal. 2012) ...........................................................1

25

26

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.,*
    608 F. Supp. 2d 1166 (N.D. Cal. Mar. 31, 2009) ........................................7

27

*U.S. v. Hui Hsiung,*
    758 F.3d 1074 (9th Cir. 2014) ...............................................................3, 5, 6

28

30

*Wright v. Employers Reinsurance Corp.*,
    No. C-04-03710, 2005 WL 756618 (N.D. Cal. Mar. 31, 2005) ..................................................1

**STATUTES**

15 U.S.C. § 6a ..........................................................................................................................2

## REPLY ARGUMENT

Summary judgment has been referred to as the time to "put up or shut up."[1]  As the party claiming it actually made domestic purchases, ViewSonic now is required to prove its domestic purchases. (Defendants' Mot. for Summary J. at 6-7.)  It has failed to do so, and the evidence in the record, including the testimony of its key procurement personnel, demonstrates that ViewSonic complains of foreign commerce.

Defendants[2] moved for summary judgment against ViewSonic based upon ViewSonic's failure to provide evidence showing that its purchases were not foreign commerce, excluded from liability under the United States antitrust laws by the FTAIA's bar on foreign commerce [Dkt. 3108].  Defendants' motion is based on the uncontested facts that ViewSonic purchased CRT monitors from foreign companies, that ViewSonic had those monitors delivered to foreign destinations where ViewSonic took title to those monitors, and that *ViewSonic* then imported those monitors to the United States.  ViewSonic's claims therefore do not arise from actions in United States commerce by defendants.

In its response, ViewSonic does not contest that it took possession and title of monitors in Asia, but instead argues that the FTAIA does not exclude these foreign purchases because of two exceptions contained in the FTAIA.  ViewSonic misconstrues these statutory exceptions, and, as shown below, neither applies here.  As a result, the motion for summary judgment should be granted and ViewSonic's foreign purchases excluded from the case.

ViewSonic tries to re-write the factual record by selectively quoting excerpts of testimony from deponents who either testified they had no specific knowledge of this importation process or *agreed* that purchase orders produced in this litigation reflected shipments

---

[1] *E.g., Wright v. Employers Reinsurance Corp.*, No. C-04-03710, 2005 WL 756618, at *8 (N.D. Cal. Mar. 31, 2005); *Rush v. Denco Enters., Inc.*, 857 F. Supp. 2d 969, 974 (C.D. Cal. 2012) (collecting cases).

[2] After filing of this motion, ViewSonic's case was dismissed as to Panasonic Corporation, Panasonic Corporation of North America, and MT Picture Display Co., Ltd. (collectively, "Panasonic Defendants"), Dkt. 3215.  Thus, Panasonic Defendants no longer join in the motion.

to ViewSonic's foreign subsidiary ViewSonic International ("VSI"), and by submitting an affidavit from one of the deponents, which contradicts her prior sworn testimony.  ViewSonic's bid to create a factual dispute by affidavit violates the sham affidavit rule, and should be disregarded.  The affidavit also fails to address the testimony that ViewSonic routed its monitor purchases through VSI in Taiwan before any monitors ended up in the United States.

## I.     ViewSonic's Purchases Outside The United States Are Barred By The FTAIA.

As conceded in the response, regardless of the particular ViewSonic entity involved, ViewSonic's purchases were almost uniformly made in foreign countries where title passed to ViewSonic, after which ViewSonic – and not the monitor supplier – shipped the foreign monitors to the United States.  As a matter of law, these foreign purchases are barred unless they meet an exception to the FTAIA.[3]   ViewSonic argues that two statutory exceptions apply, but neither exception applies.

### A.     ViewSonic's Foreign Purchases Do Not Involve Import Commerce.

ViewSonic claims that its foreign purchases are not barred because "Defendants' conduct in selling monitors . . . to ViewSonic America for importation and sale in the United States 'involved' U.S. import commerce." (ViewSonic's Resp. at 10.)   ViewSonic argues that the import commerce exclusion "is not limited to only those situations where a defendant itself serves as an importer." (*Id.*)   In making this argument, ViewSonic relies upon *Animal Science Products, Inc.*,[4] which ViewSonic argues permits a plaintiff to bring claims based upon foreign purchases where the "defendants' conduct target[s] import goods or services," even if the defendants were not directly engaged in doing the importing. (Resp. at 11.)

---

[3] 15 U.S.C. §6a (Sherman Act "shall not apply to conduct involving trade or commerce . . . with foreign nations. . . .").

[4] 654 F.3d 462 (3d Cir. 2011).

ViewSonic's argument is based on the Third Circuit's broader definition of import commerce, which the Ninth Circuit has declined to adopt.[5]   Moreover, two separate federal courts in the LCD antitrust litigation concluded that where the plaintiff, and not the defendant, caused the import of the price-fixed good, the foreign sales are not import commerce under the FTAIA.[6]   Each decision addressed the claims of a purchaser-plaintiff, Motorola, which from its purchasing offices in the United States purchased the price-fixed good in a foreign country. Motorola itself or one of its affiliates shipped the price-fixed good to the United States.[7] Motorola, like ViewSonic here, argued that it negotiated and executed all of its foreign purchases from within the United States.[8]   Motorola argued to both the MDL court and the transferor court (post-MDL), as ViewSonic argues here, that the court should expand the "import commerce" exception to include the situation where defendants' sales overseas *targeted* U.S. import commerce.   Both district courts rejected Motorola's bid to expand the import commerce exception to such a situation, relying on the established precedent that the "dispositive inquiry used to determine whether a product is an 'import' is 'whether the conduct of the defendants, not

---

[5] The Ninth Circuit recently declined to adopt the Third Circuit's broader import commerce definition relied upon by ViewSonic.  *U.S. v. Hui Hsiung*, 758 F.3d 1074, 1090 n.7 (9th Cir. 2014) ("We need not determine the outer bounds of import trade by considering whether commerce directed at, but not consummated within, an import market is also outside the scope of the FTAIA's import provisions.").

[6] *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827 *et al.*, 2010 WL 2610641, at *5 (N.D. Cal, Jun. 28, 2010) (product brought to the U.S. by plaintiffs' affiliates not "imports;" "Although Motorola argues that defendants 'intended' for the foreign-purchased LCD panels and products to be brought to the United States, Motorola has not cited any authority adopting such an expansive definition of 'import.'"); *Motorola Mobility, Inc. v. AU Optronics Corp.*, Memo. Op. & Order, No. 09-C-6610, at 19 (N.D. Ill. Jan. 23, 2014) (concurring with MDL conclusion that purchases by plaintiff affiliates are not "imports" within FTAIA), *aff'd* --- F.3d ---, 2015 WL 137907, at *2 (7th Cir. Jan. 12, 2015) (import exception does not apply because "[i]t was Motorola, rather than the defendants, that imported these panels into the United States").

[7] *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827 *et al.*, 2010 WL 2610641, at *5 (N.D. Cal, Jun. 28, 2010).

[8] *Id.* at *1.

plaintiffs, involves 'import trade or commerce.'"[9]   Applying the rule from the Motorola LCD decisions here, ViewSonic's purchases in Asia are not import commerce because ViewSonic, and not defendants, imported the products to the United States.

Motorola appealed the ruling of the transferor court, and the United States Court of Appeals for the Seventh Circuit affirmed the ruling that the purchase by Motorola of goods that Motorola received in Asia and then shipped to the United States was not "import commerce" for purposes of the FTAIA.  In a holding that is equally applicable to this case, the Court of Appeals held that the import exception does not apply because "[i]t was Motorola, rather than the defendants, that imported these panels into the United States."[10]

Despite these decisions demonstrating the legal irrelevancy of ViewSonic's arguments, ViewSonic relies on its own conduct to determine whether its foreign purchases constitute import commerce.  For example, ViewSonic argues that it sent its purchase orders to Asia from the United States, that it made payments from the United States, and that title passed (albeit in Asia) to a United States company. (Resp. at 11.)  ViewSonic infers from its own actions that "Defendants sold computer monitors . . . knowing that those monitors would be imported into the United States."[11]   The district courts and the Court of Appeals rejected Motorola's similar claims.  Moreover, ViewSonic provides no evidence to support its claim.   ViewSonic's U.S. activities are not probative as ViewSonic Corporation coordinated all global purchasing from the

---

[9] *Motorola Mobility, Inc. v. AU Optronics Corp.*, Memo. Op. & Order, No. 09-C-6610, at 19 (N.D. Ill. Jan. 23, 2014) (citing *Turicentro, S.A. v. Am. Airlines, Inc.*, 303 F.3d 293, 303 (3d Cir. 2002), overruled on other grounds by *Animal Sci. Prods. Inc. v. China Minmetals Corp.*, 654 F.3d 462, 467-68 (3d Cir. 2011)); *TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07-1827 *et al.*, 2010 WL 2610641, at *5 (N.D. Cal, Jun. 28, 2010) (rejecting Motorola's argument that the court should evaluate whether defendants "intended" that the products be imported).  The most recent *Motorola Mobility* decision post-dates the Third Circuit's *Animal Science Products* decision, and obviously did not persuade that court to expand the import commerce exception.

[10] *Motorola Mobility, Inc. v. AU Optronics Corp.*, --- F.3d ---, 2015 WL 137907, at *2 (7th Cir. Jan. 12, 2015).

[11] *Id.*

---

United States, including on behalf of its Chinese, Taiwanese, and European subsidiaries.[12] ViewSonic took delivery of the monitors in Asia.  ViewSonic cites no evidence that defendants formed any belief as to what ViewSonic would do with the products post-sale.  ViewSonic's claim that defendants knew where ViewSonic was shipping the monitors rings hollow in light of ViewSonic's inability to produce any purchase orders containing that information, and where nine of the eleven purchase orders it has produced ██████████████████████████████ ████████████████████████.[13]

 ViewSonic's reliance upon *U.S. v. Hui Hsiung*,[14] also is misplaced.  In *Hui Hsiung*, the Ninth Circuit was satisfied that the government's indictment of executives of AUO sufficiently alleged import commerce, and the evidence adduced at the criminal trial sufficiently demonstrated import commerce, because the defendants' employer, AUO, and the defendant executives "engaged in the business of producing and selling TFT-LCDs to customers in the United States." For example, at trial, the government adduced evidence that AUO "imported over one million price-fixed panels per month into the United States."[15]   In support of this conclusion, the court relied upon the Seventh Circuit's definition of "import commerce" as "transactions that are directly between the [U.S.] plaintiff purchasers and the defendant cartel members."[16]  Evidence showed the defendant was an importer "because at least a portion of the transactions [by AUO] involved the heartland situation of the direct importation of foreign goods

---

[12] Ex. 15, Yang 24:15-25:10; E.g., Mot. Ex. 2 █████████████████████████████████ █████████████████████████████ Exhibit 15, Dep. of Rose Yang at 24L15-15:10. New exhibits cited in this brief refer to the exhibits attached to the Declaration of Shaun Van Horn filed with this brief.

[13] Mot. at 13, Ex. 3 (Deposition of Bonny Cheng, Ex. 7256). This exhibit was cited but inadvertently omitted from the opening brief. It is attached here as Ex. 16.

[14] 758 F.3d 1074 (9th Cir. 2014).

[15] *Id*. at 1091.

[16] *Id*.

into the United States [by the defendant.]."[17]  Here, in contrast to AUO, the defendants did not import the price-fixed good; ViewSonic imported products containing the allegedly price-fixed good. ███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████ )

**B.    ViewSonic's Foreign Purchases Do Not Meet the Domestic Effects Test.**

As a fallback, ViewSonic argues that its foreign purchases are actionable under the domestic effects exception to the FTAIA because "Defendants' delivery of monitors containing . . . CRTs to ViewSonic America was just one small step removed from direct importation into the United States." (Resp. at 11.) ViewSonic's use of "direct" ignores the context of the CRTs at issue in this case.  Although the sale of a computer monitor by an Asian company to ViewSonic in Asia is only one step removed from ViewSonic's export of the monitor from that Asian country to the United States (assuming that ViewSonic exports to the United States directly and not through VSI or another entity), the steps by which the allegedly price-fixed good – *i.e.*, the CRT contained in the monitor – arrive in the United States are more numerous, beginning at an earlier manufacturing location of the CRT and usually passing through multiple entities and locations before arriving in ViewSonic's possession in an Asian country.   Even under the definition used by ViewSonic, where commerce is "direct if it 'proceed[s] from one point to another in time or space without deviation or interruption,'" the circuitous foreign routes by which CRTs came to the United States is certainly "indirect."[18]

---

[17] *Id*. at 1090 n.7.  Even if the *Hui Hsiung* court had addressed a situation where the defendant was not the importer of the price-fixed good, it would provide little precedential value here because the court applied the deferential post-trial standard of review for challenges to the sufficiency of the evidence.  *Id*. at 1091.

[18] *See also* Mot. at 8-9 ("an effect on domestic commerce that depends on 'uncertain intervening developments' cannot be direct by definition").  ViewSonic half-heartedly inserts an objection that the purchases ViewSonic Corporation made from Asian companies, for products made in Asia, to be transferred to ViewSonic in Asia are not "significantly foreign" such that the FTAIA applies. (Resp. at 8.)  No such requirement exists in the FTAIA and the mere fact that the

ViewSonic's primary failing, however, is that it does not satisfy the "gives rise to" requirement of the domestic effects exception.  Under the proximate cause standard adopted by the Ninth Circuit, ViewSonic must show that the higher prices it paid for monitors in Asia were caused proximately and directly by higher U.S. prices induced by the cartel.  Even assuming that the alleged global CRT conspiracy, which was allegedly coordinated principally in Asia, proximately caused ViewSonic to pay higher prices in Asia, ViewSonic must show the inflation of the prices it paid in Asia, where it took title of the monitors, was a direct effect of defendants' conduct in the United States.[19]  It failed to do so.

ViewSonic argues that it meets the proximate cause test because "Defendants' conduct had an effect on U.S. domestic commerce . . . . [and] [t]hat effect was the direct and foreseeable result of Defendants invoicing ViewSonic America at those amounts in the United States." (Resp. at 10.) At least three federal appellate courts have considered this argument and have all held that the fact that defendants knew or could foresee the effect of their allegedly anti-competitive activities in the United States on the plaintiffs' injuries abroad or had as a purpose to manipulate United States trade does not establish that "U.S. effects proximately caused the [plaintiffs'] harm."[20]

---

customer making the order is located in the United States does not erase the overwhelmingly foreign nature of the transaction.

[19] *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 987 (9th Cir. 2008) (adopting proximate cause standard in lieu of "but for" cause standard for FTAIA domestic injury exception).

[20] *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d at 988; *Empagran S.A. v. F. Hoffman LaRoche, Ltd.*, 417 F.3d 1267, 1271 (D.C. Cir. 2005) ("*Empagran II*"); *In re Monosodium Glutamate*, 477 F.3d 535, 539-40 (8th Cir. 2007) ("The domestic effects of the price fixing scheme (increased U.S. prices) were not the direct cause of the appellants' injuries. Rather, it was the foreign effects of the price fixing scheme (increased prices abroad)."); *see also In re Hydrogen Peroxide Antitrust Litig.*, 702 F. Supp. 2d 548, 553 (E.D. Pa. 2010); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1186 (N.D. Cal. Mar. 31, 2009); *In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 786 (N.D. Cal. 2007).

To the extent that ViewSonic argues that it can demonstrate proximate causation because it paid for the foreign monitors from a location in the United States, this argument also has been rejected.  In *Motorola Mobility*, Motorola argued that its foreign purchases were distinguishable from the prior case law regarding proximate causation because the "locale of the transactions at issue" involved payments made from the United States.[21]   The district court rejected this argument.  It noted that "the undisputed facts show that the transactions were overwhelmingly foreign in nature" and relied upon the Ninth Circuit's definition that "having to pay higher prices abroad" is foreign injury.[22]   Thus, even if ViewSonic used United States bank accounts to make its monitor payments, as Motorola did to pay for its LCD purchases abroad, ViewSonic used that money to effect a foreign transaction, and, thus, suffered the injury abroad. It is undoubtedly the case that Motorola in the United States felt the pinch of the overcharge paid to manufacturers in Asia, just as ViewSonic claims to have suffered a financial harm here, but that indirect economic impact felt at the United States headquarters for ViewSonic does not change the location of the injury from Asia to the United States.

The Seventh Circuit affirmed the district court's rejection of Motorola Mobility's domestic effects exception.  In doing so, it found that Motorola failed to meet the "gives rise to" standard of the FTATA because the "cartel-engendered price increase in the components and in the price of the cellphones that incorporated them occurred entirely in foreign commerce."[23] The same is true here.  One reason the Seventh Circuit gave for concluding that Motorola's domestic harm, if any, was indirect (and thus barred by the FTAIA) was because Motorola's foreign subsidiaries made the purchases and "[h]aving submitted to foreign law, the subsidiaries must seek relief for restraints of trade under the law either of the countries in which they are

---

[21] *Motorola Mobility, Inc. v. AU Optronics Corp.*, Memo. Op. & Order, No. 09-C-6610, at 16 (N.D. Ill. Jan. 23, 2014).

[22] *Id.*

[23] *Motorola Mobility, Inc. v. AU Optronics Corp.*, --- F.3d ---, 2015 WL 137907, at *3 (7th Cir. Jan. 12, 2015) (amended decision).

incorporated or do business or the countries in which their victimizers are incorporated or do business."[24]   However, the court also held that its conclusion would be unchanged even if Motorola and its subsidiaries had operated as a "single entity" because Motorola purchased the goods abroad.  Even "supposing . . . Motorola is correct that it and its subsidiaries "are one," the price-fixed sale does not directly impact domestic commerce because "[t]he sales to consumers would [] have been the first sales in the United States – the first in domestic commerce, since 'the one' bought the price fixed components abroad."[25]  Thus, even if ViewSonic did not make its foreign purchases through foreign subsidiaries, that does not alter the foreign nature of the transaction abroad, just as it would not have affected the foreign nature of the Motorola transactions.

Indeed, the rationale identified by the court in *Motorola Mobility* apply equally here. First, ViewSonic elected to take delivery and title of its CRT monitors in Asia.  ViewSonic could file suit in the location of the foreign transaction if it thought recovery were more favorable there.  The FTAIA does not give ViewSonic the right to "forum shop."[26]  Second, to permit ViewSonic to bring an antitrust lawsuit in the United States based upon foreign transactions "creates a serious risk of interference with a foreign nation's ability independently to regulate its own commercial affairs."[27] To presume that ViewSonic's remedy under the antitrust laws of U.S. allies is inadequate is inconsistent with principles of international comity.[28]   Third, ViewSonic may avail itself of U.S. antitrust law protection in the future by taking possession and title of its foreign products in the United States.[29]

---

[24] *Id*. at *4.

[25] *Id*. at *7.

[26] *Id*. at *10.

[27] *Id*. at *9 (citing *F. Hoffman-LaRoche Ltd. v. Empagran S.A.*, 542 U.S. 155, 165 (2004).)

[28] *Id*.

[29] *Cf. Id*. at *12 (noting that the "U.S. parent could buy directly from the foreign vendor" in the future to avoid the FTAIA).

ViewSonic cannot satisfy the proximate cause requirement of the domestic effect test, nor does ViewSonic provide any better justification for deviating from established case law than Motorola in the LCD case. ViewSonic's foreign purchases fall under the FTAIA prohibition.

## II. ViewSonic's Effort To "Correct" The Record Fails To Create A Material Issue of Fact Regarding Shipments To VSI.

Even if the exceptions to the FTAIA rescue ViewSonic's purchases abroad from the bar on foreign commerce, ViewSonic has not met its burden to show that it made domestic purchases.  Indeed, the record demonstrates that ViewSonic purchased monitors abroad, took title to those monitors abroad, and only then imported those monitors itself.  ViewSonic concedes that it has the burden of establishing that all of its claims are based on domestic purchases, or qualify under one of the two foreign commerce exceptions of the FTAIA. (Resp. at 6-7.) ViewSonic does not deny that to the extent its monitors were purchased in Asia and then shipped to VSI in Taiwan before being imported to the United States by ViewSonic Corporation ("VSA"), those purchases are foreign commerce.  Instead, ViewSonic argues that the motion is "premised on an inaccurate version of the facts."[30]

ViewSonic fails to address, however, the testimony of its witnesses on which defendants' motion is based. ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████ ViewSonic tries to blunt this unfavorable testimony by submitting an affidavit of one of its deponents in an attempt to contradict the deposition testimony and create a factual dispute.  The affidavit should be disregarded as a violation of the sham affidavit rule, and, in any case, does not provide a basis upon which to deny the motion.

---

[30] *Id.*

### A. ViewSonic's Witnesses Testified That ViewSonic America ("VSA") Routed Monitor Purchases Through ViewSonic International ("VSI") in Taiwan.

ViewSonic hinges its opposition on the following: "ViewSonic witnesses made clear at deposition that purchases by ViewSonic in the United States are separate and apart from those made by VSI, and that none of the products for which damages are sought in this litigation were first 'acquired' by VSI before coming into ViewSonic's possession." (Resp. at 1.)

This assertion misses the point.  When ViewSonic Corporation procurement personnel placed orders with Asian monitor manufacturers on behalf of the American subsidiary, VSA, the evidence suggests that ViewSonic Corporation had those monitors delivered to VSI in Taiwan. Nine of the eleven VSA purchase order documents produced by ViewSonic in this litigation show ████████████████████████████████████████████[31]   These same purchase order documents show ████████████████████████████████ ████████████████████.[32] ████████████████████████████████████████ ████████████████████████████████████.[33]   (If there are other purchase orders, ViewSonic did not produce them.)  While the deponents themselves testified that VSI and VSA separately purchased monitors, they were unable to describe the actual process by which VSA imported its monitors to the United States.[34]

In a similar vein, ViewSonic witnesses also testified that ViewSonic Corporation sometimes ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████[35]   In those cases, there is no doubt that a foreign subsidiary of ViewSonic

---

[31] Ex. 16, Exhibit 7256, used in the 30(b)(6) Deposition of B. Cheng.

[32] *Id.*

[33] *Id.*

[34] Resp., Ex. 1, ViewSonic 30(b)(6) (B. Cheng) Tr. at 74:12-23; Ex. 17, Yang Tr. at 18:16-19:7.

[35] Ex. 18, Cheng Tr. at 157:21 ████████████████████████████ Ex. 19, Cheng Tr. 175:7 ██████████████████████████████████ Ex. 20, Cheng 292:16 ███████ ██████████████████████████████

Corporation had first "acquired" the monitors, and, VSA subsequently procured the monitor from the foreign subsidiary as part of an intra-company product transfer.[36]

In response, ViewSonic selectively quotes testimony that it believes undercuts these facts and submits a declaration purporting to clarify the record.  These citations do not refute the witnesses' testimony that they could not explain in detail the actual importation process or the conclusion that ViewSonic has failed to provide evidence demonstrating that its purchases were not foreign commerce pursuant to the FTAIA. ████████████████████

████████████████████████████████████

████████████████████████ (Resp. at 4.)  Her testimony fails to refute defendants' evidence that VSI apparently took possession of such monitors in Taiwan before the monitors were shipped – by a ViewSonic entity – to VSA in the United States.

ViewSonic next cites the testimony of its corporate representative, Bonny Cheng, who stated the she could not recall ████████████████████████████

███████████████ (Resp.  at  5-6.) ████████████████████████

████████████████████████████████████

███████████████ 37 ████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████ 38

_____

[36] The record provides no basis on which to determine whether these intra-company purchases by ViewSonic in the United States are included in ViewSonic's claim or not.

[37] Resp, Ex. 1, ViewSonic 30(b)(6) (B. Cheng) Tr. at 74:12-23 ████████████████

████████████████████████████████████

██████████████████

[38] Ex. 21, Cheng Tr. at 162:14-15.

### B.   To The Extent ViewSonic's Affidavit Contradicts The Deposition Testimony, It Should Not Be Considered.

Apparently recognizing that the discovery record discloses foreign purchases barred by the FTAIA, ViewSonic obtained an affidavit from one of its deponents, Rose Yang, in order to create a factual dispute.   The submission of this affidavit to contradict the prior deposition testimony is barred, and, in any event, does not remedy the factual admissions of ViewSonic's witnesses.

The "sham affidavit" rule is well established.   A party may not seek to avoid summary judgment by relying on an affidavit to contradict deposition testimony:

> "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."[39]   Although a party may make "corrections 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment."[40]

In this case, ViewSonic's declaration does not seek to make a correction of the record but to change fundamentally the testimony of Ms. Yang and contradict the testimony of its corporate representative.   Ms. Yang testified at her deposition regarding ViewSonic's claims in this case that monitors ███████████████████████████████████████████████ ████████████████████████████████████[41] In the declaration, though, Ms. Yang now states that ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████[42]   ViewSonic makes no effort in its response to explain this volte face.[43]

---

[39] *Clavon v. Roscoe BK Restaurant, Inc.*, 572 Fed. Appx. 487, 489 (9th Cir. 2014) (citations omitted).

[40] *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005).

[41] Mot. at 3, Ex, 5, Dep. Tr. of Rose Yang at 28:12-16, 29:9-15.

[42] Resp. Decl. (R. Yang) ¶ 5.

It is difficult to understand how Ms. Yang can speak to each of the thousands of separate purchase order transactions identified on ViewSonic's transactions spreadsheet (the "Data Files"), ██████████████████████████████████████████████████████ ████████████████████████████████████████████ Ms. Yang testified at her deposition that ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████ [44]  The sweeping statement made in this affidavit about ViewSonic's damages, when considered in light of the witness' deposition testimony and the limited purchase order documentation produced by ViewSonic, reflects that this affidavit has been filed for the sole purpose of manufacturing a factual dispute to avoid summary judgment.

**C.    ViewSonic's Additional Evidence Is Not Related To The Parties In This Case.**

In addition to the declaration, ████████████████████████████████████████ ██████████████████████████████████████████ (Resp. at 3.) ███████████████ ████████████████████████████████████████████████████████████████████ ████████████ [45]  ViewSonic has no claim against these companies and makes no allegation that either of these companies participated in the alleged CRT cartel. ViewSonic does not claim that either company is owned or controlled by a defendant. ███████████████ ████████████████████████████████████████████████████████████████████ ████████████ It is inappropriate to suggest these documents are representative of ViewSonic's purchase orders.

These purchase orders also highlight ViewSonic's failure to produce any relevant purchase orders in the case, *i.e.*, purchase orders with actual defendants, which prevents them

---

[43] ViewSonic also refused to provide any response to Defendants' interrogatories that sought information about how products were shipped from Asia to Walnut, California. ViewSonic Corporation's Response to First Set of Interrogatories at 5:22, 7:11.

[44] Ex. 17, Yang Tr. at 18:16-19:7 (italics added.)

[45] *Id.*

from meeting their burden of proof as to the domestic nature of their purchases. Although ViewSonic continues to rely upon its transactional spreadsheets, ████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████ (Mot. at 21.) Even if ViewSonic's affidavit suffices to create an issue of fact as to whether monitors were shipped to VSI prior to being shipped to the United States, the affidavit does not address the complete lack of crucial purchase information necessary for ViewSonic to demonstrate domestic purchases.

Based on ViewSonic's inability to adduce record evidence that its monitor purchases were delivered directly from the foreign locations where ViewSonic took possession of them to VSA in the United States, the motion should be granted.

## CONCLUSION

Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment Against ViewSonic Corporation Based Upon Failure to Provide Evidence to Avoid FTAIA Bar on Foreign Commerce [Dkt. 3108].

Dated:  January 23, 2015

JENNER & BLOCK LLP

By:    /s/ Terrence J. Truax
JENNER & BLOCK LLP
Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
Gabriel A. Fuentes (*pro hac vice*)
353 N. Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
ttruax@jenner.com
mbrody@jenner.com
gfuentes@jenner.com

Brent Caslin (Cal. Bar. No. 198682)
JENNER & BLOCK LLP
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
bcaslin@jenner.com

*Attorneys for Defendants Mitsubishi Electric*
*Corporation, Mitsubishi Electric US, Inc., and*
*Mitsubishi Electric Visual Solutions America,*
*Inc.*

MUNGER, TOLLES & OLSON LLP

By: */s/ Hojoon Hwang*

JEROME C. ROTH (State Bar No. 159483)
jerome.roth@mto.com
HOJOON HWANG (State Bar No. 184950)
hojoon.hwang@mto.com
MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000

1   Facsimile: (415) 512-4077

2   WILLIAM D. TEMKO (SBN 098858)
3   William.Temko@mto.com
    **MUNGER, TOLLES & OLSON LLP**
5   355 South Grand Avenue, Thirty-Fifth Floor
    Los Angeles, CA 90071-1560
6   Telephone: (213) 683-9100
    Facsimile: (213) 687-3702
7
8   *Attorneys for Defendants LG Electronics, Inc.;*
    *LG, LG Electronics USA, Inc.; and LG*
9   *Electronics Taiwan Taipei Co., Ltd.*

10  SHEPPARD MULLIN RICHTER & HAMPTON
11  LLP

12  By: */s/ Gary L. Halling*_____
    GARY L. HALLING (SBN 66087)
13  ghalling@sheppardmullin.com
    JAMES L. MCGINNIS (SBN 95788)
14  jmcginnis@sheppardmullin.com
    MICHAEL W. SCARBOROUGH (SBN 203524)
15  mscarborough@sheppardmullin.com
16  **SHEPPARD MULLIN RICHTER &**
    **HAMPTON LLP**
17  Four Embarcadero Center, 17th Floor
    San Francisco, California 94111
18  Telephone: (415) 434-9100
19  Facsimile: (415) 434-3947

20  *Attorneys for Defendants Samsung SDI America,*
    *Inc.; Samsung SDI Co., Ltd.; Samsung SDI*
21  *(Malaysia) SDN. BHD.; Samsung SDI Mexico S.A.*
    *DE C.V.; Samsung SDI Brasil Ltda.; Shenzen*
22  *Samsung SDI Co., Ltd. and Tianjin Samsung SDI*
23  *Co., Ltd.*

24  GIBSON, DUNN & CRUTCHER LLP

25  By: */s/ Rachel S. Brass*_____
    JOEL S. SANDERS (SBN 107234)
26  jsanders@gibsondunn.com
    RACHEL S. BRASS (SBN 219301)
27  rbrass@gibsondunn.com
    AUSTIN V. SCHWING (SBN 211696)
28  aschwing@gig@gibsondunn.com

30

---

**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, California 94105
Tel: (415) 393-8200
Fax: (415) 393-8306

*Attorneys for Defendant Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.*

FAEGRE BAKER DANIELS LLP

By: */s/ Kathy L. Osborn*

Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Email: jeff.roberts@FaegreBD.com
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: (303) 607-3500
Facsimile: (303) 607-3600

Stephen M. Judge (*pro hac vice*)
Email: steve.judge@FaegreBd.com
Faegre Baker Daniels LLP
202 S. Michigan Street, Suite 1400
South Bend, IN 46601
Telephone: (574) 234-4149
Facsimile: (574) 239-1900

*Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.*

By:  */s/ John M. Taladay*
John M. Taladay (*pro hac vice*)
Joseph Ostoyich (*pro hac vice*)

Erik T. Koons (*pro hac vice*)
Charles M. Malaise (*pro hac vice*)
BAKER BOTTS LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
Email: john.taladay@bakerbotts.com
Email: joseph.ostoyich@bakerbotts.com
Email: erik.koons@bakerbotts.com
Email: charles.malaise@bakerbotts.com

Jon V. Swenson (SBN 233054)
BAKER BOTTS LLP
620 Hansen Way
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
Email: jon.swenson@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips N.V.,*
*Philips Electronics North America Corporation,*
*Philips Taiwan Limited, and Philips do Brasil Ltda.*