GIBSON, DUNN & CRUTCHER LLP
JOEL S. SANDERS, SBN 107234
JSanders@gibsondunn.com
RACHEL S. BRASS, SBN 219301
RBrass@gibsondunn.com
AUSTIN SCHWING, SBN 211696
ASchwing@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, California 94105-2933
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendants
CHUNGHWA PICTURE TUBES, LTD. and
CHUNGHWA PICTURE TUBES (MALAYSIA)
SDN. BHD.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTI-TRUST LITIGATION | Master File No. 3:07-CV-5944 SC<br>MDL No. 1917 |
| This Document Relates To: | |
| *ViewSonic Corporation v. Chunghwa Picture Tubes, Ltd., et al.*, No. 3:14-cv-02510-SC | **DEFENDANTS CHUNGHWA PICTURE TUBES, LTD. AND CHUNGHWA PICTURE TUBES (MALAYSIA) SDN. BHD.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF STANDING AS TO VIEWSONIC CORPORATION** |
| | Date:          February 6, 2015<br>Time:          10:00 a.m.<br>Judge:        Hon. Samuel Conti |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT ......................................................................................................2

A.      ViewSonic Does Not Contest That Judgment For Chunghwa Is
        Appropriate As To TUS. ...........................................................................2

B.      ViewSonic Cannot Satisfy The *Royal Printing* Exception Because
        Chunghwa Does Not Own Or Control TCO Or Jean...............................2

        1.      The Relevant Period Is The Time During Which TCO Or Jean Could
                Bring Suit. ....................................................................................2

        2.      Chunghwa Does Not Own TCO Or Jean. ......................................4

C.      ViewSonic's Attempt To Avoid Summary Judgment By Reversing The
        Exception Fails...........................................................................................4

        1.      The *Royal Printing* Exception Does Not Apply To A Direct
                Purchaser's  Ownership Or Control Over A Conspirator. .............5

        2.      TCO Does Not Own Or Control Chunghwa. ..................................7

                a.      TCO Held A Minority Interest In Chunghwa During the Relevant
                        Period. .................................................................................7

                b.      Whether TCO "Controlled" Chunghwa is Wholly Irrelevant..............8

                c.      In Any Event, TCO Did Not Control Chunghwa...............................8

                        (i)      "Family Enterprise" ...................................................10

                        (ii)     "Interlocking Directorates" ......................................11

                        (iii)    "Intertwined Economic Interests"...........................12

                d.      The Possibility That TCO Would Sue Chunghwa Is Irrelevant.........13

        3.      Jean Does Not Own Or Control Chunghwa. ..................................14

D.      The Court Should Not Consider Evidence ViewSonic Failed To Timely
        Disclose When Considering This Motion. ................................................15

III.    CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re ATM Fee Antitrust Litig.*,
  686 F.3d 741 (9th Cir. 2012) ......................................................................... passim

*In re Brand Name Prescription Drugs Antitrust Litigation*,
  123 F.3d 599 (7th Cir. 1997) ............................................................................. 6, 9

*Collins v. Int'l Dairy Queen*,
  59 F. Supp. 2d 1305 (M.D. Ga. 1999) ................................................................... 13

*Costco Wholesale Corp. v. AU Optronics Corp.*,
  No. 13-cv-1207, 2014 WL 4540068 (W.D. Wash. Sept. 11, 2014) ............................ 3, 7

*Costco Wholesale Corp. v. AU Optronics Corp.*,
  No. 13-cv-1207, 2014 WL 4674390 (W.D. Wash. Sept. 18, 2014) ................................. 7

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
  424 F.3d 363 (3d Cir. 2005) .................................................................................. 10

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) ......................................................................................... 1, 14

*Image Tech. Serv., Inc. v. Eastman Kodak*,
  903 F.2d 612 (9th Cir. 1990) ................................................................................... 2

*In re Microsoft Corp. Antitrust Litig.*
  127 F. Supp. 2d 702 (D. Md. 2001) ........................................................................ 14

*In re New Motor Vehicles Canadian Exp.*,
  307 F. Supp. 2d 136 (D. Me. 2004) ........................................................................ 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 07-md-1827, 2012 WL 7062366 (N.D. Cal. Dec. 26, 2012) ........................... passim

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. 07-md-1827, 2012 WL 5869588 (N.D. Cal. Nov. 19, 2012) ................................... 6

*Jewish Hosp. Ass'n v. Stewart Mech. Enters., Inc.*,
  628 F.2d 971 (6th Cir.1980) ................................................................................... 10

*Royal Printing Co. v. Kimberly Clark Corp.*,
  621 F.2d 323 (9th Cir. 1980) ............................................................................ passim

*Sun Microsystems, Inc. v. Hynix Semiconductor Inc.*,
  608 F. Supp. 2d 1166 (N.D. Cal. 2009) ................................................................... 10

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ................................................................................ 16

## Rules

Fed. R. Civ. Proc. 56(c)(1)(A) ............................................................................... 12

Fed. R. Civ. Proc. 37(c) ......................................................................................... 15

iii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

ViewSonic Corporation ("ViewSonic") never purchased cathode ray tubes ("CRTs") from Chunghwa Picture Tubes, Ltd. or Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. (collectively "Chunghwa"), and therefore its Sherman Act claim is foreclosed by *Illinois Brick*'s bar on indirect purchaser suits. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 734-35 (1977).  While ViewSonic argues that its claims survive under the *Royal Printing* exception, which allows an indirect purchaser to bring a Sherman Act claim when it purchased the price-fixed product from an entity owned or controlled by a price-fixing conspirator, that exception does not apply here because Chunghwa did not own or control either Tatung Company ("TCO") or Jean Co., Ltd. ("Jean"), the companies from which ViewSonic purchased finished products.  *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980).  Indeed, ViewSonic does not dispute that Chunghwa does not own or control these companies.  Thus, the *Royal Printing* exception does not apply.

Faced with these facts, ViewSonic tries to turn the *Royal Printing* exception upside down, by arguing that it applies because TCO and Jean each allegedly own or control Chunghwa.  That argument depends on extending the exception to the situation where a direct purchaser *owns or controls a conspirator*, the exact opposite of the scenario addressed in *Royal Printing*.  That theory cannot be squared with the express language of *Royal Printing* and its progeny or the rationale behind the exception.  But even if the exception could so apply, and it cannot, ViewSonic's claim still fails because neither TCO nor Jean own or control Chunghwa.  All three companies are separate, publicly held companies, each managed by its own board of directors and with obligations to its own shareholders.

As addressed below, none of the vague arguments that ViewSonic presents in its Opposition about family connections or similar board members raises a genuine issue of material fact as to ownership or control.  Notably lacking is any evidence that the Lin family owns a majority of shares of any of the companies, controls their boards of directors, or in any other way controls the companies.  No court has ever applied the *Royal Printing* exception to facts similar to these.  Accordingly, Chunghwa's motion for summary judgment ("Motion") should be granted as to ViewSonic's Sherman Act claim to the extent it is based on purchases from TCO and Jean.  To the extent ViewSonic

seeks damages based on purchases from Tatung Company of America, Inc. ("TUS"), Chunghwa's Motion is unopposed and should be granted.

## II.   ARGUMENT

### A.   ViewSonic Does Not Contest That Judgment For Chunghwa Is Appropriate As To TUS.

Chunghwa explained in its Motion that ViewSonic's claim relating to TUS is not subject to the *Royal Printing* exception because Chunghwa does not own or control TUS.  Mot. 2, 6-7, 11-12. ViewSonic's Opposition does not dispute that it lacks standing to bring a claim based on purchases from TUS.  *See* Opp'n 1 (referencing alleged overcharges of monitors purchased from "Tatung Company ('Tatung') and Jean Co. Ltd. ('Jean')").  Accordingly, summary judgment is appropriate.  *See Image Tech. Serv., Inc. v. Eastman Kodak Co.*, 903 F.2d 612, 615 n.1 (9th Cir. 1990) (failure to raise an issue in opposition to a defendant's motion for summary judgment waived the issue).

### B.   ViewSonic Cannot Satisfy The *Royal Printing* Exception Because Chunghwa Does Not Own Or Control TCO Or Jean.

Summary judgment is appropriate as to ViewSonic's claim based on purchases from TCO and Jean, because ViewSonic's claim does not fall within the *Royal Printing* exception.

#### 1.   The Relevant Period Is The Time During Which TCO Or Jean Could Bring Suit.

In determining whether an ownership or control relationship exists under *Royal Printing*, the relevant time period is the period after an alleged conspiracy came to light.  This is because the Ninth Circuit explained in *Royal Printing* that the purpose of the exception is to vindicate private antitrust enforcement where the direct purchaser *cannot bring litigation itself* due to ownership or control by a conspirator.  *See Royal Printing*, 621 F.2d at 326; *see also In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 758 n.10 (9th Cir. 2012) ("[T]he concern in *Royal Printing* of a controlling party *prohibiting the direct purchaser from suing* is not present here.") (emphasis added).

Here, by plaintiff's own lights, the relevant time period is after November 25, 2007, as View-Sonic alleges that defendants concealed the alleged conspiracy until at least that date.  Mot. 5.[1] ViewSonic does not dispute that this period is relevant, but asserts without explanation that the Court

---

[1]   The Opposition incorrectly states that "Chunghwa fails to . . . explain how or why it chose the November start date."  Opp'n 16.

1   should expand its inquiry to the alleged conspiracy period. Opp'n 16 ("ownership or control at any

2   point during a conspiracy is sufficient"). That makes no sense. Under ViewSonic's approach, if this

3   Court finds ownership or control in 1995—an insignificant fraction of the alleged conspiracy period,

4   and 12 years before TCO or Jean could possibly have brought suit, that would be enough. Such a

5   construction is inconsistent with the policy of *Illinois Brick* and the Supreme Court's instruction that

6   exceptions to the *Illinois Brick* bar on indirect purchaser suits should be construed narrowly. *See In*

7   *re ATM*, 686 F.3d at 749 (noting the Supreme Court's "reluctance in carving out exceptions to the

8   *Illinois Brick* rule" and that the existing exceptions are "limited").

9          ViewSonic cites to one district court case addressing the timing issue, *Costco Wholesale*

10  *Corp. v. AU Optronics Corp.*, No. 13-cv-1207, 2014 WL 4540068 (W.D. Wash. Sept. 11, 2014).

11  Opp'n 16. This case does not support ViewSonic's argument, nor does it reject the approach pro-

12  posed by Chunghwa, as ViewSonic contends. *Id.* In *Costco*, defendants argued a "date-of-suit rule"

13  under which the *only* relevant time for the ownership/control inquiry is "the day the plaintiff sues."

14  *Costco Wholesale Corp.*, 2014 WL 4540068 at *3. The court rejected this narrow formulation, ex-

15  plaining that the MDL court in the *TFT-LCD* litigation had never espoused a "one-size-fits-all timing

16  rule" because "[t]he timing of control is surely relevant in some cases." *Id.* at *6. While the court in

17  *Costco* noted the potential concern that companies could avoid liability by divesting subsidiaries after

18  the conspiracy, there is no evidence here that TCO's multi-year gradual reduction of its ownership

19  interest in Chunghwa was motivated by any improper purpose. Indeed, TCO's ownership interest

20  steadily and consistently decreased every year from at least 1995 through 2004, indicating a long-

21  term strategy that began more than a dozen years before lawsuits were even a possibility. *See* Mot.

22  11 (TCO's ownership decreased from 56.83% in 1995 to below 15% in 2004); Opp'n 9-10 (chart

23  showing TCO's declining ownership from 1995 through 2013).[2]

24         Under these circumstances, and based on the policy underlying the *Royal Printing* exception,

25`

---

26  [2]   In the other district court case cited by ViewSonic, the court considered ownership and control
         during the conspiracy period, but did not discuss or state any rule or rationale as to the timing is-
27       sue. Opp'n 17 (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 1827, 2012 WL
         7062366, at *4-5 (N.D. Cal. Dec. 26, 2012)). Thus, that case sheds no light on this issue.
28

---

it is logical to consider evidence of control during the period in which it would have been possible for TCO or Jean to bring suit against Chunghwa.  The relevant period is after November 25, 2007.

### 2.    Chunghwa Does Not Own TCO Or Jean.

The *Royal Printing* exception does not apply to ViewSonic's claim because the undisputed evidence shows that Chunghwa did not own or control TCO or Jean.  TCO is a publicly held company managed by its own board of directors.  Mot. 5-6.  ViewSonic does not dispute that Chunghwa did not hold a majority of TCO's shares, did not control TCO's board, and did not involve itself in TCO's day-to-day business decisions.  *Id.* at 6.  Nor does ViewSonic dispute that Chunghwa's very few representatives on TCO's board constituted far less than a majority.  *Id.* at 6, 6 n.2 (two Chunghwa directors of a nine- to thirteen-member board during the relevant period, and never a majority).  The undisputed evidence also shows that Chunghwa does not own or control Jean, also a publicly held corporation managed by its own board of directors.  *Id.* at 6-7 & 11.  Chunghwa has never owned any shares of Jean, and no Chunghwa directors or officers have ever concurrently held a position with Jean.[3]  *Id.* at 7.

In its Opposition, ViewSonic does not even attempt to argue, let alone present any evidence, that Chunghwa owned TCO or Jean, or that, through minority representation on the board of directors, financial arrangements, or otherwise, Chunghwa was somehow able to control TCO or Jean.  Thus, the *Royal Printing* exception does not apply and summary judgment is appropriate.

### C.    ViewSonic's Attempt To Avoid Summary Judgment By Reversing The Exception Fails.

Unable to meet the *Royal Printing* exception, ViewSonic argues that the exception should also apply to the reverse situation of a direct purchaser owning or controlling an alleged conspirator, and that the exception applies here because TCO and Jean supposedly own or control Chunghwa.  Opp'n 12-16.  This argument fails because ViewSonic's reading of the *Royal Printing* exception is incorrect, and because the undisputed facts demonstrate that neither TCO nor Jean owns or controls Chunghwa.

---

[3]  These facts regarding TCO and Jean are true for the relevant period, as well as the alleged conspiracy period.  Mot. 7.

1.   **The *Royal Printing* Exception Does Not Apply To A Direct Purchaser's Ownership Or Control Over A Conspirator.**

As explained in the Motion, *Royal Printing* carved out a "limited exception[]" to *Illinois Brick*'s ban on indirect purchaser antitrust suits.  *In re ATM*, 686 F.3d at 749.  The Ninth Circuit in *Royal Printing* expressly limited the exception to situations where a conspirator owns or controls the direct purchaser.  *E.g.*, *Royal Printing*, 621 F.2d at 326 ("*Illinois Brick* does not bar an indirect purchaser's suit where the *direct purchaser is a division or subsidiary of a co-conspirator*.") (emphasis added); *In re ATM*, 686 F.3d at 749 (stating that the exception applies when "a conspiring seller *owns or controls the direct purchaser*") (emphasis added).

*Royal Printing* and cases relying on it have consistently framed the exception in this way because the exception is meant to address the situation where a conspirator that owns or controls a direct purchaser will forbid it from suing: "*Royal Printing* created an exception when parental control existed, because applying *Illinois Brick* would eliminate the threat of private enforcement, and close off every avenue for private enforcement.  The co-conspirator parent will forbid its subsidiary or division to bring a lawsuit that would only reveal the parent[']s own participation in the conspiracy." *In re ATM*, 686 F.3d at 756 (internal citations and quotation marks omitted); *see also id.* at 758 n.10 ("[T]he concern in *Royal Printing* of a controlling party prohibiting the direct purchaser from suing is not present here.").  In creating the exception, the *Royal Printing* court reasoned that in "the situation where the direct purchaser is controlled by a co-conspirator . . . . particularly where the alternative would be to virtually immunize price-fixed transactions from private liability," the Supreme Court would "find the practical risk of multiple liability so small as to be 'acceptable.'"  *Royal Printing*, 621 F.2d at 327 n.8.

The Court should decline to expand the ownership/control exception as ViewSonic suggests.  The rationale underlying the exception—to vindicate antitrust rights where they otherwise obviously will not be vindicated because the conspirator owns or controls the direct purchaser with standing to sue—would not apply to a direct purchaser that owns or controls a conspirator.  Here, TCO and Jean can seek to vindicate their rights by seeking redress from Chunghwa or any of the other alleged con-

1    spirators. Even if Chunghwa were owned or controlled by TCO and Jean, which it is not, Chunghwa

2    could not prevent those companies from bringing suit.

3          ViewSonic incorrectly states that *In re ATM* "held that the ownership/control exception ap-

4    plies where the direct purchaser owns or controls the seller/conspirator." Opp'n 13. There was no

5    such holding in that case. Rather, ViewSonic's argument rests solely on the Ninth Circuit's applica-

6    tion of the *Royal Printing* exception to a complicated set of facts far different than in this case. *See*

7    Mot. 10 (depending on the specific ATM transaction, the bank defendants were both the upstream

8    sellers and the downstream purchasers of the price-fixed fees). ViewSonic's understanding of *In re*

9    *ATM* cannot be reconciled with the Ninth Circuit's consistent expression of the exception throughout

10   the decision as applying to the situation where a conspirator owns or controls the direct purchaser, not

11   the other way around. *See, e.g., In re ATM*, 686 F.3d at 749 ("[I]ndirect purchasers may sue when

12   customers of the direct purchaser own or control the direct purchaser, or when a conspiring seller

13   owns or controls the direct purchaser.") (internal citations omitted); *id.* at 757 ("We decline to extend

14   the exception noted in *Royal Printing* and *Freeman* to situations where *the seller does not own or*

15   *control* the direct purchasers. . . .") (emphasis added).

16         The only decision in which a court has expressly held that the *Royal Printing* exception ap-

17   plies to the situation where a direct purchaser owns or controls a conspirator is *In re TFT-LCD (Flat*

18   *Panel) Antitrust Litig.*, No. 07-md-1827, 2012 WL 5869588, at *3 (N.D. Cal. Nov. 19, 2012). As

19   explained in Chunghwa's Motion, that case was wrongly decided. Mot. 10. And no other court has

20   explicitly addressed the issue and reached the same conclusion.[4]

21         ViewSonic points to two other district court cases that cite to the *TFT-LCD* decision, but nei-

22   ther of those cases expressly addresses the issue before this Court. Opp'n 14-16. The first case is

23   another decision in the *TFT-LCD* litigation, where the court simply followed its earlier decision and

24   applied the exception to a direct purchaser's ownership/control over an alleged conspirator without

25`

---

26   [4] ViewSonic also points to a snippet of dicta from an out-of-circuit decision, *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 605 (7th Cir. 1997), but that case contains no
27   discussion or analysis of whether the exception applies to a direct purchaser's ownership or control over a conspirator. Opp'n 16 n.60. It simply notes in passing that the court "suppose[d]" the
28   exception *might* apply where the customer owned a conspirator, something not before the court.

any discussion of the issue.  *In re TFT-LCD*, 2012 WL 7062366, at *4-5 (N.D. Cal. Dec. 26, 2012).

The second case, also in the *TFT-LCD* litigation, was issued after the MDL court (Judge Illston) re-

turned the case to the district in which it was originally filed (the Western District of Washington) for

trial.  *Costco Wholesale Corp. v. AU Optronics Corp.*, No. 13-cv-1207, 2014 WL 4674390 (W.D.

Wash. Sept. 18, 2014).  There, the court did not apply the *Royal Printing* exception, which had al-

ready been addressed by Judge Illston; rather, the court was ruling on a motion *in limine* addressing

defendants' attempt to introduce evidence intended to minimize upstream pass-through, an argument

foreclosed by *Royal Printing*.  *Id.* at *2.  These cases are therefore not instructive on this issue.[5]

> **2.    TCO Does Not Own Or Control Chunghwa.**

As described above, the *Royal Printing* exception does not apply when a direct purchaser

owns or controls a conspirator.  ViewSonic must show that Chunghwa, the alleged conspirator,

owned or controlled TCO, and there are no facts to support that conclusion.  But even if the exception

could be reversed as ViewSonic argues, TCO did not own or control Chunghwa.

> **a.    TCO Held A Minority Interest In Chunghwa During the Relevant Period.**

It is undisputed that TCO has not owned a majority of Chunghwa's shares since the alleged

CRT conspiracy became public.  Indeed, TCO held far less than a majority—at most 11.22%—of

Chunghwa's shares.  Mot. 10; Opp'n 9-10.  Even if the Court were also to count the shares of

Chunghwa owned by one of TCO's subsidiaries, Chunghwa Electronics Development Co. ("CED"),

they still held far less than a majority of Chunghwa's shares during the relevant period—26.9% in

2007, and decreasing to 15.92% by 2013, the year before ViewSonic filed suit.  Opp'n 9-10.[6]  This

---

[5]  The court did briefly address the *Royal Printing* issue in a separate decision a week earlier.  *Cost-co Wholesale Corp. v. AU Optronics Corp.*, No. 13-cv-1207, 2014 WL 4540068 (W.D. Wash. Sept. 11, 2014).  In a footnote, the Court simply acknowledged the *TFT-LCD* court's ruling on the issue: "Among the MDL court's rulings was that the control exception applies not only when a conspirator controls the entity from which a plaintiff purchased price-fixed goods, but also when that entity controls a conspirator.  Nov. 19, 2012 MDL Ord. (Dkt. #297) at 5.  Defendants believe the MDL's ruling was error, but they do not challenge it in this motion."  *Id.* at *2 n.2. This simple recitation of what previously was decided in *TFT-LCD* adds nothing.

[6]  Combining the direct and indirect ownership further attenuates any ability of TCO to "own" or "control" Chunghwa and would once again expand an exception to *Illinois Brick*—against the Supreme Court's express instruction.  *See In re ATM*, 686 F.3d at 744 & 757.

---

1  disposes of the ownership issue.[7]

2         **b.    Whether TCO "Controlled" Chunghwa is Wholly Irrelevant.**

3         Unable to establish that TCO owned a majority of Chunghwa, ViewSonic devotes much at-

4  tention to whether TCO nonetheless "controls" Chunghwa.  That question, however, is logically ir-

5  relevant to the *Royal Printing* analysis.  Even if ownership of a defendant by the direct customer were

6  relevant under *Royal Printing*, the separate question of "control" in the absence of majority owner-

7  ship makes sense only if the defendant could control the direct customer.  Where, as here, the argu-

8  ment is that the direct customer controls the defendant, *Royal Printing* is not implicated because the

9  defendant has no ability to prevent the direct customer from seeking redress.  *See Royal Printing*, 621

10  F.2d at 326.  In other words, "control" in the absence of ownership logically matters only in the sce-

11  nario that case discusses, and not the expansive alternative ViewSonic presses here.

12         **c.    In Any Event, TCO Did Not Control Chunghwa.**

13         Although not relevant, the undisputed evidence shows that TCO did not control Chunghwa.

14  ViewSonic argues that TCO's minority stock ownership together with other "indicia" is sufficient to

15  establish control over Chunghwa, Opp'n 19, but none of ViewSonic's purported evidence or conclu-

16  sory statements, alone or taken together, is sufficient to raise a genuine issue of material fact.

17         Importantly, ViewSonic does not dispute that Chunghwa and TCO, each publicly held corpo-

18  rations, are run by their own boards of directors.  Mot. 11; *see also* Opp'n Ex. 5 (Chunghwa's Corpo-

19  rate Governance document, describing the company's management by the board of directors); *id.* Ex.

20  2 (TCO's 2014 Annual Meeting of Shareholders Handbook (same)).  As directors of publicly held

21  corporations, Chunghwa's and TCO's boards of directors have fiduciary obligations to their share-

22  holders and must manage the companies in the interests of their respective shareholders.  Mot. 6 &

23  11; *see also* Declaration of Austin V. Schwing ("Schwing Decl."), Ex. A (Taiwan Company Act, Art.

24  23).  It is a fundamental principle of corporate law that corporations cannot be managed for the bene-

25`  fit of a minority of shareholders or for particular directors or officers.  That is no different in Taiwan

26  _____

27  [7]  Even if one considers ownership during the alleged conspiracy period, not since 2002 have TCO
      and CED combined held 50% of Chunghwa's shares and not since 1996 has TCO had a majority
      position.  Opp'n 9, 18.  This falls far short of satisfying the *Royal Printing* requirements.

28

than in the U.S.  *See* Schwing Decl. Ex. A.  And it is the entire board of directors that has the power and responsibility to run the corporation and make decisions, not just the Chairman.  *See* Opp'n Ex. 5 (Chunghwa's Corporate Governance document, stating that Chunghwa's board of directors "[is] the ultimate body responsible for the company's management"); *id.* Ex. 2 (TCO's 2014 Annual Meeting of Shareholders Handbook, describing management by the company's board of directors).  Further, the evidence shows that TCO and Chunghwa had independent directors on their boards, the boards of directors were elected by the shareholders, and the companies had corporate governance and conflict of interest policies in place.[8]  And ViewSonic does not dispute that TCO representatives were a minority of Chunghwa's board for most of the relevant period—2009 to the present.  Mot. 11.[9]

"A plaintiff who alleges domination of a board of directors and/or control of its affairs must prove it."  *In re ATM Fee*, 686 F.3d at 757.  While some courts have considered factors beyond majority stock ownership or majority board representation as relevant to the inquiry, courts have also emphasized that the exception must be narrowly construed and requires a showing of "such functional economic or other unity between the direct purchaser and . . . the defendant . . . that there effectively has been only one sale."[10]  *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 371-72 (3d Cir. 2005); *Jewish Hosp. Ass'n v. Stewart Mech. Enters., Inc.*, 628 F.2d 971, 975 (6th

---

[8]  *See, e.g.*, Opp'n Ex. 2, at 20 (describing involvement of TCO's independent directors in "enforcement of corporate governance"); *id.* at 16 (election of TCO's directors by shareholders); *id.* at 69 (requiring at least three independent directors on TCO's board of directors); Opp'n Ex. 5 (election of Chunghwa's directors by shareholders); *id.* (requiring written audit reports to be delivered to Chunghwa's Chairman, independent directors, and supervisors); *id.* (requiring recusal from any vote on an item in which an "interested-party relationship" exists).

[9]  ViewSonic's chart of "Interlocking Directorates" in the Opposition confirms this fact when viewed in combination with Chunghwa's annual reports, which provide the number of directors on the board in each year.  Opp'n Exs. 12-24.  And that chart is wrong as to Chuang-Yin Yang and Wen-Chieh Peng, whom ViewSonic identifies as interlocking directors, because they served as *directors* of Chunghwa, and concurrently as *officers* of TCO.  *See* Ex. 31 (TCO 2006 Annual Report, not listing Chuang-Yin Yang as director); *id.* Ex. 38 (TCO 2013 Annual Report, not listing Wen-Chieh Peng as a director).

[10]  ViewSonic recites a list of factors that courts have considered in the control inquiry, but none of the cases cited by ViewSonic held that any of these factors, alone or together, are "dispositive."  Opp'n 17-18 (citing *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d at 605-606; *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1180 (N.D. Cal. 2009); *In re TFT-LCD*, 2012 WL 7062366, at *4-5).

---

1   Cir.1980) (same); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 608 F. Supp. 2d 1166, 1180

2   (N.D. Cal. 2009) (same); *see also In re ATM*, 686 F.3d at 757 (control means to "exercise restraint, or

3   direction over; dominate, regulate or command" or to have "the power or authority to guide or man-

4   age").   Neither a minority interest in a publicly held corporation nor minority representation on a

5   board of directors comes close to the degree of control required by *Royal Printing.*

6                                    **(i)       "Family Enterprise"**

7           Given these facts, ViewSonic is forced to make its main argument that TCO and Chunghwa

8   are part of a "family enterprise" founded and allegedly controlled by the Lin family.  Opp'n 2-3.  In

9   support of that theory, ViewSonic cites voluminous documents to show that T.S. Lin, Chairman of

10  TCO from 1942 to 2006, founded Chunghwa in 1971, and that Lin family members have held leader-

11  ship positions at both companies.  *See, e.g.*, *id.* at 3-8.  But mere family connections or influence is

12  not the test.  ViewSonic cites no cases where the *Royal Printing* exception was met in such circum-

13  stances, or even where such facts were found relevant.  That is because the exception requires that a

14  conspirator "own" or "control" the direct purchaser.  *Royal Printing*, 621 F.2d at 326.

15          ViewSonic baldly asserts that TCO and Chunghwa are not in fact "independent entities oper-

16  ating at arm's length."  Opp'n 2.  But it provides *no evidence* that the Lin family controls either

17  Chunghwa or TCO, or that the Lin family can control one company through the other.  There is no

18  evidence that Lin family members own a majority of shares of either company, constitute a majority

19  of TCO's or Chunghwa's board of directors, or have the ability to direct either company's litigation

20  decisions.  For example, ViewSonic argues that the current Chunghwa Chairman and his wife, who

21  are part of the Lin family, have "a significant financial interest" in TCO due to their shareholdings,

22  but those shareholdings total less than 1% (0.51%).  *Id.* Ex. 38, at 11.  And ViewSonic does not even

23  attempt to provide specific shareholdings of any other Lin family members, relying on rhetoric alone.

24          What little evidence that ViewSonic does present relating to the Lin family is not indicative of

25` control.  ViewSonic attempts to make much of the fact that the Chairmen of TCO's and Chunghwa's

26  boards have all been members of the Lin family.  ViewSonic contends that "[a]s Chairmen, the Lins

27  wield significant power over the overall strategic directions of Tatung, Chunghwa, and Jean" and are

28  "ultimately responsible for the strategic decision of whether to permit Tatung to initiate a significant

1    lawsuit." *Id.* at 5, 20.  In support of this statement, ViewSonic cites corporate governance documents

2    noting the duties of each company's Chairmen, and deposition testimony that former Chunghwa

3    Chairman C.Y. Lin had been given "great powers" in managing Chunghwa—an unsurprising fact that

4    has no bearing on the issues raised here. *Id.* at 5 n.15.  And while ViewSonic speculates that "the fact

5    that T.S. Lin and his sons have managed to retain the Chairmanship each and every single time that

6    the Chairmanship comes up for a vote, is further proof that the Lin family controls both companies,"

7    *id.* at 21, this conclusory statement is not evidence of control.  As ViewSonic admits, TCO's Chair-

8    man is elected by the board of directors. *Id.* at 21.  There is simply no evidence that the Lin family

9    controls that board.  Thus, this evidence is insufficient to create a genuine issue of fact as to control.

                              **(ii)    "Interlocking Directorates"**

11         ViewSonic also points to "interlocking directorates" between TCO and Chunghwa, including

12   some Lin family members, as indicative of control.  Opp'n 20-21.  But the fact that the companies

13   have a few directors in common, without more, is not evidence that one company controls the other

14   within the meaning of *Royal Printing*.  More importantly, it is not evidence that TCO's board manag-

15   es that company to protect the interests of Chunghwa rather than TCO.  Chunghwa could not require

16   TCO to do so through its small number of overlapping directors.  As explained above, Chunghwa had

17   very few representatives on TCO's board, and far less than a majority.  Mot. 6, 6 n.2.  And there is no

18   evidence that this minority was somehow able to control the board.  *In re ATM Fee*, 686 F.3d at 757

19   ("A plaintiff who alleges domination of a board of directors and/or control of its affairs must prove

20   it."); *In re TFT-LCD*, 2014 WL 1568870, at *3 (N.D. Cal. Apr. 18, 2014) (rejecting control argument

21   based on an "interlocking directorship" where plaintiff failed to allege the interlocking director "con-

22   trolled the . . . boards of directors" or allege "the size or composition of the . . . boards of directors").

23         Further, even though TCO's control of Chunghwa is irrelevant to the *Royal Printing* inquiry,

24   there is also no evidence that TCO controlled Chunghwa through its overlapping directors on

25`  Chunghwa's board.  It is undisputed that TCO representatives were a minority of Chunghwa's board

26   for most of the relevant period—2009 to the present.  Mot. 11.  And it is undisputed that Chunghwa

27   is independently managed by its board and officers, and that TCO is not involved in the day-to-day

28   operation of Chunghwa.  *Id.*

1          (iii)     "**Intertwined Economic Interests**"

2          ViewSonic also argues that TCO and Chunghwa's alleged "intertwined economic interests"

3   are evidence of control.  Opp'n 19.  But as explained above, there is no evidence that Chunghwa had

4   the ability to control TCO's decisions, much less its litigation decisions.  Mot. 6.  And to the extent

5   the Court finds TCO's control over Chunghwa relevant, which it is not, there is no evidence that TCO

6   is able to set Chunghwa's prices, or that TCO controls Chunghwa through financial arrangements or

7   other method of control.

8          ViewSonic points to generic statements made in TCO's annual reports that the companies are

9   "affiliated" and deposition testimony that Chunghwa is effectively "a subsidiary" of TCO.  Opp'n 8,

10  19.  ViewSonic also argues that the companies previously shared a business address and shared or

11  currently share factory locations.[11]  *Id.* at 8.  But mere affiliation and shared interests are not suffi-

12  cient.  None of these relationships, without more, shows that TCO "'exercise[d] restraint or direction

13  over; dominate[d], regulate[d], or command[ed],' or to ha[d] 'the power or authority to guide or man-

14  age'" Chunghwa—the definition of control under *Royal Printing*.  *See In re ATM*, 686 F.3d at 757.

15         ViewSonic also places great emphasis on a one-sentence disclosure in TCO's 2014 Annual

16  Meeting of Shareholders Handbook stating that "in order to enhance Tatung group's vertical integra-

17  tion of industries and group's competitiveness, [TCO] arranged Chunghwa Picture Tubes Co. Ltd. to

18  purchase the shares of Giantplus Technology Co. Ltd."  Opp'n 19, Ex. 2.  That TCO "arranged" for

19  this transaction is not evidence of control.  Rather, this language is indicative of a plan or collabora-

20  tion between the companies which was beneficial to both.  *In re ATM*, 686 F.3d at 758 ("input on pol-

21  icies and pricing issues" or "[t]he ability to offer ideas [to the corporation] cannot be construed as an

22  ability to manage the affairs [of the corporation]"); *In re New Motor Vehicles Canadian Exp. Anti-*

23  *trust Litig.*, 307 F. Supp. 2d 136, 143 (D. Me. 2004) (allegations that car dealers "make financial

24  agreements with manufacturers to help buy vehicles or establish dealerships, that manufacturers force

25`
_____

26  [11]  ViewSonic cites a "Tatung Corporate Sustainability Report" as evidence of shared factory loca-
       tions.  Opp'n at 8 n.26, 20, n.66.  This report was not submitted as an exhibit to the Opposition,
27     and cannot be considered as part of the summary judgment record.  Fed. R. Civ. P. 56(c)(1)(A).
       ViewSonic also cites a Chunghwa 2013 annual report attached as evidence of shared factory loca-
28     tions, but that exhibit does not mention shared factory locations.  Opp'n Ex. 24.

1   chargeback penalties on dealers, [and] that vehicles are priced on the basis of manufacturers' sugges-

2   tions" did not satisfy the control exception); *Collins v. Int'l Dairy Queen*, 59 F. Supp. 2d 1305, 1310-

3   11 (M.D. Ga. 1999) (Dairy Queen's extension of large amounts of credit to its authorized ware-

4   houses, reservation of the right to audit the warehouses' books, and requirement that Dairy Queen

5   approve any sale of the company owning the warehouses did not satisfy the control exception).

6       ViewSonic also points to Chunghwa's 2006 and 2007 annual reports, which list TCO in the

7   "Transactions between shareholders" section as a "Corporate shareholder with the ability to control."

8   Mot. 10.  But Chunghwa's English versions of these annual reports use very different language, de-

9   scribing TCO as "The Company's major stockholder" in the 2006 annual report and "The Company's

10  major stockholder represented on the Company's board of directors" in the 2007 annual report; they

11  do not mention "control."  Decl. of Wang Chih Cheng in Supp. of Mot. for Summ. J., Exs. A & B.  In

12  any event, this isolated statement in the Chinese version (even assuming it is correctly translated),

13  with no explanation of what "control" means in this context, falls short of establishing the requisite

14  level of control as that term is used in *Royal Printing*.  *E.g.*, *Royal Printing*, 621 F.2d at 326 ("Con-

15  trol" means "parental control" over "litigation decisions").

16          **d.      The Possibility That TCO Would Sue Chunghwa Is Irrelevant.**

17      Finally, ViewSonic contends that the *Royal Printing* exception applies because there is "no

18  realistic possibility" that TCO would ever sue Chunghwa.  Opp'n 22.  ViewSonic argues that TCO

19  has never filed a lawsuit against Chunghwa or threatened to sue, that Chunghwa and TCO have used

20  the same counsel, and that Chunghwa and TCO have the same Chairman.  *Id.*  ViewSonic also sug-

21  gests that TCO would never sue "a fellow member of the 'Lin family enterprise.'"  *Id.* at 20.

22      ViewSonic's speculation about the likelihood of TCO suing Chunghwa is irrelevant and in-

23  sufficient to overcome the *Illinois Brick* bar, absent evidence of ownership or control.  The Ninth

24  Circuit has clarified that the "no realistic possibility" inquiry is not a separate exception to the *Illinois*

25` *Brick* rule.  *In re ATM*, 686 F.3d at 756 ("*Freeman* outlines that, whether a realistic possibility of suit

26  exists, depends on the existence of ownership or control between the direct purchaser and the sell-

27  er."); *see also In re TFT-LCD*, 2012 WL 7062366, at *6 (N.D. Cal. Dec. 26, 2012) ("Because Cost-

28  co's argument relies solely on the unlikelihood that [the direct purchasers] would sue AUO or a co-

1    conspirator, without providing evidence of an ownership or control relationship between these enti-

2    ties, the Court grants summary judgment.").

3          In any event, all this shows is that the two Taiwanese companies have resolved disputes with-

4    out resort to litigation.  "[I]t is well established that the fact that direct purchasers may choose not to

5    institute antitrust actions of their own does not establish an exception to the *Illinois Brick* rule."  *In re*

6    *Microsoft Corp. Antitrust Litig.* 127 F. Supp. 2d 702, 713 n.7 (D. Md. 2001) (citing *Illinois Brick*,

7    431 U.S. at 746 ("We recognize that direct purchasers sometimes may refrain from bringing a treble-

8    damages suit for fear of disrupting relations with their suppliers.")).  The fact is that no ownership or

9    control relationship precluded TCO from bringing suit against Chunghwa.  Indeed, TCO's 50%-

10   owned U.S. subsidiary, TUS, exercised its right to recover from Chunghwa by submitting a claim as

11   a member of the direct purchaser class in the *TFT-LCD* litigation. Mot. 7.  That TCO and Jean did

12   not do the same may just as easily be explained by the fact that their claims based on foreign pur-

13   chases are barred by the Foreign Trade Antitrust Improvements Act, or may simply indicate that like

14   many outside the U.S. they resolved things privately rather than resort to litigation.

15         In sum, ViewSonic fails to raise a genuine issue of fact as to the application of the *Royal*

16   *Printing* exception to its claims based on purchases from TCO.

17         **3.**       **Jean Does Not Own Or Control Chunghwa.**

18         ViewSonic's argument with respect to Jean is even more attenuated.  Indeed, the Opposition

19   devotes only one paragraph specifically to Jean.  Opp'n 23-24.  That is not surprising.  As explained

20   above, Chunghwa does not own or control Jean, and therefore the *Royal Printing* exception does not

21   apply.  But even if the *Royal Printing* exception were to apply to the reverse situation of a direct pur-

22   chaser owning a conspirator, Jean does not own or control Chunghwa.

23         ViewSonic does not contend that Jean ever owned shares of Chunghwa, or that any Jean di-

24   rectors or officers concurrently held a position at Chunghwa.[12]  Instead, ViewSonic's sole argument

25`  with respect to Jean is that "a control relationship existed between Jean and Chunghwa" based on the

---

26

27   [12]  ViewSonic's translations of certain of Chunghwa's annual reports incorrect list Jean as a "share-
      holder" or "stakeholder."  Opp'n Exs. 16-18.  The correct translation is "related party."  Wang
      Decl. ¶ 4.

28

Lin family connection.  Opp'n 24.  ViewSonic points to the fact that former Chunghwa Chairman, C.Y. Lin, became Chairman of Jean in 2003 after leaving Chunghwa, and that his son took over the Chairmanship in 2012.  *Id.* at 23-24.  ViewSonic also points to the fact that another of C.Y. Lin's sons currently serves as a director at Jean.  *Id.* at 4.[13]  This is not evidence of control.  ViewSonic presents no evidence that the Lin family owns a majority of shares of either Jean or Chunghwa, constitutes a majority of their boards of directors, or has the ability to direct either company's litigation decisions.  There is no basis for the Court to find the *Royal Printing* exception met with respect to Jean.  Summary judgment should be granted on all direct purchaser claims related to CRTs sold to Jean.

**D.    The Court Should Not Consider Evidence ViewSonic Failed To Timely Disclose When Considering This Motion.**

Pursuant to Civil Local Rule 7-3(c), Chunghwa objects to previously undisclosed evidence submitted in support of the Opposition, specifically:  Heaven Declaration, Exhibits 2 (TCO 2014 Annual Meeting of Shareholders Handbook), 5 (Chunghwa Corporate Governance document), 7 (Declaration of Ernest Huang), and 10 (Tatung Corporate Milestones).  As explained in the motion to exclude filed concurrently with this reply, Dkt. 3473,[14]  these documents and the identity of the witness were directly responsive to Chunghwa's discovery requests seeking all facts, documents, and witnesses supporting ViewSonic's ownership/control contentions, but ViewSonic inexplicably did not disclose them.  The evidence should therefore be excluded from this Court's analysis. *See* Fed. R. Civ. Proc. 37(c); *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

### III.    CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Chunghwa as to ViewSonic's Sherman Act claim to the extent it is based on purchases from TCO, TUS, and Jean.

---

[13]   To the extent that ViewSonic relies on a statement in Jean's 2011 annual report that Chunghwa was a "related party" because "[i]t's [sic] Chairman has parent-child relationship with Chairman of [TCO]," this statement has nothing to do with any control relationship between Chunghwa and Jean.  Opp'n 19 n.64 (Ex. 50).  This statement is from Jean's disclosure regarding "related party transactions" which addresses potential conflicts of interest.

[14]   Chunghwa has filed a motion to shorten time requesting that the motion to exclude be heard on March 6, 2015 at the same time as this Motion.  Dkt. 3474.

1    DATED:  January 23, 2015              GIBSON, DUNN & CRUTCHER LLP

2                                          By:    /s/Rachel S. Brass
                                                    Rachel S. Brass
3
                                           Attorneys for Defendants
4                                          CHUNGHWA PICTURE TUBES, LTD. and
                                           CHUNGHWA PICTURE TUBES (MALAYSIA) SDN.
5                                          BHD.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25`

26

27

28

**DECLARATION OF SERVICE**

I, Christine Fujita, declare as follows:

I am employed in the County of San Francisco, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 555 Mission Street, Suite 3000, San Francisco, California, 94105, in said County and State. On the date below, I served the within:

**DEFENDANTS CHUNGHWA PICTURE TUBES, LTD. AND CHUNGHWA PICTURE TUBES (MALAYSIA) SDN. BHD.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF STANDING AS TO VIEWSONIC CORPORATION**

**DECLARATION OF AUSTIN V. SCHWING IN SUPPORT OF DEFENDANTS CHUNGHWA PICTURE TUBES, LTD. AND CHUNGHWA PICTURE TUBES (MALAYSIA) SDN. BHD.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF STANDING AS TO VIEWSONIC CORPORATION**

**DECLARATION OF WANG CHIH CHENG IN SUPPORT OF DEFENDANTS CHUNGHWA PICTURE TUBES, LTD. AND CHUNGHWA PICTURE TUBES (MALAYSIA) SDN. BHD.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT FOR LACK OF STANDING AS TO VIEWSONIC CORPORATION**

to all named counsel of record as follows:

☑ **BY ECF (ELECTRONIC CASE FILING)**: I e-filed the above-detailed documents utilizing the United States District Court, Northern District of California's mandated ECF (Electronic Case Filing) service on January 23, 2015. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the documents upon confirmation of e-filing.

I certify under penalty of perjury that the foregoing is true and correct, that the foregoing document(s) were printed on recycled paper, and that this Declaration of Service was executed by me on January 23, 2015, at San Francisco, California.

                /s/Christine Fujita
                 Christine Fujita

101857834.10