1  Jason C. Murray (CA Bar No. 169806)
   Robert B. McNary (CA Bar No. 253745)
2  CROWELL & MORING LLP
   515 South Flower St., 40th Floor
3  Los Angeles, CA 90071
   Telephone:  213-443-5582
4  Facsimile:  213-622-2690
   Email: jmurray@crowell.com
5          rmcnary@crowell.com

6  Jerome A. Murphy (*pro hac vice*)
   Astor H.L. Heaven (*pro hac vice*)
7  Matthew J. McBurney (*pro hac vice*)
   CROWELL & MORING LLP
8  1001 Pennsylvania Avenue, N.W.
   Washington, D.C. 20004
9  Telephone:  202-624-2500
   Facsimile:  202-628-5116
10 Email: jmurphy@crowell.com
          aheaven@crowell.com
11        mmcburney@crowell.com

12 *Counsel for ViewSonic Corporation*

13

14

15                **UNITED STATES DISTRICT COURT**

16       **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO**

17

18 | IN RE: CATHODE RAY TUBE (CRT) | Master File No. 3:07-cv-05944-SC |
   | ANTITRUST LITIGATION | MDL No. 1917 |
19

20                                    The Honorable Samuel Conti

   This Document Relates to:              Individual Case No. 3:14-cv-02510
21

22                                         **VIEWSONIC CORPORATION'S**
                                           **OPPOSITION TO CHUNGHWA PICTURE**
   *ViewSonic Corporation v. Chunghwa*    **TUBES, LTD.'S AND CHUNGHWA**
23 *Picture Tubes, Ltd. et al.,* No. 14-cv-02510  **PICTURE TUBES (MALAYSIA) SDN.**
                                           **BHD.'S MOTION TO EXCLUDE**
24                                         **EVIDENCE**

25

26

27

28

Crowell
& Moring LLP
Attorneys At Law

1

## I.      **Introduction**

2           ViewSonic Corporation ("ViewSonic") hereby opposes the Motion to Exclude Evidence

3    (Dkt. No. 3473) (the "Motion to Exclude") filed by Defendants Chunghwa Picture Tubes, Ltd.

4    and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. (collectively, "Chunghwa").  Chunghwa

5    claims that it was prejudiced by ViewSonic not disclosing, prior to the close of discovery, four

6    exhibits that it attached to its Opposition to Chunghwa's Motion for Summary Judgment

7    ("Opposition") (MDL Dkt. No. 3263).  As a result, Chunghwa claims that the proper recourse is

8    for the Court to exclude the exhibits altogether.  Chunghwa's arguments are without merit.

9           Chunghwa was not prejudiced by ViewSonic relying on the exhibits in its Opposition.

10   The exhibits, which provide highly relevant evidence in response to Chunghwa's assertions at

11   summary judgment that Tatung Company ("Tatung") does not own or control Chunghwa

12   pursuant to the ownership/control exception articulated in *Royal Printing Co. v. Kimberly Clark*

13   *Corp.*, 621 F.2d 323 (9th Cir. 1980), include three documents posted on Chunghwa's and

14   Tatung's own websites and one declaration summarizing publicly available and well known

15   information about the familial relationships of Chunghwa's chairman.  The three website exhibits

16   were not in ViewSonic's possession, custody, or control, and ViewSonic had no reason to know

17   of their existence.  ViewSonic only discovered the three website exhibits while responding to

18   arguments that Chunghwa made in its Motion for Summary Judgment.  ViewSonic also only

19   identified the declarant, a former Tatung employee, while responding to Chunghwa's Motion for

20   Summary Judgment.

21          As described more fully below, the disputed documents all pertain to Chunghwa's

22   business, including information regarding the identity of the company's leadership, the roles and

23   responsibilities of Chunghwa's Chairman, and information on business transactions involving

24   Chunghwa.  Given the public nature of the information at issue and the relevance of that

25   information to the ownership/control arguments raised by Chunghwa at summary judgment, the

26   fact that ViewSonic disclosed the exhibits after the close of discovery was harmless and did not

27   hinder Chunghwa's ability to prepare its case against ViewSonic or to respond to ViewSonic's

28   Opposition.  *Guzik Technical Enters., Inc. v. W. Digital Corp.*, No. 5:11-cv-03786-PSG, 2013

WL 6070414 (N.D. Cal. Nov. 18, 2013) (noting that evidence disclosed after the end of discovery can be used where the "failure to disclose was substantially justified or harmless").  Indeed, it would be disingenuous of Chunghwa to disclaim knowledge of the public information included within the disputed documents, given that three of the documents were posted on it and its parent company's websites for all to see, and the remaining document pertained to its Chairman's public familial relationships.  Chunghwa's Motion to Exclude is nothing more than an attempt to exclude relevant evidence that is damaging to its own ownership/control arguments.  The Court should deny Chunghwa's Motion to Exclude.

## II.  **Background**

ViewSonic seeks to recover from Chunghwa the overcharges it incurred on purchases of computer monitors containing price-fixed CRTs from Tatung based on the "ownership/control exception" articulated in *Royal Printing* and affirmed by *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012).  The exception makes clear that the bar on indirect purchasers bringing suit under federal antitrust law does not apply when there is an ownership or control relationship between the conspirator and the initial purchaser of the price-fixed product.

Chunghwa served discovery on ViewSonic on August 25, 2014, requesting that ViewSonic identify all facts, documents, and witnesses relating to ViewSonic's ownership/control allegations.  *See* Motion to Exclude at 2-3.  In response to Chunghwa's discovery requests, ViewSonic conducted a thorough search of all publicly available files, both domestic and international, and on October 13, 2014, identified and cited all of the documents that were reasonably available to it at that time that established an ownership/control relationship between Chunghwa and Tatung, including Chunghwa and Tatung annual reports.  *See* Declaration of Astor H.L. Heaven ("Heaven Decl.") ¶ 3.  Discovery closed in this case on November 7, 2014.  Shortly thereafter, on November 14, 2014, Chunghwa filed its Motion for Summary Judgment in which it challenged ViewSonic's claims that Tatung owns or controls Chunghwa.  *Id.* ¶ 4.

ViewSonic served its Opposition on December 23, 2014, in which it presented several

VIEWSONIC'S OPPOSITION TO CHUNGHWA'S
MOTION TO EXCLUDE EVIDENCE

arguments in support of its ownership/control contentions. *Id.* ¶ 5. ViewSonic argued that the Tatung/Chunghwa ownership/control relationship included many of the indicia of control recognized by courts in the Ninth Circuit including that (i) Tatung held significant ownership of Chunghwa, (ii) Tatung's Chairman formed Chunghwa, (iii) the companies have interlocking directorates, (iv) the companies have routinely shared counsel, (v) Tatung arranged business transactions for Chunghwa for the benefit of the Tatung Group, and (vi) the companies routinely shared executives. *See* Opposition at 2-3; 18-22.

In support of its ownership/control arguments, ViewSonic attached as exhibits annual reports that it had identified in its October 13, 2014 discovery responses. *Id.* ¶ 5. In response to Chunghwa's Motion for Summary Judgment, ViewSonic also attached three additional publicly-available documents from Chunghwa and Tatung. These documents are described below:

- Exhibit 2 – this exhibit is the 2014 Annual Meeting of Shareholders Handbook, which is publicly available on Tatung's website. It describes a transaction in which Tatung arranged for Chunghwa to purchase shares of an unrelated third party. It also describes Tatung's Chairman's responsibilities. Notably, Tatung and Chunghwa have the same Chairman, who would undoubtedly have knowledge of his responsibilities at both companies. *Id.* ¶ 7.

- Exhibit 5 – this exhibit is a description of Chunghwa's corporate governance structure, which is available on Chunghwa's website. It describes the operation of both the Board of Directors and the Audit Committee, and identifies all of Chunghwa's board members and their qualifications. *Id.* ¶ 8.

- Exhibit 10 – this exhibit is a description of Tatung's corporate milestones, which is publicly available on Tatung's website. It includes a history of Tatung, including a note on Chunghwa's founder, Lin Ting-sheng ("T.S. Lin"), who is Lin Wei-shan's ("W.S. Lin") father. At least one Chunghwa deponent testified to T.S. Lin's extensive history with Chunghwa. *Id.* ¶ 10.

- ViewSonic also attached, as Exhibit 7, a declaration from a former Tatung employee,

VIEWSONIC'S OPPOSITION TO CHUNGHWA'S
MOTION TO EXCLUDE EVIDENCE

Ernest Huang, summarizing the family relationships of Chunghwa's Chairman, W.S. Lin. The information in the declaration is publicly available and widely known to Chunghwa and Tatung employees.  The majority of these family relationships are also included in the annual reports that ViewSonic identified in response to Chunghwa's discovery requests and that were included as exhibits to the Opposition.  *Id*. ¶ 9.

ViewSonic was not aware of the disputed information at the time it served its discovery responses, and was only able to find the information included in the disputed documents after conducting additional research to oppose Chunghwa's Motion for Summary Judgment.  *Id*. ¶ 6. Chunghwa now seeks to exclude all of these additional exhibits.  Notably, Chunghwa does not dispute the veracity of any of the information included within the documents, nor can it.  In fact, Chunghwa cites to Exhibits 2 and 5 in its Reply in Support of its Motion for Summary Judgment to support its own ownership/control theories.  *See* MDL Dkt. No. 3476 at 11-12.

### III.  <u>Argument</u>

The timing of ViewSonic's disclosure of the disputed documents did not prejudice Chunghwa, and ViewSonic's reliance on those documents in its Opposition was harmless to Chunghwa.  *See* Fed. R. Civ. P. 37(c)(1) (a party is not prevented from using information that was not previously disclosed where "the failure was substantially justified or is harmless").  In determining whether conduct is "substantially justified or harmless," courts in the Ninth Circuit consider the following five factors:  "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence, and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence."  *See Guzik*, 2013 WL 6070414, at *4 (quoting *San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011)).  Each of these factors weighs in favor of ViewSonic.  As a result, the Court should reject Chunghwa's attempt to exclude the disputed documents from the summary judgment record and from trial.

A.     **Chunghwa was not surprised by the publicly available evidence that ViewSonic presented regarding Chunghwa's relationship with Tatung.**

Chunghwa cannot legitimately claim to have been surprised by the disputed evidence. The exhibits all contain publicly available information pertaining to Chunghwa's business and its operations, topics about which Chunghwa undoubtedly has first-hand knowledge. For example, Exhibit 5 provides a detailed explanation of the operation and roles of Chunghwa's Board of Directors (including its chairman) and its audit committee, and lists the names and qualifications of Chunghwa's board members. *See* Heaven Decl., Attachment B (Exhibit 5 to the Opposition). Chunghwa prepared the document and posted it to its website. As a result, there is no doubt that Chunghwa was fully apprised of the information included within the exhibit.

Even putting aside the fact that Chunghwa prepared and posted the document on its own website, it would be an incredible assertion for Chunghwa to disclaim knowledge of its own chairman's roles and responsibilities, whether at Chunghwa or elsewhere. And given that its Chairman, W.S. Lin, also currently serves as Tatung's Chairman, it is hard to imagine that Chunghwa has no knowledge of his roles and responsibilities at Tatung, as described in Exhibit 2 to the Opposition. ViewSonic also cites to the section within Exhibit 2 that provides information regarding a transaction between Chunghwa and an unrelated third party. *See* Heaven Decl., Attachment A (Exhibit 2 to the Opposition) at 8. Chunghwa cannot credibly claim that it is unaware of or surprised by the transaction, given that it was one of the direct participants. Notably, Chunghwa does not dispute its participation in the transaction referenced in Exhibit 2 in either its Reply in Support of its Motion for Summary Judgment or in its Motion to Exclude.

Additionally, Exhibit 10 provides public information regarding Tatung's corporate history which is posted on Tatung's website. *See* Heaven Decl., Attachment D (Exhibit 10 to the Opposition). As C.C. Liu, a former Chunghwa witness and former executive, testified, the corporate history of the companies is well established and not a surprise to either Chunghwa or Tatung.[1]  Chunghwa's Chairman is also Tatung's Chairman, and his father founded Chunghwa,

---

[1] *See supra*, note 4.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

so he and Chunghwa are undoubtedly aware of the corporate history information included within Exhibit 10.

Finally, Exhibit 7, prepared by a former Tatung employee, describes the familial relationships among W.S. Lin and his parents, spouse, and siblings. Most, if not all, of these family relationships are also included in numerous Chunghwa and Tatung annual reports that ViewSonic identified in its discovery responses, and subsequently attached as exhibits[2] to its Opposition.[3] As a result, Chunghwa was aware of this information contained in Exhibit 7 prior to the close of discovery. *See Lam v. City & County of San Francisco*, 565 Fed. App'x 641, 643 (9th Cir. 2014) (finding that failure to disclose a witness was harmless because the "testimony was cumulative" of other information in the record); *see also Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1120 (N.D. Cal. 2011) (finding "the failure to disclose [a witness declaration] harmless" because the "declaration merely authenticates…records…that [p]laintiffs already knew existed.") Moreover, the Chairman's family relationships are well-documented, uncontroversial, and certainly known to Chunghwa even without ViewSonic's disclosures through the annual reports. Indeed, Chunghwa's former corporate executive who was deposed in this case was well aware of the history of the company and the extent to which the Lin family controlled both Tatung and Chunghwa.[4]

The information included in the disputed documents does not concern ViewSonic or an

---

[2] Importantly, Chunghwa did not dispute the translations included within the Tatung and Chunghwa annual reports. Pursuant to the translation protocol, which requires translation objections to be served within 30 days of a document being used, the time to do so has passed. *See* Order re Discovery and Case Management Protocol (MDL Dkt. No. 1128) ¶ XVI (F) ("Objections to the accuracy of any translations shall be asserted within 30 days after the translation is first offered on a motion…")

[3] *See* Opposition at 4-5 nn.11,12; *see also* Opposition Exhibits 12-24; 28-38 (providing the family relationships in the "Information about directors and supervisors" or "Information of directors and supervisors" sections in the Chunghwa and Tatung annual reports, respectively.)

[4] *See* Opposition, Exhibit 1 (Liu Dep.) at 36:3-11 ("Chunghwa picture tubes has been a local Taiwanese company, even though it is a listed company it is a Lin family enterprise. Company is a subsidiary of Tatung company. Founder T.S. Lin was an entrepreneur of nationalism…I think it has been very prone to features like a family enterprise.") ViewSonic included Mr. Liu's testimony as an exhibit, and Chunghwa did not challenge it.

unrelated third party.  All of the disputed documents pertain to Chunghwa's business and all of the information within the documents was known to Chunghwa prior to ViewSonic serving its Opposition.  To the extent that Chunghwa argues that Tatung information should not be imputed to it, C.C. Liu testified that Chunghwa was essentially a Tatung "subsidiary."  The documents provide further evidence of that relationship.  And Chunghwa's current chairman simultaneously holds the same role at Tatung.  Thus, any surprise regarding the contents or existence of the disputed documents is implausible.  *See Maharaj v. Cal. Bank & Trust*, 288 F.R.D. 458, 463 (E.D. Cal. 2013) (finding failure to disclose evidence already in defendant's possession harmless). This factor weighs in favor of ViewSonic.

###### B.     Even if there was a surprise on the part of Chunghwa, it can be easily cured.

Even if Chunghwa is somehow deemed to have been surprised by the existence or content of the disputed documents, which it is not, this can be easily cured.  All of the information included within the exhibits is publicly available, pertains to Chunghwa's business, and is easily verifiable by Chunghwa employees.  Chunghwa claims that it needs a deposition to verify the information, but the argument rings hollow.  Chunghwa did not attend a single ViewSonic deposition during discovery, nor did it attempt to depose a single witness regarding any of the documents that ViewSonic identified in response to Chunghwa's discovery requests.

Indeed, no additional discovery would be required for Chunghwa to substantiate any of the information included within the disputed documents.  Chunghwa could easily verify W.S. Lin's roles and responsibilities as Chairman at either Chunghwa or Tatung (since he serves the same role at both companies) simply by asking him the question.  Chunghwa could also verify its chairman's familial relationships by (i) asking him the question[5] or (ii) reviewing the Chunghwa and Tatung annual reports that ViewSonic identified prior to the close of discovery.  Finally, Chunghwa could verify whether it entered into a transaction with an unrelated third-party by

---

[5] As the Tatung and Chunghwa annual reports note, several of W.S. Lin's siblings serve as board members at Chunghwa.  Chunghwa could also verify the family relationships through those family members.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

VIEWSONIC'S OPPOSITION TO CHUNGHWA'S
MOTION TO EXCLUDE EVIDENCE

checking its own records.  This information is at Chunghwa's fingertips, and a Chunghwa witness could easily testify at trial regarding those topics.[6]

Importantly, Chunghwa takes no issue with the veracity of the information included within the exhibits, and instead seeks only to exclude unfavorable evidence to its argument against ownership/control.  To the extent that Chunghwa disputed the veracity of any of the evidence, it could have done so in its Reply brief or in the Motion to Exclude, but it did not.  Instead, it relied on at least two of the exhibits in its Reply.  This factor also weighs against excluding the disputed evidence.

### C.     Evidence regarding Chunghwa's relationship with Tatung will not disrupt the trial.

Any investigation that Chunghwa requires regarding the disputed documents will not disrupt the trial, which remains over a month away.  In fact, all of the disputed documents have been listed on ViewSonic's trial exhibit list.  Chunghwa is already very familiar with both the corporate information and the family relationships included within the disputed documents, and as described above, Chunghwa personnel can confirm or dispute that information now or at trial.  Moreover, to the extent that Chunghwa really needs clarification regarding its own Chairman's familial relationships, ViewSonic can certainly make its declarant available, in connection with Exhibit 7, for a limited deposition to testify on that topic prior to trial.  *See Guzik,* 2013 WL 6070414, at *6 (taking three additional depositions of previously undisclosed witnesses in the month leading up to trial is not overly disruptive).  This factor also weighs in favor of ViewSonic's position.

### D.     The evidence included in the disputed documents is important to the ownership/control analysis.

The disputed documents are extremely important to the analysis of whether Tatung owns and/or controls Chunghwa such that the *Royal Printing* exception to the general bar on indirect purchasers bringing suit under the Sherman Act is satisfied.  Although the Chunghwa and Tatung

---

[6] The parties have an opportunity to supplement witness lists by February 20, 2015.  *See* MDL Dkt. No. 3182.

annual reports cited by ViewSonic during discovery and in its Opposition provide important

information on the identities of the companies' various chairmen, their overlapping directors, and

ownership over the course of the conspiracy period in this case, they do not paint the complete

picture of Tatung's ownership/control of Chunghwa.  The disputed documents provide valuable

context – directly from the mouths of Chunghwa and Tatung – regarding how the

ownership/control relationship actually worked between the two companies.  For example, C.C.

Liu noted at his deposition, without elaboration, that Chunghwa was effectively a "subsidiary" of

Tatung,[7] but Exhibit 2 confirms Mr. Liu's testimony and provides a real world example of how

Tatung controls the business operations of Chunghwa.  The document confirms that Tatung

exerted control over Chunghwa by "arrang[ing]" for Chunghwa "to purchase the shares of

Giantplus Technology Co., Ltd" in order to "enhance Tatung group's vertical integration."  *See*

Heaven Decl., Attachment A (Exhibit 2 to the Opposition) at 8.  Moreover, Exhibits 2 and 5

confirm that the chairmen of each company (here, W.S. Lin), had substantial responsibility for the

directions of both companies.

When taken as a whole, the exhibits cited by ViewSonic, including the disputed

documents, provide a complete picture of the ownership/control relationship between Tatung and

Chunghwa.  As Chunghwa itself acknowledges, this is "a central issue in this case."  *See* Motion

to Exclude at 5.  As such, the Court should consider all evidence relevant to the analysis.  This

factor also weighs in favor of ViewSonic.

**E.    ViewSonic had good reason for not disclosing the disputed documents prior to the close of discovery.**

ViewSonic had good reason for not disclosing the disputed documents prior to the close of

fact discovery.  In responding to Chunghwa's discovery requests, ViewSonic conducted a diligent

search and produced all responsive documents in its possession that it was reasonably able to

identify at the time.  After Chunghwa filed its Motion for Summary Judgment, and in response to

the arguments made in that motion, ViewSonic located Exhibits 2, 5, and 10 on Chunghwa's and

---

[7] *See* Opposition, Exhibit 1 (Liu Dep.) at 36:5-6.

CROWELL
& MORING LLP
ATTORNEYS AT LAW

VIEWSONIC'S OPPOSITION TO CHUNGHWA'S
MOTION TO EXCLUDE EVIDENCE

Tatung's own websites. As a result, those documents were not in ViewSonic's possession, custody, or control during discovery, and ViewSonic had no reason to know of the documents' existence, and therefore did not deliberately withhold information from Chunghwa. *See* Heaven Dec. ¶ 6. With respect to Exhibit 7, ViewSonic also identified the declarant just prior to serving its Opposition. *Id*. ViewSonic did not attempt to prejudice Chunghwa, especially given the fact that the information contained in the declaration (and the other exhibits) pertained to and was already known by Chunghwa.

## IV.    Conclusion

For the reasons set forth above, the Court should deny Chunghwa's Motion to Exclude Exhibits 2, 5, 7, and 10 from the summary judgment record and should permit ViewSonic to use these documents at trial.


Dated: February 6, 2015                 Respectfully Submitted,
                                        */s/ Jason C. Murray*
                                        Jason C. Murray (CA Bar No. 169806)
                                        Robert B. McNary (CA Bar No. 253745)
                                        CROWELL & MORING LLP
                                        515 South Flower St., 40th Floor
                                        Los Angeles, CA 90071
                                        Telephone: 213-443-5582
                                        Facsimile: 213-622-2690
                                        Email: jmurray@crowell.com
                                                rmcnary@crowell.com

                                        Jerome A. Murphy (*pro hac vice*)
                                        Astor H.L. Heaven (*pro hac vice*)
                                        Matthew J. McBurney (*pro hac vice*)
                                        CROWELL & MORING LLP
                                        1001 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20004
                                        Telephone: 202-624-2500
                                        Facsimile: 202-628-5116
                                        Email: jmurphy@crowell.com
                                                aheaven@crowell.com
                                                mmcburney@crowell.com

                                        *Counsel for ViewSonic Corporation*