Guido Saveri (22349)
   *guido@saveri.com*
R. Alexander Saveri (173102)
   *rick@saveri.com*
Geoffrey C. Rushing (126910)
   *grushing@saveri.com*
Travis L. Manfredi (281779)
   *travis@saveri.com*
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, California 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Interim Lead Counsel for the
Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV- 07-5944-SC |
| | MDL No. 1917 |
| This Document Relates To:<br><br>*Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058 (SC). | **DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO MITSUBISHI ELECTRIC DEFENDANTS' MOTION TO MODIFY DIRECT PURCHASER CLASS CERTIFICATION SCHEDULING ORDER [DKT. 3184]** |
| | Date:   TBD<br>Time:   TBD<br>Judge: Hon. Samuel Conti<br>Court: Courtroom 1, 17th Floor |

## I.  INTRODUCTION

Direct Purchaser Plaintiffs ("DPPs") submit this opposition to Mitsubishi Electric Defendants' Motion to Modify the DPP Class Certification Scheduling Order (Jan. 29, 2015) (Dkt. No. 3501) ("Mot.").[1] Mitsubishi seeks a two month extension of time to file its opposition to DPPs' motion for class certification ("Class Motion").

DPPs respectfully submit that the Court should deny Mitsubishi's motion. Mitsubishi has already obtained a three month extension of the briefing schedule, and fails to show good cause for another one. Mitsubishi has had ample time to prepare its opposition to the Class Motion and makes no meaningful attempt to demonstrate, as it must, that it has exercised diligence. Indeed, the record before the Court compels the conclusion that, rather than working diligently on its opposition, Mitsubishi has simply taken it for granted that the Court will accede to its request for an extension. For example, while DPPs offered two different dates in January for the deposition of their expert witness, Mitsubishi did not even respond to their offer until *after* the dates had passed. Finally, the principal basis for Mitsubishi's motion—that its impending trial against the DAPs and IPPs would prevent it from timely preparing its opposition—is no longer a factor.

## II.  FACTS

On May 20, 2014, DPPs filed their First Amended Complaint Against Thomson and Mitsubishi ("FAC"). *Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058 (SC) ("*Crago*") (Dkt. No. 14-4). The Mitsubishi Defendants answered on July 30, 2014. *Crago,* Dkt. Nos. 44, 45, 46. The Thomson defendants filed their answers on August 6, 2014 and August 13, 2014. *Crago*, Dkt. Nos. 48, 49, 50.

DPPs filed their Notice of Motion and Motion for Class Certification with Respect to the Thomson and Mitsubishi Defendants ("Class Motion") (Dkt. No. 2969) on November 7, 2014. Pursuant to Local Rule 7-3, the deadline to oppose the motion was November 21, 2014. A few days before their opposition was due, Defendants requested an extension of the briefing schedule. After a brief negotiation, the parties agreed to extend the schedule by approximately three months. The

---

[1] Mitsubishi initially set this motion for hearing on February 6, 2015, well short of the 35 days required by Local Rule 7-2. That hearing date has since been vacated by the Court (Dkt. No. 3505).

1

1    parties agreed that Defendants' opposition to the motion would be due on February 27, 2015, 112

2    days after the motion was filed. DPPs also agreed to make their expert witness, Dr. Jeffrey

3    Leitzinger, available for deposition prior to January 31, 2015. Stipulation and Modified Order

4    Regarding Scheduling of Direct Purchaser Plaintiff Class Certification Motions (Dec. 8, 2014)

5    (Dkt. No. 3184) ("Scheduling Order").

6    　　　　On November 25, 2014, DPPs offered Dr. Leitzinger for deposition on January 9, 2015 and

7    January 23, 2015. Saveri Decl. ¶ 2 & Ex. 1. However, Mitsubishi has never sought to take Dr.

8    Leitzinger's deposition. It has never served a deposition notice, and did not respond to DPPs' offer

9    of dates until they had passed. In late January, 2015, Mitsubishi requested an additional extension

10   of time. *Id.* ¶ 3. Even then, however, it did not seek to schedule Dr. Leitzinger's deposition. *Id.*

11   　　　　The Class Motion was the second such motion DPPs have filed in this proceeding. On May

12   14, 2013, DPPs filed a Motion for Class Certification (Dkt. No. 1674) against the Samsung SDI

13   and Hitachi defendants. That motion was made on similar grounds to the instant motion and was

14   also supported by an expert report authored by Dr. Leitzinger. The principal conclusions of Dr.

15   Leitzinger's report then, as now, were that (1) harm to the class resulting from the alleged price-

16   fixing conspiracy could be proved on a class-wide basis using common proof; and (2) that a

17   methodology existed to determine the amount of damages suffered by class members. The

18   defendants deposed Dr. Leitzinger on August 22, 2013. Saveri Decl. ¶ 4.

19   　　　　The Samsung SDI and Hitachi Defendants filed an opposition to DPPs' first class motion

20   under seal on September 11, 2013. Dkt. No. 1945 (filed September 20, 2013 after sealing order

21   entered). Their 40 page opposition included an extensive critique of Dr. Leitzinger's report, and

22   was supported by a 176 page report by another expert, Dr. Robert Willig. Dr. Willig's report

23   addressed virtually every aspect of Dr. Leitzinger's report. Saveri Decl. ¶ 5.

24   　　　　DPPs filed their reply brief on November 11, 2013. Dkt. No. 2208-4. Dr. Leitzinger

25   prepared another report rebutting Dr. Willig in support of DPPs' reply brief. Saveri Decl. ¶ 6.

26   　　　　Ultimately, the motion was mooted because DPPs and both defendants agreed to settle the

27   case before the hearing on the motion.

28   　　　　In addition, the principal questions raised by DPPs' class motion—(1) whether harm to

Direct Purchasers of CRTs and finished products containing CRTs could be proven on a classwide basis and (2) whether damage methodologies exist—were also extensively litigated in connection with the class certification motion filed by the Indirect Purchaser Plaintiffs ("IPPs"). The IPPs motion, filed on October 1, 2012 (Dkt. No. 1388), addressed these issues in detail. The IPPs' expert economist, Dr. Janet Netz, also analyzed them in her 262 page report submitted in support of IPPs' motion. Defendants' opposition brief contained an extensive critique of Dr. Netz' work, and relied on a report from Dr. Willig. The IPPs reply brief, filed on February 15, 2013, was also supported by another report by Dr. Netz. Saveri Decl. ¶ 7.

The court granted the IPP class motion and found expressly that "Dr. Netz's declaration shows that proof of harm to direct purchasers could be proved without individual inquiry," that "Dr. Netz also provided methods for showing common proof of overcharges for both direct and indirect purchasers," and that "Based on Dr. Netz's methodology, described above, and the ISM's thorough R&Rs, the Court is satisfied that for class certification purposes, the IPPs have established a common method for proving that each class member was injured." Order Adopting Special Master's Reports and Recommendations on Defendants' Motion to Exclude Expert Testimony and Indirect-Purchaser Plaintiffs' Motion for Class Certification at 8, 9, 13 (Sept. 24, 2013) (Dkt. No. 1950). In addition, DAPs have served over fifteen damage reports utilizing damage models similar to Dr. Leitzinger's. Saveri Decl. ¶ 8.

DPPs entered into a settlement in principle with Thomson at the end of December, 2014. DPPs understand that Thomson notified the other Defendants of the settlement pursuant to a joint defense agreement. Saveri Decl. ¶ 9.

On February 9, 2015, the Court entered a Scheduling Order (Dkt. No. 3515) that vacated the trial date, pre-trial conference, and all outstanding pre-trial deadlines in the DAP and IPP cases (including all cases that Mitsubishi is a party to in this MDL).

### III.  MITSUBISHI FAILS TO DEMONSTRATE THAT GOOD CAUSE EXISTS FOR AN EXTENSION OF THE CLASS CERTIFICATION BRIEFING SCHEDULE

To be entitled to an extension of a scheduling order, a party must show good cause. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified *only* for good cause . . . .") (emphasis added).

1  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the
2  amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Where
3  the moving party has not been diligent, the inquiry ends and the motion should be denied. *Zivkovic*
4  *v. S. Cal. Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002).
5        Mitsubishi completely fails to demonstrate diligence in connection with the Class Motion.
6  Its motion should therefore be denied.
7        First, Mitsubishi's motion is devoid of any mention of what, if anything, it has done to
8  prepare its opposition to the Class Motion. Mitsubishi provides no particulars of the work it has
9  done or must do, or the progress it has or has not made on that work in the three months since DPPs
10  filed the Class Motion. Instead, Mitsubishi refers only to circumstances it contends have prevented
11  it from preparing an opposition to the Class Motion. Mot. at 4:15–20. Indeed, a fair inference from
12  Mitsubishi's motion is that it has done nothing. For example, counsel's declaration candidly states
13  that "all of the resources of the Mitsubishi Electric Defendants are currently dedicated to trial
14  preparation." Declaration of Shaun M. Van Horn in Support of Mitsubishi Electric Defendants'
15  Motion to Modify Direct Purchaser Plaintiff Class Certification Scheduling Order [Dkt. 3184] at
16  2:11 (Jan. 29, 2015) (Dkt. No. 3501-2) ("Van Horn Decl."). Similarly, Mitsubishi's brief asserts
17  that "[t]rial preparation for the DAP cases has commanded all of Mitsubishi Electric's resources."
18  Mot. at 4:25–26. It would appear, in other words, that Mitsubishi and its counsel are presently doing
19  no work on its opposition to the motion, and have done none previously.
20        Second, the facts that Mitsubishi negotiated a briefing schedule and took no steps to depose
21  Dr. Leitzinger preclude any finding of diligence. Mitsubishi not only negotiated the Scheduling
22  Order knowing of its other obligations in this litigation—the DAP trials had been scheduled since
23  March 21, 2014, and DPPs' discovery was served in September 2014—it was intended to and did
24  provide ample time for Mitsubishi to prepare its opposition. Moreover, Mitsubishi has the benefit
25  of the work that the Samsung SDI and Hitachi defendants did—i.e., deposing Dr. Leitzinger,
26  preparing an expert report critiquing Dr. Leitzinger's work, and drafting an opposition to, as
27  Mitsubishi describes it "essentially the same motion for class certification." Mot. at 5:14.
28        Furthermore, assuming Mitsubishi believes his deposition is necessary, the fact that

Mitsubishi took no steps to depose Dr. Leitzinger conclusively demonstrates a lack of diligence.[2] As noted, DPPs offered specific dates for Dr. Leitzinger's deposition, but received no response from Mitsubishi until after they had passed. Even then, Mitsubishi did not seek to schedule his deposition, but simply asked for an extension. Such conduct is the antithesis of diligence.

Third, the inferences Mitsubishi would have this Court draw are not reasonable. Mitsubishi asks the Court to conclude that it acted diligently because it had other obligations in this litigation, namely, ongoing discovery and motion practice and trial in the DAP cases. Mitsubishi also points out that the Thomson settlement meant that it would have to do all of the work on the motion itself. None of these excuses withstand scrutiny.

First and foremost, all depend on the assertion that Mitsubishi and its counsel lacked the resources to prepare an opposition to the motion as well as attend to their other responsibilities. This assertion, however, is unfounded. Mitsubishi is a huge corporation.[3] It is represented by "litigation powerhouse"—Jenner & Block, a firm of 450 attorneys.[4] The notion that three and a half months is not enough time for such a firm to prepare an opposition to class certification is ridiculous, especially where most of the work has already been done. Furthermore, even in the unlikely event that Jenner & Block lacked the resources to prepare an opposition, Mitsubishi could have hired another firm.

Second, Mitsubishi overstates the work required for its other obligations. At the time of the Scheduling Order, Mitsubishi had already filed its motions for summary judgment and knew the deadlines for oppositions and replies to those motions.[5] Discovery in the DAP cases closed on

---

[2] In light of the fact that his deposition has already been taken, it would be reasonable for Mitsubishi to conclude that further examination was unnecessary.

[3] For example, in the 2014 fiscal year, it had over $39 billion in net sales. *Mitsubishi Electric Corporation Annual Report 2014* at p. 3, *available at* http://www.mitsubishielectric.com/company/ir/library/annual_report/pdf/ar2014.pdf. It employs over 124,000 people. *Id.* at 24.

[4] "Jenner & Block is a national law firm of approximately 450 attorneys. . . . We have earned our reputation as a litigation powerhouse." *About Us*, Jenner & Block, http://jenner.com/about/firm.

[5] Mitsubishi filed two motions for summary judgment on November 7, 2014 (Mitsubishi is a signatory to several other motions filed on the same day that appear to been prepared by other Defendants).

1   September 5, 2014. The issues that remained stemmed primarily from Mitsubishi's efforts to avoid
2   discovery and have not been overwhelming.[6]
3   Third, Mitsubishi knew about the above obligations when it negotiated the Scheduling
4   Order. Mitsubishi points to no material unforeseen event that prevented it from doing the work
5   necessary pursuant to the agreed upon schedule.
6   Fourth, the fact that DPPs settled with the Thomson entities is no excuse. The settlement
7   was reached at the end of December, 2014, approximately two months before the opposition to the
8   Class Motion was due. Mitsubishi fails to describe what, if any, responsibilities Thomson had
9   agreed to undertake with regard to the opposition, or why Mitsubishi could not complete that work.
10  Finally, inasmuch as the Court has vacated the trial date, the impending DAP trial is now a
11  moot point. Dkt. No. 3515.

## IV.     CONCLUSION

For the foregoing reasons, DPPs respectfully submit that the Court should deny Mitsubishi's motion.

DATED:  February 12, 2015              Respectfully Submitted,


                                        */s/ R. Alexander Saveri*
                                        Guido Saveri
                                        R. Alexander Saveri
                                        Geoffrey C. Rushing
                                        Travis L. Manfredi
                                        **SAVERI & SAVERI, INC.**
                                        706 Sansome Street
                                        San Francisco, CA 94111
                                        Telephone:    (415) 217-6810
                                        Facsimile:    (415) 217-6813

                                        *Interim Lead Counsel for the*
                                        *Direct Purchaser Plaintiffs*

---

[6] *See, e.g.*, Order re Direct Purchaser Plaintiffs' Motion to Extend Discovery Cut-Off to Depose Mitsubishi Witnesses at 2:6–7(Nov. 12, 2014) (Dkt. No. 3071) (". . . Mitsubishi's tardy document production essentially precluded the DAPs' from deposing the most relevant Mitsubishi witnesses."). DPPs have filed two motions to compel due to Mitsubishi's failure to fulfill its discovery obligations. Saveri Decl. ¶ 10.