GIBSON, DUNN & CRUTCHER LLP
JOEL S. SANDERS, SBN 107234
JSanders@gibsondunn.com
RACHEL S. BRASS, SBN 219301
RBrass@gibsondunn.com
AUSTIN SCHWING, SBN 211696
ASchwing@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, California 94105-2933
Telephone: 415.393.8200
Facsimile: 415.393.8306

FARMER BROWNSTEIN JAEGER LLP
WILLIAM S. FARMER, SBN 46694
WFarmer@FBJ-law.com
DAVID BROWNSTEIN, SBN 141929
DBrownstein@FBJ-law.com
JACOB ALPREN, SBN 235713
JAlpren@FBJ-law.com
235 Montgomery Street, Suite 835
San Francisco California 94104
Telephone 415.962.2876
Facsimile: 415.520.5678

Attorneys for Defendants
CHUNGHWA PICTURE TUBES, LTD. and
CHUNGHWA PICTURE TUBES (MALAYSIA)
SDN. BHD.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-CV-5944 SC<br>MDL No. 1917 |
| This Document Relates To:<br><br>*Best Buy Co. Inc. et al. v. Hitachi, Ltd. et al.*, No. 3:11-cv-05513-SC<br><br>*ViewSonic Corp. v. Chunghwa Picture Tubes, Ltd. et al.*, No. 3:14-cv-02510-SC | **DEFENDANTS CHUNGHWA PICTURE TUBES, LTD. AND CHUNGHWA PICTURE TUBES (MALAYSIA) SDN. BHD.'S MOTION IN LIMINE TO EXCLUDE OPINIONS OR CALCULATIONS REGARDING ACTUAL DAMAGES ATTRIBUTABLE TO THE CHUNGHWA DEFENDANTS**<br><br>Judge:     Hon. Samuel Conti<br>Date:      None Set<br>Courtroom: 1, 17th Floor |

**NOTICE OF MOTION AND MOTION**

TO THE COURT, THE CLERK, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that as soon as the matter may be heard, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Samuel Conti, Defendants Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. (collectively, "Chunghwa") will and hereby do move the Court, under Rules 104(a), 402, 403, 702, and 703 of the Federal Rules of Evidence and Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, to exclude any opinion or calculation regarding actual damages attributable to the commerce done by Chunghwa, for the reasons set forth in the accompanying Memorandum of Points and Authorities.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support thereof, the complete files and records in this action, oral argument of counsel, and such other and further matters as this Court may consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This motion seeks to exclude any opinion or calculation regarding actual damages attributable to the commerce done by Defendants Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. (collectively, "Chunghwa") because Plaintiffs' experts' reports do not opine on that issue and Plaintiffs' experts testified in their depositions that they did not study that issue.

Chunghwa is the antitrust leniency applicant in this case under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, 118 Stat. 661, § 212(3) ("ACPERA"). *See* Chunghwa Notice of Limitation of Damages Pursuant to ACPERA, ECF No. 3395. Under ACPERA, Chunghwa's status as the leniency applicant protects it from joint and several liability and treble damages. ACPERA § 213(a). Instead, each plaintiff will have to demonstrate its "actual damages sustained" that are "attributable to the commerce done by" Chunghwa, *i.e.*, Chunghwa's sales of cathode ray tubes ("CRTs") at anticompetitive prices and the amount of harm such sales caused each plaintiff, if any. *Id.*

Plaintiffs' experts' reports provide no opinions regarding each plaintiff's actual damages attributable to Chunghwa's sales of CRTs. Plaintiffs' experts conceded in their depositions that they made no attempt to calculate each plaintiff's actual damages attributable to the commerce done by Chunghwa. To the contrary, they confirmed that they lumped *all defendants'* CRT sales together to calculate an average overcharge assumption, and they made no effort to determine whether the CRT products that each plaintiff purchased contained Chunghwa's CRTs. In other words, they utilized a methodology that calculates damages on the assumption that each defendant is jointly and severally liable for every other defendant's sales and that a significant portion of the CRT products that each plaintiff purchased contained at least one defendant's CRTs. But that methodology cannot be used to determine actual damages attributable to a single defendant's sales. Thus, Plaintiffs have no basis upon which to offer any opinion at trial on the damages attributable solely to sales by Chunghwa.

Chunghwa therefore respectfully requests this Court to exclude any such opinion or calculation on the grounds that it was not offered in Plaintiffs' experts' reports as required by Federal Rule of Civil Procedure 26(a)(2), and would be speculative, lack foundation, and flow from irrelevant and prejudicial damages analyses. Fed. R. Evid. 104(a), 402, 403, 702, 703.

## II.   BACKGROUND

Congress enacted ACPERA to incentivize companies to self-report violations of the U.S. antitrust laws, as Chunghwa did here, by reducing the exposure a leniency applicant faces in civil litigation that follows a Department of Justice investigation. ACPERA relieves a successful leniency applicant from exposure to treble damages and joint and several liability in any civil action, and instead limits damages to actual damages attributable to the leniency applicant's sales:

> [I]n any civil action alleging a violation of section 1 or 3 of the Sherman Act, or alleging a violation of any similar State law, based on conduct covered by a currently effective antitrust leniency agreement, *the amount of damages recovered* by or on behalf of a claimant from an antitrust leniency applicant who satisfies the [cooperation] requirements of subsection (b), together with the amounts so recovered from cooperating individuals who satisfy such requirements, *shall not exceed that portion of the actual damages sustained by such claimant which is attributable to the commerce done by the applicant in the goods or services affected by the violation*.

ACPERA § 213(a) (emphasis added). Chunghwa, which is the leniency applicant, has recently filed an ACPERA notice, ECF No. 3395, and will demonstrate to the Court at an appropriate time that it

1  has satisfied its statutory cooperation obligations. Accordingly, Chunghwa will be entitled to the
2  benefits of ACPERA, and any damages that Plaintiffs may seek to recover from Chunghwa will be
3  limited to "actual damages" they can prove they "sustained," if any, that are "attributable to the
4  commerce done by" Chunghwa. ACPERA § 213(a). Plaintiffs' experts, however, have provided no
5  opinions on and have not studied that issue.

### III.   ARGUMENT

Plaintiffs' experts did not calculate actual damages attributable to the commerce done by Chunghwa. The Court should therefore exclude any opinion or calculation at trial regarding actual damages with respect to Chunghwa as beyond the scope of expert disclosures and reports. Fed. R. Civ. Proc. 26(a)(2)(B). Further, any attempt by Plaintiffs to rely on their experts at trial to establish actual damages attributable to Chunghwa would lack foundation and be speculative and prejudicial. Fed. R. Evid. 104(a), 403, 702, 703.

**A.   Plaintiffs' Experts Did Not Calculate Actual Damages Attributable To Chunghwa.**

None of Plaintiffs' experts' reports provide an opinion regarding Plaintiffs' actual damages attributable to Chunghwa's sales of CRTs. Plaintiffs' experts confirmed in their depositions that they did not analyze, identify, or proffer opinions regarding Plaintiffs' actual damages attributable to Chunghwa. Indeed, Chunghwa's counsel specifically asked Plaintiffs' damages expert, Dr. Alan Frankel, at his deposition whether he had "offered any specific opinion as to damages attributable to Chunghwa sales." Decl. of Austin Schwing in Support of Chunghwa Mot. in Limine (hereinafter "Schwing Decl."), Ex. A, at 281:15-19 (July 10, 2014 Frankel Depo. Tr.). In response, Dr. Frankel admitted that he "ha[d]n't done that calculation." *Id.* at 282:11; *see id.* at 281:04-12 (asked if he had "offer[ed] any specific opinion in any of [his] reports as to damages attributable to Chunghwa Picture Tubes," Dr. Frankel testified: "[I]f you're asking what component, what dollar amount Chunghwa owes of the total that I've computed, I haven't tried to do that"); *see also* Schwing Decl., Ex. B., at 138:15-139:10 (June 25, 2014 McClave Depo Tr.) (Dr. McClave conceding that he did not perform any analysis specific to Chunghwa). Because Plaintiffs' experts did not analyze actual damages attributable to Chunghwa in their expert reports, this Court should preclude them from providing opinions on that subject at trial. *See* Fed. R. Civ. Proc. 26(a)(2)(B) (expert report "must contain

complete statement of all opinions the witness will express and the basis and reasons for them"); *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1138 (9th Cir. 2011) (upholding district court's determination to limit expert testimony to "the subjects contained in the expert's disclosure"); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1062 (9th Cir. 2008) (same); *see, e.g.*, *Therasense, Inc. v. Becton, Dickinson & Co.*, 2008 U.S. Dist. LEXIS 107992, at *13 (N.D. Cal. May 12, 2008) (Alsup, J.) (describing the "paramount rule that all experts will be limited on direct examination to the four corners of their report").

Moreover, any opinion of actual damages regarding Chunghwa's sales would be speculative and without foundation. Plaintiffs' experts did not attempt to calculate actual damages attributable to Chunghwa because, as they admitted in their depositions, they did not even examine whether Plaintiffs purchased products containing CRTs made by Chunghwa, let alone the actual number of any such products and the overcharge attributable to them, if any. Dr. James McClave admitted that he did not "study what percentage of tubes in the products [plaintiffs] purchased were Chunghwa Picture Tubes tubes." Schwing Decl., Ex. B., at 139:07-10. Thus, it would be impossible for him to calculate how much any plaintiff overpaid for Chunghwa's CRTs. Similarly, Dr. Frankel, who provided opinions on pass-through of overcharges to Plaintiffs, agreed that he "did not attempt to determine which of the plaintiffs . . . bought CRT products containing CRT tubes manufactured by Chunghwa Picture Tubes." Schwing Decl., Ex. A, at 277:14-19. Dr. Frankel further conceded that he did not do an independent analysis "of whether any of the direct vendors [in his reports] actually sold to any plaintiffs any products containing either color display tubes or color picture tubes manufactured by Chunghwa Picture Tubes." *Id.* at 277:20-278:13. And when asked if he knew "which entities Chunghwa Picture Tubes sold tubes to," Dr. Frankel admitted, "No, I have not done that analysis." *Id.* at 279:04-06. Indeed, he did not even attempt to determine which sizes of CRTs Chunghwa sold, *id*. at 277:10-13, let alone to whom they were sold, *id*. at 279:04-06. Because the experts did not study that information, Dr. Frankel admitted that he "didn't separately calculate an overcharge for anybody" including Chunghwa, and that neither had Dr. McClave. *Id.* at 277:04-08; *see id.* at 276:25-277:03 ("Q. [Dr. McClave] didn't attempt to separately calculate an overcharge for the Chunghwa Picture Tubes defendants, correct? / A. That's my understanding.").

Given that Plaintiffs' experts, by their own admission, did not calculate actual damages attributable to Chunghwa, the Court should preclude any attempt by Plaintiffs at trial to proffer an opinion regarding that issue as beyond the scope of the experts' reports, speculative, and without foundation. Fed. R. Civ. Proc. 26(a)(2)(B); Fed. R. Evid. 104(a), 702, 703.

**B.       Plaintiffs' Market Share Theory Does Not Establish Actual Damages Attributable To Chunghwa.**

Plaintiffs cannot establish actual damages attributable to Chunghwa by imputing a market share to Chunghwa and assuming that is an appropriate measure of damages. Dr. Frankel has suggested that, although he had not examined the issue with respect to Chunghwa, he may be able to extrapolate from *all* of the alleged co-conspirators' *market share* a *probability* that Plaintiffs purchased finished products containing allegedly price-fixed tubes from Chunghwa. *See*, *e.g.*, Schwing Decl., Ex. A, at 277:04-278:13, 281:04-282:11; Schwing Decl., Ex. C, ¶ 34 (June 9, 2014 Dr. Frankel Report) (describing the methodology of "multiplying the aggregate overcharge in each period by the conspirators' estimated combined market share" to "account for the CRTs that were manufactured by non-conspirators").

That approach is impermissible for two reasons. First, as noted above, Dr. Frankel offered no overcharge opinion for Chunghwa, either in his report or at his deposition, and therefore he may not unfairly surprise Chunghwa with an opinion on this issue at trial. Second, that unfounded approach is premised on the theory that Plaintiffs can recover for *any* allegedly price-fixed tube sold by the defendants through joint and several liability. But that theory will not work as to Chunghwa because ACPERA prohibits the application of joint and several liability concepts to Chunghwa. Indeed, the purpose of ACPERA is to expressly protect the leniency applicant from joint and several liability by holding it liable only for the specific damages attributable to that applicant's commerce. Here, Plaintiffs' expert relied on *all* defendants' *combined* market share, admitting that he did not "take [Chunghwa's] market share in various sizes of tubes into account in [his] qualitative and quantitative analysis." Schwing Decl., Ex. A, at 279:12-16. The combined market share theory therefore provides no basis upon which Plaintiffs can establish actual damages attributable to Chunghwa, as

required under ACPERA, and further demonstrates that any opinion at trial regarding actual damages would lack foundation and be speculative. Fed. R. Evid. 104(a), 702, 703.*

Indeed, there are numerous foundational problems with relying upon a global market share to calculate any particular plaintiff's actual damages attributable to Chunghwa. For example, it is highly unlikely that any finished product maker purchased tubes from Chunghwa in the same proportion as its global market share, let alone that those finished product makers sold those products to each of the specific plaintiffs here in like proportions. Plaintiffs' experts have not studied that issue, let alone provided any opinion to that effect. In fact, Plaintiffs' expert recognized that he "[did] not possess information on the identity of the CRT manufacturer for each model of CRT Product purchased by" each plaintiff. Schwing Decl., Ex. C, ¶ 42. Additionally, the global market share also masks significant differences among the defendants. Chunghwa did not even make many of the tube sizes that are the subject of Plaintiffs' damage claims. Nor did Chunghwa make any tubes in the Western Hemisphere, which is where many of the tubes underlying the damage claims were likely made. *See*, *e.g.*, Decl. of Yang Sheng-Jen in Supp. of Chunghwa's Mot. for Summ. J. on DAPs' State Law Claims ¶ 4, ECF No. 2973-1. Further, the use of market shares and averages also masks differences among the defendants in terms of pricing and potential overcharges; it is implausible that an overcharge, if any, would be exactly the same for each defendant. And Plaintiffs' expert acknowledges that the supposed overcharge varied by tube size. *See*, *e.g.*, Schwing Decl., Ex. C, ¶ 10 (calculating estimated overcharges based on tube size); *id.* at Ex. 5 (same). But Plaintiff's expert did not examine which tube sizes Chunghwa made or what Chunghwa's market share was for those tube sizes. Schwing Decl., Ex. A., at 279:12-20, 281:04-12. The above examples further demonstrate that any attempt to extrapolate actual damages attributable to Chunghwa from the market share theory would be speculative and without foundation. Fed. R. Evid. 104(a), 702, 703.

---

* When the Supreme Court limited recovery of "actual damages sustained" under the Clayton Act to direct purchasers, it voiced *the very* evidentiary concerns that Plaintiffs' experts seek to overcome here. *See Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 493 (1968) ("Since establishing the applicability of the passing-on defense would require a convincing showing of each of these virtually unascertainable figures, the task would normally prove insurmountable."); *see also Illinois Brick Co. v. Illinois*, 431 U.S. 720, 747 (1977).

Finally, any reliance on the combined market share theory to speculate as to actual damages attributable to Chunghwa would be both irrelevant and prejudicial. Fed. R. Evid. 401, 402. Chunghwa cannot be jointly and severally liable, and the combined market share theory set forth by Plaintiffs' experts has no relevance to establishing the actual damages attributable to Chunghwa. Further, any use of numbers flowing from the combined market share theory to estimate actual damages of one plaintiff attributable to Chunghwa—when the reports are not based on actual purchases of Chunghwa's CRTs, but rather averages purportedly applicable to the defendants as a group—would be highly prejudicial, confuse the issues, and mislead the trier of fact as to the actual damages that may be awarded against Chunghwa. Fed. R. Evid. 403. The Court should not allow Plaintiffs' experts to opine on actual damages attributable to Chunghwa when they never performed the underlying work and calculations to establish such damages, let alone provided it in their expert reports as required under Rule 26(a)(2).

### IV.     CONCLUSION

Plaintiffs' experts never calculated or attempted to calculate the actual damages Plaintiffs sustained that are attributable to the commerce done by Chunghwa. The Court should exclude any opinion or calculation at trial regarding the actual damages that are attributable to Chunghwa.

DATED:  February 13, 2015         Respectfully submitted,

By:   /s/ *Rachel S. Brass*
        Rachel S. Brass

GIBSON, DUNN & CRUTCHER LLP
JOEL S. SANDERS, SBN 107234
JSanders@gibsondunn.com
RACHEL S. BRASS, SBN 219301
RBrass@gibsondunn.com
AUSTIN SCHWING, SBN 211696
ASchwing@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, California 94105-2933
Telephone: 415.393.8200
Facsimile: 415.393.8306

| | |
|---|---|
| 1 | FARMER BROWNSTEIN JAEGER LLP |
| 2 | WILLIAM S. FARMER, SBN 46694 |
| | WFarmer@FBJ-law.com |
| 3 | DAVID BROWNSTEIN, SBN 141929 |
| | DBrownstein@FBJ-law.com |
| 4 | JACOB ALPREN, SBN 235713 |
| | JAlpren@FBJ-law.com |

FARMER BROWNSTEIN JAEGER LLP
WILLIAM S. FARMER, SBN 46694
WFarmer@FBJ-law.com
DAVID BROWNSTEIN, SBN 141929
DBrownstein@FBJ-law.com
JACOB ALPREN, SBN 235713
JAlpren@FBJ-law.com
235 Montgomery Street, Suite 835
San Francisco California 94104
Telephone 415.962.2876
Facsimile: 415.520.5678

Attorneys for Defendants
CHUNGHWA PICTURE TUBES, LTD and
CHUNGHWA PICTURE TUBES (MALAYSIA) SDN. BHD.

CHUNGHWA'S MOTION IN LIMINE TO EXCLUDE OPINIONS OR CALCULATIONS REGARDING ACTUAL DAMAGES
MASTER CASE NO. 07-CV-5944 SC

# DECLARATION OF SERVICE

I, Joseph Hansen, declare as follows:

I am employed in the County of San Francisco, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 555 Mission Street, Suite 3000, San Francisco, California, 94105, in said County and State. On the date below, I served the within:

**DEFENDANTS CHUNGHWA PICTURE TUBES, LTD. AND CHUNGHWA PICTURE TUBES (MALAYSIA) SDN. BHD.'S MOTION IN LIMINE TO EXCLUDE OPINIONS OR CALCULATIONS REGARDING ACTUAL DAMAGES ATTRIBUTABLE TO CHUNGHWA**

to all named counsel of record as follows:

☑ **BY ECF (ELECTRONIC CASE FILING)**: I e-filed the above-detailed documents utilizing the United States District Court, Northern District of California's mandated ECF (Electronic Case Filing) service on February 13, 2015. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the documents upon confirmation of e-filing.

I certify under penalty of perjury that the foregoing is true and correct, that the foregoing document(s) were printed on recycled paper, and that this Declaration of Service was executed by me on February 13, 2015, at San Francisco, California.

/s/ *Joseph Hansen*
Joseph Hansen

101866175.10