# EXHIBIT A

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF KANSAS

 3

     IN RE:
 4

 5   URETHANE ANTITRUST LITIGATION        CASE NO. 04-1616

 6

 7
           TRANSCRIPT OF MOTION IN LIMINE CONFERENCE
 8                           before
                   HONORABLE JOHN W. LUNGSTRUM
 9                             on
                         JANUARY 9, 2013
10

11                          APPEARANCES

12   For the Class
     Plaintiffs:           Joseph Goldberg
13                         Freedman, Boyd, Hollander, Goldberg
                           & Ives PA
14                         20 First Plaza, Suite 700
                           Albuquerque, NM 87102
15

16                         Roberta D. Liebenberg
                           Fine, Kaplan and Black, RPC
17                         One South Broad Street, Suite 2300
                           Philadelphia, PA 19107
18

19                         Michael J. Guzman
                           Kellogg, Huber, Hansen, Todd, Evans
20                         & Figel, PLLC
                           Sumner Square
21                         1615 M Street, NW, Suite 400
                           Washington, DC 20036-3209
22

23                         Kit A. Pierson
                           Cohen, Milstein, Sellers & Toll
24                         West Tower - Ste. 500
                           1100 New York Ave., N.W.
25                         Washington, DC 20005-3934
```

                    REBECCA S. RYDER, CCR, RMR
                    UNITED STATES COURT REPORTER
                            913-735-2334

1    blah.  We're going to put on evidence of -- there's
2    nothing wrong with any of that.  It's just you're not
3    going to tell them, by the way, members of the jury,
4    they aren't here because they paid us some money.
5            MR. GUZMAN:  We had intended to say things
6    along the lines of, we allege this conspiracy that
7    involves these other companies.  They are not here.
8    This case is against Dow and Dow only.
9            THE COURT:  I have no problem with that.
10           MR. GUZMAN:  Thank you, your Honor.
11           THE COURT:  Yeah.  All right.  Anything
12   further?  All right.  Let's turn to the deposition
13   objections.  Let me say as a first preliminary that
14   there was a lot of skirmishing about the way in which
15   the deposition excerpts were presented to me.  I
16   disregarded both the transmittal letter with the last
17   section of depositions and the letter sent to me by
18   Dow questioning the contents of that transmittal
19   letter.  I threw them both in the trash, actually,
20   the recycling, to be more precise, but I didn't need
21   the further help that whoever was trying to give me.
22   I do want to say this though because I know that is a
23   cumbersome process.  This whole deposition objection
24   thing is a pain in the neck for everybody, and I want
25   to thank and congratulate both sides on an excellent

|   |   |
|---|---|
| 1 | job in your own ways, either printed in or |
| 2 | handwritten in, on making very clear to me what your |
| 3 | objections were and why; and tabbing those pages for |
| 4 | me saved my staff a considerable amount of effort and |
| 5 | me a considerable amount of time.  I read all this |
| 6 | stuff, and it really helps me to have you have done |
| 7 | it the way you did it.  So thank you for your |
| 8 | efforts. |
| 9 | Now, I have reviewed all of the deposition |
| 10 | transcripts that were provided to me, and I am |
| 11 | prepared to rule on the objections made.  There are a |
| 12 | couple of questions I want to ask about a couple of |
| 13 | objections, but, generally speaking, I am prepared to |
| 14 | simply tell you my rulings.  I will make a few |
| 15 | preliminary comments and then proceed to read to you |
| 16 | the rulings.  I am sorry I have not had the time to |
| 17 | prepare my rulings in written form, so please listen |
| 18 | carefully and ask me to repeat or clarify, and feel |
| 19 | free to order a transcript, if you wish.  This is |
| 20 | going to be painful for all of us.  This is one of |
| 21 | the things I think the court reporter hates more than |
| 22 | anything else, when we get down to this, trying to |
| 23 | follow all the numbers and lines and everything else. |
| 24 | For your guidance, when I state that objections |
| 25 | on certain pages or on ranges of pages are overruled, |

```
 1        I mean that all objections are overruled unless I
 2        specifically state otherwise.  In other words, there
 3        may have been multiple objections raised.  If I say
 4        overruled, I'm not going to deal with each one of
 5        them separately.  When I sustain an objection as --
 6        this is the term I will use, beyond the scope, I'm
 7        using that phrase as shorthand for a combination of
 8        reasons for sustaining objections which plaintiffs
 9        style as outside the scope.  Those reasons include
10        not only literal determinations of outside the scope
11        of direct examination by plaintiffs but also Rule 403
12        considerations of confusion, delay, and
13        cumulativeness and the court's inherent power to
14        control the presentation of evidence.  But beyond the
15        scope is my shorthand for that.
16             While there is no exact rule of thumb that
17        either requires or helps to determine proportionality
18        between direct and cross examination, I do think that
19        ==the court can, and should, be cognizant of the order==
20        ==of presentation of proof by which the party who bears==
21        ==the burden of persuasion also enjoys the advantage of==
22        ==primacy in presenting its evidence.==  With deposition
23        testimony, unlike live testimony, the party who seeks
24        to present evidence which might arguably fall within
25        the scope of direct if liberally defined but which is
```

1    lengthy and potentially confusing in the context of
2    the plaintiffs' presentation does not lose the
3    opportunity of spontaneity or timeliness which is
4    involved in live testimony, where if you don't ask
5    the question at that time, it may get away from you
6    for a number of different reasons.  The out-of-scope
7    testimony is available to be presented in the
8    parties' case-in-chief, and the momentary potential
9    for effective discrediting is not lost in the same
10   way as with a live witness.  I believe that is
11   particularly so in this particular case.
12        Nor do we have a situation, as we would with a
13   live witness, where a witness might be inconvenienced
14   by having to return to the stand where we have a
15   video deposition involved.  With a live witness I may
16   be more liberal in my view about what is beyond the
17   scope, as I have used that term, but with these
18   deposition transcripts I think that's a different
19   issue.  Moreover, delay may be prevented because the
20   proponent of the evidence in this case -- by and
21   large, Dow -- may conclude it is unnecessary on
22   reflection and not offer the volume of evidence in
23   its case-in-chief that it might like to have inserted
24   in the plaintiffs' case-in-chief.  It's a decision
25   Dow has to make as a strategic or tactical matter.