ROBINS KAPLAN LLP
Roman M. Silberfeld, Bar No. 62783
RMSilberfeld@rkmc.com
David Martinez, Bar No. 193183
DMartinez@rkmc.com
Laura E. Nelson, Bar No. 231856
LENelson@rkmc.com
Jill S. Casselman, Bar No. 266085
JSCasselman@rkmc.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone:    310-552-0130
Facsimile:    310-229-5800

Attorneys for Plaintiffs
BEST BUY CO., INC.; BEST BUY
PURCHASING LLC; BEST BUY
ENTERPRISE SERVICES, INC.; BEST BUY
STORES, L.P.; and BESTBUY.COM, L.L.C.

[Additional counsel listed on signature page]

ROBINS KAPLAN LLP
TTORNEYS AT LAW
LOS ANGELES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master Case No.: 3:07-cv-05944-SC MDL No. 1917 |
| | [Honorable Samuel Conti] |
| This document relates to: | **NOTICE OF MOTIONS AND MOTIONS *IN LIMINE* (NOS. 1 - 18)** |
| *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al., No. 11-cv-05513-SC* | **[Declarations of Jill S. Casselman, Laura Nelson, and Ariel Ezrachi, PhD filed concurrently herewith]** |
| *Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264-SC* | Date:    TBD Time:    TBD Ctrm:    Courtroom 1, 17th Floor |
| *Target Corp. v. Chunghwa Pictures Tubes, Ltd., et al., No. 3:07-cv-05514-SC* | |
| *Target Corp. v. Technicolor SA, et al.,* Case No. 3:11-cv-05514-SC | |
| *Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al., No. 11-cv-05502-SC* | |

60945452.2

*Sears, Roebuck and Co., et. al. v. Chunghwa Picture Tubes, Ltd., et al., No. 11-cv-5514*

*Sharp Electronics Corporation, et al. v. Hitachi, Ltd., et al., No. 13-cv-01173-SC*

*Sharp Electronics Corp., et al. v. Koninklijke Philips Electronics N.V., et al., No. 13-cv-2776 SC*

*ViewSonic Corporation v. Chunghwa Picture Tubes, Ltd., et al., No. 14-cv-02510*

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT,** at a time to be later determined by the Court, before the Honorable Samuel Conti, United States District Judge of the Northern District of California, San Francisco Division, located in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., and BestBuy.com, LLC, ("Best Buy"); Alfred H. Siegel, solely in his capacity as Trustee of the Circuit City Stores, Inc. Liquidating Trust ("Circuit City"); Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. ("Sharp"); Sears, Roebuck and Co., and Kmart Corporation (collectively "Sears and Kmart"); Target Corporation, ( "Target"); and ViewSonic Corporation ("ViewSonic"), (collectively, "Plaintiffs",) will and hereby do move the Court for an order granting the following Motions *In Limine*:

1.  Motion to Exclude Evidence or Argument regarding Plaintiffs' Competitive Intelligence Practices

2.  Motion to Exclude Evidence or Argument regarding Downstream Pass-Through

3.  Motion to Exclude Evidence or Argument regarding Plaintiffs' Private Label CRT Products

4.  Motion to Exclude Evidence or Argument regarding Plaintiffs' Purported "Market Power"

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

5. Motion to Exclude Evidence or Argument regarding Plaintiffs' Ability to Seek Treble Damages and Attorneys' Fees and Costs

6. Motion to Exclude Evidence or Argument regarding Other Actions and Settlements in this MDL

7. Motion to Exclude Argument That Plaintiffs' Claims are Barred Because They Arise from Foreign Commerce

8. Motion to Exclude Evidence or Argument regarding Plaintiffs' Alleged Failure to Mitigate Their Damages

9. Motion to Exclude Live Witnesses from Testifying in Defendants' Case-In-Chief Who Were Not Made Available for Live Testimony in Plaintiffs' Case-In-Chief

10. Motion to Exclude Evidence or Argument regarding Incomplete Pass-Through of Overcharges through Affiliate Entities

11. Motion to Establish the Preclusive Effect of, or in the Alternative Admit, the Decision of the European Commission

12. Motion to Exclude Percipient Witnesses, Except for One Party Representative, From the Courtroom Unless They Are Testifying

13. Motion to Exclude Argument or Evidence Regarding Purportedly Pro-Competitive Justifications For Defendants' Agreements Regarding CRT Price, Supply, Production, or Customers

14. Motion to Exclude References to and Evidence of Defendants' Non-Indictment

15. Motion to Admit Testimony of Summary Witness

16. Motion to Exclude Evidence of or References to the Retailer Plaintiffs Purchasing Finished Products Containing CRTs from Plaintiff ViewSonic or Plaintiff Sharp

17. Motion to Exclude Evidence of or References to ViewSonic's Purchasing Team Moving Abroad After The Purchases at Issue in This Case Were Made

18. Motion to Exclude References to the Current Financial Condition of Any of the Named Plaintiffs

These motions are based on this notice, the accompanying memorandum of points and

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

authorities, the concurrently filed declarations of Jill S. Casselman, Laura Nelson, Ariel Ezrachi,

and the other records, papers, and orders in this action, as well as such additional evidence and

arguments as may be presented by the parties before or at the hearing.

Respectfully submitted,

Dated:  February 13, 2015        **ROBINS KAPLAN LLP**

By:    /s/ Roman M. Silberfeld
              Roman M. Silberfeld
              David Martinez

Attorneys For Plaintiffs
BEST BUY CO., INC.; BEST BUY PURCHASING
LLC; BEST BUY ENTERPRISE SERVICES, INC.;
BEST BUY STORES, L.P.; and BESTBUY.COM,
L.L.C.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

60945452.2

- 4 -

# Table of Contents

                                                                                                        **Page**

I.      Introduction .................................................................................................... 1

II.     Governing Rules .............................................................................................. 1

III.    Legal Argument ............................................................................................... 2

        1.      Motion to Exclude Evidence or Argument Regarding Plaintiff's
                Competitive Intelligence Practices................................................... 2

                a.      Introduction ........................................................................... 2

                b.      Factual Background ............................................................... 3

                        (1)     Defendants' CRT Cartel........................................... 3

                        (2)     Plaintiffs' Competitive Intelligence Practices.......... 3

                        (3)     Prior Discovery Orders ............................................ 4

                c.      Irrelevant And Prejudicial Evidence Regarding Plaintiffs'
                        Competitive Intelligence Practices Should Be Excluded........... 6

                        (1)     Evidence of Competitive Intelligence is Irrelevant to
                                Liability ................................................................... 6

                                (a)     Evidence of Plaintiffs' Conduct Cannot Immunize
                                        Defendants' Price Fixing Activities .................... 6

                                (b)     Evidence of How Plaintiffs Gather Competitive
                                        Intelligence is Irrelevant to Downstream Pricing............... 9

                                (c)     Evidence of How Plaintiffs Gather Competitive
                                        Intelligence is Irrelevant to Upstream Pass-Through........ 10

                                (d)     Public Policy Precludes Admission of Plaintiffs'
                                        Business Intelligence Practices ......................... 11

                d.      Any Purported Relevance of Evidence of Plaintiffs' Competitive
                        Intelligence Practices is De Minimis and is Substantially
                        Outweighed by the Risk of Unfair Prejudice. ............................. 12

        2.      Motion to Exclude Evidence or Argument regarding Downstream Pass-
                Through........................................................................................ 13

                a.      Federal Law Prohibits the "Pass-On" Defense ......................... 14

                b.      Minnesota State Law Prohibits "Pass-On" Evidence ............... 16

        3.      Motion to Exclude Evidence or Argument regarding Private Label CRT
                Products........................................................................................ 20

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

a.     Factual Background ..................................................... 20

b.     Irrelevant and Prejudicial Evidence Regarding "Private Label" CRT Products Should Be Excluded. ............................ 21

4.     Motion to Exclude Evidence or Argument regarding Plaintiffs' Purported "Market Power" .............................................. 22

5.     Motion to Exclude Evidence or Argument regarding Plaintiffs' Ability to Seek Treble Damages and Attorneys' Fees and Costs ............................. 23

6.     Motion to Exclude Evidence or Argument regarding Other Actions and Settlements in this MDL ......................................... 24

a.     References to Absent Plaintiffs' Claims against Defendants Should Be Excluded. .......................................... 25

b.     References to Any Plaintiffs' Settlements with Defendants Should Be Excluded. .......................................... 26

7.     Motion to Exclude Argument That Plaintiffs' Claims are Barred Because They Arise from Foreign Commerce ...................................... 29

8.     Motion to Exclude Evidence or Argument regarding Plaintiffs' Alleged Failure to Mitigate Their Damages .................................. 30

9.     Motion to Exclude Live Witnesses from Testifying in Defendants' Case-In-Chief Who Were Not Made Available for Live Testimony in Plaintiffs' Case-In-Chief ............................................... 31

10.     Motion to Exclude Evidence or Argument Regarding about Incomplete Pass-Through of Overcharges through Affiliate Entities ....................... 33

11.     Motion to Establish the Preclusive Effect of, or in the Alternative Admit, the European Commission Decision ................................. 34

a.     Introduction .......................................................... 34

b.     Factual Background ............................................... 36

c.     Comparison Of Price-Fixing Under EU And U.S. Competition Law ........ 37

d.     The EC Decision Should Be Given Preclusive Effect As To Certain Factual Findings ...................................... 39

(1)     Elements Of Issue Preclusion ......................... 39

(2)     Issue Preclusion Can Apply To Foreign Judgments .......... 40

(3)     One Court Has Already Granted Partial Preclusive Effect To The EC Decision ............................. 41

(4)     Issue Preclusion Should Bar Relitigation Of Certain Issues Resolved By The EC Decision In this Case ................... 42

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

(a) Identical Issues ................................................................................. 43

(b) Issue Actually Litigated and Decided .................................. 44

(c) Full And Fair Opportunity To Litigate .............................. 44

(d) Critical Or Necessary Finding........................................... 46

(e) Final And Valid Judgment ................................................. 48

e. Alternatively, The EC Decision Should Be Admitted Into Evidence ........ 51

(1) The EC Decision Is Relevant ................................... 51

(2) The EC Decision Is Not Inadmissible Hearsay ............................. 53

(3) The EC Decision Is Not Privileged .................................. 54

(1) The EC Decision Will Not Risk Undue Prejudice To Defendants ................................................................. 54

(2) United States District Courts Have Admitted The Preliminary Fact Findings Of Foreign Tribunals Into Evidence ........................................................... 55

f. Conclusion ........................................................................... 56

12. Motion to Exclude Percipient Witnesses, Except for One Party Representative, From the Courtroom Unless They Are Testifying ...................... 56

13. Exclude Argument or Evidence Regarding Purportedly Pro-Competitive Justifications For Defendants' Agreements Regarding CRT Price, Supply, Production, or Customers .......................................................... 57

14. Motion to Exclude References To And Evidence Of Defendants' Non-Indictment ....................................................................... 59

15. Motion to Admit Testimony of Summary Witnesses............................................. 60

a. Statement of Facts............................................................ 61

b. Argument .......................................................................... 63

16. Motion to Exclude Evidence of or References to the Retailer Plaintiffs Purchasing Finished Products Containing CRTs from Plaintiff ViewSonic or Plaintiff Sharp ............................................................. 65

17. Motion to Exclude Evidence of or References to ViewSonic's Purchasing Team Moving Abroad After The Purchases at Issue in This Case Were Made................................................................... 66

18. Motion to Exclude References to the Current Financial Condition of Any of the Named Plaintiffs ...................................................... 66

IV. CONCLUSION ................................................................................. 67

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1

**Table of Authorities**

2

**Page**

3

4

**Cases**

5

*Acands, Inc. v. AON Risk Services,*
   2004 WL 2601035 (E.D. Pa. Nov. 10, 2004)..................................................... 26

6

7

*ADC Telecomm, Inc. v. Switchcraft, Inc.,*
   2007 WL 6347404 (D. Minn. Jan. 8, 2007) ...................................................... 32

8

*Alfadda v. Fenn,*
   966 F. Supp. 1317 (S.D.N.Y. 1997)........................................................ 40, 41, 43

9

10

*Am. Home Assurance Co. v. Sunshine Supermarket, Inc.,*
   753 F.2d 321 (3d Cir. 1985)................................................................ 60

11

12

*Amica Life Ins. Co. v. Barbor,*
   488 F.Supp.2d 750 (N.D. Ill. 2007) .......................................................... 40

13

*Amini Innovation Corp. v. JS Imports, Inc.*
    497 F. Supp.2d 1093 (C.D. Cal. 2007) ...................................................... 32

14

15

*Applied Elastomerics, Inc. v. Z-Man Fishing Products, Inc.,*
   No. C 06-2469 CW, 2006 WL 2868971 (N.D. Cal. Oct. 6) ............................................. 32

16

17

*Arizona v. Shamrock Foods Co.,*
   729 F.2d 1208 (9th Cir. 1984)............................................................... 15

18

*Associated General Contractors of California, Inc. v. California State Council of
   Carpenters,*
   459 U.S. 519 (1983)................................................................... 17

19

20

*Bank of Montreal v. Kough,*
   612 F.2d 467 (9th Cir. 1980)................................................................ 40

21

22

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
   472 U.S. 299 (1985)................................................................... 7

23

24

*Best Buy v. AU Optronics Corporation,*
   Case No. 10-4572 SI, at p. 3:8-13 ........................................................... 31

25

*Best Buy v. Hitachi Ltd., et.al.,*
   MDL Dkt. No. 1897 ................................................................. 3, 51

26

27

*Blue Cross & Blue Shield of N.J., Inc., v. Philip Morris, Inc.,*
   No. 98 CV 3287(JBW), 2000 WL 1805359 (E.D.N.Y. Dec. 11, 2000) ........................... 26

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Borunda v. Richmond*,
    885 F.2d 1384 (9th Cir. 1988)........................................................................................ 59

*Braintree Labs. v. McKesson Corp.*,
    No. 11-80233, 2011 WL 5025096 (N.D. Cal. Oct. 20, 2011) ..................................... 15, 66

*Bridgeway Corp. v. Citibank*,
    201 F.3d 134 (2d Cir. 2000)......................................................................................... 53

*British Midland Airways Ltd. v. Int'l Travel, Inc.*,
    497 F.2d 869 (9th Cir. 1974)........................................................................................ 40

*Brooks v. Cook*,
    938 F.2d 1048 (9th Cir. 1991)...................................................................................... 23

*Carrier Corp. v. Outokumpu Oyj*,
    2012 WL 678151 (6th Cir. Mar. 2, 2012) .................................................................... 30

*Chattanooga Foundry v. Atlanta*,
    203 U.S. 390 (1906)..................................................................................................... 18

*Contemporary Mission, Inc. v. Bonded Mailings, Inc.*,
    671 F.2d 81 (2d Cir. 1982)........................................................................................... 25

*Copperweld Corp. v. Independence Tube Corp.*,
    467 U.S. 752 (1984)....................................................................................................... 2

*Costco Wholesale Corp. v. AU Optronics Corp. et al.*,
    2014 U.S. Dist. LEXIS 132145 (W. D. Wash. Sept. 17, 2014) ................................ passim

*Costco Wholesale Corporation v. Au Oprtronics Corporation, et al.*
    C13-1207RAJ (W.D. Wash.) ....................................................................................... 16

*Davis & Cox v. Summa Corp.*,
    751 F.2d 1507 (9th Cir. 1985), *superseded by statute on other grounds*......................... 46

*Dell Inc. v. AU Optronics Corporation*,
    Case No. 10-1064 SI ................................................................................................... 31

*Doan v. Astrue*,
    No. 04cv2039 J(RBB), 2008 WL 238454 (S.D. Cal. Jan. 29, 2008) (.............................. 32

*Eastman Kodak Co. v. Image Tech. Servs.*,
    504 U.S. 451 (1992)..................................................................................................... 22

*Eichel v. N.Y. Central R.R.*
    375 U.S. 253 (1963) (per curiam)................................................................................ 26

*Ellerton v. Ellerton*,
    745 F. Supp. 2d 458 (D. Vt. 2010).................................................................................. 1

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Eolas Techs., Inc. v. Microsoft Corp.*,
   270 F. Supp. 2d 997 (N.D. Ill. 2003) .................................................................. 32

*FIGA v. R.V.M.P. Corp.*,
   874 F.2d 1528 (11th Cir. 1989).......................................................................... 60

*Fortner Enters. v. U.S. Steel Corp.*,
   394 U.S. 495 (1969) ............................................................................................ 22

*Frost v. Shipowners & Merchants Towboat Co.*,
   1974 U.S. Dist. LEXIS 8570 ............................................................................... 11

*Galbraith v Hartford Fire Ins. Co.*,
   464 F.2d 225 (3d Cir. 1972)............................................................................... 60

*Geders v. United States*,
   425 U.S. 80 (1976) ............................................................................................. 56

*Gentile v. County of Suffolk*,
   926 F.2d 142 (2d Cir. 1991)............................................................................... 53

*Geo. F. Martin Co. v. Royal Ins. Co. of Am.*,
   2004 WL 1125048 (N.D. Cal. May 14, 2004) .................................................... 32

*Green v. Baca*,
   226 F.R.D. 624 (C.D. Cal. 2005) ....................................................................... 27

*Green v. Denver & Rio Grande W. R.R. Co.*,
   59 F.3d 1029 (10th Cir. 1995)............................................................................ 26

*Gribben v. United Parcel Serv., Inc.*,
   528 F.3d 1166 (9th Cir. 2008)............................................................................ 27

*Hanover Shoe', Inc. v. United Shoe Mach. Corp.*,
   392 U.S. 481 (1968) .............................................................................. 14, 15, 31, 65

*Hawaii v. Standard Oil Co. of California*,
   405 U.S. 251 (1972) ........................................................................................... 14

*HBE Leasing Corp. v. Frank*,
   22 F.3d 41 (2d Cir. 1994)................................................................................... 23

*Hewlett- Packard Co. v. Mustek Systems, Inc.*,
   2001 WL 36166855 (S.D. Cal. June 11, 2001).................................................. 32

*Hilton v. Guyot*,
   hfda\l159 U.S. 113 (1895)................................................................................. 40

*Hoffmann-La Roche Ltd v. Empagran S.A.*,
   542 U.S. 155 (2004)........................................................................................... 29

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc.*,
  602 F.3d 237 (3d Cir. 2010).................................................................. 48

*Ilano v. H&R Block Eastern Enterprises*,
  2011 WL 1897431 (S.D. Fla. May 11, 2011) ...................................... 26

*Illinois Brick and California v. ARC America Corp.*,
  490 U.S. 93, 109 S. Ct. 1661, 104 L. Ed. 2d 86 (1989) ...................... 17

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)................................................................... passim

*In re Airline Ticket Comm'n Antitrust Litig.*,
  918 F. Supp. 283 (D. Minn. 1996) ...................................................... 31

*In re Apple iPod iTunes Antitrust Litig.*,
  No. C 05-00037, 2011 WL 5864036 (N.D. Cal. Nov. 22, 2011)........ 15

*In re Aspartame Antitrust Litig.*,
  2008 U.S. Dist. LEXIS 121490 ........................................................... 12

*In re ATM Fee Antitrust Litig.*,
  686 F.3d 741 (9th Cir. 2012)............................................................... 33

*In re Auto. Refinishing Paint Antitrust Litig.*,
  2006 U.S. Dist. LEXIS 34129 (E.D. Pa. May 26, 2006) .................. 7, 13

*In re Cardizem CD Antitrust Litig.*,
  332 F.3d 896 (6th Cir. 2003)............................................................... 58

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
  681 F.Supp.2d 141 (D. Conn. 2009) ............................................. 55, 56

*In re Folding Carton Antitrust Litig.*,
  1978 U.S. Dist. LEXIS 20409 (N.D. Ill. May 5, 1978) ...................... 11

*In re High Fructose Corn Syrup Antitrust Litig.*,
  295 F.3d 651 (7th Cir. 2002)............................................................... 60

*In re Homestore.com, Inc.*,
  2011 WL 291176 (C.D. Cal. Jan. 25, 2011) ................................. 28, 66

*In re Japanese Elec. Prods. Antitrust Litig.*,
  723 F.2d 238 (3d Cir.1983),
  *rev'd on other grounds sub nom.*,
  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)............................................................................ 56

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    226 F.R.D. 492 (M.D. Pa. 2005) ............................................................ 11

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. 07-md-1819 CW (N.D. Cal.), Order on Motions ........................ 23

*In re Tableware Antitrust Litig.*,
    No. C-04-3514 VRW, 2007 WL 781960 (N.D. Cal. Mar. 13, 2007) ............................. 23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2011 WL 4634031 (N.D. Cal. Oct. 5, 2011) ........................................ 30

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2012 WL 506327 (N.D. Cal. Feb. 15, 2012) ........................................ 29

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
    MDL No. 1827 (N.D. Cal.) ............................................................ passim

*In re Vitamins Antitrust Litig.*,
    198 F.R.D. 296 (D.D.C. 2000) ............................................................ 11

*In re West Coast Dept. Stores Antitrust Litig.*,
    Civil No. C-79-2724 SW, 1979 WL 1721 (N.D. Cal. Nov. 16, 1979) ............................. 67

*Inf. Res., Inc. v. Dun & Bradstreet Corp.*,
    1998 WL 851607 (S.D.N.Y. Dec. 8, 1998) .................................. 41, 45, 49, 55

*J.W. v. City of Oxnard*,
    Case No. 07-06191, 2008 WL 4810298 (C.D. Cal. Oct. 27, 2008) .................................. 59

*Johnson v. Ford Motor Co.*,
    988 F.2d 573 (5th Cir. 1993) ............................................................ 26

*Kamilche Co. v. U.S.*,
    53 F.3d 1059 (9th Cir. 1995) ............................................................ 44

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ............................................................ 15

*Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*,
    340 U.S. 211 (1951), Overruled .................................................. 2, 5, 7, 11

*Kinan v. Brockton*,
    876 F.2d 1029 (1st Cir. 1989) ............................................................ 25

*Larson v. Palmateer*,
    515 F.3d 1057 (9th Cir. 2008) ............................................................ 56

*Lee v. Nat'l R.R. Passenger Corp.*,
    2012 WL 130267 (S.D. Miss. Jan. 17, 2012) ........................................ 26

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007) .......................................................................... 39

*Lorix v. Cromptom*,
   736 N.W.2d 619 (Minn. 2007) ................................................. passim

*Luben Indus., Inc. v. U.S.*,
   707 F.2d 1037 (9th Cir. 1983) ................................................. 48, 49

*Luce v. U.S.*,
   469 U.S. 38 (1984) ............................................................................ 1

*Mason v. Texaco, Inc.*,
   741 F. Supp. 1472 (D. Kan. 1990) .................................................. 32

*Matra Hachette SA v Commission* [1994]
   ECR II-595 ..................................................................................... 38

*Meijer, Inc. v. Abbott Labs.*,
   251 F.R.D. 431 (N.D. Cal. 2008) ............................................ 11, 15

*Memorex Corp. v. IBM Corp.*,
   555 F.2d 1379 (9th Cir. 1977) .......................................................... 7

*Miller v. County of Santa Cruz*,
   39 F.3d 1030 ................................................................................... 45

*Myers v. Pennzoil Co.*,
   889 F.2d 1457 (5th Cir. 1989) ........................................................ 28

*N. Pac. Ry. Co. v. United States*,
   356 U.S. 1 (1958) ........................................................................... 58

*Nat'l Soc'y of Prof'l Eng'rs v. United States*,
   435 U.S. 679 (1978) ....................................................................... 58

*Old Chief v. United States*,
   519 U.S. 172 (1997) .................................................................. 1, 12

*Oneac Corp. v. Raychem Corp.*,
   20 F.Supp.2d 1233 (N.D. Ill. 1998) ............................................... 41

*Palmer v. Board of Regents of Univ. Sys. of Ga.*,
   208 F.3d 969 (11th Cir. 2008) ........................................................ 26

*Parklane Hosiery Co., Inc. v. Shore*,
   439 U.S. 322 (1979) ........................................................... 39, 40, 44

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
   392 U.S. 134 (1968) ....................................................... 7, 11, 14

- ix -

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ........................................................................................... 25

*Playboy Enters., v. Chuckleberry Publ'n., Inc.*,
  486 F. Supp. 414 (S.D.N.Y. 1980) .................................................................... 27

*Pony Express v. Springsteen*,
  163 F. Supp. 2d 465 (D.N.J. 2001) ............................................................ 41, 43

*Purex Corp. v. Gen. Foods Corp.*,
  318 F. Supp. 322 (C.D. Cal. 1970) .................................................................... 11

*Quad/Graphics Inc. v. Fass*,
  724 F.2d 1230 (7th Cir. 1983) ........................................................................... 28

*Resolution Trust Corp. v. Keating*,
  186 F.3d 1110 (9th Cir. 1999) ........................................................................... 43

*Roberts v. Harnischfeger Corp.*,
  901 F.2d 42 (5th Cir. 1989) ............................................................................... 26

*Robi v. Five Platters, Inc.*,
  838 F.2d 318 (9th Cir. 1988) ....................................................................... 49, 50

*Robinson v. Hartzell Propeller, Inc.*,
  2008 WL 4679248 (E.D. Pa. Aug. 11, 2008) .................................................... 26

*Ross-Berger Companies, Inc. v. Equitable Life Assur. Soc'y of the U.S.*,
  872 F.2d 1331 (7th Cir. 1989) ........................................................................... 46

*Royal Printing Co. v. Kimberly-Clark Corp.*,
  621 F.2d 323 (9th Cir. 1980) ..................................................... 14, 31, 33, 34

*Royal Printing Co. v. Kimberly-Clark Corp.*,
  621 F.2d 323-327 (9th Cir. 1980) ..................................................................... 65

*S. Pacific Co. v. Darnell-Taenzer Lumber Co.*,
  245 U.S. 531 (1918) ........................................................................................... 14

*Saint Alphonsus Med. Ctr. - Nampa, Inc. v. St. Luke's Health Sys., Ltd.*,
  No. 1:12-CV-00560-BLW, 2013 WL 5488904 (D. Idaho Sept. 30, 2013) ......... 7

*Sanderson v. Winner*,
  507 F.2d 477 (10th Cir. 1974) ........................................................................... 66

*Scandinavian Airlines System AB v Commission* [2005]
  ECR-II 2917 ....................................................................................................... 38

*Shapley v. Nevada Bd. of State Prison Commissioners*,
  766 F.2d 404 (9th Cir.1985) .............................................................................. 39

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

60945452.2

- x -

*State ex rel. W.A.,*
    63 P.3d 607 (Utah 2002) ........................................................................................ 54

*State v. Philip Morris, Inc.,*
    551 N.W.2d 490 (Minn. 1996) ......................................................................... passim

*Steen v. John Hancock Life Ins. Co.,*
    106 F.3d 904 (9th Cir. 1997) ................................................................................ 43

*Syverson v. Int'l Bus. Machs. Corp.,*
    472 F.3d 1072 (9th Cir. 2006) .............................................................................. 48

*Tinius v. Carroll County Sheriff Dept.,*
    No. C03-3001-MWB, 2004 WL 3103962 (N.D. Iowa Dec. 22, 2004) ............ 25

*Tripati v. Henman,*
    857 F.2d 1366 (9th Cir.1988) ............................................................................... 50

*United States ex rel. Evergreen Pipeline Constr. Co., Inc. v. Merritt-Meridian Constr.
    Corp.,*
    1994 WL 577637 (S.D.N.Y. Oct. 19, 1994) ...................................................... 25

*United States v Beechum,* 582 F.2d 898 (5th Cir. 1978) ............................................ 12

*United States v. AU Optronics Corporation et al.,*
    Case No. 3:09-cr-00110-SI ................................................................................... 62

*United States v. Baker,*
    10 F.3d 1374 (9th Cir. 1993), *overruled on other grounds by United States v.
    Nordby,* 225 F.3d 1053 (9th Cir. 2000) ............................................................... 63

*United States v. E. I. du Pont de Nemours & Co.,*
    351 U.S. 377 (1956) .............................................................................................. 22

*United States v. Ham,*
    998 F.2d 1247 (4th Cir. 1993) ................................................................................ 1

*United States v. Hitt,*
    981 F.2d 422 (9th Cir. 1992) ................................................................................ 12

*United States v. Hsiung,*
    2015 WL 400550 (9th Cir. Jan. 30, 2015) .......................................................... 57

*United States v. Hui Hsiung,*
    2015 U.S. App. LEXIS 1590 (9th Cir. Cal. Jan. 30, 2015) ................................ 39

*United States v. Komisaruk,*
    885 F.2d 490 (9th Cir. 1989) ............................................................................... 59

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*United States v. Olano*,
    62 F.3d 1180 (9th Cir. 1995) ........................................................................ 63

*United States v. Paulino*,
    935 F.2d 739 (6th Cir. 1991) ........................................................................ 63

*United States v. Scales*,
    594 F.2d 558 (6th Cir. 1979) ........................................................................ 63

*United States v. Socony-Vacuum Oil Co.*,
    310 U.S. 150 (1940) ..................................................................................... 58

*United States v. Topco Assocs. Inc.*,
    405 U.S. 596 (1972) ..................................................................................... 58

*United States v. Utah Constr. & Mining Co.*,
    384 U.S. 394 (1966) ..................................................................................... 44

*United States v. W.R. Grace*,
    455 F. Supp. 2d 1181 (D. Mont. 2006) ..................................................... 1, 12

*University of Tennessee v. Elliott*,
    478 U.S. 788 (1986) ..................................................................................... 45

*Vas-Cath Inc. v. Mahurkar*,
    745 F. Supp. 517 (N.D. Ill. 1990), *rev'd on other grounds*, 935 F.2d 1555 (Fed.
    Cir. 1991) ..................................................................................................... 41

*Vereeniging Van Cementhandelaren v Commission* [1972],
    ECR 977, [1973] CMLR 7; T-241/01 .......................................................... 38

*Vichi v. Koninklijke Philips Elecs, N.V.*,
    85 A.3d 725 (Del. Feb. 18, 2014) ........................................................... passim

*Walia v. Aegis Ctr. Point Developers Private Ltd.*,
    2014 WL 296003 (N.D. Cal. Jan. 27, 2014) ..................................... 39, 40, 41

*Wash. Alder LLC v. Weyerhaeuser Co.*,
    2004 WL 1119822 (D. Ore. May 19, 2004) ................................................ 46

*Wilk v. Am. Med. Assoc.*,
    719 F.2d 207 (7th Cir. 1983) ................................................................ 7, 8, 12

*Young v. Verson Allsteel Press Co.*,
    539 F. Supp. 193 (E.D. Pa. 1982) ............................................................... 27

**Statutes**

15 U.S.C. § 15(a) ............................................................................................. 23

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

15 USCS § 1 ............................................................................................................. passim

28 U.S.C. § 1291 ............................................................................................................. 48

28 U.S.C. § 1961 (2012) ............................................................................................... 46

Clayton Act. ...................................................................................................................... 14

Foreign Trade Antitrust Improvements Act of 1982 ............................................ 29, 30

Minn. Stat. § 325D.57 ....................................................................................... 16, 17, 18, 19

U.S.S.G. § 3B.1 ................................................................................................................ 63

**Other Authorities**

18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4433, at 308
    (1981) ........................................................................................................................ 50

31 Michael H. Graham, *Federal Practice and Procedure* § 6759, at 663-64 (interim ed.
    1992) ........................................................................................................................ 53

European Council Regulation No. 1/2003 ................................................................... 49

Fed. R. Evid. 1006 ........................................................................................................... 60

Fed. R. Evid. 401 ............................................................................................... 1, 27, 51

Fed. R. Evid. 402 ................................................................................................... 1, 27

Fed. R. Evid. 403 ....................................................................................................... passim

Fed. R. Evid. 408 ............................................................................................ 24, 26, 27

Fed. R. Evid. 408, 1972 ................................................................................................. 27

Fed. R. Evid. 611(a) ................................................................................................ 61, 63

Fed. R. Evid. 615 ............................................................................................................. 56

Fed. R. Evid. 801(d)(2) ................................................................................................. 64

Fed. R. Evid. 803 ............................................................................................................. 53

Fed. R. Evid. 803(6) ....................................................................................................... 64

Fed. R. Evid. 803(8) ............................................................................................. 53, 54, 55

Fed. R. Evid. 803(8)(A)(iii) ......................................................................................... 53

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Fed. R. Evid. 803(8)(C) ..................................................... 53, 55

http://curia.europa.eu/juris/document/document.jsf?text=&docid=136584&pageIndex=0&
    doclang=EN&mode=lst&dir=&occ=first&part=1&cid=51415 ........................................ 50

http://ec.europa.eu/competition/antitrust/antitrust_manproc_3_2012_en.pdf ........................ 45, 49

http://ec.europa.eu/competition/elojade/isef/case_details.cfm?proc_code=1_39437 ................... 37

http://ec.europa.eu/competition/hearing_officers/legislation.html ................................. 46

Jack B. Weinstein, et al., *Weinstein's Federal Evidence*, § 403.05[3][a](Joseph M.
    McLaughlin, ed., Matthew Bender 2d Ed. 2011)............................................. 25

*Report of the Indirect Purchaser Task Force*, 63 ....................................... 17

Restatement (Second) of Conflict of Laws § 98 cmt. F (1971) .................................... 40

Restatement (Second) of Judgments § 13 (1982) ................................................. 48, 50

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# I.
## INTRODUCTION

Plaintiffs respectfully request that the Court issue the following orders excluding certain evidence from trial on grounds that they are irrelevant, inadmissible, and/or unduly prejudicial and admitting certain other evidence.

# II.
## GOVERNING RULES

Courts have the inherent power to grant a motion *in limine* to exclude evidence that could be objected to at trial. *Luce v. U.S.*, 469 U.S. 38, 41 (1984). Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." In turn, Federal Rule of Evidence 401 defines relevant evidence as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Federal Rule of Evidence 403 allows the court to exclude evidence where there is substantial danger that the probative value will be outweighed by the danger of undue prejudice. *Old Chief v. United States*, 519 U.S. 172, 180-192 (1997). For the purposes of Rule 403, unfair prejudice is "an undue tendency to suggest decision on an improper basis." *United States v. W.R. Grace*, 455 F. Supp. 2d 1181, 1194 (D. Mont. 2006) (quoting Fed. R. Evid. 403 advisory committee notes); *see also United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993) ("We have defined undue prejudice as 'a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'"). Rule 403 also allows the court to exclude evidence that might confuse the issues, mislead the jury, or waste time.

Motions *in limine* may also seek a ruling regarding the inclusion of evidence based upon its admissibility. *Ellerton v. Ellerton,* 745 F. Supp. 2d 458, 460 (D. Vt. 2010).

ROBINS KAPLAN LLP
TTORNEYS AT LAW
LOS ANGELES

# III.
# LEGAL ARGUMENT

**1.     Motion to Exclude Evidence or Argument Regarding Plaintiff's Competitive Intelligence Practices**

### a.     Introduction

Plaintiffs move to exclude evidence or argument regarding Plaintiffs' competitive intelligence practices because such evidence is irrelevant and unduly prejudicial under Federal Rules of Evidence 401, 402 and 403.  Plaintiffs' conduct is irrelevant to the determination of Defendants' liability under the antitrust laws, and cumulative and unduly prejudicial to the issues of pass-on and damages.  Accordingly, such evidence should not be admitted for any purpose.

This result would be consistent with *Costco Wholesale Corp. v. AU Optronics Corp. et al.*, 2014 U.S. Dist. LEXIS 132145, (W. D. Wash. Sept. 17, 2014) (in which the Honorable Richard A. Jones barred any mention of Costco's competitive intelligence practices at trial), and longstanding United States Supreme Court precedent.  *See Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*, 340 U.S. 211, 214 (1951) (Evidence of an antitrust plaintiff's conduct is irrelevant and cannot excuse the defendant's conduct.).[1]  Since *Kiefer*, numerous courts have rejected attempts to admit evidence or argument of an antitrust plaintiff's practices, including evidence of contacts with competitors, even in the face of pretextual claims of relevance like those advanced by Defendants here.  They recognize, as did the court in *Costco Wholesale Corp*, that "[w]hatever marginal relevance evidence of [Plaintiffs'] price monitoring might have…is substantially outweighed by its potential to prejudice the jury, confuse it, or put greater burdens on its time."  2014 U.S. Dist. LEXIS 132145 at *6.

Pass-on is not a defense to Plaintiff's claims.[2] Accordingly, as set forth more fully in Plaintiffs' MIL #2, filed concurrently herewith, Defendants cannot justify admission of Plaintiff's competitive intelligence practices on this basis.  But even if pass-on were an available defense, ample evidence exists by which Defendants may attempt to show it without reliance upon

---

[1] Overruled in part on other grounds by *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).

[2] *See, e.g., Lorix v. Cromptom*, 736 N.W.2d 619 (Minn. 2007); *State v. Philip Morris, Inc.*, 551 N.W.2d 490, 497 (Minn. 1996).

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  evidence of Plaintiff's competitive intelligence. Ultimately, Defendants improperly seek to draw

2  attention from their price fixing cartel and improperly prejudice Plaintiffs.  For these reasons and

3  those set forth herein, the Court should grant this motion in all respects.

**b.    Factual Background**

(1)    Defendants' CRT Cartel

6  Plaintiffs allege that Defendants engaged in a vast, highly orchestrated conspiracy to raise,

7  maintain and stabilize the price at which CRTs were sold in the United States.  Defendants

8  perpetrated this conspiracy by, *inter alia*, fixing the prices of CRTs and agreeing to restrict and

9  control supply.  *See, e.g.*, *Best Buy v. Hitachi Ltd., et. al.*, MDL Dkt. No. 1897; FAC, at ¶¶ 4-5;

10  *Best Buy v. Technicolor S.A., et. al.*, BBY Dkt. No. 1; Complaint, at ¶¶ 4-5.  Defendants' well-

11  documented conspiracy has been the subject of investigations by international regulatory

12  agencies, including the United States Department of Justice ("DOJ"), the Korean Fair Trade

13  Commission and the European Commission on Competition.  Dkt. No. 1897, at ¶¶ 173-181.  The

14  DOJ alone has issued numerous indictments, and obtained a guilty plea by co-conspirator

15  Samsung SDI.  *Id.*

(2)    Plaintiffs' Competitive Intelligence Practices

17  Best Buy is a retailer of consumer electronics.  Best Buy has historically given its

18  customers a price match guarantee.  This guarantee is designed to give Best Buy's customers the

19  lowest price possible, not to raise prices.  *See* Ex. A to Casselman Decl. at pgs. 93:18-96:23.  In

20  order to comply with this guarantee, Best Buy must often contact its competitors to confirm the

21  customer's pricing.  As part of its competitor intelligence practices, Best Buy monitors competitor

22  advertisements and records publicly-displayed pricing information, and it subscribes to third party

23  industry analyst information and attends analyst calls.  Best Buy analyzes this information to

24  evaluate the competition's promotional advertising and to assess the competitive landscape.  *Id.*,

25  at pgs. 43:14-46:15.

26  Target is a consumer electronics retailer.  During the relevant period, Target monitored

27  competitors' advertisements, collected publicly-displayed pricing information, and subscribed to

28  industry research reports regarding CRT televisions.  Ex. B to Casselman Decl. at 65:16-67:2.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   This research informed Target's efforts to offer competitive prices and assortments to CRT

2   television consumers.  *Id.* at 65:16-66:23, 304:3-305:18.

3       ViewSonic is a leading provider of visual display technology, including CRT monitors

4   during the relevant period.  ViewSonic monitored publicly available market research reports,

5   trade publications, and advertisements to gather information about its competitors' products,

6   prices, and market shares.  Ex. C to Casselman Decl. at 295:16-296:15, 309:3-12.  This research

7   helped ViewSonic identify competitive prices and features for its CRT monitor assortment.

8       Similarly, Circuit City would conduct local price checks, during which employees would

9   visit competitors' stores to observe posted prices.  Ex. D to Casselman Decl. 51:24–52:13, 54:5–

10  17.  Occasionally, but rarely, the Circuit City employees would pose as a consumer and engage

11  with the competitors' employees to ascertain selling strategies.  *Id.* at 56:12–19, 213:13–22.  This

12  "competitive intelligence" involved only the use of publicly available competitor information—

13  i.e., the price tag displayed on the relevant products—to enable Circuit City to set competitive,

14  *lower* prices.  *Id.* at 215:7–217–10, 220:7–14.

15      Sears would also track its competitors' CRT product offerings and pricing by monitoring

16  publicly available information in advertisements, competitors' stores, and market data reports

17  published by NPD.  Ex. E to Casselman Decl. at 90:22–91:8. As e-commerce became more

18  prevalent, Sears would check the pricing of online retailers like Amazon. *Id.* at 280:11–281:3.

19                    (3)      Prior Discovery Orders

20      The Court has allowed certain discovery of Plaintiff's competitive intelligence practices

21  over the objection of the Best Buy Plaintiffs.  Specifically, on May 16, 2014, Best Buy filed a

22  motion for a protective order to preclude burdensome and irrelevant discovery into its competitive

23  intelligence program. The Special Master heard the matter on June 23, 2014, and issued his

24  Report and Recommendations on the same date.  Casselman Decl., at Ex. G.  The Special Master

25  found as follows:

26          The undersigned rejects Best Buy's argument that this discovery is
            not relevant to the issues herein.  *Discovery directed to the setting*
27          *of prices for finished products charged by Best Buy and other*
            *retailers* could well lead to the discovery of relevant evidence
28          concerning the extent to which, if at all, alleged overcharges were

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

> passed on by Best Buy and other entities above Best Buy in the
> distribution channels for products containing CRTs as well as both
> the fact of damages and their amounts, if any.

*Id.* at Ex. G, pg. 1:14-19 (emphasis added).  The Special Master ruled that the Interrogatories

placed an undue burden on Best Buy.  *Id.* at pgs. 1:20-2:11.  He further ruled that Defendants

were precluded from inquiring on the extent to which Best Buy met with competitors, as follows:

> Finally, Interrogatory No 16 contains a subpart (g) which seeks to
> have Best Buy identify its 'executives', employees; and agents'
> participation in any meetings with' competitors.  This line of
> inquiry seems foreclosed by the <u>Kiefer-Stewart</u> line of cases.

*Id.* at pg. 2:1-4.

However, the Special Master's Report did not analyze the following:

1.     Whether evidence of Best Buy's competitive intelligence practices specifically (as

opposed to evidence of Best Buy's "setting of prices of prices for finished

products" generally) is relevant;

2.     Whether any relevance of Best Buy's competitive intelligence program is

outweighed by the burden, oppression and prejudice to Best Buy; and

3.     Whether the policy precluding discovery into an antitrust plaintiff's conduct bars

Defendants' discovery irrespective of any relevance.

On July 28, 2015, this Court took up the matter and overruled Best Buy's Objection to the

Special Master's Report and Recommendation. *Id.* at Ex. H.  Like Judge Walker, this Court held

that such information may be relevant to determine the extent of any pass-through to indirect

purchasers.  See *id.* at Ex. H, p. 9, lines 11-17.  The Court also concluded that "[e]vidence of how

the competitive intelligence program operates might still be admissible (or at least lead to the

discovery of admissible evidence) at trial to rebut allegations that competitor contacts and price

monitoring are indicative of the existence of a conspiracy as they were in <u>TFT</u>." *Id.* at p. 11, lines

1-6.

However, neither the Judge Walker's Report nor this Court's Order holding that evidence

of Best Buy's "setting of prices for finished products" was relevant addresses the critical question

of whether Best Buy's competitive intelligence practices are relevant to trial issues.  Evidence of

1 | *how* Best Buy or other Plaintiffs gather competitive intelligence is simply irrelevant to the issues

2 | to be adjudicated at trial.

3 |     Discovery relevance and trial relevance are distinct concepts, and even that which may

4 | properly be discovered upon may be excludable at trial.  This is such a case. The fact that the

5 | Court allowed certain discovery of competitive intelligence practices does not mean that such

6 | evidence is relevant at trial or would not cause undue prejudice.  Notwithstanding the discovery

7 | record, evidence of Best Buy's competitor contacts should be excluded from trial.

8 |           **c.**    **Irrelevant And Prejudicial Evidence Regarding Plaintiffs' Competitive**

9 |                 **Intelligence Practices Should Be Excluded**

Evidence of Plaintiffs' competitive intelligence programs are irrelevant to any issue to be

10 | tried in this case, would unduly prejudice Plaintiffs in the eyes of the jury, and should not be

11 | admitted for any purpose.

12 |         **(1)**    Evidence of Competitive Intelligence is Irrelevant to Liability

13 |

14 |              **(a)**    Evidence of Plaintiffs' Conduct Cannot Immunize
                     Defendants' Price Fixing Activities

15 |     The discovery record demonstrates that Defendants will attempt to excuse their own

16 | conspiratorial conduct by introducing evidence that Plaintiffs' employees collected information

17 | about competitor prices by visiting competitor stores open to the public, viewing publicly

18 | displayed competitor pricing, reviewing competitor print advertisements delivered to the public,

19 | and contacting competitors to verify prices in order to implement a price match guarantee.  As

20 | they did in the Best Buy LCD trial, Defendants will claim that Plaintiffs engaged in conduct that

21 | is somehow similar to that of the Defendants by vigorously trying to discover what its

22 | competitors charge for competing products.

23 |     Of course, any such evidence of Plaintiffs' efforts to beat competitor prices cannot justify

24 | Defendants' wrongdoing because Plaintiffs' is precisely the opposite of Defendants' conduct, as

25 | their purpose was to ensure that prices remained *low*.  *See* Ex. A to Casselman Decl. at pgs.

26 | 43:14-46:15; 93:8-96:23.  Any attempt to equate Plaintiffs' procompetitive business practices

27 | with the conspirators' illegal conduct is completely baseless, would likely confuse the jury and

28 | unfairly prejudice Plaintiffs.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Further, Plaintiffs' behavior is wholly irrelevant to this action.  It is black-letter law that

2    evidence of a plaintiff's own alleged anticompetitive conduct is not a defense to an antitrust

3    action and is therefore inadmissible.  *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S.

4    211, 214 (1951) ("If petitioner and others were guilty of infractions of the antitrust laws, they

5    could be held responsible in appropriate proceedings brought against them by the Government or

6    by injured private persons.  The alleged illegal conduct of petitioner, however, could not legalize

7    the unlawful combination by respondents nor immunize them against liability to those they

8    injured."), *overruled in part on other grounds in Copperweld Corp. v. Independence Tube Corp.*,

9    467 U.S. 752 (1984); *see also Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138

10   (1968) ("There is nothing in the language of the antitrust acts which indicates that Congress

11   wanted to make the common-law in pari delicto doctrine a defense to treble-damage actions."),

12   *approved of in Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *In re*

13   *Auto. Refinishing Paint Antitrust Litig.*, 2006 U.S. Dist. LEXIS 34129, *22-24 (E.D. Pa. May 26,

14   2006) (holding that "Plaintiffs' activities are almost wholly irrelevant in proving or disproving the

15   underlying charge," and that "[the] claim must be substantiated by evidence of Defendants'

16   activities, not Plaintiffs'."); *Memorex Corp. v. IBM Corp.*, 555 F.2d 1379, 1382 (9th Cir. 1977)

17   (holding that a "wrongful act committed against one who violates the antitrust laws must not

18   become a shield in the violator's hands against operation of the antitrust laws.  This is particularly

19   true when the defendant has other remedies available to him.").

20   Unclean hands is not a defense to an antitrust violation.  *Memorex Corp. v. Int'l Bus.*

21   *Machines Corp.*, 555 F.2d 1379, 1381 (9th Cir. 1977) ("'Unclean hands' has not been recognized

22   as a defense to an antitrust action for many years."); *Saint Alphonsus Med. Ctr. - Nampa, Inc. v.*

23   *St. Luke's Health Sys., Ltd.*, No. 1:12-CV-00560-BLW, 2013 WL 5488904, at *1 (D. Idaho Sept.

24   30, 2013) ("The main purpose of this evidence . . . is to excuse St. Luke's conduct on the ground

25   that St. Al's was trying to do the same thing.  That is a classic 'unclean hands' defense, and the

26   Supreme Court has rejected that defense in antitrust cases.").

27   Even if it were relevant, such evidence is highly prejudicial and must be excluded.  *Wilk v.*

28   *Am. Med. Assoc.*, 719 F.2d 207, 232 (7th Cir. 1983) (evidence of plaintiff's alleged violations of

60945452.2

- 7 -

1    the antitrust laws should have been excluded, as it created a danger of unfair prejudice and

2    confusion under Rule 403, which could not have been overcome by an instruction that unclean

3    hands defense was unavailable); *Costco Wholesale Corp. v. AU Optronics Corp. et al*., 2014 U.S.

4    Dist. LEXIS 132145 at *6 (W. D. Wash. Sept. 17, 2014) (marginal relevance of plaintiff's price

5    monitoring substantially outweighed by potential unfair prejudice the jury).  This is so even if the

6    Defendant can articulate an alternate theory of relevance.  *Wilk,* 719 F. 2d at 231-32. (evidence of

7    plaintiff's supposed antitrust violation was probative but unduly prejudicial and should have been

8    excluded.)

9        The principle behind the case law is that a conspirator cannot excuse its illegal conduct by

10    equating it to the plaintiff's conduct—lawful or unlawful.  Yet that is exactly what the Defendants

11    are likely to attempt in this case.  Indeed, it is precisely what certain Defendants did in the Best

12    Buy LCD trial—arguing that Best Buy could not recover for the cartel's LCD price fixing and

13    conspiratorial communications because Best Buy supposedly engaged in similar communications

14    with its competitors.  It is what Defendants attempted to do in the Costco LCD trial until Judge

15    Jones granted Costco's motion *in limine* on the subject.  *See Costco Wholesale Corp.*, 2014 U.S.

16    Dist. LEXIS 132145 at *6 ("Defendants contend that they can use evidence that Costco monitors

17    its competitors' retail prices to demonstrate that Defendants' conduct was lawful….Whatever

18    marginal relevance evidence of Costco's price monitoring might have to an issue before the jury

19    is substantially outweighed by its potential to prejudice the jury, confuse it, or put greater burdens

20    on its time.")  In light of this history, Defendants' current claims that they do not seek to use this

21    evidence for this improper purpose ring hollow.

22        The *Costco* court also pointed out that "Defendants can easily argue that monitoring

23    market prices is lawful without pointing to Costco's conduct."  *Id.* at *6.  This observation is

24    equally relevant here. Plaintiffs do not suggest that Defendants may not argue that information

25    sharing is not illegal; only that they cannot introduce evidence of Plaintiff's competitive

26    intelligence to illustrate the point.  Such information is hardly necessary where, as here, the jury

27    will be extensively instructed upon the point.

28        The risk of unfair prejudice by permitting evidence of Plaintiffs' competitive intelligence

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

gathering is palpable.  Whatever actions Plaintiffs may have taken with respect to its competition, that conduct is irrelevant to the inquiry of whether the Defendants and their co-conspirators committed antitrust violations, and such evidence is aimed at impermissibly confusing the jury. Therefore, any evidence of Plaintiffs' competitive-intelligence practices should be excluded under Federal Rules of Evidence 402 and 403.

> (b)     Evidence of How Plaintiffs Gather Competitive Intelligence is Irrelevant to Downstream Pricing.

Defendants have argued, in connection with Best Buy's Motion for a Protective Order, that Plaintiffs' competitive intelligence practices are relevant to downstream pricing.  *See* Casselman Decl., at Ex. I.  First, downstream pass-through is not a defense to this action, as explained more fully by Plaintiff's concurrently filed Motion in Limine # 2. Second, Defendants need not show *how* Plaintiffs gather competitive intelligence to offer evidence of the factors Plaintiffs use in setting downstream prices.

Plaintiff Best Buy has produced a corporate designee who testified at length about the factors that Best Buy considers in setting downstream pricing.  *See* Ex. A to Casselman Decl. at pgs. 43-45.  During his 2012 deposition, Mr. Brian Stone testified that Best Buy reviews competitor advertising "not only from a promotional advertising perspective, but it also could be used from a retail reaction process, as well as to just get a general sense of the overall environment, the competitiveness."  *Id.* at pgs. 45:3-11.  Thus, there will be no dispute at trial that Plaintiffs investigated and reacted to the market in setting prices.  What is disputed is the purported relevance of how Plaintiffs obtained competitor information.  The fact that Plaintiffs reacts to competitive pricing does not create relevance for how that information was obtained.

The Special Master ruled that evidence of Best Buy's "setting of prices for finished products charged by Best Buy" is relevant, but did not address whether Best Buy's competitive intelligence practices are.  *Id.* at Ex. G.  This Court, in ruling upon Best Buy's Objection, also did not address this issue.  *Id.* at Ex. H.

Plaintiffs' downstream pricing therefore provides no basis admit evidence Plaintiffs' competitive intelligence practices at trial.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

(c)    Evidence of How Plaintiffs Gather Competitive Intelligence
is Irrelevant to Upstream Pass-Through

Defendants also argued in their opposition to Best Buy's Motion for a Protective Order

that "Best Buy's competitive intelligence practices are relevant to show that Best Buy was not

impacted by any alleged CRT overcharge." *See* Casselman Decl., at Ex. I (Opp., at pg. 10).

According to Defendants, "relevant to the injury-in-fact inquiry are the prices at which Best Buy

purchased CRT products, as Best Buy would suffer no impact or injury should it reject prices

from a CRT vendor that included an alleged CRT overcharge." *Id.*

Defendants' relevance arguments do not withstand scrutiny.  First, Defendants already

know the "prices at which Plaintiffs purchased CRT products" because Plaintiffs (including Best

Buy) have produced an exhaustive amount of purchase order ("PO") and point-of-sale ("POS")

transactional data detailing this information over an 11-year period.  *Id.*, at ¶ 3.  Plaintiffs' ability

to "reject" price increases is reflected in the data.

Further, Defendants certainly do not need to offer evidence on how Plaintiffs gather

competitive intelligence in order to establish the extent to which Plaintiffs "rejected" price

increases based on their knowledge of upstream component prices.  Plaintiffs' pricing

negotiations have nothing to do with how they gather competitive intelligence, and the extent to

which Plaintiffs considered component costs during negotiations can certainly be proven through

much less intrusive means.

In fact, with respect to Best Buy, Defendants demanded that Best Buy produce a corporate

designee to testify regarding "the process by which [Best Buy] negotiated, entered into, approved

or ratified purchase agreements . . ." *Id.* at Ex. F, at pg. 8, No. 8.  Best Buy produced Mr. Stone

to testify on this topic, yet Defendants failed to ask him a single question on the extent to which

Best Buy resisted price increases based on its knowledge about component costs, or "whether any

such information impacted Best Buy's pricing negotiations for its purchases of CRT products."

*Id.*, at Ex. I (Opp., at pgs. 10-11).  One would expect Defendants to have at least probed a subject

which they later proclaimed to be "highly relevant."

In short, Defendants' upstream pricing argument is a pretext to put irrelevant information

60945452.2

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

before the jury to prejudice Plaintiffs.  Now that discovery has been completed and we are on the eve of trial, the Court must see through this subterfuge.

                    (d)      Public Policy Precludes Admission of Plaintiffs' Business Intelligence Practices

Even if the Court is persuaded that there may be some relevance to the evidence, there is a longstanding and important policy in antitrust law precluding investigation of the plaintiff's practices, much less putting those practices on trial.  "[T]he Supreme Court has cautioned that the effectiveness of antitrust actions may be substantially reduced if defendants are allowed to pursue an inquiry into downstream activities . . . ."  *Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431, 433-34 (N.D. Cal. 2008) [citations omitted]); *see also Frost v. Shipowners & Merchants Towboat Co.*, 1974 U.S. Dist. LEXIS 8570, at *9 (discussing "the countervailing specific public policy favoring private antitrust actions") (citations omitted); *Perma Life*, 392 U.S. at 139 ("Both *Simpson* and *Kiefer-Stewart* were premised on a recognition that the purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws." (emphasis added)).

Defendants' relevance arguments run afoul of paramount policy concerns underlying antitrust laws, as well as the danger that "the effectiveness of antitrust actions may be substantially reduced if defendants are allowed to pursue an inquiry into downstream activities . . ."  *Meijer, Inc.*, 251 FRD at 433-34; *see also, e.g., Kiefer-Stewart*, 340 U.S. at 214; *Perma Life*, 392 U.S. at 139-40; *Purex Corp. v. Gen. Foods Corp.*, 318 F. Supp. 322, 324 (C.D. Cal. 1970) ("the relative equities between private litigants must yield to public policy considerations when antitrust suits are concerned."). [3]  Given the fact that Defendants have ample evidence to present a

[3] Multiple courts have outright rejected claims of relevance akin to those made by Defendants here at the discovery stage. *See, e.g., In re Vitamins Antitrust Litig.,* 198 F.R.D. 296, 299-301 (D.D.C. 2000) (rejecting arguments that the plaintiffs' financial and transactional data were relevant to establish "but for" prices and to show the "plaintiffs' demand elasticity"); *In re Folding Carton Antitrust Litig.,* 1978 U.S. Dist. LEXIS 20409, at *4 (N.D. Ill. May 5, 1978) (rejecting argument that plaintiff's conduct was relevant to show whether plaintiffs exercised "countervailing power" to prevent price fixing). *See also In re Pressure Sensitive Labelstock Antitrust Litig.,* 226 F.R.D. 492, 496 (M.D. Pa. 2005) (rejecting argument that evidence of the plaintiffs' financial records "may enable a differentiation among Plaintiffs, with some being ordinary buyers and others being 'power buyers'. . . [because] power buyers would have greater leverage in negotiating a price for label stock."). Although this Court has previously held that this evidence has discovery relevance, (Conti Order, Best Buy Dkt. 63,) Plaintiffs respectfully submit

- 11 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  defense without delving into Plaintiffs' practices, public policy counseling exclusion of such

2  evidence should prevail.

### d.   Any Purported Relevance of Evidence of Plaintiffs' Competitive Intelligence Practices is De Minimis and is Substantially Outweighed by the Risk of Unfair Prejudice.

5      Even if Defendants could overcome the bar precluding disclosure of an antitrust plaintiff's

6  competitor contacts, and even if they establish some relevance, the risk of unfair prejudice to

7  Plaintiffs substantially outweighs its minimal, speculative probative value and requires exclusion.

8  *See, e.g.*, *Costco Wholesale Corp.*, 2014 U.S. Dist. LEXIS 132145 at *6 ("Whatever marginal

9  relevance evidence of Costco's price monitoring might have to an issue before the jury is

10  substantially outweighed by its potential to prejudice the jury, confuse it, or put greater burdens

11  on its time."); *Wilk*, 719 F.2d at 232 (evidence of plaintiff's alleged violations of the antitrust laws

12  should have been excluded, as it created a danger of unfair prejudice and confusion under Rule

13  403.)

14      The Supreme Court has held that Rule 403 allows a district court to guard against

15  introducing relevant evidence that might "lure the fact finder into declaring guilt on a ground

16  different from proof specific to the offense charged." *W.R. Grace*, 455 F. Supp. 2d at 1194

17  (citing *Old Chief*, 519 U.S. at 180.)  Even where the court or the parties concede some limited

18  relevance, the probative value can still be outweighed by the likely burden or prejudice to the

19  plaintiff.  *See In re Aspartame Antitrust Litig.*, 2008 U.S. Dist. LEXIS 121490, at *6-7, 14-17

20  (burden of producing the plaintiffs' downstream documents outweighed their limited relevance to

21  show market and industry characteristics).  Probity in this context is not an absolute; it is

22  determined with regard to the extent to which fact in issue is established by other evidence.

23  *United States v Beechum*,

24  582 F.2d 898, 927 (5th Cir. 1978).  Thus, it is the *incremental probative value* of evidence that is

25  to be balanced against its potential for unfair prejudice.  *Id.*  Where the probative value is slight,

26  moderate prejudice is unacceptable.  *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

27  that the prejudice inherent in the admission of such evidence at trial far exceeds any probative

28  value.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Here, the probative value is necessarily slight for the reasons articulated in *Kiefer* and its progeny.  *See, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.* 2006 U.S. Dist. LEXIS 34129, at *22 (Plaintiffs' "activities are almost wholly irrelevant in proving or disproving the underlying charge.").  Plus, there is little to no need for evidence regarding *how* Plaintiffs obtain competitor information where, as here, they have substantial evidence of the factors Plaintiffs consider in setting prices.

Defendants have conducted exhaustive discovery of the factors that Plaintiffs consider in setting downstream prices, *including competitor pricing*, to which Best Buy's corporate designee freely testified.[4]

The risk of unfair prejudice by permitting evidence of Plaintiffs' competitive intelligence gathering is palpable.  If this evidence is allowed, the jury might attempt to improperly conflate Plaintiffs legal competitor contacts with Defendants' illegal ones, likely resulting in substantial confusion and prejudice to Plaintiffs.  As the *Costco* court recognized in considering the same issue, any "marginal relevance evidence of Costco's price monitoring might have to an issue before the jury is substantially outweighed by its potential to prejudice the jury, confuse it, or put greater burdens on its time."  *See Costco Wholesale Corp.,* 2014 U.S. Dist. LEXIS 132145 at *6. The Court further held that Defendants were free to argue that monitoring market prices is lawful without pointing to the plaintiff's conduct.  *Id.*  The same conclusion should apply here, where Defendants have ample evidence with which to make their downstream arguments without making reference to Plaintiffs' conduct.

Given the (at best) marginal relevance of such evidence, the considerable risk of undue prejudice mandates exclusion under Rule 403.

**2.    Motion to Exclude Evidence or Argument regarding Downstream Pass-Through**

Plaintiffs bring the instant motion to exclude evidence or argument regarding downstream pass-through as irrelevant and unduly prejudicial under Federal Rules of Evidence 401, 402 and 403.

---

[4] *See* Ex. A to Casselman Decl. at pgs. 43-45; Ex. B at 304:3-305:18.

60945452.2

- 13 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   It is black letter law that evidence of downstream pass-through is irrelevant to direct

2   claims under the Clayton Act.  *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 262 n. 14

3   (1972) ("Courts will not go beyond the fact of th[e] [overcharge] injury to determine whether the

4   victim of the overcharge has partially recouped its loss in some other way.").  Defendants should

5   not be permitted to delve into these matters as doing so would run contrary to this clear policy

6   and would risk substantial prejudice to Plaintiffs.

7   Moreover, evidence of pass-through remains irrelevant with regard to the Best Buy

8   plaintiffs' indirect purchase claims under Minnesota law because the text and plain meaning of

9   the Minnesota Antitrust Act ("MAA") do not permit a pass-on defense.

10   Accordingly, any evidence or argument regarding downstream pass-through is irrelevant,

11   unduly prejudicial, and should be excluded.

12   ### a.      Federal Law Prohibits the "Pass-On" Defense

13   Under the Clayton Act, antitrust plaintiffs are injured when they pay "money wrongfully

14   induced," and their "damages are established by the amount of the overcharge." *Hawaii v.*

15   *Standard Oil Co. of California*, 405 U.S. 251, 262 n. 14 (1972).  Thus, under Section 4 of the

16   Clayton Act, "[c]ourts will not go beyond the fact of th[e] [overcharge] injury to determine

17   whether the victim of the overcharge has partially recouped its loss in some other way."  *Id.*; *see*

18   *also S. Pacific Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 534 (1918) ("The plaintiffs

19   suffered losses [in] the amount of the [overcharge] when they paid [it].  Their claim accrued at

20   once in the theory of the law and it does not inquire into later events.  (citation omitted)").

21   As such, evidence that Plaintiffs may have recouped Defendants' unlawful overcharges

22   by, among other things, passing-on those overcharges to their customers, is legally irrelevant to

23   the amount of damage they suffered under the Sherman Act.  *Hanover Shoe*, 392 U.S. at 494

24   (1968) (holding that antitrust defendants are prohibited from raising as a defense that plaintiffs

25   passed-on or otherwise recouped all or some of defendants' overcharges by passing-on those

26   overcharges to their customers); *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 327

27   (9th Cir. 1980) ("*Hanover Shoe* teaches that in . . .  situations [where plaintiffs may have

28   partially recouped an overcharge] there is nothing wrong with the plaintiff winning a windfall

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    gain, so long as the antitrust laws are vindicated and the defendant does not suffer multiple

2    liability."); *Meijer*, 251 F.R.D. at 433 ("[W]hen a seller overcharges a buyer. . . , the fact that the

3    buyer raises the price for its own product, thereby passing on the overcharge to its customers and

4    avoiding a loss in profit, has no bearing on the issue of whether the buyer has suffered an injury

5    . . . . [D]amages are appropriate to the extent the buyer was overcharged, and must be measured

6    accordingly."); *Apple iPod iTunes Antitrust Litig.*, No. C 05-00037, 2011 WL 5864036, at *4

7    (N.D. Cal. Nov. 22, 2011) (in antitrust action, rejecting defendant's pass-on overcharge defense

8    on motion for class certification); *Braintree Labs. v. McKesson Corp.*, No. 11-80233, 2011 WL

9    5025096, at *3 (N.D. Cal. Oct. 20, 2011) ("The Supreme Court has made it clear that in an

10   antitrust suit, a plaintiff's alleged benefit from a defendant's anti-competitive behavior because

11   the plaintiff 'passed on' any overcharge is not relevant to whether the plaintiff suffered a

12   cognizable antitrust injury." (citation omitted)).

13          The Supreme Court and the Ninth Circuit have made clear that courts are not permitted to

14   determine "what portion of [an] illegal overcharge was 'passed on' . . . and what part was

15   absorbed by the middlemen" because such an analysis would "involve all the evidentiary and

16   economic complexities that Illinois Brick clearly forbade." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d

17   1042, 1049 (9th Cir. 2008); *Hanover Shoe*, 392 U.S. at 494 (1968) (holding that antitrust

18   defendants are prohibited from raising as a defense that plaintiffs passed-on or otherwise

19   recouped all or some of defendants' overcharges by passing-on those overcharges to their

20   customers).  Thus, a "direct purchaser suing for treble damages under § 4 of the Clayton Act is

21   injured within the meaning of § 4 by the full amount of the overcharge" and an antitrust defendant

22   is "not permitted to introduce evidence that indirect purchasers were in fact injured by the illegal

23   overcharge[.]" *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724-25 (1977). *See also Hanover*

24   *Shoe*, 392 U.S. at 494 (defendant "was not entitled to assert a passing-on defense"); *Illinois Brick*,

25   431 U.S. at 729-30; *Meijer*, 251 F.R.D. at 431.  Simply put, the rule of *Illinois Brick* was intended

26   to reduce complexity of direct purchaser actions by barring analysis of downstream effects. *See*

27   *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1212 (9th Cir. 1984).

28          The jury need only determine whether and to what extent Defendants overcharged

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs, regardless of whether Plaintiffs were able to pass-on the overcharges to their customers or otherwise recoup the overcharges.  The Court also should preclude Defendants from indirectly raising the pass-on defense by prohibiting Defendants from referring to or attempting to offer evidence regarding the effect of Defendants' overcharges on Plaintiffs' businesses in connection with Plaintiffs' Sherman Act claims.  Such evidence would include evidence regarding Plaintiffs' profitability, or the retail prices they set for CRT finished products.  Like direct evidence of the passing on of Defendants' overcharges, such indirect evidence is irrelevant, would confuse the issues and the jury, and would invite the jury to improperly assume that Plaintiffs avoided any "actual" damages by raising their prices in response to Defendants' overcharges.

In *Costco Wholesale Corporation v. Au Oprtronics Corporation, et al*., C13-1207RAJ (W.D. Wash.), Judge Jones granted a motion to exclude evidence of "pass-on."  *See* Order, Dkt No. 569 at 2-6 (September 17, 2014).

### b.    Minnesota State Law Prohibits "Pass-On" Evidence

The Best Buy plaintiffs also request that the Court exclude evidence of pass-on with regard to their indirect purchase claims under Minnesota law because the Minnesota Legislature and Supreme Court have categorically abolished defensive pass-through.

The Minnesota Antitrust Act ("MAA") provides as follows:

> Any person * * * injured directly or indirectly by a violation of sections 325D.49 to 325D.66, shall recover three times the actual damages sustained, together with costs and disbursements, including reasonable attorneys' fees. In any subsequent action arising from the same conduct, the court may take any steps necessary to avoid duplicative recovery against a defendant.

Minn. Stat. § 325D.57 [emphasis added].  The MAA thus unambiguously gives courts discretion to consider duplicative recovery.  It does not require them to do so, nor does it permit a pass-through defense.   Two dispositive Minnesota Supreme Court construing the MAA confirm this. *See, e.g.*, *Lorix v. Cromptom*, 736 N.W.2d 619 (Minn. 2007); *State v. Philip Morris, Inc*., 551 N.W.2d 490, 497 (Minn. 1996).

In *Lorix,* the Minnesota Supreme Court construed the MAA and rejected the federal test

1   under *Associated General Contractors of California, Inc. v. California State Council of*

2   *Carpenters*, 459 U.S. 519 (1983), reasoning that Minnesota does not follow federal law.  In doing

3   so, the Supreme Court implicitly rejected any pass-through defense by noting that duplicative

4   recovery damages can be proper under the MAA:

> To the extent that our courts cannot ameliorate the risk of
> duplicative recovery, as where parallel proceedings in federal
> courts or courts in other states may result in later awards based on
> the same injuries, this risk is inherent in the dual system of private
> antitrust enforcement created by *Illinois Brick and California v.
> ARC America Corp.*, 490 U.S. 93, 101, 109 S. Ct. 1661, 104 L. Ed.
> 2d 86 (1989).

10   736 N.W.2d at 628.  The Supreme Court also confirmed its rejection of any pass-through defense

11   in citing with approval to the *Report of the Indirect Purchaser Task Force*, 63 Antitrust L.J. 993,

12   994 (Spring 1995), for the proposition that "the current system of antitrust enforcement creates

13   the risk that the full amount of an anticompetitive overcharge, trebled, will be recovered by direct

14   purchasers under federal law and indirect purchasers at every successive state of distribution

15   under state law." 736 N.W.2d at 628.   The Supreme Court further explained: "While this risk is a

16   legitimate and important consideration, it is not a risk that our court may remedy by restricting

17   Minnesota antitrust law in ways that our legislature has not." 736 N.W.2d at 628.

18       In *Philip Morris*, the Minnesota Supreme Court similarly explained that "it was the intent

19   of the Minnesota legislature to abolish the availability of the pass through defense by specific

20   grants of standing within statutes designed to protect Minnesota citizens from sharp commercial

21   practices." 551 N.W.2d at 491.  The Minnesota Supreme Court then rejected Philip Morris'

22   argument that damages incurred by the plaintiff "will simply be passed on to employer

23   subscribers." *Id.* at 496 (describing pass-through defense as "the notion that where an injured

24   party 'passes through' its damages to another entity that is obligated to pay, there is no actual

25   injury to the first party." (emphasis added)).

26       The Best Buy plaintiffs anticipate that Defendants will contend that a pass-on defense

27   should be allowed under Minnesota law based upon Judge Illston's decision in the TFT-LCD

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

(Flat Panel) Antitrust Litigation.  *See* Order Granting In Part Defendants' Motion For Summary Judgment On Downstream Pass-On ("Order") (Case 3:10-CV—04572-SI, Docket No. 315).  In the LCD decision, Judge Illston concluded that allowing a pass-on defense is consistent with the MAA.  As described below, the Best Buy plaintiffs submit the decision is in error.

The LCD decision considers Philip Morris simply a standing case that does not speak to pass-through relative to damages.  *See id.* at 9-10.  This misconstrues the case.  Indeed, the central focus of *Philip Morris* was precisely whether the plaintiffs' acknowledged pass-on of its overcharges precluded it from asserting "actual" damages necessary to accord it standing under Minnesota's state antitrust statute.  *Philip Morris*, 551 N.W.2d at 496 ("Similar, but not identical, to the tobacco companies' defense that Blue Cross suffered no injury and could not therefore make out a tort claim, the 'pass through defense' is, in essence, the notion that where an injured party 'passes through' its damages to another entity that is obligated to pay, there is no actual injury to the first party.").

The Minnesota Supreme Court explained its rejection of the defendants' pass-on arguments in detail.  "The argument that no injury has been suffered because costs were passed through one entity to customers, consumers, or other entities usually arises in antitrust cases. It has been uniformly rejected in the courts, primarily on the theory that the injury is sustained as soon as the price, artificially raised for whatever reason, has been paid." 551 N.W.2d at 496.

Quoting from Justice Holmes' decision in *Chattanooga Foundry*, the Minnesota Supreme Court observed that:

> [a] man is injured in his property when his property is diminished. . . . [W]hen a man is made poorer by an extravagant bill we do not regard his wealth as a unity, or the tort, if there is one, as directed against that unity as an object. We do not go behind the person of the sufferer. We say that he has been defrauded or subjected to duress, or whatever it may be, and stop there.

551 N.W.2d at 496-97, quoting *Chattanooga Foundry v. Atlanta*, 203 U.S. 390, 399 (1906).

The Minnesota Supreme Court explained further that, whereas the Supreme Court in *Illinois Brick* precluded any consideration of pass-through (either offensive or defensive), the Minnesota legislature chose a different course.  The court stated that the legislature's enactment

1    of Minn. Stat. § 325D.57—which expressly accorded standing under the Minnesota antitrust laws

2    both to direct and indirect purchasers—was a direct response to the Supreme Court's decision in

3    *Illinois Brick.* 551 N.W.2d at 497.  *see also Lorix*, 736 N.W.2d at 626-27 ("In 1984, our

4    legislature added the words "directly or indirectly" to Minn Stat. § 325D.57 to make clear that,

5    contrary to *Illinois Brick*, Minnesota antitrust law permits indirect purchasers to recover.").

6         The court therefore concluded that "it was the intent of the Minnesota legislature to

7    abolish the availability of the pass through defense by specific grants of standing within statutes

8    designed to protect Minnesota citizens from sharp commercial practices." *Philip Morris*, 551

9    N.W.2d at 497.

10        Thus, contrary to what the LCD decision suggests, *Philip Morris* does, in fact, address

11   pass-on relative to damages. In addition, the LCD decision says *Lorix* notes that damages and

12   standing are different, and that a finding of standing does not mean a plaintiff will recover. Order

13   at 10, lines 3-5.  Even so, *Lorix* may also be read to address pass-on relative to damages.  Indeed,

14   in *Lorix*, the Supreme Court acknowledges the inherent risk in antitrust enforcement that "the full

15   amount of an anticompetitive overcharge, trebled, will be recovered by direct purchasers under

16   federal law and indirect purchasers at every successive state of distribution under state law," and

17   that such risk may not be remedied "by restricting Minnesota antitrust law in ways [the]

18   legislature has not." *Lorix*, 736 N.W.2d at 628.  As discussed above, duplicative recovery

19   damages can be proper under the MAA.   Therefore, the LCD decision erroneously views *Lorix*

20   and *Philip Morris* as simply standing cases and effectively leads to the erroneous conclusion that

21   Minnesota has abolished pass-through for purposes of "standing" but somehow preserved the

22   defense to a "damages" claim.

23        The court in the LCD decision concluded that allowing a pass-on defense is consistent

24   with the MAA, because it will allow recovery of "actual damages sustained," and is necessary to

25   avoid duplicative recovery.  As demonstrated herein, however, the MAA does not permit a pass-

26   through defense and allows but does not require courts to consider duplicative recovery in a

27   subsequent action arising from the same conduct.  Thus, the LCD decision is inconsistent with,

28   and contrary to, Minnesota law and therefore is in error.

60945452.2

- 19 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

In sum, Minnesota law does not permit a pass-through defense.  *See, e.g.*, *Lorix*, 736 N.W.2d at 628 (refusing to "restrict Minnesota antitrust law in ways that our legislature has not."). Accordingly, the Court should not allow evidence or argument regarding downstream pass-through by virtue of Best Buy plaintiffs' Minnesota state law claims.

As there is no relevance to pass-on evidence, and a high potential for undue prejudice to plaintiffs, this evidence must be excluded.

### 3. Motion to Exclude Evidence or Argument regarding Private Label CRT Products[5]

Plaintiffs bring the instant motion to exclude evidence or argument regarding their private label CRT products because such evidence is irrelevant to the determination of any issue in this action and will consume an undue amount of time or confuse the jury.

There is no relevance to this evidence.  Best Buy has specifically disavowed any intention of claiming damages based upon its private label CRT products.  Moreover, Best Buy never purchased CRT tubes; only finished products.  Thus, it cannot be said that Best Buy had some special knowledge regarding the CRT industry by virtue of its private label business.  Moreover, the number of private label products sold during the class period is *de minimis*, making evidence or argument regarding the same a needless expenditure of court and jury time.

For all of these reasons, evidence or argument regarding private label CRT products should be excluded.

#### a.    Factual Background

In addition to selling branded CRT products, such as a Toshiba CRT TV or a Samsung CRT monitor, Best Buy sold a limited number of private- or house-labeled CRT finished products.[6] These products are not included in Best Buy's claims for damages in this case.[7]  Best Buy did not source any of the components for its private label products.  It merely bought full finished products and labeled them with its house brand names, such as VPR Matrix, Insignia,

---

[5] This Motion is brought against all Defendants by the Best Buy and Circuit City Plaintiffs. The reasoning of this motion applies to all private label CRT products that Plaintiffs sold.

[6] Circuit City also sold a limited number of private label CRT finished products and therefore joins in this motion. Circuit City's private label CRT finished product sales are not included in its claim for damages.

[7] VPR Matrix, Insignia and Dynex were the three most common Best Buy Private Label brands.

and Dynex.

Despite knowing that the products are not in the case, and despite having taken deposition testimony on the topic, the Toshiba defendants insisted upon taking broad discovery about Best Buy's private label program.  Such discovery requests included, but were not limited to (a) the brand name(s) and application(s) of all CRT Finished Products [Best Buy] purchased or sold as part of a private-label program, and (b) the Identity of the five (5) Persons who had the most responsibility for conducting, implementing or directing [Best Buy's] private-label program." Toshiba further demanded documents related to Best Buy's "purchase or sale of CRTs or CRT Finished Products as part of a private-label program," including documents containing a list of 17 terms that are wholly unrestricted by custodian as well as the custodial files of five yet-to-be determined custodians. Best Buy provided responses to this discovery, which Toshiba considered insufficient and which are now the subject of a motion to compel before Judge Walker.[8]  Thus, it is clear that defendants intend to go into Best Buy's private label CRT products at trial for some purpose. But, private label products are irrelevant to the claims and defenses in this litigation and cannot justify any expenditure of time at trial.

### b.    Irrelevant and Prejudicial Evidence Regarding "Private Label" CRT Products Should Be Excluded.

References to and evidence regarding Private Label CRT Products should be excluded because such evidence is irrelevant to the determination of any issue in this action, and will consume an undue amount of time.

*Neither Best Buy nor Circuit City is making any claim related to its private-label products in this dispute*.[9] Moreover, the evidence already produced in this case establishes that Best Buy only sold a limited number of private- or house-labeled CRT Finished products during the relevant time period, thus rendering their importance minimal to any supposed damage relevance.

Despite knowing that these products are not encompassed by Best Buy's claims in the case, it is anticipated that defendants intend to introduce evidence at the time of trial related to private label CRT products based upon the argument that private label evidence is somehow still

---

[8] *See* Nelson Decl. at ¶ 2.
[9] *See* Nelson Decl. at ¶ 3.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

relevant because Best Buy would have purportedly greater insight into component pricing. This, however, is belied by the fact that Best Buy bought full finished products and labeled them with its house brands, such as VPR Matrix, Insignia, and Dynex. Best Buy did not source any of the components for its private-label products. Accordingly, because Defendants cannot demonstrate a relevance for this evidence, it must be excluded.

Moreover, allowing evidence or argument regarding private-label CRT products will likely invite the jury to draw improper assumptions that Plaintiffs were in cahoots with Defendants or somehow had knowledge of the CRT conspiracy. Clearly, they did not.

For all of the foregoing reasons, the Court should grant this motion *in limine* to exclude evidence or argument regarding private label of CRT products.

### 4.    Motion to Exclude Evidence or Argument regarding Plaintiffs' Purported "Market Power"

It is anticipated that Defendants will attempt to reference and offer evidence of the Plaintiffs' alleged "market power." This is an improper attempt by Defendants to suggest to the jury that Plaintiffs somehow engaged in wrongful conduct. It has no probative value, and should be excluded as prejudicial under Rule 403.

"Market power" is a legal term with specific implications under the Sherman Act. Market power is the power "to force a purchaser to do something that he would not do in a competitive market." *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 464 (1992). The Supreme Court has further defined it as "the ability of a single seller to raise price and restrict output." *Fortner Enters. v. U.S. Steel Corp.*, 394 U.S. 495, 503 (1969); *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956). As such, "market power" may give rise to claims for violations of the Sherman Act. *See, e.g., Oracle Am., Inc. v. Cedarcrestone, Inc.*, 2013 U.S. Dist. LEXIS 48538, at *18 (N.D. Cal. 2013) (addressing whether plaintiff had properly alleged "market power" in support of a tying arrangement in violation of the Sherman Act).[10]

---

[10] "A tying arrangement is an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier. . . . Such an arrangement violates § 1 of the Sherman Act if the seller has appreciable economic power in the tying product market and if the arrangement affects a substantial volume of commerce in the tied market." *Id.* (quoting *Eastman Kodak Co.*, 504 U.S. at 461-62).

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Thus, for Defendants' to use the term "market power" would be an improper attempt to

2    incite prejudice against Plaintiffs.  Indeed, allowing Defendants to attempt to introduce testimony

3    and unsupported evidence of Plaintiffs' alleged "market power" would risk all of the dangers that

4    Rule 403 is intended to address, i.e., "unfair prejudice, confusing the issues, [and] misleading the

5    jury." Fed. R. Evid. 403.  Plaintiffs therefore request that the Court exclude any testimony or

6    evidence of any Plaintiffs' alleged "market power."

7    **5.       Motion to Exclude Evidence or Argument regarding Plaintiffs' Ability to
             Seek Treble Damages and Attorneys' Fees and Costs**

8        Plaintiffs move to exclude argument or evidence regarding their ability to recover treble

9    damages or attorney's fees and costs.  *See* 15 U.S.C. § 15(a). Such evidence is irrelevant, would

10   improperly interfere with the jury's fact-finding role, and would unfairly prejudice Plaintiffs.

11       Plaintiffs' entitlement to treble damages is inadmissible in a jury trial.  *See, e.g., Brooks v.*

12   *Cook*, 938 F.2d 1048, 1052 (9th Cir. 1991) ("An instruction informing the jury of the trebling

13   provision 'is an invitation to the jury to negate Congress' determination that actual damages

14   should be trebled in order to deter antitrust violations and encourage private enforcement of the

15   antitrust laws.'") (citation omitted); *In re Tableware Antitrust Litig.,* No. C-04-3514 VRW, 2007

16   WL 781960, at *3 (N.D. Cal. Mar. 13, 2007) ("In antitrust actions, 'courts have uniformly

17   concluded that mentioning treble damages and attorney fees to the jury is improper.'") (quoting

18   *HBE Leasing Corp. v. Frank*, 22 F.3d 41 (2d Cir. 1994)) (internal brackets omitted); *In re Static*

19   *Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819 CW (N.D. Cal.), Order on

20   Motions *In Limine* and for Pre-Trial Preparation, at *6 (Dec. 16, 2010) (Dkt. No. 1206) ("*SRAM*

21   *MIL Order*").

22       Likewise, the jury should not be informed of Plaintiffs' potential right to receive

23   attorneys' fees.  *See Brooks*, 938 F.2d at 1048 ("[i]n a case where the plaintiff is entitled to

24   compensatory damages, informing the jury of the plaintiff's potential right to receive attorneys'

25   fees might lead the jury to offset the fees by reducing the damage award."); *HBE Leasing Corp. v.*

26   *Frank*, 22 F.3d 41, 45-46 (2d Cir. 1994) (collecting case law and holding "In that context [of

27   antitrust violations] as well, courts have uniformly concluded that mentioning treble damages and

28

attorneys' fees to the jury is improper.").

In *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.), Judge Illston excluded this irrelevant evidence. *See* MDL 1827 Dkt. 5597 at 4 (Final Pretrial Scheduling Order in DPP Trial) (May 4, 2012) ("No. 1: To exclude references to treble damages: GRANTED."); MDL 1827 Dkt. 8298 at 4 (Final Pretrial Scheduling Order - Phase 1 DAP Trial) (July 11, 2013) ("No. 10. To exclude reference to and evidence of the ability of plaintiffs to seek treble damages and attorneys' fees and costs: GRANTED."). Additionally, in *Costco Wholesale Corp. v. AU Optronics Corp. et al.*, case number 13-cv-1207 (U.S.D.C. Western D. of Wash.), Judge Jones also excluded this irrelevant evidence. (September 17, 2014)("The court grants the first and seventh parts of Costco's motion. No party may ask questions, introduce evidence, or make argument revealing . . . that the settling defendants faced the prospect of attorney fees, costs, and treble damages.")

For these reasons, the Court should grant Plaintiffs' motion *in limine* to exclude evidence or argument regarding Plaintiffs' ability to seek treble damages and attorneys' fees and costs.

## 6.   Motion to Exclude Evidence or Argument regarding Other Actions and Settlements in this MDL

Plaintiffs move to exclude evidence or argument regarding other actions and settlements in the *In re CRT Antitrust Litigation* MDL. This includes reference to the claims and settlement of the direct and indirect purchaser classes, and other direct action plaintiffs not going to trial in the Northern District. The fact that other plaintiffs have also asserted claims against Defendants is irrelevant, would improperly interfere with the jury's fact-finding role, and would unfairly prejudice the plaintiffs in trial before this Court.

Moreover, the Court should also exclude references to Plaintiffs' settlements with former Defendants. Plaintiffs' settlements are confidential under Rule 408, have little, if any, probative value and carry a significant risk that the jury will make any number of improper conclusions that would unfairly prejudice Plaintiffs.

Defendants may attempt to introduce evidence at the time of trial that other plaintiffs (not present at trial) brought representative class and individual actions against Defendants, and that

60945452.2

- 24 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

those plaintiffs settled some or all of those actions.  This evidence is generally irrelevant and presents the risk of unfair prejudice, and thus must be excluded.  In addition, Defendants should be precluded from putting before the jury evidence of the prior settlements of the Northern District of California Plaintiffs since they, too, are irrelevant and unfairly prejudicial.

### a.    References to Absent Plaintiffs' Claims against Defendants Should Be Excluded.

Plaintiffs' right to proceed separately against Defendants is fundamental, and may not be foreclosed or impaired by the fact that other plaintiffs have also asserted claims against Defendants in other courts or previously prevailed against Defendants in earlier litigations.  *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class"); *Tinius v. Carroll County Sheriff Dept.*, No. C03-3001-MWB, 2004 WL 3103962 at *2 (N.D. Iowa Dec. 22, 2004) (ruling that evidence as to former parties was "irrelevant to the issues involved in this case" and that defendants were "precluded from discussing or making any reference to the fact that parties have been dismissed from this case"); *United States ex rel. Evergreen Pipeline Constr. Co., Inc. v. Merritt-Meridian Constr. Corp.*, 1994 WL 577637 at *1 (S.D.N.Y. Oct. 19, 1994) (referring to the court's granting of the motion *in limine* barring "evidence relating to previously dismissed parties or causes of action").[11]

Courts have routinely excluded from evidence on *in limine* motions references to other pending civil cases arising from a common or related course of conduct or governmental investigations related to an instant dispute. *See, e.g.*, SRAM MIL Order at 7 (granting the plaintiffs' motion "to exclude evidence of class members who opted out of the action or settled

---

[11] *See also Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81, 84 (2d Cir. 1982) (holding trial court properly excluded testimony regarding other litigation against defendant because evidence was cumulative, potentially extensive, and not sufficiently probative on the issue of the extent of the plaintiff's damages to justify inclusion); *Kinan v. Brockton*, 876 F.2d 1029, 1034 (1st Cir. 1989) (affirming trial court's exclusion of evidence of two other lawsuits against defendants, noting "confusion and consumption of a great deal of unnecessary time" which would have "inevitably" arose had evidence of lawsuits been introduced since "the two other cases would have become inextricably intertwined with the case at bar" as "at least portions" of the cases became known to the jury); Jack B. Weinstein, et al., *Weinstein's Federal Evidence*, § 403.05[3][a](Joseph M. McLaughlin, ed., Matthew Bender 2d Ed. 2011) (noting "[c]ourts are reluctant to cloud the issues in the case at trial by admitting evidence relating to previous litigation involving one or both of the same parties").

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  separately"); *Johnson v. Ford Motor Co.,* 988 F.2d 573, 579-80 (5th Cir. 1993) (citing *Roberts v.*

2  *Harnischfeger Corp.*, 901 F.2d 42, 44-45 (5th Cir. 1989)) (upholding exclusion of other lawsuits

3  against Ford Motor Co. involving allegedly defective vehicles); *Lee v. Nat'l R.R. Passenger*

4  *Corp.*, 2012 WL 130267 at *3 (S.D. Miss. Jan. 17, 2012) (excluding evidence of other lawsuits

5  arising out of same crash); *Ilano v. H&R Block Eastern Enterprises*, 2011 WL 1897431 at *1

6  (S.D. Fla. May 11, 2011) (excluding evidence of other lawsuits against H&R Block) (citing

7  *Palmer v. Board of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 972-73 (11th Cir. 2008)). [12]

8      The same result is warranted here.  Allowing reference to other claims and actions brought

9  against Defendants creates a serious risk of unfair prejudice, including the risk that the jury,

10  consciously or subconsciously, might reduce the damages awarded to Plaintiffs because of a

11  belief that the latter were able to compensate for these overcharges by passing them on to others,

12  who, in turn, could seek compensation from Defendants.  Evidence that a plaintiff has been

13  compensated for his or her alleged injuries through another source is especially prejudicial.

14  *Eichel v. N.Y. Central R.R.,* 375 U.S. 253,

15  255 (1963) (per curiam) (noting "evidence of collateral benefits" received by plaintiffs mitigating

16  their injuries "is readily susceptible to misuse by a jury" and affirming trial court's exclusion of

17  evidence of disability benefits offered to show mitigation of plaintiff's damages); *Green v.*

18  *Denver & Rio Grande W. R.R. Co.,* 59 F.3d 1029, 1033 (10th Cir. 1995) (upholding trial court's

19  order barring evidence that plaintiff received disability benefits on the ground that "the prejudicial

20  effect of the evidence outweighs its probative value" because the jury "might be more likely to

21  find no liability if they know that plaintiff has already received some compensation" for injuries).

22      **b.    References to Any Plaintiffs' Settlements with Defendants Should Be Excluded.**

23  Federal Rule of Evidence 408 generally precludes evidence of conduct or statements made

24

---

25  [12] *See also Robinson v. Hartzell Propeller, Inc.*, 2008 WL 4679248 at *3 (E.D. Pa. Aug. 11, 2008) (conditionally granting motion to exclude references to other lawsuits arising from the same accident); *Acands, Inc. v. AON Risk Services,* 2004 WL 2601035 at *2 n.3 (E.D. Pa. Nov.

26  10, 2004) (excluding evidence of related AG investigation); *Blue Cross & Blue Shield of N.J., Inc., v. Philip Morris, Inc.,* No. 98 CV 3287(JBW), 2000 WL 1805359 at *2 (E.D.N.Y. Dec. 11,

27  2000) (excluding evidence of other lawsuits and governmental investigations relating to hazards of the smoking of cigarettes).

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    during settlement negotiations, and the rule plainly extends to completed compromises. *See* Fed.

2    R. Evid. 408, advisory committee's notes ("[A] similar attitude must be taken with respect to

3    completed compromises when offered against a party thereto."); *see also Playboy Enters., v.*

4    *Chuckleberry Publ'n., Inc*., 486 F. Supp. 414, 423 (S.D.N.Y. 1980) ("To consider the terms of

5    that settlement in this action would be improper and unjustified. It is well-established that

6    statements made for purposes of settlement negotiations are inadmissible, and Rule 408 of the

7    Federal Rules of Evidence extends the exclusion to completed compromises when offered against

8    the Compromiser.").

9        Courts will exclude evidence of prior settlements between parties where, as here, there is a

10   risk that a jury could improperly reduce its damages award because of its belief that the plaintiff

11   has already been compensated. *Young v. Verson Allsteel Press Co*., 539 F. Supp. 193, 195-96

12   (E.D. Pa. 1982) ("It is difficult to understand how Federal is not, by its own admission, seeking to

13   introduce such evidence to mitigate the amount of any possible jury award by informing the

14   jurors that plaintiff has already received a measure of compensation for his injuries."); *Gribben v.*

15   *United Parcel Serv., Inc.*, 528 F.3d 1166, 1172 (9th Cir. 2008) (affirming trial court's exclusion

16   of consent decree entered into as part of a "no-fault" settlement because "it was irrelevant and

17   would have been unduly prejudicial, confusing, and misleading."). Inclusion of the settlements

18   and amounts could also permit the jury to improperly speculate that the settling co-defendants

19   were more culpable than the current Defendants.

20       Further, Plaintiffs' settlements are confidential under Rule 408, have no probative value

21   under Federal Rule of Evidence 401 and are, therefore, inadmissible under Rule 402.  *Id.*; *see also*

22   Fed. R. Evid. 408, 1972 Advisory Committee's Notes; *Green v. Baca*, 226 F.R.D. 624, 640 (C.D.

23   Cal. 2005); *Playboy Enters.*, 486 F. Supp. at 423 n.10.

24       Introduction of this evidence may cause further juror confusion by leading the jury to

25   speculate that the "guilty" parties have settled and only the "innocent" defendants remain in the

26   case.  Defendants should not be allowed to make that argument because the fact of settlement

27   proves nothing regarding culpability.  And, absent some basis for a finding that a settlement

28   would cause a witness to testify untruthfully, the prior settlement is irrelevant to witness

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

credibility. *Myers v. Pennzoil Co.*, 889 F.2d 1457, 1460-62 (5th Cir. 1989); *Quad/Graphics Inc. v. Fass*, 724 F.2d 1230, 1235 (7th Cir. 1983). Evidence of any prior settlements should therefore be excluded. *See In re Homestore.com, Inc.*, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) (excluding "reference to or evidence of amount of settlement with previous defendants"); SRAM MIL Order at 7 (excluding references to prior settlements and their amounts).

Accordingly, the Court should prohibit deliberate references to Plaintiffs' settlements with former defendants.

In *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.), Judge Illston granted in part the DPP and IPP class plaintiffs motion to exclude references to the class settlements. *See* MDL 1827 Dkt. 5597 at 4 (Final Pretrial Scheduling Order in DPP Trial) (May 4, 2012) ("Nos. 2/3: To exclude references to DPP and IPP settlements: GRANTED as to the amount or terms of any settlement; DENIED as to fact of settlement by testifying witness or by corporate employer of testifying witness.") The Court also granted the DPP motion to exclude references to other plaintiffs' claims. *See* MDL 1827 Dkt. 5597 at 4 (Final Pretrial Scheduling Order in DPP Trial) (May 4, 2012) ("No. 7: To exclude references to plaintiffs' other lawsuits: GRANTED, absent further Court order on offer of proof of relevance.")

Additionally, in *Costco Wholesale Corp. v. AU Optronics Corp. et al.*, case number 13-cv-1207 (U.S.D.C. Western D. of Wash.), Judge Jones excluded references to other actions and settlement amounts. In its September 17, 2014 Order, the Court held the following respecting other actions: "The court grants the sixth and eight parts of Costco's motion and denies the eleventh part of Defendants' motion. No party may refer to other civil matters, including, but not limited to, the Best Buy trial, actions brought by various states' attorneys general, and class actions stemming from the multidistrict litigation to which this case once belonged. . . . Because there is a possibility that evidence or argument at trial will reveal or suggest the existence of other civil actions, the court may consider giving an instruction that the jury should confine its consideration to the dispute between Costco and Defendants." Order at 11-12. The Court also held, relevant to settlements with Costco, as follows: "The court grants the first and seventh parts of Costco's motion. No party may ask questions, introduce evidence, or make argument revealing

1    either the amount that any settling defendant paid to Costco or that the settling defendants faced

2    the prospect of attorney fees, costs, and treble damages. This ruling does not preclude Defendants

3    from asking the settling defendants' representatives about whether they settled their claims with

4    Costco, whether they agreed to cooperate with Costco as part of the settlement, and whether those

5    defendants agreed to pay an undisclosed sum of money to Costco. If necessary, the court will

6    consider an instruction to the jury that it should not speculate about the amount of any settlement

7    or consider the settlements for purposes of assessing Costco's damages, and that evidence that

8    some defendants paid a settlement is relevant only to establish whether a witness has a bias. If

9    necessary, the court will also consider an instruction that the jury need not concern itself with

10   offsetting Costco's damages to account for payments from settling defendants." Order at 9.

11        For all of the foregoing reasons, the Court should grant Plaintiffs' motion *in limine* to

12   exclude evidence or argument regarding other actions and settlements, and, further, should

13   instruct the jury that it need not be concerned about those settlements or the amounts of those

14   settlements because the Court will offset any relevant settlement amounts from the verdict.

### 7.    **Motion to Exclude Argument That Plaintiffs' Claims are Barred Because They Arise from Foreign Commerce**[13]

17        Plaintiffs move to exclude argument that Plaintiffs' claims are barred because they arise

18   from foreign commerce. Such evidence is irrelevant, would improperly interfere with the jury's

19   fact-finding role, and would unfairly prejudice Plaintiffs.

20        Defendants should be precluded from suggesting that Plaintiffs' claims are barred, in

21   whole or in part, because they include foreign commerce under the Foreign Trade Antitrust

22   Improvements Act of 1982 ("FTAIA").[14]  Plaintiffs only seek to recover damages for Defendants'

---

[13] Plaintiff ViewSonic does not join this motion in limine on account of a summary judgment motion filed by Defendants alleging that the FTAIA applies to some of ViewSonic' purchases. As is explained in detail in ViewSonic's opposition to that motion, however, all damages asserted by ViewSonic in this case are based on purchases of CRT monitors that were negotiated in, ordered from, invoiced in, and paid from the United States.  To the extent the Court determines – as it should – that the FTAIA does not apply to such purchases, ViewSonic reserves the right to join this motion in limine at a later date.

[14] The FTAIA removes from "the Sherman Act's reach . . . commercial activities taking place abroad, unless those activities adversely affect domestic commerce, imports to the United States, or exporting activities of one engaged in such activities within the United States." *Hoffmann-La Roche Ltd v. Empagran S.A.*, 542 U.S. 155, 158 (2004) (emphasis in original).  *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 506327, at *3 (N.D. Cal. Feb. 15, 2012)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

unlawful overcharges on CRT products billed or shipped to entities in the United States.  *See Carrier Corp. v. Outokumpu Oyj*, 2012 WL 678151 at *4 n. 3 (6th Cir. Mar. 2, 2012) (FTAIA not implicated by claims for domestic purchases); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4634031 at *12-13 (N.D. Cal. Oct. 5, 2011) (The FTAIA does not bar recovery for TFT-LCD products purchased domestically).   Neither Defendants nor their experts have ever claimed nor suggested that Plaintiffs' damage calculations include foreign CRT or CRT product purchases. Accordingly, no such argument should be permitted at the time of trial.

In *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.), Judge Illston granted in part similar motions to exclude argument that plaintiffs' claims were barred because they arose from foreign commerce, without supporting evidence of the same.  *See* MDL 1827 Dkt. 5597 at 4-5 (Final Pretrial Scheduling Order in DPP Trial) (May 4, 2012) ("No. 15: To exclude argument that plaintiffs' claims are barred because they arise from foreign commerce: GRANTED as to any such argument.  If/to the extent that factual predicates must be established at trial re FTAIA issues, those will simply be submitted to the jury for determination."); *see also* MDL 1827 Dkt. 8298 at 4 (Final Pretrial Scheduling Order - Phase 1 DAP Trial) (July 11, 2013) ("No. 15. To preclude argument that plaintiffs' claims are barred because they arise from foreign commerce: GRANTED as to argument. If and to the extent that factual predicates must be established at trial re FTAIA issues, those will be submitted to the jury for determination.").

For all of the above stated reasons, the Court should grant Plaintiffs' motion *in limine* to exclude evidence or argument that Plaintiffs' claims are barred because they arise from foreign commerce.

### 8.  Motion to Exclude Evidence or Argument regarding Plaintiffs' Alleged Failure to Mitigate Their Damages

Plaintiffs move the Court to exclude evidence purporting to show that Plaintiffs failed to mitigate their damages.  Such evidence is irrelevant, would improperly interfere with the jury's fact-finding role, and would unfairly prejudice Plaintiffs.

The "mitigation of damages" theory has been rejected in Sherman Act price fixing cases

(FTAIA contains "domestic injury exception").

1    as an improper attempt to limit damages to less than Defendants' illegal overcharges.  *See, e.g.,*

2    *Hanover Shoe*, 392 U.S. at 489 ; *Royal Printing*, 621 F.2d at 327 (a price fixing plaintiff is

3    "allowed to recover its 'full' damages even though it 'mitigated' its damages by passing part of

4    the excessive costs to its customers."); *In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp.

5    283, 286-287 (D. Minn. 1996) (mitigation of damages defense may apply in failure to deal cases,

6    but "[i]n a horizontal price-fixing case, however, mitigation and offset generally do not affect the

7    ultimate measure of damages.").

8          In *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.), Judge

9    Illston excluded irrelevant evidence of plaintiffs' supposed failure to mitigate.  *See* MDL 1827

10   Dkt. 5597 at 4 (Final Pretrial Scheduling Order in DPP Trial) (May 4, 2012) ("No. 17: To exclude

11   evidence re failure to mitigate damages: GRANTED, absent further Court order on offer of

12   proof.")

13         Additionally, Judge Illston denied two motions for summary judgment in which she found

14   the failure to mitigate irrelevant to plaintiffs' claims. *See* MDL 1827 Dkt. 7276, May 4, 2012

15   Order denying summary judgment in *Dell Inc. v. AU Optronics Corporation*, Case No. 10-1064

16   SI ("In the absence of any on-point authority, the Court declines to hold that defendants may

17   assert mitigation as a defense to Dell's horizontal price-fixing claim.") and Dkt. 7276 , December

18   10, 2012 Order denying summary judgment in *Best Buy v. AU Optronics Corporation*, Case No.

19   10-4572 SI, at p. 3:8-13 ("For the reasons set forth in that order, the Court declines to hold that

20   defendants may assert mitigation as a defense to Best Buy's horizontal price-fixing claim.")

21         For all of the foregoing reasons, the Court should grant Plaintiffs' motion *in limine* to

22   exclude evidence or argument regarding Plaintiffs' alleged failure to mitigate their damages.

23       **9.**     **Motion to Exclude Live Witnesses from Testifying in Defendants' Case-In-**
               **Chief Who Were Not Made Available for Live Testimony in Plaintiffs' Case-**
24              **In-Chief**

25         Plaintiffs move to exclude live witnesses from testifying in Defendants' case-in-chief who

26   were not made available for live testimony in Plaintiffs' case-in-chief. This motion is based upon

27   the Court's discretion to control the evidence at trial and promote fairness.

28         Many of Defendants' current and former employees, whom Defendants are likely to

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    designate as trial witnesses, are outside of the Court's subpoena power.  Defendants control these

2    witnesses and are bringing many of them to San Francisco to testify for Defendants.  Plaintiffs

3    seek an order that any witnesses Defendants intend to bring to trial to testify live must be made

4    available in Plaintiffs' case-in-chief to the extent that Plaintiffs seek to introduce their testimony.

5    Without such a ruling, Plaintiffs will have to present video testimony to the jury in their case in

6    chief and then cross-examine these same witnesses after they testify during Defendants' case-in-

7    chief.  Doing so would unnecessarily prolong the trial and unnecessarily burden the Court and the

8    jury with hearing duplicative evidence.

9         Having Defendants' key witnesses testify during Plaintiffs' case-in-chief will also

10   eliminate any confusion which would otherwise result from the jury hearing these witnesses'

11   deposition and then their live testimony.  *Eolas Techs., Inc. v. Microsoft Corp.,* 270 F. Supp. 2d

12   997, 1001 (N.D. Ill. 2003) (granting motion *in limine* requiring defendant to make employees

13   available to testify during the plaintiff's case-in-chief); *ADC Telecomm, Inc. v. Switchcraft, Inc.*,

14   2007 WL 6347404 at *2 (D. Minn. Jan. 8, 2007) (ordering the defendant to make any witnesses

15   defendant intended to call available to testify during the plaintiff's case-in-chief); *Mason v.*

16   *Texaco, Inc.*, 741 F. Supp. 1472, 1504 (D. Kan. 1990) (requiring Texaco to produce employee for

17   testimony in plaintiff's case-in-chief); *Applied Elastomerics, Inc. v. Z-Man Fishing Products,*

18   *Inc.*, No. C 06-2469 CW, 2006 WL 2868971, at *5  (N.D. Cal. Oct. 6) ("[L]ive testimony is

19   preferable to depositions."); *Geo. F. Martin Co. v. Royal Ins. Co. of Am.*, 2004 WL 1125048, at

20   *3 (N.D. Cal. May 14, 2004) ("Whenever possible, live testimony is preferred."); *Amini*

21   *Innovation Corp. v. JS Imports, Inc.,* 497 F. Supp.2d 1093, 1111 (C.D. Cal. 2007) ("The aim is to

22   minimize the risk of 'trial by deposition.'") And, requiring live testimony during Plaintiffs' case-

23   in-chief will significantly shorten and simplify the trial.[15]

24        Accordingly, Plaintiffs respectfully request that Plaintiffs be allowed to call Defendants'

25   live witnesses in Plaintiffs' case-in-chief and that Defendants be excluded from presenting the

---

26   [15] *See Doan v. Astrue*, No. 04cv2039 J(RBB), 2008 WL 238454, at *2-3 (S.D. Cal. Jan. 29, 2008)
     ("it is appropriate to grant a motion in limine if it limits the waste of judicial resources.");

27   *Hewlett- Packard Co. v. Mustek Systems, Inc.*, 2001 WL 36166855, at *4 (S.D. Cal. June 11,
     2001) (granting motion in limine which "promotes judicial economy and efficiency by avoiding

28   needless presentation of evidence.").

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    testimony of any current or former employee whom Defendants fail to make available to testify

2    during Plaintiffs' case-in-chief.

3          In the DPP Class Action in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No.

4    1827 (N.D. Cal.), Judge Illston considered a similar motion and pursuant to Order dated 5/4/12

5    (Dkt. No. 5597, p. 5, No. 21), ruled as follows: "Granted.  Any witnesses being brought to trial by

6    defendant for live testimony must be made available for testimony in plaintiffs' case in chief.

7    However, the defense examination of any such witness will not be limited by the scope of

8    plaintiffs' direct.  (See Toshiba No. 1.)"

9          For these reasons, the Court should grant Plaintiffs' motion *in limine* to exclude live

10   witnesses from testifying in Defendants' case-in-chief who were not made available for live

11   testimony in Plaintiffs' case-in-chief.

12        **10.     <u>Motion to Exclude Evidence or Argument Regarding about Incomplete Pass-
          Through of Overcharges through Affiliate Entities</u>**

13

14        Plaintiffs move to exclude testimony or other evidence or argument about any alleged

15   incomplete pass-through of overcharges between the conspirators and their finished product

16   affiliates, including Plaintiffs' efforts to obtain lower prices from those affiliates. Plaintiffs seek

17   to recover overcharges on CRT products they purchased from conspirators and vendors owned or

18   controlled by—or that themselves owned or controlled—a conspirator. On the basis of these

19   corporate relationships, the Court should preclude Defendants from suggesting or their expert

20   witnesses from opining about the potential for incomplete pass-through of overcharges through

21   Defendants' and their co-conspirators' corporate families. *See, e.g., In re ATM Fee Antitrust*

22   *Litig.*, 686 F.3d 741, 749 (9th Cir. 2012) ("[I]ndirect purchasers may sue when customers of the

23   direct purchaser own or control the direct purchaser or when a conspiring seller owns or controls

24   the direct purchaser." (internal citations omitted)); *Royal Printing Co. v. Kimberly Clark Corp.*,

25   621 F.2d 323, 327 (9th Cir. 1980) ("Because there is a sufficiently small risk of multiple liability

26   here, and because without a pass-on theory the case would not involve *Illinois Brick*-style

27   complexities, we hold that *Royal Printing* may sue the appellees for the entire overcharge.").

28        *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and its progeny, including *ATM Fee*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

60945452.2                          - 33 -

and *Royal Printing*, permit an antitrust plaintiff to sue as a direct purchaser and seek an entire overcharge, even if the plaintiff purchased a manufacturer's product through an affiliate of that manufacturer. The Ninth Circuit holds that recovery of the entire overcharge is necessary because determining "what portion of the illegal overcharge was 'passed on' to [the plaintiff] and what part was absorbed by the middlemen would involve all the evidentiary and economic complexities that *Illinois Brick* clearly forbade." *Royal Printing*, 621 F.2d at 327.

Although permitting a plaintiff to recover the entire overcharge may create the possibility of an excessive recovery in some cases, the alternative under *Illinois Brick* was to bar all suits involving corporate parents and affiliates they controlled, a result the Court called "intolerable." *Id*. Accordingly, the Court should preclude Defendants from introducing evidence or arguing about the potential incomplete pass-through of overcharges through Defendants' and their co-conspirators' corporate families, from criticizing Plaintiffs' calculation of damages based on 100 percent pass-through, or from suggesting that Plaintiffs' purchasing efforts reduced the overcharges that it absorbed.

In *Costco Wholesale Corp. v. AU Optronics Corp. et al*., case number 13-cv-1207 (W.D. Wash.), Judge Jones also granted such a motion. (September 17, 2014) ("The court grants the third, fourth, and ninth parts of Costco's motions in limine. Defendants may not rely on evidence or argument suggesting either that Costco's vendors absorbed the overcharge at issue in this case, or that Costco passed that overcharge along to its customers. . . .").

For these reasons, the Court should grant Plaintiffs' motion *in limine* to exclude evidence or argument regarding incomplete pass-through of overcharges.

**11.** **Motion to Establish the Preclusive Effect of, or in the Alternative Admit, the European Commission Decision**

### a.    Introduction

On December 5, 2012, the European Commission ("EC") fined seven international groups of companies a total of €1 470 515 000 for participating in global CRT cartels. It did so based on extensive, direct evidence that the companies engaged in anti-competitive practices, including price fixing, market sharing, customer allocation, capacity and output coordination. The

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1 | companies fined include the following Defendants in this action (collectively, the "EC

2 | Defendants"):

3 | • Chunghwa Picture Tubes, Co., Ltd.

4 | • Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.

5 | • Samsung SDI Co., Ltd.

6 | • Koninklijke Philips Electronics N.V.

7 | • LG Electronics, Inc.

8 | • Technicolor S.A. f/k/a Thomson S.A.

9 | • Panasonic Corporation

10 | • Toshiba Corporation

11 | • MT Picture Display Co., Ltd.

12 | The fines and the anti-competitive practices are the subject of a recently published

13 | decision by the EC (the "EC Decision"), a copy of which is attached as Exhibit J.

14 | Plaintiffs bring this Motion to establish the admissibility and preclusive effect of certain of

15 | the EC Decision's findings, which are identified in highlighting on attached Exhibit A.

16 | Courts have applied collateral estoppel to the findings of foreign courts and tribunals

17 | where the legal frameworks were sufficiently similar, the issues were actually litigated and

18 | necessary to the decision, and the party against whom preclusion was asserted had an opportunity

19 | to participate in the foreign proceeding. The requirements of issue preclusion are met here

20 | respecting the EC Decision's findings. EU law prohibiting price-fixing is essentially identical to

21 | U.S. law. The main differences concern the quantum of proof necessary to establish damages,

22 | which do not affect the issue of whether or not price-fixing indeed occurred. Given the overlap

23 | between the two legal regimes on price-fixing issues, issue preclusion should apply. The EC was

24 | investigating the exact same CRT conspiracy involving many of the same Defendants who are

25 | parties to this action. Plaintiffs' proof of conspiracy meetings will be substantially the same. The

26 | issues relating to liability were actually determined and necessary to the EC Decision. The EC

27 | Decision is sufficiently final for preclusive effect. The Defendants had an opportunity to

28 | participate, and did in fact participate, in the European Commission proceedings, and some

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

60945452.2

- 35 -

cooperated in consideration for leniency. Thus, Defendants should be barred from relitigating the same issues they lost before the EC.

Alternatively, if the Court is not inclined to apply issue preclusion, the EC Decision should nonetheless be admitted into evidence. The EC Decision is relevant and reliable, having been rendered after a lengthy investigation complete with briefing and oral argument by the affected parties. The EC Decision is publicly available and not privileged, and is not likely to cause undue prejudice to Defendants. Accordingly, the EC Decision should, at a minimum, be allowed into evidence.

### b. Factual Background

On December 5, 2012, after several years of investigating the CRT conspiracy and having afforded the EC Defendants opportunities to respond in writing and at a hearing to the findings of the investigation, the EC issued the EC Decision, fining seven international groups of companies a total of €1 470 515 000 for participating in global CRT cartels.

According to the EC Decision, for almost ten years, between 1996 and 2006, the companies, among other things, fixed prices, shared markets, allocated customers between themselves and restricted their output. Ex. J at §§ 4.1 & 4.2, ¶¶ 108-133. The Chunghwa Defendants came forward and reported the wrongdoing to the EC in exchange for conditional immunity. Ex. J at ¶ 91. Thereafter, several other companies, including the Samsung, Panasonic, Philips, and Thomson defendants, filed leniency applications and submitted evidence to the EC. Ex. J at ¶¶ 93-98. After several years of investigation, the EC ultimately concluded that the EC Defendants had participated in a multi-year, global conspiracy to fix the prices of CRTs, allocate market shares, and restrict output. Specifically, the EC found:

(108)   The Commission has evidence that CDT producers addressed by this Decision participated in meetings and other contacts with the aim of fixing prices worldwide, allocating market shares and customers and restricting output at least in the period from 24 October 1996 to 14 March 2006 (see Section 4.3.2). During that period, the CDT producers also exchanged commercially sensitive information.

1 …

2 (119) The Commission has evidence that CPT producers addressed by this

3 Decision participated in meetings and other contacts with the aim of fixing

4 prices, allocating market shares and restricting output at least in the period

5 from 3 December 1997 to 15 November 2006 (see Section 4.3.3). During

6 that period, the CPT producers also exchanged commercially sensitive

7 information.

8 Ex. J at ¶¶ 108 & 119.

9 The CRT cartels were highly organized, and aimed to fix prices and market shares

10 worldwide. Ex. J at, e.g., ¶¶ 113, 108, 123, 215, 250. The cartel participants were aware of the

11 anticompetitive nature of their contacts and tried to keep their cartel secret and not leave behind

12 evidence of their behavior. Ex. J at ¶¶ 114 & 133.

13 A provisional version of the EC Declaration was made available on the EC's website on

14 or around December 23, 2014,[16] after the close of discovery in this matter.

15 Except for the Chunghwa Defendants and Defendant Thompson S.A., the EC Defendants

16 have denied most of these EC Decision findings, including the geographic and product scope of

17 the cartel activities. *See, e.g.*, Ex. J at ¶ 496 ("Contrary to what LGE, Toshiba and Panasonic

18 argue, the cartel was wider in scope and covered both Europe and Asia during the periods they

19 respectively contest, arrangements often being made and collusive exchanges held at worldwide

20 level."); ¶ 483 ("The evidence in the file shows that the cartels involved global discussions and

21 concertations and thus were worldwide in scope."); ¶ 575 ("[T]he abundant contemporaneous

22 evidence on the file shows that, while certain meetings were focused more on specific or various

23 sizes in relation to certain arrangements that were reached between the cartel members, there was

24 an overall scheme that the parties followed covering all sizes and types…")

25            c. **Comparison Of Price-Fixing Under EU And U.S. Competition Law**

26 Both the European Union and the United States prohibit price fixing.  Under EU law, the

27

28 [16] The EC Decision can be accessed at
http://ec.europa.eu/competition/elojade/isef/case_details.cfm?proc_code=1_39437.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Treaty on the Functioning of the European Union ("TFEU") provides the legal framework for the consideration of anticompetitive agreements and concerted practices. Article 101 of the TFEU provides in pertinent part:

> Article 101 TFEU (ex Article 81 TEC)
>
> 1. The following shall be prohibited as incompatible with the internal market: **all agreements** between undertakings, **decisions** by associations of undertakings **and concerted practices which may affect trade between Member States and which have as their object or effect the prevention, restriction or distortion of competition within the internal market, and in particular those which**:
>
> (a) directly or indirectly fix purchase or selling prices or any other trading conditions;
>
> (b) limit or control production, markets, technical development, or investment;
>
> (c) share markets or sources of supply;"

*See* Declaration of Professor Ariel Ezrachi ("Ezrachi Declaration") ¶ 9, at 2-3 (emphasis added). Thus, under EU law, price fixing, market share allocation, and output restrictions are considered a hardcore restriction on competition which is illegal per se, subject to certain exceptions not applicable here.[17]  "TFEU Article 101(1)(a) specifically condemns direct or indirect fixing of selling price.  Indeed, price fixing is viewed as a clear violation which distorts and restricts competition on the market.  The fixing of a price or the setting of price targets have been deemed to dampen competition by enabling the conspiring parties to predict the pricing policy pursued by their competitors and deprive customers of their bargaining power."  Ezrachi Decl., ¶ 22 at 7. Paragraph 21 Case 8/72 *Vereeniging Van Cementhandelaren v Commission* [1972] ECR 977, [1973] CMLR 7; T-241/01 *Scandinavian Airlines System AB v Commission* [2005] ECR-II 2917.  In such instances, injury and damages are presumed.  Ezrachi Decl., ¶ 19 at 6. Similarly, in the U.S., price fixing generally is unlawful per se.  Section 1 of the Sherman Act provides:

---

[17] Under Article 101(3) of the TFEU, the above provisions may be held inapplicable where the agreement generally tends to improve the production or distribution of goods in the European Union. *See* Ezrachi Decl., ¶ 9; Case T-17/93 *Matra Hachette SA v Commission* [1994] ECR II-595.

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 USCS § 1.

Thus, under U.S. law,"[a] horizontal cartel among competing manufacturers or competing retailers that decreases output or reduces competition in order to increase price is, and ought to be, per se unlawful." *United States v. Hui Hsiung*, 2015 U.S. App. LEXIS 1590, *24 (9th Cir. Cal. Jan. 30, 2015), citing *Leegin Creative Leather Prods., Inc. v. PSKS, Inc*., 551 U.S. 877, 893 (2007). Once a plaintiff proves that a defendant engaged in price fixing, few defenses are available other than certain immunities and privileges that generally do not apply to private parties. However, unlike under EU law, there is no presumption of fact of injury or damages; the plaintiff must prove both by a preponderance of the evidence.

Thus, the most prominent difference between EU and U.S. law as it relates to price-fixing is that once price-fixing is proved, U.S. law requires further proof of injury and damages, whereas EU law does not.  The difference is not, fundamentally, whether or not on a factual level parties met and conspired to fix prices. Accordingly, because the essential fact finding roles of U.S. courts and the EC are the same, it is appropriate for the Court to find that the factual findings of the EC Decision, which are based entirely on direct evidence, as a review of the EC Decision makes clear, apply to this action.

### d.    The EC Decision Should Be Given Preclusive Effect As To Certain Factual Findings

#### (1)    Elements Of Issue Preclusion

The doctrine of issue preclusion, or collateral estoppel, bars re-litigation of issues actually litigated and necessary to the outcome of the first action in subsequent suits based on a different cause of action.  *Walia v. Aegis Ctr. Point Developers Private Ltd.*, 2014 WL 296003 (N.D. Cal. Jan. 27, 2014) (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.5 (1979)); *Shapley v. Nevada Bd. of State Prison Commissioners,* 766 F.2d 404, 408 (9th Cir.1985).  The two basic purposes for issue preclusion are "protecting litigants from the burden of relitigating an identical issue with the same party or his privy and . . . promoting judicial economy by preventing needless

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   litigation." *Parklane*, 439 U.S. at 326.  Courts have held that the advantages of avoiding

2   burdensome relitigation on identical issues and promoting judicial economy warrant permitting

3   the use of offensive issue preclusion at the discretion of the trial court, despite the potential risks

4   of improper use.  *Parklane*, 439 U.S. at 331.

5   (2)   Issue Preclusion Can Apply To Foreign Judgments

6   American courts can apply the doctrine of issue preclusion to the findings of foreign nation

7   courts provided the parties in the prior action were afforded due process rights. Restatement

8   (Second) of Conflict of Laws § 98 cmt. F (1971); *Hilton v. Guyot,* 159 U.S. 113, 204-05 (1895)

9   (approving of a foreign judgment where the parties received due process under the laws of

10  France); *British Midland Airways Ltd. v. Int'l Travel, Inc*., 497 F.2d 869, 871 (9th Cir. 1974)

11  (approving of a British judgment and finding that "unless a foreign country's judgments are the

12  result of outrageous departures from our own notions of 'civilized jurisprudence,' comity should

13  not be refused").

14  The Ninth Circuit has long recognized that judgments in foreign courts have issue

15  preclusive effect in subsequent domestic lawsuits.  *See Bank of Montreal v. Kough*, 612 F.2d 467

16  (9th Cir. 1980) (defendant collaterally estopped from raising defenses "in the guise of

17  counterclaims," because to allow defenses would "undercut the validity of the [prior Canadian]

18  judgment against him"); *see also Walia,* 2014 WL 296003 at *4 (finding that judgment rendered

19  by Indian court in contract action is entitled to preclusive effect in later U.S. action on same

20  contract).

21  Federal courts apply federal law to determine the preclusive effect of a foreign judgment

22  when deciding a federal claim and, in doing so, consider whether the following requirements are

23  satisfied: (1) identity of issues; (2) actual litigation of the issues and a decision rendered in the

24  prior proceeding; (3) a "full and fair opportunity" for the litigation of the issues in the prior

25  proceeding; and (4) the issues were necessary to support a valid and final judgment on the merits.

26  *See, e.g*., *Alfadda v. Fenn*, 966 F. Supp. 1317, 1329-1330 (S.D.N.Y. 1997); *see also Amica Life*

27  *Ins. Co. v. Barbor*, 488 F.Supp.2d 750, 757 (N.D. Ill. 2007) (holding "the four requirements for

28  preclusion of factual findings in foreign litigation include: (1) identical issues; (2) actual litigation

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    of the issue[;] (3) the finding of the relevant fact was necessary to the foreign court's final

2    decision; and (4) the foreign tribunal's proceedings were fundamentally fair.").

3          Courts are particularly willing to grant preclusive effect to factual findings, since it favors

4    judicial efficiency.  *Oneac Corp. v. Raychem Corp.*, 20 F.Supp.2d 1233, 1242 (N.D. Ill. 1998);

5    *Vas-Cath Inc. v. Mahurkar*, 745 F. Supp. 517, 525 (N.D. Ill. 1990), *rev'd on other grounds*, 935

6    F.2d 1555 (Fed. Cir. 1991); *Pony Express v. Springsteen*, 163 F. Supp. 2d 465, 473-476 (D.N.J.

7    2001) (granting summary judgment based on collateral estoppel from "clearly factual" findings of

8    a UK copyright ruling). Where, however, a foreign legal system is sufficiently similar to U.S.

9    law, courts will grant preclusive effect to mixed factual and legal findings of foreign courts or

10   administrative bodies. *See Inf. Res., Inc. v. Dun & Bradstreet Corp.*, 1998 WL 851607 (S.D.N.Y.

11   Dec. 8, 1998) (claimed differences between Canadian and United States law did not defeat

12   application of collateral estoppel where laws are sufficiently similar and claimed differences

13   immaterial to the findings proffered.); *Walia,* 2014 WL 296003 at *4 (contract law judgment

14   rendered by Indian court entitled to preclusive effect in later U.S. action because facts of dispute

15   were the same and "Indian contract law is substantially similar to contract law in the United

16   States.").

17          Courts will look beyond the elements required under each jurisdiction's law to determine

18   whether there are common facts that must be established in each jurisdiction.  *See, e.g.*, *Alfadda,*

19   966 F. Supp. 1317 (issue preclusion applied to findings made by a French court in a securities

20   fraud case because, notwithstanding different elements of violation under U.S. and French law,

21   the facts that plaintiffs would have to establish in the U.S. lawsuit were the same as the facts that

22   were litigated in the French court.)  Thus, the mere fact that the applicable legal standards of the

23   foreign judicial system may differ from those of the United States is not dispositive.

24                    (3)    One Court Has Already Granted Partial Preclusive Effect To The
                             EC Decision

25          The same EC Decision at issue here has already been held to have preclusive effect over

26   certain issues in *Vichi v. Koninklijke Philips Elecs, N.V.*, 85 A.3d 725 (Del. Feb. 18, 2014).  *Vichi*

27   involved an investor's claim that he was defrauded into investing in LPD. Since LPD was by that

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

time bankrupt, the investor sought recompense from Philips, one of LPD's parent companies. The investor sought issue preclusion as to LPD's participation in the CRT conspiracy and Philips' knowledge of it based upon the EC Decision. In that case, the Delaware Chancery Court held that the EC Decision was preclusive as to LPD's participation in the conspiracy because, under the rules of the European Union, national courts may not make decisions running counter to the decision adopted by the EC. *Id.* at 781. The court stated:

> Having considered the parties' arguments, I am satisfied that Vichi has established that the EC Decision should be given preclusive effect with respect to LPD's participation in a price fixing scheme that violated EU competition law.
>
> … **I am convinced, contrary to Philips N.V.'s assertions otherwise, that its logic would extend to a fraud action predicated on violations of EU competition law**. One of the necessary showings for a fraud claim based on nondisclosure of illegal anticompetitive conduct would be proving that the illegal, anticompetitive conduct actually occurred. If the EC has issued a ruling that an entity violated EU competition law, it is unclear how a court in an EU member state could hold that, for purposes of a fraud claim based on the same conduct, that entity had not engaged in illegal, anticompetitive activities. Any such ruling that the entity had acted in accordance with EU competition law would "run counter to the decision adopted by the Commission" in violation of the clear, unambiguous language of Article 16(1).

*Id.* at 782 (emphasis added). The court thus rejected Philips' contrary arguments that the EC's most significant findings in the price fixing case would not have preclusive effect in either EU national courts or the Delaware court because those findings were based specifically on principles of EU competition law that are not applicable in other contexts. This reasoning applies here, where Plaintiffs do not seek to admit findings which are based upon unique principles of EU competition law not shared with the United States.

> (4)     Issue Preclusion Should Bar Relitigation Of Certain Issues Resolved By The EC Decision In this Case

In this case, the issue preclusion requirements are met as to the EC Decision's findings because: (1) the EC was investigating the same global CRT cartel that Plaintiffs here must prove under analogous U.S law; (2) the liability issues were actually litigated and a decision rendered in the EC Decision; (3) the parties to the EC proceeding had a full and fair opportunity to participate, and did, in fact, participate in the EC proceedings; and (4) the factual findings Plaintiffs here assert were necessary to the EC in reaching it final decision to fine certain

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    defendants for their cartel activities.  *See Alfadda*, 966 F. Supp. at 1329.

2            The specific factual findings that Plaintiffs submit should be granted preclusive effect are

3    specifically identified in the EC Decision attached as Exhibit A.  In sum, these factual findings

4    demonstrate, contrary to the EC Defendants' claims in this litigation, that the EC Defendants

5    conspired for years to fix prices, restrain output, and allocate market shares in the global CRT

6    industry, and that these activities included small, medium, and large-sized tubes.  *See, e.g.*, Ex. J

7    at ¶¶ 108, 123, 250, 496 (global scope) and ¶¶ 322, 410, 438, 440, 455, 463, 464, 466 (large size

8    tubes). Each of these factual findings was actually litigated by the EC, and was necessary to the

9    EC Decision.  Indeed, these factual findings are based on direct evidence obtained by the EC

10   through its investigation, including evidence obtained through cooperation from Defendants

11   Chunghwa, Samsung, Koninklijke Philips Electronics, and Thomson S.A. in consideration for

12   leniency.  Accordingly, as discussed in more detail below, Defendants should be collaterally

13   estopped from challenging these findings.

14                              (a)      Identical Issues

15           Courts consider four factors to determine whether two issues are identical for issue

16   preclusion purposes: (1) whether there is substantial overlap between the evidence or argument;

17   (2) whether the second action involves application of the same rule of law as the prior action; (3)

18   whether pretrial preparation in the first action is similar to pretrial preparation that would be

19   required in the second; and (4) how closely related the two claims are.  *Resolution Trust Corp. v.*

20   *Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999); *Steen v. John Hancock Life Ins. Co.,* 106 F.3d 904,

21   912, (9th Cir. 1997). With respect to judgments of foreign tribunals, findings that are "clearly

22   factual" are "most easily found to be identical to issues presently before [a U.S.] court."  *Pony*

23   *Express*, 163 F. Supp. 2d at 475.

24           Here, all four of these factors weigh in favor of giving collateral estoppel effect to the

25   findings made by the EC in the EC Decision.  As evidenced by review of the Ezrachi Declaration

26   filed herewith, EU law prohibiting price-fixing is essentially identical to U.S. law.  Indeed, the

27   main differences concern the quantum of proof necessary to establish damages, which do not

28   impact the issue of whether or not price-fixing has occurred.  Given the substantial similarity

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

between the two legal regimes on price-fixing issues, and given that the EC Decision is based on direct evidence, and not so-called "parallel behaviour" evidence under EU law, (see Ezrachi Decl. at ¶¶ 28-34,) there are identical issues involved concerning Defendants' global CRT activities.

### (b)   Issue Actually Litigated and Decided

"In order for collateral estoppel to apply, the issue to be foreclosed in the second litigation must have been litigated and decided in the first case." *Kamilche Co. v. U.S.*, 53 F.3d 1059, 1062 (9th Cir. 1995) (quotation and citation omitted).  In *Kamilche Co.*, the court concluded that a contested issue was litigated and decided where the issue was contested in the pleadings and expressly addressed in the court's judgment.  *Id.*

Here, the EC issued a 341-page opinion detailing its findings about Defendants' CRT cartel activities.  Among other things, that opinion sets forth direct evidence that the EC Defendants engaged in anti-competitive practices including price fixing, exchanging competitive information, market sharing, customer allocation, capacity and output coordination. *See, e.g.,* Ex. J at ¶¶ 108 and 119.  It is this same direct evidence for which Plaintiffs' seek issue preclusion. All of these issues are expressly stated in the EC Decision itself.[18]  And, the opinion indicates that the EC Defendants had the opportunity to, and did, present arguments concerning this evidence. *See e.g,* Exhibit J at ¶¶ 430, 452, 458, 459, 491-495 (summarizing arguments in replies to the Statement of Objections). Thus, the issues were both litigated and decided.

### (c)   Full And Fair Opportunity To Litigate

A defendant who has a full and fair opportunity to litigate an issue in one action may be precluded from defending itself on the same issue in another action brought by a different party. *Parklane*, 439 U.S. at 327 n.5.  A full and fair opportunity to litigate includes the opportunity to be heard on one's arguments and the opportunity to obtain review of adverse findings.  *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421-22 (1966).  Courts have found that

---

[18] *See* Exhibit A at ¶¶ 1, 108-115, Ftn. 167, 116-117, 119-124, Ftn. 172, 126, Ftn 176, 127-128, Ftn. 178, 129-130, 133-137, 139-144, 176, 186-190, 208, 225-228, 231-232, 241-242, 247-256, 259, 264-266, 268-269, 272, 275-276, 278-279, 282, 284, 287, 290-291, 303-304, 307-309, 311, 313-315, 318, 321-322, 324-325, 327, 375, 391, 395, 407-408, 410-418, 422, 427, 434, 438, 440, 454-455, 462-464, 466, 470, 483-484, 486-487, 490, 496, 498-499, 507, 509, 517-518, 525-526, 540, 553, 558-559, 575, 618-621, 646-648, 662-664, 668-670, 694-695, 699, 981, 987, 1015, 1018.

PLAINTIFFS' MOTIONS *IN LIMINE* (NOS. 1-18)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    domestic and international administrative proceedings may afford a defendant a full and fair

2    opportunity to litigate an issue even though the procedures employed by administrative agencies

3    differ from the procedures of U.S. courts.  *See, e.g., University of Tennessee v. Elliott*, 478 U.S.

4    788, 797 (1986) ("[I]t is sound policy to apply principles of issue preclusion to the factfinding of

5    administrative bodies acting in a judicial capacity."); *Miller v. County of Santa Cruz*, 39 F.3d

6    1030, 1032-33 (issue preclusion applies to state administrative adjudications of legal and factual

7    issues, even if unreviewed, so long as the state proceeding satisfies requirements of fairness); *Inf.*

8    *Res., Inc.* 1998 1998 WL 851607, at *1 (finding that defendants in Canadian Competition

9    Tribunal proceeding "had a full and fair opportunity to litigate the issues, and took advantage of it

10   to do so.")

11          Here, the EC Defendants actually participated in the EC proceedings through written

12   submissions and oral arguments, and through actual cooperation with the EU on the part of some

13   in exchange for leniency.  *See* Ex. J at ¶¶ 91-98.  The EC's procedure for soliciting and

14   considering input from the parties is robust.  The parties have access to the EC file, which

15   consists of all documents obtained, produced and/or assembled during the investigation that led

16   the EC to raise its objections.  Ezrachi Decl., at ¶ 76; *see also* European Commission Antitrust

17   Manual of Procedures, Access to File and Confidentiality at 3, 4.[19]  Parties have the right to

18   respond in writing to an EC Statement of Objections and the right to participate in a State of Play

19   meeting in which they will be informed of the EC's preliminary view on how it intends to pursue

20   the case.  Antitrust Manual of Procedures, "Right to be Heard," at 2-10.  The parties also have the

21   right to develop their arguments at an oral hearing and to ask questions during the hearing to all

22   attendees.  *Id.*  The oral hearing provides "an additional opportunity to ensure that all relevant

23   facts . . . including the factual elements relating to the gravity and duration of the alleged

24   infringement – are clarified as much as possible."  *See* Decision of the President of the European

25   Commission on the function and terms of reference of the hearing officer in certain competition

26

27   [19] The European Commission Antitrust Manual of Procedures, dated March 2012, is publicly
     available and accessible online at
28   http://ec.europa.eu/competition/antitrust/antitrust_manproc_3_2012_en.pdf

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    proceedings, 2011 O.J. (L275) 31.[20]  The oral hearing also allows the parties to present arguments

2    about "matters that may be of importance for the possible imposition of fines."  *Id.*  Accordingly,

3    it cannot be maintained that the EC Defendants lacked an opportunity to litigate in the EC forum.

4    Nor, in light of the substantial fines assessed to the EC Defendants can it be maintained that they

5    lacked an incentive to litigate in the EC forum.  Ex. J at ¶ 1183.  *See Ross-Berger Companies,*

6    *Inc. v. Equitable Life Assur. Soc'y of the U.S.*, 872 F.2d 1331, 1338 (7th Cir. 1989) (incentive to

7    litigate shown where "a substantial amount of money was at stake").

8                              (d)     Critical Or Necessary Finding

9            A finding is critical or necessary to a decision if the decision could not have been

10   "rationally grounded upon an issue other than that which the defendant seeks to foreclose from

11   consideration."  *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518-19 (9th Cir. 1985),

12   *superseded  by statute on other grounds*, 28 U.S.C. § 1961 (2012).  Issue preclusion is

13   permissible even where there is no express finding on an issue if that issue must necessarily have

14   been determined.  *Wash. Alder LLC v. Weyerhaeuser Co.*, 2004 WL 1119822, at *6 (D. Ore. May

15   19, 2004) (issue preclusion applied to finding that defendant forced another company out of

16   business even where verdict form did not contain an express finding).  The EC Decision

17   concludes that the EC Defendants participated in a multi-year, global conspiracy to restrain trade

18   in violation of EU law.  It holds that becasue the CDT and CPT cartels "had world wide scope,"

19   they covered both Asia and Europe  Ex. J at ¶¶ 490, 592.  It assesses fines based on the value of

20   "sales of goods or services to which the infringement directly or indirectly related" and its

21   calculations are based on its conclusion that "all CDT and CPT sizes and types were covered by

22   the respective cartels."  Ex. J at ¶¶ 1014, 1015.   The fines are calculated by multiplying the value

23   of the Defendants' sales in the EU by the number of years the Defendants participated in the

24   conspiracy.  Ex. J at ¶ 1013.  Thus, the EC Decision necessarily makes factual findings that each

25   of the EC Defendants participated in meetings to exchange confidential information, to fix prices,

26

27   ────────────────────
     [20] The Decision of the President of the European Commission on the function and terms of
     reference of the hearing officer in certain competition proceedings, 2011 O.J. (L275) 31is
     publically available and accessible online at
28   http://ec.europa.eu/competition/hearing_officers/legislation.html.

to allocate customers, and coordinate output and capacity during each part of the multi-year

conspiracy in which it was implicated and for all sizes of CPTs and/or CDTs it sold that were

affected by the conspiracy.[21]  *See, e.g.* Ex. J at ¶¶ 32-58 (describing CDT cartel events and

evidence relating to specific meetings), ¶¶ 65-135 (describing CPT cartel events and evidence

relating to specific meetings).

      The Decision states that the EC considered the totality of the evidence, indicating that all

of its factual findings are critical or necessary to its holdings. Ex. J at ¶¶ 313, 315.  Nonetheless,

Plaintiffs have undergone a careful review of the EC Decision and selected only paragraphs that

are, without question, essential to its legal conclusions.  The Decision often cites to specific

"examples" of anticompetitive conduct, stressing the importance of this conduct to its ultimate

conclusions. Ex. J at ¶ 313.  For example, in concluding that discussions between Thomson and

Toshiba were "global in scope," and thus included Europe, the EC Decision describes a series of

contacts between Thomson and Toshiba showing that they shared competitive information about

their CRT businesses in various locations.  Ex. J at ¶ 313.  By highlighting these contacts between

Toshiba and Thomson, the EC Decision makes clear that they were facts critical and necessary to

its conclusion that the companies' anticompetitive contacts applied to Europe.  Similarly, the

Decision provides tables "of the most important multilateral and bilateral contacts" for the CDT

and CPT conspiracies for various time periods.  Ex. J. at ¶¶ 141-42, 187-88, 226-27, 255-56, 324-

25, 411-12, 417-18.  By labeling these meetings the "most important" conspiratorial contacts, the

EC Decision makes clear that these factual findings were critical or necessary to its conclusions.

Other paragraphs state factual findings plainly essential to a holding that the EC Defendants

violated EU competition law.  For example, certain paragraphs state that the EC Defendants

"participated in meetings and other contacts with the aim of fixing prices," Ex. J. at ¶¶ 108, 119,

"made arrangements on their shares on the CPT market," Ex. J. at ¶ 121, and "continuously

reached arrangements on price fixing and output limitation, and, in addition, on market shares."

---

[21] The Decision concludes that the CDT cartel existed at least from 1996 to 2006 and that the
CPT cartel existed at least from 1997 to 2006.  See Ex. J, at 338 (setting forth which Defendants
were implicated in the CPT and CDT conspiracies and the years in which they participated in the
cartel(s)).

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Ex. J at ¶ 186.

2       As shown in Exhibit J, Plaintiffs have selected direct evidence of information exchanges,

3   price fixing, market share allocation, and output restriction agreements.  The nature of these

4   selections and the context in which they appear in the EC Decision indicate that they were critical

5   or necessary to the EC's decision to fine certain Defendants for their participation in the CRT

6   conspiracies.  The EC Decision makes clear that its ultimate conclusion that the EC Defendants

7   violated EU competition law was grounded upon the factual findings for which Plaintiffs seek

8   preclusion.  *See, e.g.*, Ex. J at ¶ 644 ("The evidence described in Section 4 shows that Samsung

9   SDI Co., Ltd. participated in the infringement concerning CPT directly. . . .", ¶ 917 ("The

10  evidence described in Chapter 4 shows that Thomson S.A. participated directly in the

11  infringement concerning CPT.")[22]

12              (e)      Final And Valid Judgment

13      "To be 'final' for collateral estoppel purposes, a decision need not possess 'finality' in the

14  sense of 28 U.S.C. § 1291.  A 'final judgment' for purposes of collateral estoppel can be any prior

15  adjudication of an issue in another action that is determined to be 'sufficiently firm' to be accorded

16  conclusive effect." *Luben Indus., Inc. v. U.S.,* 707 F.2d 1037, 1040 (9th Cir. 1983); *Syverson v.*

17  *Int'l Bus. Machs. Corp.,* 472 F.3d 1072, 1079 (9th Cir. 2006) (judgment "sufficiently 'final' even

18  though there are to be further proceedings on remand on the merits").

19      Factors supporting a conclusion that a decision is final include "that the parties were fully

20  heard, that the court supported its decision with a reasoned decision, [and] that the decision was

21  subject to appeal or was in fact reviewed on appeal." *Luben Indus.,* 707 F.2d at 1040 (quoting

22  Restatement (Second) of Judgments § 13 (1982)).  Preclusion is inappropriate only where a

23  decision "was avowedly tentative," such as where an interlocutory order "is subject to free

24  ───────────────────

25  [22] Courts have found factual findings unnecessary in other cases where the findings did not relate to an issue that the court had been asked to decide.  *Howard Hess Dental Labs. Inc. v. Dentsply*

26  *Intern., Inc.*, 602 F.3d 237, 248 (3d Cir. 2010) (declining to apply issue preclusion as to anticompetitive injury where "we did not need to conclude that any upstream purchasers, such as

27  the Plaintiffs, were threatened with injury.")  That is not the case here, where Plaintiffs seek preclusion only on issues that the EC Decision makes clear were essential to its decision to fine

28  the EC Defendants.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

revision by the court." *Id.*; *see also Robi v. Five Platters, Inc*., 838 F.2d 318, 327 (9th Cir. 1988).

The EC Decision is a final order which should be afforded preclusive effect.  It is the culmination of years of investigation and litigation with Defendants.  It is made after written submissions and oral arguments, as well as the cooperation of certain of those involved in the price-fixing. Ex. J; Ezrachi Decl., ¶¶ 75-76.   Although the Decision is labeled "provisional," this is merely because there remain disputes over confidentiality claims. *See* Ezrachi Decl., ¶¶ 77-79; European Antitrust Manual of Procedures, Publication of Decisions, at 9-10 (stating that if disputes over confidentiality claims are not settled "a provisional version of the decision without the disputed parts will be published on the website.").[23]   At this stage of the proceedings, the EC may not revise the decision on its own initiative or upon motion by any of the parties, and the EC Decision is subject to appellate review by the General Court and the European Court of Justice ("ECJ").  Ezrachi Decl., ¶ 81.  Thus, the factors cited in *Luben Indus.* all weigh toward a conclusion that the EC decision is final for purposes of issue preclusion.

The EC Decision is "sufficiently firm to be accorded conclusive effect" in the EU.  *Luben Indus.*,707 F.2d at 1040.  Under the regulations of the Council of the European Union, the courts of EU member states "cannot take decisions running counter to the decision adopted by the Commission" on matters concerning competition under the Treaty on the Functioning of the European Union.   Article 16(1) of European Council Regulation No. 1/2003.  As explained by the *Vichi* court, "based on the regulations of the Council of the European Union, a national court in the European Union ruling on an antitrust matter could not render a decision that would conflict with a decision by the EC."  *Vichi*, 85 A.3d at 781.  Courts in the EU have found that they have no authority to issue a ruling counter to an EC decision finding that entities have violated EU competition law by forming a cartel.  *Id.* at 782 (citing Trib. Milano 8.5.2009).  Nor can the parties credibly argue that the EC Decision should not be given preclusive effect on the theory that the EC is an administrative body rather than a court because the standards of the EU make the EC's findings preclusive and binding.  *See Inf. Res.*, 1998 1998 WL 851607, at *1 (holding

---

[23] The European Commission Antitrust Manual of Procedures, dated March 2012, is accessible online at http://ec.europa.eu/competition/antitrust/antitrust_manproc_3_2012_en.pdf

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   that decision rendered by Canadian Competition Tribunal met the requirements for issue

2   preclusion).

3       That certain parties have appealed the EC Decision changes nothing.[24]  The law is clear

4   that "a judgment otherwise final remains so despite the taking of an appeal unless what is called

5   an appeal actually consists of a trial de novo."  Restatement (Second) of Judgments § 13 (1982).

6   *See, also e.g.*, *Robi*, 838 F.2d at 327 ("The present appeals in no way affect the 'firmness' of the

7   *Robi* decisions in the district court for purposes of issue preclusion."); *Tripati v. Henman*, 857

8   F.2d 1366, 1367 (9th Cir.1988) (stating that a pending appeal does not affect a judgment's finality

9   for preclusion purposes); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure §

10  4433, at 308 (1981) ("The established rule in the federal courts is that a final judgment retains all

11  of its res judicata consequences pending decision of the appeal.")  It cannot be maintained that the

12  appeal of the EC Decision amounts to a trial de novo.  *See* Ezrachi Decl. ¶¶ 82-83. Moreover,

13  preclusion related to the EC Decision has already been applied as to Philips in *Vichi* even though

14  Philips' appeal of the EC Decision was then pending.[25]

15      In the *Vichi* case, Philips argued issue preclusion cannot apply in part because if a national

16  court disagrees with the EC or questions its opinion, the national court may refer the matter to the

17  ECJ, "which has the authority to overrule the EC decision and authorize the national court to

18  disregard the EC's findings."  *Id.* at 782.  The *Vichi* court properly rejected this argument because

19  notwithstanding a national court's ability to seek review of an EC decision in the ECJ, the

20  national courts are nonetheless precluded from issuing a ruling that would conflict directly with a

21  decision by the EC that an illegal cartel had been formed. *Id.*  The same is true regarding the

22  pending appeals.  Notwithstanding the parties' ability to appeal the EC Decision, any national

23  ───────────────

24  [24] Certain parties to the Decision, the Chunghwa Defendants and Thomson S.A., have declined to appeal the EC Decision.  Those parties are precluded from challenging the findings in the EC Decision in any court in the EU.  Ezrachi Decl., ¶¶ 85-87.Without question, the EC Decision is a

25  final and valid judgment as to these parties.

26  [25] On February 15, 2013, Philips lodged its appeal of the EC Decision.  A record of this appeal can be accessed at

27  http://curia.europa.eu/juris/document/document.jsf?text=&docid=136584&pageIndex=0&doclang=EN&mode=lst&dir=&occ=first&part=1&cid=51415.

28  The *Vichi* opinion was submitted on June 3, 2013 and decided on February 18, 2014. 85 A.3d at 725.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   court would be precluded from issuing a ruling contrary to the EC Decision.  *See Id.* citing Trib.

2   Milano 8.5.2009 (stating that a national court may not undertake a de novo examination based on

3   the same facts, whose sole purpose is to overrule the decision of the EC).

4       Accordingly, the Court should grant preclusive effect to the EC Decision findings

5   identified on the attached Exhibit J.

6       **e.    Alternatively, The EC Decision Should Be Admitted Into Evidence**

7       Alternatively, if the Court is not inclined to apply issue preclusion, the EC Decision

8   should nonetheless be admitted into evidence.  To be admissible in court, evidence must be

9   relevant (i.e. material and having probative value,) and not outweighed by countervailing

10  considerations, (such as a tendency to cause undue prejudice, confusion, waste of time, privilege,

11  or based on hearsay).  The EC Decision is relevant and reliable, having been rendered after a

12  lengthy investigation complete with briefing and oral argument by the affected parties.  The EC

13  Decision is publicly available and not privileged, and will not cause undue prejudice to

14  Defendants.  Accordingly, the EC Decision should, at a minimum, be allowed into evidence.

15      (1)    The EC Decision Is Relevant

16      The EC Decision is relevant because it has some tendency to make facts of consequence

17  to the action more or less probable than they would be without the evidence. Fed. R. Evid. 401.

18  Plaintiffs have alleged a global CRT conspiracy which targeted and affected not only Asia, but

19  the United States and European markets.[26]  Thus, the fact that the EC investigated and fined

20  multiple Defendants for illegal price-fixing conduct affecting the European market is highly

21  relevant to this suit. Moreover, in deciding to fine certain EC Defendants for their anticompetitive

22  conduct, the EC made a series of highly significant factual findings which impeach many of the

23  claims these same Defendants seek to advance in this case.[27] Specifically, Defendants dispute the

24  scope of the conspiracy, which the EC found to be global and inclusive of large sized CRTs. *See,*

25  _____

26  [26] *See, e.g.*, First Amended Complaint in *Best Buy v. Hitachi* at ¶¶ 6-7, 115 (alleging that
    conspiracy "raised and stabilized worldwide and U.S. prices"), 134 (alleging a "global
    conspiracy").

27  [27] As to certain of these findings, Defendants should be collaterally estopped from re-litigating the
    issue, as discussed above.  However, as to other facts, the findings are at least relevant to discredit
28  Defendants' claims.

60945452.2

- 51 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*e.g.*, Ex. J at ¶¶ 108, 123, 250, 496 (global scope) and ¶¶ 322, 410, 438, 440, 455, 463, 464, 466, 575 (large-sized tubes). Regarding the issue of geographical scope, the EC found:

> (592)    In this case, it can be established that both the CDT and the CPT cartel
> arrangements related to sales of CDTs and CPTs **without geographical**
> **limitations**. …[W]hile cartel discussions were taking place both in Asia
> and Europe there was no separation between the geographic areas. On the
> contrary, **the cartel had world wide scope** and the European cartel
> contacts emerged as an extension of what initially started as purely Asian
> cartel contacts, with top meetings continuing to be held in Asia.

Ex. J at ¶ 592 (emphasis added.)  Regarding the CRT size issue, the EC found:

> (575)    As regards the product scope, the following is observed: **the abundant**
> **contemporaneous evidence on the file shows that**, while certain
> meetings were focused more on specific or various sizes in relation to
> certain arrangements that were reached between the cartel members, **there**
> **was an overall scheme that the parties followed covering all sizes and**
> **types (or irrespective of sizes such as incase of overall capacity**
> **figures).** Hence, there was an overarching scheme which included explicit
> agreements or concerted arrangements concerning certain sizes of types of
> tubes with discussions on future behaviour and related exchanges of
> sensitive information covering all sizes and types.

Ex. J at ¶ 575 (emphasis added.)  The EC Defendants also dispute the efficacy of the conspiracy, arguing that their price agreements were not followed or were not effective.  *See* Ex. J at ¶¶ 1089-90. The EC Decision also rejects those arguments.  Ex. J at ¶¶ 1092 ("[A]s stated in Recitals (698)-(699) and (701)-(705), the participants including Thomson, LGE, Toshiba and MTPD implemented the arrangements. Recitals (698)-(699) refer to the abundant evidence on the file which demonstrates the existence of anti-competitive effects of the cartel arrangements as a whole. These effects imply that the cartel must have been implemented.").

It is imperative that Plaintiffs have the opportunity, at a minimum, to put before the jury

1  the fact that Defendants' arguments were rejected by a foreign tribunal.

2       Competition law in the United States and in the European Union has much in common.

3  TFEU[28], which prohibits agreements that destroy competition and, thus, agreements to fix prices,

4  is similar to section 1 of the U.S. Sherman Act (US Code, Vol. 15), which prohibits agreements in

5  restraint of trade.  Both the U.S. and EC share a common objective to their competition laws: to

6  advance the interests of consumers to protect the free flow of goods in a competitive economy.

7  Both seek to protect competitors' access to markets and protect to some extent consumer freedom

8  of choice and seller freedom from coercion. Thus, a finding of price-fixing under one legal

9  system is relevant to the other.

10                    (2)       The EC Decision Is Not Inadmissible Hearsay

11       Additionally, as a public record, the EC Decision is not rendered inadmissible by the

12  hearsay rule. Under Federal Rule of Evidence 803:

13       "The following are not excluded by the rule against hearsay, regardless of whether
         the declarant is available as a witness:
14       (8) **Public Records**. A record or statement of a public office if:
         (A) it sets out:
15        (iii) **in a civil case or against the government in a criminal case, factual
         findings from a legally authorized investigation**; and
16       (B) the opponent does not show that the source of information or other
         circumstances indicate a lack of trustworthiness."
17
18  Fed. R. Evid. 803(8)(A)(iii) (emphasis added).  To be admissible under Rule 803(8)(C), "the

19  evidence must (1) contain factual findings, and (2) be based upon an investigation made pursuant

20  to legal authority." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000).

21       "Rule 803(8) 'is based upon the assumption that public officers will perform their duties,

22  that they lack motive to falsify, and that public inspection to which many such records are subject

23  will disclose inaccuracies.'" *Id.* (quoting 31 Michael H. Graham, *Federal Practice and Procedure*

24  § 6759, at 663-64 (interim ed. 1992)).  The admissibility of evidence covered under Rule

25  803(8)(C) "is generally favored" and presumed. *Gentile v. County of Suffolk*, 926 F.2d 142, 148

26  (2d Cir. 1991).

27  [28] The Treaty of Rome established the European Economic Community in March 1957. The
    Treaty on European Union (or, the Maastricht Treaty), adopted in 1993, did not alter the
    competition provisions in the Treaty of Rome.  The Maastricht Treaty was later amended and
28  renamed as the Treaty on the Functioning of the European Union.

60945452.2                                 - 53 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Pursuant to the authority granted by law, the EC undertook an investigation of price-fixing in the CRT industry, principally in Europe and Asia.  In the course of its investigation, the EC reviewed a large number of documents that it gathered during inspection of CRT makers facilities and that it received in response to demands directed to all of the subject companies.  It also reviewed numerous written and oral responses to requests for information directed to all of the subject companies.[29] The EC Decision is the product of that authorized investigation.  Plaintiffs are aware of no evidence demonstrating that the EC Decision was issued in anything other than the regular course of the EC's business.  Accordingly, Rule 803(8) takes the EC Decision outside the hearsay rule.

### (3)    The EC Decision Is Not Privileged

Nor is the EC Decision privileged.  An evidentiary privilege is a rule of evidence that allows the holder of the privilege to refuse to provide evidence about a certain subject or to bar such evidence from being disclosed or used in a judicial or other proceeding.  Plaintiffs are aware of no recognized privilege which would allow Defendants to refuse admission of the provisional EC Decision, which is now *publicly available* on the EC's website.

### (1)    The EC Decision Will Not Risk Undue Prejudice To Defendants

Moreover, the EC Decision is not likely to cause undue prejudice to Defendants in this case.  Where, as here, Defendants engaged in a longstanding, global cartel in violation of US, EC, and Korean laws, their conduct may well be investigated by the government authorities of those nations.  Further, certain Defendants cooperated with, and voluntarily provided information to, the EC, thereby providing further evidence that no undue prejudice will result here.  Whatever prejudice, if any, that results from the findings of those investigations can hardly be called undue, particularly where the same evidence establishes the illegality of Defendants' conduct in all relevant jurisdictions.

The fact that certain Defendants were found to have violated EC competition law and fined is a matter beyond dispute, and should be put before the jury.  *See State ex rel. W.A.*, 63 P.3d 607, 619 (Utah 2002) (finding that when proving only that defendant had been sentenced to

---

[29] *See* Exhibit A, EC Decision, § 3.1 at p. 22.

1   ten years in prison, not that he had committed the offense, the record of conviction was

2   admissible under state rule 803(8)).

3              (2)     United States District Courts Have Admitted The Preliminary Fact
                       Findings Of Foreign Tribunals Into Evidence

4

5   Federal district courts have considered whether to admit preliminary factual findings by

    the EC for evidentiary purposes and have done so.

6

7   For example, in *Inf. Res., Inc.*, 1998 WL 851607, the district court admitted the

8   (admittedly tentative) findings of the European Commission's Statement of Objections ("SO")

9   into evidence under Federal Rule of Evidence 803(8)(C).  The court reasoned that the SO,

10  although not a final decision, satisfied the requirements of Federal Rule 803(8)(C) as findings

11  resulting from an investigation made pursuant to authority granted by law.  The court was

12  untroubled by the fact that there had as of yet been no hearing on the SO findings.  The court

13  noted that the circumstances did not indicate an lack of trustworthiness, and that defendants

14  would be allowed to present evidence tending to contradict or diminish the weight of the SO

15  conclusions if they so chose. *Id.* at 1.

16  Similarly, in *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681

17  F.Supp.2d 141 (D. Conn. 2009), the court found that the interim factual findings of an SO were

18  sufficiently trustworthy to fall within the hearsay exception for public records and reports, and

19  thus declined to exclude them from plaintiff's summary judgment opposition. The court stated:

20          I conclude that the factual findings in the SO are sufficiently trustworthy to
            warrant exclusion from the hearsay rule under Rule 803(8) (C) because (1) **the SO
21          at issue here was in its final form**, i.e., the plaintiffs are not attempting to submit
            a draft SO; (2) **the SO is the product of an independent investigation, during
22          which DSM was given the opportunity to participate by submitting at least
            four written responses prior to the report's publication**; (3) there is no
23          indication that the report was not completed in a timely manner; (4) the report was
            based on a record of ascertainable and verifiable facts; (5) there is no indication
24          that the DSM defendants objected to the SO's factual findings, despite the
            opportunity to do so; and (6) the report was authored by the EC Commissioner for
25          Competition, Neelie Kroes, the highest Commission official directly responsible
            for antitrust matters, whom the DSM defendants have not accused of having
26          questionable motives or bias in producing the SO.

27  *Id.* at p. 159 (emphasis added).  Where the results of the report appear untrustworthy, the result is

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    different.[30]

2            Here, the document at issue is the EC Decision, not a Statement of Objections.  As such,

3    hearings have been conducted, written submissions have been obtained and considered, and there

4    is no indication of a lack of trustworthiness. Because the EC Decision is the provisional version

5    of a final order, the reasoning of *Information Resources* and *EPDM* applies with equal, if not

6    greater, force to admit the EC Decision.

7            Accordingly, this Court should admit the EC Decision into evidence, in its entirety.

8                    **f.      Conclusion**

9            For all of the reasons stated, the Court should grant Plaintiffs' motion *in limine* to

10   establish the preclusive effect of, or in the alternative admit, the EC Decision.

11       **12.    Motion to Exclude Percipient Witnesses, Except for One Party
                 Representative, From the Courtroom Unless They Are Testifying**

12           Plaintiffs ask that all percipient witnesses be excluded from the courtroom except for one

13   representative per party.  Fed. R. Evid. 615.  The "Federal Rules of Evidence . . . require a federal

14   district court to exclude witnesses upon the motion of a party," *Larson v. Palmateer*, 515 F.3d

15   1057, 1065 (9th Cir. 2008), so that witnesses cannot tailor their accounts, resulting in "testimony

16   that is less than candid."  *Geders v. United States*, 425 U.S. 80, 87 (1976).  Plaintiffs also request

17   that the Court enter an order precluding percipient witnesses from reading daily transcripts of the

18   court proceedings.  Such a prohibition should not extend to expert witnesses, however.

19           Plaintiffs further ask that the Court limit each party to designating no more than one

20   percipient witness as party representative to attend the trial.  Federal Rule of Evidence 615,

21

22   _____
     [30] At least one district court has declined to admit the factual findings of a government
23   investigatory report where the results were found to be untrustworthy.  *See In re Japanese Elec.
     Prods. Antitrust Litig.*, 723 F.2d 238, 268 (3d Cir.1983), *rev'd on other grounds sub nom.
24   Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (declining to admit a
     government investigatory report's factual findings where found to be untrustworthy because "(1)
25   there was no evidentiary hearing; (2) the Assistant Secretary did not attend the hearings which
     were held but instead relied on staff reports; (3) the investigation included hearsay, confidential
26   communications, and ex parte evidence; (4) the procedures, while permitting submissions and the
     opportunity to present argument by counsel, did not provide for cross-examination; (5) there was
27   no ascertainable record; (6) the finding was made at a nascent stage of the investigation; (7) the
     finding was subject to some form of judicial review; and (8) the finding contained no statement of
28   reasons for allowances or disallowances of particular adjustments.") These rationales do not apply
     to the provisional EC Decision, in which the Defendants participated heavily.

     60945452.2
                                    - 56 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  although providing for the exclusion of witnesses from the courtroom, also permits "an officer or

2  employee of a party which is not a natural person designated as its representative by its attorney."

3  Allowing a party to designate more than one percipient witness as a party representative would

4  undercut the rule that percipient witnesses should not be present in the courtroom because they

5  could then tailor their accounts or offer testimony that is less than candid when called to the

6  stand.

7  **13.   Exclude Argument or Evidence Regarding Purportedly Pro-Competitive Justifications For Defendants' Agreements Regarding CRT Price, Supply, Production, or Customers**[31]

8

9  Plaintiffs Target, ViewSonic, Sears, Kmart, Circuit City, and Best Buy request that the

10  Court prohibit Defendants from referring to or introducing any evidence at trial regarding

11  purportedly pro-competitive justifications for Defendants' agreements relating to the price,

12  supply, production, or customers of CRT.  Such evidence or argument is inadmissible and

13  irrelevant in a case, such as this one, that is premised on a *per se* violation of Section 1 of the

14  Sherman Act, 15 U.S.C. §1.  *See United States v. Hsiung*, 2015 WL 400550 at *7-9 (9th Cir. Jan.

15  30, 2015) (holding that it is proper for a district court to treat a price-fixing case as governed by

16  the *per se* rule and to reject a defendant's rule of reason defense).

17  There is extensive evidence in this case that Defendants engaged in a hardcore price-

18  fixing conspiracy.[32]  Such conspiracies are subject to a *per se* analysis, because they are so

19  ────────────────────

20  [31] Plaintiffs Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. (collectively, "Sharp") do not join this motion in limine because Sharp is pursuing a rule of reason

21  claim, in addition to a *per se* claim.  Sharp understands that defendants intend to file a motion to prohibit Sharp from advancing its rule of reason claim, which Sharp will oppose.  Subject to and without waiving

22  its objection to any such motion, should the Court nonetheless rule that Sharp cannot pursue its rule of reason claim, Sharp reserves the right to join this motion in limine with respect to Sharp's *per se* claim.

23  [32] Rather than repeat them here, Plaintiffs incorporate the facts described in their oppositions to

24  Defendants' various motions for summary judgment, including the:  Opposition to Defendants LG Electronics, Inc.'s Motion for Partial Summary Judgment on Withdrawal Grounds (MDL Dkt. No. 3262);

25  ViewSonic Corporation's Opposition to Defendants Chunghwa's Motion for Partial Summary Judgment as to ViewSonic Corporation (MDL Dkt. No. 3249); ViewSonic Corporation's Opposition to Defendants

26  Chunghwa's Motion for Partial Summary Judgment as to ViewSonic Corporation (MDL Dkt. No 3263); Costco Wholesale Corporation's Opposition to Defendants' Joint Motion For Partial Summary Judgment (MDL Dkt No. 3264); Plaintiff's Joint Opposition to LGE Defendants' Motion to LGE Defendants Motion

27  for Partial Summary Judgment on Standing Grounds (MDL Dkt. 3279); and Plaintiff's Opposition to Defendants' Motion For Partial Summary Judgment on Indirect Purchaser Claims Based on Foreign Sales

28  (MDL Dkt. No. 3287).

plainly anticompetitive that they are deemed illegal, without regard to any justification.  For

example, courts have held:

> [T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.  This principle of *per se* unreasonableness not only makes the type of restraints which are proscribed by the Sherman Act more certain to the benefit of everyone concerned, but it also avoids the necessity of an incredibly complicated and prolonged economic investigation into the entire history of the industry involved, as well as related industries, in an effort to determine at large whether a particular restraint has been unreasonable – an inquiry so often fruitless when undertaken.

*N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958); *see also Nat'l Soc'y of Prof'l Eng'rs v.*

*United States*, 435 U.S. 679, 692 (1978) ("agreements whose nature and necessary effects are so

plainly anticompetitive that no elaborate study of the industry is needed to establish their

illegality – they are 'illegal *per se*.'").  Therefore, the Supreme Court has held that economic,

business, or other justifications or claims of reasonableness are impermissible in *per se* cases.

*See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940) ("Whatever

economic justification particular price-fixing agreements may be thought to have, the law does

not permit an inquiry into their reasonableness.  They are all banned because of their actual or

potential threat to the central nervous system of the economy."); *United States v. Topco Assocs.*

*Inc.*, 405 U.S. 596, 610 (1972) ("In applying these rigid [*per se*] rules, the Court has consistently

rejected the notion that naked restraints of trade are to be tolerated because they are well

intended or because they are allegedly developed to increase competition."); *see also In re*

*Cardizem CD Antitrust Litig.*, 332 F.3d 896, 909 (6th Cir. 2003) ("[T]he law is clear that once it

is decided that a restraint is subject to *per se* analysis, the claimed lack of any actual

anticompetitive effects or presence of procompetitive effects is irrelevant.") (citations omitted).

Evidence relating to purported pro-competitive justifications is also properly excluded

under Federal Rule of Evidence 403, because it would serve only to mislead and confuse the jury

into believing that such information is important for their consideration.  The *per se* rule is

specifically designed to avoid such confusion and deception.  Further, Defendants have no right to present irrelevant evidence, and trial courts may exclude evidence that is insufficient as a matter of law to establish a defense.  *See United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989).

**14.** **Motion to Exclude References To And Evidence Of Defendants' Non-Indictment**

In 2007, the U.S. Department of Justice ("DOJ") began a criminal investigation into price-fixing in the CRT industry.  That investigation was aided by Defendant Chunghwa, who admitted its involvement in the conspiracy and supplied the DOJ with evidence implicating its co-conspirators in exchange for amnesty from criminal prosecution.  The investigation resulted in Defendant Samsung SDI pleading guilty in 2011 to violations of the federal antitrust laws.  No other Defendant has been indicted.  That fact, however, has little or no probative value in civil litigations such as this, and could lead a jury to conclude improperly that because no criminal charges have been brought against the other Defendants, they must not have participated in the price-fixing conspiracy.  As a result, any references to or evidence of these non-indictments – including the existence of any non-prosecution agreements with DOJ – should be deemed inadmissible at trial.

Evidence that criminal charges were not brought against a party is inadmissible in a civil case arising out of the same events.  *J.W. v. City of Oxnard*, Case No. 07-06191, 2008 WL 4810298, at *22 (C.D. Cal. Oct. 27, 2008) ("The decision not to prosecute is highly discretionary and demonstrates nothing more than the opinion of the prosecutor . . . . All that the decision not to prosecute can accurately show is that the District Attorney was of the opinion that the case should not be prosecuted.  This minimal probative value is outweighed by the possibility that jurors unfamiliar with the judicial process might be misled."); *Borunda v. Richmond*, 885 F.2d 1384, 1387 (9th Cir. 1988) ("Evidence of an acquittal is not generally admissible in a subsequent civil

- 59 -

1    action"); *see also Am. Home Assurance Co. v. Sunshine Supermarket, Inc*., 753 F.2d 321, 325 (3d

2    Cir. 1985); *Galbraith v Hartford Fire Ins. Co.*, 464 F.2d 225 (3d Cir. 1972).

3         This is because the decision not to criminally indict a defendant is irrelevant, highly

4    misleading, and prejudicial, as a jury could conclude, because of non-indictment, that a defendant

5    did not engage in wrongful conduct, despite the significant differences between civil and criminal

6    standards of proof and considerations of prosecutorial discretion.  Indeed, the higher burden of

7    persuasion in a criminal case and prosecutorial discretion have both been cited as reasons to

8    preclude evidence of non-prosecution. *See FIGA v. R.V.M.P. Corp*., 874 F.2d 1528, 1531 (11th

9    Cir. 1989) (burdens of proof); *see also In re High Fructose Corn Syrup Antitrust Litig*., 295 F.3d

10   651, 664 (7th Cir. 2002) (prosecutorial discretion).

11        In connection with this request, Plaintiffs are prepared to stipulate that they will not

12   affirmatively present the indictments that were issued in connection with the DOJ's investigation

13   into price-fixing in the CRT industry in their case-in-chief.  That stipulation would not, however,

14   extend to Defendant Samsung SDI's guilty plea or Defendant Chunghwa's amnesty agreement.

## 15.   Motion to Admit Testimony of Summary Witnesses

Pursuant to Federal Rule of Evidence 1006, Plaintiffs seek to call two witnesses at trial to

summarize vast amounts of evidence in this case.  That testimony will efficiently present to the

jury a large number of documents reflecting the corporate structure of various Defendants, as well

as numerous conspiracy meetings and communications.  The summary witnesses will not attempt

to interpret the documents, but rather will simply present and summarize them according to

certain criteria apparent on the face of the documents.

The documents at issue include Defendants' annual reports and/or financial statements,

and meeting minutes produced by several Defendants.  Presenting each such document separately

would consume an inordinate amount of jury time and would not further the jury's understanding

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

of the evidence.  It is important to present ownership and/or control evidence over the course of the entire conspiracy period and beyond, so it is not adequate for Plaintiffs to pick just one or two examples and leave the proof at that.  The sheer volume of documents indicating an ownership and/or control relationship between various Defendants and their corporate affiliates is itself highly relevant to rebut Defendants' arguments to the contrary.  Similarly, evidence of systematic and repeated meetings and contacts rebuts Defendants' arguments that the conspiracy would have been difficult to implement or would have been ineffective, because it shows the great efforts Defendants put forth to ensure the conspiracy's success.

Grant of this motion would, of course, not limit the Court's ability to issue any further orders necessary to ensure that the evidence is shown to the jurors in a way that is fair and facilitates their understanding.  Summary witnesses outlining the corporate structures of various Defendants and their meetings in furtherance of the conspiracy would make this trial's procedures more "effective for determining the truth."  Fed. R. Evid. 611(a).

### a.      Statement of Facts

Plaintiffs seek to establish at trial certain basic facts regarding the corporate structure and conspiratorial involvement of certain Defendants, which will require the use of documents produced by Defendants in discovery.  In many cases, such proof will come in through the testimony of sponsoring witnesses.  However, given the vast amount of evidence in this case reflecting corporate structure and conspiracy meetings, combined with the time constraints at trial, Plaintiffs will only be able to present a sliver of the evidence through such detailed testimony.  With this motion, Plaintiffs respectfully request the Court's permission to call two summary witnesses to present a large amount of evidence in a fair and efficient manner.

Specifically, Plaintiffs seek to call Daniel Gill, a former Federal Bureau of Investigation ("FBI") forensic examiner and a current Director in the Global Investigations and Compliance

practice at Navigant Consultants, Inc., to serve as a summary witness with respect to public documents reflecting the corporate structures of Defendants Philips, Toshiba, Samsung SDI, LG Electronics, Hitachi, Panasonic, and Mitsubishi, and with respect to the minutes prepared by Defendant Chunghwa that document the so-called "Glass Meetings" attended by many Defendants.  Judge Illston permitted Mr. Gill to serve a similar function in connection with Plaintiff Best Buy's trial in the *TFT-LCD Antitrust Litigation*.[33]  In addition, Plaintiff ViewSonic seeks to call Sean Chen, a Director at Blackpeak Group, a firm based in and focused on Asia that provides advisory services with respect to business intelligence and corporate finance, to serve as a summary witness with respect to public documents reflecting the corporate relationship between Defendant Chunghwa, Tatung Company, and Jean Co., Ltd.

Neither Mr. Gill nor Mr. Chen will testify as experts or provide expert opinion testimony. Their roles will be limited to reviewing and summarizing trial exhibits provided to them by counsel.  They will not attempt to interpret the documents or argue the evidence, but rather will simply tabulate and summarize them according to certain objective criteria which appear on the face of the documents.  Although the testimony will be limited in time and scope, it will allow Plaintiffs to fairly and efficiently present a large volume of evidence to the jury.  Their testimony will focus on two categories of documents:  (1) documents reflecting the corporate structure of various Defendants and co-conspirators, including annual reports prepared by Defendants or their affiliates and disclosures filed with the S.E.C. (e.g., Form 20-F disclosures) and international government bodies; and (2) documents reflecting number, dates, and attendees of the Glass Meetings, including meeting minutes.  All of these documents appear on the Plaintiffs' Joint Exhibit List and are independently admissible.

---

[33] Similarly, Judge Illston considered and approved a request by the DOJ in *United States v. AU Optronics Corporation et al.*, Case No. 3:09-cr-00110-SI, to call FBI Special Agent Claire Duda as a summary witness at trial, subject to and without prejudice to objections to specific questions at the time of the actual testimony.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

By this motion, Plaintiffs are not seeking pre-admission of any trial exhibits.  They are simply seeking a determination that they will be allowed to present summary testimony along the above lines.  Grant of the motion would obviously be without prejudice to the Court's ability to limit or curtail it based on objections at trial.  Each document that forms the basis of the summary witnesses' testimony will be admissible, and admissibility of any chart summarizing the testimony would be based on the testimony actually given.

### b.    Argument

Courts have consistently held that they have discretion under Federal Rule of Evidence 611(a) to permit a witness to summarize voluminous evidence and present it in charts, tables, lists or other forms provided:  (1) the evidence is admissible; (2) the defense has a full opportunity to cross-examine the witness and challenge the accuracy of any summary charts created based upon admissible evidence; (3) the judge gives proper limiting instructions regarding the testimony and use of summary charts; and (4) such testimony will aid in the jury's examination of the evidence. *See, e.g.*, *United States v. Olano*, 62 F.3d 1180, 1203-04 (9th Cir. 1995) (holding that it is permissible to use a summary witness to summarize the evidence already presented by the government's preceding witnesses); *United States v. Baker*, 10 F.3d 1374, 1411-12 (9th Cir. 1993) (same), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000); *United States v. Paulino*, 935 F.2d 739, 752-54 (6th Cir. 1991) (holding that testimony of a non-expert summary witness was admissible where trial court gave the proper limiting instruction that summary testimony and charts were not themselves evidence and defense had full opportunity to cross-examine), *superseded by statute on other grounds by* U.S.S.G. § 3B.1; *United States v. Scales*, 594 F.2d 558, 563-64 (6th Cir. 1979) (holding that it was proper to allow an FBI agent to testify regarding a summary chart).

1    All of the factors set forth above are met here.  First, regarding admissibility, Plaintiffs

2  intend to call these witnesses to summarize a large number of documents that either were

3  produced by Defendants in this case or are publicly available.  The Glass Meeting minutes were

4  produced by Defendant Chunghwa, have been authenticated by prior deposition or stipulation,

5  and are admissible under the hearsay exclusion for admissions of a party opponent.  Fed. R. Evid.

6  801(d)(2).  The public filings reflecting Defendant corporate structure are similarly admissible as

7  admissions and also as business records.  Fed. R. Evid.  803(6).

8

9    Second, defendants will have a full opportunity to cross-examine the summary witnesses.

10  Further, the witnesses will be asked only basic questions about objective criteria readily

11  observable on the face of the subject documents.  Of course, if at any point the questioning

12  appears to reach beyond such basic topics, Defendants are free to object and/or request whatever

13  limiting instructions might be appropriate to clarify the purpose and scope of the witnesses'

14  testimony.

15

16    Finally, the summary witnesses' testimony will aid in the jury's examination of the

17  evidence.  With respect to the "Glass Meeting" minutes, the evidence Plaintiffs seek to present is,

18  of necessity, voluminous and, to some extent, repetitive.  Plaintiffs will highlight some of the

19  individual meeting minutes in connection with live or designated deposition testimony, but given

20  the time constraints at trial, Plaintiffs will be able to show only a sliver of the rich documentary

21  record reflecting conspiratorial communications in this case.  Detailed testimony regarding a

22  small selection of documents is no substitute for a more holistic picture of the conspiracy, which

23  is necessary to rebut Defendants' arguments that that the cartel was limited in scope, not plausible

24  or possible, or difficult to implement.  Similarly, summaries of public filings are necessary to

25  effectively and efficiently paint a picture of certain Defendants' corporate structure over a time

26  period that spans more than a decade.  Such information is relevant to rebut the contention by

certain Defendants that they did not have ownership and/or control over certain other entities

during or after the time period at issue in this case.

**16.    Motion to Exclude Evidence of or References to the Retailer Plaintiffs
        Purchasing Finished Products Containing CRTs from Plaintiff ViewSonic or
        Plaintiff Sharp**

Plaintiffs request that the Court prohibit Defendants from referring to or introducing

evidence at trial that Plaintiffs Target, Sears, Kmart, Circuit City, and Best Buy ("the retailer

plaintiffs") purchased finished products containing CRTs – *i.e.*, computer monitors and/or

televisions – from Plaintiffs ViewSonic and Sharp for resale.

The retailer plaintiffs have all dismissed their indirect purchaser state law antitrust claims

in advance of trial.  This means that only their Sherman Act claims based on purchases of

finished products containing CRTs from Defendants and their co-conspirators remain.  Likewise,

neither ViewSonic nor Sharp intends to assert indirect purchaser claims at trial.  As a result, no

purchases of finished products containing CRTs by the retailer plaintiffs from ViewSonic or

Sharp are at issue in this case.  Therefore, any references to or discussion of such purchases is

irrelevant at trial.

Moreover, the introduction of evidence of such purchases would be prejudicial to

Plaintiffs to the extent it is used by Defendants to imply to a jury that there is duplicative recovery

at issue in this case or that ViewSonic or Sharp may have passed on overcharges to their

customers.  Such arguments are prohibited where, as here, all claims are brought under the

Sherman Act and premised on direct purchases.  *See Hanover Shoe, Inc. v. United Shoe Mach.

Corp.*, 392 U.S. 481, 494 (1968) (holding that antitrust defendants are prohibited from raising as a

defense that plaintiffs passed-on or otherwise recouped all or some of defendants' overcharges by

passing-on those overcharges to their customers); *see also Royal Printing Co. v. Kimberly-Clark

Corp.*, 621 F.2d 323-327 (9th Cir. 1980) ("*Hanover Shoe* teaches that in . . . situations [where

plaintiffs may have partially recouped an overcharge] there is nothing wrong with the plaintiff winning a windfall gain, so long as the antitrust laws are vindicated and the defendant does not suffer multiple liability."); *Braintree Labs., Inc. v. McKesson Corp.,* Case No. 11-80233, 2011 WL 5025096, at *3 (N.D. Cal. Oct. 20, 2011) ("[t]he Supreme Court has made it clear that in an antitrust suit, a plaintiff's alleged benefit from a defendant's anti-competitive behavior because the plaintiff 'passed on' any overcharge is not relevant to whether the plaintiff suffered a cognizable antitrust injury.").

### 17. Motion to Exclude Evidence of or References to ViewSonic's Purchasing Team Moving Abroad After The Purchases at Issue in This Case Were Made

Plaintiff ViewSonic requests that the Court prohibit Defendants from referring to or introducing evidence at trial that ViewSonic's procurement team moved from the United States to Taiwan after the relevant period in ViewSonic's case.  All damages sought by ViewSonic in this litigation stem from monitor purchases made prior to the third quarter of 2004.  *See* Report of Alan S. Frankel Ph.D. at Exs. 16a, 17 (June 6, 2014), Ex. K to the Casselman Decl.   During that time, ViewSonic's purchasing team was based in California.  *See* Ex. L to Casselman Decl.  Only after that time, did the purchasing team move to Taiwan. *See id.* at 107:16-108:1.  As a result, this fact is irrelevant to the claims at issue, and is potentially prejudicial to ViewSonic's case, as it paints a skewed picture of ViewSonic's procurement of the actual CRTs on which damages are based.

### 18. Motion to Exclude References to the Current Financial Condition of Any of the Named Plaintiffs

Plaintiffs anticipate that Defendants may attempt to offer argument or evidence at trial about Plaintiffs' current financial condition.  However, Plaintiffs' financial condition is irrelevant to whether Defendants conspired to fix prices of CRTs and whether Plaintiffs were injured as a result.  *Sanderson v. Winner*, 507 F.2d 477, 479 (10th Cir. 1974); In re Homestore, 2011 WL 291176 at *1 ("Evidence of a party's financial condition is generally not relevant and can be

unduly prejudicial, as it can distract the jury from the real issues in the case."); *In re West Coast Dept. Stores Antitrust Litig.*, Civil No. C-79-2724 SW, 1979 WL 1721 at *1 (N.D. Cal. Nov. 16, 1979).

In *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.), Judge Illston excluded this irrelevant evidence.  See MDL 1827 Dkt. 8298 at 4 (Final Pretrial Scheduling Order - Phase 1 DAP Trial) (July 11, 2013) ("No. 12. To exclude references to the current financial condition of any of the named plaintiffs (brought by all plaintiffs except Kodak): GRANTED, absent offer of proof demonstrating relevance of evidence.")

For all of the foregoing reasons, the Court should grant Plaintiffs' motion *in limine* to exclude evidence or argument regarding the current financial condition of any of the named plaintiffs.

## IV.
## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their motions *in limine*.

Respectfully submitted,

Dated:  February 13, 2015

/s/  *Roman M. Silberfeld*

Roman M. Silberfeld
Bernice Conn
David Martinez
Laura Nelson
Jill Casselman

ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:  (310) 552-0130
Facsimile:   (310) 229-5800

Email:  rsilberfeld@robinskaplan.com
        dmartinez@ robinskaplan.com
        bconn@robinskaplan.com
        lnelson@robinskaplan.com
        jcasselman@robinskaplan.com

*Counsel For Plaintiffs Best Buy Co., Inc., Best*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Buy Purchasing LLC, Best Buy Enterprise
Services, Inc., Best Buy Stores, L.P., and
Bestbuy.com, L.L.C.


/s/  William J. Blechman

Richard Alan Arnold
William J. Blechman
Kevin J. Murray
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel:       305-373-1000
Fax:      305-372-1861
Email:  rarnold@knpa.com
             wblechman@knpa.com
             kmurray@knpa.com

Counsel for Plaintiff Sears, Roebuck and Co.
and Kmart Corp.

/s/  Kenneth S. Marks

H. Lee Godfrey
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email:  lgodfrey@sumangodfrey.com
             kmarks@susmangodfrey.com
             jross@susmangodfrey.com
             jcarter@susmangodfrey.com
             dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone:  (206) 516-3880
Facsimile:  (206) 516-3883


Email:  pfolse@susmangodfrey.com
             rblack@susmangodfrey.com
             jconnors@susmangodfrey.com

Counsel for Plaintiff Alfred H. Siegel, as

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Trustee of the Circuit City Stores, Inc.
Liquidating Trust

/s/  Jason C. Murray

Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA  90071
Telephone:  213-443-5582
Facsimile:   213-622-2690
Email:  jmurray@crowell.com

Jerome A. Murphy (pro hac vice)
Astor H.L. Heaven (pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  202-624-2500
Facsimile:   202-628-5116
E-mail:  jmurphy@crowell.com
                aheaven@crowell.com

Counsel for Target Corp. and ViewSonic
Corp.

/s/  Craig A. Benson

Kenneth A. Gallo (pro hac vice)
Joseph J. Simons (pro hac vice)
Craig A. Benson (pro hac vice)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com
Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
TAYLOR & COMPANY LAW OFFICES,
LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

Attorneys for Plaintiffs Sharp Electronics
Corporation and Sharp Electronics
Manufacturing Company of America, Inc.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

60945452.2

- 69 -