# EXHIBIT "G"

Honorable Vaughn R Walker (Ret)
Law Office of Vaughn R Walker
Four Embarcadero Center, Ste 2200
San Francisco, CA  94111
T: (415) 871-2888
F: (415) 871-2890

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION,<br><br>BEST BUY,<br>                Plaintiff,<br>v<br>PANASONIC,<br>                Defendant. | Case No: 07-cv-5944-SC<br>MDL No 1917<br><br>**ORDER RE BEST BUY'S MOTION FOR PROTECTIVE ORDER** |

On June 23, 2014, the undersigned conducted a telephone conference with counsel for Best Buy (David Martinez of Robbins Kaplan Miller & Ciresi, LLP) and counsel for Panasonic who was also speaking for the other defendants in the above litigation (Eva Cole of Winston & Strawn, LLP). The conference addressed Best Buy's motion for a protective order directed to: (1) Panasonic's FRCP 30(b)(6) deposition notice to Best Buy dated November 20, 2012; and (2) Interrogatory Nos 16 and 17 of Panasonic's Third Set of Interrogatories. As a result of the conference and pursuant to FRCP 53 and the order of reference herein, the undersigned directed, that the motion for protective order be denied as to (1) and granted as to (2).

The parties' dispute arises from defendants' effort to seek discovery related to Best Buy's practice of "competitive intelligence" about its competitors' pricing practices. Best Buy attacks the relevance of Panasonic's discovery on this topic and, in any event, argues that this discovery is precluded by the Kiefer-Stewart Co v Joseph E Seagram & Sons, Inc, 340 US 211 (1951) line of cases dealing with discovery of an antitrust plaintiff's practices, including evidence of contact with competitors. The undersigned rejects Best Buy's argument that this discovery is not relevant to the issues herein. Discovery directed to the setting of prices for finished products charged by Best Buy and other retailers could well lead to the discovery of relevant evidence concerning the extent to which, if at all, alleged overcharges were passed on by Best Buy and/or by entities above Best Buy in the distribution channels for products containing CRTs as well as both the fact of damages and their amounts, if any.

More persuasively, Best Buy argues that the burden and expense of having fully to answer the challenged interrogatories likely exceeds the value of the information that would be produced. Interrogatory No 16, for example, asks Best Buy to identify all "executives, employees and agents" who participated in so-called "competitive monitoring activity," "market share/data analyses," "knowledge, use or tracking" of competitors' prices and promotions and suppliers' prices. Obviously, thorough and complete responses to these questions would likely identify a great many persons scattered throughout the Best Buy organization as well as Best Buy's "agents," which presumably could embrace third parties that Best Buy uses to compile information of this kind. Compiling thorough and complete responses to Interrogatory Nos 16 and 17 would entail a significant

amount of attorney time and that of Best Buy personnel, as well. Finally, Interrogatory No 16 contains a subpart (g) which seeks to have Best Buy identify its "executives', employees' and agents' participation in any meetings with" competitors. This line of inquiry seems foreclosed by the <u>Keifer-Stewart</u> line of cases.

The value of the level of detail called for by Interrogatory Nos 16 and 17 seems particularly questionable when Panasonic should be able to obtain a substantially complete picture of Best Buy's "competitive intelligence" practices from the Rule 30(b)(6) deponent whose deposition Panasonic has noticed. To be sure, this assumes that the deponent will be truly knowledgeable, having made a diligent effort to obtain a comprehensive picture of Best Buy's "competitive intelligence" program. Good faith on the part of counsel and the parties herein is presumed and, it is hoped, will be realized.

Hence, the undersigned ORDERS that Best Buy's motion for protective order be GRANTED as to Interrogatory Nos 16 and 17 of Panasonic's Third Set of Interrogatories and otherwise DENIED.

IT IS SO ORDERED.

Dated: June 23, 2014

By: _____
Vaughn R Walker
United States District Judge (Ret)

# EXHIBIT "H"

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Order Relates To:<br><br>Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al., No. 11-cv-05513-SC;<br><br>Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264-SC | MDL No. 1917<br><br>Case No. C-07-5944-SC<br><br>ORDER DENYING BEST BUY'S OBJECTIONS TO THE SPECIAL MASTER'S ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROTECTIVE ORDER |

## I. INTRODUCTION

Now before the Court is Direct Action Plaintiffs ("DAPs") the Best Buy entities'[1] ("Best Buy") objection to the Special Master's[2] Order ("Order") granting in part and denying in part Best Buy's motion for protective order. ECF No. 2689 ("Objection") (filed

---

[1] The Best Buy entities are Best Buy Co, Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., BestBuy.Com, LLC, and Magnolia Hi-Fi, LLC. ECF No. 2689 ("Objection") at 1 n.1.

[2] On December 17, 2013 the Court appointed the Honorable Vaughn R. Walker, United States District Judge (Retired), as a Special Master to assist the Court with discovery matters. ECF No. 2272.

1  under seal).[3]  Defendants oppose Best Buy's objection, and argue
2  the Court should deny the objection and affirm the Special Master's
3  order.  ECF No. 2685 ("Response").  Although Best Buy requests the
4  Court order a hearing and set a briefing schedule as permitted by
5  Local Rule 72-2, the Court finds neither is necessary.  See Civ.
6  L.R. 72-2 ("Unless otherwise ordered by the assigned District
7  Judge, no response need be filed and no hearing will be held
8  concerning the motion.  The District Judge may deny the motion by
9  written order at any time . . . .").  As a result, Best Buy's
10 objection is ripe for disposition without oral argument.  Civ. L.R.
11 7-1(b).  As set forth below, the Court AFFIRMS the Special Master
12 and DENIES the objection.

**II.  BACKGROUND**

The parties are familiar with the factual and procedural
background of the case, so an exhaustive review is unnecessary.
The facts relevant to the motion are set forth below.  Defendants
are allegedly manufacturers of cathode ray tubes ("CRTs") and, in
some cases, of finished products as well.  Best Buy, along with the
other DAPs, alleges that Defendants conspired to fix prices for
CRTs.  The DAPs do not allege that Defendants conspired to fix the

---

[3] Best Buy previously filed an objection to the Special Master's order that exceeded the five page limit under Civil Local Rule 72-2.  ECF No. 2677.  After Defendants pointed out the issue, Best Buy filed an amended version.  ECF No. 2689.  The Court's order appointing the discovery master sets forth the procedure for objections to the Special Master's orders and incorporates the procedures (including page limits) contained in Civil Local Rule 72-2.  ECF No. 2272, at 4-5.  Accordingly, Best Buy's earlier objection is STRICKEN except for the accompanying Declaration of David Martinez and exhibits containing the record necessary for the Court's review of the Special Master's order.  ECF No. 2677-1 (filed under seal).

2

prices of products containing CRTs. Each DAP alleges that it bought at least one CRT product from a defendant or an entity owned or operated by a defendant.

On May 16, 2014, Best Buy filed a motion for a protective order barring discovery into Best Buy's competitive intelligence practices before the Special Master. ECF No. 2677-1 ("Martinez Decl.") Ex. 1 ("Mot.") at 1 (filed under seal). The competitive intelligence practices are a part of Best Buy's broader price match guarantee program, by which Best Buy agrees to match any lower prices offered by their competitors. Mot. at 2. These practices amount to: (1) contacting competitors to confirm customers' pricing, (2) monitoring competitor advertisements and other records publicly displaying pricing information, and (3) subscribing to industry analyst reports and attending analyst calls. Id.

Defendants seek two forms of discovery into Best Buy's competitive intelligence practices. First, they seek to depose Best Buy's Rule 30(b)(6) designee regarding Best Buy's:

> [P]ractices, policies and procedures concerning Your market monitoring activities for CRT Finished Products including, but not limited to the following: (a) Your competitive intelligence activities; (b) Your use of third-party data sources and market share/data analyses; and (c) Your knowledge, use and tracking of Your competitor's [sic] pricing for CRT Finished Products during the Relevant Time Period . . . .

Objection at 2-3. Second, Defendants propounded two interrogatories also seeking information regarding the competitive intelligence practices, including (1) the participation of Best Buy's executives in the competitive intelligence practices or other market monitoring activities, and (2) Best Buy's "executives',

3

employees', or agents' participation in any meetings with [Best Buy's] competitors." Id. at 3.

In the briefing before the Special Master, Best Buy argued that the information sought in these requests was irrelevant under Supreme Court precedent and subsequent case law, and, even if relevant, the burden of ordering discovery outweighed any potential benefit. Mot. at 4-9. Defendants disagreed, arguing that the information sought was both relevant and discoverable. Martinez Decl. Ex. 2 ("Opp'n") at 2 (filed under seal). After a telephone conference on June 23, 2014 at which both Best Buy and Defendants' counsel were heard, the Special Master issued an order denying Best Buy's motion as to the Rule 30(b)(6) deposition and granting a protective order as to the interrogatories. On July 7, 2014, Best Buy filed an objection with the Court seeking review of the Special Master's order. ECF No. 2677.

### III. **LEGAL STANDARDS**

#### A. **Review of Orders by the Special Master**

The Court reviews the Special Master's factual findings for clear error, his legal conclusions de novo, and his procedural decisions for abuse of discretion. Fed. R. Civ. P. 53(f)(3)-(5); ECF No. 302 (appointing the initial special master).

#### B. **Motion for Protective Order**

Federal Rule of Civil Procedure 26(c) permits the Court, upon a showing of good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The Court must undertake a two-step inquiry in deciding whether the information sought is discoverable. First,

4

1 the Court must determine if the material sought is "relevant to any
2 party's claim or defense." Id. at (b)(1). Such evidence need not
3 be clearly admissible at trial so long as the request is
4 "reasonably calculated to lead to the discovery of admissible
5 evidence." Id. Second, the Court must weigh the burden of the
6 discovery sought against its likely benefit. Id. at
7 (b)(2)(C)(iii).

**IV. DISCUSSION**

While Best Buy's objection dices the issues differently, their objection challenges the Special Master's answers to two key questions. First, is evidence of how Best Buy's competitive intelligence practices function relevant, particularly given the Supreme Court's decision in Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211 (1951) and subsequent case law? Second, if such evidence is relevant, does the burden of discovery outweigh its likely benefit? The Court reviews the Special Master's decisions on both questions de novo.

**A. Relevance of the Competitive Intelligence Program**

First, Best Buy argues, citing the Supreme Court's decision in Kiefer-Stewart and subsequent cases, that the evidence sought is irrelevant because "[i]t is black letter law that evidence of an antitrust plaintiff's own conduct is irrelevant and cannot excuse the defendants' conspiratorial conduct." Mot. at 5 (citing Perma Life Mufflers v. Int'l Parts Corp., 392 U.S. 134, 139-40 (1968); Kiefer-Stewart, 340 U.S. at 214, overruled on other grounds, Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 781-82 (1984); Memorex Corp. v. IBM Corp., 555 F.2d 1379, 1381-82 (9th

5

Cir. 1977); Wilk v. Am. Med. Ass'n, 719 F.2d 207, 232 (7th Cir. 1983)). Anticipating some of Defendants' arguments in opposition, Best Buy cites cases from other district courts rejecting several arguments as to the relevance of a plaintiff's communications with third parties or sales practices. See, e.g., In re Polyester Staple Antitrust Litig., No. 3:03CV1516, 2005 WL 6457181, at *4 (W.D.N.C. May 9, 2005) (rejecting relevance argument based on the need to "rebut any inference that communication amongst competitors necessarily means the parties are engaging in an illegal conspiracy"); In re Auto. Refinishing Paint Antitrust Litig., No. MDL 1426, 2006 WL 1479819, at *8 (E.D. Pa. May 26, 2006) (casting aside the contention that discovery might show, inter alia, the highly competitive nature of the relevant industry, and the prices that "Defendants may have charged in a 'but for' world"); In re Aspartame Antitrust Litig., No. 2:06-CV-1732-LDD, 2008 WL 2275528, at *4 (E.D. Pa. Apr. 8, 2008) (denying a motion to compel as to plaintiffs' communications with third parties despite the argument such communications were relevant to show "buying power, market position and demand elasticity"). Finally, Best Buy argues that the policy concerns underlying the antitrust laws would be undermined by permitting discovery into downstream activities. Mot. at 7 (citing Meijer, Inc. v. Abbott Labs., 251 F.R.D. 431, 433-34 (N.D. Cal. 2008)).

In opposition, Defendants offer three reasons why the discovery they seek is relevant. First, Defendants argue that discovery into the competitive intelligence program is relevant because it shows how Best Buy and their competitors priced their products. Opp'n at 2. This is likely to lead to the discovery of

6

admissible evidence here, Defendants contend, because the indirect purchaser plaintiffs ("IPPs") claim that Best Buy and other retailers passed on 100 percent of the conspiratorial CRT overcharges and because Best Buy is likely to be an important third-party witness in the IPPs' case. Id. Second, Defendants claim that discovery into the competitive intelligence program is relevant to Best Buy's ability to show injury-in-fact. Id. at 10-11. Finally, Defendants contend that the discovery sought is relevant as it will enable them to rebut charges by Best Buy (or other plaintiffs) that competitor contacts and price monitoring is indicative of a conspiracy. Id. at 11-13. In support of these arguments Defendants rely principally on two cases. First, they cite to Judge Illston's orders, also involving Best Buy's competitive intelligence practices, in the In re TFT-LCD Flat Panel Antitrust Litigation, No. 07-MD-1827 (N.D. Cal.). In the TFT cases, Best Buy submitted to discovery on their competitive intelligence practices, the Court denied a motion in limine to exclude evidence obtained regarding those practices, and the evidence was admitted in both the direct purchaser trial and individual opt-out trials. Opp'n at 11-12, n.38 (citing 07-MD-1827 (N.D. Cal.) ECF Nos. 5776, 8298). Second, Defendants argue that In re Urethane Antitrust Litigation, No. 04-MD-1616-JWL, 2010 WL 5287675 (D. Kan. Dec. 17, 2010) is "precisely on point." Opp'n at 12. In Urethane, the Magistrate Judge granted a motion to compel responses to discovery requests seeking information related to plaintiffs' communications with competitors, finding that the information sought was potentially relevant to "refute plaintiffs' claims that similar conduct by defendants is indicative of

7

collusion." Id. at *5; see also In re Urethane Antitrust Litig., No. 04-1616-JWL, 2011 WL 1327988, at *5-6 (D. Kan. Apr. 5, 2011) (affirming the Magistrate's decision).

In his order, the Special Master rejected Best Buy's argument that the discovery sought was irrelevant. Specifically, the Special Master found that:

> Discovery directed to the settling of prices for finished products charged by Best Buy and other retailers could well lead to discovery of relevant evidence concerning the extent to which, if at all, alleged overcharges were passed on by Best Buy and/or by entities above Best Buy in the distribution channels for products containing CRTs as well as both the fact of damages and their amounts, if any.

Order at 1. In doing so, the Special Master disagreed with Best Buy's reliance on Kiefer-Stewart and other cases discussing discovery into an antitrust plaintiff's practices and competitor contacts. Id. Nonetheless, the Special Master did remark that subpart (g) of Interrogatory No. 16, which requests Best Buy identify its "executives', employees' and agents' participation in any meetings with" competitors, "seems foreclosed by the Keifer-Stewart line of cases." Id. at 2.

The Court agrees with the Special Master in every relevant respect.[4] Here, the discovery sought is relevant for three

---

[4] The Court does question the Special Master's conclusion that the type of inquiry in Interrogatory No. 16(g) would be barred by the Kiefer-Stewart line of cases. The Court would agree with this view were it to find, as it seems the Special Master did, that discovery into Best Buy's competitive intelligence practices is relevant only as to the issues of pass-through and damages. However the Court goes a step further than the Special Master and finds that the discovery sought by Defendants is also relevant to rebut any charges that competitive contacts and price monitoring are circumstantial evidence of an illegal conspiracy. See Urethane, 2011 WL 1327988, at *6. Nonetheless, as discussed infra, the Court concurs with the Special Master's weighing of the burdens and benefits of Defendant's interrogatories. Therefore, the Special

8

1 reasons.

2 First, the Court concurs with the Special Master's conclusion that Kiefer-Stewart and its progeny do not bar all discovery into an antitrust plaintiff's activities. Specifically, Kiefer-Stewart concluded that antitrust violations by a plaintiff cannot immunize defendants from liability for their own violations. 340 U.S. at 214. While the subsequent cases cited by Best Buy apply various aspects of that principle to the discovery context, Best Buy has not offered any support for the blanket contention that an antitrust plaintiff's activities are always irrelevant and outside the scope of discovery. To the contrary, as one of Best Buy's cases concluded, information about plaintiffs' activities is relevant in cases, such as this one, where the amount of any pass-through to indirect purchasers is likely to be an issue. See, e.g., Polyester Staple, 2005 WL 6457181, at *4-5 (concluding that discovery into downstream activities by plaintiffs was potentially relevant to the amount of any pass-through). Simply because Defendants cannot claim that Best Buy's activities immunize them from liability does not mean the information sought cannot be relevant for other purposes.

Second, and relatedly, Best Buy's argument that "the policy precluding discovery into an antitrust plaintiff's conduct bars Defendants' discovery irrespective of any relevance" also fails. Objection at 4. It may be true that the policy underlying the antitrust laws militates against permitting broad discovery against antitrust plaintiffs where, for instance, the discovery sought

---

Master's decision granting in part and denying in part the motion need not be disturbed.

9

would simply enable the defendant to shift attention away from an otherwise illegal and actionable scheme or assert an improper pass-on defense. However such a policy is not implicated in this case. Unlike the situation at issue in the cases cited by Best Buy, here discovery about the downstream pricing activities of Best Buy is not being sought to allege a price fixing conspiracy by Best Buy. Accordingly, permitting discovery here does not run the risk of chilling private enforcement of the antitrust laws, as in the cases offered by Best Buy. See, e.g., Perma Life Mufflers, 392 U.S. at 139-40; Meijer, 251 F.R.D. at 433-34. Instead, Defendants are seeking the instant discovery because it is directly relevant to the question of how, and in what amount, any potential overcharges were passed through to other plaintiffs.

Best Buy dedicates much of its reply brief and objection to two remaining points. First, Best Buy contends that discovery into the results of the competitive intelligence practices, which they concede might be relevant, would simply be duplicative given the extent of previous discovery on pass-through. Second, Best Buy argues that the court should distinguish between this allegedly completed discovery on pass-through and discovery into "how Best Buy obtained competitor information," which they argue is wholly irrelevant. The Court is unmoved. First, Best Buy's complaints about having already submitted to discovery into its pricing practices and their relevance to the pass-through issue go to the Court's weighing of the benefits and burdens of discovery -- not to the relevance issue. Second, even if the distinction between the pass-through itself and "how" the competitive intelligence program works were a meaningful one, that distinction would only undermine

10

Defendants' arguments as to pass-through and damages. Evidence of how the competitive intelligence program operates might still be admissible (or at least lead to the discovery of admissible evidence) at trial to rebut allegations that competitor contacts and price monitoring are indicative of the existence of a conspiracy as they were in TFT. See also Urethane, 2011 WL 1327988, at *6.

As a result the Court concurs with the Special Master's findings as to the relevance of the discovery sought here. The discovery sought by Defendants is relevant to the issues of pass-through, injury, and to rebut any argument that competitor communications and price monitoring are indicative of an improper conspiracy.

**B.   Weighing the Burdens and Benefits of Discovery**

Next, the Court must weigh the burden of discovery against its likely benefits. Fed. R. Civ. P. 26(b)(2)(C)(iii). In doing so, the Court considers "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving those issues." Id.

In Best Buy's briefing before the Special Master, it argued that because it has already submitted to prior discovery on the issue of pass-through and competitive contacts, the burden of discovery is greater than its likely benefit. Specifically, Best Buy points to a 2012 document production and prior 30(b)(6) deposition involving information relevant to Best Buy's pricing and "the competitive landscape," as rendering the current requests duplicative and burdensome. Mot. at 2-3. Further, they complain

11

that the 30(b)(6) deposition at issue involves 26 topics, including "dozens of sub-topics." Id. at 9. Defendants counter, noting the enormous financial stakes in this case, and contending that Best Buy mischaracterized the extent of discovery already taken in this case. Opp'n at 2-3, 14. Specifically, they note that "[t]here is nothing extraordinary or burdensome about requiring a corporate plaintiff to submit to a deposition, even if it involves multiple days or deponents, particularly where, as here, a discovery protocol explicitly allows just such a scenario." Id. at 14. Furthermore, Best Buy complains that in the time since the Special Master's order, Defendants have noticed four more depositions which they apparently intend to take between now and September 5, 2014. Objection at 3.

The Special Master concluded that while the burden of responding to Defendants' interrogatories outweighed the benefits, the same was not true with regard to the 30(b)(6) deposition. The Court agrees. First, and most importantly, as the Court has already concluded, the discovery sought here is relevant and important not just to parties' claims or defenses, but to one of the most central remaining issues in the litigation -- the question of pass-through. Given the centrality of this issue to the case, the Court is loath to deny discovery on the issue to any party. Second, as mentioned above, the amount in controversy in this case is enormous, and, as in any complex multidistrict litigation, the parties have all submitted to and propounded extensive discovery. Third, the parties are all sophisticated, well-advised by able (and expensive) lawyers, and certainly not lacking in resources.

Finally, additional factors convince the Court that the

12

Special Master appropriately weighed the burden of discovery. First, the objected deposition topic on the competitive intelligence program is only one of 26 topics to be covered at the 30(b)(6) deposition -- the remainder of which Best Buy does not object to. Furthermore, as Defendants state (and Best Buy does not dispute), the parties understood that Defendants would take further 30(b)(6) deposition testimony once Best Buy completed document discovery. Particularly when compared to the level of detail required by Interrogatories Nos. 16 and 17, examination on this issue in a 30(b)(6) deposition would entail significantly less expenditure of time, money, and effort. Further militating in favor of the deposition and against the interrogatories, the Court shares the Special Master's concern that requiring answers to the interrogatories may require Best Buy to go through a lengthy and expensive process of reviewing its competitive intelligence program's records to identify what may well be a large number of individuals who participated in the program. It seems unlikely that this inquiry, if completed would lead to the discovery of significant evidence above that gained in the 30(b)(6) deposition.

**IV. CONCLUSION**

As a result, the Court AFFIRMS the Special Master's order granting in part and denying in part Best Buy's motion for a protective order and DENIES Best Buy's objection.

IT IS SO ORDERED.

Dated: July 28, 2014

UNITED STATES DISTRICT JUDGE

13

# EXHIBIT I
# [Highly Confidential – Filed Under Seal]