SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GARY L. HALLING, Cal. Bar No. 66087
JAMES L. McGINNIS, Cal. Bar No. 95788
MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:     415-434-9100
Facsimile:     415-434-3947
E-mail:        ghalling@sheppardmullin.com
               jmcginnis@sheppardmullin.com
               mscarborough@sheppardmullin.com

Attorneys for Defendants
SAMSUNG SDI AMERICA, INC.,
SAMSUNG SDI CO., LTD.,
SAMSUNG SDI (MALAYSIA) SDN. BHD.,
SAMSUNG SDI MEXICO S.A. DE C.V.,
SAMSUNG SDI BRASIL LTDA.,
SHENZEN SAMSUNG SDI CO., LTD. and
TIANJIN SAMSUNG SDI CO., LTD.

*Additional counsel on signature pages*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | CASE NO.: 3:07-CV-05944-SC<br><br>MDL NO.: 1917 |
| _____ | |
| This Document Relates to:<br><br>*All Indirect Purchaser Actions*<br><br>*Sharp Electronics Corp., et a. v. Hitachi Ltd., et al.,* No. 13-cv-1173;<br><br>*Sharp Elecs. Corp. v. Koninklijke Philips Elecs. N.V.,* No. 13-cv-02776;<br><br>*Siegel v. Hitachi, Ltd.,* No. 11-cv-05502;<br><br>*Siegel v. Technicolor SA, et al.,* No. 13-cv-05261; | **DEFENDANTS' JOINT MOTION *IN LIMINE* TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS AND ALLEGED CO-CONSPIRATORS**<br><br>**[DEFENDANTS' MIL NO. 6]**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:     TBD<br>Time:     TBD<br>Place:    Courtroom 1, 17th Floor<br>Hon. Samuel Conti |

1

2
*Best Buy Co., et al. v. Hitachi, Ltd., et al.,*
No. 11-cv-05513;

3

4
*Best Buy Co., et al. v. Technicolor SA, et al.,* No. 13-cv-05264;

5

6
*Target Corp. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 11-cv-05514;

7
*Target Corp. v. Technicolor SA, et al.,* No. 13-cv-05686;

8

9
*Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd.,* No. 11-cv-05514;

10

11
*Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA,* No. 13-cv-05262;

12
*Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd.* No. 14-cv-02510.

13

14

15
**REDACTED VERSION OF DOCUMENT SUBMITTED UNDER SEAL**

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

STATEMENT OF THE ISSUES....................................................................................................1

INTRODUCTION ..........................................................................................................................2

ARGUMENT ..................................................................................................................................2

I.     The Court Should Prohibit Plaintiffs' Use of Inflammatory Rhetoric At Trial........................2

II.    The Court Should Exclude Evidence And Argument Relating To Stereotyping Of
       Asian Firms and Asian Business Culture....................................................................................4

      A.     Courts Routinely Exclude Negative Stereotyping About Ethnic Or National
              Practices ..............................................................................................................................5

      B.     Whatever Little Probative Value Negative Stereotyping May Have Is
              Substantially Outweighed By The Danger Of Unfair Prejudice...................................5

      C.     Negative Stereotypes About Asian Businesses Are Irrelevant .....................................6

III.   The Court Should Compel Plaintiffs To Refer To Defendants And Their Alleged Co-
       Conspirators By Their Specific, Individual Corporate Entity Names .......................................7

      A.     Allowing Plaintiffs To Use Generic Names Would Undermine The Doctrine
              Of Corporate Separateness And Distort The Burden Of Proof....................................8

      B.     Allowing Plaintiffs to Use Generic Names Will Confuse and Mislead the Jury...........9

CONCLUSION.............................................................................................................................10

DEFENDANTS'  MIL NO. 6

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*In re ATM Fee Antitrust Litigation*
  686 F.3d 741 (9th Cir. 2012) ...................................................................................................4

*Bird v. Glacier Elec. Coop., Inc.*
  255 F.3d 1136 (9th Cir. 2001) ...............................................................................................3

*Bowoto v. Chevron Texaco Corp.*
  312 F. Supp. 2d 1229 (N.D. Cal. 2004) .................................................................................7

*Costco Wholesale Corp. v. AU Optronics*
  2014 WL 4674390 (W.D. Wash. Sept. 18, 2014) ..................................................................4

*E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*
  Civ. No. 03-5412 AWI LJO, 2008 WL 2220396 (E.D. Cal. May 27, 2008) ...........................7

*In re Heparin Prod. Liab. Litig.*
  2011 WL 1059660 (N.D. Ohio Mar. 21, 2011) .....................................................................5

*Indus. v. St. Regis Paper Co.*
  420 F.2d 449 (9th Cir. 1969) ................................................................................................7

*Jinro Am., Inc. v. Secure Invs., Inc.*
  266 F.3d 993 (9th Cir. 2001), amended by 272 F.3d 1289 (9th Cir. 2001).....................4, 5, 6

*Lisa McConnell, Inc. v. Idearc, Inc.*
  No. 09-CV-00061-IEG(AJB), 2010 WL 364172 (S.D. Cal. Jan. 22, 2010)............................8

*Pearson v. Component Tech. Corp.*
  247 F.3d 471 (3d Cir. 2001)..................................................................................................8

*Shinde v. Nithyananda Found.*
  No. EDCV 13-0363 JGB SPX, 2013 WL 1953707 (C.D. Cal. May 10, 2013)......................8

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
  580 F. Supp. 2d 896 (N.D. Cal. 2008) ..................................................................................7

*Sunstar, Inc. v. Alberto-Culver Co., Inc.*
  2004 WL 1899927 (N.D. Ill. Aug. 23, 2004) ......................................................................5, 6

*U.S. v. Basham*
  561 F.3d 302 (4th Cir. 2009) .................................................................................................3

*United States v. Coward*
  630 F.2d 229 (4th Cir. 1980) .................................................................................................9

DEFENDANTS' MIL NO. 6

## Other Authorities

Fed. R. Evid. 402 ...................................................................................................................2, 3

Fed. R. Evid. 403 ...........................................................................................2, 3, 5, 6, 7, 9

Fed. R. Evid. 404 ...................................................................................................................2, 3

DEFENDANTS' MIL NO. 6

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on a date and time to be set by the United States District Court for the Northern District of California, San Francisco Division, before the Honorable Samuel Conti, the undersigned Defendants will and hereby do move the Court for an order excluding the following improper characterizations of or references to Defendants and their alleged co-conspirators: (1) use of inflammatory rhetoric to refer to Defendants and/or their alleged co-conspirators; (2) stereotyping of Asian firms and Asian business culture; and (3) referring to Defendants and/or their alleged co-conspirators by generic references to corporate entities that do not legally exist, which improperly groups together multiple, separate entities.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the declaration of James L. McGinnis submitted concurrently herewith, the pleadings and correspondence on file with the Court, and such arguments and authorities as may be presented at or before the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF THE ISSUES

1.      Whether the Court should prohibit Plaintiffs' and their witnesses' use of inflammatory rhetoric at trial, including, but not limited to referring to Defendants and/or their alleged co-conspirators as "convicted criminals," "felons," "admitted price-fixers," or "cartelists."

2.      Whether the Court should prohibit Plaintiffs and their witnesses from appealing to negative stereotypes of Asian companies and Asian business culture.

3.      Whether the Court should compel Plaintiffs and their witnesses to refer to Defendants and/or their alleged co-conspirators by their specific corporate entity names (e.g., "Hitachi America" and "Hitachi Asia") in lieu of generic references to corporate entities which do not legally exist and improperly groups together what are in fact multiple, separate entities (e.g., "Hitachi").

# INTRODUCTION

The Court should preclude Plaintiffs and their witnesses from making the following improper characterizations of or references to Defendants and their alleged co-conspirators:

*First*, Plaintiffs should be prohibited from using inflammatory rhetoric to refer to Defendants and/or their alleged co-conspirators, including, but not limited to referring to them as "convicted criminals," "felons," "admitted price-fixers," or "cartelists." Such inflammatory rhetoric serves no legitimate purpose; is inaccurate; is barred as unfairly prejudicial and misleading under Rule 403; and is improper character evidence under Rule 404.

*Second,* Plaintiffs should be prohibited from appealing to negative stereotypes of Asian companies and Asian business culture because such generalizations are irrelevant, and whatever slight probative value they may have is substantially outweighed by the danger of unfair prejudice.

*Third*, Plaintiffs should be compelled to refer to Defendants and alleged co-conspirators by their specific corporate entity names (e.g., "Hitachi America" and "Hitachi Asia"), rather than by generic references to corporate entities which are legally nonexistent and improperly groups together what are in fact multiple, separate entities (e.g., "Hitachi"). Failure to do so would effectively eliminate Plaintiffs' burden to prove liability as to *each* Defendant and would only confuse and mislead the jury.

# ARGUMENT

## I.     The Court Should Prohibit Plaintiffs' Use of Inflammatory Rhetoric At Trial

The Court should prohibit Plaintiffs' and their witnesses' use of inflammatory rhetoric at trial, including, but not limited to references to any of the Defendants and/or their alleged co-conspirators as "convicted criminals," "felons," "admitted price-fixers," or "cartelists" which serves no legitimate purpose but is intended solely to inflame the jury and unfairly prejudice Defendants. Fed. R. Evid. 402, 403, and 404.

*First*, inflammatory rhetoric has no place in any trial. And, its use would be particularly inappropriate and confusing here given that only one defendant has entered into a plea agreement, and only with respect to CDTs (one type of CRT).[1]

---

[1] To the extent Plaintiffs refer to convictions involving products other than CRTs, such convictions

*Second,* particularly because inflammatory rhetoric has no probative value, real dangers of unfair prejudice, confusion, and misleading the jury tip the balance sharply in favor of its exclusion. Fed. R. Evid. 403. Inflammatory rhetoric is the classic example of "suggest[ing] decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.*, 1972 Advisory Committee Note. Inappropriate epithets such as "convicted criminal" or "convicted felon" are by their nature inflammatory, and their only purpose is to smear Defendants and prejudge their civil liability on grounds other than the merits of the case. *See, e.g., U.S. v. Basham*, 561 F.3d 302, 327 (4th Cir. 2009) (unfair prejudice occurs when evidence lures "the factfinder into declaring guilt on a ground different from proof specific to the offense charged"); *Bird v. Glacier Elec. Coop., Inc.,* 255 F.3d 1136, 1150 (9th Cir. 2001) (although racial discrimination was relevant to the case, "racially inflammatory comments" were improper, and "went well beyond the limits of legitimate advocacy").

*Third*, any suggestion that Defendants and/or their alleged co-conspirators are "convicted criminals" is improper evidence of purported wrong acts which is inadmissible to prove that on this particular occasion, Defendants and/or their alleged co-conspirators acted in accordance with that character. Fed. R. Evid. 404.

Indeed, Judge Illston in the *LCD* trial in this district granted the very same *in limine* motion to exclude inflammatory rhetoric. Ex. 1 (*In re TFT-LCD (Flat Panel) Antitrust Litigation,* MDL Dkt. No. 5010 (N.D. Cal. Mar. 3, 3012) (Defendant LG Display's Motion *In Limine* No. 3 to Exclude Evidence and Arguments Specified Herein)), at 2; and Ex. 2 (MDL Dkt. No. 5597 (N.D. Cal. May 4, 2012) (Final Pretrial Scheduling Order), at 7 (granting LG's motion to exclude inflammatory rhetoric)).[2]

---

are irrelevant and inadmissible here. (*See* Defendants' Joint Motion *In Limine* Excluding Evidence or Argument Regarding Non-CRT Product Conspiracies, Defendants' MIL No. 4.)

[2] All exhibits referenced herein refer to the Declaration of James L. McGinnis In Support of Defendants' MIL No. 6, submitted concurrently herewith ("McGinnis Decl.").

DEFENDANTS' MIL NO. 6

## II. The Court Should Exclude Evidence And Argument Relating To Stereotyping Of Asian Firms and Asian Business Culture

The Court should exclude evidence or argument appealing to negative stereotyping of Asian companies and Asian business culture under Federal Rules of Evidence 402 and 403: such generalizations are irrelevant, and whatever slight probative value it may have is substantially outweighed by the danger of unfair prejudice.

Plaintiffs intend to inject into this trial negative, unfounded generalizations about Asian companies and Asian business culture so as to underscore for the jury the notion that they are fundamentally inferior and inherently dishonest as compared to U.S. firms.  Plaintiffs' expert, Stephan Haggard, has made such generalizations at great length, and Plaintiffs plan to elicit the same testimony at trial,[3] including, for example:



---

[3] Plaintiffs' claim that Dr. Haggard may testify before the jury to help establish Plaintiffs' standing for indirect purchases from Samsung Electronics Co., Ltd. contradicts binding precedent in the Ninth Circuit.  The Ninth Circuit has expressly held in *In re ATM Fee Antitrust Litigation,* 686 F.3d 741 (9th Cir. 2012), that "[b]ecause the court (and not a jury) decides standing, the district court must decide issues of fact necessary to make the standing determination."  *Id.* at 747.  *See also Costco Wholesale Corp. v. AU Optronics,* 2014 WL 4674390, at *4 n.3 (W.D. Wash. Sept. 18, 2014) (relying on *In re ATM* to conclude that issues relating to ownership or control are not jury issues, but instead will be determined by the court).  While the danger of unfair prejudice and confusion of the issues are greatly heightened if generalizations about Asian business culture are presented before the jury, such generalizations likewise have no place in the court's determination of whether Plaintiffs can satisfy the ownership-or-control exception to *Illinois Brick.*

[4] According to Dr. Haggard, *chaebols* are a subcategory of "Asian business groups" unique to South Korea.  Ex. 3 (Apr. 15, 2014 Expert Report of Stephan Haggard ("Haggard Rpt.")) at ¶¶ 7, 28.

[5] *Id.* at ¶ 16.

[6] *Id.* at ¶ 16.

[7] *Id.* at ¶ 34.

- ██████████████████████████████████████████████████

These, and any other negative generalizations about Asian firms or Asian business culture are inappropriate and must be excluded.

**A.** **Courts Routinely Exclude Negative Stereotyping About Ethnic Or National Practices**

Courts routinely exclude purported "expert" testimony and other evidence based on stereotypes or generalizations about ethnic or national business practices. *See, e.g., Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1001-10 (9th Cir. 2001), amended by 272 F.3d 1289 (9th Cir. 2001) (generalizations regarding Korean businesses inadmissible); *In re Heparin Prod. Liab. Litig.*, 2011 WL 1059660, **9-11 (N.D. Ohio Mar. 21, 2011) (generalizations regarding Chinese businesses inadmissible); *Sunstar, Inc. v. Alberto-Culver Co., Inc.*, 2004 WL 1899927, **26-28 (N.D. Ill. Aug. 23, 2004) (generalizations regarding Japanese businesses inadmissible).

**B.** **Whatever Little Probative Value Negative Stereotyping May Have Is Substantially Outweighed By The Danger Of Unfair Prejudice**

In *Jinro*, defendants relied on an "expert" to testify about the business practices or "modus operandi" of Korean companies (this case also involved a Korean *chaebol*), particularly "their alleged propensity to engage in fraudulent activity, including the avoidance of Korean currency laws" as defendants alleged in the case. 266 F.3d at 1001. In finding that the lower court erred in admitting such "expert" testimony, the Ninth Circuit held that such testimony "tinged with ethnic bias and stereotyping" should have been excluded under Rule 403's balancing test:

> Allowing an expert witness in a civil action to generalize that most Korean businesses are corrupt, are not to be trusted and will engage in complicated business transactions to evade Korean currency law is tantamount to ethnic or cultural stereotyping, inviting the jury to assume the Korean litigant fits the stereotype.

---

[8] *Id.* at ¶ 36-7.

DEFENDANTS' MIL NO. 6

*Id.* at 1007; *see also id.* at 1007-08 (discussing and collecting other cases prohibiting inappropriate injection of race or ethnicity into trial).  The Ninth Circuit concluded: "the risk of racial or ethnic stereotyping is substantial, appealing to bias, guilt by association and even xenophobia."  Because the "expert's" testimony invited the jury to distrust Jinro because it was a Korean company, it invoked ethnic, national stereotyping which is barred under Rule 403.  *Id.* at 1008; *id.* at 1010 (improper to invite the jury to put the plaintiff's cultural background into the balance.").  *See also In re Heparin,* 2011 WL 1059660 at **9-10 (whatever slight probative value an expert's generalizations regarding Chinese manufacturing practices, including the risk of sourcing materials in China and the prevalence of counterfeiting and other manufacturing "games and tactics," might have is substantially outweighed by the "serious risk of prejudicing the jury"); *Sunstar,* 2004 WL 1899927 at *27 ("Testimony that 'either directly or indirectly seeks to link a defendant's conduct to that which is said to be typical of a particular racial, ethnic group or nationality' is excludable under Rule 403's balancing test.").

Consistent with *Jinro* and other cases, Plaintiffs must be precluded from presenting negative, unfounded generalizations about Asian business groups, including, but not limited to the stereotype that ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████[9]  This kind of stereotyping not only has zero probative value to any issue in this case, but injects the Defendants' nationality and ethnicity into the proceedings in an indisputably negative way.

### C.    Negative Stereotypes About Asian Businesses Are Irrelevant

In addition to failing Rule 403's balancing test, negative generalizations about how Asian firms may behave generally simply are not relevant to any of the specific issues in this case: "It is a factual question whether a majority of Korean businessmen act in a certain way, but whether that fact is proven or not, it has no relevancy to show that this particular Korean businessman (or company) is that type of a businessman or acted that way in this specific contractual arrangement." *Jinro,* 266 F.3d at 1011 (Wallace, J., concurring).  *See also Sunstar*, 2004 WL 1899927 at *27

---

[9] Ex. 3 (Apr. 15, 2014 Expert Report of Stephan Haggard), at ¶¶ 16, 34, 36-37.

(generalizations regarding the Japanese attitude towards contracts, including preference by Japanese businesses to deliberately include vague contract provisions allowing for flexible implementation of contracts do not make it more probable that the parties in this case acted in that way with respect to this particular contract).

### III. The Court Should Compel Plaintiffs To Refer To Defendants And Their Alleged Co-Conspirators By Their Specific, Individual Corporate Entity Names

The Court should compel Plaintiffs and their witnesses to refer to Defendants and their alleged co-conspirators by their specific, legal corporate entity names, e.g., "Hitachi America," "Philips Electronics North America," "MTPD" and "Panasonic Corporation," and preclude generic references to purported corporate entities that do not legally exist, which improperly groups together multiple, separate entities, e.g., "Hitachi," "Philips," or "Panasonic."[10]

*First*, such generic references disregard each Defendant's separate corporate existence, and as a result, effectively eliminate Plaintiffs' burden to prove liability as to *each* Defendant.  There are well-established principles that determine when the distinct corporate form will be ignored, and the standards are high.  Plaintiffs should not be allowed to avoid having to meet those high standards through what amounts to smoke and mirrors.

*Second*, allowing Plaintiffs to use generic names will only confuse and mislead the jury.  *See* Fed. R. Evid. 403.  This is already an extremely complex case that will present challenges for any jury.  That complexity will only be compounded if for weeks—possibly, months—the jury hears Plaintiffs continually using only "Philips" or "Hitachi" and is then instructed to make individualized findings as to each Defendant on a verdict sheet that nowhere identifies just "Philips" or "Hitachi."  Plaintiffs' apparent goal is not difficult to discern: they hope the jury will impute the bad acts of one corporate actor to other corporate actors within the same group,

---

[10] Defendants are not suggesting that Plaintiffs must spell out in detail the exact corporate name of each Defendant or their alleged co-conspirators every time Plaintiffs wish to refer to that Defendant or alleged co-conspirator.  Defendants only ask the Court to ensure that the jury understands which specific Defendant or alleged co-conspirator entity Plaintiffs are referring to at all times.  For the sake of efficiency, Defendants propose reaching an agreement with Plaintiffs regarding how to appropriately refer to the various Defendants and their alleged co-conspirators efficiently without risking prejudice or confusion.

DEFENDANTS' MIL NO. 6

1   regardless of the law and actual facts.  The risk of that extreme prejudice plainly outweighs

2   whatever "convenience" argument Plaintiffs may offer.

3       **A.**    **Allowing Plaintiffs To Use Generic Names Would Undermine The Doctrine Of**

4           **Corporate Separateness And Distort The Burden Of Proof**

5       Because Defendants are separately incorporated, their independence must be presumed.  *E.*

6   *& J. Gallo Winery v. EnCana Energy Servs., Inc.*, Civ. No. 03-5412 AWI LJO, 2008 WL 2220396,

7   at *5 (E.D. Cal. May 27, 2008).[11]  And that presumption of independence means that "Plaintiffs

8   will need to provide evidence of *each Defendant's* participation in the conspiracy."  *In re Static*

9   *Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008)

10  (emphasis added).  In other words, each Defendant has a right to demand that Plaintiffs support

11  their claim against that Defendant with individualized proof.  The use of generic names, however,

12  would effectively eliminate Plaintiffs' burden as to each Defendant and instead allow them to

13  implicitly argue "guilt by name association," which would be particularly troubling where there

14  may be no evidence whatsoever of a particular entity's knowledge or participation.

15      The risk that the jury will apply a "guilt by name association" standard is particularly high

16  in this case because Defendants and their alleged co-conspirators, even within a corporate group,

17  are not similarly situated.  Plaintiffs individually sued numerous entities from the same corporate

18  group.  But these entities within a given corporate family are not interchangeable pieces,

19  performing the exact same role.  These entities are separately incorporated, are managed and

20  operated in different regions and countries throughout the world, and are serving different roles

21  within the corporate group.  For example, some manufactured and produced just CRTs, some

22  manufactured and produced both CRTs and finished products containing CRTs ("CRT Finished

23  Products") while others manufactured and produced solely CRT Finished Products, and some only

24  _____

[11] *See also Indus. v. St. Regis Paper Co.*, 420 F.2d 449, 453 (9th Cir. 1969) ("The separate identities
25  of a parent and its subsidiary, even a wholly owned subsidiary, will not be disregarded unless a
     recognition of their separateness, under the circumstances, would sanction a fraud or promote
26  injustice."); *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1234 (N.D. Cal. 2004) ("The
     law allows corporations to organize for the purpose of isolating liability of related corporate
27  entities.").

28

1  sold CRTs and/or CRT Finished Products but did not manufacture them.  To make matters more

2  complicated, some entities fall into certain categories for only part of the relevant time period, for

3  example, where newly-created joint venture companies were formed.  Defining which Defendants

4  and which alleged co-conspirators were doing what, and when, will be a hotly contested issue at

5  trial, especially given that many Defendants will argue that they and/or their alleged co-

6  conspirators withdrew from the alleged conspiracy or never participated at all.  Plaintiffs should not

7  be permitted to obscure all of these potentially-dispositive issues in an attempt to eliminate its

8  burden as to each Defendant.

9          Of course, this issue has nothing to do with whether Plaintiffs can attempt to hold

10  Defendants within a corporate family vicariously liable for the conduct of each other.  They can

11  still do so unimpeded.  If Plaintiffs intend to argue that one Defendant or alleged co-conspirator is

12  the alter ego or agent of another, there are clearly established standards that they must satisfy and

13  those standards exist for a reason—it is not meant to be easy for Plaintiffs to disregard the

14  corporate form.[12]  What matters here is that if Plaintiffs intend to argue that one corporate entity is

15  vicariously liable for the actions of a separate corporate entity, then they must be transparent about

16  it and not seek to obscure the very issue that they are attempting to prove.  The only way to ensure

17  that Plaintiffs do not end run the alter ego and agency tests is to require them to identify for the jury

18  which specific Defendant or alleged co-conspirator entity they are talking about.  That can only

19  happen if Plaintiffs are prevented from using generic names to refer to several Defendants and/or

20  alleged co-conspirators at one time.

21     **B.     Allowing Plaintiffs to Use Generic Names Will Confuse and Mislead the Jury**

22          Federal Rule of Evidence 403 prohibits the introduction of evidence that will confuse or

---

[12] *Shinde v. Nithyananda Found.*, No. EDCV 13-0363 JGB SPX, 2013 WL 1953707, at *14 (C.D. Cal. May 10, 2013) ("it is the plaintiff's burden to overcome the presumption of the separate existence of the corporate entity"); *Lisa McConnell, Inc. v. Idearc, Inc.*, No. 09-CV-00061-IEG(AJB), 2010 WL 364172, at *8 (S.D. Cal. Jan. 22, 2010) ("The alter ego test is demanding."); *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001) ("Such a burden is notoriously difficult for plaintiffs to meet . . . in order to succeed on an alter ego theory of liability, plaintiffs must essentially demonstrate that in all aspects of the business, the two corporations actually functioned as a single entity and should be treated as such.").

9

mislead the jury as well as unduly prejudicial evidence.  While this Motion is not specifically targeted at the introduction of evidence, it goes directly to how Plaintiffs and their witnesses discuss and characterize the evidence that is introduced.  Defendants seek to prevent Plaintiffs from discussing the facts of this case in a way that is intended to, and will, confuse and mislead the jury as to the significance of that evidence.  If that confusion is not avoided, it will unduly prejudice Defendants.  *See United States v. Coward*, 630 F.2d 229, 231 (4th Cir. 1980) (reversing and remanding for separate trials because the trial "was often confusing for both attorneys and the jury" and the jury expressed confusion as to what evidence related to each defendant).

This trial will culminate in the jury being asked to make specific findings as to each Defendant.  More specifically, the jury will have to assess whether Plaintiffs have met their burden of proof as to each Defendant.  Given the complexity of this case, the Court should not countenance attempts to further complicate the jury's job by forcing them to unscramble imprecise references to the very Defendants that the jury will be asked to render verdict upon.

For the foregoing reasons, the Court should require Plaintiffs to make clear to the jury which Defendant and/or alleged co-conspirators they are referring to and prohibit Plaintiffs from using generic names that do not refer to an actual Defendant and/or alleged-conspirator, or even an actual legal entity.

## **CONCLUSION**

For these reasons, the Court should grant this motion and exclude improper characterizations of or references to Defendants and/or their alleged co-conspirators relating to inflammatory rhetoric, and stereotyping of Asian firms and Asian business culture.  The Court should also compel Plaintiffs to refer to Defendants and their alleged co-conspirators by their specific corporate entity names.


Dated:  February 13, 2015                    Respectfully submitted,

By:   __/s/  James L. McGinnis__

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Gary L. Halling, Esq.
James L. McGinnis, Esq.

Michael W. Scarborough, Esq.
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:  415-434-9100
Facsimile:  415-434-3947
ghalling@sheppardmullin.com
jmcginnis@sheppardmullin.com
mscarborough@sheppardmullin.com

Counsel for Defendants Samsung SDI Co., Ltd.,
Samsung SDI America, Inc., Samsung SDI
(Malaysia) SDN. BHD., Samsung SDI Mexico S.A.
de C.V., Samsung SDI Brasil Ltda., Shenzen
Samsung SDI Co., Ltd., and Tianjin Samsung SDI
Co., Ltd.

KIRKLAND & ELLIS LLP

By:  ____/s/ Eliot A. Adelson_____

Eliot A. Adelson
James Maxwell Cooper
**KIRKLAND & ELLIS LLP**
555 California Street, 27th Floor
San Francisco, CA  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
Email: eadelson@kirkland.com
Email: max.cooper@kirkland.com

James H. Mutchnik, P.C. (*pro hac vice*)
Barack Echols (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Tel: (312) 862-2000
Facsimile: (312) 862-2200
Email: jmutchnik@kirkland.com
Email: bechols@kirkland.com

*Attorneys for Defendants Hitachi, Ltd., Hitachi
Displays, Ltd. (n/k/a Japan Display Inc.), Hitachi
America, Ltd., Hitachi Asia, Ltd., and Hitachi
Electronic Devices (USA), Inc.*

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MUNGER, TOLLES & OLSON LLP


By: */s/ Miriam Kim*
JEROME C. ROTH (State Bar No. 159483)
jerome.roth@mto.com
MIRIAM KIM (State Bar No. 238230)
miriam.kim@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

BRAD D. BRIAN (SBN 079001)
brad.brian@mto.com
WILLIAM D. TEMKO (SBN 098858)
William.Temko@mto.com
GREGORY J. WEINGART (SBN 157997)
gregory.weingart@mto.com
E. MARTIN ESTRADA (SBN 223802)
martin.estrada@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

ROBERT E. FREITAS (SBN 80948)
rfreitas@fawlaw.com
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone: (650) 593-6300
Facsimile: (650) 593-6301

*Attorneys for Defendant LG Electronics, Inc.*


**WHITE & CASE**LLP

By: */s/ Lucius B. Lau*

CHRISTOPHER M. CURRAN (*pro hac vice*)
ccurran@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
alau@whitecase.com
DANA E. FOSTER (*pro hac vice*)
defoster@whitecase.com
**WHITE & CASE LLP**
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

12

*Attorneys for Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., Toshiba America*
*Consumer Products, L.L.C., and Toshiba America*
*Electronic Components, Inc.*

BAKER BOTTS LLP

By: */s/ John M. Taladay*

JOHN M. TALADAY (*pro hac vice*)
john.taladay@bakerbotts.com
JOSEPH OSTOYICH (*pro hac vice*)
joseph.ostoyich@bakerbotts.com
ERIK T. KOONS (*pro hac vice*)
erik.koons@bakerbotts.com
CHARLES M. MALAISE (*pro hac vice*)
charles.malaise@bakerbotts.com
**BAKER BOTTS LLP**
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

JON V. SWENSON (SBN 233054)
jon.swenson@bakerbotts.com
**BAKER BOTTS LLP**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
E-mail: jon.swenson@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips N.V.,*
*Philips Electronics North America Corporation,*
*Philips Taiwan Ltd., and Philips do Brasil, Ltda.*

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Rachel S. Brass*

JOEL S. SANDERS (SBN 107234)
jsanders@gibsondunn.com
RACHEL S. BRASS (SBN 219301)
rbrass@gibsondunn.com
AUSTIN V. SCHWING (SBN 211696)
aschwing@gig@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, California 94105
Tel: (415) 393-8200
Fax: (415) 393-8306

13

**FARMER BROWNSTEIN JAEGER LLP**
WILLIAM S. FARMER, SBN 46694
WFarmer@FBJ-law.com
DAVID BROWNSTEIN, SBN 141929
DBrownstein@FBJ-law.com
JACOB ALPREN, SBN 235713
JAlpren@FBJ-law.com
235 Montgomery Street, Suite 835
San Francisco California 94104
Telephone 415.962.2876
Facsimile: 415.520.5678

*Attorneys for Defendant Chunghwa Picture Tubes,*
*Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn.*
*Bhd.*


JENNER & BLOCK LLP

By: /s/ *Terrence J. Truax*

JENNER & BLOCK LLP
Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
ttruax@jenner.com
mbrody@jenner.com

Brent Caslin (Cal. Bar. No. 198682)
JENNER & BLOCK LLP
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
bcaslin@jenner.com

*Attorneys for Defendants Mitsubishi Electric*
*Corporation, Mitsubishi Electric US, Inc. and,*
*Mitsubishi Electric Visual Solutions America, Inc.*


FAEGRE BAKER DANIELS LLP

By:   */s/ Kathy L. Osborn*

Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204

14

Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Email: jeff.roberts@FaegreBD.com
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: (303) 607-3500
Facsimile: (303) 607-3600

Stephen M. Judge (*pro hac vice*)
Email: steve.judge@FaegreBd.com
Faegre Baker Daniels LLP
202 S. Michigan Street, Suite 1400
South Bend, IN 46601
Telephone: (574) 234-4149
Facsimile: (574) 239-1900

*Attorneys for Defendants Thomson SA and*
*Thomson Consumer Electronics, Inc.*

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Nathan Lane, III*

Nathan Lane, III (CA Bar No. 50961)
Mark C. Dosker (CA Bar No. 114789)
**SQUIRE PATTON BOGGS (US) LLP**
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone:  (415) 954-0200
Facsimile:  (415) 393-9887
E-mail:  nathan.lane@squiresanders.com
E-mail:  mark.dosker@squiresanders.com

Donald A. Wall (Pro Hac Vice)
**SQUIRE PATTON BOGGS (US) LLP**
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: + 1 602 528 4005
Facsimile: +1 602 253 8129
Email: donald.wall@squirepb.com

*Attorneys for Defendant Technologies Displays*
*Americas LLC with respect to all cases except Office*
*Depot, Inc. v. Technicolor SA, et al. and Sears,*
*Roebuck and Co., et al. v. Technicolor SA, et al.*

CURTIS, MALLET-PREVOST, COLT & MOSLE

15

LLP

By: /s/ __*Jeffrey I. Zuckerman*_____

Jeffrey I. Zuckerman (Pro Hac Vice)
Ellen Tobin (Pro Hac Vice)
101 Park Avenue
New York, New York 10178
Telephone: 212.696.6000
Facsimile: 212.697.1559
Email: jzuckerman@curtis.com
etobin@curtis.com

Arthur Gaus (SBN 289560)
DILLINGHAM & MURPHY, LLP
601 California Street, Suite 1900
San Francisco, California 94108
Telephone: 415.397.2700
Facsimile: 415.397-3300
Email: asg@dillinghammurphy.com

*Attorneys for Defendant Technologies Displays
Americas LLC with respect to Office Depot, Inc. v.
Technicolor SA, et al. and Sears, Roebuck and Co.,
et al. v. Technicolor SA, et al.*

JENNER & BLOCK LLP

By: /s/ *Gabriel A. Fuentes*_____

**JENNER & BLOCK LLP**
Charles B. Sklarsky (*pro hac vice*)
Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
Gabriel A. Fuentes (*pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
csklarsky@jenner.com
ttruax@jenner.com
mbrody@jenner.com
gfuentes@jenner.com

Brent Caslin (Cal. Bar. No. 198682)
**JENNER & BLOCK LLP**
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
bcaslin@jenner.com

*Attorneys for Defendants Mitsubishi Electric
Corporation, Mitsubishi Electric US, Inc. and,
Mitsubishi Electric Visual Solutions America, Inc.*

16

WINSTON & STRAWN LLP

By: /s/ *Jeffrey L. Kessler*

JEFFREY L. KESSLER (*pro hac vice*)
Email: JKessler@winston.com
ALDO A. BADINI (SBN 257086)
Email: ABadini@winston.com
EVA W. COLE (*pro hac vice*)
Email: EWCole@winston.com
MOLLY M. DONOVAN (*pro hac vice*)
Email: MMDonovan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

STEVEN A. REISS (*pro hac vice*)
Email: steven.reiss@weil.com
DAVID L. YOHAI (*pro hac vice*)
Email: david.yohai@weil.com
ADAM C. HEMLOCK (*pro hac vice*)
Email: adam.hemlock@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Defendants Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of North America, and MT Picture Display Co., Ltd.*

Pursuant to Local Rule 5-1(i), the filer attests that the concurrence in the filing of this document has been obtained from each of the above signatories.

17