SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
GARY L. HALLING, Cal. Bar No. 66087
JAMES L. MCGINNIS, Cal. Bar No. 95788
MICHAEL W. SCARBOROUGH, Cal. Bar No. 203524
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:     415-434-9100
Facsimile:     415-434-3947
E-mail:        ghalling@sheppardmullin.com
               jmcginnis@sheppardmullin.com
               mscarborough@sheppardmullin.com

Attorneys for Defendants
SAMSUNG SDI CO., LTD.,
SAMSUNG SDI AMERICA, INC.,
SAMSUNG SDI (MALAYSIA) SDN. BHD.,
SAMSUNG SDI MEXICO S.A. DE C.V.,
SAMSUNG SDI BRASIL LTDA.,
SHENZHEN SAMSUNG SDI CO., LTD. and
TIANJIN SAMSUNG SDI CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| This Document Relates to: | **DECLARATION OF JAMES L. MCGINNIS IN SUPPORT OF DEFENDANTS' JOINT MOTION *IN LIMINE* TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS AND ALLEGED CO-CONSPIRATORS** |
| *All Indirect Purchaser Actions* | |
| *Sharp Electronics Corp., et a. v. Hitachi Ltd., et al.*, No. 13-cv-1173; | **[DEFENDANTS' MIL NO. 6]** |
| *Sharp Elecs. Corp. v. Koninklijke Philips Elecs. N.V.*, No. 13-cv-02776; | |
| *Siegel v. Hitachi, Ltd.*, No. 11-cv-05502; | |
| *Siegel v. Technicolor SA, et al.*, No. 13-cv-05261; | |

*Best Buy Co., et al. v. Hitachi, Ltd., et al.,* No. 11-cv-05513;

*Best Buy Co., et al. v. Technicolor SA, et al.,* No. 13-cv-05264;

*Target Corp. v. Chunghwa Picture Tubes, Ltd., et al.,* No. 11-cv-05514;

*Target Corp. v. Technicolor SA, et al.,* No. 13-cv-05686;

*Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd.,* No. 11-cv-05514;

*Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA,* No. 13-cv-05262;

*Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd.* No. 14-cv-02510.

## REDACTED VERSION OF DOCUMENT SUBMITTED UNDER SEAL

I, James L. McGinnis, declare as follows:

1.     I am a partner at the law firm of Sheppard Mullin Richter & Hampton LLP, counsel of record for defendants Defendants Samsung SDI America, Inc.; Samsung SDI Co., Ltd.; Samsung SDI (Malaysia) SDN. Bhd.; Samsung SDI Mexico S.A. De C.V.; Samsung SDI Brasil Ltda.; Shenzen Samsung SDI Co., Ltd.; and Tianjin Samsung SDI Co., Ltd. (collectively, "SDI"). I submit this declaration in support of Defendants' Joint Motion *In Limine* To Exclude Improper Characterizations Of Or References To Defendants And Alleged Co-Conspirators ("Defendants' MIL No. 6"). I have personal knowledge of the facts herein set forth and, if called as a witness, I could and would competently testify thereto.

2.     Attached hereto as Exhibit 1 is a true and correct copy of Defendant LG Display's Motion *In Limine* No. 3 to Exclude Evidence and Arguments Specified Herein, filed on March 3, 2012 in *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D. Cal), MDL Dkt. No. 5010.

3.     Attached hereto as Exhibit 2 is a true and correct copy of the May 2, 2012 Final Pretrial Scheduling Order in *In re TFT-LCD (Flat Panel) Antitrust Litigation* (N.D. Cal), MDL Dkt. No. 5597.

4.     Attached hereto as Exhibit 3 are true and correct copy of excerpts of the April 15, 2014 expert report of Dr. Stephan Haggard, the direct-action plaintiffs' expert witness.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of February 2015 in San Francisco, California.


*/s/ James L. McGinnis*
James L. McGinnis

EXHIBIT 1

Brad D. Brian (State Bar No. 079001)
Stuart N. Senator (State Bar No. 148009)
Jonathan E. Altman (State Bar No. 170607)
Truc T. Do (State Bar No. 191845)
Hailyn J. Chen (State Bar No. 237436)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702
*Brad.Brian@mto.com*

Jerome C. Roth (State Bar No. 159483)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

Holly A. House (State Bar No. 136045)
Paul Hastings LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
Telephone:    (415) 856-7000
Facsimile:    (415) 856-7100
*hollyhouse@paulhastings.com*

Lee F. Berger (State Bar No. 222756)
Paul Hastings LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone:    (202) 551-1700
Facsimile:    (202) 551-1705
*leeberger@paulhastings.com*

*Attorneys for Defendants*

LG DISPLAY AMERICA, INC. AND
LG DISPLAY CO., LTD

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Indirect Purchaser Actions* | CASE NO. 3:07-MD-1827 SI<br><br>MDL No. 1827<br><br>**DEFENDANT LG DISPLAY'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE AND ARGUMENTS AS SPECIFIED HEREIN**<br><br>Date:        March 27, 2012<br>Time:        3:30 p.m.<br>Courtroom:   10<br>Judge:       Honorable Susan Illston |

# TABLE OF CONTENTS

**Page**

I.   ISSUE 1—INFLAMMATORY RHETORIC ................................................................. 2

II.  ISSUE 2—PRODUCTS AND TERRITORIES NOT AT ISSUE .................................... 2

    A.   Evidence or Argument Regarding the Alleged Conspirators' Conduct with
    Respect to Small Panels And Territories Outside The United States Is Not
    Relevant .................................................................................................................... 3

    B.   Evidence or Argument Regarding Conduct Vis-à-Vis Small Panels and
    Territories Outside the United States Should Be Excluded on the
    Additional Basis That It Would Cause Unfair Prejudice, Mislead the Jury,
    and Waste Time ........................................................................................................ 4

III. ISSUE 3—EMPLOYMENT ISSUES ........................................................................ 5

    A.   Factual background .................................................................................................. 5

    B.   Evidence or Argument Regarding the Employment Issues Should Be
    Excluded As Irrelevant to Any Jury Issue in This Case ........................................ 7

    C.   Evidence or Argument Regarding the Employment Issues Would Be
    Unduly Prejudicial That and Would Risk Confusing the Issues, Misleading the
    Jury, and Wasting Time ........................................................................................... 7

IV.  ISSUE 4—INVESTIGATIONS AND INDICTMENTS ................................................. 8

    A.   Factual background .................................................................................................. 8

    B.   Argument .................................................................................................................. 9

V.   ISSUE 5—ANY "GROSS GAINS" OR OTHER FINDING IN AUO CRIMINAL
TRIAL ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Baxter Health Care Corp. v. Spectramed Inc.,*
    No. SA CV 89-131 AHS (RWRx), 1992 WL 340763 (C.D. Cal. Aug. 27, 2007) ................ 10

*Coursen v. A.H. Robins Co., Inc.,*
    764 F.2d 1329 (9th Cir. 2005)........................................................................................4

*Davenport v. Bd. of Trs. of State Ctr. Cmty. Coll. Dist.,*
    654 F. Supp. 2d 1073 (E.D. Cal. 2009)..........................................................................3

*Duran v. City of Maywood,*
    221 F.3d. 1127 (9th Cir. 2000).......................................................................................4

*In re Knerr,*
    361 B.R. 858 (N.D. Ohio 2007) .....................................................................................9

*In re Ready-Mixed Concrete Antitrust Litig.,*
    261 F.R.D. 154 (S.D. Ind. 2009) ...................................................................................2

*In re Slatkin,*
    310 B.R. 740 (C.D. Ca. 2004) .....................................................................................12

*Ruffalo's Trucking Serv. v. Nat'l Ben-Franklin Ins. Co. of Pittsburgh,*
    243 F.2d 949 (2d Cir. 1957).........................................................................................10

*Scholes v. African Enter., Inc.,*
    854 F. Supp. 1315 (N.D. Ill. 1994), *aff'd*, 56 F.3d 750 (7th Cir. 1995)...........................9, 10

*United States v. Dowie,*
    411 Fed. Appx. 21 (9th Cir. 2010) ..............................................................................7, 8

*United States v. Ferguson,*
    No. 3:06CR137, 2007 WL 4240782 (D. Conn. Nov. 30, 2007) .........................................7

*United States v. Gravely,*
    840 F.2d 1156 (4th Cir. 1988)........................................................................................2

*United States v. Ham,*
    998 F.2d 1247 (4th Cir. 1993)....................................................................................4, 7

*United States v. Mongkhonwitayakun,*
    15 F.3d 1093, 1994 WL 19050 (9th Cir. Jan. 25, 1994) .................................................7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**FEDERAL RULES**

Fed. R. Evid.
  401
  402 ................................................................................................................. 3, 7
  403 ................................................................................................................ passim
  404 .................................................................................................................... 4
  404(b) ................................................................................................................ 4
  802 .................................................................................................................... 9
  803(22) ............................................................................................................. 12

DEF. LG DISPLAY'S MIL NO. 3 TO
EXCLUDE EVIDENCE AND ARGUMENTS
CASE NO.: 3:07-MD-1827 SI

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 27, 2012, at 3:30 p.m., or as soon as may be heard thereafter, in the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 10, 19th Floor, San Francisco, California, before the Honorable Susan Illston, defendants LG Display, Co., Ltd. and LG Display America, Inc. (collectively "LG Display") will and hereby do move the Court *in limine* to exclude evidence and argument as follows:

- Issue 1—Inflammatory Rhetoric.
- Issue 2—Products and territories not at issue.
- Issue 3—Employment issues relating to employees who have pled guilty.
- Issue 4—Investigations and indictments.
- Issue 5—Any "gross gains" or other findings in the AUO criminal trial.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities; the concurrently-filed Declaration of Stuart N. Senator; any reply memorandum that is filed, any argument of counsel; and such other materials as the Court may consider. The basis for the motion is that, as set forth in the accompanying Memorandum of Points and Authorities, each of these is an area in which the Indirect Purchaser Class Plaintiffs are trying to go beyond the bounds of appropriate evidence and argument to be presented to the jury.

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

This motion in limine addresses five areas in which the Court should preclude evidence and/or argument that it would be unfair and unduly prejudicial to present to the jury.

## I.   <u>ISSUE 1—INFLAMMATORY RHETORIC</u>

The Court should prohibit plaintiffs' counsel from using the sort of inflamatory rhetoric that they have used in pretrial proceedings, such as counsel's repeated assertions that LG Display and others are "confessed felons, price fixers . . . [who] can [not] avoid paying." Senator Decl., Ex. A at 23:20-24:2 (12/09/11 Hearing Tr). In the same vein, Plaintiffs have argued that LG Display should be required to pay restitution and monetary relief to the classes because defendants are "confessed felons" or, as Plaintiffs phrased the argument on another occasion, "self-confessed, convicted felon[s]." *Id.*; Plaintiffs' Opp'n to LG Display's Mot. for Partial Summ. J. at 1:11-12 (Aug. 5, 2011) (Dkt. No. 3236).

This sort of inflammatory argument was inappropriate when Plaintiffs made it to this Court and it would be even more inappropriate if made to a jury. Such argument to the jury would risk all of the dangers that Rule 403 addresses—that is, "unfair prejudice, confusing the issues, [and] misleading the jury." Fed. R. Evid. 403. It would be a classic example of "suggest[ing] decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.*, 1972 Advisory Committee Note. This is true both because the "convicted felon" epithet is by its nature inflammatory and because causation of consumer harm is not an element of a Sherman Act Section 1 criminal violation. *See In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 169 (S.D. Ind. 2009); *United States v. Gravely*, 840 F.2d 1156, 1161 (4th Cir. 1988).

## II.   <u>ISSUE 2—PRODUCTS AND TERRITORIES NOT AT ISSUE</u>

The indirect purchaser class plaintiffs ("Plaintiffs") have placed at issue only three categories of finished products that incorporate TFT-LCD panels; namely, televisions, computer monitors, and laptop/notebook computers sold in the United States. *See* Third Amend. Compl. ¶¶ 12, 250 (Dkt. No. 2694). Nonetheless, LG Display anticipates that Plaintiffs will seek to offer evidence or argument to the jury regarding purported wrongdoing with respect to the small and

medium-size panels ("Small Panels") used in other types of TFT-LCD products, such as mobile phones, DVD players, and other electronic products ("Small Panel Products"), and possibly purported wrongdoing relating to sales with respect to territories outside of the Untied States. The Court should preclude this for two reasons. First, evidence of the alleged conspirators' putative wrongdoing with respect to Small Panel Products and territories outside of the United States is not relevant to any issue in the indirect purchaser action. *See* Fed. R. Evid. 401, 402. Second, even were there some marginal relevance, it would be substantially overweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Evid. 403.

**A. Evidence or Argument Regarding the Alleged Conspirators' Conduct with Respect to Small Panels And Territories Outside The United States Is Not Relevant.**

Plaintiffs have placed at issue in this action three types of TFT-LCD products—televisions, computer monitors, and notebook computers sold in the United States. *See* Third Amend. Compl. ¶ 12 (defining term "LCD products," as used in Complaint, to mean "televisions, computer monitors, and laptop computers"); *id.* ¶ 250 (defining class to include "[a]ll persons and entities currently residing in the United States who indirectly purchased . . . TFT-LCD panels incorporated in the televisions, monitors and/or notebook computers . . . ."). Plaintiffs have always recognized that there are Small Panel Products and that defendants' panels are incorporated into these and other products sold outside of the United States; but Plaintiffs sought certification of classes only of purchasers of televisions, computer monitors and notebook computers in the United States. Plaintiffs likewise have framed their operative claims solely in terms of these three types of TFT-LCD products. *Compare id.* ¶ 106 *with* ¶¶ 12, 250. Because the alleged conspirators' conduct with respect to Small Panels and territories outside the United States is not at issue, evidence or argument that LG Display participated in a conspiracy with respect to Small Panels or territories outside the United States does not have any tendency to make a fact of consequence in the action more or less probable, and evidence of any such conduct therefore should not be admitted at trial. Fed. R. Evid. 401, 402; *see Davenport v. Bd. of Trs. of State Ctr. Cmty. Coll. Dist.*, 654 F. Supp. 2d 1073, 1085 (E.D. Cal. 2009) ("[E]vidence must be

probative of a fact of consequence in the matter. . . .").

**B.** **Evidence or Argument Regarding Conduct Vis-à-Vis Small Panels and Territories Outside the United States Should Be Excluded on the Additional Basis That It Would Cause Unfair Prejudice, Mislead the Jury, and Waste Time.**

Evidence regarding conduct with respect to Small Panels and territories outside the United States should be precluded on the additional basis that, even if it had some marginal, probative value, that would be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time . . . ." Fed. R. Evid. 403.[1]

"Unfair prejudice" refers to an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, 1972 Advisory Committee Note; *see United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993) ("We have defined undue prejudice as 'a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'"). Any suggestion of improper conduct with respect to Small Panels and territories outside the United States could be presented only to mislead and inflame the jury in the hopes that the jury would pump up any damage award based upon imagined harm to consumers (and to jurors themselves) with respect to such other products and territories, even though no finding would be made of an actionable wrong with respect to such other products and territories.

Moreover, there would be no legitimate reason for Plaintiffs to use Small Panel Products or products sold outside the United States as examples of products into which TFT-LCD panels can be incorporated, because the actual large panel TFT-LCD products placed at issue by their claims can serve this purpose. Any mention of Small Panel Products or products sold outside the United States would risk that the jury would improperly speculate about whether those products

---

[1] Such evidence does not have probative value for the purposes specified in Fed. R. Evid. 404(b); nonetheless, purported Rule 404(b) evidence is just as subject to Rule 403 as is other allegedly relevant evidence. *See* Fed. R. Evid. 404, 1972 Advisory Committee Note (noting that "[t]he determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence" even for evidence that is relevant under Rule 404(b); *Duran v. City of Maywood*, 221 F.3d 1127, 1132-33 (9th Cir. 2000) (affirming district court's exclusion of evidence of "other acts," because the evidence's probative value was outweighed by the danger of unfair prejudice and admission of the evidence would require the court to conduct a trial-within-a-trial); *Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1335 (9th Cir. 2005) (excluding evidence of purported "collateral misconduct" because "prejudice and confusion would be generated).

DEF. LG DISPLAY'S MIL NO. 3 TO
EXCLUDE VARIOUS EVIDENCE AND ARGUMENTS
CASE NO.: 3:07-MD-1827 SI

were also affected by the alleged conspiracy and, again, be influenced in its damages award by products for which no claim is being pursued in this litigation.

* * *

The Court should preclude the indirect purchaser class plaintiffs from offering evidence or argument, or making any suggestion, that the alleged conspirators participated in a conspiracy with respect to panels used in TFT-LCD products other than televisions, computer monitors, and laptop/notebook computers sold in the United States.

### III.    ISSUE 3—EMPLOYMENT ISSUES

During depositions of employees who entered guilty pleas, Plaintiffs' counsel repeatedly inquired into whether those employees were promoted after the alleged conspiracy period; whether the employer paid those employees' salaries while they were in prison after the alleged conspiracy period; whether those employees' compensation was increased after the alleged conspiracy period; and whether the employer paid any fines associated with the employees' guilty pleas after the conspiracy period (hereinafter, the "Employment Issues") at trial.  These post-conspiracy Employment Issues have no relevance to any jury issues in this litigation.  The jury will be asked to determine the extent to which there existed, and damages to class members flowing from, a conspiracy to fix prices in 2006 and prior.  There is no issue for the jury that concerns a company's decision with respect to Employee Issues after the alleged conspiracy period, and the presentation of any evidence or argument to the jury about the Employment Issues risks undue prejudice, confusing the issues, misleading the jury, and wasting time.  The Court should therefore exclude such evidence or argument.

### A.    Factual background

Beginning in November 12, 2008, the federal government brought charges against defendants and various other corporations; it subsequently brought charges against certain individuals employed by those corporations.  *See, e.g.*, United States' and LG Display's Joint Sentencing Memorandum at 2, *United States v. LG Display Co., Ltd.*, No. CR 08-0803 SI (N.D. Cal. Dec. 8, 2008) (Dkt. No. 10); United States' and Defendant Bock Kwon's Joint Sentencing Memorandum at 2, *United States v. Bock Kwon*, No. CR 09-0437 SI (N.D. Cal. June 18, 2009)

1    (Dkt. No. 9). Some of those corporations and individuals pled guilty. Although this motion is

2    not limited to Employment Issues with respect to LG Display employees, two LG Display

3    employees are in this category.

4         The first of these individuals is Chang Suk Chung. Mr. Chung was head of monitor sales

5    for LG Display during the alleged class period. He executed a plea agreement on December 29,

6    2008 and entered the guilty plea on February 17, 2009. Plea Agreement, *United States v. Chang*

7    *Suk Chung*, No. CR 09-0044 SI, (N.D. Cal. Feb. 10, 2009) (Dkt. No. 7-2); Senator Decl., Ex. B at

8    19:18-20:12 (02/23/10 Chung Tr.); Ex. C at 489:6-16, 496:10-498:6 (02/24/10 Chung Tr.). He

9    served a seven-month prison term and was released from prison in October 2009. *Id.*, Ex. C at

10   434:6-14, 489:17-22 (02/24/10 Chung Tr.). At deposition, Plaintiffs elicited testimony from Mr.

11   Chung to the effect that he continued to receive a salary while serving his prison sentence (*id.* at

12   491:2-5, 542:25-543:4), that he was not fired or disciplined by LG Display after he pled guilty

13   (*id.* at 490:5-24), that he retained his seniority at LG Display upon finishing his prison term, and

14   that he served as vice president of marketing for small-to-medium size applications following his

15   prison term (*id.*, Ex. B at 17:14-18:15; Ex. C at 489:6-16, 543:5-7).

16        The second of these individuals is Bock Kwon. Mr. Kwon was head of notebook sales at

17   LG Display, president of LG Display Taiwan during the alleged conspiracy period and then

18   executive vice president of LG Display's corporate and strategic marketing division. He pled

19   guilty in the spring of 2009. Plea Agreement, *United States v. Bock Kwon*, No. CR 09-0437 SI,

20   (N.D. Cal. June 26, 2009) (Dkt. No. 1074, No. M:07-cv-1827-SI); Senator Decl., Ex. D at 29:17-

21   20, 46:21-47:12 (11/09/10 Kwon Tr.); Ex. E at 19 (06/24/2009 Kwon Sentencing Tr.). At

22   deposition, Plaintiffs elicited testimony that, after serving a twelve-month prison term, Mr. Kwon

23   returned to his executive vice president position with LG Display, has subsequently held other

24   positions of responsibility within the company (*id.,* Ex. D at 28:6-29:10, 47:13-18 (11/09/10

25   Kwon Tr.)), and, when he went to prison, he understood that he would return to his position at LG

26   Display upon completion of his prison term (*id.* at 29:21-30:10).

27

28

DEF. LG DISPLAY'S MIL NO. 3 TO
EXCLUDE VARIOUS EVIDENCE AND ARGUMENTS
CASE NO.: 3:07-MD-1827 SI

**B.**   **Evidence or Argument Regarding the Employment Issues Should Be Excluded As Irrelevant to Any Jury Issue in This Case.**

The Court should preclude Plaintiffs from offering any evidence or argument regarding the Employment Issues because those issues have no relevance to any jury issue in this case. None of the Employment Issues concerns the time period in which the conspiracy is alleged to have existed, or tends to show the extent to which the alleged conspiracy existed or injured members of the plaintiff classes.  Accordingly, evidence regarding the Employment Issues is inadmissible under Rules 401 and 402.  *United States v. Dowie*, 411 Fed. Appx. 21, 27 (9th Cir. 2010) (noting that post-conspiracy evidence is admissible *if* it is probative of the existence of the conspiracy); *United States v. Mongkhonwitayakun*, 15 F.3d 1093, 1994 WL 19050, at *2 (9th Cir. Jan. 25, 1994) (affirming exclusion of post-conspiracy evidence that lacked probative value regarding the existence of a conspiracy); *accord United States v. Ferguson*, No. 3:06CR137, 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007) (finding evidence relating to defendants' salary and bonuses inadmissible because it was not probative of any financial incentive defendant may have had to participate in the alleged fraud or of any other issue in the case).

**C.**   **Evidence or Argument Regarding the Employment Issues Would Be Unduly Prejudicial and Would Risk Confusing the Issues, Misleading the Jury, and Wasting Time.**

To the extent that evidence regarding the Employment Issues had any marginal probative value, that probative value would be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time . . . ."  Fed. R. Evid. 403.

The only purpose Plaintiffs could have for offering such irrelevant evidence would be to suggest to the jury that LG Display or another alleged consiprator "rewarded" or at least failed to punish criminal behavior.  But such an argument would be a pure appeal to passion and emotion, because a company's decision to continue to employ the individuals in question does not bear on any actual jury issue.  *See* Fed. R. Evid. 403, 1972 Advisory Committee Notes (explaining that "[u]nfair prejudice" refers to an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"); *United States v. Ham*, 998 F.2d 1247,

1252 (4th Cir. 1993) (defining undue prejudice as "'a genuine risk that the emotions of the jury

will be excited to irrational behavior, and that this risk is disproportionate to the probative value

of the offered evidence'"); *Dowie*, 411 Fed. Appx. at 27 (excluding evidence of post-conspiracy

conduct where its probative value vis-à-vis the existence of a conspiracy was outweighed by its

potential to confuse the jury). Moreover, if Plaintiffs were to be permitted to present evidence or

make argument in this regard, this would create a sideshow in which LG Display would need to

be permitted to put on evidence regarding the reasons why it treated its employees as it did (and

potentially why other companies may have treated their employees as they did), which would

result in an undue lengthening of what already promises to be a very long and complex trial with

a mini-trial on differences in the cultures and corporate practices in the United States and Korea

and other relevant foreign countries.

*     *     *

For the foregoing reasons, the Court should preclude Plaintiffs from offering evidence or

argument, or from making mention, of the Employment Issues.

## IV.     ISSUE 4—INVESTIGATIONS AND INDICTMENTS

In litigating this case, Plaintiffs' counsel has repeatedly referred to criminal investigations

and indictments upon which no final judgment of conviction has been entered. Defendants move

*in limine* to preclude evidence of, or reference to, any indictments. Federal law establishes that

investigations and indictments are inadmissible at trial. The fact of an investigation and the fact

of an indictment have no probative value and are hearsay; and any probative value that might be

posited would as a matter of law be outweighed by the fact that the introduction of evidence about

the investigation or the indictment would be unduly prejudicial in the extreme.

### A.     Factual background

From 2008 to 2010, the United States investigated and indicted a number of corporations

and their current or former directors, officers, and employees. There also have been

investigations in other countries. Indictments that have not led to criminal convictions include the

following:

- Duk Mo Koo, former Executive Vice President and Chief Sales Officer for LG

- 8 -

1    Phillips LCD Co., Ltd. ("LG Phillips"). Superseding Indictment ¶ 14, *United States v.*

2    *AU Optronics Corp.*, No. CR 09-00110 SI (N.D. Cal. June 10, 2010) (Dkt. No. 8).

3    Koo is a resident and citizen of Korea. *Id.*

4    ● Hsuan Bin Chen, Hui Hsiung, Lai-Juh Chen, Shiu Lung Leung, Borlong Bai, and

5    Tsannrong Lee, all former executives of AUO. *Id.* ¶¶ 6-11. All of these individuals

6    are residents of Taiwan. *Id.*

7    ● Cheng Yuan "C.Y." Lin and Wen Jun "Tony" Cheng, executives of Chunghwa Picture

8    Tubes, Ltd. ("CPT"). *Id.* ¶¶ 12-13.

9    As of the date of the filing of this motion, none of the individuals listed above has been

10  convicted,[2] whether by a jury or based upon a guilty plea, pursuant to his indictment. *See* United

11  States Trial Memorandum, *United States v. AU Optronics Corp., et al.*, Case No. CR 09-0110 SI

12  N.D. Cal. Dec. 9, 2011) (Dkt. No. 555).

13      **B.**    **Argument**

14    As a matter of law, the fact of investigations and indictments are inadmissible for the

15  threshold reason that neither the fact of the investigation and indictment nor the language of the

16  indictment—nor any facts relating thereto—has any probative value. As one district court has

17  explained, an "[i]ndictment is inadmissible [in a civil case] because it contains mere allegations"

18  and is therefore "of no probative value." *Scholes v. African Enter., Inc.*, 854 F. Supp. 1315, 1324

19  (N.D. Ill. 1994), *aff'd*, 56 F.3d 750 (7th Cir. 1995); *see In re Knerr*, 361 B.R. 858, 862 (N.D.

20  Ohio 2007) (holding that "an indictment 'is not evidence of any kind . . . .'"). It follows directly

21  from the lack of probative value of an indictment that the fact of an investigation has no probative

22  value either.[3]

23    In addition to having no probative value, the fact and language of an indictment are

24  inadmissible on the additional basis that they are hearsay under Federal Rule of Evidence 802. *In*

25

---

26  [2] This motion applies to all indictments, although as a practical matter it is most significant with respect to
indictments that have not resulted in final judgments of conviction. (This motion does not address the admissibility
of final convictions or plea agreements.) At the time of the filing of this motion, although there has been a verdict in

27  the AUO criminal case, there has been no final judgment entered.
[3] Foreign investigations are irrelevant for the additional reason that they concern territories not at issue in the indirect

28  purchaser class case.

1    *re Knerr*, 361 B.R. at 862 (striking indictment from evidence on the ground that "it is

2    inadmissible hearsay and has not resulted in any plea or conviction."); *see Scholes*, 854 F. Supp.

3    at 1324 (indictment inadmissible in part because it "contains only hearsay"); *Ruffalo's Trucking*

4    *Serv. v. Nat'l Ben-Franklin Ins. Co. of Pittsburgh*, 243 F.2d 949, 953 (2d Cir. 1957) ("The

5    indictment, since it was only hearsay, was clearly inadmissible for any purpose."). Thus, even if

6    an investigation or indictment could be argued to be relevant, which it could not, it would still be

7    inadmissible.

8            Investigations and indictments are inadmissible for a third reason: Even if there were

9    some arguable probative value, that probative value would be "substantially outweighed by a

10   danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid.

11   403; *see Baxter Health Care Corp. v. Spectramed Inc.*, No. SA CV 89-131 AHS (RWRx), 1992

12   WL 340763, at *3 (C.D. Cal. Aug. 27, 2007) ("[R]eference to the indictment or to the fact that

13   [the witness] has been charged . . . would cause a substantial degree of prejudice that outweighs

14   its probative value.").

15           For all of these reasons, the Court preclude Plaintiffs from offering evidence or argument

16   regarding any investigations or indictments.

17   **V.    ISSUE 5—ANY "GROSS GAINS" OR OTHER FINDING IN AUO CRIMINAL**
         **TRIAL**
18
             The Court should exclude any evidence or argument regarding the finding by the jury in
19
     the AUO criminal trial that the "gross gains derived from the conspiracy by all the participants in
20
     the conspiracy" was "$500 million or more." United States' Proposed Special Verdict Form at
21
     5:7-11, *United States v. AU Optronics Corp.*, No. CR 09-00110 SI (N.D. Cal. Dec. 9, 2011) (Dkt.
22
     No. 542). That finding is irrelevant and unduly prejudicial in the indirect purchaser class case.
23
     Moreover, such a finding is inadmissible hearsay, as is the jury determination on guilt.
24
             First, the specific panel sales at issue in the AUO criminal trial are not all at issue in the
25
     indirect purchaser class case. The panel sales at issue in the AUO criminal trial include all panels
26
     sold in the United States during the period relevant there, while the indirect purchaser class case
27
     involve only panels incorporated into products purchased in half of the states, which in turn are
28

1    subject to further limitations (*e.g.*, no cross-border purchases, no purchases by members of the

2    direct purchaser class, and no purchases of products for business use in some states).  There is

3    also a portion of direct panel sales to the United States included in the government's gross gains

4    calculation that U.S. companies incorporate into products then sold to consumers abroad, and

5    therefore not in the indirect purchaser case.[4]

6          Given the different scope of the sales at issue in the different cases, it is not surprising that

7    the verdict form in the AUO criminal trial did not seek a determination specifically with respect

8    to damages from sales of the panels purchased by indirect purchaser class members.  Thus, the

9    AUO criminal trial jury's finding on gross gains is not translatable into evidence applicable to the

10   indirect purchaser case.

11         Second, the primary damages issue in the indirect purchaser case is overcharges passed on

12   to the indirect purchasers.  There is no evidence that there is a one-to-one correlation between

13   gross gains to all co-conspirators found by the AUO criminal trial jury and any element of

14   damages to the indirect purchasers.  Indeed, there is no evidence whatsoever regarding whether

15   "gross gains" can be correlated with damages and, if so, what that correlation would be.

16   Certainly, none of the experts has addressed this in his or her report.[5]  For this additional reason,

17   the AUO criminal trial jury's gross gains finding is not translatable into evidence applicable to the

18   indirect purchaser case.

19         Third, even were there some marginal relevance to the jury finding on gross gains in the

20   AUO criminal trial, that marginal relevance would be "substantially outweighed by a danger of . .

21   . unfair prejudice, confusing the issues, [or] misleading the jury . . . ."  Fed. R. Evid. 403.  The

22   jury here should draw its own conclusion regarding the actual panels at issue in this case, and not

23   be influenced by a determination with respect to "gross gains" with respect to some different

24   although overlapping group of panel sales.  If evidence of the jury finding on gross gains were

25   admitted, defendants here would be put in the position of having to address the differences

26   _____

[4] Of course, there are also panels at issue in the indirect purchaser class case that are not at issue in the AUO criminal
27   trial.  The relevant point is that the sales at issue in each case are different and, thus, a finding in one case cannot be
readily and reliably applied in the other case.

28   [5] The indirect purchasers also have asserted entitlement to recover for "unjust enrichment."  However, there is also no
evidence of how "gross gains" could be correlated to an unjust enrichment amount.

DEF. LG DISPLAY'S MIL NO. 3 TO
EXCLUDE VARIOUS EVIDENCE AND ARGUMENTS
CASE NO.: 3:07-MD-1827 SI

between the issues and evidence in the AUO criminal trial and the issues in the indirect purchaser case, which would require a significant detour and consumption of time in this already complicated case.

On the other side of the coin, no party will be prejudiced by the exclusion of the finding. Each side's respective expert has extensively addressed the damages issues in the indirect purchaser case. Expert reports have been produced and expert depositions have taken place. There is no need to resort to a finding in another case with respect to sales to a different (albeit overlapping) group of purchasers.

Fourth, the findings of the AUO criminal trial jury are hearsay as to LG Display. LG Display did not participate in the AUO criminal trial and the answers on the verdict form do not fall within any exception to the hearsay rule. The only potentially applicable exception to the hearsay rule would be under Rule 803(22), for a final judgment of a previous conviction. But that exception would not apply because (1) the finding on gross gains is not necessarily essential to whatever judgment is eventually entered—although it might be relevant to sentencing, and (2) no judgment is yet final in the district court, or will likely be final in the district court at the time of trial of the indirect purchaser class case, barring use of either the gross gains finding or the determination of guilt. *See In re Slatkin*, 310 B.R. 740, 749 (C.D. Cal. 2004) (requirements of hearsay exception in Rule 803(22) not met because defendant "had not yet been sentenced" and therefore there was no "final judgment").

## CONCLUSION

For the foregoing reasons, the Court should exclude evidence and argument as requested herein.

DATED:  March 13, 2012

By:  _/s/ Stuart N. Senator_
Brad D. Brian (State Bar No. 079001)
Jerome C. Roth (State Bar No. 159483)
Stuart N. Senator (State Bar No. 148009)
Jonathan E. Altman (State Bar No. 170607)
Truc T. Do (State Bar No. 191845)
Hailyn J. Chen (State Bar No. 237436)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Los Angeles, CA  90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702
_Brad.Brian@mto.com_

Holly A. House (State Bar No. 136045)
Lee F. Berger (State Bar No. 222756)
Paul Hastings LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
Telephone:    (415) 856-7000
Facsimile:    (415) 856-7100
_hollyhouse@paulhastings.com_
_leeberger@paulhastings.com_

_Attorneys for Defendants LG Display Co., Ltd._
_and LG Display America, Inc._

EXHIBIT 2

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | No. M 07-1827 SI MDL No. 1827 |
| _____/ | **FINAL PRETRIAL SCHEDULING ORDER** |
| This Order Relates To: | |
|     All Direct-Purchaser Plaintiff Class Actions | |
| _____/ | |

On April 25, 2012, the Court held a Pretrial Conference on this matter, which is scheduled for jury selection on May 14, 2012, with jury trial commencing on May 21, 2012. All parties were represented by counsel. Based on that conference, and on the hearing held May 20, 2012 concerning trial structure, the following matters have been resolved:

1. **Parties:** At the time of the Pretrial Conference, this trial was anticipated to include the remaining claims of both the Direct- and the Indirect-Purchaser Plaintiff Class Actions. Since that date, however, the Indirect-Purchaser Plaintiff ("IPP") Class Action counsel informed the Court that they have tentatively resolved their remaining claims (against defendants LG and AUO). Thus the jury trial to commence on May 21, 2012 will include only the claims of the Direct-Purchaser Plaintiff Class

**United States District Court**
For the Northern District of California

Actions ("DPPs") against their only remaining defendant, Toshiba.[1]

2.    **Number of jurors and challenges**:  There shall be a jury of 10 members.  Each side shall have up to four peremptory challenges.

3.    **Voir dire**: The Jury Commissioner will distribute the approved jury questionnaire to potential jurors on May 9, 2012, and counsel will obtain and copy the completed questionnaires thereafter.  Voir dire will be conducted on Monday, May 14, 2012.  The Court anticipates that counsel will have reviewed and considered the completed questionnaires in advance of voir dire.  The Court will conduct general voir dire, and counsel for each side shall have up to 30 minutes total to question the panel.

4.    **Jury instructions**:  Certain joint proposed jury instructions have been submitted, but given the altered scope of the trial (DPPs/Toshiba only) those must be revised.  No later than **Tuesday, May 15, 2012**, counsel shall submit one complete set of proposed instructions, containing both agreed upon instructions (which shall be so noted), and contested instructions, all in the order in which they should be read to the jury.  Where contested instructions are included, they should be annotated both with the proponent's authority for seeking the instruction and the opponent's reason for opposition.  Where feasible, competing instructions addressing the same point shall be included together in the single set of proposed instructions.  The final submission shall be filed in hard copy and also submitted to the court in digital format suitable for reading by WordPerfect (*wpd file) by May 15, 2012.

5.    **Trial exhibits**: Counsel may set up the courtroom for trial during the week of May 8, 2012.  No later than May 17, 2012, the parties shall submit their trial exhibits, in binders with numbered tabs separating and identifying each exhibit.  The court shall be provided with three sets (for the court,

---

[1] The Toshiba defendants include Toshiba Corporation; Toshiba Mobile Display Co., Ltd.; Toshiba America Electronic Components, Inc.; and Toshiba America Information Systems, Inc.  Unless otherwise specified, all will be referred to collectively as "Toshiba."

2

the file and the witness) and each side shall provide one set for the other side. To the extent that original documents are to be used as exhibits in the case, they should be included in the set of exhibits for the court.

6. **Timing of trial**: The parties originally had identified hundreds of potential witnesses in this case and estimated that the trial would take many weeks, noting that the parallel criminal trial had taken about seven weeks. Since then, however, major portions of the case have been carved off and the case involves only one set of plaintiffs (the DPPs) and one defendant (Toshiba). Revised witness lists have been submitted, which now include somewhere between 17 and 31 witnesses for plaintiffs, and 25 witnesses for defendant, with some overlap. Plaintiffs estimate 14 court days for their direct examination; defendant does not provide an estimate. The Court has reviewed the witnesses listed and the issues to be tried, and believes that the matter can easily be tried in six court weeks, or 24 days.[2] Based on this estimate, each side shall have 60 minutes for opening statements; each side shall have 50 hours total for presentation of evidence, which includes direct and cross-examination and presentation of all exhibits; and each side shall have up to 2 hours for closing argument.

6. **Trial schedule**: Jury trials are generally conducted Monday through Thursday; jury trials are generally not conducted on Fridays, although deliberating juries are free to deliberate on Fridays. The trial day runs from 8:30 a.m. until 3:30 p.m., with a 15 minute break at 10:00 a.m., a 45 minute break at 12:00 noon and a 15 minute break at 2:00 p.m., all times approximate. The Court will be unavailable on Thursday, June 7, 2012.

7. **Motions in limine**: The parties filed approximately 51 motions in limine. All were discussed at the Pretrial Conference. Some have been mooted by the IPPs' tentative settlements; the balance are resolved as follows (any motions not mentioned are DISMISSED as moot):

_____

[2] This time estimate may be over-generous. Both sides now agree that some or all of the prior guilty pleas may be admitted as substantive evidence of conspiracy in this civil action. This should considerably compress the time needed to prove major parts of the case.

**DPP Motions**:

        No. 1: To exclude references to treble damages: GRANTED.

        Nos. 2/3:  To exclude references to DPP and IPP settlements: GRANTED as to the amount or terms of any settlement; DENIED as to fact of settlement by testifying witness or by corporate employer of testifying witness.

        No. 4: To exclude evidence of settling defendants' obligations to cooperate: DENIED.

        No. 5: To exclude evidence of cooperating witnesses' payments while in prison: DENIED.

        No. 6:  To exclude references to plaintiffs' financial condition: GRANTED, absent further Court order on offer of proof of relevance.

        No. 7: To exclude references to plaintiffs' other lawsuits:  GRANTED, absent further Court order on offer of proof of relevance.

        No. 8: To exclude references to relationship between named plaintiff and counsel: GRANTED, absent further Court order on offer of proof of relevance.

        No. 9: To exclude references to separate cases brought by opt-outs, state AGs and IPPs: DENIED, without prejudice to specific objection to specific testimony at trial.

        No. 10: IPP motion only - moot.

        No. 11: To exclude references to statements made by AUSA regarding multiple conspiracies:  GRANT.

        No. 12: To exclude references to fact that Toshiba was not indicted: DENIED.  Upon request, and if necessary, the Court will give a limiting instruction.

        No. 13: To exclude reference to DOJ Rule 12/4 disclosures in criminal actions: GRANTED.

        No. 14: To exclude reference to Samsung as amnesty applicant: DENIED.

        No. 15: To exclude argument that plaintiffs' claims are barred because they arise from foreign commerce: GRANTED as to any such argument.  If/to the extent that factual predicates must be established at trial re FTAIA issues, those will simply be submitted to the jury for

**United States District Court**
For the Northern District of California

determination.

No. 16: To exclude evidence/argument re plaintiffs' ability to pass on overcharges: GRANTED.

No. 17: To exclude evidence re failure to mitigate damages: GRANTED, absent further Court order on offer of proof.

No. 18: To exclude witnesses who refuse to describe their trial testimony: DENIED, without prejudice to specific objection at time of trial.

No. 19: To exclude all undisclosed evidence: DENIED, without prejudice to specific objection at time of trial.

No. 20: To exclude witnesses not previously disclosed by defendants: GRANTED, absent further Court order on offer of proof.

No. 21: To exclude live witnesses not made available to plaintiffs: GRANTED. Any witnesses being brought to trial by defendant for live testimony must be made available for testimony in plaintiffs' case in chief. However, the defense examination of any such witness will not be limited by the scope of plaintiffs' direct. See Toshiba No. 1.

No. 22: To exclude evidence regarding effect of large damage award: DENIED, as overbroad and premature; without prejudice to specific objections at time of trial.

No. 23: To exclude non-expert, percipient witnesses during trial: GRANTED, except as to that party's designated representative.

No. 24: To exclude expert testimony that there was no conspiracy: DENIED, as vague, overbroad and premature; without prejudice to specific objections at time of trial. No expert may offer improper legal conclusions.

No. 25: To exclude duplicative, cumulative, prejudicial, time-wasting and confusing experts: DENIED without prejudice to actual objection at time of trial. Any witness' testimony which is genuinely duplicative, cumulative, unfairly prejudicial, time-wasting or confusing will be excluded.

No. 26: To exclude expert testimony on incomplete pass-on of overcharges through affiliates: GRANTED, absent further Court order on offer of proof demonstrating ownership and

control.

No. 27: To admit evidence that witnesses have invoked the Fifth Amendment: DENIED, absent further order of Court.

No. 28: To issue finding pretrial that foundation exists to admit co-conspirator statements: DENIED, without prejudice to renewal at trial.

**Toshiba Motions:**

No. 1: To allow full defense examination of Toshiba witnesses during plaintiffs' case in chief: GRANTED; see DPP No. 21.

No. 2: To exclude evidence of anticompetitive conduct unrelated to plaintiffs' claims: DENIED, without prejudice to specific objection to specific evidence at time of trial.

No. 3: To exclude evidence of prior invocations of Fifth Amendment: GRANTED, without prejudice to reconsideration based on showing of good cause.

No. 4: To exclude use of discovery responses by other civil defendants: DENIED, without prejudice to case-by-case evaluation.

No. 5: To exclude testimony by expert Kenneth Flamm re non-index panels: DENIED, without prejudice to specific objection to specific questions/testimony at time of trial.

No. 6 – re video - withdrawn.- moot.

No. 7: To exclude evidence of guilty pleas by Japanese manufacturers: DENIED, without prejudice to specific objection at trial.

No. 8: To exclude adverse inferences from the Fifth Amendment deposition of Christina Caperton Clark: GRANTED; FRE 403.

No. 9 – re IPPs only – moot.

No. 10 - re IPPs only – moot.

**LG Motions joined in by Toshiba:**

No. 1: To exclude purported expert testimony: DENIED, without prejudice to specific objections to specific questions at time of trial.

6

**United States District Court**
For the Northern District of California

1    <u>No. 2 - re IPPs only - moot.</u>

2    <u>No. 3: To exclude miscellaneous things:</u>

3         –Inflammatory rhetoric - GRANTED.

4         –Products/territories not at issue - DENIED without prejudice.

5         –Employment issues - DENIED.

6         –Investigations and indictments - DENIED without prejudice.

7         –"Gross gains" from criminal AUO trial - GRANTED; FRE 403.

8

9

10   **IT IS SO ORDERED.**

11

12   Dated: May 4, 2012

13

14                                   SUSAN ILLSTON
                                     United States District Judge

7

# EXHIBIT 3
## [SUBMITTED UNDER SEAL]