# EXHIBIT A
# [Highly Confidential – Filed Under Seal]

# EXHIBIT "B"

CERTIFIED COPY

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - -

IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION

      No.: 3:07-cv-5944 SC--MDL No. 1917
      Individual Action No.: 3:11-cv-05514

- - - - - - - - - - - - - - -

This Document Relates To:

ALL ACTIONS

- - - - - - - - - - - - - - - - - - - - - - - - -


HIGHLY CONFIDENTIAL

PURSUANT TO THE PROTECTIVE ORDER

VOLUME I

<u>DEPOSITION OF NIKHIL NAYAR</u>

May 1, 2014


Jean F. Soule, Notary Public
375338

40 YEARS

BARKLEY
Court Reporters
barkley.com

(310) 207-8000 Los Angeles   (415) 433-5777 San Francisco   (949) 955-0400 Irvine   (858) 455-5444 San Diego
(916) 922-5777 Sacramento   (408) 885-0550 San Jose   (760) 322-2240 Palm Springs   (951) 686-0606 Riverside
(818) 702-0202 Woodland Hills   (212) 808-8500 New York City   (347) 821-4611 Brooklyn   (518) 490-1910 Albany
(516) 277-9494 Garden City   (914) 510-9110 White Plains   (312) 379-5566 Chicago   (702) 366-0500 Las Vegas
+33 1 70 72 65 26 Paris   +971 4 8137744 Dubai   +852 3693 1522 Hong Kong

13:02  1        A.      Self-described.  I mean, there's a lot

13:02  2  of things that happen in Target that we have to

13:02  3  execute, and his job is on that ops team.  He

13:02  4  specifically deals with segmentation for our

13:02  5  multicultural merchandising.

13:02  6        Q.      So broader than any particular like

13:02  7  specific product line?

13:02  8        A.      Correct.  It would be all

13:02  9  multicultural merchandising, not specific to a

13:02  10  category but across Target.

13:03  11        Q.      Do you know when Mr. Williams worked

13:03  12  in the -- in Department 08?

13:03  13        A.      He was -- I don't remember the years

13:03  14  specifically, but I believe he was the senior buyer

13:03  15  prior to Tim Livingston.

13:03  16        Q.      How did Target decide which brands of

13:03  17  CRT televisions to purchase and carry?

13:03  18        A.      Mark --

13:03  19              MR. HEAVEN:  Object to form.

13:03  20              THE WITNESS:  Market research, looking

13:03  21  at what's happening in the overall space, looking

13:03  22  at our competitors.

13:03  23  BY MR. YOLKUT:

13:03  24        Q.      What forms of market research would

13:03  25  Target use in that regard?

BARKLEY
Court Reporters

13:03   1            A.      We would visit competitor stores, take

13:03   2     a look at, you know, their shelf space on what

13:03   3     brands they carried.  We would use Nielsen Market

13:03   4     Share Data.

13:03   5            Q.      You would have Target employees visit

13:03   6     other stores like a Wal-Mart or a Best Buy to see

13:03   7     what they were doing?

13:03   8            A.      Yes.

13:03   9            Q.      Did you have a group at Target that

13:04  10     was responsible for, you know, kind of just seeing

13:04  11     what the competition was doing, that type of like

13:04  12     intelligence?

13:04  13            A.      Can you clarify?

13:04  14            Q.      Sure.  Meaning who were the employees

13:04  15     that would be visiting these other stores?

13:04  16            A.      Well, part of the role of the buyer is

13:04  17     just to stay abreast of what's going on in the

13:04  18     marketplace.  So it would be them visiting

13:04  19     competition, visiting our own stores.  So I would

13:04  20     say that they were the primary ones responsible for

13:04  21     taking a look at, you know, what's going on in the

13:04  22     marketplace.  We'd also look at past year's history

13:04  23     to see what's working, what's not.

13:04  24            Q.      And you mentioned -- actually, staying

13:04  25     on market research.  Would you use research

66

NIKHIL NAYAR - VOLUME I

BARKLEY
Court Reporters

13:04  1    provided by third companies, like NPD?

13:04  2          A.    Yeah.  I mean, Nielsen and NPD are the

13:04  3    two primary data points that's publicly available.

13:05  4          Q.    Any other factors Target considered in

13:05  5    making its decision to go with one brand over

13:05  6    another?

13:05  7          A.    Noth -- nothing specific.

13:05  8          Q.    How many brands of televisions was

13:05  9    Target likely to carry in a given time period?

13:05  10         A.    Our space was pretty limited in

13:05  11   stores, so I'd say anywhere from seven to -- seven

13:05  12   to eight brands.

13:05  13         Q.    Could it vary by store?

13:05  14         A.    It could.

13:05  15         Q.    Some stores might have more shelf

13:05  16   space?

13:05  17         A.    It could be shelf space or in some

13:05  18   instances certain price points of TVs just in

13:05  19   selling that market.

13:06  20         Q.    Are there some must-have brands of

13:06  21   televisions?

13:06  22               MR. HEAVEN:  Object to form.

13:06  23               THE WITNESS:  Somewhat subjective, but

13:06  24   I'd say at the point of what we're talking about

13:06  25   Sony was considered a must-have brand or Panasonic.

67

BARKLEY
Court Reporters

17:47  1   the role of competitive pricing?

17:47  2          A.    At least seven to ten years.

17:47  3          Q.    What tactics would Mr. Thole's team

17:47  4   use to monitor the retail prices of its competitors,

17:47  5   of Target's competitor?

17:47  6                MR. HEAVEN:  Object to form.

17:47  7                THE WITNESS:  Same to what a buyer

17:47  8   would do.  We can't, obviously, go to every store

17:47  9   in the country.  So Lee and his team would do comp

17:47 10   shops.  So, essentially, go out into the

17:47 11   marketplace, do analytics on what key items we

17:47 12   should be matching with a Wal-Mart or a Best Buy,

17:47 13   whoever it is, assess where the market is, excuse

17:47 14   me, and then where Target needs to be.

17:47 15   BY MR. YOLKUT:

17:47 16          Q.    Where would the -- what would the

17:47 17   analytics be founded on?

17:47 18          A.    Good, better, best pricing.

17:48 19                MR. HEAVEN:  Object to form.

17:48 20                THE WITNESS:  I mean, there -- there's

17:48 21   a number of things outside of just looking at where

17:48 22   the retail is at.  As I've said, there's multiple

17:48 23   factors that relate to how a consumer is going to

17:48 24   perceive your assortment in store, there's brand,

17:48 25   there's the price points that you offer, the

304

BARKLEY
Court Reporters

17:48  1    relative value of the product that you have in

17:48  2    store.  So there's a lot of things that Lee and his

17:48  3    team would do.

17:48  4    BY MR. YOLKUT:

17:48  5         Q.    Did you have any role in working with

17:48  6    Lee and his team in competitive pricing?

17:48  7         A.    When I was a divisional, yes.

17:48  8         Q.    Okay.  And what role did you play?

17:48  9         A.    I would ask him, please, you know --

17:48  10   and it wasn't a weekly occurrence, but at some

17:48  11   point during the course of the year, semiannually

17:48  12   or annual, we'd take a competitive assessment of

17:48  13   where we were in the marketplace within the rest

17:48  14   of -- rest of the other retailers out there, and

17:48  15   we'd get a gauge of where our pricing was as it

17:48  16   related to opening price point versus mid-tier

17:48  17   versus, you know, premium brands, you know,

17:48  18   those -- one aspect of my communication with Lee.

17:49  19        Q.    You would sometimes ask Mr. Thole to

17:49  20   prepare a competitive assessment of the marketplace?

17:49  21        A.    Yes.

17:49  22        Q.    And you'd utilize competitive

17:49  23   assessments in connection with your job

17:49  24   responsibilities at Target?

17:49  25        A.    Yeah.  It's one of the course -- core

305

BARKLEY
Court Reporters

30(b)(6) Target Corporation  -  5/1/2014
In Re Cathode Ray Tube Antitrust Litigation

```
 1   STATE OF MINNESOTA   )
                          )ss.            CERTIFICATE
 2   COUNTY OF DAKOTA     )

 3       BE IT KNOWN that I, Jean F. Soule, Registered
     Professional Reporter, took the foregoing
 4   deposition of NIKHIL NAYAR;

 5       That the witness, before testifying, was by me
     first duly sworn to testify the whole truth and
 6   nothing but the truth relative to said cause;

 7       That the testimony of said witness was recorded
     in shorthand by me and was reduced to typewriting
 8   under my direction to the best of my ability;

 9       That the foregoing deposition is a true record
     of the testimony given by said witness;
10
         That the reading and signing of the foregoing
11   deposition by the said witness were not waived by
     the witness and respective counsel;
12
         That I am not related to any of the parties
13   hereto, nor an employee of them, nor interested in
     the outcome of the action;
14
         That the cost of the original has been charged
15   to the party who noticed the deposition, and that
     all parties who ordered copies have been charged at
16   the same rate for such copies;

17       WITNESS MY HAND AND SEAL this 7th day of May,
     2014.
18
19               JEAN F. SOULE, Notary Public, RPR

20
21
22
23
24
25
```

JEAN F. SOULE
Notary Public-Minnesota
My Commission Expires Jan 31, 2015

# EXHIBIT "C"

HIGHLY CONFIDENTIAL
Bonny Cheng -- October 9, 2014

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION


IN RE:  CATHODE RAY TUBE (CRT)

ANTITRUST LITIGATION                    Case No.
                                        3:14-cv-02510

_____          Master File No.
                                        3:07-cv-05944-SC

This Document Relates To:

ALL ACTIONS                             MDL No. 1917

_____



** HIGHLY CONFIDENTIAL **

VIDEOTAPED DEPOSITION OF

VIEWSONIC CORPORATION'S 30(B)(6) WITNESS

BONNY CHENG

October 9, 2014

9:19 a.m. to 8:51 p.m.


515 South Flower Street, 40th Floor

Los Angeles, California



REPORTED BY:

Jean F. Holliday

CSR No. 4535, RPR, CRR

HIGHLY CONFIDENTIAL
Bonny Cheng -- October 9, 2014

Page 295

1   agreed upon topic.

2          MR. FOSTER:  Well, then, Mr. Heaven, I'd just

3   ask you if you could tell me which -- how it's changed.

4          MR. HEAVEN:  Well, it's pursuant to our

5   agreement.

6          MR. FOSTER:  Okay.  So we have our -- the

7   agreement that you're referring to is that Ms. Cheng is

8   prepared to testify today about ViewSonic's practices

9   during the relevant period of collecting competitor

10  information in order to -- period, and although she's

11  not prepared today to talk about how that competitor

12  information related to how ViewSonic priced its

13  products.  Is that fair?

14         MR. HEAVEN:  That's fair.

15  BY MR. FOSTER:

16     Q.  Okay.  Who -- during the relevant period,

17  Ms. Cheng, who were ViewSonic's competitors for CRT

18  monitors?

19     A.  Dell, Samsung.  I can't remember.  It's too

20  long time ago.

21     Q.  Those are the only two that you can remember,

22  sitting here today?

23     A.  Yeah.

24     Q.  Did ViewSonic collect information about Dell?

25     A.  Yes.

HIGHLY CONFIDENTIAL
Bonny Cheng -- October 9, 2014

Page 296

1      Q.   What information?

2      A.   End-user pricing in the market.

3      Q.   Any other information?

4      A.   Their market share.

5      Q.   Anything else?

6      A.   What product that they offer.

7      Q.   Anything else?

8      A.   No.

9      Q.   That's it?

10     A.   That's it.

11     Q.   And what information did ViewSonic collect

12  about Samsung?

13     A.   Similar.

14     Q.   The same three categories of information?

15     A.   Yeah.

16     Q.   Anything -- did ViewSonic collect

17  information -- any information about Samsung that it

18  didn't collect about Dell?

19     A.   No.

20     Q.   Who at ViewSonic was responsible for collecting

21  the information categories that you identified about

22  Dell?

23     A.   Marketing.

24     Q.   The marketing department?

25     A.   Marketing department.

HIGHLY CONFIDENTIAL
Bonny Cheng -- October 9, 2014

Page 309

1    record.

2    BY MR. FOSTER:

3        Q.   Ms. Cheng, before we took a break we were

4    talking about ViewSonic's efforts to collect information

5    about its competitors and that the sources of the

6    end-user price information that it would get from its

7    competitors were the website, retail stores, newspapers

8    and magazines.  Do you recall that?

9        A.   Yes.

10       Q.   And what sources did ViewSonic use to collect

11   market share information about its competitors?

12       A.   The third-party research firm.

13       Q.   Any other sources?

14       A.   No.

15       Q.   That's the only one?

16       A.   Yeah.

17       Q.   Can you tell me which third-party research

18   firms ViewSonic used?

19       A.   Display Search.

20       Q.   Any other ones?

21       A.   Not that I -- none I can think of.

22       Q.   That's the only one you can think of today?

23       A.   Yes.

24       Q.   There might have been more, you just don't

25   remember?

HIGHLY CONFIDENTIAL
Bonny Cheng -- October 9, 2014

Page 357

1    STATE OF CALIFORNIA    )
                            ) SS
2    COUNTY OF LOS ANGELES  )

3

4         I, Jean F. Holliday, a Certified Shorthand

5    Reporter, do hereby certify:

6         That prior to being examined, the witness in the

7    foregoing proceedings was by me duly sworn to testify to

8    the truth, the whole truth, and nothing but the truth;

9         That said proceedings were taken before me at the

10   time and place therein set forth, and were taken down by

11   me in shorthand and thereafter transcribed into

12   typewriting under my direction and supervision;

13        I further certify that I am neither counsel for,

14   nor related to, any party to said proceedings, nor in

15   anywise interested in the outcome thereof.

16        In witness whereof, I have hereunto subscribed my

17   name.

18

19   Dated:  October 20, 2014

20

21   _____

     Jean F. Holliday
22   CSR No. 4535, RPR, CRR

23

24

25

# EXHIBIT "D"

**HIGHLY CONFIDENTIAL**

1

1      IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF CALIFORNIA
2              SAN FRANCISCO DIVISION
3   IN RE: CATHODE RAY TUBE (CRT)  ) Case No.
    ANTITRUST LITIGATION           ) No. 07-5944
4                                  )3:07-cv005944-SC )
                                   ) MDL No. 1917
5   ------------------------------)
                                   )
6   This Document Relates To:      )
    ALL ACTIONS                    )
7                                  )
    ------------------------------)
8

            SUPERIOR COURT OF THE STATE OF CALIFORNIA
9              CITY AND COUNTY OF SAN FRANCISCO
10  STATE OF CALIFORNIA, et al.,   ) Case No.
                                   ) CGC-11-51584
11                  Plaintiffs, ) (Related to
                                   ) CGC-110-
12    V.                           ) 515-786)
                                   )
13  SAMSUNG SDI, INC., CO., LTD.,  )
    et al.,                        )
14                                 )
                    Defendants. )
15  ----------------------------------------------
16          VIDEOTAPED DEPOSITION
17             TIMOTHY FUREY
18             JULY 30, 2014
19  ----------------------------------------------
20
21
22
23
24
25

HIGHLY CONFIDENTIAL

51

| | | |
|---|---|---|
| 1 | MS. YAN:  Okay. | 10:48 |
| 2 | THE VIDEOGRAPHER:  Check microphones. | 10:48 |
| 3 | MR. ROSS:  Go ahead. | 10:49 |
| 4 | THE VIDEOGRAPHER:  Stand by. | 10:49 |
| 5 | Back on the record at 10:49 a.m.  This is the | 10:49 |
| 6 | beginning of videotape number 2. | 10:49 |
| 7 | BY MS. YAN: | 10:49 |
| 8 | Q    Mr. Furey, I want to ask you about -- | 10:49 |
| 9 | You said before we went on break that part of | 10:49 |
| 10 | your job was understanding the competitive intelligence | 10:49 |
| 11 | and competitive pricing information, right? | 10:49 |
| 12 | A    Yes. | 10:49 |
| 13 | Q    Could you tell me how you obtained that kind of | 10:49 |
| 14 | information? | 10:49 |
| 15 | MR. ROSS:  Objection to form; asked and | 10:49 |
| 16 | answered. | 10:49 |
| 17 | A    And in -- so the way it was gathered for quite | 10:49 |
| 18 | some time was our stores would actually go out and | 10:50 |
| 19 | execute competitive price checks for their focused | 10:50 |
| 20 | competitor as I spoke about before. | 10:50 |
| 21 | Q    When you say the store would go out and execute | 10:50 |
| 22 | competitive price checks, I want to break that up a | 10:50 |
| 23 | little bit. | 10:50 |
| 24 | Who exactly was going that -- what do you mean | 10:50 |
| 25 | by our stores, who was actually going out and doing | 10:50 |

HIGHLY CONFIDENTIAL

52

1    these price checks?                                      10:50

2        A    It could be any individual in the store.   It  10:50

3    could have been a store -- it could have been anywhere  10:50

4    from the store manager down to a salesperson.  But it   10:50

5    could have been anyone in -- in the store executing     10:50

6    those checks.                                           10:50

7        Q    Okay.  And when you say execute competitive    10:50

8    price checks, what do you mean by that?                 10:50

9        A    They would go to the competitor, and by        10:50

10   whatever means they did it, whether it be by memory or  10:51

11   whether it be written down, voice recorder, they would  10:51

12   take down their -- the competitors' tagged retail price 10:51

13   and come back and input those into our point of sale.   10:51

14       Q    Did -- when they -- have you ever personally   10:51

15   gone out and executed a competitive price check?        10:51

16       A    Yes.                                           10:51

17       Q    Okay.  Can you tell me about when you did that? 10:51

18       A    I did it some great number of times.           10:51

19       Q    Okay.  How many times would you say?           10:51

20       A    Easily on the order of hundreds.               10:51

21       Q    Okay.  And on what occasions would -- what     10:51

22   would prompt you to go to -- to execute a competitive   10:51

23   price check?                                            10:52

24            MR. ROSS:  Objection to form.  You mean when he 10:52

25       was actually working in the stores, or afterwards as 10:52

HIGHLY CONFIDENTIAL

54

| | | |
|---|---|---|
| 1 | store wherever, some competitive check, and then I would | 10:53 |
| 2 | just go to my local competitor, assuming it was Best | 10:53 |
| 3 | Buy -- this could only really happen if it was Best | 10:53 |
| 4 | Buy -- and see if that was accurate or not. | 10:53 |
| 5 | Q    Okay.   And going back to you said the local | 10:53 |
| 6 | stores would go out and execute these competitive price | 10:53 |
| 7 | checks, how frequently would they do that? | 10:53 |
| 8 | MR. ROSS:   Objection to form.   Time frame. | 10:53 |
| 9 | A    At one point it was a weekly process, and at | 10:53 |
| 10 | some point it changed.   And I cannot remember what the | 10:53 |
| 11 | frequency was after that change. | 10:54 |
| 12 | Q    Do you recall when that change was? | 10:54 |
| 13 | A    No. | 10:54 |
| 14 | Q    Okay.   When you say the frequency changed, did | 10:54 |
| 15 | it change to be more frequent or less frequent, if you | 10:54 |
| 16 | recall? | 10:54 |
| 17 | A    Less frequent. | 10:54 |
| 18 | Q    Less frequent.  And why did it change to be | 10:54 |
| 19 | less frequent, if you know? | 10:54 |
| 20 | A    It was a matter of -- it was a matter of man -- | 10:54 |
| 21 | man hours in the stores, you know, so there were -- | 10:54 |
| 22 | there were fewer people working in our stores as -- as | 10:54 |
| 23 | labor got reduced, so there simply was not the available | 10:54 |
| 24 | man hours to do that with that frequency. | 10:54 |
| 25 | Q    All right.   So when you go into a store to -- | 10:54 |

HIGHLY CONFIDENTIAL

215

| | | |
|---|---|---|
| 1 | is the price that the consumer would see on the shelf | 03:52 |
| 2 | when they walk in the store.  And that -- that tag would | 03:52 |
| 3 | be placed directly underneath, possibly over the item, | 03:52 |
| 4 | but that would be the -- the tagged price that the | 03:52 |
| 5 | consumer sees relative to the -- to the item directly | 03:52 |
| 6 | above or below it. | 03:52 |
| 7 | Q    All right.  Several times throughout the day | 03:52 |
| 8 | both counsel for LG and counsel for Toshiba used the | 03:52 |
| 9 | term "competitive intelligence" with regard to your | 03:52 |
| 10 | duties and responsibilities.  Could you explain for us | 03:52 |
| 11 | what you mean in terms of your duties when the phrase | 03:53 |
| 12 | "competitive intelligence" is used? | 03:53 |
| 13 | A    Competitive intelligence from -- from a Circuit | 03:53 |
| 14 | City standpoint was simply an evaluation of the gathered | 03:53 |
| 15 | competitive checked data that we got from our stores and | 03:53 |
| 16 | making an appropriate business decision as to what to | 03:53 |
| 17 | retail an item for based on the competitive environment. | 03:53 |
| 18 | So it was simply gathering the information from | 03:53 |
| 19 | the checks, looking at it, looking for -- for trends in | 03:53 |
| 20 | retail pricing and making an appropriate business | 03:53 |
| 21 | decision for Circuit City based on -- based off of that | 03:53 |
| 22 | information. | 03:53 |
| 23 | Q    And as you've described previously today, those | 03:53 |
| 24 | checks that were done in competitive stores were checks | 03:53 |
| 25 | of the retail tagged price, correct, sir? | 03:53 |

HIGHLY CONFIDENTIAL

216

1      A      That is correct.   The tag -- the tagged price      03:53

2    the consumer will see.                                       03:53

3      Q      Okay.   You also talked about, and we've seen       03:53

4    some documents, where there were reviews of advertising      03:54

5    circulars.   Do you recall that?                             03:54

6      A      Yes.                                                 03:54

7      Q      Okay.   Other than those two things, is there       03:54

8    anything else in your job that involved competitive          03:54

9    intelligence?                                                03:54

10     A      No.                                                  03:54

11     Q      You were asked some questions about in general      03:54

12   Circuit City reacting to the retail prices of a              03:54

13   competitor, usually Best Buy was the example.   Do you       03:54

14   recall those questions?                                      03:54

15     A      Yes.                                                 03:54

16     Q      And I want to get a sense of proportionality,       03:54

17   sir.   You were asked a couple of times about Best Buy       03:54

18   raising its prices and then Circuit City reacting to         03:54

19   that raise?                                                  03:54

20     A      Yes.                                                 03:54

21     Q      You were also asked generally about Best Buy        03:54

22   lowering its prices and Circuit City reacting to that        03:54

23   raise?                                                       03:54

24     A      Yes.                                                 03:54

25     Q      Which happened more often in your experience,       03:54

HIGHLY CONFIDENTIAL

217

| | | |
|---|---|---|
| 1 | Best Buy raising its prices and getting a Circuit City | 03:54 |
| 2 | reaction, or Best Buy lowering its prices and Circuit | 03:55 |
| 3 | City deciding whether to react or not? | 03:55 |
| 4 | A   The -- | 03:55 |
| 5 | MR. BAVE:  Object to form. | 03:55 |
| 6 | MS. YAN:  Join. | 03:55 |
| 7 | A   The -- the huge majority of the time it was | 03:55 |
| 8 | taking a retail price down, just -- if I -- if was | 03:55 |
| 9 | thinking about it, I would say on the order of less than | 03:55 |
| 10 | 1 percent of the time would we take the retailers up. | 03:55 |
| 11 | Q   Counsel showed you a couple of documents which | 03:55 |
| 12 | were I believe shown to you to show a consideration of | 03:55 |
| 13 | raising a price.  I want to just quickly look at those. | 03:55 |
| 14 | Unfortunately 4963 seems to have been out of order.  Do | 03:55 |
| 15 | you have it there? | 03:55 |
| 16 | A   Yes. | 03:55 |
| 17 | Q   Oh, okay.  Let's take a look first at Exhibit | 03:55 |
| 18 | 4963.  And you see on the second page you had written an | 03:56 |
| 19 | e-mail that indicated Best Buy going up and a question | 03:56 |
| 20 | of maybe we should go up as well? | 03:56 |
| 21 | A   Yes. | 03:56 |
| 22 | Q   Do you remember giving testimony about that | 03:56 |
| 23 | earlier today? | 03:56 |
| 24 | A   Yes. | 03:56 |
| 25 | Q   There's on the top of the first page there is | 03:56 |

HIGHLY CONFIDENTIAL

220

| | | |
|---|---|---|
| 1 | fact, Circuit City raised its prices in response to | 03:58 |
| 2 | competitive pricing? | 03:58 |
| 3 | MS. YAN:  Objection to form.  Objection, vague. | 03:58 |
| 4 | A    This document does not show me that we did | 03:58 |
| 5 | raise -- raise retails.  This simply says that we need | 03:58 |
| 6 | to evaluate. | 03:58 |
| 7 | Q    Were you shown any document today as an example | 03:58 |
| 8 | of where Circcuit City did, in fact, raise its prices in | 03:58 |
| 9 | response to competitive pricing? | 03:59 |
| 10 | MS. YAN:  Same objections. | 03:59 |
| 11 | A    I didn't see any. | 03:59 |
| 12 | Q    And do you recall any instances as you sit here | 03:59 |
| 13 | today of that? | 03:59 |
| 14 | A    Not -- I do not. | 03:59 |
| 15 | MR. ROSS:  That's all I have, sir.  Thank you | 03:59 |
| 16 | for your time. | 03:59 |
| 17 | MS. YAN:  Can we have one minute off the | 03:59 |
| 18 | record? | 03:59 |
| 19 | MR. ROSS:  Sure. | 03:59 |
| 20 | THE COURT:  Going off the record at 3:59. | 03:59 |
| 21 | (Break taken.) | 03:59 |
| 22 | THE VIDEOGRAPHER:  Back on the record at four | 04:00 |
| 23 | o'clock. | 04:00 |
| 24 | RECROSS EXAMINATION | 04:00 |
| 25 | BY MR. BAVE: | 04:00 |

EXHIBIT E
[Highly Confidential – Filed Under Seal]

# EXHIBIT "F"

1  ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
   Roman M. Silberfeld, Bar No. 62783
2  RMSilberfeld@rkmc.com
   David Martinez, Bar No. 193183
3  DMartinez@rkmc.com
   2049 Century Park East, Suite 3400
4  Los Angeles, CA 90067-3208
   Telephone:    310-552-0130
5  Facsimile:    310-229-5800

6  ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
   Elliot S. Kaplan, Bar No. 53624 (*pro hac vice*)
7  ESKaplan@rkmc.com
   Laura E. Nelson, Bar No. 231856
8  LENelson@rkmc.com
9  800 LaSalle Avenue
   2800 LaSalle Plaza
10 Minneapolis, MN 55402
   Telephone:    612-349-8500
11 Facsimile:    612-339-4181

12 Attorneys for Plaintiffs
   BEST BUY CO., INC.; BEST BUY PURCHASING
13 LLC; BEST BUY ENTERPRISE SERVICES, INC.;
   BEST BUY STORES, L.P.; BESTBUY.COM,
14 L.L.C.; and MAGNOLIA HI-FI, LLC

15                UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                   SAN FRANCISCO DIVISION

18

19 | IN RE: CATHODE RAY TUBE (CRT) | Master File No. 3:07-cv-05944-SC |
20 | ANTITRUST LITIGATION | MDL No. 1917 |

21 |  | THE HONORABLE SAMUEL CONTI |
   | This Document Relates To: |  |
22
   | ALL ACTIONS. | **BEST BUY'S RESPONSES AND** |
23 |  | **OBJECTIONS TO DEFENDANTS' FRCP** |
   |  | **RULE 30(B)(6) DEPOSITION NOTICE** |
24

25

26

27

28

1    Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, in response to

2    Defendants Panasonic Corporation of North America, MT Picture Display Co., Ltd., and

3    Panasonic Corporation's (f/k/a Matsushita Electric Industrial Co., Ltd) Notice of FRCP Rule

4    30(b)(6) Deposition served on April 18, 2014 ("Notice"), Plaintiffs Best Buy Co., Inc., Best Buy

5    Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, LLC,

6    and Magnolia Hi-Fi, LLC. (collectively "Best Buy") hereby set forth their responses and

7    objections, as follows:

8                              **GENERAL OBJECTIONS**

9    Best Buy asserts and incorporates by reference the following General Objections to each

10   deposition topic. Reference to these General Objections in any specific topic shall not waive or

11   otherwise limit the applicability of these General Objections to each and every topic.

12       1.    Best Buy construes the Notice as served on behalf of all defendants named in the

13   Complaint ("Defendants") and responds and objects accordingly.

14       2.    Best Buy objects to Defendants' "Definitions" to the extent that they impose

15   burdens and obligations on Best Buy greater than or different from those authorized under the

16   Federal Rules of Civil Procedure and the Local Rules of this Court, and to the extent they purport

17   to give meanings to words different from their ordinary English meaning or definitions set forth

18   in the applicable statutes or rules.

19       3.    Best Buy objects to each topic to the extent that it calls for testimony or

20   information protected by the attorney-client privilege or that may be protected by any other

21   privilege, such as a joint defense or common interest privilege. Such testimony will not be given.

22   Where the applicability of this General Objection is readily apparent on its face from the text of

23   the topic, Best Buy may also make a specific objection (hereinafter, an objection on the ground of

24   "Privilege") pursuant to this paragraph, although the failure to make such a specific objection

25   shall not be deemed to be a waiver of the General Objection.

26       4.    Best Buy objects to each topic to the extent that it seeks testimony that pertains to

27   work product information or documents prepared by Best Buy or its representatives or in

28   furtherance of any joint defense or common interest in anticipation of litigation or for trial.

RESPONSES AND OBJECTIONS TO
FRCP RULE 30(B)(6) DEPOSITION NOTICE
Case No. 11-CV-05513 SC; 07-CV-05944 SC

1    Testimony pertaining to such information or documents will not be given. Where the applicability

2    of this General Objection is readily apparent on its face from the text of the topic, Best Buy may

3    also make a specific objection (hereinafter, an objection on the ground of "Work Product")

4    pursuant to this paragraph, although the failure to make such a specific objection shall not be

5    deemed to be a waiver of the General Objection.

6        5.    Best Buy objects to each topic to the extent that it seeks testimony or information

7    not relevant to the claim or defense of any party to this litigation, or that it is not reasonably

8    calculated to lead to the discovery of admissible evidence. Where the applicability of this General

9    Objection is readily apparent on its face from the text of the topic, Best Buy may also make a

10   specific objection (hereinafter, an objection on the ground of "Relevance" and/or "Overbreadth")

11   pursuant to this paragraph, although the failure to make such a specific objection shall not be

12   deemed to be a waiver of the General Objection.

13       6.    Best Buy objects to each topic to the extent that it seeks testimony or information

14   that is vexatious or unduly burdensome to obtain. Where the applicability of this General

15   Objection is readily apparent on its face from the text of the topic, Best Buy may also make a

16   specific objection (hereinafter, an objection on the ground of "Undue Burden") pursuant to this

17   paragraph, although the failure to make such a specific objection shall not be deemed to be a

18   waiver of the General Objection.

19       7.    Best Buy objects to each topic to the extent that it is ambiguous, vague, and

20   incomprehensible and/or fails to set forth with reasonable particularity the testimony or

21   information requested. Best Buy also objects to each topic as ambiguous, vague, and/or

22   incomprehensible to the extent that it fails to describe with reasonable particularity the matters for

23   examination as required by Fed. R. Civ. P. 30(b)(6). Where the applicability of this General

24   Objection is readily apparent on its face from the text of the topic, Best Buy may also make a

25   specific objection (hereinafter, an objection on the ground of "Vagueness") pursuant to this

26   paragraph, although the failure to make such a specific objection shall not be deemed to be a

27   waiver of the General Objection.

28       8.    Best Buy objects to each topic to the extent that it is overbroad and/or repetitious,

and to the extent that it seeks duplicative and/or cumulative testimony or information. Where the applicability of this General Objection is readily apparent on its face from the text of the topic, Best Buy may also make a specific objection (hereinafter, an objection on the ground of "Overbreadth") pursuant to this paragraph, although the failure to make such a specific objection shall not be deemed to be a waiver of the General Objection.

9.     Best Buy objects to each topic to the extent that it seeks testimony or information that is private, confidential, trade secret, or proprietary information of itself or third parties. Best Buy agrees to provide such testimony or information, subject to the other objections stated herein, with the consent of or after an agreement has been made with interested third parties, or if such consent or agreement cannot be obtained, after the entry of an order from the Court directing Best Buy to release such information. Where the applicability of this General Objection is readily apparent on its face from the text of the topic, Best Buy may also make a specific objection (hereinafter, an objection on the ground of "Proprietary Information") pursuant to this paragraph, although the failure to make such a specific objection shall not be deemed to be a waiver of the General Objection.

10.     Best Buy objects to each topic to the extent that it seeks information that is already in the possession, custody, or control of Defendants and/or their counsel, or to the extent that it seeks information that is available to Defendants from other sources with equivalent ease and expense.

11.     Best Buy further objects to the extent that the topics call for information that Best Buy does not track or keep in the ordinary course of business, or that is not in Best Buy's possession, custody, or control.

12.     Best Buy objects to the extent that any topic prematurely seeks expert testimony and/or contention discovery.

13.     The fact that Best Buy has objected to or has agreed to provide a witness for a particular topic shall not be interpreted as implying either that supporting documents exist, that Best Buy is aware of any supporting documents or information, or that Best Buy acknowledges the propriety of that topic. Best Buy's objections or testimony shall not be construed as an

4

1  admission of the relevance or admissibility of any testimony, or as a waiver of any applicable

2  privilege.

3        14.    Any statement during any deposition that Best Buy may produce documents from

4  which the response to a topic may be ascertained does not constitute a representation that Best

5  Buy possesses any such documents or that such documents exist at all, and is not to be construed

6  as an admission with respect to any issue in this action.

7        15.    The inadvertent or mistaken disclosure of information subject to the protection of

8  the attorney-client privilege, work-product doctrine or other privilege shall not be deemed to

9  constitute a waiver of such privilege or protection. In the event such inadvertent or mistaken

10  disclosure of information occurs during the deposition, all such inadvertently and/or mistakenly

11  provided testimony or information shall promptly be stricken from the record.

12        16.    If any objection below is mistakenly construed as a response, it is subject to all

13  objections as to competence, relevance, materiality, admissibility, or any and all other objections

14  that would require the exclusion of any statement contained herein, including if such statement

15  were made by a witness during deposition or present and testifying in court. All such objections

16  and grounds are reserved and may be interposed in any motion, at any hearing, at any deposition,

17  or at the time of trial.

18        17.    Best Buy reserves the right to designate the appropriate witness for each topic and

19  further reserves the right to change the designation of witnesses and/or topics to which they will

20  provide testimony. Best Buy further reserves the right to amend and/or supplement its General

21  and Specific Objections.

22        18.    Best Buy objects to the extent that the topics seek testimony regarding CRTs as

23  Best Buy is not making a claim for purchases of CRTs that are not incorporated into CRT

24  Products, and therefore interprets the topics as applying to CRT Products.

25        19.    The General and Specific Objections found herein in no way limit the ability of

26  Best Buy's counsel to state objections on the record during the actual taking of the deposition.

27

28

RESPONSES AND OBJECTIONS TO
FRCP RULE 30(B)(6) DEPOSITION NOTICE Case No.
11-CV-05513 SC; 07-CV-05944 SC

1

## SPECIFIC OBJECTIONS

2 **Topic No. 1**

3   Your overall corporate structure, including, the identification of departments within Best

4 Buy responsible for the purchase, sale, pricing, marketing or distribution of CRTs and/or CRT

5 Finished Products and their functions and the identification of any individuals that had managerial

6 responsibility for the purchase, sale, pricing, marketing or distribution of CRTs and/or CRT

7 Finished Products..

8 **Objection**

9   Best Buy objects on grounds of Undue Burden, Overbreadth and Relevance. Best Buy

10 specifically objects to this topic on the grounds of Overbreadth to the extent this topic is

11 duplicative of Defendants' First Set of Interrogatories. Subject to and without waiving these

12 objections, Best Buy will produce a witness to testify at a general level regarding this topic.

13 **Topic No. 2**

14

15   The location of Best Buy's purchasing operations for CRT or CRT Finished Products,

   including the location of price negotiations.
16
**Objection**
17
   Best Buy objects to this topic on the grounds of Overbreadth and Undue Burden. Subject
18
   to and without waiving these objections, Best Buy will produce a witness to testify at a general
19
   level regarding this topic.
20
**Topic No. 3**
21

22   The identity and general description of the CRTs and/or CRT Finished Products Best Buy

23 purchased, sold, marketed or distributed.

24 **Objection**

25   Best Buy objects to this topic on the grounds of Overbreadth and Undue Burden. Subject

26 to and without waiving these objections, Best Buy will produce a witness to testify at a general

27 level regarding this topic.

28

RESPONSES AND OBJECTIONS TO
FRCP RULE 30(B)(6) DEPOSITION NOTICE Case No.
11-CV-05513 SC; 07-CV-05944 SC

**Topic No. 4**

The identity of the Defendants from whom you purchased CRTs and/or CRT Finished Products, and the general and relative volume of CRTs and/or CRT Finished Products You purchased from them, including any changes over the Relevant Period.

**Objection**

Best Buy objects on grounds of Undue Burden and Overbreadth, as this information is reflected in Best Buy's transactional data already produced in these proceedings. Best Buy objects to the extent that the topic calls for information that Best Buy does not track or keep in the ordinary course of business. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 5**

The identity of any non-Defendant manufacturers, producers or distributors from whom you purchased CRTs and/or CRT Finished Products, and the general and relative volume of CRTs and/or CRT Finished Products You purchased from them, including any changes over the Relevant Period.

**Objection**

Best Buy objects on grounds of Undue Burden, and Overbreadth. Best Buy objects to the extent that the topic calls for information that Best Buy does not track or keep in the ordinary course of business. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 6**

Best Buy's purchase or acquisition of CRTs or CRT Finished Products, including: (a) whether Best Buy made any purchases for internal use; (b) whether Best Buy purchased any refurbished products; (c) whether and when Best Buy took physical possession of the purchased CRTs or CRT Finished Products; and (d) whether and when transfer of title to Best Buy occurred.

**Objection**

Best Buy objects on grounds of Undue Burden and Overbreadth. Best Buy objects to the extent that the topic calls for information that Best Buy does not track or keep in the ordinary course of business. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 7**

The factors Best Buy considered in determining (a) from which Defendant(s) and/or non-Defendant(s) to purchase CRTs and/or CRT Finished Products, and (b) which CRTs and/or CRT Finished Products to purchase from particular Defendants and non-Defendants.

**Objection**

Best Buy objects on grounds of Undue Burden and Overbreadth. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 8**

The process by which You negotiated, entered into, approved or ratified purchase agreements or contracts for CRT Finished Products, including: (a) Your policies and practices regarding the negotiation of terms and conditions of such sales contracts; (b) use of standardized sales or purchase contracts; (c) use of "MFN" (Most Favored Nation) or "MFC" (Most Favored Company) clauses or similar price-protection clauses; and (d) the identity and location of documents that relate to the matters specified in this topic.

**Objection**

Best Buy objects on grounds of Undue Burden and Overbreadth. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

RESPONSES AND OBJECTIONS TO
FRCP RULE 30(B)(6) DEPOSITION NOTICE Case No.
11-CV-05513 SC; 07-CV-05944 SC

**Topic No. 9**

Your participation in any discounts, promotions, rebates or advertising cooperative programs provided or sponsored by any Defendant or non-Defendant from whom You purchased CRT Finished Products.

**Objection**

Best Buy objects on grounds of Relevance, Undue Burden and Overbreadth. Best Buy objects to the extent that the topic calls for information that Best Buy does not track or keep in the ordinary course of business. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 10**

Best Buy's sales of CRTs or CRT Finished Products, including any sales by any person or entity purchasing or incorporating such CRTs or CRT Finished Products into other CRT Finished Products on Best Buy's behalf.

**Objection**

Best Buy objects on grounds of Vagueness, Undue Burden and Overbreadth. Best Buy objects to the extent that the topic calls for information that Best Buy does not track or keep in the ordinary course of business. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 11**

Your policies and practices for setting the price at which You sold CRT Finished Products to Your customers, including consideration or use of the following:

(a) commission costs;

(b) average costs;

(c) why pay prices;

RESPONSES AND OBJECTIONS TO
FRCP RULE 30(B)(6) DEPOSITION NOTICE Case No.
11-CV-05513 SC; 07-CV-05944 SC

Case 3:07-cv-05944-SC   Document 2582-2   Filed 07/01/15   Page 36 of 54

(d) meet-comping;

(e) alternative distribution channels;

(f) the percentage of price attributable to CRTs contained in CRT Finished Products sold;

(g) any increase of price that Best Buy quoted or charged to any customer that was

attributable to Best Buy's alleged overpayment of CRTs;

(h) below-cost pricing;

(i) bundled product or services pricing;

(j) most favored nation pricing;

(k) sale pricing;

(l) market development funds or demo budgets;

(m) advertising funds;

(n) non-price consideration;

(o) loss-leader pricing;

(p) early-pay discounts;

(q) "min sell prices";

(r) "closest thing to wholesale" prices;

(s) builder prices;

(t) spiffs or spivs; and

1    (u) if and how these policies, procedures, practices, methods, formulas, or factors vary by

2    purchaser.

3    **Objection**

4    Best Buy objects on grounds of Undue Burden and Overbreadth. Best Buy objects to the

5    extent that the topic calls for information that Best Buy does not track or keep in the ordinary

6    course of business. Subject to and without waiving these objections, Best Buy will produce a

7    witness to testify at a general level regarding this topic.

8    **Topic No. 12**

9    How Best Buy's CRT Finished Products were marketed for sale, including whether

10   factors other than price were evidenced in the marketing materials and how the marketing

11   strategy was determined and implemented for the CRT Finished Products sold.

12   **Objection**

13   Best Buy objects on grounds of Undue Burden and Overbreadth. Subject to and without

14   waiving these objections, Best Buy will produce a witness to testify at a general level regarding

15   this topic.

16   **Topic No. 13**

17

18   Your use of rebates in connection with the sale of CRT Finished Products to Your

19   customers.

20   **Objection**

21   Best Buy objects on grounds of Undue Burden and Overbreadth. Subject to and without

22   waiving these objections, Best Buy will produce a witness to testify at a general level regarding

23   this topic.

24   **Topic No. 14**

25   Other products that Your Company believed were viewed by Your customers as

26   alternatives to CRT Finished Products, including: (a) products other than CRT Finished Products;

27   (b) the reasons that You believe purchasers viewed such products to be alternatives to the CRT

28

RESPONSES AND OBJECTIONS TO
FRCP RULE 30(B)(6) DEPOSITION NOTICE Case No.
11-CV-05513 SC; 07-CV-05944 SC

Finished Products You purchased from the Defendants; (c) the extent to which these products had any effect on Your pricing decisions; and (d) the identity and location of Documents that relate to the matters specified in this topic.

**Objection**

Best Buy objects on grounds of Undue Burden and Overbreadth. Best Buy objects to the extent that the topic calls for information that Best Buy does not track or keep in the ordinary course of business. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 15**

Your policies and practices relating to Your decision to give priority to the promotion, advertising or sale of certain Defendants' CRT Finished Products over other Defendants' CRT Finished Products; to promote Defendants' CRT Finished Products over non-Defendants' CRT Finished Products; or to promote non-Defendants' CRT Finished Products over Defendants' CRT Finished Products.

**Objection**

Best Buy objects on grounds of Undue Burden and Overbreadth. Best Buy objects as vague as to "give priority to the promotion, advertising or sale" and as to the extent that the topic calls for information that Best Buy does not track or keep in the ordinary course of business. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 16**

All contracts or any other agreements relating to CRTs or CRT Finished Products between Best Buy and any entity, including the terms and conditions of any such contracts or agreements, including the scope of the agreement, choice of law, and forum selection.

**Objection**

Best Buy objects on grounds of Undue Burden, and Overbreadth. Best Buy further objects as vague as to "agreements relating to." Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 17**

Whether the CRTs contained in each of the CRT Finished Products on which Best Buy bases its claims were first shipped-to or billed-to a location outside the United States or inside the United States, and an explanation of how Best Buy made or would make that determination.

**Objection**

Best Buy objects on grounds of Undue Burden, and Overbreadth. Best Buy objects to the extent that the topic calls for information that Best Buy does not track or keep in the ordinary course of business. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 18**

The identity of the manufacturer of the CRT contained in each of the CRT Finished Products on which Best Buy bases its claims, and an explanation of how Best Buy has made or would make that identification.

**Objection**

Best Buy objects on grounds of Undue Burden, and Overbreadth. Best Buy objects to the extent that the topic calls for information that Best Buy does not track or keep in the ordinary course of business. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 19**

Your practices, policies and procedures concerning Your market monitoring activity for CRT Finished Products including, but not limited to the following: (a) Your competitive intelligence activities; (b) Your use of third-party data sources and market share/data analyses;

13

1 and (c) Your knowledge, use, and tracking of Your competitors pricing for CRT Finished

2 Products during the Relevant Time Period.

3 **Objection**

4       Best Buy objects on grounds of Vagueness, Undue Burden, and Overbreadth. Best Buy

5 further objects on relevance as this topic is not reasonably calculated to lead to the discovery of

6 admissible evidence. For the foregoing reasons, Best Buy will not produce a witness on this topic.

7 **Topic No. 20**

8

9       Best Buy's suspicions or beliefs that any manufacturer of CRTs was engaged in any

anticompetitive conduct relating to CRTs and the circumstances (including dates) surrounding,

10

and reasons for and sources of, such suspicions or beliefs, and any formal or informal

11

investigations conducted by Best Buy to confirm or deny such suspicions or beliefs.

12

13 **Objection**

14       Best Buy objects on grounds of Privilege, Work Product, Undue Burden, and

Overbreadth. Best Buy objects to the extent that the topic calls for information that Best Buy does

15

not track or keep in the ordinary course of business. Subject to and without waiving these

16

objections, Best Buy will produce a witness to testify at a general level regarding this topic.

17

18 **Topic No. 21**

19       The identification, description, date, location, source, and persons involved in all

20 statements that Best Buy read, heard, or otherwise became aware of upon which Best Buy bases

21 its contention that Defendants fraudulently concealed the alleged conspiracy from Best Buy,

22 including a description of Best Buy's reliance on any such statements.

23 **Objection**

24       Best Buy objects on grounds of Vagueness, Overbreadth, Work Product and Privilege and

25 improper contention discovery. Best Buy further objects to the extent that the topic calls for

26 information that is known to the Defendants and not Best Buy and/or that Best Buy does not track

27 or keep in the ordinary course of business. Best Buy will not produce a witness to testify on this

28 topic.

**Topic No. 22**

The method(s) used by Your Company to track inventory levels, link returns and sales, and monitor product margins of CRT Finished Products You sold.

**Objection**

Best Buy objects on grounds of Undue Burden, and Overbreadth. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 23**

Your standards and practices with regard to tracking the purchases and sales of CRT Finished Products for determining the profitability of sales, and for financial reporting purposes, including the nature of the financial data available, the location of such data, and the names of individuals responsible for maintaining such data.

**Objection**

Best Buy objects on grounds of Undue Burden, and Overbreadth. Best Buy objects to the extent that the topic calls for information that Best Buy does not track or keep in the ordinary course of business. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 24**

Your policies and practices related to the retention and deletion of all Documents and data (including any of Your electronic databases) related to the purchases and sales listed in Topics 6 and 11.

**Objection**

Best Buy objects on grounds of Undue Burden, and Overbreadth. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 25**

The extent to which Best Buy passed on its costs in purchasing or acquiring CRTs or CRT Finished Products to its customers, including pricing practices and timing of price increases, but not including precise figures or total amounts of price margins.

**Objection**

Best Buy objects on grounds of Undue Burden, and Overbreadth. Best Buy objects to the extent that the topic calls for information that Best Buy does not track or keep in the ordinary course of business. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 26**

The assignment of any claims asserted in the Complaint, including the identification of the assignees, the identification of the assignors, the mechanism or form of said assignments, the consideration received for any such assignment, and any agreements or plans for the distribution of damages or settlement proceeds recovered in this action to the assignors.

**Objection**

Subject to and without waiving the General objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 27**

Best Buy's search for, production of, and all efforts to preserve any documents that are potentially relevant to this or any other litigation or investigation concerning CRTs or CRT Finished Products.

**Objection**

Best Buy objects on grounds of Privilege, Work Product, Undue Burden, and Overbreadth. Subject to and without waiving these objections, Best Buy will produce a witness to testify at a general level regarding this topic.

**Topic No. 28**

Identification, location, last known address, telephone number, and e-mail address of any person having or believed to have any information regarding the foregoing topics or facts underlying these topics.

**Objection**

Best Buy objects on grounds of Relevance, Undue Burden, and Overbreadth. Best Buy also specifically objects to this topic on the grounds of Undue Burden because such information is obtainable by less intrusive means. Best Buy believes this topic can be resolved through an interrogatory or the informal exchange of information relevant to Best Buy's data production, as is already occurring between the parties. For the foregoing reasons, Best Buy will not produce a witness on this topic.

**Topic No. 29**

Identification, location, last known address, telephone number, and e-mail address of any person having or believed to have any documents or other electronic or non-electronic files regarding the foregoing topics or facts underlying these topics, including any person having or believed to have information regarding each of the fields contained in such files and the means by which those fields were constructed.

**Objection**

Best Buy objects on grounds of Relevance, Undue Burden, and Overbreadth. Best Buy also specifically objects to this topic on the grounds of Undue Burden because such information is obtainable by less intrusive means. Best Buy believes this topic can be resolved through an interrogatory or the informal exchange of information relevant to Best Buy's data production, as is already occurring between the parties. For the foregoing reasons, Best Buy will not produce a witness on this topic.

RESPONSES AND OBJECTIONS TO
FRCP RULE 30(B)(6) DEPOSITION NOTICE Case No.
11-CV-05513 SC; 07-CV-05944 SC

1  DATED: April 25, 2014          ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2

3                                 By:   /s/ David Martinez
                                       Roman M. Silberfeld
                                       David Martinez
4                                      Laura E. Nelson
                                       Jill Casselman
5
                                  ATTORNEYS FOR PLAINTIFFS
6                                 BEST BUY CO., INC.; BEST BUY PURCHASING
                                  LLC; BEST BUY ENTERPRISE SERVICES, INC.;
7                                 BEST BUY STORES, L.P.; BESTBUY.COM, L.L.C.;
                                  MAGNOLIA HI-FI, LLC
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18