# EXHIBIT "G"

1  Honorable Vaughn R Walker (Ret)
2  Law Office of Vaughn R Walker
   Four Embarcadero Center, Ste 2200
3  San Francisco, CA  94111
   T:  (415) 871-2888
4  F:  (415) 871-2890
5
6
7
8
9
10
11            IN THE UNITED STATES DISTRICT COURT
12            NORTHERN DISTRICT OF CALIFORNIA
13               SAN FRANCISCO DIVISION
14
15  IN RE CATHODE RAY TUBE (CRT)
16  ANTITRUST LITIGATION,                    Case No:  07-cv-5944-SC
                                             MDL No 1917
17  BEST BUY,
                            Plaintiff,
18       v
                                             **ORDER RE BEST BUY'S MOTION**
19  PANASONIC,                               **FOR PROTECTIVE ORDER**
20                          Defendant.
21
22
23
24
25
26
27
28

1

2   On June 23, 2014, the undersigned conducted a telephone conference with counsel for

3   Best Buy (David Martinez of Robbins Kaplan Miller & Ciresi, LLP) and counsel for Panasonic who was

4   also speaking for the other defendants in the above litigation (Eva Cole of Winston & Strawn, LLP).

5   The conference addressed Best Buy's motion for a protective order directed to: (1) Panasonic's FRCP

6   30(b)(6) deposition notice to Best Buy dated November 20, 2012; and (2) Interrogatory Nos 16 and 17

7   of Panasonic's Third Set of Interrogatories. As a result of the conference and pursuant to FRCP 53

8   and the order of reference herein, the undersigned directed, that the motion for protective order be

    denied as to (1) and granted as to (2).

9           The parties' dispute arises from defendants' effort to seek discovery related to Best

10  Buy's practice of "competitive intelligence" about its competitors' pricing practices. Best Buy attacks

11  the relevance of Panasonic's discovery on this topic and, in any event, argues that this discovery is

12  precluded by the <u>Kiefer-Stewart Co v Joseph E Seagram & Sons, Inc</u>, 340 US 211 (1951) line of cases

13  dealing with discovery of an antitrust plaintiff's practices, including evidence of contact with

14  competitors. The undersigned rejects Best Buy's argument that this discovery is not relevant to the

15  issues herein. Discovery directed to the setting of prices for finished products charged by Best Buy

16  and other retailers could well lead to the discovery of relevant evidence concerning the extent to

17  which, if at all, alleged overcharges were passed on by Best Buy and/or by entities above Best Buy in

18  the distribution channels for products containing CRTs as well as both the fact of damages and their

19  amounts, if any.

20          More persuasively, Best Buy argues that the burden and expense of having fully to

21  answer the challenged interrogatories likely exceeds the value of the information that would be

22  produced. Interrogatory No 16, for example, asks Best Buy to identify all "executives, employees and

23  agents" who participated in so-called "competitive monitoring activity," "market share/data

    analyses," "knowledge, use or tracking" of competitors' prices and promotions and suppliers' prices.

24  Obviously, thorough and complete responses to these questions would likely identify a great many

25  persons scattered throughout the Best Buy organization as well as Best Buy's "agents," which

26  presumably could embrace third parties that Best Buy uses to compile information of this kind.

27  Compiling thorough and complete responses to Interrogatory Nos 16 and 17 would entail a significant

28

1   amount of attorney time and that of Best Buy personnel, as well.  Finally, Interrogatory No 16

2   contains a subpart (g) which seeks to have Best Buy identify its "executives', employees' and agents'

3   participation in any meetings with" competitors.  This line of inquiry seems foreclosed by the Keifer-

4   Stewart line of cases.

5         The value of the level of detail called for by Interrogatory Nos 16 and 17 seems

6   particularly questionable when Panasonic should be able to obtain a substantially complete picture of

7   Best Buy's "competitive intelligence" practices from the Rule 30(b)(6) deponent whose deposition

8   Panasonic has noticed.  To be sure, this assumes that the deponent will be truly knowledgeable,

9   having made a diligent effort to obtain a comprehensive picture of Best Buy's "competitive

10  intelligence" program.  Good faith on the part of counsel and the parties herein is presumed and, it is

11  hoped, will be realized.

12        Hence, the undersigned ORDERS that Best Buy's motion for protective order be

13  GRANTED as to Interrogatory Nos 16 and 17 of Panasonic's Third Set of Interrogatories and otherwise

14  DENIED.

15

16  IT IS SO ORDERED.

17

18  Dated: June 23 , 2014

19

20

21  By: _____

22                    Vaughn R Walker
                United States District Judge (Ret)

23

24

25

26

27

28

# EXHIBIT "H"

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 |
| | Case No. C-07-5944-SC |
| This Order Relates To: | ORDER DENYING BEST BUY'S OBJECTIONS TO THE SPECIAL MASTER'S ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PROTECTIVE ORDER |
| Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al., No. 11-cv-05513-SC; | |
| Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264-SC | |

## I.   **INTRODUCTION**

Now before the Court is Direct Action Plaintiffs ("DAPs") the Best Buy entities'[1] ("Best Buy") objection to the Special Master's[2] Order ("Order") granting in part and denying in part Best Buy's motion for protective order.  ECF No. 2689 ("Objection") (filed

---

[1] The Best Buy entities are Best Buy Co, Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., BestBuy.Com, LLC, and Magnolia Hi-Fi, LLC.  ECF No. 2689 ("Objection") at 1 n.1.

[2] On December 17, 2013 the Court appointed the Honorable Vaughn R. Walker, United States District Judge (Retired), as a Special Master to assist the Court with discovery matters.  ECF No. 2272.

**United States District Court**
For the Northern District of California

under seal).[3]  Defendants oppose Best Buy's objection, and argue
the Court should deny the objection and affirm the Special Master's
order.  ECF No. 2685 ("Response").  Although Best Buy requests the
Court order a hearing and set a briefing schedule as permitted by
Local Rule 72-2, the Court finds neither is necessary.  See Civ.
L.R. 72-2 ("Unless otherwise ordered by the assigned District
Judge, no response need be filed and no hearing will be held
concerning the motion.  The District Judge may deny the motion by
written order at any time . . . .").  As a result, Best Buy's
objection is ripe for disposition without oral argument.  Civ. L.R.
7-1(b).  As set forth below, the Court AFFIRMS the Special Master
and DENIES the objection.

## II.  BACKGROUND

The parties are familiar with the factual and procedural
background of the case, so an exhaustive review is unnecessary.
The facts relevant to the motion are set forth below.  Defendants
are allegedly manufacturers of cathode ray tubes ("CRTs") and, in
some cases, of finished products as well.  Best Buy, along with the
other DAPs, alleges that Defendants conspired to fix prices for
CRTs.  The DAPs do not allege that Defendants conspired to fix the

---

[3] Best Buy previously filed an objection to the Special Master's
order that exceeded the five page limit under Civil Local Rule 72-
2.  ECF No. 2677.  After Defendants pointed out the issue, Best Buy
filed an amended version.  ECF No. 2689.  The Court's order
appointing the discovery master sets forth the procedure for
objections to the Special Master's orders and incorporates the
procedures (including page limits) contained in Civil Local Rule
72-2.  ECF No. 2272, at 4-5.  Accordingly, Best Buy's earlier
objection is STRICKEN except for the accompanying Declaration of
David Martinez and exhibits containing the record necessary for the
Court's review of the Special Master's order.  ECF No. 2677-1
(filed under seal).

**United States District Court**
For the Northern District of California

1   prices of products containing CRTs.  Each DAP alleges that it

2   bought at least one CRT product from a defendant or an entity owned

3   or operated by a defendant.

4       On May 16, 2014, Best Buy filed a motion for a protective

5   order barring discovery into Best Buy's competitive intelligence

6   practices before the Special Master.  ECF No. 2677-1 ("Martinez

7   Decl.") Ex. 1 ("Mot.") at 1 (filed under seal).  The competitive

8   intelligence practices are a part of Best Buy's broader price match

9   guarantee program, by which Best Buy agrees to match any lower

10   prices offered by their competitors.  Mot. at 2.  These practices

11   amount to: (1) contacting competitors to confirm customers'

12   pricing, (2) monitoring competitor advertisements and other records

13   publicly displaying pricing information, and (3) subscribing to

14   industry analyst reports and attending analyst calls.  Id.

15       Defendants seek two forms of discovery into Best Buy's

16   competitive intelligence practices.  First, they seek to depose

17   Best Buy's Rule 30(b)(6) designee regarding Best Buy's:

19-22
> [P]ractices, policies and procedures concerning Your market monitoring activities for CRT Finished Products including, but not limited to the following: (a) Your competitive intelligence activities; (b) Your use of third-party data sources and market share/data analyses; and (c) Your knowledge, use and tracking of Your competitor's [sic] pricing for CRT Finished Products during the Relevant Time Period . . . .

24   Objection at 2-3.  Second, Defendants propounded two

25   interrogatories also seeking information regarding the competitive

26   intelligence practices, including (1) the participation of Best

27   Buy's executives in the competitive intelligence practices or other

28   market monitoring activities, and (2) Best Buy's "executives',

Case3:07-cv-05944-SC Document2744-3 Filed 07/28/14 Page9 of 18

1   employees', or agents' participation in any meetings with [Best

2   Buy's] competitors."  Id. at 3.

3        In the briefing before the Special Master, Best Buy argued

4   that the information sought in these requests was irrelevant under

5   Supreme Court precedent and subsequent case law, and, even if

6   relevant, the burden of ordering discovery outweighed any potential

7   benefit.  Mot. at 4-9.  Defendants disagreed, arguing that the

8   information sought was both relevant and discoverable.  Martinez

9   Decl. Ex. 2 ("Opp'n") at 2 (filed under seal).  After a telephone

10  conference on June 23, 2014 at which both Best Buy and Defendants'

11  counsel were heard, the Special Master issued an order denying Best

12  Buy's motion as to the Rule 30(b)(6) deposition and granting a

13  protective order as to the interrogatories.  On July 7, 2014, Best

14  Buy filed an objection with the Court seeking review of the Special

15  Master's order.  ECF No. 2677.

16

17  **III. <u>LEGAL STANDARDS</u>**

18       **A.   <u>Review of Orders by the Special Master</u>**

19       The Court reviews the Special Master's factual findings for

20  clear error, his legal conclusions <u>de novo</u>, and his procedural

21  decisions for abuse of discretion.  Fed. R. Civ. P. 53(f)(3)-(5);

22  ECF No. 302 (appointing the initial special master).

23       **B.   <u>Motion for Protective Order</u>**

24       Federal Rule of Civil Procedure 26(c) permits the Court, upon

25  a showing of good cause, to "issue an order to protect a party or

26  person from annoyance, embarrassment, oppression, or undue burden

27  or expense."  The Court must undertake a two-step inquiry in

28  deciding whether the information sought is discoverable.  First,

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

the Court must determine if the material sought is "relevant to any party's claim or defense." <u>Id.</u> at (b)(1). Such evidence need not be clearly admissible at trial so long as the request is "reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u> Second, the Court must weigh the burden of the discovery sought against its likely benefit. <u>Id.</u> at (b)(2)(C)(iii).

**IV.  <u>DISCUSSION</u>**

While Best Buy's objection dices the issues differently, their objection challenges the Special Master's answers to two key questions. First, is evidence of how Best Buy's competitive intelligence practices function relevant, particularly given the Supreme Court's decision in <u>Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.</u>, 340 U.S. 211 (1951) and subsequent case law? Second, if such evidence is relevant, does the burden of discovery outweigh its likely benefit? The Court reviews the Special Master's decisions on both questions <u>de novo</u>.

**A. <u>Relevance of the Competitive Intelligence Program</u>**

First, Best Buy argues, citing the Supreme Court's decision in <u>Kiefer-Stewart</u> and subsequent cases, that the evidence sought is irrelevant because "[i]t is black letter law that evidence of an antitrust plaintiff's own conduct is irrelevant and cannot excuse the defendants' conspiratorial conduct." Mot. at 5 (citing <u>Perma Life Mufflers v. Int'l Parts Corp.</u>, 392 U.S. 134, 139-40 (1968); <u>Kiefer-Stewart</u>, 340 U.S. at 214, <u>overruled on other grounds</u>, <u>Copperweld Corp. v. Independence Tube Corp.</u>, 467 U.S. 752, 781-82 (1984); <u>Memorex Corp. v. IBM Corp.</u>, 555 F.2d 1379, 1381-82 (9th

**United States District Court**
For the Northern District of California

1    Cir. 1977); Wilk v. Am. Med. Ass'n, 719 F.2d 207, 232 (7th Cir.

2    1983)).  Anticipating some of Defendants' arguments in opposition,

3    Best Buy cites cases from other district courts rejecting several

4    arguments as to the relevance of a plaintiff's communications with

5    third parties or sales practices.  See, e.g., In re Polyester

6    Staple Antitrust Litig., No. 3:03CV1516, 2005 WL 6457181, at *4

7    (W.D.N.C. May 9, 2005) (rejecting relevance argument based on the

8    need to "rebut any inference that communication amongst competitors

9    necessarily means the parties are engaging in an illegal

10   conspiracy"); In re Auto. Refinishing Paint Antitrust Litig., No.

11   MDL 1426, 2006 WL 1479819, at *8 (E.D. Pa. May 26, 2006) (casting

12   aside the contention that discovery might show, inter alia, the

13   highly competitive nature of the relevant industry, and the prices

14   that "Defendants may have charged in a 'but for' world"); In re

15   Aspartame Antitrust Litig., No. 2:06-CV-1732-LDD, 2008 WL 2275528,

16   at *4 (E.D. Pa. Apr. 8, 2008) (denying a motion to compel as to

17   plaintiffs' communications with third parties despite the argument

18   such communications were relevant to show "buying power, market

19   position and demand elasticity").  Finally, Best Buy argues that

20   the policy concerns underlying the antitrust laws would be

21   undermined by permitting discovery into downstream activities.

22   Mot. at 7 (citing Meijer, Inc. v. Abbott Labs., 251 F.R.D. 431,

23   433-34 (N.D. Cal. 2008)).

24       In opposition, Defendants offer three reasons why the

25   discovery they seek is relevant.  First, Defendants argue that

26   discovery into the competitive intelligence program is relevant

27   because it shows how Best Buy and their competitors priced their

28   products.  Opp'n at 2.  This is likely to lead to the discovery of

United States District Court
For the Northern District of California

1  admissible evidence here, Defendants contend, because the indirect

2  purchaser plaintiffs ("IPPs") claim that Best Buy and other

3  retailers passed on 100 percent of the conspiratorial CRT

4  overcharges and because Best Buy is likely to be an important

5  third-party witness in the IPPs' case.  Id.  Second, Defendants

6  claim that discovery into the competitive intelligence program is

7  relevant to Best Buy's ability to show injury-in-fact.  Id. at 10-

8  11.  Finally, Defendants contend that the discovery sought is

9  relevant as it will enable them to rebut charges by Best Buy (or

10 other plaintiffs) that competitor contacts and price monitoring is

11 indicative of a conspiracy.  Id. at 11-13.  In support of these

12 arguments Defendants rely principally on two cases.  First, they

13 cite to Judge Illston's orders, also involving Best Buy's

14 competitive intelligence practices, in the In re TFT-LCD Flat Panel

15 Antitrust Litigation, No. 07-MD-1827 (N.D. Cal.).  In the TFT

16 cases, Best Buy submitted to discovery on their competitive

17 intelligence practices, the Court denied a motion in limine to

18 exclude evidence obtained regarding those practices, and the

19 evidence was admitted in both the direct purchaser trial and

20 individual opt-out trials.  Opp'n at 11-12, n.38 (citing 07-MD-1827

21 (N.D. Cal.) ECF Nos. 5776, 8298).  Second, Defendants argue that In

22 re Urethane Antitrust Litigation, No. 04-MD-1616-JWL, 2010 WL

23 5287675 (D. Kan. Dec. 17, 2010) is "precisely on point."  Opp'n at

24 12.  In Urethane, the Magistrate Judge granted a motion to compel

25 responses to discovery requests seeking information related to

26 plaintiffs' communications with competitors, finding that the

27 information sought was potentially relevant to "refute plaintiffs'

28 claims that similar conduct by defendants is indicative of

collusion." Id. at *5; see also In re Urethane Antitrust Litig.,
No. 04-1616-JWL, 2011 WL 1327988, at *5-6 (D. Kan. Apr. 5, 2011)
(affirming the Magistrate's decision).

In his order, the Special Master rejected Best Buy's argument
that the discovery sought was irrelevant. Specifically, the
Special Master found that:

> Discovery directed to the settling of prices for finished
> products charged by Best Buy and other retailers could
> well lead to discovery of relevant evidence concerning
> the extent to which, if at all, alleged overcharges were
> passed on by Best Buy and/or by entities above Best Buy
> in the distribution channels for products containing CRTs
> as well as both the fact of damages and their amounts, if
> any.

Order at 1. In doing so, the Special Master disagreed with Best
Buy's reliance on Kiefer-Stewart and other cases discussing
discovery into an antitrust plaintiff's practices and competitor
contacts. Id. Nonetheless, the Special Master did remark that
subpart (g) of Interrogatory No. 16, which requests Best Buy
identify its "executives', employees' and agents' participation in
any meetings with" competitors, "seems foreclosed by the Keifer-
Stewart line of cases." Id. at 2.

The Court agrees with the Special Master in every relevant
respect.[4] Here, the discovery sought is relevant for three

---

[4] The Court does question the Special Master's conclusion that the
type of inquiry in Interrogatory No. 16(g) would be barred by the
Kiefer-Stewart line of cases. The Court would agree with this view
were it to find, as it seems the Special Master did, that discovery
into Best Buy's competitive intelligence practices is relevant only
as to the issues of pass-through and damages. However the Court
goes a step further than the Special Master and finds that the
discovery sought by Defendants is also relevant to rebut any
charges that competitive contacts and price monitoring are
circumstantial evidence of an illegal conspiracy. See Urethane,
2011 WL 1327988, at *6. Nonetheless, as discussed infra, the Court
concurs with the Special Master's weighing of the burdens and
benefits of Defendant's interrogatories. Therefore, the Special

**United States District Court**
For the Northern District of California

1  reasons.

2      First, the Court concurs with the Special Master's conclusion

3  that <u>Kiefer-Stewart</u> and its progeny do not bar all discovery into

4  an antitrust plaintiff's activities.  Specifically, <u>Kiefer-Stewart</u>

5  concluded that antitrust violations by a plaintiff cannot immunize

6  defendants from liability for their own violations.  340 U.S. at

7  214.  While the subsequent cases cited by Best Buy apply various

8  aspects of that principle to the discovery context, Best Buy has

9  not offered any support for the blanket contention that an

10  antitrust plaintiff's activities are always irrelevant and outside

11  the scope of discovery.  To the contrary, as one of Best Buy's

12  cases concluded, information about plaintiffs' activities is

13  relevant in cases, such as this one, where the amount of any pass-

14  through to indirect purchasers is likely to be an issue.  <u>See,</u>

15  <u>e.g.</u>, <u>Polyester Staple</u>, 2005 WL 6457181, at *4-5 (concluding that

16  discovery into downstream activities by plaintiffs was potentially

17  relevant to the amount of any pass-through).  Simply because

18  Defendants cannot claim that Best Buy's activities immunize them

19  from liability does not mean the information sought cannot be

20  relevant for other purposes.

21      Second, and relatedly, Best Buy's argument that "the policy

22  precluding discovery into an antitrust plaintiff's conduct bars

23  Defendants' discovery irrespective of any relevance" also fails.

24  Objection at 4.  It may be true that the policy underlying the

25  antitrust laws militates against permitting broad discovery against

26  antitrust plaintiffs where, for instance, the discovery sought

27

28  Master's decision granting in part and denying in part the motion
    need not be disturbed.

**United States District Court**
For the Northern District of California

1    would simply enable the defendant to shift attention away from an

2    otherwise illegal and actionable scheme or assert an improper pass-

3    on defense.  However such a policy is not implicated in this case.

4    Unlike the situation at issue in the cases cited by Best Buy, here

5    discovery about the downstream pricing activities of Best Buy is

6    not being sought to allege a price fixing conspiracy by Best Buy.

7    Accordingly, permitting discovery here does not run the risk of

8    chilling private enforcement of the antitrust laws, as in the cases

9    offered by Best Buy.  See, e.g., Perma Life Mufflers, 392 U.S. at

10   139-40; Meijer, 251 F.R.D. at 433-34.  Instead, Defendants are

11   seeking the instant discovery because it is directly relevant to

12   the question of how, and in what amount, any potential overcharges

13   were passed through to other plaintiffs.

14        Best Buy dedicates much of its reply brief and objection to

15   two remaining points.  First, Best Buy contends that discovery into

16   the results of the competitive intelligence practices, which they

17   concede might be relevant, would simply be duplicative given the

18   extent of previous discovery on pass-through.  Second, Best Buy

19   argues that the court should distinguish between this allegedly

20   completed discovery on pass-through and discovery into "how Best

21   Buy obtained competitor information," which they argue is wholly

22   irrelevant.  The Court is unmoved.  First, Best Buy's complaints

23   about having already submitted to discovery into its pricing

24   practices and their relevance to the pass-through issue go to the

25   Court's weighing of the benefits and burdens of discovery -- not to

26   the relevance issue.  Second, even if the distinction between the

27   pass-through itself and "how" the competitive intelligence program

28   works were a meaningful one, that distinction would only undermine

1  Defendants' arguments as to pass-through and damages.  Evidence of
2  how the competitive intelligence program operates might still be
3  admissible (or at least lead to the discovery of admissible
4  evidence) at trial to rebut allegations that competitor contacts
5  and price monitoring are indicative of the existence of a
6  conspiracy as they were in <u>TFT</u>.  <u>See also</u> <u>Urethane</u>, 2011 WL
7  1327988, at *6.

8       As a result the Court concurs with the Special Master's
9  findings as to the relevance of the discovery sought here.  The
10 discovery sought by Defendants is relevant to the issues of pass-
11 through, injury, and to rebut any argument that competitor
12 communications and price monitoring are indicative of an improper
13 conspiracy.

14      **B.**   **Weighing the Burdens and Benefits of Discovery**

15      Next, the Court must weigh the burden of discovery against its
16 likely benefits.  Fed. R. Civ. P. 26(b)(2)(C)(iii).  In doing so,
17 the Court considers "the needs of the case, the amount in
18 controversy, the parties' resources, the importance of the issues
19 at stake in the action, and the importance of discovery in
20 resolving those issues."  <u>Id.</u>

21      In Best Buy's briefing before the Special Master, it argued
22 that because it has already submitted to prior discovery on the
23 issue of pass-through and competitive contacts, the burden of
24 discovery is greater than its likely benefit.  Specifically, Best
25 Buy points to a 2012 document production and prior 30(b)(6)
26 deposition involving information relevant to Best Buy's pricing and
27 "the competitive landscape," as rendering the current requests
28 duplicative and burdensome.  Mot. at 2-3.  Further, they complain

that the 30(b)(6) deposition at issue involves 26 topics, including
"dozens of sub-topics." Id. at 9. Defendants counter, noting the
enormous financial stakes in this case, and contending that Best
Buy mischaracterized the extent of discovery already taken in this
case. Opp'n at 2-3, 14. Specifically, they note that "[t]here is
nothing extraordinary or burdensome about requiring a corporate
plaintiff to submit to a deposition, even if it involves multiple
days or deponents, particularly where, as here, a discovery
protocol explicitly allows just such a scenario." Id. at 14.
Furthermore, Best Buy complains that in the time since the Special
Master's order, Defendants have noticed four more depositions which
they apparently intend to take between now and September 5, 2014.
Objection at 3.

The Special Master concluded that while the burden of
responding to Defendants' interrogatories outweighed the benefits,
the same was not true with regard to the 30(b)(6) deposition. The
Court agrees. First, and most importantly, as the Court has
already concluded, the discovery sought here is relevant and
important not just to parties' claims or defenses, but to one of
the most central remaining issues in the litigation -- the question
of pass-through. Given the centrality of this issue to the case,
the Court is loath to deny discovery on the issue to any party.
Second, as mentioned above, the amount in controversy in this case
is enormous, and, as in any complex multidistrict litigation, the
parties have all submitted to and propounded extensive discovery.
Third, the parties are all sophisticated, well-advised by able (and
expensive) lawyers, and certainly not lacking in resources.

Finally, additional factors convince the Court that the

12

Special Master appropriately weighed the burden of discovery.
First, the objected deposition topic on the competitive
intelligence program is only one of 26 topics to be covered at the
30(b)(6) deposition -- the remainder of which Best Buy does not
object to.  Furthermore, as Defendants state (and Best Buy does not
dispute), the parties understood that Defendants would take further
30(b)(6) deposition testimony once Best Buy completed document
discovery.  Particularly when compared to the level of detail
required by Interrogatories Nos. 16 and 17, examination on this
issue in a 30(b)(6) deposition would entail significantly less
expenditure of time, money, and effort.  Further militating in
favor of the deposition and against the interrogatories, the Court
shares the Special Master's concern that requiring answers to the
interrogatories may require Best Buy to go through a lengthy and
expensive process of reviewing its competitive intelligence
program's records to identify what may well be a large number of
individuals who participated in the program.  It seems unlikely
that this inquiry, if completed would lead to the discovery of
significant evidence above that gained in the 30(b)(6) deposition.

**IV. <u>CONCLUSION</u>**

As a result, the Court AFFIRMS the Special Master's order
granting in part and denying in part Best Buy's motion for a
protective order and DENIES Best Buy's objection.


IT IS SO ORDERED.


Dated: July 28, 2014                    _____
                                        UNITED STATES DISTRICT JUDGE

# EXHIBIT I
# [Highly Confidential – Filed Under Seal]