Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,
Toshiba America, Inc., Toshiba America
Consumer Products, LLC, Toshiba America
Information Systems, Inc., and Toshiba
America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC MDL No. 1917 |
| This Document Relates to: *The Indirect Purchaser Action* | **THE TOSHIBA DEFENDANTS' MOTION TO DECERTIFY THE STATEWIDE IPP CLASSES FOR DAMAGES** **ORAL ARGUMENT REQUESTED** Date:      August 7, 2015 Time:      10:00 a.m. Before:   Hon. Samuel Conti |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ..................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.    STATEMENT OF THE ISSUES ..................................................................... 1

II.   INTRODUCTION ........................................................................................... 1

III.  PROCEDURAL HISTORY ............................................................................ 4

IV.   ARGUMENT .................................................................................................. 5

      A.   The IPP Classes Do Not Meet the Threshold Requirement of Present
           Ascertainability ................................................................................... 6

      B.   The IPP Classes Do Not Meet the Requirements of Rule 23 Because
           the IPPs Have No Methodology to Measure Impact on a Class-wide
           Basis ................................................................................................... 15

V.    CONCLUSION .............................................................................................. 19

THE TOSHIBA DEFENDANTS' MOTION TO DECERTIFY
THE STATEWIDE IPP CLASSES FOR DAMAGES
Case No. 07-5944 SC, MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

# TABLE OF AUTHORITIES

**Case**                                                           **Page(s)**

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  No. 10-4387 PJH, 2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ..................................... 6, 7, 17

*Berger v. Home Depot USA, Inc.*,
  741 F.3d 1061 (9th Cir. 2014).......................................................................................... 7

*Blades v. Monsato Co.*,
  400 F.3d 562 (8th Cir. 2005)............................................................................................ 5

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ......................................................................................................... 6

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013)..........................................................................7, 13, 14, 15

*Comcast v. Behrend*,
  133 S. Ct. 1426 (2013) ............................................................................................... 6, 16

*Cook v. Rockwell Int'l Corp.*,
  181 F.R.D. 473 (D. Colo. 1988)....................................................................................... 5

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1982) ......................................................................................................... 2

*Estrella v. Freedom Financial Network, LLC*,
  No. 09-CV-03156-SI; 2012 WL 214856 (N.D. Cal. Jan 24, 2012) ................................. 2

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982)..................................................................................................... 1, 16

*In re Clorox Consumer Litig.*,
  301 F.R.D. 436 (N.D. Cal. 2014) ................................................................................... 14

*In re Flash Memory Antitrust Litig.*,
  No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 2010).............................. 3, 10, 18

*In re Graphics Processing Units Antitrust Litig.*,
  253 F.R.D. 478 (N.D. Cal. 2008) .............................................................................. 18, 19

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008)........................................................................................... 17

*In re Phenylpropanolamine Prods. Liability Litig.*,
  214 F.R.D. 614 (W.D. Wash. 2003)............................................................................... 10

*In re POM Wonderful LLC,*
   No. ML 10–02199 DDP (RZx), 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ..... 5, 6, 9, 16

*In re Optical Display Disk Drive Antitrust Litig.,*
   303 F.R.D. 311 (N.D. Cal. 2014) ................................................................. 16, 18

*Mazur v. eBay Inc.,*
   257 F.R.D. 563 (N.D. Cal. 2009) ........................................................................ 10

*Mazza v. Am. Honda Motor Co., Inc.,*
   666 F.3d 581 (9th Cir. 2012) ............................................................................... 6

*O'Connor v. Boeing North American, Inc.,*
   197 F.R.D. 404 (C.D. Cal 2000) ...................................................................... 2, 5

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) ................................................................................ 1

*Richard v. Hosp. Housekeeping Sys. GP, LLC,*
   No. 09-6788, 2010 WL 4668468 (E.D. La. Nov. 4, 2010) ................................. 12

*Ries v. Ariz. Beverages USA LLC,*
   No. 10-cv-01139, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) ..................... 5, 6

*Rodriguez v. West Pub'l Corp.,*
   563 F.3d 948 (9th Cir. 2009) ................................................................................ 1

*Sethavanish v. ZonePerfect Nutrition Co.,*
   No. 12-2907-SC, 2014 WL 580696 (N.D. Cal. Feb. 13, 2014) ..... 2, 6, 10, 13, 15

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) ................................................................................... 6, 16

*Werdebaugh v. Blue Diamond Growers,*
   No. 12-CV-02724-LHK, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) .......... 2, 5

*Wolph v. Acer America Corp.,*
   272 F.R.D. 477 (N.D. Cal. 2011) .......................................................................... 6

*Zisner v. Accufix Research Inst. Inc.,*
   253 F.3d 1180 (9th Cir. 2001) .............................................................................. 6

*Zisner v. Accufix Research Inst. Inc.,*
   273 F.3d 1266 (9th Cir. 2001) .............................................................................. 6

**Rules**

Fed. R. Civ. P. 23(b)(3) ....................................................................................... 16

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 7, 2015, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Samuel Conti, the Toshiba Defendants will and hereby do move the Court for an order decertifying the Indirect Purchaser Plaintiff ("IPPs") statewide classes for damages.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declaration of J. Frank Hogue and accompanying exhibits, the complete files and records in this action, oral argument of counsel, authorities that may be presented at or before the hearing, and such other and further matters as this Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF THE ISSUES

1.      Whether the statewide IPP classes for damages should be decertified because the record as developed over the course of this case has established that—contrary to the IPPs' representations at the class-certification stage—membership in the classes is not presently ascertainable.

2.      Whether the statewide IPP classes for damages should be decertified because the IPPs cannot establish class-wide antitrust injury with predominantly generalized evidence.

### II.   INTRODUCTION

Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure expressly authorizes a court to alter or amend an order granting or denying class certification at any time before final judgment. "A district court may decertify a class at any time." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). As the Ninth Circuit has held, before entry of final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, is inherently tentative. *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir. 1982) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147,

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1   160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in
2   light of subsequent developments in the litigation.")); *Coopers & Lybrand v. Livesay*, 437
3   U.S. 463, 469 n.11 (1978) ("a district court's order denying or granting class status is
4   inherently tentative."). Courts exercise their authority to decertify class actions when it
5   becomes clear that the requirements of Rule 23(a) or (b) are not satisfied. *See, e.g.*,
6   *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2014 WL 7148923, at *15
7   (N.D. Cal. Dec. 15, 2014) (decertifying class where plaintiff failed to put forth evidence that
8   damages could be determined using predominantly common evidence); *Estrella v. Freedom*
9   *Fin. Network, LLC*, No. 09-CV-03156-SI, 2012 WL 214856, at *5 (N.D. Cal. Jan. 24, 2012)
10  (decertifying class when class became "bereft of representatives"); *O'Connor v. Boeing N.*
11  *Am., Inc.*, 197 F.R.D. 404, 421 (C.D. Cal 2000) (decertifying class where subsequent
12  developments showed plaintiffs no longer satisfied Rule 23(a) and (b)).

13          With discovery now complete, the record reveals two independent reasons that compel
14  decertification of each of the IPPs' twenty-two separate statewide damages classes.

15          ***First***, after years of discovery, it is now evident that the IPPs have failed to deliver on
16  their promise to the Court, at the class certification stage, that their classes would be
17  ascertainable. Indeed, the IPPs went so far in their promise that "it will be relatively simple to
18  determine class membership at the appropriate time," that their lead counsel submitted a
19  declaration in support of class certification explaining that it could be simply done. Reply
20  Brief in Supp. of IPPs' Mot. for Class Cert., ("IPP Reply") Dkt. 1654 (Feb. 15, 2013) at 40
21  (stating that it was acceptable to grant class certification even if class membership "would
22  require subsequent evidentiary submissions"); Toshiba Ex. A (Reply Decl. of Mario N. Alioto
23  in Supp. of Mot. of IPPs for Class Cert., dated Feb. 15, 2013, at 1). Despite that pledge, the
24  IPPs have failed to come forward with any administrable methodology, much less a simple
25  one, to identify those consumers who purchased a finished product that contained an allegedly
26  price-fixed CRT. The IPPs' failure on this fundamental issue compels a finding that the
27  classes are not ascertainable. *See Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907-SC,
28  2014 WL 580696, at *6 (N.D. Cal. Feb. 13, 2014) (Conti, J.) (denying class certification

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   where plaintiff failed to produce an administratively feasible method for determining class

2   membership).

3       **Second,** the IPPs have also failed to deliver on their promise that the alleged cartel's

4   impact "for CRTs" could be determined using a common methodology.  Toshiba Ex. B (Decl.

5   of Janet S. Netz, Ph.D., in Supp. of Mot. of IPPs for Class Cert., dated Oct. 1, 2012) at 5.

6   After the class was certified, IPP economist Dr. Janet Netz came forward with a damages

7   methodology that measured CDT (for computer monitors) and CPT (for televisions)

8   overcharges and pass through separately.  Toshiba Ex. C (Expert Report of Janet S. Netz,

9   Ph.D., dated April 15, 2014) at 104.  Now that discovery is complete, the IPPs concede

10  through their expert that CDTs and CPTs are heterogeneous products, "used in two distinct

11  applications," that are "not functional or economic substitutes" and for which "there is almost

12  no demand substitution." *Id.* at 7-8.  Dr. Netz therefore separately analyzes antitrust impact

13  for CDTs and CPTs by estimating separate CDT and CPT regressions for each and separately

14  measuring "pass through" to television and computer monitor purchasers.  She estimates

15  separate CDT and CPT regressions because those products "did not respond to changes in

16  market conditions in the same manner." *Id.* at 104.  While her overcharge estimates have

17  varied during discovery, Dr. Netz's current opinion is that the alleged cartel caused a 22%

18  overcharge for CDTs as opposed to a 9% overcharge for CPTs between 1995 and 2006.  Dr.

19  Netz also has different overcharge estimates for 2007 of ████████████████████████

20  ████████.  Toshiba Ex. D (Rebuttal Expert Report of Janet S. Netz. Ph.D., dated Sept. 26,

21  2014) at 95.  To measure "pass through" to indirect purchasers, Dr. Netz uses data "from a

22  sample of firms" in the distribution chain to separately estimate pass through for finished

23  products containing CDTs and CPTs.  Toshiba Ex. C at 107.  Reprising the same

24  methodology rejected by Northern District Judges in both *In re Flash Memory Antitrust*

25  *Litigation*, No. C 07-0086, 2010 WL 2332081 (N.D. Cal. June 9, 2010), and *In re Graphics*

26  *Processing Units Antitrust Litigation*, 252 F.R.D. 478 (N.D. Cal. 2008), ████████████████

27  ████████████████████████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████████████

THE TOSHIBA DEFENDANTS' MOTION TO DECERTIFY
THE STATEWIDE IPP CLASSES FOR DAMAGES
Case No. 07-5944 SC, MDL No. 1917

1   ██████████████████.  Toshiba Ex. C at 118.  Dr. Netz's work shows that the IPPs
2   have no common methodology to measure antitrust impact in this case.  Indeed, Dr. Netz's
3   pass-through analyses actually prove that individual issues abound—as other courts in this
4   district have found.

5       With discovery now closed, it is clear that the statewide IPP classes for damages
6   cannot go forward and that decertification is required.

7   **III.    PROCEDURAL HISTORY**

8       In his Report and Recommendation, the Interim Special Master recommended that the
9   Court certify twenty-two separate statewide classes for damages pursuant to Rule 23 of the
10  Federal Rules of Civil Procedure.  Special Master's Report and Recomm. Re IPPs' Mot. for
11  Class Cert., Dkt. 1742 (June 20, 2013) ("R&R"), at 39-49.   The Interim Special Master
12  determined that the proposed classes satisfied the requirements of Rules 23(a) and 23(b)(3)
13  and the "threshold" requirement that the proposed classes be "presently ascertainable."  R&R
14  at 11.  Specifically, the Interim Special Master recommended that the Court certify statewide
15  classes for damages of "all persons and entities . . . who, from March 1, 1995 to November
16  25, 2007, . . . purchased Cathode Ray Tubes incorporated into televisions and monitors . . .
17  indirectly from any defendant or subsidiary thereof, or any named affiliate or any named co-
18  conspirator, for their own use and not for resale."  R&R at 40-49 (recommending slightly
19  different dates for the Hawaii, Nebraska, and Nevada classes).  Following briefing and oral
20  argument, the Court adopted the R&R and certified the classes as recommended. Order
21  Adopting Special Master's Reports and Recomms. on Defs' Mot. to Exclude Expert Test. and
22  IPPs' Mot. for Class Cert., Dkt. 1950 (Sept. 24, 2013) ("Order").

23      The Interim Special Master's R&R recognized that ascertainability was a threshold
24  requirement before a class could be certified under Rule 23.  R&R at 11.  In finding that this
25  threshold requirement was sufficiently satisfied for initial class certification, the Interim
26  Special Master relied upon the IPPs' assurances, contained in the declaration of class counsel,
27  that the manufacturer of the CRT in any given computer monitor or television could be
28  identified by putative class members simply by examining the model number printed on the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    outside of each individual finished product or by disassembling the product and viewing the

2    tube itself.  Toshiba Ex. A at ¶5; R&R at 14.  On the issue of predominance, the Court and

3    Interim Special Master relied principally on two declarations focused on class certification

4    submitted by Dr. Netz.  Order at 13 ("Based on Dr. Netz's methodology . . . and the ISM's

5    thorough [R&R], the Court is satisfied that for class certification purposes, the IPPs have

6    established a common method for proving that each class member was injured…");  R&R at

7    22-28 (relying upon Dr. Netz's declarations for findings as to impact and pass through).

8    Subsequent development of the record in this action has fatally undermined the declaration of

9    IPP class counsel and IPPs' expert Dr. Netz.

10   **IV.   ARGUMENT**

11        In cases such as this, where certification precedes full merits discovery, the decision to

12   certify may "require revisiting upon the completion of full discovery."  *Blades v. Monsanto*

13   *Co.*, 400 F.3d 562, 575 (8th Cir. 2005) (affirming denial of class certification where class-

14   wide impact could not be established with common proof).  A more developed discovery

15   record, including "the discovery of new facts or changes in the parties or in the substantive or

16   procedural law, will necessitate reconsideration of the earlier order and the granting or denial

17   of certification or redefinition of the class."  *O'Connor*, 197 F.R.D. at 409-10 (quoting *Cook*

18   *v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 477 (D. Colo. 1988)).  When the requirements of

19   ascertainability and predominance are not satisfied, courts must decertify the defective class.

20   *See In re POM Wonderful LLC*, No. ML 10–02199 DDP (RZx), 2014 WL 1225184, at *5-6

21   (C.D. Cal. Mar. 25, 2014) (decertifying class at the close of discovery because common issues

22   did not predominate and there was "no way to reliably determine who purchased

23   Defendant[s'] products or when they did so.").

24        When confronted with a motion for decertification, a court applies the same legal

25   standard it would at the class-certification stage.  *See Werdebaugh*, 2014 WL 7148923, at *4

26   ("The standard used by the courts in reviewing a motion to decertify is the same as the

27   standard when it considered Plaintiffs' certification motions.").  That is, the burden is on the

28   putative class to show that class certification remains appropriate.  *See Ries v. Ariz. Beverages*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   *USA LLC*, No. 10-01139 RS, 2013 WL 1287416, at *3 (N.D. Cal. Mar. 28, 2013) ("On a

2   motion for decertification, the burden remains on the IPPs to demonstrate 'that the

3   requirements of Rule 23(a) and (b) are met.'") (quoting *Marlo v. United Parcel Serv., Inc.*,

4   639 F.3d 942, 947 (9th Cir. 2011)).   When decertification is sought, the court applies these

5   same legal standards but to the more developed discovery record.   *See In re POM*, 2014 WL

6   1225184, at *7.

7           A Court must engage in a "rigorous analysis" to determine whether the party seeking

8   class certification has affirmatively demonstrated compliance with Rule 23.   *See Wal-Mart*

9   *Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("A party seeking class certification must

10  affirmatively demonstrate . . . compliance with the Rule."); *Mazza v. Am. Honda Motor Co.,*

11  *Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) ("Before certifying a class, the trial court must conduct

12  a 'rigorous analysis' to determine whether the party seeking certification has met the

13  prerequisites of Rule 23.") (quoting *Zisner v. Accufix Research Inst. Inc.*, 253 F.3d 1180,

14  1186, amended by 273 F.3d 1266 (9th Cir. 2001)).   Only after a rigorous analysis can a Court

15  determine that it is appropriate to depart from the "usual rule that litigation is conducted by

16  and on behalf of the individual named parties only."   *Comcast v. Behrend*, 133 S. Ct. 1426,

17  1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)).

18          **A.      The IPP Classes Do Not Meet the Threshold Requirement of Present**

19          **Ascertainability**

20          In order for a class action to proceed, the class must be clearly and presently

21  ascertainable.   *See Sethavanish*, 2014 WL 580696, at *4 ("A class definition should be

22  precise, objective, and presently ascertainable.") (quoting *O'Connor v. Boeing N. Am. Inc.*,

23  184 F.R.D. 311, 319 (C.D. Cal. 1998)); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-

24  4387 PJH, 2014 WL 60097, at *3 (N.D. Cal. Jan. 7, 2014) ("the class must be adequately

25  defined and clearly ascertainable before a class action may proceed."); *Wolph v. Acer Am.*

26  *Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) ("As a threshold matter, and apart from the

27  explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that

28  an identifiable and ascertainable class exists.").   In the Ninth Circuit, the ascertainability

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  question is a "threshold" test that must be satisfied before considering Rule 23's requirements.

2  *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1071 n.3 (9th Cir. 2014).  The question of

3  ascertainability is "key" because it allows potential class members to opt out, it "ensures that a

4  defendant's rights are protected," and it "ensures that the parties can identify class members in

5  a manner consistent with the efficiencies of a class action."  *Carrera v. Bayer Corp.*, 727 F.3d

6  300, 307, 312 (3d Cir. 2013) (vacating class certification where class membership could not

7  be ascertained through a reliable and feasible method).  Here, the lack of ascertainability is

8  fatal to the IPPs' damages classes.

9  　　　The IPP classes here are not ascertainable because identifying "persons or entities"

10  who "purchased Cathode Ray Tubes incorporated in televisions and monitors . . . indirectly

11  from any defendant or subsidiary thereof, or any named affiliate or any named co-conspirator"

12  will require millions of individualized inquiries into whether a CRT incorporated into a

13  finished product was manufactured by a "defendant," "subsidiary," "named affiliate" or

14  "named co-conspirator."  An individualized inquiry is necessary because the IPPs concede

15  that not all CRT manufacturers participated in the alleged conspiracy.  Toshiba Ex. C at Exs.

16  4-5.  And therefore not all CRT finished products contain an allegedly price-fixed CRT.  In

17  this respect, the situation is akin to that which now-Chief District Judge Hamilton addressed

18  in *Astiana*, where the plaintiff alleged an injury based on the purchase of a Ben & Jerry's

19  product that contained a synthetic ingredient.  2014 WL 60097, at *3.  The plaintiff sought to

20  represent a class of individuals who had purchased Ben & Jerry's products manufactured with

21  this synthetic ingredient.  The plaintiff, however, was unable to establish that the class was

22  ascertainable because Ben & Jerry's used multiple suppliers for its products and one or more

23  of those suppliers used the synthetic ingredient.  *Id.*  ("Because plaintiff has not shown that a

24  method exists for determining who, among the many California purchasers of Ben & Jerry's,

25  fits within the proposed class, the class is not ascertainable.").  Here, as in *Astiana*, the IPPs

26  have no administrable method to determine which television and monitor purchasers actually

27  purchased an allegedly price-fixed tube inside of their product.

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    At the class certification stage, the IPPs put forward two approaches to determine

2 ascertainability.   First, the IPPs asserted that the classes were ascertainable because an

3 individualized inquiry at the claims administration stage could identify those persons who

4 purchased a CRT television or computer monitor that contained a CRT manufactured by an

5 alleged conspirator. Toshiba Ex. A at 1; IPP Reply at 38-39.  Specifically, IPPs claimed that

6 potential class members could determine the identity of the manufacturer of the CDT or CPT

7 contained in their monitor or television by matching their product's model number with

8 "service manuals and/or other publically available information." Toshiba Ex. A at 2.  Second,

9 the IPPs asserted that class members could identify the tube manufacturer of their unit by

10 removing the screws from the back of their product and viewing the CRT model number.  IPP

11 Reply at 39.   The IPPs and their lead counsel asserted that "subsequent evidentiary

12 submissions" could substantiate class membership.  IPP Reply at 40.

13    In discovery, the IPPs never supplemented the record as to ascertainability and never

14 came forward with an administrable method to determine class membership.   Further

15 compounding the ascertainability problem is that most U.S. consumers no longer possess the

16 CRT products they purchased or the user manuals that came with them.  The testimony by

17 many of the class representatives is clear on this point.  For example, the class representatives

18 from Arizona, Florida, and Nevada, as well as one of the California class representatives, and

19 one of the New York representatives testified that they no longer have the CRT products, or

20 manuals for those products, for which they claim damages.  *See*, Toshiba Ex. E (Brian

21 Luscher (Arizona) Dep. Tr. 46:10-11, 46:18-20, 49:11-13 ("Q. So you do not currently own

22 this television anymore?  A. No, I do not currently own it.")); Toshiba Ex. F (David Rooks

23 (Florida) Dep. Tr. 49:10-11, 48:8-12, 82:23-25, 73:21-23 ("Q. Do you still have the Panasonic

24 television?  A. No. Q. Did a user guide or manual come with your product?    A.   Yes, it did.

25 Q.  Do you still have that? A. No, I don't.  Q. -- you no longer own the television?  A. No, I

26 don't.")); Toshiba Ex. G (Louise Wood (New York) Dep. Tr. 33:22-25, 84:14-15, 32:22-24

27 ("Q. Do you still have the owner's manual?   A. I do not.   Q. Do you still own the television

28 that's the basis for your claim?  A. No, I do not.")); Toshiba Ex. H (Jeffrey Figone (California)

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  Dep. Tr. 69:17-19; 69:20-24, 70:3-5 ("Q. Do you still have the Sharp television set today? A.

2  No.  Q. Do you have any documents, like an owner's manual or something else, that would

3  verify that the  Sharp television set you purchased in 1999 or 2000 contains a CRT or not?  A.

4  No.")); Toshiba Ex. I (Gloria Comeaux (Nevada) Dep. Tr. 45:17-23, 73:7-14, 76:2-4, 76:2-4

5  ("Q. And what happened to the user manual? A. I probably threw it away.")).

6       These named plaintiffs are not unique.  One recent study by the Consumer Electronics

7  Associations estimates that 44% of U.S. households disposed of a CRT television in the last

8  five years.  *See* Toshiba Defendants' Request for Judicial Notice In Support of Motion to

9  Decertify the Statewide IPP Classes for Damages ("RJN") Ex. A (CEA Market Research

10 Report dated April 2014).  The CEA estimates that 27% of U.S. households indicated that

11 they disposed of a CRT monitor in the last five years.  Those percentages translate into more

12 than 52 million U.S. households discarding at least one CRT television and 32 million

13 households discarding at least one CRT monitor in the last five years.  *Id.* at 1.  In contrast,

14 only 49 million U.S. households have a CRT television and just 25 million have a CRT

15 monitor.  *Id* at 4.  In other words, more households have discarded a CRT television or

16 monitor in the last five years than currently own one.  For those individuals who have

17 discarded their CRT products, even an individualized factual inquiry cannot determine class

18 membership.  That an overwhelming number of purchasers will have no ability to prove that

19 they purchased a CRT product containing an allegedly price-fixed tube puts this case "well

20 toward the unascertainable end of the spectrum."  *In re POM*, 2014 WL 1225184, at * 6

21 (finding class was not ascertainable where class likely included ten to fifteen million

22 purchasers and "[f]ew if any consumers are likely to have retained receipts during the class

23 period…").

24       Setting aside that many class members have disposed of their CRT finished products,

25 the IPPs' suggestion that individuals could simply open up their finished products is

26 downright dangerous.  One author notes: "Accidentally hitting the tube with a tool, scratching

27 it, dropping it, or any sharp contact with it may cause it to implode.  Such an implosion causes

28 glass fragments to fly around with great force and can cause considerable damage and

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   physical injury." *See* RJN Ex. B (S.P. Bali, Colour Television, Theory and Practice, p. 129,

2   Tata McGraw-Hill (1994)).  Indeed, CRT finished product makers caution U.S. consumers to

3   "[n]ever attempt to service the TV yourself" because "[o]pening and removing the covers may

4   expose you to dangerous voltage or other hazards." *See* Toshiba Ex. J (Toshiba Television

5   Owner's Manual produced by North Carolina class representative) at 4.

6   But, even if the IPPs had come forward with evidence to support either of the

7   methodologies they put forward at class certification, the methodologies set forth in the IPP

8   lead counsel's declaration would still be inadequate under Rule 23.   Each of the IPPs'

9   methods requires a complex class-member-by-class-member inquiry that runs counter to the

10   requirements of Rule 23.   *See Sethavanish*, 2014 WL 580696, at *6 (denying class

11   certification where "Plaintiff has yet to present any method for determining class membership,

12   let alone an administratively feasible method.");  *In re Flash Memory Antitrust Litig.*, No. C

13   07-0086 SBA, 2010 WL 2332081, at *15 (N.D. Cal. June 9, 2010) (declining to certify class

14   due in part due to the "factually-intensive nature and the administrative infeasibility of

15   ascertaining class members."); *In re Phenylpropanolamine (PPA) Prods. Liability Litig.*, 214

16   F.R.D. 614, 623 (W.D. Wash. 2003) (denying class certification where immense size of the

17   class would make it administratively infeasible to determine who actually purchased

18   ingredient found in certain cough, cold and flu products).   Indeed, the IPPs' approaches

19   violate Hornbook class action law.   *See Carrera*, 727 F. 3d at 308-09 ("Administrative

20   feasibility means that identifying class members is a manageable process that does not require

21   much, if any, individualized factual inquiry.") (quoting Newberg on Class Actions § 3.3 (5th

22   ed. 2011)).

23   The IPPs' individualized factual inquiries would also require potential class members

24   to individually assert that they meet the criteria for class membership.   But that type of self-

25   identification is impermissible when plaintiffs fail to identify "any sort of objective system for

26   screening out" ineligible potential class members. *See Mazur*, 257 F.R.D. at 567-68 (denying

27   class certification where class was unascertainable).   The declaration of the IPPs' lead counsel

28   also shows how it is not administratively feasible to determine the identity of CRT

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    manufacturers by simply inspecting finished products or their user manuals.   In order to

2    determine the manufacturer of the CRT in just a few of the named plaintiffs, the IPPs' counsel

3    had to consult the websites of three different third parties and assess information contained in

4    documents produced by at least six different entities in this case.   *See* Toshiba Ex. A at 2-3

5    (identifying  third-party  websites  "www.samtelcolor.com,"  "www.partstore.com,"  and

6    "www.orderpartstoday.com" along with documents produced by Philips, TACP, Panasonic,

7    Chunghwa, MTPD, and LPD).   Apart from obvious issues of reliability with third-party

8    websites, the "www.orderpartstoday.com" website used by IPPs at that time appears to no

9    longer exist.   *See* Declaration of J. Frank Hogue in Support of the Toshiba Defendants' Notice

10   of Motion and Motion to Decertify the IPP Statewide Classes for Damages at ¶15.

11         Perhaps recognizing that neither disassembling the finished product nor reviewing

12   model numbers is a sound or administrable methodology, the IPPs apparently have abandoned

13   these  unworkable  and  dangerous  methods.    During  discovery,  interrogatories  were

14   propounded on the IPPs asking them to identify the evidence upon which they rely to support

15   their claimed ability to trace CDTs and CPTs from manufacturers to end-users.   *See* Toshiba

16   Ex. K (IPPs' Objs. & Responses to Def. Panasonic Corporation of North America's First Set

17   of Interrogs.) dated Aug. 13, 2014.   The IPPs' response contains no substantive answer.   The

18   IPPs list no evidence to support their allegation that there is a traceable chain from CRT

19   manufacturers to end consumers in the relevant states.   Instead, the IPPs cite to 12 pages of

20   Dr. Netz's April 15, 2014 report and 12 accompanying exhibits as their support for the

21   traceability of CRTs from manufacturers to the purchasers of finished products.   Toshiba Ex.

22   C at 22-25, 111-118.   The cited passages and exhibits, however, provide no methodology to

23   determine which indirect purchasers' products contain allegedly price-fixed CRTs.   Pages

24   22-25 contain generic descriptions of the distribution of CRT monitors and televisions, and

25   pages 111-118 simply summarize Dr. Netz's econometric estimate of pass through.

26   Additionally, none of the exhibits that the IPPs point to illustrates any method to ascertain

27   who actually purchased a CRT product containing an allegedly price-fixed CRT.   Specifically:

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

- **Netz Exhibit 10** is an illustration generically depicting various aspects of the CRT and CRT product distribution chain.
- **Netz Exhibits 57-60** are lists of documents produced during discovery that Dr. Netz contends support her opinion that pass through occurred.
- **Netz Exhibit 62** is a summary of the 62 individual pass through studies that Dr. Netz did showing different pass through rates for different products depending on where they were sold.
- **Netz Exhibits 66-70** are illustrations of Dr. Netz's various pass through studies.
- **Netz Exhibit 75** is an illustration depicting the portions of the CRT product distribution chains that Dr. Netz studied.

Furthermore, Dr. Netz has admitted in sworn testimony that she has done no analysis to date that would identify those CRT television and monitor purchasers who are class members.  Dr. Netz admits that while she has ███████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████  Toshiba Ex. L (Netz Oct. 31, 2014 Dep. Tr.) at 21:11-22.  Even at this late date, Dr. Netz can only say that ████████████████████████████

████████████████████████████████████████████████████████████████

███████  Toshiba Ex. L at 21:11-23:1.  Dr. Netz's musings that a method could ***possibly*** be developed to ascertain which finished products contain allegedly price-fixed tubes does not assist the IPPs in establishing that the class is presently ascertainable, and are too late and too speculative now that discovery is complete.  Having relied exclusively on these portions of Dr. Netz's opinion during discovery, the IPPs cannot now come forward with new arguments as to why the IPPs have presented an administratively feasible methodology to ascertain the class.  *See Richard v. Hosp. Housekeeping Sys. GP, LLC*, No. 09-6788, 2010 WL 4668468, at *1 (E.D. La. Nov. 4, 2010) (noting that the obligation to amend interrogatory responses and that the obligation be met "with special promptness as the trial date approaches.").

Indeed, it is questionable that Dr. Netz could even attempt to develop a methodology to ascertain class membership.  ██████████████████████████████████████

██████████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████

6   (emphasis added).  Toshiba Ex. L (Netz Oct. 31, 2014 Dep. Tr.) at 21:11-22.

7        The Third Circuit's decision in *Carrera* is instructive here.  There the court rejected

8   plaintiff's contention that a class was ascertainable based on the affidavit attesting to how

9   ascertinability could potentially be accomplished.   The Court determined that "[s]uch

10  assurances that a party 'intends or plans to meet the requirements' are insufficient to satisfy

11  Rule 23."   *See* 727 F.3d at 311 (quoting *Hydrogen Peroxide* and *Comcast*).   Dr. Netz's

12  testimony then can only serve to underscore that the IPPs have presented no methodology that

13  could be employed to determine which indirect purchasers purchased television and computer

14  monitors that contain allegedly price-fixed CRTs.

15        That failure to come forward with a method to determine class membership infringes

16  on the rights of Toshiba to test the reliability of the method used to ascertain class

17  membership.  *See Carrera*, 727 F.3d at 307 ("A defendant has a similar, if not the same, due

18  process right to challenge the proof used to demonstrate class membership as it does to

19  challenge the elements of a plaintiff's claim.");  *Sethavanish*, 2014 WL 580696, at *5

20  (endorsing the Third Circuit's reasoning in *Carrera*).   Additionally, to the extent that the IPPs

21  persist in their argument that disassembling finished products is a viable method to determine

22  class membership, that process is necessarily an individualized factual inquiry, and therefore

23  antithetical to a Rule 23 class action.  *Id.*  ("A plaintiff does not satisfy the ascertainability

24  requirement if individualized fact-finding or mini-trials will be required to prove class

25  membership.").  The IPPs' failure, along with the fact that most consumers likely no longer

26  possess their CRT products, raises the possibility that the only evidence that any individual

27  owned a CRT product will be their own recollection.  Setting aside that such recollection will

28  not extend to the manufacturer of the tube inside of the finished product, such a recollection is

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    not a reliable basis on which to determine class membership.  *See Carrera*, 727 F.3d at 309

2    (rejecting argument that class could be ascertained based on affidavits from class members).

3    Such a method is not appropriate "because it does not address a core concern of

4    ascertainability: that a defendant must be able to challenge class membership." *Id*.; *In re*

5    *Clorox Consumer Litig.*, 301 F.R.D. 436, 440-41 (N.D. Cal. 2014) (Conti, J.) ("Affidavits

6    from consumers alone are insufficient to identify members of the class.").  The Third Circuit's

7    reasoning in *Carrera* is particularly compelling here because, like the named plaintiffs there,

8    the class representatives' testimony "suggest[s] that individuals will have difficulty accurately

9    recalling their purchases…"  *Carrera*, 727 F.3d at 309.  The concern that this case may result

10   in inaccurate or fraudulent claims is compounded by the inability of many of the IPP class

11   representatives to even prove that they purchased a CRT product during the relevant period in

12   one of the relevant states.  *See* Toshiba Mot. To Strike Class Representatives With Inadequate

13   Proof of Their Individual Purchases, Case No. 07-5944, filed February 13, 2015.

14        In support of their ascertainability arguments during class certification, the IPPs

15   dismissed the significance of the fact that millions of CRT televisions and computer monitors

16   contain CRTs manufactured by companies who are not alleged to have conspired.  Toshiba

17   IPP Reply at 37.  The IPPs acknowledged then that as much as 10% of CRT production was

18   from non-conspirators. *Id.*  Following class certification, Dr. Netz estimates ████████████

19   ████████████████████████████████████████████████████████████████████████████

20   ██████████████████████████████  Toshiba Ex. C at 33.  Regardless of whether alleged

21   conspirators accounted for 85% or 90% of global sales, the remainder is not a small number.

22   The IPPs' complaint claims that 315.8 million CRTs were sold in 1998-2000 alone.  IPPs'

23   Fourth Am. Compl., Dkt. 1526 at 46.  If 15% of those CRTs are indisputably unaffected by

24   the alleged conspiracy, then 47.2 million CRTs (and an equal number of finished products)

25   sold in those three years were unaffected by the conspiracy.  Factoring in the other nine years

26   of the alleged conspiracy results in an enormous number of indirect CRT purchasers who

27   were indisputably not injured.  And this assume that all these alleged to be conspirators in fact

28   were the sheer number of uninjured consumers raises the likelihood of fraudulent or

THE TOSHIBA DEFENDANTS' MOTION TO DECERTIFY
THE STATEWIDE IPP CLASSES FOR DAMAGES
Case No. 07-5944 SC, MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  inaccurate claims.  When faced with that possibility, in order to establish ascertainability, a

2  plaintiff must come forward with some method "to weed out inaccurate or fraudulent claims."

3  *See Sethavanish*, 2014 WL 580696, at * 6.  Without such a method, fraudulent or inaccurate

4  claims could lead absent class members to argue that they were inadequately represented.  *See*

5  *Carrera*, 727 F.3d at 310.  Requiring a plaintiff to demonstrate an administratively feasible

6  method to determine class membership reduces such a possibility and preserves the rights of

7  both defendants and absent class members.  *Id.*  Because the IPPs have failed to come forward

8  with any administrable methodology to ascertain class membership the damages classes

9  should be decertified.

> **B.     The IPP Classes Do Not Meet the Requirements of Rule 23 Because the
>          IPPs Have No Methodology to Measure Impact on a Class-wide Basis**

12         At the initial class-certification stage, Dr. Netz put forth four different methodologies

13  that she believed could be used to determine the impact from alleged overcharges "for CRTs"

14  on a class-wide basis.  Toshiba Ex. B at 83-97.  The IPPs did not seek this Court's approval

15  for class certification based on an estimate of impact using two different overcharge analyses,

16  different pass-through studies, and two different damages calculations, each looking at CDTs

17  and CPTs separately.  Dr. Netz concluded in her sworn declaration that █████████████

18  ████████████████████████████████████████████████████████████████████████████

19  ████████  Toshiba Ex. B at 71.  Yet when Dr. Netz actually performed her work during the

20  merits phase, she estimated overcharges for CPTs and CDTs separately, and estimated pass

21  through using numerous studies with different permutations of customer and product types.

22  This is not the "common, formulaic method" that the IPPs promised.  IPPs' Response to Defs.

23  Objs. to R&R, Dkt. 1886 (Aug. 21, 2013) at 6.  To estimate overcharges, Dr. Netz "estimated

24  separate CDT and CPT regressions."  Toshiba Ex. C at 104.  Dr. Netz then separately studied

25  the extent to which her CDT and CPT overcharge estimates were supposedly passed through

26  to end users.  *Id.* at 111 ("I calculated separate pass-through rates for monitor tubes (CDTs),

27  TV tubes (CPTs), monitors, and TVs.").  Having estimated overcharges and pass-through

28  rates separately for CDTs and CPTs, Dr. Netz then goes on to estimate damages separately for

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  CDTs and CPTs.  *Id.* at 123 ("I calculate dollar overcharges [i.e., damages] separately for each

2  application type (CPTs and CDTs)…").  The IPPs' decision to analyze CDTs and CPTs

3  separately, and to estimate overcharges, pass-through rates, and damages for  each product, as

4  opposed to "for CRTs," shows that the IPPs do not have a common methodology to prove

5  antitrust injury on a class-wide basis, as promised at the class-certification stage.

6       In determining whether a Rule 23(b)(3) class is certifiable, whether in the context of

7  class certification or a motion to decertify, a court is required to conduct a "rigorous analysis"

8  to determine whether questions of law or fact common to class members predominate.  Fed.

9  R. Civ. P. 23(b)(3); *Wal-Mart Stores, Inc.*, 131 S. Ct. at 551; *Comcast*, 133 S. Ct. at 1432

10 ("Repeatedly, we have emphasized that . . . certification is proper only if the 'the trial court is

11 satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been

12 satisfied….The same analytical principles govern Rule 23(b).'") (quoting *Gen. Tel. Co. of the*

13 *Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982)).  In the context of reviewing a Rule 23(b)(3)

14 class in a motion for decertification, the plaintiff has the burden to demonstrate that the record

15 continues to support the determination that common questions predominate.  *See In re POM*,

16 2014 WL 1225184 at *5-6 (decertifying class of consumers who could not establish

17 predominance or ascertainability).  In the antitrust context: "To proceed with a class action,

18 the plaintiffs must be able to establish predominately with generalized evidence, that all (or

19 nearly all) members of the class suffered damages as a result of defendants' alleged

20 anticompetitive conduct."  *In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 324

21 (N.D. Cal. 2014) (denying class certification where the IPPs failed to carry their burden to

22 show they had a methodology capable of establishing class-wide impact).  Dr. Netz's post-

23 class-certification analysis establishes that the IPPs do not use "generalized evidence"

24 common to CRTs, but instead use separate evidence regarding CDTs and CPTs.  This

25 approach does not satisfy Rule 23(b)(3) and the individual classes for damages should be

26 decertified as they are defined with respect to CRTs—not the separate CDT and CPT

27 products.

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    In her post-certification work, Dr. Netz freely admitted to the existence of meaningful

2  differences between CDTs and CPTs.  As discussed above, she does not in dispute that CDTs

3  and CPTs are distinct products, each with its own "distinct application" and which "are not

4  functional or economic substitutes."  Toshiba Ex. C at 7.  Nor is it in dispute that differences

5  between CDTs and CPTs have an effect on the price differences between the two products.

6  *Id.*  She analyzed overcharges separately for each of the two products, using different post-

7  cartel periods and obtaining widely varying results ranging from 3-22%.  *Id.* at 105 n.8.

8    The IPPs' "failure to offer a damages model that is capable of measurement across the

9  ***entire*** class" of CRT purchasers precludes class treatment.  *Astiana*, 2014 WL 60097, at *13

10  (emphasis added); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-312 (3d Cir.

11  2008) ("[T]he task for plaintiffs at class certification is to demonstrate that the element of

12  antitrust impact is capable of proof at trial through evidence that is common to the class rather

13  than individual to its members.").  Dr. Netz's separate-product approach also departs from the

14  IPPs' theory of the case.  Specifically, the IPPs allege that Defendants "participated in ***a***

15  global conspiracy to fix prices, limit production, and allocate markets and customers for

16  cathode ray tubes ("CRTs")."  IPP Reply at 1.  Dr. Netz's departure from the IPPs' allegations

17  puts the IPPs at odds with the Supreme Court's instructions in *Comcast* that "a model

18  purporting to serve as evidence of damages . . . must measure only those damages

19  attributable" to the "theory of antitrust impact accepted for class-action treatment…."

20  *Comcast v. Behrend*, 133 S.Ct. 1426, 1433 (2013).  The IPPs sought class action treatment for

21  a class of indirect CRT purchasers allegedly harmed by a single CRT conspiracy.  Yet Dr.

22  Netz's analyses measures antitrust impact separately for CDTs and CPTs.  When an expert's

23  model departs from the theory of liability, "it cannot possibly establish that damages are

24  susceptible of measurement across the entire class for purposes of Rule 23(b)(3)."  *Id.*

25  Additionally, Dr. Netz's separate-products approach suggests that class members who

26  indirectly purchased a CDT are not typical of a class member who indirectly purchased a

27  CPT.

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    The shortcomings of Dr. Netz's approach to antitrust impact in this case should not be

2    viewed in a vacuum.  The same type of analysis by Dr. Netz has been rejected as a basis for

3    class certification in other indirect purchaser antitrust cases.  Specifically, Dr. Netz's pass-

4    through studies include the same "top-and-bottom" and "top-to-bottom" studies that were fatal

5    to class certification in *In re Flash*.  *See* 2010 WL 2332081, at *12 (determining that Dr.

6    Netz's findings "actually underscore the *individualized* nature of the evidence that will be

7    required to show impact.") (emphasis in original).  The court in *In re GPU* also rejected Dr.

8    Netz's pass-through methodology based on "concern[s] about the individualized nature" of

9    her methodology.  *In re GPU*, 253 F.R.D. 478, 504 (N.D. Cal. 2008) ("If this class were

10   certified, Dr. Netz's regressions would be either overly reliant on averages and would thus

11   sweep in an unacceptable number of uninjured plaintiffs, or they would be unmanageably

12   individualized.").

13   Here, in addition to these same "top-and-bottom" and "top-to-bottom" studies from *In

14   re Flash*, Dr. Netz's includes an illustrative example of pass through from a single retailer,

15   Wal-Mart, as well as three multi-level and single-level studies that examine pass through

16   between specific entities for specific products at different levels in the supply chain.  Toshiba

17   Ex. C at 116-117.  None of Dr. Netz's 62 studies, however, is common to all of the various

18   CRT sellers, CRT product manufacturers, CRT product distributors, CRT product retailers or

19   the various end-customers that comprise the statewide damages classes.  Instead, each of the

20   studies measures pass through between specific entities in the supply chain for specific

21   products.  Unsurprisingly, the results of these studies vary dramatically.  Dr. Netz's reports

22   estimate pass through-rates ███████████ depending on the product and level of the

23   distribution chain she examines.  *See* Toshiba Ex. D at Ex. 62.  Indeed, Dr. Netz testified that

24   Wal-Mart (a centerpiece in her analysis) has significant buying power.  *See* Toshiba Ex. M

25   (Netz Nov. 15, 2012 Dep. Tr.) at 139-19:140-7.  Just as in *Flash*, "Netz's analysis amounts to

26   a retailer-by-retailer, manufacturer-by-manufacturer, and product-by-product analysis of pass

27   through."  *Flash* at *12 (observing that "this is the identical analytical flaw for which Dr. Netz

28   was criticized in *In re Graphics Processing*").

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1    In antitrust cases in this District, an inability to demonstrate pass-through using a

2 common methodology is grounds to deny class certification.  *See In re Optical Disk Drive*

3 *Antitrust Litig.*, 303 F.R.D. 311, 324, 325 (N.D. Cal. 2014) ("As in *GPU*, it would appear 'that

4 the only way to fully assess pass-through in this action would be to conduct a wholesaler-by-

5 wholesaler and re-seller-by-re-seller investigation, which would essentially result in thousands

6 of mini-trials, rendering this case unmanageable and unsuitable for class action treatment.'")

7 (quoting *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 505 (N.D. Cal.

8 2008)) (further internal quotations omitted).  The IPPs' failure to deliver on their promise to

9 use common evidence to demonstrate pass through, and therefore antitrust impact, should

10 result in decertification of the statewide classes for damages.

11 **V.    CONCLUSION**

12    For these reasons, the Court should grant this motion and decertify the IPP statewide

13 damages classes.

14                                              Respectfully submitted,

15 Dated:  February 13, 2015                    **WHITE & CASE** LLP

16

17                          By:   /s/ *Lucius B. Lau*
                                  Christopher M. Curran (*pro hac vice*)
18                                ccurran@whitecase.com
                                  Lucius B. Lau (*pro hac vice*)
19                                alau@whitecase.com
                                  Dana E. Foster (*pro hac vice*)
20                                defoster@whitecase.com
                                  701 Thirteenth Street, N.W.
21                                Washington, DC  20005
                                  tel.: (202) 626-3600
22                                fax: (202) 639-9355

23
                                  *Counsel to Toshiba Corporation,*
24                                *Toshiba America, Inc., Toshiba America*
25                                *Consumer Products, LLC, Toshiba*
                                  *America Information Systems, Inc., and*
26                                *Toshiba America Electronic Components,*
27                                *Inc..*

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

On February 13, 2015, I caused a copy of "THE TOSHIBA DEFENDANTS' MOTION TO DECERTIFY THE INDIRECT PURCHASER PLAINTIFFS' STATEWIDE CLASSES FOR DAMAGES" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.


_____*/s/ Lucius B. Lau*_____
Lucius B. Lau

THE TOSHIBA DEFENDANTS' MOTION TO DECERTIFY
THE STATEWIDE IPP CLASSES FOR DAMAGES
Case No. 07-5944 SC, MDL No. 1917