Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,
Toshiba America, Inc., Toshiba America
Information Systems, Inc., Toshiba America
Consumer Products, L.L.C., and Toshiba America
Electronic Components, Inc.*

Additional Counsel On Signature Pages

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC MDL No. 1917 |
| This Document Relates to: *Sharp Electronics Corp.*, et al. v. *Hitachi Ltd.*, et al., Case No. 13-cv-1173 *Sharp Electronics Corp.*, et al. v. *Koninklijke Philips Elecs., N.V.*, et al., Case No. 13-cv-2776 | **DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN EXPERT TESTIMONY OF JERRY A. HAUSMAN** Oral Argument Requested Date:   August 7, 2015 Time:   10:00 a.m. Judge:  Hon. Samuel Conti |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN EXPERT TESTIMONY OF
JERRY A. HAUSMAN
Case No. 07-5944 SC, MDL No. 1917
ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

# TABLE OF CONTENTS

Page(s)

NOTICE OF MOTION AND MOTION ...................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.      STATEMENT OF THE ISSUE .................................................................................... 1

II.     INTRODUCTION ......................................................................................................... 1

III.    FACTS ........................................................................................................................... 4

IV.     ARGUMENT ................................................................................................................. 6

      A.      Dr. Hausman's Testimony About The Anticompetitive Effects Of
      Information Exchanges On CPT Prices Should Be Excluded
      Because It Is Irrelevant To Sharp's Claims ......................................................... 6

            1.      Sharp's Complaint Alleges A Violation Of § 1 Of The
            Sherman Act Based Upon A Price-Fixing Conspiracy ............................ 6

            2.      Sharp Should Not Be Allowed To Add A New Claim For A
            Violation Of The Sherman Act Through Anticompetitive
            Information Exchanges .......................................................................... 10

            3.      Dr. Hausman's Report Examines Anticompetitive Effects
            Of Information Exchanges Under A Rule Of Reason
            Analysis ................................................................................................. 15

      B.      Even If Dr. Hausman's Testimony Has Some Relevance, Its
      Probative Value Is Substantially Outweighed By A Danger Of
      Confusing The Issues And Misleading The Jury ............................................... 18

V.      CONCLUSION ............................................................................................................ 19

DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN EXPERT TESTIMONY OF
JERRY A. HAUSMAN
Case No. 07-5944 SC, MDL No. 1917

ii

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## FEDERAL CASES

*In re Baby Food Antitrust Litig.*,
 166 F.3d 112 (3d Cir. 1999) .................................................................................................7

*BanxCorp v. Bankrate Inc.*,
 No. 07-3398, 2011 WL 6934836 (D.N.J. Dec. 30, 2011) ....................................................10

*Bassani v. Sutton*,
 No. 08-3012, 2010 WL 1734857 (E.D. Wash. Apr. 28, 2010)............................................14

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)............................................................................................................12

*Bhan v. NME Hosps., Inc.*,
 929 F.2d 1404 (9th Cir. 1991) ...........................................................................................11

*Brown v. Califano*,
 75 F.R.D. 497 (D.D.C. 1977) ..............................................................................................10

*Cason-Merenda v. Detroit Med. Center*,
 862 F. Supp. 2d 603 (E.D. Mich. 2012) ..............................................................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993)................................................................................................15, 16, 18

*Foman v. Davis*,
 371 U.S. 178 (1962)............................................................................................................12

*Group Health Plan, Inc. v. Philip Morris USA, Inc.*,
 344 F.3d 753 (8th Cir. 2003) ..............................................................................................15

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
 232 F.3d 979 (9th Cir. 2000) ..............................................................................................16

*Massey v. Helman*,
 196 F.3d 727 (7th Cir. 2000) ..............................................................................................13

*McCarthy v. Dun & Bradstreet Corp.*,
 372 F. Supp. 2d 694 (D. Conn. 2005)..................................................................................13

*McCarthy v. Target Corp.*,
 No. 09-1548, 2012 WL 967853 (N.D. Ill. Mar. 19, 2012) ..................................................17

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

*In re Mercedes-Benz Anti-Trust Litig.*,
   157 F. Supp. 2d 355 (D.N.J. 2001) .......................................................................................7

*Morongo Band of Mission Indians v. Rose*,
   893 F.2d 1074 (9th Cir.1990) ............................................................................................11

*In re Mutual Funds Inv. Litig.*,
   608 F. Supp. 2d 670 (D. Md. 2009) ...................................................................................11

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
   967 F. Supp. 2d 1347 (N.D. Cal. 2013) .............................................................................12

*Pena v. Taylor Farms Pac., Inc.*,
   No. 13-cv-01282, 2014 WL 1330754 (E.D. Cal. Mar. 28, 2014) .......................................14

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
   457 F.3d 963 (9th Cir. 2006) .............................................................................................14

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
   619 F. Supp. 2d 1260 (M.D. Fla. 2009)...............................................................................9

*Richardson v. Rose Transport, Inc.*,
   No. 11-317, 2014 WL 121690 (E.D. Ky. Jan. 13, 2014).....................................................13

*Sharp Electronics Corp., v. Hitachi Ltd.*,
   No. 13-cv-01173 (N.D. Cal.) ...............................................................................................4

*Texaco Inc. v. Dagher*,
   547 U.S. 1 (2006)................................................................................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-md-01827 (N.D. Cal. Aug. 12, 2011)..................................................................3, 4

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001) ......................................................................................6, 7, 11

*United States v. Downing*,
   753 F.2d 1224 (3d Cir. 1985) .............................................................................................15

*United States v. Gen. Elec. Co.*,
   869 F. Supp. 1285 (S.D. Ohio 1994) ..................................................................................10

*United States v. Hoac*,
   990 F.2d 1099 (9th Cir. 1993) ...........................................................................................18

*United States v. Sharp Corp.*,
   No. 08-cr-00802 (N.D. Cal. Dec. 8, 2008) ..........................................................................3

DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN EXPERT TESTIMONY OF
JERRY A. HAUSMAN
Case No. 07-5944 SC, MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*United States v. U.S. Gypsum Co.,*
    438 U.S. 422 (1978)...................................................................................................7

*Williamson Oil Co. v. Philip Morris USA,*
    346 F.3d 1287 (11th Cir. 2003) ..............................................................................17

**FEDERAL STATUTES**

15 U.S.C. § 1.......................................................................................................passim

**FEDERAL RULES**

Fed. R. Civ. P. 8.................................................................................................9, 14

Fed. R. Evid. 403 ....................................................................................................18

Fed. R. Evid. 702 .................................................................................................1, 15

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

## NOTICE OF MOTION AND MOTION

2  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on August 7, 2015, at 10:00 a.m., or as soon thereafter

4  as the matter may be heard, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San

5  Francisco, California, before the Honorable Samuel Conti, the undersigned Defendants will

6  and hereby do move the Court for an Order excluding certain testimony of Sharp Electronics

7  Corporation's and Sharp Electronics Manufacturing Company of America, Inc.'s

8  (collectively, "Sharp") expert Dr. Jerry A. Hausman pursuant to Rules 403 and 702 of the

9  Federal Rules of Evidence.

10      This motion is based upon this Notice of Motion, the accompanying Memorandum of

11  Points and Authorities in support thereof, the complete files and records in this action, oral

12  argument of counsel, and such other and further matters as this Court may consider.

13            ## MEMORANDUM OF POINTS AND AUTHORITIES

14  **I.    STATEMENT OF THE ISSUE**

15      Whether certain testimony of Sharp's economic expert, Dr. Jerry A. Hausman, should

16  be excluded at trial where his analysis addresses a rule of reason  "information exchange"

17  claim whereas Sharp's pleadings, throughout the entire duration of this proceeding, have set

18  forth only a *per se* price-fixing claim.

19  **II.    INTRODUCTION**

20      In all three iterations of its complaint, Sharp has alleged that Defendants participated

21  in a long-running conspiracy to coordinate and fix the prices of CRTs in violation of Section 1

22  of the Sherman Act.  Sharp's allegation of a price-fixing conspiracy is consistent with all of

23  the other Plaintiffs' allegations in this MDL.  Despite its consistent pleading of a price-fixing

24  claim, Sharp is now improperly attempting to insert a new claim into the case based upon

25  (purportedly) anticompetitive information exchanges.  And, Sharp is attempting to assert this

26  new claim not through an amendment of its complaint but through the opinion of its

27  economist.  Not only is this new claim untimely and procedurally improper, it severely

28

1   prejudices Defendants, who have taken discovery and developed their defenses based upon
2   Sharp's pleaded claim rather than an unpleaded claim created by Sharp's economist.

3       There are two distinct violations under Section 1 of the Sherman Act that may involve
4   evidence of information exchanges. First, information exchanges may be circumstantial
5   evidence to support a claim of horizontal price-fixing, which is analyzed under the *per se*
6   standard.   Second, a party may claim that an agreement to exchange information, separate
7   from any price-fixing agreement, had an anticompetitive effect on a relevant market.   This
8   type of alleged information exchange violation is analyzed under the rule of reason, which
9   generally calls for a detailed examination of all relevant circumstances and a weighing of all
10  pro- and anti-competitive effects.   Sharp has never alleged a rule of reason anticompetitive
11  information exchange violation in its pleadings and its pleadings are devoid of allegations that
12  would support a rule of reason analysis.

13      Defendants only recently became aware of Sharp's intention to add a new claim based
14  upon a rule of reason information exchange violation during pretrial exchanges of jury
15  instructions and verdict forms.  Sharp's new claim came as a surprise to Defendants because
16  Sharp has never sought to amend its complaint to add a claim beyond its price-fixing
17  allegations.  Sharp should not be allowed to present evidence of this unpleaded claim at trial
18  given its delay in identifying the new claim.  Defendants would be severely prejudiced if this
19  new claim was allowed at this late stage because it would alter the nature of the litigation and
20  require reopening discovery and summary judgment briefing on the new claim.   Therefore,
21  Sharp should be barred from advancing its new claim through its economist, Dr. Jerry
22  Hausman.

23  ████████████████████████████████████████████████████████
24  ████████████████████████████████████████████████████████
25  ████████████████████████████████████████████████████████
26  ████████████████████████████████████████████████████████
27  ████████████████████████████████████████████████████████
28  ████████████████████████████████████████████████████████

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  ███████████████  When an expert's opinion is not based upon the facts and theories

2  of the case, the opinion must be excluded as irrelevant.  Because Sharp does not allege that it

3  was harmed by anticompetitive information exchanges, Dr. Hausman's testimony about the

4  effect of the information exchanges and the resulting damages Sharp suffered, as discussed in

5  paragraphs 17-77 of his report, is not relevant to any issue in the case and must be excluded.

6      Sharp is acutely aware of the distinction between horizontal price-fixing and

7  information exchanges.  In 2008, Sharp Corporation pleaded guilty to fixing the prices of

8  TFT-LCD panels sold to customers Dell, Motorola, and Apple.  Plea Agreement, *United*

9  *States v. Sharp Corp.*, No. 08-cr-00802 (N.D. Cal. Dec. 8, 2008), Dkt. 9-1.  In the guilty plea,

10 Sharp Corporation admitted that its officers and employees "participated in a conspiracy with

11 other major TFT-LCD producers, the primary purpose of which was to fix the price of TFT-

12 LCD sold to" Dell, Motorola, and Apple.  *Id.* ¶ 4(c)-(e).  The cooperation and non-prosecution

13 clauses in the plea extended to Sharp Corporation's "related entities," defined as "its

14 subsidiaries engaged in the sale or production of TFT-LCD."  *Id.* ¶¶ 13, 15.  Sharp Electronics

15 Corporation, a plaintiff in this case, is a subsidiary of Sharp Corporation that fits within the

16 definition of a related entity in the guilty plea and is represented by the same counsel in this

17 case as Sharp Corporation was for its guilty plea in the LCD case.  *See id.* at 15 (signature

18 block identifying counsel).  As part of the guilty plea, Sharp Corporation agreed to pay a fine

19 of $120 million.  *Id.* ¶ 8.  In the ensuing civil actions — which included Sharp Electronics

20 Corporation as a defendant — Sharp initially fought vigorously to be able to deny that the

21 evidence showed that it entered into agreements with its competitors to charge particular

22 prices to Dell, Motorola, and Apple, advocating instead that "Sharp and the competitors

23 *exchanged information* including price information relating to those three customers."  Sharp

24 Corporation's Response to Indirect Purchaser Plaintiffs' Objections to Special Master's June

25 14, 2011 Order re Requests for Admission at 5, *In re TFT-LCD (Flat Panel) Antitrust Litig.*,

26 No. 07-md-01827 (N.D. Cal. July 8, 2011), Dkt. 3054 (emphasis in original).  Sharp focused

27 on the legal distinctions between price-fixing agreements and information exchanges and

28 argued: "Exchanges of price information have an ambivalent status under the antitrust law.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  On the one hand, 'the dissemination of price information is not itself a *per se* violation of the

2  Sherman Act.' . . .  On the other hand, '[i]nformation exchange is an example of a facilitating

3  practice that can help support an inference of a price-fixing agreement.'"  *Id*. (citations

4  omitted).  However, the Court rejected Sharp's "bad-faith" effort to "blatantly contradict its

5  admission of guilt."  Order Granting Indirect Purchaser Plaintiffs' Objections to Special

6  Master's Denial of Motion to Deem Sharp Corporation to Have Admitted Requests for

7  Admission at 7, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827 (N.D. Cal.

8  Aug. 12, 2011), Dkt. 3287.

9       Here, Sharp, in short, is attempting to change the fundamental nature of its claim, and

10  Sharp is doing so purposefully.  This change should not be permitted.

11  **III.  FACTS**

12       On March 15, 2013, Sharp filed a complaint in the Northern District of California

13  which, along with state law claims, included a claim for relief for a violation of Section 1 of

14  the Sherman Act, 15 U.S.C. § 1, alleging that Defendants "combined and conspired to raise,

15  fix, maintain or stabilize the prices of CRTs sold in the United States."  Complaint ¶ 236,

16  *Sharp Electronics Corp., v. Hitachi Ltd.*, No. 13-cv-01173 (N.D. Cal.), Dkt. 1.  On March 20,

17  2013, Sharp filed an administrative motion to relate its case to this MDL.  Administrative

18  Motion Pursuant to Civil L.R. 3-12 to Consider Whether Cases Should Be Related, Dkt. 1604.

19  In the motion, Sharp asserted that its case should be related to this MDL because "[b]oth

20  actions involve allegations that defendants conspired to fix the prices of Cathode Ray Tubes

21  ('CRTs') and seek the same form of relief under Section 1 of the Sherman Act, Sections 4 and

22  16 of the Clayton Act, and the laws of California and other states."  *Id*. at 1.  On March 26,

23  2013, Sharp's action was reassigned to this MDL as a related case.  Related Case Order, Dkt.

24  1608.  On October 28, 2013, Sharp filed a First Amended Complaint ("FAC").  Dkt. 2030-3.

25  Sharp's FAC also alleged that Defendants conspired to "fix, raise, stabilize and maintain

26  prices for CRTs."  *Id*. ¶ 2; *see also id*. ¶¶ 5, 147, 224, 225, 252.

27       On June 13, 2014, Sharp filed its Second Amended Complaint ("SAC"), which is the

28  operative complaint in this action. Dkt. 2621.  In the SAC, Sharp once again alleges that

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   "Defendants and their co-conspirators formed an international cartel that conducted a long-

2   running conspiracy extending at a minimum from at least March 1, 1995, through at least

3   December 2007. . . The purpose and effect of this conspiracy was to fix, raise, stabilize and

4   maintain prices for CRTs." *Id.* ¶ 2.  Sharp alleges that it "suffered a direct, substantial and

5   reasonably foreseeable injury as a result of Defendants' and their co-conspirators' conspiracy

6   to raise, fix, stabilize or maintain CRT prices at supra-competitive levels." *Id.* ¶ 223.  Sharp's

7   first claim for relief is pursuant to Section 1 of the Sherman Act based upon the fact that

8   Defendants "combined and conspired to raise, fix, maintain or stabilize the prices of CRTs

9   sold in the United States." *Id.* ¶ 250.  The SAC contains no discussion of a relevant product

10  or geographical market.  The SAC contains no allegations of anticompetitive effects of

11  information exchanges — separate from those in furtherance of the alleged conspiracy — in a

12  defined market.   Sharp has dismissed all of the state law claims in the SAC; therefore, the

13  only remaining claim is under Section 1 of the Sherman Act.

14          On April 15, 2014, Sharp served the expert report of Jerry A. Hausman.  Declaration

15  of Lucius B. Lau, Ex. A ("Def. Ex. A") (Expert Report of Jerry A. Hausman (Apr. 15, 2014)

16  ("Hausman Report")).



Dr. Hausman filed a supplemental report on July 3, 2014 and a rebuttal report on September 26, 2014.  Def. Ex. B (Supplemental Expert Report of Jerry A Hausman (July 3, 2014)); Def. Ex. C (Rebuttal Expert Report of Jerry A. Hausman (Sept. 26, 2014)).

Neither the supplemental report nor the rebuttal report contains an evaluation of the effect of any price-fixing agreement on the prices for CRTs.

Sharp's proposed jury instructions and verdict form show that Sharp is advancing a rule of reason claim, based on alleged anticompetitive information exchanges, even though none its complaints did and even though Dr. Hausman never uses the words rule of reason.

## IV.   ARGUMENT

### A.   Dr. Hausman's Testimony About The Anticompetitive Effects Of Information Exchanges On CPT Prices Should Be Excluded Because It Is Irrelevant To Sharp's Claims

#### 1.   Sharp's Complaint Alleges A Violation Of § 1 Of The Sherman Act Based Upon A Price-Fixing Conspiracy

There are two distinct claims under Section 1 of the Sherman Act that may involve evidence of information exchanges.  First, there is a claim of horizontal price-fixing where the information exchanges are circumstantial evidence supporting the inference of collusion.  *See Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) ("Information exchange is an example

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1  of a facilitating practice that can help support an inference of a price-fixing agreement.").

2  When a plaintiff alleges that information exchanges were held in furtherance of a price-fixing

3  conspiracy, the conduct is considered a *per se* violation of the Sherman Act.  *See, e.g.*, *In re*

4  *Mercedes-Benz Anti-Trust Litig.*, 157 F. Supp. 2d 355, 359-62 (D.N.J. 2001) (finding

5  complaint sufficiently stated a claim for a *per se* violation of the Sherman Act where the

6  conduct alleged was "substantially more than a simple exchange of information" and

7  information exchanges were held in furtherance of the alleged conspiracy).

8  There is a separate claim under Section 1 of the Sherman Act that involves an

9  allegation that an agreement to exchange of information, without a claim of a price-fixing

10  agreement, has an anticompetitive effect on the relevant market.  In that situation, courts will

11  analyze the legality of the information exchanges under the rule of reason to determine

12  whether the practice unreasonably restrains competition.  *See Todd*, 275 F.3d at 198-99

13  ("There is a closely related but analytically distinct type of claim, also based on § 1 of the

14  Sherman Act, where the violation lies in the information exchange itself—as opposed to

15  merely using the information exchange as evidence upon which to infer a price-fixing

16  agreement. This exchange of information is not illegal *per se,* but can be found unlawful

17  under a rule of reason analysis.").  A rule of reason analysis is required because information

18  exchanges may also be procompetitive by assisting firms in analyzing industry conditions and

19  facilitating adjustments to changes in the business cycle.  *See United States v. U.S. Gypsum*

20  *Co.,* 438 U.S. 422, 441 n.16  (1978) ("The exchange of price data and other information

21  among competitors does not invariably have anticompetitive effects; indeed such practices can

22  in certain circumstances increase economic efficiency and render markets more, rather than

23  less, competitive.  For this reason, we have held that such exchanges of information do not

24  constitute a *per se* violation of the Sherman Act."); *In re Baby Food Antitrust Litig*., 166 F.3d

25  112, 118 (3d Cir. 1999) (recognizing that information exchanges are not considered a *per se*

26  antitrust violation because such practices can be pro-competitive and benefit the consumer).

27

28

DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN EXPERT TESTIMONY OF
JERRY A. HAUSMAN
Case No. 07-5944 SC, MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

Sharp's SAC, which only brings one claim for a violation of Section 1 of the Sherman Act, alleges a horizontal price-fixing conspiracy among Defendants and nothing more. Sharp's claim for relief under Section 1 of the Sherman Act reads:

**First Claim for Relief**
**(Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1)**

248. Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

249. From March 1, 1995, the exact date being unknown to Plaintiffs and exclusively within the knowledge of Defendants, Defendants and their co-conspirators entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by artificially reducing or eliminating competition in the United States.

250. *In particular, Defendants have combined and conspired to raise, fix, maintain or stabilize the prices of CRTs sold in the United States.*

251. As a result of Defendants' and their co-conspirators' unlawful conduct, prices for CRTs were raised, fixed, maintained, and stabilized in the United States.

252. The contract, combination or conspiracy among Defendants and their co-conspirators consisted of a continuing agreement, understanding, and concerted action among Defendants and their co-conspirators.

253. *For purposes of formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators did those things they contracted, combined or conspired to do, including*:

a. participating in meetings and conversations to discuss and agree upon the prices and supply of CRTs;

b. communicating in writing and orally to fix prices, allocate customers and restrict output;

c. agreeing to manipulate prices and supply of CRTs sold in the United States, and to allocate customers of such products, in a manner that deprived direct purchasers of free and open competition;

d. issuing price announcements and price quotations in accordance with the agreements reached;

e. selling CRTs to customers in the United States at non-competitive prices;

f. ***exchanging competitive sensitive information in order to facilitate their conspiracy***;

g. agreeing to maintain or lower production capacity; and

h. providing false statements to the public to explain increased prices for CRTs.

254. As a result of Defendants' unlawful conduct, Plaintiffs have been injured in their businesses and property in that they have paid more for CRT Products than they otherwise would have paid in the absence of Defendants' unlawful conduct. Sharp seeks no damages from any defendant on commerce between Toshiba and Sharp or any Sharp affiliate.

SAC ¶¶ 248-54 (emphases added).

There is nothing in the claim for relief to notify Defendants of Sharp's intent to bring a rule of reason claim based upon anticompetitive information exchanges. In fact, the only mention of information exchanges in the first claim for relief explicitly states that the exchanges were held in furtherance of the alleged conspiracy. SAC ¶ 253(f). Evidence of information exchanges held in furtherance of a conspiracy would constitute circumstantial evidence of the existence of the alleged conspiracy, not a distinct claim from relief.

Although Rule 8(d)(2) of the Federal Rules of Civil Procedure allows for alternative statements of a claim "either in a single count or . . . in separate ones," there is no reasonable reading of Sharp's first claim for relief that would put Defendants on notice that Sharp was claiming that Defendants' information exchanges, isolated from any alleged price-fixing conspiracy, unreasonably restrained competition. *Accord Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1274 (M.D. Fla. 2009) (finding pleading insufficient where plaintiff attempted to allege two separate violations of the Sherman Act in one count because it was "confusing both for the Court and for the Defendants and does not give fair notice to the Defendants of that against which they must defend"). When the intent is to plead alternative claims under Section 1 of the Sherman Act, the distinct claims need to

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1   be set forth in a clear manner.  *See, e.g.*, *Cason-Merenda v. Detroit Med. Center*, 862 F. Supp.

2   2d 603, 605, 641 (E.D. Mich. 2012) (plaintiff set forth separate counts for its alternative

3   allegations of a Sherman Act violation for (i) *per se* antitrust violation through an agreement

4   to fix wages, and (ii) "rule of reason" claim that the Defendant hospitals conspired among

5   themselves to exchange wage information in a manner that harmed competition).

6        The Court should decline to read a rule of reason claim into the case because it has not

7   been properly alleged.  When a plaintiff fails on a *per se* claim, courts do not revert to a rule

8   of reason analysis unless specifically pleaded.  *See, e.g.*, *Texaco Inc. v. Dagher*, 547 U.S. 1, 7

9   n.2 (2006) (rejecting *per se* analysis and declining to conduct a rule of reason analysis where

10  plaintiffs "ha[d] not put forth a rule of reason claim"); *BanxCorp v. Bankrate Inc.*,

11  No. 07-3398, 2011 WL 6934836, at *9 (D.N.J. Dec. 30, 2011) ("[P]laintiffs pleading

12  exclusively *per se* violations — as opposed to pleading rule of reason violations in the

13  alternative — must be careful.  If the court determines that the restraint at issue is sufficiently

14  different from the *per se* archetypes to require application of the rule of reason, the plaintiff's

15  claims will be dismissed." (internal quotation marks and citation omitted)); *United States v.*

16  *Gen. Elec. Co.*, 869 F. Supp. 1285, 1301 & n. 32 (S.D. Ohio 1994) (rejecting General

17  Electric's request for a "rule of reason" instruction, which would have created an alternative

18  basis upon which the jury could have found General Electric guilty because "[t]o have gone

19  beyond the price fixing charge would have constituted an improper constructive amendment

20  of the indictment").   Accordingly, Sharp should only be allowed to move forward on its claim

21  of a horizontal price-fixing conspiracy.

22           **2.     Sharp Should Not Be Allowed To Add A New Claim For A**
                      **Violation Of The Sherman Act Through Anticompetitive**
23                    **Information Exchanges**

24        A complaint is intended to put the defendant on notice of the evidence it needs to

25  adduce during discovery in order to defend against the plaintiff's allegations and prepare for

26  trial.  *See, e.g.*, *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) (A complaint should

27  "give fair notice of the claim being asserted so as to permit the adverse party the opportunity

28  to file a responsive answer, prepare an adequate defense . . . sharpen the issues to be litigated

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    and to confine discovery and the presentation of evidence at trial within reasonable bounds"

2    (citations omitted)).  Consistent with Sharp's representation in its motion to relate its case to

3    this MDL, Sharp's allegations of a price-fixing agreement in the SAC are virtually identical to

4    every other Plaintiff's allegations in this MDL.  Defendants relied upon these allegations of

5    price-fixing in developing the fact and expert discovery records in this MDL as well as

6    preparing for the upcoming trial.

7        Defendants were not aware of Sharp's intent to bring a rule of reason claim based

8    upon anticompetitive information exchanges until the exchange of pretrial submissions that

9    included draft verdict forms and jury instructions.  Defendants have not taken discovery on

10    the issue of anticompetitive information exchanges or developed defenses to the new claim

11    because there was no notice that it was an issue in this litigation.  This lack of discovery is

12    significant because a claim for a violation of the Sherman Act through anticompetitive

13    information exchanges requires an entirely different analysis under the rule of reason than a

14    *per se* horizontal price-fixing claim.  *See Todd*, 275 F.3d at 198 (describing a rule of reason

15    claim as "analytically distinct" from a *per se* claim under Section 1 of the Sherman Act); *see*

16    *also Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1410, 1413 (9th Cir. 1991) (distinguishing

17    how courts analyze *per se* and rule of reason cases — specifically, that the rule of reason

18    requires a burden-shifting analysis to determine "the actual effects that the challenged restraint

19    has had on competition in a relevant market" and "whether the practice is unreasonable on

20    balance").  To allow Sharp to move forward on this unpleaded claim at this late stage would

21    cause prejudice and undue delay because fairness would require reopening discovery and

22    summary judgment briefing to address the new claim.  *See, e.g.*, *Morongo Band of Mission*

23    *Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990) (upholding denial of leave to amend

24    claims, in part, because the "new claims set forth in the amended complaint would have

25    greatly altered the nature of the litigation and would have required defendants to have

26    undertaken, at a late hour, an entirely new course of defense"); *In re Mutual Funds Inv. Litig.*,

27    608 F. Supp. 2d 670, 671 (D. Md. 2009) (denying motion to amend pleading to add new

28    claims in MDL that had been pending for five years because there was no good cause for

1   delay in seeking amendment and allowing amendment would have required reopening

2   discovery and summary judgment briefing).

3       Notably, Sharp has never attempted to add this new claim even though it has amended

4   its complaint multiple times.  In granting Sharp's most recent motion to amend, this Court

5   noted that the "proposed amendment does not raise novel issues in this case."  Order Granting

6   Sharp's Motion for Leave to Amend, Dkt. 2612 (June 9, 2014), at 5 (discussing the factors

7   that should be considered in allowing leave to amend as outlined in *Foman v. Davis*, 371 U.S.

8   178 (1962)).  Adding a new claim for a Sherman Act violation through information exchanges

9   would have undoubtedly raised novel issues because no other Plaintiffs in this MDL have

10  tried to assert that distinct claim.  Sharp has improperly shielded its intention to pursue the

11  separate "information exchange" claim by failing to include it in any of its amended

12  complaints.  Sharp should have been aware of this potential information exchange claim when

13  it filed its original complaint, and its repeated failure to include the claim in any version of its

14  complaint weighs against allowing Sharp to further amend to add the new claim at this late

15  stage.  *See id.* at 4 (listing "repeated failure to cure deficiencies by amendments previously

16  allowed" as one of the *Foman* factors that weighs against allowing an amendment).

17      Defendants would have been able to move to dismiss the rule of reason claim at the

18  pleading stage if Sharp had included the claim in any version of its complaint.  A challenge to

19  the SAC would likely have been successful because the SAC does not meet the pleading

20  requirements of a rule of reason claim.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

21  (2007) (finding that a complaint must include "enough facts to state a claim to relief that is

22  plausible on its face").  To begin with, Sharp's SAC fails to define the relevant geographical

23  and product markets and allege any anticompetitive effect of Defendants' conduct in the

24  relevant markets.  *See Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 967 F. Supp.

25  2d 1347, 1363 (N.D. Cal. 2013) ("In order to plead a viable claim of a rule of reason violation,

26  Plaintiff must allege sufficient facts to support its claim that these agreements harmed

27  competition with a relevant geographic and product market." (citation omitted)).  Moreover,

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   Sharp does not include any factual allegation to establish which information exchanges, as

2   opposed to alleged agreements on price, had an anticompetitive effect in any defined market.

3   Defendants were not put on notice of Sharp's intention to add a rule of reason

4   information exchange claim to its complaint through Dr. Hausman's report.  At the outset,

5   Sharp filed its SAC *after* Dr. Hausman's report and failed to include any allegation of an

6   anticompetitive information exchange violation.  Defendants are entitled to rely on the most

7   recent pleading in developing a defense strategy.  *See Massey v. Helman*, 196 F.3d 727, 735

8   (7th Cir. 2000) ("[W]hen a plaintiff files an amended complaint, the new complaint

9   supersedes all previous complaints and controls the case from that point forward" and the new

10  complaint "wipes away prior pleadings").  Moreover, Sharp never indicated that Dr.

11  Hausman's report was meant to add a distinct claim for anticompetitive information

12  exchanges.  Dr. Hausman does not even refer to the rule of reason in either his reports or

13  deposition testimony.  It is not Defendants' burden to guess whether Sharp's claims have

14  changed based upon its expert's opinion in the absence of an amendment to the pleadings.

15  *See, e.g.*, *Richardson v. Rose Transport, Inc.*, No. 11-0317, 2014 WL 121690, at *5 (E.D. Ky.

16  Jan. 13, 2014) ("[T]he fact that an expert witness opined about a defendants' negligence does

17  not, on its own, put the defendants on notice that the plaintiffs are pursuing claims that have

18  not been alleged in either the original complaint or the first amended complaint.  Litigants

19  often forgo valid claims for a variety of reasons.  The burden is not on the defendant to

20  discern which claims the plaintiff *intends* to bring against it when the complaint makes clear

21  exactly which claims are being brought." (emphasis in original) (citation omitted)); *McCarthy*

22  *v. Dun & Bradstreet Corp.*, 372 F. Supp. 2d 694, 701 n.8 (D. Conn. 2005) (finding discussion

23  of new claim in expert report did not put defendants on notice of new claim because "[w]hen a

24  complaint accurately and specifically sets out its claim" a defendant is not required "based on

25  the plaintiff's conduct in litigation, to guess at what other claims the plaintiff might intend to

26  bring in the future").

27  Sharp's reference to an information exchange violation in its supplemental discovery

28  responses to certain Defendants — not the undersigned Defendants — is also insufficient to

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    provide notice of the new claim.  Def. Ex. D at 15-16 (Sharp's First Supplemental Responses

2    and Objections to Defendants Hitachi Electronic Devices (USA), Inc. and Samsung SDI

3    America, Inc.'s First Set of Interrogatories (Feb. 26, 2014)).  Again, Sharp filed its SAC *after*

4    these discovery responses and failed to include any allegation of an anticompetitive

5    information exchange violation.  Notice of new allegations through discovery alone fails to

6    satisfy the notice requirement of Rule 8 of the Federal Rules of Civil Procedure where the

7    new allegations are not included in an amended complaint. *See Pena v. Taylor Farms Pac.,*

8    *Inc.*, No. 13-cv-01282, 2014 WL 1330754, at *5 (E.D. Cal. Mar. 28, 2014) ("Further, in most

9    instances, notice may not be effected through discovery alone because such notice will usually

10   fail to satisfy Rule 8. . . . Instead, particularly in light of the Supreme Court's subsequent

11   decisions in [*Twombly* and *Iqbal*] a plaintiff must amend the complaint or otherwise

12   incorporate new allegations.") (citing *Pickern v. Pier 1 Imports (U.S.), Inc.,* 457 F.3d 963,

13   968-69 (9th Cir. 2006)).   Moreover, Sharp's vague and conclusory assertion that Defendants

14   ███████████████████████████████████████████████████████████████

15   ███████████████████████████████████████████████████████████████

16   ███████████████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████████████

18   ███████████████████ did not put Defendants on notice of the new claim.   Def. Ex. D at 15

19   (emphasis added); *see also Bassani v. Sutton*, No. 08-3012, 2010 WL 1734857, at *4-5 (E.D.

20   Wash. Apr. 28, 2010) (finding "vague and conclusory" statements in interrogatory responses

21   "setting forth only ill-defined allegations" were insufficient to put defendant on notice of new

22   claims to warrant defendants taking discovery on the new claims).

23        In fact, the undersigned Defendants were not aware of this procedurally improper

24   attempt to introduce a new claim into the case through discovery responses until Sharp's

25   counsel pointed Defendants to these discovery responses during a meet and confer on jury

26   instructions.  Sharp was only responding to discovery propounded by two Defendants, Hitachi

27   and Samsung SDI, who are not signatories to this motion.  This isolated response to discovery

28

DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN EXPERT TESTIMONY OF
JERRY A. HAUSMAN
Case No. 07-5944 SC, MDL No. 1917

propounded by a limited subset of Defendants does not provide sufficient notice of an entirely new claim to all Defendants.

### 3. Dr. Hausman's Report Examines Anticompetitive Effects Of Information Exchanges Under A Rule Of Reason Analysis

Rule 702(a) of the Federal Rules of Evidence permits expert testimony by a witness "qualified as an expert by knowledge, skill, experience, training, or education" if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). This provision of Rule 702 is aimed at determining whether the expert's testimony is relevant to the claims at issue. *Id.* "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (citation omitted). "'An additional consideration under Rule 702 — and another aspect of relevancy — is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.' The consideration has been aptly described . . . as one of 'fit.'" *Id.* (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)).

Sharp cannot have its expert provide an opinion on a rule of reason claim that it has never pleaded. When an expert's opinion is not based upon the facts and theories of the case, the opinion does not "fit" and must be excluded for that reason. *See, e.g.*, *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 760-61 (8th Cir. 2003) (upholding exclusion of expert who purported to provide the necessary causal link between defendants' alleged conduct and plaintiff's claimed damages because there was "a disconnect between [the expert's] work and [the plaintiff's] theory of liability").

There is a major disconnect between Dr. Hausman's work and Sharp's claim of a price-fixing conspiracy as alleged in its SAC. Sharp alleges that it was injured as a result of Defendants' conspiracy to fix CRT prices. *See* SAC ¶ 223 ("As direct purchasers of CRTs, Plaintiffs have suffered a direct, substantial and reasonably foreseeable injury as a result of Defendants' and their co-conspirators' *conspiracy to raise, fix, stabilize or maintain CRT prices at supra-competitive levels.*" (emphasis added)). ▮▮▮▮▮▮▮▮▮▮▮▮

DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN EXPERT TESTIMONY OF JERRY A. HAUSMAN
Case No. 07-5944 SC, MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1 ██████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████████

4 ██████████████████████████████████████████████████████

5 ██████████████████████████████████████████████████████

6 ████████████████████████████████████████████ This is a

7 classic rule of reason analysis of the anticompetitive effects of information exchanges that

8 does not "fit" with Sharp's allegations of a horizontal price-fixing conspiracy among

9 Defendants. *Accord Daubert*, 509 U.S. at 591.

10 ███████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████

12 ██████████████████████████████████████████████████████

13 ██████████████████████████████████████████ Despite being

14 filed after his report, Sharp's SAC does not contain any references to these relevant product or

15 geographical markets. █████████████████████████████████

16 ██████████████████████████████████████████████████████

17 Sharp also does not limit its complaint to the North American market, instead alleging that the

18 "overall CRT conspiracy set and/or affected worldwide prices (including prices in the United

19 States)" and referring to Defendants' conduct as "a global conspiracy." SAC ¶¶ 151, 175.

20 This is further evidence that Sharp never intended to bring an information exchange violation

21 claim in the alternative to its horizontal price-fixing agreement claim. *See Knevelbaard*

22 *Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 986 (9th Cir. 2000) ("When a *per se* violation such

23 as horizontal price fixing has occurred, there is no need to define a relevant market or to show

24 that the defendants had power within the market.").

25 █████████████████████████████████████████████████

26 ██████████████████████████████████████████████████████

27 ██████████████████████████████████████████████████████

28 ██████████████████████████████████████████████████████

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2    ██████████████████████████ *Id.* ¶ 24.   Indeed, his report is completely devoid of any

3    analysis of the effect of the price-fixing conspiracy alleged in Sharp's complaint.   Dr.

4    Hausman's evaluation of the effect of the information exchanges will not serve to help the

5    jury understand the evidence or determine a fact in issue because Sharp does not allege it was

6    injured by anticompetitive information exchanges.   *See, e.g.*, *McCarthy v. Target Corp.*, No.

7    09-1548, 2012 WL 967853, at *6-7 (N.D. Ill. Mar. 19, 2012) (excluding expert testimony

8    where "opinions are not relevant or helpful because they do not relate to the factual

9    allegations pled by [plaintiff] as the basis for her claims").

10           Furthermore, Dr. Hausman's testimony cannot be used to support Sharp's allegation of

11    a price-fixing agreement among Defendants.   ███████████████████████████

12    █████████████████████████████████████████████████████████████

13    █████████████████████████████████████████████████████████████

14    ███████████████████████████████████████████   Any

15    attempt by Sharp to use Dr. Hausman's testimony as evidence that the alleged price-fixing

16    conspiracy affected prices would be improperly meshing the distinct legal concepts of

17    anticompetitive information exchanges and price-fixing agreements.   *See, e.g.*, *Williamson Oil*

18    *Co. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003).   In *Williamson Oil*, cigarette

19    wholesalers brought an antitrust class action alleging a price-fixing conspiracy by tobacco

20    companies.   The district court entered summary judgment in favor of the manufacturers

21    because the wholesalers had failed to demonstrate the existence of a "plus factor" necessary to

22    create an inference of a price-fixing conspiracy.   *Id*. at 1291.   On appeal, the wholesalers

23    challenged the district court's exclusion of their expert's testimony concerning the plus

24    factors.   *Id*. at 1321.   The Eleventh Circuit upheld the exclusion because the expert "defined

25    'collusion' to include conscious parallelism.   Put differently, he did not differentiate between

26    legal and illegal pricing behavior, and instead simply grouped both of these phenomena under

27    the umbrella of illegal, collusive price fixing."   *Id*. at 1323.   Similarly, Dr. Hausman should

28

1  not be allowed to provide testimony which improperly lumps together the distinct legal

2  concepts of anticompetitive information exchanges and collusive price-fixing.

3          Accordingly, Dr. Hausman's testimony about the anticompetitive effects of

4  Defendants' information exchanges, as well as the quantification of Sharp's damages as a

5  result of the information exchanges, which are discussed in his expert report in paragraphs

6  17-77, should be excluded.

7          **B.      Even If Dr. Hausman's Testimony Has Some Relevance, Its
                    Probative Value Is Substantially Outweighed By A Danger Of

8                   Confusing The Issues And Misleading The Jury**

9          Pursuant to Rule 403 of the Federal Rules of Evidence, a "court may exclude relevant

10 evidence if its probative value is substantially outweighed by a danger of one or more of the

11 following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

12 time, or needlessly presenting cumulative evidence."   Because expert testimony can be both

13 powerful and misleading, trial judges should exercise more Rule 403 control over expert

14 testimony than lay witness testimony.  *Daubert*, 509 U.S. at 595; *see also United States v.*

15 *Hoac,* 990 F.2d 1099, 1103 (9th Cir. 1993) ("Otherwise admissible expert testimony may be

16 excluded under Fed. R. Evid. 403 if its probative value is substantially outweighed by the

17 danger of unfair prejudice, confusion of the issues, or undue delay.").   To the extent Dr.

18 Hausman's testimony has any relevance to Sharp's claims as pleaded, the probative value is

19 substantially outweighed by a danger of confusing the issues and misleading the jury.   As

20 discussed above, Dr. Hausman's report only evaluates the effect of alleged anticompetitive

21 information exchanges on the prices for CPTs.   There is a significant danger that his analysis

22 will confuse and mislead the jury into thinking the relevant issue is the anticompetitive effects

23 of the information exchanges apart from proof of the alleged price-fixing conspiracy.  For that

24 reason, Dr. Hausman's testimony should be excluded under Rule 403.

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   **V.     CONCLUSION**

2          For these reasons, the Court should grant Defendants' motion and preclude Dr.

3   Hausman from providing expert testimony concerning the effect of Defendants' information

4   exchanges on the North American CPT market and Sharp's alleged damages that resulted

5   from the information exchanges, which are discussed in his expert report in paragraphs

6   17-77.

7

8                                              Respectfully submitted,

9   Dated:  February 13, 2015                  **WHITE & CASE** LLP

10

11                                   By:  _/s/ Lucius B. Lau_____
                                          Christopher M. Curran (*pro hac vice*)
12                                        ccurran@whitecase.com
                                          Lucius B. Lau (*pro hac vice*)
13                                        alau@whitecase.com
                                          Dana E. Foster (*pro hac vice*)
14                                        dfoster@whitecase.com
                                          701 Thirteenth Street, N.W.
15                                        Washington, DC  20005
                                          tel.: (202) 626-3600
16                                        fax: (202) 639-9355
17

18                                        *Counsel to Defendants Toshiba Corporation,*
19                                        *Toshiba America, Inc., Toshiba America*
                                          *Information Systems, Inc., Toshiba America*
20                                        *Consumer Products, L.L.C., and Toshiba*
                                          *America Electronic Components, Inc.*
21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

**MUNGER, TOLLES & OLSON LLP**

2

3     By: */s/ Miriam Kim*

4         JEROME C. ROTH (State Bar No. 159483)
          jerome.roth@mto.com

5         MIRIAM KIM (State Bar No. 238230)
          miriam.kim@mto.com

6         MUNGER, TOLLES & OLSON LLP

7         560 Mission Street, Twenty-Seventh Floor
          San Francisco, California 94105-2907

8         Telephone: (415) 512-4000

9         Facsimile: (415) 512-4077

10        BRAD D. BRIAN (SBN 079001)

11        brad.brian@mto.com

12        WILLIAM D. TEMKO (SBN 098858)
          William.Temko@mto.com

13        GREGORY J. WEINGART (SBN 157997)

14        gregory.weingart@mto.com
          E. MARTIN ESTRADA (SBN 223802)

15        martin.estrada@mto.com
          MUNGER, TOLLES & OLSON LLP

16        355 South Grand Avenue, Thirty-Fifth Floor

17        Los Angeles, CA 90071-1560

18        Telephone: (213) 683-9100
          Facsimile: (213) 687-3702

19

20        ROBERT E. FREITAS (SBN 80948)
          rfreitas@fawlaw.com

21        FREITAS ANGELL & WEINBERG LLP

22        350 Marine Parkway, Suite 200
          Redwood Shores, California 94065

23        Telephone: (650) 593-6300
          Facsimile: (650) 593-6301

24

25        *Attorneys for Defendant LG Electronics, Inc.*

26

27

28

DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN EXPERT TESTIMONY OF
JERRY A. HAUSMAN
Case No. 07-5944 SC, MDL No. 1917
20

**BAKER BOTTS LLP**

By: */s/ John M. Taladay*

JOHN M. TALADAY (*pro hac vice*)
john.taladay@bakerbotts.com
JOSEPH OSTOYICH (*pro hac vice*)
joseph.ostoyich@bakerbotts.com
ERIK T. KOONS (*pro hac vice*)
erik.koons@bakerbotts.com
CHARLES M. MALAISE (*pro hac vice*)
charles.malaise@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

JON V. SWENSON (SBN 233054)
jon.swenson@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
E-mail: jon.swenson@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips N.V., Philips Electronics North America Corporation, Philips Taiwan Ltd., and Philips do Brasil, Ltda.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SQUIRE PATTON BOGGS (US) LLP**

By:  */s/ Nathan Lane, III*

    Nathan Lane, III (CA Bar No. 50961)
    Mark C. Dosker (CA Bar No. 114789)
    SQUIRE PATTON BOGGS (US) LLP
    275 Battery Street, Suite 2600
    San Francisco, California 94111
    Telephone:  (415) 954-0200
    Facsimile:  (415) 393-9887
    E-mail:  nathan.lane@squiresanders.com
    E-mail:  mark.dosker@squiresanders.com

    Donald A. Wall (Pro Hac Vice)
    SQUIRE PATTON BOGGS (US) LLP
    1 East Washington Street, Suite 2700
    Phoenix, Arizona 85004
    Telephone: + 1 602 528 4005
    Facsimile: +1 602 253 8129
    Email: donald.wall@squirepb.com

    *Attorneys for Defendant Technologies*
    *Displays Americas LLC with respect to all*
    *cases except Office Depot, Inc. v. Technicolor*
    *SA, et al. and Sears, Roebuck and Co., et al. v.*
    *Technicolor SA, et al.*

**FAEGRE BAKER DANIELS LLP**

By:  */s/ Kathy L. Osborn*

    Kathy L. Osborn (*pro hac vice*)
    Ryan M. Hurley (*pro hac vice*)
    Faegre Baker Daniels LLP
    300 N. Meridian Street, Suite 2700
    Indianapolis, IN  46204
    Telephone: +1-317-237-0300
    Facsimile: +1-317-237-1000
    kathy.osborn@FaegreBD.com
    ryan.hurley@FaegreBD.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Jeffrey S. Roberts (*pro hac vice*)
Email: jeff.roberts@FaegreBD.com
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: (303) 607-3500
Facsimile: (303) 607-3600

Stephen M. Judge (*pro hac vice*)
Email: steve.judge@FaegreBd.com
Faegre Baker Daniels LLP
202 S. Michigan Street, Suite 1400
South Bend, IN 46601
Telephone: (574) 234-4149
Facsimile: (574) 239-1900

*Attorneys for Defendants Thomson SA and
Thomson Consumer Electronics, Inc.*

Pursuant to Local Rule 5-1(i), the filer attests that the concurrence in the filing of this
document has been obtained from each of the above signatories.

DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN EXPERT TESTIMONY OF
JERRY A. HAUSMAN
Case No. 07-5944 SC, MDL No. 1917
23

1

**<u>CERTIFICATE OF SERVICE</u>**

On February 13, 2015, I caused a copy of "DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN EXPERT TESTIMONY OF JERRY A. HAUSMAN" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

By: ___*/s/ Lucius B. Lau*_____
        Lucius B. Lau (*pro hac vice*)

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28