1  JEROME C. ROTH (State Bar No. 159483)
   jerome.roth@mto.com
2  MIRIAM KIM (State Bar No. 238230)
   miriam.kim@mto.com
3  MUNGER, TOLLES & OLSON LLP
   560 Mission Street, Twenty-Seventh Floor
4  San Francisco, California 94105-2907
   Telephone: (415) 512-4000
5  Facsimile: (415) 512-4077

6  BRAD D. BRIAN (SBN 079001)
   brad.brian@mto.com
7  WILLIAM D. TEMKO (SBN 098858)
   william.temko@mto.com
8  GREGORY J. WEINGART (SBN 157997)
   gregory.weingart@mto.com
9  E. MARTIN ESTRADA (SBN 223802)
   martin.estrada@mto.com
10 MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, Thirty-Fifth Floor
11 Los Angeles, CA 90071-1560
   Telephone: (213) 683-9100
12 Facsimile: (213) 687-3702

13 ROBERT E. FREITAS (SBN 80948)
   rfreitas@fawlaw.com
14 FREITAS ANGELL & WEINBERG LLP
   350 Marine Parkway, Suite 200
15 Redwood Shores, California 94065
   Telephone: (650) 593-6300
16 Facsimile: (650) 593-6301

17 *Attorneys for Defendant LG Electronics, Inc.*

18 *Additional Moving Defendants and Counsel
   Listed on Signature Pages*
19

20                UNITED STATES DISTRICT COURT

21        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. Master File No. 3:07-md-05944-SC |
| | MDL NO. 1917 |
| This Document Relates to: | |
| *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513 | **DEFENDANTS' MOTION IN LIMINE #16: TO PERMIT EVIDENCE AND ARGUMENT REGARDING UPSTREAM PASS-ON AND PLAINTIFFS' BARGAINING POWER [REDACTED]** |
| *Best Buy Co., et al. v. Technicolor SA, et al.*, No. 13-cv-05264 | Judge: Hon. Samuel Conti<br>Date: None Set<br>Ctrm: 1, 17th Floor |
| *Sears, Roebuck and Co. and Kmart Corp. v.* | |

3:07-cv-05944-SC; MDL 1917

1 | *Technicolor SA,* No. 3:13-cv-05262

2 | *Sears, Roebuck and Co. and Kmart Corp. v.*
3 | *Chunghwa Picture Tubes, Ltd.,* No. 11-cv-05514

4 |
5 | *Sharp Electronics Corp., et al. v. Hitachi Ltd., et al.*, No. 13-cv-1173

6 | *Sharp Electronics Corp., et al. v. Koninklijke*
7 | *Philips Elecs., N.V., et al.,* No. 13-cv-2776

8 | *Siegel v. Hitachi, Ltd.*, No. 11-cv-05502

9 | *Siegel v. Technicolor SA,* No. 13-cv-05261

10 | *Target Corp. v. Chunghwa Picture Tubes,*
11 | *Ltd.*, No. 11-cv-05514

12 | *Target Corp. v. Technicolor SA,* No. 13-cv-05686

13 |
14 | *ViewSonic Corporation v. Chunghwa Picture Tubes Ltd.*, No. 14-cv-2510

28 | 3:07-cv-05944-SC; MDL 1917

DEFS' MOT. IN LIMINE #16: TO PERMIT EVIDENCE AND ARGUMENT REGARDING UPSTREAM PASS-ON AND PLAINTIFFS' BARGAINING POWER

**NOTICE OF MOTION AND MOTION**

TO THE COURT, THE CLERK, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that as soon as the matter may be heard, in Courtroom 1, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Samuel Conti, the undersigned defendants ("Defendants")[1] will and hereby do move the Court to permit evidence and argument regarding upstream pass-on and Plaintiffs' bargaining power, for the reasons set forth in the accompanying Memorandum of Points and Authorities.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support thereof, the complete files and records in this action, oral argument of counsel, and such other and further matters as this Court may consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

All but one of the Plaintiffs never purchased any "cathode ray tubes" ("CRTs"), the components that are the focus of this case and that Plaintiffs allege were price-fixed. Instead, Plaintiffs purchased finished products – televisions and/or monitors that contained CRTs. But before Plaintiffs purchased those finished products, the CRTs had already been sold by Defendants to companies that manufactured televisions and monitors using the CRTs. There is no claim of price fixing on the finished televisions and monitors. Given the nature of Plaintiffs' claims, "upstream pass-on" evidence – that is, evidence establishing that the alleged CRT overcharge, if any, was passed on to Plaintiffs in the prices they paid for finished products – will be essential to the jury's determination concerning whether Plaintiffs were harmed and, if so, what are the accurate damages in this case.

Nonetheless, Plaintiffs have indicated that they intend to move to exclude upstream pass-on evidence from being presented to the jury. In other words, Plaintiffs seek to recover billions of dollars in damages while excusing themselves of the requirement of proving that they were harmed, and preventing the jury from hearing evidence that, due to Plaintiffs' bargaining power as

---

[1] Each Defendant moves only as to the cases in which it remains active.

national retailers and manufacturers, only a fraction of any overcharges were actually passed on to Plaintiffs.

Plaintiffs are expected to argue that evidence of upstream pass-on is precluded by *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323 (9th Cir. 1980) ("*Royal Printing*"). Any such argument ignores the fact that the subsequently-enacted Foreign Trade Antitrust Improvements Act ("FTAIA") explicitly requires that Plaintiffs demonstrate an "effect" in the United States of the foreign price fixing conduct upon which they rely. There can be no domestic "effect" without pass-on, and Plaintiffs cannot satisfy the requirements of the FTAIA without presenting evidence regarding upstream pass-on of the overcharge in this case.

*Royal Printing* does not set forth a blanket holding that upstream pass-on evidence can never be admitted; it simply held that indirect purchasers were permitted to sue for the entire overcharge amount where they purchased the actual price-fixed goods from wholly-owned subsidiaries of the defendants. *Id.* at 327. But *Royal Printing* did not address the admissibility of upstream pass-on evidence in a component case such as this one, where the only way the Plaintiffs can show an antitrust injury at all is to prove the prices they paid were affected by the price-fixing of the component. Nor did it address in any way the requirements established by the FTAIA. As such, *Royal Printing* does not bar upstream pass-on evidence that is independently relevant.

Here, evidence of upstream pass-on is relevant on at least four separate grounds, including for purposes of (1) proving the elements of a Sherman Act claim in light of the FTAIA, (2) addressing express overcharge pass-through assumptions made by Plaintiffs' damages expert; (3) contesting whether Plaintiffs have established a viable antitrust injury; and (4) rebutting damages figures for Plaintiff Best Buy's claims under Minnesota law. Accordingly, evidence and argument regarding upstream pass-on should be admitted at trial.

## I.     Evidence of Upstream Pass-On Is Required to Satisfy the FTAIA

In 1982, Congress enacted the FTAIA to "respon[d] to concerns regarding the scope of the broad jurisdictional language in the Sherman Act." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 985 (9th Cir. 2008). The FTAIA was designed to prevent "unreasonable interference with the sovereign authority of other nations," and avoid "creating

friction with many foreign countries and resentment at the apparent effort of the United States to act as the world's competition police officer." *Motorola Mobility LLC, v. AU Optronics Corp.*, ---F.3d----, 2015 WL 137907, at *9 (7th Cir. Jan. 12, 2015) (internal quotation marks and citations omitted).  Under the FTAIA, foreign conduct, which is not import trade, is not subject to the Sherman Act unless (1) "such conduct has a direct, substantial, and reasonably foreseeable effect" on U.S. trade or commerce, and (2) such effect "gives rise" to a plaintiff's claim.  *See* 15 U.S.C. § 6a (1)(2).  This limited carve-out is generally referred to as the "domestic effects exception" of the FTAIA.

The FTAIA is not jurisdictional, but rather goes directly to the merits of an antitrust claim by "provid[ing] substantive elements under the Sherman Act in cases involving nonimport trade with foreign nations." *United States v. Hui Hsiung*, ---F.3d----, 2015 WL 400550, at *11 (9th Cir. Jan. 30, 2015).  Thus, Plaintiffs seeking to bring a Sherman Act claim have the burden of establishing that the "domestic effects exception" applies:  "[W]hen a case involves nonimport trade with foreign nations, the Sherman Act does not apply unless the FTAIA domestic effects exception applies." *Id.* at *15.

The vast majority of the CRT transactions at issue in this case were foreign transactions, rather than import or domestic commerce, which need not satisfy the "domestic effects exception." The parties have filed numerous motions for summary judgment regarding issues governed by the FTAIA.[2]  As to any claims that survive summary judgment, Plaintiffs will have the burden of proving that the foreign CRT transactions at issue had a "direct, substantial, and reasonably foreseeable effect" on U.S. trade or commerce, and that such effect "gives rise" to Plaintiffs claim. *See* 15 U.S.C. § 6a.  Because all but one of the plaintiffs never purchased CRTs, but instead purchased only finished televisions and monitors *after* the allegedly overcharged CRTs had first

---

[2] (*See* Defendants' Joint Notice of Motion and Motion for Summary Judgment Based on Plaintiffs' Failure to Distinguish Between Actionable and Non-Actionable Damages Under the FTAIA, Dec. 7, 2014, ECF No. 3008; LGE Defendants' Notice of Motion and Motion for Partial Summary Judgment on FTAIA Grounds; Memorandum of Points and Authorities In Support Thereof, Dec. 7, 2014, ECF No. 3032; LGE Defendants' Notice of Motion and Motion for Partial Summary Judgment on Standing Grounds; Memorandum of Points and Authorities In Support Thereof, Dec. 7, 2014, ECF No. 3035.)

1   been sold to television and monitor manufacturers, plaintiffs will necessarily need to present
2   upstream pass-on evidence in order to prove any "effect" on U.S. commerce.
3         Defendants, on the other hand, intend to demonstrate to the jury that plaintiffs cannot
4   satisfy their burden of satisfying the FTAIA's "domestic effects exception" because, among other
5   things, the foreign CRT transactions did not have a "direct" or "substantial" effect on U.S.
6   commerce.  For purposes of the FTAIA, the Ninth Circuit has explained that "an effect is 'direct'
7   if it follows as an immediate consequence of the defendant's activity," and that "[a]n effect cannot
8   be 'direct' where it depends on . . . uncertain intervening developments." *United States v. LSL*
9   *Biotechnologies*, 379 F.3d 672, 680-81 (9th Cir. 2004); *see also Hui Hsiung*, 2015 WL 400550, at
10  *17 (same).
11        Whether or not plaintiffs have proven a "direct, substantial, and reasonably foreseeable
12  effect" sufficient to satisfy the FTAIA's "domestic effects exception" is a question of fact.  For
13  instance, in *Hui Hsiung*, the Ninth Circuit analyzed the FTAIA's "direct" effect requirement under
14  a sufficiency of the evidence standard, considering "whether any rational trier of fact could have
15  found the essential elements of the crime beyond a reasonable doubt." *Hui Hsiung*, 2015 WL
16  400550 at *17 (citation omitted).  In finding that sufficient evidence had been presented to the jury
17  on the "direct" requirement, the court relied, in part, upon testimony that if the component "price
18  goes up, then it will directly impact" the price of the finished product sold in the United States,
19  and the court pointed to evidence about "direct negotiations" with United States companies.  *Id.*
20  (internal quotation marks omitted).  Similarly, the Second Circuit has stated that deciding whether
21  a domestic effect "is sufficiently 'direct' under the FTAIA will depend on many factors, including
22  the structure of the market and the nature of the commercial relationships *at each link in the*
23  *causal chain*." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 413 (2d Cir. 2014)
24  (emphasis added).
25        Evidence regarding upstream pass-on, including evidence of Plaintiffs' strong bargaining
26  power and of the significant competition within the finished television and monitor market, will be
27  essential to proving that foreign CRT transactions did not have a "direct" or "substantial" effect on
28  U.S. commerce.  Pass on decisions are the result of a variety of sometimes complex economic

factors, which affect the degree to which an "effect" is "direct" or "substantial."  The fact that Plaintiffs – who, due to their size and large market share, wielded enormous bargaining power – could dictate pricing and largely prevent any overcharges from being passed on to them is important for demonstrating the lack of any "direct" or "substantial" effect.  If plaintiffs could fend off overcharges, or if competition in the finished television or monitor market prevented any CRT overcharge from being incorporated into the price of the finished products Plaintiffs purchased, the alleged CRT price fixing would not have had an "immediate consequence" on U.S. commerce.  *See LSL Biotechnologies*, 379 F.3d at 680-81.  Further, the impact of Plaintiffs bargaining power and the balance of the other factors that drive pass-on decisions mean that any effect was subject to "uncertain intervening developments."  *See id.*  Upstream pass-on evidence, therefore, goes directly to a central issue of fact in this case: whether or not the foreign CRT transactions had a "direct" or "substantial" effect on U.S. commerce.[3]

Because upstream pass-on evidence is necessary for the jury to resolve whether plaintiffs can satisfy the FTAIA's "domestic effects exception," and, thus, whether plaintiffs can prove their Sherman Act claim, this evidence should be admitted at trial.

## II. Defendants Must Be Able to Introduce Evidence of Upstream Pass-On to Challenge the Methodology of Plaintiffs' Damages Calculations

Evidence of upstream pass-on is also integral to challenging Plaintiffs' damages estimates. Dr. Alan Frankel, Plaintiffs' damages calculation expert, specifically considered ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[3] The relevance of upstream pass-on evidence to the FTAIA analysis is further seen in the Seventh Circuit's determination in *Motorola* that the plaintiff had failed to satisfy the "give rise to" prong of the FTAIA's "domestic effects exception" in part because of the "remarkable dearth of evidence from which to infer harm to Motorola."  The court faulted the plaintiff for pleading that "it paid more for cellphones that it purchased from its subsidiaries" as a result of the price-fixing of LCD panels, without providing evidence "to estimate the increase in the price paid by Motorola for finished cellphones."  *Motorola*, 2015 WL 137907 at *6-*8.

1 █

2 █

3 █

4 █

5 █

6 █

7 █

8 █

9 █

10 █

Dr. Frankel's analysis of the pass-through rate is essential both to evaluating his damages calculations and to weighing his credibility as a witness. Dr. Frankel's findings regarding the pass-through rate ███ ███ There is defense expert testimony in this case that the pass-through rate was, in fact, no more than between 60% and 70%, ███ ███ This contrary evidence is relevant to the jury's accurate assessment of Dr. Frankel's analysis. Indeed, to allow Dr. Frankel to present his damages testimony without allowing evidence about upstream pass-on would allow a bedrock – and deeply flawed – predicate of his damages calculations to go untested. In order to realistically defend this case and address express findings made by Plaintiffs' damages expert, Defendants should be allowed to present the jury with evidence regarding the lack of upstream pass-on.

### III. Upstream Pass-On Evidence Is Necessary to Address Whether Plaintiffs Have Established Antitrust Injury

Upstream pass-on evidence is also relevant to Plaintiffs' ability to establish a viable antitrust injury. The Supreme Court has instructed "that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983) ("*AGC*") (internal quotation marks and citation omitted). A plaintiff, therefore,

"may only pursue an antitrust action if it can show 'antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999) (quoting *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)). In determining whether a plaintiff has demonstrated antitrust standing, the Supreme Court in *AGC* identified the following relevant factors: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall"; "(2) the directness of the injury"; "(3) the speculative measure of the harm"; "(4) the risk of duplicative recovery"; and "(5) the complexity in apportioning damages." *See Am. Ad Mgmt.*, 190 F.3d at 1054. The first factor, "the nature of the plaintiff's alleged injury," is given "great weight." *Id.* at 1055.

With regard to the first factor, the Ninth Circuit has held that proving antitrust injury "requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors." *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985). "In other words, the party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." *Eagle v. Star–Kist Foods, Inc.*, 812 F.2d 538, 540 (9th Cir. 1987); *see also Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 704-05 (9th Cir. 2001) (holding that hospitals harmed by tobacco companies had suffered harm in a different market from the nicotine delivery market and therefore had failed to demonstrate antitrust injury). As discussed above, however, Plaintiffs were not participants in the CRT market – they were neither "consumers" of CRTs nor "competitors" of the CRT manufacturers. Indeed, all but one plaintiff never even purchased any CRTs. Rather, plaintiffs purchased finished products that contained CRTs, and did so only after the CRTs had first been purchased by television and monitor manufacturers, which occurred in an entirely separate market.

Some courts have allowed plaintiffs to circumvent the "same market" requirement for antitrust standing in component cases by proving that the market in which they purchased – here, finished CRT products – was "inextricably linked" with the market from which the conspiracy occurred and that the price-fixing of the components "affect[ed]" the prices of the finished products. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1122-1123

(N.D. Cal. 2008) (finding standing had been sufficiently pled based on claim that "changes in the prices paid by direct purchasers of LCD panels affect prices paid by indirect purchasers of products containing LCD panels"); *see also In re Auto. Parts Litig.*, Nos. 12-MD-02311, 2:12-CV-00502, 2:12-CV-00503,  2014 WL 4793848 (E.D. Mich. Sept. 25, 2014) (plaintiffs challenging price-fixing of automotive bearings adequately alleged "economic injury because the overcharges *affected* the price of vehicles containing" these components (emphasis added)).  Indeed, Plaintiffs relied on the *In re TFT-LCD* decision in their opposition to Defendants' motion for summary judgment regarding antitrust injury.[4]  In the event that the Court denies summary judgment here and concludes that Plaintiffs' claims should proceed to trial, Plaintiffs will have to *prove* their economic injury by showing that overcharges on CRTs were passed on to them by the television and monitor manufacturers – in other words, they will have to present upstream pass-on evidence, and defendants must be allowed to rebut it.

Upstream pass-on evidence, therefore, will be relevant at trial to determining whether plaintiffs have proven an antitrust injury.  In fact, without evidence of upstream pass-on, plaintiffs will have failed to establish any antitrust injury and their claims would have to be dismissed.  *See Bhan*, 772 F.2d at 1470.  Under these circumstances, Defendants are entitled to rebut Plaintiffs' upstream pass-on evidence by demonstrating that Plaintiffs possessed bargaining strength that limited the ability of television and monitor manufacturers to pass on any overcharges.  Such evidence will directly address whether Plaintiffs have, in fact, suffered a viable antitrust injury and thus whether they have standing to pursue these claims at all.

**IV.     Upstream Pass-On Evidence Is Relevant to Best Buy's State Law Claims**

Plaintiff Best Buy has maintained its claim for indirect damages under Minnesota state law.  (*See* Best Buy First Am. Compl., Oct. 3, 2013, ECF No. 1978, ¶¶ 243-49 (citing Minnesota Antitrust Act of 1971, Stat. § 326D.52, *et seq.*).)  Minnesota's antitrust statute provides that a plaintiff's recovery should be based on "the actual damages sustained," such that "the court may

---

[4] (*See* Indirect Purchaser and Certain Direct Action Pls' Opp'n to Defs.' Joint Mot. for Partial Summ. J. for Lack of Antitrust Injury, at 2 & n.4, Jan. 23, 2015, ECF. No. 3254.)

1  take 'any steps necessary to avoid duplicative recovery against a defendant.'" *Lorix v. Crompton*

2  *Corp.*, 736 N.W.2d 619, 623 (Minn. 2007) (quoting Minn. Stat. § 35D.57).  In order to determine

3  "the actual damages sustained," Minn. Stat. § 35D.57, the jury must be able to consider evidence

4  of upstream pass-on and the bargaining power of purchasers so that the jury can determine how

5  the overcharge was apportioned among the various entities in the distribution chain.  *See Lorix*,

6  736 N.W.2d at 628 ("By expressly permitting indirect purchaser suits, our legislature has rejected

7  the notion that Minnesota courts are not to be burdened with the complex apportionment inherent

8  in those suits.").  Thus, courts have "conclude[d] that allowing a pass-on defense is consistent with

9  the Minnesota Antitrust Act because plaintiffs will recover their 'actual damages sustained.'"  *See*

10 *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. M 07–1827 SI, 2012 WL 6709621, at *7

11 (N.D. Cal. Dec. 26. 2012) (quoting Minn. Stat. § 352D.57).

12        Therefore, under the law that governs Plaintiff Best Buy's indirect damages claim,

13 upstream pass-on evidence must be admitted.[5]

14                              *    *    *

15        For the forgoing reasons, Defendants respectfully request that this Court grant Defendants'

16 motion *in limine* to permit evidence and argument regarding upstream pass-on and Plaintiffs'

17 bargaining power.

18

19 Dated:  February 13, 2015      Respectfully submitted,

20

21                              **MUNGER, TOLLES & OLSON LLP**

22

23                              By: */s/ Miriam Kim*
                                JEROME C. ROTH (State Bar No. 159483)
                                jerome.roth@mto.com
24                              MIRIAM KIM (State Bar No. 238230)
                                miriam.kim@mto.com
25                              MUNGER, TOLLES & OLSON LLP
                                560 Mission Street, Twenty-Seventh Floor
26                              San Francisco, California 94105-2907
                                Telephone: (415) 512-4000
27

28 [5] Upstream pass-on evidence is also relevant to the Indirect Purchase Plaintiffs' state law claims.

9                              3:07-cv-05944-SC; MDL 1917
DEFS' MOT. IN LIMINE #16: TO PERMIT EVIDENCE AND ARGUMENT REGARDING UPSTREAM PASS-ON
AND PLAINTIFFS' BARGAINING POWER

1  Facsimile: (415) 512-4077

2  BRAD D. BRIAN (SBN 079001)
   brad.brian@mto.com
3  WILLIAM D. TEMKO (SBN 098858)
   william.temko@mto.com
4  GREGORY J. WEINGART (SBN 157997)
   gregory.weingart@mto.com
5  E. MARTIN ESTRADA (SBN 223802)
   martin.estrada@mto.com
6  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, Thirty-Fifth Floor
7  Los Angeles, CA 90071-1560
   Telephone: (213) 683-9100
8  Facsimile: (213) 687-3702

9  ROBERT E. FREITAS (SBN 80948)
   rfreitas@fawlaw.com
10 FREITAS ANGELL & WEINBERG LLP
   350 Marine Parkway, Suite 200
11 Redwood Shores, California 94065
   Telephone: (650) 593-6300
12 Facsimile: (650) 593-6301

13 *Attorneys for Defendant LG Electronics, Inc.*

14
   WINSTON & STRAWN LLP
15
   By: */s/ Jeffrey L. Kessler*
16 JEFFREY L. KESSLER (*pro hac vice*)
   JKessler@winston.com
17 A. PAUL VICTOR (*pro hac vice*)
   PVictor@winston.com
18 ALDO A. BADINI (SBN 257086)
   ABadini@winston.com
19 EVA W. COLE (*pro hac vice*)
   EWCole@winston.com
20 MOLLY M. DONOVAN
   MMDonovan@winston.com
21 **WINSTON & STRAWN LLP**
   200 Park Avenue
22 New York, NY 10166
   Telephone: (212) 294-6700
23 Facsimile: (212) 294-4700

24 STEVEN A. REISS (*pro hac vice*)
   steven.reiss@weil.com
25 DAVID L. YOHAI (*pro hac vice*)
   david.yohai@weil.com
26 ADAM C. HEMLOCK (*pro hac vice*)
   adam.hemlock@weil.com
27 **WEIL, GOTSHAL & MANGES LLP**
   767 Fifth Avenue
28 New York, New York 10153-0119

Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Defendants Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), MT Picture Display Co., Ltd.*

KIRKLAND & ELLIS LLP

By: */s/ Eliot A. Adelson*
ELIOT A. ADELSON (SBN 205284)
JAMES MAXWELL COOPER (SBN 284054)
**KIRKLAND & ELLIS LLP**
555 California Street, 27th Floor
San Francisco, California 94104
Tel: (415) 439-1400
Facsimile: (415) 439-1500
E-mail: eadelson@kirkland.com
E-mail: max.cooper@kirkland.com

JAMES H. MUTCHNIK, P.C. (*pro hac vice*)
Barack Echols (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Tel: (312) 862-2000
Facsimile: (312) 862-2200
E-mail: jmutchnik@kirkland.com
E-mail: bechols@kirkland.com

*Attorneys for Defendants Hitachi, Ltd., Hitachi Displays, Ltd. (n/k/a Japan Display Inc.), Hitachi Asia, Ltd., Hitachi America, Ltd., and Hitachi Electronic Devices (USA), Inc.*

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: */s/ Gary L. Halling*
GARY L. HALLING (SBN 66087)
ghalling@sheppardmullin.com
JAMES L. MCGINNIS (SBN 95788)
jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH (SBN 203524)
mscarborough@sheppardmullin.com
**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
Four Embarcadero Center, 17th Floor
San Francisco, California 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947

*Attorneys for Defendants Samsung SDI America, Inc.; Samsung SDI Co., Ltd.; Samsung SDI (Malaysia)*

*SDN. BHD.; Samsung SDI Mexico S.A. DE C.V.; Samsung SDI Brasil Ltda.; Shenzen Samsung SDI Co., Ltd. and Tianjin Samsung SDI Co., Ltd.*

FAEGRE BAKER DANIELS LLP

By: */s/ Kathy L. Osborn*

Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Email: jeff.roberts@FaegreBD.com
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: (303) 607-3500
Facsimile: (303) 607-3600

Stephen M. Judge (*pro hac vice*)
Email: steve.judge@FaegreBd.com
Faegre Baker Daniels LLP
202 S. Michigan Street, Suite 1400
South Bend, IN 46601
Telephone: (574) 234-4149
Facsimile: (574) 239-1900

*Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.*

BAKER BOTTS LLP

By: */s/ John M. Taladay*
JOHN M. TALADAY (pro hac vice)
john.taladay@bakerbotts.com
JOSEPH OSTOYICH (pro hac vice)
joseph.ostoyich@bakerbotts.com
ERIK T. KOONS (pro hac vice)
erik.koons@bakerbotts.com
CHARLES M. MALAISE (pro hac vice)
charles.malaise@bakerbotts.com
**BAKER BOTTS LLP**
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700

Facsimile: (202) 639-7890

JON V. SWENSON (SBN 233054)
jon.swenson@bakerbotts.com
**BAKER BOTTS LLP**
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
E-mail: jon.swenson@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips N.V., Philips Electronics North America Corporation, Philips Taiwan Ltd., and Philips do Brasil, Ltda.*

SQUIRE PATTON BOGGS (US) LLP

By: /s/ *Nathan Lane, III*
Nathan Lane, III (CA Bar No. 50961)
Mark C. Dosker (CA Bar No. 114789)
**SQUIRE PATTON BOGGS (US) LLP**
275 Battery Street, Suite 2600
San Francisco, California 94111
Telephone:  (415) 954-0200
Facsimile:  (415) 393-9887
E-mail:  nathan.lane@squiresanders.com
E-mail:  mark.dosker@squiresanders.com

Donald A. Wall (Pro Hac Vice)
**SQUIRE PATTON BOGGS (US) LLP**
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: + 1 602 528 4005
Facsimile: +1 602 253 8129
Email: donald.wall@squirepb.com

*Attorneys for Defendant Technologies Displays Americas LLC*

By: /s/ *Brent Caslin*

Brent Caslin (Cal. Bar. No. 198682)
**Jenner & Block LLP**
633 West Fifth Street
Suite 3600
Los Angeles, California 90071
Telephone: 213 239-5100
Facsimile: 213 239-5199
bcaslin@jenner.com

Terrence J. Truax (pro hac vice)
Michael T. Brody (pro hac vice)

| | |
|---|---|
| 1 | **Jenner & Block LLP** |
| 2 | 353 N. Clark Street |
| | Chicago, Illinois 60654-3456 |
| 3 | Telephone: 312 222-9350 |
| | Facsimile: 312 527-0484 |
| 4 | ttruax@jenner.com |
| | mbrody@jenner.com |
| 5 | *Attorneys for Mitsubishi Electric Corporation,* |
| 6 | *Mitsubishi Electric US, Inc., and Mitsubishi Electric Visual Solutions America, Inc.* |
| 7 | |
| 8 | **GIBSON, DUNN & CRUTCHER LLP** |
| 9 | By: /s/ *Rachel S. Brass* |
| 10 | JOEL S. SANDERS, SBN 107234 |
| | JSanders@gibsondunn.com |
| 11 | RACHEL S. BRASS, SBN 219301 |
| | RBrass@gibsondunn.com |
| 12 | AUSTIN SCHWING, SBN 211696 |
| | ASchwing@gibsondunn.com |

Pursuant to Local Rule 5-1(i)(3), the filer attests that concurrence in the filing of this document has been obtained from each of the above signatories.

555 Mission Street, Suite 3000
San Francisco, California 94105-2933
Telephone: 415.393.8200
Facsimile: 415.393.8306

**FARMER BROWNSTEIN JAEGER LLP**
WILLIAM S. FARMER, SBN 46694
WFarmer@FBJ-law.com
DAVID BROWNSTEIN, SBN 141929
DBrownstein@FBJ-law.com
JACOB ALPREN, SBN 235713
JAlpren@FBJ-law.com
235 Montgomery Street, Suite 835
San Francisco California 94104
Telephone 415.962.2876
Facsimile: 415.520.5678

*Attorneys for Defendants Chunghwa Picture Tubes, Ltd and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd*