# EXHIBIT A

1

2                    UNITED STATES DISTRICT COURT

3                    NORTHERN DISTRICT OF CALIFORNIA

4                    SAN FRANCISCO DIVISION

5                    MASTER CASE NO: 3:07-cv-05944-SC

6                    INDIVIDUAL CASE NO. 3:13-cv-01173-SC

7                    MDL NO. 1917

8

9    In Re:  CATHODE RAY TUBE (CRT)

10   ANTITRUST LITIGATION

11   - - - - - - - - - - - - - - - - - - - - - - - -

12   This Document Relates To :

13   All ACTIONS

14   - - - - - - - - - - - - - - - - - - - - - -

15                  HIGHLY CONFIDENTIAL TRANSCRIPT

16                  VIDEOTAPED TRANSCRIPT of Vincent

17   Sampietro in the above-entitled matter, as taken by

18   and before LORRAINE B. ABATE, a Certified Shorthand

19   Reporter and Notary Public of the State of New York,

20   Registered Professional Reporter and Certified Live

21   Note Reporter, held at the offices of Weil Gotshal &

22   Manges, 767 Fifth Avenue, New York, New York  on June

23   25, 2014, commencing at 9:51 a.m., pursuant to

24   Notice.

25

1

BARKLEY
Court Reporters

1          - Sampietro - June 25, 2014 - HIGHLY CONFIDENTIAL

2     knowledge, always been based in San Diego?

3          A.     To my knowledge, yes.

4          Q.     Did SMCA ever manufacture televisions?

10:37  5          A.     Yes, SMCA manufactured televisions.

6          Q.     During what time period did that take

7     place?

8          A.     1979 to 2001, 2002 time frame.

9          Q.     And what is the reason that SMCA stopped

10:37 10     making televisions?

11                 MR. BENSON:  Objection to form.  Beyond

12            the scope.  You can answer on the basis of your

13            personal knowledge.

14          A.     My understanding it was no longer

10:38 15     profitable to make -- manufacture TVs in Memphis,

16     Tennessee.

17          Q.     And did SMCA make CRT televisions?

18          A.     Yes, SMCA manufactured CRT televisions.

19          Q.     Did they --

10:38 20          A.     TV, televisions.

21          Q.     Did they -- I'm sorry, I didn't mean to

22     interrupt.

23                 Did they also make LCD televisions?

24          A.     SMCA did not make LCD TVs.

10:38 25          Q.     When SMCA stopped making televisions in

45

BARKLEY
Court Reporters

```
 1              - Sampietro - June 25, 2014 - HIGHLY CONFIDENTIAL
 2      saying that to Dr. Houseman a year in advance, but I
 3      don't think that would be a typical situation, but I
 4      know it could be possible to negotiate a year in
18:16 5  advance.
 6              Q.      Do you recall instances where that took
 7      place?  Sorry, to be clear, that prices were
 8      negotiated a year in advance?
 9              A.      Yes, there were instances.  Typically it
18:16 10 was six month intervals.
 11             Q.      Typically six months?
 12             A.      Yes.
 13             Q.      During the relevant period, '95 to 2007,
 14     did anyone at SEMA or SMCA have any knowledge or I
18:17 15 should say, any belief, that CRT tube manufacturers
 16     were exchanging information or meeting together?
 17                     MR. BENSON:  Objection to form.  Vague.
 18             A.      Not to my knowledge.
 19             Q.      When you say your knowledge, you mean
18:17 20 those two companies' knowledge?
 21             A.      I can speak for myself and information
 22     that I have been advised from our counsel.  So
 23     including SEMA, excluding SEMA?
 24             Q.      Forgive me.  So based on your
18:18 25 preparation for today's deposition, is your
```

265

BARKLEY
Court Reporters

1           - Sampietro - June 25, 2014 - HIGHLY CONFIDENTIAL

2    understanding that no one at SEMA or SMCA had

3    knowledge of any competitor meetings among CRT tube

4    manufacturers?

18:18  5           A.     That is correct.

6           Q.     Did you ever have any -- in your role as

7    a procurement officer, did you ever have any

8    understanding or suspicion that such meetings were or

9    were not taking place?

18:18  10                 MR. BENSON:  Objection to form.  Asked

11              and answered.

12          A.     I have no knowledge of any meetings

13   taking place.

14          Q.     And are you aware of anyone at SEMA or

18:18  15   SMCA ever having undertaken any effort to determine

16   whether competitors were having meetings or

17   exchanging information?

18                 MR. BENSON:  Objection to form.  Beyond

19              the scope.  You can answer if you have personal

18:19  20              knowledge.

21          A.     No, I'm not aware.

22          Q.     Did you ever have any reason to believe

23   that the prices that were being offered -- strike

24   that.  Let me rephrase.

18:19  25                 Did anyone at SEMA or SMCA, including

266

```
 1              - Sampietro - June 25, 2014 - HIGHLY CONFIDENTIAL
 2     you, ever have any reason to believe that the prices
 3     that were being offered by CRT tube manufacturers
 4     were not the result of vigorous competition?
18:19  5              MR. BENSON:  Objection to form.  Vague.
 6     A.      Not to my knowledge.
 7     Q.      And was it your belief in your personal
 8     performance of procurement activities that the CRT
 9     tube makers that were endeavoring to sell to the
18:19 10     Sharp entities were competing vigorously and making
11     every effort to get your business?
12              MR. BENSON:  To be clear, he is asking
13          in your personal capacity.
14              MR. HEMLOCK:  I did say that.
18:20 15     A.      Yes, that is my belief.
16     Q.      And did you get that impression based on
17     your meetings and communications with various tube
18     manufacturers?
19              MR. BENSON:  Objection to form.  Vague.
18:20 20     A.      Yes, that is correct.
21              MR. HEMLOCK:  I would like to mark as
22          Exhibit 3620.  It is SHARP-CRT-212452 and it is
23          a Japanese document.  We will provide a
24          translation.  Appearing to have the date June
18:21 25          13, 2002.  And I'll give you the translation
```

267

VINCENT SAMPIETRO - CONFIDENTIAL

BARKLEY
Court Reporters

- Sampietro - June 25, 2014 - HIGHLY CONFIDENTIAL

1  - Sampietro - June 25, 2014 - HIGHLY CONFIDENTIAL
2       my objection.
3            MR. HEMLOCK:   Okay.
4       Q.    What is your understanding as to the
18:59 5  criminal charges that were lodged against Sharp
6  Corporation with respect to LCD panel price fixing?
7            MR. BENSON:   I object as beyond the
8            scope.   You can answer based on the basis of
9            your personal knowledge.
18:59 10      A.    I have very limited knowledge.   I
11  remember seeing on the internet about some resolution
12  between Sharp and Apple.   That's the degree of my
13  knowledge concerning the subject matter.
14      Q.    What preparation did you do with respect
19:00 15  to topic 31, this topic?
16            MR. BENSON:   Objection to form.   When
17            you say topic 31, you mean the topic about which
18            we agreed to make a witness available?
19            MR. HEMLOCK:   Whatever it was that you
19:00 20            guys -- just on this topic.
21            MR. BENSON:   To the extent you recall.
22      A.    Yeah.   The study or work that I did on
23  topic 31 involved was anybody, anyone at SMCA or SEMA
24  involved in the procurement of CRTs and later
19:00 25  possibly involved in the sale of LCDs.   To my

288

BARKLEY
Court Reporters

```
    1            - Sampietro - June 25, 2014 - HIGHLY CONFIDENTIAL
    2    knowledge -- and to my knowledge, no one was
    3    involved.
    4            Q.    And you're not aware of the terms of
19:00 5    Sharp's plea, Sharp Corporation's plea, the scope of
    6    the plea, the scope of the conduct to which they pled
    7    guilty, you have no awareness of that?
    8                 MR. BENSON:  Objection to form.  Asked
    9            and answered.  Beyond the scope.  You can answer
19:01 10           on the basis of your personal knowledge.
   11        A.    No, I'm not aware.
   12                 MR. HEMLOCK:  Okay.  I think I'm done
   13            for today -- a few more minutes.  Apologies.
   14        Q.    One of the other two other topics that
19:01 15   you were noticed for are related to the search for
   16    documents for this litigation and the retention of
   17    documents; is that correct?
   18        A.    Okay.
   19        Q.    And did you prepare to testify on those
19:01 20   two topics?
   21        A.    Yes, I'm prepared.
   22        Q.    And what was the -- did Sharp have a
   23    document retention policy during the relevant period?
   24                 MR. BENSON:  Objection to form.  Vague.
19:02 25        A.    SMCA had a retention policy that went
```

                              289

BARKLEY
Court Reporters