# EXHIBIT 6

Pages 1 - 45

United States District Court

Northern District Of California

Before The Honorable Susan Illston

| | |
|---|---|
| United States of America, )<br>)<br>          Plaintiff, )<br>)<br>  vs. )<br>)<br>LG Display Company, )<br>and LG Display America, )<br>)<br>          Defendant. )<br>_____) | NO. CR 08-0803 SI |

San Francisco, California
Monday, December 15, 2008

## Reporter's Transcript of Proceedings

**Appearances:**

For Plaintiff:            Joseph Russoniello
                          United States Attorney
                          450 Golden Gate Avenue, Box 36055
                          San Francisco, California  94102
                    By:   **Michael Lee Scott, Esquire**
                          **Niall E. Lynch, Esquire**
                          **Assistant United States Attorneys**


For Defendant:            Cleary Gottlieb Steen & Hamilton LLP
                          2000 Pennsylvania Avenue NW
                          Washington, D.C.  20006
                    By:   **Michael R. Lazerwitz, Esquire**

Also Present:             Jong Taig Hong/Corporate Representative
                          General Manager, LG Display Co., Ltd.

*Reported By:*            *Sahar McVickar, RPR, CSR 12963*
                          *Official Reporter, U.S. District Court*
                          *for the Northern District of California*

(Computerized Transcription by Eclipse)

| | |
|---|---|
| 1 | **Monday**, **December 15**, **2008**                              2:30 p.m. |

2                    P R O C E E D I N G S

3             **THE CLERK:**  Calling criminal 08-803, United States

4      versus LG Display Company and LG Display America.

5             Counsel, please state your appearances for the

6      record.

7             **MR. SCOTT:**  Good afternoon, Your Honor.

8             Michael Scott and Niall Lynch on behalf of the

9      United States.

10            **THE COURT:**  Good afternoon.

11            **MR. LAZERWITZ:**  Your Honor, Michael Lazerwitz for

12     the two corporate defendants.

13            And with me is Mr. J.T. Hong, who is the head of the

14     legal department of LG Display in Seoul, but he is representing

15     both entities for purposes of today.

16            **THE COURT:**  Okay, well, thank you.

17            **MR. SCOTT:**  Your Honor, this morning we appeared

18     before Magistrate Judge Chen.  Both defendants were arraigned

19     and signed waivers of indictment.

20            **THE COURT:**  All right.

21            And you wish to proceed to the plea?

22            **MR. LAZERWITZ:**  Yes, Your Honor.

23            **THE COURT:**  Okay.

24            All right.  And the corporate representative is Mr.?

25            **MR. LAZERWITZ:**  Mr. Hong.

1          THE COURT:  Hong.

2          Mr. Hong, could you come forward, please, sir?

3          I understand from counsel that you would like to

4    change the defendant's plea today?

5                    **(Mr. Hong enters plea on behalf of the two**

6                    **defendant companies.)**

7          THE DEFENDANT:  Yes.

8          THE COURT:  In order to do that, I need to ask you

9    some questions.  And before you answer my questions, you need

10   to swear to tell the truth.

11         So Tracy, would you swear Mr. Hong, please.

12                    **(Defendant sworn.)**

13         THE COURT:  And you need to answer audibly to each

14   question so that the court reporter can get it, all right?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Okay.

17         Do you understand that since you've sworn to tell

18   the truth you could be punished if you answer any of my

19   questions falsely on purpose; do you understand that?

20         THE DEFENDANT:  Yes, understand.

21         THE COURT:  Okay.

22         How old are you, sir?

23         THE DEFENDANT:  Fifty-four.

24         THE COURT:  Okay.

25         And how far did you go in school?

```
 1              THE DEFENDANT:  Oh, Yoensei University, in Korea.

 2              THE COURT:  All right.  Did you graduate?

 3              THE DEFENDANT:  Yes, graduate law school.

 4              THE COURT:  Do you speak English?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  All right.

 7              If -- if any of my questions are confusing, please

 8    let me know and I will try to make it clear, all right?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  Oh, Tracy.

11              THE CLERK:  Yes?

12              THE COURT:  Would you go --

13              THE CLERK:  Oh, sure.

14              THE COURT:  Have you drunk any alcoholic beverages

15    or taken any pills or drugs or medicine in the last 24 hours?

16              THE DEFENDANT:  No.

17              THE COURT:  All right.  Does either counsel have any

18    reason to question Mr. Hong's competence to enter this plea?

19              MR. LAZERWITZ:  No, Your Honor.

20              MR. SCOTT:  No, Your Honor.

21              THE COURT:  Okay.

22              Mr. Hong, what is your position with LG Companies?

23              THE DEFENDANT:  I'm the head of the legal department

24    in our company.

25              THE COURT:  All right.
```

```
 1            And is it true, sir, that you have been authorized
 2   by the Board of Directors to enter this plea?
 3            THE DEFENDANT:  Yes, I'm authorized.
 4            THE COURT:  Okay.
 5            And I'm looking at a document that's attached to the
 6   plea agreement called "Resolution of the Board of Directors of
 7   LG Display Company, Limited."  And it reflects that the board
 8   has authorized Mr. Hong to take all necessary actions and waive
 9   any rights and make any binding statements on behalf of the
10   company at this proceeding.
11            Is that right?
12            THE DEFENDANT:  Right.
13            THE COURT:  Now, that's LG Display Company, Limited;
14   is he also authorized on behalf of LG Display America, Inc.?
15            MR. LAZERWITZ:  Yes, Your Honor.
16            THE DEFENDANT:  Yes.
17            THE COURT:  Is there a similar resolution?
18            MR. LAZERWITZ:  There are two resolutions.  It's
19   right behind the first one.
20            THE COURT:  Oh, okay.
21            MR. LAZERWITZ:  The board of LG Display America also
22   authorized Mr. Hong to represent it for the same purposes
23   today.
24            THE COURT:  Okay.
25            Is that right, Mr. Hong?
```

1          **THE DEFENDANT:**  Yes, right.

2          **THE CLERK:**  Two separate judgments, right, then?

3          **THE COURT:**  Two separate judgments, I guess so.

4          **MR. SCOTT:**  Yes.

5          **THE COURT:**  And are the originals of these

6   resolutions attached to the --

7          **MR. SCOTT:**  Yes, I'm handing them up now, Your

8   Honor, the original board resolution and the original signature

9   pages on the plea agreement.

10         **THE CLERK:**  And that plea agreement applies to both

11   defendants or just one at a time?

12         **MR. LAZERWITZ:**  Both.

13         **MR. SCOTT:**  Both.

14         **THE CLERK:**  Okay.

15         **THE COURT:**  All right.

16         Do you understand that a criminal defendant in this

17   country is entitled to have a lawyer represent it at all stages

18   of the proceedings, including trial, if it wishes to take the

19   charges to trial?

20         **THE DEFENDANT:**  Yes.

21         **THE COURT:**  And have you -- and do you understand

22   that in the ordinary course, a lawyer will be appointed for a

23   criminal defendant that can't afford to pay for one; do you

24   understand that?

25         **THE DEFENDANT:**  Yes.

```
1              THE COURT:  Have you had enough time to talk to your
2      lawyer about the charges that are pending against these two
3      companies?
4              THE DEFENDANT:  Yes.
5              THE COURT:  And has your lawyer explained to you
6      what the United States Government would have to prove before
7      you could -- your company could be found guilty of the charges
8      in the Information -- in the Information?
9              THE DEFENDANT:  Yes.
10             THE COURT:  Are you satisfied with your lawyer's
11     representation of you?
12             THE DEFENDANT:  Yes, satisfied.
13             THE COURT:  Okay.
14             Let's see, Mr. Scott, are you doing the honors today
15     here?
16             MR. SCOTT:  Sure.
17             THE COURT:  Can you state for me and for Mr. Hong
18     the elements of the offense to which the company is going to
19     plead guilty?
20             MR. SCOTT:  Both defendants are charged by
21     Information with one count of violating Section 1 of the
22     Sherman act, 15 U.S.C., Section 1.
23             To establish such a violation, the United States
24     must prove beyond a reasonable doubt that the defendants
25     entered into a conspiracy; that the conspiracy was an
```

```
 1    unreasonable restraint of trade; and that the conspiracy

 2    affected interstate commerce in the United States.

 3              THE COURT:  Do you understand those are the elements

 4    of this offense?

 5              THE DEFENDANT:  Yeah, I understand.

 6              THE COURT:  And do you understand that the maximum

 7    punishment for this offense is a fine in the amount of the

 8    greatest, meaning the larger of the two figures, either

 9    $100 million or twice the gross pecuniary gain the conspirators

10    derived from the crime or twice the gross pecuniary loss caused

11    to the victims of the crime by the conspirators?

12              Do you understand that part?

13              THE DEFENDANT:  Yeah, I understand.

14              THE COURT:  And do you understand that the Court may

15    impose a term of probation of least one year but not more than

16    five years, and under the Sentencing Guidelines the Court may

17    order defendants, each of them, to pay restitution to the

18    victims of the offense, and each defendant is required to pay a

19    $400 mandatory special assessment.

20              Do you understand those things?

21              THE DEFENDANT:  Yes, I understand.

22              THE COURT:  Do you understand that under the

23    Constitution and laws of the United States, your companies are

24    entitled to plead not guilty to these charges?  And if they

25    plead not guilty to the charges, they will be presumed innocent
```

1    of these charges unless and until the Government -- the

2    Government proves beyond a reasonable doubt that the company is

3    guilty of every element of these offenses; do you understand

4    that?

5              **THE DEFENDANT:**  Yeah, I understand.

6              **THE COURT:**  And when I say "the company," it applies

7    to each company and both companies throughout.  So I'll

8    probably just call it one company, but I'm referring to both of

9    them as we go through this.  They each have the same rights;

10   you understand that?

11             **THE DEFENDANT:**  Yes.

12             **THE COURT:**  And if the defendant wishes to, it may

13   have a trial by jury.  And if you have a jury trial, you can't

14   be convicted of the offense unless the jury finds unanimously,

15   all twelve, that the company is guilty of every element of the

16   offense beyond a reasonable doubt.

17             Do you understand that?

18             **THE DEFENDANT:**  Yeah, understand.

19             **THE COURT:**  And it's up to the Government to call

20   witnesses and put on evidence to demonstrate every element of

21   this offense; do you understand that?

22             **THE DEFENDANT:**  Yes.

23             **THE COURT:**  And your lawyers would have the right to

24   cross-examine the Government's witnesses and challenge the

25   Government's evidence; do you understand that?

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  And your lawyers would have the right to

 3   call witnesses on your behalf to tell your side of the story;

 4   do you understand that?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  And you and your other colleagues at the

 7   companies would have the right to testify and explain

 8   themselves, if they wanted to; do you understand that?

 9              THE DEFENDANT:  Yeah, I understand.

10              THE COURT:  Now, in general, the -- a criminal

11   defendant does not have to testify, has a right to remain

12   silent.  I suppose that right would apply to, what, the

13   managing officers and directors of the corporate defendant?

14              MR. SCOTT:  It would apply to the individuals that

15   work for the corporate defendants, yes.

16              THE COURT:  All right.

17              So, although your colleagues at the company would

18   have the right to testify, they would not have to testify.

19   They would have the right to remain silent, and no one would be

20   allowed to infer their guilt simply because they chose not to

21   testify.

22              Do you understand that?

23              THE DEFENDANT:  Yes, yes.

24              THE COURT:  And if you changed the company's plea

25   today and enter a guilty plea, each company will give up all of
```

1   these trial rights we talked about: The right to trial by

2   jury; the right to confront the witnesses against it; the right

3   to put the Government to its proof. And the companies will be

4   found guilt because they will have admitted it; do you

5   understand that?

6                 **THE DEFENDANT:** Yeah.

7                 **THE COURT:** And an admission of guilt would preclude

8   the companies from appealing from the finding that they are

9   guilty because they will have admitted it here today; do you

10   understand that?

11                 **THE DEFENDANT:** Yes.

12                 **THE COURT:** We'll get to the terms of the plea

13   agreement in a moment, but generally, if the Court accepts the

14   plea agreement, the companies also give up their right to

15   appeal from any orders the Court may have made, any mistakes

16   the Court may have made, and any sentence the Court may impose.

17           Do you understand that?

18                 **THE DEFENDANT:** Yeah. Yes.

19                 **THE COURT:** And also gives up its right to challenge

20   on a collateral basis the conviction for -- generally, for any

21   reason except a contention that the lawyers were ineffective;

22   do you understand that?

23                 **THE DEFENDANT:** Yes.

24                 **THE COURT:** Oh, or prosecutorial misconduct; you

25   could challenge that if it happened; do you understand that?

1          **THE DEFENDANT:**  Yes.

2          **THE COURT:**  And you give up your right to remain

3   silent, because I get to ask you questions and you have to

4   answer them; do you understand that?

5          **THE DEFENDANT:**  Um-hmm.

6          **THE COURT:**  Yes?

7          **THE DEFENDANT:**  Yes, yes.

8          **THE COURT:**  Say it out loud.

9          Has anybody threatened you or forced you to enter

10  this guilty plea?

11         **THE DEFENDANT:**  No.

12         **THE COURT:**  I've been handed a document called "Plea

13  Agreement."  And on page 15 of this agreement, there is a

14  signature line, there's actually two of them, for John Taig

15  Hong.  One on behalf of LG Display Company, Limited and one on

16  behalf of LG Display America, Inc.  Did you sign those

17  documents, sir?

18         **THE DEFENDANT:**  Yes.

19         **THE COURT:**  And had you read through this agreement

20  before you signed it?

21         **THE DEFENDANT:**  Yes, I read.

22         **THE COURT:**  Had you discussed it with your lawyer

23  before you signed it?

24         **THE DEFENDANT:**  Yes.

25         **THE COURT:**  And is this the agreement -- is the

1    content of this agreement, was it made known to the directors

2    and officers of your company who -- who designated you to come

3    here today and do this plea agreement?

4              **THE DEFENDANT:**  Yes.

5              **THE COURT:**  And as far as you know, are they in

6    accord with the terms of this agreement?

7              **THE DEFENDANT:**  Yes.

8              **THE COURT:**  And do you agree with the terms of this

9    agreement?

10             **THE DEFENDANT:**  Yes, agree.

11             **THE COURT:**  Okay.

12             I didn't write your name down, and I see don't see

13   it here, so tell me your name, again.

14             **MR. LAZERWITZ:**  Michael Lazerwitz.

15             **THE COURT:**  Lazerwitz -- oh, here it is.

16             **MR. LAZERWITZ:**  Yeah, I signed, too.

17             **THE COURT:**  Yes, you did.

18             Mr. Lazerwitz, can you summarize for me and Mr. Hong

19   the general terms of this plea agreement.

20             **MR. LAZERWITZ:**  Sure.

21             The general terms are, of course, the factual basis

22   for the actual plea, which is in paragraph 4, that sets out the

23   charging language that is in the Information that was filed.

24   Obviously, the agreed-upon penalty of $400 million is a fairly

25   central element of the agreement.

1          The third point that's an important part of the

2    agreement are the cooperation provisions and the corresponding

3    immunity provisions that the Government gives to the company

4    and its employees.  Essentially, in exchange for the --

5    pleading guilty and paying the -- the substantial fine, the

6    Government agrees not to charge any individual in the company

7    except the four individuals named with any offense relating to

8    the subject of the agreement.  And I think those are, frankly,

9    the key provisions of the agreement.  The rest are fairly, as

10   you've pointed out, just giving up various rights and remedies.

11         The other points that's I guess part of the fine,

12   Your Honor, that is important to this agreement is the payment

13   schedule that's set out in this agreement, which allows for the

14   company to pay the fine over a five-year period, which given

15   this economic time is obviously fairly important to the

16   company.  But other than that, I think those were the main

17   provisions of the agreement.

18         **THE COURT:**  What does the cooperation provision

19   entail?

20         **MR. LAZERWITZ:**  It entails, Your Honor, the

21   requirement that if asked, the -- both corporate entities, both

22   the U.S. entity and the entity in Korea, would provide

23   documentary documents, response -- requests for information,

24   and most importantly make people, employees available for

25   interviews and/or Grand Jury appearance and/or trial

1    appearances.  And given that the Korean entity is beyond the

2    subpoena power of the United States Government, that's quite a

3    concession on behalf of a foreign corporation.

4            Obviously, the U.S. entity is in a little bit

5    different situation, but, again, because of the -- because of

6    the immunity provision that the Government is offering the

7    employees of the -- both companies, there is obviously a very

8    strong incentive for those companies, when asked by the

9    corporation to cooperate with the Government's investigation,

10   that they do so, because, as the agreement states, and again,

11   this is fairly standard, if an individual does not comply with

12   the cooperation provision as set forth, he or she could be

13   subject to prosecution or, at the very least, lose the immunity

14   that's otherwise provided.

15           **THE COURT:**  Where's the immunity provision?

16           **MR. LAZERWITZ:**  Your Honor, that would be --

17           **MR. SCOTT:**  It's in the Government agreement section

18   on page 10, starting on paragraph 15.

19           **THE COURT:**  What does that sentence mean, the last

20   sentence in paragraph 15, "The non-prosecution terms of this

21   paragraph do not apply to civil matters of any kind"?

22           What does that mean?

23           **MR. LAZERWITZ:**  Your Honor, the antitrust division

24   does not have the authority to essentially immunize defendants

25   for those sorts of violations, that is, for tax violations,

 1   securities violations, or the -- in the corporate context it's

 2   somewhat odd, but for a violent crime.

 3            So the Government -- the antitrust division of the

 4   Justice Department, and again, I can be corrected, but I've

 5   been around a while, just doesn't have, as a policy matter,

 6   doesn't have the authority to grant immunity for these types of

 7   offenses.

 8            **THE COURT:**  You mean to protect the company against

 9   such charges?

10            **MR. LAZERWITZ:**  Correct.

11            And in a typical situation, the corporate defendant

12   in these kinds of matters, there isn't any real exposure,

13   anyway.

14            **THE COURT:**  Right.

15            **MR. LAZERWITZ:**  So it's something that's not

16   terribly controversial.

17            **THE COURT:**  But the immunity applies to the

18   individual --

19            **MR. LAZERWITZ:**  Correct.

20            **THE COURT:**  -- testifying.

21            **MR. LAZERWITZ:**  So, for example, Your Honor, if --

22   just hypothetically, if a -- an employee is asked to cooperate,

23   and that employee, unknownst (sic) to the corporation, has a

24   personal tax exposure --

25            **THE COURT:**  I'm not -- let me tell you what I'm

 1   concerned about, and perhaps I should ask it more directly.

 2               MR. LAZERWITZ:   Sure.

 3               THE COURT:   When you say, "cooperate in a federal

 4   proceeding," federal proceeding is defined in such a way that

 5   the United States is a party to it, right?

 6               MR. LAZERWITZ:   Yes.   And it's limited to -- the --

 7   this investigation and matters arising out of this

 8   investigation.

 9               THE COURT:   What about the civil -- the MDL?

10               MR. LAZERWITZ:   The -- in what respect, Your Honor?

11   We're not --

12               THE COURT:   Are these witnesses going to testify in

13   the MDL if they are asked, if they are subpoenaed?

14               MR. LAZERWITZ:   That's -- that's a closer question.

15   Obviously -- let me answer it two ways.

16               The four individuals who are not covered by this

17   plea agreement have their own lawyers.   And their own lawyers

18   will have to make that decision, the company can't force them.

19               THE COURT:   Right.

20               MR. LAZERWITZ:   Every other person in the company,

21   there is a theoretical possibility that there's state

22   prosecutions.   But I think from a corporate standpoint, we

23   would expect individuals to -- to -- depending on how things go

24   in the civil case, would be available.   But it's -- I can't

25   make any representations now.

```
1              Obviously, in a -- in a settlement context, that's
2   one -- one area.  In a litigated context, I think the
3   company -- from the company's standpoint, we can't defend
4   ourselves in the civil case unless we have witnesses, so we are
5   going to do our best to convince people to help us in the civil
6   case.  Because otherwise, we -- it's going to be hard to mount
7   a defense.
8              And there are real defenses available in the civil
9   case that aren't necessarily available in the criminal matter.
10  The most obvious is class certification, which is a substantial
11  matter in the civil cases, especially in this -- in these two
12  cases.  And secondly, effect, whether any of these -- this
13  activity actually affected prices in the marketplace is not an
14  element of the criminal case, and it's a critical element of
15  the civil case and I suspect will be contested by any number of
16  the defendants in the civil case.
17             So we would expect that people in the company would
18  be available to help us and sit for depositions, and but we
19  haven't gotten there.  And I don't want to -- I just don't want
20  to mislead you in any way.
21             THE COURT:  Well, what I'm -- what I'm wondering
22  about is this:  The impediment, that I would guess, to getting
23  testimony from these folks on -- in the MDL proceedings, as
24  opposed to the criminal proceedings, would be the assertion of
25  some kind of Fifth Amendment privilege.  That's being waived by
```

1    the Government -- I mean, the -- immunity is being offered by

2    the Government, so that that privilege really may not be

3    asserted vis-à-vis the Government in federal proceedings.

4           What I want to know is will that same effect apply

5    to the MDL proceedings?

6           **MR. LAZERWITZ:**   The -- this agreement certainly

7    takes out of the picture a large portion of the potential

8    criminal exposure to people in the company.  On the other hand,

9    Your Honor, again, I want to be very plain with you; there are

10   investigations by other authorities around the world that this

11   agreement doesn't cover.

12          For example, there is an investigation by the Korean

13   competition authorities; that authority, as far as I know, has

14   not made a decision whether to pursue criminal matters as

15   opposed to civil.  But from the company's standpoint, the

16   company is certainly going to take the position with its

17   employees, we want you; if we think you are a potential witness

18   that has knowledge here, we want you to participate and be a

19   witness in the civil cases.  But at the end of the day, it's

20   going to be up to that individual to say okay.

21          I think in my experience it's not a problem, because

22   people tend to do what their employers want them to do, because

23   if not, they run the risk of losing their job.

24          **THE COURT:**   Well, yes.  And your client, the

25   corporation here, is jointly requesting with the United States

```
 1    Government that there be a downward departure.
 2              MR. LAZERWITZ:  Correct.
 3              THE COURT:  Based on cooperation and a lot of
 4    things.  And I just want to know if that cooperation is going
 5    to extend to the MDL proceedings or not.
 6              MR. LAZERWITZ:  By the terms of this agreement, it
 7    does not.  I want to be plain, it does not.
 8              THE COURT:  And you're also getting a waiver of
 9    restitution on account of the MDL.
10              MR. LAZERWITZ:  Correct.  And that's fairly typical
11    because of the complexities of trying to negotiate a
12    three-party or four-party agreement.
13              But this agreement doesn't bind the company to do
14    anything vis-à-vis the civil case.  But what it does, again, it
15    makes the civil cases a whole lot easier against our client,
16    and frankly, against some of the others, because we're
17    admitting to liability.
18              THE COURT:  I know.  And I just want to know if the
19    witnesses are going to testify.
20              MR. LAZERWITZ:  I can't -- all I can tell you, Your
21    Honor, is in my experience the corporate defendant will want
22    its people to help us in the civil cases any way the corporate
23    client wants it.  But this agreement doesn't speak to that.
24    And I don't want to make predictions six months down the road,
25    but this does remove a huge elephant in the room, so to speak,
```

1    in the civil cases, because if we didn't have this agreement,

2    there would be some very difficult calls to make when people

3    were asked to sit for a deposition.  This makes it a whole lot

4    easier for me as corporate counsel, and frankly, for the

5    individual.

6                **THE COURT:**  Mr. Scott --

7                **MR. SCOTT:**  Yes?

8                **THE COURT:**  Is there any -- does part of this

9    agreement require the witnesses to provide interviews only to

10   the Government?

11               **MR. SCOTT:**  The agreement applies to interviews of

12   witnesses only to the Government for purposes of continuing

13   this criminal investigation.

14           And just let me note that the investigation is still

15   continuing.  We have other entities out there that we are still

16   investigating, so we would be likely be interviewing additional

17   witnesses from this company that we currently don't have access

18   to to further those investigations.  This is by no means the

19   end of this matter, from our perspective.

20           The provisions in this plea agreement relate to the

21   LG, the LG Companies' cooperations to continue cooperating with

22   us in the criminal investigation.  That's where we've measured

23   the value.  That's where the value of the cooperation discount

24   comes into play, the motion for a downward departure, and it's

25   significant to us to continue the investigation.

```
1              This -- the provisions in this plea agreement are

2    standard.  They are almost identical to the types of provisions

3    that we've done in all of these matters in this district,

4    similar matters.  Never has the Government interjected itself

5    in placing in cooperation obligations on the civil matter, in

6    other words, trying to put into place and enforce some type of

7    cooperation obligations on the defendants in this civil case in

8    which there are mechanisms in place much better than the

9    Government has available to it to police it and to put it into

10   play in terms of discovery.

11             THE COURT:  Well, the only thing that -- you have

12   two things, one is you have immunity.

13             MR. SCOTT:  Right.

14             THE COURT:  Which could affect everyone.

15             And then my second -- my real question is, do you

16   have some deal with them that they won't talk to anybody but

17   you?

18             MR. SCOTT:  Absolutely not.  And I can represent

19   very clearly to the Court that it is their decision on the

20   civil side completely about what they want to do in terms of

21   making the defendants or their employees available on the civil

22   side for discovery.

23             THE COURT:  So one of the elements of cooperation is

24   not the agreement that they won't talk to others?

25             MR. SCOTT:  Absolutely, Your Honor.  That is not an
```

```
 1    element of this.  There are no elements in the plea agreement
 2    relating to any obligations to do something or not do something
 3    in the civil cases regarding discovery.  Absolutely not.
 4            MR. LAZERWITZ:  Just so it's clear, Your Honor,
 5    what's written here is the agreement.  There are no other side
 6    deals, nothing.  That's not how it's -- how I would do things.
 7    It's -- what I was speaking about before is more practical.
 8            THE COURT:  Well, there is an awful lot of "include
 9    but not limited to" in this agreement.
10            MR. LAZERWITZ:  Right.  That's -- right, but the
11    operative, the sort of -- the key is the defined proceeding,
12    and everything flows from that.  And the defined proceeding, as
13    Mr. Scott said, is the ongoing criminal investigation.  And
14    that's -- that's all that the -- the immunity covers, and
15    that's all that the cooperation relates to.  They are
16    coextensive.
17            THE COURT:  One of the provisions of this agreement,
18    Mr. Hong, is that it is being entered into under Rule
19    11(c)(1)(c) under the Federal Rules of Criminal Procedure; has
20    your lawyer explained to you, generally, how that will affect
21    this plea agreement?
22            THE DEFENDANT:  Yes.
23            THE COURT:  And the sentence here?
24            THE DEFENDANT:  Yeah, he explained to me.
25            THE COURT:  Okay.  So you understand, then, that as
```

1   long as I sentence in accordance with this plea agreement, you

2   can't change your mind and take it back.

3            If I don't agree to this plea agreement and feel

4   like a different, more onerous sentence is appropriate, then

5   you'd have an opportunity to reconsider.  If I were to feel

6   that a lower sentence was appropriate, the Government would

7   have an opportunity to reconsider.  But as long as I sentence

8   in accordance with this, this is it, you can't change your

9   mind.  Do you understand that?

10            **THE DEFENDANT:**  Yes.

11            **THE COURT:**  Mr. Scott, can you summarize for me and

12   for Mr. Hong and his companies what the Government would be

13   prepared to prove if this matter went to trial?

14            **MR. SCOTT:**  Your Honor, had this case gone to trial,

15   the United States would have presented evidence to prove the

16   following facts as to each defendant company to establish a

17   violation of Section 1 of the Sherman Act:

18            "For purposes of the plea agreement, the relevant

19   period is a period defined from on or about September 21st,

20   2001, to on or about June 1st, 2006.  During the relevant

21   period, LG Phillips LCD Company, Limited, a joint venture

22   between LG Electronics and Phillips Electronics, and a

23   corporation organized and existing under the laws of Korea and

24   LG Phillips, LCD America, Inc., a corporation organized and

25   existing under the laws of the State of California, sold thin

1   film transistor liquid crystal display panels, more commonly

2   known as TFT LCD, into various markets, including the United

3   States.

4           "Effective March 4, 2008, LG Phillips LCD Company,

5   Limited changed its name to LG Display Company, Limited, which

6   is one of the named defendants in the plea agreement.  And

7   effective March 6, 2008, LG Phillips LCD America, Inc. changed

8   its name to LG Display America, Inc., which is the other named

9   defendant in the plea agreement.  LG Display Company, Limited

10  has it headquarters and principal place of business in Seoul,

11  Korea, and LG Display America, Inc., has its headquarters and

12  principal place of business in San Jose, California.

13          "During the relevant period, both defendants were

14  engaged of the sale" -- "in the sale of TFT LCD in the United

15  States and elsewhere, and employed 5000 or more individuals.

16          "As you most likely know, Your Honor, TFT LCD are

17  glass panels composed of an array of tiny pixels that are

18  electronically manipulated in order to display images.  They

19  are manufactured in a broad range of sizes and specifications

20  for use in television, notebook computers, desktop monitors,

21  mobile devices, and other applications.

22          "If the case had gone to trial, the United States

23  would have presented evidence to show that during the relevant

24  period, both LG defendants, through their officers and

25  employees, including high-level personnel, participated in a

1    conspiracy among major TFT LCD producers, the primary purpose

2    of which was to fix the price of TFT LCDs sold in the United

3    States and elsewhere.

4              "In furtherance of the conspiracy, the LG defendants

5    through their officers and employees engaged in discussions and

6    attended meetings, including group meetings commonly referred

7    to by the participants as 'crystal meetings' with

8    representatives of other major TFT LCD producers.  During these

9    discussions and meetings, agreements were reached to fix the

10   price of TFT LCDs to be sold in the United States and

11   elsewhere.  During the relevant period, sales of TFT LCD by the

12   LG defendants that affected U.S. commerce totaled $2.5 billion.

13             "During the relevant period, TFT LCDs sold by one or

14   more of the conspirator firms and equipment and supplies

15   necessary to the production and distribution of TFT LCD, as

16   well as payments for TFT LCD, traveled in interstate and

17   foreign commerce.

18             "The business activities of the LG defendants and

19   their co-conspirators in connection with the production and

20   same of TFT LCD that were the subjects of the conspiracy were

21   within the flow of and substantially affected interstate and

22   foreign trade commerce.  And acts in furtherance of this

23   conspiracy were carried out within the Northern District of

24   California.  TFT LCDs that were the subject of the conspiracy

25   were sold by one or more of the conspirators to customers in

1  this district."

2          THE COURT:   Mr. Lazerwitz, do you agree the

3  Government is in a position to put on such proof?

4          MR. LAZERWITZ:   Yes, Your Honor.

5          THE COURT:   Mr. Hong, did you hear what Mr. Scott

6  just said?

7          THE DEFENDANT:   Yes, Honor.

8          THE COURT:   Are those things true?

9          THE DEFENDANT:   Yes, true.

10          THE COURT:   Tell me what you did, what your company

11  did, what your companies did that makes them guilty of these

12  offenses.

13          THE DEFENDANT:   As stated in the paragraph 4 of the

14  plea agreement, our company engaged in those activities.   The

15  company decided that the appropriate course of action was to

16  fully cooperate with the Government and plead guilty to

17  antitrust offense.

18          THE COURT:   Have you read carefully everything that

19  is in paragraph 4 of the plea agreement?

20          THE DEFENDANT:   Yes.

21          THE COURT:   Are all of those things true?

22          THE DEFENDANT:   Yes, true.

23          THE COURT:   Mr. Scott, you said that you could prove

24  that there were $2.5 billion of goods sold or commerce

25  affected?

1          **MR. SCOTT:**  Yes, Your Honor.  Under the Sentencing

2     Guidelines, we need to measure the volume of affected U.S.

3     commerce by this conspiracy in order to establish a base fine

4     in which the multiplier is added to.  We negotiated, based upon

5     several different factors and reached agreement on a -- on an

6     affected volume of commerce, commerce here in the United

7     States.  It's based on sales by the defendants, themselves.

8          As you know, the conspiracy was worldwide.  They --

9     it did not involve, in terms of its effect on U.S. commerce, it

10    did not include all of their sales of TFT LCD, but did include

11    a portion of them.  And that was negotiated with the defendants

12    in this case.

13         **THE COURT:**  And do you agree with that, Mr. Hong?

14         **THE DEFENDANT:**  Yes, I agree.

15         **THE COURT:**  Because I don't see that figure in

16    the -- in the plea.

17         **MR. SCOTT:**  It's in the joint sentencing memorandum

18    and the --

19         **THE COURT:**  Right, but here in paragraph 4 I didn't

20    see it.

21         **MR. SCOTT:**  Right, it's not in paragraph 4.  It's in

22    the joint sentencing memorandum.  And that memorandum is by

23    reference included -- the agreements in that memorandum are

24    included in the plea agreement.

25         **THE COURT:**  Oh, where is that?

1        **MR. SCOTT:**  One second, Your Honor.

2              **(Searching through memorandum.)**

3        **MR. SCOTT:**  On -- in paragraph 8(d) on page 7.

4              In the section on the discussion of the sentencing

5   agreement, there's a sentence that notes that "The further

6   record includes a joint sentencing memorandum which is mutually

7   agreed to and executed by the United States and defendants."

8        **THE COURT:**  So what you're saying is that you are

9   agreeing on the $2.5 billion for purposes of sentencing and

10  getting the plea out of the way, but not for purposes of

11  anything else; is that right?

12       **MR. LAZERWITZ:**  That's precisely -- that's

13  absolutely correct, that that number is, as Mr. Scott stated,

14  was negotiated for purposes of the criminal matter.

15             It will certainly influence the civil matter, but

16  that is not binding, in our view -- well, it's not binding in

17  the civil matter at all, that the parties will be free -- I

18  suspect the plaintiffs will think that number is too low, and I

19  suspect you'll hear from me that I think the number is too

20  high, but it's not -- it's not binding in the civil case at

21  all, in our view.  I can't speak for the plaintiffs.

22       **THE COURT:**  You must be fairly confident you can

23  prove something here.

24       **MR. SCOTT:**  We are confident, Your Honor, that we

25  can prove that the volume of affected commerce here is 2.5 --

```
1    at least 2.5 billion.
2              THE COURT:  Don't you generally require that the
3    defendants admit to what it is you say you can prove before
4    they plead guilty?
5              MR. SCOTT:  Well, we believe that the admission of
6    all the statements in the joint sentencing memorandum were
7    included through that provision I just read with you here.
8              If it -- if it would provide more satisfaction on
9    that point to the Court, I'm sure that the defendants would
10   have no problem adding on the joint sentencing memorandum to
11   the plea agreement and making it more clear in the provisions.
12             But clearly, it was the understanding between the
13   Government and the defendants that all of the sentencing
14   calculations and the statements made in the joint sentencing
15   memorandum be part of the sentencing record and agreed to
16   between us.
17             THE COURT:  Well, because that's not quite what he
18   just said, you know.
19             MR. SCOTT:  For purposes of this sentencing --
20             THE COURT:  Right.
21             MR. SCOTT:  -- Your Honor.
22             THE COURT:  But not for purposes of the truth.
23             MR. LAZERWITZ:  Oh, but, Your Honor, there is
24   certainly a factual basis for the Government to -- to agree
25   that the U.S. commerce is $2.5 million.  And, as set forth in
```

1   the sentencing, joint sentencing memorandum, for purposes of

2   this proceeding, the -- the corporate defendants are not

3   contesting that.

4           It's -- there is a factual basis for that number, or

5   I wouldn't be before you and having convinced and advised the

6   corporate client to pay a $400 million fine.  This -- those

7   numbers are real.  But this -- this agreement pertains only to

8   this proceeding, and that in the civil matter, and frankly, in

9   other jurisdictions, the -- we remain free to contest

10  whether -- what is the appropriate volume of U.S. commerce for

11  purposes of that particular proceeding, that's all.

12          THE COURT:  But you admit that there is a factual

13  basis to the plea here --

14          MR. LAZERWITZ:  Yes.

15          THE COURT:  -- that it's 2 and a half billion

16  dollars?

17          MR. LAZERWITZ:  Right, but I'm not -- but I'm -- I'm

18  somewhat constrained, Your Honor, because it's a corporate

19  defendant, what the Board of Directors authorized to be said is

20  contained in the actual plea agreement and the joint sentencing

21  memorandum.

22          THE COURT:  Right.  Well, the actual plea agreement

23  at paragraph 4 has no numbers.

24          MR. LAZERWITZ:  Right, but the number was -- the

25  number was known.  Our Board wouldn't have agreed to the

```
 1    fine -- it just so happens that for reasons that the Government
 2    preferred, the Government proved to have that -- the commerce
 3    number in the joint sentencing memorandum.  But they were all
 4    drafted and conceived of at the same time.
 5              THE COURT:  And in your view, the terms of the joint
 6    sentencing memo are incorporated in the plea, itself?
 7              MR. LAZERWITZ:  Definitely, Your Honor.  The plea
 8    agreement makes plain that the joint sentencing memorandum is
 9    part of the record for purposes of your evaluation of this
10    matter.  And we've agreed to -- to both.
11              THE COURT:  And the signatures from the various
12    boards all apply to both?
13              MR. LAZERWITZ:  Correct.
14              MR. SCOTT:  Your Honor, just -- just so -- I mean,
15    we are not trying to hide anything, obviously, from the Court
16    in terms of the negotiation of this volume of commerce figure.
17    Let me give you a little more information on how we got there,
18    if you wish.
19              THE COURT:  Yeah, that would help.
20              MR. SCOTT:  LG had significant sales of this
21    product, there is no doubt about that, in the billions of
22    dollars worldwide.  And as I advised the Court, one very
23    important aspect in this negotiation was trying to determine
24    what volume of U.S. commerce was affected under the Sentencing
25    Guidelines in order to get a base fine.
```

1          And for purposes of reaching this plea agreement, we

2     came to the agreement to include three categories of sales.

3     The first category was TFT LCD sales by LG that were directly

4     shipped into the U.S.  Now, these are the actual panels

5     themselves in the raw form that are shipped into the United

6     States.  And also, category 2 was TFT LCD sales by LG that were

7     directly billed to a company located here in the United States.

8     As an example, Apple Computers, all of its billings for the

9     products it purchases were sent to its location here in the

10    U.S.  All of those sales were included.

11         The third category covered sales of TFT LCD that did

12    not -- by LG that did not fall in the first two categories but

13    were purchased by U.S.-based companies through foreign-based

14    offices.  So, for example, Dell, although headquartered here in

15    the U.S., did a lot of its negotiation and purchasing of TFT

16    LCD at subsidiary offices outside the U.S.  And it's quite --

17    it's unclear, I think at this stage in the civil matters, how

18    you calculate that commerce in terms of damages.

19         We were able to get the companies to agree, for

20    purposes of this plea agreement, to include sales of TFT LCD by

21    LG billed to these foreign offices of U.S.-based companies like

22    Dell or HP, and of that amount, we included any TFT LCD

23    purchased by these companies that ended up in final products

24    like notebooks or monitors that were sold back into the United

25    States.

1          In other words, Dell, through an office, say, in

2    Malaysia, might have purchased a significant amount of panels

3    and had those panels integrated by third-party integrators

4    usually based in Asia or Taiwan.  Of those panels that were put

5    into products, we took the percentage of those products that

6    made it back into the United States market.  We believe, the

7    Government believes that that is U.S. commerce that was

8    affected by this conspiracy.

9          The -- those three areas together total

10   approximately 2.5 billion, and that's where that number came

11   from.  We exchanged a lot of sales data.  The Government worked

12   with the defendant companies, obviously.  We worked with the

13   purchasers who directly purchased these products to get as

14   accurate data as possible regarding the sales.  It was a very

15   time consuming, very complex, as you can imagine, process, even

16   getting these three categories, the information that was

17   agreeable between us.

18         Those categories are the basis of the agreed-upon

19   2.5 billion.

20         **THE COURT:**  Well, that's very helpful.  Thank you.

21         And is that your understanding as well?

22         **MR. LAZERWITZ:**  Yes, Your Honor.

23         **THE COURT:**  Okay.

24         **MR. LAZERWITZ:**  And I just -- just so it's clear,

25   the top of page 4 of this joint sentencing memorandum, our

1   clients agreed that that volume was calculated for purposes of

2   this plea and sentencing only.  And our clients don't object to

3   that calculation for those purposes.  But that's precisely how

4   the Government -- what Mr. Scott described was the methodology

5   that the Government used.

6          **MR. SCOTT:**  And, Your Honor, just so I'd add a point

7   that already may have been made, this in no way limits the

8   civil plaintiffs and what their claims are in damages.  And I

9   expect that their claims will be much even broader than this.

10         We were in a position with the Government to try to

11  determine what we believed affected commerce was in the -- here

12  in the U.S. for purposes of the Sentencing Guidelines to try to

13  get to a defined amount that we believe signified the degree of

14  culpability of these defendants and the activity they engaged

15  in.  We believe we got to that amount using a very reasonable

16  and rational approach, we believe, something that we had to

17  negotiate that was the subject of significant negotiation for a

18  long period of time.  It wasn't a methodology that was

19  immediately agreed to by any of the defendant companies.

20         So we believe that we met sort of the purposes of

21  the Sentencing Guidelines here in how we measured U.S. commerce

22  here.  And it got us to a fine level that we believe is

23  appropriate for this -- for this matter, and, by the way, Your

24  Honor, taking into consideration of international comity where

25  we have these other international enforcement agencies that

1    most likely will be bringing their own actions and measuring

2    some commerce themselves and not double-counting that commerce.

3           So, for example, we excluded commerce sold by Dell

4    in products that ended up, say, in Asia.  It's very possible

5    that other foreign enforcement agencies will include that

6    amount of commerce and fines that they reach with these

7    defendants when they settle their cases.

8           **THE COURT:**  All right.  Thank you.

9           That's consistent with your understanding?

10          **MR. LAZERWITZ:**  That's the Government's view of the

11   world, yes.  I don't necessarily agree with all of that, but

12   that's the Government's position, and it's certainly rational.

13   And the company accepted it for purposes of, as Mr. Scott said,

14   we -- the company, our client's desire to resolve this criminal

15   matter.  And the resulting agreements we think, ultimately, at

16   the end of the day are what the company was willing to accept.

17          **THE COURT:**  Okay.

18          Is there anything else you would like me to inquire

19   of Mr. Hong?

20          **MR. SCOTT:**  No, Your Honor.

21          **THE COURT:**  All right.

22          Well, I believe that Mr. Hong is fully authorized by

23   the two companies who are the defendants here to enter this

24   plea.  I believe there's a factual basis for the pleas of

25   guilty and that they are being freely and voluntarily given.

```
1              So Tracy, I would ask you, please, to take
2    Mr. Hong's pleas to the Information.
3              THE CLERK:  Okay.
4              The United States Attorney has filed an Information
5    charging LG Display Company, Limited and LG Display America,
6    Incorporated in a single-count Information of a violation of
7    Title 15, United States Code Section 1, which is price fixing.
8    How do LG Display Company and LG Display America wish to plead
9    to the single-count Information, guilty or not guilty?
10             THE DEFENDANT:  Guilty.
11             THE COURT:  Thank you.  I will accept that guilty
12   plea.  I'll take the plea agreement under advisement.
13             Now, you have indicated you would like to proceed
14   immediately to sentencing today?
15             MR. SCOTT:  Yes, Your Honor.
16             THE COURT:  All right, well, that these two
17   companies, LG Display Company, Limited, and LG Display America,
18   Inc., were convicted of one count of 15 U.S.C. Section 1, which
19   is conspiracy in restraint of trade.  They were convicted
20   today, December 15th, 2008, based on their pleas of guilty.
21             I have read and reviewed the plea agreement and the
22   joint sentencing memo on the request for -- which is a request
23   for expedited sentencing under Local Rule 32-1(b) and the
24   motion for departure.
25             Mr. Lazerwitz, did you explain to Mr. Hong that
```

```
 1    generally in matters such as this the defendant would be
 2    referred to the Probation Office for a report and a guideline
 3    evaluation?
 4              MR. LAZERWITZ:  Yes, Your Honor.
 5              THE COURT:  And that we're skipping that step?
 6              MR. LAZERWITZ:  Yes.
 7              THE COURT:  And was he agreeable to that?
 8              MR. LAZERWITZ:  Yes.  He and the company were very
 9    much agreeable to having the sentencing done today, if Your
10    Honor would be so inclined.
11              THE COURT:  All right.
12         And Mr. Hong, in most cases after a defendant pleads
13    guilty, then the Probation Office does a report which, among
14    other things, would help me decide how best to calculate your
15    sentence.
16         In a case such as this, that would include helping
17    me to understand better the outlines of the conspiracy and the
18    amount of commerce affected so that I would know more clearly
19    how to apply the guideline sentencing provisions in this case.
20         Do you understand that?
21              THE DEFENDANT:  Yeah, Your Honor, I understand.
22              THE COURT:  And I'm being requested to skip that
23    step because your companies and the Government have agreed that
24    a particular sentence would be an appropriate sentence here.
25    So I'm prepared to go ahead and do that, skipping that step, as
```

```
1    long as you're comfortable to skip that step.
2              That's all right with you?
3              THE DEFENDANT:  Yes, I agree.
4              THE COURT:  Okay.  Well, then, I will proceed.
5              I've reviewed the materials that you gave me.  And I
6    think as far as they go they are accurate.  And I find that
7    there is enough information provided in the materials you've
8    given me to make an informed sentencing decision.
9              Applying the guidelines at Section 2(r)1.1(d)(1) and
10   section 8(c)2.4(b), the base fine, which is 20 percent of the
11   volume of affected commerce, and the parties have agreed that
12   the volume of affected commerce to be used here is
13   $2.5 billion, so the base fine is $500 million.  The
14   culpability score based on the various provisions of 8(c)2.5 of
15   the Guidelines include a base score of 5, an addition of 5 for
16   the involvement in or tolerance of criminal activity; no
17   additions based on prior history or violation of order or
18   obstruction of justice or effective program to prevent and
19   detect violations of law, that's neutral here.
20             The score is lowered by 2 based on the provisions of
21   8(c)2.5(g)2, which are self-reporting cooperation and
22   acceptance of responsibility.  That brings the total
23   culpability score to 8.  And under the provisions of 8(c)2.6,
24   the maximum -- the minimum and maximum multiplies are 1.6 to
25   3.2, yielding a minimum and maximum fine range of 800 million
```

1    to $1.6 billion.

2              The mandatory special assessment for each count is

3    $400.

4              **THE CLERK:**  Per count?

5              **THE COURT:**  Yeah.

6              **THE CLERK:**  Okay.

7              **THE COURT:**  Well, for each, each defendant.

8              So those would be the guideline -- 800 million to

9    1.6 billion would be the guideline fine range.

10             The United States has moved under section 8(c)4.1

11   for a downward departure to a fine of $400 million.

12             Now, is this joint and several between the two of

13   them?

14             **MR. SCOTT:**  Yes.

15             **THE COURT:**  Or --

16             **MR. SCOTT:**  Yeah.  I mean, they should be

17   concurrently paid.

18             **THE COURT:**  It's not -- is it 400 from each?

19             **MR. SCOTT:**  No, no.  It's a single $400 million fine

20   paid between the both of them.  It's not 200 each, and it's not

21   800.

22             **THE COURT:**  All right, it will just be joint and

23   several, then.

24             **MR. SCOTT:**  Yeah.

25             **THE COURT:**  And they will work out how they pay it.

| | |
|---|---|
| 1 | MR. *LAZERWITZ:*  Right.  The understanding is that |
| 2 | whether the fine is being paid by the Korean parent or the U.S. |
| 3 | affiliate is up to the company. |
| 4 | THE *COURT:*  Right. |
| 5 | MR. *LAZERWITZ:*  I suspect, as I said to Mr. Scott, |
| 6 | that it's more likely that the wirings will come from the |
| 7 | entity in the U.S., just because it's administratively easier. |
| 8 | But under the plea agreement -- |
| 9 | THE *COURT:*  It doesn't matter? |
| 10 | MR. *LAZERWITZ:*  It doesn't matter who pays. |
| 11 | THE *COURT:*  The plea agreement recites that LG |
| 12 | Display has produced relevant documents to constitute |
| 13 | substantial assistance, in the Government's view, and for that |
| 14 | reason, the Government is moving to depart below the Guideline |
| 15 | and impose a $400 million fine, right? |
| 16 | MR. *SCOTT:*  That's correct, Your Honor. |
| 17 | THE *COURT:*  And you are requesting that there be no |
| 18 | restitution in light of possible damages, which would go back |
| 19 | to victims in the -- in the MDL civil proceedings, right? |
| 20 | MR. *SCOTT:*  That's correct, Your Honor. |
| 21 | THE *COURT:*  All right, well, I'll -- I'll do that. |
| 22 | Now, where is the provision on payment?  How it's to |
| 23 | be paid? |
| 24 | MR. *LAZERWITZ:*  Your Honor, that is found in the |
| 25 | plea agreement on page -- |

```
1              MR. SCOTT:  Six.

2              MR. LAZERWITZ:  Six.  Paragraph --

3              MR. SCOTT:  Eight.

4              MR. LAZERWITZ:  -- 8(a) sets out the schedule.

5              THE COURT:  What is the thinking, Mr. Scott, in

6    recommending no probation?

7              MR. SCOTT:  Well, it's standard in these type of

8    agreements.  We just don't think it's necessary here.  And we

9    have never had any involvement in probation after these types

10   of sentences and have never had any issues.

11             Clearly, if there is nonpayment, there are remedies

12   available to -- to go after the defendants here if they don't

13   pay their fine.  But that is the primary term here.

14             And probation might have significant collateral

15   consequences on the company and its business activities around

16   the world, including the U.S.  So this is a significant

17   provision, I think, from their perspective.  And we just don't

18   think it's necessary, from our perspective.

19             THE COURT:  All right, so the whole sentence would

20   be the fine broken out in the payments, as you've suggested,

21   and the $400 special assessment.  And that would be it?

22             MR. SCOTT:  That's right, Your Honor, with interest,

23   of course, accruing on the fine amounts until they're paid.

24             THE COURT:  Okay, well, I will do that.

25             Is there anything either counsel wishes to be heard
```

```
 1    about before I go ahead and do that?
 2              MR. LAZERWITZ:  No, Your Honor.
 3              MR. SCOTT:  No, Your Honor.
 4              THE COURT:  Mr. Hong, did you wish to say anything
 5    to the Court before I impose sentence on the companies?
 6              THE DEFENDANT:  No, thanks.
 7              THE COURT:  All right.
 8              All right, it is the judgment of the Court that the
 9    defendants, LG Display Company, Limited, and LG Display,
10    America, Inc., pursuant to the Sentencing Reform Act of 1984,
11    are hereby sentenced to pay a fine in the total amount of
12    $400 million.  It is payable jointly and severally as follows:
13              "Within six months of imposition of the sentence,
14    $200 million dollars plus accrued interest; within 18 months of
15    the imposition of the sentence" --
16              MR. LAZERWITZ:  Your Honor, pardon me, I think
17    20 million is the first payment.
18              THE COURT:  I'm sorry, did I say that wrong?  Let me
19    start over again.
20              And the sentence is being imposed today, so let's
21    just -- we'll put in today's date --
22              MR. LAZERWITZ:  Okay, perfect.
23              THE COURT:  -- instead.
24              "Within six months of 12/15/08, $20 million plus any
25    accrued interest.  Within 18 months of" --
```

```
 1              MR. SCOTT:  Of this date.
 2              THE COURT:  -- "of December 15th, '08, $76 million
 3    plus any accrued interest.  Within 30 months of December 15,
 4    '08, $76 million plus any accrued interest.  Within 42 months
 5    of December 15th, '08, $76 million plus any accrued interest.
 6    Within 54 months of December 15th, '08, $76 million plus any
 7    accrued interest.  Within 60 months of December 15th, '08,
 8    $76 million plus any accrued interest, provided, however, that
 9    the defendant has the option at any time before 60 months after
10    December 15th, '08 to prepay the remaining balance plus any
11    accrued interest then owing on the fine.  You are each ordered
12    to pay a $400 special assessment, which is due immediately."
13              And there is no other portion to the sentence.
14              MR. SCOTT:  That's correct, Your Honor.
15              THE COURT:  All right, thank you.
16              MR. LAZERWITZ:  Thank you very much.
17              THE COURT:  You're welcome.
18              MR. SCOTT:  Thank you, Your Honor.
19                   (Proceedings adjourned at 4:03 p.m.)
20
21                        ---o0o---
22
23
24
25
```

## CERTIFICATE OF REPORTER

I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing. The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.


_____
/s/ Sahar McVickar

Sahar McVickar, RPR, CSR No. 12963

December 16, 2008