# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA


UNITED STATES OF AMERICA,           )
                                    )
                  Plaintiff,        )
                                    )   No. CR-09-0247
                                    )   PAGES 1-25
vs.                                 )
                                    )
HITACHI DISPLAYS LTD.,              )
                                    )   SAN FRANCISCO, California
                                    )   FRIDAY
                  Defendant.        )   MAY 22, 2009
                                    )   11:00 A.M.
_____)


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:              OFFICE OF UNITED STATES
                                ATTORNEY
                                450 GOLDEN GATE AVE.
                                SAN FRANCISCO, CALIFORNIA
                                94102
                                (415)436-6660
                                BY: David Ward


FOR THE DEFENDANT:              MORGAN, LEWIS & BOCKIUS
                                ONE MARKET, SPEAR STREET TOWER
                                SAN FRANCISCO, CALIFORNIA
                                94105
                                (415)442-1309
                                BY:  John Hemann


FURTHER APPEARANCES ON NEXT PAGE.

REPORTED BY: SARAH L. GOEKLER, CSR NO. 13446
Proceedings recorded by computerized stenography, transcript
prepared on ProCat System by Sarah L. Goekler.

```
 1   Friday, May 22, 2009                    11:00 a.m.

 2                    P R O C E E D I N G S

 3        THE CLERK:  Calling criminal 09-247 United States

 4   versus Hitachi Displays.

 5        MR. WARD:  Good morning, Your Honor.  David Ward and

 6   Lynch for the United States.

 7        THE COURT:  Good morning.

 8        MR. HEMANN:  Good morning, Your Honor.  John Hemann,

 9   Morgan Lewis on behalf of Hitachi Displays.  And with me is

10   Kazuo Hatanaka from the company, and Ellen Travis, the

11   translator, who has been sworn.

12        THE COURT:  Mr. Ward, it's my understanding that the

13   Government has agreed that the interpreter may perform the

14   interpretation services this morning.

15        MR. WARD:  That's correct, Your Honor.  We have no

16   objections to defendant's interpreter.

17        THE COURT:  Likewise, the defense has proffered

18   your --

19        MR. HEMANN:  Yes, Your Honor --

20        THE COURT:  -- correct?  Okay.  Mr. Hatanaka, I

21   understand from your lawyers that you would like to change the

22   plea on behalf of Hitachi Displays Ltd. this morning; is that

23   correct, sir?

24        THE DEFENDANT (through the interpreter):  That's

25   correct.
```

```
 1              THE COURT:  All right, sir.  And before we do that, I
 2   need to ask you some questions.  And before you answer my
 3   questions, you need to swear to tell the truth.
 4              So, Tracy, would you swear Mr. Hatanaka, please.
 5              THE DEFENDANT (through the interpreter):  Yes, I do.
 6              (Whereupon, the defendant was sworn.)
 7              THE COURT:  Thank you, sir.  How old are you, sir.
 8              THE DEFENDANT (through the interpreter):  Sixty-one
 9   years old.
10              THE COURT:  And how far did you go in school?
11              THE DEFENDANT (through the interpreter):  I graduated
12   from a university.
13              THE COURT:  All right.  Do you understand my
14   questions with the help of the interpreter?
15              THE DEFENDANT (through the interpreter):  Somewhat.
16              THE INTERPRETER:  Because English is his second
17   language, he just understands a little.
18              THE COURT:  Okay.  What I'm interested in is with the
19   help of the interpreter, do you understand everything I am
20   saying?
21              THE DEFENDANT (through the interpreter):  Yes, I do.
22              THE COURT:  All right.  Thank you.
23              And if at any point my questions are confusing,
24   please tell me.
25              THE DEFENDANT (through the interpreter):  I
```

1    understand.

2         **THE COURT:**   All right.  Have you had any drugs or

3    medicine or pills or drunk any alcoholic beverages in the last

4    24 hours?

5         **THE DEFENDANT (through the interpreter):**  I had a

6    little bit of wine at dinner last night.

7         **THE COURT:**  Are you clear-headed this morning?

8         **THE DEFENDANT (through the interpreter):**  Yes, I'm

9    fine, Your Honor.

10        **THE COURT:**   Thank you.  Does either counsel have any

11   reason to question Mr. Hatanaka's competence to enter this

12   plea?

13        **MR. HEMANN:**  No, Your Honor.

14        **MR. WARD:**  No, Your Honor.

15        **THE COURT:**  All right.

16        Mr. Hemann, you have provided me and Mr. Ward with a

17   resolution of the Board of Directors of Hitachi Displays Ltd.

18        **MR. HEMANN:**  Yes, Your Honor.  It's attached to the

19   plea agreement.

20        **THE CLERK:**  Do you have the original plea agreement?

21        **MR. WARD:**   I have the original plea agreement.

22        **THE CLERK:**  Thank you.

23        **THE COURT:**  And it reflects that the board has

24   authorized Mr. Hatanaka to speak for it in court here today and

25   to enter into the plea agreement on behalf of the corporation

1    today; is that right?

2              **MR. HEMANN:**   That's correct, Your Honor.

3              **THE COURT:**   And, Mr. Hatanaka, is it correct that you

4    have been authorized by the Board of Hitachi Displays Ltd. to

5    act for it here in court this morning?

6              **THE DEFENDANT (through the interpreter):**   That is

7    correct.

8              **THE COURT:**   So when I ask the following questions,

9    I'm asking you the question, but it really relates to the

10   company, Hitachi Displays Ltd.

11             **THE DEFENDANT (through the interpreter):**   Yes.

12             **THE COURT:**   Have you had enough time -- well, do you

13   understand that criminal defendants have the right to a lawyer

14   at all stages of the proceedings, including trial, if they wish

15   to go to trial?

16             **THE DEFENDANT (through the interpreter):**   Yes, I

17   understand that.

18             **THE COURT:**   And have you had much time to talk to

19   your lawyers about the charges that are pending against you

20   here?

21             **THE DEFENDANT (through the interpreter):**   Yes.  Yes,

22   I have had enough time.

23             **THE COURT:**   And have your lawyers explained what the

24   Government -- what the United States Government would have to

25   prove before you could be convicted of these charges?

1          **THE DEFENDANT (through the interpreter):**  Yes.

2          **THE COURT:**  All right.  Are you satisfied with your

3     lawyer's representation of you?

4          **THE DEFENDANT (through the interpreter):**  Yes, I am

5     satisfied.

6          **THE COURT:**  All right.

7          Mr. Ward, can you summarize for me and Mr. Hatanaka

8     the elements of the offense to which he's proposing the plea

9     agreement.

10          **MR. WARD:**  Yes, Your Honor.

11          Hitachi Displays is charged by information with one

12     count for violating Section 1 of the Sherman Act.  That's 15

13     U.S.C, Section 1.  To establish such a violation, the United

14     States must prove three elements beyond a reasonable doubt.

15          One, that the defendant entered into a conspiracy.

16     Two, that the conspiracy was an unreasonable restraint of

17     trade.  And then, three, that the conspiracy affected

18     interstate commerce in the United States.

19          **THE COURT:**  Do you understand those are the elements

20     of this offense, sir?

21          **THE DEFENDANT (through the interpreter):**  Yes, I

22     understand.

23          **THE COURT:**  And do you understand that the -- what is

24     the maximum sentence for this offense to which the corporation

25     might be subjected to?

1          **MR. WARD:**  Your Honor -- I'm sorry.  Your Honor, the

2     maximum penalty for each violation of Section 1 of the Sherman

3     Act is, first, a fine in an amount equal to the greatest of

4     $10 million or twice the gain or twice the loss to the victims

5     of the crime.

6          Two, there's restitution to the victims of the

7     offense.

8          Three, is a $400 special assessment.

9          And then, four, is a term of probation of at least

10    one year, but not more than five years.

11         **THE COURT:**  Do you understand those are the maximum

12    punishments available to which you may be subject in this case?

13         **THE DEFENDANT (through the interpreter):**  Yes, I

14    understand.

15         **THE COURT:**  All right.  Do you understand that under

16    the Constitution and laws of the United States, the defendant

17    has the right to plead not guilty to these charges.  And if it

18    pleads not guilty, it will be presumed innocent unless and

19    until the Government proves, beyond a reasonable doubt, that

20    it's guilty of every element of this offense beyond a

21    reasonable doubt; do you understand that?

22         **THE DEFENDANT (through the interpreter):**  Yes, I

23    understand that.

24         **THE COURT:**  And the defendant has a right to a jury

25    trial, and it could not be convicted at a jury trial unless all

1   12 members of the jury find that the defendant is guilty of

2   every element of the offense beyond a reasonable doubt; do you

3   understand that?

4            THE DEFENDANT (through the interpreter):  Yes, I

5   understand that.

6            THE COURT:  It would be up to the Government to call

7   witnesses and put on evidence to prove every element of this

8   offense; do you understand that?

9            THE DEFENDANT (through the interpreter):  Yes, I

10  understand that.

11           THE COURT:  Your lawyer would have the right to

12  cross-examine the Government's witnesses and challenge the

13  Government's evidence; do you understand that?

14           THE DEFENDANT (through the interpreter):  Yes, I

15  understand that.

16           THE COURT:  And your lawyer would have the right to

17  call witnesses to testify on behalf of the defendant to explain

18  its viewpoint of the evidence; do you understand that?

19           THE DEFENDANT (through the interpreter):  Yes, I

20  understand that.

21           THE COURT:  And your lawyer could challenge and

22  cross-examine the Government's witnesses; do you understand

23  that?

24           THE DEFENDANT (through the interpreter):  Yes, I

25  understand that.

1        **THE COURT:**  And if you plead guilty today on behalf

2    of the company, it gives up all these trial rights that we're

3    talking about, the right to trial by jury, the right to

4    confront the witnesses against it, and it will be found guilty

5    based on your admission here in open court that the company is

6    guilty; do you understand that?

7        **THE DEFENDANT (through the interpreter):**  Yes, I

8    understand that.

9        **THE COURT:**  And if you plead guilty on its behalf

10    today, it will give up the right to appeal from the finding

11    that it's guilty; do you understand that?

12        **THE DEFENDANT (through the interpreter):**  Yes, I

13    understand that.

14        **THE COURT:**  And the company will also give up the

15    right to appeal from anything else the Court may have done and

16    to appeal from the sentence as long as I sentence you in

17    accordance with this plea agreement; do you understand that?

18        **THE DEFENDANT (through the interpreter):**  Yes, I

19    understand that.

20        **THE COURT:**  Has anybody threatened you or forced you,

21    or threatened or forced the company to enter this plea today?

22        **THE DEFENDANT (through the interpreter):**  No, that

23    did not happen.

24        **THE COURT:**  All right.  Did you and the other

25    representatives of the company have enough time to talk to the

```
 1   lawyers about how your sentence might be computed in this case?
 2            THE DEFENDANT (through the interpreter):  Yes, I was
 3   able to.
 4            THE COURT:  All right.  I understand that there has
 5   been -- well, I'm holding the document called "plea agreement."
 6   On page 14 of this document, there is a signature line for --
 7            MR. HEMANN:  Yoshiyuki Imoto, who's the CEO of
 8   Hitachi Displays, and he's authorized by the Board of
 9   Resolution to sign the plea agreement.
10            THE COURT:  Who is?
11            MR. HEMANN:  Mr. Imoto.
12            THE COURT:  But he's not here.
13            MR. HEMANN:  No.  There's a two-part resolution.
14   Mr. Imoto is authorized to sign and -- oh, thank you, very
15   much -- and Mr. Hatanaka is authorized to enter the plea on
16   behalf of the company.
17            THE COURT:  Is that agreeable with the Government?
18            MR. WARD:  It is, Your Honor.
19            THE COURT:  Well, I guess -- what I wonder is how do
20   I know Mr. Imoto signed it?
21            MR. HEMANN:  He recognizes his signature, Your Honor.
22            THE COURT:  Okay.  Do you recognize the signature of
23   Mr. Imoto, the chief executive officer and president of Hitachi
24   Displays Ltd?
25            THE DEFENDANT (through the interpreter):  Yes.
```

 1           **THE COURT:**  And does that appear to you to be his

 2   signature?

 3           **THE DEFENDANT (through the interpreter):**  It is

 4   exactly his signature.

 5           **THE COURT:**  All right.

 6           Mr. Hemann, can you summarize for me and for

 7   Mr. Hatanaka the general terms of this plea agreement?

 8           **MR. HEMANN:**  Yes, Your Honor.  Under the plea

 9   agreements, Hitachi Displays is going to enter a plea of guilty

10   to a one-count information, charging the company with

11   participating in a conspiracy to suppress and eliminate

12   competition by fixing the prices of TFT-LCD panels for sale to

13   Dell Corporation for use in PCP notebook computers for a period

14   from about April 1st, 2001 to March 31st, 2004 in violation of

15   Section 1 of the Sherman Act.

16           Also, in the plea agreement, Hitachi Displays is

17   agreeing to pay a single fine of $31 million and a special

18   assessment of $400.  The company is not, with the agreement of

19   the Government, not agreeing to a term of probation or

20   restitution, given the pendency of the civil class action

21   before Your Honor.

22           The United States, under the plea agreement, has

23   agreed that if Hitachi Displays continues to cooperate with its

24   investigation into the TFT-LCD industry, no other Hitachi

25   entity, subsidiary, affiliate will be prosecuted or any Hitachi

 1    employees other than the two individuals whose names are

 2    reflected in the plea agreement.  Those are the material terms.

 3              **THE COURT:**  Is that correct, Mr. Ward?

 4         **MR. WARD:**  Yes, Your Honor.

 5              **THE COURT:**  And, Mr. Hatanaka, is that your

 6    understanding of what this plea agreement provides?

 7              **THE DEFENDANT (through the interpreter):**  Yes, it is

 8    my understanding.

 9              **THE COURT:**  Where would I find the names that you

10    referred to, Mr. Hemann?

11         **MR. HEMANN:**  Your Honor, if you look -- and I believe

12    it's paragraph 13 of plea agreement.  Let me just check to make

13    sure.

14         **MR. WARD:**  13(b), Your Honor, on page eight of the

15    plea agreement.

16         **MR. HEMANN:**  Correct.  The two employees, Your Honor,

17    Mr. Wakabayashi and Mr. Someya.

18              **THE COURT:**  Well, where's the place where it says --

19         **MR. HEMANN:**  It's actually paragraph 15.  Paragraph

20    14 is the first place that the names appear.  In paragraph 15

21    of the plea agreement, sets forth the Government's promise that

22    assuming cooperation by the company and all of the other

23    employees of the company, only Mr. Wakabayashi and Mr. Someya

24    may be prosecuted.

25         **MR. WARD:**  Page ten of the plea agreement.

1          **THE COURT:**  Okay.

2          **MR. HEMANN:**  Actually, Your Honor, to be completely

3    accurate, paragraph 15 refers to no further prosecution of the

4    company.  Paragraph 16(a) refers to no further prosecution to

5    any other individual by Mr. Wakabayashi and Mr. Someya.

6          **THE COURT:**  All right.  And the agreement is under

7    Rule (C)(1)(C), meaning that as long as I sentence him in

8    accordance with it, then nobody can change its mind; correct?

9          **MR. WARD:**  That's --

10         **MR. HEMANN:**  That's correct, Your Honor.

11         **THE COURT:**  Okay.  Mr. Ward, can you summarize for me

12   and Mr. Hatanaka what the Government would prove if this matter

13   went to trial?

14         **MR. WARD:**  Yes, Your Honor.  Had this case gone to

15   trial, the United States would have presented evidence

16   sufficient to prove the following facts:

17         For the purposes of this plea agreement the relevant

18   period is that period from on or about April 1st, 2001 to on or

19   about March 31st, 2004.  During the relevant period, Hitachi

20   Displays Ltd. was a corporation.  It was organized and existing

21   under the laws of Japan.

22         Prior to 2002, the defendant was a division of

23   Hitachi Ltd.  The defendant has its headquarters and principal

24   place of business in Chiba, Japan.  And during the relevant

25   period, the defendant was a producer of TFT-LCD, which refers

1    to thin-film transistor liquid crystal display, was engaged in

2    the sale of TFT-LCD in the United States and elsewhere and

3    employed between 1,000 and 5,000 individuals.

4            TFT-LCD are glass panels composed of an array of tiny

5    pixels that are electronically manipulated in order to display

6    images.   TFT-LCD are manufactured in a broad range of sizes and

7    specifications for use in televisions, notebook computers,

8    desktop monitors, and mobile devices and other applications.

9            From on or about April 1st, 2001 to on or about

10   March 31st, 2004, the defendant, through its officers and

11   employees, participated in a conspiracy with other major

12   TFT-LCD producers.   The primary purpose of which was to fix the

13   price of TFT-LCD sold to Dell for use in notebook computers.

14           In furtherance of the conspiracy, the defendant,

15   through its officers and employees, engaged in telephone

16   discussions and attended bilateral meetings with

17   representatives of other major TFT-LCD producers.   During these

18   discussions and meetings, agreements were reached to fix the

19   price of TFT-LCD sold to Dell for use in notebook computers.

20           During the relevant period, TFT-LCD sold by one or

21   more of the conspirator firms and the equipment and supplies

22   necessary to the production and distribution of TFT-LCD, as

23   well as payments for TFT-LCD, traveled in interstate and

24   foreign trade and commerce.

25           The business activities of the defendant and its

1    coconspirators in connection with the production and sale of

2    TFT-LCD, affected by this conspiracy, were within the flow of

3    and substantially affected interstate and foreign trade and

4    commerce.

5         Finally, acts in furtherance of this conspiracy were

6    carried out within the Northern District of California.

7    TFT-LCD affected by this conspiracy were either sold by one or

8    more of the conspirators to customers in this district.

9         THE COURT:  Mr. Hemann, do you agree the Government

10   is in a position to put on such a case?

11        MR. HEMANN:  Yes, with emphasis, Your Honor, on the

12   fact that the plea is limited to the sale of TFT-LCDs to Dell

13   for use in PC notebook computers.  As Mr. Ward articulated, we

14   don't -- we believe that he's in a position to put that case

15   on.

16        THE COURT:  I was going to ask you about that,

17   Mr. Ward.  Did Hitachi Displays sell to other companies, as

18   well?

19        MR. WARD:  Your Honor, Hitachi Displays sold TFT to

20   numerous companies.  Our evidence only indicated -- and we

21   would only be able to prove a conspiracy to sell to Dell Inc.

22        THE COURT:  Well, they conspired with other

23   companies, did they?

24        MR. WARD:  I'm not saying they conspired -- they

25   conspired with other companies to fix the price of TFT-LCD sold

1   to Dell.

2        They also sold TFT-LCD panels to other manufacturers,

3   but the Government does not have evidence to prove a conspiracy

4   to fix prices of TFT sold to any other customers other than

5   Dell.  We would not be able to meet the proof -- specifically,

6   the jurisdictional burden to prove a case against other

7   purchases of TFT-LCD.

8        **THE COURT:**  To which is the jurisdictional burden to

9   which you refer?

10       **MR. WARD:**  Most of the activity, to our knowledge,

11   the defendant engaged in for sale to other customers occurred

12   outside of the United States.

13       **THE COURT:**  Most of the activity?

14       **MR. WARD:**  Most of the sales, the sales force, the

15   production, the shipment occurred outside of the United States.

16       **THE COURT:**  Because I have taken other pleas in these

17   related cases which have involved conspiracy to fix the price

18   of the same product, and those have not been limited to Dell.

19       **MR. WARD:**  That's correct, Your Honor.  In other

20   cases, we had evidence to prove -- for example, in the Sharp

21   plea that there were sales to Motorola and Apple to which this

22   defendant did not sell.  The conspiracy to which LG pled to and

23   CPT pled to was a related, but separate, conspiracy that did

24   not involve this defendant.

25       Our evidence showed that this defendant was involved

1    in a conspiracy to fix the prices to Dell only.

2            **MR. HEMANN:**   Your Honor, the plea in this case is

3    similar to the plea in the Sharp case that the Court accepted,

4    except that this case involves a single customer rather than

5    three individual customers.   Sharp didn't plead to a larger,

6    industry-wide conspiracy, either.

7            It was three specific customers, one of which was

8    Dell.   They had two others.   We're just agreeing to plead to a

9    conspiracy related to sales for PC notebooks to Dell.   So it's

10   structured very close to the plea that Sharp entered into that

11   the Court accepted.   Just one customer rather than three

12   customers.

13           **THE COURT:**   I understand what you're saying.   It's

14   not giving me a lot of comfort.   I'm still trying to

15   understand, overall, what this means.

16           So are you suggesting that your proof is developing a

17   situation where there were many separate little conspiracies?

18           **MR. WARD:**   Yes, Your Honor.   We believe there was a

19   larger conspiracy involving LG and CPT and others to fix the

20   price of TFT-LCD sold to many manufacturers.   The Government

21   does not believe that either Hitachi or Sharp were involved in

22   that conspiracy.   We believe that Hitachi, Sharp, and other

23   unnamed coconspirators were involved in a separate conspiracy

24   amongst themselves to fix the price of TFT-LCD sold only to

25   Dell.   So they're related conspiracies, but they're not the

1   same conspiracies.

2          **THE COURT:**  All right.  Have you heard all these

3   things that the lawyers have been saying, Mr. Hatanaka?

4          **THE DEFENDANT (through the interpreter):**  Yes, I've

5   been listening.

6          **THE COURT:**  And do you agree that the things that

7   Mr. Ward said that Hitachi Displays has done that those things

8   are true?

9          **THE DEFENDANT (through the interpreter):**  Yes, that

10  is true.

11         **THE COURT:**  All right.  Please tell me in your own

12  words what Hitachi Displays Ltd. did that makes it guilty of

13  this offense.

14         **THE DEFENDANT (through the interpreter):**  Yes.  As

15  set forth in paragraph four of the plea agreement, Hitachi

16  Displays participated in a conspiracy involving the specified

17  sales of TFT-LCD panels to Dell during the limited time frame

18  specified.

19         **THE COURT:**  And what was the point of the conspiracy,

20  the purpose?

21         **THE DEFENDANT (through the interpreter):**  It was to

22  fix the prices for the TFT-LCD panels for PC notebook computers

23  sold to Dell Corporation.

24         **THE COURT:**  And I apologize.  I should have asked

25  this earlier.  What -- Mr. Hatanaka, what is your title or

1    position at Hitachi Ltd?

2           **THE DEFENDANT (through the interpreter):**   Currently,

3    I am the Executive Managing Director.

4           **THE COURT:**   And were you the Executive Managing

5    Director during this period from April 1st, 2001 to March 31st,

6    2004?

7           **THE DEFENDANT (through the interpreter):**   No, at that

8    time I was at the Hitachi headquarters.   I used to be the audit

9    manager at the Hitachi headquarters.

10          **THE COURT:**   When did you come over to Hitachi Ltd --

11   I mean, Hitachi Displays?

12          **THE DEFENDANT (through the interpreter):**   In April of

13   2004.

14          **THE COURT:**   So he wasn't there when this was

15   happening.   So how does he know it happened?

16          **MR. HEMANN:**   He's just been -- the Board of Directors

17   of the company, based on advice from legal counsel, both inside

18   and outside the company, reached a conclusion that the evidence

19   that the facts alleged by the Government and admitted by

20   Hitachi occurred.   Mr. Hatanaka has simply been authorized by

21   the board to enter the plea on behalf of the company based on

22   the Board of Directors' conclusion as to what occurred.

23          **THE COURT:**   And that's all agreeable to the

24   Government?

25          **MR. WARD:**   It is, Your Honor.

1          **THE COURT:**  Okay.  Well, I find that the plea is

2   being voluntarily entered into, that there's a factual basis

3   for it, and that Hitachi is, in fact, guilty of -- Hitachi

4   Displays Ltd. is guilty of the offense charged in the

5   information.  So I'll accept the plea.

6          **MR. HEMANN:**  Thank you, Your Honor.

7          **THE COURT:**  With respect to the plea agreement,

8   you've likewise requested that the sentence -- we'd proceed to

9   sentencing at this time; right?

10          **MR. HEMANN:**  Yes, Your Honor.  Thank you.

11          **MR. WARD:**  Yes, Your Honor.

12          **THE COURT:**  And have you, Mr. Hemann, explained to

13   Mr. Hatanaka that -- and to the company that ordinarily we

14   would do this in two steps.  There would be a plea.  There

15   would be time for a report to be prepared, and then we would

16   come back some weeks or months later and do the judgment and

17   sentencing.

18          You've explained that?

19          **MR. HEMANN:**  Yes, Your Honor.

20          **THE COURT:**  And you've explained to him that you're

21   asking me to do this on a somewhat truncated record and do it

22   today; is that right?

23          **MR. HEMANN:**  Yes, Your Honor.

24          **THE COURT:**  And have you explained to him that I'll

25   only do it if I feel there's enough evidence in the materials

1   supplied to me to make an intelligent decision?

2         **MR. HEMANN:**  Yes, I have, Your Honor.

3         **THE COURT:**  And they want me to go ahead; right?

4         **MR. HEMANN:**  The company would like you to go ahead.

5   Yes, Your Honor.

6         **THE COURT:**  I have reviewed the plea agreement.  I

7   have reviewed the joint sentencing memo with request for

8   expedited sentence under Local Rule 32-1(b), and the

9   Government's motion for a downward departure, and I do find

10  that that's enough information to make an informed sentencing

11  decision.  The guideline calculation would be as follows:

12        The base fine is 20 percent of affected commerce

13  under guidelines (2R1.1(d)(1)) and (8C2.4(b)).  20 percent of

14  the stipulated $130 million of affected commerce would be

15  $26 million.

16        The culpability score is computed thusly.  The base

17  is computed under (8C2.5(a)), and that's five.  Under

18  (8C2.5(b)(1)), based on involvement in or tolerance of criminal

19  activity, the score is raised by four points.  Under (8C2.5(c))

20  prior history.  There's zero-points.  (8C2.5(d)) violation of

21  court orders.  There's zero-points.  (8C2.5(e)) obstruction of

22  justice.  There's zero-points.  (8C2.5(F)) effective program to

23  prevent and detect violations of law.  There's zero-points.

24  However, for (8C2.5(g)(2)) self-reporting, cooperation, and

25  acceptance of responsibility, the score is reduced by two

```
1    points, generating a total culpability score of seven.
2            The maximum and minimum multipliers under (8C2.6) are
3    a maximum of 2.8 and a minimum of 1.4.  The minimum and maximum
4    fines under (8C2.7) would be a minimum fine of $36.4 million
5    and a maximum fine of $72.8 million.
6            The Government has moved under (8C4.1) to depart
7    downward to a $31 million based on Hitachi Displays'
8    substantial assistance in the TFT-LCD investigation.  It
9    produced documents here and abroad, and it provided employees
10   for interviews and has agreed to continue the assistance.  And
11   based upon that, it's the joint -- it's the motion of the
12   Government and joined in by the defendant that I depart
13   downward to the suggested fine of $31 million and that there be
14   no probation and no restitution.
15           And the reason for no restitution is what, Mr. Ward?
16           MR. WARD:  We believe that the victims and the
17   plaintiffs in the class action suit are well-situated to recoup
18   restitution in that case -- in this case.  Excuse me.
19           THE COURT:  And is there any limitation imposed by
20   the Government in Hitachi Displays' cooperation or provision of
21   information to the parties in the civil actions?
22           MR. WARD:  There is not, Your Honor.
23           THE COURT:  Okay.  And is it your understanding that
24   they will continue -- that they will cooperate with the parties
25   in the civil litigation; is that your understanding?
```

1          **MR. WARD:**   The Government's understanding is that

2     they are in discussions with the plaintiffs.  The Government --

3          **THE COURT:**   I don't mean settling, but I mean that

4     they will -- they will conform to their discovery only in that

5     case --

6          **MR. WARD:**   Yes, Your Honor.

7          **THE COURT:**   -- in those cases.  And in any event, the

8     criminal proceedings don't compare in any way with Hitachi

9     Displays' ability to participate fully in the discovery process

10    if the civil litigation --

11         **MR. WARD:**   They do not, Your Honor.

12         **MR. HEMANN:**   Your Honor, with the caveat that the

13    criminal cases against some of the individual Hitachi employees

14    might have an impact on their decisions to take the Fifth if --

15    in the event of a deposition.

16         **THE COURT:**   That being the two named individuals in

17    the plea?

18         **MR. HEMANN:**   That being -- I suspect that the two

19    named individuals, if they were -- if their depositions were

20    noticed, might take the Fifth.  I don't have any reason to

21    believe that others will.

22         **THE COURT:**   That's my concern is whether there's

23    going to be some impairment of the ability to get information

24    based on that.

25         **MR. HEMANN:**   Numerous of them are represented by

```
 1   individual counsel.  And that, obviously, is a decision they'll
 2   have to make with -- in consultation of individual counsel.
 3   The company is not in a position and won't be advising people
 4   to take the Fifth.  If that occurs, obviously, they will have
 5   advice of independent counsel.
 6           THE COURT:  Okay.  Well --
 7           MR. HEMANN:  So in short answer, nothing as between
 8   in this agreement or any agreement that we've had with the
 9   United States impedes in any way the discovery -- the normal
10   civil discovery obligations that the company has.
11           THE COURT:  And I think that's appropriate since the
12   restitution, which otherwise might be imposed through this
13   criminal judgment, is being forgone in light of the pending
14   civil action cases.  It's important that those civil actions be
15   given any opportunity to proceed.
16           MR. HEMANN:  And we've been working with Mr. Simon
17   and Mr. Scarpulla and the plaintiffs on conforming to our
18   discovery obligations and moving things as far as the civil
19   cases.
20           THE COURT:  All right.  Well, I'll accept the plea
21   agreement.  I will accept the -- I will impose a sentencing in
22   accordance with it.  I will not impose restitution, and I will
23   not impose provision.
24           In accordance with the Sentencing Reform Act of 1984,
25   the defendant Hitachi Displays Ltd. is hereby ordered to pay a
```

```
 1   fine in the amount of $31 million.  The fine is payable in full

 2   by June 6, 2009.  It is further ordered that a special

 3   assessment of $400 be paid, and that is it.

 4          Is there anything else?

 5          THE CLERK:  When is the special assessment due by?

 6          THE COURT:  Special assessment is due by June 6,

 7   2009, as well.

 8          MR. HEMANN:  We actually have a check for $400, Your

 9   Honor.  So we'll get that paid today.

10          THE CLERK:  Are you going to do it today?

11          MR. HEMANN:  Yeah.

12          THE CLERK:  I have a form I need to give you.

13          THE COURT:  Is there anything else, Mr. Ward, that we

14   need to --

15          MR. WARD:  No, Your Honor.  Thank you.

16          MR. HEMANN:  Thank you very much, Your Honor.

17          THE COURT:  Thank you.

18                  (Thereupon, this hearing was concluded.)

19

20

21

22

23

24

25
```

## CERTIFICATE OF REPORTER

I, SARAH L. GOEKLER, a Certified Shorthand Reporter, hereby certify that the foregoing proceedings were taken in shorthand by me, a disinterested person, at the time and place therein stated, and that the said proceedings were thereafter reduced to typewriting, by computer, under my direction and supervision;

I further certify that I am not of counsel or attorney for either or any of the parties nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

DATED: May 22, 2009.

_____

SARAH L. GOEKLER, CSR 13446