Richard Alan Arnold, Esquire
William J. Blechman, Esquire
Kevin J. Murray, Esquire
Samuel J. Randall, Esquire
KENNY NACHWALTER, P.A.
201 S. Biscayne Boulevard
Suite 1100
Miami, Florida  33131
Tel:     (305) 373-1000
Fax:    (305) 372-1861
E-mail: rarnold@knpa.com
            wblechman@knpa.com
            kmurray@knpa.com
            srandall@knpa.com

*Counsel for Plaintiff Sears Roebuck and Co.
and Kmart Corp.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 07-5944 SC  <br><br>MDL No. 1917 |
| This Document Relates to: <br><br>*Siegel v. Hitachi, Ltd.*, No. 11-cv-05502; <br><br>*Best Buy Co., Inc. v. Hitachi, Ltd.*, No. 11-cv-05513; <br><br>*Target Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514; <br><br>*Sears, Roebuck and Co., & Kmart Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-05514-SC; <br><br>*Siegel v. Technicolor SA, et al.*, No. 13-cv-05261; <br><br>*Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05264; <br><br>*Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA*, No. 3:13-cv-05262; | **DIRECT ACTION PLAINTIFFS'[1] RESPONSE IN OPPOSITION TO DEFENDANTS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF "SPILLOVER" OR "RIPPLE" EFFECTS OF FOREIGN PRICE-FIXING ACTIVITIES ON U.S. PRICES** <br><br>[DEFENDANTS' MIL #8] <br><br>The Honorable Samuel Conti |

---

[1] The Direct Action Plaintiffs that are parties to this Motion are Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C.; Alfred H. Siegel, solely in his capacity as Trustee of the Circuit City Stores, Inc. Liquidating Trust; Sears, Roebuck and Co.; Kmart Corporation; Target Corp.; and Viewsonic Corporation.

*Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686;

*Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 14-cv-02510

Defendants' motion *in limine* No. 8, Dkt. 3563, argues that Plaintiffs should "be precluded from arguing that the FTAIA is satisfied merely based on evidence of price increases of CRTs in the global market on the assumption that global price increases must have impacted prices of the products the Plaintiffs purchased in the U.S. market." Because such a ruling would be inconsistent with controlling Ninth Circuit precedent and the factual record in this case, Defendants' motion should be denied.

**A. Defendants' Motion Would Impose Burdens on Plaintiffs Inconsistent with Controlling Case Law.**

Last month, the Ninth Circuit amended its decision in *United States v. Hsiung*, and reiterated that Defendants' conduct in the LCD conspiracy constituted "import commerce" under the FTAIA[2] and also had a direct, substantial, and reasonably foreseeable effect on domestic commerce. — F.3d —, 2015 WL 400550, *1, *12–*18 (9th Cir. Jan. 30, 2015). Defendants' conduct in the LCD conspiracy is functionally identical to the foreign conduct at issue in the CRT conspiracy, and *Hsiung* makes clear that the Sherman Act applies to such foreign conduct, notwithstanding the FTAIA's jurisdictional bar: "The defendants' efforts to place their conduct beyond the reach of United States law and to escape culpability under the rubric of extraterritoriality are unavailing." *Id.* at *1.

This controlling case law notwithstanding, Defendants' motion curiously suggests that Plaintiffs cannot satisfy FTAIA's jurisdictional bar by showing that "CRTs sold abroad are sold into a 'global market' and that therefore agreements to fix prices of CRTs sold abroad would have ultimately impacted prices of other CRTs sold in the U.S." Defendants' Mot. at 2–3.

---

[2] 15 U.S.C. § 6a.

Defendants' suggestion is foreclosed by *Hsiung*, which holds that the conspirators' knowledge that prices of finished products in the United States would be affected by the cartel agreements was sufficient to implicate the "direct, substantial and reasonably foreseeable" exception to the FTAIA:

> The constellation of events that surrounded the conspiracy leads to one conclusion—the impact on the United States market was direct and followed "as an immediate consequence" of the price fixing. . . . As noted before, some of the panels were imported directly into the United States. Other panels were sold overseas, often to foreign subsidiaries of American companies or to systems integrators, and then incorporated into finished products. **It was well understood that substantial numbers of finished products were destined for the United States and that the practical upshot of the conspiracy would be and was increased prices to customers in the United States.**

*Id.* at *17 (emphasis added).

Further, Defendants make no attempt to address *Hsiung*'s alternative holding that the same conduct constitutes "import commerce" that is not covered by the FTAIA:

> Although it was undisputed at trial that AUO and AUOA did not manufacture any consumer products for importation into the United States, the evidence revealed that AUO and AUOA executives and employees negotiated with United States companies in the United States to sell TFT–LCD panels at the prices set at the Crystal Meetings. Importation of this critical component of various electronic devices is surely 'import trade or import commerce.' To suggest, as the defendants do, that AUO was not an 'importer' misses the point. The panels were sold into the United States, falling squarely within the scope of the Sherman Act.

*Id.* at *14.

Given the Ninth Circuit's clear pronouncement from last month, the FTAIA does not require Plaintiffs to abandon its proof that the cartel fixed prices for CRTs globally, including those imported into the U.S. from abroad. Indeed, the cases relied on by Defendants regarding "spillover" and "ripple" effects are entirely inapposite here for several reasons. First, each of these cases involved plaintiffs whose injuries occurred *outside* the United States. *See In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 561 (D. Del. 2006) (dismissing complaint seeking to recover damages from foreign sales lost due to foreign anticompetitive

conduct); *Eurim-Pharm GmbH v. Pfizer, Inc.*, 593 F. Supp. 1102, 1106 (S.D.N.Y.1984) (dismissing complaint where "plaintiff concede[d] in its memorandum that defendants' conduct lacks a direct, substantial and reasonably foreseeable effect on either import commerce into the United States or export commerce from the United States."); *Lotes Co. v. Hon Hai Precision Indus. Co.*, No. 12-7465, 2013 WL 2099227, at *7-8 (S.D.N.Y. May 14, 2013) (holding that FTAIA barred suit by Chinese company that was victim of monopolization by another Chinese company and suffered its injuries in China).

Second, these cases merely held that the FTAIA barred claims where the *only* effect on the United States was a spillover or ripple effect; the Defendants' cases do not hold that FTAIA bars suit in the United States for ripple effects from foreign anticompetitive conduct, when that conduct is proven to have a direct effect on United States consumers. To the contrary, *Lotes* distinguished *LCD* by noting that the dispute between Chinese companies did not involve price fixing of the major component of a finished product sold into the United States, and did not involve Defendants with a significant global market share. See *Lotes*, 2013 WL 2099227, at *10.

### B. Defendants' Motion Is Inconsistent with the Factual Record.

Defendants' argument is also inconsistent with the factual record in the case. As Plaintiffs noted in detail in response to Defendants' FTAIA summary judgment motion, there is an abundance of evidence in the record demonstrating that the CRT conspiracy involved import commerce and had a direct, substantial, and reasonably foreseeable effect on CRT prices and CRT Product prices in the United States. *See* Plaintiffs' Oppositions to Defendants' Motion for Summary Judgment on FTAIA Grounds, Dkts. 3234, 3235, 3249, 3272 & 3281.

Nor is the evidence on this point limited to "lay opinion testimony and stray statements in the documentary record," as Defendants suggest. For example, as Dr. Elzinga explains in his rebuttal report:

> If a cartel attempted to set high prices for product in one region of the world, and in response, customers were able to increase purchases of the same product from other regions, or suppliers were able to divert volume to other regions of the world, the profitability of the region-specific cartel price would be undermined. Such a cartel would function more effectively if it could operate on a global basis because supply or demand are not necessarily identical worldwide, but are related to worldwide prices.
>
> The record in this case shows that the participants in the alleged CRT Cartel recognized the interconnections between the various regions of the world in which CRTs were sold.

Dr. Elzinga goes on cite evidence that the cartel members were aware that their anticompetitive agreements directly affected CRT pricing in the United States and elsewhere. *See* Rebuttal Expert Report of Dr. Kenneth G. Elzinga, September 26, 2014, at 77–83.

Similarly, Dr. McClave estimates the global overcharge achieved by the cartel for CPTs and CDTs sold during the cartel during each quarter of the damages period. He also calculated overcharge estimates using only CRTs sold in the NAFTA region and determined that if he were to rely solely on the NAFTA tubes, "the overcharges are virtually unchanged" from his global overcharge estimates. *See* Rebuttal Expert Report of Dr. James T. McClave, September 26, 2014, at 20 & n.62. Accordingly, Plaintiffs' experts provide both qualitative and quantitative support for the documentary and testimonial evidence of Defendants' employees indicating that the CRT market was global and that anticompetitive conduct in Asia had a direct and substantial effect on the United States.

**C. Conclusion**

Direct Action Plaintiffs are U.S. retailers and CRT Product manufacturers whose Sherman Act claims are premised solely on the purchase of CRTs and CRT Products from Defendants and from downstream entities that Defendants owned or controlled. Under these circumstances, based on the factual record and applicable law discussed above, Plaintiffs can easily satisfy the FTAIA's jurisdictional bar. Any attempt by the Defendants to place arbitrary restrictions on Plaintiffs' presentation of this evidence to the jury would obfuscate the CRT cartel's substantial

effect on CRT Products sold in the United States. Accordingly, Defendants' motion *in limine* should be denied.

Dated: February 27, 2015

Respectfully submitted,

/s/ *Samuel J. Randall*
Richard Alan Arnold (*pro hac vice*)
William J. Blechman (*pro hac vice*)
Kevin J. Murray (*pro hac vice*)
Samuel J. Randall (*pro hac vice*)
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL  33131
Telephone:    (305) 373-1000
Facsimile:    (305) 372-1861
Email: rarnold@knpa.com
           wblechman@knpa.com
           kmurray@knpa.com

**Counsel for Plaintiff Sears, Roebuck and Co. and Kmart Corp.**

/s/  *David Martinez*
Roman M. Silberfeld
Bernice Conn
David Martinez
Jill S. Casselman
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:  (310) 552-0130
Facsimile:  (310) 229-5800

Email:  rmsilberfeld@rkmc.com
           dmartinez@rkmc.com
           jscasselman@rkmc.com

Elliot S. Kaplan
K. Craig Wildfang
Laura E. Nelson
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN  55402
Telephone:  (612) 349-8500
Facsimile:  (612) 339-4181
Email: eskaplan@rkmc.com
           kcwildfang@rkmc.com
           lenelson@rkmc.com

**Counsel For Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, Inc.**

/s/ *Kenneth S. Marks*
H. Lee Godfrey
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: lgodfrey@sumangodfrey.com
kmarks@susmangodfrey.com
jross@susmangodfrey.com
jcarter@susmangodfrey.com
dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: pfolse@susmangodfrey.com
rblack@susmangodfrey.com
jconnors@susmangodfrey.com

***Counsel for Plaintiff Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust***

/s/ *Jason C. Murray*

Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213-443-5582
Facsimile: 213-622-2690
Email: jmurray@crowell.com

Jerome A. Murphy (*pro hac vice*)
Astor H.L. Heaven (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-624-2500
Facsimile: 202-628-5116
E-mail: jmurphy@crowell.com
aheaven@crowell.com

*Counsel for Target Corp. and ViewSonic Corp.*

### CERTIFICATE OF SERVICE

I, Samuel J. Randall, declare that on February 27, 2015, I caused a true and correct copy of the above-styled document to be filed on CM/ECF, effecting service on all counsel of record in the above-captioned matter.

*s/Samuel J. Randall*