ROBINS KAPLAN LLP
Roman M. Silberfeld, Bar No. 62783
RMSilberfeld@rkmc.com
David Martinez, Bar No. 193183
DMartinez@rkmc.com
Laura E. Nelson, Bar No. 231856
LENelson@rkmc.com
Jill S. Casselman, Bar No. 266085
JSCasselman@rkmc.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone:    310-552-0130
Facsimile:    310-229-5800

Attorneys for Plaintiffs
BEST BUY CO., INC.; BEST BUY
PURCHASING LLC; BEST BUY
ENTERPRISE SERVICES, INC.; BEST BUY
STORES, L.P.; and BESTBUY.COM, L.L.C.

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master Case No.: 3:07-cv-05944-SC<br>MDL No. 1917<br><br>[Honorable Samuel Conti] |
| This document relates to:<br><br>*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.,* No. 11-cv-05513-SC<br><br>*Best Buy Co., Inc., et al. v. Technicolor SA, et al.,* No. 13-cv-05264-SC<br><br>*Target Corp. v. Chunghwa Pictures Tubes, Ltd., et al.,* No. 3:07-cv-05514-SC<br><br>*Target Corp. v. Technicolor SA, et al.,* Case No. 3:11-cv-05514-SC<br><br>*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al., No. 11-cv-05502-SC* | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 11 TO EXCLUDE REFERENCES TO DOCUMENTS OR BEHAVIOR NOT IN EVIDENCE**<br><br>Date:    TBD<br>Time:    TBD<br>Ctrm:    Courtroom 1, 17th Floor |

60954411.1

*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Technicolor SA,et al., No. 13-cv-05261-SC*

*Sears, Roebuck and Co., et. al. v. Chunghwa Picture Tubes, Ltd., et al., No. 11-cv-5514-SC*

*Sears, Roebuck and Co., et al.. v. Technicolor SA, et al, No. 13-cv-05262-SC*

*Sharp Electronics Corporation, et al. v. Hitachi, Ltd., et al., No. 13-cv-01173-SC*

*Sharp Electronics Corp., et al. v. Koninklijke Philips Elecs N.V., et al. No. 13-cv-02776*

*ViewSonic Corporation v. Chunghwa Picture Tubes, Ltd., et al., No. 14-cv-02510*

Plaintiffs Best Buy Co., Inc.; Best Buy Purchasing LLC; Best Buy Enterprise Services, Inc.; Best Buy Stores, L.P.; BestBuy.com, L.L.C.; Target Corporation; Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust; Sears, Roebuck & Co.; Kmart Corp; Sharp Electronics Corporation; Sharp Electronics Manufacturing Company of America, Inc.; and ViewSonic Corporation (collectively, "Plaintiffs") hereby submit their Opposition to Defendants' Motion In Limine No. 11 To Exclude References To Documents Or Behavior Not In Evidence ("Motion") as follows:

60954411.1

MASTER NO.: 3:07-CV-05944-SC    PLAINTIFFS' OPP. TO DEFENDANTS' MIL NO. 11 TO EXCLUDE REFERENCES TO DOCUMENTS AND BEHAVIOR NOT IN THE RECORD

**Table of Contents**

Page

**Table of Contents**

Page

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 2

III. LEGAL STANDARD ............................................................................................................ 3

IV. ARGUMENT ......................................................................................................................... 4

V. CONCLUSION .................................................................................................................... 10

60954411.1

i

MASTER NO.: 3:07-CV-05944-SC     PLAINTIFFS' OPP. TO DEFENDANTS' MIL NO. 11 TO EXCLUDE
                                  REFERENCES TO DOCUMENTS AND BEHAVIOR NOT IN THE RECORD

# Table of Authorities

Page

## Cases

*7-Up Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*,
   191 F.3d 1090 (9th Cir. 1999) ............................................................................................ 8, 9

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*,
   620 F.2d 1360 (9th Cir. 1980) .................................................................................................. 5

*Brooke Group v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) ..................................................................................................... 3, 4, 8, 10

*Claar v. Burlington N. R.R. Co.*,
   29 F.3d 499 (9th Cir. 1994) .................................................................................................... 7, 8

*Continental Orthopedic Appliances, Inc. v. Health Ins. Plan*,
   40 F. Supp.2d 109 (E.D.N.Y. 1999) .......................................................................................... 5

*Daubert v. Merrell Dow Pharm., Inc.*
   *Daubert II*), 43 F.3d 1311 (9th Cir. 1995) ................................................................................. 1

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ................................................................................................................... 3

*DSU Med. Corp. v. JMS Co.*,
   296 F. Supp. 2d 1140 (N.D. Cal. 2003) ..................................................................................... 3

*Harris v. Angelina Cnty*,
   31 F.3d 331 (5th Cir. 1994) ....................................................................................................... 7

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   [Case No.  ], 2010 WL 5071694 (N.D. Cal. Dec. 7, 2010) ........................................................ 4

*In re: Auction Houses Antitrust Litigation (Sotheby's and Christie's)*,
   2001 U.S. Dist. LEXIS 1713 (S.D.N.Y. 2001) .......................................................................... 2

*In Re: Cathode Ray Tube (CRT) Antitrust Litigation*,
   07-cv-05944-SC, MDL Dkt. No. 3174 (December 5, 2014) ..................................................... 1

*In Re: Cathode Ray Tube (CRT) Antitrust Litigation*,
   07-cv-05944-SC, MDL Dkt. No. 3395 (January 15, 2015) ....................................................... 6

*In re: TFT-LCD (Flat Panel) Antitrust Litigation*,
   2013 U.S. Dist. LEXIS 85591 (N.D. Cal. June 14, 2013) ......................................................... 7

*In re: Urethane Antitrust Litig.*,
   No. 04-d-1616 (D. Kan. 2014) .................................................................................................. 2

*In United States v. Santini*,
    656 F.3d 1075 (9th Cir. 2011) .......................................................................................... 7

*Poller v. Columbia Broad. Sys, Inc.*,
    368 U.S. 464 (1962) ......................................................................................................... 5

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) ........................................................................................ 10

*R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.,* 2004
    U.S. Dist. LEXIS 13443 (N.D. Ill. 2004) ........................................................................ 7

*United States v. AU Optronics Corp.*,
    No. CR 09-110-SI, 2011 U.S. Dist. LEXIS 148035 (N.D. Cal. Dec. 22, 2011) ...................... 4, 7

*United States v. Samsung SDI Co., Ltd.*,
    No. 3:11-CR-00162-WHA, Dkt. No. 35 (N.D. Cal. May 24, 2011) ......................................... 6

*United States v. Samsung SDI Co., Ltd.*,
    No. 3:11-CR-00162-WHA, Dkt. No. 40-1 (N.D. Cal. Aug. 8, 2011) ....................................... 6

*United States v. Sandoval-Mendoza*,
    472 F.3d 645 (9th Cir. 2006) .......................................................................................... 4

**Statutes**

15 U.S.C. § 13 (Robinson-Patman Act) ................................................................................ 8

**Rules**

Fed. R. Evid. 401 ............................................................................................................... 10

Fed. R. Evid. 403 ............................................................................................................... 10

Fed. R. Evid. 702 ................................................................................................................. 3

# I.
# INTRODUCTION

Defendants' Motion seeks "to exclude all references by plaintiffs and their experts regarding supposed conspiratorial conduct not otherwise in evidence, including any theory that the documents produced in discovery reflect only a portion of the alleged conspiratorial conduct." Defendants thus seek to prevent Plaintiffs and their experts from telling the jury about Defendants' cartel conduct and arguing that the jury should infer from a mountain of "destroy after reading" evidence that, in fact, Defendants destroyed evidence. Plaintiffs should be allowed to offer testimony concerning Defendants' behavior and records that have never seen the light of day due to Defendants' evidence destruction directive that was a part of, and in furtherance of, their conspiracy.

The Motion focuses on, but is not limited to, Plaintiffs' economic expert Professor Kenneth Elzinga.[1] As an initial matter, the Motion should be denied as a disguised *Daubert* motion that is both untimely and improper.[2] Alternatively, the Motion should be denied on the merits. Professor Elzinga is a renowned economist in the field of antitrust economics. ███████████████████████████████████████████████████████████████████████████████ It is clearly

---

[1] ███████████████████████████████████████████████████████████████

[2] On December 5, 2014, Defendants filed a *Daubert* motion seeking to exclude certain testimony of Professor Elzinga. Defendants could have sought but did not seek to exclude in that motion the testimony of Professor Elzinga sought to be excluded by this Motion. *See* Defendants' Joint Notice Of Motion And Motion To Exclude Certain Expert Testimony Of Professor Kenneth Elzinga, *In Re: Cathode Ray Tube (CRT) Antitrust Litigation*, 07-cv-05944-SC, MDL Dkt. No. 3174 (December 5, 2014), MDL Dkt. No. 3171. This Motion is a belated *Daubert* motion that is improper and untimely and therefore should be denied, and Plaintiffs request that the Court so rule.

60954411.1                                     1

MASTER NO.: 3:07-CV-05944-SC    PLAINTIFFS' OPP. TO DEFENDANTS' MIL NO. 11 TO EXCLUDE REFERENCES TO DOCUMENTS AND BEHAVIOR NOT IN THE RECORD

relevant and within the domain of an economist to discuss the completeness of the record as part of a broader discussion about whether the evidence is consistent with an effective conspiracy. Further, Professor Elzinga's opinion is not unfounded or speculative, where, as here, Defendants have already admitted to participating in a conspiracy and to their extensive efforts to cover up that conspiracy, whether through guilty pleas, amnesty applications and/or contemporaneous business records. If Defendants take issue with the foundation upon which this opinion rests, or with the opinions or testimony of others in the case on the subject of the Motion, their concerns go to weight, rather than admissibility.

For these and the reasons set forth below, Defendants' Motion should be denied.

## II.
## BACKGROUND

Professor Elzinga is the Robert C. Taylor Professor of Economics at the University of Virginia. He has devoted his nearly 50-year career to teaching and research in the field of antitrust economics and has been qualified as an economic expert in numerous antitrust cases, including on behalf of the Antitrust Division of the Department of Justice, Federal Trade Commission, and even as a special consultant to Judge Lewis A. Kaplan in the United States District Court for the Southern District of New York. *See, e.g.*, *In re: Auction Houses Antitrust Litigation (Sotheby's and Christie's)*, 2001 U.S. Dist. LEXIS 1713, 19 (S.D.N.Y. 2001); *In re: Urethane Antitrust Litig.*, No. 04-d-1616 (D. Kan. 2014).[3]



---

[3] *See* Ex. 1 to the concurrently filed Declaration of Jill S. Casselman ("Casselman Decl."), Portions of the Expert Report of Dr. Kenneth G. Elzinga, dated April 15, 2014 ("Elzinga Report") at 2-3, C.V. at A1-A10.

60954411.1                                     2

MASTER NO.: 3:07-CV-05944-SC    PLAINTIFFS' OPP. TO DEFENDANTS' MIL NO. 11 TO EXCLUDE REFERENCES TO DOCUMENTS AND BEHAVIOR NOT IN THE RECORD

[REDACTED][4]

### III.
### LEGAL STANDARD

A witness qualified as an expert is permitted to testify if his or her testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. To be admissible, expert testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). In *Daubert*, the Supreme Court specifically cautioned against the "wholesale exclusion" of expert testimony, and reiterated that the ultimate assessment of the weight to be accorded to an expert's opinion should be made by the jury at trial after "[the] presentation of contrary evidence, . . . [v]igorous cross-examination, . . . and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. The rejection of expert testimony under Rule 702 is "the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendments.

Reliability is assessed by looking at whether "the reasoning or methodology underlying the testimony is scientifically valid" and whether it "can properly be applied to the facts at issue." *DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1146 (N.D. Cal. 2003) (quoting *Daubert*, 509 U.S. at 592-93). The Court need not be convinced that Professor Elzinga's opinions are correct or

---

[4] Defendants contend that Professor Elzinga lacks the expertise to opine on conspiratorial behavior and therefore evidence destruction. Motion at 2. Professor Elzinga's distinguished 50-year career and experience in the field of antitrust economics, which includes serving in the Antitrust Division of the Department of Justice as economic advisor to the Assistant Attorney General, having been an economic consultant and testifying expert for both the Federal Trade Commission and the Antitrust Division, and having written dozens of scholarly publications, including peer-reviewed articles on market definition, market power, and the behavior of cartels, make clear that he is well-qualified to opine on the matters at issue in the Motion. *See* Ex. 1, Elzinga Report at 2-3, C.V. (A1-A10).

60954411.1                                3

MASTER NO.: 3:07-CV-05944-SC        PLAINTIFFS' OPP. TO DEFENDANTS' MIL NO. 11 TO EXCLUDE
                                    REFERENCES TO DOCUMENTS AND BEHAVIOR NOT IN THE RECORD

1   even persuasive, only that they are sufficiently reliable to assist the jury. *In re Static Random*

2   *Access Memory (SRAM) Antitrust Litig.*, [Case No.  ], 2010 WL 5071694, at *4 (N.D. Cal. Dec. 7,

3   2010) (citation omitted) ("The task for the district court in deciding whether an expert's opinion is

4   reliable [under *Daubert*] is not to determine whether it is correct, but rather to determine whether

5   it rests upon a reliable foundation, as opposed to, say, unsupported speculation.").

6         As the Supreme Court explained in *Daubert*, the district court must focus on the principles

7   and methodology employed by the expert, without regard to the conclusions the expert has

8   reached. 509 U.S. at 595; *see also Daubert v. Merrell Down Pharm., Inc.* (*Daubert II*), 43 F.3d

9   1311, 1318 (9th Cir. 1995) ("[T]he test under *Daubert* is not the correctness of the expert's

10  conclusions but the soundness of his methodology."); *United States v. Sandoval-Mendoza*, 472

11  F.3d 645, 654 (9th Cir. 2006) (holding that expert opinion "is reliable if the knowledge

12  underlying it 'has a reliable basis in the knowledge and experience of [the relevant] discipline'").[5]

### IV.
### ARGUMENT

      Defendants contend that Professor Elzinga's opinion that a significant amount of conspiratorial may not be documented by any records that remain today on account of Defendants' "destroy after reading" or similar directives is inadmissible and foundationless speculation. Motion at 1. To the contrary, this testimony is neither speculative nor unreliable.[6] Professor Elzinga states:

> If we take defendants at their word, we know that they were, in general, instructed not to make notes of their concerted conduct and they were not to keep records of their collusive endeavors. To the extent these instructions were followed, then to the extent the evidence of cartel activity is reduced. Because I cannot tell how many documents, spread sheets, notes, memoranda, correspondence, telephonic records, and e-mails were destroyed or

---

[5] Only with the full context of trial should the court reach decisions with respect to specific objections to expert testimony. *See United States v. AU Optronics Corp.*, No. CR 09-110-SI, 2011 U.S. Dist. LEXIS 148035, at *3-4 (N.D. Cal. Dec. 22, 2011) ("The general Daubert/FRE 702 motions to exclude are denied, without prejudice to specific objections at the time of trial.").

[6] This same or similar testimony by Plaintiffs or others in this case is likewise neither speculative nor unreliable for reasons discussed below, including that Defendants have already pled guilty to participating in a conspiracy, and admitted their extensive efforts to cover up that conspiracy by, among other things, contemporaneous business records.

60954411.1                                4

MASTER NO.: 3:07-CV-05944-SC          PLAINTIFFS' OPP. TO DEFENDANTS' MIL NO. 11 TO EXCLUDE
                                       REFERENCES TO DOCUMENTS AND BEHAVIOR NOT IN THE RECORD

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  |  not created in the first place, I cannot make a statistical inference as to how much greater would be the evidence of the cartel's robustness. But one can conclude: *it would be greater.*

Assume that only 50% of these records never saw the light of day by appearing in the record of this case. That would mean the record in this case could be twice as long as it is, and it's very long already.

*See* Ex. 2, Elzinga Rebuttal Report, at 145 (emphasis in original).[7]



[8] Courts have recognized that evidence of cartel behavior is often outside of the record, as cartels operate in secrecy and go to great lengths to conceal their wrongdoing. *See, e.g.*, *Poller v. Columbia Broad. Sys, Inc.*, 368 U.S. 464, 491 (1962) (in antitrust case "the proof is largely in the hands of the alleged conspirators"); *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1364 (9th Cir. 1980) ("[I]n complex antitrust litigation where motive and intent play leading roles, the proof if largely in the hands of the alleged conspirators"); *Continental Orthopedic Appliances, Inc. v. Health Ins. Plan*, 40 F. Supp.2d 109, 120 (E.D.N.Y. 1999) ("[I]n an antitrust claim, the basis for dismissal must meet a more stringent standard because the proof of an antitrust violation

---

[7] This testimony is contained on the single page of the Elzinga Rebuttal Report submitted by Defendants in support of the Motion. *See* Ex. A to Declaration of Austin Schwinn.

[8] Defendants do not specifically cite to this testimony in the Motion, nor do Defendants include this testimony as an attachment to their declaration in support of the Motion. Nevertheless, it is readily apparent that Defendants also seek to exclude this testimony by the Motion. The exhibits referenced in this testimony are collectively attached as Exhibit 3 to the Casselman Decl.

1  is often in the hands of the alleged conspirators").

2        This is precisely the evidence in this case as well.  Defendants' claim that Professor

3  Elzinga's opinion as to conspiratorial activity not documented by any records that remain today is

4  based on improper speculation ignores the sheer volume of evidence of Defendants' conspiracy

5  and their efforts to conceal it.  No speculation is needed, where, as here, Defendants have already

6  pled guilty to participating in a conspiracy, *and admitted their extensive efforts to cover up that*

7  *conspiracy*:

- **Guilty Plea**.  Samsung SDI Co., Ltd. ("SDI") entered a guilty plea in which it admitted that for nearly 10 years it "participated in a conspiracy among major CDT producers, the primary purpose of which was to fix prices, reduce output, and allocate market shares of CDTs sold in the United States and elsewhere."  SDI confessed in its Plea Agreement that in furtherance of the conspiracy, its employees had "discussions and attended meetings with representatives of other major CDT producers" where "agreements were reached to fix prices, reduce output, and allocate market shares of CDTs."  *See* Ex. 5, Transcript of the Change of Plea Hearing, *United States v. Samsung SDI Co., Ltd.*, No. 3:11-CR-00162-WHA, Dkt. No. 35 (N.D. Cal. May 24, 2011); Ex. 6, Amended Plea Agreement, *United States v. Samsung SDI Co., Ltd.*, No. 3:11-CR-00162-WHA, Dkt. No. 40-1 (N.D. Cal. Aug. 8, 2011).

- **Amnesty Applicant**.  Chunghwa (another co-conspirator) has admitted its role in the CRT price-fixing conspiracy by virtue of its status as the amnesty applicant in the DOJ's leniency program.  *See* Ex. 7, *In Re: Cathode Ray Tube (CRT) Antitrust Litigation*, 07-cv-05944-SC, MDL Dkt. No. 3395 (January 15, 2015), Notice of Limitation of Damages Pursuant to ACPERA.



1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2        Notably, certain Defendants (including Chunghwa, the author of the Motion) made a similar motion to exclude evidence outside the record of the case in the TFT-LCD litigation. Judge Illston denied the motion "without prejudice to raising specific objections to specific questions at trial." *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, 2013 U.S. Dist. LEXIS 85591, at *64 (N.D. Cal. June 14, 2013). Other decisions support this result. *See, e.g.*, *United States v. AU Optronics Corp.*, 2011 U.S. Dist. LEXIS 148035, at *3-4 ("The general *Daubert*/FRE 702 motions to exclude are denied, without prejudice to specific objections at the time of trial"); *see also R.J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.,* 2004 U.S. Dist. LEXIS 13443, at *8-9 (N.D. Ill. 2004)("RJR presented a significant amount of evidence that the difference between domestic and parallel product were significant to U.S. consumers. Examples include consumer complaints in phone calls or letters to RJR and the testimony of Nancy Montgomery that these represented the proverbial tip of the iceberg, in that in her experience only a percentage of unhappy customers will take the time to call or write the company."); *Harris v. Angelina Cnty*, 31 F.3d 331, 334 (5th Cir. 1994)("Evidence indicated that reported incidents represented only the 'tip of the iceberg' of the total incidents.").

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The same holds true for Plaintiffs or others providing similar opinion, testimony or statements at trial. As demonstrated below, cases cited by Defendants in the Motion are inapposite.

      *In United States v. Santini*, 656 F.3d 1075, 1078-1079 (9th Cir. 2011), a psychiatrist's testimony interpreting a rap sheet was excluded at trial because the psychiatrist was not an "expert in law enforcement record keeping." Thus, the psychiatrist lacked the requisite experience and expertise for her testimony. Here, by contrast, Defendants seek to exclude testimony in advance of, rather than at, trial. Further, Professor Elzinga has special expertise in the field of antitrust economics and cartel behavior, and his testimony is consistent with, and not far removed from such expertise, as was the case in *Santini*. *Santini* is thus irrelevant here.

      In *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994), the court affirmed

60954411.1       7

MASTER NO.: 3:07-CV-05944-SC      PLAINTIFFS' OPP. TO DEFENDANTS' MIL NO-11 TO EXCLUDE
REFERENCES TO DOCUMENTS AND BEHAVIOR NOT IN THE RECORD

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  summary judgment for the defendant where the expert affidavits contained "no evidence that the
2  experts' conclusions about the cause of [the medical conditions alleged by plaintiffs] are based on
3  anything more than subjective belief and unsupported speculation," despite repeated court orders
4  that experts explain their reasoning and methods.  In this case, by contrast, as demonstrated
5  above, [REDACTED]
6  [REDACTED]
7  [REDACTED]
8  [REDACTED]
9  [REDACTED]
10 [REDACTED] Professor Elzinga's informed and well-supported opinion is a far cry from the
11 conclusory and defective opinions in *Claar*.  Thus, *Claar* is inapposite.
12      *Brooke Group v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 242 (1993),
13 involved an expert opinion based on evidence insufficient as matter of law "to support a finding
14 of primary-line injury under the Robinson-Patman Act." *Id.* at 242.  The lower court's judgment
15 was affirmed given the lack of evidence of injury.  Thus, that case involved a trial and subsequent
16 appeal and determination that plaintiff lacked evidence to make out a claim as a matter of law.
17 This case is completely different.  No trial has occurred here, the Motion was brought in advance
18 of trial, and the issues raised in the Motion do not concern the underlying core claims in the
19 action, but rather the extent of opinions and/or statements to be made at trial regarding behavior
20 and documents not in the case record.  As such, *Brooke* is not applicable.
21      In *7-Up Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*, 191 F.3d
22 1090, 1102, 1105 n. 9 (9th Cir. 1999), the court rejected plaintiffs' argument that expert reports
23 mandated denial of defendant Cargill's summary judgment motion in conspiracy case and stated
24 that "our conclusion that no piece of evidence tends to exclude the possibility that Cargill acted
25 independently is not affected by the conclusory statements in the expert report to the contrary." In
26 making its decision, the court rejected plaintiffs' attempt to get an internal Cargill document that
27 had not been submitted as part of the summary judgment proceeding into evidence "through the
28 back door" through its discussion in an export report that was part of the record, reasoning that

60954411.1                                        8

"an expert report cannot be used to prove the existence of facts set forth therein." This case is different. Defendants have admitted to participating in a conspiracy and to their extensive efforts to cover up that conspiracy, and Plaintiffs are not seeking to prove the existence of facts through the "back door" as in *7-Up Bottling* in the context of the Motion. ▪▪▪

In sum, Defendants' cases provide no basis for granting the Motion and should be disregarded.

Defendants contend that "expert testimony suggesting the alleged conspiracy was greater than that which appears in the documents cannot be reconciled with the documents in the record." Motion at 2. This contention is without merit. ▪▪▪ The fact that "documents with notations to be destroyed" are in the record does not prove that no documents were destroyed, but rather simply that those documents in the record somehow escaped destruction. *See* Motion at 2. Defendants' argue that "[m]ultiple attendees at meetings testified that it was their practice and custom to take detailed meeting notes in all alleged meetings." *Id*. But if those purported unnamed attendees kept records, where are those records now? Since most Defendants have not produced such records in discovery. ▪▪▪ Further, the purported attendees certainly did not attend all meetings involving ▪▪▪, Defendants submit no evidence regarding the purported custom and practice or purported adherence thereto, or that purported notes taken were preserved and not destroyed. In addition, ▪▪▪ Contrary to what Defendants would have this Court believe, the record in this case is just a small fraction of the cartel activity that took place.

Defendants contend that "the volume of existing evidence" in the record warrants exclusion of behavior and documents not otherwise in evidence. Motion at 3. ▪▪▪

60954411.1

9

1 ██████████████████████████████████████

2 ██████████████████████████████████████

3 ██████████████████████████ and letting the jury hear related testimony

4 would not mislead the jury or unduly prejudice Defendants. *See* Fed. R. Evid. 401-403.

5 ██████████████████████████████████████

6 ██████████████████████████████████████

7 ██████████████████████████████████████

8 ██████████████████████████████████████

9      In any event, to the extent Defendants take issue with Dr. Elzinga's reliance upon relevant

10 literature, case law, and his own experience, "[v]igorous cross-examination and careful

11 instruction on the burden of proof" are sufficient to preserve their rights. *Daubert*, 509 U.S. at

12 596; *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)(concluding that admissible

13 expert testimony would be attacked by "cross examination, contrary evidence, and attention to

14 burden of proof"). Such cross-examination and careful burden of proof instruction applies

15 equally as well in the context of ████████████████████████████████

16 ██████████████████████████████████████

17 ████████

18 
## V.
## CONCLUSION

19 

20      For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny

Defendants' Motion in its entirety.

21 

22                               Respectfully submitted,

23 Dated: February 27, 2015

24                               /s/ *Roman M. Silberfeld*

25                               Roman M. Silberfeld
                              Bernice Conn

26                               David Martinez
                              Laura Nelson

27                               Jill Casselman

28                               ROBINS KAPLAN LLP

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone: (310) 552-0130
Facsimile: (310) 229-5800

Email: rsilberfeld@robinskaplan.com
       dmartinez@ robinskaplan.com
       bconn@robinskaplan.com
       lnelson@robinskaplan.com
       jcasselman@robinskaplan.com

*Counsel For Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., and Bestbuy.com, L.L.C.*


/s/  *William J. Blechman*

Richard Alan Arnold
William J. Blechman
Kevin J. Murray
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel:     305-373-1000
Fax:     305-372-1861
Email: rarnold@knpa.com
       wblechman@knpa.com
       kmurray@knpa.com

*Counsel for Plaintiff Sears, Roebuck and Co. and Kmart Corp.*

/s/  *Kenneth S. Marks*

H. Lee Godfrey
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: lgodfrey@sumangodfrey.com
       kmarks@susmangodfrey.com
       jross@susmangodfrey.com
       jcarter@susmangodfrey.com
       dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

|   |   |
|---|---|
| 1 | SUSMAN GODFREY L.L.P. |
| 2 | 1201 Third Avenue, Suite 3800<br>Seattle, Washington 98101-3000 |
| 3 | Telephone:  (206) 516-3880<br>Facsimile:  (206) 516-3883 |

Email:  pfolse@susmangodfrey.com
         rblack@susmangodfrey.com
         jconnors@susmangodfrey.com

*Counsel for Plaintiff Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

/s/  Jason C. Murray

Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA  90071
Telephone: 213-443-5582
Facsimile:  213-622-2690
Email:  jmurray@crowell.com

Jerome A. Murphy (pro hac vice)
Astor H.L. Heaven (pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-624-2500
Facsimile:  202-628-5116
E-mail:  jmurphy@crowell.com
         aheaven@crowell.com

*Counsel for Target Corp. and ViewSonic Corp.*

/s/  Craig A. Benson

Kenneth A. Gallo (pro hac vice)
Joseph J. Simons (pro hac vice)
Craig A. Benson (pro hac vice)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com
Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
TAYLOR & COMPANY LAW OFFICES,

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

60954411.1                                  12

LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc.*

60954411.1

13

MASTER NO.: 3:07-CV-05944-SC       PLAINTIFFS' OPP. TO DEFENDANTS' MIL NO. 11 TO EXCLUDE REFERENCES TO DOCUMENTS AND BEHAVIOR NOT IN THE RECORD