1   Kenneth A. Gallo (*pro hac vice*)
    Joseph J. Simons (*pro hac vice*)
2   Craig A. Benson (*pro hac vice*)
    **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
3   2001 K Street, NW
    Washington, DC  20006-1047
4   Telephone: (202) 223-7300
    Facsimile: (202) 223-7420
5   Email: kgallo@paulweiss.com
    Email: jsimons@paulweiss.com
6   Email: cbenson@paulweiss.com

7   Stephen E. Taylor (SBN 058452)
    Jonathan A. Patchen (SBN 237346)
8   **TAYLOR & COMPANY LAW OFFICES, LLP**
    One Ferry Building, Suite 355
9   San Francisco, California  94111
    Telephone: (415) 788-8200
10  Facsimile: (415) 788-8208
    Email: staylor@tcolaw.com
11  Email: jpatchen@tcolaw.com

12  *Attorneys for Plaintiffs Sharp Electronics Corporation and*
    *Sharp Electronics Manufacturing Company of America, Inc.*
13

14              **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16              **SAN FRANCISCO DIVISION**

17  | **IN RE CATHODE RAY TUBE (CRT)** | Case No. 07-cv-5944 SC |
    | **ANTITRUST LITIGATION** | MDL No. 1917 |

18

19  This Document Relates to:                    **PLAINTIFFS SHARP**
                                                 **ELECTRONICS CORPORATION &**
    *Sharp Electronics Corp.*, et al. *v. Hitachi, Ltd.*, et al.,   **SHARP ELECTRONICS**
20  No. 13-cv-1173 SC;                           **MANUFACTURING COMPANY OF**
                                                 **AMERICA, INC.'S OPPOSITION**
21  *Sharp Electronics Corp., et al. v. Koninklijke Philips*   **TO JOINT DEFENSE MOTION IN**
    *Electronics N.V.*, et al., No. 13-cv-2776 SC;   **LIMINE NO. 10 – MOTION TO**
22                                               **EXCLUDE EVIDENCE OF ANY**
    *Sears, Roebuck and Co. and Kmart Corp. v.*   **ALLEGED CDT PRICE-FIXING**
23  *Technicolor SA*, No. 13-cv-05262;           **CONSPIRACY**

24  *Sears, Roebuck and Co. and Kmart Corp. v.*   Date:    None set
    *Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514;   Place:   Courtroom 1
25                                               Judge:   Hon. Samuel Conti
    *Target Corp. v. Chunghwa Picture Tubes, Ltd.*, No.
26  11-cv-05514; and

27  *Target Corp. v. Technicolor SA*, No. 13-cv-05696
                                                 **[REDACTED VERSION]**
28

1    Plaintiffs Sharp Electronics Corporation and Sharp Electronics Manufacturing Company

2    of America, Inc. (collectively, "Sharp")[1] respectfully submit this opposition to Joint Defense

3    Motion *in Limine* No. 10 to exclude evidence of any alleged CDT price-fixing conspiracy.

4                                    **<u>INTRODUCTION</u>**

5        In this case, Sharp alleges that the defendants and their co-conspirators engaged in a

6    long-running conspiracy to reduce competition by fixing, raising, maintaining, or stabilizing the

7    price of CRTs; limiting the production of CRTs; allocating customers or market shares; and/or

8    exchanging information which had the purpose of and resulted in CRTs being priced higher than

9    they otherwise would have been.  Because of defendants' illegal conduct, Sharp paid higher

10   prices for CRTs than it otherwise would have.  Specifically, Sharp spent over $1.3 billion

11   purchasing "CPTs" (a type of CRT used in televisions) during the relevant time period, and

12   according to Sharp's damages expert, paid over $146 million in overcharges on those purchases.

13       Defendants, in their motion, seek to draw a line between, on the one hand, "alleged

14   misconduct regarding CDTs" (CRTs used in monitors), and, on the other hand, "an alleged CPT

15   conspiracy" (Mot. at 2), arguing that Sharp should be precluded from using "evidence regarding

16   CDTs" on grounds of relevance and undue prejudice.  Defendants' motion thus is based on the

17   premise that Sharp has pled only a CPT conspiracy, or that there is no evidence regarding the

18   alleged CRT conspiracy that involves both CPTs and CDTs.  Neither is true.

19       <u>First</u>, Sharp has alleged a single <u>CRT</u> conspiracy (*see generally* Sharp Second Amended

20   Compl. ("SAC") MDL Dkt. No. 2621), and defendants may not "improperly re-characterize the

21   plaintiffs' allegations" to describe multiple conspiracies.  *In re Vitamins Antitrust Litig.*, 209

22   F.R.D. 251, 265 (D.D.C. 2002).  In this regard, it is of no consequence that Sharp's purchases

23

24   [1]   Though defendants' motion refers almost exclusively to Sharp, defendants also argue, in a
     footnote, that both Target and Kmart should similarly be precluded from offering CDT evidence.
25   (Mot. at 2 n.1.)  Plaintiffs Target and Kmart respectfully submit defendants' failure even to
     attempt to link up their motion *in limine* to the unique claims of Target and Kmart provides a
26   sufficient basis to deny the motion with respect to Target and Kmart.  Otherwise, plaintiffs
     Target and Kmart join in the arguments set forth herein by Sharp.
27       Further, Kmart points out that its affiliate company, Sears (Kmart and Sears are jointly
     owned), did purchase CDT Products.  Given that Kmart and Sears filed their complaint together
28   and are represented by the same attorneys, defendants' suggested relief would be impossible to
     implement at trial as to Kmart.

were limited to CPTs, as Sharp has not "alleged multiple conspiracies," but instead "alleged a single price fixing conspiracy." *In re Vitamins Antitrust Litig.*, 209 F.R.D. at 265.  As plaintiff, Sharp has the right to frame the allegations in its complaint as it did, and defendants may not seek to exclude evidence on the basis that they do not agree with those allegations.

Second, defendants' unsupported assertion that evidence of CDT misconduct is entirely separate from evidence of CPT misconduct is just wrong.  Much of the conduct is one and the same. ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████ Even after the meetings were "separated," they were often still held back-to-back and in the same location.  And irrespective of when the meetings occurred and whether they were in the same room, defendants continued to discuss both products together as a part of the written conspiratorial communications that were not destroyed or deleted.

Evidence of defendants' misconduct regarding CDTs plainly is relevant under Rule 401 to the existence of a conspiracy involving both CDTs and CPTs.  Defendants' conclusory prejudice and waste-of-time arguments are both meritless.  Evidence concerning defendants' conspiratorial activities and their efforts to avoid detection may be damaging to defendants, but that is precisely because such evidence is relevant.  Defendants have also made no showing whatsoever that including CDT evidence, much of which is intertwined with CPT evidence, would waste any time – much less the substantial amount of time needed to overcome its relevance.  Defendants' motion should thus be denied.

## ARGUMENT

### A.  Evidence Pertaining to Defendants' Misconduct Regarding CDTs Is Squarely Relevant Under Fed. R. Evid. 401

Sharp will show at trial that defendants and their co-conspirators engaged in a long-running CRT conspiracy – a conspiracy that included both CPTs and CDTs.  Evidence

1    concerning defendants' misconduct regarding CDTs is therefore directly probative of the

2    existence of the conspiracy.

3         Defendants' only argument to the contrary is that Sharp seeks damages for CPT

4    purchases, not CDT purchases, and calculated its overcharge on those CPTs.  (Mot. at 2 & n.3.)

5    No matter.  The law is clear that a conspiracy can include more than one product or product

6    market.  So, for example, in *In re Vitamins Antitrust Litigation*, the court rejected defendants'

7    efforts to divide the alleged single conspiracy into multiple separate conspiracies, even though

8    the products at issue – different vitamins – were "so diverse as to comprise many relevant

9    antitrust markets."  209 F.R.D. at 265.  Like here, it was the plaintiffs' allegations of a single

10   conspiracy that controlled, *id.*, because "[a]s the Supreme Court stated: 'the character and effect

11   of a conspiracy are not to be judged by dismembering it and viewing its separate parts but only

12   by looking at it as a whole.'"  *Id.* (quoting *Continental Ore Co. v. Union Carbide & Carbon Co.*,

13   370 U.S. 690, 699 (1962)); *see also Univac Dental Co. v. Dentsply Int'l, Inc.*, 268 F.R.D. 190,

14   200 (M.D. Pa. 2010) ("[C]ourts should refrain from looking at only isolated pieces of evidence to

15   prove an antitrust conspiracy.").  And though defendants contend that their alleged misconduct

16   relating to CDTs is separate from their alleged misconduct relating to CPTs, "this argument does

17   not provide a basis for complete exclusion of this evidence.  Rather, it defines at most a factual

18   issue which must be presented, and weighed, by a jury."  *Univac Dental Co.*, 268 F.R.D. at 200.

19   A "motion in limine should not be used to prevent a party from pursuing the theories supporting

20   its causes of action."  *Chopourian v. Catholic Healthcare West*, No. S-09-2972, 2011 WL

21   6396500, at *14 (E.D. Cal. Dec. 20, 2011).  Because Sharp has alleged a CRT conspiracy, Sharp

22   is entitled to offer evidence to prove a CRT conspiracy.

23         Moreover, defendants' contention that their CDT misconduct was entirely separate from

24   their CPT misconduct does not withstand scrutiny.  In fact, an extensive body of documentary

25   and testimonial evidence shows the overlap.  For example, the formal meetings of the co-

26   conspirators, termed "Glass Meetings" or "GSM" (*see* SAC ¶ 153), could include discussions of

27   both CPTs and CDTs.  ████████████████████████████████████████

28   ████████████████████████████████████████████████████████████



8.  ████████████████████████   And while the co-conspirators eventually did

9.  make an effort to hold CDT and CPT Glass Meetings separately, that effort only <u>confirms</u> the

10. relevance of this evidence. ████████████████████████

11. ████████████████████████

12. ████████████████████████

13. ████████████████████████

14. ████████████████████████

15. ██████   In other words, the meetings were separated to help keep the defendants' conspiracy

16. a secret – a fact that plainly is relevant both to proving Sharp's affirmative case and disproving

17. defendants' defenses.

18.     And that is only some of the evidence confirming the relevance of CDT misconduct to

19. Sharp's case.  Information exchanges among the co-conspirators frequently included information

20. on both CPTs and CDTs. ████████████████████████

21. ████████████████████████

22. ████████████████████████

23. ████████████████████████

24. ████████████████████████

25. ████████████████████████

26. ████████████████████████

27. ████████████████████████

28. ████████████████████████



And as is set forth more fully in the Direct Action Plaintiffs' opposition to Thomson Consumer's motion for summary judgment that it did not participate in a CDT conspiracy (*see* MDL Dkt. No. 3236),

On this record, defendants' assertion that "alleged misconduct regarding CDTs is not at issue" should be rejected.  The evidence pertains to a central element of Sharp's case – the existence of a CRT conspiracy.  It easily meets the threshold of having "any tendency to make a fact more or less probable than it would be without the evidence," where that fact is "of consequence in determining the action."  Fed. R. Evid. 401.  As a result, it is admissible under Rule 401.  *See id.*; *see also, e.g.*, *Kalitta Air L.L.C. v. Central Texas Airborne System Inc.*, 547 F. App'x 832, 834 (9th Cir. 2013) (unpublished); *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012); *Onyx Pharm., Inc. v. Bayer Corp.*, 863 F. Supp. 2d 894, 900 (N.D. Cal. 2011).

**B.  Neither Rule 403 Nor Rule 404 Precludes Evidence of Defendants' Misconduct Regarding CDTs**

There is also no basis to exclude evidence of defendants' misconduct regarding CDTs under Rules 403 and 404.  Defendants' conclusory argument that this evidence will "mislead[]

---

[2]   *See also* Plaintiffs' Opp. to Defendant Thomson Consumer's Mot. for Summary Judgment and Partial Summary Judgment (MDL Dkt. No. 3236); Plaintiffs' Rule 56(d) Supplement to Opp. to Defendant Thomson Consumer's Mot. for Summary Judgment and Partial Summary Judgment (MDL Dkt. No. 3506).

1  the jury by confusing the issues between the alleged CDT and alleged CPT conspiracies" (Mot.

2  at 3) is unconvincing.[3]

3      As an initial matter, defendants' reliance on Rule 404(b) is misplaced because

4  misconduct relating to CDTs is not "other bad acts" evidence that would be used to show some

5  propensity by defendants to violate antitrust laws.  (Mot. at 3.)  As noted above, Sharp did not

6  plead separate CDT and CPT conspiracies; it pled a single CRT conspiracy.  Thus, evidence

7  regarding defendants' misconduct with respect to CDTs is evidence of the very conspiracy Sharp

8  alleged.  *See United States v. Rizk*, 660 F.3d 1125, 1131-32 (9th Cir. 2011) (holding real estate

9  transactions not specifically named in the indictment "were not 'other acts' subject to Rule

10  404(b)" because they "were 'inextricably intertwined' with the conspiracy charge," and were

11  offered by the government "to show the full scope of that conspiracy"); *see also Dorsey*, 677

12  F.3d at 951-52.

13      Nor is evidence regarding defendants' misconduct with respect to CDTs <u>unfairly</u>

14  prejudicial.  "Relevant evidence is inherently prejudicial; but it is only unfair prejudice,

15  substantially outweighing probative value, which permits exclusion of relevant matter under

16  Rule 403."  *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (internal quotation

17  omitted); *see also, e.g.*, *Durham v. County of Maui*, 742 F. Supp. 2d 1121, 1131-32 (D. Haw.

18  2010).  Defendants have not begun to approach the showing that must be made under Rule 403

19  to exclude this relevant evidence.  As one of the cases on which defendants rely explains, a "bald

20  assertion" of prejudice will not suffice to establish that evidence should be excluded under Rule

21  403, particularly where, as here, the evidence is probative.  *United States v. Dhingra*, 371 F.3d

22  557, 565-66 (9th Cir. 2004).

23      Defendants also argue that the introduction of evidence concerning defendants'

24  misconduct with respect to CDTs will "waste the time of the jury and Court" because

25  _____

[3]   In a footnote, defendants assert, without argument or explanation, that "Sharp should also be

26  precluded from introducing evidence relating to SDI's plea agreement, which only concerns
   CDTs, for the same reasons."  (Mot. at 2 n.2.)  The admissibility of SDI's plea agreement is

27  separately addressed in the Direct Action Plaintiffs' Opposition to Motion *in Limine* No. 5, and
   those arguments will not be repeated here.  That the plea recites facts relating to misconduct with

28  respect to CDTs, and not CPTs, does not render it less admissible, because, as demonstrated in
   this opposition, such misconduct is relevant to Sharp's claims.

- 6 -

SHARP'S OPPOSITION TO JOINT DEFENSE MOTION IN LIMINE NO. 10 TO EXCLUDE EVIDENCE OF ANY ALLEGED CDT
PRICE-FIXING CONSPIRACY, CASE NO. 07-CV-5944, MDL NO. 1917; CASE NOS. 13-CV-1173, 13-CV-2776

1    "[d]efendants will have to spend significant time introducing further evidence and calling

2    additional fact and expert witnesses." (Mot. at 3-4.)  But as the sampling of evidence set forth

3    above demonstrates, evidence of defendants' misconduct with respect to CPTs is intertwined

4    with the evidence of defendants' misconduct with respect to CDTs.  It is thus not clear what kind

5    of "further" or "additional" evidence defendants expect would be required; they have not even

6    attempted to explain any such evidence here.  And even if more evidence were required,

7    defendants must show that the danger of undue delay or a waste of time <u>substantially</u> outweighs

8    the probative value of the evidence.  *See* Fed. R. Evid. 403 (emphasis added).  Considering the

9    relevance of evidence of defendants' misconduct with respect to CDTs to Sharp's claim of a

10   CRT conspiracy, defendants' unsupported assertions do not suffice.  *See* Fed. R. Evid. 403; *see*

11   *also, e.g., Onyx Pharm., Inc.*, 863 F. Supp. 2d at 900 ("In addition, the fact that Bayer will need

12   to put on additional witnesses to explain and defend its conduct with respect to the same

13   plaintiff, under the same contract, does not lead to the kind of prejudice or potential confusion

14   that substantially outweighs the probative value of this evidence.").

15        In sum, the evidence that defendants seek to exclude is highly relevant, and the probative

16   value of that evidence is not substantially outweighed by the risk of any unfair prejudice or

17   undue delay.  Accordingly, defendants' motion to exclude should be denied.

18                                        **CONCLUSION**

19        For these reasons, the Court should deny Joint Defense Motion *in Limine* No. 10 to

20   exclude evidence of any alleged CDT price-fixing conspiracy.

21

22   DATED:  February 27, 2015       By:  /s/ *Craig A. Benson*

23                                        Kenneth A. Gallo (*pro hac vice*)
                                          Joseph J. Simons (*pro hac vice*)
24                                        Craig A. Benson (*pro hac vice*)
                                          **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
25                                        2001 K Street, NW
                                          Washington, DC  20006
26                                        Telephone: (202) 223-7300
                                          Facsimile: (202) 223-7420
27                                        Email: kgallo@paulweiss.com
                                          Email: jsimons@paulweiss.com
28                                        Email: cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
**TAYLOR & COMPANY LAW OFFICES, LLP**
One Ferry Building, Suite 355
San Francisco, California  94111
Telephone:  (415) 788-8200
Facsimile:  (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and
Sharp Electronics Manufacturing Co. of America, Inc.*

By:  /s/ *Jason C. Murray*

Jason C. Murray (CA Bar No. 169806)
**CROWELL & MORING LLP**
515 South Flower St., 40th Floor
Los Angeles, CA  90071
Telephone:  (213) 622-4750
Facsimile:   (213) 622-2690
Email: jmurray@crowell.com

Jerome A. Murphy (*pro hac vice*)
Astor H.L. Heaven (*pro hac vice*)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone:  (202) 624-2500
Facsimile:   (202) 628-5116
Email: jmurphy@crowell.com
Email: aheaven@crowell.com

*Attorneys for Plaintiff Target Corp.*

By:  /s/ *William J. Blechman*

Richard Alan Arnold
William J. Blechman
Kevin J. Murray
**KENNY NACHWALTER, P.A.**
1100 Miami Center
201 South Biscayne Blvd.
Miami, FL  33131
Tel:     (305) 373-1000
Fax:    (305) 372-1861
Email: rarnold@knpa.com
Email: wblechman@knpa.com
Email: kmurray@knpa.com

*Attorneys for Plaintiff Kmart Corp.*

- 8 -