1 | MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. CAPURRO, ESQ. (241151)
2 | TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
3 | San Francisco, CA 94123
Telephone: (415) 563-7200
4 | Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
5 | laurenrussell@tatp.com

6 | *Lead Counsel for the Indirect-Purchaser Plaintiffs*

7

8

9

10 | UNITED STATES DISTRICT COURT

11 | NORTHERN DISTRICT OF CALIFORNIA

12 | SAN FRANCISCO DIVISION

13

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-5944 SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| *Indirect-Purchaser Class Action* | **INDIRECT PURCHASER PLAINTIFFS' OMNIBUS RESPONSE TO DIRECT ACTION PLAINTIFFS' MOTIONS *IN LIMINE*** |
| *Sharp Electronics Corp., et a. v. Hitachi Ltd., et al.*, No. 13-cv-1173; | |
| *Sharp Elecs. Corp. v. Koninklijke Philips Elecs. N.V.*, No. 13-cv-02776; | Hearing Date:  None<br>Time:  None<br>Courtoom: |
| *Siegel v. Hitachi, Ltd.*, No. 11-cv-05502; | The Honorable Samuel Conti |
| *Siegel v. Technicolor SA, et al.*, No. 13-cv-05261; | |
| *Best Buy Co., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513; | |
| *Best Buy Co., et al. v. Technicolor SA, et al.*, No. 13-cv-05264; | |
| *Target Corp. v. Chunghwa Picture Tubes, Ltd.*, et al., No. 11-cv-05514; | |

| | |
|---|---|
| 1 | *Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686; )
| 2 | )
| 3 | *Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514; )
| 4 | )
| 5 | *Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA*, No. 13-cv-05262; )
| 6 | *Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd.* No. 14-cv-02510. )

# TABLE OF CONTENTS

Page

INTRODUCTION ..............................................................................................................................1

ARGUMENT ....................................................................................................................................1

1. DAP MIL #1: TO EXCLUDE DAP "COMPETITIVE INTELLIGENCE" PRACTICES ....................................................................................................................1

2. DAP MIL #2: TO EXCLUDE EVIDENCE OF DAP PASS-THROUGH ........................5

3. DAP MIL #3: TO EXCLUDE EVIDENCE OF DAP PRIVATE LABEL CRT PRODUCTS ................................................................................................................6

4. DAP MIL #4: TO EXCLUDE EVIDENCE OF DAP MARKET POWER .......................6

5. DAP MIL #5: TO EXCLUDE EVIDENCE OF TREBLE DAMAGES, ATTORNEYS' FEES AND COSTS ...................................................................................6

6. DAP MIL #6: TO EXCLUDE EVIDENCE OF OTHER MDL ACTIONS AND SETTLEMENTS ................................................................................................................6

7. DAP MIL #7: TO EXCLUDE ARGUMENT THAT CLAIMS ARE BARRED BECAUSE ARISING FROM FOREIGN COMMERCE ..................................................7

8. DAP MIL #8: TO EXCLUDE EVIDENCE OF FAILURE TO MITIGATE ....................7

9. DAP MIL #9: TO EXCLUDE LIVE WITNESSES FROM TESTIFING IN DEFENDANTS' CASE THAT ARE NOT MADE AVAILABLE TO TESTIFY LIVE IN PLAINTIFFS' CASE ..........................................................................................7

10. DAP MIL #10: TO EXCLUDE EVIDENCE OF INCOMPLETE PASS-THROUGH .................................................................................................................7

11. DAP MIL #11: TO ESTABLISH PRECLUSIVE EFFECT, OR IN THE ALTERNATIVE ADMIT, DECISION OF EUROPEAN COMMISSION .......................8

12. DAP MIL #12: TO EXCLUDE PERCIPIENT WITNESSES FROM COURTROOM ...................................................................................................................8

13. DAP MIL #13: TO EXCLUDE EVIDENCE OF PRO-COMPETITIVE JUSTIFICATIONS FOR PRICE-FIXING .........................................................................8

i

INDIRECT PURCHASER PLAINTIFFS' OMNIBUS RESPONSE TO
DIRECT ACTION PLAINTIFFS' MOTIONS *IN LIMINE*
Master File No. 3:07-cv-5944 SC

Page

14. DAP MIL #14: TO EXCLUDE EVIDENCE OF ABSENCE OF INDICTMENTS ..............................................................................................................8

15. DAP MIL #15: TO ADMIT TESTIMONY OF SUMMARY WITNESS...........................9

16. DAP MIL #16: TO EXCLUDE EVIDENCE OF PURCHASES CONTAINING CRT FROM PLAINTIFFS VIEWSONIC AND SHARP ......................................................9

17. DAP MIL #17: TO EXCLUDE EVIDENCE OF VIEWSONIC'S PURCHASING TEAM MOVING ABROAD AFTER PURCHASES AT ISSUE WERE MADE..............9

18. DAP MIL #18: TO EXCLUDE REFERENCE TO FINANCIAL CONDITION OF PLAINTIFFS ..........................................................................................................9

CONCLUSION...............................................................................................................................10

ii

INDIRECT PURCHASER PLAINTIFFS' OMNIBUS RESPONSE TO
DIRECT ACTION PLAINTIFFS' MOTIONS *IN LIMINE*
Master File No. 3:07-cv-5944 SC

# TABLE OF AUTHORITIES

**Page**

**Cases**

*City of Long Beach v. Standard Oil Co. of California,*
  46 F.3d 929 (9th Cir. 1995) ..................................................................................................5

*Costco Wholesale Corp. v. AU Optronics Corp., et al.,*
  No. C13-1207RAJ, 2014 WL 4674390 (W.D. Wash. Sept. 17, 2014) .........................................3

*Duran v. Town of Cicero, Ill.,*
  653 F.3d 632 (7th Cir. 2011) ..................................................................................................3

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.,*
  392 U.S. 481 (1968)..................................................................................................................5

*In re ATM Fee Antitrust Litig.,*
  686 F3d 741 (9th Cir. 2012) ..................................................................................................8

*Old Chief v. United States,*
  519 U.S. 172 (1997)..................................................................................................................4

*United States v. Oldbear,*
  568 F.3d 814 (10th Cir. 2009) ..............................................................................................…4

**Rules and Statutes**

Federal Rules of Evidence 401 ..................................................................................................4

Federal Rules of Evidence 403 ..................................................................................................4

Federal Rules of Evidence 404 ..................................................................................................4

The undersigned Indirect Purchaser Plaintiffs ("IPPs") hereby submit this Omnibus Response to the Motions *In Limine* filed by Direct Action Plaintiffs' (Dkt. No. 3558).

## INTRODUCTION

The Direct Action Plaintiffs ("DAPs") have filed 18 motions *in limine* on various evidentiary issues. The Indirect Purchaser Plaintiffs ("IPPs") support several of the DAP motions, and oppose or take no position on others. A table summarizing IPP positions on particular DAP motions is attached as Exhibit A.

The larger point raised by these motions, however, is the need for a separate IPP trial. The evidentiary issues reveal in stark terms that any joint trial will be long, difficult for the jury, unmanageable for the court and parties, and profoundly unfair to the IPPs. The IPP case should not rise or fall on the litany of DAP-specific issues and arguments identified in these motions, and the fairest and most efficient solution is to (1) sever the IPP case for trial and (2) resolve the pending evidentiary motions based on the particular facts of the DAP and IPP cases, respectively.

Accordingly, for reasons explained in more detail below, the IPPs intend to renew their motion for separate trials at the appropriate time. A separate IPP trial will be comparatively streamlined, efficient, and manageable. The IPPs therefore respectfully request that the Court consider the pending motions *in limine* in light of the fundamental differences between the IPP and DAP actions, and the fairness and efficiency benefits of separate trials. *See also* Dkt. No. 3515 (denying motion for separate trials without prejudice).

## ARGUMENT

**1.    DAP MIL #1:  TO EXCLUDE DAP "COMPETITIVE INTELLIGENCE" PRACTICES**

The IPPs support the DAP motion to exclude evidence of DAP competitive intelligence practices, both for the reasons stated by the DAPs and the additional reasons below.

*First*, this motion *in limine* has serious implications for the structure, scope and fairness of any trial, particularly for the IPPs. The issue, in short, is the extent to which Defendants will be permitted to turn the trial into a sideshow battle over the business conduct and ethics of the DAPs.

1

INDIRECT PURCHASER PLAINTIFFS' OMNIBUS RESPONSE TO
DIRECT ACTION PLAINTIFFS' MOTIONS *IN LIMINE*
Master File No. 3:07-cv-5944 SC

The concern here is not speculative. In fact, the *TFT-LCD* trial reveals precisely the nature of Defendants' strategy, which involved distracting the jury from Defendants' conduct by painting the DAPs, at every turn, as unscrupulous corporate actors.[1]

These were not minor themes addressed in passing. Toshiba's *LCD* defense explored DAP "competitive intelligence" practices at great length, all for a simple reason: to suggest to the jury that DAPs communicated frequently with competitors and engaged in their own "sneaky tricks" to gather market intelligence, and thus were no different or more sympathetic than the *LCD* Defendants. *Id*. Toshiba even made a substantial issue out of whether various DAP competitive intelligence activities breached the DAP's respective corporate ethics policies.[2]

The record reveals that Defendants intend to do the same thing here. For example, Defendants have designated extensive testimony and disclosed trial exhibits relating to the competitive intelligence practices and corporate ethics policies of the various DAPs, none of which is germane to the IPPs' case.[3]

The DAPs have explained why such evidence and argument is irrelevant, unfairly prejudicial, and should be excluded from any trial. The DAPs also note, correctly, that the court in the *Costco LCD* case saw what happened in the prior *LCD* trials—that is, the sideshow nature of this evidence and the undue weight it received in Toshiba's defense—and concluded that whatever "marginal relevance" DAP competitive intelligence practices might have "is substantially

---

[1] *See* Ex. B, *TFT-LCD* Trial Tr., at 266 (Toshiba opening statement: "Best Buy has – and you will hear a lot about this – a very sophisticated competitive intelligence unit devoted to gathering information about Best Buy's competitors."); *id.* at 267 ("[Best Buy] used all of their contacts (and a few sneaky tricks) to get this information . . . Again, aggressive gathering of information on competitors."); *id.* at 269 ("Best Buy employees would go into competitors' stores with secret microphones, pretending they're on the telephone, but instead, stating into their recorder the price of everything they see . . . Tricks.").

[2] Ex. C, *TFT-LCD* Trial Tr. at 1189-1245 (excerpt from exhaustive cross examination on Best Buy competitive intelligence practices and compliance with code of ethics); *id.* at 1358 (Toshiba counsel recognizing that "Best Buy code of ethics . . . has been a centerpiece of my examination"); Ex. D, *TFT-LCD* Trial Tr. at 3487-91 (Toshiba closing argument) (same).

[3] *See, e.g.*, Ex. E (defense-designated testimony that Best Buy engaged in competitive intelligence practices such as "mystery shopping" and "general conversations" with Circuit City employees); Ex. F (defense trial exhibit Best Buy Code of Ethics); Ex. G (defense trial exhibit describing Best Buy store visits and other intelligence gathering on Circuit City).

1  outweighed by its potential to prejudice the jury, confuse it, or put greater burdens on its time."
2  *Costco Wholesale Corp. v. AU Optronics Corp., et al.,* No. C13-1207RAJ, 2014 WL 4674390, at
3  *4 (W.D. Wash. Sept. 17, 2014).  The *Costco* court wisely refused to allow these collateral DAP
4  issues to infect and overwhelm the real issues for trial, and this Court should do the same.

5        Here, whatever marginal relevance such information may have for the DAP cases, the
6  "competitive intelligence" conduct of DAPs is irrelevant to the IPP claims.  There is no sound
7  reason for putting DAP character evidence front and center in the IPP trial, as Defendants wish to
8  do.  The IPP case is fundamentally about *Defendants*' conduct:  whether Defendants conspired in
9  violation of the Sherman Act, and the impact and damages caused to IPP class members by that
10 particular conduct.  These core issues will be complex enough for the IPP jury to process and
11 resolve, and should not be confused by evidence and argument from multiple Defendants and
12 multiple DAPs concerning DAP-specific "competitive intelligence" practices with no bearing
13 whatsoever on the IPP claims.  The IPPs would be prejudiced substantially and unfairly if their
14 case were hijacked by these issues.  *See, e.g., Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 645 (7th
15 Cir. 2011) (affirming exclusion of "sideshow" evidence that risked "sending the trial off track" and
16 causing "prejudicial spillover" on other parties).

17       *Second,* the "competitive intelligence" relevance arguments cited previously by Defendants
18 in the discovery context—that DAP competitive intelligence might be relevant to DAP pricing and
19 "pass through," and might be used to rebut DAP inferences about "competitor contacts" and
20 information sharing (*see* Dkt. No. 2714 at 6-7)—are not applicable to the IPP case at trial.

21       With respect to Defendants' "pass through" rationale, the IPPs have no objection to
22 Defendants introducing evidence that retailers, including DAPs, priced their CRT products based
23 in part on what competitors charged.  *Id.*  Defendants may or may not be interested in making that
24 argument in the IPP case at trial—it does not particularly help their defense as far as the IPPs are
25 concerned—but, regardless, under no circumstances is this a serious factual issue for any IPP trial.
26 It is collateral at most.  Furthermore, the record includes ample evidence that speaks directly to the
27 point, should Defendants wish to address it.  *See, e.g.*, Dkt. No. 3558 at 3 (DAP brief collecting
28

3

ample record evidence for the proposition that Best Buy, Target, Circuit City, and Sears considered what competitors charged in setting their own prices); *Old Chief v. United States*, 519 U.S. 172, 183-85 (1997) (unfairly prejudicial evidence is inadmissible where relevant fact can be established with other, less prejudicial proof).

What Defendants cannot do, in this situation, is rely on their "pass through" theory of relevance as a pretext for introducing irrelevant, unfairly prejudicial and time-consuming evidence about the *specific* competitive intelligence practices of numerous DAPs. The prejudicial *details* of DAP competitive intelligence gathering—and whether particular DAPs engaged in questionable, unsympathetic, or unethical business practices—have no bearing whatsoever on the IPP claims and have no place in *any* IPP trial. Fed. R. Evid. 401, 403, 404.

The other prong of Defendants' relevance argument—*i.e.*, the argument advanced in the discovery context that DAP conduct (*i.e.*, competitor contacts and intelligence gathering) can be used to rebut DAP conspiracy arguments—is equally inadmissible as to the IPPs. This, again, is a DAP-specific issue. It is one thing for Defendants to respond to DAP conspiracy arguments with evidence of the *DAPs' own conduct*. *Cf.* Dkt. No. 3558, at 6-8 (DAPs arguing persuasively that such evidence is inadmissible even as to the DAPs). It is quite another to suggest that DAP conduct is somehow relevant to the conspiracy claims *of the IPPs*. The Defendants may or may not be entitled to make a "you-engaged-in-similar-conduct" argument in response to the DAPs, but when the IPPs introduce evidence and argument that Defendants got together and fixed CRT prices with competitors, it is no answer for Defendants to say "well, yes, but these other non-party U.S retailers met with competitors and shared market information too." That is a *non sequitur* argument with no material nexus to the IPP claims. *See, e.g., United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) (affirming exclusion of defense evidence that non-parties engaged in similar conduct because the "everybody-is-doing-it defense . . . was a sideshow from which the jury could have gleaned little valuable information . . . [and] only would have served to sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue") (internal quotations and citation omitted).

1    It is simply irrelevant to the IPP conspiracy case what any third-party market actor—DAP, non-party retailer or otherwise—did in its own business operations with respect to competitor meetings and market intelligence.  The fact that Best Buy, or Wal-Mart, or any of thousands of other U.S. companies sometimes gathered market intelligence will not assist the IPP jury in evaluating whether, when these particular CRT defendants got together in the particular competitor meetings at issue, price-fixing agreements were reached.  DAP competitor meetings are an irrelevant, time-consuming and confusing sideshow for the IPP case and, in all events, any marginal relevance is substantially outweighed by the unfair prejudice of turning the IPP case into a referendum on DAP character, conduct, and ethics.  *See, e.g., City of Long Beach v. Standard Oil Co. of California*, 46 F.3d 929, 938 (9th Cir. 1995) (affirming Rule 403 exclusion of evidence relating to allegedly similar conduct of other market participants in a different state because "evidence would have been of marginal relevance" and "would have injected needless confusion into an already complex case").

For all of these reasons, evidence of DAP "competitive intelligence" practices should be excluded from any trial.  Alternatively, if the Court finds such evidence admissible as to the DAPs, the IPPs respectfully submit that DAP competitive intelligence conduct should play no role in any trial involving the IPPs—a factor counseling in favor of separate trials.

**2.     DAP MIL #2:  TO EXCLUDE EVIDENCE OF DAP PASS-THROUGH**

The IPPs oppose the DAP motion to exclude evidence of "pass through," but emphasize that, as with DAP "competitive intelligence," this particular IPP/DAP evidentiary conflict is a non-issue in the event of a separate IPP trial.

In prior joint filings, the DAPs and IPPs have explained at length that "pass through" evidence poses insurmountable problems for any joint trial.  *See* Dkt. No. 2897.  The DAPs motion *in limine* underscores why that is so.  The bottom line is that (1) DAPs are correct that "pass through" evidence is categorically irrelevant and inadmissible in the DAP case under *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481 (1968) but (2) the same evidence is squarely relevant for the IPP claims under state law.  The conflict is direct and incurable.  The DAPs should

5

not be forced to bear the risk of overwhelming prejudice from the IPPs extensive presentation of "pass through" evidence, while neither the DAPs nor the IPPs should bear the substantial risk of the jury believing the two groups of Plaintiffs are pursuing an unfair double recovery. *Id*.

Accordingly, because the IPPs have no choice but to introduce extensive evidence of "pass through" to establish their claims on the merits, the IPPs oppose the DAP motion to exclude such evidence and argument, and respectfully submit that a separate IPP trial is the only viable solution on this contested evidentiary issue.

### 3.  DAP MIL #3:  TO EXCLUDE EVIDENCE OF DAP PRIVATE LABEL CRT PRODUCTS

The IPPs support the DAP motion to exclude evidence of "private label" CRT products for the reasons stated by the DAPs and for the additional reason that, even if such evidence were somehow admissible in the DAP case, the issues are DAP-specific and represent an irrelevant and unfairly prejudicial sideshow for the IPP case.

### 4.  DAP MIL #4:  TO EXCLUDE EVIDENCE OF DAP MARKET POWER

The IPPs support the DAP motion to exclude evidence of DAP market power for the reasons stated by the DAPs and for the additional reason that, even if such evidence were somehow admissible in the DAP case, the issues are DAP-specific and represent an irrelevant and unfairly prejudicial sideshow for the IPP case.

### 5.  DAP MIL #5:  TO EXCLUDE EVIDENCE OF TREBLE DAMAGES, ATTORNEYS' FEES AND COSTS

The IPPs support the DAP motion to exclude evidence of treble damages, attorneys' fees, and costs for the reasons stated in the substantially similar motion *in limine* filed by the IPPs.  *See* Dkt. No. 3538.

### 6.  DAP MIL #6:  TO EXCLUDE EVIDENCE OF OTHER MDL ACTIONS AND SETTLEMENTS

The IPPs support the DAP motion to exclude evidence of other actions and settlements for the reasons stated in the substantially similar motions *in limine* filed by the IPPs.  *See* Dkt. Nos. 3551 and 3552.

7. **DAP MIL #7: TO EXCLUDE ARGUMENT THAT CLAIMS ARE BARRED BECAUSE ARISING FROM FOREIGN COMMERCE**

The IPPs take no position at this time on the DAP motion to exclude argument that claims are barred because they arise from foreign commerce.

As the Court is aware, summary judgment motions are pending in the IPP case regarding the FTAIA issues. Dkt. No. 3287 (IPP opposition to motion for partial summary judgment on FTAIA grounds). The Court's resolution of the FTAIA issues will guide the extent to which FTAIA issues will be presented to the jury in the IPP case, and the IPPs accordingly reserve the right to revisit any and all FTAIA-related evidentiary issues (and the proper scope of any "foreign commerce" evidence and argument) in light of the Court's rulings.

As a general matter, the IPPs (1) disagree with Defendants that the FTAIA applies to their state law claims at all (*see* Dkt. No. 3287) and (2) in the alternative support the Court's evidentiary approach in the *TFT-LCD* trial, in which the Court excluded legal arguments relating to foreign commerce while submitting "factual [FTAIA] predicates" to the jury. *See* Dkt. No. 3558 at 30 (DAP brief discussing this approach).

8. **DAP MIL #8: TO EXCLUDE EVIDENCE OF FAILURE TO MITIGATE**

The IPPs support the DAP motion to exclude evidence or argument of "failure to mitigate" damages for the reasons stated in the substantially similar motion *in limine* filed by the IPPs. Dkt. No. 3545.

9. **DAP MIL #9: TO EXCLUDE LIVE WITNESSES FROM TESTIFYING IN DEFENDANTS' CASE THAT ARE NOT MADE AVAILABLE TO TESTIFY LIVE IN PLAINTIFFS' CASE**

The IPPs support the DAP motion to exclude live witnesses from testifying in Defendants' case unless those witnesses are made available live for Plaintiffs' case-in-chief, for the reasons stated in IPPs' Motion *In Limine* No. 13. *See* Dkt. No. 3549.

10. **DAP MIL #10: TO EXCLUDE EVIDENCE OF INCOMPLETE PASS-THROUGH**

The IPPs oppose the DAP motion to exclude evidence or argument of incomplete pass through of overcharges through affiliated entities to the extent it might limit the IPPs presentation

of "pass through" evidence relevant to IPP state law claims in any joint trial.

In general, the DAPs are correct that, under federal law, antitrust Defendants are precluded from raising "pass on" defenses or arguing that Defendants' owned or controlled subsidiaries (or distribution divisions) render the DAPs "indirect" rather than direct purchasers.  *See In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 749 (9th Cir. 2012).

Accordingly, to the extent this DAP motion is limited to the proposition that sales from Defendants' owned/controlled affiliates constitute "direct" sales to the DAPs for purposes of federal antitrust law, the IPPs agree.  As explained previously, however, the IPPs reserve the right to address any and all relevant "pass on" issues as necessary to establish their state law claims at trial, including but not limited to presentation of empirical studies of the overcharge passed through the chain of distribution from the cartel to end-user class members.  *See* page 5-6, *supra*.

**11.    DAP MIL #11:  TO ESTABISH PRECLUSIVE EFFECT, OR IN THE ALTERNATIVE ADMIT, DECISION OF EUROPEAN COMMISSION**

By stipulation of the parties and order of the Court, briefing on this motion is proceeding on a separate track.  *See* Dkt. No. 3623.

**12.    DAP MIL #12:  TO EXCLUDE PERCIPIENT WITNESSES FROM COURTROOM**

The DAPs will be withdrawing this Motion pursuant to a stipulation among the parties that will be filed today.

**13.    DAP MIL #13:  TO EXCLUDE EVIDENCE OF PRO-COMPETITIVE JUSTIFICATIONS FOR PRICE-FIXING**

The IPPs support the DAP motion to exclude evidence of pro-competitive justifications for price-fixing, for the reasons stated in the substantially similar motion *in limine* filed by the IPPs. *See* Dkt. No. 3554.

**14.    DAP MIL #14:  TO EXCLUDE EVIDENCE OF ABSENCE OF INDICTMENTS**

The IPPs support the DAP motion to exclude references to and evidence of non-indictment or prosecution, for the reasons stated by the DAPs and the reasons in the substantially similar

8
INDIRECT PURCHASER PLAINTIFFS' OMNIBUS RESPONSE TO
DIRECT ACTION PLAINTIFFS' MOTIONS *IN LIMINE*
Master File No. 3:07-cv-5944 SC

motion *in limine* filed by the IPPs. *See* Dkt. No. 3544.

### 15. DAP MIL #15: TO ADMIT TESTIMONY OF SUMMARY WITNESS

The IPPs support the DAP motion to summarize voluminous evidence via Rule 1006 witnesses, for the reasons stated by the DAPs. The IPPs likewise intend to rely on Rule 1006 witnesses for similar purposes at trial.

### 16. DAP MIL #16: TO EXCLUDE EVIDENCE OF PURCHASES CONTAINING CRT FROM PLAINTIFFS VIEWSONIC AND SHARP

The IPPs support the DAP motion to exclude evidence or references to the DAPs purchase of finished products from Plaintiff ViewSonic or Plaintiff Sharp, for the reasons stated by the DAPs and for the additional reason that, even if such evidence were somehow admissible in the DAP case, the issues are DAP-specific and represent an irrelevant and unfairly prejudicial sideshow for the IPP case.

### 17. DAP MIL #17: TO EXCLUDE EVIDENCE OF VIEWSONIC'S PURCHASING TEAM MOVING ABROAD AFTER PURCHASES AT ISSUE WERE MADE

The IPPs support the DAP motion to exclude evidence or references to the movement of Viewsonic's purchasing team from the United States to Taiwan, for the reasons stated by the DAPs and for the additional reason that, even if such evidence were somehow admissible in the DAP case, the issues are DAP-specific and represent an irrelevant and unfairly prejudicial sideshow for the IPP case.

### 18. DAP MIL #18: TO EXCLUDE REFERENCE TO FINANCIAL CONDITION OF PLAINTIFFS

The DAPs will be withdrawing this Motion pursuant to a stipulation among the parties that will be filed today.

9
INDIRECT PURCHASER PLAINTIFFS' OMNIBUS RESPONSE TO
DIRECT ACTION PLAINTIFFS' MOTIONS *IN LIMINE*
Master File No. 3:07-cv-5944 SC

## **CONCLUSION**

For the reasons stated above, the IPPs respectfully request that this Court resolve the DAP motions *in limine* in a manner consistent with the foregoing argument, and in light of the fairness and efficiency benefits of a separate, streamlined trial for the IPPs.

Dated: February 27, 2015

By: */s/ Mario N. Alioto*
Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone:     (415) 563-7200
Facsimile:     (415) 346-0679
Email:  malioto@tatp.com
Email:  laurenrussell@tatp.com

*Lead Counsel for Indirect Purchaser Plaintiffs*

*On the brief:*

Donald L. Perelman
Gerard A. Dever
Matthew Duncan
Fine, Kaplan and Black, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
Telephone:  (215) 567-6565
Facsimile:  (215) 568-5872
Email:  gdever@finekaplan.com

*Counsel for Indirect Purchaser Plaintiffs*