# EXHIBIT D

```
                                            Volume 22

                                            Pages 3340 - 3515

                  UNITED STATES DISTRICT COURT

               NORTHERN DISTRICT OF CALIFORNIA

          BEFORE THE HONORABLE SUSAN ILLSTON, JUDGE

IN RE: TFT-LCD (FLAT-PANEL)     )
ANTITRUST LITIGATION.           )   NO. C 07-MDL-1827 SI


San Francisco, California           Individual Cases:
Thursday                            CASE NO. 10-CV-4572
August 29, 2013                     CASE NO. 12-CV-4114
8:43 a.m.

                  TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Best Buy Plaintiffs:
                    ROBINS, KAPLAN, MILLER & CIRESI LLP
                    2049 Century Park East
                    Suite 3400
                    Los Angeles, California  90067
              BY:   ROMAN M. SILBERFELD, ESQ.
                    DAVID MARTINEZ, ESQ.
                    LAURA E. NELSON, ESQ.
                    BERNICE CONN, ESQ.
                    MICHAEL A. GEIBELSON, ESQ.


For Defendant HannStar Display Corporation:
                    FREITAS TSENG & KAUFMAN, LLP
                    100 Marine Parkway
                    Suite 200
                    Redwood Shores, California  94065
              BY:   ROBERT E. FREITAS, ESQ.
                    JASON SHEFFIELD ANGELL, ESQ.
                    JESSICA NICOLE LEAL, ESQ.


 (Appearances continued, next page)
```

1        The evidence all holds together.  It's unrebutted.
2   Everyone at Toshiba U.S., Japan, the folks at Dell, the folks
3   at other companies everyone acknowledges what was going on
4   here.
5        Slide 96.  It's in that context that Mr. Amano talked
6   about, creating this kind of channel.  He wanted to develop a
7   network that he could verify prices.  And, as I'll get to in a
8   minute, that bears a lot of similarity to what the folks at
9   Best Buy did.
10       Slide 97.
11       Testimony by Mr. Collins and Mr. Amano to the effect of
12  what I was saying before.  You want to find out what the
13  competitor is charging so you can undercut it and win the
14  business.  Mr. Collins talked about that.  Mr. Amano talked
15  about that.
16       And there are some examples.  Slide 98.  The -- here we
17  can see a situation where Sharp's price was learned.  And
18  Toshiba went to the bottom of the range.  Bottom of the range.
19  After learning that Sharp was negotiating with Dell in that
20  range, TMD decided to offer 285 for September/October
21  proactively.  So this is a pro-competitive use of competitor
22  information.
23       So let's turn from there to the Best Buy module and --
24  Slide 100.
25       Now, here again I want to try to show that the evidence

1   indicates that Best Buy engaged in the same type of behavior
2   and intelligence gathering that the Toshiba did.
3       Remember this code of ethics.  I questioned Miss Fritz
4   about it.  Best Buy's own code of ethics has a section that
5   acknowledges competitive intelligence gathering is necessary
6   to compete effectively.
7       And you may remember the testimony from Miss Fritz, and
8   also from Mr. Britton:  Best Buy engaged dozens and dozens of
9   employees in this effort.  The most -- you know, an incredibly
10  elaborate effort to gather competitor information.
11      Now, Slide 101.  There's Mr. Britton whose video played
12  here.  Acknowledging that as of August 1999, there were 172
13  marketing coordinators making visits to competitor's stores to
14  collect information at Best Buy.
15      Slide 102.  Here I'd like to draw a comparison.  So we've
16  got Mr. Britton from Best Buy testifying, as we covered in
17  previous documents, maintaining a network or contacts at
18  competitors is generally acceptable practice in competitive
19  intelligence.
20      This is a Best Buy witness acknowledging our defense in
21  this case.  This is one of the scores and scores of Best Buy
22  employees committed to competitive intelligence, and he's
23  explaining that within Best Buy, they develop a network and
24  contacts at competitors in order to compete better.
25      It's very similar to what Mr. Amano testified in the

1    bottom part here.
2         And the competitor intelligence network, you had in mind
3    was to have American-based employees of Toshiba gathering as
4    much competitor information as you could get.  True?
5         That is correct.
6         That was a question Mr. Silberfeld asked Mr. Amano.
7         The next slide, 103, we've shown you in opening, we showed
8    you through Miss Fritz' testimony, we showed you through
9    Mr. Britton's testimony.  A variety of documents from within
10   Best Buy that show Best Buy having competitor contacts in a
11   variety of contexts.
12        This is one Mr. Britton was just testifying about, where
13   one of the Best Buy operatives was having contact with my good
14   friend, who's an operations manager at a Circuit City.
15        Okay.  My good friend.  That sounds a lot like the e-mail
16   that Mr. Silberfeld was condemning Toshiba for in his closing
17   about Mr. Chiba and Mr. Amano having friends or acquaintances
18   at other companies like Sharp.
19        And here the Best Buy operative is talking about pricing
20   with the Circuit City counterpart.
21        Slide 104.  Best Buy had a policy by which they had to
22   match -- they undertook to match a competitor's price and --
23   in order sometimes to verify the price of the competitor, they
24   would call up and have a direct communication to verify what
25   the price was.

1      That's equivalent to our Dell master purchase agreement
2  and our other arrangements with customers where our price is
3  based on the competitor's price and therefore sometimes
4  there's verification communications.
5      Slide 105, 106, are -- to the same extent, these are more
6  Best Buy documents that we've shown to you and are in evidence
7  that show that the competitive field operatives at Best Buy
8  are gathering up information from competitors and -- including
9  through direct communications with those competitors.
10     Slide 107, to the same extent.  Pinging their contacts.
11 They have whole units pinging contacts to verify information
12 about Circuit City.
13     Slide 108.  Remember, I questioned Miss Fritz extendedly
14 about their Black Friday competitive intelligence.  You'll
15 recall that Miss Fritz testified Black Friday is the biggest
16 shopping day of the year.  They had everything they could to
17 gather up information about what competitors were doing.  They
18 knew months ahead of time what sales promotions Wal-Mart was
19 going to do on Black Friday.  They even knew the sales
20 projections of Wal-Mart for Black Friday.
21     Again, I'm not condemning that.  That can be good
22 business.  But Best Buy does it, why can't Toshiba do it?
23     Slide 109.  You may remember this document which I showed
24 Miss Fritz.  Asia Newsflash.  This is the operatives in Asia
25 for Best Buy who are reporting back to all of the senior

1   executives in the company about competitive intelligence that

2   they gathered in Asia.  You can also see that document

3   contains that scary sounding legend about:  If you're not an

4   authorized recipient, you ought to destroy the document.

5       Slide 110.  This is another internal Best Buy document

6   that's -- the status is listed as Top Secret, For Authorized

7   Personnel Only, No Distribution.  Sometimes business people,

8   especially those in competitive intelligence, might take

9   themselves a little too seriously on the spy side and think

10  that they're dealing with state secrets or something.  And

11  that's reflected in Toshiba.

12      No question about it.  You've seen that there's a formal

13  policy in Toshiba that one of the appropriate legends for

14  sensitive information is "destroy after reading".  Especially

15  maybe with something while it's in translation, that sounds

16  unusually stark and overdone, but we see the same type of

17  thing done in Best Buy documents.

18          **THE COURT:**  You're just about out of time.

19          **MR. CURRAN:**  Am I?

20          **THE COURT:**  Just about.

21          **MR. CURRAN:**  I'm sorry.

22      I would like to quickly jump then to Mr. Silberfeld's

23  slides.

24      Can we show Slide 22 from Mr. Silberfeld's slides, please?

25      Mr. Silberfeld walked you through a number of documents