MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. CAPURRO, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the Indirect-Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-5944 SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| *Indirect-Purchaser Class Action* | **INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO THE TOSHIBA DEFENDANTS' MOTION *IN LIMINE*:** |
| | **TO PRECLUDE IPP ALTER EGO THEORIES OF LIABILITY AT TRIAL** |
| | Hearing Date: None |
| | Time: None |
| | Courtoom: |
| | The Honorable Samuel Conti |

The undersigned Indirect Purchaser Plaintiffs ("Plaintiffs") hereby submit this Response to the Toshiba Defendants' ("Toshiba") Motion *in Limine* to Preclude IPP Alter Ego Theories of Liability at Trial ("Alter Ego MIL") [Dkt. No. 3576].

I.   ARGUMENT

The evidence Toshiba seeks to exclude because it "relat[es] to an alter ego theory" directly relates to other bases for holding one corporation liable for the acts of another, which Plaintiffs indisputably have pled. Thus, the evidence at issue will be admitted at trial regardless of whether the Court permits a jury instruction on "alter ego" liability. For this reason alone, Toshiba's Alter Ego MIL should be denied. Furthermore, Toshiba has had ample notice of Plaintiffs' claims that Toshiba Corporation is liable for the price-fixing activities of its subsidiaries and affiliates, and in fact the Toshiba Defendants have vigorously defended themselves on those issues. They cite no authority for their proposition that this Court should exclude a broad category of evidence merely because Plaintiffs did not formalistically plead an alter ego theory of liability. Because evidence "relating to an alter ego theory" directly relates to other bases for holding one corporation liable for the acts of another—which Plaintiffs indisputably have pled—the requested relief is inappropriate, unworkable and impermissibly vague.

A.   Relevant Background

Toshiba's Alter Ego MIL has its roots in the parties' pre-trial exchange of draft jury instructions. Defendants' initial set of proposed jury instructions included an incomplete, legally erroneous instruction entitled "Shareholder Non-Liability." As indicated by its highly partisan title, the instruction was skewed in favor of Defendants, unduly emphasizing how a corporation's shareholder is "*not* liable for the unlawful acts of the corporation," and providing unclear and incomplete instructions as to how a shareholder *may* be found liable:

> An owner of the stock of a corporation, including a corporation that owns a majority or all of the stock of another corporation, is not liable for the unlawful acts of the corporation, unless the stockholder directed or otherwise actively influenced the corporation in its unlawful acts.[1]

---

[1] Defendants also submitted a duplicative, companion instruction, equally unbalanced and erroneous, which improperly sought to provide an alternative basis for insulating Defendants from

Ex. A (Defendants' proposed Instruction No. 63).  In response, Plaintiffs served an edited version of Defendants' instruction.  By adding the language appearing in italics below, Plaintiffs sought to bring appropriate balance to the instruction and provide the jury with a clear explanation of how the jury *may* find a shareholder liable for the acts of the corporation it owns – critical information that was missing from Defendants' version:

> **20. Shareholder Liability**
>
> An owner of the stock of a corporation, including a corporation that owns a majority or all of the stock of another corporation, is not liable for the unlawful actions of the owned corporation, *unless any of the following are true:*
>
> - *Both corporations were active participants in the conspiracy; or*
>
> - *The owner actively influenced the other corporation in its unlawful acts; or*
>
> - *One corporation is the "alter ego" of the other. A corporation is an alter ego where there is such unity of interest and ownership that the separate personalities of the corporation and its owner cease to exist, and to observe the corporate form would work an injustice.*

(Ex. B) (Plaintiffs' proposed Instruction No. 20). Plaintiffs' added language was drawn from the same cases cited by Defendants. *See, e.g.*, *H.J. Inc. v. Int'l Tel & Tel. Corp.,* 867 F.2d 1531, 1549 (8th Cir. 1989) (discussing liability based on the acts of the parent corporation, the parent's "influence" over the subsidiary, and an alter ego theory).  Binding authority amply supports the added language as well.  *See Watson v. Gulf & W. Indus.,* 650 F.2d 990, 993 (9th Cir. 1981) (a parent is liable for the violations of its subsidiary if the parent "participated in or influenced" the subsidiary).[2]

---

liability in connection with parent/subsidiary issues. Ex. A (Defendants' proposed Instruction No. 64). The manifest flaws in this and Defendants' other instructions will be addressed in detail later, in connection with the parties' briefing on jury instructions.

[2] *See also Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 582 (9th Cir. 2000) (holding that where the "'parent' state has participated extensively in, and influenced, the employment policies and practices of the 'subsidiary' local school districts," liability for the

Plaintiffs' efforts to correct Defendants' inaccurate, unbalanced instruction – particularly the addition of bullet point 3 concerning "alter ego" liability – prompted Toshiba to file the instant motion. But, to the extent that Toshiba objects to the inclusion of "alter ego" language in the jury instructions, the proper time and place for that will be when the Court rules on jury instructions. Toshiba's motion *in limine*, on the other hand, seeks to exclude a broad swath of evidence that is plainly relevant to numerous live issues that will be submitted to the jury. Accordingly, as explained in detail below, its motion should be denied. *See Broadspring, Inc. v. Congoo, LLC*, No. 13-CV-1866 JMF, 2014 WL 7392905, at *8 (S.D.N.Y. Dec. 29, 2014) (denying motion *in limine* to exclude a category of evidence because the evidence was "independently admissible" for other purposes); *Fresenius Med. Care Holdings, Inc., v. Baxter Int'l, Inc*., No. C 03-01431 SBA (EDL), 2006 WL 1646113, at *3 (N.D. Cal. June 12, 2006) ("evidence is excluded on a motion *in limine* only if the evidence is clearly inadmissible for any purpose") (internal quotations, citation omitted).

### B. Toshiba's Motion Should Be Denied

#### 1. The Requested Relief Is Unworkable and Impermissibly Vague

Toshiba does not and cannot dispute that a Toshiba parent company can be held liable for the actions of its wholly or partially owned subsidiary if the jury finds that: (1) both corporations were active participants in the conspiracy, *i.e.*, bullet 1 of Plaintiffs' proposed instruction; or (2) the owner actively influenced the other corporation in its unlawful acts, *i.e.*, bullet 2 of Plaintiffs' proposed instruction. *See Watson,* 650 F.2d at 993; *Ass'n of Mexican-Am. Educators*, 231 F.3d at 582. Toshiba does not and cannot complain of a lack of notice of these two theories of parent/subsidiary liability (nor of other theories, such as agency). Nor can Toshiba dispute that substantial evidence directly addressing the liability of parent and subsidiary corporations most certainly *will* be featured at trial. As Toshiba and other Defendants stated in a separate motion *in limine* arguing in favor of so-called "corporate separateness," the liability of each Defendant –

---

actions of the subsidiary (local school district) can extend to the parent (state)) (citing *Watson,* 650 F.2d at 993).

parents and subsidiaries alike – "will be a hotly contested issue at trial." Defendants' MIL No. 6, at 9 [Dkt. No. 3571].

And yet, the instant motion seeks to preclude Plaintiffs from introducing any evidence of parent/subsidiary liability if it potentially "relat[es] to an alter ego theory of liability." Toshiba's Alter Ego MIL at 1; *see also* Proposed Order, Dkt. No. 3576-1 (precluding introduction of evidence "relating to an alter ego theory of liability").  This request is grossly overbroad and totally unworkable given that evidence relevant to an alter ego theory overlaps substantially with the corporate/subsidiary liability evidence that is plainly relevant and admissible and most certainly will be presented at trial.  For example, evidence of a "unity of interest and ownership" (a factor under bullet point 3, for "alter ego" liability) clearly bears on a parent's "influence" over its subsidiary (a factor under bullet point 2).  The same could be said for evidence that a representative of a particular Toshiba entity reached conspiratorial agreements on behalf of "Toshiba" as a whole, and the parent entity directed subsidiaries to execute those agreements. Such evidence would be relevant to whether both corporations were active participants in the conspiracy (bullet point 1) and whether the separate personalities of the corporation and its owner cease to exist (bullet point 3).

As such, the motion asks the Court to engage in a burdensome, time-consuming exercise in hair-splitting to determine whether a particular line of questioning or piece of evidence relates ***only*** to an *alter ego* theory (bullet 3), as opposed to one of the other undisputed bases for parent/subsidiary liability (bullets 1 and 2), or even another theory, such as agency.[3]  That approach would be highly impractical and would create unnecessary obstacles to the fair and efficient conduct of the trial.  And importantly, it may impede Plaintiffs' right to present evidence that indisputably is admissible and relevant to issues of central importance.

In light of these difficulties, it is unsurprising that Toshiba has not identified *any* specific evidence they seek to exclude, nor has Toshiba offered a feasible method for the Court to identify

---

[3] *See generally Sun Microsystems Inc. v. Hynix Semiconductor Inc.,* 622 F. Supp. 2d 890, 897-901 (N.D. Cal. 2009) (discussing agency liability in the antitrust context).

such evidence. Given these insurmountable problems, the motion should be denied. *See, e.g.*, *Colton Crane Co., v. Terex Cranes Wilmington, Inc.,* No. CV 08-8525 PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) ("[M]otions *in limine* must identify the evidence at issue and state with specificity why such evidence is inadmissible.") (citation omitted).[4]

### 2. Toshiba Has Had Ample Notice of Plaintiffs' Claims That It Is Liable for the Price-Fixing Activities of Its Subsidiaries.

Toshiba should not be heard to complain that Plaintiffs' complaint provided inadequate notice that the CRT price-fixing conspiracy gave rise to liability of Toshiba's parent and subsidiary corporations. Factual allegations that support parent/subsidiary liability, including under an alter ego theory, appear throughout Plaintiffs' complaints.[5]

---

[4] *See also Engman v. City of Ontario*, No. EDCV 10-284 CAS (PLAx), 2011 WL 2463178, at **3-4 (C.D. Cal. June 20, 2011) (denying one motion *in limine* "[b]ecause defendants have not identified any particular statement that they seek to preclude" and three others because it was premature to issue a blanket ruling excluding categories of evidence where it was "not entirely clear" what evidence plaintiffs would seek to introduce at trial); *Lego v. Stratos Int'l, Inc.*, No.C 02-03743 JW, 2004 WL 5518162, at *1 (N.D. Cal. Nov. 4, 2004) (denying MIL "because the requested relief is too vague"); *see also Robinson v. HD Supply, Inc.,* No. 2:12-CV-00604-GEB-AC, 2014 WL 585416, at *3 (E.D. Cal. Feb. 14, 2014) (denying motion *in limine* to exclude certain evidence where motion was "tantamount to" an untimely request for partial summary judgment).

[5] *See, e.g.,* Indirect Purchaser Plaintiffs' Consolidated Amended Complaint ("IP CAC") [Dkt. No. 437] at ¶ 72 and Indirect Purchaser Plaintiffs' Fourth Consolidated Amended Complaint ("FCAC") [Dkt. No. 1526] at ¶ 70 ("During the Class Period, Toshiba Corporation manufactured, marketed, sold and/or distributed CRT Products, either directly **or indirectly through its subsidiaries or affiliates**, to customers throughout the United States" and "entered into a joint venture with Defendant Panasonic Corporation called MT Picture Display Co., Ltd. in which **the entities consolidated their CRT businesses**"); IP CAC at ¶¶ 73 - 78 and FCAC at ¶¶ 71 – 75 ("Toshiba Corporation **dominated and controlled** the finances, policies, and affairs of [the other Toshiba Defendants] relating to the antitrust violations alleged in" the respective complaints); IP CAC at ¶ 177 and FCAC at ¶ 177 ("After 2003, **Toshiba participated in the CRT conspiracy through its joint venture with Panasonic, MTPD.**"); FCAC at ¶ 191 ("When Plaintiffs refer to a corporate family or companies by a single name in their allegations of participation in the conspiracy, Plaintiffs are alleging that one or more employees or agents of entities within the corporate family engaged in conspiratorial meetings on behalf of every company in that family. In fact, **the individual participants in the conspiratorial meetings and discussions did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family.** The individual participants entered into agreements on behalf

Parent/subsidiary liability issues figured centrally in discovery as well. Importantly, Toshiba has vigorously defended itself on these issues, and has had every opportunity to develop a record as to the relationships between Toshiba Corporation and its subsidiaries and affiliates, including MT Picture Display Co., Ltd ("MTPD"). For example, Plaintiffs propounded discovery requests focused on issues of ownership and control.[6] Toshiba's responses demonstrate that they understood the importance of developing a record on these issues. Among other things, Toshiba Corporation objected to the Plaintiffs' definitions of "you," "your," and "Defendant" on the grounds that the definitions were overly broad and improperly sought to obtain information from or about distinct corporate entities "not controlled by" Toshiba Corporation.[7] Toshiba Corporation also objected to specific interrogatories to the extent they requested information ████

---

of, and reported these meetings and discussions to, their respective corporate families. As a result, **the entire corporate family was represented in meetings and discussions by their agents and were parties to the agreements reached in them**."); IP CAC at ¶ 188 (substantially similar to FCAC ¶ 191) (emphases added).

[6] Indirect Purchaser Plaintiffs' First Set of Interrogatories to the Toshiba Defendants, served August 1, 2014 sought information about the relationship between individual Toshiba Defendants and MTPD, including information about, *inter alia*, employees who transferred between MTPD and a Toshiba Defendant, compensation paid by Toshiba Defendants to individuals who worked for MTPD, the identity of Toshiba entities that bought CRTs manufactured by MTPD and associated pricing mechanisms, agreements between any Toshiba Defendants and MTPD for professional services, and financial contributions and guarantees from Toshiba Defendants to MTPD). See Ex. C (Toshiba Corporation's objections and responses to those interrogatories, served Sept. 5, 2014). Indirect Purchaser Plaintiffs' Fourth Set of Requests for Production of Documents to Toshiba Defendants, served August 1, 2014, requested documents pertaining to MTPD. *See* Ex. D (Toshiba Corporation's objections and responses to those requests, served Sept. 5, 2014).

[7] Ex. D, Toshiba Corporation's Objections and Responses to Indirect Purchaser Plaintiffs' Fourth Set of Requests for Documents, served Sept. 5, 2014, General Objection 19; Ex. E, Toshiba Corporation's Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories to [All] Defendants, served Sept. 5, 2014, General Objections 24 and 26; Ex. C, Toshiba Corporation's Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories to Toshiba Defendants, served Sept. 5, 2014, General Objection 19.

████████████████████████████████████████.[8]  A substantive response expressly disclaimed control over MTPD.[9]  And the Plaintiffs' Sept. 19, 2014 letter brief to Hon. Vaughn R. Walker in support of their motion to compel supplemental discovery responses from Toshiba (Ex. F) explained that the discovery was critical to ████████████████████ ████████ *Id.* at 7.

As these examples show, the parties vigorously have litigated the facts relevant to parent/subsidiary liability, including under an alter ego theory of liability.  Accordingly, the Toshiba cannot claim any prejudice when such evidence is introduced at trial.

Moreover, the Toshiba cites no authority for the proposition that Plaintiffs should be precluded from introducing evidence at trial to support a particular theory solely because the complaint did not plead that theory by name.  In fact, there is well reasoned authority to the contrary.  In *In re Information Resources Securities Litigation*, the court denied a motion *in limine* to strike allegedly new acts of fraud described in an expert report.  *See* No. 89 C 3772, 1992 WL 141996, at *4 (N.D. Ill. June 16, 1992).  The court determined that even if the "new" acts had not been encompassed in the complaint, the defendants would not be prejudiced by their introduction at trial because the acts were disclosed in interrogatory responses.  "[W]hen a defendant is given notice of additional claims through discovery, courts are not inclined to dismiss those claims." *Id.*[10]  The same logic applies here with respect to evidence supporting an alter ego theory of

---

[8] Ex. C, Toshiba Corporation's Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories to Toshiba Defendants, served Sept. 5, 2014, Responses 3 - 14.

[9] Ex. E, Toshiba Corporation's Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories to [All] Defendants, served Sept. 5, 2014, Response 2.

[10] *See also Sundstrand Corp v. Standard Kollsman Indus.*, 488 F.2d 807, 812 (7th Cir. 1973) (reversing and remanding for new trial where trial court impermissibly excluded evidence of fraudulent acts not pled in complaint but disclosed in interrogatory responses, and refused to allow plaintiff to amend complaint to add those fraudulent acts); *GSI Group, Inc. v. Sukup Mfg. Co.*, No. 05-3011, 2008 WL 4826265, at *7 (C.D. Ill. Oct. 28, 2008) (holding "responses in discovery gave

liability; even if such a claim is "new," Toshiba suffers no prejudice if it must address evidence that has been subject of extensive discovery and which will be introduced at trial regardless because it is relevant to other significant issues in the case.[11]

In all events, Defendants' motion is wildly overbroad and would preclude Plaintiffs from introducing evidence of parent/subsidiary liability under non-alter ego theories of liability that are plainly preserved and ripe for resolution on the merits. The motion should be denied on that basis alone.

## II.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court deny The Toshiba Defendants' Motion *in Limine* to Preclude IPP Alter Ego Theories of Liability at Trial.

Dated:  February 27, 2015         By: */s/ Mario N. Alioto*
                                  Mario N. Alioto (56433)
                                  Lauren C. Capurro (241151)
                                  TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
                                  2280 Union Street
                                  San Francisco, CA 94123
                                  Telephone:    (415) 563-7200
                                  Facsimile:    (415) 346-0679
                                  Email: malioto@tatp.com
                                  Email: laurenrussell@tatp.com

                                  *Lead Counsel for Indirect Purchaser Plaintiffs*

*On the brief:*

---

Sukup sufficient notice of the additional basis for deceptive practices that GSI had developed in discovery"), *on reconsideration in part*, 05-3011, 2008 WL 5385731 (C.D. Ill. Dec. 18, 2008).

[11] If necessary to cure any perceived pleading defects, the Court may order amendment of the complaint to conform to the evidence presented at trial. *See* Fed. R. Civ. P. 15(b). *See also Redwood Christian Sch. v. Cnty. of Alameda*, No. C-01-4282 SC, 2007 WL 164743, at *1 (N.D. Cal. Jan. 19, 2007) (Conti, J.) (allowing defendants to file an amended answer asserting new affirmative defenses on the eve of trial where the parties had addressed the questions of law raised by the proposed defenses in discovery and briefed them in their motions *in limine*); 6A CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1495 (3d ed. 2014) (a court should allow amendment and evidence of a newly raised issue to be introduced at trial unless doing so would "seriously prejudice[]" the opposing party).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Donald L. Perelman
Gerard A. Dever
Matthew Duncan
Fine, Kaplan and Black, R.P.C.
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
Telephone:  (215) 567-6565
Facsimile:   (215) 568-5872
Email:  gdever@finekaplan.com

Counsel for Indirect Purchaser Plaintiffs