1  ROBINS KAPLAN LLP
   Roman M. Silberfeld, Bar No. 62783
2  RSilberfeld@ robinskaplan.com
   Bernice Conn, Bar No. 161594
3  BConn@ robinskaplan.com
   David Martinez, Bar No. 193183
4  DMartinez@ robinskaplan.com
   Lucas A. Messenger, Bar No. 217645
5  LMessenger@robinskaplan.com
   2049 Century Park East, Suite 3400
6  Los Angeles, CA 90067-3208
   Telephone:    310-552-0130
7  Facsimile:    310-229-5800

8  Attorneys for Plaintiffs

9  BEST BUY CO., INC.; BEST BUY PURCHASING LLC; BEST
   BUY ENTERPRISE SERVICES, INC.; BEST BUY STORES,
10 L.P.; BESTBUY.COM, LLC

11 Additional Counsel Listed Below

12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15               SAN FRANCISCO DIVISION

16

17 IN RE: CATHODE RAY TUBE (CRT)          Master File No. 3:07-cv-05944-SC
   ANTITRUST LITIGATION                   MDL No. 1917

18 ─────────────────────────────────

19 This Document Relates to:              OPPOSITION TO CHUNGHWA
                                          PICTURE TUBES, LTD. AND
   *Best Buy Co. Inc. et al. v. Hitachi, Ltd. et al.,*   CHUNGHWA PICTURE TUBES
20 No. 3:11-cv-05513-SC                   (MALAYSIA) SDN. BHD.'S MOTION
                                          IN LIMINE TO EXCLUDE OPINIONS
21 *ViewSonic Corp. v. Chunghwa Picture Tubes,*   REGARDING ACTUAL DAMAGES
   *Ltd. et al.,* No. 3:14-cv-02510-SC   ATTRIBUTABLE TO THE
22                                        CHUNGHWA DEFENDANTS

23                                        [DEFENDANTS' MIL NO. 21]

24                                        Date:    TBD
                                          Time:    TBD
25                                        Place:   Courtroom 1
                                          Judge:   Hon. Samuel Conti

26

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# Table of Contents

Page

I.  Introduction ............................................................................................................. 1

II.  Background ............................................................................................................. 3

 A.  Plaintiffs' Expert Opinions Regarding Damages .................................................. 3

  1.  The Expert Reports .................................................................................. 3

  2.  Dr. Frankel's Expert Deposition Testimony ............................................. 5

 B.  Best Buy's Indirect Damages Attributable To Chunghwa ................................... 6

 C.  ViewSonic's Unallocated Direct Damages Attributable To Chunghwa ................ 6

III.  Argument ............................................................................................................... 6

 A.  The Standard For Evaluating Admissibility Of Expert Testimony ....................... 6

 B.  Testimony Regarding Best Buy's Indirect Damages Attributable To Chunghwa Constitutes A Permissible Explanation ................................. 7

 C.  The Frankel Report Clearly Expresses An Opinion Regarding ViewSonic's Damages Attributable To Chunghwa ...................................... 100

 D.  Chunghwa Anticipated Dr. Frankel's Testimony And Will Suffer No Harm ........ 12

 E.  Plaintiffs' Market Share Approach Is Sufficient To Demonstrate Antitrust Damages Attributable To Chunghwa ...................................... 13

IV.  Conclusion ........................................................................................................... 166

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**Table of Authorities**

Page

**Cases**

*AT & T Mobility LLC v. AU Optronics Corp. (In re TFT-LCD Flat Panel Antitrust Litig.)*,
    2012 U.S. Dist. LEXIS 166194 (N.D. Cal. Nov. 19, 2012)................................... 15

*Best Buy v. AU Optronics Corp. (In re TFT-LCD Antitrust Litig.)*,
    2013 U.S. Dist. LEXIS 168561 (N.D. Cal. Nov. 20, 2013)................................... 15

*Bigelow v. RKO Radio Pictures*,
    327 U.S. 251, 264 (1946) .................................................................. 14, 16

*City of Owensboro v. Ky. Utils. Co.*,
    2008 U.S. Dist. LEXIS 81945 (W.D. Ky. Oct. 14, 2008)................................... 9

*Danmark v. CMI USA, Inc.*,
    2014 U.S. Dist. LEXIS 171056 (N.D. Cal. Dec. 9, 2014) ......................... 1, 7, 11

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ....................................................................... 3, 15

*Depuy Synthes Prods., LLC v. Globus Med., Inc.*,
    2014 U.S. Dist. LEXIS 61181 (D. Del. Mar. 25, 2014) ..................................... 9

*Dow Chem. Co. v. Nova Chems. Corp.*,
    2010 U.S. Dist. LEXIS 50101 (D. Del. May 20, 2010) ..................................... 11

*EEOC v. Freemen*,
    626 F. Supp. 2d 811 (M.D. Tenn. 2009) ..................................................... 9

*Goodman v. Staples the Office Superstore, LLC*,
    644 F.3d 817 (9th Cir. 2011)................................................................. 7

*Hall v. City of Fairfield*,
    2012 U.S. Dist. LEXIS 48616 (E.D. Cal. Apr. 4, 2012) ..................................... 7

*Hess v. Ameristep*,
    2008 U.S. Dist. LEXIS 93895 (C.D. Ill. Nov. 17, 2008) ..................................... 8

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977).................................................................... 2, 11

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
    2013 U.S. Dist. LEXIS 125287 (C.D. Cal. Aug. 26, 2013) ............................... 14

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    643 F. Supp. 2d 471 (S.D.N.Y. 2009)................................................... 12, 13

*In re Sulfuric Acid Antitrust Litig.*,
    235 F.R.D. 646 (N.D. Ill. 2006) ............................................................. 9

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO CHUNGHWA MIL TO EXCLUDE
EXPERT TESTIMONY REGARDING ACTUAL
DAMAGES

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*,
  978 F. Supp. 2d 1053 (C.D. Cal. 2013) ..................................................... 12

*J. Truett Payne Co. v. Chrysler Motors Corp.*,
  451 U.S. 557 (1981) ........................................................................... 13, 14

*Knutson v. Daily Review, Inc.*,
  548 F.2d 795 (9th Cir. 1976) ..................................................................... 14

*Koch v. Greenberg*,
  14 F. Supp. 3d 247 (S.D.N.Y. 2014) ........................................................... 8

*Lucent Techs. Inc. v. Gateway, Inc.*,
  2007 U.S. Dist. LEXIS 36246 (S.D. Cal. May 16, 2007) ............................... 10

*Miller v. Lenz*,
  2010 U.S. Dist. LEXIS 4787 (N.D. Ill. Jan. 20, 2010) ................................... 12

*Mineabea Co., LTD. v. Papst*,
  231 F.R.D. 3 (D.D.C. 2005) ....................................................................... 8

*Muldrow v. Re-Direct, Inc.*,
  493 F.3d 160, 167 (D.C. Cir. 2007) ............................................................. 7

*nCube Corp. v. SeaChange Int'l, Inc.*,
  809 F. Supp. 2d 337 (D. Del. 2011) ............................................................. 7

*Oracle Am., Inc. v. Micron Techn., Inc., et al.*,
  817 F. Supp. 2d 1128 (N.D. Cal. 2011) ....................................................... 14

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
  282 F.R.D. 655 (M.D. Fla. 2012) ................................................................. 9

*Royal Printing Co. v. Kimberly-Clark Corp.*,
  621 F.2d 323 (9th Cir. 1980) ....................................................................... 2

*Sentius Int'l, LLC v. Microsoft Corp.*,
  2015 U.S. Dist. LEXIS 10423 (N.D. Cal. Jan. 27, 2015) ............................... 15

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
  282 U.S. 555 (1931) ................................................................................. 16

*Texaco, Inc. v. Hasbrouck*,
  496 U.S. 543 (1990) ................................................................................. 14

*Thompson v. Doane Pet Care Co.*,
  470 F.3d 1201 (6th Cir. 2006) ................................................................. 7, 12

*Tracinda Corp. v. DaimlerChrysler AG*,
  362 F. Supp. 2d 487 (D. Del. 2005) ............................................................. 9

*Zenith Radio Corp. v. Hazeltine Research Inc.*,
  395 U.S. 100 (1969) ......................................................................... 3, 14, 16

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Master Case No. 3:07-cv-05944-SC
60945267

iii

OPPOSITION TO CHUNGHWA MIL TO EXCLUDE
EXPERT TESTIMONY REGARDING ACTUAL
DAMAGES

**Rules**

Fed. R. Civ. P. 26 .............................................................................. 7, 9, 11, 13

Fed. R. Civ. P. 37 .............................................................................. 7, 9

Fed. R. Evid. 702 .............................................................................. 3

Fed. R. Evid. 703 .............................................................................. 3

**Other Authorities**

150 Cong. Rec. S3614 .............................................................................. 14

8A Wright & Miller: Federal Practice & Procedure, § 2031.1 (2014 Supplement) ........................ 7

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Plaintiffs Best Buy[1] and ViewSonic Corporation ("ViewSonic") hereby respectfully

2    submit their opposition to Defendants Chunghwa Picture Tubes, Ltd. and Chunghwa Picture

3    Tubes (Malaysia) Sdn. Bhd.'s Motion In Limine To Exclude Opinions Or Calculations Regarding

4    Actual Damages Attributable To The Chunghwa Defendants (the "MIL") as follows:

5    **I.    INTRODUCTION**

6    There is no dispute that Defendants Chunghwa Picture Tubes, Ltd. and Chunghwa Picture

7    Tubes (Malaysia) Sdn. Bhd. (collectively, "Chunghwa") conspired with the other Defendants and

8    co-conspirators to illegally fix prices for cathode ray tubes ("CRTs") in violation of the Sherman

9    Act. Chunghwa, however, applied for leniency under the Antitrust Criminal Penalty

10   Enhancement and Reform Act of 2004 ("ACPERA"), which limits the applicant's exposure to

11   any "actual damages" that it caused—i.e., "single damages" without joint and several liability.

12   *See* Pub. L. No. 108-237, § 213(a)-(b), 118 Stat. 665 (2004).

13   Chunghwa now seeks to evade *any liability whatsoever* by arguing that Plaintiffs' experts

14   have not provided an opinion – either in their reports or at deposition – on the amount of "actual

15   damages" caused by Chunghwa to Best Buy or ViewSonic. (MIL at 2:18-19.) Alternatively,

16   Chunghwa argues that Plaintiffs' market share based approach to damages does not establish

17   "actual damages" as required by ACPERA because it relies "on the theory that Plaintiffs can

18   recover for *any* allegedly price-fixed tube sold by the defendants through joint and several

19   liability." (MIL at 6:18-20.) Chunghwa's arguments are without merit.

20   First, testimony regarding Best Buy's indirect damages attributable to Chunghwa

21   constitutes a permissible explanation of opinions already expressed in Dr. Frankel's expert report

22   (the "Frankel Report") and deposition testimony. *See Danmark v. CMI USA, Inc.*, 2014 U.S.

23   Dist. LEXIS 171056, at *3 (N.D. Cal. Dec. 9, 2014). As set forth in the Frankel Report, ███

24   ███████████████████████████████████████████████████████████ To

25   do so, █████████████████████████████████████

26   ████████████████████████████████████████████

27   ───────────────────────
     [1] "Best Buy" consists of Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise

28   Services, Inc., Best Buy Stores, L.P., and Bestbuy.com, L.L.C.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1 ████████████████████████████████████████. Dr. Frankel also testified that

2 █████████████████████████ and provided Defendants ████████████████

3 ████████████████████. Thus, without question, Best Buy's indirect damages attributable to

4 Chunghwa were a component of the opinions expressed in the Frankel Report.

5      Indeed, determining Best Buy's damages attributable to Chunghwa involves nothing more

6 than a simple mathematical calculation that requires multiplying (a) Chunghwa's applicable

7 quarterly market share by (b) Best Buy's total quarterly overcharges for indirect purchases. This

8 calculation does not require anything new and is based entirely on the market share and damages

9 analysis already performed by Dr. Frankel. Moreover, Chunghwa knew precisely how Dr.

10 Frankel would proceed because he testified that █████████████████████████

11 ████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ████████████████████████████████████

14      Second, with respect ViewSonic's damages, Chunghwa is simply wrong. In Exhibit 20c

15 to the Frankel Report, Dr. Frankel clearly expresses an opinion regarding ViewSonic's damages

16 caused by Jean Co. Ltd ("Jean Co.") and Tatung Company ("Tatung"), which are Chunghwa's

17 corporate affiliates, and with which Chunghwa has an ownership/control relationship.[2]

18 Moreover, any testimony regarding ViewSonic's unallocated direct damages[3] attributable to

19 Chunghwa also constitutes a permissible explanation of opinions expressed in the Frankel Report.

20      Third, even if Dr. Frankel's testimony consists of new opinions, which it most certainly

21 does not, it will not present any harm or surprise to Chunghwa. While the expert disclosure

22 requirements set forth in Federal Rule of Civil Procedure 26 ("Rule 26") are intended to prevent

23 surprise, Chunghwa cannot claim that it would be surprised by Dr. Frankel's testimony at trial

24 where (a) ████████████████████████████████████████

25

26 [2] The ownership/control relationship between Chunghwa, Jean Co. and Tatung will be established by other evidence and not Dr. Frankel's expert testimony. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977); *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980).

27 [3] "Unallocated direct damages" reflect damages for CRT purchases where no records exist to establish the identity of the seller.

28



, (b)

, (c)

(d)

, (e)

(f)

(g)

and (h) Chunghwa declined to ask Dr. Frankel any follow-up questions.

Fourth, ACPERA's damages limitation means that Chunghwa is not subject to treble damages or joint and several liability—nothing more.  Significantly, ACPERA does not alter the standard of proof required to establish antitrust damages to evidence of "actual damages."  Rather, the standard remains that Plaintiffs must only demonstrate damages "by a just and reasonable estimate" based on relevant data.  *See Zenith Radio Corp. v. Hazeltine Research Inc.*, 395 U.S. 100, 124 (1969).  Dr. Frankel's damages calculations based, in part, on his market share analysis satisfies this relaxed standard not only when used to calculate aggregate damages, but also when used to determine Best Buy's indirect damages and ViewSonic's unallocated direct damages attributable to Chunghwa.  Tellingly, no Defendant has raised a *Daubert* challenge to Dr. Frankel's market share analysis, nor could they.  *See* Fed. R. Evid. 702-703.

For the forgoing reasons, and as will be shown in greater detail below, the MIL should be denied.

## II.   BACKGROUND

### A.   Plaintiffs' Expert Opinions Regarding Damages

#### 1.   The Expert Reports

On April 15, 2014, Plaintiffs' expert, Dr. McClave, submitted an expert report, which

(Declaration of Lucas A. Messenger ("Messenger Declaration"), Ex. B.)[4]

---

[4] On September 26, 2014, Dr. McClave submitted a rebuttal report.  (Messenger Decl., Ex. C.)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES



1   On April 15, 2014, Dr. Frankel submitted the Frankel Report.  (*Id.*, Exs. G, I.)[5]  Among

2   other things, Plaintiffs asked Dr. Frankel to ████████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████ (*Id.*, Exs. G ¶ 4, I ¶ 4.)[6]

5   Best Buy's damages attributable to Chunghwa arise from indirect purchases.  For Best

6   Buy, the exhibits to the Frankel Report include tables reflecting (a) ██████████████

7   ████████████████████████████████████████████████ (b)

8   ████████████████████████████████████████████████████

9   ████████ (c) ████████████████████████████████████████████

10  ████████████████████████████████████████████████████████

11  ████████████████████████████████████████ and (d) ██████████

12  ████████████████████████████.[7]  (*Id.*, Ex. G [Exhibits 16a-16e, 17a,

13  17b, 18, 20].)  In connection with Exhibit 18, ████████████████████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  (Frankel Decl. ¶¶ 5-6.)

17  ViewSonic's damages attributable to Chunghwa arise from direct purchases, including

18  unallocated direct purchases.  For ViewSonic, the exhibits to the Frankel Report include tables

19  that reflect (a) ██████████████████████████████████████████████

20

21  [5] Dr. Frankel submitted substantially similar versions of his expert report for each of the
    Plaintiffs, including Best Buy and ViewSonic.  (Declaration of Alan S. Frankel ("Frankel

22  Declaration") ¶ 2.)  The reports were individually tailored for the various Plaintiffs.  (Messenger
    Decl., Ex. A at [42:8-10, 42:22-45:3] (████████████████████████████

23  ████████████████████").)  The report for ViewSonic was submitted on
    June 6, 2014.

24  [6] On April 28, 2014, Dr. Frankel submitted an errata to the Frankel Report.  (Messenger
    Ex. H.)  On June 30, 2014, Dr. Frankel submitted a supplemental report (the "Frankel

25  Supplemental Report").  (*Id.*, Exs. J-K.)

26  [7] ████████████████████████████████████████████████████████

27  ████████████████████████████ (Messenger Decl., Exs. G ¶ 38, I ¶ 38.)
    Had they done so, calculating damages would have been a simple exercise of multiplying those

28  units by Dr. McClave's overcharge calculation.

OPPOSITION TO CHUNGHWA MIL TO EXCLUDE
EXPERT TESTIMONY REGARDING ACTUAL
DAMAGES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES



, (b)

(c)

, and (d)

. (Messenger Decl., Ex. I [Exhibits 16a-16c, 17, 18, 20a-20b].)  Significantly, they include a table reflecting

. (*Id.*, Ex. G [Exhibit 20b].)  In connection with Exhibit 20b,

. (Frankel Decl. ¶ 15.)

In order to determine the conspirators' share of the CRT market, as well as the corresponding damages they caused, Dr. Frankel computed the combined market share of all alleged conspirators, which includes the sales of Chunghwa, the other Defendants, their corporate affiliates, and their co-conspirators.  (Frankel Decl. ¶ 5.)

On September 26, 2014, Dr. Frankel submitted a rebuttal report (the "Frankel Rebuttal Report"), which stated that "

."  (Messenger Decl., Exs. L ¶ 4, M ¶ 4.)  Dr. Frankel also advised that he could make a "

. (*Id.*, Exs. L ¶ 6, M ¶ 6.)

**2.   Dr. Frankel's Expert Deposition Testimony**

On July 10, 2014,

. (*Id.* ¶ 13, Ex. A [203:20-204:17, 206:22-207:9, 280:3-7, 12-19].)

(*Id.*, Ex. A [280:12-19].)

. (*Id.*, Ex. A [280:20-281:3].)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████" (*Id.*, Ex. A [282:7-

3 11].)  Chunghwa did not ask any follow-up questions about this calculation.

4      **B.**     **Best Buy's Indirect Damages Attributable To Chunghwa**

5       To compute damages attributable to Chunghwa's cathode display tube ("CDT") sales

6 alone involves multiplying ████████████████ ████████████████████

7 (Frankel Decl. ¶¶ 8, 10-11.)  For example, ████████████████████████████

8 ████████████████████████████████████████████████

9 █████████████████████████████ ████████████

10 ████████████████.[8]  (Frankel Decl. ¶¶ 8, 10-11, Ex. A; Messenger Decl., Exs. G

11 [Exhibit 17b], L [Exhibit 1].)  The method used to compute damages for indirect purchase of

12 CRT televisions attributable to Chunghwa is identical.  (Frankel Decl. ¶¶ 8, 12, Ex. B.)

13      **C.**     **ViewSonic's Unallocated Direct Damages Attributable To Chunghwa**

14       To compute ViewSonic's unallocated direct damages attributable to Chunghwa based on

15 purchases from Jean Co. and Tatung alone involves multiplying ████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 █████████████████████████.  (Frankel Decl. ¶ 15.)  Thus,

19 ████████████████████████████████████████████████

20 (Frankel Decl. ¶ 15, Ex. C; Messenger Decl., Exs. I [Exhibit 20b], M [Exhibit 1].)

21 **III.**    **ARGUMENT**

22      **A.**     **The Standard For Evaluating Admissibility Of Expert Testimony**

23       An expert report must "contain a complete statement of all opinions to be expressed and

24 the basis and reasons therefor; [and] the data or other information considered by the witness in

25 ────────────────

[8] At his deposition, Dr. Frankel testified ███████████████████████

26 ████████████████████████████████████████████████

27 ████████████████████████████████████████████████

28 ████████ (Frankel Decl. ¶ 9.)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    forming the opinions." Fed. R. Civ. P. 26 (a)(2)(B).  The purpose of this rule is to prevent unfair

2    surprise to the opposing party or an ambush at trial.  *Hall v. City of Fairfield*, 2012 U.S. Dist.

3    LEXIS 48616, at *11 (E.D. Cal. Apr. 4, 2012).  A court may permit late disclosure of an expert

4    opinion if it is either substantially justified or harmless.  *See Goodman v. Staples the Office*

5    *Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) ("The only exceptions to Rule 37 (c)(1)'s

6    exclusion sanction apply if the failure to disclose is substantially justified or harmless.").

7    Significantly, Rule 26 contemplates that the expert will supplement, elaborate upon, and explain

8    his report in his oral testimony.  *See Hall*, 2012 U.S. Dist. LEXIS 48616, at *11-12 (quoting

9    *Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007)).[9]

10        Thus, the initial question for the Court is (a) whether Plaintiffs' expert reports express an

11   opinion regarding damages attributable to Chunghwa, or (b) whether testimony by Dr. Frankel at

12   trial regarding damages attributable to Chunghwa would constitute a reasonable explanation of

13   the opinions expressed in his expert report.  *See Danmark*, 2014 U.S. Dist. LEXIS 171056, at *3;

14   *nCube Corp. v. SeaChange Int'l, Inc.*, 809 F. Supp. 2d 337, 347 (D. Del. 2011) (finding courts do

15   not require "verbatim consistency with the report" and allow a reasonable elaboration of opinions

16   expressed in the expert's report).  A key consideration "is whether the objecting party had notice

17   of the subject matter of the testimony based on the contents of the report and elaborations made

18   during any deposition testimony."  *nCube Corp.*, 809 F. Supp. 2d at 347.

19   **B.    Testimony Regarding Best Buy's Indirect Damages Attributable To**

20   **Chunghwa Constitutes A Permissible Explanation**

21        Dr. Frankel's testimony is not limited solely to the language contained in his expert

22   reports.  *See Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006) (Rule

23   "26(a)(2)(B) does not limit an expert's testimony simply to reading his report.  No language in the

24   rule would suggest such a limitation.").[10]  Indeed, Dr. Frankel is both allowed – and expected – to

---

[9] *See also* 8A Wright & Miller: Federal Practice & Procedure, § 2031.1, p. 84-85 (2014 Supplement) ("At the same time, the expert is not limited to reading his report from the stand; reasonable elaboration and explanation is expected and appropriate.")

[10] *Mineabea Co., LTD. v. Papst*, 231 F.R.D. 3, 8 (D.D.C. 2005) (holding defendant's objections to expert testimony took "a far too narrow view of what is acceptable direct expert testimony," because an expert's testimony is not limited to the line-by-line language in his report, rather an

OPPOSITION TO CHUNGHWA MIL TO EXCLUDE
EXPERT TESTIMONY REGARDING ACTUAL
DAMAGES

elaborate, explain, and expand upon the opinions or issues addressed in his reports. *See Koch v. Greenberg*, 14 F. Supp. 3d 247, 268 (S.D.N.Y. 2014) (overruling objection to expert testimony that included additional research bolstering opinion expressed in expert report because experts may elaborate upon their reports).

Here, Dr. Frankel told Chunghwa in his expert report and at deposition ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ To do so, Dr. Frankel ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████. And in the backup production to the Frankel Report, ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████. Significantly, Dr. Frankel also told Chunghwa at his deposition several times ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Dr. Frankel even disclosed to Chunghwa at his deposition ████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████, but Chunghwa declined to question him further on this opinion. *See Hess v. Ameristep*, 2008 U.S. Dist. LEXIS 93895, at *7 (C.D. Ill. Nov. 17, 2008) (finding lack of supplemental report ordinarily does not violate Rule 26 if supplemental opinions are disclosed at expert's deposition); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 646, 660 n.13 (N.D. Ill. 2006) (finding expert testimony at deposition on issue may satisfy disclosure requirements under Rules 26(a)(2) and 37(c)(1)).

Finally, Dr. Frankel advised Chunghwa that ████████████████████████ ████████████████████████████████████

expert is permitted a certain degree of latitude to "expand upon and explain the opinions and conclusions in his expert report")

[11] Thus, contrary to Chunghwa's assertions, Dr. Frankel did in fact perform "the underlying work" in the Frankel Report necessary to permit Dr. Frankel to determine ViewSonic's unallocated direct damages and Best Buy's indirect damages attributable to Chunghwa. (MIL at 8:10-11.)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

3  Determining Best Buy's indirect damages attributable to Chunghwa is exactly this type of

4  modification and simple adjustment. *See Depuy Synthes Prods., LLC v. Globus Med., Inc.*, 2014

5  U.S. Dist. LEXIS 61181, at *11-12 (D. Del. Mar. 25, 2014) (finding that expert's testimony

6  providing an example of a material that would not fit within court's construction of "non-

7  metallic" materials was a permissible elaboration of opinions contained in the expert report even

8  though example was not contained in the expert report).[12]

9  No new analysis is required, and Dr. Frankel is only providing a permissible explanation

10  of previously disclosed opinions regarding the conspirators' combined market share, Chunghwa's

11  market share, and Best Buy's indirect damages. *See Tracinda Corp. v. DaimlerChrysler AG*, 362

12  F. Supp. 2d 487, 507 (D. Del. 2005) (finding expert "report was not materially changed by the use

13  of additional, newer transactions, because those additions changed nothing regarding the

14  underlying analysis and only served to make the report more current").  Thus, if allowed to testify

15  regarding this issue, Dr. Frankel would not be presenting an entirely new opinion. *Cf. Rembrandt*

16  *Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 663 (M.D. Fla.

17  2012) (finding expert did not permissibly elaborate on his analysis where he "disclosed an

18  entirely new testing protocol that formed the basis for his expert opinion" at trial); *City of*

19  *Owensboro v. Ky. Utils. Co.*, 2008 U.S. Dist. LEXIS 81945, at *12 (W.D. Ky. Oct. 14, 2008)

20  (finding "courts were not concerned with experts that merely elaborate upon their expert report,

21  but experts that testify as to 'a wholly new, previously unexpressed opinion'").

22  A similar objection was raised in the LCD litigation (the "LCD MDL").[13]  (Messenger

23  Decl., Exs. D [Docket No. 8452 at 6:1-7:27], Ex. F [2954:25-2958:14].)  There, after the district

---

[12] *See also EEOC v. Freemen*, 626 F. Supp. 2d 811, 823 (M.D. Tenn. 2009) (finding expert testimony was the sort of elaboration that is removed from scope of Rule 26 where in response to court's question regarding when claimant "was likely to have stopped working along the work life spectrum [the expert] provided," the expert testified that claimant likely would retire closer to age 67 because she was single and did not have significant savings—even though these factors were not discussed in the expert's report).

[13] (United States District Court for the Northern District of California, No. M 07-1827 SI, MDL No. 1827.)

1   court ruled that NEC was not a viable conspirator, defendants moved to exclude damages

2   opinions by Best Buy's experts that eliminated NEC's sales data from market share calculations,

3   claiming that it would violate Rule 26 because these opinions were not included in expert reports.

4   (Messenger Decl., Ex. D [Docket No. 8452 at 6:20-23].)[14] Judge Illston denied the motion, while

5   implicitly adopting Best Buy's argument that any damages adjustments to exclude NEC – or any

6   other manufacturer found to not have conspired – was a simple matter of "bean-counting" that did

7   not involve creating a new price index. (Messenger Decl., Exs. E [Docket No. 8476 at 8:1-5, 20-

8   23, 22:22-23:25], Ex. F [2958:4-7].) The same result is warranted here where it is a simple matter

9   of ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

10  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

11        In short, the Court should conclude that any testimony regarding Best Buy's damages

12  attributable to Chunghwa is a permissible explanation of Dr. Frankel's previously disclosed

13  opinions. *See Lucent Techs. Inc. v. Gateway, Inc.*, 2007 U.S. Dist. LEXIS 36246, at *15-16 (S.D.

14  Cal. May 16, 2007) (finding declaration submitted in opposition to motion for summary judgment

15  was an elaboration on opinions previously expressed where the report compared the overall

16  function of the patented algorithm and the allegedly infringing devices, but the more detailed

17  declaration explained "that the algorithm run" on the allegedly infringing devices "is based on the

18  value of the operands that follow the commands" as opposed to "the number of operands" used

19  by the patented algorithm).

20  **C.     The Frankel Report Clearly Expresses An Opinion Regarding ViewSonic's**

21  **Damages Attributable To Chunghwa**

22        Chunghwa argues that none of Plaintiffs' expert reports provide an opinion regarding

23  Plaintiffs' "actual damages" attributable to Chunghwa's sales of CRTs. (MIL at 4:14-15.) With

24  respect to ViewSonic, however, the Frankel Report expressly identifies damages attributable to

25  Jean Co. and Tatung. (Messenger Decl., Ex. I [Exhibit 20b].) Jean Co. and Tatung are

26  Chunghwa's corporate affiliates, and Chunghwa possesses an ownership/control relationship with

27  ────────────────

[14] "It's not in their report. If you got all of this dumped on you in discovery, you'd want a
28  deposition. That's the only way to cut through all this." (Messenger Decl., Ex. F [2957:21-24].)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    them.[15]  To proceed against Chunghwa as a direct purchaser, ViewSonic must still demonstrate

2    that relationship to satisfy the ownership/control exception to *Illinois Brick,* but there is no

3    requirement that the evidence must come from Dr. Frankel. Thus, Dr. Frankel's testimony

4    regarding ViewSonic's damages attributable to Chunghwa – vis–à–vis its ownership/control

5    relationship with Jean Co. and Tatung – is relevant, and Rule 26 cannot prevent Dr. Frankel's

6    testimony because it is clearly expressed in the Frankel Report.  *See* Fed. R. Civ. P. 26(a)(2)(B).

7          Moreover, as set forth above, Dr. Frankel is both allowed and expected to explain his

8    opinion regarding unallocated direct damages.  *Danmark,* 2014 U.S. Dist. LEXIS 171056, at *3.

9    Here, Exhibit 20b to the Frankel Report █████████████████████████████████████

10   ████████████████████████████████████████████████████████████

11   ███████████████████████████ Moreover, as backup to Exhibit 20b, Dr.███

12   ████████████████████████████████████████████████████████████

13   ██████████████████████████████ Computing ViewSonic's unallocated

14   direct damages is another simple mathematical exercise that involves multiplying ███████

15   ████████████████████████████████████████████████████████████

16   ████████████.  And both (a) and (b) in this equation are clearly derived from the analysis

17   already performed in the Frankel Expert Report and in the backup provided with Exhibit 20b.

18   (*See* Frankel Decl. ¶ 14.)  Thus, any testimony regarding ViewSonic's unallocated directed

19   damages is permissible explanation of the opinions previously expressed by Dr. Frankel.  *See*

20   *Dow Chem. Co. v. Nova Chems. Corp.*, 2010 U.S. Dist. LEXIS 50101, at *6 (D. Del. May 20,

21   2010) (finding supplemental declaration appropriate where expert "reiterated his opinion and

---

23   [15] *See generally* MDL Docket No. 3263, ViewSonic's Opposition to Chunghwa's Motion for
     Partial Summary Judgment for Lack of Standing as to ViewSonic Corporation at 2-3
24   ("**Ownership**: Tatung owned Chunghwa for the majority of the relevant time period; **Formation**:
     Tatung's former Chairman formed Chunghwa; **Interlocking Directorates**: Tatung and
25   Chunghwa have shared a Chairman since 2007, and the Chairman has significant responsibility
     for dictating the strategic direction of both companies. Beyond the Chairman position, the
26   companies have also consistently shared directors, most of whom have had leadership roles at the
     companies. Further, Jean's Chairman has also served as Chunghwa's Chairman. All of these
27   individuals are from the same family in Taiwan – the Lin family; … **Exchange of Executives**:
     Every chairman of Tatung and Chunghwa has been a son of former Tatung Chairman and
28   Chunghwa founder, T.S. Lin.")

---

1    elaborated on how he reached that opinion by providing greater detail on the processes he had

2    mentioned").

3        **D.**    **Chunghwa Anticipated Dr. Frankel's Testimony And Will Suffer No Harm**

4        In conclusory fashion, Chunghwa contends that it would be unfairly surprised if Dr.

5    Frankel offered an opinion at trial regarding damages attributable to Chunghwa.  (MIL at 6:16-

6    18.)  But Chunghwa actually anticipated this testimony based on the Frankel Report and Dr.

7    Frankel's testimony.

8        Indeed, Dr. Frankel told Chunghwa how he would calculate damages attributable to

9    Chunghwa based on the market share and damages analyses he had already performed, and

10    Chunghwa elected not to ask him any follow-up questions.  *See Miller v. Lenz*, 2010 U.S. Dist.

11    LEXIS 4787, at *18 (N.D. Ill. Jan. 20, 2010) (finding plaintiff's failure "to ask a single follow up

12    question at the deposition … is further evidence that the answer did not come as a surprise" in

13    light of the expert report); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg.,*

14    *Sales Practices & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1069 (C.D. Cal. 2013) (finding no

15    harm admitting opinions that were not timely disclosed because expert was deposed on them).

16        The district court's opinion in *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 643 F.

17    Supp. 2d 471 (S.D.N.Y. 2009), particularly instructive on this point.  In that case, Exxon sought

18    to preclude an expert from testifying about Exxon's market share because the expert report did

19    not include an actual percentage market share.  *Id.* at 481.  The expert report, however, included

20    "a critique of defense expert methodologies, the basis for concluding that market share should be

21    calculated from Form 782C data, and instructions on how to perform the calculation."  *Id.*

22        The district court first determined that Rule 26 does not limit an expert to simply reading

23    his report and "'contemplates that the expert will supplement, elaborate upon, explain and subject

24    himself to cross-examination upon his report.'"  *Id.* (quoting *Doane Pet Care Co.*, 470 F.3d at

25    1203). The district court then concluded:

26            [t]he absence of a calculated percentage share worked no unfair
surprise on Exxon. [The expert] opined that 782C data was a workable
27            means to calculate market share, provided the basis for that conclusion,
and spelled out precisely how to perform the exceedingly simple
28            calculation.  Exxon has copies of its own 782C forms and could easily

Master Case No. 3:07-cv-05944-SC
60945267

- 12 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

obtain the aggregate 782C data.  Upon receiving [the expert]'s report, Exxon had all the information it needed to take one number and divide it by the other.  Rule 26 prevents one party from "sandbagging" an opposing party with new evidence.  [The expert]'s omission of an obvious and readily calculated result which has now been revealed more than thirty days before trial followed a complete disclosure of his methodology and factual basis. This hardly rises to the level of unacceptable sandbagging.

*Id.* at 482.

In much the same way, the Frankel Report and Frankel Rebuttal Report set forth ███████████████████████████████████████████████████████ ███████████████████████████████████████████.  As part of the backup to the Frankel Report, Chunghwa was provided ████████████ ███████████████████████████████████████████████████████████.  Moreover, Dr. Frankel testified that he:  (a) ████████████████████████████; (b) ████████████████████████; and (c) ██████████████████████████████████████████████████████████

At that point, Chunghwa had all the information it needed, and the damages attributable to Chunghwa for both Best Buy and ViewSonic "w[ere] obvious and readily calculated." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 643 F. Supp. 2d at 482.  There simply is no unfair surprise to Chunghwa.

> **E.**     **Plaintiffs' Market Share Approach Is Sufficient To Demonstrate Antitrust Damages Attributable To Chunghwa**

As discussed, Dr. Frankel calculated global indirect damages based on Defendants' market share.   Defendants have not challenged this methodology.  Chunghwa, however, erroneously claims that Dr. Frankel's market share methodology "cannot be used to determine actual damages attributable to a single defendant's sales." (*See, e.g.*, MIL at 2:6-10.)  This argument ignores common sense, ACPERA's plain language, and sixty years of Supreme Court jurisprudence setting "relaxed damages rules" for antitrust plaintiffs. *J. Truett Payne Co. v.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  *Chrysler Motors Corp.*, 451 U.S. 557, 567 (1981).[16]

2         First, ACPERA does not require that Plaintiffs' damages calculations be based on "actual

3  purchases of Chunghwa's CRTs." (MIL at 8:6-8.). For purposes of ACPERA, "actual damages"

4  means nothing more than non-treble damages. *See In re Aftermarket Auto. Lighting Prods.*

5  *Antitrust Litig.*, 2013 U.S. Dist. LEXIS 125287, at *5-6 (C.D. Cal. Aug. 26, 2013) (finding that if

6  leniency applicant satisfies its cooperation obligation under ACPERA, it "is liable only for actual

7  — not treble — damages and only for damages from its own product sales, not from the sales of

8  its co-conspirators").[17] In other words, ACPERA's damages limitation only prevents Chunghwa

9  from being subject to treble damages and joint and several liability, but it in no way affects the

10  standard of proof required to establish antitrust damages for Chunghwa by requiring evidence of

11  "actual damages." *See Oracle Am., Inc.*, 817 F. Supp. 2d at 1132 (quoting 150 Cong. Rec.

12  S3614) ("In other words, the total liability of a successful leniency applicant is "limited to single

13  damages without joint and several liability.").

14         Second, an antitrust plaintiff has a lowered standard of proof when it comes to the amount

15  of damages, which it only needs to demonstrate "by a just and reasonable estimate" supported by

16  relevant data. *J. Truett Payne Co.*, 451 U.S. at 566; *Zenith Radio Corp.*, 395 U.S. at 124 (finding

17  damages may be demonstrated by "a just and reasonable estimate of the damage based on

18  relevant data," including "probable and inferential, as well as direct and positive proof"); *Bigelow*

19  *v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946) (same). This standard was not altered by

20  ACPERA.

21  _____

22  [16] *See also Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 573 (1990) (reaffirming "traditional rule" that excuses "antitrust plaintiffs from an unduly rigorous standard of proving antitrust injury");

23  *Knutson v. Daily Review, Inc.*, 548 F.2d 795, 811 (9th Cir. 1976) ("Even as to this minimal quantum of injury, the standard is relaxed; otherwise, it would defeat the loose standard applied

24  even to the amount of damages in antitrust cases.").

25  [17] "ACPERA was designed to limit damages for cooperating conspirators to the actual damages attributable to their own conduct, rather than facing treble damages." *Oracle Am., Inc. v. Micron*

26  *Techn., Inc., et al.*, 817 F. Supp. 2d 1128, 1132 (N.D. Cal. 2011) (citing 150 Cong. Rec. S3614). Indeed, ACPERA's legislative history demonstrates that ACPERA sought to provide "'increased

27  incentives for antitrust conspirators to cooperate with the [DOJ]'by limiting 'a cooperating company's civil liability to actual, rather than treble, damages in return for the company's cooperation in both the resulting criminal case as well as any subsequent civil suit based on the

28  same conduct.'" *Id.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Here, Dr. Frankel's damage analysis and market share model satisfy the lenient standard

2    for antitrust damages.  *See AT & T Mobility LLC v. AU Optronics Corp. (In re TFT-LCD Flat*

3    *Panel Antitrust Litig.)*, 2012 U.S. Dist. LEXIS 166194, at *74-77 (N.D. Cal. Nov. 19, 2012)

4    (finding plaintiffs in antitrust cases benefit from an "especially lenient burden" and "may resort to

5    generalized methods of proof").  While damages based on data reflecting every CRT Product

6    containing a Chunghwa-manufactured CRT that was purchased directly or indirectly may well be

7    more accurate, *Defendants did not provide that data*.  Moreover, it is beside the point because

8    only a just and reasonable estimate based on relevant data is required.

9    To arrive at his damages calculations and determine the conspirators' market share,

10   ████████████████████████████████████████████████████████████████████

11   ██████████████████████████████████████.  To account for CRTs that were

12   manufactured by non-conspirators, ████████████████████████████████████

13   ████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████

16   ██████████████████████████████████████.  Thus, Dr. Frankel's

17   damages calculations based on his market share approach are a just and reasonable estimate of

18   damages supported by relevant data.  *See Best Buy v. AU Optronics Corp. (In re TFT-LCD*

19   *Antitrust Litig.)*, 2013 U.S. Dist. LEXIS 168561, at *188-89 (N.D. Cal. Nov. 20, 2013) (finding

20   jury may make a just and reasonable estimate of damages based on relevant data).  To the extent

21   Chunghwa takes issue with the foundation upon which Dr. Frankel's expert opinion rests, its

22   concerns go to weight, rather than admissibility.  *See Sentius Int'l, LLC v. Microsoft Corp.*, 2015

23   U.S. Dist. LEXIS 10423, at *34 (N.D. Cal. Jan. 27, 2015).

24   There is simply no requirement that Plaintiffs establish damages attributable to Chunghwa

25   with the certainty that Chunghwa demands.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*,

26   2012 U.S. Dist. LEXIS 21696, at *34 (N.D. Cal. Feb. 21, 2012) (finding there is no requirement

27   that plaintiffs prove antitrust injury "with certainty").[18]  Moreover, in a related context, courts

28   ─────────────────
[18] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) (cautioning against the

Robins Kaplan LLP
ATTORNEYS AT LAW
LOS ANGELES

have often permitted antitrust plaintiffs to estimate lost profit damages utilizing market share estimates. *See Zenith Radio Corp.*, 395 U.S. at 116, 116 n.11 (finding damages under yardstick method could be determined by comparing plaintiff's market share in United States to its market share in Canada); *LePage's, Inc. v. 3M*, 324 F.3d 141, 165 (3d Cir. 2003) (allowing expert testimony that determined lost profits based on a market share model where assumptions going into the model were grounded in the past performance of the parties and their projections).

Finally, as an admitted antitrust conspirator, Chunghwa cannot reasonably complain about this method of proving damages as too uncertain or lacking complexity. *See Bigelow*, 327 U.S. at 265 ("The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created."); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931) ("The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.").

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Chunghwa's MIL in its entirety.

DATED: February 27, 2015          /s/ *Roman M. Silberfeld*

Roman M. Silberfeld
Bernice Conn
David Martinez
Lucas A. Messenger
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
Email: rsilberfeld@robinskaplan.com
          bconn@robinskaplan.com
          dmartinez@robinskaplan.com
          lmessenger@robinskaplan.com

"wholesale exclusion" of expert testimony, and stating that the ultimate assessment of the weight to be accorded to an expert's opinion should be made by the jury at trial after "[the] presentation of contrary evidence, . . . [v]igorous cross-examination, . . . and careful instruction on the burden of proof.").

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Elliot S. Kaplan
K. Craig Wildfang
Laura E. Nelson
ROBINS KAPLAN LLP
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
Telephone:  (612) 349-8500
Facsimile:  (612) 339-4181
Email:  ekaplan@ robinskaplan.com
          kwildfang@ robinskaplan.com
          lnelson@ robinskaplan.com

*Counsel For Plaintiffs Best Buy Co., Inc., Best Buy
Purchasing LLC, Best Buy Enterprise Services, Inc.,
Best Buy Stores, L.P., and Bestbuy.com, L.L.C.*

/s/  *Jerome A. Murphy*

Jerome A. Murphy (pro hac vice)
Matthew J. McBurney (pro hac vice)
Astor H.L. Heaven (pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-624-2500
Facsimile: 202-628-5116
E-mail: jmurphy@crowell.com
mmcburney@crowell.com
aheaven@crowell.com

Jason C. Murray (CA Bar No. 169806)
Robert B. McNary (CA Bar No. 253745)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213-443-5582
Facsimile: 213-622-2690
Email: jmurray@crowell.com
rmcnary@crowell.com

*Counsel for Plaintiff ViewSonic Corp.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

---

Master Case No. 3:07-cv-05944-SC

60945267

- 17 -

OPPOSITION TO CHUNGHWA MIL TO EXCLUDE
EXPERT TESTIMONY REGARDING ACTUAL
DAMAGES