# EXHIBIT D

Christopher M. Curran (*pro hac vice*)
Email: ccurran@whitecase.com
J. Mark Gidley (*pro hac vice*)
Email: mgidley@whitecase.com
Martin M. Toto (*pro hac vice*)
Email: mtoto@whitecase.com
John H. Chung (*pro hac vice*)
Email: jchung@whitecase.com
WHITE & CASE
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

*Attorneys for Toshiba Corporation, Toshiba Mobile Display Co., Ltd., Toshiba America Electronic Components, Inc., and Toshiba America Information Systems, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Master File No.: 3:07-md-01827 SI<br><br>MDL No. 1827 |
| This Document Relates to:<br><br>*Best Buy Co., Inc., et al. v. Toshiba Corp., et al.,* Case No. 12-CV-4114 SI | **THE TOSHIBA ENTITIES' TRIAL BRIEF TO STRIKE THE TESTIMONY OF BEST BUY'S EXPERTS, B. DOUGLAS BERNHEIM AND ALAN FRANKEL**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date: August 14, 2013<br>Time: 8:30 a.m.<br>Dept: Courtroom 10, 19th Floor<br>Judge: Hon. Susan Illston |

**ARGUMENT**

This Court allowed Best Buy to bring their damages experts, Professor B. Douglas Bernheim and Dr. Alan Frankel, to trial "out of order in terms of the proof" but ruled that "if [Best Buy] ultimately [is] not able to get the foundational evidence into the record, then [the testimony] will be stricken." Proceedings, Trial Tr. 1365:12-19 (Aug. 5, 2013). Best Buy has not established the foundational evidence to support their experts' analyses by the close of their case, in that: (1) Best Buy has not established liability for the majority of entities assumed by the experts to be co-conspirators; (2) the experts' damages calculations have not been updated to reflect the Court's ruling on NEC; and (3) Best Buy has not shown that the alleged conspirators each participated in the conspiracy for the full Relevant Period, August 1998 to December 2006. The opinions of both experts should now be stricken from the record.

As is clear under Ninth Circuit law, "where foundational facts demonstrating relevancy . . . are not sufficiently established, exclusion of proffered expert testimony is justified." *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996) (quoting *LuMetta v. United States Robotics, Inc.*, 824 F.2d 768, 771 (9th Cir. 1987)); *see also Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830-32 (9th Cir. 2001) (affirming exclusion of three expert opinions that lacked factual foundation on the record). Professor Bernheim's and Dr. Frankel's testimony is not based on "sufficient facts or data" under Federal 702(b) of Evidence and their inclusion on the record is contrary to Ninth Circuit law.

**I.    The Damages Calculations by Best Buy's Experts Include Panel Manufacturing Entities as to Which Best Buy Has Not Offered Proof of Joining the Conspiracy**

In order for Best Buy to claim damages on purchases of LCD products, it must first establish that the purchased product contained an LCD panel affected by the alleged conspiracy. *See, e.g.*, Order as to Nonparty Co-Conspirators at 3, MDL Dkt. No. 7109 (Nov. 6, 2012). This Court has determined that Best Buy may use the market share of alleged conspirators as a proxy to determine which LCD products contained a price-fixed panel. *See* Order on Decertification at 4, MDL Dkt. No. 4683 (Jan. 26, 2012). Here, both Professor Bernheim and Dr. Frankel assumed a conspiracy that included a number of panel manufacturers (and other entities) and then

calculated damages. To do so, Best Buy's experts first calculated periodic average overcharges on specific products in dollars and multiplied that amount by the total dollars spent by Best Buy on that product during that period, pro-rated by the contemporaneous panel share of the conspirators they assumed to be in the conspiracy. *See, e.g.*, Douglas Bernheim (expert) Test., Trial Tr. 1847:18-25; Alan Frankel (expert) Test., Trial Tr. 1980:21-1981:6.

Best Buy may not recover damages for LCD finished product purchases incorporating panels made by those entities it has not shown knowingly joined the conspiracy. *See, e.g.*, *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 463 (1978) ("The jury was informed . . . that liability could only be predicated on the knowing involvement of each defendant, considered individually . . . ."); *In re Hotel Tele. Charges*, 500 F.2d 86, 89 (9th Cir. 1974) ("In order substantially to establish each hotel's involvement in a conspiracy to violate the antitrust laws, each hotel's knowing participation would be a requisite element of proof."). Indeed, this Court's order allowing for similar methodology in the class action relied on the fact that plaintiffs would be able to establish liability for the alleged participants in the conspiracy in order to determine which class members could establish damages. *See* Order on Decertification at 4 ("*Assuming liability is established* for the remaining defendants at trial, it would be inappropriate to require potential class members to produce proof of class membership to an absolute certainty.").

Best Buy's experts included at least thirty-five entities as participating in the conspiracy when calculating Best Buy's damages, as instructed by counsel. *See* Ex. 8252. Dr. Frankel testified that the "tally of [the] companies that go into [his] market share adjustment" included these thirty-five entities:

> Acer Display, AUO, Chi Mei, Chunghwa, Epson, HannStar, Hitachi, Hydis Technologies Co., Ltd. f/k/a BOE Hydis Technology Co., Ltd., ID Tech, IPS Alpha, Koninklijke Philips Electronics N.V. (a/k/a Royal Philips Electronics N.V.), LG Display, LG Electronics, LG Innotek, Matsushita Electric Industrial Co., Mitsubishi Electronics Corporation, Mitsui & Co. (Taiwan) Ltd., Mitsui & Co., Ltd., NEC LCD Technologies, Ltd., Optrex Corporation, Panasonic Corporation and Panasonic Corporation of North America (f/k/a Matsushita Electric Corporation of America) Philips Electronics North America Corporation, Quanta Display, Inc., Samsung SDI Co., Ltd. and Samsung SDI America, Inc., Samsung SEC, Sanyo Consumer Electronics Co., Ltd. (f/k/a Tottori Sanyo Electric Co.) Seiko Epson Corporation, Sharp, Toppoly Optoelectronics Corp., Toshiba, Unipac Optoelectronics, NEC Electronics America, Inc., and Mitsui & Co. (U.S.A.), Inc.

*See* Alan Frankel (expert) Test., Trial Tr. 1980:21-1981:6; Ex. 8252. The exact number of entities considered by the experts is unclear, because Best Buy has identified some alleged co-conspirators by specific name (*e.g.*, "NEC LCD Technologies, Ltd."), but have only referred to others by general corporate name (*e.g.*, "Toshiba"). *See* Ex. 8252. Of those thirty-five entities, the jury could not reasonably conclude from the record evidence that at least twenty of these entities knowingly participated in the conspiracy.

As set forth in the bullets below, Best Buy has produced no evidence that any of the following twenty entities reached an agreement regarding prices of LCD panels with any of their competitors. It is Best Buy's burden to show an *agreement* for *each* entity it alleges participated in the conspiracy. *See, e.g.*, *Hotel Tele. Charges*, 500 F.2d at 89; *see also* Order on Conspirators Not Alleged in the Complaints at 9, MDL Dkt. No. 7419 (Dec. 26, 2012) (dismissing claims for panel purchases by certain manufacturers). Best Buy's proof as to these entities is summarized below:

- <u>Best Buy has presented no evidence that the following eight entities reached an agreement to fix prices of TFT-LCD panels, nor has it shown that these companies ever participated in any information exchanges with competitors</u>: IPS Alpha; LG Innotek; Matsushita Electric Industrial Co.; Mitsui & Co., Ltd.; Mitsui & Co., (Taiwan), Ltd.; Mitsui & Co. (U.S.A.), Inc.; Koninklijke Philips Electronics N.V (Royal Philips Electronics N.V.); Philips Electronics North America Corporation.

- <u>Best Buy has presented no evidence that the following two entities entities reached an agreement to fix prices of TFT-LCD panels. Best Buy has presented limited evidence that Crystal Meeting participants possessed some price or supply information of these entities, without identifying the source of that information</u>: Unipac Optoelectronics; Quanta Display Corp.[1]

- <u>Best Buy has presented no evidence that the following nine entities reached an agreement to fix prices of TFT-LCD panels. Best Buy has presented limited evidence that the following companies had one to three information exchanges over the eight years of the Relevant Period and/or Crystal Meeting participants possessed some price or supply information of these entities, without identifying the source of that information</u>: Acer Display; ID Tech; Mitsubishi Electronics Corporation;[2] Optrex Corp.; NEC LCD Technologies; NEC Electronics America, Inc.; Panasonic Corporation; Panasonic Corporation of America; Toppoly Optoelectronics.

---

[1] The Crystal Meeting attendees considered inviting Quanta, but ultimately decided against inviting Quanta because Quanta display's parent company was a finished product manufacturer and customer of the Crystal Meeting Participants. *See, e.g.*, Ex. 1486; Brian Lee (Chungwha) Test., Trial Tr. 287:4-20. There is testimony on the record that the Crystal Meeting participants often gathered public information about non-participants. *See, e.g.*, Brian Lee (Chungwha) Test., Trial Tr. 376:16-377:2; Sonia Chen (Samsung) Test., Trial Tr. 765:6-767:10.

[2] Mitsubishi was specifically invited to attend the Crystal Meetings, but affirmatively declined to attend. *See, e.g.*, Ex. 9; Brian Lee (Chungwha) Test., Trial Tr. 316:1-20, 381:23-382:18.

- Best Buy has presented no evidence that the following entity reached an agreement to fix prices of TFT-LCD panels. Plaintiffs have only presented evidence that the following entity had periodic information exchanges during a single year over the relevant eight year period: Hydis Technologies Co., Ltd. (BOE Hydis Technology Co., Ltd.).

Even viewed in the light most favorable to Best Buy, this limited (or nonexistent) circumstantial evidence falls far short of meeting Best Buy's burden to establish liability in an antitrust case. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 588 (1986) ("[A]ntitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case"); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984) ("[T]here must be evidence that tends to exclude the possibility of independent action . . ."). The very existence of such entities as linked to the conspiracy is likely to surprise the jury since Best Buy's counsel has only ever identified nine companies (by corporate family name) as participating in the alleged conspiracy. *See, e.g.*, Silberfeld Opening, Trial Tr. 219:18-220:2 ("So let's turn to what this case is about. This case is about . . . a conspiracy that the evidence we believe will show lasted between 1998 and 2006. It involves firms in three countries. In Japan, it involves Toshiba, Epson, Sharp and Hitachi. . . . From Taiwan, it involves four firms. . . . And from Korea, there are two firms involved in this, and they are LG and Samsung.").

There is no factual basis on which either Professor Bernheim or Dr. Frankel may assume that these twenty entities — more than two-thirds of the thirty-five entities the experts assumed to be conspirators — knowingly joined the conspiracy alleged by Best Buy. *See* Preliminary Instructions, Trial Tr. 215:13-18 ("To prevail against a defendant on a price-fixing claim, under either federal law or state law, a plaintiff must initially prove that an agreement to fix the prices of LCD panels existed and that the defendant knowingly -- that is, voluntarily and intentionally -- became a party to that agreement."). As Dr. Frankel testified, even the conclusion that a single entity was not a member of the conspiracy would render his damages calculations unreliable, let alone two-thirds of the assumed participants. *See* Alan Frankel (expert) Test., Trial Tr. 1982:4-7 ("**Q** Okay. But if you take one out, it's going to have an effect. Correct? **A** *It would have an effect*. And then I would have to make an adjustment.") (emphasis added).

## II. The Experts' Damages Figures Have Not Been Updated To Reflect Liability Rulings By the Court

Dr. Frankel testified that he "ha[s] not had a chance to update [his] table" based on changes made to the composition of alleged "indirect" and "direct" purchases made shortly before Dr. Bernheim's testimony last week and after the Court's recent Order concerning NEC. Alan Frankel (expert) Test., Trial Tr. 1983:12-1985:4; s*ee also* Order re NEC, MDL Dkt. No. 8436 (Aug. 9, 2013). Dr. Frankel testified that Professor Bernheim calculated damages for those identified as "direct" purchases, while Dr. Frankel calculated damages for all other purchases. *See, e.g.*, Alan Frankel (expert) Test. at 1921:6-1922:4. By failing to update his data, Dr. Frankel's calculations are rendered ambiguous as to which entities Best Buy were excluded from the "direct" bucket. More concerningly, Dr. Frankel's analysis of conspirator market share apparently still include panel sales from ***NEC Electronics America, Inc.*** (*see* Ex. 8252), an entity explicitly excluded from this litigation *twice*. *See* Order re NEC at 1-2.

Professor Bernheim's analysis is particularly affected by the exclusion of the NEC entities. As shown in Professor Bernheim's backup data, only NEC Electronics America, Inc. produced data regarding panel sales in this litigation. *See* Bernheim Expert Report at Appendix C-6 (Dec. 15, 2011) (identifying NEC Electronics America, Inc. as "NECELAM"), attached as Ex. A to Declaration of Mark Gidley in Support of The Toshiba Entities' Trial Brief to Strike the Testimony of Best Buy's Experts. Professor Bernheim's Fisher Price Index heavily relies on NEC data regarding its panel sales between 1996 and 2000. If Professor Bernheim excluded NEC Electronics America, Inc. from his data set, he would need to construct an entirely new price index. This would clearly be contrary to Federal Rule 26 of Civil Procedure. Fed. R. Civ. P. 26(a)(3) (requiring disclosure of the basis for witness testimony 30 days before trial).

## III. Because Best Buy Includes All Sales of All Alleged Co-Conspirators At All Times Between 1998 and 2006, Its Damages Estimates Are Unreliable

Professor Bernheim conceded that he includes panel sales made by all panel manufacturers at all times between 1998 and 2006 in his damages calculations. *See* Douglas Bernheim (expert) Test., Trial Tr. 1848:1-1850:16. Best Buy has placed into the record evidence

that the parties entered the alleged conspiracy at different times, and, in some cases, withdrew before the end of the alleged conspiracy. As just one example, there is no evidence on this record that HannStar participated in exchanges of competitive information or agreements to fix prices earlier than the time reflected in its guilty plea, that is, beginning on September 14, 2001. Likewise, Best Buy has produced no evidence that Epson entered into any price-fixing agreements before the time period covered by its guilty plea, that is, mid-2005.

This Court has ruled that Defendants may not be liable for conduct that occurred before joining or after withdrawing from the conspiracy. Order Denying Summary Judgment on Withdrawal at 4, Dkt. No. 3690 (Sept. 26, 2011) ("[A] defendant cannot be held liable for substantive offenses committed before joining or after withdrawing from a conspiracy.") (quoting *United States v. Lothian*, 976 F.2d 1257, 1262) (9th Cir. 1992)). The jury has no basis to conclude, for example, that HannStar joined the conspiracy before September 2001 or that Epson entered into any agreements before mid-2005. By including the panel sales of each entity prior to the time that entity actually entered the conspiracy (or any time after an entity withdrew), such as HannStar and Epson, Best Buy's experts' damages calculation are grossly inflated with panel sales that were not affected by the conspiracy as shown at trial by Best Buy.

**IV.** **Best Buy May Not Cure These Deficiencies**

Lastly, Best Buy may not avoid the striking of its experts by holding out the speculative prospect of somehow curing their foundational faults in rebuttal. *See* Douglas Bernheim (expert) Test., Trial Tr. 1643:20-1644:6 (requesting that expert come back to testify about "additional adjustments"); Alan Frankel (expert) Test., Trial Tr. 1913:23-1914:1 (Q. "And if need be, are you available to come back and testify at a later point in the trial if that's necessary? A. Sure. If I'm asked, I will come back."). Best Buy was obligated to provide factual evidence for its experts' opinions prior to resting in its case-in-chief. The Court forewarned Best Buy of this obligation, and Best Buy's failure to deliver requires the striking of its experts now. *See, e.g.*, *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830-32 (9th Cir. 2001) (excluding expert testimony for lack of factual foundation); *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996) (same).

## **CONCLUSION**

The Court should strike the testimony of Professor Bernheim and Dr. Frankel because Best Buy utterly failed to provide a factual foundation to support their testimony by the end of their case.

Respectfully submitted,

**WHITE & CASE**

DATED: August 14, 2013

By: /s/ Christopher M. Curran

Christopher M. Curran (*pro hac vice*)
Email: ccurran@whitecase.com
J. Mark Gidley (*pro hac vice*)
Email: mgidley@whitecase.com
Martin M. Toto (*pro hac vice*)
Email: mtoto@whitecase.com
John H. Chung (*pro hac vice*)
Email: jchung@whitecase.com
**WHITE & CASE**
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

*Attorneys for Toshiba Corporation, Toshiba Mobile Display Co., Ltd., Toshiba America Electronic Components, Inc. and Toshiba America Information Systems, Inc.*