ROBINS KAPLAN LLP
Roman M. Silberfeld, Bar No. 62783
RSilberfeld@robinskaplan.com
David Martinez, Bar No. 193183
DMartinez@robinskaplan.com
Laura E. Nelson, Bar No. 231856
LNelson@robinskaplan.com
Jill S. Casselman, Bar No. 266085
JCasselman@robinskaplan.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone:    310-552-0130
Facsimile:    310-229-5800

Attorneys for Plaintiffs
BEST BUY CO., INC.; BEST BUY PURCHASING LLC; BEST BUY ENTERPRISE SERVICES, INC.; BEST BUY STORES, L.P.; and BESTBUY.COM, L.L.C.

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*All Indirect Purchaser Actions*<br><br>*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513-SC<br><br>*Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05264-SC<br><br>*Target Corp. v. Chunghwa Pictures Tubes, Ltd., et al.*, No. 3:07-cv-05514-SC | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS AND ALLEGED CO-CONSPIRATORS**<br><br>**[DEFENDANTS' MIL NO. 6]**<br><br>Date:       TBD<br>Time:       TBD<br>Place:      Courtroom 1<br>Hon. Samuel Conti |

Master Case No. 3:07-cv-05944-SC
60954468

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS' AND ALLEGED CO-CONSPIRATORS

*Target Corp. v. Technicolor SA, et al.*, Case No. 3:11-cv-05514-SC

*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al.*, No. 11-cv-05502-SC

*Sears, Roebuck and Co., et. al. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv-5514

*Sharp Electronics Corporation, et al. v. Hitachi, Ltd., et al.*, No. 13-cv-01173-SC

*Sharp Electronics Corp., et al. v. Koninklijke Philips Electronics N.V., et al.*, No. 13-cv-2776 SC

*ViewSonic Corporation v. Chunghwa Picture Tubes, Ltd., et al.*, No. 14-cv-02510

Master Case No. 3:07-cv-05944-SC
60954468

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS' AND ALLEGED CO-CONSPIRATORS

# INTRODUCTION[1]

With this Motion, Defendants seek to evade facts established in the evidentiary record and probative of the CRT conspiracy.

*First*, under the guise of "inflammatory rhetoric," Defendants hope to distance themselves from evidence that plainly demonstrates their active involvement in the CRT conspiracy—specifically, that Samsung SDI Co., Ltd. ("Samsung SDI") pled guilty in the Northern District of California, that Chunghwa Picture Tubes ("Chunghwa") admitted its participation in a price fixing conspiracy and procured an amnesty deal with the Department of Justice, and that foreign governmental agencies concluded that the Defendants colluded for years as to CRT prices and output. They cannot. Not only are the complaints about inflammatory rhetoric premature and ill-defined, but the terminology that the Motion identifies (*i.e.*, "convicted criminals" and "admitted price-fixers") are all apt characterizations of Defendants.

*Second*, Defendants are trying to hide well-documented facts about Korean *chaebols*, like the Samsung Group, from the jury by crying "wolf" with a claim of "Asian stereotypes." The portions of Professor Haggard's expert report to which Defendants object—statements that *chaebols* suffer from weak corporate governance and are family-dominated businesses—are not cultural stereotypes but ***facts*** firmly established by the relevant scholarly literature. And even assuming that these passages of the report were "culturally charged," the prejudice attributable thereto by no means "substantially outweighs" their probative value. Professor Haggard's testimony about corporate governance and the predominance of family-owned firms in South Korea is based on well-documented facts, is premised on his years of experience studying East Asian economies, and will assist the jury in evaluating Plaintiffs' antitrust standing.

*Third*, despite Defendants' own documents and witnesses repeatedly referring to themselves using corporate family names, Defendants demand that Plaintiffs refer to Defendants by their specific individual legal entity names. This artificial constraint urged by the Defendants

---

[1] The Sharp Plaintiffs join the argument in part III of this brief. Dr. Haggard did not serve an expert report in any of Sharp's cases, and so Sharp does not join in argument II. As to argument I, Sharp agrees with position that defendants' requested relief is vague and premature and is more appropriately left to trial, when any language can be evaluated in context.

Master Case No. 3:07-cv-05944-SC
60954468

1

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS' AND ALLEGED CO-CONSPIRATORS

would unfairly hinder Plaintiffs' right to argue that the evidence supports an inference that all members of the corporate family joined the conspiracy.

## ARGUMENT

### I. Undisputed Evidence With Respect to Defendants' Participation In The CRT Conspiracy Should Be Considered By The Jury.

Defendants argue (without legal support) that the Court should prohibit the use of "inflammatory" language at trial.[2] Defendants' requested relief is presently unworkable and better evaluated at trial. As an initial matter, Defendants seek to prohibit all prejudicial rhetoric but identify only four specific terms. Motion at 2. Whether certain language is "inflammatory" will depend heavily on the evidence presented at trial and the parties against whom that evidence is introduced. Presently, the Court cannot predict the circumstances under which this terminology will be used or even which Plaintiffs and Defendants will be present at the proceedings. With such uncertainties, the Motion should be "deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."[3] *Jarecke v. Am. Nat. Prop. & Cas. Co.*, No. 13-CV-146-BLG-CSO, 2014 WL 5859535, at *1 (D. Mont. Nov. 12, 2014) (quotation marks and citations omitted); *accord City of Grass Valley v. Newmont Mining Corp.*, No. 2:04-CV-00149GEBDAD, 2008 WL 544388, at *5 (E.D. Cal. Feb. 26, 2008) ("Evidence should only be excluded in an in limine proceeding when the evidence is clearly inadmissible on all potential grounds.").

---

[2] Defendants cite *United State v. Basham*, 561 F.3d 302 (4th Cir. 2009), and *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136 (9th Cir. 2001), to support their arguments about "improper epithets." SDI Br. at 3. Each of these cases is plainly distinguishable and does not characterize terminology like "convicted criminal" or "convicted felon" as *per se* prejudicial. *See Basham*, 561 F.3d at 327-28 (analyzing the admissibility of past alcohol use, sexual relationships, threats of violence, high speed police chase, and carjacking under Federal Rule of Evidence 4040(b)); *Bird*, 255 F.3d at 1150 (examining prejudice of statements about the historical oppression of Native Americans by the white race, including references to "Custer, slavery, the cavalry riding into town to kill, [and] 'white man's magic'").

[3] What is more, the Court has no means to determine what other "prejudicial" terminology Defendants intend for the Motion to encompass. Thus, the Motion is impermissibly overbroad. *See Lopes v. Viera*, No. 1:06-CV-01243-JLT, 2012 WL 691665, at *2 (E.D. Cal. Mar. 2, 2012) ("Generally, motions in limine that seek exclusion of broad and unspecific categories of evidence are disfavored.").

Master Case No. 3:07-cv-05944-SC
60954468

2

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS' AND ALLEGED CO-CONSPIRATORS

Furthermore, the terminology cited in the Motion—"convicted criminal," "admitted price-fixers," "cartelists"—are all apt characterizations of the Defendants. Samsung SDI pled guilty to a violation of the Sherman Antitrust Act and admitted that its officers participated in a conspiracy to "fix prices, reduce output, and allocate market shares of CRTs sold in the United States."[4] Chunghwa admitted its participation in the same price-fixing conspiracy and entered into an amnesty agreement with the Department of Justice for its membership in the CRT conspiracy. Foreign government agencies that enforce antitrust prohibitions (e.g., the European Commission and the Korean Fair Trade Commission) have found that many of the Defendants manipulated CRT prices.[5] The guilty plea, amnesty agreement, and determinations by government agencies all constitute admissible evidence. *See* 15 U.S.C. § 16(a) (final judgment from criminal proceeding is *prima facie* evidence against such defendants); Fed. R. Evid. 404(b) (criminal history may be introduced to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"); *see also In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 159 (S.D. Ind. 2009) (stating that "the existence of the conspiracy is supported by the guilty pleas and convictions that arose from the criminal antitrust prosecutions of Defendants"). Thus, arguments about "undue prejudice" overlook the probative value of these phrases.

## II. Professor Haggard's Expert Testimony does not Stereotype Asian Firms and Business Culture.

Defendants attempt to chip away at Plaintiffs' expert on East Asian corporate governance and conceal well-known facts about the corporate governance of Samsung and its control over SDI, arguing that Plaintiffs' expert, Professor Stephan Haggard, seeks to "inject . . . negative, unfounded generalizations about Asian companies and Asian businesses culture so as to underscore . . . the notion that they are fundamentally inferior and inherently dishonest." Motion at 4. In support of the Motion, Defendants refer to portions of Professor Haggard's expert report

---

[4] *See* Declaration of Laura E. Nelson ("Nelson Decl."), Ex. 1, Amended Guilty Plea Agreement, Case No. 3:11-CR-00162, Dkt. No. 40-1 at 4; Ex. 2, Change of Plea Hearing Transcript, Case No. 3:11-CR-00162, Dkt. No. 35.

[5] Nelson Decl. at Ex. 3, Official Journal of the European Union, Summary of Commission Decision, Case COMP/39.437, § 2.5.1.A, 2.5.1.B (2012).

Master Case No. 3:07-cv-05944-SC
60954468

3

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS' AND ALLEGED CO-CONSPIRATORS

that describe the weak corporate governance of Korean *chaebols* and the familial control often associated with these organizations and attempt to characterize that report as Asian stereotyping.[6] Motion at 5-7.

Professor Haggard is one of the world's foremost authorities on East Asian corporate governance and, specifically, South Korean *chaebols*. His expert testimony will assist the jury in understanding the relationship between Samsung Electronics and Samsung SDI and thereby help demonstrate that Plaintiffs have antitrust standing. In evaluating the interplay between these companies, Professor Haggard considered a variety of factors, including the poor corporate governance and single-family dominance that is common amongst *chaebols*.[7] Accordingly, the portions of Professor Haggard's report that Defendants highlight are not "negative stereotypes" about Asian companies; they are well-documented ***facts*** about the Korean economy that inform his expert analysis.[8]

---

[6] Professor Haggard's proposed testimony and analysis of Korean chaebols is more thoroughly explained in Direct Action Plaintiffs' Response in Opposition to SDI Defendants' Motion to Exclude Expert Testimony of Professor Stephan Haggard [Dkt. No. 3410] and Direct Action Plaintiffs' Response in Opposition to SDI Defendants' Motion for Partial Summary Judgment for Lack of Standing as to Their Sherman Act Damage Claims Based on CRT Product Purchases from Samsung Electronics [Dkt. No. 3244].

[7] Nelson Decl. at Ex. 4, April 15, 2014 Expert Report of Stephan Haggard.

[8] *See, e.g.*, Nelson Decl. at Ex. 5, Chad Albrecht, Chad Turnbull, Yingying Zhang, Christopher J. Skousen, "The relationship between South Korean chaebols and fraud", Management Research Review, Vol. 33 Iss. 3, pp. 257-68 (2010) (acknowledging that as chaebols moved away from government assistance, contact to the global market "began to expose cracks within the chaebols, including corporate governance weaknesses"); Ex. 6, Jae-Seung Baek et al., "Corporate governance and firm value: evidence from Korean financial crisis", J. of Fin. Economics, Vol. 71, pp. 265-313 (2004) (examining value of Korean firms and accounting for the "weaker corporate governance" in measuring accounting performance); Ex. 7, T.L. Campbell & P.Y. Keys, "Corporate governance in South Korea: the chaebol experience", J. of Corp. Finance, Vol. 8(4) (2002) (noting that the largest chaebols are "still family run and controlled" and that Korean shareholder activists regularly contend that ''corporate governance in Korea is a total mess''); Ex. 8, Jongmoo Jay Choi, et al., "The Value of Outside Directors: Evidence from Corporate Governance Reform in Korea", J. of Fin. & Quantitative Analysis, Vol. 42, pp. 941-62 (2007) (stating that "[w]eak corporate governance was viewed as one of the factors that had contributed to the Asian financial crisis in 1997 according to the IMF" and measuring the impact of family ownership, concluding that "it appears that continuing to keep the firm ownership and management as a family affair has more costs than benefits").

---

Master Case No. 3:07-cv-05944-SC
60954468

4

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS' AND ALLEGED CO-CONSPIRATORS

1  Expert testimony on corporate control over the objections of "cultural stereotyping" is commonplace. For instance, Judge Illston in *In re TFT-LCD* permitted the plaintiffs' expert to testify "regarding ownership structure, corporate governance practices, and controlling owner incentives of Asian companies." No. 07-MD-1827-SI, 2013 WL 2950065, at *1-2 (N.D. Cal. June 14, 2013). There, Judge Illston recognized that plaintiffs' expert had premised his opinions about "the corporate organizational structures and governance practices of Asian companies" on a thorough review of "academic literature addressing these topics." *Id*. at *2. Similarly, Professor Haggard's analysis is based on a thorough review of the academic literature and should be admitted in its entirety.

Assuming *arguendo* that the weak corporate governance and family ownership of *chaebols* could be construed as "ethnic bias" as Defendants claim, the probative value of these statements far outweighs any prejudice. *See* Fed. R. Evid. 403. Professor Haggard's testimony will explain to the jury how a *chaebol*—a widely acknowledged Korean corporate form—differs from multidivisional American corporations. These differences include less robust corporate governance and an emphasis on family hierarchy, both of which enable a single corporation and small subset of managers to exercise operational control over affiliated firms without significant direct equity ownership. Such testimony is not "tinged" with cultural bias. Instead, it is a sober accounting of the South Korean economy as it presently exists and how certain unique characteristics support Plaintiffs' antitrust standing.

The cases Defendants cite to support their cultural bias arguments are plainly distinguishable. Defendants principally rely on *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993 (9th Cir. 2001), for the proposition that testimony "tinged with ethnic bias and stereotyping" should be excluded under Federal Rule of Evidence 403. [9] SDI Br. at 5. In *Jinro*,

---

[9] The other decisions Defendants cite are equally distinguishable. *See In re Heparin Prod. Liab. Litig.*, No. 1:08-CV-600000, 2011 WL 1059660, at *9-10 (N.D. Ohio Mar. 21, 2011) (rejecting opinion testimony on Chinese business climate where court found expert had "no education or training as a cultural expert generally, or as an expert on Chinese culture); *Sunstar, Inc. v. Alberto-Culver Co.*, No. 01-CV-0736, 2004 WL 1899927, at *27 (N.D. Ill. Aug. 23, 2004) (excluding deposition exhibit on cultural aspects of Japan where witness "testified at his deposition that he did not write the material . . ., had no involvement with its preparation, did not

Master Case No. 3:07-cv-05944-SC
60954468

5

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS' AND ALLEGED CO-CONSPIRATORS

1   the Ninth Circuit held that the district court abused its discretion by admitting expert testimony
2   that Korean businesses had a propensity for fraud because the expert "cited no research or study,
3   nor any empirical data, and had made only generalized, anecdotal references to his personal
4   experience."[10] *Jinro*, 266 F.3d at 1001-09. In contrast, Professor Haggard's opinions are deeply
5   rooted in facts and academic literature. What is more, Professor Haggard has decades of
6   experience studying and lecturing on the corporate governance of East Asian companies,
7   including those in South Korea.[11]

### III.   Defendants' Request to Refer to Specific, Individual Corporate Entity Names is Contrary to the Testimonial and Documentary Evidence.

Defendants ask the Court to "compel Plaintiffs and their witnesses to refer to Defendants and their alleged co-conspirators by their specific, legal corporate entity names," and to prohibit generic references to corporate family names such as "Toshiba," Philips," or "Panasonic." The motion should be denied.[12]

Defendants' requested relief in this motion is somewhat unclear. They do *not* seek any relief regarding "the introduction of evidence." Defendants' MIL No. 6 at 10. Plaintiffs understand this to mean that Defendants' motion does not seek to alter the thousands of documents, hours of deposition testimony and other evidence that will show that during the conspiracy, Defendants and their co-conspirators routinely used generic company names to describe themselves and other members of the conspiracy.[13] Any insistence to the contrary,

---

know who was involved in the preparation, did not know who had edited it, and had never read it before it was shown to him at his deposition").

[10] The Ninth Circuit noted with derision that the expert "offered his impressionistic generalizations about Korean businesses based on his personal investigative experiences, his 'hobby' of studying Korean business practices, unspecified input from his office staff and his marriage to Korean woman." *Jinro*, 266 F.3d at 1006.

[11] Nelson Decl. at Ex. 4, April 15, 2014 Expert Report of Stephan Haggard, at ¶¶ 1-3, C.V. pgs. 1-16. Professor Haggard's qualifications are more thoroughly described in Direct Action Plaintiffs' Response in Opposition to SDI Defendants' Motion to Exclude Expert Testimony of Professor Stephan Haggard [Dkt. No. 3410].

[12] The Hitachi Defendants filed a similar motion *in limine* addressed to one of their related entities, Plaintiffs incorporate their opposition to that motion herein. *See* Dkt. No. 3536 (Hitachi Defendants' Motion in Limine re Hitachi SEG).

[13] *See, e.g.*, Declaration of Gerard Dever at Ex. A (HDPCRT00048694E-95E) (meeting summary

Master Case No. 3:07-cv-05944-SC
60954468

6

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS' AND ALLEGED CO-CONSPIRATORS

1 besides being impractical, would require modifying the documents and testimony to superimpose
2 Defendants' "specific, legal corporate entity names" whenever their names are mentioned, which
3 would greatly distort the evidence, effectively rewriting history. Therefore, at a minimum,
4 Defendants' motion should be denied insofar as it may pertain to any documents, deposition
5 testimony, or other evidence.

6 Defendants' stated primary concern is how Plaintiffs' counsel and witnesses may "discuss
7 and characterize the evidence." Defendants' MIL No. 6 at 10. According to Defendants, IPPs
8 "hope" that by using "generic references" to describe the members of the conspiracy, they can
9 "confuse and mislead the jury" into reaching conclusions "regardless of the law and actual facts"
10 (*id*. at 7-8); "obscure" a variety of "potentially dispositive issues" (*id*. at 9); and ultimately
11 "eliminate" or "end run" their evidentiary burden (*id*. at 7, 9). The "only way" to avoid this
12 purported scheme, Defendants argue, is to prevent the use of generic names altogether. *Id*. at 9.
13 However, if Defendants' own documents and witnesses use "generic" company names such as
14 "Hitachi" and "Samsung," there is no valid basis for a blanket prohibition against Plaintiffs and
15 their witnesses doing the same. Further, the parties already have agreed that the jury should be
16 instructed before and after the evidence is presented that "[a]rguments and statements by lawyers
17 are not evidence" – a standard instruction that protects both parties against unsupported advocacy.
18 *See* NINTH CIRCUIT MANUAL OF MODEL CIVIL JURY INSTRUCTIONS, No. 1.7.

19 Plaintiffs have alleged that Defendants' "employees engaged in conspiratorial meetings on
20 behalf of members of their corporate families"; that during such meetings the "participants did
21 not always know the corporate affiliation of their counterparts and did not distinguish between the
22 entities within a corporate family"; and that meeting participants "'entered into agreements on
23 behalf of, and reported these meetings and discussions to, their respective corporate families. As a

---

25 referring generally to "Samsung," "LG," "Toshiba," "Chunghwa," "Philips," "CPT," "Orion" and "SDI,"); Ex. B (CHU00028755.01E—28756.02E) (minutes from March 12, 1997 meeting,
26 identifying meeting attendees' company affiliations generally as "Samsung," "LG," "Daewoo," "Philips," "Hitachi," and "Matushita"); Ex. C (SDCRT-0086690) (Philips letter of introduction,
27 signed as "President & CEO" of "Philips Components Asia Pacific," and not as employee of a
28 specific subsidiary).

| Master Case No. 3:07-cv-05944-SC 60954468 | 7 | PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS' AND ALLEGED CO-CONSPIRATORS |

result, the entire corporate family was represented in meetings and discussions by their agents and was a party to the agreements reached in them.'" *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1019 (N.D. Cal. 2010). As noted above, Defendants' own documents and witness testimony amply support these allegations. Imposing the artificial constraints urged by Defendants would unfairly hinder Plaintiffs' right to argue to the jury in support of their allegations that the evidence supports the reasonable inference that all members of the referenced corporate family joined the alleged conspiracy.

Allowing Plaintiffs to accurately describe or cite the evidence the same way that Defendants' own witnesses do is in no way an effort to "end run" any evidentiary burden. Nor would Plaintiffs' doing so be "misleading" or "confusing" for the jury; to the contrary, it would be eminently *more* confusing were the jury to receive evidence using generic corporate names, such as "Hitachi," but Plaintiffs' counsel and witnesses were required to use different monikers at all times, such as "Hitachi Electronic Devices (USA), Inc."

If and when a distinction must be made between the various Defendant entities, the parties or the Court can do so efficiently and effectively without a Court order approving only a limited set of approved names to be used at trial. If Defendants believe witness testimony is inaccurate or vague as to corporate identity, they can make that point on cross-examination. If they believe Plaintiffs' counsel are presenting a case lacking sufficient evidence to show that certain Defendants joined the conspiracy, Defendants' counsel can argue that point to the jury or file a motion under Fed R. Civ. P. 50.

There is no need for an Order mandating that the "specific, individual corporate entity names" be identified in full or by some shorthand preferred by Defendants.[14] If it arises at all, this issue can and should be resolved by competent trial counsel through advocacy, based on the specific facts and evidence at issue, and not by the instant motion.

---

[14] In a footnote, Defendants "propose reaching an agreement with Plaintiffs" regarding how they want to be described, but Defendants have initiated no such discussion with Plaintiffs. *Id*. at 7 n.10.

Master Case No. 3:07-cv-05944-SC
60954468

8

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS' AND ALLEGED CO-CONSPIRATORS

# CONCLUSION

For the foregoing reasons, the Court should deny in its entirety Defendants' Joint Motion in Limine of or Exclude Improper Characterizations of or References to Defendants and Alleged Co-Conspirators.

Respectfully submitted,

Dated: February 27, 2015

/s/ *Roman M. Silberfeld*

Roman M. Silberfeld
Bernice Conn
David Martinez
Laura Nelson
Jill Casselman

ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone: (310) 552-0130
Facsimile: (310) 229-5800

Email: rsilberfeld@robinskaplan.com
dmartinez@ robinskaplan.com
bconn@robinskaplan.com
lnelson@robinskaplan.com
jcasselman@robinskaplan.com

*Counsel For Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., and Bestbuy.com, L.L.C.*

/s/ *William J. Blechman*

Richard Alan Arnold
William J. Blechman
Kevin J. Murray
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel: 305-373-1000
Fax: 305-372-1861
Email: rarnold@knpa.com
wblechman@knpa.com
kmurray@knpa.com

Master Case No. 3:07-cv-05944-SC
60954468

9

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS' AND ALLEGED CO-CONSPIRATORS

*Counsel for Plaintiff Sears, Roebuck and Co. and Kmart Corp.*

/s/ *Kenneth S. Marks*

H. Lee Godfrey
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile:  (713) 654-6666
Email: lgodfrey@sumangodfrey.com
         kmarks@susmangodfrey.com
         jross@susmangodfrey.com
         jcarter@susmangodfrey.com
         dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883


Email: pfolse@susmangodfrey.com
         rblack@susmangodfrey.com
         jconnors@susmangodfrey.com

*Counsel for Plaintiff Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

/s/ Jason C. Murray

Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213-443-5582
Facsimile:  213-622-2690
Email: jmurray@crowell.com

Jerome A. Murphy (pro hac vice)
Astor H.L. Heaven (pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Master Case No. 3:07-cv-05944-SC
60954468

10

PLAINTIFFS' RESPONSE  IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS' AND ALLEGED CO-CONSPIRATORS

|   |   |
|---|---|
| 1 | Telephone: 202-624-2500 |
| 2 | Facsimile:  202-628-5116 |
|   | E-mail: jmurphy@crowell.com |
|   | aheaven@crowell.com |

*Counsel for Target Corp. and ViewSonic Corp.*

/s/ Craig A. Benson

Kenneth A. Gallo (pro hac vice)
Joseph J. Simons (pro hac vice)
Craig A. Benson (pro hac vice)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com
Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Master Case No. 3:07-cv-05944-SC
60954468

1

PLAINTIFFS' RESPONSE  IN OPPOSITION TO DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IMPROPER CHARACTERIZATIONS OF OR REFERENCES TO DEFENDANTS' AND ALLEGED CO-CONSPIRATORS