# EXHIBIT 3

Official Journal of the European Union    C 303/13

**Summary of Commission Decision**

**of 5 December 2012**

**relating to a proceeding under Article 101 of the Treaty on the Functioning of the European Union and Article 53 of the EEA Agreement**

**(Case COMP/39.437 — TV and computer monitor tubes)**

**(notified under document C(2012) 8839)**

**(Only the English text is authentic)**

**(Text with EEA relevance)**

2013/C 303/07

*On 5 December 2012, the Commission adopted a decision relating to a proceeding under Article 101 of the Treaty on the Functioning of the European Union and Article 53 of the EEA Agreement. In accordance with the provisions of Article 30 of Council Regulation (EC) No 1/2003* (1), *the Commission herewith publishes the names of the parties and the main content of the decision, including any penalties imposed, having regard to the legitimate interest of undertakings in the protection of their business secrets.*

**1. INTRODUCTION**

(1) On 5 December 2012, the European Commission adopted a decision relating to two separate infringements of Article 101 of the Treaty on the Functioning of the European Union and Article 53 of the EEA Agreement in the sector of cathode ray tubes ('CRT'). By these infringements, the addressees of the decision colluded on prices, market shares, customers and output as well as exchanged confidential information and monitored implementation of the collusive arrangements.

(2) The decision was addressed to the following legal entities: Chunghwa Picture Tubes Co., Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., CPTF Optronics Co., Ltd. ('Chunghwa'); Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Berhad, Samsung SDI Germany GmbH ('Samsung SDI'); Koninklijke Philips Electronics NV ('Philips'); LG Electronics, Inc ('LGE'); Panasonic Corporation ('Panasonic'); Toshiba Corporation ('Toshiba'); MT Picture Display Co., Ltd. ('MTPD'); Technicolor SA ('Technicolor').

**2. CASE DESCRIPTION**

**2.1. The product concerned**

(3) The product concerned, CRT, is an evacuated glass envelope containing an electron gun and a fluorescent screen. There are two distinct types of CRTs that were covered respectively in the two separate infringements: (i) colour display tubes (CDTs) used in computer monitors and (ii) colour picture tubes (CPTs) used for colour televisions.

(4) Since early 2000's, the CRT technology was gradually replaced by alternative techniques such as LCD and plasma displays.

**2.2. Procedure**

(5) Following the immunity application of Chunghwa under the terms of the 2006 Leniency Notice, the Commission carried out inspections in November 2007. Subsequently, the Commission received leniency applications from Samsung SDI, Panasonic (together with MTPD), Philips and Technicolor. In addition, several requests for information were addressed to the parties.

(6) On 23 November 2009, the Commission adopted a statement of objections. An oral hearing was held on 26 and 27 May 2010. On 2 December 2010, the Commission issued a letter of facts to Panasonic, MTPD and Toshiba regarding the decisive influence of parent companies over MTPD.

(7) On 1 June 2012, the Commission adopted supplementary statements of objections addressed to Philips and to LGE concerning liability. An oral hearing of these parties was held on 6 September 2012. On 5 July 2012 the Commission issued a letter of facts to all the addressees of the 23 November 2009 statement of objections regarding participants in the cartel contacts from Philips group, LGE group and the Philips/LGE joint venture group.

(8) The Advisory Committee on restrictive practices and dominant positions issued a favourable opinion on 19 November 2012 and 3 December 2012.

**2.3. Summary of the infringements**

(9) Overall, the CDT cartel lasted from October 1996 until March 2006 and the CPT cartel from December 1997 until November 2006.

(10) The addressees of the decision for the CDT cartel fixed prices, allocated market shares and customers and restricted output. The addressees of the decision for the CPT cartel fixed prices, allocated market shares and restricted output. The price fixing, market sharing and output restrictions were also subject to regular monitoring in both cartels and, in the case of the CDT cartel, at times the capacity restrictions were also audited with plant visits. The addressees also engaged in exchanges of commercially sensitive information in both cartels. In the CPT cartel, the addressees also attempted to maintain a price gap between identical products marketed in Europe and Asia.

(11) The two cartels were highly organised. There were regular multilateral meetings involving different corporate levels of the addressees up to the executive level. The multilateral meetings were complemented by bilateral meetings and other exchanges. Originally, CDTs and CPTs were discussed in the same cartel contacts, but soon a division between CDT and CPT related cartel contacts emerged. Focus of the cartel contacts evolved over time following the development in the sector for example as the emphasis in the demand was moving to larger dimension CRTs.

(12) In the CDT cartel the cartel, contacts took place mainly in Asia whereas in the CPT cartel, there were cartel contacts both in Asia and in Europe. As of 1999, the CPT cartel contacts started to be organised more frequently also in Europe to complement the cartel meetings that had started in Asia. In the CPT cartel the arrangements reached in the Asian and European cartel, contacts were interconnected. The European meetings focused more specifically on Europe and the Asian cartel contacts covered more clearly the worldwide level. However, cartel contacts concerning Europe clearly took place both in Asia and in Europe.

**2.4. Addressees**

(13) The following undertakings infringed Article 101 of the Treaty and Article 53 of the EEA Agreement by participating, during the periods indicated, in a single and continuous complex of agreements and concerted practices in the sector of colour display tubes used in computer monitors:

   (a) Chunghwa Picture Tubes Co., Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., CPTF Optronics Co., Ltd., from 24 October 1996 until 14 March 2006;

   (b) Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Berhad, from 23 November 1996 until 14 March 2006;

   (c) Koninklijke Philips Electronics NV, from 28 January 1997 until 30 January 2006;

   (d) LG Electronics, Inc., from 24 October 1996 until 30 January 2006.

(14) The following undertakings infringed Article 101 of the Treaty and Article 53 of the EEA Agreement by participating, during the periods indicated, in a single and continuous complex of agreements and concerted practices in the sector of colour picture tubes used for colour televisions:

   (a) Chunghwa Picture Tubes Co., Ltd., Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., CPTF Optronics Co., Ltd., from 3 December 1997 until 6 December 2005;