Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
FAEGRE BAKER DANIELS LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1 317-237-0300
Facsimile: +1 317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Calvin L. Litsey (SBN 289659)
FAEGRE BAKER DANIELS LLP
1950 University Avenue, Suite 450
East Palo Alto, CA  94303-2279
Telephone: +1 650-324-6700
Facsimile: +1 650-324-6701
calvin.litsey@FaegreBD.com

*Attorneys for Defendants Thomson S.A. and Thomson Consumer Electronics, Inc.*

[*Additional counsel listed on signature pages*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | No. 07-cv-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Sharp Electronics Corp., et al. v. Hitachi, Ltd., et. al., No. 13-cv-01173;* and<br><br>*Sharp Electronics Corp. et al. v. Koninklijke Philips Electronics, N.V., No. 13-cv-2776.* | **RESPONSE OF DEFENDANTS THOMSON S.A., THOMSON CONSUMER ELECTRONICS, INC., KONINKLIJKE PHILIPS N.V., PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, AND THE TOSHIBA DEFENDANTS IN OPPOSITION TO SHARP'S MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO THE ROLE OF SHARP COMPANIES IN THE TFT-LCD ANTITRUST LITIGATIONS** |

## I.  INTRODUCTION

On November 12, 2008, Sharp Corporation pled guilty to participating in a conspiracy to fix the price of TFT-LCDs ("LCD Conspiracy"). The non-prosecution protection afforded to Sharp Corp. as part of its plea extended to the Sharp Plaintiffs in this matter. *See* Plea Agreement ¶ 15, *United States v. Sharp Corp.*, 3:08-cr-00802-SI (Dec. 17, 2008) (N.D. Cal.) (ECF No. 12) ("the United States agrees that it will not bring further criminal charges against the defendant *or any of its related entities* for any act or offense committed before the date of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of TFT-LCD in the United States and elsewhere.") (emphasis added). A TFT-LCD is a component used to manufacture televisions and/or computer monitors. Because of their participation in a conspiracy to fix the price of TFT-LCDs, Sharp Corporation and Sharp Electronics Corporation ("SEC"), a plaintiff in this case, are also defendants in the *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-mdl-1827 (N.D. Cal.). In this action, SEC and Sharp Electronics Manufacturing Company of America, Inc. ("SEMA") (collectively, "Sharp") seek to recover hundreds of millions of dollars in damages they claim were caused to Sharp as a result of Defendants' alleged anticompetitive conduct in the CRT market. Claiming that "none of the actions of any Sharp companies in the *TFT-LCD* litigations is relevant to the Sharp Plaintiffs' claims for damages resulting from their purchases … of price-fixed CRTs," Sharp now seeks a categorical ruling prohibiting the admission of evidence at trial regarding the participation of any Sharp company in the TFT-LCD antitrust conspiracy. (Sharp Mtn. at 6.)

Sharp's motion should be denied ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*See* Hausman Depo. at 232:15-233:13, 236:116-238:4 attached as **Ex. A**.) Therefore, Sharp's participation in the LCD conspiracy is directly relevant to an essential element of Sharp's claims—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1] Dr. Hausman was also Sharp's expert in the TFT-LCD litigations.

███████████████████████████████████████████████████████

███. Sharp's motion focuses on the *Defendants'* expected introduction of Sharp's LCD conduct; in doing so, Sharp ignores that the experts of its fellow plaintiffs—Drs. Netz and Elzinga—place Sharp's anticompetitive LCD activities squarely at issue in their reports. In fact, DAP expert Dr. Elzinga specifically refers to Sharp as an LCD conspirator and draws an express link between the CRT and LCD markets.

Accordingly, evidence regarding Sharp's participation in the LCD Conspiracy, ██████████████████████████████████████████████████████████████████████████████████████████████████████████, is indisputably relevant and admissible. Sharp's motion to categorically exclude TFT-LCD evidence for any purpose should be denied.

## II.   ARGUMENT.

### A.   Sharp's participation in the LCD conspiracy is relevant to determining Sharp's alleged CRT damages.

Evidence of Sharp's role in the LCD Conspiracy is relevant and admissible because ██ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. In order to prevail on an antitrust claim, a plaintiff must show that it has suffered some actual antitrust injury that was caused by a defendant. *See First Beverages, Inc. v. Royal Crown Cola Co.,* 612 F.2d 1164, 1174-75 (9th Cir. 1980) (holding that jury was properly instructed that it could not return a verdict in plaintiff's favor without finding that defendant's conduct proximately caused some antitrust injury). The burden to demonstrate antitrust damages rests with Sharp, and it must account for any injuries that resulted from some cause other than Defendants' alleged antitrust violations.[2] *See Knutson v. Daily Review,* 468 F.Supp. 226, 229 (N.D. Cal. 1979) (plaintiffs have the burden

---

[2] Sharp's LCD conduct is also relevant to whether it acted in a commercially reasonable manner to mitigate the amount of its alleged damages. *See MCI v. AT&T*, 708 F.2d 1081, 1162-63 (7th Cir. 1983). Plaintiffs, including Sharp, moved to exclude evidence of their failure to mitigate damages and Thomson and Philips incorporate herein by reference Defendants' opposition to that motion.

to prove both the fact of damage and the amount of damage); *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 2012 WL 5383203, at *1 (N.D. Cal. Sept. 22, 2012) (plaintiffs must show the extent of the financial impact of defendants' antitrust violation).

Sharp incorrectly assumes that evidence of any Sharp company's role in the LCD Conspiracy will be offered for an improper purpose, namely to demonstrate that Sharp's anticompetitive conduct in the LCD market insulates Defendants from liability in the present dispute. (Sharp Mtn. at 5.) This argument misses the mark, however, because while evidence regarding Sharp's participation in the LCD Conspiracy does not insulate Defendants from *liability* in this action, the evidence does relate directly to the cause and amount of Sharp's *damages*, and it is admissible for this purpose. *See, e.g., First Beverages,* 612 F.2d at 1175 (plaintiff's anticompetitive conduct could be introduced "to disprove part or all of the claimed damages"); *U.S. Football League v. Nat'l Football League,* 842 F.2d 1335, 1371 (2d Cir. 1988) (admitting evidence of plaintiff's anticompetitive conduct as relevant to defendant's damages defense); *Pearl Brewing Co. v. Jos. Schlitz Brewing Co.,* 415 F. Supp. 1122, 1131 (S.D. Tex. 1976) ("evidence introduced by defendant of such conduct, if any, by a plaintiff which heretofore was labeled as '*in pari delicto*' now is appropriate when it provides rebuttal to that plaintiff's allegations of causation of injury by defendant and resulting damages therefrom"); *Datel Holdins LTD. v. Microsoft Corp.,* 2010 WL 3910344, at *3-4 (N.D. Cal. Oct. 4, 2010) (evidence of plaintiff's violation of the Digital Millennium Copyright Act was relevant to determining whether plaintiff suffered any antitrust injury); *RealNetworks, Inc. v. DVD Copy Control Ass'n,* 2010 WL 145098, at *6 (N.D. Cal. Jan. 8, 2010) ("Real's purported injury stems from its own decision to manufacture and traffic in a device that is almost certainly illegal under the DMCA.... The court does not here hold that Real is barred from maintaining an antitrust claim because it has engaged in illegal activity; rather, the court holds that Real has failed to allege a plausible antitrust injury.").

For example, in *First Beverages* the Ninth Circuit held that a plaintiff's anticompetitive conduct could be introduced at trial "to disprove part or all of the claimed damages." 612 F.2d at 1175. Defendants in that case sought to admit evidence of plaintiff's "truly complete

involvement and participation in a monopolistic scheme" involving plaintiff's illegal trucking operations, and plaintiff moved for summary judgment, or in the alternative, for an order in limine excluding defendant's *in pari delicto* defense. *Id.* at 1172. The Ninth Circuit held that the Supreme Court's decision in *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134 (1968), a decision Sharp relies on in support of its motion, did not bar the introduction of evidence regarding plaintiff's anticompetitive conduct for purposes of addressing plaintiff's alleged damages. *Id.* at 1175 ("[Defendant] introduced evidence of illegality not to prevent the [plaintiffs] from presenting any case at all, but to show that some or all of the alleged lost profits would never have materialized."). The Ninth Circuit emphasized that *Perma Life* did not foreclose the possibility that evidence of a plaintiff's anticompetitive conduct could be admitted for purposes other than an *in pari delicto* or an unclean-hands defense: "*Perma Life*... teach[es] that private wrongdoing should not be a bar to an action for the public wrong of violating the antitrust laws. [It does] not foreclose the introduction of evidence for purposes other than to show an antitrust plaintiff's improper conduct." *Id.* at 1173; *see also U.S. Football League*, 842 F.2d at 1369 (citing *Perma Life*, 392 U.S. at 139; *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*, 340 U.S. 211, 214 (1951)) ("Neither *Perma Life* nor *Kiegfer-Stewart* suggests that otherwise admissible evidence must be excluded because it might also be relevant to an *in pari delicto* or unclean-hands defense."). In fact, the *Perma Life* decision cited in Sharp's brief explicitly provides that such evidence "can of course be taken into consideration in computing damages." *Perma Life*, 392 U.S. at 140.

Sharp attempts to downplay its role in the LCD Conspiracy[3] and argues that there is "no

---

[3] Sharp points to Sharp Corporation's guilty plea and argues that the scope of its LCD-related conduct was limited to computer monitors and laptops, portable music players, and mobile phones. (Sharp Mtn. at 2-3.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See, e.g.*, **Ex. B** (SHARP-CRT-00260588) (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); **Ex. C** (SHARP-CRT-00260502) (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). In any event, Sharp can offer evidence at trial if it contends that the conduct of any Sharp company with respect to LCDs did not contribute to the damages Sharp plaintiffs are seeking to recover here. In the LCD matter, Sharp argued that information exchanges were not, by their nature, anticompetitive and defended much of its conduct. *See, e.g.*, Sharp Corp.'s Response to Indirect Purchaser Plaintiffs' Objections to Special Master's June 14, 2011 Order re Requests for Admission at 5, *In re TFT-LCD (Flat*

link" between its participation in the LCD Conspiracy and the present dispute regarding CRTs. (Sharp Mtn. at 1.)



*Panel) Antitrust Litig.*, No. 07-md-01827 (N.D. Cal. July 8, 2011), Dkt. 3054. ("Exchanges of price information have an ambivalent status under the antitrust law. On the one hand, 'the dissemination of price information is not itself a *per se* violation of the Sherman Act.' . . . On the other hand, '[i]nformation exchange is an example of a facilitating practice that can help support an inference of a price-fixing agreement.'") (citations omitted). The Defendants should not be precluded from raising Sharp's views on information exchanges in LCD to counter Sharp's arguments that the Defendants' information exchanges were anticompetitive.

[redacted]

(**Ex. A**, Hausman Depo. at 236:116-238:4 (emphasis added).)

[redacted] *See* **Ex. E**, Expert Report of Dr. Kenneth G. Elzinga, April 15, 2014, at 48 ( [redacted] ); **Ex. F**, Reply Expert Report of Dr. Kenneth G Elzinga, August 5, 2014, at 9 [redacted] ); **Ex. G**, Expert Report of Janet S. Netz, April 15, 2014, at 103–105 ( [redacted] ).

[redacted] As the ABA Model Jury Instruction on Causation and Damages in Civil Antitrust Cases provides:

> If you find that defendant[s] violated the antitrust laws and that [Sharp] was injured by that violation, [Sharp] is entitled to recover for such injury that was the direct and proximate result of the unlawful acts of defendant[s]. [Sharp] is not entitled to recover for injury that resulted from other causes.
>
> . . .
>
> [Sharp] bears the burden of showing that its injuries were caused by defendant's alleged antitrust violation – as opposed to any other factors, such as those that I just described to you. If you find that [Sharp's] alleged injuries were caused by factors other than defendant's alleged antitrust violation, then you must return a verdict for defendant. *If you find that [Sharp's] alleged injuries were caused in part by defendant's alleged antitrust violation and in part by other factors, then*

> *you may award damages only for that portion of [Sharp's] alleged injuries that were caused by defendant's alleged antitrust violation.*

**Ex. D**, ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases* at F-18 (2005 ed.) (emphasis added).  Thus, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that evidence is relevant to determining whether the damages Sharp seeks to recover here were caused solely by Defendants' alleged antitrust violation, or were caused, in whole or in part, by other factors.  Simply stated, because Sharp participated in a conspiracy regarding a substitute for CRTs, Defendants are entitled to establish at trial ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Accordingly, evidence regarding Sharp's participation in the LCD Conspiracy is highly relevant to its claims in the instant action and its motion should be denied.

### B.  Defendants may impeach Dr. Hausman with prior opinions he has offered, including those from the *LCD* litigation.

Sharp also seeks to preclude Defendants from referencing Dr. Hausman's testimony (or retention by Sharp) in the LCD litigation. (Sharp Mtn. at 8.)  As with any expert, Defendants are entitled to impeach Dr. Hausman to the extent he has offered opinions in prior engagements, including LCD, that are inconsistent with or contradictory to those Dr. Hausman intends to offer at trial.  *See, e.g., Ortiz-Lopez v. Sociedad Espanola de Auxilio Muto y Benefiencia de P.R.,* 248 F.3d 29, 34-35 (1st Cir. 2001) (expert's prior testimonial experience in cases involving similar claims was "directly at issue"); *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 2009 WL 3247432, at *1 (S.D. Tex. Sept. 29, 2009) ("A party is entitled to explore 'potential inconsistencies between the views [the expert] intends to express in the underlying case, and the testimony and opinions he has given, and the damages theories and methodologies he had adopted' in prior cases or on related subjects."); *Expeditors Int'l of Washington, Inc. v. Vastera, Inc.,,* 2004 WL 406999, at *2 (N.D. Ill. Feb. 26, 2004) (expert's prior testimony on similar issues is directly relevant to present litigation); *Phillips v. Raymond Corp.,* 213 F.R.D 521, 524 (N.D. Ill. 2003) ("bias is of course one the quintessential bases for impeachment of a witness—it is

always available to the cross-examiner"). For example, the excerpt of Dr. Hausman's testimony that Sharp attached to its motion shows that Dr. Hausman was critical of the Plaintiffs' expert in LCD for not disaggregating sales data. (Sharp Mtn., Ex. C.) ███████████████ ███████████████████████████████████████████████ (**Ex. A**, Hausman Depo. at 140:13-41:25.) Defendants are entitled to explore these and other inconsistencies or contradictions through impeachment of Dr. Hausman at trial, even if they relate to his testimony as an expert for Sharp in LCD. Thus, Sharp's request to preclude Defendants from referencing Dr. Hausman's role or testimony in the LCD litigation should be denied.

      **C.**    **Evidence of Sharp's role in the LCD Conspiracy is not unfairly prejudicial, and the Court can consider the prejudicial impact of individual documents during trial.**

Instead of identifying specific documents and explaining why they are prejudicial, Sharp categorically argues that all evidence related to the involvement of Sharp companies in the events underlying the *TFT-LCD* litigations is unduly prejudicial. (Sharp Mtn. at 7-10.) Such motions are routinely denied as too sweeping in scope. *See, e.g., Lego v. Stratos Int'l, Inc.,* 2004 WL 5518162, at *1 (N.D. Cal. Nov. 4, 2004) (motion to exclude opinion testimony of "any individual" who is not disclosed as an expert "is denied because the requested relief is too vague"); *Weiss v. La Suisse, Societe D'Assurances Sur La Vie,* 293 F. Supp. 2d 397, 407-08 (S.D.N.Y. 2003) (denying motion in limine where "[n]o particular documents or testimony have been identified"). Vague generalities without context, such as those offered by Sharp here, are not sufficient to justify a categorical exclusion of evidence. *See Maharaj v. Cal. Bank & Trust,* 288 F.R.D. 458, 462 (E.D. Cal. 2013) (denying motion to exclude "any and all" testimony, reference to testimony, or argument regarding exhaustion of administrative remedies); *U.S. v. Peel,* 2014 WL 5501268, at *4 (E.D. Cal. Oct. 30, 2014) ("The scope of this motion is too unclear for an in limine ruling."); *Robinson v. HD Supply, Inc.,* 2014 WL 585416, at *3 (E.D. Cal. Feb. 14, 2014) ("Since it is unclear precisely what evidence Defendant seeks to exclude, this motion is too conclusory to justify an in limine ruling.").

Rather than requesting a blanket exclusion of all documents relating to Sharp's role in the LCD Conspiracy and related litigation, Sharp must identify specific documents and demonstrate that they are either irrelevant or unfairly prejudicial. To the extent that Sharp has specific concerns about such documents, the Court should reserve its ruling until trial, when the evidentiary issues can be viewed in their factual context. *See, e.g., Colton Crane Co. v. Terex Cranes Wilmington, Inc*., 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) ("motions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context"); *Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir. 1975) ("A better practice is to deal with questions of admissibility of evidence as they arise."). In fact, Sharp itself cited the opinion in *Colton Crane* in its opposition to Defendants' MIL No. 3 (seeking the exclusion of references to the DOJ's CRT investigation) to support its argument that Defendants' motion was "premature and overbroad." Sharp's Opp. to Defs' Mot. in Limine No. 3 (ECF No. 3665). Sharp cannot have it both ways.

Sharp's attempt at differentiating "Sharp Corp." and its LCD guilty plea from the plaintiffs in this case is unavailing. Sharp Corp. is the parent of the entities in this case. As stated above, Sharp Corp.'s bargained-for non-prosecution protection extended to the plaintiffs in this case. In fact, this Court has already held that "Sharp's claims are based partly on its corporate relationship with Sharp Corporation . . . . [T]he Sharp Plaintiffs' purchases that form the basis of their antitrust claims against Toshiba were made from Sharp Corporation." Order Granting Toshiba's Mot. to Dismiss Sharp's First Amended Compl. at 8 (ECF No. 2435).

Moreover, as with any evidence, the Court has broad discretion to determine whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury." Fed. R. Evid. 403. And in similar circumstances, evidence related to a plaintiff's alleged damages has been found to be more probative than prejudicial. *See, e.g., U.S. Football League,* 842 F.2d at 1369-70 (holding that evidence of plaintiff's business decisions pursuant to a merger strategy was "highly probative on the central issue of whether the [plaintiff] alleged injury and damages," and was not outweighed by the potential for unfair prejudice). To the extent that Sharp is concerned about particular documents

or pieces of evidence, it can renew this motion during trial, when the Court can consider the evidence within its complete factual context, and determine whether a limiting instruction would be appropriate to address Sharp's concerns. *Id.* at 1370-71 (limiting instruction was sufficient to ensure that jury did not consider evidence for an improper purpose); *see also U.S. v. Gomez-Rodriguez,* No. 95-10168, 91 F.3d 156 (9th Cir. 1996) ("a limiting instruction is generally sufficient to cure any prejudice to [a party]").

### III.   CONCLUSION

For the foregoing reasons, the Court should deny Sharp's motion. To the extent that Sharp has concerns about the prejudicial effect of a particular item of evidence, the Court should reserve ruling until trial, when it can consider the evidentiary issues in their factual context and determine if a limiting instruction would be sufficient to allay Sharp's concerns.

Dated:  February 27, 2015                     Respectfully submitted,

 */s/ Kathy L. Osborn*
Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

Stephen M. Judge (*pro hac vice*)
Faegre Baker Daniels LLP
202 S. Michigan Street, Suite 1400
South Bend, IN  46601
Telephone: +1 574-234-4149
Facsimile: +1 574-239-1900
steve.judge@FaegreBd.com

1

2

3   Calvin L. Litsey (SBN 289659)
    Faegre Baker Daniels LLP
    1950 University Avenue, Suite 450
4   East Palo Alto, CA  94303-2279
    Telephone: +1-650-324-6700
5   Facsimile: +1-650-324-6701
    calvin.litsey@FaegreBD.com

6
    ***Attorneys for Defendants Thomson S.A. and***
7   ***Thomson Consumer Electronics, Inc.***

8
    By: */s/ John M. Taladay*
9
    JOHN M. TALADAY (*pro hac vice*)
10  john.taladay@bakerbotts.com
    ERIK T. KOONS (*pro hac vice*)
11  erik.koons@bakerbotts.com
    CHARLES M. MALAISE (*pro hac vice*)
12  charles.malaise@bakerbotts.com
    BAKER BOTTS LLP
13  1299 Pennsylvania Ave., N.W.
    Washington, DC 20004-2400
14  Telephone: (202) 639-7700
    Facsimile: (202) 639-7890
15
    JON V. SWENSON (SBN 233054)
16  jon.swenson@bakerbotts.com
    BAKER BOTTS LLP
17  1001 Page Mill Road
    Building One, Suite 200
18  Palo Alto, CA 94304
    Telephone: (650) 739-7500
19  Facsimile: (650) 739-7699
    E-mail: jon.swenson@bakerbotts.com
20
    ***Attorneys for Defendants Koninklijke Philips***
21  ***N.V., and Philips Electronics North America***
    ***Corporation***
22

23

24

25

26

27

28

| RESPONSE OF THOMSON, PHILIPS, AND TOSHIBA DEFENDANTS TO SHARP'S MOTION IN LIMINE RE TFT-LCD ANTITRUST LITIGATIONS | 11 | No. 07-5944-SC; MDL No. 1917 |

**WHITE & CASE** LLP

By: */s/ Lucius B. Lau*

CHRISTOPHER M. CURRAN (*pro hac vice*)
ccurran@whitecase.com
LUCIUS B. LAU (*pro hac vice*)
alau@whitecase.com
DANA E. FOSTER (*pro hac vice*)
defoster@whitecase.com
WHITE & CASE LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.*
