GIBSON, DUNN & CRUTCHER LLP
JOEL S. SANDERS, SBN 107234
JSanders@gibsondunn.com
RACHEL S. BRASS, SBN 219301
RBrass@gibsondunn.com
AUSTIN SCHWING, SBN 211696
ASchwing@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, California 94105-2933
Telephone: 415.393.8200
Facsimile: 415.393.8306

FARMER BROWNSTEIN JAEGER LLP
WILLIAM S. FARMER, SBN 46694
WFarmer@FBJ-law.com
DAVID BROWNSTEIN, SBN 141929
DBrownstein@FBJ-law.com
JACOB ALPREN, SBN 235713
JAlpren@FBJ-law.com
235 Montgomery Street, Suite 835
San Francisco California 94104
Telephone: 415.962.2876
Facsimile: 415.520.5678

Attorneys for Defendants
CHUNGHWA PICTURE TUBES, LTD. and
CHUNGHWA PICTURE TUBES (MALAYSIA)
SDN. BHD.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-CV-5944 SC<br>MDL No. 1917 |
| This Document Relates To:<br><br>*Best Buy Co. Inc. et al. v. Hitachi, Ltd. et al.*, No. 3:11-cv-05513-SC<br><br>*ViewSonic Corp. v. Chunghwa Picture Tubes, Ltd. et al.*, No. 3:14-cv-02510-SC | **DEFENDANTS CHUNGHWA PICTURE TUBES, LTD. AND CHUNGHWA PICTURE TUBES (MALAYSIA) SDN. BHD.'S REPLY IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE OPINIONS OR CALCULATIONS REGARDING ACTUAL DAMAGES ATTRIBUTABLE TO THE CHUNGHWA DEFENDANTS**<br><br>Judge:      Hon. Samuel Conti<br>Date:       None Set<br>Courtroom:  1, 17th Floor |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...........................................................................................................1

II.  ARGUMENT ................................................................................................................2

    A.   ViewSonic's New Damages Theory That All Of Its Purchases From Third Parties Tatung And Jean Are Attributable To Chunghwa Is Unsupportable. ...................................................................................................3

    B.   Best Buy's New Market Share Calculations Do Not Establish Actual Damages Attributable To Chunghwa. .............................................................8

    C.   There Is No Inequity In Requiring Plaintiffs To Comply With ACPERA. ..........................................................................................................12

III. CONCLUSION ............................................................................................................13

i

CHUNGHWA'S REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE OPINIONS OR CALCULATIONS REGARDING ACTUAL DAMAGES – MASTER CASE NO. 07-CV-5944 SC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Christian v. Generation Mortg. Co.*,
   No. 12 C 5336, 2013 WL 2151681 (N.D. Ill. 2013) ................................................................. 10

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ............................................................................................................... 4

*Duncan v. Walker*,
   533 U.S. 167 (2001) ................................................................................................................... 3

*Gen. Elec. Co. v. Joiner*,
   552 U.S. 136 (1997) ................................................................................................................... 5

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
   392 U.S. 481 (1968) ................................................................................................................... 5

*Harrelson v. Dupnik*,
   No. CV-11-00411, 2014 WL 2510530 (D. Ariz. Mar. 12, 2014) ........................................... 3, 9

*Ill. Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ................................................................................................................. 11

*In re High-Tech Emp. Antitrust Litig.*,
   No. 11-cv-02509, 2014 WL 135104 (N.D. Cal. Apr. 4, 2014) ......................................... 6, 8, 9

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   643 F. Supp. 2d 471 (S.D.N.Y. 2009) ....................................................................................... 8

*Jones v. Rath Packing Co.*,
   430 U.S. 519 (1977) ................................................................................................................. 11

*Oracle Am., Inc. v. Google, Inc.*,
   No. C 10-03561, 2011 WL 5572835 (N.D. Cal. Nov. 15, 2011) .............................................. 7

*Rosen v. Unilever U.S., Inc.*,
   No. C 09-2563, 2010 WL 4807100 (N.D. Cal. May 3, 2010) ................................................. 10

*Royal Printing Co. v. Kimberly Clark Corp.*,
   621 F.2d 323 (9th Cir. 1980) ........................................................................................ 2, 3, 5, 6

*S. Pac. Co. v. Darnell-Taenzer Lumber Co.*,
   245 U.S. 531 (1918) ................................................................................................................... 5

*U.S. Fid. & Guar. Co. v. Lee Inv. LLC*,
   641 F.3d 1126 (9th Cir. 2011) ................................................................................................... 3

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................................................. 10

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ................................................................................................... 3

**Statutes**

Antitrust Criminal Penalty Enhancement and Reform Act of 2004,
   Pub. L. No. 108-237, § 213(a), 118 Stat. 665 (2004) ............................................... 1, 2, 5, 9, 11

ii

CHUNGHWA'S REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE OPINIONS OR CALCULATIONS REGARDING ACTUAL
DAMAGES – MASTER CASE NO. 07-cv-5944 SC

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Other Authorities**

150 Cong. Rec. S3610-02, S3615 (daily ed. Apr. 2, 2004) .................................................................. 12

**Rules**

Fed. R. Civ. Proc. 26(a)(2)(B) .......................................................................................................... 2, 3, 6

Fed. R. Civ. Proc. 37(c)(1) ..................................................................................................................... 3

Fed. R. Evid. 104(a) ............................................................................................................................... 2

Fed. R. Evid. 401 ................................................................................................................................... 2

Fed. R. Evid. 403 ................................................................................................................................... 2

Fed. R. Evid. 702 ................................................................................................................................... 2

Fed. R. Evid. 703 ................................................................................................................................... 2

## I. INTRODUCTION

Best Buy and ViewSonic's ("Plaintiffs") damages expert, Dr. Frankel, provided expert reports in this case that failed to analyze or calculate the actual damages attributable to the commerce done by Defendants Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. (collectively, "Chunghwa"), as required by the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"), Pub. L. No. 108-237, § 213(a), 118 Stat. 665 (2004).  As Dr. Frankel explained at deposition, he "ha[d]n't done [the] calculation" to support "any specific opinion as to damages attributable to Chunghwa sales," and he "ha[d]n't tried to" "offer any specific opinion in any of [his] reports as to damages attributable to Chunghwa Picture Tubes."  Decl. of Austin Schwing in Support of Chunghwa's Mot. in Limine, ECF No. 3526-1 ("Schwing Decl."), Ex. A at 281:4-282:11.[1]  As explained in Chunghwa's motion in limine, ECF No. 3526 ("Mot."), under Federal Rule of Civil Procedure 26 and Ninth Circuit case law, Dr. Frankel's failure to analyze this issue in his expert reports prevents him from providing an opinion on that issue at trial.

In their Opposition Brief, ECF No. 3700 ("Opp."), Plaintiffs attempt to brush aside the fact that Dr. Frankel failed to provide an opinion regarding actual damages attributable to Chunghwa. Unable to identify for the Court anywhere in the expert reports where Dr. Frankel analyzed actual damages attributable to Chunghwa, they instead attempt to submit *new* expert evidence, including several new tables attached to a new expert declaration.  *See* Frankel Decl. ISO Pls.' Opp., ECF No. 3700-1 ("Frankel Decl."), Exs. 1-3.  But Plaintiffs cannot rewrite their expert reports now – many months after they were due and expert depositions have been concluded – because that is contrary to Rule 26 and would be unfairly prejudicial to Chunghwa.  The fact remains that Dr. Frankel did not analyze the actual damages attributable to Chunghwa's commerce, and therefore he may not offer such an opinion at trial.

In any event, the fatally flawed damages methodologies that Plaintiffs belatedly suggest they would like to present at trial, even though they are nowhere in their expert reports, cannot be squared

---

[1] All citations to the Schwing Declaration are to the declaration filed in support of Chunghwa's Motion in Limine, filed at ECF No. 3526-1.

with how damages must be calculated under ACPERA and Ninth Circuit precedent. First, ViewSonic claims now for the first time that *all* of its purchases of finished products from two independent companies, Tatung Company and Jean Co., constitute direct damages attributable to Chunghwa even though those companies are not alleged co-conspirators or alter egos of Chunghwa, and even though those companies did not source their tubes exclusively from Chunghwa. That theory, which conflates the issue of standing under *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), with proof of damages, is inconsistent with both ACPERA and the Ninth Circuit's limitations on calculating damages in an alleged "ownership and control" situation.

Second, Best Buy claims now for the first time that it can simply use Chunghwa's *global* market share to establish the damages "attributable" to Chunghwa that it indirectly suffered for its purchases of finished products in the United States. But this methodology, which was nowhere contained in Dr. Frankel's expert report, is impermissibly speculative and based on unfounded assumptions. Dr. Frankel simply has no basis for presuming that Chunghwa's global market share of CRT sales would be the same as the proportion of CRT finished goods containing Chunghwa tubes that Best Buy purchased. Best Buy purchased finished goods from only select vendors in only certain geographies, and Dr. Frankel has unequivocally testified that he has no idea which products that Best Buy purchased contained Chunghwa CRTs because he never attempted to analyze this issue. Schwing Decl., Ex. A at 277:14-19.

In short, neither of the approaches belatedly advocated by ViewSonic or Best Buy is permitted under ACPERA or Ninth Circuit case law, and both are irrelevant, non-probative, substantially prejudicial, foundationless, speculative, and improper expert testimony beyond the scope of the reports. *See* Fed. R. Civ. Proc. 26(a)(2)(B); Fed. R. Evid. 104(a), 401, 403, 702, 703. Plaintiffs therefore may not offer at trial opinions or calculations regarding actual damages attributable to Chunghwa.

## II.  ARGUMENT

ACPERA limits any recovery from Chunghwa to "actual damages sustained by" a plaintiff that are "attributable to the commerce done by" Chunghwa in "any civil action alleging a violation of section 1 or 3 of the Sherman Act, or alleging a violation of any similar State law." ACPERA

§ 213(a). Plaintiffs contend that "ACPERA's damages limitation means that Chunghwa is not subject to treble damages or joint and several liability—nothing more." Opp. at 3. But that argument ignores the plain statutory language that any actual damages must be "attributable to" the commerce done by Chunghwa. *E.g.*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (court's "duty" is "to give effect, if possible, to every clause and word of a statute" (citation omitted)). Dr. Frankel's expert reports contained no analysis of actual damages attributable to Chunghwa and Dr. Frankel admitted in his deposition that he had not done that analysis. Schwing Decl., Ex. A at 281:4-282:11. That should be the end of the analysis because under Rule 26 and Ninth Circuit precedent, an expert may not testify on opinions not expressed in his or her expert report. *See* Fed. R. Civ. Proc. 26(a)(2)(B); *id.* 37(c)(1); *U.S. Fid. & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1138 (9th Cir. 2011); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to [Rule 26(a)] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."); *Harrelson v. Dupnik*, No. CV-11-00411, 2014 WL 2510530, at *4 (D. Ariz. Mar. 12, 2014) (rules "prevent[] the expert from 'lying in wait' with new, last-minute opinions"). And Plaintiffs' new theories, which impermissibly go beyond their expert reports, still do not calculate actual damages "attributable to" Chunghwa as required by ACPERA.

**A.      ViewSonic's New Damages Theory That All Of Its Purchases From Third Parties Tatung And Jean Are Attributable To Chunghwa Is Unsupportable.**

Dr. Frankel's expert report for ViewSonic provides no opinions regarding ViewSonic's actual damages attributable to Chunghwa's sales of CRTs, a fact he verified during his deposition. Schwing Decl., Ex. A at 281:4-282:11. ViewSonic, however, now attempts to revise Dr. Frankel's expert report to calculate actual damages attributable to Chunghwa. Specifically, ViewSonic claims that ███████████████████████████████████████████████████ and that *all* of ViewSonic's purchases from those companies constitute direct damages attributable to Chunghwa under the "ownership and control" exception set forth in *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), which permits a plaintiff pursuing a Sherman Act claim to avoid the ban on indirect purchaser claims by effectively standing in the shoes of a direct purchaser that was "owned or controlled" by a conspirator. Whether ViewSonic has standing to seek recovery

from Chunghwa for ViewSonic's purchases from Tatung and Jean under *Royal Printing* is an issue the parties vigorously dispute and is the subject of a separate motion for summary judgment presently pending before this Court. ECF Nos. 3102, 3261-3, 3476. Chunghwa will not repeat those arguments here. However, *even if Royal Printing* could apply (which it cannot) and *even if* this damages methodology had been previously offered (which it was not), ACPERA and *Royal Printing* would not permit the type of damages calculation that ViewSonic now belatedly advances.

*First*, ViewSonic has not presented any evidence that it would be proper to allow it to recover from Chunghwa damages based on *all* of its purchases of CRT finished products from Tatung or Jean. Notably, ViewSonic has not provided any evidence that Tatung and Jean sourced their CRTs exclusively from Chunghwa (because they did not). To the contrary, Tatung and Jean both purchased tubes from companies other than Chunghwa. For example, other CRT manufacturers considered Jean to be one of their "major customers." *See*, *e.g.*, Brass Decl., Ex. 1 at CHU00028472E ( ); *id.* Ex. 2 at CHU00028490.02E-91E ( ); *id.* Ex. 3 at CHU00028677.01E ( ). In other words, there is no basis in law or the facts to assume that every finished product ViewSonic purchased from Tatung or Jean contained a tube made by Chunghwa. Given that those companies sourced tubes from multiple CRT manufacturers, some (perhaps many or most) of the finished products ViewSonic bought from Tatung and Jean almost certainly had CRTs made by a supplier other than Chunghwa. Damages therefore cannot be "attributed" to Chunghwa for all purchases of finished products. *See*, *e.g.*, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) ("Calculations need not be exact, but . . . at trial . . . any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." (citation omitted)).

Further, Dr. Frankel conceded in his report that he "[did] not possess the information on the identity of the CRT manufacturer for each model of CRT Product purchased by" ViewSonic. Schwing Decl., Ex. C ¶ 42. Instead, Dr. Frankel now candidly admits that he " " Frankel Decl. ¶ 13 (emphases added). But the *ipse dixit* of ViewSonic's

lawyers seeking to inflate ViewSonic's damages is not evidence, let alone foundation for an expert opinion. *See Gen. Elec. Co. v. Joiner*, 552 U.S. 136, 146 (1997).

To attribute every purchase ViewSonic made from Tatung and Jean to Chunghwa, ViewSonic would need to allege and prove that those companies (a) conspired with respect to CRTs, and (b) were the alter ego of Chunghwa, but those are not things that ViewSonic has even *alleged* in this case, let alone demonstrated through any evidence. While ViewSonic appears to desire to sidestep these requirements through *Royal Printing*, that case merely created a limited exception for standing as to certain *indirect* purchases; it did not expand potential liability for *direct* purchases from non-conspirators. 327 F.2d at 326. It certainly did not create a broad alter ego exception that would allow ViewSonic to attribute all of its direct purchases of finished products from Tatung and Jean to Chunghwa regardless of whether those products contained Chunghwa's CRTs.

***Second***, even if ViewSonic's strained view of *Royal Printing* were correct, that expansive interpretation cannot be reconciled with how damages must be calculated against a leniency applicant under ACPERA. ACPERA states that "the amount of damages . . . shall not exceed that portion of the actual damages sustained by such claimant which is ***attributable to the commerce done by the applicant*** in the goods or services affected by the violation." ACPERA § 213(a) (emphasis added). Under ACPERA, those actual damages must be "attributable to" Chunghwa as that term is understood: "The general tendency of the law, in regard to damages at least, is not to go beyond the first step. As it does not attribute remote consequences to a defendant so it holds him liable if proximately the plaintiff has suffered a loss." *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 490 n.8 (1968) (quoting *S. Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533 (1918)). Tatung's and Jean's sales of CRT products (and particularly those that do not contain Chunghwa's CRTs) are not "attributable to the commerce done by the applicant," Chunghwa, in the "goods or services affected by the violation," i.e., CRTs. ACPERA § 213(a). Therefore, ViewSonic's late-offered, finished-product focused damages methodology is inconsistent with ACPERA.

***Third***, even if damages were available under ACPERA and *Royal Printing* applied, ViewSonic fundamentally misinterprets the type of damages available under *Royal Printing*. In

5

1  *Royal Printing*, the Ninth Circuit was unequivocal that a plaintiff who can satisfy the "ownership and
2  control" test for standing can recover only the overcharge from the conspirator *to the direct*
3  *purchaser*, *not the passed-through overcharge to the plaintiff*.  621 F.2d at 323, 327 (noting that
4  determining damages by focusing on the overcharge to the plaintiff would run afoul of Supreme
5  Court precedent prohibiting speculation about pass-through, and therefore the damages must be based
6  on the overcharge, if any, to the direct purchaser).  Here, even if *Royal Printing* could apply, that
7  would require analyzing the alleged overcharge from Chunghwa to Tatung and Jean.  But Dr.
8  Frankel's report does not calculate damages based on that alleged overcharge, if any, and he admitted
9  in his deposition that he "didn't separately calculate an overcharge for anybody."  Schwing Decl., Ex.
10 A at 277:4-8.  Instead, ViewSonic now attempts to tabulate *its purchases* from Tatung and Jean and
11 calls them all damages attributable to Chunghwa, but that would require an examination of pass-
12 through, which is impermissible under *Royal Printing*.

13       ***Separately***, this Court should reject ViewSonic's sudden attempt to ▮▮▮
14 ▮▮▮
15 ▮▮▮
16 ▮▮▮ Frankel Decl., Ex. 3.  To create that new
17 analysis, he did not rely on his report, but instead relied on ▮▮▮
18 ▮▮▮
19 ▮▮▮
20 ▮▮▮
21 ▮▮▮ Frankel Decl. ¶ 14.  The calculations that ViewSonic now proposes are not in the expert
22 report, and therefore are improper.  Fed. R. Civ. Proc. 26(a)(2)(B); *see*, *e.g.*, *In re High-Tech Emp.*
23 *Antitrust Litig.*, No. 11-cv-02509, 2014 WL 1351040, at *12 (N.D. Cal. Apr. 4, 2014) ("[B]ecause
24 Plaintiffs waited until after Defendants had filed their last expert report for [Plaintiffs' expert] to offer
25 a new theory, Plaintiffs have violated Rule 26(a)(2)(B)'s requirement . . .").
26       ViewSonic's argument that Chunghwa *could have* done those calculations itself and therefore
27 suffers no unfair surprise from these *new* calculations, Opp. at 12-13, is incorrect.  First, Plaintiffs'
28 expert cannot hide his opinions in backup files without disclosing them in his expert report, and

indeed disclaim that he has even done the work during his deposition, only to surprise-attack Chunghwa with these opinions later. *See*, *e.g.*, *Oracle Am., Inc. v. Google, Inc.*, No. C 10-03561, 2011 WL 5572835, at *3 (N.D. Cal. Nov. 15, 2011) (new opinions cannot be offered after the opening reports "like Odysseus and the Greeks springing forth from their wooden hideout in Troy" because they "would not be subject to a direct response from any opposing expert[, and t]his immunity, combined with the element of surprise, would be unfair"). Moreover, the back-up file to which ViewSonic now refers is ████████████████████████████████████" Brass Decl., Ex. 6.² Nothing more. It is disingenuous to claim that Chunghwa is not unfairly surprised by Dr. Frankel's new calculations based on ████████████████████████████████ ████████████. Second, Chunghwa had no reason to attempt to divine this analysis ████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ for an analysis that ViewSonic's expert conceded he had never done and which appeared nowhere in his report.

Further, Dr. Frankel's new approach does not make any sense. It certainly does not establish actual damages "attributable to" Chunghwa: ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████. *See* Lam Decl., Ex. I (Frankel ViewSonic Report), ECF No. 3698-28, Ex. 16c ████████████████████████████████); Opp. at 2 n.3 (explaining that "unallocated direct damages" are "where no records exist to establish the identity of the seller"). Actual damages cannot be attributed to Chunghwa by ████████████████████████████████████████████ ████████████, particularly when ViewSonic cannot even link that other company and Chunghwa sales with any reliability. And Chunghwa has no way to now examine Dr. Frankel on the unsupportable Table 3 he belatedly attached to his new declaration, which is the very kind of

---

² Chunghwa has no records of receiving the "████████████████████████████" file that ViewSonic claims "████████████████████████████████████████████." Opp. at 5; Frankel Decl. ¶ 14. After ViewSonic filed its Opposition, Chunghwa's counsel asked ViewSonic's counsel to identify that file. Brass Decl. ¶ 7. ViewSonic's counsel replied by sending a file with a *different* name along with ████████████████████████████████████████████████" *Id.*, Ex. 5. ████████████████. *Id.*, Ex. 6.

"unacceptable sandbagging" courts prohibit. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 482 (S.D.N.Y. 2009) (cited in Opp. at 12); *see In re High-Tech Emp. Antitrust Litig.*, 2014 WL 1351040, at *12 ("Plaintiffs will not be allowed to 'sandbag' Defendants with new analysis that should have been included at the very least in [Plaintiffs' expert's] opening merits report.")

In sum, Dr. Frankel did not provide these opinions in his report, and therefore ViewSonic may not offer them now. The Court should disregard ViewSonic's impermissible attempt to belatedly offer new, unfounded expert opinions that conflict with *Royal Printing* and ACPERA and which have no basis in the factual record.

**B.    Best Buy's New Market Share Calculations Do Not Establish Actual Damages Attributable To Chunghwa.**

Best Buy also hired Dr. Frankel to prepare a substantially similar report, which did not analyze actual damages attributable to any defendant, including Chunghwa. Best Buy now offers a different, but similarly unfounded, theory as to why Dr. Frankel supposedly calculated actual damages attributable to Chunghwa even though he unequivocally testified in his deposition that he did not. Best Buy contends that to "compute damages attributable to Chunghwa," one need only "multiply[] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." Opp. at 6. Notably, Best Buy cites Dr. Frankel's newly created declaration, not his expert report, underscoring that his expert report does not contain such an opinion. Opp. at 6, *id.* n.8.

Best Buy also states that Dr. Frankel explained in his deposition that he could perform this calculation. More accurately, Dr. Frankel testified at deposition that he "might" be able to perform such an analysis, but he admitted that "[he] ha[d]n't done that calculation." Schwing Decl., Ex. A at 282:3-11.[3] Plaintiffs' attempt to spin Dr. Frankel's new opinions as "a permissible explanation of

---

[3] Plaintiffs' heavy reliance on this passage from the deposition is taken out of context (Dr. Frankel testified repeatedly that he had in fact done no such analysis) and is notable for the amount of material Plaintiffs insert in brackets to shape the quote to the point they now try to make. *See* Opp. at 5-6. Also unfounded is Plaintiffs' criticism of Chunghwa for not asking more follow-up questions. *See* Mot. at 3-5. Chunghwa had no need to ask additional follow-up questions regarding ways in which the analysis could be done because Dr. Frankel testified unequivocally that he had done no such analysis. Schwing Decl., Ex. A at 282:3-11.

previously disclosed opinions" and not "an entirely new opinion," Opp. at 9, is wrong. Best Buy's argument is akin to a student saying that he did his algebra homework on time because he said on the due date that he might be able to do it later by using mathematics. But Dr. Frankel plainly testified he did *not* do the calculation: "I haven't done that math. I'd have to think about whether I have enough information to do that math." Schwing Decl., Ex. A at 281:15-282:1. While Dr. Frankel now attempts to belatedly provide a new opinion, this type of "transgression" "goes to much more than merely supplementing, elaborating upon, and explaining his report" and is not harmless because Chunghwa "lacked adequate notice to prepare a rebuttal report or to prepare for or closely examine [the expert's] testimony on this subject at depositions." *Harrelson*, 2014 WL 2510530, at *4 (precluding new expert opinion offered after opening report); *see In re High-Tech Emp. Antitrust Litig.*, 2014 WL 1351040, at *12 ("[E]xpert disclosure . . . [is] designed to forestall 'sandbagging' by a party with the burden of proof who wishes to save its best points for reply, when it will have the last word, a common litigation tactic." (quotation omitted)). The time for disclosure of expert opinions passed long ago and Plaintiffs' attempt to add new expert opinions now is impermissible.

But even if Dr. Frankel's *new* opinions could retroactively be inserted into his expert reports despite the prejudice to Chunghwa, which they cannot, they still are impermissibly based on speculation and unfounded assumptions. Best Buy contends that Chunghwa's global market share applied to the "global indirect damages based on Defendants' market share" would be "a just and reasonable estimate" of damages. Opp. at 13-14. But it does not explain how those damages would be "*attributable to*" Chunghwa, as required by ACPERA. ACPERA § 213(a) (emphasis added). Chunghwa's global market share of CRT sales does not provide any information regarding which specific vendors purchased those CRTs, let alone which types and amounts, and in which geographies those vendors purchased those CRTs. Nor does Chunghwa's global market share have any bearing on from which vendors of finished products Best Buy ultimately purchased products and whether and in what amounts those products contained Chunghwa's CRTs. Schwing Decl., Ex. A at 279:4-6 ("Q. Do you know which entities Chunghwa Picture Tubes sold tubes to? A. No, I have not done that analysis.")

1    Further, Best Buy's proposed methodology does not account for many significant variations,
2  such as the different geographic reach of defendant CRT manufacturers, the different CRT sizes they
3  made, or the different chains of distribution.  These significant problems reduce Best Buy's theory to
4  pure speculation.  For example, although Best Buy only purchased CRT products containing CRTs of
5  certain sizes, Dr. Frankel conceded in his deposition that he made no effort whatsoever to determine
6  Chunghwa's market share for various sizes of CRTs.  Schwing Decl., Ex. A at 279:7-16.  Indeed, Dr.
7  Frankel recognizes in his new declaration that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇,
8  Frankel Decl. ¶ 11, but ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
9  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—finished products that could not have incorporated a tube
10 made by Chunghwa.  *See* Lam Decl., Ex. G (Frankel Best Buy Report), ECF No. 3698-23, Ex. 16a.
11 Yet Best Buy's theory makes no allowance for the fact that over half of its indirect CPT damages
12 claims could not possibly be attributed to Chunghwa.  Best Buy also ▇▇▇▇▇▇▇▇▇▇▇▇▇▇
13 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, *id.* Ex. 15, but Chunghwa did not make and
14 hardly sold tubes in the United States.  *See* Mot. at 6.

15   Boiled down, Best Buy's approach is an impermissible attempt to "prove" damages through a
16 logical fallacy that courts, including the Northern District of California, have rejected repeatedly.
17 Namely, Best Buy engages in the fallacy of division, which is to argue that what is true of the whole
18 is also necessarily true of its parts.  *See Rosen v. Unilever U.S., Inc.*, No. C 09-2563, 2010 WL
19 4807100, at *6 (N.D. Cal. May 3, 2010) (rejecting the fallacy of division); *see, e.g., Christian v.*
20 *Generation Mortg. Co.*, No. 12 C 5336, 2013 WL 2151681, at *3 (N.D. Ill. 2013) (same) (citing *Wal-*
21 *Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)).  Put simply, using Chunghwa's global market
22 share to all suppliers is not a reasonable way to determine how many of Best Buy's products, which
23 were purchased from a select few vendors in the United States, actually contained Chunghwa's
24 CRTs, and Dr. Frankel has done absolutely no analysis to suggest to the contrary.

25   Dr. Frankel's new opinion also runs afoul of ACPERA because he does not even attempt to
26 determine damages that are specifically "attributable to" Chunghwa.  This is because after he applies
27 his faulty "global market share" approach to calculate Chunghwa's supposed share of CRTs in Best
28 Buy's CRT products he then applies an overcharge assumption that is not "attributable to" Chunghwa

1    at all.  Schwing Decl., Ex. A at 282:12-283:5.  To the contrary, Dr. Frankel uses an overcharge
2    assumption that Dr. McClave calculated using an *average* for *all of the defendants together*, not for
3    Chunghwa specifically.  *Id*.  Dr. Frankel has provided no opinion whatsoever that this average
4    overcharge rate can reasonably be applied to Chunghwa.  Nor could he since he was not asked by
5    Best Buy to provide an opinion on that issue; the overcharge issue is one upon which Best Buy relies
6    on Dr. McClave, who notably has not provided a supporting opinion.  *Id*.; Brass Decl., Ex. 4 at 24:3-
7    14, 45:11-46:1 (Frankel Depo. Tr.).  Using this all-defendant average overcharge rate is therefore
8    unfounded and a far cry from establishing damages that are specifically "attributable to" Chunghwa
9    as required by ACPERA.

10   Further, because Best Buy has now clarified that its "damages attributable to Chunghwa arise
11   from indirect purchases," Opp. at 4, Best Buy cannot recover from Chunghwa *at all* under ACPERA.
12   As Chunghwa noted in its moving papers, ACPERA allows recovery only for direct purchases
13   because the statute specifically limits damages to "actual damages."  *See* Mot. at 6 n.*.  Under federal
14   antitrust law, only direct purchases can give rise to "actual damages."  *Ill. Brick Co. v. Illinois*, 431
15   U.S. 720, 746 (1977) ("[T]he legislative purpose . . . [of] the antitrust laws . . . is better served by
16   holding direct purchasers to be injured to the full extent of the overcharge paid by them than by
17   attempting to apportion the overcharge among all that may have absorbed a part of it.").  Further,
18   Best Buy may not sidestep this requirement by arguing that it advances a Minnesota state law claim
19   because ACPERA expressly preempts any indirect purchaser claim made under state law.  Indeed,
20   ACPERA applies to "any civil action alleging a violation of section 1 or 3 of the Sherman Act, or
21   alleging a violation of any similar State law."  ACPERA § 213(a).  By explicitly limiting the
22   available recovery under federal and state law to "actual damages," Congress expressly and impliedly
23   preempted state law claims to the extent they authorize recovery for indirect purchaser claims.  *See*,
24   *e.g.*, *Jones v. Rath Packing Co.*, 430 U.S. 519, 525-26 (1977) ("This result is compelled whether
25   Congress' command is explicitly stated in the statute's language or implicitly contained in its
26   structure and purpose.").

27   In sum, Dr. Frankel failed to analyze actual damages attributable to Chunghwa in his report,
28   and Best Buy's eleventh-hour attempt to rewrite Dr. Frankel's report is improper.  This Court should

1 reject Best Buy's attempt to offer previously undisclosed, speculative, and unfounded expert opinions
2 that contradict how damages must be calculated under ACPERA.

3 **C.     There Is No Inequity In Requiring Plaintiffs To Comply With ACPERA.**

4     The purpose of ACPERA is to shield a leniency applicant from expansive civil liability (and
5 thereby incentivize it to apply for leniency) with no downside to a plaintiff's full recovery from other
6 co-conspirators through joint and several liability. *See*, *e.g.*, 150 Cong. Rec. S3610-02, S3615 (daily
7 ed. Apr. 2, 2004) (statement of Sen. Leahy) ("And while a party that receives leniency would only be
8 liable for the portion of the damages actually caused by its own actions, the rest of its non-
9 cooperating co-conspirators would remain jointly and severally liable for the entire amount of
10 damages . . . to ensure that no injured party will fail to enjoy financial redress."). Here, Chunghwa
11 was incentivized to self-report its conduct in order to obtain the protections against civil liability
12 offered by ACPERA, as Congress intended. The U.S. Department of Justice and civil plaintiffs
13 received cooperation from Chunghwa. And ViewSonic and Best Buy suffer no prejudice if they fail
14 to prove actual damages attributable to Chunghwa because they can still recover from alleged co-
15 conspirators through joint and several liability the full trebled amount of any illegal overcharges they
16 prove they suffered. But allowing Plaintiffs to stretch the application of ACPERA beyond what is
17 permitted would contravene Congress's intent. It would penalize the leniency applicant by creating a
18 significant end-run around the plain language of the statute—i.e., allowing a plaintiff to recover from
19 an applicant when it does not establish *actual damages attributable to* that applicant.

20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

### III. CONCLUSION

For the foregoing reasons, Chunghwa respectfully requests that the Court grant its motion in limine to exclude any opinion or calculation at trial regarding the actual damages attributable to Chunghwa.

DATED: March 6, 2015            Respectfully submitted,

By:     /s/ *Rachel S. Brass*
            Rachel S. Brass

GIBSON, DUNN & CRUTCHER LLP
JOEL S. SANDERS, SBN 107234
JSanders@gibsondunn.com
RACHEL S. BRASS, SBN 219301
RBrass@gibsondunn.com
AUSTIN SCHWING, SBN 211696
ASchwing@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, California 94105-2933
Telephone: 415.393.8200
Facsimile: 415.393.8306


FARMER BROWNSTEIN JAEGER LLP
WILLIAM S. FARMER, SBN 46694
WFarmer@FBJ-law.com
DAVID BROWNSTEIN, SBN 141929
DBrownstein@FBJ-law.com
JACOB ALPREN, SBN 235713
JAlpren@FBJ-law.com
235 Montgomery Street, Suite 835
San Francisco California 94104
Telephone: 415.962.2876
Facsimile: 415.520.5678

Attorneys for Defendants
CHUNGHWA PICTURE TUBES, LTD and
CHUNGHWA PICTURE TUBES (MALAYSIA) SDN. BHD.

# DECLARATION OF SERVICE

I, Joseph Hansen, declare as follows:

I am employed in the County of San Francisco, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 555 Mission Street, Suite 3000, San Francisco, California, 94105, in said County and State. On the date below, I served the within:

**DEFENDANTS CHUNGHWA PICTURE TUBES, LTD. AND CHUNGHWA PICTURE TUBES (MALAYSIA) SDN. BHD.'S REPLY IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE OPINIONS OR CALCULATIONS REGARDING ACTUAL DAMAGES ATTRIBUTABLE TO THE CHUNGHWA DEFENDANTS**

to all named counsel of record as follows:

☑ **BY ECF (ELECTRONIC CASE FILING)**: I e-filed the above-detailed documents utilizing the United States District Court, Northern District of California's mandated ECF (Electronic Case Filing) service on March 6, 2015. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the documents upon confirmation of e-filing.

I certify under penalty of perjury that the foregoing is true and correct, that the foregoing document(s) were printed on recycled paper, and that this Declaration of Service was executed by me on March 6, 2015, at San Francisco, California.

                                                */s/ Joseph Hansen*
                                                   Joseph Hansen

101888337.10

14

CHUNGHWA'S REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE OPINIONS OR CALCULATIONS REGARDING ACTUAL DAMAGES – MASTER CASE NO. 07-CV-5944 SC