Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 626-3600
Facsimile:  (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., Toshiba America*
*Consumer Products, L.L.C., and Toshiba America*
*Electronic Components, Inc.*

Additional Counsel On Signature Pages

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC MDL No. 1917 |
|---|---|
| This Document Relates to: *Sharp Electronics Corp.*, et al. v. *Hitachi Ltd.*, et al., Case No. 13-cv-1173 *Sharp Electronics Corp.*, et al. v. *Koninklijke Philips Elecs., N.V.*, et al., Case No. 13-cv-2776 | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN EXPERT TESTIMONY OF JERRY A. HAUSMAN** Oral Argument Requested Date:  August 7, 2015 Time:  10:00 a.m. Judge:  Hon. Samuel Conti |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT ........................................................................................................ 1

    A.     Sharp Never Alleged A Claim For A Sherman Act Violation Based Upon An Agreement To Exchange Information In Any Of Its Complaints ....................................................................................................... 1

    B.     Sharp's Attempt To Add A New Claim Through Discovery And Expert Opinion Is Procedurally Improper And Insufficient To Provide Requisite Notice ................................................................................... 6

    C.     Defendants Would Suffer Prejudice If A New Claim Were Added At This Late Stage ........................................................................................ 10

    D.     Sharp Has Not Met Its Burden To Show That Dr. Hausman's Testimony Is Relevant To Sharp's *Per Se* Price-Fixing Claim ...................... 11

III.    CONCLUSION .................................................................................................... 13

1

## TABLE OF AUTHORITIES

2

**Case**                                                                                    **Page(s)**

3
4
*Adobe Lumber Inc. v. Hellman*,
  No. 05-1510, 2010 WL 760826 (E.D. Cal. Mar. 4, 2010)................................... 7

5
*Bassani v. Sutton*,
  No. 08-3012, 2010 WL 1734857 (E.D. Wash. Apr. 28, 2010).......................... 9

6
7
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................ 7

8
9
*In re Citric Acid Litig.*
  191 F.3d 1090 (9th Cir. 1999) ........................................................................ 5

10
*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)........................................................................................ 11

11
12
*Gumbs v. Litton Loan Servicing*,
  No. 09-cv-01159, 2009 WL 3246605 (E.D. Cal. Oct. 7, 2009) ...................... 8

13
14
*J & J Sports Prods., Inc. v. Torres*,
  No. 09-cv-391, 2009 WL 1774268 (M.D. Fl. June 22, 2009) .......................... 8

15
*Knevelbaard Dairies v. Kraft Foods, Inc.*,
  232 F.3d 979 (9th Cir. 2000) .......................................................................... 11

16
17
*Nat'l Sur. Corp. v. Charles Carter & Co.*,
  539 F.2d 450 (5th Cir. 1976) .......................................................................... 9

18
19
*Pena v. Taylor Farms Pac., Inc.*,
  No. 13-cv-01282, 2014 WL 1330754 (E.D. Cal. Mar. 28, 2014)............... 8, 9, 10

20
*Pickern v. Pier 1 Imports (U.S.), Inc.*
  457 F.3d 963 (9th Cir. 2006) ...................................................................... 8, 10

21
22
*Planmatics, Inc. v. Showers*,
  137 F. Supp. 2d 616 (D. Md. 2001)................................................................ 9

23
24
*Richardson v. Rose Transport, Inc.*,
  No. 11-0317, 2014 WL 121690 (E.D. Ky. Jan. 13, 2014)................................ 10

25
*Scheller v. Interstate Realty Mgmt.*,
  No. 14-cv-0457, 2014 WL 907363 (E.D. Cal. Mar. 7, 2014)............................ 2

26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

**Rules**

Fed. R. Civ. P. 8 ................................................................................................................ 8

Fed. R. Civ. P. 8(a) ........................................................................................................... 7

Fed. R. Civ. P. 10(b) ......................................................................................................... 2

Fed. R. Evid. 702 ............................................................................................................ 11

**Other Authorities**

15 U.S.C § 1 .......................................................................................................... 3, 5, 11

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

## I.      INTRODUCTION

Sharp had its case transferred to this MDL by representing that its complaint contained the same allegations of price-fixing as the other MDL actions.  Now, Sharp claims Defendants should have known all along that it was also seeking an entirely different claim against them based upon an agreement to exchange information.  In all three iterations of its complaint, however, Sharp did not provide notice of that distinct rule-of-reason information-exchange claim under the Sherman Act.  Sharp's attempt to introduce its new claim through cryptic discovery responses and expert opinion is both procedurally improper and insufficient to provide notice of the new claim.  Defendants would be severely prejudiced if this new claim was allowed at this late stage because it would alter the nature of the litigation and require reopening discovery and summary judgment briefing on the new claim.  Sharp should not be allowed to present evidence at trial on the separate, unpleaded claim of an agreement to exchange information.

Sharp has not met its burden in establishing that Dr. Hausman's rule-of-reason analysis is relevant to its *per se* price-fixing claim.  Sharp's conclusory statement that the same methodology would apply under either claim is not proof of relevance.  Nowhere in Dr. Hausman's report or testimony has he represented that the same methodology he applied to the alleged information-exchange violation would also apply if there was a *per se* global price-fixing conspiracy as Sharp pleaded in its complaints.  Accordingly, the Court should preclude Dr. Hausman's testimony related to Sharp's unpleaded rule-of-reason claim based upon the anticompetitive effects of Defendants' alleged information exchanges and his estimate of Sharp's damages based upon those information exchanges.

## II.     ARGUMENT

### A.      Sharp Never Alleged A Claim For A Sherman Act Violation Based Upon An Agreement To Exchange Information In Any Of Its Complaints

Sharp does not dispute that its first claim for relief in the SAC (or any of its earlier complaints) only alleges a horizontal price-fixing conspiracy among Defendants.  *See* Def. MIL No. 9 at 8-9.  Instead, Sharp points to language in the introduction of its three complaints

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  to suggest that Defendants had notice that Sharp was asserting two distinct and alternative

2  violations of the Sherman Act.  Opp. at 1 (Dkt. 3701).  Specifically, in the first paragraph of

3  Sharp's SAC and prior complaints, Sharp asserts that it "brings this action to recover damages

4  on account of the antitrust injuries it incurred as a result of a long-running conspiracy by

5  suppliers of cathode ray tubes ('CRTs') to coordinate and fix the prices of CRTs and

6  exchange detailed competitive information."   SAC ¶ 1.  To begin with, this introductory

7  statement fails to satisfy Rule 10(b) of the Federal Rules of Civil Procedure, which provides

8  that "each claim should . . . be set forth in a separate count (i.e., a different section) of the

9  complaint, with factual allegations pertaining to each particular claim set forth in the section

10  of the complaint dealing with the particular claim."  *Scheller v. Interstate Realty Mgmt.*, No.

11  14-cv-0457, 2014 WL 907363, at *2 (E.D. Cal. Mar. 7, 2014) (citing Rule 10(b)).  Moreover,

12  a fair reading of this introductory statement in the context of the complaint as a whole

13  suggests that Sharp alleges that the information exchanges were held in furtherance of the

14  price-fixing conspiracy, an allegation Sharp explicitly makes elsewhere in its SAC.  *See, e.g.*,

15  SAC ¶ 253(f) ("exchanging competitive sensitive information in order to facilitate their

16  conspiracy").  In fact, Sharp sets forth the basis for its action in the very next paragraph:

17  "Defendants and their co-conspirators formed an international cartel that conducted a long-

18  running conspiracy extending at a minimum from at least March 1, 1995, through at least

19  December 2007 (the 'Relevant Period').  The purpose and effect of this conspiracy was to fix,

20  raise, stabilize and maintain prices for CRTs."  SAC ¶ 2.  There is no indication in this

21  paragraph, or any subsequent paragraph, that Sharp intended to allege two separate

22  conspiracies accomplished through different anticompetitive conduct.

23       Sharp's attempt to distinguish its complaints from other MDL plaintiffs' complaints is

24  unavailing.  Sharp argues that Defendants should have been on notice of its distinct claim for

25  an information-exchange violation because it alleges that "[w]ith respect to CRTs, Defendants

26  or their agents agreed, *inter alia,* to . . . exchange pertinent information on, *inter alia*,

27  shipments, prices, production, and customer demand . . . ."  Opp. at 2 (citing Sharp

28  Compl. ¶ 6, No. 13-cv-1173, Dkt. 1 ("Sharp Compl.")); *see also* SAC ¶ 6.  Yet, this identical

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   language appears in numerous other MDL plaintiffs' complaints that do not assert a separate

2   claim for an agreement to exchange information.   *See, e.g.*, Compl. for Damages and

3   Injunctive Relief ¶ 4, *Target Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-5514 (N.D.

4   Cal. Nov. 14, 2011), Dkt. 1 ("Target Compl.") ("With respect to CRTs, Defendants or their

5   agents agreed, *inter alia,* to . . . exchange pertinent information on, *inter alia*, shipments,

6   prices, production, and customer demand . . . ."); Compl. ¶ 6, *Dell Inc. v. Philips Elecs. N.*

7   *Am. Corp.*, No. 13-cv-141 (W.D. Tex. Feb. 17, 2013), Dkt. 1 ("Dell Compl.") (same); Compl.

8   ¶ 5, *Best Buy Co. v. Hitachi, Ltd.*, No. 11-cv-5513 (N.D. Cal. Nov. 14, 2011), Dkt. 1 ("Best

9   Buy Compl.") (same).   Most of Sharp's allegations mirror the allegations in other MDL

10  plaintiffs' complaints.   This is not surprising given Sharp's representation in seeking to have

11  its case transferred to the MDL that its claim of price-fixing was the same as other MDL

12  plaintiffs.   *See* Sharp's Administrative Motion Pursuant to Civil L.R. 3-12 to Consider

13  Whether Cases Should Be Related, Dkt. 1604 (March 20, 2013), at 1 ("Both actions involve

14  allegations that defendants conspired to fix the prices of Cathode Ray Tubes ('CRTs') and

15  seek the same form of relief under Section 1 of the Sherman Act, Sections 4 and 16 of the

16  Clayton Act, and the laws of California and other states.").   If Sharp knew it was bringing

17  additional claims that were not at issue in the MDL, it should have stated so in its motion to

18  relate its case to this MDL.

19      Sharp also fails in its attempt to retroactively read a relevant geographic and product

20  market into its complaints.   It is apparent from the face of Sharp's three complaints that Sharp

21  never intended to plead a relevant product or geographic market.   None of Sharp's complaints

22  feature section headings or even paragraphs devoted to the issues of relevant product market

23  or geographic market.   Sharp quotes its complaints out of context in a desperate attempt to

24  prove it properly alleged a relevant product and geographic market, as required to sufficiently

25  plead a rule-of-reason claim.   Sharp asserts that its recognition that CPTs and CDTs are

26  functionally different establishes it was claiming CPTs were a separate product market.   Opp.

27  at 2 (citing Sharp Compl. ¶¶ 3, 27, 29, 110, 197).   However, numerous other MDL plaintiffs

28  make that exact same allegation, verbatim, about the functional distinctions while also

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

claiming the alleged price-fixing conspiracy covers both CPTs and CDTs.  *See*, *e.g.*, Dell Compl. ¶ 79; Best Buy Compl. ¶ 88; Target Compl. ¶ 95.  Several plaintiffs went even further than Sharp in distinguishing between CPTs and CDTs in their complaints by defining those terms separately whereas Sharp combined references to CPTs and CDTs by defining them collectively as "CRTs."  *Compare* Sharp Compl. ¶ 3 ("For purposes of this Complaint, CPTs and CDTs of all sizes will be referred to collectively as 'CRTs'.") *with* Dell Compl. ¶ 3 ("For the purposes of this Complaint, CPTs of all sizes and the products containing them shall be referred to collectively as 'CPT Products.'  Also for the purposes of this Complaint, CDTs of all sizes and the products containing them shall be referred to as 'CDT Products.'").  Sharp's complaints consistently refer to CPTs and CDTs as being collectively part of the CRT market, rather than claiming separate markets.  *See*, *e.g.*, Sharp Compl. ¶¶ 5, 104, 111, 197-99.

As to the relevant geographic market, Sharp cites to a paragraph in its complaint that referenced the "North American CRT market" to suggest that North America was the defined relevant geographic market.  Opp. at 2 (citing Sharp Compl. ¶ 169).  However, that paragraph has nothing to do with the relevant geographic market for Sharp's claim, but merely alleges that bilateral meetings were used to coordinate the pricing agreements with Brazilian and Mexican manufacturers who served the North American market for CRTs.  Sharp Compl. ¶ 169.  In that very same paragraph Sharp refers to a "global conspiracy."  *Id*.  No allegation in any of Sharp's complaints alleges that North America is a separate geographic market.  In fact, the phrase "geographic market" does not appear once in any of Sharp's three complaints.  As to anticompetitive harm, Sharp only alleges that it was injured as a result of the alleged price-fixing conspiracy.  *Id*. ¶ 215 ("As direct purchasers of CRTs, Plaintiffs have suffered a direct, substantial, and reasonably foreseeable injury as a result of Defendants' and their co-conspirators' conspiracy to raise, fix, stabilize or maintain CRT prices at supra-competitive levels.").

Contrary to Sharp's argument (Opp. at 4-5, 7), Defendants' affirmative defenses do not indicate that they were on notice of Sharp's rule-of-reason claim.  Sharp incorrectly asserts that procompetitive justifications for Defendants' alleged conduct are only relevant in

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   a rule-of-reason case.  Opp. at 5.  When a plaintiff only has circumstantial evidence of a *per se*

2   price-fixing claim defendants are entitled to introduce evidence that their conduct is consistent

3   with other plausible explanations, and procompetitive reasons for information exchanges

4   would be a relevant defense.  *See In re Citric Acid Litig.*, 191 F.3d 1090, 1094 (9th Cir. 1999)

5   (finding that in a *per se* case, when a plaintiff rests its case "entirely on circumstantial

6   evidence," the defendant can "rebut an allegation of conspiracy by showing a plausible and

7   justifiable reason for its conduct that is consistent with proper business practice").  Therefore,

8   Defendants were completely justified in asserting affirmative defenses based upon

9   procompetitive reasons for their conduct as to Sharp's *per se* price-fixing claim.  *See, e.g.*,

10  Toshiba Corp.'s Answer to Sharp's Second Am. Compl., Dkt. 2662 (June 30, 2014), at 57

11  (asserting affirmative defense because Toshiba Corp.'s conduct was "in furtherance of

12  legitimate business interests" and "did not unreasonably restrain competition").

13      Tellingly, Defendants also asserted these same affirmative defenses in other MDL

14  cases which do not purport to assert a claim for a rule-of-reason violation based upon an

15  agreement to exchange information.  *See, e.g.*, Toshiba Corp.'s Answer to Dell's First Am.

16  Compl., Dkt. 2473 (Mar. 27, 2014), at 42 (asserting affirmative defense because Toshiba

17  Corp.'s conduct was "in furtherance of legitimate business interests" and "did not

18  unreasonably restrain competition").  Sharp singles out PENAC and KPNV for asserting an

19  affirmative defense titled "Rule of Reason" (Opp. at 4-5), but PENAC and KPNV asserted

20  this same "Rule of Reason" affirmative defense in MDL cases that do not purport to bring a

21  distinct claim based on anticompetitive information exchanges.  *See, e.g.*, KPNV's Answer to

22  Dell's First Am. Compl., Dkt. 1996 (Oct. 7, 2013), at 42 (eighth affirmative defense titled

23  "Rule of Reason"); PENAC Answer to Best Buy's First Am. Compl., Dkt. 2184 (Nov. 4,

24  2013), at 47 (same).  Sharp, for its part, fully understands the applicability of procompetitive

25  justifications for information exchanges in a *per se* case.  In the LCD case (where Sharp

26  pleaded guilty to a *per se* violation of Section 1 of the Sherman Act and paid a criminal fine of

27  $120 million), Sharp asserted an affirmative defense in the civil actions that Sharp had

28  procompetitive reasons supporting its conduct, even though there was no rule-of-reason claim

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    brought by the LCD plaintiffs.  *See, e.g.*, Sharp Electronics Corp.'s Answer to Dell's Second

2    Am. Compl. at 45, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827 (N.D. Cal.

3    Sept. 1, 2011), Dkt. 3425 (Ninth affirmative defense claims "[p]laintiffs' claims are barred, in

4    whole or in part, because the conduct alleged was based on independent and legitimate

5    business justifications").   Therefore, Sharp has no basis to argue that these affirmative

6    defenses indicate that Defendants were on notice of its purported rule-of-reason claim.

      **B.**      **Sharp's Attempt To Add A New Claim Through Discovery**
7                          **And Expert Opinion Is Procedurally Improper And**

8                          **Insufficient To Provide Requisite Notice**

9         Sharp's equivocal reference to an information-exchange violation in its supplemental

10   discovery responses to Hitachi and Samsung SDI (not the undersigned Defendants) is also

11   insufficient to provide notice of the new claim.  Def. MIL No. 9 at 13-14.   Sharp claims that

12   it "did not hide its light under a bushel" (Opp. at 10), but that is exactly what Sharp did by

13   burying its purported identification of a brand new claim in a supplemental discovery

14   response to a request propounded by only two Defendants.   There have been hundreds of

15   discovery responses and supplements throughout the long history of this MDL.   Discovery

16   responses in a case this complex are not meant to spring new claims on Defendants, but rather

17   to narrow the issues and factual bases for the allegations in the plaintiff's complaint.   Notably,

18   Sharp's opposition is silent as to its reason for failing to incorporate this purported new claim

19   into its Second Amended Complaint, which was filed several months *after* these supplemental

20   discovery responses.   Sharp is improperly attempting to circumvent its obligation to seek

21   leave of this Court to amend its complaint to add the new claim by sneaking notice of the new

22   claim through discovery responses.

23        The discovery request to which Sharp responded supposedly announcing its rule-of-

24   reason claim demonstrates Sharp's inconsistent position on notice of the claim.  In June 2013,

25   Samsung SDI and Hitachi propounded an interrogatory requesting that Sharp: "State with

26   specificity the factual basis . . . for Your allegation that each of the Defendants conspired,

27   combined and contracted to fix, raise, maintain, and stabilize the price at which CRTs were

28   sold, as alleged in, *inter alia*, Paragraph 5 of the Complaint."  Benson Decl. Ex. 1 at 14.   In

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   its initial response to this interrogatory, Sharp made no reference to a purported rule-of-reason

2   information-exchange conspiracy claim.  *Id*. at 14-15.  Contrary to Sharp's argument that the

3   rule-of-reason claim was properly asserted in the initial complaint, Sharp did not supplement

4   this discovery response to clarify the factual basis for its allegations by adding the purported

5   rule-of-reason claim until February 26, 2014, almost a year after it filed the initial complaint.

6   Sharp provides no explanation for this inconsistent position.

7          The list of discovery responses that supposedly reference Sharp's rule-of-reason claim

8   exemplifies the ineffectiveness of Sharp's alleged disclosure.  Opp. at 10-11.  ***None*** of these

9   discovery responses specifically references a rule-of-reason claim based upon an agreement to

10  exchange information.  The vast majority of these discovery responses do not even directly

11  reference Sharp's February 26, 2014 supplemental responses — which, as discussed below,

12  do not constitute sufficient notice of the new claim.  There are multiple layers of incorporation

13  by reference to review before one even gets to a general reference to Sharp's February 26,

14  2014 supplemental responses.  *See* Benson Decl. Exs. 12, 14-24 (interrogatory responses that

15  reference another set of interrogatory responses that reference the February 26, 2014

16  supplemental responses without specific mention of rule-of-reason claim).  It is not

17  Defendants' burden to untangle the web of incorporation by references and cross-references to

18  other discovery responses to learn that Sharp is attempting to bring an entirely new claim for

19  relief.  That type of convoluted disclosure cannot suffice to provide "the defendant [with] fair

20  notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v.*

21  *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

22         Sharp simply cannot cure the deficiencies in its complaint through some oblique

23  reference to a potential new claim in its discovery responses.  *See* Def. MIL No. 9 at 13-14;

24  *see also Adobe Lumber Inc. v. Hellman*, No. 05-1510, 2010 WL 760826, at *5 (E.D. Cal. Mar.

25  4, 2010) ("A plaintiff may not make vague and generic allegations in her complaint and

26  simply add facts as discovery goes along without amending the complaint because to do so

27  'would read the "fair notice" requirement out of Rule 8(a) and would seriously undermine the

28  rule's goal of encouraging expeditious resolution of disputes.'"  (citation omitted)).

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   Defendants' cited cases in the opening motion support this proposition. Def. MIL No. 9 at 10-

2   14. In trying to distinguish *Pena*, Sharp completely ignores the *Pena* court's statement that in

3   light of the Supreme Court's decisions in *Twombly* and *Iqbal*, which involved standards for

4   pleading claims, disclosure of new allegations through discovery alone fails to satisfy the

5   notice requirement of Rule 8 of the Federal Rules of Civil Procedure where the new

6   allegations are not included in an amended complaint. *See* Opp. at 14-15; *see also Pena v.*

7   *Taylor Farms Pac., Inc.*, No. 13-cv-01282, 2014 WL 1330754, at *5 (E.D. Cal. Mar. 28,

8   2014) ("Further, in most instances, notice may not be effected through discovery alone

9   because such notice will usually fail to satisfy Rule 8. . . . Instead, particularly in light of the

10  Supreme Court's subsequent decisions in [*Twombly* and *Iqbal*] a plaintiff must amend the

11  complaint or otherwise incorporate new allegations.") (citing *Pickern v. Pier 1 Imports (U.S.),*

12  *Inc.,* 457 F.3d 963, 968-69 (9th Cir. 2006)). Sharp admits that it never amended its complaint

13  to add the new claim (Opp. at 13-14); therefore, disclosure through discovery alone does not

14  satisfy the fair notice requirement of Rule 8.

15      Sharp's effort to distinguish *Bassani* (Opp. at 15) also fails. Sharp's interrogatory

16  responses were both vague and conclusory as to the purported rule-of-reason claim. Sharp's

17  equivocal use of the conjunction "and/or" to purportedly allege alternative *per se* price-fixing

18  and rule-of-reason agreement to exchange information violations is far too ambiguous and

19  non-committal to properly state a claim. *See J & J Sports Prods., Inc. v. Torres*,

20  No. 09-cv-391, 2009 WL 1774268, at *3 (M.D. Fl. June 22, 2009) (holding that the use of

21  "and/or" rendered complaint impermissibly ambiguous, noting that while "[p]laintiffs in

22  federal court are permitted to plead in the alternative . . . they are not permitted to plead 'in the

23  ambiguous'") (citing *United States v. Bush*, 70 F.3d 557, 562 (10th Cir. 1995) (explaining that

24  the use of the conjunction "and/or" adds a great deal of uncertainty and that "such vague

25  language is strongly disfavored")); *see also Gumbs v. Litton Loan Servicing*,

26  No. 09-cv-01159, 2009 WL 3246605 (E.D. Cal. Oct. 7, 2009) (granting defendants' motion to

27  dismiss plaintiff's complaint, which "made vague and ambiguous allegations" employing the

28  phrase "and/or"). Additionally, Sharp's interrogatory responses merely outline the criteria to

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   state a rule-of-reason claim without providing any of the factual bases for that claim.

2   Accordingly, the discovery responses did not constitute sufficient notice of the new claim.

3   *See Bassani v. Sutton*, No. 08-3012, 2010 WL 1734857, at *4-5 (E.D. Wash. Apr. 28, 2010)

4   (finding "vague and conclusory" statements in interrogatory responses "setting forth only ill-

5   defined allegations" were insufficient to put defendant on notice of new claims to warrant

6   defendants taking discovery on the new claims).

7        The cases relied upon by Sharp for the proposition that notice of a new claim may be

8   provided in an interrogatory response (Opp. at 8-9) are all distinguishable.  In *Planmatics, Inc.*

9   *v. Showers*, the court found that "the allegations and claims set forth in the complaint were

10  sufficient to put Showers on notice of the alternative theories for breach of fiduciary duties

11  that could be raised against him."  137 F. Supp. 2d 616, 625 (D. Md. 2001).   In terms of the

12  discovery response, the court merely found that it "served its function of flushing out the

13  factual underpinnings of Plaintiff's claim."  *Id.*   Here, as discussed above, Sharp's complaint

14  does not provide notice of the distinct claim; therefore, discovery is insufficient to flush out a

15  claim that was never pleaded.  Sharp's reliance on *Nat'l Sur. Corp. v. Charles Carter & Co.*,

16  539 F.2d 450 (5th Cir. 1976), is also misplaced.  In that case, the issue of negligence by the

17  subcontractor had expressly been made an issue in third-party complaints.  *Id.* at 458.

18  Furthermore, a trial was held during which the issue of negligence was addressed by all

19  parties.  *Id.*   Therefore, the court found that the parties had tried the issue of negligence by

20  consent even if it had not been properly pleaded in all of the complaints.   *Id.*   Here,

21  Defendants do not consent to presenting evidence of the unpleaded claim at trial.  Finally,

22  both of these cases predate *Twombly* and *Iqbal*, which courts in this circuit have recognized

23  impact the manner in which new claims and allegations may be raised during the course of a

24  case.  *See, e.g.*, *Pena,* 2014 WL 1330754, at *5.

25        Defendants were also not put on notice of Sharp's intention to add a rule-of-reason

26  information-exchange claim through Dr. Hausman's report.  *See* Def. MIL No. 9 at 13.  The

27  fact that Defendants asked Dr. Hausman questions about information exchanges at his

28  deposition does not show notice of the new claim.  Sharp concedes that Dr. Hausman's report

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   is limited to a discussion of alleged information exchanges.  Opp. at 5-6.  As discussed above,

2   evidence of procompetitive justification for information exchanges is relevant to a *per se*

3   claim of price-fixing based on circumstantial evidence.  Therefore, Defendants' questioning

4   about the procompetitive justifications of information exchanges does not prove notice of the

5   rule-of-reason claim, as Sharp suggests.   Defendants questioned Dr. Hausman about the

6   contents of his report, but it was not Defendants' burden to guess whether Sharp intended to

7   change its claims based upon its expert's opinion in the absence of an amendment to the

8   pleadings.  *See, e.g.*, *Richardson v. Rose Transport, Inc.*, No. 11-0317, 2014 WL 121690, at

9   *5 (E.D. Ky. Jan. 13, 2014) ("[T]he fact that an expert witness opined about a defendants'

10  negligence does not, on its own, put the defendants on notice that the plaintiffs are pursuing

11  claims that have not been alleged in either the original complaint or the first amended

12  complaint. . . . The burden is not on the defendant to discern which claims the plaintiff *intends*

13  to bring against it when the complaint makes clear exactly which claims are being brought."

14  (emphasis in original) (citation omitted)).

15      In a footnote, Sharp asserts that courts have found oppositions to motions for summary

16  judgment and other non-pleadings sufficient to put defendants on notice of plaintiff's theories.

17  Opp. at 9 n.14.  However, courts in the Ninth Circuit have consistently held that it is improper

18  to raise a new claim, which had not been properly pleaded, at the summary judgment stage.

19  *See, e.g.*, *Pickern*, 457 F.3d at 968-69; *Pena*, 2014 WL 1330754, at *5.  Therefore, Sharp's

20  reliance on notice of the rule-of-reason claim in exchanges of proposed verdict forms, jury

21  instructions, and the pretrial order, all of which were filed or exchanged after the close of

22  discovery, cannot save its unpleaded claims.

23  **C.    Defendants Would Suffer Prejudice If A New Claim Were**
24  **Added At This Late Stage**

25      Sharp argues that the fact that no depositions of Sharp witnesses had taken place prior

26  to its February 26, 2014 responses means Defendants had a full opportunity to seek discovery

27  on its rule-of-reason claim.  Opp. at 4.  Even if the supplemental interrogatory responses

28  constituted notice of the claim — which they do not — Sharp fundamentally misunderstands

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   the issue.   The key to developing discovery on Sharp's purported rule-of-reason claim would

2   be focused on ***Defendants'*** conduct (not Sharp's conduct) and whether there were any

3   agreements to exchange information.   As of February 26, 2014, sixty-two depositions of

4   Defendants' current or former employees had already taken place in the MDL.   Declaration of

5   Lucius B. Lau ¶ 3.   Defendants would have been prejudiced even if proper notice had been

6   given of the new claim on February 26, 2014 — nearly seven years after the first complaints

7   were filed in this MDL and after substantial discovery had taken place in the MDL.   To allow

8   Sharp to move forward on this unpleaded claim at this even later stage would cause severe

9   prejudice and undue delay because fairness would require reopening discovery and summary

10   judgment briefing to address the new claim.   Def. MIL No. 9 at 11-12.

11
12          **D.     Sharp Has Not Met Its Burden To Show That Dr. Hausman's**
            **Testimony Is Relevant To Sharp's *Per Se* Price-Fixing Claim**

13          Sharp's conclusory statement that Dr. Hausman's opinions are relevant to a Section 1

14   allegation under either a rule-of-reason claim or a *per se* claim does not meet its burden to

15   show Dr. Hausman's testimony is relevant.   *See* Opp. at 15; *see also Daubert v. Merrell Dow*

16   *Pharms., Inc.*, 509 U.S. 579, 592 n. 10 (1993) (finding the proponent of expert testimony has

17   the burden of proving admissibility pursuant to Rule 702 by a preponderance of the evidence).

18   Sharp concedes that Dr. Hausman does not "opin[e] on the issue of whether there was a *per se*

19   illegal agreement."   Opp. at 5.   Yet, Sharp points to nothing in Dr. Hausman's reports or

20   testimony to support the conclusion that his opinion on the amount of overcharges would be

21   the same if he analyzed the case under the assumption that there was a global price-fixing

22   conspiracy on all CRTs as alleged in Sharp's complaints.

23          Sharp fails to explain how Dr. Hausman's testimony on the relevant geographic and

24   product markets is relevant to its *per se* price-fixing claims.   Def. Ex. A (Expert Report of

25   Jerry A. Hausman (Apr. 15, 2014)) ¶¶ 11-16.    In a *per se* price-fixing case, this type of

26   relevant market analysis is unnecessary and irrelevant.   *See Knevelbaard Dairies v. Kraft*

27   *Foods, Inc.*, 232 F.3d 979, 986 (9th Cir. 2000) ("When a *per se* violation such as horizontal

28   price fixing has occurred, there is no need to define a relevant market or to show that the

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   defendants had power within the market."). Sharp concedes that the relevant geographical

2   and product markets are only applicable to its rule-of-reason claim. *See* Opp. at 3-4 ("Sharp

3   also set forth its factual contentions regarding the relevant product market *for the rule-of-*

4   *reason violation* . . . . Sharp additionally set forth the factual basis regarding the geographic

5   market *for the rule-of-reason violation* . . . .") (emphases added).

6        Sharp's citation to the deposition testimony of defense expert Dr. Dennis Carlton

7   (Opp. at 16) does not support Sharp's conclusion that Dr. Hausman's opinion is relevant to its

8   *per se* claim. The excerpt Sharp cites has nothing to do with Dr. Hausman's report or opinion.

9   *See* Opp. at 16 (citing Benson Decl. Ex. 7 (Carlton Dep. 331:22-332:2)). Dr. Carlton was

10  specifically asked about Dell's allegations of price-fixing conduct. *Id.* In providing an

11  answer to a hypothetical question about whether it would be important to know whether a

12  plaintiff is alleging a *per se* as opposed to a rule-of-reason case, Dr. Carlton responded but

13  qualified his response by stating: "maybe I am not fully understanding your question."

14  Benson Decl. Ex. 7 (Carlton Dep. 332:10-11). Dr. Carlton's response to an incomplete

15  hypothetical question unrelated to Dr. Hausman's opinion that Dr. Carlton admitted he did not

16  fully understand adds nothing to Sharp's argument. In the factual situation here, where the

17  scope of the alleged conspiracy differs depending on the theory of liability, it certainly matters

18  whether the expert addressed both scenarios in his report.

19                              *   *   *

20

21

22

23

24

25

26

27

28

III.     CONCLUSION

For these reasons and the reasons set forth in Defendants' motion *in limine* number 9, the Court should grant Defendants' motion and preclude Dr. Hausman from providing expert testimony concerning the effect of Defendants' information exchanges on the North American CPT market and Sharp's alleged damages that resulted from the information exchanges.

Respectfully submitted,

Dated:  March 6, 2015                          **WHITE & CASE** LLP

By:  _/s/ Lucius B. Lau_
    Christopher M. Curran (*pro hac vice*)
    ccurran@whitecase.com
    Lucius B. Lau (*pro hac vice*)
    alau@whitecase.com
    Dana E. Foster (*pro hac vice*)
    defoster@whitecase.com
    701 Thirteenth Street, N.W.
    Washington, DC  20005
    tel.: (202) 626-3600
    fax: (202) 639-9355

    *Counsel to Defendants Toshiba Corporation,*
    *Toshiba America, Inc., Toshiba America*
    *Information Systems, Inc., Toshiba America*
    *Consumer Products, L.L.C., and Toshiba*
    *America Electronic Components, Inc.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MUNGER, TOLLES & OLSON LLP**

By: */s/ Miriam Kim*_____
    JEROME C. ROTH (State Bar No. 159483)
    jerome.roth@mto.com
    MIRIAM KIM (State Bar No. 238230)
    miriam.kim@mto.com
    MUNGER, TOLLES & OLSON LLP
    560 Mission Street, Twenty-Seventh Floor
    San Francisco, California 94105-2907
    Telephone: (415) 512-4000
    Facsimile: (415) 512-4077

    BRAD D. BRIAN (SBN 079001)
    brad.brian@mto.com
    WILLIAM D. TEMKO (SBN 098858)
    William.Temko@mto.com
    GREGORY J. WEINGART (SBN 157997)
    gregory.weingart@mto.com
    E. MARTIN ESTRADA (SBN 223802)
    martin.estrada@mto.com
    MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue, Thirty-Fifth Floor
    Los Angeles, CA 90071-1560
    Telephone: (213) 683-9100
    Facsimile: (213) 687-3702

    ROBERT E. FREITAS (SBN 80948)
    rfreitas@fawlaw.com
    FREITAS ANGELL & WEINBERG LLP
    350 Marine Parkway, Suite 200
    Redwood Shores, California 94065
    Telephone: (650) 593-6300
    Facsimile: (650) 593-6301

    *Attorneys for Defendant LG Electronics, Inc.*

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO
EXCLUDE CERTAIN EXPERT TESTIMONY OF JERRY A. HAUSMAN
Case No. 07-5944 SC
MDL No. 1917
14

**BAKER BOTTS LLP**

By: */s/ John M. Taladay*
JOHN M. TALADAY (*pro hac vice*)
john.taladay@bakerbotts.com
ERIK T. KOONS (*pro hac vice*)
erik.koons@bakerbotts.com
CHARLES M. MALAISE (*pro hac vice*)
charles.malaise@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2400
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

JON V. SWENSON (SBN 233054)
jon.swenson@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699
E-mail: jon.swenson@bakerbotts.com

*Attorneys for Defendants Koninklijke Philips N.V., Philips Electronics North America Corporation, Philips Taiwan Ltd., and Philips do Brasil, Ltda.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

**SQUIRE PATTON BOGGS (US) LLP**

4

By: */s/ Nathan Lane, III*

5

Nathan Lane, III (CA Bar No. 50961)

6

Mark C. Dosker (CA Bar No. 114789)
SQUIRE PATTON BOGGS (US) LLP

7

275 Battery Street, Suite 2600

8

San Francisco, California 94111
Telephone:  (415) 954-0200

9

Facsimile:  (415) 393-9887

10

E-mail:  nathan.lane@squiresanders.com
E-mail:  mark.dosker@squiresanders.com

11

12

Donald A. Wall (Pro Hac Vice)
SQUIRE PATTON BOGGS (US) LLP

13

1 East Washington Street, Suite 2700

14

Phoenix, Arizona 85004
Telephone: + 1 602 528 4005

15

Facsimile: +1 602 253 8129

16

Email: donald.wall@squirepb.com

17

*Attorneys for Defendant Technologies*

18

*Displays Americas LLC with respect to all*
*cases except Office Depot, Inc. v. Technicolor*

19

*SA, et al. and Sears, Roebuck and Co., et al. v.*

20

*Technicolor SA, et al.*

21

22

23

24

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FAEGRE BAKER DANIELS LLP**

By:  _/s/ Kathy L. Osborn_

Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Email: jeff.roberts@FaegreBD.com
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: (303) 607-3500
Facsimile: (303) 607-3600

Stephen M. Judge (*pro hac vice*)
Email: steve.judge@FaegreBd.com
Faegre Baker Daniels LLP
202 S. Michigan Street, Suite 1400
South Bend, IN 46601
Telephone: (574) 234-4149
Facsimile: (574) 239-1900

*Attorneys for Defendants Thomson SA and*
*Thomson Consumer Electronics, Inc.*

Pursuant to Local Rule 5-1(i), the filer attests that the concurrence in the filing of this document has been obtained from each of the above signatories.

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO
EXCLUDE CERTAIN EXPERT TESTIMONY OF JERRY A. HAUSMAN
Case No. 07-5944 SC
MDL No. 1917
17

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

On March 6, 2015, I caused a copy of "REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO EXCLUDE CERTAIN EXPERT TESTIMONY OF JERRY A. HAUSMAN" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.


By:   */s/ Lucius B. Lau*
Lucius B. Lau (*pro hac vice*)


REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 9 TO
EXCLUDE CERTAIN EXPERT TESTIMONY OF JERRY A. HAUSMAN
Case No. 07-5944 SC
MDL No. 1917