Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
**TAYLOR & COMPANY LAW OFFICES, LLP**
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

**IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION**

This Document Relates to:

*Sharp Electronics Corp.*, et al. *v. Hitachi, Ltd.*, et al., Case No. 13-cv-1173 SC;

and

*Sharp Electronics Corp.*, et al. *v. Koninklijke Philips Electronics N.V.*, et al., Case No. 13-cv-2776 SC.

Case No. 07-cv-5944 SC
MDL No. 1917

**PLAINTIFFS SHARP ELECTRONICS CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.'S REPLY BRIEF RE: MOTION IN LIMINE TO EXCLUDE EVIDENCE RELATED TO THE ROLE OF SHARP COMPANIES IN THE TFT-LCD ANTITRUST LITIGATIONS**

**[REDACTED VERSION]**

**INTRODUCTION**

Defendants' position on evidence relating to the TFT-LCD conspiracy is ever-shifting. Plaintiffs SEC and SEMA described in their initial motion that evidence of non-party Sharp Corporation's guilty plea related to TFT-LCDs and other TFT-LCD evidence regarding Sharp companies should be excluded, both because the evidence is not probative of any element of any claim or defense, and because any possible probative value is substantially outweighed by the risk that such evidence will "poison the well" against the Sharp Plaintiffs and result in significant confusion and delay. Simultaneously, Defendants argued that the Court must prohibit all evidence relating to their own participation in the TFT-LCD conspiracy, agreeing that evidence relating to that separate, unrelated alleged conspiracy is irrelevant and is prejudicial. *See* Defs.' Mot. in Limine No. 4 at 1 (MDL Dkt. No. 3572) ("CRTs are the only product at issue in this antitrust litigation.").

In their opposition brief, Defendants concede, as they must, that evidence regarding any Sharp companies' alleged participation in the TFT-LCD conspiracy is not relevant to the issue of liability for the CRT conspiracy. (Opp'n at 3.) Defendants also abandoned any effort to suggest that the Sharp Plaintiffs must have known about the CRT conspiracy because of the role of Sharp companies in the alleged TFT-LCD conspiracy.

Defendants now seek to argue, for the first time, that evidence relating to the TFT-LCD conspiracy should come in as to the Sharp Plaintiffs – but not as to Defendants – because it is relevant to the amount of the Sharp Plaintiffs' damages. This latest contrivance does not withstand scrutiny. Defendants' theory is pure speculation. Most notably, despite submitting numerous expert reports on damages, Defendants have never suggested that the Sharp Plaintiffs' damages should be reduced because of the effect of an LCD conspiracy. To the contrary, none of Defendants' damages experts offers any opinion in this case regarding the relationship between CRT prices and the alleged TFT-LCD conspiracy – and Defendants' damages expert here, Dr. Carlton, [REDACTED] [REDACTED]. Nor, contrary to Defendants' out-of-context quotes, did the Sharp Plaintiffs' expert opine that the alleged LCD conspiracy affected

- 1 -

SHARP'S REPLY BRIEF RE: MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE ROLE OF SHARP COMPANIES IN THE *TFT-LCD ANTITRUST LITIGATIONS*, CASE NOS. 07-CV-5944 (MDL NO. 1917); 13-CV-1173; 13-CV-2776

CRT prices. In fact, Dr. Hausman specifically analyzed whether the LCD TV market had an effect on CPT prices, and found the effect to be not statistically different from zero. Moreover, even if Defendants had evidence in support of their theory (and they do not), that would at most argue in favor of the admission of evidence that CRT prices were affected by the alleged LCD conspiracy – not that Sharp companies were involved in the alleged conspiracy, which has no bearing on the economic effect (or lack thereof), and serves only to prejudice the Sharp Plaintiffs. The cases on which Defendants rely in support of their theory do not support a different result, and indeed bear no resemblance to the facts here.

Nor do Defendants address the serious and unfair prejudice that would result from the admission of evidence in question. Indeed, far from denying the prejudicial impact to the Sharp Plaintiffs of the admission of non-party Sharp Corp.'s guilty plea and of other TFT-LCD evidence, Defendants have confirmed their intent to seek impermissible and inflammatory inferences, delay the proceedings, and indeed conduct a full trial on the TFT-LCD conspiracy in the midst of the already-complicated CRT trial. Thus, Defendants admit that they are seeking to admit non-party Sharp Corp.'s guilty plea to argue guilt by association with respect to the Sharp Plaintiffs (Opp'n at 9), even though SEMA is not alleged to have been involved in the TFT-LCD conspiracy at all, and SEC did not plead guilty. And because non-party Sharp Corp.'s plea does not relate to LCD TVs, and so could not possibly be relevant even under Defendants' concocted damages theory, Defendants acknowledge that they would in fact attempt to prove a broader TFT-LCD conspiracy through contested evidence (Opp'n at 4 n.3), an endeavor that would differ little, if at all, from a full trial on the merits of the TFT-LCD case. Rule 403 was intended to exclude precisely this type of evidence.

## ARGUMENT

### A. Evidence of the Actions of Sharp Companies in the *TFT-LCD* Litigations Is Not Relevant

The Defendants do not contest that evidence of the role of Sharp companies in the alleged TFT-LCD conspiracy is irrelevant to Defendants' liability. Defendants also appear to have abandoned the theories they previously vigorously espoused in pursuing LCD discovery: that

such evidence might be relevant to "determining the timing and extent of Sharp's knowledge of the alleged conspiratorial conduct in the CRT market" and "the extent to which TV manufacturers could pass on cost changes to retailers or down to consumers." (Benson Decl. Ex. D, Defs.' Mot. to Compel, or to Modify Prior Stipulation and Order re LCD Documents at 4-5, July 18, 2014.)

Instead, Defendants now assert for the first time ever in this litigation that the evidence could be relevant to show that "Sharp's own conduct was the cause of at least some of the CRT damages Sharp now seeks to recover." (Opp'n at 2.) That eleventh-hour theory is based on the most speculative of innuendo but no actual facts, and so it cannot provide a basis to introduce evidence that is highly prejudicial and would require a mini-trial to explain. The evidence Defendants seek to admit is therefore inadmissible. *See United States v. Dean*, 980 F.2d 1286, 1288 (9th Cir. 1992) (evidence is relevant only if "the proposition to be proved [is] one that is of consequence to the determination of the action") (internal quotation marks omitted).

**1. Defendants' Attempt To Link the Alleged TFT-LCD Conspiracy to a Reduction in CRT Damages Is Unsupported by the Record**

A damages argument may not be based on speculation. *Farris v. Int'l Paper Inc.*, No. 13-CV-02079-CAS, 2014 WL 6473273, at *2 (C.D. Cal. Nov. 17, 2014). Yet that is all that Defendants offer, pointing to nothing from which a jury could divine whether or how much the price of CRTs was affected by a purported overcharge on LCDs owing to an alleged conspiracy.

First, Defendants' damages experts have offered no opinion regarding the relationship between CRT prices and the alleged LCD conspiracy. That is, despite submitting hundreds of pages of defense expert opinion on damages, and submitting to days of deposition testimony, none of their experts mentioned even once that an LCD conspiracy affected the CRT overcharge, let alone how much it did. Nor do Defendants suggest that any such opinion is forthcoming – and not only because any such opinion would be untimely.[1] That is because Defendants'

[1] Had Defendants wished to pursue the theory they now espouse, they could have done so, and could have included it in their expert reports. They chose not to do so, and are now bound by that decision. *See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 1351040, at *12 (N.D. Cal. Apr. 4, 2014) (a party "will not be allowed to 'sandbag' [the

damages expert in this case, Dr. Carlton, [REDACTED] (*See* Benson Decl. Ex. E, Dep. of Dennis Carlton at 15:16-16:17, Sept. 16, 2014.)

Second, Sharp's expert, Dr. Jerry Hausman, never opined that there was a relationship between CRT prices and the alleged LCD conspiracy. To the contrary, Dr. Hausman analyzed the effect of the LCD TV market on CPT prices, and found it to be not statistically different from zero. (Benson Decl. Ex. F, Rebuttal Expert Report of Jerry A. Hausman at ¶ 4, Sept. 26, 2014.)[2]

Third, the opinions of Dr. Elzinga and Dr. Netz do not support Defendants' purported damages reduction. [REDACTED].[3]

Thus, contrary to Defendants' opposition, none of these experts – neither Plaintiffs' nor Defendants' – supports what the Defendants seek to do, which is to connect the allegedly inflated prices caused by the alleged LCD conspiracy to the overcharges on CRTs. That would leave any such linkage entirely to guess-work or speculation – something the law expressly forbids. *See Farris*, 2014 WL 6473273, at *2 (precluding defendant from offering evidence allegedly relevant to plaintiff's damages because defendant's theory was "too speculative"). That is particularly true here, as "[e]xpert testimony is necessary to establish damages in an antitrust case." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012).

On this record, the notion that Defendants will, at trial, pursue a theory that the Sharp Plaintiffs' damages are lower due to the effects of the alleged TFT-LCD conspiracy is not

---

opposing party] with new analysis that should have been included" in the party's opening expert report).

[2] Notably, in the *TFT-LCD* litigation, Dr. Hausman specifically expressed that he was not offering an opinion on the existence, scope or length of the purported LCD conspiracy. (Benson Decl. Ex. G, Dep. of Jerry A. Hausman at 214:20-215:6, July 23, 2014.)

[3] The direct-action plaintiffs have also moved for a separate trial from the indirect purchaser plaintiffs, and Sharp has indicated that at the appropriate time it may move for a separate trial from the retailer plaintiffs. (MDL Dkt. No. 3666.) If these separate trial motions are granted, neither Dr. Elzinga nor Dr. Netz would testify in a trial of Sharp's claims.

plausible, and confirms that this theory is nothing more than a smokescreen to introduce otherwise inadmissible and prejudicial evidence.

### 2. The Case Law Does Not Permit the Introduction of Defendants' Disguised "Unclean Hands" Defense

As this Court has previously noted, "antitrust violations by a plaintiff cannot immunize defendants from liability for their own violations." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 301 F.R.D. 449, 453 (N.D. Cal. 2014) (citing *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*, 340 U.S. 211, 214 (1951)); *see also Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138-40 (1968) (holding that the *in pari delicto* defense is not available in private antitrust suits). Defendants do not dispute this proposition as to liability. Instead, they suggest that the Sharp companies' supposed wrongdoing can be considered for purposes of determining damages.

As an initial matter, Defendants' theory makes no sense as a basis to bring the entirety of the alleged TFT-LCD conspiracy into this case. What Defendants ultimately appear to be arguing is that, to the extent there is an external factor besides the CRT conspiracy that artificially inflated CRT prices, it should be accounted for. But Defendants have not explained why that economic issue requires the admission of evidence that Sharp companies allegedly participated in that external influence – or why, conversely, the fact that Defendants also participated in the alleged LCD conspiracy would not be equally relevant. That is, if evidence of a Sharp company's alleged participation in the alleged LCD conspiracy should come in, why shouldn't evidence of the Defendants' participation? This is unanswered by Defendants.

Nor does the far-flung, cobbled-together authority on which Defendants rely support what they seek to do here. Rather, each case involved unique facts, not present here – and, critically, clear evidence directly linking plaintiffs' allegedly improper conduct to the existence or scope of their damages. Thus, in *First Beverages, Inc. of Las Vegas v. Royal Crown Cola Co.*, 612 F.2d 1164 (9th Cir. 1980), the only Ninth Circuit case cited by Defendants, the court allowed the defendant soda manufacturer to rebut the plaintiff soda bottler's claim to lost profits – relating to soda distributions outside its assigned territory that the manufacturer had ordered

stopped – by pointing to evidence that First Beverages had been making those sales using illegal shipping methods, a fact that rendered the alleged lost profits unlikely to materialize. *Id.* at 1173-74. As the evidence showed, First Beverages was using non-licensed trucks costing between $100 and $150 for the route in question, while the Interstate Commerce Commission-licensed common carrier minimum rate for the same shipment was $492; the evidence also showed that the ICC would have put a stop to the unlicensed shipments had they continued. *Id.* at 1173. On these unique facts, the court permitted the evidence, noting approvingly that all evidence was limited to the question of lost profits, *id.* at 1174, and that the "illegality was not attacked on an abstract level." *Id.* at 1175. These facts bear no resemblance to this case, in which the Sharp Plaintiffs seek to recover for overcharges on past purchases, on a record that is devoid of any evidence that the Sharp Plaintiffs' behavior caused that overcharge to be higher than it otherwise would have been, and with Defendants focusing almost exclusively on the alleged illegality of the unrelated TFT-LCD conduct rather than on any discrete damages issue.

Defendants' other cases fare no better. For instance, in *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1371 (2d Cir. 1988), the evidence in question was evidence that the plaintiff – a newly-formed football league that went under after failing to acquire a network television contract – had failed not because of any coercive effect of the NFL's TV contracts, but because it pursued a poor business strategy aimed at "forcing a merger with the NFL through the threat of competition" and the litigation. *Id.* at 1342. As the court explained, evidence of the merger strategy was admissible because it "was highly probative on the central issue of whether the USFL's alleged injury and damages, particularly with regard to its failure to obtain a fall network contract, were caused by the NFL's anticompetitive conduct or by the USFL's own deliberate business judgments." *Id.* at 1369. It is hardly surprising, or relevant to this case, that in the face of the argument that plaintiff's own conduct was <u>entirely</u> to blame for the harm sought to be assigned to defendants, such evidence was permitted. Defendants have made no such showing here. And in *Pearl Brewing Co. v. Jos. Schlitz Brewing Co.*, 415 F. Supp. 1122, 1130-31 (S.D. Tex. 1976), the court <u>struck</u> a defense of unclean hands that centered on "plaintiffs' alleged maintenance of a different, though parallel, pricing scheme" than that

maintained by defendant, *id.* at 1131, and ordered a separate trial of defendant's counterclaim based on that same allegation due to the concern that if it was tried with plaintiffs' claims, the jury could be confused "into basing a decision, at least in part, upon the allegedly 'unclean hands' of plaintiffs." *Id.* at 1133. Equally inapposite are *Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL, 2010 WL 3910344, at *3-4 (N.D. Cal. Oct. 4, 2010), and *RealNetworks, Inc. v. DVD Copy Control Ass'n*, No. C 08-4548 MHP, 2010 WL 145098, at *6 (N.D. Cal. Jan. 8, 2010), which both hold that where the plaintiff seeks to recover antitrust damages for injuries suffered on an illegal product – products that should not have been sold at all, because they violated some law, e.g., the Digital Millennium Copyright Act – an antitrust claim may be barred. CRTs, of course, are not illegal.[4]

### B. Evidence of the Actions of Sharp Companies in the *TFT-LCD* Litigations also Should Be Excluded Under Rule 403 for Unfair Prejudice

Defendants also fail to address in any meaningful way the Sharp Plaintiffs' showing of unfair prejudice. If anything, Defendants' opposition confirms that unfair prejudice may be their goal. How else to explain Defendants' stated intent to argue that the plea agreement of an entity that is not party to this litigation – related exclusively to TFT-LCD applications for computer monitors and laptops, portable music players and mobile phones – is admissible against the Sharp Plaintiffs in this case about CRT TVs because non-party "Sharp Corp. is the parent of the entities in this case"? (Opp'n at 9.) In addition to being entirely irrelevant, the evidence that Defendants seek to offer is the very definition of what Rule 403 is intended to exclude – evidence of "[g]uilt by association." *United States v. Wassner*, 141 F.R.D. 399, 405 (S.D.N.Y. 1992); *see also, e.g., Wood v. Mont. Dep't of Revenue*, No. CV 10-13-H-DWM, 2011 WL 4348301, at *1 (D. Mont. Sept. 16, 2011) (stating that courts "must take great care to limit evidence of" criminal convictions due to its prejudicial nature) (internal quotation marks omitted). There can be no serious argument that Sharp Corp.'s plea is admissible.

[4] Defendants cite the ABA Model Jury Instruction on Causation and Damages in Civil Antitrust Cases, which is also inapposite. Opp. at 6-7. Nothing in this ABA model instruction departs from the general rule that an unclean hands defense is unavailable against private plaintiffs in a Sherman Act case.

- 7 -

SHARP'S REPLY BRIEF RE: MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE ROLE OF SHARP COMPANIES IN THE *TFT-LCD ANTITRUST LITIGATIONS*, CASE NOS. 07-CV-5944 (MDL NO. 1917); 13-CV-1173; 13-CV-2776

And that is only the most prejudicial piece of evidence. Other evidence of Sharp companies' role in the *TFT-LCD* litigations is also unfairly prejudicial, as the Sharp Plaintiffs demonstrated in their opening brief. Defendants' arguments to the contrary do not withstand scrutiny. First, the argument that the Sharp Plaintiffs have not "identif[ied] specific documents" is wrong on its face. (Opp'n at 8-9.) The Sharp Plaintiffs specifically described the evidence and argument they seek to exclude, including listing many of the documents by Bates number. (Mot. at 4 n.1.) Second, the Toshiba BTA ruling does not, as Defendants suggest, reflect any relevant type of "close relationship" between Sharp Corp. and the parties in this case. The closest the Court came to a factual finding of any kind was the conclusion that some of the conduct alleged in the Sharp Plaintiffs' complaint arose "'as part of the larger contractual relationship' between the two parent companies [Toshiba Corporation and Sharp Corporation]" because some of the "Sharp Plaintiffs' [finished product] purchases that form the basis of their antitrust claims against Toshiba were made from Sharp Corporation." (MDL Dkt. No. 2435 at 6, 8.) Not only is that conclusion <u>not</u> a factual finding that Sharp Corp. has a "close relationship" with SEC and SEMA, but also SEC and SEMA long ago abandoned all claims relating to finished product purchases; thus, whatever minimal relevance that holding had to connect SEC's and SEMA's claims to Sharp Corp. has now vanished.

Finally, introducing evidence of the involvement of Sharp companies in the events underlying the *TFT-LCD* litigations would necessitate a "mini trial." Defendants would need to prove that the TFT-LCD conspiracy existed and that it affected the price of TFT-LCDs for television monitors, would need to prove that Sharp entities were involved in such a conspiracy affecting the price of TFT-LCDs for television monitors, would need to quantify the TFT-LCD overcharge, and would then need to link that TFT-LCD overcharge to the prices of CRTs sold to the Sharp Plaintiffs in this case. (Of course, Defendants' own participation in the alleged LCD conspiracy would also have to be litigated.) This convoluted trial-within-a-trial structure is improper, would unnecessarily tax the resources of the jury, the Court, and the parties, and is unfairly prejudicial to the Sharp Plaintiffs. The likelihood of such a "mini trial" is itself a basis to exclude evidence under Rule 403. *See, e.g.*, *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d

684, 690 (9th Cir. 2001); *Fidelity Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 09-CV-140-GPC-KSC, 2014 WL 1286392, at *8 (S.D. Cal. Mar. 28, 2014).

**C. Dr. Hausman's *TFT-LCD* Opinions Are Irrelevant For Impeachment**

Dr. Hausman's *TFT-LCD* litigation opinions also are not relevant for impeachment purposes because they are not inconsistent with his opinions in this case. In his *TFT-LCD* report, Dr. Hausman criticized Nokia's expert Dr. Jenkins for not disaggregating her data sufficiently. This is exactly consistent with Dr. Hausman's opinions here. The key difference is that Dr. Jenkins had thousands of data observations in the *TFT-LCD* litigation and could have disaggregated the data further. In this case, Dr. Hausman did not have sufficient data to disaggregate any further than he did:

> Q. Well, didn't you make the same criticism of an expert in the LCD case, the plaintiffs' expert, didn't you criticize her also for not using product mix in her example and not further disaggregating the data?
>
> A. I thought I looked at that in LCD, and I am just speaking from memory, and I didn't find it to be important.
>
> Q. Well, didn't -- whether you found it to be important or not, didn't you find that good econometric practice would be to disaggregate the data?
>
> A. If one has sufficient data. And Dr. Jenkins had a lot more data than I do here. If I remember, she had thousands of observations.
>
> Q. But didn't you just – didn't you criticize her for not further disaggregating the data?
>
> A. Yes, because as I said, if I remember it, she had thousands of observations. I had 200.

Sharp Ex. C, Hausman Dep. at 151:21-152:7. As a consequence, none of Dr. Hausman's opinions in this case is inconsistent with his opinions in the *TFT-LCD* litigation. But even if Dr. Hausman's *TFT-LCD* opinions were relevant for impeachment, the fact that Dr. Hausman offered opinions in connection with the alleged LCD conspiracy <u>on behalf of Sharp companies</u> remains irrelevant – it has no bearing at all on whether those opinions are inconsistent with the opinions he offers here. All that matters is that Dr. Hausman expressed opinions in a prior case, not which parties retained him or on which matters.

**CONCLUSION**

For these reasons, the Court should enter an order excluding evidence of or reference to non-party Sharp Corp.'s guilty plea related to TFT-LCDs, as well as evidence of or reference to the role of Sharp companies in the events underlying the *TFT-LCD* litigations.

DATED: March 6, 2015

By: /s/ *Craig A. Benson*

Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kgallo@paulweiss.com
jsimons@paulweiss.com
cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
**TAYLOR & COMPANY LAW OFFICES, LLP**
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and Sharp Electronics Manufacturing Co. of America, Inc.*

- 10 -

SHARP'S REPLY BRIEF RE: MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE ROLE OF SHARP COMPANIES IN THE *TFT-LCD ANTITRUST LITIGATIONS*, CASE NOS. 07-CV-5944 (MDL NO. 1917); 13-CV-1173; 13-CV-2776