ROBINS KAPLAN LLP
Roman M. Silberfeld, Bar No. 62783
RSilberfeld@robinskaplan.com
David Martinez, Bar No. 193183
DMartinez@robinskaplan.com
Laura E. Nelson, Bar No. 231856
LNelson@ robinskaplan.com
Jill S. Casselman, Bar No. 266085
JCasselman@ robinskaplan.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone:      310-552-0130
Facsimile:      310-229-5800

Attorneys for Plaintiffs
BEST BUY CO., INC.; BEST BUY
PURCHASING LLC; BEST BUY
ENTERPRISE SERVICES, INC.; BEST BUY
STORES, L.P.; and BESTBUY.COM, L.L.C.

[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master Case No.: 3:07-cv-05944-SC MDL No. 1917 |
| | [Honorable Samuel Conti] |
| This document relates to: | **DIRECT ACTION PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE OR TESTIMONY REGARDING FOREIGN ANTITRUST INVESTIGATIONS** |
| *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al., No. 11-cv-05513-SC* | |
| *Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264-SC* | Date:     TBD Time:     TBD Ctrm:     Courtroom 1, 17th Floor |
| *Target Corp. v. Chunghwa Pictures Tubes, Ltd., et al., No. 3:07-cv-05514-SC* | |
| *Target Corp. v. Technicolor SA, et al.,* Case No. 3:11-cv-05514-SC | |
| *Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al., No. 11-cv-05502-SC* | |

ROBINS KAPLAN LLP
TTORNEYS AT LAW
LOS ANGELES

60948232.1

1   *Sears, Roebuck and Co., et. al. v. Chunghwa Picture Tubes, Ltd., et al., No. 11-cv-5514*

2

3   *Sharp Electronics Corporation, et al. v. Hitachi, Ltd., et al., No. 13-cv-01173-SC*

4   *Sharp Electronics Corp., et al. v. Koninklijke Philips Electronics N.V., et al., No. 13-cv-2776 SC*

5

6   *ViewSonic Corporation v. Chunghwa Picture Tubes, Ltd., et al., No. 14-cv-02510*

7

8       Direct Action Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy

9   Enterprise Services, Inc., Best Buy Stores, L.P., and BestBuy.com, LLC ("Best Buy"); Alfred H.

10  Siegel, solely in his capacity as Trustee of the Circuit City Stores, Inc. Liquidating Trust ("Circuit

11  City"); Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of

12  America, Inc. ("Sharp"); Sears, Roebuck and Co., and Kmart Corporation (collectively "Sears

13  and Kmart"); Target Corporation, ( "Target"); and ViewSonic Corporation ("ViewSonic")

14  (collectively "Plaintiffs") hereby submit their Opposition to Defendants Motion *in Limine* No. 2

15  to Exclude Evidence or Testimony pertaining to Foreign Antitrust Investigations, as follows.

16                          Respectfully submitted,

17  Dated:  March 13, 2015        **ROBINS KAPLAN LLP**

18

19                          By:    /s/ Roman M. Silberfeld
                                    Roman M. Silberfeld
20                                  David Martinez

                            Attorneys For Plaintiffs
21                          BEST BUY CO., INC.; BEST BUY PURCHASING
                            LLC; BEST BUY ENTERPRISE SERVICES, INC.;
22                          BEST BUY STORES, L.P.; and BESTBUY.COM,
                            L.L.C.

23

24

25

26

27

28

60948232.1                      - 2 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**Table of Contents**

Page

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................... 2

III.   ARGUMENT ...................................................................................................... 3

    A.   The Motion is Fatally Overbroad .............................................................. 3

    B.   Evidence of Foreign Antitrust Investigations is Relevant......................... 4

    C.   Evidence of Foreign Antitrust Investigations is Not Unduly Prejudicial ............... 6

        1.   Supposed Differing Legal Regimes Do Not Render the Evidence Unduly Prejudicial ................. 8

        2.   Defendants Fail to Show that They Were Not Afforded Due Process......... 9

        3.   The Burden of Proof ...................................................................... 13

        4.   The Evidence is Not Cumulative .................................................... 14

    D.   Evidence of Foreign Antitrust Investigations is Not Improper Character Evidence........................ 14

    E.   Evidence of Foreign Antitrust Investigations is Not Inadmissible Hearsay .......... 15

    F.   Evidence of Foreign Antitrust Investigations Is Capable of Authentication ......... 19

    G.   Specific Evidentiary Issues: The EC Decision and KFTC Press Release.............. 21

        1.   The EC Decision is Admissible and Entitled to Partial Preclusive Effect............................ 21

        2.   The KFTC Press Release Is Admissible. .................................. 22

IV.    CONCLUSION ................................................................................................. 24

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

60948232.1

**Table of Authorities**

Page

**Cases**

*Alfadda v. Fenn*,
   966 F. Supp. 1317 (S.D.N.Y. 1997)................................................................. 13, 21

*Bank of Montreal v. Kough*,
   612 F.2d 467 (9th Cir. 1980)............................................................................. 21

*Beachy v. Boise Cascade Corp.*,
   191 F.3d 1010 (9th Cir. 1999)............................................................................. 8

*Beech Aircraft Crop v. Rainey*,
   488 U.S. 153 (1988)............................................................................................ 16

*Bradford Trust Co. v. Merrill Lynch Pierce, Fenner, and Smith, Inc.*,
   805 F.2d 49 (2d Cir. 1986)................................................................................. 15

*Bridgeway Corp. v. Citibank*,
   201 F.3d 134 (2d Cir. 2000)............................................................................... 15

*Bright v. Firestone Tire & Rubber Co.*,
   756 F.2d 19 (6th Cir. 1984).................................................................................. 7

*Coleman v. Home Depot, Inc.*,
   306 F.3d 1333 (3d Cir. 2002)............................................................................... 9

*Dellums v. Powell*,
   566 F.2d 231 (D.C. Cir. 1977) ........................................................................... 10

*Engman v. City of Ont.*,
   2011 U.S. Dist. LEXIS 66128 (C.D. Cal. June 20, 2011) ...................................... 3

*Escriba v. Foster Poultry Farms*,
   793 F. Supp. 2d 1147 (E.D. Cal. 2011).............................................................. 21

*Frank Lloyd v. American Export Lines, Inc.*,
   580 F.2d 1179 (3rd Cir. 1978) ..................................................................... 18, 23

*Gentile v. County of Suffolk*,
   926 F.2d 142 (2d Cir. 1991)............................................................................... 16

*Hall v. City of Fairfield*,
   2012 U.S. Dist. LEXIS 48616 (E.D. Cal. Apr. 4, 2012).......................................... 3

*Hall v. Western Prod. Co.*,
   988 F.2d 1050 (10th Cir. 1993)............................................................................ 7

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Hawthorne Partners v. AT & T Techs., Inc.*,
   831 F. Supp. 1398 (N.D. Ill. 1993) ........................................................................ 4

*Hispanic Broad. Corp. v. Educ. Media Found.*,
   2003 U.S. Dist. LEXIS 24804 (C.D. Cal. Oct. 30, 2003) ........................................ 20

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*
   681 F.Supp.2d 141 (D. Conn. 2009) ........................................................................ 6

*In re Japanese Electronic Products Antitrust Litigation*,
   723 F.2d 238 (3rd Cir. 1983) .................................................................................. 16

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
   932 F.2d 1475 (C.A.D.C. 1991).............................................................................. 16

*In re Sterling Navigation Co.*,
   444 F Supp. 1043 (S.D.N.Y. 1977)......................................................................... 20

*Jarecke v. Am. Nat. Prop. & Cas. Co.*,
   2014 U.S. Dist. LEXIS 159300 (D. Mont. Nov. 12, 2014) ...................................... 4

*Jarvis v. JP Morgan Chase Bank, N.A.*,
   2010 U.S. Dist. LEXIS 84958 (C.D. Cal July 23, 2010) ........................................ 23

*Kentucky Cent. Life Ins. Co. v. Stephens*,
   897 S.W.2d 583 (Ky. 1995) .................................................................................... 10

*Kramas v. Security Gas & Oil, Inc.*,
   672 F.2d 766 (9th Cir. 1982).................................................................................... 9

*Lego v. Stratos Int'l, Inc.*,
   2004 U.S. Dist. LEXIS 31317 (N.D. Cal. Nov. 4, 2004)......................................... 3

*Lewis v. City of Chicago Police Dep't*,
   590 F.3d 427 (7th Cir. 2009)................................................................................... 8

*Melridge, Inc. v. Heublein*,
   125 B.R. 825 (D. Or. 1991)..................................................................................... 16

*Mike's Train House, Inc. v. Lionel, L.L.C.*,
   472 F.3d 398 (6th Cir. 2006)................................................................................... 18

*Morgan Guar. Trust Co. v. Hellenic Lines Ltd.*,
   621 F.Supp. 198 (S.D.N.Y. 1985) .......................................................................... 16

*Morrissey v. Brewer*,
   408 U.S. 471 (1972) ................................................................................................ 10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (U.S. 1950) ........................................................................................ 12

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

60948232.1

- 3 -

*Rambus, Inc. v. Infineon Techs. AG,*
    222 F.R.D. 101 (E.D. Va. 2004) ...................................................................... 17, 18

*Sannes v. Jeff Wyler Chevrolet, Inc.,*
    1999 U.S. Dist. LEXIS 21748 (S.D. Ohio 1999) ................................................. 19

*Schaghticoke Tribal Nation v. Kempthorne,*
    587 F. Supp. 2d 389 (D. Conn. 2008) ..................................................... 19, 21, 22

*Sharp Electronics Corporation, et al. v. Hitachi, Ltd., et al.,*
    No. 13-cv-01173-SC at ¶¶ 126-133, 230, 231, 247 ............................................ 5

*Shell Oil Co. v. Franco,*
    2004 WL 5615656 (C.D. Cal. May 18, 2004) ...................................................... 20

*Shoppin' Bag of Pueblo, Inc. v. Dillon Cos.,*
    783 F.2d 159 (10th Cir. 1986) ............................................................................... 9

*Simmons v. Morgan Stanley Smith Barney, LLC,*
    2014 U.S. Dist. LEXIS 23926 (S.D. Cal. Feb. 25, 2014) ..................................... 3

*Sugar Ass'n v. McNeil-PPC, Inc.,*
    2008 U.S. Dist. LEXIS 89487 (C.D. Cal. Jan. 7, 2008) ....................................... 7

*Sugar Ass'n v. McNeil-PPC, Inc.,*
    2008 WL 4755611 (C.D. Cal. Jan. 7, 2008) ........................................................ 7

*Tovar v. U.S. Postal Serv.,*
    3 F.3d 1271 (9th Cir. 1993)................................................................................... 8

*Tu v. Mutual Life Ins. Co.,*
    136 F.3d 77 (1st Cir. Mass. 1998)....................................................................... 21

*U.S. v. American Tel. & Tel. Co.,*
    498 F.Supp. 353 (D.D.C. 1980) .......................................................................... 16

*U.S. v. Garland,*
    991 F.2d 328 (6th Cir. 1993)............................................................................... 16

*United States EEOC v. E.I. duPont de Nemours & Co.,*
    2004 U.S. Dist. LEXIS 20753 (E.D. La. Oct. 18, 2004)................................ 20, 23

*United States ex rel. Dingle v. BioPort Corp.,*270
    F. Supp. 2d 968 (W.D. Mich. 2003) ................................................................... 23

*United States v. Container Corp. of Am.,*
    393 US. 333 (1969)............................................................................................... 8

*United States v. Cruz-Garcia,*
    344 F.3d 951 (9th Cir. 2003)................................................................................. 6

*United States v. Dorsey,*
    677 F.3d 944 (9th Cir. 2012) ................................................................................. 15

*United States v. FMC Corp.,*
    306 F. Supp. 1106 (E.D. Pa. 1969) ......................................................................... 8

*United States v. Grady,*
    544 F.2d 598 (2d Cir. 1976) ................................................................................... 16

*United States v. Mende,*
    43 F.3d 1298 (9th Cir. 1995) ................................................................................... 6

*United States v. Montemayor,*
    712 F.2d 104 (5th Cir. Tex. 1983) ......................................................................... 21

*United States v. Pena-Jessie,*
    763 F.2d 618 (4th Cir. 1985) ................................................................................. 21

*United States v. Rizk,*
    660 F.3d 1125 (9th Cir. 2011) ............................................................................... 14

*United States v. W.R. Grace,*
    504 F.3d 745 (9th Cir. 2007) ................................................................................... 6

*Walia v. Aegis Ctr. Point Developers Private Ltd.,*
    2014 U.S. Dist. LEXIS 10433 ............................................................................... 22

*Williams v. Long,*
    585 F. Supp. 2d 679 (D. Md. 2008) ......................................................... 19, 20, 23

**Statutes**

Lanham Act, 15 U.S.C. § 1051 *et seq.* ......................................................................... 7

Sherman Act, 15 U.S.C. §1 ........................................................................................... 8

**Rules**

Fed. R. Civ. P. 44(a)(1)-(2) ......................................................................................... 20

Fed. R. Evid 803(22) ............................................................................................ 18, 23

Fed. R. Evid. 401 ........................................................................................................... 4

Fed. R. Evid. 403 ................................................................................................... 6, 7, 8

Fed. R. Evid. 404(b) ................................................................................................... 14

Fed. R. Evid. 803 ......................................................................................................... 15

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

60948232.1

- 5 -

Fed. R. Evid. 803(8) .................................................................................................. passim

Fed. R. Evid. 803(8)(A) ..................................................................................................... 17

Fed. R. Evid. 803(8)(A)(iii) ......................................................................................... 15, 23

Fed. R. Evid. 803(8)(C) ............................................................................................... 15, 16

Fed. R. Evid. 804(b)(1) ...................................................................................................... 15

Fed. R. Evid. 804(b)(3) ...................................................................................................... 15

Fed. R. Evid. 807 ............................................................................................................... 15

Fed. R. Evid. 901 ............................................................................................................... 19

Fed. R. Evid. 902 ............................................................................................................... 19

Fed. R. Evid. 902(3) ..................................................................................................... 21, 22

Fed. R. Evid. 902(5) ..................................................................................................... passim

**Other Authorities**

2 *McCormick On Evid*. § 227 (6th ed. 2006) ................................................................... 20

31 Michael H. Graham, *Federal Practice and Procedure* § 6759
(interim ed. 1992) ....................................................................................................... 15

5 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 9:34, at 588
(3d ed. 2007) .............................................................................................................. 20

*A. Ahlström Osakeyhtiö and others v Commission,*
C-89/85, C-104/85, C-114/85, C-116/85, C-117/85 and C-125/85 to C-129/85 .................... 14

Charter of Fundamental Rights of the European Union, Article 41(20(a) .................................... 11

*Cimenteries CBR SA and others v Commission,*
ECR II-545 ......................................................................................................... 13

*Commission v Lisrestal and others* [1996],
ECR I-5387) ....................................................................................................... 11

*Dresdner Bank AG v Commission,*
T 44/02 OP, T 54/02 OP, T 56/02 OP, T 60/02 OP and T 61/02 OP ..................................... 14

*Hüls* v *Commission,*
ECR I-4287 [1999] .............................................................................................. 10

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*JFE Engineering Corp and others v Commission*,
  T-67/00, T-68/00, T-71/00 and T-78/00 .............................................................. 13, 14

*Montecatini* v *Commission*,
  C-235/92  [1999] ................................................................................................. 10

*Orkem v Commission*,
  ECR-3283 [1989] ................................................................................................ 13

Provisional EC Decision, Dkt. 3582-4 or
  http://ec.europa.eu/competition/elojade/isef/case_details.cfm?proc_code=1_39
  437 .......................................................................................................................... 5

Regulation 1/2003, Article 19(1) .............................................................................. 12

Regulation 1/2003, Article 27 ................................................................................... 11

*Société Générale v Commission* [1995],
  ECR-3283 ............................................................................................................. 13

TFEU, Article 101 .................................................................................................... 13

*T-Mobile Netherlands and Others*,
  8/08  EU:C:2009:110 § 43 .................................................................................... 8, 9

*Volkswagen AG v Commission*,
  T-62/98 ................................................................................................................. 14

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

60948232.1

- 7 -

1

2

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# I.
## INTRODUCTION

Defendants' sweeping Motion *in Limine* No. 2 seeks an order "barring Plaintiffs from referring to or offering any evidence or testimony referencing investigations or decisions rendered by any authority outside of the United States relating to allegations of competition violations in the CRT industry." Motion (Dkt. 3583) at 1.  The evidence at issue encompasses an array of documentary and testimonial evidence pertaining to the antitrust investigations and/or decisions of the European Commission ("EC"), Korean Fair Trade Commission ("KFTC") Japan Fair Trade Commission ("JFTC"), and Taiwanese and Hungarian antitrust authorities.  Defendants fail to demonstrate why summary exclusion of all such categories of evidence is warranted.  Their generalized claim that such evidence, in any form, is categorically irrelevant, prejudicial, impermissible character evidence, hearsay, and incapable of authentication is incorrect and readily disproven.

Evidence of foreign antitrust investigations is both relevant and admissible.  The evidence relates to ***the same global, cross-border cartel activity*** that is the subject of this litigation.  The investigations explain critical facts in Plaintiffs' case, including: (1) when Defendants' cartel activities were made public by foreign investigations, an element of fraudulent concealment; and (2) the scope of Defendants' cartel activities, which is currently disputed by Defendants.   The probative value of the evidence coupled with the lack of any "undue" prejudice militates against Defendants' efforts to distort the trial record by prohibiting any mention of the "investigations or decisions" by another authority.  And Plaintiffs proposed evidence is admissible under Federal Rule of Evidence 803(8), and can be authenticated pursuant to Federal Rule of Evidence 902(5).

Defendants' due process and substantive law concerns are misplaced.  Defendants are aware of the procedural protections in place in the EC and other jurisdictions given that they participated in the investigations and sought to appeal certain determinations.  Defendants' rights were protected: they had the opportunity to be heard and participated in the investigations.  The other claimed differences in the respective legal regimes of these countries are unsupported, do not constitute a categorical bar to admission of evidence, and should be properly addressed in

60948232.1

context at the time of trial.

For the reasons stated herein, this Motion is vastly overbroad, seeks relief that is contrary to law, and raises a host of specific evidentiary issues which ought to be resolved at the time of trial. Accordingly, this Motion should be denied.

## II.
## FACTUAL BACKGROUND

Defendants argue that their conspiracy was localized to Asia and had nothing to do with elsewhere in the world, including the United States. But their misconduct has been the subject of investigations by antitrust authorities around the globe, not just by the antitrust authorities in Japan, Taiwan, and South Korea, but also in Hungary, the European Union, and the United States. *See* Mtn. at 6. Indeed, the public announcement of these governmental investigations ended the defendants' extensive and elaborate efforts to conceal the existence of the long-running conspiracy. Some of these investigations, including the KFTC and EC investigations, resulted in substantial fines being levied against Defendants for their conduct. For example, the KFTC fined Chunghwa and Samsung SDI over 26 billion won, and the EC fined several Defendants (including Philips, LG Electronics, Samsung SDI, Thomson, Toshiba, Panasonic, and MTPD) over €1.4 billion for participating in global CRT cartels.

Plaintiffs in this litigation have attempted to pursue discovery of these foreign agency investigations and their decisions. For example, Plaintiffs twice moved to compel production of the EC Decision. Both times the Court denied their motion because the Defendants represented that a public version of the Decision would soon be made available. *See* Dkt. 2463 and 3133. Fact discovery closed on September 5, 2014. Finally, on or about December 23, 2014, the Commission released a provisional version of its Decision ("EC Decision") by posting it to the Commission's website.[1]

---

[1] Due to the timing of publication, Plaintiffs were not able to take discovery upon the EC Decision as to most Defendants. Thomson is the notable exception. Due to the Court's vacation of the March 9, 2015 trial date, Plaintiffs were able to participate in the depositions of Didier Trutt, Emeric Charamel, Christian Lissorgues and Agnès Martin in France. While these deposition transcripts are not yet available, Plaintiffs are informed and believe that the witnesses were examined on the subjects of the EC investigation and EC Decision.

60948232.1

- 2 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# III.
# ARGUMENT

## A.    The Motion is Fatally Overbroad

Defendants' sweeping motion requires this Court to conclude that all evidence that in any way mentions or refers to foreign investigations is irrelevant, prejudicial, hearsay, and not capable of authentication.  Defendants have failed to make the showing necessary to sustain such an indiscriminate finding.  Defendants' wholesale attempt to exclude relevant evidence  is unavailing because it provides the Court with no means of reaching a well-reasoned conclusion as to the entire category of evidence sought to be excluded.  If granted, the Motion would require exclusion of a wide array of deposition testimony and documentary evidence without a proper analysis of the admissibility issues specific to that evidence. This overbroad motion should be denied.

Courts routinely deny *in limine* motions due to their overbreadth. *See, e.g., Simmons v. Morgan Stanley Smith Barney*, *LLC*, 2014 U.S. Dist. LEXIS 23926, *24 (S.D. Cal. Feb. 25, 2014) (denying motions to prohibit ad hominem attacks, non-disclosed witnesses, and references to prior arbitration as overbroad); *Engman v. City of Ont.*, 2011 U.S. Dist. LEXIS 66128, *3 (C.D. Cal. June 20, 2011) (denying motion to exclude other litigation as premature and overbroad); *Lego v. Stratos Int'l, Inc.*, 2004 U.S. Dist. LEXIS 31317, *4 (N.D. Cal. Nov. 4, 2004) (denying motion to exclude evidence of Defendants' financial condition and board of directors meetings as vague and overbroad); *Hall v. City of Fairfield*, 2012 U.S. Dist. LEXIS 48616, *26 (E.D. Cal. Apr. 4, 2012) (denying motion to exclude evidence or witnesses not produced or disclosed in discovery as overbroad.).

With many different pieces of evidence come many different evidentiary issues. Defendants charge that evidence of foreign antitrust investigations *necessarily* involves disparate legal standards that cannot be harmonized with U.S laws in this context.  But Defendants have made no such showing.  By contrast, Plaintiffs have offered evidence of similarities between the U.S. and at least one of the investigating jurisdictions which counsels that such evidence is

- 3 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    admissible.[2]

2          Defendants claim that allowing any evidence of foreign investigations would "raise many

3    collateral issues that would need to be explained to the jury and would create a distracting side

4    show." Mtn. at 2. Again, Defendants have made no such showing. Depending upon the parties

5    who are ultimately present at trial, the evidence offered will vary.  Thus, it is premature to

6    speculate whether the total jury time expended on these issues will be excessive.

7          Similarly, Defendants charge that foreign press releases and the like are all inadmissible

8    hearsay and categorically incapable of authentication.  Mtn. at 2.  But Defendants ignore a variety

9    of hearsay exceptions, such as FRE 803(8) or 804(b)(3). Without putting the specific

10   documentary evidence before the Court, the Court can have no sound basis from which to rule.

11         The same can be said of Defendants' unfair prejudice arguments. Depending upon the

12   evidence, there may be no risk of unfair prejudice at all, or the probative value may be sufficient

13   to counter what risk exists.

14         With such uncertainties, the Motion should be "deferred until trial so that questions of

15   foundation, relevancy and potential prejudice may be resolved in proper context." *Jarecke v. Am.*

16   *Nat. Prop. & Cas. Co.*, 2014 U.S. Dist. LEXIS 159300, *2-3 (D. Mont. Nov. 12, 2014) (quotation

17   marks and citations omitted); *Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398,

18   1400 (N.D. Ill. 1993) ("This court has the power to exclude evidence in limine only when

19   evidence is clearly inadmissible on all potential grounds.").

20   **B.    Evidence of Foreign Antitrust Investigations is Relevant**

21         Evidence of foreign antitrust investigations, judgments, and fines is relevant because it has

22   some tendency to make facts of consequence to the action more or less probable than they would

23   be without the evidence. Fed. R. Evid. 401. Plaintiffs have alleged a global CRT conspiracy that

24   targeted and affected not only Asia, but the United States and European markets.[3] Defendants

25   [2] *See* Plaintiffs' Motion *in Limine* No. 11, Dkt. 3580 and concurrently filed Ezrachi Decl., Dkt.
26   3582-7, incorporated herein by reference. As shown therein, European Union law is very closely
     aligned with U.S. law when it comes to the issue of price-fixing determinations based upon direct
     evidence.
27   [3] *See, e.g.*, First Amended Complaint in *Best Buy v. Hitachi* at ¶¶ 6-7, 115 (alleging that
     conspiracy "raised and stabilized worldwide and U.S. prices"), 134 (alleging a "global
28   conspiracy").

60948232.1                          - 4 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   have steadfastly argued that the effects of any anticompetitive conduct were limited

2   geographically. Thus, the fact that the antitrust agencies of Korea and the EC investigated and

3   fined multiple Defendants for illegal price-fixing conduct affecting the Korean and European

4   markets demonstrates that the cartel activity in question crossed borders and jurisdictions. *See,*

5   *e.g.*, Ex. 2 to Casselman Decl., Excerpts from EC Decision at ¶¶ 215, 259, 262.[4]  In fact, the EC

6   Decision makes direct reference to the North American region in meeting minutes and other

7   submissions by the parties to the EC.  *See, e.g.*, *Id.* at ¶¶ 262, 268, 269, 290, 382.  Thus, far from

8   being a "distracting side show", this evidence is part in parcel of the claims Plaintiffs will prove.

9        Moreover, evidence of foreign antitrust investigations is directly relevant to Plaintiffs'

10  fraudulent concealment arguments.  As Plaintiffs allege, the fact of the CRT conspiracy became

11  public as a result of the investigations that were launched by foreign and domestic antitrust

12  authorities. *See, e.g.,* Second Amended Complaint in *Sharp Electronics Corporation, et al. v.*

13  *Hitachi, Ltd., et al.*, No. 13-cv-01173-SC at ¶¶ 126-133, 230, 231, 247.  This is relevant to when

14  the public was made aware of the existence of the conspiracy, a fact that is unquestionably

15  disputed by Defendants.

16       Moreover, the KFTC and EC made a series of specific factual findings which discredit

17  Defendants arguments in this case.  For example, Defendants dispute the scope of the conspiracy,

18  which the EC found to be global and inclusive of large sized CRTs. *See, e.g.*, Ex. 2 at ¶¶ 108,

19  123, 250, 496 (global scope) and ¶¶ 322, 410, 438, 440, 455, 463, 464, 466, 575 (large-sized

20  tubes).

21       Defendants also dispute the efficacy of the conspiracy, arguing that their price agreements

22  were not followed or were not effective.  *See* Ex. 2 at ¶¶ 1089-90. The EC Decision also rejects

23  those arguments.  Ex. 2 at ¶¶ 1092 ("[A]s stated in Recitals (698)-(699) and (701)-(705), the

24  participants including Thomson, LGE, Toshiba and MTPD implemented the arrangements.

25  Recitals (698)-(699) refer to the abundant evidence on the file which demonstrates the existence

26  of anti-competitive effects of the cartel arrangements as a whole. These effects imply that the

27

28  _____
    [4] For a complete version of the Provisional EC Decision, *see* Dkt. 3582-4 or
    http://ec.europa.eu/competition/elojade/isef/case_details.cfm?proc_code=1_39437.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    cartel must have been implemented.").

2        It is imperative that Plaintiffs have the opportunity, at a minimum, to put before the jury

3    the fact that Defendants' arguments were rejected by a foreign tribunal applying similar laws.

4    **C.     Evidence of Foreign Antitrust Investigations is Not Unduly Prejudicial**

5        "Rule 403 . . . is an extraordinary remedy to be used sparingly because it permits the trial

6    court to exclude otherwise relevant evidence. Under the terms of the rule, the danger of prejudice

7    must not merely outweigh the probative value of the evidence, but substantially outweigh it."

8    *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (internal quotations and citation

9    omitted). "Unfair prejudice" means "the undue tendency to suggest decision on an improper basis,

10   commonly . . . an emotional one." *United States v. W.R. Grace*, 504 F.3d 745, 759 n.6 (9th Cir.

11   2007)(internal quotations omitted). "That evidence may decimate an opponent's case is no ground

12   for its exclusion under [Rule] 403. The rule excludes only evidence where the prejudice is 'unfair'

13   -- that is, based on something other than its persuasive weight." *United States v. Cruz-Garcia*, 344

14   F.3d 951, 956 (9th Cir. 2003).

15       Here, Defendants have failed to show that any undue prejudice would result from

16   admission of evidence of foreign antitrust investigations.  Defendants engaged in a longstanding,

17   global cartel, and specifically recognized in their documents that their conduct violated the law

18   and so should be kept secret.  *See* MDL Dkt. No. 3283-1, Carney Decl. Ex. F. Their efforts now

19   to sanitize the record of the fact that their actions did, indeed, result in investigations could

20   actually create the opposite prejudice – it could lead a jury to believe that the activities were, in

21   fact benign.  Whatever prejudice, if any, results from the fact of or findings of those

22   investigations can hardly be called unfair.  Because the underlying conduct at issue in those

23   investigations is at issue here, it would not be unduly prejudicial to admit this evidence. *See In re*

24   *Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.,* 681 F.Supp.2d 141 (D. Conn.

25   2009) (denying motion to strike interim factual findings in EC's Statement of Objections).

26       Further, several Defendants cooperated with, and voluntarily provided information to, the

27   EC, thereby providing further evidence that no unfair prejudice will result here.  *See* Ex. 2 at ¶¶

28   91-107 (Chunghwa, Samsung, Panasonic, Philips, and Thomson Defendants applied for leniency

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  and provided evidence to the EC.)  The fact that certain Defendants were found to have violated

2  EC competition law and fined is a matter beyond dispute, and should be put before the jury.

3      In support of their prejudice argument, Defendants cite *Sugar Ass'n v. McNeil-PPC, Inc.*,

4  2008 WL 4755611 (C.D. Cal. Jan. 7, 2008), for the proposition that evidence of a violation of

5  foreign law would be irrelevant and unduly prejudicial here.  Mtn. at 4 & 5.  But this case is

6  distinguishable.  *Sugar Ass'n* involved a claim that Splenda unfairly competed with sugar based

7  on misleading advertisements representing that Splenda was a natural food product.  In deciding

8  to exclude evidence of foreign judgments about Splenda's advertising and marketing in foreign

9  jurisdictions, the court relied upon the fact that Respondents had not put forth any evidence

10  showing that foreign law was similar to U.S. law, or that perceptions were similar.  *Sugar Ass'n*,

11  2008 WL 4755611, *2 ("Respondents have not demonstrated that foreign laws or perceptions are

12  similar.").  Here, Plaintiffs have, in fact, demonstrated that U.S. law is similar to the EU antitrust

13  laws under which Defendants were found liable.  Thus, the EC's findings are certainly much

14  more probative in this case than in *Sugar Ass'n*.  Nor is the *Sugar Ass'n* court's Rule 403 analysis

15  instructive.  Because Respondents' primary relevance argument was rejected, the court weighed

16  only the probative value of the evidence to establish a collateral issue, the alleged willfulness of a

17  Lanham Act violation.  *Id.* Here, evidence of foreign antitrust investigations is directly relevant to

18  the main issues to be proved at trial.  Accordingly, Defendants' citation to and reliance upon

19  *Sugar Ass'n* to support their claimed prejudice is misplaced and without merit.[5]

20      The other cases cited by Defendants are either mis-cited[6] or merely affirm the trial court's

21  ability to exclude evidence, in its discretion, where appropriate on facts that are dissimilar to ours

22  here.[7]

---

23  [5] Notably, Plaintiffs also moved *in limine* to exclude evidence of the FDA's "approval" of

24  Splenda, and of regulatory approval of Splenda in foreign jurisdictions.  The Court denied both
motions finding the evidence to be relevant, not unduly prejudicial, and not likely to cause undue

25  delay.  *Sugar Ass'n v. McNeil-PPC, Inc.*, 2008 U.S. Dist. LEXIS 89487 at *3-5 (C.D. Cal. Jan. 7, 2008).

26  [6] Defendants incorrectly cite *Hall v. Western Prod. Co.*, 988 F.2d 1050, 1057 (10th Cir. 1993) as
pertaining to foreign antitrust enforcement. In fact, it held that it was not abuse of discretion for a
trial court to exclude a domestic employment commission report.

27  [7] *See Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 23 (6th Cir. 1984) (affirming exclusion

28  of National Highway Traffic Safety Administration Report regarding subject tire complaints
where evidence had "nothing to do with whether a tire defect cause [sic] this particular

60948232.1

- 7 -

1. **Supposed Differing Legal Regimes Do Not Render the Evidence Unduly Prejudicial**

Defendants point to the purported differing substantive antitrust laws in the various jurisdictions that have taken up an investigation of the CRT industry. Defendants' mere assertions, however, are not enough; they fail to provide any substantive authority to substantiate their assertion that these countries' laws are different in pertinent respects. Nor may they now do so on reply, having foregone the opportunity in their initial motion. *See, e.g., Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993) (evidence presented for the first time on reply is improper and must be stricken).

As Plaintiffs have demonstrated by the Ezrachi Declaration, Dkt. 3582-7, competition law in the United States and in the European Union overlap significantly. The Treaty on the Functioning of the European Union "TFEU" prohibits agreements to fix prices, just like section 1 of the U.S. Sherman Act. 15 U.S. Code §1. Both regimes view price fixing as per se antitrust violations.  Both share a common objective to advance the interests of consumers to protect the free flow of goods in a competitive economy.  Both seek to protect competitors' access to markets and protect consumer freedom of choice and seller freedom from coercion.  Both U.S. and EU courts consider direct evidence of price fixing in determining whether a violation has occurred. And these regimes have a history of close cooperation in ferreting out cartels. Thus, a finding of price-fixing under one legal system is relevant to the other because common facts are needed to prove a violation under both.

Here, Defendants point out that unlike under U.S. law, the EC can find antitrust violations based upon information exchanges, citing *T-Mobile Netherlands and Others,* C-8/08, EU:C:2009:110 § 43.  Mtn. at 3.[8]  Defendants' transparent aim is to suggest that this difference is

---

accident."); *see also Beachy v. Boise Cascade Corp.*, 191 F.3d 1010 (9th Cir. 1999) (affirming verdict despite admission of Bureau of Labor and Industries documents containing investigation results which could have made it difficult for jury to evaluate evidence independently.); *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427 (7th Cir. 2009) (holding it within trial court's discretion to exclude administrative EEOC findings under Rule 403 where decision "states only a conclusion and does not provide much additional probative information.").

[8] Defendants are, of course, incorrect that information exchanges themselves cannot provide a basis for antitrust liability in the United States.  *See, e.g.*, *United States v. Container Corp. of Am.*, 393 US. 333, 335 (1969); *United States v. FMC Corp.*, 306 F. Supp. 1106, 1148 (E.D. Pa. 1969). Defendants also ignore that one plaintiff has specifically put forward a theory of liability relating

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   significant here where evidence of mere information exchange would not amount of infringement.

2   *Id.* However, this point is moot in the instant case. The EC Decision is anchored on extensive

3   direct evidence of agreements to fix prices.  The evidence includes Defendants' minutes of

4   meetings and communications.  Thus, where the Commission's decision is based upon direct

5   evidence of infringement, and not mere parallel behavior or information exchange, the distinction

6   is of no moment.

7          Thus, this case is distinguishable from those relied upon by Defendants, which involved

8   genuine disputes as to the relevance or reliability of the evidence at issue.  *Kramas v. Security*

9   *Gas & Oil, Inc.*, 672 F.2d 766 (9th Cir. 1982) (concluding court did not abuse its discretion in

10  excluding consent decree which involved no finding of culpability and related to "different

11  transactions and alleged misrepresentations of a different kind"); *Coleman v. Home Depot, Inc.*,

12  306 F.3d 1333 (3d Cir. 2002) (not error to exclude EEOC Letter of Determination where

13  evidentiary bases of Letter were not clear and a "critical conclusion" was shown to be erroneous);

14  *Shoppin' Bag of Pueblo, Inc. v. Dillon Cos*., 783 F.2d 159 (10th Cir. 1986) (affirming exclusion

15  of FTC investigation evidence where investigation terminated shortly after it was begun and

16  reached no conclusion regarding Defendants' price-fixing behavior.).

17         **2.      Defendants Fail to Show that They Were Not Afforded Due Process**

18         Defendants also make the vague claim that international proceedings "might not abide by

19  due process." Mtn. at 2. Defendants once again fail to provide evidence to support what amounts

20  to pure speculation.

21         As a threshold matter, Defendants should be prohibited from seeking to exclude evidence

22  regarding foreign investigations on the basis of supposed due process violations, since they

23  effectively prevented plaintiffs from being able to take any discovery on the investigations –

24  discovery that would have permitted plaintiffs to refute these very arguments.  Defendants were

25  asked during discovery to produce materials relating to foreign investigations, and they refused to

26

27  to anticompetitive effects from information exchanges, even in the absence of price-fixing
    agreements. *See* Dkt. 3701-4, Plaintiffs Sharp Electronics Corporation & Sharp Electronics
28  Manufacturing Company of America, Inc.'s Opposition to Defendants' Motions *in Limine* Nos. 9
    and 15.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   do so, objecting on grounds of, among other things, relevance.  *See, e.g.*, Ex. 5 to Casselman

2   Decl., DPPs' Second Set of RFPs Nos. 34-36 (Mar. 12, 2010); Objections & Resps. of Panasonic

3   Corp. to DPPs' Second Set of RFPs Nos. 34-36, May 12, 2010; Def. Hitachi, Ltd's Resp. to

4   Second Set of RFPs from DPPs Nos. 34-36, May 12, 2010; Objections & Resps. of Def. MT

5   Picture Display Co., Ltd. to DPPs' Second Set of RFPs Nos. 34-36, May 12, 2010.  Having

6   stonewalled plaintiffs on these issues during discovery, they may not now seek to use information

7   they uniquely have to exclude evidence. *See, e.g.*, *Dellums v. Powell*, 566 F.2d 231, 235 (D.C.

8   Cir. 1977) ("[I]t is fundamental that a party that does not provide discovery cannot profit from its

9   own failure.").

10       In any event, examining the facts that are available shows defendants' arguments to be

11   specious.  Due process requirements are flexible and dependent upon circumstances. *Kentucky*

12   *Cent. Life Ins. Co. v. Stephens*, 897 S.W.2d 583, 590 (Ky. 1995) (Due process does not require a

13   trial or the strict application of evidentiary rules and/or unlimited discovery as courts may

14   construct, especially under special statutory proceedings, a more flexible procedure to account for

15   the affected interest or potential deprivation.), *citing Morrissey v. Brewer*, 408 U.S. 471 (1972)

16   (procedural due process is not a static concept, but calls for such procedural protections as the

17   particular situation may demand.).  Here, Defendants have not shown that their due process rights

18   were violated.

19       Take the EC procedures as an example. As under U.S. law, EU law is committed to the

20   presumption of innocence until proven guilty. As the Commission  stated in Case C-199/92 P

21   *Hüls* v *Commission* [1999] ECR I-4287, paragraph 149, "The presumption of innocence as

22   contained in particular in Article 6(2) of the ECHR is among the fundamental rights which,

23   according to Article 6(2) EU and the Court's settled case-law, are protected in the Community

24   legal order."  This presumption of innocence applies to the procedures relating to infringement of

25   the competition rules applicable to undertakings that may result in the imposition of fines or

26   periodic penalty payments.  *See id.* at ¶ 150; Case C-235/92 *Montecatini* v *Commission* [1999]

27   ECR I-4539, ¶¶ 175-176.  Moreover, the parties to an EC proceeding have a right to be heard

28   before a final decision adversely affecting their interests is reached. The right of the parties to be

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  heard is a fundamental right of European Union law. It has been acknowledged by the European

2  Court of Justice[9] and is firmly is recognized in Article 41(2)(a) of the Charter of Fundamental

3  Rights of the European Union.  The Enforcement of European Competition law is subjected to

4  that right.  As stated by Article 27 of Regulation 1/2003:

5
6      1. Before taking decisions as provided for in Articles 7, 8, 23 and Article 24(2), the
   Commission shall give the undertakings or associations of undertakings which are the

7  subject of the proceedings conducted by the Commission the opportunity of being heard
   on the matters to which the Commission has taken objection. The Commission shall base
   its decisions only on objections on which the parties concerned have been able to

8  comment. Complainants shall be associated closely with the proceedings.

9
       2. The rights of defence of the parties concerned shall be fully respected in the

10 proceedings. They shall be entitled to have access to the Commission's file, subject to the
   legitimate interest of undertakings in the protection of their business secrets. …

11     In fact, the parties may further exercise their right to be heard in an Oral Hearing,

12 conducted by an independent Hearing Officer who is not part of the Directorate-General for

13 Competition, and whose role it is ensure that the parties are able to effectively exercise their

14 procedural rights throughout the proceeding.  *See* Ex. 3 to Casselman Decl., "Decision of the

15 President of the European Commission of (13 October 2011) on the function and terms of

16 reference of the hearing officer in certain competition proceedings" [2011] OJ L 275.  The parties

17 have a right to know whether they are subject to an investigation, and, if so, the subject matter

18 and purpose of that investigation.  The parties are entitled to invoke a privilege against self-

19 incrimination, a legal professional privilege, and have their legitimate interests in confidentiality

20 protected.

21     Additionally, the right of the parties concerned to be heard before a final decision

22 adversely affecting their interests is taken is guaranteed through their right to reply in writing to

23 the preliminary position of the Commission, as set out in the Statement of Objections.  The

24 parties are also entitled, upon request, to develop their arguments at the Oral Hearing.[10]

25     In its "Notice on best practices for the conduct of proceedings concerning Articles 101

26

27 [9] "Observance of the right to be heard is, in all proceedings initiated against a person which are liable to culminate in
   a measure adversely affecting that person, a fundamental principle of Community law which must be guaranteed…"
   (paragraph 21,  Case C-32/95P *Commission v Lisrestal and others* [1996] ECR I-5387)

28 [10] Here, the parties participated in an Oral Hearing. Ex. 2 at ¶ 101.

60948232.1                                                  - 11 -

and 102 TFEU" the Commission highlights that "Throughout the procedure the Directorate-General for Competition endeavours to give, on its own initiative or upon request, parties subject to the proceedings ample opportunity for open and frank discussions — taking into account the stage of the investigation — and to make their points of view known." *See* Ex. 4 to Casselman Decl., Notice on Best Practices, ¶60.  Thus, the EC takes preservation of the parties' due process rights seriously, as does the U.S.

Defendants fail to cite a single case which suggests that such procedural safeguards do not comply with U.S. due process standards.

Notwithstanding their knowledge of these procedural safeguards, Defendants complain that investigation targets do not have the opportunity to examine witnesses. Mtn. at 3.  But Defendants fail to mention that the witnesses being interviewed by the Commission were largely *their own employees*, and that all interviews the EC takes are *consensual. See* Article 19(1) of Regulation 1/2003; Antitrust Manual of Procedures at 79. (Commission may interview any natural or legal person who consents to be interviewed for the purpose of collecting information relating to the subject-matter of an investigation.) Many of the EC Defendants applied for leniency, and thus it is likely that these Defendants made some of their employees available for interviews with the Commission as a part of their cooperation. [11] These Defendants also were to provide documents to the Commission which could then be used to interview pertinent witnesses.

Defendants also assert that the EC investigation targets cannot be heard by an independent judge before an adverse decision is taken against them. Mtn. at 3.  Again, Defendants ignore the context of the EC scheme. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (U.S. 1950) (due process tolerates variances in the form of a hearing "appropriate to the nature of the case.").  The EC investigation targets are given fulsome opportunities to respond to the Commission's Statement of Objections in writing, and to develop their arguments at an oral hearing.  *See* Ex. 2 at ¶¶ 91-107.  Moreover, Defendants are given access to the Commission's file and other evidence within their possession which gave them a robust opportunity to be heard.

---

[11] The Defendants who applied for leniency in the EC proceeding were the Chunghwa, Samsung, Panasonic, Philips, and Thomson Defendants. *See* Ex. 2, EC Decision at ¶¶ 91-107.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    *Id.* at ¶¶ 100-101.

2         During the proceedings parties may refuse to reply in such a way as to incriminate

3    themselves. "The Commission may not compel an undertaking to provide it with answers which

4    might involve an admission on its part of the existence of an infringement which it is incumbent

5    upon the Commission to prove."[12] These procedures comply with domestic due process

6    requirements.

7         **3.     The Burden of Proof**

8         Defendants also challenge the relevant burden of proof in the various international

9    antitrust proceedings. Mtn. at 4.  Contrary to Defendants' arguments, admissibility does not turn

10   on the mere fact that the applicable legal standards of the foreign judicial system may differ from

11   those of the United States.  Courts will look beyond the elements required under each

12   jurisdiction's law to determine whether there are common facts that must be established in each

13   jurisdiction.  *See, e.g.*,  *Alfadda v. Fenn*, 966 F. Supp. 1317, 1325 (S.D.N.Y. 1997) (issue

14   preclusion applied to findings made by a French court in a securities fraud case because,

15   notwithstanding different elements of violation under U.S. and French law, the facts that plaintiffs

16   would have to establish in the U.S. lawsuit were the same as the facts that were litigated in the

17   French court.).

18        Again, Defendants have made no showing that such differences are pertinent based upon

19   the specific evidence to be offered. However, with respect to the EC Decision, the standard of

20   proof is sufficiently rigorous to justify admission.  In fact, no standard applied by the European

21   Court is less than the preponderance standard applied in the U.S.

22        When establishing a violation under Article 101 TFEU, the Commission must establish

23   the existence of the infringement at issue beyond doubt.[13]  It is required to put forward "precise

24

25   ─────────────────────
     [12] Paragraph 35, Case 374/87, *Orkem v Commission* [1989] ECR-3283; Paragraph 74, Case T-
26   34/93 *Société Générale v Commission* [1995] ECR II-545; Paragraph 732, Joined Cases T-25/95,
     T-26/95, T-30/95 TO T-32/95, T-34/95 TO T-39/95, T-42/95 TO T-46/95, T-48/95, T-S0/9S TO
27   T-6S/95, T-68/95 TO T-71/95, T-87/95, T-88/95, T-103/95 AND T-104/95 *Cimenteries CBR SA
     and others v Commission.*
28   [13] Paragraph 177, Joined Cases T-67/00, T-68/00, T-71/00 and T-78/00, *JFE Engineering Corp
     and others v Commission.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  and consistent evidence" in order to establish the existence of the infringement.[14] In another

2  instance the Court examined whether the evidence referred to by the Commission was "solid,

3  specific and corroborative proof."[15]  In the same vein, the Court held that "firm, precise and

4  consistent body of evidence" is required to establish a violation.[16] Where there is doubt as to the

5  evidence presented by the Commission, "the benefit of that doubt must be given to the

6  undertakings accused of the infringement."[17] Accordingly, as these authorities demonstrate, the

7  standard applied by the European Court is at least as rigorous as the preponderance standard

8  applied by U.S. courts.

9        **4.**      **The Evidence is Not Cumulative**

10        Defendants argue that evidence of foreign investigations is cumulative of the discovery

11  taken in this case.  Not so.  Plaintiffs allege a global conspiracy that included large-sized CRTs.

12  Defendants deny it.  The fact that foreign antitrust agencies outside of Asia have investigated

13  Defendants conduct (and found Defendants liable for anticompetitive conduct) in their

14  jurisdictions, and that Defendants' anticompetitive conduct was not limited to small sized CRTs

15  is thus highly relevant.

16  **D.**      **Evidence of Foreign Antitrust Investigations is Not Improper Character Evidence**

17        Defendants argue that Plaintiffs will seek to introduce evidence of foreign antitrust

18  investigations as improper character evidence in contravention of FRE 404(b).  This position

19  misconstrues the nature of the evidence to be offered. Evidence of foreign antitrust investigations

20  is evidence of *the very same conduct at issue in this case*.  Accordingly, it is not character

21  evidence offered to show a propensity towards bad acts, but evidence of the bad acts at issue.  .

22  *See United States v. Rizk*, 660 F.3d 1125, 1131-32 (9th Cir. 2011) (holding real estate transactions

23  not specifically named in the indictment "were not 'other acts' subject to Rule 404(b)" because

---

[14] Paragraph 62, Joined Cases T‑44/02 OP, T‑54/02 OP, T‑56/02 OP, T‑60/02 OP and T‑61/02 OP, *Dresdner Bank AG v Commission*; Paragraph 43, Case T-62/98, *Volkswagen AG v Commission*.

[15] Paragraph 74, Case T-145/89, *Baustahlgewebe GmbH v Commission*.

[16] Paragraph 127, Joined cases C-89/85, C-104/85, C-114/85, C-116/85, C-117/85 and C-125/85 to C-129/85 *A. Ahlström Osakeyhtiö and others v Commission*.

[17] Paragraph 177, Joined Cases T-67/00, T-68/00, T-71/00 and T-78/00, *JFE Engineering Corp and others v Commission*.

they "were 'inextricably intertwined' with the conspiracy charge," and were offered by the

government "to show the full scope of the conspiracy"); *see also United States v. Dorsey*, 677

F.3d 944, 951-52 (9th Cir. 2012).

Moreover, it is simply not the case that all conceivable uses of foreign antitrust

investigations evidence constitutes improper character evidence. It could also be relevant to a

testifying witness's credibility, such as in the case of cooperating witnesses, or other

impeachment. Whether or not a piece of evidence is offered as character evidence depends upon

context in which it is offered.

**E.     Evidence of Foreign Antitrust Investigations is Not Inadmissible Hearsay**

Defendants also argue that any information about foreign antitrust investigations would

necessarily be hearsay. They are incorrect.

Regarding defense witness deposition testimony, several hearsay exceptions potentially

apply. Depending upon the trial availability of the witness, exceptions for former testimony (FRE

804(b)(1)), statement against interest (FRE 804(b)(3)), or the residual exception (FRE 807) apply.

In the case of documentary evidence like the EC Decision and the KFTC Decision, FRE

803(8) applies. Federal Rule of Evidence 803 provides:

> "The following are not excluded by the rule against hearsay, regardless of whether
> the declarant is available as a witness:
> (8) **Public Records**. A record or statement of a public office if:
> (A) it sets out:
>  (iii) **in a civil case or against the government in a criminal case, factual
> findings from a legally authorized investigation**; and
> (B) the opponent does not show that the source of information or other
> circumstances indicate a lack of trustworthiness."

Fed. R. Evid. 803(8)(A)(iii) (emphasis added). To be admissible under Rule 803(8)(C), "the

evidence must (1) contain factual findings, and (2) be based upon an investigation made pursuant

to legal authority." *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000).

"Rule 803(8) 'is based upon the assumption that public officers will perform their duties,

that they lack motive to falsify, and that public inspection to which many such records are subject

will disclose inaccuracies.'" *Id.* (quoting 31 Michael H. Graham, *Federal Practice and Procedure*

§ 6759, at 663-64 (interim ed. 1992)); *see also Bradford Trust Co. v. Merrill Lynch Pierce,*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   *Fenner, and Smith, Inc*., 805 F.2d 49, 54 (2d Cir. 1986) (exception to the hearsay rule was based

2   on the assumption that public officials perform their duties without motive or interest outside of

3   submitting accurate and fair reports).  The admissibility of evidence covered under Rule

4   803(8)(C) "is generally favored" and presumed.  *Gentile v. County of Suffolk*, 926 F.2d 142, 148

5   (2d Cir. 1991).  In fact, the Supreme Court further extended this presumption of admissibility not

6   only to factual determinations within such reports, but also to conclusions or opinions based upon

7   the underlying factual investigations.  *Beech Aircraft Crop v. Rainey*, 488 U.S. 153, 170 (1988);

8   *see also U.S. v. Garland*, 991 F.2d 328, 335 (6th Cir. 1993) (. . . "there is no reason to distinguish

9   between facts and 'opinions' contained in . . . judgments [falling under the public records

10  exception"]).

11        Reports and records generated by foreign offices and agencies are also considered

12  presumptively admissible under Rule 803(8)'s scope.  *See Melridge, Inc. v. Heublein*, 125 B.R.

13  825, 829 (D. Or. 1991) (admitting Swiss police reports under Rule 803(8)); *United States v.*

14  *Grady*, 544 F.2d 598, 604 (2d Cir. 1976) (admitting Irish police records); *Morgan Guar. Trust*

15  *Co. v. Hellenic Lines Ltd.*, 621 F.Supp. 198, 217 (S.D.N.Y. 1985) (admitting Greek public

16  documents)).

17        Indeed, U.S. federal courts have even admitted findings made by foreign governments

18  concerning application of their own local antitrust laws.  *In re Japanese Electronic Products*

19  *Antitrust Litigation*, 723 F.2d 238 (3rd Cir. 1983)(admitting documents from JFTC investigation

20  over objections that investigation was too "preliminary" and the proceeding too "accusatory".)

21        Because of this expansive presumption of admissibility, the burden of demonstrating that

22  a submitted report is untrustworthy rests on the party seeking to oppose the admission of the

23  document into evidence.  *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1482

24  (C.A.D.C. 1991) ("The burden is on the party disputing admissibility to prove the factual finding

25  to be untrustworthy.") (*quoting U.S. v. American Tel. & Tel. Co.*, 498 F.Supp. 353, 364 (D.D.C.

26  1980)).

27        Pursuant to the authority granted by law, regulatory agencies around the world undertook

28  investigations of price-fixing in the CRT industry.  In the course of their investigations, they

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   reviewed a large number of documents that they gathered during inspections and/or raids of CRT

2   makers facilities and that they received in response to demands directed to all of the subject

3   companies.  The EC also reviewed numerous written and oral responses to requests for

4   information directed to all of the subject companies.[18]  Thus, the decisions released by these

5   agencies are the product of authorized investigations.  Plaintiffs are aware of no evidence

6   demonstrating that these decisions were issued in anything other than the regular course of the

7   agencies' business.  Accordingly, Rule 803(8) takes these decisions outside the hearsay rule.

8         Defendants argue, again in a vacuum, that any factual findings from an authorized

9   investigation must be deemed "untrustworthy" and therefore not subject to FRE 803(8)(A).  Mtn.

10  at 6. They cite several factors as being relevant to the issue, but fail to provide any information

11  tending to suggest that any evidence should be excluded by this analysis. In fact, the factors

12  Defendants' cite all support admission: (1) gap in time between the conduct and the investigation;

13  (2) lack of finality; (3) inability to participate in the proceedings; (4) underlying information

14  considered by the antitrust enforcer; (5) whether the evidence underlying the decision would be

15  admissible in court; and (6) whether the Court and the parties have access to the entire report

16  without redactions).  *Id.* at 6, citing *Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 101 (E.D.

17  Va. 2004).

18        Take the KFTC Decision and EC Decision as examples.  Both decisions were the result of

19  a "joint investigation with foreign competition authorities including the United States Department

20  of Justice and the European commission in November 2007," not far removed from the cessation

21  of conspiracy activity.[19]  The multi-year investigation was thorough, and included review of a

22  large number of documents, inspections and/or raids of CRT makers facilities, and interviews

23  with witnesses from the targeted companies.[20]  Many of these same documents and witnesses will

24  be offered and admitted in this proceeding.  Moreover, Defendants were afforded an opportunity

25  to participate in the EC proceedings, and in fact did so.[21]  The parties to the EC proceeding were

26

27  [18] *See* Ex. 2, EC Decision, § 3.1 at 22.
    [19] *See* Ex. 1 to Casselman Decl., KFTC Press Release.
28  [20] *See* Ex. 2, EC Decision, § 3.1 at 22.
    [21] Id.

60948232.1

- 17 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

also granted access to the EC's file, and were afforded opportunities to make their positions known to the Commission before any adverse decision was rendered against them.[22]  Plus, the EC Decision is final with respect to Defendants who did not appeal (i.e. Chunghwa and Thomson), and Defendants have made no showing that there is any likelihood that the decision of the full European Commission, which is based on direct evidence, will be overturned.[23]  While Plaintiffs and the Court do not yet have access to a final version of the decision (as a number of confidentiality claims are still pending), Defendants do have access, and have elected not to provide it in this litigation.  Thus, the weight of these factors overwhelmingly points to admission of both Decisions.

In addition, insofar as the KFTC and EC Decisions are foreign judgments, Fed. R. Evid 803(22) applies.  Rule 803(22) provides in pertinent part:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>  **(22) Judgment of a Previous Conviction**. Evidence of a final judgment of conviction if:
> (A) **the judgment was entered after a** trial or **guilty plea**, but not a nolo contendere plea;
> (B) the conviction was for a crime punishable by death or by imprisonment for more than a year;
> (C) the evidence is admitted to prove any fact essential to the judgment…

Although Rule 803(22) exempting criminal judgments from the hearsay rule does not specifically refer to foreign judgments, such judgments will be recognized by an American court if the foreign proceedings accord with civilized jurisprudence and are stated in a clear and formal record. *Frank Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179, 1189 (3rd Cir. 1978). In fact, reflecting the broad scope of the Rule 803(22) exception, courts also admit into evidence foreign indictments under Rule 803(22). *See Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 412 (6th Cir. 2006) (holding that Korean court records, including indictments, were admissible under Rule 803(22)).

---

[22] See Ex. 2 at ¶¶100-101.
[23] This was not the case in *Rambus, Inc. v. Infineon Techs. AG*, 222 F.R.D. 101 (E.D. Va. 2004), cited  by Defendants, where the court noted that the administrative law judge's initial decision was under review by the full Commission, and was subject to substantial alteration by that *de novo* review. *Id.* at 108.

60948232.1

- 18 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    **F.    Evidence of Foreign Antitrust Investigations Is Capable of Authentication**

2          Defendants next argue that evidence of foreign antitrust investigations (categorically) is

3    incapable of authentication.  Mtn. at 7. Not true.  Depending upon the type of evidence offered,

4    there are numerous ways that Plaintiffs could satisfy the authentication requirement.

5          Authentication of evidence is a prerequisite to admissibility.  The authentication

6    requirement is "satisfied by evidence sufficient support a finding that the material in question is

7    what its proponent claims." Fed. R. Evid. 901. Extrinsic evidence, however, is not always

8    necessary. "Case law and statutes have, over the years, developed a substantial body of instances

9    in which authenticity is taken as sufficiently established for purposes of admissibility without

10   extrinsic evidence . . . because practical considerations reduce the possibility of unauthenticity to

11   a very small dimension." Fed. R. Evid. 902 advisory committee's note to the 1972 proposed rules.

12   Thus, some evidence is deemed self-authenticating, and does not require extrinsic evidence to

13   authenticate. Fed. R. Evid. 902.  Examples of self-authenticating documents include "certified

14   copies of public records" and "official publications." Fed. R. Evid. 902(4) and (5).[24]

15         In the case of documents found on governmental agency websites, such as the EC

16   Decision and the KFTC Press Release, Federal Rule of Evidence 902(5) applies.  Under Rule

17   902(5), any "book, pamphlet, or other publication purporting to be issued by a public authority,"

18   are self-authenticating.

19         Numerous courts have recognized the self-authenticating status of press releases and other

20   documents published by governmental agencies to their websites.  *See, e.g., Schaghticoke Tribal*

21   *Nation v. Kempthorne*, 587 F. Supp. 2d 389, 397 (D. Conn. 2008) (press releases by government

22   authorities may be self-authenticating under Rule 902(5) as official publications issued by a

23   public authority.); *Sannes v. Jeff Wyler Chevrolet, Inc.*, 1999 U.S. Dist. LEXIS 21748, n. 3 (S.D.

24   Ohio 1999) (FTC press releases, "printed from the FTC's government world wide web page, are

25   self-authenticating official publications under Rule 902(5) of the Federal Rules of Evidence.");

26   *Williams v. Long*, 585 F. Supp. 2d 679, 689 (D. Md. 2008)("Public authority's selection of the

27

28   _____

[24] Fed. R. Evid. 902(5) defines an "official publication" as "A book, pamphlet, or other publication purporting to be issued by a public authority."

60948232.1                                         - 19 -

posted information for publication on its website will act as the necessary 'seal of approval' needed to establish that the information came from a public authority for purposes of Rule 902(5)."); *United States EEOC v. E.I. duPont de Nemours & Co.*, 2004 U.S. Dist. LEXIS 20753, 5, (E.D. La. Oct. 18, 2004) (The "webpage is maintained on a government website, and, according to Rule 902(5), 'publications purporting to be issued by public authority' are self authenticating."); *Hispanic Broad. Corp. v. Educ. Media Found.*, 2003 U.S. Dist. LEXIS 24804 *5 n.5 (C.D. Cal. Oct. 30, 2003) ("exhibits which consist of records from government websites, such as the FCC website, are self-authenticating."); *Shell Oil Co. v. Franco*, 2004 WL 5615656 (C.D. Cal. May 18, 2004) ("records from government websites are self-authenticating"); *see also* 2 *McCormick On Evid.* § 227 (6th ed. 2006) (noting that information "retrieved from government websites… has been treated as self-authenticating, subject only to proof that the webpage does exist at the governmental web location.").

> This "common-sense provision" is based upon the following notions:
> One is that official publications seldom contain serious mistakes in the reproduction of official pronouncements or other matters of sufficient interest to warrant official publication. Another is that official publications are likely to be readily identifiable by simple inspection, and that forgery or misrepresentation of such material is unlikely. There are a number of statutes and a provision in the Federal Rules of Civil Procedure which make particular kinds of official publications self-authenticating.

*Williams v. Long*, 585 F. Supp. 2d 679, 692 (D. Md. 2008), citing 5 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 9:34, at 588 & n.2 (3d ed. 2007) and Fed. R. Civ. P. 44(a)(1)-(2).

Moreover, even where Rule 902(5) does not apply, where reasonable opportunity has been given to all parties to investigate authenticity and accuracy of official foreign documents, the Court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidence by attested summary with or without certification. *In re Sterling Navigation Co.*, 444 F Supp. 1043, 1047 (S.D.N.Y. 1977).  This is such a case. All Defendants in this matter have been aware of the various foreign antitrust investigations and have kept apprised of their results. The Defendants who were fined by the KFTC and EC are all the more aware of the findings of those bodies.  They are more than capable

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  of coming forward with any discrepancies between the published accounts of these agencies'

2  findings and their actual findings.

3          Defendants argue that because the foreign agency press releases originate from a foreign

4  agency, Plaintiffs must comply with the requirements of FRE 902(3) to establish authenticity. *See*

5  Motion at 7.  However, Defendants cite no case law supporting this position.  Further, case law

6  reflects that this section is typically invoked in the case of foreign documents which are not

7  public-facing, such as birth certificates, death certificates, custom certificates, and other materials

8  not posted to a government website or meant for public consumption.  *See, e.g., Tu v. Mutual Life*

9  *Ins. Co.*, 136 F.3d 77, 80-81 (1st Cir. Mass. 1998) (Cambodian death certificate and related

10  documentation inadmissible for want to authentication pursuant to Fed. R. Evid. 902(3)); *United*

11  *States v. Montemayor*, 712 F.2d 104, 109 (5th Cir. Tex. 1983) (Mexican birth certificates properly

12  authenticated by certification of American consular officials, as authorized by Fed. R. Evid.

13  902(3)); *United States v. Pena-Jessie*, 763 F.2d 618, 621 (4th Cir. 1985) (diplomatic note

14  demonstrating Panama's grant of permission for Coast Guard to board vessel of Panamanian

15  registry is properly admitted under Rule 902(3).); *Escriba v. Foster Poultry Farms*, 793 F. Supp.

16  2d 1147, 1156-1157 (E.D. Cal. 2011) (medical notes from attending physician in Guatemala not

17  self-authenticating under Rule 902(3) where not certified by anyone in an official capacity under

18  the laws of Guatemala).  In the case of a public-facing document, like the KFTC Press Release,

19  Fed. R. Evid. 902(5) applies.  *Schaghticoke Tribal Nation v. Kempthorne*, 587 F. Supp. 2d at 397.

20  **G.**   **Specific Evidentiary Issues: The EC Decision and KFTC Press Release**

21          **1.**   **The EC Decision is Admissible and Entitled to Partial Preclusive Effect**

22          The EC Decision is not only admissible into evidence; portions of it have preclusive

23  effect.  As set forth in detail in Plaintiffs' Motion *in Limine* No. 11, courts have applied collateral

24  estoppel to the findings of foreign courts and tribunals where the legal frameworks were

25  sufficiently similar, the issues were actually litigated and necessary to the decision, and the party

26  against whom preclusion was asserted had an opportunity to participate in the foreign proceeding.

27  *Alfadda v. Fenn*, 966 F. Supp. 1317, 1325 (S.D.N.Y. 1997).[25]  Here, the EC's findings meet this

28  _____
[25] The Ninth Circuit is no exception. *See, e.g., Bank of Montreal v. Kough*, 612 F.2d 467 (9th Cir.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   standard.  The EC investigated the exact same CRT conspiracy involving many of the Defendants

2   in this action.  Plaintiffs' proof of conspiracy meetings will be substantially the same.  The issues

3   relating to liability were actually determined and necessary to the EC Decision. The EC Decision

4   is sufficiently final for preclusive effect.  The Defendants had an opportunity to participate, and

5   did in fact participate, in the European Commission proceedings, and some cooperated in

6   consideration for leniency.  In addition, EU law prohibiting price-fixing is the functional

7   equivalent of U.S law where, as here, the findings are based upon direct evidence.[26]   Accordingly,

8   Defendants should be barred from relitigating the same issues they lost before the EC.

9           Even without issue preclusion, the EC Decision should be admitted into evidence, for the

10  reasons stated in Plaintiffs' Motion *in Limine* No. 11.  The EC Decision is relevant and reliable,

11  non-privileged, and not likely to unfairly prejudice Defendants because the EC based its Decision

12  largely upon evidence provided by cooperating companies.[27]

13          **2.        The KFTC Press Release Is Admissible.**

14          Defendants argue that the January 27, 2011 Press Release of the KFTC ("KFTC Press

15  Release") is inadmissible into evidence because it is hearsay not capable of authentication.  Mtn.

16  at 7.  Defendants did not attach the KFTC Press Release to their Motion, and Plaintiffs have

17  included it here. See Ex. 1 to Casselman Decl.  Defendants cite no case law in support of their

18  position, and a review of the case law reveals that the KFTC Press Release is indeed admissible.

19          The KFTC Press Release is self-authenticating under Fed. R. Evid. 902(5), because it is a

20  "book, pamphlet, or other publication purporting to be issued by a public authority."  Fed. R.

21  Evid. 902(5).  Contrary to Defendants' assertion, the mere fact that the Press Release originates

22  from a foreign agency does not mean that Fed. R. Evid. 902(3) applies.  *See Schaghticoke Tribal*

23  *Nation v. Kempthorne*, 587 F. Supp. 2d at 397, 2008 U.S. Dist. LEXIS 65345, 9-10 (Press

24  1980) (defendant collaterally estopped from raising defenses "in the guise of counterclaims,"
    because to allow defenses would "undercut the validity of the [prior Canadian] judgment against

25  him"); *see also Walia v. Aegis Ctr. Point Developers Private Ltd.*, 2014 U.S. Dist. LEXIS 10433
    at *4 (finding that judgment rendered by Indian court in contract action is entitled to preclusive

26  effect in later U.S. action on same contract).
    [26] For a detailed comparison of EU and U.S. Law on price-fixing, *see* Dkt. 3580 and the

27  concurrently filed Declaration of Professor Ariel Ezrachi ("Ezrachi Declaration") at Dkt. 3582-7.
    [27] See Ex. 2 at ¶¶ 91-107 (companies who applied for leniency in exchange for cooperation

28  included Chunghwa, Samsung, Panasonic, Philips, and Thomson.)

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  releases by government authorities may be self-authenticating under Rule 902(5) as official

2  publications issued by a public authority.); *Williams v. Long*, 585 F. Supp. 2d at 689 ("Public

3  authority's selection of the posted information for publication on its website will act as the

4  necessary 'seal of approval' needed to establish that the information came from a public authority

5  for purposes of Rule 902(5).").

6        The KFTC Press Release also satisfies the public records exception to the hearsay rule

7  because it contains factual findings based upon an investigation made pursuant to legal authority

8  by the Korean Fair Trade Commission. Fed. R. Evid. 803(8)(A)(iii). Defendants have pointed to

9  no credible information suggesting that the circumstances surrounding issuance of the Press

10  Release indicate untrustworthiness. Their argument that press releases are "primarily designed to

11  promote the reputation and stature of the issuing agency" (Mtn. at 7) is entirely unsupported by

12  fact or law. Courts have admitted government issued press releases accessed online into evidence

13  based upon their reliability. *See, e.g., United States ex rel. Dingle v. BioPort Corp.,* 270 F. Supp.

14  2d 968, 971 (W.D. Mich. 2003) ("Public records and government documents are generally

15  considered not to be subject to reasonable dispute. . . . This includes public records and

16  government documents available from reliable sources on the Internet."); *United States EEOC v.*

17  *E.I. duPont de Nemours & Co.*, 2004 U.S. Dist. LEXIS 20753, 3 (E.D. La. Oct. 18, 2004)(same);

18  *Jarvis v. JP Morgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 84958, 4, (C.D. Cal. July 23,

19  2010) (same).

20        Moreover, as the KFTC Press Release is evidence of a foreign judgment, Fed. R. Evid.

21  803(22) applies. *Frank Lloyd v. American Export Lines, Inc*., 580 F.2d 1179 (3rd Cir. 1978).

22        Thus, an analysis of the only two documents referenced by the Motion reveals that

23  Defendants' arguments are specious.  This Court cannot properly exclude all evidence of foreign

24  antitrust investigations in this summary fashion without considering the special evidentiary issues

25  at play.

26

27

28

60948232.1

- 23 -

**IV.**
**CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny

Defendants' motion *in limine* No. 2 in its entirety.

Respectfully submitted,

Dated:  March 13, 2015

/s/  *Roman M. Silberfeld*
Roman M. Silberfeld
Bernice Conn
David Martinez
Laura Nelson
Jill Casselman

ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:  (310) 552-0130
Facsimile:  (310) 229-5800

Email:  rsilberfeld@robinskaplan.com
        dmartinez@ robinskaplan.com
        bconn@robinskaplan.com
        lnelson@robinskaplan.com
        jcasselman@robinskaplan.com

*Counsel For Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., and Bestbuy.com, L.L.C.*

/s/  *William J. Blechman*
Richard Alan Arnold
William J. Blechman
Kevin J. Murray
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel:        305-373-1000
Fax:        305-372-1861
Email:   rarnold@knpa.com
         wblechman@knpa.com
         kmurray@knpa.com

*Counsel for Plaintiff Sears, Roebuck and Co. and Kmart Corp.*

DIRECT ACTION PLAINTIFFS' OPP
TO DEFENDANTS' MIL NO. 2

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1

/s/  *Kenneth S. Marks*
H. Lee Godfrey

2   Kenneth S. Marks
Jonathan J. Ross

3   Johnny W. Carter
David M. Peterson

4   SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100

5   Houston, Texas 77002
Telephone:  (713) 651-9366

6   Facsimile:  (713) 654-6666
Email:  lgodfrey@sumangodfrey.com

7          kmarks@susmangodfrey.com
jross@susmangodfrey.com

8          jcarter@susmangodfrey.com
dpeterson@susmangodfrey.com

9

Parker C. Folse III

10  Rachel S. Black
Jordan Connors

11  SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800

12  Seattle, Washington 98101-3000
Telephone:  (206) 516-3880

13  Facsimile:  (206) 516-3883

14

Email:  pfolse@susmangodfrey.com

15         rblack@susmangodfrey.com
jconnors@susmangodfrey.com

16

*Counsel for Plaintiff Alfred H. Siegel, as*

17  *Trustee of the Circuit City Stores, Inc.*
*Liquidating Trust*

18

/s/  *Jason C. Murray*

19  Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP

20  515 South Flower St., 40th Floor
Los Angeles, CA  90071

21  Telephone:  213-443-5582
Facsimile:  213-622-2690

22  Email:  jmurray@crowell.com

23  Jerome A. Murphy (pro hac vice)
Astor H.L. Heaven (pro hac vice)

24  CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.

25  Washington, D.C. 20004
Telephone:  202-624-2500

26  Facsimile:  202-628-5116
E-mail:  jmurphy@crowell.com

27          aheaven@crowell.com

28  *Counsel for Target Corp. and ViewSonic*
*Corp.*

/s/  Craig A. Benson
Kenneth A. Gallo (pro hac vice)
Joseph J. Simons (pro hac vice)
Craig A. Benson (pro hac vice)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
TAYLOR & COMPANY LAW OFFICES,
LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics
Corporation and Sharp Electronics
Manufacturing Company of America, Inc.*