GIBSON, DUNN & CRUTCHER LLP
JOEL S. SANDERS, SBN 107234
JSanders@gibsondunn.com
RACHEL S. BRASS, SBN 219301
RBrass@gibsondunn.com
AUSTIN V. SCHWING, SBN 211696
ASchwing@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, California 94105-2933
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendants
CHUNGHWA PICTURE TUBES, LTD. and
CHUNGHWA PICTURE TUBES (MALAYSIA)
SDN. BHD.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*Best Buy Co., et al. v. Hitachi, Ltd., et al.*, No. 11-cv-05513;<br><br>*Best Buy Co., et al. v. Technicolor SA, et al.*, No. 13-cv-05264;<br><br>*Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd.* No. 14-cv-02510. | Master File No. 3:07-CV-5944 SC<br>MDL No. 1917<br><br>**DEFENDANT CHUNGHWA PICTURE TUBES, LTD.'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE # 11: TO ESTABLISH THE PRECLUSIVE EFFECT OF, OR IN THE ALTERNATIVE, ADMIT THE EUROPEAN COMMISSION DECISION**<br><br>Date:   None set<br>Place:  1, 17th Floor<br><br>Hon. Samuel Conti |

Gibson, Dunn & Crutcher LLP

## INTRODUCTION

After more than five years of discovery, hundreds of depositions and millions of pages of document discovery (and indeed, after plaintiffs identified over 8,000 documents as potential trial exhibits in this case), plaintiffs seek an end-run around litigation of their claims on actual evidence. Instead, they move this court *in limine* to allow the improper preclusive effect for and admission into evidence of a decision that was issued in a foreign jurisdiction by an administrative rather than judicial body that applied fundamentally different legal tenants to substantially different issues and claims than those presented in these cases. This Court should not countenance such tactics, nor should it grant preclusive effect or permit the entry into evidence of the European Commission's ("EC") administrative decision ("EC Decision") that a subset of Defendants ("EC Addressees") violated *European Union* antitrust laws. Any such grant or permission would unfairly prejudice Defendants, prompt a series of unduly burdensome and irrelevant mini-trials on U.S. v. EU law—including procedure, adjudication, and admission issues—and run contrary to the Federal Rules of Evidence and established Ninth Circuit precedent.

## ARGUMENT

**I.      The EC Decision Concerns Fundamentally Different Issues, Fails the Ninth Circuit's Estoppel Test, And Should Not Be Given Preclusive Effect.**

The Ninth Circuit uses a four-factor test to determine whether there is an identity of issues requiring estoppel. In comparing proceedings, the Circuit typically looks for: (1) a substantial overlap between the evidence or argument advanced in both proceedings; (2) the application of the same rule of law as that involved in the prior proceeding; (3) pretrial preparation and discovery in the first action that embraced the matter sought to be presented in the second; and (4) closely related claims. *See RTC v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999). None of these factors are present here, and the Court should dismiss Plaintiffs' attempts to seek collateral estoppel on these issues.

**A.      Plaintiffs have failed to show a substantial overlap between the evidence and/or argument offered in the EU and U.S. proceedings.**

Instead of a substantial overlap, there are fundamental differences between the evidence and arguments permitted in the EC enforcement proceedings and those offered to this Court. The EC Administrative body used critically different investigative, evidentiary, and procedural devices to

those used by U.S. federal courts.  Evidence and argument offered to the EC was restricted and did not permit, among other things: exculpatory documents and witness statements, testimony regarding collected documents, cross examination of witnesses, expert defense testimony, or evidentiary challenges.  And even if the procedural devices had been the same, the evidence was fundamentally different.  The EC did not obtain or consider *any* evidence relating to the subject of this proceeding: The alleged existence of a cartel *affecting the United States.*  Critically, the Foreign Trade Antitrust Improvements Act ("FTAIA") makes conduct directed at overseas sales – such as those made in the EU – *irrelevant* to U.S. claims.  *See In re Dynamic Random Access Memory Antitrust Litig.*, 546 F.3d 981 (9th Cir. 2008) (plaintiffs' foreign injury claim based on overseas purchases barred by the FTAIA); *Motorola Mobility, Inc. v. AU Optronics Corp.*, No. 1:09-cv-06610, Dkt. No. 182 (N.D. Ill. Jan. 23, 2014) (same).  And, contrary to Plaintiffs' Motion, the Chunghwa Picture Tubes, Ltd. defendants (including Chunghwa Picture Tubes Sdn. (Malaysia)) did not "concede" to all of the EC Decision findings regarding the geographic and product scope of the alleged cartel.  *See* Mot. at 37.  Instead, Chunghwa, as the leniency applicant in Europe, did not exercise any right of appeal with respect to that decision or Chunghwa's role.  A failure to appeal is not, of course, the same thing as a concession.

**B.     EU and U.S. rule of law is fundamentally different.**

U.S. law differs significantly from EU law, necessarily resulting in fundamental differences in application and result.  The plain language of the EC Decision reveals multiple rule of law conflicts.

First, the U.S. and EU have different standards for what constitutes an unlawful "agreement."  Unlike the EU, in an action under Section 1 of the Sherman Act, the plaintiff has the burden of proving an agreement to fix prices.  *In re Citric Acid Litig.*, 191 F.3d 1090, 1093, 1094 n.2 (9th Cir. 1999) ("*Citric Acid II*") (Judge Smith), *cert. denied*, 529 U.S. 1037 (2000).  Moreover, participation in a price-fixing agreement "c[an] only be predicated on the knowing involvement of each defendant, considered individually, in the conspiracy charged."  *United States v. United States Gypsum Co.*, 438 U.S. 422, 463 (1978).  In Europe, by contrast, there is a much lower standard, whereby a party can be held liable if it has knowledge of anticompetitive conduct and does not affirmatively disassociate itself from that conduct.  See EC Decision ¶ 631.

Second, the EU deems "[i]nformation exchanges between competitors of individualized data regarding indented future prices or quantities," a per se restriction on competition. Guidelines On The Applicability Of Article 101 Of The Treaty On The Functioning Of The European Union To Horizontal Co-Operation Agreements ¶ 74. By contrast, in the U.S. such exchanges may or may not be illegal, and can be treated as evidence *suggesting* rather than *establishing* an illegal restriction on competition. *See United States v. Container Corp. of Am.*, 393 U.S. 333, 337 (1969) ("Price information exchanged in some markets may have no effect on a truly competitive price.")

Third, unlike the EU, U.S. antitrust law requires a showing of particularized antitrust injury—an issue hotly disputed in this case. *See* Dkt. 3050; 3102; *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988) ("To establish a section 1 violation under the Sherman Act, a plaintiff must demonstrate three elements: (1) an agreement, conspiracy, or combination among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition . . .") (emphasis added). No such evidence was necessary for or discussed in the EC Decision, or presented to the EC for its consideration. *See* Declaration of Professor Ariel Ezrachi, dated Feb. 13, 2015, at ¶19 [Dkt. No. 3558] ("In deciding whether an agreement is prohibited by Article 101(1) TFEU, there is no need to take account of its actual effect once it appears that its object is to prevent, restrict or distort competition within the internal market.").

Fourth, the EC based its Decision on a theory of vicarious liability that directly conflicts with U.S. law. In the U.S. a subsidiary is *presumed* to be a separate entity to its parent, and the Plaintiffs here have the burden of presenting evidence overcoming this presumption. *See E. & J. Gallo Winery v. EnCana Energy Servs., Inc.*, Civ. No. 03-5412 AWI LJO, 2008 WL2220396, at *5 (E.D. Cal. May 27, 2008) ("The independence of a subsidiary from the parent corporation is to be presumed"). The opposite is true in the EU, meaning that the issue of corporate and entity control will be newly adjudicated in the U.S. action. *See* EC Decision ¶ 723.

EU and U.S. law conflict on legal issues that are fundamental in this case. There can be no genuine question that the same rules of law apply here as in the EC proceedings. *RTC,* 186 F.3d at 1116.

**C.    Plaintiffs' claims are fundamentally inconsistent with the EC Decision.**

Perhaps most importantly, the claims asserted by Plaintiffs in the U.S. Action are not comparable, much less consistent with the conclusions reached in the EC Decision. First, Plaintiffs' claims are necessarily circumscribed to those with a direct, substantial, and foreseeable effect on U.S. commerce. *See* Dkt. 3003; 3006. Second, Plaintiffs claim there was a single CRT conspiracy including both monitor tubes (CDTs) and television tubes (CPTs) – a conclusion rejected in the EC Decision. *See* EC Decision ¶ 649. Third, Plaintiffs were not parties to the EC Proceeding, and are necessarily raising different theories of liability and damages under U.S. state and federal law that were nowhere considered in or necessary to the EC Proceedings or Decision.

The EC and U.S. proceedings are thus fundamentally procedurally different and involve fundamentally different issues and law. Their estoppel claims should therefore fail as a matter of law.

**II.    Plaintiffs' Claims In This Action Were Not Actually Litigated Before The EC Or Necessary To The EC's Decision**

To have preclusive effect, Plaintiffs have to show that the EC Decision was based on adjudicated claims, and that the adjudicated claims were necessary to the Decision. *See Bobby v. Bies*, 556 U.S. 825, 834 (2009) (holding that "[i]ssue preclusion bars successive litigation of an issue of fact or law that is actually litigated and determined by a valid and final judgment and is final to the judgment."). That showing fails here.

First, Plaintiffs cannot meet their burden because the EC acknowledged that its Decision was based, in significant (yet unidentified) part, on leniency admissions. *See* EC Decision ¶ 487, 489. But leniency admissions are private agreements not adjudicated claims. Where, as here, "individual issues or entire judgments rest on admission or consent…a major element of preclusion is missing." *See* "On the Merits" – Admissions, Stipulations, and Consent Judgments, 18A Fed. Prac. & Proc. Juris. § 4443 (2d ed). Plaintiffs have provided no support for their contention that leniency admissions forming the basis for unidentified portions of the EC Decision should extend to create preclusive effect for the entirety of the EC Decision.

Second, because Plaintiffs cannot identify the elements of the EC Decision that are based on adjudicated claims, they cannot identify the adjudicated factual determinations that were necessary to the EC Decision. *See Bies*, 556 U.S. at 834 (holding that "if a judgment does not depend on any given determination, relitigation of that determination is not precluded."). That too bars preclusive use of the EC decision.

Third, granting preclusive effect in the U.S. to the entirety of an EC decision that was partially based on unidentified leniency admissions would undermine the EU's leniency program by dissuading applicants in multi-jurisdictional actions from making similar admissions in the future. No U.S. federal court adjudicating a civil action has ever given preclusive effect to EC findings in a price-fixing case. Further, Plaintiff has identified no evidence demonstrating that the EC intended its decision to have preclusive effect in other jurisdictions. There is nothing in the U.S./EU Antitrust Cooperation agreements that grants preclusive status to EC decisions, and the EC itself precludes parties from using their own leniency submissions, or the submissions of others, for any other purpose. Those reasons, individually and collectively, should bar any attempt at preclusive use of the EC Decision.

### III. The EC Decision Should Not Be Admitted Into Evidence.

#### A. The EC Decision is unduly prejudicial, confusing, and burdensome.

The EC Decision falls foul of Federal Rule of Evidence Rule 403 because its "probative value is substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

First, there is no reason to presume that the subject of the EC's investigation was co-extensive with Plaintiffs' claims. That fact is underscored by the EC's Summary of Decision, which states that the EC investigation related to distinct CDT and CPT conduct, unlike the "cathode ray tube" conspiracy alleged here.

Second, the EC investigation and Decision relate to EU—not U.S.—law and procedure. As this Court previously acknowledged in its March 26, 2014 order declining to require disclosure of the decisions based on the EC's stated interest in confidentiality and principles of international comity, "[a]pplicable law would clearly be different in a foreign jurisdiction." Dkt. 2463 at 5. The admission

of the EC Decision, which applies fundamentally different law and procedure from the U.S. law the jury will apply, runs the real risk of misleading and confusing the jurors.

Third, the EC Decision is cumulative to the actual evidence developed in the discovery record in this case. Plaintiffs have identified at least 130 witnesses and 8,000 proposed exhibits for the trial of this case. Given that volume of percipient witness and documentary evidence, there is no reason to allow in its place the EC Decision.

### B. The EC Decision is Inadmissible Hearsay

The EC Decision should also be excluded as inadmissible hearsay that is not subject to any hearsay exception. *See* Fed. R. Evid. 801. Plaintiffs erroneously suggest that it could be admitted under the public records exception, which provides that a "record or statement of public office" is admissible if "it sets out . . . in a civil case . . . factual findings from a legally authorized investigation" and if the document is trustworthy. Fed. R. of Evid. 803(8).

The EC Decision is not sufficiently trustworthy to qualify for the Rule 803(8) exception. Courts often look to "the extent to which . . . agency findings are based upon, or are the product of, proceedings involving the receipt of materials which would not be admissible as evidence in the courts" in the considering whether the agency's report is trustworthy. *Infineon Technologies AG*, 222 F.R.D. 101, 109 (E.D. Va. 2004); *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1342 n.4 (3d Cir. 2002). Here, the EC decision is similarly based on materials that *would not* be admissible evidence, including unsworn statements of counsel, which in turn were based on unsworn statements of non-party witnesses. Similarly, underlying documents reviewed by the EC were not provided by a sponsoring or other witness. Indeed, there is almost nothing contained in the EC Decision that would have been admissible in the U.S. courts in the form and manner in which it was relied upon by the EC.

//
//
//
//
//

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion In Limine # 11.

DATED:  March 13, 2015				GIBSON, DUNN & CRUTCHER LLP

							By:	    /s/Rachel S. Brass
								        Rachel S. Brass

							Attorneys for Defendants

							CHUNGHWA PICTURE TUBES, LTD. and
							CHUNGHWA PICTURE TUBES (MALAYSIA) SDN.

# DECLARATION OF SERVICE

I, Nicola M. Paterson, declare as follows:

I am employed in the County of San Francisco, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 555 Mission Street, Suite 3000, San Francisco, California, 94105, in said County and State. On the date below, I served the within:

**DEFENDANT CHUNGHWA PICTURE TUBES, LTD.'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE # 11: TO ESTABLISH THE PRECLUSIVE EFFECT OF, OR IN THE ALTERNATIVE, ADMIT THE EUROPEAN COMMISSION DECISION**

to all named counsel of record as follows:

☑ **BY ECF (ELECTRONIC CASE FILING)**: I e-filed the above-detailed documents utilizing the United States District Court, Northern District of California's mandated ECF (Electronic Case Filing) service on March 13, 2015. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the documents upon confirmation of e-filing.

I certify under penalty of perjury that the foregoing is true and correct, that the foregoing document(s) were printed on recycled paper, and that this Declaration of Service was executed by me on March 13, 2015, at San Francisco, California.

                                                  /s/ *Nicola M. Paterson*
                                                    Nicola M. Paterson