1   ROBINS KAPLAN LLP
    Roman M. Silberfeld, Bar No. 62783
2   RSilberfeld@robinskaplan.com
    David Martinez, Bar No. 193183
3   DMartinez@robinskaplan.com
    Laura E. Nelson, Bar No. 231856
4   LNelson@ robinskaplan.com
    Jill S. Casselman, Bar No. 266085
5   JCasselman@ robinskaplan.com
    2049 Century Park East, Suite 3400
6   Los Angeles, CA 90067-3208
    Telephone:    310-552-0130
7   Facsimile:     310-229-5800

8   Attorneys for Plaintiffs
    BEST BUY CO., INC.; BEST BUY
9   PURCHASING LLC; BEST BUY
    ENTERPRISE SERVICES, INC.; BEST BUY
10  STORES, L.P.; and BESTBUY.COM, L.L.C.

11  [Additional counsel listed on signature page]

12              **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14              **SAN FRANCISCO DIVISION**

15

16  IN RE: CATHODE RAY TUBE (CRT)        Master Case No.: 3:07-cv-05944-SC
17  ANTITRUST LITIGATION                 MDL No. 1917

18                                       [Honorable Samuel Conti]

19  This document relates to:
                                         **DIRECT ACTION PLAINTIFFS'**
20  *Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.,*   **REPLY IN SUPPORT OF MOTION *IN***
    *No. 11-cv-05513-SC*                 ***LIMINE* NO. 11 TO ESTABLISH THE**
21                                       **PRECLUSIVE EFFECT OF, OR IN**
                                         **THE ALTERNATIVE ADMIT, THE**
22  *Best Buy Co., Inc., et al. v. Technicolor SA, et*   **EUROPEAN COMMISSION DECISION**
    *al., No. 13-cv-05264-SC*
23  *Target Corp. v. Chunghwa Pictures Tubes,*
    *Ltd., et al., No. 3:07-cv-05514-SC*   Date:    TBD
24                                       Time:    TBD
                                         Ctrm:    Courtroom 1, 17th Floor
    *Target Corp. v. Technicolor SA, et al.,* Case
25  No. 3:11-cv-05514-SC

26  *Alfred H. Siegel, as Trustee of the Circuit City*
    *Stores, Inc. Liquidating Trust v. Hitachi, Ltd.,*
27  *et al., No. 11-cv-05502-SC*

28

ROBINS KAPLAN LLP
TTORNEYS AT LAW
LOS ANGELES

*Sears, Roebuck and Co., et. al. v. Chunghwa Picture Tubes, Ltd., et al., No. 11-cv-5514*

*Sharp Electronics Corporation, et al. v. Hitachi, Ltd., et al., No. 13-cv-01173-SC*

*Sharp Electronics Corp., et al. v. Koninklijke Philips Electronics N.V., et al., No. 13-cv-2776 SC*

*ViewSonic Corporation v. Chunghwa Picture Tubes, Ltd., et al., No. 14-cv-02510*

Direct Action Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., and BestBuy.com, LLC ("Best Buy"); Alfred H. Siegel, solely in his capacity as Trustee of the Circuit City Stores, Inc. Liquidating Trust ("Circuit City"); Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. ("Sharp"); Sears, Roebuck and Co., and Kmart Corporation (collectively "Sears and Kmart"); Target Corporation, ("Target"); and ViewSonic Corporation ("ViewSonic") (collectively "Plaintiffs") hereby submit their Reply in support of Motion *in Limine* No. 11 to Establish the Preclusive Effect of, or in the Alternative Admit, the European Commission Decision, as follows.

Respectfully submitted,

Dated:  March 27, 2015          **ROBINS KAPLAN LLP**

By:    /s/ Roman M. Silberfeld
              Roman M. Silberfeld
              David Martinez

Attorneys For Plaintiffs
BEST BUY CO., INC.; BEST BUY PURCHASING LLC; BEST BUY ENTERPRISE SERVICES, INC.; BEST BUY STORES, L.P.; and BESTBUY.COM, L.L.C.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

60974465.1

**Table of Contents**

I.    INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT .............................................................................................................. 2

    A.    The EC Decision Is Entitled to Partial Preclusive Effect.................................. 2

        1.    The EC Defendants Were Afforded Due Process ................................. 2

        2.    The EC Addressees Had a Full and Fair Opportunity to Litigate ....................... 6

        3.    Plaintiffs Have Shown Identity of Issues as to the Matters for Which Preclusion is Sought ...................................................... 8

        4.    The EC's Fact Findings Were Actually Litigated and Decided......................... 10

        5.    The EC's Fact Findings Were Necessary to the EC's Decision ......................... 11

    B.    The EC Decision Should Not Be Excluded Under Rule 403 ...................................... 12

III.    CONCLUSION .......................................................................................................... 15

ROBINS KAPLAN LLP
ᴛᴛᴏʀɴᴇʏꜱ ᴀᴛ ʟᴀᴡ
ʟᴏꜱ ᴀɴɢᴇʟᴇꜱ

1

# Table of Authorities

2

**Cases**

3

*Bank Melli Iran v. Pahlavi,*

4

    58 F.3d 1406 (9th Cir. 1995) .................................................................................. 4

5

*Beachy v. Boise Cascade Corp.,*

    191 F.3d 1010 (9th Cir. 1999) .............................................................................. 14

6

7

*Bird v. Glacier Elec. Coop.,*

    255 F.3d 1136 (9th Cir. 2001) ........................................................................... 2, 4

8

*Briscoe v. LaHue,*

9

    460 U.S. 325 (1983) ............................................................................................... 6

10

*British Midland Airways Ltd. v. Int'l Travel, Inc.,*

    497 F.2d 869 (9th Cir. 1974) ................................................................................. 2

11

12

*City of New York v. Pullman Inc.,*

    662 F.2d 910 (2d Cir. 1983) ................................................................................ 14

13

*Daewoo Motor Am., Inc. v. Gen. Motors Corp.,*

14

    315 B.R. 148 (M.D. Fla. 2004) ............................................................................. 2

15

*De la Mata v. American Life Ins. Co.,*

    771 F. Supp. 1375 (D. Del. 1971) ......................................................................... 3

16

*Emich Motors Corp. v. General Motors Corp.,*

17

    340 U.S. 558 (1951) ............................................................................................. 11

18

*Giakoumelos v. Coughlin,*

19

    88 F.3d 56 (2d Cir. 1996) ...................................................................................... 6

20

*Granados-Mondragon v. INS,*

    28 F. App'x 695 (9th Cir. 2002) .......................................................................... 11

21

22

*Hilton v. Guyot,*

    159 U.S. 113 (1895) ........................................................................................... 2, 4

23

*Info. Res. v. Dun & Bradstreet Corp.,*

24

    No. 96 CIV. 5716, 1998 WL 851607 (S.D.N.Y. Dec. 8, 1998) ............................. 3

25

*Intel Corp. v. Advanced Micro Devices, Inc.,*

    542 U.S. 241 (2004) ............................................................................................... 3

26

*Kamilche Co. v. U.S.,*

27

    53 F.3d 1059 (9th Cir. 1995) ............................................................................... 10

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Kelly v. U.S. EPA,*
    203 F.3d 519 (7th Cir. 2000)..................................................................... 6

*Lewis v. City of Chicago Police Dep't,*
    590 F.3d 427 (7th Cir. 2009)................................................................... 14

*Maciel v. C.I.R.,*
    489 F.3d 1018 (9th Cir. 2007)................................................................... 7

*Mgmt. & Technical Consultants S.A. v. Parsons-Jurden Int'l Corp.,*
    820 F.2d 1531 (9th Cir. 1987)................................................................... 2

*Morrissey v. Brewer,*
    408 U.S. 471 (1972).................................................................................. 2

*Murdoch v. Castro,*
    609 F.3d 983 (9th Cir. 2010)................................................................... 6

*NLRB v. Interboro Contractors, Inc.,*
    432 F.2d 854 (2d Cir. 1970)..................................................................... 6

*Passmore v. Astrue,*
    533 F.3d 658 (8th Cir. 2008)..................................................................... 5

*Pony Express v. Springsteen,*
    163 F. Supp. 2d 465 (D. N.J. 2001) .......................................................... 8

*Rodriguez-Garcia v. Miranda-Marlin,*
    610 F.3d 756 (1st Cir. 2010) ................................................................... 12

*Ross-Berger Cos., Inc. v. Equitable Life Assurance Soc'y of the U.S.,*
    872 F.2d 1331 (7th Cir. 1989)................................................................... 7

*RTC v. Keating,*
    186 F.3d 1110 (9th Cir. 1999)................................................................. 12

*SEC v. Monarch Funding Corp.,*
    192 F.3d 295 (2d Cir. 1999)..................................................................... 7

*Sierra Pac. Power Co. v. Craigie,*
    738 F. Supp. 1325 (D. Nev. 1990) ............................................................ 8

*Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable
    Trust,*
    410 F.3d 304 (6th Cir. 2005)................................................................... 11

*Sugar Ass'n v. McNeil-PPC, Inc.,*
    2008 WL 4755611 (C.D. Cal. Jan. 7, 2008) ........................................... 13

60974465.1

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Taylor v. United States*,
    181 F.3d 1017 (9th Cir. 1999) ................................................................. 10

*United States v. Cruz-Garcia*,
    344 F.3d 951 (9th Cir. 2003) ................................................................... 12

*United States v. Lee*,
    208 F. App'x 352 (5th Cir. 2006) ............................................................. 5

*United States v. Salyer*,
    271 F.R.D. 148 (E.D. Cal. 2010) .............................................................. 6

*United States v. W.R. Grace*,
    504 F.3d 745 (9th Cir. 2007) ................................................................... 12

*Vichi v. Koninklijke Philips Elecs., N.V.*,
    85 A.3d 725 (Del. Ch. 2014) ............................................................. 1, 3, 7

*Walia v. Aegis Ctr. Point Developers Private Ltd.*,
    No. CV-12-4660-CRB, 2014 WL 296003 (N.D. Cal. Jan. 27, 2014) ............... 2

*Wilson v. Marchington*,
    127 F. 3d 805 (9th Cir. 1997) ................................................................... 4

*Wolff v. McDonnell*,
    418 U.S. 539 (1974) ................................................................................ 5

**Statutes**

28 U.S.C. § 1782 .................................................................................... 3

**Other Authorities**

30 Am. Jur. 2d Executions, Etc. § 732 ....................................................... 4

Black's Law Dictionary 410 (7th ed. 1999) ............................................... 10

European Commission Antitrust Manual of Procedures § 3.22 ........................ 5

**Rules**

Federal Rule of Evidence 403 ....................................................... 12, 13, 14

iv

1

2

**I.**
**INTRODUCTION**

3        In the opening papers, Plaintiffs explained that this Court should afford 158 paragraphs of

4   the 340-page EC Decision preclusive effect and that the Decision should be admissible in this

5   action.  Defendants' Opposition is based upon a fundamental misconception of the scope of the

6   Motion and a series of faulty premises.  Plaintiffs do not, as Defendants erroneously contend,

7   seek an order finding that Plaintiffs are "entitled to judgment as a matter of law on all dispositive

8   issues."  Opp. at 1.  Rather, the Motion seeks issue preclusion on specific facts that were essential

9   to the EC's conclusions that the EC Defendants[1] violated EU Competition law.  Plaintiffs seek

10   preclusion on factual findings of the EC related to conspiratorial meetings and information

11   exchanges.  They do not contend that the EC Decision controls the legal question of whether this

12   conduct violated U.S. law.  Plaintiffs show that the EC Decision should be recognized under

13   principles of comity, that the EC Defendants were afforded due process, and that these issues

14   were already litigated and necessarily decided by the EC.

15        Defendants erroneously assert that no court has granted preclusive effect to EC findings.

16   Opp. at 1. Plaintiffs need not even look beyond this specific EC Decision to show that this

17   statement is untrue.  In *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725 (Del. Ch. 2014),

18   Philips made and lost many of the same arguments against preclusion Defendants raise here. It

19   did not matter that the subject matter of the claim was not identical to the EC proceeding, nor that

20   the parties were not allowed the exact same procedural mechanisms as those in the U.S.  The

21   *Vichi* court found that the relevant factual findings had been actually litigated and were necessary

22   to the EC's Decision.  Thus, partial preclusive effect was appropriate.  The same is true here.

23        Defendants also fail to make any plausible argument regarding "unfair prejudice" they

24   would suffer.  Defendants have already long taken the position in this litigation in fact and expert

25   testimony that conduct relating to foreign markets had no impact on United States prices or

26   consumers; that information is already part of the record and defendants have identified no

27

28   _____

[1] For purposes of this Reply, Plaintiffs will refer to the Defendants who were Addressees to the
EC Decision as "EC Defendants" or "EC Addressees."

ROBINS KAPLAN LLP
ᴬᵀᵀᴼᴿⁿᵉʸˢ ᴬᵀ ᴸᴬᵂ
ᴸᴼˢ ᴬⁿᵍᵉˡᵉˢ

additional or unique defense they would need to raise or discovery they would need to take in order to answer the EC Decision evidence here.

## II.
## ARGUMENT

**A.      The EC Decision Is Entitled to Partial Preclusive Effect**

**1.      The EC Defendants Were Afforded Due Process**

Defendants argue that the EC Decision should not be recognized pursuant to international comity and that Defendants were not afforded a full and fair opportunity to litigate before the EC because the EC's practices are "not consistent with U.S. due process principles."  Opp. at 8.  This argument should be rejected.

With respect to recognition of foreign judgments, "[i]t has long been the law that unless a foreign country's judgments are the result of outrageous departures from our own notions of 'civilized jurisprudence,' comity should not be refused." *British Midland Airways Ltd. v. Int'l Travel, Inc.*, 497 F.2d 869, 871 (9th Cir. 1974).  Comity does not require procedures in a foreign tribunal to be identical to U.S. procedures. *Bird v. Glacier Elec. Coop.*, 255 F.3d 1136, 1142 (9th Cir. 2001).  Rather, foreign judgments may be recognized "so long as the parties in the prior action were afforded due process rights." *See Walia v. Aegis Ctr. Point Developers Private Ltd.*, No. CV-12-4660-CRB, 2014 WL 296003, at *2 (N.D. Cal. Jan. 27, 2014) (citing *Hilton v. Guyot*, 159 U.S. 113, 204-05 (1895)).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  Most fundamentally, due process comprises notice and an opportunity to be heard, or the opportunity to present one's case fully and fairly. *See, e.g.*, *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 315 B.R. 148, 157-59 (M.D. Fla. 2004), *aff'd*, 459 F.3d 1249 (11th Cir. 2006).

Defendants argue that U.S. courts cannot grant comity to foreign decisions that are not issued by courts or the result of trials.  Opp. at 7.  That is not the law.  U.S. courts have granted preclusive effect to decisions of foreign arbitral panels, which are not courts. *See, e.g.*, *Mgmt. & Technical Consultants S.A. v. Parsons-Jurden Int'l Corp.*, 820 F.2d 1531, 1535 (9th Cir. 1987) (enforcing foreign arbitral award).  They have also granted preclusive effect  to foreign

1   administrative decisions, despite the absence of a traditional court or "full trial" per U.S.

2   conceptions.  *See, e.g.*, *Info. Res. v. Dun & Bradstreet Corp.*, No. 96 CIV. 5716, 1998 WL

3   851607, at *2 (S.D.N.Y. Dec. 8, 1998) (granting preclusive effect to fact findings of Canadian

4   Competition Tribunal); *Vichi*, 85 A.3d at 782 (granting preclusive effect to findings in EC

5   decision).

6       Defendants suggest that U.S courts cannot recognize any EC decision because *the EC has*

7   argued that it is not a "tribunal" under U.S. law for purposes of 28 U.S.C. § 1782.[2]  Opp. at 7.

8   Defendants rely upon the EC's amicus brief in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542

9   U.S. 241 (2004) in which the EC argued that it "functions primarily as a law enforcement

10   agency."  Opp. at 7-8.  What Defendants omit is that *__the U.S. Supreme Court rejected that exact__*

11   *__argument in the very case that Defendants cite__*.  In *Intel*, the Court held that the EC is a

12   "tribunal" because it acts as "a first-instance decisionmaker."  542 U.S. at 258.  The Court

13   stressed that EC proceedings lead "to a dispositive ruling, *i.e.*, a final administrative action both

14   responsive to the complaint and reviewable in court."  *Id.* at 255.

15       Due process also does not require a formal trial, as evidenced by decisions affording

16   comity to foreign arbitration decisions and administrative rulings and by the fact that the

17   Delaware Chancery Court recognized and gave preclusive effect to the very same EC decision in

18   *Vichi*.  85 A.3d at 782.[3]

19       Rather, the Ninth Circuit has found the following procedural safeguards to be the

20   ────────────────────────

[2] 28 U.S.C. § 1782 is a statute permitting federal courts to assist in the production of evidence

21   "for use in a foreign or international tribunal."

[3] Defendants' argument that the *Vichi* decision did not address due process and international

22   comity misstates the law and the record.  In *Vichi*, Philips raised the same due process arguments

that the Defendants raise here.  Defendant Koninklijke Philips Electronics, N.V.'s Post-Trial

23   Brief, 2013 WL 1686804, at n. 69 (Del. Ch. Apr. 12, 2013).  Contrary to Defendants' assertions,

Delaware law *does* require that foreign judgments satisfy due process, and the applicable standard

24   is nearly identical to the Ninth Circuit's.  *See De la Mata v. American Life Ins. Co.*, 771 F. Supp.

1375 (D. Del. 1971).  Vichi raised the obvious point that "[c]ontrary to Philips' suggestion,

25   recognition of a foreign judgment does not require that the foreign proceeding provided the full

array of protections available in a U.S. proceeding," and Vichi quoted the applicable legal

26   standard in Delaware (the same standard applied by the Ninth Circuit).  Plaintiff Carlo Vichi's

Post-Trial Reply Brief, 2013 WL 1842302, at n.20 (Del. Ch. Apr. 29, 2013).  Despite Philips' due

27   process argument, the *Vichi* court applied issue preclusion.

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   "ingredients of basic due process" in foreign proceedings: fair and impartial treatment from the

2   foreign tribunal; the ability to appear personally before the tribunal; the ability to obtain

3   representation; and the ability to obtain witnesses on one's behalf.  *See Bird*, 255 F.3d at 1142-43

4   (citing *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1413 (9th Cir. 1995)).  Defendants have not

5   shown, and cannot show, that any of these elements of due process were lacking in the EC

6   proceedings.

7            In fact, the Opposition ignores the myriad of protections that were afforded the parties to

8   the EC proceeding.  These procedures comport with U.S. notions of due process.  As set forth in

9   the Motion, the parties had: (1) access to the EC file, (2) the right to respond in writing to the

10  Statement of Objections, (3) the right to participate in a State of Play meeting to be informed of

11  the EC's views of the case, and (4) the right to develop their arguments at an oral hearing and to

12  ask questions to all attendees at the hearing.  Dkt. 3582 at 63-64.  The hearing is overseen by an

13  independent officer that plays no role in the investigation or prosecution of the case and ensures

14  that the parties are able to exercise their procedural rights.  Dkt. 3787 at 20.  The hearing affords

15  the parties the opportunity to ensure that all relevant facts are clarified, and it allows them to

16  present arguments regarding the possible imposition of fines.  Dkt. 3582 at 63-64.

17           Defendants point to three so-called "deficiencies" with respect to the EC procedures.

18  They claim that: (1) the EC relied on unsworn testimony obtained from the addressees through its

19  leniency program, (2) the addressees had no right to obtain discovery from the other addressees,

20  and (3) the addressees could not compel testimony or cross examine witnesses.    These

21  "deficiencies" are not deficiencies at all and do not support the proposition that Defendants were

22  denied due process.

23           Unsworn Testimony and Cross-Examination.    *Hilton v. Guyot*, which Defendants claim is

24  the "seminal opinion on comity," does not support their position that a foreign tribunal deprives a

25  party of due process if it considers unsworn testimony or does not permit cross-examination.

26  "Indeed, *Hilton* rejected challenges to a judgment based on lack of adequate cross-examination

27  and unsworn testimony."  *Wilson v. Marchington*, 127 F. 3d 805, 811 (9th Cir. 1997) (citing

28  *Hilton*, 159 U.S. at 205).  *See also* 30 Am. Jur. 2d Executions, Etc. § 732 ("Allowing the plaintiff

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    to testify without oath or cross-examination . . . according to the laws and practice of the foreign

2    country, is not sufficient ground for denying recognition to the foreign judgment in the United

3    States."). Even in U.S. proceedings, due process does not always require that a party be permitted

4    to cross-examine witnesses. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 567-68 (1974) (no right

5    to confrontation and cross-examination in connection with administrative action to punish state

6    prisoner); *Passmore v. Astrue*, 533 F.3d 658, 665 (8th Cir. 2008) (due process did not afford

7    social security claimant right to cross-examine reporting physician); *United States v. Lee*, 208 F.

8    App'x 352, 355 (5th Cir. 2006) (no due process right to confront and cross-examine witnesses

9    during sentencing).

10        In any event, the unsworn testimony about which Defendants complain consists of

11   corporate statements made by attorneys for the addressees who agreed to cooperate with the EC

12   through the leniency program. Larouche Decl. ¶ 25. These same addressees are also Defendants

13   here. They know what their attorneys presented to the EC on their behalf and they had an

14   opportunity to review the corporate statements of the other addressees. *See* Antitrust Manual of

15   Procedures, Access to file and confidentiality, § 3.22 .[4] To the extent Defendants have a specific

16   basis to challenge the accuracy or reliability of these corporate statements, they could have raised

17   those challenges before the EC, and they can raise them here. Instead, Defendants speculate,

18   without basis, that the corporate statements *could have* been untruthful since the other leniency

19   applicants had an opportunity to "make accusations against other addressees without concern of

20   ever being challenged on the accuracy or completeness of those statements." Opp. at 15. Not so.

21   After reviewing their co-addressees' corporate statements, the parties were able to, and did, raise

22   their objections about those statements. *See* EC Decision ¶¶ 542-554 (addressing objections by

23   Panasonic and Toshiba to their co-addressees' corporate statements). The EC scheme presents

24   ample opportunity for the addressees to present their case, and that is what due process requires,

25   not adherence to the specific procedures employed by U.S. federal courts. Thus, the EC's

26   reliance on unsworn testimony and the addressees' inability to cross-examine witnesses does not

27   _____

28   [4] The European Commission Antitrust Manual of Procedures is accessible at
     http://ec.europa.eu/competition/antitrust/antitrust_manproc_3_2012_en.pdf.
     60974465.1                                    5

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    offend due process.[5]

2         <u>Discovery.</u>  There is no general right to discovery under the Due Process Clause.  *United*

3    *States v. Salyer*, 271 F.R.D. 148, 150 (E.D. Cal. 2010).  In the criminal context, due process

4    requires only "production of exculpatory (*Brady*) and impeachment evidence (*Giglio*)."  *Id.* at

5    151.  And rights to discovery in the civil and administrative contexts are governed by the Federal

6    Rules of Civil Procedure or applicable administrative rules; they are not mandated by the

7    Constitution.  *See, e.g.*, *NLRB v. Interboro Contractors, Inc.*, 432 F.2d 854, 857-58 (2d Cir. 1970)

8    ("It is well settled that parties to judicial or quasi-judicial proceedings are not entitled to pre-trial

9    discovery as a matter of constitutional right."); *Kelly v. U.S. EPA*, 203 F.3d 519, 523 (7th Cir.

10   2000) ("[T]here is no constitutional right to pretrial discovery in administrative proceedings.")

11   Moreover, even if the parties to the EC proceeding had no broad right to discovery from other

12   parties, they "had access to all the evidence on which the Commission bases its objection, in

13   order to exercise their rights of defence and have the opportunity to make their views known."

14   EC Decision ¶ 910; *see also* EC Decision ¶ 100 (describing access to file).[6]

15              **2.       The EC Addressees Had a Full and Fair Opportunity to Litigate**

16        Plaintiffs demonstrated in their Motion that the EC Defendants had a full and fair

17   opportunity to, and did, litigate the relevant issues before the EC.  Dkt. 3582 at 44-46.

18   Defendants now argue that there was no full and fair opportunity to litigate because procedural

19   opportunities unavailable to them before the EC "could readily cause a different result" in this

20   case.  Opp. at 10. This argument is unavailing.  Courts apply preclusion where administrative

---

[5] Defendants rely on cases that did not consider let alone conclude that due process requires the right to cross examination.  In *Murdoch v. Castro*, 609 F.3d 983 (9th Cir. 2010) the Ninth Circuit rejected an argument that the Confrontation Clause requires prosecutors to disclose to a criminal defendant a letter written by the state's witness to his lawyer.  Defendants cite to a statement in a dissenting opinion concerning the benefits of cross examination. Opp. at 9.  In *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983), the Court rejected an argument that a convicted state defendant may assert a claim for damages against a police officer for giving perjured testimony at a criminal trial.  These cases are irrelevant.

[6] Moreover, in response to a request for access to exculpatory evidence in other parties' responses to the Statement of Objections, the EC provided access to certain statements of Toshiba employees to all addressees.  The addressees were given an opportunity to comment on those statements.  EC Decision ¶ 104.  The fact that the EC granted in part a request for exculpatory evidence indicates that Defendants' argument that there is no right to discovery is, at the very least, misleading.

60974465.1                                          6

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   agencies offer far fewer procedural opportunities than U.S. courts, including where cross-

2   examination and the ability to compel testimony are restricted.   *See, e.g.*, *Giakoumelos v.*

3   *Coughlin*, 88 F.3d 56, 59 (2d Cir. 1996) (prison disciplinary hearing granted preclusive effect

4   even where plaintiff "pointed to a number of procedural deficiencies" in hearing and

5   administrative appeal).  Defendants' reliance on *Maciel v. C.I.R.*, 489 F.3d 1018 (9th Cir. 2007),

6   is misguided because that case addressed the preclusive effect of findings made in a criminal

7   sentencing proceeding.  The *Maciel* court holding that sentencing findings ordinarily have no

8   preclusive effect is unsurprising given that sentencing proceedings address only factors important

9   to sentencing and because at sentencing "a criminal defendant will often choose not to challenge

10  sensitive issues." *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 305 (2d Cir. 1999).

11  Nevertheless, *Maciel* recognized that even sentencing findings may be entitled to preclusive

12  effect "when fairness and efficiency considerations support preclusion."  *Maciel*, 489 F.3d at

13  1025.  As described in Plaintiffs' Motion and above, the EC's procedures are robust and cannot

14  fairly be equated to a sentencing hearing. The Decision also shows that the addressees fully

15  litigated their case before the EC.  Thus, any fairness and efficiency considerations weigh in favor

16  of preclusion.

17          Defendants' argument that their participation in the leniency program reduced their

18  incentive or ability to litigate should likewise be rejected.  In fact, the leniency applicants all

19  raised arguments to the EC seeking to minimize the scope of the conspiracy and their

20  participation in it.  The EC Decision is replete with references to the arguments raised by all the

21  parties, including those who applied for leniency. *See e.g.*, Dkt. 3582-4 at ¶¶ 701 (Panasonic,

22  Toshiba, and Thomson contested that the cartel affected Europe), 989-991 (Samsung and LGE

23  contested that a particular meeting represented the start date for their participation in the

24  conspiracy).  The EC addressees not only had an incentive to litigate the EC's allegations in light

25  of the substantial penalties at stake and the prospect of a judgment that would bind all courts

26  within the EU, the record shows that they in fact did vigorously litigate the EC's allegations.[7]

27  ───────────────
    [7] Defendants' incentive to litigate before the EC was high.  They were aware of the substantial
28  financial penalties at stake in the proceedings.  *Ross-Berger Cos., Inc. v. Equitable Life Assurance*
    *Soc'y of the U.S.*, 872 F.2d 1331, 1338 (7th Cir. 1989) (incentive to litigate shown where "a

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

3.  **Plaintiffs Have Shown Identity of Issues As to the Matters for Which Preclusion Is Sought**

Defendants' claim that Plaintiffs cannot show identity of issues because "significant" differences exist between EU and U.S. antitrust laws should be rejected for at least two reasons. First, Defendants' arguments necessarily imply that Plaintiffs seek to preclude Defendants from litigating whether their conduct violates U.S. law. They do not. Plaintiffs seek issue preclusion as to specific factual findings, not claim preclusion.  Second, Plaintiffs do not seek preclusion as to any factual matters based upon distinctive features of EU law.

Plaintiffs Seek Issue Preclusion. Defendants highlight every conceivable difference between the claims and procedural postures of the two actions.[8]  These distinctions are irrelevant here, because Plaintiffs do not argue that the EC Decision establishes a violation of U.S. law as a matter of *claim* preclusion.  Rather, Plaintiffs seek a ruling that, under principles of *issue preclusion*, certain facts regarding Defendants' conduct ought not be subject to relitigation. These facts are identical regardless of any supposed differences between the legal claims and arguments raised in the two proceedings. *See Sierra Pac. Power Co. v. Craigie*, 738 F. Supp. 1325, 1327-1328 (D. Nev. 1990) ("Issue preclusion applies to bar relitigation of those issues actually litigated and decided, *even though the causes of action may be substantially dissimilar*.") (emphasis added).

Here, issue preclusion will establish certain discrete facts concerning Defendants' participation in the global CRT conspiracy.  Plaintiffs recognize that the EC Decision does not cover, and that they will need to prove at trial, all elements of their claims, including that Defendants' conduct constitutes a violation of the Sherman Act and that Plaintiffs were injured. Accordingly, Defendants' argument that Plaintiffs have failed show identity as to *all* elements of their U.S. law claims is irrelevant.

If other courts required anything like the standards advanced by Defendants, preclusive effect would never attach to a foreign court judgment.  Of course, this is not the case. *See, e.g.*,

substantial amount of money was at stake").  They were also aware that they faced the prospect of an adverse judgment *binding on the national courts of all the members states of the EU.  See Vichi*, 85 A.3d at 782-83.

[8] *See also* CPT Opp. at 5.

60974465.1

8

1   *Pony Express v. Springsteen*, 163 F. Supp. 2d 465 (D. N.J. 2001) (granting summary judgment

2   based on collateral estoppel from "clearly factual" findings of a UK copyright ruling).

3       <u>Any Differing Legal Standards are Irrelevant.</u>  Defendants make much of the purportedly

4   different legal standards at times applied by the EC. *See* Opp. at 15-17.  However, Plaintiffs do

5   not seek preclusive effect as to any aspects of the EC Decision that are entwined with distinctive

6   features of EU law, such as issues of vicarious liability, pure information exchange, or a different

7   standard of "agreement."  Thus, any differences between EU and U.S. antitrust law are irrelevant

8   here.

9       Take, as but one example, paragraph 124 of the EC Decision, for which preclusion is

10  sought: "The core participants in the multilateral meetings were originally Chunghwa, Samsung,

11  LGE, [CPT producer] and [CPT producer].  The meetings initially took place in Asia, in

12  particular the multilateral meetings." Dkt. 3582-4 at ¶ 124. Defendants' arguments fail to show,

13  as a practical matter, how the EC's determination of such "who, what, where, when" fact findings

14  could be impacted by any of the claimed differences between EU and U.S. law.

15      Plaintiffs do not seek to establish the ownership and control relationships between the

16  parties by the EC Decision. Plaintiffs only seek preclusive effect as to findings of *direct*

17  *conspiracy participation* of EC Addressees who are also Defendants in this case, based upon

18  direct (not vicarious) evidence of their own involvement.  Defendants fail to show that Plaintiffs

19  seek preclusive effect as to a single finding that is in any way based upon vicarious liability.

20      Similarly, Plaintiffs seek to preclude Defendants from relitigating the facts of certain

21  information exchanges occurring.  They do not seek, however, preclusive effect as to legal

22  findings that Defendants' information exchanges constituted antitrust violations.  Thus, the

23  distinction between EU and U.S. law on this point is moot.

24      The same is true regarding the claimed "lower standard" for what constitutes an unlawful

25  agreement under EU law. Opp. at 16. Once again, Plaintiffs do not seek to preclude Defendants

26  from relitigating whether the agreements they made with one another were unlawful.  They seek

27  only to preclude Defendants from relitigating certain facts regarding meetings and other

28  communications that were necessary to the EC's determinations.  Moreover, Defendants fail to

9

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

cite to a single paragraph of the EC Decision that supposedly relies upon this lower standard in

ascribing liability to the EC Addressees.  This is because, in actual fact, the EC Decision rests

upon solid documentary evidence demonstrating *knowing and active* cartel participation.[9]

Accordingly, Plaintiffs have met the identity requirement as to the issues for which

preclusion is sought: factual findings showing the EC Defendants' participation in a global CRT

conspiracy.

**4.     The EC's Fact Findings Were Actually Litigated and Decided**

An issue is actually litigated and decided if it was contested by the parties and expressly

addressed by the tribunal.  *Kamilche Co. v. U.S.*, 53 F.3d 1059, 1062 (9th Cir. 1995).  Review of

the EC Decision makes plain that Defendants' participation in a global CRT conspiracy was

vigorously contested by the parties.  *See, e.g.*, Dkt. 3852-4 at ¶¶ 430, 452, 458, 459, 491-495

(summarizing Defendants' arguments).  Defendants seek to dispute this by arguing that because

the Commission relied upon evidence supplied by the EC Addressees in connection with leniency

applications, this renders the EC Decision more akin to a "consent decree" than an adjudicated

resolution.  Opp. at 13, 19.  In fact, it is just the opposite.  A consent decree is an agreement or

settlement to resolve a dispute without an admission of guilt.  *See Taylor v. United States*, 181

F.3d 1017, 1029-30 (9th Cir. 1999) (citing Black's Law Dictionary 410 (7th ed. 1999)).  Here, the

leniency applicants *admitted guilt* for their cartel participation in order to facilitate the EC's

ongoing investigation in the hopes of securing immunity or a reduced fine as a reward.  *See* Dkt.

3788-2, Laroche Decl. at ¶24 ("The Commission's leniency program is meant to reward

entities—through some form of immunity or reduced penalty—*for admitting wrongdoing* or

assisting the Commission in its investigation.") (emphasis added).  Several of the EC Addressees

sought and received that award.  *See* Dkt. 3582-4 at ¶¶ 1124-25, 1132, 1153,1162.  To the extent

the EC Decision should be likened to anything, it would be a guilty plea rather than a consent

---

[9] *See, e.g.* Dkt 3582-4 at ¶ 694 ("**The anti-competitive object of the parties is also illustrated
by the fact that they took deliberate actions to conceal their meetings and to avoid detection
of their arrangements** (*see* Recital (114)). By way of example, the participating companies made
efforts to avoid being in possession of anticompetitive documents and they attempted to hide the
illicit content of the contacts by not taking minutes at all. **Awareness of the illegality of such
actions is demonstrated by other documents indicating that the participating individuals
were aware of the illicit character of their contacts.**")  (emphasis added.)

60974465.1
10

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   decree, and the law is clear that guilty pleas can be preclusive in subsequent litigation.  *See e.g.*,

2   *Granados-Mondragon v. INS*, 28 F. App'x 695, 695-96 (9th Cir. 2002) ("It is settled law in this

3   circuit that a guilty plea may be used to establish issue preclusion in a subsequent civil suit.").

4       Moreover, all EC Defendants, including those that applied for leniency, disputed the scope

5   of their cartel involvement .  *See* Dkt. 3582-4 at ¶¶ 1089-90.  In reaching its decision, the EC

6   evaluated the documentary and testimonial evidence, including the arguments made by the

7   leniency applicants and other addressees.  *See, e.g.*, Dkt. 3852-4, EC Decision at ¶ 995. ("The

8   conclusion reached from the documentary evidence is also confirmed by three leniency applicants

9   . . . .").  Thus, even though certain EC Addressees chose to admit guilt and assist the EC with its

10   investigation, their claims were still actually litigated.[10]

11       ### 5.        The EC's Fact Findings Were Necessary to the EC's Decision

12       As demonstrated in Plaintiffs' Motion, the EC Decision necessarily makes factual findings

13   that each of the EC Defendants participated in meetings to exchange confidential information, to

14   fix prices, to allocate customers, and to coordinate output and capacity during each part of the

15   multi-year conspiracy in which it was implicated and for all sizes of CPTs and/or CDTs it sold

16   that were affected by the conspiracy.  Dkt. 3582 at 46-47.   Of the 1,183 paragraphs in the EC

17   Decision, Plaintiffs selected only 158 that state narrow findings which are direct evidence

18   supporting the EC's ultimate conclusions that the EC Defendants participated in information

19   exchanges, price fixing, market share allocation, and output restriction agreements.  By arguing

20   that "Plaintiffs cannot establish that any finding was necessary to the EC's decision," Opp. at 20,

21   Defendants misconstrue the necessity requirement.

22       The EC Decision itself is the best source for identifying what findings were "necessary."

23   *See, e.g.*, *Emich Motors Corp. v. Gen. Motors Corp*., 340 U.S. 558, 569 (1951) (in applying

---

24   [10] Defendants have cited no authority supporting their position that an antitrust leniency applicant
    enters into a consent decree.  The one case cited by Defendants, *Spectrum Health Continuing*
25   *Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304 (6th Cir. 2005), is
    distinguishable.  *Spectrum Health* involved a dispute over the validity of a lien that one party
26   claimed was precluded by two prior state court judgments.  *Id.*  The court concluded that issue
    preclusion did not apply because the state court judgments pertained to a malpractice settlement
27   agreement that did not address the validity of the lien.  *Id.* at 312-13.  The instant case is
    distinguishable because the EC did effectively litigate, and the EC Decision does address, the
28   specific factual findings for which preclusion is now sought.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    collateral estoppel, a court should examine the record of the prior proceeding, including the

2    evidence submitted and any opinions of the prior court).  In the EC Decision, the EC highlighted

3    specific fact findings that it deemed, for example, "the most important" multilateral and bilateral

4    contacts between CRT producers during the various periods of the cartel activities.  *Id.* at ¶¶141,

5    187, 255, 324, 411, 417.  And, certain paragraphs state factual findings plainly necessary to a

6    holding that the EC Defendants violated EU competition law.  *See, e.g., id.* at ¶¶ 108, 119 (stating

7    that certain addressees "participated in meetings and other contacts *with the aim of fixing prices*.")

8    (emphasis added).  Defendants have not identified any of the 158 proposed paragraphs that were

9    only "collaterally or incidentally" considered, Opp. at 19, by the EC.  The *Keating* case cited by

10   Defendants is therefore inapposite.[11]  Plaintiffs have sufficiently demonstrated necessity for

11   collateral estoppel purposes as to all findings for which preclusion is sought.[12]

12   **B.      The EC Decision Should Not Be Excluded Under Rule 403**

13          Alternatively, if the Court is not inclined to apply issue preclusion, the EC Decision

14   should nonetheless be admitted into evidence for the reasons set forth in the motion.  Dkt. 3582 at

15   51-56.  Defendants' argument that the Decision should be excluded under Rule 403 is without

16   merit.  "Unfair prejudice" means "the undue tendency to suggest decision on an improper basis,

17   commonly . . . an emotional one."  *United States v. W.R. Grace*, 504 F.3d 745, 759 n.6 (9th Cir.

18   2007) (internal quotation marks omitted).  "That evidence may decimate an opponent's case is no

19   ground for its exclusion under [Rule] 403. The rule excludes only evidence where the prejudice is

20   'unfair'—that is, based on something *other* than its persuasive weight."  *United States v. Cruz-*

21   *Garcia*, 344 F.3d 951, 956 (9th Cir. 2003).

22          Here, Defendants have failed to show that any undue prejudice would result from

23   admitting the EC Decision into evidence.  The Decision has substantial probative value because it

---

24   [11] *See RTC v. Keating*, 186 F.3d 1110, 1115-16 (9th Cir. 1999) (denying preclusive effect to prior adjudication of limited, distinct issue, notwithstanding passing observation in footnote suggesting
25   broader scope of findings).
     [12] Defendants cite *Rodriguez-Garcia v. Miranda-Marlin*, 610 F.3d 756 (1st Cir. 2010), for the
26   proposition that "[t]he lack of efficiency gains is an additional reason why the application of offensive, non-mutual estoppel is appropriate."  Opp. at 24.   *Rodriguez* is inapposite as it
27   involved a determination whether the district court properly denied a requested jury instruction in a case alleging violation of the First Amendment and Puerto Rico law.

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   shows, based upon a record that includes documents that Defendants have refused to produce in

2   this case, that Defendants engaged in a longstanding, global cartel.  It is also probative as to the

3   scope of the conspiracy, which the EC found to be global and inclusive of large sized CRTs, *e.g.*,

4   Dkt. 3852-4 at ¶¶ 592, 575, and as to the efficacy of the conspiracy because the EC concluded

5   that anti-competitive agreements were in fact implemented.  *E.g.*, Dkt. 3852-4 at ¶ 1092.

6       Defendants argue that the jury "is likely to give undue weight to the EC Decision" and

7   "will simply ignore" any different market impact assessment standards under EU and US law.

8   Opp. at 23.  But that is based on pure speculation.  There is also nothing about the EC Decision

9   that would preclude the jury from evaluating the evidence presented in the case, including the EC

10  Decision, independently.

11      Defendants also contend that admitting the EC Decision would confuse and mislead the

12  jury because of different standards under EU and U.S. law.  Opp. at 23-24.  But if Defendants

13  believe that some type of limiting instruction on the EC Decision or the differences between EU

14  and U.S. law is appropriate, then they may present arguments in support of such instructions as

15  part of a charge conference.  Thus, this contention is without merit.[13]

16      Defendants cite *Sugar Ass'n v. McNeil-PPC, Inc.*, 2008 WL 4755611 (C.D. Cal. Jan. 7,

17  2008), for the proposition that evidence of a violation of foreign law would be unfairly prejudicial

18  and would confuse or mislead the jury.  Opp. at 24.  This case is distinguishable.  *Sugar Ass'n*

19  involved a claim that Splenda unfairly competed with sugar based on misleading advertisements

20  representing that Splenda was a natural food product.  In excluding evidence of foreign

21  judgments, the court relied on the fact that Respondents had not put forth any evidence showing

22  that foreign law was similar to U.S. law, or that perceptions were similar.  *Sugar Ass'n*, 2008 WL

23  4755611, at *2.  Here, Plaintiffs have, in fact, demonstrated that U.S. law is similar to the EU

24  antitrust laws under which Defendants were found liable.  *See* Ezrachi Decl. at Dkt. 3582-7.  The

25  EC's findings are thus much more probative in this case.  Nor is the *Sugar Ass'n* court's Rule 403

26  analysis instructive.  Because respondents' primary relevance argument was rejected owing to

27  respondents' failure to show similarity to U.S. law, the court weighed only the probative value of

28  _____

[13] Chunghwa makes essentially the same erroneous contention in its opposition.  CPT Opp. at 6-7.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   the evidence to establish a collateral issue, the alleged willfulness of a Lanham Act violation.  *Id.*

2   Here, evidence of foreign antitrust investigations is directly relevant to a central issue to be

3   proved at trial, Defendants' cartel involvement.  The other cases upon which Defendants rely for

4   their unfair prejudice claim are inapposite, as they merely affirm the trial court's ability to

5   exclude evidence, in its discretion, where appropriate on facts that are dissimilar to those here.[14]

6       There is also no basis for Defendants' other Rule 403 arguments.  Defendants argue that,

7   if admitted, the EC Decision would cause undue delay, waste time, and require mini-trials on

8   purported "collateral matters."  Opp. at 24.  Not true.  As demonstrated above and in the Motion,

9   the EC Decision is highly relevant and probative as to Plaintiffs' claims and is not concerned with

10  collateral matters.  Further, even if admission of the EC Decision were to require evidence of

11  certain collateral matters, Defendants make no showing that such presentation could not be

12  addressed in an expeditious manner or would result in the need for mini-trials.  Defendants'

13  reliance upon *City of New York v. Pullman Inc*., 662 F.2d 910 (2d Cir. 1983), is therefore

14  misplaced.  *Pullman* involved exclusion of an interim report "that did not embody the findings of

15  an agency, but the tentative results of an incompetent staff investigation," and that, if admitted

16  into evidence, would have necessitated "inquiry into collateral issues regarding the accuracy of

17  the report and the methods used in its compilation."  *Pullman*, 662 F.2d at 915.   There is no basis

18  for any such finding here.  The 340-page EC Decision is the result of the EC's thorough

19  investigation of the EC Defendants' cartel activities and is based on extensive direct evidence.

20      Defendants argue that, if admitted, the EC Decision would be cumulative of discovery

21  taken in this case.  Opp. at 24.  Defendants point to no specific cumulative evidence, and in any

22  event, the contention is without merit.  Plaintiffs allege a *global* conspiracy that included *large-*

23  *sized* CRTs. Defendants deny it.  The fact that the EC found Defendants liable for anticompetitive

24  conduct affecting the European market, and that Defendants' anticompetitive conduct was not

---

[14] *See Beachy v. Boise Cascade Corp*., 191 F.3d 1010 (9th Cir. 1999) (affirming verdict despite admission of Bureau of Labor and Industries documents containing investigation results that could have made it difficult for jury to evaluate evidence independently); *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427 (7th Cir. 2009) (holding it within trial court's discretion to exclude administrative EEOC findings under Rule 403 where decision "states only a conclusion and does not provide much additional probative information").

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   limited to small sized CRTs is highly relevant and not cumulative of other evidence to be

2   presented at trial.[15]

3       More fundamentally, Defendants seek to limit the evidence to the existing record in this

4   case.  But Defendants conducted secretive, conspiratorial, cartel activities and were directed to

5   destroy evidence of such activities.  *See, e.g.*, MDL Dkt. No. 3283-1, Carney Decl. Ex. F.  The

6   EC Decision includes direct evidence of such activities, some of which Defendants produced

7   voluntarily to the EC in an effort to obtain favorable treatment.  In this case, Defendants have

8   refused to produce some of the evidence they produced to the EC, and by seeking to keep the EC

9   Decision out of the record, they are further attempting to constrain Plaintiffs' access to evidence

10  against them.  The Court should not permit this result.

**III.**
**CONCLUSION**

12      For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their

13  Motion *in Limine* No. 11 in its entirety.

14                      Respectfully submitted,

16  Dated:  March 27, 2015

17                          /s/  *Roman M. Silberfeld*
                            Roman M. Silberfeld
18                          Bernice Conn
                            David Martinez
19                          Laura Nelson
                            Jill Casselman

20                          ROBINS KAPLAN LLP
21                          2049 Century Park East, Suite 3400
                            Los Angeles, CA  90067-3208
22                          Telephone:  (310) 552-0130
                            Facsimile:   (310) 229-5800

23                          Email:  rsilberfeld@robinskaplan.com
24                                  dmartinez@ robinskaplan.com
                                    bconn@robinskaplan.com
25                                  lnelson@robinskaplan.com
                                    jcasselman@robinskaplan.com

26                          *Counsel For Plaintiffs Best Buy Co., Inc., Best*

---

[15] Defendants also argue that the EC Decision is inadmissible hearsay. Opp. at 24. As
demonstrated in previous filings, Dkt. 3582 and Dkt. 3787, this argument is wholly without merit.

60974465.1                              15

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Buy Purchasing LLC, Best Buy Enterprise
    *Services, Inc., Best Buy Stores, L.P., and*

2   *Bestbuy.com, L.L.C.*

3
                                    /s/  *William J. Blechman*
4                                   Richard Alan Arnold
                                    William J. Blechman
5                                   Kevin J. Murray
                                    KENNY NACHWALTER, P.A.
6                                   201 S. Biscayne Blvd., Suite 1100
                                    Miami, FL 33131
7                                   Tel:        305-373-1000
                                    Fax:        305-372-1861
8                                   Email:   rarnold@knpa.com
                                             wblechman@knpa.com
9                                            kmurray@knpa.com

10  *Counsel for Plaintiff Sears, Roebuck and Co.*
    *and Kmart Corp.*
11

12
                                    /s/  *Kenneth S. Marks*
13                                  H. Lee Godfrey
                                    Kenneth S. Marks
14                                  Jonathan J. Ross
                                    Johnny W. Carter
15                                  David M. Peterson
                                    SUSMAN GODFREY L.L.P.
16                                  1000 Louisiana Street, Suite 5100
                                    Houston, Texas 77002
17                                  Telephone:  (713) 651-9366
                                    Facsimile:  (713) 654-6666
18                                  Email:  lgodfrey@sumangodfrey.com
                                            kmarks@susmangodfrey.com
19                                          jross@susmangodfrey.com
                                            jcarter@susmangodfrey.com
20                                          dpeterson@susmangodfrey.com

21                                  Parker C. Folse III
                                    Rachel S. Black
22                                  Jordan Connors
                                    SUSMAN GODFREY L.L.P.
23                                  1201 Third Avenue, Suite 3800
                                    Seattle, Washington 98101-3000
24                                  Telephone:  (206) 516-3880
                                    Facsimile:  (206) 516-3883
25

26                                  Email:  pfolse@susmangodfrey.com
                                            rblack@susmangodfrey.com
27                                          jconnors@susmangodfrey.com

28                                  *Counsel for Plaintiff Alfred H. Siegel, as*

60974465.1                          16

Trustee of the Circuit City Stores, Inc.
Liquidating Trust

/s/  Jason C. Murray
Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA  90071
Telephone:  213-443-5582
Facsimile:  213-622-2690
Email:  jmurray@crowell.com

Jerome A. Murphy (pro hac vice)
Astor H.L. Heaven (pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  202-624-2500
Facsimile:  202-628-5116
E-mail:  jmurphy@crowell.com
            aheaven@crowell.com

Counsel for Target Corp. and ViewSonic
Corp.

/s/  Craig A. Benson
Kenneth A. Gallo (pro hac vice)
Joseph J. Simons (pro hac vice)
Craig A. Benson (pro hac vice)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
TAYLOR & COMPANY LAW OFFICES,
LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

Attorneys for Plaintiffs Sharp Electronics
Corporation and Sharp Electronics
Manufacturing Company of America, Inc.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

60974465.1

17

DIRECT ACTION PLAINTIFFS'
REPLY ISO MIL NO. 11