GUIDO SAVERI (22349)
   *guido@saveri.com*
R. ALEXANDER SAVERI (173102)
   *rick@saveri.com*
GEOFFREY C. RUSHING (126910)
   *grushing@saveri.com*
TRAVIS L. MANFREDI (281779)
   *travis@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111-5619
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel for*
*Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-5944-SC<br><br>MDL No. 1917 |
| This Document Relates To:<br><br>*Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058 (SC). | **REPLY BRIEF IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION WITH RESPECT TO MITSUBISHI**<br><br>Date:    May 1, 2015<br>Time:   10:00 a.m.<br>Judge:  Honorable Samuel Conti<br>Ctrm:   1, 17th floor |

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

I.   INTRODUCTION. ...................................................................................................... 1

II.  THE APPLICABLE STANDARDS FOR THIS MOTION. ...................................... 3

III. ARGUMENT. ............................................................................................................. 4

    A.  The Proposed Class Is Ascertainable. ................................................................ 4

        1.   The Class Definition Is Precise, Objective and Definite, and Therefore
            Ascertainable ............................................................................................. 4

        2.   The Proposed DPP Class Does Not Overlap With the IPP Class.............. 5

        3.   The Possibility That the Class Contains Members Who Lack Standing Does Not
            Preclude Certification. ............................................................................... 6

    B.  DPPs Satisfy Commonality. ............................................................................... 7

    C.  Adequacy Is Sufficiently Established.................................................................. 8

    D.  DPPs Have Demonstrated Predominance of Common Issues. .......................... 11

        1.   DPPs Have Demonstrated a Plausible Methodology to Prove Classwide Impact. ....... 11

        2.   Classwide Proof of Damages.................................................................... 14

IV. CONCLUSION. ....................................................................................................... 15

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

# TABLE OF AUTHORITIES

## Cases

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
    133 S. Ct. 1184 (2013)............................................................................................ 3

*Astiana v. Kashi Co.,*
    291 F.R.D. 493 (S.D. Cal. 2013) ........................................................................... 4

*Butler v. Sears, Roebuck & Co.,*
    727 F.3d 796 (7th Cir. 2013), *cert. denied,* 134 S. Ct. 1277 (2014)..................... 3

*Carrera v. Bayer Corp.,*
    727 F.3d 300 (3d Cir. 2013) ................................................................................... 6

*Chavez v. Bank of Am. Corp.,*
    No. C-10-0653 JCS, 2012 WL 1594272 (N.D. Cal. May 4, 2012)........................ 2

*Comcast Corp. v. Behrend,*
    133 S. Ct. 1426 (2013) ........................................................................................... 3

*Dumas v. Albers Med., Inc.,*
    No. 03-0640-CV-W-GAF, 2005 WL 2172030 (W.D. Mo. Sept. 7, 2005) ............. 6

*Easter v. Am. W. Fin.,*
    381 F.3d 948 (9th Cir. 2004) ............................................................................... 10

*Gaudin v. Saxon Mortg. Servs.,*
    297 F.R.D. 417 (N.D. Cal. 2013) ........................................................................... 4

*Guido v. L'Oreal USA, Inc.,*
    Nos. 2:11-cv-01067-CAS (JCx), 2:11-cv-05465-CAS (JDx), 2014 WL 6603730 (C.D. Cal.
    July 24, 2014)..................................................................................................... 3, 4

*Illinois Brick Co. v. Illinois,*
    431 U.S. 720 (1977) ............................................................................................... 2

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
    No. 06-MD-1175 (JG) (VVP), 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014)..................... 3, 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    911 F. Supp. 2d 857 (N.D. Cal. 2012)........................................................ 7, 9, 10, 14

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    No. C-07-5944-SC, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013), *aff'd In re Cathode Ray
    Tube (CRT) Antitrust Litig.,* No. C-07-5944-SC, 2013 WL 5429718 (N.D. Cal. June 20,
    2013)............................................................................................................*passim*

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC,
   2013 WL 5429718 (N.D. Cal. June 20, 2013)................................................................*passim*

*In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*,
   270 F.R.D. 521 (N.D. Cal. 2010) ........................................................................ 11

*In re Copper Antitrust Litig.*,
   196 F.R.D. 348 (W.D. Wis. 2000).......................................................................... 5

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir.), *cert. denied*, 135 S. Ct. 754 (2014) ............................ 3

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007).............................................................. 10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) .......................... 5

*In re Elec. Books Antitrust Litig.*,
   No. 11-MD-2293 (DLC), 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) .......... 3, 4

*In re Graphics Processing Units Antitrust Litig.*,
   253 F.R.D. 478 (N.D. Cal. 2008) .................................................................. 13, 14

*In re High-Tech Emps. Antitrust Litig.*,
   289 F.R.D. 555 (N.D. Cal. 2013) ......................................................................... 3

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   297 F.R.D. 168 (D. Mass. 2013), *aff'd*, 777 F.3d 9 (1st Cir. 2015) ................. 15

*In re Nexium Antitrust Litig.*,
   777 F.3d 9 (1st Cir. 2015) ................................................................................ 3, 4

*In re Paxil Litig.*,
   212 F.R.D. 539 (C.D. Cal. 2003).......................................................................... 5

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   582 F.3d 156 (1st Cir. 2009) ............................................................................. 15

*In re Polyurethane Foam Antitrust Litig.*,
   No. 10-MD-2196, 2014 WL 6461355 (N.D. Ohio Nov. 17, 2014) ................. 3, 13

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F.3d 244 (D.C. Cir. 2013)............................................................................. 3

*In re Rubber Chems. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005) ...................................................................... 4, 5

*In re Static Random Access (SRAM) Antitrust Litig.*,
   No. C 07-01819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ................ 5

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
No. 07-md-01819 CW, 2010 WL 5141861 (N.D. Cal. Dec. 13, 2010) ...................................... 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010) ................................................................................. 4, 5, 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. M 07-1827 SI, 2012 WL 253298 (N.D. Cal. Jan. 26, 2012) ................................................ 6

*In re Urethane Antitrust Litig.*,
768 F.3d 1245 (10th Cir. 2014) .................................................................................... 3, 4

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
No. 11-cv-01781-JCS, 2015 WL 510109 (N.D. Cal. Feb. 3, 2015) ........................................... 6

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
571 F.3d 672 (7th Cir. 2009) ......................................................................................... 6

*Leyva v. Medline Indus., Inc.*,
716 F.3d 510 (9th Cir. 2013) ...................................................................................... 4, 14

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F. 3d 1018 (9th Cir. 2003) ................................................................................... 10, 11

*Mazza v. Am. Honda Mtr. Co.*,
666 F.3d 581 (9th Cir. 2012) ......................................................................................... 6

*O'Connor v. Boeing N. Am., Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998) ...................................................................................... 6

*Preap v. Johnson*,
303 F.R.D. 566 (N.D. Cal. 2014) ..................................................................................... 10

*Rahman v. Mott's LLP*,
No. 13-cv-03482-SI, 2014 WL 6815779 (N.D. Cal. Dec. 3, 2014) ........................................... 6

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015) ........................................................................................ 3, 4

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) .......................................................................................... 11

*Royal Printing Co. v. Kimberly-Clark Corp.*,
621 F.2d 323 (9th Cir. 1980) ...................................................................................... 2, 10

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) ...................................................................................... 6, 9

*Stockwell v. City & County of San Francisco*,
749 F.3d 1107 (9th Cir. 2014) ........................................................................................ 7

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

*Story Parchment Co, v. Paterson Parchment Paper Co.,*
    282 U.S. 555 (1931) ................................................................................................ 14

*Sykes v. Mel S. Harris & Assocs. LLC,*
    780 F.3d 70 (2d Cir. 2015) ..................................................................................... 3, 4

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) .............................................................................................. 3

*Weisfeld v. Sun Chem. Corp.,*
    84 Fed. Appx. 257 (3d Cir. 2004) ......................................................................... 11

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
    594 F.3d 1087 (9th Cir. 2010) ................................................................................. 4

**<u>Other Authorities</u>**

ABA Section of Antitrust Law, PROVING ANTITRUST DAMAGES at 125–26 (2010) ............ 13

**<u>Rules</u>**

Fed. R. Civ. P. 23 ......................................................................................... 2, 7, 11

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

## I.   INTRODUCTION.

The Direct Purchaser Plaintiffs ("DPPs") submit this reply in support of their motion for class certification. Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc., and Mitsubishi Electric Visual Solutions America, Inc. (collectively "Mitsubishi") is the only remaining defendant group in the case.[1]

To put it bluntly, Mitsubishi has abdicated the field. This case involves one of the most extensively documented conspiracies in history. Accordingly, in their opening brief (Dkt. No. 2969) ("DPP Mem."), DPPs explained the operation of the conspiracy and how it harmed the putative class members in detail. DPPs supported their brief with 140 exhibits attached to the Declaration of R. Alexander Saveri ("Saveri Decl.," filed partially under seal at Dkt. No. 2969-2).  DPPs also submitted a detailed report ("Leitzinger Rep.," filed under seal at Dkt. No. 2968-3) from their expert, Dr. Jeffrey Leitzinger ("Dr. Leitzinger"), with copious appendices.

Mitsubishi's opposition is most notable for what it lacks. Mitsubishi offers ***no opposing expert declaration relating to class certification***, and fails to meaningfully rebut Dr. Leitzinger's painstaking analysis. Nor does Mitsubishi address the evidence analyzed in the Leitzinger Report and/or submitted in support of DPPs' motion. Instead, it relies on perfunctory legal arguments that ignore the authority in DPPs' brief. Mitsubishi's principal assertion is that a class containing purchasers of CDTs and CPTs cannot be certified, even though the Court has already certified five such DPP settlement classes, as well as a litigated class of Indirect Purchaser Plaintiffs ("IPPs") who purchased CPT televisions and CDT monitors.

Indeed, Mitsubishi fails to even mention the report of the Interim Special Master ("ISM") recommending certification of the IPP class, or the Court's order adopting the ISM's recommendations. The ISM and the Court found, *inter alia*, (1) that impact ***at the direct purchaser level*** could be proven on a classwide basis; and (2) that reasonable methodologies existed for determining class members' damages. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-

---

[1] DPPs also moved for certification against Defendants Technicolor SA (f/k/a Thomson SA); Technicolor USA, Inc. (f/k/a Thomson Consumer Electronics, Inc.); and Technologies Displays Americas LLC (f/k/a Thomson Displays Americas LLC) (collectively "Thomson"), but they have since settled and stipulated to class certification. Dkt. No. 3562.

5944-SC, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ("*CRT II*"), *aff'd In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 5429718 (N.D. Cal. June 20, 2013) ("*CRT I*"). As to damages, the methodology proposed by the IPPs depended on calculation of the illegal overcharges at the direct purchaser level. *CRT I*, 2013 WL 5429718, at *16. These rulings compel the grant of this motion, yet Mitsubishi makes no attempt to distinguish them.[2]

The four arguments against certification in Mitsubishi's brief ("Opp. Mem.") lack merit. *First*, Mitsubishi argues that the proposed class is unascertainable. Opp. Mem. at 9–13. The class definition, however, is precise and objective, and virtually identical—apart from products and class period—to that of many classes certified in price-fixing cases, including this one. It also does not overlap the IPP class, which is limited to "end users." Mitsubishi's assertion that the class improperly contains members who lack standing is wrong as a matter of both fact and law.

*Second*, Mitsubishi argues that DPPs do not satisfy "commonality." *Id.* at 13–14. However, the undisputed record shows that common issues abound. Mitsubishi's assertion that there were separate conspiracies for CPTs and CDTs ignores DPPs' allegations and the evidence.

*Third*, Mitsubishi argues that the proposed class representatives are not adequate because they have not established antitrust standing under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ("*Illinois Brick*") and *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980) ("*Royal Printing*"). Opp. Mem. at 21–24. It is indisputable, however, that each class representative has purchased CRTs directly from a conspirator and/or Finished Products containing CRTs from a subsidiary owned by a conspirator. Indeed, the Court has already denied a summary judgment motion directed at the standing of six of the eight class representatives.

*Fourth*, Mitsubishi argues that DPPs cannot show predominance of common issues under Fed. R. Civ. P. 23(b)(3) because individual issues exist as to classwide impact and damages. *Id.* Mitsubishi's objections, however, are trivial and do not meaningfully engage with the copious evidence adduced by DPPs, Dr. Leitzinger's analysis, or the caselaw.

---

[2] This ruling is the law of the case. *Chavez v. Bank of Am. Corp.*, No. C-10-0653 JCS, 2012 WL 1594272, at *4–5 (N.D. Cal. May 4, 2012).

## II.   THE APPLICABLE STANDARDS FOR THIS MOTION.

Mitsubishi cites the United States Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ("*Comcast*") as interposing high barriers to class certification. It does not. In its order certifying the IPP class, this Court rejected the notion that *Comcast* effectuated any sea change in the applicable law. It said:

> Defendants continually argue that the ISM's conclusions were based on a faulty standard or that the standard has somehow changed drastically under [*Wal-Mart Stores, Inc. v.*] *Dukes*[, 131 S. Ct. 2541 (2011)], *Comcast*, or *Amgen* [*Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) ("*Amgen*")], but the Court does not find that this is true. . . . It is true that the Court's rigorous analysis overlaps with the merits of the IPPs' claims and requires that the IPPs make an evidentiary case for predominance, but Defendants are trying to push the ISM and the Court toward a full-blown merits analysis, which is forbidden and unnecessary at this point.

*CRT II*, 2013 WL 5391159, at *5 (citations omitted).[3]

The Court also rejected the notion that every class member must show harm at certification:

> Defendants' argument on this point is essentially that the IPPs must be able to prove at the class certification stage that every single (or basically every single) class member was injured by Defendants' conduct. This contention is wrong. The Court's job at this stage is simple: determine whether the IPPs showed that there is a reasonable method for determining, on a classwide basis, the antitrust impact's effects on the class members. This is a question of methodology, not merit.

*Id.* (citations omitted). Other courts have agreed with this view.[4]

---

[3] Other courts agree that *Comcast*'s holding is narrow and confined to its facts. *See, e.g., Roach v. T.L. Cannon Corp.,* 778 F.3d 401, 405–08 (2d Cir. 2015); *Sykes v. Mel S. Harris & Assocs. LLC,* 780 F.3d 70, 87–88 (2d Cir. 2015); *In re Nexium Antitrust Litig.,* 777 F.3d 9, 18–19 (1st Cir. 2015) ("*Nexium*")*; In re Urethane Antitrust Litig.,* 768 F.3d 1245, 1257–58 (10th Cir. 2014) ("*Urethane*"); *In re Deepwater Horizon,* 739 F.3d 790, 817 (5th Cir.), *cert. denied,* 135 S. Ct. 754 (2014); *Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 800 (7th Cir. 2013), *cert. denied,* 134 S. Ct. 1277 (2014); *In re Polyurethane Foam Antitrust Litig.,* No. 10-MD-2196, 2014 WL 6461355, at *8 (N.D. Ohio Nov. 17, 2014) ("*Foam*"); *In re High-Tech Emps. Antitrust Litig.,* 289 F.R.D. 555, 583 (N.D. Cal. 2013).

[4] *See, e.g., Roach,* 778 F.3d at 408–09; *Nexium,* 777 F.3d at 23–24; *Guido v. L'Oreal USA, Inc.,* Nos. 2:11-cv-01067-CAS (JCx), 2:11-cv-05465-CAS (JDx), 2014 WL 6603730, at *13 (C.D. Cal. July 24, 2014); *In re Elec. Books Antitrust Litig.,* No. 11-MD-2293 (DLC), 2014 WL 1282293, at *22 (S.D.N.Y. Mar. 28, 2014) ("*E-Books*"). To the extent the decision in *In re Rail Freight Fuel Surcharge Antitrust Litig.,* 725 F.3d 244 (D.C. Cir. 2013) ("*Rail Freight*"), cited by Mitsubishi (Opp. Mem. at 19), can be read for a countervailing conclusion, it is distinguishable on its specific facts. *E.g., Nexium,* 777 F.3d at 24 n.20; *In re Air Cargo Shipping Servs. Antitrust Litig.,* No. 06-MD-1175 (JG) (VVP), 2014 WL 7882100, at *62 (E.D.N.Y. Oct. 15, 2014) ("*Air Cargo*"); *E-*

(footnote continued)

3

It also clear that "*Comcast* did not rewrite the standards governing individualized damage considerations: it is still clear that individualized monetary claims belong in Rule 23(b)(3)." *Sykes*, 780 F.3d at 88 (internal quotation marks omitted).[5] In *Leyva v. Medline Indus., Inc.*, 716 F.3d 510 (9th Cir. 2013), the Ninth Circuit vacated a denial of certification, reaffirmed that individual damage issues do not preclude certification, and distinguished *Comcast*. *Id.* at 513–14, 516 (citing *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)).[6]

## III.   ARGUMENT.

### A. The Proposed Class Is Ascertainable.

#### 1. The Class Definition Is Precise, Objective and Definite, and Therefore Ascertainable

The standard for "ascertainability" is straightforward: "a class will be found to exist if the description of the class is precise, objective and definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *CRT II*, 2013 WL 5429718, at \*8. The proposed class satisfies this standard. It includes those who bought a CRT or a television or computer monitor containing a CRT from "any Defendant or subsidiary or affiliate thereof, or any co-conspirator." The definition is precise and objective. Class members can be determined from Defendants' sales records or from their own invoices. Settlement class notices already given herein were based on Defendants' records.[7] Moreover, this question, and the language "from any Defendant or subsidiary or affiliate thereof, or any co-conspirator" is not materially different from that commonly used in price-fixing class actions. This Court has certified five settlement classes

---

*Books*, 2014 WL 1282293, at \*22; *Guido*, 2014 WL 6603730, at \*13. Moreover, as the district court in *Guido* noted, *Rail Freight* is not the law of this circuit. *Id.* at \*14. This Court's order in *CRT II* is consistent with prior cases from this district. *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5141861, at \*2–5 (N.D. Cal. Dec. 13, 2010); *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 353 (N.D. Cal. 2005) ("*Rubber Chems.*"). *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 313 (N.D. Cal. 2010) ("*LCD*").

[5] *Accord, e.g.*, *Roach*, 778 F.3d at 407–08; *Nexium*, 777 F.3d at 24–25; *Urethane*, 768 F.3d at 1255; *E-Books*, 2014 WL 1282293, at \*22.

[6] *Accord, e.g.*, *Gaudin v. Saxon Mortg. Servs.*, 297 F.R.D. 417, 428–29 (N.D. Cal. 2013); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013).

[7] *See, e.g.*, Declaration of Markham Sherwood re Dissemination of Notice to Class Members and Requests for Exclusion ¶ 3 (Aug. 6, 2012) (Dkt. No. 1294).

4

using identical or virtually identical language (Dkt. Nos. 1179, 1412, 1333, 1508, 1441, 1621, 1603, 1791). The ISM also rejected arguments that the proposed IPP class was not ascertainable. *CRT I*, 2013 WL 5429718, at *8–9. Other courts have approved similar language.[8]

The cases that Mitsubishi relies on do not support its argument. They merely state the well-established rule that class membership cannot depend on subjective facts.[9]

## 2. The Proposed DPP Class Does Not Overlap With the IPP Class.

Mitsubishi makes much of the fact that purchasers from subsidiaries or affiliates of conspirators are technically "indirect." Such claims, however, are identical to those of "direct purchasers." DPP Mem. at 3, n.5. Its assertion that the proposed DPP class overlaps impermissibly with the IPP class is also incorrect. The IPP class is limited to end-users (*CRT I*, 2013 WL 5429718, at *1 (purchased "for their own use and not for resale")), and IPP lead counsel has confirmed that there is no overlap with the DPP settlement classes already certified. Reply Declaration of R. Alexander Saveri in Support of DPPs' Motion for Class Certification ("Saveri Reply Decl."), Ex. 179 at 106:12 (DPPs "not subsumed within our class."). Moreover, despite the fact that massive amounts of transactional data have been produced in this litigation, Mitsubishi fails to identify even

---

[8] *See, e.g.*, *Rubber Chems.*, 232 F.R.D. at 355 (class of direct purchasers "from any of the defendants, or any present or former parent, subsidiary or affiliate thereof"); *In re Static Random Access (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *1, *7 (N.D. Cal. Sept. 29, 2008) (class of direct purchasers "from Defendants or any subsidiaries or affiliates thereof"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, M 02-1486 PJH, 2006 WL 1530166, at *2, *11 (N.D. Cal. June 5, 2006) (class of direct purchasers "from the defendants or their subsidiaries"). In *LCD*, the court rejected an argument regarding similar language. The proposed definition referred to the purchase of an LCD product "from any defendant or any subsidiary thereof, or any named affiliate or any named co-conspirator." 267 F.R.D. at 315. Judge Illston resolved the issue by requiring plaintiffs to specifically identify the relevant entities in the class definition and class notice. *Id.* at 299–300. If necessary, something similar can easily be done here.

[9] *In re Paxil Litig.*, 212 F.R.D. 539, 545 (C.D. Cal. 2003), held a class definition improper where membership depended on "severe" withdrawal symptoms as result of use of the drug Paxil. *In re Copper Antitrust Litig.*, 196 F.R.D. 348, 358 (W.D. Wis. 2000) involved a unique facts and legal issues not comparable to this case. Among many other things, the plaintiffs proceeded on an "umbrella" theory of liability and sought to certify a class of purchasers of copper at a price "related to" certain price indices regardless of who they purchased from. *Id.*

---

5

a single member of both classes to support its claims of overlap.[10]

### 3. The Possibility That the Class Contains Members Who Lack Standing Does Not Preclude Certification.

Mitsubishi's assertion that DPPs must demonstrate at class certification that all class members have standing is not correct. Where, as here (*see* Part III.C below), the named plaintiffs have standing, the standing of absent class members need not be shown. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011) ("[O]ur law [regarding standing] keys on the representative party, not all of the class members, and has done so for many years.").[11]

Moreover, the question of antitrust standing, even as to the class representatives, goes to the merits of DPPs' case. The possibility that DPPs will not be able to prove at trial their allegations of conspiracy, or that the entities from whom class members purchased meet the requirements of *Royal Printing*, is present in all cases and is no basis to deny class certification. *See, e.g.*, *Kohen*, 571 F.3d at 677 ("possibility or indeed inevitability" that class will contain some who lack standing no bar to certification). As the Court noted when certifying the IPP class, "a full-blown merits analysis . . . is

---

[10] Mitsubishi's authorities are inapposite. *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) stands only for the proposition that it must be "administratively feasible for the court to ascertain whether an individual is a [class] member." It did not involve an issue of alleged overlap with another class. *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) does not comport with Ninth Circuit precedent. *See, e.g.*, *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2014 WL 6815779, at *4 (N.D. Cal. Dec. 3, 2014) ("In light of the precedent set by many other district courts in this Circuit, the Court declines to follow *Carrera*."). *Dumas v. Albers Med., Inc.*, No. 03-0640-CV-W-GAF, 2005 WL 2172030, at *6 (W.D. Mo. Sept. 7, 2005), unlike this case, involved a class that was not ascertainable because, *inter alia*, "it is likely that a substantial number of proposed class members would not know, and indeed would have no way of determining, whether they were members of the class."

[11] *Mazza v. Am. Honda Mtr. Co.*, 666 F.3d 581, 594 (9th Cir. 2012) is not to the contrary. *Mazza* did not deny certification based on the possibility that absent members lacked standing and did not purport to overrule *Stearns. Id.* at 594–95. Properly construed, it holds "only that a class cannot be defined in a way that facially disregards the requirements of Article III standing." *Kamakahi v. Am. Soc'y for Reprod. Med.*, No. 11-cv-01781-JCS, 2015 WL 510109, at *22 (N.D. Cal. Feb. 3, 2015) (Spero, J.). *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 253298, at *1 n.2 (N.D. Cal. Jan. 26, 2012) ("The Court, however, is not convinced that *Mazza* has the significance for this case that defendants ascribe to it."); *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) ("[S]tatements in some cases that it must be reasonably clear at the outset that all class members were injured . . . focus on the class definition; if the definition is so broad that it sweeps within it persons who could not have been injured by the defendant's conduct, it is too broad.").

---

6

1    forbidden and unnecessary at this point." *CRT II*, 2013 WL 5391159, at *5.

2        Furthermore, there is no reason to conclude that the class contains members who lack

3    standing. This Court has already denied summary judgment on the issue of whether the DPPs could

4    prove the "owned or controlled" exception to *Illinois Brick* recognized in *Royal Printing*. *In re*

5    *Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857, 872 (N.D. Cal. 2012) ("*CRT III*").

6    Mitsubishi submits no evidence to the contrary.

7    **B. DPPs Satisfy Commonality.**

8        Mitsubishi's argument that DPPs do not satisfy the commonality requirement is baseless. As

9    Mitsubishi concedes, a single significant common issue satisfies the modest requirements of Rule

10   23(a)(2). Opp. Mem. at 15–16. As DPPs have explained, cases alleging the existence of a price-

11   fixing conspiracy satisfy commonality by definition. DPP Mem. at 16. Moreover an issue can

12   qualify as common even if the plaintiff may ultimately not prevail on it. *Stockwell v. City & County*

13   *of San Francisco*, 749 F.3d 1107, 1111–12 (9th Cir. 2014).

14       Here DPPs allege the existence of a single CRT conspiracy embracing both CDTs and CPTs

15   and have submitted copious evidence supporting their allegations. As DPPs have explained, ███

16   ███████████████████████████████████████████████████████████████████

17   ███████████████████████████████████████████ DPP Mem. at

18   5–14. ████████████████████████████████████████████████████████

19   ██████████ Leitzinger Rep. ¶ 44. ███████████████████████████

20   ███████████████████████ *Id.* ¶ 43; DPP Mem. at 10 & n.22.

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████ DPP Mem. at 7. There is no doubt that the

24   conspirators endeavored to, and did, fix prices and output for the entire CRT market. *Id.* at 8–10.

25       Mitsubishi's assertion that CDTs and CPTs were not part of the same conspiracy simply

26   ignores this evidence. Mitsubishi's assertion that DPPs' have submitted no evidence supporting

27   their assertion that the markets for CDTs and CPTs, and the finished products that contained them,

28   were economically linked is absurd. Opp. Mem. at 6:4–6, 15:10–12. Again, the markets were linked

7

1  by the conspiracy, ████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████

4  ███████████████████████████████ DPP Mem. at 7. In short, there is overwhelming

5  evidence of the overarching conspiracy that DPPs allege and of its effect on the prices of both CPTs

6  and CDTs. Nowhere does Mitsubishi meaningfully address this evidence or explain why the factual

7  and legal issues presented—e.g., the existence of the conspiracy—are not common to the class.

8        Precedent in this case and from other cases in this district also refutes Mitsubishi's

9  argument. This Court has already found the commonality requirement satisfied with regard to the

10  IPP class which includes purchasers of Finished Products containing both CPTs and CDTs. *See*

11  *CRT II*, 2013 WL 5391159, at *1, *3; *CRT I*, 2013 WL 5429718, at *9. Similarly, this Court has

12  finally approved five DPP settlement classes that use the same class definition. Likewise, in *LCD*,

13  the proposed class encompassed purchases of LCD panels generally, including panels that could be

14  used in televisions and computer monitors. Judge Illston certified a class as to TFT-LCD panels, not

15  separate classes with respect to panels for monitors and panels for televisions. 267 F.R.D. at 306.

16  **C. Adequacy Is Sufficiently Established.**

17        Mitsubishi's contention that plaintiffs lack adequacy is incorrect. Adequacy requires only

18  that class representatives lack material conflicts with absent class members, and that they be able to

19  vigorously prosecute the action. DPP Mem. at 17.

20        First, all of the named plaintiffs are members of the proposed class, assert the same claims,

21  and have no disabling conflicts. *Id.* at 18. All have demonstrated by producing records (e.g.,

22  invoices) of their purchases and/or describing them in deposition and interrogatory responses that

23  they purchased CRTs or Finished Products from a conspirator or a subsidiary of a conspirator:

- Plaintiff Crago, d/b/a Dash Computers, Inc. ("Crago"), purchased CRT monitors from Hitachi America, Ltd., a wholly owned subsidiary of alleged conspirator Hitachi, Ltd. Saveri Reply Decl. ¶¶ 3–6 & Exs. 141–144.

- Plaintiff Arch Electronics, Inc. ("Arch") purchased CRT televisions from Panasonic Consumer Electronics Company ("PCEC"), an unincorporated division of Panasonic Corporation of North America ("PNA") (previously known as Matsushita Electric Corporation of America), a wholly owned subsidiary of alleged conspirator Panasonic

8

Corporation (previously known as Matsushita Electric Industrial Co, Ltd.). *Id.* ¶¶ 7–11 & Exs. 145–149.

- Plaintiffs Meijer, Inc. and Meijer Distribution, Inc. ("Meijer") purchased CRT televisions from, *inter alia*, Toshiba America Consumer Products, Inc., a wholly-owned subsidiary of Toshiba America, Inc., a wholly owned subsidiary of alleged conspirator Toshiba Corporation. Meijer also purchased CRT televisions from Philips Consumer Electronics Company, a division of Philips Electronics North America Corporation, a wholly-owned subsidiary of Philips Holding USA Inc. (from January 1, 1996 to the end of the Class Period and at the time of Meijer's purchases), a wholly-owned subsidiary of alleged conspirator Koninklijke Philips Electronics N.V. *Id.* ¶¶ 12–21 & Exs. 150–159.

- Plaintiff Nathan Muchnick, Inc. ("Muchnick") purchased CRT televisions from PCEC, an unincorporated division of PNA, a wholly owned subsidiary of alleged conspirator Panasonic Corporation. *Id.* ¶¶ 9–11, 22–23 & Exs. 147–149, 160–161.

- Plaintiff Princeton Display Technologies, Inc. ("Princeton") purchased CRTs from alleged conspirator Samsung SDI Sdn (Malaysia) Bhd ("SDI Malaysia"), a majority-owned subsidiary of admitted conspirator Samsung SDI Co., Ltd. *Id.* ¶¶ 24–30 & Exs. 162–168.

- Plaintiff Radio & TV Equipment, Inc. ("Radio & TV") purchased CRT televisions from, *inter alia*, the Home Electronics Division of Hitachi America, Ltd. and Hitachi Home Electronics (America) Inc., both wholly owned subsidiaries of alleged conspirator Hitachi, Ltd. *Id.* ¶¶ 5–6, 31–35 & Exs. 143–144, 169–173.

- Plaintiff Studio Spectrum, Inc. ("Studio Spectrum") purchased CRT televisions from Panasonic Broadcast & Television Systems Company, a division of PNA, a wholly owned subsidiary of alleged conspirator Panasonic Corporation. *Id.* ¶¶ 9–10, 36–38 & Exs. 147–148, 174–176.

- Plaintiff Wettstein and Sons, Inc., d/b/a Wettstein's ("Wettstein"), purchased CRT televisions from PCEC, an unincorporated division of PNA, a wholly owned subsidiary of alleged conspirator Panasonic Corporation. *Id.* ¶¶ 9–11, 39–40 & Exs. 147–149, 177–178.[12]

Moreover, class representatives who purchased finished products—Crago, Arch, Meijer, Radio & TV, Studio Spectrum, and Muchnick—have already withstood a challenge to their standing under *Illinois Brick* and *Royal Printing*: the Court held that evidence of their purchases from entities owned by alleged conspirators sufficed to create triable issues as to their standing. *CRT III*, 911 F. Supp. 2d at 862 n.1, 872. *See also* Declaration of R. Alexander Saveri in Opposition to Defendants' Motion for Partial Summary Judgment ¶¶ 50–115 & Exs. 56–111 (filed under seal on Feb. 24, 2012).

---

[12] Only a single class representative is necessary to certify a class. *See Stearns*, 655 F.3d at 1021. Virtually all of this evidence, and more, was detailed in Appendix A to the Leitzinger Report.

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION—Case No. 07-CV-5944 SC

In *Royal Printing*, the Ninth Circuit recognized that one who buys a price-fixed product from an entity owned or controlled by a conspirator has standing to sue for damages under the Clayton Act. 621 F.2d at 326. To rule otherwise would chill private enforcement of the antitrust laws, given that the owned or controlled entity would be unlikely to initiate such litigation. *Id.* This Court held unequivocally that the evidence DPPs submitted in opposition to Defendants' summary judgment motion sufficed to go to trial:

> In their sealed brief and its supporting declarations, the Named DPPs present evidence based on the discovery they have taken so far. This evidence raises a genuine issue of material fact as to whether the Named DPPs purchased FPs [Finished Products] incorporating the allegedly price-fixed CRTs from some defendant-owned or -controlled division or subsidiary. Accordingly, Defendants have not carried their summary judgment burden of showing an absence of evidence in support of applying the ownership and control exception. To the extent that Defendants' summary judgment motion challenges the Named DPPs' standing on that ground, the motion is DENIED.

*CRT III*, 911 F. Supp. 2d at 872 (citation omitted).

In this context, Mitsubishi's argument that the class representatives lack antitrust standing and therefore have a conflict with other class members is baseless.[13]

Mitsubishi's assertion that DPPs must establish antitrust standing by a preponderance of the evidence at class certification is incorrect. The case it cites for this proposition—*Preap v. Johnson*, 303 F.R.D. 566, 584 (N.D. Cal. 2014)—does not even address the issue.[14]

---

[13] Contrary to Mitsubishi's assertion, some class members—including named plaintiff Princeton—purchased CRTs directly from conspirators, and, therefore, do not need to rely on the *Royal Printing* exception. Saveri Reply Decl. ¶¶ 24–30 & Exs. 162–168. The Court's description of the "Named DPPs" as being purchasers of finished products, relied upon by Mitsubishi, applied only to those involved in the motion for summary judgment. *See CRT III*, 911 F. Supp. 2d at 862. Defendants did not move against class representatives who purchased CRTs. *Id.* at 862 n.1.

[14] Mitsubishi's assertion that the Court must determine issues of antitrust standing on class certification is also incorrect. *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) held only that it was not improper for the District Court to rule on a motion for summary judgment relating to standing filed before class certification. *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007), in the context of a motion to dismiss, stands for the same proposition as *Easter*, namely that a court *may* reach the issue of standing prior to class certification. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F. 3d 1018, 1022–23 (9th Cir. 2003) involved an unusual procedural situation where, after referral of a state law question by the District Court, and while the District Court's class certification ruling was on appeal, the Montana Supreme Court ruled against

(footnote continued)

10

1    Finally, Mitsubishi's argument that the proposed class differs impermissibly from what was

2    alleged in the complaint is also meritless. The class definition, as well as the relief DPPs seek, is

3    entirely consistent with the Complaint. The class definition contained in the Complaint includes

4    purchasers of both CRTs as well as Finished Products containing CRTs. And while the Complaint

5    alleges the purchases of CRTs in the "Parties" section, it alleges the purchase of Finished Products

6    by Class Representatives elsewhere. *See, e.g.*, First Amended Direct Purchaser Plaintiffs' Class

7    Action Complaint Against Mitsubishi and Thomson (filed under seal May 20, 2014) ¶¶ 1, 12

8    ("During the Class Period, Plaintiffs purchased CRTs and CRT Products in the United States and

9    elsewhere directly from Defendants, and/or Defendants' subsidiaries . . ."), 98, 99. Moreover, even

10   if there were differences, it would not matter. It is well-established that the class definition

11   identified in a motion for certification can supersede the class definition pled in a complaint.[15]

12       In short, Mitsubishi's assertion that issues of antitrust standing create conflicts with absent

13   class members provides no basis to find that named plaintiffs' are not adequate under Rule 23(a)(4).

14   **D. DPPs Have Demonstrated Predominance of Common Issues.**

15       Mitsubishi's arguments that individual issues predominate with regard to proof of impact

16   and damages are meritless. Mitsubishi ignores the evidence and relies on incorrect legal standards.

17   Mitsubishi also ignores that in an antitrust conspiracy case like this one, liability is the overriding

18   issue that predominates over other issues. DPP Mem. at 18–20.

19       **1. DPPs Have Demonstrated a Plausible Methodology to Prove Classwide Impact.**

20       DPPs need only present "a plausible methodology" to prove impact on a class wide basis.

21   DPP Mem. at 20. DPPs have presented three types of classwide proof, each sufficient by itself to

22   _____

23   the sole named plaintiff. This determination meant that she was not a member of the proposed class, and, therefore could not serve as class representative. *Id.*

24   [15] *See Weisfeld v. Sun Chem. Corp.*, 84 Fed. Appx. 257, 259 (3d Cir. 2004) ("The District Court considered this revised class definition in its analysis, and we will do the same."); *Robidoux v.*

25   *Celani*, 987 F.2d 931, 937 (2d Cir. 1993) (holding that a court "is not bound by the class definition proposed in the complaint"). As Judge Illston has noted, a plaintiff can reformulate a class

26   definition "based on factual developments that have occurred since the filing of the complaint"; she therefore "disagree[d] with [defendant] that plaintiffs cannot seek certification on a theory not

27   expressly stated in their complaint." *In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*,

28   270 F.R.D. 521, 530 (N.D. Cal. 2010).

1    meet this standard: (1) contemporaneous evidence of the conspiracy and its effects; (2) statistical

2    evidence of class wide harm; and (3) evidence relating to the structure of the market. DPP Mem. at

3    18–25. Mitsubishi fails to meaningfully address any of this proof.

4    **Contemporaneous Evidence of the Conspiracy and Its Effects.** Evidence of the conduct

5    of the conspirators can prove classwide impact. ████████████████████████████████████

6    ███████████████████████████████████████████████████████████████████████████████

7    ███████████████████████████████████████████████████████████████████████████████

8    ██████ DPP. Mem. at 21. Mitsubishi takes no meaningful issue with any of this evidence or with the

9    fact that courts have certified classes based on such evidence. Instead, it simply asserts that such

10   evidence is not common to the class because a single item of evidence may not suffice to prove

11   harm as to all class members. Opp. Mem. at 17:6–18. This argument, however, is nonsensical. DPPs

12   are not required to identify a single piece of evidence that proves everything as to everyone. The

13   point here is that proof of the activities of the conspiracy over its 12-year existence will also prove

14   on a classwide basis that it was effective in raising prices for all CRTs.

15   **Dr. Leitzinger's Statistical Analysis.** Dr. Leitzinger conducted an extensive statistical

16   analysis of the conspirators' sales data, including Mitsubishi's, to the extent available. Leitzinger

17   Rep. ¶ 64–81. ████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████████████

19   ███████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████████████

21   █████████████████████████████████████████████████████████████████████████

22   ███████████████████████████████████████████████ DPP Mem. at 22; Leitzinger Rep. ¶¶

23   6, 22–25, 43–57, 73–81, figs.7–11, 17. ███████████████████████████████████████

24   ████████████████████████████████████████████████████████████████████████████████

25   █████████████████████████████████ Leitzinger Rep. ¶ 49 & fig.9.

26   Such statistical inquiry is widely recognized as being "particularly useful in separating the

27   impact of an alleged anticompetitive act on market outcomes (such as pricing) from the impact of

28   other influences." ABA Section of Antitrust Law, PROVING ANTITRUST DAMAGES at 125–26

12

(2010).[16] Moreover, as noted above, this Court has held that similar analyses of the impact of the alleged conspiracy on the CRT market by the IPPs' expert, Dr. Janet Netz, demonstrated classwide impact at the direct purchaser level. *CRT I*, 2013 WL 5429718, at *14. If Dr. Netz's target price analysis was sufficient to show harm to direct purchasers in the context of a motion to certify an IPP class, Leitzinger's more detailed target price analysis is equally sufficient.

Mitsubishi simply ignores Dr. Leitzinger's work as well as this Court's IPP certification order. It fails to offer expert testimony critiquing Dr. Leitzinger, or explaining why class certification is not proper. Its only response is to assert that Dr. Leitzinger's analysis is insufficient because it "fails to show any meaningful correlation between CPT and CDT prices." Opp. Mem. at 17:21–22. This repetition of Mitsubishi's commonality argument (*see id.* at 18:1–2) fails in this context too, because, again, it ignores the ███████████████████████████████ ████████████. Dr. Leitzinger's analysis—like Dr. Netz's—demonstrates impact on a classwide basis because it ████████████████████████████████████████████ ████████████████—a proposition that Mitsubishi fails to dispute.[17]

**Dr. Leitzinger's Market Structure Analysis.** Dr. Leitzinger also concluded that the CRT industry was characterized by structural factors that would have caused classwide impact of the conspiracy. DPP Mem. at 22–23. Again, Mitsubishi simply dismisses Dr. Leitzinger's conclusions without taking meaningful issue with his analysis or the facts on which it is based—e██████ ████████████████████████████████████████████—and ignores that many courts have certified classes based on such evidence. *Id.* Mitsubishi's assertion that there is no evidence "that CRT pricing is structured" is simply wrong. ███████████████████████████

---

[16] *See also Foam,* 2014 WL 6461355, at *21–23 (relying on Dr. Leitzinger's analysis to certify class).

[17] Mitsubishi submits an expert report from Dr. Dov Rothman. Van Horn Decl., Ex. 6. As the Court has noted, however, Dr. Rothman does not purport to demonstrate why class certification is not proper. Order Denying Motion to Modify DPP Class Certification Scheduling Order at 4 (Mar. 24, 2015) (Dkt. No. 3794). *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 489 (N.D. Cal. 2008) ("*GPU*"), cited by Mitsubishi, is inapposite. Among other things, *GPU* involved customized products and individual negotiations. *Id.* at 480–81. Here, by contrast, the conspirators set bottom prices that affected the negotiations of all customers. DPP Mem. at 8–10, 21–22.

1    ███████████████ DPP Mem. at 5–13. Among other things, ███████████████

2    ████████████████████████████████████████████████████████████████

3    █████████████████████████████ DPP Mem. at 8–10, 21–23. Mitsubishi

4    also ignores this Court's reliance in part on a similar market structure analysis by Dr. Netz in

5    certifying the IPP class. *CRT I*, 2013 WL 5391159, at *3. The cases it cites are inapposite.[18]

### 2.  Classwide Proof of Damages.

As DPPs explained, at class certification a plaintiff need only demonstrate the existence of a proposed method for determining damages that is "not so insubstantial as to amount to no method at all." DPP Mem. at 23, n. 40. Dr. Leitzinger has gone beyond that requirement, and submitted a full-fledged damage study, and, therefore, easily satisfies this standard. And, of course, this Court has already held that a plausible methodology for determining overcharges at the direct level exists. *CRT I*, 2013 WL 5429718, at *16.

Mitsubishi's objections to Dr. Leitzinger's study lack merit. Like its objections to Dr. Leitzinger's conclusions as to impact, they are not supported by an expert study, or meaningful consideration of Dr. Leitzinger's analysis. They amount to nothing more than *ipse dixit* assertions.[19]

The objections themselves are easily answered. First, they ignore that it remains the law that individualized damage questions do not preclude class certification. *Leyva*, 716 F.3d at 513.

Second, Mitsubishi's assertion that the inclusion of Finished Products in the class creates individualized issues incorrectly presumes that issues of pass-through of the overcharge will be individual. As this Court has already ruled, however, this objection is moot, under *Royal Printing*, because "plaintiffs are permitted to sue 'for the entire overcharge'" without regard to issues of apportionment or pass-through. 911 F. Supp. 2d at 871.

Third, Mitsubishi's contention that Dr. Leitzinger's analysis is overly reliant on averages

---

[18] In *GPU*, for example, the court held only that, in that case, a showing that "the characteristics of [a] market are such that 'a cartel in this industry would have a high likelihood of success'" *alone* is insufficient to show impact. 253 F.R.D. at 502.

[19] Dr. Leitzinger's statement that his damages model does not, **by itself**, demonstrate **impact** on particular class members does not invalidate his model. It was not intended to do so. It was intended to provide, consistent with well-established law, a reasonable estimate of class members' damages. *See, e.g.*, *Story Parchment Co, v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931).

14

ignores that the use of averages is a permissible means of econometric analysis often used in antitrust cases. DPP Mem. at 24 n.31. In *Air Cargo*, the court canvassed recent precedents and found that, in appropriate circumstances, courts have "commonly accepted" the use of averages in computing antitrust damages. 2014 WL 7882100, at *61–62. "The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself." *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 182 (D. Mass. 2013), *aff'd*, 777 F.3d 9 (1st Cir. 2015) (*quoting In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 197 (1st Cir. 2009)).

Indeed, this Court rejected similar criticisms of Dr. Netz' when it certified the IPP class

> Defendants' contention is basically that variation among purchasers and CRTs renders many or most class members unharmed by the alleged antitrust activity, a fact that averaging hides. But Dr. Netz's model, based on target prices and variant prices, notes that all prices embody a basic overcharge, and that the overcharges can be calculated without individualized inquiry. Defendants insist that Dr. Netz used no transactional-level data, citing their own expert's different findings based on the same data for one retailer of CRT products. This battle of experts indicates that the dispute does not concern methodology alone. It is a merits question for the jury.

*CRT II*, 2013 WL 5391159, at *8 (citations omitted). The same conclusion ought to apply to Dr. Leitzinger's work.

## IV.    CONCLUSION.

For all of the foregoing reasons, the DPPs' motion for class certification should be granted.

DATED: April 17, 2015               Respectfully submitted,

/s/ *R. Alexander Saveri*
Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Travis L. Manfredi (281779)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel for
Direct Purchaser Plaintiffs*

15

1

2
       Michael P. Lehmann
       HAUSFELD LLP

3
       44 Montgomery Street, Suite 3400
       San Francisco, CA 94104

4
       Telephone:  (415) 633-1908
       Facsimile:  (415) 358-4980

5

6
       Joseph W. Cotchett

7
       Steven N. Williams
       Adam J. Zapala

8
       Joanna W. LiCalsi
       COTCHETT, PITRE & McCARTHY, LLP

9
       840 Malcolm Road
       Burlingame, CA 94010

10
       Telephone: (650) 697-6000

11
       Facsimile: (650) 697-0577

12

13
       Bruce L. Simon
       Aaron M. Sheanin

14
       PEARSON, SIMON & WARSHAW LLP
       44 Montgomery Street, Suite 2450

15
       San Francisco, CA 94104
       Telephone:  (415) 433-9000

16
       Facsimile:  (415) 433-9008

17

18
       H. Laddie Montague, Jr.
       Ruthanne Gordon

19
       BERGER & MONTAGUE, P.C.
       1622 Locust Street

20
       Philadelphia, PA 19103
       Telephone: (800) 424-6690

21
       Facsimile: (215) 875-4604

22

23
       Gary Specks
       KAPLAN FOX

24
       423 Sumac Road

25
       Highland Park, IL 60035
       Telephone: (847) 831-1585

26
       Facsimile: (847) 831-1580

27

28

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC

1
2
3
4
5

Douglas A. Millen
William H. London
FREED KANNER LONDON & MILLEN
2201 Waukegan Road
Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4519

6
7
8
9
10

Eric B. Fastiff
LIEFF CABRASER HEIMANN & BERNSTEIN,
LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

11
12
13
14
15
16

W. Joseph Bruckner
Elizabeth R. Odette
LOCKRIDGE GRINDAL NAUEN P.L.L.P
100 Washington Avenue S
Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile: (612) 339-0981

17

*Attorneys for Plaintiffs*

18
19
20
21
22
23
24
25
26
27
28

DIRECT PURCHASER PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION—Case No. 07-CV-5944 SC