# EXHIBIT 171

1  MORGAN, LEWIS & BOCKIUS LLP
   KENT M. ROGER, State Bar No. 95987
2  DIANE L. WEBB, State Bar No. 197851
   MICHELLE PARK CHIU, State Bar No. 248421
3  JASON B. ALLEN, State Bar No. 251759
   One Market, Spear Street Tower
4  San Francisco, CA  94105-1126
   Tel:  415.442.1000
5  Fax:  415.442.1001
   E-mail:  kroger@morganlewis.com
6           dwebb@morganlewis.com
            mchiu@morganlewis.com
7           jason.allen@morganlewis.com

8  Attorneys for Defendants
   HITACHI, LTD.
9  HITACHI DISPLAYS, LTD.
   HITACHI ASIA, LTD.
10 HITACHI AMERICA, LTD.
   HITACHI ELECTRONIC DEVICES (USA), INC.

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15

| | |
|---|---|
| 16   IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. C07-5944 SC |
| 17 | **MDL NO. 1917** |
| 18 | Judge: Hon. Samuel Conti |
| 19 | Special Master: Hon. Charles A. Legge (Ret.) |
| 20 | **DECLARATION OF DARYL CHAMBERS IN SUPPORT OF THE HITACHI DEFENDANTS' EVIDENTIARY PROFFER** |
| 21   This Document Relates To: | |
| 22   ALL ACTIONS | |

23                **DECLARATION OF DARYL CHAMBERS**

24      I, Daryl Chambers, declare:

25      1.      I am the Director of Finance and Accounting for the Digital Media Division of

26 Hitachi America, Ltd. ("HAL").  I make this declaration in support of the Hitachi Defendants'

27 proffer.  I have personal knowledge of the facts contained in this declaration, except for those if

28 any, based on information and belief, and, if called as a witness, would and could competently

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22081003.4                                                                                    MDL 1917

2.   From April 1, 1999 to March 31, 2006, I was responsible for accounting and financial reporting in connection with the operations of the Home Electronics Division of HAL ("HAL-HED")

3.   HAL-HED sold CPT televisions during the period April 1999 to 2005. HAL did not sell CPT televisions prior to April 1999 or after 2005.

4.   HAL-HED virtually ceased all sales of CPT televisions by the end of 2003. In 2004 and 2005, HAL-HED's CPT television sales activities were limited to sales of nominal quantities of obsolete unsold on-hand inventory of CPT televisions remaining from prior years (2004: 50 units; 2005: 6 units).

5.   I am informed and believe that HAL-HED sold CPT televisions to customers in the United States, Mexico, and perhaps other Latin American countries.

6.   HAL-HED functioned only as a sales division of HAL. HAL-HED never manufactured any components or products, including CPT tubes or CDT tubes, or CPT televisions or CDT computer monitors.


I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 7th day of December, 2010, in *Chula Vista, CA*

*Daryl E. Chambers*

Daryl Chambers

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/22081003.4                    -2-                    MDL 1917

DECLARATION OF DARYL CHAMBERS IN SUPPORT OF
THE HITACHI DEFENDANTS' EVIDENTIARY PROFFER

# EXHIBIT 172

# HITACHI



*Annual Report* **1999**

Year ended March 31, 1999

*J A P A N*

**M A N U F A C T U R I N G**

Babcock-Hitachi K.K.

Hitachi Cable, Ltd.

Hitachi Chemical Co., Ltd.

Hitachi Construction Machinery Co., Ltd.

Hitachi Denshi, Ltd.

Hitachi Electronics Engineering Co., Ltd.

Hitachi Hokkai Semiconductor, Ltd.

Hitachi Hometec, Ltd.

Hitachi Kiden Kogyo, Ltd.

Hitachi Maxell, Ltd.

Hitachi Media Electronics Co., Ltd.

Hitachi Medical Corporation

Hitachi Metals, Ltd.

Hitachi Seiko, Ltd.

Hitachi Telecom Technologies, Ltd.

Hitachi Tohbu Semiconductor, Ltd.

Hitachi Tokyo Electronics Co., Ltd.

Japan Servo Co., Ltd.

**E N G I N E E R I N G ,   S A L E S ,   A N D   S E R V I C E**

Chuo Shoji, Ltd.

Hitachi Air Conditioning & Refrigeration Co., Ltd.

Hitachi Auto Systems Co., Ltd.

Hitachi Building Systems Co., Ltd.

Hitachi Credit Corporation

Hitachi Electronics Services Co., Ltd.

Hitachi Engineering & Services Co., Ltd.

Hitachi Engineering Co., Ltd.

Hitachi Information Systems, Ltd.

Hitachi Keisho, Ltd.

Hitachi Life Corporation

Hitachi Plant Engineering & Construction Co., Ltd.

Hitachi Printing Co., Ltd.

Hitachi Semiconductor and Devices Sales Co., Ltd.

Hitachi Service & Engineering (East), Ltd.

Hitachi Service & Engineering (West), Ltd.

Hitachi Software Engineering Co., Ltd.

Hitachi Techno Engineering Co., Ltd.

Hitachi Transport System, Ltd.

Nissei Sangyo Co., Ltd.

*A B R O A D*

**M A N U F A C T U R I N G**

Hitachi Automotive Products (USA), Inc.

Hitachi Computer Products (America), Inc.

Hitachi Computer Products (Asia) Corp.

Hitachi Computer Products (Europe) S.A.

Hitachi Consumer Products (S) Pte. Ltd.

Hitachi Electronic Devices (Singapore) Pte. Ltd.

Hitachi Electronic Devices (USA), Inc.

Hitachi Home Electronics (America), Inc.

Hitachi Home Electronics (Europe) Ltd.

Hitachi Semiconductor (Europe) GmbH

Hitachi Semiconductor (Malaysia) Sdn. Bhd.

Shanghai Hitachi Household Appliances Co., Ltd.

Taiwan Hitachi Co., Ltd.

**E N G I N E E R I N G ,   S A L E S ,   A N D   S E R V I C E**

Hitachi America, Ltd.

Hitachi Asia Ltd.

Hitachi (China), Ltd.

Hitachi Data Systems Holding Corp.

Hitachi Europe Ltd.

Hitachi Semiconductor (America) Inc.

Note: Hitachi Seiko, Ltd. was renamed Hitachi Via Mechanics, Ltd. as of April 1, 1999.

# EXHIBIT 173

20-F 1 d20f.htm ANNUAL REPORT

**Table of Contents**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# FORM 20-F

(Mark One)

¨    REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR 12(g) OF THE SECURITIES EXCHANGE ACT OF 1934

OR

x    ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended March 31, 2008

OR

¨    TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ to _____

OR

¨    SHELL COMPANY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

Date of event requiring this shell company report _____

Commission file number: 1-8320

**KABUSHIKI KAISHA HITACHI SEISAKUSHO**
(Exact name of Registrant as specified in its charter)

# Hitachi, Ltd.

(Translation of Registrant's name into English)

**Japan**
(Jurisdiction of incorporation or organization)

**6-6, Marunouchi 1-chome, Chiyoda-ku,
Tokyo 100-8280, Japan**
(Address of principal executive offices)

**Legal Division; +81-3-3258-1111; +81-3-4564-2148; 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280, Japan**
(Name, Telephone, Facsimile number and Address of Company Contact Person)

Securities registered or to be registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| American depositary shares, or ADSs, each of which represents ten shares of common stock | New York Stock Exchange |
| Common stock without par value | New York Stock Exchange* |

Securities registered or to be registered pursuant to Section 12(g) of the Act:

Table of Contents

**C. Organizational Structure**

The table below shows major subsidiaries of the Company as of March 31, 2008. Ownership percentage of voting rights indicates voting rights owned by the Company and its subsidiaries.

| Name of company | Country of incorporation | Ownership percentage of voting rights |
|---|---|---|
| **Information & Telecommunication Systems** | | |
| Hitachi Communication Technologies, Ltd. | Japan | 100.0% |
| Hitachi Electronics Services Co., Ltd. | Japan | 100.0 |
| Hitachi Information & Control Solutions, Ltd. | Japan | 100.0 |
| Hitachi Information Systems, Ltd. | Japan | 51.9 |
| Hitachi-Omron Terminal Solutions, Corp. | Japan | 55.0 |
| Hitachi Software Engineering Co., Ltd. | Japan | 53.0 |
| Hitachi Systems & Services, Ltd. | Japan | 51.2 |
| Hitachi Computer Products (America), Inc. | U.S.A. | 100.0 |
| Hitachi Computer Products (Europe) S.A.S. | France | 100.0 |
| Hitachi Data Systems Holding Corp. | U.S.A. | 100.0 |
| Hitachi Global Storage Technologies Netherlands B.V. | Netherlands | 100.0 |
| **Electronic Devices** | | |
| Hitachi Displays, Ltd. | Japan | 50.2% |
| Hitachi High-Technologies Corporation | Japan | 51.7 |
| Hitachi Medical Corporation | Japan | 63.2 |
| Hitachi Display Device (Suzhou) Co., Ltd. | China | 100.0 |
| **Power & Industrial Systems** | | |
| Babcock-Hitachi Kabushiki Kaisha | Japan | 100.0% |
| Clarion Co., Ltd. | Japan | 64.0 |
| Hitachi Building Systems Co., Ltd. | Japan | 100.0 |
| Hitachi Construction Machinery Co., Ltd. | Japan | 51.1 |
| Hitachi Engineering & Services Co., Ltd. | Japan | 100.0 |
| Hitachi-GE Nuclear Energy, Ltd. | Japan | 80.0 |
| Hitachi Industrial Equipment Systems Co., Ltd. | Japan | 100.0 |
| Hitachi Mobile Co., Ltd. | Japan | 100.0 |
| Hitachi Plant Technologies, Ltd. | Japan | 69.8 |
| Hitachi Via Mechanics, Ltd. | Japan | 100.0 |
| Hitachi Automotive Products (USA), Inc. | U.S.A. | 100.0 |
| Hitachi Elevator (China), Co., Ltd. | China | 70.0 |
| Hitachi Power Europe GmbH | Germany | 100.0 |
| **Digital Media & Consumer Products** | | |
| Fujitsu Hitachi Plasma Display Limited | Japan | 95.4% |
| Hitachi Appliances, Inc. | Japan | 100.0 |
| Hitachi Maxell, Ltd. | Japan | 53.5 |
| Hitachi Media Electronics Co., Ltd. | Japan | 100.0 |
| Hitachi Home Electronics (America), Inc. | U.S.A. | 100.0 |
| Shanghai Hitachi Household Appliances Co., Ltd. | China | 60.0 |

17

Table of Contents

| Name of company | Country of incorporation | Ownership percentage of voting rights |
|---|---|---|
| **High Functional Materials & Components** | | |
| Hitachi Cable, Ltd. | Japan | 53.2% |
| Hitachi Chemical Co., Ltd. | Japan | 51.6 |
| Hitachi Metals, Ltd. | Japan | 55.7 |
| **Logistics, Services & Others** | | |
| Chuo Shoji, Ltd. | Japan | 100.0% |
| Hitachi Life Corporation | Japan | 100.0 |
| Hitachi Transport System, Ltd. | Japan | 59.0 |
| Nikkyo Create, Ltd. | Japan | 100.0 |
| Hitachi America, Ltd. | U.S.A. | 100.0 |
| Hitachi Asia Ltd. | Singapore | 100.0 |
| Hitachi (China), Ltd. | China | 100.0 |
| Hitachi Europe Ltd. | U.K. | 100.0 |
| **Financial Services** | | |
| Hitachi Capital Corporation | Japan | 60.6% |
| Hitachi Insurance Services, Ltd. | Japan | 100.0 |

Note:  Fujitsu Hitachi Plasma Display Limited changed its name to Hitachi Plasma Display Limited on April 1, 2008.

### D. Property, Plants and Equipment

Hitachi owns a significant portion of the land, plants, offices and other fixed assets necessary to conduct its business and a significant portion of Hitachi's land, plants, offices and other fixed assets are located in Japan. Hitachi considers its properties to be well maintained and believes its plant capacity is adequate for its current needs and future plans. Certain of Hitachi's properties such as land and buildings are subject to mortgages in respect of bonds and loans. The total outstanding balance of the secured loans as of March 31, 2008 was ¥43,004 million.

The following table describes the name of the Company office, division, group, center or subsidiary that is using the property, the location and area of the property, and in the case of plant property, the principal products produced there as of March 31, 2008. Hitachi believes the following offices, divisions, groups, centers and subsidiaries comprise its major lines of business:

| Name of user of plants and offices | Location | Land area (Thousands of square meters) | Principal products |
|---|---|---|---|
| **In Japan** | | | |
| **The Company:** | | | |
| Automotive Systems | Kanagawa, etc. | 2,614 | Automotive products |
| Information & Telecommunication Systems | Kanagawa, etc. | 764 | Software, mainframes |
| Thermal & Hydroelectric Systems Division, etc. | Ibaraki | 3,831 | Power generating equipment, turbines |
| Research & Development Group | Tokyo, etc. | 836 | — |
| Consumer Business Group | Kanagawa, etc. | 1,018 | Digital media related products |
| Sales Offices | Osaka, etc. | 115 | — |
| Urban Planning and Development Systems | Ibaraki | 528 | Elevators, escalators |
| Head Office | Tokyo | 790 | — |
| Transportation Systems Division | Yamaguchi | 698 | Railway vehicles |

18

# EXHIBIT 174

Panasonic Broadcast & Television Systems Company

Page: 1



PANASONIC BROADCAST &
TELEVISION SYSTEMS COMPANY
P.O. BOX 100420

Pasadena, CA 91189-0420

| INVOICE NO. | INVOICE DATE |
|---|---|
| 0256618 | 121396 |

| ACCOUNT NO. | OUR ORDER NO. |
|---|---|
| 001033 | 1137364 |

**INVOICE**

CUSTOMER ORDER DATE
121096

CUSTOMER P.O. NUMBER
15165

SHIP TO:
STUDIO SPECTRUM INC

1056 NORTH LAKE STREET

BURBANK, CA 91502

SHIP TO ADDRESS:
STUDIO SPECTRUM INC.

1056 NORTH LAKE STREET

BURBANK, CA 91502
9000401   BR

TERMS OF SALE
NET 30 DAYS

NET DUE DATE
011197

CARRIER:
UPS

SHIPPING TERMS:
Prepaid and add



| | ITEM | ORDERED | | SHIPPED & WAREHOUSE | | LIST PRICE | NET AMOUNT |
|---|---|---|---|---|---|---|---|
| 1 | CT1384VY | 1 | | 1 | 451 | 305.00 | 305.00 |
| | 13" COLOR VIDEO MONITO | | | | | | |
| | RECEIVER | | | | | | |

UCLA Med.

LEASE NOTE: If there are any discrepancies related to this invoice and/or the product or
shipment covered by the invoice, please telephone 1-800-597-8007 between 9AM and 5PM East
oast Time. In the case of all confirmed errors we will issue credit to correct a billing
rror or issue a Return Authorization to correct an error in shipping within two
usiness days of notification.

| FOB WAREHOUSE | SUB TOTAL | SALES TAX | SHIPPING CHARGES | TOTAL INVOICE AMOUNT |
|---|---|---|---|---|
| FOB WAREHOUSE NET | 305.00 | 0.00 | 5.10 | 441 310.10 |



EXHIBIT Ptf. SS4
Deft. For Identification
Consisting of 13 Page(s)
Witness BUCKOWSKI
Date 7-16-13
Tami Le, CSR 8716

SS0000001



# Panasonic Broadcast & Television Systems Company

Page: 1

| REMITTANCE ADDRESS | | INVOICE NO | INVOICE DATE |
|---|---|---|---|
| PANASONIC BROADCAST & | | 10275972 | 022597 |
| TELEVISION SYSTEMS COMPANY | | ACCOUNT NO | OUR ORDER NO |
| P.O. BOX 100420 | | L001033 | 1150170 |

**INVOICE**

| CUSTOMER ORDER DATE |
|---|
| Pasadena, CA 91189-0420 |

| CUSTOMER ORDER DATE |
|---|
| 022597 |
| CUSTOMER P.O. NUMBER |
| 15237 |

| BILLED TO | SHIP TO ADDRESS |
|---|---|
| STUDIO SPECTRUM INC | STUDIO SPECTRUM INC. |
| 1056 NORTH LAKE STREET | 1056 NORTH LAKE STREET |
| BURBANK, CA 91502 | BURBANK, CA 91502 |
| | 9000401 BR |

POSTED 10/26 #4 Received 3/10

| TERMS OF SALE | CARRIER |
|---|---|
| NET 30 DAYS | N.W. Trans SHIPPING TERMS |
| NET DUE DATE | |
| 032697 | Prepaid and add |

| LINE | MODEL NUMBER DESCRIPTION | QUANTITY ORDERED | QUANTITY BACKORDERED | QUANTITY SHIPPED | SHIPPING WAREHOUSE | NET COST PER UNIT | TOTAL |
|---|---|---|---|---|---|---|---|
| 1 | POPBTH1350Y 13" COLOR VIDEO MONITO FOR OLYMPICS | 10 | | 10 | 745 | 563.00 | 5630.00 |

PLEASE NOTE: If there are any discrepancies related to this invoice and/or the product or shipment covered by the invoice, please telephone 1-800-597-8007 between 9AM and 5PM East Coast Time. In the case of all confirmed errors we will issue credit to correct a billing error or issue a Return Authorization to correct an error in shipping within two business days of notification.

| FOB WAREHOUSE | SUB-TOTAL | SALES TAX | SHIPPING CHARGES | TOTAL INVOICE AMOUNT |
|---|---|---|---|---|
| FOB WAREHOUSE NET | 5630.00 | 0.00 | 39.25 | 44I 5669.25 |

SS0000003

Panasonic Broadcast & Television Systems Company

Page: 1

| REMITTANCE ADDRESS |
| --- |
| PANASONIC BROADCAST & |
| TELEVISION SYSTEMS COMPANY |
| P.O. BOX 100420 |
| |
| Pasadena, CA 91189-0420 |

| INVOICE NO. | INVOICE DATE |
| --- | --- |
| 10419572 | 072998 |
| ACCOUNT NO. | OUR ORDER NO |
| 1001033 | 1240373 |

| CUSTOMER ORDER DATE |
| --- |
| 072798 |
| CUSTOMER P.O. NUMBER |
| 15657 |

# INVOICE

| BILLED TO |
| --- |
| STUDIO SPECTRUM INC |
| |
| 1056 NORTH LAKE STREET |
| |
| BURBANK, CA 91502 |

| SHIP TO ADDRESS |
| --- |
| STUDIO SPECTRUM INC. |
| |
| 1056 NORTH LAKE STREET |
| |
| BURBANK, CA 91502 |
| 9000401   BF |

| TERMS OF SALE |
| --- |
| NET 30 DAYS |
| NET DUE DATE |
| 082898 |

| SHIPPED VIA |
| --- |
| UPS GROUND SERVICE |
| SHIPPING TERMS |
| Prepaid |

| LINE | MODEL NUMBER DESCRIPTION | QUANTITY ORDERED | QUANTITY BACKORDERED | QUANTITY SHIPPED | SHIPPING WAREHOUSE | NET COST / PRICE | TOTAL |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | CT1386Y 13" MONITOR. | 1 | | 1 | 451 | 260.00 | 260.00 |

PLEASE NOTE: If there are any discrepancies related to this invoice and/or the product or shipment covered by the invoice, please telephone 1-800-597-8007 between 9AM and 5PM East Coast Time. In the case of all confirmed errors we will issue credit to correct a billing error or issue a Return Authorization to correct an error in shipping within two business days of notification.

| FOR WAREHOUSE | SUB TOTAL | SALES TAX | SHIPPING CHARGES | TOTAL INVOICE AMOUNT |
| --- | --- | --- | --- | --- |
| | 260.00 | 0.00 | 6.18 | 266.18 |

SS0000008

# EXHIBIT 175

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re:  CATHODE RAY TUBE (CRT)          )
ANTITRUST LITIGATION,                    )
_____)
                                         )
This Document Relates to:                )
                                         )
ALL ACTIONS.                             )
_____)

30(b)(6) DEPOSITION OF STUDIO SPECTRUM, INC. –

KENNETH BUCKOWSKI

July 16, 2013

Tami L. Le, CSR No. 8716
360860




barkley.com

(310) 207-8000 Los Angeles    (415) 433-5777 San Francisco    (949) 955-0400 Irvine          (858) 455-5444 San Diego
(916) 922-5777 Sacramento     (408) 885-0550 San Jose         (760) 322-2240 Palm Springs     (951) 686-0606 Riverside
(818) 702-0202 Woodland Hills (212) 808-8500 New York City    (347) 821-4611 Brooklyn         (518) 490-1910 Albany
(516) 277-9494 Garden City    (914) 510-9110 White Plains     (312) 379-5566 Chicago          (702) 366-0500 Las Vegas
        +33 1 70 72 65 26 Paris       +971 4 8137744 Dubai        +852 3693 1522 Hong Kong

12:26 1    Q    Who paid for shipping for the CRT products that

2    you purchased from Panasonic?

3    A    We would pay shipping from the warehouse unless

4    we achieved a certain volume level, and then they would

12:27 5    pay; one of the incentives of ordering more of the

6    product.

7    Q    And was that the case for all of the CRT

8    product suppliers you purchased from or did it vary?

9    A    I think all of them had the similar program.

12:27 10    (Studio Spectrum Exhibit 4 was marked for

11    identification.)

12    (Document handed to counsel and the deponent.)

13    MR. CUNNINGHAM:  1850?

14    THE REPORTER:  Yes.

12:28 15    Q    BY MR. CUNNINGHAM:  Mr. Buckowski, you've been

16    handed what's been marked as Exhibit 1850.  These are a

17    series of documents produced by Studio Spectrum in this

18    case.  They have the Bates Nos. SS-1 through 13.

19    Take a moment to look at this, and when you're

12:28 20    ready, you can tell me if these are, indeed, invoices

21    produced by Studio Spectrum.

22    A    (Reviewing document.)

23    Yes, these are the invoices from Studio

24    Spectrum -- or from our offices from Panasonic.

12:29 25    Q    So let's look at the first page, SS-1.  Do you

126

BARKLEY
Court Reporters

12:29   1     see in the upper left-hand corner in the box, it says

        2     "Remittance Address" and lists Panasonic Broadcast &

        3     Television Systems Company?

        4       A    Yes.

12:29   5       Q    Is that the Panasonic entity that Studio

        6     Spectrum purchased CRT products from?

        7       A    Yes, that's correct.

        8       Q    Okay.  Do you know what the relationship is

        9     between that entity and Panasonic Corporation?

12:29  10       A    No, I don't know the legal definition of it.

     11       Q    These invoices, were these sent to you along

     12     with the actual shipment of product?

     13       A    No, they were not; they followed.

     14       Q    You received it after you received the product?

12:30  15       A    Yes.

     16       Q    And how were they sent to you?

     17       A    In the mail.

     18       Q    Were they typically one-page documents?

     19       A    They could be as many pages as the shipment was

12:30  20     or as the particular order was.  I think that they came

     21     actually as they shipped.  There could be a large

     22     purchase order; and whatever they had, they'd ship and

     23     then back-order and fill it from there.  Invoice

     24     typically reflected the shipment, what came on a

12:30  25     particular shipment.

127

BARKLEY
Court Reporters

12:30    1        Q     And do you see in the middle of this document

         2   there's a stamp that says "Posted"?

         3        A     Yes.

         4        Q     Is that something that Studio Spectrum applied?

12:30    5        A     Yes, that would have been Kathy's.

         6        Q     And when would she do that, in the process,

         7   when in the process?

         8        A     That she posted it to the accounts payable

         9   ledger, if you would, and that probably was done with

12:31   10   the Macola.

        11        Q     And the product reflected here is a -- in the

        12   description, it says it's a 13-inch color video monitor

        13   receiver.

        14        A     Uh-huh.

12:31   15        Q     Correct?

        16        A     Yes.

        17        Q     So is that a -- is that a television?

        18        A     That's a television.  But it's a television

        19   designed for the industrial marketplace, so that meant

12:31   20   it had a gray case as opposed to a wooden case.

        21        Q     Any other differences between this product and

        22   what you would think of as a typical television?

        23        A     Yep.  It would have a grounded three-prong plug

        24   as opposed to just the simple two-blade AC plug, and the

12:32   25   video inputs would typically have a professional B and C

                                    128

BARKLEY
Court Reporters

12:32   1   connector rather than the consumer RCA.  Also, typically

2   it had a longer warranty; if I recall, it was a one-year

3   parts and labor, and the consumer was 90 days.  Those

4   were among the distinguishing differences between

12:32   5   consumer and industrial.

6         Q     The warranty you reference there is the

7   warranty from the manufacturer?

8         A     Yes, correct.

9         Q     Do you see on the right-hand side in the box

12:32   10   that says "Shipping Terms"?

11         A     Yes.

12         Q     It says "Prepaid and add"?

13         A     Yes.

14         Q     Do you know what that means?

12:32   15         A     I can see at the bottom that they're adding

16   freight into that, so in addition to $305 cost of that,

17   they're adding $5.10 for the freight.

18         Q     I see.  So you're looking down at the bottom of

19   the document.

12:32   20         A     Yes.  So that would have meant that they're

21   prepaying the freight and they're adding the freight

22   cost to our invoice.

23         Q     So if there's a charge at the bottom of these

24   documents under Shipping Charges, does that mean that

12:33   25   Studio Spectrum is paying for shipping?

129

BARKLEY
Court Reporters

12:33    1          A    Yes, that's correct.

         2          Q    Can you turn to the next page, please, Page 2.

         3          A    Okay.

         4          Q    And looking at the last line item here on the

12:33    5     invoice is a 13-inch high-grade monitor?

         6          A    Yes.

         7          Q    Do you know if that's a black-and-white

         8     monitor?

         9          A    That would have been a color monitor.

12:33   10          Q    How can you tell?

        11          A    I recognize the part number, one of my

        12     children.

        13          Q    But there's nothing in the description there

        14     that indicates it's color; right?

12:33   15          A    No, just my familiarity with the model number.

        16          Q    Can you turn to the next page, please, Page 3?

        17          A    Yes.

        18          Q    And you see in the Description fields here, the

        19     product is a 13-inch color video monitor; correct?

12:34   20          A    Yes.

        21          Q    And it says "For Olympics"?

        22          A    Uh-huh.  Yes.

        23          Q    What does that mean?

        24          A    Panasonic was the supplier of video equipment

12:34   25     for the Los Angeles Olympics in that year, and they had

                                        130

BARKLEY
Court Reporters

12:34    1    a special category of -- they had given a lot of the

         2    monitors for use at the Olympics.  And after they were

         3    finished, we were able to buy these at a reduced price.

         4    These were used monitors, if you would, but very

12:34    5    high-quality ones.  This would have been an example, I

         6    think, of a special pricing.

         7        Q    Other than this Olympics example, can you think

         8    of any other examples where you purchased CRT products

         9    and got pricing reduced from the list price or from --

12:35   10    right, from the list price?

        11        A    I think this was the only time.

        12        Q    Can you turn to Page 8, please.

        13        A    (Witness complies.)

        14        Q    Page 8 is an invoice again for a 13-inch

12:35   15    monitor.

        16             Do you know whether that's a black-and-white or

        17    color monitor?

        18        A    That's a color.  CT is color television.

        19        Q    Okay.  You can put that aside.

12:36   20             (Studio Spectrum Exhibit 5 was marked for

        21             identification.)

        22             (Document handed to counsel and the deponent.)

        23        Q    BY MR. CUNNINGHAM:  You've been handed what's

        24    been marked as Exhibit 1851.  It's a document produced

12:36   25    by Studio Spectrum, has the Bates numbers Studio

                                    131

BARKLEY
Court Reporters

```
 1              DEPOSITION OFFICER'S CERTIFICATE

 2

 3   STATE OF CALIFORNIA            )
                                    )   ss.
 4   COUNTY OF ORANGE               )

 5

 6

 7        I, TAMI L. LE, hereby certify:

 8        I am a duly qualified Certified Shorthand

 9   Reporter in the State of California, holder of

10   Certificate Number CSR 8716 issued by the Court

11   Reporters Board of California and which is in full force

12   and effect.  (Fed. R. Civ. P. 28(a)).

13        I am authorized to administer oaths or

14   affirmations pursuant to California Code of Civil

15   Procedure, Section 2093(b), and prior to being examined,

16   the deponent was first duly sworn by me.  (Fed. R. Civ.

17   P. 28(a), 30(f)(1).

18        I am not a relative or employee or attorney

19   counsel of any of the parties, nor am I a relative or

20   employee of such attorney or counsel, nor am I

21   financially interested in this action.  (Fed. R. Civ.

22   28).

23        I am the deposition officer that stenographically

24   recorded the testimony in the foregoing deposition and

25   the foregoing transcript is a true record of the
```

164

BARKLEY
Court Reporters

1    testimony given by the witness.  (Fed. R. Civ. P.

2    30(f)(1)).

3         Before completion of the deposition, a review of

4    the transcript  [X] was  [ ] was not requested.  If

5    requested, any changes made by the deponent (and

6    provided to the reporter) during the period allowed, are

7    appended hereto.  (Fed. R. Civ. P. 30(e)).

8

9    Dated:      JUL 3 0 2013

10

11

12                                                        _____

13                        TAMI L. LE
                          Certified Shorthand Reporter No. 8716, RPR

14

15

16

17

18

19

20

21

22

23

24

25

                                   165

# EXHIBIT 176



1 of 1 DOCUMENT

Copyright 2012 Reed Elsevier Inc. All rights reserved.

LexisNexis® Corporate Affiliations

January 25, 2012

Panasonic Broadcast & Television Systems Company

1 Panasonic Way
Secaucus, NJ 07094-2917
United States

* * * * * * * * * COMMUNICATIONS * * * * * * * * * *
**TELEPHONE:** (201) 348-7755
**FAX:** (201) 392-6910
**URL:** www.panasonic.com
**E-MAIL:** privacy@panasonic.com (General E-Mail)

**OTHER NUMBERS:** (800) 211-7262

* * * * * * * * * COMPANY IDENTIFIERS * * * * * * * * * *
**DCA NUMBER:** 000020-149

* * * * * * * * * COMPANY INFORMATION * * * * * * * * * *
**LEGAL STATUS:** Private
**ORGANIZATION TYPE:** Division
**EMPLOYEES:** 50

* * * * * * * * * CORPORATE STRUCTURE * * * * * * * * * *

**ULTIMATE PARENT:** Panasonic Corporation 1006 Oaza Kadoma, Kadoma, Osaka, 571-8501, Japan
**IMMEDIATE PARENT:** Panasonic Corporation of North America 1 Panasonic Way, Secaucus, NJ, 07094-2917, United States

- Corporate Hierarchy

•

LexisNexis® Corporate Affiliations .,, Panasonic Broadcast & Television Systems Company

\* \* \* \* \* \* \* \* \* \* **EXECUTIVES** \* \* \* \* \* \* \* \* \* \*

| Name | Title | Role |
|---|---|---|
| John Baisley | Pres | President |

\* \* \* \* \* \* \* \* \* \* **DESCRIPTION** \* \* \* \* \* \* \* \* \* \*

**INDUSTRY TYPE:** Video & Audio Hardware & Software Products Distr

\* \* \* \* \* \* \* \* \* \* **MARKET AND INDUSTRY** \* \* \* \* \* \* \* \* \* \*

**SIC CODES:**

4841 - Cable and Other Pay Television Services

**LOAD-DATE:** January 25, 2012

# EXHIBIT 177

**Panasonic Consumer Electronics Company**
/Unit of Matsushita Electric Corporation of America

11-5

# INVOICE

**Remittance Address**
PANASONIC COMPANY CENTRAL

P.O. BOX 73277

CHICAGO, IL 60673-7277

| Invoice Date | Invoice Number |
|---|---|
| 080599 | 21918592 |

| Account Number | Control Number |
|---|---|
| 4040000 | 11037042 |
| | ORG:005  WHSE:601 |

**Customer Service Contact**
RADFORD        FRANCES T.

**Bill To**
GENERAL ELECTRIC CAF C0693

P O BOX 17459

JACKSONVILLE, FL 32245-7459

**Ship To Address**
WETTSTEIN'S
TERRY BEELER
215 NORTH 3RD. ST.

LA CROSSE, WI 54601

Absolutely no returns will be accepted unless shipped prepaid after receipt of prior written authorization. All other claims must be made within 10 days after receipt of merchandise by consignee.

| Terms of Payment | Net Due Date | Order Date | Customer PO Number |
|---|---|---|---|
| 27 DUE ON RECEIPT | 083099 | 072799 | S4954 |

| Panasonic Model Number / Customer Product Number | Quantity Ordered | B/O Quantity | Quantity Shipped | Gross Unit Price / Discounts and Charges | Net Unit Price | Total |
|---|---|---|---|---|---|---|
| 3 CT-20G14 | 3 | | 3 | 216.00 205.00 ✓ | 195.90 | 587.70 |
| SLMN RC | | | | | | |
| KC89 | | | | | | |
| PDF | | | | | -$3.04 | |
| REBATE DFI | | | | | -3.00% | |

P.O.# S4954
Log# 0006
Rec Date 8-10-99
Rec Branch
G/L Acct# 64800
Approved By
Entered By

0/12-45
15/402
(60.30)

| Carrier | B/L Number | | Sub Total > | 587.70 |
|---|---|---|---|---|
| YELLOW FREIGHT SYSTE | P15540 | | Sales/Use Tax > | 0.00 |
| | PRO-NO. 1827560119 | | Shipping Charges > | 0.00 |
| **Shipping Terms** Prepaid | **Store Number** | | TOTAL INVOICE > | 587.70 |

DUPLICATE

(Rev. 10/97)

**EXHIBIT**
1809
7/9/13   LM

WET0000029

# EXHIBIT 178

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**************************************************

IN RE: CATHODE RAY        Case No. 3:07-CV-5944 SC

TUBE (CRT) ANTITRUST      MDL NO. 1917

LITIGATION,

------------------------------

This Document Relates to:

DIRECT PURCHASER PLAINTIFF ACTION

**************************************************




DEPOSITION OF

WETTSTEIN AND SONS, INC., THROUGH ITS DESIGNATED

REPRESENTATIVE DANIEL J. WETTSTEIN, TAKEN PURSUANT TO

RULE 30(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

on Tuesday, July 9, 2013

Scheduled for 9:00 a.m.




Reported By:  Lori Morrow, RPR, CRR, CLR

1

1    purchase its products directly from a price list like

2    this without negotiation of price or terms.  Is that

3    correct?

4         A    Yes.

5         Q    How often was this sort of price list provided?

6         A    As I said, it -- there could be monthly

7    changes.  There could be 90-day changes.  In the

8    television industry, volatility has remained.  Changes.

9              (Deposition Exhibit Number 1809

10             was marked for identification.)

11   BY MR. HOYING:

12        Q    You've been handed what's been marked as

13   Exhibit 1809.  It's a document produced by Wettstein's in

14   litigation as WET0000029.

15        A    Yes.

16        Q    And it says at the top "Panasonic Consumer

17   Electronics Company."  Do you see that?

18        A    Yes.

19        Q    Do you recognize this as an invoice from

20   Panasonic Consumer Electronics Company?

21        A    Yes.

22        Q    And the "Bill to" on this invoice is General

23   Electric CAF.  Do you see that?

24        A    Yes.  It's GECAF.

25        Q    And what was the relationship of that entity to

209

1    Wettstein's?

2         A    GECAF held the paper.  They were our finance

3    company when we would receive terms.

4         Q    And did you pay a separate financing fee on

5    each order to GECAF?

6         A    When we purchased the product, it was purchased

7    with any financing that was available to us through a

8    finance company.

9         Q    Looking at this invoice, it has a customer

10   product number of CT-20, I think it's G14.

11        A    Uh-huh.

12        Q    Do you recognize that as a CRT product?

13        A    Yes.

14        Q    Do you know what type of CRT product it was?

15        A    A 20-inch TV.

16        Q    And what leads you to the conclusion that this

17   is a CRT product?

18        A    The CT-20.

19        Q    Did all of Panasonic's CRT television product

20   numbers start with a CT, or were you just having a

21   specific recollection of this individual product number?

22        A    The only TV, to my recollection, that Panasonic

23   made at that time was a CRT.

24        Q    Okay.  There is a "Gross Unit Price" listed and

25   a "Net Unit Price."  Do you see that?

                                                          210

1       A    No, sir.  Where is that at?

2       Q    Going across the headings, in the box where we

3   just looked at the customer product number, there's a

4   "Quantity Ordered."

5       A    Three.

6       Q    "Quantity Shipped"?

7       A    Three.

8       Q    And then the next two columns are "Gross Unit

9   Price" and "Net Unit Price"?

10      A    Yes.

11      Q    What's the difference between the gross unit

12  price and the net unit price?

13      A    The net unit price would have been the

14  extension that we would have paid from what I can see

15  from this, I believe.

16      Q    The net unit price would have been net of all

17  discounts received?  Is that what you mean?

18      A    I do not know if it includes this DFI and PDF.

19      Q    What is a PDF?

20      A    Right offhand, I cannot recall.

21      Q    Do you understand it to be a type of discount?

22      A    It appears to be if the -- if it is taken off

23  of the total invoice at the bottom.

24      Q    Okay.  And the rebate DFI, do you understand

25  DFI to stand for deduct from invoice?

                                                        211

1      A    Yes.  Or discount from invoice is what we refer

2  to, yes.

3      Q    What's your understanding of a discount from

4  invoice or deduct from invoice?

5      A    It comes off of the final invoice price.

6      Q    Okay.  And there seems to be a stamp sort of in

7  the middle of that box with some handwriting in it.  Do

8  you see that?

9      A    Yes.

10     Q    Do you recognize that stamp?

11     A    Yes.

12     Q    And what does that stamp represent?

13     A    It would be our stamp.  It shows the purchase

14  order number, the date received, the branch in our

15  computer, which is La Crosse.

16     Q    Do you know what these numbers represent, the

17  $648 and then the negative $60.30?

18         MS. STEINER:  Well, I'll object to your

19         characterization of those two entries as dollar

20         entries.

21  BY MR. HOYING:

22     Q    And I will represent to you that if you add the

23  $60.30 to the total invoice price at the bottom --

24     A    Yes.

25     Q    -- I believe you get the $648, if that helps

                                                              212

1    figure out what those numbers might be.

2        A    (Perusing document.)  (Witness uses a

3    calculator.)

4            It totals the dollar amount which is written up

5    above of 216.

6        Q    The 648 does?

7        A    Yes.

8        Q    Do you recognize this writing?

9        A    Not the writing, but I recognize the initials.

10       Q    And whose initials are those?

11       A    Terry Beeler's.

12       Q    And do you have any understanding of why she's

13   placed this $216 above the 205, what that represents?

14       A    Probably represents the cost before the

15   discounts.  I don't know.

16       Q    Okay.  And do you know which of these costs or

17   unit price figures gets entered into the Tyler system as

18   the cost for the product?

19       A    I would not recall in this particular case, no.

20       Q    At the bottom under "Shipping Terms," it

21   says --

22       A    Yes.

23       Q    -- "prepaid."  Do you see that?

24       A    Yes.

25       Q    What does prepaid mean in this context?

**US Legal Support**
**888-575-3376**

1    A    The freight charges were not billed to

2  Wettstein's directly by the freight company.

3    Q    And would Wettstein's have been charged

4  separately for any freight charges on this order?

5    A    Doesn't appear, but it's an awful small

6  order --

7    Q    And --

8    A    -- unless it's part of a larger order.

9    Q    If Wettstein's wasn't charged separately, that

10  would indicate that the freight charges were paid by the

11  supplier.  Is that correct?

12    A    I guess it depends on how one considers things

13  to be freight.

14    Q    Wettstein's wouldn't be separately charged for

15  the freight in that instance?

16    A    Not in this instance.

17    Q    Are you familiar with a discount that would be

18  described as an MCA?

19    A    Not to my recollection.  M-, as in Mary, -C-A?

20    Q    Yes.

21    A    No, not right offhand.  I can't think of an

22  acronym for that.

23         MR. HOYING:  Will you mark this, please?

24         (Deposition Exhibit Number 1810

25          was marked for identification.)

214

```
1                    REPORTER'S CERTIFICATE

2

3    STATE OF MINNESOTA)
                      )   ss.
4    COUNTY OF HENNEPIN)

5           I hereby certify that I reported the
     deposition of WETTSTEIN AND SONS, INC., THROUGH ITS
6    DESIGNATED REPRESENTATIVE DAN WETTSTEIN, TAKEN
     PURSUANT TO RULE 30(B)(6) OF THE FEDERAL RULES OF
7    CIVIL PROCEDURE on the 9th day of July, 2013, in
     Minneapolis, Minnesota, and that the witness was by
8    me first duly sworn to tell the whole truth;

9           That the testimony was transcribed by me and
     is a true record of the testimony of the witness;
10
            That the cost of the original has been
11   charged to the party who noticed the deposition, and
     that all parties who ordered copies have been
12   charged at the same rate for such copies;

13          That I am not a relative or employee or
     attorney or counsel of any of the parties, or a
14   relative or employee of such attorney or counsel;

15          That I am not financially interested in the
     action and have no contract with the parties,
16   attorneys, or persons with an interest in the action
     that affects or has a substantial tendency to affect
17   my impartiality;

18          That the right to read and sign the
     deposition by the witness was reserved.
19
            WITNESS MY HAND AND SEAL, this 16th day of
20   July, 2013.

21

22

23

24   Lori L. Morrow, RPR, CRR, CLR
     Notary Public, Hennepin County, Minnesota
25   My commission expires:  January 31, 2015
```

                                                    236

# EXHIBIT 179

```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3

 4   In re:  CATHODE RAY TUBE (CRT)        )
     ANTITRUST LITIGATION                  )
 5                                         ) Case No.
                                           ) 07-5944SC
 6                                         ) MDL No. 1917
     _____)
 7

 8

 9

10

11

12            REPORTER'S TRANSCRIPT OF PROCEEDINGS

13

14               Tuesday, March 20, 2012

15

16

17                     Location:

18                       JAMS
              Two Embarcadero Center, Suite 1500
19               San Francisco, CA 94111

20

21

22

23

24

25   Reported By: Donna J. Blum, CSR No. 11133
```

2

BARKLEY
Court Reporters

1  me, and I've forgotten the language.

2          MR. ALLIOTO:  We will see to it that you've got

3  it.

4          HON. CHARLES LEGGE:  I've got it.  It's in my

5  cubicle.  I've got it.  But I wanted to make sure where

6  you were getting that language.  That's from your own

7  complaint?

8          MR. ALLIOTO:  From the most recent operative

9  complaint.  It would have been end user complaint.

10         And that is very important because this group,

11 this direct group has completely different claim.

12 They're not subsumed within our class.  They would have

13 to -- I don't know what would happen, but they would, I

14 assume, would have to realign claims under the state law.

15 And let me just say what the effect of that would be.  It

16 would drastically reduce their case because, as your

17 Honor knows, under the state law not every thing has an

18 indirect purchaser statute.

19         HON. CHARLES LEGGE:  I'm aware of the economic

20 impact on the case.

21         MR. ALLIOTO:  Okay.  Well, that is, I would go

22 so far as to say I don't even know if there would be a

23 case.  But I'll leave that to other --

24         HON. CHARLES LEGGE:  What you're telling me -- I

25 think what you're telling me is that were I to agree with

106

BARKLEY
Court Reporters