Vaughn R Walker
Law Office of Vaughn R Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA  94111
Tel:  (415) 871-2888
Fax:  (415) 871-2890
vrw@judgewalker.com

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE CATHODE RAY TUBE (CRT) ANTITRUST
LITIGATION

This Order Relates To:

Direct Purchaser Plaintiffs v Mitsubishi

MDL No 1917

Case No 14-cv-2058-SC
Master Case No 3:07-cv-05944SC

**ORDER RE DIRECT PURCHASER
PLAINTIFFS' MOTION TO COMPEL
MITSUBISHI TO PROVIDE TESTIMONY
AND OTHER EVIDENCE FROM MR KOJI
MURATA**

Direct Purchaser Plaintiffs ("DPPs") move to compel the Mitsubishi Defendants[1] (collectively, "Mitsubishi") to provide testimony and other evidence sought in the deposition of an employee, Mr Koji Murata.  On December 8-9, 2014, the DPPs' counsel deposed Mr Murata in San Francisco.  By letter brief, DPPs' counsel complains that Mitsubishi's counsel committed multiple discovery violations relating to Mr Murata's deposition, including the following:  (1) improperly halting the deposition to take a break in the middle of a line of questioning on a document (Exhibit 6114) despite the objection of DPPs' counsel; (2) improperly instructing the witness not to answer questions about an attorney-witness conversation during the break, effectively shutting down any meaningful testimony on Exhibit 6114 after the break; (3) refusing to produce and allow examination on documents used to refresh Mr Murata's recollection before his deposition; and (4) asserting that all relevant emails had been provided or had been destroyed despite Mr Murata's testimony that he sent a Mitsubishi business document to Mitsubishi colleagues from his personal email account, that no one had ever asked him to provide emails from this account and that he did not know if that account had ever been searched for documents related to this litigation.  1/30/15 R Alexander Saveri letter brief.

Accordingly, DPPs seek an order compelling Mitsubishi to:  (1) make Mr Murata available for examination to answer any further questions about Exhibit 6114 and his conversation with Mitsubishi's counsel during the break in his deposition; (2) produce documents used to refresh Mr Murata's recollection and allow examination of Mr Murata regarding those documents; and (3) disclose "under oath the material details of its preservation and search of Mr Murata's private email account(s) and to allow further examination of Mr Murata regarding his knowledge thereof."  1/30/15 R Alexander Saveri letter brief at 2.

---

[1] Mitsubishi Electric Corporation ("MELCO"), Mitsubishi Electric US, Inc ("MEUS") and Mitsubishi Electric Visual Solutions America, Inc ("MEVSA").

I.      **Compelling Further Questioning on Exhibit 6114 and the Discussion Between Mr Murata and Mitsubishi's Counsel During the Break**

Mitsubishi responds that "the deposition was not stopped while a question was pending," "the DPPs agreed to break when they could have chosen to persist with their questioning," "Mr Murata provided full and complete answers to the DPPs' questions about Exhibit 6114, none of which were inconsistent, or indicated coaching" and "the DPPs were never prevented from asking follow-up questions about Exhibit 6114."  2/6/15 G Fuentes letter brief at 1.

Having reviewed the transcript excerpts, the undersigned agrees that Mitsubishi's counsel did not stop the deposition while a question was pending.  Instead, it appears that he insisted on stopping over the objection of DPPs' counsel who wanted to finish his line of questioning on Exhibit 6114 before taking a break.  12/9/14 Murata deposition transcript page 144, lines 7-25 (Millen Dec, Ex 2).  Thus, Mitsubishi's assertion that DPPs' counsel "agreed" to take a break does not fairly represent the full record.

Whether Mr Murata provided "full and complete answers" to questions about Exhibit 6114, the undersigned finds that Mr Murata's responses to questions on Exhibit 6114 were notably more circumspect and uninformative after the break.  See Millen Dec, Ex 2 (12/9/14 Murata deposition excerpt).  While the witness originally spoke knowledgeably about the document, after the break he confirmed only that the document stated certain facts and disclaimed any independent knowledge, stating:  "I know absolutely nothing about this."

While Mitsubishi is correct that the DPPs were "never prevented from asking follow up questions about that exhibit," it became quickly apparent that further questioning on Exhibit 6114 would not be fruitful after the break.  The following excerpt provides helpful context.

Q.  Okay.  Could you tell me what you believe the trip request was for?

MR FUENTES:  Object to the form.

1    THE WITNESS:  The meet – the trip – the business trip was for a CRT meeting or

2    meetings.  That's what it was for.

3    BY MR MILLEN:

4    Q.  Where was the destination for the meeting?

5    MR FUENTES:  Can we take a really short break just for a couple of minutes?

6    THE WITNESS:  What the document says, I believe, is SDI in Seoul -- I think that's

7    Samsung SDI – and then also LPD in Hong Kong, which I believe stands for LG Philips Display.

8    MR MILLEN:  I just have a couple more questions on the document.  I'd like to

9    finish before we take a break.

10   MR FUENTES:  Actually, I'd like to break.  It will be really short, and we'll come

11   right back.

12   MR MILLEN:  Okay.

13   * * * [Two breaks were taken with limited examination about the witness'

14   conversation with counsel during the first break.]

15   Q.  Okay.  Mr. Murata, do you see on this document that Mr. Nakanishi had a

16   meeting with Mr. Lee from SDI?

17   MR FUENTES:  Object to the form.

18   THE WITNESS: That's what it says here, yes.

19   BY MR MILLEN:

20   Q.  And do you have any reason to believe that that is not truthful and accurate?

21   A.  I know absolutely nothing about this.

22   Q.  Okay.  And do you see in the document, Mr. Murata, that Mr. Nakanishi also

23   met with Mr. Rene van Haarst from LPD?

24   MR FUENTES:  Object to the form.

25   THE WITNESS: I see that's what it says here.

26   BY MR MILLEN:

27

28   ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI TO PROVIDE TESTIMONY          PAGE **4** OF **11**

Q.  Thank you, sir.  We are done with this document at this time.

Murata Transcript at 144-149 (Millen Dec, Ex 2). ]

The next issue is whether to grant DPPs' motion to compel Mitsubishi to make Mr Murata available to answer questions about the "contents of his conversation with counsel during the break" in the middle of questions on Exhibit 6114.  DPPs assert that counsel's instruction not to answer questions regarding a conversation with counsel during the break was improper.  1/30/15 R Alexander Saveri letter brief at 6; see Murata Transcript 145:8 – 148:23 (Millen Dec, Ex 2).  DPPs cite to *Burrows v Redbud Cmty Hosp Dist*, 187 FRD 606, 613-14 (ND Cal 1998) in which Judge Illston allowed completion of a deposition because counsel coached the witness.

While conceding that the protocols of the Northern District of California prohibit coaching witnesses or suggesting answers, Mitsubishi contends that nothing about Mr Murata's testimony indicates "that he was coached in any way" and that his testimony was entirely consistent because he agreed with what the document stated and "did not avow any personal knowledge about [Exhibit 6114]."  2/6/15 Fuentes letter brief at 2.  Mitsubishi's brief is notable for what it does not assert.  It never states that counsel did not coach or suggest answers to Mr Murata in any way during the break.  Nor does it provide a declaration to that effect.  Instead, Mitsubishi's argument heading states "Because Mr. Murata Was Not Coached To Provide Testimony, The DPPs Are Not Entitled to Re-Depose Mr. Murata About Exhibit 6114 Or His Privileged Conversation With Counsel."  2/6/15 Fuentes letter brief at 2.

Mitsubishi distinguishes the cases cited by DPPs on the ground that they involve "obvious and improper examples of witness coaching," claims that it would be unduly burdensome to require Mr Murata to fly "around the world to answer a handful of questions about an Exhibit he already testified to" and asserts that the DPPs have already exhausted Mr Murata's personal knowledge about Exhibit 6114.  2/6/15 Fuentes letter brief at 3.

Upon review of the briefs and evidence submitted, the undersigned makes the following findings:  (1) defending counsel abruptly insisted on a break during a line of questions on Exhibit 6114, over the objection of DPPs' counsel; (2) after the break, the witness answered questions in a noticeably more circumspect and uninformative way than he had been answering before the break; (3) Mr Murata testified that he had spoken with counsel during the break, but when asked about the nature of his conversation with counsel, followed counsel's instruction not to answer; (4) the parties had agreed in advance not to allow breaks during a question or a line of questions (12/12/14 Millen letter to Fuentes at 2-3 (Millen Dec, Ex 7); 12/19/14 Fuentes letter to Millen at 2 (Millen Dec, Ex 8) (agreeing that no breaks were to be taken during a "line of questions"); and (5) Mitsubishi's letter brief never states that counsel did not suggest answers or coach the witness in any way during the break.

In the Northern District of California as in all federal courts, depositions are to be conducted as if the witness were testifying at trial.  FRCP 30(c).  Courts have ruled that once a deposition begins, counsel should not confer with the witness except to determine whether a privilege should be asserted.  *BNSF Railway Co v San Joaquin Valley Railroad Co*, 2009 WL 3872043 at *3 (ED Cal 2009) (citing cases); see also *In re Stratosphere Corp Securities Litig,* 182 FRD 614, 620-621 (D Nev 1998);  see also 4/25/2014 Judge Donato's Standing Order Regarding Civil Discovery at ¶13 (http://www.cand.uscourts.gov/jdorders) ("Private conferences between deponents and attorneys about the substance of the testimony while the witness is under oath are improper and prohibited, including on breaks during the deposition, except for the sole purpose of determining whether a privilege should be asserted.").

In *In re Stratosphere Corp Securities*, the court condoned counsel speaking to his witness during regularly scheduled deposition recesses, but drew the line at breaks requested by defending counsel:  "If [the break is] requested by the deponent or deponent's counsel, and the interrogating attorney is in the middle of a question, or is following a line of questions which should be completed, the break should be delayed until a question is answered or a line

1    of questions has been given a reasonable time to be pursued."  182 FRD at 621.  During the

2    Murata deposition, Mitsubishi's counsel did not follow this standard procedure and

3    contravened the agreement of counsel earlier in the deposition, to allow completion of a line of

4    questions before taking breaks.  Further, Mitsubishi's counsel did not represent that the

5    conversation with Mr Murata during the break was solely to determine whether a privilege

6    should be asserted, which would have been a permissible ground for counsel to confer with the

7    witness about his testimony during the break.

8            Accordingly, in the interests of justice, the undersigned grants the DPPs' motion

9    to compel Mitsubishi to produce Mr Murata for further examination in the offices of the

10   undersigned in San Francisco on Exhibit 6114 and on whether his conversation with counsel

11   during the break was limited to determining whether the attorney client privilege should be

12   asserted.

13       **II.    Documents Used to Refresh the Witnesses' Recollection Before the Deposition**

14           Mitsubishi opposes the DPPs' motion to compel production of documents used

15   to refresh Mr Murata's recollection in preparation for his deposition on the ground that the

16   selection of documents would reveal protected attorney work product.  Mitsubishi does not

17   contend that any of the documents themselves contained attorney work product since they

18   were all produced earlier to the DPPs.

19           Federal Rule of Evidence 612 provides:  "[I]f a witness uses a writing to refresh

20   memory for the purpose of testifying, either (1) while testifying, or (2) before testifying, if the

21   court in its discretion determines it is necessary in the interests of justice, an adverse party is

22   entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness

23   thereon, and to introduce in evidence those portions which relate to the testimony of the

24   witness."  Some courts have interpreted Rule 612 to allow discovery of documents that a

25   witness reviewed to refresh his recollection and any privilege is waived as to those portions

26   reviewed.  See *United States v 22.80 Acres of Land*, 107 FRD 20, 25 (ND Cal 1985).

27

28

In ruling on such motions to compel, courts must balance the competing interests of ascertaining the facts and maintaining the confidentiality of protected material such as attorney work product. *Id*. Some courts have considered the following factors: (1) whether witness coaching occurred; (2) the type of document, e g, itself attorney work product and (3) whether the request is a fishing expedition. *Server Tech Inc v Am Power Conversion Corp*, 2011 US Dist LEXIS 42980 at *32-33 (citing *Parry v Highlight Indus, Inc*, 125 FRD 449, 452 (WD Mich 1989).

Mitsubishi relies on *Aguinaga v John Morrell & Co*, 112 FRD 671, 683 (D Kan 1986) for the proposition that the selection of documents used to refresh the witness' recollection is protected by the attorney work product doctrine. In *Aguinaga*, the magistrate ruled that the defendant was required to produce all documents reviewed by a witness in preparation for his deposition and granted the plaintiffs' motion to compel. 112 FRD at 675. But the court held that the process of selecting documents for preparing a witness is protected by the attorney work product doctrine. 112 FRD at 683-4. In so ruling, the court explained that Federal Rule of Evidence 612 is a rule of evidence, not discovery, its purpose is to allow an adverse party to access those documents which affect the witness' testimony, but since plaintiffs already possessed the documents, the only purpose for ordering production would be to reveal the attorneys' process of selecting relevant documents. The *Aguinaga* court quoted the Third Circuit decision in *Sporck v Peil*, 759 F2d 312 (3d Cir), cert denied, 575 US 903 (1985): "Proper application of Rule 612 should never implicate an attorney's selection, in preparation for a witness' deposition, of a group of documents he believes critical to a case." 112 FRD at 683.

Absent controlling Ninth Circuit law, the undersigned is guided by district court decisions in the Ninth Circuit, including *United States v 22.80 Acres of Land*, 107 FRD 20 (ND Cal 1985) and *Server Tech v APC*, 2011 WL 1447620 (D Nev 2011). In *22.80 Acres of Land*, use of a document to refresh a witness' recollection was deemed to waive any work product protection,

but even then courts have discretion to determine if the interests of justice require disclosure

of all or only a part of a document that had been used to refresh a witness's recollection.  In

*Server Tech*, the court included an analysis of the *Parry* factors.

Here, the DPPs allege that Mr Murata was coached with respect to Exhibit 6114

and hence they were prevented from ascertaining underlying facts due to instructions not to

answer.  It is unknown whether Exhibit 6114 was one of the documents used to refresh Mr

Murata's recollection.  In any event, the events and circumstances reflected in the transcript

weigh in favor of granting the motion to compel production of documents used to refresh Mr

Murata's recollection in preparation for his deposition.  The documents themselves were not

attorney work product.  While the selection of these documents in preparing Mr Murata to

testify could be attorney work product, this would not constitute the most sensitive of work

product, such as attorney written opinion work product.  Hence, the nature of the documents

used to refresh Mr Murata's recollection weigh only slightly, if at all, against granting the

motion to compel.  On the other hand, the DPPs' request for documents used to refresh the

witness' recollection in deposition preparation does not appear to be a "fishing expedition" but

rather is consistent with an established practice that is routinely observed in this district and

elsewhere.  Furthermore, the events evidenced in the deposition transcript suggest a degree of

attorney intervention and witness guidance inconsistent with appropriate norms.  In light of

these facts, the undersigned concludes that the interest of uncovering the facts outweighs the

need to protect the confidentiality of attorney work product that might be disclosed solely in

the selection of documents used to prepare a witness for deposition.

### III.   Search of Mr Murata's Personal Email Account for Responsive Documents

Mr Murata testified under oath that he:

(1) sent a Mitsubishi document to business colleagues from his personal email

account;

(2) did not know if his personal email account was searched for relevant documents;

(3) was never asked to provide anyone with his e-mails from his personal account;

(4) has used his personal email account for "a long time" and still uses it; and

(5) did not know if "e-mails are automatically deleted from that account."  See

Murata Transcript Vol II at 167:22 – 168:24 (Fuentes Dec, Ex 6).

These facts indicate that Mr Murata's personal email account should have been searched for responsive documents because he used it during the relevant period to send Mitsubishi business documents.  Yet there is no evidence that this account had ever been searched.

On this record, the undersigned finds that Mitsubishi should provide further information regarding its efforts to preserve and search for responsive documents in Mr Murata's personal email account.  If in its review, Mitsubishi determines that it should conduct additional searches if necessary, it should do so.  The DPPs' motion to compel is also granted with respect to requiring Mr Murata to testify about the circumstances of any destruction of or search for relevant emails contained in his personal email account.

## CONCLUSION

The DPPs' motion is **GRANTED**.  Mitsubishi is ordered to:

(1) make Mr Murata available in the undersigned's offices in San Francisco no later than 30 days from the date of this order to testify on

(a) Exhibit 6114,

(b) his conversation with counsel during the break of his prior deposition,

(c) documents used to refresh his recollection for that deposition,

(d) any search for or destruction of relevant emails contained in his personal email account;

(2) produce all documents used to refresh Mr Murata's recollection in preparation for his deposition; and

1    (3) provide further information regarding Mitsubishi's efforts to preserve and

2    search for responsive documents in Mr Murata's personal email account.

3

4  IT IS SO ORDERED.

5

6  Date: May 28, 2015

7                                        _____

8                                              Vaughn R Walker
                                         United States District Judge (Ret)
9

10  The Recommended Order of the Special Master is Accepted and Ordered / Denied / Modified.

11  Date: _____

12                                        _____

13                                              Honorable Samuel Conti
                                         United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI TO PROVIDE TESTIMONY          PAGE 11 OF 11