Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Class Counsel for the*
*Indirect Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH THE PHILIPS, PANASONIC, HITACHI, TOSHIBA AND SAMSUNG SDI DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  July 31, 2015<br>Time: 10:00 a.m.<br>Courtroom: One, 17th Floor<br>Judge:  Honorable Samuel Conti |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

I.      INTRODUCTION ................................................................................1

II.     PROCEDURAL HISTORY ................................................................3

III.    SUMMARY OF SETTLEMENT TERMS .........................................6

        A.      Proposed Settlements ...............................................................6

        B.      Settlement Discussions.............................................................8

        C.      Consideration ...........................................................................9

        D.      Release........................................................................................9

IV.     PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENTS IS IN THE
        BEST INTEREST OF THE MEMBERS OF THIS SETTLEMENT CLASS.......................10

        A.      Class Action Settlement Procedure.........................................10

        B.      Standards For Settlement Approval ........................................10

        C.      The Proposed Settlements Are Within The Range of
                Reasonableness........................................................................13

                1.      Arm's-Length Negotiations.............................................13

                2.      Settlements in Relation to the Plaintiffs' Case..............13

                3.      Sufficiency of Discovery................................................16

                4.      Opinion of Experienced Counsel....................................16

        D.      The Proposed Settlement Class Satisfies Rule 23(a)...................16

                1.      The Class Is So Numerous That Joinder Is Impracticable.............................17

                2.      The Case Involves Questions Of Law And Fact Common To The Class........17

                3.      Plaintiffs' Claims Are Typical Of The Claims Of The Class.........................19

                4.      Plaintiffs Will Fairly And Adequately Represent The Interests Of The Class 20

        E.      The Proposed Settlements Class Satisfies Rule 23(b)(3)............................21

                1.      Common Questions Of Law Or Fact Predominate .........................................21

i

       2.     A Class Action Is Superior To Other Methods Of Adjudication ..................... 23

V.     PROPOSED PLAN OF NOTICE ................................................................ 24

VI.    PROPOSED PLAN OF DISTRIBUTION ................................................... 26

VII.   NOTICE COSTS, LITIGATION EXPENSES AND ATTORNEYS' FEES ........................ 29

VIII.  THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE ................. 30

IX.    CONCLUSION ................................................................................... 30

# TABLE OF AUTHORITIES

**CASES**

*Amchem Prods*. Inc. v. Windsor
   521 U.S. 591(1997).................................................................. 16, 21, 24

*Animal Sci. Prods. Inc. v. China Minmetals Corp.*
   654 F.3d 462 (3d Cir. 2011) ........................................................ 15

*Armstrong v. Davis*
   275 F.3d 849 (9th Cir. 2001) ...................................................... 19

*Attenborough v. Const. and Gen. Bldg. Laborers' Local 79*
   238 F.3d 82 (S.D.N.Y. 2006).................................................... 22

*Blackie v. Barrack*
   524 F.2d 891 (9th Cir. 1975) ...................................................... 17

*Byrd v. Civil Serv. Comm'n of City and County of San Francisco*
   459 U.S. 1217 (1983)................................................................ 11

*Churchill Vill., L.L.C. v. GE*
   361 F.3d 566 (9th Cir. 2004) ...................................................... 11

*Class Plaintiffs v. City of Seattle*
   955 F.2d 1268 (9th Cir. 1992) .................................................... 12

*Comcast Corp. v. Behrend*
   133 S. Ct. 1426 (2013)............................................................. 15

*Estate of Garrison v. Warner Bros., Inc.*
   1996 WL 407849 (C.D. Cal. June 25, 2006) ................................ 22

*Gautreaux v. Pierce*
   690 F.2d 616, 621 n.3 (7th Cir. 1982) ........................................ 11

*Haley v. Medtronic, Inc.*
   169 F.R.D. 643 (C.D. Cal. 1996) .............................................. 17

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1988)...............................................11, 12, 17, 19, 20

*Harris v. Palm Springs Alpine Estates, Inc.*
   329 F.2d 909 (9th Cir. 1964) ...................................................... 17

*Hughes* v. *Microsoft Corp.*
   2001 WL 34089697(W.D. Wash. Mar. 26, 2001) ........................ 13

*In re AOL Time Warner ERISA Litig.*
   2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006)............................ 26

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*
   270 F.R.D. 330 (N.D. Ill. 2010).................................................. 15

iii

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC

*In re Brand Name Prescription Drugs Antitrust Litig.*
   1994 WL 663590 (N.D. Ill. Nov. 18, 1994) .................................................................... 23

*In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*
   2006 WL 891362 (D.N.J. April 4, 2006) ....................................................................... 19

*In re Catfish Antitrust Litig.*
   826 F. Supp. 1019 (N.D. Miss. 1993) ........................................................................... 19

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
   738 F. Supp. 2d 1011 (N.D. Cal. 2010) .......................................................................... 7

*In re Citric Acid Antitrust Litig.*
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) ........................................................................ 26

*In re Citric Acid Antitrust Litig.*
   1996 WL 655791 (N.D. Cal. 1996) ........................................................................... 19, 22

*In re Corrugated Container Antitrust Litig.*
   80 F.R.D. 244 (S.D. Tex. 1978) .................................................................................... 22

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
   2006 WL 1530166 (N.D. Cal. June 5, 2006) ...................................................... 18, 19, 22

*In re IPO*
   471 F.3d 24 (2nd Cir. 2006) ......................................................................................... 22

*In re Linerboard Antitrust Litig.*
   321 F. Supp. 2d 619 (E.D. Pa. 2004) ....................................................................... 10, 13

*In re Lloyds' Am. Trust Fund Litig.*
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ............................................................ 27

*In re Mego Fin. Corp. Sec. Litig.*
   213 F.3d 454 (9th Cir. 2000) ....................................................................................... 13

*In re Mercury Interactive Corp. Securities Litig.*
   618 F.3d 988 (9th Cir. 2010) ....................................................................................... 29

*In re Mid-Atlantic Toyota Antitrust Litig.*
   564 F. Supp. 1379 (D. Md. 1983) ................................................................................ 13

*In re Motorsports Merchandise Antitrust Litig.*
   112 F. Supp. 2d 1329 (N.D. Ga 2000) ......................................................................... 10

*In re Nasdaq Market-Makers Antitrust Litig.*
   176 F.R.D. 99 (S.D.N.Y. 1997) .................................................................................... 11

*In re Panasonic Consumer Electronic Prod. Antitrust Litig.*
   1989 WL 63240 (S.D.N.Y. June 5, 1989) ..................................................................... 11

*In re Pressure Sensitive Labelstock Antitrust Litig.*
   2007 WL 4150666 (M.D. Pa. Nov. 19, 2007) .............................................................. 19

*In re Relafen Antitrust Litig.*
   221 F.R.D 260 (D.Mass. 2004) .................................................................................... 22

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC

*In re Rubber Chemicals Antitrust Litig.*
    232 F.R.D. 346 (N.D. Cal. 2005) ................................................................... 17, 19, 21

*In re Shopping Carts Antitrust Litig.*
    1983 WL 1950 (S.D.N.Y. Nov. 18, 1983) ................................................................ 10

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
    264 F.R.D. 603 (N.D. Cal. 2009) ........................................................................ 22, 23

*In re Sugar Industry Antitrust Litig.*
    1976 WL 1374 (N.D. Cal. May 21, 1976) ................................................................ 21

*In re Tableware Antitrust Litig.*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................... 25

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
    267 F.R.D. 583 (N.D. Cal. 2010), *amended in part*, 2011 WL 3268649 (N.D. Cal. July 28, 2011)22

*In re Visa Check/MasterMoney Antitrust Litig.*
    280 F.3d 124 (2d Cir. 2001) ................................................................................ 22, 23

*In re Vitamins Antitrust Litig.*
    2001 WL 856292 (D.D.C. July 25, 2001) ................................................................ 11

*In re Vitamins Antitrust Litig.*
    2000 WL 1737867 (D.D.C. Mar. 31, 2000) .............................................................. 27

*Johnson v. California*
    125 S.Ct.1141 (2005) ......................................................................................... 19

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978) ................................................................................ 20

*Lotes Co., Ltd. v. Hon Hai Precision Industry Co.*
    753 F.3d 395 (2d Cir. 2014) ................................................................................. 15

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*
    688 F.2d 615 (9th Cir. 1982) ................................................................................ 11

*Minn-Chem Inc. v. Agrium Inc.*
    683 F.3d 845 (7th Cir. 2012) ................................................................................ 15

*Motorola Mobility LLC v. AU Optronics Corp*
    775 F.3d 816 (7th Cir. 2015) ................................................................................ 15

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................... 16

*Slaven v. BP America, Inc.*
    190 F.R.D. 649 (C.D. Cal. 2000) ........................................................................... 17

*Torrisi v. Tucson Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993) .................................................................................. 26

v

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC

*Thomas & Thomas Rodmakers Inc. v. Newport Adhesives & Composites, Inc.*
    209 F.R.D 159 (C.D. Cal. 2002) ............................................................................ 21

*U.S. v. Hsiung*
    778 F.3d 738 (9th Cir. 2015) .................................................................................. 15

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) .................................................................................. 23

*Van Bronkhorst v. Safeco Corp.*
    529 F.2d 943 (9th Cir. 2004) .................................................................................. 10

*Wal-Mart Stores Inc. v. Dukes*
    131 S. Ct. 2541(2011) ............................................................................................ 15

*Waste Management Holdings, Inc. v. Mowbray*
    208 F.3d at 288 (1st Cir. 2000) .............................................................................. 23

*Williams v. Sinclair*
    529 U.S. 1383 (9th Cir. 1975) ................................................................................ 23

**FEDERAL STATUTES**

15 U.S.C. § 1 ............................................................................................................... 18

15 U.S.C. § 6a ............................................................................................................. 15

28 U.S.C. §1715 ......................................................................................................... 26

**FEDERAL RULES**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

    Rule 23(a)(1) ......................................................................................................... 17

    Rule 23(a)(2) ......................................................................................................... 17

    Rule 23(a)(3) ......................................................................................................... 19

    Rule 23(b)(3) ............................................................................................... 17, 21, 23

    Rule 23(c)(2)(B) .................................................................................................... 24

    Rule 23(e) ..................................................................................................... 1, 10, 24

    Rule 23(f) ................................................................................................................. 5

**OTHER AUTHORITIES**

4 Newberg on Class Actions

    § 8.32 ..................................................................................................................... 24

    §§ 11.22, *et seq.* ................................................................................................... 10

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC

§ 11.25.................................................................................................................. 12

§ 11.41.................................................................................................................. 13

§ 11.53.................................................................................................................. 24

Wright, Miller & Kane, Federal Practice and Procedure: Civil Procedure

§ 1781 (3d. ed. 2004) ......................................................................................... 23

Manual for Complex Litigation (Fourth)

§ 21.62 ................................................................................................................ 12

§ 21.632 ........................................................................................................ 12, 16

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 31, 2015 at 10:00 a.m., before the Honorable Samuel Conti, United States District Court for the Northern District of California, 450 Golden Gate Ave., Courtroom 1, 17th Floor, San Francisco, California, the Indirect Purchaser Plaintiffs ("Plaintiffs") will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1.   Certifying a Settlement Class;

2.   Preliminarily approving the class action settlements with the Philips, Panasonic, Hitachi, Toshiba and Samsung SDI Defendants ("Proposed Settlements");

3.   Granting preliminary approval to the proposed plan of distribution and proposed claim form;

4.   Approving the proposed notice plan and directing distribution of notice of the Settlements to the Class, and providing Class Members with opportunity to opt out of or object to the Proposed Settlements;

5.   Scheduling final approval of the Proposed Settlements; and

6.   Setting a schedule for any motions for an award of attorney's fees, litigation expenses and incentive awards for the named plaintiffs.

The grounds for this motion are that the Proposed Settlements are within the range of reasonableness, and the proposed Settlement Class satisfies the certification requirements for such Settlements.  This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying Declarations of Mario N. Alioto and Joseph Fisher in support of the motion, and any further papers filed in support of this motion, the argument of counsel, and all pleadings and records on file in this matter.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Indirect Purchaser Plaintiffs ("Plaintiffs") seek preliminary approval under Rule 23 of the Federal Rules of Civil Procedure of class action settlements with the Philips, Panasonic, Hitachi, Toshiba and Samsung SDI Defendants (the "Proposed Settlements").[1] (Alioto Decl. ¶ 2.)

The Proposed Settlements resolve all federal and state-law claims brought by Plaintiffs against the Settling Defendants and obligate the Settling Defendants to pay a total of Five Hundred and Twenty Eight Million Dollars ($528,000,000).  If approved, these five Proposed Settlements – along with the two previously-approved settlements[2] – result in the Defendants making total settlement payments of Five Hundred and Sixty Three Million Dollars ($563,000,000) to indirect purchasers of Cathode Ray Tubes ("CRTs") and products containing CRTs, such as televisions and computer monitors (hereinafter "CRT Products"), as summarized in the chart below.

| DEFENDANT | TOTAL SETTLEMENT |
|---|---|
| Philips<br>Panasonic<br>Hitachi<br>Toshiba<br>Samsung SDI | $ 175,000,000<br>$   70,000,000<br>$   28,000,000<br>$   30,000,000<br>$ 225,000,000 |
| Total of five<br>currently proposed settlements | $ 528,000,000 |
| Chunghwa<br>LG | $   10,000,000<br>$   25,000,000 |
| Total of two<br>previously approved settlements | $   35,000,000 |
| Grand total of all settlements | $ 563,000,000[3] |

---

[1] The Proposed Settlements are attached as Exhibits A through E to the accompanying Declaration of Mario N. Alioto In Support of Motion for Preliminary Approval of Class Action Settlements ("Alioto Decl.").  The Philips, Panasonic, Hitachi, Toshiba and Samsung SDI Defendants – as identified in each of the Proposed Settlements and inclusive of named related entities – are collectively referred to herein as the "Settling Defendants."

[2] The Court granted final approval to settlements with Chunghwa Picture Tubes Ltd. on March 22, 2012 (Dkt. No. 1105) and the LG Electronics Defendants on April 18, 2014 (Dkt. No. 2542).

[3] The total of all Settlements plus interest is the "Settlement Fund."

The Proposed Settlements are contingent upon the certification by this Court of a Settlement Class (which consists of the classes described hereafter), and Plaintiffs hereby seek provisional certification of that Class.  The Settlement Class includes a "Nationwide Class" of indirect purchasers of CRT Products seeking injunctive relief, and "Statewide Damages Classes" of indirect purchasers of CRT Products seeking money damages under the laws of 21 states and the District of Columbia (collectively the "Settlement Class").

The issue at the preliminary approval stage is not whether a proposed settlement is fair, reasonable and adequate, but rather, whether it is within the range of possible approval to justify publishing notice of the settlement to the class members and scheduling final approval proceedings. The Proposed Settlements here were reached after extensive arm's-length negotiations between experienced and informed counsel, and easily meet the standards for preliminary approval.

The Plaintiffs propose to compensate members of the Statewide Damages Classes according to the proposed plan of distribution under which qualifying claimants are eligible to receive a distribution from the Settlement Fund based on the number and type of CRT Products purchased, as documented in the proposed claim form.

Notice to Class Members will be accomplished by a comprehensive notice program designed by Joseph Fisher of The Notice Company.  *See* Declaration of Joseph Fisher Re: Notice ("Fisher Decl.").  As further described herein, the extensive notice program includes direct mail and email notice to millions of corporations and individual consumers, as well as published notice in newspapers, magazines and online.  (Alioto Decl. ¶ 38; Fisher Decl. ¶¶ 8-31.)  The notice also directs interested persons to the website, www.CRTclaims.com, where they can find additional, detailed information.  (Alioto Decl. ¶ 39; Fisher Decl. ¶ 25.)  The proposed notice program is designed to provide the best notice practicable under the circumstances, and comports with all the requirements of due process and Rule 23.

For these reasons, the Plaintiffs submit that they have met all of the requirements for preliminary approval, and respectfully request that the Court enter an order: (i) certifying the Settlement Class; (ii) granting preliminary approval of the Proposed Settlements; (iii) preliminarily approving the proposed plan of distribution and proposed claim form; (iv) approving the notice

1   program as complying with due process and Rule 23; (v) setting a schedule for a final approval

2   hearing; and (vi) establishing a schedule for hearing any motions for an award of attorneys' fees,

3   litigation expenses, and incentive awards for the named plaintiffs.

4   **II.**   **PROCEDURAL HISTORY**

5           This multidistrict litigation arises from an alleged international conspiracy to fix the prices of

6   CRTs worldwide, specifically including the United States, during the period March 1, 1995 through

7   November 25, 2007.  Plaintiffs filed their original complaints in various federal courts throughout

8   the country in late 2007 and early 2008.  The Judicial Panel on Multidistrict Litigation transferred all

9   related indirect purchaser actions to the Northern District of California, where they were

10  consolidated with similar class actions by direct purchaser plaintiffs.  (Alioto Decl. ¶ 3.)  On May 9,

11  2008 the Court appointed Mario N. Alioto of Trump, Alioto, Trump & Prescott, LLP as Interim

12  Lead Counsel.  (Dkt. No. 47; Alioto Decl. ¶ 4.)

13          The United States Department of Justice ("DOJ") intervened early in the case and requested a

14  stay of all merits discovery pending its criminal investigation.  The parties negotiated a Stipulated

15  Order with the DOJ that provided for a stay of all merits discovery until September 12, 2009.  (Dkt.

16  No. 379.)  Pursuant to the DOJ's requests, this stay was extended on several occasions.  (Dkt. Nos.

17  425, 590, 798; Alioto Decl. ¶ 5.)

18          Plaintiffs filed their consolidated amended complaint on March 16, 2009. (Dkt. No. 437.)

19  The Defendants filed motions to dismiss that were denied in part and granted in part, with leave to

20  amend certain state law claims.  (Dkt. No. 665; Alioto Decl. ¶ 6.)  On May 10, 2010, Plaintiffs filed

21  their Second Consolidated Amended Complaint.  (Dkt. No. 716.)  Defendants filed a joint motion to

22  dismiss on various state-law grounds that was denied in part and granted in part, with leave to amend

23  certain state law claims.  (Dkt. No. 799; Alioto Decl. ¶ 7.)  On December 11, 2010, Plaintiffs filed

24  their Third Consolidated Amended Complaint.  (Dkt. No. 827.)  Defendants answered Plaintiffs'

25  complaint on January 26, 2011.  (Alioto Decl. ¶ 8.)

26          On April 20, 2011, Defendants and Plaintiffs filed a stipulation providing that Plaintiffs

27  would withdraw the finished-CRT-products-conspiracy allegations from their complaint. (Dkt. No.

28  895.)  The Court entered an order to that effect on April 22, 2011. (Dkt. No. 904; Alioto Decl. ¶ 9.)

1    On April 18, 2009, Plaintiffs entered into a settlement with Chunghwa Picture Tubes, Ltd.,

2 for $10,000,000 cash. The Court granted Preliminary Approval on August 9, 2011 (Dkt. No. 992)

3 and Final Approval on March 22, 2012 (Dkt. No. 1105).  (Alioto Decl. ¶ 10).

4    The DOJ's stay of merits discovery was partially lifted on March 8, 2010 and Defendants

5 began their rolling production of documents.  Most of the Defendant groups comprise multiple

6 entities located around the world.  Because many of the Defendants are no longer involved in the

7 CRT business, Plaintiffs had to travel to several storage facilities both here and abroad to manually

8 search Defendants' paper records for relevant documents, and had to employ technical experts to

9 restore backup tapes and servers containing relevant information.  Plaintiffs even subpoenaed

10 documents and data from the U.S. and Dutch bankruptcy trustees of a former manufacturer of CRTs,

11 LG.Philips Displays.  In addition, Plaintiffs subpoenaed and negotiated productions of documents

12 and data from over 50 third party retailers, distributors and CRT television and monitor

13 manufacturers.  (*Id.* ¶ 11.)

14    Defendants have produced millions of documents and voluminous data sets, which were

15 loaded into a web-based electronic database and reviewed and analyzed by a team of over 50

16 attorneys, including attorneys fluent in Korean, Chinese, Japanese and Dutch.  In order to use these

17 foreign language documents in the litigation, Plaintiffs have obtained certified translations and

18 addressed Defendants' objections to the certified translations.  Plaintiffs also retained economists to

19 review and analyze the documents and data, and prepare expert reports in support of class

20 certification, liability and damages.  (*Id.* ¶ 12.)

21    Plaintiffs filed their motion for class certification, along with the Declaration of Janet S.

22 Netz, Ph.D, on October 1, 2012. (Dkt. No. 1388.) The complete record on class certification totaled

23 approximately 6,000 pages.  Interim Special Master Martin Quinn held a hearing on the motion and

24 recommended that the Court grant Plaintiffs' motion for class certification and deny Defendants'

25 motion to strike the expert report of Dr. Netz.  (Dkt. Nos. 1742 and 1743.)  On September 24, 2013,

26 the Honorable Samuel Conti adopted the Special Master's Reports and Recommendations and

27 certified 22 state-wide classes of indirect purchasers of CRTs.  (Dkt. No. 1950.)  The Ninth Circuit

28 Court of Appeals denied the Defendants' petition to appeal the District Court's order pursuant to

4

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC

1   Fed. R. Civ. P. 23(f).  (Dkt. No. 2283; Alioto Decl. ¶ 13.)

2   　　　On May 18, 2013, Plaintiffs entered into a settlement with LG Electronics, Inc. and LG

3   Electronics USA, Inc., for $25,000,000 cash.  The Court granted Preliminary Approval of this

4   settlement on December 9, 2013 (Dkt. No. 2248), and Final Approval on April 18, 2014 (Dkt. No.

5   2542). (Alioto Decl. ¶ 14.)

6   　　　Merits depositions began in December 2012.  Plaintiffs have taken and defended a substantial

7   number of depositions in this case.  Each of the 24 class representatives was deposed by Defendants,

8   and Plaintiffs have taken over 30 depositions of Defendants under F.R.C.P. 30(b)(6), as well as over

9   70 merits depositions of defense witnesses.  Several of these depositions took place abroad in

10   Taiwan, Korea, Mexico and England.  There have also been numerous other depositions of expert

11   witnesses, third party resellers of finished products containing CRTs, and witnesses for the Direct

12   Action Plaintiffs ("DAPs").[4]  Plaintiffs' expert economist, Dr. Netz, was deposed five times during

13   the course of the litigation.  (*Id.* ¶ 15.)

14   　　　In the last year, Plaintiffs have been preparing for trial, which originally was scheduled to

15   begin on March 9, 2015.[5]  The parties exchanged expert reports on liability and damages starting in

16   April 2014 and continuing through September 2014.  These included opening, opposition, rebuttal

17   and sur-rebuttal reports from 17 expert witnesses, all of whom were deposed, often multiple times,

18   regarding their reports.  (Alioto Decl. ¶ 16.)  Merits discovery closed on September 5, 2014, but

19   some discovery continued after the September 5 discovery cut-off.  In particular, several depositions

20   were scheduled after September 5 and contention interrogatories propounded by all parties led to

21   Plaintiffs filing several motions to compel further responses from certain defendants.  (*Id.* ¶ 17.)  On

22   November 7, 2014, the Defendants filed 36 motions for summary judgment.  Eleven of these were

23   directed specifically at Plaintiffs' claims.  These motions were fully briefed before the Proposed

24   Settlements were executed.  The motions have been withdrawn in light of the Settlements. (*Id.* ¶ 18.)

25   _____

26   [4] The DAPs are another group of plaintiffs in this case that purchased CRT Products directly from
    defendants.  They include computer and television manufacturers such as Dell and Sharp, and

27   retailers such as Target, Best Buy and Costco. The DAPs joined this litigation between 2011 and
    2014.  Plaintiffs have worked closely with the DAPs to coordinate and minimize duplication of

28   effort.

    [5] By Order dated February 9, 2015, the Court vacated the trial date.  (Dkt. No. 3515.)

1   Most recently, the parties exchanged trial exhibit lists, witness lists, deposition designations,

2   jury instructions and special verdict forms, and filed 64 motions *in limine* and other pretrial motions.

3   These motions were briefed in varying degrees before the Proposed Settlements were executed.

4   Pursuant to the Proposed Settlements, the Settling Defendants have provisionally withdrawn all of

5   the motions pending against Plaintiffs. (Dkt. Nos. 3801, 3802, 3812, 3851, 3852; Alioto Decl. ¶ 19.)

6   ## III.   SUMMARY OF SETTLEMENT TERMS

7   ### A.   Proposed Settlements

8   The Proposed Settlements resolve all claims against Settling Defendants for their alleged part

9   in the alleged global conspiracy to fix prices of CRTs.  (Alioto Decl. ¶ 20.)

10   The proposed Settlement Class is defined as:

11    NATIONWIDE CLASS:

12   All persons and or entities who or which indirectly purchased in the United States for
     their own use and not for resale, CRT Products[6] manufactured and/or sold by the
13   Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time
     during the period from March 1, 1995 through November 25, 2007.  Specifically
14   excluded from this Class are claims on behalf of Illinois persons (as defined by 740
     ILCS 10/4) for purposes of claims under 740 Ill. Comp. Stat § 10/7(2), Oregon
15   natural persons (as defined by ORS 646.705 (2)) for purposes of claims under ORS §
     646.775(1), and Washington persons (as defined by RCW 19.86.080) for purposes of
16   claims under RCW 19.86.080 (1).  Also specifically excluded from this Class are the
     Defendants; the officers, directors or employees of any Defendant; any entity in
17   which any Defendant has a controlling interest; and, any affiliate, legal
     representative, heir or assign of any Defendant.  Also excluded are named co-
18   conspirators, any federal, state or local government entities, any judicial officer
     presiding over this action and the members of his/her immediate family and judicial
19   staff, and any juror assigned to this action.[7]

20

21

22

23

24

---

25   [6] CRT Products are defined in the Settlement Agreements to mean Cathode Ray Tubes of any type
26   (e.g. color display tubes, color picture tubes and monochrome display tubes) and products containing
     Cathode Ray Tubes.  Color Display Tubes ("CDTs") were used to manufacture computer monitors.
27   Color Picture Tubes ("CPTs") were used to manufacture televisions.

28   [7] Residents of Illinois, Oregon and Washington are excluded from the Nationwide Class because the
     Attorneys General of those states are suing the Defendants on behalf of residents of those states.

STATEWIDE DAMAGES CLASSES:[8]

All persons and or entities in Arizona, California, District of Columbia, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin who or which indirectly purchased for their own use and not for resale, CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time during the period from March 1, 1995 through November 25, 2007.

All persons and entities in Hawaii who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time from June 25, 2002 through November 25, 2007.

All persons and entities in Nebraska who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time from July 20, 2002 through November 25, 2007.

All persons and entities in Nevada who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time from February 4, 1999 through November 25, 2007.

Specifically excluded from these Classes are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are named co-conspirators, any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.[9]

---

[8] All of the Statewide Damages Classes are the same except that three states, Hawaii, Nebraska and Nevada, have slightly shorter damages periods. This is because the statutes allowing indirect purchasers to bring an antitrust claim for damages in Hawaii, Nebraska and Nevada were enacted after March 1, 1995, the beginning of the alleged Class Period. This Court dismissed claims based on purchases made prior to the enactment of these statutes on the grounds that the state legislatures did not intend the statutes to apply retroactively. *In Re: Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F.Supp.2d 1011, 1025-26 (N.D. Cal. 2010).

[9] The proposed Settlement Class is defined according to the class alleged in Plaintiffs' operative complaint (*see* Fourth Consolidated Amended Complaint, Dkt. No. 1526) because Settling Defendants required a complete release of all allegations made against them in this litigation. (Alioto Decl. ¶ 21.) The Settlement Class is slightly broader than the class certified by the Court ("Certified Class") in the following respects: (1) the Certified Class did not include the nationwide, injunctive relief class; (2) the Certified Class requires that the Statewide Damages Class Members be residents of the respective States, whereas the Settlement Class requires only that the purchase was made in one of the States; and (3) the Certified Class is limited to televisions and monitors containing CRTs, whereas the Settlement Class includes CRTs, televisions and monitors containing CRTs, and other products containing CRTs. The broader class definition provides complete peace to Settling Defendants and will allow more purchasers of CRT Products to receive compensation. (Alioto Decl. ¶ 22.)

7

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC

**B.      Settlement Discussions**

The settlement negotiations with Settling Defendants were hard-fought and at times contentious.  Each settlement was reached only after extensive, arm's-length negotiations between counsel for the Settling Defendant and Plaintiffs.  The parties were assisted by the Honorable Vaughn R. Walker (Ret.), former Chief Judge of the Northern District of California, and the Honorable Fern Smith (Ret.), former Judge of the Northern District of California. (*Id.* ¶ 23.)

**1.      Philips**

Settlement discussions with Philips began many months prior to reaching an agreement in principle.  Judge Walker assisted the parties in reaching the final settlement, which was executed on January 26, 2015. (*Id.* ¶ 24.)

**2.      Panasonic**

The parties began negotiations more than six months prior to reaching a settlement.  Judge Walker assisted the parties in reaching a settlement during the latter part of 2014. The final agreement was executed on January 28, 2015. (*Id.* ¶ 25.)

**3.      Hitachi**

Plaintiffs and Hitachi engaged in mediation before Judge Walker on March 5, 2014.  The parties continued to discuss settlement with Judge Walker's assistance for the remainder of 2014 and executed the settlement on February 19, 2015. (*Id.* ¶ 26.)

**4.      Toshiba**

The parties' initial settlement efforts continued for a number of months in 2014 but were unsuccessful, as was their mediation session on February 3, 2015 with Judge Fern Smith.  Judge Smith continued her mediation efforts in the weeks that followed and, with her assistance, the parties were able to reach a settlement.  The final settlement was executed on March 6, 2015. (*Id.* ¶ 27.)

**5.      Samsung SDI**

An agreement in principle was reached on January 23, 2015 after two full days of mediation with Judge Walker.  The parties continued to negotiate the terms of the settlement with Judge Walker's assistance for two months thereafter.  The final settlement was executed on April 1, 2015. (*Id.* ¶ 28.)

**C.      Consideration**

      **1.      Cash**

Under the Proposed Settlements, the Settling Defendants have paid a total of Five Hundred and Twenty Eight Million Dollars ($528,000,000) in cash to settle all indirect purchaser claims against them.[10]   The Settlement Amounts have been deposited into an escrow account and have been invested in United States Treasury bills and other instruments insured or guaranteed by the full faith and credit of the United States.   If the Settlements are finally approved, any interest earned thereon (together with the Settlement Amounts) will become part of the Settlement Fund. (*Id.* ¶¶ 29-30.)

      **2.      Cooperation**

In addition to monetary consideration, all of the Proposed Settlements contain cooperation provisions that require Settling Defendants to provide specified cooperation to Plaintiffs in the prosecution of any continuing litigation.   The cooperation provisions are material and valuable terms of the Settlements.   They enhanced the settlement prospects with the remaining defendants because they obligated Settling Defendants, to varying degrees, to provide cooperation to the Plaintiffs in prosecuting the remaining Defendants, including authentication of documents, producing witnesses for interviews, depositions and/or trial, and providing other assistance.[11] (Alioto Decl. ¶ 31.)

**D.      Release**

Plaintiffs and class members will release all federal and state-law claims against a Settling Defendant whose settlement becomes final, "concerning the manufacture, supply, distribution, sales or pricing of CRT Products . . . ."[12]   The release does not include claims for product defect, personal injury or breach of contract.[13]   (Alioto Decl. ¶ 32.)

---

[10] *See* Alioto Decl. Ex. A (Philips Settlement Agreement), ¶ 6 ($175,000,000 cash payment); Ex. B (Panasonic Settlement Agreement), ¶ 6 ($70,000,000 cash payment); Ex. C (Hitachi Settlement Agreement), ¶ 6 ($28,000,000 cash payment); Ex. D (Toshiba Settlement Agreement), ¶ 6 ($30,000,000 cash payment); and Ex. E (Samsung SDI Settlement Agreement), ¶ 6 ($225,000,000 cash payment) (together referred to herein as the "Settlement Amounts").

[11] *See* Settlement Agreements, Alioto Decl. Exs. A-E, ¶¶ 23- 24.

[12] *Id.,* Exs. A-E at ¶¶ 13-14.

[13] *Id.,* Exs. A-E at ¶ 15.

9

## IV. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENTS IS IN THE BEST INTEREST OF THE MEMBERS OF THIS SETTLEMENT CLASS

### A. Class Action Settlement Procedure

A class action may not be dismissed, compromised, or settled without the express approval of the Court. Judicial decisions under Rule 23(e) have led to a well-defined procedure and specific criteria for approval of class action settlements, which are:

1. Certification of a settlement class and preliminary approval of the proposed settlement;

2. Dissemination of notice of the settlement to all affected class members; and

3. A formal fairness hearing, (called the "Final Approval Hearing"), at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement.[14]

This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

Plaintiffs respectfully request that this Court take the first step in the settlement approval process and certify the proposed Settlement Class and preliminarily approve the Proposed Settlements.

### B. Standards for Settlement Approval

It is well established that there is an overriding public interest in settling litigation, particularly complex multi-party litigation.[15] Courts have particularly recognized that compromise is favored for antitrust litigation—which is notoriously difficult and unpredictable.[16]

---

[14] *See* 4 Newberg on Class Actions §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*") (describing class action settlement procedure).

[15] *See, e.g., Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 2004) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.").

[16] *See, e.g., In re Motorsports Merchandise Antitrust Litig.*, 112 F.Supp.2d 1329, 1337 (N.D. Ga. 2000) ("An antitrust class action is arguably the most complex action to prosecute. . . .   The legal and factual issues involved are always numerous and uncertain in outcome.")*; In re Shopping Carts Antitrust Litig.*, No. MDL 451-CLB, M-21-29, 1983 WL 1950, at *7-8 (S.D.N.Y. Nov. 18, 1983) (noting that "... antitrust price fixing actions are generally complex, expensive and lengthy"); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004) (same).

1    Courts generally apply a two-step approach to the settlement approval process in class

2    proceedings.[17]  In the first step, usually called "preliminary approval," the court reviews the

3    proposed settlement for obvious deficiencies.  The grant of preliminary approval then triggers a

4    notice and claim period during which the parties make reasonable efforts to notify all potential

5    beneficiaries of the settlement pursuant to a notice process approved by the court.  *Id.*  Preliminary

6    approval is distinct from the second step in the process–a fairness hearing and determination of

7    "final approval."

8    Preliminary approval requires a court simply to find that the proposed settlement fits "within

9    the *range* of possible approval" and should be given further consideration.[18]  Preliminary approval of

10   a proposed class action settlement is appropriate "if the preliminary evaluation of the proposed

11   settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as

12   unduly preferential treatment of class representatives or of segments of the class, or excessive

13   compensation for attorneys and appears to fall within the range of possible approval."[19]

14   Preliminary approval is intended to "ascertain whether there is any reason to notify class members of

15   the proposed settlement and to proceed with a fairness hearing."[20]  In contrast, the purpose of the

16   final approval fairness hearing is to determine whether the settlement is fair, reasonable and

17   adequate after notice has been given to the class.

18   The approval of a proposed settlement of a class action is a matter of discretion for the trial

19   court.[21]  In exercising that discretion, however, the Court should recognize that as a matter of sound

20   policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not

21   be turned into a trial or rehearsal for trial on the merits."[22]  Furthermore, courts must give "proper

22   

23   [17] *In re Panasonic Consumer Electronic Prod. Antitrust Litig.*, No. 89 Civ. 0368 (SWK), 1989 WL
     63240, at *1 (S.D.N.Y. June 5, 1989).

24   [18] *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (emphasis added).

25   [19] *In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 2001WL 856292, at *4 (D.D.C. July 25, 2001);
     *see also In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

26   [20] *Pierce*, 690 F.2d at 621; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

27   [21] *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).

28   [22] *Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625
     (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n of City and County of San
     Francisco*, 459 U.S. 1217 (1983).

1  deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a

2  private consensual agreement negotiated between the parties to a lawsuit must be limited to the

3  extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

4  overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole,

5  is fair, reasonable and adequate to all concerned."[23]

6        To grant preliminary approval of these class action Settlements, the Court need only find that

7  the Settlements fall within "the range of reasonableness."[24]  The Manual for Complex Litigation

8  (Fourth) § 21.632 (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial

9  evaluation" of the fairness of the proposed settlement made by the court on the basis of written

10  submissions and informal presentation from the settling parties.[25]  The *Manual* summarizes the

11  preliminary approval criteria as follows:

> Fairness calls for a comparative analysis of the treatment of the class members *vis-à-vis* each other and *vis-à-vis* similar individuals with similar claims who are not in the class.  Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims.  Adequacy of the settlement involves a comparison of the relief granted to what class members might have obtained without using the class action process.[26]

17  A proposed settlement may be finally approved by the trial court if it is determined to be

18  "fundamentally fair, adequate, and reasonable."[27]  While consideration of the requirements for final

19  approval is unnecessary at this stage, all of the relevant factors weigh in favor of the Settlements

20  proposed here.  As shown below, the Proposed Settlements are fair, reasonable and adequate.

21  Therefore, the Court should allow notice of the Proposed Settlements to be disseminated to the

22  Class.

23  //

---

25  [23] *Hanlon*, 150 F.3d at 1027 (quotations omitted).

26  [24] *Newberg* § 11.25.

27  [25] *Manual* § 21.632.

   [26] *Manual* § 21.62.

28  [27] *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

12

**C.  The Proposed Settlements Are Within The Range of Reasonableness**

All of the relevant factors heavily favor approval of the Proposed Settlements.  In assessing whether a proposed settlement meets the standard for preliminary approval, the courts have identified the primary factors that should be considered: (1) whether the settlement is a result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of plaintiff's case; (3) whether sufficient discovery had been conducted at the time of settlement to evaluate the case; and (4) the opinion of experienced counsel.[28]  Each of these factors weighs in favor of granting preliminary approval.

**1.  Arm's-Length Negotiation**

Any settlement is entitled to an initial presumption of fairness where it is the result of arm's-length negotiations among experienced counsel.[29]  Here, the Proposed Settlements occurred after more than seven years of litigation and after the case was fully developed for trial.  The Settlements were reached after months of hard-fought and, at times, contentious negotiations, including multi-day mediations before two retired Judges of this Court.  (Alioto Decl. ¶¶ 23-28.)  The Settling Defendants were represented by the highest caliber counsel with years of experience and success in defending antitrust and class action claims.  The Plaintiffs were represented by highly-experienced counsel who engaged in extensive discovery and trial preparation.  All parties were preparing for trial when the parties reached these five Settlements.  Thus, there is no dispute that the Settlements were reached by counsel with extensive knowledge of the strengths and weaknesses of the case.

**2.  Settlements in Relation To the Plaintiffs' Case**

The payments under the Proposed Settlements, combined with the payments under the previously-approved Settlements, total $563,000,000.  This result eclipses most settlements approved in other price-fixing cases.[30]  Indeed, in the context of indirect purchaser price-fixing

---

[28] *In re Mid-Atlantic Toyota Antitrust Litig.,* 564 F. Supp. 1379, 1383-1384 (D. Md. 1983); *see also In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir. 2000).

[29] *Newberg* § 11.41; *Hughes* v. *Microsoft Corp.,* No. C98-1646C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001).

[30] *See In re Linerboard,* 321 F. Supp. 2d 619 at 624.  *See also* American Antitrust Institute Working Paper No. 10-03, *Indirect Purchaser Class Action Settlements,* Patrick E. Cafferty (2010).

1   cases, Plaintiffs believe the total settlement amount here is second only to the *LCD* litigation, where

2   the conspiracy started more recently (i.e., 2001), most of the defendants had pled guilty to violations

3   of the Sherman Act and admitted that their conduct had an impact in the United States, and the U.S.

4   DOJ's criminal fines totaled $894 million.  Here, the conspiracy period started 20 years ago (i.e.,

5   1995), only one defendant pled guilty to fixing prices of one type of CRT (Color Display Tubes used

6   in monitors) and only for sales to certain customers, and the DOJ's single criminal fine of $32

7   million amounted to less than 3.5 percent of the fines made in connection with LCD conspiracy.

8   (Alioto Decl. ¶ 33.)

9           The value of these Settlements must also be assessed in light of the relevant damages studies

10  of Plaintiffs' and Defendants' experts.  The defense experts opined that Plaintiffs suffered little or no

11  damages as a result of the Defendants' alleged anticompetitive activity.  Throughout this litigation,

12  the Defendants have maintained that the alleged conspiracy was ineffective and unsuccessful, and

13  that Plaintiffs would be incapable of "linking" any allegedly agreed-upon price increases for CRTs

14  to allegedly increased prices of CRT Products purchased by class members.  In contrast, Plaintiffs'

15  expert opined that damages were significant and that alleged anticompetitive price increase of

16  CRTs was passed-on to class members.[31]  The Settlements reflect a compromise of these positions

17  that clearly falls within the "range of reasonableness."

18          Additionally, the risks at trial (and on appeal) for the Plaintiffs were significant and support

19  the reasonableness of the Proposed Settlements.  The Defendants mounted major attacks on the

20  Plaintiffs' evidence in eleven summary judgment motions and other pretrial motions.  For example,

21  Defendants contested Plaintiffs' evidence of antitrust standing, pass-through of the overcharge to

22  Plaintiffs, ascertainability of class members, and the involvement in the conspiracy of the Japanese,

23  U.S. and other defendants.  *See, e.g.,* Dkt. Nos. 2976, 3050, 3585.  While the Plaintiffs remain

24  confident in the strength of the evidence supporting their claims, a successful jury verdict remained a

---

25

26  [31] Plaintiffs' expert estimated the total class damages to be $2.768 billion, with CRT monitors
    accounting for approximately $2 billion, and CRT televisions accounting for approximately $768
27  million.  Using the same data and methodology, and correcting for what Defendants argued were
    "fatal flaws" in Dr. Netz's work, one defense expert estimated the total class damages to be
28  approximately $61 million.  Other defense experts maintained that the total class damages were zero.
    (*Id.* ¶ 34.)

1    risky proposition.[32]

2         Moreover, a jury award would then have to withstand appellate review.  In this case, the

3    Defendants raised substantial arguments against the Court's class certification decision.  *See* Dkt.

4    No. 2012 (Petition of Defendants for Permission to Appeal).  These arguments were rejected on an

5    interlocutory basis by the Ninth Circuit (Dkt. No. 2283), but that rejection provides no assurance that

6    the arguments would have likewise been rejected on appeal at the end of the case.  Class certification

7    jurisprudence, in particular, has received heightened scrutiny from appellate courts in the wake of

8    the Supreme Court's decision in *Wal-Mart Stores Inc. v. Dukes,* 131 S. Ct. 2541 (2011) and *Comcast*

9    *Corp. v. Behrend,* 133 S. Ct. 1426 (2013).

10        Still another area of significant potential trial and appellate risk comes from the rapidly-

11   changing landscape of the Foreign Trade Antitrust Improvements Act (15 U.S.C. §6a) ("FTAIA"), a

12   statute which the Defendants asserted in this Court as the basis for disposing of a large portion of

13   Plaintiffs' claims at summary judgment.  These motions were pending at the time the Proposed

14   Settlements were executed.  *See* Dkt. Nos. 3006 and 3008.  The FTAIA has recently been the subject

15   of several major appellate decisions from the Second, Third, Seventh and Ninth Circuits, which

16   announced new interpretations of the FTAIA's jurisdictional effect, and provided new interpretations

17   of the statute's abstruse text.[33]  These developments heighten the uncertainty surrounding any

18   appellate review of a district court's FTAIA analysis, no matter how careful or well-supported it may

19   be.

20        And even if Plaintiffs were to win at every subsequent stage, continued litigation would

21   delay recovery for years.  Settlement eliminates the risk of litigation vis-à-vis Settling Defendants,

22   providing substantial and certain relief to the Settlement Class now.[34]  In sum, the all-cash recovery

23   of $563,000,000 dollars is a substantial and material result that avoids the meaningful risk Plaintiffs

24

25   _____

     [32] *In re AT&T Mobility Wireless Data Servs. Sales Litig*., 270 F.R.D. 330, 347 (N.D. Ill. 2010).

26   [33] *See Lotes Co., Ltd. v. Hon Hai Precision Industry Co.,* 753 F.3d 395, 412-13 (2d Cir. 2014)*;*
     *Animal Sci. Prods. Inc. v. China Minmetals Corp.,* 654 F.3d 462 (3d Cir. 2011); *Minn-Chem Inc. v.*
27   *Agrium Inc.,* 683 F.3d 845 (7th Cir. 2012); *Motorola Mobility LLC v. AU Optronics Corp.,* 775 F.3d
     816 (7th Cir. 2015); and, *U.S. v. Hsiung,* 778 F.3d 738 (9th Cir. 2015).

28   [34] *In re AT&T,* 270 F.R.D. at 347 ("[A] future victory is not as valuable as a present victory.").

1  faced at trial and on appeal.

2  ### 3.    Sufficiency of Discovery

3  The stage of the proceedings at which the Proposed Settlements were reached also favors

4  preliminary approval.  The Plaintiffs negotiated these Settlements after extensive pre-filing

5  investigation, full discovery, the exchange of expert reports on liability and damages, the filing of

6  oppositions to defense motions for summary judgment, and other rigorous and fact-intensive

7  motions.  (Alioto Decl. ¶¶ 3-19.) Over the course of the last seven years, Plaintiffs have reviewed

8  and analyzed millions of documents produced by Defendants and third parties, taken over 100

9  depositions of defense witnesses, and have conducted extensive economic analyses of the

10  Defendants' and third parties' data.  Plaintiffs participated in three mock trials and observed 11

11  mock juries.  Plaintiffs were fully prepared to try this case to a jury.  (*Id.* ¶ 35.)  Thus, Plaintiffs were

12  able to negotiate the Proposed Settlements with detailed knowledge of the factual and legal issues

13  underlying the claims and defenses in the action, and the strengths and weaknesses of the actions.

14  ### 4.    Opinion of Experienced Counsel

15  Plaintiffs' Class Counsel – who is experienced in antitrust and consumer class actions – has

16  determined that the Proposed Settlements are in the best interests of the class members.  (*Id.* ¶ 36.)

17  Experienced plaintiffs' counsel's judgment that settlements are fair and reasonable is entitled to

18  great weight at the preliminary approval stage.[35]

19  ### D.    The Proposed Settlement Class Satisfies Rule 23(a)

20  Before granting preliminary approval of a settlement, the Court must determine that the

21  proposed settlement presents a proper class for settlement purposes.[36]  Rule 23 governs the issue of

22  class certification, whether the proposed class is a litigated class or, as here, a settlement class.

23  Courts routinely and properly certify classes for settlement purposes only.[37]

24

25

---

26  [35] *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004)
("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted
27  with the facts of the underlying litigation.").

[36] *See Manual* § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

28  [37] *Id.* at 619-29.

Certification is appropriate where the proposed class and the proposed class representatives meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation.  In addition, certification of a class action for damages requires a showing that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This Court has already found that classes similar in composition to the Settlement Class here satisfy the Rule 23 criteria, and certified 22 separate statewide damages classes.[38]  The proposed Settlement Class here likewise satisfies each of the Rule 23 criteria.

### 1.    The Class Is So Numerous That Joinder Is Impracticable

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, the Settlement Class consists of millions of members nationwide.  "Numerosity" is easily established.[39]

### 2.    The Case Involves Questions of Law and Fact Common to the Class

The second prerequisite to class certification is the existence of questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit has made it clear that the commonality requirement is to be "construed permissively."[40]  Courts have held that a single common issue of law or fact is sufficient to satisfy the commonality requirement.[41]  Commonality can be established by showing "that the class is united by a common interest."[42]

---

[38] *See* Order Granting Final Approval of Class Action Settlement with LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd. (Dkt. No. 2542); Report & Recommendation Regarding Indirect Purchaser Plaintiffs' Motion for Class Certification (Dkt. No. 1742) ("Class Certification R&R"); Order Adopting Special Master's Reports and Recommendations on Defendants' Motion to Exclude Expert Testimony and Motion for Class Certification. (Dkt. No. 1950) ("Class Certification Order").

[39] *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964); *In re Rubber Chemicals Antitrust Litig.,* 232 F.R.D. 346, 350 (N.D. Cal. 2005) (a finding of numerosity may be supported by common sense assumptions).

[40] *Hanlon*, 150 F.3d at 1019.

[41] *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996).

[42] *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

17

Here, all class members share numerous common questions of law and fact that go to the central issue in this matter—that is, whether the Defendants engaged in a price-fixing conspiracy which injured Plaintiffs when they paid more for CRT Products than they would have absent the alleged price-fixing conspiracy. These common questions of law and fact predominate over any individual questions. The overarching and unifying allegations in this action are that Settling Defendants and other CRT manufacturers engaged in a global cartel to fix the prices of CRTs sold in the United States. These allegations give rise to numerous questions of law or fact common to the class, such as:

1. Whether Defendants engaged in a contract, combination, and/or conspiracy to fix, raise, maintain, or stabilize prices of CRTs sold in the United States;

2. Whether the alleged contract, combination, and/or conspiracy violated Section 1 of the Sherman Act (15 U.S.C. § 1) such that injunctive relief is available to Plaintiffs;

3. Whether the alleged conspiracy violates the antitrust, consumer protection or other similar laws of the 21 states and the District of Columbia under whose laws these suits were brought;

4. The duration of the alleged illegal contract, combination, and/or conspiracy;

5. Whether Defendants' alleged conduct resulted in an unlawful overcharge on the price of CRTs;

6. Whether the alleged unlawful overcharge on the price of CRTs was passed-through to the indirect purchasers of CRT Products, and if so, the appropriate classwide measure of damages.

These questions revolve around the existence, scope, effectiveness, and implementation of Defendants' alleged conspiracy and are central to each class member's claims. This Court previously found that these questions of law and fact satisfy the commonality requirement in this case.[43] Similar common questions have been routinely found to satisfy the commonality requirement in other antitrust class actions.[44]

---

[43] *See* Class Certification Order at 6, and Class Certification R&R at 16-17.

[44] *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, Case No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) ("the very nature of a conspiracy antitrust action

18

### 3.     Plaintiffs' Claims Are Typical of the Claims of the Class

The "claims . . . of the representative parties [must be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."[45]  In this case, the claims of the representative Plaintiffs are typical of the claims of the class members because they all indirectly purchased CRT Products sold by Defendants at allegedly supra-competitive levels as a result of the alleged price-fixing conspiracy.  Similarly, differences that may exist in the amount of injury suffered by each class member do not render Plaintiffs' claims atypical.[46]

As with commonality, typicality is easily satisfied in cases involving allegations of horizontal price-fixing because "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members."[47]  Furthermore, courts have rejected the argument that factual differences among individual transactions undermine typicality, so long as the alleged damages of plaintiffs and the class arise from the purchase of products affected by the conspiracy.[48]

In this case, the claims of the representative Plaintiffs arise from the same alleged price-fixing conspiracy that gives rise to the claims of the Class.  Plaintiffs assert the same legal claims on behalf of themselves and the proposed Class, namely, that they purchased CRT Products and that

---

compels a finding that common questions of law and fact exist."); *In re Rubber Chem.,* 232 F.R.D. at 351.

[45] *Hanlon*, 150 F.3d at 1020.

[46] *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001), , *abrogated on other grounds by Johnson v. California,* 543 U.S. 499, 504–05, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005).

[47] *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993);  *In re Citric Acid Antitrust Litig.*, Case No. 95-1092, 1996 WL 655791, at *3 (N.D. Cal. Oct. 2, 1996).

[48] *See DRAM*, 2006 WL 1530166, at *4; *In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*, Case No. Civ. 02-6030 (WHW), 2006 WL 891362, at *5 (D.N.J. April 4, 2006); *In re Pressure Sensitive Labelstock Antitrust Litig.*, Case No. 3:03-MDL-1556, 2007 WL 4150666, at *10 (M.D. Pa. Nov. 19, 2007) ("Typicality is usually satisfied in a horizontal antitrust conspiracy case, even though a plaintiff may have purchased different product types or quantities or received different prices, or a plaintiff purchased from one defendant but not another.").

---

19

1   they were overcharged as a result of the alleged conspiracy between Defendants and other CRT

2   manufacturers.  Defendants' alleged price-fixing scheme is the basis for the claims of every named

3   Plaintiff and class member who purchased the price-fixed CRTs indirectly from Defendants.

4   Therefore, Plaintiffs' claims are typical of the claims of the other class members, and certification is

5   appropriate.[49]

6         **4.**    **Plaintiffs Will Fairly and Adequately Represent the Interests of the Class**

7         The final requirement of Rule 23(a) is that the representative plaintiffs fairly and adequately

8   represent the interests of the class.  A representative plaintiff is an adequate representative of the

9   class if he or she: (1) does not have any interests that are antagonistic to or in conflict with the

10  interests of the class; and (2) is represented by "qualified counsel" who will vigorously prosecute the

11  interests of the class.[50]

12        Here, the interests of the representative Plaintiffs are not antagonistic to the Class because

13  they are all similarly interested in obtaining prompt and valuable relief from Defendants.  Plaintiffs

14  have a genuine interest in the litigation and understand the allegations in this case.  They have

15  reviewed the pleadings in this case, responded to written discovery, produced the documents

16  requested and have been deposed by Defendants.  (Alioto Decl. ¶ 37.)  The interests of all Plaintiffs

17  and class members are aligned because they all allegedly suffered similar injury in the form of

18  claimed higher CRT Product prices due to the alleged conspiracy, and they all seek the same relief.

19  By proving their own claims, Plaintiffs will necessarily be proving the claims of their fellow class

20  members.[51]

21        Additionally, Plaintiffs are represented by counsel who are highly qualified in class action

22  litigation and have competently and aggressively prosecuted this complex case.  Plaintiffs' counsel,

23  Trump, Alioto, Trump & Prescott LLP, was appointed by the Court as Class Counsel on September

24

25  [49] *See* Class Certification R&R at 17-19 (finding the named plaintiffs' claims to be typical of class members' claims); Class Certification Order at 2 (adopting Class Certification R&R in full).

26  [50] *Hanlon,* 150 F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.

27  1978).

28  [51] *See* Class Certification R&R 17-19 (finding the named plaintiffs are adequate class representatives); Class Certification Order at 2 (adopting Class Certification R&R in full).

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC

1    24, 2013.[52]  They have undertaken the responsibilities assigned to them by the Court and have

2    directed the efforts of other Plaintiffs' counsel in vigorously prosecuting this action.

3        **E.      The Proposed Settlement Class Satisfies Rule 23(b)(3)**

4        Once the four prerequisites of Rule 23(a) are met, as they are here, Plaintiffs are entitled to

5    proceed with a class action under Rule 23(b)(3) if the Court finds that "questions of law or fact

6    common to class members predominate over any questions affecting only individual members, and

7    that a class action is superior to other available methods for fairly and efficiently adjudicating the

8    controversy."  The Settlement Class meets both requirements.

9        **1.      Common Questions of Law or Fact Predominate**

10       "Predominance," under Rule 23(b)(3), "is a test readily met in certain cases alleging

11   consumer or securities fraud or violations of the antitrust laws."[53]  The weight of authority holds that

12   in horizontal price-fixing cases like this one, the predominance requirement is readily met.  The

13   existence of a conspiracy is the overriding issue common to all plaintiffs, sufficient to satisfy the

14   Rule 23(b)(3) predominance requirement.[54]

15       Here, the existence of an alleged CRT conspiracy and Defendants' acts in furtherance of the

16   alleged conspiracy are the predominant common questions.  To demonstrate that the alleged CRT

17   price-fixing conspiracy existed, Plaintiffs will necessarily focus on the conduct of the Defendants,

18   rather than the conduct of individual class members.  Specifically, Defendants allegedly entered into

19   and implemented a conspiracy to set the prices of CRTs at *supra*-competitive levels through a series

20   of high-level meetings and agreements during the class period.  Plaintiffs maintain that proof of

21

22   [52] *See* Class Certification R&R at 17, 49; Class Certification Order at 2.

23   [53] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 at 625 (1997).

24   [54] *See, e.g., Thomas & Thomas Rodmakers Inc. v. Newport Adhesives & Composites Inc.,* 209 F.R.D
     159, 167 (C.D. Cal. 2002) ("In price-fixing cases, courts repeatedly have held that the existence of
25   the conspiracy is the predominant issue and warrants certification even where significant individual
     issues are present.") (internal quotation marks and citation omitted) (emphasis added); *In re Rubber*
26   *Chemicals*, 232 F.R.D. at 352 ("[T]he great weight of authority suggests that the dominant issues in
     cases like this are whether the charged conspiracy existed and whether price-fixing occurred"); *In re*
27   *Sugar Industry Antitrust Litig.*, MDL Dkt No. 201, 1976 WL 1374, at *23 (N.D. Cal. May 21, 1976)
     ("It is the allegedly unlawful horizontal price-fixing arrangement among defendants that, in its broad
28   outlines, comprises the predominating, unifying common interest" between the representative
     plaintiffs and potential class members).

these meetings and agreements is contained in Defendants' own documents and the testimony of defense witnesses, and is therefore common for all class members.[55]

Likewise, antitrust injury, particularly in a price-fixing case, is an issue common to the class because the effect of the alleged conspiracy is readily determined based on a common evidentiary showing.[56]  Therefore, common issues relating to the existence and effect of the alleged conspiracy to fix CRT prices predominate over any questions arguably affecting individual class members. These issues are "overriding issues" satisfying the predominance requirement.

The existence of potential individualized damage issues does not defeat the predominance of the common liability issues.[57]  Courts in this District have recognized that "classes were certified . . . regardless whether some members of the class negotiated price individually, or whether — as here — differences among product type, customer class, and method of purchase existed."[58]  This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones, e.g., as long as common theory can be alleged as to liability and impact that can be

---

[55] *See, e.g., In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 275 (D. Mass. 2004) ("The alleged antitrust violation relates solely to SmithKline's conduct, and as such, constitutes a common issue subject to common proof."); *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 250 (S.D. Tex. 1978) ("The court is persuaded that the conspiracy issues whether price information was exchanged; if it was, with what intent; whether action was taken by the defendants based upon such exchanges, etc. is susceptible of generalized proof, since it deals primarily with what the defendants themselves did and said.").

[56] *See, e.g., In re Citric Acid*, 1996 WL 655791, at *6 (common questions include whether there was a conspiracy, whether prices were fixed pursuant to the conspiracy, and whether the prices plaintiffs paid were higher than they should have been); *Estate of Jim Garrison v. Warner Bros., Inc.*, 1996 WL 407849, at *3 (C.D. Cal. June 25, 2006) ("Antitrust price fixing conspiracy cases by their nature deal with common legal and factual questions of the existence, scope and effect of the alleged conspiracy." (citation omitted)); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 604 (N.D. Cal. 2010), *amended in part*, 2011 WL 3268649 (N.D. Cal. July 28, 2011) (internal citation omitted) (finding common issues predominated on the question of antitrust injury in a price-fixing case brought on behalf of a class of indirect purchasers); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 612-614 (N.D. Cal. 2009) (same).

[57] *See, e.g., In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001), *overruled on other grounds by In re IPO*, 471 F.3d 24 (2d Cir.2006), *and superseded by statute on other grounds as stated in Attenborough v. Const. and Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y.2006).

[58] *DRAM*, 2006 WL 1530166, at *9.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC

pursued by the class.[59]  Issues common to the classes predominate in this case.  All indirect-purchasers are alleged to have paid overcharges that were caused by the Defendants' alleged price-fixing activities.  The presence of these common issues of liability and impact favors class certification of the Settlement Class, even if individual issues may exist as to the dollar amount of damages suffered by each class member.[60]

### 2.    A Class Action Is Superior to Other Methods of Adjudication

The superiority prong of Rule 23(b)(3) requires balancing the merits of a class action with available alternate methods of adjudication.[61]  "[I]f common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied."[62]  That is because in price-fixing cases, "the damages of individual indirect purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress."[63]

In this case, a class action is superior to individual litigation because it would be a waste of judicial resources to require numerous separate trials relating to the same legal dispute.[64]  As noted by Judge Wilken in *SRAM*, the damages alleged by individual members of the class are relatively small, and the expense and burden of individual litigation would make it impracticable for them to seek redress individually.[65]  Moreover, the interests of class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism.  Finally, separate adjudication of claims creates a risk of inconsistent rulings, which further favors class

---

[59] *See, e.g., In re Visa Check/Master Money*, 280 F.3d at 138 (citing and quoting with approval *Williams v. Sinclair*, 529 U.S. 1383, 1388 (9th Cir. 1975)); *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294-295 (1st Cir. 2000).

[60] *See* Class Certification R&R at 38; Class Certification Order at 13.

[61] *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

[62] Wright, Miller & Kane, *Federal Practice and Procedure: Civil Procedure* § 1781 at 254-55 (3d ed. 2004).

[63] *SRAM*, 264 F.R.D. at 615.

[64] *See In re Brand Name Prescription Drugs Antitrust Litig.*, Case No. 94 C 897, 1994 WL 663590, at *6 (N.D. Ill. Nov. 18, 1994) ("We fail to see the logic in defendants' contention that 50,000 individual actions are less complex than a single class action.").

[65] *SRAM*, 264 F.R.D. at 615; *see also* Class Certification R&R at 39 (same).

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC

1    treatment.  Therefore, a class action is the superior method of adjudicating the claims raised in this

2    case.

3    **V.      PROPOSED PLAN OF NOTICE**

4            Rule 23(e)(1) states that, "The claims, issues, or defenses of a certified class may be settled,

5    voluntarily dismissed, or compromised with the court's approval. . . .  The court must direct notice in

6    a reasonable manner to all class members who would be bound by the proposal."  Notice of a

7    proposed settlement must inform class members of the following:  (1) the nature of the pending

8    litigation; (2) the general terms of the proposed settlement; (3) that complete information is available

9    from the court files; and (4) that any class member may appear and be heard at the fairness hearing.[66]

10   The notice must also indicate an opportunity to opt-out, that the judgment will bind all class

11   members who do not opt-out, and that any member who does not opt-out may appear through

12   counsel.  Fed. R. Civ. P. 23(c)(2)(B).

13           The form of notice is "adequate if it may be understood by the average class member."[67]

14   Notice to the class must be "the best notice practicable under the circumstances, including individual

15   notice to all members who can be identified through reasonable effort."[68]  Publication notice is an

16   acceptable method of providing notice where the identity of specific class members is not reasonably

17   available.[69]

18           Plaintiffs' Counsel have retained an experienced class action administrator, The Notice

19   Company, to give notice of these Settlements to the members of the Settlement Class.  As explained

20   in the attached Declaration of Joseph Fisher of The Notice Company, the Plaintiffs propose to

21   disseminate notice advising of the Proposed Settlements and the dates associated with exclusion,

22   objection and final approval.  The Notice Company has formulated a comprehensive notice program

23   that satisfies due process standards and represents the best notice practicable under the

24   circumstances, consistent with Rule 23.  (*See* Fisher Decl. ¶ 32.)  The components of the notice

25

26   ────────────────────

27   [66] *See Newberg* § 8.32.

     [67] *Newberg* § 11.53.

28   [68] *Amchem Prods.*, 521 U.S. at 617.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC

1  program are substantially similar to the notice programs approved by the Court in connection with

2  the previously-approved settlements, and indeed go beyond the previously-approved notice

3  programs.  (*Id.* at ¶ 2; Alioto Decl. ¶ 38.)

4          Notice to the class members will be provided via publication of a Summary Notice in print

5  media, broadcast media, online media, social media and earned media (including, e.g. press

6  releases).  (Fisher Decl. ¶ 8.)  Notice will also be mailed directly to: all persons who requested notice

7  following the prior Settlements; every Fortune 500 company for each year during the Class Period;

8  and the 300 largest private colleges and universities, the 200 largest private secondary schools, and

9  the 50 largest hospitals in the 21 States and the District of Columbia that can file claims.  (*Id.* ¶ 11.)

10  Notice will also be emailed directly to approximately 1.3 million small business owners and 7.2

11  million individual consumers who reside in the 21 States and the District of Columbia.  (*Id.* ¶¶ 12-

12  13, Ex. E.)

13          Included with the Fisher Declaration is the proposed Summary Notice (*Id.*, Ex. C), which

14  will be placed in publications and mailed to the recipients listed above.  The Summary Notice will

15  direct people to the website, www.CRTclaims.com, on which the Detailed Notice (*Id.*, Ex. B) will be

16  posted, along with the Settlement Agreements and the papers filed in support of the Settlements.  (*Id.*

17  ¶ 5; Alioto Decl. ¶¶ 39-40.)

18          The Notices describe the nature of the litigation and the general terms of the Proposed

19  Settlements, and inform potential Class Members that complete information is available from the

20  court files and from the settlement website at www.CRTclaims.com.  The notices explain that Class

21  Members must submit a claim form in order to receive compensation, and sets forth the deadline and

22  process for submitting a claim.[70]  The notices also explain that Class Members have the right to

23  exclude themselves from the Proposed Settlements[71] or object to any aspect of them, and clearly

24

25  _____

26  [69] *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citing *Manual* § 21.311).

27  [70] The proposed claim form is attached as Exhibit H to the Declaration of Mario N. Alioto.

28  [71] Even though members of the Statewide Damages Classes were previously given an opportunity to exclude themselves from the Certified Class, Plaintiffs propose that class members be provided the opportunity to exclude themselves from the Settlement Class.  *See* Fed. R. Civ. P. 23, 2003 Advisory

1   state the procedure and deadlines for doing so.  Finally, the Notices explain that the judgment against

2   Settling Defendants will bind all Class Members who do not exclude themselves, and that any Class

3   Member who does not exclude himself may appear through counsel at the Fairness Hearing.  (Fisher

4   Decl. ¶ 5-7; Alioto Decl. ¶ 41.) The Notice Company will also establish a toll-free number that

5   potential Class Members can call with any questions and to request additional information.  (Fisher

6   Decl. ¶ 5.)

7       A more detailed description of the proposed notice program is contained in the Fisher

8   Declaration.  (Fisher Decl. ¶¶ 8-31.) The proposed notice program fulfills all the requirements of

9   Federal Rule of Civil Procedure 23 and due process.[72]

10      Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 ("CAFA"), Settling

11  Defendants will provide notice of the Proposed Settlements to the Attorney General of the United

12  States and the Attorneys General of all 50 States within ten days of the filing of this motion. (Alioto

13  Decl. ¶ 42.)

14  **VI.   PROPOSED PLAN OF DISTRIBUTION**

15      The Plaintiffs propose to compensate members of the Statewide Damages Classes according

16  to a plan of distribution, which provides that qualifying claimants will be eligible to claim their pro-

17  rata share of the Settlement Fund based on the number of valid claims filed, and the number and type

18  of CRT Products each claimant purchased during the class period. (Alioto Decl. ¶ 43.)

19      A plan of distribution of class settlement funds is subject to the "fair, reasonable and

20  adequate" standard that applies to approval of class settlements.[73] A plan of distribution that

21  compensates class members based on the type and extent of their injuries is generally considered

22  reasonable.  Distribution on a pro-rata basis, with no class member being favored over others is fair

23

24

25

26  Committee Notes ("A decision to remain in the class is likely to be more carefully considered and is
    better informed when settlement terms are known.").

27  [72] *See, e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993); *In re AOL
    Time Warner ERISA Litig.*, WL 2789862, at *9 (S.D. N.Y. Sept. 27, 2006).

28  [73] *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).

26

1    and reasonable.  Such distributions have frequently been determined to be fair, adequate, and

2    reasonable.[74]

3           Here, the Settlement Administrator will first compute the straight pro-rata distribution of the

4    available Settlement Fund among all claimed product purchases, with claims for Standard CRT

5    Televisions (televisions with a screen size of less than 30 inches) getting a weight of 1; Large CRT

6    Televisions (televisions with a screen size of 30 inches or larger) getting a weight of 4.3; and CRT

7    Computer Monitors getting a weight of 3.  (Alioto Decl. ¶ 44.)

8           The weighting of the different CRT Products in this manner is necessary to reflect the

9    relative harm to purchasers of those products.  The data produced in this case shows that the CRTs

10   used in televisions with a screen size of 30 inches or larger were significantly more expensive than

11   the CRTs used in televisions less than 30 inches.  After reviewing the data and consulting with

12   Plaintiffs' expert, Dr. Janet Netz, it became necessary to create two categories for CRT televisions

13   (Standard CRT Televisions and Large CRT Televisions) to ensure that purchasers of Large CRT

14   Televisions are properly compensated.  (*Id.* ¶ 45.)   In addition, based on Dr. Netz's findings that the

15   overcharge on monitor tubes was more than twice the overcharge on television tubes, it is

16   appropriate to give greater weight to CRT Computer Monitors than Standard CRT televisions.  (*Id.* ¶

17   46.)  However, the data produced in this case also shows that Large CRT Televisions contain the

18   largest, most expensive CRTs.  On average, they are approximately twice the size and four times the

19   price of CRTs used in monitors.  So even though Dr. Netz found the overcharge percentage on

20   television tubes to be less than for monitor tubes, the average dollar overcharge is greater for Large

21   CRT Televisions than for CRT Computer Monitors (overcharge percentage times higher price =

22   higher overcharge).  (*Id.* ¶ 47.)

23

24

_____

25   [74] *See In re Vitamins Antitrust Litig.*, No. 99–197 TFH, 2000 WL 1737867, at *6 (D.D.C. Mar. 31,
     2000) ("Settlement distributions, such as this one, that apportions funds according to the relative
26   amount of damages suffered by class members, have repeatedly been deemed fair and reasonable.");
     *In re Lloyds' Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 WL 31663577, at *19 (S.D.N.Y.
27   Nov. 26, 2002) ("*pro rata* allocations provided in the Stipulation are not only reasonable and
     rational, but appear to be the fairest method of allocating the settlement benefits.").

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC

1    Because there will very likely be a broad range in the number of products purchased by

2 claimants - with some average individual consumers reporting one or two products purchased, and

3 some corporate claimants reporting thousands of products purchased - the next step will be to

4 determine a minimum payment amount.  Based on historical claim rates, it is expected that there will

5 be sufficient funds to distribute a minimum payment of at least $25 to eligible class members who

6 submit a valid claim form. The purpose of the minimum payment amount is to incentivize the filing

7 of claims by small purchasers whose straight pro-rata distribution amount would be less than the

8 expected minimum payment amount of $25.  Thus, a hypothetical consumer claimant whose straight

9 pro-rata distribution amount would have been only $15 would instead receive the minimum payment

10 amount of $25.  A hypothetical claimant whose straight pro-rata distribution amount would have

11 been *greater* than $25 will continue to receive a larger amount based on an adjusted pro-rata

12 distribution ("adjusted" to compensate for the effect of the minimum payment amount).  The

13 minimum payment amount of $25 represents the Plaintiffs' reasonable estimate at this time; the

14 actual amount cannot be determined until all claims have been processed. The Court's approval for

15 the minimum payment will be requested when the data from the actual claims process is available.

16 (*Id.* ¶ 48.)

17    Using this adjusted pro-rata distribution plan will ensure that all valid claimants receive fair

18 compensation based directly on their purchases of CRT Products.  The minimum payment ensures

19 that small claimants (*i.e.,* most individual consumers) receive meaningful compensation for their

20 participation in the claims process.  (*Id.* ¶ 49.)

21    Additionally, a maximum payment amount of three times the estimated money damages per

22 claimant will apply.  Upon final approval, none of the Settlement Fund will revert to any defendant.

23 Members of the Nationwide Class, who are not also members of any Statewide Damages Class, will

24 not receive monetary compensation.  (*Id.* ¶ 50.)

25    Finally, all Statewide Damages Class members who seek payment from the Settlement Fund

26 will be required to complete a claim form containing: (i) the class member's contact information; (ii)

27 verification of membership in one of the Statewide Damages Classes; (iii) the number and type of

28 each CRT Product purchased during the class period; and (iv) an attestation under penalty of perjury

1  that the information provided is accurate.  The proposed claim form is attached as Exhibit H to the

2  Declaration of Mario N. Alioto. (*Id.* ¶ 51.)

3       All claimants will also be subject to auditing and requests for documentation of purchases by

4  the Settlement Administrator.  The Settlement Administrator will use commercially reasonable

5  efforts to identify and investigate claims. (*Id.* ¶ 52.)

6  **VII.**    **NOTICE COSTS, LITIGATION EXPENSES AND ATTORNEYS' FEES**

7       The Proposed Settlements provide that counsel for the Plaintiffs may apply to the Court for

8  an award of attorneys' fees (not to exceed one-third of the Settlement Fund), and for payment of

9  notice costs[75] and litigation expenses, all of which come out of the Settlement Fund.  The Settling

10  Defendants have agreed that a certain amount of the Settlement Fund can be used for notice costs,

11  and will not oppose Plaintiffs' application for attorneys' fees and litigation expenses.[76] (Alioto Decl.

12  ¶ 53.)

13       The Proposed Notices (attached as Exhibits B and C to the Fisher Declaration, and Exhibit F

14  and G to the Alioto Declaration) advise that the Plaintiffs intend to apply for attorneys' fees (not to

15  exceed one-third of the Settlement Fund), notice costs and litigation expenses.  These applications

16  will be heard at the final approval hearing or other date determined by the Court.  Additionally, the

17  Proposed Notices advise that the Plaintiffs intend to apply for individual incentive awards for the

18  indirect purchaser class representatives, all of whom fully participated in the discovery phase of the

19  case.  Several class representatives were also preparing to participate in the trial.  These applications

20  will be filed with the Court and posted to the website www.CRTclaims.com at least 14 days in

21  advance of the deadline for objections to give class members an opportunity to review the

22  applications and either support or file objections to them.[77] (Alioto Decl. ¶ 54.)

23

24

25  [75] The Settlement Administrator provides estimates of the notice and administration costs in the
26  Fisher Decl., ¶ 33.

27  [76] *See* Alioto Decl., Ex. A (Philips Settlement), ¶¶ 19, 23; Ex. B (Panasonic Settlement), ¶¶ 18, 22; Ex. C (Hitachi Settlement), ¶¶ 18, 22; Ex. D (Toshiba Settlement), ¶¶ 18, 22; and Ex. E (Samsung SDI Settlement), ¶¶ 19, 23.

28  [77] *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC

## VIII.   THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the Proposed Settlements.  At that hearing, proponents of the Settlements may explain and describe their terms and conditions and offer argument in support of settlement approval, and members of the Settlement Class, or their counsel, may be heard in support of or in opposition to the Proposed Settlements.  Plaintiffs respectfully suggest that the Court set the following final approval schedule, culminating in a final approval hearing:

| Event | Date |
|---|---|
| Notice Publication Date and Mailed Notice to Commence | Within 30 days of Order Granting Preliminary Approval |
| Exclusion Date | Within 60 days of Notice Publication Date |
| Objection Date | Within 60 days of Notice Publication Date |
| Final Hearing | 120 days from Order Granting Preliminary Approval |
| Claims Deadline | 120 days from Notice Publication Date |

## IX.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court:  (1) grant preliminary approval of the Proposed Settlements; (2) certify the proposed Settlement Class; (3) grant preliminary approval to the proposed plan of distribution and proposed claim form; (4) approve the proposed notice plan as complying with due process and Rule 23, and order that notice of the Proposed Settlements be given to the Class; (5) set a schedule for final approval; and (6) set a schedule for any motions for an award of attorneys' fees, litigation expense and incentive awards.

//

//

//

1    Dated:  May 29, 2015                    Respectfully submitted,

2                                            */s/ Mario N. Alioto*

3                                            Mario N. Alioto (56433)
                                             malioto@tatp.com
                                             Joseph M. Patane (72202)
4                                            jpatane@tatp.com
                                             Lauren C. Capurro (241151)
5                                            laurenrussell@tatp.com
                                             TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
6                                            2280 Union Street
                                             San Francisco, CA 94123
7                                            Telephone: 415-563-7200
                                             Facsimile: 415-346-0679
8
                                             *Class Counsel for Indirect Purchaser*
9                                            *Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENTS – Master File No. CV-07-5944-SC