MARIO N. ALIOTO, ESQ. (56433)
JOSEPH M. PATANE, ESQ. (72202)
LAUREN C. RUSSELL, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Class Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Indirect Purchaser Actions | Master File No. CV-07-5944-SC<br><br>MDL No. 1917<br><br>**DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH THE PHILIPS, PANASONIC, HITACHI, TOSHIBA AND SAMSUNG SDI DEFENDANTS**<br><br>Hearing Date:  July 31, 2015<br>Time: 10:00 a.m.<br>Courtroom: One, 17th Floor<br>Judge:  Honorable Samuel Conti |

1

I, Mario N. Alioto, declare:

1. I am an attorney duly licensed by the State of California and am admitted to practice before this Court. I am a partner with the law firm Trump, Alioto, Trump & Prescott, LLP and my firm serves as Class Counsel for the Indirect Purchaser Plaintiffs ("Plaintiffs") in the above-captioned action. The matters set forth herein are within my personal knowledge and if called upon and sworn as a witness I could competently testify regarding them.

2. Plaintiffs have entered into class action settlements with the Philips, Panasonic, Hitachi, Toshiba and Samsung SDI Defendants (the "Proposed Settlements").

**Procedural History**

3. This multidistrict litigation arises from an alleged international conspiracy to fix the prices of CRTs worldwide, specifically including the United States, during the period March 1, 1995 through November 25, 2007. Plaintiffs filed their original complaints in various federal courts throughout the country in late 2007 and early 2008. The Judicial Panel on Multidistrict Litigation transferred all related indirect purchaser actions to the Northern District of California, where they were consolidated with similar class actions by direct purchaser plaintiffs.

4. On May 9, 2008 the Court appointed the undersigned as Interim Lead Counsel. (Dkt. No. 47).

5. The United States Department of Justice ("DOJ") intervened early in the case and requested a stay of all merits discovery pending its criminal investigation. The parties negotiated a Stipulated Order with the DOJ that provided for a stay of all merits discovery until September 12, 2009. (Dkt. No. 379) Pursuant to the DOJ's requests, this stay was extended on several occasions. (Dkt. Nos. 425, 590, 798)

6. Plaintiffs filed their consolidated amended complaint on March 16, 2009 (Dkt. No. 437). The Defendants filed motions to dismiss that were denied in part and granted in part, with leave to amend certain state law claims. (Dkt. No. 665)

7. On May 10, 2010, Plaintiffs filed their Second Consolidated Amended Complaint. (Dkt. No. 716) Defendants filed a joint motion to dismiss on various state-law grounds that was denied in part and granted in part, with leave to amend certain state law claims. (Dkt. No. 799)

8.  On December 11, 2010, Plaintiffs filed their Third Consolidated Amended Complaint. (Dkt. No. 827) Defendants answered Plaintiffs' complaint on January 26, 2011.

9.  On April 20, 2011, Defendants and Plaintiffs filed a stipulation providing that Plaintiffs would withdraw the finished-CRT-products-conspiracy allegations from their complaint (Dkt. No. 895). The Court entered an order to that effect on April 22, 2011 (Dkt. No. 904).

10.  On April 18, 2009, Plaintiffs entered into a settlement with Chunghwa Picture Tubes, Ltd., for $10,000,000 cash. The Court granted Preliminary Approval on August 9, 2011 (Dkt. No. 992) and Final Approval on March 22, 2012 (Dkt. No. 1105).

11.  The DOJ's stay of merits discovery was partially lifted on March 8, 2010 and Defendants began their rolling production of documents. Most of the Defendant groups comprise multiple entities located around the world. Because many of the Defendants are no longer involved in the CRT business, Plaintiffs had to travel to several storage facilities both here and abroad to manually search Defendants' paper records for relevant documents, and had to employ technical experts to restore backup tapes and servers containing relevant information. Plaintiffs even subpoenaed documents and data from the U.S. and Dutch bankruptcy trustees of a former manufacturer of CRTs, LG.Philips Displays. In addition, Plaintiffs subpoenaed and negotiated productions of documents and data from over 50 third party retailers, distributors and CRT television and monitor manufacturers.

12.  Defendants have produced millions of documents and voluminous data sets, which were loaded into a web-based electronic database and reviewed and analyzed by a team of over 50 attorneys, including attorneys fluent in Korean, Chinese, Japanese and Dutch. In order to use these foreign language documents in the litigation, Plaintiffs have obtained certified translations and addressed Defendants' objections to the certified translations. Plaintiffs also retained economists to review and analyze the documents and data, and prepare expert reports in support of class certification, liability and damages.

13.  Plaintiffs filed their motion for class certification, along with the Declaration of Janet S. Netz, Ph.D, on October 1, 2012. (Dkt. No. 1388) The complete record on class

certification totaled approximately 6,000 pages.  Interim Special Master Martin Quinn held a hearing on the motion and recommended that the Court grant Plaintiffs' motion for class certification and deny Defendants' motion to strike the expert report of Dr. Netz.  (Dkt. Nos. 1742 and 1743)  On September 24, 2013, the Honorable Samuel Conti adopted the Special Master's Reports and Recommendations and certified 22 state-wide classes of indirect purchasers of CRTs.  (Dkt. No. 1950)  The Ninth Circuit Court of Appeals denied the Defendants' petition to appeal the District Court's order pursuant to Fed. R. Civ. P. 23(f).  (Dkt. No. 2283)

14. On May 18, 2013, Plaintiffs entered into a settlement with LG Electronics, Inc. and LG Electronics USA, Inc., for $25,000,000 cash.  The Court granted Preliminary Approval of this settlement on December 9, 2013 (Dkt No. 2248), and Final Approval on April 18, 2014 (Dkt. No. 2542)

15. Merits depositions began in December 2012.  Plaintiffs have taken and defended a substantial number of depositions in this case.  Each of the 24 class representatives was deposed by Defendants, and Plaintiffs have taken over 30 depositions of Defendants under F.R.C.P. 30(b)(6), as well as over 70 merits depositions of defense witnesses.  Several of these depositions took place abroad in Taiwan, Korea, Mexico and England.  There have also been numerous other depositions of expert witnesses, third party resellers of finished products containing CRTs, and witnesses for the Direct Action Plaintiffs ("DAPs").[1]  Plaintiffs' expert economist, Dr. Netz, was deposed five times during the course of the litigation.

16. In the last year, Plaintiffs have been preparing for trial, which originally was scheduled to begin on March 9, 2015.[2]  The parties exchanged expert reports on liability and damages starting in April 2014 and continuing through September 2014.  These included opening, opposition, rebuttal and sur-rebuttal reports from 17 expert witnesses, all of whom were deposed, often multiple times, regarding their reports.

---

[1] The DAPs are another group of plaintiffs in this case that purchased CRT Products directly from defendants.  They include computer and television manufacturers such as Dell and Sharp, and retailers such as Target, Best Buy and Costco. The DAPs joined this litigation between 2011 and 2014.  Plaintiffs have worked closely with the DAPs to coordinate and minimize duplication of effort.

4

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-SC

17. Merits discovery closed on September 5, 2014, but some discovery continued after the September 5 discovery cut-off. In particular, several depositions were scheduled after September 5 and contention interrogatories propounded by all parties led to Plaintiffs filing several motions to compel further responses from certain defendants.

18. On November 7, 2014, the Defendants filed 36 motions for summary judgment. Eleven of these were directed specifically at Plaintiffs' claims. These motions were fully briefed before the Proposed Settlements were executed. The motions have been withdrawn in light of the Settlements.

19. Most recently, the parties exchanged trial exhibit lists, witness lists, deposition designations, jury instructions and special verdict forms, and filed 64 motions *in limine* and other pretrial motions. These motions were briefed in varying degrees before the Proposed Settlements were executed. Pursuant to the Proposed Settlements, the Settling Defendants have provisionally withdrawn all of the motions pending against Plaintiffs. (Dkt. Nos. 3801, 3802, 3812, 3851, 3852)

**The Proposed Settlements**

20. The Proposed Settlements resolve all claims against Settling Defendants for their alleged part in the alleged global conspiracy to fix prices of CRTs.

21. The proposed Settlement Class is defined according to the class alleged in Plaintiffs' operative complaint (*see* Fourth Consolidated Amended Complaint, Dkt. No. 1526) because Settling Defendants required a complete release of all allegations made against them in this litigation.

22. The proposed Settlement Class is slightly broader than the class certified by the Court ("Certified Class") in the following respects: (1) the Certified Class did not include the nationwide, injunctive relief class; (2) the Certified Class requires that the Statewide Damages Class Members be residents of the respective States, whereas the Settlement Class requires only that the purchase was made in one of the States; and (3) the Certified Class is limited to

---

[2] By Order dated February 9, 2015, the Court vacated the trial date (Dkt. No. 3515).

televisions and monitors containing CRTs, whereas the Settlement Class includes CRTs, televisions and monitors containing CRTs, and other products containing CRTs.

23. The settlement negotiations with Settling Defendants were hard-fought and at times contentious. Each settlement was reached only after extensive, arm's-length negotiations between counsel for the Settling Defendant and Plaintiffs. The parties were assisted by the Honorable Vaughn R. Walker (Ret.), former Chief Judge of the Northern District of California, and the Honorable Fern Smith (Ret.), former Judge of the Northern District of California.

24. Settlement discussions with Philips began many months prior to reaching an agreement in principle. Judge Walker assisted the parties in reaching the final settlement, which was executed on January 26, 2015. A copy of the Settlement Agreement with Philips is attached hereto as Exhibit A.

25. Plaintiffs began negotiations with Panasonic more than six months prior to reaching a settlement. Judge Walker assisted the parties in reaching a settlement during the latter part of 2014. The final agreement was executed on January 28, 2015. A copy of the Settlement Agreement with Panasonic is attached hereto as Exhibit B.

26. Plaintiffs and Hitachi engaged in mediation before Judge Walker on March 5, 2014. The parties continued to discuss settlement with Judge Walker's assistance for the remainder of 2014 and executed the settlement on February 19, 2015. A copy of the Settlement Agreement with Hitachi is attached hereto as Exhibit C.

27. The initial settlement efforts with Toshiba continued for a number of months in 2014 but were unsuccessful, as was the mediation session on February 3, 2015 with Judge Fern Smith. Judge Smith continued her mediation efforts in the weeks that followed and, with her assistance, the parties were able to reach a settlement. The final settlement was executed on March 6, 2015. A copy of the Settlement Agreement with Toshiba is attached hereto as Exhibit D.

28. An agreement in principle was reached with Samsung SDI on January 23, 2015 after two full days of mediation with Judge Walker. The parties continued to negotiate the terms of the settlement with Judge Walker's assistance for two months thereafter. The final settlement

was executed on April 1, 2015.  A copy of the Settlement Agreement with Samsung SDI is attached hereto as Exhibit E.

29.     Under the Proposed Settlements, the Settling Defendants have paid a total of Five Hundred and Twenty Eight Million Dollars ($528,000,000) in cash to settle all indirect purchaser claims against them.[3]

30.     The Settlement Amounts have been deposited into an escrow account and have been invested in United States Treasury bills and other instruments insured or guaranteed by the full faith and credit of the United States.  If the Settlements are finally approved, any interest earned thereon (together with the Settlement Amounts) will become part of the Settlement Fund.

31.     In addition to monetary consideration, all of the Proposed Settlements contain cooperation provisions that require Settling Defendants to provide specified cooperation to Plaintiffs in the prosecution of any continuing litigation.  I believe that the cooperation provisions are material and valuable terms of the Settlements.  They enhanced the settlement prospects with the remaining defendants because they obligated Settling Defendants, to varying degrees, to provide cooperation to the Plaintiffs in prosecuting the remaining Defendants, including authentication of documents, producing witnesses for interviews, depositions and/or trial, and providing other assistance.[4]

32.     Upon these Settlements becoming final, Plaintiffs and class members will release all federal and state-law claims against a Settling Defendant whose settlement becomes final, "concerning the manufacture, supply, distribution, sales or pricing of CRT Products . . . ."[5] The release does not include claims for product defect, personal injury or breach of contract.[6]

---

[3] *See* Ex. A (Philips Settlement Agreement), ¶ 6 ($175,000,000 cash payment); Ex. B (Panasonic Settlement Agreement), ¶ 6 ($70,000,000 cash payment); Ex. C (Hitachi Settlement Agreement), ¶ 6 ($28,000,000 cash payment); Ex. D (Toshiba Settlement Agreement), ¶ 6 ($30,000,000 cash payment); and Ex. E (Samsung SDI Settlement Agreement), ¶ 6 ($225,000,000 cash payment) (together referred to herein as the "Settlement Amount").

[4] *See* Exs. A-E, ¶¶ 23- 24.

[5] *Id.,* Exs. A-E at ¶¶ 13-14.

[6] *Id.,* Exs. A-E at ¶ 15.

33. In the context of indirect purchaser price-fixing cases, it is my understanding that the total settlement amount here is second only to the *LCD* litigation, where the conspiracy started more recently (2001), most of the defendants had pled guilty to violations of the Sherman Act and admitted that their conduct had an impact in the United States, and the DOJ's criminal fines totaled $894 million. Here, the conspiracy period started 20 years ago (i.e., 1995), only one defendant pled guilty to fixing prices of one type of CRT (Color Display Tubes used in monitors), and only for sales to certain customers, and the DOJ's single criminal fine of $32 million amounted to less than 3.5 percent of the fines made in connection with LCD conspiracy.

34. Plaintiffs' expert estimated the total class damages in this case to be $2.768 billion, with CRT monitors accounting for approximately $2 billion, and CRT televisions accounting for approximately $768 million. Using the same data and methodology, and correcting for what Defendants argued were "fatal flaws" in Dr. Netz's work, one defense expert estimated the total class damages to be approximately $61 million. Other defense experts maintained that the total class damages were zero.

35. Over the course of the last seven years, Plaintiffs have reviewed and analyzed millions of documents produced by Defendants and third parties, taken over 100 depositions of defense witnesses, and have conducted extensive economic analyses of the Defendants' and third parties' data. Plaintiffs participated in three mock trials and observed 11 mock juries. Plaintiffs were fully prepared to try this case to a jury.

36. I have been practicing in antitrust and consumer class actions – and specifically indirect purchaser antitrust class actions – for over 40 years. It is my opinion that the Proposed Settlements are in the best interests of the class members.

37. The Representative Plaintiffs have a genuine interest in the litigation and understand the allegations in this case. They have reviewed the pleadings in this case, responded to written discovery, produced the documents requested and have been deposed by Defendants.

//
//
//

**Proposed Notice Program**

38. I have retained an experienced class action administrator, The Notice Company, to give notice of these Settlements to the members of the Settlement Class. The notice program will consist of both mailed and published notice, as well as posting of the Notice on the Internet. The components of the notice program are substantially similar to the notice programs approved by the Court in connection with the previously-approved settlements, and indeed go beyond the previously-approved notice programs.

39. Attached hereto as Exhibit F is a copy of the Summary Notice that Plaintiffs intend to publish in various newspapers and/or magazines throughout the United States and which will direct potential class members to the website, www.CRTclaims.com, and the Detailed Notice.

40. Attached hereto as Exhibit G is a copy of the Detailed Notice that Plaintiffs intend to publish on the website www.CRTclaims.com, along with copies of the Settlement Agreements, the papers filed in support of the motion for preliminary approval and other important documents.

41. The Notices describe the nature of the litigation and the general terms of the Proposed Settlements, and inform potential class members that complete information is available from the court files and from the settlement website at www.CRTclaims.com. The notices explain that class members must submit a claim form in order to receive compensation, and sets forth the deadline and process for submitting a claim. The notices also explain that class members have the right to exclude themselves from the Proposed Settlements[7] or object to any aspect of them, and clearly state the procedure and deadlines for doing so. Finally, the Notices explain that the judgment against Settling Defendants will bind all class members who do not exclude themselves, and that any class member who does not exclude himself may appear through counsel at the Fairness Hearing.

---

[7] Even though members of the Statewide Damages Classes were previously given an opportunity to exclude themselves from the Certified Class, Plaintiffs propose that class members be provided the opportunity to exclude themselves from the Settlement Class. *See* Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("A decision to remain in the class is likely to be more carefully considered and is better informed when settlement terms are known.").

9

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-SC

42.     Settling Defendants have informed me that, in accordance with the Class Action Fairness Act, 28 U.S.C. §1715 ("CAFA"), they will provide notice of the Proposed Settlements to the Attorney General of the United States and the Attorney Generals of all 50 States within ten days of the filing of this motion.

**Proposed Plan of Distribution**

43.     We propose to compensate members of the Statewide Damages Classes according to a plan of distribution, which provides that qualifying claimants will be eligible to claim their pro-rata share of the Settlement Fund based on the number of valid claims filed, and the number and type of CRT Products each claimant purchased during the class period.

44.     The Settlement Administrator will first compute the straight pro-rata distribution of the available Settlement Fund among all claimed product purchases, with claims for Standard CRT Televisions (televisions with a screen size of less than 30 inches) getting a weight of 1; Large CRT Televisions (televisions with a screen size of 30 inches or larger) getting a weight of 4.3; and CRT Computer Monitors getting a weight of 3.

45.     The weighting of the different CRT Products in this manner is necessary to reflect the relative harm to purchasers of those products.  The data produced in this case shows that the CRTs used in televisions with a screen size of 30 inches or larger were significantly more expensive than the CRTs used in televisions less than 30 inches.  After reviewing the data and consulting with Plaintiffs' expert, Dr. Janet Netz, it became necessary to create two categories for CRT televisions (Standard CRT Televisions and Large CRT Televisions) to ensure that purchasers of Large CRT Televisions are properly compensated.

46.     In addition, based on Dr. Netz's findings that the overcharge on monitor tubes was more than twice the overcharge on television tubes, it is appropriate to give greater weight to CRT Computer Monitors than Standard CRT televisions.

47.     However, the data produced in this case also shows that Large CRT Televisions contain the largest, most expensive CRTs.  On average, they are approximately twice the size and four times the price of CRTs used in monitors.  So even though Dr. Netz found the overcharge percentage on television tubes to be less than for monitor tubes, the average dollar overcharge is

greater for Large CRT Televisions than for CRT Computer Monitors (overcharge percentage times higher price = higher overcharge).

48.     Because there will very likely be a broad range in the number of products purchased by claimants - with some average individual consumers reporting one or two products purchased, and some corporate claimants reporting thousands of products purchased - the next step will be to determine a minimum payment amount.  Based on historical claim rates, it is expected that there will be sufficient funds to distribute a minimum payment of at least $25 to eligible class members who submit a valid claim form. The purpose of the minimum payment amount is to incentivize the filing of claims by small purchasers whose straight pro-rata distribution amount would be less than the expected minimum payment amount of $25.  Thus, a hypothetical consumer claimant whose straight pro-rata distribution amount would have been only $15 would instead receive the minimum payment amount of $25.  A hypothetical claimant whose straight pro-rata distribution amount would have been *greater* than $25 will continue to receive a larger amount based on an adjusted pro-rata distribution ("adjusted" to compensate for the effect of the minimum payment amount).  The minimum payment amount of $25 represents the Plaintiffs' reasonable estimate at this time; the actual amount cannot be determined until all claims have been processed. The Court's approval for the minimum payment will be requested when the data from the actual claims process is available.

49.     Using this adjusted pro-rata distribution plan will ensure that all valid claimants receive fair compensation based directly on their purchases of CRT Products.  The minimum payment ensures that small claimants *(i.e.,* most individual consumers) receive meaningful compensation for their participation in the claims process.

50.     Additionally, a maximum payment amount of three times the estimated money damages per claimant will apply.  Upon final approval, none of the Settlement Fund will revert to any defendant.  Members of the Nationwide Class, who are not also members of any Statewide Damages Class, will not receive monetary compensation.

51.     All Statewide Damages Class members who seek payment from the Settlement Fund will be required to complete a claim form containing: (i) the class member's contact

11

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-SC

1  information; (ii) verification of membership in one of the Statewide Damages Classes; (iii) the
2  number and type of each CRT Product purchased during the class period; and (iv) an attestation
3  under penalty of perjury that the information provided is accurate. The proposed claim form is
4  attached hereto as Exhibit H.

5  52.  All claimants will also be subject to auditing and requests for documentation of
6  purchases by the Settlement Administrator. The Settlement Administrator will use commercially
7  reasonable efforts to identify and investigate claims.

**Notice Costs, Litigation Expenses and Attorneys' Fees**

53.  The Proposed Settlements provide that counsel for the Plaintiffs may apply to the Court for an award of attorneys' fees (not to exceed one-third of the Settlement Fund), and for payment of notice costs[8] and litigation expenses, all of which come out of the Settlement Fund. The Settling Defendants have agreed that a certain amount of the Settlement Fund can be used for notice costs, and will not oppose Plaintiffs' application for attorneys' fees and litigation expenses.[9]

54.  The Proposed Notices (attached hereto as Exhibits F and G) advise that the Plaintiffs intend to apply for attorneys' fees (not to exceed one-third of the Settlement Fund), notice costs and litigation expenses. These applications will be heard at the final approval hearing or other date determined by the Court. Additionally, the Proposed Notices advise that the Plaintiffs intend to apply for individual incentive awards for the indirect purchaser class representatives, all of whom fully participated in the discovery phase of the case. Several class representatives were also preparing to participate in the trial. These applications will be filed with the Court and posted to the website www.CRTclaims.com at least 14 days in advance of the deadline for objections to give class members an opportunity to review the applications and either support or file objections to them.

---

[8] The Settlement Administrator provides estimates of the notice and administration costs in the Fisher Decl., ¶ 33.

[9] *See* Ex. A (Philips Settlement), ¶¶ 19, 23; Ex. B (Panasonic Settlement), ¶¶ 18, 22; Ex. C (Hitachi Settlement), ¶¶ 18, 22; Ex. D (Toshiba Settlement), ¶¶ 18, 22; and Ex. E (Samsung SDI Settlement), ¶¶ 19, 23.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 29th day of May 2015 at San Francisco, California.

        /s/ Mario N. Alioto
           Mario N. Alioto

***Class Counsel for the Indirect Purchaser Plaintiffs***

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-SC