Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Class Counsel for the
Indirect Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Indirect Purchaser Actions | Master File No. CV-07-5944-SC<br><br>MDL No. 1917<br><br>**DECLARATION OF JOSEPH M. FISHER RE: NOTICE PROGRAM**<br><br>Hearing Date: July 31, 2015<br>Time: 10:00 a.m.
Courtroom: One, 17th Floor
Judge: Honorable Samuel Conti |

I, Joseph M. Fisher, declare:

## INTRODUCTION

1.  <u>Identification</u>.  I am the president of The Notice Company, Inc., a Massachusetts corporation with offices at 94 Station Street, Hingham, MA 02043 ("The Notice Company"). The Notice Company is principally engaged in the administration of class action settlements and lawsuits pending in courts around the United States, including the dissemination of notice to class members, administering the claims process, and distributing the proceeds of the litigation to the class.  I have over a decade of experience assisting attorneys with class action notices and claims administration.  I am also a member in good standing of the bars of the Commonwealth of Massachusetts, the District of Columbia, and the Commonwealth of Virginia.  I am over 21 years of age and not a party to this action.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify thereto under oath.  Attached as **Exhibit A** hereto is a listing of cases where The Notice Company has implemented notice programs in cases throughout the United States.

2.  <u>Prior Declarations and Notice Programs in this Litigation</u>.  This is the third declaration I have submitted in this matter.  In my declaration dated February 28, 2012 (Dkt. Nos. 1063-1065), I reported on the class notice program for the settlement with defendant Chunghwa Picture Tubes, Ltd (the "Chunghwa Settlement").  This Court found that the notice program for the Chunghwa Settlement "constitutes the best notice practicable under the circumstances, is due and sufficient notice to the Indirect Purchaser Settlement Class and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States."  Order Granting Preliminary Approval of the Chunghwa Settlement, ¶ 13 (Dkt. No. 992). In my declaration dated March 27, 2014 (Dkt. Nos. 2511-2514), I reported on the class notice program for the certified class and the settlement with defendants LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Taiwan Taipei Co., Ltd (the "LG Settlement").  This Court found that the notice program for the LG Settlement "constitutes the best notice practicable under the circumstances, is due and sufficient notice to the Indirect Purchaser Settlement Class and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process

requirements of the Constitution of the United States." Revised Order Granting Preliminary Approval of the LG Settlement, ¶ 12 (Dkt No. 2248).

3. <u>Purpose of Declaration</u>. The purpose of this Declaration is to propose a program for providing notice of five new Settlements to the Settlement Class, including notice of the claims process available to qualifying members of the Settlement Class, in a manner that effectively reaches the Settlement Class, that constitutes the best notice practicable under the circumstances and that complies fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure.

4. <u>Proposed Settlement Class</u>. The parties propose a Settlement Class consisting of a Nationwide Class and Statewide Damages Classes (jointly "Class Members") defined as follows:

NATIONWIDE CLASS:

All persons and or entities who or which indirectly purchased in the United States for their own use and not for resale, CRT Products[1] manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time during the period from March 1, 1995, through November 25, 2007. Specifically excluded from this Class are claims on behalf of Illinois persons (as defined by 740 ILCS 10/4) for purposes of claims under 740 Ill. Comp. Stat § 10/7(2), Oregon natural persons (as defined by ORS 646.705 (2)) for purposes of claims under ORS § 646.775(1), and Washington persons (as defined by RCW 19.86.080) for purposes of claims under RCW 19.86.080 (1). Also specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are named co-conspirators, any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

STATEWIDE DAMAGES CLASSES:[2]

All persons and or entities in Arizona, California, District of Columbia, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin who or which indirectly purchased for their own use and not for resale,

---

[1] CRT Products are defined in the Settlement Agreements to mean Cathode Ray Tubes of any type (e.g. color display tubes, color picture tubes and monochrome display tubes) and products containing Cathode Ray Tubes ("CRTs").

[2] All of the Statewide Damages Classes are the same except that three states, Hawaii, Nebraska and Nevada, have slightly shorter damages periods. Class Counsel informs me that the Settlement Class requires only that the purchase of CRT Products was made in one of the listed States regardless of the residency of the Statewide Damages Class Members.

CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time during the period from March 1, 1995, through November 25, 2007.

All persons and entities in Hawaii who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time from June 25, 2002, through November 25, 2007.

All persons and entities in Nebraska who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time from July 20, 2002, through November 25, 2007.

All persons and entities in Nevada who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time from February 4, 1999, through November 25, 2007.

EXCLUSIONS:

Specifically excluded from these Classes are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are named co-conspirators, any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

## FORMS OF NOTICE

5. <u>Summary Notice and Detailed Notice</u>. Attached hereto as **Exhibits B and C**, respectively, are the Detailed Notice and Summary Notice in the forms agreed upon by the parties to the Settlements. Each form of notice describes the nature of the pending litigation; reviews the general terms of the proposed settlement; states that complete information is available from the court files and from the settlement website at ***www.CRTclaims.com***; informs class members that they may appear and be heard at the fairness hearing; provides the date and location of the fairness hearing; informs class members of their opt out rights; identifies the deadline for submitting opt outs and objections; informs class members that the judgment will bind all class members who do not opt-out, and that any member who does not opt-out may appear through counsel; and sets forth the deadline and process for submitting claims for payment under the Settlement. In addition, each form of

3
DECLARATION OF JOSEPH M. FISHER RE: NOTICE PROGRAM– Master File No. CV-07-5944-SC

notice provides a toll-free telephone number which class members may call to obtain additional information or to request a Claim Form, as well as SMS[3] Text Messaging instructions for requesting a Claim Form.  Class Members who request a Claim Form will have the opportunity to fill out a Claim Form, online or in hard copy, substantially in the form of **Exhibit D** attached hereto.

6. <u>Spanish Language</u>.  The attached forms of the Detailed Notice and Summary Notice are in English, but they will also be translated into Spanish for use in Spanish-language publications, for a Hispanic press release, and on the website.

7. <u>Plain Language</u>.  The Detailed Notice and Summary Notice are written in a clear, plain and concise style appropriate for the target audience.  The Detailed Notice includes an overall summary of the notice, uses short bullet points that highlight the nature of the case and the purpose of the notice, includes a table of contents, organizes the topics into different sections and places the information in a logical order. The Summary Notice is short but comprehensive; it refers to all of the requirements of Rule 23 in a simple and clear summary fashion. The notices comport with the plain language standards for legal noticing.

**NOTICE PROGRAM**

8. <u>Summary of Notice Program</u>.  The scope of the proposed Notice Program will exceed the programs previously approved by the Court for the Chunghwa Settlement, the LG Settlement and the certified classes.  The proposed Notice Program utilizes a combination of the following:

(a) Direct Notice by mail and email;

(b) Paid Print Media;

(c) Online Media;

(d) Social Media; and

(e) Earned Media, including Press Releases.

---

[3] "SMS" stands for short message service, which allows short text message to be sent by cell phone or web.

9. <u>Target Audience</u>. The Settlement Class includes all consumers who indirectly purchased CRTs and/or products containing CRTs, such as televisions and computer monitors, nationwide from March 1, 1995, through November 25, 2007. The Settlement Class encompasses the vast majority of U.S. households during the early portion of that time period. <u>Televisions</u>: According to the Nielsen Television Index (NTI), more than 98% percent of U.S. households had at least one television set throughout the period 1995 to 2007.[4] CRT technology accounted for virtually all television sales in 1995, declining markedly to less than 27% by 2007.[5] Sales of CRT televisions sold during the period 1995 to 2002 accounted for nearly 69% of all CRT TV sales from 1995 to 2007.[6] <u>Computer Monitors</u>: The percentage of households with computers ranged from approximately 37% in 1997 to nearly 70% in 2007.[7] Computer usage by businesses was also prevalent throughout the period. For example, in 2003, 55.5% of all workers in the United States were using computers.[8] Up until 2002, most computer displays sold were CRT monitors, declining steadily thereafter, with CRT sales during the period 1995 to 2002 accounting for approximately 85% of all CRT monitors sold from 1995 to 2007.[9] <u>Demographics</u>: For purposes of identifying the

---

[4] Television Bureau of Advertising, Inc., *TV Basics*, p. 2 (2010). See also The American Council for an Energy-Efficient Economy (ACEEE), *Televisions, Computers, and Set-top Boxes: The Big Three of 2010 Home Consumer Electronics Energy Consumption* (2012), p. 9-302 ("Televisions are the most widely owned consumer electronic device in the U.S. at 95-99% household penetration in 2010").

[5] ACEEE, supra at 9-305; U.S. EPA, *Electronics Waste Management in the United States Through 2009*, p. 11 (May 2011); Joseph A. Castellano, Stanford Resources, Inc., *Market Trends for Displays in Consumer Television* ("CRTs will account for 97.1% of televisions in 2000, slipping to 96.2% in 2004"). See also NPD DisplaySearch, *LCD TV Growth Improving, As Plasma and CRT TV Disappear*, (April 16, 2014) at http://www.displaysearch.com/cps/rde/xchg/displaysearch/hs.xsl/140415_lcd_tv_growth_improving_as_plasma_and_crt_tv_disappear.asp.

[6] U.S. EPA, *supra* note 5.

[7] U.S. Census Bureau, *Computer and Internet Use in the United States*, p. 2 (May 2013).

[8] U.S. Bureau of Labor Statistics, *Computer and Internet Use At Work*, http://www.bls.gov/news.release/ciuaw.nr0.htm (August 2, 2005).

[9] In 1995, 88% of computer display sales were CRT monitors; in 2000, 89% of computer display sales were CRT monitors; in 2002, two-thirds of computer display sales were CRT monitors. The major shift away from CRTs occurred in 2003, when only 47% of computer display sales were CRT monitors; by 2007, CRT monitors had dropped to 2.4% of computer display sales. While sales during the period 1995 to 2002 accounted for about 85% of all CRT monitors sold from 1995 to 2007, the bulk of CRT monitor sales occurred in the earlier years. Indeed, sales during the shorter period from 1995 to 2000 accounted for approximately two-thirds of all CRT monitors sold from 1995 to 2007. U.S. EPA, *supra* note 5, at 11.

current demographic characteristics of Class Members (i.e., their age and income today),[10] I estimate that approximately 90% of individual Class Members are 30+ years of age, and approximately 80% are aged 35+.[11] During the class period, ownership of CRT televisions was widespread throughout all income groups, although persons in the top three quintiles of income (60% of the population) accounted for approximately 75% of expenditures on televisions.[12] Ownership of home computers was directly related to household income during the class period. In 2005, for example, 60% of the population in the lowest two quintiles of income had no (zero) computers at home, compared to the upper three quintiles of income where over 71% had at least one computer at home.[13] Given these significant percentages, in combination with Class Member's ages during the Class Period, the target audience for purposes of measuring delivery of media to Class Members will be persons aged 30 years of age or older with a household income over $60,000 who own televisions or computers.[14]

### Direct Notice

10.  **Preference for Direct Notice**. Rule 23 requires the Court to direct to Class Members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Class Members in the present litigation were all indirect purchasers. A typical Class Member purchased a

---

[10] Targeting an audience is often discussed in the context of reaching a group of persons who currently purchase, or are expected to purchase, a particular product. In the present case I will be targeting a designated demographic group, rather than a group of intended purchasers, because CRT televisions and computer monitors are no longer being sold. See NPD DisplaySearch, *supra* note 5.

[11] Adults who were 18+ years of age as of March 1, 1995 would now be 38+ years old; adults who were 18+ in 2000 would be 33+ years old today; adults aged 18+ in 2002 would be 31+ years old today; and adults aged 18+ as of November 25, 2007 would be at least 25 years old today. Based on U.S. Census Bureau data (2014 National Population Projections), approximately 90% of all persons categorized as adults during the class period would have a current age of 30+ years, and approximately 80% of all persons categorized as adults during the class period would have a current age of 35+ years.

[12] Neil Tseng, U.S. Bureau of Labor Statistics, *Expenditures on Entertainment, Consumer Expenditure Survey Anthology*, 2003, p. 77 (reporting on expenditures on televisions, radios, and sound equipment). In 2000, the top three quintiles referred to income greater than $40,840. U.S. Census Bureau, Income Limits for Each Fifth and Top 5 Percent of Families (2014). In today's dollars this amounts to income in excess of $56,000.

[13] U.S. Census Bureau, *Computer and Internet Use* (2005).

[14] Print media are tracked by GfK MRI Doublebase, which allows for age groupings for persons 30+ years of age. Online media are tracked by comScore, which tracks the age bracket of 35+ years of age. See the discussion at notes 18 to 20, *infra*.

television or computer monitor from a retail store such as Best Buy or Costco.  Lists of the names and addresses of specific consumers who indirectly purchased CRT Products from 1995 to 2007 are not available to The Notice Company.  Nonetheless, given the fact that CRT televisions and computers were widely owned by personal and business consumers throughout this period, The Notice Company has used reasonable efforts to identify likely members of the Settlement Class in order to provide direct notice, as follows:

11. <u>Direct Notice by Mail: Compiled Lists of Businesses and Organizations</u>.  The Notice Company has compiled the following lists of names and addresses for businesses and organizations that are likely members of the Settlement Class, who likely purchased large quantities of CRT televisions and/or computer monitors during the relevant period:

a) Every Fortune 500 Company for each year from 1995 to 2007;

b) 300 largest Private Colleges and Universities in the United States located in the 22 jurisdictions covered by the Statewide Damages Classes;

c) 200 largest Private Schools (secondary schools) in the United States located in the 22 jurisdictions covered by the Statewide Damages Classes; and

e) 50 largest Hospitals in the United States (not owned by any federal, state or local governmental entity) located in the 22 jurisdictions covered by the Statewide Damages Classes.

These four lists when combined, duplicate and defunct companies eliminated, result in a mailing list consisting of 1,317 entities.  The Notice Company proposes to mail the Summary Notice to each entry on the list.

12. <u>Direct Notice by Email: List of Small Businesses in the Statewide Damages Classes</u>.  In order to broaden the reach of direct notice to encompass smaller businesses that may potentially qualify under the Settlements to file a claim, The Notice Company has identified a list of email addresses for small business owners (businesses typically ranging from five to twenty-five employees).  The Notice Company has narrowed the list to small businesses located in one of the 22 jurisdictions covered by the Statewide Damages Classes.  There are approximately 1.3 million email addresses that meet this geographical restriction.  These are all opt-in email addresses, CAN-SPAM

compliant,[15] which means that the companies have consented to the use of their emails by third parties. The Notice Company proposes to send to this email list the Email Notice in the form attached hereto as **Exhibit E**.

13. <u>Direct Notice by Email: List of Consumers in the Statewide Damages Classes</u>. In order to reach individual consumers who potentially may qualify to file a claim as members of the Settlement Class, The Notice Company has identified a list of email addresses for individual consumers with interests in computers, televisions and consumer electronics in general. The Notice Company has narrowed the list to persons who were at least 18 years of age in 2007 (the last year of the Class Period) and who reside in one of the 22 jurisdictions covered by the Statewide Damages Classes. There are approximately 7.2 million email addresses that meet these restrictions. These are all opt-in email addresses, CAN-SPAM compliant. The Notice Company proposes to send to this email list the Email Notice in substantially the form attached hereto as **Exhibit E**.

15. <u>Direct Notice by Email: NYTimes.com readers</u>. The Notice Company has arranged for a banner link to the CRT Summary Notice to be included in the daily emails sent by The New York Times to subscribers to its NYTimes.com online publication. The email banner will be visible in the body of the email, will highlight the CRT settlement and claims process, and will allow readers to link directly to the settlement website. Subscribers to NYTimes.com fit well within the demographic of the target audience identified above. Further, NYTimes.com reports that only 7.3% of its online subscribers are dual subscribers to the print version of *The New York Times*, which means that there will be minimal overlap between the notice banners sent by email and the print version of the Summary Notice planned for The New York Times as described below. The Notice Company will arrange for the notice banner to be featured in 2.6 million emails sent out by NYTimes.com.

16. <u>Total Direct Notice</u>. Combined mail and email distribution of notice is expected to be sent to more than 10 million individual consumers and businesses.[16]

---

[15] CAN-SPAM Act is a law that sets the rules for commercial email, establishes requirements for commercial messages, gives recipients the right to have you stop emailing them, and spells out penalties for violations.

**Paid Media**

17. <u>Summary of Paid Print Media</u>. In addition to sending direct notice to likely members of the Settlement Class, The Notice Company has designed a paid media program to reach members of the Settlement Class through paid advertisements in print media, including notices to appear in national newspapers, newspapers supplements, magazines, and local newspapers in U.S. territories.

18. <u>List of Publications</u>. Recognizing that the notice could potentially be directed to nearly all U.S. businesses that were operating from 1995 to 2007 and to most U.S. households where persons are currently at least 25 years of age or older, and recognizing the impracticality of sending direct notice to more than 115 million households in the United States, The Notice Company targeted the appropriate demographic for potential class members in order to select the following print media for publication of the Summary Notice:

**TABLE 1**

| Name | Circulation | Readership | Number of Insertions |
|---|---|---|---|
| **Newspapers** | | | |
| *Parade* (Sunday Magazine) | 22,790,000 | 50,853,000 | 1 |
| *American Profile* (Sunday Magazine) | 6,000,000 | 16,000,000 | 1 |
| *The Wall Street Journal* | 1,356,000 | 3,500,000 | 1 |
| *USA Today* | 1,259,000 | 3,900,000 | 1 |
| *The New York Times* (Sunday national edition) | 1,221,000 | 3,900,000 | 1 |
| **Magazines** | | | |
| *People* | 3,537,000 | 42,615,000 | 2 |
| *Time* | 3,282,000 | 16,613,000 | 1 |

---

[16] There may be duplication among the various lists, which means that the number of unique recipients may be less than the total number referenced above.

| | | | |
|---|---:|---:|---:|
| *Sports Illustrated* | 3,021,000 | 18,288,000 | 1 |
| *TV Guide* | 1,815,000 | 13,184,000 | 1 |
| **Outreach to Puerto Rico** | | | |
| *El Nueva Dia* (Most widely read newspaper in Puerto Rico; notice in Spanish) | 200,000 | 1,200,000 | 1 |

19. <u>Circulation and Readership</u>. Circulation data are reported by the various publications and, for major publications, are verified by the Alliance for Audited Media (AAM), formerly known as the Audit Bureau of Circulations (ABC). Readership is based on surveys; readership typically exceeds circulation because the same copy of a newspaper or magazine may be passed around from person to person.

20. <u>National Newspapers</u>. **Parade** is the most widely read magazine in the United States; it is distributed in more than 600 newspapers throughout the country as shown in **Exhibit F** attached hereto. *American Profile* is a weekly, full-color newspaper-distributed magazine that is carried by over 980 newspapers across the country as shown in **Exhibit G** attached hereto. The newspaper distribution between *Parade* and *American Profile* is strikingly different; more than two thirds of *American Profile*'s readers do not read *Parade*, while only 8% of *Parade* readers also read *American Profile*. **The Wall Street Journal** is a national newspaper with a special focus on business and economic news; it is distributed throughout the United States as shown in **Exhibit H** attached hereto. *USA Today* is a national newspaper distributed throughout the United States as shown in **Exhibit I** attached hereto. **The New York Times** is widely read throughout the United States, as shown in **Exhibit J** attached hereto.

21. <u>National Magazines</u>. **People** is a weekly magazine focusing on human-interest stories, published by Time Inc. **Time** is a widely circulated weekly news magazine published by Time Inc. **Sports Illustrated** is a sports and human-interest magazine published weekly, also owned by Time Inc. **TV Guide** is a national publication focused on television viewing, published at weekly and bi-weekly intervals; it is owned by OpenGate Capital.

22. <u>Paid Internet Advertising</u>. In addition to paid print media, The Notice Company recommends utilizing Internet advertising to enhance the exposure of Class Members to the notice. Internet advertising allows class members to see the message on screen and to click through to read the notice in more detail and to complete the claim submission process.

23. <u>Web Ads</u>. The Notice Company intends to place ads, in the form of a web banner or text, on content-targeted websites and distribution networks including:

- AOL
- Google Display Network
- TVI
- Facebook
- PCMag
- IDG Tech Network
- Microsoft Ad Network

The web advertisements will be scheduled to appear for approximately 30 days.

24. <u>Reach and Frequency</u>. A media plan is often evaluated by its reach and frequency. Reach is the number or percent of persons expected to be exposed at least once to the notice.[17] Frequency refers to the average number of times an individual is expected to have the opportunity to see the notice.

>> It is estimated that the paid print media notices, *excluding* paid Internet advertising, will have a reach of approximately 58%, with an estimated average frequency of 1.8%, for the target group of adults aged 30+ who own TVs or computers with a household income of at least $60,000.[18]

---

[17] Reach is often discussed as a percentage of persons who purchase or, who may express an interest in purchasing, a particular product. As noted above, in the present case I am speaking of reaching a targeted demographic rather than a group of intended purchasers because CRT televisions and computer monitors are no longer being sold.

[18] The reach of paid print media is analyzed using data from GfK MRI Doublebase, one of the leading producers of media and consumer research in the United States. The category includes persons who own televisions, computers as well as other video/audio devices and electronics.

>> The combination of print media *plus* digital advertisements[19] is expected to reach approximately 80% of adults aged 30+ who own TVs or computers with a household income of at least $60,000 with an estimated frequency of 2 times.[20]

### Online, Social Media and Earned Media

25. <u>Settlement Website</u>.  The central focus of the online Notice Program will be the informational, interactive settlement website to be established at ***www.CRTclaims.com***.  The website will be accessible to members of the Settlement Class and will include copies of the Summary Notice, the Detailed Notice, relevant Court documents, and will provide answers to frequently asked questions, as well as a toll-free phone number for class members to call for additional information.  Claimants will be able to download a Claim Form, or they may elect to complete the claims process online.  Key dates will be posted on the "Dates to Remember" and the "Frequently Asked Questions" pages of the website, including the deadlines for opt outs, objections and claim submissions, as well as the date of the Fairness Hearing.  I will make sure that The Notice Company promptly updates the dates on the settlement website should any changes be required.

26. <u>Search Engines</u>.  The settlement website will be registered with major search engines on the Internet.  The settlement website will also be promoted on Google, Yahoo! and Bing through the purchase of appropriate keywords.

27. <u>Facebook</u>.  The Pew Research Center estimates that 71% of online adults use Facebook.  In order to engage with persons on Facebook, The Notice Company will establish a Facebook page dedicated to the CRT Settlement, which will include links to the settlement website and information about case deadlines and how to submit a claim.  The Facebook page is in addition to the purchase of ads on Facebook as referenced above.

---

[19] Analysis of digital media was made utilizing comScore, a leading technology company that measures Internet activity.

[20] The reach and frequency delivered by this proposed media plan is provided as a reasonable estimate at this time. Guaranteed impressions of digital media are usually secured when the media is actually purchased. Many factors may impact potential delivery: The final price negotiated for purchases of digital media may yield a higher or lower number of impressions based on market conditions; the viral nature of digital media, such as Facebook, Twitter and blogs, may result in a greater number of impressions than initially expected.

28. <u>Press Release - English</u>. The print and online media program will be promoted by issuing the Summary Notice as a nationwide press release utilizing the U.S. domestic news line of PR Newswire. Attached hereto as Exhibit K is a current listing of the distribution outlets to which the press release will be issued, which includes local and regional magazines, news services, newspapers, online media, blogs, radio and television across the country.

29. <u>Press Release - Spanish</u>. The Notice Company will also issue the Summary Notice in Spanish as a nationwide press release utilizing PR Newswire's National Hispanic Newsline. Attached hereto as **Exhibit L** is a current listing of the distribution outlets to which the Spanish press release will be issued, which includes blogs, cable TV, broadcast TV, radio, magazines, newspapers and news services across the country.

30. <u>Twitter</u>. The Notice Company will utilize PR Newswire's Twitter feeds to increase the exposure of the notice. Press releases are shared in social networks many thousands of times each day. PR Newswire will post our Twitter message (100 characters or less) at staggered intervals to three of PR Newswire's industry-specific Twitter accounts, including a shortened link back to our press release.

31. <u>Blogs</u>. A blog is a discussion-style website that is regular updated and that typically focus on a particular topic of interest to its author(s). Nielsen observes: "Blogs are sometimes overlooked as a significant source of online buzz in comparison to social networking sites, yet consumer interest in blogs keeps growing."[21] Hubspot reports that 46% of people read blogs more than once a day.[22] The Notice Company, in conjunction with PR Newswire, will submit the Summary Notice to 212 blogs focused on Consumer Electronics, as listed in **Exhibit M** attached hereto, and to 1,089 blogs focused on legal issues as listed in **Exhibit N** attached hereto.

---

[21] The Nielsen Company, *Buzz in the Blogosphere: Millions More Bloggers and Blog Readers* (2012); http://www.nielsen.com/us/en/insights/news/2012/buzz-in-the-blogosphere-millions-more-bloggers-and-blog-readers.html.

[22] Hubspot, *The Ultimate List of Marketing Statistics*. http://www.hubspot.com/marketing-statistics

**SUMMARY**

32.   <u>Best Notice Practicable</u>.  In my opinion, the foregoing Notice Program constitutes the best notice practicable under the circumstances and complies fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure.

33.   <u>Cost Estimate</u>.  The estimated cost of the foregoing Notice Program is approximately $1,500,000.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed at Hingham, Massachusetts, this 27th day of May, 2015.

_____
JOSEPH M. FISHER

# DECLARATION OF JOSEPH M. FISHER
## LIST OF EXHIBITS

| | |
|---|---|
| Exhibit A . . . . . . . . . . . . . . . . . . . . . | Summary of Experience |
| Exhibit B . . . . . . . . . . . . . . . . . . . . . | Detailed Notice |
| Exhibit C . . . . . . . . . . . . . . . . . . . . . | Summary Notice |
| Exhibit D . . . . . . . . . . . . . . . . . . . . . | Claim Form |
| Exhibit E . . . . . . . . . . . . . . . . . . . . . | Email Notice |
| Exhibit F . . . . . . . . . . . . . . . . . . . . . | *Parade Magazine*: State-by-State Distribution |
| Exhibit G . . . . . . . . . . . . . . . . . . . . . | *American Profile*: State-by-State Distribution |
| Exhibit H . . . . . . . . . . . . . . . . . . . . . | *The Wall Street Journal*: National Distribution |
| Exhibit I . . . . . . . . . . . . . . . . . . . . . | *USA Today*: State-by-State Circulation |
| Exhibit J . . . . . . . . . . . . . . . . . . . . . | *The New York Times*: National Circulation |
| Exhibit K . . . . . . . . . . . . . . . . . . . . . | PR Newswire National Distribution Outlets |
| Exhibit L . . . . . . . . . . . . . . . . . . . . . | PR Newswire National Hispanic Newsline |
| Exhibit M . . . . . . . . . . . . . . . . . . . . . | PR Newswire Blog Distribution: Consumer Electronics |
| Exhibit N . . . . . . . . . . . . . . . . . . . . . | PR Newswire Blog Distribution: Legal Issues |