# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | No. CV-13-03234-SC <br><br> MDL No. 1917 |
| This Document Relates to: <br><br> *Luscher et al. v. Videocon Industries Limited, et al.* | |

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this _10th_ day of June, 2015 (the "Execution Date") by and between Technicolor SA (f/k/a Thomson SA), Technicolor USA, Inc. (f/k/a Thomson Consumer Electronics, Inc.) (collectively "Thomson"), Technologies Displays Americas LLC (formerly known as Thomson Americas LLC) ("TDA"), and the indirect-purchaser plaintiff class representatives ("Plaintiffs"), both individually and on behalf of a settlement class of indirect purchasers of Cathode Ray Tube (CRT) Products ("the Class") as more particularly defined in Paragraph 1 below.

WHEREAS, Plaintiffs are prosecuting the above *In Re Cathode Ray Tube (CRT) Antitrust Litigation,* MDL No. 1917 (N.D. Cal.) (the "Action") on their own behalf and on behalf of the Class against various defendants;

WHEREAS, Plaintiffs and Thomson previously entered into: (1) a Tolling Agreement, dated November 6, 2011, under which the parties agreed that the statutes of limitation on Plaintiffs' claims against Thomson would be tolled until the termination date of that agreement; and (2) an Agreement Concerning Proposed Amendment to Complaint, dated October 30, 2012, under which the Plaintiffs agreed not to name Thomson as a defendant in the Action but reserved the right to file a separate complaint

1

naming Thomson at a later date (together the "Tolling Agreements");

WHEREAS, Thomson is a defendant in several cases pending in the Action and has now elected to terminate any tolling provisions in favor of Plaintiffs in the Tolling Agreements;

WHEREAS, Plaintiffs intend to amend the *Luscher et al. v. Videocon Industries Ltd., et al.* complaint in the Action to add Thomson and TDA as defendants and allege that Thomson and TDA participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of CRT Products at artificially high levels in violation of Section 1 of the Sherman Act and various state statutes;

WHEREAS, Thomson and TDA deny Plaintiffs' allegations and assert defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving claims against Thomson and TDA according to the terms set forth below is in the best interest of Plaintiffs and the Class;

WHEREAS, Thomson and TDA, despite their belief that they are not liable for the claims asserted and have good defenses thereto, have nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Thomson and TDA based on the allegations of the Action, as more particularly set out below;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Releasees, as defined below, and except as hereinafter provided, without costs as to Plaintiffs, the Class, Thomson, or TDA, subject to the approval of the Court, on the following terms and conditions:

A.     Definitions.

1.     For purposes of this Agreement, "the Class" and "Class Period" are defined in the amended complaint that Plaintiffs shall file in the Action pursuant to

2

this agreement (the "Complaint"), or, if the Complaint is amended to expand the definition of either term, the operative complaint at the time this Agreement is presented for preliminary approval. The Complaint will define the "the Class" and "Class Period" to be consistent in scope with the settlement class definitions in Indirect Purchaser Plaintiffs' Notice of Motion and Motion for Preliminary Approval of Class Action Settlements with the Philips, Panasonic, Hitachi, Toshiba and Samsung SDI Defendants; Memorandum of Points and Authorities in Support Thereof (Dkt. 3861). The parties to this Agreement hereby stipulate for purposes of this settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied.

2.      For purposes of this Agreement, "CRT Products" are defined in the Complaint or, if that Complaint is further amended to expand the definition of CRT Products, the operative complaint at the time this Agreement is presented for preliminary approval. For purposes of clarity, the term "CRT Products" includes not only cathode ray tubes, but also electronic devices containing cathode ray tubes, such as televisions and computer monitors.

3.      "Releasees" means Thomson and  all of Thomson's past and present, direct and indirect, parents, subsidiaries, and affiliates and all of their respective past and present, direct and indirect, parents, subsidiaries, affiliates, unincorporated entities, divisions, and groups; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing. "Releasees" also includes TDA and all of TDA's past and present, direct and indirect,  subsidiaries, and all of their respective past and present, direct and indirect, subsidiaries, and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing. "Releasees" does not include Videocon Industries Limited or any other defendant in the Action ("Defendant") other than Thomson and TDA. The inclusion of both Thomson and TDA among the Releasees shall not be construed to suggest, for purposes of this Action or any related proceedings, that Thomson and TDA are in any way related entities, have any authority to speak on behalf of the other, or share liability or

3

defenses for any alleged conduct of the other.

4.     "Class Member" means each member of the Class who has not timely elected to be excluded from the Class.

5.     "Releasors" means the indirect-purchaser plaintiff Class representatives and the indirect-purchaser plaintiff Class Members, and  their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executives, administrators and assigns of any of the foregoing, as well as  anyone claiming by, for, or through the Releasors.

6.     "The Settlement Fund" shall be $13,750,000 USD, as specified in Paragraph 17, plus accrued interest on said deposits as set forth in Paragraph 18.

7.     "Class Counsel" shall refer to:
        Mario N. Alioto
        Trump, Alioto, Trump & Prescott LLP
        2280 Union Street
        San Francisco, CA 94123

B     Approval of this Agreement and Dismissal of Claims Against Thomson and TDA.

8.     Plaintiffs, Thomson, and TDA shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Action, without undue delay, as to the Releasees only.

9.     Plaintiffs shall, within three (3) days of the execution of this Agreement, file in the Northern District of California their amended complaint against Thomson and TDA containing, except for the named defendants, allegations materially identical to the allegations in Plaintiffs' Fourth Consolidated Amended Complaint in MDL No. 1917.

10.     Plaintiffs shall, within (3) days of the execution of this Agreement,

4

submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Class members (the "Motion"). If notice to the Class is given jointly with a notice of settlement(s) with any other settling defendant, for purposes of Paragraph 19 below, the costs of notice and claims administration shall be prorated with any other such defendant based on their respective settlement amounts. The Motion shall include (i) a proposed form of, method for, and date of dissemination of notice; and (ii) a proposed form of order. The text of the foregoing items (i) and (ii) shall be agreed upon by Plaintiffs, Thomson, and TDA before submission of the Motion. The Motion shall recite and ask the Court to find that the proposed form of and method for dissemination of the notice of settlement constitutes valid, due and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of due process, Federal Rule of Civil Procedure 23, and any applicable state laws.

11.     Plaintiffs shall seek the entry of an order and final judgment, the text of which Plaintiffs, Thomson, and TDA shall agree upon. The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

(a)     certifying the Class described in Paragraph 1, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

(b)     as to the Action, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(c)     as to the Releasees, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs and expenses;

(d)     reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement, to the United States District Court for the Northern District of California; and

(e)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to the Releasees shall be final.

12.     This Agreement shall become final when (i) the Court has entered a final order certifying the Class described in Paragraph 1 and approving this Agreement

US.57562662.02

under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to Releasees against all Class Members and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to Releasees described in (i) hereof has expired or, if appealed, approval of this Agreement and the final judgment as to Releasees have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs, Thomson, and TDA shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 18(h), 19(a), 29, or 30 of this Agreement.

13.     Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by Thomson or TDA (or the Releasees) or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Thomson or TDA (or the Releasees), or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any of the settling parties shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

C.     Release, Discharge, and Covenant Not to Sue.

14.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 12 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 17 of this Agreement, and for other good and valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all

6

claims, demands, judgments, actions, suits, causes of action, whether class, individual, or otherwise (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively, or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and consequences thereof in any way arising out of or relating in any way to any act or omission of the Releasees (or any of them) or any other entity concerning the manufacture, supply, distribution, sale or pricing of CRT Products up to the Execution Date, including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in complaints filed in this Action, including those arising under any federal, state, or foreign antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, unjust enrichment, contract, or trade practice law (the "Released Claims"). However, the Released Claims shall not preclude Plaintiffs from pursuing any and all of their claims against other defendants, excepting the Releasees, for the sale of CRT Products by those other defendants, or any subsidiary or affiliate thereof, or their co-conspirators, including claims against those other defendants for sales of CRT Products manufactured by Thomson or TDA.  Releasors shall not, after the date of this Agreement, sue or otherwise seek to establish liability against any Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims, except that Releasors shall continue to assert that Thomson and TDA participated in the alleged conspiracy to fix prices. For purposes of clarity, the Released Claims shall include any claims under foreign antitrust or competition laws or state antitrust or competition laws (including indirect purchaser claims) that relate to or arise out of the sale of any of the CRT Products that are the subject of the Plaintiffs' Complaint, but do not include any foreign antitrust or competition law claims or any state law indirect purchaser claims that relate to or arise out of the sale of CRT Products that: (a) were not purchased from a Defendant or alleged co-conspirator in the Action; or (b) were not sold in the United States as either a CRT Product or as a component included within a CRT Product. The types of claims released in this Paragraph 14 are released regardless of the type of cause of action, common law principle, or statute under which they are asserted. For example, such claims are released whether asserted under any federal, state, international, foreign, or local

7

antitrust, unfair competition, unfair practices, deceptive trade practices, price discrimination, unitary pricing, common law unjust enrichment, trade practice, racketeering, or civil conspiracy law, or similar law or regulation of any jurisdiction within the United States or elsewhere.

15.    In addition to the provisions of Paragraph 14 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE.
> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
> EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
> HER SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of Paragraph 14 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of Paragraph 14 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

16.    The release, discharge, and covenant not to sue set forth in Paragraph 14 of this Agreement does not include claims by any of the Class Members other than the Released Claims and does not include claims arising out of product liability, personal injury, or breach of contract claims not related to the subject matter of the Action in the ordinary course of business not covered by the Released Claims.

D.    Settlement Amount.

17.    Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, Thomson shall pay the Settlement Amount

of $13,750,000 (the "Settlement Amount"). The Settlement Amount shall be paid into an escrow account in United States Dollars to be administered in accordance with the provisions of Paragraph 18 of this Agreement (the "Escrow Account") on or before July 15, 2015.

18.     Escrow Account.

(a)     The Escrow Account will be established at Citi Private Bank, National Association, or other bank agreeable to the parties, with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Plaintiffs' Class Counsel and Thomson, such escrow to be administered under the Court's continuing supervision and control.

(b)     The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

(c)     All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

(d)     Plaintiffs and Thomson agree to treat the Settlement Fund as being at all times a qualified settlement fund within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 18, including the relation-back election (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(e)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the administrator shall be the

9

Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(1)). Such returns (as well as the election described in Paragraph 18(d)) shall be consistent with Paragraph 18(d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 18(f) hereof.

(f)     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Thomson or any other Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 18(d) through 18(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 18(f) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)     Neither Thomson nor any other Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Neither Thomson nor any other Releasee is responsible nor shall they have any liability therefor. Plaintiffs and Thomson agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 18(d) through 18(f).

(h)     If this Agreement does not receive final Court approval, including final approval of "the Class" as defined in Plaintiffs' Complaint (or, if that complaint is

10

amended to expand the definition of "the Class," the operative complaint at the time this Agreement is presented for preliminary approval) or if the Action is not certified as a class action for settlement purposes, then all amounts paid by Thomson into the Settlement Fund (other than costs expended in accordance with Paragraph 19(a)) shall be returned to Thomson from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days.

      19.    Payment of Expenses.

(a)    Thomson agrees to permit use of a maximum of $525,000 of the Settlement Fund towards notice to the class and the costs of administration of the Settlement Fund set forth in Paragraph 18. The $525,000 in notice and administration expenses are not recoverable if this settlement does not become final to the extent such funds are expended for notice and administration costs. Other than as set forth in this Paragraph 19(a), each party shall be liable for its own costs or expenses of the litigation of the Action, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements.

(b)    If Class Counsel enter into any other settlements on behalf of the Class before notice of this Agreement is given to the Class, Class Counsel shall use its reasonable efforts to provide a single notice to prospective Class members of all of the settlements.

E.    The Settlement Fund.

      20.    Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the Releasees of all Released Claims, and shall have no other recovery against Thomson or any other Releasee.

      21.    After this Agreement becomes final within the meaning of Paragraph 12, the Settlement Fund shall be distributed in accordance with a plan to be submitted at the appropriate time by Plaintiffs, subject to approval by the Court. In no event shall any Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution

and administration or any costs associated with the Escrow, with the sole exception of the provisions set forth in Paragraph 19(a) of this Agreement. Thomson and TDA shall be dismissed from this Action prior to any distribution of this Settlement Fund.

22.     Plaintiffs and Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses. The Releasees shall not be liable for any costs, fees, or expenses of any of Plaintiffs' or the Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

23.     Class Counsel's Attorneys' Fees And Reimbursement of Expenses.

(a)     Class Counsel may submit an application or applications to the Court for payment of attorneys' fees and reimbursement of expenses (the "Fee and Expense Application") for distribution to them from the Settlement Fund. Thomson and TDA shall not oppose such application(s) for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (ii) reimbursement of expenses and costs incurred, or to be incurred, in connection with prosecuting the Action, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Class Counsel shall allocate the attorneys' fees among plaintiffs' counsel in a manner which he in good faith believes reflects the contributions of such counsel to the prosecution and settlement of the Action. Class Counsel reserves the right to make additional applications for fees and expenses incurred, but in no event shall Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund. In addition, after final approval, Class Counsel may apply to use any amount paid by Thomson to pay the past or future expenses of this litigation.

(b)     The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund to any plaintiffs' counsel seeking such payment within five (5) court days after all of the following conditions have been met: (i) the Court has entered an order awarding plaintiffs' counsel its fees; (ii) such order has been provided to the Escrow Agent; and (iii) the irrevocable letter of credit or other security described below has been provided to the Escrow Agent, Class Counsel and Thomson. Each such plaintiffs' counsel as a condition to the receipt of payment of fees from the Settlement

12

Fund prior to this Agreement becoming final as set forth in Paragraph 12 of this Agreement, shall deliver to the Escrow Agent, Class Counsel and Thomson either an irrevocable letter of credit or such other security as Thomson accepts in writing in advance of such payment. The security described in this Paragraph shall be in favor of both Thomson and of the Settlement Fund. Notwithstanding any other provision in this Paragraph 23, no portion of a Fee and Expense Award will be paid to any plaintiffs' counsel any earlier than three (3) business days after receipt of such irrevocable letter of credit or other security.

(c)     For the avoidance of doubt, "plaintiffs' counsel" include each attorney, sole practitioner and each law firm that receives attorneys' fees or reimbursement of expenses from the Settlement Fund pursuant to Paragraph 23(b) together jointly and severally with such attorney's law firm and all of their equity partners or equity owners. Thomson shall be entitled to enforce Paragraph 23(b) and such related written undertakings in the Court. For the further avoidance of doubt, Thomson's obligation to fund the Settlement Fund will not be altered or increased if, for any reason any plaintiffs' counsel fails to repay to the Settlement Fund any sums due to be repaid pursuant to Paragraph 23.

(d)     Nothing in Paragraph 23 shall require plaintiffs' counsel to accept payment prior to this Agreement becoming final as defined in Paragraph 12, and plaintiffs' counsel may request the Escrow Agent to withhold payment until this Agreement is final. Plaintiffs' counsel may elect to receive partial payment of fees and of expenses. Plaintiffs' counsel electing to receive payment prior to such finality shall be subject to the terms in Paragraph 23(b).

(e)     In the event the settlement is reversed on appeal or any portion of the Fee and Expense Award is vacated, reversed or reduced by the Court or on appeal, any plaintiffs' counsel that received payments of any Fee and Expense Award that are subject to elimination or reduction shall, within ten (10) court days after receiving notice of the applicable court order, refund to the Settlement Fund the full amount of the Fee and Expense Award previously paid to such counsel pursuant to this Paragraph 23, or, if the Fee and Expense Award is reduced, a proportion of such full amount which shall be equal to the proportion of the reduced Fee and Expense Award to the original awards.

(f)     In the event such plaintiffs' counsel fails to make a full refund of the applicable amount of expenses received under Paragraph 23(b) within the 10-day period, such plaintiffs' counsel (and/or such attorney's law firm and all of their equity partners or equity owners) shall be liable to Thomson or, if applicable, the Settlement Fund.  In the event such plaintiffs' counsel fails to make a full refund of the applicable amount of fees received under Paragraph 23(b) within the 10-day period, Thomson or, if applicable, the Settlement Fund shall have the right to execute on the security.  In no event shall any law firm be liable for repayment of any amounts received by any other law firm.

(g)     The procedure for and the allowance or disallowance by the Court of the application by Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(h)     Neither Thomson nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to plaintiffs' counsel of any Fee and Expense Award in the Action.

(i)     Neither Thomson nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among plaintiffs' counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

F.     Cooperation.

24.     Upon execution of the Agreement, Thomson and TDA shall reasonably cooperate with Class Counsel as set forth specifically below:

(a)     Thomson and TDA shall provide Class Counsel with copies of all discovery (including among other things, all documents, interrogatories, requests for admission, etc.) Thomson and TDA produce to any other party in the Action.

(b)     Thomson and TDA agree to provide a declaration and, if necessary, a document custodian to establish, to the best of their ability, the foundation and authenticity of Thomson's and TDA's transactional data.  In addition, Thomson and TDA agree to

14

provide a declaration and, if necessary, a document custodian to establish, to the best of their ability, the foundation of any Thomson or TDA document or data Class Counsel identifies as necessary for summary judgment and/or trial.

(c)     Thomson and TDA agree to allow Class Counsel to ask questions of any percipient witness from Thomson and TDA noticed for deposition by any other party in the Action with whom Thomson and TDA have not settled, pursuant to the deposition procedures described in the Order Re Discovery and Case Management Protocol (ECF No. 1128).

(d)     If Plaintiffs proceed to trial against any of the remaining nonsettling defendants in the Action, or any other as yet-unnamed entity, including any Mitsubishi entity, Thomson and TDA agree to use their reasonable efforts to make available to the best of their ability for live testimony at trial at the United States Courthouse of the United States District Court for the Northern District of California, at Plaintiffs' expense, two (2) persons, each of whom is, at the time of trial, a director, officer, and/or employee of Thomson and/ or TDA whom Class Counsel, in consultation with Thomson and TDA, reasonably and in good faith believes to have knowledge regarding Plaintiffs' claims as alleged in the Plaintiffs' Complaint. At a reasonable time prior to his/her scheduled trial appearance, Plaintiffs may also meet with each of the proposed trial witnesses to discuss his/her testimony. Thomson's and TDA's counsel may be present during any such meeting.

(e)     If any document protected by the attorney-client privilege, attorney work-product protection, joint defense or any other protection, privilege, or immunity is accidentally or inadvertently produced under this Paragraph, the document shall promptly be destroyed and/or returned to Thomson or TDA, and its production shall in no way be construed to have waived any privilege or protection attached to such document.

(f)     Releasors and Class Counsel agree they will not use the information provided by Thomson or the Releasees or their representatives under this paragraph for any purpose other than the pursuit of the Action, and will not publicize the information beyond what is reasonably necessary for the prosecution of the action or as otherwise required by law.  Any documents and other information provided will be deemed "Highly Confidential" and subject to the protective order entered in the Action as if they had been produced in response to discovery requests and so designated.

(g)     Notwithstanding any other provision in this Agreement, Plaintiffs agree that they and Class Counsel shall maintain all statements made by Thomson's and TDA's

15

counsel as strictly confidential; and that they shall not use directly or indirectly the information so received for any purpose other than the prosecution of the Action. The parties and their counsel further agree that any statements made by Thomson's or TDA's counsel in connection with and/or as part of this settlement, shall be protected by Federal Rule of Evidence 408, and shall in no event be discoverable by any person or treated as evidence of any kind.

25.     In the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraphs 8-12 hereof, including final approval of "the Class" as defined in Plaintiffs' Complaint (or, if that complaint is amended to expand the definition of "the Class," the operative complaint at the time this Agreement is presented for preliminary approval), or in the event that it is terminated by either party under any provision herein, the parties agree that neither Plaintiffs nor Plaintiffs' counsel shall be permitted to introduce into evidence, at any hearing, or in support of any motion, opposition or other pleading in the Action or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of this Action, any deposition testimony or any documents provided by the Releasees, their counsel, or any individual made available by the Releasees pursuant to the cooperation provisions of Paragraph 24.

26.     Except as provided in Paragraph 24 of this Agreement, Thomson and TDA need not respond to formal discovery from Plaintiffs or otherwise participate in the Action during the pendency of the Agreement. Thomson, TDA, and Plaintiffs shall not file motions against one another during the pendency of this Agreement.

27.     Thomson, TDA, and Plaintiffs agree not to disclose publicly or to any other defendant or third party the terms of this Agreement until this Agreement is submitted to the Court for approval. The parties may, however, disclose the fact and amount of this Settlement to the Special Master or the Court. A party may disclose the fact that it has settled the claims of the Class to the other parties in the Action upon execution of this Settlement Agreement by both parties but not the terms of the settlement.

G.     Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.

28.     If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify a settlement class in accordance with the specific

class definition set forth in the Complaint, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 12 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Thomson, TDA and the Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety, except as provided in paragraph 19(a). Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 39. A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

29.     In the event that this Agreement does not become final, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forthwith to Thomson less only disbursements made in accordance with Paragraph 19 of this Agreement. Plaintiffs expressly reserve all their claims and Thomson and TDA expressly reserve all of their rights and defenses if this Agreement does not become final.

30.     Further, and in any event, Plaintiffs, Thomson and TDA agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Thomson or TDA (or the Releasees), or of the truth of any of the claims or allegations contained in the complaint or any other pleading filed in the Action, or by any person or entity in any other action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding.

31.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement.

32.     The parties to this Agreement contemplate and agree that, prior to

17

final approval of the settlement as provided for in Paragraphs 8-12 hereof, appropriate notice 1) of the settlement; and 2) of a hearing at which the Court will consider the approval of this Settlement Agreement will be given to Class members.

H.     Miscellaneous

33.     This Agreement does not settle or compromise any claim by Plaintiffs or any Class Member asserted in the Complaint or, if amended, any subsequent Complaint, against any defendant or alleged co-conspirator other than the Releasees. All rights against such other defendants or alleged coconspirators are specifically reserved by Plaintiffs and the Class. Thomson's and TDA's sales to the Class shall not be removed from the Action.

34.     The United States District Court for the Northern District of California shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs, Thomson and TDA. This Agreement shall be governed by and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

35.     This Agreement constitutes the entire, complete and integrated agreement among Plaintiffs, Thomson, and TDA pertaining to the settlement of the Action against Thomson and TDA, and supersedes all prior and contemporaneous undertakings of Plaintiffs, Thomson, and TDA in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs, Thomson, and TDA, and approved by the Court.

36.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs, Thomson, and TDA. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Plaintiffs, Class Counsel, Thomson, or TDA shall be binding upon, respectively, all Class Members, Releasors, Thomson, and TDA. The Releasees (other than Thomson and TDA which are parties hereto) are third party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

37.     This Agreement may be executed in counterparts by Plaintiffs, Thomson, and TDA, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

38.     Neither Plaintiffs nor Thomson or TDA shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

39.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by email, facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

40.     With respect to any potential Class member that requests exclusion from the Class, Thomson and TDA reserve all their legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Class member is an indirect purchaser of any allegedly price–fixed product and or has standing to bring any claim and statutes of limitation.

41.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

19

Dated: June /0, 2015

Mario N. Alioto
malioto@tatp.com
Joseph M. Patane
jpatane@tatp.com
TRUMP, ALIOTO,TRUMP & PRESCOTT
LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200

**Class Counsel and Counsel for Brian Luscher**

Dated: June 10, 2015

Kathy L. Osborn
Ryan M. Hurley
**FAEGRE BAKER DANIELS LLP**
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
Email: kathy.osborn@FaegreBD.com
Email: ryan.hurley@FaegreBD.com

*Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.*

Dated: June 10, 2015

Donald Wall
**SQUIRE PATTON BOGGS (US) LLP**
1 E. Washington Street, Suite 2700
Phoenix, AZ 85004
Telephone: (602) 528-4000
Facsimile: (602) 253-8129
E-mail: donald.wall@squirepb.com

*Attorneys for Defendant Technologies Displays Americas, LLC*

20

US.57562662.02