MARIO N. ALIOTO, ESQ. (56433)
JOSEPH M. PATANE, ESQ. (72202)
LAUREN C. CAPURRO, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Lead Class Counsel for the*
*Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>———————————————<br><br>This Document Relates to:<br><br>All Indirect Purchaser Actions | Master File No. 3:07-cv-05944-SC<br><br>MDL No. 1917<br><br>**DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS; RESPONSE TO CONDITIONAL OBJECTIONS**<br><br>Hearing Date: July 31, 2015<br>Time: 10:00 a.m.<br>Courtroom: One, 17th Floor<br>Judge: Honorable Samuel Conti |

1

I, Mario N. Alioto, declare:

2

1.     I am an attorney duly licensed by the State of California and am admitted to

3

practice before this Court.  I am a partner with the law firm Trump, Alioto, Trump & Prescott,

4

LLP and my firm serves as Lead Class Counsel for the Indirect Purchaser Plaintiffs ("IPPs") in

5

the above-captioned action.  The matters set forth herein are within my personal knowledge and if

6

called upon and sworn as a witness I could competently testify regarding them.

7

2.     The previously-approved settlement agreements in this case with defendants

8

Chunghwa Picture Tubes, Ltd. ("Chunghwa") and LG Electronics, Inc. ("LG") contain fee

9

allocation language almost identical to the language objected to here.[1]  Messrs. Cooper and

10

Scarpulla did not object to these provisions.  These settlements have been approved and the

11

approvals have become final.

12

3.     All of the direct purchaser class ("DPP") settlements approved in this case contain

13

similar fee allocation language.[2] These settlements have also been approved and have either

14

become final or will become final shortly.

15

4.     This language was also contained in the indirect purchaser plaintiffs' settlement

16

agreement with Chunghwa in the *LCD* case.  Mr. Scarpulla is the signatory on this settlement

17

agreement.  A true and correct copy of the Chunghwa *LCD* settlement agreement is attached

18

hereto as Exhibit 1.  The fee allocation provision appears at p. 29, Paragraph 22 of that agreement.

19

20

21

22

23

24

[1] *See* Dkt. No. 884-1 (Chunghwa IPP Settlement Agreement, ¶ 23(b): "Lead Counsel shall allocate the attorneys' fees among Class Counsel in a manner which they in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Action."); Dkt. No. 1933-1 (LG IPP Settlement Agreement, ¶ 22(b): "Lead Counsel shall allocate the attorneys' fees among Class Counsel in a manner which he in good faith believe [sic] reflects the contributions of such counsel to the prosecution and settlement of the Action.")

25

26

27

28

[2] *See* Dkt. No. 1115-1 (Chunghwa DPP Settlement Agreement, ¶ 23(b)); Dkt No. 1115-1 (Philips DPP Settlement Agreement, ¶ 23(b)); Dkt. No. 1341-1 (LG DPP Settlement Agreement, ¶ 23(b)); Dkt. No. 1252-1 (Panasonic DPP Settlement Agreement, ¶ 23(b)); Dkt. No. 1572-1 (Toshiba DPP Settlement Agreement, ¶ 23(b)); Dkt. No. 2430-1 (Hitachi DPP Settlement Agreement, ¶ 23(b)); Dkt. No. 2430-1 (Samsung SDI DPP Settlement Agreement, ¶ 23(b)); and Dkt. No. 3562-1 (Thomson DPP Settlement Agreement, ¶ 22(b)).

5.     I have reviewed the *LCD* docket and various filings that show Mr. Cooper was counsel of record in *LCD*.  I was also counsel of record for the indirect purchaser plaintiffs in *LCD* and have first-hand knowledge of the proceedings in that case.

6.     The fee allocation language in the Settlement Agreements is a common feature in orders awarding attorneys' fees in class actions, including orders entered in this District such as the *LCD* fee order and the *DRAM* fee order.

7.     Attached hereto as Exhibit 2 is a true and correct copy of the Order Granting Direct Purchaser Class Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses and Incentive Awards entered in *In Re TFT-LCD (Flat Panel) Antitrust Litig.,* 07-md-1827 SI, MDL No. 1827, Dkt. No. 7400.  The fee allocation provision appears at p. 4, Paragraph 11(e) of the Order.

8.     Attached hereto as Exhibit 3 is a true and correct copy of the Order Granting Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Awards to Plaintiffs; Finally Adopting Report and Recommendations of Special Master Part III; Final Judgment entered in *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* 04-md-1486 PJH, MDL No. 1486, Dkt. No. 2234.  The fee allocation provision appears at p. 4, Paragraph 11 of the Order.

9.     The *DRAM* fee order shows that Mr. Cooper was lead counsel for the indirect purchaser plaintiffs in that case.

10.     I have reviewed the *DRAM* docket and various filings which show that Mr. Scarpulla served as liaison counsel *DRAM* and participated in the fee proceedings.  I was also counsel of record for the indirect purchaser plaintiffs in *LCD* and have first-hand knowledge of the proceedings in that case.

11.     In *SRAM,* the fee order contained the same fee allocation provision.  Attached hereto as Exhibit 4 is a true and correct copy of the Order Granting Award of Attorneys' Fees, Reimbursement of Expenses and for Class Representative Incentive Payments entered in *In re*

*Static Random Access Memory (SRAM) Antitrust Litig.,* 4:07-md-1819 CW, MDL No. 1819, Dkt. No. 1407.  The fee allocation provision appears at p. 3, Paragraph E of that Order.

12.     The *SRAM* fee order shows that Mr. Scarpulla was lead counsel in *SRAM*.

13.     I have reviewed the *SRAM* docket and various filings showing that Mr. Cooper was counsel of record in *SRAM* and participated in the fee proceedings.  I was also counsel of record for the indirect purchaser plaintiffs in that case and have first-hand knowledge of the proceedings in that case.

14.     In the *Credit/Debit Tying Cases,* the fee order contained the same fee allocation provision.   Attached hereto as Exhibit 5 is a true and correct copy of the Order Granting Plaintiffs' Renewed Application for Attorneys' Fees, Expenses and Incentive Awards entered in *Credit Debit Tying Cases,* J.C.C.P. No. 4335 (S.F. Super. Ct.).   The fee allocation provision appears at p. 3, Paragraph 10.

15.     The *Credit/Debit Tying Cases* fee order shows that Mr. Scarpulla's firm, Zelle Hofmann, was lead counsel in the case.

16.     I have reviewed the *Credit/Debit Tying Cases* docket and various filings showing that Mr. Cooper was counsel of record in that case and participated in the fee proceedings.  I was also counsel of record in *Credit/Debit Tying Cases* and have first-hand knowledge of the proceedings in that case.

17.     Mr. Scarpulla has reported only 371.7 hours spent by him on this case in the almost 8 years the case has been pending.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 19th day of June 2015 at San Francisco, California.


/s/ Mario N. Alioto
Mario N. Alioto

**Lead Class Counsel for the Indirect Purchaser Plaintiffs**

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this __th day of December, 2011, by and among:

1.      Defendant Chunghwa Picture Tubes, Ltd. (Chunghwa);

2.      Indirect-Purchaser Plaintiffs class representatives, both individually and on behalf of the classes certified by orders of the Honorable Susan Illston, District Judge of the United States District Court for the Northern District of California, on March 28, 2010 and July 28, 2011; and

3.      The following states, by and through their Attorneys General: Arkansas, California, Florida, Michigan, Missouri, New York, West Virginia and Wisconsin, (further defined below as the Settling States) each of which has been pursuing its own litigation.

WHEREAS, IPPs (as defined below) are prosecuting the *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.) on their own behalf and on behalf of: (1) a nationwide federal injunctive-relief class under Federal Rules of Civil Procedure 23(a) and (b)(2) and Section 16 of the Clayton Act (15 U.S.C. § 26) for violations of Section 1 of the Sherman Act (15 U.S.C. § 1); and (2) separate damages classes covering twenty-four states and the District of Columbia, seeking monetary relief for alleged violations of state antitrust, consumer protection, unjust enrichment, and other laws; and

WHEREAS, the IPPs and the Settling States have been coordinating certain litigation and mediation efforts pursuant to the rulings of the Court while prosecuting their related actions in In re TFT-LCD (Flat Panel) Antitrust Litigation, MDL No. 1827 (N.D. Cal.) and in San Francisco Superior Court; and

1

WHEREAS, the IPPs and the Settling States claim that Chunghwa participated in an unlawful conspiracy to raise, fix, maintain or stabilize the price of certain TFT-LCD panels at artificially high levels in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and of various state antitrust, unfair competition, unjust enrichment, and other laws; and

WHEREAS, Chunghwa has defenses to the IPPs' and the Settling States' claims; and

WHEREAS, counsel for the IPPs and the IPP Classes (as defined below) have conducted an investigation into the facts and the law regarding the Action (as defined below), including substantially completing discovery, and have concluded that resolving claims against Chunghwa according to the terms set forth below is fair, reasonable and in the best interests of the IPPs and the IPP Classes; and

WHEREAS, the Settling States also conducted pre-litigation investigations and have also concluded that resolving claims against Chunghwa according to the terms set forth below is fair, reasonable and adequate for the Settling States; and

WHEREAS, the Settling States previously reached agreements resolving certain claims that each of the Settling States, in their proprietary capacity, may have against Chunghwa arising from Chunghwa's alleged participation in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of LCD products at artificially high levels and to maintain the quantities of LCD products at artificially low levels during the Class Period, including those arising under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, or trade practice law;

WHEREAS, Chunghwa, despite its belief that it is not liable for the claims asserted and has good defenses thereto, has nevertheless agreed to enter into this Agreement in order to: (1) avoid any further expense, inconvenience, and distraction of burdensome and protracted

2

litigation, (2) obtain the releases, orders, and final judgment contemplated by this Agreement, and (3) put to rest and terminate with finality all claims that have been or could have been asserted against Chunghwa by the Settling Plaintiffs (defined below) arising from the facts alleged in the Action, as more particularly set forth below;

WHEREAS, previously on November 28, 2008, IPPs and Chunghwa entered into a settlement agreement (the "2008 Agreement") which they intend shall be and is replaced in its entirety by this Agreement;

WHEREAS, previously on July 14, 2010, the Settling States, except for California, entered into a settlement agreement with Chunghwa (the "2010 Agreement") that they intend shall remain in effect;

WHEREAS, previously on August 15, 2011, the Attorney General of the State of California and Chunghwa entered into a settlement agreement (the "2011 Agreement") that they intend shall remain in effect;

WHEREAS the 2010 Agreement and the 2011 Agreement each provide that, *inter alia*, the respective parties shall use their best efforts to effectuate their respective agreements, including cooperating in seeking any necessary court approvals; and;

NOW, THEREFORE, in consideration of the covenants, agreements and releases set forth herein and for other good and valuable consideration, it is agreed by and among the Settling Plaintiffs and Chunghwa that, subject to the approval of the Court, all Released Claims (as defined below) shall be finally, fully, and forever settled, compromised, and released and the Action dismissed on the merits with prejudice as to Chunghwa (and the Chunghwa Releasees, as defined below), and except as hereinafter provided, without costs to Settling Plaintiffs or Chunghwa, on the following terms and conditions:

I.    Definitions.

a.    "Action" means *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL

No. 1827 (N.D. Cal.).

b.    "Arkansas Released Claims" has the meaning ascribed to it in Paragraph

9(c).

c.    The "Arkansas Settlement Class" is defined as follows:

> All persons and entities in Arkansas who, from January 1, 1999 to
> December 31, 2006, as residents of Arkansas, purchased TFT-LCD Panels
> incorporated in televisions, monitors, and/or laptop computers in Arkansas
> indirectly from one or more of the named Defendants or Quanta Display
> Inc., for their own use and not for resale. Specifically excluded from the
> Class are defendants; the officers, directors, or employees of any
> defendant in the Action; the parent companies and subsidiaries of any
> defendant; the legal representatives and heirs or assigns of any defendant;
> and their named affiliates and co-conspirators. Also excluded are any
> federal, state or local governmental entities, any judicial officer presiding
> over this action and the members of his/her immediate family and judicial
> staff, and any juror assigned to this Action.

d.    "California Released Claims" has the meaning ascribed to it in Paragraph

9(d).

e.    "Class Period" means the period beginning January 1, 1999 and

continuing through December 31, 2006.

f.    "Consumers" means end-user purchasers of TFT-LCD Panels

incorporated in televisions, computer monitors, and/or laptop computers, whether natural or legal

persons, including but not limited to individual consumers, business consumers, and, when in

reference to the claims brought by the Settling States, also governmental entity consumers.

g.    "Court" means the United States District Court for the Northern District of

California.

h.     "Effective Date" means the date the Agreement is fully executed, or December 23, 2011, whichever is earlier.

i.     "Florida Released Claims" has the meaning ascribed to it in Paragraph 9(e).

j.     "Indirect Purchaser Plaintiffs" or "IPPs" means the indirect purchaser plaintiffs class representatives, both individually and on behalf of the classes certified by orders of the Honorable Susan Illston, District Judge of the United States District Court for the Northern District of California, on March 28, 2010 and July 28, 2011, MDL Docket Numbers 1642 and 3198, respectively.

k.     "IPP Damages Classes" means those state-wide classes certified by the Court's class certification orders of March 28, 2010 and July 28, 2011, and the Arkansas Settlement Class.  Excluded from the IPP Damages Classes are defendants in the Action and their parents, subsidiaries and affiliates, governmental entities, and the judge presiding over the Action (and her immediate family and judicial staff).

l.     "IPP Damages Classes Released Claims" has the meaning ascribed to it in Paragraph 9(a).

m.     "IPP Nationwide Injunctive Class" means the federal injunctive relief class certified by the Court's order of March 28, 2010.  Excluded from the IPP Nationwide Injunctive Class are defendants in the Action and their parents, subsidiaries, and affiliates, governmental entities, and the judge presiding over the Action (and her immediate family and judicial staff).

n.     The "IPP Nationwide Injunctive Class Released Claims" has the meaning ascribed to it in Paragraph 9(b).

5

o.      "IPP Classes" means: (i) the IPP Nationwide Injunctive Class and (ii) the IPP Damages Classes.

p.      "MDL" means MDL Number 1827.

q.      "Members of the IPP Classes," also referred to as "Class Members," are those members of the IPP Classes who do not timely and validly elect to be excluded from the IPP Classes pursuant to Rule 23.

r.      "Michigan Released Claims" has the meaning ascribed to it in Paragraph 9(f).

s.      "Missouri Released Claims" has the meaning ascribed to it in Paragraph 9(g).

t.      "New York Released Claims" has the meaning ascribed to it in Paragraph 9(h).

u.      "Released Claims" has the meaning ascribed to it in Paragraph 9(k).

v.      "Releasors" are: (a) Members of the IPP Classes and their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, parent companies, subsidiaries, affiliates, partners, insurers and all other persons, partnerships or corporations, receivers, and bankruptcy trustees with whom any of the former have been, or are now, affiliated, the predecessors, successors, heirs, executives, administrators, and assigns of each of the foregoing, and anyone claiming by, for, or through them; and (b) the Settling States and the governmental entities and Consumers on whose behalf the Settling States have asserted claims in their operative complaints, to the extent permitted by law.

w.      "Settling States" are the states of Arkansas, California, Florida, Michigan, Missouri, New York, West Virginia and Wisconsin, by and through their Attorneys General in

6

their sovereign enforcement capacity and, to the extent allowed by each states' law and as reflected in this Agreement, as *parens patriae* on behalf of Consumers.

        x.    "Chunghwa Releasees" shall refer to Chunghwa and to all of its respective past and present, direct or indirect, parent companies, subsidiaries, and affiliates, including, without limitation, entities wholly owned or majority owned by the past and present, direct and indirect, parent companies of Chunghwa, as well as Tatung Company and Tatung Company of America, Inc.; the predecessors, successors, and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, shareholders, supervisors, employees, representatives, insurers, attorneys, heirs, agents, executors, administrators, and assigns of each of the foregoing. Releasees do not include the other defendants named in the Action as of the date that this Agreement is executed. Each Chunghwa Releasee shall have the full benefits of this Agreement even though the specific corporate name of each such Chunghwa Releasee is not set forth herein.

        y.    The "Settlement Amount" is five million three hundred and five thousand one hundred and five Dollars ($5,305,105.00) in United States Dollars.

        z.    The "Settlement Fund" is the Settlement Amount, paid in United States funds, plus any accrued interest on said deposits once in escrow as set forth in Paragraph 14 and 18 below.

        aa.    "Settling Plaintiffs" means the IPP Classes, the IPPs, and the Settling States.

        bb.    "TFT-LCD Panels" means thin-film transistor liquid crystal display ("TFT-LCD") panels contained in televisions, computer monitors, and laptop computers.

7

cc.     "TFT-LCD Products" means televisions, computer monitors and laptop computers containing TFT-LCD Panels.

dd.     "West Virginia Released Claims" has the meaning ascribed to it in Paragraph 9(i).

ee.     "Wisconsin Released Claims" has the meaning ascribed to it in Paragraph 9(j).

ff.     "Co-Lead Counsel" for the IPP Classes are the law firms of:

> Joseph M. Alioto
> Alioto Law Firm
> 225 Bush Street, Suite 1615
> San Francisco, CA 94104
>
> Francis O. Scarpulla
> Zelle Hofmann Voelbel & Mason, LLP
> 44 Montgomery St., Suite 3400
> San Francisco, CA 94104

gg.     Pursuant to the Court's Order of November 23, 2010, the following "Co-Liaison Counsel" have been appointed in this case for purposes of coordinating communications and other litigation activities of the Settling States, which activities continue through the pendency of this Agreement:

> Nicholas J. Weilhammer
> Assistant Attorney General of the State of Florida
> PL-01, The Capitol
> Tallahassee, FL 32399-1050
>
> Anne E. Schneider
> Assistant Attorney General of the State of Missouri
> P.O. Box 899
> Jefferson City, MO 65102

II.     Approval of this Agreement and Dismissal of Claims Against Chunghwa.

4.     Settling Plaintiffs and Chunghwa shall recommend approval of this settlement by the United States District Court for the Northern District of California and all

reviewing courts. Settling Plaintiffs and Chunghwa shall use their best efforts to effectuate this

Agreement, including cooperating in seeking judicial approval for the establishment of

procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and

(e) with regard to the IPP Classes) to secure the prompt, complete, and final dismissals with

prejudice of the Action as to Chunghwa.

      5.    As soon as reasonably practicable, Counsel for the IPP Classes shall

submit to the Court a motion for: (a) preliminary approval of the settlement; (b) certification of

the Arkansas Settlement Class; and (c) authorization to disseminate notice of the settlement;

which motion shall be joined by the Settling States (the "Motion"). It is expected that notice to

the IPP Classes will be given jointly with notices of related settlements reached with other

settling defendants in the Action. For purposes of Paragraph 20(a) below, the costs of notice and

claims administration shall be prorated with such costs of any other settling defendant based on

their respective settlement amounts. The Motion shall include: (i) the previous order(s)

certifying the IPP Classes; (ii) a proposed order preliminarily approving this settlement; and (iii)

a proposed form of, method for, and date of dissemination of notice. The text of the foregoing

items shall be agreed upon by Settling Plaintiffs and Chunghwa before submission to the Court.

The Motion shall recite and ask the Court to find that the proposed form of and method for

dissemination of the notice of settlement is valid, due, and sufficient notice to the IPP Classes,

constitutes the best notice practicable under the circumstances, and complies fully with the

requirements of Federal Rule of Civil Procedure 23 and any applicable state laws. The Motion

shall request approval of the settlement and the notice.

      6.    Settling Plaintiffs and Chunghwa jointly shall seek, in the applicable

courts, entry of an order and final judgment, the terms of which shall include:

        (a)     findings that the notice given constitutes due, adequate and sufficient notice, and meets the requirements of due process, the Federal Rules of Civil Procedure, and any applicable state laws;

        (b)     findings that Chunghwa has served upon the appropriate State official of each State in which a Class Member resides, and the appropriate Federal official, a notice of proposed settlement that complies with the requirements of the Class Action Fairness Act, 28 U.S.C. §§ 1711-15;

        (c)     approval of this settlement as being fair, reasonable, and adequate as to the Members of the IPP Classes within the meaning of Federal Rule of Civil Procedure 23 and any applicable state laws and directing its consummation according to its terms;

        (d)     a finding that the Court has jurisdiction over the Settling Parties and anyone claiming by, for, or through them as regards the Released Claims, an approval of the Releases set forth in Paragraphs 9 through 11, an order enjoining the members of the IPP Damages Classes and anyone acting on their behalf from asserting any of the IPP Damages Classes Released Claims, and an order enjoining the members of the IPP Nationwide Injunctive Class and anyone acting on their behalf from asserting any of the IPP Nationwide Injunctive Class Released Claims;

        (e)     directing that the Action be dismissed against Chunghwa with prejudice and, except as provided for in this Agreement, without costs;

        (f)     reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement, to the United States District Court for the Northern District of California; and

(g)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal with prejudice as to Chunghwa shall be final.

7.     This Agreement shall become final when each of the following has occurred:

(a)     the United States District Court for the Northern District of California has entered both: (i) a final order approving this Agreement under Federal Rule of Civil Procedure 23(e); and (ii) a final judgment granting the relief described in this Agreement, including the relief described in Paragraph 6 and dismissal of the Action with prejudice as to Chunghwa;

(b)     the time for appeal or to seek permission to appeal from the courts' approval of this Agreement and entry of final judgment as to Chunghwa described in subsections (a) and (b) of this Paragraph has expired or, if appealed, approvals of this Agreement and any final judgment as to Chunghwa have been affirmed by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  The provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.  Upon execution of this Agreement, Settling Plaintiffs and Chunghwa shall be bound by its terms, which shall not be rescinded except in accordance with Paragraphs 19 and 28 of this Agreement.

8.     Neither this Agreement (whether or not it becomes final), the 2008 Agreement, nor the final judgment, or any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by Chunghwa (or the Chunghwa Releasees) or evidence of any violation of any statute or law or of any liability or

wrongdoing whatsoever by Chunghwa (or the Chunghwa Releasees), or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed by Settling Plaintiffs in the Action. Neither this Agreement, the 2008 Agreement, or any of its terms and provisions, or any of the negotiations or proceedings connected with them, by any of the settling parties shall be offered by the parties as evidence in any pending or future civil, criminal or administrative action or proceedings, except in a proceeding to enforce this Agreement, or defend against the assertion of Released Claims, or as otherwise required by law. This Paragraph shall survive any termination or rescission of the Agreement.

III.     Releases, Discharges, and Covenants Not to Sue.

9.     In addition to and not in lieu of the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 7 above, and in consideration of payment of the Settlement Amount and for other good and valuable consideration, the Chunghwa Releasees shall be fully, finally, and forever released as follows:

(a)     With regard to the IPP Damages Classes, the Chunghwa Releasees shall be completely released, acquitted and forever discharged to the fullest extent permitted by law from any and all claims, demands, judgments, actions, suits and causes of action, whether class, individual or otherwise (whether or not any member of the IPP Damages Classes has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity): (i) that members of the IPP Damages Classes ever had, now have, or hereafter can, shall, or may have on account of, arising out of, or relating to any act or omission of the Chunghwa Releasees (or any of them) concerning price fixing, agreed output restrictions, or other forms of anticompetitive behavior with regard to TFT-LCD Panels during the Class Period, including, but not limited to, any conduct alleged and

causes of action asserted in the Action or that could have been asserted or alleged in the Action and that arise out of the facts alleged in the Action; and/or (ii) that were asserted in the Action (collectively, the "IPP Damages Classes Released Claims"). The members of the IPP Damages Classes shall not, after the effective date of this Agreement, seek to establish liability in the Action against any Chunghwa Releasee based, in whole or in part, upon any of the IPP Damages Classes Released Claims or any conduct at issue in the IPP Damages Classes Released Claims.

(b)     With regard to the IPP Nationwide Injunctive Class, the Chunghwa Releasees shall be completely released, acquitted, and forever discharged to the fullest extent permitted by law from any and all claims, demands, judgments, actions, suits and causes of action for injunctive relief, whether class, individual or otherwise (whether or not any member of the IPP Nationwide Injunctive Class has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity): (i) that members of the IPP Nationwide Injunctive Class, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, arising out of, or relating to any act or omission of the Chunghwa Releasees (or any of them) concerning price fixing, agreed output restrictions, or other forms of anticompetitive behavior with regard to TFT-LCD Panels during the period from January 1, 1999 through October 31, 2011, including, but not limited to, any conduct alleged and causes of action asserted in the Action or that could have been asserted or alleged in the Action and that arise out of the facts alleged in the Action; and/or (ii) that were asserted in the Action (collectively, the "IPP Nationwide Injunctive Class Released Claims"). The members of the IPP Nationwide Injunctive Class shall not, after the date of this Agreement, seek to establish liability for injunctive relief against Chunghwa Releasees based, in whole or in

13

part, upon any of the IPP Nationwide Injunctive Class Released Claims or any conduct at issue in the IPP Nationwide Injunctive Class Released Claims.

(c)     With regard to the Attorney General of Arkansas, the Chunghwa Releasees shall be completely released, acquitted, and forever discharged to the fullest extent permitted by law from any and all claims, demands, actions, judgments, suits, or causes of action that the State of Arkansas ever had, now has, or hereafter can, shall, or may have (except those specifically released in the 2010 Agreement) on account of, or relating to any act or omission of the Chunghwa Releasees (or any of them) concerning price fixing, agreed output restrictions, or other forms of anticompetitive behavior with regard to TFT-LCD Panels during the Class Period, including but not limited to its *parens patriae* claims (the "Arkansas Released Claims"). The Attorney General of Arkansas shall not, after the Effective Date, seek to establish liability against the Chunghwa Releasees based, in whole or in part, upon any of the Arkansas Released Claims or conduct at issue in the Arkansas Released Claims including, without limitation, liability with respect to any governmental or *parens patriae* indirect purchaser claims.

(d)     With regard to the Attorney General of California, the Chunghwa Releasees shall be completely released, acquitted, and forever discharged to the fullest extent permitted by law from any and all claims, demands, actions, judgments, suits, or causes of action that the parties represented by the California Attorney General ever had, now has, or hereafter can, shall, or may have (except those specifically released in the 2011 Agreement) on account of, or relating to any act or omission of the Chunghwa Releasees (or any of them) concerning price fixing, agreed output restrictions, or other forms of anticompetitive behavior with regard to TFT-LCD Panels during the Class Period, including the State of California's *parens patriae* claims, with the exception of the claims of any California residents who request exclusion under Cal.

14

Bus. & Prof. Code, § 16760 (the "California Released Claims"). The Attorney General of California shall not, after the Effective Date, seek to establish liability against the Chunghwa Releasees based, in whole or in part, upon any of the California Released Claims or conduct at issue in the California Released Claims including, without limitation, liability with respect to any *parens patriae* indirect purchaser claims.

        (e)      With regard to the Attorney General of Florida, the Chunghwa Releasees shall be completely released, acquitted, and forever discharged to the fullest extent permitted by law from Chunghwa any and all claims, demands, actions, judgments, suits, or causes of action that the State of Florida ever had, now has, or hereafter can, shall, or may have (except those specifically released in the 2010 Agreement) on account of, or relating to any act or omission of the Chunghwa Releasees (or any of them) concerning price fixing, agreed output restrictions, or other forms of anticompetitive behavior with regard to TFT-LCD Panels during the Class Period, including but not limited to the State of Florida's *parens patriae* claims (the "Florida Released Claims"). The Attorney General of Florida shall not, after the Effective Date, seek to establish liability against the Chunghwa Releasees based, in whole or in part, upon any of the Florida Released Claims, or conduct at issue in the Florida Released Claims including, without limitation, liability with respect to *parens patriae* indirect purchaser claims.

        (f)      With regard to the Attorney General of Michigan, the Chunghwa Releasees shall be completely released, acquitted, and forever discharged to the fullest extent permitted by law from any and all claims, demands, actions, judgments, suits, or causes of action that the State of Michigan ever had, now has, or hereafter can, shall, or may have (except those specifically released in the 2010 Agreement) on account of, or relating to any act or omission of the Chunghwa Releasees (or any of them) concerning price fixing, agreed output restrictions, or

15

other forms of anticompetitive behavior with regard to TFT-LCD Panels during the Class Period, including but not limited to its *parens patriae* claims (the "Michigan Released Claims"). The Attorney General of Michigan shall not, after the Effective Date, seek to establish liability against the Chunghwa Releasees based, in whole or in part, upon any of the Michigan Released Claims or conduct at issue in the Michigan Released Claims, including, without limitation, liability with respect to any governmental or *parens patriae* indirect purchaser claims.

        (g)      With regard to the Attorney General of Missouri, the Chunghwa Releasees shall be completely released, acquitted, and forever discharged to the fullest extent permitted by law from any and all claims, demands, actions, judgments, suits, or causes of action that the State of Missouri ever had, now has, or hereafter can, shall, or may have (except those specifically released in the 2010 Agreement) on account of, or relating to any act or omission of the Chunghwa Releasees (or any of them) concerning price fixing, agreed output restrictions, or other forms of anticompetitive behavior with regard to TFT-LCD Panels during the Class Period, including but not limited to its *parens patriae* claims (the "Missouri Released Claims"). The Attorney General of Missouri shall not, after the Effective Date, seek to establish liability against the Chunghwa Releasees based, in whole or in part, upon any of the Missouri Released Claims or conduct at issue in the Missouri Released Claims including, without limitation, liability with respect to any governmental or *parens patriae* indirect purchaser claims.

        (h)      With regard to the Attorney General of New York, the Chunghwa Releasees shall be completely released, acquitted, and forever discharged to the fullest extent permitted by law from any and all claims, demands, actions, judgments, suits, or causes of action that the State of New York ever had, now has, or hereafter can, shall, or may have (except those specifically released in the 2010 Agreement) on account of, or relating to any act or omission of

the Chunghwa Releasees (or any of them) concerning price fixing, agreed output restrictions, or other forms of anticompetitive behavior with regard to TFT-LCD Panels during the Class Period, including but not limited to its *parens patriae* claims, with the exception of the claims of any New York residents who opt out of the settlement (the "New York Released Claims"). The Attorney General of New York shall not, after the Effective Date, seek to establish liability against the Chunghwa Releasees based, in whole or in part, upon any of the New York Released Claims or conduct at issue in the New York Released Claims, including, without limitation, liability with respect to any governmental or *parens patriae* indirect purchaser claims.

(i)     With regard to the Attorney General of West Virginia, the Chunghwa Releasees shall be completely released, acquitted, and forever discharged to the fullest extent permitted by law from all claims, demands, actions, judgments, suits or causes of action that the State of West Virginia ever had, now has, or hereafter can, shall, or may have (except those specifically released in the 2010 Agreement) on account of, or relating to any act or omission of the Chunghwa Releasees (or any of them) concerning price fixing, agreed output restrictions, or other forms of anticompetitive behavior with regard to TFT-LCD Panels during the Class Period (the "West Virginia Released Claims"). The Attorney General of West Virginia shall not, after the Effective Date, seek to establish liability against the Chunghwa Releasees based, in whole or in part, upon any of the West Virginia Released Claims or conduct at issue in the West Virginia Released Claims including, without limitation, liability with respect to governmental indirect purchaser claims.

(j)     With regard to the Attorney General of Wisconsin, the Chunghwa Releasees shall be completely released, acquitted, and forever discharged to the fullest extent permitted by law from any and all claims, demands, actions, judgments, suits or causes of action

that the State of Wisconsin ever had, now has, or hereafter can, shall, or may have (except those

specifically released in the 2010 Agreement) on account of, or relating to any act or omission of

the Chunghwa Releasees (or any of them) concerning price fixing, agreed output restrictions, or

other forms of anticompetitive behavior with regard to TFT-LCD Panels during the Class Period

(the "Wisconsin Released Claims"). The Attorney General of Wisconsin shall not, after the

Effective Date, seek to establish liability against the Chunghwa Releasees based, in whole or in

part, upon any of the Wisconsin Released Claims or conduct at issue in the Wisconsin Released

Claims including, without limitation, liability with respect to governmental or *parens patriae*

indirect purchaser claims.

        (k)     The IPP Damages Classes Released Claims, the IPP Nationwide

Injunctive Class Released Claims, the Arkansas Released Claims, the California Released

Claims, the Florida Released Claims, the Michigan Released Claims, the Missouri Released

Claims, the New York Released Claims, the West Virginia Released Claims, and the Wisconsin

Released Claims are collectively referred to as the "Released Claims" in this Agreement.

        10.     For the avoidance of doubt, the types of claims released in Paragraph 9 are

released regardless of the type of cause of action, common law principle, or statute under which

they are asserted; for example, such claims are released whether asserted under any federal, state,

international, foreign, or local antitrust, unfair competition, unfair practices, deceptive trade

practices, price discrimination, unitary pricing, common law unjust enrichment, trade practice,

racketeering, or civil conspiracy law, or similar law or regulation of any jurisdiction within the

United States or elsewhere. Notwithstanding the foregoing, Released Claims do not include

claims under foreign or international law based on purchases of products containing TFT-LCD

Panels when the product in question was purchased outside of the United States. In addition,

18

Chunghwa and the Settling Plaintiffs agree that each of the releases set forth in Paragraph 9

should be construed on its own and that no negative inferences should be drawn from any

differences among the various releases set forth in Paragraph 9. After the execution of this

settlement, the Settling States agree that they will not file any action against the Chunghwa

Releasees, or any of them, that seeks any money payable to the State (or agencies, subdivisions,

or instrumentalities thereof) based on any form of alleged anticompetitive conduct occurring on

or before December 31, 2006 relating to TFT-LCD panels, regardless of the size or usage of

those panels, where such panels were alleged, under their operative complaints, to be the subject

of any anticompetitive conduct.

       11.    In addition to the provisions of Paragraphs 9 and 10 of this Agreement,

Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all

provisions, rights, and benefits conferred by (i) Section 1542 of the California Civil Code, which

states:

> A GENERAL RELEASE DOES NOT EXTEND TO
> CLAIMS WHICH THE CREDITOR DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT
> THE TIME OF EXECUTING THE RELEASE,
> WHICH IF KNOWN BY HIM MUST HAVE
> MATERIALLY AFFECTED HIS SETTLEMENT
> WITH THE DEBTOR;

or (ii) any law or common law principle of any state or territory of the United States or any

foreign state, which is similar, comparable, or equivalent to Section 1542 of the California Civil

Code. Each Releasor may hereafter discover facts other than or different from those which he,

she, or it knows or believes to be true with respect to the claims which are the subject matter of

the provisions of Paragraph 9 of this Agreement, but each Releasor hereby expressly waives and

fully, finally, and forever settles and releases, upon this Agreement becoming final, any known

or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the

19

subject matter of the provisions of Paragraphs <u>9</u> and 10 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

            12.      The releases, discharges and covenants not to sue set forth in Paragraphs 9 through 11 of this Agreement do not include claims by any of the members of the IPP Classes or the Settling States other than the Released Claims and do not include other claims, such as those solely arising out of product liability, personal injury, or breach of contract claims in the ordinary course of business not covered by the Released Claims. For the avoidance of doubt, the foregoing clause does not exclude from the scope of the Released Claims any claim to the extent that it arises out of allegations of an increase in price, stabilization of price, reduction or decrease in price, or a reduction in output or quality, of TFT-LCD Panels as a result of alleged anticompetitive conduct. In addition, notwithstanding the releases, discharges, and covenants not to sue set forth in Paragraphs 9 through 11 of this Agreement:

            (a)      The releases, discharges, and covenants not to sue set forth in Paragraphs 9 through 11 of this Agreement do not include claims of price fixing of TFT-LCD finished products, such as finished televisions, monitors, and laptop computers, except to the extent any claims regarding such finished products were asserted in the Action.

            (b)      To the extent that members of the IPP Nationwide Injunctive Class are also members of the IPP Damages Classes, such members of the IPP Nationwide Injunctive Class shall not be deemed to have waived a claim against the IPP Settlement Fund solely by virtue of the releases, discharges, and covenants not to sue set forth in Paragraphs 9 through 11 of this Agreement.

(c)     For the avoidance of doubt, the IPP Nationwide Injunctive Class Released Claims do not include any claims for monetary relief.

(d)     For the avoidance of doubt, claims relating to Cathode Ray Tubes or finished products containing the same were not asserted in the operative complaints and are not Released Claims.

(e)     This Agreement shall not affect whatever rights Releasors or any of them may have to seek damages or other relief from any person other than Chunghwa Releasees.

(f)     Nothing herein is intended to limit or narrow the preclusive effect of the dismissal with prejudice of the Action against Chunghwa or Chunghwa.

(g)     For the avoidance of doubt, nothing in this Agreement shall release any enforcement, proprietary or injunctive claims against Chunghwa of any state which is not a Settling State.

13.     Nothing herein shall prevent the Settling Plaintiffs from making any application to the Court as appropriate to enforce or interpret the provisions of this Agreement, or, in the alternative, maintaining any action in the Court within their legal authority for such other and further relief as any Settling Plaintiff may determine in his/her/its sole discretion is proper and necessary for the enforcement of this Agreement.  Nothing herein shall prevent the State of California or the State of New York from seeking such enforcement remedies in the Superior Court of the State of California, City and County of San Francisco, or the United States District Court for the Southern District of New York, respectively.

IV.     Settlement Fund.

14.     Pursuant to the terms of the 2008 Agreement, Chunghwa paid money into an escrow account established at Wells Fargo Bank, as escrow agent.  Subject to the provisions

21

hereof, and in full, complete and final settlement of the Action as provided herein, the Settlement

Amount shall remain in that escrow account or be transferred to a different escrow account

established for the purpose of this settlement ("Escrow Account"). Within thirty days of the

Effective Date of this Agreement, the remainder of the money paid by Chunghwa into the escrow

account pursuant to the 2008 Agreement (less Chunghwa's pro rata share of applicable escrow

fees and any accrued interest) will be paid by wire transfer to Chunghwa at an account

designated by Chunghwa. Any interest contained in the escrow account shall be retained by IPP

Plaintiffs for the Settlement Fund. IPP Plaintiffs and Chunghwa shall take appropriate steps,

including obtaining Court orders, to properly implement the provisions of this Paragraph 14.

       15.    Releasors shall look solely to the Settlement Fund for settlement and

satisfaction against the Chunghwa Releasees of all Released Claims, and shall have no other

recovery of costs, fees, attorney's fees, damages, or other relief against Chunghwa or the

Chunghwa Releasees, except as set forth in Paragraph 20(a) of this Agreement.

       16.    After this Agreement becomes final within the meaning of Paragraph 7,

the Settlement Fund shall be distributed in accordance with the plan to be submitted at the

appropriate time by Co-Lead Counsel for the Indirect Purchaser Class, which may be joined by

one or more of the Settling States, subject to approval by the Court. The distribution plan shall,

following the allocation described in Paragraph 18(e), provide for redress of all claims filed by

members of the IPP Damages Classes, which redress shall be determined through a uniform

methodology. In no event shall Chunghwa or the Chunghwa Releasees have any responsibility,

financial obligation, or liability whatsoever with respect to the investment, allocation,

preservation, distribution, or administration of the Settlement Fund, including, but not limited to,

the costs and expenses of such distribution and administration, with the sole exception of the provisions set forth in Paragraph 20(a) of this Agreement.

17.     In no circumstances shall this Agreement be construed to require Chunghwa to pay more than the Settlement Amount.

V.     Escrow Account.

18.     (a)     The Escrow Account will be established at a bank or such other financial institution agreed upon by all parties, with such bank or such other agreed-upon financial institution serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to counsel for the Settling Plaintiffs and counsel for Chunghwa, which Escrow Account shall be administered under the Court's continuing supervision and control.

(b)     The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in instruments backed by the full faith and credit of the United States Government, and shall reinvest any income from these instruments and the proceeds from these instruments as they mature in similar instruments at their then current market rates.

(c)     All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

(d)     Any accrued interest shall remain with the balance of the Settlement Fund except as provided in Paragraph 18(e).

(e)     The Settlement Fund shall be used for the payment of all monetary relief claims of the IPPs and the parties they represent in the Action, subject first to the payment of attorneys' fees and reimbursement of litigation expenses and costs in the Action, including the costs of settlement administration.   Following the Court's consideration and action on any

23

application for such costs and fees, all other funds shall be used for payment of the damages

claims of the members of the IPP Damages Classes, as defined herein, who do not validly elect

to be excluded from the IPP Damages Classes pursuant to Rule 23.  For the avoidance of doubt,

if the preceding allocation is altered by the Court or a reviewing court, such reallocation shall not

be grounds for termination of this Agreement so long as no additional material obligations are

imposed on Chunghwa.

   (f) In the event any monies remain as residue in the Settlement Fund

following all distribution efforts approved by the Court, the IPP Damages Classes and the

Settling States shall move the Court for an order disposing of all such funds, including additional

possible distributions to approved class claimants and/or cy pres distribution as approved by the

Court.

   (g) Settling Plaintiffs and Chunghwa agree to treat the Settlement

Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §

1.468B-1.  In addition, the Escrow Agent shall timely make such elections as necessary or

advisable to carry out the provisions of this Paragraph18, including the "relation-back election"

(as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such elections shall

be made in compliance with the procedures and requirements contained in such regulations.  It

shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the

necessary documentation for signature by all necessary parties, and thereafter to cause the

appropriate filing to occur.

   (h) For the purpose of § 468B of the Internal Revenue Code of 1986,

as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow

Agent.  The Escrow Agent shall timely and properly file all informational and other tax returns

necessary or advisable with respect to the Settlement Fund (including without limitation the

returns described in Treas. Reg. § 1.468B-2(k)(l)). Such returns (as well as the election

described in Paragraph 18(g)) shall be consistent with Paragraph 18(i), and in all events shall

reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on

the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided

in Paragraph 18(i) hereof.

       (i)     All of the following shall be paid out of the Settlement Fund: (i)

taxes (including any estimated taxes, interest, or penalties) arising with respect to the income

earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon

Chunghwa with respect to any income earned by the Settlement Fund for any period during

which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state

income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the

operation and implementation of Paragraphs 18(g) through 18(i) (including, without limitation,

expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses

relating to filing (or failing to file) the returns described in this Paragraph 18(i) ("Tax

Expenses")).

       (j)     Neither Chunghwa nor any other Chunghwa Releasee nor their

respective counsel shall have any liability or responsibility for the Taxes or Tax Expenses, nor

for maintaining or securing any desired tax status for the Settlement Fund, nor for any

negligence, fraud, or malfeasance regarding the Settlement Fund. Further, Taxes and Tax

Expenses shall be treated as, and considered to be, a cost of administration of the Settlement

Fund, and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior

order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein

to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg.§ 1.468B-2(1)(2)). Neither Chunghwa nor any other Chunghwa Releasee is responsible, nor shall they have any liability for any Taxes. Settling Plaintiffs and Chunghwa agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 18(g) through 18(i).

(k)     If this Agreement does not receive final approval as described in Paragraph 7, the Settlement Fund (other than notice and administration costs expended in accordance with Paragraph 20(a) and Taxes) shall be promptly returned to Chunghwa from the Escrow Account by the Escrow Agent along with any interest accrued thereon.

VI.     Exclusions.

19.     (a)     Co-Lead Counsel and, to the extent applicable, the Settling States, will cause copies of requests for exclusion from the IPP Damages Classes, and from any State *parens patriae* claims to the extent applicable, to be provided to counsel for Chunghwa and to the Settling States as they are received.

(b)     No later than ten (10) days after the final date for mailing requests for exclusion, Co-Lead Counsel shall provide counsel for Chunghwa with a complete and final list of opt-outs.

(c)     Chunghwa shall have the option to terminate this Agreement if the volume of commerce in TFT-LCD Panels attributable to purchasers who would otherwise be Members of the IPP Damages Classes but who timely and validly request exclusion from such classes, equals or exceeds $100,000,000.00. After meeting and conferring with Co-Lead Counsel and Co-Liaison Counsel for the Settling States, Chunghwa may elect to terminate this

26

Case 3:07-cv-05944-JST   Document 4234-1   Filed 12/19/15   Page 32 of 72

Agreement by serving written notice of such election on Co-Lead Counsel and Co-Liaison Counsel for the Settling States by e-mail and overnight courier and by filing a copy of such notice with the Court no later than thirty (30) days before the date for the final approval hearing of this Agreement, except that Chunghwa shall have a minimum of ten (10) days in which to decide whether to terminate this Agreement after receiving the final opt-out list. In the event that Chunghwa exercises its option to terminate this Agreement: (i) this Agreement shall be null and void as to Chunghwa, and shall have no force or effect and shall be without prejudice to the rights and contentions of Chunghwa, the Chunghwa Releasees, and Settling Plaintiffs in this or any other litigation; and (ii) the Settlement Fund paid by Chunghwa, plus interest thereon, shall be refunded promptly to Chunghwa, minus such payment (as set forth in this Agreement) of expenses previously incurred for taxes, class notice, claims administration, or settlement administration costs or any other expenses incurred by the Settlement Fund as provided in Paragraph 20(a) of this Agreement, and the Escrow Agent shall be promptly notified and instructed.

(d)     In order to establish the $100,000,000.00 threshold contemplated by Paragraph 19(c), the parties may seek discovery from opt-outs to obtain information sufficient to calculate opt-out TFT-LCD Panel purchases.

VII.     Payment of Expenses.

20.     (a) Chunghwa agrees that a maximum of $400,000 of the Settlement Fund may, if permitted by the Court, be used to cover the cost of notice to the class and related administration and claims processing costs. Funds reasonably and actually expended pursuant to this Paragraph 20(a) for notice and claims administration are not recoverable if this settlement does not become final.

(b)     Except to the extent that such costs and fees may be paid out of the
Settlement Fund as authorized by the Court, Chunghwa and the Chunghwa Releasees shall not
be liable for any of the costs or expenses of the litigation of the Actions, including attorneys'
fees, fees and expenses of expert witnesses and consultants, or costs and expenses associated
with discovery, motion practice, hearings before the Court or any Special Master (excluding
Chunghwa's pro rata share of any special master fees that are incurred in connection with Court-
ordered special master reports relating to the approval of this Agreement, but not excluding costs
relating to creation or modification of a plan of allocation for the Settlement Fund), appeals,
trials, or negotiation of other settlements, or for administration and costs.

(c)     If Settling Plaintiffs' counsel enter into any other settlements on
behalf of the IPP Classes before notice of this Agreement is given to the IPP Classes, Settling
Plaintiffs' counsel shall use their best efforts to provide a single notice to prospective class
members of all of the settlements.

VIII.   Fees and Reimbursement of Expenses for Settling Plaintiffs' Counsel.

21.     Co-lead Counsel for the IPP Classes and counsel for the Settling States
may submit an application or applications to the Court (the Fee and Expense Application") for
distribution to them from the Settlement Fund and Chunghwa shall not oppose such application
for: (a) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (b)
reimbursement of expenses and costs incurred in connection with prosecuting the Action, plus
interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as
earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and
Expense Award").  Such counsel reserve the right to make additional applications for fees and
expenses incurred, but in no event shall Chunghwa Releasees be responsible to pay any such
additional fees and expenses except to the extent they are paid out of the Settlement Fund.

22.     The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund. Co-Lead Counsel shall allocate the attorneys' fees among Class Counsel in a manner which they in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Action.

23.     The procedure for and the allowance or disallowance by the Court of the application by Class Counsel or any Settling State for attorneys' fees, costs and expenses to be paid out of the Settlement Fund, and any plan for distribution of the Settlement Fund to Class Members or among Settling States, are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, or any plan of distribution, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving settlement.

24.     Neither Chunghwa nor any other Chunghwa Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Class Counsel of any Fee and Expense Award in the Action.

25.     Neither Chunghwa nor any other Chunghwa Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Class Counsel or for the Settling States, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

IX.     Conduct During The Pendency Of This Agreement.

26.     Chunghwa Releasees need not respond to formal discovery from Settling Plaintiffs and shall not otherwise participate in the Action during the pendency of this Agreement commencing upon execution of this Agreement.  Neither Chunghwa Releasees nor Settling

Plaintiffs (or any of them) shall file motions against the other in the Action during the pendency of the Agreement. In the event that the Agreement is not approved by the Court or otherwise terminates, Chunghwa and Settling Plaintiffs expressly reserve all of their rights, and agree to propose to the Court or courts a reasonable schedule by which Chunghwa would rejoin the Action.

        X.     <u>Rescission If This Agreement Is Not Approved Or Final Judgment Is Not Entered.</u>

        27.    If the Court refuses to approve this Agreement or if such approval is modified in a material way or set aside on appeal, or if the Court does not enter the final judgment, or if final judgment is entered and appellate review is sought, and on such review, such final judgment is reversed, then Chunghwa and the Settling Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 44 below. A modification or reversal on appeal of any amount of attorneys' fees and expenses awarded by the Court from the Settlement Fund, or of an order approving a plan of distribution, shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment. For the avoidance of doubt, any order of the Court that (a) purports to impose additional financial obligations or other material obligations on Chunghwa, or (b) declines to enter a final judgment that meets the minimum requirements set forth in Paragraph 6 of this Agreement, or any order on review or appeal that would have any of the foregoing effects, constitutes a failure to grant final approval of this Agreement and confers on Chunghwa the right to rescind provided by this Paragraph.

        28.    In the event that this Agreement does not become final or is otherwise terminated, then this Agreement shall be of no force or effect except as otherwise stated herein, and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account

(including interest earned thereon) shall be returned forthwith to Chunghwa less only disbursements and payments actually made for class notice and claims administration as set forth in Paragraph 20(a). Chunghwa expressly reserves all of its rights if this Agreement does not become final. Further, and in any event, Settling Plaintiffs and Chunghwa agree that this Agreement, whether or not it becomes final, the 2008 Agreement, and any and all negotiations, documents, and discussions associated with them, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Chunghwa (or the Chunghwa Releasees), or of the truth of any of the claims or allegations contained in the complaint or any other pleading filed by Settling Plaintiffs in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding to the fullest extent allowed by law.

XI.     Miscellaneous.

29.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the Settling Plaintiffs' claims with respect to Chunghwa and the Chunghwa Releasees as provided in this Agreement.

30.     This Agreement does not settle or compromise any claim by Settling Plaintiffs or any Member of the IPP Classes asserted in the complaint against any defendant or alleged co-conspirator other than the Chunghwa Releasees. All rights against such other defendants or alleged co-conspirators other than the Chunghwa Releasees are specifically reserved by Settling Plaintiffs and the IPP Classes. Chunghwa's sales to the Settling Plaintiffs shall not be removed from any of the Action for purposes of Settling Plaintiffs asserting joint liability or any derivative liability against defendants other than the Chunghwa Releasees.

31.     Upon execution of this Agreement the 2008 Agreement is null, void, rescinded, of no further effect, and replaced in its entirety by this Agreement.

32.     This Agreement shall be governed by and interpreted according to the substantive laws of the state of California without regard to its choice of law or conflict of laws principles.  The United States District Court for the Northern District of California shall retain jurisdiction over the implementation, enforcement and performance of this Agreement, and shall have jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Settling Plaintiffs and Chunghwa.

33.     Certificate of Compliance.  Chunghwa shall certify that  it has an antitrust compliance program, and shall establish, if not already established, and maintain a program to provide relevant antitrust compliance education to Chunghwa's officers and employees with responsibility for pricing and sales of TFT-LCD Panels in and to the United States regarding the legal standards imposed by federal and state antitrust laws.

34.     Notice of Compliance.  For three (3) years from the date this Agreement becomes final pursuant to Paragraph 7, on an annual basis, Chunghwa shall certify to Co-Lead Counsel and to Co-Liaison Counsel that it is fully compliant with the provisions of this Paragraph.  Co-Lead Counsel and Co-Liaison Counsel shall provide notice to Chunghwa that the compliance report is due thirty (30) days prior to the deadline for its submission.  Nothing in this provision shall affect a waiver of any privileges otherwise applicable to the content of any antitrust compliance training.

35.     Cooperation.  Chunghwa agrees to fully cooperate with the Settling Plaintiffs by:

(a)     Promptly providing a full account to the States of all facts known to Chunghwa that are relevant to the Settling Plaintiffs' investigations;

(b)     Producing in the United States relevant documents (including English translations) sufficient to evidence any collusive meetings among LCD panel makers and how any alleged conspiracy was formed, implemented, and enforced, to the extent known by Chunghwa, including documents relating to sales, pricing, capacity, production, damages and liability;

(c)     Making available in the United States at a mutually agreed upon time and place for deposition and/or interview such key employees as are reasonably identified by the Settling Plaintiffs.  Alternatively, Chunghwa agrees to make such witnesses available to the States in Taiwan, and will pay all reasonable costs of travel and accommodations for at least two (2) representatives of the States to travel to said place for the purpose of conducting said depositions and/or interviews;

(d)     Making available other appropriate employees in the United States in person as reasonably practicable, by video conference, or by such other means as the Parties may agree to, for such interviews, affidavits, and depositions as are reasonably required by the States or each of them; and

(e)     Producing at trial in person, by deposition, or affidavit, whichever is legally necessary and reasonably possible, representatives to testify as reasonably required by the States.  Any cooperation by Chunghwa pursuant to this Paragraph 36 will be consistent with its continuing obligations to the United States Department of Justice.

36.     Except as provided in this Agreement, Chunghwa need not respond to formal discovery from the States or otherwise participate in an action that may be brought by any of the States during the pendency of the Agreement.

37.     Chunghwa agrees that it will not disclose publicly or to any other person, other than a State with which it is attempting to reach a settlement of similar claims, the terms of this Agreement with respect to any of the Settling Plaintiffs until the Agreement has been made public by the States, whether by incorporation or reference in a publicly available filing in court or by any other means. Chunghwa also agrees that it will not disclose publicly or to any defendant the information provided to the Settling Plaintiffs pursuant to this Agreement, except as otherwise required by law.

38.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Chunghwa Releasee as provided in this Agreement.

39.     This Agreement constitutes the entire, complete and integrated agreement among the IPPs and Chunghwa pertaining to the settlement of the Action against Chunghwa, and supersedes all prior and contemporaneous undertakings of the IPPs and Chunghwa in connection herewith, including the 2008 Agreement. Notwithstanding the foregoing, the 2010 Agreement and the 2011 Agreement remain in full effect. Additionally, any written addendum to this Agreement that is signed on behalf of the Settling Parties who are bound by that addendum shall be given the same force and effect as if it were part of this Agreement. This Agreement may not be modified or amended except in writing executed by Settling Plaintiffs and Chunghwa, and approved by the Court.

40.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Settling Plaintiffs and the Chunghwa Releasees. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Settling Plaintiffs shall be binding upon all Members of the Settling Classes and Releasors.

41.     This Agreement may be executed in counterparts by Settling Plaintiffs and Chunghwa, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

42.     Neither Settling Plaintiffs nor Chunghwa shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

43.     The headings in this Agreement are inserted as a matter of convenience only, and do not define, limit, or describe the scope of this Agreement or the intent of its provisions.

44.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by e-mail, facsimile, or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

45.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: December 22, 2011      By: _Joseph M. Alioto_

Joseph M. Alioto

35

ALIOTO LAW FIRM
225 Bush Street, Suite 1615
San Francisco, CA 94104

Dated: December 21, 2011    By: _Francis O. Angell_

Francis O. Scarpulla
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery St., Suite 3400
San Francisco, CA 94104

*Co-Lead Counsel for Indirect-Purchaser Plaintiffs*

36

Dated: December 2 1, 2011

CHRIS KOSTER
Attorney General of the State of Missouri

By: _____
Anne E. Schneider
Andrew M. Hartnett
Robert Almony
Brianna Lennon
Assistant Attorneys General/Antitrust Counsel
MISSOURI ATTORNEY GENERAL'S OFFICE
P. O. Box 899
Jefferson City, MO 65102

*Counsel for Plaintiff State of Missouri*

Dated: December ____, 2011

PAMELA JO BONDI
Attorney General of the State of Florida

By: _____
PATRICIA A. CONNERS
Associate Deputy Attorney General
ANTITRUST DIVISION
Lizabeth A. Brady
Chief, Multistate Antitrust Enforcement
Nicholas J. Weilhammer
Assistant Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050

*Counsel for Plaintiff State of Florida*

Dated: December ____, 2011

DUSTIN MCDANIEL
Attorney General of the State of Arkansas

By: _____
David A. Curran
Assistant Attorney General
ARKANSAS ATTORNEY GENERAL'S OFFICE
323 Center St., Suite 500
Little Rock, AR 72205

*Counsel for Plaintiff State of Arkansas*

37

Dated: December ____, 2011

CHRIS KOSTER
Attorney General of the State of Missouri

By: _____
Anne E. Schneider
Andrew M. Hartnett
Robert Almony
Brianna Lennon
Assistant Attorneys General/Antitrust Counsel
MISSOURI ATTORNEY GENERAL'S OFFICE
P. O. Box 899
Jefferson City, MO 65102

*Counsel for Plaintiff State of Missouri*

Dated: December 2 1, 2011

PAMELA JO BONDI
Attorney General of the State of Florida

By: _____
PATRICIA A. CONNERS
Associate Deputy Attorney General
ANTITRUST DIVISION
Lizabeth A. Brady
Chief, Multistate Antitrust Enforcement
Nicholas J. Weilhammer
Assistant Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050

*Counsel for Plaintiff State of Florida*

Dated: December ____, 2011

DUSTIN MCDANIEL
Attorney General of the State of Arkansas

By: _____
David A. Curran
Assistant Attorney General
ARKANSAS ATTORNEY GENERAL'S OFFICE
323 Center St., Suite 500
Little Rock, AR 72205

*Counsel for Plaintiff State of Arkansas*

37

Dated: December ____, 2011

CHRIS KOSTER
Attorney General of the State of Missouri

By: _____
Anne E. Schneider
Andrew M. Hartnett
Robert Almony
Brianna Lennon
Assistant Attorneys General/Antitrust Counsel
MISSOURI ATTORNEY GENERAL'S OFFICE
P. O. Box 899
Jefferson City, MO 65102

*Counsel for Plaintiff State of Missouri*

Dated: December ____, 2011

PAMELA JO BONDI
Attorney General of the State of Florida

By: _____
PATRICIA A. CONNERS
Associate Deputy Attorney General
ANTITRUST DIVISION
Lizabeth A. Brady
Chief, Multistate Antitrust Enforcement
Nicholas J. Weilhammer
Assistant Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050

*Counsel for Plaintiff State of Florida*

Dated: December 21, 2011

DUSTIN MCDANIEL
Attorney General of the State of Arkansas

By: _____
David A. Curran
Assistant Attorney General
ARKANSAS ATTORNEY GENERAL'S OFFICE
323 Center St., Suite 500
Little Rock, AR 72205

*Counsel for Plaintiff State of Arkansas*

37

Dated: December 2 [ , 2011       KAMALA D. HARRIS
                                  Attorney General of the State of California

                                  By: _____

                                  Kathleen E. Foote
                                  Senior Assistant Attorney General
                                  Office of the Attorney General
                                  455 Golden Gate Avenue, Suite 11000
                                  San Francisco, CA 94102-3664

                                  *Counsel for State of California*

Dated: December 21 , 2011        BILL SCHUETTE
                                  Attorney General of the State of Michigan

                                  By: _____

                                  M. Elizabeth Lippitt
                                  Assistant Attorney General
                                  Corporate Oversight Division
                                  Antitrust Section
                                  G. Mennen Williams Building, 6th Floor
                                  525 W. Ottawa Street
                                  Lansing, Michigan 48933

                                  *Counsel for Plaintiff State of Michigan*

Dated: December ____ , 2011      ERIC T. SCHNEIDERMAN
                                  Attorney General of the State of New York

                                  By: _____

                                  Richard L. Schwartz
                                  Acting Bureau Chief, Antitrust Bureau
                                  OFFICE OF THE ATTORNEY GENERAL
                                  STATE OF NEW YORK
                                  120 Broadway, 26th Floor
                                  New York, NY 10271

                                  *Counsel for Plaintiff State of New York*

38

Dated: December _____, 2011

KAMALA D. HARRIS
Attorney General of the State of California

By: _____
Kathleen E. Foote
Senior Assistant Attorney General
Office of the Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-3664

*Counsel for State of California*

Dated: December _____, 2011

BILL SCHUETTE
Attorney General of the State of Michigan

By: _____
M. Elizabeth Lippitt
Assistant Attorney General
Corporate Oversight Division
Antitrust Section
G. Mennen Williams Building, 6th Floor
525 W. Ottawa Street
Lansing, Michigan 48933

*Counsel for Plaintiff State of Michigan*

Dated: December 21, 2011

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

By: _____
Richard L. Schwartz
Acting Bureau Chief, Antitrust Bureau
OFFICE OF THE ATTORNEY GENERAL
STATE OF NEW YORK
120 Broadway, 26th Floor
New York, NY 10271

*Counsel for Plaintiff State of New York*

38

Dated: December  21 , 2011

DARRELL V. MCGRAW, JR.
Attorney General of the State of West Virginia

By: _____
Douglas L. Davis
Assistant Attorney General
P.O. Box 1789
Charleston, WV 25326

*Counsel for the State of West Virginia*

Dated: December ____, 2011

J.B. VAN HOLLEN
Attorney General of the State of Wisconsin

By: _____
Gwendolyn J. Cooley
Assistant Attorney General
P.O. Box 7857
17 W. Main St.
Madison, WI 53707-7857

*Counsel for the State of Wisconsin*

Dated: December ____, 2011

By: _____
[Authorized Corporate Officer]

*On behalf of Chunghwa Picture Tubes, Ltd.*

Dated: December ____, 2011

By: _____
Joel S. Sanders
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105-2933

*Attorney for Chunghwa Picture Tubes, Ltd.*

Dated: December ____, 2011  DARRELL V. MCGRAW, JR.
            Attorney General of the State of West Virginia

            By: _____
            Douglas L. Davis
            Assistant Attorney General
            P.O. Box 1789
            Charleston, WV 25326

            *Counsel for the State of West Virginia*

Dated: December 21, 2011  J.B. VAN HOLLEN
            Attorney General of the State of Wisconsin

            By: _____
            Gwendolyn J. Cooley
            Assistant Attorney General
            P.O. Box 7857
            17 W. Main St.
            Madison, WI 53707-7857

            *Counsel for the State of Wisconsin*

Dated: December ____, 2011  By: _____
            [Authorized Corporate Officer]

            *On behalf of Chunghwa Picture Tubes, Ltd.*

Dated: December ____, 2011  By: _____
            Joel S. Sanders
            Gibson, Dunn & Crutcher LLP
            555 Mission Street, Suite 3000
            San Francisco, CA  94105-2933

            *Attorney for Chunghwa Picture Tubes, Ltd.*

Dated: December _____, 2011

DARRELL V. MCGRAW, JR.
Attorney General of the State of West Virginia

By: _____
Douglas L. Davis
Assistant Attorney General
P.O. Box 1789
Charleston, WV 25326

*Counsel for the State of West Virginia*

Dated: December _____, 2011

J.B. VAN HOLLEN
Attorney General of the State of Wisconsin

By: _____
Gwendolyn J. Cooley
Assistant Attorney General
P.O. Box 7857
17 W. Main St.
Madison, WI 53707-7857

*Counsel for the State of Wisconsin*

Dated: December 20th, 2011

By: _____
[Authorized Corporate Officer] Vice President and
General Counsel
*On behalf of Chunghwa Picture Tubes, Ltd.*

Dated: December 21, 2011

By: _____
Joel S. Sanders
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-2933

*Attorney for Chunghwa Picture Tubes, Ltd.*

39

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION _____/ | No. M 07-1827 SI MDL. No. 1827 |
| This order relates to: All direct purchaser class actions _____/ | **ORDER GRANTING DIRECT PURCHASER CLASS PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS** |

On December 14, 2012, the Court held a hearing on the direct purchaser class plaintiffs' motion for attorneys' fees, reimbursement of expenses, and incentive awards (the "Motion"). No objections to the Motion were filed. The Court, having considered the motion and the memorandum and declarations in support thereof, and after a duly noticed hearing, hereby finds that:

1.     The Motion seeks an award of attorney's fees of 30% of the $68,000,000 Settlement Fund by the settlement payments from the AUO and Toshiba Defendants (collectively, the "Settling Defendants"). Co-Lead Class Counsel for the Direct Purchaser Plaintiffs ("Plaintiffs") also seek an order awarding $3,090,707.76 in additional expenses incurred in connection with the prosecution of this action that were not previously requested and awarded. Co-Lead Class Counsel seek reimbursement of only $2,554,158.66 of these funds in light of certain accounting adjustments detailed in the declaration of Liaison Counsel. Finally, the Motion seeks incentive awards of $5,000 each for the 11 court-appointed class representatives. In addition, counsel for the four class representatives who testified at trial have filed a letter requesting that those plaintiffs an additional incentive award of $10,000, for a total incentive

**United States District Court**
For the Northern District of California

1  award of $15,000 each. At the hearing, counsel for the non-testifying class representatives requested that

2  those class representatives also receive a total incentive award of $15,000 each.

3  2.  AUO made one payment of $23,000,000 in March 2012, and will make a second payment of

4  $15,000,000 on or before January 3, 2013, pursuant to the terms of the settlement agreement between

5  AUO and Plaintiffs.  Class Counsel have requested payment of only those amounts that have been

6  deposited into the Settlement Fund at this time, and will wait to take their fee on the remainder until after

7  it has been paid.  That is, Class Counsel will receive 30% of $53,000,000 million at such time as the

8  motion is approved, and will receive 30% of the $15,000,000 to be paid by AUO in January 2013 after

9  it has been paid.

10  3.  The amount of attorney's fees requested is fair and reasonable under the "percentage-of-the-fund"

11  method.  This is confirmed by a lodestar "cross-check," which reveals a negative multiplier of 0.86,

12  based on 46,763.90 hours of work and a collective lodestar of $23,688,289.70.  Ranges much higher than

13  this have been approved by the Ninth Circuit and the courts in this District.  *See, e.g., Vizcaino v.*

14  *Microsoft*, 290 F.3d 1043, 1050-1051 (9th Cir. 2002) (upholding a 28% fee award that constituted a 3.65

15  multiple of lodestar); *id*. at 1052-54 (noting district court cases in the Ninth Circuit approving multipliers

16  as high as 6.2, and citing only 3 of 24 decisions with approved multipliers below 1.4).  The negative

17  multiplier cross-check serves to confirm the reasonableness of the fees requested.

18  4.  The attorneys' fees requested were entirely contingent upon success.  Co-Lead Class Counsel

19  risked time and effort, including a six week jury trial against Toshiba, and advanced significant costs and

20  expenses with no ultimate guarantee of compensation.  The award of 30% is warranted for reasons set

21  out in Co-Lead Class Counsel's moving papers, including but not limited to the following:  the excellent

22  result obtained for the Class; the quality and quantity of work performed by all the firms representing

23  Direct Purchasers (collectively, "Plaintiffs' Counsel"), including extensive motion practice, trial

24  preparation, mediation, and trial, all involving complex and difficult issues of fact and law; the risks

25  faced throughout the litigation, which existed from the outset and continued to exist through trial; and

26  a reasonable lodestar "cross-check," discussed above.

27  5.  Given the high risks involved in this case, the effort put forth by Plaintiffs' Counsel, the level of

28  sophistication of the work done, and the extraordinary results achieved for the Class, including the trial

2

United States District Court
For the Northern District of California

of this case before this Court, an upward departure from the Ninth Circuit's benchmark of 25% is justified. *See, e.g., Vizcaino*, 290 F.3d at 1047-1050; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *18-23 (C.D. Cal. June 10, 2005).

6.      Plaintiffs have received payment from one opt-out plaintiff in the amount of $200,000 for access to their experts' work product. It is possible that other opt-outs may agree to pay for use of Plaintiffs' experts' work product to use in their own cases. Class Counsel have confirmed that such payments will be added to the Settlement Fund. They will not request attorneys' fees on those amounts.

7.      Class Counsel will conduct a final accounting to address interest, administrative costs, or other accounting expenses. Any overages revealed in this final accounting shall be returned to the Settlement Fund for payment to the Class.

8.      The expenses sought, as detailed in the declaration of Liaison Counsel and accompanying declarations of Plaintiffs' Counsel, were incurred in connection with the prosecution of the litigation for the benefit of the Class, and were reasonable and necessary.

9.      The 11 class representatives are entitled to the requested incentive awards, in the amount of $5,000 each for A.M. Photo & Imaging Center, Inc., Nathan Muchnick, Inc., Omnis Computer Supplies, Inc., Orion Home Systems, LLC, Royal Data Services, Inc., Univision-Crimson Holdings, Inc., and Weber's World; and $15,000 each for Crago Corp., Texas Digital Systems, Inc., Home Technologies Bellevue, LLC, and CMP Consulting Services, Inc.. These awards recognize the risks undertaken and the work performed for the benefit of the Class, including consultation with Plaintiffs' Counsel, trial testimony, and attendance at trial by all of the class representatives at various times to ensure that at least one class representative was present at each day of trial. The Court finds it appropriate to award a higher incentive award to the four class representatives who testified at trial in recognition of their substantial contributions to this case.

10.     Therefore, upon consideration of the Motion and the accompanying declarations, and based upon all matters of record including the pleadings and papers filed in this action and oral argument given at the hearing on this matter, the Court hereby finds that: (i) the attorneys' fees requested are reasonable and proper; (ii) the expenses requested were necessary, reasonable and proper; (iii) the incentive awards requested are warranted.

11.     Accordingly, it is hereby ORDERED and DECREED that:

(a)     Co-Lead Class Counsel are awarded attorney's fees for distribution to Plaintiffs' Counsel in the amount of $20,400,000, equal to 30% of the $68,000,000 added to the Settlement Fund. Co-Lead Counsel may be paid 30% of $58,000,000 immediately upon entry of this Order; and may be paid 30% of the $15,000,000 to be paid by AUO on or about January 3, 2013, as soon as those funds are received without the need for any further order from this Court.

(b)     Co-Lead Class Counsel are awarded $3,090,707.76 in costs and expenses, but only $2,554,158.66 of those funds will be reimbursed to Plaintiffs' Counsel, the remainder having been addressed through accounting adjustments to the litigation fund.

(c)     The 11 class representatives are entitled to the requested incentive awards, in the amount of $5,000 (A.M. Photo & Imaging Center, Inc., Nathan Muchnick, Inc., Omnis Computer Supplies, Inc., Orion Home Systems, LLC, Royal Data Services, Inc., Univision-Crimson Holdings, Inc., and Weber's World) and $15,000 (for Crago Corp., Texas Digital Systems, Inc., Home Technologies Bellevue, LLC, and CMP Consulting Services, Inc.), for a total of $95,000.

(d)     The attorneys' fees, reimbursement of expenses, and incentive awards shall be paid from the Settlement Fund.

(e)     The attorneys' fees and expenses shall be allocated amongst Plaintiffs' Counsel by Co-Lead Class Counsel (Pearson, Simon, Warshaw & Penny, LLP; and Lieff, Cabraser, Heimann & Bernstein, LLP) in a manner which, in Co-Lead Class Counsel's good-faith judgment, accurately reflects each of such Plaintiff's Counsel's contributions to the establishment, prosecution, and resolution of this litigation.

**IT IS SO ORDERED.**

Dated: December 20, 2012

_____
SUSAN ILLSTON
United States District Judge

United States District Court
For the Northern District of California

4

# EXHIBIT 3

1 JOSEF D. COOPER (53015)
TRACY R. KIRKHAM (69912)
2 COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
3 San Francisco, CA 94103
Telephone: (415) 788-3030
4 Facsimile: (415) 882-7040
E-mail: jdc@coopkirk.com
5 Co-Lead Counsel for Indirect-Purchaser Plaintiffs

6 KAMALA D. HARRIS
Attorney General of the State of California
7 KATHLEEN FOOTE (65819)
Senior Assistant Attorney General
8 EMILIO E. VARANINI (163952)
455 Golden Gate Avenue, Ste. 11000
9 San Francisco, CA 94102
Telephone: (415) 703-5908
10 Facsimile: (415) 703-5480
E-mail: Emilio.Varanini@doj.ca.gov
11 Attorneys for the State of California On Behalf of All Attorneys General

12

**UNITED STATES DISTRICT COURT**

13
**NORTHERN DISTRICT OF CALIFORNIA**
14
**OAKLAND DIVISION**
15

| | |
|---|---|
| 16 In re DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Case No. M-02-1486-PJH<br>MDL No. 1486 |
| 17 | **[PROPOSED] ORDER GRANTING AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARDS TO PLAINTIFFS; FINALLY ADOPTING SPECIAL MASTER'S REPORT AND RECOMMENDATIONS, PART III; FINAL JUDGMENT** |
| 18 This Document Relates to:<br>ALL INDIRECT PURCHASER ACTIONS | |
| 19 and | |
| 20 *State of California et al. v. Infineon Technologies AG, et al.* | |
| 21 *State of New York v. Micron Technology Inc., et al.* | Case No. C 06-4333 PJH |
| 22 *State of California et al. v. Samsung Electronics Co., Ltd., et al.* | Case No. C 06-6436 PJH |
| 23 | Case No. C 07-1347 PJH |
| 24 *State of California et al. v. Winbond Electronics Co.* | Case No. C 07-2589 PJH |
| 25 *Petro Computer Systems, Inc. v. Hitachi, Ltd.* | Case No. C 12-5213 PJH |
| 26 *Petro Computer Systems, Inc. v. Mitsubishi Electric Corporation, et. al.* | Case No. C 12-5214 PJH |

27

28

| *Petro Computer Systems, Inc. v. Toshiba Corporation, et. al.* | ) | Case No. C 12-5215 PJH |
|---|---|---|
| *State of California et al., v. Toshiba Corporation et al.,* | ) | Case No. C 12-5230 PJH |
| *State of California et al., v. Mitsubishi Electric Corporation, et. al.* | ) | Case No. C 12-5229 PJH |
| *State of California et al., v. Hitachi, Ltd.* | ) | Case No. C 12-5231 PJH |

The Indirect Purchaser Plaintiffs' counsel and the Attorneys General (collectively, "Counsel") have moved the Court to:

(1)     Award them an aggregate fee of $77,680,000.00, which is 25% of the total of the Settling Defendants' settlement payments (the "Settlement Fund") of $310,720,000.00, reimburse the Indirect Purchaser Plaintiffs' counsel litigation costs and expenses in the amount of $6,338,232.00, reimburse the Attorneys General litigation costs and expenses in the amount of $5,483,468.63, as identified in the "Indirect Purchaser Plaintiffs' And Attorneys Generals' Joint Application For Attorneys' Fees; Indirect Purchaser Plaintiffs' Application for Costs and Incentive Awards; And Attorneys Generals' Application for Costs," filed February 28, 2014 (Dkt. No. 2181) ("Joint Application").  (The supporting documentation for the Joint Application is Docket Nos. 2182 – 2185-9.)

(2)     Award each of the named plaintiffs who served as class representatives in the lead private action, *Petro Computer Systems v. Micron Technology, Inc.*, C-05-02472-PJH, a payment, usually called an "incentive award," of $5,000.00, and award each of the plaintiffs in the other settled actions an incentive award of $500.00.

(3) Adopt, pursuant to Rule 53(f), Federal Rules of Civil Procedure, as a final matter, the findings of fact, conclusions of law and recommendations contained in the Special Master's Report, Part III: Attorneys' Fees, Expenses and Incentive Awards, filed November 5, 2013 (Dkt. No. 2155) ("Report, Part III").

A hearing was held on June 25, 2014, and this matter came on before the Court to determine, *inter alia*, whether to award Counsel the requested aggregate fee, cost reimbursements and the plaintiffs' incentive awards, and whether to adopt as a final matter the findings, conclusions and recommendations in the Report, Part III.  Four objections were filed to the request for an award of attorneys' fees.  The substance of these objections fall broadly into the following categories: (1) that this is a "mega-fund" case where, as a matter of law, the fee award should be less than the Ninth Circuit benchmark fee of 25%;  (2) the requested fee would be a "windfall" for the private counsel

[PROPOSED] ORDER RE ATTORNEYS' FEES, COST AND INCENTIVE AWARDS, ADOPTION OF SPECIAL
MASTER'S REPORT AND JUDGMENT – CASE NO. M-02-1486-PJH

in this case because a majority of the work was done by the Attorneys General; (3) the Court must, as a matter of law, review counsel's individual contemporaneously maintained time records before awarding a fee; and (4) any money that may be distributed *cy pres* must be removed from the computation of the "common fund." No objections were filed to the requests for cost reimbursement or to the request for incentive awards to Plaintiffs. No objectors appeared at the fairness hearing.

The Court having carefully reviewed and considered Plaintiffs' motion for attorneys' fees, expenses and incentive awards (Dkt. No. 2186), the Joint Application, the Report Part III, Plaintiffs' motion for final adoption of the Report, Part III (Dkt. No. 2187), the objections raised to the requested attorneys' fee award (Dkt. Nos. 2199, 2200, 2201, 2204, 2226 and 2228), and the Plaintiffs' responses to these objections (Dkt. No. 2221), the arguments of counsel and the records on file in this action, and having fully addressed these objections and other issues at the hearing, the Court has rejected these objections and determined that: (1) Plaintiffs' motion for an award of attorneys' fees, expenses and incentive awards is GRANTED with the modification noted below; and (2) Plaintiffs' motion for final adoption of the findings of fact, conclusions of law and recommendations set out in the Report, Part III, is GRANTED with the modification noted below. Accordingly, good cause appearing therefor, it is:

ORDERED, ADJUDGED AND DECREED that:

1. The Court has jurisdiction over the subject matter of this litigation, and all actions within this litigation, and over the parties to the Settlement Agreements, including all members of the Indirect Purchaser Settlement Class, the Government Purchaser Settlement Classes, the Plaintiffs and the Settling Defendants, and any person or entity claiming by, for, or through the Settling Parties with regard to the Released Claims, as defined in the Settlement Agreements.

2. Four (4) objections to the Joint Application were filed on behalf of a total of nine (9) members of the Indirect Purchaser Settlement Class. The Court has carefully reviewed and

2

considered the objections to the requested attorneys' fee award, and hereby OVERRULES each of
the objections as being without merit for the reasons stated in the "Indirect Purchaser Plaintiffs' and
Attorneys General's Joint Reply Memorandum In Support of (1) Joint Application for Attorneys'
Fees, Separate Requests for Expense Reimbursements and Incentive Awards and (2) Motion for
Final Adoption of Special Master's Report, Part III: Attorneys' Fees, Expenses and Incentive
Awards; Responses to Objections to Joint Fee Application," filed June 10, 2014 (Dkt. No. 2221) and
for the reasons stated at the June 25, 2014 hearing.

3.      The Court has reviewed the computation of the common fund made by Counsel and
the Special Master and finds it reasonable.  The Court has reviewed the summary of attorney and
paralegal hours spent in the prosecution of these cases, and performed the lodestar cross-check
required for a percentage of the fund fee award.  The Court hereby ADOPTS as a final matter the
findings of fact, conclusions of law and recommendations contained in the Special Master's Report,
Part III, with the following modification.  Counsel's Joint Application requested that the Court
approve cost items totaling $653,002.00, which are fees for the services of Berman DeValerio, a law
firm appointed by the Special Master to advocate for the interests of resellers in the Indirect
Purchaser Settlement Class during the negotiation of the plan of distribution, and Susman Godfrey, a
law firm representing a specialty DRAM reseller that was invited by the Special Master to
participate in those negotiations.  The Special Master's Report, Part III, recommends that these fees
be treated as recoverable cost items.  However, the Court finds that it is more appropriate to include
these fees within the fee award to counsel.

4.      The Court hereby awards Counsel attorneys' fees in the amount of $78,333,002.00
(approximately 25.2% of the Settlement Fund) together with interest earned on this amount at the
same rate as that earned on the Settlement Fund until disbursed to Counsel.

5.      The Court hereby awards Indirect Purchaser Plaintiffs' Counsel their litigation costs
and expenses in the amount of $5,685,230.00.

6.      The Court hereby awards the Attorneys General their litigation costs and expenses in the amount of $5,483,468.63.

7.      The Court hereby awards each of the named plaintiffs in the *Petro* action an incentive award in the amount of $5,000.00.

8.      The Court hereby awards each of the named plaintiffs in the other settled actions an incentive award in the amount of $500.00.

9.      The Escrow Agent shall pay the attorneys' fees, litigation costs and expenses and incentive awards, together with interest as provided above, from the Settlement Fund.

10.      The fees awarded shall be divided between Indirect Purchaser Plaintiffs' Counsel and the Attorneys General pursuant to the agreement negotiated during the proceedings before the Special Master.

11.      The fees and litigation costs and expenses awarded to Indirect Purchaser Plaintiffs' Counsel shall be allocated among such plaintiffs' counsel by Indirect Purchaser Plaintiffs' Co-Lead Counsel in a manner which, in Co-Lead Counsel's good-faith judgment, reflects each such plaintiffs' counsel's contribution to the institution, prosecution and resolution of the litigation.

12.      The fees and litigation costs and expenses awarded to the Attorneys General shall be allocated among the Attorneys General by their Executive Committee, including the Attorney General for the State of New York as well as Co-Lead Counsel and Liaison Counsel for the *Infineon* matter, in a manner which, in the good-faith judgment of the Executive Committee, including the Attorney General for the State of New York as well as the Co-Lead Counsel and Liaison Counsel for the *Infineon* matter, reflects each such Attorney General's contribution to the institution, prosecution and resolution of the litigation.

13.      Without affecting the finality of this Order and Judgment in any way, this Court hereby retains continuing and exclusive jurisdiction over:  (a) disposition of the Settlement Funds as

4

defined in each Settlement Agreement and distribution to class members, and potentially to *cy pres* recipients, pursuant to further orders of this Court; and (b) hearing and ruling on any matters relating to the plan of distribution of settlement proceeds and any matters regarding claims made by members of the Settlement Classes to share in the settlement proceeds.

14.     The Court finds, pursuant to Rules 54(a) and (b), Federal Rules of Civil Procedure, that this Final Judgment as to the award of attorneys' fees, reimbursement of litigation costs and expenses and incentive awards should be entered as a Final Judgment, and further finds that there is no just reason for delay in the entry of this Final Judgment.


Dated: June  27 , 2014

_____
PHYLLIS J. HAMILTON
Judge of the United States District Court

# EXHIBIT 4

1   FRANCIS O. SCARPULLA (41059)
CRAIG C. CORBITT (83251)
2   CHRISTOPHER T. MICHELETTI (136446)
ZELLE HOFMANN VOELBEL & MASON LLP
3   44 Montgomery Street, Suite 3400
San Francisco, CA 94104
4   Telephone: (415) 693-0700
Facsimile: (415) 693-0770
5   fscarpulla@zelle.com
ccorbitt@zelle.com
6

*Lead Counsel for Indirect Purchaser Class*

7

8

9

10

11               **UNITED STATES DISTRICT COURT**

                **NORTHERN DISTRICT OF CALIFORNIA**

12

                    **OAKLAND DIVISION**

13

| | |
|---|---|
| 14  IN RE STATIC RANDOM ACCESS MEMORY (SRAM) ANTITRUST LITIGATION | Case No. 4:07-md-1819 CW<br>MDL No. 1819 |
| 15 | **[PROPOSED] ORDER GRANTING AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES AND FOR CLASS REPRESENTATIVE INCENTIVE PAYMENTS** |
| 16 | |
| 17  This Document Relates to: | |
| 18  ALL INDIRECT PURCHASER ACTIONS | Hearing Date: October 6, 2011<br>Time: 2:00 p.m.<br>Courtroom: 2, 4th Floor<br>Judge: Hon. Claudia Wilken |

19

20

21

22

23

24

25

26

27

28

---

[PROPOSED] ORDER GRANTING AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES AND
FOR CLASS REPRESENTATIVE INCENTIVE PAYMENTS
Case No. 4:07-md-1819 CW; MDL No. 1819

1        The Court, having considered Indirect Purchaser Plaintiffs' Motion for Award of Attorney's

2  Fees, Reimbursement of Expenses, and Incentive Award (the "Motion") and the memorandum and

3  declarations in support thereof, and after a duly noticed hearing, in addition to the findings stated on

4  the record at such hearing, hereby finds that:

5        1. The Motion seeks an award of attorney's fees of one-third (1/3) of the Settlement Fund,

6  which is comprised of all of the Settling Defendants' settlement payments ($41,322,000), as well as

7  the interest earned thereon. IP Plaintiffs' Class Counsel ("IP Class Counsel") also seek

8  reimbursement of their unreimbursed litigation costs and expenses, and incentive awards for the 46

9  court-appointed class representatives.

10        2. The amount of attorney's fees requested is fair and reasonable under the "percentage-of-

11  the-recovery" method, including as confirmed by a lodestar "cross-check."

12        3. The attorney's fees requested were entirely contingent upon success. IP Class Counsel

13  risked time and effort and advanced costs and expenses with no ultimate guarantee of compensation.

14  The award of one-third is warranted for reasons set out in IP Plaintiffs' moving papers including, but

15  not limited to, the following: The result obtained for the class – payment by Defendants of more

16  than $41 million; the quality and quantity of work performed by IP Class Counsel over more than

17  fours years of litigation – such as substantial motion practice, discovery and trial preparation on

18  complex fact and legal issues; the risks faced at the outset and throughout the litigation – such as

19  proceeding after the Department of Justice closed its criminal investigation without seeking any

20  indictments; and, the lodestar "cross-check" – which reveals a reasonable lodestar of over

21  $30,000,000 and a 0.45 fractional multiplier or "negative lodestar" for IP Class Counsel's more than

22  76,000 hours of work on the case.

23        4. Two objections (Cochran and Foligno) to the attorneys' fees request were filed. All

24  objections are hereby overruled on the grounds that the objectors have failed to submit proof or

25  otherwise establish that they are members of the Class, and they therefore lack standing to challenge

26  any fee request. Additionally, the objections are otherwise without merit for the reasons set forth in

27  IP Plaintiffs' Motion For Award Of Attorney's Fees, Reimbursement Of Expenses, And Incentive

28

[PROPOSED] ORDER GRANTING AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES AND
FOR CLASS REPRESENTATIVE INCENTIVE PAYMENTS
Case No. 4:07-md-1819 CW; MDL No. 1819

1    Awards (DE 1375) and IP Plaintiffs' Reply In Support of Motion for Award Of Attorney's Fees,

2    Reimbursement Of Expenses, And Incentive Awards, filed Sept. 15, 2011, and for the reasons stated

3    by the Court at the October 6, 2011 Fairness Hearing (the "Fairness Hearing").

4         5. Cochran and Foligno filed their objections on August 25, 2011. On August 29, 2011, IP

5    Plaintiffs sought discovery from Cochran and Foligno regarding, *inter alia*, their membership in the

6    Settlement Class and their standing to object to the Settlements, Plan of Distribution and request for

7    attorneys' fees. Cochran and Foligno objected to the discovery, IP Plaintiffs moved to compel (*see*

8    DE 1386-1 – 1386-4), and Cochran and Foligno opposed the motion (*see* DE 1391). On September

9    23, 2011, this Court granted the motion to compel, and ordered Cochran and Foligno to appear for

10   depositions and produce documents to IP Plaintiffs by October 3, 2011. DE 1393. Cochran and

11   Foligno refused to comply with and thereby violated the Order. Neither Cochran nor Foligno, nor

12   counsel representing them, appeared at the Fairness Hearing. Cochran's and Foligno's failure to

13   appear for a deposition or otherwise provide the Court-ordered discovery provides a separate and

14   alternative basis for overruling Cochran's and Foligno's objections, and the Court overrules the

15   objections on that basis as well.

16        6. The expenses sought were incurred in connection with the prosecution of the litigation for

17   the benefit of the Class and were reasonable and necessary. There were no objections to the

18   expenses.

19        7. Additionally, the 46 class representatives are entitled to the requested incentive awards

20   because of their work performed for the benefit of the Class and the risks undertaken. There were no

21   objections to the incentive awards.

22        8. Therefore, upon consideration of the Motion and accompanying declarations and based

23   upon all matters of record including the pleadings and papers filed in this action, the Court hereby

24   finds that: (i) the attorneys' fees requested are reasonable and proper; (ii) the expenses requested

25   were necessary, reasonable and proper; and (iii) the incentive awards requested are warranted.

26        Accordingly, it is hereby ORDERED and DECREED that:

27        A. IP Class Counsel are awarded attorney's fees in the amount of $13,774,000.00, which is

28

2

---

1   one-third (1/3) of the Settlement Fund of $41,322,000.00, together with interest earned on the

2   Settlement Fund for the same time period and at the same rate as that earned on the Settlement Fund

3   until dispersed to IP Class Counsel.

4        B. IP Class Counsel are awarded reimbursement of their unreimbursed costs and expenses in

5   the amount of $711,756.76.

6        C. The 46 class representatives are awarded incentive payments as follows: (1) $5,000 to

7   each of the 31 class representatives who were deposed during class certification proceedings; and (2)

8   $2,500 each to the remaining 15 class representatives who were not deposed (including two spouses

9   for whom only one payment is being made), for total payments of $190,000.00.

10       D. The attorneys' fees, reimbursement of expenses, and the incentive awards shall be paid

11   from the Settlement Funds and the interest earned thereon.

12       E. The attorneys' fees and expenses shall be allocated among IP Class Counsel by Lead

13   Counsel (Zelle Hofmann Voelbel & Mason LLP) in a manner which, in Lead Counsel's good-faith

14   judgment, reflects each such IP Class Counsel's contribution to the institution, prosecution and

15   resolution of the litigation.

16       F. This order shall be entered as of this date pursuant to Rule 54(b) of the Federal Rules of

17   Civil Procedure, the Court finding that there is no just reason for delay.

18

19       **IT IS SO ORDERED**

20

21   Date: _October 14, 2011_____

22       HONORABLE CLAUDIA WILKEN
        UNITED STATES DISTRICT COURT

23       NORTHERN DISTRICT OF CALIFORNIA
        OAKLAND DIVISION

24

25

26

27   3224725v4

28

[PROPOSED] ORDER GRANTING AWARD OF ATTORNEY'S FEES, REIMBURSEMENT OF EXPENSES AND
FOR CLASS REPRESENTATIVE INCENTIVE PAYMENTS
Case No. 4:07-md-1819 CW; MDL No. 1819

# EXHIBIT 5

F I L E D

Superior Court of California
County of San Francisco

APR 1 1 2013

CLERK OF THE COURT
BY: Craig Blackwood
                        Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

DEPARTMENT 305

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE [RULE 1550(b)] | ) ) ) J.C.C.P. No.: 4335 |
| **CREDIT/DEBIT CARD TYING CASES** | ) ) **ORDER GRANTING PLAINTIFFS' RENEWED APPLICATION FOR** |
| This Document Relates to: | ) ) **ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS** |
| All Actions | ) ) ) ) ) ) ) ) ) ) ) |

ORDER GRANTING PLAINTIFFS' RENEWED APPLICATION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

1       Plaintiffs' renewed application for attorneys' fees, expenses, and incentive awards

2   came before the Court for hearing on April 2, 2013, in conjunction with plaintiffs' motion for

3   final approval of class action settlement.  The Court has granted final approval to the

4   settlement by separate written order, creating a total Settlement Fund of $31,000,000.

5   Having fully considered plaintiffs' instant fee application, and good cause existing, the Court

6   finds and orders as follows:

7       1.    Plaintiffs' unopposed Request for Judicial Notice in Support of Renewed

8   Application for Attorneys' Fees, Expenses, and Incentive Awards is granted pursuant to

9   Evidence Code sections 452(d) and 453.

10       2.    Plaintiffs and class representatives Richard S.E. Johns, Henry Siu, Amy

11   Miller, Ana C. Lossada, Karen Brock, and Foad Ahmadi shall be awarded $1,000 each as

12   incentive awards.  The incentive awards to the class representatives are reasonable and

13   justified by their contributions to this case.  These awards shall be paid from the Settlement

14   Fund.

15       3.    Plaintiffs' counsel are awarded reimbursement of their expenses in the amount

16   of $289,027.91, which were reasonably incurred and appropriate given the circumstances of

17   this action.  This award shall be paid from the Settlement Fund.

18       4.    Plaintiffs' counsel are awarded attorneys' fees in the amount of

19   $9,010,972.09, with interest thereon from the date of this Order to the date of distribution.

20   This award shall be paid from the Settlement Fund

21       5.    The amount of attorney's fees awarded is based on the lodestar-times-

22   multiplier method.  Counsel's lodestar is $6,616,676.00, based upon 11,001.70 hours

23   expended at a blended hourly rate of $601.42 per hour.  The multiplier which the Court

24   applies to this lodestar is approximately 1.4.

25       6.    In evaluating the reasonableness of counsel's lodestar and hourly rate, the

26   Court has considered a variety of factors, including: the experience, background and

27   reputation of counsel; the prevailing hourly rates in the community for similar services

28

1

ORDER GRANTING PLAINTIFFS' RENEWED APPLICATION FOR ATTORNEYS' FEES,
EXPENSES, AND INCENTIVE AWARDS

1    charged by attorneys of similar skill and experience; the time, effort, and skill of counsel
2    both in terms of what occurred during the litigation and what was reasonably required; the
3    efficiency of counsel in performing the work; the amount at stake in the litigation; the
4    desirability or undesirability of the case; and the character and quality of the documentation
5    offered in support of the application for fees. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132,
6    1138-39 (2001); *Serrano v. Unruh*, 32 Cal.3d 621, 643 (1982); *Hensley v. Eckerhart*, 461
7    U.S. 424, 433-34 (1983); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579-80 (2004).
8    Having considered these factors, the Court determines that the time counsel expended in this
9    case is reasonable for the work performed and that counsel's blended hourly rate is
10   reasonable in this community.  The resulting lodestar of $6,616,676 is thus reasonable and
11   appropriate.

12         7.      In evaluating the reasonableness of the multiplier of approximately 1.4, the
13   Court has considered a variety of factors, separate and distinct from the factors considered
14   above in determining the reasonableness of the lodestar itself, including: the novelty,
15   complexity, and difficulty of the issues in the case; the extent to which the nature of the
16   litigation has precluded other employment by counsel; the result achieved; the contingent
17   nature of the fee award and incentive for counsel to risk pursuing the litigation on a
18   contingent basis; and the time value of money with regard to the delay in receipt of fees. *See*
19   *Serrano v. Priest*, 20 Cal.3d 25, 48-49 (1977); *Ketchum v. Moses, supra,* 24 Cal. 4th at 1138.
20   Having considered these factors, the Court determines that a multiplier of approximately 1.4
21   is reasonable and appropriate and applies that multiplier to the lodestar.

22         8.      The resulting award of fees in the amount of $9,010,972.09 is also reasonable
23   when cross-checked against the percentage-fee method. *See Chavez v. Netflix, Inc.,* 162
24   Cal.App.4th 43, 65-66 (2008); *Lealao v. Beneficial California, Inc.*, 82 Cal.App.4th 19, 35-37
25   (2000).  The fee award is approximately 29 percent of the total Settlement Fund of
26   $31,000,000.  Applying the percentage of recovery analysis, the Court determines that an
27   award of fees of approximately 29 percent of the total settlement consideration is consistent

28

with fee awards in similar cases, consistent with the market for contingent litigation of this nature, and reasonable and appropriate under the circumstances of this case.

9.     The combined amount of the attorneys' fees and expenses herein awarded is $9,300,000, or 30% of the Settlement Fund of $31,000,000.

10.     Lead counsel Zelle Hofmann Voelbel & Mason LLP is directed to allocate the fees among plaintiffs' counsel in a manner that reasonably reflects the hours expended by, and relative contributions of, each firm. *See In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1055-56 (2003). In the event all plaintiffs' counsel do not agree to an allocation, the Court shall decide the allocation or refer the matter for decision to a Special Master.

**IT IS SO ORDERED.**

DATED:  April 11, 2013

John E. Munter
Judge of the San Francisco Superior Court

ORDER GRANTING PLAINTIFFS' RENEWED APPLICATION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS