Vaughn R Walker
Law Office of Vaughn R Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA  94111
Tel:  (415) 871-2888
Fax:  (415) 871-2890
vrw@judgewalker.com

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No 1917 |
| This Order Relates To: | Master Case No 3:07-cv-05944SC |
| Best Buy v Toshiba | **ORDER RE TOSHIBA'S MOTION TO COMPEL DISCOVERY RE BEST BUY'S COMPETITIVE INTELLIGENCE AND PRIVATE LABEL PROGRAMS** |

The Toshiba defendants ("Toshiba") have moved to compel Best Buy to respond further to discovery requests regarding Best Buy's competitive intelligence and private label programs, specifically seeking further responses to Toshiba's Requests for Production of Documents Nos 1-4, 8-9, 13-14 and a further response to Interrogatory No 9.

## I.   Toshiba's Competitive Intelligence Discovery Requests

In light of the court's prior decision,[1] the parties do not dispute the relevance of Best Buy's competitive intelligence activities to issues of pass-through and antitrust injury and to rebut any argument that competitor communications and price monitoring are indicative of an improper conspiracy.  Neither do the parties dispute that Best Buy has produced documents regarding its competitive intelligence activities during the relevant period.  The present dispute centers on the quality and extent of Best Buy's production of responsive documents and interrogatory responses.

With respect to Best Buy's competitive intelligence program, Toshiba seeks further responses to its Document Requests Nos 1-4, 8[2] and 13-14.[3]  Toshiba's Document Request Nos 2-4 and 13, provide in part as follows:

REQUEST FOR PRODUCTION No 2:

All Documents, including but not limited to reports, analyses, memoranda, and communications relating to Your competitive intelligence activities.  * * *

REQUEST FOR PRODUCTION No 3:

All Documents showing competitor intelligence activities engaged in by current or former Best Buy employees. * * *

REQUEST FOR PRODUCTION No 4:

---

[1] *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 301 FRD 449 (ND Cal 2014).

[2] Toshiba's Document Request No 8 is discussed separately below.

[3] Since Document Requests Nos 1 and 14 are "catch-all" requests for all documents identified, considered or relied upon in preparing responses to Interrogatories, and all documents from custodial files of all persons identified in response to Interrogatories, respectively, this Order shall address them in connection with the other substantive discovery requests at issue here.

All Documents that contain the terms, phrases, notations, e-mail addresses, contact lists, or references of "Asia News Flash," "ad reaction," "Circuit City," "Circuit," "Competitive Edge," "Competitive Edge Updates," "Competitive Update," "Competitive Flash," "Competitive Specialist," "Competitive Strategies," "Competitive Strategies Group," "Field Competitive Manager," "Field Competitive Team," "Mystery Shop," "Pricing Supervisor," "reaction plan," or "shop reaction," including but not limited to Documents sufficient to show all Persons that received Documents bearing these notations.

**REQUEST FOR PRODUCTION No 13:**

All Documents relating to any modification, reduction, downsizing, reorganization, or termination of all departments or units that participated in Your competitive intelligence activities, including any change in employment status for any employees assigned to gather competitive intelligence on Your behalf.

The undersigned has reviewed Toshiba's Requests for Production Nos 2 -4 and 13 and Best Buy's Responses and Objections.  The requests are unbounded in time and not limited to the subject matter in dispute – CRTs and CRT finished products.  Hence, they are overbroad, unduly burdensome and properly objectionable.  The requests define "competitive intelligence activities" as including but not limited to "Your or any of Your executives, employees, or agents' participation in any meetings with Your competitors" and thus cast a net far broader than necessary to obtain or lead to the discovery of admissible evidence.

Request for Production No 4 follows up and requests all documents containing one of 17 terms, including "Circuit," "Competitive Update," "Competitive Specialist" and "Pricing Specialist," which would appear to retrieve far more irrelevant documents, such as technical and human resources documents, than relevant documents.

## A.   Summary of the Parties' Arguments

Specifically, Toshiba requests:  (1) a new search and production of "documents from the 14 competitive intelligence custodians identified by the Toshiba Defendants, using the same search terms Best Buy utilized when responding to Panasonic and LG's discovery requests" (Document Request Nos 1-3, 13-14), (2) further searches using 17 specified search terms to produce documents relating to Best Buy's competitive intelligence activities (Document Request No 4) and (3) further searches of and production of documents concerning CRTs or CRT Finished Products produced by Best Buy in the *In re TFT-LCD (Flat Panel) Antitrust Litigation*[4] (Document Request No 8).  *See* 9/12/14 Toshiba's Motion to Compel ("Toshiba's Motion to Compel") at 2, 10.

The reasons Toshiba provides for its assertion that "Best Buy has refused to make a reasonable production of its competitive intelligence documents" are numerous, including the following:  (1) Best Buy made a "unilateral decision to produce purportedly representative samples of the types of competitor information it has," refusing to produce documents regarding "*how* it gathers competitive intelligence," (2) Best Buy "has not produced any documents from competitive intelligence custodians in this case," producing only 263 documents from its former head of the competitive intelligence program, Philip Britton, all of which were identified by defendant Panasonic from Best Buy's document production in the *TFT-LCD Antitrust Litigation* and (3) "Best Buy's agreement to permit Panasonic to review Best Buy's LCD production for additional documents is inadequate." Toshiba's Motion to Compel at 3-4.

In opposition, Best Buy asserts that:  (1) Toshiba's motion and discovery requests violate the court's discovery order requiring defendants to coordinate discovery in that Best Buy negotiated with defendant Panasonic on competitive intelligence document discovery long ago and based its searches and productions on the negotiated terms and

---

[4] *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Case No 3:07-md-1827 SI (ND Cal) ("*TFT-LCD Antitrust Litigation*").

procedures, (2) Toshiba's discovery requests are burdensome and dilatory because they were filed August 1, 2014, the last day to serve discovery electronically, (3) Toshiba's discovery requests are duplicative of requests the court previously found overly burdensome and sustained Best Buy's objections and (4) Best Buy has already produced substantial discovery, far more than any other plaintiff, on competitive intelligence, having produced hundreds of documents and four witnesses on the topic, including the two key competitive intelligence leads, Philip Britton and Mike Ray, as well as Debbie Ayala and Best Buy's Rule 30(b)(6) witness, Brian Stone.  Philip Britton was deposed for seven hours on Best Buy's competitive intelligence program.  Mike Ray was deposed for "the better part of a day" on Best Buy's competitive intelligence.  Brian Stone was deposed for over 4 hours "solely on Best Buy's competitive intelligence program."  10/3/14 Best Buy's Opposition ("Best Buy's Opposition") at 9.

### B.   Coordination of Discovery

Best Buy contends that the motion should be denied in its entirety because Toshiba "deliberately ignored Judge Conti's order requiring the parties to coordinate their discovery efforts so as to avoid repetitive and burdensome discovery" and Toshiba's discovery "replicate[s] the extensive discovery already taken by defendants of Best Buy in this case." Best Buy's Opposition at 1.  Best Buy asserts that on May 15, 2012, Defendants Panasonic Corporation and LG Electronics, Inc served document requests on Best Buy, including a broad document request encompassing all competitive intelligence discovery – seeking all documents referring to Best Buy's "competitors and competition for the sale of CRT Products."  *See* Ex B to 10/3/14 Nelson Dec in support of Best Buy's Opposition ("Nelson Dec"), 5/15/12 Panasonic and LG Electronics' First Set of Requests for Production of Documents.  Best Buy represents that it engaged in extensive negotiations on discovery search terms and a list of custodians "with counsel for Panasonic, acting on behalf of the defendants."  Best Buy's Opposition at 5.  Best Buy further contends that "Toshiba's counsel chose not to participate in any of these discussions," and after Best Buy engaged in "a massive

document search entailing thousands of hours of review time" and production of "almost 53,000 responsive documents comprising more than 124,000 pages" covering an 11-year period, Toshiba did not "contest the adequacy of the search, the propriety of the custodians selected for search, the sufficiency of the search results, or the scope of Best Buy's production."  Best Buy's Opposition at 5.

Upon reviewing the parties' extensive submissions, it appears that the following facts are undisputed.

1.  On April 3, 2012, Judge Conti issued a Discovery Protocol Order (ECF No 1128) requiring the parties to coordinate their discovery and avoid duplicative discovery.

2.  On May 15, 2012, the Panasonic and LG Electronics Defendants served their first set of document requests on Best Buy, seeking among other things, competitive intelligence documents in Request No 14.  *See* Ex B to Nelson Dec.

3.  Defendants Panasonic and LG Electronics' Request No 14 requests:  "All reports, analyses, memoranda, Communications, and other discussions summarizing, describing, or referring to Your competitors and competition for the sale of CRT Products."  Ex B to Nelson Dec.

4.  On August 17, 2012, Best Buy responded to Panasonic and LG Electronics' First Set of Requests for Production of Documents, considering all the requests to have been served on behalf of all defendants.  *See* Ex C to Nelson Dec, Best Buy Responses at 2 ("TO ALL PARTIES AND THEIR COUNSEL OF RECORD" *** "1.  Best Buy construes Defendants' Requests as served on behalf of all defendants named in the Complaint ('Defendants') and responds and objects accordingly.").  The Certificate of Service reflects that Best Buy's responses were served on parties of record, including the Toshiba Defendants.  *See* Ex C to Nelson Dec, Certificate of Service at 7-8.

5. In October and November of 2012, Best Buy negotiated with Panasonic, on behalf of all defendants, regarding discovery on Best Buy's competitive intelligence activities and agreeing both on custodians and search terms. *See* Ex H to 9/12/14 Lau Dec, 8/18/14 L Nelson Letter to M Hamburger.

6. On June 23, 2014, the undersigned conducted a telephone conference on Best Buy's Motion for a Protective Order regarding Panasonic's discovery of Best Buy's competitive intelligence activities, for which counsel for Panasonic appeared on behalf of the other defendants in this litigation. 6/23/14 Order re Best Buy's Motion for Protective Order (ECF No 2677-5, filed 7/7/14) at 2 ("counsel for Panasonic who was also speaking for the other defendants in the above litigation").

7. On August 1, 2014, Panasonic and LG Electronics Defendants served their second set of document requests on Best Buy, requesting documents produced by Best Buy in the *TFT- LCD Antitrust Litigation* or related Actions. *See* Ex J to Nelson Dec.

8. On August 1, 2014, Toshiba served its First Set of Requests for Production of Documents and its First Set of Interrogatories on Best Buy, requesting competitive intelligence documents including documents produced by Best Buy in the *TFT-LCD Antitrust Litigation.*  Ex A and B to 9/12/14 Lau Dec.

9. On September 5, 2014, Toshiba joined in Panasonic and LG Electronics' discovery requests to Best Buy.  *See* Ex I to 9/12/14 Lau Dec, 9/5/14 M Hamburger letter to L Nelson at 1.  September 5, 2014 was the last day of discovery in this matter.

Section XV of the court's Order re Discovery and Case Management Protocol ("Discovery Protocol") addresses "Coordination of Discovery and Individual Actions" and provides as follows:

- "D. All CRT Plaintiffs' counsel and Defendants' counsel shall engage in their best efforts to conduct discovery efficiently and without duplication."

- "E.  * * * Likewise, Defendants shall consult in good faith in an effort to propound joint written discovery requests, but to the extent separate written discovery is served, Defendants shall not duplicate interrogatories, requests for admission, and requests for documents.  Duplication is a proper objection to written discovery requests."

- "H. Any discovery requests, including written discovery, deposition notices, or subpoenas served in this MDL proceeding, shall be served . . . on counsel for each defendant."

Thus, the Toshiba defendants were required by the court's Discovery Protocol to avoid duplicative discovery requests and to coordinate in good faith on discovery with other defendants.[5]  Having received Panasonic's discovery requests much earlier in this litigation, Toshiba was required to coordinate with Panasonic, whose counsel was acting on behalf of all defendants in seeking discovery on Best Buy's competitive intelligence activities.

It appears to the undersigned that Toshiba's Document Request Nos 2-4 and 13, relating to Best Buy's competitive intelligence activities and served on August 1, 2014, are duplicative of, and subsumed within the scope of, Panasonic and LG Electronics' Document Request No 14 served on May 15, 2012:  "All reports, analyses, memoranda, Communications, and other discussions summarizing, describing, or referring to Your competitors and

---

[5] The undersigned has received a 7/7/15 letter from counsel for Thomson SA and Thomson Consumer, Inc ("Thomson defendants") asserting that parties should be allowed to continue discovery motions even after a moving party has settled with its adversary because parties have relied on the discovery of other parties pursuant to the prohibitions against duplicative discovery in the Discovery Protocol.  This argument is compelling and an order on that issue will be forthcoming.  Nevertheless, all defendants, including the Thomson defendants, obtained the benefit of Panasonic's discovery efforts directed toward Best Buy and any complaints about those efforts now would be unpersuasive.

competition for the sale of CRT Products." *See* Ex B to Nelson Dec, Panasonic and LG's First Set of Requests for Production of Documents at 8.  Best Buy's objection on the ground of duplication appears to be proper.

In written discovery and in the Best Buy motion for a protective order, both Best Buy and other defendants treated counsel for Panasonic as acting on behalf of all defendants with respect to discovery from Best Buy.  Counsel for all defendants received copies of Panasonic and LG Electronics' written discovery served on Best Buy, Best Buy's responses and objections and Best Buy's motion for a protective order on competitive intelligence discovery.  Having not coordinated its Best Buy competitive intelligence discovery with Panasonic and having served its first written discovery on Best Buy two months before the discovery cut-off, Toshiba's complaints about the inadequacies of Best Buy's document productions are not persuasive.  Best Buy reasonably negotiated with counsel for Panasonic, believing that Panasonic's counsel acted on behalf of all defendants.  Due to the court's Discovery Protocol requiring coordination, the written record indicating that counsel for Panasonic acted on behalf of all defendants with respect to discovery of Best Buy's competitive intelligence activities, and the timing and duplicative nature of Toshiba's written discovery at issue here, Toshiba's contention that it should not be bound by Panasonic's discovery agreements with Best Buy is also not persuasive.

### C.   Document Request No 8:  Best Buy's Production in the *TFT-LCD Antitrust Litigation*

Toshiba seeks further searches and production of documents responsive to its Document Request No 8, which provides:

**REQUEST FOR PRODUCTION No 8:**

All Documents relating to CRTs or CRT Finished Products that were produced by You in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, Case No. 3:07-md-1827-SI (N D Cal) or related actions.

Best Buy responded by objecting on relevance, duplicativeness and other grounds and referring "Toshiba to Best Buy's Objections and Responses to Panasonic Corporation of North America's Second Set of Requests for Production of Documents and incorporates the same as if fully set forth herein." *See* Ex C to Nelson Dec.

Toshiba asserts that Best Buy did not produce documents responsive to this request previously and that Best Buy should be required to "search its LCD production and produce any non-duplicative documents in this case that relate to CRTs or CRT Finished Products." Toshiba's Motion at 6. Toshiba contends that running a search and performing such a review "should be slight" and not "any serious burden" because it could be "performed by Best Buy's document vendor." *Id.*

Best Buy opposes, arguing that Toshiba deliberately failed to coordinate its discovery, Toshiba's discovery requests are "belated," "duplicative" and "cumulative" since "Best Buy's CRT production includes many of the same competitive intelligence documents produced in the LCD litigation" and "Best Buy negotiated a process with defendants intended to identify selected LCD documents for potential use in this litigation as well." Best Buy's Opposition at 1, 2, 11. Best Buy asserts that Toshiba's Request No 8 is "entirely duplicative" of Panasonic's second set of requests for production of documents (served 8/1/14), Request No 2: "All Documents produced by Best Buy in *In re TFT-LCD (Flat Panel) Antitrust Litigation* or Related Actions that reference or relate to CRTs or CRT Finished Products." *See* Ex J to Nelson Dec. Best Buy met and conferred with defendants regarding Panasonic's request and negotiated a procedure that allowed defendants to review Best Buy's production in the *TFT-LCD Antitrust Litigation* to identify "additional competitive intelligence documents that are potentially relevant to this dispute." Best Buy's Opposition at 12. Best Buy contends that the burden of re-reviewing its *TFT-LCD Antitrust Litigation* production, "which includes over 26,000 documents," would be significant and unwarranted. *Id.*

In reply, Toshiba contends that both its and Panasonic's discovery requests were served on the same day and that Best Buy "unilaterally negotiate[d] with Panasonic"

"while refusing to negotiate with the Toshiba Defendants about their Requests" and now seeks to bind Toshiba to an agreement negotiated without its consent.  Toshiba's Reply at 6.

As discussed above, the facts apparent from the record do not support Toshiba's claims of prejudice.  Panasonic is represented by able, experienced counsel, who acted on behalf of all defendants without any apparent objection.  While it is true that Panasonic's Second Requests for Production of Documents and Toshiba's First Requests for Production of Documents were served on the same day, August 1, 2014, in light of Panasonic's lead role on behalf of all defendants with respect to Best Buy's competitive intelligence discovery, Toshiba should have coordinated with Panasonic to ensure that its discovery concerns were addressed.

### D.  Burden of Further Competitive Intelligence Discovery

In light of the extensive deposition testimony of four Best Buy witnesses on its competitive intelligence activities, the hundreds of competitive intelligence documents produced to date and the negotiated agreement with Panasonic on behalf of all defendants regarding review and production of competitive intelligence CRT documents from Best Buy's *TFT-LCD Antitrust Litigation* production, the undersigned concludes that sufficient discovery has been taken to afford Toshiba the opportunity to establish the nature and practices of Best Buy's competitive intelligence programs that may be used to demonstrate that competitive intelligence activities alone are not indicative of anticompetitive activity.

A search of 14 additional custodial files, new searches using 17 broad terms, new searches of Best Buy's *TFT-LCD Antitrust Litigation* production and reviewing and producing additional documents in response to these overbroad and duplicative document requests would appear to be unduly burdensome in light of the extensive discovery conducted and produced to date.  Having reasonably negotiated with counsel for Panasonic, who acted on behalf of all defendants in seeking discovery of Best Buy's competitive intelligence activities, Best Buy should not be required to conduct duplicative and burdensome discovery on the very same issues raised by Toshiba.

**II.      Best Buy's Private Label CRT Products:  Interrogatory No 9, Document Request No 9**

With respect to Best Buy's private label program, Toshiba requests further responses to Interrogatory No 9 and further production of documents in response to Document Requests 1, 9 and 14.  Toshiba's Motion to Compel at 1, 7.

Toshiba's Interrogatory No 9 seeks a description of Best Buy's "Policies, practices and procedures regarding [its] purchase and sale of CRTs or CRT Finished Products during the Relevant Period as part of a private-label program, including but not limited to (a) the brand name(s) and application(s) of all CRT Finished Products [it] purchased or sold as part of a private label program, and (b) the Identity of the five (5) Persons who had the most responsibility for conducting, implementing or directing [its] private-label program."

Toshiba also seeks production of documents responsive to its Document Request No 9 which calls for a search for private-label documents using 17 terms:

All documents related to [Best Buy's] purchase or sales of CRTs or CRT Finished Products as part of a private-label program, including but not limited to all Documents that contain the terms, phrases, notations, or references of "Asia Office," "BBY China," "Best Buy China," "Dynex," "Funai," "Haier," "Insignia," "Konka," "Orion," "private label," "Private Label Solutions," "Proview," "Rowell," "Sourcing Group," "VPR," "VPR Matrix," or "Xoceco."  For purposes of this request, "private-label program" is defined as those CRTs or CRT Finished Products that You purchased, ordered, directed to be purchased or ordered, considered purchasing or ordering, or arranged for delivery for the purpose of manufacturing, producing, assembling, purchasing, or selling CRT Finished Products under Your brand or under an exclusive brand not sold by Your competition or competitors.

Toshiba specifically requests:

(1)  a substantive response to Interrogatory No 9 "identifying the five persons most responsible for implementing Best Buy's private label program for CRT

Finished Products, as well as the brand names and types of private label

CRT Finished Products sold at Best Buy during the relevant time period;"

(2)  production of documents for the five identified private label persons using

"all previously agreed upon search terms;" and

(3)  production of "all other private label documents regarding CRTs or CRT

Finished Products from the files of these persons and all other custodians

that contain any of the 17 terms listed in Document Request No. 9."

Toshiba's Motion to Compel at 10.


For the reasons that follow, the undersigned finds Request No 9 unreasonably overbroad.  The search terms are very broad and encompass far more than the information purportedly sought, requiring substantial document searches and review time.  Best Buy's awareness of CRT component costs in their private label CRT Finished Products, the substitutability and competition between Best Buy's private label CRT finished products and branded products and pass-on of any unlawful overcharge are only some of the topics that would appear to be embraced by Request No 9.  The undersigned also finds that Document Request Nos 1 and 14, as applied to Interrogatory 9 or Request No 9 would be similarly overbroad and unduly burdensome in light of the marginal relevance of Best Buy's private-label program, the extensive private-label discovery already produced, and the substantial new searches and reviews that would be required.

Courts must weigh the burden of the discovery sought against its likely benefits.  FRCP 26(b)(2)(C)(iii).  Factors courts consider are:  "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving those issues." *Id.*  Two general considerations capture these factors:  relevance and burden.

### A.  Relevance of Best Buy's Private Label CRT Finished Products

Toshiba contends that Best Buy's private label program is relevant to "costs of components in those products, including the costs of the CRTs and CRT sub-components such as glass" and that "Best Buy's awareness of these component costs" is relevant and undisputed.[6]  Best Buy counters that its private label program is not relevant because:  (1) it did not bring any claims related to its private label products; (2) Best Buy bought fully finished products merely containing CRTs as a component, labeled these finished products with Best Buy's house brands and "did not source any of the components for its private-label products"[7] so its private-label program is not relevant to component costs; and (3) how Best Buy's private-label products competed in the market on cost and price is well known to Toshiba which has had Best Buy's transactional data since early 2013.[8]

Both parties cite Special Master Martin Quinn's May 29, 2013 order regarding Toshiba's discovery on private label programs in the *TFT-LCD Antitrust Litigation*.[9]  There, Special Master Quinn concluded that Toshiba's argument on the relevance of Best Buy's private-label program was "elusive," "difficult to understand," and "not on strong grounds," but nevertheless granted Toshiba's motion in part, allowing "very limited discovery."[10]

The essence of Toshiba's argument for relevance appears to be that "unless Best Buy never discussed costs when negotiating purchases from its private label manufacturers, a significant number of documents concerning Best Buy's purchases of CRT finished products from those manufacturers will likely relate to the cost of components in those products, including the costs of the CRTs and CRT sub-components such as glass."[11] Special Master Quinn's assessment in the *TFT-LCD Antitrust Litigation* that "Toshiba's

---

[6] Toshiba's Reply at 7.

[7] Best Buy's Opposition at 13.

[8] *Id.*

[9] Special Master Quinn's Order, *In re TFT-LCD Antitrust Litigation*, 3:07-md-01827-SI, ECF No 8025 (ND Cal May 29, 2013) ("Special Master Quinn's Order").

[10] Nelson Dec, Ex A at 3-6.

[11] Toshiba's Reply at 7.

argument for the significance of this [private label] discovery is elusive" applies to Toshiba's request here.  It is the elusiveness, in Special Master Quinn's apt characterization, of the relevance of this discovery that warrants denying or limiting it.

Furthermore, Best Buy's private label program in the *TFT-LCD Antitrust Litigation* appears to have greater relevance than in this case.  Special Master Quinn observed that "since Best Buy was making monitors, notebooks and TVs, it would obviously have had communications with panel suppliers and had knowledge of, and an interest in, the cost and supply of LCD panels."[12]

With respect to CRTs, Best Buy is an indirect purchaser, buying only CRT Finished Products.  Its injury, if any, depends on proof that the anti-competitive overcharge resulting from the conspiracy alleged here was passed on to Best Buy in the form of a higher finished product price than would have prevailed in the absence of a conspiracy.  The apparent negative that Toshiba seeks to prove through this discovery is the absence of Best Buy's injury.  Although Toshiba does not quite put it this way, Toshiba's discovery, if it would prove anything, would show either that Best Buy passed on to consumers any overcharge from price-fixed CRT components, a price-fix that Toshiba denies, of course, or alternatively that the assemblers of televisions and computers that Best Buy sold suffered the effect of any price-fixing and did not pass this overcharge on to Best Buy.  To be sure, Toshiba takes a different position in litigation with respect to direct purchasers of CRT products and indirect purchasers who bought finished products from Best Buy.  While taking factually inconsistent positions is entirely within Toshiba's right, it is proving the absence of injury that Toshiba seeks to demonstrate that makes this discovery "elusive."  Negative propositions can sometimes be proved, but doing so requires ruling out the possibilities.  In the absence of a clearly stated theory of one or more of the possibilities, and Toshiba has not provided one, discovery directed to a negative proposition does indeed become elusive.  (One advantage of a joint trial of both the direct purchaser and indirect purchaser consumer claims is that it

_____

[12] Special Master Quinn's Order at 5.

would force the parties to take a position on where the effect of any overcharge, if proved, came to rest.)

Special Master Quinn concluded that, "Toshiba is not on strong grounds as to the relevance and significance of its requested discovery, its delay in asking for it, or as to the prejudice to Best Buy of requiring it."[13]  The undersigned agrees with this assessment, indeed, the grounds of relevance in this litigation are even shakier.

### B.  Burden of Private Label Discovery

Notwithstanding Special Master Quinn's characterization, he ordered limited discovery somewhat along the lines Toshiba seeks here.  Toshiba asks that Best Buy be ordered to identify the five persons with the "most responsibility" for conducting, implementing or directing Best Buy's private label program, produce documents from custodial files of those persons using the search terms previously adopted to respond to Defendant's discovery requests and limit the documents to those "regarding CRTs or CRT Finished Products that contain any of the 17 terms listed in Document Request No. 9."[14] Toshiba contends that Best Buy would not be burdened or prejudiced by identifying the brand names and applications because Best Buy only had a limited number of private-label or house-labeled CRT Finished Products and that Toshiba moved to compel six months before trial here rather than two months before trial as in the *TFT-LCD Antitrust Litigation*.

Best Buy counters that it already produced "over 3,600 documents in this matter that relate to VPR Matrix, Insignia, or Dynex, its three main private-label brands," which are more than sufficient to show "how Best Buy merchants assorted and priced its private-label products" and with which branded products they competed.[15]  On balance, it appears that many of the seventeen terms in Request No 9 are extremely broad, such as "Asia

---

[13] Special Master Quinn's Order at 5.
[14] Toshiba's Motion to Compel at 7-8.
[15] Best Buy's Opposition at 13.

1    Office," "BBY China," "Best Buy China," "private label," and "Sourcing Group," and would

2    retrieve a huge number of documents requiring substantial review and culling.

3           Again, the burden of the discovery sought is weighed against its likely

4    benefits.  FRCP 26(b)(2)(C)(iii).  Here, the burden of the discovery sought would be substantial,

5    requiring interviews of 5 new witnesses, document collections and reviews and searches of all

6    documents for each of the 17 broad search terms in Document Request No 9 regarding

7    private-label programs.  Such discovery would require substantial time, effort and cost.  The

8    case is at an advanced stage, soon ready for trial and Best Buy has produced a significant

9    amount of discovery already with respect to its private label products.  The further discovery

10   sought regarding Best Buy's private label program would likely be of minimal significance and

11   relevance in resolving the issues in this case, in particular damages, which are generally

12   addressed by experts using transactional and sales data.  In weighing the burden of the

13   discovery sought against its likely benefits, the undersigned concludes that the marginal

14   relevance and limited potential benefit of the further discovery sought on private label

15   programs is outweighed by the significant burden it would impose at a late stage in this case

16   and after Best Buy has already produced substantial discovery.  *See e g, Meijer, Inc v Abbott*

17   *Labs*, 251 FRD 431, 434 (ND Cal 2008) (burden of discovery far outweighs limited potential of

18   sales data to provide relevant insight); *see also In re Pressure Sensitive Labelstock Antitrust*

19   *Litig*, 226 FRD 492, 498 (MD Pa 2005) ("marginal relevance of the information sought is clearly

20   outweighed by the burden and expense that the proposed discovery would impose.").

21          In light of the elusive relevance and significance of the private label documents

22   sought, the burden of the discovery sought and the fact that Best Buy has already produced

23   over 3,600 documents relating to its top three private-label brands, the undersigned

24   concludes that Toshiba's motion to compel a response to Interrogatory No 9 should be

25   granted only with respect to the brand names and applications of Best Buy's three main

26   private-label brands.  Toshiba's request for the names of "the five persons most responsible

27   for implementing Best Buy's private label program for CRT Finished Products" is obviously

28   vague as personnel undoubtedly changed over the class period.  It should be sufficient for

Best Buy to satisfy this inquiry by identifying the name or names of the person or persons principally responsible for Best Buy's private-label program as it involved CRT Finished Products during the class period.  While of dubious potential to lead to or produce admissible evidence, such a response to Interrogatory No 9 should not be unduly burdensome.  But Toshiba's motion to compel production of documents responsive to Document Request Nos 1, 9 and 14 would be significantly burdensome, requiring new custodial searches, new document searches using broad search terms and substantial document review.  In light of the questionable relevance of Best Buy's limited private-label program, Best Buy's already substantial document production relating to its three top private-label brands and the substantial burden of what Toshiba requests, Toshiba's motion with respect to Document Request Nos 1, 9 and 14 should be denied.

Accordingly, the undersigned **ORDERS** as follows:

Toshiba's motion to compel is **GRANTED in part** with respect to Interrogatory No 9.  Best Buy is ordered to respond to Interrogatory No 9 by specifying the brand names and applications of its three main private-label brands and the names of the five senior or highest-ranking persons with responsibility for conducting, implementing or directing those private-label programs during the relevant period.  Toshiba's motion to compel is **DENIED** in all other respects.

*Signatures on next page*

1   IT IS SO ORDERED.

2

3   Date: July 9, 2015

4

5                                       Vaughn R Walker
                                        United States District Judge (Ret)

6

7   The Recommended Order of the Special Master is Accepted and Ordered / Denied / Modified.

8

9   Date: _____

10

11                                      Honorable Samuel Conti
                                        United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER RE TOSHIBA'S MOTION TO COMPEL DISCOVERY                    PAGE **19** OF **19**