# Exhibit 1

Kenneth S. Marks
Jonathan J. Ross
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
kmarks@susmangodfrey.com
jross@susmangodfrey.com
*Attorneys for plaintiff Alfred H. Siegel, solely
in his capacity as Trustee of the Circuit City
Stores, Inc. Liquidating Trust*
[additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-5944 SC |
| | Case No. C 11-05502 SC |
| This Document Relates to: | MDL No. 1917 |
| *Sharp Elecs. Corp. v. Hitachi, Ltd.*, No. 13-cv-01173; | |
| *Electrograph Systems, Inc. et al. v. Technicolor SA, et al.*, No. 13-cv-05724; | **DIRECT ACTION PLAINTIFFS' MOTION TO COMPEL 30(b)(6) TESTIMONY OF THOMSON SA AND THOMSON CONSUMER ELECTRONICS, INC.** |
| *Siegel v. Technicolor SA, et al.*, No. 13-cv-05261; | |
| *Best Buy Co., Inc. v. Technicolor SA, et al.*, No. 13-cv-05264; | The Honorable Samuel Conti |
| *Interbond Corporation of America v. Technicolor SA, et al.*, No. 13-cv-05727; | |
| *Office Depot, Inc. v. Technicolor SA, et al.*, No. 13-cv-05726; | |
| *Costco Wholesale Corporation v. Technicolor SA, et al.*, No. 13-cv-05723; | |

1

3496325v1/012325

1

2

*P.C. Richard & Son Long Island Corporation, et al. v. Technicolor SA, et al.*, No. 13-cv-05725

3

4

*Schultze Agency Services, LLC, o/b/o Tweeter Opco, LLC, et al. v. Technicolor SA, Ltd., et al.*, No. 13-cv-05668;

5

6

*Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA*, No. 3:13-cv-05262;

7

8

*Target Corp. v. Technicolor SA, et al.*, No. 13-cv-05686;

9

10

*Tech Data Corp., et al. v. Hitachi, Ltd., et al.*, No. 13-cv-00157;

11

*Viewsonic Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 14-cv-02510.

12

13

14

        The Direct Action Plaintiffs ("DAPs") hereby move the Court to compel Thomson SA and

15

Thomson Consumer Electronics, Inc. (together, "Thomson"), to produce a person to testify on

16

Thomson's behalf pursuant to Rule 30(b)(6).   Thomson is in possession of relevant factual

17

information, but it refuses to educate a person or permit testimony about that information,

18

claiming that the information is privileged because it was originally conveyed to an attorney for

19

Thomson.   But the Supreme Court held long ago the attorney–client privilege "does not protect

20

disclosure of the underlying facts by those who communicated with the attorney . . . ."   *Upjohn*

21

*Co. v. United States*, 449 U.S. 383, 395 (1981).   To the contrary, Thomson "may not refuse to

22

disclose any relevant fact within his knowledge merely because he incorporated a statement of

23

such fact into his communication to his attorney."   *Id.* at 396 (internal quotation marks omitted).

24

This Court should not permit Thomson to do so here.

25

26

27

28

3496325v1/012325

## I. Background

Thomson admittedly has information relating to key facts in this case that it has withheld from disclosure on the grounds of privilege.  Pursuant to two notices of deposition,[1] Thomson presented Meggan Ehret to testify as its designated agent, in Indianapolis, Indiana.  Ms. Ehret testified that she is the Corporate Secretary and General Counsel Litigation and Compliance for Technicolor USA, Inc., a Thomson affiliate.  Ex. C, 4:18–22.[2]  During the course of the deposition, it came to light that Sullivan & Cromwell, one-time Thomson outside counsel, had conducted interviews of then-current and -former Thomson employees and prepared memoranda that memorialized those interviews.  Although outside counsel for Thomson had reviewed the content of those memoranda, Ms. Ehret was not educated on the facts contained within them.  In addition, Thomson's current counsel conducted interviews of three French witnesses—former employees of Thomson—whom DAPs have been attempting to procure for depositions in this case. Ex. E, 96:6–97:3.  Ms. Ehret attended at least one of those latter interviews.

During the deposition, Ms. Ehret was instructed by counsel not to reveal the identities of the interviewees or any of the facts learned in the course of those interviews.  Ex. C, 10:5–16:3.  Other than eventually identifying Agnès Martin as one of the interviewees, Ms. Ehret complied with that instruction.  *Id.*; Ex. E, 159:7–18.  Besides declining to educate herself about interviews she did not attend, Ms. Ehret acknowledged that she "did sit in on certain limited interviews of former Thomson SA employees" in her "capacity as in-house counsel for Thomson Consumer," but she made clear that she was "not disclosing any facts" that she "wouldn't have otherwise had

---

[1] The notices are attached hereto as Exhibits A and B.  *See* Ex. A (Third Amended Notice of Deposition of Thomson SA Pursuant to Fed. R. Civ. P. 30(B)(6)); Ex. B (Third Amended Notice of Deposition of Thomson Consumer Electronics, Inc. Pursuant to Fed. R. Civ. P. 30(B)(6)).

[2] A final draft of the deposition was not available at the time this motion was filed, and citations are to the three volumes of the rough draft, attached as Exhibits C, D, and E.

3

from any other source other than [her] attendance at an interview conducted by Thomson

Consumer and Thomson SA's outside counsel, Faegre Baker Daniels." Ex. D, 95:19–97:3. This

selective testimony led to numerous gaps where factual information may have been known to Ms.

Ehret or Thomson but was expressly withheld. The following exchange is representative:

> Q       Aside from the documents you reviewed in connection with
>         the multiple interviews that you conducted in preparation
>         for your deposition today, did you come to learn any
>         information to suggest that Thomson SA participated in
>         meetings where there was discussion of price fixing for
>         markets other than Turkey?
>
> MS. OSBORN:       Object to the extent answering the question
>                   requires you to reveal any attorney-client privilege or work
>                   product. You can otherwise answer the question.
>
> A       Nothing else I have done in preparation for today without
>         giving you any confidential information, without waiving
>         any privilege suggests that Thomson SA breached any
>         agreement or was involved in any pricing discussions with
>         respect to customers outside of Turkey.

Ex. C, 121:6–22; *see also, e.g.*, *id* at 131:23–132:8; 133:5–134:5; 143:25–145:6; 151:10–22;

192:19–193:3. Such responses not only failed to answer the questions asked, they also failed to

inform DAPs whether Thomson had any factual information that would answer the questions

asked.

**II. Thomson Must Educate a Person to Testify About Facts Discussed During the Interviews**

Thomson may not assert privilege as to facts made known to it during the investigations of

its counsel. "Facts communicated to an attorney are not protected by the attorney-client

privilege." *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.*, 251 F.R.D. 534, 541 (D. Nev. 2008)

(citing *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981)). "The privilege only protects

disclosure of communications; it does not protect disclosure of the underlying facts by those who

communicated with the attorney." *Upjohn*, 449 U.S. at 395; *accord Triple A Mach. Shop, Inc. v.*

4

*State*, 261 Cal. Rptr. 493, 500 (App. 2 Dist. 1989).  By asserting privilege over facts that are admittedly known to the corporation, Thomson demonstrates "a fundamental misconception of just what it is the disclosure of which is forbidden by the rule" of attorney–client privilege. *Philadelphia v. Westinghouse*, 205 F. Supp. at 831.

> The protection of the privilege extends only to communications and not to facts.  A fact is one thing and a communication concerning that fact is an entirely different thing.  The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Upjohn*, 449 U.S. at 395–96 (brackets and quotation marks omitted) (quoting *Philadelphia v. Westinghouse*, 205 F. Supp. at 831).

This longstanding rule precludes Thomson from claiming privilege as to the facts learned in the course of its counsel's investigations.  As the Third Circuit explained in *Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.*:

> A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer.

32 F.3d 851, 864 (3d Cir. 1994).  This is true where the facts are communicated to the client's attorney by a current employee of the client.  *See Upjohn*, 449 U.S. at 396 ("'The client . . . may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.'" (quoting *City of Philadelphia v. Westinghouse Electric Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962)).  And it is equally true where the facts are communicated to the client's attorney by someone not employed by the client.  *See Great Am. Ins.*, 251 F.R.D at 541 ("clients cannot refuse to disclose facts which their

5

attorneys conveyed to them and which the attorneys obtained from independent sources."

(internal quotation marks omitted) (quoting *Sprint Commc'ns Co. v. Theglobe.com, Inc.*, 236

F.R.D. 524, 529 (D. Kan. 2006)).

Beyond its obligation to allow DAPs to inquire about facts learned through the prior

investigations of its counsel, Thomson must also:

> educate an appropriate Rule 30(b)(6) designee to provide
> knowledgeable answers reasonably available to the corporation,
> which include information ascertainable from project files and
> documents in the repository, information from past employees,
> witness testimony and exhibits, or any other sources available to the
> corporation, ***including factual information learned through or
> from its counsel***.

*Great Am. Ins.*, 251 F.R.D at 541 (emphasis added); *accord Pate v. Winn-Dixie Stores, Inc.*, 2014

WL 5341778, at *5 (S.D. Ga. Oct. 20, 2014) ("The privilege does not protect facts communicated

to an attorney; therefore, a designated agent must testify as to factual information transmitted

from or through its counsel.").  As the court in *Sprint Communications* explained, an agent of a

corporation designated under Rule 30(b)(6) must testify about factual information, even if the

information is known the corporation only through a communication to an attorney for the

corporation:

> As a preliminary matter, the attorney-client privilege does not
> protect facts communicated to an attorney.  Moreover, clients
> cannot refuse to disclose facts which their attorneys conveyed to
> them and which the attorneys obtained from independent sources.
> When a corporation produces an employee under Fed. R. Civ. P.
> 30(b)(6) to testify to corporate knowledge, the employee must
> provide responsive underlying factual information even though
> such information was transmitted through or from corporate
> lawyers.

236 F.R.D. at 529.

Accordingly, Thomson should be compelled to educate and present a witness to testify on Thomson's behalf about the interviews at issue.  The scope of the testimony should include, at a minimum: (1) the identity of each person interviewed; (2) the date of each interview; (3) the attendees of each interview; and (4) all facts discussed during each interview.  Thomson's designated agent should be required to review the interview memoranda and be fully prepared to address all factual information contained in the memoranda.[3]

Counsel for Thomson has taken the position that if it is required to present a witness to answer questions about the interviews, no additional deposition time should be permitted.  That would be plainly inequitable.  Thomson had and has an obligation to produce a witness educated to testify to Thomson's knowledge about the interviews at issue.  An inordinate amount of DAPs' deposition time was wasted at Ms. Ehret's deposition as a result of Thomson's failure to prepare Ms. Ehret to testify about the interviews and Thomson's refusal to answer questions about the interviews.  Additional time should be permitted for these questions so as not to punish the DAPs and reward Thomson for its obstructionism.

In addition, pursuant to Rule 37(a)(5), DAPs request that the Court order Thomson to reimburse them for the reasonable expenses, including attorney's fees, incurred in preparing this motion, as well as the reasonable expenses incurred in preparing for and taking the subsequent deposition of Thomson's designated agent.

### III. Conclusion

Thomson should be compelled to present for deposition, pursuant to Rule 30(b)(6), a person fully educated to testify about factual information discussed during the interviews

---

[3] Pending a subsequent deposition of Thomson pursuant to Rule 30(b)(6), Circuit City does not at this time seek to compel production of the memoranda pursuant to Rule 26(b)(3).

conducted by its former and current counsel.  In addition, Thomson should be required to pay DAPs' reasonable expenses, including attorney's fees, incurred in preparing this motion and preparing for and taking the subsequent deposition of Thomson's designated agent.

Dated: January 20, 2015.


By:  */s/ Kenneth S. Marks*
     Kenneth S. Marks
     Jonathan J. Ross
     Johnny W. Carter
     Robert S. Safi
     David M. Peterson
     Brian M. Gillett
     SUSMAN GODFREY L.L.P.
     1000 Louisiana Street, Suite 5100
     Houston, Texas 77002
     Telephone:  (713) 651-9366
     Facsimile:  (713) 654-6666
     Email: kmarks@susmangodfrey.com
          jross@susmangodfrey.com
          jcarter@susmangodfrey.com
          rsafi@susmangodfrey.com
          dpeterson@susmangodfrey.com
          bgillett@susmangodfrey.com

     Parker C. Folse III
     Rachel S. Black
     Jordan Connors
     SUSMAN GODFREY L.L.P.
     1201 Third Avenue, Suite 3800
     Seattle, Washington 98101-3000
     Telephone:  (206) 516-3880
     Facsimile:  (206) 516-3883
     Email: pfolse@susmangodfrey.com
          rblack@susmangodfrey.com
          jconnors@susmangodfrey.com

     *Attorneys for plaintiff Alfred H. Siegel, solely in his capacity as  Trustee of the Circuit City Stores, Inc. Liquidating Trust*


By: */s/ Craig A. Benson*

3496325v1/012325

Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
**TAYLOR & COMPANY LAW OFFICES, LLP**
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone:  (415) 788-8200
Facsimile:  (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and
Sharp Electronics Manufacturing Co. of America*

By:  /s/ *David Martinez*
_____

Roman M. Silberfeld, (SBN 62783)
David Martinez, (SBN 193183)
Jill Casselman
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
Email: RMSilberfeld@rkmc.com
Email: DMartinez@rkmc.com
Email: jcasselman@rkmc.com

Elliot S. Kaplan
K. Craig Wildfang
Laura E. Nelson

9

3496325v1/012325

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
Email: eskaplan@rkmc.com
Email: kcwildfang@rkmc.com
Email: lenelson@rkmc.com

*Attorneys For Plaintiffs Best Buy Co., Inc, Best Buy*
*Purchasing LLC, Best Buy Enterprise Services, Inc.,*
*Best Buy Stores, L.P., Bestbuy.com, L.L.C., and*
*Magnolia Hi-Fi, Inc.*

By: /s/ *Jason Murray*
_____

Jason C. Murray (CA Bar No. 169806)
**CROWELL & MORING LLP**
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213-443-5582
Facsimile: 213-622-2690
Email: jmurray@crowell.com

Jerome A. Murphy (pro hac vice)
Astor H.L. Heaven (pro hac vice)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-624-2500
Facsimile: 202-628-5116
E-mail: jmurphy@crowell.com
Email aheaven@crowell.com

*Attorneys for Target Corp. and Viewsonic Corp.*

By: /s/ *Richard Arnold*
_____

10

MOTION TO COMPEL 30(b)(6) TESTIMONY OF THOMSON SA AND
THOMSON CONSUMER ELECTRONIC, INC. – C-11-05502 SC
MDL No. 1917

3496325v1/012325

Richard Alan Arnold
William J. Blechman
Kevin J. Murray
**KENNY NACHWALTER, P.A.**
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel: 305-373-1000
Fax: 305-372-1861
Email: rarnold@knpa.com
Email: wblechman@knpa.com
Email: kmurray@knpa.com

*Attorneys for Plaintiff Sears, Roebuck and Co. and Kmart Corp.*

By: */s/ Philip J. Iovieno*

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email:    ssinger@bsfllp.com

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
10 North Pearl Street, 4th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665
Email:    piovieno@bsfllp.com
Email:    anardacci@bsfllp.com

*Attorneys for Plaintiffs Electrograph Systems, Inc., Electrograph Technologies, Corp., Office Depot, Inc., Compucom Systems, Inc., Interbond Corporation of America, P. C. Richard & Son Long Island Corporation, Marta Cooperative of America, Inc., ABC Appliance, Inc., Schultze Agency Services LLC on behalf of Tweeter Opco, LLC, Tweeter Newco, LLC, Tech Data Corporation, and Tech Data Product Management, Inc.*

MOTION TO COMPEL 30(b)(6) TESTIMONY OF THOMSON SA AND
THOMSON CONSUMER ELECTRONIC, INC. – C-11-05502 SC
MDL No. 1917

3496325v1/012325

1

By: */s/ David J. Burman*

2

David J. Burman
Cori G. Moore

3

Nicholas H. Hesterberg
PERKINS COIE LLP

4

1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

5

Telephone: (206) 359-8000

6

Facsimile: (206) 359-9000
Email:    dburman@perkinscoie.com

7

Email:    cgmoore@perkinscoie.com
Email:    nhesterberg@perkinscoie.com

8

9

Jordan S. Bass (Cal. Bar No. 208143)
PERKINS COIE LLP

10

Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131

11

Telephone: (415) 344.7000
Facsimile: (415) 344.7050

12

Email:    jbass@perkinscoie.com

13

*Attorneys for Plaintiff Costco Wholesale Corporation*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

3496325v1/012325

# Exhibit A

1   Kenneth A. Gallo (*pro hac vice*)
    Joseph J. Simons (*pro hac vice*)
2   Craig A. Benson (*pro hac vice*)
    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
3   2001 K Street, NW
    Washington, DC  20006-1047
4   Telephone:  (202) 223-7300
    Facsimile:  (202) 223-7420
5   Email: kgallo@paulweiss.com
    Email: jsimons@paulweiss.com
6   Email: cbenson@paulweiss.com

7   Stephen E. Taylor (SBN 058452)
    Jonathan A. Patchen (SBN 237346)
8   TAYLOR & COMPANY LAW OFFICES, LLP
    One Ferry Building, Suite 355
9   San Francisco, California 94111
    Telephone:  (415) 788-8200
10  Facsimile:  (415) 788-8208
    Email: staylor@tcolaw.com
11  Email: jpatchen@tcolaw.com

12  *Attorneys for Sharp Electronics Corporation and*
    *Sharp Electronics Manufacturing Company of America, Inc.*

13  [additional counsel listed on signature page]

14

15              **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
16               **(SAN FRANCISCO DIVISION)**

17  In re: CATHODE RAY TUBE (CRT)          Master File No.  07-cv-5944-SC (N.D.
    ANTITRUST LITIGATION                    Cal)
18
                                            MDL No. 1917
19  _____

    This Document Relates to:
20                                          **THIRD AMENDED NOTICE OF**
    ALL ACTIONS                             **DEPOSITION OF THOMSON SA**
21                                          **PURSUANT TO FED. R. CIV. P.**
                                            **30(B)(6).**
22

23

24

25

26

27

28

1    **TO: THOMSON SA.**

2    Please take notice that Defendant Thomson SA ("Thomson SA") is requested, and

3 required, pursuant to Fed. R. Civ. P. 30(b)(6), Rule 45, and the Court's Discovery and Case

4 Management Protocol [Dkt. No. 1128] to designate and produce a person or persons to testify on

5 behalf of Thomson SA on the matters described and set forth in the Schedule of Rule 30(b)(6)

6 Deposition Topics attached hereto as Exhibit A.

7    The deposition will take place beginning on January 8-9, 2015 at 9:00 a.m., and will

8 continue thereafter until completed, at the offices of Faegre Baker Daniels LLP, 300 N. Meridian

9 Street, Suite 2700, Indianapolis, IN 46204.   The deposition shall continue from day to day

10 (weekends and holidays excepted) until completed.   The deposition shall be recorded

11 stenographically and by video and audio recording devices.

12    You are advised that Rule 30(b)(6) requires you to produce one or more witnesses at the

13 stated location and time who are prepared to testify about Thomson SA's knowledge, and not

14 just information personally known by them, of the topics described and set forth in the Schedule

15 of Rule 30(b)(6) Deposition Topics attached hereto.   If the designated representative or

16 representatives do not have such knowledge, they are required to acquire it through whatever

17 reasonable investigation and preparation may be necessary.

18    Dated:  January 5, 2015

19                                                Respectfully Submitted,

20                                                */s/ Craig A. Benson*

21

22                                                Kenneth A. Gallo (*pro hac vice*)
                                                 Joseph J. Simons (*pro hac vice*)
                                                 Craig A. Benson (*pro hac vice*)

23                                                **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
                                                 2001 K Street, NW

24                                                Washington, DC  20006
                                                 Telephone: (202) 223-7300

25                                                Facsimile: (202) 223-7420
                                                 kgallo@paulweiss.com

26                                                jsimons@paulweiss.com
                                                 cbenson@paulweiss.com

27
                                                 Stephen E. Taylor (SBN 058452)
28                                                Jonathan A. Patchen (SBN 237346)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TAYLOR & COMPANY LAW OFFICES, LLP**
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone:  (415) 788-8200
Facsimile:  (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics
Corporation and Sharp Electronics Manufacturing
Company of America, Inc.*

*/s/ David J. Burman*

David J. Burman (pro hac vice)
Cori G. Moore (pro hac vice)
Eric J. Weiss (pro hac vice)
Nicholas H. Hesterberg (pro hac vice)
Steven D. Merriman (pro hac vice)
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: DBurman@perkinscoie.com
Email: CGMoore@perkisncoie.com
Email: EWeiss@perkinscoie.com
Email: NHesterberg@perkinscoie.com
Email: SMerriman@perkinscoie.com

Joren Bass, Bar No. 208143
JBass@perkinscoie.com
Perkins Coie LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131
Telephone: 415.344.7120
Facsimile: 415.344.7320

*Attorneys for Plaintiff Costco Wholesale
Corporation*

*/s/ Philip J. Iovieno*

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131

Email: wisaacson@bsfllp.com

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: ssinger@bsfllp.com

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665
Email: piovieno@bsfllp.com
Email: anardacci@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs and
Attorneys for Plaintiffs Electrograph Systems, Inc.,
Electrograph Technologies, Corp., Office Depot,
Inc., Interbond Corporation of America, P.C.
Richard & Son Long Island Corporation, MARTA
Cooperative of America, Inc., ABC Appliance, Inc.,
Schultze Agency Services LLC on behalf of Tweeter
Opco, LLC and Tweeter Newco, LLC*

*/s/ Scott N. Wagner*

Robert W. Turken
Scott N. Wagner
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Ave, Suite 2300
Miami, FL 33131-3456
Tel: 305-374-7580
Fax: 305-374-7593
Email: rturken@bilzin.com
Email: swagner@bilzin.com

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: ssinger@bsfllp.com

1

2   William A. Isaacson
    BOIES, SCHILLER & FLEXNER LLP
3   5301 Wisconsin Ave. NW, Suite 800
    Washington, D.C. 20015
4   Telephone: (202) 237-2727
    Facsimile: (202) 237-6131
5   Email: wisaacson@bsfllp.com

6   Philip J. Iovieno
    Anne M. Nardacci
7   BOIES, SCHILLER & FLEXNER LLP
8   30 South Pearl Street, 11th Floor
    Albany, NY 12207
9   Telephone: (518) 434-0600
    Facsimile: (518) 434-0665
10  Email: piovieno@bsfllp.com
    Email: anardacci@bsfllp.com
11

12  *Attorneys for Plaintiffs Tech Data Corporation and*
    *Tech Data Product Management, Inc.*
13

14  */s/ David Martinez*
    Roman M. Silberfeld, (SBN 62783)
15  David Martinez, (SBN 193183)
    ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
16  2049 Century Park East, Suite 3400
    Los Angeles, CA 90067-3208
17  Telephone: (310) 552-0130
    Facsimile: (310) 229-5800
18  Email: RMSilberfeld@rkmc.com
19  Email: DMartinez@rkmc.com

20  *Attorneys For Plaintiffs Best Buy Co., Inc, Best Buy*
    *Purchasing LLC, Best Buy Enterprise Services, Inc.,*
21  *Best Buy Stores, L.P., Bestbuy.com, L.L.C., and*
    *Magnolia Hi-Fi, Inc.*
22

23  */s/ Lee Godfrey*
    H. Lee Godfrey
24  Kenneth S. Marks
    Jonathan J. Ross
25  Johnny W. Carter
    David M. Peterson
26  SUSMAN GODFREY L.L.P.
27  1000 Louisiana Street, Suite 5100
    Houston, Texas 77002
28  Telephone: (713) 651-9366

Facsimile: (713) 654-6666
Email: lgodfrey@sumangodfrey.com
Email: kmarks@susmangodfrey.com
Email: jross@susmangodfrey.com
Email: jcarter@susmangodfrey.com
Email: dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: pfolse@susmangodfrey.com
Email: rblack@susmangodfrey.com
Email: jconnors@susmangodfrey.com

*Attorneys for Plaintiff Alfred H. Siegel, as Trustee
of the Circuit City Stores, Inc. Liquidating Trust*

*/s/ Jason C. Murray*
Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213-443-5582
Facsimile: 213-622-2690
Email: jmurray@crowell.com

Jerome A. Murphy (pro hac vice)
Astor H.L. Heaven (pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-624-2500
Facsimile: 202-628-5116
E-mail: jmurphy@crowell.com
aheaven@crowell.com

*Attorneys for Target Corp.*

*/s/ Richard Arnold*

Richard Alan Arnold
William J. Blechman
Kevin J. Murray

1

KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100

2

Miami, FL 33131

3

Tel: 305-373-1000
Fax: 305-372-1861

4

Email: rarnold@knpa.com
Email: wblechman@knpa.com

5

Email: kmurray@knpa.com

6

*Attorneys for Plaintiff Sears, Roebuck and Co. and*

7

*Kmart Corp.*

8

*/s/ Guido Saveri*

9

Guido Saveri (22349)

10

R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)

11

Travis L. Manfredi (281779)
SAVERI & SAVERI, INC.

12

706 Sansome Street
San Francisco, CA 94111

13

Telephone: 415.217.6810
Fax: 415.217.6813

14

15

*Interim Lead Counsel for the Direct Purchaser*
*Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

## **DEFINITIONS**

The words and phrases used in these Requests shall have the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of California. In addition, the following terms shall have the meanings set forth below:

1.      "And" and "or" mean and/or construed conjunctively or disjunctively as necessary to make the request more inclusive rather than less inclusive.

2.      The words "all," "any," and "each" mean "each and every."

3.      The terms "Communication" and "Communications" mean any transfer or exchange of information whether by written, oral, electronic or other means, including but not limited to oral conversations, e-mails, correspondence, instant or text messages, voicemail messages, facsimiles or telegrams.

4.      "CRT" means any (a) color picture tubes ("CPTs"), which are cathode ray tubes used primarily in color televisions; and (b) color display tubes ("CDTs"), which are used primarily in color computer monitors.

5.      "CRT Finished Product" means any electronic devices containing CPTs.

6.      "CRT Products" means any CRT and/or CRT Finished Product.

7.      "Defendant" or "Defendants" means any of the entities currently or formerly named as defendants in any of these litigations and, without limitation, all of their past and present parents, subsidiaries, affiliates, joint ventures, officers, directors, employees, agents, attorneys, or representatives (and the parents', subsidiaries', affiliates', or joint ventures' past and present officers, directors, employees, agents, attorneys, or representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

8.      "Document" or "documents" has the broadest possible meaning pursuant to the Federal Rules of Civil Procedure including, but not limited to, all writings and other tangible things upon which any form of communication is recorded or reproduced, and preliminary drafts

1   and non-identical copies of the above (whether such copies differ from the original by reason of

2   notation made on such copies or otherwise). Without limiting the generality of the foregoing, the

3   term "document" or "documents" includes, but is not limited to, correspondence, memoranda,

4   notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements,

5   working papers, accounts, analytical records, reports and/or summaries of investigations, trade

6   letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers,

7   booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions,

8   notes or minutes of meetings or of other communications of any type, including inter- and intra-

9   office communications, questionnaires, surveys, charts, graphs, photographs, phonograph

10  recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by

11  electronic data processing or word processing equipment, including email, and all other data

12  compilations from which information can be obtained (by translation, if necessary, by you

13  through detection devices into usable form), including, but not limited to, electromagnetically

14  sensitive storage media such as floppy disks, hard disks and magnetic tapes, and any preliminary

15  versions, drafts or revisions of any of the foregoing. "Document" or "documents" also includes

16  each and every file folder or other material in which the above items are stored, filed or

17  maintained.

18          9.      "Including" or "includes" means without limitation.

19          10.     The term "manager" means any person who served as an officer of a corporation

20  or otherwise held actual or apparent authority to make decisions on behalf of that corporation.

21          11.     The term "person" or "persons" is defined to mean any natural person,

22  corporation, or partnership, or any business, legal, or government entity, organization, or

23  association.

24          12.     "You," "Your," or "Your Company" mean Thomson SA, its predecessors,

25  successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation

26  any organization or entity which it manages or controls, together with all present and former

27  directors, officers, employees, agents, representatives or any persons acting or purporting to act

28  on behalf of Thomson SA.

13.     The terms "Price," "Prices," and "Pricing" mean consideration, establishment and implementation of prices, pricing, discounts, rebates, price quotations, bids, quotes, price lists, price announcements, terms or conditions of sale, credit terms, freight rates or charges and changes or proposed changes in the above.

14.     "Related to" "relating to" "referring to" "regarding" or "with respect to" mean, without limitation, the following concepts: discussing, describing, reflecting, dealing with, and pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

15.     "Relevant Period" means March 1, 1992 to the present.

16.     "TDA" means Technologies Displays Americas LLC (formerly Thomson Displays Americas LLC).

17.     "Technologies Displays" means, collectively, TDA and Technologies Displays Mexicana, S.A. de C.V.

18.     "Thomson Consumer" means Thomson Consumer Electronics, Inc. (now known as Technicolor USA, Inc.).

## SCHEDULE OF RULE 30(B)(6) DEPOSITION TOPICS

### A.     Conspiracy Information

1.     The identity of each company that participated with or including You in any meeting, conspiracy, understanding, or agreement relating to the production, pricing, sale, marketing, or distribution of CRT Products, the identity of each individual who participated on behalf of each such company, the dates of each such participation, a description of each communication, meeting, or other act in furtherance of the conspiracy, understanding, or agreement, and any changes in any such individuals' employment status and all the reasons therefore.

2.     All communications with any other defendant or co-conspirator named in *In re Cathode Ray Tube (CRT) Antitrust Litigation*, U.S. Dist. Ct., Northern District of California, MDL-1917, related to the production, pricing, sale, marketing, or distribution of CRT Products.

3.     Your policies applicable to communications with competitors, including Your policies applicable to communications with competitors regarding production, pricing, development costs, marketing or distribution of CRT Products, Your policies regarding the use of competitors' CRT Products prices obtained directly from competitors in setting the Prices of CRTs You quoted to customers or prospective customers, and Your policies regarding the use of competitors' CRT Products prices obtained directly from competitors in setting the prices of CRTs You quoted to customers or prospective customers.

4.     All internal communications within Thomson SA related to the production, pricing, sale, marketing, or distribution of CRT Products.

5.     All facts that you are aware of with respect to any meeting, conspiracy, understanding, or agreement related to the production, pricing, sale, marketing, or distribution of CRT Products, including the identity of any documents reflecting or relating to the meeting, conspiracy, understanding, or agreement.

6.     All efforts to conceal the existence of any meeting conspiracy, understanding, or agreement related to the production, pricing, sale, marketing, or distribution of CRT Products, including the identity of all persons who actively participated in concealing the meeting, conspiracy, understanding, or agreement, and the extent to which documents were destroyed, false representations were made regarding the reasons for price increases or supply restrictions, and participants met in non-public area to avoid detection.

7.     The identity of all of your current and former employees who provided written or oral information, and the identity of all documents you provided, to any law enforcement or regulatory authority related to any meeting, conspiracy, understanding, or agreement in the production, pricing, marketing, sale, or distribution of CRT Products, including grand jury testimony, affidavits and/or declarations, or communications with lawyers from the United States Department of Justice the Federal Bureau of Investigation, the European Commission, or other foreign governmental or intergovernmental entity or agency.

8.     Any joint ventures, partnerships or other collaborative business relationships, or acquisitions related to CRT Products production, sale, marketing, or distribution, either

undertaken or considered by you with respect to: (a) any other defendant or co-conspirator named in *In re Cathode Ray Tube (CRT) Antitrust Litigation*, U.S. Dist. Ct., Northern District of California, MDL-1917, (b) any competitor, or (c) any other person.

9.     If you contend that you withdrew from any meeting, conspiracy, understanding, or agreement related to the production, sale, marketing, or distribution of CRT Products, all facts regarding the date and circumstances of your withdrawal from the meeting, conspiracy, understanding, or agreement, how you withdrew from the meeting, conspiracy, understanding, or agreement, the identity of persons who withdrew from the meeting, conspiracy, understanding, or agreement on your behalf, and the identity of any documents that support your contention that you withdrew from the meeting, conspiracy, understanding, or agreement.

10.     Your knowledge or beliefs related to the illegality or impropriety of exchanging information or entering into any understanding, agreement, commitment, or contract with any of the defendants or co-conspirators named in *In re Cathode Ray Tube (CRT) Antitrust Litigation*, U.S. Dist. Ct., Northern District of California, MDL-1917, related to the production, pricing, sale, marketing, or distribution of CRT Products.

11.     If you contend that any or all of the Plaintiffs knew or should have known of any meeting, conspiracy, understanding, or agreement related to the production, sale, marketing, or distribution of CRT Products prior to November 2007, the circumstances under which Plaintiffs became aware, or should have become aware, of your involvement in the meeting, conspiracy, understanding, or agreement, and the documents that support your contention.

**B.     Pricing, Sales, and Marketing Information**

12.     The identity and general description of the CRT Products you manufactured, purchased, sold, or distributed.

13.     The distribution channels or classes of trade through which you sold CRT Products during the Relevant Period, including your sales to the following categories of purchasers: (a) your affiliates; (b) other defendants in this litigation; and (c) other business entities, including OEMs, retailers, mass merchandisers, e-commerce, and distributors.

14.     The organization and structure of each of your business units that produced, marketed, sold, or distributed CRT Products, including the identity of all persons with decision-making or supervisory responsibility for (a) the pricing, sale or marketing of CRT Products, including persons with authority and/or responsibility for setting, maintaining, and adjusting inventory targets; (b) sales, purchases, and/or transfers with competitors; and (c) reporting information to or receiving information from trade associations.

15.     The policy and process by which prices, including list prices and actual selling prices, for each CRT Product were set and by whom, including the location of negotiations for sales of CRT Products to Plaintiffs, OEMs, or ODMs; the location of your sales offices in the United States; all factors, formulas, or guidelines you considered in determining prices you charged for each CRT Products; the pricing authority given to employees/affiliates at all levels of the sales and marketing organization; and how pricing decisions were implemented, including any benchmarks (*e.g.*, industry-wide, specific customers, spot market, discounts or rebates) used when establishing and/or negotiating prices.

16.     The relationship between the price of CRTs sold by you and the price of CRT Finished Products sold by you or your domestic and/or international affiliates including, but not limited to: (i) the percentage of the total cost of the CRT Finished Products made up by the CRTs; and (ii) the effect that a change in the price of the CRTs had on the price of the CRT Finished Products.

17.     The extent to which the prices charged for CRT Products were passed on through the distribution chain by you or your domestic and/or international affiliates.

18.     Meetings and other communications between you and any Plaintiff.

19.     Negotiations and other communications between you and OEMs or ODMs regarding the sale of CRTs.

20.     Your activities and transaction directed at, or occurring in, the United States.

21.     Your knowledge that CRTs you sold would be incorporated into products imported into the United States, including that CRTs manufactured for sale to Plaintiffs would be shipped into the United States or that CRTs sold to OEMs or ODMs would be sold to Plaintiffs

in the United States and Your monitoring of the prices of CRT Products sold in the United States.

22.     Policies, practices, or requirements relating to Your participating in negotiations, entering into, or signing contracts for, Your subsidiaries, including Thomson Consumer or Technologies Displays.

23.     The role of current and former directors, officers, employees, agents, or other representatives with any managerial responsibility for recommending, reviewing, setting or approving prices, bids, quotes, or rebates for Your CRTs or CRT Products, or those of Thomson Consumer or Technologies Displays or Videocon Industries, Ltd., during the Relevant Period for the U.S. market.

24.     Business departments or functions shared between You and Your subsidiaries, including Thomson Consumer or Technologies Displays.

25.     Your contacts with the United States during the Relevant Period, including (1) bank accounts, employees, inventory, and owned, rented, or leased property located in the U.S.; (2) sales and exports to the U.S.; (3) operations in the U.S.; (4) taxes paid in the U.S.; (5) U.S. litigations You filed or in which You participated; (6) keeping of books or records in the U.S.; (7) registered or appointed agents for service of process in the U.S.; and (8) attendance by any Thomson SA employees of trade association meetings held in the U.S. relating to CRTs or CRT Products.

26.     Your instructions, directions, policies, or procedures to or from domestic and/or international affiliates related to the production, pricing, negotiation, sale, marketing, or distribution of CRT Products.

27.     Your use of discounts or rebates in connection with the sale of its CRT Products, including how such discounts or rebates were recorded by You and the identity and location of documents or data recording discounts or rebates.

**C.     Transactional and Financial Information**

28.     The electronic data processing systems, programs, and outputs that you used to record, store, compute, analyze, or retrieve any information relating to the production, pricing,

1    marketing, sale, distribution, profitability, or inventory of CRT Products, including systems

2    shared with your domestic and/or international affiliate(s) or any other company; a description of

3    the meaning of the fields in any electronic data you produced to Plaintiffs; an explanation of how

4    to read or interpret transactional or financial data you produced to Plaintiffs (including sales

5    information, cost information cost accounting reports, and production information); the authors

6    of the entries into the databases; and/or instructions for entry of data.

7           29.    The nature of the records of your sale of CRT Products (including, but not limited

8    to, sales to domestic and/or international affiliated entities and other defendants in this litigation)

9    during the Relevant Period, including data which shows the types of CRT Products sold, the

10   volume of sales for each type of CRT Products and the prices at which your CRT Products were

11   sold.

12          30.    The nature of the records of your purchases of CRT Products (including, but not

13   limited to, purchases from domestic and/or international affiliated entities and other defendants

14   in this litigation) during the Relevant Period, including data that relates to the types of CRT

15   Products purchased, the volume of purchase for each type of CRT Products, the prices at which

16   you purchased those CRT Products and the sellers from whom you purchased each type of CRT

17   Products.

18          **D.     Corporate Relationships**

19          31.    The relationship between Thomson Consumer Electronics Inc., and Thomson SA

20   during the Relevant Period, including the ownership, decision-making, and organizational

21   structure of these entities and any departments or divisions within these entities responsible for

22   or involved in pricing, selling, marketing, or distributing CRT Products.

23          32.    The officers and directors of Thomson SA during the Relevant Period.

24          33.    Thomson SA's ownership interest in Videocon Industries, Ltd. during the

25   Relevant Period.

26          34.    The transfer of Thomson SA managers, agents, or employees to Videocon

27   Industries, Ltd.

28

1   35.   The involvement of Thomson SA in the management, sales, marketing, or other

2   corporate responsibilities of Videocon Industries, Ltd. during the Relevant Period.

3   **E.   Manufacturing and Production**

4   36.   A description of Your CRT Product production facilities, including: (a) the

5   location of each facility; (b) the start and end date of production operations at each facility; (c)

6   the products produced at each facility; (d) the number of manufacturing lines at each facility and

7   products produced by line; and (e) the capacity utilization rates for each facility and

8   manufacturing line within each facility.

9   37.   Your policies and practices for setting the production levels for CRT Products,

10   including policies and practices for increasing, decreasing, and/or shutting down production (for

11   any amount of time greater than 24 hours), and all formulas and factors considered in making

12   such production decisions as well as the names of the individuals with authority to implement or

13   deviate from these policies and practices for setting production levels for CRT Products.

14   38.   The method(s) used by Your Company to track production capacity for each CRT

15   Product manufacturing facility and each manufacturing line, the method(s) used by Your

16   Company to track inventory levels, link returns and sales, and monitor product margins of CRT

17   Products You purchased, sold or distributed, the method(s) by which Your Company tracked

18   shutdowns at any of Your CRT Products manufacturing facilities.

19   39.   The typical amount of time and production costs it takes to produce different

20   types of CRT tubes and the typical amount of time after manufacturing of a CRT tube was

21   initiated until manufacturing reached the planned capacity at your manufacturing facilities, and

22   the typical capital costs for building and improving Your CRT manufacturing facilities.

23   40.   The production costs and typical amount of time needed to switch Your

24   production from one type of CRT to a different type of CRT.

25   41.   Whether: (a) particular manufacturing facilities specialized in a particular CRT

26   specification or whether multiple CRT specifications are produced at a single plant, and (b)

27   CDTs and CPTs are, or were, produced at the same manufacturing facilities.

28

42.     The extent to which a CRT made by Your Company can be used in a CRT Finished Product made by another CRT Product manufacturer, including the defendants in this litigation.

43.     The existence and/or function of any department at Your company with responsibility for accounting software and/or electronically stored information.

44.     The use and existence of third-party data sources and other sources of market share data/analyses for CRT Products.

1

## CERTIFICATE OF SERVICE

2     The undersigned counsel hereby certifies that a true and correct copy of the foregoing

3   document was served via email upon the parties and counsel of record on January 5, 2015.

4

5                                    */s/ Craig A. Benson*

6
                                   Kenneth A. Gallo (*pro hac vice*)
7                                  Joseph J. Simons (*pro hac vice*)
                                   Craig A. Benson (*pro hac vice*)
8                                  PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
                                   2001 K Street, NW
9                                  Washington, DC  20006
                                   Telephone: (202) 223-7300
10                                 Facsimile: (202) 223-7420
                                   kgallo@paulweiss.com
11                                 jsimons@paulweiss.com
                                   cbenson@paulweiss.com
12
                                   Stephen E. Taylor (SBN 058452)
13                                 Jonathan A. Patchen (SBN 237346)
                                   TAYLOR & COMPANY LAW OFFICES, LLP
14                                 One Ferry Building, Suite 355
                                   San Francisco, California 94111
15                                 Telephone:  (415) 788-8200
                                   Facsimile:  (415) 788-8208
16                                 Email: staylor@tcolaw.com
                                   Email: jpatchen@tcolaw.com
17
                                   *Attorneys for Plaintiffs Sharp Electronics*
18                                 *Corporation and Sharp Electronics Manufacturing*
                                   *Company of America, Inc.*
19
                                     */s/ David J. Burman*
20                                 David J. Burman (pro hac vice)
21                                 Cori G. Moore (pro hac vice)
                                   Eric J. Weiss (pro hac vice)
22                                 Nicholas H. Hesterberg (pro hac vice)
                                   Steven D. Merriman (pro hac vice)
23                                 Perkins Coie LLP
                                   1201 Third Avenue, Suite 4900
24                                 Seattle, WA 98101-3099
25                                 Telephone: 206.359.8000
                                   Facsimile: 206.359.9000
26                                 Email: DBurman@perkinscoie.com
                                   Email: CGMoore@perkisncoie.com
27                                 Email: EWeiss@perkinscoie.com
                                   Email: NHesterberg@perkinscoie.com
28

THIRD AMENDED NOTICE OF DEPOSITION                          MASTER FILE NO. 07-CV-05944 SC (N.D. CAL.)
OF THOMSON SA PURSUANT TO FED. R.
CIV. P. 30(B)(6)

1

Email: SMerriman@perkinscoie.com

2

Joren Bass, Bar No. 208143

3

JBass@perkinscoie.com
Perkins Coie LLP

4

Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131

5

Telephone: 415.344.7120
Facsimile: 415.344.7320

6

7

*Attorneys for Plaintiff Costco Wholesale
Corporation*

8

*/s/ Philip J. Iovieno*

9

10

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP

11

5301 Wisconsin Ave. NW, Suite 800
Washington, D.C. 20015

12

Telephone: (202) 237-2727
Facsimile: (202) 237-6131

13

Email: wisaacson@bsfllp.com

14

Stuart Singer

15

BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200

16

Fort Lauderdale, FL 33301
Telephone: (954) 356-0011

17

Facsimile: (954) 356-0022
Email: ssinger@bsfllp.com

18

19

Philip J. Iovieno
Anne M. Nardacci

20

BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor

21

Albany, NY 12207
Telephone: (518) 434-0600

22

Facsimile: (518) 434-0665
Email: piovieno@bsfllp.com

23

Email: anardacci@bsfllp.com

24

*Liaison Counsel for Direct Action Plaintiffs and*

25

*Attorneys for Plaintiffs Electrograph Systems, Inc.,
Electrograph Technologies, Corp., Office Depot,*

26

*Inc., Interbond Corporation of America, P.C.
Richard & Son Long Island Corporation, MARTA*

27

*Cooperative of America, Inc., ABC Appliance, Inc.,*

28

1

*Schultze Agency Services LLC on behalf of Tweeter*
*Opco, LLC and Tweeter Newco, LLC*

2

3

*/s/ Scott N. Wagner*

4

Robert W. Turken

5

Scott N. Wagner
Bilzin Sumberg Baena Price & Axelrod LLP

6

1450 Brickell Ave, Suite 2300
Miami, FL 33131-3456

7

Tel: 305-374-7580
Fax: 305-374-7593

8

Email: rturken@bilzin.com

9

Email: swagner@bilzin.com

10

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP

11

401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301

12

Telephone: (954) 356-0011
Facsimile: (954) 356-0022

13

Email: ssinger@bsfllp.com

14

15

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP

16

5301 Wisconsin Ave. NW, Suite 800
Washington, D.C. 20015

17

Telephone: (202) 237-2727
Facsimile: (202) 237-6131

18

Email: wisaacson@bsfllp.com

19

Philip J. Iovieno

20

Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP

21

30 South Pearl Street, 11th Floor
Albany, NY 12207

22

Telephone: (518) 434-0600
Facsimile: (518) 434-0665

23

Email: piovieno@bsfllp.com
Email: anardacci@bsfllp.com

24

25

*Attorneys for Plaintiffs Tech Data Corporation and*
*Tech Data Product Management, Inc.*

26

27

*/s/ David Martinez*
Roman M. Silberfeld, (SBN 62783)

28

David Martinez, (SBN 193183)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
Email: RMSilberfeld@rkmc.com
Email: DMartinez@rkmc.com

*Attorneys For Plaintiffs Best Buy Co., Inc, Best Buy
Purchasing LLC, Best Buy Enterprise Services, Inc.,
Best Buy Stores, L.P., Bestbuy.com, L.L.C., and
Magnolia Hi-Fi, Inc.*

*/s/ Lee Godfrey*
H. Lee Godfrey
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: lgodfrey@sumangodfrey.com
Email: kmarks@susmangodfrey.com
Email: jross@susmangodfrey.com
Email: jcarter@susmangodfrey.com
Email: dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: pfolse@susmangodfrey.com
Email: rblack@susmangodfrey.com
Email: jconnors@susmangodfrey.com

*Attorneys for Plaintiff Alfred H. Siegel, as Trustee
of the Circuit City Stores, Inc. Liquidating Trust*

*/s/ Jason C. Murray*
Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP

515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213-443-5582
Facsimile: 213-622-2690
Email: jmurray@crowell.com

Jerome A. Murphy (pro hac vice)
Astor H.L. Heaven (pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-624-2500
Facsimile: 202-628-5116
E-mail: jmurphy@crowell.com
aheaven@crowell.com

*Attorneys for Target Corp.*

*/s/ Richard Arnold*
Richard Alan Arnold
William J. Blechman
Kevin J. Murray
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel: 305-373-1000
Fax: 305-372-1861
Email: rarnold@knpa.com
Email: wblechman@knpa.com
Email: kmurray@knpa.com

*Attorneys for Plaintiff Sears, Roebuck and Co. and Kmart Corp.*

*/s/ Guido Saveri*
Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Travis L. Manfredi (281779)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: 415.217.6810
Fax: 415.217.6813

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*

# Exhibit B

1   Kenneth A. Gallo (*pro hac vice*)
    Joseph J. Simons (*pro hac vice*)
2   Craig A. Benson (*pro hac vice*)
    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
3   2001 K Street, NW
    Washington, DC 20006-1047
4   Telephone: (202) 223-7300
    Facsimile: (202) 223-7420
5   Email: kgallo@paulweiss.com
    Email: jsimons@paulweiss.com
6   Email: cbenson@paulweiss.com

7   Stephen E. Taylor (SBN 058452)
    Jonathan A. Patchen (SBN 237346)
8   TAYLOR & COMPANY LAW OFFICES, LLP
    One Ferry Building, Suite 355
9   San Francisco, California 94111
    Telephone: (415) 788-8200
10  Facsimile: (415) 788-8208
    Email: staylor@tcolaw.com
11  Email: jpatchen@tcolaw.com

12  *Attorneys for Sharp Electronics Corporation and*
    *Sharp Electronics Manufacturing Company of America, Inc.*

13  [additional counsel listed on signature page]

14

15              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
16                 **(SAN FRANCISCO DIVISION)**

17  In re: CATHODE RAY TUBE (CRT)     Master File No. 07-cv-5944-SC (N.D.
    ANTITRUST LITIGATION              Cal)
18
                                      MDL No. 1917
19  _____

    This Document Relates to:
20                                    **THIRD AMENDED NOTICE OF**
    ALL ACTIONS                       **DEPOSITION OF THOMSON**
21                                    **CONSUMER ELECTRONICS, INC.**
                                      **PURSUANT TO FED. R. CIV. P.**
22                                    **30(B)(6).**

23

24

25

26

27

28

**TO: THOMSON CONSUMER ELECTRONICS, INC.**

Please take notice that Defendant Thomson Consumer Electronics Inc. ("Thomson Consumer") is requested, and required, pursuant to Fed. R. Civ. P. 30(b)(6), Rule 45, and the Court's Discovery and Case Management Protocol [Dkt. No. 1128] to designate and produce a person or persons to testify on behalf of Thomson Consumer on the matters described and set forth in the Schedule of Rule 30(b)(6) Deposition Topics attached hereto as Exhibit A.

The deposition will take place beginning on January 8-9, 2015 at 9:00 a.m., and will continue thereafter until completed, at the offices of Faegre Baker Daniels LLP, 300 N. Meridian Street, Suite 2700, Indianapolis, IN 46204.  The deposition shall continue from day to day (weekends and holidays excepted) until completed.   The deposition shall be recorded stenographically and by video and audio recording devices.

You are advised that Rule 30(b)(6) requires you to produce one or more witnesses at the stated location and time who are prepared to testify about Thomson Consumer's knowledge, and not just information personally known by them, of the topics described and set forth in the Schedule of Rule 30(b)(6) Deposition Topics attached hereto.  If the designated representative or representatives do not have such knowledge, they are required to acquire it through whatever reasonable investigation and preparation may be necessary.

Dated:  January 5, 2015

Respectfully Submitted,

*/s/ Craig A. Benson*

Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kgallo@paulweiss.com
jsimons@paulweiss.com
cbenson@paulweiss.com

1   Stephen E. Taylor (SBN 058452)
    Jonathan A. Patchen (SBN 237346)
2   **TAYLOR & COMPANY LAW OFFICES, LLP**
    One Ferry Building, Suite 355
3   San Francisco, California 94111
    Telephone:  (415) 788-8200
4   Facsimile:  (415) 788-8208
    Email: staylor@tcolaw.com
5   Email: jpatchen@tcolaw.com

6   *Attorneys for Plaintiffs Sharp Electronics*
    *Corporation and Sharp Electronics Manufacturing*
7   *Company of America, Inc.*

8

9   */s/ David J. Burman*
    David J. Burman (pro hac vice)
10  Cori G. Moore (pro hac vice)
    Eric J. Weiss (pro hac vice)
11  Nicholas H. Hesterberg (pro hac vice)
    Steven D. Merriman (pro hac vice)
12  Perkins Coie LLP
13  1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
14  Telephone: 206.359.8000
    Facsimile: 206.359.9000
15  Email: DBurman@perkinscoie.com
16  Email: CGMoore@perkisncoie.com
    Email: EWeiss@perkinscoie.com
17  Email: NHesterberg@perkinscoie.com
    Email: SMerriman@perkinscoie.com
18
19  Joren Bass, Bar No. 208143
    JBass@perkinscoie.com
20  Perkins Coie LLP
    Four Embarcadero Center, Suite 2400
21  San Francisco, CA 94111-4131
    Telephone: 415.344.7120
22  Facsimile: 415.344.7320

23  *Attorneys for Plaintiff Costco Wholesale*
24  *Corporation*

25  */s/ Philip J. Iovieno*

26  William A. Isaacson
    BOIES, SCHILLER & FLEXNER LLP
27  5301 Wisconsin Ave. NW, Suite 800
28  Washington, D.C. 20015

1   Telephone: (202) 237-2727
    Facsimile: (202) 237-6131
2   Email: wisaacson@bsfllp.com

3   Stuart Singer
4   BOIES, SCHILLER & FLEXNER LLP
    401 East Las Olas Blvd., Suite 1200
5   Fort Lauderdale, FL 33301
    Telephone: (954) 356-0011
6   Facsimile: (954) 356-0022
    Email: ssinger@bsfllp.com
7

8   Philip J. Iovieno
    Anne M. Nardacci
9   BOIES, SCHILLER & FLEXNER LLP
    30 South Pearl Street, 11th Floor
10  Albany, NY 12207
    Telephone: (518) 434-0600
11  Facsimile: (518) 434-0665
    Email: piovieno@bsfllp.com
12  Email: anardacci@bsfllp.com

13
14  *Liaison Counsel for Direct Action Plaintiffs and
    Attorneys for Plaintiffs Electrograph Systems, Inc.,*
    *Electrograph Technologies, Corp., Office Depot,*
15  *Inc., Interbond Corporation of America, P.C.*
16  *Richard & Son Long Island Corporation, MARTA*
    *Cooperative of America, Inc., ABC Appliance, Inc.,*
17  *Schultze Agency Services LLC on behalf of Tweeter*
    *Opco, LLC and Tweeter Newco, LLC*
18

19  */s/ Scott N. Wagner*

20  Robert W. Turken
    Scott N. Wagner
21  Bilzin Sumberg Baena Price & Axelrod LLP
    1450 Brickell Ave, Suite 2300
22  Miami, FL 33131-3456
    Tel: 305-374-7580
23  Fax: 305-374-7593
    Email: rturken@bilzin.com
24  Email: swagner@bilzin.com

25
    Stuart Singer
26  BOIES, SCHILLER & FLEXNER LLP
27  401 East Las Olas Blvd., Suite 1200
    Fort Lauderdale, FL 33301
28  Telephone: (954) 356-0011

1   Facsimile: (954) 356-0022
    Email: ssinger@bsfllp.com
2

3   William A. Isaacson
    BOIES, SCHILLER & FLEXNER LLP
4   5301 Wisconsin Ave. NW, Suite 800
    Washington, D.C. 20015
5   Telephone: (202) 237-2727
    Facsimile: (202) 237-6131
6   Email: wisaacson@bsfllp.com

7   Philip J. Iovieno
8   Anne M. Nardacci
    BOIES, SCHILLER & FLEXNER LLP
9   30 South Pearl Street, 11th Floor
    Albany, NY 12207
10  Telephone: (518) 434-0600
    Facsimile: (518) 434-0665
11  Email: piovieno@bsfllp.com
12  Email: anardacci@bsfllp.com

13  *Attorneys for Plaintiffs Tech Data Corporation and*
    *Tech Data Product Management, Inc.*
14

15  */s/ David Martinez*
    Roman M. Silberfeld, (SBN 62783)
16  David Martinez, (SBN 193183)
    ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
17  2049 Century Park East, Suite 3400
    Los Angeles, CA 90067-3208
18  Telephone: (310) 552-0130
    Facsimile: (310) 229-5800
19  Email: RMSilberfeld@rkmc.com
20  Email: DMartinez@rkmc.com

21  *Attorneys For Plaintiffs Best Buy Co., Inc, Best Buy*
    *Purchasing LLC, Best Buy Enterprise Services, Inc.,*
22  *Best Buy Stores, L.P., Bestbuy.com, L.L.C., and*
    *Magnolia Hi-Fi, Inc.*
23

24  */s/ Lee Godfrey*
    H. Lee Godfrey
25  Kenneth S. Marks
    Jonathan J. Ross
26  Johnny W. Carter
    David M. Peterson
27  SUSMAN GODFREY L.L.P.
28  1000 Louisiana Street, Suite 5100

THIRD AMENDED NOTICE OF DEPOSITION                    -4-          MASTER FILE NO. 07-CV-05944 SC (N.D. CAL.)
OF THOMSON  CONSUMER PURSUANT TO
FED. R. CIV. P. 30(B)(6)

| | |
|---|---|
| 1 | Houston, Texas 77002 |
| | Telephone: (713) 651-9366 |
| 2 | Facsimile: (713) 654-6666 |
| 3 | Email: lgodfrey@sumangodfrey.com |
| | Email: kmarks@susmangodfrey.com |
| 4 | Email: jross@susmangodfrey.com |
| | Email: jcarter@susmangodfrey.com |
| 5 | Email: dpeterson@susmangodfrey.com |
| 6 | |
| | Parker C. Folse III |
| 7 | Rachel S. Black |
| | Jordan Connors |
| 8 | SUSMAN GODFREY L.L.P. |
| | 1201 Third Avenue, Suite 3800 |
| 9 | Seattle, Washington 98101-3000 |
| | Telephone: (206) 516-3880 |
| 10 | Facsimile: (206) 516-3883 |
| 11 | Email: pfolse@susmangodfrey.com |
| | Email: rblack@susmangodfrey.com |
| 12 | Email: jconnors@susmangodfrey.com |
| 13 | *Attorneys for Plaintiff Alfred H. Siegel, as Trustee* |
| 14 | *of the Circuit City Stores, Inc. Liquidating Trust* |
| 15 | */s/ Jason C. Murray* |
| | Jason C. Murray (CA Bar No. 169806) |
| 16 | CROWELL & MORING LLP |
| | 515 South Flower St., 40th Floor |
| 17 | Los Angeles, CA 90071 |
| | Telephone: 213-443-5582 |
| 18 | Facsimile: 213-622-2690 |
| 19 | Email: jmurray@crowell.com |
| 20 | Jerome A. Murphy (pro hac vice) |
| | Astor H.L. Heaven (pro hac vice) |
| 21 | CROWELL & MORING LLP |
| | 1001 Pennsylvania Avenue, N.W. |
| 22 | Washington, D.C. 20004 |
| | Telephone: 202-624-2500 |
| 23 | Facsimile: 202-628-5116 |
| 24 | E-mail: jmurphy@crowell.com |
| | aheaven@crowell.com |
| 25 | |
| 26 | *Attorneys for Target Corp.* |
| 27 | */s/ Richard Arnold* |
| | Richard Alan Arnold |
| 28 | William J. Blechman |

THIRD AMENDED NOTICE OF DEPOSITION
OF THOMSON  CONSUMER PURSUANT TO          -5-          MASTER FILE NO. 07-CV-05944 SC (N.D. CAL.)
FED. R. CIV. P. 30(B)(6)

1    Kevin J. Murray
2    KENNY NACHWALTER, P.A.
     201 S. Biscayne Blvd., Suite 1100
3    Miami, FL 33131
     Tel: 305-373-1000
4    Fax: 305-372-1861
     Email: rarnold@knpa.com
5    Email: wblechman@knpa.com
     Email: kmurray@knpa.com
6
7    *Attorneys for Plaintiff Sears, Roebuck and Co. and
     Kmart Corp.*
8
     */s/ Guido Saveri*
9
10   Guido Saveri (22349)
     R. Alexander Saveri (173102)
11   Geoffrey C. Rushing (126910)
     Travis L. Manfredi (281779)
12   SAVERI & SAVERI, INC.
     706 Sansome Street
13   San Francisco, CA 94111
     Telephone: 415.217.6810
14   Fax: 415.217.6813
15
     *Interim Lead Counsel for the Direct Purchaser*
16   *Plaintiffs*
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

## **DEFINITIONS**

The words and phrases used in these Requests shall have the meanings ascribed to them under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of California. In addition, the following terms shall have the meanings set forth below:

1.      "And" and "or" mean and/or construed conjunctively or disjunctively as necessary to make the request more inclusive rather than less inclusive.

2.      The words "all," "any," and "each" mean "each and every."

3.      The terms "Communication" and "Communications" mean any transfer or exchange of information whether by written, oral, electronic or other means, including but not limited to oral conversations, e-mails, correspondence, instant or text messages, voicemail messages, facsimiles or telegrams.

4.      "CRT" means any (a) color picture tubes ("CPTs"), which are cathode ray tubes used primarily in color televisions; and (b) color display tubes ("CDTs"), which are used primarily in color computer monitors.

5.      "CRT Finished Product" means any electronic devices containing CPTs.

6.      "CRT Products" means any CRT and/or CRT Finished Product.

7.      "Defendant" or "Defendants" means any of the entities currently or formerly named as defendants in any of these litigations and, without limitation, all of their past and present parents, subsidiaries, affiliates, joint ventures, officers, directors, employees, agents, attorneys, or representatives (and the parents', subsidiaries', affiliates', or joint ventures' past and present officers, directors, employees, agents, attorneys, or representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

8.      "Document" or "documents" has the broadest possible meaning pursuant to the Federal Rules of Civil Procedure including, but not limited to, all writings and other tangible things upon which any form of communication is recorded or reproduced, and preliminary drafts

and non-identical copies of the above (whether such copies differ from the original by reason of notation made on such copies or otherwise). Without limiting the generality of the foregoing, the term "document" or "documents" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, trade letters, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meetings or of other communications of any type, including inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, disks, data cells, print-outs of information stored or maintained by electronic data processing or word processing equipment, including email, and all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, but not limited to, electromagnetically sensitive storage media such as floppy disks, hard disks and magnetic tapes, and any preliminary versions, drafts or revisions of any of the foregoing. "Document" or "documents" also includes each and every file folder or other material in which the above items are stored, filed or maintained.

9. "Including" or "includes" means without limitation.

10. The term "manager" means any person who served as an officer of a corporation or otherwise held actual or apparent authority to make decisions on behalf of that corporation.

11. The term "person" or "persons" is defined to mean any natural person, corporation, or partnership, or any business, legal, or government entity, organization, or association.

12. "You," "Your," or "Your Company" mean Thomson Consumer Electronics Inc., its predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which it manages or controls, together with all present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of Thomson Consumer Electronics Inc.

13. The terms "Price," "Prices," and "Pricing" mean consideration, establishment and implementation of prices, pricing, discounts, rebates, price quotations, bids, quotes, price lists, price announcements, terms or conditions of sale, credit terms, freight rates or charges and changes or proposed changes in the above.

14. "Related to" "relating to" "referring to" "regarding" or "with respect to" mean, without limitation, the following concepts: discussing, describing, reflecting, dealing with, and pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

15. "Relevant Period" means March 1, 1992 to the present.

16. "TDA" means Technologies Displays Americas LLC (formerly Thomson Displays Americas LLC).

17. "Technologies Displays" means, collectively, TDA and Technologies Displays Mexicana, S.A. de C.V.

## SCHEDULE OF RULE 30(B)(6) DEPOSITION TOPICS

**A.      Conspiracy Information**

1. The identity of each company that participated with or including You in any meeting, conspiracy, understanding, or agreement relating to the production, pricing, sale, marketing, or distribution of CRT Products, the identity of each individual who participated on behalf of each such company, the dates of each such participation, a description of each communication, meeting, or other act in furtherance of the conspiracy, understanding, or agreement, and any changes in any such individuals' employment status and all the reasons therefore.

2. All communications with any other defendant or co-conspirator named in *In re Cathode Ray Tube (CRT) Antitrust Litigation*, U.S. Dist. Ct., Northern District of California, MDL-1917, related to the production, pricing, sale, marketing, or distribution of CRT Products.

3. Your policies applicable to communications with competitors, including Your policies applicable to communications with competitors regarding production, pricing,

development costs, marketing or distribution of CRT Products, Your policies regarding the use of competitors' CRT Products prices obtained directly from competitors in setting the Prices of CRTs You quoted to customers or prospective customers, and Your policies regarding the use of competitors' CRT Products prices obtained directly from competitors in setting the prices of CRTs You quoted to customers or prospective customers.

4.    All internal communications within Thomson Consumer related to the production, pricing, sale, marketing, or distribution of CRT Products.

5.    All facts that you are aware of with respect to any meeting, conspiracy, understanding, or agreement related to the production, pricing, sale, marketing, or distribution of CRT Products, including the identity of any documents reflecting or relating to the meeting, conspiracy, understanding, or agreement.

6.    All efforts to conceal the existence of any meeting conspiracy, understanding, or agreement related to the production, pricing, sale, marketing, or distribution of CRT Products, including the identity of all persons who actively participated in concealing the meeting, conspiracy, understanding, or agreement, and the extent to which documents were destroyed, false representations were made regarding the reasons for price increases or supply restrictions, and participants met in non-public area to avoid detection.

7.    The identity of all of your current and former employees who provided written or oral information, and the identity of all documents you provided, to any law enforcement or regulatory authority related to any meeting, conspiracy, understanding, or agreement in the production, pricing, marketing, sale, or distribution of CRT Products, including grand jury testimony, affidavits and/or declarations, or communications with lawyers from the United States Department of Justice the Federal Bureau of Investigation, the European Commission, or other foreign governmental or intergovernmental entity or agency.

8.    Any joint ventures, partnerships or other collaborative business relationships, or acquisitions related to CRT Products production, sale, marketing, or distribution, either undertaken or considered by you with respect to: (a) any other defendant or co-conspirator

1  named in *In re Cathode Ray Tube (CRT) Antitrust Litigation*, U.S. Dist. Ct., Northern District of

2  California, MDL-1917, (b) any competitor, or (c) any other person.

3      9.      If you contend that you withdrew from any meeting, conspiracy, understanding,

4  or agreement related to the production, sale, marketing, or distribution of CRT Products, all facts

5  regarding the date and circumstances of your withdrawal from the meeting, conspiracy,

6  understanding, or agreement, how you withdrew from the meeting, conspiracy, understanding, or

7  agreement, the identity of persons who withdrew from the meeting, conspiracy, understanding,

8  or agreement on your behalf, and the identity of any documents that support your contention that

9  you withdrew from the meeting, conspiracy, understanding, or agreement.

10      10.     Your knowledge or beliefs related to the illegality or impropriety of exchanging

11  information or entering into any understanding, agreement, commitment, or contract with any of

12  the defendants or co-conspirators named in *In re Cathode Ray Tube (CRT) Antitrust Litigation*,

13  U.S. Dist. Ct., Northern District of California, MDL-1917, related to the production, pricing,

14  sale, marketing, or distribution of CRT Products.

15      11.     If you contend that any or all of the Plaintiffs knew or should have known of any

16  meeting, conspiracy, understanding, or agreement related to the production, sale, marketing, or

17  distribution of CRT Products prior to November 2007, the circumstances under which Plaintiffs

18  became aware, or should have become aware, of your involvement in the meeting, conspiracy,

19  understanding, or agreement, and the documents that support your contention.

20      **B.      Pricing, Sales, and Marketing Information**

21      12.     The identity and general description of the CRT Products you manufactured,

22  purchased, sold, or distributed.

23      13.     The distribution channels or classes of trade through which you sold CRT Products

24  during the Relevant Period, including your sales to the following categories of purchasers: (a) your

25  affiliates; (b) other defendants in this litigation; and (c) other business entities, including OEMs,

26  retailers, mass merchandisers, e-commerce, and distributors.

27      14.     The organization and structure of each of your business units that produced,

28  marketed, sold, or distributed CRT Products, including the identity of all persons with decision-

1  making or supervisory responsibility for (a) the pricing, sale or marketing of CRT Products,

2  including persons with authority and/or responsibility for setting, maintaining, and adjusting

3  inventory targets; (b) sales, purchases, and/or transfers with competitors; and (c) reporting

4  information to or receiving information from trade associations.

5       15.   The policy and process by which prices, including list prices and actual selling

6  prices, for each CRT Product were set and by whom, including the location of negotiations for

7  sales of CRT Products to Plaintiffs, OEMs, or ODMs; the location of your sales offices in the

8  United States; all factors, formulas, or guidelines you considered in determining prices you

9  charged for each CRT Products; the pricing authority given to employees/affiliates at all levels of

10  the sales and marketing organization; and how pricing decisions were implemented, including

11  any benchmarks (*e.g.*, industry-wide, specific customers, spot market, discounts or rebates) used

12  when establishing and/or negotiating prices.

13       16.   The relationship between the price of CRTs sold by you and the price of CRT

14  Finished Products sold by you or your domestic and/or international affiliates including, but not

15  limited to: (i) the percentage of the total cost of the CRT Finished Products made up by the

16  CRTs; and (ii) the effect that a change in the price of the CRTs had on the price of the CRT

17  Finished Products.

18       17.   The extent to which the prices charged for CRT Products were passed on through

19  the distribution chain by you or your domestic and/or international affiliates.

20       18.   Meetings and other communications between you and any Plaintiff.

21       19.   Negotiations and other communications between you and OEMs or ODMs

22  regarding the sale of CRTs.

23       20.   Your knowledge that CRTs you sold would be incorporated into products

24  imported into the United States, including that CRTs manufactured for sale to Plaintiffs would be

25  shipped into the United States or that CRTs sold to OEMs or ODMs would be sold to Plaintiffs

26  in the United States and Your monitoring of the prices of CRT Products sold in the United

27  States.

28

1      21.     Policies, practices, or requirements relating to Your participating in negotiations,

2  entering into, or signing contracts for, Your subsidiaries.

3      22.     The role of current and former directors, officers, employees, agents, or other

4  representatives with any managerial responsibility for recommending, reviewing, setting or

5  approving prices, bids, quotes, or rebates for Your CRTs or CRT Products, or those of Thomson

6  SA, TDA, Technologies Displays, or Videocon Industries, Ltd., during the Relevant Period for

7  the U.S. market.

8      23.     Business departments or functions shared between You and Your subsidiaries.

9      24.     Your instructions, directions, policies, or procedures to or from domestic and/or

10  international affiliates related to the production, pricing, negotiation, sale, marketing, or

11  distribution of CRT Products.

12      25.     Your use of discounts or rebates in connection with the sale of its CRT Products,

13  including how such discounts or rebates were recorded by You and the identity and location of

14  documents or data recording discounts or rebates.

15      **C.     Transactional and Financial Information**

16      26.     The electronic data processing systems, programs, and outputs that you used to

17  record, store, compute, analyze, or retrieve any information relating to the production, pricing,

18  marketing, sale, distribution, profitability, or inventory of CRT Products, including systems

19  shared with your domestic and/or international affiliate(s) or any other company; a description of

20  the meaning of the fields in any electronic data you produced to Plaintiffs; an explanation of how

21  to read or interpret transactional or financial data you produced to Plaintiffs (including sales

22  information, cost information cost accounting reports, and production information); the authors

23  of the entries into the databases; and/or instructions for entry of data.

24      27.     The nature of the records of your sale of CRT Products (including, but not limited

25  to, sales to domestic and/or international affiliated entities and other defendants in this litigation)

26  during the Relevant Period, including data which shows the types of CRT Products sold, the

27  volume of sales for each type of CRT Products and the prices at which your CRT Products were

28  sold.

28.     The nature of the records of your purchases of CRT Products (including, but not limited to, purchases from domestic and/or international affiliated entities and other defendants in this litigation) during the Relevant Period, including data that relates to the types of CRT Products purchased, the volume of purchase for each type of CRT Products, the prices at which you purchased those CRT Products and the sellers from whom you purchased each type of CRT Products.

**D.      Corporate Relationships**

29.     The relationship among Thomson Consumer Electronics Inc., Technologies Displays Americas LLC (formerly Thomson Displays Americas LLC), Technologies Displays Mexicana, S.A. de C.V, and Thomson SA during the Relevant Period, including the ownership, decision-making, and organizational structure of these entities and any departments or divisions within these entities responsible for or involved in pricing, selling, marketing, or distributing CRT Products.

30.     The officers and directors of Thomson Consumer Electronics Inc during the Relevant Period.

**E.      Manufacturing and Production**

31.     A description of Your CRT Product production facilities, including: (a) the location of each facility; (b) the start and end date of production operations at each facility; (c) the products produced at each facility; (d) the number of manufacturing lines at each facility and products produced by line; and (e) the capacity utilization rates for each facility and manufacturing line within each facility.

32.     Your policies and practices for setting the production levels for CRT Products, including policies and practices for increasing, decreasing, and/or shutting down production (for any amount of time greater than 24 hours), and all formulas and factors considered in making such production decisions as well as the names of the individuals with authority to implement or deviate from these policies and practices for setting production levels for CRT Products.

33.     The method(s) used by Your Company to track production capacity for each CRT Product manufacturing facility and each manufacturing line, the method(s) used by Your

1   Company to track inventory levels, link returns and sales, and monitor product margins of CRT

2   Products You purchased, sold or distributed, the method(s) by which Your Company tracked

3   shutdowns at any of Your CRT Products manufacturing facilities.

4         34.    The typical amount of time and production costs it takes to produce different

5   types of CRT tubes and the typical amount of time after manufacturing of a CRT tube was

6   initiated until manufacturing reached the planned capacity at your manufacturing facilities, and

7   the typical capital costs for building and improving Your CRT manufacturing facilities.

8         35.    The production costs and typical amount of time needed to switch Your

9   production from one type of CRT to a different type of CRT.

10         36.    Whether: (a) particular manufacturing facilities specialized in a particular CRT

11   specification or whether multiple CRT specifications are produced at a single plant, and (b)

12   CDTs and CPTs are, or were, produced at the same manufacturing facilities.

13         37.    The extent to which a CRT made by Your Company can be used in a CRT

14   Finished Product made by another CRT Product manufacturer, including the defendants in this

15   litigation.

16         38.    The existence and/or function of any department at Your company with

17   responsibility for accounting software and/or electronically stored information.

18         39.    The use and existence of third-party data sources and other sources of market

19   share data/analyses for CRT Products.

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of the foregoing document was served via email upon the parties and counsel of record on January 5, 2015.

Respectfully Submitted,

*/s/ Craig A. Benson*

Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kgallo@paulweiss.com
jsimons@paulweiss.com
cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
**TAYLOR & COMPANY LAW OFFICES, LLP**
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone:  (415) 788-8200
Facsimile:  (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc.*

*/s/ David J. Burman*
David J. Burman (pro hac vice)
Cori G. Moore (pro hac vice)
Eric J. Weiss (pro hac vice)
Nicholas H. Hesterberg (pro hac vice)
Steven D. Merriman (pro hac vice)
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: DBurman@perkinscoie.com

Email: CGMoore@perkisncoie.com
Email: EWeiss@perkinscoie.com
Email: NHesterberg@perkinscoie.com
Email: SMerriman@perkinscoie.com

Joren Bass, Bar No. 208143
JBass@perkinscoie.com
Perkins Coie LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131
Telephone: 415.344.7120
Facsimile: 415.344.7320

*Attorneys for Plaintiff Costco Wholesale
Corporation*

*/s/ Philip J. Iovieno*

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
Email: wisaacson@bsfllp.com

Stuart Singer
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: ssinger@bsfllp.com

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665
Email: piovieno@bsfllp.com
Email: anardacci@bsfllp.com

*Liaison Counsel for Direct Action Plaintiffs and
Attorneys for Plaintiffs Electrograph Systems, Inc.,
Electrograph Technologies, Corp., Office Depot,*

1

*Inc., Interbond Corporation of America, P.C.*
*Richard & Son Long Island Corporation, MARTA*

2

*Cooperative of America, Inc., ABC Appliance, Inc.,*
*Schultze Agency Services LLC on behalf of Tweeter*

3

*Opco, LLC and Tweeter Newco, LLC*

4

*/s/ Scott N. Wagner*

5

6

Robert W. Turken
Scott N. Wagner

7

Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Ave, Suite 2300

8

Miami, FL 33131-3456
Tel: 305-374-7580

9

Fax: 305-374-7593
Email: rturken@bilzin.com

10

Email: swagner@bilzin.com

11

Stuart Singer

12

BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Blvd., Suite 1200

13

Fort Lauderdale, FL 33301
Telephone: (954) 356-0011

14

Facsimile: (954) 356-0022
Email: ssinger@bsfllp.com

15

16

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP

17

5301 Wisconsin Ave. NW, Suite 800
Washington, D.C. 20015

18

Telephone: (202) 237-2727
Facsimile: (202) 237-6131

19

Email: wisaacson@bsfllp.com

20

Philip J. Iovieno

21

Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP

22

30 South Pearl Street, 11th Floor
Albany, NY 12207

23

Telephone: (518) 434-0600
Facsimile: (518) 434-0665

24

Email: piovieno@bsfllp.com
Email: anardacci@bsfllp.com

25

26

*Attorneys for Plaintiffs Tech Data Corporation and*
*Tech Data Product Management, Inc.*

27

28

1

*/s/ David Martinez*
Roman M. Silberfeld, (SBN 62783)

2
David Martinez, (SBN 193183)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

3
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208

4
Telephone: (310) 552-0130
Facsimile: (310) 229-5800

5
Email: RMSilberfeld@rkmc.com

6
Email: DMartinez@rkmc.com

7
*Attorneys For Plaintiffs Best Buy Co., Inc, Best Buy*

8
*Purchasing LLC, Best Buy Enterprise Services, Inc.,*
*Best Buy Stores, L.P., Bestbuy.com, L.L.C., and*

9
*Magnolia Hi-Fi, Inc.*

10
*/s/ Lee Godfrey*
H. Lee Godfrey

11
Kenneth S. Marks

12
Jonathan J. Ross
Johnny W. Carter

13
David M. Peterson
SUSMAN GODFREY L.L.P.

14
1000 Louisiana Street, Suite 5100
Houston, Texas 77002

15
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

16
Email: lgodfrey@sumangodfrey.com

17
Email: kmarks@susmangodfrey.com
Email: jross@susmangodfrey.com

18
Email: jcarter@susmangodfrey.com
Email: dpeterson@susmangodfrey.com

19

20
Parker C. Folse III
Rachel S. Black

21
Jordan Connors
SUSMAN GODFREY L.L.P.

22
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000

23
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

24
Email: pfolse@susmangodfrey.com

25
Email: rblack@susmangodfrey.com
Email: jconnors@susmangodfrey.com

26

27
*Attorneys for Plaintiff Alfred H. Siegel, as Trustee*
*of the Circuit City Stores, Inc. Liquidating Trust*

28

THIRD AMENDED NOTICE OF DEPOSITION
OF THOMSON CONSUMER PURSUANT TO
FED. R. CIV. P. 30(B)(6)

MASTER FILE NO. 07-CV-05944 SC (N.D. CAL.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Jason C. Murray*
Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213-443-5582
Facsimile: 213-622-2690
Email: jmurray@crowell.com

Jerome A. Murphy (pro hac vice)
Astor H.L. Heaven (pro hac vice)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-624-2500
Facsimile: 202-628-5116
E-mail: jmurphy@crowell.com
aheaven@crowell.com

*Attorneys for Target Corp.*

*/s/ Richard Arnold*
Richard Alan Arnold
William J. Blechman
Kevin J. Murray
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel: 305-373-1000
Fax: 305-372-1861
Email: rarnold@knpa.com
Email: wblechman@knpa.com
Email: kmurray@knpa.com

*Attorneys for Plaintiff Sears, Roebuck and Co. and Kmart Corp.*

*/s/ Guido Saveri*

Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Travis L. Manfredi (281779)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111

1

Telephone: 415.217.6810
Fax: 415.217.6813

2

3

*Interim Lead Counsel for the Direct Purchaser
Plaintiffs*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit C

R O U G H   D R A F T                                    4

18   Q   Who is your employer, Ms. Ehret?

19   A   I am employed by Technicolor USA, Inc.

20   Q   And what is your title at Technicolor USA, Inc.?

21   A   I am its corporate secretary as well as general

22       counsel litigation and compliance.

ROUGH DRAFT                                          10

5   Q   Did you speak with Christian Lissorgues in

6       preparation for this deposition?

7           MS. OSBORN:  Objection.  Attorney-client

8       privilege, work product, I direct you only to

9       answer if you can answer without disclosing

10       privileged information.

11   A   I cannot tell you whether I spoke with Christian

12       Lissorgues or not in preparation for this.

13   Q   Rough taking the position that whether you spoke

14       with Christian Lissorgues is privileged

15       information?

16           MS. OSBORN:  Let me make a clarification

17       for the record here.  You know from our prior

18       conversations about the Hague convention that we

19       have not made contact with Mr. Lissorgues.  We

20       have not made contact with him.  Mr. Lissorgues

21       may have been interviewed in relation to EC

22       investigation quite sometime ago, that did not

23       involve Ms. Ehret and therefore she has nothing

24       to testify about that.

25   Q   Okay.  So the answer is you have not spoken with

R O U G H   D R A F T                                        11

1      Christian Lissorgues in preparation for this

2      deposition, correct?

3          MS. OSBORN:  You can answer that question.

4   A   No, I have not.

5   Q   Have you spoken with Agnes Martin in preparation

6      for this deposition?

7          MS. OSBORN:  Same objection,

8      attorney-client privilege, work product, also

9      involves potential privilege related to the EC

10      proceedings.  You can answer the question if you

11      can answer it without disclosing privileged

12      information.

13   A   I can answer that I did not speak with her in

14      preparation for today he deposition.

15   Q   Have you spoken with her since this case was

16      filed in 2013 about this litigation?

17          MS. OSBORN:  Objection, attorney-client

18      privilege, work product.  The identity of any

19      witnesses that her attorneys may have talked to

20      or that she may have talked to as in-house

21      counsel is privileged and confidential

22      information and not to be disclosed.

23          MR. BENSON:  Respectfully Ms. Osborn you

24      put up your general counsel as a 30(b)(6)

25      witness.  All information that she has is

R O U G H  D R A F T                              12

1       information that is reasonably contained within

2       the company and I'm entitled to know who she

3       spoke to.  So did you speak with Ms. Martin

4       since this case was filed in August, in April

5       2013 about this litigation.

6           MS. OSBORN:  I direct you not to answer,

7       based on the privilege.  And Mr. Benson, you

8       know that putting her up was clear, that putting

9       her up as corporate designee to discuss

10       information, non-privileged information recently

11       available to the corporation, does not waive the

12       privileges that the corporation otherwise has.

13          MR. BENSON:  Absolutely.  And if she spoke

14      with Ms. Martin in connection with this case,

15      and gathered facts and information relevant to

16      this case relevant to my topics I'm entitled to

17    know about it because she is your 30(b)(6)

18    witness.

19        So I'll ask the question one more time and

20    if your counsel is going to direct you not to

21    answer we'll take it up with the court later.

22        MS. OSBORN:  I direct you not to answer.

23        THE WITNESS:  I will follow my counsel's

24    instruction.

25  Q  Did you speak with Didier Trutt in connection

ROUGH DRAFT                                13

1    with your preparation for this deposition?

2        MS. OSBORN:  Same instruction I direct you

3    not to answer.

4        THE WITNESS:  I did follow my counsel.

5  Q  Did you speak with Emeric Schuramel in

6    connection with your preparation for this

7    deposition?

8        MS. OSBORN:  Same objection sieve instruct

9    you not to answer.

10        THE WITNESS:  I will follow my counsel's

11    instruction.

12  Q  Did you speak with Gilles Taldu?

13      MS. OSBORN:  Same objection, instruct you

14    not to answer.

15      THE WITNESS:  I will follow counsel's

16    instruction.

17  Q  Jean Drunol?

18      MS. OSBORN:  Same objection.

19  Q  Did you speak with Xavier Bonjour in preparation

20    for this deposition?

21      MS. OSBORN:  Same objection.  I direct you

22    not to answer.

23      THE WITNESS:  I will follow my counsel's

24    instruction.

25  Q  Did you speak with Tom Carson in preparation for

R O U G H   D R A F T                                   14


1    this deposition?

2      MS. OSBORN:  Object based on

3    attorney-client privilege and work product but

4    you can answer that question to the extent you

5    can answer it without revealing privileged and

6    confidential information.

7  A  I have spoken with Tom Carson and attended his

8      deposition held a few months ago.

9   Q   Did you speak with Jack Brunk in preparation for

10      this deposition?

11          MS. OSBORN:  Same objection.  You can

12      answer.

13   A   I have spoken with Jack Brunk and attended his

14      deposition.

15   Q   Have you spoken with Mr. Herschler in

16      preparation for this deposition?

17          MS. OSBORN:  Same objection.  You can

18      answer.

19   A   I have not spoken with Mr. Herschler.  I have

20      reviewed his deposition transcript.  I did not

21      attend his deposition.

22   Q   Have you spoken with James Hanrahan in

23      preparation for this deposition?

24          MS. OSBORN:  Same objection.

25   A   I have spoken with Mr. Hanrahan and I did attend

                    R O U G H  D R A F T                          15


1      his deposition.

2   Q   Have you spoken with Alex Hepburn in preparation

3      for this deposition?

4    MS. OSBORN:  Same objection.  You can

5    answer.

6  A  I did speak to Mr. Hepburn and I did attend his

7    deposition.

8  Q  Have you spoken with J. G. McCauley in

9    preparation for this deposition?

10    MS. OSBORN:  Same objection.  Mr. McCauley

11    is dead.

12    MR. BENSON:  That answers that question.

13  Q  Are there other names aside from those that I

14    read of people that you have spoken to in

15    preparation for this deposition that you recall?

16    MS. OSBORN:  Objection.  Attorney-client

17    privileged, work product.  You can answer to the

18    extent that what you would reveal is not

19    privileged.

20  A  Yes.

21  Q  Who are those people?

22  A  Of the names I can recall, Jackie Taylor-Boggs,

23    David Blackburn, Julie Wright, Steve Glick, Rick

24    Hoosier, Sybille Bose Tarsia.

25  Q  Can you spell that?

R O U G H   D R A F T                                      16

1  A   S-Y-B-I-L-L-E, her last name is B-O-S-E hyphen

2      T-A-R-S-I-A.  There are some symbols that go

3      above that.

4  Q   Accents.

5  A   I won't get those right.  Lori Tompkins, Chris

6      Davis, James Krieger, Jeff Snyder, Jennifer

7      Grandider G-R-A-N-D-I-D-E-R, Amanda Decker,

8      Bella Jacquet, David -- excuse me, I already

9      said that -- David Shambeaud, Fabienne Brunne.

10      Give me a moment to recall.

11  Q   Okay.

12  A   Those are the names I can recall as I sit here

13      today.

R O U G H  D R A F T                                    121

6  Q   Aside from the documents you reviewed in

7      connection with the multiple interviews that you

8      conducted in preparation for your deposition

9      today, did you come to learn any information to

10     suggest that Thomson SA participated in meetings

11     where there was discussion of price fixing for

12     markets other than Turkey?

13         MS. OSBORN:  Object to the extent answering

14     the question requires you to reveal any

15     attorney-client privilege or work product.  You

16     can otherwise answer the question.

17  A   Nothing else I have done in preparation for

18     today without giving you any confidential

19     information, without waiving any privilege

20     suggests that Thomson SA breached any agreement

21     or was involved in any pricing discussions with

22     respect to customers outside of Turkey.

R O U G H   D R A F T                                              131

23  Q   Is it your testimony Thomson was sharing false

24       information with its competitors or do you not

25       know one way or the other?


                    R O U G H   D R A F T                                   132


1        MS. OSBORN:  Same objections as to

2        privilege and work product.

3   A   In preparation for my deposition today I found

4        no evidence to suggest the information that was

5        being, without revealing any confidential and

6        not privileged information, there's nothing that

7        suggested that the information Thomson SA was

8        sharing was accurate.

ROUGH DRAFT                                         133

5  Q  So is Thomson SA not going to take the position

6     at trial that the information that it shared

7     with competitors was false?

8        MS. OSBORN:  Objection.  Calls for a legal

9     conclusion.  She's not here to testify as to

10    what Thomson SA will legally decide to do at

11    trial.

12       MR. BENSON:  I'm here to find out all the

13    information that Thomson SA has.  And if Thomson

14    SA has information that the information it

15    shared was false I'm entitled to know it today.

16       MS. OSBORN:  You're not entitled to know it

17    if we have information that is privileged and

18    confidential and to which you are not entitled

19    to access.

20 Q  Is there any information that Thomson SA

21    transmitted to its competitors that was true?

22       MS. OSBORN:  Same objections as to

23    privileged and work product.  You can answer

24    otherwise.

25 A  I don't think I can answer that question without

R O U G H   D R A F T                                        134

1    disclosing confidential information.  And I

2    don't have sufficient information even without

3    confidential and privileged information to parse

4    through what information may have been accurate

5    and what information may have been inaccurate.

R O U G H   D R A F T                                    143

25  Q   Okay.  Paragraph 311 says although there is

R O U G H   D R A F T                                    144

1     relatively little written evidence on Thomson's

2     participation in meetings in Asia, it

3     participated in such meetings once or twice a

4     year where, among others, investment plans and

5     price issues were discussed.

6  A   I see that statement.

7  Q   Is that a true statement?

8      MS. OSBORN:  Object to form.  Object to the

9     extent it calls for attorney-client

10     communications or work product.  Lacks

11     foundation.  You can otherwise answer.

12  A   In my preparation for today, I did not see any

13     document that confirms that Thomson SA

14     participated in any top meetings in Asia.

15      MR. PETERSON:  Objection nonresponsive.

16  Q   You also testified you interviewed 20 people, 30

17     people you don't know how many people is there

18     any information that Thomson SA has that

19     suggests or that bears on whether that statement

20     is true or false that you know of here today?

21        MS. OSBORN:  Objection to the extent that

22     it requires you to reveal attorney-client

23     communications or work product.  You can

24     otherwise answer.

25        MR. FOSTER:  Lacks foundation.

R O U G H  D R A F T                               145

1   A   I cannot answer that question without revealing

2       privilege.

3   Q   So you're withholding information that would

4       bear on responding to that question on the basis

5       of attorney-client privilege?

6   A   I am.

R O U G H   D R A F T                                151

10   Q   And again, I don't want to just restrict this to

11        documents.  Do you have any other information

12        that you have come upon that informs the

13        question of whether Thomson SA entered

14        agreements to fix prices for is its Turkish

15        customers?  Start with them.

16             MS. OSBORN:  Object to the question to the

17        extent it calls for attorney-client

18        communication or work product information.  Also

19        object to the extent it calls for EC

20        communications.  But you can otherwise answer.

21   A   I cannot answer that question without revealing

22        privileged and confidential communications.

R O U G H   D R A F T                                    192

19  Q   Do you recall engaging in any investigation

20      about whether a Thomson manager called for price

21      cooperation and coordinated action at a meeting

22      with other confidentiality agreement competitors

23      apart from having seen that document?

24          MS. OSBORN:  Object to form.  Object as to

25      confidentiality and privilege, as previously

R O U G H   D R A F T                                    193

1       stated, lack of foundation, asked and answered.

2   A   I don't think I can answer that question without

3       divulging privileged information.

# Exhibit D

95

19  Q   Please.

20  A   I did sit in on certain limited interviews of

21     former Thomson SA employees, and at the time

22     that those interviews were conducted, I attended

23     those meetings in my capacity as in-house

24     counsel for Thomson Consumer, and it was not in

25     preparation for this two days of deposition on

96

1     behalf of Thomson SA, or Thomson Consumer.  I

2     mean, I'm not trying to make a legal -- I'm just

3     saying that I'm in-house employed by Thomson

4     Consumer.

5  Q   Thank you for the clarification.

6        Just to make sure the record's extremely

7     clear, regardless of what capacity you were

8     sitting in, whether in-house counsel or versus

9     in preparation for the deposition, you have not

10     intended to reveal any facts that were learned

11     in those meetings during your two-day

12     deposition; correct?

13        MS. OSBORN:  Object to form.

14  A   In those limited, just so that we're on the same

15    page, in those limited interviews of former

16    Thomson SA employees, I am not disclosing any

17    facts unique -- I should say uniquely learned

18    from -- that I wouldn't have otherwise had from

19    any other source other than my attendance at an

20    interview conducted by Thomson Consumer and

21    Thomson SA's outside counsel, Faegre Baker

22    Daniels.  If I otherwise knew of the information

23    and it was reasonably available to Thomson SA or

24    Thomson Consumer, from a means or a source other

25    than those interviews, those particular limited

97

1    interviews, I would have testified to that

2    yesterday and today on before and after of

3    whichever entity it was relevant to.

# Exhibit E

96

6       Just to make sure the record's extremely

7       clear, regardless of what capacity you were

8       sitting in, whether in-house counsel or versus

9       in preparation for the deposition, you have not

10      intended to reveal any facts that were learned

11      in those meetings during your two-day

12      deposition; correct?

13          MS. OSBORN:  Object to form.

14  A   In those limited, just so that we're on the same

15      page, in those limited interviews of former

16      Thomson SA employees, I am not disclosing any

17      facts unique -- I should say uniquely learned

18      from -- that I wouldn't have otherwise had from

19      any other source other than my attendance at an

20      interview conducted by Thomson Consumer and

21      Thomson SA's outside counsel, Faegre Baker

22      Daniels.  If I otherwise knew of the information

23      and it was reasonably available to Thomson SA or

24      Thomson Consumer, from a means or a source other

25      than those interviews, those particular limited

97

1   interviews, I would have testified to that

2   yesterday and today on before and after of

3   whichever entity it was relevant to.

159

7  Q   And you did participate in a discussion with

8      Ms. Martin separately that wasn't part of what

9      you're calling your preparation for this

10     deposition; is that correct?

11        MS. OSBORN:  Object to form.  Also object

12     to the extent it's privileged work product, and

13     the identities of the individuals we interviewed

14     are privileged.

15  A   I did, as I testified earlier, attend a

16     interview of Ms. Martin conducted by Thomson

17     Consumer and Thomson SA's outside lawyers,

18     Faegre Baker Daniels.