Pages 1 – 30

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SAMUEL CONTI, JUDGE

IN RE CATHODE RAY TUBE            )
ANTITRUST LITIGATION              )     MDL NO. 1917
                                        CASE NO. C 07–5944 SC

                                  San Francisco, California
                                  Friday
                                  August 7, 2015
                                  10:07 a.m.


                  TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiffs:          SAVERI & SAVERI, INC.
                         705 Sansome Street
                         San Francisco, California  94111
                   BY:   GUIDO SAVERI, ESQ.
                         R. ALEXANDER SAVERI, ESQ.

                         TRUMP ALIOTO TRUMP & PRESCOTT LLP
                         2280 Union Street
                         San Francisco, California  94123
                   BY:   MARIO N. ALIOTO, ESQ.

                         ROBINS KAPLAN MILLER & CERISI LLP.
                         2049 Century Park East
                         Suite 3400
                         Los Angeles, California  90067–3211
                   BY:   ROMAN M. SILBERFELD, ESQ.



Reported by:             BELLE BALL, CSR #8785, CRR, RDR
                         Official Reporter, U.S. District Court


(Appearances continued, next page)

```
APPEARANCES, CONTINUED:


For Plaintiffs:
                        BOIES SCHILLER & FLEXNER LLP
                        30 South Pearl Street
                        Albany, New York  12207
                  BY:   PHILIP J. IOVIENO, ESQ.

                        CROWELL & MORING, LLP
                        1001 Pennsylvania Avenue, N.W.
                        Washington, D.C.  20004-2595
                  BY:   JEROME A. MURPHY, ESQ.

                        KENNY NACHWALTER
                        1100 Miami Center
                        201 South Biscayne Boulevard
                        Miami, Florida  33131-4327
                  BY:   WILLIAM J. BLECHMAN, ESQ.

                        PAUL, WEISS, RIFKIND,
                          WHARTON & GARRISON LLP
                        2001 K Street, N.W.
                        Washington, D.C.  20006-1047
                  BY:   KENNETH A. GALLO, ESQ.

                        SUSMAN GODFREY LLP
                        1000 Louisiana Street
                        Suite 5100
                        Houston, Texas  77002
                  BY:   KENNETH S. MARKS, ESQ.

                        KERR & WAGSTAFFE LLP
                        100 Spear Street
                        Suite 1800
                        San Francisco, California  94105
                  BY:   JAMES M. WAGSTAFFE, ESQ.

                        PERKINS COIE LLP
                        1201 Third Avenue
                        Suite 4900
                        Seattle, Washington  98101-3099
                  BY:   CORI GORDON MOORE, ESQ.


 (Appearances continued, next page)
```

**APPEARANCES, CONTINUED:**

**For Defendants Samsung Entities:**
> SHEPPARD MULLIN RICHTER & HAMPTON, LLP
> Four Embarcadero Center
> 17th Floor
> San Francisco, California  94111
> BY:  JAMES L. MCGINNIS, ESQ.

**For Defendant Technologies Displays Americas, LLC:**
> SQUIRE PATTON BOGGS (US) LLP
> 1 East Washington Street
> Suite 2700
> Phoenix, Arizona  85004
> BY:  DONALD A. WALL, ESQ.
> and
> CURTIS, PALLET-PREVOST, COLT MOSLE LLP
> 1717 Pennsylvania Avenue, N.W.
> Washington, D.C.  20006
> BY:  JEFFREY I. ZUCKERMAN, ESQ.

**For Defendant Chunghwa Picture Tubes, Ltd.:**
> GIBSON, DUNN & CRUTCHER, LLP
> 555 Mission Street
> San Francisco, California  94105-2933
> BY:  JOEL S. SANDERS, ESQ.

**For Defendants Koninklijke Philips N.V. and Philips Electronics North America Corporation:**
> BAKER BOTTS, LLP
> The Warner
> 1299 Pennsylvania Avenue, N.W.
> Washington, D.C.  20004-2400
> BY:  ERIK T. KOONS, ESQ.

**For Hitachi Defendants:**
> KIRKLAND & ELLIS LLP
> 555 California Street
> San Francisco, California  94104
> BY:  ELIOT A. ADELSON, ESQ.

**For Multiple Defendants:**
> WHITE & CASE, LLP
> 701 Thirteenth Street, N.W.
> Washington, D.C.  20005-3807
> BY:  CHRISTOPHER M. CURRAN, ESQ.
> LUCIUS B. (ALBIE) LAU, ESQ.

(Appearances continued, next page)

```
APPEARANCES, CONTINUED:



For LG Defendants:          MUNGER, TOLLES & OLSON, LLP
                           355 South Grand Avenue
                           35th Floor
                           Los Angeles, California  90071-1560
                     BY:  BRAD BRIAN, ESQ.
                           SUSAN E. NASH, ESQ.
                           E. MARTIN ESTRADA, ESQ.

For Interested Party Mitsubishi:
                           JENNER & BLOCK LLC
                           353 North Clark Street
                           Chicago, Illinois  60654-3456
                     BY:  TERRENCE J. TRUAX, ESQ.
                           CHARLES SKLARSKY, ESQ.
                           GABRIEL FUENTES, ESQ.

For the Thomson Defendants:
                           FAEGRE BAKER DANIELS LLP
                           300 North Meridian Street
                           Suite 2700
                           Indianapolis, Indiana  46204
                     BY:  KATHY L. OSBORN, ESQ.

For Defendants Panasonic and MT Picture Display:
                           WINSTON & STRAWN, LLP
                           200 Park Avenue
                           New York City, New York  10166
                     BY:  JEFFREY L. KESSLER, ESQ.
                           and
                           WEIL, GOTSHAL & MANGES, LLP
                           767 Fifth Avenue
                           New York, NY  10153-0119
                     BY:  DAVID L. YOHAI, ESQ.
```

(Appearances continued, next page)

**APPEARANCES, CONTINUED:**

**Also Present:**          AARON M. SHEANIN, ESQ.
                          GEOFFREY C. RUSHING, ESQ.
                          DAVID MARTINEZ, ESQ.
                          DEBRA D. BERNSTEIN, ESQ.
                          LAUREN CAPURRO, ESQ.
                          MICHAEL P. KENNY, ESQ.
                          NATHAN P. EIMER, ESQ.
                          RYAN M. HURLEY, ESQ.
                          RACHEL BUSS, ESQ.
                          LAURA K. LIN, ESQ.
                          BENJAMIN WALDIN, ESQ.
                          DANA E. FOSTER, ESQ.
                          MICHAEL W. SCARBOROUGH, ESQ.
                          MIRIAM KIM, ESQ.
                          EVA W. COLE, ESQ.
                          KEVIN B. GOLDSTEIN, ESQ.
                          MARTIN C. GEAGAN, ESQ.

```
 1   FRIDAY, AUGUST 7, 2015                        10:07 A.M.

 2                    P R O C E E D I N G S

 3        THE CLERK:  Calling Case 07-5944, MDL No 1917, In Re:

 4   Cathode Ray Tube Antitrust Litigation.

 5        Counsel, I have been asked that you come forward and state

 6   your appearances.  I'm going to have Defendants line up on this

 7   side and Plaintiffs on this side (Indicating).

 8        MR. CURRAN:  For Defendant Toshiba, I'm Christopher

 9   Curran.

10        MR. R. A. SAVERI:  Good morning, Your Honor.  May it

11   please the Court, Rick Saveri on behalf of the Direct Purchaser

12   Class actions.

13        MR. BRIAN:  Good morning, Your Honor.  For Defendant

14   LG, Brad Brian of Munger Tolles & Olson.

15        MR. SILBERFELD:  Good morning, Your Honor.  Roman

16   Silberfeld for Best Buy.

17        THE COURT:  Good morning.

18        MR. KESSLER:  Good morning, Your Honor.  Jeffrey

19   Kessler of Winston & Strawn for the Panasonic Defendants.

20        MR. G. SAVERI:  Good morning, Your Honor.  Guido

21   Saveri for the Direct Purchaser Class.

22        MR. ESTRADA:  Good morning, Your Honor.  Martin

23   Estrada on behalf of LG Electronics.

24        THE COURT:  Good morning.

25        MR. IOVIENO:  Good morning, Your Honor.  Phil Iovieno
```

1   on behalf of nine Direct Action Plaintiffs.

2          **MS. OSBORN:**  Good morning, Your Honor.  Kathy Osborn

3   on behalf of the Thomson Defendants, also known as Technicolor.

4          **MR. BLECHMAN:**  Your Honor, good morning.  William

5   Blechman of Kenny Nachwalter, on behalf of Sears and K-Mart.

6          **THE COURT:**  Good morning.

7          **MR. YOHAI:**  Good morning, Your Honor.  David Yohai,

8   also on behalf of the Panasonic Defendants.

9          **MR. MURPHY:**  Good morning, Your Honor.  Jerome Murphy

10  on behalf of Plaintiff Viewsonic Corporation.

11         **MR. SANDERS:**  Good morning, Your Honor.  Joel Sanders

12  of Gibson, Dunn & Crutcher, on behalf of Defendant Chunghwa

13  Picture Tubes.

14         **THE COURT:**  Good morning.

15         **MR. GALLO:**  Good morning, Your Honor.  Ken Gallo from

16  Paul Weiss on behalf of the Sharp Plaintiffs.

17         **THE COURT:**  Good morning.

18         **MR. TRUAX:**  Good morning, Your Honor.  It's Terry

19  Truax from Jenner & Block.  I'm also joined by my partners

20  Chuck Sklarsky and Gabe Fuentes, Your Honor.

21      We appear on behalf of the Mitsubishi Electric Defendants.

22         **MR. MOORE:**  Good morning, Your Honor.  Cori Gordon

23  Moore for Plaintiff Costco.

24         **THE COURT:**  Good morning.

25         **MR. McGINNIS:**  James McGinnis of Sheppard Mullin for

1  Samsung SDI, Your Honor.  Good morning.

2        **MR. MARKS:**  Kenneth Marks with Susman Godfrey on

3  behalf of Plaintiff Circuit City Liquidating Trust.

4        **MR. KOONS:**  Good morning, Your Honor.  Erik Koons

5  form Baker Botts on behalf of the Philips Defendants.

6        **THE COURT:**  Good morning.

7        **MR. ALIOTO:**  Mario Alioto on behalf of the Indirect

8  Purchaser Class.

9        **MR. ADELSON:**  Good morning.  Eliot Adelson on behalf

10 of Defendant Hitachi.

11       **MR. WAGSTAFFE:**  Your Honor, James Wagstaffe on behalf

12 of Dell, and my colleagues.

13       **MS. NASH:**  Good morning, Your Honor.  Susan Nash from

14 Munger, Tolles & Olson on behalf of LG Electronics.

15       **THE COURT:**  Good morning.

16       **MR. WALL:**  Good morning, Your Honor.  Donald Wall

17 from Squire Patton Boggs, on behalf of TDA, Technologies

18 Displays Americas.

19       **MR. ZUCKERMAN:**  Please the Court, Jeffrey Zuckerman,

20 Curtis, Mallet-Prevost, on behalf of Defendant Technologies

21 Displays Americas.

22       **THE COURT:**  All right.  Thank you.

23    You know, I'm looking at this calendar.  This case is

24 eight years old.  And, the number of parties that are involved

25 in it.  And I have presently before me 24 to 29 motions for

1  summary judgment, and I've got 40 motions in limine, and I've

2  got four *Daubert* motions.

3      And, I sit back here, and I remember a case I had many,

4  many years ago.  It was called *Atkinson versus the Raiders*.

5  And I'm representing -- representing the Steelers -- it was

6  actually the Steelers' case.

7      And, there was one attorney who's long past now, by the

8  name of Jim McGuinniss.  Some of the local attorneys remember

9  Jim McGuinness.  A very good lawyer.

10      And on the opposite side representing the Oakland Raiders

11  was a whole group of attorneys.  A whole group.  Quite a

12  number.  And they all got up and mentioned their names and

13  their appearances.  And, Jim McGinnis gets up and he says,

14  "Your Honor, there's just me alone, against all these wonderful

15  attorneys on the other side."

16      And, that brought back a memory to me when I'm thinking

17  about this case and number of motions that are involved.

18  There's just me alone and my law clerk, handling all these

19  motions.

20      (Laughter)

21          **THE COURT:**  And I think, you know, they have to be

22  expedited, and they have to be done.  So what I'm going to do

23  is I'm going to appoint a special master to handle some of the

24  motions that I have.  Because it's always nice to have the

25  motions, you know what the motions are before you have the

1  trial.

2      And so, I'm going to appoint James Larson, former

3  Magistrate.  And I've had him on several other cases, and he's

4  done a fantastic job.  And he's a very, very good lawyer.

5      And of course, what I'm going to do also, so as to not

6  impede -- not impede any settlements that you might have, I'm

7  going to have him start working on the motions now.  And then

8  give me his report, his recommendations on the motions, to me,

9  alone.  It will not be given to any of the parties.  Pending

10  the trial.

11      Prior to trial, you will get the Court's order on the

12  motions that you have.  But during the period of time that you

13  are talking about discovery, you will not know how the motions

14  are going to be decided.  That's numero uno.

15      And also I'm going to tell you now what the order -- what

16  I'm going to do.  I'm going to set December 11th of this year,

17  19 -- of 2015, for a trial setting date.  After that time, I

18  will have received all the motions that I'm going to -- may or

19  may not render to you, and I'll look at my trial calendar for

20  next year, and then I will then set the trial date.

21      And I'll give you now -- but the trial date is going to be

22  relatively soon after the December date.  I want you to all get

23  ready for trial.  Because that's what's going to happen.  I'm

24  going to be clearing off my calendar, and see what we can do

25  about that.

1          So, the order of trial is going to be this:  The first

2     trial I'm going to have are the Sharp cases.  Sharp cases.  The

3     second order will be the Direct Action Plaintiffs.  And the

4     third order will be the Direct Purchaser Plaintiffs.  And, the

5     -- and so, we will -- we will meet at that particular time.

6          Now, if anybody has any comments, I'll be very happy to

7     hear the comments.

8          **MR. CURRAN:**  Your Honor, Christopher Curran for

9     Toshiba.

10         First, if I may, a question.  You referred to the

11    appointment of Mr. Larson to be a special master on the motions

12    for summary judgment.  Does Your Honor anticipate whether there

13    will be oral argument before Mr. Larson in connection with

14    those?

15         **THE COURT:**  I've got more paper than fifteen

16    Boy-Scout paper drives.  I've got a jury room -- I can't

17    conduct any jury trials here, there are so many briefs

18    involved.  They're piled over in the room.  I can't even get

19    into the room.  So, I think I've got enough information, and he

20    will have enough information, without any argument.

21         If you don't like it, the ruling of the Court, his

22    recommendation, then you can appeal it to me and then we'll

23    take it from there.  Have the oral argument.

24         **MR. CURRAN:**  Okay.  So, secondly, I would like to

25    comment on the idea of the separate trial for Sharp.

1            THE COURT:   Okay, go on, comment.

2            MR. CURRAN:   Again, I represent Toshiba.   I'm one of

3    three remaining Defendants in the Sharp case.

4            THE COURT:   Well, I'll tell you about Sharp.   Do you

5    want to know about Sharp?   All right.   Why Sharp is first.

6        Sharp is the only Defendant who is not proceeding under

7    the, quote, "owned-and-controlled" theory of *Royal Printing* and

8    *Illinois Brick*.   See my order dated November 29, 2012.   And

9    that's why Sharp goes first.

10           MR. CURRAN:   Of course I agree, Your Honor, that

11   there are no *Royal Printing* issues related to the Sharp case.

12   And maybe this is stating the obvious.

13       But if there's to be a Sharp trial and then a DAP trial,

14   that would require someone in my position, representing

15   Toshiba, to bring the same witnesses twice.   Many of the

16   witnesses come from Japan or other far-flung places.   Many of

17   them are non-party witnesses that we have to convince to come

18   voluntarily.

19       A lot of the issues are the same in the Sharp case and in

20   the DAP case.   Because even though there are only three

21   Defendants in the Sharp case, Sharp, of course, is pursuing

22   joint and several liability, and therefore must establish

23   liability of all of the alleged co-conspirators.

24       So the overlap of the liability cases is significant,

25   if -- near -- perhaps nearly complete.   So basically we would

1  have to try the case twice, in a short period of time.

2       And number one, I question the efficiency of that both

3  from my clients' standpoint, and the fairness of the difficulty

4  -- in light of the difficulties of getting the witnesses there,

5  but also, obviously, it imposes additional burdens on the

6  Court.  It requires the selection and the impanelment of juries

7  twice.   It seems to me that there are considerable

8  inefficiencies associated with that approach.

9       So perhaps Your Honor has considered all of this already,

10 but I feel duty-bound on behalf of my client to raise these

11 concerns.

12       **THE COURT:**  First time I've ever heard an attorney

13 think about the Court.  I have been picking juries for 47,

14 almost 50 years.  And it's no problem at all.

15       And if the jury -- every time an attorney tells me -- with

16 all due respect to you, but any time an attorney says he's

17 doing something to simplify a trial, it ends up in the biggest

18 mess I ever saw.

19       So we're going to do it the way I suggested.  Sharp goes

20 first, and then we'll try the other categories.

21       **MR. CURRAN:**  Okay.

22       **THE COURT:**  And I respect your comments.

23       **MR. CURRAN:**  All right.  Well, thank you for hearing

24 me out.  I appreciate it.

25       **THE COURT:**  All right.

1          **MR. R. A. SAVERI:**  Your Honor, if I may, Rick Saveri

2  on behalf of the Direct Purchaser Class.

3      I just want to put on the record we have no objection to

4  Magistrate Larson being a special master.

5          **THE COURT:**  All right.  Fine.  Thank you.

6      Anything else?

7          **MR. BRIAN:**  Brad Brian on behalf of LG Electronics,

8  Your Honor.

9      One of the issues that we pointed out in our joint status

10 conference filing with the Court is the *ATM Fee* ownership and

11 control issue.  We think that is a question that needs to be

12 decided by the bench, and there's various ways to do it.

13     Either -- we think largely -- we decided on stipulated

14 facts.

15         **THE COURT:**  You represent who?

16         **MR. BRIAN:**  LG Electronics.

17         **THE COURT:**  Okay.

18         **MR. BRIAN:**  We settled with Sharp.  I have an updated

19 settlement chart, if you'd like to see it, with the additional

20 change.  I just would ask Your Honor not to decide today, but

21 to consider how that would be decided.  We think it has to be

22 decided by the Court.

23     Some of us think there can be a very short bench trial,

24 maybe half a day, largely based on stipulated facts.  But I

25 would ask the Court to consider that, in light of the schedule

1    as to how you would want to handle that.

2         Once Mr. Larson has ruled and given you a recommendation

3    on the summary judgment motions, that will define what issues

4    are left for the Court to decide.  There may still be some.

5         But, I would ask the Court to consider that in the

6    schedule.

7              **THE COURT:**  I've considered it, and the prior

8    statement stands.

9              **MR. WAGSTAFFE:**  Good morning, Your Honor.  James

10   Wagstaffe.

11        I represent Dell as an example of a party who's come from

12   a different -- a different district, where the case would be

13   remanded because of the MDL.

14        So, Your Honor's order or suggestion doesn't take that

15   into account.  And we are just asking for some thought process

16   on that, for a case that is going to go back.

17             **THE COURT:**  You are talking about the cases that go

18   back from whence they came?

19             **MR. WAGSTAFFE:**  Yes, Your Honor.

20             **THE COURT:**  Yes.  Well, those cases, the motions

21   relating to those cases will go back to the judge that's going

22   to get them.  Because the law that applies in that particular

23   circuit may be different than the Ninth Circuit law.

24             **MR. WAGSTAFFE:**  And Your Honor -- I understand that,

25   Your Honor.  And perhaps we could submit something in writing

1   to address that issue, because up to this point those motions

2   have been in this Court.

3       And, and --

4       **THE COURT:**  I know they've been in this Court, but if

5   I'm going to refer the cases back to some other jurisdiction

6   outside the Ninth Circuit, then the big question remains:  What

7   law applies?  Does the Ninth Circuit law apply, or does that

8   jurisdiction's law apply?  And I don't think you can waive

9   jurisdiction.

10       **MR. WAGSTAFFE:**  I understand that, Your Honor.

11     Perhaps we'll submit something in writing that addresses

12   that, because the timing of it, which Your Honor's order

13   obviously for each individual case will have to address --

14   we'll just submit something as to the timing of that,

15   Your Honor.

16       **THE COURT:**  Well, are you suggesting that this Court

17   handle the motions applying Ninth Circuit law to a case that is

18   going to be sent back to another jurisdiction?

19       **MR. WAGSTAFFE:**  I'm not suggesting that, Your Honor,

20   but it is -- it is not atypical that the motions would be

21   decided before the remand.

22     But Your Honor, perhaps we can submit something.  We

23   understand that issue.  And --

24       **THE COURT:**  I mean, I would be deciding the motion on

25   Ninth Circuit law.

```
 1          MR. WAGSTAFFE:  That's -- it gets done that way

 2   sometimes, Your Honor.  There's case law that supports that.

 3      But again, given the context of all of this (Indicating),

 4   we can submit something with respect to the remand and assist

 5   the Court in the timing of those issues.  Because it hasn't

 6   happened yet.

 7      And we appreciate -- Your Honor's order addresses the

 8   things that are here.  We'll send something to Your Honor to

 9   address that.

10          THE COURT:  Let me think about that.

11          MR. WAGSTAFFE:  Okay.  Good.  That'd be great.  Thank

12   Your Honor.

13          MR. KESSLER:  Your Honor, Jeffrey Kessler for

14   Panasonic.  I have a question, if I might.

15          THE COURT:  Sure.

16          MR. KESSLER:  Would it be possible for the Defendants

17   to pick, let's say, just a few, two or three of the summary

18   judgment motions, the joint ones, that we think are especially

19   important, and ask Magistrate Larson if he would allow oral

20   argument just on a few of the most important of the motions?

21      Because we're a little concerned that since he would just

22   be coming into the case fresh, and it it's such an extensive

23   record and complexities here, that he might benefit if he's

24   willing to have some argument on just a few of the motions, if

25   Your Honor thought that was an acceptable request.
```

```
 1              THE COURT:  I tell what you I'm going do.  I'm going

 2   to refer these motions to Larson.  And if he thinks it's

 3   necessary, then he will decide it.

 4              MR. KESSLER:  Thank you, Your Honor.

 5              THE COURT:  If you can convince him, fine.  If you

 6   can't, you lost.

 7              MR. KESSLER:  Thank Your Honor.  That's all I was

 8   asking.

 9              THE COURT:  Sure, sure.

10              MR. KESSLER:  And then my second question, which is

11   related to a comment just made:  Does Your Honor have any sense

12   of when you will remand the cases to other courts, that go back

13   to their courts, timing-wise?

14              THE COURT:  I would say around the trial setting

15   date.

16              MR. KESSLER:  Very good, Your Honor.  Thank you.

17              MR. IOVIENO:  Your Honor, Phil Iovieno for a number

18   of Direct Action Plaintiffs.

19       My Plaintiffs are all remand Plaintiffs, so I just want to

20   make two quick points about the sending back of the motions

21   that you had just referred to.  One of which, you said you were

22   going think about it some more, whether you would be deciding

23   those motions or sending them back.

24       I would just refer the Court to the chart that --

25              THE COURT:  What do you think?
```

1      **MR. IOVIENO:**  I think this Court should decide it

2  just like in *LCD* and --

3      **THE COURT:**  On Ninth Circuit law?

4      **MR. IOVIENO:**  Well, I think if you look at the chart

5  that we submitted, the Defendants and the Plaintiffs both agree

6  that there is no conflict between Ninth Circuit law and -- with

7  respect to my case --

8      **THE COURT:**  Well, if there's no conflict between

9  Ninth Circuit law and the law from whence they came, then

10  Larson will decide that.

11      **MR. IOVIENO:**  That's exactly our position.  And on

12  the chart -- it's our position that there's no conflict with

13  respect to any of the motions.  And in *LCD*, all of the motions

14  were decided.

15      On the chart here, the Defendants identify three motions

16  with claims --

17      **THE COURT:**  The reason I'm having it quasi-secret

18  because I'm not going to let you know what the answer is:

19  Because I like settlements.  And there's no reason why these

20  cases can't be settled.

21      Now, if there's a good reason, then that's a good reason.

22  But if there's not a good reason, then it settles.  Settle it.

23      **MR. IOVIENO:**  I understand.  Thank you, Your Honor.

24      **THE COURT:**  But you think -- we'll do it that way.

25  Okay?

1          **MR. IOVIENO:**   Thank you.

2          **MS. OSBORN:**   Thank Your Honor.   Kathy Osborn for the

3   Thomson Defendants.

4       I just want to reiterate, I understand you've made your

5   decision about holding the Sharp trial first, but I wanted to

6   state on behalf of the Thomson Defendants that we agree with

7   the comments that Mr. Curran made, concerns about having the

8   Sharp trial first.

9       And I would also add that I have concerns about having a

10  Sharp trial first creating some prejudices to my client in

11  terms of bringing the same fact witnesses in, the same expert

12  witnesses in, some of them joint defense experts testifying at

13  one trial, and then the risk of conflicting testimony at the

14  DAP trial down the road.

15      And I just wanted to state for the record that that is a

16  concern I have for this particular plan.

17          **THE COURT:**   All right.   Thank you.

18          **MS. OSBORN:**   Thank you.

19          **THE COURT:**   I assume all these extra costs will come

20  up during the -- the request for attorneys' fees.   If you know

21  what I mean.

22          **MR. CURRAN:**   Your Honor, Christopher Curran for

23  Toshiba again.   But on a different point than the one

24  Ms. Osborn just commented on.   I was involved, Your Honor, in

25  the *LCD* cases as well, and tried both of the civil actions

before her in *LCD*.

In that case, of course, Judge Illston made rulings under the FTAIA. Including in the case -- the *Motorola* case that got remanded to the Northern District of Illinois.

Your Honor might be aware that Judge Illston's ruling there was changed by the District Judge in Illinois, and then that change was affirmed by the Seventh Circuit.

**THE COURT:** That's the thing we've been discussing earlier here.

**MR. CURRAN:** Right.

And my point in that regard, Your Honor, is that it was not the change of circuit law that determined the different outcome in the Seventh Circuit as opposed to Judge Illston's ruling.

There was never any reliance by the District Judge in Chicago or by the Seventh Circuit upon some distinct aspect of Seventh Circuit law. Instead, it was a different analytical approach to the interpretation of the FTAIA.

So, I simply want to make the observation that that is not an illustration of a different circuit law affecting the outcome in a remand jurisdiction.

And, and further in that regard, maybe I'll preface these comments about the *Royal Printing* line of cases with just the observation how coincidental it is that Your Honor is here considering *Royal Printing* issues, when I think we all know

1  that you were the District Judge in *Royal Printing*, and

2  Judge Illston, then practicing lawyer Susan Illston, was the

3  plaintiff's lawyer in that case.

4  And then here we are 35 years later, addressing the

5  implications of that case in your CRT case in light of

6  Judge Illston's experience in *LCD*.  The whole thing is a little

7  bit mind-blowing.  But, the coincidences are quite interesting.

8  In that regard, that is an area, at least on the defense

9  side, that we contend there is different law in other circuits

10  than in the Ninth Circuit.  We think that the Ninth Circuit's

11  ruling in *Royal Printing* is a unique animal, and that other

12  circuits have not adopted that same approach.

13  So in that area, it may well be that remand jurisdictions

14  would reach a different outcome than Your Honor might or

15  another District Judge in the Ninth Circuit might.

16  **THE COURT:**  So in short, what are you saying?

17  **MR. CURRAN:**  Well, a couple of things.  Number one,

18  in the area of *Royal Printing* --

19  **THE COURT:**  Do you think I should remand them and

20  then let the judge back there decide what the decision is?  Or

21  should I do it?

22  **MR. CURRAN:**  Your Honor, both.  And, Your Honor, let

23  me explain.

24  **THE COURT:**  That -- that sounds kind of complicated.

25  **MR. CURRAN:**  It is complicated.

1       But in the cases that Your Honor is retaining, you're

2   going to have to make a determination as to the amount of all

3   of the joint and several liability.  And that means making a

4   determination under Ninth Circuit law of the standing with

5   respect to each line of commerce that a plaintiff is making a

6   claim on.  Whereas in the remand cases, a District Court, say,

7   in New York or in Florida or Texas, they will have to apply

8   their own circuit's law to make the same determinations.

9       But Your Honor cannot -- I think, cannot avoid the whole

10  issue by simply remanding cases back to the jurisdictions from

11  whence they came, because those issues sometime persist in the

12  actions that remain in your court.  That is complicated.

13  But -- and maybe it requires some amplification or some more

14  clarity in a written submission, but that is something that --

15  that I think is apparent.

16          **THE COURT:**  We handle complicated things all the

17  time.  You know.  So, I'll take it in consideration.

18          **MR. CURRAN:**  Thank Your Honor.

19          **THE COURT:**  Thank you.

20          **MR. R. A. SAVERI:**  Your Honor, Rick Saveri again for

21  the Direct Purchaser Class Plaintiffs.

22      I just wanted to pick up on your comment of settlement.

23  And that as far as the direct clarification, we haven't even

24  gotten to the summary judgment motions.  We haven't gotten to

25  any of the *Daubert* motions filed in this case.  And we have one

1  Defendant left, Mitsubishi.

2       And the request I'm making in order to avoid filling more

3  paper into your jury room and all that is that the parties, the

4  Mitsubishi and the Direct Class, be ordered to mediation with

5  Judge Walker in the next sixty days.

6       Let us spend a day with Judge Walker, and let's get rid of

7  this case.

8            **THE COURT:**  Mitsubishi?

9            **MR. TRUAX:**  Your Honor, it's Terry Truax again on

10  behalf of the Mitsubishi Electric Defendants.

11       Your Honor, we have no objection to engaging in a

12  mediation, of course, with Mr. Savieri.  And I signaled that to

13  them as early as this morning.  And I have actually talked with

14  Judge Walker as well about this, as has Mr. Savieri.

15       And Judge Walker, given his particular position in the

16  case right now where he's deciding pending motions -- in fact,

17  motions filed as recent as this week -- he has asked us to

18  consider -- that is, both the class as well as the Mitsubishi

19  Electric Defendant -- to consider whether mediation would be

20  appropriate in front of him.

21       And if not, he would completely understand why, given his

22  standing in deciding various discovery issues.  And if not,

23  that we would suggest another mediator.  And so --

24            **THE COURT:**  Another mediator.

25            **MR. TRUAX:**  Another -- another -- Judge Walker

1  suggested that we perhaps -- if we were not comfortable

2  mediating in front of Judge Walker, given the fact that he's

3  deciding issues, that we between the two of us work out a

4  suggestion about another third party that we could sit down and

5  mediate with.

6      And we have been in dialogue, I think, with Mr. Savieri

7  about that idea.  And we're prepared to move that forward.

8          **MR. R. A. SAVERI:**  If I may, Your Honor, we have

9  indicated to Judge Walker that we are very comfortable to

10 mediate in front of him.  We have mediated in front of him.  We

11 have told Mitsubishi we will mediate in front of him.

12     We were waiting for them to get back, and we haven't heard

13 from them.  That's why we're asking for a court order that in

14 sixty days we have this mediation.  I prefer Judge Walker.

15 He's handled them; he's very up on the issues here; he's done a

16 lot of the mediations; he knows all the issues.  He's ready to

17 go.

18         **THE COURT:**  As a very practical matter, you know,

19 there's an old saying:  Takes two to tango.  And if one party

20 doesn't want to have the mediation before a particular

21 mediator, then I don't think that's going to go.

22         **MR. TRUAX:**  Your Honor, we have the greatest respect

23 for Judge Walker --

24         **THE COURT:**  Judge Walker has done a fantastic job.

25         **MR. TRUAX:**  Agreed, Your Honor.  The challenge that

 1  we have, Judge, is that he is currently enmeshed in some of the

 2  very disputes that we've had on various issues with the Direct

 3  Plaintiff Class.

 4      And so, Judge Walker suggested to us that he fully

 5  understood why we might be --

 6          **THE COURT:**  You know what I've done, sometimes, many

 7  -- and sometimes it works, sometimes it doesn't.  But what I've

 8  done sometimes, I've ordered that the principals in Japan, the

 9  principals of a particular country -- of a company come to

10  San Francisco and participate in the mediation.  And I find

11  that that works out real fine.

12          **MR. TRUAX:**  Your Honor, we have no --

13          **THE COURT:**  Sometimes you get -- the lawyers get too

14  enmeshed in the minutiae of the law, and -- and the principals

15  are interested in getting thing over with, one way or the

16  other.  Either by trial or by settlement.  And it works out

17  real fine.  That's something else I'm thinking of, too.

18      But I suggest, why don't I do this.  Why don't I take that

19  under submission, and I'll let you know.  I'll talk to -- I'll

20  tell you frankly, I'll talk to Judge Walker, see what he thinks

21  about it.

22      He's a very reasonable person.  And he may very well say

23  that's the best situation to do.  Both of you pick an

24  independent mediator to both of your liking, and then go to

25  them.  Or I can refer it to a magistrate here.

1          **MR. TRUAX:**  Your Honor, with respect to your

2   suggestion about a principal, we're completely fine with that.

3          In fact, respectfully, we have a client representative who

4   came today from Japan, to hear this status conference before

5   Your Honor.  So we have no problem in having a significant

6   member of the Mitsubishi family come and participate in

7   mediation.  They would be happy to do that.

8          **THE COURT:**  That might be best.  I'll let -- whoever

9   is going to handle the mediation, I'll let them worry about

10  that.

11         **MR. TRUAX:**  That would be fine, Your Honor.  And I

12  would be prepared, Your Honor, within the next two to three

13  weeks, to get back to Mr. Savieri with a clear list of

14  suggestions.

15         And the reason I ask for the two to three weeks, just a

16  matter of logistics.  Starting tonight actually is a

17  significant holiday season in Japan.  And many of the companies

18  in Japan, including our client, are closed for about ten days.

19  So it's going to be very difficult --

20         **THE COURT:**  What holiday is that?

21         **MR. TRUAX:**  It's called -- Your Honor, it's a summer

22  holiday, a very good seasonal tradition called *O Bon*, it is

23  called.

24         **THE COURT:**  You mean everybody closes for two weeks?

25         **MR. TRUAX:**  No, depending on the company, about ten

```
 1   days.
 2              THE COURT:  You need to talk to Congress about that.
 3              MR. TRUAX:  I'm learning that they -- they understand
 4   holidays in a way that we Americans sometimes don't get.
 5         But the headline, Your Honor, is that we would be fully
 6   prepared to work with Mr. Savieri to settle on an acceptable
 7   mediator, both sides.
 8         We will do that promptly.
 9              THE COURT:  I'm sure, Mr. Savieri, you wouldn't mind
10   him sending you his ideas in a form of a brief, would you?
11              MR. R. A. SAVERI:  No, Your Honor.  We've been
12   requesting it.  We've been trying to sit down with Judge Walker
13   for --
14              THE COURT:  Ten days?
15              MR. TRUAX:  Yeah; Your Honor, just because of the
16   holiday, if I can have two weeks to do that?
17              THE COURT:  Two weeks, okay.
18              MR. R. A. SAVERI:  That would be great, Your Honor.
19              THE COURT:  Fine.
20              MR. TRUAX:  Thank you very much, Your Honor.
21              THE COURT:  Maybe you don't even need a mediator.
22              MR. R. A. SAVERI:  Your Honor, if -- I would -- I'm
23   standing up because I fully --
24              THE COURT:  I'd offer you my jury room, but it's full
25   of papers.
```

 1          **MR. R. A. SAVERI:**  Maybe if we can stay here today,

 2     if they have their representative, we may be able to work

 3     something out, Your Honor.

 4          **THE COURT:**  Yeah, you can talk after.  Go to lunch.

 5     We've got a great cafeteria.  You may not like the food, but

 6     it's a great cafeteria.

 7       (Laughter)

 8          **MR. R. A. SAVERI:**  The other thing, Your Honor, as

 9     you suggested too, and I'll raise it with counsel, is in our

10     optical disk drive case in front of Judge Seeborg, he ordered

11     everybody to Judge Corley who did a fabulous job.  And we

12     settled with six defendants in that case, just recently.

13       So that's another option I'd like to throw --

14          **THE COURT:**  That's something you might talk about.

15          **MR. R. A. SAVERI:**  That'd be great.

16          **THE COURT:**  That'll be fine.

17          **MR. R. A. SAVERI:**  Thank you.

18          **THE COURT:**  Fine.

19          **MR. BRIAN:**  Brad Brian for LG again, Your Honor.

20       On the settlement front, I mentioned that there have

21     been -- at least, there has been one additional settlement.

22     Our company settled with Sharp.  We've prepared an updated

23     chart (Indicating).

24       I can file it formally with the Court to replace, or hand

25     to Your Honor.

1          **THE COURT:**  Give it to the clerk.

2          **THE CLERK:**  You can go and e-file it later.

3          **MR. BRIAN:**  Thank you.

4     (Document handed up to the Court)

5          **THE COURT:**  Anything else?

6     (No response)

7          **THE COURT:**  Well, have a good day.  The Court is

8  adjourned.

9          **MR. BRIAN:**  Thank you, Your Honor.

10          **MR. R. A. SAVERI:**  Thank you, Your Honor.

11     (Conclusion of Proceedings)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/  Belle Ball

Monday, August 10, 2015

Belle Ball, CSR 8785, CRR, RDR