Michael P. Kenny, Esq. (admitted *pro hac vice*)
mike.kenny@alston.com
Debra D. Bernstein, Esq. (admitted *pro hac vice*)
debra.bernstein@alston.com
Matthew D. Kent, Esq. (admitted *pro hac vice*)
matthew.kent@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

James M. Wagstaffe, Esq. (SBN 95535)
wagstaffe@kerrwagstaffe.com
**KERR & WAGSTAFFE LLP**
101 Mission Street, 18th Floor
San Francisco, California 94105-1576
Tel: (415) 371-8500
Facsimile: (415) 371-0500

*Attorneys for Plaintiffs Dell Inc. and Dell Products L.P.*
[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-md-05944-SC (N.D. Cal.)<br><br>MDL No. 1917 |
| This Document Relates to: Individual Cases: No. 13-cv-2171 (SC); 11-cv-5502 (SC)<br><br>*Dell Inc., et al. v. Hitachi Ltd. et al.*, No. 13-cv-02171;<br><br>*Best Buy Co. v. Hitachi, Ltd.*, No. 11-cv-05513;<br><br>*Best Buy Co. v. Technicolor SA*, No. 13-cv-05264;<br><br>*Costco Wholesale Corp. v. Hitachi, Ltd.*, No. 11-cv-06397;<br><br>*Costco Wholesale Corporation v. Technicolor SA, et al.*, No. 13-cv-05723;<br><br>*Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA,* No. 3:13-cv-05262;<br><br>*Sears, Roebuck and Co. and Kmart Corp. v.* | **DAPS' OBJECTION TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION RE DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS**<br><br>Judge: Hon. Samuel Conti<br>Date: None Set<br>Courtroom: 1, 17th Floor |

1  *Chunghwa Picture Tubes, Ltd.,* No. 11-cv-05514-SC;

2  *Siegel v. Hitachi, Ltd.*, No. 11-cv-05502;

3  *Siegel v. Technicolor SA*, No. 13-cv-05261;

4  *ViewSonic Corporation v. Chunghwa Picture Tubes Ltd.*, No. 14-cv-2510;

5  *Electrograph Systems, Inc., et al. v. Hitachi, Ltd., et al.,* No. 3:11-cv-01656-SC;

6  *Electrograph Systems, Inc., et al. v. Technicolor SA, et al.*, No. 3:13-cv-05724-SC;

7  *CompuCom Sys., Inc. v. Hitachi, Ltd., et al.,* No. 3:11-cv-06396-SC;

8  *Interbond Corp. of Am. v. Hitachi, Ltd. et al.,* No. 3:11-cv-06276-SC;

9  *Interbond Corp. of America v. Technicolor SA, et al.*, No. 3:13-cv-05727-SC;

10 *Office Depot, Inc. v. Hitachi, Ltd. et al.,* No. 3:11-cv-06276-SC;

11 *Office Depot, Inc. v. Technicolor SA, et al.*, No. 3:13-cv-05726-SC;

12 *P.C. Richard & Son Long Island Corp., et al. v. Hitachi, Ltd., et al.,* No. 3:12-cv-02648-SC;

13 *P.C. Richard & Son Long Island Corp., et al. v. Technicolor SA, et al.*, No. 3:13-cv-05725-SC;

14 *Schultze Agency Services, LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC v. Hitachi, Ltd., et al.*, No. 3:12-cv-2649-SC;

15 *Schultze Agency Services, LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC v. Technicolor SA., et al.*, No. 3:13-cv-05668-SC;

16 *Tech Data Corporation; Tech Data Product Management, Inc. v. AU Optronics Corp., et al.,* No. 13-cv-00157

---

DAPS' OBJECTION TO THE SPECIAL MASTER'S R&R RE DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS

MDL NO. 1917 | IND. CASE NO. 3:13-cv-02171-SC

## INTRODUCTION

The Special Master's Report and Recommendation (the "R&R") granting Defendants'[1] Motion to Compel Direct Action Plaintiffs ("DAPs")[2] to produce settlement agreements should be rejected.

To date there have been dozens of settlements. At the August 7, 2015 status conference, this Court made it clear that it believes that all of the cases should settle. But the Special Master's R&R, if adopted, would almost certainly impede future settlement negotiations and result in multiple jury trials as defense counsel obsess over their relative degree of culpability and refuse to settle on that basis.

DAPs' concerns about the chilling effect of production were validated by counsels' experience in the *TFT-LCD* case. There, Toshiba adopted a self-titled "'reverse whipsaw' strategy of non-settlement," resulting in a six-week-long trial against the direct purchaser class followed by another six-week-long trial against Best Buy. Toshiba has touted, moreover, that its opportunistic litigation strategy was enabled by its having received settlement agreements with other Defendants, which allowed Toshiba to make the calculated decision to try cases knowing the precise amount of setoffs. Toshiba has not settled with Sharp or Best Buy here, heading to a reprise of the *TFT-LCD* case. In order to avoid the same result here of multiple trials, and to promote additional settlements, Defendants' Motion should be denied.

Defendants' Motion should also be denied because it is untimely and seeks irrelevant information. Defendants' Motion is untimely because it was filed approximately four months after the

---

[1] The moving defendants are LG Electronics, Inc., Mitsubishi Electric Corp., Mitsubishi Electric US, Inc., Mitsubishi Electric Visual Solutions America, Inc., Panasonic Corporation, Panasonic Corporation of North America, Koninklijke Philips NV, Philips Electronics North America Corp., Samsung SDI Co., Ltd., Samsung SDI America, Inc., Thomson SA, Thomson Consumer Electronics, Inc., Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc. (collectively, "Defendants").

[2] The DAPs are Dell Inc., Dell Products L.P., ABC Appliance, Inc. d/b/a ABC Warehouse, Alfred H. Siegel, solely in his capacity as Trustee of the Circuit City Stores, Inc. Liquidating Trust, Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, LP, Bestbuy.com, LLC, Magnolia Hi-Fi, Inc., CompuCom Systems, Inc., Costco Wholesale Corp., Electrograph Systems, Inc., Electrograph Technologies Corp., Interbond Corporation of America, Kmart Corp., MARTA Cooperative of America, Inc., Office Depot, Inc., PC Richard & Son Long Island Corporation, Sears, Roebuck & Co., Target Corp., Schultze Agency Services, LLC, on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC, and ViewSonic Corporation.

DAPS' OBJECTION TO THE SPECIAL MASTER'S R&R RE DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS

MDL NO. 1917 | IND. CASE NO. 3:13-cv-02171-SC

applicable deadline to move to compel expired.[3] Local Rule 37-3 is clear: "no motions to compel fact discovery may be filed more than 7 days after the fact discovery cut-off." Despite receiving DAPs' objections to producing settlements as early as January 2014, Defendants failed to move to compel prior to the September 2014 deadline. *See* Declaration of Debra D. Bernstein ("Bernstein Decl."), at Ex. C.[4]

Substantively, Defendants' Motion should also be denied on the independent grounds that DAPs' settlement agreements are not relevant prior to trial and requiring DAPs to produce them now would impede future settlement discussions. As a practical matter, any interest that Defendants have in DAPs' settlement agreements can be accommodated by DAPs' proposal to: (1) inform Defendants of the fact of settlement and whether any such settlement agreement contains a cooperation provision; and (2) produce settlement agreements in their entirety after trial in order to calculate any setoff.

## BACKGROUND

During discovery, Defendants issued requests seeking production of settlement agreements from DAPs. DAPs issued timely objections to the requests. *See* Bernstein Decl. at Ex. C (exhibits to Tyler Cunningham declaration in support of Defendants' Motion). In June 2014, Toshiba America Information Systems, Inc. ("TAIS") moved to compel three DAPs (P.C. Richard & Son Long Island Corporation, MARTA Cooperative of America, Inc., and ABC Appliance, Inc.) to produce settlement agreements. After briefing, this Court denied TAIS's motion to compel, reasoning that the issue was not ripe given the DAPs at issue currently had no settlement agreements. (*See* ECF No. 2717).[5] Defendants did not seek to file a motion to compel against any other DAP.

Discovery closed on September 5, 2014 with motions to compel due by September 12, 2014. *See* L.R. 37-3. In January 2015, four months after the close of discovery and the deadline for motions

---

[3] Discovery closed on September 5, 2014 with motions to compel due by September 12, 2014. *See* L.R. 37-3.

[4] The briefing before the Special Master, and the R&R, have been attached hereto as Exhibits C-F to the Bernstein Declaration.

[5] Although TAIS's motion to compel was moot as to the DAPs at issue, if Defendants had filed a motion to compel against other Defendants, it would have been ripe for decision. Defendants opted not to file such a motion. *See* Bernstein Decl. at ¶ 9.

2

DAPS' OBJECTION TO THE SPECIAL MASTER'S R&R RE DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS

MDL NO. 1917 | IND. CASE NO. 3:13-cv-02171-SC

to compel, Samsung SDI's counsel purportedly renewed their request for DAPs' settlement agreements and, together with the other Defendants, filed a new motion to compel before Judge Walker. *See* Bernstein Decl. at Ex. C. After briefing, Judge Walker issued an R&R recommending the Court grant Defendants' Motion to Compel. *See* Bernstein Decl. at Ex. F.

## ARGUMENT AND CITATION TO AUTHORITIES

As set forth below, the Special Master erred in granting Defendants' Motion. Because these errors concern issues of law, rather than issues of fact, they are subject to *de novo* review. (*See* ECF No. 302, ¶ 18.)

### A. Defendants' Motion to Compel Should be Denied as Untimely

#### 1. The Court's Order Denying TAIS's Motion Did Not Excuse Defendants from Complying with the Motion to Compel Deadline for Discovery Motions

The Special Master found that Defendants' Motion is timely because a single defendant – TAIS – moved in mid-2014 to compel three out of 23 DAPs to produce settlement agreements. *See* R&R at 7. According to the Special Master, this Court's subsequent denial of TAIS's motion put *all* DAPs on notice that *any* Defendant could move to compel *any* DAP to produce settlement agreements at *any* time, regardless of the motion to compel deadline or whether the Defendant had made any effort to meet-and-confer prior to the expiration of that deadline. *See id*. But this Court's denial of TAIS's motion did not suspend indefinitely the time in which all 23 Defendants had to move to compel. (*See* ECF No. 2717.) There is no language in the Court's order that grants TAIS permission to renew its motion beyond the motion to compel deadline, much less language excusing the other 13 Defendants' non-compliance with the motion to compel deadline. (*See id.*) Nor could there be because that motion was brought solely by TAIS against three DAPs – P.C. Richardson & Son Long Island Corporation, MARTA Cooperative of America, and ABC Appliance. (*See* ECF No. 2602.) None of the Defendants now before the Court joined TAIS's motion. The only effect of the Court's ruling was to allow TAIS to renew its motion at a later point prior to the motion to compel deadline. *See* Local Rule 37-3 ("[N]o motions to compel fact discovery may be filed more than 7 days after the fact discovery cut-off.").

The Special Master's reliance on the Discovery Protocol's prohibition on duplicative discovery is also misplaced. To the extent relevant at all, the ban on duplicative discovery militates in favor of DAPs. Rather than wait four months after the motion to compel deadline expired to file a separate motion requiring additional briefing, Defendants should have joined TAIS to file a consolidated motion. By choosing to file a separate motion, rather than join TAIS's motion, Defendants undermined – not complied with – the Discovery Protocol's instruction for the parties to avoid duplicative discovery.

> 2. *Defendants' Purported Lack of Knowledge as to the Existence of Settlement Agreements Results from their Own Dilatory Conduct*

The Special Master also found Defendants' Motion timely because it would be unreasonable to require "the defendants to file their motion before the discovery cutoff when they were still seeking information on DAP settlement agreements well after the discovery cutoff." R&R at 7. To state this argument is to reject it because the reason Defendants were seeking "information on DAP settlement agreements well after the discovery cutoff" was due to Defendants' failure to raise the issue earlier. Rather than conferring with DAPs to determine whether they had any settlement agreements at or near the time of the close of discovery, Defendants waited until four months after the close of discovery to act. Here, Defendants' delay is especially inexcusable because they knew that Dell had a settlement agreement in principle with Toshiba prior to the close of discovery. *See* Bernstein Decl. at Ex. A. If Defendants had moved to compel settlement agreements from the other 23 DAPs before the deadline passed, the dispute would have been ripe for adjudication due to the existence of pre-lawsuit settlement agreements and other settlement agreements entered into before the motion to compel deadline expired. *See* Bernstein Decl. at ¶ 9. More fundamentally, this argument ignores that the DAPs' settlement agreements are with Defendants or members of their joint defense group; Defendants' excuses for their failure to timely file a motion are simply not persuasive.

Finally, the timeliness of Defendants' Motion does not turn on, or require resolution of, whether Defendants had actual knowledge of a finalized settlement agreement before the expiration of the applicable deadline. The point is that even with knowledge prior to the motion to compel deadline

of a settlement – whether in final form or in principle – Defendants did not move to compel against any DAPs prior to the applicable deadline, and even then, did not raise the issue for four more months.

### 3. The Special Master Erred in Finding that Defendants Have Established Good Cause

The Special Master erred in finding that good cause supports Defendants' untimely motions. *See* R&R at 8. First, the Special Master transforms Defendants' dilatory conduct into good cause by crediting their claim that they could not have moved to compel earlier because they were unaware of the existence of any settlement agreements. But, as explained above, Defendants' ignorance as to the existence of any settlement agreements is the direct result of their failure to pursue discovery.

Second, the Special Master erred by finding good cause on the grounds that the "production of settlement agreements now would likely promote further settlements." R&R at 8. For that proposition, the Special Master relies on the *TFT-LCD* case, but that case, which resulted in two full-blown trials, supports denying Defendants' Motion, not granting it.[6] In particular, Toshiba's decision to proceed to trial in the *TFT-LCD* case is the exception for high-stakes litigation, not the rule, particularly under the facts of that case which involved seven guilty pleas, hundreds of millions of dollars in criminal fines, and nearly six years of litigation. And it is beyond dispute that Toshiba's knowledge of settlement agreements drove its strategy of non-settlement. Toshiba's counsel has touted that it "us[ed] the settlements against the [direct purchaser] class plaintiffs." *See* Bernstein Decl., at Ex. B. Indeed, Toshiba's counsel has explained that Toshiba proceeded to trial because it knew the class had already received $443 million in settlements, and "the US$443 million in prior settlements cushioned Toshiba against any potentially adverse jury verdict, since prior settlements by law act as credits and are set off against the jury verdict." *See id*. And then, following a six-week-long trial against the direct purchaser class, with 37 witnesses and more than 900 exhibits, in which the jury found Toshiba liable, Toshiba adopted the same strategy in its litigation with Best Buy, which resulted in another six-week-long trial. If the *TFT-LCD* case teaches anything, it is that the disclosure of

---

[6] Just as the Court's recent decision to appoint a Special Master to decide outstanding motions but not disclose the rulings until close to trial will likely facilitate settlements, so too, the uncertainty that exists by not producing settlement agreements prior to trial will facilitate settlements.

5

DAPS' OBJECTION TO THE SPECIAL MASTER'S R&R RE DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS

MDL NO. 1917 | IND. CASE NO. 3:13-cv-02171-SC

settlement agreements in this case will not result in additional settlements or promote judicial efficiency, but will instead increase the likelihood of trials and (unnecessarily) strain both the parties' and the Court's resources.

DAPs' collective experience with the production of settlement agreements in other similarly sized MDLs also indicates that production of such agreements inhibits settlement as both plaintiffs and defendants are reticent to settle for fear those terms (financial or business) will be used as weapons against them in later settlement negotiations with other defendants. Knowing that such agreements will be produced, the parties become more hesitant to settle, often postponing settlement until the last possible moment, if at all.

Neither Defendants nor defense counsel should know the amount of an individual settlement between any DAP and any Defendant. In the *TFT-LCD* case disclosure of individual settlement amounts added a needless and hindering element to almost every settlement discussion. In that case Defendants and their counsel became obsessed with their assessment of their relative degree of culpability and refused to settle on that basis. The refrain "my client is less guilty than defendant Y and will not ever pay more than you received from Y" became common to virtually every settlement discussion, which made settlement much more difficult and time-consuming. Given that liability in this case is joint and several, this "defense benchmarking" is a needless distraction. As the Court is aware, many of the CRT DAPs have settled without disclosure of settlement agreements, and therefore have demonstrated that disclosure of settlement agreements is not necessary.

DAPs' experience is confirmed by the case law. Indeed, "public policy favors the compromise and settlement of disputes." *Dutton v. Todd Shipyards Corp.*, No 09–62916, 2009 U.S. Dist. LEXIS 107936, at *2 (E.D. Pa. Nov. 17, 2009). It has long been recognized that "confidentiality of settlement agreements is a primary inducement to parties to settle cases," *Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 553 (S.D. Ind. 1999); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 837 (S.D. Tex. 2009), and there would be a substantial chilling effect on settlements in this MDL if confidentiality provisions could be abrogated so easily. *In re New York Cnty. Data Entry Worker Prod. Liability Litig.*, 616 N.Y.S. 2d 424, 428 (N.Y. Sup. Ct. 1993) ("'Many

defendants would almost certainly proceed to trial rather than broadcast to all potential plaintiffs how much they might be willing to pay.'" (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 351-52 (3d Cir. 1986) (Garth, J., dissenting))). If granted, Defendants' request would serve only to delay and discourage settlement of the disputes at issue in this litigation. As such, the Special Master erred in finding good cause to excuse Defendants from the deadline for discovery motions.

### B. Rule 26 Does Not Authorize the Production of Settlement Agreements

The Special Master also erred in finding that settlement agreements are relevant and discoverable at this time under Federal Rule of Civil Procedure 26. The Special Master incorrectly assessed the relevance of the settlement agreements, ignored significant countervailing interests of both the parties and public policy, and assumed away the Court's inherent authority to control discovery.

The Special Master summarily concludes that DAPs' settlement agreements are relevant to set-off and witness credibility. *See* R&R at 6. But the relevance of settlement agreements is directly tethered to the timing and the posture of the underlying litigation. In particular, the settlement agreements' relevance to the set-off issue only arises if a Defendant proceeds to trial, and only if the jury returns a judgment in a DAPs' favor. *See, e.g.*, *Wagner v. Circle W. Mastiffs*, No. 2:08-CV-431, 2013 WL 4479070, at *2 (S.D. Ohio Aug. 19, 2013) (denying motion to compel and finding persuasive the reasoning of many courts delaying "disclosure of settlement agreements until after trial because set-off is not an issue to be addressed until after the entry of a verdict"); *In re Flat Glass Antitrust Litig.*, No. 11-658, 2013 WL 1703864, at *1 (W.D. Pa. Apr. 19, 2013) (denying motion to compel production of confidential settlement agreements because, *inter alia*, set-off can be addressed after trial). Likewise, a settlement agreement is relevant for purposes of assessing witness credibility only at the time of trial. *See In re Flat Glass Antitrust Litig.*, 2013 WL 1703864, at *1 ("Broad assertions [that the production of settlement agreement is necessary to assess credibility/bias of witnesses], without more, are insufficient to obtain discovery of a confidential release.").

The Special Master treats the production of settlement agreements no different than ordinary fact discovery and, in doing so, ignores the significant interests of the parties and public policy. As noted above, and as numerous courts have recognized, settlement agreements are not standard discovery fare. Many courts "place the burden upon the party seeking discovery of a confidential settlement 'to make a particularized showing that the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence.'" *Dutton*, 2009 U.S. Dist. LEXIS 107936, at *2-3 (quoting *Key Pharmas., Inc. v. ESI-Lederle, Inc.*, 1997 WL 560131, at *2 (E.D. Pa. Aug. 29, 1997)); *see In re Flat Glass Antitrust Litig.*, 2013 WL 1703864, at *1 (same). Even courts that do not formally require a particularized showing do not permit the carte blanche disclosure of confidential settlement agreements as requested by Defendants in their Motion. *See, e.g.*, *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, No. 09-cv-8387, 2012 WL 3553775, at *1 (S.D.N.Y. Aug. 17, 2012) ("Courts routinely hold that settlement agreements may be withheld until after trial.").

Settlement agreements are not tantamount to routine fact discovery because the terms on which other parties have settled have no tendency to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence, *see* Fed. R. Evid. 401 (definition of relevant evidence), and ordering their production impinges upon settling parties' expectations of confidentiality, thus risking a chilling effect on future settlement negotiations. Although the Special Master is correct that Federal Rule of Evidence 408 does not create a settlement "privilege" barring the discovery of settlement agreements, that rule encapsulates and reflects a strong public policy in favor of encouraging settlements, which the Court must consider in evaluating the discoverability of settlement agreements under Rule 26(b). *See, e.g.*, *Spear v. Fenkell*, Case No. 13-02391, 2015 WL 3947559, at *1 (E.D. Pa. June 26, 2015) (highlighting that "[t]he policies underlying Fed. R. Evid. 408 and Fed. R. Civ. P. 26(b) are in tension" because of the "strong public policy encouraging settlement [that] animates Rule 408"). The Special Master's R&R unjustly disregards these strong public policy considerations.

Here, even if the settlement agreements are found to be relevant, the Court nonetheless retains the discretion to deny the discovery altogether or to impose conditions to accommodate the parties'

competing interests. *See Wagner*, 2013 WL 4479070, at *2 (courts must "deny discovery directed to matters not legitimately within the scope of Rule 26, and . . . use . . . [their] broad discretionary power to protect a party or person from harassment or oppression that may result even from a facially appropriate discovery request." (citing *Herbert v. Lando*, 441 U.S. 153 (1978))); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (Rule 26 "vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequencing of discovery"); *Pesch v. Indep. Brewers United Corp.*, No. C-13-05317 DMR, 2014 WL 5106985, at *1 (N.D. Cal. Oct. 10, 2014) (district court "must limit" even relevant discovery under certain situations, including where the information "can be obtained from some other source that is more convenient, less burdensome, or less expensive"). The Special Master erred as a matter of law by concluding that, upon finding that the settlement agreements are relevant, its only option was to order their immediate production. Rather, DAPs' proposal set out in the next paragraph is a narrower, more appropriate remedy if the Court determines that Defendants' Motion is timely and seeks discoverable information.

### C. DAPs Revised Proposal Satisfies Any Interest Defendants Have in the Settlement Agreements

As noted above, DAPs have proposed to (1) inform Defendants of the fact of settlement and whether any such settlement agreement contains a cooperation provision; and (2) produce settlement agreements in their entirety after trial. To the extent Defendants have any interest in DAPs' settlement agreements, DAPs' proposal satisfies those interests while simultaneously protecting the parties' mutual expectation of confidentiality, which, in turn, will foster additional settlements. *See, e.g.*, *Spear*, 2015 WL 3947559, at *3 (requiring only redacted versions of indemnity agreements for the purpose of assessing witness credibility at trial).

### CONCLUSION

For the reasons set forth above, the Special Master's R&R should be rejected, and Defendants' Motion should be denied.

Date: August 14 , 2015

Respectfully submitted,

/s/ *Debra D. Bernstein*
Michael P. Kenny, Esq. (admitted *pro hac vice*)
Debra D. Bernstein, Esq. (admitted *pro hac vice*)
Matthew D. Kent, Esq. (admitted *pro hac vice*)
Elizabeth Helmer, Esq. (admitted *pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: mike.kenny@alston.com
       debra.bernstein@alston.com
       matthew.kent@alston.com
       elizabeth.helmer@alston.com

James M. Wagstaffe, Esq. (SBN 95535)
KERR & WAGSTAFFE LLP
101 Mission Street, 18th Floor
San Francisco, California 94105-1576
Telephone: (415) 371-8500
Facsimile: (415) 371-0500
Email: wagstaffe@kerrwagstaffe.com

*Counsel for Plaintiffs Dell Inc. and Dell Products L.P.*

/s/ *Philip J. Iovieno*
Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665
Email: piovieno@bsfllp.com
       anardacci@bsfllp.com

William A. Isaacson
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
Email: wisaacson@bsfllp.com

10

DAPS' OBJECTION TO THE SPECIAL MASTER'S R&R RE DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS

MDL NO. 1917 | IND. CASE NO. 3:13-cv-02171-SC

|   |   |
|---|---|
| 1 | Stuart Singer |
|   | BOIES, SCHILLER & FLEXNER LLP |
| 2 | 401 East Las Olas Blvd., Suite 1200 |
|   | Fort Lauderdale, FL  33301 |
| 3 | Telephone:  (954) 356-0011 |
|   | Facsimile:   (954) 356-0022 |
| 4 | Email:  ssinger@bsfllp.com |

*Liaison Counsel for Direct Action Plaintiffs and Attorneys for Plaintiffs Electrograph Systems, Inc., Electrograph Technologies, Corp., Office Depot, Inc., Compucom Systems, Inc., Interbond Corporation of America, P.C. Richard & Son Long Island Corporation, MARTA Cooperative of America, Inc., ABC Appliance, Inc., Schultze Agency Services LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC, and Tech Data Corporation and Tech Data Product Management, Inc.*

/s/  *Scott N. Wagner*
Robert W. Turken
Scott N. Wagner
Mitchell E. Widom
BILZIN SUMBERG MAENA PRICE & AXELROD LLP
1450 Brickell Ave, Suite 2300
Miami, FL  33131-3456
Tel: 305-374-7580
Fax: 305-374-7593
Email:  rturken@bilzin.com
         swagner@bilzin.com
         mwidom@bilzin.com

*Counsel for Plaintiffs Tech Data Corporation and Tech Data Product Management, Inc.*

/s/  *Roman M. Silberfeld*
Roman M. Silberfeld
Bernice Conn
David Martinez
Jill S. Casselman
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone: (310) 552-0130
Facsimile:  (310) 229-5800
Email:  rmsilberfeld@rkmc.com
         dmartinez@rkmc.com
         jscasselman@rkmc.com

Elliot S. Kaplan
K. Craig Wildfang

11

DAPS' OBJECTION TO THE SPECIAL MASTER'S R&R RE DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS
MDL NO. 1917 │ IND. CASE NO. 3:13-cv-02171-SC

Laura E. Nelson
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
800 LaSalle Avenue
2800 LaSalle Plaza
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
Email: eskaplan@rkmc.com
kcwildfang@rkmc.com
lenelson@rkmc.com

*Counsel For Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, Inc.*

/s/ *David J. Burman*
David J. Burman (*pro hac vice*)
Cori G. Moore (*pro hac vice*)
Eric J. Weiss (*pro hac vice*)
Nicholas H. Hesterberg (*pro hac vice*)
Steven D. Merriman (*pro hac vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206)359-8000
Facsimile: (206)359-9000
Email: DBurman@perkinscoie.com
CGMoore@perkinsncoie.com
EWeiss@perkinscoie.com
NHesterberg@perkinscoie.com
SMerriman@perkinscoie.com

Joren Bass, Bar No. 208143
PERKINS COIE LLP
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111-4131
Telephone: (415)344-7120
Facsimile: (415)344-7320
Email: JBass@perkinscoie.com

*Counsel for Plaintiff Costco Wholesale Corporation*

/s/ *William J. Blechman*
Richard Alan Arnold (*pro hac vice*)
William J. Blechman (*pro hac vice*)
Kevin J. Murray (*pro hac vice*)
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel: 305-373-1000
Fax: 305-372-1861
Email: rarnold@knpa.com
wblechman@knpa.com

12

DAPS' OBJECTION TO THE SPECIAL MASTER'S R&R RE DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS

MDL NO. 1917 | IND. CASE NO. 3:13-cv-02171-SC

kmurray@knpa.com

*Counsel for Plaintiff Sears, Roebuck and Co. and Kmart Corp.*

/s/ *Jason C. Murray*
Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA  90071
Telephone:  213-443-5582
Facsimile:   213-622-2690
Email:  jmurray@crowell.com

Jerome A. Murphy (*pro hac vice*)
Astor H.L. Heaven *(pro hac vice)*
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  202-624-2500
Facsimile:   202-628-5116
E-mail:  jmurphy@crowell.com
          aheaven@crowell.com

*Counsel for ViewSonic Corp.*

SUSMAN GODFREY L.L.P.

/s/ *Kenneth S. Marks*
Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
Robert S. Safi
David M. Peterson
Matthew C. Behncke
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
Email: kmarks@susmangodfrey.com
         jross@susmangodfrey.com
         jcarter@susmangodfrey.com
         rsafi@susmangodfrey.com
         dpeterson@susmangodfrey.com
         mbehncke@susmangodfrey.com

Parker C. Folse III
Rachel S. Black

13

DAPS' OBJECTION TO THE SPECIAL MASTER'S R&R RE DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS

MDL NO. 1917 │ IND. CASE NO. 3:13-cv-02171-SC

Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: pfolse@susmangodfrey.com
rblack@susmangodfrey.com
jconnors@susmangodfrey.com

*Attorneys for plaintiff Alfred H. Siegel, solely in his capacity as Trustee of the Circuit City Stores, Inc. Liquidating Trust*