# Exhibit D

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424

404-881-7000
Fax: 404-253-8488
www.alston.com

Debra D. Bernstein                    Direct Dial: 404-881-4476                    Email: debra.bernstein@alston.com

February 2, 2015

*CONFIDENTIAL VIA EMAIL*

Hon. Vaughn R. Walker (Ret.)
Law Office – Vaughn R. Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111-2228
Email: jay.weil@fedarb.com

      Re:     *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 07-CV-5944, MDL
               No. 1917 (N.D. Cal.) (DAPs' Opposition to Defendants' Motion to Compel
               DAPs to Produce Settlement Agreements)

Dear Judge Walker:

On behalf of the Direct Action Plaintiffs ("DAPs") we respectfully request that your Honor deny Defendants' Motion to Compel DAPs to Produce Settlement Agreements (the "Motion"). Defendants' Motion is untimely and seeks relief that is impermissible and, if granted, would chill future settlements, particularly given that some DAPs do not have a trial date. Any interest Defendants have in DAPs' settlement agreements can be satisfied without the risk of chilling future settlement negotiations through the compromise DAPs have proposed to Defendants.

## A. Defendants' Motion is Untimely

Defendants' Motion should be denied because it was filed approximately four months after the applicable deadline to move to compel expired.[1] Local Rule 37-3 is clear: "no motions to compel fact discovery may be filed more than 7 days after the fact discovery cut-off." Despite receiving DAPs' objections to producing settlements as early as January 2014, Defendants failed to move to compel prior to the September 2014 deadline. *See, e.g.*, Ex. A to Tyler Cunningham's Declaration in Support of Defendants' Motion to Compel Settlement Agreements ("Cunningham Decl."). Defendants argue that they renewed their request for DAPs' settlement agreements but fail to note that they made this request on January 9, 2015 – four months after the motion to compel deadline expired. *See* Ex. P to Cunningham Decl.[2] Defendants' failure to seek relief prior to the expiration of the deadline alone warrants denying their Motion.

---

[1] Discovery closed on September 5, 2014 with motions to compel due by September 12, 2014. *See* L.R. 37-3.

[2] Defendants also state that DAPs "did not respond" to Defendants' proposed compromise. Motion at 2. Once again, Defendants fail to note that this "compromise" was first proposed in

February 2, 2015
Page 2

Defendants contend that their Motion is renewed pursuant to Judge Conti's Order on Defendant Toshiba America Information Systems, Inc.'s ("TAIS") motion to compel settlements from certain DAPs – P.C. Richard & Son Long Island Corporation, MARTA Cooperative of America, and ABC Appliance.  But the instant Motion is far broader than TAIS' original motion. The TAIS motion was filed by a single Defendant against three DAPs.  Judge Conti denied the TAIS motion as moot because those Plaintiffs at issue had no settlement agreements.  The TAIS motion is still moot as those three DAPs still have no settlement agreements.  *See* Declaration of Philip Iovieno, ¶ 3.  Moreover, Judge Conti did not give TAIS permission to renew its motion outside of the applicable deadline, nor did he excuse every other Defendant from the September motion to compel deadline.  *See* Order Denying TAIS's Motion to Compel (MDL Dkt. No. 2717).

Contrary to Defendants' position, Judge Conti's conclusion that he lacked jurisdiction to rule on TAIS's motion (because the DAPs at issue did not have any settlement agreements) did not prevent Defendants from bringing a timely motion to compel against the 23 other DAPs.[3] Judge Conti's finding pertained only to the three DAPs at issue in TAIS's motion.[4]  If the Defendants had moved to compel settlement agreements from the other 23 DAPs before the deadline passed, the dispute would have been ripe for adjudication due to the existence of pre-lawsuit settlement agreements and other settlements entered into before the motion to compel deadline expired.  *See* Declaration of Debra D. Bernstein ("Bernstein Decl."), ¶ 3.  And notably, Defendants ***knew of settlement agreements prior to the September 12, 2014 motion to compel deadline.***  For instance, on September 8, 2014, the Dell Plaintiffs disclosed that they had reached a settlement in principal with the Toshiba Defendants.  *See id.*  Instead of acting in a timely fashion, Defendants sat idly by as the September 12, 2014 motion to compel deadline came and went.

**B. Rule 26 Does Not Authorize the Production of Settlement Agreements**

Courts must "deny discovery directed to matters not legitimately within the scope of Rule 26, and . . . use . . . [their] broad discretionary power to protect a party or person from harassment or oppression that may result even from a facially appropriate discovery request." *Wagner v. Circle W. Mastiffs*, No. 2:08-CV-431, 2013 WL 4479070, at *2 (S.D. Ohio Aug. 19, 2013) (citing *Herbert v. Lando*, 441 U.S. 153 (1978)); *see Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (Rule 26 "vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequencing of discovery"); *Pesch v. Indep. Brewers United Corp.*, No. C-13-05317

---

January 2015, and DAPs' alleged failure to respond is based on an email Defendants sent only to liaison counsel for DAPs on January 20, 2015, a mere three business days prior to Defendants filing the instant Motion.  *See* Ex. Q to Cunningham Decl.

[3] If this was Defendants' understanding at the time, the proper course would have been to raise this issue prior to the expiration of the motion to compel deadline.

[4] Notably, Defendants can cite to no language in the Court's order suggesting that it intended to provide all Defendants with a blanket exemption from the motion to compel deadline.

February 2, 2015
Page 3

DMR, 2014 WL 5106985, at *1 (N.D. Cal. Oct. 10, 2014) (district court "must limit" even relevant discovery under certain situations, including where the information "can be obtained from some other source that is more convenient, less burdensome, or less expensive").

Accordingly, many courts "place the burden upon the party seeking discovery of a confidential settlement 'to make a particularized showing that the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence.'" *Dutton v. Todd Shipyards Corp.*, No 09–62916, 2009 U.S. Dist. LEXIS 107936, at *2-3 (E.D. Pa. Nov. 17, 2009) (quoting *Key Pharmas., Inc. v. ESI-Lederle, Inc.*, 1997 WL 560131, at *2 (E.D. Pa. Aug. 29, 1997)); *see In re Flat Glass Antitrust Litig.*, No. 11-658, 2013 WL 1703864, at *1 (W.D. Pa. Apr. 19, 2013) (same). Even courts that do not formally require a particularized showing do not permit the carte blanche disclosure of confidential settlement agreements as requested by Defendants in their Motion. *See, e.g.*, *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, No. 09-cv-8387, 2012 WL 3553775, at *1 (S.D.N.Y. Aug. 17, 2012) ("Courts routinely hold that settlement agreements may be withheld until after trial.").

Here, Defendants argue that DAPs' settlement agreements are necessary for purposes of (1) set-off, (2) settlement, and (3) assessing witness credibility. Motion at 3. But at the current stage of litigation, none of these factors are relevant to Defendants' claims or defenses. *See* Fed. R. Civ. P. 26(b)(1). Moreover, Defendants have failed to articulate why compelling disclosure of all DAPs' settlements – including those of DAPs not going to trial in March 2015 before Judge Conti – outweighs the risk of chilling future settlement negotiations. Defendants also offer no explanation as to why DAPs' proposed compromise does not resolve every issue raised by them. DAPs proposed that they would: (1) inform Defendants of the fact of settlement and whether any such settlement agreement contains a cooperation provision; and (2) produce settlement agreements in their entirety after trial. This proposed compromise will preserve confidentiality and avoid chilling further negotiations and at the same time provide Defendants with the information they claim is relevant.

### 1. *Set-Off Does Not Support Defendants' Motion*

Set-off does not support Defendants' Motion because it is not relevant to any claim or defense at issue in this litigation. *See* Fed. R. Civ. P. 26(b)(1). Set-off becomes relevant if, and only if, a jury returns a judgment against a defendant. *See, e.g.*, *Wagner*, 2013 WL 4479070, at *2 (denying motion to compel and finding persuasive the reasoning of many courts delaying "disclosure of settlement agreements until after trial because set-off is not an issue to be addressed until after the entry of a verdict"); *In re Flat Glass Antitrust Litig.*, 2013 WL 1703864, at *1 (denying motion to compel production of confidential settlement agreements because, *inter alia*, set-off can be addressed after trial). As discussed above, in the event any DAPs proceed to trial, they have agreed to produce settlement agreements in their entirety after trial.

February 2, 2015
Page 4

    2.    *Requiring DAPs to Produce Settlement Agreements Will Not Encourage
          Settlement Among the Parties*

        Defendants' argument that the Court should grant their Motion because it will promote
settlement is misplaced because: (1) both Plaintiffs and Defendants have proven more than
capable of settling their CRT claims **without** the exchange of settlement agreements; and (2)
experience shows that production of settlement agreements discourages future settlement.

        As your Honor is aware, a number of DAPs have reached settlement agreements with
Defendants through informal negotiations and mediations.  *See* MDL Dkt. No. 3484 (setting
forth current pending motions and settlements).  Given the parties' success in settling their
claims, they need no additional encouragement to discuss settlement and reach appropriate
resolutions.  Production of existing settlement agreements now risks upsetting the progress made
by all parties.

        Defendants rely on the *In re TFT-LCD (Flat Panel) Antitrust Litigation* (the "*LCD*
Litigation") to support their argument that settlement agreements should be produced; however,
Defendants' argument ignores the numerous decisions of other courts in similar MDLs which
have held that settlement agreements should not be produced.  In *In re Flat Glass*, for example,
the district court explained that "[a]lthough the extent of Defendant's liability is certainly
relevant to potential settlement, relevance to settlement negotiations is not relevant to the subject
matter of the action, as contemplated by the applicable rules and standards."  2013 WL 1703864,
at *1.  *See also Wagner*, 2013 WL 4479070, at *4 (finding the reasoning in *In re Flat Glass*
persuasive).  The reasoning in *In re Flat Glass* is squarely on point here.  Even if access to
confidential settlement agreements would help Defendants assess its potential liability and
settlement strategies – a point that DAPs dispute – "relevance to settlement negotiations is not
relevant to the subject matter of the actions."  *In re Flat Glass*, 2013 WL 1703864, at *1.  Rule
26 is not concerned with relevance to potential settlements.  If your Honor finds the settlement
agreements are relevant to the litigation, there are ways to ensure Defendants have access to
whatever limited information contained in the settlement agreements that may be relevant to the
litigation without prejudicing DAPs by forcing them to disclose confidential settlement
information at this stage in the litigation.

        Defendants' position that production of settlement agreements would facilitate settlement
is also belied by what happened in the *LCD* Litigation after settlement agreements were
produced.  Rather than promote settlement, the information Toshiba learned from the production
of settlement agreements in that litigation enabled Toshiba to pursue a "strategy of non-
settlement."  Ex. B to Bernstein Decl.  Despite seven guilty pleas and nearly six years of
litigation, Toshiba proceeded to trial against the direct purchaser class because it knew the class
had already received $443 million in settlements, and "the US$443 million in prior settlements
cushioned Toshiba against any potentially adverse jury verdict, since prior settlements by law act
as credits and are set off against the jury verdict."  *Id.*  And then, following a six-week-long trial
against the direct purchaser class, with 37 witnesses and more than 900 exhibits, in which the
jury found Toshiba liable, Toshiba adopted the same strategy in its litigation with Best Buy,
which resulted in another six-week-long jury trial.  Quite simply, it is clear from Toshiba's well-

February 2, 2015
Page 5

publicized strategy in the *LCD* Litigation that production of settlement agreements will encourage a "non-settlement strategy" in this case as well, as Defendants clearly seek to apply the same judicial-resource-draining strategy in CRT and prolong these cases interminably.

DAPs' collective experience with production of settlement agreements in other similarly sized MDLs also indicates that production of such agreements inhibits settlement as both Plaintiffs and Defendants are reticent to settle for fear those terms (financial or business) will be used as weapons against them in later settlement negotiations with other Defendants. Indeed, knowing that such agreements will be produced, the parties become more hesitant to settle, often postponing settlement until the last possible moment, if at all. "[P]ublic policy favors the compromise and settlement of disputes." *Dutton*, 2009 U.S. Dist. LEXIS 107936, at *2. It has long been recognized that "confidentiality of settlement agreements is a primary inducement to parties to settle cases," *Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 553 (S.D. Ind. 1999); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 837 (S.D. Tex. 2009), and there would be a substantial chilling effect on settlements in this MDL if confidentiality provisions could be abrogated so easily. *In re New York Cnty. Data Entry Worker Prod. Liability Litig.*, 616 N.Y.S. 2d 424, 428 (N.Y. Sup. Ct. 1993) ("'Many defendants would almost certainly proceed to trial rather than broadcast to all potential plaintiffs how much they might be willing to pay.'" (quoting *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 351-52 (3d Cir. 1986) (Garth, J., dissenting))). If granted, Defendants' request would serve only to delay and discourage settlement of the disputes at issue in this litigation.

> ### 3. Defendants' Generalized Claim that DAPs' Settlements Are Necessary to Evaluate Witness Bias and Credibility Are Insufficient to Support Defendants' Motion

Defendants insincerely argue that all DAPs should be required to produce all settlement agreements because they are "relevant to show potential witness bias." Motion at 3. Not surprisingly, Defendants offer no further specifics because it is not known which DAPs, if any, will proceed to trial. Courts have found generic claims that settlement agreements are necessary to assess witness credibility, and bias are insufficient to support compelling the production of settlement agreements. *See In re Flat Glass Antitrust Litig.*, 2013 WL 1703864, at *1 ("Broad assertions [that the production of settlement agreement is necessary to assess credibility/bias of witnesses], without more, are insufficient to obtain discovery of a confidential release."). Defendants' claims are further mooted by DAPs' proposed compromise pursuant to which DAPs have offered to identify which Defendants have agreed to provide cooperation.

## C. Defendants' Motion to Compel Should Be Denied as to the DAPs that are Not Going to Trial in March 2015

At a minimum, Defendants' Motion should be denied as to the DAPs that are not going to trial in March 2015 and have no trial dates set yet in the jurisdictions to which they will be remanded. The thrust of Defendants' Motion that now is the time to produce these settlement agreements in order to determine set-off or witness bias simply does not apply to these DAPs.

February 2, 2015
Page 6

Numerous courts have refused to compel the production of settlement agreements prior to trial. *See King Cnty., Wash.*, 2012 WL 3553775, at *3 (S.D.N.Y. Aug. 17, 2012) (refusing to compel production of settlement agreements prior to trial).

## CONCLUSION

        For the reasons outlined above, DAPs respectfully request that your Honor deny Defendants' Motion.

                        Sincerely,

                        ALSTON & BIRD LLP

                        */s/ Debra D. Bernstein*

                        Debra D. Bernstein

LEGAL02/35331786v8

1  Michael P. Kenny, Esq. (admitted *pro hac vice*)
   mike.kenny@alston.com
2  Debra D. Bernstein, Esq. (admitted *pro hac vice*)
   debra.bernstein@alston.com
3  Matthew D. Kent, Esq. (admitted *pro hac vice*)
   matthew.kent@alston.com
4  **ALSTON & BIRD LLP**
5  1201 West Peachtree Street
   Atlanta, Georgia 30309-3424
6  Tel: (404) 881-7000
7  Facsimile: (404) 881-7777

8  James M. Wagstaffe, Esq. (SBN 95535)
   wagstaffe@kerrwagstaffe.com
9  **KERR & WAGSTAFFE LLP**
   100 Spear Street, 18th Floor
10 San Francisco, California 94105-1576
   Tel: (415) 371-8500
11 Facsimile: (415) 371-0500

12 *Attorneys for Plaintiffs Dell Inc. and Dell Products L.P.*

13

14            **UNITED STATES DISTRICT COURT**

15           **NORTHERN DISTRICT OF CALIFORNIA**

16              **SAN FRANCISCO DIVISION**

17 | In re:  CATHODE RAY TUBE (CRT)      | Master File No. 3:07-cv-05944-SC
18 | ANTITRUST LITIGATION                |
                                           MDL No. 1917
19 | This Document Relates to:           |
                                           **DECLARATION OF DEBRA D.**
20 | *Electrograph Sys. v. Hitachi, Ltd.*, No. 11-cv-01656; | **BERNSTEIN IN SUPPORT DIRECT**
   |                                     | **ACTION PLAINTIFFS'**
21 |                                     | **OPPOSITION TO DEFENDANTS'**
   | *Electrograph Sys., Inc. v. Technicolor SA*, No. 13-cv- | **MOTION TO COMPEL**
22 | 05724;                              | **SETTLEMENT AGREEMENTS**
23 | *Siegel v. Hitachi, Ltd.*, No. 11-cv-05502; |
24 |                                     | Special Master: Hon. Vaughn R. Walker
   | *Siegel v. Technicolor SA*, No. 13-cv-05261; | (ret.)
25 |                                     |
   | *Best Buy Co. v. Hitachi, Ltd.*, No. 11-cv-05513; |
26 |                                     |
27 | *Best Buy Co. v. Technicolor SA*, No. 13-cv-05264; |
   |                                     |
28 | *Interbond Corp. of Am. v. Hitachi, Ltd.*, No. 11-cv- |

---

DECL. OF DEBRA D. BERNSTEIN IN SUPPORT          MASTER FILE NO. 3:07-CV-05944-SC
OF DAPS' OPPOSITION TO MOTION TO COMPEL          MDL NO. 1917

06275;

*Interbond Corp. of Am. v. Technicolor SA.*, No. 13-cv-05727;

*Office Depot, Inc. v. Hitachi Ltd.*, No. 11-cv-06276;

*CompuCom Sys., Inc. v. Hitachi, Ltd.*, No. 11-cv-06396;

*P.C. Richard & Son Long Island Corp. v. Hitachi, Ltd.*, No. 12-cv-02648;

*P.C. Richard & Son Long Island Corp. v. Technicolor SA.*, No. 13-cv-05725;

*Schultze Agency Servs., LLC v. Hitachi, Ltd.*, No. 12-cv-02649;

*Tech Data Corp. v. Hitachi, Ltd.*, No. 13-cv-00157;

*Dell Inc. and Dell Products L.P., v. Hitachi, Ltd.,* No. 13-cv-02171;

*Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA*, No. 13-cv-05262;

*Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514;

*Sharp Elecs. Corp. v. Hitachi, Ltd.*, No. 13-cv-1173 SC;

*Sharp Elecs. Corp. v. Koninklijke Philips Elecs., N.V.*, No. 13-cv-2776 SC;

*ViewSonic Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 14-02510;

I, **DEBRA D. BERNSTEIN**, declare as follows:

1.      I am a partner with the law firm of Alston & Bird LLP, counsel for Plaintiffs Dell Inc. and Dell Products L.P. (collectively, "Dell") in the above-captioned action currently pending in the U.S. District Court for the Northern District of California.  I submit this declaration in support of Direct Action Plaintiffs' ("DAPs") Opposition to Defendants' Motion to Compel DAPs to Produce

Settlement Agreements ("DAPs' Opposition").  I have personal knowledge of the facts stated herein, and I could and would competently testify thereto if called as a witness.

2.      I am a member in good standing of the State Bar of Georgia and am admitted to practice before the U.S. District Court for the Northern District of Georgia.  I have also been admitted to this Court *pro hac vice* as counsel for Dell pursuant to the Court's Pretrial Order No. 1 in the MDL Proceeding.

3.      Attached as Exhibit A is a September 8, 2014, email from Matthew Kent, my law partner and also counsel of record for Dell in this action, to Special Master Judge Vaughn Walker (via Jay Weil) advising the Special Master that the Dell Plaintiffs had reached an agreement in principle with the Toshiba Defendants to settle the case between them.

4.      Attached hereto as Exhibit B is a true and correct copy of a press release titled "The US$2.7 Billion Difference: Toshiba and White & Case Collaborate on Novel Strategy That Pays Off," dated 2012, and obtained from the following URL:

http://annualreview2012.whitecase.com/toshiba.htm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 2, 2015, in Atlanta, Georgia.

By:    /s/ *Debra D. Bernstein*
       Debra D. Bernstein
       debra.bernstein@alston.com
       **ALSTON & BIRD LLP**
       1201 West Peachtree Street
       Atlanta, Georgia  30309-3424
       Tel: (404) 881-7000
       Facsimile: (404) 881-7777

       *Attorney for Plaintiffs Dell Inc. and Dell Products L.P*

# EXHIBIT A

## Kent, Matthew

| | |
|---|---|
| **From:** | Kent, Matthew |
| **Sent:** | Monday, September 08, 2014 3:14 PM |
| **To:** | Jay Weil |
| **Cc:** | wagstaffe@kerrwagstaffe.com; Bernstein, Debra; Rottner, Jason; Kenny, Mike; defoster@whitecase.com; alau@whitecase.com; Curran, Christopher; rick@saveri.com; LaurenRussell@tatp.com; Dan Birkhaeuser (dbirkhaeuser@bramsonplutzik.com); Jennifer Rosenberg (jrosenberg@bramsonplutzik.com); Anne Nardacci <anardacci@BSFLLP.com> (anardacci@BSFLLP.com); Phil Iovieno <piovieno@BSFLLP.com> (piovieno@BSFLLP.com); .CRT.Varanini, Emilio |
| **Subject:** | RE: In re CRT Antitrust Litigation (Motion to Compel against the Toshiba Defendants) |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Mr. Weil:

I write to advise Judge Walker that the Dell Plaintiffs and Toshiba Defendants have reached an agreement in principle to settle the case between them.  On August 28, the Dell Plaintiffs filed a motion to compel against the Toshiba Defendants.  As a result, Dell withdraws the pending motion against the Toshiba Defendants.

Best regards,
MDK

**Matthew D. Kent**
Senior Associate | **Alston & Bird LLP**
1201 W. Peachtree St. | Atlanta, Ga. 30309
404.881.7948 – *direct* | 404.253.8128 – *fax*
matthew.kent@alston.com

_____
**From:** Kent, Matthew
**To:** 'Jay Weil'
**Cc:** wagstaffe@kerrwagstaffe.com; Bernstein, Debra; Rottner, Jason; Kenny, Mike; defoster@whitecase.com; alau@whitecase.com; rick@saveri.com; LaurenRussell@tatp.com; Dan Birkhaeuser (dbirkhaeuser@bramsonplutzik.com); Jennifer Rosenberg (jrosenberg@bramsonplutzik.com); Anne Nardacci <anardacci@BSFLLP.com> (anardacci@BSFLLP.com); Phil Iovieno <piovieno@BSFLLP.com> (piovieno@BSFLLP.com); .CRT.Varanini, Emilio
**Subject:** In re CRT Antitrust Litigation (Motion to Compel against the Toshiba Defendants)

Mr. Weil:

Attached for submission to Judge Walker is the Dell Plaintiffs' Motion to Compel the Toshiba Defendants to Respond to certain interrogatories and request for production of documents.  A hard copy of the motion and supporting materials will be delivered to Judge Walker's office tomorrow.

Best regards,
MDK

**Matthew D. Kent**
Senior Associate | **Alston & Bird LLP**

1201 W. Peachtree St. | Atlanta, Ga. 30309
404.881.7948 – *direct* | 404.253.8128 – *fax*
matthew.kent@alston.com

<< File: Dell_CRT - Interviewees and Declarations Motion to Compel_1.PDF >>
<< File: Dell CRT - Kent Declaration (Toshiba MTC)_1.PDF >>
<< File: Exhibits A-G.zip >>

# EXHIBIT B

SOCIAL RESPONSIBILITY REVIEW 2012

# WHITE & CASE

**Annual Review 2012**

CHAIRMAN CONVERSATION     TRULY GLOBAL     NAVIGATING COMPLEXITY     CLIENT COMMITMENT     OUR YEAR

Toshiba exhibits its flat screen televisions in Yokohama, Japan.
Yoshikazu Tsuno, AFP/Getty Images

# The US$2.7 Billion Difference

Toshiba and White & Case Collaborate on Novel Strategy That Pays Off

"It was, as always, a nail biter waiting for the jury to return," said Christopher Curran, a Global Antitrust Practice lawyer, as he, a team of White & Case lawyers and our client Toshiba Corporation awaited the verdict in a civil antitrust class action trial in San Francisco in which Toshiba was the only remaining defendant. White & Case and Toshiba had worked together on the matter for more than five years, and jointly they had formulated a novel "reverse whipsaw" strategy of non-settlement that, if successful, would turn conventional antitrust class action litigation strategy on its head.

It turned out the strategy was well worth pursuing. After a six-week trial, the result of the jury's verdict was that Toshiba owed nothing. The jury awarded the class plaintiffs only a tiny fraction of the nearly US$2.7 billion in damages claimed—an amount entirely offset by law due to the US$443 million that the plaintiffs had already collected from other defendants who had settled earlier and opted not to go to trial.

"This success only could have resulted from the close ties and seamless working relationship that the Firm and Toshiba had established over a five-year period," said Curran. The civil litigation began when class plaintiffs—direct purchasers of thin-film transistor liquid crystal display (TFT-LCD) products—claimed damages of nearly US$2.7 billion based on alleged offshore conduct against Toshiba and 11 other defendants. During the five years of the US criminal investigation and subsequent civil actions, Toshiba and White & Case had forged a strong relationship, simultaneously working together in Mexico, Europe, Korea and Tokyo on related investigations—a truly global effort.

In December 2011, the US Department of Justice told Toshiba that no criminal charges would be brought against it, making it the only manufacturer under investigation not to be charged. However, the civil plaintiffs continued to pursue their claims, and Toshiba, which categorically disputes liability, was the only defendant that did not settle the direct purchaser class action.

It all culminated in the civil trial in the spring of 2012. White & Case and Toshiba shared office space in which a team of 20 Firm lawyers and various Toshiba representatives, including many in-house counsel, collaborated and worked together throughout the trial. Toshiba's top legal representative, Naoya Sakurai, stated: "We were very pleased with the efforts of the White & Case team and their close collaboration with us."

"All strategic steps were taken with the participation of the client literally working together with us in the same room," noted Curran. "As a result, Toshiba was comfortable with the strategy we had formulated together—and it paid off for them."

### THE "REVERSE WHIPSAW" TRIAL STRATEGY EXPLAINED

In antitrust class actions, US law puts each defendant on the hook for all damages suffered if it is proven that the defendant joined the alleged conspiracy. As a result, almost all previous major antitrust class actions have settled due to defendants' fears of the potentially extreme disadvantage of being "the last man standing" before a jury. In the Toshiba case, the other defendants' settlements totaled approximately US$443 million.

White & Case and Toshiba were confident that the plaintiffs' case against Toshiba lacked merit, but they also recognized that the San Francisco jury—at the height of the "Occupy Wall Street" fever—would likely have at least a few members determined to find against a large foreign corporation. As Toshiba's

> "All strategic steps were taken with the participation of the client literally working together in the same room with us."
>
> CHRISTOPHER CURRAN
> PARTNER



White & Case lawyers and Toshiba representatives meet in their shared office after closing arguments. Aside from Curran, the White & Case team was led by partners J. Mark Gidley, Martin Toto and John H. Chung.

**Benefits of the Trial Strategy**

Potential pre-trial damages for Toshiba

**US$2.7** BILLION

Amount paid out in settlements by other defendants

**US$443** MILLION

Amount owed by Toshiba after jury trial verdict

**US$0**

Julius Christensen put it: "We knew that the allegations against us lacked merit, but we fully appreciated the great risk and uncertainty of a jury trial in that environment."

Assessing the risks, White & Case and Toshiba pursued an unconventional course by aggressively going to trial as "the last man standing." Toshiba was confident that even if the jury compromised on liability, it could rely on a "reverse whipsaw" strategy that used the class plaintiffs' previous settlements against them. The novel idea was that the US$443 million in prior settlements cushioned Toshiba against any potentially adverse jury verdict, since prior settlements by law act as credits and are set off against the jury verdict. The plaintiffs needed to win trebled damages exceeding US$443 million in order to collect anything from Toshiba.

The jury's verdict awarding the plaintiffs US$87 million (US$261 million when trebled by law) was nearly US$200 million less than the US$443 million the class plaintiffs had already collected from defendants under the settlements. And even that verdict was vulnerable to legal challenge and ultimately vacated by the court. The result: Toshiba would not have to pay any damages.

Toshiba's successful approach upends the conventional wisdom counseling against taking a case to trial when all the other defendants have settled. By standing alone and using the settlements against the class plaintiffs, Toshiba's success gives defendants with real arguments of innocence comfort in fighting until the end.

**MORE ARTICLES**

   

© 2012 WHITE & CASE LLP

1  William A. Isaacson
   BOIES, SCHILLER & FLEXNER LLP
2  5301 Wisconsin Ave. NW, Suite 800
   Washington, D.C. 20015
3  Telephone: (202) 237-2727
   Facsimile: (202) 237-6131
4  Email: wisaacson@bsfllp.com

5
   Philip J. Iovieno
6  Anne M. Nardacci
   BOIES, SCHILLER & FLEXNER LLP
7  30 South Pearl Street, 11th Floor
   Albany, NY 12207
8  Telephone: (518) 434-0600
   Facsimile: (518) 434-0665
9  Email: piovieno@bsfllp.com
   Email: anardacci@bsfllp.com
10

11
   ***Counsel for P.C. Richard & Son Long Island Corporation,***
12 ***MARTA Cooperative of America, Inc., and ABC Appliance, Inc.***

13

14            **UNITED STATES DISTRICT COURT**

15           **NORTHERN DISTRICT OF CALIFORNIA**

               **SAN FRANCISCO DIVISION**
16

17 In re:  CATHODE RAY TUBE (CRT)          Master File No. 3:07-cv-05944-SC
   ANTITRUST LITIGATION
18                                         MDL No. 1917
   This Document Relates to:
19                                         **DECLARATION OF PHILIP J.
   *Electrograph Sys. v. Hitachi, Ltd.*, No. 11-cv-01656;   **IOVIENO IN SUPPORT DIRECT
20                                         ACTION PLAINTIFFS'
                                           OPPOSITION TO DEFENDANTS'
21 *Electrograph Sys., Inc. v. Technicolor SA*, No. 13-cv-   MOTION TO COMPEL
   05724;                                  SETTLEMENT AGREEMENTS**
22
   *Siegel v. Hitachi, Ltd.*, No. 11-cv-05502;
23
                                           Special Master: Hon. Vaughn R. Walker
24 *Siegel v. Technicolor SA*, No. 13-cv-05261;   (ret.)

25 *Best Buy Co. v. Hitachi, Ltd.*, No. 11-cv-05513;

26 *Best Buy Co. v. Technicolor SA*, No. 13-cv-05264;

27 *Interbond Corp. of Am. v. Hitachi, Ltd.*, No. 11-cv-
   06275;
28

*Interbond Corp. of Am. v. Technicolor SA.*, No. 13-cv-05727;

*Office Depot, Inc. v. Hitachi Ltd.*, No. 11-cv-06276;

*CompuCom Sys., Inc. v. Hitachi, Ltd.*, No. 11-cv-06396;

*P.C. Richard & Son Long Island Corp. v. Hitachi, Ltd.*, No. 12-cv-02648;

*P.C. Richard & Son Long Island Corp. v. Technicolor SA.*, No. 13-cv-05725;

*Schultze Agency Servs., LLC v. Hitachi, Ltd.*, No. 12-cv-02649;

*Tech Data Corp. v. Hitachi, Ltd.*, No. 13-cv-00157;

*Dell Inc. and Dell Products L.P., v. Hitachi, Ltd.,* No. 13-cv-02171;

*Sears, Roebuck and Co. and Kmart Corp. v. Technicolor SA*, No. 13-cv-05262;

*Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514;

*Sharp Elecs. Corp. v. Hitachi, Ltd.*, No. 13-cv-1173 SC;

*Sharp Elecs. Corp. v. Koninklijke Philips Elecs., N.V.*, No. 13-cv-2776 SC;

*ViewSonic Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 14-02510;

I, **PHILIP J. IOVIENO**, declare as follows:

1.      I am a partner with the law firm of Boies, Schiller & Flexner LLP, counsel for several of the Direct Action Plaintiffs ("DAPs") in this matter, including P.C. Richard & Son Long Island Corporation, MARTA Cooperative of America, Inc., and ABC Appliance, Inc.  I am licensed to practice law in the State of New York and am admitted to this Court *pro hac vice* pursuant to the Court's Pretrial Order No. 1 in the MDL Proceeding.

2

2.      I submit this declaration in support of the DAPs' Opposition to Defendants' Motion to Compel DAPs to Produce Settlement Agreements ("DAPs' Opposition").  I have personal knowledge of the facts stated herein, and I could and would competently testify thereto if called as a witness.

3.      Neither P.C. Richard & Son Long Island Corporation, MARTA Cooperative of America, Inc., nor ABC Appliance, Inc. have executed written settlement agreements with any Defendants as yet.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on February 2, 2015, in Albany, New York.


By:      /s/ *Philip J. Iovieno*
         Philip J. Iovieno

DECL. OF PHILIP J. IOVIENO IN SUPPORT                    MASTER FILE NO. 3:07-CV-05944-SC
OF DAPS' OPPOSITION TO MOTION TO COMPEL                  MDL NO. 1917