# Exhibit E

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
415.434.9100 main
415.434.3947 fax
www.sheppardmullin.com

415.774.3208 direct
tcunningham@sheppardmullin.com

File Number: 08Z8-134298

February 9, 2015

**VIA E-MAIL AND HAND DELIVERY**

Hon. Vaughn R. Walker (Ret.)
Law Office - Vaughn R. Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA  94111-2228
E-Mail: Jay.weil@fedarb.com

Re:   <u>In re Cathode Ray Tube (CRT) Antitrust Litigation, No. 07-CV-5944, MDL No. 1917 (N.D. Cal.): Defendants' Reply in Support of Motion to Compel DAPs to Produce Settlement Agreements</u>

Dear Judge Walker:

I write on behalf of moving Defendants ("Defendants") to submit this reply in support of the motion to compel Direct Action Plaintiffs ("DAPs") to produce settlement agreements ("Motion").

Defendants' Motion set forth extensive authority, including many cases from within this district, ordering pre-trial production of settlement agreements.  Those cases hold that settlement agreements are relevant to set-off and witness bias issues, and describe in detail how pre-trial production enables defendants to assess potential liability and therefore promotes further settlement.  DAPs' Opposition wholly ignores this authority, and relies instead on inapposite, out-of-circuit cases, some of which actually support Defendants' position.  DAPs' argument that the requested production would somehow hinder further settlement defies common sense; it is precisely the "wrongheaded" view commonly rejected by courts.

DAPs' other arguments are also not persuasive.  Although they argue that Defendants' Motion is too late, DAPs contradict this position by arguing that the Motion is also premature.  DAPs also fail to address specific language in the local rules permitting post-deadline discovery motions for good cause.  And the compromise proposed in DAPs' Opposition is a non-starter, because it would deprive Defendants of the crucial information needed to assess potential liability and place them on equal footing with DAPs in future settlement negotiation: the settlement amounts.

1.   **<u>Defendants' Motion is Timely.</u>**

According to DAPs, Defendants' Motion is both too early (Opp'n at 5-6) and too late (Opp'n at 1-2).  These inconsistent positions highlight the fundamental flaw in DAPs' timing

# SheppardMullin

Hon. Vaughn R. Walker (Ret.)
February 9, 2015
Page 2

arguments: nowhere do they clearly state when, in their view, Defendants should move to compel these settlement agreements. Their only clear position is that now is not the time.

DAPs chide Defendants for not filing a blanket motion to compel all settlements before the discovery deadline. Opp'n at 2. But Judge Conti was clear that such a motion would not be ripe as to DAPs who had not yet settled. DAPs claim that Defendants knew of settlements before the discovery deadline, but the single email they cite in support of this argument was sent only to Mr. Weil and counsel for Plaintiffs and Toshiba (the settling Defendant). Bernstein Declaration Ex. A. It does not show, as DAPs claim, that "Defendants **knew of settlement agreements prior to the … motion to compel deadline**." Opp'n at 2 (emphasis in original). Moreover, the email references only "an agreement in principle" to settle Dell's claims, not a discoverable settlement agreement. DAPs fail to explain how, in their view, Defendants could possibly discover settlement agreements created after the deadline. According to DAPs, apparently, such agreements are forever shielded from discovery.

In reality, Defendants were not required to guess which DAPs settled their claims before the deadline, or to perform the empty gesture of filing a moot motion, in order to preserve the right to file this Motion. The local rules expressly permit motions to compel discovery requests after the deadline, upon showing of good cause. N.D. Cal. Civ. L.R. 37-3. Good cause exists here, as Defendants demonstrated in the Motion. Mot. at 5; *see also Gelfand v. N. Am. Capacity Ins. Co.*, 2013 WL 10135868, at *1 (N.D. Cal. Sept. 17, 2013) (finding good cause to grant motion to compel filed after discovery deadline where party served document request before the deadline, but learned that a specific responsive document existed only after). By failing to address this good-cause argument in their Opposition, DAPs concede the issue. *See Silva v. U.S. Bancorp*, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) (failure to address argument in opposition concedes issue); *Tatum v. Schwartz*, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007) (same).

2.    **DAPs Ignore Ample Authority Finding Settlement Agreements Relevant to Set-Off and Bias, and Rely on Inapposite, Out-Of-Circuit Authority to Argue Otherwise.**

DAPs also fail to address the nine opinions from this district, cited in Defendants' opening brief, finding settlement material discoverable, including several cases specifically finding settlements relevant to issues of set-off and witness bias. DAPs instead rely on cases from outside this district that impose heightened requirements on parties seeking to discover settlement agreements. *See, e.g., Dutton v. Todd Shipyards Corp.*, 2009 U.S. Dist. LEXIS 107936, at *2-3 (E.D. Penn. Nov. 17, 2009) (requiring party to make a "particularized showing" that settlement agreements are relevant and "likely" to lead to admissible evidence). But courts within this district have rejected this heightened standard, employing instead the Ninth Circuit's policy favoring "broad discovery" to find settlement agreements discoverable. *See, e.g., Vondersaar v. Starbucks Corp.*, 2013 WL 1915746, at *4 (N.D. Cal. May 8, 2013); *see also Bennett v. La Pere*, 112 F.R.D. 136, 139 (D.R.I. 1986) ("particularized showing" requirement "seems out of kilter with the spirit and philosophy of the Federal Rules").

DAPs' argument that "[s]et-off becomes relevant" only after a jury verdict, Opp'n at 3, conflates relevance with admissibility. A document is either relevant to a claim or defense, or it

is not. The time to assess relevance is now, and there is no question that Defendants have asserted set-off as a defense. *See, e.g.*, SDI Defendants' Answer to Dell Plaintiffs' First Amended Complaint (Dkt. No. 1993), at 37. Several courts within this district, employing the correct standard, have found settlement agreements relevant to set-off issues and ordered them produced before trial. Mot. at 3 (citing cases). DAPs' own case law is in accord. *See, e.g., In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 839 (S.D. Tex. 2009) ("settlement amounts by other defendants allegedly responsible for the same injury is relevant to determine any offset a defendant might have ….").

DAPs do not dispute that settlement agreements are relevant to show witness bias. Instead, DAPs claim that Defendants' argument based on witness bias is "insincere[]" because Defendants fail to provide "further specifics" or predict which DAPs will proceed to trial. Opp'n at 5. But the standard for discovery is relevance, not sincerety. And here again, DAPs' own cases recognize that settlement agreements can be relevant to witness bias. *See, e.g., Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 553 (S.D. Ind. 1999); *see also* Mot. at 3 (citing cases). Defendants need not predict which DAPs will proceed to trial in order to obtain discovery from them; Defendants are entitled to discover relevant documents from any DAP remaining in the case. And Defendants cannot detail precisely how particular settlement agreements will be used to prove bias without access to the documents themselves. *See Bennett*, 112 F.R.D. at 139 ("no satisfactory way" for defendant to assess how settlement will be used to prove bias "unless it gains discovery access to the settlement documents.").

The potential for DAPs' settlement agreements to show witness bias differentiates this dispute from many cases cited by DAPs that expressly find that bias is not at issue, usually because the responding party stated that no potentially impeachable witness would testify.[1] DAPs make no such concession, making these cases inapposite.

3.  **DAPs' Argument that Production of Settlement Agreements Would Hinder Further Settlement Contradicts Experience, Common Sense and Extensive Authority.**

Defendants have already described how the requested production would facilitate further settlement, providing good cause to grant the Motion. Mot. at 3-5; Fed. R. Civ. P. 26(b)(1) ("for good cause" court may permit discovery of information "relevant to the subject matter of the action").

In response, DAPs argue that settlement agreements are not relevant to the subject matter of the action, Opp'n at 4, but that argument is premised on the same out-of-circuit authority employing the same heightened standard of relevance that courts in this district have rejected. *See* p. 2, *supra*. In the Ninth Circuit, "[r]elevance for purposes of discovery is defined

---

[1] *Wagner v. Circle W Mastiffs*, 2013 WL 4479070, at *1 (S.D. Ohio Aug. 19, 2013); *In re Flat Glass Antitrust Litig.*, 2013 WL 1703864, at *1 (W.D. Penn. April 19, 2013); *In re New York Cnty. Data Entry Worker Prod. Liability Litig.*, 616 N.Y.S. 2d 424, 427 (N.Y. Sup. Ct. 1994); *see also Enron*, 623 F. Supp. 2d at 839 (court examined settlement agreements *in camera* to ensure that no provisions related to bias issues); *King County, Wash. v. IKB Deutsche Industriebank AG*, 2012 WL 3553775, at *3 (S.D.N.Y. Aug. 17, 2012) (same).

very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998). "Information is relevant to the subject matter **if it might reasonably assist a party in evaluating the case, preparing for trial or facilitating settlement**." *Id*. (quoting *Hickman v. Taylor*, 329 U.S. 495, 506-507 (1947)) (internal quotations omitted and emphasis added). There is no question that DAPs' settlement agreements fit this broad description.

DAPs also argue that production of settlement agreements will somehow *hinder* further settlement, because: (1) some parties have already settled claims in this case; (2) a single defendant did not settle its claims with a single opt-out plaintiff in *LCD*; and (3) DAPs' "collective experience" indicates that production of settlement agreements "inhibits settlement." Opp'n at 4-5. But the handful of settlements already achieved in this case says nothing about whether the requested production would promote further settlement. Similarly, DAPs' focus on Toshiba's trial against a single plaintiff ignores the multitude of settlements reached by all parties in that litigation, which were greatly facilitated by the court's repeated opinions compelling disclosure of settlement agreements. DAPs' vague reference to their "collective experience" is unsupported and should be disregarded.

The only authority DAPs site to support their argument that production of settlement agreements would have a "substantial chilling effect" on future settlements is an opinion by a New York state trial court, interpreting state-court rules. Opp'n at 5, quoting *In re New York Cnty.*, 616 N.Y.S. at 428. It has no persuasive value, particularly given the abundance of authority finding good cause to produce settlement agreements under federal rules because they facilitate, rather than hinder, future settlement. Mot. at 4-5.

4. **DAPs Provide No Valid Reason to Justify Their Refusal To Produce Settlement Agreements Now.**

In addition to relevance and timeliness, DAPs assert two additional arguments, neither of them persuasive. First, DAPs propose to provide limited settlement information in lieu of the agreements themselves. Opp'n at 3. This is a non-starter because it would fail to disclose to Defendants the amount of each settlement. This is precisely the information that Defendants need to assess offset and potential liability, and precisely the information that courts have held is a catalyst to further settlement. *See, e.g., Bennett*, 112 F.R.D. at 140 ("**full divulgence of the terms**" of settlements will assist further negotiation) (emphasis added); Special Master's Order re Hannstar Display Corp.'s Mot. to Compel Best Buy to Respond Further to Document Request No. 45 (Cunningham Decl. Ex. R), at 4 ("the desirability of promoting settlements will be enhanced if non-settling defendants are able to calculate the amount of offsets and, hence, their potential liability"). Moreover, DAPs' proposed compromise would preclude Defendants from learning specifics about cooperation provisions and other potentially relevant details. *See, e.g., Bennett*, 112 F.R.D. at 139 (remaining defendants cannot assess how a settlement might affect liability or witness credibility without access to the documents themselves).

Second, DAPs argue that Your Honor should deny the Motion as to DAPs that are not going to trial in March 2015 (presumably without prejudice to re-filing at some unspecified later time). But the settlement agreements are relevant now, and DAPs provide no good reason to avoid producing them now. Any delay would only further deprive Defendants of the tools

# SheppardMullin

Hon. Vaughn R. Walker (Ret.)
February 9, 2015
Page 5

needed to assess their case and bargain fairly with DAPs, ultimately prolonging the litigation and frustrating the legitimate goals of discovery. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (goal of discovery is "to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute[s]."); Fed. R. Civ. P. 1.

* * *

DAPs fail to meet their burden of justifying their refusal to produce settlement agreements. As a result, and for the reasons described above and in Defendants' Motion, Defendants request that the Special Master grant Defendants' Motion to compel settlement agreements in its entirety.

Respectfully submitted,

*/s/ Tyler M. Cunningham*

Tyler M. Cunningham
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:436301747.1

cc: Debra Bernstein (via email only)
   Matthew Kent (via email only)
   Emilio Varanini (via email only)
   Philip Iovieno (via email only)
   Guido Saveri (via email only)
   Mario Alioto (via email only)
   Defense counsel (via email only)