# EXHIBIT A

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued May 11, 2015　　　　　Decided August 11, 2015

No. 14-5319

IN RE: KELLOGG BROWN & ROOT, INC., ET AL.,
PETITIONERS

———

On Petition for Writ of Mandamus
(1:05-cv-1276)

———

*John P. Elwood* argued the cause for petitioners.  With
him on the petition for writ of mandamus and the reply were
*John M. Faust*, *Craig D. Margolis*, *Jeremy C. Marwell*, and
*Joshua S. Johnson.*

*Michael D. Kohn* argued the cause for respondent.  With
him on the brief were *Stephen M. Kohn* and *David K.
Colapinto.*

Before: TATEL and WILKINS, *Circuit Judges*, and
SENTELLE, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*:  In a prior petition for writ of
mandamus on this case, we noted that "[m]ore than three
decades ago, the Supreme Court held that the attorney-client
privilege protects confidential employee communications
made during a business's internal investigation led by
company lawyers."  *In re Kellogg Brown & Root, Inc.*, 756

2

F.3d 754, 756 (D.C. Cir. 2014) ("*In re KBR*") (citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)).  Accordingly, we granted the writ and vacated the District Court's order to produce key documents from such an investigation.  *Id.*  We allowed, however, that the District Court might consider "timely asserted other arguments for why these documents are not covered by either the attorney-client privilege or the work-product protection."  *Id.* at 764.

In a series of orders on which Petitioner Kellogg Brown & Root ("KBR") now seeks a second writ of mandamus, the District Court found that the same contested documents should be turned over in discovery.  We agree that these challenged decisions suffer from the same fundamental flaw: They run contrary to precedent by injecting uncertainty into application of attorney-client privilege and work product protection to internal investigations.  *See Swidler & Berlin v. United States*, 524 U.S. 399, 409 (1998); *Upjohn*, 449 U.S. at 393; *In re KBR*, 756 F.3d at 763.  Because we find the District Court's orders irreconcilable with binding precedent, we grant the writ and vacate the orders.

## I.

We previously have recounted the essential background of this case as follows:

> Harry Barko worked for KBR, a defense contractor. In 2005, he filed a False Claims Act complaint against KBR and KBR-related corporate entities, whom we will collectively refer to as KBR.  In essence, Barko alleged that KBR and certain subcontractors defrauded the U.S. Government by inflating costs and accepting kickbacks while administering military contracts in wartime Iraq. During discovery, Barko sought documents related to

3

KBR's prior internal investigation into the alleged fraud. KBR had conducted that internal investigation pursuant to its Code of Business Conduct, which is overseen by the company's Law Department.

KBR argued that the internal investigation had been conducted for the purpose of obtaining legal advice and that the internal investigation documents therefore were protected by the attorney-client privilege. Barko responded that the internal investigation documents were unprivileged business records that he was entitled to discover. *See generally* FED. R. CIV. P. 26(b)(1).

After reviewing the disputed documents in camera, the District Court determined that the attorney-client privilege protection did not apply because, among other reasons, KBR had not shown that "the communication would not have been made 'but for' the fact that legal advice was sought." *United States ex rel. Barko v. Halliburton Co.*, 37 F. Supp. 3d 1, 5 (D.D.C. 2014) (quoting *United States v. ISS Marine Services, Inc.*, 905 F. Supp. 2d 121, 128 (D.D.C. 2012)). KBR's internal investigation, the court concluded, was "undertaken pursuant to regulatory law and corporate policy rather than for the purpose of obtaining legal advice." *Id.*

*In re KBR*, 756 F.3d at 756.

KBR petitioned for and we granted a writ of mandamus, holding that the privilege ruling was "materially indistinguishable" from the Supreme Court's contrary holding in *Upjohn*. *Id.* at 757. We declined a request to reassign the case to a different district judge. *Id.* at 764. And we expressly allowed that the District Court might entertain timely arguments for why the privilege should not attach to

4

these documents (that is, arguments other than that they were not prepared primarily for the purposes of seeking legal advice).  *Id*. at 764.  KBR now seeks our intervention on the District Court's determinations that the attorney-client privilege and work product protection were impliedly waived for these same documents.

KBR's purported implied waiver runs to a February 2014 deposition of Christopher Heinrich, KBR Vice President (Legal), on behalf of KBR.  *See* FED. R. CIV. P. 30(b)(6) (requiring a corporation to "designate one or more officers" or other persons to testify "about information known or reasonably available to the organization.").  Among the subjects that Barko directed KBR to produce a representative to testify on was "Topic Q," defined as:

> Any investigation or inquiry, internal or external, formal or informal, of [the KBR employee and subcontractor at the center of the alleged fraud] or any of the matters identified in [above-listed topics].  The scope shall include knowledge of everyone who participated in the investigation.

J.A. 257.

KBR's litigation counsel offered a "preliminary statement" at the outset of the deposition that KBR was producing Heinrich as the company's representative on four noticed topics, including Topic Q, but was doing so "subject to the company's claims of attorney-client privilege" and work product protection.  J.A. 118.  In answer to a question from Barko's attorney, Heinrich testified he had in preparation for the deposition reviewed the now-disputed documents related to KBR's internal investigation (the Code of Business Conduct documents or "COBC documents").

5

J.A. 120. Throughout the examination, KBR's attorney instructed Heinrich not to answer questions about the contents of the internal investigation on the basis of attorney-client privilege and work product protection. *See, e.g.*, J.A. 146.

After Barko's lawyer completed his examination of Heinrich, KBR's litigation counsel conducted a cross-examination. He explained that Heinrich had been asked "several questions designed to try to determine whether or not the Code of Business Conduct investigation is privileged, and I am going to ask questions establishing that they are." J.A. 147. Responding to the questions that followed, Heinrich testified that KBR had a contractual reporting duty pursuant to the Anti-Kickback Act to notify the Department of Defense if it had reason to believe that a violation of the Act had occurred. J.A. 149. Heinrich testified that KBR adhered to that obligation and had made disclosures pursuant to the same duty in other instances. J.A. 150. And Heinrich explained that even when KBR has made a notification to the Department as required by a contract, it has never provided an internal investigation itself to the Department because it has always treated the investigation as subject to attorney-client privilege. *Id.*

Five days after Heinrich's deposition, KBR moved for summary judgment. In a footnote to the introduction of its brief, KBR stated:

> KBR has an internal Code of Business Conduct ("COBC") investigative mechanism that provides a means of identifying any potentially illegal activities within the company. When a COBC investigation reveals reasonable grounds to believe that a violation of 41 U.S.C. §§ 51-58 (the "Anti-Kickback Act") may have occurred requiring disclosure to the government under

6

FAR 52.203-7, KBR makes such disclosures.  Stmt. ¶ 27. KBR has made reports to the Government when it had reasonable grounds to believe that a violation of the Anti-Kickback Act occurred.  *Id.*  KBR intends for these investigations to be protected by the attorney-client privilege and attorney work product privilege (indeed, they are not even given to the Government as part of disclosures), but has not asserted privilege over the fact that such investigations occurred, or the fact of whether KBR made a disclosure to the Government based on the investigation.  Therefore, with respect to the allegations raised by Mr. Barko, KBR represents that KBR did perform COBC investigations related to [the KBR subcontractor and employee at the center of the fraud alleged by Barko], and made no reports to the Government following those investigations.  *Id.*

KBR Defendants' Motion for Summary Judgment at 4 n.5, *United States ex rel. Barko v. Halliburton Co.*, No. 05-cv-1276 (D.D.C. Feb. 10, 2014), ECF No. 136.

On November 20, 2014, the District Court issued an opinion and order determining that "KBR's filings affirmatively use the COBC contents and create an implied waiver" because "KBR has actively sought a positive inference in its favor based on what KBR claims the documents show." J.A. 24.  The opinion explained:

KBR carefully used the inference that the COBC documents do not support any reasonable belief that fraud or kickbacks may have occurred.  KBR has, on multiple occasions, advanced a chain of reasoning.  First, whenever KBR has reasonable grounds to believe that a kickback or fraud had occurred, its contracts and federal regulation required it to report the possible violation.

7

> Second, KBR abides by this obligation and reports possible violations.  Third, KBR investigated the alleged kickbacks that are part of Barko's complaint.  Fourth, after the investigation of the allegations in this case, KBR made no report to the Government about an alleged kickback or fraud.

J.A. 18.  Although KBR argued that it should be permitted to amend its pleadings to strike the sections the District Court found created a waiver, the District Court rejected the request to vacate its production order unless KBR elected to default on the entire suit.  J.A. 23-24.

On December 17, 2014, the District Court issued a separate opinion and order compelling production of parts of the COBC documents on the alternative basis that they "are discoverable fact work product and Barko shows substantial need."  *United States ex rel. Barko v. Halliburton Co.*, No. 05-cv-1276, 2014 WL 7212881, at *2 (D.D.C. Dec. 17, 2014).[1]

KBR filed this Petition for Writ of Mandamus with our Court on December 19, 2014.  We granted KBR's motions

---

[1] The District Court issued multiple opinions and orders on each of November 20 and December 17, 2014.  To avoid confusion, the November 20 order challenged by KBR and to which we refer in this Opinion is #204 on the District Court docket.  A separate opinion and order, #205, issued the same day granting in part and denying in part KBR's motion for a protective order.  The December 17 order challenged by KBR and to which we refer in this Opinion is #228 on the District Court docket (reported as *United States ex rel. Barko v. Halliburton Co.*, No. 05-cv-1276, 2014 WL 7212881 (D.D.C. Dec. 17, 2014)).  A separate opinion and order, #227, which denied reconsideration of the November 20 order, issued the same day and is also challenged in this Petition.

8

first for an administrative stay and then for an emergency stay, and we now consider whether to grant the Petition.

Because mandamus is an extraordinary remedy, we ask first if the challenged District Court orders constituted error and then, where the answer is affirmative, "whether that error is the kind that justifies mandamus." *In re KBR*, 756 F.3d at 757 (citing *Cheney v. U.S. District Court*, 542 U.S. 367, 380-81 (2004)); *see also* 28 U.S.C. § 1651 (All Writs Act) (providing statutory basis for writ of mandamus).

## II.

The District Court's November 20 opinion contained two rulings at issue in this Petition.

First, the District Court concluded that the COBC documents must be produced under Federal Rule of Evidence 612 on the theory that KBR waived attorney-client privilege and work product protection when Heinrich reviewed the documents in preparation for his deposition.

Second, the District Court concluded that KBR waived attorney-client privilege and work product protection for the COBC documents under the doctrine of "at issue" waiver.

Both rulings were in error for the reasons that follow.

## A.

The Federal Rules of Civil Procedure provide for a party to name an organization as a deponent for oral examination. FED. R. CIV. P. 30(b)(6). The party seeking testimony must "describe with reasonable particularity the matters for examination," and the named organization is then required to

9

designate a representative, who "must testify about information known or reasonably available to the organization." *Id.* Pursuant to this provision, Barko demanded that KBR produce a representative prepared to testify about, among other subjects, Topic Q – that is, any internal investigation relating to his allegations. KBR designated Heinrich as its representative on this topic.

At Heinrich's deposition, he stated that he had reviewed the COBC documents in preparation for his testimony. J.A. 120. Barko thereafter sought disclosure of the COBC documents under Federal Rule of Evidence 612, which provides that where a witness has used a writing to refresh memory before testifying, the adverse party is entitled to have it produced and to introduce into evidence any portion that relates to the witness's testimony, "if the court decides that justice requires the party to have those options." Fed. R. Evid. 612(a)(2).

To make its decision, the District Court engaged in a balancing test. J.A. 25. It identified several factors supporting disclosure and several factors running against disclosure.[2] And it concluded that "fairness considerations

---

[2] The District Court explained its balancing as follows:

> [S]everal [factors] support disclosure. The majority of the COBC documents are investigatory statements and summaries of those statements. Also, major discrepancies exist between Heinrich's testimony and the contents of the writings Heinrich had reviewed. Third, Heinrich necessarily relied upon the COBC documents for his testimony because he had no personal, first-hand knowledge of whether fraud or kickbacks occurred, even though he supervised KBR's COBC investigations and reporting.

10

support disclosure" based on this "context-specific determination about the fairness of the proceedings and whether withholding the documents is consistent with the purposes of attorney-client privilege." *Id.*

The balancing test was inappropriate in the first instance. Rule 612 applies only where a witness "uses a writing to refresh memory." FED. R. EVID. 612(a). Thus, "even if the witness consults a writing *while testifying*, the adverse party is not entitled to see it unless the writing influenced the witness's testimony." 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 612.04(2)(b)(i) (2d ed. 1997) (emphasis added); *see, e.g.*, *Sporck. v. Peil*, 759 F.2d 312, 318-19 (3d Cir. 1985) (granting mandamus to vacate a Rule 612(a)(2) production order where there had been no witness admission that his answers to "specific areas of questioning were informed by documents he had reviewed"). It cannot be the case that just stating the documents were privileged constitutes a testimonial reliance on their contents; else, attorney-client privilege and work product production would mean nothing at all in that their mere invocation would entitle an adversary to production of the privileged or protected materials.

Further, even if the balancing test had been appropriate, the District Court's conclusions were precluded by *Upjohn*. Courts have divided on how to reconcile Rule 612 balancing with attorney-client privilege and work product protection. *See generally Barrer v. Women's Nat'l Bank*, 96 F.R.D. 202, 204 (D.D.C. 1982) (describing conflicting authority on

_____

Several factors do not support disclosure under Rule 612. Heinrich examined the COBC documents before, but not at[,] the Rule 30(b)(6) deposition. And, Barko arguably has some ability to otherwise discover the evidence. J.A. 26.

11

interaction of Rule 612 and claims of attorney-client privilege or work product protection); *cf.* H.R. REP. NO. 93-650, at 13 (1973) ("The Committee intends that nothing in [Rule 612] be construed as barring the assertion of a privilege with respect to writings used by a witness to refresh his memory."). But the District Court's balancing would allow the attorney-client privilege and work product protection covering internal investigations to be defeated routinely by a counter-party noticing a deposition on the topic of the privileged nature of the internal investigation. *Upjohn* teaches that "[a]n uncertain privilege, or one which purports to be certain but results in widely varying application by the courts, is little better than no privilege at all." 449 U.S. at 393. The District Court's ruling, therefore, runs counter to *Upjohn*.

In this case, Barko noticed the deposition to cover the topic of the COBC investigation itself, as distinguished from the events that were the subject of the investigation. Both parties told us that their understanding at the time of the deposition was that Barko intended to examine whether and to what extent the COBC investigation was privileged. To prepare adequately for the deposition, Heinrich had no choice but to review documents related to the COBC investigation.

At oral argument on this Petition, Barko took the absurd position that KBR's mistake was having Heinrich personally review the COBC documents rather than having someone give him a summary. Barko asserted that in order to avoid privilege waiver KBR should have produced a Rule 30(b)(6) representative with only second- or third-hand knowledge of the investigation rather than first-hand knowledge. This makes no sense. Such a rule would encourage entities to provide less knowledgeable corporate representatives for deposition, thus defeating the purpose of civil discovery to establish "the fullest possible knowledge of the issues and

12

facts before trial." *Societe Internationale Pour Participations Industrielles et Commerciales S.A. v. Brownell*, 225 F.2d 532, 541 (D.C. Cir. 1955) (internal quotation marks omitted).

Barko cannot "overcome the privilege by putting [the COBC investigation] in issue" at the deposition, *Koch v. Cox*, 489 F.3d 384, 391 (D.C. Cir. 2007), and then demanding under Rule 612 to see the investigatory documents the witness used to prepare. Allowing privilege and protection to be so easily defeated would defy "reason and experience," FED. R. EVID. 501, and "potentially upend certain settled understandings and practices" about the protections for such investigations, *In re KBR*, 756 F.3d at 762.

In sum, the District Court's Rule 612 ground for its production order was clear error because there was no basis for the fairness balancing test it conducted and, even had there been, the test failed to give due weight to the privilege and protection attached to the internal investigation materials.

## B.

The District Court also found that KBR had waived attorney-client privilege and work product protection by placing the COBC documents "at issue." Such waivers are certainly possible: "Under the common-law doctrine of implied waiver, the attorney-client privilege is waived when the client places otherwise privileged matters in controversy." *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997) (citing 6 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.49(5) (3d ed. 1997)).

First, a prefatory note: It is hornbook law that "[w]aiver of the [attorney-client] privilege *should* always be analyzed distinctly from waiver of work product." 2 EDNA SELAN

13

EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE 1027 (5th ed. 2007) (emphasis added); *see also United States v. Deloitte LLP*, 610 F.3d 129, 139-40 (D.C. Cir. 2010) (explaining that different waiver rules follow from different purposes of attorney-client privilege and work product protection). But the District Court proceeded based on KBR's position that, "[a]s relevant here, the waiver analysis for both [attorney-client privilege and work product protection] is the same." J.A. 9 n.20. So must we. Without accepting KBR's position as a statement of the law, we treat it as a boundary for the arguments we consider in this Petition. *See Cheney*, 542 U.S. at 381 (stating that Petitioner has "the burden of showing that [its] right to issuance of the writ is clear and indisputable") (internal quotation marks omitted). *But see* 2 THOMAS E. SPAHN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE: A PRACTITIONER'S GUIDE 434 (2007) ("[L]ooking at only one or the other protection is short-sighted and might result in litigation disaster.").

We have explained – and the District Court noted our precedent – that a party may not use privilege "as a tool for manipulation of the truth-seeking process." *In re Sealed Case*, 676 F.2d 793, 807 (D.C. Cir. 1982) ("*Sealed Case (general counsel's files)*"). As such, a party asserting attorney-client privilege "'cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.'" *Id.* (quoting 8 JOHN H. WIGMORE & JOHN T. MCNAUGHTON, EVIDENCE IN TRIALS AT COMMON LAW § 2327 (1961); *see also Clark v. United States*, 289 U.S. 1, 13 (1933) ("The privilege takes flight if the relation is abused."); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword."). At the same time, we have held that a "general assertion lacking substantive content that one's

14

attorney has examined a certain matter is not sufficient to waive the attorney-client privilege." *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989).

The District Court found that "KBR injected the COBC contents into the litigation by itself soliciting Heinrich's Rule 30(b)(6) testimony." J.A. 22. It noted that excerpts from this testimony disclosing the fact of the COBC investigations and KBR's reporting duties under Defense Department contracts were attached to KBR's motion for summary judgment and that KBR referenced deposition language in its Statement of Material Facts as to Which There Is No Genuine Dispute, required by Local Civil Rule of Procedure 7(h)(1). J.A. 12, 16. And, KBR discussed the COBC "investigative mechanism" in its memorandum in support of summary judgment (in a footnote quoted in full in Part I of the body of this Opinion). J.A. 16-17. All this, in the view of the District Court, added up to a "message" that the COBC reports "contain no reasonable grounds to believe a kickback occurred." J.A. 18. Thus, it concluded that KBR created an implied waiver by "actively" seeking "a positive inference in its favor based on what KBR claims the documents show." J.A. 24. The District Court also denied KBR leave to amend its pleadings to strike the sections that the District Court interpreted as waiving the privilege and protection. J.A. 23.

To the extent the District Court relied on Heinrich's deposition testimony or the statement of undisputed material facts, we think that – as a matter of logic – neither could possibly give rise to an inference that places the contents of the deposition at issue. The deposition transcript is simply a record of what was said, not itself an argument. The Rule 7(h)(1) statement is a required companion filing to a summary judgment motion submitting "material facts as to which the moving party contends there is no genuine issue." LOCAL

15

Cɪᴠ. R. 7(h)(1).  The opposing party has the opportunity to respond to each asserted fact with a contention that there is a "genuine issue necessary to be litigated," but there are no inferences to be made and none to be contested in these statements alone.  *Id.*  This is not to say that deposition testimony or a Rule 7(h)(1) statement can never create a waiver of attorney-client privilege or work product protection.  By making partial *disclosures* of privileged information, they surely can.  But the deposition transcript and Rule 7(h)(1) statements cannot themselves give rise to inferences that place privileged materials "at issue."  *See In re Sims*, 534 F.3d 117, 137 (2d Cir. 2008) (holding that privilege waiver analysis based on deposition testimony in civil action must recognize that the testimony "might never come to the attention of any decisionmaker").

The reference to the COBC investigation in the memorandum in support of summary judgment presents what is at first glance a more difficult question.  By stating that KBR performed a COBC investigation and that, afterward, KBR did not report any wrongdoing to the Department of Defense, a factfinder could infer that the investigation found no wrongdoing.  The District Court concluded that KBR had asked it to draw an "unavoidable" inference, J.A. 18, by placing the footnote at the end of a sentence calling Barko's claims "baseless."  We disagree that such an inference was unavoidable, because an alternative inference – presumably, the one Barko would ask a fact-finder to draw – is that the investigation showed wrongdoing but KBR nonetheless made no report to the government.

Pursuant to the acquisition regulations under which it contracted, KBR was required to "have in place and follow reasonable procedures designed to prevent and detect possible violations [of the Anti-Kickback statute]," to make a written

16

report when it "ha[d] reasonable grounds to believe that a violation . . . may have occurred," and to "cooperate fully with any Federal agency investigating a possible violation." 48 CFR §52.203-7(c)(1)-(3).   KBR has represented without dispute that it was expressly permitted to retain privilege as to the contents of its investigations, which is not unusual in federal government compliance programs.   Department of Justice policy, for instance, provides that "waiving the attorney-client and work product protections has never been a prerequisite under the Department's prosecution guidelines for a corporation to be viewed as cooperative," U.S. Attorney's Manual § 9-28.710, and that, with respect to internal investigations, "[a] corporation need not disclose, and prosecutors may not request, the disclosure of such attorney work product as a condition for the corporation's eligibility to receive cooperation credit," *id*. § 9-28.720(b).   Under such compliance programs, companies know that their disclosures may receive greater credence if they choose to buttress them with otherwise-privileged information.   But companies and the government can, and often do, structure legitimate compliance and reporting programs that do not involve waiving privilege.   Where companies choose not to waive privilege, "[t]hey will, of course, bear the risk that their reports will not be accepted as full disclosures."   *Sealed Case (general counsel's files)*, 676 F.2d at 823.

Read in this context, footnote 5 in KBR's summary judgment motion is essentially a recitation of the terms of its deal with the government, including the express reservation of attorney-client privilege and work product protection.   There was certainly no *actual* disclosure of opinion work product (the conclusions of the COBC investigation) in the footnote. Instead, the District Court found that KBR *impliedly* disclosed opinion work product, that is, "the substantive conclusion of its COBC investigations."   J.A. 21.   In *Sealed Case (general*

17

*counsel's files)*, we found implied waiver primarily because waiver was consistent with holding the company to the terms of its bargain.  Here, holding KBR to the terms of its bargain would mean deciding that "[KBR's] reports will not be accepted as full disclosures," 676 F.2d at 823, rather than inferring that KBR was intending to say that its non-report to the government should be given weight and credibility as a finding of no wrongdoing.

There's the rub:  Where KBR neither directly stated that the COBC investigation had revealed no wrongdoing nor sought any specific relief because of the results of the investigation, KBR has not "based a claim or defense upon the attorney's advice."  *Koch*, 489 F.3d at 390; *see also White*, 887 F.2d at 271.  As we explained in *Sealed Case (general counsel's files)*:

> Corporations may protect their privileges without manipulation simply by being forthright with their regulators and identifying material as to which they claim privilege at the time they submit their voluntary disclosure reports.  They will, of course, bear the risk that their reports will not be accepted as full disclosures.  *But if they choose to make a pretense of unconditional disclosure*, they bear another risk – that we will imply a waiver of privilege with respect to any material necessary for a fair evaluation of their disclosures.

676 F.2d at 823 (emphasis added).   Here, there was no pretense of unconditional disclosure.

Notwithstanding all this, KBR's summary judgment motion footnote said not only that it conducted a COBC investigation relating to Barko's claims and did not report any wrongdoing to the government, but also that when it discovers

18

wrongdoing during investigations, "KBR makes such disclosures." KBR Defendants' Motion for Summary Judgment at 4 n.5, ECF No. 136. The District Court's order turned on this point and it is undoubtedly the highest hurdle to our conclusion that KBR did not waive the privilege.

But we think the context of the whole passage is essential to our clear error conclusion. First, the footnote constitutes a recitation of facts that appears only in the motion's introduction, not in an argument or claim concerning the privileged documents' contents. We previously have rejected the idea that we must treat recitations of facts as making arguments, and KBR benefits from the application of that principle here. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (explaining that appellant forfeited argument by explaining only its underlying facts in "the statement of the facts section of its opening brief."). Second, and in any event, "[i]t is not our practice . . . to indulge cursory arguments made only in a footnote," *C.I.R. v. Simmons*, 646 F.3d 6, 12 (D.C. Cir. 2011) (internal quotation marks omitted); *see also Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc) (same). Furthermore, even though KBR did not affirmatively argue that the court should find no wrongdoing because KBR's investigation had found no wrongdoing, the District Court reasoned that such an "argument" could be inferred from the footnote. But KBR was the movant for summary judgment, and it is beyond peradventure that all inferences were to be drawn against KBR at this stage of the litigation, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and "it was error for the district court not to view [KBR]'s statements in the light most favorable to [Barko]," *Carr v. District of Columbia*, 587 F.3d 401, 414 (D.C. Cir. 2009). In sum, the District Court may not, in resolving the motion for summary

19

judgment, make any inference in KBR's favor based on the contents of the privileged documents.

## III.

One month after the order finding "at issue" waiver, the District Court considered "whether portions of the COBC documents are non-privileged fact work product that is discoverable based on substantial need." S.A. 49. It concluded, as an alternative to its November 20 order, that "substantial portions of the COBC reports constitute fact work product, and that Barko has made an adequate showing to overcome the protection afforded to the documents." S.A. 64. Despite KBR's arguments, we think the District Court got the law right. We also conclude, however, that the District Court misapplied that law to the documents it ordered disclosed.

KBR would have us draw from the case law that everything in an internal investigation is attorney-client privileged. KBR argues that a "rigid rule requiring a client and a lawyer on each end of a privileged communication threatens disclosure of communications long considered privileged, including those between attorneys within a law firm, and between attorneys and their investigators." Petition 20-21. The District Court rejected this view, observing that "under KBR's logic, any communication between a company attorney and his agent is automatically attorney-client privileged, because both are employees of the company and part of the client itself." S.A. 54.

Indeed, controlling precedent runs counter to KBR's argument and supports the District Court's statement of the law. In *Sealed Case (general counsel's files)*, we explained that "communications that do not involve both attorney and client, are unprotected." 656 F.2d at 809. In *Upjohn*, the

20

Supreme Court addressed the question of what protection attached to the notes of the general counsel of a corporation that went "beyond recording [employee] responses to his questions" as part of an internal investigation.  449 U.S. 397. It concluded that where the notes "reveal communications, they are . . . protected by the attorney-client privilege."  *Id.* at 401.  And "[t]o the extent they do not reveal communications, they reveal the attorneys' mental processes in evaluating the communications" and thereby constitute opinion work product.  *Id.*

Some of the COBC documents in this case involve communications from an investigator, acting at the direction of in-house counsel, to an attorney who is in-house counsel. In such a circumstance, the investigator effectively steps into the shoes of the attorney.  *See In re KBR*, 756 F.3d at 758; *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1514 (D.C. Cir. 1993) ("The attorney-client privilege undeniably extends to communications with one employed to assist the lawyer in the rendition of professional legal services.") (internal quotation marks omitted); *see also United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (holding that the attorney-client privilege covers communications to an attorney's non-lawyer employee); 1 EPSTEIN, at 211 ("In general, agents and subordinates working under the direct supervision and control of the attorney are included within the scope of the attorney-client privilege.").

KBR seemingly would have it both ways and argues that the investigator should also count as its employee for purposes of creating attorney-client privilege when the investigator communicates something to the lawyer.  *See* Opposition Br. 19-20; Reply Br. 14 n.12.  That is simply incorrect.  Instead, such material is inherently work product

21

protected so long as it is prepared in anticipation of litigation. The attorney-client privilege and opinion work product protection separately operate as barriers to compelled disclosure, and there is nothing to be gained by sloppily insisting on both or by failing to distinguish between them. *Cf*. 1 EPSTEIN, at 132 ("[T]here rarely seems much point in claiming both an attorney-client privilege and a work-product protection for . . . [in-house counsel's attorney notes] – unless of course one's purpose is to annoy the judge and demonstrate that one has not thought with any care about what each covers."). The District Court correctly stated that materials produced by an attorney's agent are attorney-client privileged only to the extent they contain information obtained from the client including "where the purpose of the report was to put in usable form the information obtained from the client." *FTC v. TRW, Inc.*, 628 F.2d 207, 212 (D.C. Cir. 1980). So far, so good, as to the District Court's legal analysis on this point.

But the fault lies in the application. Notwithstanding its statement of the law, the District Court compelled disclosure of numerous portions of the COBC report that summarize statements of KBR employees. Even a cursory review of the compelled documents (factoring in the redactions directed by the District Court) shows that the December 17 order would require KBR to produce materials that are attorney-client privileged. In addition, the order compelled disclosure of numerous mental impressions of the investigators, based on a clearly erroneous finding that such conclusions were only "background materials" and therefore fact work product. For example, the synopses in the two disputed reports constitute a combination of attorney-client privileged materials and work product protected materials almost by definition. And, as another example, a critical mental impression capturing the investigator's assessment of the subcontractor's performance appears in a since-redacted footnote 55 to the December 17

22

order itself.[3]  Accordingly, we conclude that the December 17 compelled production rulings constituted error.

Given the District Court's failure to distinguish between fact and opinion work product in the COBC documents, we do not reach the question of whether the District Court erred in finding the "substantial need" and "undue hardship" necessary for the disclosure of fact work product.  *See* FED. R. CIV. P. 26(b)(3)(A)(ii).

## IV.

Although we find error in the challenged District Court rulings, error alone is insufficient to justify the "'drastic and extraordinary'" remedy afforded by a writ of mandamus. *Cheney*, 542 U.S. at 380 (quoting *Ex parte Fahey*, 332 U.S. 258, 259 (1947)); *see also In re KBR*, 756 F.3d at 760.  A writ of mandamus requires that: (1) the mandamus petitioner have "no other adequate means to attain the relief he desires;" (2) the mandamus petitioner show that its right to the writ is "clear and indisputable;" and (3) the court, "in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances."  *Cheney*, 542 U.S. at 380-81 (internal quotation marks omitted).

## A.

The first prong is satisfied – as is often the case in attorney-client privilege cases – for the same reasons as stated

---

[3]  KBR filed an emergency motion on December 18 to seal this footnote and the accompanying page of text.  Emergency Motion to Seal, *United States ex rel. Barko v. Halliburton Co.*, No. 05-cv-1276 (D.D.C. Dec. 18, 2014), ECF No. 229.  The District Court partially granted the motion that same date by memo endorsement and sealed the footnote.  Marginal Entry Order, *id.*, ECF No. 230.

23

in our decision granting the previous writ of mandamus in this case. *See In re KBR*, 756 F.3d at 760-61. The analysis on the "no other means to attain the relief" point essentially remains the same in that appeal after final judgment will come too late because the privileged documents will have been disclosed. *Id.* at 761. Our previous reasoning stands on its own feet and is also binding as law of the case and of the Circuit. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc). Accordingly, we adopt it as part of our analysis of this Petition.

## B.

For the reasons described in Parts II and III above, we find error in both the November 20 and December 17 opinions and orders of the District Court. But for a writ of mandamus to issue, the challenged decision or decisions must represent not merely error, but "clear and indisputable" error. *Cheney*, 542 U.S. at 381.

The error here was "clear and indisputable" because the outcomes arrived at by the District Court would erode the confidentiality of an internal investigation in a manner squarely contrary to the Supreme Court's guidance in *Upjohn* and our own recent prior decision in this case. *See Upjohn*, 449 U.S. at 393; *In re KBR*, 756 F.3d at 763. The Supreme Court has "rejected use of a balancing test in defining the contours of [attorney-client] privilege" because it would defeat the purpose of the privilege to promote candid communications with counsel in the first instance. *Swidler & Berlin*, 524 U.S. at 408. The District Court's December 17 order compelled production of notes and memoranda based on oral statements that, *Upjohn* itself teaches, "cannot be disclosed simply on a showing of substantial need and

24

inability to obtain the equivalent without undue hardship." 449 U.S. at 401.

## C.

That brings us to the third prong of the *Cheney* standard, requiring that we must be "satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. Here, too, we can adopt our own analysis from the prior petition. *See In re KBR*, 756 F.3d at 762-63.

Just as in the first petition, the District Court's November 20 and December 17 orders would generate "substantial uncertainty about the scope of the attorney-client privilege in the business setting." *In re KBR*, 756 F.3d at 756. If allowed to stand, the District Court's rulings would ring alarm bells in corporate general counsel offices throughout the country about what kinds of descriptions of investigatory and disclosure practices could be used by an adversary to defeat all claims of privilege and protection of an internal investigation. *See. id.* at 762-63 ("[P]rudent counsel monitor court decisions closely and adapt their practices in response.").

These alarm bells would be well founded. If all it took to defeat the privilege and protection attaching to an internal investigation was to notice a deposition regarding the investigations (and the privilege and protection attaching them), we would expect to see such attempts to end-run these barriers to discovery in every lawsuit in which a prior internal investigation was conducted relating to the claims. Accordingly, we think it is essential to act on this Petition in order to protect our privilege waiver jurisprudence.

25

We therefore grant KBR's petition for a writ of mandamus vacating the November 20 and December 17 opinions and orders.

## V.

KBR asks not only for a writ of mandamus, but also that we direct reassignment of the case to a new district judge. It has made the serious allegation that the District Court "assumed the mantle of a prosecutor" such that reassignment is required to avoid the appearance of partiality. Petition 30.

In *Cobell v. Kempthorne*, our most recent opinion directing reassignment, we stated that reassignment is "necessary if reasonable observers could believe that a judicial decision flowed from the judge's animus toward a party rather than from the judge's application of law to fact." *Cobell v. Kempthorne*, 455 F.3d 317, 332 (D.C. Cir. 2006).[4] But we cautioned that "[b]ecause unfavorable rulings are '[a]lmost invariably . . . proper grounds for appeal, not for recusal,' we exercise this authority only in extraordinary cases." *Id.* at 331 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)) (alteration in original).

It is indeed unusual that a second petition for mandamus is sought from a court of appeals regarding the same proceeding in the district court. A petition such as this one on a closely related issue controlled by the same precedent must be rarer yet. On the other hand, "except in the most unusual circumstances we trust judges to put their personal feelings

---

[4] As we noted in *Cobell*, "[r]eassignment requests usually arise from accusations that a judge engaged in improper outside communications." 455 F.3d at 331; *see, e.g.*, *United States v. Microsoft Corp.*, 253 F.3d 34, 46 (D.C. Cir. 2001) (en banc) (per curiam). No such allegation has been made in this case.

26

aside." *Cobell*, 455 F.3d at 332.  So "recusal must be limited to truly extraordinary cases where "the judge's views have become 'so extreme as to display clear inability to render fair judgment.'" *Id.* (quoting *Liteky*, 510 U.S. at 551).

*Cobell* puts this case in perspective.  It was "the ninth time in six years we [had] consider[ed] an appeal in th[at] longstanding dispute."  *Cobell*, 455 F.3d at 319.  We catalogued a litany of errors including *three* grants of mandamus.  *Id.* at 334.  Our decision specifically noted that even "repeated reversals, without more, are unlikely to justify reassignment."  *Id.* at 335.  And we found that "on several occasions the district court or its appointees exceeded the role of impartial arbiter by issuing orders without hearing and by actively participating in evidence-gathering."  *Id.*

KBR tells us that the District Court in this case has morphed from umpire to designated hitter (or, for the classically oriented, from *summa rudis* to gladiator).  But we see the District Court as duly determined to drive this case to resolution, not to a specific outcome.  Responding to KBR's request for a stay pending appellate review of its November 20 order, the District Court rejected the argument that "another" four-month stay would not irreparably harm the Relator and it granted only a one-week stay to allow KBR time to file an emergency motion with this Court.  J.A. 45. The District Court explained that "at some point, a case over a decade old must be directed toward resolution" and noted that "the public [also] has an interest in the prompt and final determination of this litigation."  *Id.*  It is not just proper but every district court's obligation to manage proceedings so as "to secure the just, speedy, and inexpensive determination of every action and proceeding."  FED. R. CIV. P. 1.

27

The writ of mandamus we grant will correct the legal error in this case and resolve the dispute over production of the COBC documents in favor of KBR.

On KBR's request for reassignment made during argument on the prior mandamus petition, we held that "[b]ased on the record before us, we have no reason to doubt that that District Court will render fair judgment in further proceedings." *In re KBR*, 756 F.3d at 763-64. Because this remains true – and because we trust that this opinion will conclusively resolve the issue on which this case has seemed stuck as with a scratch on a broken record – we deny KBR's request for reassignment.

## VI.

For the foregoing reasons, the Petition for a Writ of Mandamus is GRANTED. The District Court's orders of November 20, 2014 (Doc. 205), and December 17, 2014 (Docs. 227, 228) are VACATED. The request to direct reassignment is DENIED. It is

*So ordered.*