Michael P. Kenny, Esq. (admitted *pro hac vice*)
mike.kenny@alston.com
Debra D. Bernstein, Esq. (admitted *pro hac vice*)
debra.bernstein@alston.com
Matthew D. Kent, Esq. (admitted *pro hac vice*)
matthew.kent@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

James M. Wagstaffe, Esq. (SBN 95535)
wagstaffe@kerrwagstaffe.com
**KERR & WAGSTAFFE LLP**
101 Mission Street, 18th Floor
San Francisco, California 94105-1576
Tel: (415) 371-8500
Facsimile: (415) 371-0500

*Attorneys for Plaintiffs Dell Inc. and Dell Products L.P.*
[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-md-05944-SC (N.D. Cal.) |
| | MDL No. 1917 |
| This Document Relates to: Individual Cases: No. 13-cv-2171 (SC) | **AMENDED OBJECTION TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION RE DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS** |
| *Dell Inc., et al. v. Hitachi Ltd. et al.*, No. 13-cv-02171 | |
| | Judge: Hon. Samuel Conti<br>Date: None Set<br>Courtroom: 1, 17th Floor |

The Special Master's Report and Recommendation (the "R&R") (ECF 3941) granting Defendants' Motion to Compel Direct Action Plaintiffs ("DAPs") to produce settlement agreements should be rejected.[1]

To date there have been dozens of settlements. At the August 7, 2015 status conference, this Court made it clear that it believes that all of the cases should settle. But the Special Master's R&R, if adopted, would almost certainly impede future settlement negotiations and result in multiple jury trials as defense counsel obsess over their relative degree of culpability and refuse to settle on that basis. DAPs' concerns about the chilling effect of production were validated by counsels' experience in the *TFT-LCD* case. There, Toshiba adopted a self-titled "'reverse whipsaw' strategy of non-settlement," resulting in a six-week-long trial against the direct purchaser class followed by another six-week-long trial against Best Buy. Toshiba has touted, moreover, that its litigation strategy was enabled by its having received settlement agreements with other Defendants, which allowed Toshiba to make the calculated decision to try cases knowing the precise amount of setoffs. Toshiba has not settled with Sharp or Best Buy here, heading to a reprise of the *TFT-LCD* case. In order to avoid the same result here of multiple trials, and to promote additional settlements, Defendants' Motion should be denied.

Defendants' Motion should also be denied because it is untimely and seeks irrelevant information. Despite receiving DAPs' objections to producing settlements as early as January 2014, Defendants failed to move to compel prior to the September 2014 deadline. *See* ECF 3979-1, Declaration of Debra Bernstein ("Bernstein Decl."), Ex. C. Substantively, Defendants' Motion should be denied because the DAPs' settlement agreements are not relevant prior to trial and requiring DAPs to produce them now would impede future settlement discussions. Any interest that Defendants have in DAPs' settlement agreements can be accommodated by DAPs' proposal to: (1) inform Defendants of the fact of settlement and whether any such settlement agreement contains a cooperation provision; and (2) produce settlement agreements in their entirety after trial in order to calculate any setoff.

---

[1] On August 18, 2015, Defendants noted that DAPs' August 14, 2015 objection exceeded five pages. (ECF 3994.) Dell Inc. and Dell Products L.P. respectfully submit this amended objection in place of the one filed on August 14, 2015 to comply with the page limit of Local Rule 72-2. To avoid burdening the Court with additional filings, Dell has not re-filed the Bernstein Decl. and exhibits thereto, which are located at ECF 3979-1.

AMENDED OBJECTION TO THE SPECIAL MASTER'S R&R RE
DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS
MDL NO. 1917 | IND. CASE NO. 3:13-cv-02171-SC

A.   **Defendants' Motion to Compel Should be Denied as Untimely**

The Special Master found that Defendants' Motion is timely because a single defendant – Toshiba America Information Systems, Inc.'s ("TAIS") – moved in mid-2014 to compel 3 out of 23 DAPs to produce settlement agreements.  *See* R&R at 7.  According to the Special Master, this Court's subsequent denial of TAIS's motion put *all* DAPs on notice that *any* Defendant could move to compel *any* DAP to produce settlement agreements at *any* time, regardless of the motion to compel deadline or whether the Defendant had made any effort to meet-and-confer prior to the expiration of that deadline.  *See id*.  But this Court's denial of TAIS's motion did not suspend indefinitely the time in which all 13 Defendants had to move to compel.  (*See* ECF 2717.)  There is no language in the Court's order that grants TAIS permission to renew its motion beyond the motion to compel deadline, much less language excusing the other 13 Defendants' non-compliance with the motion to compel deadline.  (*See id.*)  Nor could there be because that motion was brought solely by TAIS against only three DAPs.  (*See* ECF 2602.)  None of the Defendants now before the Court joined TAIS's motion.  The only effect of the Court's ruling was to allow TAIS to renew its motion at a later point prior to the motion to compel deadline.  *See* Local Rule 37-3 ("[N]o motions to compel fact discovery may be filed more than 7 days after the fact discovery cut-off.").

The Special Master also found Defendants' Motion timely because it would be unreasonable to require "the defendants to file their motion before the discovery cutoff when they were still seeking information on DAP settlement agreements well after the discovery cutoff."  R&R at 7.  To state this argument is to reject it, because the reason Defendants were seeking "information on DAP settlement agreements well after the discovery cutoff" was due to Defendants' failure to raise the issue with any of the other 23 DAPs earlier.  Rather than conferring with DAPs to determine whether they had any settlement agreements at or near the time of the close of discovery, Defendants waited until four months after the close of discovery to act.  Here, Defendants' delay is especially inexcusable because they knew that Dell had a settlement agreement in principle with Toshiba prior to the close of discovery.  *See* Bernstein Decl. at Ex. A.  If Defendants had moved to compel settlement agreements from the other 23 DAPs before the deadline passed, the dispute would have been ripe for adjudication due to the existence

2

AMENDED OBJECTION TO THE SPECIAL MASTER'S R&R RE
DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS
MDL NO. 1917 | IND. CASE NO. 3:13-cv-02171-SC

of pre-lawsuit settlement agreements and other settlement agreements entered into before the motion to compel deadline expired. *See* Bernstein Decl. ¶ 9. More fundamentally, this argument ignores that the DAPs' settlement agreements are with the same Defendants who filed the motion to compel; Defendants' excuses for their failure to timely file a motion are simply not persuasive.

Moreover, the timeliness of Defendants' Motion does not turn on whether Defendants had actual knowledge of a finalized settlement agreement before the applicable deadline. The point is that, even with knowledge prior to the motion to compel deadline of a settlement, Defendants did not file this motion to compel until four months after the deadline expired.

The Special Master also erred in finding that good cause supports Defendants' untimely motion. *See* R&R at 8. First, the Special Master transforms Defendants' dilatory conduct into good cause by crediting their claim that they could not have moved to compel earlier because they were unaware of the existence of any settlement agreements. But, as explained above, Defendants' ignorance as to the existence of any settlement agreements is the direct result of their failure to pursue discovery. Second, the Special Master erred by finding good cause on the grounds that the "production of settlement agreements now would likely promote further settlements." R&R at 8. The Special Master relies on the *TFT-LCD* case, but that case, which resulted in two full-blown trials, supports denying Defendants' Motion, not granting it.[2] Toshiba's decision to proceed to trial in the *TFT-LCD* case is the exception for high-stakes litigation, not the rule. It is beyond dispute that Toshiba's knowledge of settlement agreements drove its strategy of non-settlement. Indeed, Toshiba's counsel has explained that Toshiba proceeded to trial because it knew the class had already received $443 million in settlements, and "the US$443 million in prior settlements cushioned Toshiba against any potentially adverse jury verdict, since prior settlements by law act as credits and are set off against the jury verdict." *See* Bernstein Decl., Ex. B. And then, being found liable by a jury following a six-week-long trial against the direct purchaser class, Toshiba adopted the same strategy in its litigation with Best Buy, which resulted in another six-week-long trial.

---

[2] Just as the Court's recent decision to appoint a Special Master to decide outstanding motions but not disclose the rulings until close to trial will likely facilitate settlements, so too, the uncertainty that exists by not producing settlement agreements prior to trial will facilitate settlements.

3

AMENDED OBJECTION TO THE SPECIAL MASTER'S R&R RE
DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS
MDL NO. 1917 | IND. CASE NO. 3:13-cv-02171-SC

Neither Defendants nor defense counsel should know the amount of an individual settlement between any DAP and any Defendant. In the *TFT-LCD* case, disclosure of individual settlement amounts added a needless and hindering element to almost every settlement discussion. In that case Defendants and their counsel became obsessed with their assessment of their relative degree of culpability and refused to settle on that basis. The refrain "my client is less guilty than defendant Y and will not ever pay more than you received from Y" became common to virtually every settlement discussion, which made settlement much more difficult and time-consuming. Given that liability in this case is joint and several, this "defense benchmarking" is a needless distraction. As the Court is aware, many of the CRT DAPs have settled without disclosure of settlement agreements, and therefore have demonstrated that disclosure of settlement agreements is not necessary. If the *TFT-LCD* case teaches anything, it is that the disclosure of settlement agreements in this case will not result in additional settlements, but will instead increase the likelihood of multiple trials and strain the Court's resources.

B.   **Rule 26 Does Not Authorize the Production of Settlement Agreements**

The Special Master also erred in finding that settlement agreements are relevant and discoverable at this time. The Special Master summarily concludes that DAPs' settlement agreements are relevant to set-off and witness credibility. R&R at 6. But the relevance of settlement agreements is directly tethered to the timing and the posture of the underlying litigation. In particular, the settlement agreements' relevance to the set-off issue only arises if a Defendant proceeds to trial, and only if the jury returns a judgment in a DAPs' favor. *See Wagner v. Circle W. Mastiffs*, No. 2:08-CV-431, 2013 WL 4479070, at *2 (S.D. Ohio Aug. 19, 2013) (finding persuasive the reasoning of many courts delaying "disclosure of settlement agreements until after trial because set-off is not an issue to be addressed until after the entry of a verdict"). Likewise, a settlement agreement is relevant for purposes of assessing witness credibility only at the time of trial. *See In re Flat Glass Antitrust Litig.*, No. 11-658, 2013 WL 1703864, at *1 (W.D. Pa. Apr. 19, 2013) ("Broad assertions [that settlement agreements are necessary to assess witness bias], without more, are insufficient to obtain discovery of a confidential release.").

Settlement agreements are not routine fact discovery because they have no tendency to make a fact that is of consequence in determining the action more or less probable than it would be without the

4

evidence, and ordering their production impinges upon settling parties' expectations of confidentiality, thus risking a chilling effect on future settlement negotiations. *See Spear v. Fenkell*, Case No. 13-02391, 2015 WL 3947559, at *1 (E.D. Pa. June 26, 2015) (highlighting that "[t]he policies underlying Fed. R. Evid. 408 and Fed. R. Civ. P. 26(b) are in tension" because of the "strong public policy encouraging settlement [that] animates Rule 408"). The Special Master unjustly disregards these strong public policy considerations.

Here, even if the settlement agreements are found to be relevant, the Court nonetheless retains the discretion to deny the discovery altogether or to impose conditions to accommodate the parties' competing interests. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (trial court has "broad discretion" to "dictate the sequencing of discovery"). The Special Master erred as a matter of law by concluding that the settlement agreements are relevant, and its only option was to order their immediate and complete production. Rather, DAPs' proposal set out below is a narrower, more appropriate remedy if the Court determines that Defendants' Motion is timely and seeks discoverable information.

### C. DAPs' Proposal Satisfies Any Interest Defendants Have in Settlement Agreements

DAPs have proposed to (1) inform Defendants of the fact of settlement and whether any such settlement agreement contains a cooperation provision; and (2) produce settlement agreements in their entirety after trial. If Defendants have any interest in DAPs' settlement agreements, DAPs' proposal satisfies those interests while protecting the parties' mutual expectation of confidentiality, which, in turn, will foster additional settlements.

### CONCLUSION

For the reasons above, the Special Master's R&R should be rejected, and Defendants' Motion should be denied.

Date: August 19, 2015

Respectfully submitted,

/s/ *Debra D. Bernstein*
Debra D. Bernstein, Esq. (admitted *pro hac vice*)
Michael P. Kenny, Esq. (admitted *pro hac vice*)
Matthew D. Kent, Esq. (admitted *pro hac vice*)
Elizabeth Helmer, Esq. (admitted *pro hac vice*)
ALSTON & BIRD LLP

5

1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone:  (404) 881-7000
Facsimile:   (404) 881-7777
Email:  mike.kenny@alston.com
           debra.bernstein@alston.com
           matthew.kent@alston.com
           elizabeth.helmer@alston.com

James M. Wagstaffe, Esq. (SBN 95535)
KERR & WAGSTAFFE LLP
101 Mission Street, 18th Floor
San Francisco, California  94105-1576
Telephone:  (415) 371-8500
Facsimile:   (415) 371-0500
Email:  wagstaffe@kerrwagstaffe.com

*Counsel for Plaintiffs Dell Inc. and Dell Products L.P.*

6

AMENDED OBJECTION TO THE SPECIAL MASTER'S R&R RE
DEFENDANTS' MOTION TO COMPEL DAPS' SETTLEMENT AGREEMENTS
MDL NO. 1917 │ IND. CASE NO. 3:13-cv-02171-SC