Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 SC<br>MDL No. 1917 |
| This Document Relates to:<br>ALL ACTIONS | **TOSHIBA DEFENDANTS' RESPONSE TO COURT'S ORDER TO SHOW CAUSE** |

On August 17, 2015, this Court, by Order to Show Cause (ECF No. 3986), directed the parties to express, in writing, any objections they may have to the potential appointment of U.S. Magistrate Judge (Ret.) James Larson as Special Master to issue reports and recommendations on pending pre-trial motions. The Toshiba Defendants fully support the idea of appointing a Special Master to hear pending motions and have no concerns whatsoever about Judge Larson's qualifications, abilities, or integrity. At the same time, the Toshiba Defendants understand that Judge Larson is married to District Judge Susan Illston, who has for years been presiding over the parallel, but more advanced, *LCD* MDL. And many of the pending motions that would be referred to the Special Master in this *CRT* MDL focus in material respects on whether rulings by Judge Illston in *LCD* should be followed here. The Toshiba Defendants respectfully submit that, under these circumstances, the appointment of Judge Larson as Special Master would be inappropriate.

First, 28 U.S.C. § 458(a)(1) commands that "no person shall be appointed to or employed in any office or duty in any court who is related by affinity or consanguinity within the degree of first cousin to any justice or judge of such court." By its terms, this statute would seem to preclude the appointment of Judge Larson as Special Master here. At least one court has rescinded the appointment of a special master under this statute in similar circumstances. *See Prudential Ins. Co. of Am. v. U.S. Gypsum*, 991 F.2d 1080, 1081-82 (3d Cir. 1993). In *Prudential Insurance*, the district court appointed a special master to supervise all pre-trial matters and make recommendations on all pre-trial motions. *Id.* at 1081. After the appointment, the court became aware that the individual it had appointed was statutorily barred from serving as a special master due to a familial relationship prohibited under Section 458, so the court rescinded the appointment and selected a different special master. *Id.* at 1082.

Alternatively, 28 U.S.C. § 455(a) requires disqualification of "any justice, judge, or magistrate judge of the United States" when "his impartiality might reasonably be questioned." Rule 53(a)(2) of the Federal Rules of Civil Procedure specifically states: "A master must not have a relationship to the parties, attorneys, action, or court that would

require disqualification of a judge under 28 U.S.C. § 455 . . . ." In applying Section 455(a) to special masters, this Court has recognized: "The goal of section 455(a) is to avoid even the appearance of partiality." *Roberts v. Heim*, Nos. C 84-8069 TEH, C 87-6174-TEH, C 88-3373 TEH, 1991 WL 200899, at *2 (N.D. Cal. Mar. 13, 1991) (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988)). Here, in light of the close relationship between Judge Illston's *LCD* case and this *CRT* case, the marital relationship between Judge Illston and Judge Larson may reasonably cause one to question whether Judge Larson in *CRT* would give undue deference to Judge Illston's *LCD* decisions; there may be an appearance that Judge Larson would be partial to deferring to Judge Illston's rulings.

Judge Illston's decisions in *LCD* are relevant authority, but not binding in this *CRT* case. *See, e.g.*, *Joe Hand Promotions, Inc. v. Croce*, No. 5:10-CV-04177-JW, 2011 WL 2581419, at *3 (N.D. Cal. June 29, 2011) (rejecting plaintiff's argument that district court judge was bound by prior rulings in the Northern District of California). If Judge Larson were to serve as Special Master in *CRT*, a reasonable person could question Judge Larson's willingness to depart from Judge Illston's *LCD* decisions. *See Roberts*, 1991 WL 200899, at *2 (stating that under Section 455(a), the court must consider whether the facts at issue "would create in the mind of a reasonable person the appearance of the Special Master's partiality"). Here, where Judge Illston's *LCD* rulings are in important respects embraced and cited by Plaintiffs, Judge Larson could reasonably be questioned as partial to Plaintiffs' positions. Section 455(a) requires avoiding even the appearance of such possible partiality. *United States v. Van Griffin*, 874 F.2d 634, 637 (9th Cir. 1989) ("The rule requiring disqualification where there is an appearance of partiality is a rule designed to remove the possibility of temptation.") (citing *Tumey v. Ohio*, 273 U.S. 510, 532 (1927)).

The close relationship between the *LCD* and *CRT* actions has been apparent from the filing of the Plaintiffs' *CRT* complaints. Best Buy's *CRT* complaint contains considerable discussion of government investigations into the "closely-related TFT-LCD market" and the Defendants' LCD activities. ECF No. 1978, at ¶¶ 98, 103, 174, 176, 177, 187, 188, 189, 190, and 191. The two MDLs involve sequential generations of display technology, similar

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

allegations, and overlapping parties. Dr. Kenneth Elzinga, the economic expert of various Plaintiffs (including Best Buy), has asserted that the alleged LCD and CRT cartels closely resemble each other. Expert Report of Dr. Kenneth G. Elzinga (Apr. 15, 2014), at 47. In their oppositions to pending summary judgment motions that would be referred to a Special Master, the Plaintiffs repeatedly urge the Court to adopt Judge Illston's decisions from the "closely-related LCD litigation," including those on important disputed legal issues such as the proper application of the FTAIA and *Royal Printing* (a case that Judge Illston coincidentally litigated while in private practice). *See, e.g.*, ECF No. 3272-3, at 15 ("Moreover, in the closely-related LCD litigation, Judge Illston held that, under the import commerce exclusion, the Sherman Act is fully applicable where defendants' foreign anticompetitive behavior 'was directed at an import market.'"); ECF No. 3287, at 19 ("As the court held on strikingly similar facts in *LCD*, foreign conduct has a 'direct, substantial and foreseeable effect' in the United States . . . ."); ECF No. 3267, at 12-13 ("In *TFT-LCD*, Judge Illston expressly rejected the argument that the ownership or control exception applied to MARTA in denying the defendants' motion for summary judgment on the same basis. . . . There, when faced with precisely the same argument as is reasserted in this action, Judge Illston weighed numerous factors in assessing whether MARTA was under the ownership or control of its members. . . . So too here. The facts underlying Defendants' Motion are exactly the same as those in *TFT-LCD*, and there is no reason for the Court to find differently than did Judge Illston."); ECF No. 3244, at 11 ("In *In re LCD*, Judge Illston expressly rejected the very argument Samsung SDI makes here [regarding *ATM Fee*].").

Defendants have forcefully argued that this Court should depart from certain of Judge Illston's previous decisions, and Defendants now face the uncomfortable prospect of having those arguments heard by her husband. Having Judge Illston's husband rule on these arguments runs afoul of Section 455(a). Family relationships have disqualified judges under Section 455(a), even when the family members worked on separate, but closely-related cases. *See Matter of Hatcher*, 150 F.3d 631 (7th Cir. 1998) (ordering district court judge to recuse himself from a criminal trial when his son worked on a related prosecution). Importantly,

even though the Plaintiffs generally endorse Judge Illston's prior decisions, the appearance of partiality affects all parties to this litigation, not just the Defendants.  District court judges have recused themselves under 28 U.S.C. § 455(a) when "both parties . . . might be forced to wonder whether the Court might be influenced by the humanly understandable tendency to 'bend over backwards to prove he lacked favoritism . . . .'" *Yagman v. Le Frois*, No. CV.06 4110 AHM MANX, 2006 WL 2294879, at *1 (C.D. Cal. July 18, 2006) (self-recusing even though the assigned judge did not have any actual bias).

The Toshiba Defendants understand that the final say on the pretrial motions will be with this Court and not with any Special Master, but the involvement of a potentially conflicted Special Master still requires consideration of partiality discussed above.  Under Rule 53(f), any report and recommendation of the Special Master may be determinative in the absence of an objection and, even in the event of an objection, is likely to have persuasive weight with this Court.  In any event, Section 455(a) and Rule 53(a)(2) both call for "disqualification," not procedural measures designed to mitigate a special master's potential partiality.  *See Van Griffin*, 874 F.2d at 637 ("The purpose of [Section 455] is to promote public confidence in the integrity of the judicial process.  To achieve this purpose the judge *must be disqualified* if a reasonable person would believe that the judge was not impartial.") (emphasis added).

The Toshiba Defendants have nothing but the highest respect for both Judge Illston and Judge Larson.  The integrity of both jurists is beyond reproach, and Judge Illston deserves great admiration for her adroit handling of the onerous *LCD* MDL.  Nonetheless, in light of

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  the statutory provisions discussed herein, the Toshiba Defendants are compelled to object to
2  the appointment of Judge Larson as Special Master.

Dated:  August 26, 2015

Respectfully submitted,

**WHITE & CASE** LLP

By:  */s/ Christopher M. Curran*
Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
701 Thirteenth Street, N.W.
Washington, DC  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.*

TOSHIBA DEFENDANTS' RESPONSE TO COURT'S ORDER TO SHOW CAUSE
Case No. 07-5944 SC
MDL No. 1917
5

**CERTIFICATE OF SERVICE**

On August 26, 2015, I caused a copy of "TOSHIBA DEFENDANTS' RESPONSE TO COURT'S ORDER TO SHOW CAUSE" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 2, 2008.

                                           */s/ Dana E. Foster*
                                                Dana E. Foster

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

TOSHIBA DEFENDANTS' RESPONSE TO COURT'S ORDER TO SHOW CAUSE
Case No. 07-5944 SC
MDL No. 1917