United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 |
| | Case No. C-07-5944-SC |
| This Order Relates To: | ORDER SETTING HEARING FOR OBJECTIONS TO APPOINTMENT OF SPECIAL MASTER |
| ALL ACTIONS | |

The Court has received objections to the appointment of U.S.
Magistrate Judge (Ret.) James Larson ("Judge Larson") as a Special
Master to hear those motions before the Court as described at the
Status Conference held on August 7, 2015.  See ECF No. 4021; see
also ECF No. 3986; Fed. R. Civ. P. 53(a)(1)(C).

The Court is not in the habit of releasing preliminary
rulings.  However, to ensure parties can address the concerns of
the Court at a hearing the Court will order herein, the Court makes
a rare exception and discloses that it leans toward a finding that
the marital relationship of the proposed Special Master to Judge
Illston is irrelevant.

Judge Larson is an honest, reliable, and trustworthy
individual whose many years of service to the Court give the Court
great confidence in his ability to be fair and impartial when
considering judicial opinions authored by his spouse.  The Court is

**United States District Court**
For the Northern District of California

equally confident that he will use his own resources when making decisions, and will consider the need for an order that he not be permitted to discuss the substance of this case with his wife until after this case is done.

Insofar as parties cite 28 U.S.C. § 455, the Court is inclined to find that the precedent supports this appointment.  Section 455, Subsection (a) states in relevant part that: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The United States Supreme Court has clarified that the goal of this subsection is to "avoid even the appearance of partiality.  If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists. . . ."  <u>Liljeberg v. Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 860 (1988).  The test, as reformulated by the Ninth Circuit, has been:

> "'whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'"  <u>Herrington v. County of Sonoma</u>, 834 F.2d 1488, 1502 (9th Cir. 1987) (quoting <u>United States v. Nelson</u>, 718 F.2d 315, 321 (9th Cir. 1983)).  "Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits."  <u>In re Mason</u>, 916 F.2d 384, 385 (7th Cir. 1990).  The "reasonable person" in this context means a "well-informed, thoughtful observer," as opposed to a "hypersensitive or unduly suspicious person."  <u>Id.</u> at 386.
> In determining whether disqualification is warranted under § 455(a), we also apply the general rule that questions about a judge's impartiality must stem from "extrajudicial" factors, <u>Liteky v. United States</u>, 510 U.S. 540, 554[] (1994), that is, from

2

**United States District Court**
For the Northern District of California

> sources other than the judicial proceeding at hand.
> Pau v. Yosemite Park and Curry Co., 928 F.2d 880, 885
> (9th Cir. 1991) (citing Toth v. Trans World Airlines,
> 862 F.2d 1381, 1388 (9th Cir. 1988)).
>
> We are also mindful "that section 455(a) claims
> are fact driven, and as a result, the analysis of a
> particular section 455(a) claim must be guided, not by
> comparison to similar situations addressed by prior
> jurisprudence, but rather by an independent
> examination of the unique facts and circumstances of
> the particular claim at issue." United States v.
> Bremers, 195 F.3d 221, 226 (5th Cir. 1999).

Clemens v. U.S. Dist. Court for Cent. Dist. of Cal., 428 F.3d 1175,

1178 (9th Cir. 2005). Clemens also cited approvingly the list by

the Tenth Circuit in Nichols v. Alley, 71 F.3d 347, 351 (10th Cir.

1995). See Clemens, 428 F.3d at 1178-79.

As applied, the Ninth Circuit has clarified that many

instances do not rise to a level requiring recusal. See S.E.C. v.

ING USA Annuity & Life Ins. Co., 360 F. App'x 826, 828 (9th Cir.

2009) ("There is no authority for the proposition that judges must

recuse themselves if they served as mediators in a related

proceeding."); Clemens, 428 F.3d at 1179-80 (all the Federal Judges

in a judicial district did not need to be recused after collective

death threats); Jorgensen v. Cassiday, 320 F.3d 906, 911-12 (9th

Cir. 2003) (where a former law clerk who finished working for a

judge eight years ago threatened to use his influence to guarantee

a favorable judgment, the judge did not have to recuse himself);

Cordoza v. Pac. States Steel Corp., 320 F.3d 989, 998-1001 (9th

Cir. 2003) (Judge Patel did not need to recuse herself when

pursuing her administrative role as an enforcer of the behavior and

standards for an already appointed special master). Simple

"conclusions and opinions" are also insufficient allegations of

1 prejudice.  <u>Keyter v. Locke</u>, 182 F. App'x 684, 685-86 (9th Cir.

2 2006).

3      Here, two cases are particularly instructive.  <u>See</u> <u>In re</u>

4 <u>Smith</u>, 317 F.3d 918, 933-34 (9th Cir. 2002); <u>Perry v.</u>

5 <u>Schwarzenegger</u>, 630 F.3d 909, 915-16 (9th Cir. 2011).  In <u>Smith</u>,

6 the Ninth Circuit established that:

> First, judicial rulings alone almost never constitute
> a valid basis for a bias or partiality motion . . . .
> Second, opinions formed by the judge on the basis of
> facts introduced or events occurring in the course of
> the current proceedings, <u>or of prior proceedings</u>, do
> not constitute a basis for a bias or partiality motion
> unless they display a deep-seated favoritism or
> antagonism that would make fair judgment impossible.

12 <u>Id.</u> at 933 (quoting <u>Liteky</u>, 510 U.S. at 555) (emphasis in

13 original).  Rather, expression of opinions only require recusal

14 where they "reveal such a high degree of favoritism or antagonism

15 as to make fair judgment impossible."  <u>Id.</u> (quoting <u>Liteky</u>, 510

16 U.S. at 555).  Based on this understanding of <u>Liteky</u>, the Ninth

17 Circuit in <u>Smith</u> found that an opinion from a prior proceeding can

18 only be a basis for recusal where the opinions display "a deep-

19 seated favoritism or antagonism."  <u>Id.</u> (internal citation omitted).

20 Thus, the predisposition of the judge in <u>Smith</u> to approve a

21 settlement with modification did not show any bias, and the fact

22 that the inclination did not change through many hearings was

23 insufficient "to indicate that it was impossible for [that judge]

24 to change his mind."  <u>Id.</u>  Even adverse rulings did not rise to the

25 level of the "deep-seated antagonism or favoritism [required] to

26 render a fair judgment impossible."  <u>Id.</u>  <u>Smith</u> thus held that

27 "[e]ven if Judge Jones clung to his opinion, a little stubbornness

28 is not ordinarily grounds for disqualification."  <u>Id.</u> at 934.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

In _Perry_, the Ninth Circuit examined an instance where a Judge did not recuse himself in spite of very public statements and actions by his wife that were directly on point. _See_ _Perry_, 630 F.3d at 914-16. There, the judge reasoned that his "recusal under § 455(a) would still be appropriate only if a reasonable person with knowledge of all the facts would <u>reasonably</u> believe that, by virtue of [his] marriage, [he] might approach and decide this case differently than [he] would have otherwise approached and decided it." _Id._ at 914 (citations omitted). _Perry_ then catalogued how the judge's wife had no interest in the outcome of the case (beyond that of any American interested in that type of case), and how even though the judge's wife headed (part of) an organization (the ACLU) with an interest in that case, the ACLU had no filings before the court and thus had nothing to gain. _Id._ at 914-915. The court then expressly considered that even though the views of the judge's wife or those of the ACLU may come before the court,

> "[the judge's wife] is an independent person who need not obtain [her husband's] approval or agreement to advocate for whatever social causes she chooses. The views are hers, not [her husband's], and [the judge does] not in any way condition [his] opinions on the positions she takes regarding any issues."

_Id._ at 916. Therefore, the panel reasoned that a reasonable person who truly knew all the facts would not believe the judge would be partial or biased due to his wife's views on social policy, "whether those views are publicly expressed and advocated for, or not, and whether advocated for by her in her private capacity or in her capacity as head of the ACLU/SC." _Id._ The court also cited that the judge in that case had been a jurist for 30 years, and any ///

**United States District Court**
For the Northern District of California

1    person familiar with his record would not reasonably believe that

2    beliefs of his wife would bias him.   See id.

3         Here, the Court's sense is that certain parties are concerned

4    that Judge Larson, after 14 years of federal service, will be

5    swayed by the written opinions of his wife Judge Susan Illston, a

6    Federal, Article III Judge of 20 years.   These same parties seem

7    concerned that Judge Larson will give greater weight or deference

8    to decisions by Judge Illston.   Yet Smith clearly teaches that

9    former judicial decisions do not yield bias absent a deep-seated

10   favoritism or antagonism which is clearly lacking in this case.

11   And Perry stands for the proposition that a spouse's personal or

12   professional opinions do not always yield bias to a federal judge

13   such that recusal is required.   The concerned parties offer merely

14   "conclusions and opinions," and thus fail to offer a sufficient

15   allegation of bias.   Keyter, 182 F. App'x at 685-86.

16        The Court recognizes the key difference from Perry that

17   certain parties would no doubt cite -- that unlike the judge in

18   Perry, Judge Larson would be forced to evaluate the judicial

19   opinions decided by his wife.   True, it may be awkward for parties

20   to argue to Judge Larson that he should reach a finding contrary to

21   that of his wife, or for Judge Larson to hear such arguments.   But

22   under Section 455 this justifies only permissible rather than

23   mandatory recusal.   Critically, Judge Illston has nothing to gain

24   or lose from her husband's conclusions -- even if Judge Larson were

25   to uniformly agree or uniformly disagree with Judge Illston, Judge

26   Illston would be no better off, no worse off, and no more or less

27   likely to be upheld or reversed on appeal.   Armed with that simple

28   knowledge, any reasonable person familiar with the circumstances --

1  to include Judge Larson's judicial record and that of his spouse --

2  would not hesitate to affirm that the decisions Judge Larson will

3  reach will be fair, equitable, and will in no way grant any

4  improper deference to the work product of his spouse.  Therefore,

5  the Court is inclined to overrule the pending objection.

6       To ensure adequate opportunity to be heard, the Court hereby

7  ORDERS that there be a hearing at which interested parties may

8  appear before the Court.  See Fed. R. Civ. P. 53(b)(1).  Parties

9  are not required to attend if they do not wish to be heard further

10  on this matter.  The hearing will be Friday morning, September 11,

11  2015, at 10:00 am, at the San Francisco Courthouse, 17th Floor,

12  Courtroom 1.

13

14       IT IS SO ORDERED.

15

16  Dated: August 31, 2015

17                      UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28